## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------ x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: August 18, 2011 @ 4:00 p.m.(ET) |
| ------------------------------------------------------ x | | Hearing Date: N/A |

### THIRTIETH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2011 THROUGH JUNE 30, 2011

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | June 1, 2011 through June 30, 2011 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $583,096.60     (80% of $728,870.75) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $ 64,140.29 |

This is a(n):    _x_ Monthly        ____ Interim        ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |

**TRIBUNE COMPANY, et al.**

**SUMMARY OF HOURS**

**June 1, 2011 through June 30, 2011**

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2011 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner\*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | 985 | 95.80 | $93,378.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 895 | 87.60 | 77,283.25 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 855 | 115.20 | 95,289.75 |
| Robert Schwinger (1994) | Litigation | 1985 (NY) | 795 | 29.80 | 23,691.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 725 | 114.10 | 82,722.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 725 | 63.70 | 45,095.00 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 685 | 8.80 | 6,028.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 675 | 114.30 | 75,971.25 |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 645 | 0.40 | 258.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 495 | 36.90 | 18,265.50 |
| | | | | | |
| **Associate:** | | | | | |
| Alexandra K. Nellos | Litigation | 2004 (NY) | 645 | 96.10 | 61,984.50 |
| Robert Kirby | Litigation | 2008 (NY) | 535 | 17.30 | 9,255.50 |
| Megan Strand | Communications & Technology | 2009 (NY) | 495 | 9.80 | 4,851.00 |
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 495 | 23.60 | 11,682.00 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2011 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 425 | 13.60 | 5,780.00 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 425 | 89.10 | 36,975.00 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 375 | 17.00 | 6,375.00 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 375 | 106.20 | 39,825.00 |
| | | | | | |
| **Law Clerks:** | | | | | |
| Noah Brick | n/a | n/a | 275 | 3.90 | 1,072.50 |
| Julia Dobtsis | n/a | n/a | 275 | 12.30 | 3,382.50 |
| Diana Sanders | n/a | n/a | 275 | 13.00 | 3,575.00 |
| | | | | | |
| **Paraprofessionals:** | | | | | |
| Lori F. Moloney | Litigation | n/a | 320 | 1.60 | 512.00 |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 280 | 51.60 | 14,448.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 285 | 32.90 | 9,376.50 |
| Marisa Iacopelli | Litigation | n/a | 250 | 2.20 | 550.00 |
| Aram Hanessian | Bankruptcy & Financial Restructuring | n/a | 195 | 1.80 | 351.00 |
| Sarah Ingebritsen | Litigation | n/a | 190 | 4.70 | 893.00 |
| | | | | | |
| **TOTAL:** | | | | **1,163.30** | **$728,870.75** |

BLENDED RATE:      $633.84

_____

*  Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------- x | | Chapter 11 |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: August 18, 2011 @ 4:00 p.m.(ET) |
| ------------------------------------------------- x | | Hearing Date:  N/A |

## THIRTIETH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2011 THROUGH JUNE 30, 2011

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $728,870.75 (80% of which equals $583,096.60 and reimbursement of expenses incurred in the amount of $64,140.29 during the period commencing June 1, 2011 through and including June 30, 2011 (the "Application Period").  This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order").  In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.      Plan confirmation hearings for both the Debtor/Committee/Lender Plan (the

"DCL Plan") and the Noteholders' Plan commenced on March 7, 2011 and continued daily

2

through March 18, 2011. The next phase of the confirmation hearings -- which included

rebuttal witnesses, non-proponent objections to the DCL and the Noteholders' Plans and certain

legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011. Closing

confirmation arguments were held on June 27, 2011.

### COMPENSATION PAID AND ITS SOURCES

9.      All services for which compensation is requested by Chadbourne were performed

for or on behalf of the Committee.

10.     During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application. There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

### FEE STATEMENTS

11.     The fee statement for the Application Period is attached hereto as Exhibit A. This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period. To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2

(the "Guidelines"), and the Compensation Order.

### SUMMARY OF SERVICES

12.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $728,870.75. The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and

the total compensation sought for each category.

13.     The following is a summary of the activities performed by Chadbourne attorneys

and paraprofessionals during the Application Period, organized by project category.

A.     **Bankruptcy General (Matter 002)**

Fees:  $19,928.50          Total Hours:   47.50

14.     During the Application Period, Chadbourne devoted numerous hours to the

fulfillment of its professional duties and responsibilities in connection with the administration

of these chapter 11 cases including: (i) meetings with and addressing the inquiries of the

Debtors and the Debtors' professionals, other Committee professionals, the United States

Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence,

pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court

conferences on behalf of the Committee; and (iv) disseminating information to the Committee

and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks

account in order to provide a repository for memoranda and pleadings readily accessible by

members of the Committee.

