# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 4513, 4702, 5277, 5862, 6204, 6450, 7403, 7643, and 7682** |
| | Hearing Date:  August 25, 2011 at 1:00 p.m. ET<br>Objection Deadline:  August 18, 2011 at 4:00 p.m. ET |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 9019 AND 7023 AND RULE 23 TO (I) APPROVE SETTLEMENT AGREEMENT, (II) GRANT CLASS CERTIFICATION, APPOINT CLASS REPRESENTATIVES AND CLASS COUNSEL, AND APPROVE NOTICING PROCEDURES, (III) SCHEDULE FINAL FAIRNESS HEARING, (IV) FINALLY APPROVE SETTLEMENT AGREEMENT AFTER FINAL FAIRNESS HEARING, AND (V) GRANT OTHER RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## Table of Contents

**Page**

SUMMARY OF RELIEF REQUESTED ......................................................................... 1

STATUS OF THE CASE AND JURISDICTION ........................................................... 4

BACKGROUND TO THE MOTION ............................................................................. 5

A.     State Court Wage Litigation .............................................................................. 5

B.     Proofs of Claim and Motion for Class Certification and Class Treatment ........................ 6

RELIEF REQUESTED ................................................................................................ 8

A.     The Settlement Agreement Terms Are Fair, Reasonable and Adequate ........................... 9

B.     The Notice Procedures Are Fair, Adequate and Sufficient ............................................ 12

BASIS FOR RELIEF REQUESTED ........................................................................... 13

A.     Class Certification Should Be Granted Under Rule 23 .................................................. 13

B.     Settlement Agreement Meets Legal Standards for Approval .......................................... 16

          (1)     Settlement Should Be Approved under Rule 23 ...................................... 17

          (2)     Settlement Should Be Approved Pursuant to Bankruptcy Rule 9019 ...... 18

C.     Class Counsel Should Be Appointed and the Attorneys' Fees Approved ........................ 22

D.     Approval Is in the Best Interests of the Debtors' Estates .............................................. 25

NO PRIOR REQUEST ................................................................................................ 26

NOTICE...................................................................................................................... 26

46429/0001-7803132v1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ehrheart v. Verizon Wireless,
    609 F.3d 590 (3d Cir. 2010)................................................................................16, 17

Girsh v. Jepson,
    521 F.2d 153 (3d Cir. 1975)......................................................................................18

Gunter v. Ridgewood Energy Corp.,
    223 F.3d 190 (3d Cir. 2000).......................................................................................24

Hacienda Heating & Cooling, Inc. v. United Artists Theatre Co.
    (In re United Artists Theatre Co.),
    410 B.R. 385 (Bankr. D. Del. 2009) ........................................................................15

In re Aegis Mortgage Corp.,
    Case No. 07-11119 (BLS) (Bankr. D. Del. June 25, 2010) ......................................14

In re Am. Family Enters.,
    256 B.R. 377 (D.N.J. 2000) ......................................................................................16

In re AremisSoft Corp. Secs. Litig.,
    210 F.R.D. 109 (D.N.J. 2002)......................................................................16, 23, 24

In re AT&T Corp. Secs. Litig.,
    455 F.3d 160 (3d Cir. 2006).................................................................................24, 25

In re Cendant Corp. PRIDES Litig.,
    243 F.3d 722 (3d Cir. 2001).........................................................................23, 24, 25

In re Coram Healthcare Corp.,
    315 B.R. 321 (Bankr. D. Del. 2004) ..................................................................19, 20

In re Exide Techs.,
    303 B.R. 48 (Bankr. D. Del. 2003) ..........................................................................20

In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.
    ("In re GM Truck"),
    55 F.3d 768 (3d Cir. 1995)...............................................................13, 14, 17, 25

In re Ins. Brokerage Antitrust Litig.,
    579 F.3d 241 (3d Cir. 2009).......................................................................................17

In re Janney Montgomery Scott LLC Fin. Consultant Litig.,
    No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)...............10, 25

46429/0001-7803132v1

*In re Kaiser Group Int'l, Inc.*,
    278 B.R. 58 (Bankr. D. Del. 2002) ................................................................. 14, 15

*In re Louise's, Inc.*,
    211 B.R. 798 (D. Del. 1997) ........................................................................ 20

*In re Marvel Entm't Group, Inc.*,
    222 B.R. 243 (D. Del. 1998) .................................................................... 19, 20

*In re Nashaminy Office Bldg. Assocs.*,
    62 B.R. 798 (E.D. Pa. 1986) ...................................................................... 19

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (In re Prudential)*,
    148 F.3d 283 (3d Cir. 1998) ........................................................... 13, 16, 17

*In re Rite Aid Corp. Secs. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ..................................................................... 24, 25

*In re TSIC, Inc.*,
    393 B.R. 71 (Bankr. D. Del. 2008) ........................................................ 18, 19, 20

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ...................................................................... 17

*In re World Health Alternatives, Inc.*,
    344 B.R. 291 (Bankr D. Del. 2006) ............................................................ 20

*In re Worldcom, Inc.*,
    347 B.R. 123 (Bankr. S.D.N.Y. 2006) ................................................ 14, 16, 17

*In re Zyprexa Prods. Liab. Litig.*,
    424 F. Supp. 2d 488 (E.D.N.Y. 2006) ....................................................... 23

*Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*,
    336 B.R. 87 (Bankr. D. Del. 2005) ........................................................... 19

*King v. Fox*,
    No. 97-CV-4134 (RWS), 2004 WL 68397 (S.D.N.Y. Jan. 14, 2004) ................. 23

*Myers v. Martin (In re Martin)*,
    91 F.3d 389 (3d Cir. 1996) ................................................................ 18, 19, 20

*Neuberger v. Shapiro*,
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ........................................................ 24

*Will v. Northwestern Univ. (In re Nutraquest, Inc.)*,
    434 F.3d 639 (3d Cir. 2006) ...................................................................... 19

46429/0001-7803132v1

*Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),*
    104 B.R. 659 (Bankr. D.N.J. 1989) ............................................................................14

**STATUTES**

28 U.S.C. §§ 157 and 1334 ..............................................................................................4

28 U.S.C. § 157(b)(2) .......................................................................................................4

28 U.S.C. §§ 1408 and 1409 ............................................................................................4

C.P.L.R. § 901 ..................................................................................................................6

Section 363 of the Bankruptcy Code ..............................................................1, 4, 18, 19

**OTHER AUTHORITIES**

Bankruptcy Rule 7023 ............................................................................................. passim

Bankruptcy Rule 9019 ............................................................................................. passim

Federal Rule of Civil Procedure 23 ......................................................................... passim

