```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                          )   Case No. 08-13141(KJC)
                                )
                                )
TRIBUNE COMPANY                 )   Chapter 11
                                )
                                )   Courtroom 5
                                )   824 Market Street
              Debtors.          )   Wilmington, Delaware
                                )
                                )   June 27, 2011
                                )   10:00 a.m.


                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                                BY: JAMES BENDERNAGEL, ESQ.
                                BY: JAMES CARLAN, ESQ.
                                BY: JAMES DUCAYET, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000


                                Cole, Schotz, Meisel, Forman
                                & Leonard, P.A.
                                BY: NORMAN PERNICK, ESQ.
                                500 Delaware Ave., Ste. 1410
                                Wilmington, DE 19801
                                (302) 652-3131


                                Tribune Company
                                BY: DON LIEBENTRITT, ESQ.
                                435 North Michigan St.
                                Chicago, IL  60611
                                (312) 222-9100


ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For Oaktree & Angelo Gordon:   Young Conaway Stargatt &
    Taylor
    BY: BLAKE CLEARY, ESQ.
    The Brandywine Building
    1000 West Street, 17th Floor
    Wilmington, DE 19801
    (302) 571-6600

    Dewey & LeBeouf
    BY: BRUCE BENNETT, ESQ.
    BY: JAMES JOHNSTON, ESQ.
    333 S. Grand Ave., Ste. 2600
    Los Angeles, CA  90071-1530
    (213) 621-6021

For Merrill Lynch:    Potter Anderson & Carroon, LLP
    BY: R. STEPHEN MCNEILL, ESQ.
    BY: LAURIE SELBER SILVERSTEIN,
    ESQ.
    Hercules Plaza
    1313 North Market Street
    6th Floor
    Wilmington, DE  19801
    (302) 984-6033

For JP Morgan:    Davis Polk & Wardwell
    BY: ELLIOT MOSKOWITZ, ESQ
    BY: MICHAEL RUSSANO, ESQ.
    BY: DONALD BERNSTEIN, ESQ.
    BY: DAMIAN SCHAIBLE, ESQ.
    BY: LYNN BUSATH, ESQ.
    BY: ELI VONNEGUT, ESQ.
    450 Lexington Avenue
    New York, NY 10017
    (212) 450-4000

    Richards Layton & Finger
    BY: ROBERT STEARN, ESQ.
    One Rodney Square
    920 North King Street
    Wilmington, DE  19801
    (302) 651-7700

```
APPEARANCES:
(Continued)

For Barclays:                   DLA Piper
                                BY: MICHELLE MARINO, ESQ.
                                1251 Avenue of the Americas
                                New York, NY  10020-1104
                                (212) 335-4500

For Official Committee
of Unsecured Creditors:         Landis, Rath & Cobb
                                BY: DANIEL B. RATH, ESQ.
                                BY: ADAM G. LANDIS, ESQ.
                                919 Market Street, Suite 1800
                                Wilmington, DE 19801
                                (302) 467-4400

                                Chadbourne & Parke, LLP
                                BY: DAVID LEMAY, ESQ.
                                BY: THOMAS MCCORMACK, ESQ.
                                BY: HOWARD SEIFE, ESQ.
                                BY: ANDREW ROSENBLATT, ESQ.
                                BY: MARC ASHLEY, ESQ.
                                30 Rockefeller Plaza
                                New York, NY 10112
                                (212) 408-5100

                                Zuckerman Spaeder
                                BY: JAMES SOTTILE, ESQ.
                                BY: GRAEME BUSH, ESQ.
                                1800 M Street, NW
                                Suite 1000
                                Washington, DC 20036
                                (202) 778-1800

For DBTCA:                      McCarter & English
                                BY: KATHARINE MAYER, ESQ.
                                405 N. King Street, 8th Fl.
                                Wilmington, DE  19801
                                (302) 984-6312
```

```
APPEARANCES:
(Continued)
```

For Wilmington Trust:          Brown Rudnick
                               BY: MARTIN SIEGEL, ESQ.
                               185 Asylum Street
                               Hartford, CT  06103
                               (860)509-6519

                               Sullivan Hazeltine Allinson,
                               LLC
                               BY: WILLIAM SULLIVAN, ESQ.
                               4 East 8th Street, Suite 400
                               Wilmington, DE  19801
                               (302) 4268-8191

For Aurelius:                  Akin Gump Strauss Hauer & Feld
                               BY: MITCHELL HURLEY, ESQ.
                               BY: DAVID ZENSKY, ESQ.
                               BY: ABID QUESHI, ESQ.
                               BY: PHIL DUBLIN, ESQ.
                               BY: DANIEL GOLDEN, ESQ.
                               One Bryant Park
                               New York, NY 10036
                               (212) 872-1000

                               Ashby & Geddes
                               BY: BILL BOWDEN, ESQ.
                               BY: LEIGH-ANNE RAPORT, ESQ.
                               (301) 654-1888

For Law Debenture:             Bifferato Gentilotti
                               BY: GARVAN MCDANIEL, ESQ.
                               800 North King Street
                               Plaza Level
                               Wilmington, DE  19801
                               (302) 429-1900

                               Kasowitz Benson Torres &
                               Friedman, LLP
                               BY: SHERON KORPUS, ESQ.
                               1633 Broadway
                               New York, NY  10019
                               (212) 506-1969

APPEARANCES:
(Continued)

For Morgan Stanley:            Weil Gotshal & Manges, LLP
                               BY: ANDREA SAAVEDRA, ESQ.
                               767 Fifth Avenue
                               New York, NY  10153
                               (212) 310-8544


                               Barnes & Thornburg, LLP
                               BY: DAVID M. POWLEN, ESQ.
                               1000 North West St., Ste.1200
                               Wilmington, DE  19801-1058
                               (302) 888-4536

For Sam Zell/EGI-TRB:          Jenner & Block
                               BY: DAVID BRADFORD, ESQ.
                               353 North Clark Street
                               Chicago, IL  60654-3456
                               (312) 923-2975


For Great Banc:                Womble Carlyle
                               BY: THOMAS M. HORAN, ESQ.
                               222 Delaware Avenue, Ste. 1501
                               Wilmington, DE  19801
                               (302) 252-4339

For Special Committee of
Board of Directors:            Jones Day
                               BY: LAUREN BUONOME, ESQ.
                               222 East 41st Street
                               New York, NY  10017-6702
                               (212) 326-3787


For U.S. Trustee:              U. S. Trustee
                               BY: DAVID M. KLAUDER, ESQ.
                               Office of the U.S. Trustee
                               844 King Street, Suite 2313
                               Wilmington, DE  19801

TELEPHONIC APPEARANCES:

For SuttonBrook Capital:       SuttonBrook Capital
                               Management, LP
                               BY: CAROL L. BALE, ESQ.
                               (212) 588-6640

TELEPHONIC APPEARANCES:
(Continued)

For George Dougherty:           Grippo & Elden, LLC
                                BY: GEORGE DOUGHERTY, ESQ.
                                (312) 704-7700

For Official Committee of
Unsecured Creditors:            Chadbourne & Park, LLP
                                BY: MARC ROITMAN, ESQ.
                                (212)408-5271
                                BY: ALI NELLOS, ESQ.
                                (212) 408-5100
                                BY: DOUGLAS DEUTSCH, ESQ.
                                (212) 408-5169

                                Zuckerman & Spaeder, LLP
                                BY: ANDREW GOLDFARB, ESQ.
                                (202) 778-1800

For Bank of America:            O'Melveny & Myers
                                BY: DANIEL SHAMAH, ESQ.
                                (212) 326-2138

                                Bank of America
                                BY: ESTHER CHUNG, ESQ.
                                (646)858-6705

For Citibank:                   Paul Weiss Rifkind Wharton
                                BY: KIRA DAVIS, ESQ.
                                (212) 373-3000
                                BY: SHANNON PENNOCK, ESQ.
                                (212) 373-3000
                                BY: ANDREW LEVY, ESQ.
                                (202) 223-7328

For Merrill Lynch:              Kaye Scholer, LLP
                                BY: JONATHAN AGUDELO, ESQ.
                                (212) 836-8369
                                BY: MADLYN G. PRIMOFF, ESQ.
                                (212) 836-7042
                                BY: JANE PARVER, ESQ.
                                (212) 836-8510

TELEPHONIC APPEARANCES:
(Continued)

For Tribune:                     Sidley Austin
                                 BY: BRETT MYRICK, ESQ.
                                 (312) 853-1049
                                 BY: DENNIS TWOOMEY, ESQ.
                                 (312) 853-7824
                                 BY: BRYAN KRAKAUER, ESQ.
                                 (312) 853-7515
                                 BY: CANDICE KLINE, ESQ.
                                 (312) 853-7778
                                 BY: KEVIN LANTRY, ESQ.
                                 (213) 896-6022
                                 BY: ALLISON E. ROSS-STROMBERG,
                                 ESQ.
                                 (312) 853-0497
                                 BY: KERRIANN MILLS, ESQ.
                                 (312) 853-0036
                                 BY: DAVID MILES, ESQ.
                                 (202) 736-8556
                                 BY: JILLIAN LUDWIG, ESQ.
                                 (312) 853-7523
                                 BY: KEN KANSA, ESQ.
                                 (312) 853-7163
                                 BY: COLLEEN KENNEY, ESQ.
                                 (312) 853-2931
                                 BY: HILLE R. SHEPPARD, ESQ.
                                 (312) 853-2931
                                 BY: MELANIE WALKER, ESQ.
                                 (312) 853-2078
                                 BY: GREG DEMO, ESQ.
                                 (312) 853-7758

                                 Tribune Company
                                 BY: GARY WEITMAN, ESQ.
                                 (312) 222-3494
                                 BY: DAVE ELDERSVELD, ESQ.
                                 (312) 222-4707

For Anna Kalenchits:             Anna Kalenchits
                                 (212)723-1808

```
TELEPHONIC APPEARANCES:
(Continued)

For Aurelius Capital
Management:                     Aurelius Capital Management LP
                                BY: MATTHEW A. ZLOTO, ESQ.
                                (646) 445-6518

                                Akin Gump Strauss Hauer & Feld
                                BY: SHAYA ROCHESTER, ESQ.
                                (212) 872-1076
                                BY: NICHOLAS C. ADAMS, ESQ.
                                BY: JASON GOLDSMITH, ESQ.
                                (212) 872-1000

                                Friedman Kaplan Seiler &
                                Adelman
                                BY: KIZZY L. JARASHOW, ESQ.
                                (212) 833-1115

                                The Lerman Senter
                                BY: REBECCA NEUMANN, ESQ.
                                (202) 416-1082

For JP Morgan Chase Bank:       Davis Polk & Wardwell, LLP
                                BY: PETER KIM, ESQ.
                                (212) 450-3028

For Barclays:                   Barclays
                                BY: BEN WILSON, ESQ.
                                (212) 412-7642

For Eos Partners:               Eos Partners
                                BY: MIKE J. SCHOTT, ESQ.
                                (212) 593-4046

For DK Partners:                DK Partners
                                BY: EPHRAIM DIAMOND, ESQ.
                                (646) 282-5841

For EGI-TRB:                    Jenner & Block, LLP
                                BY: ANDREW VAIL, ESQ.
                                (312) 840-8688
```

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:              Schulte Roth & Zabel, LLP
                                   BY: KAREN S. PARK, ESQ.
                                   (212) 756-2036

For Deutsche Bank:                 McCarter & English
                                   BY: DAVID ADLER, ESQ.
                                   (212) 609-6847

                                   Kramer Levin, Naftalis &
                                   Frankel, LLP
                                   BY: DAVID E. BLABEY, JR.,ESQ.
                                   BY: JORDAN KAYE, ESQ.
                                   (212) 715-9100

For Chandler Bigelow:              Sperling & Slater
                                   BY: CLAIRE P. MURPHY, ESQ.
                                   (312)641-3200

For Goldman Sachs & Co.:           Goldman Sachs & Company
                                   BY: LEXI FALLON, ESQ.
                                   (212) 902-0791

For Wells Fargo:                   White & Case
                                   BY: SCOTT GREISSMAN, ESQ.
                                   (212) 819-8567

For Miller Tabak Roberts
Securities:                        Miller Tabak Roberts
                                   Securities, LLC
                                   BY: ANDREW M. THAU
                                   (212) 692-51

For Law Debenture Trust:           Kasowitz Benson Torres &
                                   Friedman
                                   BY: CHRISTINE MONTENEGRO, ESQ.
                                   (212)506-1715

For Arrowgrass Capital:            Arrowgrass Capital Partners,
                                   US, LP
                                   BY: DAVID DUNN, ESQ.
                                   (212) 584-5946

TELEPHONIC APPEARANCES:
(Continued)

For Robert R. McCormick
Foundation &
Cantigny Foundation:          Katten Muchin Rosenman, LLP
                              BY: JOHN SIEGER, ESQ.
                              (312) 902-5294


For Employees Compensation
Defendants Group:             Frank Gecker, LLP
                              BY: REED HEILIGMAN, ESQ.
                              BY: JOSEPH FRANK, ESQ.
                              (312) 276-1400


For Nealesh Jhaveri:          Citadel Investment Group
                              BY: NEALESH JHAVERI
                              (212) 651-7636


For Morgan Stanley:           Weil Gotshal & Manges, LLP
                              BY: ASHIH D. GANDHI, ESQ.
                              (212) 310-8024


For Smith Management:         Smith Management
                              BY: JENNIFER WILD, ESQ.
                              (212) 418-6877


For Tricadia:                 Tricadia Capital
                              BY: IMRAN AHMED, ESQ.
                              (212) 891-5013


For Angelo Gordon:            Angelo Gordon & Co., LP
                              BY: GAVIN BAIERA, ESQ.
                              (212) 692-0217


                              Wilmer Cutler Pickering Hale &
                              Dorr
                              BY: ANDREW N. GOLDMAN, ESQ.
                              (212) 230-8836


For Jefferies & Co.:          Jefferies & Company
                              BY: JUSTIN BRASS, ESQ.
                              (203) 708-5847

TELEPHONIC APPEARANCES:
(Continued)

| | |
|---|---|
| For Interested Party: | ERIC BILMES, In Pro Per/Pro se<br>(212) 588-5115 |
| For Dow Jones News Wires: | Dow Jones & Company<br>BY: PEG BRICKLEY, ESQ.<br>(215) 462-0953 |
| For Interested Party: | South Ferry Capital<br>BY: JASON BYUN<br>(212) 612-3340 |
| For David Chasen: | DAVID CHASEN<br>(212) 479-0631 |
| For Cooperstown Capital: | Cooperstown Capital Management<br>BY: PETER COURI, ESQ.<br>(203) 552-6900 |
| For Silver Point Capital: | Silver Point Capital<br>BY: MATTHEW EHMER<br>(203) 542-4219<br>BY: CHAIM FORTGANG<br>(203) 542-4216 |
| For Serengeti Asset Mgmt.: | Serengeti Asset Management<br>BY: NICHOLAS HEILBUT, ESQ.<br>(212) 466-2167 |
| For Nomura Securities: | Nomura Securities<br>BY: ARTHUR KAVALIS<br>(212) 667-2370 |
| For Monarch Alternative: | Monarch Alternative Capital LP<br>BY: MICHAEL J. KELLY<br>(212) 554-1780 |
| For Citi: | Paul Weiss Rifkind Wharton &<br>Garrison, LLP<br>BY: MAY KIM, ESQ.<br>(202) 223-7379 |

TELEPHONIC APPEARANCES:
(Continued)

For Corre Partners:              Corre Partners
                                 BY: STEPHEN LARN
                                 (646) 863-7157

For Credit Agreement
Lenders:                         Oaktree Capital Management
                                 BY: EDGAR LEE
                                 (213) 830-6415
                                 BY: KENNETH C. LIANG
                                 (213) 830-6422

                                 Dewey & LeBoeuf, LLP
                                 BY: JOSHUA M. MESTER, ESQ.
                                 (213) 621-6016

For Interested Party:            Brigade Capital Management
                                 BY: NEIL LOSQUADRO, ESQ.
                                 (212) 745-9758

For Great Banc Trust Co.:        Morgan Lewis & Bockius, LLP
                                 BY: RACHEL MAUCERI, ESQ.
                                 (215) 963-5000

For Timothy Knight:              Hannafan & Hannafan, Ltd.
                                 BY: JAMES A. MCGUINNESS, ESQ.
                                 (312) 527-0055

For Shachar Minkove:             JPMorgan Chase Bank, NA
                                 BY: SHACHAR MINKOVE
                                 (212) 834-7174

For Pryor Cashman:               Pryor Cashman, LLP
                                 BY: TINA MOSS
                                 (212) 326-0421

For Third Party,
Daniel Kazan:                    Dewey & LeBoeuf, LLP
                                 BY: THERESE K. NOHOS, ESQ.
                                 (312) 794-8027

For Wilmington Trust:            Brown Rudnick, LLP
                                 BY: GORDON NOVOD, ESQ.
                                 (212) 209-4940

TELEPHONIC APPEARANCES:
(Continued)

For Royal Bank of Scotland:      Royal Bank of Scotland
                                 BY: COURTNEY ROGERS
                                 (203) 897-4815

For Aaron Rosen:                 Archview Investment Group
                                 BY: AARON ROSEN
                                 (212) 728-2528

For Canyon Partners:             Canyon Partners, LLC
                                 BY: CHANEY M. SHEFFIELD
                                 (310) 272-1062

For Dominion:                    McGuire Woods, LLP
                                 BY: BETH SIEG, ESQ.
                                 (804) 775-1137

For Maglan Capital:              Maglan Capital
                                 BY: DAVID D. TAWIL
                                 (212) 300-6791

For One East Partners:           One East Partners
                                 BY: SINA TOUSSI
                                 (212) 230-4510

For Macquarie Capital:           Macquarie Capital (USA)
                                 BY: RUSHABH VORA
                                 (212) 231-6311

For Alvarez & Marsal:            Alvarez & Marsal, Inc.
                                 BY: BRIAN WHITTMAN
                                 (312) 601-4226

For Former Special
Committee:                       Skadden Arps Slate Meagher &
                                 Flom
                                 BY: JUSTIN WINEMAN, ESQ.
                                 (312) 407-0924

For Carval Investors:            Carval Investors
                                 BY: TECK WONG
                                 (952) 984-3292

TELEPHONIC APPEARANCES:
(Continued)

For Wells Fargo Bank:          White & Case, LLP
                               BY: ANDREW ZATZ, ESQ.
                               (212)819-8744

1

1  <u>WILMINGTON, DELAWARE, MONDAY, JUNE 27, 2011, 10:10 A.M.</u>

2              THE CLERK:  Be seated, please.

3              THE COURT:  Good morning, everyone.

4              ALL:  Good morning, Your Honor.

5              MR. SOTTILE:  Good morning, Your Honor.  James

6  Sottile of Zuckerman Spaeder, special counsel to the

7  official committee of unsecured creditors.

8              Your Honor, unless the Court has any preliminary

9  matters it wanted to take up, we thought we'd plunge

10 straight into closing arguments.

11             THE COURT:  I think that's a fine plan, Mr.

12 Sottile.

13             MR. SOTTILE:  Thank you, Your Honor.  Let me say

14 a few words about how the DCL side plans to present the

15 argument to the Court.

16             As the Court is well aware, we are a sometimes

17 uneasy coalition of parties with pretty different views

18 about the merits of the claims.  Nonetheless, as the Court

19 knows, we've been able to come together from very different

20 places on a settlement that all three parts of that

21 coalition support.  And we believe it will be helpful for

22 the Court in these closings to hear directly from each of

23 the three members of our group, the debtors, the committee,

24 and the lenders about their different perspectives on the

25 claims and on the settlement that's before the Court.  So

1  that the Court can appreciate why, although we come from

2  entirely different places, we all agree the settlement

3  before you is a reasonable one that the Court should

4  approve.

5          THE COURT:  And refresh me, Mr. Sottile, on the

6  division of time.

7          MR. SOTTILE:  Certainly, Your Honor.  We agreed

8  on a total of five hours as between the plan proponents

9  groups, two and a half hours per side with each side having

10  ability to reserve up to an hour for rebuttal or as the

11  Court indicated, other purposes that they find appropriate

12  to use later on in the day.  Your Honor, we anticipate using

13  perhaps an hour and 45 minutes up front and would like to

14  reserve whatever time we don't use for rebuttal thereafter.

15          THE COURT:  All right.

16          MR. SOTTILE:  Your Honor, I'm obviously going to

17  go first.  I'm going to layout why the committee believes

18  the settlement is a reasonable one that the Court should

19  approve.  Mr. Bennett will then speak and present the Court

20  with the senior lender's perspective on the claims and the

21  defenses that the senior lenders would press if those claims

22  were litigated.  I suspect the Court is going to hear Mr.

23  Bennett tell you that I got it wrong on a whole bunch of

24  things about my views on the claims.  That's okay.  I've

25  gotten used to Mr. Bennett telling me I'm wrong on a lot of

1   things over the last couple of years.  The maddening part,

2   however, Your Honor, is that sometimes he turns out to be

3   right.

4             Finally, Mr. Bendernagel and Mr. Conlan will rise

5   to set forth the debtors' perspective on these claims and

6   why the debtors believe the settlement before you is a

7   reasonable one and the importance to the debtors of emerging

8   from bankruptcy with a resolution of as many of the disputed

9   issues as possible.

10            This case turns, Your Honor, on one central

11  issue.  Is the settlement that's embodied in the DCL plan, a

12  reasonable one, that this Court should approve?  We submit

13  the clear answer that emerges for more than two weeks of

14  testimony and a blizzard of paper is yes.  The evidence

15  shows that the settlement is a fair compromise of complex,

16  hotly disputed issues, and it reflects in a very real way

17  the substantial risks that any plaintiff litigating the LBO

18  claims would face.

19            Importantly, Your Honor, and this is a theme that

20  will run throughout the presentations, the settlement that's

21  been reached is entirely consistent with and indeed was

22  guided by the examiner's conclusions on the key disputed

23  issues.  In contrast, the noteholders, after telling you at

24  trial that the examiner's report was a game changer, it

25  showed how plainly the settlement was unreasonable, now ask

1  the Court to find the examiner got it wrong on almost every

2  important issue, except where he agreed with them.  This

3  Court should approve the settlement and confirm the DCL

4  plan.

5           Your Honor, after everything the Court has seen,

6  I don't think this Court or any of the parties will dispute

7  that this is a very complicated case.  And the ultimate

8  outcome is uncertain.  Unsurprisingly, everyone of the

9  parties has different views about how strong the LBO claims

10 are and what a reasonable settlement might look like.  And

11 it's now for this Court to make a judgment on those issues.

12          The examiner's report we submit provides valuable

13 assistance to the Court in cutting through all of that

14 complexity and the partisan arguments of the parties.

15 Everyone here, Your Honor, agrees that the examiner is

16 highly qualified, that he was independent, and that he

17 undertook a very thorough analysis of the claims both on

18 their facts and the law.

19          The noteholders said in their post trial briefs

20 that the examiner performed a comprehensive factual and

21 legal review of the LBO claims.  That he was the only truly

22 independent party to undertake that review, and that he was

23 in the best position to provide the Court and the parties

24 with the most neutral assessments of those claims.  We

25 agreed.  We think they're absolutely right.  His report

1    provided essential guidance for this Court and for the

2    parties as we look at the claims in the settlement.  And,

3    Your Honor, his report and his conclusions support the DCL

4    settlement.

5              Let's take a look at what the examiner found on

6    the key issues, the likelihood of avoidance at step one and

7    step two of the LBO transactions.  The examiner like

8    everyone else, concluded that the likelihood of avoidance

9    was much higher at step two than at step one.  I don't think

10   there's any real dispute that step two is significantly more

11   likely to be avoided than step one.

12             In fact, the examiner concluded that in his

13   judgment, step two was likely to be found to be a fraudulent

14   conveyance by a Court hearing those claims.  However, he

15   found that a win on step two standing alone wouldn't do the

16   unsecured creditors a whole lot of good in the absence of

17   some kind of equitable remedy.  That reason is obvious, that

18   the step one claims if they're allowed are enormous and they

19   will swallow up the great bulk of the assets unless there's

20   some equitable remedy that will somehow prevent them from

21   doing so.

22             In contrast, if we look at the examiner's views

23   in step one, it seems clear that the examiner believes a

24   challenge of step one is more likely than not to fail.  He

25   found no credible evidence of an intentional fraudulent

1  transfer at step one.  And as to constructive fraud, he

2  looked at all three of tests for a constructive fraud, but

3  focused first on balance sheet insolvency.  And as the Court

4  is aware, the examiner found that balance sheet insolvency

5  was highly unlikely unless you collapsed the steps, you

6  counted the step two debt, the $4.2 billion in evaluating

7  solvency at step one.

8            As to whether you would collapse, the examiner

9  found that it was somewhat unlikely, although a close

10  question that a Court would collapse the two steps.  That,

11  of course, didn't end the analysis for balance sheet

12  solvency because collapse in and of itself wouldn't

13  establish insolvency.  A plaintiff pursuing step one claims

14  would still have to prove even with collapse that the

15  Tribune parent and the guarantor subsidiaries were insolvent

16  if you counted that extra debt.

17            As to that question, at the parent level, the

18  examiner found that even with collapse, it was still

19  somewhat unlikely that the Tribune parent was insolvent,

20  although it was then, in his judgment, a very close

21  question.  And as the Court is aware, and as I think is

22  apparent, the question of insolvency of the guarantor

23  subsidiaries is a significantly more difficult one for a

24  plaintiff than insolvency at the parent level.  It's

25  uncontested that the guarantor subsidiaries have about $2

1  billion less debt.  So just proving insolvency at the parent

2  does not mean that you will establish insolvency at the

3  subsidiaries.  Instead, you will have to surmount a much

4  bigger hurdle to prove insolvency at the subsidiaries as the

5  examiner found in his report.

6         It's worth noting, as the Court heard during the

7  hearing, that the examiner found insolvency was harder to

8  prove at the subs than at the parent, even though he made an

9  error with respect to ownership of the Cubs and some other

10 assets which he assumed belonged at the parent level and, in

11 fact, belonged at the guarantor subsidiary level.  And, of

12 course, the question about whether or not you can prove

13 insolvency at the subs as opposed to the parent is a

14 critical one because as Billy Sutton used to say, that's

15 where the money is.  More than 90 percent of the assets of

16 the enterprise at the relevant times are in the guarantor

17 subsidiaries.

18        The examiner then looked, after he had gone

19 through his analysis of a balance sheet insolvency, at the

20 other two tests for constructive fraudulent transfer, the

21 ability to pay debts and capital adequacy.  There on the

22 question of whether or not you should look at the step two

23 debt, he found that it was highly likely that a Court would

24 consider the step two debt in analyzing these two tests.

25 However, he found that even if you did so, it was reasonably

1    unlikely that a Court would conclude that Tribune couldn't

2    pay its debts or had inadequate capital at step one.

3            Your Honor, I'd like to pull up at this point, a

4    chart, which is Slide #1 on your screen, that illustrates

5    what happens according to the analysis by the examiner's

6    financial advisor to recoveries of the noteholders in six

7    key litigation scenarios that the examiner identified.  And

8    the scenarios, as the chart before you indicates, range all

9    the way from no avoidance at all, no avoidance at step one,

10   no avoidance at step two either at the parent or the subs,

11   to Scenario #6, which is full avoidance.  All the LBO debt

12   at the parent and the subs is avoided at step two and at

13   step one.

14           And we believe, Your Honor, that this chart is

15   highly instructive in evaluating whether or not the DCL

16   settlement is reasonable.  As you can see from the chart,

17   the DCL settlement produces a total of $432 million for the

18   noteholders.  That includes the base recovery if there were

19   no avoidance.  That's more money, Your Honor, in fact, it's

20   substantially more money than five of the six scenarios the

21   examiner evaluated.

22           THE COURT:  And where does the support for these

23   figures come from in this record?

24           MR. SOTTILE:  Your Honor, the examiner's report,

25   I think has been submitted into evidence pursuant to the

1 stipulation of the parties, thereby permitting the Court to

2 consider the tables prepared by the examiner's financial

3 advisor, which are an appendix to Volume 2 of the report.

4 These figures come directly from those tables prepared by

5 the examiner's financial advisor.  We've simply transposed

6 them into the chart.

7 THE COURT:  Okay.  And it comes from information

8 given nowhere else in the record, at least directly?

9 MR. SOTTILE:  Your Honor, I believe that

10 Professor Black, also in the course of his testimony,

11 referenced the examiner's findings as to the amounts of

12 recovery in these six scenarios, but the primary source for

13 him, as for this chart, was the tables attached to the

14 examiner's Volume 2.

15 And as I've said, all we've done here, Your

16 Honor, is pull the two numbers the examiner provided in each

17 of these scenarios.  One for cases where there were what he

18 called low intercompany balances, one where there were what

19 he called high intercompany balances.

20 Your Honor, as I say, I think it is important to

21 bear in mind that under this analysis, prepared by the

22 examiner's financial advisor, the only way you do better

23 than the DCL settlement is with a home run.  If you avoid

24 all the LBO debt at both steps, at both the parent and the

25 subsidiaries.  In every other scenario that the examiner's

1    financial advisor focused on, the settlement is a superior

2    result.

3            Now, Your Honor, the noteholders, through Dr.

4    Beron and others, have suggested this isn't very important

5    because it's only six scenarios and there are really dozens

6    or hundreds of different litigation scenarios.  With all due

7    respect, Your Honor, that's just whistling Dixie.  The

8    examiner didn't pick six scenarios out of a magic hat.  He

9    picked six that he believed were important for anyone like

10   this Court or the parties that was trying to understand the

11   likely outcome on the LBO claims.  And the ones he picked

12   are the obvious ones that I think anyone would pick who

13   wanted to understand what might happen on the claims.  No

14   avoidance, avoidance at step two just at the parent, step

15   two avoidance at both the parent and the subsidiaries, full

16   avoidance at step two and winning at the parent at step one.

17   And then finally, winning it all, both steps, both parent

18   and subs.  There are certainly additional scenarios one can

19   conjure up, Your Honor, but these are the major obvious

20   alternatives for the outcome of this litigation and only one

21   of them does better than the DCL settlement.

22           Your Honor, let me speak a little bit about the

23   committee's approach to this settlement.  In its evaluation

24   of the claims in its negotiation of the settlement.  You

25   heard the testimony from Salganik on these points.  The

1  committee carefully considered the examiner's report.  The

2  committee also did its own investigation with the help of

3  its professionals including my firm on the merits of those

4  claims.  And based on its reading of the examiner's report

5  which I just talked about the highlights of and the

6  committee's own analysis through its professionals, it

7  concluded that the settlement that's before this Court

8  reached as a result of the mediation process is a reasonable

9  one and, in fact, represents a very good result for all of

10  the unsecured creditors.

11           As I said in opening, Your Honor, this isn't a

12  settlement that just barely creeps over the low end of

13  reasonableness in the committee's judgment.  The committee

14  believes that this is a very good settlement that is well

15  within the range of reasonableness, that we want to see this

16  Court approve and that we want to see implemented because we

17  believe it's in the interests of all of the unsecured

18  creditors.

19           Why is it a good result in the committee's

20  judgment?  Your Honor, it's a good result because we think

21  it strikes the right balance between what the examiner found

22  and the committee's own views on the merits of the avoidance

23  claims at step two and step one and the risks of litigating

24  those claims.  We believe we win the claims in step two,

25  Your Honor.  If we were litigating these claims for the

1    benefit of the debtors' estates, we think that's a winner at

2    the end of the day.  This is one of the points where Mr.

3    Bennett may disagree with me.  That's not to say it's a sure

4    thing, Your Honor.

5          There are statutory defenses.  You're going to

6    hear about those from Mr. Bennett that the senior lenders

7    would advance like lack of standing, good faith, Section

8    546(e) and so forth.  And we would encounter all of those

9    defenses if the step two claims were litigated, but at least

10   from the committees' perspective, we believe we would defeat

11   those statutory defenses and the step two would be avoided.

12   Albeit with some risk and uncertainly that accompanies

13   litigation of any claims.  There is no sure thing here.

14         The problem is that if that's all you win on,

15   Your Honor, and you don't get some follow on equitable

16   relief, and I'll come back to the noteholders' argument on

17   that point, it doesn't do you much good for -- if you're an

18   unsecured creditor because avoiding step two alone doesn't

19   add much to the recoveries of the unsecured creditors.

20         Your Honor, you can see that if you look at the

21   chart and compare Scenario 1 with Scenario 3.  Scenario 1 is

22   no avoidance anywhere, and there the noteholders would

23   recover under the examiner's analysis $58 to $65 million.

24   Scenario 3 is a avoidance at both the parent and the subs at

25   step two, so a complete win at step two, but a loss at step

1  one.  All right.  That's the step two win that in our

2  judgment would likely follow on litigation.  But take a look

3  at what that does, Your Honor.  It adds only about $40

4  million to the recoveries of the noteholders under the

5  examiner's analysis as presented in these scenarios.  So

6  yes, it's a strong claim, yes, it's a claim we believe we'd

7  win if we'd fought, but it doesn't help very much.

8          In contrast, as the Court can see from Scenario 6

9  and as I think is apparent to everyone, if you get full

10 avoidance, if you avoid the LBO debt at step one and two at

11 both parent and subs, you get a full recovery.  The

12 unsecured creditors are completely made whole.  However, as

13 the Court heard in the testimony and as the examiner's

14 report we think pretty graphically illustrates, there are a

15 number of significant hurdles to winning in that scenario to

16 avoiding the debt at step one at both the parent and the

17 subsidiaries.  That's a case, Your Honor, that the committee

18 believes we could well lose.

19         And in the examiner's view, as we just went

20 through his assessment of probabilities, his conclusion is

21 that we likely would lose that claim, even though pieces of

22 it are close, where he comes down ultimately is if he were

23 deciding it based on what he has in front of him, he would

24 conclude that that is a claim that fails.  And the committee

25 had to take the risk into account that this Court or any

1   other Court litigating these claims would reach the same
2   conclusion as the examiner, that we would lose on step one
3   and, therefore, in our analysis, not get much bang for the
4   buck out of litigating these claims as compared to the DCL
5   settlement.

6           Let's take a look at what those hurdles are to
7   winning on step one and, therefore, getting a full recovery.
8   Your Honor, we noted above that the examiner found as to
9   intentional fraud that there was no credible evidence to
10  support it.  That we submit is a huge hurdle to overcome.
11  No plaintiff puts a lot of value on a claim where he looks
12  at the evidence and says I don't have any credible evidence
13  or where a neutral third party who's thoroughly looked at
14  the claims like the examiner looks at them and says I don't
15  see any credible evidence of intentional fraud.  It's not a
16  claim any litigant puts a lot of value on.

17          As to constructive fraud, Your Honor, the parties
18  at the hearing as the Court heard, focused primarily on the
19  first test, balance sheet insolvency.  And there are three
20  big hurdles in our judgment and under the examiner's
21  analysis to avoidance at step one on this test.  First,
22  there's collapse.  Second, there's whether or not with
23  collapse you can prove insolvency at the parent.  And
24  finally, there's the question of even if you prove
25  insolvency of the parent, can you prove that the guarantor

1  subs with $2 billion less debt are also insolvent?  Each one

2  of those has significant challenges for any plaintiff

3  pursuing those claims.

4          First, and I think this is uncontroverted by the

5  parties.  The two steps have to be collapsed for there to be

6  a realistic argument for balance sheet insolvency at step

7  one.  If you don't count the $4 billion of step two debt at

8  step one, there is no realistic case that any party has

9  advanced that the parent of Tribune was insolvent on a

10  balance sheet basis.  That's step one.  And collapse is not

11  a slam dunk under the examiner's analysis.  His conclusion

12  is that the chance of getting a win on collapse before a

13  Court was less than 50/50.

14          And again, as we read it, that tells us that if

15  the examiner were deciding the issue, he would say no, no,

16  collapse and, therefore, you lose the balance sheet

17  insolvency fight at step one.  If you get a win on collapse,

18  that doesn't mean your home on avoidance even at the parent.

19  You still have to prove as the examiner noted that there was

20  insolvency at step one.

21          And the Court heard at some length, testimony

22  from Professor Fischel about the challenges that a plaintiff

23  would face in trying to prove balance sheet insolvency at

24  step one even with collapse.  He pointed to all of the

25  market evidence that in Professor Fischel's judgment

1  indicated that the market believed notwithstanding the

2  issues raised by the noteholders, that Tribune was solvent

3  at step one.

4        On that issue, again, Your Honor, the examiner

5  found that while it was very close, the odds were still less

6  than 50/50 of prevailing on the argument.  Somewhat

7  unlikely, but very close is the way he described this

8  argument.  So if you get past the less than 50/50 collapse

9  point, you then have less than 50/50 chance of winning

10 according to the examiner on parent insolvency.

11       And even that, Your Honor, in our analysis

12 doesn't do you a whole lot of good because the money is

13 primarily at the guarantor subsidiary level and in order to

14 produce a substantial win that's better than the settlement,

15 you have to prove insolvency at the subsidiaries at step one

16 and that's a very difficult challenge to pass because of the

17 $2 billion less debt they face.

18       Now, Your Honor, the noteholders told you at

19 trial and I suspect you're going to hear today that none of

20 these hurdles that I've outlined matter a whole lot because

21 there's a whole bunch of other paths to a full recovery,

22 even if they don't get full avoidance at step one.  Your

23 Honor, their right, but there are other arguments that could

24 be and would be advance to produce if not a full recovery,

25 substantial recoveries for the noteholders and others

1  without avoidance of step one.  But everyone of those like

2  the arguments for step one avoidance faces very substantial

3  hurdles.  In fact, we believe the hurdles are much steeper

4  on their alternative arguments.  Every one of them presents

5  substantial risks for any plaintiff litigating the claims.

6          The noteholders tell us first, Your Honor, that

7  the collapse issue on balance sheet insolvency is not a big

8  deal, not a big problem because you don't have to prove

9  balance sheet insolvency to prove constructive fraud at step

10  one. You can prove constructive fraud in one of the

11  alternative tests, inadequate capital, ability to pay debts

12  as they come due.  And there -- and they're right, the

13  examiner concluded it was highly likely that a Court would

14  consider the step two debt to be foreseeable and, therefore,

15  taken into account on those tests.  The problem is that even

16  doing that, the examiner found that a Court was reasonably

17  unlikely to find that Tribune was insolvent on either of

18  those tests.  The committee wasn't prepared to bet this

19  settlement which produces hundreds of millions of dollars

20  more than you'd get from step two avoidance on an argument

21  that the examiner found was reasonably unlikely to succeed.

22          Second, as to the point I made about the

23  guarantor or subsidiaries and the problem that it's

24  difficult to prove insolvency there, the noteholders agree

25  that it's more difficult to prove insolvency at the

1  subsidiaries than at the parent.  You saw that in Mr.

2  Tulliano's analysis while he found in his judgment that the

3  subsidiaries were still insolvent at step one.  It was

4  clearly a much closer question, $2 billion closer, even

5  under Mr. Tulliano's analysis.

6           However, the noteholders tell you, Your Honor

7  that that isn't a big deal to a full recovery because if you

8  get insolvency just at the parent level at step one, you

9  will get enormous disgorgement recoveries, enough to make

10  the noteholders whole or at least to get them an enormous

11  recovery far in excess of the settlement.

12           Now, Your Honor, they're right, that if you prove

13  avoidance of the parent at step one, there are big

14  disgorgement dollars out there.  And if all of those

15  disgorgement dollars were going to go 100 percent to the

16  noteholders, I would say they had a pretty persuasive point

17  that this is an alternative pathway that holds out some real

18  promise.  But they're just wrong, Your Honor.  They ignore

19  two critical facts about what would happen with disgorgement

20  dollars if they came in, if you prove step one avoidance at

21  the parent which again is problematic in itself for all the

22  reasons we've talked about.

23           First, they ignore the intercompany claims that

24  the guarantor subsidiaries have against the parent.  There's

25  almost $7 billion of those.  And, Your Honor, those are

1  likely to swallow up the great bulk of any disgorgement

2  recoveries leaving relatively little for the noteholders.

3  The noteholders only answer here is to try to reconstruct

4  and adopt the intercompany claim settlement that's in the

5  DCL plan.  And with respect to Your Honor, you can't justify

6  a litigation recovery or litigation scenario based on a

7  settlement that you make up yourself which is essentially

8  what the noteholders are doing on this argument.

9          The noteholders are also ignoring when they say

10  no problem, I get all of my money from disgorgement at the

11  parent step one.  They're ignoring that the senior lenders

12  have a strong argument that they have an allowed claim as to

13  the step one debt, even if there's insolvency at step one

14  because a substantial amount of money was used to refinance

15  existing debt and for other corporate purposes that then go

16  out to shareholders.  The senior lenders, therefore, have a

17  substantial argument that they're going to have $3 billion,

18  maybe even more in protective debt following a step one

19  avoidance.  And that debt will come ahead of the noteholders

20  with respect to participation and disgorgement recoveries.

21          Now, Your Honor, I've told you that it doesn't do

22  a whole of good to win on step one avoidance at the parent

23  and that the disgorgement recoveries aren't going to go 100

24  percent to the noteholders.  You don't have to just take our

25  word for it, Your Honor.  The examiner also analyzed this

1    precise scenario where you get avoidance at the parent at

2    step one and two, but not at the subsidiaries.  And he

3    included in his analysis disgorgement recoveries.

4           And if you take a look, Your Honor, at Scenario

5    4, that represents the result.  If you get avoidance at the

6    parent at both steps, but not at the subsidiaries and you

7    get disgorgement recoveries, his analysis shows that the

8    noteholders do better for sure than in the no avoidance

9    scenario or the step two avoidance of parent only, but what

10   do they get?  They get $240 to $280 million, substantially

11   less than the $432 million DCL settlement.

12          Your Honor, the noteholders next say again in the

13   category of things that mean you don't have to worry about

14   all these hurdles that the DCL folks like to talk about.

15   They say that if you win on avoidance at step two alone,

16   that could be enough for a full recovery or at least a much

17   bigger recovery if Tribune's value is a lot more than the

18   $6.75 billion assumed in the DCL plan and that Lazard's

19   witnesses, Mr. Mandava and Mr. Chachas, the former Lazard

20   partner testified about during the hearings.  And their

21   right, Your Honor, that you can do better with just step two

22   avoidance if Tribune's value is a whole lot higher.  In

23   fact, you'd probably get a full recovery if it gets close to

24   $8 billion so long as the step one claims that are allowed

25   in this assumption don't get any post petition interest.

1          But, Your Honor, you're going to hear more about

2    this from the debtors' counsel, Mr. Bendernagel and you've

3    heard the evidence at trial.  And we submit that the

4    evidence pretty clearly showed you that Tribune's value

5    doesn't come anywhere close to $8 billion or to any number

6    significantly above the $6.75 billion.  We don't believe

7    there's a credible argument for that.  And even if the value

8    of the company was a lot higher as Mr. Bennett will describe

9    to you in some detail, the noteholders would have to prove

10   that the step one allowed claims get no post petition

11   interest and there are a number of hurdles to any such

12   argument that Mr. Bennett will detail.

13         Finally, Your Honor, we have the WEAR argument

14   that you've heard a lot about.  And that argument runs

15   something like this.  The noteholders say they can get a

16   full recovery if they just avoid step two by winning on some

17   equitable argument, one of a bundle of arguments that they

18   lump under the rubric where.

19         Your Honor, the trouble with that argument which

20   is certainly one that we would make if we were litigating

21   these claims, we've pleaded arguments that sound similarly

22   to this is that WEAR is not a legal doctrine.  It's not

23   settled law.  It's not equitable subordination.  It's not

24   equitable estoppel.  It's not any of the traditional

25   remedies that this Court or other Courts have recognized in

1    circumstances like this.  It's really a bundle of arguments

2    to make new law.

3              And those arguments as Mr. Bennett will detail,

4    face their own significant hurdles.  That's not an argument

5    that any plaintiff pursuing these claims we submit would bet

6    hundreds of millions of dollars on winning and to give out

7    that kind of value in a settlement on the chance that you're

8    going to persuade a Court.  Well I don't have the facts for

9    equitable subordination, I don't have the facts for

10   equitable estoppel, but I got some other equitable argument

11   and you ought to recognize it and get me home.  We don't

12   believe, Your Honor, that that's an argument that drives

13   substantial value.

14             Your Honor, our evaluation comes down to this.

15   Step two claims are going to win in our judgment, but don't

16   do a lot of good.  The step one claims the examiner found

17   were more likely than not to fail for a whole series of

18   reasons.  And they were particularly likely to fail as to

19   getting at the assets of the guarantor subsidiaries which is

20   where the money is.  That means this is a case that you

21   ought to settle as long as you can get full value for the

22   strong step two claim and some value for the chance that you

23   could win on step one.  That's precisely what the DCL

24   settlement before the Court does.

25             Your Honor, I've spent a lot of time talking

1 about why we believe the examiner's report supports the DCL

2 settlement.  Let me touch for a few minutes on what the

3 noteholders have to say about the examiner's report and its

4 relationship to the settlement.

5          They say basically two things.  First, they

6 presented testimony from Dr. Beron that the Court will

7 recall saying that as he read the examiner's report, it

8 doesn't support the DCL settlement.  In fact, taking the

9 examiner's conclusions, Dr. Beron says the claims are really

10 worth three times the DCL settlement, maybe more and,

11 therefore, it's unreasonable.

12          The second approach the noteholders took and you

13 see this really in the post trial briefs is to say the

14 examiner got it wrong on the key issues.  And so any

15 settlement that is premised on the assumption that the

16 examiner's report is right is going to be unreasonable.

17          Your Honor, I don't propose to spend a lot of

18 time on Dr. Beron's testimony.  We submit that the cross

19 examination at trial demonstrated pretty thoroughly to the

20 Court that he is not a reliable witness with respect to the

21 value of the claims.  As the Court will recall, he's the guy

22 who read the examiner's headline conclusions, but not any of

23 the explanation that follows.  So he didn't read more than

24 90 percent of the report.  He doesn't know anything about

25 fraudulent conveyance litigation.  He testified about how

1  important it was to know the connections between different
2  issues in a decision tree analysis, but it was perfectly
3  clear on cross examination that he didn't know what the
4  connections were between the critical issues.  He didn't
5  know whether your chances of winning on intentional fraud
6  went down if you lost on constructive fraud.  He didn't know
7  whether or not if you win on balance sheet insolvency, you
8  have a better or worse chance of winning on the other
9  constructive fraud tests.  Those are essential connections
10 to understand as Dr. Beron testified, but he doesn't know
11 what the examiner thought about any of it.

12          And finally, as the Court heard on cross
13 examination, Dr. Beron testified that he abandoned his own
14 reading of the examiner's report on one significant issue
15 and perhaps others on counsel's instruction.  It wasn't
16 because they persuaded him he was wrong, it was simply
17 because they told him to make a different assumption about
18 how to read the examiner's report.  Then he started with in
19 his own analysis.  That issue, Your Honor, had to do with
20 what happens with step one lenders participating in
21 disgorgement recoveries or distributions following step two
22 avoidance.  You don't have an opinion, we submit from Dr.
23 Beron based on the examiner's report, you have an opinion
24 from counsel.

25          For all of these reasons, Your Honor, Dr. Beron's

1  testimony is fundamentally unreliable and says absolutely

2  nothing about the value of the claims or the reasonableness

3  of the settlement.

4          Now, Your Honor, I've mentioned a couple of times

5  that the noteholders in their post trial briefs ask you to

6  find that the examiner got it wrong on a whole series of key

7  issues.  Let's pull up Slide #5 on the examiner's

8  conclusions.  Your Honor, I don't want to belabor this

9  because I think it's kind of obvious looking at this summary

10 here.  But let me just touch on a couple of these.  The

11 noteholders say in their post trial briefs, the examiner's

12 analysis of solvency at step one, the critical issue, Your

13 Honor was incomplete.  It's analysis of [indiscernible] was

14 also incomplete.  He erred when he didn't collapse step one

15 and two.  He overlooked the strong evidence of intentional

16 fraud at step one according to the noteholders, although

17 they haven't pointed to any evidence that wasn't available

18 to the examiner.  He failed to over recognize or he

19 overlooked problems in the projections.

20          Again, I don't want to belabor it, but I think

21 it's obvious that the noteholders in their post trial briefs

22 are asking you to find the examiner got it wrong on all the

23 key issues where they faced risks on the claims.  The only

24 place apparently where they think he got it right on an

25 issue that drove dollars is on the step two claims where he

1  agreed to them.

2            Your Honor, I would love it if I could pick and

3  choose from the examiner's conclusions.  There are some

4  things there I don't like where I think his analysis doesn't

5  agree with mine.  But if you are going to try to justify or

6  attack the DCL settlement on the basis of the examiner's

7  conclusions, you have to take it as a whole.  You can't just

8  take the parts you like.  The noteholders we submit are

9  asking the Court to take just the parts they like that go

10  their way.  We on the other hand, Your Honor, ask you to

11  take the examiner's report as a whole as I've described it,

12  lay it down against the DCL settlement, and we submit that

13  the Court will then conclude that the settlement is a

14  reasonable one.

15            Your Honor, let me conclude this way.  The bottom

16  line as we see it is that this is a case that's filled with

17  risks on litigation of the claims.  The outcome is highly

18  uncertain, the claims where we have some confidence don't

19  drive a lot of dollars, the other claims have lots of

20  hurdles as the examiner found and as we concluded from our

21  own review.  The only independent person to look at the step

22  one claims that produce a lot of dollars, the examiner

23  concluded they were unlikely to succeed.  The settlement

24  reflects that bottom line.  It's a much larger recovery than

25  we would expect to get from a victory at step two.  It's

1  much less than we would expect from a victory at step one

2  reflecting the hurdles identified by the examiner and his

3  evaluation of the likelihood of success on that claim.

4         It's also important, Your Honor, I think in

5  looking at this to remember that the headline up front

6  dollars to the noteholders in the DCL settlement, the $432

7  million is not everything.  There is a litigation trust from

8  which noteholders and other participants would end up

9  getting the lion's share of the recoveries that could

10 significantly increase the $432 million if the claims are

11 successful.  And if the Court were to make the kind of

12 findings and conclusions the noteholders ask you to make

13 about the merits of those claims, they ought to have very

14 substantial value and weigh significantly in the minds of

15 the noteholders at least in evaluating this settlement.

16        Your Honor, other than noteholders themselves,

17 the creditors largely agree with the assessment I have just

18 outlined for you that the committee has made about the

19 merits of the claims and the settlement.  I think three big

20 points stand out from the creditors' votes that I would ask

21 the Court to bear in mind.

22        First, if you look at the votes of the parent

23 unsecured creditors or essentially in the same position as

24 the noteholders benefit from the same LBO claims, they voted

25 overwhelmingly in favor of the DCL plan.  They don't want to

1    gamble the examiner got it wrong again, and again, and again

2    which is what the noteholders ask you to do.  While a

3    majority by an amount of the senior noteholder class voted

4    to reject the DCL plan, I think it's instructive that 70

5    percent by number of creditors accepted the DCL plan.

6            Finally, Your Honor, as the Court is aware from

7    the voting, there are only three of the more than 250

8    impaired classes that voted to accept the noteholders' plan,

9    the senior noteholders themselves or the votes dominated by

10   Aurelius, the PHONES holders were contractually subordinated

11   and need a litigation grand slam to get anything in a class

12   that had one voting claim for $47.10 that the noteholders

13   chose not to re-solicit, it's now deemed to reject as a

14   result.

15           I submit there's no real question.  The creditors

16   overwhelmingly prefer to the DCL plan and approve the

17   committees' judgment that the settlement is a reasonable

18   one.  It's a fair compromise, Your Honor, of risky

19   litigation that yields large certain dollars payable right

20   now.  It's consistent with and guided by the examiner's

21   valuation of the claims.  The only neutral party to take a

22   hard look at these claims which this Court we submit should

23   rely.  It's supported by the debtors, the committee, the

24   senior lenders, and almost all of the voting classes of

25   creditors other than the senior noteholders and the PHONES.

1 It's well within the range of reasonableness and we ask this

2 Court to approve it as part of the DCL plan.  Thank you,

3 Your Honor.

4          THE COURT:  Now what enterprise valuation do the

5 PHONES and EGI-TRB come into the money?

6          MR. SOTTILE:  Your Honor, I don't have the figure

7 to hand, but we can provide it in the course of the

8 argument.  It has to get very substantially higher than

9 $6.75 billion and you have the post petition interest thing,

10 but I do not have the number immediately to mind.  We will

11 get it to the Court in the course of the day, if I may.

12          THE COURT:  Okay.  Then there's a second part to

13 that question.

14          MR. SOTTILE:  Certainly, Your Honor.

15          THE COURT:  If we don't get to that number, do I

16 have to decide priority between EGI-TRB and the PHONES?  And

17 do I have to decide the intra-class problem within the

18 PHONES?

19          MR. SOTTILE:  I'm just making a note, Your Honor.

20 Your Honor, those are issues that we're prepared to address,

21 but I have to confess, I'm not the person who was prepared

22 to address them and with the Court's indulgence, I would ask

23 that they defer until the person who is prepared to address

24 them can do so.

25          THE COURT:  Thank you.

1            MR. SOTTILE:  Thank you very much, Your Honor.

2            MR. BENNETT:  Good morning, Your Honor.  Bruce

3    Bennett on behalf of certain of the credit agreement lenders

4    and in my remarks today, I speak in large part for all of

5    the credit agreement lenders.

6            Mr. Sottile focused on the reality that the

7    examiner's report does support the fairness of the proposed

8    settlement.  And, of course, the noteholders' brief and

9    their proposed findings not only say that the examiner was

10   wrong in all respects, they just say we're going to win the

11   litigation in every single issue.  And while we've been

12   pretty quiet throughout the trial because we thought the

13   appropriate focus should be whether the settlement is

14   reasonable and we thought the best evidence of that was what

15   the examiner's report said taken at face value, not edited

16   for anything other than manifest errors, the lenders do not

17   agree that everything in the examiner's report is exactly

18   right.  And we also think that there's certain things that

19   require some special emphasis.  And for most of my argument

20   today, I'm going to try to jump to those issues.

21            I will say that Mr. Sottile said I'm going to

22   take about a lot of different points and I'm going to try

23   to, but I'm severely limited as to time.  That's Mr.

24   Sottile's doing.  He doesn't want to hear too much of my

25   side of the case.  And we really don't want to be fighting

1  again.  By the way, I also asked Mr. Sottile when he gave me

2  my time if I could measure them on the scale of Sottile

3  minutes --

4  (Laughter)

5        MR. BENNETT:  -- and he said I couldn't do that

6  either.  So I may not get to all the points, but I will try

7  to.  We have some charts.  They are guides really to --

8  because I want to kind of hit certain points in the outline,

9  but not the whole outline because Your Honor, of course, has

10 heard the whole outline before.

11       And my first point deals with collapsing.  And

12 where we are on the map is that we have a transaction where

13 there are two parties divided by six months.  We all know

14 why this is important because, of course, integration is

15 crucial if anyone's going to take a serious run at the step

16 one transfers.  And the six month delay was of course

17 because there were certain contingencies that had to be met.

18 And I just want to spend a few minutes focusing on two.

19       One of them, FCC approval.  When the noteholders

20 talk about collapsing FCC approval as a slam dunk, no

21 brainer, not a real contingency, but we spent hours in this

22 courtroom discussing FCC approval and the uncertainties and

23 difficulties of the process in connection with the

24 confirmation of the DCL plan.  And an interesting part about

25 it is -- two interesting parts.

1          First of all, if you go back four years to the

2    '07 review, while the cross ownership issue was already a

3    little bit receding from the FCC agenda, it used to be

4    totally unacceptable to have competing properties, TV and

5    newspapers in the same market.  That had been substantially

6    relaxed, but not gone.  And at the end of the day, it was a

7    really close vote.  And here we have a much less relaxed

8    attitude.  It's been continuously relaxed over years about

9    cross ownership.  And a plan that has all kind of

10   flexibility to make the problem go away if the FCC chooses

11   to raise it, which there's a controversy as whether they

12   even will.

13          I would say that in a more relaxed environment

14   what was proved before your Court is that you can say many

15   things about the FCC process, but the results are never

16   certain, that there's risk connected to it, and I think you

17   cannot do anything else but conclusion that back in '07,

18   when, in fact, the review was a bit more searching because

19   the issues were a little bit more intensively evaluated, at

20   least a little bit more intensively evaluated, it was at

21   least as uncertain or -- and probably much more uncertain

22   than the impression that was left from the parade of experts

23   that Your Honor heard on the FCC today.

24          I think it's also interesting that this very week

25   we have a situation where major league baseball was called

1    upon to approve a transaction relating to a certain team

2    called the Dodgers and --

3              THE COURT:  They'll be sitting upstairs shortly.

4              MR. BENNETT:  Yeah, I'm headed there tomorrow.

5    And the transaction they're involved of course was one that

6    many other teams have done in prior years, but when the

7    Dodgers wanted to do it, the commissioner said no.  He says

8    this is a different case.  So the argument that an approval

9    by major league baseball of a transfer of control of a

10   baseball team to a particular person was slam dunk and not a

11   serious condition, I also think that is not credible.

12             THE COURT:  You think they're all not as easy as

13   the Cubs?

14             MR. BENNETT:  They're all not as easy as the

15   Cubs.

16   (Laughter)

17             MR. BENNETT:  And then the last point I want to

18   make with respect to this -- the whole issue of how -- for

19   how clear it was that step two was really going to happen is

20   the breakup fee.  Remember, the breakup fee in the

21   transaction was $25 million which I did a little math myself

22   and it's something on the order of .21 percent.  Not 21

23   percent, not 2.1 percent, .21 percent of kind of an

24   estimated transaction value.  We know about breakup fees in

25   Bankruptcy Court, we do that all the time.  We have

1   decisions that talk about a range somewhere in the mid 2's

2   to 4, not .21.  And my point here is is that this was a

3   transaction that wasn't wired nearly as tightly as other

4   transactions.  It was so loose that again, you can't call

5   them integrated, connected, or collapsed.

6         We have a slide that shows you the Tribune stock

7   price.  And this is really going to be the first of several

8   slides I'm going to talk about that focuses on real market

9   data.  It's in the record.  I think the exact reference,

10  it's in the examiner's report is on the bottom of the slide

11  on the lower right hand side.  And this shows that the

12  people in the market understood that there was uncertainly.

13  What would this curve look like if the market thought that

14  this was a transaction that was prewired, tightly

15  integrated, never any risk as to close?  Well it would start

16  with a discount at the beginning representing the interest

17  factor because you weren't going to get your money for six

18  or so months later.  And it would gradually approach the

19  actual offer price and coincide with it or nearly coincide

20  with it at the very end.

21        That's not what this chart looks like.  It is

22  completely different than what you would expect the market

23  to have done if the market thought that these two

24  transactions were really integrated and should be collapsed.

25  It's not even close.

1          And when it comes to collapse, this is another

2    area where what the examiner said in his headlines is quite

3    a bit different from what he says when he's actually

4    performing his analysis.  Professor Klee ends with in Volume

5    2, Pages 181 to 182, obviously something that Mr. Beron

6    didn't manage to get to that in order to collapse these two

7    transactions, the step one transaction, the step two

8    transaction, a Court would have to expand on existing law

9    and disregard in a very tangible way, substantive aspects of

10   the leveraged ESOP transactions.  What are things he's

11   talking about that you would have disregard?  You'd have to

12   disregard the existence of real contingencies, small breakup

13   fee, and a market that assessed all of those things as

14   mattering quite a bit.

15         So from the perspective of the lenders, we don't

16   think collapse is a close call.  We certainly don't think

17   it's -- we certainly don't think it's a slam dunk.  And we

18   certainly don't think that the examiner got it wrong.

19         Now let's talk a little bit about solvency.  And

20   I'm going to focus on balance sheet insolvency for the time

21   being because quite frankly, even assuming collapse, the

22   examiner found that the cash flow tests were met and

23   substantially met.  He didn't -- particularly at the

24   subsidiary levels.  We'll talk about that maybe a little

25   later.  But the closer one was the balance sheet test.

1             And I guess the overarching point throughout this

2    presentation is the market evidence is the evidence that has

3    to matter the most, particularly in this context.   This

4    isn't just my idea.   This is a Third Circuit idea.   And the

5    place I think you start is the *Vlasic Pickle* case, the *VLF -*

6    *- VFB, LLC vs. Campbell Soup* and the quotes are on the

7    chart.   I'm not going to repeat them.   The Court comes down

8    very, very clearly in favor of market evidence when it's

9    available as opposed to after the fact expert testimony

10   concerning what happened way back when.   It's worth --

11            THE COURT:   If it's available and when it's

12   complete.

13            MR. BENNETT:   That's correct.   And we'll talk

14   about what is available and what we have here and how much

15   we have here.

16            I would have to say that the -- that if you're

17   going to read one case about this topic, I think *Iridium*'s

18   even better because Judge Peck really breaks down the kind

19   of problems he was having with the expert testimony offered

20   in its departure from market evidence.   And very, very

21   forcefully says that I've got market evidence, that's got to

22   be much more reliable than some expert who comes and redoes

23   projections with hindsight or uses, choose other indicia as

24   opposed to what people out there in the market who were

25   risking money were doing.

1            But I want to sit and reflect of why of all cases

2    is this case -- where that approach makes a lot of sense.

3    Let's think about 2007.  I think everybody admits that in

4    2007 there were problems affecting the publishing industry.

5    That was well known.  What people didn't really focus on,

6    but certainly the examiner mentions is that there were many

7    views out there about how well the industry would face those

8    problems and what they were going to do about them and how

9    it would come out in the end.

10            And the other part that we have to do which is

11    very hard, I find this very hard for myself is to remember

12    that the facts on the ground in 2007 are not exactly and not

13    even close to actually the facts that are on the ground

14    today or the facts that were even on the ground in 2008 or

15    2009.  To the publishing industry, it's probably relevant

16    that there was no such thing as the iPad in 2007.  And then

17    when I looked it up, it surprised me that at the closing of

18    step one, there wasn't such a thing as the iPhone.  The

19    iPhone wasn't introduced, wasn't sold until June 29, 2007.

20    At the time of step one, it was announced product, not a

21    circulating product.  No one knew what it was going to mean.

22            Moreover, and this point's been made many times

23    before, Your Honor, and you certainly know that is that in

24    the spring of 2007, we didn't have a financial crisis yet.

25    We still had an increasing stock market.  So against the

1  background that was at least ambiguous in lots of directions

2  in terms of prospects for the economy which of course

3  affects publishing, of course affects broadcasting, when

4  we're talking about prospects, you know, specifically about

5  how the market is going to evolve, people don't know what we

6  know today and we really can't imagine.  I don't think we

7  can imagine.  I have a hard time remembering what was the

8  world like before iPhones.  And we're going to soon not have

9  a hard time remembering what it was like before iPads.  So

10 if we want to go back to then, we probably should be looking

11 at some objective data that shows, you know, people making

12 business decisions without their iPad and without their

13 iPhone, what were they doing?  And so we have a couple of

14 charts, again from the record, examiner's report.

15          The next one is what was going on all the way up

16 to the last deadline -- the last line is the closing of step

17 one in the index that the examiner chose to look at

18 publishing stocks.  It's essentially flat.  So the -- yes,

19 there may have been secular declines or declines in certain

20 statistics and the noteholders point them out all the time,

21 but there were people trying to do something about that and

22 people who were making bets with money who were saying the

23 party's not over yet, or they might be able to find a way,

24 or they are finding a way to maintain the businesses in the

25 face of the challenges we were confronting then.

1           Next chart.  Your Honor, I'm sure noticed that

2    whenever they talk about Tribune's business at or about the

3    time of '07, the focus is on publishing.  If you read

4    carefully the numbers, the declines are about publishing.

5    The challenges are about publishing.  They don't ever talk

6    about broadcasting, although it was still a material part of

7    the business back then.  Of course now when they talk about

8    high values, they talk about broadcasting and they talk

9    about internet and stuff like that, but back -- whenever

10   they talk about '07, they're talking about publishing.  But

11   it's worth looking at broadcasting, too, because that was

12   also a significant part of the business, this chart's

13   broadcasting, that era, flat.

14           The -- I'm going skip over the next chart and go

15   right to the scattered diagram of bond prices.  Again,

16   talking about a complete record.  We are told, of course,

17   that this chart isn't any good because there's not enough

18   transactions.  And this is the transaction of bond prices.

19   Well let's think about this a second. If you have a market

20   that's illiquid, do we talk about an illiquidity premium or

21   do we talk about an illiquidity discount?  Of course when a

22   market is illiquid and people have to make transactions,

23   there is an illiquidity discount.  So what is the Tulliano

24   criticism of this chart really mean?  It means that if

25   anything, these prices are understated not overstated.  And

1    so is this a reliable indication?  The examiner thought so.

2    I think so, too.

3            But now let's talk to the next place where

4    Tulliano goes.  And what Tulliano next tries to do is he

5    says okay, I'm going to ignore the numbers that we've got

6    from actual bond trades.  I think I've got a better market

7    to look at and that's the CDS market.  Well I dug into his

8    index by the way and because there is no market for CDS.

9    You can't actually go to an exchange and find closing

10   prices.  We don't actually know and he doesn't actually know

11   how liquid this market is because when you look at the

12   Bloomberg page and say what is this stuff?  It's bid ask

13   prices.  It's midpoint of bid ask prices.  So it's what

14   people say they will do transactions at.  And so his premise

15   that there was high volume is something that doesn't stand

16   up very well to a test.

17           But now let's look at what he did.  And we call

18   it statistical mischief.  We used to say how to lie with

19   statistics because there's a book actually by that title.

20   The chart underneath which we'll show you the full page in a

21   second and if your -- if you have the hard copy, it's on the

22   next page.  Is the chart from the Bloomberg, the entire

23   relevant Tribune history covering the step one and step two

24   transactions all the way to the bankruptcy filing.

25           And remember the assertion was that with the

1   Tulliano figure 41 was that there was something about step

2   one that caused the market to go haywire and to all of a

3   sudden reflect that there was insolvency on the horizon.

4   Well, we don't have to guess what a CDS market looks like

5   when an insolvency proceeding is on the horizon because we

6   got it on the next page.  We have it at the time of the

7   filing.  We have it a month before the filing.  We have it

8   two months before the filing.  And we see what it looks like

9   when an insolvency case is becoming a foregone conclusion.

10          And when we look at Mr. Tulliano's chart, we see

11  that he tried to make it look like something and now we

12  decide well how did he do it?  And this is something that I

13  try to focus everyone in my department on.  Whenever you're

14  given a chart, the first thing you do is look at the scale.

15  And you particularly do it by the way, not applicable here,

16  is when the scale is on both sides, that's when the mischief

17  gets really bad is when there's two different scales on both

18  sides of the chart.  And we see he wanted to make the

19  movement that is indecipherable when put in context with the

20  entire relevant range of price movements during the history

21  of the Tribune CDS and he shakes it up by blowing it up and

22  cutting it off prematurely.

23          Okay.  What does the chart really show?  The

24  chart really shows that the movement with respect to step

25  one if one can find any and give any meaning to it, most

1    certainly is not comparable at all to the kind of shake up

2    caused by lots of other events that we could locate on the

3    chart.  And most importantly, it is not a reflection of a

4    looming bankruptcy case.  We know what a looming bankruptcy

5    case looks like and it's all the way to the right.

6              So he has to search for market evidence.  He

7    knows it.  He knows the *Vlasic Pickle* case is out there.  He

8    knows the *Iridium* case is out there and this is the best he

9    can come up with?  I think there's a real problem.  There's

10   actually a deeper punch line.

11             The next chart is Mr. Tulliano's value against

12   everybody else's contemporaneous investment banking work

13   which is just more to the point that he's out of line with

14   what everybody was doing back then without their iPhones and

15   without their iPods.  But here's the most curious thing

16   about Mr. Tulliano.  Mr. Tulliano in his conventional

17   evaluation analysis loves market data because he needs to

18   find comparable companies and he needs to find rates in the

19   marketplace.  So he goes out there into the market and

20   embraces market data about companies other than Tribune from

21   exactly the same time period, but rejects all of the market

22   evidence and there is a lot of it about Tribune.

23             In our briefs, we talk about the existence of all

24   kinds of other market evidence like there was an auction,

25   there was the results of an auction.  It wasn't a one person

1    deal.  I don't even have to go to that point.  I'm just

2    looking at the market data collected at about the time, what

3    it was doing then.  And again, what's decisive to me is that

4    Mr. Tulliano somehow values market evidence when it's about

5    other companies, but doesn't when it's about Tribune itself.

6              I really don't have much to add in terms of

7    context to Mr. Sottile's discussion about the guaranteed

8    claims.  About the fact that more than 90 percent of the

9    action in this case is about whether the subsidiaries were

10   insolvent, rather than whether the parent was insolvent at

11   any given point in time.  And as Your Honor knows, 90

12   percent of the assets are at the subsidiary level and they

13   have a little more than $2 billion less in debt.  This has

14   powerful consequences running through everything.  The only

15   point I would make is that one of the errors that everyone

16   agrees the examiner made an in 2,000 pages there are going

17   to be some is that he put the Cubs in the wrong place and he

18   put Classified Ventures, half of it in the wrong place.

19             And that using the values that were on the Cubs

20   back then as Your Honor may remember, the numbers came out

21   higher in the end, would take $600 million from the parent,

22   put it at the subsidiary level and it doesn't reduce the

23   parent because the subsidiaries are solvent, the 600 still

24   flows up, but the subsidiaries gain an added cushion.    So

25   when we talk about the examiner's conclusion with the

1    subsidiaries, whatever his notch was he must have much more

2    confidence in his conclusion when the Cubs and Classified

3    Ventures are put in the right place.

4            The next point that Mr. Sottile and I will be

5    condemned to disagree about and the examiner came out his

6    way is the significance of the solvency opinion contingency

7    between step one and step two.  And in this instance, I'm

8    talking about the significance of the fact that an

9    independent solvency opinion was required before step two

10   can close.

11           To me, that requirement means that it can't be

12   foreseeable at step one that Tribune would incur debt at

13   step two if doing so would render it insolvent or

14   undercapitalized.  What was the test for?  And why is it

15   that any lender should be expected to foresee that the test

16   would fail particularly if the reason it failed is the

17   noteholder allegation that there was manipulation of

18   projections and inappropriate reporting concerning

19   investment banker advice rendered to the company.  How could

20   that be?

21           So again, we stand at step one and say if a

22   banker or an independent person back then reads the

23   documents and says how much debt is going to be incurred at

24   step two if in step two there's bad news and the company has

25   become insolvent?  The answer is zero.  Step two is not

1   going to happen if there's a solvency problem.  It's not

2   foreseeable that that's going to be loaded onto it.  And

3   it's certainly not foreseeable with the level of certainty

4   of 100 percent.

5            So I think logically when the tryer of fact has

6   to confront this, and again, you'll have to move yourself

7   back to '07 and think really hard about what is that person

8   looking at the beginning of '07 when analyzing step two.

9   And you're going to say okay, the documents say it's not

10  supposed to happen.  Why should he foresee it?  I find that

11  very logically compelling.  I think most tryers of fact

12  would find that logically compelling.  I don't really have

13  an explanation for why the examiner didn't, but he didn't.

14  So we will certainly be asserting that point in litigation.

15            There's another point that Mr. Sottile disagrees

16  with me on and I reduced this one to a sentence and we have

17  it on a chart here which I don't think it reduces it quite

18  this way which is while the federal rules say it's perfectly

19  okay to allege facts in the alternative, it sounds like a

20  good idea in front of a tryer of fact to try to prove facts

21  in the alternative.  And what I'm thinking about here is how

22  it is that these noteholders can and Mr. Beron's report

23  certainly does assert that we are going to come to Court and

24  say that step one and step two should be integrated for

25  purposes of evaluating it at step one.  And they say they're

1  going to win that one, but the examiner says they're going

2  to lose that one.  That even after it's -- even if they are

3  integrated, the examiner says the transaction was not a

4  fraudulent transfer.  Noteholders say they're going to win

5  that one, examiner says they're going to lose that one.

6       Well if integrated and if as the examiner finds

7  there's still not a fraudulent transfer at step one is there

8  really a step two challenge left of have they walked away

9  from that?  How do you prove to a Court that they're really

10  integrated in which event they're evaluated at one time, but

11  we were just kidding if we lose integration and there's a

12  separate evaluation at step two.  I think it works as a

13  matter of pleading.  I just don't think it works as a matter

14  of proof.  And this is just -- it's still another Beron

15  criticism is that he thinks these are two separate,

16  completely separate and independent enterprises and you get

17  to go through step one, find out your answer, and then go

18  through step two unencumbered by the answer with respect to

19  step one.  Logically, I don't think that's possible.

20       Another point that we disagree with in the

21  examiner's report which is on a chart, but I'm going to

22  through this very briefly because I need to save some time

23  for WEAR.  And that's whether creditors, excuse me, whether

24  Tribune creditors, parent creditors, creditors of a

25  shareholder can ever benefit from an avoidance case at the

1    subsidiaries.  Now remember, avoidance case of the

2    subsidiaries is far more difficult than the avoidance case

3    of the parent.

4            But what if notwithstanding that a Court says

5    well there's a problem at the subsidiary level.  What's

6    really the relief you get at the subsidiary level?  And it's

7    worth pointing out that I'm not really talking about

8    standing here.  I'm not talking about standing at all

9    because in this case there's probably standing because there

10   was one committee appointed for everybody.  Probably not the

11   best idea in a case like this, but the committee has

12   standing for subsidiaries, for parents, for everybody.  If

13   there were two separate committees, I think we'd have a real

14   issue as to whether creditors of the parent would ever have

15   standing to complain about a fraudulent transfer at the

16   subsidiary level.

17           So let's not talk about it as a matter of

18   standing, let's talk about it as a matter or recovery.

19   You'll note in the opening briefs, the noteholders spent

20   lots of time on this because they had lots of cases to

21   distinguish.  There's case after case after case that says

22   that the purpose of fraudulent transfer cases to begin with

23   are to benefit creditors, not shareholders.  They come about

24   it in many different ways, the express their conclusion in

25   many different ways.

1          We should note that the bankruptcy code that we

2     work with is an entity by entity device.  That the

3     fraudulent transfer laws are an entity by entity device.

4     There's never been any such thing as a recovery for the

5     benefit of shareholders on the books, not in any reported

6     opinions with one and only one exception that is never going

7     to be applicable here and that is where there has been a

8     reorganization case some debt has been converted to equity.

9     Equity stayed in the money and had some of the equity at the

10    end of the case and the fraudulent transfer cases stayed in

11    the reorganized company.

12          And then the cases say well if that happened as a

13    result of the reorganization, the creditors are really still

14    benefitting because they've converted their claims to

15    equity.  And yeah, incidentally, shareholders are

16    benefitting and we're going to let that happen.

17          Your Honor, if you send your clerks to research

18    this issue, they're going to come back with the biggest

19    binder full of cases on any topic in this case.  They all

20    point in the same direction.  The examiner said well he

21    thinks it would come up differently but he didn't confront

22    the law.  He didn't talk about the cases and we think the

23    tryer of fact and the decider of law in this case will have

24    to.

25          Okay, WEAR.  As Mr. Sottile explained, what WEAR

1  is all about is an effort to evade the fundamental reality

2  that step two avoidance isn't worth a lot.  Step two

3  avoidance isn't worth a lot because value is declined.

4  That's life.  Lots of people have to confront that now.  But

5  the WEAR idea which really at its essence talks about trying

6  to get money past valid claims of the subsidiary level and

7  up to the parent and really about taking claims that when

8  you get to WEAR have been found to be valid.  All step one

9  has been found to be valid, otherwise, you're not talking

10 about WEAR.  But you're not going to treat it as valid

11 because you're going to say well, it's a valid and allowable

12 claim, but I'm going to nick it's rights in one way or

13 another.  To me, that's -- when you start to say that,

14 you're really claiming that it should be equitably

15 disallowed to an extent.

16           And we, of course, know what the examiner thought

17 about equitable disallowance.  He said that's not something

18 that's going to happen here.  Maybe you can talk about it as

19 equitable subordination, but it's worse than equitable

20 subordination of course because you're never, ever going to

21 get the benefit of some assets of the estate, we're just

22 going to take them away from you.  Of course, we would only

23 reject this idea out of hand if it was called that.  And so

24 they had to come up with a catchy name and that's WEAR.

25           Now another problems with the catchy name is that

1   people have a tendency not to go past it and break down the

2   elements and that's what they want.  So let's not do it that

3   way.  Let's break them down.  The first one is waiver.  Well

4   the most important thing to remember about waiver is that

5   the first sentence of every case that talks about waiver is

6   it's a voluntary and knowing waiver of a right.  It's not

7   something that can happen by accident.  So I asked the

8   question when I read their papers, who did that?  When did

9   it happen?  What's the manifestation of it?  And, of course,

10  we don't get told that, it's WEAR.

11          Estoppel in a sentence.  Precludes a person from

12  taking a position inconsistent with something previously

13  said.  Not super precise, but that's what the whole idea of

14  the doctrine is.  What exactly is the statement and who made

15  it that said something about step one creditors didn't

16  really mean it that they were going to enforce their claims

17  and expect to get every penny that they were entitled to as

18  a matter of the law as it's normally applied?

19          Assumption of the risk.  I don't know if you have

20  children, but this is the time of year when mine go to camp.

21  They want me to assume --

22          THE COURT:  Thank goodness.

23  (Laughter)

24          MR. BENNETT:  Yes, six weeks no kids.  They send

25  you a form.  I went to camp, too, I don't remember this

1    form.  Maybe my parents didn't show it to me, but I'll bet

2    it was shorter.  They want me to assume the risk.  They know

3    that if they ever want me -- want that to stick, they've got

4    to have -- explain to me what risks I'm assuming and that I

5    acknowledge exactly what risks I'm assuming.  It's got to be

6    knowing and voluntary just like a waiver because it is a

7    waiver.  It's not really something very different, just kind

8    of a subset.

9              So the question we have to ask ourselves, what

10   risk are they talking about that was knowingly and

11   voluntarily assumed?  Now I think every creditor knowingly

12   and voluntarily assumes that there will be -- there's the

13   potential for non-payment on valid claims if things don't

14   turn out well and values are declining and the company loses

15   money.  I get that part.  But can anyone point to an

16   assumption of risk that -- where the step one creditor said

17   well if our claim is partially allowed, we didn't really

18   mean it, and we assumed a different risk that that claim is

19   going to not share in the distribution to which it's

20   otherwise entitled as a matter of law?  That's what the

21   argument has to be if it's assumption of risk, assumption of

22   this risk, the risk they want us to have assumed.  Do they

23   mean that we assumed the risk?  That the lenders assumed the

24   risk?  That a false solvency certificate might be issued?

25   Is that what they're talking about?  I can't find that

1    anywhere either, they don't talk about it.

2            The two cases that they've cited for the first

3    time in their reply *Lebanon* and *Huff* don't help them on

4    these issues because in that case there was actually an

5    agreement not to pursue a particular recovery and an

6    agreement not to take from it.  It doesn't -- those --

7    citing those cases is not a substitute for explaining where

8    are the elements of each of these doctrines?  And if they

9    are really asserting that lumping them together into a word

10   makes them different, why is that?  And why is it that

11   lumping them together in a word, dispenses with the

12   individual requirements?  I don't think so.  They'd like us

13   to think so.

14           I'm running out of time.  And so I want to kind

15   of finish up with one little small thing or two little small

16   things which again, I think kind of are a little bit of a

17   window in what's been happening here.  I want the Court to

18   remember that the noteholders' plan includes an option which

19   wasn't accepted where Aurelius offered 15 cents to Tribune

20   creditors and 25 cents to subsidiary creditors to buy their

21   claims.  Mr. Gropper's testimony, I'm sorry, Mr. Gropper's

22   testimony, I confused him with the Judge, was that that

23   offer was fair to Aurelius and fair to the people they made

24   it to.  And we also heard loud and clear that Aurelius would

25   never accept the 15 cent offer in a plan or otherwise.  I've

1   always had problems reconciling those two points.  And both

2   came from the mouth of the same witness.

3           And I think there is only one way to put those

4   two points together really and take Mr. Gropper's testimony

5   what he did, as well as, what he said seriously.  And that

6   is that there is a range of reasonableness for Aurelius and

7   it's somewhere between, 15 on the low side and PAR on the

8   high side, otherwise he was playing games and his plan

9   wasn't filed in good faith and he said that's not what he

10  was doing.

11          Second, there was a moment in this case and Your

12  Honor commented on it which is one of the reasons I'm

13  commenting on it, where there was a -- where the noteholders

14  focused on the difference in the litigation trust between a

15  $20 million loan DCL plan and a $40 million grant, their

16  plan.  And I was wondering that if we take the noteholders

17  at their word that this really is an intentional fraudulent

18  transfer case, that they're really going to win it.  That

19  they'll get post petition interest, too.

20          By the way, Mr. Gropper during his testimony must

21  have described his claim as including post petition interest

22  a dozen times, but when it comes to talking about the

23  lender's claims, he kind of would rather forget that.  But

24  if he really believes that, we have an intentional

25  fraudulent transfer case, it's a slam dunk, everybody was

1    terribly dirty, then his claims against the shareholders are

2    even better than the claims against the banks because the

3    banks gave value all over the place, we think even more than

4    the committee gives us credit for.

5                   And so I'm trying to scratch my head and say this

6    case is really about the difference between a $20 million

7    grant and a $40 million loan?  That's rounding error.  If

8    the noteholders really believe it, what are they talking

9    about?  Why are they picking on that issue?  And I come back

10   to the point that they don't really believe it.  This

11   probably is to them about the difference between the 20 and

12   40.  They're just trying to get somehow into a position

13   where they get control, they get to hold people up and drag

14   along a lot of people who want a better settlement than they

15   were willing to offer to do it their way.

16                   I'd be happy to answer any questions, Your Honor

17   might have.

18                   THE COURT:  I don't.  Thank you, Mr. Bennett.

19   We're going to take, Mr. Bendernagel, just a five minute

20   break here and I'll keep careful track of the time.

21                   MR. BENDERNAGEL:  How much time do we have, Your

22   Honor?

23                   THE COURT:  Well let's see.  We started at --

24   well let's use -- about 11:15 and once we got started and

25   it's now 11:28.  So --

1        MR. BENDERNAGEL:  No, we started at 10:15.

2        THE COURT:  10:15.

3        MR. BENDERNAGEL:  I'd love it if it was 11:15,

4   we'd have a lot more time, but --

5   (Laughter)

6        THE COURT:  So, you know, you've had an hour and

7   a quarter --

8        MR. BENDERNAGEL:  Thank you.

9        THE COURT:  -- so far.  All right.  We'll take a

10  five minute break.

11  (Recess from 11:29 a.m. to 11:39 a.m.)

12        THE CLERK:  All rise.  Be seated, please.

13        MR. BENDERNAGEL:  Thank you, Your Honor.  Jim

14  Bendernagel for the debtors.

15        Your Honor, just so that you know what the

16  remaining lineup is, I'm going to take a few moments to talk

17  about why the debtors perceived the DCL settlement to be

18  reasonable and talk a little about the DEV issues and then

19  Mr. Conlan is going to provide a broader perspective as to

20  why the company needs to get out of bankruptcy and at this

21  juncture in time.

22        With respect to the question you asked, it's my

23  understanding that people are still working on the answers

24  to your questions so if we were on the Johnny Carson show,

25  you would have stumped the band.

1  (Laughter)

2          MR. BENDERNAGEL:  But the -- moving to my two

3  points, Mr. Sottile indicated that --

4          THE COURT:  I preferred the Carnac routine.

5  (Laughter)

6          MR. BENDERNAGEL:  Well I'm quite sure that will

7  come later in the day.

8  (Laughter)

9          MR. BENDERNAGEL:  The -- Mr. Sottile correctly

10 indicated that the debtors support the DCL plan and they do

11 so for a number of reasons.  The first is the DCL settlement

12 is the result of a long and arduous process where everybody

13 has gotten to say everything about these claims.  You've

14 observed in the past that there's nothing new here and

15 you're right.  There have been criticisms of the process,

16 but one criticism that can't really be made is that the

17 parties entered into the settlement without knowing what the

18 issues were and the parties arguments.  You heard Mr.

19 Bennett today.  It's not the first time we've heard from Mr.

20 Bennett and it's not the first time we've heard the

21 noteholders' views on these subject matters.  As a

22 consequence, the issues were known.

23          Secondly, the debtors belief that the examiner's

24 report supports the settlement.  Mr. Sottile in much longer

25 verse suggested that what the examiner found was that with

1    respect to step two, the claims were stronger than step one,

2    but it doesn't drive a lot of dollars.  Step one drives a

3    lot of dollars, but there are substantial hurdles and there

4    are.  The biggest hurdle is if the step two debt isn't taken

5    into account there's no insolvency, end of game on the step

6    one issue.

7         And further, the examiner found that in balance

8    sheet context, there's less than a 50 percent chance that

9    you will take step one debt into account.  And even if you

10   do, it's less than a 50 cent chance still that you'd find

11   insolvency.  And that's without providing any value to the

12   tax savings, that's before you get to guarantor solvency,

13   and it's before you get to the statutory defenses.  I'd

14   submit those are pretty long odds.

15        And they don't get better on the capital adequacy

16   side.  It is true that he found a much higher probability

17   that the step two debt would come in, but he still found

18   that the likelihood of demonstrating insolvency on that

19   basis or demonstrating a problem was remote or not remote,

20   but was low.  And I think he used the term reasonably

21   unlikely.  And again, that's before he assesses the

22   guarantor situation, it's before he assesses the statutory

23   defenses.  In a word, the DCL settlement provides a

24   reasonable settlement in light of those findings.

25        The third factor that the debtors rely on is the

1    Black analysis, particularly his analysis of the range of

2    potential responses which has seemingly been overlooked by

3    the noteholders in their critique of Mr. Black.  Mr. Black

4    started his analysis much as the examiner did by looking at

5    potential recoveries in the key litigation scenarios.  If we

6    can see the first slide, this slide looks a lot like the

7    slide that Mr. Sottile put up, but it adds a column showing

8    what Mr. Black concluded.  And Mr. Black did his own

9    analysis in coming up with these numbers and they're very

10   similar which is not all that surprising.

11            They also show as Mr. Sottile pointed out, that

12   the only one of the scenarios studied that produces a result

13   that exceeds the DCL settlement before litigation trust

14   recoveries is the full avoidance scenario.  And as Mr.

15   Sottile suggested, this is powerful evidence that, in fact,

16   the DCL settlement is a reasonable resolution.  But Mr.

17   Black didn't stop here.  He continued on.  And what he

18   wanted to determine was whether the probabilities, the

19   likelihoods of each of these litigation scenarios occurring.

20   And to do that, what he had to do was come up with

21   probabilities for each of these various scenarios.

22            And instead of just looking at one case, a Black

23   case, or an examiner case, he looked at six potential cases,

24   two favorable to the banks and two favorable to the

25   noteholders.  He also looked at a case where he tried to

1  replicate the examiner's findings and he put his own views

2  in in that regard.  He's got six settlement cases that he's

3  looking at in terms of trying to come up with a range of

4  reasonable results.

5        If we can go to the next chart, the next chart

6  shows that without taking the litigation trust recoveries

7  into account, what he concluded.  And he concluded that the

8  range went from a low of $173 million to a high of $564

9  million and that the DCL plan was well within that range

10  towards the top of that range.

11        Now the next chart shows what happens when you

12  add the litigation trust recoveries.  And in this example,

13  Mr. Black utilized $300 million.  And he explained at the

14  trial how he got that number.  He assumed that about $200

15  million had come from the officers and directors either in

16  the form of insurance proceeds or recoveries from insiders

17  and that another $100 million would come from the advisors

18  or their insurers.  He did not interestingly enough, take

19  into account any recoveries from the shareholders.  So

20  that's what the $300 million does.  And you see when you

21  take the $300 million into account and you utilize the

22  method in the plan by which litigation recoveries are

23  distributed in any disproportionate manner to the senior

24  noteholders, it drives the DCL plan above the range of

25  reasonable results.

1          Again, Mr. Black did not stop his analysis at

2     this point.  He ran a number of sensitivity tests all of

3     which are identified on the next slide.  And he did this to

4     test the robustness of his analysis.  And what he concluded

5     was that when you ran all these plans, the DCL settlement

6     still stayed at the top or above the range of results when

7     you include it in the $300 million -- when you include it in

8     the litigation recoveries.  In no instance, did he find a

9     scenario where the DCL plan dropped down into the lower end

10    of the range of potential recoveries.

11         Now the noteholders never talk about this range.

12    Instead, they raise a lot of criticisms of Mr. Black which

13    in my view are somewhat periphery.  They do as they do with

14    a lot of people, assume him of bias and they point to the

15    fact that he consulted with Mr. Zell's tax guys to determine

16    how the tax savings work.  There's nothing wrong with that.

17    They're the ones that created the tax savings.  That's

18    something you'd logically want to know.  More significantly,

19    however, they don't say that the Zell guys told them

20    anything that was wrong.  Nor did they deny that there's

21    real value there.  We simply point out he talked to Mr.

22    Zell's folks.

23         And similarly, they argue that he was unfamiliar

24    with the claims having only spent 700 hours on this

25    analysis.  700 hours is a lot of time for one person.  But

1  more significantly, I think it's hard to read is reports and

2  listen to him on the stand and say he wasn't familiar with

3  the claims.  You may disagree with what he -- his

4  conclusions were, but he seemed like he was familiar with

5  the claims.  He read the whole report, not just imply the

6  cliff notes version that seems to be preferred by some.  He

7  looked at the briefs that were submitted by the parties and

8  that's really important here.  It makes it sound like that

9  the examiner's report sprung from the earth.

10       The fact of the matter is there was extensive

11  briefing and most of the points addressed in the examiner's

12  report is the result of the fact that there were a wide

13  group of people including the debtor that put in extensive

14  briefs on these issues.  Again, there's nothing new here.

15  And, you know, as a consequence, we believe he did a pretty

16  thorough job.

17       They also question -- they assert well that his

18  analysis is wholly subjective and it doesn't have any rigor

19  to it.  That's not true.  There's a lot of intellectual

20  rigor in what he did.  In developing his probabilities, what

21  he did was he started with the key question in this case

22  that Mr. Bennett talked about, collapse.  And for each of

23  the six cases, he asked what would be the probability or

24  what would be the likelihood with respect to the collapse

25  issue.  And he looked at formal integration, informal

1  integration, and no integration and created a sub case for

2  each case, three sub cases reflecting those facts.

3            He then took those three sub cases and with

4  respect to each scenario in each case, he made an evaluation

5  of assuming that there is this probability of formal

6  integration, what's the likelihood of balance sheet

7  solvency?  What's the likelihood of case inadequacy?  And

8  what's the impact of the guarantor -- the statutory

9  defenses?  And based on that analysis, he came up with a

10  probability and that's how he built his probability chart.

11            Now you can argue with where he came out on any

12  particular thing.  And you saw that Mr. Zensky and Mr. Black

13  did argue about that fact, but the argument they had in the

14  end only moved the meter by $10 million.  They never

15  demonstrated that these problems that they alleged were

16  really driving the thing.

17            And there's a good reason for that.  The reason

18  is is the key case is not the Black case.  The key case is

19  not the examiner case.  The key case is the case that

20  defines the high end of the range on this chart.  And they

21  don't talk about that high end of the range.  But in the

22  full -- if you look at the high settlement case in Black, he

23  attributes as 48 percent probability to some finding of

24  problem in step one and 27 percent to the full avoidance

25  scenario.

1          Think of all the obstacles we've talked about

2    with respect to that full avoidance scenario.  And the 27

3    percent is a pretty high probability for that.  And it

4    defines properly the top of this range.  They never

5    challenged that.  Instead, they want to talk about the fact

6    that he disagrees with the examiner or he disagrees, you

7    know, or he uses tax savings and the like is irrelevant.

8    The tax savings aren't in the top end of this range, they're

9    not in the examiner number.  The key question here is is

10   that the top of this range and how does the DCL settlement

11   relate to that top of the range.  And it's our submission

12   that it is a valid number for the top of that range and if

13   it is, the settlement is reasonable.

14          There's one further fact that I'd ask you to

15   consider in connection with your reasonableness assessment.

16   That has to do with the senior noteholder vote.  Mr. Sottile

17   referred to the fact that 70 percent by number of the senior

18   noteholders voted in favor of the plan and 30 or so percent

19   of the people that expressed a preference among that group

20   said that they'd prefer the DCL plan.  What does that tell

21   you?  It certainly doesn't say the plan's unreasonable.  If

22   the plan was unreasonable, you would expect what the answer

23   would be is no way.  What it tells you is what the evidence

24   tells you and that that is a reasonable plan.  Of course the

25   noteholders would like more money.  And they probably voted

1   in favor of it to provide Aurelius with some leverage in

2   trying to extract those dollars and they've been successful.

3   In a sense, there had been modifications to the plan that

4   increased value.  What it doesn't tell you is that the

5   settlement is unreasonable.

6           Let me address the second point that I wanted to

7   address here and that DEV.  There has been criticism of

8   Lazard Valuation.  The noteholders assert that the valuation

9   is essentially too low, that it should be significantly

10  higher and they presented the testimony of Mr. Singh or

11  Raymond James in support of that position.  Now as an

12  initial matter, the reality is the DEV issue doesn't matter

13  very much, if, in fact, post petition interest is counted.

14  And as you'll see in our briefs and the like, there's a

15  strong argument that the senior lenders are entitled to post

16  petition interest.  And there hasn't been an effective

17  response to that question to date from the noteholders.

18          If, in fact, the senior lenders are entitled to

19  post petition interest, DEV could be as high as they content

20  it is and it wouldn't make much difference.  But the fact of

21  the matter is the record doesn't support that high a DEV.

22  It supports the DEV that was presented by Lazard.

23          And Mr. Singh at the hearing testimony he had

24  never been qualified as an expert before.  That he had never

25  sponsored a valuation study on his own before.  That he was

1   not an expert in either the publishing business or the

2   broadcast business, that he hadn't consulted with anybody in

3   the publishing business or the broadcast business.  And he

4   had only spent a couple of weeks in putting together his

5   analysis.  More significantly, beyond his qualifications,

6   his analysis is riddled with errors.  He didn't do a

7   valuation study.  He did a critique and the basis of the

8   critique was he guessed what Lazard did and then indexed

9   that based on market -- changes in the marketplace.

10          And the reality is he guess wrong.  He assumed

11  that the Lazard's comparable -- his multiple is based on

12  comparable companies who are based on pure play companies as

13  opposed to diversified companies.  Well let me correct that.

14  he assumed that it was based on a combination of both.  The

15  reality is that it was asked on pure play companies as it

16  properly should because it was a sum of the parts analysis.

17          And he pointed out at the hearing that there are

18  numerous other errors in Mr. Singh's analysis.  The next

19  couple of charts that we presented to you layout what those

20  problems are.  There's problems both in the way he did the

21  core business analysis in terms of his selection of

22  multiplies.  In terms of his use of waiting.  In terms of

23  his use of past performance instead of fugue performance and

24  the like.  Some of the problems exist which you'll see on

25  the next chart with respect to his analysis of the equity

1  holdings.  Again, he selects without any experience in the

2  area comparable companies that aren't comparable.  He picks

3  the weather channel.  The weather channel has a website.

4  That's not true at TB Food.

5          And there are other deficiencies in his analysis

6  including the fact that he double counts cash in a large

7  way.  As a consequence, it's our view that the Lazard

8  analysis is correct.  Now we presented two witnesses in

9  support of that, Mr. Chachas and Mr. Mandava.  It was really

10  clear they had spent a long time developing their analysis.

11  They had gone through a couple of different versions.  And

12  they selected the various comparable companies based on pure

13  play and they explained why.  It also explained the waitings

14  which reflected market reality.

15          Mr. Mandava testified that he picked 30 percent

16  from the DCF on the publishing side because the company's

17  forecast while low reflects a reality in the publishing

18  industry and that's they may not find fixes to these

19  problems.  And it is a consequence there ought to be given

20  significant weight not predominant weight to that point of

21  view.  Mr. Singh just ignored it.

22          Similarly, on the broadcast side, he basically

23  only gave 40 percent weight to the comparable companies in

24  recognition of the fact that the comparable companies, TV

25  properties were more attractive than the Tribune TV

1  properties because they generally were affiliated with the

2  bigger networks rather than the CW Network and the like.

3              Similarly, on the equity properties, the analysis

4  is based on Mr. Chachas and Mr. Mandava's experience in

5  looking at each of these companies and talking to management

6  and coming up with the appropriate comparable companies and

7  comparable transactions.  And significantly, they did not

8  include a minority discount even though these are controlled

9  position and the company does not have any control over the

10  cash flow.  If TV Food decided the next day, if Scripts

11  decided he next day it didn't want to send any more money

12  out in the way of dividends, there's nothing that Tribune

13  could do about that.  And that lessens the value of those

14  asserts.  There's no explicit recognition of that though in

15  this analysis which makes the analysis more -- results in a

16  higher value than we might otherwise do.

17              And it explains to some degree why when the

18  company took a look in January as to whether they needed to

19  refresh the October valuation that was in the disclosure

20  statement.  Those art folks came to the conclusion that

21  wasn't necessary.  The Court business actually had gone

22  down.  The only thing that had gone up was the equity

23  properties in which they have a minority interest and which

24  were already fully valued.  And Lazard based on that did not

25  believe that it was appropriate to make that valuation.

1   They also looked at the fact of what was driving the

2   valuation change.  There was changes in the stock market

3   which is highly volatile.  And the reality is if you look at

4   what's happening in the stock market recently, they're

5   decision not to make that adjustment has been vindicated.

6   The fact of the matter is the stock market has gone in the

7   opposite direction to where it was going in the

8   January/February timeframe.

9           And sure, we think the DEV analysis that Lazard

10  put forward is a reasonable estimate of what the value of

11  this company would be at the effective date which was

12  projected to be June 30 which is a couple of weeks from now

13  or less than a couple of weeks from now.

14          Your Honor, at this juncture, let me ask Mr.

15  Conlan to address the last question unless you have

16  questions for me.

17          THE COURT:  I do not, thank you.

18          MR. CONLAN:  Well we're right between morning and

19  afternoon, so happy noon, Your Honor.  Jim Conlan on behalf

20  of the debtor.

21          And I'll be slightly more broad and yet brief and

22  very direct.  The company wants -- the company has always

23  wanted an appropriate value allocation or process for value

24  allocation in these cases.  But admittedly, we have wanted

25  it in a way that resulted in an exit from bankruptcy,

1  quickly if possible.  We're now several years into this.

2  Why do we want to exit bankruptcy?  I don't need to go on

3  and on about this.  Your Honor knows it quite well.  It's

4  expensive, it's distracting, it's confusing to our

5  customers, our vendors, and our employees and that destroys

6  value and that hurts everybody.

7       There are three what I would describe as meta-

8  themes that run through our papers and, frankly, I think

9  through the papers of Aurelius as well and Wilmington and

10  that is this.  Without litigating some or all of the LBO

11  issues, the company simply cannot confirm a plan without

12  acceptance by the senior lender class, i.e., the company

13  cannot cram down a plan on the senior lender class.

14       Second point, the company believes the DCL plan

15  can be crammed down on the notes and the PHONES.  They are

16  the recipients of a settlement, not the payers of a

17  settlement, the recipients and that is a key distinction and

18  we think it's a favorable settlement.

19       Third and this is the biggest theme of all, while

20  global, symmetrical, perhaps even consensual resolution

21  would certainly be optimal, even elegant, all approval or

22  cram down of the limited settlement in the DCL plan works,

23  it works and it is the next best choice to provide a path to

24  exit and we think a fair one.  That's it, Your Honor.  We

25  will have answers to the question you asked on rebuttal of

1  the specific questions.

2          THE COURT:  All right.  So I'd say you've used

3  about 20 minutes since we came back from the break, puts you

4  at about 1:50.

5          MR. CONLAN:  Sound right?

6          THE COURT:  Sound about right?

7          MR. SOTTILE:  Your Honor, we have about an hour

8  and 40 minutes total, an hour and 15 before and then a

9  little over 20 afterwards, so I think we've used about an

10 hour and 40 minutes.

11         THE COURT:  All right, well we're close.  I do

12 have a hard stop at 5:00 today so I'd like to break for

13 lunch now and reconvene at 1:00.  Anything before we break?

14         MR. SOTTILE:  Not from the DCL side, Your Honor.

15 You've heard now our opening remarks.

16         THE COURT:  Okay.  Court will stand in recess.

17 (Recess from 12:02 p.m. to 1:01 p.m.)

18         THE CLERK:  All rise.

19         MR. ZENSKY:  Good afternoon, Your Honor.  For the

20 record, David Zensky, Akin Gump Strauss Hauer & Feld for

21 Aurelius Capital Management and the noteholder plan

22 proponents.  Your Honor, may we hand up copies of our

23 demonstrative slides for closing, please?

24         THE COURT:  You may.  Thank you.

25         MR. ZENSKY:  We've handed out copies, Your Honor.

1           Your Honor, you'll be pleased to know, we, of

2    course, accept the Court's invitation to not address all the

3    evidence in the record that supports all the noteholder view

4    of the case.  We heard you have a 5 o'clock hard-stop.  If

5    we did, I'm not sure we would've made the 11 o'clock news

6    tonight.

7           Our comments are going to focus mostly on the

8    objection to the proposed DCL plan and settlement, because

9    at this juncture, there really is no evidentiary objection

10   to the noteholder plan.  We know that our plan is fine, that

11   it's feasible and confirmable, and we know that in part

12   because the debtors envision the plan that's identical to

13   our plan, Your Honor, and they called it the pure purity

14   plan.  You may recall that.

15          So, in fact, there's so little in dispute

16   regarding our plan, we're even going to let Mr. Golden get

17   in on the fun today and address our plan.

18   (Laughter)

19          MR. ZENSKY:  So for a roadmap, I'm going to speak

20   for a few moments and then turn the podium over to Mr.

21   Qureshi.  Then, you'll hear a bit more from me.  Then, Mr.

22   Friedman will address the FCC issues very briefly, and then

23   Mr. Golden will bring up the rear.  We hope to do that in

24   about 2 hours and 15 minutes and reserve a short amount for

25   rebuttal after the debtors -- the DCL plan proponents speak

1  again.

2         Your Honor, I think the first thing I said in my

3  opening statement to this Court, back on the first day of

4  the trial was that the trial would be about a transaction

5  that never should have occurred.  And boy, do I think we've

6  proved that, Your Honor.  Everyone knew that Tribune was the

7  wrong candidate for an LBO.  It was the wrong industry, the

8  wrong company, and the wrong time.  But they did it anyway,

9  Your Honor.  I don't think there's any doubt that anyone

10 knew this was a transaction that was fraught with peril and

11 mistake from the beginning.

12        And you know, people are still talking about it,

13 Your Honor.  You may have seen this hitting the bookshelves

14 as we speak.  It's called *The Deal From Hell*, by the former

15 editor of *The LA Times*, the managing editor of *The Chicago

16 Tribune*.  I think you have to like the little devil horns on

17 the cover.  I need to dispel any notion that the noteholders

18 were responsible for the publication of the book or for the

19 timing, Your Honor.

20        THE COURT:  Well, if I read it, it won't be until

21 later.

22        MR. ZENSKY:  Yes.

23 (Laughter)

24        MR. ZENSKY:  Well, I -- we're not asking to open

25 the record to submit it, Your Honor.  And I'm hopeful that

1  in the Court's confirmation ruling, the Court exercises

2  judicial restraint and doesn't describe the trial in similar

3  colorful terms, as was chosen by this author.

4         THE COURT:  Well, if I choose to do things in the

5  opinions, I'd never get them done.

6  (Laughter)

7         THE COURT:  There's only so much to write about.

8         MR. ZENSKY:  There is, Your Honor.

9         So Mr. Qureshi's presentation is going to focus

10  on that evidence, the strength of the claims, particularly

11  at step one, the expert testimony, and the fact testimony.

12  And I must say, I'm a bit jealous of ceding that material to

13  him, because I think it's rare in a trial lawyer's lifetime

14  where you get the kind of material that was presented to

15  Your Honor in this trial, regarding the strength of the

16  claims.

17         As you listen to Mr. Qureshi and you consider the

18  evidence, I think the Court should consider the burden --

19  who has the burden on this motion, Your Honor.  As you know,

20  and there's not dispute, that the DCL plan proponents have

21  the burden to prove to you that this is a settlement that

22  should be approved.  And part of that burden is to prove to

23  you that it's a reasonable adjustment of the risks of the

24  litigation and the rewards of pursuing the litigation to its

25  fruition.

1          Now, you told us, the parties assembled in this

2   room, at the very first hearing, after the term sheet was

3   issued that grew into the DCL plan -- you told us that you

4   don't view settlements as a give-me.  Okay.  And you told us

5   that in more eloquent terms, in your opinions.  You've told

6   us that in *Exide*.  You've told us that in *Spansion*.  So it's

7   a burden that this Court takes seriously and has in many

8   decisions in the past.

9          That means that we don't have the burden to prove

10  to you, during the course of the trial and in our post-trial

11  briefing, that we would, in fact, necessarily win the

12  litigation.  I think the burden is steep on the other side,

13  for the following reasons:  Clearly, the claims that they

14  are seeking to compromise, Your Honor, are the best claims

15  the estate has.  They're the easiest to prove, the easiest

16  to collect on.  There's no procedural issues.  There's no

17  jurisdictional issues.  The parties are before the Court.

18  The claims are before the Court.  They're claims which will

19  result, if successful, in full payment to every non-LBO

20  creditor.  And even short of full avoidance, there are

21  multiple other remedies, which you heard discussed a bit

22  this morning and which I'll touch on later, that result in

23  either full payment or very substantial payment to the non-

24  LBO creditors.

25          Now, the settlement is very, very small in

1  relation to the fruits of pursuing the litigation to

2  fruition.  So given all that, we feel that the burden on the

3  debtor is a steep one, Your Honor, to prove that the claims

4  have virtually no chance of success to produce that result.

5            THE COURT:  And where would that standard be

6  embodied?

7            MR. ZENSKY:  I think that's a standard that is

8  fairly taken away from all the 9019 cases, Your Honor,

9  talking about how we measure the fruits of -- the benefits

10 of pursuing the litigation versus the concrete benefits of

11 the settlement in the present.  I think it's part and

12 parcel, at least as I read your decisions, in terms of, in

13 effect, a tie does not go to the debtors.  The debtors have

14 the burden to prove that the claims have little worth or

15 little worth relative to what they're proposing to settle

16 them for.

17            Now, if we look at the terms of the settlement,

18 Your Honor, they're not favorable.  If I could direct your

19 attention to the first slide, Your Honor, the total amount

20 proposed to be paid to the non-LBO creditors is $488

21 million.  And you can see underneath, the derivation of that

22 is 360 million to the senior notes, zero to the PHONES.  And

23 the PHONES is a word I don't think you heard mentioned this

24 morning.  I don't think it came out of Mr. Sottile's mouth.

25 I think the creditors committee may have forgotten that

1    that's one of the unsecured creditor constituencies here.

2    They, of course, get zero.  $83 million to the subsidiary,

3    general unsecureds, 35 million to the parent.

4              And in the debtors' disclosure statement, they

5    say that the range of pre-petition allowed claims to the

6    non-LBO creditors ranges from about 2.23 to 2.83 billion.

7    And the number we've referenced here includes post-petition

8    interest.  We ran it through the end of next year, Your

9    Honor, based on a conservative assessment of how long it

10   would take to try the case and leave time for a potential

11   appeal so that the range of potential recoveries, if the

12   litigation is successfully, would be 2.7 to 3.3 billion, the

13   difference being, of course, the high PHONES or low PHONES.

14             So that's not a lot of money, relative to the

15   fruits that the litigation would produce, if successful,

16   with respect to step one.  The 488 million doesn't compare

17   favorably to the exposure, either.  In the next bullet, you

18   see that if we look at the claims that have been presented

19   against the debtors' estates by step one and step two

20   holders and we add in the disgorgement dollars that are at

21   risk, that's more than $10 billion combined, so that the

22   settlement is less than five percent of that number.

23             And then, of course, Your Honor, we thought it

24   was relevant to look at the fees that the arrangers, LBO

25   lenders took off the table for the great work they did in

1  putting this transaction together, and that was about $300

2  million, so that the proposed settlement here, at least to

3  the senior notes is really not that much more than the fees

4  that were received by the lenders for doing this

5  transaction.

6          Now, let me say a word about the examiner report.

7  You heard it discussed in this morning's comments.  We

8  believe the examiner report was fundamentally good for the

9  non-LBO creditors, and I believe the record supports that,

10 Your Honor.  You heard Mr. Gropper testify about Aurelius'

11 view of the examiner report, that it was a game-changer.

12 Mr. Kurtz testified that he thought that the lenders would

13 be crazy to walk away from the April plan in light of the

14 examiner report.  That may be Mr. Gropper testifying about

15 his meeting with Mr. Kurtz, but that is in the record, and

16 it's uncontradicted.  Mr. Salganik for the committee

17 testified that the examiner report was good for the

18 bondholders.  And even Oaktree, in an unguarded moment in

19 one of its e-mails we'll look at later, thought that the

20 examiner report was good for the bonds.

21         Now, we do believe, at this juncture, that we

22 have developed evidence and analyses that show that the

23 claims are even stronger than the examiner thought at step

24 one.  But that's not to say that we don't think the examiner

25 report is good for us, and we produced evidence, through Dr.

1  Beron's  report, that shows if the Court does nothing other

2  than take the examiner's conclusions, both the ones we like

3  and the ones that we don't like, and values the litigation

4  based on the examiner report alone, that the settlement is

5  still woefully inadequate.

6          But either way, Your Honor, we think there's an

7  enormous disparity engulfed between the strength of the

8  claims and the value of the litigation and the proposed

9  settlement.  We don't think the DCL plan proponents have

10 proved that the claims are so lacking in merit that they

11 should not be allowed to proceed.  We don't think they came

12 within a country mile of proving that to Your Honor.

13         Now, the last thing I want to say before Mr.

14 Qureshi takes the podium, Your Honor, relates to the

15 examiner recover scenarios that Mr. Sottile showed you early

16 in his presentation.  Mr. Sottile essentially said that the

17 committee deserves a pat on the back; we got a settlement

18 that's better than five out of the six scenarios that the

19 examiner showed in his annex.

20         Well, we don't think that adds up, for a number

21 of reasons, Your Honor.  The first instance, the examiner

22 never said that all of the different litigation outcomes

23 were presented in his recovery scenarios.  In fact, what he

24 said, on page B1, which is the beginning of the recovery

25 section or the recovery scenarios, he says, "The recovery

1  scenarios only address the effect of fraudulent transfer
2  actions on creditor recoveries and do not consider the
3  potential effect of preferences, equitable subordination,
4  equitable disallowance, or common law claim recoveries.
5  These claims are evaluated in the report, but the recovery
6  scenarios do not take into account the potential effect on
7  recoveries resulting from these possible remedies, claims,
8  and causes of action."  So the examiner never presented this
9  as the universe of potential litigation outcomes, and we
10  know that it does not represent the universe of potential
11  litigation outcomes.
12            But equally, if not more important, the examiner,
13  in this section of his report, does not assign any
14  probability to which of his models -- which of his scenarios
15  are the most likely or least likely.  That is in other
16  places in his report.  And what matters is the probability
17  weighted average of the different scenarios, not merely
18  showing that there's only one outcome, which they have
19  called the homerun scenario, that is better than the
20  settlement.  Again, his scenarios leave out multiple
21  important scenarios, which I will address later.
22            So let me turn it over to Mr. Qureshi.  He's
23  going to present the argument on the solvency and other
24  evidence relating to step one and step two, and then I will
25  return.

1          MR. QURESHI:  Thank you, Your Honor.  Good

2     afternoon.  For the record, Abid Qureshi, Akin Gump, on

3     behalf of Aurelius and the noteholder proponents.

4          Your Honor, we handed up an awful lot of slides,

5     and we did that, Your Honor, because there is an awful lot

6     of evidence.  I'm going to spend the next approximately 50

7     minutes or so, Your Honor, focused almost entirely on step

8     one of this transaction.  And the reason, Your Honor, that

9     I'm going to focus one step one is in part because of the

10    examiner's report concerning step two, but also, Your Honor,

11    because the DCL proponents do not seriously contest the

12    question of solvency at step two.

13         Let's look first at what JPM's own solvency

14    expert, Professor Fischel, had to say with respect to step

15    two.  Your Honor, the most he could muster was to say that

16    Tribune was "borderline solvent" and that the question was

17    "a very close call".

18         Now, Your Honor, on the next slide, you will see

19    that Professor Black, the debtor's expert, went even further

20    with respect to step two, and what Professor Black concluded

21    was that it was "unlikely that the debtors were solvent at

22    step two".

23         So I'm going to focus on step one, and that

24    analysis, Your Honor, has to start with the state of the

25    industry at the time that this transaction was first

1    conceived.  When that is understood, Your Honor, that the

2    debtors put $13 billion of debt on a company at a time of

3    crisis in the industry, it becomes clear why this

4    transaction was doomed, from the very start.

5         I want to start by looking at newspaper

6    circulation figures, Your Honor.  This chart, from Mr.

7    Tuliano's report, shows that circulation began a steady and

8    uninterrupted decline years before this transaction.  On the

9    far right of the chart, what Your Honor will note is that

10   the pace of the decline starts to accelerate from '05 into

11   '06, as we move closer to step one.

12        Now, the second pillar of the publishing

13   business, Your Honor, advertising revenue, that was headed

14   in the same direction.  On this chart, what Your Honor will

15   see is that that decline also started well before step one.

16   Again, the pace of the decline in advertising revenue starts

17   to pick up quite markedly from the fourth quarter of '06

18   right up until the closing of step one in -- on June the 4th

19   of 2007.

20        Now, the long-term decline in these two pillars

21   of publishing, circulation and advertising, Your Honor, that

22   was well documented by industry analysts, and it was well

23   known to everybody that was involved in this LBO.  Even the

24   debtors' own expert, Professor Black, acknowledge that

25   publishing was known, in 2007, to be in long-term decline.

1            Let's look at a brief excerpt here, Your Honor,

2    from Professor Black's cross-examination at trial, where

3    again he clearly says the newspaper business was known, in

4    2007, to be in long-term decline.

5            Morgan Stanley, Your Honor, published a similar

6    view.  The publishing -- the research arm of Morgan Stanley,

7    and recall, Your Honor, that Morgan Stanley served as the

8    advisor to the special committee that approved this deal.

9    Here's what they have to say in March of 2007.  Again, Your

10   Honor, this is two months before the step one close.  And

11   this is a public research report on the industry.  They note

12   that February of 2007 will go on record as one of the worst

13   months in recent years for the newspaper business, and that

14   the new online revenue streams were simply not enough to

15   offset the pace of the decline.

16           Now, Your Honor, also in March of 2007, and again

17   shortly before the LBO was publicly announced, *The New York

18   Times* published a couple of articles on the industry.  In

19   the first one quoted on the left side of the page, Your

20   Honor, *The Times* quoted an industry analyst as describing,

21   in early 2007, that that was a period of "wrenching change

22   and chaos in the industry" and forecasting that the next 10

23   years were going to be bad for the newspaper business.

24           In early April, just a couple of days after this

25   transaction was publicly announced, Your Honor, *The Times*

1  described the deal as theoretically encouraging because

2  somebody was willing to do a deal in the publishing

3  industry, but nonetheless, in their words, "one of the most

4  absurd deals ever".  And that's certainly what it proved to

5  be.

6          The next slide, Your Honor, again, more of the

7  same, this time from an industry newsletter, again

8  describing the industry as being in a secular shift and a

9  business environment that will have changed forever.

10         Now, Your Honor, we simply don't have time to

11 review here the numerous lender and company documents and

12 the deposition testimony that, quite candidly, acknowledge

13 what the state of the industry was at the time.  It's

14 indisputable.  We certainly sample that evidence in our

15 post-trial brief.  To sum it up, Your Honor, there just

16 isn't any serious dispute that the lenders, that Tribune

17 management were well aware of the deteriorating state of the

18 publishing industry, far in advance of step one.

19         As best as I can tell, Your Honor, there's only

20 one person that has a different view, and that's Professor

21 Fischel, and in this view, he stands utterly alone.  Again,

22 here's what Professor Fischel testified to on cross-

23 examination, Your Honor.  "I don't think it could be said,

24 from what I know in May of 2007, that there was consensus

25 that the industry was in long-term decline."

1            Your Honor, in light of the evidence that I just

2    reviewed, that's just amazing testimony.  The overwhelming

3    evidence establishes the secular decline.  There's not a

4    single document in the record.  There's not a line of

5    deposition testimony, Your Honor, there's not a line of

6    trial testimony that would establish or even suggest

7    otherwise.  The fact that Fischel, who is the one who claims

8    to pay particular deference in his work to market evidence,

9    comes to this conclusion, it's outlandish.  Further, Your

10   Honor, it's just not credible.  Either Fischel didn't take

11   the time to do the analysis and to appreciate what was going

12   on in the industry at the time of the LBO, or he was so

13   results-oriented in what he did do that he disregarded it.

14           Now, either way, Your Honor, the state of the

15   industry at the time the deal is done, that's the foundation

16   for the solvency opinion.  Where Fischel comes out on the

17   state of the industry, that necessarily infects all of his

18   conclusions, and we submit, Your Honor, that it renders them

19   unreliable.

20           Now, Your Honor, I'm going to shift gears briefly

21   here to look past the industry in crisis and to see how

22   Tribune was faring in the same period.

23           First, let's look at what the makeup of Tribune's

24   business was at the time of the LBO.  And what this chart

25   shows again, from Mr. Tuliano's report, is that Tribune was

1   dominated by the publishing sector: 68 percent of its

2   operating cash-flow.  And of that 68 percent, Your Honor,

3   approximately 91 was generated by its top six newspapers.

4          Now, as dramatic as the decline was for the

5   publishing industry, Tribune fared significantly worse.  And

6   what we show on this chart, Your Honor, and the source is,

7   again, the Morgan Stanley publishing handbook.  It compares

8   March '06 to March of '07, and what Your Honor will see is

9   that the industry decline was 2.7 percent, while Tribune

10  fell by 4.1 percent.  And Your Honor, this rapid decline in

11  performance -- underperformance, relative to an industry

12  that was clearly in crisis, that's something that Tribune's

13  pre-LBO shareholders certainly took note of.

14         In the next document, Your Honor, here you have

15  Mr. Steinhart of the Chandler Trust.  He's writing to the

16  Tribune board in a public letter in June of 2006.  This is a

17  full year before the step one close, Your Honor, recognizing

18  Tribune's significant underperformance, as compared to the

19  industry.  Now, Steinhart also recognizes the lack of any

20  basis to think that Tribune could stem that decline, let

21  alone return to growth.

22         Finally, in this letter, Your Honor, we'll see at

23  the very bottom that the Chandler Trust was demanding prompt

24  action from Tribune.  They wanted something to be done and

25  to be done quickly, before the bottom completely fell out.

1  And therein, Your Honor, lie the seeds of a transaction that

2  was conceived at the worst-possible time, in an industry

3  that another one of the debtors' bankers at the time,

4  Merrill Lynch, described as being on its back.

5           Here, Your Honor, is what the former chief

6  financial officer of *The LA Times* -- this is Tribune's

7  largest newspaper -- had to say under oath, after being

8  compelled to testify about the state of Tribune prior to

9  step one.

10 (Video playback:)

11 "Q    At the beginning of 2007, was *The Los Angeles Times*

12 projecting that its revenues were going to be declining?

13 "A    Yes.

14 "Q    And how long was that decline expected to last at the

15 beginning of 2007?  Do you recall?

16 "A    Without having specific data in front of me, it's hard

17 to answer the question, but what I can say, unequivocally,

18 is traditional print newspaper advertising revenue was

19 expected to decline indefinitely."

20 (End of video playback.)

21           MR. QURESHI:  Now, Your Honor, despite those

22 views, again, that's the CFO of Tribune's largest paper,

23 talking about pre-step one.  Management at Tribune's

24 headquarters, they clearly had a different idea.  They came

25 out with a set of projections that Your Honor can see on the

1  next slide, that really are outlandish when one considers

2  what was going on at the time.  What this chart shows,

3  Tribune's actual performance is reflected in the green bar

4  on the left.  The red bar to the right, Your Honor, reflects

5  the February 2007 projections, which again were the

6  foundation of the LBO.

7          Not only was Tribune's management projecting,

8  Your Honor, that they were going to instantaneously stem the

9  secular decline that was so well published and well written

10 about at the time, but they were saying they could reverse

11 it.  If Your Honor looks at the chart, this is much worse

12 than the proverbial hockey-stick projections the courts are

13 often very skeptical of and with good reason.  It's a V,

14 Your Honor.  It shows a total reversal.

15         Now, the evidence canvassed before Your Honor, we

16 think would overwhelmingly establish, at a trial on the

17 merits, that the -- this set of projections in February of

18 '07 were unreasonable when they were made, and when one

19 looks at what actually happened after they came out, Your

20 Honor, with every passing week, these projections became

21 even more unreasonable.

22         So, let's take a look at what happened in the

23 first few months of 2007.  First of all, Tribune never hit a

24 single month of its February projections, not even February,

25 Your Honor, and not even close.  This chart, on the bottom

1    left side of the page, summarizes the magnitude of the myths

2    through May of '07.  So through the first five months of

3    2007, Tribune Publishing underperformed against 2006 by

4    about 21-and-a-half percent, and against the February

5    projections by 11-and-a-half percent.

6              Now, remember also, Your Honor, that the 2007

7    projections, and Mr. Tuliano testified about this, he called

8    it the backend, loaded nature of those projections.  They

9    were projecting somewhat modest growth in the first half of

10   2007 and then much greater growth in the second half of the

11   year.  And yet, even the more modest numbers, they were way

12   off in the beginning of the year.

13             The chart on the right, what that shows, Your

14   Honor, is the implications for the February projections of

15   Tribune's performance through the first five months.  And

16   what it shows is that Tribune's top six papers, in order to

17   meet their targets, Your Honor, for the last seven months of

18   the year, would need to increase weekly cash-flows by 44-

19   and-a-half percent.  This is not disputed testimony, Your

20   Honor -- 44-and-a-half.  Tuliano testified that that would

21   be virtually impossible.

22             Your Honor heard from Mr. Balik from *The LA Times*

23   what his view was, and Your Honor, the DCL's own witnesses

24   also had a lot to say about the February projections, and

25   that cuts in only one direction, Your Honor: that they were

1   unreasonable.

2          Let's start, again, with Professor Fischel.

3   First off, his disclaims having any opinion on management's

4   projections.  Again, Your Honor, when you step back and

5   think about it, that's kind of remarkable.  This is

6   fraudulent transfer litigation.  The centrality to that

7   litigation of management's projections suggests that it's

8   kind of odd to put up an expert who says, I don't have a

9   view.  Not only do I not have a view, I don't have the

10  expertise to do the analysis.  But that's what Professor

11  Fischel said.  And that lack of expertise, again, Your

12  Honor, it has to call into question the reliability of what

13  he did.

14          Now, Professor Black, once again, went a little

15  further than Fischel.  And he acknowledged, under oath, that

16  prior to the step one close, it was unrealistic for

17  management to rely upon its February projections.  Instead,

18  what he suggested -- and again, Your Honor, this is their

19  expert.  Instead, what he suggested is that it might be more

20  reasonable to rely upon consensus analyst estimates that are

21  lower than management's February projections.  This is

22  amazing stuff.  It's their own expert, acknowledging that in

23  May, continued reliance by management on those February

24  numbers was unreasonable.  We didn't say it, Your Honor;

25  they did.

1          Now, not surprisingly, it turns out that the

2    evidence shows that the lenders were as skeptical of

3    management's projections prior to step one as Professor

4    Black was.  Let's start with Julie Persily.  She was a

5    managing director of leverage finance at Citigroup, and

6    here, she's been questioned at her deposition about

7    management's projections prior to step one.

8    (Playback, of Julie Persily:)

9          "Q   Did you have an opinion as to whether or not the

10   company's projections at this time were still achievable,

11   given the first quarter operating results?

12         "A   I think I've said throughout this, no matter what

13   time, we didn't believe the company's projections were

14   achievable."

15   (End of playback.)

16         MR. QURESHI:  Your Honor, now I'm going to turn

17   to a review of the uncontroverted evidence again,

18   establishing what management knew well before step one and

19   what Black acknowledged in his trial testimony: that those

20   projections were grossly unrealistic.

21         I want to pause for a minute and just remind the

22   Court, as we move into this segment, of the Third Circuit

23   standard for a finding of intentional fraud.  In the LBO

24   context specifically, Your Honor, the Third Circuit

25   instructs that Courts should look to the natural

1    consequences of the debtors' actions.  If that natural

2    consequence is that debtors will be hindered, delayed, or

3    defrauded, a Court is more likely to find that an

4    intentionally fraudulent transfer has occurred.  Now, Your

5    Honor, we have a detailed discussion of the cases in our

6    post-trial briefs, and of the supporting evidence, and of

7    the badges of fraud.  What I'm about to show Your Honor is

8    just some of the evidence that goes beyond just the set of

9    outlandish projections that we talked about.

10           And I want to start here, Your Honor, with a

11   discussion of this e-mail exchange from Tim Landon.  Mr.

12   Landon was, at the time of this transaction, the head of

13   interactive at Tribune.  He's writing this e-mail in August

14   of '07, and he's talking about the projected cash that

15   Tribune anticipated generating from its minority investments

16   in CareerBuilder and Classified Ventures.  What he writes,

17   Your Honor, is that, in reference to those cash projections,

18   that Tribune had a "very unrealistic expectations".  And

19   it's important to understand, Your Honor, that what he's

20   writing about here are the projections contained in the

21   February plan.

22           And in the bottom e-mail, what Your Honor sees is

23   Landin acknowledging that it was not until sometime in

24   August that he first became aware.  This is the head of

25   interactive.  That he first became aware that they -- into

1  Tribune's projections were cash distributions that would be

2  forthcoming from these minority investments.

3          Next, Your Honor, to an e-mail exchange involving

4  Mr. Bigelow, then the treasurer of Tribune.  Here, Your

5  Honor, he's acknowledging, in March of 2007 -- so again,

6  we're way before step one here, Your Honor -- that if

7  Tribune is off plan by just two percent, there would be no

8  equity value in the ESOP in the first five years.

9          Now, again, Your Honor, let's focus on what this

10  means.  This means that you have the treasurer of Tribune

11  acknowledging in March, more than two months ahead of step

12  one, that if Tribune was off plan by two percent, it would

13  be insolvent.  It's amazing.  It's also noteworthy, Your

14  Honor, that we took the deposition of Mr. Bigelow, but we

15  took it on one condition -- a condition insisted upon by the

16  debtors as the price of admission to that deposition.  We

17  couldn't ask Mr. Bigelow a single question about what

18  happened in 2007.  We were confined in our examination to

19  what happened post filing of the bankruptcy case.

20          Now, we know, Your Honor, that the company turned

21  out to be well more than two percent off plan in advance of

22  step one.  And we know that, because we have sworn testimony

23  from Professor Black.  And it's not just sworn testimony in

24  this case; it's actually contemporaneous, Your Honor.  This

25  is in the *Garmella* case in May 2007, where Professor Black

1   is again testifying on behalf of the debtors, and here, he's

2   acknowledging that Tribune's first quarter 2007 performance

3   is, in his words, "substantially below management's February

4   projections and closest to downside B".  Well, what did

5   downside B contemplate?  A three-percent decline in

6   publishing.  And what he's talking about, when referencing

7   that three percent, Your Honor, is just the first quarter,

8   just through the end of March.  We know what happened after

9   March.  In April, as Professor Black notes in this

10  declaration, the falloff was even more dramatic, and it got

11  worse still in May.

12          So what you have, Your Honor, is the treasurer of

13  the company, Mr. Bigelow, acknowledging in March that a two-

14  percent miss would render Tribune insolvent, and in May,

15  their own expert testifying that they were off three.  It

16  speaks for itself, Your Honor.

17          Now, we also know from the trial record, Your

18  Honor, what the responsible thing would have been for

19  management to do in light of how they were actually

20  performing against their February projections.  Tribune's

21  current CEO, Eddy Hartenstein, we have a portion of his

22  testimony up on the screen, Your Honor.  And what he

23  testified to is that the responsible way to forecast is to

24  take the most recently available information into account.

25  That's what should've happened.  It's clearly not what

1  happened.  We also know, Your Honor, again from the evidence

2  that's before this Court, that at least some members of

3  Tribune's management shared Mr. Hartenstein's view about the

4  responsible way to project, but those members of management

5  were overruled.

6           Here, we have, Your Honor, in early March, Thomas

7  Wayne, a managing director at Morgan Stanley, reporting in

8  this e-mail on a conversation involving Tribune's then-CEO,

9  Mr. FitzSimmons.  What you have here, Your Honor, is the

10  company's own advisors asking the question, in early March

11  -- and remember, Your Honor, this e-mail is less than a

12  month after the February projections came out; the ink was

13  barely dry -- whether management planned to give another

14  update, given the horrible performance in January and

15  February.  The answer from management was no, though

16  management conceded that it had less confidence in the plan.

17           Now, a month later, Your Honor, early April of

18  '07, here you have Mr. Amsden, who was then the vice-

19  president of finance for publishing, acknowledging in early

20  April, Your Honor, that updated projections, in fact, exist

21  but identifying potential legal concerns as the reason why

22  those projections can't be shared with EGI.

23           Now, a few weeks later, now we're up to April 30.

24  Again, we're still well before the June 4 step one close,

25  Your Honor.  Here, we have Mr. Knapp, the controller of

1   publishing at Tribune, writing again to Mr. Chandler.  Mr.

2   Knapp candidly acknowledges that if Tribune released updated

3   projections, there would be what he calls "consistency

4   issues" to their recent disclosure.  The disclosure that Mr.

5   Knapp is, of course, referring to, Your Honor, is the proxy

6   statement.  What the proxy statement had in it was the

7   February projections.

8          Now, the next line down, Mr. Amsden is insisting

9   that Tribune had to issue updated projections.  But

10  apparently, he was overruled by more senior executives on

11  the sixth floor.  Now, Mr. Knapp's closing, and obviously

12  sarcastic, remark at the bottom of this e-mail about

13  "another stellar week in April" shows what direction he

14  certainly believed that the company was headed in, Your

15  Honor.  This is an amazing piece of evidence that's before

16  this Court.  It really does speak for itself.  There's

17  nothing I can add to it, Your Honor.

18         Finally, we have here a June 8 e-mail, so this is

19  four days after the step one close.  The author of this e-

20  mail is from EGI, and the e-mail is internal to EGI.  And

21  once again, Your Honor can see that the e-mail assumes the

22  existence of a revised forecast.  And more continuing legal

23  discussion within Tribune about whether it should be

24  released.  Your Honor, there's just no way that if, four

25  days after the close of step one, a set of projections

1    existed, that it didn't exist weeks earlier.  We know from

2    the other e-mails that we just reviewed, Your Honor, that it

3    did.  But the company never stepped back to think about

4    whether VRC, in doing its solvency opinion at step one,

5    should continue to rely  upon the February projections,

6    given how unreasonable they were when made and how they were

7    never hit, not even for the first month.

8          So, the evidence on the projections, Your Honor,

9    it's entirely one-sided, and it's overwhelming.  Those

10   projections were unrealistic when they were conceived in

11   February.  Management acknowledged, the very next month,

12   that they were unrealistic.  And management apparently began

13   working on an update as early as March, but ultimately, they

14   decided not to formally revise the long-term plan until

15   October, and not to update their forecast for the remainder

16   of calendar 2007 until July.  The 2007 update, Your Honor,

17   was issued about a month after the step one close.

18          So what this evidence shows is that the company

19   knowingly relied upon fraudulently inflated projections to

20   enter into a transaction, the natural consequence of which

21   was to impair the recoveries of the pre-LBO creditors.

22          Your Honor, now I want to turn to the question of

23   constructive fraud at step one.  And again, I want to start

24   with what the Third Circuit has to say on the issue,

25   specifically on the reasonableness of projections that are,

1    of course, central to the solvency analysis.  What the Third

2    Circuit says is that projections must be tested by an

3    objective standard, anchored in actual performance.  Now,

4    Your Honor, there's lots of precedent -- we cite a couple of

5    cases here -- of courts in the LBO context in particular,

6    throwing out projections that don't meet that standard.

7              What this chart on the next page shows, Your

8    Honor, is the projections used by the experts in the step

9    one solvency analysis.  I want to get into just a couple of

10   details on what Mr. Tuliano did.  First, Mr. Tuliano

11   concludes, Your Honor, that Tribune was insolvent at step

12   one -- and again, this is with collapsing -- even if

13   management's February projections are used.  He does a

14   revised set of projections, but it does not alter the

15   outcome of his opinion.  With respect to those revised

16   projections, Your Honor, you'll see that the blue line that

17   references -- that represents Tuliano's projections tracks

18   perfectly.  It's parallel to the red line at the top of the

19   page, which is management's projections.  And the reason for

20   that, Your Honor, is Mr. Tuliano assumed that management's

21   very aggressive growth rates would get hit, that they would

22   meet those numbers.  The difference being he lowered the

23   starting point to where Tribune actually was in advance of

24   step one.

25              Fischel, his is the blue line.  Those are his

1  third-party projections, and that is an average of various

2  third parties' projections at the time, and that average, by

3  the way, includes --

4          THE COURT:  I think Fischel's the orange line.

5          MR. QURESHI:  I apologize.  Correct.  Fischel is

6  the orange line.  Tuliano is the blue line.  That -- you've

7  discovered, Your Honor, that I am, indeed, color blind.

8  (Laughter)

9          MR. QURESHI:  And Your Honor, what -- the Fischel

10 line includes projections from analysts from some of the

11 banks who were actually involved in the transaction.  So

12 looking at these lines, Your Honor, it can hardly be said

13 that Tuliano's revised projections are too conservative.

14 They're actually higher than Fischel's third-party case.

15          Now, Your Honor, I want to turn for a moment to

16 the examiner's report and specifically talk about what the

17 examiner concluded with respect to the February projections.

18 Now, Your Honor, the DCL proponents did not put on any

19 evidence to support the reasonableness of the management --

20 of management's projections.  None whatsoever.  They rely on

21 the examiner's conclusion, which is excerpted here, that it

22 is "likely that a Court would conclude that it would be

23 inappropriate to revise the February projections based on

24 April and May performance".

25          Not surprisingly, Your Honor, we respectfully

1  disagree with that conclusion.  First of all, this single

2  paragraph that we've blown up on the screen, Your Honor,

3  constitutes the entirety of the examiner's analysis on that

4  issue.  The examiner does not appear to have compared the

5  February projections to 2006 actual performance or to have

6  appreciated the performance that would be necessary in the

7  last seven months of 2007 to meet the projections.  Nor,

8  Your Honor, does the examiner analyze here the question of

9  the February projections being backend-loaded, as Mr.

10  Tuliano described, such that a miss in the first half of the

11  year was even more significant, given the greater growth

12  projections in the second half.  Your Honor, we submit that

13  had those aspects of the February projections been

14  appreciated by the examiner, had that comparison to the

15  actual performance and the -- to the historical performance

16  actually been done, the examiner would not have concluded

17  that the February projections were reasonable.  So we think

18  that a Court that is presented with all of that evidence,

19  Your Honor, and after applying the Third Circuit standard of

20  testing reasonable of projections by an objective standard,

21  anchored in actual performance, would come out where we do,

22  Your Honor: that those projections are simply unreasonable

23  and can't be relied upon.

24          Now, Your Honor, I want to turn to collapsing.

25  As has already been stated, Your Honor, for Mr. Tuliano's

1   balance-sheet test, he does, indeed, assume that the step

2   two debt be considered for the step one balance-sheet

3   solvency analysis, and that is, indeed, necessary for his

4   finding of insolvency at step one.  The Third Circuit,

5   again, has written on this issue, Your Honor, and has

6   instructed that "the collapsing analysis should focus on

7   whether the two steps constitute" what the Third Circuit

8   describes as "an integrated transaction".

9            Now, the *Mervyns* Court held last year, in

10  conducting that analysis, that the Court should look at the

11  totality of the circumstances, including the overall

12  financial consequences the transaction has on creditors.

13  Now, here, Your Honor, we think that a Court deciding on the

14  merits of this issue, and focusing on those overall

15  financial consequences, would find in favor of collapsing,

16  and that's because when substance is elevated over form, as

17  the Third Circuit says that it must be, it's clear that the

18  two steps of the LBO were intended to be, and were, part of

19  one, integrated transaction.

20           On the next page, Your Honor, we've summarized

21  just some of the evidence that we think cuts in favor of

22  that conclusion.  First, Your Honor, the company described

23  this deal as a single deal.  That's how it was presented to

24  the market.  Both steps were described as a single

25  transaction.  Your Honor, the commitment letters for both

1  steps were executed simultaneously.  The step two lenders

2  were obligated to provide that step two financing at step

3  one.  The board approved both steps simultaneously, and Your

4  Honor, we think that all of that evidence points to this

5  being a single transaction.

6          Now, in arguing against collapsing, you heard Mr.

7  Bennett point to FCC approval, Major League Baseball

8  approval, and also the requirement that there be a solvency

9  certificate in advance of step two.  I believe those were

10 his top three points in arguing against collapsing.  And

11 Your Honor, we don't think that those factors change the

12 analysis, because those factors don't alter the fundamental

13 nature of the transaction.  Those factors don't alter what

14 the parties intended at the time.  Those factors don't alter

15 what the parties planned for at the time.  It was a

16 transaction that was conceived, it was designed, and it was

17 marketed to be a single transaction, occurring in two steps.

18 We, respectfully, think, Your Honor, that that is how a

19 Court, again, at a trial on the merits, would come out.

20         Now, Your Honor, I want to move to Mr. Tuliano's

21 balance-sheet analysis in a little more detail.  And what

22 we've shown on this page, Your Honor, is his conclusion,

23 using his step one adjusted projections.  And you can see,

24 Your Honor, that the magnitude of the insolvency is fairly

25 dramatic.  It's in excess of $3 billion.  Now, Tuliano's

1  methodologies in arriving at these conclusions, Your Honor,

2  they were the right ones.  They were soundly applied, and

3  they're consistent with widely accepted valuation literature

4  and with the case law.

5         Now, Your Honor, I want to talk about a few of

6  the areas where Tuliano and Fischel part company in the

7  solvency analysis.  And the first has to do with the tax

8  savings, with whether, in the solvency analysis, Tribune

9  should get credit for approximately $1 billion in tax saving

10  as a result of the S-Corp ESOP structure.  That issue, Your

11  Honor, involves what the valuation treatises refer to as the

12  standard of value.

13         Now, there is no dispute, Your Honor, in the

14  valuation literature that business valuation should be done

15  on a fair-market-value basis.  The literature is also

16  unanimous that the fair-market standard requires the

17  assumption of a hypothetical buyer, not, Your Honor, a buyer

18  that is an S-Corp ESOP.  That's why Tuliano excluded the tax

19  savings from his balance-sheet analysis.  And on this point,

20  the examiner did agree with him.  Fischel, on the other

21  hand, includes that benefit, Your Honor, and his

22  justification for doing it, when we asked him in his

23  deposition on cross-examination, what standard of value did

24  you use, his response was "real economic value".  But he

25  also acknowledged, Your Honor, that there's no support in

1  the valuation literature for a standard of value called real

2  economic value.  It just doesn't exist.  What VRC did on

3  this issue of the tax savings provides further support for

4  Tuliano's approach.

5          The next page, Your Honor, is another excerpt

6  from volume one of the examiner's report, and the facts that

7  are highlighted are all facts stipulated to by the parties.

8  And that is, Your Honor, the VRC's engagement letter

9  explicitly modified the definition of fair market value to

10  actually require that their solvency analysis assume that

11  the buyer is an S-Corp, not a hypothetical buyer.  Now, Mr.

12  Browning of VRC testified to the examiner, Your Honor, that

13  over the course of his career, and he had done 400 to 500

14  solvency opinions, he had never seen the fair-market-value

15  definition altered in that way.

16          Thomas Kenny, Your Honor, was the senior vice-

17  president at Murray Devine in 2007 at the time of this

18  transaction.  He was the lender's solvency expert.  And

19  here's what he had to say on this subject.

20  (Playback, Video Deposition of Thomas Kenny:)

21      "Q   Is it appropriate to include, within a fair-value

22  determination, attributes or value that results from unique

23  aspects of the buyer?

24      "UNKNOWN:  Objection as to form.  Object to form,

25  foundation.

1        "A   I have not seen that before.

2        "Q   Okay.  So in your opinion, would it not be

3   appropriate to include that -- those aspects of value?

4        "UNKNOWN:  I object to the form, foundation.

5        "A   I've never seen it before.  I would probably say

6   it's not inappropriate.

7        "Q   Fair valuations are supposed to assume a

8   hypothetical buyer, correct?

9        "A   Yes.

10       "Q   Does an S -- is an S-Corp considered a

11   hypothetical buyer?

12       "UNKNOWN:  Object to the form.

13       "A   An S-Corp?  Well, a lot of times, buyers are not

14   necessarily S-Corps, but I guess S-Corps, due to their

15   structure, are frequently not buyers of larger companies, I

16   believe.

17       "Q   Okay.  So would you consider that to be a

18   hypothetical buyer?

19       "UNKNOWN:  Objection: form.

20       "A   I would not consider them to be a hypothetical

21   buyer, no."

22   (End of playback.)

23            MR. QURESHI:  Again, Your Honor, the words of the

24   lender's own solvency expert from 2007.

25            Next, Your Honor, onto the question of the PHONES

1   notes and how those notes should be valued, for purposes of

2   the solvency analysis.  And on this issue, Your Honor, the

3   law is again decidedly with Mr. Tuliano's approach.  The

4   Third Circuit has clearly stated, in the *TWA* case, that "in

5   a solvency analysis, the face value of debt has to be used,

6   not the market value".  There's just no debate on the point,

7   Your Honor.  That's what the law requires.

8        Now, what VRC did on the issue of the PHONES

9   notes is again instructive.  In its step one solvency

10   opinion, Your Honor, VRC got it right.  They used the face

11   value of the PHONES.  In fact, they continued to use that

12   number until just days before the close of step two, when,

13   as Your Honor can see from this slide, they abruptly changed

14   course and used market value instead.  And what was the

15   result of that?  Their own footnote explains what they did.

16   It's a swing of over $600 million in favor of solvency, of

17   course, given what VRC was trying to achieve.

18        Now, Your Honor, there's no discussion in the

19   examiner's report.  There's no analysis of this issue.  The

20   examiner accepted VRC's December 18 number for the PHONES,

21   and, in his balance-sheet solvency analysis, used market

22   value and not face value.  Your Honor, we think that's

23   clearly wrong.  It cuts against the *TWA* case that we

24   referred to.  And Your Honor, it appears, from our reading

25   of the examiner's report, that it's just not an issue that

1  the examiner appreciated at the time to be a contested one.

2  There's no discussion of the point.

3         So, Your Honor, to close out the discussion on

4  the balance-sheet solvency test, what I'd like to end with

5  is a market test, of sorts, of both Fischel and Tuliano's

6  conclusions.  And I want to start with Fischel's conclusion.

7  So what Your Honor sees on this page, and this is the

8  demonstrative that we used during Fischel's cross-

9  examination.  In the box on the right-hand side, that's our

10  addition, Your Honor, to Fischel's page.  And recall that

11  Professor Fischel never concludes a single enterprise value

12  from his various methodologies.  He doesn't ever tie it all

13  together and give a single range.

14         So what this chart shows is that, by simple math,

15  the implied share price, based on Fischel's enterprise value

16  ranges, goes from a low that we've circled of $36 a share,

17  which Your Honor, again, that's $2 above the announced

18  transaction price.  The merger price was $34.  And it goes

19  to a high of double that: $68 a share.

20         Now, Professor Black got on that witness stand,

21  Your Honor, and he affirmed here what he testified to and

22  what he swore to, I should say, in his *Garmella* declaration,

23  which again was contemporaneous.  This was in May of 2007.

24  What he said was that, absent the merger, Tribune's stock

25  would've dropped well below $30 a share, to something in the

1  range of $29.  Now, compare that, Your Honor, to Fischel's

2  conclusion.  Fischel says implied share price is between $36

3  and $68.  And Black says the right price, absent the merger,

4  is closer 32 and as low as 29.

5       So Black's contemporaneous 2007 sworn declaration

6  compels a very clear conclusion, Your Honor.  Not only did

7  Fischel get it wrong in his step one balance-sheet analysis;

8  he got it way wrong.  Now Tuliano, on the other hand, got it

9  exactly right.  And Professor Black says he got it exactly

10  right.  We do the same thing here, Your Honor, which is we

11  take the implied share price from Tuliano's step one

12  balance-sheet conclusion, and this is his conclusion relying

13  upon management's projections, and show what the implied

14  share price is.  And as Your Honor, can see circled there,

15  it's $28 a share.  Exactly in line with where Professor

16  Black said it should be.

17       Now, Your Honor, moving away from balance-sheet

18  and onto the capital adequacy test, I don't have a lot of

19  time, so I will cover this very briefly.  First, Your Honor,

20  it's important to note that the bankruptcy code is very

21  clear that, in the capital adequacy analysis, all of the

22  debt that the company intended to incur must be included, so

23  that includes step two.  There's no serious debate, and the

24  examiner also agrees that the step-two debt should be

25  included for this purpose.  And remember, Your Honor, we

1    only need to prove insolvency under one of these tests, not

2    all three of them.

3            There's also no dispute, Your Honor, that in

4    performing the capital adequacy and ability-to-pay tests,

5    reasonable downside projections should be used.  Now, the

6    results, Your Honor, they're clear.  It doesn't matter what

7    set of projections you use.  What Your Honor will see in

8    this chart is that the red bar represents the total debt

9    service obligations of Tribune.  The -- I think it's green,

10   Your Honor.  The green bar represents free cash-flow

11   available to service debt under a variety of projections.

12   And what it shows, Your Honor, is it doesn't matter what

13   projections you use.  The results are clear.  They're

14   dramatic.

15           THE COURT:  It's blue.  It's blue.

16           MR. QURESHI:  It's blue.  Okay.  Again, I stand

17   corrected.

18   (Laughter)

19           THE COURT:  It's okay.

20           MR. QURESHI:  Now, Your Honor, let's look at

21   Fischel's step one capital adequacy conclusion.  What it

22   suggests is exactly what one would expect it to show, Your

23   Honor, given the previous chart.  This is Fischel's

24   analysis, and it shows that, in 2010 and in 2011, the

25   revolver goes negative by almost $80 million, and then, in

1    2011, by $45 million.  And what that means, Your Honor, to

2    everybody but Professor Fischel, is that the capital

3    adequacy test was a fail.  The company is insolvent.

4         What he does, though, is he puts a box around the

5    positive $9 million in 2012, and he gets on the stand, and

6    he says to Your Honor, well, I can turn what's a clear fail

7    into a pass, and here's how I do it.  I'm just going to

8    assume that the company can sell some assets, that the

9    company can cut some more costs, and somehow generate some

10   additional cash to overcome a fairly significant shortfall

11   in 2010 and 2011.  Your Honor, he does it without any

12   analysis.  There's no quantification.  There's no support.

13   It's just -- it's made up.  it's just not credible to assume

14   away negative revolver availability of almost $80 million at

15   a time, Your Honor, where everybody but Fischel acknowledged

16   is that the industry is in a state of extreme decline, where

17   Tribune is doing worse than the industry, as a whole, and

18   where the company is going to put just crushing leverage of

19   $13 billion on the company.  It just doesn't hold up.

20        Now, Your Honor, I want to shift to the market

21   evidence that we heard some about this morning.  Again, it's

22   what Professor Fischel purports to rely upon for his

23   conclusion of solvency at step one.  Now, the very first

24   category of market evidence that Fischel points to as

25   supporting his conclusion of solvency is Mr. Zell's

1  willingness to put 315 million of his own money into this

2  deal.  The fact, Your Honor, that Fischel points to this as

3  a hallmark of solvency, it's quite incredible, Your Honor,

4  when one thinks about the contemporaneous documents, which

5  show that Zell's equity was a sore point for the LBO

6  lenders, it was a sore point for analysts, and for

7  investors.

8          And let's look at some of that evidence.  Let's

9  start here with early 2007.  Again, Julie Persily from

10 Citibank, characterizing Zell's investment as a "very

11 inexpensive option on the company".  In May, Peter Cohen at

12 JPM wrote of the low equity check from Sam when trying to

13 explain why the deal struggled in the marketplace.

14         Onto March of '07, in *Moody's*, cited the

15 negligible amount of equity from Zell.  And in July, Jimmy

16 Lee, vice-chairman of JPM, he was scheduled to have lunch

17 with Mr. Zell.  Now, JPM's bankers suggested that, at that

18 lunch, Mr. Zell be asked to provide, number one, more

19 equity, number two, even more equity.  Your Honor, Mr. Lee's

20 bankers also suggested that at that lunch, Mr. Zell here,

21 unequivocally, that without more equity, this deal will

22 fail.  And of course, Your Honor, that's exactly what

23 happened.  That's just a sampling of the contemporaneous

24 evidence that Fischel didn't bother to look at, and it just

25 doesn't provide any support, Your Honor, for solvency.

1          Now, the next category of market evidence that

2    Fischel points to is the willingness of the banks to fund

3    the deal, and I'm going to move quickly through this, Your

4    Honor.

5          First of all, the logic just doesn't make sense.

6    Fischel says, well, they agreed to fund it, so how can it be

7    insolvent?  It's obviously circular, and it would mean, if

8    carried to its logical conclusion, that one could never have

9    an LBO that rendered the company insolvent.

10          Again, the contemporaneous evidence tells the

11   story, Your Honor, and there's no sign that Fischel looked

12   at it or analyzed it.  Let's start with early March of '07.

13   Here, Merrill Lynch writing of there being no comfort in the

14   type of leverage that's put on the deal.

15          The next slide, again we'll move quickly through

16   this, Citi also uncomfortable with the leverage.  Ms.

17   Persily here is very concerned, describes the declining

18   EBITDA as "scary".

19          And with respect to Citigroup in particular,

20   there's another story, Your Honor.  There's a series of e-

21   mails, again in the record, uncontroverted, involving Citi

22   and why it proceeded with this deal.  Senior Citi banker

23   repeatedly wrote of a fear that Morgan Stanley, the advisor

24   to the Tribune's special committee, would "trash Citibank in

25   the marketplace if they backed out of the deal".  Their

1    words, Your Honor, not mine.

2            In this e-mail, the reference to Chad and to his

3    friends laughing at him for doing a deal with this kind of

4    leverage, that's not just a reference to some junior analyst

5    at Citigroup, Your Honor.  It's a reference to Chad Leat,

6    who at the time was the head of leveraged finance at

7    Citigroup.

8            In this next e-mail, Your Honor, again, same

9    concern: if Citi backs out, Morgan Stanley will use that

10    fact against Citi in marketing for other deals.  Here,

11    there's a reference to Frank being "very afraid of what

12    Morgan Stanley might do against Citi".  And again, Your

13    Honor, this isn't a junior analyst that's being referred to.

14    It's Frank Yeary, the head of M&A at Citi at the time.

15            In this next e-mail, Ms. Persily writes of a

16    concern regarding franchise risk.  Again, Your Honor, this

17    is not evidence of solvency, the fact that Citi, under these

18    circumstances, went ahead with this deal.  And again,

19    there's no sign that Fischel even reviewed these e-mails,

20    let alone analyzed them.

21            Now, the next series of documents, again not

22    analyzed by Fischel, show, Your Honor, that the banks had

23    significant difficulties in syndicating the debt and in

24    reducing their own exposure.

25            We don't have time to go through them all, so I'm

1   going to flip ahead a couple of slides, to an e-mail here

2   from JPM, writing that "we are fighting the good fight, but

3   even with full flex and throwing fees at it, we could fall

4   very short".  Now, as noted in the bottom e-mail, Your

5   Honor, the difficulty JPM was having was not due to the

6   market; it was about this deal.

7           Your Honor, very briefly, a Bank of America

8   report, it's the same thing.  And there's much more

9   evidence.  Again, it's cited in our briefs, Your Honor.  It

10  talks about the banks having to give up fees, give up rate,

11  and sell below par in order to place the debt in the

12  marketplace.  It's clear, Your Honor, that the investors who

13  did not have the same incentive that the lenders did to

14  participate in the LBO, they were anything but enthusiastic

15  about it.

16          Your Honor, the next category of market evidence

17  pointed to by Professor Fischel, it's kind of a remarkable

18  one.  It's the rating agency downgrades.  Now, defying all

19  logic, Fischel says that "the steady stream of pre-step one

20  downgrades are actually evidence of solvency".  It just

21  doesn't make sense, Your Honor, that -- first of all,

22  default ratings for corporate debt, they're not assigned

23  until there's actually a default.  What the record does show

24  is that the rating agencies uniformly expressed grave

25  concern about the high leverage and the low equity and the

1    declining revenues in this deal.  Through 2006 and the first

2    half of 2007, Your Honor, the agencies collectively

3    downgraded Tribune no fewer than seven times.  I just don't

4    understand, Your Honor, and respectfully, it's not credible

5    to conclude, from this evidence, that these downgradings are

6    evidence of solvency.  Your Honor, it compels the opposite

7    conclusion.

8           Now, before I get to CDS pricing, I want to

9    address, briefly, something Mr. Bennett brought up this

10   morning, and that was the *Iridium* case, the *Campbell's Soup*

11   case, and the question of market evidence.  Now, Your Honor,

12   those cases address the question of whether a vibrant equity

13   market could be looked at post the alleged fraudulent

14   transfer as an indicator of whether the company was solvent.

15   But that's, obviously, very distinguishable from this LBO,

16   Your Honor.  As Professor Black testified, the stock price,

17   pre step one, was obviously impacted by the public

18   announcement on April the 2nd that there was going to be a

19   merger at $34 a share.  That's why Tribune's equity price at

20   step one is of a categorically different nature than what

21   the *Iridium* and the *Campbell's* Courts were addressing.  That

22   just wasn't the situation in those cases, and it's vastly

23   different from what's going on here.

24           Now, with respect to CDS pricing, Your Honor,

25   again, I want to start with what Your Honor heard from Mr.

1    Bennett.  He is right that CDS does not trade on an exchange

2    and that therefore, the volume, the liquidity in the CDS

3    market, is not available on a daily basis.  But that's about

4    all that Mr. Bennett got right.

5            With respect to Tribune, Your Honor, because

6    there was a default, there had to be an option to settle out

7    the CDS contracts following the bankruptcy, and we know

8    about it, because articles were written about it.  It's well

9    known.  It's cited in Mr. Tuliano's report.  And what we

10   know, Your Honor, is that almost $18 billion in notional

11   value of credit default swaps were ultimately settled.

12   That's 20 times the outstanding bonds.  And that's why Mr.

13   Tuliano concluded and testified before this Court that the

14   CDS market is vastly more liquid and is therefore a much

15   better indication of market reaction than is a bond market,

16   with -- which both Tuliano and Fischel acknowledge was

17   highly illiquid.

18           And so the easiest way for investors, Your Honor,

19   to lay off risk, in advance of step one, was to purchase

20   CDS.  So let's look at what happened.  First of all, Mr.

21   Bennett takes issue with the scale in this chart, but Your

22   Honor, I think the important thing to note is -- let's focus

23   on step one completion.  It's on the left side of the chart.

24   It's circled.

25           So what happens to CDS prices as we move towards

1    step one?  Well, the spread goes from -- oh, it looks like,

2    maybe 175/150.  And it more than doubles, to above 400, by

3    the time you get to the step one close.  That's a dramatic

4    jump, Your Honor.

5            Now, the other thing that's important to note,

6    and Your Honor asked the question this morning, the market

7    can only respond to the information that the market has.  We

8    reviewed, Your Honor, the evidence concerning the February

9    projections and the updates that management was considering

10   but did not release to the market.  So the only information

11   the market had, at step one, was that the company was

12   standing by the February projections.  The market, of

13   course, assumed that those projections were done in good

14   faith, and the company continued to have a good-faith belief

15   that they could be met.  We, of course, know that that's not

16   the case.

17           So in July, a month later, when the company did

18   release revised projections and finally brought down its

19   2007 numbers, what happened?  Well that, Your Honor, is the

20   second circle on the right.  And what we can see, there's a

21   dramatic spike.  If Your Honor just looks at the -- where

22   the spread goes from the close of step one to July 22, it's

23   a 70-percent jump since step one, Your Honor, and the CDS

24   spread.  And there was a *Bloomberg* article at the time, and

25   again it's cited in Tuliano's report, that shows that, at

1    that level, Tribune was the fourth riskiest of 1,200 issuers

2    at the time.  That, Your Honor, is very clear evidence of

3    solvency.

4            So, Your Honor, I don't have time to discuss what

5    Houlihan did and their disinterested view of solvency, so

6    I'm going to skip over that.

7            And what I'd like to finish with, Your Honor, is

8    a review of the contemporaneous evidence presented by the

9    DCL proponents, lauding the wisdom of the LBO.  Here it is,

10   Your Honor.  And Your Honor can wait, but that's it.

11   There's not a single witness.  There's not a shred of

12   contemporaneous evidence.  There's not any documents, Your

13   Honor.  And that's despite the fact that much of the

14   management team of Tribune that was in place and that did

15   this deal in 2007 remains with the company, remains under

16   the debtors' control.  They didn't bring a single witness,

17   Your Honor.  They didn't put anybody into that witness stand

18   to explain to Your Honor why it made sense to do this deal,

19   to explain to Your Honor why the February projections were

20   valid and why it was reasonable for the company to continue

21   to rely upon them.

22           What the evidence does show, Your Honor, and it

23   really is uncontroverted -- it's why we have an almost-

24   hundred-page presentation, is that the LBO was doomed from

25   the outset.

1        So, unless the Court has any questions, I will

2   hand it back to Mr. Zensky.

3        THE COURT:  I do not.  We're going to take a

4   five-minute recess.

5   (Recess at 2:10 p.m. to 2:19 p.m.)

6        MR. ZENSKY:  Good afternoon, Your Honor.  David

7   Zensky for Aurelius and the noteholder plan proponents.

8   Your Honor, you look at the evidence that Mr. Queshi took

9   you through and you just have to ask yourself why did this

10  transaction happen.  You know, I'm sad to say --

11       THE COURT:  That question kind of came up a long

12  time ago.

13  (Laughter)

14       MR. ZENSKY:  Well, it's a question that lingers,

15  Your Honor, and it's certainly one that would be relevant in

16  a trial on the merits.  It's sad to say it's not

17  unprecedented that smart people enter transactions like

18  this, over leverage companies, leave it with unreasonably

19  small capital, and pay more than it's worth.

20       THE COURT:  Seen a few here.

21       MR. ZENSKY:  Yep.  We know it's true from the

22  many cases that have applied, the fraudulent transfer

23  doctrine and associated remedies to leverage buyouts.  We

24  know if from Professor Black, who, based on his research and

25  his corporate finance background, admitted as much, that

1   smart people overpay for assets.  And the truth is there

2   were smart people involved in this transaction, there's no

3   question about it.  But what they were able to do or thought

4   they were able to do was shift the risk of the transaction

5   onto the preexisting creditors.  That's the paradigm of an

6   LBO.  It shifts the risk of the transaction onto others.

7   And they did it here because there was something in it for

8   all of them, in other words, the proponents of the

9   transaction, and they didn't want to be at a risk of it.

10          And if we look at the next slide, we can quickly

11  look at why the participants to the transaction did it and

12  what they thought was in it for them.  Well, we know that

13  the lenders, for example, Your Honor, were planning to take

14  300 million dollars in fees off the table and only to retain

15  a modest exposure after closing.  They certainly intended to

16  syndicate a good portion of the debt.  And equally, if not

17  more important, these are banks that all wanted a curry

18  favor with Mr. Zell.  Certainly there aren't many banking

19  clients out there like Mr. Zell.  They also wanted to avoid

20  the reputational risk of backing out.  And you saw those

21  slides with respect to Citibank a few moments ago.  For Mr.

22  Zell, of course, this was nothing more than an inexpensive

23  option.  He put in 315 million dollars and he was able to

24  acquire control of Tribune plus 40 percent of the economics.

25  They say it's a 13 billion dollar company.  We say it's an

1  11 billion dollar company.  Either way, 315 million dollars

2  is an awfully inexpensive option for that type of control,

3  Your Honor.

4          It's easy to see what was in it for management.

5  Management got enormous payouts upon the change in control.

6  Just to name two, Mr. FitzSimmons got 16.4 million, Mr.

7  Vanesco 8.2 million.  So, we know what's in it for them.

8  The shareholders -- the large shareholders of course, Your

9  Honor knows, were the ones that pushed for a transaction

10  like this.  And they got cashed out at an inflated premium

11  price.  The evidence certainly supports that.

12          And then there was the 2006 bank facility which

13  got repaid.  It was many, if not the identical -- many of

14  the same, if not the identical, group of lenders.  They got

15  repaid on that facility and then they relent the money at

16  higher interest rates into the LBO.  So, that's what they

17  got.

18          And what did the preexisting debt get, Your

19  Honor?  Well, they were asked to bear virtually all the risk

20  of the folly of this transaction.  Certain emails referred

21  to them as the bank's equity cushion.  These are creditors,

22  not equity, Your Honor.  These are creditors.  And then they

23  were -- it was described by one senior JP Morgan banker that

24  they squashed the other creditors.  And if you look at the

25  next email from Peter Cohen, this is pre-step one by two

1    months, and he is explaining the deal to someone internal to

2    JPM and he says, we squashed everything else, certainly an

3    unflattering view of the preexisting creditors, Your Honor,

4    who had nothing to do with the leverage buyout.

5              So, the only problem with squashing other

6    creditors, Your Honor, if the deal goes south, as this one

7    predictably did, is that if you're the squasher, the Code

8    provides remedies to rectify what you did.  Those remedies

9    are called 11 U.S.C. 548, 544, equitable subordination,

10   equitable disallowance.  And all of those should apply in

11   this case, Your Honor.  If those doctrine don't apply to a

12   leverage buyout like this, Your Honor, what do they apply

13   to?  And I think, again, the Court should recall my opening

14   comments about the burden.  We don't have to prove at this

15   stage that these are absolute winners.  I think you and Mr.

16   Sottile say, well, they're not a slam-dunk.  I think they

17   have to prove to you that the claims have a low chance of

18   success.  And we don't believe they have done that.

19              Let me turn to the issue of step two avoidance,

20   as I have said I would.  There has been very little debate

21   about step two.  I think it's fairly evident that there is

22   just not any real defense to the company's solvency at step

23   two and to whether the step two debt would be avoided in a

24   full litigation.  We have an excerpt from the post-trial

25   brief of the DCL plan proponents.  And you can see what they

1   tell you here is that avoidance of the step two loans is not

2   a forgone conclusion.  That doesn't sound like a rousing

3   defense of that claim, Your Honor, and I think it's clear

4   that the evidence supports it.

5          Instead, the issue is what is the remedy that

6   would result from the avoidance of step two.  And you heard

7   Mr. Sottile and Mr. Bennett say that step two avoidance does

8   nothing for the non-LBO creditors because step one still has

9   a huge claim and they are entitled to suck up all or

10  virtually all of the value that otherwise would have gone to

11  the step two holders.  The noteholders, of course, disagree

12  with that and believe that in a trial on the merits there

13  are multiple remedies and courses that would result in

14  fabulous recoveries for the non-LBO creditors, the first

15  relating to where, and the second to whether step one gets

16  post-petition interest.

17         Now, the various arguments respecting where, Your

18  Honor, at the root are simply designed to ensure that if

19  step two is avoided, that the benefits of that avoidance go

20  to the innocent, non-LBO debt that existed at the time and

21  not back into the hands of step one.  Now, it assumes that

22  step one, of course, would still recover the full amount of

23  it's pro rata claim as if step two was not avoided.  It's

24  just that step one doesn't improve its position as a result

25  of step two being avoided.

1          Now, if we look at the next slide, Your Honor,

2    Mr. Sottile, I think, somewhat sheepishly fessed up to this,

3    that the committee complaint, of course, pleads the very

4    remedies that we have been harping on to some degree, Your

5    Honor.  In Count 4, they are pleading estoppel against the

6    banks to prevent LBO lenders from benefiting from the

7    avoidance of step two obligations and transfers.  In Count

8    5, they plead the same relief based on an intentional

9    fraudulent transfer theory.  And in Count 7, they plead it

10   as a species of unjust enrichment.

11         The lenders never sought to challenge the

12   colorability of these claims, Your Honor, when the committee

13   saw it standing.  There was never any argument that any of

14   these causes of action failed to state a claim or should not

15   be part of the complaint.  Now --

16         THE COURT:  I never took that though to be an

17   admission of anything.

18         MR. ZENSKY:  Certainly, Your Honor, they would

19   have the right to raise it on motion practice later.  But

20   there was no argument that those claims were not colorable,

21   no question about that.

22         If we look at the next slide, Your Honor, we look

23   at the economics or the ramifications of whether, if where

24   applies, what the stakes are.  If step two is avoided -- and

25   this is at the DCL plan value of 6.75 billion, Your Honor,

1    of course, we believe the DEV is substantially higher.  This

2    uses the debtor's number of 6.75 billion.  If that's the

3    value of the company and step two is avoided, there is just

4    shy of 1.6 billion dollars of distributions that are slated

5    as of now for the step two holders.  There would be 318

6    million dollars of disgorgement dollars that would come in

7    before pre-judgment interest.  So, you're looking at about

8    1.9 billion dollars.  And the question is whether that value

9    goes to the non-LBO creditors or goes to the step one

10   lenders.

11          And you can see that that's a big pile of money

12   and that if that money was, in fact, rooted to the non-LBO

13   creditors, there is enough to pay all non-LBO creditors in

14   full, 100 percent of their claim, with the exception of the

15   phones, and the phones would still get more than 50 percent

16   recovery on their claim.  And all that would have to happen,

17   step two avoided.  You can see there is virtually no defense

18   of step two avoidance.  And one of the arguments respecting

19   where would have to be adopted to produce that recovery.

20          So, I think, again, within the context of

21   canvassing and the burden, the DCL plan proponents have to

22   prove to you that there is little chance that these claims

23   would be accepted or these arguments would be accepted in a

24   trial on the merits given the benefits that would result to

25   the non-LBO creditors if the litigation goes forward.

1          Now, the arguments that where is based on derive

2    from a couple of sources, Your Honor.  In part, it's based

3    on the broad scope of equitable discretion that every

4    Bankruptcy Court has to sift the circumstances surrounding

5    any case and any claim and ensure that there is not

6    injustice or unfairness done in the administration of the

7    estate.  That, of course, comes from <u>Pepper v. Litton</u>.

8          But there is really a double dose of discretion

9    with respect to fraudulent transfer law, Your Honor, because

10   the remedies associated with avoidance are widely

11   discretionary as well.  And when a Court is crafting

12   remedies for avoidance under 544 or 548, we believe the

13   cases show that it has enormous discretion to figure out how

14   to undo the harm to the creditors that were harmed by the

15   leverage transaction or fraudulent transfer and not benefit

16   the parties who promoted it.  And that's the third leg of

17   where, Your Honor.  And Mr. Bennett said there are no cases

18   on it.  And we respectfully disagree.  We have got excerpts

19   from three of them here, Your Honor, showing that there are

20   multiple Decisions where Courts have said that a party who

21   consents to a particular transaction, transfer, or

22   assumption of an obligation, assumes the risk of it,

23   participates in it to some degree, can't benefit from the

24   avoidance of that transaction.  It's pretty simple and

25   straightforward, Your Honor, that these are parties in these

1  cases who a Court says can neither pursue avoidance of the

2  action, and if they can't pursue avoidance of it, they can't

3  benefit when someone else pursues avoidance of it.  And we

4  believe that's the situation that we're in.  And these are

5  just three of the cases.  There are several others cited in

6  our brief.

7       And I think what's key to understand, one of the

8  keys of this, Your Honor, is that the Courts that have

9  reached these rulings that limit and restrict certain

10  parties from participating in the benefits of avoidance,

11  they're not relying on a particular section of the Code,

12  they're relying on the general equitable powers of the Court

13  to adjust the equities in a given fraudulent transfer case.

14  It's not unlike in pari delicto, for example, Your Honor.

15  There is no statute that says that Courts should prevent

16  recovery under those circumstances.  It's Courts doing what

17  Courts do, Judge, and look at the equities of a given

18  situation.

19       Now, Mr. Bennett told you that he thought the

20  Labelon Case was distinguishable.  He said there was an

21  agreement in that place.  Well, I think he's forgetting

22  there's an agreement in place in this case.  It's called the

23  senior loan agreement.  And the step one and step two debt

24  was provided for by the exact same agreement, Your Honor.

25  The arrangers who set up step one also simultaneously set up

1    step two.  They priced the transaction together.  They

2    marketed it together.  They based the interest rate for step

3    one on the fact that step two was going to be added to the

4    transaction.  They negotiated their fees based on it being a

5    step one and step two transaction.  So, it's clear that the

6    step one holders and their successors certainly were part of

7    this transaction.  They promoted step two, Your Honor.  And

8    his comment in no way distinguishes the Labelon Case.  Now,

9    there are more facts on this point that are set forth in our

10   papers.  But I think those are the principle ones.

11          I heard Mr. Bennett say that where was rejected

12   by the examiner.  We certainly disagree with that.  The

13   points are in our papers.  And I know the Court has read the

14   report.  The examiner said that he felt that it was an

15   equipoise as to whether where would apply to disgorgement

16   recoveries.  We believe he also said that it was an

17   equipoise as to who would benefit from the avoidance of

18   obligations of step two.  DCL plan proponents have argued

19   that he said reasonably unlikely as to that point, but he

20   certainly did not reject it.

21          Now lastly, Mr. Bennett said that where can't be

22   applied to benefit shareholders.  And certainly Tribune is a

23   shareholder of the subsidiaries.  But the benefits of where

24   would never be flowing, Your Honor, to the equity holders of

25   Tribune.  And the cases that have rejected the use of

1  equitable subordination, for example, to benefit equity,

2  have been in that context.  If where were to apply here, and

3  you saw the slide with respect to the 1.9 billion dollars,

4  there would still be inadequate funds to pay back the phones

5  debt.  So, this is not a remedy where anyone is saying that

6  the actual equity owners of the company should benefit from

7  avoidance.

8         But I should add, Your Honor, that when that

9  issue was presented in the Bayou Case to Judge Hardin in the

10 Southern District, this is a fraudulent transfer case

11 between investors in a hedge fund, he flatly refused to

12 adopt a bright-line rule that equity can never benefit from

13 an avoidance action under the Code and he said that each

14 case has to be based on its facts and that that case, where

15 certain parties redeemed out of a hedge fund, that was found

16 to be insolvent.  And the non-redeemers wanted to claw back

17 the money.  He refused to say that they could not use the

18 avoidance powers of the Code to do so.

19        There is also the Goss Case, Your Honor, in which

20 an individual bankruptcy -- it was an individual bankruptcy

21 proceeding and a transfer was avoided.  The money came back

22 into the estate.  And the Court ruled that it would go to

23 the heirs of the debtor rather than back to the party that

24 received the transfer.  So, there are instances where, in

25 effect, equity has benefited in the way that Mr. Bennett was

1  using the phrase before.

2          Now, Your Honor asked this morning a question

3  about at what DEV is necessary for certain parties to be in

4  the money, I think was the phrase Your Honor used.  And the

5  next chart addresses that.  And this goes to the issue that

6  Mr. Sottile and Mr. Bennett discussed, which is if step two

7  is avoided, and this assumes that one of the where doctrines

8  is not utilized, but step two is avoided and the step one

9  lenders do not get post-petition interest, what does that

10 mean for recoveries.  And this comes from our supplemental

11 objection, Your Honor.  And you can see in the blue box

12 that's second from the right that at as little as 7.2

13 billion, for example, the notes could obtain a 60 percent

14 recovery merely from step two being avoided, step one being

15 allowed, but not receiving post-petition interest.  And if

16 you go down further, you can see the chart as to what values

17 are required for the phones to begin receiving a

18 distribution.  The column on the far right runs the same

19 calculation, but when where applies and step one does not

20 improve its position as a result of the step two avoidance.

21          Now, the question of whether the step one holders

22 get post-petition interest is in the briefs.  And I'll just

23 refer the Court to our post-trial brief at pages 60 to 61

24 and our conclusions of law at -- proposed conclusions of law

25 at page 63.

1           Finally, Your Honor, there was a third outcome

2  that we discussed briefly in our papers and, I believe, it

3  was discussed at trial as well.  And that is a litigation

4  outcome where there is avoidance at the parent company

5  level, but not at the subsidiary level of both step one and

6  step two.  And I believe Mr. Sottile touched on this outcome

7  this morning as well.  When that happens, there are enormous

8  disgorgement dollars that flow into the parent company

9  because the parent paid all the principal and interest back

10  to the step one and step two holders pre-petition.  We think

11  there is a very strong argument that those disgorgement

12  dollars would stay at the parent and go to the pre-LBO

13  noteholders and phones and not the step one and step two

14  holders through intercompany claims.  And that's also set

15  forth in our brief, Your Honor, at page 61 to 62 of our

16  post-trial brief and pages 64 to 66 of our proposed

17  conclusions of law.

18           Let me change topics at this point, Your Honor,

19  and talk about the process by which the proposed settlement

20  now before you came about.  We think it's clear from the

21  cases that fairness and rigor are required aspects of any

22  process that will lead to a settlement -- that can lead to a

23  settlement that the Court should approve.  We know, Your

24  Honor, that the lenders were at the table at all times

25  trying to pay as little as they had to pay.  I don't think

1  there is any question about that.  This was not a charity

2  for them.

3          THE COURT:  That's not an uncommon character

4  trait of lenders, is it?

5          MR. ZENSKY:  It certainly is not, Your Honor.

6  It's entirely appropriate of lenders.  But what's also

7  entirely appropriate is having an equal advocate on the

8  other side who is pushing just as hard for the maximum

9  payment to settle the litigation.  That's the dynamic that

10 leads to a settlement that I think helps the Court determine

11 that the proposed settlement is a fair and reasonable and

12 within the right range.

13         I think that that concept, the requirement of

14 having a vigorous advocate and a party with a stake in the

15 outcome was recognized by the witnesses who testified before

16 you.  Mr. Roper testified that that's certainly one of the

17 reasons that Aurelius did not oppose the April plan, because

18 they understood that Senator Bridge was in the room, was

19 fighting hard for the noteholders' side, the non-LBO

20 creditor's side of the equation, and pushing back against

21 the lenders seeking to pay as little as possible.

22         Mr. Kurtz told you on cross-examination that to

23 the debtors, Senator Bridge's involvement and approval of

24 the April plan was incredibly important to the debtors.  Mr.

25 Salganik testified to the same thing.  He said that, from

1  his perspective and the committee's perspective, knowing

2  that Senator Bridge was in the room and negotiating hard

3  over a period of several months gave him validation that the

4  proposed settlement was fair.  And then on cross-examination

5  by Mr. Friedman, he had to confess, what we all know, that

6  that validation is lacking with respect to the settlement

7  now before you.

8           Now, why do I say that there was no one in the

9  room pushing hard for the parent company, noteholder side,

10  and phone side of the equation?  Well, Your Honor, I think

11  the evidence that you saw during the trial, and as

12  summarized in the post-trial brief, shows that this was a

13  process that was run by the debtors at all times.  You'll

14  recall the debtors' opposed committee standing originally.

15  They opposed at all times relinquishing settlement

16  authority.  They were opposed to letting the committee have

17  sole settlement authority.  And most important, the debtors

18  were controlled by the very people who envisioned the

19  transaction that we're talking about, Your Honor, Mr. Zell

20  from the outside, and some of his colleagues, and board

21  members of Tribune, and management on the inside.  The

22  people who put the deal together were running the company

23  and setting the policy with respect to the plan and proposed

24  settlement.

25           Now, we know Mr. Zell's defiant views about the

1   transaction.  Mr. Bradford reminds us of those every

2   opportunity that he gets.  Now, Your Honor, could you

3   imagine Mr. Zell being the one carrying the torch for the

4   noteholders in the room with the lender saying you need to

5   pay more?  I don't think so, Your Honor.  And we know that

6   Mr. Zell was involved.

7           If you look at the next slide, this is after the

8   April plan fell apart.  And this is from a senior member of

9   Oaktree -- two senior members of Oaktree talking about where

10  things stand and they're talking about the examiner report.

11  And Mr. Mark says, I think it's good for us and most likely

12  good for the bonds.  So, he's commenting that the examiner

13  report is good for the bonds.  And then he goes on to say, I

14  have talked with Sam Zell almost five times in the last week

15  trying to maneuver the company to do what's best for us --

16  of course, as you said, lenders trying to pay as little as

17  they need to, Your Honor -- he keeps telling me all the

18  right things, but hasn't forced the company to file a plan I

19  like as yet, I think he will.  So, we don't think Mr. Zell

20  was an appropriate advocate for the notes, Your Honor.

21          It was really Mr. Liebentritt, however, who the

22  evidence shows was the most involved in negotiating the plan

23  from the debtors' side.  And while Mr. Liebentritt was not

24  an architect of the transaction in the same way that Mr.

25  Zell was, he was certainly no more in the right position to

1  be a vigorous advocate for us.  And you saw the emails

2  during the course of the trial and you heard evidence about

3  his close ties to Mr. Zell and the way he ran the settlement

4  talks.  I'm not going to take the time to go through it.

5  But this slide summarizes some of the reasons that we lack

6  confidence in Mr. Liebentritt's ability to push hard for a

7  settlement.  And he sat there the whole trial, Your Honor,

8  and if there was a defense of the process that the debtors

9  run, then I think that you would have heard it during the

10 course of the trial, and you didn't.

11         So, when we look at the background law, Your

12 Honor, and in particular, we have cited to you the Second

13 Cybergenics Decision and a case out of Georgia, In Re:

14 Commercial and Military Systems, it's just not reasonable to

15 assume that people who participated in the transaction were

16 then going to turn around and fight hard, fight equally as

17 hard as the lenders to produce a fair settlement.

18         Now, you have to layer on top of that that the

19 principles were not the right people to be negotiating that.

20 They delegated the legal representation to Sidley.  Now,

21 they are fantastic lawyers, Your Honor.  I have the highest

22 respect for them.  And this trial showed how good the Sidley

23 Austin lawyers are.  But they were not the right firm for

24 the assignment to represent and stand up for the unsecured

25 creditor/noteholder side in a negotiations, Your Honor.  As

1  you heard discussed during the trial --

2         THE COURT:  Well, you know, we could get into

3  that debate about, you know, what's the appropriate role of

4  counsel to debtor and possession.  But, you know, they're

5  still advocates as far as I'm concerned.  And I know the

6  cases, you know, where Judges have written about how this

7  role should go differ.  But they're still advocates.

8         MR. ZENSKY:  Sure.  Advocates for who is the

9  question, Your Honor.  The debtor and --

10         THE COURT:  They have a client.

11         MR. ZENSKY:  Right.  Okay.  So, their -- you're

12  right.  If their client instructs them to do something, they

13  have got to do what their client instructs them to do.  But

14  I think when a debtor involves a law firm that had

15  entanglement with the transaction, as Sidley did.  They did

16  the financing.  That's at issue here, Your Honor.  Their

17  senior partner, the chairman of the firm, is on the SEC

18  filings for this deal.  They did the senior loan agreement

19  for Tribune.  They are not likely to be recommending to the

20  debtor that these are great claims, you need to stand up and

21  negotiate harder for a greater payout from the step one and

22  step two lenders.

23         And if we add to that fact, Your Honor, the next

24  slide, that -- if you refer to the next slide, in the

25  Garamella litigation, which you've heard something about,

1   Sidley, of course, represented the company.  Nothing wrong

2   with that.  They represented the directors and officers of

3   the company who had been named in the litigation.  Nothing

4   wrong with that.  The problem is, when it comes then to

5   negotiating over what a fair settlement is when the debtors

6   are saying we're going to take control of this process and

7   some of the people that they represented are people whose

8   conduct is at issue in the underlying claims, Your Honor.

9   And a law firm is just not in a position to, I think, wear

10  both of those hats.  And I think it's noteworthy that the

11  company did consider retaining conflicts counsel at one

12  point, and did not, and chose to utilize Sidley.

13          So, from the debtors' side, Your Honor, we don't

14  think that the process was appropriate and produced a result

15  that the Court could have confidence in.  The Court may

16  remember that the company formed a special committee at one

17  point.  I think the Court probably can see from the evidence

18  that the special committee played a virtually non-existent

19  role in approving the plan and settlement here and had

20  conflicts of its own.  Mr. Shapiro paid a visit to Oaktree

21  to solicit investment for his private company just weeks

22  before he was made the chairman of the special committee.

23  You saw Ms. Wilderotter's correspondence with Mr. Lee of JP

24  Morgan.  JP Morgan has underwritten or helped underwrite the

25  largest transaction her business had ever done.  And she

1  signed off on her emails, your friend always looking out for

2  JPM.  So, special committee was not the holy water here to

3  cleanse the process, Your Honor.

4          That turns to -- brings us to the committee.  And

5  unfortunately we don't think the creditors' committee either

6  filled the role of being an equal and opposing force to the

7  lenders seeking to pay as little as they had to, Your Honor.

8  And I think the facts show at this point, if you look at

9  slide 75, we know that from Mr. Carlston's testimony, the

10 committee never performed a solvency analysis, whether the

11 company was or was not insolvent at step one and step two.

12 They conducted only seven 2004 depositions before proceeding

13 into settlement.  And that was something the examiner

14 commented on as quite surprising to him.  And perhaps, you

15 know, most dramatic, Mr. Salganik testified that, as far as

16 he knows, the committee never demanded more than 450 million

17 dollars to settle the entirety of all the claims against the

18 lenders, Your Honor.  And that's against, as I showed you

19 earlier, a potential damage number of close to 3.3 billion

20 dollars.  And this was the most they ever asked for in a

21 negotiations.

22         Mr. Kurtz said that -- testified, not said --

23 testified that he had never heard the committee demand more

24 than 420 million dollars.  And then Ms. Kulnis testified.

25 Remember Ms. Kulnis was the lead JP Morgan representative on

1  the committee and she was the lead negotiator for JP Morgan

2  in trying to reach a plan and settlement.  She said there

3  was never a time where the merits or strength of the claim

4  were argued to her.  Now, Your Honor, in any settlement

5  negotiation I've ever been involved with and, I dare say,

6  most of us in the room, there comes a point where at least

7  someone argues to you the claims are much stronger than you

8  think and here's what we're going to prove and so on.  And

9  none of that happened here, Your Honor.

10          THE COURT:  Well, I don't know.  I've always

11  wondered how much those speeches really matter, you know,

12  because each party is advised by their own professionals and

13  they have received their own advice on what the strengths

14  and weaknesses of their claims and their defenses are.  And

15  I have yet to see -- maybe I just wasn't there.  But I have

16  yet to see a situation in which someone heard one of those

17  speeches and said, oh my gosh, you're right, how much do you

18  want.  I mean, it just doesn't happen that way.  And more

19  often than not, after the parties have advised themselves of

20  what the other side is claiming and what they think their

21  own exposure is, they then say, if you really want to settle

22  something, okay, how do we get it done, and then you're

23  talking about numbers.  You're not talking about right or

24  wrong, good or bad.  You're talking about how do we get it

25  done.

1              MR. ZENSKY:  Okay.

2              THE COURT:  That's just what my experience tells

3    me.

4              MR. ZENSKY:  I hear Your Honor, but my experience

5    is to the contrary.  There is a time in every negotiation

6    where a party argues to the other party about how strong the

7    case is, and you're overlooking this, you're overlooking

8    that --

9              THE COURT:  Well, I didn't say I didn't hear

10   that.  I just said I never knew it really to make a

11   difference.

12             MR. ZENSKY:  Well, it may or may not make a

13   difference.  I believe it does.  But it's indicative of

14   arm's-length bargaining where at least you go through the

15   motion of arguing to the other side you are underestimating

16   the risk of the litigation, Ms. Kulnis.

17             THE COURT:  It could be.

18             MR. ZENSKY:  All right.  The last point about the

19   committee, Your Honor, you know that from the outset of the

20   case that the Chadbourne Firm had a conflict with respect to

21   suing the LBO lenders and Zuckerman was brought in as

22   special counsel.  But Chadbourne remained the point person

23   from the committee.  And Mr. Liang testified that Mr. Seife

24   was always the point person for negotiation of the -- or

25   discussion of the proposed settlement.

1          THE COURT:  Mr. Zensky, let me just say this

2    about process.  This is an argument that you have been

3    making all along.  And I guess if you and others or I were

4    to sit down and just kind of frame out the ideal way to

5    approach having resolved this, it might be that it would

6    look nothing like what happened here.  Now, just for

7    purposes of what I'm about to say, let's assume that.  But

8    given what has happened here, your clients have made their

9    views well and ably known to all of the others here,

10   including the ones whose arms are too short for you.  Okay.

11   So, at the end of the day, while the process has been

12   rigorous, everybody knows what you think and why.  And yet,

13   they're still pressing this settlement on the DCL side.  So,

14   even if I assume the evidence showed, and I'm not sure that

15   it does, but let's assume that it showed that you weren't

16   given a seat at the table, they have seen the show.  Okay.

17   Everybody knows why you think the deal that's being proposed

18   here by the DCL plan proponents is no good.  And as I think

19   I told you early on, I'm more impressed by -- well, I'm more

20   focused on the dynamic of is it a good deal or isn't it a

21   good deal --

22          MR. ZENSKY:  Sure.

23          THE COURT:  -- not as much on the process.

24          MR. ZENSKY:  Okay.  Understood, Your Honor.  A

25   couple of comments.  I think there is a world of difference

1  between everyone understanding the positions and having a

2  seat at the table and being in the room to try to push the

3  process to a settlement that everyone can live with.  You

4  can't pick your adversary, Your Honor.  And I don't think

5  that it's an appropriate plan process to simply kick out of

6  the room or never invite into the room the party that you

7  know will be the most vigorous advocate for the other side

8  of the case, not when they're the second largest creditor

9  and not when they're the largest creditor of the estate,

10  Your Honor, and it was inappropriate for the debtors.  As

11  Mr. Roper testified and it's not contradicted in the least,

12  to say after the fact we're going to see if we can get the

13  settlement passed and we'll only negotiate with you if the

14  Court doesn't approve it.  Okay.  That's just not the way a

15  fair and appropriate process should be run.  And the sole

16  point of this, Your Honor, is to suggest that whatever

17  comfort the Court could take away from a fair settlement to

18  help it as a reference point with respect to a settlement

19  when assessing whether the claims are good or not is lacking

20  in this case.  I don't know if that responds to Your Honor's

21  question.

22          THE COURT:  It does.  And it, you know,

23  illustrates, I think, the difference in our views about

24  that.

25          MR. ZENSKY:  Okay.  Understood, Your Honor.  All

1  right.  Well, I will move on.  I'm going to skip ahead to

2  slide 83, Your Honor.  And you heard some comments this

3  morning about what you should take away from the vote of the

4  various creditors of the company.  And this, I think, is

5  relevant to Martin factor four, at a minimum, whether the

6  proposed settlement is in the paramount interest of

7  creditors.  And I think the decisions have provided that we

8  look at whether the settlement is fair from the perspective

9  of the non-settlers, the parties objecting to the

10  settlement.  I believe that was the statement in both

11  Spansion and in Nutraquest.

12          And let's talk for a moment about how the parties

13  approached the settlement.  Certainly we know, of course,

14  the phones voted resoundingly against the settlement.  They

15  get nothing.  And that's not surprising.  What I want to

16  focus on is how the senior noteholders voted.  You heard

17  commentary about how they voted by number.  Well, let's talk

18  how they voted by amount.  And more than 1 billion out of

19  the 1.1 billion dollars that voted with respect to -- of the

20  senior notes voted in favor of the noteholder plan.  So,

21  it's not just Aurelius, Your Honor, that voted in favor of

22  the noteholder plan and against the DCL plan, it's the

23  overwhelming majority by amount of the other noteholders out

24  there.  And some of them have filed objections.  There is no

25  noteholder in their capacity as such that has filed any

1   objection to our plan and supported the DCL plan.

2          And I think it's critical to appreciate that the

3   opposition is coming from parties not out of the money

4   creditors, not equity, but from a party who is being asked

5   to accept a 33.6 percent distribution on their claim.  So,

6   it -- and that -- those parties have voted and said that's

7   an inadequate settlement of this litigation, we would rather

8   take our chances and have the claims heard or settled

9   outside of bankruptcy.  And we think that that makes this

10  case very much like two cases we cited in our papers, Cames

11  [ph] v. Joiner, and In Re: Revell, in which a similar, if

12  not identical, dynamic was at play.  The creditors opposing

13  the settlement were being offered under the proposed

14  settlement substantial distributions, 40 percent in one

15  case, 69 percent in the other case.  They presented evidence

16  that the claims did have a substantial chance of prevailing

17  or certainly there was evidence about the potential success

18  of the claims, and both Judges said that they would weigh

19  very heavily the opposition of that particular constituency

20  to the settlement, the parties most affected by it, and that

21  they were willing to, in effect, push the money back to the

22  middle of the table and say no thanks.  And therefore, I

23  think the votes of the senior notes by amount are the most

24  important aspect of this.

25          Now, I believe Mr. Sottile said this morning that

1   he wanted you to think about the votes of the other parent

2   creditor claim class.  In the DCL brief, the post-trial

3   brief, they say that this class gets virtually the same

4   treatment as the senior notes.  I think Mr. Sottile used the

5   phrase essentially the same treatment, Your Honor.

6   Whichever word you use, it's just not accurate.  And if we

7   look at the next slide, I think it's important.

8            They have argued to you that because this class

9   voted in favor of the settlement, you should take that as an

10  indication that it's viewed as reasonable.  And we thought

11  we would think about that for a moment.  Now, the other

12  parent claims class is comprised of three groups, the swap,

13  the retiree claimants, and then a small amount of parent

14  company general unsecured.  Well, Your Honor, the swap is

15  getting 100 percent payout between the parent and the

16  subsidiary distributions under the DCL plan.  The swap is

17  owned by Oaktree, a proponent of the plan and proponent of

18  the settlement.  And Oaktree gets a full release in

19  connection with its step one and step two holding.  So, only

20  in an alternative universe could you say that the swap

21  claims vote in favor of this plan supports the notion that

22  other parent creditors think that a 33 percent distribution

23  to the senior notes is a fair settlement.

24           Let me turn then to the retirees.  It is true

25  that the retirees under the DCL plan also get on day one a

1   33.6 percent distribution plus trust interest.  But that's

2   where the similarity with that group ends.  They entered a

3   -- they, the retirees, Your Honor, entered a settlement back

4   in April with the company in which a couple of important

5   things happened.  The first is there was an adjustment of

6   the -- what would be the allowed amount of the aggregate

7   claim of the retirees.  The debtors originally scheduled

8   their claim against the company at 82, 83 million.  I

9   believe it was 82.  And the debtors settled with the

10  retirees for a claim of 103 million.  So right away, they

11  got a 25 percent bump above what the debtors initially

12  claimed was the appropriate amount.

13          Second, the retirees get released from any estate

14  claim.  And this is principally if any of the retirees were

15  shareholders and sold their stock into the LBO or redeemed

16  it, rather, then they get released from the claims that are

17  pending against the shareholders in the committee complaint.

18          And third, and perhaps most important, before the

19  examiner report came out and before the retirees had any

20  ability to really size up whether this was a good or bad

21  settlement, they contractually bound themselves to support a

22  settlement that paid anything at or above 33 percent

23  distribution.  So, they were bound to vote in favor of the

24  plan.  Their representative on the committee was bound to

25  support the settlement because it was consistent with the

1    deal they made back in April.

2            So, when you put all those things together, they

3    don't bear any similarity to the notes, Your Honor.  And

4    their approval of the settlement should not stand in any --

5    their class's vote in favor of the DCL plan should not stand

6    in any way for any sort of countervailing judgment that

7    other similarly-situated, unsecured creditors prefer the DCL

8    plan rather than the noteholder plan.

9            Let me turn then to another topic, Your Honor.

10   And that's the aspect of the case where we heard from

11   Professor Black and Dr. Beron.  And I'll just refer to them

12   as Black and Beron so I don't stumble over my words too much

13   given the alliteration, the "B" and the "B".

14           I want to start with Professor Black.  They

15   called him to the stand.  He was their two-hour witness,

16   you'll recall.  And they called him to try to make their

17   burden of convincing you that this was a fair settlement,

18   that the numbers I showed you before, I think, that was on

19   the order of 15 to 18 percent of the total claim if the

20   litigation was allowed to proceed and was successful.  He

21   was the witness they were going to use to prove that.  We

22   don't think he helped the DCL plan proponents prove that at

23   all.

24      First, Your Honor, if we look at slide 85, and the

25   point here is, of course, we don't think he had the right

1   credentials to do what he attempted to do.  And what he did

2   was very different from what Dr. Beron did.  And I'll get to

3   that in a few moments.  He testified and conceded he's not a

4   bankruptcy expert.  The Court declined to qualify him as a

5   solvency expert or decision tree expert.  And he testified

6   he's not a fraudulent transfer expert.  So, we believe he's

7   lacking in base credentials to do what he claims he

8   attempted to do here.  On top of that, Your Honor will

9   recall that he received somewhere on the order of 15 to 20

10   legal memo from Sidley that he said was necessary to help

11   him get up to speed on the law that governed the various

12   issues here.  On top of that, he did his own legal research.

13   He testified he looked at 546(e), he looked at cases on

14   reasonably equivalent value.  He had to learn about

15   unreasonably small capital under the Code and how that has

16   been applied.  And he had never rendered an expert opinion

17   before this case on whether a settlement is reasonable,

18   whether something was or was not a fraudulent transfer.

19         And when you put all that together, Your Honor, I

20   don't think it's what Courts expect from a testifying

21   expert.  I think testifying experts are supposed to come to

22   the engagement essentially preloaded with the relevant

23   expertise, and they are handed a set of facts, even

24   potentially complex facts, and they apply their preexisting

25   expertise, they apply that to the facts before them and they

1   can provide expert opinion.  He didn't have the right

2   expertise.  And he's a very smart guy.  But being a very

3   smart guy, even being a very smart law professor, as

4   Professor Black is, is not the credentials that Rule 702

5   talks about with respect to a credible expert opinion.

6           Now, Courts also expect expert opinions to do

7   adequate due diligence before they finalize their opinions.

8   And leaving aside the lack of expertise, Your Honor, we

9   don't think that Professor Black even got this part of his

10  engagement right, even though he had ten to eleven months to

11  prepare his report from when he was first engaged by the

12  debtors back in April of 2010.

13          For example, he didn't review a single one of the

14  2004 deposition transcripts that the committee took.  And

15  you heard my comment ago, there weren't that many of them.

16  There were seven of them.  He didn't review the first

17  amended complaint filed by the committee against the lenders

18  before finalizing his opinion.  And the opinions he

19  purported to give this Court were impacted by those things.

20  There were depositions that would go to whether the lenders

21  acted in good faith.  And he had a view of the world as to

22  whether the lenders would qualify for a 548(c) clawback.  He

23  couldn't reach that opinion without reading those

24  depositions, Your Honor.  He had opinions about where and

25  remedies and that.  But he didn't read the committee

1    complaint before reaching those opinions, Your Honor.  I

2    have not yet read any response from the DCL plan proponents

3    to address the shortcomings in his diligence or his

4    expertise.  And we think that, in itself, precludes any

5    reliance on the opinions he gave.

6          Let me turn though to some of the errors in what

7    he did, even if they could get past those problems.  I think

8    you heard Mr. Bendernagel describe this morning the nature

9    of Professor Black's exercise.  He first carved the panoply

10   of remedies, and claims, recoveries against the lenders into

11   just six scenarios.  And we saw -- strike that.  And what he

12   did within those six outcomes was assign the probability

13   that each of those would be the relevant outcome in

14   litigation within six different cases, as he called it.  And

15   I want the Court to focus on the word "assigned", and I'm

16   going to come back to it.  That's the DCL plan proponent's

17   word for what he did.  He assigned probabilities.  And

18   that's on page 22 of their post-trial brief.

19          So, what are some of the errors that would

20   preclude any reliance on Professor Black's conclusions?

21   Well, one, it was an error to assume that the world could be

22   summarized or consolidated into six avoidance -- six

23   scenarios only.  He squished together all the different

24   claims and outcomes that would get to avoidance, equitable

25   subordination, equitable disallowance, and all the different

1  fraudulent transfer scenarios, intentional and constructive,

2  into a single box in his mind.  And he omitted many outcomes

3  that were in play in the case.  They're in the committee

4  complaint.  He omitted any modeling of an outcome where

5  where would apply.  He omitted any outcome where the step

6  one lenders did not get the benefit of 548(c).  This is in

7  his base modeling.

8          Now, Dr. Beron charted 48 potential outcomes of

9  the litigation, Your Honor.  And Professor Black admitted

10 that if he left out plausible scenarios, that all of his

11 numbers would be wrong.  And that's at page 206 of the trial

12 transcript.  Naturally if he left out scenarios, his

13 estimate of the reasonable settlement value would be wrong.

14 And if you look at the next slide, we think that he did.  We

15 think that Professor Black left out a world of potential

16 scenarios, 36 percent of them to be exact.  This is a chart

17 that was in Dr. Beron's rebuttal report.  He testified about

18 it during his direct.  It was not challenged in any way on

19 cross and not responded to in rebuttal.  And what it shows

20 is that, using the examiner's probabilities of the different

21 litigations, different litigation outcomes, that Professor

22 Black's six scenarios only comprise 64 percent of the

23 universe and that he has left out 36 percent.  By his own

24 admission, if he left out plausible scenarios, his numbers

25 are wrong.

1          Let me move to a second error.  And that is with

2   respect to his methodology and his canvassing of the issues.

3   You know that we objected to his report and we feel that he

4   just -- either he posited himself as a replacement examiner,

5   or as a replacement judge, or both.  And if you look at the

6   next slide, this comes from the DCL post-trial brief, Your

7   Honor, page 23, this lists some of the issues that they say

8   he had to assess as to what the outcome would be.  And if

9   you go down the list, you'll see that they're all legal

10  questions, which are the province of the Court, or solvency

11  questions, which he lacked expertise to weigh in on, or go

12  to an ultimate factual question, the fourth bullet as to

13  whether there was a good intentional fraud claim here or

14  not.

15          So, they asked him to, in a sense, look at the

16  evidence and come up with his own view of the world on all

17  of these issues.  And it's a little surprising because I

18  thought I heard them say today they're happy with the

19  examiner report and that they think they can justify the

20  settlement based on the examiner report.  Well, they asked

21  Professor Black to do the same thing.  And boy, he didn't

22  disappoint.  If you look at the next page, 88, Your Honor,

23  these are -- this is a chart that also was not challenged

24  during the trial.  And this shows Professor Black's negative

25  departures from the examiner's conclusions with regard to

1  the likely success of the claims on the issues that are

2  specified versus where he made a positive deviation, meaning

3  one that would show the claims having a higher chance.  And

4  you can see that virtually across the board, his canvassing

5  of the issues was that the claims had a far less likely

6  chance of success.  And these are all on issues, again, that

7  we don't think he has the proper expertise to speak to.

8          Well, let me come to, I think, the most damning

9  flaw in what he did and come back to the description that

10  what he did was assign probabilities.  I think the Court

11  understands now through the trial testimony that he didn't

12  do any sort of calculation of probabilities.  He did

13  everything in his head.  And he weighed things.  He balanced

14  things.  He nudged probabilities.  He judged.  And again,

15  it's an exercise he did in his head.  And if we look at

16  slide 89, this was the initial set of work papers that were

17  provided to us as the backup for his expert report prior to

18  his deposition.  And he had ten months to prepare this.  He

19  had ten months to assign these probabilities, Your Honor, to

20  go through that process in his head of weighing, and

21  nudging, and judging.  And at his deposition, which was

22  just, I think, five days before trial, before he testified,

23  I asked him a pretty simple question.  It wasn't a trick

24  question.  Within the examiner case, I asked him why he

25  assigned a higher probability to Scenario E rather than D.

1   And you saw the tape played during trial in which he kind of

2   stared at the paper for awhile and dissembled a bit about

3   the answer.  I asked a follow-up question, which you also

4   saw at trial.  And I think it's worthwhile to see his answer

5   once more.

6   (Playback:)

7   "Q    Okay.  Now if we're in the situation of income with

8   step integration, why would you be focused so much on the

9   impact of balance sheet insolvency as opposed to capital

10  adequacy or ability to pay debts?

11  A     Because we're in informal step integration and -- so

12  let's see, informal step integration is going to be

13  relatively hard to get the balance sheet insolvency, all

14  right, at step one.  So I think that's (pause).  Step one

15  insolvency D and E and -- so I know why I got to reasonably

16  unlikely, and so -- so I'm sorry for -- for muttering what's

17  now -- what I'm now not understanding is why I put so much

18  weight on D and E combined.  All right.  Why wasn't there

19  more weight on B and C."

20  (End of playback.)

21            MR. ZENSKY:  All right.  So Your Honor, you heard

22  it during trial, and saw it again.  Their lead expert, their

23  two-hour expert saying he's not understanding his own expert

24  opinion, his assignment of probabilities, Your Honor.  And

25  if you turn to the next two slides, 91 and 92, these of

1  course, we got a revised report on the eve of Professor

2  Black's testimony, and we showed him these demonstratives

3  during his testimony and the red boxes reflect all of the

4  assigned probabilities that changed in the five days between

5  his deposition and trial even though he had ten months

6  before his expert report to get it right.  And you heard Mr.

7  Bendernagel's defense that it only made a $10 million

8  difference.  Your Honor, the issue is not whether it moved

9  the needle.  It's the other utter unreliability of his

10  approach to this, Your Honor, that it was all entirely

11  subjective, and if someone five days -- after having ten

12  months can make 37 changes in probabilities, I don't think

13  it matters how much it moved the end result, Your Honor.

14  That -- this is no more reliable than what he did the first

15  time.  So we don't think the Court can or should place any

16  weight on his opinion that this is a fair and appropriate

17  settlement.  I think I'm about out of time.  I would just

18  say that Dr. Beron took a totally different approach.  He

19  did not inject any subjectivity.  He took the bottom-line

20  conclusions of the examiner.  Everything that he did was

21  there and available to test his calculations to see if they

22  were right or wrong, and the DCL critique is essentially,

23  you didn't do what Black did.  Well I think we showed what

24  was wrong with what Professor Black did, what Dr. Beron did

25  is what he's done for paying clients for 20 years, which is

1   take a complex set of facts and tell them what the expected

2   value of the litigation would be if you were to go forward.

3   So unless the Court has any questions, I'm going to turn it

4   over to Mr. Friedman at this point.

5                THE COURT:  Thank you.

6                UNKNOWN:  Your Honor, how much time has

7   transpired?  Do you have a read on the time?

8                THE COURT:  Bear with me -- 3:13.  Well, someone

9   can do the math for me, but I'll tell you what my time

10  calculations are.  We started at 1:01.  Noteholder started

11  at 1:01.  We took a nine-minute recess and they concluded at

12  3:13.

13               UNKNOWN:  Little more than two hours or two hours

14  is where we are?

15               THE COURT:  About that.

16               MR. FRIEDMAN:  Good afternoon, Your Honor.  I've

17  been allotted five minutes to speak about FCC --

18  (Laughter)

19               MR. FRIEDMAN:  -- FCC issues.

20               THE COURT:  Well, what did you do wrong, Mr.

21  Friedman?

22               MR. FRIEDMAN:  I will be --

23               UNKNOWN:  He'll take the full five minutes, Your

24  Honor.

25               MR. FRIEDMAN:  I will be very brief.  I'm not

1  going to dwell on the slides that we have.  Your Honor heard

2  Debtors Counsel today say it is very important for Tribune

3  to exit bankruptcy as soon as possible, however one of the

4  problems with the DCL Plan is that it creates issues not

5  present in the Noteholder Plan, that will delay and impede

6  FCC approval and Tribune's emergence from bankruptcy.  The

7  Noteholders have made sure that under their plan,

8  reorganized Tribune will have no attributable owners with

9  conflicting media ownership.  The DCL FCC expert agrees that

10 the Noteholder Plan will not cause a delay in FCC approval.

11        In contrast, the DCL Plan will inevitably cause

12 delay because at its core the DCL Plan transfers control of

13 Tribune to creditors with conflicting media interests,

14 including JP Morgan and Angelo Gordon.  Under the DCL Plan,

15 as summarized on slide 1, JP Morgan and Angelo Gordon will

16 each have more than five percent of the voting equity in

17 reorganized Tribune and will each have director designation

18 rights.  They will not have these rights under the

19 Noteholder Plan.

20        Because the plans are different, the FCC issues

21 are different, as summarized on slide 2.  If the DCL Plan is

22 confirmed, the FCC will consider JP Morgan's and Angelo

23 Gordon's other media interests in reviewing Tribune's

24 application.  This is because JP Morgan and Angelo Gordon

25 will be attributable owners of reorganized Tribune.  As

1   explained by the DCL's own FCC expert, the FCC will review

2   media interests of "reorganized Tribune and its attributable

3   owners."  In contrast, if the Noteholder Plan is confirmed,

4   the FCC will not have any reason to consider other media

5   interests of JP Morgan and Angelo Gordon.  In fact, under

6   the Noteholder Plan there will not be any attributable

7   owners with conflicting media interests.  There's no dispute

8   that JP Morgan and Angelo Gordon have substantial interests

9   in major media companies in Tribune markets.  There is also

10  no dispute that if the interests of JP Morgan and Angelo

11  Gordon, as we have summarized in slides 3 and 4 are

12  attributable, the FCC rules are violated as shown on these

13  charts.  That would mean 15 different FCC rule violations in

14  ten different Tribune markets.  We have explained at trial

15  and in our papers the reasons these interests create

16  violations of FCC rules.  We have also explained and

17  summarized on slide 5, that even if some or all of these

18  interests do not create violations, the FCC will consider

19  them in its review of Tribune's waiver request.  There is no

20  dispute that in the waiver context the FCC can consider any

21  metric, but the DCL expert testified he is not aware of

22  waiver cases in which the FCC considered non-attributable

23  interests.  In our papers however, we cite cases in which

24  the FCC did consider non-attributable interests in

25  evaluating waiver requests.  Recognizing at least the

1  potential for significant FCC issues created by their plan,

2  the DCL proponents argue that the DCL Plan contains

3  procedures to address any FCC issues that arise.  In fact,

4  the DCL Plan procedures, which we have excerpted on slide 6,

5  will cause regulatory delay rather than avoid it.  Instead

6  of empowering Tribune to initiate prompt remedial action,

7  the DCL Plan procedures leave Tribune at the mercy of JP

8  Morgan and Angelo Gordon, who are obviously reluctant to

9  relinquish their influence and control at Tribune.

10          These procedures are not even triggered until two

11  things happen.  First, comments from the FCC and second,

12  both Tribune and the Creditor Proponents determine that the

13  required FCC approval will not be obtained due to Creditor

14  Proponent director designation rights.  Even then, Tribune

15  does not have the power to take corrective action.  Rather,

16  the DCL Plan Proponents -- the DCL Plan procedures provide

17  that the Creditor Proponents will have sole discretion to

18  determine how they want to respond to FCC comments.  The DCL

19  Plan goes on to say that such action must be adequate to

20  obtain FCC approval, but does not say who determines if it

21  is adequate or when.  Moreover, if director designation

22  rights are ultimately relinquished, the DCL Plan provides

23  that the relinquishing Creditor obtains a nomination right

24  that appears to be effectively a designation right and a

25  subsequent right to regain designation rights, all of which

1   is a formula for regulatory delay.  The Noteholders' FCC

2   expert has explained in his report and testified in this

3   courtroom that in his opinion, based on decades of

4   experience with the FCC and the judgment that comes from

5   that experience, the issues created by the JP Morgan, Angelo

6   Gordon media interests under the DCL Plan will add six to

7   eight months to the FCC review process of the DCL Plan.  The

8   Noteholder Plan avoids those issues and that delay.  The FCC

9   issues presented at trial and discussed today are one of the

10  reasons the DCL Plan is not feasible and should not be

11  confirmed and the Noteholder Plan should be confirmed.

12  Thank you, Your Honor.

13          THE COURT:  Thank you.

14          MR. GOLDEN:  Good morning -- good afternoon, Your

15  Honor, it's a long day.  Daniel Golden, Akin, Gump, Strauss,

16  Hauer, and Feld, Counselor for Aurelius Capital Management

17  and the other Noteholder Plan Proponents.  Your Honor, I

18  rise to spend a few minutes to discuss the virtues of the

19  Noteholder Plan and why it should be confirmed.

20          At its essence, the Noteholder Plan accomplishes

21  the fundamental objectives of reorganization and in many

22  ways is identical, except in one key respect, to the DCL

23  Plan.  And turning to slide 98, Your Honor, you'll see in

24  the box the Noteholder Plan incorporates exactly the same

25  debt, capital, and corporate structure as the DCL Plan.  The

1  Noteholder Plan contemplates the same management team and

2  ongoing business operations and both the Noteholder Plan and

3  the DCL Plan contemplate the establishment of litigation

4  trusts and creditor trusts to prosecute the fraudulent

5  conveyance actions post-confirmation.

6           This last point, there is not an insignificant

7  aside I'd like to point out to the Court.  The DCL Plan

8  expressly contemplates that this Court, Your Honor, will

9  litigate the remaining LBO causes of action with all of the

10 attendant costs and uses of judicial resources, but they

11 will leave out from that litigation the single most valuable

12 set of causes of action, those against the LBO Lenders.  We

13 don't think that that makes any sense in terms of use of

14 resources and use of the Court's time.

15          Despite the fact that the Debtors Plan allows the

16 Debtor -- I'm sorry -- the Noteholder Plan allows the

17 Debtors to emerge quickly and is substantially similar to

18 the DCL Plan in terms of the impact of the reorganized

19 Debtor, the DCL's attempt to poison the well regarding the

20 virtues of the Noteholder Plan by complaining that the

21 ultimate creditor entitlement and allocation of post-

22 reorganized equity is not finally determined as of the

23 effective date under the Noteholder Plan.  While in some

24 respects, Your Honor, this is valid criticism, it is our

25 view and is a view we think that the Court can readily

1   acknowledge, that the Debtors and the Creditors Committee

2   have only themselves to blame for that situation when they

3   chose expediency over resolve and chose to settle the most

4   important LBO causes of action out from under the two and a

5   half billion dollars worth of pre-LBO Noteholders.  By

6   necessity, given the reality that the largest of the Senior

7   Lenders and the Debtors and the Creditors Committee

8   effectively froze out the pre-LBO Noteholders from the

9   settlement and plan process leading to the DCL Plan, the

10   Noteholders had no alternative, but to promulgate an

11   alternative plan that had three fundamental goals and those

12   goals are seen on page -- on slide 99, Your Honor.

13           First, the Noteholder Plan allows the Debtors to

14   emerge from Chapter 11 on an expedited basis.  Second, the

15   Noteholder retains the post -- for a post-effective date

16   adjudication the estate's most valuable causes of action.

17   And third and this is the key difference here, the

18   Noteholder Plan reserves in a distribution trust only that

19   amount of the reorganized Debtors distributable enterprise

20   value, sometimes we refer to that as DEV, in the form of

21   cash, new debt, and equity necessary to pay the pre-LBO

22   Creditors in full and to create a reserve for the bridge

23   lenders and will allow the balance of the Debtors DEV to be

24   distributed upon the effective date.

25           Your Honor, it's worth noting that under this

1   reserve structure and utilizing the Debtors' enterprise

2   valuation of 6.75 billion, which you've heard testimony that

3   the Noteholders believe is substantially undervalued, this

4   reserve structure will allow between 45 to 51 percent of the

5   Debtors total DEV to be distributed to creditors on the

6   effective date of the Noteholder Plan and would also allow

7   between 70 to 80 percent of the post-reorganized equity to

8   likewise be distributed upon the effective date of the

9   Noteholder Plan and at higher valuations even more of the

10  Debtors DEV and post-reorganized equity would be allowed to

11  be distributed to creditors upon the effective date of the

12  alternative Noteholder Plan.

13          Your Honor, you've heard the testimony regarding

14  the pure purity plan.  We think it's actually kind of ironic

15  that the DCL's are now contesting that the Noteholder Plan

16  would create a true and viable restructuring opportunity for

17  the Debtors' businesses.  As Your Honor may recall from the

18  trial testimony, the concept of a pure purity plan was on

19  the Debtors' radar screen long before the filing of the

20  first DCL Plan and is set forth in slide number 100, Your

21  Honor, up on the board.  You can see what Mr. Liebentritt,

22  the Debtors chief restructuring officer, had to say about a

23  pure purity plan.  This is a pure purity plan -- there is a

24  pure purity plan possibility as a fallback to plan B.  We

25  just started working out the details and it appears as

though we might be able to get most, if not all of the

company out of bankruptcy without resolving any of the LBO

claims, but the banks are not yet too interested in pure

purity.  And similarly the testimony of Mr. Kurtz where he

says the pure purity plan is a pure holdback plan.  A

sufficient amount of value is placed in a litigation trust

or some form of trust to satisfy the obligations of pre-LBO

creditors and the company would emerge from bankruptcy with

that value in the litigation trust.

It's also clear from the testimony from the

Debtors representatives that they thought a pure purity plan

was a viable restructuring alternative.  Turning again to

the testimony of Mr. Kurtz in response to a question from

Mr. Bendernagel, he said well, the Whittman Plan then,

referring to that as the pure purity plan, could work if the

Lenders accepted it.  Similarly, the testimony of Ms.

Wilderotter, who is a member of the board of directors and a

member of this special committee and this is actually a

video clip that was played during the trial where she

testified we always looked at a pure -- at a purity plan as

an option and continuing, we always knew it was a potential

course.  And finally, back to the Don Liebentritt email of

September 23, at the bottom where he says if we get signals

that even after a failed mediation Carey may not be inclined

to take the claims in part, we may need to consider

1    seriously a pure purity approach.

2              Your Honor, but don't just take the

3    acknowledgments from the Debtors as to whether this pure

4    purity plan actually works in terms of a restructuring

5    alternative from the Debtors.  Let's see what the credit

6    agreement lenders had to say six months prior to Mr.

7    Liebentritt's memo and this was in a pleading that the

8    credit agreement lenders filed in connection with seeking

9    termination of Debtors exclusivity where they said that the

10   credit agreement lenders are prepared to file an alternative

11   plan that provides for the alleged fraudulent conveyance and

12   related claims to be adjudicated for the benefit of

13   unsecured creditors, continuing on, while enabling the

14   debtors to exit bankruptcy rapidly and to begin the process

15   of healing the wounds that these cases have created.

16             Your Honor, I don't think it can be fairly or

17   appropriately said that there's any real controversy as to

18   whether the Noteholder Plan, which is in fact exactly the

19   pure purity plan that you heard the Debtors' representatives

20   describing, would allow these Tribune Debtors to

21   expeditiously exit from Chapter 11 and in the words of the

22   credit agreement lenders, begin the process of healing the

23   wounds that these cases have caused while at the same time

24   preserving prosecution of all the LBO causes of action, so

25   as to allow creditors to ultimately receive their rightful

1  and legal recoveries.

2           And Your Honor, I had a few concluding remarks,

3  but I want to try and preserve some amount of time for

4  rebuttal, but I do want to deal with one of the comments

5  made by Mr. Conlan this morning.  He indicated that he

6  believed or it was the Debtors' view that the Debtors simply

7  could not cram down the pure purity plan on the credit

8  agreement lenders.  He didn't really expand on that, but I

9  presume what he's talking about is the 1129(a)(10) impaired

10 consenting class issue.  Your Honor, that was argued

11 extensively by both sides in the briefs.  It was the subject

12 of argument at the April 14 hearing.  I just want to put up

13 on the screen one last slide, which is every single case

14 that has actually litigated this issue as to whether in a

15 joint plan context you need -- the 1129(a)(10) requirement

16 is a per debtor or a per plan requirement and every single

17 case that has litigated this issue agrees with the

18 Noteholder's proposition that it's a per plan and not a per

19 debtor requirement.  And so we significantly disagree with

20 the assertion by Mr. Conlan that this -- that the Noteholder

21 Plan cannot be and should not be crammed down on the Senior

22 Lenders.  And Your Honor, with that we will rest to try and

23 preserve some amount of time for rebuttal and so thank you.

24           THE COURT:  Thank you.

25           MR. SOTTILE:  Your Honor, would it be possible

1  for us to take a brief break so that we could organize the

2  rebuttal from the DCL side?

3           THE COURT:  All right.  What's -- let me ask how

4  much time does each side think they have left?

5           MR. SOTTILE:  Your Honor, by our count we have a

6  total of 50 minutes left.  I don't anticipate we would use

7  all of that.

8           MR. ZENSKY:  Your Honor, David Zensky.  I believe

9  we have eight to nine minutes, something in that order.

10          THE COURT:  Okay.  We'll take a ten-minute break.

11 (Recess from 3:32 p.m. to 3:42 p.m.)

12          MR. BENNETT:  If we could give back control of

13 the screen to the Noteholder side I would appreciate it and

14 if I could, could I have slide number 98 put on the screen?

15 Your Honor, Bruce Bennett for the DCL proponent group for

16 these purposes and I think I'm going to have the first word

17 and the last word.

18          I started with chart 98 because it is important

19 to focus on the differences in the Noteholders Plan and

20 regrettably this chart is a little bit incomplete.  I think

21 the first point we should talk about is the fact that the

22 Noteholder Plan we all discovered when we read their

23 pleadings implemented, that's their word I think, the inter-

24 company claims settlement that the Debtors proposed in a

25 rather unique and interesting way.  First of all, it didn't

1  implement it in accordance with its terms.  It basically

2  said that certain inter-company claims would be enforced,

3  that is those are the ones that benefit them, and certain

4  inter-company claims would be disregarded.  Those were the

5  inter-company claims that didn't benefit the Noteholders.

6  And I think a really important point concerning

7  confirmability of their plan versus ours is that while there

8  was extensive evidence presented particularly by Mr.

9  Whittman with respect to the reasonableness of the inter-

10 company claims settlement that the Debtors proposed and that

11 we thought everyone agreed to and no one opposed and that

12 evidence was clearly adequate to support it, no one during

13 the confirmation hearing entered any evidence into the

14 record concerning the inter-company claims settlement as

15 adopted or as they say they adopted it with these rather

16 substantial and absolutely material modifications.

17         So one item for the chart is inter claims

18 settlement adopted "differently" or implemented differently.

19 No proof as to reasonableness of the revisions or the

20 settlement as modified and that I would submit is enough

21 reason to not confirm the Noteholder Plan.

22         The second part of the Noteholder Plan that's

23 very materially different is that it contains a release of

24 subsidiary guarantees from non-Debtor subsidiaries that run

25 in favor of the credit agreement lenders.  Not a small

1    issue.  Not the kind of third party releases ever approved

2    by the cases in the Third Circuit.  We have briefed this.  I

3    don't have the time to go through them.  These are very

4    clear contractual guarantees running to creditors who

5    oppose, do not accept the Noteholder Plan, who are not being

6    paid in full.  In short, they fit into none of the possible

7    exception areas that have been identified by the cases for

8    disrupting non-Debtor guarantees running to commercial

9    creditors.  These are -- this is not litigation claims.

10    This is clear, unequivocal written guarantees and I would

11    point out that to the -- that these have been sitting there

12    for four years now, more than four years, and no one has

13    done anything about them because there are also good reasons

14    why no one is going to do anything about them.  They are

15    binding and enforceable.  Their plan can't upset them.

16           The next point I'd make about the chart is it

17    fails to note that there's one thing that's exactly the same

18    about both plans that the Noteholders seem now to be

19    critical of and that is both plans implement the retiree

20    settlement.  Never been a controversy about any aspect of it

21    before and the retiree -- the settling retirees of course

22    get those benefits whichever plan they support.  So I'm not

23    sure what point was ultimately coming as a result of that,

24    but the reality is that the retirees always could look at

25    the plans as sitting on an even footing with respect to the

1  benefits they expected to get, except for the distribution

2  amount.

3            Lastly for this part, 1129(a)(10), you saw the

4  screen shot of the cases where 1129(a)(10) has been

5  interpreted as being a plan based rather than debtor based

6  statute.  Well, first of all as I said in the connection

7  with the fraudulent transfer provisions of the Bankruptcy

8  Code, the whole code, with very few exceptions and this one

9  isn't, works debtor by debtor and that provision works

10 debtor by debtor, too, by virtue of the fact that the code,

11 the whole thing works debtor by debtor.  But more

12 importantly in this case we talked about the fact that 90

13 percent of the assets, 90 percent of the action in this case

14 is at the subsidiary level.  It is at that 90 percent where

15 there is no impaired accepting classes.  When they say to

16 you we have an impaired accepting class that we want to

17 count for purposes of every plan in this case, it is an

18 impaired accepting class and a debtor that has less than 10

19 percent of the assets, less than 10 percent of the action.

20            I'm not in favor of anything that the Courts have

21 -- that the four Courts have been doing with 1129(a)(10)

22 because I think it makes no sense.  If we really do believe

23 that there has to be an impaired accepting class that should

24 be a debtor by debtor requirement because it's intended to

25 make sure that no plan by no entity and we care about

1  entities here because we have Owens Corning, is supposed to

2  be completely nonconsensual.  That's the congressional

3  policy.  And so particularly in circumstances where we're

4  talking about 80 percent -- excuse me -- 90 percent of the

5  throwaway to the case, not a single impaired accepting

6  class, we can't go find one in what is in asset value a

7  very, very small part of the case.  We start doing that,

8  we're going to have silly little subsidiaries created to get

9  by 1129(a)(10) or multiple filings so there's a little

10  subsidiary to make that requirement met and then the

11  requirement is going to be gone from the code.

12          And finally I don't think Your Honor needs to be

13  reminded about this because Mr. LeMay did such a good job of

14  describing the *Aurelius* position on 1129(a)(10) before Your

15  Honor in *Abitibi*, when they're acting as a client advancing

16  their economic interest, it's a little too soon for them to

17  be changing and frankly it would be --

18          THE COURT:  What's the appropriate waiting

19  period, Mr. Bennett?

20  (Laughter)

21          MR. BENNETT:  I was about to say frankly I don't

22  think there's any waiting period, but I'm pretty sure it had

23  -- if there is a waiting period it hasn't passed yet.  I'm

24  going to surrender the podium for awhile and come back soon.

25          THE COURT:  Thank you.

1              MR. SOTTILE:  Your Honor, James Sottile of

2    Zuckerman Spaeder, Special Counsel to the Committee.  Your

3    Honor, as I think I suggested was the case in opening, what

4    you have seen in the Noteholders' arguments is that when

5    they come to the examiner's conclusions they either ignore

6    them altogether and pretend they don't exist or they tell

7    you the examiner got it wrong, he overlooked stuff, he was

8    incomplete, he erred, so forth and so on.  Your Honor, we

9    submit that the right way for this Court to go about

10   evaluating the settlement is to take what the parties have

11   told you is a fair independent thorough evaluation by the

12   examiner as a whole and when you do, Your Honor, as we

13   believe we've demonstrated throughout the course of these

14   hearings, you're going to conclude the DCL Plan settlement

15   is a reasonable one.

16           Let me touch on a couple of points where Mr.

17   Qureshi dealt with issues that the examiner also dealt with.

18   And let me start with the issue of the February 2007

19   financial projections, which he spent a fair amount of time

20   on.  Now there he did point out what the examiner's

21   conclusion was by looking at one part of the report.  Let me

22   read to you from a different part of the report.  On page

23   219 of Volume II of the examiner's report, here's what the

24   examiner said about those projections.  The examiner does

25   not accept the contention advanced by certain parties,

1   including predecessors and interests to the Noteholder,

2   Centerbridge, that in view of what was known or

3   ascertainable as of the step one findings and closing date,

4   the February 2007 projections were unreasonable,

5   particularly in comparison to contemporary analyst

6   expectations.  So the examiner just disagrees with the

7   Noteholders on this point.  Now maybe that's because the

8   examiner didn't seal the evidence.  I think you may have had

9   some implicit suggestion in the Noteholder's presentation of

10  that fact, but Your Honor, that simply isn't the case.  The

11  examiner had before him every bit of evidence that you saw

12  argued as to why the financial projections were unreliable

13  and unreasonable for anyone to use in evaluating solvency.

14          Let me take just a couple of examples.  If you

15  look at Volume 1 of the examiner's report and I would start

16  on page 211, Your Honor, you will see something that I think

17  will look pretty familiar and let me just point it out to

18  the Court.  You remember being shown I think an email from

19  Mr. Bigelow saying if I read this right, if we're off plan

20  or rather to Mr. Bigelow, if we're off plan by two percent,

21  we have no value in the ESOP for five years and then a

22  response from Mr. Bigelow.  That's quoted on page 211 of the

23  examiner's report when he's describing the evidence relating

24  to the financial projections that was argued to him by

25  Centerbridge and other parties as a reason for not relying

1  on the financial projections.

2          You will also see in the same section of the

3  examiner's report if you turn to page 212, a description of

4  his recognition that management had the monthly projections

5  -- had the monthly actual financial results before the step

6  one closing and the differences between those actual results

7  and the projections, which the examiner characterized as not

8  material for the first couple of months, material in March

9  and April, but the examiner's view as expressed in his

10 report is that the differences were not enough to justify

11 revising the projections given that they covered a

12 relatively long time period.

13         If you turn to page 214 of Volume 1 of the

14 examiner's report you're going to see another document that

15 looks familiar from Mr. Qureshi's argument.  That's an April

16 30, 2007 email from Mr. Knapp to Mr. Litman and Mr. Bigelow.

17 You may remember the words another stellar week in April,

18 Your Honor.  That email was quoted in full on page 214 of

19 Volume 1 of the examiner's report.

20         In addition, Your Honor, the examiner sets forth

21 in his report how the projections were developed.  He talks

22 about that they're ground up from the operating businesses.

23 He talks about how these projections were lower than 2006.

24 You may remember Mr. Qureshi laying some emphasis on maybe

25 the examiner overlooked the historical comparisons.  No, in

1  fact he directly cited the historical comparisons in the

2  course of his discussion of the financial projections.

3          In short, the bottom line is the examiner looked

4  at all the evidence that was cited to you and he disagreed

5  with the Noteholders.  He concluded that in his judgment,

6  giving weight to all of that evidence, he was not persuaded

7  by the arguments, that you could not reasonably rely upon

8  the financial projections in February of 2007.

9          Second point I want to touch on with respect to

10 the examiner's report, that's the issue of capital adequacy

11 at step one.  This is a situation where Mr. Qureshi ignored

12 the examiner's conclusion.  He told you what everybody

13 thought about capital -- step one, except for what the

14 examiner thought about that issue.  If you look at Volume 2

15 of the examiner's report at page 211, you'll see what the

16 examiner thought about the issue and he concluded that it's

17 reasonably likely that a Court would find Tribune and its

18 guarantor subsidiaries had adequate capital at step one,

19 giving effect to the step two debt.  Now maybe he didn't pay

20 enough attention to the underlying evidence.  Maybe that's

21 the Noteholder's argument.  Well, Your Honor, that's clearly

22 not true if you look at Volume 2 of the examiner's report.

23 Mr. Qureshi laid some stress on the importance of looking at

24 downside cases when you're evaluating capital adequacy.  If

25 you look at page 214 of Volume 2 of the examiner's report,

1  the examiner says exactly the same thing.  You need to look

2  at downside cases and I did and he identified six downside

3  cases that his financial advisor evaluated and he tells us

4  on page 218 of Volume 2 that there's only one of those

5  downside cases that shows inadequate capital, that's the S

6  and P case that he refers to, and he tells you that he did

7  not give great credence to that because he thought the

8  downside assumptions there were aggressive, in his words.

9           In short, Your Honor, on this issue, on the

10  question of the financial projections, on virtually every

11  important issue what the Noteholders have argued today is

12  exactly what they argued in their post-hearing briefs, that

13  the examiner got it wrong and where they don't expressly

14  confront the examiner, they just ignore his conclusions.  If

15  instead this Court takes, as we submit the Court should, the

16  examiner's report as a guideline that the parties and this

17  Court could fairly use to evaluate the merits of the claims

18  this Court, we submit, will conclude that the DCL Plan

19  settlement is a reasonable one.

20           Your Honor, we also heard some effort, although I

21  would submit a relatively limited one, to go back to Dr.

22  Beron and to say that no, we don't really run away from the

23  examiner's report because we do in fact have Dr. Beron and

24  he took everything from the examiner's report, good and bad,

25  and he comes up with a huge number for the value of the

1    claims.  I think Mr. Zensky said that our criticism of Dr.

2    Beron is that he didn't do what Professor Black did.  Your

3    Honor, with respect that's simply not remotely what our

4    criticism of Dr. Beron is.  Our criticism is that he didn't

5    do what any competent, reliable expert would do.  He knew

6    the connections between the issues he was looking at were

7    critical to the results, but he conceded he didn't know what

8    the examiner thought about those connections and his

9    assumption that there weren't any connections is just

10   plainly wrong as he would have known if he knew anything

11   about fraudulent claims litigation.  And Your Honor, he did

12   something else that no reliable expert we submit would do.

13   He took Counsel's reading of the report over his own, so the

14   opinion you got on one significant issue and others that we

15   notice in our briefs, was Counsel's opinion, not his.

16   That's not what responsible, reliable experts do, Your

17   Honor.  And finally, we know that Dr. Beron didn't read more

18   than 90 percent of the report that he was trying to model

19   and I've heard a lot of arguments about why.  It's enough to

20   read the headline conclusions.  Your Honor, I submit that no

21   expert testifying in a case of this magnitude and trying to

22   determine what an independent third party's report means

23   about the value of the claims is going to read less than 10

24   percent of it and say I know enough to inform the Court and

25   for the Court to rely upon my judgment.

1                Your Honor, let me touch briefly on two other

2      issues.  Mr. Zensky spoke about where and he said that I was

3      a little sheepish he thought in argument in conceding that

4      we had in fact asserted estoppel claims that might fall

5      under the WEAR acronym.  Your Honor, I'm not sheepish about

6      it.  I'm proud of it.  That's our job.  Our job was to

7      investigate and assert claims that we believe were

8      potentially viable.  If we could state a claim, we believed

9      that it was incumbent upon us to do so and had some factual

10     support for it.  But Your Honor, I don't confuse the ability

11     to state a claim in a pleading with a substantial chance of

12     prevailing on a theory that as I believe you've heard

13     repeatedly here and you're going to hear a little more about

14     this from Mr. Bennett, where you are asking the Court to in

15     fact make up an additional equitable remedy beyond the

16     traditional ones that have been used in connection with

17     leverage buyouts, equitable estoppel, equitable

18     subordination, and that doesn't require the elements of

19     those traditional remedies.  And Your Honor, we would argue

20     for that in litigation, but I start from the proposition

21     that it's not easy to persuade Courts to develop new

22     equitable remedies that don't require proof of the elements

23     that the traditional remedies do.  You might succeed, Your

24     Honor, but that's an uphill fight every time you take it.

25                Your Honor, finally let me touch very briefly on

1    the issue that Mr. Zensky raised about the votes of the

2    retiree claimants and the swap claim and why those don't

3    really mean anything.  I agree with him as to the swap

4    claim.  I did not mean to suggest that that should be taken

5    as indicative of the position of similarly situated

6    creditors to Noteholders.  As for retires, I disagree with

7    Mr. Zensky.  They do get the same 33.6 cents on the dollar

8    that the Noteholders get.  They would get much more if they

9    were to accept the view of the Noteholders that these claims

10   are much more valuable than that.  They have every incentive

11   if they thought the Noteholders were right and the DCL Plan

12   settlement was settling -- selling them short in terms of

13   value, to reject the plan to argue for a higher value.  And

14   Mr. Zensky says well, maybe so, but they're different

15   because they settled an issue about the total amount of

16   their claims, they got a release in their capacity as

17   shareholders, and so they're really not similarly situated.

18   Your Honor, I submit that's just not right.  It's true that

19   they settled a dispute over the amount of their claims and

20   got a limited shareholder release in response, but unlike

21   Mr. Zensky's characterization of that as the claim -- amount

22   of the claim just went up from where the Debtors had put it,

23   in fact the settled amount of the claim is substantially

24   below what the retirees thought the right number was.  It

25   was a compromise and as part of that compromise there was a

1   limited release of shareholder claims.  Now Mr. Zensky told

2   you that the retirees agreed and were bound, contractually

3   bound I think he said, to support the DCL Plan.  Your Honor,

4   that's simply not what the relevant agreement says.  What it

5   says is that the retiree claimants agreed that they would

6   not object to a plan that gave them the 33.6 cent treatment

7   that's described therein.  It's a very different thing from

8   being contractually bound to do it and Your Honor, with

9   respect to the suggestion that the committee representative,

10  Mr. Nease, would somehow abdicate his fiduciary

11  responsibilities and not fairly evaluate the claims, I

12  submit there's absolutely no evidence to support such a

13  naked assertion as you heard from Mr. Zensky about his

14  conduct.

15          In short, Your Honor, just to sum it up we ask

16  you to look at the examiner's report in the round.

17  Everybody has told you it's something you can and should

18  rely on and we submit that when you do and you measure it up

19  against the DCL settlement, you'll conclude that it's a

20  reasonable settlement of risky claims that takes into

21  account the chances of a big win, but the hurdles that a big

22  win faces and the reality that the really strong claim is

23  step two.  Unless you prevail and wear or other arguments

24  that have their own hurdles, it doesn't get you much.  Thank

25  you, Your Honor.

1          MR. BERNSTEIN:  Your Honor, Don Bernstein from

2   Davis Polk on behalf of JP Morgan.  I guess in a way I've

3   come up here to inject a little more cynicism than we've

4   already had, which has been plenty, into these proceedings.

5   Mr. Sottile just talked about again the fact that the

6   examiner report was ignored with respect to the projections

7   in the presentation coming from the Noteholders.  There were

8   some other things that were ignored or glossed over and one

9   reason I get up is that JP Morgan is one of the DCL

10  Proponents who's been here since the beginning, since the

11  transaction occurred, and it gives us a perspective on some

12  of these assertions of improprieties.  An example of this is

13  the Persily deposition that was played back.  Ms. Persily is

14  a Citibank officer and she was asked about the projections

15  and you heard what she had to say, but what you didn't hear

16  is what she also had to say is we always took a haircut on a

17  company's projections.  We do that with every company.  It

18  wasn't unique to Tribune.  We never necessarily believe

19  management's projections.  We always come up with our own

20  set.  That's at page 81 of her deposition.  Of course they

21  did that.  It's -- in fact the whole thrust of the use of

22  that deposition was that the Lenders were just rolling over

23  despite the fact they knew that the projections were wrong.

24  In fact, it was just the opposite.  They were doing their

25  homework.  They did a good job in evaluating this credit.

1   They may have been entirely mistaken and I'll get to that in

2   a minute and that's why we're here, but they actually did

3   their homework, they weren't rolling over, they were

4   evaluating the projections, they were recasting the

5   projections, they were doing everything they should have

6   done as good credit analysts.  And so this was not a

7   situation as suggested by the Noteholders where there was

8   any acquiescence in any inaccurate projections.

9           Another example of you know telling part of the

10  story is the whole discussion of the Debtor being in control

11  of the negotiations.  Well, I think we've heard before that

12  the Debtor says that they're an honest broker, that they

13  weren't in control of the negotiations.  We also know and

14  there was no mention of this that the negotiation of the

15  ultimate settlement here as opposed to the Centerbridge

16  settlement in April was under the auspices of a mediation.

17  We didn't hear the word mediation in the presentation coming

18  from the Noteholders and that puts another cast on the

19  situation.  And let me describe what I see happening here.

20  I see the first thing this process objection, which I'm not

21  going to go into and I know both the Noteholders' and the

22  Court's views of that, but the Noteholders clearly are

23  making this process objection for a reason.  It's a little

24  hard to make a credible argument that the process was flawed

25  in connection with the mediation because of Judge Gross'

1    involvement.  So they are necessarily making an uphill

2    argument and why?  The question is why?  And one reason is

3    they need because of the difficulty on the merits on step

4    one constructive fraudulent conveyance, to be able to rely

5    on some other argument.  And that is where these arguments

6    about improprieties in connection with step one come in, the

7    whole idea contrary to the examiner's report that there

8    might have been intentional fraud in connection with step

9    one comes in, and you've got to balance it because if people

10   ended up with a fair settlement at the end, then they're not

11   trying to cover up an intentional fraud that would have

12   gotten the Noteholders paid in full.  So you've got to make

13   the argument that the process was somehow flawed because if

14   you don't make that argument, you undercut all of these

15   arguments about improper conduct at the beginning.  And so

16   that's what makes the connection.  They're making this very

17   implausible argument about the process because if they don't

18   make that argument, they can't make these other arguments

19   about how there were flaws in conduct at the beginning.

20           So I would leave that with the Court and then you

21   ask yourself well, why do they need to make these arguments?

22   Well, if the DCL Plan gets confirmed and the company emerges

23   from bankruptcy, we have Mr. Gropper's testimony that that

24   is not an optimal settlement posture from his point of view.

25   He's dying and what he really wants because he thinks it's

1  going to engender a settlement, is he wants no result here.

2  He's not -- you know he would like to see a result where

3  things -- the process gets prolonged and he actually said in

4  his deposition that he thinks that that would induce a

5  richer settlement if that occurred.

6          Well, two things about that.  First of all, that

7  sort of settlement delayed by the process has nothing to do

8  with the merits.  It has to do simply with the inability to

9  get a result because -- well, as I say a part of this story,

10  leaving this conundrum of doubt.  And once you're in that

11  posture, then Mr. Gropper thinks he's got leverage for a

12  settlement and a better settlement than he's got now.  Well,

13  that is not the way this should work.  It should work based

14  on merits.  Everything that the DCL Proponents have put

15  forward is based on the examiner report.  The examiner did a

16  thorough analysis of the merits.  It was an independent

17  examiner and that should be the basis of the Decision here,

18  whichever way it goes.  And we shouldn't have objections to

19  process simply because not that the process wasn't bad, but

20  that the outcome of the process is not something that the

21  objectors like and I think that's what you've got here, Your

22  Honor.  I think the objection to the process has two

23  components.  It's a component relating to what happened at

24  the outset and the inability to make those arguments, unless

25  you object to the process and it has a component of we've

1   got to object to the process because we don't like the

2   outcome.  It has nothing to do with the process itself, Your

3   Honor.  And for those reasons and for all the other reasons

4   the DCL Proponents have suggested, we think that the Plan

5   here should be approved, the DCL Plan, and consummate.

6   Thank you, Your Honor.

7            THE COURT:  Thank you.

8            MR. BENDERNAGLE:  Your Honor, Jim Bendernagel for

9   the Debtors.  I have a couple of topics I'd like to discuss.

10  I want to back up for a second and visit the whole issue of

11  the forecast and just ask the Court in looking through this

12  huge deck of material that Mr. Qureshi provided to you, to

13  realize that he hasn't presented the full side of the story.

14  And just to give an example, in slides 15 and 16, slide 15

15  is a picture of Mr. Bellack and they played a quote in which

16  Mr. Bellack said that it was the expectation that LA Times

17  historic publishing revenue would decline.  And then he

18  turned to paragraph 16 and showed this and suggested that

19  this somehow was related to what Mr. Bellack had said.  The

20  fact of the matter is this relates to EBITDA, not to revenue

21  and secondly it's whole company, not the publishing part of

22  the business.  The fact of the matter is in that forecast

23  the historic publishing revenues were expected to decline.

24            Secondly, Mr. Sottile pointed out to you that the

25  examiner discussed the financials quite a bit.  Mr. Qureshi

1    suggested the opposite.  I just recommend to you that pages

2    73 to page 96 of Volume 1 of the examiner report, as well as

3    pages starting on 210 and running through -- I'm sorry, Your

4    Honor -- 221 are the background sections where he talks

5    about the forecast and the prior performance and then in

6    Volume 2 he addresses this issue in a couple of different

7    places.  One is on 212 and 213 where Mr. Qureshi pointed

8    you, but also on page 25 and he says the examiner does not

9    conclude that Tribune unreasonably continued to rely on the

10   February 2007 projections up to and including the closing of

11   step one.  Some evidence additionally supports the view that

12   Tribune's entities management believed that various cost-

13   cutting initiatives then underway would counterbalance the

14   decline in revenue.  In his canvassing of the issues, there

15   was no mention of that.  Yet that was discussed extensively

16   or it was discussed with the Lenders at the April 26 meeting

17   in 2007.  I'm not suggesting that necessarily Mr. Qureshi --

18   I understand he's in a rush, but the idea that the story is

19   quite as one-sided as he suggests just doesn't hold water.

20           The second issue that I'd like to comment on just

21   briefly is Mr. Black.  In some respects I felt like we were

22   talking about two Mr. Blacks during the presentation because

23   for the first half he seemed to be their witness and then

24   all of a sudden he was unqualified.  You can't have it both

25   ways.  We believe Mr. Black was qualified and that he was

1   familiar -- fully familiar with the facts that he needed to

2   be to render his opinions.  This chart, which is chart 86,

3   that identifies the missing scenarios is interesting, but

4   not particularly illuminating because it doesn't tell you

5   whether any of these scenarios drive dollars or whether

6   they're duplicated and the reality is Mr. Beron had no way

7   of knowing that.  He did not know what the

8   interrelationships between these various scenarios are.

9           Another point -- a final point on Mr. Black is

10  during my opening this morning or my presentation this

11  morning, I pointed to the range of reasonableness and

12  indicated that the key case is the high settlement case,

13  specifically how it treats the step one issues.  And there's

14  been no reaction to that, other than just to dismiss Mr.

15  Black.  We submit that that high settlement case is a good

16  reading as to what the top of the range is.  There's no

17  evidence to suggest that that's not in fact the case and

18  that it supports the DCL Plan.

19          Final point relates to Mr. Friedman and he said

20  he'd take five minutes.  I'll take less time than five

21  minutes on the FCC issues.  With respect to the FCC issues

22  there's two issues.  One is is the FCC going to reject the

23  Plan.  I think they've all but conceded that that's not

24  going to happen and there's three reasons why.  One is

25  despite their assertions to the contrary, non-attributable

1   interests are not taken into account by the FCC any longer.

2   The cases they cite in that respect were overruled in 1999

3   by the change in position by the commission.  Secondly,

4   we've indicated that we don't agree that the alleged

5   attributable interest that they say exists are problematic

6   and Appendix A to our initial brief indicates what our

7   position is on each of those issues.  Finally, we've pointed

8   out that there are two mechanisms that would solve any

9   problem that did occur and they have no answer to that,

10  other than to say well, it may take some time and they say

11  it will take a long time.  What's that based on?  None of

12  these issues have been raised by anybody at the FCC.

13  There's no indication that the FCC is going to delay the

14  proceedings to look at this and it defies the belief that

15  the DCL Proponents would drag their feet in trying to remedy

16  a problem.  These people want to get this company out of

17  bankruptcy.  Why would they delay in that regard?  In any

18  event, we don't believe that the issues that Mr. Friedman

19  has raised present a feasibility issue under 1129(a)(11).

20  Your Honor, I'll hand off at this juncture to Mr. Conlan.

21          MR. CONLAN:  Jim Conlan on behalf of the Debtors,

22  two points.  Expediency versus resolve.  That was nicely put

23  by Mr. Golden.  The point remains the same.  We cannot cram

24  a purity plan down on the Senior Lenders.  It is true that

25  Mr. Kurtz said that a purity plan could work if the Senior

1   Lenders accepted it.  They don't.  We asked.  We analyzed

2   the purity plan.  In fact, I think we analyzed it before the

3   Notes did, along with a lot of other potential plans, all of

4   which were designed admittedly to play all ends against the

5   middle, achieve a fair outcome, and cause the company to

6   exit bankruptcy.  The Senior Lenders don't accept the purity

7   plan.  It can't be crammed down on them for the reasons that

8   Mr. Bennett described, but two of them I'll highlight.

9          1129(a)(10), we don't think we have it wrong.  We

10  think it's by Debtor.  You'll tell us if we have it wrong

11  and also the non-Debtor guarantors.  They've guaranteed the

12  Senior Lenders' obligations.  There are ten entities.

13  They're worth $1.5 billion.  It is no accident that our plan

14  contained a pre-pack feature with respect to those non-

15  Debtor guarantors in the event we were unable to fold the

16  bridge lenders into our deal.  That's why.  But one last

17  time, we don't believe we can cram the purity plan down on

18  the Senior Lenders.  It would work if they would accept it.

19  They don't.

20          On the numbers that you asked for, Your Honor,

21  and I'll try to build it up.  At what DEV do the Phones/EGI-

22  TRB Notes come into the money?  Not including post-petition

23  interest, there is 11.6 billion of indebtedness in front of

24  the Phones and the EGI-TRB Notes.  As a result the DEV needs

25  to be at least 11.6 billion before the Phones and EGI come

1  into the money.  Second question or rather subset, if step

2  two were avoided and the Court were to determine that step

3  one could not benefit from that avoidance, then that number

4  shrinks from 11.6 to approximately 7.9 by our calculations.

5  The second question we believe you asked, do you have to

6  decide priority between the Phones and EGI?  We think the

7  answer is no, not now.  There are no initial recoveries to

8  either of these constituencies under the DCL Plan.  If the

9  EGI Notes claims are ultimately allowed and there are

10  sufficient recoveries from the trusts to provide these

11  Creditors with the recovery, then this issue will need to be

12  decided, but it doesn't need to be decided now.  And then

13  there was a third question, which may have been an imbedded

14  question.  Do you have to decide the intra Phones issue, the

15  whole subordinated, not subordinated issue?  We think the

16  answer is that you do not have to decide it at this

17  juncture.  In any event there is no provision in the DCL

18  Plan that requires it.  The DCL Plan assumes that they're

19  all subordinated.  It does not make a distinction between

20  the so-called exchange holders and non-exchange holders.

21  Thank you, Your Honor.  Mr. Bennett?

22          MR. BENNETT:  If you could switch back to the

23  noteholders, please.  And could we have chart 56?  A few

24  points Your Honor, hopefully all touching on central issues

25  of the case.  They come up in -- with respect to particular

1  charts that were presented to you earlier.

2         This is a really important chart.  It was kind of

3  in my remarks and I didn't have time for it, but I think

4  it's important to note, and the noteholders were helpful,

5  the places that they've underlined in the three different

6  spreads of ratings are the ratings that existed at the end

7  of step two -- excuse me, at the end of step one.  So at the

8  end of step one, we didn't see substantial credit risks from

9  any of the rating agencies.  We saw a high-yield rating.

10 The first one was BB minus, the second one was Ba-3, that's

11 Moody's terminology, and the third was Fitch B-plus.  They

12 were a little bit different.  They were in the same range.

13 None a substantial credit risk.  I think it's also

14 illuminating that substantial credit risk in all of them

15 didn't show up until well after the step two closing, six

16 months after the step two closing.  Again part of our

17 argument, more debt does create more leverage.  It does

18 create more risk.  What the rating agencies were not saying,

19 "Bankruptcy imminent, this is an insolvent company, it is

20 predestined to fail."  It just simply does not support the

21 noteholders' case.

22        The next chart very quickly please 57, we now

23 understand that the noteholders understand that there is no

24 real trading volume in this chart, but they say a lot was

25 outstanding at the end so we assume a liquid market.  Well

1    we don't know when the amounts outstanding at the end were

2    purchased or sold or how many of those positions cancelled

3    each other out, so we really have no evidentiary background

4    for greater liquidity or less liquidity versus bond  prices

5    at any point in this chart, just to keep it in perspective.

6                The next place I'll go, and I'll pause here, is

7    the blank page, page 59, if you could move to page 59.  Why

8    is it that page 59 is blank?  The DCL proponents put on a

9    case to approve a settlement centered very intentionally on

10   the examiner's report, an independent finding by someone

11   whose qualifications are universally admired.  My

12   colleagues, Mr. Sottile in particular, also Mr. Seife, also

13   the debtors, were not going to let me bring the lenders'

14   side of the case to the Courtroom in support of a settlement

15   without saying, "But I don't agree with this, and I don't

16   agree with that and I don't agree with this and I don't

17   agree with that."  We did not think that was the right to

18   support the settlement.  We chose a strategy.  We had a

19   resource that the estate spent millions of dollars creating

20   the examiner's report and we decided that's the starting

21   point.  That's the evidentiary backbone.  That is the best

22   support for what happened here.

23               The noteholders did something completely

24   different.  They said -- they tried to say -- they had to

25   pay lip service to the examiner's report because they

1  concede it's got to be the most important piece of evidence

2  in the matter before you.  But then what they went off and

3  did was prove the case that they would prove if this were

4  litigated.  And they're now saying I should have done the

5  same thing.  Or maybe they're saying Mr. Sottile should have

6  done the same thing, which would have been, frankly, very

7  strange.

8            We're going to find out whether --

9            THE COURT:  Awkward at the least.

10  (Laughter)

11            MR. BENNETT:  We're going to find out from Your

12  Honor whether we read this case correctly and whether we

13  presented the right kind of case.  I'm convinced that we

14  did.  But the right kind of case to support the

15  reasonableness of a settlement against the background of

16  what's happened in this case is not to fill this blank page.

17  It's to do what we did.  And I think our record is fine.

18            I now want to turn and pause on page 64.  64 is

19  the page where the noteholders say, "Gotcha committee, you

20  have "where" in the complaint."  Well, they have the titles.

21  I noticed that the complaint doesn't allege the elements.

22  And our -- one of our, there are more, central themes about

23  "where" is that the creation of the slogan was an effort to

24  obscure the fact that the doctrines captured within the

25  slogan are actually fairly well developed as elements you

1   can tick off, and we ought to see the facts which support

2   the elements.  The complaint doesn't have it.  And, frankly,

3   if I were the noteholders' counsel having heard our

4   presentation this morning about the missing elements, the

5   first thing I would have done when I got to page 64 is tick

6   off the elements.  So there's nowhere, w-h-e-r-e, to where.

7   They can't show us any of the elements of any of the

8   doctrines that they allude to without applying.

9               Now there were more interesting things said when

10  they were discussing this page.  The most interesting part

11  was a statement that if someone can't pursue avoidance, and

12  they're referring to estopped creditors, they can't benefit.

13  I think that's a fascinating and interesting statement.  And

14  I think it summarizes very nicely the law I alluded to

15  relating to whether shareholders can benefit from a

16  fraudulent transfer case.  Shareholders cannot bring

17  fraudulent transfer cases in any of our States, and they

18  can't bring fraudulent transfer cases here.  How is it then

19  that shareholders are benefiting?  Remember what the

20  noteholders need, what the noteholders ask for are monstrous

21  dividends from subsidiaries after they reduce the amount of

22  their debt.  That's what they're in the business of seeking

23  here, the benefit of fraudulent transfer cases that

24  shareholders can't bring; their words, not ours.

25              Finally, they say that it's really up to this

1    Court to fashion an avoidance remedy and it could do

2    whatever it wants.  Well, I don't think that's right.  I

3    don't think you even think that's right.  The code tells us

4    what the remedies are, most of them are in 550.  The

5    disallowance remedy turns out not to be in 550, and they

6    make a lot of that.  But we can't get away from the fact

7    that the code specifies the remedy for a fraudulent

8    conveyance and it doesn't say, "Apply these remedies and

9    then do any other remedy you would like."  Moreover, at 550

10   there's one thing that's pretty clear.  You get a single

11   satisfaction for a fraudulent transfer claim, not a single

12   satisfaction and then a whole bunch of other remedies that

13   you would like too.

14            THE COURT:  Well there's been a lot of discussion

15   about remedies, but in determining whether which if either

16   plan should be confirmed I don't think I'll be ordering any

17   remedy --

18            MR. BENNETT:  They're talking about --

19            THE COURT: -- at this stage of the proceedings.

20            MR. BENNETT:  Well and I'm not suggesting that

21   you are, and I agree that would be for later.  But there are

22   multiple paths to recovery, are effectively applications of

23   remedies that you can't find in the code.  They're remedies

24   they're asking you to make up.  I would say they are

25   inconsistent not only with the specific remedies described

1  but also with the code's direction of a single satisfaction.

2  The single satisfaction isn't paid in full.  The single

3  satisfaction is avoidance of the fraudulent transfer.  And

4  if it turns out as a result of avoidance you don't get all

5  the way home, it doesn't say make up another remedy.  You're

6  entitled to one remedy effectively.

7          Very briefly chart 68.  This is the Bruce Karsh

8  memorandum relating to questions with -- conversations with

9  Mr. Zell, a deposition they decided not to take.  Note

10  importantly that the plan that Mr. Karsh was describing that

11  was the one the noteholders wanted the debtors never filed

12  that one.  I promise I would have let you know.

13          And, finally, one last loose end that I should

14  have mentioned before relating to the creative

15  implementation of the intercompany claim settlement by the

16  noteholders, what was the purpose of their creative

17  implementation?  I forgot to bring it home and connect the

18  dots.  The purpose was to find a way not to pay post-

19  petition interest on subsidiary indebtedness arising from

20  step one under those scenarios that are relevant here, which

21  is where step one is found not to be avoidable.

22  Implementing the intercompany claim settlement in the manner

23  in which it was presented in the debtors' DCL plan, in the

24  manner it was presented for purposes of having it be deemed

25  reasonable through the testimony of Mr. Whittman, and the

1  only manner in which it was considered before the Court

2  generates a result that entitles the credit agreement

3  lenders to post-petition interest from many, more than

4  enough by the way, of the subsidiaries, not necessarily all

5  of them.  The noteholders don't have an argument as to why

6  that's not true with the intercompany claim settlement that

7  they didn't oppose and that the evidence supports would be

8  approved.  And so it was a sleight of hand.  They had

9  already let that settlement go.  They had already allowed

10  evidence to come in supporting it and adduced no evidence

11  contradicting it.  And they just said, "We're going to

12  implement it differently.  We're going to change it without

13  support for any of the changes."  Under their vision, under

14  their way to implement the settlement which of course hasn't

15  been approved Your Honor, can't approved Your Honor and,

16  most importantly, isn't in our plan and isn't the law, they

17  can get whatever result they want.  But they can't by fiat

18  including it in their plan, not supporting it, not creating

19  a basis for approval they cannot then adopt it as the

20  benchmark for measuring whether or not the credit agreement

21  lenders are entitled to post-petition interest.

22          The last words, again, we don't -- we the credit

23  agreement lenders do not agree with everything in the

24  examiner's report.  We would resist many of its findings and

25  conclusions if we were litigating the matter.  But for

1  purposes of this hearing, fairly reading the examiner's

2  report, living with the examiner's report except for the

3  couple of manifest errors that have been discussed, there is

4  no escaping that it supports the settlement and it ought to

5  be approved.

6           I'd be happy to answer questions Your Honor may

7  have.

8           THE COURT:  Thank you.

9           MR. ZENSKY:  Good afternoon Your Honor.  Would it

10 be possible for us to take a three-minute break to consult

11 so we can use our last eight to nine minutes wisely?

12          THE COURT:  Three minutes.

13          MR. ZENSKY:  We'll still be done by your hard

14 stop.

15          THE COURT:  Three minutes.

16          MR. ZENSKY:  Thank you.

17 [Recess from 4:32 p.m. to 4:38 p.m.]

18          THE CLERK:  All rise.

19          THE COURT:  Mr. Golden, are you going to take us

20 home?

21          MR. GOLDEN:  Me and two of my colleagues.

22 (Laughter)

23          MR. GOLDEN:  Something about "Beat the Clock"

24 comes to mind.

25          THE COURT:  All right.

1          MR. GOLDEN:  Your Honor you asked previously

2     whether you had to decide certain issues regarding

3     subordination.  One thing I'd like to remind the Court that

4     you do need -- you will need to decide the issue raised at

5     pages 33 to 36 of our post-trial reply brief as to whether

6     the swap claim and the retiree claims are in fact entitled

7     legally to get the benefit of subordination -- of the

8     subordination provisions from the PHONES and EGI-TRB notes.

9     We say no, we think it's in error, we think it violates

10    1129(b).  It's a $50 million error to the detriment of the

11    senior noteholders.  We think that makes their plan

12    unconfirmable on their face.

13          Number two, I'm sorry that Mr. Bennett doesn't

14    like the cases that I've actually litigated and decided, the

15    requirements of 1129(a)(10).  But what I didn't hear him say

16    is that there are other cases that support the DCL's view as

17    to the proper interpretation.

18          One other thing.

19          THE COURT:  Well one of the things that he's

20    suggesting I think is that given the imbalance in where the

21    assets lie that -- well my words, not his -- even if other

22    Judges have decided it's okay, under these circumstances

23    it's not okay.

24          MR. GOLDEN:  I understood that argument, Your

25    Honor.

1          THE COURT:  Okay.

2          MR. GOLDEN:  And he seems to think that 20

3    percent of the assets where creditors of $2.5 billion worth

4    of claims reside shouldn't count in that exercise.  And all

5    I was saying is other Courts haven't necessarily agreed.

6          But I will make the point that if he happens to

7    be right, and if that's how Your Honor ultimately

8    determines, their plan is equally unconfirmable because

9    there are 37 debtors where they did not get an impaired

10   consenting class so they will likewise be out of conformity

11   with the requirements of 1129(a)(10).

12          Third point Your Honor --

13          THE COURT:  Well let me ask you to pause again.

14   Then I say to myself if -- if those cross objections on the

15   same ground are still pending, I mean is this a collective

16   shooting yourselves in the foot type of thing?

17   (Laughter)

18          MR. GOLDEN:  Your Honor, from our point of view,

19   we think there's a certain interpretation to 1129(a)(10)

20   that would make both plans confirmable on that point.  It is

21   the DCLs who have raised the contrary interpretation, and if

22   they use that contrary interpretation they are, in effect,

23   shooting themselves in the foot.

24          THE COURT:  All right, thank you.

25          MR. GOLDEN:  Third, Your Honor, Mr. Bennett

1  suggested that there is a similarity between the two plans

2  because we, the noteholders, adopt the retiree settlement.

3  That's just not the case.  And I would suggest he just show

4  me the place in our plan that says we adopt the retiree

5  settlement.

6            Fourth Your Honor on the non-debtor guarantor

7  releases, at pages 26 through 28 of our post-trial reply

8  brief we discuss that issue.  The Third Circuit law in cases

9  like *Continental* and your case in *Spansion* makes it clear

10 that under compelling circumstances those kind of third-

11 party releases can be granted even on a non-consensual

12 basis.  And we refer Your Honor to the findings of fact and

13 conclusions of law in the *Hazel Murrs* case by Judge Walrath

14 which will recite facts amazingly similar to the facts here.

15 And she believed that those facts were compelling enough to

16 allow non-debtor guarantor releases, just like here, to be

17 released under a plan.

18            And Your Honor with that, I am going to turn this

19 over to my colleague.

20            MR. QUERSHI:  Thank you, Your Honor.  I hope the

21 record will reflect who I am because I don't have time in my

22 83 seconds to repeat that, Your Honor.

23 (Laughter)

24            MR. QUERSHI:  Two really quick points.  The

25 examiner's capital adequacy conclusion at step one, it's not

1    just the NPP proponents that disagree with that outcome.

2    It's Professor Fischel too, Your Honor.  We don't run from

3    it, we don't ignore it.  We set forth why at page 44 in our

4    opening post-trial reply brief that it's wrong.

5            Three points, Your Honor.  Again the February

6    projections which we don't think can we relied upon, the

7    examiner assumed that the company could refinance $9 billion

8    in debt.  We don't think there's a basis for that

9    conclusion.

10           And finally Your Honor, the examiner made a

11    mathematical error and it's a significant one and it's one

12    that the DCL proponents don't dispute.  The examiner added

13    cash tax expense to cash flows rather than deducting it.

14    And the impact of that Your Honor is to increase cash flows

15    by $100 million which is, of course, significant in the

16    capital adequacy analysis.

17           Second point Your Honor goes to the February

18    projections.  Your Honor we're not suggesting that the

19    examiner didn't have the facts before him to come to the

20    conclusion that we come to.  What we're suggesting Your

21    Honor is that the examiner simply did not undertake the

22    analysis that we think is the right analysis that gets to

23    the inescapable conclusion that those projections are

24    unreasonable.

25           I want to very quickly pull up slide 17.  Your

1   Honor can search through volume two of the examiner's

2   report.  Volume of the examiner's report Your Honor simply

3   will not find this analysis by the examiner.  And

4   specifically Your Honor what I'm referring to is the backend

5   loaded nature of the projections.  And what Your Honor can

6   see is that in 2007 the front five months of the year, you

7   can compare that performance to 2006 and look at the

8   implications of that for the last seven months of the year

9   Your Honor.  And if that analysis is done, it shows that

10  there's just no way that in May one could conclude that

11  those projections could be met.  And the examiner simply

12  does not do that.

13          And with that Your Honor I'll turn it over to Mr.

14  Zensky for the last word.

15          MR. ZENSKY:  Thank you Your Honor, the last

16  couple of topics.

17          Mr. Bennett spoke a few moments about the "where"

18  issue and he really made more of a standing attack or a

19  challenge attack to it than the cases and remedies that

20  we've discussed.  And I don't think there's any question

21  that there is standing to pursue the avoidance of the step

22  two debt.  In the debtors and the debtors' estates there are

23  massive intercompany claims owed to the debtors.  There are

24  general unsecured creditors at the subsidiary level that the

25  estates have standing to seek avoidance.  And it's not

1  disputed that when you avoid -- under 548 you avoid the

2  entirety of an obligation, not just a piece of it.  And the

3  question is what happens to the value that's freed up as a

4  result of the avoidance.

5          Now he referred you to code Section 550, and

6  that's not the right section with respect to this issue.

7  550 goes to bringing a transfer back into the estate.  So

8  that would be relevant at the parent level with respect to

9  disgorgment.  548 governs the issue of avoidance at the

10  guarantor subsidiaries, Your Honor, and 548 has no benefit

11  to the estate limit.

12          Finally on this topic, there is no dispute that

13  in what the DCL plan proponents concede as the homerun

14  scenario where both step one and step two are avoided that

15  in that scenario the value does flow up from the

16  subsidiaries to the parent company.  That also gave the

17  examiner no pause whatsoever.  And the only debate here is

18  whether that does or does not happen when step two is

19  avoided but not step one.  And I've addressed the bases for

20  that already.

21          Mr. Conlan told you that with respect to the

22  PHONES coming into the money in the event that step two is

23  avoided, that they calculate it to be about $7.9 billion.

24  If you look at our chart on page 67, we're fairly close to

25  each other on that issue.  We show it at just shy of 7.8

1  where the PHONES begin to get a recovery.  And what's

2  equally important to take away from this slide Your Honor,

3  which I didn't have time to address earlier, that at a value

4  as low as $7,050,000,000 the senior notes would get a 48.5

5  percent distribution which is well above the proposed

6  settlement amount here.  And you'll recall that Lazard, in

7  its January update, Lazard said the company was worth $7

8  billion and change at that point in time.  On top of that,

9  the debtors have amassed $200 million in cash beyond what

10  their plan assumed they would have upon exit.  So we think

11  we're already well into the 7.2 range and the recoveries

12  that would flow to the senior notes, if nothing happens

13  beyond step two being avoided and no post-petition interest

14  is allowed.

15           Third Your Honor I heard Mr. Bernstein I think

16  make a reference to Mr. Gropper's deposition.  I assume he

17  was talking about the trial because that's what's here for

18  discussion today, what happened at trial.  Mr. Gropper never

19  said anything remotely like what was ascribed to him, that

20  there was some value in dragging this out or delaying the

21  bankruptcy proceedings.  Indeed the noteholders have urged

22  you to adopt their plan so the company can exit from

23  bankruptcy.  Its testimony at page 13 and 14 of the

24  transcript from March 16th, Your Honor, was that if the note

25  holder plan is confirmed and a negotiation takes place by an

1  independent litigation trustee that he was confident, very

2  confident that a superior settlement would result from that.

3  And he never, for a second, ascribed the notion that there

4  was some value in delaying things here, Your Honor.

5        And if I have one minute left, let me turn to Mr.

6  Sottile's comments regarding Dr. Beron.  Dr. Beron did not

7  need to look beyond the bottom-line conclusions. Normally,

8  you heard him testify, he gets the probabilities from

9  counsel.  In this case he took them from the examiner's own

10 conclusions which the examiner said were what one should

11 look to to get his opinion.  In short order, Dr. Beron said

12 that this was well suited to the type of exercise that he

13 does, which is to value the claims based on someone's

14 probabilities.  He should not have done what Professor Black

15 did and try to intuit out of the examiner report alleged

16 correlations or dependencies, or make a conclusion that the

17 examiner said one thing but really meant another.  That

18 defeats the whole point of the exercise.  And most

19 importantly, Dr. Beron did run sensitivities.  He testified

20 to on redirect that he ran analyses where he took into

21 account the bulk of their objections where he zeroed out

22 certain paths to recovery.  He reversed the one issue where

23 the testimony was that we read the report as being in

24 equipoise he read it as being reasonably likely.  Taking all

25 those things into account, he reversed all that in favor of

1  their objections and came out with $1.3 billion Your Honor

2  as the expected value, still almost three times as much as

3  the proposed settlement.

4              So we ask that you turn down the proposed DCL

5  plan and confirm the noteholder plan Your Honor.

6              THE COURT:  Thank you.

7              MR. SOTTILE:  Your Honor, I think we've now

8  concluded the arguments by the planned proponent groups.

9              There are two very brief housekeeping matters I'd

10  like to address if that's all right with the Court.

11              THE COURT:  They're standing behind you, all

12  right.

13              MR. SOTTILE:  Well one of them may be relevant to

14  Mr. Bradford, so --

15              THE COURT:  Okay.

16              MR. SOTTILE:  -- if I might speak to that

17  briefly.

18              Your Honor we were here two weeks ago, as you

19  will recall, on the question of admissibility of certain

20  exhibits.  And we also had some discussion two weeks ago

21  about the use of any findings and conclusions on the merits

22  of the claims in other litigation.

23              With respect to the first issue Your Honor, the

24  parties have reached agreement on language for an Order, and

25  we will submit it under a Certification of Counsel.

1          With respect to the second issue, Your Honor, we

2    read into the record an agreement between the planned

3    proponent groups about use of findings and conclusions in

4    other matters.  We have, per the Court's instruction, been

5    consulting with counsel for various third parties, including

6    Mr. Zell since then in an effort to reach agreement on that.

7    I think we have reached agreement with everyone other than

8    Mr. Zell's counsel, and with the Court's indulgence we would

9    ask the opportunity to report to the Court briefly at

10   tomorrow's hearing on the status of those discussions and

11   that issue.

12          THE COURT:  Okay.

13          MR. SOTTILE:  Thank you Your Honor.

14          Finally Your Honor if I might just hand up, I

15   believe I forgot to give you a binder with the DCL

16   demonstratives.  May I hand that up, Your Honor?

17          THE COURT:  You may.

18          MR. SOTTILE:  Thank you Your Honor.

19          THE COURT:  Thank you.

20          MR. BRADFORD:  Your Honor David Bradford, Jenner

21   & Block, for Mr. Zell.  Your Honor was kind enough to offer

22   us a couple of minutes with respect to the noteholders'

23   findings.  In light of Your Honor's comments about the

24   process issues, I won't take more of the Court's time other

25   than to say that those findings as they relate to Mr. Zell

1   are unfounded.  And I appreciate that opportunity Your

2   Honor, thank you.

3            THE COURT:  All right.

4            MR. KRAKAUER:  Your Honor one other hopefully

5   positive matter that -- Bryan Krakauer for the debtor.

6            A few weeks ago we referred the DOL matter in the

7   Neil litigation matter over to mediation.  Mediation has

8   occurred and there have also been discussions among the

9   parties.  The parties being debtor, the Department of Labor,

10  the IRS, the Neil Plaintiffs and also a number of insurance

11  companies.  We are making progress.  There's been

12  significant progress made hopefully in the settlement.  And

13  I'm here to ask if it's acceptable to the Court, the request

14  is that you hold off ruling on the Department of Labor

15  objection to the plan for another two to three weeks to

16  allow us time to see if we can get a settlement done.

17           THE COURT:  I don't think you have anything to

18  worry about.

19  (Laughter)

20           MR. KRAKAUER:  You never know Your Honor, thank

21  you.

22           THE COURT:  Okay, can we just touch base a little

23  bit briefly about tomorrow?  I'm being advised that I guess

24  now except for the one status that we just added the only

25  thing going forward tomorrow is number 25 on the agenda.

1          MR. PERNICK:  Your Honor Norm Pernick from Cole,
2     Schotz, that's correct.
3          THE COURT:  Okay, now, I did have delivered today
4     a hardcopy of Aurelius' Notice of Withdrawal.
5          MR. PERNICK:  I think that was to number 24.
6          THE COURT:  It was.  But along with it came a
7     motion of the noteholder plan proponents to admit certain
8     documents.  I take it that was just sent as a matter of
9     convenience and courtesy and that's not a new motion, or is
10    it?
11         MR. HURLEY:  Mitch Hurley Your Honor, thank you.
12    It's not a new motion.  It was just this matter pressing.
13         THE COURT:  I appreciate that.  Okay, any notion
14    of how much time we'll need tomorrow?
15         MR. KORPUS:  Good afternoon, Your Honor, Sheron
16    Korpus of Kasowitz Benson for Law Debenture and the other
17    Plaintiffs in the [indiscernible] collections.
18         There have been several objections.  We're
19    working on resolving several of them.  I do not expect it
20    will take more than but half an hour --
21         THE COURT:  All right.
22         MR. KORPUS:  -- at most, if that.
23         THE COURT:  Anything further for today?
24         MR. HURLEY:  No Your Honor.
25         THE COURT:  Thank you.  That concludes this

1   hearing.   Court will stand adjourned.

2   (Whereupon, at 4:54 p.m., the hearing was adjourned.)

3

4                      CERTIFICATION

5            I certify that the foregoing is a correct

6   transcript from the electronic sound recording of the

7   proceedings in the above-entitled matter.

8

9

10  _____          27  June  2011

11  Traci Calaman, Transcriber                    Date

12

13

14

15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **08-13141(kjc**(1) 1:5 | | **accepted**(8) 42:5 66:19 116:3 119:20 138:23 138:23 177:16 202:1 | | **adjust**(1) 140:13 | | **agree**(14) 16:2 31:24 40:5 41:17 44:17 116:20 192:3 201:4 205:15 205:16 205:16 205:17 208:21 210:23 | |
| **11-and-a-half**(1) 102:5 | | | | **adjusted**(1) 115:23 | | | |
| **1129(a)(1**(11) 179:9 179:15 183:3 183:4 183:21 184:9 184:14 202:9 212:15 213:11 213:19 | | **accepting**(5) 183:15 183:16 183:18 183:23 184:5 | | **adjustment**(3) 82:5 87:23 159:5 | | | |
| | | | | **adler**(1) 9:9 | | **agreed**(9) 16:7 18:2 18:25 40:1 125:6 181:11 193:2 193:5 213:5 | |
| **1129(a)(11**(1) 201:19 | | **accident**(2) 64:7 202:13 | | **administration**(1) 139:6 | | | |
| **21-and-a-half**(1) 102:4 | | **accompanies**(1) 26:12 | | **admired**(1) 205:11 | | | |
| **44-and-a-half**(1) 102:20 | | **accomplishes**(1) 173:20 | | **admissibility**(1) 220:19 | | **agreement**(24) 12:7 44:3 44:5 66:5 66:6 140:21 140:22 140:23 140:24 149:18 178:5 178:8 178:10 178:22 179:8 181:25 193:4 210:2 210:20 210:23 220:24 221:2 221:6 221:7 | |
| **70-percent**(1) 130:23 | | **accordance**(1) 181:1 | | **admission**(3) 106:16 137:17 164:24 | | | |
| **a.m**(4) 1:15 15:1 69:11 69:11 | | **according**(3) 22:5 30:10 39:16 | | **admit**(1) 223:7 | | | |
| **aaron**(2) 13:9 13:10 | | **account**(13) 27:25 31:15 71:5 71:9 73:7 73:19 73:21 93:6 107:24 193:21 201:1 219:21 219:25 | | **admits**(1) 51:3 | | | |
| **abandoned**(1) 38:13 | | | | **admitted**(2) 132:25 164:9 | | **agrees**(5) 18:15 57:16 121:24 170:9 179:17 | |
| **abdicate**(1) 193:10 | | | | **admittedly**(2) 82:24 202:4 | | **agudelo**(1) 6:39 | |
| **abid**(2) 4:20 94:2 | | **accurate**(1) 158:6 | | **adopt**(6) 33:4 142:12 210:19 214:2 214:4 218:22 | | **ahead**(5) 33:19 106:11 126:18 127:1 156:1 | |
| **ability**(7) 16:10 21:21 31:11 148:6 159:20 167:10 191:10 | | **achievable**(1) 104:10 | | | | **ahmed**(1) 10:29 | |
| | | **achievable.''**(1) 104:14 | | **adopted**(4) 138:19 181:15 181:15 181:18 | | **akin**(5) 4:17 8:9 84:20 94:2 173:15 | |
| **ability-to-pay**(1) 122:4 | | **achieve**(2) 119:17 202:5 | | **advance**(7) 26:7 30:24 97:18 106:21 111:23 115:9 129:19 | | **albeit**(1) 26:12 | |
| **abitibi**(1) 184:15 | | **acknowledge**(5) 65:5 95:24 97:12 129:16 175:1 | | | | **ali**(1) 6:13 | |
| **able**(7) 15:19 52:23 133:3 133:4 133:23 177:1 196:4 | | | | **advanced**(2) 29:9 185:25 | | **all**(149) 15:14 15:20 16:2 16:15 18:13 20:2 22:8 22:9 22:11 23:15 23:24 24:6 24:17 25:9 25:17 26:8 26:14 27:1 29:24 32:14 32:21 33:10 34:14 38:25 39:22 42:24 44:4 44:10 45:6 45:13 46:1 46:9 47:12 47:14 47:25 49:13 51:1 52:15 52:20 54:24 55:2 56:1 56:5 56:21 56:23 61:8 62:19 63:1 63:8 68:3 69:9 69:12 72:10 74:2 74:5 77:1 83:10 83:19 83:21 84:2 84:11 84:18 85:2 85:3 89:2 89:8 92:22 98:17 101:23 113:1 113:18 115:4 117:7 120:12 121:21 122:2 125:5 126:25 127:18 127:21 129:4 129:20 133:8 133:17 134:19 135:10 136:9 136:10 138:13 138:16 144:9 144:24 146:5 146:13 146:15 147:17 151:17 153:18 154:3 154:9 155:25 160:2 160:23 161:19 163:23 163:25 164:10 165:9 165:16 166:6 167:13 167:18 167:21 168:3 168:10 171:17 172:25 174:9 177:1 178:24 180:3 180:7 180:20 180:25 183:6 188:4 188:6 196:14 197:6 198:3 199:24 200:23 202:3 202:4 203:19 203:24 204:14 209:4 210:4 211:18 211:25 213:4 213:24 219:24 219:25 220:10 220:11 222:3 223:21 | |
| **ably**(1) 154:9 | | **acknowledged**(5) 103:15 104:19 110:11 116:25 123:15 | | **advancing**(1) 184:15 | | | |
| **about**(250) 15:14 15:18 15:24 16:24 18:9 20:25 21:12 24:22 25:5 26:6 27:3 29:22 31:22 32:19 32:22 34:13 34:14 34:20 35:15 34 37:1 37:3 37:24 37:25 38:11 38:17 39:2 41:13 41:18 44:22 45:20 45:24 46:8 46:15 47:24 48:1 48:8 49:11 49:19 49:24 50:14 50:17 51:3 51:7 51:8 52:4 52:4 52:21 53:2 53:2 53:4 53:5 53:6 53:7 53:8 53:9 53:10 53:10 53:16 53:19 53:20 53:2 55:1 56:16 56:20 56:22 56:23 57:2 57:4 57:5 57:7 57:8 57:9 57:25 58:5 58:8 59:7 59:21 61:7 61:8 61:15 61:17 61:18 61:23 62:22 63:1 63:5 63:7 63:10 63:17 63:18 64:4 64:5 64:15 65:10 65:25 66:1 67:22 68:6 68:9 68:11 68:24 69:17 69:18 70:3 73:14 74:11 75:22 76:13 76:21 77:1 77:5 81:13 83:3 84:3 84:4 84:6 84:7 84:9 85:24 86:4 86:12 87:7 89:9 90:6 91:1 91:6 91:10 91:14 100:8 100:23 101:10 102:4 102:7 102:24 103:5 104:6 105:7 105:9 105:14 105:20 106:17 107:6 108:3 109:12 109:23 110:3 110:17 112:16 116:15 123:21 124:4 127:6 127:10 127:15 127:25 129:3 129:8 129:8 133:3 135:14 135:21 137:21 138:7 143:3 144:19 144:20 145:1 146:19 146:25 147:9 147:10 148:2 149:3 149:6 149:25 152:23 152:23 152:24 153:6 153:18 154:2 154:7 155:23 156:3 156:12 156:17 157:17 158:1 158:11 161:14 162:5 162:24 164:17 167:2 168:17 169:15 169:1 176:22 179:9 180:21 182:13 182:14 182:16 182:18 182:20 183:22 183:25 184 184:13 184:21 185:9 185:24 187:22 187:23 188:13 188:14 188:16 190:8 190:17 190:19 190:20 191:2 191:5 191:13 192:1 192:15 193:13 194:5 194:14 196:6 196:15 196:17 196:19 197:6 199:5 199:22 206:22 207:4 208:15 208:18 211:23 216:17 217:2 218:17 220:21 221:3 221:23 222:18 222:23 | | **acting**(1) 184:15 | | **adversary**(1) 155:4 | | | |
| | | **action**(15) 57:9 99:24 137:14 140:2 142:13 172:6 172:15 172:19 174:9 174:12 175:4 175:16 178:24 183:13 183:19 | | **advertising**(4) 95:13 95:16 95:21 100:18 | | | |
| | | | | **advice**(2) 58:19 152:13 | | | |
| | | | | **advised**(3) 152:12 152:19 222:23 | | | |
| | | | | **advisor**(8) 22:6 23:3 23:24 24:1 96:8 125:23 189:3 | | | |
| | | **action.''**(1) 93:8 | | **advisors**(2) 73:17 108:10 | | | |
| | | **actions**(3) 93:2 105:1 174:5 | | **advocate**(5) 145:7 145:14 147:20 148:1 155:7 | | | |
| | | **actual**(10) 48:19 54:6 101:3 111:3 113:5 113:15 113:21 142:6 187:5 187:6 | | **advocates**(3) 149:5 149:7 149:8 | | | |
| | | **actually**(27) 49:3 51:13 54:9 54:10 54:10 54:19 56:10 66:4 81:21 101:19 106:24 107:19 111:23 112:11 112:14 113:16 117:10 127:20 127:23 176:14 177:18 178:2 179:14 195:2 197:3 206:25 212:14 | | **affected**(1) 157:20 | | | |
| | | | | **affecting**(1) 51:4 | | | |
| | | | | **affects**(2) 52:3 52:3 | | | |
| | | | | **affiliated**(1) 81:1 | | | |
| | | | | **affirmed**(1) 120:21 | | | |
| | | **adam**(1) 3:13 | | **afraid**(1) 126:11 | | | |
| **above**(9) 28:8 35:6 73:24 74:6 120:17 130:2 159:11 159:22 218:5 | | **adams**(1) 8:12 | | **after**(27) 17:23 18:5 21:18 50:9 60:2 61:21 61:21 85:25 88:2 96:24 100:7 101:19 107:8 108:12 109:19 109:25 110:1 113:19 133:15 147:7 152:19 155:12 168:11 177:24 204:15 204:16 207:21 | | | |
| | | **add**(8) 26:19 57:6 73:12 90:20 109:17 142:8 149:23 173:6 | | | | | |
| **aboveentitled**(1) 224:7 | | | | **afternoon**(8) 82:19 84:19 94:2 132:6 169:16 173:14 211:9 223:15 | | | |
| **abruptly**(1) 119:13 | | **added**(4) 57:24 141:3 215:12 222:24 | | | | | |
| **absence**(1) 19:16 | | **addition**(1) 120:10 187:20 | | **afterwards**(1) 84:9 | | **allegation**(1) 58:17 | |
| **absent**(2) 120:24 121:3 | | **additional**(3) 24:18 123:10 191:15 | | **again**(80) 29:14 30:4 32:21 34:12 39:20 42:1 42:1 42:1 45:1 48:4 52:14 53:15 57:3 58:21 59:6 66:16 71:21 74:1 75:14 80:1 86:1 93:20 95:16 96:3 96:9 96:16 97:6 97:7 97:21 98:25 99:7 100:22 101:5 103:2 103:4 103:11 103:14 103:18 104:17 106:5 106:9 107:1 108:1 108:24 109:1 109:21 110:23 111:12 114:5 115:19 118:25 119:3 119:9 120:17 120:23 122:16 123:21 124:9 125:10 125:15 125:21 126:8 126:12 126:16 126:18 126:21 127:9 128:25 130:2 135:13 138:20 166:16 166:14 167:22 177:12 194:5 204:16 210:22 213:23 215:5 | | **allison**(1) 4:10 | |
| **absolute**(1) 135:15 | | **additionally**(1) 199:11 | | | | **allison**(1) 7:15 | |
| **absolutely**(4) 18:25 39:1 181:16 193:12 | | **address**(17) 43:20 43:22 43:23 78:6 78:7 82:15 85:2 85:17 85:22 91:3 93:21 128:9 128:12 163:3 172:3 218:3 220:10 | | | | **alliteration**(1) 160:13 | |
| **absurd**(1) 97:4 | | | | | | **allocation**(3) 82:23 82:24 174:21 | |
| **accelerate**(1) 95:10 | | | | | | **allotted**(1) 169:17 | |
| **accept**(5) 42:8 66:25 85:2 157:5 182:5 185:25 192:9 202:6 202:18 | | **addressed**(2) 75:11 217:19 | | | | **allow**(7) 175:23 176:4 176:6 178:20 178:25 214:16 222:16 | |
| | | **addresses**(2) 143:5 199:6 | | **against**(29) 32:24 40:12 51:25 56:11 68:1 68:2 90:19 102:3 102:4 107:20 115:6 115:10 119:23 126:10 126:12 137:5 145:2 151:17 151:18 156:14 156:22 159:8 159:17 162:17 163:10 174:12 193:19 202:4 206:15 | | | |
| **acceptable**(1) 222:13 | | **addressing**(1) 128:21 | | | | **allowable**(1) 63:11 | |
| **acceptance**(1) 83:12 | | **adds**(3) 27:3 72:7 92:20 | | **agencies**(4) 127:24 128:2 204:9 204:18 | | **allowed**(14) 19:18 33:12 34:24 35:10 65:17 90:5 92:11 143:15 159:6 160:20 176:10 203:9 210:9 218:14 | |
| | | **adduced**(1) 210:10 | | **agency**(1) 127:18 | | | |
| | | **adelman**(1) 8:17 | | **agenda**(2) 46:3 222:25 | | | |
| | | **adequacy**(12) 21:21 71:15 121:18 121:21 122:4 122:21 123:3 167:10 188:10 188:24 214:25 215:16 | | **aggregate**(1) 159:6 | | **allows**(3) 174:15 174:16 175:13 | |
| | | | | **aggressive**(2) 111:21 189:8 | | **allude**(1) 207:8 | |
| | | | | **ago**(6) 132:12 133:21 162:15 220:18 220:20 222:6 | | **alluded**(1) 207:14 | |
| | | **adequate**(5) 162:7 172:19 172:21 181:12 188:18 | | | | **almost**(10) 18:1 32:25 42:24 94:7 122:25 123:14 129:10 131:23 147:14 220:2 | |
| | | | | | | **alone**(7) 19:15 26:18 34:15 92:4 97:21 99:21 126:20 | |
| | | **adjourned**(2) 224:1 224:2 | | | | **along**(4) 68:14 154:3 202:3 223:6 | |
| | | **adjudicated**(1) 178:12 | | | | **already**(8) 46:2 81:24 113:25 194:4 210:9 210:9 217:20 218:11 | |
| | | **adjudication**(1) 175:16 | | | | | |

| Word | Page:Line |
|------|-----------|
| **also**(64) | 23:10 25:2 29:1 33:9 33:25 39:14 41:4 44:18 45:1 46:24 47:11 53:12 66:24 72:11 72:25 75:17 80:13 82:1 94:10 95: 96:16 99:19 102:6 102:24 106:13 107:17 108:1 115:8 116:15 116:25 121:24 122:3 124:20 125:16 133:19 140:25 141:16 142:19 144:14 145:6 158:25 162:6 165:23 167:3 171:9 171:16 176:6 177:10 182:13 185:17 187:2 189:20 194:16 195:13 199: 202:11 204:13 205:12 205:12 209:1 217: 220:20 222:8 222:10 |
| **alter**(4) | 111:14 115:12 115:13 115:14 |
| **altered**(1) | 117:15 |
| **alternative**(14) | 11:36 11:36 31:4 31:11 32:17 59:19 59:21 158:20 175:10 175:11 176:12 177:12 178:5 178:10 |
| **alternatives**(1) | 24:20 |
| **although**(6) | 16:1 20:9 20:20 39:16 53:6 189:20 |
| **altogether**(1) | 185:6 |
| **alvarez**(2) | 13:33 13:33 |
| **always**(10) | 67:1 82:22 151:1 152:10 153:24 177:20 177:21 182:24 194:16 194:19 |
| **amassed**(1) | 218:9 |
| **amazing**(4) | 98:2 103:22 106:13 109:15 |
| **amazingly**(1) | 214:14 |
| **ambiguous**(1) | 52:1 |
| **amended**(1) | 162:17 |
| **america**(3) | 6:22 6:26 127:7 |
| **americas**(1) | 3:6 |
| **among**(2) | 77:19 222:8 |
| **amount**(24) | 33:14 42:3 85:24 89:19 124:15 136:22 156:18 156:23 157:23 158:13 159:6 159:12 175:19 177:6 179:3 179:23 183:2 185:19 192:15 192:12 192:2 192:23 207:21 218:6 |
| **amounts**(2) | 23:11 205:1 |
| **amsden**(2) | 108:18 109:8 |
| **analyses**(2) | 91:22 219:20 |
| **analysis**(75) | 18:17 20:11 21:19 22:5 23:21 25:6 26:23 27:5 28:3 28:21 29:11 30:11 32:2 32:5 34:3 34:7 38:2 38:19 39:12 39:13 40:4 49:4 56:17 72:1 72:1 72:4 72:9 74:1 74:4 74:25 75:18 76:9 79:5 79:6 79:16 79:18 79:21 79:25 80:5 80:8 80:10 81:3 81:15 81:15 82:9 94:24 98:11 103:10 111:1 111:9 113:3 114:3 114:6 114:10 115:12 115:21 116:7 116:8 116:19 117:10 119:2 119:5 119:19 119:21 121:7 121:21 122:24 123:12 151:10 197:16 215:16 215:22 215:22 216:3 216:9 |
| **analyst**(5) | 96:20 103:20 126:4 126:13 |
| **analysts**(4) | 95:22 112:10 124:6 195:6 |
| **analyze**(1) | 113:8 |
| **analyzed**(6) | 33:25 125:12 126:20 126:22 202:1 202:2 |
| **analyzing**(2) | 21:24 59:8 |
| **anchored**(2) | 111:3 113:21 |

| Word | Page:Line |
|------|-----------|
| **and**(301) | 15:21 15:24 15:25 16:5 16:9 16:13 16:13 16:19 16:20 17:4 17:5 17:7 17:14 17:16 17:19 17:21 18:3 18:7 18:10 18:10 18:14 18:16 18:18 18:20 18:22 18:23 19:1 19:2 19:3 19:6 19:18 20:1 20:3 20:12 20:15 20:21 20:21 21:9 21:10 21:11 21:21 22:7 22:12 22:12 22:14 22:22 23:7 23:15 23:24 24:4 24:5 24:11 24:15 24:16 24:17 24:18 24:20 25:4 25:5 25:9 25:16 25:22 25:23 25:23 26:8 26:8 26:11 26:12 26:15 26:16 26:21 26:22 26:24 27: 27:10 27:11 27:13 27:16 27:19 27:24 28:3 28:7 28:12 28:14 28:19 28:20 28:23 29:4 29:10 29:14 29:16 29:21 30:11 30:13 30:16 30:19 30:24 30:25 31:12 31:12 31:14 31:23 32:14 32:25 33:4 33:5 33:15 33:19 33:20 33:23 34:2 34:2 34:4 34:6 34:18 34:19 34:20 35:2 35:3 35:7 35:11 35:14 36:3 36:6 36:11 36:11 36:18 36:22 37:3 37:10 37:12 37:14 38:12 38:15 39:1 39:15 40:2 40:12 40:20 41:2 41:8 41:11 41:12 41:14 41:19 42:1 42:1 42:11 42:16 42:20 42:24 42:25 43:1 43:5 43:9 43:16 43:16 43:22 44:4 44:8 44:8 44:11 44:14 44:18 44:19 44:22 44:25 45:5 45:11 45: 45:16 45:18 45:22 45:22 45:24 46:4 46:6 46:7 46:9 46:16 46:21 47:2 47:5 47:10 47:17 47:22 48:2 48:7 48:11 48:18 48:19 48:24 49:1 49:9 49:13 49:17 49:19 49:22 50:1 50:4 50:6 50:11 50:13 50:14 50:14 50:20 50:22 51:1 51:8 51:8 51:10 51:12 51:16 51:22 51:23 52:6 52:8 52:12 52:13 52:20 52:21 53:8 53:9 53:14 53:18 53:22 53:25 54:4 54:7 54:8 54:9 54:10 54:12 54:14 54:17 54:21 54:23 54:25 55:2 55:8 55:10 55:11 55:12 55:15 55:18 55:21 55:21 55:25 56:3 56:5 56:8 56:14 56:18 56:19 56:22 57:3 57:11 57:12 57:17 57: 57:22 58:2 58:4 58:5 58:7 58:7 58:14 58:18 58:21 58:23 58:24 59:2 59:6 59:7 59:9 59:16 59:16 59:21 59:22 59:23 59:24 59:25 60:6 60:11 60:14 60:16 60:16 60:17 60:23 61:6 62:6 62:7 62:9 62:10 62:12 62:15 62:16 62:22 62:23 63:6 63:7 |

| Word | Page:Line |
|------|-----------|
| **and**(301) | 63:11 63:16 63:23 63:24 64:1 64:2 64:6 64:9 64:14 64:17 65:4 65:6 65:10 65:12 65:14 65:14 65:18 66:3 66:5 66:8 66:10 66:14 66:20 66:23 66:24 66:2 67:1 67:3 67:4 67:5 67:6 67:7 67:8 68:9 67:11 67:15 67:16 68:5 68:5 68:7 68:9 68:11 68:13 68:20 68:24 68:24 69:6 69:18 69:18 69:20 70:10 70:12 70:14 70:18 70:20 71:3 71:7 71:9 71:11 71:13 71:15 71:20 71:21 72:8 72:9 72:14 72:17 72:20 72:22 72:24 73:1 73:7 73:9 73:12 73:13 73:15 73:17 73:20 73:21 74:3 74:4 74:14 74:23 75:1 75:2 75:7 75:11 75:15 75:18 75:22 75:25 76:1 76:1 76:3 76:7 76:9 76:10 76:12 76:12 76:17 76:20 76:24 77: 77:3 77:7 77:10 77:11 77:12 77:18 77:24 77:25 78:2 78:7 78:10 78:14 78:16 78:18 78:20 78:23 79:3 79:7 79:8 79:10 79:17 79:23 80:5 80:9 80:11 80:13 80:18 80:19 81:2 81:4 81:5 81:6 81:7 81:9 81:13 81:17 81:23 81:24 82:3 82:9 82:18 82:21 82:21 82:21 83:3 83:5 83:5 83:6 83:8 83:9 83:9 83:15 83:17 83:17 83:19 83:23 83:24 84:8 84:8 84:8 84:10 84:13 84:21 85:8 85:11 85:11 85:13 85:17 85:20 85:2 85:24 85:24 86:5 86:8 86:10 86:12 86:25 87:2 87:11 87:12 87:17 87:20 87:22 87:2 88:4 88:7 88:10 88:20 88:22 89:5 89:11 89:21 89:22 90:4 90:7 90:10 90:19 90:20 90:23 91:1 91:9 91:15 91:18 91:22 91:25 92:3 92:3 92:8 92:9 93:2 93:8 93:8 93:16 92:23 93:24 93:24 94:3 94:5 94:8 94:16 94:20 94:23 95:7 95:21 95:22 96:7 96:10 96:13 96:16 96:22 96:22 97:4 97:8 97:11 97:11 97:20 97:21 98:11 98:18 98:21 98:24 99:2 99:5 99:6 99:8 99:10 99:24 100:1 100:14 101:9 101:13 101:18 101:25 102:4 102:7 102:10 102:11 102:15 102:23 102:24 103:4 103:11 103:15 103:18 104:5 104:18 104:21 105:6 105:6 105:10 105:14 105:16 105:18 105:22 106:22 106:23 107: 107:4 107:6 107:10 107:14 107:22 108:1 108:14 109:11 109:20 109:20 109:22 110: 110:9 110:12 110:15 110:23 111:12 111:19 112:1 112:2 |

| Word | Page:Line |
|------|-----------|
| **and**(301) | 112:9 112:16 112:24 113:15 113:19 113:23 114:3 114:5 114:14 114:16 114:18 115:3 115:8 115:10 115:16 115:21 115:23 116:2 116:4 116:6 116:7 116:19 116:21 117:6 117:8 117:13 117:18 119:1 119:2 119:14 119:14 119:21 119:22 119:24 120:5 120:6 120:7 120:10 120:13 120:18 120:21 120:21 121:3 121:3 121:4 121:9 121:12 121:13 121:14 121:18 121:23 121:25 122:4 122:12 122:12 122:24 122:25 123:1 123:5 123:5 123:7 123:9 123:11 123:17 124:6 124:8 124:15 124:22 124:24 125:3 125:7 125:11 125:19 125:22 126:2 126:12 126:18 126:23 127:3 127:8 127:11 127:25 127:25 128:1 128:4 128:10 128:11 128:21 128:22 129:2 129:7 129:9 129:12 129:13 129:14 129:16 129:18 130:2 130:6 130:9 130:14 130:18 130:20 130:23 130:24 130:24 131:5 131:7 131:10 131:13 131:14 131:20 131:22 132:7 132:9 132:15 132:19 132:23 132:24 133:1 133:7 133:9 133:10 133:11 133:14 133:16 133:20 133:23 134:10 134:12 134:15 134:18 134:22 134:24 135:1 135:2 135:10 135:13 135:15 135:18 135:23 135:25 136:3 136:6 136:7 136:9 136:12 136:13 136:15 136:20 137:7 137:9 137:24 138:3 138:8 138:11 138:12 138:15 138:16 138:18 138:21 139:5 139:5 139:11 139:15 139:16 139:17 139:18 139:24 140:2 140:3 140:4 140:7 140:9 140:17 140:23 140:23 141:5 141:6 141:7 141:13 141:22 141:25 142:2 142:13 142:14 142:16 142:21 142:22 143:4 143:5 143:6 143:7 143:8 143:10 143:11 143:15 143:19 143:22 143:24 144:2 144:3 144:5 144:6 144:9 144:10 144:12 144:13 144:13 144:13 144:14 144:16 144:19 144:21 145:11 145:11 145:14 145:20 145:23 146:1 146:2 146:4 146:10 146:11 146:17 146:20 146:20 146:21 146:23 146:23 147:5 147:8 147:10 147:11 147:11 147:13 147:23 148:1 148:2 148:3 148:7 148:8 148:10 148:12 148:13 148:14 148:16 148:22 148:24 149:4 149:5 149:9 149:20 149:21 149:23 150:2 150:6 150:9 150:10 150:12 150:12 150:14 150:19 150:19 150:25 151:4 151:6 151:8 151:11 151:13 151:14 151:18 151:20 151:24 152: 152:2 152:5 152:8 152:8 152:8 152:12 152:14 152:14 152:14 152:17 152:18 152:20 152:22 153:7 153:21 153:23 154:3 154:3 154:4 154:9 154:12 154:12 154:14 154:18 155:1 155:2 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and**(301) 155:4  155:9  155:10  155:11  155:13  155:15  155:15  155:22  156:2  156:4  156:7  156:11  156:12  156:15  156:18  156:2  156:24  157:1  157:2  157:6  157:6  157:8  157:9  157:11  157:18  157:20  157:22  157:2  158:6  158:10  158:13  158:15  158:17  158:18  158:19  159:9  159:14  159:15  159:1  159:18  159:19  160:3  160:10  160:11  160:11  160:12  160:13  160:16  160:20  160:24  161:1  161:2  161:3  161:5  161:15  161:16  161:19  161:23  161:24  161:25  162:  162:8  162:14  162:18  162:21  162:24  162:25  163:4  163:10  163:11  163:11  163:15  163:17  163:24  163:25  164:1  164:  164:9  164:11  164:14  164:19  164:19  164:  165:1  165:2  165:3  165:5  165:8  165:16  165:17  165:19  165:21  165:24  166:3  166:  166:9  166:13  166:14  166:15  166:18  166:2  166:21  166:21  167:1  167:2  167:4  167:11  167:15  167:15  167:16  167:18  167:19  167:22  167:24  167:25  168:2  168:3  168:  168:6  168:11  168:16  168:21  168:22  169:1  169:11  170:5  170:6  170:14  170:15  170:1  170:22  170:24  171:2  171:5  171:8  171:10  171:11  171:15  171:16  172:8  172:9  172:11  172:12  172:24  173:4  173:8  173:9  173:10  173:11  173:16  173:17  173:19  173:21  173:23  173:25  174:1  174:2  174:  174:4  174:10  174:14  174:17  174:21  174:25  175:1  175:3  175:4  175:7  175:7  175:9  175:11  175:17  175:17  175:21  175:22  175:23  176:1  176:6  176:10  176:16  176:20  176:25  177:4  177:8  177:17  177:18  177:21  177:22  178:7  178:11  178:14  178:2  179:1  179:2  179:3  179:16  179:18  179:19  179:21  179:22  179:22  179:23  180:13  180:16  180:17  180:19  180:25  183:1  181:6  181:10  181:11  181:11  181:16  181:20  182:10  182:12  182:15  182:19  182:21  183:  183:9  183:18  183:25  184:3  184:10  184:1  184:17  184:24  185:6  185:8  185:12  185:18  186:1  186:3  186:13  186:15  186:19  186:2  186:25  187:6  187:7  187:9  187:16  188:4  188:16  188:17  189:2  189:2  189:3  189:6  189:6  189:13  189:16  189:22  189:23  189:2  189:25  190:8  190:11  190:14  190:17  190:19  190:21  190:24  190:24  191:2  191:7  191:9  191:13  191:18  191:19  192:2  192:2  192:11  192:13  192:17  192:19  192:25  193:  193:8  193:11  193:17  193:18  193:18  193:22  193:23  194:8  194:11  194:14  194:1  195:1  195:2  195:6  195:13  195:18  195:19  195:21  195:21

**and**(157) 196:2  196:2  196:5  196:9  196:15  196:20  196:22  196:25  197:3  197:10  197:1  197:17  197:18  197:21  197:24  197:25  198:3  198:3  198:5  198:10  198:11  198:14  198:14  198:15  198:17  198:18  198:18  198:21  199:3  199:5  199:5  199:7  199:8  199:10  199:23  199:25  200:6  200:11  200:1  200:17  200:19  200:24  201:6  201:9  201:1  201:14  202:5  202:11  202:21  202:24  202:  202:2  203:6  203:9  203:12  203:20  203:23  204:3  204:4  204:11  205:6  205:15  205:16  205:16  205:20  206:2  206:4  206:12  206:17  206:18  206:22  207:1  207:2  207:11  207:13  207:13  207:17  208:1  208:5  208:8  208:8  208:12  208:20  208:21  209:3  209:13  209:1  209:25  210:7  210:8  210:10  210:11  210:15  210:16  210:24  211:4  211:21  212:6  212:8  212:14  213:2  213:4  213:7  213:21  214:3  214:9  214:12  214:12  214:15  214:18  215:1  215:11  215:11  215:14  216:3  216:5  216:7  216:9  216:11  216:13  216:18  216:19  216:2  216:22  216:25  217:2  217:5  217:10  217:1  217:17  217:19  218:1  218:6  218:8  218:11  218:13  218:23  218:25  219:3  219:5  219:15  219:18  220:1  220:5  220:20  220:21  220:24  221:3  221:8  221:10  222:1  222:8  222:10  222:12  223:9  223:9  223:16

**and-a-half**(1) 102:19
**anderson**(1) 2:19
**andrea**(1) 5:5
**andrew**(7) 3:22  6:19  6:35  8:42  9:32  10:38  14:5

**angeles**(2) 2:16  100:11
**angelo**(12) 2:4  10:32  10:32  170:14  170:15  170:22  170:24  171:5  171:8  171:10  172:8  173:5
**anna**(2) 7:41  7:41
**annex**(1) 92:19
**announced**(4) 51:20  96:17  96:25  120:17
**announcemen**(1) 128:18
**another**(20) 49:1  59:15  60:14  60:20  63:13  63:25  73:17  100:3  108:13  117:5  125:20  160:9  187:14  187:17  195:9  195:18  200:9  209:5  219:17  222:15

**answer**(15) 17:13  33:3  58:25  60:17  60:18  68:16  77:22  100:17  108:15  167:3  167:4  203:17  203:16  211:6

**answers**(2) 69:23  83:25
**anticipate**(2) 16:12  180:6
**anticipated**(1) 105:15
**any**(107) 15:8  17:17  18:6  19:10  26:13  27:25  28:12  28:15  28:16  29:2  29:8  31:5  33:1  34:25  35:5  35:11  35:24  36:5  37:14  37:22  38:11  39:17  48:15  53:17  55:25  55:25  57:11  58:15  62:4  62:5  62:19  68:16  71:11  73:19  73:23  75:18  76:11  80:1  81:9  81:11  86:9  86:17  93:13  97:16  99:19  103:  112:18  123:11  124:25  131:12  132:1  135:2  137:13  137:13  139:5  139:5  144:21  145:1  152:4  156:25  159:13  159:14  159:19  160:3  160:4  160:6  160:6  163:2  163:4  163:20  164:4  164:5  164:18  166:12  168:15  168:19  169:3  171:4  171:6  171:20  172:3  174:13  177:2  178:7  181:13  182:21  184:22  190:5  190:9  195:8  195:8  200:5  201:1  201:8  201:17  203:17  204:9  205:5  207:7  207:7  207:17  208:9  208:16  210:13  216:20  220:21  223:13

**anybody**(3) 79:2  131:17  201:12
**anyone**(6) 24:9  24:12  65:15  86:9  142:5  186:13

**anyone's**(1) 45:15

**anything**(18) 37:24  42:11  44:16  46:17  53:25  74:20  84:13  127:14  137:17  159:22  182:13  182:14  183:20  190:10  192:3  218:1  222:17  223:23

**anyway**(1) 86:8
**anywhere**(3) 26:22  35:5  66:1
**apart**(1) 147:8
**apologize**(1) 112:5
**apparent**(2) 20:22  27:9
**apparently**(3) 39:24  109:10  110:12
**appeal**(1) 90:11
**appear**(1) 113:4
**appearances**(10) 5:40  6:2  7:1  8:1  9:1  10:1  11:1  12:1  13:12  14:1

**appears**(3) 119:24  172:24  176:25
**appendix**(2) 23:3  201:6
**applicable**(2) 55:15  62:7
**application**(1) 170:24
**applications**(1) 208:22
**applied**(5) 64:18  116:2  132:22  141:22  161:16

**applies**(2) 137:24  143:19
**apply**(8) 135:10  135:11  135:12  141:15  142:2  161:24  161:25  164:5

**applying**(2) 113:19  207:8
**appointed**(1) 61:10
**appreciate**(6) 16:1  98:11  157:2  180:13  222:1  223:13

**appreciated**(3) 113:6  113:14  120:1
**approach**(10) 24:23  37:12  48:18  51:2  117:4  119:3  154:5  168:10  168:18  178:1

**approached**(1) 156:13
**appropriate**(17) 16:11  44:13  81:6  81:25  82:23  117:21  118:3  145:6  145:7  147:20  149:3  150:14  155:5  155:15  159:12  168:16  184:18

**appropriately**(1) 178:17
**approval**(14) 45:19  45:20  45:22  47:8  83:21  115:7  115:8  145:23  160:4  170:6  170:10  172:13  172:20  210:19

**approve**(11) 16:4  16:19  17:12  18:3  25:16  42:16  43:2  47:1  144:23  155:14  205:9

**approved**(9) 87:22  96:8  115:3  182:1  198:5  210:8  210:15  210:15  211:5

**approving**(1) 150:19
**approximately**(4) 94:6  99:3  116:9  203:4
**april**(20) 91:13  96:24  107:9  108:17  108:20  108:23  112:24  128:18  145:17  145:24  147:8  159:4  160:1  162:12  175:22  187:9  187:15  187:17  195:16  199:16

**april"**(1) 109:13
**architect**(1) 147:24
**archiview**(1) 13:9
**arduous**(1) 70:12

**are**(218) 15:16  18:10  19:18  21:16  23:3  24:5  24:12  24:18  24:19  26:5  27:12  27:14  27:22  28:6  28:19  29:1  30:23  31:3  32:13  32:25  33:8  33:9  34:2  35:11  36:15  37:9  38:9  39:22  40:3  40:5  40:8  41:10  42:7  43:20  45:7  45:12  45:13  46:15  49:10  50:6  51:12  51:13  52:24  53:4  53:5  53:16  53:25  57:12  57:16  57:23  58:3  59:23  60:2  60:15  61:23  62:3  62:13  62:15  65:10  65:14  66:8  66:9  66:16  68:1  68:8  68:9  69:23  71:3  71:4  71:14  73:22  74:3  74:13  78:15  78:18  79:12  79:17  79:20  80:5  81:8  83:7  83:15  85:7  86:12  88:14  88:14  88:17  88:18  88:20  90:20  91:23  92:10  93:5  93:15  101:1  101:12  103:20  105:20  110:25  111:13  111:25  112:13  113:22  117:7  117:7  118:7  118:13  118:15  122:13  127:2  127:20  128:5  133:17  134:21  134:22  135:9  135:15  136:9  136:13  136:18  137:5  137:24  138:4  139:10  139:17  139:19  139:25  140:4  140:5  141:9  141:9  141:10  141:13  142:24  143:17  144:7  144:21  148:21  148:23  149:19  149:20  150:6  150:7  152:7  152:14  153:15  154:10  155:19  157:23  159:16  161:21  161:23  163:19  164:25  165:10  165:23  166:1  166:6  169:10  169:14  170:20  170:21  171:11  171:12  172:8  172:10  172:22  173:9  175:12  176:15  177:3  178:10  181:3  182:3  182:5  182:9  182:13  182:14  191:14  192:10  195:22  196:1  199:4  200:8  201:11  201:18  202:12  203:7  203:9  203:9  204:6  205:11  206:22  206:25  207:19  207:20  208:4  208:4  208:21  208:21  208:22  208:24  209:20  210:21  211:19  212:5  212:16  213:9  213:15  213:22  215:23  216:22  216:23  217:14  220:9  222:1  222:11

**area**(2) 49:2  80:2
**areas**(2) 116:6  182:7
**aren't**(4) 33:23  77:8  80:2  133:18
**argue**(6) 74:23  76:11  76:13  172:2  191:19  192:13

**argued**(8) 141:18  152:4  158:8  179:10  186:12  186:24  189:11  189:12

**argues**(2) 152:7  153:6
**arguing**(3) 115:6  115:10  153:15
**argument**(43) 15:15  26:16  29:6  30:6  30:8  31:20  33:8  33:12  33:17  35:7  35:12  35:13  35:14  35:17  35:19  36:4  36:10  36:12  43:8  44:19  47:8  65:21  76:13  78:5  93:23  137:13  137:20  144:11  154:2  179:12  187:15  188:21  191:3  195:24  196:2  196:5  196:13  196:14  196:17  196:18  204:17  210:5  212:24

**arguments**(24) 15:10  18:14  30:23  31:2  31:4  35:17  35:21  36:1  36:3  70:18  136:17  138:18  138:23  139:1  185:4  188:7  190:19  193:23  196:5  196:15  196:18  196:21  197:24  220:8

**arise**(1) 172:3
**arising**(1) 209:19
**arm**(1) 96:6
**arm's-length**(1) 153:14
**arms**(1) 154:10
**around**(2) 123:4  148:16
**arps**(1) 13:38
**arrangers**(2) 90:24  140:25
**arriving**(1) 116:1
**arrowgrass**(2) 9:40  9:40
**art**(1) 81:20
**arthur**(1) 11:33
**article**(1) 130:24
**articles**(2) 96:18  129:8
**ascertainable**(1) 186:3
**ascribed**(2) 218:19  219:3
**ashby**(1) 4:27

| Word | Page:Line |
|---|---|

**ashih(1)** 10:21
**ashley(1)** 3:23
**aside(2)** 162:8 174:7
**ask(24)** 17:25 39:5 40:10 41:12 41:20 42:2 43:1 43:22 54:12 54:13 65:9 77:14 82:14 106:17 132:9 180:3 193:15 196:21 198:11 207:20 213:13 220:4 221:9 222:13
**asked(23)** 45:1 64:7 69:22 75:23 79:15 83:25 116:22 124:18 130:6 134:19 143:2 151:20 157:4 165:15 165:20 166:23 166:2 167:3 194:14 202:1 202:20 203:5 212:1
**asking(6)** 39:22 40:9 86:24 108:10 191:14 208:24
**aspect(3)** 157:24 160:10 182:20
**aspects(5)** 49:9 113:13 117:23 118:3
**assembled(1)** 88:1
**assert(4)** 59:23 75:17 78:8 191:7
**asserted(1)** 191:4
**asserting(2)** 59:14 66:9
**assertion(3)** 54:25 179:20 193:13
**assertions(2)** 194:12 200:25
**asserts(1)** 81:14
**assess(1)** 165:8
**assessed(1)** 49:13
**assesses(2)** 71:21 71:22
**assessing(1)** 155:19
**assessment(4)** 27:20 41:17 77:15 90:9
**assessments(1)** 18:24
**asset(3)** 11:28 11:28 184:6
**assets(12)** 19:19 21:10 21:15 36:19 57:12 63:21 123:8 133:1 183:13 183:19 212:21 213:3
**assign(4)** 93:13 163:12 166:10 166:19
**assigned(5)** 127:22 163:15 163:17 166:25 168:4
**assignment(2)** 148:24 167:24
**assistance(1)** 18:13
**associated(2)** 132:23 139:10
**assume(15)** 64:21 65:2 74:14 114:1 117:10 118:7 123:8 123:13 148:15 154:7 154:14 154:15 163:21 204:25 218:16
**assumed(14)** 21:10 34:18 65:11 65:18 65:22 65:23 65:23 73:14 79:10 79:14 111:20 130:13 215:7 218:10
**assumes(6)** 65:12 109:21 136:21 139:22 143:7 203:18
**assuming(4)** 49:21 65:4 65:5 76:5
**assumption(10)** 34:25 37:15 38:17 64:19 65:16 65:21 65:21 116:17 139:22 190:9
**assumptions(1)** 189:8
**asylum(1)** 4:6
**attached(1)** 23:13
**attack(3)** 40:6 216:18 216:19
**attempt(1)** 174:19
**attempted(2)** 161:1 161:8
**attendant(1)** 174:10
**attention(2)** 89:19 188:20
**attitude(1)** 46:8
**attractive(1)** 80:25
**attributable(6)** 170:8 170:25 171:2 171:6 171:12 201:5
**attributes(2)** 76:23 117:22
**auction(2)** 56:24 56:25
**august(2)** 105:13 105:24
**aurelius(17)** 4:17 8:4 8:5 42:10 66:19 66:23 66:24 67:6 78:1 83:9 84:21 94:3 132:7 145:17 156:21 173:16 184:14
**aurelius'(3)** 131:23 223:4
**auspices(1)** 195:16

**austin(3)** 1:23 7:4 148:23
**author(2)** 87:3 109:19
**authority(2)** 146:16 146:17
**availability(1)** 123:14
**available(8)** 39:17 50:9 50:11 50:14 107:24 122:11 129:3 168:21
**ave(2)** 1:34 2:15
**avenue(4)** 2:36 3:6 5:6 5:24
**average(3)** 93:17 112:1 112:2
**avoid(7)** 23:23 27:10 35:16 133:19 172:5 217:1 217:1
**avoidable(1)** 209:21
**avoidance(72)** 19:6 19:8 22:9 22:9 22:10 22:11 22:19 24:14 24:14 24:15 24:16 25:22 26:22 26:24 27:10 28:21 29:18 30:22 31:1 31:2 31:20 32:13 32:20 33:19 33:22 34:1 34:5 34:8 34:9 34:5 34:22 38:22 60:25 61:1 61:2 63:2 63:3 72:14 76:24 77:2 88:20 135:19 136:1 136:6 136:7 136:19 137:7 138:18 139:10 139:12 139:24 140:1 140:2 140:3 140:10 141:17 142:7 142:13 142:18 143:20 144:4 163:22 163:24 203:3 207:11 208:1 209:3 209:4 216:21 216:25 217:4 217:9
**avoided(19)** 19:11 22:12 26:11 135:23 136:19 136:23 136:25 137:24 138:3 138:1 142:21 143:7 143:8 143:14 203:2 217:14 217:19 217:23 218:13
**avoiding(2)** 26:18 27:16
**avoids(1)** 173:8
**aware(8)** 15:16 20:4 20:21 42:6 97:17 105:24 105:25 171:21
**away(13)** 46:10 60:8 63:22 89:8 91:13 121:17 123:14 155:17 156:3 159:10 189:2 208:6 218:2
**awful(2)** 94:4 94:5
**awfully(1)** 134:2
**awhile(2)** 167:2 184:24
**awkward(1)** 206:9
**b-plus(1)** 204:11
**ba-3(1)** 204:10
**back(41)** 26:16 46:1 46:17 50:10 52:10 53:7 53:9 56:14 57:20 58:22 59:7 62:18 68:9 84:3 86:3 92:17 100:4 103:4 110:3 132:2 136:21 142:4 142:16 142:21 142:23 144:9 145:20 157:21 159:3 160:1 162:12 163:16 166:9 177:22 180:12 184:24 189:2 194:13 198:10 203:22 217:7
**backbone(1)** 205:21
**backed(1)** 125:25
**backend(2)** 102:8 216:4
**backend-loaded(1)** 113:9
**background(6)** 52:1 132:25 148:11 199:4 205:3 206:15
**backing(1)** 133:20
**backs(1)** 126:9
**backup(1)** 166:17
**bad(7)** 55:17 58:24 96:23 152:24 159:20 189:24 197:19
**badges(1)** 105:7
**baiera(1)** 10:33
**balance(21)** 20:3 20:4 20:11 21:19 25:21 28:19 29:6 29:10 29:16 29:23 31:7 31:9 38:7 49:20 49:25 71:7 76:6 167:9 167:13 175:23 196:9
**balance-sheet(9)** 114:1 114:2 115:21 116:19 119:21 120:4 121:7 121:12 121:17
**balanced(1)** 166:13
**balances(2)** 23:18 23:19

**bale(1)** 5:44
**balik(1)** 102:22
**banc(2)** 5:22 12:22
**band(1)** 69:25
**bang(1)** 28:3
**bank(10)** 6:22 6:26 8:25 9:8 12:30 13:5 13:5 14:4 127:17 134:12
**bank's(1)** 134:21
**banker(4)** 58:19 58:22 125:22 134:23
**bankers(3)** 100:3 124:17 124:20
**banking(2)** 56:12 133:18
**bankruptcy(31)** 1:1 1:19 17:8 47:25 54:24 56:4 56:4 62:1 69:20 82:25 83:2 106:19 121:20 129:7 139:4 142:20 142:20 157:9 161:4 170:3 170:6 177:2 177:8 178:14 183:7 196:23 201:17 202:6 218:21 218:23
**banks(10)** 68:2 68:3 72:24 112:11 125:2 126:22 127:10 133:17 137:6 173:3
**bar(4)** 101:3 101:4 122:8 122:10
**barclays(3)** 3:4 8:29 8:29
**barely(2)** 25:12 108:13
**bargaining(1)** 153:14
**barnes(1)** 5:10
**base(4)** 22:18 161:7 164:7 222:22
**baseball(4)** 46:25 47:9 47:10 115:7
**baseball(3)** 35:4 27:23 33:6 38:23 76:9 79:9 79:11 79:12 79:14 80:12 81:4 81:24 90:9 92:4 112:23 120:15 132:24 137:8 139:1 139:2 141:2 141:4 142:14 165:20 173:3 183:5 183:5 197:13 197:15 201:11 219:13
**bases(1)** 217:19
**basically(3)** 37:5 80:22 181:1
**basis(12)** 29:10 40:6 71:19 79:7 99:20 116:15 129:3 175:14 197:17 210:19 214:1 215:8
**bayou(1)** 142:9
**bear(5)** 23:21 41:21 134:19 160:3 169:8
**became(3)** 101:20 105:24 105:25
**because(97)** 20:12 21:14 24:5 25:16 25:20 26:18 30:12 30:16 30:20 31:8 32:7 33:14 38:16 38:17 39:9 44:12 45:8 45:9 45:14 45:17 46:18 48:17 49:21 50:18 53:11 53:17 54:8 54:11 54:19 55:5 56:17 57:23 60:22 61:9 61:9 61:20 62:14 63:3 63:11 63:20 65:6 66:4 68:2 79:16 80:16 81:1 85:8 85:12 87:13 94:5 94:9 94:11 97:7 102:22 114:16 115:12 129:5 129:8 133:7 136:8 139:9 144:9 145:17 152:12 158:8 159:25 166:17 167:11 170:12 170:20 170:24 180:18 182:13 183:22 183:24 184: 184:13 186:7 189:7 189:23 192:15 195:25 196:3 196:9 196:13 196:17 196:25 197:9 197:19 198:1 199:22 200:4 205:25 213:8 214:2 214:21 218:17
**become(1)** 58:25
**becomes(1)** 95:3
**becoming(1)** 55:9
**been(58)** 15:19 17:21 22:25 44:11 46:5 46:8 51:22 52:19 62:4 62:7 62:8 63:8 63:9 66:17 70:15 72:2 78:2 78:3 78:7 78:16 78:24 82:5 90:18 104:6 107:18 113:13 113:16 113:25 135:20 137:4 142:2 150:3 152:5 154:2 154:11 161:16 169:17 182:7 182:11 182:20 183:4 183:21 191:16 194:4 194:10 195:1 196:8 200:14 200:12 203:13 206:6 208:14 210:15 211:3 221:4 222:8 222:11 223:18
**before(75)** 1:18 15:25 16:3 17:6 22:8 25:7 29:12 36:24 45:10 46:14 51:23 52:8 52:9 55:7 55:8 58:9 71:12 71:13 71:21 71:22 72:13 78:24 78:25 84:8 84:13 88:17 88:18 92:13 95:8 95:15 96:10 96:17 99:17 99:25 101:15 104:18 106:6 108:2 108:24 109:15 118:1 118:5 119:12 128:8 129:13 138:7 143:1 144:20 145:15 146:7 150:22 151:12 159:18 159:19 160:18 161:17 161:25 162:7 162:18 163:1 166:22 166:22 168:6 176:19 182:21 184:14 186:11 187:5 195:11 202:2 202:25 206:2 209:14 210:1 215:19
**began(2)** 95:7 110:12
**begin(5)** 61:22 143:17 178:14 178:22 218:1
**beginning(10)** 48:16 59:8 86:11 92:24 100:11 100:15 102:12 194:10 196:15 196:19
**behalf(6)** 44:3 82:19 94:3 107:1 194:2 201:21
**behind(1)** 220:11
**being(33)** 49:21 90:13 97:8 100:4 100:7 111:22 113:9 115:5 125:13 126:11 126:13 136:25 141:4 143:14 143:14 147:3 151:6 154:17 155:2 157:4 157:13 162:2 162:3 182:5 183:5 186:18 193:8 195:10 218:13 219:23 219:24 222:9 222:23
**belabor(2)** 39:8 39:20
**belief(3)** 70:23 130:14 201:14
**believe(47)** 15:21 17:6 22:14 23:9 25:17 25:24 26:10 27:6 31:3 35:6 36:12 37:1 68:8 68:10 75:15 81:25 91:8 91:9 91:21 104:13 115:9 118:16 135:18 136:12 138:1 139:12 140:4 141:16 144:2 144:6 153:13 156:10 157:25 159:9 161:6 176:3 180:8 183:22 185:13 191:7 191:12 194:18 199:25 201:18 202:17 203:5 221:15
**believed(7)** 24:9 30:1 109:14 179:6 191:8 199:12 214:15
**believes(6)** 16:17 19:23 25:14 27:18 67:24 83:14
**bellack(3)** 198:15 198:16 198:19
**belonged(2)** 21:10 21:11
**below(4)** 107:3 120:25 127:11 192:24
**ben(1)** 8:30
**benchmark(1)** 210:22
**bendernagel(16)** 1:24 17:4 35:2 68:19 68:21 69:1 69:3 69:8 69:13 69:14 70:2 70:6 70:9 163:8 177:14 198:8
**bendernagel's(1)** 168:7
**bendernagle(1)** 198:8
**benefit(25)** 26:1 41:24 60:25 61:23 62:5 63:21 116:21 139:15 139:23 140:3 141:17 141:22 142:1 142:6 142:12 164:6 178:12 181:3 181:5 203:3 207:12 207:15 207:23 212:7 217:10
**benefited(1)** 142:25
**benefiting(2)** 137:6 207:19
**benefits(8)** 89:9 89:10 136:19 138:24 140:10 141:23 182:22 183:1
**benefitting(5)** 62:14 62:16
**bennett(47)** 2:13 16:19 16:23 16:25 26:3 26:6 35:8 35:12 36:3 44:2 44:3 45:5 47:4 47:14 47:17 50:13 64:24 68:18 70:19 70:20 75:22 115:7 128:9 129:1 129:4 129:21 136:7 139:17 140:19 141:11 141:21 142:25 143:6 180:12 180:15 184:21 191:14 202:8 203:21 203:22 206:11 208:18 208:20 212:13 213:25 216:17
**benson(3)** 4:39 9:35 223:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **bernstein**(4) 2:32 194:1 194:1 218:15 | | **board**(7) 5:28 99:16 115:3 146:20 164:4 176:21 177:17 | | **buck**(1) 28:4 | | **campbell's**(2) 128:10 128:21 | |

**bernstein**(4) 2:32 194:1 194:1 218:15
**beron**(24) 24:4 37:6 37:9 38:10 38:13 38:23 49:5 60:14 160:11 160:12 161:2 164:8 168:18 168:24 189:22 189:23 190:2 190:4 190:17 200:6 219:6 219:6 219:11 219:19
**beron's**(4) 37:18 38:25 59:22 164:17
**beron's**(1) 92:1
**best**(9) 18:23 44:14 56:8 61:11 83:23 88:14 97:19 147:15 205:21

**bet**(3) 31:18 36:5 65:1
**beth**(1) 13:18
**bets**(1) 52:22
**better**(15) 23:22 24:21 30:14 34:8 34:21 38:8 50:18 54:6 68:2 68:14 71:15 92:18 93:19 129:15 197:2

**between**(26) 16:8 25:21 38:1 38:4 43:16 58:7 67:7 67:14 68:6 68:11 82:18 92:7 121:2 142:11 155:1 158:15 168:4 176:4 176:7 187:6 190:6 200:8 203:6 203:19 214:1 221:2

**beyond**(6) 79:5 105:8 191:15 218:9 218:13 219:7

**bias**(1) 74:14
**bid**(2) 54:12 54:13
**bifferato**(1) 4:32
**big**(9) 28:20 31:7 31:8 32:7 32:13 41:19 138:11 193:21 193:21

**bigelow**(9) 9:18 106:4 106:14 106:17 107:13 186:19 186:20 186:22 187:16

**bigger**(3) 21:4 34:17 81:2
**biggest**(3) 62:18 71:4 83:19
**bill**(1) 4:28
**billion**(43) 20:6 21:1 29:1 29:7 30:17 32:4 32:25 33:17 34:9 34:18 34:24 35:5 35:6 43:9 57:13 90:6 90:12 90:21 95:2 115:25 116:9 123:19 129:10 133:25 134:1 137:25 138:2 138:4 138:8 142:3 143:13 151:19 156:18 156:19 175:5 176:2 202:13 202:23 202:25 213:3 215:7 217:23 218:8 220:1

**billy**(1) 21:14
**bilmes**(1) 11:4
**binder**(2) 62:19 221:15
**binding**(1) 182:15
**bit**(18) 24:22 46:3 46:18 46:19 46:20 49:3 49:14 49:19 66:16 85:21 87:12 88:21 167:2 180:20 186:11 198:25 204:12 222:2

**blabey**(1) 9:14
**black**(45) 23:10 72:1 72:3 72:3 72:8 72:8 72:17 72:22 73:13 74:1 74:12 76:12 76:18 76:22 94:19 94:20 95:24 103:14 104:4 104:19 106:23 106:25 107:9 120:20 121:3 121:9 121:16 128:16 132:24 160:11 160:15 160:14 162:4 162:9 164:9 164:15 165:21 168:23 168:24 190:2 199:21 199:25 200:9 200:15 219:14

**black's**(4) 163:9 163:20 164:22 165:24
**blacks**(1) 199:22
**black's**(3) 96:2 121:5 168:2
**blake**(1) 2:6
**blame**(1) 175:2
**blank**(3) 205:7 205:8 206:16
**blind**(1) 112:7
**blizzard**(1) 17:14
**block**(3) 5:16 8:41 221:21
**bloomberg**(3) 54:12 54:22 130:24
**blowing**(1) 55:21
**blown**(1) 113:2
**blue**(7) 111:16 111:25 112:6 122:15 122:15 122:16 143:11

**board**(7) 5:28 99:16 115:3 146:20 164:4 176:21 177:17
**bockius**(1) 12:22
**bond**(5) 53:15 53:18 54:6 129:15 205:4
**bondholders**(1) 91:18
**bonds**(4) 91:20 129:12 147:12 147:13
**book**(2) 54:19 86:18
**books**(1) 62:5
**bookshelves**(1) 86:13
**both**(35) 18:17 23:24 23:24 24:15 24:17 24:17 26:24 27:11 27:16 34:6 55:16 55:11 67:1 79:14 79:20 92:2 114:24 114:25 115:3 120:5 129:16 144:5 150:10 156:10 157:18 165:5 172:12 174:2 179:11 182:18 182:19 195:21 199:24 213:20 217:14

**bother**(1) 124:24
**bottom**(11) 40:15 40:24 48:10 99:23 99:25 101:25 105:22 109:12 127:4 177:23 188:3

**bottom-line**(2) 168:19 219:7
**bound**(6) 159:21 159:23 159:24 193:2 193:3 193:8

**bowden**(1) 4:28
**box**(5) 120:9 123:4 143:11 164:2 173:24
**boxes**(1) 168:3
**boy**(2) 86:5 165:21
**bradford**(5) 5:17 147:1 220:14 221:20 221:20

**brainer**(1) 45:21
**brandywine**(1) 2:7
**brass**(1) 10:42
**break**(10) 64:1 64:3 68:20 69:10 84:3 84:12 84:13 180:1 180:10 211:10

**breaks**(1) 50:18
**breakup**(4) 47:20 47:20 47:24 49:12
**brett**(1) 7:5
**brian**(1) 13:34
**brickley**(1) 11:8
**bridge**(4) 145:18 146:2 175:22 202:16
**bridge's**(1) 145:23
**brief**(21) 44:8 82:21 96:1 97:15 135:25 140:6 143:23 144:15 144:16 146:12 158:2 158:3 163:18 165:6 169:25 180:1 201:6 212:5 214:8 215:4 220:9

**briefed**(1) 182:2
**briefing**(2) 75:11 88:11
**briefly**(14) 60:22 85:22 98:20 121:19 127:7 128:9 144:2 191:1 191:25 199:21 209:7 220:17 221:9 222:23

**briefs**(16) 18:19 37:13 39:5 39:11 39:21 56:23 61:19 75:7 75:14 78:14 105:6 127:5 143:22 179:11 189:12 190:15

**brigade**(1) 12:18
**bright-line**(1) 142:12
**bring**(7) 85:23 131:16 205:13 207:16 207:18 207:24 209:17

**bringing**(1) 217:7
**brings**(1) 151:4
**broad**(2) 82:21 139:3
**broadcast**(3) 79:2 79:3 80:22
**broadcasting**(5) 52:3 53:6 53:8 53:11
**broader**(1) 69:19
**broadway**(1) 4:42
**broker**(1) 195:12
**brought**(3) 128:9 130:18 153:21
**brown**(2) 4:4 12:43
**browning**(1) 117:12
**bruce**(4) 2:13 44:2 180:15 209:7
**bryan**(2) 7:9 222:5
**bryant**(1) 4:23

**buck**(1) 28:4
**build**(1) 202:21
**building**(1) 2:7
**built**(1) 76:10
**bulk**(3) 19:19 33:1 219:21
**bullet**(2) 90:17 165:12
**bump**(1) 159:11
**bunch**(3) 16:23 30:21 208:12
**bundle**(2) 35:17 36:1
**buonome**(1) 5:29
**burden**(12) 87:18 87:19 87:21 87:22 88:7 88:9 88:12 89:2 89:14 135:14 138:21 160:17
**busath**(1) 2:34
**bush**(1) 3:30
**business**(21) 52:12 53:2 53:7 53:12 79:1 79:2 79:3 79:3 79:21 81:21 95:13 96:3 96:13 96:23 97:9 98:24 116:14 150:25 174:2 198:22 207:7

**businesses**(3) 52:24 176:17 187:22
**but**(184) 20:2 23:12 24:19 26:9 26:25 27:2 27:7 30:7 30:23 31:1 32:18 34:2 34:6 34:9 35:1 36:10 36:15 37:22 38:2 38:10 39:10 39:20 40:5 43:7 43:10 43:21 44:23 45:6 45:9 45:21 46:6 46:15 46:17 47:6 49:25 51:1 51:6 52:21 53:9 53:10 54:3 54:17 56:15 56:21 57:5 57:24 59:13 60:1 60:10 60:21 61:4 61:11 62:21 63:4 63:10 63:12 63:19 64:13 64:20 65:1 65:1 67:22 67:23 69:4 70:2 70:16 71:2 71:3 71:17 71:20 72:7 72:16 74:25 75:4 76:13 76:21 78:20 82:24 86:8 91:15 91:24 92:6 93:5 93:12 94:10 97:3 100:17 101:10 103:10 106:14 108:4 108:21 109:9 110:3 110:13 110:14 116:24 118:14 123:2 123:1 127:2 127:14 128:15 129:3 129:21 130:10 131:10 133:3 137:19 139:8 141:10 141:19 141:23 142:8 143:8 143:15 143:19 144:5 145:6 147:18 148:5 148:23 149:4 149:7 149:13 152:15 153:4 153:13 153:22 154:7 154:15 157:4 159:1 162:2 162:25 169:9 171:21 172:20 174:10 175:10 177:3 178:2 179:3 179:4 179:8 182:24 183:11 184:22 186:10 187:9 190:7 191:10 191:20 191:24 192:14 192:20 193:21 194:15 195:2 195:22 197:19 199:8 199:18 200:3 200:23 202:8 202:16 203:12 204:3 204:24 206:2 206:14 208:6 208:15 208:21 209:1 210:17 210:25 212:15 213:6 217:19 219:17 223:6 223:20

**buy**(1) 66:20
**buyer**(9) 116:17 116:17 117:11 117:11 117:23 118:8 118:11 118:18 118:21

**buyers**(2) 118:13 118:15
**buyout**(2) 135:4 135:12
**buyouts**(2) 132:23 191:17
**byun**(1) 11:12
**c.**"(1) 167:19
**calaman**(1) 224:11
**calculate**(1) 217:23
**calculation**(2) 143:19 166:12
**calculations**(3) 168:21 169:10 203:4
**calendar**(1) 11:12
**call**(4) 48:4 49:16 54:17 103:12
**called**(15) 23:18 23:19 46:25 47:2 63:23 85:13 86:14 93:19 102:7 117:1 135:9 140:22 160:15 160:16 163:14

**calls**(1) 109:3
**call'**"(1) 94:17
**came**(19) 32:20 57:20 58:5 67:2 76:9 76:11 81:20 84:3 89:24 92:11 100:24 101:19 108:12 132:11 142:21 144:20 159:19 220:1 223:6

**cames**(1) 157:10
**camp**(2) 64:20 64:25
**campbell**(1) 50:6

**campbell's**(2) 128:10 128:21
**can**(81) 16:1 21:12 22:16 24:18 26:20 27:8 28:23 28:25 31:10 34:21 35:15 36:21 43:7 43:24 46:14 52:7 55:25 56:9 58:10 59:22 60:25 63:18 64:7 65:15 72:6 73:5 76:11 83:15 89:21 97:19 100:17 100:25 109:17 109:21 112:12 115:23 119:13 121:14 123:6 123:8 123:9 125:6 130:7 130:20 131:10 133:10 135:25 138:1 138:17 140:1 142:12 143:11 143:16 144:22 150:17 155:3 155:12 162:1 165:19 166:4 168:12 168:15 169:9 171:20 174:25 176:21 178:16 193:17 202:17 207:1 207:15 210:17 211:11 211:14 211:15 216:1 216:5 216:7 218:22 222:16 222:22

**can't**(18) 33:5 40:7 48:4 52:6 54:9 58:11 65:25 70:16 139:23 140:2 140:2 141:21 155:4 182:15 184:6 196:18 199:24 202:7

**cancelled**(1) 205:2
**candice**(1) 7:11
**candidate**(1) 86:7
**candidly**(2) 97:12 109:2
**cannot**(4) 46:17 83:11 83:13 179:21 201:23 207:16 210:19

**cantigny**(1) 10:6
**canvassed**(1) 101:15
**canvassing**(4) 138:21 165:2 166:4 199:14
**canyon**(2) 13:13 13:13
**can't**(11) 108:22 113:23 207:7 207:11 207:12 207:18 207:24 208:6 208:23 210:15 210:17

**capacity**(2) 156:25 192:16
**capital**(41) 5:42 5:42 8:4 8:5 9:40 9:40 10:28 11:11 11:18 11:18 11:22 11:22 11:36 12:8 12:18 13:6 13:21 13:29 13:29 21:21 22:2 31:11 71:15 84:21 121:18 121:21 122:4 122:21 123:2 132:19 161:15 167:9 173:16 173:25 188:10 188:13 188:18 188:24 189:5 214:25 215:16

**captured**(1) 206:24
**care**(1) 183:25
**career**(1) 117:13
**careerbuilder**(1) 105:16
**careful**(1) 68:20
**carefully**(2) 25:1 53:4
**carey**(2) 1:18 177:24
**carlan**(1) 1:25
**carlston's**(1) 151:9
**carlyle**(1) 5:22
**carnac**(1) 70:4
**carol**(1) 5:44
**carried**(1) 125:8
**carroon**(1) 2:19
**carrying**(1) 147:3
**carson**(1) 69:24
**carval**(2) 13:43 13:43
**carved**(1) 163:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**case**(118) 1:5 9:26 14:4 17:10 18:7 27:17 29:8 36:20 40:16 44:25 47:8 50:5 50:17 51:2 55:9 56:4 56:5 56:7 56:7 57:9 60:25 61:1 61:2 61:9 61:11 61:21 61:21 61:21 62:8 62:10 62:19 62:23 64:5 66:4 67:11 67:18 67:25 68:6 72:22 72:23 72:23 72:25 75:21 76:1 76:2 76:4 76:7 76:18 76:18 76:18 76:19 76:19 76:19 76:22 85:4 90:11 106:19 106:24 106:25 112:14 116:4 119:4 119:23 128:10 128:11 130:16 135:11 139:11 140:13 140:20 140:22 141:8 142:9 142:10 142:14 142:14 142:19 148:13 153:7 153:2 155:8 155:20 157:10 157:15 157:15 160:10 161:17 164:3 166:24 179:13 179:11 183:12 183:13 183:17 184:5 184:7 185:3 186:10 189:6 190:21 200:12 200:12 200:1 200:17 203:25 204:21 205:9 205:14 206:3 206:12 206:13 206:14 206:16 207:16 214:7 214:9 214:13 219:9

**cases**(51) 23:17 51:1 61:20 61:22 62:10 62:12 62:19 62:22 66:2 66:7 72:23 73:2 75:23 76:2 76:3 82:24 89:8 105:5 111:5 128:12 128:22 132:22 133:19 139:17 140:5 140:5 141:25 144:21 149:6 157:10 161:13 163:14 171:22 171:23 178:15 178:23 182:7 183:4 188:24 189:2 189:3 189:5 201:2 207:17 207:18 207:23 212:14 212:1 214:8 216:19

**cash**(12) 49:22 80:6 81:10 105:14 105:17 106:1 123:10 175:21 215:13 215:13 215:17 218:9

**cash-flow**(2) 99:2 122:10
**cash-flows**(1) 102:18
**cashed**(1) 134:10
**cashman**(2) 12:34 12:34
**cast**(1) 195:18
**catchy**(2) 63:24 63:25
**categorically**(1) 128:20
**category**(4) 34:13 123:24 125:1 127:16
**cause**(4) 170:10 170:11 172:5 202:5
**caused**(3) 55:2 56:2 178:23
**causes**(7) 93:8 137:14 174:9 174:12 175:4 175:16 178:24

**cds**(13) 54:7 54:8 55:4 55:21 128:8 128:24 129:1 129:2 129:7 129:14 129:20 129:25 130:23
**ceding**(1) 87:12
**cent**(3) 66:25 71:10 193:6
**centerbridge**(3) 186:2 186:25 195:15
**centered**(1) 205:9
**central**(4) 17:10 111:1 203:24 206:22
**centrality**(1) 103:6
**cents**(3) 66:19 66:20 192:7
**ceo**(1) 107:21
**certain**(20) 4:22 19 44:3 44:18 45:8 45:17 46:16 47:1 52:19 134:20 140:9 142:15 143:3 181:2 181:3 185:25 212:2 213:19 219:22 220:19 223:7

**certainly**(34) 16:7 24:18 35:20 43:14 49:16 49:17 49:18 51:6 51:23 56:1 59:3 59:14 59:23 77:21 83:21 97:4 97:14 99:1 109:14 132:15 133:15 133:18 134:11 135:1 137:18 141:6 141:12 141:20 141:22 145:16 147:25 156:13 157:17

**certainty**(1) 59:3
**certificate**(1) 65:24 115:9
**certification**(2) 220:25 224:4
**certify**(1) 224:5
**cfo**(1) 100:22
**chachas**(3) 34:19 80:9 81:4
**chad**(2) 126:3 126:5
**chadbourne**(4) 3:18 6:10 153:20 153:22
**chaim**(1) 11:25
**chairman**(2) 149:17 150:22

**challenge**(5) 19:24 30:16 60:8 137:11 216:19
**challenged**(3) 77:5 164:18 165:23
**challenges**(4) 29:2 29:22 52:25 53:5
**chance**(14) 29:12 30:9 36:7 36:22 38:8 71:8 71:10 89:4 135:17 138:22 157:16 166:3 166:6 191:11

**chances**(3) 38:5 157:8 193:21
**chandler**(4) 9:18 99:15 99:23 109:1
**chaney**(1) 13:14
**change**(8) 82:2 96:21 115:11 134:5 144:18 201:3 210:12 218:8

**changed**(3) 97:9 119:13 168:4
**changer**(1) 17:24
**changes**(3) 79:9 82:2 168:12
**changes."**(1) 210:13
**changing**(1) 184:17
**channel**(2) 80:3 80:3
**chaos**(1) 96:22
**chapter**(3) 1:8 175:14 178:21
**character**(1) 145:3
**characterization**(1) 192:21
**characterized**(1) 187:7
**characterizing**(1) 124:10
**charity**(1) 145:1
**chart**(62) 22:4 22:8 22:14 22:16 23:6 23:13 26:21 48:21 50:7 53:1 53:14 53:17 53:24 54:20 54:22 55:10 55:14 55:18 55:23 55:24 56:3 56:11 59:17 60:21 73:5 73:5 73:11 76:10 76:20 79:25 95:6 95:9 95:14 98:24 99:6 101:2 101:11 101:25 102:13 111:7 120:14 122:8 122:23 129:21 129:23 143:5 143:16 164:16 165:23 180:15 180:20 181:17 182:16 200:2 200:2 203:2 204:24 204:24 205:5 209:7 217:24

**chart's**(1) 53:12
**charted**(1) 164:8
**charts**(5) 45:7 52:14 79:19 171:13 204:1
**chase**(2) 8:25 12:30
**chasen**(2) 11:15 11:15
**check**(1) 124:12
**chicago**(4) 1:28 1:41 5:19 86:15
**chief**(2) 100:5 176:22
**children**(1) 64:20
**choice**(1) 83:23
**choose**(3) 40:3 50:23 87:4
**chooses**(1) 46:10
**chose**(6) 42:13 52:17 150:12 175:3 175:3 205:18

**chosen**(1) 87:3
**christine**(1) 9:37
**chung**(1) 6:27
**circle**(1) 130:20
**circled**(3) 120:16 121:14 129:24
**circuit**(12) 50:4 104:22 104:24 110:24 111:2 113:19 114:4 114:7 114:17 119:4 182:2 214:8
**circular**(1) 125:7
**circulating**(1) 51:21
**circulation**(3) 95:6 95:7 95:21
**circumstances**(8) 36:1 114:11 126:18 139:14 140:16 184:3 212:22 214:10

**citadel**(1) 10:16
**cite**(3) 111:4 117:3 201:2
**cited**(10) 66:2 124:14 127:9 129:5 130:25 140:5 148:12 157:10 188:1 188:4
**citi**(8) 11:40 125:16 125:21 125:22 126:9 126:10 126:14 126:17

**citibank**(5) 6:30 124:10 124:24 133:21 194:14

**citigroup**(4) 104:5 125:19 126:5 126:7
**citing**(1) 66:7
**citi"**(1) 126:12
**claim**(45) 27:6 27:6 27:21 27:24 28:11 28:16 33:4 33:12 36:22 41:3 42:12 63:12 65:17 65:18 67:21 93:4 136:3 136:9 136:23 137:14 138:14 138:16 139:5 152:3 157:5 158:2 159:7 159:8 159:10 159:14 160:19 165:13 191:8 191:11 192:2 192:4 192:21 192:22 192:23 193:22 208:11 209:15 209:22 210:6 212:6

**claimants**(3) 158:13 192:2 193:5
**claimed**(1) 159:12
**claiming**(2) 63:14 152:20
**claims**(135) 15:18 15:25 16:20 16:21 16:24 17:5 17:18 18:9 18:17 18:21 18:24 19:2 19:14 19:18 20:13 24:11 24:13 24:24 25:4 25:23 25:24 25:24 25:25 26:9 26:13 28:1 28:4 28:14 29:3 31:5 32:23 34:24 35:10 35:21 36:5 36:15 36:16 37:9 37:21 39:2 39:23 39:25 40:17 40:18 40:19 40:22 41:10 41:13 41:19 41:24 42:21 42:22 57:8 62:14 63:6 63:7 64:16 65:3 66:21 67:23 68:1 68:2 70:13 71:1 74:24 75:3 75:5 87:10 87:16 88:13 88:14 88:18 88:18 89:7 89:14 90:5 90:18 91:23 92:8 92:10 93:5 93:7 98:7 135:17 137:12 137:20 138:2 144:14 149:20 150:8 151:17 152:7 152:14 155:19 157:8 157:16 158:12 158:2 159:16 161:7 163:10 163:24 166:1 166:3 166:5 177:3 177:25 178:12 180:24 181:2 181:4 181:5 181:10 181:14 181:17 182:9 189:17 190:1 190:11 190:23 191:4 191:7 192:9 192:16 192:19 193:1 193:11 193:20 203:9 212:6 213:4 216:23 219:13 220:22

**claire**(1) 9:19
**clark**(1) 5:18
**class**(14) 42:3 42:11 83:12 83:13 158:2 158:3 158:8 158:12 179:10 183:16 183:18 183:23 184:6 213:10

**class's**(1) 160:5
**classes**(3) 42:8 42:24 183:15
**classified**(5) 57:18 58:2 105:16
**claw**(1) 142:16
**clawback**(1) 162:22
**cleanse**(1) 151:3
**clear**(23) 17:13 19:23 38:3 47:19 66:24 80:10 95:3 114:17 121:6 121:21 122:6 122:13 123:6 127:12 131:2 136:3 141:5 144:20 177:10 182:4 182:10 208:10 214:9

**clearly**(13) 32:4 35:4 50:8 88:13 96:3 99:12 100:24 107:25 119:4 139:23 181:12 188:21 195:22

**cleary**(1) 2:6
**clerk**(4) 15:2 69:12 84:18 211:18
**clerks**(1) 62:17
**client**(4) 149:10 149:12 149:13 184:15
**clients**(3) 139:19 154:8 168:25
**cliff**(1) 75:6
**clip**(1) 177:19
**clock"**(1) 211:23
**close**(30) 20:9 20:20 27:22 30:5 30:7 34:23 35:5 46:7 48:15 48:25 49:16 51:13 58:10 84:11 94:17 96:10 99:17 101:25 103:16 108:24 109:19 109:25 110:17 217:24 110:12 130:3 130:22 148:3 151:19 217:24

**closer**(5) 32:4 32:4 49:25 95:11 121:4
**closest**(1) 107:4
**closing**(13) 15:10 51:17 52:16 54:9 84:23 95:18 109:11 133:15 186:3 187:6 199:10 204:15 204:16

**closings**(1) 15:22
**coalition**(2) 15:17 15:21

**cobb**(1) 3:11
**code**(15) 62:1 121:20 135:7 140:11 142:13 142:18 161:15 183:8 183:8 183:10 184:11 208:3 208:7 208:23 217:5

**code's**(1) 209:1
**cohen**(2) 124:11 134:25
**coincide**(2) 48:19 48:19
**cole**(2) 1:31 223:1
**collapse**(21) 20:8 20:10 20:12 20:14 20:18 28:22 28:23 29:10 29:12 29:16 29:17 29:24 30:8 31:7 39:14 49:1 49:6 49:16 49:21 75:22 75:24

**collapsed**(4) 20:5 29:5 48:5 48:24
**collapsing**(8) 45:11 45:20 111:12 113:24 114:6 114:15 115:6 115:10

**colleague**(1) 214:19
**colleagues**(3) 146:20 205:12 211:21
**collect**(1) 88:16
**collected**(1) 57:2
**collections**(1) 223:17
**collective**(1) 213:15
**collectively**(1) 128:2
**colleen**(1) 7:26
**color**(1) 112:7
**colorability**(1) 137:12
**colorable**(1) 137:20
**colorful**(1) 87:3
**column**(2) 72:7 143:18
**combination**(1) 79:14
**combined**(2) 90:21 167:18
**come**(42) 15:19 16:1 22:23 23:4 26:16 31:12 33:19 35:5 43:5 51:9 56:9 59:23 61:23 62:18 62:21 63:24 68:9 70:7 71:17 72:20 73:3 73:15 73:17 113:21 115:19 138:6 161:21 163:16 165:16 166:8 166:9 184:24 185:5 194:3 194:19 196:6 202:22 202:25 203:25 210:10 215:19 215:20

**comes**(18) 23:7 27:22 36:14 49:1 50:7 50:22 67:22 98:9 98:16 139:7 143:10 150:4 152:6 165:6 173:4 189:25 196:9 211:24

**comfort**(2) 125:13 155:17
**coming**(7) 72:9 81:6 157:3 182:23 194:7 195:17 217:22

**comment**(3) 141:8 162:15 199:20
**commentary**(1) 156:17
**commented**(2) 67:12 151:14
**commenting**(2) 67:13 147:12
**comments**(10) 85:7 91:7 135:14 154:25 156:2 172:11 172:18 179:4 219:6 221:23

**commercial**(2) 148:14 182:8
**commission**(1) 201:3
**commissioner**(1) 47:7
**commitmen**(1) 114:25
**committee**(51) 3:10 5:27 6:9 13:38 15:7 15:23 16:17 25:1 25:2 25:13 27:17 27:24 31:18 41:18 42:23 61:10 61:11 68:4 89:25 91:16 92:17 96:8 125:24 137:3 137:12 146:14 146:16 150:16 150:18 150:22 151:2 151:4 151:5 151:10 151:16 151:23 152:2 153:19 153:23 159:17 159:24 162:14 162:17 162:25 164:3 175:1 175:7 177:18 185:2 193:9 206:19

**committee's**(2) 24:23 146:1
**committees**(3) 26:10 42:17 61:13
**committee's**(4) 25:6 25:13 25:19 25:22
**common**(1) 93:4
**companies**(17) 56:18 56:20 57:5 79:12 79:12 79:13 79:15 80:2 80:12 80:23 81:5 81:6 118:15 132:18 171:9 222:11

| Word | Page:Line |
|---|---|
| **company**(77) | 1:8 1:38 7:35 9:22 10:41 11:7 35:8 58:19 58:24 62:11 65:14 69:20 81:9 81:18 82:11 82:22 82:22 83:11 83:12 83:14 86:8 95:2 97:11 106:20 107:13 109:14 110:3 110:18 114:22 116:6 121:22 123:3 123:8 123:9 123:18 123:19 125:9 128:14 130:11 130:14 130:17 131:15 131:20 133:25 134:1 138:3 142:6 144:4 144:8 146:9 146:22 147:15 147:18 150:1 150:3 150:11 150:16 150:21 151:11 156:4 158:14 159:4 159:8 177:2 177:8 180:24 181:10 194:17 196:22 198:21 201:16 202:204:19 215:7 217:16 218:7 218:22 |
| **company's**(3) | 80:16 135:22 194:17 |
| **company's**(3) | 104:10 104:13 108:10 |
| **company"**(1) | 124:11 |
| **comparable**(11) | 56:1 56:18 79:11 79:12 80:2 80:2 80:12 80:23 80:24 81:6 81:7 |
| **compare**(4) | 26:21 90:16 121:1 216:7 |
| **compared**(3) | 28:4 99:18 113:4 |
| **compares**(1) | 99:7 |
| **comparison**(2) | 113:14 186:5 |
| **comparisons**(3) | 187:25 188:1 |
| **compelled**(1) | 100:8 |
| **compelling**(3) | 59:11 59:12 214:10 214:15 |
| **compels**(2) | 121:6 128:6 |
| **compensation**(1) | 10:10 |
| **competent**(1) | 190:5 |
| **competing**(1) | 46:4 |
| **complain**(1) | 61:15 |
| **complaining**(1) | 174:20 |
| **complaint**(8) | 137:3 137:15 159:17 162:17 163:1 164:4 206:21 207:2 |
| **complaint."**(1) | 206:20 |
| **complete**(3) | 26:25 50:12 53:16 |
| **completely**(6) | 27:12 48:22 60:16 99:25 184:2 205:23 |
| **completion**(1) | 129:23 |
| **complex**(3) | 17:15 161:24 169:1 |
| **complexity**(1) | 18:14 |
| **complicated**(1) | 18:7 |
| **component**(2) | 197:23 197:25 |
| **components**(1) | 197:23 |
| **comprehensive**(1) | 18:20 |
| **comprise**(1) | 164:22 |
| **comprised**(1) | 158:12 |
| **compromise**(5) | 17:15 42:18 88:14 192:25 192:25 |
| **conaway**(1) | 2:4 |
| **concede**(2) | 206:1 217:13 |
| **conceded**(4) | 108:16 161:3 190:7 200:23 |
| **conceding**(1) | 191:3 |
| **conceived**(4) | 95:1 100:2 110:10 115:16 |
| **concept**(2) | 145:13 176:18 |
| **concern**(3) | 126:9 126:16 127:25 |
| **concerned**(2) | 125:17 149:5 |
| **concerning**(6) | 50:10 58:18 94:10 130:8 181:6 181:14 |
| **concerns**(1) | 108:21 |
| **conclude**(11) | 22:1 27:24 40:13 40:15 112:22 128:5 185:14 189:18 193:19 199:9 216:10 |
| **concluded**(18) | 19:8 19:12 25:7 31:13 40:20 40:23 72:8 73:7 73:7 74:4 94:20 112:17 113:16 129:13 169:11 188:5 188:1 220:8 |
| **concludes**(3) | 111:11 120:1 223:25 |
| **concluding**(1) | 179:2 |
| **conclusion**(32) | 27:20 28:2 29:11 46:17 55:9 57:25 58:2 61:24 81:20 98:9 112:21 113:1 114:22 115:22 120:6 121:2 121:6 121:12 121:12 122:21 123:23 123:25 125:128:7 136:2 185:21 188:12 214:25 215:9 215:20 215:23 219:16 |
| **conclusions**(28) | 17:22 19:3 37:9 37:22 39:8 40:3 40:7 41:12 75:4 92:2 98:18 116:1 120:6 143:24 143:24 144:17 163:20 165:25 168:20 185:5 189:14 190:20 202:2 214:13 219:7 219:10 220:21 221:3 |
| **concrete**(1) | 89:10 |
| **condemned**(1) | 58:5 |
| **condition**(3) | 47:11 106:15 106:15 |
| **conduct**(4) | 150:8 193:14 196:15 196:19 |
| **conducted**(1) | 151:12 |
| **conducting**(1) | 114:10 |
| **confess**(2) | 43:21 146:5 |
| **confidence**(5) | 40:18 58:2 108:16 148:6 150:15 |
| **confident**(2) | 219:1 219:2 |
| **confined**(1) | 106:18 |
| **confirm**(4) | 18:3 83:11 181:21 220:5 |
| **confirmability**(1) | 181:7 |
| **confirmable**(2) | 85:11 213:20 |
| **confirmation**(3) | 45:24 87:1 181:13 |
| **confirmed**(5) | 170:22 171:3 173:11 173:19 196:22 208:16 218:25 |
| **conflict**(1) | 153:20 |
| **conflicting**(5) | 170:9 170:13 171:7 |
| **conflicts**(2) | 150:11 150:20 |
| **conformity**(1) | 213:10 |
| **confront**(4) | 59:6 62:21 63:4 189:14 |
| **confronting**(1) | 52:25 |
| **confuse**(1) | 191:10 |
| **confused**(1) | 66:22 |
| **confusing**(1) | 83:4 |
| **congressional**(1) | 184:2 |
| **conjure**(1) | 24:19 |
| **conlan**(12) | 73:4 69:19 82:15 82:18 82:19 84:5 179:5 179:20 201:20 201:21 201:21 217:21 |
| **connect**(1) | 209:17 |
| **connected**(2) | 46:16 48:5 |
| **connection**(10) | 45:23 77:15 158:19 178:8 183:6 191:16 195:25 196:6 196:8 196:16 |
| **connections**(6) | 38:1 38:4 38:9 190:6 190:8 190:9 |
| **consensual**(1) | 83:20 |
| **consensus**(2) | 97:24 103:20 |
| **consenting**(2) | 179:10 213:10 |
| **consents**(1) | 139:21 |
| **consequence**(6) | 70:22 75:15 80:7 80:19 105:2 110:20 |
| **consequences**(4) | 57:14 105:1 114:12 |
| **conservative**(2) | 90:9 112:13 |
| **consider**(16) | 21:24 23:2 31:14 77:15 87:17 87:18 93:2 118:17 118:20 150:11 170:22 171:4 171:18 171:20 171:24 177:25 |
| **considered**(5) | 25:1 114:2 118:10 171:22 210:1 |
| **considering**(1) | 130:9 |
| **considers**(1) | 101:1 |
| **consistent**(4) | 17:21 42:20 116:3 159:25 |
| **consolidated**(1) | 163:22 |
| **constituencies**(2) | 90:1 203:8 |
| **constituency**(1) | 157:19 |
| **constitutes**(1) | 113:3 |
| **constitute"**(1) | 114:7 |
| **constructive**(11) | 20:1 20:2 21:20 28:17 31:9 31:10 38:6 38:9 110:23 164:1 196:4 |
| **consult**(1) | 211:10 |
| **consulted**(2) | 74:15 79:2 |
| **consulting**(1) | 221:5 |
| **consummate**(1) | 198:5 |
| **contained**(2) | 105:20 202:14 |
| **contains**(2) | 172:2 181:23 |
| **contemplate**(2) | 107:5 174:3 |
| **contemplates**(2) | 174:1 174:8 |
| **contemporaneous**(9) | 56:12 106:24 120:23 121:5 124:4 124:23 125:10 131:8 131:12 |
| **contemporary**(1) | 186:5 |
| **content**(1) | 78:19 |
| **contention**(2) | 185:25 |
| **contest**(1) | 94:11 |
| **contested**(1) | 120:1 |
| **contesting**(1) | 176:15 |
| **context**(10) | 50:3 55:19 57:7 71:8 104:24 111:5 138:20 142:2 171:20 179:15 |
| **continental**(1) | 214:9 |
| **contingencies**(2) | 45:17 49:12 |
| **contingency**(2) | 45:21 58:6 |
| **continue**(2) | 110:5 131:20 |
| **continued**(18) | 2:2 3:2 4:2 5:2 6:3 7:2 8:2 9:2 10:2 11:2 12:2 13:3 14:2 72:17 103:23 119:11 130:14 199:9 |
| **continuing**(3) | 109:22 177:21 178:13 |
| **continuously**(1) | 46:8 |
| **contracts**(1) | 129:7 |
| **contractual**(1) | 182:4 |
| **contractually**(4) | 42:10 159:21 193:2 193:8 |
| **contradicted**(1) | 155:11 |
| **contradicting**(1) | 210:11 |
| **contrary**(5) | 153:5 196:7 200:25 213:21 213:22 |
| **contrast**(5) | 17:23 19:22 27:8 170:11 171:3 |
| **control**(13) | 47:9 68:13 81:9 131:16 133:24 134:2 134:5 150:6 170:12 172:9 180:12 195:10 195:13 |
| **controlled**(2) | 81:8 146:18 |
| **controller**(1) | 108:25 |
| **controversy**(4) | 46:11 178:17 182:20 |
| **conundrum**(1) | 197:10 |
| **convenience**(1) | 223:9 |
| **conventional**(1) | 56:16 |
| **conversation**(1) | 100:8 |
| **conversations**(1) | 209:8 |
| **converted**(2) | 62:8 62:14 |
| **conveyance**(6) | 19:14 37:25 174:5 178:11 196:4 208:8 |
| **convinced**(1) | 206:13 |
| **convincing**(1) | 160:17 |
| **cooperstown**(1) | 11:18 11:18 |
| **copies**(2) | 84:22 84:25 |
| **copy**(1) | 54:21 |
| **core**(2) | 79:21 170:12 |
| **corning**(1) | 184:1 |
| **corporate**(4) | 33:15 127:22 132:25 173:25 |
| **corre**(2) | 12:4 12:4 |
| **correct**(7) | 50:13 79:13 80:8 112:5 118:8 223:2 224:5 |
| **corrected**(1) | 122:17 |
| **corrective**(1) | 172:15 |
| **correctly**(2) | 70:9 206:11 |
| **correlations**(1) | 219:16 |
| **correspondenc**(1) | 150:23 |
| **cost**(1) | 199:12 |
| **costs**(2) | 123:9 174:10 |
| **could**(49) | 27:18 30:23 34:16 36:23 40:2 41:9 45:2 56:2 58:9 78:19 78:19 81:13 89:18 94:15 97:23 99:20 100:1 101:10 125:8 127:3 128:13 130:15 142:17 143:13 147:2 149:2 150:15 153:17 155:17 158:20 163:7 163:22 177:15 179:7 180:1 180:12 180:14 180:14 182:24 188:17 191:8 201:25 203:3 203:22 203:23 205:7 208:1 215:7 216:10 216:11 |
| **couldn't**(3) | 22:1 45:5 162:23 |
| **couldn't**(1) | 106:17 |
| **counsel**(13) | 15:6 35:2 38:24 149:4 150:11 153:22 170:2 185:2 207:3 219:9 220:25 221:5 221:8 |
| **counsel's**(3) | 38:15 190:13 190:15 |
| **counselor**(1) | 173:16 |
| **count**(7) | 29:7 137:5 137:7 137:9 180:5 183:17 213:4 |
| **counted**(3) | 20:6 20:16 78:13 |
| **counterbalance**(1) | 199:13 |
| **countervailing**(1) | 160:6 |
| **country**(2) | 92:12 |
| **counts**(1) | 80:6 |
| **couple**(25) | 17:1 39:4 39:10 52:13 79:4 79:19 80:11 82:12 82:13 96:18 96:24 111:4 111:9 127:1 139:2 154:25 159:4 185:16 186:14 187:8 198:9 199:6 211:3 216:16 221:22 |
| **couri**(1) | 11:19 |
| **course**(54) | 20:11 21:12 23:10 43:7 43:11 44:8 45:9 45:14 45:16 47:5 52:2 52:3 53:7 53:16 53:21 63:16 63:20 63:22 64:9 77:24 85:2 88:10 90:2 90:13 90:23 109:5 111:1 113:13 119:14 119:17 124:22 130:13 130:15 133:22 134:8 136:11 136:22 137:5 138:1 139:7 147:16 148:2 148:10 150:1 156:13 160:25 168:1 177:22 182:21 185:13 188:2 194:20 210:14 215:15 |
| **courses**(1) | 136:13 |
| **court**(216) | 11:11 15:3 15:8 15:11 15:15 15:16 15:18 15:22 15:25 16:1 16:3 16:5 16:11 16:15 16:18 16:19 16:22 17:12 18:1 18:3 18:5 18:6 18:11 18:13 18:23 19:1 19:14 20:3 20:10 20:2 21:6 21:23 22:1 22:22 23:1 23:7 24:10 25:7 25:16 27:8 27:13 27:25 28:1 28:18 29:13 29:21 31:13 31:16 35:25 36:8 36:24 37:6 37:20 37:21 38:12 40:9 40:13 41:11 41:21 42:6 42:22 43:2 43:4 43:11 43:12 43:15 43:25 46:14 47:3 47:12 47:25 49:8 50:7 50:11 59:23 60:9 61:4 64:22 66:17 68:18 68:23 69:2 69:6 69:9 70:4 81:2 82:17 84:2 84:6 84:11 84:16 84:16 84:24 86:3 86:20 87:1 87:4 87:7 87:18 88:7 88:17 88:18 89:5 92:1 104:22 105:3 108:2 109:16 112:4 112:22 113:18 114:9 114:10 114:13 115:19 132:20 135:13 137:16 139:4 139:11 140:1 140:12 141:3 142:22 143:23 144:23 145:3 145:10 149:2 149:10 150:15 150:17 150:17 152:10 153:2 153:9 153:17 154:1 154:23 155:14 155:17 155:22 161:4 162:19 163:15 165:10 166:10 168:15 169:3 169:5 169:8 169:15 169:20 173:13 174:7 174:8 174:25 179:24 180:3 180:10 184:18 184:25 185:9 186:18 188:17 189:15 189:15 189:17 189:18 190:24 190:25 191:14 196:20 198:7 198:11 203:2 206:9 208:1 208:14 208:19 210:1 211:8 211:12 211:15 211:19 211:25 212:3 212:19 213:1 213:13 213:24 220:6 220:10 220:11 220:15 221:9 221:12 221:17 221:19 222:3 222:13 222:17 222:22 223:3 223:6 223:13 223:21 223:25 224:1 |
| **court's**(4) | 43:22 174:14 195:22 |
| **courtesy**(1) | 223:9 |
| **courtney**(1) | 13:6 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**courtroom**(4) 1:10 45:22 173:3 205:14

**courts**(16) 35:25 101:12 104:25 111:5 128:21 139:20 140:8 140:15 140:16 140:1 161:20 162:6 183:20 183:21 191:21 213:5

**court's**(5) 85:2 87:1 221:4 221:8 221:24

**cover**(3) 86:17 121:19 196:11

**covered**(1) 187:11

**covering**(1) 54:23

**crafting**(1) 139:11

**cram**(5) 83:13 83:22 179:7 201:23 202:17

**crammed**(3) 83:15 179:21 202:7

**crazy**(1) 91:13

**create**(6) 171:15 171:18 175:22 176:16 204:17 204:18

**created**(6) 74:17 76:1 172:1 173:5 178:15 184:8

**creates**(1) 170:4

**creating**(2) 205:19 210:18

**creation**(1) 206:23

**creative**(2) 209:14 209:16

**credence**(1) 189:7

**credentials**(3) 161:1 161:7 162:4

**credible**(11) 19:25 28:9 28:12 28:15 35:7 47:11 98:10 123:13 128:4 162:5 195:24

**credit**(20) 12:7 44:3 44:5 68:4 116:9 129:11 178:5 178:8 178:10 178:22 179:7 181:25 194:25 195:6 204:8 204:13 204:14 210:2 210:20 210:22

**creditor**(15) 26:18 65:11 65:16 88:20 90:1 93:2 155:8 155:9 158:2 172:12 172:13 172:17 172:23 174:4 174:21

**creditor's**(1) 145:20

**creditor/noteholden**(1) 148:25

**creditors**(67) 3:11 6:10 15:7 19:16 25:10 25:18 26:19 27:12 41:17 41:20 41:23 42:5 42:15 42:25 60:23 60:24 60:24 60:24 61:14 61:23 62:13 64:15 66:20 66:20 88:24 89:20 89:25 90:6 91:9 110:21 114:12 133:5 134:21 134:22 134:24 135:3 135:6 136:8 136:14 138:9 138:13 138:13 138:25 138:14 151:5 156:4 156:7 157:4 157:12 158:22 160:7 170:13 175:1 175:7 175:22 176:5 176:11 177:8 178:13 178:25 182:4 182:9 192:6 203:11 207:12 213:3 216:24

**creeps**(1) 25:12

**crisis**(4) 51:24 95:3 98:21 99:12

**critical**(7) 21:14 32:19 38:4 39:12 157:2 182:19 190:7

**criticism**(8) 53:24 60:15 70:16 78:7 174:24 190:1 190:4 190:4

**criticisms**(2) 70:15 74:12

**critique**(4) 72:3 79:7 79:8 168:22

**cross**(9) 37:18 38:3 38:12 46:2 46:9 97:22 120:8 164:19 213:14

**cross-examination**(4) 96:2 116:23 145:22 146:4

**crucial**(1) 45:15

**crushing**(1) 123:18

**cubs**(6) 21:9 47:13 47:15 57:17 57:19 58:1

**curious**(1) 56:15

**current**(1) 107:21

**curry**(1) 133:17

**curve**(1) 48:13

**cushion**(2) 57:24 134:21

**customers**(1) 83:5

**cut**(1) 123:9

**cutler**(1) 10:36

**cuts**(3) 102:25 114:21 119:23

**cutting**(3) 18:13 55:22 199:13

**cybergenics**(1) 148:13

**cynicism**(1) 194:3

**daily**(1) 129:3

**damage**(1) 151:19

**damian**(1) 2:33

**damning**(1) 166:8

**daniel**(5) 3:12 4:22 6:23 12:39 173:15

**dare**(1) 152:5

**data**(7) 1:46 48:9 52:11 56:17 56:20 57:2 100:16

**date**(10) 78:17 82:11 174:23 175:15 175:24 176:6 176:8 176:11 186:3 224:11

**dave**(1) 7:38

**david**(16) 3:19 4:19 5:11 5:17 5:35 7:20 9:9 9:14 9:42 11:15 11:15 13:22 84:20 132:6 180:8 221:20

**davis**(4) 2:29 6:31 8:25 194:2

**day**(12) 5:28 16:12 26:2 43:11 46:6 70:7 81:10 81:11 86:3 154:11 158:25 173:15

**days**(7) 96:24 109:19 109:25 119:12 166:22 168:4 168:11

**dbtca**(1) 3:36

**dcf**(1) 80:16

**dcl**(116) 15:14 17:11 18:3 19:3 22:15 22:17 23:23 24:21 28:4 33:5 34:11 34:14 34:18 36:23 37:1 37:8 37:10 40:6 40:12 41:6 41:25 42:4 42:5 42:16 43:2 45:24 67:15 69:17 70:10 70:11 71:23 72:13 72:16 73:9 73:24 74:5 74:9 77:10 77:20 83:14 83:22 84:14 85:8 85:25 87:20 88:3 92:9 94:11 112:18 131:9 135:25 137:25 138:21 141:18 154:13 154:18 156:22 157:2 158:2 158:16 158:25 160:5 160:7 160:22 162:3 163:16 165:6 168:22 170:4 170:9 170:11 170:12 170:14 170:21 171:21 172:2 172:2 172:4 172:7 172:16 172:16 172:18 172:22 173:6 173:7 173:10 173:22 173:25 174:3 174:7 174:18 175:9 176:20 180:2 180:15 185:14 189:18 192:11 193:3 193:1 194:9 196:22 197:14 198:4 198:5 200:18 201:15 203:8 203:17 203:18 205:8 209:23 215:12 217:13 220:4 221:15

**dcl's**(3) 171:1 174:19 176:15

**dcls**(1) 213:21

**dcl's**(2) 102:23 212:16

**deadline**(1) 52:16

**deal**(32) 31:8 32:7 57:1 86:14 96:8 97:1 97:2 98:15 114:23 114:23 124:2 124:11 124:21 125:3 125:14 125:22 126:3 126:18 127:6 128:1 131:15 131:18 135:1 135:6 146:22 149:18 154:17 154:20 154:21 160:1 179:4 202:16

**deals**(3) 45:11 97:4 126:10

**dealt**(2) 185:17 185:17

**dear**(1) 125:25

**dearborn**(1) 1:27

**debate**(5) 12:9 121:23 135:20 149:3

**debenture**(3) 4:32 9:35 223:16

**debt**(47) 20:6 20:16 21:1 21:23 21:24 22:11 23:24 27:10 27:16 29:1 29:7 30:17 31:14 33:13 33:15 33:18 33:19 57:13 58:12 58:23 62:8 71:4 71:9 71:17 95:2 114:2 119:5 121:22 121:24 122:8 122:11 126:23 127:11 127:22 133:16 134:18 135:23 136:20 140:23 142:5 173:25 175:2 188:19 204:17 207:22 215:8 216:22

**debtor**(28) 75:13 82:20 89:3 142:23 149:4 149:9 149:14 149:20 174:16 174:19 179:1 179:19 183:5 183:9 183:9 183:10 183:10 183:11 183:11 183:18 183:24 183:24 195:10 195:12 202:10 202:15 222:5 222:9

**debtor's**(1) 138:2

**debtors**(71) 1:12 1:23 15:23 17:5 17:6 17:7 26:1 35:2 42:23 69:14 69:17 70:10 70:23 71:25 85:12 85:25 89:13 89:13 94:21 95:2 105:2 106:16 107:1 145:23 145:24 146:13 146:14 146:17 147:23 148:5 150:5 150:13 155:10 159:7 159:9 159:11 162:12 170:2 174:15 174:17 175:1 175:7 175:13 175:19 175:23 176:1 176:5 176:10 176:17 176:19 176:22 177:11 178:3 178:5 178:9 178:14 178:19 178:20 179:6 179:6 180:24 181:10 192:22 198:9 201:21 205:1 209:11 213:9 216:22 216:23 218:9

**debtors'**(8) 90:4 90:19 95:24 100:3 105:1 131:16 209:23 216:22

**debtor's**(1) 94:19

**debts**(4) 21:21 22:2 31:11 167:10

**decades**(1) 173:3

**december**(1) 119:20

**decide**(8) 43:16 43:17 55:12 203:6 203:14 203:16 212:2 212:4

**decided**(9) 81:10 81:11 110:14 203:12 203:12 205:20 209:9 212:14 212:22

**decidedly**(1) 119:3

**decider**(1) 62:23

**deciding**(3) 27:23 29:15 114:13

**decision**(6) 38:2 82:5 148:13 161:5 197:17 199:13

**decisions**(6) 48:1 52:12 88:8 89:12 139:20 156:7

**decisive**(1) 57:3

**deck**(1) 198:12

**declaration**(3) 107:10 120:22 121:5

**decline**(21) 95:8 95:10 95:15 95:16 95:20 95:25 96:4 96:15 98:3 99:4 99:9 99:10 99:20 100:14 100:19 101:9 107:5 123:16 198:17 198:23 199:14

**decline."**(1) 97:25

**declined**(2) 63:3 161:4

**declines**(3) 52:19 52:19 53:4

**declining**(4) 65:14 100:12 125:17 128:1

**deducting**(1) 215:13

**deemed**(2) 42:13 209:24

**deeper**(1) 56:10

**default**(4) 127:22 127:23 129:6 129:11

**defeat**(1) 26:10

**defeats**(1) 219:18

**defendants**(1) 10:11

**defense**(5) 135:22 136:3 138:17 148:8

**defenses**(6) 16:21 26:5 26:9 26:11 71:13 71:23 76:9 152:14

**defer**(1) 43:23

**deference**(1) 98:8

**defiant**(1) 146:25

**deficiencies**(1) 80:5

**defies**(1) 201:14

**defines**(2) 76:20 77:4

**definition**(2) 117:9 117:15

**defrauded**(1) 105:3

**defying**(1) 127:18

**degree**(3) 81:17 137:4 139:23

**delaware**(5) 1:2 1:12 1:34 5:24 15:1

**delay**(9) 45:16 170:5 170:10 170:12 172:5 173:1 173:8 201:13 201:17

**delayed**(2) 105:2 197:7

**delaying**(2) 218:20 219:4

**delegated**(1) 148:20

**delicto**(1) 140:14

**delivered**(1) 223:3

**demand**(1) 151:23

**demanded**(1) 151:16

**demanding**(1) 99:23

**demo**(1) 7:32

**demonstrated**(3) 37:19 76:15 185:13

**demonstrates**(2) 71:18 71:19

**demonstrativ**(2) 84:23 120:8

**demonstratives**(2) 168:2 221:16

**dennis**(1) 7:7

**deny**(1) 74:20

**department**(3) 55:13 222:9 222:14

**departure**(1) 50:20

**departures**(1) 165:25

**dependencies**(1) 219:16

**deposition**(17) 97:12 98:5 104:6 106:14 106:16 116:23 117:20 162:14 166:18 166:21 168:5 194:13 194:20 194:22 197:4 209:9 218:16

**depositions**(3) 151:12 162:20 162:24

**derivation**(1) 89:21

**derive**(1) 139:1

**describe**(4) 35:8 83:7 87:2 163:8 195:19

**described**(12) 30:7 40:11 67:21 97:1 100:4 113:10 114:22 114:24 134:23 193:7 202:8 208:25

**describes**(2) 114:8 125:17

**describing**(4) 96:20 97:8 178:20 184:14 186:23 209:10

**description**(2) 166:9 187:3

**deserves**(1) 92:17

**designation**(5) 170:17 172:14 172:21 172:24 172:25

**designed**(3) 115:16 136:18 202:4

**despite**(5) 100:21 131:13 174:15 194:23 200:25

**destroys**(1) 83:5

**detail**(4) 35:9 35:12 36:3 115:21

**detailed**(1) 105:5

**details**(2) 111:10 176:25

**deterioriating**(1) 97:17

**determination**(1) 117:22

**determine**(7) 72:18 74:15 145:10 172:12 172:18 190:22 203:2

**determined**(1) 174:22

**determines**(2) 172:20 213:8

**determining**(1) 208:15

**detriment**(1) 212:10

**deutsch**(1) 6:15

**deutsche**(1) 9:8

**dev**(15) 69:18 78:7 78:12 78:19 78:21 78:22 82:9 138:1 143:3 175:20 175:23 176:5 176:10 202:21 202:24

**develop**(1) 191:21

**developed**(3) 91:22 187:21 206:25

**developing**(2) 75:20 80:10

**deviation**(1) 166:2

**device**(2) 62:2 62:3

**devil**(1) 86:16

**devine**(1) 117:17

**dewey**(3) 2:12 12:14 12:39

**diagram**(1) 53:15

**diamond**(1) 8:38

**diaz**(1) 1:46

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**did**(107) 21:25 25:2 47:21 54:17 55:12 64:8 64:8 67:5 72:4 72:8 73:18 74:1 74:3 74:8 74:20 75:15 75:20 75:21 76:13 79:7 79:8 79:20 81:7 81:24 85:5 86:8 90:25 94:5 98:13 103:13 103:25 104:9 107:4 110:3 111:10 112:18 116:20 116:23 117:2 119:8 119:15 121:6 127:13 127:13 130:10 130:17 131:5 131:14 132:9 133:7 133:11 134:18 135:7 135:8 141:20 145:17 149:15 149:15 149:18 150:11 150:12 157:16 161:2 161:2 161:12 163:7 163:12 163:17 164:6 164:14 166:9 166:10 166:12 166:15 168:1 168:19 168:20 168:23 168:24 168:24 169:20 171:24 184:13 185:20 189:2 189:6 190:2 190:11 192:4 194:21 194:25 195:2 197:15 200:7 201:9 202:3 205:17 205:23 206:3 206:14 206:17 213:9 215:21 219:6 219:15 219:19 223:3

**didn't**(42) 20:11 24:8 37:23 38:3 38:4 38:6 39:14 40:6 49:23 51:5 51:24 59:13 59:13 62:21 62:22 64:15 65:1 65:17 72:11 79:6 81:11 133:9 148:10 153:9 153:9 162:1 162:13 162:16 162:25 165:21 166:11 179:8 180:25 181:5 186:8 188:19 190:2 190:4 190:7 190:17 194:15 195:17

**didn't**(15) 98:10 103:24 104:13 110:1 124:24 131:16 131:17 168:23 204:3 204:8 204:15 210:7 212:15 215:19 218:3

**differ**(1) 149:7

**difference**(12) 67:14 68:6 68:11 78:20 90:13 111:22 153:11 153:13 154:25 155:2 168:8 175:17

**differences**(3) 180:19 187:6 187:10

**different**(44) 15:17 15:19 15:24 16:2 18:9 24:6 38:1 38:17 44:22 47:8 48:22 49:3 55:17 61:24 61:25 65:7 65:18 66:10 80:1 92:22 93:17 97:20 100:24 128:20 128:23 161:2 163:14 163:23 163:25 164:20 164:21 168:18 170:20 170:21 171:13 171:14 181:23 185:22 192:14 193:7 199:6 204:5 204:12 205:24

**differently**(4) 62:21 181:18 181:18 210:12

**difficult**(5) 20:23 30:16 31:24 31:25 61:2

**difficulties**(2) 45:23 126:23

**difficulty**(2) 127:5 196:3

**diligence**(2) 162:7 163:3

**direct**(3) 82:22 89:18 164:18

**direction**(6) 62:20 82:7 95:14 102:25 109:13 209:1

**directions**(1) 52:1

**directly**(4) 15:22 23:4 23:8 188:1

**director**(5) 104:5 108:7 170:17 172:14 172:21

**directors**(4) 5:28 73:15 150:2 177:17

**dirty**(1) 68:1

**disagree**(11) 26:3 58:5 60:20 75:3 113:1 136:11 139:18 141:12 179:19 192:6 215:1

**disagreed**(1) 188:4

**disagrees**(4) 59:15 77:6 77:6 186:6

**disallowance**(5) 63:17 93:4 135:10 163:25 208:5

**disallowed**(1) 63:15

**disappoint**(1) 165:22

**disclaims**(1) 103:3

**disclosure**(4) 81:19 90:4 109:4 109:4

**discount**(4) 48:16 53:21 53:23 81:8

**discovered**(2) 112:7 180:22

**discretion**(4) 139:3 139:8 139:13 172:17

**discretionary**(1) 139:11

**discuss**(4) 131:4 173:18 198:9 214:8

**discussed**(12) 88:21 91:7 143:6 144:2 144:3 149:1 173:9 198:25 199:15 199:16 211:3 216:20

**discussing**(2) 45:22 207:10

**discussion**(13) 57:7 105:5 105:11 109:23 119:18 120:2 120:3 153:25 188:2 195:10 208:14 218:18 220:20

**discussions**(2) 221:10 222:8

**disgorgement**(16) 32:9 32:14 32:15 32:19 33:1 33:10 33:20 33:23 34:3 34:7 38:21 90:20 138:6 141:15 144:8 144:11

**disgorgement**(1) 217:9

**disinterested**(1) 131:5

**dismiss**(1) 200:14

**disparity**(1) 92:7

**dispel**(1) 86:17

**dispenses**(1) 66:11

**disproportionate**(1) 73:23

**dispute**(13) 18:6 19:10 85:15 87:20 97:16 116:13 122:3 171:7 171:10 171:20 192:19 215:12 217:12

**disputed**(5) 17:8 17:16 17:22 102:19 217:19

**disregard**(3) 49:9 49:11 49:12

**disregarded**(2) 98:13 181:4

**disrupting**(1) 182:8

**dissembled**(1) 167:2

**distinction**(2) 83:17 203:19

**distinguish**(1) 61:21

**distinguishable**(2) 128:15 140:20

**distinguishes**(1) 141:8

**distracting**(1) 83:4

**distributable**(1) 175:19

**distributed**(5) 73:23 175:24 176:5 176:8 176:11

**distribution**(9) 65:19 143:18 157:5 158:22 159:1 159:23 175:18 183:1 218:5

**distributions**(5) 38:21 106:1 138:4 157:14 158:16

**district**(2) 1:2 142:10

**diversified**(1) 79:13

**dividend**(1) 45:13

**dividends**(2) 81:12 207:21

**division**(1) 16:6

**dixie**(1) 24:7

**dla**(1) 3:4

**doctrine**(4) 35:22 64:14 132:23 135:11

**doctrines**(4) 66:8 143:7 206:24 207:8

**document**(3) 98:4 99:14 187:14

**documented**(1) 95:22

**documents**(7) 58:23 59:9 97:11 124:4 126:21 131:12 223:8

**dodgers**(2) 47:2 47:7

**does**(48) 21:2 22:22 24:21 27:3 36:24 44:7 55:23 59:23 73:20 77:10 77:20 81:9 89:1 92:1 93:10 93:13 109:16 111:13 111:14 113:4 113:8 114:1 118:10 123:4 123:11 127:23 129:1 131:22 136:7 143:9 143:19 153:13 154:15 155:22 172:15 172:20 180:5 185:24 199:8 203:19 204:17 204:17 204:20 216:12 217:15 217:18 217:18 219:13

**doesn't**(32) 26:17 26:18 27:7 29:18 30:12 33:21 35:5 37:8 37:24 38:10 40:4 44:24 54:10 54:15 57:5 57:22 66:6 71:2 75:18 77:21 78:4 78:12 78:21 136:2 136:24 152:18 155:14 191:18 193:24 199:19 200:3 203:12

**doesn't**(15) 87:2 90:16 117:2 120:12 122:6 122:12 123:19 124:25 125:5 127:21 206:21 207:2 208:8 209:5 212:13

**doing**(20) 19:21 31:16 33:8 44:24 50:25 52:13 56:14 57:3 58:13 67:10 91:4 110:4 116:22 123:17 126:3 140:16 183:21 184:7 194:24 195:5

**dol**(1) 222:6

**dollar**(3) 133:25 134:1 192:7

**dollars**(31) 31:19 32:15 32:20 36:6 39:25 40:19 40:22 41:6 42:19 71:2 71:3 78:2 90:20 133:14 133:23 134:1 138:4 138:6 138:6 138:8 142:3 144:8 144:12 151:17 151:20 151:24 156:19 175:5 200:5 205:19

**dominated**(2) 42:9 99:1

**dominion**(1) 13:17

**don**(3) 13:9 177:22 194:1

**don't**(94) 16:14 18:6 19:6 26:15 28:12 28:14 29:7 30:22 31:8 33:24 34:3 35:6 35:6 36:8 36:9 36:11 36:15 37:17 38:22 39:8 39:20 40:4 40:18 41:25 43:6 43:15 44:25 49:15 49:16 49:17 49:18 52:5 52:6 53:5 54:10 55:4 57:1 57:6 59:12 59:17 60:13 60:19 64:10 64:19 64:25 65:13 66:1 66:3 66:12 68:10 68:18 71:15 74:19 76:2 82:3 135:11 135:14 135:18 144:25 147:5 147:19 151:5 152:10 155:20 160:3 160:12 160:22 160:25 161:20 162:9 166:7 174:13 178:2 178:16 180:6 182:3 184:12 184:21 185:6 189:13 189:22 191:10 191:22 192:2 196:14 196:17 198:1 201:4 201:18 202:1 202:6 202:9 202:17 202:19

**donald**(1) 2:32

**done**(26) 23:15 47:6 48:23 87:5 98:15 99:24 99:25 113:16 116:14 117:13 130:13 135:18 139:6 150:25 152:22 152:25 168:2 182:13 195:6 206:4 206:6 207:5 211:13 216:9 219:14 222:16

**don't**(46) 86:9 88:4 88:9 89:23 89:24 91:24 92:3 92:9 92:11 92:20 97:10 97:23 103:8 103:9 111:6 115:11 115:12 115:13 115:14 121:18 126:25 128:3 129:18 130:13 155:4 168:12 168:15 205:1 205:15 205:15 205:16 205:16 208:2 208:3 208:16 209:4 210:5 210:22 214:21 215:2 215:3 215:6 215:8 215:12 216:20 222:17

**doomed**(2) 95:4 131:24

**dorr**(1) 10:37

**dose**(1) 139:8

**dots**(1) 209:18

**double**(3) 80:6 120:19 139:8

**doubles**(1) 130:2

**doubt**(2) 86:9 197:10

**dougherty**(2) 6:5 6:6

**douglas**(1) 6:15

**dow**(2) 11:7 11:7

**down**(24) 27:22 36:14 38:6 40:12 50:7 50:18 64:1 64:3 74:9 81:22 83:13 83:15 83:22 109:8 133:18 143:16 154:4 165:9 179:7 179:21 201:24 202:7 202:17 220:4

**downgraded**(1) 128:3

**downgrades**(2) 127:18 127:20

**downgradings**(1) 128:5

**downside**(8) 107:4 107:5 122:5 188:24 189:2 189:2 189:5 189:8

**dozen**(1) 67:22

**dozens**(1) 24:5

**drag**(2) 68:13 201:15

**dragging**(1) 218:20

**dramatic**(7) 99:4 107:10 115:25 122:14 130:3 130:21 151:15

**drive**(3) 40:19 71:2 200:5

**drives**(3) 36:12 71:2 73:24

**driving**(2) 76:16 82:1

**dropped**(2) 74:9 120:25

**drove**(1) 39:25

**dry**(1) 108:13

**dublin**(1) 4:21

**ducayet**(1) 1:26

**due**(6) 24:6 31:12 118:14 127:5 162:7 172:13

**dug**(1) 54:7

**dunk**(5) 29:11 45:20 47:10 49:17 67:25

**dunn**(1) 9:42

**duplicated**(1) 200:6

**during**(19) 21:6 34:20 55:20 67:20 88:10 120:8 146:11 148:2 148:9 149:1 164:18 165:24 167:1 167:22 168:3 177:19 181:12 199:22 200:10

**dwell**(1) 170:1

**dying**(1) 196:25

**dynamic**(3) 145:9 154:20 157:12

**e-mail**(15) 105:11 105:13 105:22 106:3 108:8 108:11 109:12 109:18 109:20 109:21 126:2 126:8 126:15 127:1 127:4

**e-mails**(3) 91:19 110:2 126:19

**each**(21) 15:22 16:9 23:16 29:1 66:8 72:19 72:21 75:22 76:2 76:4 76:4 81:5 142:13 152:12 163:13 170:16 170:17 180:4 201:7 205:3 217:25

**earlier**(4) 110:1 151:19 204:1 218:3

**early**(15) 92:15 96:21 96:24 108:6 108:10 108:17 108:19 110:13 124:9 125:12 154:19

**earth**(1) 75:9

**easiest**(3) 88:15 88:15 129:18

**east**(4) 4:13 5:30 13:25 13:25

**easy**(4) 47:12 47:14 134:4 191:21

**ebitda**(2) 125:18 198:20

**economic**(3) 116:24 117:2 184:16

**economics**(2) 133:24 137:23

**economy**(1) 52:2

**ecro**(1) 1:44

**eddy**(1) 107:21

**edgar**(1) 12:9

**edited**(1) 44:15

**editor**(2) 86:15 86:15

**effect**(8) 89:13 93:1 93:3 93:6 142:25 157:21 188:19 213:22

**effective**(7) 78:16 82:11 174:23 175:24 176:6 176:8 176:11

**effectively**(4) 172:24 175:8 208:22 209:6

**effort**(6) 63:1 189:20 206:23 221:6

**egi**(6) 108:22 109:20 109:20 202:25 203:6 203:9

**egi-trb**(5) 8:41 43:5 43:16 202:24 212:8

**ehmer**(1) 11:23

**eight**(3) 173:7 180:9 211:11

**either**(17) 22:10 31:17 45:6 66:1 73:15 79:1 88:23 90:17 92:6 98:10 98:14 134:1 151:5 165:4 185:5 203:8 208:15

**elden**(1) 6:5

**eldersveld**(1) 7:38

**electronic**(1) 1:52 224:6

**elegant**(1) 83:21

**elements**(10) 64:2 66:8 191:18 191:22 206:21 206:25 207:2 207:4 207:6 207:7

**elevated**(1) 114:16

**eleven**(1) 162:10

**eli**(1) 2:35

**elliot**(1) 2:30

**eloquent**(1) 88:5

**else**(6) 19:8 23:8 46:17 135:2 140:3 190:12

**else's**(1) 56:12

| Word | Page:Line |
| --- | --- |

**email**(5) 134:25 177:22 186:18 187:16 187:18

**emails**(3) 134:20 148:1 151:1

**embodied**(2) 17:11 89:6

**embraces**(1) 56:20

**emerge**(3) 174:17 175:14 177:8

**emergence**(1) 170:6

**emerges**(2) 17:13 196:22

**emerging**(1) 17:7

**emphasis**(2) 44:19 187:24

**employees**(2) 10:10 83:5

**empowering**(1) 172:6

**enabling**(1) 178:13

**encounter**(1) 26:8

**encouraging**(1) 97:1

**end**(31) 20:11 25:12 26:2 41:8 46:6 48:20 51:9 57:21 62:10 71:5 74:9 76:14 76:20 76:21 77:8 90:8 100:20 104:15 107:8 118:22 120:4 154:11 167:20 168:13 196:12 204:6 204:7 204:8 204:25 205:1 209:13

**ended**(1) 196:10

**ends**(3) 49:4 159:2 202:4

**enforce**(1) 64:16

**enforceable**(1) 182:15

**enforced**(1) 181:2

**engaged**(1) 162:11

**engagement**(3) 117:8 161:22 162:10

**engender**(1) 197:1

**english**(2) 3:36 9:8

**engulfed**(1) 92:7

**enormous**(7) 19:18 32:9 32:10 92:7 134:5 139:13 144:7

**enough**(14) 32:9 34:16 53:17 73:18 96:14 138:13 181:20 187:10 188:20 190:19 190:24 210:4 214:15 221:21

**enrichment**(1) 137:10

**ensure**(2) 136:18 139:5

**entanglement**(1) 149:15

**enter**(2) 110:20 132:17

**entered**(4) 70:17 159:2 159:3 181:13

**enterprise**(6) 21:16 43:4 120:11 120:15 175:19 176:1

**enterprises**(1) 60:16

**enthusiastic**(1) 127:14

**entire**(2) 54:22 55:20

**entirely**(6) 16:2 17:21 94:7 110:9 145:6 145:7 168:10 195:1

**entirety**(3) 113:3 151:17 217:2

**entities**(3) 184:1 199:12 202:12

**entitled**(8) 64:17 65:20 78:15 78:18 136:9 209:6 210:21 212:6

**entitlement**(1) 174:21

**entitles**(1) 210:2

**entity**(5) 62:2 62:2 62:3 62:3 183:25

**environment**(2) 46:13 97:9

**envision**(1) 85:12

**envisioned**(1) 146:18

**eos**(2) 8:33 8:33

**ephraim**(1) 8:38

**equal**(2) 145:7 151:6

**equally**(5) 93:12 133:16 148:16 213:8

**equation**(2) 145:20 146:10

**equipoise**(3) 141:15 141:17 219:24

**equitable**(25) 19:17 19:20 26:15 35:17 35:23 35:24 36:9 36:10 36:10 63:17 63:19 63:19 93:3 93:4 135:9 135:10 139:3 140:12 142:1 163:24 163:25 191:15 191:17 191:17 191:22

**equitably**(1) 63:14

**equities**(2) 140:13 140:17

**equity**(30) 62:8 62:9 62:9 62:15 79:25 81:3 81:22 106:8 124:5 124:12 124:15 124:19 124:19 124:21 127:25 128:12 128:19 134:21 134:22 141:24 142:1 142:6 142:12 142:25 157:4 170:16 174:22 175:7 176:7 176:10

**equivalent**(1) 161:14

**era**(1) 53:13

**eric**(1) 11:4

**erred**(2) 39:14 185:8

**error**(7) 21:9 68:7 163:21 165:1 212:9 212:10 215:11

**errors**(7) 44:16 57:15 79:6 79:18 163:6 163:19 211:3

**escaping**(1) 211:4

**esop**(5) 49:10 106:8 116:10 116:18 186:21

**esq**(116) 1:21 1:25 1:26 1:33 1:39 2:6 2:13 2:14 2:20 2:22 2:30 2:32 2:33 2:34 2:35 2:41 3:5 3:12 3:13 3:19 3:20 3:21 3:22 3:23 3:29 3:30 3:37 4:5 4:12 4:18 4:19 4:20 4:21 4:22 4:28 4:29 4:33 4:41 5:5 5:11 5:17 5:23 5:29 5:35 5:44 6:6 6:11 6:13 6:15 6:19 6:23 6:27 6:31 6:33 6:35 6:39 6:41 6:43 7:5 7:7 7:9 7:11 7:13 7:16 7:18 7:20 7:22 7:24 7:26 7:28 7:30 7:32 7:36 7:38 8:6 8:10 8:12 8:13 8:18 8:22 8:26 8:30 8:34 8:38 8:42 9:5 9:9 9:15 9:19 9:23 9:27 9:42 10:7 10:12 10:13 10:21 10:25 10:29 10:33 10:38 10:42 11:8 11:19 11:29 11:42 12:15 12:19 12:23 12:27 12:40 12:44 13:18 13:40 14:5

**essence**(2) 63:5 173:20

**essential**(2) 19:1 38:9

**essentially**(8) 33:7 41:23 52:18 78:9 92:16 158:5 161:22 168:22

**establish**(4) 20:13 21:2 98:6 101:16

**establishes**(1) 98:3

**establishing**(1) 104:18

**establishment**(1) 174:3

**estate**(9) 63:21 88:15 139:7 142:22 155:9 159:13 205:19 217:7 217:11

**estate's**(1) 175:16

**estates**(4) 26:1 90:19 216:22 216:25

**esther**(1) 6:27

**estimate**(2) 82:10 164:13

**estimated**(1) 47:24

**estimates**(1) 103:20

**estopped**(1) 207:12

**estopped**(6) 35:24 36:10 64:11 137:5 191:4 191:17

**evade**(1) 63:1

**evaluate**(2) 189:17 193:11

**evaluated**(6) 22:21 46:19 46:20 60:10 93:7 189:3

**evaluating**(10) 20:6 22:15 41:15 59:25 171:25 185:10 186:13 188:24 194:25 195:4

**evaluation**(7) 24:23 36:14 41:3 56:17 60:12 76:4 185:11

**eve**(1) 168:1

**even**(64) 20:14 20:18 21:8 21:25 27:21 28:24 29:18 32:11 30:22 31:15 32:4 33:13 33:18 35:7 46:12 48:25 49:21 50:18 51:13 51:14 57:1 60:2 60:2 68:2 68:3 71:9 81:8 83:20 83:21 85:16 88:20 91:18 91:23 94:19 95:23 98:6 101:21 101:24 101:25 102:11 107:10 110:7 111:12 113:1 124:19 126:19 127:3 154:14 161:23 162:3 162:9 162:10 163:7 168:5 171:17 172:10 172:14 176:9 177:24 182:25 208:3 212:21 214:11

**event**(5) 60:10 201:18 202:15 203:17

**events**(1) 56:2

**ever**(10) 53:5 60:25 61:14 63:20 65:3 120:12 150:25 151:20 152:5 182:1

**every**(20) 18:1 23:25 31:4 44:11 64:5 64:17 65:11 88:19 101:20 139:3 147:1 153:5 179:13 179:16 183:17 186:11 189:1 191:24 192:10 194:17

**everybody**(15) 51:3 56:12 56:14 61:10 61:12 67:25 70:12 83:6 95:23 123:2 123:15 154:12 154:17 188:12 193:17

**everyone**(13) 15:3 18:8 18:15 19:8 27:9 31:1 55:13 57:15 86:6 155:1 155:3 181:1 221:7

**everything**(12) 18:5 41:7 44:17 57:14 70:13 135:2 166:13 168:20 189:24 195:5 197:14 210:23

**ever"**(1) 97:4

**evidence**(93) 17:14 19:25 22:25 28:9 28:12 28:12 28:15 29:25 35:3 35:4 39:15 39:17 44:14 50:2 50:2 50:8 50:20 50:21 56:6 56:22 56:24 57:4 72:15 77:23 85:3 87:10 87:18 91:22 91:25 93:24 94:6 97:14 98:1 98:3 98:8 101:15 104:7 105:6 105:8 108:1 109:15 110:8 110:18 112:19 113:18 114:21 115:1 123:24 124:8 124:24 125:1 125:10 126:17 127:9 127:16 127:20 128:5 128:6 128:11 130:8 131:2 131:8 131:12 131:22 132:8 134:11 136:4 146:11 147:22 148:2 150:17 154:14 157:1 157:17 165:16 181:8 181:12 181:13 186:1 186:21 186:23 188:4 188:6 188:20 193:12 199:11 200:17 206:1 210:7 210:10 210:10

**evident**(1) 135:21

**evidentiary**(3) 85:9 205:3 205:21

**evolve**(1) 52:5

**exact**(3) 48:9 140:24 164:16

**exactly**(15) 44:17 51:12 56:21 64:14 65:5 121:9 121:9 121:15 122:22 122:22 122:22 173:24 178:18 182:17 189:1 189:12

**examination**(6) 37:19 38:3 38:13 97:23 106:18 120:9

**examiner**(133) 18:1 18:15 18:20 19:5 19:7 19:12 19:23 20:4 20:8 20:18 21:5 21:7 21:18 22:7 22:21 23:16 24:8 25:21 28:2 28:8 28:14 29:15 29:19 30:4 30:10 31:13 31:16 31:21 33:25 36:16 37:14 38:11 39:6 39:18 39:22 40:20 40:22 41:2 42:1 44:9 49:2 49:18 49:22 51:6 52:17 54:1 57:16 58:5 59:13 60:1 60:3 60:5 60:6 62:20 63:16 70:25 71:7 72:4 72:23 76:19 77:6 77:9 91:6 91:8 91:11 91:14 91:17 91:20 91:23 91:24 92:4 92:15 92:19 92:21 93:8 93:12 112:17 113:4 113:8 113:16 116:20 117:12 119:20 120:1 121:24 141:12 141:14 147:10 147:12 151:13 159:19 165:4 165:19 165:20 166:24 168:20 185:7 185:12 185:17 185:24 185:24 186:6 186:8 186:11 187:7 187:20 187:25 188:3 188:14 188:16 189:1 189:13 189:14 190:8 194:6 197:15 197:15 197:17 198:25 199:2 199:8 215:7 215:10 215:12 215:19 215:21 216:3 216:11 217:17 219:10 219:15 219:17

**examiner's**(67) 17:22 17:24 18:12 19:22 22:5 22:24 23:2 23:5 23:11 23:14 23:22 23:25 25:1 25:4 26:23 27:5 27:13 27:19 28:20 29:11 37:1 37:3 37:7 37:9 37:16 37:22 38:14 38:18 38:23 39:4 39:11 40:3 40:6 40:11 42:20 44:7 44:15 44:17 48:10 52:14 57:25 60:21 70:23 73:1 75:9 75:11 164:20 165:25 185:5 185:20 185:23 186:5 186:23 187:3 187:9 187:14 187:19 188:10 188:12 188:15 188:22 188:25 189:16 189:23 189:24 193:16 196:7

**examiner's**(18) 92:12 94:10 112:16 112:21 113:3 117:16 119:19 119:25 205:10 205:20 205:25 210:24 211:1 211:2 214:25 216:1 216:2 219:9

**example**(9) 73:12 133:13 140:14 142:1 143:13 162:13 194:12 195:9 198:14

**examples**(1) 186:14

**exceeds**(1) 72:13

**except**(6) 18:2 173:22 183:1 188:13 211:2 222:21

**exception**(3) 62:6 138:14 182:7

**exceptions**(1) 183:8

**excerpt**(3) 96:1 117:5 135:24

**excerpted**(2) 112:21 172:4

**excerpts**(1) 139:18

**excess**(2) 32:11 115:25

**exchange**(5) 54:9 105:11 106:3 129:1 203:20

**excluded**(1) 116:18

**exclusivity**(1) 178:9

**excuse**(3) 60:23 184:4 204:7

**executed**(1) 115:1

**executives**(1) 109:10

**exercise**(5) 163:9 166:15 213:4 219:12 219:18

**exercises**(1) 87:1

**exhibits**(1) 220:20

**exide**(1) 88:6

**exist**(5) 79:24 108:20 110:1 117:2 185:6

**existed**(3) 110:1 136:20 204:6

**existence**(3) 49:22 56:23 109:22

**existing**(3) 33:15 49:8

**exists**(1) 201:5

**exit**(9) 82:25 83:2 83:4 170:3 178:14 178:21 202:6 218:10 218:22

**expand**(2) 49:8 179:8

**expect**(9) 40:25 41:1 48:22 64:17 77:22 122:22 161:20 162:6 223:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**expectation**(1) 198:16
**expectations**(1) 186:6
**expectations"**(1) 105:18
**expected**(7) 58:15 100:14 100:19 169:1 183:1 198:23 220:2

**expediency**(2) 175:3 201:22
**expedited**(1) 175:14
**expeditiously**(1) 178:21
**expense**(1) 215:13
**expensive**(1) 83:4
**experience**(6) 80:1 81:4 153:2 153:4 173:4 173:5

**expert**(36) 50:9 50:19 50:22 78:24 79:1 87:11 94:14 94:19 95:24 103:8 103:19 103:22 107:15 117:18 118:24 161:4 161:5 161:5 161:6 161:16 161:21 162:1 162:5 162:6 166:17 167:22 167:23 167:23 168:6 170:9 171:1 171:21 173:2 190:5 190:12 190:21

**expertise**(9) 103:10 103:11 161:23 161:25 162:2 162:8 163:4 165:11 166:7

**experts**(4) 46:22 111:8 161:21 190:16
**explain**(4) 65:4 124:13 131:18 131:19
**explained**(8) 62:25 73:13 80:13 80:13 171:1 171:14 171:16 173:2

**explaining**(2) 66:7 135:1
**explains**(2) 81:17 119:15
**explanation**(2) 37:23 59:13
**explicit**(1) 81:14
**explicitly**(1) 117:9
**exposure**(4) 90:17 126:24 133:15 152:21
**express**(1) 61:24
**expressed**(3) 77:19 127:24 187:9
**expressly**(2) 174:8 189:13
**extensive**(3) 75:10 75:13 181:8
**extensively**(2) 179:11 199:15
**extent**(1) 63:15
**extra**(1) 20:16
**extract**(1) 78:2
**extreme**(1) 123:16
**fabulous**(1) 136:14
**face**(11) 17:18 29:23 30:17 36:4 44:15 51:7 52:25 119:5 119:10 119:22 212:12

**faced**(1) 39:23
**faces**(2) 31:2 193:22
**facility**(2) 134:12 134:15
**fact**(70) 19:12 21:11 22:19 25:9 31:3 34:23 37:8 46:18 50:9 57:8 58:8 59:5 59:11 59:20 62:23 72:15 74:15 75:10 75:12 76:13 77:5 77:14 77:17 78:13 78:18 78:20 80:6 80:24 82:1 82:6 85:15 87:11 88:11 92:23 98:7 108:20 119:11 124:2 126:10 126:17 131:13 138:12 141:3 149:2 155:12 171:5 172:3 174:15 178:18 180:2 183:10 183:12 186:10 188:1 189:23 191:4 191:15 192:23 194:5 194:21 194:23 198:20 198:22 200:17 202:2 206:24 208:6 212:6 214:12

**factor**(3) 48:17 71:25 156:5
**factors**(4) 115:11 115:12 115:13 115:14
**facts**(25) 18:18 32:19 36:8 36:9 51:12 51:13 51:14 59:19 59:20 76:2 117:6 117:7 141:9 142:14 151:8 161:23 161:24 161:25 169:1 200:1 207:1 214:14 214:14 214:15 215:19

**factual**(3) 18:20 165:12 191:9
**fail**(7) 19:24 36:17 36:18 58:16 123:3 123:6 124:22

**fail."**(1) 204:20
**failed**(4) 39:18 58:16 137:14 177:24
**fails**(2) 27:24 182:17

**fair**(21) 17:15 42:18 66:23 66:23 83:24 117:9 118:7 145:11 146:4 148:17 150:5 155:15 155:17 156:8 158:23 160:17 168:1 185:11 185:19 196:10 202:5

**fair-market**(1) 116:16
**fair-market-valu**(2) 116:15 117:14
**fair-value**(1) 117:21
**fairly**(10) 89:8 115:24 123:10 135:21 178:16 189:17 193:11 206:25 211:1 217:22
**fairness**(2) 44:7 144:21
**faith**(4) 26:7 67:9 130:14 162:21
**fall**(2) 127:3 191:4
**fallback**(1) 176:24
**falloff**(1) 107:10
**fallon**(1) 9:23
**false**(1) 65:24
**familiar**(6) 75:2 75:4 186:17 187:15 200:1 200:1

**fantastic**(1) 148:21
**far**(9) 32:11 61:2 69:9 95:9 97:18 143:18 149:5 151:15 166:5

**fared**(1) 99:5
**fargo**(2) 9:26 14:4
**faring**(1) 98:22
**fascinating**(1) 207:13
**fashion**(1) 208:1
**favor**(17) 41:25 50:8 77:18 78:1 114:15 114:21 119:16 133:18 156:20 156:21 158:7 158:21 159:23 160:5 181:25 183:20 219:25
**favorable**(4) 72:24 72:24 83:18 89:18
**favorably**(1) 90:17
**fcc**(42) 45:19 45:20 45:22 46:3 46:10 46:15 46:23 85:22 115:7 169:17 169:19 170:6 170:9 170:10 170:20 170:22 171:1 171:1 171:4 171:12 171:13 171:16 171:18 171:20 171:22 171:24 172:1 172:3 172:11 172:13 172:18 172:20 173:1 173:4 173:7 173:8 200:21 200:21 200:22 201:1 201:12 201:13

**fear**(1) 125:23
**feasibility**(1) 201:19
**feasible**(2) 85:11 173:10
**feature**(1) 202:14
**february**(35) 96:12 101:5 101:17 101:24 101:24 102:14 102:24 103:17 103:3 103:23 105:21 107:3 107:20 108:12 108:15 109:7 110:5 110:11 111:13 112:17 112:23 113:5 113:9 113:13 113:17 130:8 130:12 131:19 185:18 186:4 188:8 199:10 215:5 215:17

**federal**(1) 59:18
**fee**(3) 47:20 47:20 49:13
**feel**(2) 89:2 165:3
**fees**(7) 47:24 90:24 91:3 127:3 127:10 133:14 141:4
**feet**(1) 201:15
**feld**(4) 4:17 8:9 84:20 173:16
**fell**(3) 99:10 99:25 147:8
**felt**(2) 141:14 199:21
**ferry**(1) 11:11
**fessed**(1) 137:2
**few**(17) 15:14 37:2 45:18 69:16 85:20 101:23 108:23 116:5 132:20 133:21 161:3 173:18 179:2 183:8 203:23 216:17 222:6

**fewer**(1) 128:3
**fiat**(1) 210:17
**fiduciary**(1) 193:10
**fifth**(1) 5:9
**fight**(5) 29:17 127:2 148:16 148:16 191:24
**fighting**(3) 44:25 127:2 145:19
**figure**(3) 43:6 55:1 139:13

**figures**(3) 22:23 23:4 95:6
**file**(2) 147:18 178:10
**filed**(6) 67:9 165:24 155:25 162:17 178:8 209:11

**filing**(6) 54:24 55:7 55:7 55:8 106:19 176:19

**filings**(2) 149:18 184:9
**fill**(1) 206:16
**filled**(2) 40:16 151:6
**final**(2) 200:9 200:19
**finalize**(1) 162:7
**finalizing**(1) 162:18
**finally**(17) 17:4 24:17 28:24 35:13 38:12 42:6 99:22 109:18 130:18 144:1 174:22 177:22 184:12 190:17 191:25 201:7 207:25 209:13 215:10 217:12 221:14

**finance**(4) 104:5 108:19 126:6 132:25
**financial**(18) 22:6 23:2 23:5 23:22 24:1 51:24 100:6 114:12 114:15 185:19 186:12 186:24 187:1 187:5 188:2 188:8 189:3 189:10

**financials**(1) 198:25
**financing**(2) 115:2 149:16
**find**(27) 16:11 18:1 31:17 39:6 39:22 51:11 52:23 54:9 55:25 56:18 56:18 59:10 59:12 60:17 65:25 71:10 74:8 80:18 105:14:15 184:6 188:17 206:8 206:11 208:23 209:18 216:3

**finding**(5) 52:24 76:23 104:23 114:4
**findings**(12) 23:11 41:12 44:9 71:24 73:1 186:3 210:24 214:12 220:21 221:3 221:23 221:25
**finds**(1) 60:6
**fine**(3) 15:11 85:10 206:17
**finger**(1) 2:40
**finish**(2) 66:15 131:7
**firm**(6) 25:3 148:23 149:14 149:17 150:9 153:20

**first**(74) 16:17 20:3 28:19 28:21 29:4 31:25 32:23 37:5 41:22 45:11 46:1 48:7 55:14 64:3 64:5 66:2 70:11 70:19 70:20 72:6 86:2 86:3 88:2 89:19 92:21 94:13 94:25 96:19 98:23 101:23 101:23 102:2 102:9 102:15 103:3 104:11 105:24 105:25 106:8 107:2 107:7 110:7 111:10 113:1 113:10 114:22 116:7 121:19 123:23 125:5 127:21 128:1 129:20 136:14 159:5 160:24 162:11 162:16 163:9 168:14 172:11 175:13 176:8 180:16 180:21 180:25 183:6 187:8 195:20 197:6 199:23 204:10 207:5 220:23

**fischel**(34) 29:22 94:14 97:21 97:22 98:7 98:10 98:16 103:2 103:11 103:15 111:25 112:5 112:9 116:6 116:20 120:5 120:11 121:2 121:17 123:2 123:19 123:22 123:24 124:2 124:24 125:2 125:6 125:11 126:19 126:22 127:17 127:19 129:16 215:2

**fischel's**(1) 29:25
**fischel's**(9) 112:4 112:14 120:6 120:8 120:10 120:15 121:1 122:21 122:23

**fit**(1) 182:6
**fitch**(1) 204:11
**fitzsimmons**(2) 108:9 134:6
**five**(20) 16:8 22:20 68:19 69:10 90:22 92:18 102:2 102:15 106:8 147:14 166:22 168:4 168:11 169:17 169:23 170:16 186:2 200:20 200:20 216:6

**five-minute**(1) 132:4
**fixes**(1) 40:5
**flat**(2) 52:18 53:13
**flatly**(1) 142:11
**flaw**(1) 166:9

**flawed**(2) 195:24 196:13
**flaws**(1) 196:19
**flex**(1) 127:3
**flexibility**(1) 46:10
**flip**(1) 127:1
**flom**(1) 13:39
**floor**(3) 2:8 2:25 109:11
**flow**(5) 49:22 81:10 144:8 217:15 218:12
**flowing**(1) 141:24
**flows**(3) 57:24 215:13 215:14
**focus**(5) 44:13 49:20 51:5 53:3 55:13 85:7 87:9 94:9 94:23 106:9 114:6 129:22 156:16 163:15 180:19

**focused**(8) 20:3 24:1 28:18 44:6 67:14 94:7 154:20 167:8

**focuses**(1) 48:8
**focusing**(2) 45:18 114:14
**fold**(1) 202:15
**folks**(3) 34:14 74:22 81:20
**follow**(2) 26:15 27:2
**follow-up**(1) 167:3
**following**(3) 33:18 38:21 88:13 129:7
**follows**(1) 37:23
**folly**(1) 134:20
**food**(2) 80:4 81:10
**foot**(2) 213:16 213:23
**footing**(1) 182:25
**footnote**(1) 119:15
**for**(301) 1:2 1:23 2:4 2:19 2:29 3:4 3:10 3:36 4:4 4:17 4:32 5:4 5:16 5:22 5:27 5:34 5:42 6:5 6:9 6:22 6:30 6:38 7:4 7:41 8:4 8:25 8:29 8:33 8:37 8:41 9:4 9:8 9:18 9:22 9:26 9:29 9:35 9:40 10:4 10:10 10:16 10:20 10:24 10:28 10:32 10:41 11:4 11:7 11:11 11:15 11:18 11:22 11:28 11:32 11:36 11:40 12:4 12:7 12:18 12:22 12:26 12:30 12:34 12:38 12:43 13:5 13:9 13:13 13:17 13:21 13:25 13:29 13:33 13:37 13:43 14:4 15:21 16:10 16:14 17:13 18:11 19:1 19:21 20:2 20:11 20:23 21:20 22:17 22:22 23:12 23:13 23:17 24:9 24:20 25:9 25:25 26:17 28:3 28:9 29:2 29:5 29:6 30:25 31:2 31:5 32:21 33:2 33:15 33:25 34:8 34:16 35:7 36:8 36:9 36:17 36:21 36:22 37:2 38:25 41:18 42:12 44:4 44:16 44:9 47:18 48:17 48:17 49:20 51:11 52:2 54:8 56:6 58:14 59:13 59:24 60:23 61:10 61:12 61:12 61:12 62:4 65:13 66:2 66:7 67:6 68:4 69:14 70:11 72:21 74:25 75:22 76:1 76:17 77:3 77:12 82:16 82:23 84:12 84:19 84:20 84:23 85:19 85:20 85:24 86:7 86:18 86:18 86:23 89:16 90:10 90:25 91:4 91:8 91:16 91:17 91:20 91:25 92:20 94:2 96:13 96:23 98:16 99:4 102:14 102:17 103:16 104:21 104:23 107:16 107:18 108:19 109:16 110:7 110:15 111:19 112:15 113:25 114:2 114:3 114:25 115:15 116:9 116:22 117:1 117:13 119:1 119:20 121:25 123:22 124:5 124:6 124:6 124:25 126:3 126:10 127:22 129:18 131:20 132:7 133:1 133:7 133:12 133:13 133:21 134:2 134:4 134:7 134:9 136:8 136:14 138:5 139:12 140:14 140:24 141:2 142:1 143:3 143:10 143:3 143:17 145:2 145:8 145:19 146:9 147:3 147:11 147:12 147:13 147:15 147:20 148:1 148:6 148:22 148:23 148:24 149:8 149:18 149:19 149:21 150:21 151:1 151:20 152:1 153:24 154:6 154:10 155:7 155:10 156:12 158:11 159:10 160:6 162:13 162:22 163:17 166:17 167:2 167:16 167:16 167:16 168:25 168:25 169:9 170:2 172:1 173:1 173:16 175:2 175:15 175:22 176:16 178:11 178:12 179:3 179:23 180:1 180:15 180:15 181:17 182:7 182:12 183:1 183:3 183:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

for(51) 184:16 184:24 185:9 186:13 186:21 186:25 187:8 188:13 189:25 190:2 191:10 191:20 192:6 192:13 195:23 197:11 198:3 198:3 198:8 198:10 199:23 202:7 202:20 204:3 205:4 205:22 207:20 208:7 208:11 208:21 209:24 210:13 210:1 210:20 210:25 211:2 211:10 215:8 216:8 216:14 217:19 218:17 219:3 220:24 221:5 221:21 222:5 222:15 222:24 223:16 223:2

force(1) 151:6
forced(1) 147:18
forcefully(1) 50:21
forecast(7) 80:17 107:23 109:22 110:15 198:11 198:22 199:5

forecasting(1) 96:22
foregoing(1) 224:5
foregone(1) 55:9
foresee(2) 58:15 59:10
foreseeable(4) 31:14 58:12 59:2 59:3
forever(1) 97:9
forget(1) 67:23
forgetting(1) 140:21
forgone(1) 136:2
forgot(2) 209:17 221:15
forgotten(1) 89:25
form(11) 64:25 65:1 73:16 114:16 117:24 117:24 118:4 118:12 118:19 175:20 177:7

formal(2) 75:25 76:5
formally(1) 110:14
forman(1) 1:31
formed(1) 150:16
former(4) 13:37 34:19 86:14 100:5
formula(1) 173:1
fortgang(1) 11:25
forth(8) 17:5 26:8 141:9 144:15 176:20 185:8 187:20 215:3

forthcoming(1) 106:2
forward(5) 82:10 138:25 169:2 197:15 222:25

fought(1) 27:7
found(28) 19:5 19:13 19:15 19:25 20:4 20:9 20:18 21:5 21:7 21:23 21:25 25:21 28:8 30:5 31:16 31:21 32:2 36:16 40:20 49:22 63:8 63:9 70:25 71:7 71:16 71:17 142:15 209:21

foundation(6) 10:5 10:6 98:15 101:6 117:25 118:4

four(7) 46:1 109:19 109:24 156:5 182:12 182:12 183:21

fourth(4) 95:17 131:1 165:12 214:6
frame(1) 154:4
franchise(1) 126:16
frank(4) 10:11 10:13 126:11 126:14
frankel(1) 9:13
frankly(6) 49:21 83:8 184:17 184:21 206:6 207:2

fraud(17) 20:1 20:2 28:9 28:15 28:17 31:17 31:10 38:5 38:6 38:9 39:16 104:23 105:7 110:23 165:13 196:8 196:11

fraudulent(37) 19:13 19:25 21:20 37:25 60:4 60:7 61:5 61:22 62:3 62:10 67:17 67:25 93:1 103:6 105:4 128:13 132:22 137:9 139:9 139:15 140:13 142:10 161:6 161:18 164:1 174:4 178:11 183:7 190:11 196:4 207:16 207:17 207:18 207:23 208:7 208:11 209:3

fraudulently(1) 110:19
fraught(1) 86:10
free(1) 122:10
freed(1) 217:3

frequently(1) 118:15
friedman(13) 4:40 8:16 9:36 85:22 146:5 169:4 169:16 169:19 169:21 169:22 169:25 200:19 201:18

friend(1) 151:1
friends(1) 126:3
from(215) 15:19 15:22 16:1 17:8 19:20 22:9 22:16 22:23 23:4 23:7 24:25 26:6 26:10 27:8 29:22 31:20 33:10 35:2 37:6 38:22 38:24 40:3 40:20 40:25 41:1 41:7 41:20 41:24 42:6 46:3 46:22 49:3 49:15 50:20 52:14 54:6 54:22 56:20 57:21 60:9 60:25 63:22 64:11 66:6 67:22 70:16 73:8 73:15 73:16 73:17 73:19 75:9 78:17 80:16 82:12 82:13 82:25 84:3 84:14 84:1 85:21 86:11 86:14 89:8 90:6 91:13 93:7 95:4 95:6 95:10 95:17 96:2 97:7 97:24 98:25 99:24 102:22 102:22 105:11 105:15 106:2 106:23 107:17 108:1 108:15 109:20 110:1 112:10 112:10 116:19 117:6 117:22 118:24 119:13 119:24 120:12 120:16 121:11 121:17 124:9 124:12 124:15 127:2 128:5 128:15 128:23 128:25 130:1 130:22 131:24 132:21 132:24 134:25 135:24 136:1 137:6 137:6 139:2 139:17 139:19 139:23 140:10 141:17 142:6 142:12 143:10 143:1 143:14 144:20 145:25 146:20 147:8 147:23 149:21 150:13 150:17 151:9 153:13 153:23 155:17 156:8 157:3 157:4 159:13 159:16 160:10 161:2 161:10 161:25 162:11 163:2 165:6 165:25 170:6 172:11 173:4 174:11 175:4 175:8 175:14 176:17 177:8 177:10 177:10 177:13 178:3 178:5 178:21 180:1 181:24 184:11 185:2 186:18 186:22 187:15 187:16 187:22 189:22 189:24 191:14 191:20 191:22 193:7 193:13 194:1 194:7 195:18 196:23 196:2 203:3 203:4 203:10 204:8 206:11 207:15 207:21 208:6 209:19 210:3 211:17 212:8 213:18 215:2 217:15 218:2 218:22 218:24 219:2 219:8 219:9 223:1 224:6

front(7) 16:13 27:23 41:5 59:20 100:16 202:23 216:6

froze(1) 175:8
fruition(2) 87:25 89:2
fruits(3) 89:1 89:9 90:15
fugue(1) 79:23
full(35) 22:11 24:15 27:9 27:11 28:7 30:21 30:22 30:24 32:7 34:16 34:23 35:14 36:21 54:20 62:19 72:14 76:22 76:24 77:7 88:19 88:20 88:23 99:17 127:3 135:24 136:22 138:14 158:18 169:23 175:22 182:1 187:18 196:12 198:13 209:2

fully(2) 81:24 200:1
fun(1) 85:17
fund(4) 125:2 125:6 142:11 142:15
fundamenta(4) 63:1 115:12 173:21 175:11
fundamentally(2) 39:1 91:8
funds(1) 142:4
further(8) 71:7 77:14 94:19 98:9 103:15 117:3 143:16 223:23

gain(1) 57:24
gamble(1) 42:1
game(2) 17:24 71:5
game-changer(1) 91:11
games(1) 67:8
gandhi(1) 10:21
garamella(1) 149:25
garmella(2) 106:25 120:22
garrison(1) 11:41
garvan(1) 4:33
gary(1) 7:36

gave(7) 45:1 68:3 80:23 146:3 163:5 193:6 217:16

gavin(1) 10:33
gears(1) 98:20
gecker(1) 10:11
geddes(1) 4:27
general(4) 90:3 140:12 158:14 216:24
generally(1) 81:1
generate(1) 123:9
generated(1) 99:3
generates(1) 210:2
generating(1) 105:15
gentilotti(1) 4:32
george(2) 6:5 6:6
georgia(1) 148:13
get(99) 26:15 27:9 27:11 28:3 29:17 30:8 30:22 31:20 32:8 32:9 32:10 33:10 34:1 34:5 34:7 34:10 34:10 34:23 34:25 35:10 36:11 36:21 40:25 42:11 43:8 43:11 43:15 45:6 48:17 49:6 60:16 61:6 63:6 63:8 63:13 69:20 71:12 71:13 71:15 72:17 72:18 73:10 75:14 76:8 81:1 85:16 87:5 87:14 90:2 111:9 111:21 116:5 121:7 128:8 133:0 134:18 138:15 143:1 143:22 149:2 152:22 152:24 155:12 156:1 158:25 159:13 159:16 161:2 161:11 163:23 163:24 164:6 167:13 168:6 177:1 177:23 182:22 183:1 184:8 192:7 192:8 192:8 193:24 194:9 195:1 197:9 201:16 208:6 208:10 209:4 210:17 212:7 213:9 218:1 218:4 219:11 222:16

gets(11) 34:23 55:17 123:5 136:15 147:2 158:3 158:18 196:22 197:3 215:22 219:8

getting(5) 28:7 29:12 36:19 41:9 158:15 127:10 162:19 180:12 189:7 198:14 221:2

give-me(1) 88:4
given(20) 23:8 55:14 57:11 80:19 89:2 104:11 108:14 110:6 113:11 117:19 122:2 138:24 140:13 140:17 154:8 154:16 160:13 175:16 187:11 212:20

gives(2) 68:4 194:11
giving(2) 188:6 188:19
global(1) 83:20
glossed(1) 194:8
goals(2) 175:11 175:12
goes(18) 54:4 56:19 105:8 120:16 120:18 122:25 130:1 130:22 135:6 138:9 138:9 138:25 143:5 147:13 172:19 197:18 215:1 217:7

going(116) 16:16 16:17 16:22 26:5 30:19 32:15 33:17 33:23 35:1 36:8 36:15 37:16 40:5 44:10 44:20 44:21 44:22 45:15 47:19 48:7 48:8 48:17 49:20 50:7 50:17 51:8 51:21 52:5 52:8 52:15 53:24 54:5 57:16 58:23 59:1 59:2 59:9 59:23 60:1 60:1 60:4 60:5 60:21 62:6 62:16 62:18 63:10 63:11 63:12 63:18 63:20 63:22 64:16 65:19 67:18 68:19 69:16 69:19 69:22 82:5 85:16 85:19 87:9 93:23 94:6 94:9 94:23 96:23 98:11 98:20 100:12 101:2 104:16 123:7 123:18 125:3 127:1 128:18 128:23 131:6 132:3 141:3 148:4 148:16 150:6 152:8 155:12 156:1 160:21 163:16 167:12 169:3 170:1 180:16 182:14 184:8 184:11 184:24 185:14 187:14 190:23 191:13 195:21 197:1 200:22 200:24 201:1 205:13 206:8 206:11 210:11 210:12 211:19 214:18 222:25

golden(14) 4:22 85:16 85:23 173:14 173:15 201:23 211:19 211:21 211:23 212:24 213:2 213:18 213:25

goldfarb(1) 6:19
goldman(3) 9:22 9:22 10:38
goldsmith(1) 8:13
gone(8) 21:18 46:6 80:11 81:21 81:22 82:6 136:10 184:11

good(52) 15:3 15:4 15:5 19:16 25:9 25:14 25:19 25:20 26:7 26:17 30:12 33:22 36:16 44:2 53:17 59:20 67:9 76:17 84:19 91:8 91:17 91:20 91:25 94:1 101:13 127:2 130:13 132:6 133:16 147:11 147:12 147:13 148:22 152:24 154:18 154:20 154:21 155:19 159:20 162:21 165:13 169:16 173:14 173:14 182:13 184:13 189:24 194:25 195:6 200:15 211:9 223:15

good-faith(1) 130:14
goodness(1) 64:22
gordon(12) 2:10 10:32 10:32 12:44 170:14 170:15 170:24 171:5 171:8 171:11 172:8 173:6

gordon's(1) 170:23
gosh(1) 152:17
goss(1) 142:19
got(52) 16:23 18:1 36:10 37:14 39:6 39:22 39:24 42:1 49:18 50:21 50:21 54:5 54:6 55:6 65:3 65:5 68:24 73:2 73:4 92:17 107:10 119:10 120:20 121:8 121:8 121:9 129:4 134:5 134:6 134:10 134:13 134:14 134:17 139:18 149:13 159:11 162:9 167:15 168:1 185:7 189:13 190:14 192:16 192:20 196:9 196:12 197:11 197:12 197:21 198:1 206:1 207:5

gotsha(2) 5:4 10:20
gotten(3) 16:25 70:13 196:12
governed(1) 161:11
governs(1) 217:9
gradually(1) 48:18
graeme(1) 3:30
grand(2) 2:15 42:11
grant(2) 67:15 68:7
granted(1) 214:11
graphically(1) 27:14
grave(1) 127:24
great(7) 5:22 12:22 19:19 33:1 90:25 149:20 189:7

greater(4) 102:10 113:11 149:21 205:4
green(3) 101:3 122:9 122:10
greg(1) 7:32
greissman(1) 9:27
grew(1) 88:3
grippo(1) 6:5
gropper(5) 67:20 91:10 91:14 197:11 218:18

gropper's(4) 66:21 66:21 67:4 196:23
gropper's(1) 218:16
gross(1) 195:25
grossly(1) 104:20
ground(5) 51:12 51:13 51:14 187:22 77:19 134:14 159:2 180:15

group(9) 10:11 10:16 13:9 15:23 75:13 77:19 134:14 159:2 180:15

groups(4) 16:9 158:12 220:8 221:3
growth(5) 99:21 102:9 102:10 111:21 113:11

guaranteed(2) 57:7 202:11
guarantees(4) 181:24 182:4 182:8 182:10
guarantor(17) 20:15 20:22 20:25 21:11 21:16 28:25 30:13 31:23 32:24 36:19 71:12 71:22 76:8 188:18 214:6 214:16 217:10

guarantors(2) 202:11 202:15
guess(7) 50:1 55:4 79:10 118:14 154:3 194:2 222:23

guessed(1) 79:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**guidance**(1) 19:1
**guided**(2) 17:22 42:20
**guideline**(1) 189:16
**guides**(1) 45:7
**gump**(5) 4:17 8:9 84:20 94:2 173:15
**guy**(3) 37:21 162:2 162:3
**guys**(2) 74:15 74:19
**had**(88) 21:18 22:2 27:25 32:16 38:19 42:12 45:17 46:5 51:25 61:20 62:9 63:24 67:1 69:6 72:20 73:15 76:13 78:3 78:23 78:24 79:4 80:10 80:11 81:21 81:22 94:11 100:7 100:24 102:24 105:18 108:16 109:6 109:9 113:13 113:14 117:13 117:14 117:1 126:22 129:6 130:11 135:4 144:25 146:5 149:14 150:3 150:19 150:25 151:7 151:23 153:20 159:19 160:25 161:14 161:16 162:10 162:21 162:24 165:8 166:5 166:18 166:19 168:5 175:10 175:11 176:22 178:6 179:2 184:22 186:8 186:11 187:4 187:5 188:18 191:4 191:9 192:22 194:4 194:15 194:16 198:19 200:6 205:18 205:24 210:8 210:9 212:2 220:20

**hadn't**(1) 79:2
**haircut**(1) 194:16
**hale**(1) 10:36
**half**(10) 16:9 57:18 102:9 102:10 113:10 113:12 128:2 175:5 199:23 223:20

**hallmark**(1) 124:3
**hand**(12) 40:10 43:7 48:11 63:23 84:22 116:21 121:8 132:2 201:20 210:8 221:14 221:16
**handbook**(1) 99:7
**handed**(3) 84:25 94:4 161:23
**hands**(1) 136:21
**hannafan**(2) 12:26 12:26
**happen**(15) 24:13 32:19 47:19 59:1 59:10 62:16 63:18 64:7 64:9 132:10 138:16 152:18 172:11 200:24 217:18

**happened**(20) 50:10 62:12 101:19 101:22 106:18 106:19 107:8 107:25 108:1 124:23 129:20 130:19 152:9 154:6 154:8 159:5 197:23 205:22 206:16 218:18

**happening**(3) 66:17 82:4 195:19
**happens**(8) 22:5 38:20 73:11 129:25 144:7 213:6 217:3 218:12

**happy**(4) 68:16 82:19 165:18 211:6
**hard**(20) 42:22 51:11 51:11 52:7 52:9 54:21 59:7 75:1 84:12 100:16 145:8 145:19 146:2 146:9 148:6 148:16 148:17 167:13 195:24 211:13

**hard-stop**(1) 85:4
**hardcopy**(1) 223:4
**harder**(2) 21:7 149:21
**hardin**(1) 142:9
**hardly**(1) 112:12
**harm**(1) 139:14
**harmed**(1) 139:14
**harping**(1) 137:4
**harrisburg**(1) 1:48
**hartenstein**(1) 107:21
**hartenstein's**(1) 108:3
**hartford**(1) 4:7

**has**(79) 15:8 18:5 18:9 22:25 27:23 29:2 29:8 41:18 43:8 45:9 46:9 50:2 56:6 57:13 58:24 59:5 61:11 62:7 62:8 63:9 65:21 70:13 72:2 77:16 78:7 80:3 82:5 82:6 82:22 87:19 88:7 88:15 94:24 97:20 103:12 105:4 110:24 113:25 114:5 114:5 114:12 116:7 119:4 119:5 130:7 132:1 152:20 136:8 139:4 139:13 141:13 142:14 142:25 150:24 154:8 154:11 156:25 161:1 164:23 166:7 169:3 169:6 173:2 179:14 179:17 182:12 183:4 183:18 183:23 193:1 194:4 197:7 197:8 197:22 197:25 198:2 201:19 217:10 222:7

**hasn't**(4) 78:16 147:18 184:23 198:13
**hasn't**(1) 210:14
**hat**(1) 24:8
**hats**(1) 150:10
**hauer**(4) 4:17 8:9 84:20 173:16
**have**(281) 20:14 20:25 21:3 24:4 32:12 29:5 29:19 30:9 30:15 31:8 32:24 33:12 33:12 33:16 33:17 33:24 34:13 35:9 35:1 35:25 36:8 36:9 37:3 38:8 38:22 38:23 40:7 40:18 40:19 41:13 41:17 45:4 46:9 46:7 46:25 47:6 47:25 48:6 48:23 49:8 49:11 49:11 50:14 50:15 50:16 51:10 51:24 52:7 52:8 52:13 52:19 53:19 53:22 54:21 55:4 55:6 55:7 55:7 57:1 57:6 57:13 58:1 59:6 59:12 59:16 60:1 61:13 61:14 62:23 63:4 63:8 64:1 64:19 65:4 65:9 65:22 67:21 67:24 68:17 68:21 69:4 69:25 70:15 75:18 81:9 81:23 82:15 82:2 83:25 84:7 84:12 85:4 86:5 86:13 86:16 87:20 88:9 89:4 89:13 89:14 89:25 90:18 91:22 92:9 93:18 96:9 97:7 99:14 103:8 103:9 103:9 104:9 105:5 106:10 106:22 107:12 107:18 107:21 108:6 108:9 118:1 121:18 124:16 125:8 126:25 127:23 130:14 131:4 131:23 132:9 132:22 135:14 135:17 135:17 135:18 135:20 135:24 136:10 137:14 137:19 138:16 138:19 138:7 139:18 139:20 140:8 141:18 141:25 142:7 146:16 147:14 148:9 148:12 148:18 148:2 149:6 149:10 149:13 150:15 152:13 152:15 152:15 152:19 154:2 154:8 154:16 155:7 156:24 157:6 157:8 157:16 158:8 162:1 163:2 169:7 170:1 170:7 170:8 170:16 170:17 170:18 171:14 171:4 171:11 171:14 171:16 172:4 172:15 172:17 175:2 178:15 178:23 180:4 180:5 180:9 180:14 180:16 182:2 182:3 182:7 182:11 183:16 183:20 183:21 184:1 184:8 185:4 185:17 186:8 186:21 189:11 189:23 190:10 191:1 192:10 193:24 195:1 195:5 196:8 196:11 196:23 197:14 197:18 198:4 198:9 199:24 201:9 201:12 202:9 202:10 203:5 203:13 203:14 203:16 203:23 204:3 205:3 206:4 206:5 206:6 206:20 206:27 207:5 209:12 209:14 210:5 211:3 211:7 212:22 213:21 214:21 215:19 216:23 218:9 218:10 218:21 219:5 219:14 220:24 221:4 221:7 222:8 222:17 223:3 223:18

**haven't**(1) 39:17
**haven't**(1) 213:5
**having**(15) 16:9 50:19 74:24 100:16 103:3 127:5 127:10 145:7 145:14 154:5 155:1 166:3 168:11 207:3 209:24

**haywire**(1) 55:2
**hazel**(1) 214:13
**hazeltine**(1) 4:10
**he'd**(1) 200:20
**he'll**(1) 169:23
**he's**(19) 37:21 49:3 49:10 56:13 73:2 73:2 140:21 147:12 161:3 161:6 161:6 162:2 179:9 186:23 196:25 197:2 197:11 197:12 199:18

**head**(8) 68:5 105:12 105:24 126:6 126:14 166:13 166:15 166:20
**headed**(3) 47:4 95:13 109:14
**headline**(3) 37:22 41:5 190:20
**headlines**(1) 49:2
**headquarters**(1) 100:24
**healing**(2) 178:15 178:22
**hear**(13) 15:22 16:22 26:6 30:19 35:1 44:24 85:21 153:4 153:9 191:13 194:15 195:17 212:15
**heard**(54) 21:6 24:25 27:13 28:18 29:21 35:3 35:14 38:12 45:10 46:23 66:24 70:15 70:19 70:20 84:15 85:4 88:21 89:23 91:7 91:10 102:22 115:6 123:21 128:25 136:6 141:11 148:2 148:9 149:1 149:25 152:23 152:16 156:2 156:16 157:8 160:10 162:15 163:8 165:18 167:21 168:6 170:11 176:2 176:16 178:19 189:20 190:19 191:12 193:13 194:15 195:11 207:3 218:15 219:8
**hearing**(12) 19:14 21:7 28:18 78:23 79:17 88:2 179:12 181:13 211:1 221:10 224:1 224:2
**hearings**(2) 34:20 185:14
**heavily**(1) 157:19
**hedge**(2) 142:11 142:15
**heilbut**(1) 11:29
**heiligman**(1) 10:12
**heirs**(1) 142:23
**held**(1) 114:9
**hell**(1) 86:14
**help**(5) 25:2 27:7 66:3 155:18 161:10
**helped**(2) 150:24 160:22
**helpful**(2) 15:21 204:4
**helps**(1) 145:10
**her**(5) 104:6 150:25 151:1 152:4 194:20
**hercules**(1) 2:3
**here**(98) 18:15 23:15 26:13 33:3 39:10 46:7 48:2 63:18 66:17 68:20 70:14 72:17 75:8 75:14 77:9 78:7 90:1 90:7 91:2 96:1 97:11 98:21 99:14 100:5 104:6 105:10 105:20 106:4 106:6 107:1 108:6 108:9 108:18 108:25 109:18 111:5 112:21 113:8 114:13 120:21 121:10 124:9 124:20 125:17 126:10 127:1 128:23 131:9 132:20 133:7 136:1 139:19 142:2 149:16 150:19 151:2 152:9 154:6 154:8 154:9 154:8 160:25 161:8 161:12 165:13 175:17 184:1 191:13 194:3 194:10 195:2 195:15 199:6 197:1 197:17 197:21 198:5 205:6 205:22 207:18 207:23 208:17 219:4 220:18 222:13
**here's**(3) 56:15 152:8 185:23
**here's**(4) 96:9 97:22 117:19 123:7
**he's**(11) 93:22 99:15 105:13 105:14 105:19 106:5 107:1 107:6 167:23 168:25 212:19
**high**(16) 23:19 53:8 54:15 67:8 73:8 76:20 76:21 76:22 77:3 78:19 78:21 90:13 120:19 127:25 200:12 200:15
**high-yield**(1) 204:9
**higher**(15) 19:9 34:22 35:8 43:8 57:21 71:16 78:10 81:16 112:14 134:16 138:1 166:3 166:25 176:9 192:13
**highest**(1) 148:21
**highlight**(1) 202:8
**highlighted**(1) 117:7
**highlights**(1) 25:5
**highly**(8) 18:16 20:5 21:23 22:15 31:13 40:17 82:3 129:17
**hille**(1) 7:28

**him**(28) 23:13 27:23 38:16 38:17 66:22 74:14 75:2 87:13 116:20 116:22 126:3 146:3 151:14 160:15 160:16 161:4 161:11 165:15 166:23 166:24 168:2 186:11 186:24 192:3 212:15 215:19 218:19 219:8

**himself**(1) 165:4
**hindered**(1) 105:2
**hindsight**(1) 50:23
**his**(148) 18:25 19:3 19:3 19:12 20:20 21:5 21:19 23:10 27:20 27:20 29:11 32:2 34:3 34:7 38:13 38:19 40:4 41:2 49:2 49:4 54:7 54:14 56:16 58:1 58:2 58:5 67:8 67:20 67:21 68:1 72:1 72:4 72:8 73:1 74:1 74:4 75:3 75:17 75:20 76:10 78:25 79:4 79:5 79:6 79:11 79:21 79:22 79:23 79:25 80:5 91:15 92:16 92:19 92:23 93:13 93:14 93:14 93:16 93:20 98:8 98:17 102:23 103:3 104:19 107:3 107:21 111:15 111:25 111:25 114:3 115:10 115:22 115:25 116:19 116:21 116:22 116:24 117:13 119:21 120:12 120:22 121:7 121:12 123:22 123:25 124:1 126:2 132:24 132:25 141:8 146:1 146:20 148:3 150:21 161:1 162:9 162:11 162:18 163:3 163:3 164:2 164:7 164:10 164:12 164:18 164:23 164:24 165:2 165:2 165:3 165:16 166:4 166:13 166:17 166:17 166:18 166:20 166:21 167:24 167:23 167:24 168:3 168:5 168:6 168:9 168:16 168:21 173:2 173:3 187:4 187:9 187:21 188:2 188:5 189:3 189:8 189:14 190:8 190:13 190:15 193:10 193:13 196:24 197:4 199:14 200:2 212:21 219:11

**historic**(2) 198:17 198:23
**historical**(3) 113:15 187:25 188:1
**history**(2) 54:23 55:20
**hit**(4) 45:8 101:23 110:7 111:21
**hitting**(1) 86:13
**hockey-stick**(1) 101:12
**hold**(4) 68:13 123:19 199:19 222:11
**holdback**(1) 177:5
**holder**(1) 218:25
**holders**(11) 42:10 90:20 136:11 138:5 141:6 141:24 143:21 144:10 144:14 203:20 203:20
**holding**(1) 158:19
**holdings**(1) 80:1
**holds**(1) 32:17
**holy**(1) 151:2
**home**(6) 23:23 29:18 36:11 209:5 209:17 211:20
**homerun**(2) 93:19 217:13
**homework**(2) 194:25 195:3
**honest**(1) 195:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **honor**(301) 15:4  15:5  15:8  15:13  16:7 16:12  16:16  17:2  17:10  17:19  18:5  18:15 19:3  22:3  22:14  22:19  22:24  23:9  23:16 23:20  24:3  24:7  24:19  24:22  25:11  25:20 25:25  26:4  26:15  26:20  27:3  27:17  28:8 28:17  30:4  30:11  30:18  30:23  31:6  32:6 32:12  32:18  32:25  33:5  33:21  33:25  34:4 34:12  34:21  35:1  35:13  35:19  36:12  36:16 36:25  37:17  38:19  38:25  39:4  39:8  39:13 40:2  40:10  40:15  41:4  41:16  42:6  42:18 43:3  43:6  43:14  43:19  43:20  44:1  44:2 45:9  46:23  51:23  53:1  57:11  57:20  62:17 67:12  68:16  68:22  69:13  69:15  82:14 82:19  83:3  83:24  84:7  84:14  84:19  84:22 84:25  85:1  85:13  86:2  86:6  86:9  86:13 86:19  86:25  87:8  87:15  87:19  88:14  89:3 89:8  89:18  89:19  90:9  90:23  91:10  92:6 92:12  92:14  92:21  94:1  94:4  94:5  94:7 94:8  94:10  94:15  94:18  94:24  95:1  95:6 95:9  95:13  95:14  95:21  96:1  96:5  96:7 96:10  96:16  96:20  96:25  97:6  97:10  97:15 97:19  97:23  98:1  98:5  98:10  98:14  98:18 98:20  99:2  99:6  99:8  99:10  99:14  99:17 99:22  100:1  100:5  100:21  100:25  101:4 101:8  101:11  101:14  101:15  101:20  101:21 102:6  102:14  102:17  102:20  102:22 102:23  102:25  103:4  103:12  103:18  103:25 104:16  104:24  105:5  105:7  105:10  105:17 105:19  105:22  106:3  106:5  106:6  106:9 106:14  106:20  106:24  107:7  107:12  107:15 107:18  107:22  108:1  108:6  108:9  108:11 108:17  108:20  108:25  109:5  109:15  109:21 109:21  109:24  110:2  110:8  110:16  110:22 111:4  111:8  111:11  111:16  111:20  112:7 112:9  112:12  112:15  112:18  112:25  113:3 113:8  113:12  113:19  113:22  113:24  113:25 114:5  114:13  114:20  114:22  114:25  115:4 115:11  115:18  115:20  115:22  115:24  116:3 116:5  116:11  116:13  116:17  116:21 116:25  117:5  117:8  117:12  117:16  118:23 118:25  119:2  119:7  119:10  119:13  119:18 119:22  119:24  120:3  120:7  120:10  120:17 120:21  121:1  121:6  121:10  121:14  121:17 121:19  121:25  122:3  122:6  122:7  122:10 122:12  122:20  122:23  123:1  123:6  123:11 123:15  123:20  124:2  124:3  124:19  124:22 124:25  125:4  125:11  125:20  126:1  126:5 126:8 | | **honor's**(1) 155:20 **honorable**(1) 1:18 **honor's**(1) 221:23 **hope**(2) 85:23  214:20 **hopeful**(1) 86:25 **hopefully**(3) 203:24  222:4  222:12 **horan**(1) 5:23 **horizon**(2) 55:3  55:5 **horns**(1) 86:16 **horrible**(1) 108:14 **hotly**(1) 17:16 **houlihan**(1) 131:5 **hour**(7) 16:10  16:13  69:6  84:7  84:8  84:10 223:20 **hours**(8) 16:8  16:9  45:21  74:24  74:25 85:24  169:13  169:13 **housekeeping**(1) 220:9 **how**(60) 15:14  17:25  18:9  37:25  38:18 47:18  47:19  50:14  51:7  51:8  52:5  54:11 54:18  55:12  58:19  58:23  59:21  60:9  68:2 73:14  74:16  76:10  77:10  89:9  90:9  98:21 100:14  107:19  110:6  110:16  114:23  115:18 119:1  123:7  125:6  139:13  148:22  149:6 152:11  152:17  152:22  152:24  153:6  156:1 156:16  156:17  156:18  161:15  168:13 169:6  172:18  180:3  187:21  187:23  196:19 200:13  205:2  207:18  213:7  223:14 **howard**(1) 3:21 **however**(9) 17:2  19:14  21:25  27:12  32:6 74:19  147:21  170:3  171:23 **huff**(1) 66:3 **huge**(2) 100:18  136:9  189:25  198:12 **hundred-pag**(1) 131:24 | **hundreds**(3) 24:6  31:19  36:6 **hurdle**(3) 21:4  28:10  71:4 **hurdles**(14) 27:15  28:6  28:20  30:20  31:3 31:3  34:14  35:11  36:4  40:20  41:2  71:3 193:21  193:24 **hurley**(4) 4:18  223:11  223:11  223:24 **hurts**(1) 83:6 **hypothetical**(6) 116:17  117:11  118:8 118:11  118:18  118:20 **i'd**(11) 22:3  68:16  69:3  71:13  77:14  84:2 84:12  174:7  182:16  198:9  199:20 **i'll**(13) 26:16  65:1  68:20  82:21  143:22 160:11  161:2  169:9  195:1  200:20  201:20 202:8  202:21 **i'm**(52) 16:16  16:17  16:25  43:19  43:21 44:20  44:21  44:22  44:23  47:4  48:8  49:9 50:7  53:1  53:14  54:5  57:1  58:7  59:21 60:21  61:7  61:8  63:12  65:4  65:5  66:14 66:21  67:12  68:5  69:16  70:6  132:10  148:4 149:5  154:7  154:14  154:19  154:19  156:1 163:15  169:25  174:16  180:16  182:22 183:20  184:22  184:23  191:5  191:6  195:20 199:3  199:17 **i've**(15) 16:24  23:15  30:20  33:21  36:25 39:4  40:11  50:21  54:6  66:25  152:5  152:10 169:16  190:19  194:2 **i.e**(1) 83:12 **idea**(10) 50:4  50:4  59:20  61:11  63:5  63:23 64:13  100:24  196:7  199:18 **ideal**(1) 154:4 **identical**(5) 85:12  134:13  134:14  157:12 173:22 **identified**(5) 22:7  41:2  74:3  182:7  189:2 **identifies**(1) 200:3 **identifying**(1) 108:21 **ignore**(6) 32:18  32:23  54:5  185:5  189:14 215:3 **ignored**(4) 80:21  188:11  194:6  194:8 **ignoring**(2) 33:9  33:11 **illiquid**(3) 53:20  53:22  129:17 **illiquidity**(3) 53:20  53:21  53:23 **illuminating**(2) 200:4  204:14 **illustrates**(3) 22:4  27:14  155:23 **imagine**(3) 52:6  52:7  147:3 **imbalance**(1) 212:20 **imbedded**(1) 203:13 **immediately**(1) 43:10 **imminent**(1) 204:19 **impact**(4) 76:8  167:9  174:18  215:14 **impacted**(2) 128:17  162:19 **impair**(1) 110:21 **impaired**(8) 42:8  179:9  183:15  183:16 183:18  183:23  184:5  213:9 **impede**(1) 170:5 **implausible**(1) 196:17 **implement**(4) 181:1  182:19  210:12  210:14 **implementation**(2) 209:15  209:17 **implemented**(3) 25:16  180:23  181:18 **implementing**(1) 209:22 **implications**(2) 102:14  216:8 **implicit**(1) 186:9 **implied**(4) 120:15  121:2  121:11  121:13 **imply**(1) 75:5 **importance**(2) 17:7  188:23 | **important**(31) 18:2  23:20  24:4  24:9  38:1 41:4  45:14  64:4  75:8  93:12  93:21  105:19 121:20  129:22  130:5  133:17  145:24  146:17 157:24  158:7  159:4  159:18  170:2  175:4 180:18  181:6  189:11  204:2  204:4  206:1 218:2 **importantly**(6) 17:19  56:3  183:12  209:10 210:16  219:19 **impossible**(1) 102:21 **impressed**(1) 154:19 **impression**(1) 46:22 **improper**(1) 196:15 **improprieties**(2) 194:12  196:6 **improve**(2) 136:24  143:20 **imran**(1) 10:29 **inability**(2) 197:8  197:24 **inaccurate**(1) 195:8 **inadequacy**(1) 76:7 **inadequate**(6) 22:2  31:11  92:5  142:4 157:7  189:5 **inappropriate**(4) 58:18  112:23  118:6 **inc**(1) 13:33 **incentive**(2) 127:13  192:10 **incidentally**(1) 62:15 **inclined**(1) 177:24 **include**(5) 74:7  74:7  81:8  117:21  118:3 **included**(3) 34:3  121:22  121:25 **includes**(7) 22:18  66:18  90:7  112:3  112:10 116:21  121:23 **including**(12) 25:3  67:21  75:13  80:6 114:11  154:10  170:14  186:1  199:10  202:22 210:18  221:5 **income**(1) 167:7 **incomplete**(4) 39:13  39:14  180:20  185:8 **inconsistent**(2) 64:12  208:25 **incorporates**(1) 172:24 **increase**(3) 41:10  102:18  215:14 **increased**(1) 78:4 **increasing**(1) 51:25 **incredible**(1) 124:3 **incredibly**(1) 145:24 **incumbent**(1) 191:9 **incur**(2) 58:12  121:22 **incurred**(1) 58:23 **indebtedness**(2) 202:23  209:19 **indecipherable**(1) 55:19 **indeed**(5) 17:21  112:7  114:1  114:3  218:21 **indefinitely."**(1) 100:19 **independent**(11) 18:16  18:22  40:21  58:9 58:22  60:16  185:11  190:22  197:16  205:10 219:1 **index**(2) 52:17  54:8 **indexed**(1) 79:8 **indicated**(7) 16:11  30:1  70:3  70:10  179:5 200:12  201:4 **indicates**(2) 22:8  201:6 **indication**(4) 54:1  129:15  158:10  201:13 **indicative**(2) 153:13  192:5 **indicator**(1) 128:14 **indicia**(1) 50:23 **indiscernible**(2) 39:13  223:17 **indisputable**(1) 97:14 **individual**(3) 66:12  142:20  142:20 **induce**(1) 197:4 **indulgence**(2) 43:22  221:8 **industry**(28) 51:4  51:7  51:15  80:18  86:7 94:25  95:3  95:22  96:11  96:18  96:20  97:3 97:7  97:8  97:13  97:18  97:25  98:12  98:15 98:17  98:21  99:5  99:9  99:11  99:19  100:2 123:16  123:17 **industry"**(1) 96:22 **inescapable**(1) 215:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **inevitably**(1) 170:11 | | **interests**(15) 25:17 170:13 170:23 171:2 171:5 171:7 171:8 171:10 171:15 171:18 171:21 171:24 173:6 186:1 201:1 | | **issues**(52) 17:9 17:16 17:23 18:11 19:6 30:2 37:14 38:2 38:4 39:23 43:20 44:20 46:19 66:4 69:18 70:18 70:22 75:14 83:11 85:22 88:16 88:17 161:12 165:2 165:7 165:17 166:1 166:5 166:6 169:19 170:4 170:20 172:1 172:3 173:5 173:8 173:9 185:17 190:6 191:2 199:14 200:13 200:21 200:21 200:22 201:7 201:12 201:1 200:24 212:2 221:24 | | **jhaveri**(2) 10:16 10:17 | |
| **inexpensive**(1) 124:11 133:22 134:2 | | | | | | **jillian**(1) 7:22 | |
| **infects**(1) 98:17 | | | | | | **jim**(4) 69:13 82:19 198:8 201:21 | |
| **inflated**(2) 110:19 134:10 | | **internal**(2) 109:20 135:1 | | | | **jimmy**(1) 124:15 | |
| **influence**(1) 172:9 | | **internet**(1) 53:9 | | | | **job**(5) 75:16 184:13 191:6 191:6 194:25 | |
| **inform**(1) 190:24 | | **interpretation**(4) 212:17 213:19 213:21 213:22 | | | | **john**(1) 10:7 | |
| **informal**(3) 75:25 167:11 167:12 | | | | **issues'**(1) 109:4 | | **johnny**(1) 69:24 | |
| **information**(4) 23:7 107:24 130:7 130:10 | | **interpreted**(1) 183:5 | | **it's**(144) 18:11 20:24 21:6 22:19 24:5 25:17 25:20 26:3 27:6 27:6 28:15 31:23 31:25 35:22 35:23 35:23 35:24 36:1 37:1 39:9 39:13 39:21 40:24 40:25 41:4 42:4 42:13 42:18 42:20 42:23 43:1 46:8 46:24 47:22 48:9 48:10 48:25 49:17 49:17 50:8 50:10 50:11 50:11 51:15 52:18 53:11 54:12 54:13 54:13 54:21 56:5 57:4 57:5 59:1 59:3 59:9 59:18 60:2 60:14 61:6 63:11 63:13 63:19 64:6 64:6 64:10 64:18 65:5 65:7 65:19 65:21 67:7 67:25 68:25 69:22 70:19 70:20 71:10 71:13 71:22 75:77:11 80:7 83:3 83:4 83:4 83:18 132:14 132:15 132:16 132:16 132:19 132:21 133:25 133:25 134:4 135:21 136:3 136:23 136:23 139:24 140:14 140:16 140:2 141:5 144:20 145:6 147:11 148:14 150:2 153:13 155:5 155:11 156:21 156:22 157:2 158:6 158:7 158:10 161:20 165:17 166:15 167:4 173:15 175:25 176:14 177:10 179:1 183:24 184:16 188:16 190:19 191:21 192:16 193:7 193:17 193:19 194:21 195:2 196:25 197:23 198:21 202:10 | | **johnston**(1) 2:14 | |
| **initial**(4) 78:12 166:16 201:6 203:7 | | **interrelationships**(1) 200:8 | | | | **joint**(1) 157:11 | |
| **initially**(1) 159:11 | | **into**(56) 15:10 22:25 23:6 27:25 31:15 43:5 54:7 56:19 66:9 68:12 70:17 71:5 71:9 73:7 73:19 73:21 74:9 83:1 88:3 93:6 95:10 103:12 104:22 105:25 107:24 110:20 111:9 123:7 124:1 131:17 134:16 136:21 142:22 144:8 149:2 151:13 155:6 159:15 163:10 163:22 164:2 181:12 182:6 193:20 194:4 195:21 201:1 202:16 202:22 203:1 217:7 217:22 218:11 219:20 219:25 221:2 | | | | **jonathan**(1) 6:39 | |
| **initiate**(1) 117:11 | | | | | | **jones**(3) 5:28 11:7 11:7 | |
| **initiatives**(1) 199:13 | | | | | | **jordan**(1) 9:15 | |
| **inject**(2) 168:19 194:3 | | | | | | **joseph**(1) 10:13 | |
| **injustice**(1) 139:6 | | | | | | **joshua**(1) 12:15 | |
| **ink**(1) 108:12 | | | | | | **jpm**(6) 124:12 124:16 127:2 127:5 135:2 151:2 | |
| **innocent**(1) 136:20 | | | | | | | |
| **inside**(1) 114:6 | | | | | | **jpmorgan**(1) 12:30 | |
| **insiders**(1) 73:16 | | **intra**(1) 203:14 | | | | **jpm's**(2) 94:13 124:17 | |
| **insignificant**(1) 174:6 | | **intra-class**(1) 43:17 | | | | **jr.,esq**(1) 9:14 | |
| **insisted**(1) 106:15 | | **introduced**(1) 51:19 | | | | **judge**(9) 1:18 1:19 50:18 66:22 140:17 142:9 165:5 195:25 214:13 | |
| **insisting**(1) 109:8 | | **intuit**(1) 219:15 | | | | | |
| **insolvency**(40) 20:3 20:4 20:13 20:22 20:24 21:1 21:2 21:4 21:7 31:3 31:14 28:19 28:23 28:25 29:6 29:17 29:20 29:2 30:10 30:15 31:17 31:9 31:24 31:25 32:8 33:13 38:7 49:20 55:3 55:5 55:9 71:5 71:11 71:18 114:4 115:24 122:1 167:9 167:13 167:15 | | **investigate**(1) 191:7 | | | | **judged**(1) 166:14 | |
| | | **investigation**(1) 25:2 | | | | **judges**(3) 149:6 157:18 212:22 | |
| | | **investment**(6) 10:16 13:9 56:12 58:19 124:10 150:21 | | | | **judging**(1) 166:21 | |
| | | | | | | **judgment**(15) 18:11 19:13 20:20 25:13 25:20 27:2 28:20 29:25 32:2 36:15 42:17 160:6 173:4 188:5 190:25 | |
| **insolvent**(19) 20:15 20:19 29:1 29:9 31:17 32:3 57:10 57:10 58:13 58:25 106:13 107:14 111:11 123:3 125:7 125:9 142:16 151:11 204:19 | | **investments**(2) 105:15 106:2 | | | | | |
| | | **investors**(6) 13:43 13:43 124:7 127:12 129:18 142:11 | | | | **judicial**(2) 87:2 174:10 | |
| | | | | | | **julie**(3) 104:4 104:8 124:9 | |
| **instance**(3) 58:7 74:8 92:21 | | **invitation**(1) 85:2 | | | | **july**(4) 110:16 124:15 130:17 130:22 | |
| **instances**(1) 142:24 | | **invite**(1) 155:6 | | **item**(1) 181:17 | | **jump**(3) 44:20 130:4 130:23 | |
| **instantaneously**(1) 101:8 | | **involved**(7) 47:5 95:23 112:11 133:2 147:5 147:22 152:5 | | **its**(37) 22:2 24:23 24:24 25:2 25:3 25:4 25:6 37:3 50:20 63:5 87:24 91:19 99:1 99:3 100:4 100:12 101:24 103:17 105:15 110:4 119:9 125:8 130:18 136:24 142:14 143:20 150:20 158:19 170:12 171:2 171:17 173:20 181:1 188:17 210:24 218:7 218:23 | | **juncture**(6) 69:21 82:14 85:9 91:21 201:20 203:17 | |
| **instead**(11) 21:3 72:22 74:12 77:5 79:23 103:17 103:19 119:14 136:5 172:5 189:15 | | | | | | | |
| | | | | | | **june**(9) 1:14 15:1 51:19 82:12 95:18 99:16 108:24 109:18 224:10 | |
| **instructed**(1) 114:6 | | **involvement**(2) 145:23 196:1 | | | | | |
| **instruction**(2) 38:15 221:4 | | **involves**(2) 116:11 149:14 | | **itself**(7) 20:12 32:21 57:5 107:16 109:16 163:4 198:2 | | **junior**(2) 126:4 126:13 | |
| **instructive**(2) 22:15 42:4 119:9 | | **involving**(3) 106:3 108:8 125:21 | | | | **jurisdictional**(1) 88:17 | |
| **instructs**(3) 104:25 149:12 149:13 | | **ipad**(2) 51:16 52:12 | | | | **just**(127) 21:1 24:7 24:14 25:5 25:12 27:19 32:8 32:18 33:24 34:21 35:16 39:10 40:7 40:9 41:17 43:19 44:10 45:18 50:4 56:13 57:1 60:11 60:13 60:14 63:21 65:6 65:7 68:12 68:19 69:15 72:22 75:5 80:21 89:24 97:15 98:1 98:2 98:10 104:21 105:8 105:8 106:7 106:23 107:7 107:8 109:24 110:2 111:9 114:21 117:2 119:6 119:12 119:25 123:7 123:13 123:13 123:18 123:19 124:23 124:24 125:5 126:4 127:20 128:3 128:22 130:21 132:9 134:6 135:22 136:24 138:3 140:5 143:22 145:8 148:14 150:9 150:21 152:15 152:18 153:2 153:10 154:1 154:4 154:6 154:15 156:21 158:6 160:11 163:11 165:4 166:22 168:17 176:25 178:2 179:12 186:6 186:14 186:17 189:14 190:9 192:18 192:22 193:15 194:5 194:22 194:24 198:11 198:14 199:1 199:19 199:20 200:14 204:20 205:7 210:11 214:3 214:3 214:16 215:1 216:10 217:2 217:25 221:14 222:22 222:24 223:8 223:12 | |
| **insurance**(2) 73:16 222:10 | | **ipads**(1) 52:9 | | | | | |
| **insurers**(1) 73:18 | | **iphone**(3) 51:18 51:19 52:13 | | | | | |
| **integrated**(9) 48:5 48:15 48:24 59:24 60:3 60:6 60:10 114:8 114:19 | | **iphones**(2) 52:8 56:14 | | | | | |
| | | **ipods**(1) 56:15 | | **it's**(75) 85:11 86:14 87:13 87:23 88:6 89:11 91:16 97:13 98:9 98:10 100:16 101:13 103:7 103:22 105:19 106:13 106:1 106:23 106:24 107:25 110:9 110:9 111:3 114:17 115:25 118:6 119:16 119:25 121:1 121:20 122:9 122:15 122:15 124:6 122:19 123:13 123:13 123:13 123:14 123:14 124:19 125:7 126:5 126:14 127:8 127:9 127:12 127:17 127:18 128:4 128:22 129:8 129:9 129:23 129:24 130:22 130:25 131:23 146:1 204:4 204:13 206:1 206:17 207:25 212:9 212:10 212:22 212:23 214:25 215:2 215:4 215:11 215:11 216:25 222:13 223:12 | | | |
| **integration**(9) 45:14 60:11 75:25 76:1 76:1 76:6 167:8 167:11 167:12 | | **iridium**(3) 56:8 128:10 128:21 | | | | | |
| | | **iridium's**(1) 50:17 | | | | | |
| **intellectual**(1) 75:19 | | **ironic**(1) 176:14 | | | | | |
| **intended**(5) 114:18 115:14 121:22 133:15 183:24 | | **irrelevant**(1) 77:7 | | | | | |
| | | **irs**(1) 222:10 | | **i'd**(6) 87:5 120:4 131:7 211:6 212:3 220:9 | | **justification**(1) 116:22 | |
| **intensively**(2) 46:19 46:20 | | **isn't**(11) 24:4 25:11 32:7 50:4 53:17 63:2 73:14 154:20 183:9 186:10 | | **i'll**(5) 88:22 205:6 205:6 208:16 216:13 | | **justify**(4) 33:5 40:5 165:19 187:10 | |
| **intentional**(13) 19:25 28:9 28:15 38:5 39:15 67:17 67:24 104:23 137:8 164:1 165:13 196:8 196:11 | | | | **i'm**(24) 85:5 85:19 86:25 87:12 94:6 94:9 94:23 98:20 104:16 105:7 123:7 125:3 126:25 131:6 167:16 167:17 168:17 169:3 173:23 173:24 215:25 216:4 216:4 222:3 | | **justin**(2) 10:42 13:40 | |
| | | | | | | **kalenchits**(2) 7:41 7:41 | |
| | | | | | | **kansa**(1) 7:24 | |
| **intentionally**(2) 105:4 205:9 | | **isn't**(5) 97:16 126:13 209:2 210:16 210:16 | | | | **kaplan**(1) 8:16 | |
| **inter**(3) 180:23 181:9 181:17 | | **issue**(67) 17:11 18:2 29:9 35:2 35:23 38:14 38:19 39:12 39:25 44:11 46:2 47:18 61:14 62:18 68:9 71:6 75:25 78:12 109:9 110:24 113:4 114:5 114:14 116:10 117:3 119:2 119:8 119:19 119:25 120:21 135:19 136:5 142:9 143:5 149:16 150:8 168:8 179:10 179:14 179:17 182:1 185:18 188:1 188:14 188:16 189:9 189:11 190:14 192:1 192:15 198:10 199:6 199:20 201:19 203:1 203:15 212:4 214:8 216:18 217:6 217:9 217:25 219:22 220:23 221:1 221:11 | | **i've**(4) 104:12 118:5 212:14 217:19 | | **karsh**(2) 209:7 209:10 | |
| **inter-company**(4) 181:2 181:4 181:5 | | | | **james**(9) 1:24 1:25 1:26 2:14 3:29 12:27 15:5 78:11 185:1 | | **kasowitz**(3) 4:39 9:35 223:16 | |
| **interactive**(2) 105:13 105:25 | | | | | | **katharine**(1) 3:37 | |
| **intercompany**(9) 23:18 23:19 32:23 33:4 144:14 209:15 209:22 210:6 216:23 | | | | **jane**(1) 6:43 | | **katten**(1) 10:6 | |
| | | | | **january**(3) 81:18 108:14 218:7 | | **kavalis**(1) 11:33 | |
| **interest**(28) 34:25 35:11 43:9 48:16 67:19 67:21 73:8 78:16 78:19 81:23 90:8 134:16 136:16 138:7 141:2 143:9 143:15 143:22 144:9 156:6 159:1 184:16 201:5 202:23 209:19 210:3 210:21 218:13 | | **issued**(3) 65:24 88:3 110:17 | | **january/february**(1) 82:8 | | **kaye**(2) 6:38 9:15 | |
| | | **issuers**(1) 131:1 | | **jarashow**(1) 8:18 | | **kazan**(1) 12:39 | |
| | | | | **jason**(2) 8:13 11:12 | | | |
| **interested**(5) 9:4 11:4 11:11 12:18 177:3 | | | | **jealous**(1) 87:12 | | | |
| **interesting**(8) 45:24 45:25 46:24 180:25 200:3 207:9 207:10 207:13 | | | | **jefferies**(2) 10:41 10:41 | | | |
| | | | | **jenner**(3) 5:16 8:41 221:20 | | | |
| **interestingly**(1) 73:18 | | | | **jennifer**(1) 10:25 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **keep**(2) 68:20 205:5 | | **larger**(2) 40:24 118:15 | | **lender's**(2) 16:20 67:23 | | **likelihood**(7) 19:6 19:8 41:3 71:18 75:24 76:6 76:7 |

**keep**(2) 68:20 205:5
**keeps**(1) 147:11
**kelly**(1) 11:37
**ken**(1) 7:24
**kenneth**(1) 12:11
**kenney**(1) 7:26
**kenny**(2) 117:16 117:20
**kerriann**(1) 7:18
**kevin**(1) 1:18  7:13
**key**(17) 17:22  19:6  22:7  37:14  39:6  39:23  72:5  75:21  76:18  76:18  76:19  77:9  83:17  140:7  173:22  175:17  200:12

**keys**(1) 140:8
**kick**(1) 155:5
**kidding**(1) 60:11
**kids**(1) 64:24
**kim**(2) 8:26  11:42
**kind**(28) 19:17  36:7  39:9  41:11  45:8  46:9  47:23  50:18  56:1  66:1  66:14  66:16  67:23  87:14  103:5  103:8  126:3  127:17  132:11  154:4  167:1  176:14  182:1  204:2  206:13  206:14  214:10  221:21

**kinds**(1) 56:24
**king**(4) 2:43  3:38  4:34  5:37
**kira**(1) 6:31
**kizzy**(1) 8:18
**klauder**(1) 5:35
**klee**(1) 49:4
**kline**(1) 7:11
**knapp**(4) 108:25  109:2  109:5  187:16
**knapp's**(1) 109:11
**knew**(9) 51:21  86:6  86:10  104:18  153:10  177:21  190:5  190:10  194:23

**knight**(1) 12:26
**know**(77) 37:24  38:1  38:3  38:5  38:6  38:10  45:13  47:24  51:23  52:4  52:5  52:6  52:11  54:10  54:10  56:4  63:16  64:19  65:2  69:6  69:15  74:18  75:15  77:7  85:1  85:10  85:11  86:12  87:19  93:10  97:24  106:20  106:22  107:8  107:17  108:1  110:1  129:7  129:10  130:15  132:10  132:21  132:24  133:12  134:1  141:13  144:23  146:5  146:25  147:5  149:2  149:3  149:4  149:5  149:6  151:9  151:15  152:10  152:11  153:19  155:7  155:20  155:2  156:13  165:3  167:15  190:7  190:17  190:24  195:9  195:13  195:21  197:2  200:7  205:1  209:12  222:20

**knowing**(5) 64:6  65:6  70:17  146:1  200:7
**knowingly**(3) 65:10  65:11  153:10
**known**(9) 51:5  70:22  95:23  95:25  96:3  129:9  154:9  186:2  190:10

**knows**(10) 15:19  56:7  56:7  56:8  57:11  83:3  134:9  151:16  154:12  154:17

**korpus**(4) 4:41  223:15  223:16  223:22
**krakauer**(4) 7:9  222:4  222:5  222:20
**kramer**(1) 9:12
**kulnis**(3) 151:24  151:25  153:16
**kurtz**(7) 91:12  91:15  145:22  151:22  177:4  177:13  201:25

**labelon**(2) 140:20  141:8
**labor**(2) 222:9  222:14
**lack**(5) 26:7  99:19  103:11  148:5  162:8
**lacked**(1) 165:11
**lacking**(4) 92:10  146:6  155:19  161:7
**laid**(1) 188:23
**landin**(1) 105:23
**landis**(2) 3:11  3:13
**landon**(2) 105:11  105:12
**language**(1) 220:24
**lantry**(1) 7:13
**large**(4) 42:19  44:4  80:6  134:8
**largely**(1) 41:17

**larger**(2) 40:24  118:15
**largest**(6) 100:7  100:22  150:25  155:8  155:9  175:6

**larn**(1) 12:5
**last**(22) 17:1  47:17  52:16  52:16  82:15  92:13  100:14  102:17  113:7  114:9  147:14  153:18  174:6  179:13  180:17  202:16  209:1  210:22  211:11  216:8  216:14  216:15

**lastly**(2) 141:21  183:3
**later**(13) 16:12  48:18  49:25  70:7  86:21  88:22  91:19  93:21  108:17  108:23  130:17  137:19  208:21

**lauding**(1) 131:9
**laughing**(1) 126:3
**laughter**(20) 45:4  47:16  64:23  69:5  70:1  70:5  70:8  85:18  86:23  87:6  112:8  122:18  132:13  169:18  184:20  206:10  211:22  213:17  214:23  222:19

**lauren**(1) 5:29
**laurie**(1) 2:21
**law**(28) 4:32  9:35  18:18  35:23  36:2  49:8  62:22  62:23  64:18  65:20  93:4  116:4  119:7  139:9  143:24  143:24  144:17  148:11  149:14  150:9  161:11  162:3  207:14  210:16  214:8  214:13  223:16

**laws**(1) 62:3
**lawyers**(2) 148:21  148:23
**lawyer's**(1) 87:13
**lay**(2) 40:12  129:19
**layer**(1) 148:18
**layout**(2) 16:17  79:19
**layton**(1) 2:40
**lazard**(4) 34:19  78:8  78:22  79:8  80:7  81:24  82:9  216:8  218:7

**lazard's**(2) 34:18  79:11
**lbo**(37) 17:17  18:9  18:21  19:7  22:11  23:2  24:11  27:10  41:24  83:10  86:7  88:24  90:2  95:23  96:17  98:12  98:24  101:6  104:23  111:5  114:18  124:5  125:9  127:14  128:15  131:9  131:24  133:6  134:16  137:6  153:21  159:15  174:9  174:12  175:4  177:2  178:24

**lead**(5) 144:22  144:22  151:25  152:1  152:17
**leading**(1) 175:9
**leads**(1) 145:10
**league**(3) 46:25  47:9  115:7
**learn**(1) 161:14
**least**(18) 23:8  26:9  32:10  34:16  41:15  46:20  46:21  52:1  89:12  91:2  93:15  108:2  152:6  153:14  155:11  171:25  202:25  206:9

**leat**(1) 126:5
**leave**(6) 90:10  93:20  132:18  132:7  174:11  196:20

**leaving**(3) 33:2  162:8  197:10
**lebanon**(1) 66:3
**leboeuf**(1) 2:12
**leboeuf**(2) 12:14  12:39
**lee**(3) 12:9  124:16  150:23
**lee's**(1) 124:19
**left**(14) 46:22  60:8  96:19  101:4  102:1  129:23  164:10  164:12  164:15  164:23  164:24  180:4  180:6  219:5

**leg**(1) 139:16
**legal**(9) 18:21  35:22  108:21  109:22  148:20  161:10  161:12  165:9  179:1

**legally**(1) 212:7
**leigh-anne**(1) 4:29
**lemay**(2) 3:19  184:13
**lender**(5) 58:15  83:12  83:13  97:11  147:4

**lender's**(2) 16:20  67:23
**lenders**(66) 12:8  15:24  16:21  26:6  33:11  33:16  38:20  42:24  44:3  44:5  44:16  49:15  65:23  78:15  78:18  90:25  91:4  91:12  97:10  104:2  115:1  124:6  127:13  133:13  134:14  136:7  137:11  138:10  143:9  144:24  145:6  145:21  147:16  148:17  149:22  151:7  151:18  153:21  162:17  162:20  162:20  163:10  164:6  174:12  175:7  175:23  177:16  178:6  178:8  178:10  178:22  179:8  179:22  181:25  194:22  199:16  201:24  202:1  202:6  202:12  202:16  202:18  210:3  210:21  210:2

**lenders'**(1) 205:13
**lender's**(2) 117:18  118:24
**length**(1) 29:21
**leonard**(1) 1:32
**lerman**(1) 8:21
**less**(23) 21:1  29:1  29:13  30:5  30:8  30:9  30:17  34:11  41:1  46:7  57:13  71:8  71:10  82:13  90:22  108:11  108:16  166:5  183:18  183:19  190:23  200:20  205:4

**lessens**(1) 81:13
**let**(36) 15:13  24:22  37:2  39:10  40:15  62:16  78:6  79:13  82:14  85:16  91:6  93:22  99:20  126:20  135:19  144:18  154:1  158:24  160:9  163:6  165:1  166:8  180:3  185:16  185:18  185:21  186:14  186:17  191:1  191:2  195:19  205:13  209:12  210:9  213:13  219:7

**let's**(19) 19:5  28:6  39:7  49:19  51:3  53:19  54:3  54:17  61:17  61:18  64:2  64:3  68:23  68:24  154:7  154:15  156:12  156:17  178:5

**letter**(3) 99:16  99:22  117:8
**letters**(1) 114:25
**letting**(1) 146:16
**let's**(14) 94:13  96:1  98:23  101:22  103:2  104:4  106:9  122:20  124:8  124:8  125:12  129:20  129:22  167:12

**level**(20) 4:35  20:17  20:24  21:10  21:11  30:13  32:8  57:12  57:22  59:3  61:5  61:6  61:16  63:6  131:1  144:5  144:5  183:14  216:24  217:8

**levels**(1) 49:24
**leverage**(15) 78:1  104:5  123:18  125:14  125:16  126:4  127:25  132:18  132:23  135:4  135:12  139:15  191:17  197:11  204:17

**leveraged**(2) 49:10  126:6
**levin**(1) 9:12
**levy**(1) 6:35
**lewis**(1) 9:23
**lexi**(1) 9:23
**lexington**(1) 2:36
**liang**(2) 12:11  153:23
**lie**(3) 54:18  100:1  212:21
**liebentritt**(5) 1:39  147:21  147:23  176:21  177:22

**liebentritt's**(2) 148:6  178:7
**life**(1) 63:4
**lifetime**(1) 87:13
**light**(5) 71:24  91:13  98:1  107:19  221:23
**like**(65) 15:13  18:10  19:7  22:3  24:9  26:7  28:14  31:1  34:14  35:15  36:1  40:4  40:8  40:9  48:13  48:21  52:8  52:9  53:9  55:4  55:8  55:11  56:5  56:24  59:19  61:15  65:6  66:12  72:6  75:4  75:8  77:7  77:25  78:14  79:24  81:2  84:10  86:16  92:2  92:3  124:  130:1  131:7  132:17  133:19  134:10  135:12  136:2  147:19  154:6  157:10  174:7  174:2  197:21  198:1  198:9  199:20  199:21  208:13  212:3  212:14  214:9  214:16  218:19  220:10

**like."**(1) 208:9

**likelihood**(7) 19:6  19:8  41:3  71:18  75:24  76:6  76:7

**likelihoods**(1) 72:19
**likely**(20) 19:11  19:13  19:24  21:23  24:11  27:2  27:21  31:13  33:1  36:17  36:18  93:15  93:15  105:3  147:11  149:19  166:1  166:5  188:17  219:24

**likewise**(2) 176:8  213:10
**limit**(2) 140:9  217:11
**limited**(5) 44:23  83:22  189:21  192:20
**line**(17) 40:16  40:24  52:16  56:10  56:13  98:4  98:5  109:8  111:16  111:18  111:25  112:4  112:6  112:10  121:15  188:3

**lines**(1) 112:12
**lineup**(1) 69:16
**lingers**(1) 132:14
**lion's**(1) 41:9
**lip**(1) 205:25
**liquid**(3) 54:11  129:14  204:25
**liquidity**(3) 129:2  205:4  205:4
**list**(1) 165:9
**listen**(2) 75:2  87:17
**lists**(1) 165:7
**literature**(4) 116:3  116:14  116:15  117:1
**litigant**(1) 28:16
**litigate**(1) 179:14
**litigated**(6) 16:22  26:9  179:14  179:17  206:4  212:14

**litigating**(9) 17:17  25:23  25:25  28:1  28:4  31:5  35:20  83:10  210:25

**litigation**(59) 22:7  24:6  24:20  26:13  27:2  33:6  33:6  37:25  40:17  41:7  42:11  42:19  44:11  59:14  67:14  72:5  72:13  72:19  73:6  73:12  73:22  74:8  87:24  87:24  88:12  89:1  89:10  90:12  90:15  92:3  92:8  92:22  93:9  93:11  103:6  103:7  135:24  138:25  144:3  145:9  149:25  150:3  153:16  157:7  160:20  163:14  164:9  164:21  169:2  174:3  174:11  177:6  177:9  182:9  190:11  191:20  219:1  220:22  222:7

**litigations**(1) 164:21
**litman**(1) 187:16
**little**(39) 24:22  33:2  46:3  46:19  46:20  47:21  49:19  49:24  57:13  66:15  66:15  66:16  69:18  84:9  85:15  86:16  89:14  89:15  103:14  115:21  135:20  138:22  143:12  144:25  145:21  147:16  151:17  169:13  180:20  184:8  184:9  184:16  191:3  191:13  194:3  195:23  204:12  222:22

**litton**(1) 139:7
**live**(1) 155:3
**living**(1) 211:2
**llc**(5) 4:11  6:5  9:31  13:13  50:6
**llp**(24) 1:23  2:19  3:18  4:40  5:4  5:10  6:10  6:18  6:38  8:25  8:41  9:4  9:13  10:6  10:11  10:20  11:41  12:14  12:22  12:34  12:39  12:43  13:17  14:4

**loaded**(3) 59:2  102:8  216:5
**loan**(4) 67:15  68:7  140:23  149:18
**loans**(1) 136:1
**locate**(1) 56:2
**logic**(2) 125:5  127:19
**logical**(1) 125:8
**logically**(5) 59:5  59:11  59:12  60:19  74:18  60:19  100:14  132:11  173:15  176:19  187:12  201:11

**long**(12) 34:24  36:21  70:12  71:14  80:10  90:9  100:14  132:11  173:15  176:19  187:12  201:11

**long-term**(5) 95:20  95:25  96:4  97:25
**longer**(2) 70:24  201:1

| Word | Page:Line |
|---|---|
| look(71) | 18:10 19:2 19:5 19:22 21:22 26:20 27:2 28:6 34:4 40:21 41:22 42:22 48:13 52:17 54:7 54:11 54:17 55:10 55:11 55:14 76:22 81:18 82:3 89:17 90:18 90:24 91:19 94:13 96:1 98:21 98:23 101:22 104:25 114:10 122:20 124:8 124:24 129:22 132:8 133:10 133:11 134:24 137:1 137:22 140:17 147:7 148:11 151:8 154:6 156:8 158:7 160:24 164:14 165:5 165:15 165:22 166:15 182:24 186:11 188:14 188:22 188:25 189:1 193:16 201:1 216:7 217:24 219:7 219:11 |
| looked(15) | 20:2 21:18 28:13 51:17 72:23 72:25 75:7 75:25 82:1 125:11 128:13 161:13 161:13 177:20 188:3 |
| looking(18) | 39:9 41:5 52:10 53:11 57:2 59:8 72:4 72:22 73:3 81:5 95:5 112:12 138:7 151:1 185:21 188:23 190:6 198:11 |
| looks(12) | 28:11 28:14 48:21 55:4 55:8 56:5 72:6 101:11 101:19 130:1 130:21 187:15 |
| looming(2) | 56:4 56:4 |
| loose(2) | 48:4 209:13 |
| los(2) | 2:16 100:11 |
| lose(7) | 27:18 27:21 28:2 29:16 60:2 60:5 60:11 |
| loses(1) | 65:14 |
| losquadro(1) | 12:19 |
| loss(1) | 26:25 |
| lost(1) | 38:6 |
| lot(40) | 16:25 19:16 28:11 28:16 30:12 30:20 34:17 34:22 35:8 35:14 36:16 36:25 37:17 40:19 44:22 44:22 51:2 56:22 63:2 63:3 68:14 69:4 71:2 71:3 72:6 74:12 74:14 74:25 75:19 90:14 94:4 94:5 102:24 118:13 121:18 190:19 202:3 204:24 208:8 208:14 |
| lots(7) | 40:19 52:1 56:2 61:20 61:20 63:4 111:4 |
| loud(1) | 66:24 |
| love(2) | 40:2 69:3 |
| loves(1) | 56:17 |
| low(14) | 23:18 25:12 67:7 71:20 73:8 78:9 80:17 90:13 120:16 121:4 124:12 127:25 135:17 218:4 |
| lower(4) | 48:11 74:9 103:21 187:23 |
| lowered(1) | 111:22 |
| ltd(1) | 12:26 |
| ludwig(1) | 7:22 |
| lugano(1) | 1:44 |
| lump(1) | 35:18 |
| lumping(2) | 66:9 66:11 |
| lunch(4) | 84:13 124:16 124:18 124:20 |
| lynch(4) | 2:19 6:38 100:4 125:13 |
| lynn(1) | 2:34 |
| ma (1) | 126:14 |
| macquarie(2) | 13:29 13:29 |
| maddening(1) | 17:1 |
| made(25) | 21:8 27:12 31:22 41:18 51:22 57:16 64:14 66:23 70:16 74:6 85:5 101:18 110:6 123:13 131:18 150:22 154:8 160:1 166:2 168:7 170:7 179:5 215:10 216:18 222:12 |
| madlyn(1) | 6:41 |
| magic(1) | 24:8 |
| maglan(2) | 13:21 13:21 |
| magnitude(3) | 102:1 115:24 190:21 |
| mail(1) | 109:20 |
| mails(1) | 125:21 |
| maintain(1) | 52:24 |
| major(5) | 24:19 46:25 47:9 115:7 171:9 |
| majority(2) | 42:3 156:23 |

| Word | Page:Line |
|---|---|
| make(42) | 18:11 32:9 33:7 35:20 36:2 38:17 41:11 41:12 46:10 47:18 53:22 55:11 55:18 57:15 78:20 81:25 82:5 125:15 125:14 127:21 153:10 153:12 160:16 168:12 182:16 183:25 184:10 191:15 195:24 196:12 196:14 196:18 196:18 196:21 197:24 203:19 208:6 208:24 209:5 213:6 213:20 218:16 219:16 |
| makes(10) | 51:2 66:10 75:8 81:15 157:9 174:13 183:22 196:16 212:11 214:9 |
| makeup(1) | 98:23 |
| making(8) | 43:19 52:11 52:22 154:3 195:23 196:1 196:16 222:11 |
| manage(1) | 49:6 |
| management(35) | 5:43 8:5 8:5 10:24 10:24 11:18 11:28 12:8 12:18 81:5 84:21 97:17 100:23 101:7 103:17 103:23 104:18 107:1 108:3 108:4 108:13 108:15 108:16 110:11 110:12 112:19 130:9 131:14 134:4 134:5 146:21 173:16 174:1 187:4 199:12 |
| management's(1) | 194:19 |
| management's(11) | 103:3 103:7 103:21 104:3 104:7 107:13 111:13 111:19 111:20 112:20 121:13 |
| managing(3) | 86:15 104:5 108:7 |
| mandava(3) | 34:19 80:9 80:15 |
| mandava's(1) | 81:4 |
| maneuver(1) | 147:15 |
| manges(2) | 5:4 10:20 |
| manifest(2) | 44:16 211:3 |
| manifestation(1) | 64:9 |
| manipulation(1) | 58:17 |
| manner(4) | 73:23 209:22 209:24 210:1 |
| many(18) | 17:8 46:14 47:6 51:6 51:22 61:24 68:17 88:7 132:22 133:18 134:13 134:13 162:15 164:2 173:21 205:2 210:3 210:24 |
| map(1) | 45:12 |
| marc(2) | 3:23 6:11 |
| march(16) | 96:9 96:16 99:8 99:8 106:5 106:11 107:8 107:9 107:13 108:6 108:10 110:13 124:14 125:12 187:8 218:24 |
| marino(1) | 3:5 |
| mark(1) | 147:11 |
| markedly(1) | 95:17 |
| market(64) | 1:11 2:24 3:14 29:25 30:1 46:5 48:8 48:12 48:13 48:22 48:23 49:13 50:2 50:8 50:20 50:21 51:25 52:5 53:19 53:22 54:6 54:7 54:8 54:11 55:4 55:6 56:17 56:19 56:20 56:21 56:24 57:2 57:4 79:9 80:14 82:2 82:4 82:6 98:8 114:24 117:9 119:6 119:14 119:21 120:5 123:20 123:24 125:1 127:6 127:16 128:11 128:13 129:3 129:14 129:15 129:15 130:6 130:7 130:10 130:11 130:12 204:25 |
| marketed(2) | 115:17 141:2 |
| marketing(1) | 126:10 |
| marketplacc(5) | 56:19 79:9 124:13 125:25 127:12 |
| markets(2) | 171:9 171:14 |
| marsal(2) | 13:33 13:33 |
| martin(2) | 4:5 156:5 |
| massive(1) | 216:23 |
| material(7) | 53:6 87:12 87:14 181:16 187:5 187:8 198:12 |
| materially(1) | 181:23 |
| math(3) | 47:21 120:14 169:9 |
| mathematical(1) | 215:11 |

| Word | Page:Line |
|---|---|
| matter(27) | 30:20 50:3 60:13 60:13 61:17 61:18 64:18 65:20 75:10 78:12 78:12 78:21 82:6 104:12 122:6 122:12 152:11 198:20 198:22 206:2 210:25 222:5 222:6 222:7 223:8 223:12 224:7 |
| mattering(1) | 49:14 |
| matters(6) | 15:9 70:21 93:16 168:13 220:9 221:4 |
| matthew(2) | 8:6 11:23 |
| mauceri(1) | 12:23 |
| maximum(1) | 145:8 |
| may(40) | 11:42 26:3 43:11 45:6 52:19 57:20 75:3 80:18 84:22 84:24 85:14 86:13 89:25 91:14 97:24 102:2 103:23 106:25 107:11 107:14 112:24 120:23 124:11 150:15 153:12 153:12 176:17 177:24 177:25 186:8 187:17 187:24 195:1 201:10 203:13 211:6 216:10 220:13 221:16 221:1 |
| maybe(13) | 33:18 37:10 49:24 63:18 65:1 130:2 152:15 156:7 187:24 188:19 188:20 192:14 206:5 |
| mayer(1) | 3:37 |
| mccarter(2) | 3:36 9:8 |
| mccormack(1) | 3:20 |
| mccormick(1) | 10:4 |
| mcdaniel(1) | 4:33 |
| mcguinness(1) | 12:27 |
| mcguire(1) | 13:17 |
| mcneill(1) | 2:20 |
| meagher(1) | 13:38 |
| mean(15) | 21:2 29:18 34:13 51:21 53:24 64:16 65:18 65:23 125:7 143:10 152:18 171:13 192:3 192:4 213:15 |
| meaning(2) | 55:25 166:2 |
| means(8) | 36:20 53:24 58:11 88:9 106:10 106:10 123:11 190:22 |
| meant(1) | 219:17 |
| measure(3) | 45:2 89:9 193:18 |
| measuring(1) | 210:20 |
| mechanisms(1) | 201:8 |
| media(8) | 170:9 170:13 170:23 171:2 171:4 171:7 171:9 173:6 |
| mediation(7) | 25:8 177:24 195:16 195:17 195:25 222:7 222:7 |
| meet(4) | 102:17 111:6 111:22 113:7 |
| meeting(2) | 91:15 199:16 |
| meisel(1) | 1:31 |
| melanie(1) | 7:30 |
| member(3) | 147:8 177:17 177:18 |
| members(5) | 15:23 108:2 108:4 146:21 147:9 |
| memo(2) | 161:10 178:7 |
| memorandum(1) | 209:8 |
| mention(2) | 195:14 199:15 |
| mentioned(3) | 39:4 89:23 209:14 |
| mentions(1) | 51:6 |
| mercy(1) | 172:7 |
| merely(2) | 93:17 143:14 |
| merger(4) | 120:18 120:24 121:3 128:19 |
| merit(1) | 92:10 |
| merits(18) | 15:18 25:3 25:22 41:13 41:19 101:17 114:14 115:19 132:16 136:12 138:24 152:3 189:17 196:3 197:8 197:14 197:16 220:21 |
| merrill(4) | 2:19 6:38 100:4 125:13 |
| mervyns(1) | 14:9 |
| mester(1) | 12:15 |
| met(6) | 45:17 49:22 49:23 130:15 184:10 216:11 |

| Word | Page:Line |
|---|---|
| meta(1) | 83:7 |
| meter(1) | 76:14 |
| method(1) | 73:22 |
| methodologies(2) | 116:1 120:12 |
| methodology(1) | 165:2 |
| metric(1) | 171:21 |
| mgmt(1) | 11:28 |
| michael(2) | 2:31 11:37 |
| michelle(1) | 3:5 |
| michigan(1) | 1:40 |
| mid(1) | 48:1 |
| middle(2) | 157:22 202:5 |
| midpoint(1) | 54:13 |
| might(15) | 18:10 24:13 52:23 65:24 68:17 81:16 103:19 126:12 154:5 177:1 191:4 191:23 196:8 220:16 221:14 |
| mike(1) | 8:34 |
| mile(1) | 92:12 |
| miles(1) | 7:20 |
| military(1) | 148:14 |
| miller(2) | 9:29 9:30 |
| million(48) | 22:17 26:23 27:4 34:10 34:11 41:7 41:10 47:21 57:21 67:15 67:15 68:6 68:7 73:8 73:9 73:13 73:15 73:17 73:20 73:21 74:7 76:14 89:21 89:22 90:2 90:3 90:16 91:2 119:16 122:25 123:1 123:5 123:14 124:1 133:14 133:23 134:1 134:6 134:7 138:6 151:16 151:24 159:8 159:10 168:7 212:10 215:15 218:9 |
| millions(3) | 31:19 36:6 205:19 |
| mills(1) | 7:18 |
| mind(5) | 23:21 41:21 43:10 164:2 211:24 |
| minds(1) | 41:14 |
| mine(3) | 40:5 64:20 126:1 |
| minimum(1) | 156:5 |
| minkove(2) | 12:30 12:31 |
| minority(4) | 81:8 81:23 105:15 106:2 |
| minus(1) | 204:10 |
| minute(5) | 68:19 69:10 104:21 195:2 219:5 |
| minutes(20) | 16:13 37:2 45:3 45:18 84:3 84:8 84:10 85:24 94:7 169:17 169:23 173:18 180:6 180:9 200:20 200:21 211:11 211:12 211:15 221:22 |
| mischief(2) | 54:18 55:16 |
| miss(2) | 107:14 113:10 |
| missing(2) | 200:3 207:4 |
| mistake(1) | 86:11 |
| mistaken(1) | 195:1 |
| mitch(1) | 223:11 |
| mitchell(1) | 4:18 |
| model(1) | 190:18 |
| modeling(2) | 164:4 164:7 |
| models(1) | 93:14 |
| modest(3) | 102:9 102:11 133:15 |
| modifications(2) | 78:3 181:16 |
| modified(1) | 117:9 181:20 |
| moment(5) | 67:11 91:18 112:15 156:12 158:11 |
| moments(5) | 69:16 85:20 133:21 161:3 216:17 |
| monarch(2) | 11:36 11:36 |
| monday(1) | 15:1 |
| money(29) | 21:15 22:19 22:20 30:12 33:10 33:14 36:20 43:5 48:17 50:25 52:22 62:9 63:6 65:15 77:25 81:11 90:14 124:1 134:15 138:11 138:12 142:17 142:21 143:4 157:3 157:21 202:22 203:1 217:22 |
| monstrous(1) | 207:20 |
| montenegro(1) | 9:37 |
| month(9) | 45:16 55:7 101:24 108:12 108:17 110:11 110:17 130:17 |
| monthly(2) | 187:4 187:5 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **months**(24) 45:13 48:18 55:8 96:10 96:13 101:23 102:2 102:15 102:17 106:11 113:7 135:1 146:3 162:10 166:18 166:19 168:5 168:12 173:7 178:6 187:8 204:16 216:6 216:8 | | **muttering**(1) 167:16 **myers**(1) 6:22 **myrick**(1) 7:5 **myself**(3) 47:21 51:11 213:14 **myths**(1) 102:1 | | **nine**(2) 180:9 211:11 **nine-minut**(1) 169:11 **no.''**(1) 118:21 **nohos**(1) 12:40 | | **not**(301) 19:24 21:2 21:12 21:22 22:15 26:3 28:3 28:15 28:22 29:10 30:24 31:7 31:8 34:2 34:6 35:22 35:22 35:23 35:23 35:24 36:4 36:17 37:20 37:22 38:7 41:7 | |
| **moody's**(2) 124:14 204:11 | | **naftalis**(1) 9:12 **naked**(1) 193:13 | | **nomination**(1) 172:23 **nomura**(1) 11:32 11:32 | | 42:13 43:10 43:21 44:9 44:15 44:16 45:6 45:9 45:21 46:6 47:10 47:11 47:12 47:14 | |
| **more**(96) 17:13 19:10 19:24 20:23 21:15 22:19 22:20 31:20 31:25 33:18 34:17 35:16:17 37:10 37:23 42:7 46:13 46:18 46:19 46:20 46:21 50:52 51:6 53:1 57:8 57:13 58:1 61:2 68:3 69:4 74:18 75:1 77:25 79:5 80:25 81:11 81:15 82:21 85:21 88:5 90:2 91:3 93:12 97:6 101:21 102:11 103:19 105:3 106:11 106:21 107:10 109:10 109:2 113:11 115:21 123:9 124:18 124:19 124:21 127:8 129:14 130:2 132:19 133:17 133:22 138:15 141:9 147:5 147:25 151:16 151:23 152:18 154:19 154:19 156:18 167: 167:19 168:14 169:13 170:16 176:9 182:12 183:11 190:17 191:13 192:8 192:1 194:3 204:17 204:17 204:18 206:22 207:9 210:3 216:18 221:24 223:20 | | **name**(3) 63:24 63:25 134:6 **named**(1) 150:3 **natural**(3) 104:25 105:1 110:20 **naturally**(1) 164:12 **nature**(5) 102:8 115:13 128:20 163:8 216:5 **nealesh**(2) 10:16 10:17 **nearly**(2) 48:3 48:19 **necessarily**(8) 88:11 98:17 118:14 194:18 196:1 199:17 210:4 213:5 **necessary**(6) 81:21 113:6 114:3 143:3 161:10 175:21 **necessity**(1) 175:6 **need**(21) 42:11 60:22 83:2 86:17 102:18 122:1 147:4 147:17 149:20 177:25 179:15 207:20 212:4 212:4 219:7 223:14 **needed**(2) 81:18 200:1 **needle**(1) 168:9 **needs**(5) 56:17 56:18 69:20 184:12 202:24 **negative**(3) 122:25 123:14 165:24 **negligible**(1) 124:15 **negotiate**(2) 149:21 155:13 **negotiated**(1) 141:4 **negotiating**(4) 146:2 147:22 148:19 150:5 **negotiation**(6) 24:24 152:5 153:5 153:24 195:14 218:25 **negotiations**(4) 148:25 151:21 195:11 195:13 **negotiator**(1) 152:1 **neil**(3) 12:19 222:7 222:10 **neither**(1) 140:1 **nellos**(1) 6:13 **network**(1) 81:2 **networks**(1) 81:2 **neumann**(1) 8:22 **neutral**(3) 18:24 28:13 42:21 **never**(40) 46:15 48:15 62:4 62:6 63:20 66:25 74:11 76:14 77:4 78:24 78:24 86:5 87:5 92:22 93:8 101:23 110:3 110:7 117:14 118:5 120:11 125:8 137:11 137:13 137:16 141:24 142:12 151:10 151:16 151:23 152:3 153:10 155:6 161:16 182:20 194:18 209:11 218:18 218:23 223:12 **new**(16) 2:37 3:7 3:25 4:24 4:43 5:7 5:31 36:2 70:14 75:14 96:14 96:17 175:21 191:21 223:9 223:12 **news**(3) 11:7 58:24 85:5 **newsletter**(1) 97:7 **newspaper**(6) 95:5 96:3 96:13 96:23 100:7 100:18 **newspapers**(2) 46:5 99:3 **next**(56) 34:12 52:15 53:1 53:14 54:3 54:4 54:22 55:6 56:11 58:4 73:5 73:5 73:11 74:3 79:18 79:25 81:10 81:11 83:23 90:8 90:17 94:6 94:18 96:22 97:6 99:14 101:1 106:3 109:8 110:11 111:7 114:20 117:5 118:25 125:1 125:15 126:8 126:15 126:21 127:16 133:10 134:25 137:1 137:22 143:5 147:7 149:23 149:24 158:7 164:14 165:6 165:22 167:25 182:16 204:22 205:6 **nicely**(2) 201:22 207:14 **nicholas**(2) 8:12 11:29 **nick**(1) 63:12 | | **non**(2) 88:23 202:14 **non-attributabl**(3) 171:22 171:24 200:25 **non-consensua**(1) 214:11 **non-debtor**(5) 181:24 182:8 202:11 214:6 214:16 **non-exchang**(1) 203:20 **non-existent**(1) 150:18 **non-lbo**(12) 88:19 89:20 90:6 91:9 136:8 136:14 136:20 138:9 138:12 138:13 138:2 145:19 **non-payment**(1) 65:13 **non-redeemers**(1) 142:16 **non-settlers**(1) 156:9 **nonconsensual**(1) 184:2 **none**(6) 30:19 112:20 152:9 182:6 201:11 204:13 **nonetheless**(2) 15:18 97:3 **noon**(1) 82:19 **nor**(2) 74:20 113:7 **norm**(1) 223:1 **normally**(2) 64:18 219:7 **norman**(1) 1:33 **north**(6) 1:40 2:21 2:43 4:34 5:12 5:18 | | 47:22 47:23 48:2 48:21 48:25 50:7 51:12 51:12 51:20 52:8 52:23 53:17 53:25 55:10 56:1 56:3 58:25 59:1 59:3 59:9 60:3 60:7 61:7 61:8 61:10 61:17 61:23 62:5 63:9 63:10 63:17 64:1 64:2 64:6 64:13 65:7 65:19 66:5 66:6 66:7 67:9 70:19 70:20 71:19 72:10 73:18 74:1 75:5 75:19 76:18 76:19 77:9 79:1 80:4 80:18 80:20 81:7 81:9 81:24 82:5 82:17 83:16 84:14 85:2 85:5 86:24 87:20 89:13 89:18 90:14 91:3 91:24 92:11 93:2 93:6 93:10 93:12 93:13 93:17 94:11 96:14 98:3 98:4 98:5 98:10 101:7 101:24 101:25 102:19 103:9 103:9 104:1 104:9 105:23 106:23 107:25 110:7 110:14 110:15 111:14 112:18 112:25 113:4 113:16 116:17 117:11 118:1 118:2 118:6 118:13 118:15 118:20 119:6 119:22 119:25 121:6 122:1 123:13 126:1 126:4 126:17 126:21 127:5 127:13 127:22 128:4 129:1 129:3 130:10 130:15 131:11 131:11 131:12 132:3 132:16 133:16 134:13 134:14 134:22 135:16 135:22 136:1 136:21 136:23 137:14 137:20 139:5 139:15 140:11 140:14 141:20 142:5 142:17 143:8 143:9 143:15 143:19 144:5 144:13 145:1 145:3 145:5 145:17 147:23 148:4 148:14 148:19 148:23 149:19 150:9 150:12 151:2 151:11 151:22 152:19 152:23 153:12 154:14 154:23 155:8 155:9 155:11 155:14 155:19 156:15 156:21 157:3 157:4 157:12 158:6 160:4 160:5 161:3 161:6 161:18 162:4 163:2 164:6 164:18 164:19 165:4 165:23 167:17 167:23 168:8 168:19 169:25 170:4 170:10 170:18 171:4 171:6 171:18 171:21 172:10 172:13 172:15 172:20 173:10 173:10 174:6 174:22 177:1 177:3 177:24 179:7 179:18 179:21 181:21 181:25 182:1 182:5 182:5 182:9 182:22 183:20 184:5 185:25 186:25 187:7 187:10 188:6 188:7 188:22 189:7 190:3 190:15 190:16 191:5 191:21 192:4 192:17 192:18 193:4 193:6 193:11 195:6 195:20 196:10 196:24 197:2 | |
| **moreover**(3) 51:22 172:21 208:9 **morgan**(28) 2:29 5:4 8:25 10:20 12:22 96:5 96:6 96:7 99:7 108:7 125:23 126:9 126:12 134:23 150:24 150:24 151:25 152: 170:14 170:15 170:24 171:5 171:8 171:10 172:8 173:5 194:2 194:9 | | | | | | **not**(56) 197:13 197:19 197:20 198:20 198:21 199:8 199:17 200:4 200:7 200:17 200:23 201:1 202:22 203:3 203:7 203:15 203:16 203:19 204:18 204:20 205:13 205:17 206:16 207:24 208:5 208:11 208:20 208:25 209:9 209:18 209:21 210:4 210:6 210:18 210:18 210:20 210:23 212:21 212:23 213:9 214:3 214:25 215:18 215:21 216:3 216:12 216:25 217:2 217:6 217:18 217:19 219:6 219:14 223:9 223:12 223:19 | |
| **morgan's**(1) 170:22 **morning**(20) 15:3 15:14 15:5 44:2 82:18 88:22 89:24 123:21 128:10 130:6 143:2 144:7 156:3 157:25 163:8 173:14 179:5 200:10 200:11 207:4 | | | | | | **notch**(1) 58:1 **note**(13) 43:19 61:19 62:1 95:9 96:11 99:13 121:20 129:22 130:5 182:17 204:4 209:9 218:24 **noted**(3) 28:8 29:19 127:4 | |
| **morning's**(1) 91:7 **moskowitz**(1) 2:30 **moss**(1) 12:35 **most**(34) 18:24 44:19 50:3 55:25 56:3 56:15 59:11 64:4 75:11 93:15 94:15 97:3 107:24 146:17 147:11 147:22 151:15 151:20 152:6 155:7 157:20 157:23 159:18 166:8 174:11 175:3 175:16 177:1 206:1 207:10 208:4 210:16 219:18 223:22 | | | | | | **noteholder**(47) 42:3 58:17 77:16 84:21 85:3 85:10 94:3 132:7 146:9 156:20 156:22 156:25 160:8 169:10 170:5 170:10 170:19 171:3 171:6 173:8 173:11 173:17 173:19 173:20 173:24 174:1 174:2 174:16 174:20 174:23 175:13 175:15 175:18 176:5 176:9 176:12 176:15 178:18 179:20 180:13 180:22 181:21 181:21 182:22 182:5 186:1 220:5 223:7 | |
| **mostly**(1) 85:7 **motion**(6) 87:19 137:19 153:15 223:7 223:9 223:12 | | | | | | **noteholder's**(3) 179:18 186:9 188:21 | |
| **mouth**(2) 67:2 89:24 **move**(10) 59:6 95:11 104:22 115:20 125:3 125:15 129:25 156:1 165:1 205:7 | | | | | | | |
| **moved**(3) 76:14 168:8 168:13 **movement**(2) 55:19 55:24 **movements**(1) 55:20 **moving**(2) 70:2 121:17 | | | | | | | |
| **much**(50) 19:9 21:3 26:17 26:19 27:7 28: 31:3 32:4 34:16 40:24 41:1 44:1 44:24 46:7 46:21 50:14 50:22 57:6 58:1 58:23 68:21 70:24 71:16 72:4 78:13 79:2 91:7 91:3 101:11 102:10 127:8 129:14 131:13 132:25 152:7 152:11 152:17 154:23 157:1 160:12 167:8 167:17 168:13 169:6 180:4 192:8 192:10 193:24 220:2 223:14 | | | | | | | |
| **muchin**(1) 10:6 **multiple**(7) 79:11 88:21 93:20 136:13 139:20 184:9 208:22 | | | | | | | |
| **multiplies**(1) 79:22 **murphy**(1) 9:19 **murray**(1) 117:17 **murrs**(1) 214:13 **must**(7) 58:1 67:20 87:12 111:2 114:17 121:22 172:19 | | | | | | | |
| **muster**(1) 94:15 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **noteholders**(106) 17:23  18:19  22:6  22:18  24:3  26:16  26:22  27:4  30:2  30:18  30:25  31:6  31:24  32:6  32:10  32:16  33:2  33:3  33:8  33:9  33:19  33:24  34:8  34:12  35:9  35:15  37:3  37:12  39:5  39:11  39:16  39:21  40:8  41:6  41:8  41:12  41:15  41:16  41:24  42:2  42:8  42:9  42:12  42:25  44:8  45:19  52:20  59:22  60:4  61:9  66:18  67:13  67:16  68:8  70:21  72:3  72:25  73:24  74:11  77:18  77:25  78:8  78:17  86:17  136:11  144:13  145:19  147:4  156:16  156:23  170:7  173:1  175:5  175:8  175:10  176:3  180:19  181:5  182:18  185:4  186:7  188:5  189:11  192:6  192:8  192:9  192:11  194:7  195:7  195:18  195:21  195:22  196:12  203:23  204:4  204:2  205:23  206:19  207:20  207:20  209:11  209:16  210:5  212:11  214:2  218:21 | | **oath**(2) 100:7  103:15<br>**object**(6) 117:24  118:4  118:12  193:6  197:25  198:1<br>**objected**(1) 165:3<br>**objecting**(1) 156:9<br>**objection**(10) 85:8  85:9  117:24  118:19  143:11  157:1  195:20  195:23  197:22  222:1<br>**objections**(6) 156:24  197:18  213:14  219:21  220:1  223:18<br>**objective**(3) 52:11  111:3  113:20<br>**objectives**(1) 173:21<br>**objectors**(1) 197:21<br>**obligated**(1) 115:2<br>**obligation**(2) 139:22  217:2<br>**obligations**(5) 122:9  137:7  141:18  177:7  202:12<br>**obscure**(1) 206:24<br>**observed**(1) 70:14<br>**obstacles**(1) 77:1<br>**obtain**(2) 143:13  172:20<br>**obtained**(1) 172:13<br>**obtains**(1) 172:23<br>**obvious**(5) 19:17  24:12  24:19  39:9  39:21<br>**obviously**(7) 16:16  49:5  109:11  125:7  128:15  128:17  172:8 | | **one**(301) 1:27  2:42  4:23  13:25  13:25  16:3  16:18  17:7  17:10  17:12  19:6  19:9  19:11  19:18  19:23  19:24  20:1  20:7  20:13  20:23  21:14  22:2  22:9  22:13  23:17  23:18  24:16  24:18  24:20  25:9  25:23  26:2  27:1  27:10  27:16  28:2  28:7  28:21  29:1  29:7  29:8  29:10  29:17  29:20  29:24  30:3  30:15  30:22  31:1  31:2  31:4  31:10  31:10  32:3  32:8  32:13  32:20  33:11  33:13  33:13  33:18  33:22  34:2  34:24  35:10  35:17  35:20  36:16  36:23  38:14  38:20  39:12  39:14  39:16  40:14  40:22  41:1  42:12  42:18  45:16  45:19  47:5  49:7  49:25  50:17  51:18  51:20  51:21  52:15  52:17  54:23  55:2  55:25  55:25  56:2  57:15  58:7  58:12  58:21  59:16  59:24  59:25  60:1  60:2  60:5  60:5  60:7  60:10  60:17  60:19  61:10  62:6  62:6  63:8  63:12  64:3  64:15  65:16  66:15  67:3  67:12  70:16  71:1  71:2  71:6  71:9  72:12  72:22  74:25  76:24  77:14  83:24  87:11  89:3  90:7  90:19  91:19  91:24  93:18  93:24  94:8  94:9  94:9  94:23  95:11  95:15  95:18  96:10  96:12  96:19  97:18  97:20  98:7  99:17  100:3  100:9  100:23  101:1  101:18  102:25  103:16  104:3  104:7  104:18  106:6  106:12  106:15  106:22  108:24  109:19  109:25  110:4  110:17  110:2  111:9  111:12  111:24  114:2  114:4  114:19  115:3  115:23  117:6  119:9  120:1  121:7  121:11  122:1  122:21  122:22  123:23  124:4  124:18  125:8  127:18  127:19  128:17  128:2  129:19  129:23  130:1  130:3  130:11  130:22  130:23  132:15  134:23  134:25  135:6  136:8  136:15  136:21  136:22  136:24  138:9  138:1  140:7  140:23  140:25  141:3  141:5  141:6  143:7  143:8  143:14  143:19  143:21  144:5  144:10  144:13  145:16  146:8  147:3  149:21  150:11  150:16  151:11  152:16  157:14  158:19  158:25  162:13  163:21  164:6  166:3  167:14  167:14  170:3  173:9  173:22  179:4  179:13  181:11  181:12  181:17  182:12  182:14  182:17  183:8  184:6  185:15  185:21  186:3  187:6  188:11  188:13  188:18  189:4  189:19  189:21  190:14  194:8  194:9  196:2  196:4  196:6  196:9  199:7  199:11  200:13  200:22  200:24  202:16  203:3  204:7  204:8  204:10  204:10  206:22  208:10  209:6  209:1  209:12  209:13  209:20  209:21  212:3  212:18  212:19  214:25 | | **opinion**(22) 38:22  38:23  58:6  58:9  98:16  103:3  104:9  110:4  111:15  118:2  119:10  161:16  162:1  162:5  162:18  162:23  167:24  168:16  173:3  190:14  190:15  219:11<br>**opinions**(11) 62:6  87:5  88:5  117:14  162:6  162:7  162:18  162:24  163:1  163:5  200:2<br>**opportunity**(4) 147:2  176:16  221:9  222:1<br>**oppose**(3) 145:17  182:5  210:7<br>**opposed**(10) 21:13  50:9  50:24  79:13  146:14  146:15  146:16  167:9  181:11  195:15<br>**opposing**(2) 151:6  157:12<br>**opposite**(4) 82:7  128:6  194:24  199:1<br>**opposition**(2) 157:3  157:19<br>**optimal**(2) 83:21  196:24<br>**option**(6) 66:18  124:11  129:6  133:23  134:2  177:21<br>**orange**(2) 112:4  112:6<br>**order**(10) 30:13  47:22  49:6  102:16  127:11  160:19  161:19  180:9  219:11  220:24<br>**ordering**(1) 208:16<br>**organize**(1) 180:1<br>**originally**(2) 146:14  159:7<br>**other**(79) 16:11  21:9  21:20  23:25  28:1  30:21  30:23  33:15  35:25  36:10  38:8  40:10  40:19  41:8  41:16  42:25  44:16  47:6  48:3  50:23  51:10  56:24  57:5  79:18  80:5  88:12  88:21  92:1  93:15  93:23  110:2  116:20  121:8  126:10  130:5  133:8  134:24  135:5  145:8  152:20  153:6  153:15  155:7  156:23  157:15  158:1  158:11  158:22  160:7  168:9  170:23  171:4  173:17  186:25  191:1  193:23  194:8  196:5  196:18  198:3  200:14  201:10  202:3  205:3  208:9  208:12  212:16  212:18  212:21  213:5  217:25  220:22  221:4  221:7  221:24  222:4  223:16<br>**others**(8) 24:4  30:25  38:15  133:6  140:5  154:3  154:9  190:14<br>**otherwise**(7) 63:9  65:20  66:25  67:8  81:16  98:7  136:10<br>**ought**(6) 36:11  36:21  41:13  80:19  207:1  211:4<br>**our**(76) 15:23  27:1  28:3  28:20  30:11  33:24  36:14  36:15  40:20  56:23  65:17  77:11  78:14  80:7  83:4  83:5  83:5  83:8  84:15  84:22  85:7  85:10  85:13  85:16  85:17  88:10  97:14  105:5  106:18  119:24  120:9  127:9  140:6  141:9  141:13  143:10  143:23  143:24  144:2  144:15  144:15  144:16  155:23  157:1  157:8  157:10  171:15  171:23  174:24  180:5  190:1  190:3  190:4  190:15  191:6  191:6  194:19  201:6  201:6  202:13  202:16  203:4  204:16  206:17  206:22  206:22  207:3  207:17  210:16  211:11  212:5  213:18  214:4  214:7  215:3  217:24 |
| **noteholders'**(3) 204:21  207:3  221:22<br>**notes**(22) 75:6  83:15  89:22  91:3  107:9  119:1  119:1  119:9  143:13  147:20  156:20  157:23  158:4  158:23  160:3  202:3  202:22  202:24  203:9  212:8  218:4  218:12<br>**noteworthy**(2) 106:13  150:10<br>**nothing**(17) 39:2  70:14  74:16  75:14  81:12  92:1  109:17  133:22  135:4  136:8  150:1  150:3  154:6  156:15  197:7  198:2  218:12 | | | | **occur**(1) 201:9<br>**occurred**(5) 86:5  105:4  194:11  197:5  222:1<br>**occurring**(2) 72:19  115:17<br>**october**(2) 81:19  110:15<br>**odd**(1) 103:8<br>**odds**(2) 30:5  71:14<br>**off**(18) 55:22  90:25  102:12  103:3  106:7  106:12  106:21  107:15  129:19  133:14  151:169:18  186:20  201:20  206:2  207:1  207:6  222:14<br>**offer**(5) 48:19  66:23  66:25  68:15  221:23<br>**offered**(3) 50:19  66:19  157:13<br>**office**(1) 5:36<br>**officer**(3) 100:6  176:22  194:14<br>**officers**(2) 73:15  150:2<br>**official**(3) 3:10  6:9  15:7<br>**offset**(1) 96:15<br>**often**(2) 101:13  152:19<br>**okay**(32) 16:24  23:7  43:12  54:5  55:23  59:9  59:25  62:6  84:16  88:4  118:2  118:11  122:16  122:19  149:11  152:22  153:1  154:11  154:16  154:24  155:14  155:25  167:7  180:10  212:22  212:23  213:1  220:15  221:1  222:22  223:3  223:13<br>**omitted**(3) 164:2  164:4  164:5<br>**once**(5) 68:24  103:14  109:21  167:5  197:10 | | **one**(12) 215:11  215:11  216:10  217:14  217:19  219:5  219:10  219:17  219:22  220:1  222:4  222:24<br>**one-sided**(2) 110:9  199:19<br>**ones**(11) 24:11  24:12  74:17  92:2  92:3  116:2  134:9  141:10  154:10  181:3  191:16<br>**ongoing**(1) 174:2<br>**online**(1) 96:14<br>**only**(48) 18:21  23:22  24:5  24:20  27:3  33:1  34:9  39:23  40:21  42:7  42:21  44:9  57:14  62:6  63:22  67:3  72:12  74:24  76:14  79:4  80:23  81:22  87:7  93:1  93:18  97:19  101:7  102:25  103:9  121:6  122:1  130:7  130:10  133:14  135:5  151:3  155:13  158:19  163:2  164:22  168:7  175:2  175:18  189:4  208:25  210:1  217:17  222:24<br>**onto**(6) 59:2  118:25  121:18  124:14  133:5  133:6<br>**open**(1) 86:24<br>**opening**(8) 25:11  61:19  84:15  86:3  135:13  185:3  200:10  215:4<br>**operating**(3) 99:2  104:11  187:22<br>**operations**(1) 174:2 | | **ours**(2) 181:7  207:24<br>**ourselves**(1) 65:9 |
| **notice**(2) 190:15  223:4<br>**noticed**(2) 53:1  206:21<br>**noting**(2) 21:6  175:25<br>**notion**(4) 86:17  158:21  219:3  223:13<br>**notional**(1) 129:10<br>**notwithstanding**(2) 30:1  61:4<br>**novod**(1) 12:44<br>**now**(138) 17:25  18:11  24:3  30:18  32:12  33:21  39:4  42:13  42:20  43:4  49:19  53:7  54:3  54:17  55:11  61:1  63:4  63:25  65:11  68:25  73:11  74:11  76:11  78:11  80:8  82:12  82:13  83:1  84:13  84:15  88:1  88:25  89:17  91:6  91:21  92:13  94:18  95:12  95:20  96:16  97:10  98:14  98:20  99:4  99:19  100:21  101:15  102:6  103:14  104:1  104:16  105:4  106:9  106:20  107:17  108:17  108:23  108:27  109:8  109:11  110:22  111:3  112:15  112:18  113:24  114:9  114:13  115:6  115:20  115:25  116:5  116:13  117:11  119:8  119:18  120:20  121:1  121:8  121:17  122:5  122:20  123:20  123:23  124:17  125:1  126:21  127:4  127:18  128:8  128:11  128:24  130:5  136:12  136:21  137:1  137:15  138:5  139:1  140:19  141:8  141:21  143:2  143:21  144:20  146:7  146:8  146:25  147:2  148:18  148:20  152:4  154:6  157:25  158:11  162:6  164:8  166:11  167:7  167:17  167:17  176:15  182:12  182:18  185:20  186:7  188:19  193:1  197:12  203:7  203:12  204:22  206:4  206:18  207:9  217:5  220:7  222:24  223:5<br>**nowhere**(2) 23:8  207:6<br>**npp**(1) 215:1<br>**nudged**(1) 166:14<br>**nudging**(1) 166:21<br>**number**(31) 27:15  35:5  35:11  42:5  43:10  43:15  70:11  73:14  74:2  77:9  77:12  77:17  90:7  90:22  92:20  119:12  119:20  124:18  124:19  138:2  151:19  156:17  176:20  180:14  189:25  192:24  203:3  212:13  222:10  222:25  223:5<br>**numbers**(14) 23:16  53:4  54:5  57:20  72:9  102:11  103:24  111:22  130:19  152:23  160:18  164:11  164:24  202:20<br>**numerous**(2) 79:18  97:11<br>**nutraquest**(1) 156:11<br>**oaktree**(8) 2:4  12:8  91:18  147:9  147:9  150:20  158:17  158:18 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| out(88) 17:2 24:8 28:4 32:14 32:17 33:16 36:6 41:20 50:24 51:7 51:9 52:20 56:7 56:8 56:13 56:16 56:19 57:20 58:5 60:17 61:7 63:23 65:14 66:16 69:20 72:11 74:21 76:11 79:17 81:12 84:25 89:24 92:18 93:20 98:16 99:25 100:25 101:19 104:1 106:21 108:12 111:6 113:21 115:19 120:3 125:25 126:9 129:6 133:19 133:20 134:10 139:13 142:15 148:13 151:1 154:4 155:5 156:18 156:23 157:3 159:19 164:10 164:1 164:15 164:23 164:24 168:17 174:7 174:11 175:4 175:8 176:25 177:2 182:11 185:20 186:17 198:24 201:8 201:16 205:3 206:8 206:11 208:5 209:4 213:10 218:20 219:15 219:21 220:1 | | paid(7) 89:20 144:9 150:20 159:22 182:6 196:12 209:2 | | paul(2) 6:30 11:40 | | phil(1) 4:21 |
| | | panoply(1) 163:9 | | pause(6) 104:21 167:14 205:6 206:18 213:13 217:17 | | phone(1) 146:10 |
| | | paper(3) 17:14 100:22 167:2 | | pay(18) 21:21 22:2 31:11 98:8 132:19 138:13 142:4 144:25 144:25 145:21 147:5 147:16 151:7 167:10 175:21 188:19 205:2 209:18 | | phones(27) 42:10 42:25 43:5 43:16 43:18 83:15 89:22 89:23 90:13 90:13 118:25 119:8 119:11 119:20 138:15 138:15 142:4 143:17 144:13 156:14 202:24 202:25 203:6 203:14 212:8 217:22 218:1 |
| | | papers(11) 64:8 83:8 83:9 102:16 141:10 141:13 144:2 157:10 166:16 171:15 171:2 | | | | |
| | | par(2) 67:7 127:11 | | payable(1) 42:19 | | phones/egk(1) 202:21 |
| | | parade(1) 46:22 | | payers(1) 83:16 | | phrase(3) 143:1 143:4 158:5 |
| | | paradigm(1) 133:5 | | paying(1) 168:25 | | pick(5) 24:8 24:12 40:2 95:17 155:4 |
| outcome(18) 18:8 24:11 24:20 40:17 93:18 111:15 144:1 144:4 144:6 145:15 163:13 164:4 164:5 165:8 197:20 198:2 202:5 215:1 | | paragraph(2) 113:2 198:18 | | payment(4) 88:19 88:23 88:23 145:9 | | picked(3) 24:9 24:11 80:15 |
| | | parallel(1) 111:18 | | payout(2) 149:21 158:15 | | pickering(1) 10:36 |
| | | paramount(1) 156:6 | | payouts(1) 134:5 | | picking(1) 68:9 |
| | | parcel(1) 89:12 | | peck(1) 50:18 | | pickle(2) 50:5 56:7 |
| outcomes(8) 92:22 93:9 93:11 163:12 163:24 164:2 164:8 164:21 | | parent(54) 20:15 20:17 20:19 20:24 21:1 24:15 24:16 24:17 26:24 27:11 27:16 28:23 28:25 29:9 29:18 30:10 32:1 32:8 32:13 32:21 32:24 33:11 33:22 34:1 34:6 34:9 41:22 57:10 57:21 57:23 60:24 61:3 61:14 63:7 90:3 144:4 144:8 144:9 144:1 146:9 158:1 158:12 158:13 158:15 158:22 217:8 217:16 | | peg(1) 11:8 | | picks(1) 80:2 |
| | | | | pending(2) 159:17 213:15 | | picture(1) 198:15 |
| | | | | pennock(1) 6:33 | | piece(3) 109:15 206:1 217:2 |
| outlandish(3) 98:9 101:1 105:9 | | | | pennsylvania(1) 1:48 | | pieces(1) 27:21 |
| outline(3) 45:8 45:9 45:10 | | | | penny(1) 64:17 | | pile(1) 138:11 |
| outlined(2) 30:20 41:18 | | | | people(30) 48:12 50:24 51:5 52:5 52:11 52:21 52:22 53:22 54:14 63:4 64:1 66:23 68:13 68:14 69:23 74:14 75:13 77:19 86:12 132:17 133:1 133:2 146:18 146:22 148:15 148:19 150:7 150:7 196:9 201:16 | | pillar(1) 95:12 |
| outset(3) 131:25 153:19 197:24 | | | | | | pillars(1) 95:20 |
| outside(2) 146:20 157:9 | | | | | | piper(1) 3:4 |
| outstanding(3) 129:12 204:25 205:1 | | parents(2) 61:12 65:1 | | | | place(15) 39:24 50:5 54:3 57:17 57:18 58:3 68:3 127:11 131:14 140:21 140:22 168:15 205:6 214:4 218:25 |
| over(29) 17:1 25:12 39:18 46:8 52:23 53:14 68:3 81:9 84:9 85:20 93:22 114:16 117:13 119:16 131:6 132:18 146:3 150:5 160:12 169:4 175:3 190:13 192:19 194:8 194:22 195:3 214:19 216:13 222:7 | | pari(1) 124:11 | | | | |
| | | park(3) 4:23 6:10 9:5 | | pepper(1) 139:7 | | |
| | | parke(1) 3:18 | | per(6) 16:9 179:16 179:16 179:18 179:18 221:4 | | placed(1) 177:6 |
| | | part(31) 17:1 43:2 43:12 44:4 45:24 51:10 53:6 53:12 65:15 85:11 87:22 89:11 94:9 114:18 116:6 137:15 139:2 141:6 162:9 177:25 181:22 183:3 184:7 185:21 185:22 192:25 195:9 197:9 198:21 204:16 207:10 | | | | places(5) 15:20 16:2 93:16 199:7 204:5 |
| | | | | per/pro(1) 11:4 | | plainly(1) 17:25 190:10 |
| | | | | perceived(1) 91:9 | | plaintiff(8) 17:17 20:13 20:24 28:11 29:22 29:22 31:5 36:5 |
| overall(2) 114:11 114:14 | | | | percent(64) 21:15 32:15 33:24 37:24 42:5 47:22 47:23 47:23 47:23 57:8 57:12 59:4 71:8 76:23 76:24 77:3 77:17 77:18 80:15 80:23 90:22 99:1 99:2 99:9 99:10 102:4 102:5 102:19 106:7 106:12 106:21 107:7 107:14 133:24 138:14 138:15 143:13 157:7 157:14 157:15 158:15 158:22 159:1 159:11 159:22 160:19 164:16 164:22 164:23 170:16 176:4 176:7 183:13 183:13 183:14 183:19 183:19 184:4 184:4 186:20 190:18 190:24 213:3 218:5 | | |
| overarching(1) 50:1 | | | | | | |
| overcome(2) 28:10 123:10 | | | | | | plan(204) 15:11 16:8 17:11 18:4 33:5 34:18 41:15 44:2 42:5 42:18 42:16 43:2 45:24 46:9 66:18 66:25 67:8 67:15 67:16 70:10 73:9 73:24 74:9 77:18 77:20 77:22 77:24 78:3 83:11 83:13 83:14 83:22 84:21 85:8 85:10 85:10 85:12 85:13 85:14 85:16 85:17 85:25 87:20 88:3 91:13 92:9 105:21 106:7 106:12 106:21 108:16 110:14 132:7 135:25 137:25 138:21 141:18 145:17 145:24 146:23 147:8 147:18 147:22 150:19 152:2 154:18 155:5 156:20 156:22 156:22 157:1 157:1 158:16 158:17 158:21 158:25 159:24 160:5 160:8 160:8 160:22 163:2 163:16 170:4 170:5 170:7 170:10 170:11 170:12 170:14 170:19 170:21 171:3 171:6 172:1 172:2 172:4 172:7 172:16 172:16 172:19 172:22 173:6 173:7 173:8 173:10 173:11 173:17 173:19 173:20 173:23 173:24 173:25 174:1 174:2 174:3 174:7 174:15 174:16 174:18 174:23 175:9 175:9 175:11 175:13 175:18 176:6 176:9 176:12 176:14 176:15 176:16 176:20 176:23 176:24 176:24 177:5 177:5 177:11 177:14 177:15 177:20 178:4 178:11 178:18 178:19 179:7 179:15 179:16 179:18 179:21 180:19 180:22 181:7 181:21 181:22 182:5 182:15 182:22 183:5 183:17 183:25 185:14 186:19 186:20 189:18 192:11 192:13 193:3 193:6 196:2 198:4 198:5 200:18 200:23 201:24 201:25 202:2 202:7 202:13 202:17 203:8 203:18 203:18 208:16 209:10 209:23 210:16 210:18 212:11 213:8 214:4 214:17 217:13 218:10 218:22 218:25 220:5 220:25 222:15 223:7 | | |
| overlooked(5) 39:15 39:19 72:2 185:7 187:25 | | | | | | |
| overlooking(2) 153:7 153:7 | | partially(1) 65:17 | | | | |
| overpay(1) 133:1 | | participants(2) 41:8 133:11 | | | | |
| overruled(3) 108:5 109:10 201:2 | | participate(1) 127:14 | | | | |
| overstated(1) 53:25 | | participated(1) 148:15 | | | | |
| overwhelming(3) 98:2 110:9 156:23 | | participates(1) 139:23 | | | | |
| overwhelmingly(3) 41:25 42:16 101:16 | | participating(2) 38:20 140:10 | | | | |
| owed(1) 216:23 | | participation(1) 33:20 | | | | |
| owens(1) 184:1 | | particular(12) 47:10 66:5 76:12 98:8 111:5 125:19 139:21 140:11 148:12 157:1 203:25 205:12 | | perfectly(3) 38:2 59:18 111:18 | | |
| own(33) 25:2 25:6 25:22 36:4 38:13 38:19 40:21 72:8 73:1 78:25 94:13 95:24 102:2 103:22 107:15 108:10 118:24 119:15 124:1 126:24 150:20 152:12 152:13 152:2 161:12 164:23 165:16 167:23 171:1 190:13 193:24 194:19 219:9 | | | | performance(15) 79:23 79:23 99:11 101:3 102:15 107:2 108:14 111:3 113:5 113:6 113:15 113:15 131:21 199:5 216:7 | | plan's(1) 77:21 |
| | | | | | | planned(4) 108:13 115:15 220:8 221:2 |
| | | | | performance''(1) 112:24 | | planning(1) 133:13 |
| | | particularly(11) 36:18 49:23 50:3 55:15 58:16 72:1 87:10 181:8 184:3 186:5 200: | | performed(2) 18:20 151:10 | | plans(9) 15:14 74:5 170:20 182:18 182:19 182:25 202:3 213:20 214:1 |
| | | | | performing(3) 49:4 107:20 122:4 | | |
| owned(1) 158:17 | | | | perhaps(5) 16:13 38:15 83:20 151:14 159:18 | | |
| owners(5) 142:6 170:8 170:25 171:3 171:7 | | parties(38) 15:17 18:6 18:9 18:14 18:23 19:2 23:1 24:10 28:17 29:5 45:13 70:17 70:18 75:7 88:1 88:17 115:14 115:15 117:7 139:16 139:25 140:10 142:15 143:3 152:19 156:9 156:12 157:3 157:6 157:20 185:10 185:25 186:25 189:16 220:24 221:2 222:9 222:9 | | | | plausible(2) 164:10 164:24 |
| ownership(4) 21:9 46:2 46:9 170:9 | | | | peril(1) 86:10 | | play(9) 79:12 79:15 80:13 157:12 164:3 202:4 |
| o'clock(2) 85:4 85:5 | | | | period(8) 56:21 96:21 98:22 146:3 184:19 184:22 184:23 187:12 | | |
| o'melveny(1) 6:22 | | | | | | |
| | | | | periphery(1) 74:13 | | |
| p.a(1) 1:32 | | | | permitting(1) 23:1 | | |
| p.m(9) 84:17 84:17 132:5 132:5 180:11 180:11 211:17 211:17 224:2 | | parties'(1) 112:2 | | pernick(4) 1:33 223:1 223:1 223:5 | | |
| | | partisan(1) 18:14 | | persily(7) 104:4 104:8 124:9 125:17 126:15 194:13 194:13 | | |
| | | partner(2) 34:20 149:17 | | | | |
| pace(3) 95:10 95:16 96:15 | | partners(11) 8:33 8:33 8:37 8:37 9:40 12:4 12:14 13:1 13:3 13:13 13:25 13:25 | | person(12) 40:21 43:21 43:23 47:10 56:25 58:22 59:7 64:11 74:25 97:20 153:22 153:24 | | |
| page(45) 54:12 54:20 54:22 55:6 92:24 96:19 102:1 111:7 111:19 114:20 115:22 117:5 120:7 120:10 143:25 144:15 163:18 164:11 165:7 165:22 175:12 185:22 186:1 186:22 187:3 187:13 187:18 188:15 188:25 189:4 194:20 199:2 199:8 205:7 205:7 205:7 205:8 206:16 206:18 206:19 207:5 207:10 215:3 217:24 218:23 | | | | perspective(10) 16:20 17:5 26:10 49:15 69:19 146:1 146:1 156:8 194:11 205:5 | | |
| | | parts(5) 15:20 40:8 40:9 45:25 79:16 | | | | plan's(1) 77:21 |
| | | party(19) 9:4 11:4 11:12 12:38 18:22 28:13 29:8 42:21 139:20 142:23 145:14 152:12 153:6 153:6 155:6 157:4 182:1 214:11 | | perspectives(1) 15:24 | | |
| | | | | persuade(2) 36:8 191:21 | | |
| | | | | persuaded(2) 38:16 188:6 | | |
| | | party's(2) 52:23 190:22 | | persuasive(1) 32:16 | | |
| | | parver(1) 6:43 | | | | |
| | | pass(2) 30:16 123:7 | | peter(4) 8:26 11:19 124:11 134:25 | | |
| pages(8) 49:5 57:16 143:23 144:16 199:1 199:3 212:5 214:7 | | passed(2) 155:13 184:23 | | petition(9) 34:25 35:10 43:9 67:19 67:21 78:13 78:16 78:19 209:19 | | |
| | | passing(1) 101:20 | | | | |
| | | past(8) 30:8 63:6 64:1 70:14 79:23 88:8 98:21 163:7 | | | | |
| | | pat(1) 92:17 | | | | |
| | | path(1) 83:23 | | | | |
| | | paths(3) 30:21 208:22 219:22 | | | | |
| | | pathway(1) 32:17 | | | | |

| Word | Page:Line |
|---|---|
| **playback**(8) 100:10 100:20 104:8 104:15 117:20 118:22 167:6 167:20 | |
| **played**(5) 150:18 167:1 177:19 194:13 198:15 | |
| **playing**(1) 67:8 | |
| **plaza**(2) 2:23 3:24 4:35 | |
| **plead**(2) 137:8 137:9 | |
| **pleaded**(1) 35:21 | |
| **pleading**(4) 60:13 137:5 178:7 191:11 | |
| **pleadings**(1) 180:23 | |
| **pleads**(1) 137:3 | |
| **please**(5) 15:2 69:12 84:23 203:23 204:22 | |
| **pleased**(1) 85:1 | |
| **plenty**(1) 194:4 | |
| **plunge**(1) 15:9 | |
| **plus**(2) 133:24 159:1 | |
| **podium**(3) 85:20 92:14 184:24 | |
| **point**(75) 11:22 11:22 22:3 26:17 30:9 31:22 32:16 45:11 47:17 48:2 50:1 52:20 56:13 57:1 57:11 57:15 58:4 59:14 59:15 60:20 62:20 65:15 68:10 74:2 74:14 74:21 78:6 80:20 83:14 111:23 115:7 116:19 119:6 120:2 124:5 124:6 141:9 141:19 144:18 150:12 150:17 151:8 152:6 153:18 153:22 153:24 155:16 155:18 160:25 169:1 174:6 174:7 180:21 181:6 182:11 182:16 182:23 185:20 186:7 186:17 189:8 196:24 200:9 200:9 200:19 201:23 205:5 205:21 213:6 213:12 213:18 213:20 215:17 218:8 219:18 | |
| **point's**(1) 51:22 | |
| **pointed**(9) 29:24 39:17 72:11 79:17 127:17 198:24 199:7 200:11 201:7 | |
| **pointing**(1) 61:7 | |
| **points**(21) 24:25 26:2 41:20 44:22 45:6 45:8 67:1 67:4 70:3 75:11 114:5 115:10 123:24 124:2 125:2 141:13 185:16 201:22 203:24 214:24 215:5 | |
| **poison**(1) 174:19 | |
| **policy**(2) 146:23 184:3 | |
| **polk**(3) 2:29 8:25 194:2 | |
| **portion**(2) 107:21 133:16 | |
| **posited**(1) 165:4 | |
| **position**(14) 43:23 41:23 64:12 68:12 78:11 81:9 136:24 143:20 147:25 150:9 184:14 192:5 201:3 201:7 | |
| **positions**(2) 155:1 205:2 | |
| **positive**(3) 123:5 166:2 222:5 | |
| **possession**(1) 149:4 | |
| **possibility**(1) 176:24 | |
| **possible**(9) 17:9 60:19 83:1 93:7 145:21 170:3 179:25 182:6 211:10 | |
| **post**(18) 18:19 34:25 35:10 37:13 39:5 39:11 39:21 43:9 67:19 67:21 78:13 78:19 106:19 128:13 174:21 175:15 209:1 | |
| **post-confirmation**(1) 174:5 | |
| **post-effective**(1) 175:15 | |
| **post-hearing**(1) 189:12 | |
| **post-petition**(9) 90:7 136:16 143:9 143:15 143:22 202:22 210:3 210:21 218:13 | |
| **post-reorganized**(2) 176:7 176:10 | |
| **post-trial**(13) 88:10 97:15 105:6 135:24 143:23 144:16 146:12 158:2 163:18 165:6 212:5 214:7 215:4 | |
| **posture**(2) 196:24 197:11 | |
| **potential**(19) 65:13 72:2 72:5 72:23 74:10 90:10 90:11 93:3 93:6 93:9 93:10 108:21 151:19 157:17 164:8 164:15 172:17 177:21 202:3 | |
| **potentially**(2) 161:24 191:8 | |
| **potter**(1) 2:19 | |

| Word | Page:Line |
|---|---|
| **power**(1) 172:15 | |
| **powerful**(2) 57:14 72:15 | |
| **powers**(2) 140:12 142:18 | |
| **powlen**(1) 5:1 | |
| **ppearances**(5) 1:21 2:1 3:1 4:1 5:1 | |
| **practice**(1) 137:19 | |
| **pre**(1) 128:17 | |
| **pre-judgment**(1) 138:7 | |
| **pre-lbo**(7) 99:13 110:21 144:12 175:5 175:8 175:21 177:7 | |
| **pre-pack**(1) 202:14 | |
| **pre-petition**(2) 90:5 144:10 | |
| **pre-step**(3) 100:23 127:19 134:25 | |
| **precedent**(1) 111:4 | |
| **precise**(2) 34:1 64:13 | |
| **precisely**(1) 36:23 | |
| **preclude**(1) 163:20 | |
| **precludes**(2) 64:11 163:4 | |
| **predecessors**(1) 186:1 | |
| **predestined**(1) 204:20 | |
| **predictably**(1) 135:7 | |
| **predominant**(1) 80:20 | |
| **preexisting**(4) 133:5 134:18 135:3 161:24 | |
| **prefer**(3) 42:16 77:20 160:7 | |
| **preference**(1) 77:19 | |
| **preferences**(1) 93:3 | |
| **preferred**(2) 70:4 75:6 | |
| **preliminary**(1) 15:8 | |
| **prematurely**(1) 55:22 | |
| **premise**(1) 54:14 | |
| **premised**(1) 37:15 | |
| **premium**(2) 53:20 134:10 | |
| **prepare**(2) 162:11 166:18 | |
| **prepared**(8) 23:2 23:4 23:21 31:18 43:20 43:21 43:23 178:10 | |
| **present**(6) 15:14 16:19 89:11 93:23 170:5 201:19 | |
| **presentation**(10) 50:2 87:9 92:16 131:24 186:9 194:7 195:17 199:22 200:10 207:4 | |
| **presentations**(1) 17:20 | |
| **presented**(22) 27:5 37:6 78:10 78:22 79:19 80:8 87:14 90:18 92:23 93:8 113:18 114:23 131:8 142:9 157:15 173:9 181:8 198:13 204:1 206:13 209:23 209:24 | |
| **presents**(1) 31:4 | |
| **preserve**(2) 179:3 179:23 | |
| **preserving**(1) 178:24 | |
| **president**(2) 108:19 117:17 | |
| **press**(1) 16:21 | |
| **pressing**(2) 154:13 223:12 | |
| **presume**(1) 179:9 | |
| **pretend**(1) 185:6 | |
| **pretty**(14) 15:17 27:14 32:16 35:4 37:19 44:12 71:14 75:15 77:3 139:24 166:23 184:22 186:17 208:10 | |
| **prevail**(1) 193:23 | |
| **prevailing**(3) 30:6 157:16 191:12 | |
| **prevent**(3) 19:20 137:6 140:15 | |
| **previous**(1) 122:23 | |
| **previously**(2) 64:12 212:1 | |
| **prewired**(1) 48:14 | |
| **price**(14) 48:7 48:19 55:20 106:16 120:15 120:18 120:18 121:2 121:3 121:11 121:14 128:16 128:19 134:11 | |
| **priced**(1) 141:1 | |
| **prices**(8) 53:15 53:18 53:25 54:10 54:13 54:13 129:25 205:4 | |
| **pricing**(2) 128:8 128:24 | |
| **primarily**(2) 28:18 30:13 | |
| **primary**(1) 23:12 | |

| Word | Page:Line |
|---|---|
| **primoff**(1) 6:41 | |
| **principak**(1) 144:9 | |
| **principally**(1) 159:14 | |
| **principle**(1) 141:10 | |
| **principles**(1) 148:19 | |
| **print**(1) 100:18 | |
| **prior**(8) 47:6 100:8 103:16 104:3 104:7 166:17 178:6 199:5 | |
| **priority**(2) 43:16 203:6 | |
| **private**(1) 150:21 | |
| **pro**(2) 11:4 136:23 | |
| **probabilities**(15) 57:20 72:18 72:21 75:20 163:17 164:20 166:10 166:12 166:14 166:19 167:24 168:4 168:23 218:9 219:14 | |
| **probability**(11) 71:16 75:23 76:5 76:10 76:10 76:23 77:3 93:14 93:16 163:12 166:25 | |
| **probably**(10) 34:23 46:21 51:15 52:10 61:9 61:10 68:11 77:25 118:5 150:17 | |
| **problem**(16) 26:14 31:8 31:15 31:23 33:10 43:17 46:10 56:9 59:1 61:5 71:19 76:24 135:5 150:4 201:9 201:16 | |
| **problematic**(2) 32:21 201:5 | |
| **problems**(13) 39:19 50:19 51:4 51:8 63:25 67:1 76:15 79:20 79:20 79:24 80:19 163:7 170:4 | |
| **procedural**(1) 88:16 | |
| **procedures**(5) 172:3 172:4 172:7 172:10 172:16 | |
| **proceed**(2) 92:11 160:20 | |
| **proceeded**(1) 125:22 | |
| **proceeding**(3) 55:5 142:21 151:12 | |
| **proceedings**(7) 1:17 1:52 194:4 201:14 208:19 218:21 224:7 | |
| **proceeds**(1) 73:16 | |
| **process**(39) 25:8 45:23 46:15 70:12 70:15 82:23 144:19 144:22 146:13 148:8 150:6 150:14 151:3 154:2 154:11 154:23 155:3 155:5 155:15 166:20 173:7 175:9 178:14 178:22 195:20 195:23 195:24 196:13 196:17 197:3 197:7 197:19 197:19 197:20 197:22 197:25 198:1 198:2 221:24 | |
| **produce**(7) 30:14 30:24 40:22 89:4 90:15 138:19 148:17 | |
| **produced**(3) 1:53 91:25 150:14 | |
| **produces**(3) 22:17 31:19 72:12 | |
| **product**(2) 51:20 51:21 | |
| **professionals**(3) 25:3 25:6 152:12 | |
| **professor**(44) 23:10 29:22 29:25 49:4 94:14 94:19 94:20 95:24 96:2 97:20 97:22 107:9 120:11 120:20 121:9 121:15 123:2 123:22 127:17 128:16 132:24 160:11 160:14 162:3 162:4 162:9 163:9 163:20 164:9 164:15 164:21 165:21 165:24 168:1 168:24 190:2 215:2 219:14 | |
| **progress**(2) 222:11 222:12 | |
| **project**(1) 108:4 | |
| **projected**(2) 82:12 105:14 | |
| **projecting**(3) 100:12 101:7 102:9 | |

| Word | Page:Line |
|---|---|
| **projections**(103) 39:19 50:23 58:18 100:25 101:5 101:12 101:17 101:20 102:14 102:24 102:5 102:7 102:8 102:14 102:24 103:4 103:7 103:17 103:21 104:3 104:7 104:10 104:13 104:20 105:9 105:17 105:20 106:1 107:4 107:20 108:12 108:20 108:22 109:3 109:7 109:9 109:25 110:5 110:8 110:10 110:19 110:25 111:2 111:6 111:8 111:13 111:14 111:16 111:17 111:19 112:1 112:2 112:10 112:13 112:17 112:20 112:23 113:5 113:7 113:9 113:12 113:13 113:17 113:20 113:22 115:23 121:13 122:5 122:7 122:11 122:13 130:9 130:12 130:13 130:18 131:19 185:19 185:24 186:4 186:12 186:24 187:1 187:4 187:7 187:11 187:21 187:23 188:2 188:8 189:10 194:6 194:14 194:17 194:19 194:23 195:4 195:5 195:8 196:10 215:18 215:23 216:5 216:11 | |
| **prolonged**(1) 197:3 | |
| **promise**(2) 32:18 209:12 | |
| **promoted**(2) 139:16 141:7 | |
| **prompt**(2) 99:23 172:6 | |
| **promulgate**(1) 175:10 | |
| **proof**(3) 60:14 181:19 191:22 | |
| **proper**(2) 166:7 212:17 | |
| **properly**(2) 77:4 79:16 | |
| **properties**(5) 46:4 80:25 81:1 81:3 81:23 | |
| **proponent**(6) 158:17 158:17 172:14 180:15 220:8 221:3 | |
| **proponent's**(1) 163:16 | |
| **proponents**(31) 16:8 84:22 85:25 87:20 92:9 94:3 94:11 112:18 131:9 132:7 133:8 135:25 138:21 141:18 154:18 160:22 163:2 172:2 172:12 172:16 172:17 173:17 194:10 197:14 198:4 201:15 205:8 215:1 215:12 217:13 223:7 | |
| **propose**(1) 37:17 | |
| **proposed**(21) 44:7 44:9 85:8 89:20 91:2 92:8 143:24 144:16 144:19 145:11 146:4 146:23 153:25 154:17 156:6 157:13 180:24 181:10 218:5 220:3 220:4 | |
| **proposing**(1) 89:15 | |
| **proposition**(2) 179:18 191:20 | |
| **prosecute**(1) 174:4 | |
| **prosecution**(1) 178:24 | |
| **prospects**(2) 52:2 52:4 | |
| **protective**(1) 33:18 | |
| **proud**(1) 191:6 | |
| **prove**(35) 20:14 21:4 21:8 21:12 28:23 28:24 28:25 29:19 29:23 30:15 31:8 31:9 31:10 31:24 31:25 32:2 32:20 35:9 59:20 60:9 87:21 87:22 88:9 88:15 89:3 89:14 122:1 135:14 135:17 138:22 152:8 160:21 160:22 206:3 206:3 | |
| **proved**(4) 46:14 86:6 92:10 97:4 | |
| **proverbial**(1) 101:12 | |
| **provide**(11) 18:23 43:7 69:19 78:1 83:23 115:2 124:18 124:25 162:1 172:16 203:10 | |
| **provided**(6) 19:1 23:16 140:24 156:7 166:17 198:12 | |
| **provides**(6) 18:12 71:23 117:3 135:8 172:22 178:11 | |
| **providing**(1) 71:11 | |
| **province**(1) 165:10 | |
| **proving**(2) 21:1 92:12 | |
| **provision**(2) 183:9 203:17 | |
| **provisions**(2) 183:7 212:8 | |
| **proxy**(2) 109:5 109:6 | |
| **pryor**(2) 12:34 12:34 | |
| **public**(3) 96:11 99:16 128:17 | |
| **publication**(1) 86:18 | |
| **publicly**(2) 96:17 96:25 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**published**(3) 96:5  96:18  101:9
**publishing**(28) 51:4  51:15  52:3  52:18  53:3  53:4  53:5  53:10  79:1  79:3  80:16  80:17  95:12  95:21  95:25  96:6  97:2  97:18  99:1  99:5  99:7  102:3  107:6  108:19  109:1  198:17  198:21  198:23

**pull**(4) 22:3  23:16  39:7  215:25
**punch**(1) 56:10
**purchase**(1) 129:19
**purchased**(1) 205:2
**pure**(19) 79:12  79:15  80:12  85:13  176:14  176:18  176:23  176:23  176:24  177:3  177:5  177:5  177:11  177:15  177:20  178:1  178:3  178:19  179:7

**purity**(20) 85:13  176:14  176:18  176:23  176:23  176:24  177:4  177:5  177:11  177:15  177:20  178:1  178:4  178:19  179:7  201:24  201:25  202:2  202:6  202:17

**purported**(1) 162:19
**purports**(1) 123:22
**purpose**(4) 61:22  121:25  209:16  209:18
**purposes**(9) 16:11  33:15  59:25  119:1  154:7  180:16  183:17  209:24  211:1

**pursuant**(1) 22:25
**pursue**(5) 66:5  140:1  140:2  207:11  216:21
**pursues**(1) 140:3
**pursuing**(6) 20:13  29:3  36:5  87:24  89:1  89:10

**push**(3) 148:6  155:2  157:21
**pushed**(1) 134:9
**pushing**(3) 145:8  145:20  146:9
**put**(28) 55:19  57:17  57:18  57:22  58:3  67:3  72:7  73:1  75:13  82:10  95:2  103:8  112:18  123:18  124:1  125:14  131:17  133:2  146:22  160:2  161:19  167:17  179:12  180:14  192:22  197:14  201:22  205:8

**puts**(5) 28:11  28:16  84:3  123:4  195:18
**putting**(2) 79:4  91:1

**qualifications**(2) 79:5  205:11
**qualified**(3) 18:16  78:24  199:25
**qualify**(2) 161:4  162:22
**quantification**(1) 123:12
**quarter**(5) 69:7  95:17  104:11  107:2  107:7
**quershi**(2) 214:20  214:24
**queshi**(2) 4:20  132:8
**question**(55) 20:10  20:17  20:21  20:22  21:12  21:22  28:4  32:4  42:15  43:13  64:8  65:9  69:22  75:17  75:21  77:9  78:17  82:15  83:25  94:12  94:16  100:17  103:12  106:17  108:10  110:22  113:8  118:25  128:11  128:1  130:6  132:11  132:14  133:3  137:21  138:8  143:2  143:21  145:1  149:9  155:21  165:12  166:23  166:24  167:3  177:13  189:10  196:2  203:1  203:5  203:13  203:14  216:20  217:3  220:19
**questioned**(1) 104:6
**questions**(10) 68:16  69:24  82:16  84:1  132:1  165:10  165:11  169:3  209:8  211:6

**quick**(1) 214:24
**quickly**(8) 83:1  99:25  125:3  125:15  133:10  174:17  204:22  215:25

**quiet**(1) 44:12
**quite**(12) 49:2  49:14  49:21  59:17  70:6  83:3  95:17  97:12  124:3  151:14  198:25  199:19
**quote**(1) 198:15
**quoted**(4) 96:19  96:20  186:22  187:18
**quotes**(1) 50:6

**qureshi**(21) 85:21  87:17  92:14  93:22  94:1  94:2  100:21  104:16  112:5  112:9  118:23  122:16  122:20  185:17  187:24  188:11  188:23  198:12  198:25  199:7  199:17

**qureshi's**(1) 187:15
**qureshi's**(1) 87:9
**rachel**(1) 12:23
**radar**(1) 176:19
**raise**(3) 46:11  74:12  137:19
**raised**(6) 30:2  192:1  201:12  201:19  212:4  213:21

**ramifications**(1) 137:23
**ran**(5) 74:2  74:5  90:8  148:3  219:20
**range**(31) 22:8  25:15  43:1  48:1  55:20  67:6  72:1  73:3  73:8  73:9  73:10  73:24  74:6  74:10  74:11  76:20  76:21  77:4  77:8  77:10  77:11  77:12  90:5  90:11  120:13  121:1  145:12  200:11  200:16  204:12  218:1

**ranges**(2) 90:6  120:16
**rapid**(1) 99:10
**rapidly**(1) 178:14
**raport**(1) 4:29
**rare**(1) 87:13
**rata**(1) 136:23
**rate**(2) 127:10  141:2
**rates**(3) 56:18  111:21  134:16
**rath**(2) 3:11  3:12
**rather**(16) 57:10  67:23  81:2  142:23  157:7  159:16  160:8  166:25  172:5  172:15  180:25  181:15  185:3  186:20  203:1  215:13

**rating**(5) 127:18  127:24  204:9  204:9
**ratings**(3) 127:22  204:6  204:6
**raymond**(1) 78:11
**re-solicit**(1) 42:13
**reach**(4) 28:1  152:2  162:23  221:6
**reached**(5) 17:21  25:8  140:9  220:24  221:7
**reaching**(1) 163:1
**reaction**(2) 129:15  200:14
**read**(26) 29:14  37:7  37:22  37:23  38:18  50:17  53:3  64:8  71:5  75:5  86:20  89:12  141:13  162:25  163:2  169:7  180:22  185:22  186:19  190:17  190:20  190:23  206:12  219:23  219:24  221:2

**readily**(1) 174:25
**reading**(7) 25:4  38:14  119:24  162:23  190:13  200:16  211:1
**reads**(1) 58:22
**real**(14) 17:16  18:10  32:17  42:15  45:21  48:8  49:12  56:9  61:13  74:21  117:1  135:22  178:17  204:24
**realistic**(2) 29:6  29:8
**reality**(12) 44:6  63:1  78:12  79:10  79:15  80:14  80:17  82:3  175:6  182:24  193:22  200:6
**realize**(1) 198:13
**really**(68) 24:5  36:1  37:9  37:13  44:25  45:7  46:7  47:19  48:7  48:24  50:18  51:5  52:6  53:24  55:17  55:23  55:24  57:6  59:7  59:12  60:8  60:9  61:6  61:7  62:13  63:5  63:7  63:14  64:16  65:7  65:17  66:9  67:4  67:17  67:18  67:24  68:6  68:10  70:16  75:8  76:16  80:9  85:9  91:3  101:1  109:16  131:23  139:8  147:21  152:11  152:21  153:1  159:20  179:8  181:6  183:22  189:22  192:3  192:17  193:22  196:25  204:2  205:3  207:25  214:24  216:18  219:17

**rear**(1) 85:23
**reason**(14) 19:17  58:16  76:17  76:17  94:8  101:13  108:21  111:19  171:4  181:21  186:2  194:9  195:23  196:2

**reasonable**(33) 16:3  16:18  17:7  17:12  18:10  22:16  25:8  40:14  42:17  44:14  69:18  71:24  72:16  73:4  73:25  77:13  77:24  82:10  87:23  103:20  113:17  113:20  122:5  131:20  145:11  148:14  158:10  161:17  164:13  185:15  189:19  193:20  209:25

**reasonableness**(12) 25:13  25:15  39:2  43:1  67:6  77:15  110:25  112:19  181:9  181:19  200:11  206:15

**reasonably**(10) 21:25  31:16  31:21  71:20  141:19  161:14  167:15  188:7  188:17  219:2

**reasons**(16) 32:22  36:18  38:25  67:12  70:11  88:13  92:21  145:17  148:5  171:15  173:10  182:13  198:3  198:3  200:24  202:7

**rebecca**(1) 8:22
**rebuttal**(9) 16:10  16:14  83:25  85:25  164:17  164:19  179:4  179:23  180:2

**recall**(13) 37:7  37:21  85:14  96:7  100:15  120:10  135:13  146:14  160:16  161:9  176:1  218:6  220:19

**recasting**(1) 195:4
**receding**(1) 46:3
**receive**(1) 178:25
**received**(4) 91:4  144:22  152:13  161:9
**receiving**(2) 143:15  143:17
**recent**(2) 96:13  109:4
**recently**(2) 82:4  107:24
**recess**(8) 69:11  84:16  84:17  132:4  132:5  169:11  180:11  211:17

**recipients**(2) 83:16  83:17
**recite**(1) 214:14
**recognition**(3) 80:24  81:14  187:4
**recognize**(2) 36:11  39:18
**recognized**(2) 35:25  145:15
**recognizes**(1) 99:19
**recognizing**(2) 99:17  171:25
**recommend**(1) 199:1
**recommending**(1) 149:19
**reconciling**(1) 67:1
**reconstruct**(1) 33:3
**reconvene**(1) 84:13
**record**(21) 22:23  23:8  48:9  52:14  53:16  78:21  84:20  85:3  86:25  91:9  91:15  94:2  96:12  98:4  107:17  125:21  127:23  181:14  206:17  214:21  221:2

**recorded**(1) 1:52
**recording**(2) 1:52  224:6
**recover**(3) 26:23  92:15  136:22
**recoveries**(34) 22:6  26:19  27:4  30:25  32:9  33:2  33:20  33:23  34:3  34:7  38:21  41:9  72:14  73:6  73:12  73:16  73:22  74:8  74:10  90:11  93:2  93:4  93:7  110:21  136:14  141:16  143:10  163:10  179:1  203:7  203:10  218:11

**recovery**(30) 22:18  23:12  27:11  28:7  30:21  30:24  32:7  33:1  33:6  34:16  34:17  34:23  35:16  40:24  61:18  62:4  66:5  92:23  92:24  92:25  92:25  93:5  138:16  138:19  140:16  143:14  203:11  208:22  218:1  219:2

**rectify**(1) 135:8
**red**(4) 101:4  111:18  122:8  168:3
**redeemed**(2) 142:15  159:15
**redirect**(1) 219:20
**redoes**(1) 50:22
**reduce**(2) 57:22  207:21
**reduced**(1) 96:10
**reduces**(1) 59:17
**reducing**(1) 126:24
**reed**(1) 10:12

**refer**(6) 116:11  143:23  149:24  160:11  175:20  214:12

**reference**(8) 48:9  105:17  126:2  126:4  126:5  126:11  155:18  218:16

**referenced**(2) 23:11  90:7
**references**(1) 111:17
**referencing**(1) 107:6
**referred**(6) 77:17  119:24  126:13  134:20  217:5  222:6

**referring**(4) 109:5  177:15  207:12  216:4
**refers**(1) 189:6
**refinance**(2) 33:14  215:7
**reflect**(4) 51:1  55:3  168:3  214:21
**reflected**(2) 80:14  101:3
**reflecting**(2) 41:2  76:2
**reflection**(1) 56:3
**reflects**(4) 17:16  40:24  80:17  101:4
**refresh**(2) 16:5  81:19
**refused**(2) 142:11  142:17
**regain**(1) 172:25
**regard**(3) 73:2  165:25  201:17
**regarding**(7) 85:16  87:15  126:16  174:19  176:13  212:2  219:6

**regrettably**(1) 180:20
**regulatory**(2) 172:5  173:1
**reject**(6) 42:4  42:13  63:23  141:20  192:13  200:22

**rejected**(2) 141:11  141:25
**rejects**(1) 56:21
**relate**(2) 77:11  221:25
**related**(2) 178:12  198:19
**relates**(3) 92:14  198:20  200:19
**relating**(8) 47:1  93:24  136:15  186:23  197:23  207:15  209:8  209:14

**relation**(1) 89:1
**relationship**(1) 37:4
**relative**(3) 89:15  90:14  99:11
**relaxed**(4) 46:6  46:7  46:8  46:13
**release**(7) 130:10  130:18  158:18  181:23  192:16  192:20  193:1

**released**(5) 109:2  109:24  159:13  159:16  214:17

**releases**(4) 182:1  214:7  214:11  214:16
**relent**(1) 134:15
**relevant**(13) 31:16  51:15  54:23  55:20  90:24  132:15  156:5  161:22  163:13  193:4  209:20  217:8  220:13

**reliability**(1) 103:12
**reliable**(7) 37:20  50:22  54:1  168:14  190:5  190:12  190:16

**reliance**(3) 103:23  163:5  163:20
**relied**(3) 110:19  113:23  215:6
**relief**(3) 26:16  61:6  137:8
**relinquish**(1) 172:9
**relinquished**(1) 172:22
**relinquishing**(2) 146:15  172:23
**reluctant**(1) 172:8
**rely**(13) 42:23  71:25  103:17  103:20  110:5  112:20  123:22  131:21  188:7  190:25  193:18  196:4  199:9

**relying**(4) 121:12  140:11  140:12  186:25
**remainder**(1) 110:15
**remained**(1) 153:22
**remaining**(2) 69:16  174:9
**remains**(3) 131:15  131:15  201:23
**remark**(1) 109:12
**remarkable**(2) 103:5  127:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**remarks**(4) 44:4 84:15 179:2 204:3
**remedial**(1) 172:6
**remedies**(23) 35:25 88:21 93:7 132:23 135:8 135:8 136:13 137:4 139:10 139:12 162:25 163:10 191:19 191:22 191:23 208: 208:8 208:12 208:15 208:23 208:23 208:25 216:19
**remedy**(13) 19:17 19:20 136:5 142:5 191:15 201:15 208:1 208:5 208:7 208:9 208:17 209:5 209:6
**remember**(18) 41:5 47:20 51:11 54:25 57:20 61:1 64:4 64:25 66:18 102:6 108:1 121:25 150:16 151:25 186:18 187:17 187:24 207:19

**remembering**(2) 52:7 52:9
**remind**(2) 104:21 212:3
**reminded**(1) 184:13
**reminds**(1) 147:1
**remote**(2) 71:19 71:19
**remotely**(2) 190:3 218:19
**render**(3) 58:13 107:14 200:2
**rendered**(3) 58:19 125:9 161:16
**renders**(1) 98:18
**reorganization**(3) 62:8 62:13 173:21
**reorganized**(8) 62:11 170:8 170:17 170:25 171:2 174:18 174:22 175:19

**repaid**(2) 134:13 134:15
**repeat**(2) 50:7 214:22
**repeatedly**(2) 125:23 191:13
**replacement**(2) 165:4 165:5
**replicate**(1) 73:1
**reply**(4) 66:2 212:5 214:7 215:4
**report**(102) 17:24 18:12 18:25 19:3 21:5 22:24 23:3 25:1 25:4 27:14 37:1 37:3 37:7 37:16 37:24 38:14 38:18 38:23 40:1 44:7 44:15 44:17 48:10 52:14 59:22 60:2 70:24 75:5 75:9 75:12 91:6 91:8 91:11 91:14 91:17 91:20 91:25 92:1 92:4 93:5 93:13 93:16 94:10 95:7 96:1 98:25 112:16 117:6 119:19 119:25 127:8 129:9 130:25 141:14 147:10 147:13 159:19 162:11 164:17 165:3 165:19 165:20 166:1 168:1 168:6 173:2 185:21 185:22 185:23 186:15 186:23 187:3 187:10 187:14 187:19 187:21 188:10 188:15 188:22 188:25 189:16 189:23 189:24 190:13 190:18 190:22 193:16 194:6 196:7 197:15 199:2 205:10 205:20 205:25 210:24 211:2 211:2 216:2 216:2 219:15 219:23 221:9

**reported**(1) 62:5
**reporting**(2) 58:18 108:7
**reports**(1) 75:1
**represent**(2) 93:10 148:24
**representation**(1) 148:20
**representativе**(3) 151:25 159:24 193:9
**representatives**(2) 177:11 178:19
**represented**(3) 150:1 150:2 150:7
**representing**(1) 48:16
**represents**(5) 25:9 34:5 111:17 122:8 122:10

**reputational**(1) 133:20
**request**(2) 171:19 222:13
**requests**(1) 171:25
**require**(4) 44:19 117:10 191:18 191:22
**required**(4) 58:9 143:17 144:21 172:13
**requirement**(9) 58:11 115:8 145:13 179:15 179:16 179:19 183:24 184:10 184:11

**requirements**(3) 66:12 212:15 213:11
**requires**(3) 116:19 116:17 203:18
**research**(5) 62:17 96:6 96:11 132:24
**reserve**(6) 16:10 16:14 85:24 175:22 176:1 176:4

**reserves**(1) 175:18
**reside**(1) 213:4
**resist**(1) 210:24
**resolution**(3) 17:8 72:16 83:20
**resolve**(2) 175:3 201:22
**resolved**(1) 154:5
**resolving**(2) 177:2 223:19
**resoundingly**(1) 156:14
**resource**(1) 205:19
**resources**(2) 174:10 174:14
**respect**(50) 21:9 24:7 33:5 33:20 37:20 47:18 55:24 60:18 69:22 71:1 75:24 76:4 77:2 79:25 90:16 94:14 94:20 111:15 112:17 125:19 128:24 129:5 133:21 139:9 142:3 146:6 146:23 148:13 154:6 155:18 156:19 162:5 165:2 173:22 181:9 182:25 188:9 190:3 193:9 194:6 200:21 201:2 202:14 203:25 217:6 217:8 217:21 220:23 221:1 221:22

**respectfully**(4) 112:25 115:18 128:4 139:18
**respecting**(2) 136:17 138:18
**respects**(3) 44:10 174:24 199:21
**respond**(2) 130:7 172:18
**responded**(1) 164:19
**responds**(1) 155:20
**response**(6) 78:17 116:24 163:2 177:13 186:22 192:20

**responses**(1) 72:2
**responsibilities**(1) 193:11
**responsible**(5) 86:18 107:18 107:23 108:4 190:16

**rest**(1) 179:22
**restraint**(1) 87:2
**restrict**(1) 140:9
**restructuring**(4) 176:16 176:22 177:12 178:4

**result**(33) 24:2 25:8 25:9 25:19 25:20 34:5 42:14 62:13 70:12 72:12 75:12 88:15 88:22 89:4 116:10 119:15 136:6 136:13 136:24 138:24 143:20 150:14 168:13 182:23 197:1 197:2 197:9 202:24 209:4 210:2 210:17 217:4 219:2

**resulted**(1) 82:25
**resulting**(1) 93:7
**results**(13) 46:15 56:25 73:4 73:25 74:6 81:15 104:11 117:22 122:6 122:13 187:5 190:7 190:7

**results-oriented**(1) 98:13
**retain**(1) 133:14
**retaining**(1) 150:11
**retains**(1) 175:15
**retire**(8) 158:13 182:19 182:21 192:2 193:5 212:6 214:2 214:4

**retirees**(12) 158:24 158:25 159:3 159:7 159:10 159:13 159:14 159:19 182:21 182:24 192:24 193:2

**retires**(1) 192:6
**return**(2) 93:25 99:21
**revell**(1) 157:11
**revenue**(7) 95:13 95:16 96:14 100:18 198:17 198:20 199:14

**revenues**(3) 100:12 128:1 198:23
**reversal**(1) 101:14
**reverse**(1) 101:10
**reversed**(2) 219:22 219:25
**review**(13) 18:21 18:22 40:21 46:2 46:18 97:11 104:17 131:8 162:13 162:16 171:1 171:19 173:7

**reviewed**(4) 98:2 110:2 126:19 130:8
**reviewing**(1) 170:23

**revise**(2) 110:14 112:23
**revised**(6) 109:22 111:14 111:15 112:13 130:18 168:1

**revising**(1) 187:11
**revisions**(1) 181:19
**revolver**(2) 122:25 123:14
**rewards**(1) 87:24
**richards**(1) 2:40
**richer**(1) 197:5
**riddled**(1) 79:6
**rifkind**(2) 6:30 11:40
**right**(83) 16:15 17:3 18:25 25:21 27:1 30:23 31:12 32:12 34:21 37:16 39:24 42:19 44:18 48:11 53:15 56:5 58:3 64:6 69:9 70:15 82:18 84:2 84:5 84:6 84:11 95:9 95:18 101:4 102:13 116:2 119:10 121:3 121:9 121:10 129:1 129:4 130:20 137:19 143:12 143:18 145:12 147:18 147:25 148:19 148:23 149:11 149:12 152:17 152:23 153:18 156:1 159:10 160:2 162:1 162:10 167:14 167:18 167:21 168:5 168:22 172:23 172:24 172:25 180:3 185:9 186:19 192:11 192:18 192:24 205:17 206:13 206:14 208:3 208:8 211:25 213:7 213:24 215:22 217:6 220:10 220:12 222:3 223:21

**right-hand**(1) 120:9
**rightful**(1) 178:25
**rights**(6) 63:12 170:18 170:18 172:14 172:22 172:25

**rigor**(3) 75:18 75:20 144:21
**rigorous**(1) 154:12
**rise**(5) 17:4 69:12 84:18 173:18 211:18
**risk**(27) 26:12 27:25 46:16 48:15 64:19 65:2 65:10 65:16 65:18 65:21 65:22 65:2 65:23 65:24 90:21 126:16 129:19 133:4 133:6 133:9 133:20 134:19 139:22 153:16 204:13 204:14 204:18

**riskiest**(1) 131:1
**risking**(1) 50:25
**risks**(9) 17:17 25:23 31:5 39:23 40:17 65:4 65:5 87:23 204:8

**risky**(2) 42:18 193:20
**roadmap**(1) 85:19
**robert**(2) 2:41 10:4
**roberts**(2) 9:29 9:30
**robustness**(1) 74:4
**rochester**(1) 8:10
**rockefeller**(1) 3:24
**rodney**(1) 2:42
**rogers**(1) 13:6
**roitman**(1) 6:11
**role**(4) 149:3 149:7 150:19 151:6
**rolling**(2) 194:22 195:3
**room**(9) 88:2 145:18 146:2 146:9 147:4 152:6 155:2 155:6 155:6

**root**(1) 136:18
**rooted**(1) 138:12
**roper**(2) 145:16 155:11
**rosen**(2) 13:9 13:10
**rosenblatt**(1) 3:22
**rosenman**(1) 10:6
**ross-stromberg**(1) 7:15
**roth**(1) 9:4
**round**(1) 193:16
**rounding**(1) 68:7
**rousing**(1) 136:2
**routine**(1) 70:4
**royal**(2) 13:5 13:5
**rubric**(1) 35:18
**rudnick**(2) 4:4 12:43
**rule**(3) 142:12 162:4 171:13
**ruled**(1) 142:22
**rules**(3) 59:18 171:12 171:16

**ruling**(2) 87:1 222:14
**rulings**(1) 140:9
**run**(11) 17:20 23:23 45:15 83:8 146:13 148:9 155:15 181:24 189:22 215:2 219:19

**running**(6) 57:14 66:14 146:22 182:4 182:8 199:3

**runs**(2) 35:14 143:18
**rush**(1) 199:18
**rushabh**(1) 13:30
**russano**(1) 2:31
**s-corp**(5) 116:10 116:18 117:11 118:10 118:13

**s-corps**(2) 118:14 118:14
**saavedra**(1) 5:5
**sachs**(2) 9:22 9:22
**sad**(2) 132:10 132:16
**said**(68) 18:19 23:15 25:11 44:15 44:21 44:25 47:7 49:2 62:20 63:17 64:13 64:15 65:16 65:19 66:7 75:20 86:2 92:16 92:22 92:24 97:23 103:11 104:12 112:12 120:24 121:16 135:20 139:17 139:20 140:20 141:14 141:16 141:19 141:21 142:13 145:25 147:16 151:22 151:22 152:2 152:17 153:10 157:6 157:18 157:25 161:10 177:14 178:9 178:17 181:2 183:6 185:24 190:1 191:2 193:3 197:3 198:16 198:19 200:19 201:25 205:24 207:9 210:11 218:7 218:19 219:10 219:11 219:17

**salganik**(4) 24:25 91:16 145:25 151:15
**sam**(3) 5:16 124:12 147:14
**same**(35) 28:1 41:23 41:24 46:5 56:21 62:20 67:2 91:14 97:7 98:22 121:10 126:8 127:8 127:13 134:14 137:8 140:24 143:18 145:25 147:24 158:3 158:5 165:21 173:24 174:1 178:23 182:17 187:2 189:1 192:7 201:23 204:12 206:5 206:6 213:15

**sample**(1) 97:14
**sampling**(1) 124:23
**sarcastic**(1) 109:12
**sat**(1) 148:7
**satisfaction**(5) 208:11 208:12 209:1 209:2 209:3

**satisfy**(1) 177:7
**save**(1) 60:22
**saving**(1) 116:9
**savings**(8) 71:12 74:16 74:17 77:7 77:8 116:8 116:19 117:3

**saw**(15) 32:1 76:12 133:20 137:13 142:3 146:11 148:1 150:23 163:11 167:1 167:4 167:22 183:3 186:11 204:9

**say**(104) 15:13 21:14 23:20 26:3 29:15 32:16 33:9 34:12 34:15 35:15 37:3 37:5 37:13 39:11 44:9 44:10 44:21 46:13 46:14 50:16 54:12 54:14 54:18 58:21 59:9 59:9 59:18 59:24 59:25 60:4 62:12 63:11 63:13 68:5 70:13 74:19 75:2 77:21 84:2 87:12 90:5 91:6 91:24 92:13 94:14 94:15 96:9 100:7 100:17 102:24 103:24 110:24 117:19 118:5 120:22 132:10 132:10 132:16 133:25 135:16 136:7 141:11 142:17 146:8 147:13 152:5 152:21 153:9 154:1 154:7 155:12 157:22 158:3 158:20 165:7 165:18 168:18 170:2 172:19 172:20 176:22 178:6 181:15 183:15 184:21 189:22 190:24 194:15 194:16 197:9 201:5 201:10 201:10 204:24 205:24 206:19 207:25 208:8 208:24 209:5 212:9 212:15 213:14 221:25

**saying**(15) 37:7 52:22 101:10 142:5 147:4 150:6 167:23 186:19 204:18 205:15 206:4 206:5 213:15

| Word | Page:Line |
| --- | --- |
| **says**(38) 28:12 28:14 37:9 39:1 47:7 49:3 50:21 54:5 58:23 60:1 60:3 60:5 61:4 61:21 92:25 96:3 103:8 111:2 114:17 121:2 121:3 121:9 123:6 125:6 127:19 135:2 140:1 140:15 147:11 177:5 177:23 189:1 192:14 193:4 193:5 195:12 198:8 214:4 | |
| **scale**(4) 45:2 55:14 55:16 129:21 | |
| **scales**(1) 55:17 | |
| **scattered**(1) 53:15 | |
| **scenario**(21) 22:11 23:25 26:21 26:21 26:21 26:24 27:8 27:15 33:6 34:1 34:4 34:9 72:14 74:9 76:4 76:25 77:2 93:19 166:25 217:14 217:15 | |
| **scenarios**(36) 22:7 22:8 22:20 23:12 23:17 24:5 24:6 24:8 24:18 27:5 72:5 72:12 72:19 72:21 92:15 92:18 92:23 92:25 93:6 93:14 93:17 93:20 93:21 163:11 163:23 164:1 164:10 164:12 164:16 164:2 164:24 200:3 200:5 200:8 209:20 | |
| **schaible**(1) 2:33 | |
| **scheduled**(2) 124:16 159:7 | |
| **scholer**(1) 6:38 | |
| **schott**(1) 8:34 | |
| **schotz**(2) 1:31 223:2 | |
| **schulte**(1) 9:4 | |
| **schuylkill**(1) 1:47 | |
| **scope**(1) 139:3 | |
| **scotland**(2) 13:5 13:5 | |
| **scott**(1) 9:27 | |
| **scratch**(1) 68:5 | |
| **screen**(8) 22:4 107:22 113:2 176:19 179:13 180:13 180:14 183:4 | |
| **scripts**(1) 81:10 | |
| **seal**(1) 186:8 | |
| **search**(2) 56:6 216:1 | |
| **searching**(1) 46:18 | |
| **seat**(2) 154:16 155:2 | |
| **seated**(1) 15:2 69:12 | |
| **sec**(1) 149:17 | |
| **second**(31) 28:22 31:22 37:12 43:12 53:19 54:21 67:11 78:6 83:14 95:12 102:10 113:12 130:20 136:15 143:12 148:12 155:9 159:13 165:1 172:11 175:14 181:22 188:25 198:10 199:20 203:1 203:5 204:10 215:17 219:3 221:1 | |
| **secondly**(4) 70:23 198:21 198:24 201:3 | |
| **seconds**(1) 214:22 | |
| **section**(7) 26:7 92:25 93:13 140:11 187:2 217:5 217:6 | |
| **sections**(1) 199:4 | |
| **sector**(1) 99:1 | |
| **secular**(4) 52:19 97:8 98:3 101:9 | |
| **securities**(4) 9:30 9:31 11:32 11:32 | |
| **see**(60) 22:16 25:15 25:16 26:20 27:8 28:15 37:13 40:16 55:8 55:10 55:18 68:23 72:6 73:20 78:14 79:24 89:21 90:18 94:18 95:15 98:21 99:8 99:22 100:25 109:21 111:16 115:23 119:13 121:14 122:7 130:20 134:4 135:25 138:11 138:17 143:11 143:16 150:17 152:15 152:16 155:12 165:9 166:4 167:4 167:12 168:21 173:23 176:21 178:5 186:16 187:2 187:14 188:15 195:19 195:20 197:2 204:8 207:1 216:6 222:16 | |
| **seeds**(1) 100:1 | |
| **seek**(1) 216:25 | |
| **seeking**(5) 88:14 145:21 151:7 178:8 | |
| **seem**(1) 182:18 | |
| **seemed**(2) 75:4 199:23 | |
| **seemingly**(1) 72:2 | |
| **seems**(3) 19:23 75:6 213:2 | |

| Word | Page:Line |
| --- | --- |
| **seen**(9) 18:5 86:13 117:14 118:1 118:5 132:20 154:16 175:12 185:4 | |
| **sees**(2) 105:22 120:7 | |
| **segment**(1) 104:22 | |
| **seife**(3) 3:21 153:23 205:12 | |
| **seiler**(1) 8:16 | |
| **selber**(1) 2:21 | |
| **selected**(1) 80:12 | |
| **selection**(1) 79:21 | |
| **selects**(1) 80:1 | |
| **sell**(2) 123:8 127:11 | |
| **selling**(1) 192:12 | |
| **senator**(3) 145:18 145:23 146:2 | |
| **send**(3) 62:17 64:24 81:11 | |
| **senior**(42) 16:20 16:21 26:6 33:11 33:16 42:9 42:24 42:24 42:25 73:23 77:16 77:17 78:15 78:18 83:12 83:13 89:22 91:3 109:10 117:16 125:22 134:23 140:23 147:7 147:9 149:17 149:18 156:16 156:20 157:23 158:4 158:23 175:6 179:21 201:24 201:25 202:6 202:12 202:18 212:11 218:4 218:12 | |
| **sense**(8) 51:2 78:3 125:5 127:21 131:18 165:15 174:13 183:22 | |
| **sensitivities**(1) 219:19 | |
| **sensitivity**(1) 74:2 | |
| **sent**(1) 223:8 | |
| **sentence**(3) 59:16 64:5 64:11 | |
| **senter**(1) 8:21 | |
| **separate**(4) 60:12 60:15 60:16 61:13 | |
| **september**(1) 177:23 | |
| **serengeti**(2) 11:18 11:28 | |
| **series**(4) 36:17 39:6 125:20 126:21 | |
| **serious**(4) 45:15 47:11 97:16 121:23 | |
| **seriously**(4) 67:5 88:7 94:11 178:1 | |
| **served**(1) 96:7 | |
| **service**(5) 1:46 1:53 122:9 122:11 205:25 | |
| **services**(1) 1:46 | |
| **set**(18) 17:5 100:25 101:17 105:8 109:25 111:14 122:7 140:25 140:25 141:9 144:14 161:23 166:16 169:1 174:12 176:20 194:2 215:3 | |
| **sets**(1) 187:20 | |
| **setting**(1) 146:23 | |
| **settle**(7) 36:21 89:15 129:6 145:9 151:17 152:21 175:3 | |
| **settled**(7) 35:23 129:11 157:8 159:9 192:15 192:19 192:23 | |

| Word | Page:Line |
| --- | --- |
| **settlement**(165) 15:20 15:25 16:2 16:18 17:6 17:11 17:15 17:20 17:25 18:3 18:10 19:2 19:4 22:16 22:17 23:23 24:1 24:21 24:23 24:24 25:12 25:14 28:5 30:14 31:19 32:11 33:4 33:7 34:11 36:7 36:24 37:2 37:4 37:8 37:10 37:15 39:3 40:6 40:12 40:13 40:23 41:6 41:15 41:19 42:17 44:8 44:13 68:14 69:17 70:11 70:17 70:24 71:23 71:24 72:13 72:16 73:7 74:6 76:22 77:10 77:13 78:5 83:16 83:17 83:21 83:22 85:8 87:21 88:25 89:11 89:17 90:22 91:2 92:4 92:9 92:17 93:20 144:19 144:22 144:23 145:10 145:11 146:4 146:6 146:15 146:17 146:24 148:3 148:7 148:17 150:5 150:19 151:13 152:2 152:4 153:25 154:13 155:3 155:13 155:17 155:18 156:16 156:18 156:10 156:13 156:14 157:7 157:13 157:1 157:20 158:9 158:18 158:23 159:3 159:2 159:22 159:25 160:4 160:17 161:17 161:13 165:20 168:17 175:9 180:24 181:10 181:14 181:18 181:20 182:20 185:10 185:14 189:19 192:13 193:19 193:20 195:15 195:16 196:10 196:24 197:1 197:5 197:7 197:12 197:12 200:12 200:15 205:9 205:14 205:18 206:15 209:15 209:22 210:6 210:19 220:10 211:4 214:2 214:5 218:6 219:2 220:3 222:12 222:16 | |
| **settlements**(1) 88:4 | |
| **settling**(2) 182:21 192:12 | |
| **seven**(6) 102:17 113:7 128:3 151:12 162:16 216:8 | |
| **several**(6) 48:7 83:1 140:5 146:3 223:18 223:19 | |
| **severely**(1) 44:23 | |
| **shachar**(2) 12:30 12:31 | |
| **shake**(1) 56:1 | |
| **shakes**(1) 55:21 | |
| **shamah**(1) 6:23 | |
| **shannon**(1) 6:33 | |
| **shapiro**(1) 15:20 | |
| **share**(11) 41:9 65:19 120:15 120:16 120:19 120:25 121:2 121:11 121:14 121:1 128:19 | |
| **shared**(2) 108:3 108:22 | |
| **shareholder**(4) 60:25 141:23 192:20 193:1 | |
| **shareholders**(17) 33:16 61:23 62:5 62:15 68:1 73:19 99:13 134:8 134:8 141:22 159:15 159:17 192:17 207:15 207:16 207:19 207:24 | |
| **shaya**(1) 8:10 | |
| **she**(9) 104:4 150:25 152:1 152:2 177:19 194:14 194:15 194:16 214:15 | |
| **sheepish**(2) 191:3 191:5 | |
| **sheepishly**(1) 137:2 | |
| **sheet**(19) 20:3 20:4 20:11 21:19 28:19 29:6 29:10 29:16 29:23 31:7 31:9 38:7 49:20 49:25 71:8 76:6 88:2 167:9 167:13 | |
| **sheffield**(1) 13:14 | |
| **sheppard**(1) 7:28 | |
| **sheron**(2) 4:41 223:15 | |
| **she's**(1) 104:6 | |
| **shift**(4) 97:8 98:20 123:20 133:4 | |
| **shifts**(1) 133:6 | |
| **shooting**(2) 213:16 213:23 | |
| **short**(9) 85:24 88:20 154:10 182:6 188:3 189:9 192:12 193:15 219:11 | |
| **shortcomings**(1) 163:3 | |
| **shorter**(1) 65:2 | |
| **shortfall**(1) 123:10 | |
| **shortly**(2) 47:3 96:17 | |
| **short"**(1) 127:4 | |
| **shot**(1) 183:4 | |

| Word | Page:Line |
| --- | --- |
| **should**(66) 16:3 16:18 17:12 18:3 21:22 42:22 44:13 48:24 52:10 58:15 59:10 59:24 62:1 63:14 78:9 79:16 86:5 87:18 87:22 92:11 104:25 109:23 110:5 114:6 114:10 116:9 116:14 119:1 120:22 121:16 121:24 122:5 135:10 135:13 137:14 140:15 142:6 142:8 144:23 149:7 155:15 156:3 158:9 160:4 160:5 168:15 173:10 173:11 173:19 179:21 180:21 183:23 189:15 192:4 193:17 195:5 197:13 197:13 197:17 198:5 206:4 206:5 208:16 209:13 219:10 219:14 | |
| **shouldn't**(1) 197:18 | |
| **shouldn't**(1) 213:4 | |
| **should've**(1) 107:25 | |
| **show**(22) 54:20 55:23 65:1 69:24 72:11 91:22 99:6 105:7 121:13 122:22 124:5 126:22 127:23 131:22 139:13 151:8 154:15 166:3 204:15 207:7 214:3 217:25 | |
| **showed**(12) 17:25 35:4 92:15 92:19 148:22 151:18 154:14 154:15 160:18 168:2 168:23 198:18 | |
| **showing**(3) 72:7 93:18 139:19 | |
| **shown**(3) 115:22 171:12 186:18 | |
| **shows**(29) 17:15 34:7 48:6 48:11 52:11 55:24 73:6 73:11 92:1 95:7 98:25 101:2 101:14 102:13 102:16 104:2 109:13 110:18 111:7 120:14 122:12 122:24 139:25 146:12 147:22 164:19 165:24 189:5 216:9 | |
| **shred**(1) 131:11 | |
| **shrinks**(1) 203:4 | |
| **shy**(2) 138:4 217:25 | |
| **side**(33) 15:14 16:9 16:9 44:25 48:11 67:7 67:8 71:16 80:16 80:22 84:14 88:12 96:19 102:1 120:9 129:23 145:8 145:19 145:20 146:9 146:10 147:23 148:25 150:13 152:20 153:15 154:13 155:7 180:2 180:4 180:13 198:13 205:14 | |
| **sides**(3) 55:16 55:18 179:11 | |
| **sidley**(8) 1:23 7:4 148:20 148:22 149:15 150:1 150:12 161:10 | |
| **sieg**(1) 13:18 | |
| **siegel**(1) 4:5 | |
| **sieger**(1) 10:7 | |
| **sift**(1) 139:4 | |
| **sign**(2) 125:11 126:19 | |
| **signals**(1) 177:23 | |
| **signed**(1) 151:1 | |
| **significance**(2) 58:6 58:8 | |
| **significant**(15) 27:15 29:2 36:4 38:14 53:12 80:20 99:18 113:11 123:10 126:23 172:1 190:14 215:11 215:15 222:12 | |
| **significantly**(12) 19:10 20:23 35:6 41:10 41:14 74:18 75:1 78:9 79:5 81:7 99:5 179:19 | |
| **silly**(1) 184:8 | |
| **silver**(2) 11:22 11:22 | |
| **silverstein**(1) 2:21 | |
| **similar**(6) 72:10 87:2 96:5 157:11 174:17 214:14 | |
| **similarity**(3) 159:2 160:3 214:1 | |
| **similarly**(8) 35:21 74:23 80:22 81:3 177:4 177:16 192:5 192:17 | |
| **similarly-situated**(1) 160:7 | |
| **simple**(3) 120:14 139:24 166:23 | |
| **simply**(19) 23:5 38:16 74:21 83:11 96:14 97:10 113:22 136:18 155:5 179:6 186:10 190:3 193:4 197:8 197:19 204:20 215:7 216:2 216:11 | |

| Word | Page:Line |
|---|---|
| **simultaneously**(3) 115:1  115:3  140:25 | |
| **sina**(1) 13:26 | |
| **since**(5) 84:3  130:23  194:10  194:10  221:6 | |
| **singh**(3) 78:10  78:23  80:21 | |
| **singh's**(1) 79:18 | |
| **single**(24) 44:11  98:4  101:24  106:17  113:1  114:23  114:24  115:5  115:17  120:11  120:13  131:11  131:16  162:13  164:2  174:1  179:13  179:16  184:5  208:10  208:11  209:7  209:2  209:2 | |
| **sit**(2) 51:1  154:4 | |
| **sitting**(3) 47:3  182:11  182:25 | |
| **situated**(2) 192:5  192:17 | |
| **situation**(11) 46:25  71:22  128:22  140:4  152:16  167:7  175:2  188:11  195:7  195:19 | |
| **six**(26) 22:6  22:20  23:12  24:5  24:8  24:9  45:13  45:16  48:17  64:24  72:23  73:2  75:23  92:18  99:3  102:16  163:11  163:12  163:14  163:22  163:22  164:22  173:6  178:6  189:2  204:15 | |
| **sixth**(1) 109:11 | |
| **size**(1) 159:20 | |
| **skadden**(1) 13:38 | |
| **skeptical**(2) 101:13  104:2 | |
| **skip**(3) 53:14  131:6  156:1 | |
| **slam**(6) 29:11  42:11  45:20  47:10  49:17  67:25 | |
| **slam-dunk**(1) 135:16 | |
| **slate**(1) 13:38 | |
| **slated**(1) 138:4 | |
| **slater**(1) 9:18 | |
| **sleight**(1) 137:24 | |
| **slide**(41) 22:4  39:7  48:6  48:10  72:6  72:6  72:7  74:3  89:19  94:18  97:6  101:1  119:13  125:15  133:10  137:1  137:22  142:3  147:7  148:5  149:24  149:24  151:9  156:2  158:7  160:24  164:14  165:6  166:16  170:15  170:2  171:17  172:4  173:23  175:12  176:20  179:13  180:14  198:14  215:25  218:2 | |
| **slides**(9) 48:8  84:23  94:4  127:1  133:21  167:25  170:1  171:11  198:14 | |
| **slightly**(1) 82:21 | |
| **slogan**(2) 206:23  206:25 | |
| **small**(9) 49:12  66:15  66:15  88:25  132:19  158:13  161:15  181:25  184:7 | |
| **smart**(6) 132:17  133:1  133:2  162:2  162:3  162:3 | |
| **smith**(2) 10:24  10:24 | |
| **so-called**(1) 203:20 | |
| **sold**(3) 51:19  159:15  205:2 | |
| **sole**(3) 146:17  155:15  172:17 | |
| **solicit**(1) 150:2 | |
| **solve**(1) 201:8 | |
| **solvency**(44) 20:7  20:12  39:12  49:19  58:6  58:9  59:1  65:24  71:12  76:7  93:23  94:12  94:13  98:16  110:4  111:1  111:9  114:3  115:8  116:7  116:8  117:10  117:14  117:18  118:24  119:2  119:5  119:9  119:16  119:21  120:4  123:23  123:25  124:3  124:25  126:18  128:6  131:3  131:5  135:22  151:10  161:5  165:10  186:13 | |
| **solvency"**(1) 127:20 | |
| **solvent**(4) 30:2  57:23  94:21  128:14 | |
| **solvent"**(1) 94:16 | |

| Word | Page:Line |
|---|---|
| **some**(67) 19:17  19:20  21:9  26:12  26:15  29:21  32:17  35:9  35:16  36:10  36:22  40:3  40:18  44:19  45:7  50:22  52:11  57:17  60:22  62:8  62:9  63:21  75:6  76:23  78:1  79:24  81:17  83:10  105:8  108:2  112:10  114:21  123:8  123:9  123:9  123:21  124:8  126:4  137:4  139:23  146:20  148:5  150:7  156:2  156:24  163:6  163:19  165:7  171:17  174:23  177:7  179:3  179:23  186:9  187:24  188:23  189:20  191:9  194:8  194:11  196:5  199:11  199:21  201:10  218:20  219:4  220:20 | |
| **somebody**(1) 97:2 | |
| **somehow**(5) 19:20  57:4  68:12  123:9  193:10  196:13  198:19 | |
| **someone**(8) 135:1  140:3  152:7  152:16  168:11  169:8  205:10  207:11 | |
| **someone's**(1) 219:13 | |
| **something**(31) 35:15  47:22  49:5  52:21  54:15  55:1  55:11  55:12  63:17  64:7  64:12  64:15  65:7  74:18  99:12  99:24  120:25  128:9  133:7  149:12  149:25  151:13  152:22  161:18  180:9  186:16  190:12  193:17  197:23  205:23  211:23 | |
| **sometime**(1) 105:23 | |
| **sometimes**(3) 15:16  17:2  175:20 | |
| **somewhat**(6) 20:9  20:19  30:6  74:13  102:9  137:2 | |
| **somewhere**(3) 48:1  67:7  161:9 | |
| **soon**(4) 52:8  170:3  184:16  184:24 | |
| **sore**(2) 124:5  124:6 | |
| **sorry**(5) 66:21  167:16  174:16  199:3  212:1 | |
| **sort**(3) 160:6  166:12  197:7 | |
| **sorts**(1) 120:5 | |
| **sottile**(52) 3:29  15:5  15:6  15:12  15:13  16:5  16:7  16:16  22:24  23:9  43:6  43:14  43:19  44:1  44:6  44:21  45:1  45:2  58:4  59:15  62:25  70:3  70:9  70:24  72:7  72:11  72:15  77:16  84:7  84:14  92:15  92:16  135:16  136:7  137:2  143:6  144:6  157:25  158:4  179:25  180:5  185:1  185:1  194:5  198:24  205:12  206:5  220:7  220:13  220:10  221:13  221:18 | |
| **sottile's**(2) 44:24  57:7 | |
| **sottile's**(2) 89:24  219:6 | |
| **sought**(1) 137:11 | |
| **sound**(7) 1:52  35:21  75:8  84:5  84:6  136:2  224:6 | |
| **soundly**(1) 116:2 | |
| **sounds**(1) 59:19 | |
| **soup**(2) 50:6  128:10 | |
| **source**(2) 23:12  99:6 | |
| **sources**(1) 139:2 | |
| **south**(3) 1:27  11:11  135:6 | |
| **southern**(1) 142:10 | |
| **spaeder**(4) 3:28  6:18  15:6  185:2 | |
| **spansion**(3) 88:6  156:11  214:9 | |
| **speak**(10) 16:19  24:22  44:4  85:19  85:25  86:14  109:16  166:7  169:17  220:16 | |
| **speaks**(1) 107:16 | |
| **special**(13) 5:27  13:37  15:6  44:19  96:8  125:24  150:16  150:18  150:22  151:2  153:2  177:18  185:2 | |
| **species**(1) 137:10 | |
| **specific**(3) 84:1  100:16  208:25 | |
| **specifically**(6) 52:4  104:24  110:25  112:16  200:13  216:4 | |
| **specified**(1) 166:2 | |
| **specifies**(1) 208:7 | |
| **speeches**(2) 152:11  152:17 | |
| **speed**(1) 161:11 | |
| **spend**(4) 37:17  45:18  94:6  173:18 | |

| Word | Page:Line |
|---|---|
| **spent**(8) 36:25  45:21  61:19  74:24  79:4  80:10  185:19  205:19 | |
| **sperling**(1) 9:18 | |
| **spike**(1) 130:21 | |
| **spoke**(2) 191:2  216:17 | |
| **sponsored**(1) 78:25 | |
| **spread**(3) 130:1  130:22  130:24 | |
| **spreads**(1) 204:6 | |
| **spring**(1) 51:24 | |
| **sprung**(1) 75:9 | |
| **square**(1) 2:42 | |
| **squashed**(2) 134:24  135:2 | |
| **squasher**(1) 135:7 | |
| **squashing**(1) 135:5 | |
| **squished**(1) 163:23 | |
| **stage**(2) 135:18  208:19 | |
| **stake**(1) 145:14 | |
| **stakes**(1) 137:24 | |
| **stand**(16) 42:10  54:15  58:21  75:2  84:16  120:20  122:16  123:5  131:17  147:10  148:2  149:20  160:4  160:5  160:15  224:1 | |
| **standard**(11) 89:5  89:7  104:23  111:3  111:6  113:19  113:20  116:12  116:16  116:2  117:1 | |
| **standing**(15) 19:15  26:7  61:8  61:8  61:9  61:12  61:15  61:18  130:12  137:13  146:14  216:18  216:21  216:25  220:11 | |
| **stands**(1) 97:21 | |
| **stanley**(10) 5:4  10:20  96:5  96:6  96:7  99:7  108:7  125:23  126:9  126:12 | |
| **stared**(1) 167:2 | |
| **stargatt**(1) 2:4 | |
| **start**(19) 48:15  50:5  63:13  94:24  95:4  95:5  103:2  104:4  105:10  110:23  120:6  124:9  125:12  128:25  160:14  184:7  185:18  186:15  191:20 | |
| **started**(11) 38:18  68:23  68:24  69:1  72:4  75:21  95:15  169:10  169:10  176:25  180:18 | |
| **starting**(3) 111:23  199:3  205:20 | |
| **starts**(2) 95:10  95:16 | |
| **state**(10) 94:24  97:13  97:17  98:14  98:17  100:8  123:16  137:14  191:8  191:11 | |
| **stated**(2) 113:25  119:4 | |
| **statement**(9) 64:14  81:20  86:3  90:4  109:6  109:6  156:10  207:11  207:13 | |
| **states**(3) 1:1  1:19  207:17 | |
| **statistical**(1) 54:18 | |
| **statistics**(2) 52:20  54:19 | |
| **status**(2) 221:10  222:24 | |
| **statute**(2) 140:15  183:6 | |
| **statutory**(5) 26:5  26:11  71:13  71:22  76:8 | |
| **stay**(1) 144:12 | |
| **stayed**(3) 62:9  62:10  74:6 | |
| **ste**(3) 1:34  2:15  5:24 | |
| **ste.1200**(1) 5:12 | |
| **steady**(2) 95:7  127:19 | |
| **stearn**(1) 2:41 | |
| **steep**(2) 88:12  89:3 | |
| **steeper**(1) 31:3 | |
| **steinhart**(2) 99:15  99:19 | |
| **stellar**(2) 109:13  187:17 | |
| **stem**(2) 99:20  101:8 | |

| Word | Page:Line |
|---|---|
| **step**(280) 19:6  19:7  19:9  19:9  19:10  19:11  19:13  19:15  19:18  19:23  19:24  20:1  20:6  20:7  20:13  21:22  21:24  22:2  22:9  22:10  22:12  22:13  24:14  24:14  24:16  24:16  25:23  25:23  25:24  26:9  26:11  26:18  26:25  26:25  26:25  27:1  27:10  27:16  28:2  28:7  28:21  29:6  29:7  29:8  29:10  29:17  29:20  29:24  30:3  30:15  30:22  31:1  31:2  31:9  31:14  31:20  32:3  32:8  32:13  32:20  33:11  33:13  33:13  33:18  33:22  34:2  34:9  34:15  34:21  34:24  35:10  35:16  36:15  36:16  36:22  36:23  38:20  38:21  39:12  39:14  39:16  39:25  40:21  40:25  41:1  45:15  47:19  49:7  49:7  51:18  51:20  52:16  54:23  54:23  55:1  55:24  58:7  58:7  58:9  58:12  58:13  58:21  58:24  58:24  58:25  59:8  59:24  59:24  59:25  60:7  60:8  60:12  60:17  60:18  60:19  63:2  63:2  63:8  64:15  65:16  71:1  71:1  71:2  71:4  71:5  71:9  71:17  76:24  87:11  90:16  90:19  90:19  91:23  93:24  93:24  94:7  94:9  94:10  94:12  94:14  94:20  94:22  94:23  95:11  95:15  95:18  96:10  97:18  99:17  100:9  103:4  103:16  104:3  104:7  104:18  106:6  106:11  106:22  108:24  109:19  109:25  110:4  110:17  110:23  111:8  111:11  111:24  114:1  114:2  114:4  115:1  115:2  115:2  115:9  115:23  119:9  119:12  121:7  121:11  121:23  122:21  123:23  128:17  128:17  128:20  129:19  129:23  130:1  130:3  130:11  130:22  130:23  135:19  135:21  135:22  135:23  136:1  136:6  136:7  136:8  136:11  136:15  136:19  136:21  136:22  136:23  136:24  136:25  137:27  137:24  138:3  138:5  138:9  138:17  138:18  140:23  140:23  140:25  141:1  141:2  141:3  141:5  141:5  141:6  141:7  141:18  143:6  143:8  143:8  143:14  143:14  143:19  143:20  143:21  144:5  144:6  144:10  144:10  144:13  144:13  149:21  149:22  151:11  151:11  158:19  158:19  164:5  167:8  167:11  167:12  167:14  167:14  186:3  187:5  188:1  188:13  188:18  188:19  193:23  196:3  196:6  196:8  199:11  200:13  203:1  203:2  204:7  204:7  204:8  204:15  204:16  209:20  209:21  214:25  216:21  217:14  217:14  217:18  217:19  217:22  218:13 | |
| **step-two**(1) 121:24 | |
| **stephen**(2) 2:20  12:5 | |
| **stepped**(1) 110:3 | |
| **steps**(12) 20:5  20:10  23:24  24:17  29:5  34:6  114:7  114:18  114:24  115:1  115:3  115:17 | |
| **stick**(1) 65:3 | |
| **still**(30) 14:20  20:18  29:19  30:5  32:3  51:25  53:6  57:23  60:7  60:10  62:13  69:23  71:10  71:17  74:6  86:12  92:5  104:10  107:11  108:24  136:8  136:22  138:15  142:4  149:5  149:7  154:13  211:13  213:15  220:2 | |
| **stipulated**(1) 117:7 | |
| **stipulation**(1) 23:1 | |
| **stock**(8) 48:6  51:25  82:2  82:4  82:6  120:24  128:16  159:15 | |
| **stocks**(1) 52:18 | |
| **stop**(4) 72:17  74:1  84:12  211:14 | |
| **story**(6) 125:11  125:20  195:10  197:9  198:13  199:18 | |
| **straight**(1) 15:10 | |
| **straightforward**(1) 139:25 | |
| **strange**(1) 206:7 | |
| **strategy**(1) 205:18 | |
| **strauss**(4) 4:17  8:9  84:20  173:15 | |
| **stream**(1) 127:19 | |
| **streams**(1) 96:14 | |
| **street**(14) 1:11  1:47  2:8  2:24  2:43  3:14  3:31  3:38  4:6  4:13  4:34  5:18  5:30  5:37 | |
| **strength**(4) 87:10  87:15  92:7  152:3 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

strengths(1) 152:13
stress(1) 188:23
strike(1) 163:11
strikes(1) 5:27
strong(9) 18:9 27:6 33:12 36:22 39:15 78:15 144:11 153:6 193:22

stronger(3) 71:1 91:23 152:7
structure(5) 116:10 118:15 173:25 176:1 176:4

struggled(1) 124:13
studied(1) 72:12
study(2) 78:25 79:7
stuff(4) 53:9 54:12 103:22 185:7
stumble(1) 160:12
stumped(1) 69:25
sub(3) 76:1 76:2 76:3
subject(3) 70:21 117:19 179:11
subjective(2) 75:18 168:11
subjectivity(1) 168:19
submission(1) 77:11
submit(27) 17:12 18:12 28:10 35:3 36:5 37:18 38:22 40:8 40:12 42:15 42:22 71:1 86:25 98:18 113:12 181:20 185:9 189:15 189:18 189:21 190:12 190:20 192:18 193:12 193:18 200:15 200:25

submitted(2) 22:25 75:7
subordinated(4) 42:10 203:15 203:15 203:19

subordination(12) 35:23 36:9 63:19 63:20 93:3 135:9 142:1 163:25 191:18 212:3 212:7 212:8

subs(8) 21:8 21:13 22:10 22:12 24:18 26:24 27:11 29:1

subsequent(1) 172:25
subset(2) 65:8 203:1
subsidiaries(32) 20:15 20:23 20:25 21:3 21:4 21:17 23:25 24:15 27:17 30:15 31:23 32:1 32:3 32:24 34:2 34:6 36:19 57:9 57:23 57:24 58:1 61:1 61:2 141:23 181:24 184:8 188:18 207:21 210:4 217:10 217:16

subsidiary(18) 21:11 30:13 49:24 57:12 57:22 61:5 61:6 61:16 63:4 66:20 90:2 144:5 158:16 181:24 183:14 184:10 209:1 216:24

substance(1) 114:16
substantial(19) 17:17 30:14 30:25 31:2 31:5 33:14 33:17 36:13 41:14 71:3 88:23 157:14 157:16 171:8 181:16 191:11 204:8 204:13 204:14

substantially(9) 22:20 34:10 43:8 46:5 49:23 138:1 174:17 176:3 192:23

substantive(1) 49:9
substitute(1) 66:7
succeed(3) 31:21 40:23 191:23
success(6) 41:3 89:4 135:18 157:17 166:1 166:6

successful(5) 41:11 78:2 88:19 90:15
successfully(1) 90:12
successors(1) 141:6
such(9) 35:11 51:16 51:18 62:4 113:10 156:25 172:19 184:13 193:12

suck(1) 136:9
sudden(2) 55:3 199:24
sufficient(2) 177:6 203:10
suggest(5) 98:6 155:16 192:4 200:17 214:3

suggested(13) 24:4 70:25 72:15 103:18 103:19 124:17 124:20 185:3 195:7 198:4 198:18 199:1 214:1

suggesting(5) 199:17 208:20 212:20 215:18 215:20

suggestion(2) 186:9 193:9
suggests(3) 103:7 122:22 199:19
suing(1) 153:21
suite(4) 3:14 3:32 4:13 5:37
suited(1) 219:12
sullivan(2) 4:10 4:12
sum(3) 79:16 97:15 193:15
summarized(7) 114:20 146:12 163:22 170:15 170:21 171:11 171:17

summarizes(3) 102:1 148:5 207:14
summary(1) 39:9
super(1) 64:13
superior(2) 24:1 219:2
supplemental(1) 143:10
support(30) 15:21 19:3 22:22 28:10 37:8 44:7 70:10 78:11 78:21 80:9 112:19 116:25 117:3 123:12 124:25 159:21 159:25 181:12 182:22 191:10 193:3 193:12 204:20 205:14 205:18 205:22 206:14 207:1 210:13 212:16

supported(2) 42:23 157:1
supporting(4) 105:6 123:25 210:10 210:18
supports(12) 37:1 70:24 78:22 85:3 91:9 134:11 136:4 158:21 199:11 200:18 210:7 211:4

supposed(4) 59:10 118:7 161:21 184:1
sure(14) 26:3 26:13 34:8 53:1 70:6 82:9 85:5 149:8 154:14 154:22 170:7 182:23 183:25 184:22

surmount(1) 21:3
surprised(1) 51:17
surprising(4) 72:10 151:14 156:15 165:17
surprisingly(2) 104:1 112:25
surrender(1) 184:24
surrounding(1) 139:4
suspect(2) 16:22 30:19
sutton(1) 21:14
suttonbrook(2) 5:42 5:42
swallow(2) 19:19 33:1
swap(7) 158:12 158:14 158:16 158:20 192:2 192:3 212:6

swaps(1) 129:11
swing(1) 119:16
switch(1) 203:22
swore(1) 120:22
sworn(3) 106:22 106:23 121:5
symmetrical(1) 83:20
syndicate(1) 133:16
syndicating(1) 126:23
systems(1) 148:14
tabak(2) 9:29 9:30
table(6) 90:25 133:14 144:24 154:16 155:7 157:22

tables(3) 23:2 23:4 23:13
take(61) 15:9 19:5 27:2 27:25 28:6 33:24 34:4 40:7 40:8 40:9 40:11 42:21 44:22 45:15 57:21 63:22 66:6 67:4 67:16 68:19 69:9 69:16 71:9 73:18 73:21 90:10 92:2 93:6 98:10 101:22 107:24 121:11 132:3 133:13 148:4 150:6 155:17 156:3 157:8 158:9 169:1 169:23 172:15 177:25 178:2 180:1 180:10 185:10 186:14 191:24 200:20 200:20 201:10 201:11 209:9 211:10 211:19 218:2 221:24 223:8 223:20

taken(6) 31:15 44:15 71:4 89:8 192:4

takes(6) 88:7 92:14 129:21 189:15 193:20 218:25

taking(5) 37:8 63:7 64:12 73:6 219:24
talk(34) 34:14 45:20 48:1 48:8 49:19 49:24 50:13 53:2 53:5 53:7 53:8 53:8 53:10 53:20 53:21 54:3 56:23 57:25 61:17 61:18 62:22 63:18 66:1 69:16 69:18 74:11 76:21 77:5 112:16 116:5 144:19 156:12 156:17 180:21

talked(9) 25:5 32:22 74:21 75:22 77:1 105:9 147:14 183:12 194:5

talking(30) 36:25 49:11 52:4 53:10 53:16 58:8 61:7 61:8 63:9 65:10 65:25 67:22 68:8 81:5 86:12 89:9 100:23 105:14 107:25 146:19 147:9 147:10 152:23 152:23 152:25 179:9 184:4 199:22 208:18 218:17

talks(8) 63:5 64:5 127:10 148:4 162:5 187:21 187:23 199:4

tangible(1) 49:9
tape(1) 167:1
targets(1) 102:17
tawil(1) 13:22
tax(11) 71:12 74:15 74:16 74:17 77:7 77:8 116:7 116:9 116:18 117:3 215:15

taylor(1) 2:5
team(4) 47:1 47:10 131:14 174:1
teams(1) 47:6
teck(1) 13:44
telephonic(10) 5:40 6:2 7:1 8:1 9:1 10:1 11:1 12:1 13:2 14:1

tell(12) 16:23 31:6 32:6 77:20 78:4 97:19 136:1 169:1 169:9 185:6 200:4 202:10

telling(4) 16:25 17:23 147:17 195:9
tells(8) 29:14 77:23 77:24 125:10 153:2 189:3 189:6 208:3

ten(7) 162:10 166:18 166:19 168:5 168:11 171:14 202:12

ten-minute(1) 180:10
tendency(1) 64:1
term(2) 71:20 88:2
termination(1) 178:9
terminology(1) 204:11
terms(15) 52:2 57:6 73:3 79:21 79:22 79:22 87:3 88:5 89:12 89:17 174:13 174:18 178:4 181:1 192:12

terribly(1) 68:1
test(13) 28:19 28:21 49:25 54:16 58:14 58:15 74:4 114:1 120:4 120:5 121:18 123:3 168:21

tested(1) 111:2
testified(33) 34:20 37:25 38:10 38:13 80:15 91:12 91:17 97:22 102:7 102:20 107:23 117:12 120:21 128:16 129:13 145:15 145:16 145:25 151:15 151:22 151:23 151:24 153:23 155:11 161:3 161:5 161:13 164:17 166:22 171:21 173:2 177:20 219:19

testify(3) 91:10 100:8 219:8
testifying(6) 91:14 107:1 107:15 161:20 161:21 190:21

testimony(42) 17:14 23:10 24:25 27:13 29:21 37:6 37:18 39:1 50:9 50:19 66:21 66:22 67:4 67:20 78:10 78:23 87:11 87:11 97:12 98:2 98:5 98:6 102:19 104:19 106:22 106:23 107:22 151:9 166:11 168:2 168:3 176:2 176:12 176:13 176:18 177:4 177:10 177:13 177:16 196:23 209:25 218:23 219:23

testing(1) 113:20
tests(11) 20:2 21:20 21:24 31:11 31:15 31:18 38:9 49:22 74:2 122:1 122:4

than(101) 17:13 19:9 19:11 19:24 20:24 21:8 21:15 22:20 23:23 24:21 29:13 30:6 30:8 30:9 30:14 31:20 32:1 34:8 34:11 34:17 36:17 37:23 40:24 41:1 41:16 42:7 42:25 43:8 44:16 46:22 48:22 50:22 56:20 57:8 57:10 57:13 61:2 61:22 68:2 68:3 82:13 90:21 90:22 91:3 91:23 92:2 92:18 93:19 101:12 103:15 103:21 106:11 106:21 108:11 112:14 123:17 128:3 128:20 129:15 130:2 132:19 133:22 138:15 142:23 151:16 151:24 152:7 152:19 156:18 160:8 166:25 168:14 169:13 170:16 172:5 182:12 183:5 183:18 183:19 187:23 190:18 190:23 192:10 194:3 197:12 200:14 200:20 201:10 210:3 215:13 216:19 221:7 221:25 223:20

thank(34) 15:13 43:2 43:25 44:1 64:22 68:18 69:8 69:13 82:17 84:24 94:1 169:5 173:12 173:13 179:23 179:24 184:25 193:24 198:6 198:7 203:21 211:8 211:16 213:24 214:20 216:15 220:6 221:13 221:18 221:19 222:2 222:20 223:11 223:25

thanks(1) 157:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 15:20 15:20 16:1 16:3 16:11 16:18 16:21 16:23 17:2 17:12 17:13 17:15 17:17 17:19 17:24 18:7 18:13 18:15 18:16 18:16 18:20 18:21 18:22 18:22 19:8 19:10 19:12 19:15 19:17 19:17 19:20 19:23 20:4 20:9 20:10 20:10 20:14 20:16 20:17 20:18 20:19 20:25 21:2 21:7 21:23 21:23 21:25 22:1 22:1 22:4 22:7 22:14 22:18 23:9 23:21 23:25 24:9 24:10 24:12 25:7 25:12 25:14 25:14 25:15 25:16 26:6 26:12 26:14 26:17 26:20 27:1 27:3 27:15 27:17 27:21 27:21 27:24 27:24 27:25 28:2 28:8 28:9 28:10 28:25 29:8 29:9 29:12 29:14 29:14 29:18 29:19 29:22 29:25 30:1 30:2 30:4 30:5 30:11 30:19 30:20 30:23 31:6 31:13 31:15 31:16 31:16 31:17 31:21 31:23 31:25 32:1 32:2 32:7 32:7 32:12 32:17 32:17 32:23 33:7 33:11 33:12 33:13 33:17 33:19 33:21 33:23 34:5 34:7 34:13 34:14 34:15 34:34 34:18 34:21 34:24 35:7 35:4 35:7 35:10 35:12 35:14 35:14 35:17 35:19 35:20 35:21 35:22 35:25 36:5 36:7 36:7 36:12 36:12 36:20 36:20 36:22 37:6 37:7 37:15 37:18 37:20 37:23 38:3 38:13 38:19 39:5 39:6 39:17 39:21 39:25 40:9 40:12 40:13 40:16 40:22 40:24 41:3 41:5 41:9 41:18 41:20 42:4 42:8 42:12 42:12 42:17 42:19 43:13 43:15 43:20 43:23 44:6 44:9 44:14 44:17 44:18 44:18 44:21 45:5 45:12 45:17 46:5 46:9 46:13 46:14 46:16 46:17 46:22 46:23 46:24 47:7 47:8 47:11 47:19 47:25 48:1 48:2 48:3 48:4 48:6 48:8 48:11 48:12 48:13 48:14 48:23 49:5 49:9 49:11 49:13 49:18 49:22 49:24 50:2 50:16 50:16 50:21 51:2 51:3 51:5 51:6 51:10 51:12 51:13 51:14 51:16 51:17 51:23 51:23 52:1 52:11 52:17 52:2 53:1 53:9 53:11 53:13 53:17 53:24 54:5 54:15 54:15 54:19 54:25 55:1 55:2 55:3 55:11 55:12 55:19 55:24 56:2 56:13 57:1 57:3 57:8 57:15 57:15 57:17 57:19 57:19 58:4 58:8 58:11 58:12 58:15 58:15 58:17 58:20 59:2 59:7 59:10 59:12 59:14 59:15 59:22 59:23 59:24

**that**(301) 60:1 60:2 60:2 60:5 60:5 60:9 60:9 60:15 60:20 61:4 61:7 61:21 61:22 62:1 62:1 62:2 62:6 62:7 62:12 62:16 63:2 63:4 63:7 63:13 63:14 63:23 63:25 64:2 64:4 64:5 64:7 64:8 64:10 64:15 64:16 64:17 65:3 65:3 65:4 65:10 65:12 65:15 65:16 65:18 65:18 65:23 65:23 65:24 65:25 65:25 66:2 66:4 66:9 66:10 66:10 66:18 66:22 66:22 66:24 67:5 67:6 67:16 67:17 67:18 67:18 67:23 67:24 68:9 68:10 69:15 69:23 70:3 70:6 70:10 70:14 71:6 71:6 71:10 71:16 71:17 71:18 71:18 71:25 72:7 71:10 71:16 71:17 71:18 71:18 71:25 72:7 72:10 72:11 72:12 72:13 72:15 72:20 73:2 73:2 73:6 73:7 73:9 73:9 73:10 73:14 74:3 74:17 74:5 74:15 74:16 74:17 74:19 74:20 74:20 74:23 75:6 75:7 75:8 75:12 75:13 75:17 75:22 76:5 76:9 76:12 76:13 76:15 76:15 76:17 76:19 76:21 77:2 77:3 77:5 77:6 77:10 77:11 77:12 77:12 77:14 77:16 77:17 77:19 77:19 77:20 77:20 77:24 77:24 78:3 78:4 78:6 78:7 78:8 78:9 78:11 78:15 78:17 78:21 78:22 78:24 78:9 79:2 79:9 79:11 79:13 79:14 79:15 79:17 79:19 80:2 80:6 80:7 80:9 80:15 80:20 80:24 81:12 81:13 81:13 81:14 81:19 81:20 81:22 81:24 81:25 81:25 82:1 82:9 82:25 83:5 83:6 83:8 83:10 83:17 85:3 85:10 85:10 85:11 85:14 85:23 86:4 86:5 86:6 86:6 86:9 86:10 86:17 86:25 87:10 87:12 87:14 87:20 87:21 87:21 87:22 87:23 88:3 88:3 88:5 88:6 88:6 88:7 88:9 88:9 88:11 88:13 88:22 89:2 89:2 89:3 89:4 89:5 89:7 89:14 89:21 89:25 90:5 90:11 90:15 90:18 90:18 90:20 90:21 90:22 90:24 91:1 91:2 91:3 91:4 91:9 91:11 91:12 91:12 91:14 91:15 91:17 91:19 91:21 91:22 91:22 91:24 92:1 92:3 92:4 92:10 92:10 92:12 92:15 92:16 92:18 92:20 92:22 93:10 93:15 93:18 93:19 94:5 94:8 94:15 94:16 94:19 94:21 94:21 94:23 94:25 95:1 95:1 95:7 95:9 95:13 95:15 95:15 95:21 95:23 95:24 96:7 96:8 96:12 96:13 96:21 96:21 96:22 97:9

**that**(301) 97:12 97:14 97:16 97:16 97:20 97:24 97:25 98:1 98:6 98:7 98:13 98:17 98:18 98:25 99:2 99:9 99:12 99:12 99:20 99:20 99:23 100:1 100:3 100:12 100:14 100:25 101:1 101:8 101:9 101:17 102:6 102:13 102:16 102:20 102:20 102:25 102:25 103:6 103:7 103:11 103:15 103:19 103:20 103:22 104:1 104:2 104:19 104:25 105:1 105:2 105:3 105:8 105:9 105:14 105:17 105:18 105:19 105:23 105:24 105:25 105:25 106:1 106:6 106:10 106:12 106:14 106:16 106:20 106:22 107:2 107:7 107:13 107:15 107:23 108:2 108:16 108:2 109:2 109:4 109:9 109:14 109:21 109:24 110:1 110:2 110:2 110:12 110:18 110:25 111:2 111:6 111:6 111:11 111:16 111:16 111:17 111:20 111:20 111:21 112:1 112:2 112:6 112:7 112:13 112:21 112:22 112:22 113:1 113:2 113:3 113:6 113:10 113:12 113:14 113:17 113:18 113:18 113:18 113:22 114:1 114:3 114:6 114:10 114:10 114:13 114:17 114:21 114:22 115:2 115:4 115:4 115:8 115:11 115:16 115:18 116:16 116:21 116:25 117:6 117:8 117:10 117:10 117:12 117:15 117:22 118:1 118:3 118:17 119:4 119:11 119:15 119:23 119:23 119:25 120:8 120:10 120:14 120:16 120:19 120:20 120:24 121:1 121:20 121:2 121:22 121:23 121:24 122:3 122:8 122:22 123:1 123:2 123:8 123:8 123:16 123:21 123:24 124:2 124:5 124:8 124:17 124:17 124:20 124:20 124:21 124:24 125:1 125:8 125:9 125:11 125:23 126:9 126:17 126:19 126:22 127:2 127:12 127:13 127:19 127:2 127:24 128:5 128:10 128:18 128:21 129:2 129:2 129:4 129:10 129:13 130:7 130:9 130:11 130:13 130:15 130:15 130:19 131:1 131:4 131:17 131:24 132:8 132:1 132:14 132:15 132:17 132:22 132:25 133:12 133:17 134:9 134:11 134:15 134:23 135:7 135:15 135:17 135:18 135:2 136:1 136:2 136:3 136:4 136:5 136:7 136:10 136:12 136:12 136:13 136:18 136:19 136:19 136:24 136:24 137:1 137:4 137:13 137:16 137:20 137:21 138:1 138:6 138:8 138:11 138:12 138:12 138:22 138:19 138:22 138:22 138:24 139:1 139:3 139:5 139:7 139:13 139:14 139:19 139:20 139:24 139:25 140:4 140:8 140:8 140:9 140:15 140:15

**that**(301) 140:19 140:21 141:3 141:5 141:9 141:11 141:12 141:14 141:14 141:16 141:19 141:19 141:21 141:25 142:2 142:5 142:8 142:8 142:12 142:13 142:14 142:14 142:15 142:17 142:22 142:23 142:25 143:5 143:5 143:7 143:9 143:12 144:2 144:3 144:7 144:8 144:11 144:21 144:22 144:22 144:23 144:24 145:1 145:9 145:10 145:11 145:13 145:13 145:16 145:17 145:18 145:22 145:25 146:2 146:3 146:5 146:6 146:8 146:11 146:12 146:13 146:19 147:2 147:5 147:12 147:24 148:5 148:8 148:9 148:15 148:18 148:18 148:19 149:3 149:14 149:20 149:23 149:24 150:2 150:4 150:7 150:10 150:14 150:15 150:16 150:18 151:4 151:9 151:13 151:15 151:22 151:23 152:9 152:18 153:8 153:10 153:19 153:20 153:28 154:2 154:5 154:7 154:14 154:15 154:15 155:3 155:5 155:6 155:16 155:20 155:24 156:7 156:10 156:19 156:21 156:25 157:2 157:6 157:9 157:9 157:16 157:18 157:19 157:20 157:25 158:3 158:8 158:9 158:10 158:11 158:20 158:21 158:22 158:25 159:2 159:16 159:22 160:6 160:17 160:18 160:18 160:21 160:22 161:3 161:8 161:9 161:10 161:11 161:12 161:15 161:19 161:25 162:4 162:9 162:14 162:15 162:20 162:23 162:25 163:4 163:11 163:13 163:19 163:21 163:24 164:3 164:10 164:10 164:14 164:15 164:17 164:20 164:21 164:23 165:1 165:3 165:7 165:9 165:19 165:23 166:1 166:3 166:4 166:5 166:6 166:9 166:11 166:16 166:20 168:4 168:7 168:10 168:14 168:16 168:18 168:20 169:15 170:1 170:4 170:5 170:7 170:9 171:8 171:10 171:13 171:17 171:20 172:2 172:3 172:12 172:17 172:19 172:23 172:24 173:3 173:4 173:5 173:8 174:8 174:11 174:13 174:13 174:15 174:20 174:25 175:1 175:2 175:6 175:11 175:18 175:20 175:25 176:2 176:15 176:15 177:9 177:11 177:15 177:19 177:24 178:7 178:9 178:11 178:15 178:17 178:19 178:23 179:5 179:6 179:8 179:10 179:14 179:17 179:18 179:20 179:20 179:22 180:1 180:7 180:9 180:21 180:24 181:2 181:3 181:3 181:7 181:10 181:10 181:11 181:20 181:23 181:24 182:7 182:11 182:17 182:18 182:19 182:23 182:24 183:9 183:10 183:12 183:14 183:16 183:18 183:20 183:21 183:23 183:23 183:25 184:7 184:10 185:4 185:9 185:17 186:2 186:10 186:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(294) | 186:11 186:16 186:24 187:4 187:10 187:11 187:14 187:18 187:22 188:5 188:5 188:6 188:7 188:14 188:16 188:17 189:3 189:4 189:5 189:6 189:6 189:7 189:12 189:16 189:18 189:22 190:1 190:2 190:4 190:9 190:12 190:14 190:17 190:18 190:20 191:2 191:3 191:4 191:7 191:9 191:12 191:16 191:18 191:20 191:21 191:22 191:23 192:1 192:4 192:4 192:8 192:9 192:10 192:18 192:21 192:25 193:2 193:5 193:5 193:6 193:9 193:18 193:19 193:20 193:21 193:22 193:24 194:5 194:8 194:9 194:13 194:17 194:21 194:22 194:2 194:23 195:1 195:11 195:12 195:12 195:14 195:18 195:22 195:24 196:5 196:7 196:11 196:13 196:14 196:18 196:20 196:23 196:23 197:4 197:4 197:4 197:5 197:6 197:6 197:10 197:13 197:14 197:17 197:19 197:20 197:20 198:4 198:12 198:1 198:16 198:16 198:18 198:22 198:24 199:1 199:9 199:11 199:12 199:15 199:15 199:17 199:18 199:20 199:25 200:1 200:3 200:7 200:12 200:14 200:15 200:15 200:1 200:18 200:23 201:2 201:4 201:4 201:5 201:8 201:8 201:9 201:9 201:11 201:13 201:14 201:17 201:18 201:18 201:22 201:24 201:25 202:7 202:13 202:20 203:2 203:3 203:3 203:16 203:18 203:18 204:1 204:5 204:6 204:14 204:23 204:23 205:8 205:16 205:17 205:19 205:21 206:3 206:1 206:21 206:23 206:24 207:8 207:11 207:19 207:23 207:25 208:6 208:7 208:12 208:20 208:21 208:23 209:10 209:10 209:10 209:12 209:13 209:20 210:2 210:6 210:7 210:9 211:3 211:4 212:3 212:11 212:13 212:14 212:16 212:16 212:19 212:20 212:21 212:24 213:2 213:4 213:6 213:20 213:20 213:22 214:1 214:4 214:8 214:10 214:15 214:18 214:22 215:1 215:1 215:4 215:7 215:8 215:12 215:14 215:18 215:20 215:21 215:22 215:22 215:23 216:2 216:7 216:8 216:9 216:9 216:10 216:10 216:12 216:13 216:19 216:21 216:24 217:5 217:8 217:12 217:14 217:15 217:16 217:18 217:20 217:21 217:22 217:23 217:25 218:3 218:6 218:8 218:8 218:12 218:19 218:24 219:1 219:2 219:2 219:3 219:12 219:12 219:16 219:18 219:19 219:23 219:25 220:4 220:16 221:6 221:11 221:16 221:25 222:1 222:5 222:14 222:23 222:24 223:5 223:8 223:13 223:25 224:5 | **that's**(58) | 85:12 89:7 90:1 90:14 90:21 91:24 92:18 97:4 97:20 98:2 98:15 99:12 100:22 103:5 103:10 107:25 108:2 109:15 114:16 114:23 116:18 119:7 119:22 120:9 120:17 124:22 124:23 125:14 126:4 126:1 128:15 128:19 129:3 129:12 129:12 130:3 130:5 130:15 131:10 131:13 167:14 204:11 205:20 205:21 207:13 207:22 208:2 208:1 208:10 210:6 213:7 214:3 217:3 217:6 218:17 220:10 223:2 223:9 | **the**(301) | 29:9 29:11 29:12 29:15 29:15 29:16 29:18 29:19 29:21 29:22 29:24 30:1 30:1 30:2 30:4 30:5 30:6 30:7 30:8 30:10 30:12 30:13 30:14 30:15 30:16 30:18 30:25 31:2 31:3 31:5 31:6 31:7 31:10 31:12 31:14 31:15 31:16 31:18 31:21 31:22 31:22 31:23 31:24 31:25 32:1 32:2 32:6 32:8 32:10 32:11 32:13 32:15 32:21 32:21 32:23 32:24 32:24 33:1 33:2 33:3 33:4 33:4 33:8 33:9 33:10 33:11 33:13 33:16 33:19 33:22 33:23 33:24 33:25 34:1 34:2 34:5 34:5 34:6 34:7 34:8 34:9 34:11 34:12 34:12 34:14 34:17 34:18 34:19 35:8 35:9 35:10 35:13 35:15 35:18 35:19 35:24 36:7 36:8 36:9 36:16 36:16 36:19 36:19 36:20 36:21 36:22 36:23 36:24 37:1 37:2 37:3 37:4 37:6 37:7 37:8 37:8 37:9 37:10 37:12 37:12 37:13 37:13 37:14 37:15 37:15 37:18 37:19 37:20 37:21 37:21 37:22 37:22 37:23 37:24 38:1 38:3 38:7 38:10 38:12 38:14 38:18 38:23 39:2 39:2 39:2 39:3 39:5 39:6 39:10 39:11 39:12 39:15 39:16 39:18 39:19 39:21 39:22 39:22 39:23 39:23 39:25 40:6 40:6 40:6 40:8 40:8 40:9 40:9 40:10 40:17 40:18 40:19 40:20 40:21 40:21 40:22 40:23 41:2 41:2 41:3 41:5 41:6 41:6 41:6 41:9 41:9 41:10 41:10 41:11 41:17 41:18 41:18 41:19 41:19 41:20 41:21 41:22 41:23 41:24 41:24 42:7 42:8 42:9 42:9 42:10 42:12 42:15 42:16 42:16 42:17 42:20 42:21 42:21 42:23 42:23 42:24 42:24 42:25 42:25 43:5 43:4 43:4 43:5 43:6 43:7 43:7 43:9 43:10 43:11 43:11 43:11 43:12 43:15 43:16 43:17 43:17 43:17 43:22 43:23 43:25 44:3 44:5 44:6 44:6 44:7 44:7 44:8 44:9 44:10 44:12 44:12 44:13 44:14 44:15 44:16 44:17 44:25 45:1 45:2 45:6 45:8 45:9 45:10 45:12 45:15 45:16 45:19 45:22 | **the**(301) | 45:23 45:23 45:24 46:1 46:2 46:3 46:5 46:6 46:6 46:10 46:10 46:15 46:15 46:18 46:19 46:22 46:22 46:23 47:2 47:3 47:5 47:6 47:7 47:8 47:12 47:13 47:14 47:17 47:18 47:20 47:20 47:20 47:22 47:25 48:1 48:6 48:7 48:9 48:9 48:10 48:10 48:10 48:11 48:11 48:12 48:13 48:16 48:16 48:18 48:20 48:22 48:23 49:2 49:7 49:7 49:10 49:12 49:15 49:15 49:18 49:20 49:21 49:22 49:23 49:25 49:25 50:2 50:2 50:3 50:4 50:5 50:5 50:6 50:6 50:7 50:9 50:11 50:16 50:18 50:19 50:24 51:4 51:6 51:7 51:9 51:10 51:12 51:12 51:13 51:13 51:14 51:14 51:15 51:16 51:17 51:18 51:18 51:20 51:24 51:25 52:2 52:5 52:7 52:14 52:15 52:15 52:16 52:16 52:16 52:17 52:17 52:18 52:20 52:20 52:22 52:24 52:24 52:32 53:3 53:3 53:4 53:4 53:5 53:7 53:12 53:14 53:14 53:15 53:18 53:23 54:1 54:3 54:5 54:7 54:8 54:11 54:20 54:20 54:21 54:22 54:25 54:22 54:23 54:24 54:24 54:25 55:8 55:14 55:14 55:15 55:16 55:16 55:7 55:18 55:19 55:20 55:21 55:23 55:23 55:24 56:1 56:2 56:5 56:5 56:7 56:8 56:11 56:13 56:15 56:18 56:19 56:21 56:21 56:23 56:25 57:2 57:7 57:8 57:8 57:9 57:10 57:12 57:12 57:14 57:15 57:16 57:17 57:17 57:18 57:19 57:19 57:20 57:21 57:21 57:22 57:22 57:23 57:23 57:24 57:25 57:25 58:2 58:3 58:4 58:5 58:6 58:6 58:8 58:8 58:14 58:15 58:16 58:16 58:19 58:22 58:24 58:25 59:3 59:5 59:8 59:9 59:13 59:18 59:19 59:21 60:1 60:3 60:3 60:6 60:18 60:20 60:25 61:1 61:2 61:3 61:5 61:6 61:6 61:10 61:11 61:14 61:15 61:19 61:19 61:22 62:10 62:10 62:12 62:13 62:13 62:18 62:20 62:20 62:22 62:22 62:22 62:23 63:1 63:5 63:6 63:7 63:16 63:21 63:21 63:25 64:1 64:3 64:4 64:5 64:7 64:13 64:14 64:14 64:18 64:19 64:20 64:22 65:7 65:9 |
| **that's**(101) | 15:11 15:25 16:24 17:11 17:20 21:14 22:19 24:7 25:7 26:1 26:3 26:14 27:1 27:17 29:10 30:14 30:16 33:4 36:4 36:12 36:23 40:16 44:23 48:21 50:13 50:21 53:20 54:7 55:16 59:2 60:19 60:23 63:4 63:13 63:17 63:18 63:24 64:2 64:13 65:20 67:9 68:7 71:11 71:12 71:21 73:20 74:17 75:8 75:19 76:10 80:8 80:18 83:24 133:5 134:16 138:2 138:11 139:16 140:4 143:12 144:14 145:3 145:9 145:16 149:16 151:18 153:2 154:17 155:14 156:15 157:6 159:1 160:10 163:16 163:18 164:11 180:23 181:22 182:17 184:2 186:7 186:22 187:15 188:10 188:20 188:21 189:5 190:3 190:16 191:6 191:24 192:18 193:4 193:7 194:20 195:2 196:16 197:21 200:17 200:23 202:16 | **thau**(1) | 9:32 | | | | |
| | | **the**(301) | 1:1 1:2 1:18 2:7 3:6 5:36 8:21 15:2 15:3 15:6 15:8 15:11 15:14 15:14 15:15 15:16 15:18 15:18 15:18 15:22 15:23 15:23 15:23 15:24 15:24 15:25 15:25 16:1 16:2 16:3 16:5 16:5 16:8 16:10 16:12 16:15 16:17 16:18 16:18 16:19 16:20 16:20 16:20 16:21 16:22 16:24 17:1 17:1 17:5 17:6 17:6 17:7 17:7 17:8 17:11 17:11 17:13 17:14 17:15 17:17 17:17 17:20 17:20 17:22 17:22 17:23 17:24 17:25 18:1 18:1 18:3 18:3 18:5 18:6 18:7 18:8 18:9 18:12 18:13 18:14 18:14 18:15 18:17 18:18 18:19 18:20 18:21 18:23 18:23 18:23 18:24 19:1 19:2 19:2 19:3 19:5 19:6 19:6 19:7 19:7 19:8 19:12 19:15 19:16 19:18 19:19 19:19 19:22 19:23 20:3 20:4 20:5 20:6 20:6 20:8 20:10 20:11 20:14 20:15 20:17 20:1 20:19 20:21 20:22 20:22 20:24 20:25 21:1 21:2 21:4 21:4 21:6 21:6 21:7 21:8 21:8 21:9 21:10 21:11 21:12 21:13 21:13 21:15 21:16 21:16 21:16 21:18 21:19 21:20 21:21 21:22 21:24 22:5 22:5 22:6 22:7 22:8 22:8 22:9 22:10 22:10 22:11 22:12 22:12 22:15 22:16 22:17 22:17 22:18 22:20 22:22 22:22 22:22 22:24 22:25 23:1 23:1 23:2 23:2 23:3 23:5 23:6 23:7 23:8 23:10 23:11 23:11 23:12 23:13 23:13 23:16 23:16 23:21 23:22 23:23 23:24 23:24 23:24 23:25 24:1 24:3 24:7 24:10 24:10 24:11 24:11 24:12 24:13 24:14 24:15 24:15 24:16 24:19 24:20 24:21 24:22 24:24 24:24 24:25 24:25 25:1 25:1 25:2 25:3 25:4 25:5 25:5 25:7 25:8 25:10 25:12 25:13 25:13 25:15 25:17 25:22 25:19 25:21 25:21 25:22 25:25 25:22 25:23 25:24 25:25 26:1 26:2 26:2 26:2 26:6 26:9 26:10 26:11 26:14 26:16 26:19 26:19 26:20 26:22 26:23 26:24 26:24 27:1 27:4 27:4 27:4 27:8 27:10 27:11 27:13 27:13 27:13 27:16 27:16 27:16 27:17 27:19 27:24 27:25 28:1 28:2 28:3 28:4 28:8 28:12 28:14 28:14 28:17 28:18 28:18 28:18 28:20 28:23 28:24 28:25 28:25 29:4 29:5 29:7 | | | | |
| **that."**(1) | 205:17 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| the(301) | | the(301) | | the(301) | | the(301) | |

the(301) 65:12 65:14 65:16 65:19 65:20
65:22 65:23 65:23 65:23 66:2 66:2 66:8
66:11 66:17 66:18 66:22 66:23 66:25 67:
67:2 67:7 67:7 67:12 67:13 67:14 67:14
67:16 67:20 67:22 68:1 68:2 68:2 68:2
68:3 68:4 68:6 68:8 68:10 68:11 68:11
68:18 68:20 68:23 69:2 69:6 69:9 69:12
69:14 69:15 69:17 69:17 69:18 69:20
69:22 69:23 69:24 69:25 70:2 70:4 70:4
70:7 70:9 70:10 70:10 70:11 70:11 70:12
70:14 70:15 70:16 70:17 70:17 70:18
70:19 70:20 70:20 70:22 70:23 70:23
70:24 70:25 71:1 71:4 71:4 71:5 71:7
71:11 71:13 71:15 71:17 71:18 71:20
71:21 71:22 71:23 71:25 71:25 71:25 72:
72:3 72:4 72:5 72:6 72:6 72:12 72:12
72:13 72:14 72:16 72:18 72:18 72:24
72:24 73:1 73:5 73:5 73:6 73:7 73:9
73:10 73:11 73:12 73:13 73:15 73:16
73:17 73:19 73:20 73:21 73:21 73:22
73:23 73:24 73:24 74:3 74:4 74:5 74:6
74:6 74:7 74:8 74:9 74:9 74:10 74:11
74:14 74:16 74:17 74:17 74:19 74:24 75:
75:3 75:5 75:5 75:5 75:7 75:7 75:9 75:9
75:10 75:10 75:11 75:11 75:12 75:12
75:13 75:21 75:23 75:23 75:24 75:24 76:
76:7 76:8 76:8 76:8 76:13 76:13 76:14
76:16 76:17 76:18 76:18 76:18 76:19
76:19 76:19 76:20 76:20 76:21 76:21
76:22 76:24 77:1 77:2 77:4 77:5 77:6
77:7 77:8 77:8 77:9 77:9 77:10 77:10
77:11 77:12 77:13 77:16 77:17 77:17
77:18 77:19 77:20 77:21 77:22 77:22
77:23 77:24 78:3 78:4 78:6 78:8 78:9
78:10 78:12 78:12 78:14 78:15 78:17
78:18 78:20 78:21 78:21 78:22 78:23 79:
79:1 79:3 79:3 79:7 79:7 79:9 79:10
79:11 79:14 79:16 79:17 79:18 79:20
79:20 79:24 79:24 79:25 79:25 80:1 80:3
80:3 80:6 80:7 80:12 80:13 80:16 80:16
80:16 80:17 80:22 80:23 80:24 80:24
80:25 81:1 81:2 81:2 81:3 81:3 81:6 81:9
81:9 81:10 81:12 81:13 81:15 81:17 81:19
81:19 81:20 81:21 81:22 81:22 82:1 82:1
82:2 82:3 82:4 82:6 82:6 82:6 82:6 82:7

the(301) 82:9 82:10 82:11 82:15 82:17
82:20 82:22 82:22 83:9 83:10 83:11 83:1
83:12 83:13 83:14 83:14 83:15 83:15
83:16 83:16 83:17 83:19 83:22 83:22
83:23 83:25 84:1 84:2 84:3 84:6 84:11
84:14 84:16 84:18 84:19 84:21 84:24 85:
85:2 85:3 85:3 85:4 85:5 85:7 85:8 85:10
85:12 85:12 85:13 85:17 85:20 85:22
85:23 85:25 85:25 86:2 86:3 86:4 86:4
86:14 86:15 86:15 86:15 86:16 86:17
86:17 86:18 86:18 86:18 86:20 86:25 87:
87:1 87:2 87:4 87:4 87:7 87:10 87:10
87:11 87:11 87:14 87:15 87:15 87:17
87:18 87:18 87:19 87:20 87:21 87:23
87:23 87:24 87:24 88:1 88:2 88:2 88:5
88:8 88:9 88:10 88:10 88:11 88:12 88:12
88:13 88:13 88:14 88:15 88:15 88:15
88:17 88:17 88:18 88:18 88:23 88:25 89:
89:1 89:2 89:2 89:3 89:5 89:8 89:9 89:9
89:10 89:10 89:11 89:11 89:13 89:13
89:14 89:14 89:17 89:17 89:19 89:19
89:20 89:21 89:22 89:22 89:23 89:25 90:
90:2 90:3 90:4 90:5 90:5 90:7 90:8 90:10
90:11 90:11 90:12 90:13 90:14 90:15
90:16 90:17 90:17 90:18 90:19 90:20
90:21 90:24 90:24 90:25 90:25 91:2 91:3
91:3 91:4 91:6 91:8 91:8 91:9 91:11
91:12 91:13 91:13 91:15 91:16 91:17
91:17 91:19 91:20 91:22 91:23 91:24 92:
92:2 92:2 92:3 92:3 92:4 92:4 92:7 92:7
92:8 92:8 92:8 92:9 92:10 92:13 92:14
92:14 92:16 92:17 92:18 92:18 92:21
92:21 92:22 92:24 92:25 93:1 93:2
93:5 93:5 93:6 93:8 93:9 93:10 93:12
93:15 93:16 93:17 93:18 93:19 93:23
93:23 94:2 94:3 94:6 94:8 94:9 94:11
94:11 94:15 94:16 94:18 94:19 94:20
94:24 94:24 94:25 95:1 95:3 95:4 95:8
95:9 95:10 95:10 95:12 95:12 95:14 95:16
95:16 95:17 95:18 95:18 95:20 95:23 96:
96:6 96:6 96:7 96:8 96:11 96:12 96:12
96:16 96:18 96:18 96:18 96:20 96:21 96:2
96:22 96:23 96:25 97:1 97:2 97:3 97:6
97:6

the(301) 97:8 97:11 97:12 97:13 97:13
97:13 97:16 97:17 97:17 97:25 98:1 98:2
98:3 98:4 98:7 98:7 98:11 98:11 98:12
98:12 98:12 98:14 98:14 98:15 98:15
98:15 98:16 98:16 98:17 98:21 98:22
98:23 98:24 98:24 99:1 99:4 99:4 99:6
99:7 99:9 99:14 99:15 99:15 99:17 99:18
99:19 99:23 99:23 99:25 100:1 100:2
100:3 100:3 100:5 100:6 100:8 100:11
100:11 100:14 100:17 100:22 100:25 101:
101:3 101:4 101:4 101:4 101:5 101:5
101:6 101:8 101:10 101:11 101:12 101:12
101:15 101:16 101:17 101:22 101:25 102:
102:1 102:1 102:2 102:4 102:6 102:8
102:9 102:10 102:10 102:11 102:12 102:1
102:13 102:13 102:14 102:14 102:15
102:17 102:18 102:22 102:23 102:24 103:
103:9 103:10 103:12 103:16 104:1 104:2
104:9 104:11 104:13 104:17 104:21 104:2
104:23 104:24 104:25 105:1 105:5 105:6
105:7 105:8 105:8 105:12 105:12 105:14
105:20 105:20 105:22 105:24 106:4 106:8
106:8 106:10 106:14 106:15 106:16 106:1
106:20 106:25 107:1 107:7 107:8 107:10
107:12 107:13 107:17 107:18 107:22
107:23 107:24 108:1 108:3 108:9 108:10
108:12 108:12 108:14 108:15 108:16
108:18 108:21 108:24 108:25 109:4 109:5
109:6 109:6 109:8 109:11 109:12 109:14
109:19 109:19 109:20 109:21 109:21
109:25 110:2 110:3 110:5 110:7 110:8
110:8 110:11 110:14 110:15 110:16 110:1
110:24 110:24 110:25 111:1 111:1 111:5
111:7 111:8 111:8 111:8 111:14 111:16
111:22 111:25 112:2 112:3 112:4 112:4
112:6 112:6 112:9 112:10 112:11 112:16
112:16 112:17 112:18 112:19 112:19
112:21 112:23 113:2 113:3 113:3 113:4
113:6 113:6 113:8 113:7 113:8 113:8
113:14 113:14 113:15 113:15 113:16
114:7 114:9 114:10 114:10 114:11 114:11
114:12 114:13 114:17 114:17 114:18
114:20 114:21 114:22 114:24 114:25 115:
115:3 115:8 115:11 115:12 115:13 115:14
115:14 115:15 115:15 115:19 115:24
115:24 116:2 116:4 116:6 116:6 116:7
116:7 116:8 116:10 116:11 116:11 116:13
116:15 116:16

the(301) 116:16 116:18 116:20 116:20
117:1 117:3 117:5 117:6 117:6 117:7
117:8 117:9 117:11 117:12 117:13 117:14
117:16 117:17 117:18 117:23 118:4 118:12
118:23 118:23 118:25 118:25 119:2 119:2
119:3 119:4 119:5 119:6 119:6 119:7
119:8 119:8 119:10 119:11 119:12 119:14
119:18 119:19 119:20 119:23 119:25 120:1
120:1 120:2 120:3 120:4 120:7 120:9
120:9 120:15 120:17 120:18 120:24 120:25
121:3 121:3 121:8 121:10 121:11 121:13
121:18 121:20 121:21 121:21 121:22
121:23 121:24 122:4 122:5 122:8 122:8
122:9 122:10 122:13 122:15 122:19 122:28
122:24 123:2 123:3 123:4 123:5 123:8
123:8 123:16 123:17 123:18 123:19 123:20
123:23 124:2 124:4 124:5 124:11 124:12
124:13 124:13 124:14 124:23 125:1 125:2
125:2 125:3 125:5 125:5 125:9 125:10 125:10
125:13 125:14 125:15 125:16 125:17
125:21 125:23 125:24 125:25 125:25 126:2
126:6 126:6 126:14 126:14 126:17 126:21
126:22 126:23 127:2 127:4 127:5 127:5
127:8 127:10 127:11 127:11 127:12 127:13
127:13 127:14 127:16 127:18 127:23
127:24 127:25 127:25 127:25 128:1 128:2
128:6 128:10 128:10 128:11 128:12 128:13
128:14 128:16 128:17 128:18 128:21
128:21 128:22 129:2 129:2 129:2 129:7
129:7 129:12 129:13 129:18 129:21 129:22
129:23 129:23 130:1 130:3 130:3 130:5
130:6 130:6 130:7 130:7 130:8
130:9 130:10 130:10 130:11 130:11 130:12
130:12 130:14 130:16 130:17 130:19
130:20 130:21 130:22 130:22 130:23
130:24 131:1 131:2 131:8 131:8 131:9
131:9 131:13 131:13 131:15 131:16 131:19
131:20 131:22 131:24 131:25 132:1 132:3
132:7 132:8 132:11 132:16 132:20 132:21
132:22 133:1 133:4 133:4 133:5 133:5
133:6 133:6 133:8 133:8 133:10 133:11
133:11 133:13 133:14 133:16 133:20
133:24 134:5 134:8 134:8 134:9 134:11
134:12 134:13 134:14 134:14 134:15
134:16 134:18 134:19 134:20 134:21
134:24 134:24 135:1 135:3 135:4 135:5
135:6 135:7 135:7 135:13 135:14 135:17
135:19 135:22 135:23 135:24 135:25 136:1
136:4 136:5 136:5 136:6 136:8 136:10
136:15 136:17 136:18 136:19 136:20
136:20 136:21 136:22 137:1 137:3 137:3
137:5 137:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) | 137:8 137:11 137:11 137:12 | the(301) | 153:15 153:16 153:16 153:17 | the(301) | 171:4 171:6 171:10 171:12 | the(301) | 186:18 186:21 186:22 186:23 |
| | 137:15 137:16 137:19 137:22 137:23 | | 153:18 153:18 153:19 153:19 153:20 | | 171:15 171:18 171:20 171:20 171:21 | | 186:24 187:1 187:2 187:2 187:4 187:5 |
| | 137:23 137:24 137:25 138:1 138:2 138:2 | | 153:21 153:22 153:23 153:24 153:24 | | 171:22 171:24 171:25 172:1 172:2 172:4 | | 187:5 187:6 187:7 187:7 187:8 187:9 |
| | 138:3 138:5 138:8 138:9 138:12 | | 153:25 154:1 154:4 154:9 154:10 154:11 | | 172:7 172:7 172:11 172:12 172:12 172:15 | | 187:10 187:11 187:13 187:17 187:19 |
| | 138:14 138:14 138:15 138:18 138:20 | | 154:11 154:11 154:13 154:14 154:16 | | 172:16 172:16 172:17 172:18 172:22 | | 187:20 187:21 187:22 187:25 187:25 188:1 |
| | 138:21 138:21 138:24 138:24 138:25 | | 154:16 154:17 154:18 154:20 154:23 | | 172:23 173:1 173:4 173:4 173:5 173:5 | | 188:1 188:2 188:3 188:3 188:4 188:5 |
| | 138:25 139:1 139:3 139:4 139:6 139:6 | | 154:23 155:1 155:2 155:2 155:2 155:6 | | 173:6 173:7 173:7 173:7 173:8 173:9 | | 188:7 188:8 188:10 188:10 188:12 188:13 |
| | 139:10 139:12 139:14 139:14 139:14 | | 155:6 155:6 155:7 155:7 155:8 155:8 | | 173:10 173:11 173:13 173:17 173:18 | | 188:15 188:15 188:16 188:19 188:20 |
| | 139:16 139:16 139:22 139:23 140:1 140:4 | | 155:9 155:9 155:10 155:11 155:12 155:12 | | 173:18 173:20 173:21 173:22 173:24 | | 188:21 188:22 188:23 188:25 189:1 189:1 |
| | 140:5 140:7 140:8 140:10 140:11 140:12 | | 155:13 155:14 155:15 155:17 155:19 | | 173:24 173:24 173:25 173:25 174:1 174:2 | | 189:5 189:7 189:9 189:10 189:11 189:13 |
| | 140:12 140:13 140:17 140:19 140:22 | | 155:22 155:23 156:3 156:3 156:4 156:5 | | 174:3 174:3 174:4 174:7 174:7 174:9 | | 189:14 189:15 189:15 189:16 189:17 |
| | 140:23 140:24 140:25 141:1 141:2 141:3 | | 156:6 156:7 156:8 156:8 156:9 156:9 | | 174:9 174:11 174:12 174:14 174:15 174:1 | | 189:17 189:18 189:22 189:24 189:25 |
| | 141:3 141:5 141:8 141:10 141:12 141:12 | | 156:9 156:10 156:12 156:13 156:14 156:1 | | 174:15 174:16 174:16 174:18 174:18 | | 189:25 190:6 190:6 190:7 190:8 190:13 |
| | 141:13 141:13 141:14 141:17 141:23 | | 156:16 156:19 156:19 156:20 156:22 | | 174:18 174:19 174:19 174:19 174:20 | | 190:13 190:18 190:20 190:23 190:23 |
| | 141:23 141:24 141:25 141:25 142:3 142:3 | | 156:22 156:22 156:23 157:1 157:2 157:3 | | 174:20 174:22 174:23 174:25 175:1 175:1 | | 190:24 190:25 191:5 191:10 191:14 191:15 |
| | 142:4 142:6 142:6 142:9 142:9 142:13 | | 157:8 157:12 157:13 157:13 157:15 157:1 | | 175:3 175:4 175:5 175:6 175:6 175:7 | | 191:18 191:20 191:22 191:23 192:1 192:1 |
| | 142:16 142:17 142:17 142:18 142:19 | | 157:17 157:18 157:19 157:20 157:20 | | 175:7 175:8 175:8 175:9 175:9 175:13 | | 192:1 192:2 192:3 192:5 192:7 192:7 |
| | 142:21 142:22 142:22 142:23 142:23 | | 157:21 157:21 157:22 157:23 157:23 | | 175:13 175:14 175:15 175:16 175:17 | | 192:8 192:9 192:9 192:11 192:11 192:13 |
| | 142:23 142:24 142:25 143:1 143:4 143:4 | | 157:23 158:1 158:1 158:2 158:2 158:3 | | 175:17 175:19 175:20 175:21 175:22 | | 192:15 192:19 192:21 192:22 192:22 |
| | 143:4 143:5 143:7 143:8 143:11 143:12 | | 158:4 158:4 158:5 158:7 158:9 158:11 | | 175:23 175:23 175:24 176:1 176:3 176:4 | | 192:23 192:23 192:24 192:24 193:2 193:3 |
| | 143:13 143:16 143:17 143:18 143:18 | | 158:12 158:13 158:14 158:15 158:15 | | 176:5 176:6 176:7 176:8 176:8 176:9 | | 193:4 193:5 193:6 193:9 193:9 193:11 |
| | 143:18 143:20 143:21 143:21 143:22 | | 158:16 158:16 158:17 158:18 158:20 | | 176:11 176:11 176:13 176:14 176:15 | | 193:16 193:16 193:19 193:21 193:21 |
| | 143:23 144:4 144:5 144:8 144:9 144:9 | | 158:21 158:23 158:24 158:25 158:25 159: | | 176:15 176:17 176:17 176:18 176:19 | | 193:22 193:22 194:5 194:5 194:6 194:7 |
| | 144:10 144:12 144:12 144:13 144:19 | | 159:3 159:4 159:5 159:6 159:6 159:6 | | 176:19 176:19 176:21 176:22 176:25 177: | | 194:7 194:9 194:10 194:10 194:13 194:14 |
| | 144:19 144:20 144:23 144:24 144:24 145: | | 159:7 159:7 159:8 159:9 159:9 159:11 | | 177:2 177:3 177:4 177:5 177:7 177:8 | | 194:21 194:21 194:22 194:23 194:23 |
| | 145:7 145:8 145:9 145:9 145:10 145:11 | | 159:12 159:13 159:14 159:15 159:16 | | 177:9 177:10 177:10 177:13 177:14 177:1 | | 194:24 195:4 195:4 195:7 195:9 195:10 |
| | 145:12 145:14 145:14 145:15 145:16 | | 159:17 159:17 159:18 159:19 159:23 | | 177:15 177:16 177:17 177:19 177:22 | | 195:10 195:11 195:12 195:13 195:14 |
| | 145:17 145:18 145:19 145:19 145:20 | | 159:24 159:25 159:25 160:3 160:4 160:5 | | 177:23 177:25 178:2 178:3 178:5 178:5 | | 195:14 195:15 195:16 195:17 195:17 |
| | 145:21 145:23 145:24 145:24 145:25 146: | | 160:7 160:8 160:10 160:10 160:13 160:13 | | 178:7 178:9 178:11 178:12 178:13 178:14 | | 195:18 195:18 195:20 195:21 195:21 |
| | 146:2 146:3 146:6 146:8 146:9 146:10 | | 160:13 160:15 160:18 160:19 160:19 | | 178:15 178:18 178:18 178:19 178:21 | | 195:22 195:24 195:25 196:2 196:3 196:3 |
| | 146:11 146:11 146:12 146:13 146:14 | | 160:19 160:21 160:22 160:24 160:25 161: | | 178:21 178:22 178:22 178:23 178:24 179: | | 196:15 196:16 196:17 196:19 196:20 |
| | 146:16 146:17 146:18 146:18 146:20 | | 161:9 161:11 161:11 161:15 161:22 | | 179:6 179:6 179:7 179:7 179:7 179:9 179:11 | | 196:22 196:22 197:3 197:7 197:8 197:8 |
| | 146:21 146:21 146:22 146:22 146:23 | | 161:22 162:14 162:16 162:17 162:17 | | 179:11 179:12 179:13 179:15 179:17 | | 197:13 197:14 197:15 197:15 197:16 |
| | 146:23 146:25 147:3 147:3 147:3 147:4 | | 162:18 162:20 162:21 162:22 162:25 163: | | 179:20 179:20 179:21 179:24 180:1 180:2 | | 197:17 197:17 197:19 197:20 197:20 |
| | 147:4 147:7 147:7 147:10 147:12 147:12 | | 163:3 163:5 163:6 163:8 163:9 163:10 | | 180:16 180:17 180:19 180:19 180:21 | | 197:20 197:22 197:22 197:24 197:24 |
| | 147:13 147:14 147:15 147:17 147:18 | | 163:12 163:13 163:15 163:15 163:16 | | 180:21 180:21 180:23 180:24 181:3 181:4 | | 197:25 198:1 198:1 198:2 198:3 198:4 |
| | 147:20 147:21 147:22 147:22 147:23 | | 163:19 163:21 163:23 163:25 164:3 164:3 | | 181:5 181:9 181:9 181:10 181:13 181:13 | | 198:4 198:5 198:7 198:9 198:10 198:11 |
| | 147:24 147:24 147:25 148:1 148:2 148:2 | | 164:5 164:6 164:9 164:11 164:13 164:14 | | 181:14 181:17 181:19 181:19 181:21 | | 198:11 198:13 198:13 198:16 198:19 |
| | 148:3 148:3 148:4 148:5 148:7 148:8 | | 164:20 164:20 164:22 165:2 165:5 165:6 | | 181:22 181:22 181:25 182:1 182:2 182:2 | | 198:20 198:21 198:22 198:22 198:22 |
| | 148:8 148:9 148:10 148:11 148:12 148:15 | | 165:7 165:8 165:9 165:10 165:10 165:12 | | 182:3 182:5 182:6 182:7 182:11 182:16 | | 198:23 198:24 198:25 199:1 199:2 199:4 |
| | 148:17 148:18 148:19 148:20 148:21 | | 165:15 165:16 165:18 165:19 165:20 | | 182:16 182:17 182:18 182:19 182:21 | | 199:5 199:5 199:8 199:9 199:10 199:11 |
| | 148:22 148:23 148:24 148:24 149:1 149:2 | | 165:21 165:22 165:24 165:25 166:1 166:1 | | 182:21 182:24 182:24 182:25 182:25 183: | | 199:13 199:14 199:16 199:16 199:18 |
| | 149:3 149:5 149:8 149:9 149:10 149:15 | | 166:3 166:3 166:4 166:5 166:5 166:7 | | 183:3 183:4 183:6 183:7 183:7 183:8 | | 199:18 199:20 199:22 199:23 200:1 200:3 |
| | 149:16 149:17 149:17 149:17 149:18 | | 166:24 167:1 167:2 167:3 167:7 167:8 | | 183:10 183:10 183:11 183:12 183:13 | | 200:6 200:7 200:11 200:12 200:12 200:13 |
| | 149:19 149:21 149:23 149:24 149:24 150: | | 167:13 167:25 168:1 168:3 168:3 168:4 | | 183:13 183:14 183:19 183:19 183:20 | | 200:16 200:16 200:17 200:18 200:21 |
| | 150:2 150:3 150:3 150:4 150:5 150:7 | | 168:8 168:9 168:9 168:13 168:14 168:15 | | 183:21 184:2 184:4 184:5 184:7 184:10 | | 200:21 200:22 200:22 200:25 201:1 201:2 |
| | 150:8 150:10 150:13 150:14 150:15 150:1 | | 168:19 168:20 168:22 169:1 169:2 169:3 | | 184:11 184:14 184:18 184:18 184:24 | | 201:3 201:3 201:4 201:12 201:13 201:13 |
| | 150:16 150:17 150:17 150:18 150:19 | | 169:5 169:7 169:8 169:9 169:15 169:20 | | 184:25 185:2 185:3 185:4 185:5 185:7 | | 201:14 201:15 201:18 201:21 201:23 |
| | 150:22 150:22 150:24 151:2 151:3 151:4 | | 169:23 170:1 170:3 170:4 170:5 170:6 | | 185:9 185:10 185:10 185:11 185:13 185:1 | | 201:23 201:24 201:25 202:2 202:2 202:4 |
| | 151:5 151:6 151:6 151:8 151:9 151:10 | | 170:8 170:11 170:12 170:12 170:14 170:1 | | 185:17 185:18 185:18 185:20 185:21 | | 202:5 202:6 202:6 202:7 202:11 202:11 |
| | 151:13 151:16 151:17 151:17 151:17 | | 170:18 170:20 170:20 170:21 170:22 | | 185:22 185:23 185:23 185:24 185:25 186: | | 202:15 202:15 202:17 202:18 202:20 |
| | 151:20 151:23 151:25 152:1 152:1 152:3 | | 171:1 171:1 171:3 | | 186:3 186:4 186:6 186:6 186:7 186:8 | | 202:21 202:22 202:24 202:24 202:24 |
| | 152:3 152:6 152:7 152:10 152:13 152:19 | | | | 186:9 186:10 186:10 186:12 186:15 | | 202:25 203:1 203:2 203:5 203:6 203:6 |
| | 152:20 153:2 153:5 153:6 153:6 153:9 | | | | | | 203:8 |
| | 153:14 | | | | | | |

| Word | Page:Line |
|---|---|

**the(301)** 203:8 203:10 203:11 203:14 203:14 203:15 203:17 203:18 203:20 203:22 203:25 204:4 204:5 204:5 204:6 204:6 204:7 204:7 204:9 204:10 204:10 204:11 204:12 204:15 204:16 204:18 204:20 204:22 204:23 204:25 205:1 205:1 205:6 205:7 205:8 205:10 205:13 205:13 205:14 205:14 205:17 205:18 205:19 205:20 205:20 205:21 205:21 205:23 205:25 206:1 206:2 206:3 206:4 206:6 206:9 206:9 206:13 206:14 206:14 206:15 206:19 206:19 206:20 206:20 206:21 206:21 206:23 206:23 206:24 206:24 206:24 207:1 207:2 207:2 207:3 207:4 207:4 207:6 207:7 207:7 207:10 207:14 207:19 207:20 207:21 207:22 207:23 208: 208:4 208:4 208:6 208:7 208:7 208:14 208:19 208:19 208:23 208:25 209:1 209:2 209:2 209:3 209:5 209:7 209:10 209:11 209:11 209:11 209:14 209:15 209:15 209:16 209:17 209:18 209:22 209:22 209:23 209:23 209:25 209:25 210:1 210:2 210:4 210:4 210:5 210:6 210:7 210:13 210:14 210:16 210:19 210:20 210:22 210:22 210:23 210:25 211:1 211:2 211:2 211:4 211:8 211:12 211:15 211:18 211:19 211:23 211:25 212:3 212:4 212:6 212:6 212:7 212:7 212:8 212:10 212:10 212:14 212:14 212:16 212:17 212:19 212:19 212:20 212:20 213:1 213:3 213:6 213:11 213:13 213:14 213:16 213:21 213:21 213:23 213:24 214:1 214:2 214:2 214:3 214:4 214:4 214:6 214:8 214:12 214:13 214:14 214:20 214:24 215:1 215:5 215:6 215:7 215:10 215:12 215:12 215:14 215:1 215:17 215:18 215:19 215:19 215:21 215:21 215:22 215:23 216:1 216:2 216:3 216:4 216:5 216:6 216:6 216:7 216:8 216:8 216:11 216:14 216:15 216:17 216:2 216:21 216:21 216:22 216:22 216:23 216:24 216:24 217:1 217:2 217:3 217:4 217:6 217:7 217:8 217:9 217:9 217:11 217:13 217:13 217:15 217:15 217:16 217:16 217:17 217:19 217:21 217:22 217:22 218:1 218:4 218:5 218:7 218:9 218:11 218:11 218:12 218:17 218:20 218:21 218:22 218:23 218:24 219:3 219:7 219:8 219:9 219:10 219:12 219:13 219:15 219:16 219:18 219:18 219:21 219:22 219:23 219:23 220:2 220:3 220:4 220:5 220:6 220:8 220:8 220:10 220:11 220:15 220:19 220:21 220:21 220:22 220:23 220:23 221:1 221:2 221:2 221:4 221:8 221:9 221:9 221:10

**the(40)** 221:12 221:15 221:17 221:19 221:22 221:23 221:24 222:3 222:5 222:6 222:6 222:8 222:9 222:9 222:10 222:10 222:12 222:13 222:13 222:14 222:15 222:17 222:22 222:24 222:24 222:25 223:3 223:6 223:7 223:13 223:16 223:17 223:21 223:23 223:25 224:2 224:5 224:6 224:6 224:7

**their(102)** 15:24 18:18 18:19 30:23 31:4 34:20 36:4 39:5 39:11 39:21 40:10 44:9 52:12 52:12 56:14 56:15 61:24 62:14 64: 64:16 66:3 66:20 67:15 67:17 68:15 72:3 73:18 80:10 97:3 102:17 103:18 103:22 107:15 107:20 109:4 110:15 117:10 118:1 119:15 125:25 126:24 131:5 138:14 138:16 141:4 141:6 149:11 149:12 149:13 149:16 152:12 152:13 152:14 152:14 152:20 154:8 156:25 157:5 159:8 159:15 159:24 160:4 160:5 160:15 160:16 161:24 162:7 163:18 167:12 167:22 170:7 172:1 172:9 178:25 180:22 180:23 181:7 182:15 184:16 189:12 192:16 192:16 192:19 193:24 194:24 195:3 199:23 200:25 201:1 207:22 207:24 209:16 210:13 210:14 210:18 212:11 212:12 213:8 218:10 218:2 219:21 220:1

**them(67)** 18:2 19:20 23:6 24:21 28:14 31:4 32:10 40:1 43:22 43:24 45:2 45:19 48:5 50:7 51:8 52:20 63:22 64:3 66:3 66:9 66:10 66:11 68:11 74:19 87:5 89:16 98:18 118:20 122:2 126:20 126:25 131:21 133:8 133:12 134:7 134:21 139:19 145:2 142:20 148:22 149:12 149:13 156:24 160:11 161:25 162:15 162:16 164:16 165:18 169: 171:19 181:3 182:3 182:13 182:14 182:15 184:16 185:6 192:12 193:6 202:7 202:8 204:14 208:4 210:5 219:9 220:13 223:19

**theme(2)** 17:19 83:19
**themes(2)** 83:8 206:22
**themselves(6)** 41:16 42:9 152:19 159:21 175:2 213:23

**then(71)** 16:19 20:20 21:18 24:17 30:9 33:15 38:18 40:13 43:12 47:17 51:16 52:10 52:25 53:7 56:14 57:3 57:20 58:22 60:17 62:12 68:1 69:18 76:3 79:8 84:8 85:20 85:21 85:21 85:22 90:23 93:24 102:10 106:4 108:18 122:25 134:12 134:1 134:22 146:4 147:13 148:9 148:16 150:4 151:24 152:21 152:22 158:13 158:24 159:16 160:9 172:14 177:14 184:10 186:2 176:10 196:20 197:11 198:17 199:5 199:13 199:23 203:13 203:11 203:12 206:2 207:18 208:9 208:12 210:19 213:14 221:6

**then-ceo(1)** 108:8
**theoretically(1)** 97:1
**theory(2)** 137:9 191:12

**there(185)** 21:21 22:18 23:17 23:18 24:5 24:18 26:5 26:13 26:22 27:14 28:9 28:19 29:5 29:8 29:19 30:23 31:12 31:24 32:13 32:14 35:11 40:3 40:4 41:7 42:7 45:13 45:17 47:4 48:12 50:24 51:4 51:6 51:7 51:16 51:18 52:19 52:21 53:23 54:8 54:15 55:1 55:3 56:7 56:8 56:19 56:22 56:24 56:25 57:16 58:17 60:7 61:9 61:13 62:7 65:12 66:4 67:3 67:6 67:11 67:13 70:15 71:3 71:3 74:21 75:10 75:12 76:5 78:3 78:7 78:16 79:17 80:5 80:19 82:2 83:7 85:9 87:8 88:20 94:5 97:15 97:24 106:7 109:3 115:8 116:13 121:14 125:13 128:18 129:6 129:6 130:24 133:1 133:7 133:18 137:13 137:20 138:3 138:5 138:13 138:19 138:22 139:5 139:8 139:17 139:19 140:5 140:15 140:20 141:9 142:4 142:19 142:20 144:1 144:4 144:7 144:11 145:1 146:8 148:7 148:8 152:2 152:6 152:15 153:5 154:25 156:24 156:24 157:17 159:5 162:1 162:16 162:20 165:13 167:18 168:21 171:6 171:9 171:19 174:6 176:23 181:7 182:11 182:13 183:15 183:23 184:23 185:20 189:8 190:9 192:25 194:7 195:7 195:14 196:7 196:19 199:14 201:8 202:12 202:23 203:7 203:9 203:13 203:17 204:23 206:22 207:9 208:21 211:3 212:16 213:9 214:1 216:21 216:22 216:23 217:12 218:2 219:3 220:9 222:8 223:18

**there's(56)** 19:10 19:19 28:22 28:22 28:24 30:21 32:24 33:13 35:7 42:15 43:12 44:18 46:11 46:16 53:17 54:19 55:17 56:9 56:9 58:24 59:1 59:15 60:7 60:11 61:5 61:9 61:21 62:4 65:12 70:14 71:5 71:8 74:16 74:20 75:14 75:19 76:17 77:14 78:14 79:20 81:12 81:14 133:2 140:22 171:7 178:17 182:17 184:9 184:22 189:4 193:12 200:13 200:16 200:22 200:24 201:13

**thereafter(1)** 16:14
**thereby(1)** 23:1
**therefore(9)** 28:3 28:7 29:16 31:14 33:16 37:11 129:2 129:14 157:22

**therein(2)** 100:1 193:7
**there's(1)** 12:40
**there's(43)** 85:15 86:9 87:7 87:20 88:16 88:16 92:6 93:18 97:19 98:3 98:4 98:5 109:16 109:24 111:4 116:25 119:6 119:18 119:19 120:2 121:23 122:3 123:12 123:12 125:11 125:20 125:20 126:11 126:19 127: 127:23 130:20 131:11 131:11 131:12 207:6 208:10 208:14 213:19 215:8 216:10 216:20 222:11

**these(99)** 15:22 17:5 21:24 22:22 23:4 23:12 23:17 24:19 24:25 25:25 27:5 28:1 28:4 30:20 34:14 35:21 36:5 38:25 39:10 42:22 48:23 49:6 53:25 59:22 60:15 66:4 66:8 70:13 70:21 72:9 72:19 72:21 74:5 75:14 76:15 80:18 81:5 81:8 82:24 93:5 93:7 95:20 101:20 106:2 112:12 116:1 122:1 126:17 126:19 128:5 133:17 134:21 134:22 135:15 137:12 137:14 138:22 138:23 139:25 139:25 140:4 140:9 149:20 165:17 165:23 166:6 166:19 167:25 168:2 170:18 171:12 171:15 171:17 172:10 178:15 178:20 178:23 180:16 181:15 182: 182:9 182:11 185:13 187:23 192:9 194:4 194:12 196:5 196:14 196:18 196:21 200:5 200:8 201:12 201:16 203:8 203:10 208:8 212:22

**they(301)** 16:11 19:18 30:17 30:22 31:12 32:16 32:18 32:20 32:23 33:9 33:12 34:10 34:10 34:15 35:15 35:16 35:17 36:18 37:5 37:5 38:16 38:17 39:17 39:23 39:24 40:9 40:23 41:13 41:24 41:25 43:23 44:10 45:7 46:11 51:8 52:13 52:22 52:24 53:2 53:5 53:7 53:8 53:8 53:10 54:14 57:12 59:25 60:2 60:8 61:20 61:23 62:19 63:24 64:2 64:16 64:17 64:21 64:24 65:2 65:2 65:3 65:10 65:22 65:22 66:1 66:8 66:23 68:8 68:9 68:10 68:13 68:13 68:14 70:10 71:15 72:11 74:12 74:13 74:13 74:14 74:19 74:20 74:23 75:17 75:17 76:13 76:14 76:15 76:20 77:4 77:5 77:25 78:10 78:19 80:10 80:11 80:12 80:13 80:18 81:1 81:7 81:18 81:23 82:1 83:15 85:13 86:8 88:13 90:2 90:4 90:25 92:10 92:11 93:18 96:9 96:11 99:24 100:24 100:24 101:8 101:10 101:10 101:16 101:19 102:8 102:11 102:25 103:25 105:25 107:15 107:19 110:6 110:6 110:10 110:12 110:13 111:21 112:20 116:2 116:2 119:10 119:11 119:13 119:15 125:6 125:25 127:14 130:15 131:16 131:17 133:8 133:4 133:7 133:9 133:12 133:15 133:19 133:25 134:10 134:14 134:15 134:16 134:19 134:22 134:24 135:12 135:16 135:18 135:25 136:9 137:5 137:8 137:9 137:18 140:2 140:2 141:1 141:1 141:2 141:4 141:7 142:17 144:25 145:18 146:15 146:16 147:17 148:20 148:21 148:23 149:10 149:12 149:15 149:18 149:19 150:2 150:7 151:7 151:12 151:20 152:13 152:20 152:21 154:16 156:14 156:17 156:18 157:15 157:18 157:21 158:3 158:8 159:2 159:3 159:10 159:16 159:21 159:23 160:1 160:2 160:14 160:16 160:21 161:23 161:24 161:25 161:25 162:7 163:7 165:7 165:15 165:19 165:19 165:20 168:21 169:11 170:18 172:18 174:10 175:2 177:11 178:9 180:4 181:15 181:15 182:6 182:14 182:22 183:1 183:15 185:5 185:5 185:6 185:6 187:11 189:12 189:13 189:14 192:7 192:8 192:8 192:10 192:11 192:15 192:16 192:19 193:5 194:20 194:23 194:24 194:25 195:1 195:2 195:3 195:3 195:4 195:5 195:5 195:12 196:1 196:3 196:17 196:18 196:21 198:15 201:2 201:5 201:9 201:10 201:17 202:1 202:18 202:19 202:25 204:11 204:12 204:24 205:24 205:24 205:24 205:25

**they(28)** 206:2 206:3 206:20 207:7 207:8 207:10 207:12 207:17 207:21 207:25 208:5 208:24 209:9 210:7 210:17 210:9 210:11 210:16 210:17 210:17 210:19 213:9 213:10 213:22 213:22 217:23 218:10 221:25

**they'd(2)** 66:12 77:20
**they'll(2)** 47:3 67:19
**they're(47)** 18:25 19:18 31:12 32:12 32:18 33:11 33:17 47:5 47:12 47:14 53:10 59:25 60:1 60:4 60:5 60:9 60:10 62:18 65:25 67:18 68:12 72:9 74:17 77:8 82:4 135:16 140:11 140:12 147:10 149:4 149:7 154:13 155:8 155:9 164:3 165:9 165:18 184:15 187:22 192:14 192:17 195:12 196:10 196:16 200:6 202:13 203:18

**they've(6)** 62:14 65:3 66:2 78:2 200:23 202:11

**they're(17)** 88:15 88:18 89:15 89:18 112:14 116:3 122:6 122:13 127:22 206:4 206:5 207:12 207:22 208:18 208:23 208:24 220:11
**they've(1)** 204:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**thing**(36) 26:4 26:13 43:9 51:16 51:18 55:14 56:15 62:4 64:4 66:15 76:12 76:16 81:22 86:2 92:13 107:18 121:10 127:8 129:22 130:5 145:25 165:21 182:17 183:1 189:1 193:7 195:20 206:5 206:6 207:5 208:10 212:3 212:18 213:16 219:17 222:23

**things**(27) 16:24 17:1 34:13 37:5 40:4 44:18 46:15 49:10 49:13 65:13 66:16 87:4 147:10 147:18 159:5 160:2 162:19 166:13 166:14 172:11 194:8 197:3 197:6 207:9 212:19 219:4 219:25

**think**(217) 15:11 18:6 18:25 19:9 20:21 22:25 23:20 24:12 25:20 26:1 27:9 27:14 29:4 39:9 39:20 39:24 40:4 41:4 41:19 42:4 44:18 46:16 46:24 47:11 47:12 48:9 49:16 49:16 49:17 49:18 50:5 50:17 51:3 51:3 52:6 53:19 54:2 54:6 56:9 59:5 59:7 59:11 59:17 60:12 60:13 60:19 61:13 62:22 65:11 66:12 66:13 66:16 67:3 68:3 71:20 75:1 77:1 82:9 83:8 83:18 83:24 84:9 86:2 86:5 86:9 86:16 87:13 87:18 88:12 89:7 89:11 89:23 89:24 89:25 91:24 92:6 92:9 92:11 92:20 97:23 99:20 101:16 103:5 104:12 110:3 112:4 113:17 114:13 114:21 115:4 115:11 115:18 119:22 122:9 129:22 135:13 135:15 135:16 135:21 136:7 137:2 138:20 140:7 140:21 141:10 143:4 144:10 144:20 144:25 145:10 145:13 146:10 147:5 147:11 147:19 147:19 148:9 149:14 150:9 150:10 150:14 150:17 151:5 151:8 152:8 152:20 154:12 154:17 154:18 154:25 155:4 155:23 156:4 156:7 157:2 157:9 157:23 158:1 158:4 158:7 158:11 158:22 160:18 160:22 160:25 161:20 161:21 162:9 163:4 163:7 164:14 164:15 165:19 166:7 166:8 166:10 166:22 167:4 167:14 168:12 168:15 168:17 168:23 174:13 174:25 176:14 178:16 180:4 180:1 180:20 180:23 181:6 183:22 184:12 184:22 185:3 186:8 186:16 186:18 190:1 193:3 195:11 197:21 197:22 198:4 200:23 202:2 202:9 202:10 203:6 203:15 204:3 204:13 205:17 206:17 207:13 207:14 208:1 208:3 208:3 208:16 212:9 212:9 212:11 212:20 213:2 213:19 215:6 215:8 215:22 216:20 218:10 218:15 220:7 221:7 222:17 223:5

**thinking**(1) 59:21
**thinks**(6) 60:15 62:21 124:4 196:25 197:4 197:11

**third**(30) 12:38 28:13 50:4 71:25 83:19 104:22 104:24 110:24 111:1 112:2 113:19 114:4 114:17 114:17 119:4 139:16 144:1 159:18 175:17 182:1 182:2 190:22 203:13 204:11 213:12 213:25 214:8 214:10 218:1 221:5

**third-party**(2) 112:1 112:14

**this**(301) 17:10 17:12 17:19 18:2 18:6 18:7 18:11 19:1 22:3 22:14 22:23 23:13 23:21 24:4 24:10 24:20 24:23 25:7 25:11 25:14 25:15 26:2 27:25 28:21 29:4 30:7 31:18 32:17 33:8 33:25 34:25 35:2 35:15 35:22 35:25 36:1 36:14 36:20 37:13 39:8 39:9 40:15 40:16 41:5 41:15 42:22 43:1 45:14 45:21 46:24 47:8 47:18 48:2 48:7 48:11 48:13 48:14 48:21 49:1 50:1 50:3 50:3 50:4 50:17 51:2 51:11 51:22 53:12 53:17 53:18 53:19 53:24 54:1 54:11 54:12 55:12 56:8 57:9 57:13 58:7 59:6 59:16 59:18 60:14 60:22 61:9 61:11 61:20 62:1 62:19 62:23 63:23 64:20 64:25 65:22 67:11 67:17 68:5 68:10 69:20 72:6 72:15 73:12 74:2 74:3 74:11 74:24 75:21 76:5 76:20 77:4 77:8 77:10 81:15 82:11 82:14 83:1 83:3 83:10 83:19 85:9 86:3 86:10 86:13 87:3 87:15 87:19 87:21 88:1 88:7 88:22 89:23 91:1 91:4 91:7 91:21 93:8 93:13 94:8 94:25 95:3 95:6 95:8 95:14 95:23 96:8 96:10 96:11 96:24 97:7 97:21 98:9 98:24 99:6 99:10 99:16 99:17 100:6 100:22 101:2 101:11 101:17 101:25 102:7 102:19 103:5 103:18 103:21 104:10 104:12 104:2 105:11 105:12 105:13 105:24 106:9 106:10 106:24 106:24 107:9 108:2 108:8 108:11 109:12 109:15 109:16 109:18 109:19 110:18 111:7 111:12 113:1 114:5 114:14 114:23 115:4 115:22 116:19 117:3 117:17 117:19 119:2 119:13 119:19 120:7 120:7 120:14 120:23 121:12 121:19 121:22 122:8 122:23 123:21 124:1 124:2 124:21 125:3 125:16 125:22 126:2 126:3 126:8 126:13 126:15 126:16 126:18 127:6 128:1 128:5 128:9 128:15 129:13 129:21 130:6 131:15 131:18 132:9 132:18 133:2 133:22 134:10 134:20 134:25 135:6 135:11 135:14 135:14 137:2 137:25 138:1 140:8 140:22 143:7 143:10 144:6 144:7 144:18 145:1 146:12 147:7 147:8 148:5 148:22 149:6 149:18 150:6 151:8 151:20 153:7 154:1 154:2 154:5 154:13 155:16 155:20 156:2 156:4 157:7 157:9 157:24 157:25 158:3 158:8 158:21 159:14 159:20 160:17 161:1 162:9 162:19 163:8 164:6 164:16 165:6 165:7

**this**(95) 165:23 165:24 166:16 166:18 168:10 168:14 168:16 169:4 170:24 173:2 174:6 174:8 174:24 175:17 175:25 176:1 176:23 177:18 177:18 178:3 178:7 179:5 179:14 179:17 179:20 180:20 182:2 182:9 182:10 183:3 183:8 183:13 183:17 183:13 185:9 186:7 186:19 188:11 189:9 189:15 189:16 189:18 190:21 191:14 194:12 194:25 195:6 195:14 195:20 195:2 196:16 197:9 197:13 198:11 198:18 198:19 198:20 199:6 200:2 200:10 200:10 201:14 201:16 201:20 203:11 203:16 204:2 204:19 204:24 205:5 205:15 205:16 206:3 206:12 206:16 206:16 207:4 207:10 207:25 208:19 209:7 211:1 213:15 214:18 216:3 217:6 217:12 218:20 219:9 219:12 223:12 223:25

**thomas**(5) 3:20 5:23 108:6 117:16 117:20
**thornburg**(1) 5:10
**thorough**(4) 18:17 75:16 185:11 197:16
**thoroughly**(2) 28:13 37:19

**those**(108) 16:21 18:11 18:24 19:14 23:4 25:3 25:24 26:6 26:8 26:11 28:6 29:2 29:3 31:1 31:15 31:18 32:14 32:25 32:25 36:3 38:9 41:13 43:20 44:20 49:13 51:7 66:6 66:7 67:1 67:3 71:14 71:24 76:2 76:3 78:2 79:9 81:13 81:20 100:21 102:8 103:23 104:19 105:17 108:4 108:22 110:9 111:15 111:22 111:25 113:13 113:22 114:14 115:9 115:11 115:12 115:13 115:1 118:3 119:1 128:12 128:22 130:13 133:2 135:8 135:10 135:11 137:20 140:16 141:1 144:11 147:1 150:10 152:11 152:16 157:6 160:2 162:19 162:23 163:1 163:7 163:12 163:13 173:8 174:12 175:11 181:3 181:4 182:22 185:24 187:6 189:4 190:8 191:19 192:2 197:24 198:3 201:7 202:14 205:2 209:20 213:14 214:10 214:15 215:23 216:11 219:25 221:10 221:25

**though**(11) 21:8 27:21 81:8 81:14 108:15 123:4 137:16 162:10 163:6 168:5 177:1

**thought**(27) 15:9 38:11 44:12 44:14 48:13 48:23 54:1 63:16 90:23 91:12 91:19 91:22 133:3 133:12 140:19 158:10 165:18 177:11 181:11 188:13 188:14 188:16 189:7 190:8 191:3 192:11 192:24

**three**(25) 15:20 15:23 20:2 28:19 37:10 41:19 42:7 76:2 76:3 83:7 107:7 107:15 115:10 122:2 139:19 140:5 158:12 175:11 200:24 204:5 211:12 211:15 215:5 220:2 222:15
**three-minute**(1) 211:10
**three-percent**(1) 107:5
**through**(34) 18:13 21:19 24:3 25:6 27:20 57:14 60:17 60:18 60:22 80:11 83:8 83:9 90:8 91:25 102:2 102:2 102:15 107:8 125:3 125:15 126:25 128:1 132:9 144:14 148:4 153:14 166:5 166:11 166:20 182:3 198:11 199:3 209:25 214:7 216:1

**throughout**(5) 17:20 44:12 50:1 104:12 185:13

**throwaway**(1) 184:5
**throwing**(2) 111:6 127:3
**thrust**(1) 194:21
**tick**(2) 207:1 207:5
**tie**(2) 89:13 120:12
**ties**(1) 148:3
**tightly**(2) 48:3 48:14
**tim**(1) 105:11
**time**(93) 16:6 16:14 36:25 37:18 44:23 45:2 47:25 49:20 51:20 52:7 52:9 52:20 61:20 64:20 66:3 66:16 68:20 68:21 69:4 69:21 70:19 70:20 74:25 80:10 86:8 90:1 94:25 95:2 97:7 97:19 98:11 98:12 98:15 98:24 100:2 100:3 101:2 101:10 104:10 104:13 105:12 112:2 115:14 115:1 117:17 120:1 121:19 123:15 126:6 126:14 126:25 130:3 130:4 131:2 131:4 132:12 136:20 148:4 152:3 153:5 168:15 168:17 166:9 169:7 169:14 174:8 178:23 179:3 179:23 180:4 182:3 185:19 187:12 191:24 200:20 201:20 201:22 204:3 214:2 218:3 218:8 221:24 222:16 223:14

**timeframe**(1) 82:8
**times**(21) 21:16 37:10 39:4 51:22 67:22 86:15 96:18 96:20 96:25 100:6 100:11 102:22 118:13 128:3 129:12 144:24 146:1 146:15 147:14 198:16 220:2
**timing**(1) 86:19
**timothy**(1) 12:26
**tina**(1) 12:35
**title**(1) 54:19
**titles**(1) 206:20

**today**(16) 30:19 44:4 44:20 46:23 51:14 52:6 70:19 84:12 85:17 165:18 170:2 173:9 189:11 218:18 223:3 223:23

**together**(13) 15:19 66:9 66:11 67:4 79:4 91:1 120:13 141:1 141:2 146:22 160:2 161:19 163:23

**told**(19) 30:18 33:21 38:17 53:16 64:10 74:19 88:1 88:3 88:4 88:5 88:6 140:19 145:22 154:19 185:11 188:12 193:1 193:17 217:21

**tomorrow**(4) 47:4 222:23 222:25 223:14
**tomorrow's**(1) 221:10
**tonight**(1) 85:6
**too**(14) 44:24 53:11 54:2 64:25 67:19 78:9 112:13 154:10 160:12 177:3 183:10 184:16 208:13 215:2

**took**(18) 37:12 76:3 81:18 90:25 99:13 106:14 106:15 132:8 137:16 162:14 168:18 168:19 169:11 189:24 190:13 194:16 219:9 219:20

**top**(16) 73:10 74:6 77:4 77:8 77:10 77:11 77:12 99:3 102:16 111:18 115:10 148:18 161:8 161:12 200:16 218:8

**topic**(4) 50:17 62:19 160:9 217:12
**topics**(3) 144:18 198:9 216:16
**torch**(1) 147:3
**torres**(2) 4:39 9:35
**total**(10) 16:8 22:17 84:8 89:19 101:14 122:8 160:19 176:5 180:6 192:15
**totality**(1) 114:11
**totally**(2) 46:4 168:18
**touch**(8) 37:2 39:10 88:22 185:16 188:9 191:1 191:25 222:22

**touched**(1) 144:6
**touching**(1) 203:24
**toussi**(1) 13:26
**towards**(2) 73:10 129:25
**traci**(1) 224:11
**track**(1) 68:20
**tracks**(1) 111:17
**trade**(1) 129:1
**trades**(1) 54:6
**trading**(1) 204:24
**traditional**(5) 35:24 100:18 191:16 191:19 191:23

**trait**(1) 145:4
**transaction**(55) 45:12 47:1 47:5 47:21 47:24 48:3 48:14 49:7 49:8 53:18 60:3 86:4 86:10 91:1 91:5 94:8 94:25 95:4 95:8 96:25 100:1 105:12 110:20 112:11 114:12 114:19 114:25 115:5 115:13 115:16 115:17 117:18 120:18 132:10 133:2 133:4 133:6 133:9 133:11 134:9 134:20 139:15 139:21 139:24 141:1 141:4 141:5 141:7 146:19 147:1 147:24 148:15 149:15 150:25 194:11

**transactions**(11) 19:7 48:4 48:24 49:7 49:10 53:18 53:22 54:14 54:24 81:7 132:17
**transaction"**(1) 114:8
**transcriber**(1) 224:11
**transcript**(5) 1:17 1:53 164:12 218:24
**transcription**(2) 1:46 1:53
**transcripts**(1) 162:14

| Word | Page:Line |
|---|---|
| **transfer**(35) | 20:1 21:20 47:9 60:4 60:7 61:15 61:22 62:3 62:10 67:18 67:25 93:1 103:6 105:4 128:14 132:22 137:9 139:9 139:15 139:21 140:13 142:10 142:21 142:24 161:6 161:18 164:1 183:7 207:16 207:17 207:18 207:23 208:11 209:3 217:7 |
| **transfers**(3) | 45:16 137:7 170:12 |
| **transpired**(1) | 169:7 |
| **transposed**(1) | 23:5 |
| **trb**(1) | 202:22 |
| **treasurer**(3) | 106:4 106:10 107:12 |
| **treat**(1) | 63:10 |
| **treatises**(1) | 116:11 |
| **treatment**(3) | 158:4 158:5 193:6 |
| **treats**(1) | 200:13 |
| **tree**(2) | 38:2 161:5 |
| **trial**(47) | 17:24 18:19 30:19 35:3 37:13 37:19 39:5 39:11 39:21 44:12 73:14 86:4 86:4 87:2 87:13 87:15 88:10 96:2 98:6 101:16 104:19 107:17 115:19 132:16 136:12 138:24 144:3 146:11 148:2 148:7 148:10 148:22 149:1 164:11 165:24 166:1 166:22 167:1 167:4 167:22 168:5 171:14 173:9 176:18 177:19 218:17 218:18 |
| **tribune**(78) | 1:8 1:38 7:4 7:35 20:15 20:19 22:1 29:9 30:2 31:17 48:6 54:23 55:21 56:20 56:22 57:5 58:12 60:24 66:19 80:25 81:12 86:6 86:16 94:16 97:16 98:22 98:25 99:5 99:9 99:16 99:20 99:24 100:8 101:23 102:3 105:13 105:15 105:18 106:4 106:7 106:10 106:12 107:14 109:1 109:2 109:9 109:23 111:11 111:23 116:8 122:9 123:17 128:3 129:5 131:1 131:14 133:24 141:22 141:25 146:21 149:19 170:2 170:13 170:17 170:25 171:2 171:9 171:14 172:6 172:7 172:9 172:12 172:14 178:20 188:17 194:18 199:9 |
| **tribune's**(8) | 34:17 34:22 35:4 53:2 170:6 170:23 171:19 199:12 |
| **tribune's**(18) | 98:23 99:12 99:18 100:6 100:22 100:23 101:3 101:17 102:13 102:16 106:1 107:2 107:20 108:3 108:8 120:24 125:24 128:19 |
| **tricadia**(2) | 10:28 10:28 |
| **trick**(1) | 166:23 |
| **tried**(3) | 55:11 72:25 205:24 |
| **tries**(1) | 54:4 |
| **triggered**(1) | 172:10 |
| **trouble**(1) | 35:19 |
| **true**(10) | 71:16 75:19 80:4 132:21 158:24 176:16 188:22 192:18 201:24 210:6 |
| **truly**(1) | 18:21 |
| **trust**(16) | 4:4 9:35 12:22 12:43 41:7 67:14 72:13 73:6 73:12 99:15 99:23 159:1 175:18 177:6 177:7 177:9 |
| **trustee**(4) | 5:34 5:34 5:34 36:16 219:1 |
| **trusts**(3) | 174:4 174:4 203:10 |
| **truth**(1) | 133:1 |
| **try**(14) | 33:3 40:5 44:20 44:22 45:6 55:13 59:20 90:10 155:2 160:16 179:3 179:22 202:21 219:15 |
| **tryer**(3) | 59:5 59:20 62:23 |
| **tryers**(1) | 59:1 |
| **trying**(18) | 24:10 29:23 52:21 63:5 68:5 68:12 73:3 78:2 119:17 124:12 144:25 147:15 147:16 152:2 190:18 190:21 196:11 201:15 |
| **tuliano**(12) | 102:7 102:20 111:10 111:10 111:20 112:6 113:10 116:6 116:18 121:8 129:13 129:16 |

| Word | Page:Line |
|---|---|
| **tuliano's**(13) | 95:7 98:25 111:17 112:13 113:25 115:20 115:25 117:4 119:3 120:5 121:11 129:9 130:25 |
| **tulliano**(7) | 53:23 54:4 54:4 55:1 56:16 56:16 57:4 |
| **tulliano's**(4) | 32:2 32:5 55:10 56:11 |
| **turn**(22) | 65:14 85:20 93:22 104:16 110:22 112:15 113:24 123:6 135:19 148:16 158:2 160:9 163:6 167:25 169:3 187:3 187:13 206:18 214:18 216:13 219:5 220:4 |
| **turned**(2) | 106:20 198:18 |
| **turning**(2) | 173:23 177:12 |
| **turns**(6) | 17:2 17:10 104:1 151:4 208:5 209:4 |
| **twa**(2) | 119:4 119:23 |
| **two**(175) | 16:9 17:13 19:7 19:9 19:10 19:13 19:15 20:6 20:10 21:20 21:22 21:24 22:12 22:10 22:12 23:16 24:14 24:15 24:16 25:23 25:24 26:9 26:11 26:18 26:25 26:25 27:1 27:10 29:5 29:7 31:14 31:20 32:19 34:2 34:9 34:15 34:21 35:16 36:15 36:22 37:5 38:21 39:15 39:25 40:25 45:18 45:25 47:19 48:23 49:6 49:7 54:23 55:8 55:17 58:7 58:9 58:13 58:24 58:24 58:25 59:8 59:24 60:8 60:12 60:15 60:18 61:13 63:2 63:2 66:2 66:15 67:1 67:4 70:2 71:1 71:4 71:17 72:24 72:24 80:8 90:19 93:24 94:10 94:12 94:15 94:20 95:20 96:10 106:7 106:11 106:12 106:21 107:13 114:2 114:7 114:18 115:1 115:2 115:9 115:17 119:12 121:23 124:19 134:6 134:25 135:19 135:21 135:23 135:23 136:2 136:6 136:7 136:11 136:19 136:23 136:23 137:7 137:24 138:3 138:5 138:17 138:18 140:23 141:1 141:3 141:5 141:7 141:18 143:6 143:8 143:14 143:20 144:6 144:10 144:13 147:9 149:22 151:11 157:10 158:1 167:25 169:13 169:13 172:10 175:4 186:20 188:19 191:1 193:23 197:6 197:22 199:22 200:22 201:8 201:22 202:8 203:2 204:7 204:15 204:16 211:21 212:13 214:1 214:24 216:1 216:22 217:14 217:18 217:2 218:13 220:9 220:18 220:20 222:15 |
| **two-hour**(2) | 160:15 167:23 |
| **twoomey**(1) | 7:7 |
| **two'**(1) | 94:22 |
| **type**(4) | 125:14 134:2 213:16 219:12 |
| **u.s**(2) | 5:34 5:36 |
| **u.s.c**(1) | 135:9 |
| **ultimate**(4) | 18:7 165:12 174:21 195:15 |
| **ultimately**(8) | 27:22 110:13 129:11 172:22 178:25 182:23 203:9 213:7 |
| **unable**(1) | 202:15 |
| **unacceptable**(1) | 46:4 |
| **unanimous**(1) | 116:16 |
| **uncertain**(4) | 18:8 40:18 46:21 46:21 |
| **uncertainly**(2) | 26:12 48:12 |
| **uncertainties**(1) | 45:22 |
| **uncomfortable**(1) | 125:16 |
| **uncommon**(1) | 145:3 |
| **unconfirmable**(2) | 212:12 213:8 |
| **uncontested**(1) | 10:25 |
| **uncontradicted**(1) | 91:16 |
| **uncontroverted**(2) | 49:14 104:17 125:21 131:23 |

| Word | Page:Line |
|---|---|
| **under**(40) | 23:21 26:23 27:4 28:20 29:11 32:5 35:18 100:7 103:15 122:1 122:11 126:17 131:15 139:12 140:16 142:13 157:13 158:16 158:25 161:15 170:7 170:1 170:18 171:5 173:6 174:23 175:4 175:25 191:5 195:16 201:19 203:8 209:20 210:13 210:13 212:22 214:10 214:17 217:1 220:2 |
| **undercapitalized**(1) | 58:14 |
| **undercut**(1) | 196:14 |
| **underestimating**(1) | 153:15 |
| **underlined**(1) | 204:5 |
| **underlying**(2) | 150:8 188:20 |
| **underneath**(2) | 54:20 89:21 |
| **underperformance**(2) | 99:11 99:18 |
| **underperformed**(1) | 102:3 |
| **understand**(9) | 24:10 24:13 38:10 105:19 128:4 140:7 199:18 204:23 204:23 |
| **understanding**(4) | 69:23 155:1 167:17 167:23 |
| **understands**(1) | 166:11 |
| **understated**(1) | 53:25 |
| **understood**(6) | 48:12 95:1 145:18 154:24 155:25 212:24 |
| **undertake**(1) | 18:22 215:21 |
| **undertook**(1) | 18:17 |
| **undervalued**(1) | 176:3 |
| **underway**(1) | 199:13 |
| **underwrite**(1) | 150:24 |
| **underwritten**(1) | 150:24 |
| **undo**(1) | 139:14 |
| **uneasy**(1) | 15:17 |
| **unencumbered**(1) | 60:18 |
| **unequivocal**(1) | 182:10 |
| **unequivocally**(2) | 100:17 124:21 |
| **unfairness**(1) | 139:6 |
| **unfamiliar**(1) | 74:23 |
| **unflattering**(1) | 135:3 |
| **unfortunately**(1) | 151:5 |
| **unfounded**(1) | 222:1 |
| **unguarded**(1) | 91:18 |
| **uniformly**(1) | 127:24 |
| **uninterrupted**(1) | 95:8 |
| **unique**(3) | 117:22 180:25 194:18 |
| **united**(2) | 1:1 1:19 |
| **universally**(1) | 205:11 |
| **universe**(4) | 93:9 93:10 158:20 164:23 |
| **unjust**(1) | 137:10 |
| **unknown**(3) | 169:6 169:13 169:23 |
| **unless**(8) | 15:8 19:19 20:5 82:15 132:1 169:3 193:23 197:24 |
| **unlike**(2) | 140:14 192:20 |
| **unlikely**(11) | 20:5 20:9 20:19 22:1 30:7 31:17 31:21 40:23 71:21 141:19 167:16 |
| **unprecedented**(1) | 132:17 |
| **unqualified**(1) | 199:24 |
| **unrealistic**(5) | 103:16 104:20 105:18 110:10 110:12 |
| **unreasonable**(15) | 17:25 37:11 37:16 77:21 77:22 78:5 101:18 101:21 103:1 103:24 110:6 113:22 186:4 186:13 215:24 |
| **unreasonably**(3) | 132:18 161:15 199:9 |
| **unreliability**(1) | 168:9 |
| **unreliable**(3) | 39:1 98:19 186:12 |
| **unsecured**(16) | 3:11 6:10 15:7 19:16 25:10 25:17 26:18 26:19 27:12 41:23 90:1 148:24 158:14 160:7 178:13 216:24 |
| **unsecureds**(1) | 90:3 |
| **unsurprisingly**(1) | 18:8 |

| Word | Page:Line |
|---|---|
| **until**(11) | 43:23 51:19 86:20 95:18 105:23 110:14 110:16 119:12 127:23 172:10 204:15 |
| **update**(5) | 108:14 110:13 110:15 110:16 218:7 |
| **updated**(3) | 108:20 109:2 109:9 |
| **updates**(1) | 130:9 |
| **uphill**(2) | 191:24 196:1 |
| **upon**(19) | 47:1 103:17 103:20 106:15 110:5 110:19 113:23 121:13 123:22 131:21 134:5 175:24 176:8 176:11 188:7 190:25 191:9 215:6 218:10 |
| **upset**(1) | 182:15 |
| **upstairs**(1) | 47:3 |
| **urged**(1) | 218:21 |
| **usa**(1) | 13:29 |
| **use**(24) | 16:12 16:14 68:24 79:22 79:23 116:24 119:11 122:7 122:13 126:9 141:25 142:17 158:6 160:21 174:13 174:14 180:6 186:13 189:17 194:21 211:11 213:22 220:21 221:3 |
| **used**(19) | 16:25 21:14 33:14 46:3 54:18 71:20 84:2 84:9 111:8 111:13 119:5 119:10 119:14 119:21 120:8 122:5 143:4 158:4 191:16 |
| **uses**(4) | 50:23 77:7 138:2 174:10 |
| **using**(5) | 16:12 57:19 115:23 143:1 164:20 |
| **utilize**(2) | 73:21 150:12 |
| **utilized**(2) | 73:13 143:8 |
| **utilizing**(1) | 176:1 |
| **utter**(1) | 169:8 |
| **utterly**(1) | 97:21 |
| **vail**(1) | 8:42 |
| **valid**(9) | 63:6 63:8 63:9 63:10 63:11 65:13 77:12 131:20 174:24 |
| **validation**(2) | 146:3 146:6 |
| **valuable**(4) | 18:12 174:11 175:16 192:10 |
| **valuation**(15) | 42:21 43:4 78:8 78:8 78:25 79:7 81:19 81:25 82:2 116:3 116:11 116:14 116:14 117:1 176:2 |
| **valuations**(2) | 118:7 176:9 |
| **value**(67) | 28:11 28:16 34:17 34:22 35:4 35:7 36:7 36:13 36:21 36:22 37:21 39:2 41:14 44:15 47:24 56:11 63:3 68:3 71:11 74:21 78:4 81:13 81:16 82:10 82:23 82:23 83:6 92:8 106:8 116:12 116:23 117:1 117:2 117:9 117:22 118:3 119:5 119:11 119:14 119:22 119:22 120:11 120:15 129:11 136:10 137:25 138:3 138:8 161:14 164:13 169:2 175:20 177:6 177:9 184:6 186:21 189:25 190:23 192:13 192:13 217:3 217:15 218:3 218:20 219:4 219:13 220:2 |
| **valued**(2) | 81:24 119:1 |
| **values**(6) | 53:8 57:4 57:19 65:14 92:3 143:16 |
| **value''**(2) | 116:24 119:6 |
| **vanesco**(1) | 134:7 |
| **variety**(1) | 122:11 |
| **various**(10) | 72:21 80:12 112:1 120:12 136:17 156:4 161:11 199:12 200:8 221:5 |
| **vastly**(2) | 128:22 129:14 |
| **vendors**(1) | 83:5 |
| **ventures**(3) | 57:18 58:3 105:16 |
| **verse**(1) | 70:25 |
| **version**(1) | 75:6 |
| **versions**(1) | 80:11 |
| **versus**(5) | 89:10 166:2 181:7 201:22 205:4 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **very**(80) 15:19 17:16 18:7 18:17 20:20 24:4 25:9 25:12 27:7 30:5 30:7 30:16 31:2 41:13 43:8 44:1 46:24 48:20 49:9 50:8 50:8 50:20 50:22 51:11 51:11 54:16 59:11 60:22 65:7 72:9 78:13 82:22 85:22 88:2 88:23 88:25 88:25 94:17 95:4 99:23 101:13 110:11 111:21 121:6 121:19 121:23 123:23 125:17 127:4 127:7 128:15 131:2 135:20 137:3 144:11 146:18 157:10 157:1 161:2 162:2 162:2 162:3 169:25 170:2 181:23 182:3 183:8 184:7 184:7 191:25 193:7 196:16 204:22 205:9 206:6 207:14 209:7 215:25 219:1 220:9 | | **walker**(1) 7:30 **walrath**(1) 214:13 **want**(57) 25:15 25:16 39:8 39:20 41:25 44:24 44:25 45:8 45:18 47:17 51:1 52:10 64:2 64:21 65:2 65:3 65:3 65:20 66:14 66:17 68:14 74:18 77:5 81:11 83:2 92:13 95:5 104:21 105:10 110:22 110:23 111:9 112:15 113:24 115:20 116:5 120:6 128:8 128:25 133:9 152:18 152:21 156:15 160:14 163:15 172:18 179:3 179:4 179:12 183:16 188:9 198:10 201:16 206:18 210:1 215:25 | | **was**(110) 159:25 160:15 160:17 160:18 160:20 160:20 160:21 161:2 161:10 161:11 161:18 162:11 163:12 163:21 164:17 164:18 165:13 165:23 166:5 166:10 166:1 166:21 168:10 168:20 168:24 176:18 177:12 177:19 177:21 178:7 179:6 179:10 179:11 181:8 181:12 182:23 184:21 185:3 185:7 185:21 186:2 186:24 187:18 188:4 188:6 190:6 190:15 190:18 191:2 191:6 191:9 192:12 192:24 192:25 192:25 194:6 194:13 194:14 194:22 194:24 195:6 195:7 195:14 195:16 195:24 196:13 197:16 198:16 198:19 199:15 199:15 199:16 199:24 199:25 199:25 201:22 203:13 204: 204:10 204:10 204:11 204:24 205:17 206:3 206:23 207:11 209:10 209:11 209:1 209:18 209:23 209:24 210:1 210:8 213:5 218:7 218:17 218:19 218:20 218:24 219:1 219:4 219:12 219:23 221:21 223:5 223:6 223:8 223:12 224:2 | | **well**(104) 15:16 25:14 27:18 36:8 43:1 48:15 51:5 51:7 53:19 54:7 54:16 55:4 55:12 60:6 61:5 62:12 62:20 63:11 64:3 65:14 65:17 67:5 68:23 68:24 70:6 73:9 75:17 79:13 82:18 83:3 83:9 84:11 86:20 86:24 87:4 92:20 95:15 95:22 95:22 97:17 101:9 101:9 104:18 106:21 107:4 108:24 118:13 120:25 123:6 125:6 129:8 130:1 130:19 132:14 133:12 134:19 135:16 139:11 140:21 144:3 144:7 146:10 149:2 152:10 153:9 153:12 154:9 154:19 156:1 156:17 158:14 163:21 165:20 166:8 168:23 169:8 169:20 174:19 177:14 183:6 188:21 192:14 195:11 196:21 196:22 197:6 197:9 197:12 199:2 201:10 204:15 204:25 206:20 206:25 208:2 208:14 208:20 212:19 212:21 213:13 218:5 218:11 219:12 220:13 |
| **vfb**(1) 50:6 | | **wanted**(14) 15:9 24:13 47:7 55:18 72:18 78:6 82:23 82:24 99:24 133:17 133:19 142:16 158:1 209:11 | | | | | |
| **viable**(3) 176:16 177:12 191:8 **vibrant**(1) 128:12 **vice**(2) 108:18 117:16 **vice-chairman**(1) 124:16 **victory**(4) 40:25 41:1 | | **wants**(4) 82:22 196:25 197:1 208:2 **wardwell**(2) 2:29 8:25 **was**(301) 17:21 17:24 17:25 18:16 18:21 18:22 19:9 19:13 20:5 20:9 20:18 20:19 20:20 21:7 21:23 21:25 23:13 24:10 28:9 | | **washington**(1) 3:33 | | **wells**(3) 9:26 14:4 **went**(9) 27:19 38:6 64:25 73:8 94:19 103:14 126:18 192:22 206:2 |
| **video**(4) 100:10 100:20 117:20 177:19 **view**(21) 27:19 74:13 80:7 80:21 85:3 88:4 91:11 96:6 97:20 97:21 102:23 103:9 103:9 108:3 131:5 135:3 162:21 165:16 174:25 174:25 179:6 186:2 187:9 192:9 196:24 199:11 212:16 213:18 | | 29:9 29:13 29:19 30:2 30:5 31:13 31:16 31:17 31:21 32:3 33:14 35:8 38:1 38:2 38:16 38:16 39:13 39:13 43:21 44:9 44:15 45:16 46:2 46:6 46:14 46:18 46:20 46:22 46:25 47:5 47:10 47:19 47:19 47:21 48:2 48:4 48:12 48:14 48:14 49:9 50:19 51:16 51:20 51:21 52:1 52:7 52:9 52:15 53:6 53:11 54:15 54:25 55:1 55:1 55:3 56:14 56:24 56:25 57:3 57:10 58:1 58:9 58:14 58:17 60:3 61:10 63:23 65:2 65:10 66:4 66:22 66:23 67:8 67:10 67:11 67:13 67:16 67:25 69:3 70:25 71:19 71:20 72:18 72:20 73:9 74:5 74:20 74:23 75:4 75:10 75:21 77:22 78:22 78:25 79:8 79:14 79:1 79:16 80:9 81:19 81:22 81:25 82:1 82:2 82:7 82:11 86:4 86:6 86:7 86:10 86:10 87:3 87:14 88:2 90:24 91:1 91:8 91:11 91:17 91:20 94:15 94:16 94:16 94:21 94:21 94:25 95:4 95:13 95:22 95:22 95:2 95:25 96:3 96:17 96:21 96:25 97:7 97:13 97:24 97:25 98:11 98:12 98:22 98:24 98:25 99:3 99:4 99:9 99:12 99:23 100:2 100:11 100:14 100:18 101:2 101:7 101:9 102:23 103:16 103:24 104:4 104:4 105:12 105:23 106:12 107:10 108:12 108:15 108:18 109:6 109:10 109:14 110:17 110:2 111:11 111:23 113:11 114:23 115:15 115:16 115:16 115:16 116:24 117:16 117:18 119:14 119:17 120:18 120:23 120:23 120:24 123:3 124:5 124:6 124:16 126:6 127:5 127:5 127:6 128:10 128:14 128:17 128:18 129:16 129:19 130:19 130:11 130:11 130:24 131:1 131:14 131:20 131:24 133:4 133:7 133:22 133:22 133:2 134:4 134:12 134:13 134:23 136:23 137:1 137:20 138:12 140:20 140:20 140:24 141:3 141:11 141:14 141:16 142:9 142:15 142:20 142:21 142:25 143:4 144:1 144:3 145:1 145:15 145:18 145:18 145:24 146:2 146:4 146:8 146:12 146:13 147:6 147:20 147:21 147:22 147:23 147:25 147:25 148: 150:14 150:22 151:2 151:11 151:11 151:13 151:20 151:25 152:1 152:3 153:21 153:24 155:10 156:10 157:12 157:17 159:9 159:12 159:20 159:24 | | **wasn't**(16) 31:18 38:15 39:17 48:3 51:18 51:19 51:19 56:25 66:19 67:9 75:2 81:21 152:15 166:23 194:18 197:19 **wasn't**(2) 128:22 167:18 **water**(2) 151:2 199:19 **way**(60) 17:16 22:9 23:22 30:7 40:10 40:15 45:1 49:9 50:10 52:15 52:23 52:24 54:8 54:24 55:15 56:5 58:6 59:18 63:12 64:3 67:3 67:20 68:15 77:23 79:20 80:7 81:1 82:25 92:6 98:14 102:11 106:6 107:23 108:4 109:24 112:3 117:15 121:8 129:18 134:1 141:8 142:25 147:24 148: 152:18 154:4 155:14 160:6 164:18 180:25 185:9 194:2 197:13 197:18 200:6 209:5 209:18 210:4 210:14 216:10 **wayne**(1) 108:7 **ways**(4) 61:24 61:25 173:22 199:25 **we'd**(5) 15:9 27:6 27:7 61:13 69:4 **we'll**(6) 49:24 50:13 54:20 69:9 155:13 180:10 **we're**(16) 43:20 44:10 52:4 52:8 62:16 63:21 68:19 82:18 83:1 84:11 140:4 146:19 150:6 152:8 155:12 184:3 184:8 186:19 186:20 195:2 **we've**(17) 15:19 23:5 23:15 32:22 35:21 44:11 54:5 70:19 70:20 77:1 84:9 185:13 194:3 195:11 197:25 201:4 201:7 **weaknesses**(1) 152:14 **wear**(13) 35:13 35:22 60:23 62:25 62:25 63:5 63:8 63:10 63:24 64:10 150:9 191:5 193:23 **weather**(2) 80:3 80:3 **website**(1) 80:3 **week**(5) 46:24 101:20 109:13 147:14 **weekly**(1) 102:18 **weeks**(12) 17:13 64:24 79:4 82:12 82:13 108:23 110:1 150:21 220:18 220:20 222:6 222:15 **weigh**(3) 41:14 157:18 165:11 **weighed**(1) 166:13 **weighing**(1) 166:20 **weight**(7) 80:20 80:20 80:23 167:18 167:19 168:16 188:6 **weighted**(1) 93:17 **weil**(2) 5:4 10:20 **weiss**(2) 6:30 11:40 **weitman**(1) 7:36 | | **were**(174) 16:22 20:15 22:18 23:17 23:18 24:9 25:25 26:9 27:22 29:15 30:5 32:3 32:15 35:20 36:17 36:18 38:4 40:23 41:1 42:10 45:17 46:19 48:24 49:22 50:24 50:25 51:4 51:6 51:8 51:14 52:13 52:21 52:22 52:25 52:25 57:9 57:19 60:11 61:13 64:16 64:17 68:15 69:24 70:18 70:22 71:1 75:4 75:7 75:16 76:15 80:25 81:1 81:24 86:18 91:4 92:23 94:21 96:14 96:23 97:17 100:12 101:5 101:8 101:10 101:18 101:18 102:9 102:11 102:25 104:2 104:10 104:13 104:20 106:1 106:18 107:15 107:19 108:5 110:6 110:6 110:10 110:10 110:12 112:11 113:17 114:18 114:18 114:24 115:1 115:2 115:9 116:2 116:2 127:14 128:21 129:8 129:11 130:13 131:19 133:2 133:3 133:4 133:13 134:9 134:19 134:23 137:20 139:14 141:6 142:2 144:24 146:16 146:18 146:2 148:15 148:19 148:23 152:4 154:3 157:13 157:21 159:14 159:23 160:21 162:16 162:19 162:20 164:3 166:16 168:22 169:2 181:4 186:4 186:12 187:10 187:21 187:23 189:8 190:6 191:7 192:9 192:11 193:2 194:7 194:8 194:22 194:23 194:24 195:3 195:4 195:5 196:19 198:23 199:21 201:2 202:4 202:15 203:2 203:2 204:1 204:4 204:12 204:12 204:18 205:1 205:13 206:3 207:3 207:9 207:10 210:25 214:15 219:10 220:18 | |
| **viewed**(1) 158:10 **views**(13) 15:17 16:24 18:9 19:22 25:22 51:7 70:21 73:1 100:22 146:25 154:9 155:23 195:22 | | | | | | | |
| **vigorous**(3) 145:14 148:1 155:7 **vindicated**(1) 82:5 **violated**(1) 141:2 **violates**(1) 212:9 **violations**(3) 171:13 171:16 171:18 **virtually**(9) 89:4 102:21 134:19 136:10 138:17 150:18 158:3 166:4 189:10 | | | | | | | |
| **virtue**(1) 183:10 **virtues**(2) 173:18 174:20 **vision**(1) 210:13 **visit**(2) 150:20 198:10 **vlasic**(2) 50:5 56:7 **vlf**(1) 50:5 **volatile**(1) 82:3 **volume**(19) 23:3 23:14 49:4 54:15 117:6 129:2 185:23 186:15 187:13 187:19 188:1 188:22 188:25 189:4 199:2 199:6 204:24 216:1 216:2 | | | | | | | |
| **voluntarily**(2) 65:11 65:12 **voluntary**(2) 64:6 65:6 **vonnegut**(1) 2:35 **vora**(1) 13:30 **vote**(6) 46:7 77:16 156:3 158:21 159:23 160:5 | | | | | | | |
| **voted**(14) 41:24 42:3 42:8 77:18 77:25 156:14 156:16 156:17 156:17 156:18 156:19 156:20 156:21 157:6 158:9 **votes**(6) 41:20 41:22 42:9 157:23 158:1 192:1 **voting**(4) 42:7 42:12 42:24 170:16 **vrc**(6) 110:4 117:2 117:12 119:8 119:10 119:17 **vrc's**(2) 117:8 119:20 **w-h-e-r-e**(1) 207:6 **wait**(1) 131:10 **waiting**(4) 79:22 184:18 184:22 184:23 **waitings**(1) 80:13 **waiver**(10) 64:3 64:4 64:5 64:6 65:6 65:7 171:19 171:20 171:22 171:25 **walk**(1) 91:13 **walked**(1) 60:8 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**what**(301) 18:10 19:5 22:5 23:17 23:18 24:13 25:21 27:3 27:23 28:6 32:19 33:8 34:9 36:23 37:2 38:3 38:11 38:20 42:2 43:4 44:14 46:14 48:13 48:21 48:22 49:2 49:3 49:10 50:10 50:14 50:14 50:24 51:5 51:8 51:21 52:5 52:7 52:9 52:13 52:15 53:23 54:4 54:12 54:13 54:17 55:4 55:8 55:23 56:4 56:14 57:2 58:14 59:7 59:21 61:4 62:25 63:16 64:2 64:13 64:14 65:4 65:5 65:9 65:20 65:25 67:5 67:5 67:9 68:8 69:15 70:17 70:25 72:8 72:17 72:20 73:7 73:11 73:20 74:4 75:3 75:20 75:23 75:24 77:20 77:22 77:23 77:23 78:4 79:8 79:19 82:1 82:10 83:7 89:15 92:23 93:16 94:13 94:20 95:9 95:14 96:9 97:4 97:13 97:22 97:24 98:11 98:13 98:23 98:24 99:6 99:8 100:5 100:17 101:2 101:19 101:22 102:13 102:16 102:23 103:10 103:12 103:18 103:19 104:12 104:18 104:19 105:7 105:16 105:19 105:2 106:9 106:17 106:19 107:4 107:6 107:8 107:12 107:18 107:22 107:25 107:25 108:3 108:9 109:6 109:13 110:18 110:24 111:1 111:7 111:10 112:9 112:16 114:7 115:13 115:15 115:21 116:11 116:23 117:2 117:1 119:7 119:8 119:14 119:15 119:17 120:4 120:7 120:14 120:21 120:22 120:24 121:1 122:6 122:7 122:12 122:12 122:21 122:22 123:1 123:4 123:22 124:22 126:11 127:23 128:20 128:25 129:9 129:20 129:25 130:1 130:20 131:4 131:7 131:22 133:3 133:12 134:4 134:16 134:18 135:8 135:12 135:25 136:5 137:24 140:16 143:3 143:9 143:16 146:5 149:13 150:5 152:8 152:13 152:20 152:20 153:2 154:6 154:7 154:8 154:12 156:3 156:15 159:6 159:11 161:1 161:1 161:2 161:7 161:20 163:6 163:11 163:17 163:19 164:19 165:8 166:9 166:10 167:17 168:14 168:23 168:23 168:24 168:24 168:25 169:1 169:9 169:20 176:21 178:5 179:9 182:23 184:6 185:3 185:10 185:20 185:23 186:2 188:12 188:13 188:15 189:1 189:12 190:2 190:3 190:5 190:7 190:16 190:22 192:24 193:4 193:4 194:15 194:15 194:16 195:19 196:16 196:25 197:21 197:23 198:19 200:7 200:16 201:6 202:21 204:18 205:22 206:2 206:17 207:19 207:2 207:22 208:4 209:16 212:15 215:20 216:216:5 217:3 217:13

**what**(5) 218:9 218:18 218:19 219:10

**what's**(16) 57:3 61:5 64:9 66:17 76:6 76:7 76:8 82:4 134:7 140:7 145:6 147:15 149:1 180:3 184:18 201:11

**whatever**(5) 16:14 58:1 155:16 208:2 210:17

**whatsoever**(2) 112:20 217:17
**what's**(6) 123:6 128:23 167:16 206:16 218:1 218:17

**when**(86) 33:9 39:14 45:1 45:19 46:18 47:6 49:1 49:3 50:8 50:10 51:1 51:17 52:3 53:7 53:21 54:11 55:5 55:9 55:10 55:16 55:16 55:17 55:9 57:4 57:5 57:25 58:2 59:5 59:8 63:7 63:13 64:8 64:8 64:20 67:22 73:11 73:20 74:5 74:6 74:7 81:17 95:1 101:1 101:18 101:18 103:4 107:6 110:6 110:10 114:16 116:22 119:12 124:4 124:12 130:17 137:12 139:11 140:3 142:8 143:19 144:7 148:11 149:4 150:4 150:5 155:8 155:9 155:19 160:2 161:19 162:11 172:21 175:2 182:20 183:15 184:1 185:4 185:12 186:23 188:24 193:18 205:1 207:5 207:9 217:1 217:18

**whenever**(3) 53:2 53:9 55:13

**where**(109) 18:2 21:15 22:22 23:17 23:18 26:2 27:22 28:11 28:13 34:1 35:18 36:20 39:23 39:24 39:25 40:4 40:18 45:12 45:15 46:25 49:2 51:2 54:3 62:7 65:16 66:7 66:19 67:13 67:13 68:13 70:12 72:25 74:5 76:11 82:7 87:14 89:5 96:2 98:16 106:25 111:23 112:21 116:6 121:15 123:15 123:11 123:18 130:21 136:15 136:17 137:23 138:19 139:1 139:17 139:20 141:11 141:12 141:21 141:23 142:2 142:14 142:24 143:7 143:19 144:4 147:9 149:6 152:3 152:6 153:6 153:14 159:2 160:10 162:24 164:4 164:5 164:5 166:2 169:14 177:4 177:19 177:23 178:9 183:4 183:14 184:3 185:16 188:11 189:13 191:2 191:14 192:7 195:7 196:5 197:2 199:4 199:7 206:19 207:6 209:21 212:20 213:3 213:9 217:14 218:1 219:20 219:21 219:22

**whereupon**(1) 224:2
**whether**(55) 20:8 21:12 21:22 22:15 28:22 38:5 38:7 44:13 46:11 57:9 57:10 60:23 60:23 61:14 72:18 81:18 104:9 108:13 109:23 110:4 114:7 116:8 128:12 128:14 135:23 136:15 137:23 138:8 141:15 143:2 151:10 155:19 156:5 156:8 159:20 161:13 161:18 162:20 162:22 165:13 168:8 178:3 178:18 179:14 200:5 200:5 206:8 206:12 206:12 207:15 208:15 210:20 212:2 212:5 217:18

**which**(101) 21:10 22:4 22:11 23:3 25:5 31:19 32:21 33:7 35:19 36:19 41:8 42:2 42:16 42:21 47:21 51:10 52:2 54:20 56:11 59:17 59:18 60:10 60:21 63:5 65:19 66:11 66:18 67:12 72:2 72:10 73:22 74:3 74:12 79:24 80:14 81:15 81:23 81:23 82:3 82:1 93:14 93:18 93:21 101:5 110:20 111:19 112:21 120:17 120:23 121:10 124:4 129:1 134:12 142:19 143:6 144:19 149:25 152:16 157:11 159:4 165:10 165:11 166:2 167:1 167:3 168:25 171:12 171:23 172:4 172:25 176:2 178:18 179:13 185:19 187:7 194:4 195:20 198:15 200:2 202:4 203:13 206:6 207:1 208:15 209:9 209:23 210:1 210:14 214:14 215:6 215:15 218:3 218:5 219:10 219:13

**whichever**(3) 158:6 182:22 197:18
**while**(15) 30:5 32:2 42:2 44:11 46:2 59:18 80:17 83:19 99:9 147:23 154:11 174:23 178:13 178:23 181:7

**whistling**(1) 24:7
**white**(2) 9:26 14:4
**whittman**(4) 13:34 177:14 181:9 209:25
**who**(43) 24:12 37:22 43:21 43:23 50:22 50:24 52:22 52:24 135:4 139:16 139:20 140:1 140:25 141:17 145:8 145:15 146:18 146:22 147:21 148:15 149:8 150:3 157:4 172:8 172:20 177:17 182:4 182:5 213:21 214:21
**who's**(2) 28:13 194:10
**whole**(31) 16:23 19:16 27:12 30:12 30:20 30:21 32:10 33:22 34:22 36:17 39:6 40:7 45:19 45:10 47:18 64:13 75:5 123:17 148:7 183:8 183:11 185:12 194:21 195:10 196:7 198:10 198:21 203:15 208:12 219:18

**wholly**(1) 75:18
**whose**(3) 150:7 154:10 205:11

**why**(54) 16:1 16:17 17:6 25:19 37:1 45:14 51:1 58:14 59:10 59:13 66:10 66:10 68:9 69:17 69:20 80:13 81:17 83:2 95:3 108:2 116:18 124:13 125:22 128:19 129:12 131:18 131:19 131:20 131:23 132:9 133:1 146:8 154:12 154:17 166:24 167:8 167:1 167:17 168:17 173:19 182:14 186:12 190:19 192:2 195:2 196:2 196:2 200:24 201:17 202:16 205:7 210:5 215:3

**wide**(1) 75:12
**widely**(2) 116:3 139:10
**wild**(1) 10:25
**wilderotter**(1) 177:17
**wilderotter's**(1) 150:23
**will**(92) 15:21 16:19 17:4 17:20 18:6 35:12 36:3 37:6 37:21 40:13 43:10 44:21 45:6 46:12 54:14 58:4 59:14 62:23 65:12 70:6 71:9 83:25 84:16 85:22 85:23 88:18 92:9 93:24 94:18 95:9 95:14 96:12 97:9 98:9 105:2 121:19 122:7 124:21 126:9 132:1 144:22 147:19 155:7 156:1 161:8 169:22 169:25 170:5 170:8 170:10 170:11 170:15 170:17 170:18 170:22 170:25 171:171:4 171:6 171:18 172:5 172:13 172:17 173:6 174:8 174:11 175:23 176:4 179:22 186:16 186:17 187:2 189:18 201:11 203:1 212:4 213:6 213:10 214:14 214:21 216:3 220:19 220:25 223:20 224:1

**william**(1) 4:12
**willing**(3) 68:15 97:2 157:11
**willingness**(2) 124:1 125:2
**wilmer**(1) 10:36
**wilmington**(16) 1:12 1:35 2:9 2:26 2:44 3:15 3:39 4:4 4:14 4:36 5:13 5:25 5:38 12:43 15:1 83:9

**wilson**(1) 8:30
**win**(21) 19:15 25:24 26:14 26:25 27:1 27:7 29:12 29:17 30:14 33:22 34:15 36:15 36:23 38:7 44:10 60:1 60:4 67:18 88:11 193:21 193:22

**window**(1) 66:17
**wineman**(1) 13:40
**winner**(1) 26:1
**winners**(1) 135:15
**winning**(9) 24:16 24:17 27:15 28:7 30:9 35:16 36:6 38:5 38:8

**wired**(1) 48:3
**wires**(1) 11:7
**wisdom**(1) 131:9
**wisely**(1) 211:11

**with**(255) 15:17 16:9 16:20 17:8 17:21 18:2 18:24 20:14 20:18 21:9 23:23 24:6 25:2 26:3 26:12 26:21 28:22 29:1 29:24 32:19 33:5 33:20 34:21 35:19 37:20 38:18 38:19 38:20 40:5 40:16 41:17 42:20 43:22 43:24 46:15 47:18 48:16 48:19 48:20 49:4 50:19 50:23 52:22 54:18 54:25 55:19 55:24 56:9 56:13 57:25 59:3 59:16 60:18 60:20 61:22 62:2 62:6 62:18 63:24 63:25 64:12 66:11 66:5 66:21 69:22 70:25 72:9 72:20 73:3 74:13 74:15 74:16 74:24 75:2 75:3 75:4 75:21 75:24 76:3 76:9 76:11 77:2 77:6 77:15 77:16 78:1 79:2 79:6 79:25 81:1 81:6 86:10 90:16 91:15 94:14 94:20 94:24 100:25 101:13 101:20 103:2 104:4 105:10 108:22 110:24 111:12 111:15 112:17 113:1 113:18 116:3 116:4 116:7 116:8 116:20 119:3 120:4 120:6 121:15 124:9 124:17 125:12 125:16 125:19 125:22 126:3 126:18 127:3 128:24 128:25 129:5 129:16 129:21 131:7 131:15 132:18 133:18 133:21 135:4 135:5 136:12 138:4 138:19 139:10 141:12 142:3 145:14 146:6 146:23 147:4 147:14 149:15 150:2 150:4 150:23 152:5 153:20 155:3 155:13 155:18 156:19 158:19 159:2 159:4 159:9 159:25 160:14 161:22 162:5 165:1 165:16 165:18 165:25 167:7 168:24 169:8 170:4 170:8 170:13 171:7 173:4 174:9 177:8 178:8 179:4 179:17 179:19 179:22 180:18 181:1 181:9 181:15 182:25 183:7 183:8 183:21 185:17 185:17 185:18 186:6 188:5 188:9 188:20 190:3 191:11 191:16 192:3 192:6 193:8 194:6 194:17 194:19 195:25 196:6 196:8 196:10 196:20 197:8 197:18 198:2 199:16 200:1 200:21 202:3 202:14 203:11 203:25 205:15 205:16 205:16 205:17 208:25 209:1 209:8 209:8 210:6 210:23 211:2 213:11 214:18 215:1 216:13 217:6 217:8 217:21 220:1 220:10 220:23 221:1 221:5 221:7 221:8 221:15 221:22 223:6

**withdrawal**(1) 223:4
**within**(13) 25:15 43:1 43:17 73:9 92:12 109:23 117:21 138:20 145:12 163:12 163:14 166:24 206:24

**without**(19) 31:1 52:12 52:12 56:14 56:15 70:17 71:11 73:6 80:1 83:10 83:11 100:16 123:11 124:21 162:23 177:2 205:15 207:8 210:12

**witness**(9) 37:20 67:2 120:20 131:11 131:16 131:17 160:15 160:21 199:23
**witnesses**(4) 34:19 80:8 102:23 145:15
**woefully**(1) 92:5
**womble**(1) 5:22
**wondered**(1) 152:11
**wondering**(1) 67:16
**wong**(1) 13:44
**won't**(2) 86:20 221:24
**woods**(1) 13:17
**word**(15) 33:25 66:9 66:11 67:17 71:23 89:23 91:6 158:6 163:15 163:17 180:16 180:17 180:23 195:17 216:14

**words**(13) 15:14 97:3 107:3 118:23 126:1 133:8 160:12 178:21 187:17 189:8 207:24 210:22 212:21

**work**(11) 56:12 62:2 74:16 90:25 98:8 166:16 177:15 197:13 197:13 201:25 202:18
**working**(4) 69:23 110:13 176:25 223:19
**works**(8) 60:12 60:13 83:22 83:23 178:4 183:9 183:9 183:11

**world**(6) 52:8 154:25 162:21 163:21 164:15 165:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **worry**(2) 34:13 222:18 | | **york**(8) 2:37 3:7 3:25 4:24 4:43 5:7 5:31 96:17 | | **you're**(28) 26:5 26:17 30:19 35:1 36:7 50:16 55:13 59:9 63:9 63:10 63:11 63:14 63:20 70:15 135:7 138:7 149:11 152:17 152:22 152:23 152:24 153:7 153:7 185:14 187:14 188:24 191:13 197:10 | | **your**(262) 123:11 123:15 123:20 124:2 124:3 124:19 124:22 124:25 125:3 125:11 125:20 126:1 126:5 126:8 126:12 126:16 126:22 127:4 127:7 127:9 127:12 127:16 127:21 128:2 128:4 128:6 128:11 128:16 128:24 128:25 129:5 129:10 129:18 129:21 |
| **worse**(6) 38:8 63:19 99:5 101:11 107:11 123:17 | | | | | | 130:4 130:6 130:8 130:19 130:21 130:23 131:2 131:4 131:7 131:10 131:10 131:12 |
| **worst**(1) 96:12 | | **you**(301) 15:13 16:3 16:23 17:6 17:23 20:5 20:5 20:8 20:16 21:2 21:3 21:12 21:22 21:25 22:8 22:16 23:22 23:23 24:24 26:14 26:15 26:17 26:20 26:20 27:9 27:11 | | | | 131:17 131:18 131:19 131:22 132:6 132:8 132:15 133:13 134:3 134:8 134:18 134:22 135:3 135:6 135:11 135:12 136:3 136:17 137:1 137:4 137:12 137:18 137:22 137:25 |
| **worst-possibl**(1) 100:2 | | | | **you've**(13) 35:2 35:14 69:6 70:13 84:2 | | |
| **worth**(15) 21:6 37:10 50:10 53:11 61:7 63:2 63:3 89:14 89:15 132:19 175:5 175:25 202:13 213:3 218:7 | | 27:11 28:23 28:24 28:25 29:7 29:16 29:17 29:19 30:8 30:9 30:12 30:15 30:18 31:8 31:10 32:1 32:6 32:7 32:8 32:12 32:20 33:5 33:7 33:21 33:24 34:1 34:4 34:5 | | 84:15 149:25 176:2 176:13 191:12 196:9 196:12 197:21 | | 139:2 139:9 139:17 139:19 139:25 140:8 140:14 140:24 141:7 141:24 142:8 142:19 142:3 143:4 143:11 144:1 144:15 144:18 |
| | | 34:6 34:13 34:15 34:21 35:4 35:9 36:11 | | **young**(1) 2:4 | | 144:23 145:5 146:10 146:19 147:2 147:5 |
| **worthwhile**(1) 167:4 | | 36:20 36:21 36:22 37:12 38:6 38:7 38:7 | | | | 147:17 147:20 148:7 148:11 148:21 148:25 |
| **would**(194) 16:13 16:21 17:18 20:8 20:10 20:14 21:23 22:1 24:12 26:7 26:8 26:10 26:11 26:22 27:2 27:21 27:23 28:1 28:2 | | 38:22 38:23 39:9 39:22 40:5 40:7 40:7 40:8 40:10 41:12 41:18 41:22 42:2 43:2 43:9 43:25 44:1 46:1 46:14 46:16 47:12 | | **your**(301) 15:4 15:5 15:8 15:13 16:7 16:12 16:16 17:2 17:10 17:19 18:5 18:15 19:3 22:3 22:4 22:14 22:24 22:24 23:9 | | 149:9 149:16 149:23 150:8 150:13 151:1 151:3 151:7 151:18 152:4 152:9 153:4 153:19 154:8 154:24 155:4 155:4 155:10 |
| 29:15 29:23 30:24 31:13 32:16 32:19 35:9 35:20 36:5 40:2 40:25 41:1 41:8 41:20 | | 48:4 48:6 48:17 48:22 49:11 50:5 51:23 52:4 52:11 53:3 53:19 54:9 54:11 54:20 | | 23:15 23:20 24:3 24:7 24:19 24:22 25:11 25:20 25:25 26:4 26:15 26:20 27:3 27:17 | | 155:16 155:20 155:25 156:2 156:21 158:5 158:14 159:3 160:3 160:9 160:24 161:8 |
| 49:11 50:16 51:7 51:9 57:15 57:21 58:12 58:13 58:16 59:12 61:14 62:21 63:22 | | 54:21 55:14 55:15 60:9 60:16 61:6 62:17 63:8 63:13 63:18 63:22 64:19 64:25 68:13 | | 28:8 28:17 29:18 30:4 30:11 30:18 30:22 31:6 32:6 32:12 32:18 32:25 33:5 33:21 | | 161:19 162:8 162:24 163:1 164:9 165:6 165:22 166:19 167:21 167:24 168:8 168:10 |
| 66:24 67:23 69:25 71:17 73:17 75:23 75:24 77:22 77:23 77:25 82:11 83:7 83:25 | | 69:6 69:8 69:13 69:15 69:22 69:25 70:18 71:9 71:9 71:12 71:13 73:11 73:20 73:20 | | 33:25 34:4 34:12 34:21 35:1 35:13 35:19 36:12 36:14 36:25 37:17 38:5 38:19 38:25 | | 168:13 169:6 169:16 169:23 170:1 173:12 173:14 173:17 173:23 174:8 174:24 175:12 |
| 86:4 88:11 89:5 90:10 90:12 90:15 91:12 98:6 101:16 102:18 102:20 106:1 106:7 | | 73:21 74:5 74:7 74:7 75:3 75:15 76:11 76:12 76:22 77:6 77:14 77:21 77:22 77:22 | | 43:20 44:1 44:2 45:9 46:14 46:23 48:17 51:23 53:1 54:21 57:11 57:20 60:17 62:17 | | 175:25 176:13 176:17 176:20 178:2 178:16 179:2 179:10 179:22 179:25 180:5 |
| 106:12 107:14 107:18 109:3 111:21 111:2 112:22 112:22 113:6 113:16 113:21 | | 77:24 78:4 79:19 82:3 82:15 82:17 83:25 82:16 87:14 87:17 87:17 87:19 87:21 | | 62:17 67:11 68:16 68:21 69:13 69:15 69:24 77:15 82:14 82:19 83:3 83:24 84:7 | | 180:8 180:15 184:12 184:14 185:1 185:2 185:8 185:12 186:10 186:16 187:18 187:20 |
| 114:15 115:19 118:2 118:5 118:17 118:20 122:22 125:7 125:24 132:15 135:20 135:2 | | 86:16 87:14 87:17 87:17 87:19 87:21 89:21 89:23 90:17 91:7 91:10 92:15 94:1 | | 84:14 84:19 84:22 84:25 85:1 85:13 86:2 86:6 86:9 86:13 86:19 86:25 87:8 87:15 | | 188:21 189:9 189:20 190:2 190:11 190:16 190:20 191:1 191:5 191:10 191:19 191:23 |
| 136:6 136:10 136:13 136:22 137:18 138:5 138:6 138:15 138:16 138:19 138:23 138:2 | | 94:18 99:14 100:15 103:4 104:9 106:10 107:12 108:9 108:18 115:6 115:23 116:24 | | 87:18 88:8 88:14 89:3 89:8 89:12 89:18 90:18 89:19 90:4 90:23 91:10 92:6 92:12 | | 191:25 192:18 193:3 193:8 193:15 193:25 194:1 197:21 198:2 198:6 198:8 199:3 |
| 138:24 141:15 141:17 141:24 142:4 142:22 144:12 148:9 154:5 157:7 157:18 | | 118:17 122:7 122:13 130:3 132:8 132:9 132:9 132:10 133:20 134:24 135:8 135:15 | | 92:14 92:21 94:1 94:4 94:5 94:7 94:8 94:10 94:15 94:18 94:24 95:1 95:6 95:9 | | 201:20 202:20 203:21 203:24 206:11 210:15 210:15 211:6 211:9 211:13 212:1 |
| 158:11 159:6 162:20 162:22 163:13 163:1 163:24 164:5 164:11 164:13 165:8 166:3 | | 135:17 135:25 136:5 136:6 138:11 138:17 138:22 140:19 142:3 143:11 143:16 143:1 | | 95:13 95:14 95:21 96:1 96:5 96:7 96:9 96:16 96:19 96:25 97:6 97:10 97:15 97:19 | | 212:24 213:7 213:12 213:18 213:25 214:6 214:9 214:12 214:18 214:20 214:22 215:2 |
| 167:8 168:17 169:2 171:13 176:6 176:10 176:16 177:8 177:20 179:25 180:6 180:13 | | 144:20 145:16 145:22 146:7 146:11 147:23 147:4 147:7 147:16 148:1 148:2 148:9 | | 97:23 98:1 98:5 98:9 98:14 98:18 98:20 99:2 99:6 99:8 99:10 99:14 99:17 99:22 | | 215:5 215:10 215:14 215:17 215:18 215:20 215:25 216:2 216:4 216:5 216:9 216:13 |
| 181:2 181:4 181:20 182:10 184:17 186:15 188:17 189:21 190:5 190:10 190:12 191:1 | | 147:4 147:7 147:16 148:1 148:2 148:9 149:4 149:6 149:20 149:24 150:23 151:8 | | 100:1 100:5 100:21 100:25 101:4 101:8 101:11 101:14 101:15 101:19 101:25 102:2 | | 216:15 217:10 218:2 218:15 218:24 219:4 220:1 220:5 220:7 220:18 220:23 221:1 |
| 192:8 193:5 193:10 196:11 196:20 197:2 197:4 198:17 199:13 201:8 201:15 201:17 | | 151:14 151:18 152:7 152:7 152:11 152:17 152:21 153:14 153:15 153:19 154:2 154:3 | | 102:13 102:17 102:19 102:22 102:23 102:25 103:4 103:11 103:18 103:24 104:1 | | 221:13 221:14 221:16 221:18 221:20 221:21 221:23 222:1 222:4 222:20 223:1 |
| 202:18 202:18 206:3 206:6 207:5 208:9 208:13 208:21 208:24 209:12 210:7 210:2 | | 154:10 154:12 154:15 154:17 154:19 155:15 155:6 155:13 155:22 156:2 156:3 156:16 | | 104:24 105:4 105:7 105:10 105:17 105:19 105:22 106:3 106:4 106:6 106:9 106:13 | | 223:11 223:15 223:24 |
| 211:9 213:20 214:3 217:8 218:4 218:10 218:12 219:2 221:8 | | 158:1 158:6 158:8 158:9 158:20 160:2 160:17 160:18 161:19 162:15 163:8 164:1 | | 106:20 106:24 107:7 107:12 107:16 107:17 107:22 108:1 108:6 108:9 108:11 108:17 | | |
| | | 165:3 165:5 165:9 165:22 166:4 167:1 167:3 167:8 167:21 167:25 168:6 168:23 | | 108:20 108:25 109:5 109:14 109:17 109:2 109:24 110:2 110:8 110:16 110:22 111:4 | | **yourself**(4) 33:7 59:6 132:9 196:21 |
| **wouldn't**(3) 19:15 20:12 78:20 | | 169:2 169:5 169:7 169:9 169:20 173:12 173:13 176:21 178:19 179:15 179:23 | | 111:7 111:11 111:16 111:20 112:7 112:9 112:12 112:15 112:18 112:25 113:2 113:8 | | **yourselves**(1) 213:16 |
| **would've**(2) 85:5 120:25 | | 179:24 183:3 183:16 | | 113:12 113:19 113:22 113:24 113:25 114:2 114:13 114:20 114:22 114:25 115:3 | | **you'll**(4) 85:1 85:21 111:16 218:6 |
| **wounds**(2) 178:15 178:23 | | | | 115:11 115:18 115:20 115:22 115:24 116:1 116:5 116:10 116:13 116:17 116:21 | | **you're**(1) 209:5 |
| **write**(1) 87:7 | | **you**(110) 184:25 185:4 185:7 185:11 185:12 185:22 186:8 186:11 186:14 186:1 | | 116:25 117:5 117:8 117:12 117:16 118:2 118:23 118:25 119:2 119:7 119:10 119:13 | | **you've**(3) 88:5 88:6 112:6 |
| **writes**(2) 105:16 126:15 | | 186:18 187:2 187:3 187:13 187:17 187:24 188:4 188:7 188:12 188:14 188:22 188:25 | | 119:18 119:22 119:24 120:3 120:7 120:10 120:17 120:21 121:1 121:6 121:10 121:14 | | **zabel**(1) 9:4 |
| **writing**(6) 99:15 105:13 105:20 109:1 125:13 127:2 | | 189:1 189:6 190:14 191:14 191:23 191:24 192:3 193:13 193:16 193:17 193:17 193:1 | | 121:17 121:19 121:25 122:3 122:6 122:7 122:10 122:12 122:20 122:22 123:1 123:6 | | **zatz**(1) 14:5 |
| | | 193:18 193:23 193:24 193:25 194:15 | | | | **zell**(19) 74:19 124:15 124:17 124:18 |
| **written**(5) 101:9 114:5 129:8 149:6 182:10 | | 194:15 195:9 196:14 196:14 196:20 197:2 197:8 198:8 198:17 198:12 198:24 199:1 | | | | 124:20 133:18 133:19 133:22 146:19 147:3 147:6 147:14 147:19 147:25 148:3 209:9 |
| **wrong**(39) 16:23 16:25 18:1 32:18 37:14 38:16 39:6 39:22 42:1 44:10 49:18 57:17 | | 199:8 199:24 200:4 202:20 203:5 203:5 203:14 203:16 203:21 203:22 204:1 205:7 | | | | 216:6 221:21 221:25 |
| 57:18 74:16 74:20 79:10 86:7 86:7 86:8 86:8 119:23 121:7 121:8 150:1 150:4 | | 206:2 206:19 206:25 208:3 208:9 208:10 208:13 208:21 208:23 208:24 209:4 209:9 | | | | |
| 152:24 164:11 164:13 164:25 168:22 168:24 169:20 185:7 189:13 190:10 194:2 | | 211:8 211:16 211:19 212:1 212:2 212:4 212:4 213:13 213:24 214:20 216:6 216:15 | | | | **zell's**(3) 74:15 74:22 146:25 |
| 202:9 202:10 215:4 | | 217:1 217:1 217:5 217:21 217:24 218:22 219:8 220:4 220:6 220:11 220:18 221:13 | | | | **zell/egi-trb**(1) 5:16 |
| | | 221:15 221:17 221:18 221:19 222:2 222:1 | | | | **zell's**(4) 123:25 124:5 124:10 221:8 |
| **wrote**(2) 124:12 125:23 | | 222:17 222:20 222:21 223:11 223:25 | | | | **zensky**(42) 4:19 76:12 84:19 84:20 84:25 |
| **www.diazdata.com**(1) 1:50 | | | | | | 85:19 86:22 86:24 87:8 89:7 132:2 132:6 |
| **yeah**(2) 47:4 62:15 | | | | | | 132:7 132:14 132:21 137:18 145:5 149:8 |
| **year**(10) 64:20 90:8 99:17 102:11 102:12 102:18 113:11 114:9 216:6 216:8 | | | | | | 149:11 153:1 153:4 153:12 153:18 154:1 |
| | | | | | | 154:22 154:24 155:25 167:21 180:8 180:8 |
| **years**(13) 17:1 46:1 46:8 47:6 83:1 95:8 96:13 96:23 106:8 168:25 182:12 182:12 | | | | | | 190:1 191:2 192:1 192:7 192:14 193:1 |
| 186:21 | | | | | | 193:13 211:9 211:13 211:16 216:14 216:15 |
| **yearly**(1) 126:14 | | | | | | |
| **yep**(1) 132:21 | | **you'd**(5) 31:20 34:23 49:11 71:10 74:18 | | | | **zensky's**(1) 192:21 |
| **yes**(8) 17:14 27:6 27:6 52:18 64:24 86:22 100:13 118:9 | | **you'll**(11) 59:6 61:19 78:14 79:24 146:13 160:16 165:9 173:23 188:15 193:19 202:10 | | | | **zero**(3) 58:25 89:22 90:2 |
| | | | | | | **zeroed**(1) 219:21 |
| **yet**(12) 51:24 52:23 82:21 102:11 147:19 152:15 152:16 154:12 163:2 177:3 184:23 | | | | | | **zloto**(1) 8:6 |
| 199:15 | | | | | | **zuckerman**(5) 3:28 6:18 15:6 153:21 185:2 |
| **yields**(1) 42:19 | | | | | | ***another**(1) 109:13 |
| | | | | | | ***apply**(1) 208:8 |
| | | | | | | ***bankruptcy**(1) 204:19 |
| | | | | | | ***beat**(1) 211:23 |
| | | | | | | ***borderline**(1) 94:16 |

| Word | Page:Line |
|---|---|
| **"but**(1) 205:15 | |
| **"consistency**(1) 109:3 | |
| **"gotcha**(1) 206:19 | |
| **"likely**(1) 112:22 | |
| **"one**(1) 97:3 | |
| **"real**(1) 116:24 | |
| **"scary"**(1) 125:18 | |
| **"substantially**(1) 107:3 | |
| **"the**(3) 92:25  114:6  127:19 | |
| **"trash**(1) 125:24 | |
| **"unknown**(4) 117:24  118:4  118:12  118:19 | |
| **"unlikely**(1) 94:21 | |
| **"very**(3) 105:18  124:10  126:11 | |
| **"we're**(1) 210:11 | |
| **"where"**(3) 206:20  206:23  216:17 | |
| **"wrenching**(1) 96:21 | |