# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## FOURTH QUARTERLY FEE APPLICATION OF ERNST & YOUNG LLP

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Fourth Quarterly Fee Application of Ernst & Young LLP* [Docket No. 6048] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $77,522.50 for the period from March 1, 2010 through May 31, 2010. Ernst & Young LLP ("E&Y") provides

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

valuation and business modeling and marketing survey services to the Debtors and Debtors in Possession.

## Background

1. On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2. On June 5, 2009, the Debtors filed the *Application for an Order Authorizing Debtors to Retain and Employ Ernst & Young LLP to Provide (I) Valuation and Business Modeling Services and (II) Market Survey Services to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to May 31, 2009* [Docket No. 1298] (the "**Retention Application**"). By order dated July 21, 2009, this Court approved the retention of E&Y [Docket No. 1783] (the "**Retention Order**"). By order dated March 22, 2010, this Court entered an order modifying the scope of E&Y's retention to include continued performance of valuation services relating to FCC licenses [Docket No. 3804]; by order dated June 14, 2010, this Court entered an order further modifying the scope of E&Y's retention to include fresh start accounting valuation services [Docket No. 4779] (collectively the "**Supplemental Retention Orders**").

3. E&Y submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

4. In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis *and review*, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals

to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5. The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6. Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

7. A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses

were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8. The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Supplemental Retention Orders, the Interim Compensation Order, and all related filings and provided a Preliminary Report to E&Y for review and comment. Counsel for E&Y provided a written response to the Preliminary Report that included a spreadsheet of additional detail for certain fee entries. After evaluation and consideration of the additional information provided by E&Y, the Fee Examiner submits this Final Report for the Court's consideration. This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also inform the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

## DISCUSSION OF FINDINGS

### Technical Requirements

9. **Reconciliation of Fees.** The Fee Examiner compared the total amount of fees requested in the Fee Application ("**Fees Requested**") to the fees actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**"). The Fee Examiner identified no discrepancies between the Fees Requested and the Fees Computed.

10. **Block Billing.** The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries

exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[2] E&Y timekeepers did not block bill time entries.

11. **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines* ¶(b)(4)(v). The Fee Examiner observed that certain E&Y timekeepers predominantly billed whole or half hour increments. Overall, 56 out of the 94 billing entries in the Fee Application were invoiced in whole or half hour increments, an amount that is extremely unlikely statistically and appears to be the result of inaccurate and/or non-contemporaneous timekeeping. The Fee Examiner believed a fee reduction was warranted due to the non-compliance with the Local Rules and UST Guidelines and invited comment from E&Y.

In response to the Preliminary Report, E&Y agreed to a voluntary fee reduction of $9,700.00, computed by reducing by 0.40 hour each time entry billed in whole or half-hour increments so as to ensure the Debtors do not bear the cost of any inadvertent rounding of time.

### Review of Fees

12. **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines* ¶(b)(1)(iii). The Fee Application provided the names, positions, and hourly rates of the 15 E&Y professionals and paraprofessionals who billed to this

---

[2] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

matter, consisting of 2 executive directors, 2 partner/principals, 4 senior managers, 1 manager, 5 seniors, and 1 senior associate. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[3]

The firm billed a total of 198.10 hours with associated fees of $77,522.50. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Executive Director | 34.80 | 18% | $18,270.00 | 23% |
| Partner/Principal | 5.50 | 3% | 2,887.50 | 4% |
| Senior Manager | 69.80 | 35% | 33,155.00 | 43% |
| Manager | 4.00 | 2% | 1,500.00 | 2% |
| Senior | 70.10 | 35% | 19,277.50 | 25% |
| Senior Associate | 13.90 | 7% | 2,432.50 | 3% |
| TOTAL | 198.10 | 100% | $77,522.50 | 100% |

The blended hourly rate for the E&Y timekeepers is $391.33.

13. **Hourly Rate Increases.** E&Y did not increase the hourly rate of any timekeeper during this interim period.

14. **Timekeepers' Roles.** A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*. With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts. On the whole, each timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

15. **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *(Local Rule 2016-2(d)(ix))*, and the

---

[3] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more E&Y timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 14.30 hours with $6,192.50 in associated fees, were displayed in **Exhibit B** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, the Fee Examiner identified the timekeeper who appeared most responsible for the matter or the particular event. The potentially duplicative and unnecessary timekeepers' entries total 9.90 hours with $3,902.50 in associated fees, and are highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

E&Y complied with the Fee Examiner's request by providing a spreadsheet that contained the requisite detail. After review of the additional information, the Fee Examiner makes no recommendation for a fee reduction. Exhibit B is omitted from this report.

16. **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified billing activities describing intraoffice conferences totaling 4.00 hours with $2,000.00 in associated fees, or approximately 3% of the total Fees Computed, as displayed in **Exhibit C** to the Preliminary Report. The hours represent two separate conferences each attended by two E&Y timekeepers. The Fee Examiner requested that E&Y strive to eliminate unnecessary intraoffice

conferencing, but makes no recommendation for a fee reduction given the limited hours and fees resulting from intrafirm communication. Exhibit C is omitted from this report.

17. **Site Visits.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." In general, E&Y timekeepers sufficiently described the billing activities. However, the Fee Examiner requested that E&Y review the two entries displayed in **Exhibit D** to the Preliminary Report and provide comment on whether the "site visits" included any portion of nonworking travel time.

