# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## FOURTH QUARTERLY APPLICATION OF MERCER (US) INC.

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Fourth Quarterly Application of Mercer (US) Inc.* [Docket No. 7504] (the "**Fee Application**").  The Fee Application seeks approval of fees that total $101,796.20 and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

reimbursement of expenses that total $7,738.05 for the period from September 1, 2009 through

November 30, 2009.  Mercer (US) Inc. ("**Mercer**") serves as Compensation Consultant to the Debtors.

**Background**

1.      On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed

subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code.  On December 10, 2008, the Bankruptcy Court

entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2.      On January 7, 2009, the Debtors filed the *Application for an Order Authorizing Debtors*

*to Retain and Employ Mercer (US) Inc. as Compensation Consultant to the Debtors Pursuant to*

*11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to January 12, 2009* [Docket No. 893] (the "**Retention**

**Application**").  By order dated May 11, 2009, this Court approved the Retention Application [Docket

No. 1179]) ("**Retention Order**").

3.      Mercer submitted the Fee Application pursuant to the *Order Establishing Procedures*

*for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket

No. 225] (the "**Interim Compensation Order**").

**Applicable Standards**

4.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the

Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and

review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish

uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals

to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and

guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and

331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of

-2-

Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.        Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

7.        A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment by attorneys is ethically mandated; it is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.      The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings, and provided a Preliminary Report to Mercer for review and comment.  The firm responded to the Fee Examiner with a detailed written response to the Preliminary Report.  After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### Technical Requirements

9.      **Reconciliation of Fees and Expenses.**  The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").  The recomputation of fees revealed that the Fees Requested exceed the Fees Computed by $16.70.  The discrepancy arose from the firm's use of slightly different billing rates to calculate the requested fees as opposed to the rates indicated in the Fee Application.  The Fee Examiner recommends a fee reduction of $16.70 for the discrepancy displayed in the following table:

| Timekeeper Name | Hours Billed | Billing Rate Stated in the Fee Application | Billing Rate Used to Calculate the Fees Requested | Discrepancy Due to Rate Difference[1] |
|---|---|---|---|---|
| John Dempsey | 64.00 | $725.00 | $725.00 | $ 0.00 |
| Julie Donnell | 34.50 | $226.00 | $226.20 | 6.90 |
| Marcia Long | 53.50 | $493.00 | $493.00 | 0.00 |
| Julie Mayer | 18.25 | $72.00 | $71.92 | (1.46) |
| Judy Mei | 9.50 | $377.00 | $377.00 | 0.00 |
| Kimberly Moriarty | 1.50 | $360.00 | $359.60 | (0.60) |
| Eric Rentsch | 16.50 | $226.00 | $226.20 | 3.30 |
| Seth Rosen | 2.00 | $795.00 | $794.60 | (0.80) |
| Justin Wu | 46.25 | $226.00 | $226.20 | 9.25 |
| | | | **TOTAL** | **$16.59** |

[1]The Fee Examiner noted a $0.11 rounding difference due to the alternate rate rates.

The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

10. **Block Billing.** The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[2] The Fee Application included three block billed entries, totaling 34.00 hours with $24,650.00 in associated fees, which were provided to the firm in in **Exhibit B** to the Preliminary Report. The Fee Examiner requested that Mercer provide a breakdown of the time associated with each task performed in the block billed entries.

In response to the Preliminary Report, Mercer provided a spreadsheet in which a specific amount of time was allocated to each of the tasks within the blocked entries. The additional information brings the entries into accord with the Local Rules and UST Guidelines, and after review of same the Fee Examiner makes no recommendation for a fee reduction. Exhibit B is omitted from this report.

11. **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an

---

[2] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

hour." *UST Guidelines ¶(b)(4)(v)*.  Mercer was granted a limited waiver of the requirements of Local

Rule 2016-2, and is permitted to invoice the time spent by its professionals in quarter hour increments.

