# EXHIBIT B

# ERISA CLAIM SETTLEMENT

# MEMORANDUM OF UNDERSTANDING ("<u>MOU</u>")

*Neil v. Zell, et al.,* Case No. 08-cv-06833 (N.D. Ill.)
*In re Tribune Co., et al.,* Case No. 08-13141-KJC (Bankr. D. Del.)

### MEMORANDUM OF UNDERSTANDING

Section 1. Settlement Documentation: This Memorandum of Understanding ("MOU") sets forth the material terms of Settlement which the Parties intend to include in a formal and binding settlement agreement. This MOU is binding on the Parties in accordance with the terms herein.

Section 2. Parties to Settlement: The "Parties" to this Settlement are Plaintiffs Dan Neil, Eric Bailey and Class Members described in Section 3 ("Plaintiffs") in the action *Neil v. Zell, et al.,* No. 08-cv-06833 (N.D. Ill.) ("the ERISA Litigation"); ERISA Litigation Defendants GreatBanc Trust Company ("GreatBanc"), Samuel Zell ("Zell") and EGI-TRB LLC ("EGI-TRB") (collectively, "Defendants"); Tribune Company ("Tribune") and each of its direct and indirect subsidiaries (collectively, the "Tribune Entities"), certain of which, together with Tribune, are currently debtors in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in pending bankruptcy proceedings being jointly administered as Case No. 08-13141-KJC ("the Bankruptcy Proceedings"); and the Secretary ("Secretary") of the United States Department of Labor ("DOL") who has filed claims against certain of the Tribune Entities in the Bankruptcy Proceedings. The ERISA Litigation and Bankruptcy Proceedings collectively are referenced herein as the "Actions".

Section 3. Class Action Settlement: The ERISA Litigation will be settled as a non-opt-out class action, pursuant to the Class definition (the "Class") approved by the United States District Court for the Northern District of Illinois (the "District Court") presiding over the ERISA Litigation.

Section 4. Settlement Amount: The Settlement Amount will be $32 million. This is an all-in number (*i.e.*, includes attorney fees, costs of litigation, Class representative enhancements, Class benefits, cost of notice, cost of the settlement administrator, and cost of the independent fiduciary subject to Section 10). GreatBanc shall not receive any payment from the Settlement Amount, Tribune Employee Stock Ownership Plan (the "Tribune ESOP" or the "Plan"), or the Class for any work it performs as Trustee related to the Settlement. The Settlement Amount will be provided by Tribune, remitted either by Tribune itself or by another of the Tribune Entities, GreatBanc and/or their insurers (the "Funding Parties"), pursuant to a separate agreement (the "Funding Parties Agreement") between (a) GreatBanc, (b) Tribune, and (c) Illinois National Insurance Company, Federal Insurance Company, AXIS Insurance Company, U.S. Specialty Insurance Company, and St. Paul Mercury Insurance Company (collectively, the "Insurers").



Section 5.   Court Approval and Deadlines for Funding, Class Notice and Payment:

(a) Tribune will make its best efforts to file a motion for approval of the Settlement by the Bankruptcy Court as soon as feasible after execution of this MOU by all Parties thereto, requesting that, at a hearing in the Bankruptcy Proceedings on September 14, 2011, the Bankruptcy Court enter an order granting the Tribune Entities authority to be bound by and consummate the Settlement. In the event the Bankruptcy Court declines to grant such authority, the Settlement will be voidable by any Party to the Settlement.

(b) The Plaintiffs will make their best efforts to file a motion for a hearing and preliminary approval of the Settlement by the District Court as soon as feasible after execution of this MOU by all Parties thereto, requesting that the District Court enter preliminary approval of the Settlement within 10 business days after the approval by the Bankruptcy Court.

(c) Tribune will make its best efforts to file a motion as soon as feasible after execution of this MOU by all Parties thereto, requesting that, at a hearing in the Bankruptcy Proceedings on September 14, 2011, the Bankruptcy Court enter an order modifying the automatic stay, to the extent it applies, to permit the Insurers to pay their respective portions of the Settlement Amount, pursuant to the terms of the Funding Parties Agreement and this MOU.

(d) The Funding Parties will fund $17.25 million of the Settlement Amount (the "Preliminary Funding") within 30 calendar days after the later of (i) preliminary approval of the Settlement by the District Court; (ii) approval of the Settlement by the Bankruptcy Court; or (iii) entry by the Bankruptcy Court of an order modifying the automatic stay, to the extent it applies. Preliminary Funding shall be made by deposit of these funds into an interest-bearing escrow account at First Republic Bank (the "Settlement Account"). This Preliminary Funding, including interest, shall be used solely to cover costs of administration (excluding attorneys' fees) associated with the Settlement, including but not limited to the costs of notice to the Class, fees and expenses for the independent fiduciary (subject to Section 10), and fees and expenses for the Settlement Administrator. If the District Court does not grant preliminary approval of the Settlement, the Bankruptcy Court does not grant approval described in Section 5(a) above, or the Bankruptcy Court does not modify the automatic stay to the extent it applies to permit the Insurers to pay their respective portions of the Settlement Amount, there shall be no obligation by the Funding Parties to pay the Settlement Amount.

