# EXHIBIT C

## LIEBENTRITT DECLARATION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF DONALD J. LIEBENTRITT IN SUPPORT DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO ERISA CLAIM SETTLEMENT AND TO PERFORM ALL OBLIGATIONS THEREUNDER, (II) MODIFYING THE AUTOMATIC STAY TO THE EXTENT NECESSARY TO ALLOW INSURERS TO PAY PORTIONS OF THE SETTLEMENT AMOUNT, AND (III) GRANTING RELATED RELIEF

I, Donald J. Liebentritt, declare as follows:

1. I am Chief Restructuring Officer of Tribune Company ("Tribune"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

collectively, the "Debtors"). In my position as Chief Restructuring Officer I am responsible for, among other things, supervising the Debtors' pending chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware.

2. I have read the Debtors' Motion for an Order Pursuant to Sections 105(a), 362(d), and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 4001(a)(3) (I) Authorizing Debtors to Enter into ERISA Claim Settlement, (II) Modifying the Automatic Stay to the Extent Necessary to Allow Insurers to Pay Portions of the Settlement Amount, and (III) Granting Related Relief (the "Settlement Motion")[2] and am directly, or by and through the Debtors' personnel and advisors, familiar with all matters described therein. I am authorized to submit this declaration (the "Declaration") in support of relief requested in the Settlement Motion.

3. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) my view, based on my experience and knowledge of the claims and causes of action that are the subject matter of the settlement, (d) information supplied to me by others at the Debtors' request, or (e) as to matters involving United States bankruptcy law or rules, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or other applicable laws, reliance on my legal training and the advice of counsel or other advisors to the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

### A. BACKGROUND TO THE SETTLEMENT MOTION

4. In my capacity as Chief Restructuring Officer, I served as the representative for Tribune and its Debtor and non-Debtor subsidiaries (collectively, the "Tribune Entities"), together with counsel for the Debtors, in the non-binding mediation concerning the resolution of

---

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Settlement Motion.

certain claims, causes of action, and related matters arising from alleged violations of ERISA, in connection with the Tribune Employee Stock Ownership Plan and the Tribune Employee Stock Ownership Trust (individually or collectively, the "ESOP"), an employee retirement benefit plan (the "ERISA Mediation").

5. The claims, which were the subject of the ERISA Mediation, include the following:

    a. The class action lawsuit styled Neil, et al. v. Zell, et al., Case No. 08-cv-06833 (RRP) (N.D. Ill., Sept. 16, 2008) (as amended, the "Neil Action"),[3] for alleged violations of ERISA;

    b. Claims of GreatBanc Trust Company ("GreatBanc"), as trustee of the ESOP, against Tribune and its affiliates for contribution or indemnity arising from any determination of liability of GreatBanc in the Neil Action;

    c. The proofs of claim asserted by the United States Department of Labor ("DOL") against the Debtors for liability under ERISA for breaching their fiduciary duty to monitor and correct the performance of GreatBanc, and for knowingly participating in the April 1, 2007 stock purchase, which the DOL contends was a prohibited transaction, relying on the District Court's rulings in the Neil Action; and

    d. The proofs of claim asserted by the United States Department of the Treasury ("IRS") seeking to impose an excise tax on Tribune pursuant to section 4975 of the Internal Revenue Code, which provides for a tax on the amount involved in a prohibited transaction under ERISA, and certain other IRS claims related to the ESOP

(collectively, the "ERISA-Related Claims").

6. By the Settlement Motion, the Debtors seek authority to enter into a settlement of all but the last of the foregoing ERISA-Related Claims (the "ERISA Claim Settlement") and to

---

[3] The current complete title of the Neil Action is Dan Neil, Eric Bailey, on behalf of themselves and on behalf of all others similarly situated v. Samuel Zell, GreatBanc Trust Company, and EGI-TRB, L.L.C. The original complaint filed in the Neil Action has been amended from time to time to remove plaintiff and defendant parties and to modify the causes of action asserted therein, based in part on the Debtors' bankruptcy filing and on rulings issued by the District Court. (See First Amended Complaint, Docket No. 74 in 08-cv-6833 (RRP); Second Amended Complaint, Docket No. 102 in 08-cv-6833 (RRP); and Third Amended Complaint, Docket Nos. 204 and 403 in 08-cv-6833(RRP).)

perform all obligations thereunder. For the reasons stated in this Declaration, and after evaluation of the terms of the ERISA Claim Settlement, the Debtors believe, and I agree, that the ERISA Claim Settlement is fair and reasonable and economically favorable to Debtors, their estates, and their creditors.

