## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Cases No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: October 19, 2011 at 10:00 a.m.**
**Objection Deadline: October 12, 2011 at 4:00 p.m.**

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORITY TO DISMISS CERTAIN INSIDER PREFERENCE ACTIONS PURSUANT TO 11 U.S.C. § 363(B) AND FED. R. OF BANKR. PRO. 6004 AND 7041

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company and its various debtor-subsidiaries (collectively, the "**Debtors**" or "**Tribune**"), by and through its undersigned counsel, hereby moves this Court for entry of an Order pursuant to Section 363(b) of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 41 of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Rule 7041 of the Bankruptcy Rules, for authority to dismiss the adversary proceedings identified in Exhibit A hereto, and respectfully submits as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

A.    **Procedural Background**

2.     On December 8, 2008 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.     On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Committee.

4.     On November 29, 2010, the Court entered the Order Granting Amended Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute, Settle and Recover Certain Causes of Action on Behalf of the Debtors' Estates Arising Under and Pursuant to 11 U.S.C. §§ 547 and 550 [D.I. 6658] (the "**Insider Preference Standing Order**").    The Insider Preference Standing Order granted the Committee authority pursuant to Sections 105, 1103 and 1109 of the Bankruptcy Code to commence and prosecute causes of action under Sections 547 and 550 of the Bankruptcy Code against certain current and former officers and directors and certain business entities for amounts received in the year prior to the Petition Date (collectively, the "**Insider Defendants**"). The Insider Preference Standing Order also provided that, until the occurrence of a "Termination Event" (as described in more detail in Paragraphs 8-9 below) defined to include April 1, 2011), neither the Debtors nor the Committee could settle the Insider Preference Actions (as defined below) without the other's consent.

5.    Complaints based on the legal actions identified in the Insider Preference Standing Order have now been filed (the "**Insider Preference Actions**"). The amounts at issue in the Insider Preference Actions vary widely, with some complaints seeking to recover transfers in excess of $1 million while other complaints seek to recover amounts as low as $3,750. Of the Insider Preference Actions, ninety-one (91) have been filed against current officers and directors still employed by the Debtors and seek approximately $27.8 million in recoveries.

6.    In December 2010, solicitation commenced with respect to two competing plans that were ultimately brought before the Court for confirmation: (i) the Debtor/Committee/Lender Plan; and (ii) the Senior Noteholder Plan (collectively, the "**Plans**"). The Debtor/Committee/Lender Plan provides that the claims set forth in the Insider Preference Complaints shall be retained by the Debtors and their estates. See Debtor/Committee/Lender Plan, Section 5.16. As the successors in interest to the Debtors and their estates, the Reorganized Debtors may enforce, sue on, settle, compromise or outright dismiss such claims. See id. The Senior Noteholder Plan provides that the claims set forth in the Insider Preference Complaints shall be placed in a litigation trust, which trust will have the authority to object to, compromise and settle such claims. See Senior Noteholder Plan, Section 5.17.

7.    In consideration of the above, and to ensure the efficient use of the estates' resources, the Insider Preference Standing Order provides that the prosecution of the Insider Preference Complaints is stayed, subject to certain limited exceptions, pending a resolution of the proposed Plans. See Insiders Preference Standing Order at p.3.

8.    On April 25, 2011, the Court entered the Order Granting Motion to Amend Definition of "Termination Event" in the Insider Preference Standing Order [D.I. 8746] (the "**Termination Event Order**"). Pursuant to the Termination Event Order, the Insider Preference

Order was amended so that the definition of "Termination Event" was amended from "April 1, 2011" to "June 15, 2011", such that neither the Debtors nor the Committee could settle the Insider Preference Actions without the other's consent prior to June 15, 2011.

9.    On June 16, 2011, the Court entered the Order Granting Second Motion to Amend Definition of "Termination Event" in the Insider Preference Standing Order [D.I. 9256] (the **"Second Termination Event Order"**).    Pursuant to the Second Termination Event Order, the proponents of the Plans were permitted to further extend the definition of "Termination Event" for a period not to exceed sixty (60) days by submission of an agreed proposed order.    On August 25, 2011, the court entered the Third Order Amending Definition of "Termination Event" in Orders Granting Official Committee of Unsecured Creditors Standing and Authority to Commence, Prosecute, Settle and Recover Certain Causes of Action on Behalf of the Debtors' Estates [D.I. 9703] (the **"Third Termination Event Order"**).    Pursuant to the Third Termination Event Order, the definition of "Termination Event" in the Insider Preference Standing Order was amended to extend the August 15, 2011 Termination Event to October 14, 2011.

