```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                          )   Case No. 08-13141-KJC
                                )
TRIBUNE COMPANY,                )
                                )   Chapter 11
                                )
                                )   Courtroom 5
                                )   824 Market Street
            Debtors.            )   Wilmington, Delaware
                                )
                                )   March 7, 2011
                                )   1:30 p.m.

                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE KEVIN J. CAREY
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:                Sidley Austin, LLP
                                BY: JAMES CONLAN, ESQ.
                                BY: JAMES BENDERNAGEL, ESQ.
                                BY: KEVIN LANTRY, ESQ.
                                BY: CANDICE KLINE, ESQ.
                                BY: JILLIAN LUDWIG, ESQ.
                                BY: BRETT MYRICK, ESQ.
                                BY: ALLISON STROMBERG, ESQ.
                                One South Dearborn
                                Chicago, IL 60603
                                (312) 853-7000


ECRO:                           AL LUGANO

Transcription Service:          DIAZ DATA SERVICES
                                331 Schuylkill Street
                                Harrisburg, Pennsylvania 17110
                                (717) 233-6664
                                www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
APPEARANCES:
(Continued)
```

For the Debtors:               Cole, Schotz, Meisel, Forman
                               & Leonard, P.A.
                               BY: NORMAN PERNICK, ESQ.
                               500 Delaware Ave., Ste. 1410
                               Wilmington, DE 19801
                               (302) 652-3131

                               Tribune Company
                               BY: DON LIEBENTRITT
                               BY: GARY WEITMAN
                               (312) 853-7163

For JP Morgan:                 Davis Polk & Wardwell
                               BY: ELLIOT MOSKOWITZ, ESQ.
                               BY: BENJAMIN KAMINETZKY, ESQ.
                               BY: DONALD S. BERNSTEIN, ESQ.
                               BY: MARK COLLINS, ESQ.
                               BY: DAMIAN S. SCHAIBLE, ESQ.
                               BY: BOB STEARN, ESQ.
                               BY: MICHAEL RUSSANO, ESQ.
                               450 Lexington Avenue
                               New York, NY 10017
                               (212) 450-4000

For Wilmington Trust Co.:      Brown Rudnick
                               BY: MARTIN SIEGEL, ESQ.
                               BY: ROBERT STARK, ESQ.
                               Seven Times Square
                               New York, NY 10036
                               (212) 209-4800

                               Sullivan Hazeltine Allinson,
                               LLC
                               BY:  WILLIAM SULLIVAN, ESQ.
                               4 East 8th Street, Suite 400
                               Wilmington, DE  199801
                               (302)250-4375

For Aurelius Capital:          Akin Gump Strauss Hauer & Feld
                               BY: DAVID ZENSKY, ESQ.
                               BY: ABID QURESHI, ESQ
                               BY: MITCH HURLEY, ESQ.
                               BY: DEBORAH J. NEWMAN, ESQ.
                               BY: PHIL DUBLIN, ESQ.
                               BY: NANCY CHUNG, ESQ.
                               One Bryant Park
                               New York, NY 10036
                               (212) 872-1000

APPEARANCES:
(Continued)

For Aurelius Capital:                    Ashby & Geddes
                                         BY: BILL BOWDEN, ESQ.
                                         BY: AMANDA WINFREE, ESQ.
                                         500 Delaware Ave.
                                         P.O. Box 1150
                                         Wilmington, DE 19899
                                         (302) 654-1888

For Law Debenture:                       Bifferato Gentilotti
                                         BY: GARVAN MCDANIEL, ESQ.
                                         800 North King Street
                                         Plaza Level
                                         Wilmington, DE 19801
                                         (302) 429-1900

                                         Kasowitz, Benson, Torres &
                                         Friedman
                                         BY: SHERON KORPUS, ESQ.
                                         BY: DAVID ROSNER, ESQ.
                                         1633 Broadway
                                         New York, NY 10019
                                         (212) 506-1726

For Official Committee
of Unsecured Creditors:                  Chadbourne & Parke, LLP
                                         BY: DAVID LEMAY, ESQ.
                                         BY: THOMAS MCCORMACK, ESQ.
                                         BY: HOWARD SEIFE, ESQ.
                                         BY: ANDREW ROSENBLUM, ESQ.
                                         30 Rockefeller Plaza
                                         New York, NY 10112
                                         (212) 408-5100

                                         Landis, Rath & Cobb
                                         BY: ADAM G. LANDIS, ESQ.
                                         BY: DANIEl B. RATH, ESQ.
                                         919 Market Street, Suite 1800
                                         Wilmington, DE 19801
                                         (302) 467-4400

                                         Zuckerman Spaeder
                                         BY: GRAEM BUSH, ESQ.
                                         BY: ANDREW GOLDFARB, ESQ.
                                         BY: JAMES SOTTILE, ESQ.
                                         1800 M Street, NW
                                         Suite 1000
                                         Washington, DC 20036
                                         (202) 778-1800

APPEARANCES:
(Continued)

For Merrill Lynch:                    Potter, Anderson & Corroon
                                      BY: LAURIE S. SILVERSTEIN, ESQ
                                      BY: R. STEPHEN MCNEILL, ESQ.
                                      Hercules Plaza
                                      1313 North Market Street
                                      6th Floor
                                      Wilmington, DE 19801
                                      (302) 984-6000

For Oaktree/Angelo Gordon:            Young, Conaway, Stargatt &
                                      Taylor
                                      BY: ROBERT BRADY, ESQ.
                                      BY: BLAKE N. CLEARY, ESQ.
                                      The Brandywine Building
                                      1000 West Street, 17th Floor
                                      Wilmington, DE 19801
                                      (302) 571-6600

                                      Dewey LeBouef
                                      BY: BRUCE BENNETT, ESQ.
                                      BY: JAMES JOHNSTON, ESQ.
                                      BY: JOSHUA MESTER, ESQ.
                                      333 South Grand Avenue
                                      Suite 2600
                                      Los Angeles, CA 90071
                                      (213) 621-6000

For Special Committee of the
Board of Directors:                   Jones Day
                                      BY: LYNN MARVIN, ESQ.
                                      77 West Wacker
                                      Chicago, Illinois 60601
                                      (312) 782-3939

For DBTCA:                            McCarter & English
                                      BY: KATHARINE MAYER, ESQ.
                                      BY: DAVID ADLER, ESQ.
                                      405 N. King Street, 8th Fl.
                                      Wilmington, DE  19801
                                      (302) 984-6312

For Citigroup:                        Paul Weiss Rifkind Warton &
                                      Garrison, LLP
                                      BY:  ANDREW GORDON, ESQ.
                                      1285 Avenue of the Americas
                                      New York, NY 10019-6064
                                      (212) 373-3000

APPEARANCES:
(Continued)

For Brigade Capital:               Stutman Treister & Glatt
                                   BY: ISAAC PACHULSKI, ESQ.
                                   1901 Avenue of the Stars
                                   12th Floor
                                   Los Angeles, CA  90067

For Sam Zell & EGI-TRB:            Blank Rome
                                   BY: DAVID W. CARICKHOFF, ESQ.
                                   1201 Market Street, Ste. 800
                                   Wilmington, DE  19801
                                   (302) 425-6434

                                   Jenner & Block
                                   BY: ANDREW VAIL, ESQ.
                                   BY: CATHERINE STEEGE, ESQ.
                                   353 N. Clark Street
                                   Chicago, IL  60654-3456
                                   (312) 923-2952

For U. S. Trustee:                 Office of the U. S. Trustee
        `                          BY:  DAVID KLAUDER, ESQ.
                                   844 King Street, Ste. 2207
                                   Wilmington, DE  19801
                                   (302) 573-6491

For Barclays:                      Edwards Angell Palmer & Dodge
                                   BY: MICHELLE MARINO, ESQ.
                                   919 N. Market St., 15th Floor
                                   Wilmington, DE  19801
                                   (302) 777-7770

TELEPHONIC APPEARANCES:

For Jason D Abbruzzese:            Realm Partners
                                   BY: JASON D. ABBRUZZESE
                                   (212) 612-1441

For Partner Fund Management:       Vinson & Elkins, LLP
                                   BY: STEVEN ABRAMOWITZ, ESQ.
                                   (212)237-0137

For Grey Wolf Capital:             Grey Wolf Capital
                                   BY: JEFFREY ARMSTRONG, ESQ.
                                   (914) 251-8264

TELEPHONIC APPEARANCES:
(Continued)

For Official Committee of
Unsecured Creditors:            Chadbourne & Park, LLP
                                BY:  MARC D. ASHLEY, ESQ.
                                (212) 408-5194
                                BY: DOUGLAS DEUTSCH, ESQ.
                                (212) 408-5169
                                BY: JESSICA MARRERO, ESQ.
                                (212)408-5100
                                BY: MARC ROITMAN, ESQ.
                                (212)408-5271
                                BY: FRANK VASQUEZ, ESQ.
                                (212)408-5111

                                Zuckerman & Spaeder, LLP
                                BY: GRAEM BUSH, ESQ.
                                BY: JAMES SOTTILE, ESQ.
                                BY: ANDREW GOLDFARB, ESQ.
                                (202) 778-1800

                                Landis Rath & Cobb, LLP
                                BY: MATTHEW B. MCGUIRE, ESQ.
                                (302)467-4431

For Barclays:                   Mayer Brown, LLP
                                BY: JEAN-MARIE ATAMIAN, ESQ.
                                (212)506-2678
                                BY: MICHAEL L. SIMES, ESQ.
                                (212) 506-2607
                                BY: AMIT TREHAM, ESQ.
                                (212) 506-2198

                                Latham & Watkins, LLP
                                BY: JASON B. SANJANA, ESQ.
                                (212) 906-4587

                                Barclays Capital, Inc.
                                BY: EITAN MELAMED
                                (310)907-0455
                                BY: BEN WILSON
                                (212)412-7642

For SuttonBrook Capital:        SuttonBrook Capital
                                Management, LP
                                BY: CAROL L. BALE, ESQ.
                                (212) 588-6640

```
TELEPHONIC APPEARANCES:
(Continued)

For Credit Agreement
Lenders:                      Angelo Gordon & Co., LP
                              BY: GAVIN BAIERA, ESQ.
                              (212)692-0217

                              Wilmer Cutler Pickering Hale &
                              Dorr
                              BY: MICHELLE GOLDIS, ESQ.
                              (212) 295-6329
                              ANDREW N. GOLDMAN, ESQ.
                              (212)230-8836

For Jon Berke:                DebtWire
                              BY: JON BERKE
                              (212) 686-2741

For Kramer Levin:             Kramer Levin Naftalis &
                              Frankel, LLP
                              BY: DAVID E BLABEY, JR.
                              (212) 715-9100

For Jefferies & Company:      Jefferies & Company
                              BY: JUSTIN BRASS, ESQ.
                              (203) 708-5847

For Longacre Management Fund: Longacre Management Fund
                              BY: JOHN BRECKER
                              (212) 259-4304

For Dow Jones News Wires:     Dow Jones & Company
                              BY: PEG BRICKLEY
                              (215) 462-0953

For Wilmington Trust:         Brown Rudnick, LLP
                              BY:  KATHERINE BROMBERG, ESQ.
                              (212) 209-4929

For Monarch Alternative
Capital, LP:                  Monarch Alternative Capital LP
                              BY: ROBERT G. BURNS, ESQ.
                              (212) 554-1768

For Goldman Sachs & Co.:      Goldman Sachs & Company
                              BY: SCOTT BYNUM, ESQ.
                              (212) 902-8060
                              BY: LEXI FALLON, ESQ.
                              (212)902-0791
```

TELEPHONIC APPEARANCES:
(Continued)

For Bank of America:              O'Melveny & Myers
                                  BY: DANIEL CANTOR, ESQ.
                                  (212) 326-2000
                                  BY: DANIEL S. SHAMAH, ESQ.
                                  (212)326-2138

                                  Bank of America
                                  BY: ESTHER CHUNG, ESQ.
                                  (646) 855-6705

For Cooperstown Capital
Management, LLC:                  Cooperstown Capital Management
                                  BY: PETER COURI, ESQ.
                                  (203) 552-6900

For T. Rowe Price:                Bingham McCutchen, LLP
                                  BY: MICHAEL DAGOSTINO, ESQ.
                                  (415)393-2053

For Tribune:                      DK Partners
                                  BY: EPHRAIM DIAMOND, ESQ.
                                  (646) 282-5841
                                  BY: DAVE ELDERSVELD, ESQ.
                                  (312)222-4707

                                  Sidley Austin
                                  BY: GREG DEMO, ESQ.
                                  (312) 853-7758
                                  BY: KEN KANSA, ESQ.
                                  (312) 853-7163

                                  Tribune Company
                                  BY: GARY WEITMAN, ESQ.
                                  (312) 222-3394

For Citibank:                     Paul Weiss Rifkind Wharton
                                  BY: KIRA DAVIS, ESQ.
                                  (212) 373-3000
                                  BY: AMY DIETERICH, ESQ.
                                  (212)373-3688
                                  BY: ANDREW GORDON, ESQ.
                                  (212)373-3543
                                  BY: ANDREW LEVY, ESQ.
                                  (202)223-7328
                                  BY: SHANNON PENNOCK, ESQ.
                                  (212) 373-3000

TELEPHONIC APPEARANCES:
(Continued)

For Arrowgrass Management:      Arrowgrass Capital Partners,
                                U.S., LP
                                BY: ARIF GANGAT, ESQ.
                                (212) 584-1160
                                BY: DAVID DUNN, ESQ.
                                (212) 584-5946

                                Aurelius Capital Management LP
                                BY: MATTHEW A. ZLOTO, ESQ.
                                (646) 445-6518

For Oracle America Inc.:        Magnozzi & Kye, LLP
                                BY: AMISH R. DOSHI, ESQ.
                                (516) 299-5556

For Aurelius Capital
Management:
                                Akin Gump Strauss Hauer & Feld
                                BY: JASON GOLDSMITH, ESQ.
                                (212)872-1000
                                BY: SHAYA ROCHESTER, ESQ.
                                (212) 872-1076

                                Friedman Kaplan Seller &
                                Adelman
                                BY: GREGORY W. FOX, ESQ.
                                (212) 833-1177
                                BY: EDWARD FRIEDMAN, ESQ.

For George Dougherty:           Grippo & Elden, LLC
                                BY: GEORGE DOUGHERTY, ESQ.
                                (312) 704-7700

For Silver Point Capital:       Silver Point Capital
                                BY: MATTHEW EHMER, ESQ.
                                (203) 542-4219

For Special Committee of the
Board of Directors:             Jones Day
                                BY: BRAD ERENS, ESQ.
                                (312) 269-4050
                                BY: DAVID SHAFER, ESQ.
                                (312)782-3939

For Mina Faltas:                Viking Global Investors
                                BY: MINA FALTAS
                                (212) 672-7011

FOR Bennett Management:         Lucy Galbraith
                                BY: LUCY GALBRAITH, ESQ.
                                (203) 353-3101

TELEPHONIC APPEARANCES:
(Continued)

For Morgan  Stanley:              Weil Gotshal & Manges, LLP
                                  BY: ASHISH D. GANDHI, ESQ.
                                  (212) 310-8024
                                  BY: DAVID LITVACK, ESQ.
                                  (212)310-8361
                                  BY: ANDREA SAAVEDRA, ESQ.
                                  (212) 310-8544

                                  Morgan Stanley
                                  BY: BRIAN MCGOWAN, ESQ.
                                  (212) 761-1596
For Wells Fargo:                  White & Case
                                  BY: SCOTT GREISSMAN, ESQ.
                                  (212) 819-8567

For Serengeti Asset
Management:                       Serengeti Asset Management
                                  BY: NICHOLAS HEILBUT, ESQ.
                                  (212) 466-2167

For Anna Kalenchits:              Anna Kalenchits
                                  (212)723-1808

For Nomura Securities:            Nomura Securities
                                  BY: ARTHUR KAVALIS, ESQ.
                                  (212)667-2370

For JPMorgan Chase Bank:          Davis Polk & Wardwell, LLP
                                  BY: PETER KIM, ESQ.
                                  (212) 450-3028
                                  BY: SHACHAR MINKOVE, ESQ.
                                  (212) 834-7174

For Partner Fund Management:      Vinson & Elkins, LLP
                                  BY: DOV KLEINER, ESQ.
                                  BY: LANCE A. MULHERN, ESQ.
                                  (212) 237-0184

For UBS:                          UBS
                                  BY: LAWRENCE LAWLER, ESQ.
                                  (212) 821-5422

For Oaktree Capital
Management:                       Oaktree Capital Management
                                  BY: KENNETH C. LIANG, ESQ.
                                  (213) 830-6422
For Brigade Capital
Management:                       Brigade Capital Management
                                  BY: NEIL LOSQUADRO
                                  (212) 745- 9758

TELEPHONIC APPEARANCES:
(Continued)

For Great Banc Trust Co.:        Morgan Lewis & Bockius, LLP
                                 BY: RACHEL MAUCERI, ESQ.
                                 (215) 963-5000


For Law Debenture Trust:         Kasowitz Benson Torres &
                                 Friedman
                                 BY: CHRISTINE MONTENEGRO, ESQ.
                                 (212)506-1715
                                 BY: MATTHEW STEIN, ESQ.
                                 (212) 506-1717


For Pryor Cashman, LLP:          Pryor Cashman, LLP
                                 BY: TINA MOSS, ESQ.
                                 (212) 326-0421


For Chandler Bigelow:            Sperling & Slater
                                 BY: CLAIRE P. MURPHY, ESQ.
                                 (312) 641-3200


For Merrill Lynch Capital:       Kaye Scholer, LLP
                                 BY: MADLYN G. PRIMOFF, ESQ.
                                 (212) 836-7042
                                 BY: JANE PARVER, ESQ.
                                 (212)836-8510


For Royal Bank of Scotland:      Royal Bank of Scotland
                                 BY: COURTNEY ROGERS, ESQ.
                                 (203) 897-4815


For Eos Partners:                Eos Partners
                                 BY: MIKE J. SCHOTT, ESQ.
                                 (212) 593-4046


For Canyon Partners:             Canyon Partners
                                 BY: CHANEY M. SHEFFELD, ESQ.
                                 (310) 272-1062


For Prof. Expert:                Raymond James
                                 BY: ROBERT SCHWARTZ, ESQ.
                                 (212) 872-7441


For Non-Party:                   The Seaport Group
                                 BY: KENNETH SMALLEY, ESQ.
                                 (212) 616-7763


For Miller Tabak Roberts
Securities:                      Miller Tabak Roberts
                                 Securities, LLC
                                 BY: ANDREW M THAU, ESQ.
                                 (212) 692-5178

TELEPHONIC APPEARANCES:
(Continued)

For One East Partners:          One East Partners
                                BY: SINA TOUSSI, ESQ.
                                (212) 230-4510

For Contrarian Capital
Management:                     Contrarian Capital Management
                                BY: JOSHUA TRUMP, ESQ.
                                (203) 862-8299

For Alvarez & Marsal, Inc.:     Alvarez & Marsal, Inc.
                                BY: BRIAN WHITTMAN, ESQ.
                                (312) 601-4227

For Insured:                    Smith management
                                BY: JENNIFER WILD, ESQ.
                                (212) 418-6877

For Macquarie Capital:          Macquarie Capital (USA)
                                BY: RUSHABH VORA, ESQ.
                                (212) 231-6311

1   WILMINGTON, DELAWARE, MONDAY, MARCH 7, 2011, 1:30 P.M

2             THE COURT:  Good afternoon, everyone.

3             MR. PERNICK:  Good afternoon, Your Honor.

4             UNIDENTIFIED MALE:  Good afternoon, Your Honor.

5             MR. PERNICK:  Good afternoon, Your Honor.  Norman

6   Pernick from Cole Schotz on behalf of the debtor, Tribune.

7             Your Honor, just a quick review of the agenda.  I

8   think, based on the hearings last week and the Court's

9   comments, we probably should start with item number four --

10            THE COURT:  All right.

11            MR. PERNICK:  -- which are the -- get the

12  preliminary matters and handle those first.  And I know that

13  Aurelius filed, I believe, two letters this morning before

14  the hearing, which are not on the agenda, and I'll leave it

15  up to them.  I'm not sure if they want those -- I think they

16  want them heard today, but I'm not sure.

17            THE COURT:  I haven't seen them.  All right.

18  Number four.

19            MR. QURESHI:  Do you have the agenda?  Good

20  afternoon, Your Honor.  For the record, Abid Qureshi, Akin,

21  Gump, Strauss, Hauer and Feld on behalf of Aurelius Capital

22  Management.

23            Your Honor, we sent, late last night or perhaps

24  it was already past midnight, early this morning, a letter

25  to the Court regarding the discovery issues with Citibank.

1          THE COURT:  Did you deliver to chambers a copy?

2          MR. QURESHI:  I'm not -- I believe a copy was

3  delivered to chambers, and I do have another copy that I'm

4  obviously prepared to hand up, Your Honor.

5          THE COURT:  Well, if you'd like me to see it, I

6  think you'll have to.  Thank you.

7          MR. QURESHI:  Thank you, Your Honor.  I'll

8  describe very -- very briefly what the -- what the issue is

9  here.  So we've had, over the last couple of weeks, a number

10  of discovery issues with Citibank or Citigroup, I should

11  say, and they have been put over.

12          THE COURT:  Go ahead.

13          MR. QURESHI:  Thank you.  And they have been put

14  over to week to week as we have resolved the majority of the

15  issues.  Last week, Your Honor, it was on the calendar

16  again, and shortly before the hearing, literally about 15

17  minutes before the hearing, Citigroup agreed to produce the

18  documents that we had requested, and therefore, we -- we

19  took the matter off the calendar last week and rolled it

20  forward to this week.

21          So, Your Honor, here is the issue that has now

22  arisen.  At some point prior to the examiner's report being

23  issued, Citigroup produced to the examiner, or perhaps it

24  was -- it was to the committee before then, but they

25  produced one version of an internal valuation analysis that

1   was prepared shortly before the closing of step two.  That

2   version, I can speak about openly because it was part of the

3   examiner's report and, therefore, part of the public record.

4               Julie Persily, who at the time of step two was

5   the head of Citigroup's leverage -- Leveraged Finance group,

6   she testified to the examiner that that solvency analysis

7   represented -- her words -- "a bust case or a break-in case"

8   and that it did not represent Citigroup's view of the fair-

9   market value of Tribune's assets at that time.  Now, during

10  that interview, Your Honor, Citigroup's lawyer also added

11  that this particular solvency analysis did not reflect what

12  Citigroup thought to be appropriate assumptions and that,

13  indeed, Citigroup did not view these assumptions to be

14  reasonable marketplace assumptions.

15              We then took Ms. Persily's testimony -- her

16  deposition, rather, and she testified at her deposition that

17  she couldn't remember what led to this analysis being done.

18  She downplayed the analysis.  She didn't give us any

19  suggestion at her deposition that -- that there were

20  additional versions of this analysis.  We then took the

21  deposition of a gentleman by the name of Mr. Sarnobat.  In

22  2007, Mr. Sarnobat was an associate in the Leveraged Finance

23  group at Citi.  His deposition took place on February 27th.

24              Now, during his deposition, he revealed for the

25  very first time that although the version of this solvency

1    analysis that we had and that the examiner had, had in his

2    view, unrealistic assumptions, that there were, indeed, many

3    other iterations of that solvency analysis that had very

4    different assumptions.  And so, of course, following his

5    deposition, we wrote a letter, and we asked Citigroup to

6    immediately produce these additional solvency analyses, and,

7    Your Honor, this is the dispute I was referring to that

8    settled, so to speak, 10 minutes before last week's hearing.

9    Immediately before the hearing, I received an email from

10   Citigroup's counsel indicating that they would, indeed,

11   produce the documents.  I then asked right away if they

12   would also agree to make the relevant witness, whoever that

13   may be once we see the documents, available for a

14   deposition, and his response was, "Why don't you wait until

15   you see the documents," which was, of course, fair in the

16   circumstances.

17           On March 2nd, we received them.  And much to our

18   surprise, Your Honor, we got 123 documents that showed that

19   from December 13th to December 18th -- we recall step two

20   closed on December the 20th, so we're in the week prior to

21   the closing of step two -- that there were ten versions of a

22   discounted cash-flow analysis of Tribune, ten additional

23   iterations of the same document that the examiner had.

24           Now, I've got to refrain, I suppose, from talking

25   about what those analyses showed given that they were marked

1  by Citi as highly confidential, and thus, I suppose, I

2  cannot talk publicly about what they show.  It is set forth

3  in the letter, and, Your Honor, we have attached the

4  documents to the letter.

5      And so we obviously think these are documents

6  that should have been produced a long time ago.  Why they

7  weren't produced to the examiner, why they weren't produced

8  to the committee, and why they weren't produced in response

9  to Aurelius's requests, we simply don't know.  Clearly,

10  highly relevant to the issues that are before the Court.

11      Now, I'm sure Citigroup -- well, let me step

12  back.  We're asking for two forms of relief, Your Honor.  A

13  Mr. Dilworth, who is a managing director, or at least was at

14  the time a managing director in Citigroup's Leveraged

15  Finance group, is on many of the emails and appears, from

16  the documents that we have received, to have been integrally

17  involved in the creation of these analyses and the running

18  of these various iterations.

19      We have requested a deposition of Mr. Dilworth.

20  We've asked that it occur sometime either this week or over

21  the weekend so we have a chance to present Your Honor with

22  whatever testimony results from that, and we've also asked

23  Your Honor that Citigroup run a search of Mr. Dilworth's

24  files for a very limited period, from December 1st to

25  December the 18th.  So -- or actually, I think it's December

1   the 20th.  So it's -- it's less than a three-week period

2   when we know these analyses were done.  Your Honor, as far

3   as -- as far as we know, there was never an electronic

4   search done of anybody in the -- in the Leveraged Finance

5   group during this timeframe.

6           Now, Citigroup, when they are heard, will

7   undoubtedly raise with Your Honor that over the course of

8   the meet-and-confers, there were many conversations between

9   the noteholders and Citi about the custodians, and at one

10  point, it was agreed that we'd dropped our request for Mr.

11  Dilworth to be a custodian, and that is 100-percent

12  accurate.  We did.  But, of course, Your Honor, we did so

13  without having any understanding of what he had done, the

14  types of analysis that he was involved in.  Had that

15  information been known to us, had we seen these documents

16  that, in all fairness, should have been produced long ago,

17  without a doubt, we would have requested that Mr. Dilworth

18  be included as a custodian.

19          And so the search, I'm sure, can be done with

20  relatively little burden given how extremely narrow it is,

21  just a three-week period, and we think in fairness, Your

22  Honor, that we should, given how critical and how central

23  these documents are, have an opportunity to examine Mr.

24  Dilworth about them.  As I've said, the documents were

25  attached to the letter, as well as some relevant deposition

1   testimony that I -- that I referenced.  So unless the Court

2   has any questions, that's all I have.

3              THE COURT:  I do not.

4              MR. QURESHI:  Thank you.

5              MR. GORDON:  Your Honor, good afternoon.  Andrew

6   Gordon with Paul Weiss for Citigroup.

7              It's unfortunate, if you read the letter, as

8   often is the case, Aurelius, they shoot first, ask questions

9   later, and they accuse us of improperly withholding

10  documents.  And it's -- it's troubling, Your Honor, because

11  we received this letter at 2:15.  Before we could even read

12  it, it had magically appeared across the wires and, Your

13  Honor, I guess Aurelius feels that they want to generate

14  headlines to deflect from what's going to go on this week.

15             We have not withheld any documents, as we had --

16  inappropriately, as we had said the last time we were here.

17  We have produced over 260,000.  We've done it four times.

18  Every time we've gotten a request, we've exceeded.  We've

19  produced witnesses, including witnesses who have testified

20  about this document.  The facts are, in October 2009, Your

21  Honor, an analysis, a financial analysis, was produced.  As

22  witnesses have testified and as I will represent, in

23  December, Citigroup was faced with a decision as to whether

24  to fund step two, and the lawyers were all over that

25  decision-making process.  So we withheld documents as

1    privileged, including documents that led to this analysis

2    because the lawyers were all over the process.

3            It was a lawyer-driven exercise, and at the last

4    deposition we had, there was testimony about iterations of

5    this document, and Your Honor, the idea that that was the

6    first time that people found out that there were iterations

7    of this is complete nonsense.  In August, we produced an

8    email that says, "Here is the latest version," and the

9    document is entitled, you know, the final version.  So I'm

10    not sure that this magically -- this notion that there were

11    other versions appeared, but we had withheld those versions

12    as privileged because of lawyer involvement.

13            When we were asked to produce them, Your Honor,

14    rather than trouble you with a dispute over versions of a

15    document that had already been produced -- I mean, you would

16    think the final version would be the most important version,

17    but apparently --

18            THE COURT:  Only part of the story much of the

19    time.

20            MR. GORDON:  Well, that -- that might be, but

21    rather than trouble you, Your Honor, we produced those

22    iterations, and we -- the documents, in our view, show

23    nothing new.  They don't alter anything regarding Citi's

24    view of the transaction or the testimony that Citi's -- the

25    people, the decision-makers felt that Tribune would be

1  solvent after step two.  But unfortunately, what they've --

2  Aurelius has done is they've taken this agreement to avoid a

3  dispute and now used it as a basis for getting a deposition

4  of Mr. Dilworth and his documents, but, Your Honor, with all

5  due respect, it's just simply an end-run, plain and simple,

6  around the agreement.

7          Two weeks ago, we were here.  We were resisting

8  producing additional documents.  Your Honor said, "Look, I

9  will let you have some more documents, but very little,"

10  were your words, additional discovery.  You instructed us to

11  meet and confer.  We had an agreement.  They said -- we said

12  five custodians, they gave us five names.  They gave us

13  specific dates, specific terms.  Mr. Dilworth was not one of

14  the custodians they sought, and that should be the end of

15  it.  But now, they've come to you and they said, "Oh, well,

16  somehow Mr. Dilworth's involvement is something new, and had

17  we known this, we would have put him on the list."  But,

18  Your Honor, that cannot be the case.  Here are the facts.

19          In July, we informed the examiner on the record,

20  Page 193 of Ms. Persily's transcript, that the analysis

21  we're all talking about was from Mr. Dilworth's files.  Ms.

22  Persily testified Mr. Dilworth was all over everything.  He

23  was on the deal team.  He was central to the transaction.

24  He was in charge of examining the VRC opinion and

25  participating in due diligence on that, and he participated

1  in the review of the Tribune deal in the fall of 2007 that

2  we're talking about.

3          He's all over the emails we've produced, about

4  1,600, including emails that we produced in August that go

5  to this analysis, and Aurelius's counsel has used some of

6  these emails at depositions.  I mean, they used one from Mr.

7  Dilworth to Mr. Sarnobat about this very analysis that says,

8  "Tim Dilworth, please find attached the latest version of

9  the valuation analysis for Tribune, key changes from last

10  version, et cetera."  They've used this at depositions, and,

11  Your Honor, at Ms. Persily's deposition in January, she

12  testified that this analysis was prepared by Mr. Sarnobat,

13  who they have deposed with advice from Mr. Dilworth.  That's

14  at Page 312.

15      So they have the analysis.  They now have the

16  documents about the analysis.  They've deposed two people

17  about the analysis.  Mr. Dilworth has been an open secret, I

18  guess, since maybe October 2009, but certainly July of this

19  past year, and they have invented a whole dispute.  They've

20  trashed Citi.  They've said we've inappropriately withhold

21  [sic] documents, and they've done it all to get something

22  that they've determined on the eve of confirmation, I guess,

23  if that's what 2:15 in the morning is before confirmation,

24  that they now want Mr. Dilworth's deposition documents.

25          We respectfully submit that request should be

1  rejected.  There's no prejudice.  They have the documents

2  about the analysis that they say is so critical.  They have

3  deposed two individuals about how this analysis was created,

4  and they just don't need Mr. Dilworth's testimony or

5  additional documents.  It just -- at this point, having now

6  gone to the well four times, it would be unfair at this

7  point in the proceeding to make Citi to go back a fifth time

8  when they could have asked two weeks ago.  There's just

9  nothing new here, unless you have any questions, Your Honor.

10          THE COURT:  I'll make a ruling at the outset of

11  tomorrow's hearing session.  Would you like an opportunity

12  to respond in writing to that?

13          MR. GORDON:  We would.  We would, Your Honor.

14          THE COURT:  Like something in chambers by four o'

15  clock.  You may email it to me, if you'd like.

16          MR. GORDON:  Thank you, Your Honor.

17          THE COURT:  Mr. Qureshi.

18          MR. QURESHI:  Your Honor, may I briefly be heard

19  in response?

20          THE COURT:  You may.

21          MR. QURESHI:  Thank you.  First of all, Your

22  Honor, I do take exception to the suggestion that we somehow

23  filed the letter to generate publicity.  Far from it, Your

24  Honor.  We're interested in getting relevant evidence to

25  present to Your Honor at confirmation.  The email that was

1   referred to, the August email, indeed, that is the one

2   version of the -- this analysis that I refer to, the only

3   one that has been produced.  So the information that we had

4   was there's one version, here it is, and by the way, it's a

5   bust case, it's a break case, it's irrelevant, and that's

6   all.

7            Now, Your Honor, why this is so important to us

8   is in these other iterations that, again, we did not know

9   existed until Mr. Sarnobat testified that they existed, in

10  these other iterations, Mr. Dilworth, who appears to be the

11  one conducting these analyses, makes changes to certain

12  assumptions in the valuation tech -- in the valuation

13  analyses that happen to be, in many instances, the same

14  changes that our experts will argue before Your Honor over

15  the coming days should be made to the solvency analysis that

16  VRC conducted or to the solvency analysis that the debtor's

17  experts have conducted.  So to suggest that while we had the

18  opportunity to talk to people about one version of this

19  document from August entirely misses and understates how

20  critical these analyses are and how relevant they are.

21           And the last point, Your Honor, is with respect

22  to privilege.  While we certainly disagree that these type

23  of solvency analyses where, by the way, no lawyers appear on

24  any of the emails are privileged, the fact is they chose to

25  produce one, and so they can't then say, "Well, we'll

1    produce one, but we're going to hold back other iterations

2    of essentially the same document because we think it's

3    privileged.  They can't have it both ways, Your Honor."

4                    THE COURT:  Thank you.

5                    MR. QURESHI:  Thank you.

6                    THE COURT:  All right.  Let's turn to the other

7    Citi matter.

8                    MR. SIEGEL:  Mr. Siegel from Brown Rudnick.  I'm

9    here for Wilmington Trust, Your Honor.

10                    Unfortunately, that matter is not quite resolved.

11   We hope it will be.  We received the documents from Citibank

12   and were scheduled to take Mr. Kirshner's deposition last

13   Friday.  Unfortunately, his brother is terminally ill, so

14   they requested that the deposition be put off for a few days

15   so Mr. Kirshner could deal with his family problems.  We

16   agreed to that request, Your Honor.  We made sure that none

17   of the other plan proponents objected to taking a deposition

18   after the start of the confirmation, and just under the

19   circumstances, we thought that was the right thing to do.

20   So we haven't yet taken the deposition, so we have to carry

21   the matter.  Hopefully sometime this week, Mr. Kirshner's

22   family issues will be resolved and we'll be able to take a

23   deposition.

24                    THE COURT:  So you don't have a new date yet.

25                    MR. SIEGEL:  We don't have a new date yet.

1          THE COURT:  All right.  Thank you.

2          MR. SIEGEL:  Thank you.

3          THE COURT:  Number six, the Aurelius seal motion.

4    If I remember correctly, parties were to consult on, I

5    recall, the confirmation-related confidentiality issues at

6    six and seven on today's agenda.  What has been the re --

7    have the parties had an opportunity to do that, and is there

8    any result?

9          MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

10   the debtors.  We have been discussing the confidentiality

11   issues, Your Honor.  I think we've narrowed them down,

12   although I don't think we're all the way there.  Right now,

13   the proposal is that the major areas of confidentiality that

14   people are concerned about are issues that pertain to

15   various interests in the FCC that are pertinent to the FCC

16   issue.  In other words, the holdings of various of the

17   senior lenders as they relate to communications properties.

18          Secondly, with respect to the debtor, there are

19   two areas of concern.  One is -- and they're both related.

20   One is current financial projections and the like that, you

21   know, would be significant competitive disadvantage if they

22   were disclosed to other people.  And finally, certain of the

23   relationships that the debtor has with some of its equity

24   investments, the most prominent one being TV Food or the

25   Food Channel, there are very strict disclosure requirements

1  in connection with that.  People have essentially agreed to

2  honor those areas.  Beyond that, I think that -- I think

3  there's general agreement that the material can be made

4  public.

5           And there's two different issues.  One is, with

6  respect to the various documents that were filed in advance

7  of the hearing -- and there, I think we'll work to make sure

8  that the only thing that is filed under seal on a going-

9  forward basis with respect to those documents is the

10  material I was just describing, and with respect to the

11  exhibits, we've been trying to work our way through the

12  exhibits and make that determination.  Since we were before

13  you last, the exhibit list has expanded in leaps and bounds

14  to the point where you kind of wonder what the heck's going

15  on, but --

16           THE COURT:  Well, me too.

17           MR. BENDERNAGEL:  Well --

18           THE COURT:  What is the -- what the heck is going

19  on, Mr. Bendernagel?

20           MR. BENDERNAGEL:  Well, I think people are, you

21  know, essentially trying to ensure that they don't get

22  caught short and the like, so they've designated, you know -

23  - the volume of documents on this exhibit list has expanded

24  quite a bit.  I don't know how much that has to do with

25  what's going to actually happen in the courtroom.  My sense

1  is that people have an idea that we will introduce all of

2  these documents toward the end in bulk and they'll just come

3  into the record.  I'm not sure that's a great idea.  I'm not

4  sure it's an idea that's really all that necessary.  I think

5  people are also trying to make sure that to the extent they

6  want to use one of the documents, it's there, but --

7          THE COURT:  Well, that concern, I understand, but

8  I'm assuming without knowing that the largest percentage of

9  documents from either side will be admitted by agreement and

10  without an objection.

11          MR. BENDERNAGEL:  I think that's right.  And look

12  at -- we've made a lot of progress in that regard.  The only

13  objection I think that anybody is going to preserve on a go-

14  forward basis with respect to whatever number of documents

15  are on this exhibit are specific hearsay objections in terms

16  of how the document's going to be used.  In terms of

17  relevance, I think people have decided, forget about that,

18  the judge will be able to figure out what's relevant or not.

19  And with respect to -- you know, I think the only other one

20  is incompleteness to the extent that that even exists, but I

21  do think the parties have been working cooperatively

22  together.  It's just that there's a massive amount of

23  material here and the like.

24          THE COURT:  All right.  Well, let me go back to

25  the objections for a moment which are the subjects of the

1  matters listed at numbers six and seven on the agenda for

2  today.  Are the parties far enough along that they can make

3  filings which have either no or a very limited number of

4  redactions?

5          MR. BENDERNAGEL:  I believe the answer's yes, but

6  this is not an issue that I've been spending all my time on

7  simply because there's a lot of other stuff going on.  Can

8  we report back in the morning exactly where we are on this?

9  I think that would be the most efficient thing to do.

10          THE COURT:  All right.  That's fine.  But before

11  we leave, just let me ask if anyone else wishes to be heard.