15.     Chadbourne's paraprofessionals have also been required to monitor and retrieve

all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status

reports, maintain a current case calendar and post Committee-related pleadings and memoranda

to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents

and the distribution of documents both to the professionals at Chadbourne and to the members

4

of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.    Committee Meetings (Matter 003)**

      Fees:    $50,344.00            Total Hours:   77.80

16.    Regular and special meetings of the Committee (the "Committee Meetings") were held during the Application Period and generally occurred weekly, either by telephone conference or in person, to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to the key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and final plan confirmation issues and strategies.

17.    Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' cases. Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

C.    **Creditor Communications (Matter 004)**

      Fees:  $4,012.50          Total Hours:   7.50

      18.    Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to correspondence and other inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

      19.    In connection with a notice sent to all creditors regarding their rights to pursue state law constructive fraudulent conveyance claims, Chadbourne established a telephonic "hotline" and an email mailbox to enable creditors to contact the Committee's representatives regarding questions and comments regarding the notice.  Chadbourne attorneys reviewed and responded to those creditor inquiries.

D.    **Business Operations (Matter 007)**

      Fees:  $31,126.60         Total Hours:  56.90

      20.    During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group continued to be engaged in drafting an FCC-related insert for the DCL Plan Proponents'[1] proposed findings of fact and conclusions of law in support of confirmation of the DCL Plan.  Further, Chadbourne's CMT team reviewed

---

[1]    The DCL Plan Proponents include the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank.

the Noteholders' Plan Proponents[2] proposed findings of fact and conclusions of law in support

of their plan and performed legal research on specific FCC issues raised by the court filing.

Chadbourne's CMT team also prepared for the upcoming closing arguments by analyzing and

outlining the FCC issues to be raised and reviewing and commenting on related exhibits.

21.     Finally, Chadbourne attorneys continued to review and monitor issues involving

the Debtors' day-to-day business operations.  Efforts included reviewing and discussing

possible new business transactions with Debtors' counsel.  Chadbourne also reviewed weekly

operations and financial reports prepared by the Committee's financial advisors.

**E.     Claims Administration/Bar Date (Matter 009)**

Fees:  $28,014.50        Total Hours:  67.50

22.     During the Application Period, Chadbourne continued to expend efforts in

connection with the claims process.  Chadbourne reviewed and analyzed the motion of Jewel

Food Stores to allow late-filed claims and relief from the automatic stay as well as the

underlying state court complaint and related pleadings.

23.     During the Application Period, Chadbourne also learned that additional former

officers and directors of the Debtors (the "D&O Claimants") who are named defendants in the

Committee's preference actions would seek to assert indemnity claims against the Debtors and

request that such claims be treated as timely filed.  In view of the recent Bankruptcy Court

---

[2]     The Noteholder Plan Proponents include Aurelius Capital Management, Deutsche Bank Trust
Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company.

approval of two groups of very similar requests, Chadbourne participated in discussions with

the D&O Claimants' counsel, Debtors' counsel and other case parties to determine if the D&O

Claimants' request could be satisfied consensually.  Ultimately, the Committee agreed to enter

into a stipulation with the Debtors and the D&O Claimants rather than engage in further motion

practice.  The parties expect to file the stipulation in the near future.

**F.**     **Fee/Retention Applications (Matter 010)**

      Fees:   $24,956.00          Total Hours:   71.90

24.     Chadbourne expended further time during the Application Period in compliance

with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparation and

filing of Chadbourne's twenty-ninth monthly fee application and preparation and filing of the

Committee's eighteenth request for reimbursement of expenses.   In addition, Chadbourne

reviewed and analyzed quarterly fee applications for the ninth interim fee period for all case

professionals in these Chapter 11 cases and prepared a summary analysis for review by the

Committee.

25.     During the Application Period, Chadbourne expended further time on professional

retention matters.  Specifically, Chadbourne reviewed the Debtors' application for

authorization to retain Ernst & Young ("E&Y") to act as the accounting firm for resolution of

matters of dispute pertaining to contemplated closing adjustments concerning the sale of the

Chicago Cubs.  Chadbourne reviewed the 2009 formation agreement between the parties which

provided for, among other things, the retention of E&Y as arbitrator in the event of any closing

amount disputes (the "Formation Agreement").  Further, Chadbourne reviewed the Court's

order approving the Formation Agreement, as well as other related documents governing E&Y's engagement.  Chadbourne summarized its research and analysis in a report to the Committee.