Tribune Company ("Tribune") and Tribune New York Newspaper Holdings, LLC

("Tribune NY" each a "Debtor" and collectively, the "Debtors" or the "Tribune Defendants")

hereby move this Court (the "Motion") for entry of an order substantially conforming with the

form of order attached as Exhibit A (the "Preliminary Approval Order") pursuant to section 363

of title 11 of the United States Code (the "Bankruptcy Code"), Rules 7023, 9014 and 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal

Rules of Civil Procedure ("Rule 23") (i) preliminarily approving the settlement agreement; (ii)

granting class certification, appointing class representatives and class counsel, and approving

noticing procedures; (iii) scheduling the final fairness hearing and establishing a process for

finally approving the settlement agreement; and (iv) granting other related relief.  In further

support of this Motion, the Debtors respectfully state as follows:

## SUMMARY OF RELIEF REQUESTED

1.      The Settlement Agreement and Release (the "Settlement Agreement"),[2]

attached hereto as Exhibit B, fully and finally settles and releases all claims under a minimum

wage class action brought by the Plaintiffs (as defined below) on behalf of individuals that

promoted and/or distributed the *amNew York* newspaper from 2004 to 2007 for a total gross

settlement amount of $325,000, of which $275,000 will be contributed by the Debtors and

$50,000 will be contributed by the Debtors' co-defendants.  The Debtors' potential liability

could be substantial if the Plaintiffs prevailed, as indicated by the $1.5 million class proof of

claim together with the individual proofs of claim filed by eighteen (18) Plaintiffs for $10,000

each.  If individual claims were asserted by every member of the Settlement Class (as defined

below), the Debtors could face even greater claims against their estates.[3]  Although the Plaintiffs'

claims are meaningful to the individuals involved, and the aggregate value of their claims

---

[2]  Any capitalized terms not defined herein are defined in the Settlement Agreement.

[3]  For example, based upon further discovery, the settlement class size has been adjusted from an estimated 1,000 members to 2,950 members.

potentially exceeds $1.5 million, the Plaintiffs' class claim is modest relative to other claims in the Debtors' bankruptcy cases, a fact the Court recognized when it ordered the parties to mediate the dispute prior to incurring the substantial costs of a trial on class certification and potentially the merits.

2.     The Settlement Agreement avoids significant litigation time and expenses in the event the class action litigation continued either in this Court or through prosecution of a relief from stay request by the Plaintiffs to return the dispute to the New York state court. This agreement was reached through use of a third-party mediator pursuant to the Court's mediation order, and through intensive, good faith, arms'-length negotiation among the parties during and after the mediation. Although the Debtors and their co-defendants strongly contend that they have meritorious defenses, have done nothing wrong, and owe no liability to the Plaintiffs in the class litigation, they have agreed to settle all claims in the best interests of their stakeholders. The Settlement Agreement—including the claims-made process and notice procedures to the Settlement Class members—clearly benefits the Settlement Class members, of which the vast majority earned annual income equivalent to the prevailing minimum wage, may never have otherwise become aware of their claims, and would likely be barred from asserting late-filed claims against the Debtors.

3.     The parties acknowledge the uncertainties of class action litigation alleging violations of minimum wage laws, and although each side believes its position is meritorious and would prevail after a full trial on the merits, the outcome of any trial is unpredictable. This uncertainty was furthered by the Court's opinion that there were good reasons to grant or deny the class certification. For the Debtors, the settlement limits liability exposure and litigation expenses—potentially in the millions of dollars—to a fixed settlement amount. The Debtors further benefit from the release of the Plaintiffs' and class members'

2

disputes and claims as against the co-defendants based upon a contractual indemnification

provision asserted by the co-defendants against the Debtors.  For the Plaintiffs, the settlement

provides certainty and an entitlement to a share of the cash settlement amount that is meaningful

to each qualified class member without further litigation.

4.      Following preliminary approval, notice will be provided to the Settlement

Class members in accordance with the Settlement Agreement by the claims administrator, and

the Settlement Class members shall have a 60-day notice period to file a claim, object to, or opt

out of the settlement, after which time, the Debtors will request final approval of the Settlement

Agreement, provided that certain conditions are met.  This two-step approval process is

consistent with class action procedures under the Bankruptcy Rule 7023 and Rule 23.

5.      Certification of the Settlement Class for settlement purposes only is

required at the same time as approval of the Settlement Agreement.  The Debtors have stipulated

to class certification for settlement purposes only under Rules 23(a) and (b) and request the

Court to certify the Settlement Class to effectuate the Settlement Agreement.  Further, the

Debtors request the Court to appoint Class Counsel to represent the Settlement Class based on

experience and adequate representation, and to appoint the Plaintiffs as "class representatives"

for the Settlement Class.

6.      The Debtors contend that the Settlement Agreement is fair, reasonable and

adequate, and within the range of reasonableness, under Rule 23(e) and Bankruptcy Rules 7023

and 9019 as to the Settlement Class members, the Debtors, their estates, creditors and parties in

interest, and that procedural fairness and due process are fully addressed by the noticing

procedures set forth in the Settlement Agreement.  The Settlement Agreement is a fixed cash

settlement in exchange for the full release and discharge of any and all disputes and claims

between the Settlement Class and the Defendants that relate to the alleged nonpayment or

3

inaccurate payment of wages for time that the members of the Settlement Class provided services in connection with the promotion and/or distribution of the *amNew York* newspaper and is not contingent on plan confirmation. Payment of the Settlement Amount and disbursements will be made following the Plan Effective Date.

7.     For these reasons, the Debtors request the Court grant preliminary approval of the Settlement Agreement.

## STATUS OF THE CASE AND JURISDICTION

8.     On December 8, 2008, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, except Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC, which filed on October 12, 2009 (each date, as applicable, the "Petition Date"). The Debtors' chapter 11 cases are jointly administered for procedural purposes only.

9.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     On December 18, 2008, the United States Trustee appointed the official committee of unsecured creditors (the "Committee").

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code, Bankruptcy Rules 7023, 9014, and 9019 and Rule 23.

4

## BACKGROUND TO THE MOTION

### A.      State Court Wage Litigation

12.      On May 31, 2007, plaintiff James Allen filed a Complaint in the United

States District Court for the Southern District of New York against the Tribune Defendants,

alleging minimum wage claims under the Fair Labor Standards Act and the New York Labor

Law (collectively, the "NYLL") on behalf of himself and others similarly-situated.[4]

13.      On July 9, 2007, Mr. Allen filed an Amended Complaint in the Southern

District of New York, adding as named plaintiffs, Charles Evans, Pearl Evans, Gary Grant,

Loretta Grant, Bill McNair, and Sean Serrao (the "Named Plaintiffs"), adding as named

defendants Mitchell's Subscription Service LLC d/b/a LBN Consulting, LLC and Morning

Newspaper Delivery, Inc. (collectively, the "Delivery Defendants" and together with the Tribune

Defendants, the "Defendants"),[5] and alleging the same wage claims.  Thereafter, the Named

Plaintiffs, through their attorneys, voluntarily withdrew this lawsuit.