In response, the firm stated that the neither of the two entries included travel time. Given the firm's representation, the Fee Examiner makes no recommendation for a fee reduction. Exhibit D is omitted from this report.

18. **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any time entries describing administrative activities.

19. **Clerical Activities.** Clerical activities are tasks that may be effectively performed by administrative assistants, secretaries, or support personnel[4] or support tasks for which the firm charged more than the market rate. The Fee Examiner did not identify any fee entries describing clerical activities.

20. **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii).* The Fee Examiner did not identify any fee entries describing travel.

---

[4] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

21. **E&Y Retention/Compensation.** The Fee Examiner did not identify any time or fees resulting from work on E&Y's retention or compensation.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $67,822.50 ($77,522.50 minus $9,700.00) for the period from March 1, 2010 through May 31, 2010. The findings are summarized in the attached Appendix A.

Respectfully submitted,

**STUART MAUE**

By: _____

W. Andrew Dalton
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## APPENDIX A

### ERNST & YOUNG LLP

#### SUMMARY OF FINDINGS

##### Fourth Quarterly Fee Application (March 1, 2010 through May 31, 2010)

**A.  Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $77,522.50 | |
| Expenses Requested | 0.00 | |
| TOTAL FEES AND EXPENSES REQUESTED | | $77,522.50 |
| Fees Computed | $77,522.50 | |
| Expenses Computed | 0.00 | |
| TOTAL FEES AND EXPENSES COMPUTED | | $77,522.50 |

**B.  Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---:|---:|---:|
| Fees Requested | | $77,522.50 | |
| *Agreed Reduction for Time Increments* | | *($9,700.00)* | |
| | Subtotal | *($9,700.00)* | |
| RECOMMENDED FEE ALLOWANCE | | | $67,822.50 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 5th day of August 2011.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Matthew Howley, Esq.
Ernst & Young LLP
233 South Wacker Drive
Chicago, IL  60606

_____
W. Andrew Dalton

# EXHIBIT A

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**
**COMPUTED AT STANDARD RATES**
**Ernst & Young**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JMAS | Mason, Jon S. | EXEC DIRECTOR | $525.00 | $525.00 | 33.30 | $17,482.50 |
| SWOJ | Wojcickyi, Stefan | EXEC DIRECTOR | $525.00 | $525.00 | 1.50 | $787.50 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $525.00 | | 34.80 | $18,270.00 |
| | | | | % of Total: | 17.57% | % of Total: 23.57% |
| BTHO | Thompson, Brett D. | PARTNER/PRINCIP | $525.00 | $525.00 | 3.50 | $1,837.50 |
| MHOW | Howley, Matthew C. | PARTNER/PRINCIP | $525.00 | $525.00 | 2.00 | $1,050.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $525.00 | | 5.50 | $2,887.50 |
| | | | | % of Total: | 2.78% | % of Total: 3.72% |
| BVEN | Venisnik, Bradley J. | SENIOR MANAGER | $475.00 | $475.00 | 29.70 | $14,107.50 |
| GBOT | Botts, Guy S. | SENIOR MANAGER | $475.00 | $475.00 | 18.00 | $8,550.00 |
| MJON | Jones, Matthew C. | SENIOR MANAGER | $475.00 | $475.00 | 16.80 | $7,980.00 |
| JPUT | Putnam, Joshua Eric | SENIOR MANAGER | $475.00 | $475.00 | 5.30 | $2,517.50 |
| | No. of Billers for Position: 4 | Blended Rate for Position: | $475.00 | | 69.80 | $33,155.00 |
| | | | | % of Total: | 35.23% | % of Total: 42.77% |
| CWEN | Wen, Clark Kuang Yu | MANAGER | $375.00 | $375.00 | 4.00 | $1,500.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $375.00 | | 4.00 | $1,500.00 |
| | | | | % of Total: | 2.02% | % of Total: 1.93% |
| MKEA | Kearns, Michael Ryan | SENIOR | $275.00 | $275.00 | 48.10 | $13,227.50 |
| JKNI | Knightly, James Charles | SENIOR | $275.00 | $275.00 | 10.00 | $2,750.00 |
| SMUL | Mulcahy, Sean D. | SENIOR | $275.00 | $275.00 | 6.00 | $1,650.00 |
| YTON | Tong, Yuet Fong | SENIOR | $275.00 | $275.00 | 4.00 | $1,100.00 |
| YYEU | Yeung, Yikwan | SENIOR | $275.00 | $275.00 | 2.00 | $550.00 |

EXHIBIT A

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**
**COMPUTED AT STANDARD RATES**
**Ernst & Young**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| | No. of Billers for Position: 5 | Blended Rate for Position: | $275.00 | | 70.10 | $19,277.50 |
| | | | | | % of Total: 35.39% | % of Total: 24.87% |
| BING | Ingles, Beatrice | SENIOR ASSOCIAT | $175.00 | $175.00 | 13.90 | $2,432.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $175.00 | | 13.90 | $2,432.50 |
| | | | | | % of Total: 7.02% | % of Total: 3.14% |
| | Total No. of Billers: 15 | Blended Rate for Report: | $391.33 | | 198.10 | $77,522.50 |