## Review of Fees

12.    **Firm Staffing.**  The UST Guidelines state that fee applications should identify the

"[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an]

explanation of any changes in hourly rates from those previously charged, and [a] statement of whether

the compensation is based on the customary compensation charged by comparably skilled practitioners

in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*.  The Fee Application provided the

names, positions, and hourly rates of the nine Mercer timekeepers who billed to this matter, consisting

of two principals, one senior associate, two associates, three analysts, and one researcher.  A summary

of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[3]

The firm billed a total of 246.00 hours with associated fees of $101,779.50.[4]  The

following table displays the hours and fees computed by timekeeper position and the percentage of total

hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Principal | 66.00 | 27% | $ 47,990.00 | 47% |
| Senior Associate | 53.50 | 22% | 26,375.50 | 26% |
| Associate | 11.00 | 4% | 4,121.50 | 4% |
| Analyst | 97.25 | 40% | 21,978.50 | 22% |
| Researcher | 18.25 | 7% | 1,314.00 | 1% |
| TOTAL | 246.00 | 100% | $101,779.50 | 100% |

The blended hourly rate for the Mercer professionals is $413.74.

13.    **Hourly Rate Increases.**  Mercer did not increase the hourly rate of any timekeeper

during the fourth interim period.

---

[3] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[4] This amount reflects the Fees Computed.

14.    **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary."   The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*.  The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.   Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*. Mercer complied with the applicable guidelines regarding providing sufficient detail for billing activities.

15.    **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *Local Rule 2016-2(d)(ix)*, and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.  The Fee Examiner identified one occasion when two timekeepers billed to attend the same hearing.  Contrary to Local Rule 2016-2, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees.   The entries, totaling 22.00 hours with $14,094.00 in associated fees, were provided to the firm in **Exhibit C** to the

Preliminary Report. The Fee Examiner requested from Mercer an explanation of the necessity of the multiple billers and their respective roles.

In response to the Preliminary Report, Mercer provided both a spreadsheet and a written explanation which stated that the Debtors specifically requested the attendance of both firm timekeepers at the hearing as each had a separate and distinct role. After consideration of the additional information and explanation provided by Mercer, the Fee Examiner makes no recommendation for a fee reduction. Exhibit C is omitted from this report.

16.     **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified minimal instances of intraoffice conferencing and makes no recommendation for a related fee reduction.

17.     **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any fee entries describing administrative activities.

18.     **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel[5] or support tasks for which the firm charged more than the market rate. The Fee Examiner did not identify any fee entries describing clerical activities.

19.     **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii).* The Fee Application did not include any time entries describing travel time.

---

[5] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

20.    **Mercer Retention/Compensation.**  The Fees Application did not include any entries describing activities related to the firm's retention and/or compensation.

**Review of Expenses**

21.    **Complete and Detailed Itemization of Expenses.**  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*.  The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.  Mercer provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

22.    **Travel Expenses – Insufficient Detail.**  Mercer categorized travel expenses according to the type of expense (*e.g.*, transportation, lodging, meals).  The descriptions, however, did not provide the information necessary for a determination of the firm's compliance with the UST Guidelines.

a.    **Transportation.**  The descriptions for transportation charges did not include sufficient information regarding the type of transportation and purpose of the expense.  The Fee Examiner requested from Mercer information as to the type and purpose of the charges displayed in **Exhibit D** to the Preliminary Report.  In response, the firm provided the requested information; in the course of doing so Mercer identified a total of $157.00 in late night local travel expenses that were mislabeled.  In accord with paragraph 23 below, the firm agreed to voluntary waive the $157.00.  The

-9-

Fee Examiner reviewed the additional information regarding the remaining transportation charges and makes no further recommended reduction. Exhibit D is omitted from this report.

        b.    **Travel Meals.**  The Fee Examiner applies the following per person meal caps: $15.00 for breakfast, $25.00 for lunch, and $50.00 ceiling for dinner. Three meal charges requested for reimbursement by the firm may exceed the ceiling amounts. The Fee Examiner requested that Mercer provide information regarding the type of meal (breakfast, lunch, or dinner) and the number of attendees for each of the meals charges.