(e) Settlement Administration: Prior to the District Court's preliminary approval hearing, Plaintiffs will select a Settlement Administrator subject

to the consent of the Funding Parties. Settlement administration costs shall be paid from the Settlement Amount.

(f) Not more than twenty (20) business days after the District Court grants preliminary approval of the Settlement, the Class shall be sent notice of the proposed Settlement by first-class mail. No later than August 25, 2011 or as soon thereafter as reasonably possible, Tribune shall provide the list of Class members to Class Counsel and the Settlement Administrator. The Class member list shall include the following data from Tribune's files relating to the Tribune ESOP: name, address and amount of shares allocated to each Class member as of December 31, 2010.

(g) The Preliminary Funding of the Settlement Amount referenced in Section 5(d) will be held in the Settlement Account pending "Final Judgment," defined as the latest of the following:

    (1) The first date on which the Bankruptcy Court orders approving the Settlement and modifying the automatic stay, to the extent it applies, are both final and non-appealable;

    (2) if no objection to the Settlement is filed in the ERISA Litigation, then the date on which the District Court enters a judgment dismissing the ERISA Litigation with prejudice and enters an order of final approval of the Settlement;

    (3) if an objection to the Settlement is filed in the ERISA Litigation, then after the applicable date for seeking appellate review of the District Court's final approval of the Settlement has passed, assuming no appeal or request for review is filed in the ERISA Litigation; and

    (4) if an appeal is filed in the ERISA Litigation, the final resolution of that appeal (including any requests for rehearing and/or petitions for writ of certiorari) resulting in the final judicial approval of the Settlement.

(h) Fifteen business days following the Final Judgment, the adversary proceeding filed by Tribune against the Plaintiffs shall be dismissed.

Section 6. Final Funding and Allocation: Fifteen business days following the Final Judgment, provided that Tribune has not exercised its limited right under Section 12 to void the Settlement, the remaining $14.75 million of the Settlement Amount shall be paid by the Funding Parties into the Settlement Account (the "Final Funding"). Ten business days following such payment, the Settlement Amount plus any accrued interest, minus any approved Class representative enhancements and approved Class Counsel attorneys' fees and costs, (subject to Section 8), settlement administration costs, income tax liability, and the pro rata share of interest

accrued on Federal Insurance Company's portion of the Preliminary Funding (net of Federal Insurance Company's pro rata share of income taxes and tax preparation fees), will be transferred to the Tribune Company ESOP Trust (the "ESOP Trust"), and allocated to the Class members' individual Tribune ESOP accounts under an agreed-upon formula approved by the District Court. The District Court's order of final approval of the Settlement shall provide that once the Settlement Amount is transferred to the ESOP Trust, the Settlement Amount shall be considered "plan assets" of the Tribune ESOP under ERISA. If the Tribune ESOP is to be terminated in the Bankruptcy Proceedings or otherwise, the Tribune ESOP will nevertheless remain in effect solely for the purpose of receiving proceeds under the Settlement and allocation to the Class members' individual Tribune ESOP accounts, and, after such receipt and allocation and the distribution to 401(k) accounts described below shall occur, the Tribune ESOP will be terminated. The independent fiduciary appointed pursuant to Section 10 shall have fiduciary responsibility for deciding any disputes and interpretive issues regarding the allocation of the Settlement Amount to the Class members. The allocation to the Class members' individual ESOP Accounts shall take place no later than 45 business days following the transfer of the Settlement Amount to the ESOP Trust, and as soon as reasonably practicable following such allocation, the Settlement Amount allocated to the Class members' individual ESOP Accounts shall be transferred, based upon such allocation, to accounts of such Class members existing or established in the Tribune 401(k) Savings Plan ("401(k) Plan"). For Class members who are no longer participants in the 401(k) Plan as of the date of allocation, the 401(k) Plan Administrator shall re-activate or establish new 401(k) accounts for such Class members for purposes of the settlement allocation. The allocation formula shall be based upon the Class members' pro rata stock allocation under the Tribune ESOP to such members up to and including the December 31, 2010 calculation date.

Section 7.   Class Representative Enhancements: Plaintiffs may apply to the District Court for Class representative enhancements of no more than $5,000 per Class representative (separate from any allocation of the Settlement Amount to their individual Tribune ESOP accounts as set forth in Section 6), to be paid from the Settlement Amount. Such Class representative enhancement payments as authorized by the District Court shall be paid from the Settlement Amount on the date that is 10 business days following the Final Funding of the remaining $14.75 million Settlement Amount by the Funding Parties as set forth in Section 6. Defendants, Tribune and the Insurers will take no position on Plaintiffs' application.