### A. FACTUAL BACKGROUND TO THE ERISA CLAIMS

#### 1. The Tribune ESOP and Fiduciary Liability Insurance Policies

7. I am familiar with the Leveraged ESOP Transactions, the creation of the ESOP and its governing documents and contracts related thereto, and the insurance coverage maintained by the Debtors in connection therewith.

8. Tribune established the ESOP, effective as of January 1, 2007, as an employee retirement benefit plan, in connection with Tribune's efforts to return to private ownership through the Leveraged ESOP Transactions. On April 1, 2007, Tribune and GreatBanc, as the ESOP trustee, entered into the Tribune ESOP Purchase Agreement under which the ESOP obtained 8,928,571 shares of Tribune common stock from Tribune at a price of $28 per share in exchange for a non-recourse promissory note (the "ESOP Note") in the amount of $250 million.

9. After the ESOP acquired its shares, Tribune made a tender offer to repurchase 126 million shares of publicly-traded stock at $34 per share. Further, on December 20, 2007, a wholly-owned subsidiary of the ESOP merged with Tribune. Pursuant to the merger terms, the 118 million shares of common stock remaining after the tender offer that were not owned by Tribune or by the ESOP were redeemed for cash at a price of $34 per share. After the merger, Tribune became wholly owned by the ESOP, and thereafter converted from a C-corporation to

an S-corporation, effective as of the beginning of its 2008 tax year, thereby eliminating most federal corporate taxes.[4]

10.  Tribune had purchased a primary fiduciary liability policy from Illinois National Insurance Company (the "2007 Fiduciary Liability Policy").[5] The 2007 Fiduciary Liability Policy provides $10 million of insurance coverage to the "Insureds," which include Tribune, its employee benefit plans (including the ESOP), and their respective past, present, and future directors, officers, and employees, in their capacity as fiduciaries, administrators, or trustees, for "Loss" (including Defense Costs, damages, settlements, and judgments) arising from "Wrongful Acts" allegedly committed in connection with employee benefit plans. GreatBanc, in its capacity as trustee of the ESOP, is also an Insured under the 2007 Fiduciary Liability Policy by virtue of endorsement 19 to such policy.[6] The 2007 Fiduciary Liability Policy is followed by "follow-form" excess fiduciary liability policies (the "Excess Policies") with combined respective Limits of Liability totaling $40 million in the aggregate, for a total fiduciary liability insurance coverage in the amount of $50 million.[7]

---

[4] I am aware that each of the competing plans or reorganization proposed for the Debtors provide that upon emergence from the Debtors' chapter 11 cases, the ESOP shall be terminated and the amount of unpaid principal and interest remaining on the ESOP Note shall be forgiven pursuant to section 6.3 of the Tribune ESOP Loan Agreement by and between Tribune and GreatBanc dated April 1, 2007.

[5] Capitalized terms used but not defined in this paragraph shall have the meaning ascribed to them in the 2007 Fiduciary Liability Policy.

[6] Tribune appointed GreatBanc as trustee for the ESOP under the Trustee Engagement Agreement dated February 26, 2007. As part of that agreement, Tribune and its affiliates agreed to purchase fiduciary liability insurance coverage with limits of at least $50 million with GreatBanc, solely in its capacity as the ESOP trustee, as a Named Insured. The agreement also provided that Tribune agreed to indemnify GreatBanc and its officers, directors, and employees for "any loss, cost, expense, or other damage, including (but not limited to) attorneys' fees . . . resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations, and investigations related in any way to the performance of services" of the indemnified parties.

[7] The Excess Policies that follow form to the 2007 Fiduciary Liability Policy are provided by the following insurance companies, with the following Limits of Liability: Federal Insurance Company (Chubb), $10,000,000; AXIS Insurance Company, $10,000,000; U.S. Specialty Insurance Company, $10,000,000; and St. Paul Mercury Insurance Company (Travelers), $10,000,000.

## 2. The Neil Action

11. I am familiar with the claims and causes of action asserted in the Neil Action and am also familiar with the procedural history of that case, the pleadings filed therein, and the reported decisions issued by the District Court, including 677 F. Supp. 2d 1010 (N.D. Ill. 2009), 743 F. Supp. 2d 724 (N.D. Ill. 2010), 767 F. Supp. 2d 933 (N.D. Ill. 2011), and --- F.R.D. ---, 2011 WL 833350 (N.D. Ill. Mar. 4, 2011). In short and as the case currently stands, the named plaintiffs in the Neil Action, on behalf of themselves and the certified class (collectively, the "Neil Plaintiffs"), alleged that GreatBanc breached its duties of loyalty and prudence under ERISA as a result of the Leveraged ESOP Transactions. The Neil Plaintiffs also alleged that GreatBanc engaged in a transaction prohibited by ERISA when it approved the ESOP's purchase of unregistered stock from Tribune at an amount less than "adequate consideration."[8] As to Tribune board member Samuel Zell and EGI-TRB, the Neil Plaintiffs alleged knowing participation in the alleged breach of fiduciary duties and engaging in a transaction prohibited by ERISA.