**B.    Recent Developments**

10.    In June 2011, the Committee was approached by the Employee Compensation Defendants Group (the **"ECDG"**), a group of approximately 80 Insider Preference Defendants still currently employed by the Debtors and represented by Frank/Gecker LLP, with respect to the Insider Preference Actions.    The ECDG requested the ability to meet with the Committee and discuss what the ECDG believes are the harmful consequences of the Insider Preference Actions to current Tribune employees.

11.    On June 23, 2011, the ECDG and their counsel met by teleconference with the Committee and certain of its advisors. At the Committee's June 23, 2011 meeting, the ECDG gave a presentation regarding, among other things, the negative effect the Insider Preference Actions are having on employee morale and, therefore, the Debtors' business. Following this meeting, the Committee investigated and deliberated over the proper course of action with respect to the ninety-one (91) Insider Defendants who are presently Tribune employees. After due consideration, the Committee determined that while a majority of these Insider Preference Actions are too valuable to be dismissed, the Insider Preference Actions that seek recovery from current Tribune employees of transfers below $50,000 (the "**Threshold Insider Preference Actions**", each as identified in **Exhibit A** hereto) are of such minimal value, when compared to the potential deleterious effect of such actions on Tribune employees, that dismissal of those cases, nineteen (19) in all, is in the best interests of the Debtors, their creditors and estates.

12.    The Committee then approached the Debtors with a proposal to seek dismissal of the Threshold Insider Preference Actions. Among the considerations that the Committee noted was the comparison between (a) the cost of pursuing the nineteen Threshold Insider Preference Actions and (b) the fact that, even if the estates are completely successful in prosecuting every single claim, the Threshold Insider Preference Actions could only result in $594,973.17 of recoveries. Following these discussions, the Debtors agreed that the Threshold Insider Preference Actions should be dismissed.

## RELIEF REQUESTED

13.    Fed. R. Civ. P. 41 provides the Committee with the ability to voluntarily dismiss the Insider Preference Actions by filing a notice of dismissal. See Fed. R. Civ. P. 41(a)(1). By this Motion, the Committee respectfully requests that the Court enter an Order,

substantially in the form attached hereto as **Exhibit B**, authorizing the Committee to dismiss the Threshold Insider Preference Actions as an exercise of the Committee's sound business judgment in administering property of the estate.

### APPLICABLE AUTHORITY

14.     Pursuant to Sections 541 and 544 of the Bankruptcy Code, the Insider Preference Actions constitute property of the Debtors' estates. See 11 U.S.C. § 541(7) (defining as property of the estate "any interest in property that the estate acquires after the commencement of the case"); 11 U.S.C. § 544(b) (noting that the trustee shall have the power to avoid any transfer of property of the debtor as of the commencement of the bankruptcy case).  Generally, avoidance actions constituting property of the estate may be disposed of pursuant to Section 363(b) of the Bankruptcy Code. See, e.g., The Cadle Co. v. Mims, et al. (In re Moore), 608 F.3d 252, 262 (5th Cir. 2010) (noting that causes of action belonging to the estate may be sold pursuant to 11 U.S.C. § 363(b)).

15.     Section 363(b)(1) of the Bankruptcy Code permits the disposition of property of the estate "other than in the ordinary course of business"[1] after notice and a hearing. See 11 U.S.C. § 363(b)(1). See also, Fed. R. Bankr. P. 6004 (setting forth, *inter alia*, proper procedures for notice of a proposed use, sale or lease of property).[2] The disposition of estate property outside

---

[1]    The Committee believes that the relief requested herein would be considered "outside the ordinary course" of the Debtors' business.

[2]    When a trustee seeks authorization for the approval of a compromise that will result in disposition of an estate asset, the sale provisions of Section 363 of the Bankruptcy Code and the compromise procedures of Rule 9019 of the Bankruptcy Rules are simultaneously implicated. See Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3rd Cir. 1996); Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mikey Thompson Entm't Group, Inc.) 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) ("We agree with the Third Circuit that the disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim, which transaction simultaneously implicates the 'sale' provisions under section 363 as implemented by Rule 6004 and the 'compromise procedure of Rule 9191(a).") (citing Martin).

the ordinary course of business may be authorized by the Court if a "sound business purpose" for such use is demonstrated.  See Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3rd Cir. 1996) (citing In re Schipper (Fulton State Bank v. Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3rd Cir. 1986) (implicitly adopting the "sound business judgment" test of Lionel Corp. and requiring good faith); In re Del & Hudson Ry. Co., 124 B.R. 169, 178 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in the Abbotts Dairies decision); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153-54 (Bankr. D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [Section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions.") (citations omitted).