12          MR. BENDERNAGEL:  Apparently, nobody else wants

13  to come into this pool with me.

14          THE COURT:  Here comes one.

15          MR. BENDERNAGEL:  Thank you, Your Honor.

16          MS. SPROLL:   Good afternoon, Your Honor.  Gail

17  Sproll on behalf of the constitutional interests of the

18  Chicago Tribune.  I was heartened to hear what Mr.

19  Bendernagel said.  It sort of comports with what he told me

20  last week and the Court last week about the limitations the

21  debtor committee and lenders would make on what they would

22  seek to seal.  I just really wanted to say to the Court that

23  what I'm saying now applies equally to what has been filed

24  and, going forward, what will be admitted into evidence in

25  the confirmation hearing.  The third circuit has clear rules

1    that the constitutional presumption of access applies to

2    exhibits that are admitted into evidence, and it's the

3    burden of the parties who seek to seal it --

4              THE COURT:  I know.  I heard you the first time -

5    -

6              MS. SPROLL:  -- to demonstrate.  Okay.  All

7    right.

8              THE COURT:  -- when you told me that.

9              MS. SPROLL:  I won't -- then I won't say --

10             THE COURT:  I promise to you I will not forget

11   that, and --

12             MS. SPROLL:  Appreciate that, Your Honor.

13             THE COURT:  Well, what I normally find at the end

14   of the day is normally, there will remain very few disputes

15   --

16             MS. SPROLL:  Uh-huh.

17             THE COURT:  -- about that.  There may be some,

18   and if there are, I'll resolve them.

19             MS. SPROLL:  Right.  And I think that what we're

20   asking the Court to do is to lodge the burden with the party

21   that's seeking to seal because I think in that instance,

22   either the documents will truly be confidential or they will

23   come in or be abandoned.

24             THE COURT:  I understand.

25             MS. SPROLL:  And that's all I have, Your Honor,

1  unless --

2          THE COURT:  All right.

3          MS. SPROLL:  -- there are any other questions.

4          THE COURT:  No.  Thank you.  Does anyone else

5  wish to be heard in connection with these matters?

6      (No audible response)

7          THE COURT:  I hear no further response.  All

8  right.  Bear with me for just one moment.

9          Okay.  I was handed, after I took the bench, a

10 letter dated March 7th from Sally Buckman in connection with

11 -- on behalf of Aurelius and Law Debenture with respect to

12 documents they're seeking to compel be produced from Angelo

13 Gordon.  Can the parties just briefly address that?

14         MR. FRIEDMAN:  Your Honor, this is, on the

15 telephone, Edward Friedman on behalf of Aurelius with

16 respect to Ms. Buckman's letter.  We are co-counsel with

17 Lerman Senter on these FCC matters.  There was a stipulation

18 providing for production of documents by Angelo Gordon

19 relating to FCC matters, and one of the categories of

20 documents that the parties agreed would be produced -- and

21 they're actually pretty limited categories, but one category

22 that was agreed were shareholder agreements where Angelo

23 Gordon or an affiliate of Angelo Gordon was an equity holder

24 of a media company, and obviously, the purpose of this is to

25 understand the nature of their media interest and how that

1   bears on the pending FCC application.

2         And the point of this letter is that with respect

3   to a shareholder agreement produced by Angelo Gordon or its

4   counsel made the decision that they would produce the

5   agreement, but not the schedules.  And the simple dispute

6   here is that the schedules are part of the agreement.  We

7   have asked for production of the document in its entirety.

8   We want the complete document.  There was some commentary

9   earlier, Your Honor, concerning the use of exhibits at trial

10  and the possibility that documents might be subject to

11  objections based on incompleteness.  This is the flip side

12  of it.  We're in discovery.  We have an agreement that

13  certain documents will be produced.  We want to make sure

14  that the complete document is provided to us, and that is

15  the sum and substance of the letter that Your Honor received

16  today.

17         THE COURT:  All right.  Thank you.  Does anyone

18  wish to be heard on behalf of Angelo Gordon?

19         MR. JOHNSTON:  Good afternoon, Your Honor.  Jim

20  Johnston of Dewey and LeBoeuf.

21         I got this letter literally when I was walking

22  over to the hearing this afternoon, read it on my

23  Blackberry.  We would like a chance to respond.  I am

24  somewhat conversant with respect to this matter.  Although

25  we do have FCC counsel, as Your Honor is aware, at the Akin

1    Gump firm, our FCC lawyer is not here in the court today.  I

2    will be able to consult with him after the hearing and get a

3    written response.

4              As an initial matter, you know, I'd like to say

5    that this is really like water torture.  When will the

6    dripping stop?

7              THE COURT:  Brother, you're telling me.

8              MR. JOHNSTON:  This alleged dispute relates to

9    documents that were produced to Aurelius a month ago, on

10   February 10th and 11th, and we learn about it now, walking

11   over to the Court.  At some point, reasonably, there has to

12   be an end.

13             The information they seek, apparently, are

14   schedules to a shareholder agreement relating to Freedom

15   Communications, not Tribune.  They say that they need this

16   information to ascertain the interests of Angelo Gordon, the

17   ownership interests of Angelo Gordon, in Freedom

18   Communication.  We have given them a schedule that details

19   what Angelo Gordon's ownership interests in Freedom are.

20   The information on the schedules to the shareholder

21   agreement is out of date, as we've informed them, and it's

22   also highly, highly confidential because it includes

23   information regarding the holdings of every single

24   shareholder of Freedom, what they own in class A, what they

25   own in class B, warrants.  We don't think we would have the

1  ability to disclose that information absent the consent of

2  every single Freedom shareholder.  It also details, as I

3  understand it, Angelo Gordon's holdings in Freedom -- and

4  again, this is outdated and stale information -- on a fund-

5  by-fund basis, which is also confidential, sensitive, and at

6  the end of the day, utterly irrelevant to what Aurelius,

7  itself, says it needs the information for, which is what is

8  Angelo Gordon's current holdings in this company.

9  THE COURT:  Mr. Johnston, would you like the opportunity to

10 respond in writing?

11          MR. JOHNSTON:  Yes, I would, Your Honor.

12          THE COURT:  Okay.  Four o'clock today you may

13 email me your letter.

14          MR. JOHNSTON:  Your Honor, I suspect they'll be

15 sitting in court at four o'clock today.  May I beg for a

16 little more time?

17          THE COURT:  Not unless you're here on the -- on

18 the next matters.

19          MR. JOHNSTON:  Okay.

20          (Laughter)

21          THE COURT:  I mean --

22          MR. JOHNSTON:  Fair enough.  I will get the

23 letter started in absentia.

24          THE COURT:  Thank you.

25          MR. JOHNSTON:  Thank you.

1          MR. FRIEDMAN:  Your Honor, may I just say one

2    very brief word.

3          THE COURT:  Yes.

4          MR. FRIEDMAN:  This is Edward Friedman.  This

5    letter of March 7th did not come out of the blue.  There's a

6    long history of correspondence, letters, emails relating to

7    Aurelius's efforts to obtain this production.  So we didn't

8    think it was necessary to burden the Court with multiple

9    exhibits showing the efforts and communications that have

10   been ongoing.

11         THE COURT:  All right.

12         MR. FRIEDMAN:  I just wanted to say that.  Thank

13   you.

14         THE COURT:  Thank you.

15         All right.  Opening statements.

16         MR. CONLAN:  Your Honor, James Conlan on behalf

17   of the debtors from the law firm of Sidley Austin.  I'm not

18   giving the opening.  These are just preliminary remarks, but

19   you can subtract them from our opening amount if you would

20   like.

21         Your Honor, we have been in bankruptcy for two

22   years as you know quite well.  And while the company has

23   performed admirably, the environment for media companies is

24   absolutely filled with challenges and with opportunities,

25   some would say historic.  The Tribune companies are quite

1    ready, prepared to meet those challenges and take advantage

2    of those opportunities.  But for the benefit of all

3    stakeholders we need to do it outside of a bankruptcy

4    proceeding and so we need to exit.  The DCL plan -- debtor

5    committee lender plan as you'll hear it referred to many

6    times today -- is a practical, fair way to exit and we

7    support it.

8              Mr. Sottile will now give the formal opening for

9    the DCL plan proponents, Your Honor.

10             THE COURT:  Thank you.

11             MR. SOTTILE:  Good afternoon, Your Honor.  James

12   Sottile of the law firm of Zuckerman Spader, special counsel

13   to the official committee of unsecured creditors.

14             Your Honor, we hope and believe that the moment

15   when the torture stops is coming pretty soon.  The Court is

16   going to be faced over the next couple of weeks with a

17   choice, a choice between two plans of reorganization that

18   take diametrically opposed positions about how these cases

19   should be resolved.  One of those is the DCL plan.

20             The DCL plan, Your Honor, settles claims among

21   all of the creditors in this case, while leaving claims

22   against third parties to be pursued in litigation trusts

23   with further additional recoveries for creditors possible.

24   That plan has wide support among the creditors in these

25   cases.  It is also supported by the two fiduciaries that are

1  charged with a more general responsibility for looking out

2  for the interest of creditors, the committee and the

3  debtors.

4          The second plan the Court will be asked to

5  consider is the noteholders' plan.  The noteholders' plan

6  doesn't resolve the claims of any of the creditors.  It

7  leaves the creditors and the debtors in limbo for years

8  while complicated litigation unfolds and works its way

9  slowly towards a final resolution.  Unlike the DCL plan, the

10  noteholders' plan is supported only by its proponents.

11          Your Honor, the DCL plan proponents submit that

12  the right plan to choose to confirm is the one presented by

13  the DCL proponents.  That plan builds on a reasonable

14  settlement of complicated claims against the LBO lenders.

15  That settlement, as the Court is all too well aware, took a

16  very long time to negotiate.  It took a long time to

17  negotiate, Your Honor, because you had parties that were

18  starting at opposite ends of the spectrum in how they looked

19  at these claims, and it took a very long time for those

20  parties to find a point of common ground where none of them

21  were happy, but all of them could live with the resulting

22  compromise.

23          If you look at the history, and you're going to

24  hear a lot about it over the next couple of weeks, I think

25  it will be apparent to the Court that these were hard fought

1  negotiations between parties with very different interests.

2  Different parties walked out of the room at different times.

3  Different alliances supported different proposals.  But at

4  the end of the day, Your Honor, the Court is presented with

5  a plan that has the support of the key constituencies in

6  this case:  The debtors, the committee, the senior lenders,

7  and many of the other creditor groups.  And we submit, Your

8  Honor, that's the plan the Court should choose to confirm.

9           Let me tell you a little bit about what the DCL

10  plan does with respect to the settlement.  The first thing

11  it does, Your Honor, is it provides something the

12  noteholders' plan signally doesn't.  It provides

13  substantial, up front certain recoveries to the key creditor

14  classes that are impaired here:  The senior notes and the

15  other general unsecured creditors at the parent.  It also

16  provides certain up front recoveries to the trade creditors

17  at the subsidiary levels.

18           The senior notes and the general unsecured

19  creditors of the parent are paid thirty-four-cents on the

20  dollar up front, Your Honor.  In addition, they get the

21  lion's share of recoveries from litigation against third

22  parties, and we submit, Your Honor, the evidence is going to

23  show that that litigation has very substantial potential

24  value.

25           The DCL plan, Your Honor, also permits the

1    debtors to emerge from bankruptcy with their ownership clear

2    rather than being held up in litigation for years and years.

3    They will then be free to pursue their business, to maximize

4    the value of their assets in an uncertain business

5    environment in ways that we submit the evidence will show

6    would not be possible if no one knew who would own them.

7              Finally, Your Honor, the subsidiary unsecured

8    creditors will be paid in full under the DCL plan.

9              The noteholders' plan doesn't resolve any of

10   those creditor claims, Your Honor.  Instead, it puts aside

11   in a box more than half of the total value of the debtors,

12   billions of dollars.  Those billions of dollars will be held

13   in the box until all the LBO claims are resolved, which is

14   likely to be years away.

15             The senior notes and the parent general unsecured

16   creditors who get thirty-four-cents up front with, perhaps,

17   much more to come under the DCL plan get five-cents on the

18   dollar under the noteholders' plan.

19             The subsidiary unsecured creditors who are paid

20   in full under the DCL plan get eight-cents on the dollar

21   under the noteholders' plan up front.  The only possibility

22   of future recoveries for those classes rests years into the

23   future and depend on the risky nature of complex litigation

24   which nobody can predict the outcome of with any confidence

25   or certainty.

1          In short, Your Honor, the Court's asked to choose

2    between a plan that gives certain recoveries to the key

3    classes of creditors who are impaired.  Thirty-four-cents on

4    the dollar to the senior notes and the parent general

5    unsecureds with the potential for more, and on the other

6    hand a plan that gives five-cents on the dollar to the

7    parent unsecured creditors and eight-cents to the

8    subsidiary.

9          We believe, Your Honor, the choice is clear.  But

10   more important that what we think is what the creditors in

11   these cases think, and they have spoken loudly, Your Honor,

12   in their votes about which of these plans they believe are

13   in their interests.  The impaired creditors, Your Honor,

14   have voted by a very substantial majority to support the DCL

15   plan.

16         Most notably, Your Honor, I think the Court

17   should take a close look at how the unsecured creditors at

18   the parent who get the same treatment as the senior notes --

19   Aurelius and its allies -- get under the DCL plan.  What did

20   those unsecured creditors do?  They voted overwhelmingly to

21   support the DCL plan, Your Honor.  Those are the same

22   creditors who would benefit from litigation of the claims

23   that the noteholders say should be the focus of years of

24   litigation.  But what those creditors chose, Your Honor, is

25   to take a settlement that they believe was fair, was

1   reasonable and in their interests.

2          I think, Your Honor, it is also important to

3   focus on the votes of the senior noteholder class.  As the

4   Court is aware, Aurelius, as a result of its recent

5   purchases, now holds almost fifty percent by amount of the

6   senior notes.  So there was no drama about what would happen

7   with respect to the vote of the senior class by amount.

8   Given Aurelius's blocking position, that class would not

9   accept the DCL plan.

10         But notably, Your Honor, almost seventy percent

11  by number of the senior noteholders who voted here voted to

12  accept the DCL plan.  In short, Aurelius and its allies were

13  unable to persuade even a majority of their own group to

14  turn down the DCL plan.  Instead, a majority of their group

15  by number voted to take the treatment afforded by the DCL

16  plan just as the parent general unsecured creditors did.

17         Your Honor, there are a total of 256 impaired

18  classes of creditors here, three of them voted to accept the

19  noteholders' plan.  Who are they?  Well, first, it's the

20  senior noteholders themselves, which we just talked about.

21         Second, it's the holders of the PHONES, and as

22  the Court is aware the PHONES are contractually subordinated

23  to all other funded debt.  They need a litigation home run,

24  Your Honor, to recover anything.

25         And, finally, in what appears to be an anomaly

1    there is a single class with one voting claim in the amount

2    of $47 that voted to accept the noteholders' plan.  In fact,

3    Your Honor, we submit that the noteholder plan has so little

4    support from creditors that it's unconfirmable on its face

5    because it lacks the requirement of an impaired accepting

6    class at virtually every level of the debtors.

7             Now despite this vote of the creditors, Your

8    Honor, who have spoken loudly about their preferences, the

9    noteholders say this Court should reject the DCL plan.  Why

10   is that?  Well, they have two principle arguments that are

11   going to consume most of the next couple of weeks.

12            First, they say that despite what everyone else

13   in these cases things, the settlement that is embodied in

14   the DCL plan is unreasonable.

15            Second, they say, as they have for the last year

16   or more, that the negotiations that led to the settlement

17   were not conducted in good faith.  Your Honor, the evidence

18   is going to show you that there is no substance to either

19   one of these challenges.

20            Let me speak first about reasonableness of the

21   settlement.

22            Your Honor, we believe it's going to be clear,

23   when you have heard all of the evidence, that the settlement

24   of the LBO lender claims is squarely within the range of

25   reasonableness.

1          Now as the Court is all too well aware, and as

2    you've heard many times from the parties here, the standard

3    in this circuit for approval of the settlement is that it

4    falls above the lower end of the range of reasonableness.

5    Your Honor, we are not asking you to confirm a plan that

6    just barely gets over the edge.  If that's what anybody on

7    our side believed this settlement was, anybody on the

8    committee believed this settlement was, the committee would

9    not be here supporting this plan, would not be a proponent

10   of this plan.  Instead, the committee would be litigating

11   these claims.

12          Instead, the committee is persuaded by the last

13   two years of analysis and work that this settlement falls

14   squarely within the range of reasonableness far above the

15   lowest level.  It's reasonable.  It should be confirmed.

16          Much of the evidence, Your Honor, on the

17   reasonableness of the settlement is going to come in the

18   form of expert testimony, as you would expect.  And we

19   believe that when the Court hears that testimony and weighs

20   the competing views of the experts that the Court will be

21   persuaded that the DCL experts provide powerful support for

22   the reasonableness of the settlement, and that the

23   noteholders' experts are neither credible nor persuasive.

24          But before talking about what experts will say

25   and what they disagree about, which is a lot, let me spend a

1  few minutes, Your Honor, and talk about what I think the

2  experts and the parties really all agree on, and that's the

3  issues that drive the value of the claims.  This Court is

4  going to be called upon to decide whether the settlement is

5  reasonable and, therefore, we submit this Court should focus

6  on the key issues that drive the value of the claims.  If

7  they're resolved one way, the value moves in this direction.

8  If they're resolved the other way, the value goes the

9  opposite.

10        There are three issues, Your Honor, we submit

11  that really matter to the outcome of these claims.

12        The first one, Your Honor, is whether or not the

13  loans incurred at step one of the LBO can be avoided.

14  There's no dispute, Your Honor, that if they can be avoided

15  in their entirety, then the senior notes and the PHONES are

16  going to get paid in full.  In fact, that's the only

17  scenario the examiner evaluated that resulted in a payment

18  to the senior notes and the general unsecured creditors of

19  the parent that was more than the settlement.

20        This is the home run litigation scenario, Your

21  Honor.  If step one is avoided in its entirety, it's a

22  complete win for the notes, for the PHONES, for the parent

23  general unsecureds.

24        However, the Court needs to, I submit, to listen

25  with care to the evidence about the challenges that that

1   claim will face, avoidance of step one of the LBO loans.

2            First of all, Your Honor, every expert in this

3   case who is going to testify is going to assume and his or

4   her testimony we premised on the assumption that you can't

5   avoid step one of the LBO unless you take into account the

6   debt that was incurred at step two of the LBO six months

7   after step one.  If you can't consider the step two debt,

8   there's no expert here, Your Honor, who will testify to this

9   Court that the debtors were insolvent at step one.  That's a

10  critical obstacle that plaintiffs on these claims would have

11  to overcome in order to get the litigation home run.

12           And, Your Honor, taking that debt into account,

13  in and of itself that doesn't establish that the debtors

14  were insolvent at step one.  It simply makes it possible to

15  litigate.  It's not possible to litigate that claim

16  successfully given the views of the experts that you'll hear

17  if the step two debt isn't taken into account at step one.

18           Now there are some other possible arguments, Your

19  Honor, for avoidance of the step one transactions that I

20  suspect you'll hear about from the noteholders:  An

21  intentional fraudulent conveyance, perhaps equitable

22  disallowance or subordination.  We submit, Your Honor, that

23  when you hear the evidence, when you consider the legal

24  arguments you will be aware, as the Court already is, of

25  course, of the difficulties in prevailing on those arguments

1  on the facts presented in this case.

2          What's the second big issue that drives value

3  that I believe every party in this case and every expert

4  agrees is a big issue that drives value?  That's whether or

5  not avoidance of step two alone moves the needle enough for

6  the senior notes and the other parent unsecured creditors to

7  produce a recovery bigger than the settlement.  Does wiping

8  out step two alone, if the step one debt is good, really

9  produce a recovery that could exceed the settlement.  And

10  the answer to Your Honor to that question is no, unless

11  there's some equitable remedy that would change the normal

12  bankruptcy priorities about the participation of step one

13  debt in distributions arising from the avoidance of step

14  two.

15          Now the noteholders will present, Your Honor, a

16  series of arguments about equitable remedies that they say

17  should prevent the step one lenders from pursuing their

18  allowed claims in full following avoidance of step two.  The

19  principal such argument is an equitable estoppel-type

20  argument.  There's no dispute, Your Honor, that theory is

21  entirely untested without Court support and that the facts

22  that would normally be required to establish equitable

23  estoppel simply aren't present in this case.  That's the

24  second big issue that drives value.

25          The final big issue, Your Honor, that drives

1  value and that we submit the Court should listen carefully

2  to the evidence on is whether or not the parent unsecured

3  creditors -- and, remember, that's what the senior notes

4  are, that's what the general unsecured creditors at the

5  parent are -- they are parent-only creditors.  The last big

6  issue is whether those parent-only creditors can get at the

7  value in the subsidiaries, which they are not creditors of.

8  If all that the senior notes, PHONES, the other parent level

9  creditors can do on an avoidance claim is win at the parent

10  and not get at the value of the subsidiaries, the needle

11  doesn't move very much on their recoveries and they don't

12  recover more than would be provided in the settlement.

13        And there are significant obstacles that present

14  real risk to the ability of those creditors to get at the

15  assets of the subsidiaries.

16        First of all, Your Honor, as I think the Court

17  has heard a number of times, proving insolvency at the

18  subsidiaries is more difficult than doing it at the parent

19  because the subsidiaries are not obligated on the pre-LBO

20  debt.  Therefore, they've got significantly less debt and

21  proving their insolvency is significantly more difficult

22  than at the parent level.

23        Second of all, even if avoidance is proved at the

24  subsidiaries -- insolvency is proved at the subsidiaries,

25  plaintiffs would have to overcome the arguments that the

1   Court has heard previewed before that are set forth in our

2   confirmation brief, which the lenders will assert that you

3   can't take the value of the subsidiaries and use it for the

4   benefit of the parent-level creditors in preference to the

5   claims of the subsidiary creditors.  And so they will argue

6   that that value doesn't get up streamed to the parent; that

7   the parent only creditors have to look only to the parent to

8   satisfy their claims, at least until everything is paid off

9   at the subsidiary level, including the value of the

10  guarantees.

11          Those are significant obstacles.  They present

12  significant risks to plaintiffs pursuing these claims.

13          Your Honor, there's a -- as you would expect, a

14  whole spectrum of other issues that the parties disagree

15  about and what I would say about them, generally, as about

16  these three is that all of the issues the Court is going to

17  hear about are issues that present real risks to the

18  plaintiffs pursuing these claims and real risks to the

19  defendants.  They present great uncertainty about how the

20  claims will be resolved, and they support the view that a

21  settlement that compromises somewhere in the middle and

22  doesn't leave everything to the chances of litigation is

23  reasonable and that the plan that embodies it should be

24  confirmed.

25          Your Honor, let me speak a little bit about the

1  evidence you're going to hear from the noteholders.

2           THE COURT:  Well, before you --

3           MR. SOTTILE:  Of course, Your Honor.

4           THE COURT:  -- get to that, let me just remind

5  you that last week we decided that openings would be fifteen

6  minutes.  You're a little bit over that now.

7           MR. SOTTILE:  Am I over the point already, Your

8  Honor?

9           THE COURT:  Yes.

10          MR. SOTTILE:  Your Honor, I'm -- I'm happy to

11 proceed as the Court would like.  I could stop here or I

12 could abbreviate significantly the remainder.

13          THE COURT:  I'll give you five more minutes.

14          MR. SOTTILE:  Thank you, Your Honor.

15          THE COURT:  Otherwise Mr. Johnston will be stuck

16 in the courtroom and --

17          (Laughter)

18          THE COURT:  -- we don't want that.

19          MR. SOTTILE:  Let me cut to the chase, Your

20 Honor.

21          THE COURT:  Go ahead.

22          MR. SOTTILE:  I think the Court has heard the

23 core of our argument, which is that the DCL plan provides

24 certainty to a reasonable settlement.  The noteholders' plan

25 is a risky bet on the outcome of litigation that when the

1    Court hears the evidence, I believe the Court will be

2    persuaded is subject to a whole lot of uncertainty.

3         Now Aurelius and its allies and the noteholder

4    groups say they're willing to risk all of that.  They're

5    willing to walk away from the thirty-four cents a dollar.

6    They're willing to walk away from their shares of litigation

7    trust and roll the dice and see what happens years from now

8    in litigation.

9         The trouble is, Your Honor, they want to make

10   that bet not just for themselves, but for everybody else in

11   this case.  They want to make that bet for the parent

12   general unsecured creditors, the retirees, the other

13   creditors at the parent.  They want to make that bet for the

14   noteholders who don't agree with them that the right way to

15   proceed here is in litigation.  They want to force every

16   other creditor in this case to wait for full recoveries

17   until that bet plays out.

18        Your Honor, we submit that they should not be

19   permitted to do that; that in a case like this where the

20   great majority of the creditor groups have come together in

21   support of a plan, including the key constituencies -- the

22   debtors, the committee, the principal lender groups -- that

23   the right thing to do is for the Court to confirm a plan if

24   it is satisfied that the settlement of claims is a

25   reasonable one, as we believe the Court will be.

1          Your Honor, the parent general unsecured

2    creditors, the retirees in this case, the trade creditors

3    they plainly want the DCL plan.  They want the sure thirty-

4    four cents with the chance for more.  They don't want to

5    gamble it all.  They don't want to bet the farm on the

6    outcome of the three issues I described for you.  They don't

7    want to bet the farm on whether or not one would win on

8    avoiding step one.  They don't want to bet the farm on

9    whether or not avoidance of step two can somehow benefit

10   them greatly because of an untested equitable estoppel

11   theory.  They don't want to be the farm on whether or not

12   they will, at the end of the day, be able to get at the

13   value of the subsidiary creditors -- subsidiaries of the

14   debtors or be limited to the value in the parent.

15          As I think the Court will be persuaded, Your

16   Honor, by the evidence you're going to hear, those creditors

17   are right.  The case the noteholders present -- will present

18   about the reasonableness of the settlement, about alleged

19   bad faith in the negotiations we submit, Your Honor, has a

20   whole lot of sound and fury and it signifies absolutely

21   nothing.  The Court should, after due consideration of the

22   evidence, confirm the DCL plan.

23          Thank you, Your Honor.

24          THE COURT:  Thank you, Mr. Sottile.

25          I'll hear from the noteholders.

1           MR. ZENSKY:  Good afternoon, Your Honor.  I have

2   one demonstrative.  May I hand it up?

3           THE COURT:  You may.

4           MR. ZENSKY:  It's been exchanged with the other

5   side.

6           THE COURT:  Very well.  A copy for my law clerk

7   as well.

8           MR. ZENSKY:  There's extra copies if anyone needs

9   one.

10           THE COURT:  Thank you.

11           MR. ZENSKY:  Good afternoon, Your Honor.  For the

12  record, David Zensky of Akin, Gump, Strauss, Hauer and Feld

13  for Aurelius Capital Management and the noteholder group.

14           Your Honor, we're going to begin the discussion

15  today and over the course of the next week or two, I

16  suppose, about a transaction that never should have been

17  done and a settlement that never should have been proposed

18  or done.  But, Your Honor, two wrongs don't make a right.

19  They don't make it right in life and two wrongs don't make a

20  right in equity, and they don't make a right in law.  And I

21  think at the end of the two weeks when you have heard the

22  evidence we are confident you'll agree that the debtor

23  committee lender plan cannot and should not be confirmed,

24  and that the noteholder plan and should be confirmed.

25           Now being as we're in a 9019 discussion, Your

1   Honor, I'll start with the merits, which I think is the --

2   the most important part of the Court's inquiry.

3           In 2007, Your Honor, there's no dispute *The*

4   *Tribune's* performance was rapidly declining within an

5   industry that was in rapid decline, and I don't think you're

6   going to have to take our word for it because their lead

7   expert, Professor Black told me that on Wednesday when we

8   took his deposition.  He said that, I quote, "I think it's

9   fair to say that the general belief was that the newspaper

10  publishing business was in long-term decline."  So he's not

11  saying in 2007 we're in a little cyclical downturn.  The

12  industry was in long-term decline at the time of this

13  transaction.

14          Then we asked him about the company itself.  He

15  says the company, Tribune, their revenue was declining.

16  Their operating cash flow was declining, and they were

17  performing below their projected level of performance in the

18  projections that were included in the tender offer.  He's

19  talking about before step one, not at the end of the year

20  when everyone acknowledges that it was panic time.  Before

21  step one he testified those were the facts with respect to

22  Tribune.

23          Your Honor, that is not the time to do a massive

24  leveraged buy-out of a company in an industry that's

25  declining and a company within an industry that's declining

1   even more.  You don't layer mount -- staggering mountains of

2   new debt on a company and put all the risk on the company's

3   existing creditors -- in this case, the notes, the PHONES

4   and general unsecured creditors that existed at the time --

5   to cash out equity.  That is wrong.  That is not the time to

6   do a leveraged buy-out.

7           The banks that are defendants in the litigation

8   allowed Mr. Zell to buy the company for $300 million of

9   equity and twelve-and-a-half-billion-dollars of debt on the

10  balance sheet, Your Honor.  If there was ever a case that

11  cried out for the application of the fraudulent transfer

12  laws, this is it.

13          Now I can take you back for a moment, if I may,

14  to the -- what we call the contours hearings, which is, I

15  think, what started the drops or the -- or the pain, I

16  guess, that we've all been experiencing, and the plea from

17  this side of the room was that there should be no discovery

18  at all into the LBO whatsoever and the Court rejected that

19  plea and rightly so.  And you will see the fruits of that

20  discovery, and you heard some of the fruits of that

21  discovery in the debate this morning -- or this afternoon

22  about Citibank.

23          And that discovery is going to show you that

24  there was wide-spread recognition by the lenders that the

25  transaction would leave the company insolvent and without

1    adequate capital to operate its business.  Its' going to

2    show you that the banks couldn't even syndicate step one,

3    the step that they say was perfectly safe and protected

4    here.  And it's going to show you how poor the company was

5    performing against its own projections at the time of this

6    transaction.

7               Now, Your Honor, to some people the fraudulent

8    transfer law, particularly in this context, seems somewhat

9    counter-intuitive.  But the fact is that people do overpay

10   for assets.  People do over-leveraged transactions, risky

11   over-leveraged transactions.  Management does inflate

12   projections when it suits their needs and banks do lend into

13   insolvent situations.  How do we know that?  All we have to

14   do is read the cases that are out there on 548 and 544, Your

15   Honor.  And how do we know it?  We know it from the facts of

16   this case.

17              Now Mr. Sottile gave a fine opening statement,

18   Your Honor.  He said that there's only one route to full

19   payment.  On that point I beg to disagree.  There are

20   several routes that would provide recovery to the

21   noteholders far in excess of the proposed settlement.

22              Now we do all agree, it's common ground, that if

23   there's full avoidance, if the company was rendered

24   insolvent at step one, everything is -- goes away and all

25   the general unsecured creditors get paid in full and the

1  PHONES get paid in full.  Mr. Sottile correctly identified a

2  threshold issue as whether you consider the step two debt at

3  the time of step one, and there is a debate about that, but

4  only for the balance sheet test, Your Honor.  We think we're

5  going to win that argument or that, certainly, that the

6  litigation would have a very high chance of success of

7  winning that argument and that's briefed in our confirmation

8  objection at Page 83 to 90.

9       What he didn't say was that if we do consider the

10 step two debt at the time of step one for the balance sheet

11 test, I think it's going to be common ground in the trial

12 among the experts that unless you let the company claim

13 credit for tax benefits and tax strategies that only an S-

14 ESOP company can take advantage of and unless you treat the

15 PHONES' debt, which predated all of this, at its then

16 discounted market value rather than its face value, if you

17 don't give them the benefit of those add-ons on the balance

18 sheet test, the company's insolvent at step one, Your Honor.

19      So he talks about hurdles that we have.  There

20 are giant hurdles on their side to show that this company

21 was not balance sheet insolvent if you consider the step two

22 debt.

23      The second thing he didn't say on this point,

24 Your Honor, is that with respect to the other two tests for

25 constructive fraudulent transfer everyone agrees, all the

1   experts, the parties that you have to consider the step two

2   debt that was coming down the road to test whether this

3   would leave the company inadequately capitalized or unable

4   to pay its debts as they come due.  And when you consider

5   that, you'll hear our expert, Mr. Tuliano, take you through

6   several thorough analyses that show that this was a

7   transaction, essentially, doomed to fail in the sense the

8   company was never going to be able to operate its business

9   in the face of even a modest downturn, which as I know Your

10   Honor knows is the relevant test to think about, in part,

11   with respect to capital adequacy.

12           Mr. Fischel who will testify on this side, I

13   believe his report will show you that the revolver would be

14   out of money as early as 2010 and the company would lack

15   adequate resources to run its business.  So all of this is

16   an analysis that would show that at step one the company is

17   constructively insolvent, Your Honor, or that there's a

18   constructive fraudulent transfer.

19           Now Mr. Sottile said that the only home run is

20   avoidance at the parent and at the subsidiary level and at

21   both step one and step two, and that is one of the major

22   areas we disagree on, Your Honor.

23           And if you look at the demonstrative that I

24   handed up, you'll see that if step one is avoided, there is

25   more than $1.8 billion, almost $1.9 billion of disgorgement

1    dollars that would follow from that.  Those are the

2    principal and interest payments prepetition and fees paid in

3    connection with step one, and another $318 million of

4    disgorgement dollars in connection with step two.  So we're

5    looking right there at $2.2 billion, plus the value of the

6    parent.  That gets you to almost $3 billion, Your Honor.  If

7    there's no claim of the LBO lenders at the parent, there's

8    $3 billion and that's enough to pay the notes, the general

9    unsecureds and the PHONES in full, Your Honor.

10           So while I acknowledge and you will hear that

11   there is an issue -- you have to analyze the solvency of the

12   subsidiaries separately from the parent -- it is by no means

13   necessity that the plaintiffs side of the litigation

14   established that the subsidiaries were insolvent to score

15   what Mr. Sottile called a home run.

16           And let me turn to step two.  Mr. Sottile did

17   identify some of the relevant issues the Court will have to

18   consider in respect of the outcome that would follow from

19   step two avoidance.

20           No one in this case is going to tell you, I

21   believe, that there's a meaningful argument that this

22   company was solvent as of the time of step two, and the

23   hurdle is one that has been identified as a question of law

24   and what the remedy is that would follow from a situation

25   where step two is avoided, but not step one.

1          And we don't view this as -- Mr. Sottile referred

2    to this, I think, as an untested legal argument.  I would

3    like to refer Your Honor to Pages 116 to 128 of our

4    confirmation brief in which we set forth compelling support

5    and dozens of cases that support the remedy that we believe

6    would follow in this situation, and that remedy is that if

7    step one is not avoided, but step two is avoided, that the

8    holders of the step one debt, at the subsidiary level or at

9    the parent level, would not be permitted to benefit from the

10   avoidance of the second part of a transaction that they,

11   themselves, facilitated.  And in that case all the dollars

12   that would otherwise flow to the step two lenders -- and,

13   again, if I look -- if I refer you to my demonstrative, Your

14   Honor, in the bottom chart under pre-settlement discovery

15   you'll see next to step two lender claims that the step two

16   lenders at the -- the depressed enterprise value that the

17   debtors say the company is worth of 6.75, but we'll accept

18   that for the moment -- the step two lenders are slated to

19   get one -- almost $1.6 billion.

20          So, Your Honor, this is a second or third way to

21   full payment to the notes and a substantial payment to the

22   PHONES if step one is prevented from benefiting from

23   avoidance because then you have the 1.6 billion and you have

24   the disgorgement dollars as well.  So this is certainly an

25   issue that I know the Court will want to focus on.

1          So that's several other pathways we think that

2     are well supported in the record, Your Honor.

3          Let me turn to a second phase of the trial and

4     you will hear from dueling experts, I suppose, as to what

5     the worth of the claims are or what the expected value of

6     the litigation is if you just take the examiner's view of

7     the world.

8          We hired a decision tree expert to model that

9     question for us and we asked him to do it based on the

10    examiner report alone objectively.  We didn't -- based on

11    the highly unlikely, highly likely, somewhat likely

12    conclusions that the examiner gave.  We didn't import our

13    judgment or ask him to import judgment about what was more

14    or less plausible, how the issues connected, just asked him

15    to plot out the outcome of the litigation using the

16    examiner's findings.

17         Now he's not a professional expert, Your Honor.

18    He's never been a testifying expert before.  To the

19    contrary, he's someone who, for thirty years, is hired by

20    lawyers and clients in litigation to help them make reasoned

21    decisions about settlement.  And he concluded that the fair

22    value of the litigation is on the order of three times the

23    proposed settlement here for the notes and other unsecured

24    creditors.

25         The debtor committee lender group went in the

1  opposite direction and they hired a professional expert, and

2  that was Professor Black and we discussed him a bit last

3  week.  And he took the exact opposite view.  He didn't try

4  to model this mathematically.  He did a decision tree in his

5  head, as he describes it, and subjectively attempted to

6  estimate what, in his view, the examiner would say the

7  expected recoveries are if you pull everything together.

8  That's a problem in and of itself, but on top of that he

9  changed the examiner report in ways you'll hear about during

10  his examination and then applied his own interpretation of

11  what he thinks the examiner meant, but didn't say.

12          A third phase of the trial and one that Mr.

13  Sottile failed to mention at all is the question of the

14  debtors' enterprise value, Your Honor, and this is a bit

15  confusing.  The debtor committee lender plan posits that the

16  company is worth $6.75 billion and they appear to be

17  sticking with that.  And what's confusing is that it's based

18  on a valuation that Lazard did for the company in October

19  2010, Your Honor.  At that time they got a midpoint value of

20  6.75 billion.  It's five months stale as I stand here, Your

21  Honor.  It defies every convention in valuation methodology

22  to use stale numbers for a valuation.  Everyone agrees you

23  use the most up to date information.

24          Now Lazard did do an update in January of this

25  year and that showed a midpoint of just north of 7 billion,

1   but they haven't changed the plan because they think that

2   $270 million is not material.  That sounds like a lot of

3   money to me, Your Honor, and you may ask yourself where is

4   the committee on this issue; why isn't the committee

5   demanding at a minimum that that additional value which they

6   admit accrues to the distributable enterprise value at this

7   point be used to pay out to creditors.

8         Well, one reason they haven't demanded that is

9   their financial advisor never read the Lazard report.  It is

10  unbelievable.  We asked him in his deposition if he had read

11  the Lazard report.  He said no.  This is the committee's

12  financial advisor.

13        So we, in fact, think, Your Honor, that the value

14  is significantly higher than even the Lazard January update

15  and our valuation expert from Raymond James places the value

16  at more than $8 billion.  Now I know the Court is well-

17  versed in valuation matters and will be well positioned to

18  say what the company is worth at the end of the trial, and

19  if the value's higher, Your Honor, it circles back into the

20  fairness of the settlement in several ways.

21        So one is if the value is higher, then natural

22  waterfall recoveries that would flow to each creditor class

23  go up.  But since the settlement remains constant, the

24  proposed settlement goes down even worse from where it is

25  now because we would be entitled to a higher natural

1   recovery.