26.    In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**G.    Executory Contracts (Matter 012)**

Fees:   $148.50        Total Hours:   0.30

27.    During the Application Period, Chadbourne was further engaged with the procedures for (i) fixing cure amounts and (ii) providing notice of assumption and/or assignment of certain executory contracts and unexpired leases to a successor reorganized debtor (the "Global Contract Procedures").  Chadbourne participated in discussions with Debtors' counsel and the Committee's financial advisors to monitor this on-going process to ensure that the Debtors and various counterparties to the contracts were in compliance with  the Global Contract Procedures as set forth in the Court's April 25, 2011 Order.

**H.    Avoidance Issues (Matter 013)**

Fees:   $18,704.00        Total Hours:  34.00

28.    During the Application Period, a group of eighty current Tribune employees who had been named as defendants in the preference actions (the "ECDG") requested, and was granted, the opportunity to speak with the Committee to discuss the preference actions brought against them.  In preparing for the Committee meeting, Chadbourne attorneys reviewed and prepared a report to the Committee summarizing the background and circumstances

surrounding the proceedings brought against the ECDG and relevant additional facts and background related to the ECDG.

29.    In addition, during this time, Chadbourne was engaged with follow-up related to the Committee's pending stayed preference actions against the Debtors' professionals and certain officers and directors of the Debtors.  Efforts included review of expiring tolling agreements with certain of the Debtors' professionals and conferences with the Committee's other counsel and financial advisors to coordinate efforts to obtain extensions of the tolling agreements.

I.    **Employee Issues (Matter 014)**

Fees:  $20,649.00        Total Hours:  31.20

30.    During the Application Period, Chadbourne's employee benefits and bankruptcy professionals continued to be engaged in matters with respect to former executives of the Debtors.  In particular, Chadbourne continued to examine the Debtors' proposed settlement with a former officer in connection with certain bonuses and other compensation benefits that were allegedly due.   Following a special presentation by Debtors' counsel to the Committee on the issues, Chadbourne participated in a discussion with the Committee regarding concerns with the proposed settlement and discussed alternative settlement terms.

31.    During this time, Chadbourne participated in discussions with Debtors' counsel regarding the departure of a senior Tribune executive and related next steps.  Chadbourne prepared a detailed memorandum to the Committee summarizing Chadbourne's analysis of the terms of the agreement governing the executive's departure.

**J.**    **General Litigation (Matter 017)**

Fees:  $6,951.00         Total Hours:  9.40

32.     During the Application Period, Chadbourne attorneys continued to be engaged in efforts to settle the ERISA-related disputes with the Neil litigation plaintiffs, the Department of Labor, the IRS, GreatBanc and other parties in connection with the LBO/ESOP transaction. Ultimately, the parties reached an agreement during this period.  Chadbourne attorneys participated in multiple discussions with Debtors' counsel regarding the proposed terms of the settlement and the proposed steps going forward.  Chadbourne reviewed related settlement materials and prepared an analysis of same for the Committee's review.

33.     Further, Chadbourne attorneys continued to monitor and review the various adversary proceedings pending in connection with the Debtors' Chapter 11 cases.

**K.**    **Travel (Matter 018)**

Fees:  $8,471.25         Total Hours:  22.70

During the Application Period, Chadbourne attorneys travelled to Wilmington, Delaware to attend an omnibus hearing at the Bankruptcy Court and, at a further time, the plan confirmation hearing closing arguments.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**L.**    **Shareholder Claims (Matter 020)**

Fees:  $39,074.50         Total Hours:  71.60

34.     As permitted by the Court's April 25, 2011 order ruling that the Debtors' creditors had regained the right, if any, to prosecute state law constructive fraudulent conveyance

11

("SLCFC") claims against former Tribune stockholders to recover stock redemption/purchase payments made to such stockholders in connection with the 2007 leveraged buyout of Tribune Company, the Indenture Trustees on behalf of holders of Senior Notes and PHONES Notes (the "Noteholder Plaintiffs") and retirees of The Times Mirror Company, Tribune Company, and certain affiliates or subsidiaries of Tribune Company (the "Retiree Plaintiffs") filed lawsuits in various jurisdictions asserting SLCFC claims against former stockholders of Tribune. Subject to limited exceptions, the SLCFC actions were immediately stayed pursuant to the terms of the Court's April 25, 211 order. In total, the Noteholder Plaintiffs have filed thirty-eight lawsuits and the Retiree Plaintiffs have filed four lawsuits.

35.    Accordingly, during the Application Period, Chadbourne attorneys were engaged in reviewing, analyzing and summarizing each complaint to keep the Committee apprised of the pending actions and any potential implications on the Debtors' Chapter 11 cases.

## M.    Plan Litigation (Matter 21)

Fees:  $476,490.50        Total Hours:  665.00

36.    During the Application Period, Chadbourne's team of bankruptcy and litigation professionals continued to be substantially engaged, on behalf of the Committee, in preparing for plan confirmation closing arguments as well as addressing numerous tasks in connection with plan confirmation issues.