14.      Following the voluntary withdrawal of the federal lawsuit, on August 20,

2007, the Named Plaintiffs filed the Class Action Complaint with the Supreme Court of

New York, County of New York (the "State Court"), against the Debtors and the Delivery

Defendants, alleging minimum wage claims under the NYLL, captioned *James Allen, et al. v.*

*Tribune New York Newspaper Holdings, LLC, et al.*, Index No. 602801/2007 (the "State Court

Case" and together with the class litigation in this chapter 11 proceeding, the "Lawsuit").  In the

State Court Case, the Named Plaintiffs alleged that they and other similarly situated individuals

were entitled to minimum wage payments as "employees" for their services as "hawkers" of

*amNew York*, a free daily morning newspaper published by Debtor Tribune NY, on the streets in

---

[4] A description of the parties' prepetition litigation activities is set forth in the Declaration of Michael D. Palmer ("Palmer Decl."), attached hereto as Exhibit D.

[5] The Debtors entered into a contract with the Delivery Defendants under which the Delivery Defendants distributed *amNew York* using "hawkers" that brought the State Court Case (as defined below) and comprise the proposed Settlement Class.  The Delivery Defendants are third party non-debtors, unrelated to the Debtors, and are not otherwise involved in the Debtors' chapter 11 cases.

the greater New York City area. The Plaintiffs sought underpayments for all hours worked as the difference between the prevailing New York minimum wage and the amount paid to each member of the class.

15.    On September 24, 2007, the Debtors served their Answer and Affirmative Defenses to the Class Action Complaint in the State Court Case, and on October 25, 2007, the Delivery Defendants served an Answer upon the Plaintiffs in the State Court Case. The Defendants assert that the "hawkers" were at all times independent contractors and not "employees."

16.    Written discovery was initiated in the underlying State Court Case to permit class certification.

17.    The Debtors' chapter 11 petitions stayed the State Court Case. At that time, the Plaintiffs had yet to move to certify the class pursuant to N.Y. C.P.L.R. § 901. In June 2009, the Plaintiffs moved to sever their claims against the Debtors from their claims against the Delivery Defendants in the State Court Case. The State Court denied the motion to sever on March 3, 2010.

### B.    Proofs of Claim and Motion for Class Certification and Class Treatment

18.    On March 25, 2009, the Court entered the Order pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date Order") [Docket No. 813]. The Bar Date Order set a general bar date of June 12, 2009 at 4:00 p.m. prevailing Eastern Time (the "Bar Date") by which any person asserting a claim against the Debtors must properly and timely file a proof of claim.

6

19.     On the Bar Date, the Plaintiffs, through their counsel, Joseph, Herzfeld, Hester & Kirschenbaum LLP ("Class Counsel"), timely filed two class proofs of claim [Claim Nos. 4938, 4939] (the "Class Claims") in the amount of $1.5 million each against Tribune and Tribune NY, and individual proofs of claim in the amount of $10,000 each for the seven (7) Named Plaintiffs and eleven (11) additional claimants (the "Opt-In Claimants," and together with the Named Plaintiffs, the "Plaintiffs" or "Class Representatives") against Tribune and Tribune NY (the "Individual Claims").[6]  The Class Claims were filed on behalf of each Named Plaintiff in the State Court Case on behalf of themselves and all others similarly-situated, which they claimed were "current and former employees of the Debtor, each of whom was an employee of the Debtor and promoted and distributed *amNew York*."

20.     On May 20, 2010, the Plaintiffs through Class Counsel filed their Movants' Motion for Class Certification and Class Treatment of Movants' Class Proofs of Claim (the "Class Certification Motion") [Docket No. 4513].  The Class Certification Motion requested this Court certify a New York minimum wage class composed of individuals "who worked for Debtors in a position in which they promoted newspapers by handing them out to people, at anytime between August 20, 2001 and December 8, 2008" pursuant to Bankruptcy Rules 7023 and 9014 and Rule 23.

21.     The Debtors filed their Objection to the Class Certification Motion on November 1, 2010 on the basis that the Class Certification Motion was untimely and prejudicial and that the Plaintiffs failed to meet the requirements of Rule 23, among other arguments, including prejudice caused by allowing late filed claims via the Class Claims well after the Bar

---

[6] The Individual Claims filed by Class Counsel on behalf of the Named Plaintiffs are:  James Allen (Claim Nos. 4910, 4911), Charles Evans (Claim Nos. 4906, 4907), Pearl Evans (Claim Nos. 4904, 4905), Gary Grant (Claim Nos. 4912, 4913), Loretta Grant (Claim Nos. 4936, 4937), Bill McNair (Claim Nos. 4926, 4927), and Sean Serrao (Claim Nos. 4922, 4923).  The Individual Claims filed by Class Counsel on behalf of the Opt-In Claimants are:  Patrick Anderson (Claim Nos. 4908, 4909), Velma Barnhardt (Claim Nos. 4916, 4917), Victor Cruz (Claim Nos. 4914, 4915), Larry Fernandez (Claim Nos. 4902, 4903), John Haywood (Claim Nos. 4934, 4935), Mark Jackson (Claim Nos. 4932, 4933), Phil Johnson (Claim Nos. 4930, 4931), Victoria McLaughlin (Claim Nos. 4928, 4929), Damion Reid (Claim Nos. 4924, 4925), Jennifer Strange (Claim Nos. 4920, 4921), and Tenisha Walcott (Claim Nos. 4918, 4919).

7

Date [Docket No. 6204]. The Plaintiffs filed their Reply Memorandum in Support of Movants' Motion for Class Certification and Class Treatment of Movants' Class Proofs of Claim on January 6, 2011 [Docket No. 7403].

22.    At the January 13, 2011 omnibus hearing, the Court directed the parties to mediation to attempt to reach a settlement prior to further litigation of the Class Claims. The Court entered an Order requiring mediation and setting forth the timetable for the mediation on January 31, 2011 (the "Mediation Order") [Docket No. 7682]. Pursuant to the Mediation Order, on March 14, 2011, the Defendants and Class Counsel, on behalf of the Plaintiffs and all similarly-situated persons, conducted an intensive, arms'-length negotiation and mediation session with Ruth D. Raisfeld, Esq., an independent mediator, and reached a settlement agreement in principle. The Debtors apprised the Court of the status of the settlement at the March 22, 2011 status conference.

## RELIEF REQUESTED

23.    By this Motion, the Debtors respectfully request that this Court enter the Preliminary Approval Order attached as Exhibit A preliminarily approving the Settlement Agreement and (i) certifying the class for settlement purposes only; (ii) appointing class representatives and Class Counsel; (iii) approving the form, manner, and content of notice for the Settlement Class and related claims administration procedures; and (iv) scheduling the final fairness hearing (the "Fairness and Settlement Hearing") no earlier than 150 days after the date of entry of the Preliminary Approval Order as the hearing date to (a) finally consider the fairness, adequacy and reasonableness of the Settlement Agreement and (b) enter the proposed order granting final approval of the Settlement Agreement substantially in the form attached as Exhibit C.