        In response, the firm provided a spreadsheet containing the requested detail. Mercer agreed to an expense reduction of $17.00 for one meal charge in excess of the cap.

    23.    **Overtime Expenses.**  Mercer requested reimbursement for meals while working late totaling $236.48 and overtime transportation totaling $126.00; the charges were displayed in **Exhibit E** to the Preliminary Report. Although a firm may have a policy that personnel may be reimbursed for transportation and/or meals for employees while working late, absent unusual circumstances such charges are considered part of the firm's overhead. The Fee Examiner invited comment from Mercer.

        In response, the firm agreed to waive the $362.48 in expenses listed in the attached Exhibit E.

    24.    **Vaguely Described Expenses.**  The firm requested reimbursement for charges totaling $5,066.86 with descriptions such as "Administrative – Legal" or "Administrative." The Fee Examiner requested from Mercer additional information regarding the purpose and necessity of the charges contained in **Exhibit F** to the Preliminary Report.

        Mercer responded by providing (i) invoices detailing the legal fees incurred in relation to this engagement (charges which are reimbursable under the terms of Mercer's engagement) and (ii) a spreadsheet with additional detail for the other questioned charges. After review of the information provided, the Fee Examiner makes no recommendation for an expense reduction. Exhibit F is omitted from this report.

### Conclusion

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $101,779.50 ($101,796.20 minus $16.70) and reimbursement of expenses in the amount of $7,201.57 ($7,738.05 minus $536.48) for the period from September 1, 2009 through November 30, 2009. The findings are summarized in the attached Appendix A.


Respectfully submitted,

**STUART MAUE**

By: _____

W. Andrew Dalton
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## APPENDIX A

**MERCER (US) INC.**

### SUMMARY OF FINDINGS

#### Fourth Quarterly Application (September 1, 2009 through November 30, 2009)

**A.    Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $101,796.20 | |
| Expenses Requested | 7,738.05 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $109,534.25 |
| | | |
| Fees Computed | $101,779.50 | |
| Expenses Computed | 7,738.05 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $109,517.55 |
| | | |
| Discrepancy in Fees | $    16.70 | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | $    16.70 |

**B.    Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---:|---:|
| Fees Requested | $101,796.20 | |
| *Recommended Reduction for Discrepancy in Fees* | *($16.70)* | |
| Subtotal | *($16.70)* | |
| | | |
| RECOMMENDED FEE ALLOWANCE | | $101,779.50 |
| | | |
| Expenses Requested | $7,738.05 | |
| *Agreed Reduction for Transportation* | *($157.00)* | |
| *Agreed Reduction for Travel Meals* | *(17.00)* | |
| *Agreed Reduction for Overtime Expenses* | *(362.48)* | |
| Subtotal | *($536.48)* | |
| | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | 7,201.57 |
| | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | $108,981.07 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 5th day of August, 2011.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Mr. John Dempsey
Mercer (US) Inc.
10 South Wacker Drive, Suite 1700
Chicago, IL  60606