Section 8.   Class Counsel Attorney Fees and Cost Award: Plaintiffs will apply to the District Court for (1) up to 25% of the Settlement Amount as a common fund attorneys' fee award to Class Counsel, and (2) an award of Class Counsel's reasonable costs to be paid from the Settlement Amount. Such

attorneys fees and costs as authorized by the District Court shall be paid from the Settlement Account on the date that is 10 business days following the Final Funding into the Settlement Account of the remaining $14.75 million Settlement Amount by the Funding Parties as set forth in Section 6. Defendants, Tribune and the Insurers will take no position on Plaintiffs' application, with the understanding that:

(a) the matter is left to the sound discretion of the District Court;

(b) under no circumstances may Plaintiffs apply for an amount of fees exceeding 25% of the Settlement Amount; and

(c) Plaintiffs do not have a right to withdraw from the Settlement if the District Court awards less than 25% of the Settlement Amount.

Section 9. Court Approval Contingency: The Settlement is contingent upon approval by both the Bankruptcy Court and the District Court, and no Settlement is final until final approval by both courts, including in the case of the District Court both preliminary and final approval, is obtained and both final approval orders have become non-appealable. In the event that either the Bankruptcy Court or the District Court does not finally approve the Settlement, or the final approval order entered by either court is reversed on appeal, or the Bankruptcy Court does not modify the automatic stay to the extent it applies to permit the Insurers to pay their respective portions, the Settlement Amount, including interest, less any settlement costs already incurred, shall be returned within 15 business days to the Funding Parties in amounts proportionate to their contributions. In the event that the District Court or Bankruptcy Court denies approval to any material term, the Settlement will be voidable by any Party to the Settlement or by any Funding Party.

Section 10. Independent Fiduciary Approval Contingency: The Settlement is contingent upon an independent fiduciary approving the settlement and the release of claims on behalf of the Tribune ESOP consistent with Prohibited Transaction Class Exemption 2003-39. Thereafter, the independent fiduciary will be solely responsible for deciding any disputes and interpretive issues regarding the allocation of the Settlement Amount to the Class members. Such fiduciary shall have no relationship to or interest in Tribune, Defendants or the Insurers. Class Counsel shall recommend at least two potential independent fiduciaries fully qualified to serve in such capacity. The independent fiduciary shall be selected by agreement of the Plaintiffs, Tribune and the Secretary or, if they are unable to agree, shall be selected by the District Court. The first $50,000 in fees and costs of the independent fiduciary will be paid from the Settlement Amount. The next $50,000 in fees and costs of the independent fiduciary, if any, will be the responsibility of Tribune. The fees and costs of the independent fiduciary in excess of $100,000, if any,



will be paid from the Settlement Amount. Tribune, the Plaintiffs and the Secretary all agree that Fiduciary Counselors is an acceptable independent fiduciary.

Section 11.  Other Relief:

(a) Within fifteen (15) business days following the entry of a Final Judgment in the ERISA Litigation as set forth in Section 5(g), the DOL shall terminate its investigation with respect to the Plan for violations of Title I of ERISA.

(b) For a period of three years following the entry of a Final Judgment in the ERISA Litigation as set forth in Section 5(g), Tribune, including direct and indirect subsidiaries then owned by Tribune, will provide substantive ERISA training (16 hours during the first year, and 8 hours in the successive two years) and arranged with outside vendors or outside professionals to the members of its Employee Benefits Committee, or any successor committee serving a similar function. Tribune agrees to provide an annual report to the DOL documenting its compliance with this provision, which documentation will specify (i) the name, date(s) and subject of each course or presentation, (ii) the number of hours of training provided by each course or presentation, (iii) the identity, address and phone number of the vendor or professional providing each course or presentation, and (iv) the names, job titles, ERISA plan position(s) and phone numbers of each employee who attended each course or presentation. Such training shall include presentations on industry best practices relating to ERISA plans.

(c) For a period of three years following the entry of a Final Judgment in the ERISA Litigation as set forth in 5(g), in the event an ERISA plan sponsored by Tribune or its direct or indirect subsidiaries engages in a transaction involving the purchase or sale of employer stock that is not publicly traded on a recognized securities exchange, Tribune will: (i) retain and appoint an independent fiduciary to serve as the trustee of the trust portion of such plan and (ii) monitor such trustee's retention of an independent appraiser and financial advisor and the trustee's investigation of such independent financial advisor's qualifications.

(d) For a period of three years following the entry of a Final Judgment in the ERISA Litigation as set forth in Section 5(g), GreatBanc will adopt an internal rule that requires each of its employees who, as part of their employee responsibilities, serve as fiduciaries and/or service providers to ERISA-covered plans to receive a minimum of 24 hours of continuing education related to ERISA each year. GreatBanc agrees to provide an annual report to DOL documenting its compliance with this provision, which documentation will specify (i) the name, date(s) and subject of each course or presentation, (ii) the number of hours of training provided by



        each course or presentation, (iii) the identity, address and phone number of the vendor or professional providing each course or presentation, and (iv) the names, job titles, ERISA plan position(s) and phone numbers of each employee who attended each course or presentation.