12. In a series of rulings issued in the Neil Action to date, the District Court (i) granted partial summary judgment in favor of the Neil Plaintiffs against GreatBanc on the portion of their claim alleging that GreatBanc breached its fiduciary duties to the ESOP by approving the April 2007 stock purchase, which the District Court held was a prohibited transaction under ERISA because the stock did not meet the Tax Code's definition of a "qualifying employer securit[y];" (ii) held Zell and EGI-TRB were not subject to monetary liability for the Neil Plaintiffs' claims; and (iii) denied GreatBanc's motion for summary

---

[8] Tribune originally was named as a defendant in the Neil Action, but was dismissed after it filed for bankruptcy. The Neil Plaintiffs did not file a claim against Tribune in the bankruptcy proceedings prior to the bar date. Tribune's officers and directors and Tribune's Employee Benefits Committee and its members were also initially named and then dismissed as defendants (with the exception of Zell) in the Neil Action.

judgment on limiting damages, noting that "[p]laintiffs could claim that they lost the $250 million, and the earnings that would have been generated by those funds in a wise investment, reduced by the sum of debt forgiveness at the time the ESOP terminates." The District Court has scheduled a bench trial for April 30, 2012 with case dispositive motions due November 1, 2011.

### 3. Claims Asserted in the Debtors' Bankruptcy Proceedings

13. I am generally familiar with the Debtors' schedules of assets and liabilities and the proofs of claim asserted by creditors in the Debtors' chapter 11 cases. In connection with the ERISA Mediation and the ERISA Claim Settlement, I reviewed the following proofs of claim and related pleadings:

    a.    Tribune's schedule of liabilities relating to the Neil Action;

    b.    GreatBanc's limited objection to confirmation of both plans of reorganization,[9] in which GreatBanc has taken the position that it will seek indemnity from Tribune and its affiliates for any liabilities arising from the Neil Action, pursuant to the Trustee Engagement Agreement;

    c.    The DOL's unliquidated proof of claim dated May 29, 2009 against Tribune (Claim No. 3629, amended on April 12, 2011 by Claim No. 6747), and similar claims against 70 other Debtors (Claim Nos. 4205 to 4274, inclusive) (collectively the "DOL Claims") relating to possible violations of ERISA being investigated by the DOL (the "DOL Investigation");

    d.    The Objection of the Secretary of the United States Department of Labor to the Confirmation of Each of the Proposed Joint Plans of Reorganization for Tribune Company and Its Subsidiaries;

---

[9] The competing plans of reorganization include: (i) the Second Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries (As Modified April 26, 2011) (Docket No. 8769) (the "DCL Plan") and (ii) the Third Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, L.P., Deutsche Bank Trust Company Americas, Law Debenture Trust Company Of New York, And Wilmington Trust Company (Docket No. 8755) (the "Noteholder Plan" and, together with the DCL Plan, the "Plans").

      e.    The IRS's proof of claim against Tribune relating to tax underpayments in the aggregate amount of $351,688,793.98 (Claim No. 6254), of which $37.5 million (plus accrued interest) is claimed as a priority unsecured claim (pursuant to section 507(a)(8) of the Bankruptcy Code) for liability under section 4975 of the Internal Revenue Code, which provides for an excise tax on the amount involved in a prohibited transaction under ERISA (the "IRS Claim"); and

      f.    The IRS's objection to the Plans.

**4.    The ERISA Mediation**

14.    Over the past several months, I, on behalf of the Tribune Entities and together with the Debtors' counsel, have participated in mediation, with the assistance of Judge Gross, and subsequent extensive negotiations with all parties having an interest in the ERISA-Related Claims, to facilitate the resolution of certain claims, causes of action, and related matters arising from alleged violations of ERISA in connection with the ESOP. The parties to the ERISA Mediation were (a) the Tribune Entities; (b) the Neil Plaintiffs; (c) the DOL; (d) the IRS; (e) GreatBanc, in its capacity as trustee for the ESOP; and (f) the Insurers. The disputes submitted for mediation included (i) claims and causes of action arising from the Neil Action; (ii) any indemnification claims of GreatBanc related thereto; (iii) the DOL Claims; and (iv) the IRS Claim.

**5.    The ERISA Claim Settlement**

15.    I am familiar with the terms of the ERISA Claim Settlement set forth in the Memorandum of Understanding ("MOU") attached to the Settlement Motion as Exhibit B, and, as noted above, participated in the negotiation of the ERISA Claim Settlement. The parties to the ERISA Claim Settlement have agreed that the settlement is not an admission or suggestion of liability with respect to any of the claims or causes of action compromised therein. The MOU states specifically that "[t]his Settlement is the result of a compromise, and shall never at any

time for any purpose be considered as an admission or evidence of liability or responsibility on the part of the Parties or the Funding Parties." (See MOU § 17.)