16.    In evaluating whether a sound business purpose justifies the disposition of property under Section 363(b), courts generally apply the "business judgment test." Montgomery Ward, 242 B.R. at 153.  Though "all salient factors pertaining to the proceeding" can be considered when applying the business judgment test, id., courts in this jurisdiction have generally evaluated four criteria: (i) whether there is a sound business purpose behind the use, sale or lease of the property; (ii) whether the consideration for the use, sale or lease of the property is fair; (iii) whether the debtor or trustee has provided adequate and reasonable notice of the use, sale or lease of the property; and (iv) whether the use, sale or lease of the property has been proposed in good faith.  See, e.g., In re Exaeris Inc., 380 B.R. 741, 744 (Bankr. D. Del. 2008).  So long as there is a legitimate business justification, courts generally defer to the

trustee's judgment, especially given that a trustee is granted a substantial degree of discretion in deciding how best to administer assets of the estate.  See, e.g., Martin, 91 F.3d 389, 395 (stating that a court will "defer to the trustee's judgment so long as there is a legitimate business justification"); Simontob v. Claims Prosecutor LLC (In re Lahijani), 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection.").  When a valid business judgment exists, there is a strong presumption that the trustee "acted on an informed basis, in good faith, and in honest belief that the action taken was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

17.    By operation of the Insider Preference Standing Order, the Termination Event Order, the Second Termination Event Order, and the Third Termination Event Order, the Committee has the authority to prosecute and settle the Insider Preference Actions with the Debtors' consent and upon the Court's approval after notice and hearing.  With respect to the dismissal of the Threshold Insider Preference Actions, Fed. R. Civ. P. 41(a)(1)[3] provides in pertinent part as follows:

> the Plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . .

Accordingly, the Committee, as the plaintiff in the Insider Preference Actions and having secured the consent of the Debtors, may voluntarily dismiss the Threshold Insider Preference Actions.

---

[3]    Fed. R. Civ. P. 41(a)(2) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7041.

## ARGUMENT

18.    The Committee has engaged in diligent inquiry and investigation into the efficacy of pursuing claims with values below $50,000.  The Committee has investigated the potential costs of pursuing the Threshold Insider Preference Actions to judgment.  Aside from its own review, the Committee has also conferred with the Debtors, who support the dismissal of the Threshold Insider Preference Actions.  In addition, the Committee has carefully considered the assertions that the Threshold Insider Preference Actions are a serious and negative distraction to employees and thus are detrimental to the Debtors' estates.  As a result of its inquiries, the Committee believes that the harm of pursuing the Threshold Insider Preference Actions outweighs the benefit of potentially recovering on claims worth less than $50,000 each.  Only after concluding this multi-faceted investigation did the Committee determine that dismissal of the Threshold Insider Preference Actions is in the best interests of the Debtors, their estates and creditors.

19.    The Committee's decision to seek dismissal of the Threshold Insider Preference Actions clearly falls within its business judgment.  There are several business justifications for dismissing the Threshold Insider Preference Actions, including: (i) the relatively modest recovery that could be obtained even if every single one of the claims were successfully prosecuted, (ii) the benefit of allowing employees who are being sued for modest sums to avoid being distracted by these lawsuits, and (iii) the employee goodwill that would be generated by dismissing lawsuits where asserted recoveries are modest.

20.    Furthermore, it is abundantly clear that the Committee has proposed the dismissal of the Threshold Insider Preference Actions in good faith.  The Committee consulted with the

Debtors regarding this course of action and verified that the $50,000 threshold is reasonable and fully supported by the Debtors.

WHEREFORE, the Committee respectfully requests that the Court enter an Order substantially in the form attached hereto as **Exhibit B**, authorizing the Committee to dismiss the Threshold Insider Preference Adversary Actions.

Dated: September 23, 2011
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
James S. Green, Jr. (No. 4406)
J. Landon Ellis (No. 4852)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
Douglas E. Deutsch
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

- and -

**ZUCKERMAN SPAEDER LLP**
Graeme W. Bush
James Sottile
1800 M Street, Suite 1000
Washington, DC 20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

*Co-Counsel to the Official Committee
of Unsecured Creditors*