2           Second, Your Honor, as the value goes up, and you

3   can see this on the demonstrative in the bottom chart, the

4   second and third -- the end columns on the right which shows

5   that as the value goes up, the percentage recovery of each

6   class's allowed claim goes up if you're a senior lender

7   because they're getting all the equity, but remains constant

8   to the notes because the notes are being paid in cash.

9           So if the company is worth $8 billion, the

10  recovery to the senior -- to the LBO lenders goes up to

11  eighty-five percent where the notes stay fixed at thirty-

12  three percent.  And that goes to the overall fairness and

13  equity associated with the plan.

14          And, finally, and perhaps most important, Your

15  Honor, there's another route to a very substantial payment

16  or litigation outcome and that is if step two is avoided,

17  but the company is worth substantially more.  Even if the

18  Court disagrees with the equitable remedies that we've

19  touched on a bit today and that are set forth in the briefs,

20  once step one is paid in full, Your Honor, that issue goes

21  away.  And if step one is not entitled to post-petition

22  interest, they're capped at $6.47 billion as you can see the

23  sizes of their claim.  And it was admitted by Professor

24  Black that, for example, at a 7.5-billion-dollar value that

25  would mean a billion-dollar payout to the senior notes, Your

1   Honor.  So that's yet another route and another reason why

2   the settlement is inadequate.

3          Now if we look at the chart for a moment, Your

4   Honor, just to take you briefly through the moving pieces of

5   the settlement, you can see at the top that the step one

6   claims are proposed to be allowed in their full amount of

7   $6.47 billion and that -- that's the number without post-

8   petition interest.  And you can see that the step one

9   disgorgement claim -- there's $1.868 billion of disgorgement

10  dollars out there -- they're being released for the grand

11  total of $322 million coming strictly from the holders of

12  the step one debt today.  The people who would be subject to

13  disgorgement remedies are paying exactly zero dollars for

14  their release, Your Honor.  And you can see, if you go

15  across the chart, how that consideration is being divided up

16  between the other creditor classes that were injured, at

17  least some of them, by the leveraged buyout.

18         If we go down to the next column, step two, you

19  can see that step two is proposed to be allowed in the

20  amount of $2.1 billion -- that was the amount of the debt --

21  for the grand settlement payment of $70 million, Your Honor,

22  which is a mere 3.3 percent of the allowed claim, zero of

23  which is being paid to the senior notes, the principal

24  creditor class injured by the leveraged buyout, Your Honor.

25         The next row shows you the disgorgement dollars.

1  Those -- that's out of the step two disgorgement pool and

2  those dollars are going to the senior notes.

3        If you skip down to the shareholder columns you

4  can see that the debtors want you to approve a settlement

5  that releases the step one shareholders from intentional

6  fraudulent conveyance claims that could be worth up to $4

7  billion for zero.  They just want to give that release away

8  and you'll hear the reason why during the course of the

9  evidence, and I don't think you'll approve of it.

10        They want to release certain of the step two

11  shareholders who got cashed out up to $100,000 each.  We

12  don't know how many there are.  We don't know how much value

13  this takes off the table.

14        So, you know, we think it's a pretty lousy

15  settlement and I don't think that's a surprise to this Court

16  to hear me say that.  And we have to ask ourselves, you

17  know, how did we get here; why is it such a lousy

18  settlement, and we do think it is because there was an

19  absence of appropriate arm's-length bargaining.

20        And, Your Honor, you and I have sparred a bit

21  about that issue during the run up to this trial and we hear

22  the Court loud and clear that the absence of arm's-length

23  bargaining is not, in the Court's view, a reason in itself

24  to deny approval.  But --

25        THE COURT:  I don't think those were precisely my

1   words, but I will say that you might've captured much of the

2   essence of it.

3   (Laughter)

4            MR. ZENSKY:  Okay.  I tried to, Your Honor.  And

5   we understand that, but here's why it matters, Your Honor.

6   When you don't have an appropriate arms-length bargain, it

7   takes away a font of confidence that the Court can put in a

8   settlement like this, and you heard Mr. Sottile refer you to

9   the lowest rung of reasonableness.  Well, I think they're

10  integrally related.  And when you have an appropriate

11  bargaining process, it can help give the Court confidence in

12  the product that comes out.  These are complicated issues,

13  Your Honor.  And when the people with the greatest stake in

14  the outcome devote their resources to thinking about them

15  and they get in a room and they bang heads with each other,

16  more often than not, a settlement comes out of that process.

17  And more important, when a settlement comes out of that

18  process, it's one that the Court can have confidence in

19  because of the way in which it was reached.

20            And that didn't happen here, Your Honor, for a

21  variety of reasons.  And I think it's instructive to compare

22  where we are today, unfortunately, with where we were in

23  connection with the April plan.  Now, the April plan, in our

24  view, was the product of appropriate arms-length bargaining,

25  Your Honor.  Centerbridge, then the biggest noteholder,

1  engaged and was invited into multiple face-to-face sessions

2  with the lenders on the other side.  And as the Court, I

3  believe, will recall, and we'll hear during the trial,

4  Aurelius, who was a substantial holder at that time, had no

5  objection to the April plan, although they thought the

6  settlement was low, at least before the examiner report came

7  out, Your Honor.  And why?  Because they respected the

8  process.  They respected the manner in which the settlement

9  was negotiated, who was at the table, and the product that

10  came out of it.  In fact, Your Honor, the party trying to

11  blow up the April plan was Oaktree, not anyone on this side

12  or not Aurelius, not any noteholder, Your Honor.

13           So the problem here is that we don't have that

14  dynamic.  We are frozen out of the process.  Mr. Kurtz, the

15  lead financial advisor for the debtors, testified that

16  between the day the examiner report came out and the day the

17  settlement was announced, the second term sheet was

18  announced, he recalls a single phone call with a

19  representative of my client, Your Honor.  When he was on

20  vacation in Russia and they kept getting disconnected

21  because of a bad connection, that was the extent of the

22  discussions between the debtors and the senior noteholders

23  before announcing their settlement.  And that's a problem,

24  Your Honor, and that is why there was a -- why we ended with

25  the settlement reflected on this paper.  There was no one in

1  the room with skin on the game on our side.

2         Now, let me turn to our plan for a moment, Your

3  Honor, and then I'll wrap up.  Our plan does reserve claims

4  for litigation after emergence, and we think it's elegant in

5  its simplicity.  Our plan lets the parties negotiate from a

6  level playing field, without the overhang of bankruptcy, and

7  without the debtors and their plea to you that they need to

8  exit bankruptcy.

9         Mr. Sottile said that the plans have

10  diametrically opposed positions, but I disagree with that.

11  Their plan contemplates a raft of litigation after

12  emergence, including litigation against officers, directors,

13  shareholders, advisors, and others.  Our plan contemplates

14  substantial litigation, too.  We just don't want the debtors

15  to release what are the most valuable estate claims

16  available in connection with this leveraged buyout.

17         Now, they make all kinds of claims in their

18  papers about the problems associated with our plan and

19  putting claims in a litigation trust, but the truth is that

20  as late as September of this year, they seriously considered

21  a plan that they called their purer purity plan, to do

22  exactly that: to come out of bankruptcy with no releases and

23  no settlements and have all the litigation go forward after.

24  And Lazard and Alvarez modeled that outcome for them.

25         And I'm going to end.  I want to show you an e-

1  mail that you'll see tomorrow during Mr. Kurtz's

2  examination.  This is a Debtor Committee Lender Exhibit 836,

3  and if I could ask for that to be brought up.  This is from

4  September 23, Your Honor.  Let me hand up a copy.

5          THE COURT:  Thank you.

6          MR. ZENSKY:  This is an e-mail from Mr.

7  Liebentritt, the chief restructuring officer, to a variety

8  of people on September 23, 2010, and he's discussing various

9  potential structures for the company to emerge, and if I

10  could refer you to the bottom of page two, which we've

11  highlighted on the screen here, he tells the group, "There

12  is a purer purity plan possibility as a fallback to plan B.

13  We just started working out the details, and it appears as

14  though we might be able to get most, if not all, of the

15  company out of bankruptcy without resolving any LBO claims,

16  but the banks are not yet too interested in purer purity."

17          Then, if you flip the page, Your Honor, to page

18  three, he continues his discussion of this option and says,

19  in the second paragraph, "The purer purity referred to above

20  would essentially provide for a reserve for all of the

21  junior debt, either in full or at a lesser negotiated level.

22  I had A&M Lazard run some numbers on this," and attached is

23  Brian Whittman's responsive e-mail.  "You'll see that if you

24  increase the leverage to 1.5 billion and have the senior

25  lenders only take the equity, and with a $6.5 billion

1   valuation, the senior lenders can take 100 percent of the

2   equity, even with a 100 percent reserve if the PHONES claim

3   is as we see it."  That would leave all the LBO claims

4   behind for litigation, not just the step two claims, Your

5   Honor.  This is their document from a month below -- before

6   the settlement.  That is what our plan provides, in essence,

7   that we would like the claims reserved for litigation after

8   the company emerges, and we think our plan can and should be

9   confirmed, Your Honor.

10              THE COURT:  Thank you.

11              MR. ZENSKY:  Thank you.

12              THE COURT:  There was one other party that

13   requested permission to make an opening statement.

14              MR. PACHULSKI:  Good afternoon, Your Honor.

15   Thank you.  Isaac Pachulski of Stutman Treister & Glatt,

16   Professional Corporation, appearing on behalf of Brigade

17   Capital Management.

18              At the outset, I'd like to thank the Court for

19   giving us the opportunity to address the Court and apologize

20   -- maybe there was a misunderstanding -- for not having been

21   on last Wednesday's call, when the issue of our

22   participation came up.  I understood it was a proponents

23   pre-trial conference with all sorts of matters, to which we

24   were not a party, and we just assumed that this request

25   could be conveyed by somebody at Akin, and either the Court

1   would grant it or not, but I apologize if that created any

2   confusion or any other issues.

3         Turning to the reason for my being here today,

4   Your Honor, Brigade Capital Management holds $106 million of

5   the senior notes, roughly 7 percent of the senior notes.

6   And in our objection, we did indicate our concerns about the

7   settlement, and I'm not here to parrot what's in our

8   objection.  The problem is that having finally had the

9   opportunity to review the mountain of memos and pleadings

10  that had been filed since then, the settlement is even worse

11  than we thought.

12        And the problem that I'd like to focus on today,

13  and that I really ask the Court to consider as you hear the

14  mountains of evidence, is that it appears that at every

15  turn, the proponents of the settlement have taken value from

16  the senior noteholders and given it to somebody else who

17  isn't entitled to it.  In one case, they did it by reducing

18  the value of the settlement in a way that casts serious

19  additional questions on the reasonableness.

20        The second way they did it was they took value

21  that the senior noteholders were entitled to receive, and

22  they gave it to the other parent claims in a way that not

23  just challenges the settlement, but that violates the

24  requirement that a plan not discriminate unfairly.  And

25  there's some specific legislative history that I'll allude

1  to in a moment.  And I apologize; it was not in the papers.

2  And Congress gave one illustration of how you violate the

3  discriminate -- not-discriminate-unfairly requirement, and

4  this case is worse than the illustration that Congress said

5  would violate that requirement.

6          The third way that they took money from the

7  senior noteholders and gave it somebody else is when, in the

8  course of Oaktree -- and you heard how Oaktree was the big

9  obstacle to the April plan.  Well, between the April plan

10 and September plan, the swap claim, which was treated as a

11 senior loan claim under the April plan, after that time,

12 Oaktree bought the claim.  And guess what?  The debtors had

13 an epiphany.  And when Oaktree became a proponent of the

14 plan, that claim suddenly became another parent claim, which

15 was worth $50 million to Oaktree, a plan proponent.  And as

16 I'll explain, that isn't just a problem with the settlement;

17 that's a very specific problem with good faith.  And there's

18 a specific case to which we'd like to address the Court's

19 attention, which involved good faith under Section 1126(e),

20 but makes it clear that that conduct alone, without anything

21 else -- without the whole list of stuff in the briefs --

22 will prevent the Court from finding that this plan was filed

23 in good faith.

24          Finally, I'd like to take a moment at the end to

25 talk about what I view as the long-term bad policy involved

1  in the debtors' choice.  You've heard that there are two

2  models here.  One is we have to settle with the lenders

3  before we get out of chapter 11.  That's what I call the

4  hostage theory of chapter 11.  And the other is that if we

5  can settle, great, but if we can't, where the only problem

6  is that a company was over-leveraged by an LBO, you de-

7  leveraged it, you take it out, and you litigate later.  And

8  the reason we believe -- we're trying to figure out why they

9  gave away all of the senior noteholders' consideration, and

10  we think that's because the debtors took the position that

11  they had to settle to get out of chapter 11, and once they

12  did that, our goose was cooked.

13          Now, I'd like to go through the specifics, and

14  I'll really try to be brief.  I know that you have enough

15  drops that I don't need to add to the water torture, but

16  these points are important to us, and we don't want them to

17  get lost in the shuffle.

18          First, Your Honor, between April of 2010 and

19  September, the change in the settlement took $80 million of

20  certain value away from senior noteholders and sprinkled it

21  mostly to these senior lenders.  Now, you heard committee

22  counsel brag about certain value.  I didn't hear anybody

23  talk about how they took $80 million of certain value away.

24  Now, most of this was accomplished -- and I need to explain

25  this.  The April plan had a strip where the senior notes got

1   7.4 percent of the equity.  So they would share in the

2   appreciation, and they didn't have to worry about, you know,

3   low-ball valuations or anything else.  At that time, the

4   company was valued at $6.1 billion.  In September, they --

5   the plan was changed to fix the senior noteholders'

6   consideration to $420 million.  And then, two weeks after

7   that term sheet comes out, we have a plan with a deemed

8   enterprise value of $6.75 billion.  So in two weeks,

9   somebody found $650 million of value.  Now, if we got 7.4

10  percent of that, that's roughly $50 million.  That

11  evaporated.  And not only did it evaporate, but I have not

12  seen an explanation, in hundreds of pages of papers, of why

13  the committee sat silent when they signed the term sheet

14  that said the value was $6.1 billion, and two weeks later,

15  they signed onto a plan that said the value was $6.75

16  billion.

17          Now, the justification is that they're giving us

18  all these upside in the trusts, and I want to focus on the

19  creditors' trust for a minute, because the potential claims

20  that are being assigned to the creditors' trust, which are

21  individual creditors, state law fraudulent conveyance

22  claims, that they have retained for the -- to recover the

23  step two payments, are roughly ten times the potential

24  recovery of the litigation trust.

25          Now, the debtors would have you believe that they

1  did people a favor by giving the lion's share of the

2  creditors' trust to the senior noteholders and the other

3  non-LBO creditors.  They have it backwards.  They set up a

4  mechanism where everybody who opts into the creditors'

5  trust, and by the way, you're deemed to opt in if you don't

6  opt out, and nobody told the creditors about this problem,

7  the problem I'm about to describe.  If you opt in, you are

8  allowing your value to be diverted to the senior lenders.

9  Now how so?  It's simple.  These are individual claims, not

10  estate claims.  You have claims of non-LBO lenders going to

11  the creditors' trust, and these are claims to recover step

12  two payments, and then you have claims of the LBO lenders

13  that are supposedly being assigned to the creditor's trust.

14          The problem, Your Honor, is that the LBO lenders

15  have no claims.  They have no claims under state law,

16  because where a creditor authorizes and ratifies a transfer,

17  the creditor can't thereafter challenge the transfer of the

18  fraudulent conveyance.  And by the way, just so we're clear,

19  my client put its money where my mouth is, because they

20  opted out of the creditors' trust under the debtors' plan,

21  largely because of this concern.  On the other hand, the

22  noteholder plan does not make a gift of non-LBO lenders

23  state law fraudulent conveyance claim recoveries does not

24  make a gift of those recoveries to the senior lenders.  So

25  that's the first problem.

1           The second problem arises out of something the

2     counsel for the committee is actually proud of.  Counselor

3     for the committee pointed out that the senior note claims

4     are getting an equal, ratable distribution with the other

5     parent claims.  Now, this may not sound intuitive, but that

6     violates the requirement that a plan not discriminate

7     unfairly.  Why?  Because the senior note claims are entitled

8     to the benefit of the subordination provisions in the PHONES

9     indenture.  The other parent claims are not.  And the way

10    subordination is supposed to work, the way the waterfall

11    works, is the PHONES allocation of the settlement

12    consideration, their aliquot share, should've been

13    reallocated to the senior notes.  Now, obviously, if you do

14    that, the senior notes should've gotten a larger percentage

15    distribution than the other parent claims.  And where -- and

16    we don't have to discuss the precise ratios, but it's clear

17    it can't be a 1:1 ratio.

18          Now, if you don't want to take my word for it,

19    Your Honor, there's legislative history, and I have copies

20    of it.  It's about a page.  I have copies of it.  I can

21    present it by way of letter.  I can present it by way of a

22    pleading, but I think it's critical.  At the time the

23    Bankruptcy Code was enacted, before that time, there was no

24    such thing as a requirement that a plan not discriminate

25    unfairly, so Congress had to explain what it was talking

1  about.

2          And the legislative history gave one illustration

3  to the requirement, and it talked about the situation where

4  you have senior debt, subordinated debt, and trade debt,

5  which is neither senior nor subordinated.  And Congress gave

6  the following illustration.  If you had $100 of trade debt,

7  $100 of senior debt, and $100 of subordinated debt, in that

8  situation, if the senior debt gets 25 cents and the trade

9  debt gets 15 cents, the plan discriminates unfairly against

10 the senior debt.  And you're saying, wait a minute.  How can

11 it discriminate unfairly against the senior debt when the

12 senior debt's getting more than the trade debt?  The answer

13 is by application of the waterfall, the senior notes -- the

14 senior debt should've had a 2:1 ratio.  And in that precise

15 illustration, because you didn't hit the 2:1 ratio, you

16 violated the requirement that the plan not discriminate

17 unfairly.

18         Now, if a plan that gives senior debt more than

19 trade debt violates that requirement, what are we to say

20 about a plan with a 1:1 ratio?  And so by making this gift

21 of what should've come to the senior noteholders to the

22 other parent creditors, they have an insurmountable obstacle

23 to confirmation.  You -- Your Honor, I respectfully submit

24 you cannot read that legislative history and confirm this

25 plan.  And at the conclusion, I'd just like to know how to

1  get it to the Court, because I think it's that important.

2       The third way that they took value from the

3  senior noteholders --

4       THE COURT:  I don't know.  I guess, without

5  opening the Pandora's Box, you might amend your objection.

6       MR. PACHULSKI:  Okay.  I will -- and what I'm

7  going to do, I'm going to file an amendment.  I'll quote the

8  language, and I'm not going to say anything else.  I think

9  between that and the transcript, Your Honor will have the

10 gist.

11      The third point -- the third way that the value

12 was taken away from us involves Oaktree, which you heard

13 about.  And the facts here are pretty simple and

14 straightforward.  The April plan took the $150 million swap

15 claim that the Court has heard about, and it treated it as a

16 senior loan claim.  At that time, Oaktree was not a plan

17 proponent, and Oaktree didn't own the claim.  In July --

18 based on what I've read in the noteholder brief, in July,

19 Oaktree bought that claim.  After Oaktree bought that claim,

20 all of a sudden, it became another parent claim, and that

21 delta -- that difference is worth $50 million of which $40

22 million comes out of settlement consideration.  So by making

23 Oaktree a proponent of the plan and agreeing to elevate

24 Oaktree's treatment from a senior loan claim to another

25 parent claim, it got a $50 million bonus for becoming a plan

1  proponent.

2       Now, Your Honor, it's been argued that the swap

3  claim is different from the other senior loan claims because

4  of the safe harbor.  This one's easy.  Section 546(g), like

5  Section 546(e), only prevents the avoidance of a transfer.

6  As you recall, Section 548 permits you to avoid obligations

7  and transfers.  Section 546(g), like 546(e), only refers to

8  transfers.  And in fact, you don't have to take my word for

9  it, Professor Klee, at Volume 2, page 246 of the examiner's

10  report, in discussing this issue with respect to Section

11  546(e), stated unequivocally that Section 546(e) does not

12  safe harbor the avoidance of an obligation.

13       Now, what's really interesting about this is that

14  the plan proponents didn't even try to dress this up as a

15  compromise.  I mean, they made what they were doing

16  painfully obvious.  I could see someone maybe saying, "Well,

17  we're not sure.  Maybe it should be a senior note claim.

18  Maybe it should be another parent claim.  There's $50

19  million at stake.  We'll come up with some number, because,

20  you know, there's an issue here."  Well, they made it

21  simple.  They simply gave them the $50 million.

22       Now, there's one case I'd ask the Court to look

23  at, in considering this kind of conduct.  It doesn't involve

24  good faith under Section 1129(a).  It involves good faith in

25  the vote designation context under Section 1126(e).  That

1    case is a case called *Featherworks 25 BR 634 at 640*.  And

2    the facts are really simple.  Unsecured creditor votes no on

3    the plan.  Creditor can't get acceptance by the class.

4    Shortly thereafter, the unsecured creditor now moves to

5    change its vote.  Well, in between, an insider, ostensibly

6    in settlement of a supposed claim of this creditor against

7    the insider, agrees to pay the -- that creditor $25,000 in

8    exchange for a mutual release and in exchange for accounts

9    receivable, to kind of dress this up as a real transaction.

10   And the unsecured creditor says, "Your Honor, we did not

11   change our vote because we got the $25,000.  We just changed

12   our vote."  The Court took that with a healthy skepticism

13   and refused to allow the creditor to change its vote.  And

14   all I'm asking the Court to do, when it hears the offered

15   justifications for the $50 million gift to Oaktree, I'd

16   simply ask that the Court share the skepticism that the

17   Court had in the *Featherworks* case.

18           One point, and I'm sorry this is out of order,

19   but on the issue of the unfair discrimination, the argument

20   was made -- has been made by the debtors that the lenders

21   chose to allocate extra-settlement consideration to the

22   other parent claims, so that's okay.  Your Honor, that is a

23   variant on the gifting argument: that one class can give

24   value to some other class, in violation of the distributive

25   entitlement of a dissenting class in between under the code.

1    And the 3rd Circuit rejected that in the *Armstrong World*

2    case, and as I think the Court is aware, recently the 2nd

3    Circuit reversed an order confirming a plan in the *DBSD*

4    *North America* case.  I can include those cites in my

5    amendment or -- I just want to -- I don't want to make it

6    hard for the Court to follow.

7              THE COURT:  I know the cases.

8              MR. PACHULSKI:  Okay.  So when you hear the

9    argument -- and by the way, this isn't a gift.  There's a --

10   this whole case is about a fight as to whether the senior

11   lenders are entitled to what they purport to be gifting.

12   This isn't a case where there's an -- it's clear that

13   they're entitled to it, so it's not even a gift.  It's worse

14   than the gift cases.  And I'll admit that the gift cases

15   involve the absolute-priority rule, and this involves the

16   not-discriminate-unfairly requirement, but they are both

17   distributive entitlements of the dissenting creditor class.

18   They are both in the same part of the code.  And they are

19   distributive entitlements of equal dignity.

20              The final point I'd like to make, Your Honor, is

21   really more a global point.  It's more of a forest point

22   than a trees point.  And the forest point is this.  There's

23   a significant negative effect, long-term effect of the

24   debtors' concept of chapter 11, and their concept is why all

25   this value is being taken from us and given to other folks,

1    who aren't entitled to it.  Their theory of chapter 11 is

2    that whenever you have a busted LBO, whenever you have an

3    LBO that drove the company into bankruptcy and you have a

4    potential challenge to the LBO debt, you have to settle the

5    LBO debt.  That's what they've done here.  They're basically

6    telling you, Your Honor, we have to settle this debt, or

7    else we have to be mired in chapter 11 forever.  That's what

8    I call the hostage theory of chapter 11.  And when a debtor

9    embraces that theory, it's no surprise that they give away

10   somebody's money.  Here, the somebody happens to be us.

11   But, you know, that is one of the many reasons why we have

12   preferred the noteholder plan, as a matter of our economic

13   self-interest, and reject the DCL plan.  The noteholder plan

14   doesn't discriminate unfairly against us.  The noteholder

15   plan doesn't take away our upside in the appreciation of the

16   company.  And I just heard about another $200 million in

17   upside that was apparently conceded, only the creditors

18   committee missed it, because somebody didn't read the

19   papers.  Okay.  It doesn't give a $50 million gift to

20   Oaktree for becoming a plan proponent.  And it doesn't

21   divert value from non-LBO creditors to LBO creditors in the

22   form of a creditors' trust that accomplishes that result.

23           So, as the Court hears all this testimony and the

24   debtors talking about what a great plan they are, please

25   bear in mind the ways that they've taken value from senior

1   noteholders and the way that what they have done violates

2   the bankruptcy code in a number of different ways.

3         And again, I appreciate the Court letting me

4   talk, given everybody else that's in this courtroom.

5         If I might, I also just want to do one

6   administrative matter, and this is just to alert the Court

7   to something I think will be solved.  We have three

8   objections in our objection.  I've dealt with the first one.

9   The third one that had to do with post-petition interest,

10  the debtors have addressed that in an amendment to the plan.

11  We're fine with that.

12        The second one that had to do with the whole

13  creditors' trust structure, the debtors have agreed, I

14  think, with our view of the law, but I have a quarrel with

15  their changes, so what I'm going to do is I'm going to send

16  a letter.  I'll send it to all the proponents, unless they

17  can give me someone.  I'll tell them what my problem is.

18  Hopefully, we can solve it, and I don't have to darken Your

19  Honor's door with it, but if I do, I guess I'll have to come

20  back to Delaware.

21              THE COURT:  Yeah, you --

22              MR. PACHULSKI:  And thank you, again, Your Honor

23  --

24              THE COURT:  -- know where to find us.

25              MR. PACHULSKI:  -- for hearing me out.

1              THE COURT:  It's always good to see you, Mr.

2   Pachulski.

3              MR. PACHULSKI:  Thank you, Your Honor.

4              THE COURT:  Thank you.

5              MR. BENNETT:  Your Honor, I was not on your dance

6   card this afternoon, but if it would be helpful, perhaps I

7   can illuminate the issues that Mr. Pachulski's trying to

8   raise for the first time, and of course, not at the original

9   objection deadline, so of course, nobody had a chance to

10  deal with it.  But if Your Honor would prefer that we wait,

11  we'll wait.  It's up --

12             THE COURT:  How much time --

13             MR. BENNETT:  -- to Your Honor.

14             THE COURT:  -- do you want?

15             MR. BENNETT:  How about five minutes?

16             THE COURT:  You can have five minutes.  And that

17  will be the last five on openings.

18             MR. BENNETT:  Bruce Bennett.

19             First, value change.  You will hear, in the

20  testimony tomorrow from Mr. Kurtz and from many other

21  people, that before the mediation and at the mediation,

22  Lazard walked the halls and told everybody that their value

23  was changing.  Nobody was surprised.  Everybody knew.

24             Number two, on the supposed inappropriateness of

25  the distribution scheme relating to the creditors' trust,

1  and Mr. Pachulski says, well, why is it that participants in

2  the creditors' trust who clearly are entitled to benefits

3  under the litigation trust but might or might not have

4  interest in benefiting from the creditors' trust

5  nevertheless share?  Well, the practical reason for that,

6  Your Honor, was to make sure there wouldn't be fights over

7  which cases in the two trusts that are asserting the same

8  theories -- one under state law, one under federal law --

9  who should win.  That was the reason for that provision.  I

10 don't know why Mr. Pachulski even raises it anymore, because

11 an opt-out was provided, and Brigade opted out, and if they

12 didn't like the kind of effort to avoid the competition

13 between the claims, they could get away from the construct,

14 and they did.  So I don't understand what his remaining

15 problem is.

16         With respect to the senior/junior, what Your

17 Honor will see in the testimony, and this is now referring

18 to the unsecured creditors, that it's far from clear that

19 every single member of the unsecured creditor class is, in

20 fact, not entitled to the subordination provisions.  Many of

21 them are.  I'll leave that for further testimony.

22         And probably the second-most-important issue is

23 the whole swap claim and Oaktree.  First of all, the most

24 important reason why the swap claim should have been, from

25 the very beginning, a general unsecured claim at the parent

1  level, is because, as a claim against the parent, it is

2  separately documented, number one.  And number two, by

3  definition, fair value was given at the time.  The swap, of

4  course, did not generate money for distribution to

5  shareholders.  The swap protected the debtor from interest-

6  rate fluctuations going forward.  It has an absolutely,

7  crystal clear, fair value defense.  It may also be entitled

8  to a safe harbor.  And by the way, it is separately

9  documented at the parent level from the rest of the claims

10 under the credit agreement.  It separately benefits from the

11 guarantees at the subsidiary level, so at the guarantee, it

12 is exactly the same as a credit agreement claim.  At the

13 parent, it is completely different.  If Mr. Pachulski had

14 read everybody else's papers at the time he was supposed to

15 be writing his, he would understand these things.

16          Finally, and the most important point, chapter 11

17 by hostage?  The entire approach that Aurelius has had to

18 this case is that by holding money behind, or keeping the

19 company in chapter 11 -- which was its first choice, but

20 when it saw plans coming, it knew it had to change strategy

21 -- it's by holding distributions behind, it will force

22 people to settle for higher numbers, whether or not that's

23 warranted by the actual claims being litigated.  I'm not

24 going to repeat what Mr. Sottile said here.  It's up to Mr.

25 Sottile to convince Your Honor that the committee did a good

1  job, and they did.  It's cost my clients a lot of money.

2  But it's really not fair to talk about this as the debtors

3  holding people hostage.  The people who want to use hostage

4  theory in bankruptcy are the people sitting on that side of

5  the room.

6         If Your Honor has any questions, I'm happy to

7  take them.  I think that was under five minutes.

8         THE COURT:  Yes, it was.  Thank you, Mr. Bennett.

9  (Laughter)

10         THE COURT:  All right.  Look, there's a lot yet

11  to be said and heard, much maybe to be decided, but I'd like

12  the parties to consider the following:  Just to generally

13  refer to the two sides, you both may be so persuasive that

14  you've convinced me that both plans are confirmable.  And if

15  you do, I'll then be required to select one, which should be

16  confirmed.  But consider this: you both may be so effective

17  in your objections that you convince me neither is

18  confirmable.  What then?

19         Let me give you a preview of what the schedule

20  will look like for this week, and it results in part of my

21  having to add matters here and there, because the rest of my

22  docket doesn't go into hiatus as I set aside two weeks for

23  Tribune.  There is a telephonic hearing at 3:30 today in the

24  courtroom.  Now, you're free to leave your things where they

25  are.  The courtroom will be locked overnight, as it will be

1  every night.  You do so at your own risk, but you are free

2  to do so.

3          Tomorrow, I intend to start at 10:00 and to go at

4  least until 6:00, and later, if, in terms of where we stand

5  with witnesses and my stamina, it makes sense to do that.

6  We will have a lunch break, during which I will have a

7  telephonic hearing, but it -- I'll make it fall within the

8  lunch break, so it shouldn't change the hearing time for the

9  day.

10          On Wednesday, I intend to start at 10:00 and go

11  until 6:00 or later.  On Thursday, I have a 9 o'clock

12  hearing.  I'm not -- I don't think it will be completely

13  telephonic, but again, we'll try to do it in such a way as

14  that your papers aren't disturbed.  We will begin our

15  session on Thursday at 10:30, and we will go until 6:00 or

16  later.  On Friday, we will start at 9:30, because I need to

17  end a little earlier in the day at 3:30.  And as we get

18  closer to the end of the week, I'll try to give you a

19  preview, depending upon what demands are made on me in other

20  matters of daily schedules.

21          Are there any questions about -- any comments?

22  Anything else we need to talk about before we adjourn for

23  the day?

24  (No audible response)

25          THE COURT:  Thank you all very much.  That

1  concludes this hearing.  Court will stand in recess.

2  (Proceedings adjourned at 3:10 p.m.)

3                    CERTIFICATION

4          I certify that the foregoing is a correct

5  transcript from the electronic sound recording of the

6  proceedings in the above-entitled matter.

7

8

9  _____          March 7, 2010
10 Shelley M. Kohr                                  Date
11 Transcriber

| Word | Page:Line |
|---|---|
| **08-13141-kjc**(1) 1:5 | |
| **100-percent**(1) 18:11 | |
| **7.5-billion-dolla**(1) 63:24 | |
| **am** (1) 69:22 | |
| **abandoned**(1) 30:23 | |
| **abbreviate**(1) 49:12 | |
| **abbruzzese**(2) 5:38 5:39 | |
| **abid**(2) 2:45 13:20 | |
| **ability**(2) 34:1 47:14 | |
| **able**(6) 25:22 28:18 33:2 51:12 57:8 69:14 | |
| **about**(79) 14:16 15:2 16:25 17:2 18:9 18:24 19:20 20:4 21:21 22:2 22:3 22:7 22:16 22:17 23:2 23:3 24:18 26:14 28:17 29:20 30:17 33:10 36:18 37:24 38:9 40:12 41:6 41:20 42:8 42:20 43:24 43:25 44:1 44:25 45:20 46:12 46:16 48:15 48:15 48:15 48:17 48:19 48:25 51:18 52:16 53:14 53:19 54:22 56:3 56:19 57:10 60:13 60:21 61:9 65:21 66:14 68:15 72:25 73:22 73:23 74:2 75:6 75:7 76:20 77:1 77:3 77:20 78:13 78:15 79:13 81:10 82:16 82:24 84:15 87:2 88:21 88:22 | |
| **above**(3) 43:4 43:14 69:19 | |
| **above-entitled**(1) 89:6 | |
| **abramowitz**(1) 5:43 | |
| **absence**(2) 65:19 65:22 | |
| **absent**(1) 34:1 | |
| **absentia**(1) 34:23 | |
| **absolute-priority**(1) 81:15 | |
| **absolutely**(5) 35:24 51:20 86:6 | |
| **accept**(5) 41:9 41:12 41:18 42:2 59:17 | |
| **acceptance**(1) 80:3 | |
| **accepting**(1) 42:5 | |
| **access**(1) 30:1 | |
| **accomplished**(1) 73:24 | |
| **accomplishes**(1) 82:22 | |
| **account**(3) 45:5 45:12 45:17 | |
| **accounts**(1) 80:8 | |
| **accrues**(1) 62:6 | |
| **accurate**(1) 18:12 | |
| **accuse**(1) 19:9 | |
| **acknowledge**(1) 58:10 | |
| **acknowledges**(1) 53:20 | |
| **across**(2) 19:12 64:15 | |
| **actual**(1) 86:23 | |
| **actually**(4) 17:25 27:25 31:21 76:2 | |
| **adam**(1) 3:37 | |
| **add**(2) 73:15 87:21 | |
| **add-ons**(1) 56:10 | |
| **added**(1) 15:10 | |
| **addition**(1) 38:20 | |
| **additional**(9) 15:20 16:6 16:22 21:8 21:10 23:5 36:23 62:5 71:19 | |
| **address**(3) 31:13 70:19 72:18 | |
| **addressed**(1) 83:10 | |
| **adelman**(1) 9:26 | |
| **adequacy**(1) 57:11 | |
| **adequate**(2) 55:1 57:15 | |
| **adjourn**(1) 88:22 | |
| **adjourned**(1) 89:2 | |
| **adler**(1) 4:42 | |
| **administrativ**(1) 83:6 | |
| **admirably**(1) 35:23 | |
| **admit**(2) 62:6 81:14 | |
| **admitted**(4) 28:9 29:24 30:2 63:23 | |
| **advance**(1) 27:6 | |
| **advantage**(2) 36:1 56:14 | |
| **advice**(1) 22:13 | |
| **advisor**(3) 62:9 62:12 67:15 | |
| **advisors**(1) 68:13 | |
| **affiliate**(1) 31:23 | |
| **afforded**(1) 41:15 | |
| **after**(8) 23:11 25:18 31:9 33:2 45:7 51:21 68:4 68:11 68:23 70:7 72:11 74:6 78:19 | |

| Word | Page:Line |
|---|---|
| **afternoon**(15) 13:2 13:3 13:4 13:5 13:20 19:5 29:16 32:19 32:22 36:11 52:1 52:11 54:21 70:14 84:6 | |
| **again**(7) 14:16 24:8 34:4 59:13 83:3 83:22 88:13 | |
| **against**(10) 36:22 37:14 38:21 55:5 68:12 77:9 77:11 80:6 82:14 86:1 | |
| **agenda**(5) 13:7 13:14 13:19 26:6 29:1 | |
| **ago**(5) 17:6 18:16 21:7 23:8 33:9 | |
| **agree**(5) 16:12 44:2 50:14 52:22 55:22 | |
| **agreed**(7) 14:17 18:10 25:16 27:1 31:20 31:22 83:13 | |
| **agreeing**(1) 78:23 | |
| **agreement**(14) 7:4 21:2 21:6 21:11 27:3 28:9 32:3 32:5 32:6 32:12 33:14 33:21 86:10 86:12 | |
| **agreements**(1) 31:22 | |
| **agrees**(4) 46:4 56:25 61:22 80:7 | |
| **ahead**(2) 14:12 49:21 | |
| **akin**(6) 2:43 9:19 13:20 32:25 52:12 70:25 | |
| **alert**(1) 83:6 | |
| **aliquot**(1) 76:12 | |
| **all**(72) 13:10 13:17 18:16 19:2 19:24 20:2 21:4 21:21 21:22 22:3 22:21 23:21 24:6 25:6 26:1 26:12 28:1 28:4 28:24 29:6 29:10 30:6 30:25 31:2 31:7 32:7 35:11 35:15 36:2 36:21 37:15 37:21 39:13 41:22 42:23 43:1 44:2 45:2 47:8 47:16 47:23 48:16 50:4 51:5 54:2 54:16 54:18 55:13 55:22 55:24 56:15 56:25 57:15 59:11 61:13 63:17 68:17 68:23 69:14 69:20 70:3 70:23 73:9 74:18 78:20 80:14 81:24 82:21 83:16 85:23 87:10 88:25 | |
| **alleged**(2) 33:8 51:18 | |
| **alliances**(1) 38:3 | |
| **allies**(3) 40:19 41:12 50:3 | |
| **allinson**(1) 2:36 | |
| **allison**(1) 1:30 | |
| **allocate**(1) 80:21 | |
| **allocation**(1) 76:11 | |
| **allow**(1) 80:13 | |
| **allowed**(6) 46:18 54:8 63:6 64:6 64:19 64:22 | |
| **allowing**(1) 75:8 | |
| **allude**(1) 71:25 | |
| **almost**(5) 41:5 41:10 57:25 58:6 59:19 | |
| **alone**(4) 46:5 46:8 60:10 72:20 | |
| **along**(1) 29:2 | |
| **already**(4) 13:24 20:15 45:24 49:7 | |
| **also**(13) 15:10 16:12 17:22 28:5 33:22 34:2 34:5 36:25 38:15 38:25 41:2 83:5 86:7 | |
| **alter**(1) 20:23 | |
| **alternative**(2) 7:41 7:42 | |
| **although**(4) 15:25 26:12 32:24 67:5 | |
| **alvarez**(3) 12:13 12:13 68:24 | |
| **always**(1) 84:1 | |
| **amanda**(1) 3:6 | |
| **amend**(1) 78:5 | |
| **amendment**(3) 78:7 81:5 83:10 | |
| **america**(4) 8:4 8:10 9:15 81:4 | |
| **americas**(1) 4:50 | |
| **amish**(1) 9:16 | |
| **amit**(1) 6:33 | |
| **among**(3) 36:20 36:24 56:12 | |
| **amount**(8) 28:22 35:19 41:5 41:7 42:1 64:6 64:20 64:20 | |
| **amy**(1) 8:41 | |
| **analyses**(9) 16:6 16:25 17:17 18:2 24:11 24:13 24:20 24:23 57:6 | |