### Post-Trial Briefing

37.    During the Application Period, Chadbourne's team of professionals continued to collaborate with the DCL Plan Proponents on researching, drafting and ultimately filing the DCL Plan Proponents' proposed findings of fact and conclusions of law, in support of

12

confirmation of the DCL Plan.  Subsequently, Chadbourne professionals expended time

reviewing and analyzing the proposed findings of fact and conclusions of law filed by the

Noteholder s' Plan Proponents and Wilmington Trust Company.  In addition, Chadbourne

reviewed and analyzed several sur-reply letter briefs filed by certain third parties in opposition

to the DCL Plan.

*Post-Confirmation Hearing Evidentiary Issues*

38.    During the Application Period, Chadbourne litigation professionals continued to

be substantially engaged in addressing post-trial evidentiary issues relating to the admissibility

of certain of the parties' confirmation hearing exhibits.  In particular, Chadbourne's litigation

team continued to research, revise and comment on the DCL Plan Proponents' motion to admit

into evidence certain documentary exhibits that had been the subject of hearsay objections (the

"Evidentiary Motion").   After rounds of drafting sessions and numerous discussions and

correspondence among the parties, the DCL Plan Proponents filed its Evidentiary Motion in

accordance with the Court's briefing schedule.  In addition, Chadbourne reviewed and analyzed

the responses of the Noteholders' Plan Proponents and Wilmington Trust Company to the

Evidentiary Motion as well as responses filed by certain non-plan proponents.

39.    During this time, Chadbourne and the other proponents of the DCL Plan

continued to review and discuss concerns raised by the Noteholders' Plan Proponents regarding

certain exhibits.  Discussions were held among the plan proponent parties on an approach to

address treatment of certain exhibits.

40.    Chadbourne attended the June 13, 2011 hearing where the Court addressed post-

trial evidentiary matters regarding the admissibility of confirmation hearing exhibits.  During a

recess, the parties conferred to discuss the substance of an evidentiary proposal put forth by

Committee counsel.  As a result, the parties reached agreement regarding the admissibility of

the disputed exhibits and the Court gave direction to the parties regarding finalizing the

evidentiary stipulation to be presented to the Court.  Chadbourne and Zuckerman began drafting

the proposed order resolving objections to the exhibits and participated in discussions with the

plan proponent parties on same.

### *Plan Confirmation Closing Arguments*

41.    During the Application Period, Chadbourne's bankruptcy and litigation

professionals were engaged in preparing for the final phase of the plan confirmation hearings

where closing arguments would be presented.  In preparing for the hearing, Chadbourne

professionals continued to review relevant documents, exhibits and transcripts and identified

and researched key issues for closing arguments.   Chadbourne participated in frequent

discussions with Zuckerman and the DCL Plan Proponents to discuss strategies and review

closing outlines and rebuttal topics.  On June 27, 2011, Chadbourne attended the hearing where

each plan proponent group presented closing arguments and rebuttal thereafter.  At the

conclusion of the hearing, the Court was adjourned without any indication as to the timing of a

decision.  Thereafter, Chadbourne prepared a comprehensive report summarizing the details of

the closing arguments for the Committee's review.

## ACTUAL AND NECESSARY EXPENSES

42.    A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $64,140.29 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.  Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

43.    Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

44.    With respect to telephone charges, Chadbourne purchased two Verizon air cards exclusively for the plan confirmation hearings.  The amount sought for reimbursement represents the cost of two air cards plus service fees.  The service allowed Chadbourne attorneys remote (Bankruptcy Court) internet access during the plan confirmation hearings in order to review and retrieve confirmation-related exhibits and documents.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

15

45.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

46.     In connection with the LBO/ESOP transaction investigation Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS").  Chadbourne continues to use the CDS services in connection with its document review during the plan confirmation discovery process.  The CDS charges incurred during the Application Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

47.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

48.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

49.     Attorneys and paraprofessionals of Chadbourne have expended a total of 1,163.30 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $728,870.75.

50.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

51.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period June 1, 2011 through June 30, 2011:  (a) authorizing compensation in the amount of $728,870.75 (80% of which equals $583,096.60) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $64,140.29 for a total of $793,011.04 (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:    July 28, 2011
          New York, New York

CHADBOURNE & PARKE LLP

By: _____
    Douglas E. Deutsch
    (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

## VERIFICATION

STATE OF NEW YORK    :
                     :  ss:
COUNTY OF NEW YORK   :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)    I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

(b)    I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)    I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
28th day of July 2011

_____
David M. Bava
Notary Public, State of New York
No. 01-6175197
Qualified in New York County
Commission Expires Oct. 9, 2011

CPAM: 4060279.2