46429/0001-7803132v1

A.    **The Settlement Agreement Terms Are Fair, Reasonable and Adequate**

24.    The Settlement Agreement is the result of an intensive, full-day mediation session among the Defendants and Class Counsel, and subsequent arms'-length negotiations, conducted in accordance with the Mediation Order.  The Settlement Agreement resolves any and all claims asserted by Class Counsel, on behalf of Plaintiffs and other similarly-situated class members, and provides for a fair, reasonable and adequate outcome consistent with the requirements of settlements in the class action and bankruptcy contexts.[7]

25.    The most salient terms of the Settlement Agreement, in addition to the notice-related provisions, are summarized below:[8]

> a) Class Definition.  The Settlement Class shall be certified for settlement purposes only to include "all persons who promoted and/or distributed the *amNew York* newspaper who received an IRS Form 1099 from the Delivery Defendants for such work performed, during the period from January 1, 2004 through the Petition Date" (the "Settlement Class").[9]
>
> b) Claim Disallowance.  Upon entry of an order granting final approval of the Settlement Agreement, the Class and Individual Claims filed against Tribune and Tribune NY shall be automatically disallowed and expunged in their entirety.  A summary of the disposition of each of the Class and Individual Claims is provided in Exhibit A to the Settlement Agreement. Plaintiffs further agree not to file any other proofs of claim or to modify or amend the Class or Individual Claims without the Debtors' consent.
>
> c) Total Gross Amount.  This settlement shall be on a claims-made basis. The Defendants shall pay a total gross amount of $325,000 to fund the settlement of the Lawsuit, subject to the terms of the Settlement Agreement and final Court approval (the "Total Gross Amount").  The Tribune Defendants will contribute $275,000 and the Delivery Defendants will contribute $50,000 to the Total Gross Amount following the later of (i) entry of a final nonappealable order granting final approval of the settlement or (ii) the Plan Effective Date.

---

[7]  In the event the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the parties reserve all of their rights.

[8]  The Settlement Agreement terms summarized in this Motion do not in any way supersede or alter the terms of the Settlement Agreement, and in the event of any conflicts, the Settlement Agreement controls.

[9]  The period of time specified in the Settlement Class definition reflects information provided by the Delivery Defendants and is revised from Class Counsel's initial request for class certification.  Following discussions with the Delivery Defendants, the Parties agree that the services provided by the Delivery Defendants began on January 1, 2004.

d) Enhanced Service Awards.[10]  A total gross amount of $18,000 shall be paid to certain of the Plaintiffs[11] as enhancement awards in consideration for their time and effort actively pursuing the Lawsuit and assisting in its resolution on behalf of the Settlement Class (the "Enhanced Service Awards").  Distributions of the Enhanced Service Awards were determined by Class Counsel based on the level of involvement each recipient had in assisting Class Counsel in the Lawsuit.  (*See* Palmer Decl. ¶¶ 29 – 32).

e) Attorneys' Fees and Costs.  Defendants agree that Class Counsel should be awarded a sum equal to 33% of the Total Gross Amount after the deduction of litigation costs (the "Attorneys' Fees") and reimbursement for litigation costs in the amount of $18,364 incurred by Class Counsel in connection with the Lawsuit (the "Costs").

f) Common Fund.  The remainder of the Total Gross Amount, after the deductions for the Enhanced Service Awards, Attorneys' Fees and Costs, shall be placed in a common fund (the "Common Fund").

g) Common Fund Distributions.  Distributions from the Common Fund shall be made on a claims-made basis through the Claims Administrator. Defendants agree to pay each member of the Settlement Class who returns a valid and timely Claim Form (a "Qualified Claimant") an amount no less than $15 and no greater than $1,500 per Qualified Claimant according to the formula set forth in the Settlement Agreement.  This formula accounts for both annual adjustments in the New York State minimum wage and fluctuations in the pay scale used by the Defendants to ensure each Qualified Claimant receives a fair and reasonable distribution based on the time period during which services were provided by the Qualified Claimant. (Palmer Decl. ¶¶ 23, 25).

h) Return.  All unclaimed funds remaining in the Common Fund after conclusion of the claims-made process and reimbursement of the Debtors' payments of the Claims Administrator's reasonable fees and expenses shall revert to the Defendants (the "Return").

i) Claims Administrator.  The claims-made process as to the Common Fund shall be administered by Gilardi & Co., LLC (the "Claims Administrator" or "Gilardi"), an experienced claims administrator of class action settlements.  (Declaration of Daniel Burke ("Burke Decl.") ¶ 1,

---

[10] "Factors that courts consider in determining whether incentive awards are appropriate include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class." *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 U.S. Dist. LEXIS 60790, at *35 (E.D. Pa. July 16, 2009) (awarding $60,000 in enhancement awards for three class representatives).

[11] The Enhanced Service Awards are sought on behalf of certain Named Plaintiffs as well as certain Opt-In Claimants who have been active in the Debtors' Bankruptcy Cases, of which several claimants attended the Court-ordered mediation with Class Counsel: Velma Barnhardt, John Haywood, Phil Johnson, Victoria McLaughlin, and Tenisha Walcott.  (Palmer Decl. ¶ 19).  The Opt-In Claimants and Named Plaintiffs are together seeking to be the settlement class representatives.

attached hereto as <u>Exhibit E</u>).  The reasonable cost for the Claims Administrator is capped $22,500.  (Burke Decl. ¶ 23).  Any claims administration expense not covered by the Return shall be paid in equal thirds by the Plaintiffs and/or Class Counsel, the Tribune Defendants and the Delivery Defendants.  The Claims Administrator shall mail Notice Packets, arrange for Publication Notice, perform address validation, calculate claim payments and all payments and distributions under the settlement, and perform other tasks reasonably necessary to administer the settlement.  Gilardi is well-qualified to perform these functions.  (Burke Decl. ¶¶ 5 – 22).

j) <u>Release</u>.  Payment of the Total Gross Amount by Defendants pursuant to the Settlement Agreement shall constitute a full and complete settlement and general release of disputes and claims between the Settlement Class and the Defendants which relate to the alleged wage and hour claims and related claims for time that the members of the Settlement Class provided services in connection with the promotion and/or distribution of the *amNew York* newspaper while receiving an IRS Form 1099 from the Delivery Defendants for such services prior to and through the Petition Date, which release shall include in its effect the Defendants, and each and all of their present and former related and affiliated entities, parent companies, subsidiaries, members, owners, shareholders, officers, partners, directors, servants, employees, agents, attorneys, representatives, accountants, insurers, predecessors, successors and assigns, past, present, and future, and all persons acting under, by, through, or in concert with any of them, throughout the Universe (collectively, the "<u>Releasees</u>") from the beginning of time through the Petition Date.