_____
W. Andrew Dalton

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

## COMPUTED AT STANDARD RATES

### Mercer (US) Inc.

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JDEM | Dempsey, John | PRINCIPAL | $725.00 | $725.00 | 64.00 | $46,400.00 |
| SROS | Rosen, Seth | PRINCIPAL | $795.00 | $795.00 | 2.00 | $1,590.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $727.12 | | 66.00 | $47,990.00 |
| | | | | % of Total: | 26.83% | % of Total: 47.15% |
| MLON | Long, Marcia | SR. ASSOCIATE | $493.00 | $493.00 | 53.50 | $26,375.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $493.00 | | 53.50 | $26,375.50 |
| | | | | % of Total: | 21.75% | % of Total: 25.91% |
| JMEI | Mei, Judy | ASSOCIATE | $377.00 | $377.00 | 9.50 | $3,581.50 |
| KMOR | Moriarty, Kimberly | ASSOCIATE | $360.00 | $360.00 | 1.50 | $540.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $374.68 | | 11.00 | $4,121.50 |
| | | | | % of Total: | 4.47% | % of Total: 4.05% |
| JWU | Wu, Justin | ANALYST | $226.00 | $226.00 | 46.25 | $10,452.50 |
| JDON | Donnell, Julie | ANALYST | $226.00 | $226.00 | 34.50 | $7,797.00 |
| EREN | Rentsch, Eric | ANALYST | $226.00 | $226.00 | 16.50 | $3,729.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $226.00 | | 97.25 | $21,978.50 |
| | | | | % of Total: | 39.53% | % of Total: 21.59% |
| JMAY | Mayer, Julie | RESEARCHER | $72.00 | $72.00 | 18.25 | $1,314.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $72.00 | | 18.25 | $1,314.00 |
| | | | | % of Total: | 7.42% | % of Total: 1.29% |
| | Total No. of Billers: 9 | Blended Rate for Report: | $413.74 | | 246.00 | $101,779.50 |

EXHIBIT E

Overtime Expenses

Mercer (US) Inc.

| DATE | INVOICE/ENTRY # | AMOUNT BILLED | DETAIL AMOUNT | EXHIBIT AMOUNT | DESCRIPTION |
|------|-----------------|---------------|---------------|----------------|-------------|
| Category: Meals - Non-Travel (Late Work) | | | | | |
| 09/11/09 | 200909/4 | 14.65 | | 14.65 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 09/11/09 | 200909/6 | 31.67 | | 31.67 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 09/14/09 | 200909/7 | 16.93 | | 16.93 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 09/15/09 | 200909/8 | 12.98 | | 12.98 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 09/17/09 | 200909/13 | 50.00 | | 50.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 09/22/09 | 200909/23 | 24.19 | | 24.19 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 10/01/09 | 200910/1 | 18.93 | | 18.93 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 10/13/09 | 200910/12 | 24.51 | | 24.51 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 10/13/09 | 200910/13 | 21.50 | | 21.50 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 10/14/09 | 200910/14 | 6.00 | | 6.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 10/14/09 | 200910/16 | 8.12 | | 8.12 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| 10/14/09 | 200910/15 | 7.00 | | 7.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> MEALS - NON-TRAVEL (LATE WORK) |
| Meals - Non-Travel (Late Work): | | $236.48 | | $236.48 | |
| Category: Transportation - Late Work | | | | | |
| 09/09/09 | 200909/1 | 17.00 | | 17.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> TRANSPORTATION (LATE WORK) |
| 09/11/09 | 200909/5 | 18.00 | | 18.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> TRANSPORTATION (LATE WORK) |
| 09/15/09 | 200909/9 | 16.00 | | 16.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* <br> TRANSPORTATION (LATE WORK) |

EXHIBIT E

Overtime Expenses

Mercer (US) Inc.

| DATE | INVOICE/ENTRY # | AMOUNT BILLED | DETAIL AMOUNT | EXHIBIT AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| Category: Transportation - Late Work | | | | | |
| 09/17/09 | 200909/12 | 19.00 | | 19.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* TRANSPORTATION (LATE WORK) |
| 09/21/09 | 200909/21 | 18.00 | | 18.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* TRANSPORTATION (LATE WORK) |
| 09/22/09 | 200909/22 | 20.00 | | 20.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* TRANSPORTATION (LATE WORK) |
| 09/24/09 | 200909/25 | 18.00 | | 18.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors* TRANSPORTATION (LATE WORK) |
| Transportation - Late Work: | | $126.00 | | $126.00 | |
| | | $362.48 | | $362.48 | |