    (e)    The DOL shall withdraw all of its objections to Tribune's reorganization plans [Docket Nos. 7975, 8107, 8890, and 8910] in the Bankruptcy Proceedings and shall not file any other objection or response opposing the confirmation of Tribune's reorganization plans. Upon Bankruptcy Court approval of the Settlement pursuant to Section 5(a) hereof, Tribune shall amend its plan of reorganization, in a form mutually acceptable to the DOL, Tribune, and the co-proponents of such plan of reorganization, to provide that if this Settlement is not consummated due to any reason other than a breach by the DOL, then (i) all DOL proofs of claim filed in the Bankruptcy Proceedings shall be treated as disputed claims against Tribune and its subsidiaries, which claims' ultimate priority and amount shall be determined by a final Bankruptcy Court order which is no longer subject to appeal; (ii) the DOL's rights to seek allowance of such claims, and Tribune's and all other persons' rights to dispute or seek to subordinate such claims, shall be fully preserved; and (iii) the confirmation or consummation (and actions taken in furtherance thereof) of Tribune's plan of reorganization shall not moot and no provision in such plan shall moot the allowance or disallowance or subordination of the DOL claims or arguments with respect to the priority of such claims in any proceeding before any court or in any appeal.

Section 12.    IRS Approval Contingency: This Settlement is contingent upon (i) the IRS agreeing that the Settlement Payment is not subject to the Unrelated Business Income Tax and that the Tribune ESOP is not liable for Unrelated Business Income Tax on its share of the Tribune's S corporation taxable income from the period commencing December 31, 2007 to date; and (ii) Tribune reaching agreement with the IRS resolving tax issues related to the Tribune ESOP, and/or any interactions of third parties with respect thereto (including, without limitation, any issues pertaining to any alleged prohibited transaction or excise tax (collectively "Tribune ESOP Tax Issues")). The Settlement is contingent upon Tribune reaching agreement with the IRS prior to the date the District Court sets for the final approval hearing upon terms acceptable to Tribune in its sole and exclusive judgment on these issues and if no such agreement is reached, the Settlement will be voidable by Tribune. The order of the Bankruptcy Court approving this Settlement shall grant Tribune the authority to stipulate and bind itself, without further court order, to the allowance of a general unsecured claim by the DOL against Tribune in the amount of $3.2 million in full settlement of the DOL's claims under section 502(l) of ERISA, 29 U.S.C. section 1132(l), provided, however, that such amount shall be reduced dollar for dollar (but not below zero) by any payment made by or on behalf of Tribune to the IRS to settle or satisfy any tax

obligations it may have under 26 U.S.C. section 4975 relating to the Tribune ESOP Tax Issues and no payment shall be due or made by or on behalf of Tribune on account of such claim (the "DOL 502(l) Settlement Claim") until final resolution of the Tribune ESOP Tax Issues with the IRS. Tribune shall deliver to the DOL, and file with the Bankruptcy Court, a stipulation allowing the DOL 502(l) Settlement Claim within fifteen (15) business days following the Final Judgment.

Section 13.  The Parties' Cooperation: Parties shall provide reasonable assistance to one another to obtain necessary approvals to implement this Settlement. Specifically, GreatBanc will assist Class Counsel by providing declarations reasonably requested.

Section 14.  Third-Party Claims: Each of Plaintiffs will not oppose any efforts supported by both Defendants and Tribune to seek order(s) from any court barring any claims that have been brought, could have been brought, or that may be hereafter brought against any and all past or present Defendants in the ERISA Litigation and/or any and all of the Tribune Entities (including, without limitation, associated persons specified in the bar order) in any way related to the Tribune ESOP, and/or any interactions of third-parties with respect thereto (the "Bar Order(s)"). This provision is not intended to limit the Parties in enforcing the terms of this Settlement.

Section 15.  Dispute Resolution: Disputes over the construction or interpretation of the Settlement shall be decided by the District Court or the Bankruptcy Court, whichever is appropriate, unless otherwise agreed by the Parties. Specifically, Funding Parties agree that the District Court shall have the right to resolve any action brought concerning funding of this Settlement. Upon Final Approval of the Settlement, the District Court or the Bankruptcy Court, whichever is appropriate, shall retain jurisdiction for a period of two years in the case of the District Court, and until the Bankruptcy Proceedings are closed, in the case of the Bankruptcy Court, to enforce the terms of and decide any disputes over the Settlement.