### B. BASIS FOR APPROVAL OF THE ERISA CLAIM SETTLEMENT

16. The Debtors believe, and I agree, that entering into the ERISA Claim Settlement constitutes a reasonable exercise of the Debtors' business judgment, is in the best interests of their estates, creditors, and other parties in interest, and should be approved by this Court. The Debtors further believe, and I agree, that relief from the automatic stay should be granted so that the Insurers may participate in the settlement. The Debtors, together with their legal advisors, have reviewed the applicable provisions of the ERISA Claim Settlement and believe the ERISA Claim Settlement should be approved for four principal reasons.

17. First, the Debtors' contribution to the settlement of the Neil Action in the amount of $4.45 million (out of a total settlement amount of $32 million) carries with it a full release of any and all indemnification claims that GreatBanc may have against the Debtors in the event that GreatBanc suffers an adverse judgment in that litigation. The District Court has noted that the potential liability faced by GreatBanc in the Neil Action (which, I understand, GreatBanc, absent settlement, would vigorously dispute) could be as much as $250 million, and GreatBanc in turn has asserted that Tribune and its subsidiaries are responsible for indemnifying GreatBanc for any loss incurred in connection with its role as trustee of Tribune's ESOP. Because the amount in controversy greatly exceeds the available insurance coverage to the Debtors, and represents a significant potential claim against their estates, the Debtors believe that payment of $4.45 million (which is less than 2% of the total potential exposure) is justified. The Debtors and their estates and creditors benefit by capping litigation and claims exposure to the Debtors' $4.45 million contribution, in exchange for a release and discharge of all claims for relief, monetary or otherwise, that have been or could have been asserted by the parties against the Tribune Entities

in connection with the Neil Action. The Tribune Entities have therefore agreed to contribute $4.45 million to the cash settlement in order to obtain the benefit of a full release of any such indemnification claims by GreatBanc, and any other indemnification, contribution, or reimbursement claims derived from the Neil Action. In connection with the ERISA Claim Settlement, the Insurers required that all settlement parties, including the Tribune Entities, provide releases to all of the defendants to the Neil Action, Tribune, and Tribune's directors and officers, including Zell, from the ERISA-based claims being settled, in order to eliminate the risk of future liability for the Insurers. This release of claims by the Debtors was necessary to enable the funding of the bulk of the ERISA Claim Settlement by the Insurers.

18. Second, the settlement provides for the limitation on any existing or potential claims the DOL may have, including under ERISA section 502(l), 29 U.S.C. § 1132(l), to an allowed general unsecured claim against Tribune in the amount of $3.2 million, which is subject to a dollar-for-dollar reduction by any payment made by or on behalf of Tribune to the IRS on account of any claims of the IRS under section 4975 of the Internal Revenue Code relating to the ESOP, which are asserted for at least $37.5 million. The Debtors view the resolution of the IRS Claim as closely related to the ERISA Claim Settlement and expect such resolution to offset the claim granted to the DOL in its entirety. The Debtors retain the ability to void the ERISA Claim Settlement if a satisfactory resolution of the IRS Claim is not reached. Given that the DOL Claims were filed in completely unliquidated amounts, the potential liabilities represented by the DOL Claims have been a source of uncertainty for the Debtors and their creditor constituencies. The Debtors believe that the limitation on any existing and potential DOL claims to an allowed general unsecured claim against Tribune of $3.2 million is a reasonable compromise of those disputes and will allow them to proceed with their reorganization process without further cost,

delay, or uncertainty. In my judgment, based on my understanding of the DOL Claim, this component of the settlement provides a meaningful and valuable benefit to the Debtors' estates and creditors, particularly in light of the substantial litigation costs that the Debtors and the DOL have expended to date on these disputed claims.

19. Third, the ERISA Claim Settlement is a step toward resolution of the IRS Claim, which is asserted in the amount of at least $37.5 million, which may be entitled to priority status, and other potential tax liability of the Debtors relating to the ESOP.

20. Fourth and finally, settlement of the ERISA-Related Claims avoids the significant costs and distraction of continuing the litigation and contested proceedings that are currently pending, plus avoids the potential subsequent litigation for indemnification, contribution, or reimbursement that could result.

21. For all of these reasons, I submit on behalf of the Debtors that there are strong business justifications for having the Debtors participate in the ERISA Claim Settlement.

[Signature Page Follows]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of August 2011.

_____
By: Donald J. Liebentritt