| Word | Page:Line |
|---|---|
| **analysis**(28) 14:25 15:6 15:11 15:17 15:18 16:16 16:1 16:3 16:22 18:14 19:20 19:21 20:1 21:20 22:5 22:7 22:9 22:12 22:15 22:16 22:17 23:2 23:3 24:2 24:15 24:16 42:13 57:16 | |
| **analyze**(1) 58:11 | |
| **and**(301) 13:8 13:12 13:12 13:14 13:21 14:3 14:11 14:13 14:16 14:18 14:19 15:3 15:8 15:12 15:16 16:1 16:4 16:5 16:6 16:14 16:17 17:1 17:3 17:5 17:8 17:15 17:17 17:22 18:9 18:11 18:19 18:21 18:22 19:9 19:10 19:12 19:22 19:24 20:3 20:5 20:8 20:22 21:3 21:4 21:5 21:11 21:14 21:15 21:16 21:24 21:25 22:5 22:10 22:19 22:21 23:4 24:4 24:5 24:19 24:20 24:21 24:25 25:12 25:18 25:22 26:6 26:7 26:19 26:20 26:22 27:5 27:7 27:10 27:12 27:13 27:22 28:2 28:9 28:11 28:19 28:23 29:1 29:20 29:21 29:24 30:2 30:11 30:18 30:19 30:25 31:11 31:19 31:20 31:24 31:25 32:2 32:5 32:10 32:14 32:15 32:20 33:2 33:10 33:10 33:21 34:3 34:4 34:5 35:9 35:22 35:24 36:1 36:4 36:6 36:14 37:2 37:7 37:8 37:19 37:23 38:7 38:7 38:18 38:22 39:2 39:15 39:23 40:4 40:5 40:7 40:11 40:19 41:1 41:12 41:21 41:25 43:1 43:13 43:18 43:19 43:22 43:23 44:1 44:2 44:2 44:5 44:15 44:18 45:3 45:12 45:13 46:3 46:6 46:9 46:21 47:1 47:3 47:10 47:11 47:13 47:20 48:3 48:5 48:15 48:18 48:20 48:21 48:23 49:16 50:2 50:3 50:7 50:7 51:20 51:20 51:12 52:13 52:15 52:17 52:19 52:20 52:20 52:23 52:24 52:24 53:5 53:16 53:25 54:2 54:4 54:5 54:16 54:18 54:19 54:19 54:20 54:22 54:25 55:3 55:4 55:12 55:14 55:15 55:24 55:25 56:3 56:7 56:13 56:14 57:4 57:14 57:20 57:20 57:21 57:21 57:23 58:2 58:2 58:3 58:8 58:9 58:10 58:16 58:22 58:24 59:1 59:5 59:6 59:11 59:12 59:21 59:23 60:3 60:9 60:20 60:21 60:23 61:1 61:1 61:2 61:3 61:5 61:8 61:10 61:12 61:14 61:16 61:17 61:25 62:3 62:15 62:17 62:18 63:2 63:4 63:12 63:12 63:14 63:14 63:16 63:19 63:21 63:23 64:1 64:7 64:8 64:14 65:1 65:8 65:9 65:15 65:16 65:18 65:20 65:20 65:21 65:22 66:4 66:8 66:10 66:13 66:15 66:15 66:17 66:20 66:21 67:1 67:2 67:3 67:7 67:9 67:16 67:20 67:22 67:23 67:24 68:3 68:4 68:6 | |
| **anderson**(1) 4:5 | |
| **andrea**(1) 10:9 | |
| **andrew**(10) 3:31 3:45 4:49 5:18 6:21 7:13 8:43 8:45 11:52 19:5 | |
| **angeles**(2) 4:29 5:9 | |
| **angell**(1) 5:30 | |

| Word | Page:Line |
|---|---|
| **angelo**(12) 7:5 31:12 31:18 31:22 31:23 32:3 32:18 33:16 33:17 33:19 34:3 34:8 | |
| **anna**(2) 10:24 10:24 | |
| **announced**(2) 67:17 67:18 | |
| **announcing**(1) 67:23 | |
| **anomaly**(1) 41:25 | |
| **another**(10) 14:3 58:3 63:15 64:1 64:1 72:14 78:20 78:24 79:18 82:16 | |
| **answer**(2) 46:10 77:12 | |
| **answer's**(1) 29:5 | |
| **any**(18) 15:18 18:13 19:2 19:15 23:9 24:24 26:8 31:3 37:6 39:9 39:24 67:12 69:15 71:1 71:2 87:6 88:21 88:22 | |
| **anybody**(5) 18:4 28:13 43:6 43:7 73:22 | |
| **anymore**(1) 85:10 | |
| **anyone**(5) 29:11 31:4 32:17 52:8 67:11 | |
| **anything**(6) 20:23 41:24 72:20 74:3 78:8 88:22 | |
| **apologize**(3) 70:19 71:1 72:1 | |
| **apparent**(1) 37:25 | |
| **apparently**(4) 20:17 29:12 33:13 82:17 | |
| **appear**(2) 24:23 61:16 | |
| **appearances**(8) 5:36 6:2 7:1 8:1 9:1 10:1 11:1 12:1 | |
| **appeared**(2) 19:12 20:11 | |
| **appearing**(1) 70:16 | |
| **appears**(5) 17:15 24:10 41:25 69:13 71:14 | |
| **application**(3) 32:1 54:11 77:13 | |
| **applied**(1) 61:10 | |
| **applies**(2) 29:23 30:1 | |
| **appreciate**(2) 30:12 83:3 | |
| **appreciation**(2) 74:2 82:15 | |
| **approach**(1) 86:17 | |
| **appropriate**(5) 15:12 65:19 66:6 66:10 66:24 | |
| **approval**(2) 43:3 65:24 | |
| **approve**(2) 65:4 65:9 | |
| **april**(10) 66:23 66:23 67:5 67:11 72:9 72:9 72:11 73:18 73:25 78:14 | |
| **are**(109) 13:11 13:14 17:5 17:10 18:6 18:23 19:20 21:18 24:20 24:20 24:24 26:14 26:14 26:15 26:18 26:25 27:20 28:5 28:15 28:15 28:25 29:2 29:8 30:2 30:18 31:3 31:16 32:6 33:13 33:19 35:18 35:25 36:25 38:14 38:19 39:13 39:19 40:3 40:12 40:21 41:17 41:19 41:22 42:10 43:5 43:23 44:10 44:15 45:18 47:4 47:5 47:5 47:7 47:13 47:19 48:1 48:11 48:17 51:17 52:22 54:7 55:14 55:19 56:20 58:1 59:18 60:2 60:5 61:7 63:8 63:19 64:6 64:13 65:2 65:12 66:12 66:22 67:14 68:15 69:16 73:1 73:16 74:20 74:20 74:23 75:7 75:9 75:11 75:13 76:4 76:7 76:9 77:19 78:13 80:2 81:11 81:16 81:18 81:18 82:24 85:2 85:7 85:21 87:4 87:14 87:25 88:1 88:19 88:21 | |
| **areas**(4) 26:13 26:19 27:2 57:22 | |
| **aren't**(1) 46:23 | |
| **aren't**(2) 52:8 88:14 | |
| **argue**(2) 24:14 48:5 | |
| **argued**(1) 79:2 | |
| **argument**(10) 46:19 46:20 49:23 56:5 56:7 58:21 59:22 80:19 80:23 81:9 | |
| **arguments**(6) 42:10 45:18 45:24 45:25 46:16 47:25 | |
| **arif**(1) 9:6 | |
| **arisen**(1) 14:22 | |
| **arises**(1) 76:1 | |
| **arising**(1) 46:13 | |
| **arms-length**(2) 66:6 66:24 | |
| **armstrong**(2) 5:47 81:1 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**arm's-length**(2) 65:19 65:22

**around**(1) 21:6

**arrowgrass**(2) 9:4 9:4

**arthur**(1) 10:28

**ascertain**(1) 33:16

**ashby**(1) 3:4

**ashish**(1) 10:5

**ashley**(1) 6:7

**aside**(2) 39:10 87:22

**ask**(9) 19:8 29:11 60:13 62:3 65:16 69:3 71:13 79:22 80:16

**asked**(13) 16:5 16:11 17:20 17:22 20:13 23:8 32:7 37:4 40:1 53:14 60:9 60:14 62:10

**asking**(4) 17:12 30:20 43:5 80:14

**assert**(1) 48:2

**asserting**(1) 85:7

**asset**(2) 10:19 10:20

**assets**(4) 15:9 39:4 47:15 55:10

**assigned**(2) 74:20 75:13

**associate**(1) 15:22

**associated**(2) 63:13 68:18

**assume**(1) 45:3

**assumed**(1) 70:24

**assuming**(1) 28:8

**assumption**(1) 45:4

**assumptions**(6) 15:12 15:13 15:14 16:2 16:4 24:12

**atamian**(1) 6:29

**attached**(4) 17:3 18:25 22:8 69:22

**attempted**(1) 61:5

**attention**(1) 72:19

**audible**(2) 31:6 88:24

**august**(4) 20:7 22:4 24:1 24:19

**aurelius**(22) 2:43 3:4 9:1 9:18 13:1 13:21 19:18 19:13 21:2 26:3 31:11 31:15 33:9 34:6 40:19 41:4 41:12 50:3 52:13 67:4 67:12 86:17

**aurelius's**(4) 17:9 22:5 35:7 41:8

**austin**(3) 1:23 8:28 35:17

**authorizes**(1) 75:16

**available**(2) 16:13 68:16

**ave**(2) 2:7 3:7

**avenue**(4) 2:24 4:27 4:50 5:7

**avoid**(4) 21:2 45:5 79:6 85:12

**avoidance**(15) 45:1 45:19 46:5 46:13 46:18 47:9 47:23 51:9 55:23 57:20 58:19 59:10 59:23 79:5 79:12

**avoided**(8) 44:13 44:14 44:21 57:24 58:25 59:7 59:7 63:16

**avoiding**(1) 51:8

**aware**(7) 32:25 37:15 41:4 41:22 43:1 45:24 81:2

**away**(15) 16:11 39:14 50:5 50:6 55:24 63:21 65:7 66:7 73:9 73:20 73:23 78:12 82:9 82:15 85:13

**back**(8) 17:12 23:7 25:1 28:24 29:8 54:13 62:19 83:20

**backwards**(1) 75:3

**bad**(3) 51:19 67:21 72:25

**baiera**(1) 7:6

**balance**(5) 54:10 56:4 56:10 56:17 56:21

**bale**(1) 6:48

**banc**(1) 11:4

**bang**(1) 66:15

**bank**(5) 8:4 8:10 10:31 11:29 11:29

**bankruptcy**(14) 1:1 1:19 35:21 36:3 39:1 46:12 68:6 68:8 68:22 69:15 76:23 82:3 83:2 87:4

**banks**(4) 54:7 55:2 55:12 69:16

**barclays**(3) 5:30 6:28 6:40

**barely**(1) 43:6

**bargain**(1) 66:6

**bargaining**(4) 65:19 65:23 66:11 66:24

**based**(6) 13:8 32:11 60:9 60:10 61:17

**basically**(1) 82:5

**basis**(4) 21:3 27:9 28:14 34:5

**bear**(2) 31:8 82:25

**bears**(1) 32:1

**became**(3) 72:13 72:14 78:20

**because**(38) 15:2 19:10 20:2 20:12 25:2 29:7 30:21 33:22 37:17 42:5 47:19 51:10 53:6 59:23 62:1 62:25 63:7 63:8 65:18 66:19 67:7 67:21 73:10 74:19 75:16 75:15 75:21 76:7 77:15 78:1 79:3 79:19 80:11 82:18 85:10 86:1 87:21 88:16

**becoming**(2) 78:25 82:20

**been**(29) 14:11 14:13 17:6 17:16 18:15 18:16 20:15 22:17 24:3 26:6 26:10 27:11 28:21 29:6 29:23 35:10 35:21 52:4 52:16 52:17 54:16 58:23 60:18 70:20 71:10 76:12 79:2 80:20 85:24

**before**(27) 1:18 13:13 14:16 14:17 14:24 15:1 16:8 16:9 17:10 19:11 22:23 24:14 27:12 29:10 43:24 48:1 49:7 50:5 53:20 60:18 67:6 67:23 70:5 73:3 76:23 84:21 88:22

**begin**(2) 52:14 88:14

**beginning**(1) 85:25

**behalf**(8) 13:6 13:21 29:17 31:11 31:15 32:18 35:16 70:16

**behind**(3) 70:4 86:18 86:21

**being**(14) 14:22 15:17 26:24 39:2 52:25 63:8 64:10 64:15 64:23 71:3 74:20 75:13 81:25 86:23

**belief**(1) 53:9

**believe**(18) 13:13 14:2 29:5 36:14 40:9 40:12 40:25 42:22 43:19 46:3 50:1 50:25 57:13 58:21 59:5 67:3 73:8 74:25

**believed**(2) 43:7 43:8

**below**(2) 53:17 70:5

**ben**(1) 6:43

**bench**(1) 31:9

**bendernagel**(11) 1:25 26:9 26:9 27:17 27:19 27:20 28:11 29:5 29:12 29:15 29:19

**benefit**(7) 36:2 40:22 48:4 51:9 56:17 59:19 76:8

**benefiting**(2) 59:22 85:4

**benefits**(3) 56:13 85:2 86:10

**benjamin**(1) 2:18

**bennett**(8) 4:24 9:50 84:5 84:13 84:15 84:18 84:18 87:8

**benson**(2) 3:19 11:8

**berke**(2) 7:16 7:17

**bernstein**(1) 2:19

**bet**(8) 49:25 50:10 50:11 50:13 50:17 51:5 51:7 51:8

**between**(13) 18:8 36:17 38:1 40:2 54:16 67:16 67:22 72:9 73:18 78:9 80:5 80:25 85:13

**beyond**(1) 27:2

**bifferato**(1) 3:12

**big**(6) 46:2 46:4 46:24 46:25 47:5 72:8

**bigelow**(1) 11:19

**bigger**(1) 46:7

**biggest**(1) 66:25

**bill**(1) 3:5

**billion**(23) 57:25 57:25 58:5 58:6 58:8 59:19 59:23 61:16 61:20 61:25 62:16 63:22 64:7 64:9 64:20 65:7 69:24 69:25 74:4 74:8 74:14 74:16

**billion-dollar**(1) 63:25

**billions**(2) 39:12 39:12

**bingham**(1) 8:18

**bit**(8) 27:24 38:9 48:25 49:6 61:2 61:14 63:19 65:20

**blabey**(1) 7:22

**black**(3) 53:7 61:2 63:24

**blackberry**(1) 32:23

**blake**(1) 4:17

**blank**(1) 5:11

**block**(1) 5:17

**blocking**(1) 41:8

**blow**(1) 67:11

**blue**(1) 35:5

**board**(2) 4:33 9:40

**bob**(1) 2:22

**bockius**(1) 11:4

**bonus**(1) 78:25

**both**(8) 25:3 26:19 57:21 81:16 81:18 87:13 87:14 87:16

**bottom**(3) 59:14 63:3 69:10

**bought**(3) 72:12 78:19 78:19

**bounds**(1) 27:13

**bowden**(1) 3:5

**box**(4) 3:8 39:11 39:13 78:5

**brad**(1) 9:41

**brady**(1) 4:16

**brag**(1) 73:22

**brandywine**(1) 4:18

**brass**(1) 7:26

**break**(3) 24:5 88:6 88:8

**break-in**(1) 15:7

**brecker**(1) 7:30

**brett**(1) 1:29

**brian**(3) 10:13 12:14 69:23

**brickley**(1) 7:34

**brief**(5) 35:2 48:2 59:4 73:14 78:18

**briefed**(1) 56:7

**briefly**(4) 14:8 23:18 31:13 64:4

**briefs**(2) 63:19 72:21

**brigade**(6) 5:5 10:50 10:51 70:16 71:4 85:11

**broadway**(1) 3:23

**bromberg**(1) 7:38

**brother**(2) 25:13 33:7

**brought**(1) 69:3

**brown**(4) 2:29 6:28 7:37 25:8

**bruce**(2) 4:24 84:18

**bryant**(1) 2:50

**buckman**(1) 31:10

**buckman's**(1) 31:16

**building**(1) 4:18

**builds**(1) 37:13

**bulk**(1) 28:2

**burden**(4) 18:20 30:3 30:20 35:8

**burns**(1) 7:43

**bush**(2) 3:44 6:19

**business**(6) 39:3 39:4 53:10 55:1 57:8

**bust**(2) 15:7 24:5

**busted**(1) 82:2

**but**(72) 13:16 14:24 18:12 20:11 20:17 20:20 21:1 21:4 21:9 21:11 21:15 21:17 22:18 25:1 27:15 28:6 28:7 28:20 29:5 29:10 31:21 32:5 35:18 36:2 37:21 38:3 40:9 40:24 41:10 43:24 50:10 52:18 55:9 56:3 58:25 59:7 59:17 61:8 61:11 62:1 62:23 63:7 63:17 65:24 66:1 66:5 68:10 68:19 69:16 71:1 71:23 72:20 73:5 73:15 74:11 76:5 76:16 76:22 80:19 81:16 82:11 83:14 83:19 84:6 84:10 85:3 86:19 87:2 87:11 87:16 88:1 88:7 88:13

**buy**(1) 54:8

**buy-out**(2) 53:24 54:6

**buyout**(3) 64:17 64:24 68:16

**by-fund**(1) 34:5

**bynum**(1) 7:47

**calendar**(2) 14:15 14:19

**call**(5) 54:14 67:18 70:21 73:3 82:8

**called**(4) 44:4 58:15 68:21 80:1

**came**(4) 67:6 67:10 67:16 70:22

**can**(37) 15:2 18:19 27:3 29:2 29:7 31:13 35:19 39:24 44:13 44:14 47:6 47:9 51:9 54:13 56:14 63:3 63:22 64:5 64:8 64:14 64:19 65:4 66:7 66:11 66:18 70:1 70:8 73:5 76:20 76:21 77:10 80:23 81:4 83:17 83:18 84:7 84:16

**can't**(5) 24:25 25:3 45:4 45:7 48:3

**candice**(1) 1:27

**cannot**(4) 17:2 21:18 52:23 77:24

**cantor**(1) 8:5

**canyon**(2) 11:37 11:37

**can't**(4) 73:5 75:17 76:17 80:3

**capital**(32) 2:43 3:4 5:5 5:46 5:46 6:40 6:46 6:46 7:42 7:42 8:13 8:14 9:4 9:11 9:18 9:35 9:35 10:46 10:47 10:50 10:51 11:23 12:8 12:9 12:21 12:21 13:21 13:21 55:1 57:11 70:17 71:4

**capitalized**(1) 57:3

**capped**(1) 63:22

**captured**(1) 66:1

**card**(1) 84:6

**care**(1) 44:25

**carefully**(1) 47:1

**carey**(1) 1:18

**carickhoff**(1) 5:12

**carol**(1) 6:48

**carry**(1) 25:20

**case**(35) 1:5 10:15 15:7 19:8 21:18 24:5 24:5 36:21 38:6 45:3 46:1 46:3 46:23 50:11 50:16 50:19 51:2 51:17 54:3 54:10 55:16 58:20 59:11 71:17 72:4 72:18 79:22 80:1 80:1 80:17 81:2 81:4 81:10 81:12 86:18

**cases**(10) 36:18 36:25 40:11 42:13 55:14 59:5 81:7 81:14 81:14 85:7

**case'**(1) 15:7

**cash**(3) 53:16 54:5 63:8

**cash-flow**(1) 16:22

**cashed**(1) 65:11

**cashman**(2) 11:15 11:15

**casts**(1) 71:18

**categories**(2) 31:19 31:21

**category**(1) 31:21

**catherine**(1) 5:19

**caught**(1) 27:22

**centerbridge**(1) 66:25

**central**(2) 18:22 21:23

**cents**(4) 50:5 51:4 77:8 77:9

**certain**(10) 24:11 26:22 32:13 38:13 38:16 40:2 65:10 73:20 73:22 73:23

**certainly**(4) 22:18 24:22 56:5 59:24

**certainty**(2) 39:25 49:24

**certification**(1) 89:3

**certify**(1) 89:4

| Word | Page:Line |
|---|---|
| **cetera**(1) | 22:10 |
| **chadbourne**(2) | 3:27 6:6 |
| **challenge**(2) | 75:17 82:4 |
| **challenges**(5) | 35:24 36:1 42:19 44:25 71:2 |
| **chambers**(3) | 14:1 14:3 23:14 |
| **chance**(5) | 17:21 32:23 51:4 56:6 84:9 |
| **chances**(1) | 48:22 |
| **chandler**(1) | 11:19 |
| **chaney**(1) | 11:38 |
| **change**(8) | 46:11 73:19 80:5 80:11 80:13 84:19 86:20 88:8 |
| **changed**(4) | 61:9 62:1 74:5 80:11 |
| **changes**(4) | 22:9 24:11 24:14 83:15 |
| **changing**(1) | 84:23 |
| **channel**(1) | 26:25 |
| **chapter**(10) | 1:18 73:3 73:4 73:11 81:24 82:1 82:7 82:8 86:16 86:19 |
| **charge**(1) | 21:24 |
| **charged**(1) | 37:1 |
| **chart**(4) | 59:14 63:3 64:3 64:15 |
| **chase**(2) | 10:31 49:19 |
| **chicago**(1) | 1:32 4:36 5:21 29:18 |
| **chief**(1) | 69:7 |
| **choice**(5) | 36:17 36:17 40:9 73:1 86:19 |
| **choose**(3) | 37:12 38:8 40:1 |
| **chose**(3) | 24:24 40:24 40:21 |
| **christine**(1) | 11:11 |
| **chung**(2) | 2:49 8:11 |
| **circles**(1) | 62:19 |
| **circuit**(4) | 29:25 43:3 81:1 81:3 |
| **circumstances**(2) | 16:16 25:19 |
| **cites**(1) | 81:4 |
| **citi**(6) | 15:23 17:1 18:9 22:20 23:7 25:7 |
| **citi's**(2) | 20:23 20:24 |
| **citibank**(5) | 8:38 13:25 14:10 25:11 54:22 |
| **citigroup**(12) | 4:47 14:10 14:17 14:23 15:12 15:13 16:5 17:11 17:23 18:6 19:6 19:23 |
| **citigroup's**(15) | 15:5 15:8 15:10 16:10 17:14 |
| **claim**(34) | 42:1 45:1 45:15 47:9 56:12 58:7 63:6 63:23 64:9 64:22 70:2 72:10 72:11 72:12 72:14 72:14 75:23 78:15 78:16 78:17 78:19 78:19 78:20 78:24 78:25 79:3 79:17 79:18 78:19 79:18 80:6 85:23 85:24 85:25 86:1 86:12 |
| **claims**(53) | 36:20 36:21 37:6 37:14 37:19 39:10 39:13 40:22 42:24 43:11 44:3 44:6 44:11 45:10 46:18 48:5 48:8 48:12 48:18 48:20 50:24 59:15 60:5 64:6 65:6 68:3 68:15 68:17 68:19 69:15 70:3 70:4 70:7 71:22 74:19 74:22 75:9 75:10 75:10 75:11 75:12 75:15 75:15 76:3 76:5 76:7 76:9 76:15 79:3 80:22 85:13 86:9 86:23 |
| **claire**(1) | 11:20 |
| **clark**(1) | 5:20 |
| **class**(15) | 33:24 33:25 41:3 41:7 41:8 42:1 42:6 62:22 64:24 80:3 80:23 80:24 80:25 81:17 85:19 |
| **class's**(1) | 63:6 |
| **classes**(3) | 38:14 39:22 40:3 41:18 64:16 |
| **clear**(11) | 29:25 39:1 40:9 42:22 65:22 72:20 75:18 76:16 81:12 85:18 86:7 |
| **clearly**(1) | 17:9 85:2 |
| **cleary**(1) | 4:17 |
| **clerk**(1) | 52:6 |
| **client**(2) | 67:19 75:19 |
| **clients**(2) | 60:20 87:1 |
| **clock**(1) | 23:15 |
| **close**(1) | 40:17 |
| **closed**(1) | 16:20 |
| **closer**(1) | 88:18 |
| **closing**(2) | 15:1 16:21 |
| **co-counsel**(1) | 31:16 |
| **cobb**(2) | 3:36 6:24 |

| Word | Page:Line |
|---|---|
| **code**(4) | 76:23 80:25 81:18 83:2 |
| **cole**(2) | 2:4 13:6 |
| **collins**(1) | 2:20 |
| **column**(1) | 64:18 |
| **columns**(2) | 63:4 65:3 |
| **come**(13) | 21:15 28:2 29:13 30:23 35:5 39:17 43:17 50:20 57:4 68:22 77:21 79:19 83:19 |
| **comes**(6) | 29:14 66:12 66:16 66:17 74:7 78:22 |
| **coming**(5) | 24:15 36:15 57:2 64:11 86:20 |
| **commentary**(1) | 32:8 |
| **comments**(2) | 13:9 88:21 |
| **committee**(28) | 3:26 4:32 6:5 9:39 14:24 17:8 29:21 36:5 36:13 37:2 38:6 43:8 43:8 43:10 43:12 50:22 52:23 60:25 61:15 62:4 62:4 69:2 73:21 74:13 76:2 76:3 82:18 86:25 |
| **committee's**(1) | 62:11 |
| **common**(3) | 37:20 55:22 56:11 |
| **communication**(1) | 33:18 |
| **communications**(3) | 26:17 33:15 35:9 |
| **companies**(2) | 35:23 35:25 |
| **company**(41) | 1:7 2:11 7:25 7:25 7:33 7:46 8:34 31:24 34:8 35:22 53:14 53:15 53:22 53:25 54:2 54:8 54:25 55:4 55:23 56:12 56:14 56:20 57:3 57:8 57:14 57:16 58:22 59:17 61:16 61:18 62:18 63:9 63:17 69:5 69:15 70:8 73:6 73:6 74:4 82:3 82:16 86:19 |
| **company's**(2) | 54:2 56:18 |
| **compare**(1) | 66:21 |
| **compel**(1) | 31:12 |
| **compelling**(1) | 59:4 |
| **competing**(1) | 43:20 |
| **competition**(1) | 85:12 |
| **competitive**(1) | 26:21 |
| **complete**(4) | 20:7 32:8 32:14 44:22 |
| **completely**(2) | 86:13 88:12 |
| **complex**(1) | 39:23 |
| **complicated**(3) | 37:8 37:14 66:12 |
| **comports**(1) | 29:19 |
| **compromise**(2) | 37:22 79:15 |
| **compromises**(1) | 48:21 |
| **conaway**(1) | 4:14 |
| **conceded**(2) | 82:17 |
| **concept**(2) | 81:24 81:24 |
| **concern**(3) | 26:19 28:7 75:21 |
| **concerned**(1) | 26:14 |
| **concerning**(1) | 32:9 |
| **concerns**(1) | 71:6 |
| **concluded**(1) | 60:21 |
| **concludes**(1) | 89:1 |
| **conclusion**(1) | 77:25 |
| **conclusions**(1) | 60:12 |
| **conduct**(2) | 72:20 79:23 |
| **conducted**(3) | 24:16 24:17 42:17 |
| **conducting**(1) | 24:11 |
| **confer**(1) | 21:11 |
| **conference**(1) | 70:23 |
| **confidence**(4) | 39:24 66:7 66:11 66:18 |
| **confident**(1) | 52:22 |
| **confidential**(4) | 17:1 30:22 33:22 34:5 |
| **confidentiality**(3) | 26:5 26:10 26:13 |
| **confirm**(6) | 37:12 38:8 43:5 50:23 51:22 77:24 |
| **confirmable**(2) | 87:14 87:18 |
| **confirmation**(9) | 22:22 22:23 23:25 25:18 29:25 48:2 56:7 59:4 77:23 |
| **confirmation-related**(1) | 26:5 |
| **confirmed**(6) | 43:15 48:24 52:23 52:24 70:9 87:16 |
| **confirming**(1) | 81:3 |
| **confusing**(2) | 61:15 61:17 |

| Word | Page:Line |
|---|---|
| **confusion**(1) | 71:2 |
| **congress**(4) | 72:2 72:4 76:25 77:5 |
| **conlan**(3) | 1:24 35:16 35:16 |
| **connected**(1) | 60:14 |
| **connection**(8) | 27:1 31:5 31:10 58:3 58:4 66:23 67:21 68:16 |
| **consent**(1) | 34:1 |
| **consider**(12) | 37:5 45:7 45:23 56:2 56:9 56:21 57:1 57:4 58:18 71:13 87:12 87:16 |
| **consideration**(7) | 51:21 64:15 73:9 74:6 76:12 78:22 80:21 |
| **considered**(1) | 68:20 |
| **considering**(1) | 79:23 |
| **constant**(2) | 62:23 63:7 |
| **constituencies**(2) | 38:5 50:21 |
| **constitutional**(2) | 29:17 30:1 |
| **construct**(1) | 85:13 |
| **constructive**(2) | 56:25 57:18 |
| **constructively**(1) | 57:17 |
| **consult**(2) | 26:4 33:2 |
| **consume**(1) | 42:11 |
| **contemplates**(2) | 68:11 68:13 |
| **context**(2) | 55:8 79:25 |
| **continued**(11) | 2:2 3:2 4:3 5:3 6:3 7:2 8:2 9:2 10:2 11:2 12:2 |
| **continues**(1) | 69:18 |
| **contours**(1) | 54:14 |
| **contractually**(1) | 41:22 |
| **contrarian**(2) | 12:8 12:9 |
| **contrary**(1) | 60:19 |
| **convention**(1) | 61:21 |
| **conversant**(1) | 32:24 |
| **conversations**(1) | 18:8 |
| **conveyance**(5) | 45:21 65:6 74:21 75:18 75:23 |
| **conveyed**(1) | 70:25 |
| **convince**(2) | 86:25 87:17 |
| **convinced**(1) | 87:14 |
| **cooked**(1) | 73:12 |
| **cooperatively**(1) | 28:21 |
| **cooperstown**(2) | 8:13 8:14 |
| **copies**(3) | 52:8 76:19 76:20 |
| **copy**(5) | 14:1 14:2 14:3 52:6 69:4 |
| **core**(1) | 49:23 |
| **corporation**(1) | 70:16 |
| **correct**(1) | 89:4 |
| **correctly**(2) | 26:4 56:1 |
| **correspondence**(1) | 35:6 |
| **corroon**(1) | 4:5 |
| **cost**(1) | 87:1 |
| **could**(13) | 19:11 23:8 25:15 37:21 46:9 49:11 49:12 65:6 69:3 69:10 70:25 79:16 85:13 |
| **couldn't**(1) | 15:17 |
| **couldn't**(1) | 55:2 |
| **counsel**(7) | 16:10 22:5 32:4 32:25 36:12 73:22 76:2 |
| **counselor**(1) | 76:2 |
| **counter-intuitiv**(1) | 55:9 |
| **couple**(4) | 14:9 36:16 37:24 42:11 |
| **couri**(1) | 8:15 |
| **course**(12) | 16:4 16:15 18:7 18:12 45:25 49:3 52:15 65:8 72:8 84:8 84:9 86:4 |

| Word | Page:Line |
|---|---|
| **court**(141) | 1:1 1:32 13:2 13:10 13:17 13:25 14:1 14:5 14:12 17:10 19:1 19:3 20:18 23:10 23:14 23:17 23:20 25:4 25:6 25:24 26:1 26:3 27:16 27:18 28:7 28:24 29:10 29:14 29:20 29:22 30:4 30:8 30:10 30:13 30:17 30:20 30:24 31:2 31:4 31:7 32:17 33:1 33:7 33:11 34:9 34:12 34:15 34:17 34:21 34:24 35:3 35:8 35:11 35:14 36:10 36:15 37:4 37:15 37:25 38:4 38:8 40:16 41:4 41:22 42:9 43:1 43:19 43:20 44:3 44:5 44:24 44:25 45:24 46:21 47:1 47:16 48:1 48:16 49:2 49:4 49:9 49:11 49:13 49:15 49:18 49:21 49:22 50:1 50:23 50:25 51:15 51:21 51:24 52:3 52:10 54:18 58:17 59:25 62:16 63:18 65:15 65:22 65:25 66:7 66:11 66:18 67:2 69:5 70:10 70:12 70:18 70:19 70:25 71:13 72:22 78:1 78:4 78:15 79:22 80:12 80:14 80:16 80:17 81:2 81:6 81:7 82:23 83:3 83:6 83:21 83:24 84:1 84:12 84:14 84:16 87:8 87:10 88:25 89:1 |
| **court's**(4) | 13:8 40:1 53:2 65:23 |
| **courtney**(1) | 11:30 |
| **courtroom**(6) | 1:10 27:25 49:16 83:4 87:24 87:25 |
| **court's**(1) | 72:18 |
| **created**(2) | 23:3 71:1 |
| **creation**(1) | 17:17 |
| **credible**(1) | 43:23 |
| **credit**(4) | 7:4 56:13 86:10 86:12 |
| **creditor**(19) | 38:7 38:13 39:10 50:16 50:20 62:22 64:16 64:24 75:16 75:17 80:2 80:3 80:4 80:6 80:7 80:10 80:13 81:17 85:19 |
| **creditors**(58) | 3:27 6:36 6:13 36:16 36:21 36:23 36:24 37:2 37:6 37:7 38:15 38:16 38:19 39:8 39:16 39:19 40:3 40:7 40:10 40:13 40:17 40:20 40:22 40:24 41:16 41:18 42:4 42:7 44:18 46:6 47:3 47:4 47:5 47:7 47:9 47:9 47:14 47:18 48:5 48:7 50:12 50:13 51:2 51:2 51:13 51:16 54:3 54:4 55:25 60:24 62:7 74:21 75:3 75:6 77:22 82:17 82:21 82:21 85:19 |
| **creditors'**(11) | 74:19 74:20 75:2 75:4 75:11 75:20 82:22 83:13 84:25 85:2 85:4 |
| **creditor's**(1) | 75:13 |
| **cried**(1) | 54:11 |
| **critical**(5) | 18:22 23:2 24:20 45:10 76:22 |
| **crystal**(1) | 86:7 |
| **current**(2) | 26:20 34:8 |
| **custodian**(2) | 18:11 18:18 |
| **custodians**(1) | 18:9 21:12 21:14 |
| **cut**(1) | 49:19 |
| **cutler**(1) | 7:9 |
| **cyclical**(1) | 53:11 |
| **dagostino**(1) | 8:19 |
| **daily**(1) | 88:20 |
| **damian**(1) | 2:21 |
| **dance**(1) | 84:3 |
| **daniel**(3) | 3:38 8:5 8:7 |
| **darken**(1) | 83:18 |
| **data**(1) | 1:37 |
| **date**(5) | 55:24 25:25 33:21 61:23 89:10 |
| **dated**(1) | 31:10 |
| **dates**(1) | 21:13 |
| **dave**(1) | 8:25 |
| **david**(11) | 2:44 3:22 3:28 4:42 5:12 5:25 7:22 9:8 9:43 10:7 52:12 |
| **davis**(3) | 2:16 8:39 10:31 |
| **day**(11) | 4:33 9:40 30:14 34:6 38:4 51:12 67:16 67:16 88:9 88:17 88:23 |
| **days**(2) | 24:15 25:14 |
| **dbsd**(1) | 81:3 |
| **dbtca**(1) | 4:40 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

del(26) 36:4 36:9 36:19 36:20 37:9 37:11 37:13 38:9 38:25 39:8 39:17 39:20 40:14 40:19 40:21 41:9 41:12 41:14 41:15 42:9 42:14 43:21 49:23 51:3 51:22 82:13

deadline(1) 84:9
deal(4) 21:23 22:1 25:15 84:10
dealt(1) 83:8
dearborn(1) 1:31
debate(2) 54:21 56:3
debenture(3) 3:12 11:8 31:11
deborah(1) 2:47
debt(37) 41:23 45:6 45:7 45:12 45:17 46:5 46:13 47:20 47:20 54:2 54:9 56:2 56:10 56:15 56:22 57:2 59:8 64:12 64:20 69:21 77:4 77:4 77:4 77:6 77:7 77:7 77:8 77:9 77:10 77:11 77:12 77:14 77:18 77:19 82:4 82:5 82:6

debtor(11) 13:6 26:18 26:23 29:21 36:4 52:22 60:25 61:15 69:2 82:8 86:5

debtor's(1) 24:16
debtors(30) 1:12 1:23 2:4 26:10 35:17 37:3 37:7 38:6 39:1 39:11 42:6 45:9 45:13 50:22 51:14 55:15 64:7 67:15 67:22 68:7 68:14 72:12 73:10 74:25 80:20 82:24 83:10 83:13 87:2

debtors'(3) 73:1 75:20 81:24
debts(1) 57:4
debtwire(1) 7:16
debt's(1) 57:7

december(7) 16:19 16:19 16:20 17:24 17:25 17:25 19:23

decide(1) 44:4
decided(3) 28:17 49:5 87:11
decision(4) 19:23 32:4 60:8 61:4
decision-makers(1) 20:25
decision-making(1) 19:25
decisions(1) 60:21
decline(3) 53:5 53:10 53:12
declining(5) 53:4 53:15 53:16 53:25 53:25
deemed(2) 74:7 75:5
defendants(2) 48:19 54:7
defense(1) 86:7
defies(1) 61:21
definition(1) 86:3
deflect(1) 19:14
delaware(6) 1:2 1:12 2:7 3:7 13:1 83:20
deliver(1) 14:1
delivered(1) 14:3
delta(1) 78:21
demanded(1) 62:8
demanding(1) 62:5
demands(1) 88:19
demo(1) 8:29
demonstrate(1) 30:6
demonstrativ(4) 52:2 57:23 59:13 63:3
deny(1) 65:24
depend(1) 39:23
depending(1) 88:19
deposed(3) 22:13 22:16 23:3
deposition(21) 15:16 15:16 15:19 15:21 15:23 15:24 16:5 16:14 17:19 18:25 20:4 21:3 22:11 22:24 25:12 25:14 25:17 25:20 25:23 53:8 62:10

depositions(2) 22:6 22:10
depressed(1) 59:16
describe(2) 14:8 75:7
described(1) 51:6
describes(1) 61:5
describing(1) 27:10
designated(1) 27:22
designation(1) 79:25
despite(2) 42:7 42:12
details(3) 33:18 34:2 69:13

determination(1) 27:12
determined(1) 22:22
deutsch(1) 6:9
devote(1) 68:14
dewey(2) 4:23 32:20
diametrically(2) 36:18 68:10
diamond(1) 8:23
diaz(1) 1:37
dice(1) 50:7
did(26) 14:1 15:8 15:11 15:13 18:12 18:13 24:8 35:5 40:19 41:16 58:16 61:4 61:18 61:24 65:17 71:6 71:17 71:20 73:12 74:11 75:1 80:10 85:14 86:4 86:25 87:1