k) <u>Disclaimer of Liability</u>.  Nothing contained in this Motion or the Settlement Agreement is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of the Defendants.

l) <u>Stipulation of Discontinuance</u>.  Within five (5) business days after the final approval of the Settlement Agreement, the parties shall execute a Stipulation of Discontinuance with Prejudice and file such stipulation with the State Court, with each party to bear its own costs and fees.

m) <u>Settlement Funding Date</u>.  The Tribune Defendants shall be authorized to fund their portion of the Total Gross Amount, as provided in the Settlement Agreement, no later than ten (10) business days after the Settlement Effective Date.

n) <u>Settlement Effective Date</u>.[12]  The effective date of the Settlement Agreement (the "<u>Settlement Effective Date</u>") is ten (10) business days

---

[12] The Defendants shall retain the right, in the exercise of their sole discretion, to nullify the settlement within thirty (30) days of expiration of the Settlement Bar Date, if five percent (5%) or more members of the Settlement Class opt out of the settlement.

after the Plan Effective Date or forty (40) days after the entry of a final, non-appealable order by the Court, whichever is later.

**B.      The Notice Procedures Are Fair, Adequate and Sufficient**

26.     The notice procedures set forth in the Settlement Agreement constitute fair, adequate and sufficient notice for purposes of informing all Settlement Class members of the class certification and settlement, and permitting such members to participate in the claims-made process, opt-out of the settlement, or object to the settlement in compliance with Rule 23 and due process considerations (*See generally* Burke Decl.).  The notice procedures are summarized below.

a)  Class Data List.  Within ten (10) business days after entry of the Preliminary Approval Order, the Defendants shall provide to the Claims Administrator the name and last known residential address for each member of the Settlement Class (the "Class Data List").  The Claims Administrator shall perform address updates and verifications as reasonably necessary prior to the first mailing, including one change of address search for updating addresses.

b)  Notice of Fairness and Settlement Hearing and Opt-Out Rights. Within twenty (20) business days of entry of the Preliminary Approval Order, the Claims Administrator shall send to each Settlement Class member, by first-class U.S. mail, postage prepaid to their last known address, the Notice of Pendency of Class Action Settlement (the "Notice"), substantially in the form attached as Exhibit C to the Settlement Agreement.  The Notice will be accompanied by a "Claim Form" substantially in the form attached as Exhibit B to the Settlement Agreement (collectively, the "Notice Packet").

c)  Publication Notice.  Within twenty (20) business days of entry of the Preliminary Approval Order, the Claims Administrator shall publish a written notice in the Classified Section of the *New York Post* newspaper of one-eighth (1/8) to run for one (1) business day substantially in the form attached as Exhibit D to the Settlement Agreement (the "Publication Notice").

d)  Notice Period.  The Settlement Class members will have a sixty (60) day period (the "Notice Period") from the date of mailing the Notice Packets to postmark their Claim Forms, objections, or a statement requesting to be excluded from the class ("Exclusion Statement").  The last day of the Notice Period shall be the final day upon which a Claim

12

Form, objection, or Exclusion Statement shall be deemed timely submitted (the "Settlement Bar Date").

e) Undeliverable Notices. Within five (5) business days of receiving notice that a Notice Packet was undeliverable, the Claims Administrator will perform one skip-trace on such returned mail and re-mail a Notice Packet to an updated address (if any). The parties intend that the Claims Administrator use reasonable means to locate a member of the Settlement Class.

f) Deficiency Notices. The Claims Administrator shall send a deficiency notice to any Settlement Class members that submit an improperly completed Claim Form within five (5) business days of receipt. Settlement Class members shall have no more than fifteen (15) calendar days from the mailing of the deficiency notice to postmark a written response to cure all deficiencies. Failure to timely submit a Claim Form, or a response to a deficiency notice, shall invalidate a claim and will not be considered deficiencies subject to cure, unless the parties stipulate to allow cure.

g) Claim Form Processing. All original Claim Forms shall be sent directly to the Claims Administrator at the address indicated on the Claim Form. The Claims Administrator will certify that claims were timely filed, calculate the payments to be made to each Qualified Claimant, issue payments, and communicate as necessary with each parties' counsel and the Court.

## BASIS FOR RELIEF REQUESTED

A.   **Class Certification Should Be Granted under Rule 23[13]**

27.   The Defendants have stipulated to class certification for settlement purposes only and submit that the Court should grant class certification and treatment for the Class Claim for that limited purpose only. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig. ("In re GM Truck")*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart."). To certify a class for settlement purposes, the Court must find that the proposed class meets the requirements of Rules 23(a) and 23(b). *In*

---

[13] The positions stated in this section of the Motion are intended to support approval of the Settlement Agreement and class certification solely for settlement purposes. If the Settlement Agreement is not approved or does not become binding and effective for any reason, the positions of the parties would be restored to the same position they were in prior to the Settlement Agreement and the filing of this Motion, including the Defendants' objection to class certification and opposition to all claims asserted by the Plaintiffs and Class Counsel on their behalf. Likewise, Class Counsel would retain their right to prosecute the class and individual claims and the Lawsuit.

*re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (In re Prudential)*, 148 F.3d 283,

308 (3d Cir. 1998); *In re GM Truck*, 55 F.3d at 778; *In re Worldcom, Inc.*, 347 B.R. 123, 141

(Bankr. S.D.N.Y. 2006).  The Court has the authority to certify the settlement class in the context

of bankruptcy.  *See, e.g., In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002);

*Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.)*, 104 B.R. 659, 662-63 (Bankr. D.N.J. 1989).

Delaware bankruptcy courts have recently approved similar class action settlements.  *See, e.g., In*

*re Aegis Mortgage Corp.*, Case No. 07-11119 (BLS) (Bankr. D. Del. June 25, 2010) (approving

class action settlement pursuant to Bankruptcy Rule 9019 and Rule 23); *Pontius v. Delta Fin'l*

*Corp. (In re Delta Fin'l Corp.)*, Adv. Proc. No. 08-50606 (CSS) (Bankr. D. Del. April 9, 2010)

(approving class action settlement to settle claims under the Fair Labor Standards Act ("FLSA")

and NYLL); *Caccamo v. Mortgage Lenders Network USA, Inc. (In re Mortgage Lenders*

*Network USA, Inc.)*, Adv. Pro. No. 07-51415 (PJW) (Bankr. D. Del. Aug. 5, 2009) (approving

fixed cash class action settlement to settle WARN Act class claims).