Section 16.  Mutual Releases:

(a) Plaintiffs and the Class solely in their capacities as participants and/or beneficiaries under the Tribune ESOP shall release any and all claims whatsoever ("claims", as used in this MOU, shall include, without limitation, counterclaims and cross-claims, but does not include defenses), whether known or unknown, against any and all of the Tribune Entities, any and all past and present officers, employees, directors, principals, insurers, advisors, attorneys and agents of the Tribune Entities, and all predecessors and successors thereof, based upon, arising out of, or in any way related to, directly or indirectly, any duty, responsibility, act, or omission of Tribune or any alleged or actual Plan fiduciary in relationship or connection with the Plan, or otherwise related to the Plan. Plaintiffs

and the Class solely in their capacities as participants and/or beneficiaries under the Plan shall also release any and all claims, whether known or unknown, that were or could have been brought in the Actions, including, but not limited to, any claims that were or could have been brought in the ERISA Litigation.

(b) Plaintiffs and the Class solely in their capacities as participants and/or beneficiaries under the Plan shall release any and all claims whatsoever, whether known or unknown, against any and all past or present Defendants in the ERISA Litigation (including, without limitation, any direct or indirect subsidiaries of Defendants, any and all past and present officers, employees, directors, principals, members, affiliates, insurers, advisors, attorneys and agents of Defendants and Defendants' direct or indirect subsidiaries, and all predecessors and successors thereof) based upon, arising out of, or in any way related to, directly or indirectly, the Plan and any interactions of third-parties thereto, including but not limited to any claims that were or could have been brought in the ERISA Litigation. Plaintiffs and the Class solely in their capacities as participants and/or beneficiaries under the Plan shall release any and all claims whatsoever, whether known or unknown, against said Defendants based upon, arising out of or in any way related to, directly or indirectly, any duty responsibility, act, or omission of said Defendants or any alleged or actual Plan fiduciary in relationship or connection with the Plan.

(c) The Secretary, for and on behalf of herself and the DOL, shall release any and all claims whatsoever, which she has or may have, against the Tribune Entities and all Defendants in the ERISA Litigation (including, without limitation, any and all past or present officers, employees, directors, principals, members, affiliates, insurers, advisors, attorneys and agents of the Tribune and Defendants and Tribune's and Defendants' direct and indirect subsidiaries, and all predecessors and successors thereof) with respect to the Plan and the Secretary's investigation of the Plan, except for the DOL 502(l) Settlement Claim. The payment in full of the Settlement Amount shall, among other things, constitute satisfaction in full of all DOL claims except for the DOL 502(l) Settlement Claim. Contemporaneously with the Final Funding of the Settlement Amount, the DOL shall deliver to Tribune a stipulation confirming in such form as Tribune shall reasonably request that all the DOL claims in the Bankruptcy Proceedings, except for the DOL 502(l) Settlement Claim, are fully satisfied and released.

(d) Plaintiffs, the Tribune Entities, GreatBanc, Zell, EGI-TRB and, without limitation, any of their direct or indirect subsidiaries, and to the extent of the existing authority, if any, of Plaintiffs, the Tribune Entities, GreatBanc, Zell, EGI-TRB to execute releases on their behalf, any and all of their past and present officers, employees, directors, principals, members, affiliates, insurers, advisors, attorneys, agents and agents' direct

or indirect subsidiaries, and all predecessors and successors thereof, shall release the Secretary and the Secretary's officers, agents, attorneys, employees, and representatives, both in their individual and governmental capacities, from all claims whatsoever with respect to the Plan and the Secretary's investigation of the Plan.

(e) GreatBanc and its direct and indirect subsidiaries (the "GreatBanc Entities") shall release any and all claims, including, without limitation, by way of counterclaim or cross-claim but not including any defenses, against the Tribune Entities for: (i) indemnity, reimbursement, contribution or similar claims arising out of or related to the ERISA Litigation or any claim or demand asserted by the DOL relating to the Tribune ESOP, (ii) any violation of any of the responsibilities, obligations, or duties (if any) imposed on the Tribune Entities under "Employee Benefit Law" (that term, as used herein, shall have the meaning ascribed to it in Illinois National Insurance Company Employee Benefit Plan Fiduciary Liability Insurance Policy No. 193-25-37, a copy of the pertinent portion of which is attached hereto as Exhibit A) with respect to the Plan in their capacity (if any) as fiduciaries or parties in interest to the Plan, (iii) aiding and abetting or knowing participation in any violation (if any) of Employee Benefit Law related to the Plan, (iv) contribution, indemnity or otherwise seeking reimbursement of any amount incurred by the GreatBanc Entities in connection with: (a) the ERISA Litigation, (b) claims (if any) asserted against the GreatBanc Entities by the DOL relating to the Plan, and (c) the claims presently asserted by the IRS against the Tribune Entities or the Plan, related to the Plan, and (v) for any breach of any of the responsibilities, obligations, or duties (if any) imposed on the Tribune Entities under, or arising out of, any contracts into which Tribune and GreatBanc entered in connection with the Plan, arising from or relating to the same or related violations, breaches, acts, errors, omissions, or other wrongful conduct (if any) as asserted in the ERISA Litigation or the other claims referenced in subparts (i) through (iv) of this Section 16(e). Notwithstanding anything to the contrary in this paragraph or elsewhere in this MOU or any future settlement agreement: (1) the GreatBanc Entities do not waive or release any claims for contribution, indemnity, or reimbursement that do not fall within subparts (i) through (iv) of this Section 16(e), and (2) nothing herein shall release any claims preserved pursuant to the provisions of Section 16(l). GreatBanc is waiving any right to collect fees and charges, including extraordinary fees and costs, against any Tribune Entities arising from or related to the ERISA Litigation and/or any settlement with the DOL arising from or relating to the Tribune. For the avoidance of doubt, nothing herein shall constitute a release by GreatBanc of its right to receive its quarterly fees incurred in the ordinary course for its services as trustee of the Plan until GreatBanc is terminated as the Plan trustee or the Plan is terminated.