didn't(7) 15:18 35:7 56:9 60:10 60:12 61:3 61:11

didn't(9) 56:23 66:20 73:22 74:2 77:15 78:17 79:14 82:18 85:12

dieterich(1) 8:41
difference(1) 78:21
different(10) 16:4 27:5 38:1 38:2 38:2 38:3 38:3 79:3 83:2 86:13

difficult(2) 47:18 47:21
difficulties(1) 45:25
dignity(1) 81:19
diligence(1) 21:3
dilworth(13) 17:13 17:19 18:11 18:17 18:24 21:4 21:13 21:22 22:7 22:8 22:13 22:17 24:10

dilworth's(5) 17:23 21:16 21:21 22:24 23:7

direction(2) 44:7 61:1
director(2) 17:13 17:14
directors(3) 4:33 9:40 68:12
disadvantag(1) 26:21
disagree(6) 24:22 43:25 48:14 55:19 57:22 68:10

disagrees(1) 63:18
disallowance(1) 45:22
disclose(1) 34:1
disclosed(1) 26:22
disclosure(1) 26:25
disconnected(1) 67:20
discounted(2) 16:22 56:16
discovery(9) 13:25 14:10 21:10 32:12 54:17 54:20 54:21 54:23 59:14

discriminate(7) 71:24 72:3 76:6 76:24 77:11 77:16 82:14

discriminates(1) 77:9
discrimination(1) 80:19
discuss(1) 76:16
discussed(1) 61:2
discussing(3) 26:10 69:8 79:10
discussion(5) 52:14 52:25 69:18
discussions(1) 67:22
disgorgement(8) 57:25 58:4 59:24 64:9 64:9 64:25 65:1

dispute(9) 16:7 20:14 21:3 22:19 32:5 33:8 44:14 46:20 53:3

disputes(1) 30:14
dissenting(2) 80:25 81:17
distributabl(1) 62:6
distribution(4) 76:4 76:15 84:25 86:4
distributions(2) 46:13 86:21
distributiv(3) 80:24 81:17 81:19
district(1) 1:2
disturbed(1) 88:14
divert(1) 82:21
diverted(1) 75:8
divided(1) 64:15
docket(1) 87:22

document(11) 16:23 19:20 20:5 20:9 20:15 24:19 25:2 32:7 32:8 32:14 70:5

document's(1) 28:16
documented(2) 86:2 86:9
documents(39) 14:18 16:11 16:13 16:15 16:18 17:4 17:5 17:16 18:15 18:23 18:24 19:10 19:15 19:25 20:1 20:22 21:4 21:8 21:9 22:16 22:21 22:24 23:1 23:5 25:11 27:6 27:9 27:23 28:2 28:6 28:9 28:14 30:22 31:12 31:18 31:20 32:10 32:13 33:9

dodge(1) 5:30
does(10) 31:4 32:17 38:10 38:11 46:7 55:11 68:3 75:22 75:23 79:11

doesn't(7) 37:6 38:12 39:9 45:13 47:11 48:6 48:22

doesn't(9) 79:23 82:14 82:15 82:19 82:20 87:22

doing(2) 47:18 79:15
dollar(6) 38:20 39:18 39:20 40:4 40:6 50:9
dollars(10) 39:12 39:12 58:1 58:4 59:11 59:24 64:10 64:13 64:25 65:2

don(1) 2:12
don't(29) 16:14 17:9 20:23 23:4 25:24 25:25 26:12 27:21 27:24 33:25 47:11 49:18 50:14 51:4 51:5 51:6 51:8 51:11 52:18 52:19 52:20 53:5 54:1 56:17 59:1 65:9 65:12 65:15

donald(1) 2:19
done(12) 15:17 18:2 18:4 18:13 18:19 19:17 21:2 22:21 52:17 52:18 82:5 83:1

doomed(1) 57:7
door(1) 83:19
dorr(1) 7:10
doshi(1) 9:16
doubt(1) 18:17
dougherty(2) 9:31 9:32
douglas(1) 6:9
dov(1) 10:38
dow(2) 7:33 7:33
down(6) 26:11 41:14 57:2 62:24 64:18
downplayed(1) 15:18
downturn(2) 53:11 57:9
dozens(1) 59:5
drama(1) 41:6
dress(2) 79:14 80:9
dripping(1) 33:6
drive(4) 44:3 44:6
drives(4) 46:2 46:4 46:24 46:25
dropped(1) 18:10
drops(2) 54:15 73:15
drove(1) 82:3
dublin(1) 2:48
due(4) 21:5 21:25 51:21 57:4
dueling(1) 60:4
dunn(1) 9:8
during(9) 15:9 15:24 18:5 61:9 65:8 65:21 67:3 69:1 88:6

dynamic(1) 67:14
e-mail(2) 69:6 69:23
each(4) 62:22 63:5 65:11 66:15
earlier(2) 32:9 88:17
early(2) 13:24 57:14
east(3) 2:39 12:4 12:4
easy(1) 79:4
economic(1) 82:12
ecro(1) 1:35

edge(1) 43:6
edward(3) 9:29 31:15 35:4
edwards(1) 5:30
effect(2) 81:23 81:23
effective(1) 87:16
efficient(1) 29:9
effort(1) 85:12
efforts(2) 35:7 35:9
egi-trb(1) 5:11
ehmer(1) 9:36
eight-cents(2) 39:20 40:7
eighty-five(1) 63:11
eitan(1) 6:41
either(7) 17:20 28:9 29:3 30:22 42:18 69:21 70:25

elden(1) 9:31
eldersveld(1) 8:25
electronic(3) 1:43 18:3 89:5
elegant(1) 68:4
elevate(1) 78:23
elkins(2) 5:42 10:37
elliot(1) 2:17
else(13) 29:11 29:12 31:4 42:12 50:10 71:16 72:7 72:21 74:3 78:8 82:7 83:4 88:22

else's(1) 86:14
email(6) 16:9 20:8 23:15 23:25 24:1 34:13
emails(6) 17:15 22:3 22:4 22:6 24:24 35:6
embodied(1) 42:13
embodies(1) 48:23
embraces(1) 82:9
emerge(2) 39:1 69:9
emergence(2) 68:4 68:12
emerges(1) 70:8
enacted(1) 76:23
end(16) 21:14 28:2 30:13 33:12 34:6 38:4 43:4 51:12 52:22 53:19 62:18 63:4 68:25 72:24 88:17 88:18

end-run(1) 21:5
ended(1) 67:24
ends(1) 37:18
engaged(1) 67:1
english(1) 4:40
enough(5) 29:2 34:22 46:5 58:8 73:14
ensure(1) 27:21
enterprise(5) 59:16 61:14 62:6 74:8
entire(1) 86:17
entirely(2) 24:19 46:21
entirely(3) 32:7 44:15 44:21
entitled(12) 20:9 62:25 62:25 69:22 71:17 71:21 76:7 81:11 81:13 82:1 85:2 85:20 86:7

entitlement(1) 80:25
entitlements(2) 81:17 81:19
environment(2) 35:23 39:5
eos(2) 11:33 11:33
ephraim(1) 8:23
epiphany(1) 72:13
equal(2) 76:4 81:19
equally(1) 29:23
equitable(7) 45:21 46:11 46:16 46:19 46:22 51:10 63:18

equity(10) 26:23 31:23 52:20 54:5 54:9 63:7 63:13 69:25 70:2 74:1

erens(1) 9:41
esop(1) 56:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **esq**(138) 1:24 1:25 1:26 1:27 1:28 1:29 1:30 2:6 2:17 2:18 2:19 2:20 2:21 2:22 2:23 2:30 2:31 2:38 2:44 2:45 2:46 2:47 2:48 2:49 3:5 3:6 3:13 3:21 3:22 3:28 3:29 3:30 3:31 3:37 3:38 3:44 3:45 3:46 4:6 4:7 4:16 4:17 4:24 4:25 4:26 4:34 4:41 4:42 4:49 5:6 5:12 5:18 5:19 5:25 5:31 5:43 5:47 6:7 6:9 6:11 6:13 6:15 6:19 6:20 6:21 6:25 6:29 6:31 6:33 6:37 6:48 7:6 7:11 7:13 7:26 7:38 7:43 7:47 7:49 8:5 8:7 8:11 8:15 8:19 8:23 8:25 8:29 8:31 8:35 8:39 8:41 8:43 8:45 8:47 9:6 9:8 9:12 9:16 9:20 9:22 9:27 9:29 9:32 9:36 9:41 9:43 9:51 10:5 10:7 10:9 10:13 10:16 10:21 10:28 10:32 10:34 10:38 10:39 10:43 10:48 11:5 11:10 11:11 11:16 11:20 11:24 11:26 11:30 11:34 11:38 11:42 11:46 11:52 12:5 12:10 12:14 12:18 12:22 | | **expert**(12) 11:41 43:18 45:2 45:8 46:3 53:7 57:5 60:8 60:17 60:18 61:1 62:15<br><br>**experts**(11) 24:14 24:17 43:20 43:21 43:23 43:24 44:2 45:16 56:12 57:1 60:4<br><br>**explain**(3) 72:16 73:24 76:25<br>**explanation**(1) 74:12<br>**extent**(3) 28:5 28:20 67:21<br>**extra**(1) 52:8<br>**extra-settlement**(1) 80:21<br>**extremely**(1) 18:20<br>**face**(4) 42:4 45:11 56:16 57:9<br>**face-to-face**(1) 67:1<br>**faced**(2) 19:23 36:16<br>**facilitated**(1) 59:11<br>**fact**(24) 24:24 42:2 44:16 55:9 62:13 67:10 79:8 85:20<br><br>**facts**(8) 19:20 21:18 46:1 46:21 53:21 55:15 78:13 80:2<br><br>**fail**(1) 57:7<br>**failed**(1) 61:13<br>**fair**(10) 15:8 16:15 34:22 36:6 40:25 53:9 60:21 86:3 86:7 87:2<br><br>**fairness**(4) 18:16 18:21 62:20 63:12<br>**faith**(7) 42:17 51:19 72:17 72:19 72:23 79:24 79:24<br><br>**fall**(2) 22:1 88:7<br>**fallback**(1) 69:12<br>**fallon**(1) 7:49<br>**falls**(2) 43:4 43:13<br>**faltas**(2) 9:46 9:47<br>**family**(2) 25:15 25:22<br>**far**(7) 18:2 18:3 23:23 29:2 43:14 55:21 85:18<br><br>**fargo**(1) 10:15<br>**farm**(4) 51:5 51:7 51:8 51:11<br>**favor**(1) 75:1<br>**fcc**(7) 26:15 26:15 31:17 31:19 32:1 32:25 33:1<br><br>**featherworks**(2) 80:1 80:17<br>**february**(2) 15:23 33:10<br>**federal**(1) 85:8<br>**feels**(1) 19:13<br>**fees**(1) 58:2<br>**feld**(2) 2:43 9:19 13:21 52:12<br>**felt**(1) 20:25<br>**few**(3) 25:14 30:14 44:1<br>**fiduciaries**(1) 36:25<br>**field**(1) 68:6<br>**fifteen**(1) 49:5<br>**fifth**(1) 23:7<br>**fifty**(1) 41:5<br>**fight**(1) 81:10<br>**fights**(1) 85:6<br>**figure**(2) 28:18 73:8<br>**file**(1) 78:7<br>**filed**(7) 13:13 23:23 27:6 27:8 29:23 71:16 72:22<br><br>**files**(2) 17:24 21:21<br>**filings**(1) 29:3<br>**filled**(1) 35:24<br>**final**(5) 20:9 20:16 37:9 46:25 81:20<br>**finally**(7) 26:22 39:7 41:25 63:14 71:8 72:24 86:16<br><br>**finance**(4) 15:5 15:22 17:15 18:4<br>**financial**(5) 19:21 26:20 62:9 62:12 67:15<br>**find**(4) 22:8 30:13 37:20 83:24<br>**finding**(1) 72:22<br>**findings**(1) 60:16<br>**fine**(3) 29:10 55:17 83:11 | | **firm**(3) 33:1 35:17 36:12<br>**first**(20) 13:12 15:25 19:8 20:6 23:21 30:4 38:10 41:19 42:12 42:20 44:12 45:2 47:16 73:18 75:25 83:8 84:8 84:19 85:23 86:19<br><br>**fischel**(1) 57:12<br>**five**(8) 21:12 21:12 49:13 61:20 84:15 84:16 84:17 87:7<br><br>**five-cents**(2) 39:17 40:6<br>**fix**(1) 74:5<br>**fixed**(1) 61:11<br>**flip**(2) 32:11 69:17<br>**floor**(4) 4:10 4:19 5:8 5:32<br>**flow**(3) 53:16 59:12 62:22<br>**fluctuations**(1) 86:6<br>**focus**(6) 40:23 41:3 44:5 59:25 71:12<br>**folks**(1) 81:25<br>**follow**(5) 58:1 58:18 58:24 59:6 81:6<br>**following**(6) 16:4 46:18 77:6 87:12<br>**font**(1) 66:7<br>**food**(2) 26:24 26:25<br>**for**(181) 1:2 1:23 2:4 2:16 2:29 2:43 3:4 3:12 3:26 4:5 4:14 4:32 4:40 4:47 5:5 5:11 5:24 5:30 5:38 5:42 5:46 6:5 6:28 6:46 7:4 7:16 7:20 7:25 7:29 7:33 7:37 7:41 7:46 8:4 8:13 8:18 8:22 8:38 9:4 9:15 9:18 9:31 9:35 9:39 9:46 9:50 10:15 10:19 10:24 10:27 10:31 10:37 10:42 10:46 10:50 11:4 11:8 11:15 11:19 11:23 11:29 11:33 11:37 11:41 11:45 11:49 12:4 12:8 12:13 12:17 12:21 13:20 15:24 16:13 17:12 17:24 18:9 19:6 21:3 22:9 25:9 25:14 26:9 28:25 29:1 31:8 31:18 32:7 34:7 34:15 35:21 35:23 36:2 36:8 36:23 37:1 37:2 37:7 37:19 39:2 39:22 40:5 42:15 43:4 44:22 44:22 44:22 45:19 46:5 48:3 50:10 50:10 50:11 50:13 50:16 50:23 51:4 51:6 52:6 52:11 52:13 53:6 54:8 54:11 54:13 55:10 56:4 56:10 56:13 56:24 59:18 60:9 60:19 60:22 61:18 61:22 63:24 64:3 64:10 64:13 64:21 65:7 66:20 67:15 68:2 68:4 68:7 68:12 69:9 69:20 69:20 70:4 70:7 70:18 70:20 71:3 74:19 74:22 76:2 76:3 76:18 78:25 79:8 80:8 80:8 80:15 81:6 82:20 83:25 84:8 85:5 85:9 85:21 86:4 86:22 87:20 87:22 88:8 88:22<br><br>**force**(2) 50:15 86:21<br>**foregoing**(1) 89:4<br>**forest**(2) 81:21 81:22<br>**forever**(1) 82:7<br>**forget**(2) 28:17 30:10<br>**form**(2) 43:18 82:22<br>**formal**(1) 36:8<br>**forman**(1) 2:41<br>**forms**(1) 17:12<br>**forth**(4) 17:2 48:1 59:4 63:19<br>**forward**(6) 14:20 27:9 28:14 29:24 68:23 86:6<br><br>**fought**(1) 37:25<br>**found**(2) 20:6 74:9<br>**four**(8) 13:9 13:18 19:17 23:6 23:14 34:12 34:15 51:4<br>**fox**(1) 9:27<br>**frank**(1) 6:15<br>**frankel**(1) 7:21<br>**fraudulent**(9) 45:21 54:11 55:7 56:25 57:18 65:6 74:21 75:18 75:23<br><br>**free**(3) 39:3 87:24 88:1<br>**freedom**(6) 33:14 33:17 33:19 33:24 34:2 34:3<br><br>**friday**(2) 25:13 88:16 | | **friedman**(10) 3:20 9:25 9:29 11:9 31:14 31:15 35:1 35:4 35:4 35:12<br><br>**from**(73) 13:6 16:9 16:19 16:24 17:15 17:22 17:24 19:14 21:21 22:6 22:9 22:13 23:23 24:19 25:8 25:11 28:9 31:10 31:12 35:17 35:19 38:21 39:1 40:22 42:4 43:2 45:20 46:13 46:17 49:1 50:5 50:6 50:7 51:25 54:16 55:15 58:1 58:12 58:18 58:24 59:9 59:22 59:22 60:4 62:15 62:24 64:11 65:5 68:5 69:3 69:6 70:5 71:15 72:6 72:22 73:20 78:2 78:12 78:24 79:3 81:25 82:21 82:25 84:20 84:20 85:4 85:13 85:18 85:24 86:5 86:9 86:10 89:5<br><br>**front**(5) 38:13 38:16 38:20 39:16 39:21<br>**frozen**(1) 67:14<br>**fruits**(2) 54:19 54:20<br>**full**(14) 39:18 39:20 44:16 46:18 50:16 55:18 55:23 55:25 56:1 58:9 59:21 63:20 64:6 69:21<br><br>**fund**(6) 5:42 7:29 7:29 10:37 19:24 34:4<br>**funded**(1) 41:23<br>**further**(3) 31:7 36:23 85:10<br>**fury**(1) 51:20<br>**future**(2) 39:22 39:23<br>**gail**(1) 29:16<br>**galbraith**(2) 9:50 9:51<br>**gamble**(1) 51:5<br>**game**(1) 68:1<br>**gandhi**(1) 10:5<br>**gangat**(1) 9:6<br>**garrison**(1) 4:48<br>**garvan**(1) 3:13<br>**gary**(2) 2:13 8:35<br>**gave**(11) 21:12 21:12 55:17 60:12 71:22 72:2 72:7 73:9 77:2 77:5 79:21<br><br>**gavin**(1) 7:6<br>**geddes**(1) 3:4<br>**general**(17) 27:3 37:1 38:15 38:18 39:15 40:4 41:16 44:18 44:23 47:4 50:12 51:1 53:9 54:4 55:25 58:8 85:25<br><br>**generally**(2) 48:15 87:12<br>**generate**(3) 19:13 23:23 86:4<br>**gentilotti**(1) 3:12<br>**gentleman**(1) 15:21<br>**george**(2) 9:31 9:32<br>**get**(32) 13:11 22:21 27:21 33:2 34:22 38:20 39:16 39:17 39:20 40:18 40:19 44:16 45:11 47:6 47:10 47:14 48:6 49:4 51:12 55:25 56:1 59:19 65:17 66:15 69:14 73:3 73:11 73:17 78:1 80:3 85:13 88:17<br><br>**gets**(4) 43:6 58:6 77:8 77:9<br>**getting**(6) 21:3 23:24 63:7 67:20 76:4<br>**giant**(1) 56:20<br>**gift**(9) 75:22 75:24 77:20 80:15 81:9 81:13 81:14 81:14 82:19<br><br>**gifting**(2) 80:23 81:11<br>**gist**(1) 78:10<br>**give**(12) 15:18 36:8 49:13 56:17 65:7 66:11 80:23 82:9 82:19 83:17 87:19 88:18<br><br>**given**(10) 16:25 18:20 18:22 33:18 41:8 45:16 71:16 81:25 83:4 86:3<br><br>**gives**(3) 40:2 40:6 77:18<br>**giving**(4) 35:18 70:19 74:17 75:1<br>**glatt**(2) 5:5 70:15<br>**global**(2) 9:46 81:21<br>**goes**(9) 44:8 55:24 62:24 63:2 63:5 63:6 63:10 63:12 63:20 |

**essence**(2) 66:2 70:6

**essentially**(5) 25:2 27:1 27:21 57:7 69:20
**establish**(2) 45:13 46:22
**established**(1) 58:14
**estate**(2) 68:15 75:10
**esther**(1) 8:11
**estimate**(1) 61:6
**estoppel**(2) 46:23 51:10
**estoppel-type**(1) 46:19
**evaluated**(1) 44:17
**evaporate**(1) 74:11
**evaporated**(1) 74:11
**eve**(1) 22:22
**even**(15) 19:11 28:20 41:13 47:23 54:1 55:2 57:9 62:14 62:24 63:17 70:2 71:10 79:14 81:13 85:10

**ever**(1) 54:10
**every**(12) 19:18 33:23 34:2 42:6 45:2 46:3 46:3 50:15 61:21 71:14 85:19 88:1

**everybody**(6) 50:10 75:4 83:4 84:22 84:23 86:14

**everyone**(5) 13:2 42:12 53:20 56:25 61:22
**everything**(5) 21:22 48:8 48:22 55:24 61:7
**evidence**(18) 23:24 29:24 30:2 38:22 42:17 42:23 43:16 44:25 45:23 47:2 49:1 50:1 51:16 51:22 52:22 65:9 71:14

**exact**(1) 61:3
**exactly**(4) 29:8 64:13 68:22 86:12
**examination**(2) 61:10 69:2
**examine**(1) 18:23
**examiner**(14) 14:23 15:6 16:1 16:23 17:7 21:19 44:17 60:10 60:12 61:6 61:9 61:11 67:6 67:16

**examiner's**(4) 14:22 15:3 60:6 60:16
**examiner's**(1) 79:9
**examining**(1) 21:24
**example**(1) 63:24
**exceed**(1) 46:9
**exceeded**(1) 19:18
**exception**(1) 23:22
**excess**(1) 55:21
**exchange**(2) 80:8 80:8
**exchanged**(1) 52:4
**exercise**(1) 20:3
**exhibit**(4) 27:13 27:23 28:15 69:2
**exhibits**(5) 27:11 27:12 30:2 32:9 35:9
**existed**(3) 24:9 24:9 54:4
**existing**(1) 54:3
**exists**(1) 28:20
**exit**(3) 36:4 36:6 68:8
**expanded**(2) 27:13 27:23
**expect**(2) 43:18 48:13
**expect**(2) 60:5 61:7
**experiencing**(1) 54:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **going**(43) 19:14 25:1 27:8 27:14 27:18 27:25 28:13 28:16 29:7 29:24 36:16 37:23 38:22 42:11 42:18 42:22 43:17 44:4 44:15 45:3 45:3 48:16 49:1 51:16 52:3 54:6 54:23 55:1 55:4 56:5 56:11 57:8 58:20 65:2 68:25 75:10 78:7 78:7 78:8 83:15 83:15 86:6 86:24 | | **have**(122) 13:19 14:3 14:6 14:11 14:13 14:14 17:3 17:6 17:16 17:16 17:19 17:21 18:16 18:17 18:23 19:2 19:15 19:17 19:19 19:22 21:9 21:17 22:13 22:15 22:15 22:15 23:1 23:2 23:8 23:9 24:17 25:3 25:20 25:24 25:25 26:7 26:10 27:1 28:1 28:17 28:21 29:3 30:25 32:7 32:12 32:25 33:18 33:25 35:9 35:21 40:11 40:14 42:8 42:10 42:15 42:23 45:10 47:25 48:7 50:20 52:1 52:16 52:17 52:21 53:6 55:13 56:6 56:19 57:1 58:11 58:17 59:23 59:23 65:16 65:22 66:6 66:10 66:18 67:13 68:9 68:23 69:24 71:15 73:2 73:14 74:2 74:7 74:11 74:22 74:25 75:3 75:10 75:12 75:15 75:15 76:16 76:19 76:20 77:4 77:22 78:9 79:8 82:2 82:22 82:3 82:4 82:6 82:7 82:11 83:1 83:7 83:10 83:13 83:14 83:18 83:19 84:16 85:24 86:6 88:6 88:11 | | **history**(6) 35:6 37:23 71:25 76:19 77:2 77:24 | | **improperly**(1) 19:9 |
| | | | | **hit**(1) 77:15 | | **inadequate**(1) 64:2 |
| | | | | **hold**(1) 25:1 | | **inadequately**(1) 57:3 |
| | | | | **holder**(2) 31:23 67:4 | | **inappropriately**(2) 19:16 22:20 |
| | | | | **holders**(3) 41:21 59:8 64:11 | | **inappropriateness**(1) 84:24 |
| | | | | **holding**(3) 86:18 86:21 87:3 | | **inc**(4) 6:40 9:15 12:13 12:13 |
| | | | | **holdings**(4) 26:16 33:23 34:3 34:8 | | **include**(1) 81:4 |
| | | | | **holds**(2) 41:5 71:4 | | **included**(2) 18:18 53:18 |
| **goldfarb**(2) 3:45 6:21 | | | | **home**(5) 41:23 44:20 45:11 57:19 58:15 | | **includes**(1) 33:22 |
| **goldis**(1) 7:11 | | | | **honor**(196) 13:3 13:4 13:5 13:7 13:20 | | **including**(6) 19:19 20:1 22:4 48:9 50:21 |
| **goldman**(3) 7:13 7:46 7:46 | | | | 13:23 14:4 14:7 14:15 14:21 15:10 16:7 | | 68:12 |
| **goldsmith**(1) 9:20 | | | | 16:18 17:3 17:12 17:21 17:23 18:2 18:7 | | |
| **gone**(1) 23:6 | | | | 18:12 18:22 19:5 19:10 19:13 19:21 20:5 | | **incompleteness**(2) 28:20 32:11 |
| **good**(21) 13:2 13:3 13:4 13:5 13:19 19:5 | | | | 20:13 20:21 21:4 21:8 21:18 22:11 23:9 | | **increase**(1) 69:24 |
| 29:16 32:19 36:11 42:17 46:8 52:1 52:11 | | | | 23:13 23:16 23:18 23:22 23:24 23:25 24:8 | | **incurred**(2) 44:13 45:6 |
| 70:14 72:17 72:19 72:23 79:24 79:24 84:8 | | | | 24:14 24:21 25:3 25:9 25:16 26:9 26:11 | | **indeed**(4) 15:13 16:2 16:10 24:1 |
| 86:25 | | | | 27:2 29:15 29:16 30:12 30:25 31:14 32:9 | | **indenture**(1) 76:9 |
| | | | | 32:15 32:19 32:25 34:11 34:14 35:1 35:6 | | **indicate**(1) 71:6 |
| **goose**(1) 73:12 | | | | 35:21 36:9 36:11 36:14 36:20 37:11 37:11 | | **indicating**(1) 16:10 |
| **gordon**(17) 4:14 4:49 7:5 8:43 19:5 19:6 | | | | 38:4 38:8 38:11 38:20 38:22 38:25 39:7 | | **individual**(2) 74:21 75:9 |
| 20:20 23:13 23:16 31:13 31:18 31:23 | | | | 39:10 40:1 40:9 40:11 40:13 40:16 40:21 | | **individuals**(1) 23:3 |
| 31:23 32:3 32:18 33:16 33:17 | | | | 40:24 41:2 41:10 41:17 41:24 42:3 42:8 | | **industry**(4) 53:5 53:12 53:24 53:25 |
| | | | | 42:17 42:22 43:5 43:16 44:1 44:10 44:12 | | **inflate**(1) 55:11 |
| **gordon's**(3) 33:19 34:3 34:8 | | | | 44:14 44:21 45:2 45:8 45:12 45:19 45:22 | | **information**(10) 18:15 24:3 33:13 33:16 |
| **got**(10) 16:18 16:24 32:21 47:20 61:19 | | | | 46:10 46:15 46:20 46:25 47:16 48:13 | | 33:20 33:23 34:1 34:4 34:7 61:23 |
| 65:11 73:25 74:9 78:25 80:11 | | | | 48:25 49:3 49:8 49:10 49:14 49:20 50:9 | | |
| | | | | 50:18 51:1 51:16 51:19 51:23 52:1 52:11 | | **informed**(2) 21:19 33:21 |
| **gotshal**(1) 10:4 | | | | 52:14 52:18 53:1 53:3 53:23 54:10 55:7 | | **initial**(1) 33:4 |
| **gotten**(2) 19:18 76:14 | | | | 55:15 55:18 56:4 56:18 56:24 57:10 57:17 | | **injured**(2) 64:16 64:24 |
| **graem**(3) 3:44 6:19 | | | | 57:22 58:6 58:9 59:3 59:14 59:20 60:2 | | **inquiry**(1) 53:2 |
| **grand**(3) 4:27 64:10 64:21 | | | | 60:17 61:14 61:19 61:21 62:3 62:13 62:19 | | **insider**(2) 80:5 80:7 |
| **grant**(1) 71:1 | | | | 63:2 63:15 63:20 64:1 64:4 64:14 64:21 | | **insolvency**(3) 47:17 47:21 47:24 |
| **great**(6) 11:4 28:3 48:19 50:20 73:5 82:24 | | | | 64:24 65:20 66:4 66:5 66:13 66:20 66:25 | | **insolvent**(9) 45:9 45:14 54:25 55:13 55:24 |
| **greatest**(1) 66:13 | | | | 67:7 67:10 67:12 67:19 67:24 68:3 69:4 | | 56:18 56:21 57:17 58:14 |
| **greatly**(1) 51:10 | | | | 69:17 70:5 70:9 70:14 71:4 73:18 75:14 | | |
| **greg**(1) 8:29 | | | | 76:19 77:23 78:9 79:2 80:10 80:22 81:20 | | **instance**(1) 30:21 |
| **gregory**(1) 9:27 | | | | 82:6 83:22 84:3 84:5 84:10 84:13 85:6 | | **instances**(1) 24:13 |
| **greissman**(1) 10:16 | | | | 85:17 86:25 87:6 | | **instead**(4) 39:10 41:14 43:10 43:12 |
| **grey**(2) 5:46 5:46 | | | | | | **instructed**(1) 21:10 |
| **grippo**(1) 9:31 | | | | **honorable**(1) 1:18 | | **instructive**(1) 66:21 |
| **ground**(3) 37:20 55:22 56:11 | | | | **honor's**(1) 83:19 | | **insured**(1) 12:17 |
| **group**(10) 11:45 15:5 15:23 17:15 18:5 | | | | **hope**(2) 25:11 36:14 | | **insurmountable**(1) 77:22 |
| 41:13 41:14 52:13 60:25 69:11 | | | | **hopefully**(2) 25:21 83:18 | | **integrally**(2) 17:16 66:10 |
| | | | | **how**(29) 18:20 18:22 18:22 23:3 24:19 | | **intend**(2) 88:3 88:10 |
| **groups**(4) 38:7 50:4 50:20 50:22 | | | | 24:20 27:24 28:16 31:25 36:18 37:18 | | **intentional**(2) 45:21 65:5 |
| **guarantee**(1) 86:11 | | | | 40:17 48:19 55:4 55:13 55:15 60:14 64:15 | | **interest**(8) 31:25 37:2 58:2 63:22 64:8 |
| **guarantees**(2) 48:10 86:11 | | | | 65:12 65:12 65:17 72:2 72:8 73:23 75:9 | | 83:9 85:4 86:5 |
| **guess**(7) 19:13 22:18 22:22 54:16 72:12 | | | | 77:10 77:25 84:12 84:15 | | **interested**(2) 23:24 69:16 |
| 78:4 83:19 | | | | | | **interesting**(1) 79:13 |
| | | | | **howard**(1) 3:30 | | **interests**(8) 26:15 29:17 33:16 33:17 33:19 |
| **gump**(5) 2:43 9:19 13:21 33:1 52:12 | | | | **however**(1) 44:24 | | 38:1 40:13 41:1 |
| **had**(14) 14:9 14:18 16:1 16:1 16:1 16:3 | | | | **hundreds**(1) 74:12 | | |
| 16:23 18:13 18:14 18:15 19:12 19:15 | | | | **hurdle**(1) 58:23 | | **internal**(1) 14:25 |
| 19:16 20:4 20:11 20:15 21:11 21:16 24:3 | | | | **hurdles**(2) 56:19 56:20 | | **interpretation**(1) 61:10 |
| 24:17 26:7 37:17 62:10 67:4 69:22 71:8 | | | | **hurley**(1) 2:46 | | **interview**(1) 15:10 |
| 71:10 72:12 73:11 73:25 76:25 76:25 77:6 | | | | **i'd**(1) 33:4 | | **into**(15) 28:3 29:13 29:24 30:2 39:22 45:5 |
| 80:17 83:9 83:12 84:9 86:13 86:17 86:20 | | | | **i'll**(7) 13:14 14:7 23:10 30:18 49:13 51:25 | | 45:12 45:17 54:18 55:12 62:19 67:1 75:3 |
| | | | | 53:1 | | 82:3 87:22 |
| **hale**(1) 7:9 | | | | | | |
| **half**(1) 39:11 | | | | **i'm**(15) 13:15 13:16 14:2 14:3 17:11 18:13 | | **introduce**(1) 28:1 |
| **halls**(1) 84:22 | | | | 20:9 25:8 28:3 28:3 28:8 29:23 35:17 | | **intuitive**(1) 76:5 |
| **hand**(5) 14:4 40:6 52:2 69:4 75:21 | | | | 49:10 49:10 | | **invented**(1) 22:19 |
| **handed**(2) 31:9 57:24 | | | | | | **investments**(1) 26:24 |
| **handle**(1) 13:12 | | | | **i've**(6) 16:24 18:24 29:6 | | **investors**(1) 9:46 |
| **happen**(4) 24:13 27:25 41:6 66:20 | | | | **idea**(4) 20:5 28:1 28:3 28:4 | | **invited**(1) 67:1 |
| **happens**(2) 50:7 82:10 | | | | **identified**(2) 56:1 58:23 | | **involve**(2) 79:23 81:15 |
| **happy**(3) 37:21 49:10 87:6 | | | | **identify**(1) 58:17 | | **involved**(4) 17:17 18:14 72:19 72:25 |
| **harbor**(3) 79:4 79:12 86:8 | | | | **ill**(1) 25:13 | | **involvement**(2) 20:12 21:16 |
| **hard**(2) 37:25 81:6 | | | | **illinois**(1) 4:36 | | **involves**(3) 78:12 79:24 81:15 |
| **harrisburg**(1) 1:39 | | | | **illuminate**(1) 84:7 | | **irrelevant**(2) 24:5 34:6 |
| **has**(29) 14:21 19:2 21:2 22:5 22:17 24:3 | | | | **illustration**(5) 72:2 72:4 77:2 77:6 77:15 | | **isaac**(2) 5:6 70:15 |
| 26:6 26:23 27:13 27:23 27:24 29:3 32:22 | | | | **immediately**(2) 16:6 16:9 | | **isn't**(2) 45:17 62:4 |
| 33:11 35:22 36:24 38:5 38:23 42:3 47:17 | | | | **imperfect**(1) 84:7 | | **isn't**(4) 71:17 72:16 81:9 81:12 |
| 48:1 49:22 51:19 58:23 78:15 80:20 86:6 | | | | **impliedly**(5) 38:14 40:3 40:13 41:17 42:5 | | **issue**(20) 14:8 14:21 26:16 29:6 46:2 46:4 |
| 86:17 87:6 | | | | **import**(2) 60:12 60:13 | | 46:24 46:25 47:6 56:2 58:11 59:25 62:4 |
| | | | | **important**(11) 20:16 24:7 40:10 41:2 53:2 | | 63:20 65:21 70:21 79:10 79:20 80:19 |
| **hauer**(4) 2:43 9:19 13:21 52:12 | | | | 63:14 66:17 73:16 78:1 85:24 86:16 | | 85:22 |
| | | **historic**(1) 35:25 | | | | **issued**(1) 14:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**issues**(21) 13:25 14:10 14:15 17:10 25:22 26:5 26:11 26:14 27:5 44:3 44:6 44:10 48:14 48:16 48:17 51:6 58:17 60:10 66:12 71:2 84:7

**it's**(31) 17:25 18:1 18:1 19:7 19:10 19:10 21:5 24:4 24:5 24:5 25:2 28:4 28:6 28:22 30:2 33:21 41:19 41:21 42:4 42:22 43:15 44:21 45:15 52:4 53:8 55:4 55:22 56:11 61:17 61:20 65:14

**it."**(1) 70:3
**item**(1) 13:9
**iterations**(9) 16:3 16:23 17:18 20:4 20:6 20:22 24:8 24:10 25:1

**its**(24) 26:23 32:3 32:7 37:8 37:10 40:19 41:4 41:12 42:4 44:21 50:3 55:1 55:1 55:5 56:15 56:16 57:4 57:8 75:18 75:19 80:5 80:13 86:19

**itself**(5) 34:7 45:13 53:14 61:8 65:23
**it's**(20) 66:18 66:21 68:4 75:9 76:16 76:20 76:22 78:1 79:2 81:12 81:13 81:13 81:21 82:9 84:1 84:11 85:18 86:21 86:24 87:1 87:2
**i'd**(9) 70:18 71:12 72:24 73:13 77:25 79:22 80:15 81:20 87:11

**i'll**(13) 68:3 71:25 72:16 73:14 78:7 81:14 83:16 83:17 83:19 85:21 87:15 88:7 88:11

**i'm**(13) 68:25 71:7 75:7 78:6 78:7 78:8 80:10 80:18 83:15 83:15 86:23 87:6 88:12

**i've**(2) 78:18 83:8
**james**(9) 1:24 1:25 3:46 4:25 6:20 11:41 35:16 36:11 62:15

**jane**(1) 11:26
**january**(3) 22:11 61:24 62:14
**jason**(4) 5:38 5:39 6:37 9:20
**jean-marie**(1) 6:29
**jefferies**(2) 7:25 7:25
**jeffrey**(1) 5:47
**jenner**(1) 5:17
**jennifer**(1) 12:18
**jessica**(1) 6:11
**jillian**(1) 1:28
**jim**(2) 26:9 32:19
**job**(1) 87:1
**john**(1) 7:30
**johnston**(11) 4:25 32:19 32:20 33:8 34:9 34:11 34:14 34:19 34:22 34:25 49:15

**jon**(2) 7:16 7:17
**jones**(4) 4:33 7:33 7:33 9:40
**joshua**(2) 4:26 12:10
**jpmorgan**(1) 10:31
**judge**(2) 1:19 28:18
**judgment**(2) 60:13 60:13
**julie**(1) 15:4
**july**(4) 21:19 22:18 78:17 78:18
**junior**(1) 69:21
**just**(41) 13:7 18:21 21:5 23:4 23:5 23:8 25:18 27:10 28:22 28:22 29:11 29:22 31:8 31:13 35:1 35:12 35:18 41:16 41:20 43:6 49:4 50:10 60:6 60:14 61:25 64:4 65:7 68:14 69:13 70:4 70:24 71:23 72:16 75:18 77:25 80:11 81:5 82:16 83:5 83:6 87:12

**justification**(1) 74:17
**justification**(1) 80:15
**justin**(1) 7:26
**kalenchits**(2) 10:24 10:24
**kaminetzky**(1) 2:18
**kansa**(1) 8:31
**kaplan**(1) 9:25
**kasowitz**(2) 3:19 11:8
**katharine**(1) 4:41

**katherine**(1) 7:38
**kavalis**(1) 10:28
**kaye**(1) 11:23
**keeping**(1) 86:18
**ken**(1) 8:31
**kenneth**(2) 10:48 11:46
**kept**(1) 67:20
**kevin**(2) 1:18 1:26
**key**(6) 22:9 38:5 38:13 40:2 44:6 50:21
**kim**(1) 10:32
**kind**(4) 27:14 79:23 80:9 85:12
**kinds**(1) 68:17
**king**(3) 3:14 4:43 5:26
**kira**(1) 8:39
**kirshner**(1) 25:15
**kirshner's**(2) 25:12 25:21
**klauder**(1) 5:25
**klee**(1) 79:9
**kleiner**(1) 10:38
**kline**(1) 1:27
**knew**(3) 39:6 84:23 86:20
**know**(33) 13:12 17:9 18:2 18:3 20:9 24:8 26:21 27:21 27:22 27:22 28:19 30:4 33:4 35:22 55:13 55:15 55:15 57:9 59:25 62:11 65:12 65:12 65:14 65:17 73:14 74:2 77:2 78:4 79:20 81:7 82:11 83:24 85:10