      28.    Rule 23(a) requires a showing of (1) numerosity; (2) commonality;

(3) typicality; and (4) adequacy of representation.[14]  Fed. R. Civ. P. 23(a).  The Class

Certification Motion provides the grounds for class certification, which are summarized below to

support the Court's findings of fact to support class certification for settlement purposes only.

           a)  <u>Numerosity</u>.  The potential number of class members is approximately 2,950 hawkers based upon the Delivery Defendants' books and records. The proposed settlement class is sufficiently large to make joinder of all individual class members impracticable.  Class actions involving fewer class members have been approved in the Third Circuit.  *See, e.g.,*

---

[14] The four elements of Rule 23(a) are:

    One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

        (1) the class is so numerous that joinder of all members is impracticable,

        (2) there are questions of law or fact common to the class,

        (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

        (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

*Hacienda Heating & Cooling, Inc. v. United Artists Theatre Co. (In re United Artists Theatre Co.)*, 410 B.R. 385, 392 (Bankr. D. Del. 2009) (observing that numerosity is generally met when the class size exceeds 40); *In re Kaiser Group Int'l, Inc.*, 278 B.R. at 64 (certifying a class size of 47).

b) <u>Commonality</u>. Common questions of law or fact are shared between the Plaintiffs and the Settlement Class relating to their common contract and services provided as hawkers of *amNew York* and prevailing New York minimum wage law during the class period. *See In re United Artists Theatre Co.*, 410 B.R. at 392.

c) <u>Typicality</u>. The Plaintiffs possess claims that are typical of the class, which includes hawkers of *amNew York* during the class period. *See In re United Artists Theatre Co.*, 410 B.R. at 393. The Plaintiffs suffered the same alleged injury and possess the same interests as the prospective settlement class. *See In re Kaiser Group Int'l, Inc.*, 278 B.R. at 66.

d) <u>Adequacy of Representation</u>. Plaintiffs may adequately serve as Class Representatives because they share common interests in maximizing recovery and have claims arising from the same facts and circumstances as the Settlement Class, and Class Counsel is experienced with class action litigation and capable of competently and vigorously prosecuting the action. The Debtors did not object to the adequacy of Class Counsel to represent the Settlement Class.

29.    Once the class action satisfies the four elements under Rule 23(a), the class action must also meet one of the three elements of Rule 23(b). In this case, the Class Certification Motion requested class certification under Rule 23(b)(3):

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

15

Fed. R. Civ. P. 23(b)(3). The final factor under 23(b)(3) does not apply to settlement classes as there is no trial. *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. 109, 122 (D.N.J. 2002); *In re Worldcom, Inc.*, 347 B.R. at 141, 143.

30. <u>Predominance</u>. Common issues predominate over individual variances in unpaid wages based on the shared questions of the Plaintiffs' and Settlement Class members' status while promoting and/or distributing the *amNew York* newspaper as alleged in the Class Certification Motion and supported by the finding of commonality among class members.

31. <u>Superiority</u>. Class certification and treatment of the Class Claim for purposes of settlement is in the interests of fairness and judicial economy and the settlement efficiently and fairly resolves the Class Claims, the Individual Claims, and all claims of Settlement Class members through the Settlement Agreement, thereby avoiding costly or prohibitive attempts by class members to litigate their claims individually against the Defendants, especially in light of the small dollar value of many of the claims.

**B.    Settlement Agreement Meets Legal Standards for Approval**

32. Settlement of a class action in the context of bankruptcy should meet both the standards for settlement under Rule 23(e) for federal class actions and under Bankruptcy Rule 9019(a). *In re Am. Family Enters.*, 256 B.R. 377, 429 (D.N.J. 2000) (approving class action settlement pursuant to Rule 23 and Bankruptcy Rule 9019); *In re Worldcom, Inc.*, 347 B.R. at 139-40 (applying both Rule 23 and Bankruptcy Rule 9019 to approve a class action settlement). In addition to meeting the requirements for class certification under Rules 23(a) and (b), a separate inquiry under Rule 23(e) is required to establish that the settlement is fair, reasonable and adequate. *In re Prudential*, 148 F.3d at 316. A strong presumption in favor of settlements exists in litigation, especially in the class action context. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("This presumption is especially strong in 'class

16

actions and other complex cases where substantial judicial resources can be conserved by

avoiding formal litigation'" (quoting *In re GM Truck*, 55 F.3d at 784)).  Settlements that are

achieved through a procedurally fair arms'-length process—such as use of a third-party mediator

in this case—among other factors, are entitled to an initial presumption of fairness.  *In*

*re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In re Worldcom, Inc.*,

347 B.R. at 143-44.  The benefits of settlement include judicial economy and the avoidance of

costs and risks in complex litigation such as this class action dispute.  *Ehrheart*, 609 F.3d at 595.

### (1)    Settlement Should Be Approved Under Rule 23

33.    Class action settlements are usually approved in a two step process:

preliminary approval prior to notice to the class and final approval following a period during

which class members may object to the settlement.  *In re GM Truck*, 55 F.3d at 785.  Settlements

that are "fair, reasonable, and adequate" should be approved by the bankruptcy court pursuant to

Rule 23(e).  Fed. R. Civ. P. 23(e)(2); *In re Prudential*, 148 F.3d at 316; *In re GM Truck*, 55 F.3d

at 785.  Rule 23(e) is made applicable to a class action settlement in bankruptcy by Bankruptcy

Rule 7023.  In determining the fairness of a class action settlement under Rule 23(e), the

bankruptcy court may consider a variety of factors, including:

> (i) the complexity, expense and likely duration of the litigation; (ii) the
> reaction of the class to the settlement; (iii) the stage of the proceedings and
> the amount of discovery completed; (iv) the risks of establishing liability;
> (v) the risks of establishing damages; (vi) the risks of maintaining the class
> action through the trial; (vii) the ability of the defendants to withstand a
> greater judgment; (viii) the range of reasonableness of the settlement fund
> in light of the best possible recovery; and (ix) the range of reasonableness
> of the settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009) (quoting *Girsh v.*

*Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *In re Prudential*, 148 F.3d at 317 (same); *In re GM*

*Truck*, 55 F.3d at 785 (same).

17

34.    The proposed settlement satisfies the *Girsh* factors among other factors for approval of a class action settlement in light of the presumption of fairness inherent in an arms'-length negotiated settlement. The Court recognized the complexity and costs of continued litigation when it directed the parties to mediation to negotiate a settlement prior to further litigation. The notice procedures require individual notice in addition to publication notice and give Settlement Class members an adequate opportunity to participate in the class, to opt-out, or to raise any objections whatsoever to the settlement and the claims-made process, in satisfaction of all due process concerns. The Settlement Agreement resolves class litigation commencing in 2007 in State Court and continuing in the context of the Debtors' bankruptcy cases, during which Class Counsel pursued the action, identified additional class members, and filed proofs of claim on behalf of the Plaintiffs and the putative class. The significant costs and litigation risks entailed in establishing liability and damages, and maintaining the Lawsuit strongly support settlement of the Lawsuit. The settlement is within the range of reasonableness affording the best possible recovery to the Settlement Class of a sum certain share of the settlement amount, especially for those Settlement Class members otherwise barred from filing claims against the Debtors due to expiration of the Debtors' Bar Date.