(f) The Tribune Entities shall release any and all claims, including, without limitation, by way of counterclaim or cross-claim but not including any defenses, against the GreatBanc Entities for: (i) indemnity, reimbursement, contribution or similar claims arising out of or related to the ERISA Litigation or any claim or demand asserted by the DOL relating to the Plan, (ii) any violation of any of the responsibilities, obligations, or duties (if any) imposed on the GreatBanc Entities under Employee Benefit Law with respect to the Plan, in their capacity (if any) as fiduciaries or parties in interest to the Plan, (iii) aiding and abetting or knowing participation in any violation (if any) of Employee Benefit Law related to the Plan, (iv) contribution, indemnity or otherwise seeking reimbursement of any amount incurred by the Tribune Entities in connection with: (a) the ERISA Litigation, (b) claims (if any) asserted against the Tribune Entities by the DOL relating to the Plan, and (c) the claims presently asserted by the IRS against the Tribune Entities or the Plan, related to the Plan, and (v) any breach of any of the responsibilities, obligations, or duties (if any) imposed on the GreatBanc Entities under, or arising out of, any contracts into which Tribune and GreatBanc entered in connection with the Plan, arising from or relating to the same or related violations, breaches, acts, errors, omissions, or other wrongful conduct (if any) as asserted in the ERISA Litigation or the other claims referenced in subparts (i) through (iv) of this Section 16(f). Notwithstanding anything to the contrary in this paragraph or elsewhere in this MOU or any future settlement agreement: (1) the Tribune Entities do not release any claims against the GreatBanc Entities for aiding and abetting breaches of fiduciary duties by officers and directors of the Tribune Entities, other than claims for aiding and abetting a violation of Employee Benefit Law with respect to a duty by such officer or director owed to the Plan; (2) the Tribune Entities do not waive or release any claims for contribution, indemnity, or reimbursement that do not fall within subparts (i) through (iv) of this Section 16(f), (3) the Tribune Entities do not release claims with respect to GreatBanc's continued service as trustee of the Plan after the date hereof, to the extent not alleging the same or related violations, breaches, acts, errors, omissions, or other wrongful conduct (if any) as asserted in the ERISA Litigation, and (4) nothing herein shall release any claims preserved pursuant to the provisions of Section 16(l).

(g) Zell and EGI-TRB shall release any and all claims, including, without limitation, by way of counterclaim or cross-claim but not including any defenses against the Tribune Entities, for contribution, indemnity or otherwise seeking reimbursement of any amount incurred by Zell and/or EGI-TRB in connection with costs and expenses incurred in responding to: (i) the ERISA Litigation, (ii) any DOL inquiry of Zell or EGI-TRB relating to the Plan, and (iii) the claims presently asserted by the IRS against the Tribune Entities, or the Plan, related to the Plan; provided, however, that nothing herein shall release any claims preserved pursuant to the provisions of Section 16(l).

(h)  The Tribune Entities shall release any and all claims, including, without limitation, by way of counterclaim or cross-claim but not including any defenses, against any and all past and present officers, employees, and directors of the Tribune Entities, in each case arising during the time period serving in such capacity (i) for any violation of any of the responsibilities, obligations, or duties (if any) imposed on one or more of them under ERISA with respect to the Plan, (ii) in their capacity (if any) as fiduciaries to the Plan, and (iii) for aiding and abetting or knowing participation in any violation (if any) of ERISA related to the Plan. The Tribune Entities shall also release any and all claims, including, without limitation, by way of counterclaim or cross-claim but not including any defenses, against EGI-TRB and any and all past and present officers, employees, and directors of the Tribune Entities, for contribution, indemnity or otherwise seeking reimbursement of any amount incurred by the Tribune Entities in connection with Tribune's portion of the settlement payment to be made pursuant to this MOU or other expenses and costs incurred in responding to: (a) the ERISA Litigation, (b) the claims asserted by the DOL against the Tribune Entities relating to the Plan, and (c) the claims presently asserted by the IRS against the Tribune Entities, or the Plan, related to the Plan. Nothing in this paragraph shall release any claims preserved pursuant to the provisions of Section 16(l).