**knowing**(1) 28:8
**known**(2) 18:15 21:17
**knows**(1) 57:10
**kohr**(1) 89:10
**korpus**(1) 3:21
**kramer**(2) 7:20 7:20
**kurtz**(2) 67:14 84:20
**kurtz's**(1) 69:1
**kye**(1) 9:15
**lack**(1) 57:14
**lacks**(1) 42:5
**lance**(1) 10:39
**landis**(3) 3:36 3:37 6:24
**language**(1) 78:8
**lantry**(1) 1:26
**largely**(1) 75:21
**larger**(1) 76:14
**largest**(1) 28:8
**last**(21) 13:8 13:23 14:9 14:15 14:19 16:8 19:16 20:3 22:9 24:21 25:12 27:13 29:20 29:20 42:15 43:12 47:5 49:5 61:2 70:21 84:17
**late**(2) 13:23 68:20
**later**(6) 19:9 73:7 74:14 88:4 88:11 88:16
**latest**(2) 20:8 22:8
**latham**(1) 6:36
**laughter**(4) 34:20 49:17 66:3 87:9
**laurie**(1) 4:6
**law**(9) 5:3 12:11:8 31:11 35:17 36:12 52:6 52:20 55:8 58:23 74:21 75:6 75:23 81:17 85:8 85:8

**lawler**(1) 10:43
**lawrence**(1) 10:43
**laws**(1) 54:12
**lawyer**(3) 15:10 20:12 33:1
**lawyer-driven**(1) 20:3
**lawyers**(4) 19:24 20:2 24:23 60:20
**layer**(1) 54:1
**lazard**(8) 61:18 61:24 62:9 62:11 62:14 68:24 69:22 84:22

**lbo**(20) 37:14 39:13 42:24 44:13 45:1 45:2 45:6 54:18 58:7 63:10 69:15 70:3 73:6 75:12 75:14 82:2 82:3 82:4 82:5 82:21

**lead**(2) 53:6 67:15
**leaps**(1) 27:13
**learn**(1) 33:10
**least**(5) 17:13 48:8 64:17 67:6 88:4

**leave**(8) 13:14 29:11 48:22 54:25 57:3 70:3 85:21 87:24
**leaves**(1) 37:7
**leaving**(1) 36:21
**lebouef**(1) 32:20
**lebouel**(1) 4:23
**led**(3) 15:17 20:1 42:16
**legal**(2) 45:23 59:2
**legislative**(4) 71:25 76:19 77:2 77:24
**lemay**(1) 3:28
**lend**(1) 55:12
**lender**(9) 36:5 42:24 50:22 52:23 59:15 60:25 61:15 63:6 69:2

**lenders**(26) 7:5 26:17 29:21 37:14 38:6 46:17 48:2 54:24 58:7 59:12 59:18 63:10 67:2 69:25 70:1 73:2 73:21 75:8 75:10 75:12 75:14 75:22 75:24 80:20 81:11

**leonard**(1) 2:5
**lerman**(1) 31:17
**less**(3) 18:1 47:20 60:14
**lesser**(1) 69:21
**let**(16) 17:11 21:9 28:24 29:11 38:9 42:20 43:25 48:25 49:4 49:19 56:12 58:16 60:3 68:2 69:4 87:19

**let's**(1) 25:6
**lets**(1) 68:5
**letter**(18) 13:24 16:5 17:3 17:4 18:25 19:11 23:23 31:10 31:16 32:2 32:15 33:22 34:13 34:23 35:5 76:21 83:16

**letters**(2) 13:13 35:6
**letting**(1) 83:3
**level**(15) 3:15 42:6 43:15 47:8 47:22 48:9 53:17 57:20 59:8 59:9 68:6 69:21 86:1 86:9 86:11

**levels**(1) 38:17
**leverage**(2) 15:5 69:24
**leveraged**(10) 15:5 15:22 17:14 18:4 53:24 54:6 64:17 64:24 68:16 73:7

**levin**(2) 7:20 7:20
**levy**(1) 8:45
**lewis**(1) 11:4
**lexi**(1) 7:49
**lexington**(1) 2:24
**liang**(1) 10:48
**liebentritt**(2) 2:12 69:7
**life**(1) 52:19
**like**(30) 14:5 23:11 23:14 23:15 26:10 27:22 28:23 32:23 33:4 33:5 34:9 35:20 49:11 50:19 59:3 62:2 66:8 70:7 70:18 71:12 72:18 72:24 73:13 77:25 79:4 79:7 81:20 85:12 87:11 87:20

**likely**(3) 39:14 60:11 60:11
**limbo**(1) 37:7
**limitations**(1) 29:20
**limited**(4) 17:24 29:3 31:21 51:14
**lion's**(1) 38:21
**lion's**(1) 75:1
**list**(4) 21:17 27:23 27:23 72:21
**listed**(1) 29:1
**listen**(2) 44:24 47:1
**literally**(2) 14:16 32:21
**litigate**(3) 45:15 45:15 73:7
**litigated**(1) 86:23
**litigating**(1) 43:10
**litigation**(34) 36:22 37:8 38:21 38:23 39:2 39:23 40:22 40:24 42:13 44:20 45:11 48:22 49:25 50:6 50:8 50:15 54:7 56:6 58:13 60:6 60:15 60:20 60:22 63:16 68:4 68:11 68:12 68:14 68:19 68:23 70:4 70:7 74:24 85:3

**little**(9) 18:20 21:9 34:16 38:9 42:3 48:25 49:6 53:11 88:17
**litvack**(1) 10:7
**live**(1) 37:21
**llc**(4) 2:37 8:14 9:31 11:51
**llp**(20) 1:23 3:27 4:48 5:42 6:6 6:18 6:24 6:28 6:36 7:21 7:37 8:18 9:15 10:4 10:31 10:37 11:4 11:15 11:15 11:23
**loan**(4) 72:11 78:16 78:24 79:3
**loans**(2) 44:13 45:1
**locked**(1) 87:25
**lodge**(1) 30:20
**long**(6) 17:6 18:16 35:6 37:16 37:16 37:19
**long-term**(4) 53:10 53:12 72:25 81:23
**longacre**(2) 7:29 7:29
**look**(11) 21:8 28:11 37:23 40:17 48:7 57:23 59:13 64:3 79:22 87:10 87:20

**looked**(1) 37:18
**looking**(2) 37:1 58:5
**los**(2) 4:29 5:9
**losquadro**(1) 10:52
**lost**(1) 73:17
**lot**(9) 28:12 29:7 37:24 43:25 50:2 51:20 62:2 87:1 87:10
**loud**(1) 65:22
**loudly**(2) 40:11 42:8
**lousy**(2) 65:14 65:17
**low**(1) 67:6
**low-ball**(1) 74:3
**lower**(1) 43:4
**lowest**(2) 43:15 66:9
**lucy**(1) 9:50 9:51
**ludwig**(1) 1:28
**lugano**(1) 1:35
**lunch**(2) 88:6 88:8
**lynch**(2) 4:5 11:23
**lynn**(1) 4:34
**macquarie**(2) 12:21 12:21
**made**(10) 24:15 25:16 27:3 28:12 32:4 79:15 79:20 80:20 80:20 88:19

**madlyn**(1) 11:24
**magically**(2) 19:12 20:10
**magnozzi**(1) 9:15
**mail**(1) 69:1
**major**(2) 26:13 57:21
**majority**(5) 14:14 40:14 41:13 41:14 50:20
**make**(25) 16:12 23:7 23:10 27:7 27:12 28:5 29:2 29:21 32:13 50:9 50:11 50:13 52:18 52:19 52:9 52:20 60:20 68:17 70:13 75:22 75:24 81:5 81:20 85:6 88:7

**makes**(4) 24:11 45:14 72:20 88:5
**making**(2) 77:20 78:22
**male**(1) 13:4
**management**(25) 5:42 6:47 7:29 7:29 8:14 8:14 9:4 9:11 9:19 9:50 10:20 10:20 10:37 10:47 10:47 10:51 10:51 12:9 12:9 12:17 13:22 52:13 55:11 70:17 71:4

**managing**(2) 17:13 17:14
**manges**(1) 10:4
**manner**(1) 67:8
**many**(11) 16:2 17:15 18:8 24:13 36:5 38:7 43:2 65:12 82:11 84:20 85:20

**marc**(2) 6:7 6:13
**march**(5) 1:14 13:1 16:17 31:10 35:5
**marino**(1) 5:31
**mark**(1) 2:20
**marked**(1) 16:25
**market**(7) 1:11 3:39 4:9 5:13 5:32 15:9 56:16

**marketplac**(1) 15:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| marrero(1) 6:11 | | model(2) 60:8 61:4 | | nobody(5) 29:12 39:24 75:6 84:9 84:23 | | obviously(4) 14:4 17:5 31:24 76:13 | |
| marsal(2) 12:13 12:13 | | modeled(1) 68:24 | | nomura(2) 10:27 10:27 | | occur(1) 17:20 | |
| martin(1) 2:30 | | models(1) 73:2 | | non-lbo(4) 75:3 75:10 75:22 82:21 | | october(3) 19:20 22:18 61:18 | |
| marvin(1) 4:34 | | modest(1) 57:9 | | non-party(1) 11:45 | | off(4) 14:19 25:14 48:8 65:13 | |
| massive(2) 28:22 53:23 | | moment(9) 28:25 31:8 36:14 54:13 59:18 | | none(2) 25:16 37:20 | | offer(1) 53:18 | |
| material(4) 27:3 27:10 28:23 62:2 | | 64:3 68:2 72:1 72:24 | | nonsense(1) 20:7 | | offered(1) 80:14 | |
| mathematically(1) 61:4 | | monarch(2) 7:41 7:42 | | nor(2) 43:23 77:5 | | office(1) 5:24 | |
| matter(10) 14:19 25:7 25:10 25:21 32:24 | | monday(1) 13:1 | | normal(1) 46:11 | | officer(1) 69:7 | |
| 33:4 44:11 82:12 83:6 89:6 | | money(8) 57:14 62:3 72:6 75:19 82:10 | | normally(3) 30:13 30:14 46:22 | | officers(1) 68:12 | |
| | | 86:4 86:18 87:1 | | norman(2) 2:6 13:5 | | official(3) 3:26 6:5 36:13 | |
| matters(11) 13:12 29:1 31:5 31:17 31:19 | | montenegro(1) 11:10 | | north(4) 3:14 4:9 61:25 81:4 | | often(2) 19:8 66:16 | |
| 34:18 62:17 66:5 70:23 87:21 88:20 | | month(2) 33:9 70:5 | | not(94) 13:14 13:15 13:16 14:2 15:8 15:1 | | okay(9) 30:6 31:9 34:12 34:19 66:4 78:6 | |
| | | months(2) 45:6 61:20 | | 15:13 19:3 19:15 20:10 21:13 24:8 25:10 | | 80:22 81:8 82:19 | |
| matthew(4) 6:25 9:12 9:36 11:12 | | more(25) 21:9 34:16 37:1 39:11 39:17 | | 28:3 28:3 28:18 29:6 30:10 32:5 33:1 | | | |
| mauceri(1) 11:5 | | 40:5 40:10 42:16 44:19 47:12 47:18 47:24 | | 33:15 34:17 35:5 35:17 39:6 41:8 42:7 | | once(3) 16:13 63:20 73:11 | |
| maximize(1) 39:3 | | 49:13 51:4 54:1 57:25 60:13 61:6 63:17 | | 43:5 43:9 43:9 44:12 45:15 46:5 47:2 | | one(98) 1:31 2:50 12:4 12:4 14:25 18:9 | |
| may(16) 16:13 23:15 23:18 23:20 30:17 | | 66:16 66:17 77:12 77:18 81:21 81:21 | | 47:7 47:10 47:19 50:10 50:18 51:7 51:9 | | 21:13 22:6 24:1 24:3 24:4 24:11 24:18 | |
| 34:12 34:15 35:1 52:2 52:3 54:13 62:3 | | | | 51:11 52:23 53:10 53:19 53:23 54:5 56:2 | | 24:25 25:1 26:19 26:20 26:24 27:5 28:6 | |
| 76:5 86:7 87:13 87:16 | | morgan(4) 2:16 10:4 10:12 11:4 | | 58:25 59:7 59:9 60:17 62:2 63:21 65:23 | | 28:19 29:14 31:8 31:19 31:21 35:1 36:19 | |
| | | morning(5) 13:13 13:24 22:23 29:8 54:21 | | 66:16 67:11 67:12 67:12 69:14 69:16 70: | | 37:12 39:6 42:1 42:19 44:7 44:12 44:13 | |
| maybe(6) 22:18 70:20 79:16 79:17 79:18 | | moskowitz(1) 2:17 | | 70:20 70:24 71:1 71:7 71:22 71:24 72:1 | | 44:21 45:1 45:5 45:7 45:9 45:14 45:17 | |
| 87:11 | | moss(1) 11:16 | | 74:11 74:11 75:9 75:22 75:23 76:5 76:6 | | 45:19 46:8 46:12 46:17 50:25 51:7 51:8 | |
| | | most(13) 20:16 26:24 29:9 40:16 42:11 | | 76:9 76:24 77:16 78:8 78:16 79:11 79:17 | | 52:2 52:9 53:19 53:21 55:2 55:18 55:24 | |
| mayer(2) 4:41 6:28 | | 53:2 61:23 64:18 68:15 69:14 73:24 85:23 | | 80:10 81:13 84:5 84:8 85:3 85:20 86:4 | | 56:3 56:10 56:18 57:16 57:21 57:21 57:24 | |
| mccarter(1) 4:40 | | 86:16 | | 86:22 86:23 87:2 88:12 | | 58:3 58:20 58:23 58:25 59:7 59:8 59:19 | |
| mccormack(1) 3:29 | | mostly(1) 73:21 | | | | 59:22 61:12 62:8 62:21 63:20 63:21 64:5 | |
| mccutchen(1) 8:18 | | motion(1) 26:3 | | not-discriminate-unfairly(2) 72:3 81:16 | | 64:8 64:12 65:5 66:18 67:25 70:12 71:17 | |
| mcdaniel(1) 3:13 | | mount(1) 54:1 | | notably(2) 40:16 41:10 | | 71:22 73:2 77:2 79:22 80:18 80:23 82:11 | |
| mcgowan(1) 10:13 | | mountain(1) 71:9 | | note(3) 76:3 76:7 79:17 | | 83:5 83:8 83:9 83:12 85:8 85:8 86:2 | |
| mcguire(1) 6:25 | | mountains(2) 54:1 71:14 | | noteholder(12) 41:3 42:3 50:3 52:13 52:24 | | 87:15 | |
| mcneill(1) 4:7 | | mouth(1) 75:19 | | 66:25 67:12 75:22 78:18 82:13 82:13 | | one's(1) 79:4 | |
| mean(5) 20:15 22:6 34:21 63:25 79:15 | | move(1) 47:11 | | 82:14 | | | |
| meaningful(1) 58:21 | | moves(3) 44:7 46:5 80:4 | | | | ongoing(1) 35:10 | |
| means(1) 58:12 | | moving(1) 64:4 | | noteholders(32) 18:9 37:5 37:5 37:10 | | only(20) 20:18 24:2 27:8 28:12 28:19 | |
| meant(1) 61:11 | | much(15) 16:17 20:18 27:24 39:17 43:16 | | 38:12 39:9 39:18 39:21 40:23 41:11 41:1 | | 31:10 39:21 44:16 48:7 48:7 55:18 56:4 | |
| mechanism(1) 75:4 | | 47:11 65:12 66:1 84:12 87:11 88:25 | | 41:20 42:2 42:9 43:23 45:20 46:15 49:1 | | 56:13 57:19 69:25 73:5 74:11 79:5 79:7 | |
| media(3) 31:24 31:25 35:23 | | | | 49:24 50:14 51:17 51:25 55:21 67:22 | | 82:17 | |
| mediation(2) 84:21 84:21 | | mulhern(1) 10:39 | | 71:16 71:21 72:7 73:20 75:2 77:21 78:3 | | onto(1) 74:15 | |
| meet(2) 21:11 36:1 | | multiple(2) 35:8 67:1 | | 83:1 | | open(1) 22:17 | |
| meet-and-confers(1) 18:8 | | murphy(1) 11:20 | | noteholders'(2) 73:9 74:5 | | opening(7) 35:15 35:18 35:19 36:8 55:17 | |
| meisel(1) 2:4 | | mutual(1) 80:8 | | | | 70:13 78:5 | |
| melamed(1) 6:41 | | myers(1) 8:4 | | notes(28) 38:14 38:18 39:15 40:4 40:18 | | | |
| member(1) 85:19 | | myrick(1) 1:29 | | 41:6 44:15 44:18 44:22 46:6 47:3 47:8 | | openings(2) 49:5 84:17 | |
| memos(1) 71:9 | | naftalis(1) 7:20 | | 54:3 58:8 59:21 60:23 63:8 63:8 63:11 | | openly(1) 15:2 | |
| mention(1) 61:13 | | name(1) 15:21 | | 63:25 64:23 65:2 71:5 71:5 73:25 76:13 | | operate(2) 55:1 57:8 | |
| mere(1) 64:22 | | names(1) 21:12 | | 76:14 77:13 | | operating(1) 53:16 | |
| merits(1) 53:1 | | nancy(1) 2:49 | | | | opinion(1) 21:24 | |
| merrill(2) 4:5 11:23 | | narrow(1) 18:20 | | nothing(3) 20:23 23:9 51:21 | | opportunities(2) 35:24 36:2 | |
| mester(1) 4:26 | | narrowed(1) 26:11 | | notion(1) 20:10 | | opportunity(7) 18:23 23:11 24:18 26:7 | |
| methodology(1) 61:21 | | natural(2) 62:21 62:25 | | now(55) 14:21 15:9 15:24 16:24 17:11 | | 34:9 70:19 71:9 | |
| michael(3) 2:23 6:31 8:19 | | nature(2) 31:25 39:23 | | 18:6 21:3 21:15 22:15 22:24 23:5 24:7 | | | |
| michelle(2) 5:31 7:11 | | necessary(2) 28:4 35:8 | | 26:12 29:23 33:10 36:8 41:5 42:7 43:1 | | opposed(2) 36:18 68:10 | |
| middle(1) 48:21 | | necessity(1) 58:13 | | 45:18 46:15 49:6 50:3 50:7 52:25 54:13 | | opposite(4) 37:18 44:9 61:1 61:3 | |
| midnight(1) 13:24 | | need(10) 23:4 33:15 36:3 36:4 41:23 68:7 | | 55:7 55:17 55:22 57:19 60:17 61:24 62:16 | | opt(3) 75:5 75:6 75:7 | |
| midpoint(2) 61:19 61:25 | | 73:15 73:24 88:16 88:22 | | 62:25 64:3 66:23 68:2 73:13 73:21 | | opt-out(1) 85:11 | |
| might(7) 20:20 32:10 69:14 78:5 83:5 | | | | 73:24 74:9 74:17 74:25 75:9 76:5 76:13 | | opted(2) 75:20 85:11 | |
| 85:3 85:3 | | needle(2) 46:5 47:10 | | 76:18 77:18 79:2 79:13 79:22 80:4 85:17 | | option(1) 69:18 | |
| | | needs(4) 34:7 44:24 52:8 55:12 | | 87:24 | | opts(1) 75:4 | |
| might've(1) 66:1 | | negative(1) 81:23 | | | | oracle(1) 9:15 | |
| mike(1) 11:34 | | negotiate(3) 37:16 37:17 68:5 | | number(15) 13:9 13:18 14:9 26:3 28:14 | | order(4) 45:11 60:22 80:18 81:3 | |
| miller(2) 11:49 11:50 | | negotiated(2) 67:9 69:21 | | 29:3 41:11 41:15 47:17 64:7 79:19 83:2 | | original(1) 84:8 | |
| million(21) 54:8 58:3 62:2 64:11 64:21 | | negotiations(3) 38:1 42:16 51:19 | | 84:24 86:2 86:2 | | ostensibly(1) 80:5 | |
| 71:4 72:13 73:19 73:23 74:6 74:9 74:10 | | neil(1) 10:52 | | | | other(46) 16:3 20:11 24:8 24:10 25:1 25:6 | |
| 78:14 78:21 78:22 78:25 79:19 79:21 | | neither(3) 43:23 77:5 87:17 | | numbers(4) 29:1 61:22 69:22 86:22 | | 25:17 26:16 26:22 28:19 29:7 31:3 38:7 | |
| 80:15 82:16 82:19 | | nevertheless(1) 85:5 | | o'clock(2) 34:12 34:15 | | 38:15 40:5 41:23 44:8 45:18 46:6 47:8 | |
| | | new(12) 2:25 2:33 2:51 3:24 3:33 4:51 | | oaktree(17) 10:46 10:47 67:11 72:8 72:8 | | 48:14 50:12 50:16 52:4 56:24 60:1 60:23 | |
| mina(2) 9:46 9:47 | | 20:23 21:16 23:9 25:24 25:25 54:2 | | 72:12 72:13 72:15 78:12 78:16 78:17 | | 64:16 66:15 67:2 70:12 71:2 71:22 73:4 | |
| mind(1) 82:21 | | newman(1) 2:47 | | 78:19 78:19 78:23 80:15 82:20 85:23 | | 75:2 75:21 76:4 76:9 76:15 77:22 79:3 | |
| minimum(1) 62:5 | | news(1) 7:33 | | | | 80:22 80:24 81:25 84:20 88:19 | |
| minkove(1) 10:34 | | newspaper(1) 53:9 | | oaktree/angel(1) 4:14 | | | |
| minute(2) 74:19 77:10 | | next(8) 34:18 36:16 37:24 42:11 52:15 | | oaktree's(1) 78:24 | | others(1) 68:13 | |
| minutes(8) 14:17 16:8 44:1 49:6 49:13 | | 59:15 64:18 64:25 | | objected(1) 25:17 | | otherwise(2) 49:15 59:12 | |
| 84:15 84:16 87:7 | | | | objection(9) 28:10 28:13 56:8 67:5 71:6 | | our(37) 16:17 18:10 20:22 24:14 27:11 | |
| | | nicholas(1) 10:21 | | 71:8 78:5 83:8 84:9 | | 33:1 35:19 43:7 48:1 49:23 53:6 56:7 | |
| mired(1) 82:7 | | night(2) 13:23 88:1 | | | | 57:5 59:3 60:12 62:15 66:23 68:1 68:22 | |
| missed(1) 82:18 | | | | objections(5) 28:15 28:25 32:11 83:8 87:1 | | 68:3 68:5 68:13 68:18 70:6 70:7 70:21 | |
| misses(1) 24:19 | | | | objectively(1) 60:10 | | 71:6 71:6 71:7 73:12 80:11 80:12 82:12 | |
| misunderstanding(1) 70:20 | | | | obligated(1) 47:19 | | 82:15 83:8 83:14 88:14 | |
| mitch(1) 2:46 | | | | obligation(1) 79:12 | | | |
| | | | | obligations(1) 79:6 | | ourselves(1) 65:16 | |
| | | | | obstacle(3) 45:10 72:9 77:22 | | | |
| | | | | obstacles(2) 47:13 48:11 | | | |
| | | | | obtain(1) 35:7 | | | |
| | | | | obvious(1) 79:16 | | | |

Page : 8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| out(40) 20:6 28:18 33:21 35:5 37:1 38:2 46:8 50:17 54:5 54:11 54:15 55:14 57:14 60:15 62:7 64:10 65:1 65:11 66:12 66:16 66:15 67:7 67:10 67:14 67:16 68:22 69:13 69:15 73:3 73:7 73:8 73:11 74:7 75:6 75:20 76:1 76:3 78:22 80:18 83:25 85:11 | | partner(2) 5:42 10:37 | | plan(106) 25:17 36:4 36:5 36:9 36:19 36:20 36:24 37:4 37:5 37:5 37:9 37:10 37:11 37:12 37:13 38:5 38:8 38:10 38:12 38:25 39:8 39:9 39:17 39:18 39:20 39:21 40:2 40:6 40:15 40:19 40:21 41:9 41:12 41:14 41:16 41:19 42:2 42:3 42:9 42:14 43:5 43:9 43:10 48:23 49:3 49:24 50:21 50:23 51:3 51:22 52:23 62:4 62:5 62:1 63:13 66:23 66:23 67:5 67:11 68:2 68:3 68:5 68:11 68:13 68:18 68:21 68:21 69:1 69:12 70:6 70:8 71:24 72:9 72:9 72:10 72:11 72:14 72:15 72:22 73:25 74:5 74:7 74:15 75:20 75:22 76:6 76:24 77:9 77:16 77:18 77:20 77:25 78:14 78:16 78:23 78:25 79:14 80:3 81:3 82:12 82:13 82:13 82:15 82:20 82:24 83:10 | | prevented(1) 59:22 |
| | | partners(9) 5:38 8:22 9:4 11:33 11:33 11:37 11:37 12:4 12:4 | | | | prevents(1) 79:5 |
| | | | | | | preview(2) 87:19 88:19 |
| | | party(5) 30:20 46:3 67:10 70:12 70:24 | | | | reviewed(1) 48:1 |
| outcome(9) 39:24 44:11 49:25 51:6 58:18 60:15 63:16 66:14 68:24 | | parver(1) 11:26 | | | | price(1) 8:18 |
| | | past(2) 13:24 22:19 | | | | primof(1) 11:24 |
| | | pathways(1) 60:1 | | | | principal(4) 46:19 50:22 58:2 64:23 |
| outdated(1) 34:4 | | paul(3) 4:47 8:38 19:6 | | | | principle(1) 42:10 |
| outset(2) 23:10 70:18 | | pay(4) 57:4 58:8 62:7 80:7 | | | | prior(2) 14:22 16:20 |
| outside(1) 36:3 | | paying(1) 64:13 | | | | priorities(1) 46:12 |
| over(21) 14:9 14:11 14:14 14:14 17:20 18:7 19:17 19:24 20:2 20:14 21:22 22:3 24:14 32:22 33:11 36:16 37:24 43:6 49:6 49:7 52:15 85:6 | | payment(6) 44:17 55:19 59:21 59:21 63:15 64:21 | | | | privilege(1) 24:22 |
| | | | | | | privileged(4) 20:1 20:12 24:24 25:3 |
| | | | | | | probably(2) 13:9 85:22 |
| | | | | | | problem(15) 61:8 67:13 67:23 71:8 71:12 72:16 72:17 73:5 75:6 75:7 75:14 75:25 76:1 83:17 85:15 |
| over-leveraged(3) 55:10 55:11 73:6 | | payments(3) 58:2 74:23 75:12 | | | | |
| overall(1) 63:12 | | payout(1) 63:25 | | plans(5) 36:17 40:12 68:9 86:20 87:14 | | |
| overcome(2) 45:11 47:25 | | peg(1) 7:34 | | plausible(1) 60:14 | | problems(2) 25:15 68:18 |
| overhang(1) 68:6 | | pending(1) 32:1 | | playing(1) 68:6 | | proceed(2) 49:11 50:15 |
| overnight(1) 87:25 | | pennock(1) 8:47 | | plays(1) 50:17 | | proceeding(2) 23:7 36:4 |
| overpay(1) 55:9 | | pennsylvania(1) 1:39 | | plaza(3) 3:15 3:32 4:8 | | proceedings(4) 1:17 1:43 89:2 89:6 |
| overwhelmingly(1) 40:20 | | people(23) 20:6 20:25 22:16 24:18 26:14 26:22 27:1 27:20 28:1 28:5 28:17 55:7 55:9 55:10 64:12 66:13 69:8 75:1 84:21 86:22 87:3 87:3 87:4 | | plea(3) 54:16 54:19 68:7 | | process(7) 19:25 22:2 66:11 66:16 66:16 67:8 67:14 |
| own(8) 33:24 33:25 39:6 41:13 55:5 61:10 78:17 88:1 | | | | pleading(1) 76:22 | | |
| | | | | pleadings(1) 71:9 | | produce(9) 14:17 16:6 16:11 20:13 24:25 25:1 32:4 46:7 46:9 |
| | | | | please(2) 22:8 82:24 | | |
| ownership(3) 33:17 33:19 39:1 | | | | plot(1) 60:15 | | |
| o'clock(1) 88:11 | | percent(10) 41:5 41:10 63:11 63:12 64:22 70:1 70:2 71:5 74:1 74:10 | | plus(1) 58:5 | | |
| o'melveny(1) 8:4 | | | | point(23) 9:35 9:35 14:22 18:10 23:5 23:7 24:21 27:14 32:2 33:11 37:20 49:7 55:19 56:23 62:7 78:11 80:18 81:20 81:21 81:2 81:22 81:22 86:16 | | produced(22) 1:44 14:23 14:25 17:6 17:7 17:7 17:8 18:16 19:17 19:19 19:21 20:7 20:15 20:21 22:3 22:4 24:3 31:12 31:20 32:3 32:13 33:9 |
| p.a(1) 2:5 | | percentage(3) 28:8 63:5 76:14 | | | | |
| p.m(3) 1:15 13:1 89:2 | | perfectly(1) 55:3 | | | | |
| p.o(1) 3:8 | | performance(2) 53:4 53:17 | | | | |
| pachulski(12) 5:6 70:14 70:15 78:6 81:8 83:22 83:25 84:2 84:3 85:1 85:10 86:13 | | performed(1) 35:23 | | | | producing(1) 21:8 |
| | | performing(2) 53:17 55:5 | | pointed(1) 76:3 | | product(3) 66:12 66:24 67:9 |
| | | perhaps(6) 13:23 14:23 39:16 45:21 63:14 84:6 | | points(1) 73:16 | | production(3) 31:18 32:7 35:7 |
| | | | | policy(1) 72:25 | | prof(1) 11:41 |
| pachulski's(1) 84:7 | | period(3) 17:24 18:1 18:21 | | polk(2) 2:16 10:31 | | professional(3) 60:17 61:1 70:16 |
| page(8) 21:20 22:14 56:8 69:10 69:17 69:17 76:20 79:9 | | permission(1) 70:13 | | pool(2) 29:13 65:1 | | professor(4) 53:7 61:2 63:23 79:9 |
| | | permits(2) 38:25 79:6 | | poor(1) 55:4 | | progress(1) 28:12 |
| | | permitted(2) 50:19 59:9 | | position(2) 41:8 73:10 | | projected(1) 53:17 |
| pages(2) 59:3 74:12 | | pernick(5) 2:6 13:3 13:5 13:6 13:11 | | positioned(1) 62:17 | | projections(4) 26:20 53:18 55:5 55:12 |
| paid(7) 38:19 39:8 39:19 44:16 48:8 55:25 56:1 58:2 63:8 63:20 64:23 | | persily(2) 15:4 21:22 | | positions(2) 36:18 60:18 | | prominent(1) 26:24 |
| | | persily's(3) 15:15 21:20 22:11 | | posits(1) 61:15 | | promise(1) 30:10 |
| | | persuade(1) 41:13 | | possibility(3) 32:10 39:21 69:12 | | properties(2) 26:17 |
| pain(1) 54:15 | | persuaded(4) 43:12 43:21 50:2 51:15 | | possible(5) 36:23 39:6 45:14 45:15 45:18 | | proponent(7) 43:9 72:13 72:15 78:17 78:23 79:1 83:16 |
| painfully(1) 79:16 | | persuasive(2) 43:23 87:13 | | post(1) 64:7 | | |
| palmer(1) 5:30 | | pertain(1) 26:14 | | post-petition(2) 63:21 83:9 | | |
| pandora's(1) 78:5 | | pertinent(1) 26:15 | | potential(6) 38:23 40:5 69:9 74:19 74:23 82:4 | | proponents(9) 25:17 36:9 37:10 37:11 37:13 70:22 71:15 79:14 83:16 |
| panic(1) 53:20 | | petition(1) 64:8 | | | | |
| paper(1) 67:25 | | phase(2) 60:3 61:12 | | | | |
| papers(6) 68:18 72:1 74:12 82:19 86:14 88:14 | | phil(1) 2:48 | | potter(1) 4:5 | | proposal(1) 26:13 |
| | | phone(1) 67:18 | | powerful(1) 43:21 | | proposals(1) 38:3 |
| | | phones(13) 41:21 41:22 44:15 44:22 47:8 54:3 56:1 56:15 58:9 59:22 70:2 76:8 76:11 | | ppearances(5) 1:21 2:1 3:1 4:2 5:2 | | proposed(6) 52:17 55:21 60:23 62:24 64:6 64:19 |
| paragraph(1) 69:19 | | | | practical(2) 36:6 85:5 | | |
| parent(42) 38:15 38:19 39:15 40:4 40:7 40:18 41:16 44:19 44:22 46:6 47:2 47:5 47:8 47:9 47:18 47:22 48:6 48:7 48:7 50:11 50:13 51:1 51:14 57:20 58:6 58:7 58:12 59:9 71:22 72:14 76:5 76:9 76:15 77:22 78:20 78:25 79:18 80:22 85:25 86:1 86:9 86:13 | | | | pre-lbo(1) 47:19 | | protected(2) 55:3 86:5 |
| | | pickering(1) 7:9 | | pre-settlement(1) 59:14 | | proud(1) 76:2 |
| | | pieces(1) 64:4 | | pre-trial(1) 70:23 | | proved(2) 47:23 47:24 |
| | | place(1) 15:23 | | precise(2) 76:16 77:14 | | provide(3) 43:21 55:20 69:20 |
| | | places(1) 61:25 | | precisely(1) 65:25 | | provided(3) 32:14 47:12 85:11 |
| | | plain(1) 21:5 | | predated(1) 56:15 | | provides(5) 38:11 38:12 38:16 49:23 70:6 |
| | | plainly(1) 51:3 | | predict(1) 39:24 | | providing(1) 31:18 |
| parent-level(1) 48:4 | | plaintiffs(5) 45:10 47:25 48:12 48:18 58:1 | | prefer(1) 84:10 | | proving(2) 47:17 47:21 |
| parent-only(2) 47:5 47:6 | | | | preference(1) 48:4 | | provision(1) 85:9 |
| park(2) 2:50 6:6 | | | | preferences(1) 42:8 | | provisions(2) 76:8 85:20 |
| parke(1) 3:27 | | | | preferred(1) 82:12 | | pryor(2) 11:15 11:15 |
| parrot(1) 71:7 | | | | prejudice(1) 23:1 | | public(2) 15:3 27:4 |
| part(9) 15:2 15:3 20:18 32:6 53:2 57:10 59:10 81:18 87:20 | | | | preliminary(2) 13:12 35:18 | | publicity(1) 23:23 |
| | | | | premised(1) 45:4 | | publicly(1) 17:2 |
| | | | | prepared(4) 14:4 15:1 22:12 36:1 | | publishing(1) 53:10 |
| participants(1) 85:1 | | | | prepetition(1) 58:2 | | pull(1) 61:7 |
| participated(1) 21:25 | | | | present(12) 17:21 23:25 46:15 46:23 47:1 48:11 48:17 48:18 51:17 51:17 76:21 76:21 | | purchases(1) 41:5 |
| participating(1) 21:25 | | | | | | purer(4) 68:21 69:12 69:16 69:19 |
| participation(2) 46:12 70:22 | | | | | | purity(3) 68:21 69:12 69:19 |
| particular(1) 15:11 | | | | presented(2) 37:12 38:4 46:1 | | purity."(1) 69:16 |
| particularly(1) 55:8 | | | | preserve(1) 28:13 | | purport(1) 81:11 |
| parties(19) 26:4 26:7 28:21 29:2 30:3 31:13 31:20 36:2 37:17 37:20 38:1 38:2 38:22 43:2 44:2 48:14 57:1 68:5 87:12 | | | | presumption(1) 30:1 | | purpose(1) 31:24 |
| | | | | pretty(4) 31:21 36:15 65:14 78:13 | | pursue(1) 39:3 |
| | | | | prevailing(1) 45:25 | | pursued(1) 36:22 |
| | | | | prevent(2) 46:17 72:22 | | |

| Word | Page:Line |
|---|---|
| **pursuing**(3) 46:17 48:12 48:18 | |
| **put**(7) 14:11 14:13 21:17 25:14 54:2 66:7 75:19 | |
| **puts**(1) 39:10 | |
| **putting**(1) 68:19 | |
| **quarrel**(1) 83:14 | |
| **question**(4) 46:10 58:23 60:9 61:13 | |
| **questions**(7) 19:2 19:8 23:9 31:3 71:19 87:6 88:21 | |
| **quick**(1) 13:7 | |
| **quite**(4) 25:10 27:24 35:22 35:25 | |
| **quote**(2) 53:8 78:7 | |
| **qureshi**(11) 2:45 13:19 13:20 14:2 14:7 14:13 19:4 23:17 23:18 23:21 25:5 | |
| **rachel**(1) 11:5 | |
| **raft**(1) 45:17 | |
| **raise**(2) 18:7 84:8 | |
| **raises**(1) 85:10 | |
| **range**(3) 42:24 43:4 43:14 | |
| **rapid**(1) 53:5 | |
| **rapidly**(1) 53:4 | |
| **ratable**(1) 76:4 | |
| **rate**(1) 86:6 | |
| **rath**(3) 3:36 3:38 6:24 | |
| **ratifies**(1) 75:16 | |
| **ratio**(4) 76:17 77:14 77:15 77:20 | |
| **ratios**(1) 76:16 | |
| **raymond**(2) 11:41 62:15 | |
| **reached**(1) 66:19 | |
| **read**(10) 19:7 19:11 32:22 55:14 62:9 62:10 77:24 78:18 82:18 86:14 | |
| **ready**(1) 36:1 | |
| **real**(4) 47:14 48:17 48:18 80:9 | |
| **reallocated**(1) 76:13 | |
| **really**(12) 28:4 29:22 33:5 44:2 44:11 46:8 71:13 73:14 79:13 80:2 81:21 87:2 | |
| **realm**(1) 5:38 | |
| **reason**(9) 62:8 64:1 65:8 65:23 71:3 73:3 85:5 85:9 85:24 | |
| **reasonable**(8) 15:14 37:13 41:1 43:15 44:5 48:23 49:24 50:25 | |
| **reasonableness**(9) 42:20 42:25 43:4 43:14 43:17 43:22 51:18 66:9 71:19 | |
| **reasonably**(1) 33:11 | |
| **reasoned**(1) 60:20 | |
| **reasons**(2) 66:21 82:11 | |
| **recall**(4) 16:19 26:5 67:3 79:6 | |
| **recalls**(1) 67:18 | |
| **receivable**(1) 80:9 | |
| **receive**(1) 71:21 | |
| **received**(6) 16:9 16:17 17:16 19:11 25:11 32:15 | |
| **recent**(1) 41:4 | |
| **recently**(1) 81:2 | |
| **recess**(1) 89:1 | |
| **recognition**(1) 54:24 | |
| **record**(6) 13:20 15:3 21:19 28:3 52:12 | |
| **recorded**(1) 1:43 | |
| **recording**(2) 1:43 89:5 | |
| **recover**(4) 41:24 47:12 74:22 75:11 | |
| **recoveries**(12) 36:23 38:13 38:16 38:21 39:22 40:2 47:11 50:16 61:7 62:22 75:23 75:24 | |
| **recovery**(7) 46:7 46:9 55:20 63:1 63:5 63:10 74:24 | |
| **redactions**(1) 29:4 | |
| **reducing**(1) 71:17 | |
| **refer**(6) 24:2 59:3 59:13 66:8 69:10 87:13 | |