### (2)    Settlement Should Be Approved Pursuant to Rule 9019

35.    As a general policy, settlements and compromises are encouraged and favored by courts to efficiently resolve disputes in the bankruptcy context. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008). The bankruptcy court may approve a class action settlement pursuant to section 363 of the Bankruptcy Code. *See In re Martin*, 91 F.3d at 395 n.2. The procedure for approving a settlement in bankruptcy is similar to that under Rule 23(e) as set forth by Bankruptcy Rule 9019, which provides, in relevant part:

18

> On motion of the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). Approval of a settlement under Bankruptcy Rule 9019 is committed to the sound discretion of the bankruptcy court. *In re TSIC, Inc.*, 393 B.R. at 78; *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The Court, however, should defer to the debtor's business judgment when approving consensual settlements. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004). *See also In re Nashaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986) (providing that when approving a proposed settlement, the court "does not substitute its judgment for that of the trustee").

36.    Bankruptcy courts generally approve settlements that are "fair, reasonable, and in the best interests of the estate." *In re TSIC, Inc.*, 393 B.R. at 78 (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393. Bankruptcy courts consider four factors when deciding whether to approve a proposed settlement: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803). *See also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (confirming the *Martin* factors as a longstanding test for approval of settlements); *In re Marvel Entm't Group*,

19

*Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (relying on these four factors to determine fairness, reasonableness, and adequacy of a settlement). "The court must also consider 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re Marvel Entm't Group, Inc.*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424). The court may approve the settlement so long as it is "above the lowest point in the range of reasonableness." *In re TSIC, Inc.*, 393 B.R. at 79 (quoting *Official Unsecured Creditors' Comm. v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992)). In alignment with the standard for approval under Rule 23(e), the ultimate inquiry is whether, in the court's discretion, the compromise embodied in the settlement "is fair, reasonable, and in the best interests of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

37.    Probability of Success in Litigation. In evaluating the first *Martin* factor, "the Court's task . . . is to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Exide Techs.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003) (quoting *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803). The Court need not be convinced that the settlement is the best possible compromise, just that the settlement is within the range of litigation possibilities. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr D. Del. 2006); *In re Coram Healthcare Corp.*, 315 B.R. at 330. The cost of litigating class actions is significant and the outcome is highly uncertain. Although the Debtors argue that meritorious defenses exist to deny Plaintiffs' class certification in the State Court Case and in the bankruptcy proceeding, and that the Debtors have no liability to the Plaintiffs under New York minimum wage law or any other applicable wage/hour laws, the Debtors seek to minimize legal expenses and costs and achieve a fair settlement for the benefit of their estates. Class Counsel is equally cognizant of the costs and risks of litigation and likewise has concluded that the Settlement Agreement is fair and reasonable. Given the substantial risks present in any litigated

20

action, and the risk that equitable considerations may balance in favor of class certification and treatment, the Debtors contend that the Settlement Agreement is fair and reasonable under this factor.

38.     Likely Difficulties in Collection. This factor is less important in this case where the Debtors are defendants and potentially liable for the claims of the class members.

39.     Complexity of the Litigation Involved. Class actions are notorious as complex litigated matters, often because they involve difficult legal and factual issues and require numerous inquiries to (i) evaluate and certify the class under Rule 23(a) and (b), (ii) determine the adequacy of Class Counsel under rule 23(g), and (iii) develop detailed notice and claims administration procedures for class members, each of which may be litigated to some extent by the parties in addition to the merits of the lawsuit. This Court directed the parties to mediation in an attempt to reach a settlement prior to any further litigation of the Class Certification Motion, with consideration of the costs and time of litigation balanced with the reasonably modest value of the disputed Class Claims in this case. The Settlement Agreement is an outcome of the Court mandated mediation and avoids complex and time-consuming litigation involving a New York state minimum wage class action that was not certified prepetition and for which limited discovery was completed prior to the Petition Date. Pursuit of this litigation in the bankruptcy context would only escalate the time, costs, and complexity of the Lawsuit without benefit to the parties and the Settlement Class.

40.     Paramount Interest of the Creditors. The Settlement Agreement resolves asserted Class Claims in the amount of $1.5 million and Individual Claims in the aggregate amount of $180,000 against two Debtors in exchange for the all-in Settlement Amount of $325,000, of which $275,000 will be paid by the Debtors. The Debtors further benefit from the release of the Plaintiffs' and class members' disputes and claims as against the co-defendants

21

based upon a contractual indemnification provision asserted by the co-defendants against the

Debtors.  Resolution and liquidation of these disputed litigation claims serves creditors' interests

in preparing the Debtors for emergence and is well within the appropriate range of

reasonableness and fairness under Bankruptcy Rule 9019.  The Class Claims relate to an

underlying State Court Case that will be dismissed with prejudice through a Stipulation of

Discontinuance with Prejudice within five (5) business days after final approval of the

Settlement Agreement.  Further, the Settlement Agreement embodies full and final releases of all

claims relating to or arising under the Lawsuit, in exchange for the consideration and obligations

set forth in the Settlement Agreement.

> 41.     For these reasons, the Settlement Agreement is fair, reasonable and

adequate, and well within the range of reasonableness, and is in the best interests of the Debtors'

estates, their creditors and all parties in interest and the Settlement Class members.

### C.       Class Counsel Should Be Appointed and the Attorneys' Fees Approved

> 42.     Class Counsel should be appointed to represent the class in this case and

to effectuate the settlement and resolution of the Class Claims and Individual Claims.  Class

Counsel first brought the State Court Case in 2007 and has continued to actively work to

represent the interests of class members in the Debtors' bankruptcy cases.  (Palmer Decl. ¶¶ 3 –

20).  The Debtors did not dispute the adequacy of Class Counsel in their Objection, and contend

that Class Counsel has adequately identified and investigated potential claims, as evidenced by

the additional eleven (11) Individual Claims filed against the Debtors in addition to the Named

Plaintiffs, is experienced in handling minimum wage class actions, is knowledgeable of

applicable law, and has the resources necessary to represent the class.  (Palmer Decl. ¶¶ 33 – 40).

For these reasons, Class Counsel will fairly and adequately represent the class and should be

appointed by the Court as Class Counsel pursuant to Rule 23(g).