(i)  Zell and EGI-TRB shall release any and all claims against the GreatBanc Entities relating to the issues being settled.

(j)  GreatBanc shall release any and all claims against Zell and EGI-TRB relating to the issues being settled.

(k)  The Tribune Entities, the GreatBanc Entities, Zell, EGI-TRB and the DOL shall release any and all claims against (i) Plaintiffs and the Class in their capacities as participants and/or beneficiaries under the Plan, and (ii) Class Counsel, relating to the issues being settled.

(l)  Reference is made to the causes of action asserted by the Official Committee of Unsecured Creditors (the "Committee") in the Bankruptcy Proceedings entitled *Official Committee of Unsecured Creditors v. Dennis J. FitzSimons, et al.* (the "FitzSimons Action") and *Official Committee of Unsecured Creditors v. JPMorgan Chase Bank, N.A., et al.* (the "Lender Action"; collectively with the FitzSimons Action, the "Adversary Actions"). For purposes of the following subsections of this Section 16(l), "Tribune Released Matters" shall mean those claims by the Tribune Entities identified as released in Sections 16(d), 16(f), 16(h) and 16(k). For the avoidance of doubt, the causes of action asserted by the Committee in the Adversary Actions as of the date of this MOU are not Tribune Released Matters.



(1) Notwithstanding anything to the contrary in this MOU or any later settlement agreement, the releases provided in this Section 16 and the proposed Bar Order(s) referenced in Section 14 herein, do not apply to and will not affect, impair or release: (i) any claims that, as of the date of this MOU, have been asserted by the Committee in the Adversary Actions against any defendant(s) to those Actions, whether such claims are brought or advanced by the Committee or any other party; (ii) any claims, except with respect to the Tribune Released Matters, that may hereafter be asserted in the Adversary Actions by the Committee or any other party acting as a fiduciary or in a similar capacity on behalf of the Tribune Entities or their creditors; and (iii) any direct claims asserted by creditors of the Tribune Entities (the "Creditor Actions").

(2) For the avoidance of doubt, "claims" as used in this MOU includes counterclaims and cross-claims, but does not include defenses. Nothing in this MOU or any later settlement agreement affects, impairs or releases any defenses any Parties have or may have with respect to any claims, including, without limitation, (i) defenses to claims asserted in, or related to, the Adversary Actions and/or the Creditor Actions, (ii) defenses to the claims referenced in subparts (i) through (iii) of Section 16(l)(1), and (iii) defenses to any and all claims for contribution, indemnity or reimbursement.

(3) Notwithstanding anything to the contrary in this MOU or any later settlement agreement, to the extent any claim related to the Plan is asserted against any of the Tribune Entities or the Defendants (the Tribune Entities and the Defendants are each a "Defendant Party" for the purposes of Section 16 of the MOU) by a person or entity that is not a Party, and that is not asserting a claim on behalf of a Party, to this MOU (a "New Plan Claim"), no term or provision of this MOU shall preclude a Defendant Party from seeking contribution, indemnity or otherwise seeking reimbursement from any other Defendant Party for any liability or amount it may incur arising from such New Plan Claim.

Section 17. No Admission of Liability: This Settlement is the result of a compromise, and shall never at any time for any purpose be considered as an admission or evidence of liability or responsibility on the part of the Parties or the Funding Parties.

Section 18. Confidential Information: Class Counsel hereby acknowledge and confirm that they learned confidential information in the course of their representation of Plaintiffs in the ERISA Litigation and May 4, 2011 Bankruptcy mediation, and that the District Court's Protective Order will remain in effect after Final Judgment.



Section 19. Public Comments: Except as to the DOL, any public comments by Counsel for the Parties regarding the Settlement shall be limited to the contents of public court filings and a mutually acceptable press release. No limitation of any kind is imposed upon the DOL by this Section.

Executed this 19th day of August, 2011 by: _/s/ Daniel Feinber_
CLASS COUNSEL

Executed this ___ day of August, 2011 by: _____
GREATBANC TRUST COMPANY COUNSEL

Executed this ___ day of August, 2011 by: _____
SAM ZELL AND EGI-TRB LLC COUNSEL

Executed this ___ day of August, 2011 by: _____
TRIBUNE COMPANY COUNSEL

Executed this ___ day of August, 2011 by: _____
SECRETARY OF LABOR COUNSEL

Section 19.  Public Comments: Except as to the DOL, any public comments by Counsel for the Parties regarding the Settlement shall be limited to the contents of public court filings and a mutually acceptable press release. No limitation of any kind is imposed upon the DOL by this Section.