| Word | Page:Line |
|---|---|
| **referenced**(1) 19:1 | |
| **referred**(4) 24:1 36:5 59:1 69:19 | |
| **referring**(2) 16:7 85:17 | |
| **refers**(1) 79:7 | |
| **reflect**(1) 15:11 | |
| **reflected**(1) 67:25 | |
| **refrain**(1) 16:24 | |
| **refused**(1) 80:13 | |
| **regard**(1) 28:12 | |
| **regarding**(3) 13:25 20:23 33:23 | |
| **reject**(2) 42:9 82:13 | |
| **rejected**(3) 23:1 54:18 81:1 | |
| **relate**(1) 26:17 | |
| **related**(2) 26:19 66:10 | |
| **relates**(1) 33:8 | |
| **relating**(4) 31:19 33:14 35:6 84:25 | |
| **relationships**(1) 26:23 | |
| **relatively**(1) 18:20 | |
| **release**(5) 64:14 65:7 65:10 68:15 80:8 | |
| **released**(1) 64:10 | |
| **releases**(2) 65:5 68:22 | |
| **relevance**(1) 28:17 | |
| **relevant**(8) 16:12 17:10 18:25 23:24 24:20 28:18 57:10 58:17 | |
| **relief**(1) 17:12 | |
| **remain**(1) 30:14 | |
| **remainder**(1) 49:12 | |
| **remaining**(1) 85:14 | |
| **remains**(2) 62:23 63:7 | |
| **remarks**(1) 35:18 | |
| **remedies**(3) 46:16 63:18 64:13 | |
| **remedy**(4) 46:11 58:24 59:5 59:6 | |
| **remember**(3) 15:17 26:4 47:3 | |
| **remind**(1) 49:4 | |
| **rendered**(1) 55:23 | |
| **reorganization**(1) 36:17 | |
| **repeat**(1) 86:24 | |
| **report**(11) 14:22 15:3 29:8 57:13 60:10 61:9 62:9 62:11 67:6 67:16 79:10 | |
| **represent**(2) 15:8 19:22 | |
| **representativ**(1) 67:19 | |
| **represented**(1) 15:7 | |
| **request**(5) 18:10 19:18 22:25 25:16 70:24 | |
| **requested**(5) 14:18 17:19 18:17 25:14 | |
| **requests**(1) 17:9 | |
| **required**(2) 46:22 87:15 | |
| **requirement**(10) 42:5 71:24 72:3 72:5 76:6 76:24 77:3 77:16 77:19 81:16 | |
| **requirements**(1) 26:25 | |
| **reserve**(3) 68:3 69:20 70:2 | |
| **reserved**(1) 70:7 | |
| **resisting**(1) 21:7 | |
| **resolution**(1) 37:9 | |
| **resolve**(3) 30:18 37:6 39:9 | |
| **resolved**(8) 14:14 25:10 25:22 36:19 39:13 44:7 44:8 48:20 | |
| **resolving**(1) 69:15 | |
| **resources**(2) 57:15 66:14 | |
| **respect**(20) 21:5 24:21 26:18 27:6 27:9 27:10 28:14 28:19 31:11 31:16 32:2 32:25 38:10 41:7 53:21 56:24 57:11 58:18 79:1 85:16 | |
| **respected**(2) 67:7 67:8 | |
| **respectfully**(2) 22:25 77:23 | |
| **respond**(3) 23:12 32:23 34:10 | |
| **response**(7) 16:14 17:8 23:19 31:6 31:7 33:3 88:24 | |
| **responsibility**(1) 37:1 | |
| **responsive**(1) 69:23 | |
| **rest**(2) 86:9 87:21 | |
| **restructuring**(1) 69:7 | |
| **rests**(1) 39:22 | |
| **result**(3) 26:8 41:4 82:22 | |

| Word | Page:Line |
|---|---|
| **resulted**(1) 44:17 | |
| **resulting**(1) 37:21 | |
| **results**(2) 17:22 87:20 | |
| **retained**(1) 74:22 | |
| **retirees**(2) 50:12 51:2 | |
| **revealed**(1) 15:24 | |
| **revenue**(1) 53:15 | |
| **reversed**(1) 81:3 | |
| **review**(3) 13:7 22:1 71:9 | |
| **revolver**(1) 57:13 | |
| **rifkind**(2) 4:47 8:38 | |
| **right**(28) 13:10 13:17 16:11 25:6 25:19 26:1 26:12 28:11 28:24 29:10 30:7 30:19 31:2 31:8 32:17 35:11 35:15 37:12 50:14 50:23 51:17 52:18 52:19 52:20 52:20 58:2 63:4 87:10 | |
| **rightly**(1) 54:19 | |
| **risk**(4) 47:14 50:4 54:2 88:1 | |
| **risks**(3) 48:12 48:17 48:18 | |
| **risky**(3) 39:23 49:25 55:10 | |
| **road**(1) 57:2 | |
| **robert**(4) 2:31 4:16 7:43 11:42 | |
| **roberts**(2) 11:49 11:50 | |
| **rochester**(1) 9:22 | |
| **rockefeller**(1) 3:32 | |
| **rogers**(1) 11:30 | |
| **roitman**(1) 6:13 | |
| **roll**(1) 50:7 | |
| **rolled**(1) 14:19 | |
| **rome**(1) 5:11 | |
| **room**(3) 58:2 54:17 66:15 68:1 87:5 | |
| **rosenblum**(1) 3:31 | |
| **rosner**(1) 3:22 | |
| **roughly**(3) 71:5 74:10 74:23 | |
| **route**(3) 55:18 63:15 64:1 | |
| **routes**(1) 55:20 | |
| **row**(1) 64:25 | |
| **rowe**(1) 8:18 | |
| **royal**(2) 11:29 11:29 | |
| **rudnick**(3) 2:29 7:37 25:8 | |
| **rule**(1) 81:15 | |
| **rules**(1) 29:25 | |
| **ruling**(1) 23:10 | |
| **run**(9) 17:23 41:23 44:20 45:11 57:15 57:19 58:15 65:21 69:22 | |
| **rung**(1) 66:9 | |
| **running**(1) 17:17 | |
| **rushabh**(1) 12:22 | |
| **russano**(1) 2:23 | |
| **russia**(1) 67:20 | |
| **saavedra**(1) 10:9 | |
| **sachs**(2) 7:46 7:46 | |
| **safe**(4) 55:3 79:4 79:12 86:8 | |
| **said**(18) 18:24 19:16 21:8 21:11 21:11 21:15 22:20 29:19 53:8 57:18 57:19 62:1 68:9 72:4 74:14 74:15 86:24 87:11 | |
| **sally**(1) 31:10 | |
| **sam**(1) 5:11 | |
| **same**(8) 16:23 24:13 25:2 40:18 40:21 81:18 85:7 86:12 | |
| **sanjana**(1) 6:37 | |
| **sarnobat**(5) 15:21 15:22 22:7 22:12 24:9 | |
| **sat**(1) 74:13 | |
| **satisfied**(1) 50:24 | |
| **satisfy**(1) 48:8 | |
| **saw**(1) 86:20 | |
| **say**(30) 14:11 23:2 24:25 29:22 30:9 33:4 33:15 35:1 35:12 35:25 40:23 42:9 42:12 42:15 43:24 46:16 48:15 50:4 53:9 55:3 56:9 56:23 59:17 61:6 61:11 62:18 65:16 66:1 77:19 78:8 | |
| **saying**(4) 29:23 53:11 77:10 79:16 | |
| **says**(7) 20:8 22:7 34:7 53:15 69:18 80:10 85:1 | |

| Word | Page:Line |
|---|---|
| **scenario**(2) 44:17 44:20 | |
| **schaible**(1) 2:21 | |
| **schedule**(2) 33:18 87:19 | |
| **scheduled**(1) 25:12 | |
| **schedules**(5) 32:5 32:6 33:14 33:20 88:20 | |
| **scheme**(1) 84:25 | |
| **scholer**(1) 11:23 | |
| **schott**(1) 11:34 | |
| **schotz**(2) 2:4 13:6 | |
| **schuylkill**(1) 1:38 | |
| **schwartz**(1) 11:42 | |
| **score**(1) 58:14 | |
| **scotland**(2) 11:29 11:29 | |
| **scott**(2) 7:47 10:16 | |
| **screen**(1) 69:11 | |
| **seal**(5) 26:3 27:8 29:22 30:3 30:21 | |
| **seaport**(1) 11:45 | |
| **search**(3) 17:23 18:4 18:19 | |
| **second**(17) 37:4 41:21 42:15 46:2 46:24 47:23 56:23 59:10 59:20 60:3 63:2 63:4 67:17 69:19 71:20 76:1 83:12 | |
| **second-most-importan**(1) 85:22 | |
| **secondly**(1) 26:18 | |
| **secret**(1) 22:17 | |
| **section**(9) 72:19 79:4 79:5 79:6 79:7 79:10 79:11 79:24 79:25 | |
| **securities**(4) 10:27 10:27 11:50 11:51 | |
| **see**(20) 14:5 16:13 16:15 50:7 54:19 57:24 59:15 63:3 63:22 64:5 64:8 64:14 64:19 65:4 69:1 69:23 70:3 79:16 84:1 85:17 | |
| **seek**(3) 29:22 30:3 33:13 | |
| **seeking**(3) 30:21 31:12 | |
| **seems**(1) 55:8 | |
| **seen**(3) 13:17 18:15 74:12 | |
| **seife**(1) 3:30 | |
| **select**(1) 87:15 | |
| **self-interest**(1) 82:13 | |
| **seller**(1) 9:25 | |
| **send**(2) 83:15 83:16 | |
| **senior**(61) 26:17 38:6 38:14 38:18 39:15 40:4 40:18 41:3 41:6 41:7 41:11 41:20 44:15 44:18 46:6 47:3 47:8 63:6 63:10 63:25 64:23 65:2 67:22 69:24 70:1 71:5 71:5 71:16 71:21 72:7 72:11 73:9 73:20 73:21 73:25 74:5 75:2 75:8 75:24 76:3 76:7 76:13 76:14 77:4 77:5 77:7 77:8 77:10 77:11 77:12 77:13 77:14 77:18 77:21 78:3 78:16 78:24 79:3 79:17 81:10 82:25 | |
| **senior/junior**(1) 85:16 | |
| **sense**(3) 27:25 57:7 88:5 | |
| **sensitive**(1) 34:5 | |
| **sent**(1) 13:23 | |
| **senter**(1) 31:17 | |
| **separately**(4) 58:12 86:2 86:8 86:10 | |
| **september**(6) 68:20 69:4 69:8 72:10 73:19 74:4 | |
| **serengeti**(2) 10:19 10:20 | |
| **series**(1) 46:16 | |
| **serious**(1) 71:18 | |
| **seriously**(1) 68:20 | |
| **service**(2) 1:37 1:44 | |
| **services**(1) 1:37 | |
| **session**(2) 23:11 88:15 | |
| **sessions**(1) 67:1 | |
| **set**(6) 17:2 48:1 59:4 63:19 75:3 87:22 | |
| **settle**(6) 73:2 73:5 73:11 82:4 82:6 86:22 | |
| **settled**(1) 16:8 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| settlement(55) 37:14 37:15 38:10 40:25 42:13 42:16 42:21 42:23 43:3 43:7 43:8 43:13 43:17 43:22 44:4 44:19 46:7 46:9 47:12 48:21 49:24 50:24 51:22 52:17 55:21 60:21 60:23 62:20 62:23 62:24 64:5 64:21 65:4 65:15 65:18 66:8 66:16 66:17 67:6 67:8 67:17 67:23 67:25 70:6 71:7 71:10 71:15 71:18 71:23 72:16 73:19 76:11 78:22 80:6 | | situations(1) 55:13 six(4) 26:3 26:6 29:1 45:6 sizes(1) 63:23 skepticism(2) 80:12 80:16 skin(1) 68:1 skip(1) 65:3 slated(1) 59:18 slater(1) 11:19 slowly(1) 37:9 smalley(1) 11:46 smith(1) 12:17 solve(1) 83:18 solved(1) 83:7 solvency(9) 15:6 15:11 15:25 16:3 16:6 24:15 24:16 24:23 58:11 solvent(1) 21:1 58:22 some(19) 14:22 18:25 21:9 22:5 26:23 30:17 32:8 33:11 35:25 45:18 46:14 54:20 55:7 58:17 64:17 69:22 71:25 79:19 80:2 somebody(6) 70:25 71:16 72:7 74:9 80:10 82:18 somebody's(1) 82:10 somehow(3) 21:16 23:22 51:9 someone(3) 60:19 79:16 83:17 something(6) 21:16 22:21 23:14 38:11 76:1 83:7 sometime(2) 17:20 25:21 somewhat(3) 32:24 55:8 60:11 somewhere(1) 48:21 soon(1) 36:15 sorry(1) 70:23 sort(1) 29:19 sorts(1) 70:23 sottile(3) 3:46 6:20 36:8 36:11 36:12 49:3 49:7 49:10 49:14 49:19 49:22 51:24 55:11 56:1 57:19 58:15 58:16 59:1 61:13 66:8 68:9 86:24 86:25 sought(1) 21:14 sound(4) 1:43 51:20 76:5 89:5 sounds(1) 62:2 south(1) 1:31 4:27 spader(1) 36:12 spaeder(2) 3:43 6:18 sparred(1) 65:20 speak(4) 15:2 16:8 42:20 48:25 special(3) 4:32 9:39 36:12 specific(6) 21:13 21:13 28:15 71:25 72:17 72:18 specifics(1) 73:13 spectrum(2) 37:18 48:14 spend(1) 43:25 spending(1) 29:6 sperling(1) 11:19 spoken(2) 40:11 42:8 sprinkled(1) 73:20 sproll(9) 29:16 29:17 30:6 30:9 30:12 30:16 30:19 30:25 31:3 square(1) 2:32 squarely(2) 42:24 43:14 staggering(1) 54:1 stake(2) 66:13 79:19 stakeholders(1) 36:3 stale(3) 34:4 61:20 61:22 stamina(1) 88:5 stand(3) 61:20 88:4 89:1 standard(1) 43:2 stanley(2) 10:4 10:12 stargatt(1) 4:14 stark(1) 2:31 stars(1) 5:7 start(6) 13:9 25:18 53:1 88:3 88:10 88:16 started(3) 34:23 54:15 69:13 | | starting(1) 37:18 state(4) 74:21 75:15 75:23 85:8 stated(1) 79:11 statement(2) 55:7 70:13 statements(1) 35:15 states(2) 1:1 1:19 stay(1) 63:11 ste(3) 2:7 5:13 5:26 stearn(1) 2:22 steege(1) 5:19 stein(1) 11:12 step(73) 15:1 15:4 16:19 16:21 17:11 19:24 21:1 44:13 44:21 45:1 45:5 45:6 45:7 45:7 45:9 45:14 45:17 45:17 45:19 46:5 46:8 46:8 46:12 46:13 46:17 46:18 51:8 51:9 53:19 53:21 55:2 55:3 55:24 56:2 56:3 56:10 56:10 56:18 56:21 57:1 57:16 57:21 57:21 57:24 58:3 58:4 58:16 58:19 58:22 58:25 59:7 59:7 59:8 59:12 59:15 59:15 59:18 59:22 63:16 63:20 63:21 64:5 64:8 64:12 64:18 64:19 65:1 65:5 65:10 70:4 74:23 75:11 stephen(1) 4:7 steven(1) 5:43 sticking(1) 61:17 stipulation(1) 31:17 stop(2) 33:6 49:11 stops(1) 36:15 story(1) 20:18 straightforward(1) 78:14 strategies(1) 56:13 strategy(1) 86:20 strauss(4) 2:43 9:19 13:21 52:12 streamed(1) 48:6 street(12) 1:11 1:38 2:39 3:14 3:39 3:47 4:9 4:19 4:43 5:13 5:20 5:26 strict(1) 26:25 strictly(1) 64:11 strip(1) 73:25 stromberg(1) 1:30 structure(1) 83:13 structures(1) 69:9 stuck(1) 49:15 stuff(2) 29:7 72:21 stutman(2) 5:5 70:15 subject(3) 32:10 50:2 64:12 subjectively(1) 61:5 subjects(1) 28:25 submit(14) 22:25 37:11 38:7 38:22 39:5 42:3 44:5 44:10 44:24 45:22 47:1 50:18 51:19 77:23 subordinated(1) 41:22 77:4 77:5 77:7 subordination(4) 45:22 76:8 76:10 85:20 subsidiaries(1) 47:7 47:10 47:15 47:18 47:19 47:24 47:24 48:3 51:13 58:12 58:14 subsidiary(10) 38:17 39:7 39:19 40:8 48:5 48:9 51:13 57:20 59:8 86:11 substance(2) 32:15 42:18 substantial(7) 38:13 38:23 40:14 59:21 63:15 67:4 68:14 substantially(1) 63:17 subtract(1) 35:19 success(1) 56:6 successfully(1) 45:16 such(4) 46:19 65:17 76:24 88:13 sudden(1) 78:20 suddenly(2) 72:14 suggest(1) 24:17 suggestion(2) 15:19 23:22 suite(4) 2:39 3:39 3:48 4:28 suits(1) 55:12 sullivan(2) 2:36 2:38 sum(1) 32:15 | | support(12) 36:7 36:24 38:5 40:14 40:21 42:4 43:21 46:21 48:20 50:21 59:4 59:5 supported(4) 36:25 37:10 38:3 60:2 supporting(1) 43:9 suppose(4) 16:24 17:1 52:16 60:4 supposed(4) 76:10 80:6 84:24 86:14 supposedly(1) 75:13 sure(14) 13:15 13:16 17:11 18:19 20:10 25:16 27:7 28:3 28:4 28:5 32:13 51:3 79:17 85:6 surprise(3) 16:18 65:15 82:9 surprised(1) 84:23 suspect(2) 34:14 45:20 suttonbrook(2) 6:46 6:46 swap(7) 72:10 78:14 79:2 85:23 85:24 86:3 86:5 syndicate(1) 55:2 tabak(2) 11:49 11:50 table(2) 65:13 67:9 take(24) 23:22 25:12 25:22 36:1 36:18 40:17 40:25 41:15 45:5 48:3 53:6 54:13 56:14 57:5 60:6 64:4 69:25 70:1 72:24 73:7 76:18 79:8 82:15 87:7 taken(7) 21:2 25:20 45:17 71:15 78:12 81:25 82:25 takes(1) 65:13 66:7 taking(2) 25:17 45:12 talk(8) 17:2 24:18 44:1 72:25 73:23 83:4 87:2 88:22 talked(2) 41:20 77:3 talking(7) 16:24 21:21 22:2 43:24 53:19 76:25 82:24 talks(1) 56:19 tax(2) 56:13 56:13 taylor(1) 4:15 team(1) 21:23 tech(1) 24:12 telephone(1) 31:15 telephonic(11) 5:36 6:2 7:1 8:1 9:1 10:1 11:1 12:1 87:23 88:7 88:13 tell(3) 38:9 58:20 83:17 telling(2) 33:7 82:6 tells(1) 69:11 ten(3) 16:21 16:22 74:23 tender(1) 53:18 term(3) 67:17 74:7 74:13 terminally(1) 25:13 terms(4) 21:13 28:16 28:16 88:4 test(5) 56:4 56:11 56:18 57:2 57:10 testified(9) 15:6 15:16 19:19 19:22 21:22 22:12 24:9 53:21 67:15 testify(3) 45:3 45:8 57:12 testifying(1) 60:18 testimony(13) 15:15 17:22 19:1 20:4 20:24 23:4 43:18 43:19 45:4 82:23 84:20 85:17 85:21 tests(1) 56:24 thank(32) 14:6 14:7 14:13 19:4 23:16 23:21 25:4 25:5 26:1 26:2 29:15 31:4 32:17 34:24 34:25 35:12 35:14 36:10 49:14 51:23 51:24 52:10 69:5 70:10 70:11 70:15 70:18 83:22 84:3 84:4 87:8 88:25 |
| settlements(1) 68:23 settles(1) 36:20 seven(3) 2:32 26:6 29:1 seventy(1) 41:10 several(4) 55:20 57:6 60:1 62:20 shachar(1) 10:34 shafer(1) 9:43 shamah(1) 8:7 shannon(1) 8:47 share(6) 38:21 74:1 75:1 76:12 80:16 85:5 shareholder(7) 31:22 32:3 33:14 33:20 33:24 34:2 65:3 shareholders(4) 65:5 65:11 68:13 86:5 shares(1) 50:6 shaya(1) 9:22 she(6) 15:16 15:16 15:17 15:18 15:18 22:1 sheet(8) 54:10 56:4 56:10 56:18 56:21 67:17 74:7 74:13 sheffeld(1) 11:38 shelley(1) 89:10 sheron(1) 3:21 shoot(1) 19:8 short(3) 27:22 40:1 41:12 shortly(3) 14:16 15:1 80:4 should(31) 13:9 14:10 17:6 18:16 18:22 21:14 22:25 24:15 36:19 38:8 40:17 40:25 42:9 43:15 44:5 46:17 47:1 48:23 50:18 51:21 52:16 52:17 52:23 52:24 54:17 70:8 79:17 79:18 85:9 85:24 87:15 shouldn't(1) 88:8 should've(4) 76:12 76:14 77:14 77:21 show(13) 17:2 20:22 38:23 39:5 42:18 54:23 55:2 55:4 56:20 57:6 57:13 57:16 68:25 showed(3) 16:18 16:25 61:25 showing(1) 35:9 shows(2) 63:4 64:25 shuffle(1) 73:17 sic(1) 22:21 side(12) 28:9 32:11 43:7 52:5 54:17 56:20 57:12 58:13 67:2 67:11 68:1 87:4 sides(1) 87:13 sidley(1) 1:23 8:28 35:17 siegel(5) 2:30 15:8 25:8 25:25 26:2 signally(1) 38:12 signed(2) 74:13 74:15 significant(5) 26:21 47:13 48:11 48:12 81:23 significantly(4) 47:20 47:21 49:12 62:14 signifies(1) 51:20 silent(1) 74:13 silver(1) 9:35 9:35 silverstein(1) 4:6 simes(1) 6:31 simple(6) 21:5 32:5 75:9 78:13 79:21 80:2 simplicity(1) 68:5 simply(7) 17:9 21:5 29:7 45:14 46:23 79:21 80:16 sina(1) 12:5 since(4) 21:18 27:12 62:23 71:10 single(5) 33:23 34:2 42:1 67:18 85:19 sitting(2) 34:15 87:4 situation(4) 58:24 59:6 77:3 77:8 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) | 13:12  14:3  14:18  14:21  14:25 | **that's**(29) 19:2  22:13  22:23  24:5  28:3  28: | **the**(301) 32:15  32:15  32:17  32:22  32:25 | **the**(301) 47:7  47:8  47:8  47:9  47:10  47:10 |
| | 15:1  15:6  15:6  15:8  15:9  15:10  15:11 | 28:11  29:10  30:21  30:25  38:8  43:6  44:2 | 33:1  33:2  33:5  33:7  33:11  33:13  33:16 | 47:10  47:12  47:14  47:14  47:15  47:16 |
| | 15:12  15:16  15:19  15:19  15:25  16:1  16:1 | 44:16  45:9  46:4  46:23  47:3  47:4  53:24 | 33:16  33:20  33:20  33:20  33:23  33:25  34: | 47:17  47:18  47:19  47:19  47:22  47:23 |
| | 16:2  16:3  16:3  16:7  16:10  16:12  16:18 | 53:25  56:7  58:8  60:1  61:8  64:1  64:7  65:1 | 34:6  34:6  34:7  34:9  34:9  34:12  34:17 | 47:24  47:25  47:25  48:2  48:3  48:3  48:3 |
| | 16:18  16:21  16:23  16:25  17:6  17:10  17:16 | 65:15 | 34:17  34:18  34:21  34:22  34:24  35:3  35:5 | 48:4  48:4  48:5  48:6  48:7  48:7  48:9  48:9 |
| | 17:20  17:22  17:23  18:7  18:10  18:11  18:14 | **that's**(11) 67:23  72:17  73:3  73:10  74:10 | 35:8  35:9  35:11  35:14  35:17  35:17  35:18 | 48:9  48:14  48:16  48:16  48:17  48:18  48:19 |
| | 18:14  18:16  18:17  18:22  19:1  19:1  19:13 | 75:25  80:22  82:5  82:7  83:4  86:22 | 35:22  35:23  35:25  36:2  36:4  36:8  36:9 | 48:20  48:21  48:22  48:23  48:25  49:1  49:2 |
| | 19:24  20:1  20:5  20:5  20:6  20:8 | | 36:10  36:12  36:13  36:14  36:15  36:15 | 49:4  49:7  49:9  49:11  49:12  49:13  49:15 |
| | 20:10  20:10  20:15  20:20  20:20  20:24 | **thau**(1) 11:52 | 36:16  36:19  36:20  36:21  36:24  36:25  37: | 49:16  49:18  49:19  49:21  49:22  49:22 |
| | 20:25  21:14  21:18  21:20  21:25  22:1  22:4 | **the**(301) 1:1  1:2  1:18  1:23  2:4  4:18  4:32 | 37:2  37:2  37:4  37:4  37:5  37:5  37:6  37:6 | 49:23  49:24  49:25  49:25  50:1  50:1  50:3 |
| | 22:4  22:7  22:12  22:22  22:24  22:25  23:2 | 4:50  5:7  5:24  9:39  11:45  13:2  13:6  13:7 | 37:7  37:7  37:9  37:9  37:11  37:12  37:12 | 50:5  50:7  50:9  50:11  50:12  50:12  50:13 |
| | 23:12  23:22  23:25  24:1  24:2  24:3  24:3 | 13:8  13:8  13:10  13:11  13:11  13:14  13:14 | 37:13  37:14  37:15  37:18  37:21  37:23 | 50:13  50:14  50:19  50:20  50:21  50:21 |
| | 24:8  24:9  24:13  24:14  24:15  24:16  24:17 | 13:17  13:19  13:20  13:25  13:25  14:1  14:5 | 37:24  37:25  38:2  38:4  38:4  38:4  38:5 | 50:22  50:22  50:23  50:23  50:24  50:25  51: |
| | 24:22  25:10  25:14  25:16  25:16  25:19  26: | 14:8  14:8  14:9  14:12  14:14  14:14  14:15 | 38:5  38:6  38:6  38:6  38:7  38:8  38:8  38:9 | 51:2  51:2  51:3  51:3  51:4  51:5  51:5  51:6 |
| | 26:13  26:13  26:14  26:15  26:20  26:23  27: | 14:16  14:17  14:17  14:19  14:19  14:21 | 38:10  38:10  38:11  38:13  38:14  38:14 | 51:7  51:8  51:11  51:12  51:12  51:12  51:13 |
| | 27:2  27:2  27:3  27:6  27:8  27:12  27:17 | 14:22  14:23  14:24  15:1  15:2  15:3  15:4 | 38:15  38:16  38:17  38:18  38:18  38:19 | 51:13  51:14  51:14  51:15  51:16  51:17 |
| | 27:21  27:24  28:1  28:1  28:4  28:5  28:7 | 15:5  15:6  15:8  15:18  15:20  15:21  15:22 | 38:19  38:20  38:22  38:25  38:25  39:4  39:5 | 51:17  51:18  51:18  51:19  51:21  51:21 |
| | 28:8  28:12  28:13  28:17  28:20  28:20  28:21 | 15:24  15:25  16:1  16:7  16:9  16:11  16:12 | 39:7  39:8  39:9  39:11  39:11  39:13  39:13 | 51:22  51:24  51:25  52:3  52:4  52:5  52:10 |
| | 29:2  29:6  29:9  29:22  30:1  30:2  30:8 | 16:13  16:15  16:15  16:20  16:20  16:21 | 39:15  39:15  39:17  39:17  39:18  39:19 | 52:11  52:13  52:14  52:15  52:15  52:21 |
| | 30:11  30:12  30:17  30:19  30:21  31:13 | 16:23  16:23  17:3  17:3  17:4  17:7  17:8 | 39:20  39:20  39:21  39:21  39:22  39:23 | 52:21  52:21  52:22  52:24  53:1  53:1  53:2 |
| | 31:20  31:22  31:25  32:2  32:4  32:6  32:10 | 17:10  17:10  17:14  17:15  17:16  17:17 | 39:24  40:1  40:2  40:4  40:4  40:4  40:5  40:5 | 53:2  53:3  53:9  53:9  53:11  53:12  53:14 |
| | 32:12  32:14  32:14  32:15  33:5  33:9  33:15 | 17:17  17:21  17:25  18:1  18:4  18:4  18:7 | 40:6  40:6  40:7  40:9  40:10  40:13  40:14 | 53:15  53:17  53:18  53:19  53:19  53:21 |
| | 33:18  34:1  35:9  35:12  36:14  36:17  36:24 | 18:8  18:9  18:9  18:13  18:19  18:24  18:25 | 40:16  40:17  40:18  40:18  40:18  40:19 | 53:23  54:2  54:2  54:3  54:3  54:4  54:5  54:7 |
| | 36:25  37:11  37:13  37:15  37:17  37:25  38:5 | 19:1  19:3  19:7  19:8  19:12  19:16  19:20 | 40:21  40:21  40:22  40:23  40:23  41:3  41:3 | 54:7  54:8  54:9  54:11  54:11  54:14  54:14 |
| | 38:14  38:23  38:23  39:5  40:2  40:6  40:10 | 19:24  20:2  20:2  20:3  20:5  20:5  20:8  20:8 | 41:3  41:5  41:7  41:7  41:9  41:11  41:12 | 54:15  54:15  54:15  54:16  54:17  54:18 |
| | 40:23  40:25  41:8  42:2  42:3  42:4  42:10 | 20:9  20:16  20:16  20:18  20:18  20:22 | 41:14  41:15  41:15  41:16  41:18  41:19 | 54:18  54:19  54:20  54:21  54:24  54:24 |
| | 42:10  42:12  42:13  42:16  42:16  42:18 | 20:24  20:24  20:24  20:25  21:6  21:14  21:14 | 41:21  41:21  41:22  41:22  42:1  42:2  42:3 | 54:25  55:2  55:3  55:4  55:5  55:7  55:9 |
| | 42:23  43:3  43:5  43:13  43:19  43:19  43:20 | 21:17  21:18  21:18  21:19  21:19  21:20 | 42:5  42:6  42:7  42:8  42:9  42:11  42:13 | 55:14  55:15  55:20  55:21  55:23  55:25 |
| | 43:21  43:22  44:3  44:6  44:11  44:14  44:17 | 21:23  21:23  21:24  22:1  22:1  22:3  22:3 | 42:14  42:15  42:16  42:16  42:17  42:20 | 55:25  56:2  56:3  56:4  56:5  56:9  56:10 |
| | 44:19  44:25  44:25  45:4  45:6  45:9  45:10 | 22:8  22:9  22:15  22:15  22:16  22:17  22:22 | 42:23  42:23  43:4  43:4  43:6  43:7  43:8  43:10 | 56:10  56:11  56:12  56:12  56:14  56:17 |
| | 45:12  45:13  45:13  45:15  45:16  45:19 | 22:23  23:1  23:2  23:6  23:7  23:10  23:10 | 43:12  43:12  43:14  43:14  43:16  43:16 | 56:17  56:18  56:21  56:23  56:24  56:25  57: |
| | 45:22  46:2  46:3  46:4  46:9  46:10  46:11 | 23:14  23:17  23:20  23:22  23:23  23:25  24: | 43:17  43:17  43:19  43:20  43:20  43:20 | 57:1  57:2  57:3  57:7  57:7  57:9  57:10 |
| | 46:16  46:20  46:21  46:22  46:24  46:25  47: | 24:1  24:2  24:2  24:3  24:4  24:10  24:12 | 44:3  44:3  44:4  44:6  44:6  44:6  44:7  44:8 | 57:13  57:14  57:16  57:19  57:20  57:20 |
| | 47:8  47:13  47:25  48:1  48:2  48:6  48:6 | 24:12  24:13  24:15  24:15  24:16  24:16 | 44:8  44:8  44:11  44:12  44:12  44:13  44:15 | 57:21  57:23  58:1  58:5  58:5  58:7  58:7 |
| | 48:6  48:14  48:16  48:17  48:20  48:21  48:22 | 24:17  24:21  24:23  24:24  24:24  25:2  25:4 | 44:15  44:16  44:17  44:18  44:18  44:19 | 58:8  58:8  58:9  58:11  58:11  58:12  58:13 |
| | 48:23  49:4  49:5  49:9  49:6  49:18  49:23 | 25:6  25:6  25:11  25:14  25:17  25:18  25:18 | 44:19  44:20  44:22  44:22  44:24  44:24 | 58:13  58:14  58:17  58:18  58:18  58:20 |
| | 49:25  50:4  50:10  50:11  50:13  50:14  50:17 | 25:18  25:19  25:20  25:21  25:24  26:1  26:3 | 44:25  44:25  45:1  45:4  45:5  45:5  45:6 | 58:22  58:24  59:5  59:7  59:8  59:8  59:9 |
| | 50:18  50:19  50:19  50:22  50:24  52:16 | 26:3  26:5  26:6  26:7  26:10  26:10  26:12 | 45:7  45:9  45:11  45:13  45:15  45:16  45:17 | 59:9  59:10  59:11  59:12  59:14  59:15  59:16 |
| | 52:17  52:22  52:24  53:5  53:7  53:8  53:9 | 26:13  26:15  26:15  26:16  26:16 | 46:2  46:5  46:6  46:6  46:7  46:8  46:9  46:10 | 59:16  59:16  59:17  59:18  59:18  59:21 |
| | 53:9  53:18  53:20  53:23  54:4  54:5  54:5 | 26:18  26:20  26:22  26:23  26:24  26:24  27: | 46:11  46:12  46:13  46:15  46:17  46:18 | 59:21  59:23  59:24  59:25  60:2  60:3  60:5 |
| | 54:7  54:10  54:16  54:17  54:18  54:19  54:20 | 27:6  27:7  27:8  27:9  27:10  27:11  27:13 | 46:21  46:23  46:25  47:1  47:2  47:2  47:3 | 60:5  60:5  60:6  60:6  60:7  60:9  60:11 |
| | 54:23  54:23  54:24  55:2  55:3  55:9  55:13 | 27:14  27:14  27:16  27:18  27:18  27:18 | 47:4  47:4  47:5  47:6 | 60:12  60:14  60:15  60:15  60:15  60:18 |
| | 55:14  55:18  55:19  55:20  55:22  56:3  56:5 | 27:22  27:23  27:25  28:2  28:3  28:5  28:6 | | 60:21  60:22  60:22  60:22  60:23  60:25 |
| | 56:5  56:5  56:7  56:9  56:12  56:13  56:19 | 28:7  28:8  28:12  28:16  28:18  28:19  28:20 | | 60:25  61:3  61:6  61:6  61:9  61:11  61:12 |
| | | 28:21  28:23  28:24  28:25  28:25  28:25  29: | | 61:13  61:13  61:15  61:15  61:18  61:23  62: |
| **that**(226) 56:20  56:24  57:1  57:2  57:5  57:6 | 29:2  29:5  29:8  29:9  29:10  29:14  29:17 | | 62:4 |
| | 57:6  57:13  57:16  57:16  57:17  57:19  57:22 | 29:17  29:20  29:20  29:20  29:22  29:25 | | |
| | 57:23  57:24  58:1  58:1  58:6  58:10  58:13 | 29:25  30:1  30:2  30:3  30:4  30:4  30:8 | | |
| | 58:14  58:18  58:21  58:21  58:23  58:24  59: | 30:10  30:13  30:13  30:14  30:17  30:20 | | |
| | 59:5  59:6  59:6  59:7  59:10  59:11  59:12 | 30:20  30:20  30:22  30:24  31:2  31:4  31:7 | | |
| | 59:15  59:16  59:18  59:25  60:1  60:8  60:12 | 31:9  31:13  31:14  31:19  31:20  31:24  31:25 | | |
| | 60:21  61:2  61:8  61:12  61:15  61:17  61:17 | 32:1  32:2  32:4  32:4  32:5  32:5  32:6  32:6 | | |
| | 61:18  61:19  61:25  62:1  62:2  62:5  62:5 | 32:7  32:8  32:9  32:10  32:11  32:14 | | |
| | 62:8  62:13  62:22  63:5  63:12  63:16  63:18 | | | |
| | 63:19  63:20  63:24  63:24  64:5  64:7  64:8 | | | |
| | 64:15  64:16  64:19  64:20  65:4  65:5  65:6 | | | |
| | 65:7  65:16  65:21  65:22  66:1  66:5  66:7 | | | |
| | 66:12  66:16  66:17  66:18  66:20  67:4  67:9 | | | |
| | 67:13  67:13  67:15  67:21  67:24  68:7  68:9 | | | |
| | 68:10  68:19  68:21  68:22  68:24  69:1  69:3 | | | |
| | 69:23  70:3  70:6  70:7  70:12  70:24  71:1 | | | |
| | 71:8  71:10  71:12  71:13  71:14  71:14  71:18 | | | |
| | 71:21  71:22  71:23  71:24  71:25  72:4  72:5 | | | |
| | 72:6  72:11  72:14  72:16  72:20  72:20  72:22 | | | |
| | 73:1  73:4  73:6  73:10  73:12  73:14  73:15 | | | |
| | 74:3  74:7  74:10  74:10  74:14  74:15  74:17 | | | |
| | 74:20  74:22  74:25  75:13  75:14  76:3  76:5 | | | |
| | 76:6  76:14  76:23  76:24  77:7  77:14  77:16 | | | |
| | 77:18  77:19  77:24  78:1  78:2  78:9  78:11 | | | |
| | 78:15  78:16  78:19  78:19  78:20  78:21  79:2 | | | |
| | 79:11  79:13  79:25  80:7  80:12  80:16  80:16 | | | |
| | 80:20  80:22  80:23  81:1  81:12  81:14  82:2 | | | |
| | 82:3  82:9  82:9  82:11  82:17  82:22  82:22 | | | |
| | 82:25  83:1  83:9  83:10  83:11  83:12  84:7 | | | |
| | 84:10  84:16  84:21  84:22  85:1  85:5  85:7 | | | |
| | 85:9  85:9  85:18  85:18  85:21  86:17  86:18 | | | |
| | 86:25  87:4  87:7  87:13  87:14  87:17  88:5 | | | |
| | 88:14  88:25  89:4 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 62:4 62:6 62:9 62:11 62:11 62:13 62:14 62:15 62:16 62:18 62:18 62:18 62:19 62:19 62:20 62:21 62:23 62:23 63:3 63:3 63:3 63:4 63:4 63:5 63:7 63:8 63:8 63:9 63:9 63:10 63:10 63:11 63:12 63:13 63:17 63:17 63:18 63:19 63:22 63:25 64:2 64:3 64:4 64:5 64:5 64:5 64:7 64:8 64:10 64:11 64:12 64:12 64:15 64:16 64:17 64:18 64:19 64:20 64:20 64:21 64:22 64:23 64:23 64:24 64:25 64:25 65:1 65:2 65:3 65:4 65:5 65:8 65:8 65:10 65:13 65:21 65:22 65:22 65:23 65:25 66:1 66:7 66:9 66:11 66:12 66:13 66:13 66:14 66:18 66:19 66:23 66:23 66:24 66:25 67:2 67:2 67:7 67:3 67:5 67:6 67:7 67:8 67:8 67:9 67:9 67:10 67:11 67:13 67:14 67:14 67:15 67:16 67:16 67:16 67:16 67:17 67:21 67:22 67:22 67:25 68:1 68:5 68:6 68:7 68:9 68:14 68:15 68:18 68:19 68:23 69:5 69:7 69:9 69:9 69:10 69:11 69:13 69:14 69:16 69:17 69:19 69:20 69:24 69:24 69:25 70:1 70:1 70:2 70:4 70:6 70:7 70:8 70:10 70:12 70:18 70:18 70:19 70:19 70:21 70:25 71:3 71:5 71:6 71:8 71:8 71:9 71:10 71:12 71:13 71:13 71:15 71:15 71:16 71:18 71:18 71:19 71:20 71:21 71:22 71:23 71:23 72:1 72:2 72:4 72:6 72:6 72:7 72:9 72:9 72:10 72:11 72:12 72:12 72:13 72:16 72:18 72:21 72:22 72:22 72:24 72:25 73:1 73:2 73:3 73:4 73:5 73:9 73:10 73:10 73:13 73:15 73:17 73:19 73:19 73:25 73:25 74:1 74:1 74:3 74:5 74:5 74:13 74:13 74:14 74:15 74:17 74:18 74:19 74:20 74:22 74:22 74:23 74:24 74:25 75:1 75:1 75:2 75:2 75:4 75:5 75:6 75:7 75:8 75:11 75:12 75:13 75:14 75:14 75:17 75:17 75:17 75:18 75:20 75:20 75:21 75:21 75:24 75:25 76:1 76:2 76:3 76:3 76:4 76:6 76:7 76:8 76:8 76:9 76:9 76:10 76:10 76:11 76:13 76:14 76:15 76:16 76:22 76:22 77:2 77:3 77:3 77:6 77:8 77:8 77:9 77:10 77:11<br><br>**the**(204) 77:11 77:12 77:12 77:13 77:13 77:13 77:15 77:16 77:16 77:21 77:22 77:25 78:1 78:2 78:2 78:4 78:5 78:7 78:9 78:9 78:11 78:11 78:11 78:13 78:14 78:15 78:17 78:18 78:23 79:2 79:3 79:4 79:5 79:9 79:12 79:14 79:21 79:22 79:25 80:2 80:3 80:3 80:4 80:7 80:7 80:10 80:11 80:12 80:13 80:14 80:14 80:15 80:16 80:16 80:16 80:17 80:19 80:20 80:19 80:20 80:21 80:23 80:24 80:25 81:1 81:1 81:2 81:2 81:3 81:6 81:7 81:7 81:8 81:9 81:10 81:14 81:14 81:15 81:17 81:18 81:18 81:20 81:22 81:23 82:3 82:4 82:4 82:8 82:10 82:11 82:12 82:13 82:13 82:14 82:15 82:15 82:17 82:18 82:21 82:22 82:23 83:1 83:2 83:3 83:6 83:8 83:9 83:10 83:10 83:12 83:12 83:13 83:14 83:16 83:21 83:24 84:1 84:4 84:7 84:8 84:8 84:12 84:14 84:16 84:17 84:19 84:21 84:21 84:22 84:24 84:25 84:25 85:2 85:3 85:4 85:5 85:7 85:7 85:9 85:12 85:12 85:13 85:13 85:16 85:17 85:18 85:19 85:20 85:22 85:23 85:23 85:24 85:25 85:25 86:3 86:3 86:4 86:5 86:5 86:8 86:9 86:9 86:9 86:10 86:10 86:11 86:11 86:12 86:14 86:16 86:17 86:18 86:22 86:25 87:2 87:3 87:4 87:5 87:8 87:10 87:12 87:12 87:13 87:19 87:21 87:23 87:25 88:7 88:8 88:8 88:17 88:18 88:18 88:23 88:25 89:4 89:5 89:5 89:6 | | **their**(38) 31:25 39:1 39:3 39:4 40:12 40:13 41:1 41:13 41:14 42:5 44:15 46:17 47:11 47:21 48:8 50:6 53:6 53:15 53:16 53:17 55:12 56:20 62:9 62:14 64:14 66:14 67:23 68:7 68:11 68:17 68:21 70:5 76:12 81:24 82:1 83:15 84:22<br><br>**them**(28) 13:15 13:16 13:17 16:17 18:24 20:13 26:11 30:18 33:18 33:21 35:19 37:20 37:21 39:6 41:18 48:15 50:14 51:10 56:17 60:20 64:17 66:14 68:24 73:16 79:21 83:17 85:21 87:7<br><br>**themselves**(3) 41:20 50:10 59:11<br><br>**then**(21) 14:24 15:15 15:20 16:11 24:25 36:21 66:25 68:3 69:17 71:10 74:6 75:12 87:15 87:18<br><br>**theories**(1) 85:8<br><br>**theory**(7) 46:20 51:11 73:4 82:1 82:8 82:9 87:4<br><br>**there**(51) 15:19 16:2 16:21 18:3 18:8 20:4 20:6 20:10 26:7 26:12 26:18 26:25 27:7 28:6 30:14 30:17 30:18 31:3 31:17 32:8 33:11 41:6 41:17 42:1 42:18 44:10 45:18 47:13 54:10 54:17 54:24 55:14 55:19 56:2 56:19 57:24 58:5 58:11 64:10 65:12 65:18 67:24 67:25 70:12 70:20 73:1 76:23 85:6 87:21 87:23 88:21<br><br>**there's**(23) 23:1 23:8 24:4 27:3 27:5 28:22 29:7 35:5 44:14 45:8 46:11 46:20 48:13 52:8 53:3 55:18 55:23 57:17 58:7 58:7 58:21 63:15 64:9<br><br>**thereafter**(2) 75:17 80:4<br><br>**therefore**(4) 14:18 15:3 44:5 47:20<br><br>**there's**(10) 71:25 72:17 76:19 79:18 79:20 79:22 81:9 81:12 81:22 87:10<br><br>**these**(39) 15:13 16:6 17:5 17:17 17:18 18:2 18:15 18:23 22:6 24:8 24:10 24:11 24:20 24:22 28:2 31:5 31:17 35:18 36:18 36:24 37:19 37:25 40:11 40:12 42:13 48:18 66:12 73:16 73:21 74:18 75:9 75:1 86:15<br><br>**they**(152) 13:15 13:15 14:11 14:13 14:24 16:10 16:11 16:25 17:2 17:6 17:7 17:8 18:6 19:8 19:9 19:13 20:23 21:11 21:12 21:12 21:14 21:15 22:6 22:13 22:15 22:15 22:19 22:24 23:1 23:2 23:2 23:4 23:8 24:9 24:20 24:24 24:25 25:3 25:14 26:17 26:21 27:21 28:5 29:2 29:21 30:22 32:4 33:13 33:15 33:15 33:24 33:24 37:18 38:20 39:3 40:11 40:12 40:20 40:25 41:15 41:23 42:10 42:12 42:15 43:25 43:25 44:14 46:16 47:5 47:7 47:11 48:5 48:11 51:3 51:3 51:4 51:5 51:6 51:8 51:11 51:12 52:19 52:20 53:16 55:3 57:4 59:10 61:1 61:16 61:19 62:1 62:1 62:5 62:8 65:7 65:10 66:15 66:15 67:5 67:7 67:8 67:20 68:20 68:21 68:21 71:17 71:20 71:20 71:22 71:24 73:11 73:23 74:1 74:2 74:4 74:13 74:15 74:22 74:25 79:15 79:20 79:21 81:11 81:16 81:18 81:18 82:9 82:24 83:1 83:16 85:11 85:13 85:14 87:1 87:24<br><br>**they'll**(2) 28:2 34:14<br><br>**they're**(11) 26:19 31:12 31:21 44:7 44:8 50:4 50:4 50:6 63:7 63:22 64:10<br><br>**they've**(11) 21:1 21:2 21:15 22:10 22:16 22:19 22:20 22:21 22:22 27:22 47:20<br><br>**they're**(4) 66:9 74:17 81:13 82:5 | | **they've**(2) 82:5 82:25<br><br>**thing**(7) 25:19 27:8 29:9 38:10 50:23 56:23 76:24<br><br>**things**(3) 42:13 86:15 87:24<br><br>**think**(64) 13:8 13:15 14:6 17:5 17:25 18:21 20:16 25:2 26:11 26:12 27:2 27:2 27:7 27:20 28:4 28:11 28:17 28:19 28:21 29:9 30:19 30:21 33:25 35:8 37:24 40:10 40:11 40:16 41:2 44:1 47:16 49:22 51:15 52:21 53:1 53:5 53:8 54:15 56:4 56:11 57:10 59:2 60:1 62:1 62:3 65:9 65:14 65:15 65:18 65:25 66:9 66:21 68:4 83:14 87:7 88:12<br><br>**thinking**(1) 66:14<br><br>**thinks**(1) 61:11<br><br>**third**(11) 29:25 36:22 38:21 59:20 61:12 63:4 72:6 78:2 78:2 78:11 78:11 83:9<br><br>**thirty**(3) 51:3 60:19 63:11<br><br>**thirty-four**(1) 50:5<br><br>**thirty-four-cents**(3) 38:19 39:16 40:3<br><br>**this**(153) 13:13 13:24 14:20 15:11 15:17 15:20 15:25 16:7 17:20 18:5 19:11 19:14 19:20 20:1 20:5 20:7 20:10 20:10 20:12 21:17 22:5 22:7 22:10 22:12 22:18 23:3 23:5 23:6 24:2 24:7 24:18 25:21 27:23 28:15 29:6 29:8 29:13 31:14 31:24 32:2 32:11 32:21 32:22 32:24 33:5 33:8 33:15 34:4 34:8 35:4 35:4 35:7 36:21 38:6 42:7 42:9 43:3 43:7 43:8 43:9 43:10 43:13 44:3 44:5 44:7 44:20 45:18 46:1 46:3 46:23 50:11 50:16 50:19 51:2 53:12 54:3 54:12 54:17 54:21 54:21 55:3 55:8 55:16 56:15 56:20 56:23 57:2 57:6 57:12 57:15 58:20 58:21 59:1 59:2 59:6 59:20 59:24 61:4 61:14 61:24 62:4 62:6 62:11 63:3 65:13 65:15 65:21 66:8 67:11 67:25 68:16 68:20 69:2 69:3 69:6 69:18 70:5 70:24 72:4 72:22 73:24 73:25 75:6 75:21 76:5 77:24 79:4 79:10 79:13 79:14 79:23 80:6 80:9 80:18 81:9 81:10 81:12 81:15 85:17 86:18 87:8 87:16 87:20 89:1<br><br>**this,"**(1) 69:22<br><br>**thomas**(1) 3:29<br><br>**thorough**(1) 57:6<br><br>**those**(30) 13:12 13:15 16:25 20:11 20:21 27:2 27:9 36:1 36:2 36:19 37:19 39:10 39:12 39:22 40:20 40:21 40:24 45:25 47:20 47:14 48:11 51:16 53:21 56:17 58:1 65:1 65:2 65:25 75:24 81:4<br><br>**though**(1) 69:14<br><br>**thought**(4) 15:12 25:19 67:5 71:11<br><br>**three**(8) 41:18 44:10 48:16 51:6 60:22 63:12 69:18 83:7<br><br>**three-week**(2) 18:1 18:21<br><br>**threshold**(1) 56:2<br><br>**through**(4) 27:11 57:5 64:4 73:13<br><br>**thursday**(2) 88:11 88:15<br><br>**thus**(1) 17:1<br><br>**time**(37) 15:4 15:9 15:25 17:6 17:14 19:16 19:18 20:6 20:19 23:7 29:6 30:4 34:16 37:16 37:16 37:19 53:12 53:20 53:23 54:5 54:5 55:5 56:3 56:10 58:22 61:19 67:4 72:11 74:3 76:22 76:23 77:16 84:8 84:12 86:3 86:14 88:8<br><br>**timeframe**(1) 18:5<br><br>**times**(9) 2:32 19:17 23:6 36:6 38:2 43:2 47:16 60:22 74:23<br><br>**tina**(1) 11:16 | | **today**(14) 13:16 29:2 32:16 33:1 34:12 34:15 36:6 52:15 63:19 64:12 66:22 71:3 71:12 87:23<br><br>**today's**(1) 26:6<br><br>**together**(3) 28:22 50:20 61:7<br><br>**told**(5) 29:19 30:8 53:7 75:6 84:22<br><br>**tomorrow**(3) 69:1 84:20 88:3<br><br>**tomorrow's**(1) 23:11<br><br>**too**(5) 27:16 37:15 43:1 68:14 69:16<br><br>**took**(18) 14:19 15:15 15:20 15:23 31:9 37:15 37:16 37:19 53:8 61:3 71:20 72:6 73:10 73:19 73:23 78:2 78:14 80:12<br><br>**top**(2) 61:8 64:5<br><br>**torres**(2) 3:19 11:8<br><br>**torture**(1) 33:5 36:15 73:15<br><br>**total**(3) 39:11 41:17 64:11<br><br>**touched**(1) 63:19<br><br>**toussi**(1) 12:5<br><br>**toward**(1) 28:2<br><br>**towards**(1) 37:9<br><br>**trade**(7) 38:16 51:2 77:4 77:6 77:8 77:12 77:19<br><br>**transaction**(9) 20:24 21:23 52:16 53:13 54:25 55:6 57:7 59:10 80:9<br><br>**transactions**(3) 45:19 55:10 55:11<br><br>**transcript**(5) 1:17 1:44 21:20 78:9 89:5<br><br>**transcription**(2) 1:37 1:44<br><br>**transfer**(7) 54:11 55:8 56:25 57:18 75:16 75:17 79:5<br><br>**transfers**(2) 79:7 79:8<br><br>**trashed**(1) 22:20<br><br>**treat**(1) 56:14<br><br>**treated**(2) 72:10 78:15<br><br>**treatment**(3) 40:18 41:15 78:24<br><br>**tree**(2) 60:8 61:4<br><br>**trees**(1) 81:22<br><br>**treham**(1) 6:33<br><br>**treister**(2) 5:5 70:15<br><br>**trial**(7) 32:9 56:11 60:3 61:12 62:18 65:21 67:3<br><br>**tribune**(15) 1:7 2:11 8:22 8:34 13:6 16:22 20:25 22:1 22:9 29:18 33:15 35:25 53:15 53:22 87:23<br><br>**tribune's**(2) 15:9 53:4<br><br>**tried**(1) 66:4<br><br>**trouble**(3) 20:14 20:21 50:9<br><br>**troubling**(1) 19:10<br><br>**truly**(1) 30:22<br><br>**trump**(1) 12:10<br><br>**trust**(21) 2:29 7:37 11:4 11:8 25:9 50:7 68:19 74:19 74:20 74:24 75:2 75:5 75:11 75:13 75:20 82:22 83:13 84:25 85:2 85:3 85:4<br><br>**trustee**(2) 5:24 5:24<br><br>**trusts**(3) 36:22 74:18 85:7<br><br>**truth**(1) 68:19<br><br>**try**(5) 61:3 73:14 79:14 88:13 88:18<br><br>**trying**(6) 27:11 27:21 28:5 67:10 73:8 84:<br><br>**tuliano**(1) 57:5<br><br>**turn**(6) 25:6 41:14 58:16 60:3 68:2 71:15<br><br>**turning**(1) 71:3<br><br>**twelve-and-a-half-billion-dol**    54:9 |