46429/0001-7803132v1

43.    Attorneys' Fees equal to 33% of the Total Gross Amount after deductions for Costs is fair and reasonable—well-within the norm for similar wage and hour class actions and third circuit precedent—and should be awarded to Class Counsel pursuant to Rule 23(h) and New York law and practice. *See, e.g., In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 496 (E.D.N.Y. 2006) (As part of class-action settlement, noting that contingency fees of 33 1/3% are "almost a national norm," yet permitting fee award up to 37.5% based upon special circumstances and results achieved); *King v. Fox*, No. 97-CV-4134 (RWS), 2004 WL 68397, at *7 (S.D.N.Y. Jan. 14, 2004) (Observing that "[a] one-third contingency fee is standard throughout the state and country.... For instance a one-third contingency fee is specifically provided for by New York Court Rules in personal injury and property damage cases." *Id.* at *5 (citing 22 N.Y.C.R.R. § 603.7)). A one-third contingency fee is presumptively valid in New York. *Id.* (citing *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 389 (S.D.N.Y. 2000)). The award of Attorneys' Fees is also consistent with third circuit guidance. *See, e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) (noting that fee awards vary by case, fee awards typically range "from nineteen percent to forty-five percent of the settlement fund"); *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. at 134 (observing that "[s]cores of cases exist where fees were awarded in the [range of] one-third to one-half of the settlement fund." (citations omitted)).

44.    The Debtors have stipulated and agreed to the Attorneys' Fees and request the Court to approve the fee award and costs as part of the final approval of the Settlement Agreement. The Attorneys' Fees meets the standards for approval in common fund cases in third circuit courts, which have repeatedly approved percentage-of-recovery fee awards in common fund cases. *See, e.g., In re Delta Fin'l Corp.*, Adv. Proc. No. 08-50606 (CSS) (April 9, 2010) (approving attorneys' fees of 33% the maximum gross settlement amount); *See In re*

23

*Cendant Corp. PRIDES Litig.*, 243 F.3d at 734 (approving percentage-of-recovery fee award in

similar case with a reverter and where claimants were unaffected by fee award); *In re AremisSoft*

*Corp. Secs. Litig.*, 210 F.R.D. at 133-34 (approving percentage-of-recovery fee award including

33-1/3% of the common stock to be distributed to the class). A percentage-of-recovery fee

award is preferred in common fund cases in the Third Circuit and is appropriate in class actions

where Class Counsel has worked on a contingency fee basis. *See In re Rite Aid Corp. Secs.*

*Litig.,* 396 F.3d 294, 306 (3d Cir. 2005) (reiterating that the percentage of common fund

approach is the proper method of awarding attorneys' fees, but acknowledging lodestar as a

cross-check); *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. at 128 (citing *In re GM Truck*, 55

F.3d at 821-22). *See also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000)

("There is no doubt that an attorney who has created a common fund for the benefit of the class

is entitled to reimbursement of . . . reasonable litigation expenses from that fund." (internal

quotations omitted)).

      45.     Third circuit courts evaluate attorneys' fee awards in common fund

settlement cases based on a non-exhaustive list of factors:

> (1) the size of the fund created and number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to
> the settlement terms and/or fees requested by counsel; (3) the skill and
> efficiency of the attorneys involved; (4) the complexity and duration of the
> litigation; (5) the risk of nonpayment; (6) the amount of time devoted to
> the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006) (quoting *In re Rite Aid Corp.*

*Secs. Litig.*, 396 F.3d at 301); *In re Cendant Corp. PRIDES Litig.*, 243 F. 3d at 733 (quoting

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

      46.     The Attorneys' Fees should be approved under *Gunter* and its progeny.

The common fund is sizeable and is intended to serve approximately 2,950 potential Settlement

Class members. The Plaintiffs have already agreed to the settlement and other class members

24

shall receive notice of the fee award and have an opportunity to object to the fee award at the Fairness and Settlement Hearing. Class Counsel has devoted time since 2007 to bring the underlying State Court Case, to appear and file claims, pursue class certification in the Debtors' bankruptcy cases, and participate in mediation and negotiation of the Settlement Agreement, in addition to responsibilities concerning the implementation of the settlement, on a contingency fee basis that is well within the norms of New York state litigation and the Third Circuit. (Palmer Decl. ¶ 43). Further, it is evident from a lodestar cross-check that the percentage-of-recovery compensation requested by Class Counsel is reasonable. *In re AT&T Corp. Secs. Litig.*, 455 F.3d at 164; *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d at 305-07; *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 742; *In re GM Truck*, 55 F.3d at 821 & n.40. At their reasonable hourly billing rates, Class Counsel has expended over $218,000 in time on the Lawsuit; accordingly, the lodestar cross-check results in a fractional lodestar multiplier of 0.463. (Palmer Decl. ¶ 45). *See In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, at *49 (finding that where the requested fee by the percentage method was a fraction of the lodestar, it "clearly confirm[ed] the reasonableness of the fee award"). For these reasons, the Attorneys' Fees should be approved by the Court.

> **D.    Approval Is in the Best Interests of the Debtors' Estates**

47.    The Settlement Agreement fully resolves a complex class action lawsuit presenting significant questions of law and fact, and requiring the involvement of a critical non-debtor co-defendant, and avoids potentially costly class action litigation. The Settlement Class benefits from the settlement as individual lawsuits would be cost prohibitive and impractical for each class member, including the time bar against untimely filed claims in the Debtors' bankruptcy cases, and the cash settlement provides a sum certain distribution on qualified claims. The Settlement Agreement was achieved through a good faith, arms'-length negotiation and

meets all the requirements for approval of a fair, reasonable and adequate class action settlement pursuant to Rule 23 and Bankruptcy Rule 9019. The Total Gross Amount of the Settlement Agreement and all payments and distributions derived therefrom, are fair and reasonable given the nature of the disputed claims and the anticipated pool of claimants, and provide a reasonable outcome for all parties involved in the settlement.

48.    The Debtors submit for all these reasons that ample justification exists for the relief requested in this Motion.

## NO PRIOR REQUEST

49.    No prior request for the relief sought by this Motion has been made to this or to any other Court.

## NOTICE

50.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the administrative agents for Tribune's prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' post-petition loan facility; (v) the indenture trustees for Tribune Company's prepetition notes; (vi) Class Counsel; (vii) counsel to the Delivery Defendants; and (viii) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[Remainder of page intentionally left blank.]

26

46429/0001-7803132v1

WHEREFORE, the Debtors respectfully request this Court enter an Order, in substantially the form attached hereto as Exhibit A, (i) preliminarily approving the settlement agreement; (ii) granting class certification, appointing class representatives and class counsel, and approving noticing procedures; (iii) scheduling the final fairness hearing and establishing a process for finally approving the settlement agreement; and (iv) granting other related relief this Court may deem just and proper.

Dated: Wilmington, Delaware
      August 4, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Candice L. Kline
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

SEYFARTH SHAW LLP
Edward Cerasia II
Aaron Warshaw
620 Eighth Avenue, 32nd Floor
New York, New York  10018
Telephone: (212) 218-5000

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ J. Kate Stickles
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

27