Executed this ____ day of August, 2011 by: _____
CLASS COUNSEL

Executed this 19th day of August, 2011 by: _____
GREATBANC TRUST COMPANY COUNSEL

Executed this ____ day of August, 2011 by: _____
SAM ZELL AND EGI-TRB LLC COUNSEL

Executed this ____ day of August, 2011 by: _____
TRIBUNE COMPANY COUNSEL

Executed this ____ day of August, 2011 by: _____
SECRETARY OF LABOR COUNSEL

Section 19.  Public Comments: Except as to the DOL, any public comments by Counsel for the Parties regarding the Settlement shall be limited to the contents of public court filings and a mutually acceptable press release. No limitation of any kind is imposed upon the DOL by this Section.

Executed this ____ day of August, 2011 by: _____
                                           CLASS COUNSEL


Executed this ____ day of August, 2011 by: _____
                                           GREATBANC TRUST COMPANY COUNSEL


Executed this _17_ day of August, 2011 by: _____
                                           SAM ZELL AND EGI-TRB LLC COUNSEL


Executed this ____ day of August, 2011 by: _____
                                           TRIBUNE COMPANY COUNSEL


Executed this ____ day of August, 2011 by: _____
                                           SECRETARY OF LABOR COUNSEL

Section 19. Public Comments: Except as to the DOL, any public comments by Counsel for the Parties regarding the Settlement shall be limited to the contents of public court filings and a mutually acceptable press release. No limitation of any kind is imposed upon the DOL by this Section.

Executed this ____ day of August, 2011 by: _____
　　　　　　　　　　　　　　　　　　　　　CLASS COUNSEL

Executed this ____ day of August, 2011 by: _____
　　　　　　　　　　　　　　　　　　　　　GREATBANC TRUST COMPANY COUNSEL

Executed this ____ day of August, 2011 by: _____
　　　　　　　　　　　　　　　　　　　　　SAM ZELL AND EGI-TRB LLC COUNSEL

Executed this 19th day of August, 2011 by: _____[signature]_____
　　　　　　　　　　　　　　　　　　　　　TRIBUNE COMPANY COUNSEL

Executed this ____ day of August, 2011 by: _____
　　　　　　　　　　　　　　　　　　　　　SECRETARY OF LABOR COUNSEL

Section 19.   Public Comments: Except as to the DOL, any public comments by Counsel for the Parties regarding the Settlement shall be limited to the contents of public court filings and a mutually acceptable press release. No limitation of any kind is imposed upon the DOL by this Section.

Executed this ____ day of August, 2011 by: _____
                                            CLASS COUNSEL


Executed this ____ day of August, 2011 by: _____
                                            GREATBANC TRUST COMPANY COUNSEL


Executed this ____ day of August, 2011 by: _____
                                            SAM ZELL AND EGI-TRB LLC COUNSEL


Executed this ____ day of August, 2011 by: _____
                                            TRIBUNE COMPANY COUNSEL


Executed this  19th  day of August, 2011 by: _[signature]_____
                                            SECRETARY OF LABOR COUNSEL

## ENDORSEMENT# 5

This endorsement, effective *12:01 am    August 31, 2007*    forms a part of
policy number   *00-193-25-37*
issued to *TRIBUNE COMPANY*

by   *Illinois National Insurance Company*

### 3/01 EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending the policy) is hereby amended as follows:

Clause 3. DEFINITIONS

1. The definition of "Employee Benefit Law" is deleted in its entirety and replaced with the following:

   "Employee Benefit Law" means:

   (1) ERISA or any similar common or statutory law of the United States, Canada or any state or other jurisdiction anywhere in the world to which a Plan is subject.

   (2) Solely with respect to paragraph (2) of the definition of Wrongful Act, Employee Benefit Law shall also include Part 164 of the regulations under the Health Insurance Portability and Accountability Act of 1996 (hereinafter "HIPAA Privacy Regulations"), unemployment insurance, Social Security, government-mandated disability benefits or similar law.

   (3) In no event shall Employee Benefit Law, other than as set forth in paragraph (2) of this definition of Employee Benefit Law, include any law concerning worker's compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

2. The definition of "ERISA" is deleted in its entirety and replaced with the following:

   "ERISA" means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, Health Insurance Portability and Accountability Act of 1996 as it relates to Sections 102(b) and 104(b)(1) of ERISA, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), and including any amendment or revision thereto.

3. The definition of "ESOP" is deleted in its entirety and replaced with the following:

   "ESOP" means any employee stock ownership plan as defined in ERISA, or any other Plan under which investments are made primarily in securities of or issued by (i) the Sponsor Organization, (ii) the parent of the Sponsor Organization, (iii) any acquired Subsidiary, or (iv) any parent of any acquired Subsidiary, or whose assets at any time within twelve months prior to the inception date of this policy were comprised of 10% or more of securities of the Sponsor Organization, the parent of the Sponsor Organization, any acquired Subsidiary, or any parent of any acquired Subsidiary.

©American International Group, Inc. All rights reserved
005

99850 (8/08)                                              Page 1 of 3