10/05/11 15:29:47

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **two**(65) | 13:13  15:1  15:4  16:19  16:21 17:12  19:24  21:1  21:7  22:16  23:3  23:8 26:19  27:5  35:21  36:17  36:25  42:10  43:1 45:6  45:7  45:17  46:5  46:8  46:14  46:18 51:9  52:15  52:18  52:19  52:21  56:2  56:10 56:21  56:24  57:1  57:21  58:4  58:16  58:19 58:22  58:25  59:7  59:12  59:15  59:15  59:18 63:16  64:18  64:19  65:1  65:10  69:10  70:4 73:1  74:6  74:8  74:14  74:23  75:12  84:24 85:7  86:2  87:13  87:22 | **value**(57) | 15:9  38:24  39:4  39:11  44:3  44:6 44:7  44:8  46:2  46:4  46:24  47:1  47:7 47:10  48:3  48:6  48:9  51:13  51:14  56:16 56:16  58:5  59:16  60:5  60:22  61:14  61:19 62:5  62:6  62:13  62:15  62:21  63:2  63:5 63:24  65:12  71:15  71:18  71:23  72:10 73:22  73:23  74:8  74:9  74:14  74:15  75:8 78:2  78:11  80:24  81:25  82:21  82:25  84:1 84:22  86:3  86:7 | **was**(121) | 13:24  14:2  14:15  14:24  14:24 15:1  15:2  15:4  15:22  16:7  16:14  16:15 17:13  18:3  18:10  18:14  19:21  19:23  20:3 20:4  20:5  21:13  21:21  21:22  21:23  21:23 21:24  22:12  23:3  23:25  24:4  25:19  27:10 29:18  31:9  31:17  31:22  31:23  32:8  32:21 35:8  40:25  40:25  41:6  43:7  43:8  44:19 45:6  53:4  53:5  53:9  53:10  53:12  53:15 53:16  53:20  54:10  54:17  54:24  55:3  55:4 55:23  56:9  56:21  57:2  57:6  57:8  58:22 60:13  61:2  63:23  64:20  65:18  66:19  66:25 67:1  67:4  67:6  67:9  67:9  67:11  67:17 67:17  67:19  67:21  67:24  67:25  70:12 70:20  70:22  71:20  72:1  72:8  72:10  72:15 72:22  73:6  73:12  73:24  74:4  74:5  74:14 74:15  76:23  76:25  78:12  78:18  78:16 80:20  82:17  84:5  84:23  84:23  85:6  85:9 85:11  86:3  86:14  86:19  87:7  87:8 | **what**(77) | 14:8  14:8  15:11  15:17  16:25 17:2  18:13  21:1  22:23  26:6  27:14  27:18 27:18  29:18  29:19  29:21  29:23  29:23 29:24  30:13  30:19  33:19  33:24  33:24  34:6 34:7  38:9  40:10  40:10  40:19  40:24  41:6 41:25  42:12  43:6  43:24  43:25  44:1  47:3 47:4  48:15  50:7  54:14  54:15  56:9  58:15 58:24  60:4  60:5  60:13  61:6  61:11  62:18 68:15  70:6  72:12  72:25  73:3  76:25  77:19 77:21  78:6  78:18  79:15  81:11  82:5  82:7 82:24  83:1  83:15  83:17  85:14  85:16  86:24 87:18  87:19  88:19 |
| **type**(1) 24:22 | | **value's**(1) 62:19 | | **washington**(1) 3:49 | | **what's**(5) 19:14  27:25  28:18  46:2  61:17 |
| **types**(1) 18:14 | | **valued**(1) 74:4 | | **water**(2) 33:5  73:15 | | **whatever**(2) 17:22  28:14 |
| **u.s**(1) 9:5 | | **variant**(1) 80:23 | | **waterfall**(3) 62:22  76:10  77:13 | | **whatsoever**(1) 54:18 |
| **ubs**(2) 10:42  10:42 | | **variety**(2) 66:21  69:7 | | **watkins**(1) 6:36 | | **what's**(2) 71:7  79:13 |
| **uh-huh**(1) 30:16 | | **various**(5) 17:18  26:15  26:16  27:6  66:9 | | **way**(27) 24:4  24:23  26:12  27:11  36:6  37:8 44:7  44:8  50:14  59:20  66:19  71:18  71:20 71:22  72:6  75:5  75:18  76:9  76:10  76:21 76:21  78:2  78:11  81:9  83:1  86:8  88:13 | | **when**(30) 18:2  18:6  20:13  23:8  30:8  32:21 33:5  36:15  42:23  43:19  45:23  45:23  49:25 52:21  53:7  53:20  55:12  57:4  66:6  66:10 66:13  66:17  67:19  70:21  72:7  72:13  74:13 77:11  80:14  81:8  82:8  86:20 |
| **unable**(2) 41:13  57:3 | | **vasquez**(1) 6:15 | | | | |
| **unbelievable**(1) 62:10 | | **versed**(1) 62:17 | | | | |
| **uncertain**(1) 39:4 | | **version**(12) 14:25  15:2  15:25  20:8  20:9 20:16  20:16  22:8  22:10  24:2  24:4  24:18 | | | | **whenever**(2) 82:2  82:2 |
| **uncertainty**(2) 48:19  50:2 | | | | **ways**(6) 25:3  39:5  61:9  62:20  82:25  83:2 | | **where**(23) 24:23  27:14  29:8  31:22  37:20 50:19  58:25  62:3  62:24  63:11  66:22  66:22 73:5  73:25  75:4  75:16  75:19  76:15  77:3 81:12  83:24  87:24  88:4 |
| **unconfirmable**(1) 42:4 | | **versions**(5) 15:20  16:21  20:11  20:11  20:14 | | **we'd**(1) 18:10 | | |
| **under**(21) 25:18  27:8  39:8  39:17  39:18 39:20  39:21  40:19  59:14  72:11  72:19 75:15  75:20  79:24  79:25  80:25  85:3  85:8 85:8  86:10  87:7 | | **very**(23) 14:8  14:8  15:25  16:3  17:24  21:9 22:7  26:25  29:3  30:14  35:2  37:16  37:19 38:1  38:23  40:14  47:11  52:6  56:6  63:15 72:17  85:25  88:25 | | **we'll**(4) 24:25  25:22  27:7  59:17 | | |
| | | | | **we're**(14) 16:20  17:12  21:21  22:2  23:24 25:1  26:12  30:19  32:12  52:14  52:25  53:11 56:4  58:4 | | **whether**(13) 19:23  44:4  44:12  46:4  47:2 47:6  51:7  51:9  51:11  56:2  57:2  81:10 86:22 |
| **understand**(7) 28:7  30:24  31:25  34:3  66:5 85:14  86:15 | | **view**(14) 15:8  15:13  16:2  20:22  20:24 48:20  59:1  60:6  61:3  61:6  65:23  66:24 72:25  83:14 | | | | **which**(40) 13:11  13:14  16:15  28:25  29:3 34:5  34:7  39:13  39:24  40:12  41:20  43:25 47:7  48:2  49:23  53:1  54:14  56:15  57:9 59:4  62:5  63:4  64:22  64:23  66:19  67:8 69:10  70:23  72:10  72:14  72:18  72:19 74:20  77:5  78:12  78:21  85:7  86:19  87:15 88:6 |
| **understanding**(1) 18:13 | | **views**(2) 43:20  45:16 | | **we've**(15) 14:9  17:20  17:22  19:17  19:18 19:18  19:18  22:3  22:20  26:11  27:11  28:12 33:21  54:16  63:18 | | |
| **understates**(1) 24:19 | | **viking**(1) 9:46 | | | | |
| **understood**(1) 70:22 | | **vinson**(2) 5:42  10:37 | | | | |
| **undoubtedly**(1) 18:7 | | **violate**(2) 72:2  72:5 | | | | |
| **unequivocally**(1) 79:11 | | **violated**(1) 77:16 | | **wednesday**(2) 53:7  88:10 | | |
| **unfair**(2) 23:6  80:19 | | **violates**(4) 71:23  76:6  77:19  83:1 | | **wednesday's**(1) 70:21 | | |
| **unfairly**(7) 71:24  76:7  76:25  77:9  77:11 77:17  82:14 | | **violation**(1) 80:24 | | **week**(17) 13:8  14:14  14:14  14:15  14:19 14:20  16:20  17:20  19:14  25:21  29:20 29:20  49:5  52:15  61:3  87:20  88:18 | | **while**(6) 24:17  24:22  35:22  36:21  37:8 58:10 |
| | | **virtually**(1) 42:6 | | | | |
| **unfolds**(1) 37:8 | | **volume**(2) 27:23  79:9 | | | | |
| **unfortunate**(1) 19:7 | | **vora**(1) 12:22 | | **week's**(1) 16:8 | | **white**(1) 10:15 |
| **unfortunately**(4) 21:1  25:10  25:13  66:22 | | **vote**(6) 41:7  42:7  79:25  80:5  80:11  80:13 | | **weekend**(1) 17:21 | | **whitman**(1) 12:14 |
| **unidentified**(1) 13:4 | | **vote."**(1) 80:12 | | **weeks**(11) 14:9  21:7  23:8  36:16  37:24 42:11  52:21  74:6  74:8  74:14  87:22 | | **whitman's**(1) 69:23 |
| **united**(2) 1:1  1:19 | | **voted**(7) 40:14  40:20  41:11  41:11  41:15 41:18  42:2 | | | | **who**(30) 15:4  17:13  19:19  22:13  24:10 30:3  39:6  39:16  39:19  40:3  40:18  40:22 41:11  41:19  42:18  45:3  45:8  50:14  57:12 60:19  64:12  65:11  67:4  67:9  71:16  75:4 82:1  85:2  85:9  87:3 |
| **unless**(9) 19:1  23:9  31:1  34:17  45:5  46:10 56:12  56:14  83:16 | | | | **weighs**(1) 43:19 | | |
| | | **votes**(3) 40:12  41:3  80:2 | | **weil**(1) 10:4 | | |
| | | **voting**(1) 42:1 | | **weiss**(3) 4:47  8:38  19:6 | | |
| **unlike**(1) 37:9 | | **vrc**(2) 21:24  24:16 | | **weitman**(2) 2:13  8:35 | | **whoever**(1) 16:12 |
| **unlikely**(1) 60:11 | | **wacker**(1) 4:35 | | **well**(32) 14:5  17:11  18:25  20:20  21:15 23:6  24:25  27:16  27:17  27:20  28:7  28:24 30:13  35:22  37:15  41:19  42:10  43:1  49:2 52:6  52:7  59:24  60:2  62:8  62:16  62:17 66:9  72:9  79:20  80:5  85:1  85:5 | | **whole**(8) 22:19  48:14  50:2  51:20  72:21 81:10  83:12  85:23 |
| **unrealistic**(1) 16:2 | | **wait**(5) 16:14  50:16  77:10  84:10  84:11 | | | | |
| **unreasonable**(1) 42:14 | | **walk**(2) 50:5  50:6 | | | | |
| **unsecured**(27) 3:27  6:6  36:13  38:15  38:18 39:7  39:15  39:19  40:7  40:17  40:20  41:16 44:18  46:6  47:2  47:4  50:12  51:1  54:4 55:25  60:23  80:2  80:4  80:10  85:18  85:19 85:25 | | **walked**(2) 38:2  84:22 | | | | **why**(22) 16:14  17:6  17:7  17:8  24:7  42:9 62:4  64:1  65:8  65:17  66:5  67:7  67:24 67:24  73:4  74:12  76:7  81:24  82:11  85:1 85:10  85:24 |
| | | **walking**(2) 32:21  33:10 | | | | |
| | | **want**(33) 13:15  13:16  19:13  22:24  28:6 32:8  32:13  49:18  50:9  50:11  50:13  50:15 51:3  51:3  51:4  51:5  51:7  51:8  51:11 59:25  65:4  65:7  65:10  68:14  68:25  73:16 74:18  76:18  81:5  81:5  83:5  84:14  87:3 | | **wells**(1) 10:15 | | |
| | | | | **went**(1) 60:25 | | |
| **unsecureds**(3) 40:5  44:23  58:9 | | | | **were**(40) 15:19  16:2  16:21  16:25  18:2 18:8  18:24  19:16  19:24  20:2  20:6  20:10 20:13  21:7  21:7  21:10  25:12  26:4  26:22 27:6  27:12  31:22  33:9  37:17  37:21  37:25 41:12  42:17  45:9  45:14  53:16  53:18  53:2 58:14  64:16  65:25  66:22  70:24  71:21 79:15 | | **wide**(1) 36:24 |
| **untested**(3) 46:21  51:10  59:2 | | | | | | **wide-spread**(1) 54:24 |
| **until**(8) 16:14  24:9  39:13  48:8  50:17  88:4 88:11  88:15 | | **wanted**(2) 29:22  35:12 | | | | **wild**(1) 12:18 |
| | | **wants**(1) 29:12 | | | | **will**(68) 18:6  19:22  21:9  24:14  25:11 25:22  28:1  28:9  28:18  29:24  30:10  30:14 30:22  30:22  32:13  33:2  33:5  34:22  36:8 37:4  37:25  39:3  39:5  39:8  39:12  43:20 43:24  45:1  45:8  45:24  46:15  48:2  48:5 48:20  49:15  50:1  50:25  51:12  51:15  51:17 54:19  57:12  57:13  58:10  58:17  59:25  60:4 62:17  66:1  67:3  72:22  78:6  78:9  83:7 84:17  84:19  85:17  86:21  87:20  87:25 87:25  88:6  88:6  88:12  88:14  88:15  88:16 89:1 |
| **update**(2) 61:24  62:14 | | **wardwell**(2) 2:16  10:31 | | | | |
| **upon**(2) 44:4  88:19 | | **warranted**(1) 86:23 | | **weren't**(2) 17:7  17:7 | | |
| **upside**(3) 74:18  82:15  82:17 | | **warrants**(1) 33:25 | | **weren't**(1) 17:8 | | |
| **usa**(1) 12:27 | | **warton**(1) 4:47 | | **west**(2) 4:19  4:35 | | |
| **use**(6) 28:6  32:9  48:3  61:22  61:23  87:3 | | | | **we'd**(1) 72:18 | | |
| **used**(6) 21:3  22:5  22:6  22:10  28:16  62:7 | | | | **we'll**(4) 67:3  79:19  84:11  88:13 | | **william**(1) 2:38 |
| **using**(1) 60:15 | | | | **we're**(4) 73:8  75:18  79:17  83:11 | | **willing**(3) 50:4  50:5  50:6 |
| **utterly**(1) 34:6 | | | | **we've**(1) 69:10 | | **wilmer**(1) 7:9 |
| **vacation**(1) 67:20 | | | | **wharton**(1) 8:38 | | |
| **vail**(1) 5:18 | | | | | | |
| **valuable**(1) 68:15 | | | | | | |
| **valuation**(10) 14:25  22:9  24:12  24:12 61:18  61:21  62:15  62:17  70:1 | | | | | | |
| **valuations**(1) 74:3 | | | | | | |

| Word                          Page:Line | Word                          Page:Line | Word                          Page:Line |
|---|---|---|

**wilmington**(16) 1:12  2:8  2:29  2:40  3:9  3:16  3:40  4:11  4:20  4:44  5:14  5:27  5:33  7:37  13:1  25:9

**wilson**(1) 6:43
**win**(5) 44:22  47:9  51:7  56:5  85:9
**winfree**(1) 3:6
**winning**(1) 56:7
**wiping**(1) 46:7
**wires**(2) 7:33  19:12
**wish**(2) 31:5  32:18
**wishes**(1) 29:11
**with**(97) 13:9  13:25  14:10  17:21  18:7  18:19  19:6  19:23  20:14  21:4  22:13  24:21  25:15  26:18  26:23  27:1  27:5  27:9  27:10  27:24  28:14  28:19  29:13  29:19  30:20  31:5  31:8  31:10  31:11  31:15  31:16  32:2  32:24  33:2  35:8  35:24  35:24  36:16  36:23  37:1  37:21  38:1  38:4  38:10  39:1  39:16  39:24  40:5  41:7  42:1  44:25  50:14  51:4  52:4  53:1  53:21  56:24  57:11  58:3  58:4  61:17  63:13  63:18  66:13  66:15  66:22  66:23  67:18  67:24  68:1  68:10  68:16  68:18  68:22  69:25  70:2  70:23  72:16  72:17  73:2  74:7  76:4  77:20  79:10  79:19  80:12  83:8  83:9  83:11  83:12  83:14  83:14  83:19  84:10  85:16  88:5

**withheld**(3) 19:15  19:25  20:11
**withhold**(1) 22:20
**withholding**(1) 19:9
**within**(5) 42:24  43:14  53:4  53:25  88:7
**without**(13) 18:13  18:17  28:8  28:10  46:21  54:25  64:7  68:6  68:7  69:15  72:20  72:21  78:4
**witness**(1) 16:12
**witnesses**(4) 19:19  19:19  19:22  88:5
**wolf**(2) 5:46  5:46
**won't**(2) 30:9  30:9
**wonder**(1) 27:14
**word**(4) 35:2  53:6  76:18  79:8
**words**(4) 15:7  21:10  26:16  66:1
**work**(4) 27:7  24:14  43:13  76:10
**working**(2) 28:21  69:13
**works**(2) 37:8  76:11
**world**(2) 60:7  81:1
**worry**(1) 74:2
**worse**(4) 62:24  71:10  72:4  81:13
**worth**(9) 59:17  60:5  61:16  62:18  63:9  63:17  65:6  72:15  78:21

**would**(71) 16:10  16:12  18:17  20:15  20:16  20:25  21:17  23:6  23:11  23:13  23:13  26:2  29:9  29:21  29:21  31:20  32:4  32:23  33:25  34:9  34:11  35:19  35:25  39:6  39:6  40:22  41:6  41:8  43:8  43:9  43:10  43:18  45:10  46:11  46:22  47:12  47:25  48:13  48:15  49:4  49:11  51:7  54:25  55:20  56:6  57:3  57:13  57:14  57:16  58:1  58:18  58:24  59:2  59:6  59:9  59:12  61:6  62:22  62:25  63:25  64:12  69:20  70:3  70:7  71:1  72:5  74:1  74:25  84:6  84:10  86:15

**wouldn't**(1) 85:6
**wrap**(1) 68:3
**writing**(3) 23:12  34:10  86:15
**written**(1) 33:3
**wrong**(1) 54:5
**wrongs**(2) 52:18  52:19
**wrote**(1) 16:5
**www.diazdata.com**(1) 1:41
**yeah**(1) 83:21
**year**(5) 22:19  42:15  53:19  61:25  68:20
**years**(10) 35:22  37:7  39:2  39:2  39:14  39:22  40:23  43:13  50:7  60:19

**yes**(5) 29:5  34:11  35:3  49:9  87:8
**yet**(6) 25:20  25:24  25:25  64:1  69:16  87:17
**york**(6) 2:25  2:33  2:51  3:24  3:33  4:51

**you**(187) 13:19  14:1  14:6  14:7  14:13  16:14  16:15  19:4  19:7  20:9  20:14  20:15  20:21  21:9  21:10  21:15  23:9  23:11  23:15  23:16  23:20  23:21  25:4  25:5  25:24  26:1  26:2  26:20  27:13  27:14  27:20  27:22  28:19  29:15  30:4  30:8  30:10  31:4  32:17  33:4  34:9  34:12  34:24  34:25  35:13  35:14  35:19  35:19  35:22  36:10  37:17  37:23  38:9  42:18  42:23  43:5  43:18  45:4  45:5  45:7  45:23  45:23  45:24  48:2  48:13  49:2  49:5  49:13  49:14  51:6  51:23  51:24  52:3  52:10  52:21  54:1  54:13  54:19  54:20  54:23  55:2  55:4  56:2  56:12  56:14  56:16  56:21  57:1  57:4  57:5  57:13  57:23  58:6  58:10  58:11  58:20  59:13  59:23  59:23  60:4  60:6  61:7  61:22  62:3  63:2  63:22  64:4  64:5  64:8  64:14  64:14  64:18  64:25  65:3  65:3  65:4  65:14  65:16  65:20  66:1  66:6  66:8  66:8  66:10  68:7  68:25  69:5  69:10  69:17  69:23  70:10  70:11  70:15  71:13  72:2  72:8  73:6  73:7  73:7  73:14  73:21  74:2  74:25  75:5  75:7  75:7  75:10  75:12  76:13  76:18  77:4  77:6  77:15  77:15  77:23  77:24  78:5  78:12  79:6  79:6  79:8  79:20  81:8  82:2  82:3  82:4  82:6  82:11  83:21  83:22  84:1  84:3  84:4  84:14  84:16  84:19  87:8  87:13  87:15  87:16  87:17  87:19  88:1  88:1  88:18  88:25

**you'd**(2) 14:5  23:15
**you'll**(11) 14:6  36:5  45:16  45:20  52:22  57:5  57:24  59:15  61:9  65:8  65:9

**you're**(8) 33:7  34:17  37:23  49:1  49:6  51:16  53:5  63:6

**you've**(1) 43:2

**young**(1) 4:14
**your**(204) 13:3  13:4  13:5  13:7  13:20  13:23  14:4  14:7  14:15  14:21  15:10  16:7  16:18  17:3  17:12  17:21  17:23  18:2  18:7  18:12  18:21  19:5  19:10  19:12  19:20  20:5  20:13  20:21  21:4  21:8  21:10  21:18  22:11  23:9  23:13  23:16  23:18  23:21  23:23  23:25  24:7  24:14  24:21  25:3  25:9  25:16  26:9  26:11  29:15  29:16  30:12  30:25  31:14  32:9  32:15  32:19  32:25  34:11  34:13  34:14  35:1  35:16  35:21  36:9  36:11  36:14  36:20  37:11  37:17  38:4  38:7  38:11  38:20  38:22  38:25  39:7  39:10  40:1  40:9  40:11  40:13  40:16  40:21  40:24  41:2  41:10  41:17  41:24  42:3  42:7  42:17  42:22  43:5  43:16  44:1  44:10  44:12  44:14  44:20  45:2  45:8  45:12  45:18  45:22  46:10  46:15  46:20  46:25  47:16  48:13  48:25  49:3  49:7  49:10  49:14  49:19  50:9  50:18  51:1  51:15  51:19  51:23  52:1  52:11  52:12  52:18  52:25  53:3  53:23  54:10  55:7  55:14  55:18  56:4  56:18  56:24  57:9  57:17  57:22  58:6  58:9  59:3  59:13  59:20  60:2  60:17  61:14  61:19  61:20  62:3  62:13  62:19  63:2  63:14  63:20  63:25  64:3  64:14  64:21  64:24  65:20  66:4  66:5  66:13  66:20  66:25  67:7  67:10  67:12  67:19  67:24  68:2  69:4  69:17  70:4  70:9  70:14  71:4  73:18  75:8  75:14  76:19  77:23  78:5  78:9  79:2  80:22  81:20  82:6  83:18  83:22  84:3  84:5  84:5  84:10  84:13  85:6  85:16  86:25  87:6  87:17  87:24  88:1  88:14

**yourself**(1) 62:3
**you'll**(1) 69:1
**you're**(3) 75:5  77:10  87:24
**you've**(2) 73:1  87:14
**zell**(2) 5:11  54:8
**zensky**(9) 2:44  52:1  52:4  52:8  52:11  52:12  66:4  69:6  70:11

**zero**(3) 64:13  64:22  65:7
**zloto**(1) 9:12
**zuckerman**(3) 3:43  6:18  36:12
**"the**(1) 69:19
**"there**(1) 69:11

**"well**(1) 79:16
**"your**(1) 80:10
**"you'll**(1) 69:23
**march**(1) 89:9