```
                 IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                        )    Case No. 08-13141-KJC
                              )
TRIBUNE COMPANY,              )
                              )    Chapter 11
                              )
                              )    Courtroom 5
                              )    824 Market Street
              Debtors.        )    Wilmington, Delaware
                              )
                              )    March 9, 2011
                              )    10:00 a.m.


                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:              Sidley Austin, LLP
                              BY: JAMES CONLAN, ESQ.
                              BY: JAMES BENDERNAGEL, ESQ.
                              BY: KEVIN LANTRY, ESQ.
                              BY: JAMES DUCAYET, ESQ.
                              One South Dearborn
                              Chicago, IL 60603
                              (312) 853-7000

                              Cole, Schotz, Meisel, Forman
                              & Leonard, P.A.
                              BY: NORMAN PERNICK, ESQ.
                              500 Delaware Ave., Ste. 1410
                              Wilmington, DE 19801
                              (302) 652-3131

ECRO:                         AL LUGANO

Transcription Service:        DIAZ DATA SERVICES
                              331 Schuylkill Street
                              Harrisburg, Pennsylvania 17110
                              (717) 233-6664
                              www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
 1   APPEARANCES:
 2   (Continued)
 3
 4   For JP Morgan:              Davis Polk & Wardwell
 5                              BY: ELLIOT MOSKOWITZ, ESQ.
 6                              BY: BENJAMIN KAMINETZKY, ESQ.
 7                              BY: DONALD S. BERNSTEIN, ESQ.
 8                              450 Lexington Avenue
 9                              New York, NY 10017
10                              (212) 450-4000
11
12                              Richards Layton & Finger
13                              BY: BOB STEARN, ESQ.
14                              One Rodney Square
15                              920 North King Street
16                              Wilmington, DE  19801
17                              (302) 651-7700
18
19   For Aurelius Capital:      Akin Gump Strauss Hauer & Feld
20                              BY: DAVID ZENSKY, ESQ.
21                              BY: DANIEL GOLDEN, ESQ.
22                              BY: DEBORAH NEWMAN, ESQ
23                              BY: PHILIP DUBLIN, ESQ.
24                              BY: NANCY CHUNG, ESQ.
25                              BY: ABID QURESHI, ESQ.
26                              BY: MITCH HURLEY, ESQ.
27                              One Bryant Park
28                              New York, NY 10036
29                              (212) 872-1000
30
31   For Merrill Lynch:         Potter, Anderson & Corroon
32                              BY: LAURIE S. SILVERSTEIN, ESQ
33                              BY: R. STEPHEN MCNEILL, ESQ.
34                              Hercules Plaza
35                              1313 North Market Street
36                              6th Floor
37                              Wilmington, DE 19801
38                              (302) 984-6000
39
40                              Kay Scholer
41                              BY: MADLYN GLEICH PRIMOFF, ESQ
42                              BY: JANE PARVER, ESQ.
43                              425 Park Avenue
44                              New York, NY  10022-3598
45                              (212) 836-7042
46
47
48
49
50
51
52
53
```

```
 1   APPEARANCES:
 2   (Continued)
 3
 4   For Law Debenture:                Bifferato Gentilotti
 5                                     BY: GARVAN MCDANIEL, ESQ.
 6                                     800 North King Street
 7                                     Plaza Level
 8                                     Wilmington, DE 19801
 9                                     (302) 429-1900
10
11   For Official Committee
12   of Unsecured Creditors:           Chadbourne & Parke, LLP
13                                     BY: DAVID LEMAY, ESQ.
14                                     BY: THOMAS MCCORMACK, ESQ.
15                                     BY: HOWARD SEIFE, ESQ.
16                                     BY: ANDREW ROSENBLATT, ESQ.
17                                     BY: ROBERT SCHWINGER, ESQ.
18                                     BY: MARC ASHLEY, ESQ.
19                                     BY: BOB KIRBY, ESQ.
20                                     BY: DOUGLAS DEUTSCH. ESQ.
21                                     30 Rockefeller Plaza
22                                     New York, NY 10112
23                                     (212) 408-5100
24
25                                     Landis, Rath & Cobb
26                                     BY: ADAM G. LANDIS, ESQ.
27                                     BY: DANIEl B. RATH, ESQ.
28                                     919 Market Street, Suite 1800
29                                     Wilmington, DE 19801
30                                     (302) 467-4400
31
32                                     Zuckerman Spaeder
33                                     BY: GRAEM BUSH, ESQ.
34                                     BY: ANDREW GOLDFARB, ESQ.
35                                     BY: JAMES SOTTILE, ESQ.
36                                     1800 M Street, NW
37                                     Suite 1000
38                                     Washington, DC 20036
39                                     (202) 778-1800
40
41   For Special Committee of the
42   Board of Directors:               Jones Day
43                                     BY: LYNN MARVIN, ESQ.
44                                     77 West Wacker
45                                     Chicago, Illinois 60601
46                                     (312) 782-3939
47

48
49
50
51
52
```

```
 1   APPEARANCES:
 2   (Continued)
 3
 4   For Credit Agreement Lenders: Young, Conaway, Stargatt &
 5                                  Taylor
 6                                  BY: BLAKE N. CLEARY, ESQ.
 7                                  The Brandywine Building
 8                                  1000 West Street, 17th Floor
 9                                  Wilmington, DE 19801
10                                  (302) 571-6600
11
12                                  Dewey LeBouef
13                                  BY: BRUCE BENNETT, ESQ.
14                                  BY: JAMES JOHNSTON, ESQ.
15                                  BY: JOSHUA MESTER, ESQ.
16                                  333 South Grand Avenue
17                                  Suite 2600
18                                  Los Angeles, CA 90071
19                                  (213) 621-6000
20
21   For DBTCA:                     McCarter & English
22                                  BY: KATHARINE MAYER, ESQ.
23                                  BY: DAVID ADLER, ESQ.
24                                  405 N. King Street, 8th Fl.
25                                  Wilmington, DE  19801
26                                  (302) 984-6312
27
28   For U. S. Trustee:             Office of the U. S. Trustee
29        `                         BY:  DAVID KLAUDER, ESQ.
30                                  844 King Street, Ste. 2207
31                                  Wilmington, DE  19801
32                                  (302) 573-6491
33
34   For Morgan Stanley:            Barnes & Thornburg
35                                  BY: DAVID POWLEN, ESQ.
36                                  1000 North West St., Ste. 1200
37                                  Wilmington, DE  19801-1058
38                                  (302)868-4536
39
40   For Barclays:                  Edwards Angell Palmer & Dodge
41                                  BY: MICHELE MARINO, ESQ.
42                                  919 N. Market Street, 15th Fl.
43                                  Wilmington, DE  19801
44                                  (302) 425-7105
45
46   For Tribune:                   Tribune Company
47                                  BY: DON LIEBENTRITT, ESQ.
48                                  435 North Michigan Avenue
49                                  Chicago, IL 60611
50                                  (312) 222-9100
51
52
53
```

```
 1  APPEARANCES:
 2  (Continued)
 3
 4  For EGI-TRB & Sam Zell:        Jenner & Block
 5                                 BY:  CATHERINE STEEGE, ESQ.
 6                                 BY: ANDREW VAIL, ESQ.
 7                                 353 North Clark Street
 8                                 Chicago, IL  60654-3456
 9                                 (312) 923-2952
10
11                                 Blank Rome, LLP
12                                 BY: DAVID CARIKOFF, ESQ.
13                                 1201 Market Street, Ste. 800
14                                 Wilmington, DE  19801
15                                 (302) 425-6434
16
17  TELEPHONIC APPEARANCES:
18
19  For Jason D Abbruzzese:        Realm Partners
20                                 BY: JASON D. ABBRUZZESE
21                                 (212) 612-1441
22  For Official Committee of
23  Unsecured Creditors:           Chadbourne & Park, LLP
24                                 BY:  MARC D. ASHLEY, ESQ.
25                                 (212) 408-5194
26                                 BY: DOUGLAS DEUTSCH, ESQ.
27                                 (212) 408-5169
28                                 BY: JESSICA MARRERO, ESQ.
29                                 (212)408-5100
30                                 BY: MARC ROITMAN, ESQ.
31                                 (212)408-5271
32                                 BY: FRANK VAZQUEZ, ESQ.
33                                 (212)408-5111
34                                 BY: HOWARD SEIFE, ESQ.
35                                 (212) 408-5361
36
37                                 Zuckerman & Spaeder, LLP
38                                 BY: GRAEM BUSH, ESQ.
39                                 BY: JAMES SOTTILE, ESQ.
40                                 BY: ANDREW GOLDFARB, ESQ.
41                                 BY: ANDREW CARIDAS, ESQ.
42                                 (202) 778-1800
43
44                                 Landis Rath & Cobb, LLP
45                                 BY: MATTHEW B. MCGUIRE, ESQ.
46                                 (302)467-4431
47
48
49
50
51
52
53
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)
 3
 4   For Barclays:                 Mayer Brown, LLP
 5                                 BY: JEAN-MARIE ATAMIAN, ESQ.
 6                                 (212)506-2678
 7                                 BY: MICHAEL L. SIMES, ESQ.
 8                                 (212) 506-2607
 9                                 BY: AMIT TREHAN, ESQ.
10                                 (212) 506-2198
11
12                                 Barclays Capital, Inc.
13                                 BY: BEN WILSON
14                                 (212)412-7642
15   For Credit Agreement
16   Lenders:                      Angelo Gordon & Co., LP
17                                 BY: GAVIN BAIERA, ESQ.
18                                 (212)692-0217
19
20                                 Wilmer Cutler Pickering Hale &
21                                 Dorr
22                                 BY: MICHELLE GOLDIS, ESQ.
23                                 (212) 295-6329
24                                 ANDREW N. GOLDMAN, ESQ.
25                                 (212)230-8836
26
27   For SuttonBrook Capital:      SuttonBrook Capital
28                                 Management, LP
29                                 BY: CAROL L. BALE, ESQ.
30                                 (212) 588-6640
31   For Monarch Alternative
32   Capital, LP:                  Monarch Alternative Capital LP
33                                 BY: ROBERT G. BURNS, ESQ.
34                                 (212) 554-1768
35
36   For Bank of America:          O'Melveny & Myers
37                                 BY: DANIEL CANTOR, ESQ.
38                                 (212) 326-2000
39                                 BY: DANIEL S. SHAMAH, ESQ.
40                                 (212)326-2138
41
42                                 Bank of America
43                                 BY: ESTHER CHUNG, ESQ.
44                                 (646) 855-6705
45
46   For Jefferies & Company:      Jefferies & Company
47                                 BY: JUSTIN BRASS, ESQ.
48                                 (203) 708-5847
49
50
51
52
53
```

```
 1  TELEPHONIC APPEARANCES:
 2  (Continued)
 3
 4  For Tribune:                    DK Partners
 5                                  BY: EPHRAIM DIAMOND, ESQ.
 6                                  (646) 282-5841
 7                                  BY: DAVE ELDERSVELD, ESQ.
 8                                  (312)222-4707
 9
10                                  Sidley Austin
11                                  BY: GREG DEMO, ESQ.
12                                  (312) 853-7758
13                                  BY: KEN KANSA, ESQ.
14                                  (312) 853-7163
15                                  BY: SOPHIA MULLEN, ESQ.
16                                  (212) 839-5884
17                                  BY: JILLIAN LUDWIG, ESQ.
18                                  (312) 853-7523
19                                  BY: BRETT MYRICK, ESQ.
20                                  (312) 853-1049
21                                  BY: ALLISON E. STROMBERG, ESQ.
22                                  (312) 853-0497
23
24                                  Tribune Company
25                                  BY: GARY WEITMAN, ESQ.
26                                  (312) 222-3394
27
28
29  For Wilmington Trust:           Brown Rudnick, LLP
30                                  BY:  KATHERINE BROMBERG, ESQ.
31                                  (212) 209-4929
32                                  BY: ROBERT STARK, ESQ.
33                                  (212)209-4862
34
35  For Goldman Sachs & Co.:        Goldman Sachs & Company
36                                  BY: SCOTT BYNUM, ESQ.
37                                  (212) 902-8060
38
39  For Citibank:                   Paul Weiss Rifkind Wharton
40                                  BY: KIRA DAVIS, ESQ.
41                                  (212) 373-3000
42                                  BY: ANDREW GORDON, ESQ.
43                                  (212)373-3543
44                                  BY: ANDREW LEVY, ESQ.
45                                  (202)223-7328
46                                  BY: SHANNON PENNOCK, ESQ.
47                                  (212) 373-3000
48                                  BY: ELIZABETH MCCOLM, ESQ.
49                                  (212) 373-3000
50
51
52
53
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)
 3
 4   For Arrowgrass Management:     Arrowgrass Capital Partners,
 5                                  U.S., LP
 6                                  BY: ARIF GANGAT, ESQ.
 7                                  (212) 584-1160
 8
 9   For Aurelius Capital
10   Managemeent:                   Aurelius Capital Management LP
11                                  BY: MATTHEW A. ZLOTO, ESQ.
12                                  (646) 445-6518
13
14                                  Akin Gump Strauss Hauer & Feld
15                                  BY: SHAYA ROCHESTER, ESQ.
16                                  (212) 872-1076
17                                  BY: JOHN BERRY, ESQ.
18                                  (212) 872-8075
19
20                                  Friedman Kaplan Seiler &
21                                  Adelman
22                                  BY: KIZZY JARASHOW, ESQ.
23                                  (212) 833-1115
24
25   For George Dougherty:          Grippo & Elden, LLC
26                                  BY: GEORGE DOUGHERTY, ESQ.
27                                  (312) 704-7700
28
29   For Mina Faltas:               Viking Global Investors
30                                  BY: MINA FALTAS
31                                  (212) 672-7011
32
33   For Bennett Management:        Lucy Galbraith
34                                  BY: LUCY GALBRAITH, ESQ.
35                                  (203) 353-3101
36
37   For Morgan Stanley:            Weil Gotshal & Manges, LLP
38                                  BY: ASHISH D. GANDHI, ESQ.
39                                  (212) 310-8024
40                                  BY: DAVID LITVACK, ESQ.
41                                  (212)310-8361
42                                  BY: ANDREA SAAVEDRA, ESQ.
43                                  (212) 310-8544
44   For Serengeti Asset
45   Management:                    Serengeti Asset Management
46                                  BY: NICHOLAS HEILBUT, ESQ.
47                                  (212) 466-2167
48
49   For Anna Kalenchits:           Anna Kalenchits
50                                  (212)723-1808
51
52
53
```

```
1   TELEPHONIC APPEARANCES:
2   (Continued)
3
4   For JPMorgan Chase Bank:      Davis Polk & Wardwell, LLP
5                                 BY: PETER KIM, ESQ.
6                                 (212) 450-3028
7                                 BY: LESLIE BANK, ESQ.
8                                 (212)450-4175
9
10                                Richards Layton & Finger
11                                BY: MARK D. COLLINS, ESQ.
12                                (302) 651-7531
13
14  For Partner Fund Management:  Vinson & Elkins, LLP
15                                BY: LANCE A. MULHERN, ESQ.
16                                (212) 237-0184
17  For Oaktree Capital
18  Management:                   Oaktree Capital Management
19                                BY: KENNETH C. LIANG, ESQ.
20                                (213) 830-6422
21  For Brigade Capital
22  Management:                   Brigade Capital Management
23                                BY: NEIL LOSQUADRO
24                                (212) 745- 9758
25
26  For Royal Bank of Scotland:   Royal Bank of Scotland
27                                BY: COURTNEY ROGERS, ESQ.
28                                (203) 897-4815
29
30  For Eos Partners:             Eos Partners
31                                BY: MIKE J. SCHOTT, ESQ.
32                                (212) 593-4046
33
34  For Prof. Expert:             Raymond James
35                                BY: ROBERT SCHWARTZ, ESQ.
36                                (212) 872-7441
37
38  For Contrarian Capital
39  Management:                   Contrarian Capital Management
40                                BY: JOSHUA TRUMP, ESQ.
41                                (203) 862-8299
42
43  For Alvarez & Marsal, Inc.:   Alvarez & Marsal, Inc.
44                                BY: BRIAN WHITTMAN, ESQ.
45                                (312) 601-4227
46
47  For Insured:                  Smith Management
48                                BY: JENNIFER WILD, ESQ.
49                                (212) 418-6877
50
51  For Macquarie Capital:        Macquarie Capital (USA)
52                                BY: RUSHABH VORA, ESQ.
53                                (212) 231-6311
```

```
 1  TELEPHONIC APPEARANCES:
 2  (Continued)
 3
 4  For Kramer Levin:              Kramer Levin Neftalis &
 5                                 Frankel, LLP
 6                                 BY: JORDAN KAYE, ESQ.
 7                                 (212) 715-9489
 8
 9  For Deutsche Bank AG:          Bingham McCutchen, LLP
10                                 BY: JEFFREY OLINSKY
11                                 BY: CHAD VALERIO
12                                 (212) 705-7857
13
14  For Law Debenture Trust:       Kasowitz Benson Torres & Park
15                                 BY: SHERON KORPUS, ESQ.
16                                 (212) 506-1700
17                                 BY: DAVID ROSNER, ESQ.
18                                 (212) 506-1726
19
20  For Merrill Lynch:             Kay Scholer, LLP
21                                 BY: JONATHAN AGUDELO, ESQ.
22                                 (212) 836-8369
23
24  For Cooperstown Capital
25  Management:                    Cooperstown Capital Management
26                                 BY: PETER COURI, ESQ.
27                                 (203) 552-6900
28
29  For Wells Fargo:               White & Case
30                                 BY: SCOTT GREISSMAN, ESQ.
31                                 (212) 819-8567
32
33  For Credit Agreement Lenders:  Wilmer Cutler Pickering Hale
34                                 & Dorr
35                                 BY: ANDREW N. GOLDMAN, ESQ.
36                                 (212) 230-8836
37  For Robert R. McCormick
38  Foundation:                    Katten Muchin Rosenman, LLP
39                                 BY: JOHN SIEGER, ESQ.
40                                 (312) 902-5294
41
42  For Interested Party:          Canyon Partners
43                                 BY: CHANEY M. SHEFFIELD, ESQ.
44                                 (310) 272-1062
45
46                                 One East Partners
47                                 BY: SINA TOUSSI, ESQ.
48                                 (212) 230-4510
49
50  For Non-Party:                 Duff & Phelps
51                                 BY: JOE LIEWANT
52                                 (973) 775-8336
53
```

1   WILMINGTON, DELAWARE, WEDNESDAY, MARCH 9, 2011, 10:03 A.M.

2              THE CLERK:  Be seated, please.

3              THE COURT:  Good morning, everyone.

4              ALL:  Good morning, Your Honor.

5              MR. MOSKOWITZ:  Good morning, Your Honor.  Elliot

6   Moskowitz with the law firm of Davis, Polk & Wardwell

7   representing JP Morgan Chase.

8              Your Honor, the DCL Plan Proponents calls our

9   next witness, Miriam Kulnis of JP Morgan Chase Bank.

10             THE COURT:  Very well.

11             MR. MOSKOWITZ:  And, Your Honor, I have a tiny

12  exhibit binder, if I may hand that up to the bench.  This

13  will be the thinnest exhibit binder in the case, I suspect.

14             THE COURT:  Sorry, no stars for that, but thank

15  you for letting me know.

16  (Laughter)

17             THE COURT:  I know, it's crowded.  Thank you.

18        MIRIAM KULNIS, DCL PLAN PROPONENTS WITNESS, SWORN

19                     DIRECT EXAMINATION

20  BY MR. MOSKOWITZ:

21  Q    Good morning, Ms. Kulnis.

22  A    Good morning.

23  Q    Ms. Kulnis, where are you currently employed?

24  A    JP Morgan Chase Bank.

25  Q    And what is your work address?

1    A      383 Madison Avenue in New York.

2    Q      Ms. Kulnis, can you briefly tell us your educational

3    background?

4    A      Sure.  I went to grade school at Our Lady of Mt.

5    Carmel.  High school at Holy Family Academy.  And then I got

6    my bachelor's degree in education at King College and later

7    my master's degree in education also at King College.

8    Q      And Ms. Kulnis, prior to joining JP Morgan, where were

9    you employed?

10   A      I was a special education teacher in Bayonne, New

11   Jersey.

12   Q      And how long did you do that for?

13   A      For five years.

14   Q      And how long have you been employed with JP Morgan?

15   A      In May it will be 26 years.

16   Q      Ms. Kulnis, what is your current position at JP

17   Morgan?

18   A      I'm an executive director in the special credits

19   group.

20   Q      And how long have you held this position?

21   A      Well, I've been an executive director for about two

22   years and I've been in the special credits group for

23   approximately ten years.

24   Q      And what position did you hold in the special credits

25   group before you were an executive director?

1    A      I was a vice president.

2    Q      Ms. Kulnis, can you describe what the special credits

3    group does?

4    A      Sure.  We're part of the credit risk management group

5    at JP Morgan and we serve a couple of different roles.

6    Sometimes we advise the line on credits and there are other

7    times that we manage credits that have a higher risk

8    profile.

9    Q      And Ms. Kulnis, what are your own personal

10    responsibilities as an executive director in the special

11    credits group?

12    A      I'm what you would call a portfolio manager.  I have a

13    group of loans that I have day-to-day responsibility for.

14    Q      And are all those loans for companies that are in

15    bankruptcy?

16    A      No, they're not.  Some are in bankruptcy, some are

17    out.

18    Q      And Ms. Kulnis, do you report to anyone in your

19    capacity as an executive director in the special credits

20    group?

21    A      Yes, I report to Ann Kurinskas.

22    Q      And what is her title?

23    A      She is a managing director.

24    Q      Ms. Kulnis, other than your time in the special

25    credits group, have you held any other positions at JP

1  Morgan?

2  A      Yes, I started out as a construction loan

3  administrator in Manufacturers Hanover which through many

4  mergers became JP Morgan and that was in the commercial real

5  estate group.  And then I went through the credit training

6  program and became a credit officer in the commercial real

7  estate group and moved into the workout group at

8  Manufacturers Hanover and then ultimately later, into the

9  special credits group at JP Morgan.

10  Q     Ms. Kulnis, fast forwarding to today, is there someone

11  at JP Morgan with principal day to day responsibility for

12  managing the Tribune matter?

13  A      Yes, that would be me.

14  Q      And Ms. Kulnis, when did special credits first get

15  involved in the Tribune matter?

16  A      We first got involved prior to the -- just prior to

17  the closing of step two in December of '07.

18  Q      And when did special credits begin to formally manage

19  the Tribune matter?

20  A      We took over management in December of '08, when the

21  company filed for bankruptcy.

22  Q      Ms. Kulnis, when did you first become aware that

23  Tribune was going to file for bankruptcy?

24  A      Well, in about November of '08, we met with the

25  company and they had concerns because their performance was

1    beginning to deteriorate and they had some payments due to

2    subordinated noteholders.  They were concerned that they

3    were potentially going to breach a covenant.  So we met with

4    them and we talked about a number of options.  We talked

5    about potentially amending the credit agreement to prevent

6    the default.  And we also talked about a potential

7    bankruptcy filing.  But we, in fact, didn't really know that

8    they were going to file for sure until a day or two before

9    they actually did.

10    Q    And Ms. Kulnis, do you have an understanding as to who

11    made the decision to file Tribune for bankruptcy?

12    A    It's my understanding that the Tribune board of

13    directors made that decision.

14    Q    Ms. Kulnis, after the bankruptcy filing, did there

15    come a time when JP Morgan sought a position on the

16    creditors' committee?

17    A    Yes.  A week or two after the company filed, there was

18    the first organizational meeting of the unsecured creditors'

19    committee down in Delaware and we came down here and sought

20    to have -- get a position on the committee.

21    Q    And was JP Morgan selected to serve on the committee?

22    A    Yes, we were.

23    Q    Ms. Kulnis, who are the chairs of the committee?

24    A    JP Morgan and Warner Brothers are co-chairs of the

25    committee.

1  Q     Ms. Kulnis, were you aware of any potential conflicts

2  of interest at that time associated with JP Morgan's role of

3  serving on the committee?

4  A     Yes, I knew that the committee was likely going to do

5  an investigation of potential claims against the LBO

6  lenders.

7  Q     So Ms. Kulnis, how did you deal with that potential

8  conflict of interest while serving on the committee?

9  A     Well, JP Morgan offered to recuse itself from any

10 discussions around the LBO claims or the investigation of

11 the LBO claims.

12 Q     And, in fact, did JP Morgan recuse itself from those

13 discussions?

14 A     Yes, we did.

15 Q     Let's just be specific for a couple of minutes, Ms.

16 Kulnis.  Has JP Morgan participated in any committee

17 deliberations regarding the merits of the LBO claims?

18 A     No, we have not.

19 Q     Has JP Morgan participated in the committee's

20 investigation of the LBO claims as a committee member?

21 A     As a committee member we have not.  JP Morgan as a

22 potential Defendant in the action was on the receiving end

23 of some discovery requests.

24 Q     We'll get to that in a minute.  Did JP Morgan have any

25 access to the committee's internal legal memoranda analyzing

1  the LBO claims?

2  A      No, we did not.

3  Q      Ms. Kulnis, were you involved in the selection of

4  counsel for the committee?

5  A      Yes.

6  Q      And who did the committee select?

7  A      Chadbourne & Parke.

8  Q      Did JP Morgan propose Chadbourne & Parke?

9  A      No, we didn't.

10  Q      Did there come a time where the company -- where the

11  committee retained additional counsel?

12  A      Yes.

13  Q      And who was that?

14  A      Zuckerman Spaeder.

15  Q      Do you have an understanding of what Zuckerman Spaeder

16  was retained to do?

17  A      It's my understanding that they were retained to

18  assist the committee in the investigation of the LBO claims.

19  Q      And Ms. Kulnis, were you involved in the decision to

20  retain Zuckerman Spaeder?

21  A      No, I wasn't.

22  Q      Were you recused from those discussions?

23  A      I was.

24  Q      Ms. Kulnis, do you have an understanding as to what,

25  if anything, the committee did to actually investigate the

1  LBO -- the potential LBO claims?

2  A    Well, it's my understanding they made discovery

3  requests, requested documents from a number of parties from

4  the LBO lenders, from the debtor, from some other parties.

5  And they also conducted some depositions.

6  Q    Now, Ms. Kulnis, you speak of document and discovery

7  request.  Was JP Morgan a recipient of those requests?

8  A    Yes, we were.

9  Q    And can you please describe JP Morgan's discovery

10  efforts in response to those committee investigation

11  requests?

12  A    We turned over lots of documents, probably a couple of

13  hundred thousand pages of documents to the committee.  And

14  as I recall, the committee deposed a couple of current

15  and/or former employees of JP Morgan.

16  Q    Did JP Morgan cooperate with the committee's

17  investigation?

18  A    Yes, we did.

19  Q    Ms. Kulnis, did there ever come a time where the

20  parties to these bankruptcy cases began to negotiate with

21  one another about the LBO related causes of action?

22  A    Yes.  In early January of 2010, I think it was, there

23  was a meeting at Chadbourne and it was what I think was the

24  first, you know, real negotiating session.

25  Q    And Ms. Kulnis, who participated in those discussions?

1  A    Oh, there were a lot of participants.  I remember

2  Chadbourne was there and certain members of the committee

3  were there, if not the whole committee.  JP Morgan, Angelo

4  Gordon, Oaktree was there.  I remember Law Debenture was

5  there and Centerbridge and I think the PHONES were there.

6  Q    Ms. Kulnis, can you generally describe the nature of

7  those discussions that occurred at that time?

8  A    Well, it's my recollection that the noteholders made a

9  presentation to the group describing their view of the LBO

10  claims.  The senior lenders made a presentation to the group

11  about our view of the value of the LBO claims.  And then

12  there was -- there came a time when there was I guess offers

13  made, Centerbridge made an offer to settle the claims for,

14  it's my recollection $975 million.  And then the senior

15  lenders offered $75 million to settle the claims.

16  Q    So the parties were far apart?

17  A    Yes, we were.

18  Q    Ms. Kulnis, what was the role of the debtors at that

19  time?

20  A    While the debtors were facilitating discussions

21  amongst the party, it's my recollection that they were

22  meeting individually with various parties and then with some

23  of us in groups.  And they were trying to encourage us to

24  meet with each other and trying to basically get us to come

25  closer together and to bridge that gap.

1   Q    Ms. Kulnis, what happened next in those discussions?

2   A    Well, after that meeting, the parties continued to

3   meet.  We met with the debtors.  The various groups of

4   senior lenders met a couple of times.  We met with

5   Centerbridge and ultimately in April of 2010, we reached an

6   agreement with Centerbridge on settlement of the LBO claims.

7   Q    And Ms. Kulnis, can you generally describe the terms

8   of that settlement?

9   A    It was a payment of $450 million to the senior

10  noteholders.  It settled steps 1, 2, and disgorgement.  And

11  it provided for a payment in full of the creditors at the

12  subsidiary and payment of, I think around $.32 or $.34 to

13  the parents at the -- to the unsecured creditors of the

14  parent.

15  Q    Ms. Kulnis was there a litigation trust component to

16  that settlement?

17  A    No.  As part of that settlement, all the claims were

18  settled.

19  Q    And Ms. Kulnis, can you describe the -- can you

20  identify the parties who supported that settlement?

21  A    JP Morgan and Angelo Gordon supported it.

22  Centerbridge and Law Debenture and the debtor and the

23  creditors' committee.

24  Q    And can you identify any parties who opposed to

25  that settlement?

1  A     Yes, Oaktree and a group of credit agreement lenders

2  who were part of the senior lend group opposed it.  And it's

3  my recollection that the PHONES opposed that as well.

4  Q     Ms. Kulnis, did you have an understanding of why

5  certain credit agreement lenders opposed the settlement?

6  A     Yes.  They thought that the payment of $450 million to

7  the bonds was too high a payment.  They didn't think the

8  claims were worth that much.  They were upset that it was

9  too high a payment.

10 Q     And, Ms. Kulnis, do you have an understanding of why

11 the PHONES opposed the settlement?

12 A     Well, there was no provision for any payment going to

13 the PHONES in this settlement, so they thought the

14 settlement was too low and that there should be some value

15 given to them.

16 Q     And Ms. Kulnis was this settlement ever embodied in a

17 plan of reorganization?

18 A     Yes, it was.

19 Q     And when was that?  Was that plan filed?

20 A     Yes, it was.

21 Q     This is the April plan?

22 A     That was the April plan.

23 Q     Okay.  Now, Ms. Kulnis, you mentioned a moment ago

24 that Oaktree and certain credit agreement lenders didn't

25 support the settlement.  Did JP Morgan take any steps to get

1  Oaktree to support the April plan?

2  A    Yes.  I spoke to them a number of times.  Had a number

3  of conversations with them.  I tried to convince them that

4  the 450 settlement was reasonable.  That it was the way to

5  get us quickly out of bankruptcy, but I was ultimately

6  unsuccessful in convincing them of that.

7  Q    Okay.  And leaving Oaktree aside, did JP Morgan speak

8  to other lenders about the April plan?

9  A    Yes, we did.  After the company filed its disclosure

10  statement, I called around to a number of senior lenders

11  like we normally do when there's an amendment to be approved

12  or there's a plan on the table that we're going to be asking

13  for a vote on.  I called around to a number of lenders to

14  try to get their support for the plan.

15  Q    And what was the result of all of those discussions?

16  A    Well, I felt pretty good that a lot of the lenders

17  supported the settlement, but frankly, I was still concerned

18  that Oaktree and their credit agreement lender group might

19  have a block.

20  Q    And were you ultimately successful in getting Oaktree

21  to support the April plan?

22  A    No, they never supported the April plan.

23  Q    Ms. Kulnis, were there any other significant

24  developments around the time of the filing of the April

25  plan?

1  A      Yes, the Court appointed an examiner.

2  Q      And do you know who that examiner was?

3  A      Ken Klee [ph].

4  Q      Ms. Kulnis, can you describe the nature of JP Morgan's

5  involvement in the examiner's investigation?

6  A      Well, I remember that we met with Mr. Klee a few

7  times.  We turned over some documents to him.  And I believe

8  he interviewed a number of current and former employees at

9  JP Morgan as part of that investigation.

10 Q      Did JP Morgan cooperate with the investigation of the

11 examiner?

12 A      We did.

13 Q      Ms. Kulnis, what happened next?

14 A      A couple of months later, I think it was in July of

15 2010, he issued a lengthy report.

16 Q      Do you recall how long?

17 A      Over a thousand pages, I think, yeah.

18 Q      And Ms. Kulnis, did you have the good fortune to read

19 that report?

20 A      I did, though I'll confess I didn't do it one sitting.

21 Q      Neither did I.  Ms. Kulnis, how if at all, did the

22 examiner's report impact the settlement embodied in the

23 April plan?

24 A      Well, it made it difficult to keep the April plan in

25 place.  A lot of lenders viewed Mr. Klee's findings with

1    respect to step one as sort of a vindication that step one

2    was good and, therefore, the settlement was too high.  So I

3    was starting to hear that a lot of lenders, you know, might

4    not be supporting the April settlement.

5              MR. HURLEY:  Your Honor, I just object and move

6    to strike, except to the extent counsel can establish a

7    foundation for that testimony.

8              MR. MOSKOWITZ:  Your Honor, I think that she just

9    -- in her testimony, she just indicated that these were her

10   discussions with lenders.

11             THE COURT:  I agree, overruled.

12   BY MR. MOSKOWITZ:

13   Q    Moving on.  Ms. Kulnis, you just talked about your

14   discussions with other lenders.  What was JP Morgan's own

15   view as to the impact of the examiner's report on the

16   settlement?

17   A    We also thought that given the findings on step one,

18   that it was likely that 450 was probably too high a price

19   for that settlement.

20   Q    Ms. Kulnis, did you have any conversations with

21   Centerbridge about whether the April plan could succeed in

22   light of the examiner's report?

23   A    Yes, I did.  I spoke to Viv Melwani at Centerbridge a

24   number of times.

25   Q    And what was the nature of those discussions?

1   A     Well, it was my impression that he was a little

2   nervous about the settlement.  He had a different view of

3   the examiner's findings on step one than I did.  But he

4   wanted to go ahead with the settlement and just to attach a

5   litigation trust with respect to the step two claims on top

6   of that settlement and to move forward.

7   Q     But he wanted the deal to stay in place with the

8   litigation trust component.  Is that your testimony?

9              MR. HURLEY:  Objection, leading, Your Honor.

10             THE COURT:  Sustained.

11             MR. MOSKOWITZ:  Did you have an understanding of

12  what Mr. Melwani's view was as to whether the settlement

13  should stay in place?

14             MR. HURLEY:  Objection, Your Honor.  I think if

15  the question is did Mr. Melwani tell you something about his

16  view, that's not an objectionable question, but whether she

17  had an understanding, I think we have to know what the basis

18  for understanding is.

19             MR. MOSKOWITZ:  I think the basis is her

20  discussion with Mr. Melwani.

21             MR. HURLEY:  It has to be established.

22             THE COURT:  I think Mr. Hurley made a good

23  suggestion.

24             MR. MOSKOWITZ:  Okay.

25  (Laughter)

1    MR. MOSKOWITZ:  Fair enough, Your Honor.

2  BY MR. MOSKOWITZ:

3  Q    Did you have discussions with Mr. Melwani?

4  A    I did.

5  Q    And in those discussions, did he indicate to you what

6  his views were with respect to the settlement?

7  A    Yes.  He told me that he wanted the settlement to go

8  forward.  He was concerned about whether Oaktree really did

9  have a block.  Did we think that the settlement would still

10 get approved?  And he wanted a litigation trust attached to

11 it, but he wanted essentially to just modify the plan, at a

12 litigation trust to it, and then go forward with that

13 settlement.

14 Q    And, Ms. Kulnis, did the deal stay in place following

15 the examiner's -- following the issuance of the examiner's

16 report?

17 A    No, it fell apart.

18 Q    And what happened, Ms. Kulnis?

19 A    Well, the company took certain actions and filed

20 certain plan supplements that we viewed as being in

21 violation of the settlement support agreement.  So Angelo

22 with -- Angelo Gordon withdrew their support and then

23 shortly thereafter, JP Morgan withdrew its support and the

24 deal fell apart.

25 Q    Ms. Kulnis, can you describe for the Court what

1  happened after JP Morgan and Angelo Gordon withdrew from the

2  settlement support agreement?

3  A    Well, new discussions arose around another potential

4  settlement with the bonds that was less than the April

5  settlement.  And there were discussions among the parties of

6  offering the bonds about $375 million in settlement of the

7  claims.

8  Q    And would JP Morgan have been supportive of a

9  settlement at that level?

10  A    Yes, we would have.

11  Q    And what ultimately happened with those discussions

12  about the settlement at 375?

13  A    Well, there were some stops and starts, but

14  ultimately, we couldn't get enough support.  It's my

15  recollection that the committee wasn't really onboard and it

16  didn't go anywhere.

17  Q    Did any plan get filed?

18  A    No, no plan was filed for that.

19  Q    Ms. Kulnis, did negotiations breakdown entirely at

20  that time?

21  A    No, there were some discussions.  I mean, we were

22  trying hard to try to find some sort of area of consensus

23  where the people would agree, where people would agree, the

24  notes and the senior lenders on what an appropriate

25  settlement would be.

1  Q      And what happened next?

2  A      The Court appointed Judge Gross as mediator in the

3  cases.

4          MR. MOSKOWITZ:  And, Your Honor, I'll waive the

5  red flag right now.  I'm going to ask a couple questions

6  about mediation.  I've conferred with counsel before the

7  examination.  I think that my questions won't be

8  objectionable, but I do want to at least note that for the

9  moment in terms of the questions I'm about to ask.

10          THE COURT:  Okay, then, Ms. Kulnis, I'll just ask

11  you to be particularly sensitive if you see motion from this

12  side --

13  (Laughter)

14          THE COURT:  -- hold your answer.

15          MS. KULNIS:  Yes, Your Honor.

16          THE COURT:  All right, thank you.

17  BY MR. MOSKOWITZ:

18  Q    Very well.  Ms. Kulnis, who participated in the

19  mediation?

20  A    It's my recollection that at the first mediation

21  session, all of the major constituents in the cases were

22  there, JP Morgan, Angelo Gordon, and Oaktree were there, the

23  committee was there, the bridge lenders, the debtor.  There

24  was a group of step one only credit agreement lenders there,

25  and Aurelius was there.

1  Q     Now, Ms. Kulnis, you just mentioned Aurelius.  When

2  did Aurelius become an active participant in these

3  bankruptcy cases to your knowledge?

4  A     It's my recollection that after the 450 settlement

5  fell apart, sometimes after that, Aurelius bought, I believe

6  all of Centerbridge's debt and then they became more active

7  in the cases.

8  Q     Now, Ms. Kulnis, during the mediation sessions that

9  you just described, did you on behalf of JP Morgan, meet

10  with representatives from Aurelius?

11          MR. HURLEY:  Objection, Your Honor.  Your Honor,

12  obviously as you know, we haven't been allowed to inquire in

13  discovery about what happened at the mediation.  There

14  hasn't been any disclosure of substantive communications.

15  So to the extent the question elicits whether there was a

16  particular conversation and we're not allowed to explore

17  whether that conversation was in any sense substantive or in

18  any other way material to the issues that are being raised

19  on this in this confirmation hearing, we think it's

20  inappropriate for that conversation to be permitted and the

21  answer to be allowed.

22          THE COURT:  Well, so far the question could call

23  for just a yes or no answer.  It's the next question I know

24  that you may be concerned about or if the witness goes to

25  the next questions without it having been asked.

1        MR. HURLEY:  We're actually somewhat concerned

2   about even just the yes or no answer, Your Honor.

3        THE COURT:  Tell me why.

4        MR. HURLEY:  To the extent that it suggests that

5   there may have been substantive conversations and we're

6   unable to demonstrate for Your Honor whether that's true or

7   not.

8        THE COURT:  I don't think whether there was a

9   meeting or not falls within the confidentiality order.  So

10  you may answer that question, Ms. Kulnis yes or no.

11  Remember the question?

12        MS. KULNIS:  Can you please repeat it?

13        MR. MOSKOWITZ:  During those mediation sessions,

14  did you, Ms. Kulnis on behalf of JP Morgan, meet with

15  representatives from Aurelius?

16        MS. KULNIS:  Yes, we did.

17        MR. MOSKOWITZ:  And I don't know if this is the

18  next question Your Honor had in mind, but I'll try to be

19  careful.  The question is simply this.  Did you meet with

20  them on more than one occasion?

21        MR. HURLEY:  Same objection.

22        THE COURT:  Overruled.

23        MS. KULNIS:  Yes, we met with them a couple of

24  times.

25  BY MR. MOSKOWITZ:

1  Q    Ms. Kulnis was a settlement reached as a result of the

2  mediation?

3  A    There were a couple of settlements reached.

4  Q    Let's take them one a time.  Who were the parties to

5  the first settlement that was reached as a result of

6  mediation?

7  A    The debtors, Angelo Gordon, and Oaktree.

8  Q    And Ms. Kulnis was that settlement reduced to a

9  writing in the first instance?

10 A    Yes, there was a term sheet.

11 Q    Ms. Kulnis, let me show you a document that is

12 identified as DCL Exhibit 383 and it's the first item in

13 your binder.  Let me know when you have that.

14 A    Yes.

15 Q    Ms. Kulnis is this a copy of the term sheet that you

16 just referred to in your testimony?

17 A    It is.

18 Q    Okay.  Ms. Kulnis, can you describe generally the

19 settlement consideration provided to the non-LBO creditors

20 under this term sheet?

21 A    It provided a payment of $300 million in cash to the

22 senior notes and a payment to the unsecured creditors of I

23 believe 50 -- unsecured creditors of the subsidiary of, I

24 believe 50 percent if they approved the plan.  And to the

25 unsecured creditors of the parent roughly 23 or 24 cents.

1  Q    Ms. Kulnis was there a litigation trust component of

2  the settlement?

3  A    Yes, there was.  And all the claims not settled by

4  this term sheet were put into a litigation trust and the

5  proceeds of that were split between the -- pro-rata between

6  the noteholders and the senior loans such that roughly 85

7  percent of the proceeds beginning with dollar one went to

8  the senior loans and roughly 15 percent went to the

9  noteholders.

10 Q    And Ms. Kulnis, you say all the claims not settled,

11 which claims were settled and which claims were not settled

12 as a result of the settlement?

13 A    The only claim settled by this were the step one LBO

14 claims.

15 Q    Were the step two claims settled?

16 A    No, they weren't.

17 Q    Ms. Kulnis, did JP Morgan support the settlement that

18 was reflected in this September term sheet?

19 A    We did not.

20 Q    and why not?

21 A    Well, we always thought it made sense to settle all of

22 the claims, step one, step two, and disgorgement.  We also

23 felt that this term sheet didn't have very much support.  It

24 didn't have broad support.  We wanted the creditors'

25 committee onboard, we wanted the bridge onboard, and we

1   wanted the noteholders onboard for a settlement.

2   Q      Ms. Kulnis were any additional settlements reached

3   after this first settlement?

4   A      Yes, there were two more.

5   Q      Okay.  Let's go to the next settlement, Ms. Kulnis.

6   Who were the parties to the second settlement?

7   A      It was JP Morgan, Angelo, Oaktree -- I'm sorry, JP

8   Morgan, Angelo Gordon, and Oaktree, the debtors, and the

9   creditors' committee.

10  Q      Now Ms. Kulnis, was that settlement reduced to a

11  writing in the first instance?

12  A      Yes.  There was a term sheet.

13  Q      And, Ms. Kulnis, let me ask you to turn to the second

14  exhibit in your binder.  This is a document marked as --

15  identified as DCL Exhibit 384.  Let me know when you've got

16  that.

17  A      Yeah, I have it.

18  Q      You've got that in front of you?

19  A      Yes.

20  Q      Ms. Kulnis is the term sheet that you just referred to

21  in your testimony?

22  A      Yes, it is.

23  Q      Okay.  And we'll talk about the details of this

24  settlement in a minute.  But before we get there, Ms. Kulnis

25  were there any additional settlements reached as a result of

1  the mediation?

2  A    Yes.  A few weeks or months later, there was a

3  settlement reached with the bridge lenders.

4  Q    Okay.  And do you have a general understanding of what

5  that settlement provided?

6  A    It's my recollection that they're -- they paid an

7  additional $11 million in cash to the noteholders to settle

8  those claims.

9  Q    Okay.  Ms. Kulnis, returning to the settlement we were

10  just talking about a moment ago, did the debtors file a plan

11  incorporating the settlements that were reached in

12  mediation?

13  A    Yes.  That's the DCL plan.

14  Q    That's the DCL plan that's on file with the Court?

15  A    Yes.

16  Q    Okay.  And, Ms. Kulnis, can you describe the basic

17  terms of the settlement embodied in the DCL plan?

18  A    Well, it settles step one, step two, and disgorgement.

19  It provides a cash payment of $420 million to the senior

20  notes, as well as, the majority of the litigation --

21  proceeds of the litigation trust.  They now get the first

22  $90 million in proceeds from the litigation trust.  And then

23  after repayment of the loan of around $20 million, they

24  split then the remaining proceeds of the litigation trust, I

25  believe it's roughly 65 percent to the senior notes and 35

1  percent to the senior lenders.  And then also the GUCs at

2  the subsidiaries get paid in full and the general unsecured

3  creditors at the parent get around 33 cents.

4  Q    And did you mention also a disgorgement component of

5  the settlement?

6  A    Yeah, disgorgement is settled for a payment of $120

7  million to the senior notes.

8  Q    Ms. Kulnis, does JP Morgan support the settlement that

9  is embodied in the DCL plan?

10  A    We do support it.  I think it's a little bit rich, but

11  we do support it.  We think that it's the best way to get

12  the company out of bankruptcy.

13  Q    Ms. Kulnis, I think there's been a lot of testimony at

14  this point about comparing one settlement to another.  There

15  could be some more of that on cross, but Ms. Kulnis, let me

16  ask you then, starting with the April plan, do you believe

17  that the settlement in the DCL plan provides more value to

18  the non-LBO creditors than the settlement embodied in the

19  April plan?

20  A    Yes, I think it does.  It provides them with a shot at

21  getting a big recovery from the litigation trust so they

22  have the potential to get a much larger recovery in my view,

23  in the litigation trust.  Whereas, in the April plan, there

24  was no litigation trust.

25           MR. HURLEY:  Your Honor, objection and move to

1  strike the testimony about of whether or not there would be

2  a lot of recovery associated with the litigation trust.  The

3  witnesses isn't a lawyer.  There's no foundation for having

4  a view about whether there's any value in that litigation

5  trust at all.  So I think that's inappropriate testimony.

6           THE COURT:  Any response?

7           MR. MOSKOWITZ:  I think I can get the witness to

8  establish the basis for her opinion that there's great value

9  in the litigation trust.

10           THE COURT:  All right.

11           MR. MOSKOWITZ:  Or at least to found that

12  statement.  Ms. Kulnis, have you ever heard -- do you have

13  an understanding of what the view is of whether -- of the

14  noteholders as to the value of the litigation trust?

15           THE COURT:  You may answer.

16           MS. KULNIS:  Okay, thank you.  From what I've

17  read in their writings and what I've heard them say in

18  Court, it's my understanding that they place great value on

19  that litigation trust.  They think those claims are really

20  valuable.

21  BY MR. MOSKOWITZ:

22  Q    Okay.  Now, Ms. Kulnis, let's move to the September

23  term sheet.  How would you compare the treatment of the non-

24  LBO creditors under the September term sheet to the

25  settlement in the DCL plan?

1  A    Well, it's not really fair to compare the two.

2  They're very different.  The September term sheet didn't

3  have a lot of support and in my view, was only a partial

4  settlement.  But in the October term sheet which is the

5  second one, the senior noteholders get significantly more

6  recovery than they would have in the first term sheet.

7  Q    And can you elaborate, please?

8  A    They get -- well because more causes of action are

9  settled, they get a larger upfront cash payment and then

10 they have a larger piece of the litigation trust in the

11 second term sheet.

12 Q    And when you --

13 A    I'm sorry, I'm sorry, they don't have to share.  In

14 the first term sheet, dollar one they had to share with the

15 senior lenders.  In the second term sheet, they don't, they

16 get the first $90 million just to themselves.

17 Q    Is there a difference in general unsecured creditor

18 recovery as between the two settlements?

19 A    Yes.  It's my recollection that the second settlement

20 provided roughly an additional $70 million to the GUCs at

21 the parent and the subsidiary.

22 Q    And is there a difference in disgorgement recoveries

23 as between the two settlements?

24 A    Yes.  There's $120 million paid in settlement of

25 disgorgement in the second term sheet and that wasn't

1  settled in the first one.

2  Q    Ms. Kulnis, you testified a moment ago that the

3  September term sheet did not settle step two avoidance

4  claims.  Do you recall that testimony?

5  A    Yes.

6  Q    Ms. Kulnis, how did the -- how much did the September

7  term sheet reserve for step two avoidance claims?

8  A    There was no reserve set up as part of that term

9  sheet.

10  Q    And why wasn't there a reserve for the step two claims

11  in the September term sheet?

12  A    Well, I believe the avoidance of the step two claims

13  really doesn't bring any additional value to the senior

14  noteholders.  If step two went away, the size of the step

15  one claims alone soaks up most of the value because the step

16  one lenders have guarantees.  It soaks up most of the value

17  in the enterprise.  So doing away with step two doesn't

18  really do much for the noteholders.

19  Q    And Ms. Kulnis, I've asked you a whole serious of

20  questions about the different components of each deal, but

21  let me ask you this.  When the deal was being negotiated,

22  did people think about the deal in those terms?

23  A    No, we looked at it as a package.  I think the

24  committee considered it a package.  We considered it a

25  package.  We never would have agreed for instance to pay

1  $120 million for disgorgement if it wasn't part of a broader

2  settlement.  We looked at it as part of an entire package

3  settling all the claims.

4  Q    And Ms. Kulnis, just a couple more questions about the

5  DCL plan.  Does the DCL plan include releases for step one

6  selling shareholders?

7  A    Yes, it does.

8  Q    And Ms. Kulnis, did JP Morgan seek to include those

9  releases in the DCL plan?

10  A    No, we did not.

11  Q    Would JPM have done a deal without those releases?

12  A    Yes, we would.

13  Q    Ms. Kulnis, there's been some testimony in these

14  proceedings so far about natural recovery.  Do you have an

15  understanding of what the words natural recovery means?

16  A    Yes.  It's the recovery afforded to the parties

17  without any consideration of the LBO claims.

18  Q    Ms. Kulnis, do you know the natural recovery of the

19  noteholders?

20  A    I think it's around $65 to $70 million.

21  Q    And Ms. Kulnis, what would happen to the natural

22  recovery of the noteholders if the enterprise value of the

23  debtors goes up?

24  A    Almost nothing.  It really doesn't increase very much

25  when enterprise value increases because the value really is

1   in the subsidiaries and the senior loans have the

2   guarantees.  So if the senior loan claims are good, not much

3   -- no value really rises to the parent.  It's my

4   recollection that there's one small asset at the parent that

5   would increase in value if the enterprise value increased,

6   but otherwise, the senior loans would get the benefit of the

7   rise in enterprise value because of the guarantees.

8   Q     And so just help me with one concrete hypothetical.

9   If the value of the debtors went up by a $1 billion, how

10  much would the value -- the natural recovery of the

11  noteholders rise, $1 billion?

12          MR. HURLEY:  Objection, Your Honor.

13          THE COURT:  Basis?

14          MR. HURLEY:  It's a hypothetical.

15          THE COURT:  Certainly -- it certainly is.

16          MR. HURLEY:  You can't be concrete with a

17  hypothetical.

18          THE COURT:  Mr. Moskowitz?

19          MR. MOSKOWITZ:  I'm not aware of a blanket

20  preclusion against hypothetical's.  I also think it's a

21  concrete example of -- that goes to the core of arguments

22  that they are making in these cases.

23          THE COURT:  Well, maybe you ought to put it all

24  the way into the concrete, sustained.

25          MR. MOSKOWITZ:  I'm sorry, Your Honor --

1        THE COURT:  Put it --

2        MR. MOSKOWITZ:  Make it concrete?

3        THE COURT:  Yeah.

4        MR. MOSKOWITZ:  Got it.

5        THE COURT:  I mean, you're close enough.

6  (Laughter)

7        THE COURT:  You don't have much farther to go to

8  get there.

9        MR. MOSKOWITZ:  I'll try to make that leap, Your

10  Honor.

11  BY MR. MOSKOWITZ:

12  Q    If the value of the debtors rose by $1 billion, do you

13  know what the value of the noteholder's natural recovery

14  would be?

15  A    The increase in value to the noteholders if the value

16  of the enterprise went up $1 billion is minimal.  I think

17  it's less than $5 million is my recollection.

18  Q    Ms. Kulnis, have you ever been involved in other

19  settlement negotiations besides for the Tribune matter?

20  A    I have.

21  Q    Have those all been in the context of bankruptcy?

22  A    Some in bankruptcy, some outside of it.

23  Q    Ms. Kulnis, based on your experience, how would you

24  compare the Tribune settlement negotiations to other

25  settlement negotiations in which you've been involved?

1 A    These have been much more difficult.  They've taken a

2 lot longer.  The parties have been much more contentious

3 than any other settlements I've had the pleasure of

4 participating in.

5 Q    And Ms. Kulnis, why is that to your knowledge?

6 A    Well, I think the parties feel really strongly about

7 their views.  They're very entrenched.  We started out very

8 far apart in negotiations.  And as time has gone on and the

9 debt has traded and new creditors come into the picture, the

10 dynamic has changed and that's made it very difficult.

11 Q    Ms. Kulnis were there ever times during this long

12 tortured path that you thought that a settlement would not

13 be reached?

14 A    Yeah, there were a couple of times when I was really

15 concerned we weren't going to reach settlement.

16 Q    And Ms. Kulnis are you satisfied with the current

17 settlement?

18 A    Well, as I said, I think it's a little rich in terms

19 of the payment to the notes, but we stretched to get there

20 and ultimately, I think it's the best way to get the company

21 out of bankruptcy right now.

22        MR. MOSKOWITZ:  Thank you, Ms. Kulnis.

23        THE COURT:  Cross examination?  Mr. Hurley, any

24 estimate of how much time you will need for cross?

25        MR. HURLEY:  I think somewhere in the 15, 20

1  minute range.

2            THE COURT:  Okay.

3            MR. HURLEY:  Your Honor, I have some binders, if

4  I could approach, please?

5            THE COURT:  Certainly.  Thank you.

6            MR. HURLEY:  Good morning, Ms. Kulnis.

7            MS. KULNIS:  Good morning.

8            MR. HURLEY:  My name is Mitch Hurley.  I'm with

9  Akin Gump.  We represent Aurelius.  Ms. Kulnis, I want to

10  start just talking briefly about the litigation trust issue

11  that came up in your direct.  You mention that the basis for

12  your belief that the litigation trust claims were valuable

13  is that you were here in Court and you heard testimony

14  concerning whether or not my client thought those claims

15  were valuable.  Do you remember that?

16            MR. MOSKOWITZ:  Objection, misstates the

17  testimony, Your Honor.  I do not believe she said that.

18            THE COURT:  Well, you may answer the question if

19  you are able.

20            MS. KULNIS:  I wasn't actually -- I didn't hear

21  that testimony in Court.  I think technically I had dialed

22  into some calls, but also from reading the pleadings I got

23  the -- I arrived at the view that Aurelius thought that

24  these claims were really valuable.

25                    CROSS EXAMINATION

1  BY MR. HURLEY:

2  Q     Do you have an understanding that Aurelius did a model

3  where it attempted to determine the expected value of

4  certain claims?

5  A     Yes, I've heard about that.

6  Q     Okay.  And were you present or listening to the

7  testimony yesterday that the expected value of those claims

8  was in the neighborhood of $1.8 billion?

9  A     Yes.

10  Q     Okay.  Is that part of what you based your view on

11  that the litigation trust claims were valuable?

12  A     No, frankly, it's not.

13  Q     Okay.  You understand that the valuation that Aurelius

14  has done of the claims relates solely to the claims that the

15  DCL plan proponents propose to release?

16  A     I didn't know that, but that, I guess that that makes

17  sense, I guess.

18  Q     Okay.  You mentioned you're part of a special credits

19  group, right?

20  A     Yes.

21  Q     And the special credits group assists credit officers

22  and manages various distressed credits.  Correct?

23  A     Yes.

24  Q     And it's always distressed credits where the special

25  credit unit gets involved.  Isn't that right?

1  A      No, that's not true at all.

2  Q      Okay.  Do you remember that your deposition was taken

3  on February 16, 2011?

4  A      Yes.

5  Q      Okay.  And you understood in your deposition that you

6  were under oath?

7  A      Yes.

8  Q      Just as you are today?

9  A      Yes.

10  Q      Okay.  Can you do MK-03, please.  We have a video.

11  A      I don't look very good in that video.

12  (Laughter)

13          MR. HURLEY:  Can you see it?

14          MS. KULNIS:  Yes, I can.

15          MR. HURLEY:  Okay.

16  (Video playback as follows:)

17      Q      What does the Special Credits Group do at JPM?

18      A      We assist and manage -- we assist the credit

19      officers and manage various distressed credits.

20      Q      When you say "we assist the credit officers," is

21      that in connection with distressed credits?

22      A      Yes, we can either advise the line, so to speak,

23      on distressed credits or sometimes we manage credits

24      ourselves, but always on distressed credits.

25  (End of video playback.)

1  BY MR. HURLEY:

2  Q     Now, ma'am, the special credits unit became involved

3  in Tribune as you said shortly before step two closed.  Is

4  that right?

5  A     That's correct.

6  Q     And I guess it became involved sometime in November?

7  A     I don't remember if it was November or December.

8  Q     Okay.  I thought you testified on direct that you were

9  involved in discussions concerning Tribune in November.

10  A     We were involved in November of '08 with respect to

11  the bankruptcy filing.  We first became involved in -- the

12  first time I ever, you know, heard about Tribune or got

13  involved in discussions around Tribune were before the step

14  two close.  I don't remember if it was November of December.

15  Q     Okay.  And step two closed on or -- or step two closed

16  on December 20, 2007, right?

17  A     I believe that's true.

18  Q     You were assigned to the Tribune matter by Jeff Sell?

19  A     Yes.

20  Q     And Mr. Sell at the time was the head of the special

21  credit unit?

22  A     Yes.

23  Q     And Mr. Sell instructed you to get in touch with

24  someone named Mr. Kowalczuk is that right?

25  A     Yes.

1  Q    Mr. Kowalczuk was the banker on the Tribune deal?

2  A    He was the credit risk banker, yes.

3  Q    Okay.  And Mr. Sell instructed you to get in touch

4  with Mr. Kowalczuk to get up to speed on Tribune.  Isn't

5  that right?

6  A    Yes.

7  Q    And you did so?

8  A    Yes.

9  Q    Who is Raj Kapadia?

10  A    He's the managing director in the syndicated and

11  leveraged finance group.

12  Q    And Mr. Kapadia had an involvement with Tribune as

13  well.  Is that right?

14  A    Yes.

15  Q    And what was his role?

16  A    He -- I think the syndicated and leveraged finance is

17  handling the syndications of the loans so when the loan was,

18  you know, closed, he was -- he had contact with the company

19  and he dealt with investors who were potentially going to

20  buy into the Tribune debt.

21  Q    Okay.  JP Morgan has an internal risk rating system

22  for credits.  Isn't that right?

23  A    Yes.

24  Q    And the rating system ranges from one to ten?

25  A    Yes.

1    Q      Ten being the worst, one being the best?

2    A      Yes.

3    Q      And the JPM credit policy requires the special credit

4    unit to get involved when a credit gets to a rating of six

5    or worse.  Is that right?

6    A      I believe that's true in the investment bank, yes.

7    Q      And when a credit gets to a seven, it becomes a

8    criticized credit.  Is that right?

9    A      I believe that's true, yes.

10   Q      And when it becomes a criticized credit, there are

11   reporting requirements that JP Morgan then has to fulfill.

12   Is that your understanding?

13   A      Yes.

14   Q      So it has to report publicly with respect to those

15   debts or those credits?

16   A      I think so, yes.

17   Q      Okay.  Now when you became involved with Tribune, do

18   you recall what the rating was assigned to the Tribune

19   credit?

20   A      No, I don't recall.

21   Q      Okay.  In the binder that I've handed you there is a

22   document that is Noteholder Exhibit 670.  I think it's --

23   should be the first page.

24   A      I see, yes.

25   Q      Okay.  And ma'am, this document is an email chain.

1  And I want to start by referring your attention to the

2  second page of NH 670.  And you'll see at the bottom there

3  is an email from Mr. Kowalczuk dated December 21, 2007, 2:28

4  p.m.  Do you see where I am?

5  A     Yes.  Oh, well, I'm sorry, what's the time on that?

6  Q     2:28 p.m.

7  A     Yes.

8  Q     Okay.  You with me?  Now Mr. Kowalczuk is forwarding

9  two you an email that was sent on August 14.  Correct, of

10 the same year?

11 A     That's what it looks like, yes.

12 Q     Okay.  And the email that he's forwarding to you on

13 August 14 is from himself to some other JP Morgan employees.

14 Is that right?

15 A     Yes.

16 Q     Okay.  That email reads Sheila or "Stella, please

17 downgrade the ratings from Tribune from a 5- to a 6+.  The

18 downgrade is a result of the most recent quarterly results

19 that are off the bank plan the company provided in April.

20 In addition, the company has provided us with a revised

21 projection for Q3 and for the full year '07, both of which

22 are down from the original plan.  Tim, please put the

23 company on the vulnerable list as well."  Do you see that?

24 A     Yes.

25 Q     And the vulnerable list is a list of credits where the

1  credit was vulnerable to a further downgrade.  Is that

2  right?

3  A     Yes, generally.

4  Q     Okay.  And in Mr. Kowalczuk's email to you in which

5  he's forwarding this earlier 8/14 email, he writes and this

6  is on 12/21/2007, which is the day after step two closed,

7  right?

8  A     Right.

9  Q     Mr. Kowalczuk writes to you, "I wanted to put the Trib

10  downgrade through, but wanted to check with you first.  The

11  current ratings Jeff and I had set" --  And you understand

12  that was Jeff Sell he was referring to?

13  A     Yes.

14  Q     Head of the special credits unit.  "The current

15  ratings Jeff and I have set were 5- post-step one and 6-

16  post-step two. In July we downgraded Trib to a 6+ when they

17  revised their plan.  See below."  Does that refresh your

18  recollection as to what the JP Morgan risk rating was of

19  Tribune when you became involved?  Was it a 6+?

20  A     You know, I don't know.  He says he wants to put it

21  -- in July, we downgraded to 6+.  It seems like it is.  I

22  just really don't recall.

23  Q     Mr. Kowalczuk continues in his 12/21 email the day

24  after step two closed and writes, "I thought that a risk

25  Grade 7 was correct now with step two closed.  Can you let

1  me know if you agree or want to check with Jeff."  Do you

2  see that?

3  A     Yes.

4  Q     And again, that's a reference to Mr. Sell.  Correct?

5  A     Yes.

6  Q     Okay.  And 7 is the grade where it becomes a

7  criticized risk and you have to start reporting.  Isn't that

8  right?

9  A     I believe so, yes.

10 Q     Okay.  Now you write back on the same day, "Still out

11 sick.  Do you really think 7 is right with this much

12 leverage and given that we were debating solvency?  I will

13 talk to Jeff, but I think he's out next week."  Do you see

14 that?

15 A     Yes.

16 Q     Okay.  Now you testified in your deposition that you

17 didn't remember writing this email.  Do you remember that?

18 A     Yes.

19 Q     Okay.  But you'd agree that a fair interpretation of

20 that email, ma'am, is that you were suggesting that seven

21 might actually be too good a rating for this debt as of

22 12/21/07?

23            MR. MOSKOWITZ:  Objection.

24            THE COURT:  Basis?

25            MR. MOSKOWITZ:  There's no recollection of the

1  email.  He's asking her to speculate as to what it might

2  mean.

3            THE COURT:  Overruled.  You may answer if you are

4  able.

5            MS. KULNIS:  You know, I think I said on my

6  deposition, I don't remember what I meant by this.  I really

7  don't remember this, you know.  It was the end of the year.

8  It was kind of crazy time in the economic cycle.  A lot of

9  stuff was going on.  I don't really remember this particular

10  downgrade or discussion about a downgrade.

11            MR. HURLEY:  Can you please play MK-08?

12  (Video playback as follows:)

13      Q    You respond to Mr. Kowalczuk on December 21,

14      2007, and you say, "Do you really think seven is right

15      with this much leverage and given that we were debating

16      solvency?"  And then you go on to say, "I will talk to

17      Jeff, but I think he's out next week."  The way I read

18      this is to say that something about the -- that "with

19      this much leverage" means that you're saying seven may

20      be too -- too good of a rating because there's so much

21      leverage.  Is that -- does that seem like a correct

22      interpretation in looking at it now?

23            UNKNOWN:  Object to the form of the question.  If

24      you -- go ahead.

25            WITNESS:  That's one way that it could be

1  interpreted.  I honestly don't know what I meant by

2  that in this e-mail.

3  (End of video playback.)

4  BY MR. HURLEY:

5  Q    And one reason that you gave for the downgrade in your

6  email is that we were debating solvency.  Do you see that in

7  the email?

8  A    Um-hum, yes.

9  Q    Okay.  And it's no secret that prior to step two

10  closing, the underwriters including personnel from JP

11  Morgan, were debating whether the company was solvent.

12  Isn't that right?

13  A    It's no secret that we were concerned about this

14  company's solvency, yes.

15  Q    Okay.  You were involved in some of those

16  conversations.  Correct?

17  A    Maybe one or two, but I had just become involved in

18  the case and I don't really have a strong recollection of

19  them.

20  Q    Mr. Kowalczuk was involved in some of those

21  conversations with you though wasn't he?

22  A    I think he probably was.

23  Q    And Mr. Kapadia?

24  A    I think probably, as well as, counsel.

25  Q    Okay.  And some other people from other underwriting

1  institutions as well were involved in those conversations

2  about whether the company was solvent before step two

3  closed.  Isn't that right?

4  A    I think I participated in one discussion to the best

5  of my recollection, with people from other institutions

6  around solvency.

7  Q    Okay.  And that was before step two closed, right?

8  A    Yes.

9  Q    Now to -- let's see.  The underwriters retained a

10 company called Murray Devine to look at the issue of

11 solvency, didn't they?

12 A    I think maybe counsel for the underwriters retained

13 him, but yes.

14 Q    Okay.  Was it your understanding that Murray Devine,

15 whether retained by counsel or otherwise, was on behalf of

16 the underwriters, assessing whether or not the company was

17 solvent before step two closed, right?

18 A    I don't know that they were assessing whether the

19 company was solvent.  I think that they were looking at the

20 VRC's solvency work.  I'm not sure that they did an

21 independent review of the company's solvency.

22 Q    They were doing some work around the solvency issue on

23 behalf of the underwriters.  Isn't that right?

24           MR. MOSKOWITZ:  Objection, Your Honor.

25           THE COURT:  Basis?

1    MR. MOSKOWITZ:  Beyond the scope of the direct

2  testimony.  I think well beyond.

3    THE COURT:  You may answer if you're able.

4    MS. KULNIS:  As I said, I think they were working

5  on behalf of the underwriters looking at the VRC solvency

6  opinion and trying to help us work through it.

7    MR. HURLEY:  And to your knowledge, Murray Devine

8  never reached a conclusion about solvency.  Is that right?

9    MR. MOSKOWITZ:  Objection, Your Honor.  I just

10  want to caution the witness not to divulge any

11  communications that she may have had with counsel on the

12  subject.  That's one caution for the witness.

13    THE COURT:  All right.  Ms. Kulnis, you

14  understand that?

15    MS. KULNIS:  Yes.

16    THE COURT:  All right.  You may answer

17  accordingly, if you're able.

18    MS. KULNIS:  You know, I only remember talking to

19  him about or hearing from Murray Devine on the VRC solvency

20  opinion.  I don't remember having any discussions or if, in

21  fact, he, Murray Devine, they reached their own conclusion

22  about solvency.

23  BY MR. HURLEY:

24  Q    So you have no recollection one way or the other as to

25  whether Murray Devine reached a conclusion about solvency?

1  A     Yeah, I don't recall.

2  Q     Okay.  Now returning to the exhibit we were looking at

3  before, Ms. Kulnis which is NH-670 and it's the first

4  document in your binder.  You write back -- or I'm sorry.

5  You finished your 12/21 email to Mr. Kowalczuk and you say,

6  "I suppose we can revise it in the new year."  Do you see

7  that?

8  A     Yes.

9  Q     Okay.  And that's a reference to revising downward the

10 JP Morgan rating of the Tribune credit.  Correct?

11 A     I think it's revising the risk rating.  I'm not -- it

12 seems like I'm saying revise it downward here.

13 Q     Okay.  And Mr. Kowalczuk writes back, "Okay, but I

14 think it would be better to figure it out as soon as

15 possible.  I hope you feel better."  And you respond, it's

16 all in the same day.  You respond at 5:11 p.m.  "I agree.

17 We don't want to be downgrading a week into the credit.

18 I'll reach out to Jeff."  Do you see that?

19 A     Yes.

20 Q     And again, that's a reference to Mr. Sell, isn't it?

21 A     Yes.

22 Q     Okay.  Now you don't remember whether, in fact, you

23 ever did reach out to Mr. Sell is in this regard.  Isn't

24 that right?

25 A     I don't remember.

1  Q     Okay.  So if you'd return to the first email by

2  chronology, the last email on the Exhibit 814.

3  A     Yes.

4  Q     And the downgrade that's discussed in 814 is more than

5  four months before step two closed, right?

6  A     Yes.

7  Q     I'm going to ask you some questions now, Ms. Kulnis

8  about your involvement in the negotiation of the

9  settlements.  Obviously, you're aware that these cases

10  involve potential causes of action arising out of the 2007

11  leverage buyout at Tribune, right?

12  A     Yes.

13  Q     Okay.  And you know JPM is a Defendant in those claims

14  that were filed by the committee.

15  A     Yes.

16  Q     You understand that as well?

17  A     Yes.

18  Q     Okay.  And I think you testified on direct that you

19  were involved in the negotiations throughout JP Morgan's

20  involvement, you also were involved in the negotiations of

21  the settlement.  Is that right?

22  A     Yes.

23  Q     Okay.

24  A     There were brief periods when I was on vacation, but

25  generally, yes.

1   Q      Other than when you were on vacation, you were

2   involved on behalf of JP Morgan throughout the negotiations.

3   Correct?

4   A      Of which settlement are you talking about?

5   Q      I think -- I understood your testimony on direct to

6   mean that you were involved through all of the discussions

7   with respect to all the various iterations, but if I'm

8   mistaken, you can tell me.

9   A      I wasn't terribly involved in the discussions around

10  what we call the 375 plan because I was really on vacation

11  then, but generally, with respect to the 450 and the other

12  plan, and the two that became plans, I was involved in

13  those.

14  Q      Um-hum.  And you know that the unsecured creditors'

15  committee filed a complaint asserting the LBO causes of

16  action, right?

17  A      Yes.

18  Q      Okay.  And the unsecured creditors' committee is the

19  Plaintiff in that complaint?

20  A      Yes.

21  Q      Now during this entire period of time that you were

22  involved in negotiations, isn't it true that the unsecured

23  creditors' committee never told you its view of the merits

24  of the LBO causes of action?

25  A      I think that's right.  I think that's right.  I never

1  participated in a discussion with them to the best of my

2  recollection about the merits of the causes of action.

3  Q    And the unsecured creditors' committee never conveyed

4  to you what it thought a fair return to the noteholders

5  should be, isn't that also right?

6  A    Well, when they supported the plan, I took that to

7  mean that they thought that that was a fair return to all

8  creditors.

9  Q    When they accepted the deal, but other than when they

10 accepted the deal, UCC never conveyed to you what they

11 thought a fair return to the noteholders would be, isn't

12 that right?

13 A    I don't know.  We had some discussions in mediation

14 around, you know, topics that I want to be careful not to

15 divulge because they're in mediation.

16 Q    Let's set aside any communications you might have had

17 in mediation.  Other than in mediation during the period of

18 time that you were involved in these settlement negotiations

19 outside the mediation, isn't it true that the unsecured

20 creditors' committee never conveyed to you what it thought a

21 fair return to the noteholders would be?

22 A    Well, the only time outside of mediation we had

23 discussions with the creditors' committee was around the 450

24 plan is my recollection.  And they didn't come to us with a

25 number.  We had a number of negotiations with them, but I

1  don't recall saying, you know, this particular number would

2  be a fair return.  I remember they were trying to get more

3  for the noteholders.

4         MR. HURLEY:  Music 16, please.

5  (Video playback as follows:)

6      Q    In negotiating that settlement, did the

7      creditors' committee convey what they thought a fair

8      return to noteholders was?

9      UNKNOWN:  Object to the form.

10     A    I never had any discussions with the committee

11     about that, so if they conveyed it to anyone, they

12     didn't convey it to me.

13  (End of video playback.)

14         MR. MOSKOWITZ:  Objection, Your Honor.  I think

15  this probably the second time this has happened now.  I

16  think the video displays that they're showing her are

17  actually consistent with the witness's testimony and are not

18  -- they are not being used for impeachment.

19         THE COURT:  Well, I will say that I expect the

20  next question to come from Mr. Hurley and it doesn't.  So

21  Mr. Hurley you have to show the excerpts for the purpose of

22  setting up the question it seems to me.  So is there a

23  question?

24         MR. HURLEY:  Well, I guess I would disagree.  It

25  was my view that the testimony was different than the

1   testimony that she's giving here.

2         THE COURT:  Okay.  So you need to ask a question

3   to establish that, if you can.

4   BY MR. HURLEY:

5   Q    Okay.  Isn't it true that the use -- that the

6   unsecured creditors' committee, at least as far as you know,

7   never conveyed its view of what an appropriate return to the

8   noteholders would be?

9   A    When you say an appropriate return, it's hard for me

10  to understand what you mean.  If you're asking me if they

11  told me there was a specific number, I don't recall ever

12  having a discussion with them where they said, you know,  X

13  amount of dollars is an appropriate return to the

14  noteholders.  I remember having discussions with them where,

15  you know, in mediation and outside of mediation.  And

16  outside of mediation, I remember them wanting to get more

17  for the noteholders, but I guess they never -- I don't have

18  any specific recollection about them saying this is a number

19  that we need to get.

20  Q    Well, you actually -- you didn't see the unsecured

21  creditors' committee as kind of partisan advocate on behalf

22  of the LBO claims in connection with the settlements, did

23  you?

24  A    Well, I certainly considered them adverse to us.  They

25  were trying to get more for the unsecured creditors

1   including the noteholders.  They were certainly not siding

2   with me.  They were trying to get more money from the banks.

3   Q    Isn't it true, ma'am, that you saw them as more of a

4   neutral party that was seeking to get the best outcome for

5   all unsecured creditors including the senior lenders?

6   A    I, frankly, didn't think that they were that concerned

7   about the senior lenders.  I think they wanted a fair

8   settlement, but the fact that they filed the litigation

9   against the senior lenders told me that they really were

10  trying to get a fair return for the other noteholders and if

11  -- for the noteholders and the other creditors and if they

12  had to sue us to do that, they would.

13  Q    You saw the debtor as a neutral intermediary that was

14  just trying to get a fair settlement for all the creditors.

15  Is that right?

16  A    Yeah, I saw them as trying to facilitate discussions

17  and get a deal done.  I think the debtor was very concerned

18  about getting out of bankruptcy and trying to achieve a fair

19  settlement so that they could achieve that.

20  Q    Now outside of the mediation, I think you testified on

21  direct that you spoke at length at many times with the

22  debtors concerning settlement, right?

23  A    Yes.

24  Q    And you also spoke many times with Oaktree concerning

25  settlement, right?

1    A      Yes.

2    Q      And you spoke many times with Angelo Gordon concerning

3    settlement?

4    A      Yes.

5    Q      And back in April, you also spoke to other members of

6    the Oaktree Group it sounds like.  You made some calls to

7    some of the people in the Oaktree Group trying to get them

8    onboard.  Is that right?

9    A      Yes, not only to the Oaktree Group, but to the larger

10   lender group trying to get support for the settlement.

11   Q      Now during this entire period of time, outside of the

12   context of mediation, you never spoke to Aurelius once.

13   Isn't that right?

14   A      Well, when those discussions were happening, Aurelius

15   wasn't an active participant.  They didn't own the

16   Centerbridge claim.  Centerbridge was the senior lender --

17   was the noteholder there, so we were talking to them.

18   Q      I'm sorry, if my question was confusing.  I was

19   talking about any period of time during the settlement

20   negotiations other than during the mediation sessions.  At

21   any time in this case, have you spoken to Aurelius outside

22   the mediation?

23   A      Aurelius only became involved right before the

24   mediation and it's my recollection.  So no, I never -- I

25   don't recall speaking to them outside of mediation.  It's my

1   recollection that they just became a bigger holder of the

2   debt immediately prior to the mediation.

3   Q     So the answer is no?

4   A     The answer is no.

5   Q     Okay.  Can you turn to -- let's see if I have the

6   right exhibit here.  Let me go to the next exhibit, which is

7   NPP-851.  And when you get there, ma'am, you know just

8   identify it for us.  And for the record, NPP-851 is another

9   string of emails.  And across the top, you'll see there's an

10  email from Mr. Kurtz dated September 29, 2010, 11:25.  He

11  says,  "Kevin Lantry will participate."  Do you see that?

12  A     Yes.

13  Q     And I actually want to focus your attention on the

14  email below that from Mr. Bernstein to Mr. Conlan and

15  others, and you're copied on that email.  Do you see that?

16  A     Yes.

17  Q     And Mr. Bernstein is counsel for JP Morgan in these

18  cases, right?

19  A     Yes.

20  Q     Okay.  Now Mr. Bernstein is making a proposal about an

21  alternative settlement structure that JP Morgan is

22  interested in.  Isn't that right?

23  A     Can I take a second to read it, please?

24  Q     Absolutely, take your time.

25  A     Okay.

1  Q     And I want to direct your attention to the paragraph

2  that begins, "Here, the key features of the proposed

3  'alternative settlements' structure."  Do you see that?

4  A     Yes.

5  Q     And the second bullet point down, or the second, yeah,

6  bullet down, or hyphenated down.  It says, "the filed plan

7  would expressly state that it would be amended to reflect a

8  settlement of only step one, if the combined settlement is

9  not approved at the 9019 hearing, but a settlement of step

10 one only is approved."  Do you see that?

11 A     Yes.

12 Q     And the combined settlement he's talking about is the

13 settlement of both step one and step two, right?

14 A     And disgorgement.

15 Q     Right.  And it was your understanding at this time,

16 that Oaktree felt very strongly that any step two settlement

17 had to be severable from step one, a step one settlement, in

18 case the Court determined that the settlement proposed for

19 step two was unreasonable, right?

20 A     That's my recollection.

21 Q     Now you had mentioned some reasons in your direct

22 about why JP Morgan did not support the settlement that was

23 filed on September 28.  Do you remember that?

24 A     Yes.

25 Q     Okay.  And you gave a number of reasons.  I don't

1  think you mentioned whether one of those reasons is that

2  step one settled -- I'm sorry.  The September 28 settlement

3  settled only step one claims, right?

4  A    I think I did mention that, yes.

5  Q    Sorry.  That's not the part you didn't mention, but

6  thank you.  Isn't it also true that JP Morgan's position was

7  overwhelmingly in step two versus step one?

8  A    Well, JP Morgan doesn't negotiate only for itself.

9  We're admin agents so we negotiate on behalf of all of the

10  lenders.  Yes, we had a significant position in step two,

11  but we also have a -- quite a large position in step one.

12  Q    But the position in step two is much larger than JP

13  Morgan's position in step one, isn't it?

14  A    It is, but as an administrative agent, we always try

15  to negotiate the best deal for all of our lenders.

16  Q    Um-hum.

17  A    And we were very concerned about leaving the step two

18  lenders aside.  They were a large group.

19  Q    The fact that JP Morgan's investment was much larger

20  in step two had no impact at all in JP Morgan's decision

21  that it wanted to settle both step two and step one?

22  A    We always wanted to settle both step one, step two,

23  and disgorgement.  We thought it made the most sense.  In my

24  mind, it didn't make sense to try to reach a settlement that

25  still left a significant piece of litigation out there.

1  Q    Now I just want to talk a little bit about the DCL

2  plan that's on file.  It's your understanding that under

3  that plan, the senior lenders are permitted to select all

4  the members of the board of directors, right?

5  A    Yes.

6  Q    Okay.  So Oaktree will choose two, Angelo Gordon one,

7  JP Morgan one, and then all the senior lenders together will

8  choose the remaining the two.  Is that your understanding?

9  A    No, that's not correct.  The remaining two members are

10  chosen by Angelo, Oaktree, and JP Morgan vote two out of

11  three.  So the remaining -- so it's Oaktree gets two, Angelo

12  gets one, JP Morgan gets one, and then the remaining members

13  are selected by the vote of JP Morgan, Angelo, and Oaktree

14  together.

15  Q    Thank you.  And in the summer, early fall of 2010, you

16  had a conversation with at least one member of Tribune

17  management about whether that person would retain his job at

18  the company post emergence, right?

19  A    I don't remember.  Who in particular are you talking

20  about?

21  Q    Randy Michaels.

22  A    I remember having conversations with Randy about

23  whether or not he would retain his position.  I don't

24  remember exactly when they were.

25            MR. HURLEY:  Okay.  Well, I'll try and refresh

1    your recollection.  Can you do MK-60, please?

2    (Video playback as follows:)

3        Q    Did you ever have any conversations with anyone

4        at Tribune about whether the current members of Tribune

5        management would retain their jobs after the company

6        emerges from bankruptcy?

7        UNKNOWN MALE:  Any clarification as to point in time?

8        UNKNOWN FEMALE:  No.

9        UNKNOWN MALE:  Okay.  Objection.

10       A    Yes.

11       Q    When did those conversations occur?

12       A    In the 2000 -- maybe sometime in 2010.  I can't

13       really say when.

14   (End of video playback.)

15           MR. HURLEY:  And M -- MK-61.  This will

16   clarify --

17           MR. MOSKOWITZ:  You're going to play another one?

18           MR. HURLEY:  Yeah.

19   (Video playback as follows:)

20       Q    Okay.  Who did you have those conversations with?

21       A    Randy Michaels.

22       Q    And do you have an idea of when in 2010 that

23       happened?

24       A    The best I can recall is it was the summer of

25       2010, and the early fall of 2010.

1   (End of video playback.)

2           MR. HURLEY:  Does that refresh your recollection?

3           MR. MOSKOWITZ:  Objection.  The same objection as

4   before, Your Honor.

5           THE COURT:  Overruled.

6   BY MR. HURLEY:

7   Q    Does that refresh your recollection as to when the

8   conversation with Mr. Michaels happened?

9   A    I mean, it seems to me that in the video I'm

10  struggling to figure out when it was.  Yes, I guess it --

11  you know, it doesn't really refresh my recollection --

12  Q    Okay.

13  A    -- of when they were.  I --

14  Q    Okay.

15  A    I remember they were in 2010, I can tell you that.

16  Q    Okay.  You have no reason to think that your testimony

17  at your deposition was inaccurate other than that you were

18  struggling to remember it just as you are today, I guess,

19  right?

20  A    Right.

21  Q    Okay.  And during those conversations with Mr.

22  Michaels, you told him that you expected that a number of

23  candidates would be considered for the CEO job, but you

24  certainly didn't rule out the possibility that he might also

25  continue as the CEO post emergence, right?

1   A      Yes.

2   Q      And you also had some conversations with Eddy

3   Hartenstein about his role in the company going forward

4   prior to the settlement of these claims, didn't you?

5   A      Yes.  I remember having a conversation with Eddy.  I

6   don't remember if it was prior to the first settlement or

7   not.  Again --

8   Q      Okay.

9   A      -- I'm really struggling.  It seems like it was a long

10  time ago.

11  Q      Who is Mr. Hartenstein?

12  A      He's the -- currently, one of the co-presidents and

13  he's the publisher of the LA Times.

14  Q      So he's a member of the four-person executive council

15  at Tribune now, right?

16  A      Yes, but at the time of my first conversation with

17  him, he wasn't.

18  Q      Right.  And he became a member of the four member

19  executive counsel sometime in October of 2010?

20  A      I think that's right.

21  Q      And that's the -- those are the -- the four members of

22  the executive council are the most senior officers of the

23  company.  Correct?

24  A      Yes.

25  Q      Okay.  Prior to that, when you spoke to him, what was

1   his role?

2   A    He was a publisher of the LA Times.

3   Q    Okay.  And I'll represent to you that at your

4   deposition you indicated you thought the conversation with

5   Mr. Hartenstein about him becoming CEO took place sometime

6   early in 2009.  Does that refresh your recollection at all?

7   A    It was a long time ago.  I think that's probably what

8   I said.  You know, I really don't remember when that

9   conversation was, but --

10  Q    Okay.

11  A    -- it seems like it was a long time ago.

12  Q    Okay.  Is it possible it was early 2010?

13  A    I don't think so, but I guess it's possible.

14  Q    Okay.  Do you remember whether or not Mr. Hartenstein

15  told you that at that time in addition to speaking you, he

16  also was speaking to Jimmy Lee of JP Morgan?

17  A    I think Jimmy is the one who asked me to speak to

18  Eddy.

19  Q    Okay.

20  A    So from time to time people call Jimmy and say they

21  want -- you know, they're interested in a role and Jimmy

22  asked them to call me.

23  Q    Okay.  I'd like to direct your attention then, please,

24  ma'am, to NPP-757 which is the next exhibit in the binder.

25  A    757 did you say?

1  Q     Yes.  And you'll see that it's an email string

2  exchange between Maggie Wilderotter and Jimmy Lee.  And

3  before we start talking about the document, ma'am, and take

4  your time if you want to read it and just let me know when

5  you're ready to answer some questions.

6  A     Okay.

7  Q     Okay.  First of all, do you know who Ms. Wilderotter

8  is?

9  A     She's a member of the board at Tribune.

10  Q     Okay.  And she's also a member of the special

11  committee of the board of directors of Tribune, right?

12  A     Yes.

13  Q     The one that was formed in August of 2010?

14  A     Yes.

15  Q     Okay.  And I want to direct your attention to the

16  email from Ms. Wilderotter to Mr. Lee at the bottom of the

17  page, and I guess before we do that, for the record, who is

18  Mr. Lee?

19  A     He's a vice chairman at JP Morgan.

20  Q     Currently, he's the vice chairman at JP Morgan?

21  A     Yes.

22  Q     Do you know what his title was in February 2010?

23  A     Also vice chairman.

24  Q     Okay.  And I want to direct your attention to the

25  11:18 a.m., February 10, 2010 email from Ms. Wilderotter to

1    Mr. Lee.  And she writes, "Hi, Jimmy, I hope you are

2    'working from home' today.  What a mess.  Anyway, Eddy

3    Hartenstein, the publisher of the LA Times and former CEO of

4    Direct TV, would love to speak with Jaime or you for a few

5    minutes about the Tribune Company and his thoughts of the

6    company's prospects, leadership, et cetera.  I think it

7    would be helpful and it would only take about ten minutes.

8    Maybe you could speak with him first and if you felt it

9    appropriate, you could have Jaime speak with him.  I think

10   Eddy is one of the top leaders at Tribune and he's really

11   turned the LA Times around to solid profitability.  Can you

12   let me know and I'll have Eddy set up a call. Your friend

13   who is always looking out for JPM!  Maggie."  Do you see

14   that?

15   A     Yes.

16   Q     Okay.  And you see that that email obviously is dated

17   February 10, 2010?

18   A     Yes.

19   Q     And you said that it was Mr. Lee who actually

20   suggested that you speak to Mr. Hartenstein, right?

21   A     Yes.

22   Q     And does this document refresh your recollection as to

23   whether the conversation you had with Mr. Hartenstein

24   actually was in early 2010?

25   A     Actually, it doesn't refresh my recollection.

1  Q    Based on reviewing the document, does it cause you to

2  believe that your conversation was in early 2010?

3            MR. MOSKOWITZ:  Objection, asked and answered.

4            THE COURT:  Sustained.

5  BY MR. HURLEY:

6  Q    Did Mr. Lee ever mention to you that there were any

7  other candidates for the position of CEO for Tribune?

8  A    I don't know that he said candidates.  From time to

9  time, he would call me and tell me that people reached out

10 to him and they were interested in a role at Tribune,

11 sometimes as a CEO, sometimes as a board member, and he

12 would just ask them to call me.  Jimmy knows a lot of people

13 and a lot of people reach out to him.

14 Q    Did Mr. Lee ever mention that one of the candidates

15 for CEO was Ms. Wilderotter?

16 A    No, he -- I never spoke to him about that.

17 Q    On your direct, you talked about a conversation with

18 Mr. Melwani.  Do you remember that?

19 A    Yes.

20 Q    And what was the date of that conversation?

21 A    I had a number of conversations with him from the time

22 we signed the settlement support agreement in April till the

23 time it was terminated.

24 Q    Do you remember about how many?

25 A    I don't know, 50, 75.  For a while, we spoke, you

1  know, a couple of times a week.  There were a lot.

2  Q      Um-hum.  And do you remember when he expressed a

3  particular view that you attributed to him about what he

4  thought of the settlement, do you remember when he expressed

5  that -- when that meeting was?

6  A      That was after the examiner report came out.

7  Q      Can you be any more specific than after July 26, 2010?

8  A      No, I really can't, I don't remember.  I had a number

9  of conversations with him.

10 Q      Can you remember --

11 A      When they were --

12 Q      Pardon.

13 A      -- I really don't, sorry.

14 Q      Can you actually remember the conversation that you

15 had with him where he supposedly told you what his view of

16 the settlement was?

17 A      Yeah, I remember having that phone conversation with

18 him.

19 Q      Okay.  So it was on the telephone?

20 A      Yes.

21 Q      Was anyone on the telephone with you besides you and

22 Mr. Melwani?

23 A      No, not to my knowledge.

24 Q      About how long did the call last?

25 A      I don't remember.

1   Q     Okay.  And you can't remember any more than it was

2   after July 26, 2010 in terms of the date?

3           MR. MOSKOWITZ:  Objection, asked and answered.

4           THE COURT:  Overruled.  You may answer.

5           MS. KULNIS:  I remember it was after the examiner

6   report was issued.  I don't remember if it was after just

7   the summary was issued or after the full report was issued.

8   So, sorry, I don't really have any more recollection than

9   that.

10          MR. HURLEY:  And you know that the -- well, do

11  you remember that it was before or after the April

12  settlement support agreement had fallen apart?

13          MS. KULNIS:  It was before the agreement was

14  terminated.

15          MR. ZENSKY:  Your Honor, I have to rise to move

16  to strike the testimony then because this is the second time

17  in this trial they've elicited testimony that we were

18  blocked in discovery.  That's during the common interest

19  period that they claim protected all communications between

20  Centerbridge and the debtors and JPM and any party to the

21  planned support agreement.  So we now have on the record a

22  discussion we could not discover during discovery.

23          MR. HURLEY:  I'm very glad Mr. Zensky said this

24  because he was wrong about it yesterday and he's wrong about

25  it today.  Here's why.  There is a common interest

1  privilege, but as they know well, that protects only

2  communications that are actually privileged.  A

3  communication between Ms. Kulnis and Mr. Melwani is between

4  two business people.  There's no privilege to that

5  communication.  There's no legal issues discussed during

6  that communication that are otherwise privileged.  I don't

7  think that was the testimony.  And in response to Mr.

8  Zensky's point about blocking discovery, we have Ms. Kulnis

9  up here.  There is absolutely no blockage to anything

10  related to this at her deposition and I know because I

11  defended that deposition.

12          THE COURT:  The motion is denied.

13  BY MR. HURLEY:

14  Q     Your counsel showed you the two term sheets on your

15  direct.  Do you remember that?

16  A     Yes.

17  Q     And between the first term sheet and the second term

18  sheet step two avoidance claims were settled, right?

19  A     I wouldn't --

20  Q     Let me ask a different question.  I'm going to

21  withdraw that.  In the first term sheet, the step two

22  avoidance claims were not settled, right?

23  A     Correct.

24  Q     And they were in the second term sheet, right?

25  A     Correct.

1    Q     Okay.   Do you know that the face value of the step two

2    avoidance claim was approximately $2.1 billion?

3    A     I think that's right.

4    Q     Okay.   And the additional consideration that was

5    provided in step two for settling the step two avoidance

6    claims was about $74 million, right?

7    A     No, that's not the way we looked at it.

8    Q     When you saw we, you mean JP Morgan?

9    A     JP Morgan and I think the creditors' committee.   This

10    was a package deal.

11    Q     Well, if you would restrict yourself to JP Morgan

12    rather than --

13    A     JP Morgan and the lenders that I spoke to including

14    Angelo Gordon and Oaktree.   We didn't look at it as an

15    increment to the first term sheet.   This was in my mind an

16    entirely new deal.   It was an entirely new deal and there

17    wasn't something attributed to step one and something

18    attributed to step two.   It was part of a whole package of

19    settling all the claims.

20    Q     Are you able to identify the amount of consideration

21    that was provided for the settlement of the step two

22    avoidance claims?

23    A     There wasn't separate consideration for anything,

24    except for disgorgement.   It was all part of the whole

25    package.

1    Q     In terms of the --

2    A     The consideration increased from the first term sheet

3    to the second, but it was all part of the same package.

4    Q     And in terms of the additional consideration that

5    you've identified, setting aside the litigation trust, none

6    of the additional money that was being paid, $74 million,

7    went to the senior noteholders, right?  That actually went

8    to -- sorry, withdraw that question.  None of the additional

9    considerations providing being -- that was being provided

10   outside of the moneys paid for disgorgement, as you said,

11   which was separate and the litigation trust, none of that

12   additional value went to the noteholders.  Isn't that right?

13   A     That's right.

14             MR. HURLEY:  Thank you.

15             THE COURT:  Is there any other cross examination?

16   (No audible response)

17             THE COURT:  All right.  Redirect?

18                       REDIRECT EXAMINATION

19   BY MR. MOSKOWITZ:

20   Q     Good morning, again, Ms. Kulnis.

21   A     Good morning.

22   Q     Ms. Kulnis, you were asked in your cross examination

23   about the value of the litigation trust.  Do you recall that

24   examination?

25   A     Yes.

1   Q     Okay.  Ms. Kulnis, do you have an understanding of

2   what claims go into the litigation trust and can be pursued

3   by the litigation trust under the DCL plan?

4   A     Yes, there's a lot of claims.  There's -- to name a

5   few, claims against the step two shareholders, against the

6   advisors, the directors and officers, Morgan Stanley, I

7   think VRC.  All those claims are put into the litigation

8   trust.

9   Q     And are there any intentional fraud claims that go

10  into that litigation trust?

11  A     Yes, there are.  Those were as a result of the

12  examiner's report, the intentional fraud claims were put

13  into there.

14  Q     And Ms. Kulnis, based on your -- what you said before,

15  based on your review of the pleadings, based on your review

16  of responsive statements, the plans, your involvement in

17  this case, do you have a view as to what Aurelius' -- what

18  Aurelius has said about the value of the claims going into

19  the litigation trust?

20  A     Yes, I believe they put a lot of value on those claims

21  and thought that -- and thought that they would, you know,

22  that they were worthwhile to pursue.

23            MR. HURLEY:  Objection, Your Honor, I'd move to

24  strike unless the foundation for that testimony can be laid.

25            MR. MOSKOWITZ:  I think, Your Honor, that in her

1  prior testimony she --

2          THE COURT:  Motion is denied.

3  BY MR. MOSKOWITZ:

4  Q     Okay.  Ms. Kulnis in your cross -- in the cross

5  examination, you were asked a number of questions about

6  whether JP Morgan had a greater position in step one versus

7  step two.  Do you recall that?

8  A     Yes.

9  Q     Ms. Kulnis are you familiar with whether or not the

10  credit agreement has a sharing provision attached to it?

11  A     Yes, it does.

12  Q     And can you describe what that provision provides?

13  A     The sharing provision says that no lender can get a

14  better recovery than its pro-rata -- than another credit in

15  the agreement.  So to the extent that some lender gets more

16  than its pro-rata share, it has to be shared with other

17  lenders in the deal.

18  Q     So if you were -- so if there was a settlement just of

19  step one and recoveries came in, in respect to step one,

20  under the sharing provision, would those recoveries have to

21  be shared with the step two lenders?

22  A     Yes, they would.

23  Q     Ms. Kulnis, did the Oaktree, Angelo Gordon September

24  term sheet enforce a sharing provision?

25  A     Yes, it did.

1  Q    Ms. Kulnis, you were asked some questions about the --

2  I think if you knew about the face value of the step two

3  avoidance claims.  Do you recall that testimony?

4  A    Yes.

5  Q    And I think it was suggested to you that the face

6  value of those claims is greater than $1 billion.  Do you

7  recall that?

8  A    Yes.

9  Q    Ms. Kulnis is the face value of a claim the same as

10 how much you can actually recover on a claim?

11           MR. HURLEY:  Objection, Your Honor, foundation.

12 The witness isn't a lawyer.  I don't know what the basis for

13 that answer --

14           THE COURT:  Sustained.

15           MR. MOSKOWITZ:  Ms. Kulnis, do you have an

16 understanding of what face value means?

17           MS. KULNIS:  Well, in that question, I took it to

18 mean the amount of the debt related to step two, the amount

19 of the senior debt.  That's how I interpreted that question.

20           MR. MOSKOWITZ:  And my next question is not as a

21 legal matter, but as a practical matter, depending on how

22 much money there's available to distribute, do you have an

23 understanding as to whether a step two lender could get the

24 same as their face amount in all cases?

25           MS. KULNIS:  I'm sorry, I didn't follow that.

1              MR. HURLEY:  Objection.

2              MR. MOSKOWITZ:  I object as well.

3   (Laughter)

4              MR. MOSKOWITZ:  We'll move on.

5   (Laughter)

6              THE COURT:  You know, sometimes it's really hard

7   for me just not to say anything.

8   (Laughter)

9              MR. MOSKOWITZ:  Ms. Kulnis, just a couple more

10  questions.  You recall that the DCL plan provides for a $120

11  million disgorgement settlement.  Is that correct?

12             MS. KULNIS:  Yes.

13             MR. MOSKOWITZ:  Is there anything that has to

14  happen before the $120 million can go to the noteholders

15  from the perspective of the unsecured creditors?  Withdrawn.

16  Ms. Kulnis, with respect to the $120 million disgorgement

17  settlement, do you have an understanding as to whether the

18  unsecured -- the $70 million has to go first to the

19  unsecured creditors before that $120 million can go to the

20  noteholders?

21             MR. HURLEY:  Objection, leading, Your Honor.

22  It's pretty clear that she didn't have the answer to that

23  question --

24             THE COURT:  Well --

25             MR. HURLEY:  -- the first time around.

1        THE COURT:  -- sustained as to form.

2   BY MR. MOSKOWITZ:

3   Q    Ms. Kulnis, do you have an understanding as to what

4   the general unsecured creditors get under the DCL plan?

5   A    Yes.  The general unsecured creditors of the

6   subsidiaries get paid in full and the general unsecured

7   creditors of the parent get a return, you know, roughly

8   equivalent in the cents on the dollar to the bonds.

9   Q    And the $120 million disgorgement component, do you

10  have an understanding as to whether that's part of the DCL

11  plan?

12  A    Yes, that goes to the senior noteholders.

13  Q    And do you have an understanding as to whether the

14  parent creditors have to -- the parent unsecured creditors

15  have to be paid off first before the $120 million can go to

16  the noteholders?

17  A    They don't have to be paid in full, no.

18  Q    But do they have to -- do they share pro-rata at the

19  parent?

20  A    In the $120 million, no.  That $120 million goes just

21  to the notes.

22  Q    Fair enough.

23  A    They have to have a similar recovery to the

24  noteholders to -- it's my understanding, my lay person's

25  understanding of how this all works.

1    Q      Um-hum.

2    A      Is that by giving the $120 million to the senior

3    notes, we had to raise the recovery to the other GUCs at the

4    parent so that they got a similar recovery.

5              MR. MOSKOWITZ:  Thank you, Ms. Kulnis.

6              MR. ZENSKY:  Can we have one moment to confer?

7              THE COURT:  Certainly.

8              MR. ZENSKY:  Your Honor, if it would be

9    permissible if we took a short break now?

10             THE COURT:  Well --

11             MR. ZENSKY:  Rather than trying to do this at

12   counsel table?

13             MR. MOSKOWITZ:  I would prefer that they finish

14   with the witness, Your Honor.

15             THE COURT:  And I would, too.  And we're going to

16   break at ten of 12:00 today.  So can we do a break and

17   finish recross within that timeframe?

18             MR. ZENSKY:  Yes.

19             THE COURT:  Okay.  Take a very short break.

20             MR. ZENSKY:  Thank you.  We appreciate it, Your

21   Honor.

22             MR. HURLEY:  Thank you.

23   (Recess from 11:27 a.m. to 11:33 a.m.)

24             THE COURT:  All right.  Mr. Hurley are you ready?

25             MR. HURLEY:  Yes, Your Honor, just a couple of

1   questions more.

2                   RECROSS EXAMINATION

3   BY MR. HURLEY:

4   Q    Ms. Kulnis, you testified I think on redirect that if

5   -- because of the sharing agreement there would be sharing

6   between step one and step two lenders, even under the

7   September 28 agreement, right?

8   A    Yes.

9   Q    Okay.  Now you understand, however, if there were --

10  if step two were to be avoided that there is certainly no

11  guarantee that step two would be permitted to share in any

12  recoveries of step one.  Do you understand that?

13  A    No, actually I --

14              MR. MOSKOWITZ:  Objection.  Objection.  I think

15  it's the same objection that they lodged with respect to

16  calling for a legal conclusion or legal testimony.

17  BY MR. HURLEY:

18  Q    I'll withdraw it.  Under the DCL plan, the parent

19  general unsecured creditors are getting the same percentage

20  recovery as the senior noteholders.  Is that your

21  understanding?

22  A    That's my understanding.

23  Q    Okay.  Now do you understand that PHONES notes are

24  subordinated to the senior noteholders and -- I'm sorry.

25  Are subordinated to the noteholders, but not subordinated to

1  the GUCs, general unsecured creditors?

2  A    It's not clear to me that they're not subordinated to

3  all of the GUCs.

4  Q    Okay.

5  A    I've never actually read the subordination agreement

6  so I'm not really sure.  I know they're subordinated to the

7  noteholders.  I'm not really sure about the rest of the

8  GUCs.

9  Q    And if it were true that the noteholders enjoy

10 subordination benefit that the GUCs don't, you'd agree it

11 wouldn't be appropriate for those classes of creditors to

12 get the same recovery, wouldn't you?

13          MR. MOSKOWITZ:  Objection, same --

14          THE COURT:  Sustained.

15          MR. HURLEY:  Okay.  That's all I have, Your

16 Honor.

17          THE COURT:  All right.  Thank you, Ms. Kulnis,

18 you may step down.  Okay.  Does it make sense to start

19 Professor Black or should we just adjourn now?

20          MR. BENDERNAGEL:  Well, I think it would be

21 helpful to inform you of an issue that we may -- that may

22 come up with respect to Professor Black and maybe that's the

23 best way to use the time now between the break and maybe the

24 break is the best time to try and, you know, work on

25 resolving this issue.

1           THE COURT:  Okay.

2           MR. BENDERNAGEL:  Mr. Zensky approached me at the

3   beginning of the Court today and he made two observations

4   both of which were accurate.  One was that we had provided

5   him yesterday during the day a revised report from Mr. Black

6   that made certain corrections that Mr. Black had indicated

7   at his -- the second day of his deposition he had planned to

8   make in the report.  We then later in the day sent over a

9   number of potential demonstratives to use in connection with

10  his testimony. There were a lot of demonstratives and they

11  got there a little late and for that I apologize, that's my

12  fault.  I was in Court yesterday afternoon.  And what he's

13  made -- the point he made with me this morning is certain of

14  the demonstratives are, in his view, new work that he hasn't

15  had an adequate time to look at or he's going to object to.

16  And I think I'd like the opportunity to talk to him over the

17  lunch break. Mr. Ducayet is going to handle Mr. Black's

18  examination so obviously he ought to be involved in that

19  regard.

20          And to the extent -- our view is that most with

21  the exception of one or two of the sensitive -- the new --

22  the sensitivity analysis that we had hoped to show you are

23  not new, they're in his report.  The others are things that

24  he has been thinking about and we've been thinking about as

25  the evidence has rolled in as the expert depositions

1   completed last week.  But we're willing to talk to Mr.

2   Zensky about that.  We're not trying to, you know, take

3   advantage of the timeframe.  We're not giving him an

4   opportunity to look at the stuff.  And if he needs, you

5   know, adequate time to look at it, we'll give him adequate

6   time to look at it.

7            THE COURT:  Well --

8            MR. BENDERNAGEL:  And if you tell us you can't

9   put those sensitivity analysis in because we're too late,

10  well we won't put them in.

11           THE COURT:  Would you be able to move to the next

12  witness?

13           MR. BENDERNAGEL:  I can check.  I think that

14  might be a little difficult because I haven't asked JP

15  Morgan if Mr. Fachela [ph] is here or ready to do it.  You

16  know, obviously I'd be glad to do that, but they may not

17  think that was such a hot idea, but we can check and see.

18  And, you know, obviously, the noteholders might not think

19  that's such a hot idea because they were planning on doing

20  Mr. Black.  Now this comes at the very end of Mr. Black's

21  direct testimony and the like.  And my sense is unless you

22  start cutting back Mr. Black, we're going to use our two

23  hour exception with Mr. Black because he is the longest of

24  our expert witnesses and the like, but we'd be glad to talk

25  about that over lunch.  But I thought it would be important

1  to tell you we have that issue and work with Mr. Zensky and

2  JPM or whoever else has to be involved in the discussion to

3  try and make this thing flow smoothly.

4           THE COURT:  Thank you.

5           MR. KAMINETZKY:  Just Ben Kaminetzky of Davis

6  Polk for JP Morgan as agent.  Mr. Fachela is not in town so

7  and for -- Dr. Fachela.  So unfortunately, that's not an

8  option.

9           THE COURT:  All right, thank you.

10          MR. ZENSKY:  Your Honor, David Zensky of Akin,

11  Gump, Strauss, Hauer & Feld for the record.

12          Mr. Bendernagel is right, I approached him this

13  morning.  We were served with an amended report yesterday

14  afternoon at some point.  The amended expert report itself

15  does make corrections that were discussed to some degree at

16  the deposition, so I have no objection to the report.  It's

17  a little late in the day to get it, but we can proceed and I

18  assume we'll get the same degree of latitude if we have to

19  make any corrections in our reports.

20          My objection does go to the proposed

21  demonstratives which contain substantial new work that was

22  done that may or may not fit to the 5,000 numbers on the

23  spreadsheet that I got yesterday afternoon.  It is

24  impossible for me to be in a position to examine the witness

25  without having deposed him or having had time to review

1  that.  So there is an objection to several of the slides

2  that reflect this, these purported new sensitivity analyses.

3  It doesn't go the thrust, I think of his examination.  His

4  examination is about his report and these are add-ons so to

5  speak.

6          So we would be greatly prejudiced if they're

7  allowed to use the new work product getting -- excuse me,

8  receiving it the night before his examination.  But I don't

9  suggest we go out of order either.  Everyone's ready for the

10  main part of Mr. Black's testimony.

11          MR. BENDERNAGEL:  Your Honor, let's -- why don't

12  you give us an opportunity to talk to Mr. Zensky.  Maybe we

13  can make it more possible to him to look at these things.  I

14  don't think they're quite -- the problems are quite as

15  insurmountable as he may be suggesting and maybe we can

16  convince him of that.  You know, the sensitivities are just

17  designed to talk about how the range of reasonableness moves

18  around if you make certain changes.  And that's all

19  highlighted, I mean, previewed in his written testimony

20  because he talks about five or six sensitivities.  He models

21  some of those and he's modeled some additional ones.  It

22  gives you the point.  We don't -- maybe we don't need all

23  seven or eight and we can work that out over lunch.

24          THE COURT:  Okay.  Anything else before we break?

25  (No audible response)

1            THE COURT:  We'll reconvene at 1:15.  Court will

2    stand in recess.

3    (Recess from 11:40 a.m. to 1:17 p.m.)

4            MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

5    the debtor.  I think I have good news.  Mr. Zensky and Mr.

6    Ducayet spoke over the lunch hour, and I believe -- at least

7    I've been told -- that they've sort of worked out their

8    differences on this issue, and with that, I'll introduce Mr.

9    Ducayet, my partner, and we can move forward with Mr. Black.

10            THE COURT:  Very well.

11            MR. DUCAYET:  Good afternoon, Your Honor.

12            THE COURT:  Good afternoon.

13            MR. DUCAYET:  Your Honor, as a housekeeping

14    matter, can I approach and give you set of the

15    demonstratives?

16            THE COURT:  You may.  A set for my law clerk as

17    well.  All right.  Mr. Black, will you stand and be sworn

18    in, please?

19            THE CLERK:  Raise your right hand and place your

20    left hand on the bible.

21                   BERNARD BLACK, SWORN

22            THE CLERK:  Please, be seated.  Please make sure

23    the microphone's close to you.  State your full name, for

24    the record, and spell it.

25            THE WITNESS:  Bernard Steven Black.

1          THE CLERK:  Thank you, sir.

2          THE WITNESS:  Thank you.

3          THE CLERK:  Please spell it.

4          THE COURT:  Spell your last name, sir.

5          THE WITNESS:  Black, as in the color.

6          THE CLERK:  Thank you.

7          MR. DUCAYET:  Good afternoon, Professor Black.

8                    DIRECT EXAMINATION

9  BY MR. DUCAYET:

10  Q     Could you please state your current position?

11  A     Yes, I am the Nicholas J. Chabraja professor at

12  Northwestern University, and I have positions in the law

13  school and in the Kellogg School of Management in the

14  department of finance, and I'm also a faculty associate at

15  Northwestern's Institute for Policy Research.

16  Q     And how long have you held that position -- or those

17  positions?

18  A     I moved to Northwestern in the fall of 2010.

19  Q     And prior to the fall of 2010, where were you

20  employed?

21  A     I was employed -- I was at the University of Texas,

22  where I had a similar joint law and finance position, so I

23  was, you know, a chaired professor in the law school and a

24  professor of finance in the McCombs School of Business from

25  2004 until last fall.

1  Q     Okay.  And prior to that position, where were you

2  employed?

3  A     So prior to Texas, I was at Stanford Law School, as a

4  professor of law from 1998 until 2004.  Prior to that, I

5  started teaching at Columbia in 1988, stayed there, got

6  tenure until 1998, except for a year off in Russia, to work

7  on Russian legal reform.  Prior to that -- I probably should

8  go forward chronologically instead of backwards, so

9  undergraduate degree in physics at Princeton.  I went to

10 graduate school in physics at University of California at

11 Berkeley.  I stayed there for four years.  I was about a

12 year short of finishing my dissertation, and I decided

13 physics isn't really what I want to be doing, so I went to

14 law school.  I went to law school at Stanford, graduated in

15 1982.  I then clerked for Judge Patricia Wald on the D.C.

16 Circuit Court of Appeals.  I then went to Skadden Arps in

17 New York, and I was basically a corporate associate in their

18 mergers and acquisitions group from then until early 1987,

19 so about three-and-a-half years.  And then, for 1987 and

20 1988, I was a special counsel to SEC Commissioner Joseph

21 Grundfest, and then I went to Columbia after that.

22 Q     Okay.  And you've testified about your academic

23 career.  Do you have any business experience, sir?

24 A     Yes, I do.  So three principle sources.  First, I've

25 been an outside director of two public companies.  The first

1   was a leverage buyout company called Homeland Stores.  It

2   runs a chain of about 100 supermarkets in Oklahoma, and I

3   was on their board of directors from 1989 until 1996.  I was

4   chair of the audit committee, and then they went bankrupt,

5   and the creditors took over, and they appointed their own

6   directors.  I was then an outside director of Kookmin Bank,

7   which is the largest commercial bank in Korea -- it's listed

8   on the New York Stock Exchange -- from 2003 until 2005,

9   where I was on the risk strategy -- the risk-management

10  committee and the management-strategy committee.  I'm also a

11  part-owner and a principle in an internet business, an

12  academic website called SSRN, social science research

13  network, which is where scholars post working papers and

14  published articles across accounting, finance, economics,

15  law, political science, and a host of other disciplines

16  that, quite possibly, you haven't heard of, but it's

17  actually a major website.  We have let's call it 10 million

18  downloads of academic papers every year, which is a lot of

19  people reading these dry, academic papers.

20  Q    Well, let's talk about that in terms of academic work.

21  Have you developed any particular areas of focus in your

22  academic career?

23  A    Yes, so my areas of expertise that I think are

24  relevant to this case are going to be, first -- let me call

25  it joint expertise in law and finance, so a substantial part

1   of my research is in a field that is literally called law

2   and finance, which is a blending of the two separate

3   disciplines.  This also has a lot to do with why I have

4   positions in both departments.  And so out of that, I'm

5   certainly comfortable with finance, comfortable with

6   valuation.  I teach a corporate finance class.  I've also

7   done a lot of research on corporate governance and corporate

8   law, and so that's going to be a second area of expertise is

9   how do directors and officers behave, how do financial

10  advisors behave.  A third area of expertise is going to be

11  corporate acquisitions, including leverage buyouts, where

12  I'm a co-author of a textbook, the title of which is *The Law*

13  *and Finance of Corporate Acquisitions*.  And so as part of

14  that textbook, we cover leverage buyouts, and we cover the

15  taxations of acquisitions and a whole bunch of other issues

16  surrounding corporate acquisitions.

17  Q    Okay.  And you mentioned your finance area of focus.

18  Do you actually publish in finance journals?

19  A    Yes, I do.  So I do some of my publishing in law

20  reviews.  I do some of my publishing in finance journals.

21  And in my CV that's at the back of my report, you'll see,

22  you know, I've got a paper published last year in the

23  *Journal of Financial Economics*, which is one of the

24  recognized three top finance journals in the world.  I'm

25  proud of that.  I've got another one coming out later this

1  year in the *Journal of Financial Economics*.  So my

2  publishing is a mix of law journal and finance journal.

3  Q    Okay.  Professor Black, do you have any particular

4  expertise in valuation?

5  A    I know finance, I teach finance, and therefore, I

6  teach valuation, because valuation is at the core of

7  finance.  So I'll teach how do you value assets and

8  discounted cash flow.  I don't teach a course that's

9  specifically about valuation of companies.  Such courses

10  exist in business schools, so I don't go into nearly the

11  same depth that one would in such a course, but I'm

12  certainly comfortable with principles of valuations.

13  Q    And what about the area of solvency analysis?  Do you

14  have any particular expertise in that area?

15  A    So solvency analysis is relevant for leverage buyouts,

16  and so leverage buyouts are part of my corporate

17  acquisitions expertise.  I also teach fraudulent conveyance

18  law in my corporations class.  So I have a separate section,

19  where we just walk through what are the protections for

20  creditors in corporate transactions, and one of the

21  important ones is fraudulent conveyance law, so I teach

22  fraudulent conveyance law there.

23  Q    Okay.  And are you familiar with decision-tree

24  analysis?

25  A    Yes, I am.  I teach decision-tree analysis in my

1   corporate finance class.  I use an example of a litigation

2   settlement and how one can use the decision-tree approach or

3   decision-tree methodology to highlight the judgments that

4   have to be made in deciding whether and on what terms to

5   settle a case.

6   Q     Okay.  And are you familiar with the area of

7   probability analysis?

8   A     So a lot of my research is quantitative empirical

9   research.  I'm working with data.  I'm running empirical

10  tests.  I'm running statistical tests.  I'm computing

11  probabilities.  I'm computing correlations.  So certainly,

12  I'm very familiar with probability and statistics and what's

13  called econometrics, which is the application of statistics

14  to economic problems.

15  Q     And do you teach any sort of courses or workshops or

16  anything along those lines?

17  A     Well, we've started -- I started, last year, running a

18  weeklong summer workshop on research designed for causal

19  inference, coming out of my belief that many people doing

20  empirical research in law and political science and other

21  areas basically don't know how to do causal inference right,

22  because, in a lot of cases, even in the graduate training,

23  they don't get taught how to do it right.  So our goal in

24  this weeklong workshop, we bring in world-class scholars.  I

25  teach a couple of sessions, and that workshop is to provide

1 | training to generally graduate students and faculty, people

2 | already with substantial training on an effect, how to do

3 | causal inference right, given modern methods.

4 | Q    Now, Professor Black, do you have any expertise in

5 | bankruptcy law?

6 | A    I have some expertise in bankruptcy and the bankruptcy

7 | process.  To the extent that bankruptcy very often involves

8 | valuation issues, I am comfortable with valuation issues.

9 | To the extent that this bankruptcy involves a leverage

10 | buyout and fraudulent conveyance issues, I'm comfortable

11 | with understanding leverage buyouts, understanding how they

12 | work, understanding the fraudulent conveyance constraints on

13 | leverage buyouts.  When it comes to the technical aspects of

14 | the bankruptcy law, I was not previously an expert, so I had

15 | to learn in the course of my work on this case about

16 | specific, relevant provisions of the bankruptcy law.

17 | Q    And what did you do in that regard?

18 | A    So I did a number of things.  I began, when I was

19 | originally engaged early last year, by just simply trying to

20 | understand what the issues were.  At that time, the law firm

21 | of Sidley Austin gave me a series of 15 or 20 memos on

22 | different legal issues that were involved in this case,

23 | ranging from things I know, like directors and offers and

24 | liability, to things that I didn't know that were more

25 | technical bankruptcy law.  And they were of the approach of

1  here are the arguments on one side; here are the arguments

2  on the other side.  No bottom line conclusion.  Just here

3  are the arguments.  Here are the cases.  I then went and

4  read a whole bunch of bankruptcy cases.  I tried to read the

5  principle leverage buyout cases, especially in the 3rd

6  Circuit.  Where I thought I needed to, I went to the

7  bankruptcy treatises, the bankruptcy cases books, to

8  bankruptcy academic articles.  Since then, I've basically

9  been following the process.  So all of the major players in

10  this bankruptcy submitted briefs to the examiner: initial

11  briefs, reply briefs.  I read those briefs.  Those raised

12  some questions.  I followed up with my case research.  I

13  then, like everyone else here, have had the joy of reading

14  1,200 of the examiner's report, and he addresses those legal

15  issues, often at great length, and I gave, basically, I'd

16  say, great deference to the examiner's views on the legal

17  issues, because my expertise is in finance and valuation and

18  understanding business transactions, rather than in the

19  technical aspects of bankruptcy law.  Then, I've continued

20  to learn new pieces, partly by following the briefs that

21  have been filed before you in this case in connection with

22  the DCL plan and the noteholder plan.  And before that, you

23  had the step-one creditor agreement lender plan and the

24  bridge plan.  Partly, there have been various complaints

25  against some of the parties here and some of the third

1  parties that have been filed, especially by the unsecured

2  creditors committee, and so I followed those complaints as

3  well.  I've also had ongoing discussion with the Sidley

4  Austin bankruptcy lawyers when new issues have arisen,

5  especially ones that weren't addressed in the examiner

6  report.

7  Q    Okay.  And you anticipated this a little bit, but just

8  so the record's clear, when were you first retained in this

9  matter?

10  A    In the early part of 2010.  I'm not remembering

11  exactly when.

12  Q    So about a year ago or so?

13  A    About a year ago.

14  Q    Okay.  And by whom were you retained?

15  A    By Sidley Austin, on behalf of Tribune Company.

16  Q    And what is it that you were originally asked to do?

17  A    I was originally asked really just to start learning

18  both the facts and the law of this case, because it's, as

19  you've heard, a very complicated case.  There are two steps

20  of the leverage buyout.  There's both the Tribune level and

21  the subsidiary level.  And partly also, just because of the

22  size of the dollars at stake, the parties have been very

23  creative in raising a whole host of claims and counterclaims

24  and legal issues.  So I had to get my hands around all of

25  those.  I had to get my hands around the valuation; what was

1  Tribune worth going into the step-one tender offer; what was

2  Tribune worth going into the step-two merger; was it

3  balance-sheet solvent; was it cash-flow solvent; did it have

4  what I'm going to call cash-flow cushion, so the

5  unreasonably small capital prong of solvency analysis, which

6  as the bankruptcy courts, I've come to understand, have

7  developed it, is really about are you not only cash-flow

8  cushioned -- do you -- are you not only cash-flow solvent,

9  but do you have a cushion to weather a reasonable downturn.

10  So I'm going to call that a cash-flow cushion.  Had to learn

11  about that at both Tribune and the guarantor subsidiaries

12  again, both in June 2007 and in December 2007.  And the goal

13  of all this was so that I would be in position to have

14  informed judgment about a possible future settlement.

15  Q    And I take it, from your last answer, that there was

16  not a settlement to place at the time you were retained.

17  A    There was not.

18  Q    Okay.  About how much time have you spent on this case

19  since you were retained a year ago?

20  A    So it's been a year, and wow, probably a third of my

21  time over the last year.  It's been basically full-time over

22  the last -- most of the last three months.

23        MR. DUCAYET:  Okay.  Your Honor, at this point,

24  I'd to tender Professor Black as an expert witness to

25  testify as to his opinions on the reasonableness of the

1  settlement of the LBO claims that's embodied in the DCL

2  plan.

3          THE COURT:  Is there any objection?

4          MR. ZENSKY:  No objection to the testimony, Your

5  Honor, just keeping in mind the dialogue I think we had last

6  week about the legal opinions, to the extent that they are

7  part of the witness's opinions.

8          THE COURT:  All right.  Thank you, Mr. Zensky.

9  Then the testimony will proceed accordingly.

10          MR. DUCAYET:  Okay.  Thank you, Your Honor.

11  BY MR. DUCAYET:

12  Q    Professor Black, let's just start off by seeing if we

13  can lay out your overall conclusions, and I want to do this

14  at some fairly high level, and then we can drill down a

15  little bit, okay?

16  A    Okay.

17  Q    Based on the work that you've just described, have you

18  formed any opinions about the reasonableness of the

19  settlement of the LBO claims that's embodied in the DCL

20  plan?

21  A    Yeah, so I was asked to assess the reasonableness of

22  the settlement in the DCL plan of the claims against various

23  creditors, and my opinion is that before you consider

24  litigation trust recoveries, this is a very good outcome for

25  the notes and the Tribune general unsecured creditors.  Let

1   me just refer to the notes, so I don't have to keep

2   repeating the phrase, but the treatment of both is very

3   similar in the plan.  Once you include the disproportionate

4   sending of litigation trust recoveries to the notes, it

5   becomes a truly excellent plan for the notes.

6   Q    Okay.  And can you -- again, just at a very high level

7   here, so we can just kind of set the framework, can you

8   describe the process that you went through to develop that

9   opinion?

10  A    Sure.  So the first part, as we've already discussed,

11  is really trying to become closely familiar with the facts

12  and the law, forming my own opinions about valuation, being

13  informed by everybody else's opinions about valuation.  So

14  one of the features of this case is we're inundated with

15  valuation opinions.  We've got step-one valuation opinions

16  from Blackstone delivered to the McCormick Foundation.

17  Merrill Lynch and Citibank delivered to the Tribune board.

18  Morgan Stanley delivered to the Tribune special committee.

19  Duff & Phelps delivered to the trustee for the ESOP.  And

20  then finally, VRC, as part of its solvency opinion,

21  delivered to Tribune.  We've got a smaller number of

22  valuations, but still a significant number at step two.  I

23  needed to be familiar with those and then start to form my

24  own views about valuation and solvency, because that's going

25  to go into fraudulent conveyance and avoidance, either at

1    step one or step two.  I also had to understand what are the

2    amounts of the claims; where do they fall; are they at the

3    Tribune level or at the -- are they at the subsidiary level,

4    so that I could model, once I make a concrete judgment about

5    which claims are allowed, what does that imply in terms of

6    recoveries?  And then, I had to understand the legal overlay

7    well enough to assess partly what I thought about the

8    likelihood of success of legal claims, but probably more

9    importantly, to assess let me call it the range within which

10   I thought a reasonable settlement might lie, from a low end

11   to a high end.

12   Q    Okay.  Now, have you prepared a written report in this

13   case?

14   A    I have.

15   Q    Okay.  And does that report summarize the opinions

16   that you've reached and the process by which you've reached

17   them?

18   A    Yes, it does.

19         MR. DUCAYET:  Okay.  Your Honor, at this point,

20   I'd like to offer into the record, Mr. Black's opinion,

21   which is in your binder, under the tab DCL Exhibit 1484.

22         THE COURT:  Is there any objection?

23         MR. ZENSKY:  Your Honor, I'd just -- the record

24   should reflect it's the amended report that was served last

25   night, not the original report being offered at this point.

1        MR. DUCAYET:  Let me ask about that, if I can

2   help get it clarified, Your Honor, okay?

3   (No audible response)

4   BY MR. DUCAYET:

5   Q    Now, you just heard Mr. Zensky make mention of the

6   fact that this is an amended report.  Did you hear that?

7   A    That's correct.

8   Q    Okay.  Can you just briefly explain to the Court the

9   nature of the changes that you made between your original

10  report, which was served back on February 8, and the one

11  that you submitted yesterday?

12  A    Sure.  So there are probably three main sources.  One

13  is it turned out that, in the press of time to try to get

14  the report filed, one of the tables way at the back, at page

15  171, got messed up in some way.  I don't know how, so it's

16  been replaced with the correct table.  Second, in the

17  spreadsheet model that underlies the numerical estimates in

18  my report, there was one place where the model was a little

19  bit out of line with what I said in the report.  I think the

20  model is reasonable, the report is reasonable.  They didn't

21  line up right on top of each other, so I made the decision

22  to change the model, and that changed the numbers in the

23  report a little bit, with regard to the probability that you

24  would look at step one and step two together, as a single

25  transaction.  Third, in deposition last week, Mr. Zensky

1  pushed me hard, and I would say quite constructively, on the

2  relative weight that I wanted to give to different outcomes

3  under different views of the case.  And in response to that,

4  I went back and rethought and decided that I should adjust

5  some of the probabilities that I assigned to particular

6  outcomes.

7              MR. DUCAYET:  Okay.

8              THE COURT:  So --

9              MR. DUCAYET:  It --

10              THE COURT:  -- is there any objection to the

11  admission of DCL 1484?

12              MR. ZENSKY:  No objection.

13              THE COURT:  It's admitted without objection.

14  (DCL 1484 received in evidence.)

15              MR. DUCAYET:  Thank you.

16  BY MR. DUCAYET:

17  Q    Okay, Professor Black, let's see if we can start to

18  drill down a little bit into the methodology that you

19  followed here.  In connection with forming your opinion

20  about the reasonableness of the settlement, what was the

21  first thing you did?

22  A    So I don't remember what the first thing I did was.  I

23  tried --

24  Q    Okay.

25  A    -- to learn the facts and the law.

1   Q     Okay.  After the -- after you had come to some

2   reasonable understanding of the facts and the law, in terms

3   of analytically, what is the first thing that you started

4   with?

5   A     So what I ended up trying to do, in big picture, is to

6   decide for myself: what are the main possible outcomes here,

7   all right; what are the different ways that the main legal

8   issues can come out; and then model, numerically, which

9   creditor class recovers how much in each of those main

10  outcomes.  So that would be a good starting place.

11  Q     Okay.  And can we refer to those as scenarios?

12  A     Yes, I will -- I call them scenarios.

13  Q     You call them scenarios.  Do you know if this is

14  something the examiner did as well?

15  A     The examiner did something very similar.  I think this

16  case almost forces you to do that, so you have to think

17  through two steps and two levels, and then have different

18  possible outcomes for Tribune and for the guarantor subs at

19  both step one and step two, and that's what my scenarios

20  are.

21  Q     Okay.  And have you prepared a chart that shows the

22  scenarios?

23  A     I have.

24  Q     Okay.  Why don't we put that up?  It's chart one,

25  slide one.  Okay.  So Professor Black, what is slide one

1  here?

2  A     So slide one is just listing my six main scenarios for

3  which I analyzed recoveries.

4  Q     Okay.  And how do these relate to the scenarios that

5  the examiner put together?

6  A     So let me walk through what they are, and then I'm

7  going to end up saying the examiner has the exact same six

8  main scenarios.

9  Q     Okay.

10  A     There are some sub-assumptions that different slightly

11  between me and the examiner, but they don't drive dollars.

12  My dollars will also be a little different than his, because

13  Tribune's valuation is higher than at the time the examiner

14  wrote his report, but in substance, I called mine A, B, C,

15  D, E, and F, to match his 1, 2, 3, 4, 5, 6.  He's got the

16  same six basic scenarios in his report.

17  Q     Okay.  Why don't we start at the top then?  Can you

18  just briefly describe what scenario A is?

19  A     So scenario A is labeled "no avoidance", and you can

20  think of that as no insolvency.  There's a difference

21  between the two.  I want to come back it, but think of that

22  as no insolvency.  So at the end of the day, lots of sound

23  and fury and noise about how this was a terrible deal, and

24  you decide no insolvency.  Tribune was solvent.  The

25  guarantor subs were solvent after all.  That's scenario A.

1  Q    And that's at --

2  A    And --

3  Q    -- both steps?

4  A    That's a great outcome for the banks, obviously,

5  right?  They get to collect with their full dollar amount,

6  and the notes recovery is fairly minimal in that scenario.

7  Q    Okay.  And what's scenario B?

8  A    So scenarios B and C say, okay, but as the deal went

9  along, step two had another $3.7 billion in debt, and

10  Tribune's business was worse at step two than step one, so

11  if you're going to find insolvency, it's going to be a lot

12  easier to find it at step two than at step one.  What if

13  that happens?  What if you find that Tribune was insolvent

14  in one of the relevant senses at step two?  And once you do

15  that, you might decide that Tribune was insolvent, but the

16  subs were still solvent all the way through.  That would be

17  scenario B.  And scenario C is, at step two, both Tribune

18  and the subs are insolvent.

19  Q    Okay.  And then, with respect to scenario D, is it

20  useful to categorize D, E, and F together?

21  A    Yes, so the next three logical possibilities, if I can

22  call it that, are you say not only were they insolvent at

23  step two, but at least Tribune was insolvent at step one at

24  the time of the tender offer, and I'll have to come back to

25  how one might reach that judgment.  Once you decide that

1  Tribune is insolvent at the time of the tender offer, you

2  then have the same question about the subs: were they

3  insolvent not at all, which would be scenario D; were they

4  insolvent only at step two but not at step one, which would

5  be scenario E; and finally, were both Tribune and the subs

6  insolvent all the way through, that's scenario F, which I

7  call full avoidance.  Scenario F will also capture --

8  suppose you decide that even though Tribune and/or the subs

9  were solvent in the relevant senses, you know what, Tribune

10 had actual intent to hinder, delay, or defraud creditors,

11 because that's another route to avoidance under the

12 fraudulent conveyance statute.  Scenario F will also capture

13 the possibility that you say, well, Tribune was solvent.

14 Tribune didn't have actual intent, but the banks misbehaved

15 in some serious way that justifies equitably subordinating

16 the banks to the other creditors.  And I've assumed that if

17 you did that, you would do it both at the Tribune level and

18 at the subsidiary level.  So that's another way to get to

19 scenario F.

20 Q     And you may have anticipated my next question, which

21 is I think you referenced the fact that you refer to these

22 as avoidance scenarios as opposed to insolvency scenarios,

23 and why is that?

24 A     So one reason is because of the possibility of bank --

25 of Tribune actual intent or bank equitable subordination.

1  The other possibility, probably the more important one in

2  practice, is the banks have raised a series of, let me call

3  them, statutory defenses to avoidance that basically say, it

4  doesn't matter if Tribune was insolvent; we still get to

5  collect on our loans anyway.  So there is some Tribune level

6  insolvent -- level statutory defenses that protect against

7  avoidance, given insolvency.  And then, there is some sub

8  level defenses that say, even if the subs were insolvent,

9  fine; you avoid the bank loans.  But they're still

10  creditors.  They come ahead of equity, so they come back.

11  After you've paid off the sub trade creditors, there isn't

12  much in the way of sub trade credit.  So effectively, the

13  banks come back, and it's as if their loans were not avoided

14  to begin with.  So those are the sub statutory defenses.  In

15  terms of my scenarios, the Tribune level defenses will

16  principally move you up to scenario A, to no avoidance.  If

17  you can't avoid a Tribune, then you're in scenario A.  The

18  sub level defenses will move you from F to D, because you're

19  not avoiding at the subs, or potentially from C to B.  Those

20  will be the principle moves for the sub level defenses.

21  Q    Okay.  And before we drill down a little bit further,

22  as you undertook your analysis, did you determine that there

23  was a particular scenario or scenarios that was more

24  important for assessing the reasonableness of a settlement?

25  A    Yeah, so it's -- becomes very-quickly clear that the

1  key scenario here that's going to drive recoveries to the

2  notes is going to be scenario F, the full avoidance

3  scenario.  You knock out everything in step one.

4  Q    Okay.  Now is it possible to calculate recoveries to

5  the different creditor classes using these scenarios?

6  A    Yes, it is.

7  Q    And is that --

8  A    And I then proceeded to do that.

9  Q    Okay.  Well, and before we get there, is that

10  something the examiner did as well?

11  A    The examiner did that as well, so --

12  Q    And where does --

13  A    -- I have scenarios where I calculate recoveries.

14  We'll see that in a minute.  This -- the examiner, in Volume

15  II, Annex B, has his scenarios with his recovery estimates,

16  and they're very close to mine.

17  Q    Okay.  Now, you did, in fact, calculate recoveries

18  under these different scenarios?

19  A    I did.

20  Q    And how did you do that?

21  A    So I started at the Tribune level, and I said, what's

22  the value of Tribune?  The basic value -- I was taking the

23  value numbers from Alvarez and Marsal.  I wasn't trying to

24  compute those myself.  I took the overall enterprise value

25  of 6.75 billion from the work of Lazard that you'll hear

1  about later.  I wasn't trying to estimate that for myself.

2  And I said, okay, there's 6.75 billion of total value.

3  Alvarez says there's 873 million at Tribune.  The rest is at

4  the guarantor subs.  In addition, in some of these

5  scenarios, if you're avoiding bank debt, Tribune made

6  partial payments on its bank debt between the time of the

7  leverage buyout and the time of the bankruptcy, and so some

8  of that money should come back into Tribune in the form of

9  disgorgement.  So the Tribune value will be a base value of

10  873 million plus disgorgement.  If you avoid step two of

11  Tribune, you're going to have step two disgorgement.  If you

12  avoid step one of Tribune, you're going to have step one

13  disgorgement as well.

14  Q     Okay.  Now, have you prepared a chart that shows the

15  results of the recovery analysis you've just described?

16  A     Yes.

17  Q     Okay.  Why don't we put those up?  It's going to be

18  two.  Let's start with two.  So what's been now put up on

19  screen is table one.  Do you see that?

20  A     Yes.

21  Q     Okay.  Can you just describe what that is?

22  A     Yeah, so this is basically table one out of my report,

23  where I take the six scenarios.  I run them through a

24  spreadsheet model of what are the allowed claims at both

25  Tribune and the subsidiaries in each of the six scenarios,

1   and then how much of the total of $6.75 billion gets

2   recovered plus taking into account disgorgement in all

3   scenarios except scenario F.

4   Q     Okay.  And directing your attention to the notes row,

5   do you see that?

6   A     Yes.

7   Q     Okay.  And I think you mentioned earlier that you

8   found scenario F to be particularly significant to your

9   analysis, right?

10  A     That's right.

11  Q     And is that reflected on the notes row here?

12  A     Yeah, so table one is going to show you scenarios A

13  through F, and then I've put the DCL plan in the last column

14  for comparison.  But let's look at the notes row.  The

15  numbers are 61, 105, 169, 272, 286, and then they jump all

16  the way up to 1,433.  1,433 is the notes recover their full

17  claim amount plus post-petition interest.  Okay.  That's the

18  homerun scenario for the notes.  And what that's telling you

19  is the key to recovery for the notes and therefore the key

20  to a settlement analysis of what's a reasonable settlement

21  is scenario F is the homerun for the notes.  What are the

22  chances that they're going to hit a homerun, because that's

23  just way, way more than everything else?  And as you'll see,

24  this is before third-party recoveries.  I'll have another

25  table with third-party recoveries.  The DCL plan is below

1  scenario F and above everything else.  So in that sense,

2  it's a classic settlement.  It's a middle-road outcome.

3  It's better than five of the six; it's worse than scenario

4  F.  Now, if you thought scenario F was a slam-dunk, you

5  wouldn't be settling for the amount in the DCL plan.  If you

6  thought it was a long shot, then the DCL plan is going to

7  look a lot better.  As between scenarios A, B, C, D, and E,

8  it doesn't matter so much, because the numbers are not

9  radically different.  What matters, at the end of the day,

10  is what's the likelihood that you get to scenario F, by one

11  route or another.

12  Q     Okay.  And you mentioned that you had -- so on the far

13  right-hand column here, we've got the DCL plan.  And this is

14  a calculation before third-party recoveries?

15  A     That's right.

16  Q     And --

17  A     So the DCL plan sends -- creates a litigation trust.

18  It's going to sue a bunch of third parties, non-creditors,

19  and it will recover whatever it will recover.  I think the

20  recoveries are expected to be substantial.  I'll talk later

21  about what I think they will be.  And the DCL plan sends

22  those recoveries disproportionately to the notes.  The notes

23  get the first 90 million.  The next 20 million goes to pay

24  back for litigation trust.  Then, the notes get 65 percent

25  of everything over that, until they've been paid off in

1  full.  And then, the 65 percent starts going to the PHONES.

2  Q    Okay.  Did you prepare a chart that shows this with

3  the DCL plan's plus the third-party recoveries?

4  A    Yes, I did, and that's going to be table two, in the

5  next tab.  So --

6  Q    And what's this show, sir?

7  A    What I did in table two is I used an illustrative -- I

8  think a conservative amount of $300 million in litigation

9  trust recoveries, net of the $20 million used to fund the

10 litigation trust.  And then first, I said, under the

11 different scenarios, who gets those $300 million.  And in

12 most of the scenarios, the lion's share of that $300 million

13 goes to the banks.  So scenarios A through F don't move up a

14 whole lot.  If you compare table two to table one, the notes

15 range in table one starts at 61.  The notes range in table

16 two starts at 83.  In table one, scenario E, which is the

17 highest short of F, is at 286, and it goes up to 352.  So

18 most of the litigation trust recoveries are going to the

19 banks here.  In scenario F, they all go to the banks,

20 because the notes are already paid off in full.

21 Q    Um-hum.

22 A    In contrast, in the DCL plan, most of the litigation

23 trust recoveries go to the notes, so what you see here is

24 the DCL plan is now at 659 instead of 432.  And so before,

25 it was above scenario E, but not usually above.  Now, it's

1    way above A through E, and it's, you know, basically a bit

2    more than 50-percent recovery of claim amount.  So the

3    message here is the litigation trust recoveries are central

4    to assessing the overall reasonableness of the DCL plan, and

5    it looks a whole lot better with those recoveries.  It looks

6    fine without them.  I'll testify to that.  It looks very

7    good without them, but it really looks excellent with them.

8    Q     Okay.  Now, Professor Black, let's, if we could, move

9    on to the next step in the process that you've followed to

10   develop your opinions.  After having developed the scenarios

11   that you've just testified about, what did you do next?

12   A     So next, I tried to think about how might this case be

13   settled, and I developed what I want to call six settlement

14   cases -- not full litigation cases, but what might you

15   settle for in the shadow of litigation.  And I was

16   principally concerned with setting up a settlement range, so

17   I had a low-settlement case, and my view of the low-

18   settlement case was I imagined I'm counsel to the banks and

19   I have a strongly bank-favorable view of the facts, and I

20   have a strongly bank-favorable view of the law, and I know

21   there's another side.  This is a settlement case.  But

22   nevertheless, this was a good deal.  Tribune was solvent all

23   the way through.  The law's on my side.  I don't want to pay

24   very much to settle this case.  That was the low-settlement

25   case, and you'll see that later in discreet decisions I made

1   about assigning probabilities to different outcomes.  I'm

2   evaluating things, not ridiculously favorable to notes -- to

3   the banks, but strongly favorable to the banks.

4   Q    And Professor Black, before you continue, why don't we

5   put up a chart, if we could, that shows each of the

6   different settlement cases?  It might be helpful --

7   A    Sure.

8   Q    -- to folks in the courtroom.  Do you see that?

9   A    Yes.

10  Q    Okay.

11  A    So the next thing I did is go to the other extreme and

12  say, what's a high-settlement case, where now I'm imagining

13  I'm counsel to the senior notes, and I think Tribune was

14  insolvent from day one, and I think that the banks knew it,

15  and I think the law is on my side, and I think we should

16  treat this all as one, integrated transaction.  Okay.

17  There's another side.  I might not win, but I've got a

18  really good shot at winning.  And I ask the question: how

19  good of a shot do I have with my notes-favorable hat on of,

20  in effect, getting to scenario F, because that's what's

21  going to drive the dollars?  Then, I have four others here.

22  I had a low-mid settlement, where I -- instead of being

23  strongly favorable to the banks, I was moderately favorable

24  to the banks.  I was leaning to the banks, but not as hard.

25  I've got a mid-high settlement, where I was leaning to the

1  notes.  And then, I also said, okay, we've got the examiner

2  report, and he has opinions on many of the relevant issues

3  that would go into assessing a settlement.  Not all of them.

4  There are important issues that he doesn't offer an opinion

5  on, but he's got lots of opinions.  Let me do my best to

6  read and understand the examiner report, what he says, why

7  he says it, what his analysis is, and if I had to pick a

8  number that best represents -- or not a number, a set of

9  probabilities that best represent where the examiner is,

10  where would that be.  And then, maybe as a matter of

11  disciplining myself, I wanted to say, okay, Professor Black,

12  if you were doing this yourself, where would you assign the

13  probabilities.  This is not where I would come out.  All

14  right.  This is where I would assign the probabilities as to

15  where you might come out.  So they're not going to be 100:0.

16  They're just going to be a different assessment of where you

17  might come out after a full trial and all the facts.

18  Q    Okay.  Now, once you've developed -- you've got your

19  scenarios, right, and now you've got your cases --

20  A    Um-hum.

21  Q    -- did you put those together, in some way?

22  A    Yeah, so the next step was to put the scenarios

23  together with the cases, and in order to do that, I had to

24  say, for each of these six cases, each of the six scenarios,

25  I've got to assign a probability, and the probabilities have

1   to add up to 100 percent for each of the six cases.  So

2   that's what I set out to do next.

3   Q     Okay.  And we'll get to the specific probabilities in

4   a couple of minutes, but before we do that, let me just ask

5   you an overall question, which is what exactly is it that is

6   driving dollars to a notes recovery, as you've now put forth

7   these settlement cases and the scenarios?

8   A     So what's going to drive recoveries to the notes is

9   scenario F.  So then the next question is what drives --

10  Q     What drives scenario F?

11  A     -- scenario F.  What's going to drive scenario F first

12  is a concept that I want to call step integration.  The

13  examiner calls it collapse, which is you smoosh everything

14  together and look at it at the time of step one, and imagine

15  that step two is a dead cinch to be completed, so you're

16  going to count the step-two debt at the time of step one in

17  assessing balance-sheet solvency, in assessing cash-flow

18  solvency, cash-flow cushion, or potentially in assessing

19  both.  That's going to be a key question here, because if

20  you don't smoosh the two together, step one, on its own,

21  looks pretty good.

22  Q     Professor Black --

23  A     I think there's general agreement on that.

24  Q     Let me just stop you there, and as you've described

25  it, step integration -- the concept of step integration is a

1  key input?

2  A     Yes, it is.

3  Q     Why don't we then take a minute and see if we can walk

4  through, in a little bit more detail, what you mean by step

5  integration, okay?

6  A     Okay.

7  Q     And you've prepared a chart that shows, generally, the

8  different kinds of step integration?

9  A     I have.

10 Q     Okay.  Why don't we put that up on screen there?  It's

11 going to be six.  Okay.  Professor Black --

12 A     Okay.

13 Q     -- what's this?

14 A     So this is the three flavors, if I can call it that,

15 of step integration that are potentially applicable to this

16 case.  One possibility, the notes-friendly possibility, is

17 formal step integration or collapse.  And as the examiner

18 describes it, you imagine that once step one happens, step

19 two is on autopilot.  step two was -- they were never ever

20 going to stop after step one, or hardly ever, and therefore,

21 you should count the step-two debt at step one.  Indeed, in

22 the examiner's view, you don't count just the actual step-

23 two debt; you count the expected step-two debt, which was

24 500 million more than they actually borrowed at the time of

25 step one, but you also assess solvency at the time of the

1    tender offer, at the time of step one, in June and not in

2    December.   And in my understanding, and I believe in the

3    examiner's understanding, you then don't look again.   It's

4    possible you could look again, but my central judgment was

5    the logic of step integration is this is all one, integrated

6    transaction, and you look once and assess it at one point in

7    time.   And if you do that, you then go through the different

8    possibilities for Tribune, the guarantor subs, or both, to

9    be insolvent, and that's going to be balance-sheet solvency,

10   you know, solvency as the bankruptcy code calls it, cash-

11   flow solvency, which is ability to pay debts, as the

12   bankruptcy code calls it, and cash-flow cushion, which is

13   unreasonably small capital, as the bankruptcy code calls it.

14   Q     And then, underneath that, you've got a line that says

15   informal step integration at step one.   Do you see that?

16   A     Yes.

17   Q     And can you describe what that refers to?

18   A     So this is really the examiner's concept.   Formal step

19   integration is, in the law, whether it applies to this case,

20   unclear.   All right.   But there are prior cases that apply

21   step integration.   There are prior cases that don't apply

22   step integration.   Informal step integration is the

23   examiner's concept of what you might do if you don't apply

24   formal step integration.   And his view was, even if you

25   don't collapse the two steps together, you might've done

1   step one without step two.  At the time of step one,

2   Tribune's plan was to do step two, and therefore, for cash-

3   flow purposes -- cash-flow solvency, cash-flow cushion --

4   you should count the step-two debt in assessing whether

5   Tribune had enough cash-flow to handle the step-two debt,

6   assuming it was incurred.  In his view, you don't do this on

7   the balance-sheet side.  Those are, then, separate tests.

8   So in the informal route, step one and step two are looked

9   at separately.  There is a second look at step two, but at

10  step one, you're integrating on the cash-flow side and not

11  integrating on the balance-sheet side.  Now, this is a new

12  concept.  The examiner likes it and puts a high probability

13  on it.  My view is this is possible.  It's reasonable.  You

14  know, I can see how the examiner gets there, under the

15  statute, but I can also see counter-argument, so my view

16  might be to put a lower probability on informal step

17  integration, but that's a matter on which reasonable people

18  can disagree.

19  Q     Professor Black, you just referred in your answer to

20  something called a second look.

21  A     Yes.

22  Q     What do you mean by that?

23  A     That means the -- reassess solvency at the time of

24  step two.  Now, we know that Tribune, in fact, reassessed

25  solvency at the time of step two, so the formal structure of

1   the deal was they got a solvency opinion at step one that

2   was limited to step one, that didn't look forward.  And

3   then, at step two, they were going to have another solvency

4   opinion as of step two, as of the time of step two, that

5   included the extra debt and included developments in

6   Tribune's business between the time of step one and step

7   two.  So the second look would be if Tribune was insolvent

8   at the time of step one, step two doesn't matter: they're

9   already insolvent.  If they were solvent at the time of step

10  one, you would then take a second look and say, are they

11  still solvent at the time of step two, in the relevant

12  senses.

13  Q    Okay.  And then, the last category you have here is no

14  step integration.

15  A    Yes.

16  Q    And what does that refer to?

17  A    That means the way it sounds.  step one stands on its

18  own.  You count only the step-one debt in assessing solvency

19  at step one.  step two stands on its own.  You reassess

20  solvency at step two, including all of the debt.

21  Q    Okay.  Thank you.  Now, stepping back for a second to

22  reorient ourselves, you were referring to some of the key

23  issues that drive recoveries to the notes under your various

24  probabilities, and you've --

25  A    Yes.

1  Q       -- identified then step integration is one of those

2  key issues.

3  A       Yeah.

4  Q       Are there others?

5  A       Yes, so one key issue is step integration, because if

6  you don't have either formal or informal step integration,

7  it's hard to get to full insolvency at step one.  It's just

8  really hard.  A second key issue is then going to be, okay,

9  suppose you integrate.  You're at step one.  How does

10 Tribune look?  What was its balance-sheet value?  What was

11 the amount of its debt?  What was the amount of its assets,

12 its property in the bankruptcy code term?  A key element of

13 that is Tribune was an S-ESOP or was planned to be an S-ESOP

14 after the merger, and so a live issue in this case is

15 whether two different forms of tax value that are special to

16 S-ESOPs should be counted as property under the bankruptcy

17 code and therefore count toward balance-sheet capital.  And

18 so the way I handled those in my cases was in the low-

19 settlement case, which is the bank-friendly case, I said,

20 heck yes; these sources of value count, and they're going to

21 drive down the likelihood of balance-sheet insolvency.  Not

22 100 percent.  There's another side, but there's a high

23 probability that one or the other of these two sources of

24 value you would decide to count.  In my high-settlement

25 case, my notes-favoring view of the world, I said, hey, I

1    never heard of one of these before, this asset disposition

2    tax value that Black has in his report.  I'm sure not going

3    to put much of a probability on that.  I know it's not

4    impossible, but it's a low probability.  The second one is

5    the -- which I call cash-flow tax value is the present value

6    to the Tribune of the tax savings from being an S-ESOP and

7    not paying income tax.  Well, Tribune had that value, but

8    they couldn't sell it to anybody else, unless the somebody

9    else was an S-ESOP, so that shouldn't count either.  Okay.

10   There's an argument that it should count, but low

11   probability, high probability that neither one of these

12   counts, in my notes-favoring view of the world, and

13   therefore, a higher probability of balance-sheet insolvency.

14   So drilling down a level, what gets you to scenario F with

15   formal step integration, balance-sheet solvency, and

16   therefore, tax value is going to be an important element.

17   Q    Okay.  Are there other forms of solvency that are

18   relevant to your analysis?

19   A    Yeah, so the other main form is cash-flow solvency and

20   cash-flow cushion.  The tougher test is cash-flow cushion.

21   All right.  Are you not only cash-flow solvent, but you can

22   weather reasonable bumps in the road, downturns, recessions?

23   And so I focused on what's the likelihood of cash-flow

24   cushion, and that's going to turn on your view of what was

25   known at the time about the newspaper business and the

1  broadcasting business, because those were Tribune's two

2  basic businesses: newspapers and broadcasting.  They had

3  important other investments.  They had an investment in TV

4  foods.  They had some internet investments.  But still, they

5  were dominated by publishing and broadcasting.  What's your

6  view of publishing?  What's your view of broadcasting?  What

7  does the future hold for these businesses in a time of rapid

8  technological change and emergence of the internet?  And

9  it's no secret that the internet has not been good for the

10 newspaper business.  The question was, okay, how bad is it?

11 And people could have differing views on that, and the issue

12 for you would be sitting in June 2007, what was it

13 reasonable to think the future held for the newspaper

14 business.  And therefore, did Tribune have enough cash-flow

15 to pay its debts in, you know, a reasonable set of future

16 circumstances?  And so forming a judgment on that would be

17 an important part of my assessment of the likelihood of

18 getting to scenario F.

19 Q     Okay.  So let's see if I can summarize so far.  We've

20 got step integration, right?

21 A     Yep.

22 Q     We've got balance-sheet solvency.

23 A     Which turns on tax value --

24 Q     Turns on tax value.

25 A     -- in part.

1  Q    And you've got cash-flow solvency or cash-flow

2  cushion.

3  A    Yes.

4  Q    And that turns on, essentially, an issue about the

5  state of the business at the time.

6  A    The state of the business and the reasonableness of

7  the projections.

8  Q    Okay.  And are there other, then, key issues that

9  drive the likelihood that you're going to get to scenario F

10 and therefore to a substantial recovery?

11 A    Yeah, so I think there are going to be two other major

12 drivers of value, and in my work and in my report, I really

13 try to concentrate on what's really driving dollars of

14 expected recovery.  So the third big question, potentially

15 big question, is Tribune actual intent or bank-equitable

16 subordination.  And I formed the view that if you decide

17 that Tribune is solvent, you're probably going to decide

18 there was no actual intent either and there was no basis for

19 equitable subordination either.  So I assigned those, not a

20 zero probability, but a low probability in all of my cases.

21 Q    And can you just explain that a little bit more,

22 please?

23 A    Sure.  So the scenario that I'm imagining is you've

24 decided that Tribune is cash-flow solvent and it has a cash-

25 flow cushion and it can weather bumps in the road.  And

1  then, you're asked, did Tribune have an actual intent to

2  hinder, delay, or defraud creditors.  And it seems to me to

3  be unlikely that you would reach that conclusion, because

4  there's evidence in the record this is a highly leveraged

5  transaction.  There were certainly some future circumstances

6  that Tribune could not survive, including the ones that it

7  did not survive.  But if you form the judgment that, you

8  know what, they could make it through -- they had cash-flow

9  solvency and they had cash-flow cushion -- the facts don't

10  lend themselves to your also concluding, well, they were

11  intending to do dirt to their existing creditors in some

12  way.  They were intending to complete a highly leveraged

13  transaction.  Absolutely, especially at step two.  They knew

14  there were some issues about solvency.  Absolutely.  But

15  assuming they're solvent, what did they do wrong?  That was

16  my view.  So a little bit -- some possibility you would get

17  there, but not very likely.  And really the same thing for

18  the kind of egregious misbehavior that you need to find for

19  equitable subordination of a third party, not an insider,

20  that in the case where the banks made loans that Tribune

21  could pay back -- it's cash-flow solvent and it has a cash-

22  flow cushion -- really hard to see how the e-mail saying,

23  well, maybe we're loading them up in -- with too much debt,

24  and we're not sure they're going to make it through, and so

25  on, that those are going to add up to egregious misbehavior,

1    because it's going to look more like okay, they took a look

2    and the transaction was close, and it was on the right side

3    of the line, and they got it right.  And your judgment would

4    be, in that scenario, they got it right.  So I put low

5    probabilities -- not zero, but low probabilities on those.

6    Q     Okay.  All right.  So we've got step integration.

7    We've got balance-sheet solvency.  We've got cash-flow

8    solvency or cushion.  We've got actual intent, equitable

9    subordination.  Is there anything else?

10   A     The next piece is going to be the statutory defenses.

11   Q     Okay.  What do you mean?

12   A     What do you think of the statutory defenses, and

13   especially because scenario F is the key scenario, how much

14   do they pull away from scenario F?

15   Q     Well, can you explain what you mean by that?

16   A     Yeah, so let me offer an example.  Let me use the

17   examiner case, for example.  Okay.  So we've got -- maybe,

18   can I do this?  Table three?

19   Q     Sure.  So -- okay, well you've jumped ahead just a

20   little bit, because I wanted to wait and then put up the

21   probabilities, but since we're there --

22   A     Okay.

23   Q     -- let's do that now.

24   A     All right.

25   Q     Did you develop a set of probabilities with respect to

1  each of the different possibilities for your scenarios and

2  your cases?

3  A    Yes, I did, and that's table three.

4  Q    Okay.

5  A    That's where I turn my bank-favoring or notes-favoring

6  or Black or examiner case into estimated probabilities.

7  Q    Okay.  Now, before we get to a discussion of the

8  examiner case, let's just make sure we're clear on what

9  we're talking about here.

10  A    Okay.

11  Q    So what do you mean when you say statutory defenses?

12  A    Okay.  So the banks have raised several statutory

13  defenses at the Tribune level.  One is, we paid money to

14  Tribune.  They got value for our loans, and therefore, you

15  can't avoid our loans.  Now, there's a line of cases in the

16  3rd Circuit, in leverage buyouts that says, no, the money

17  went into Tribune, stayed there for a millisecond, and went

18  out to shareholders, and so we're going to treat that money

19  as if it never went to Tribune at all, and therefore,

20  Tribune got no value for it.  We're going to integrate

21  payment within each step.  Payment integration, not step

22  integration.  The money went right through Tribune.  Tribune

23  got no value.  And therefore, the bank loans are potentially

24  subject to avoidance.  But the banks have an argument that

25  the prior cases finding payment integration don't apply in

1  this case.  I think it's a weak argument.  The examiner

2  think it's a weak argument.  But it's not zero percent.

3  There's some possibility of that.  Stronger argument is

4  there were 2006 amendments to Section 546(e) of the

5  bankruptcy code, which says, in a leverage buyout, okay, it

6  was constructive fraud.  You can't grab the money back from

7  the shareholders.  We're not going to avoid the payments to

8  shareholders.  The banks have a technical argument that the

9  2006 amendments also protect them from avoidance: that

10  Congress changed the law in a major way.  Again, I don't

11  think it's a great argument.  The examiner doesn't think

12  it's a great argument, but he puts it at reasonably

13  unlikely.  It's not in his lowest category of highly

14  unlikely, so he's giving some serious possibility to the

15  potential for the 546(e) defense, and that's going to draw

16  away from scenario F.

17  Q      Okay.

18  A      The other defenses, at the sub level, are -- the main

19  defense is going to be the value is trapped there, right?

20  Q      And what do you mean by that?

21  A      And so the subs are insolvent.  They pay off everybody

22  else.  They've got $6 billion of value left over, and they

23  pay it to whoever's left, which is the previously avoided

24  banks.  And the examiner puts that at reasonably unlikely.

25  So again, he's giving a significant possibility to the

1  banks, in effect, get to eat after the sub trade creditors

2  but before Tribune, as equity holder, and therefore before

3  the notes.  So that's going to pull away from F, towards D.

4  Q     Okay.  Are there any other issues or defenses that

5  drive the recoveries to the notes, sir?

6  A     I think those are going to be the main ones.  You're

7  going to be assessing the likelihood of full avoidance, full

8  insolvency, which is scenario F, but only in the cases where

9  the banks don't win one of their statutory defenses first.

10  So I think of the statutory defenses as coming off the top,

11  as it were, and blocking you from getting to full avoidance

12  if you otherwise would believe that the solvency analysis

13  gets you there.

14  Q     Okay.  Now, we've got, up on the screen here, table

15  three, which has a lot of percentages in it, right?

16  A     Yep.

17  Q     Let's see if we can't try to make some sense of the

18  percentages here --

19  A     Okay.

20  Q     -- and maybe one way to do that is, let's focus on a

21  particular column, okay?

22  A     Um-hum.

23  Q     And then, you can sort of explain to us how the

24  percentages work within the column.  And let's start, if we

25  could, with the low-settlement case.  That's the column to

1    the left there.

2    A    Yep.

3    Q    Do you see that?

4    A    Yep.

5    Q    And could you just remind us what the low-settlement

6    case is?

7    A    So this is imagining that I'm counsel to the banks,

8    and I really like my case.  There's some amount I'm willing

9    to pay to settle, but you know what, not so much.

10   Q    Okay.

11   A    Or conversely, a settlement level at which, if I'm

12   bank counsel and I have an opportunity to settle at this

13   level, I say to my client, you better take it, before it

14   runs away.  And so, what you're going to see here is for

15   step-one avoidance of Tribune, scenarios D, E, and F, those

16   are all small numbers.  They only add up to seven percent.

17   Why is that?  Well, mostly, that's driven by step

18   integration, because with my bank-favoring hat on, I say,

19   there's not going to be step integration.  And if there's

20   not step integration, there's not going to be step-one

21   insolvency, so now I'm already up in A, B, and C.  Not only

22   that, if there was step integration, I've got a good chance

23   of winning on one of the statutory defenses, okay.  I might

24   get from F to D, or I might get from F all the way up to A.

25   So that, too, is going to pull away from the lower part of

1  the chart, and that's why those numbers are so small.  So in

2  my bank-friendly case, I'm assigning a four-percent chance

3  to scenario F.  That's pretty low.  Conversely, there's lots

4  of weight up on A, B, and C.  All right.  Some weight on A,

5  which is no avoidance, but actually, a lot of that is coming

6  from the statutory defenses, because in my bank-favoring

7  mode, I think the statutory defenses are pretty good.  Some

8  of it is going to come from the possibility that Tribune was

9  solvent all the way through.  But in fact, most of it

10 actually comes from the statutory defenses.  So my view of

11 the facts of this case was, even with my bank-favoring hat

12 on, it's hard to get Tribune to be insolvent at step two.

13 Not impossible, but it's hard.

14 Q    Okay.  Let's then see if we could move to the other

15 extreme and have you walk through -- by the way, before we

16 move off that, you've got a line here that says total

17 probability there, and it's 100 percent.

18 A    Yes.

19 Q    And what is -- what does that reflect in terms of what

20 the column --

21 A    That's just my discipline, which is all of the

22 possibilities taken together have to add up to 100 percent,

23 so something that comes out of one scenario has to go

24 somewhere else --

25 Q    So if I'm --

1  A      -- any probability weight, if I can call it that.

2  Q      So if I'm understanding you right, the probability

3  weights are getting distributed -- 100 percent of the

4  probability is being distributed across the various

5  scenarios, sir?

6  A      That's right.

7  Q      Okay.  Now, let's turn, then, to the other extreme,

8  which is the high-settlement case, and can you just remind

9  us what the high-settlement case is, please?

10  A      So this is going to be my notes-favorable view of the

11  facts and the law and a view that says, you know, if I'm

12  counsel to the notes and I get a bank offer to settle at

13  this level, I better take it, before it runs away.  And

14  here, what you're going to see is much higher probabilities

15  on D, E, and F, and I'm getting up to 27 percent on F.  So

16  as you look across, as I go from low-settlement to low-mid

17  to mid-high to high, scenario F goes 4, 8, 15, 27.  I'll

18  talk later about why it's hard to get it much above 27, even

19  in a notes-favoring view of the world.  But overall, in this

20  state of the world, between D, E, and F, I've got 48-percent

21  weight.  What that's coming from is I've got a very good

22  chance of formal step integration and a really good chance

23  of formal -- or informal step integration.  And now I'm up

24  at the plate, and I'm swinging for a homerun, and I might

25  hit one.  I might not.  Right?  I might not, but I've got a

1  real -- I'm up at the plate.  I've got a shot of convincing

2  the Judge that Tribune was insolvent from step one.  Now the

3  reason it's 48 percent instead of north of 50 is going to be

4  the statutory defenses, so if I have my notes-favoring view

5  of the world, I don't think much of these defenses.  They

6  aren't worth much.  There's a low probability, but it's not

7  zero, so maybe this would be 55 percent without the

8  statutory defenses -- certainly in the 50s.  And I'm

9  bringing it down to 48 to reflect the potential for

10 statutory defenses to be applied.  Conversely, there's going

11 to be less weight.  There's still significant weight on A,

12 B, and C.  And you're going to look at A and say, how did he

13 get to 23 percent on A after all?  This is the notes-

14 friendly case of the world?  Why isn't that 2 percent?  The

15 reason is two-fold.  First is the statutory defenses.  The

16 second is, with formal integration, you're standing up at

17 the plate in June, trying to hit a homerun, but you might

18 miss.  And if you miss, you don't take a second look, so

19 then you're all the way over to A.  So that's why there's

20 still a significant chance of A, even in the high-settlement

21 case.

22 Q    Okay.  Let's just do one more quickly, if we could,

23 and let's see if we can relate it now to the opinions that

24 were expressed by the examiner, okay?  So let's look at the

25 examiner case.  Can you just walk us through the relative

1    distribution of probabilities across the scenarios in the

2    examiner case?

3    A      Sure.  So here's what I did.  First, the examiner

4    thinks there's a good chance that, especially in the 546(e)

5    defense, will win.  He calls that reasonably unlikely.  He

6    doesn't give percentages for what highly unlikely means,

7    reasonably unlikely means, but I estimated that reasonably

8    unlikely was 20 to 35 percent -- I'm sorry, 15 to 30

9    percent.  And I said, okay, middle of the reasonably

10   unlikely range, he's given a 22.5-percent chance that 546(e)

11   will win.  I think it's lower than that, but that's what he

12   said, so I'm -- this is my effort to understand what he

13   said.  And then, there's some small chance of no payment

14   integration.  So all together, I think there's about a 25-

15   percent chance, in the examiner view of the world, that the

16   banks win on statutory defenses, and that means there's only

17   75 percent left for everything else.  Then I said, okay, the

18   examiner tells us what he thinks about formal step

19   integration.  He says it's somewhat unlikely but close.

20   What does that mean?  Well, maybe 40 percent, maybe 45

21   percent.  In this table, I made it 45 percent.  And then, he

22   tells us what he thinks about the likelihood of Tribune

23   balance-sheet solvency -- insolvency and sub balance-sheet

24   insolvency, if you have formal step integration, and he

25   tells us what he thinks about the likelihood of cash-flow

1  insolvency, lack of cash-flow cushion, if you have formal

2  step integration.  And what he says is the key here for F,

3  which is where I want to focus, is not Tribune on the

4  balance-sheet side; it's the subs.  So Tribune, he says,

5  balance-sheet insolvency is somewhat unlikely but a very

6  close call, so just under 50:50.  That means solvency is

7  just over 50:50.  He then turns to the guarantor subs and

8  says Tribune solvency is "likely", and the subs are more so,

9  because they have more value relative to their debt.  How

10  much is more so?  I don't know, but you know, 60-something

11  parent would be a rough estimate.  So he's telling you, most

12  of the time, you're not going to get to scenario F on

13  balance-sheet insolvency grounds, you know, at the subs.

14  Easier to get there at Tribune, but harder to get there at

15  the subs.  How about cash-flow?  He says cash-flow solvency

16  and cash-flow cushion is reasonably likely, and I'm going to

17  assign that a 70- to 85-percent range, so the middle of the

18  range is 77.5 percent.  So conversely, he's saying there's a

19  22.5-percent chance of cash-flow lack of cushion.  That's

20  not a high percentage either.  So what the examiner is

21  saying is you've got a good chance of integration, and

22  therefore getting to swing for a homerun, but you also have

23  a very good chance you're going to strike out.  An important

24  piece of this analysis is recognizing that the different

25  types of solvency are related, so that it's my view that

1  you're going to look at the -- Tribune's business at the

2  time and make an overall assessment, and your view of the

3  business is going to affect what you think about balance-

4  sheet solvency, and it's also going to affect what you think

5  about cash-flow insolvency.  So then, the same conclusions

6  that would lead you to find balance-sheet solvency would

7  lead you to find cash-flow cushion, and vice-versa, so these

8  are not independent, and that's going to be important to my

9  assessment, that it's not like these are two separate routes

10  and you get to stand up at the plate twice and swing twice.

11  It's the related routes.  They're not -- you get more than

12  one shot, but it's not like you've got two independent shots

13  at getting to full insolvency.  That was my view as to how

14  you would be likely to see the facts.  Put all that

15  together, where am I in the examiner case?  So I've got 25

16  percent statutory defenses getting you to A.  Seventy-five

17  percent left, right?  Out of the 75 percent left, I said,

18  you've got about a one-in-three shot of getting to full

19  insolvency, getting to scenario F on full insolvency.  One-

20  third of 75 percent is 25 percent.  But there are these sub

21  defenses, and the examiner thinks that sub value being

22  trapped at the subs is a decent defense.  He calls it

23  reasonably unlikely.  So out of my 25 percent on scenario F,

24  I'm going to take 5 percent away and put it in scenario D,

25  to respect the examiner's view of that defense.  That's how

1  I get to the 20-percent, full-avoidance probability.  Now,

2  the examiner doesn't think very much of Tribune solvency at

3  step two.  He tells you it's highly unlikely.  He think

4  balance-sheet solvency is highly unlikely.  He thinks cash-

5  flow solvency is highly unlikely.  You'll then ask, how do I

6  get to a 39-percent chance of scenario A in the examiner's

7  view of the world.  The answer's going to be 25 percent of

8  that is statutory defenses.  Most of the rest is you've got

9  formal step integration, and you've stood up at the plate in

10  June and you've swung and you missed, and that jumped you

11  over to A, because you didn't get a second chance.

12  Q     Okay.  Now, Professor Black, you said, now a number of

13  times, in your testimony, that what really drives recoveries

14  to the notes here is the likelihood of being in scenario F.

15  A     Yes.

16  Q     And you have a high-settlement case --

17  A     Yep.

18  Q     -- here, which is favorable to the notes, right?

19  A     Yes.

20  Q     And --

21  A     Intentionally so.

22  Q     Intentionally so.  And you've got a 27-percent chance

23  of full avoidance on the high-settlement case, right?

24  A     Right.

25  Q     That seems awfully low.

1    A    So the question is why is it so low.

2    Q    That's my question.

3    A    Okay.  So here's why it's so low.  Let's first -- even

4    in my notes-friendly state of the world, it's not for sure

5    you're going to get formal step integration.  So if I go

6    over to the next slide, to tab eight, you'll see how I built

7    up to the 27-percent chance.  So this is digging down a

8    level, right?  Table three already has 36 numbers on it.

9    Each one of those is going to be comprised of many other

10   numbers, at a further level down, but I think there's some

11   logic to them.  And so I said, with my notes-favoring hat

12   on, I'm going to give you a 50-percent chance of formal

13   integration and an 80-percent chance of formal -- or

14   informal integration.  I didn't want to put it higher than

15   that, because I think there are some real barriers to formal

16   step integration.  There's simply the six-month gap between

17   the two steps.  There is lots of evidence in the record that

18   Tribune planned a major cash distribution to shareholders of

19   17.50 a share before Sam Zell came along, and then, they

20   built that into the merger as step one.  He came in with a

21   one-step proposal, and they said, no, no, no.  We want a

22   tender offer up front, so whether the merger happens or not,

23   we've distributed our 17.50 a share to shareholders.  So

24   there's evidence in the record that says the steps were

25   thought of as independently -- I've already said, the

1   solvency opinions were independent.  So you're not going to

2   get to 100 percent, but I thought you could get up to 80

3   percent formal or informal step integration.  Then, suppose

4   your in formal step integration.  I then said what's the

5   best chance you have of hitting a homerun, and my sense of

6   that chance was 35 percent.  And how I got to 35 percent was

7   first I said, look, at step one, it's tough to drive the

8   subs insolvent, because Tribune was close.  without special

9   S-ESOP tax value, Tribune was close at step one, but the

10  subs have got another about $1.75 billion of value, so

11  Tribune would have to be not close to drive the subs

12  insolvent on the balance-sheet test, and that's going to be

13  hard to do.  In terms of numbers in this case, the deal --

14  the merger was at $34 a share.  For the subs to be insolvent

15  at step one, you would have to first conclude that neither

16  of these sources of tax value counts, and you would have to

17  say Tribune's value is $26 a share or less.  All right.  If

18  it's up in the upper 20s, Tribune would be insolvent.  It's

19  a -- 29 is less than 34.  Tribune is insolvent, but the subs

20  are still solvent, because of their extra value.  So

21  balance-sheet insolvency is a hard road.  It's a much easier

22  road at Tribune, but it's hard at the subs.  How about cash-

23  flow insolvency?  Well, at step one, that's a hard road,

24  too.  Why is it hard?  It's hard, so I like to pay a lot of

25  attention, and I do so in my report, to what did investors

1  think at the time.  All right?  I can have whatever opinion

2  I have now, looking back, with benefit of hindsight.  What

3  did they think at the time?  What we know at the time is

4  first, the banks were willing to do the deal.  They thought

5  there was enough of a cushion so they could get paid.  Maybe

6  they were wrong.  Maybe you'll decide they were wrong, but

7  they thought there was a cushion.  Sam Zell was willing to

8  do the deal.  He was getting a deep-out-of-the-money

9  warrant.  There had to be a lot of equity value before he

10  got back dollar one, so he must have thought there was value

11  there.  And then, if I look at the trading prices of the

12  notes at the time of step one, they traded down in price,

13  which is up in yield, a little bit at the time of step one,

14  but the -- you know, the 2010/2015 notes were trading at

15  8/8.5 percent.  These are not distressed yields.  You can

16  infer, from the yields, what the likelihood of bankruptcy is

17  over a period of time.  And so my estimate is that investors

18  thought, at the time of step one -- and they would've been

19  looking forward to step two, because step two was probable.

20  Whether or not you do so for formal step integration,

21  investors would think that way.  I think the probability of

22  a bankruptcy by 2010 was about five percent, by looking at

23  the trading prices of the notes that matured in late 2010.

24  I get a similar assessment by looking at the credit default

25  swaps, which existed and were traded on the notes that

1    matured in 2015.  There, you get a 5-year price, and the

2    price of 5-year credit protection tells you that the

3    likelihood of insolvency at June was about 15 percent over 5

4    years.  so investors are telling you, probably they're going

5    to make it, and so I thought you might have a different

6    view, but the chances, even with my notes-friendly hat on

7    are -- my chances aren't so great of hitting a homerun on

8    the cash-flow side either, close up, because I'm fighting

9    the market, in effect.  I have to persuade the Judge that

10   the market was wrong and didn't understand what trouble

11   Tribune was really in.  So that's why I get to 27 percent.

12   All right?  I've got two roads, but they're both tough.  All

13   right.  You don't hit a homerun every time on either one of

14   them, even combined.  Now -- and then you have to remember,

15   once you hit a homerun, the statutory defenses might take it

16   away from you.  And so I took that into account in the 27

17   percent as well.

18   Q    Now, you've now spent some time describing the process

19   by which you arrived at a percentage for one specific cell.

20   Is this consistent with the overall approach that you took

21   to determine the probabilities for each of the cells that's

22   reflected in that table?

23   A    Yes, it is.  I focused most intently on scenario F and

24   then on the statutory defenses that would pull you away from

25   scenario F, because that's what's driving the dollars, but

1  the general approach was similar for the -- let me call them

2  the middle cells -- the B, C, D, and E cases -- as well.

3  Q     Okay.  Now, we've had, sort of, a lengthy buildup

4  here, but let's see if we can't get to somewhat of a finish

5  line.  Using the probabilities that you've determined from a

6  combination of the scenarios and the cases, and applying a

7  recovery, are you able to determine the probable recovery

8  with respect to each of the different cases?

9  A     Yeah, so the next steps --

10           MR. ZENSKY:  Objection, Your Honor.

11           THE COURT:  Basis?

12           MR. ZENSKY:  I believe that the whole -- the

13  testimony was that these are settlement scenarios, and

14  Counsel just spoke about recoveries as in the litigation

15  outcome, so I'd ask if he could rephrase the question.

16           MR. DUCAYET:  I'll rephrase.

17           THE COURT:  Okay.

18           MR. DUCAYET:  It's a good objection.

19  BY MR. DUCAYET:

20  Q     So putting together all these different elements that

21  you've been testifying about, are you able to determine a

22  potential settlement outcome for each of the different cases

23  that you've identified?

24  A     Yes, I am, and that's just going to be a matter of

25  algebra.  I take each probability and multiply it by the

1  recovery in the associated scenario and add them all up.

2  Q    Okay.  And have you prepared some charts showing that?

3  A    I have.

4  Q    Why don't we put up -- let's try eight.

5  A    So this is table four out of my report, and this is

6  the estimated payouts in the different settlement cases

7  before allowing for third-party recoveries.  And what you're

8  going to see here is my settlement range, low-settle to

9  high-settle for the notes, is 173 million on the low end up

10  to 564 on the high end.  The DCL plan, at the far right, is

11  at 432, so that's in the upper half of the range, right?

12  It's actually quite similar to my best estimate of where the

13  examiner would come out, as you'll see.  And it's

14  substantially above where I would come out, in terms of my

15  own assessment of the probabilities.

16  Q    Okay.

17  A    So this is where I say, before you get to third-party

18  recoveries, this is a good outcome for the notes.  All

19  right.  It's well within the settlement range, and it's in

20  the upper half of the range, and it's comparable to the

21  examiner.

22  Q    Okay.  Let's turn to -- have you done a slide now that

23  shows third-party recoveries?

24  A    Yes, I have.

25  Q    Okay.  We'll put that up.  Can you describe this chart

1    for us, please?

2    A      So this is table five out of my report, where I've

3    added in 300 million in estimated litigation recoveries from

4    third parties, and sent those disproportionately to the

5    notes in the DCL plan, so the settlement range in the other

6    scenarios goes up.  It's now going from 217 in the low-

7    settlement case, up to 600 in the high-settlement case.

8    Doesn't move by that much, because remember in the

9    settlement cases, most of the litigation trust recoveries

10   are going to the banks.  The Black case moves up.  The

11   examiner case moves up.  It's now at 475.  But the DCL plan

12   really jumps up, so the DCL plan is now at 659 --

13   Q      And why is that?

14   A      -- and that's above the top of my settlement range.

15   Q      And why does it jump up that way?

16   A      Because the notes are getting the first 90 million and

17   65 percent of the rest.  So instead of getting 20/30/40

18   million in each of the other cases, they're getting 227 in

19   the DCL plan, so they go from 432 to 659.  And so this is

20   really the basis for my opinion that the DCL plan is a

21   really excellent outcome for the notes, if you take into

22   account the expected litigation trust recoveries.

23   Q      Okay.  Let's turn to that for a second, if we could.

24   A      Sure.

25   Q      So you're using an illustrative -- I think is the way

1  you referred to it in your report, an illustrative 300

2  million --

3  A     Yes.

4  Q     -- for that number.  Can you just explain how you get

5  to that $300 million number?

6  A     Sure.  So what I tried to look at is what are the

7  major classes of claims that are in the litigation trust,

8  who are they against, and based on what we know now -- they

9  haven't been fully litigated -- how much settlement value do

10 those claims  have.  Again, I'm estimating settlement value,

11 not full recovery value.  And so, I started with the claims

12 against the directors and officers for breach of fiduciary

13 duty.  And the examiner puts a high probability on them.  He

14 says, at step two, that's somewhat likely.  So that's north

15 of 50 percent.  Now, I personally -- I do corporate law.  I

16 don't think these claims are very good.  I've seen the same

17 facts the examiner has.  I would put a much lower

18 probability on them.  But here's one case where what I think

19 doesn't matter, because the way the dynamics are going to

20 play out is Tribune has a $200 million D&O policy, and the

21 litigation trustee, at some point, is going to go to the

22 insurers and say, I'll settle for the policy limits of 200

23 million.  And the insurer then faces the following quandary.

24 If they refuse a reasonable settlement offer, they're liable

25 for the full amount.  They're liable for $4 billion.  And

1    they've got the examiner report out there publicly, saying

2    they're more likely than not to lose.  They can't take that

3    chance.  They're going to have to settle.  That's my

4    opinion, my professional judgment, knowing about corporate

5    late and knowing about insurance and duty to settle, which I

6    happen to have studied professionally in a separate part of

7    my research that I didn't describe earlier.  It is my

8    judgment the insurers are going to end up agreeing to pay

9    maybe not 100 percent of the limits, and some of it they'll

10   have spent on defense costs anyway, but most of it.  So a

11   good chunk of the 350 million is -- I think you'll get 150

12   million out of the D&O policy, maybe a bit more.

13   Q    Okay.  What else?

14   A    So the second piece is going to be at the time of the

15   merger, there were, in round numbers, $100 million in

16   payments to the principle Tribune insiders: payments for

17   stock, severance payments, golden parachutes, you name it.

18   Not all of that is going to come back.  Not all of that is

19   going to be recoverable, but my guess is you might recover

20   another 50 million, maybe more, out of that.  So that got me

21   to 200 million, maybe as high as 250 million, out of the

22   directors and officers -- mostly the insurance policy, a

23   little bit the insider payments.  The third big category is

24   going to be the financial advisors, and the principle

25   financial advisors here are VRC, which prepared a solvency

1  opinion, and the examiner, I think it's fair to say, dumps

2  on the solvency opinion pretty heavily, so maybe there's

3  some liability there.

4  Q     Is that a technical term, sir?

5  (Laughter)

6  A     There is some VRC risk.  One of the questions I've

7  asked in this case is what are their policy limits so I

8  could estimate the recovery, and nobody seems to know that.

9  And then, Tribune had these financial advisors.  They had

10  Merrill Lynch and Citibank, and then the special committee

11  had Morgan Stanley.  And I think there's some significant

12  exposure on the part of each of those for basically having

13  gone along with a deal, in the situation where a future

14  Judge -- this wouldn't be you; it would be someone else --

15  says, you know what, Tribune was insolvent.  It was clear

16  they were insolvent.  You had a chance to say no, and you

17  let them go ahead.  And at the very least, you want to be

18  able to get back the fees that were paid to Merrill, Citi,

19  and Morgan Stanley, and that's about 35 million.  But

20  especially for Morgan Stanley, having now looked at some of

21  the documents in the discovery record, they had the last

22  clear shot to say no, and they said, go ahead.  And I think

23  there's some real exposure there.  And so that got me up to

24  300 million.  And depending on how the facts turn out in

25  litigation, it might be well north of that.  I think 300 is

1 a conservative estimate.  Finally, you've got the

2 shareholders, so when you're chasing the shareholders, it's

3 really hard to see how you integrate the shareholder

4 payments.  So for that one, I think you look at step one and

5 step two separately.  So I don't think there's value in the

6 claims at step one, which is why the releases don't trouble

7 me as a factual matter.  You're not releasing anything with

8 any value.  But at step two, there's some chance that the

9 Court would say Tribune had actual intent, and let's go

10 chase the shareholders and bring back as many dollars as we

11 can.  Now, that's a lot of dollars.  All right.  That's $4

12 billion in shareholder payments.  So even if it's a small

13 percentage recovery, and even if you're not going to chase

14 the little guys -- you're only going to chase the

15 institutions, which is what I think would happen in practice

16 -- there's potential there.  I didn't put a numerical value

17 on that, because I view it as a long shot.  I really do.  I

18 -- there's never been a fraudulent conveyance case where

19 anyone has chased shareholders successfully.  And -- but

20 again, there's a possibility of a homerun outcome there as

21 well.  If you believe the examiner, there's even a

22 likelihood of a homerun outcome, and therefore, very

23 significant settlement dollars.  Again, I wasn't counting

24 those.  I was really staying close to home and saying I'm

25 confident that there's value from the D&O policy.  I'm

1  confident that there's value from the insiders on a

2  preference-recovery theory.  And I'm confident that there's

3  significant value from the financial advisors, though how

4  much will have to be determined in future litigation.

5  That's how I got to the 300 million number.  I think the

6  risk is on the high side.  It's -- you're not likely to do

7  much less than 300 million, and there's some chance you

8  could do a lot better.

9  Q    Now, Professor Black, let's turn back to table five,

10  if we could.  And you've got an estimated settlement

11  recovery for your case and then a similar number for the

12  examiner case.  Do you see that?

13  A    Yes, I do.

14  Q    Okay.  And it looks as if the examiner case is about,

15  oh, 175 or so, $180 million higher than you, is that right?

16  A    That's right.

17  Q    Okay.  Well, what is it that accounts for that

18  difference?

19  A    Okay.  So the first thing I'd say is we're both well

20  within my settlement range, so I'm, you know, kind of toward

21  the low-middle case, and he's toward, you know, a little bit

22  between the mid-high and the high case, but we're both well

23  within the settlement range, so I don't think the

24  differences should be exaggerated.  But then I also tried to

25  reconcile my number to the examiner's and said, what are the

1  differences and assumptions that are driving the dollar

2  differences in numbers.

3  Q    And do you have a chart that shows that?

4  A    I do.  That's the --

5  Q    Okay.

6  A    -- next chart.

7  Q    Okay.  And why don't you walk us through this, please?

8  A    So I start with my case, and that's at 294 million.

9  And then, I say the examiner didn't allow either of these

10 sources of S-ESOP tax value.  The first one, he didn't

11 understand.  I think if he'd understand it, he probably

12 would've allowed it, but he didn't understand it, didn't

13 think it was a source of higher disposition proceeds, gave

14 it no weight.  The second source, again, I think he really

15 didn't understand the argument, gave it no weight.  Suppose

16 I take his view.  I'm going to take my estimate of the

17 likelihood that this -- these tax values will count, so I

18 think the asset disposition source is 50:50.  If that

19 doesn't count, I think cash value to Tribune is 50:50.  Let

20 me take those down to zero.  What does that do to my

21 recoveries, because that's how the examiner views the world?

22 Q    And what does it do?

23 A    And my number's going to pop up to 409 million.  I can

24 close the rest of the gap by saying I was more of a skeptic

25 than the examiner on formal step integration, so my view of

1  the world was Tribune had a two-step plan.  They were going

2  to do step one no matter what.  There's significant evidence

3  of that.  And then, they built it -- let me call it a stop

4  light at step two.  They were going to get to step two,

5  stop, get a solvency opinion, and then proceed if green.

6  That was the plan.  Now, maybe they proceeded even though

7  the light was red, but the upfront plan, I think, was get to

8  step two, take a second look, proceed if solvent.  Or at

9  least there's evidence for that.  so I put lower probability

10 on step integration, because it seemed to me that if you're

11 going to take a serious second look, that the Court is

12 likely to respect that and not treat you as if you were

13 going to blow through the stop light, no matter what it

14 said.  But let's suppose I just change my view.  I'm going

15 to make my view -- change my probabilities to my best

16 estimate of the examiner probabilities.  That's going to get

17 me up to 465 versus the examiner's 475.  And at that point,

18 we're sitting right on top of each other.

19 Q    Now --

20            THE COURT:  Mr. Ducayet, I'm going to ask you to

21 pause here.  We're going to take a 10-minute break --

22            MR. DUCAYET:  Sure --

23            THE COURT:  -- after which I think you'll have

24 about a half-hour left of your time.

25            MR. DUCAYET:  Thank you.

1          THE COURT:  Stand in recess.

2     (Recess at 2:49 p.m. to 3:04 p.m.)

3          MR. DUCAYET:  Thank you.

4               DIRECT EXAMINATION (resumed)

5     BY MR. DUCAYET:

6     Q     Professor Black, welcome back.

7          Maybe if we could turn back to the Table 5, please.

8     A     Okay.

9     Q     Okay.  And I think you identified this as setting

10    forth your range of potential recoveries under the low

11    settlement and the high settlement case, and then a couple

12    of other alternatives, right?

13    A     Yes.

14    Q     And you've been describing more generally the process

15    by which you arrived at that range today, right?

16    A     Yes.

17    Q     Let me just ask you this.  Given all of the different

18    pieces that go into the establishment of that range, how

19    confident are you in that range?

20    A     So I tried to assess that question by running a lot of

21    what I want to call sensitivity tests or robustness tests

22    where I changed assumptions that then fed into

23    probabilities.  I changed the probabilities directly.  I

24    continued -- considered alternative scenarios.  I considered

25    lower third party recoveries, higher third party recoveries,

1  higher enterprise value, much higher enterprise value.  I

2  considered a whole bunch of other sensitivity tests as well

3  to see what would happen to -- to my settlement range, and

4  most of those effect only the settlement range.  They don't

5  affect the settlement.  The third party recoveries affect

6  both and I wanted to see what would happen, what would --

7  how would the settlement look relative to the range under

8  different stress tests.

9  Q    Okay.  Before we get to the stress tests or the

10  sensitivities, let me just ask you, is this something that

11  you do in your academic work?

12  A    Yes.  I do it all the time.  So I do empirical

13  research, quantitative empirical research in law and one

14  issue that you confront all the time is how do you

15  understand the data, how do you model the data and there are

16  all these choices.  Sometimes there are dozens of choices.

17  So my common practice is to run lots and lots of these

18  robustness or sensitivity checks, measuring a variable this

19  way or that way, excluding outliers, including outliers,

20  running different types of regressions, including different

21  variables.  And the idea is to get a sense for whether a

22  result that you think you see in the data is really robust.

23  And my view of the world is I publish results if they're

24  robust, and if they're not I don't publish them, or at most

25  I'll say this result exists, but it's not so robust under

1   the following variation.  I'm a -- I'm a big believer in my

2   academic work in running lots and lots of robustness checks.

3   Q    Okay.  And have you -- getting back to the work that

4   you did in connection with this matter, you prepared a chart

5   that shows some of the sensitivity analysis that you've

6   done?

7   A    Yes, I did.

8   Q    Okay.

9          MR. DUCAYET:  Can we put up the last one real

10  quick?

11  BY MR. DUCAYET:

12  Q    Okay.  And -- and consistent with the agreement we

13  have with the noteholders, I don't want you to get into any

14  of the details here of the analysis that you did.  But if

15  you could just kind of walk through at a -- at a high level

16  and explain the sensitivity analyses that are set forth in

17  this chart.

18  A    Sure.  So as I said, one type of sensitivity analysis

19  was simply to change the probabilities in my probabilities

20  chart directly.  Another was to change the factors that

21  would go into those probability assessments.

22  Q    Actually, Professor Black, let me just stop you there

23  because I want to make sure we focus on that very first

24  point that you made.  You said you changed the -- you

25  assessed the sensitivity of the probabilities themselves?

1  A      Yeah.

2  Q      Can we just go back, then, to, I think it was Table 3.

3  A      Yeah.

4          MR. DUCAYET:  Can you put that back up?  It's

5  Number 5.

6          THE WITNESS:  Yeah.

7          MR. DUCAYET:  Okay.

8  BY MR. DUCAYET:

9  Q      Are these the probabilities you're referring to?

10 A      Yes.

11 Q      Okay.  And when you say you did a -- a sensitivity

12 test of the probabilities themselves, what do you mean by

13 that?

14         MR. ZENSKY:  Your Honor, I have an objection.  As

15 you know, we conferred during the break and I don't even see

16 this vary -- this sensitivity test listed on the slide that

17 was supposed to summarize the witness's sensitivity tests.

18         MR. DUCAYET:  I agree it's not on there.  I think

19 it's part of the analysis that he did in the case, and I --

20 I think it's appropriate to describe the way in which he

21 tested the --

22         THE COURT:  Well --

23         MR. DUCAYET:  -- robustness of his results.

24         THE COURT:  -- what was the agreement made?

25         MR. ZENSKY:  Well, it was, essentially, that if

1  it wasn't in the report, the opening report or in the

2  amended report text itself, we weren't going to be

3  discussing the specifics of any specific sensitivity tests

4  and I certainly don't recall the tests that Mr. Ducayet is

5  asking about as having been in either a report or in any

6  work papers that we were provided with.  If I'm wrong, he

7  can show me where it is, but this is a new sensitivity that

8  I'm hearing for the first time.

9         MR. DUCAYET:  Okay.  I think the testimony would

10  be that this is not a new sensitivity.  This is part of what

11  he does whenever he has these kinds of --

12         THE COURT:  Okay.  Well --

13         MR. DUCAYET:  -- probabilities, so --

14         THE COURT:  -- let me ask this.

15         MR. DUCAYET:  Yeah.

16         THE COURT:  When -- when did you perform that

17  exercise?

18         THE WITNESS:  All the way along.

19         THE COURT:  Overruled.

20         MR. DUCAYET:  Okay.

21  BY MR. DUCAYET:

22  Q    Can you just describe, please, for the Court what --

23  what you did?  As you said, you did it all the way along.

24  A    So I would do a couple of things.  One, at the level

25  of this table I would say what if in the examiner case I

1  told you that the statutory defenses are twenty-five

2  percent?  What if I make that thirty-five percent, then I --

3  every -- every other number in that column has to change,

4  what does that do to my overall recoveries.

5      Another thing that I did is what if I change my

6  assessment of formal step integration, informal step

7  integration or no step integration at the next level down

8  and then the build up to this probability table would

9  change.  And then within that next level down, what if I

10 changed my view of the likelihood of any one of the six

11 scenarios, given formal step integration or given informal

12 step integration or given no step integration.  And part of

13 that was verifying for myself, in effect, which of the

14 probabilities matter and confirming what at some level is

15 going to be obvious from Table 2, which is what matters is

16 Scenario F.  You can move the range by 10, 20, $25 million

17 by moving things around in the middle.  But if you're really

18 going to change the settlement range, you have to hit

19 Scenario F.  That's the only way to really drive large

20 dollars.

21 Q    Okay.  Let's -- let's turn back if we could to the

22 chart that we had about the sensitivity tests.

23 A    Okay.

24 Q    Again, just without going into any of the details, can

25 you just, at a high level, walk us through this.

1  A      Sure.  So one was what if I have really low third

2  party recoveries or substantially higher third party

3  recoveries than the 300 million I was assuming, what if it's

4  half that amount or twice that amount.

5           The second was what if enterprise value is,

6  instead of the middle of Lazard's range, which is 6.75

7  billion, what if it's at the top of Lazard's range, which is

8  7.1 billion?  What if it's at 7.5 billion?  What if it's at

9  8 billion?  How would that change the settlement range and,

10 therefore, how would that change my assessment of the

11 reasonableness of the DCL plan.

12          The third thing I did is at a 6.75 billion valuation,

13 in scenarios in which step one is allowed and step two is

14 knocked out -- all right.  So you're step one solvent, step

15 two insolvent, a question arises whether the step one banks,

16 through one of a number of channels, can collect interest

17 that's accrued after Tribune filed for bankruptcy, but is

18 not included in their claim amount at Tribune.  And I go

19 through the reasons why they might be able to collect post-

20 filing interest in my report.  And what I do is I assign

21 that a seventy-percent probability.  It matters in the

22 scenarios where you're step one insolvent, step two

23 insolvent at the subs.  It means that it mostly matters in

24 Scenario C.

25          The reason it matters is because if the banks' claim

1   is strictly capped at their claim amount at Tribune, all

2   right, not the larger amount that would have accrued to

3   date, then if you knock out step two entirely, step one is

4   simply paid and the marginal dollars are flowing up to

5   Tribune from the guarantor subs and then out to the notes

6   and the Tribune general unsecured creditors.  And that's

7   going to make a moderate difference in recoveries at a value

8   of 6.75 billion.  But as you start raise the value, Scenario

9   C or Scenario E, knocking out step two only, starts to

10  become an important source of recovery for the notes.

11       So if you were to go way up in value, if you were to

12  go up to, you know, north of seven-and-a-half billion

13  dollars, then there's a second route for the notes to

14  recover a large amount of dollars.  The main route is

15  Scenario F, knock everything out at step one.  The alternate

16  route is you failed at step one, but you -- you persuade the

17  judge that Tribune's enterprise value is really high and you

18  persuade the judge not to allow post-filing interest and if

19  you do that, you can start to build up some significant

20  recovery dollars for the notes as well.

21       So you've got to do, in effect, four things.  You've

22  got to have a high enterprise value.  You've got to have no

23  post-filing interest.  You've got to have step two

24  insolvency and you've got to have no statutory defenses.

25  But if you have those four things, you can get the

1   significant dollars without -- in Scenario C, in effect, as

2   well as F.

3   Q    Professor Black, those four things that you just

4   described, are those independent probabilities or are they

5   correlated in some way?

6   A    So certainly the two main ones which are high

7   enterprise value and whether or not as a matter of

8   interpreting the bankruptcy code or your equitable judgment

9   you allow post-filing interest, there's no obvious

10  connection between those.  So those are essentially two

11  independent probabilities.  If you have a, you know, twenty-

12  five percent chance of one particular value and a fifty

13  percent chance of post-filing interest, you multiply those

14  two together.  The statutory defenses are logically

15  independent as well.  They come off the top.  They continue

16  to come off the top from all of the other recoveries and

17  then I -- I don't really see any connection between any of

18  the four.  So the solvency analysis at step two is basically

19  an independent analysis as well.

20  Q    And what are the implications of the fact that it's an

21  independent set of probabilities for the overall probability

22  of reaching this other scenario, Scenario C?

23  A    So it's going to reduce the probability of getting to

24  -- in fact, you have to get to Scenario C and if you go back

25  to Table 3, so that's going to be Tab 5, the probabilities

1  of Scenario C vary between sixteen percent for the examiner

2  up to thirty-five percent for me.  So there's some real

3  probability on Scenario C.  You get the same thing for

4  Scenario E, but that's a lower probability case.

5      You've got to be in Scenario C or E, right.  You're

6  not in one of the other three -- the other four scenarios,

7  and you have to have a high enterprise value and you have to

8  have no post-filing interest, and you have to have step two

9  insolvency, and you have to have no statutory defenses.

10      So all of that says all together, as a matter of

11  estimated recovery, as a matter of settlement analysis, it's

12  not going to make a huge amount of difference to my

13  assessment of reasonableness that there's the possibility of

14  this second road to a large recovery.  It's not nearly as

15  important as the main road of Scenario F, but it is a second

16  road.  It's there.  It's got some probability attached to

17  it.

18  Q    Let's turn back to the sensitivity test chart if we

19  could.

20  A    Okay.

21  Q    And what did -- and if you could just briefly walk

22  through the other sensitivity tests that you did.

23  A    Okay.  So I wanted to -- the third sensitivity test

24  was to vary the chance that the banks would get post-filing

25  interest.  Now other way for them to collect extra value at

1  the subs would be if there's some step two protected debt.

2  Allow -- I'm allowing in my scenarios for a significant part

3  of the step one debt to be protected against avoidance

4  because it was given for value, value to Tribune.  It was

5  used to pay off old debt.  It was used to fund the revolver.

6  It was used to fund letters of credit and stuff like that

7  rather than paid to shareholders.

8       There's also an argument that the examiner gives

9  substantial credence to that some amount of step two debt

10 should be protected as well, and if some step two debt is

11 protected that gets you to the same place as post-filing

12 interest, which is there is larger value that the banks get

13 at the subs before they're paid in full and value starts

14 going up to Tribune.  So until you get the very high

15 settlement values, either post-filing interest or step two

16 protected debt gets you to the same place in terms of the

17 banks are continuing to recover at the subsidiaries.

18      The fourth sensitivity test was, in fact, the second

19 route to a high recovery is if all I do is change post-

20 filing interest not much happens.  If all I do is change

21 enterprise value, not much happens.  If I put the two

22 together, then something starts to happen to recoveries.  So

23 if you were to tell me that I think -- if -- if it were my

24 view that the likely enterprise value was 6. -- is 8

25 billion.  It's not 6.75.  It's not 7.1.  It's $8 billion and

1    it's unlikely that you're going to allow post-filing

2    interest, then Scenario C becomes an important source of

3    recovery and would affect my judgment.  But you're going to

4    have to do both together.  One at the time doesn't affect my

5    judgment as to, hey, this is a great deal for the notes.  If

6    you put both together and you put a high enough probability

7    on both together, then that could affect my judgment as to

8    reasonableness.

9        So that's why I put the two together in sensitivity

10   test four to see what would happen.

11   Q    And what about Number 5?

12   A    So Number 5, you know, I've really talked about, for

13   the Black case, what would happen if I took away any chance

14   of this S ESOP tax value, and I also wanted to ask what if -

15   - what would happen if I took it away from my low settlement

16   to high settlement cases, where I gave it different

17   probabilities, what would happen there.  Not much happens,

18   but I wanted to see what would happen to my settlement

19   range.

20       The reason not much happens is because in the high

21   settlement range there I'm already not giving much weight to

22   tax value, so it doesn't change very much if I give it zero

23   weight instead of low weight.

24   Q    Okay.  And what about Number 6?

25   A    So Number 6 was an argument raised by Mr. Tulliano in

his expert report that I made the decision in my analysis

that the PHONES are this hybrid debt equity instrument.

They carry a very low two-percent interest rate and so I had

to decide do I value them at their face amount, which at the

time of the LBO was about 1.25 billion, or do I value them

at their debt amount as a discounted debt instrument.

They're not quite a zero coupon bond, but they're close, and

that would have been about 470 million which is

substantially less.

My judgment as the right thing to do from a finance

perspective was to count them at a discount at 470.  The

examiner counted both the debt component and the equity

component because the PHONES have an option to convert into

Time Warner shares, and so he used the value of about 560

million.

But if you go up to 1250, which is what Mr. Tulliano

does, then you're adding 700 to 800 million of debt onto

Tribune.  You haven't changed its asset value at all, and

therefore, you've made it more likely that Tribune is

balance sheet insolvent either at step one or at step two.

Now that doesn't get you to Scenario F because it

doesn't change the subs.  This is only at Tribune.  So

you've moved Tribune value down, but you haven't moved the

sub value at all because the PHONES are at Tribune.  So it

doesn't have a large effect on recoveries, but you can

1    estimate the effect.  Basically, you move some probability

2    weight out of A, out of no avoidance into some avoidance and

3    out of B and C, which is some avoidance, into D and E which

4    is more avoidance.  You don't get to F, which is the key

5    driver.  But you move -- you move the settlement range by a

6    little bit.

7    Q      Okay.  And then finally Number 7.

8    A      Yeah.  So Number 7 is addressing an argument raised by

9    -- by the examiner that he suggests the possibility that as

10   an equitable matter the Court might decide that if Tribune

11   is step one solvent, but step two insolvent, so $300 million

12   in disgorgement is coming in from the step two lenders, that

13   the natural waterfall, most of that goes right out to the

14   step one lenders because they've been allowed.  No formal

15   step integration.  Step one debt is good.  He says there's a

16   possibility as an equitable matter that the Court would

17   decide to say that the step one banks don't participate in

18   that 300 million and instead it goes out to the Tribune

19   creditors.  And he models that -- and he actually has eight

20   scenarios, not six.  He models that in his Scenario 8.

21   Scenario 7 is not relevant here because it has to do with

22   shareholder recoveries and those are preserved in any event,

23   Examiner's Scenario 7.

24        So he models that and I modeled that as well to

25   estimate suppose we take the examiner view and you apply

1  that remedy, how much difference does it make to the -- to

2  the settlement range.

3  Q    Okay.  Now based on the sensitivity tests that you've

4  just described, did those cause you to change or modify your

5  opinion regarding the reasonableness of the DCL plan --

6  A    No.  I would say --

7  Q    -- with respect to settlement?

8  A    I would say that they reinforced my opinion because

9  what you find when you push on the settlement range from

10  this direction or that direction or some other direction is

11  it just doesn't move very much, especially the top doesn't

12  move.  The bottom ends up moving more than the top.

13      So, for example, tax value matters more at the bottom

14  so if I take it away the bottom moves up more than the top

15  moves up.  Basically, in most of these sensitivity tests the

16  DCL plan remains above the top of the settlement range.  It

17  will dip into the settlement range if I pull back on third

18  party recoveries to 150 million because that's

19  disproportionally hitting the DCL plan.

20      The DCL plan will be back within the settlement range

21  as opposed to outside the top if I go really high in

22  enterprise value up to 8 billion or if I -- also, if I go

23  high in enterprise value, seven-and-a-half or above and also

24  go way down in post-filing interest, this dual sensitivity.

25  It still looks really good.  There's no sensitivity test

1  that I thought was within the realm of plausibility in which

2  the DCL plan is not either above my settlement range or in

3  the upper part of my settlement range.  So I actually

4  thought that this gave me great comfort that this was a

5  genuinely good settlement for the notes and the Tribune

6  unsecured creditors.

7  Q    Okay.  Now, Professor Black, did you have an

8  opportunity to listen to the openings on Tuesday?

9  A    I did.

10  Q    And you did hear the opening that was given by the

11  noteholder plan proponents?

12  A    I did.

13  Q    And during that opening it was suggested that there

14  may be additional different routes to significantly greater

15  payments to the notes.  Do you remember hearing that?

16  A    Yes, I do.

17  Q    And by my count, at least, I thought there were four.

18  And so let me ask you about those.  One was full avoidance,

19  right?

20  A    Yes.

21  Q    And that's what we've been talking about all

22  afternoon, right?

23  A    Yes.

24  Q    Okay.

25  A    That works.

1  Q    And how likely is it -- just to reinforce what you've

2  been saying, how likely is it that you're going to get full

3  avoidance?

4  A    I -- for the reasons I explained it's relatively hard

5  and I put the likelihood at between four percent in the low

6  settlement case and twenty-seven percent in the high

7  settlement case.

8  Q    Okay.

9  A    But this is the home run outcome for the notes and

10 also for the PHONES.

11 Q    Okay.  And then did you also hear a reference to the

12 possibility of step one disgorgements plus step two

13 disgorgements plus the value of the parent getting to a

14 three-billion-dollar value at the parent?

15 A    I did.

16 Q    Okay.  And -- and what was your reaction to that?

17 A    So, first, if I understand that, in my Scenario D and

18 E you have disgorgement at both step one and step two and a

19 lot of money comes back into the parent, and Tribune is

20 worth about $2.3 billion.  Okay.  If you don't allow step

21 one protected debt, then that will go up to about $2.9

22 billion.  So I'm pretty close to the $3 billion that Mr.

23 Zensky -- number that Mr. Zensky used.

24      But then you have to ask where does that money go and

25 where the money is going to go is, in my view of -- my

1    understanding of the world, it's going to go out to the

2    allowed claims at Tribune.  Who are those going to be?

3        Well, you have to then ask is there step one protected

4    debt or not.  I think there's a high probability that there

5    is.  That's the examiner's view.  If there is, that's

6    Scenario D.  Right.  Tribune -- the banks are knocked out

7    at the Tribune level.  A whole lot of disgorgement comes in,

8    but a lot of it goes down to the subs and then gets paid out

9    to the banks because the subs have $6.9 billion in claims at

10   Tribune, and a fair amount of it goes out to the step one

11   protected debt because they still have about $2.7 billion in

12   claims at Tribune.

13       So at that point you've got $2.3 billion at Tribune

14   and the Tribune creditors are collecting about twenty-one

15   cents on the dollar, and so that's a good recovery for the

16   notes.  It's a three-hundred-million-dollar recovery; that's

17   Scenario D, right.  That's in my scenarios.  It's not a home

18   run.

19       What if you take out step one protected debt, you say

20   there is no step one protected debt.  You apply some

21   possibility to that.  So let me call that D-plus, what would

22   happen in that scenario.  Now you're dealing with 2.9

23   billion at Tribune instead of 2.3.  The subs are still there

24   as creditors of Tribune, but the step one protected debt is

25   not.  So there's more value there, fewer people sharing.

1   The net recovery to the notes will go up to, in the 400s

2   before third party recoveries and to about 510 instead of

3   310 with third party recoveries.

4        Now then you have to say how likely is that.  That

5   would happen in Scenarios D or E.  And so one way of

6   assessing how much that matters, and this is what I did in a

7   number of sensitivity analyses, just to give you some

8   flavor, was to say, okay.  Imagine we're in the examiner

9   case.  The examiner assigns a combined sixteen percent

10  probability to D and E.  Now I've got to assign a

11  probability to the step one having no protected debt; take

12  sixteen percent and multiply it by that probability, maybe

13  it's thirty percent.  And then I multiply by the extra value

14  which is $200 million.  And if I do that I get sixteen

15  percent times thirty percent times $200 million.  I get an

16  extra $10 million in expected recovery.  If that scenario

17  happens -- you're in Scenario D and there's no step one

18  protected debt -- you get 200 million, but you only have a

19  five percent chance of getting there, so the effect on

20  settlement was $10 million.

21       And that's -- more broadly that's the nature of my

22  sensitivity analyses was to say make this assumption, ask

23  how likely it is, ask how much it's going to effect the

24  recoveries, and here you can see why this really -- it's not

25  a home run.  All right.  The possibility of this outcome

1  maybe adds $10 million to my existing estimate of the

2  settlement range.

3  Q    Okay.  Did you hear a reference to the possibility

4  that if step two were avoided, but not step one, that step

5  one holders would not be able to participate in recoveries

6  on step two?

7         MR. ZENSKY:  Your Honor, I -- I would just like

8  to object to the extent that Mr. Ducayet is seeking to

9  establish the witness's legal views on that remedy as

10  opposed to what the financial ramifications might be.  Just

11  so we can have a -- a clear question before the answer

12  comes.

13         MR. DUCAYET:  Well, I think it's a mixed question

14  of law and fact, Your Honor.  Part of it is assessing the

15  likely -- the likelihood of the outcome.

16         THE COURT:  Well, I'll allow it.

17         MR. DUCAYET:  Okay.

18         MR. ZENSKY:  I'm sorry, Your Honor.

19         THE COURT:  I will allow it.

20         MR. DUCAYET:  Okay.

21  BY MR. DUCAYET:

22  Q    Do you have the question in mind, sir?

23  A    Yes, I do.

24  Q    Okay.  What -- and what did you think about that?

25  What was your answer?

1  A     So I thought I had to evaluate that argument

2  separately at the Tribune level and at the sub level.  Okay.

3  So first at large this is an argument for equitable

4  subordination in a different guise and you clearly have the

5  power, if you find sufficient evidence of misconduct, to

6  apply an equitable subordination remedy, at least that's

7  what I assumed.  I'm sure the lawyers would argue about it.

8      And I thought I was already including that in my

9  probability of Scenario F.  So my first reaction was, okay.

10 This is equitable subordination, but that's already in

11 there.  All right.  This doesn't add much.

12     But now let's think about this remedy at the Tribune

13 level and then at the sub-level.  At the Tribune level, I

14 take it to be an extension of the examiner's view that we

15 shouldn't allow the step two disgorgement coming from the

16 step two banks to go out to the step one banks.  Okay.  And

17 at the Tribune level it feels to me perfectly plausible that

18 as an equitable matter you could apply that remedy if you

19 found the basis in bank conduct.  All right.  I guess it

20 would have to be conduct at step one, but you could do that.

21     That's not going to change very much, and I tried to

22 estimate in a sensitivity test how much it would change

23 recoveries.  And it's just not going to change the

24 recoveries very much because remember I'm always looking at

25 Scenarios D and E where the banks are totally knocked out

1  except for step one protected debt already.  You would have

2  the question for this recovery, do the step one protected

3  debt get to eat at the Tribune table because, after all,

4  they're protected for other purposes.  They gave money for

5  value and in good faith.  That's the underlying assumption.

6      But even suppose you decided not, the step one debt

7  doesn't eat at the Tribune table for any purpose under this

8  theory of recovery.  It's still going to be the case that

9  there's 6.9 billion of sub-claims against Tribune, so a lot

10 of the Tribune value is going to go down to the subs and out

11 to the banks.

12     So you do a little bit better than you do in Scenario

13 D, but not dramatically.  So it's similar qualitatively to

14 knocking out the step one protected debt in Scenario D,

15 right.  Maybe you get up to a 500 million recovery, but not

16 a home run because remember the DCL plan is at 659.

17     The second prong of the noteholder argument, as I

18 understand it, and it took me awhile to understand it.

19 Here's what I think the claim is; that you do something

20 similar -- what -- here's what you do at the subs in

21 substance.  What you say is we're going to knock out step

22 two at the subs.  It's avoided.  And then we're going to

23 bring it back in a peculiar way.  We're going to allow it,

24 but treat it as subordinated to Tribune as equity holder

25 and, therefore, to the Tribune level creditors.

1      So what you're doing, in substance, is you're saying

2   I'm going to turn the Tribune claims into sub-level claims

3   in the amount of $3.7 billion and let them share in the sub

4   recovery.  I don't know if you can do that.  You know, to me

5   that feels like substantive consolidation and I've read the

6   Third Circuit Owens Corning case on substantive

7   consolidation.  So I'm really skeptical about whether you

8   could do this at all.  You then have the question of should

9   you as a matter of equitable -- applying your equitable

10  powers.

11      This one just felt really strange to me.  I thought if

12  you're going to decide that the banks really misbehaved,

13  you're just going to knock them out directly.  You're not

14  going to go through this circuitous route.  So I thought

15  that I had taken this into account in my assessment of

16  Scenario F and it didn't provide a meaningful new road to

17  recovery.

18          THE COURT:  Mr. Ducayet, your time has expired on

19  direct.

20          MR. DUCAYET:  Okay.  Can I ask one final

21  question?

22          THE COURT:  Well, it's not the question that

23  takes a lot of time.

24      (Laughter)

25          MR. DUCAYET:  Fair enough.  Can I ask for a yes

1  or no --

2            THE COURT:  Yes.

3            MR. DUCAYET:  -- answer --

4            THE COURT:  -- you may do that.

5            MR. DUCAYET:  -- to my question?  All right.

6  BY MR. DUCAYET:

7  Q    Professor Black, yes or no, having heard these various

8  arguments during the opening, did any of them cause you to

9  modify or change your opinions about the reasonableness of

10  the settlement?

11  A    No.  The DCL settlement is an excellent --

12  Q    Just --

13  A    -- settlement --

14  Q    Just don't.

15  A    Sorry.

16        (Laughter)

17  Q    Okay.

18  A    No.

19            THE COURT:  Cross-examination.

20            MR. ZENSKY:  May I approach the witness, Your

21  Honor, and the bench?

22            THE COURT:  You may.

23                    CROSS-EXAMINATION

24  BY MR. ZENSKY:

25  Q    Good afternoon, Professor Black.

1   A      Good afternoon.

2   Q      I feel like I'm back at law school a bit, so I hope

3   you go easy on me.

4          THE COURT:  We're back at law school he wouldn't.

5          (Laughter)

6          MR. ZENSKY:  That's for sure.

7          THE WITNESS:  This -- this is the modern law

8   school.

9   BY MR. ZENSKY:

10  Q      Professor Black, prior to this case you have never

11  been engaged to opine on whether a fraudulent transfer had

12  occurred, isn't that right?

13  A      That's correct.

14  Q      Okay.  And prior to this case you've never been

15  engaged to opine on the fairness of a settlement, correct?

16  A      That's correct.

17  Q      Okay.  Now the DCL plan involves a settlement of

18  various claims under the bankruptcy code as well as state

19  law, correct?

20  A      I understand it to involve a settlement principally

21  under the bankruptcy code, but there are some state law

22  issues as well.  Yes.

23  Q      Sure.  And many of the issues you talked about on

24  direct and that effect your opinions involved questions of

25  the code and cases interpreting the code, correct?

1  A     Yes.

2  Q     Okay.  And your overall opinion is that the proposed

3  plan is fair and reasonable to all of the company's

4  creditors?

5  A     Yes.

6  Q     Okay.  Now if you could look at your report I'm going

7  to start with your opening report, which is in your binder,

8  Professor.

9  A     Okay.

10 Q     That's on Page 3 --

11 A     Okay.

12 Q     -- where you describe your qualifications.

13 A     Yes.

14 Q     Now could you read into the record the sentence that

15 begins in the first full paragraph, "except as it overlaps"?

16 A     Yes.

17 Q     "Except as it overlaps with my expertise in corporate

18        finance, corporate acquisitions, and corporate law and

19        practice, I am not an expert in bankruptcy law, but

20        have undertaken research sufficient to enable me to

21        have reasonable confidence in the conclusions below to

22        the extent those conclusions involve mixed questions

23        of fact and bankruptcy law."

24 Q     Okay.  Thank you.

25              THE COURT:  Mr. Black, I'm sorry.  You need to

1  get a little closer to the microphone.

2            THE WITNESS:  Okay.

3            THE COURT:  Thank you.

4            MR. ZENSKY:  Okay.

5  BY MR. ZENSKY:

6  Q     That's a true statement, Professor, correct?

7  A     Yes.

8  Q     Okay.  And when I took your deposition, am I right

9  that you didn't know the governing rule or statute that the

10  Court needs to apply in connection with its assessment of

11  the proposed settlement?

12  A     It needs to apply the relevant standards under the

13  bankruptcy law and I -- some of them are under Section 1129,

14  but there might be others that are under other sections and

15  I'm not an expert in exactly what those standards are.

16  Q     Okay.  And you considered the proposed settlement as a

17  whole.  You didn't look at any particular pieces of it in

18  isolation, correct?

19  A     In my report I look at the settlement as a whole.  I

20  did, as part of my overall work, try to assess some

21  individual pieces, but that's not part of my report.

22  Q     Okay.  Now prior to issuing your report on February

23  8th, you had not reviewed the decision of Judge Walrath in

24  Washington Mutual, had you?

25  A     I had not.

1    Q     Okay.  So you didn't know what it says about reviewing

2    a settlement with multiple parts?

3    A     I had not read the <u>Washington Mutual</u> decision.

4    Q     Okay.  Now you indicated on direct there were areas

5    where you did have to do research about bankruptcy statutes

6    and cases to understand some of the issues that were

7    relevant to your assignment, correct?

8    A     Yes.

9    Q     Okay.  And those would include the safe harbor,

10   546(e)?

11   A     Yes.

12   Q     Okay.  It would include the availability of post-

13   filing interest?

14   A     Yes.

15   Q     It would include what constitutes property or value

16   conferred for purposes of 548(c)?

17   A     Yes.

18   Q     Okay.  It would include the case law interpreting

19   unreasonably small capital?

20   A     Yes.

21   Q     Okay.  It would include the availability of what you

22   call the statutory bank defenses?

23   A     Yes.

24   Q     Okay.  It would include the issues of formal

25   integration and informal integration you talked about on

1  direct?

2  A     In part, though, the standard for formal step

3  integration, which is the one that's developed in the cases,

4  is really not that dissimilar from integration questions

5  that require -- that arise in other areas of corporate law

6  and I have opined on those before.  So there I think I have

7  some expertise.

8  Q    Okay.  Now you met frequently with Sidley Austin in

9  connection with your assignment, right?

10  A    Yes.

11  Q    Okay.  And they gave you their assessment of the

12  various arguments on the issues we just talked about?

13  A    They gave me their memos listing the arguments on one

14  side and the arguments on the other side and the principal

15  cases.  Yes.

16  Q    Okay.  If you could look in your binder, Professor, to

17  the tab that says, "legal memos," which we marked at your

18  deposition.

19  A    Yes.

20          MR. ZENSKY:  And for the record, Your Honor,

21  these are noteholder plan proponents trial Exhibits 2316,

22  2349, 2355, 2356, 57, 58, 59, 60, 61, 62, 63 and 64.

23  BY MR. ZENSKY:

24  Q    Professor, can you just flip through those and tell us

25  if those are the legal memos that were provided to you by

1  Sidley Austin for you to review and get up to speed on your

2  assignment?

3  A    At a quick look I have no reason to believe that these

4  are not the Sidley Austin memos.  Some of them just say

5  privileged and confidential attorney work product at the

6  top, but some of them either have Sidley in them or are

7  memos to Sidley lawyers whose names I recognize.  So that's

8  consistent with this being the full set of --

9  Q    Sure.

10  A    -- legal memos that I received.

11  Q    And just so the record is clear, Professor, they don't

12  just say privileged and confidential attorney work product.

13  That's just the legend at the top and then there's a

14  substantive memo?

15  A    That's right.  There are -- either between fifteen and

16  twenty different substantive memos covering different

17  issues.

18  Q    Okay.  So those issues include settlement standards;

19  that's one of the memos?

20  A    You know, the first one says, "Overview of settlement

21  standards."  Yes.

22  Q    Okay.

23  A    I'm not remembering now -- I read these close to a

24  year ago -- what each one of them was.  I have a general

25  sense of them.

1  Q     Okay.  And if you need to refer to them to answer my

2  next series of questions, just tell us and we'll --

3  A     Okay.

4  Q     -- pause while you review them.

5        One of the memos that you review -- you were supplied

6  with and reviewed dealt with the standards for showing

7  actual fraud in a fraudulent transfer?

8  A     That sounds right.

9  Q     Okay.  One of them include how a Court might assess

10  the reasonableness of the company's projections?

11  A     I don't specifically recall, but, you know, I'll -- if

12  you want to tell me this is -- this is a list of all of

13  them, I'll accept that representation.

14  Q     Okay.  One of the memos included the 546(3) issue that

15  we talked about.  Do you recall that?

16  A     Yes, I do.

17  Q     Okay.  And one of the memos dealt with questions of

18  standing at the subsidiary level and the upstreaming of the

19  dollars to the parent.  Do you recall that?

20  A     I recall that issue being in the case and whether it

21  was one memo or two, I don't remember.

22  Q     Okay.  Great.

23        Now you also worked with the Sidley Austin firm to

24  figure out how to model the waterfall of payments and

25  distributions that would result from your six scenarios,

1  correct?

2  A    Yes, although I would say I was guided there much more

3  by the Alvarez and Marsal firm because they had done their

4  own waterfall analysis.

5  Q    Okay.  And you relied on Sidley Austin to describe to

6  you the argument that you -- as you understand it you

7  believe the noteholders are making that was discussed right

8  before the end of direct examination?

9  A    I discussed it with Sidley Austin, but I also read the

10 briefs and filings by Aurelius on behalf of the noteholder

11 plan and, you know, also tried to glean what I could both

12 from deposition testimony and from your opening statement.

13 Q    Sure.  I understand.  But the legal brief you're

14 referring to, I think, was after the date of your expert

15 report, was it not?

16 A    Yes, but before the date of today.  So I read it in an

17 effort to understand the claim.

18 Q    So let me be clear.  Prior to the date of your expert

19 report, you relied on Sidley Austin to explain the

20 noteholders' position to you on that particular issue?

21 A    I'm remembering an Aurelius analysis of recoveries

22 that was provided to Tribune that I looked at.  I'm

23 remembering an Lazard analysis of the Aurelius recoveries.

24 So, no.  I was not principally relying on Sidley.  I was

25 relying in part on Sidley's understanding, but in part I was

1   relying on those documents as well.

2   Q    Let me try to refresh your recollection this way.

3   Didn't you testify that you asked Sidley five times to

4   explain to you what the argument was because you said you

5   weren't getting it?

6   A    I don't know if I said five times, but I was

7   struggling trying to understand what the argument was based

8   on the written documents available to me.  And so I

9   consulted extensively with Sidley to try to get -- to see

10  whether they had a clear understanding.  But I did have the

11  written documents as well.

12  Q    Okay.  And, finally, and perhaps most important, isn't

13  it true that you worked with Sidley to develop the

14  probabilities in Table 3 that we looked at on your direct

15  examination?

16  A    Not really.  I -- you know, I worked with Sidley in

17  understanding the legal claims and then I had to assign my -

18  - I thought my job was to assign my own probabilities.  Now

19  I certainly showed them to Sidley.  I asked them to, you

20  know, tell me if anything looked wrong about the

21  probabilities.  I don't -- but I -- I -- these are my

22  probabilities.   They're not their probabilities.

23  Q    All right.  Do you remember I took your deposition

24  four or five days ago?

25  A    Yes.

1    Q      It seems like quite longer ago.  Can I hand you a copy

2    --

3    A      Sure.

4    Q      -- of your deposition transcript, Professor?

5           MR. ZENSKY:  We'll have to wait for later, Judge,

6    to get to some of the videotape.

7    BY MR. ZENSKY:

8    Q      Can I direct your attention, Professor Black, to Page

9    155, Line 12, and we were discussing what was then your

10   Table 3 in your original report before it was revised?

11   A      Yes.

12   Q      And I asked you at Line 12, "And those results are

13   shown under the examiner case column in Table 3 and the

14   Black case?"  Your answer was, "And the other four cases as

15   well."  My next question was, "Sure.  I'm just asking you

16   about the examiner and Black case right now."  Answer,

17   "Yes."  Question, "And this work you performed entirely

18   yourself in terms of assessing the probabilities of each of

19   the six outcomes?"  Answer:

20         "I certainly discussed with Sidley their view of the

21          examiner's view and their view of the examiner says

22          the following outcome or the following, you know, sort

23          of bankruptcy law outcome is what is, do you guys

24          agree with that, do you have a different view.  So I

25          didn't develop the probabilities in Table 3 entirely

1          on my own.  I developed them in consultation with

2          Sidley as to, you know, the likely success of

3          different claims in the bankruptcy court."

4          Do you see that, Professor?

5     A    I do.

6     Q    Okay.  Was that truthful testimony when you gave it to

7     me not five days ago?

8     A    I agree with what my deposition said.  I don't see any

9     inconsistency with what I just said three minutes ago.

10    Q    Okay.  That's great.

11         Now you were retained back in March of 2010 by the

12    company -- or by Sidley?

13    A    In early 2010.  I don't remember when.

14    Q    You were interviewed by Mr. Liebentritt sitting here

15    at counsel table?

16    A    No.  I met with Mr. Liebentritt fairly early on.  I

17    wouldn't call it an interview.  He was in -- we had one

18    meeting where he was in the room and listening, and I was

19    discussing different aspects of the case.  I believe that

20    Mr. Ducayet was there, Mr. Bendernagel was there, Mr. Sunil

21    Mandava from Lazard was there, probably Brian Whitman from

22    Alvarez and Marsal was there, and I think Mr. Liebentritt

23    was more -- was basically listening.

24    Q    Okay.  Now after being retained in the -- I think you

25    said early 2010, you gave the company advice with respect to

1  what the parties refer to as the April plan, did you not?

2  A      I did, but not immediately after.

3  Q      Sure.  So --

4  A      So after -- certainly after April, but not immediately

5  after April because at that point I didn't yet have

6  sufficient knowledge to be able to form an opinion.

7  Q      Sure.  Okay.  I appreciate that clarification.  And a

8  month, two months, three months after the April plan was

9  agreed to by the debtors, you told them you were prepared to

10  give expert testimony in support of that plan, correct?

11  A      Yes.

12  Q      Okay.  Expert testimony that it was a reasonable

13  settlement?

14  A      That's correct.

15  Q      Okay.  Now after that plan terminated, you continued

16  working on your assignment, correct?

17  A      So after that plan came the examiner report and then

18  the original April plan was abandoned and there was various

19  work toward a new plan in the fall of 2010.  And I continued

20  to, you know, work at a -- let me call it a slower pace

21  during that period because I needed to absorb the examiner

22  report, but there was no -- you know, the parties were still

23  trying to reach a new settlement.

24  Q      Okay.  And as the parties discussed -- the parties to

25  the debtor creditor lender plan discussed and reached a

1  settlement, you gave the company your view in real time so

2  to speak, did you not?

3  A    In some cases I did.  Yes.

4  Q    You told the company you would be prepared to say that

5  the first stage of the settlement was a reasonable

6  settlement?

7  A    Yes, I did.

8  Q    Okay.  And then when the company was contemplating the

9  second stage of the settlement that would include the step

10  two disgorgement and release of step two avoidance claims,

11  you told them you were prepared to say that that was

12  reasonable as well?

13  A    That -- I think what I was prepared to say was that

14  the disgorgement recovery in the way that it was handled was

15  reasonable and then at that time the combination of the two

16  pieces put together was reasonable.

17  Q    Okay.  And you gave that company the advice you just

18  described on September 25th, 2010, correct?

19  A    So my recollection based on our deposition testimony

20  was that around that date the second piece, the step two

21  piece was put in place or that people were talking about it

22  and I was actually down giving a -- an academic workshop at

23  University of Illinois at Champaign Urbana and was asked on

24  a rush basis can you think through step two and how it --

25  you know, whether this is an add-on that you would be

1  prepared to support.  So, you know, I did my workshop.  I

2  went to -- went to dinner and I came back and I started to

3  think and worked on the train on Saturday morning and had

4  conversations with -- with at least Mr. Ducayet, I think Mr.

5  Bendernagel as well, on that next Saturday with regard to

6  the second step.

7  Q    Okay.  Professor, just since the Court is keeping us

8  on something of a clock, I would appreciate it if you tried

9  to just focus on the question if --

10  A    Okay.

11  Q    -- if that's okay.

12      Now you placed the date of September 25th because you

13  knew exactly where you were and you checked your calendar

14  during the course of the deposition, correct?

15  A    Yes.

16  Q    Okay.  Great.

17      Now having told the company that you would be prepared

18  to say the settlement was reasonable before it was entered,

19  don't you think that gives you an interest in the outcome of

20  this case that's different from a typical expert witness?

21  A    I could have changed my mind.

22  Q    Okay.  Well, let's explore that.  Don't you think that

23  having told the company in advance, I think this is okay and

24  I'm going to stand up for it, that you would be less

25  receptive to new arguments and new evidence as it unfolded

1  during the confirmation discovery process?

2  A    You know, I didn't think about it that way.  I thought

3  about it as here is my tentative view and I haven't thought

4  it all the way through, and here's how far I've thought

5  about it.  And so, no. I didn't view myself as bound not to

6  change my view, and then after giving my tentative view I

7  then continued to do work to make sure that I was

8  comfortable with that view and didn't want to -- to withdraw

9  it.

10  Q    Okay.  I think you testified on direct that you've

11  spent about a third of your time over the past year on this

12  assignment?

13  A    Yes.

14  Q    Okay.  So would that be something on the order of 700

15  hours of work, give or take?

16  A    I would say 700 or more.

17  Q    Okay.  And I think you are being compensated $800 an

18  hour, Professor?

19  A    Yes.

20  Q    And to date you've billed something on the order of

21  five or $600,000?  Did I have that right?

22  A    I -- I believe it's north of 500,000.  Yes.

23  Q    Okay.  Now you have no team working with you.  It's

24  just yourself.  Am I right?

25  A    That's correct.  I -- I did not -- I sometimes use a

1  research assistant.  I did not for this case.  I did rely

2  extensively on Lazard for factual input and on Alvarez and

3  Marsal for factual input, and as I've described on -- on the

4  Sidley Austin lawyers with regard to the legal background.

5  Q    Sure.  I understand.  I meant people working under

6  your direction?

7  A    No.

8  Q    Right.  There's no --

9  A    I did not.

10  Q    Okay.  Now if you could look back at your expert

11  report, Professor, which is under one of the tabs in the

12  book.  For purposes of this question you could use the old

13  one or the new one.

14  A    Okay.

15  Q    On Pages 10 to 12 you set forth the materials you had

16  reviewed in the course of preparing your opening report?

17  A    Yes.

18  Q    Okay.  And it accurately listed what you had reviewed,

19  right?

20  A    That was my effort.  Yes.

21  Q    Okay.  You need to be close to the microphone, sir.

22  A    I believe it to be accurate.  Yes.

23  Q    Okay.  And in your rebuttal report you listed

24  additional materials you had reviewed between the time of

25  your opening report and rebuttal report?

1  A    Yes.

2  Q    Okay.  Now if you look at Page 11, and I'm on your

3  opening report, but it's probably the same page in your new

4  one, and you look at Paragraph 10 you list some transcribed

5  interviews that the examiner conducted of various witness --

6  A    Yes.

7  Q    -- witnesses?  And you -- you reviewed those, correct?

8  A    Yes.

9  Q    Okay.  But by process of elimination we know the ones

10  you did not review prior to issuing your report?

11  A    Correct.

12  Q    Okay.  So you did not review the interview --

13  transcript of the interview with Mr. Larson, Mr. Kenney, Mr.

14  Petrik, Mr. Kaplan or Mr. Kenney of Murray Devine, true?

15  A    That's correct.

16  Q    Okay.  And also by process of elimination we know from

17  looking at your expert report you didn't review a single one

18  of the 2004 deposition transcripts that were taken by the

19  creditors' committee, did you?

20  A    The 2000 -- the Tribune leverage buyout was in 2007,

21  so 2004 doesn't make any sense to me.

22  Q    Okay.  It's a bankruptcy rule, Professor.

23  A    (Laughter)

24  Q    It's a reference to depositions that the creditors'

25  committee took of various witnesses in the -- in late 2009,

1  early 2010.

2  A    Okay.  I --

3  Q    You didn't review --

4  A    At this time --

5  Q    -- any of those?

6  A    -- I had not reviewed any of those depositions.

7  That's correct.

8  Q    Okay.  Now -- so if I tell you that two JPM bankers

9  were deposed, Mr. Kapadia and Mr. Kowalczuk  --

10  A    I did not review those depositions.

11  Q    Okay.  And yet you've offered opinions in your report

12  on how likely it is that bank good faith can be shown here?

13  A    I reviewed many briefs addressing the issue of bank

14  good faith.  I reviewed the examiner report.  I reviewed the

15  principle emails and correspondence referred to in there,

16  and I thought that those were a sufficient basis for a rough

17  judgment as to the likelihood of whether it's bank good

18  faith or egregious behavior.

19       But, frankly, in that area in large measure I'm

20  relying on the examiner's recounting of what he thinks the

21  principle evidence is.

22  Q    Okay.  Now continuing with the list of witnesses who

23  were deposed, you didn't review the depositions of Mr.

24  Browning or Mr. Rucker, Mr. Bluth -- Ms. Bluth from Duff and

25  Phelps, or the Houlihan witness, Mr. Buettell, did you?

1  A      I did not.  I reviewed the depositions or transcribed

2  interviews that are listed here and no others.  Yes.

3  Q      Okay.  Because a rough judgment is good enough for

4  these proceedings?

5  A      Because I had only as much time as I had and --

6  Q      Okay.

7  A      -- I was prioritizing where I put my time and I read

8  what I thought were the most important depositions to read.

9  Q      Okay.  Fair enough.  The examiner had quite a bit more

10  time than you, did he not?

11  A      Not really.  He did his work in what, three months, so

12  he had people helping him and he was taking the depositions.

13  But, look, I think he did an enormous amount of work in the

14  time that he had to do it, but he was limited in his time as

15  well.

16  Q      Okay.  In fact, would this sound -- strike that.  Do

17  you know that the examiner and his team logged about 22,000

18  hours of work in compiling their report?

19  A      I will accept your representation as to the total

20  amount that they billed.

21  Q      It -- it's on the court docket so you can check.

22         Now you understand that complaints have been approved

23  for filing by the Court and are on file?

24  A      Yes.

25  Q      Alleging the claims that are the subject of the

1  settlement that you're opining on, right?

2  A     The third party claims.  I believe that's right.  Yes.

3  Q     And what about the claims against the banks?

4  A     I reviewed the UCC and PHONES complaints earlier in

5  2010 and then I knew that new complaints had been, whether

6  formally filed or on file, and I asked if there is

7  significant new information that would cause me to spend the

8  time to read these new complaints, and the response I got

9  was, well, not really.  So I have not read the new

10 complaints.  I did read the early 2010 complaints.

11 Q     Okay.  Fair enough.  So when the committee first made

12 its motion for standing, there was a draft complaint

13 attached and you reviewed that complaint?

14 A     I reviewed at least two complaints by the unsecured

15 creditors' committee early in 2010.

16 Q     Okay.  And who was it who told you that there was

17 nothing much different about the complaint that was filed in

18 the later part of 2010?

19 A     So --

20             MR. DUCAYET:  Objection.  I think that

21 mischaracterizes his testimony.

22             MR. ZENSKY:  I think it's exactly what he just

23 said, Your Honor.

24             THE COURT:  I do, too.  Overruled.

25             THE WITNESS:  So here's -- here's what I know,

1  right, is that I was working very hard to try to get to

2  closure on my first report on February 8th, and as part of

3  that I went to a meeting in New York which was attended by

4  lawyers for several of the major lender groups, I think for

5  Oaktree, for JP Morgan, for the unsecured creditors'

6  committee.  And as part of that, you know, they asked me,

7  have you read our new complaints and I said, no.  And they

8  said you really should and I said, okay.  And -- but I was

9  still really busy, so then I pushed back and said can you --

10  to the Sidley people, can you find out which pages they

11  actually want me to read and what's new there.  And the

12  answer that came back was, you know what, there's not so

13  much new there.  This is not a high priority use of your

14  time.  And I -- I took their judgment on that.

15          MR. ZENSKY:  Okay.  Fair enough.

16  BY MR. ZENSKY:

17  Q    Now in the course of your work, I think it was earlier

18  in your engagement, the front end, you met with a gentleman

19  named Nils Larsen, true?

20  A    I believe that I spoke to him on the phone and I'm not

21  sure that I ever met him.

22  Q    Okay.  And the purpose of that was to try to

23  understand the potential tax strategies that Mr. Zell

24  intended to undertake in connection with the acquisition?

25  A    That's -- that's correct.  The leverage partnership

1  strategy that underlies what I call asset disposition tax

2  benefits.

3  Q    Okay.  And you also spoke to Mr. Zell's tax counsel

4  for that reason as well?

5  A    I did.  After speaking to Mr. Larson, I wanted more

6  information about this tax strategy and how solid it was and

7  exactly how it worked, and they said go talk to our tax

8  lawyers, so I went and talked to their tax lawyers.

9  Q    Okay.  And I think you testified quite a bit on direct

10  about the significance of those tax strategies or rather

11  whether the value that might be associated with them counts

12  toward the balance sheet test, true?

13  A    Yes.  These are an important component of balance

14  sheet strategy if they count.

15  Q    Okay.  And do you understand that Mr. Larson is a

16  long-time friend of Mr. Zell?

17  A    He's certainly been a long-time associate of Mr. Zell

18  and if you tell me that they're friendly, I have no reason

19  to dispute it.

20  Q    Okay.  And do you understand he was heavily involved

21  in the transaction itself?

22  A    Yes.

23  Q    Okay.

24  A    Indeed that's why I thought it was useful to ask him

25  about the tax strategy.

1  Q    Okay.  Now let's talk about the examiner again for a

2  moment.  Am I right that you view him more as a bankruptcy

3  practitioner than a bankruptcy scholar?

4  A    So he's on the UCLA law faculty, but he's also the

5  named partner in a bankruptcy law firm or one of the named

6  partners.  And so I view him as a sort of scholar academic

7  as opposed to an academic first.

8  Q    Okay.

9  A    I'm sorry.  A practitioner academic as opposed to a

10  scholar first.

11  Q    Okay.  But you do agree he had the expertise and the

12  credentials to perform the work he was assigned?

13  A    I -- as I said at deposition, I do not doubt that he

14  is an expert in bankruptcy law.

15  Q    Right.  And you don't doubt that he was independent in

16  the sense that he had no bias against any of the parties to

17  this restructuring?

18  A    That's correct.

19  Q    Okay.  Now while you testified, I think in your

20  deposition, that you have more experience, I think, in the

21  mergers and acquisitions area, you would agree that Mr. Klee

22  has more experience in the bankruptcy arena?

23  A    Yes.

24  Q    Okay.  Okay.  Let's talk about the topic of

25  acquisitions generally for a moment and leveraged

1  acquisitions.  You agree with me that people do, on

2  occasion, overpay for assets?

3  A    Yes.

4  Q    Okay.  And the fact that Mr. Zell may have a

5  reputation as a smart investor, that doesn't preclude in any

6  way the possibility that he overpaid in this instance, does

7  it?

8  A    It does not.

9  Q    Okay.  And people do enter transactions when the

10  company is so levered that it will be unable to weather even

11  a small bump in the road.  That does happen?

12  A    That has happened.  Yes.

13  Q    Okay.  And people actually have entered transactions

14  that are doomed to fail?

15  A    There are court opinions that so find.

16  Q    Okay.  And banks do finance bad deals and lend to

17  companies where there is a likelihood of insolvency?

18  A    That can certainly happen.

19  Q    Okay.  Now a significant issue that cuts through all

20  the fraudulent transfer tests at issue here, Professor, is

21  the reasonableness of the company's projections as they

22  stood at the time of the transaction.  You would agree with

23  that?

24  A    I would qualify it by saying that you have to think

25  separately about the February 2000 projections with respect

1  to step one and about the fall 2000 projections with respect

2  to step two because the company changed and revised its

3  projections during 2007.

4  Q    I'm sorry.  I'm not asking you any qualitative

5  question about these projections, but generally would you

6  agree that the reasonableness of the projections is an

7  issue?

8  A    Yes.

9  Q    Oaky.  And in many cases the adequacy of capital tests

10  turn on whether the company had a reasonable base case and a

11  serious downside case?

12  A    So the way I would view it is that capital cash flow

13  cushion or unreasonably small capital should be tested, as I

14  understand the bankruptcy cases, against, let me call it a

15  serious downside or stress case.  And so you have to have a

16  serious downside or a stress case.

17  Q    Okay.  All right.  Let's turn to the opinions that you

18  developed and I think that we can look at some of the slides

19  you were shown on direct.

20            MR. ZENSKY:  Your Honor, I take it you still have

21  the slides from --

22            THE COURT:  I do.

23            MR. ZENSKY:  -- from direct?

24            THE COURT:  I do.

25            MR. ZENSKY:  Okay.

1  BY MR. ZENSKY:

2  Q     And do you have them, Professor Black?

3  A     Yes.

4  Q     Okay.  Now Table 1 is the table that sets out the

5  recoveries that you estimated would flow to each creditor

6  class under the assumptions of each of the six scenarios,

7  correct?

8  A     Yes.

9  Q     Okay.  And Table 3 is the table that sets forth at

10  least your revised probabilities of each of the six outcomes

11  in the six cases that you show here --

12  A     Yes.

13  Q     -- correct?  And then when we put Table 1 and Table 3

14  together, I think you described it as a matter of algebra.

15  We get to Table 4 which is the ultimate statement of your

16  opinions --

17  A     No.

18  Q     -- true?

19  A     It is a matter of algebra to combine Table 1 and Table

20  3 to get to Table 4, and it is a matter of algebra to

21  combine Tables 2 and 3 to get to Table 5, and then my

22  opinions will flow from Tables 4 and Table 5.

23  Q     Okay.  Fair enough.  But with respect to Table 4,

24  which is the expected recoveries or expected settlement

25  recoveries without the additional litigation recoveries, the

1  building blocks of that are Table 1 and Table 3?

2  A     The building blocks of Table 4 as a matter of

3  mathematical computation are Table 1 and Table 3.  Yes.

4  Q     Okay.  Great.  All right.  I want to spend some time

5  with you digging deeper on the assumptions in each of the

6  scenarios so we have a clear record, Professor.  So I'm

7  looking at Table 1 --

8  A     Okay.

9  Q     -- which is the table where you have the payouts

10  excluding the hypothetical three-hundred-million-dollar

11  recovery scenario --

12  A     Okay.

13  Q     -- from third parties.  Now before looking at the

14  numbers you made the choice -- strike that.

15      You said that you felt that your six scenarios were

16  very similar to six of the scenarios that were in Annex B of

17  the examiner report?

18  A     Yes.

19  Q     Okay.  But notwithstanding that, you made the decision

20  what six scenarios to model in your expert report?

21  A     Yes, I did.

22  Q     Okay.  And to the extent that the Court could

23  determine that your six scenarios omit a reasonably likely

24  scenario that you didn't consider, then the ultimate result

25  on Table 4 would be misstated to some degree, would it not?

1  A      So the question would be I made a judgment that it was

2  worth having six scenarios rather than eight or nine or

3  thirteen with variance of them.  As I've described for post-

4  filing interest I actually had variance.  I have a Variance

5  C-1 with post-filing interest and a variance C-2 without it,

6  and then I gave seventy percent weight to post-filing

7  interest.  And that involved the judgment that it was going

8  to be more confusion than clarity to have two Scenario C's

9  that differ only based on post-filing interest.

10       I did the same thing for Scenario E.  I did the same

11  thing for Scenario F, and I made other assumptions, such as

12  no step two protected debt that flow through all of the

13  scenarios where I could have said maybe yes, maybe no, let

14  me have more scenarios.

15       I did the same thing with the step one protected debt

16  where I assumed there was step one protected debt in all of

17  the scenarios rather than have a one in two variant with and

18  without step one protected debt in the scenarios where the

19  step one debt would be avoided.

20       So that was a judgment as to the right balance between

21  having enough scenarios to capture the main lines of

22  outcomes without drowning in the details.

23  Q      Right.  Okay.  Again, I would just ask if you could

24  try to focus on the question, Professor.  I'm not asking you

25  to explain or justify the six that you selected, just

1  whether in your view if you omitted a scenario that the

2  Court determines at the end of the day was a reasonably

3  possible scenario, it would affect the results that flow

4  through to Table 4, would it not?

5  A     It might.

6  Q     Okay.

7  A     It might not affect the low end or the high end.

8  Q     Okay.  Now Scenario A I think is easy to dispense

9  with.  You've described it; that is, there is no success in

10 any sort of litigation and each class receives its waterfall

11 recoveries, correct?

12 A     That's Scenario A.  Yes.

13 Q     Right.  And just so we're clear the numbers on your

14 demonstrative Table 1 are based on the 6.75 billion-dollar

15 valuation?

16 A     That's correct.

17 Q     Okay.

18 A     All of the scenarios are based on 6.75 billion

19 valuation and I addressed higher enterprise value in my

20 robustness checks.

21 Q     Okay.  Now Scenario B is the first scenario where

22 there is a partial litigation victory, correct?

23 A     That's correct.

24 Q     Okay.  And in that scenario you have avoidance at step

25 two, but at Tribune only?

1    A    That's correct.

2    Q    Okay.  And the way you modeled the payments that would

3    result, if I understand it, is that the value that otherwise

4    would have gone to the step two holders of the parent level

5    is dispensed pari passu to everyone else at the parent?

6    A    That's correct.

7    Q    Okay.

8    A    And disgorgement comes in to Tribune at the parent

9    from the step two lenders.

10   Q    Sure.  You assumed $302 million of disgorgement in

11   Scenario B?

12   A    Yeah.  I believe the gross amount is 318 and I

13   accepted the Alvarez assumption that that was ninety-five

14   percent collectable.

15   Q    Okay.  And you assumed that the subsidiaries could

16   press a 6.9 billion-dollar claim against a parent?

17   A    Yes.  Again, there I accepted the Alvarez estimate as

18   to the likely amount of valid sub-claims and I tested that

19   in a sensitivity analysis where I used a lower amount.

20   Q    Okay.  And did you ask Alvarez what claim the parent

21   has back against the subsidiaries for intercompanies?

22   A    I did a lot of work with Alvarez to try to understand

23   the intercompany claims going every which way, and the

24   bottom line of that analysis was that the claims of Tribune

25   parent against selected subsidiaries did not meaningfully

1  affect recovery.  So Alvarez, in their waterfall analysis,

2  takes those into account, but they would have moved my

3  numbers by under a billion dollars and substantially

4  complicated the spreadsheet, and so I made the judgment not

5  to model them explicitly.

6  Q    Okay.  And with respect to the disgorgement dollars --

7  you may have answered this already -- that you split up pari

8  passu the same way you split up the value at the parent

9  before disgorgement?

10  A    That's correct.  I addressed the possibility that the

11  disgorgement dollars would not go to the step one banks in a

12  sensitivity analysis.

13  Q    Okay.  Now you covered this in your rebuttal report

14  and testified last week that if a Court were to prevent the

15  step one lenders whose claims have not been avoided in

16  Scenario B, right, their claim is good at the parent?

17  A    Yes.

18  Q    If a Court were to prevent the holders of step one

19  from benefiting from the avoidance of step two with respect

20  to those disgorgement payments, that would drive up the

21  recovery to the notes in the amount of $150 million,

22  correct?

23  A    That sounds like the right amount.  Yes.

24  Q    Okay.

25  A    That assumes that you don't allow any of step one,

1  including the step one protected debt to recover, and if I

2  recall correctly, that also assumes that if the judge were

3  to say, I'm only going to allow the subs recover enough to

4  pay off the sub-trade creditors.  So I'm not going to allow

5  the subs otherwise to recover at the parent and then pay

6  that money out to the banks at the sub level.

7  Q    Okay.  In Scenario B, step one is not avoided,

8  correct?

9  A    That's correct.

10  Q    Okay.  So there is no -- you don't reach the question

11  of protected debt if a step one claim is good in Scenario B?

12  A     Yes.  But remember that this is an equitable remedy,

13  so I wanted to think through suppose the Court were to apply

14  that equitable remedy.  In effect, the Court is saying, the

15  step one banks didn't something wrong or they wouldn't be

16  doing this in the first place.  They might decide let me

17  bypass -- let me call it the step one unprotected debt, but

18  still not bypass the step one protected debt.  And so I

19  wanted to allow for that possibility.

20  Q    Okay.  Now I think you said that this was one of the

21  potential sensitivities that you looked at, but with respect

22  to the numbers on Table 1, if you were to have included this

23  as the more likely outcome with respect to disgorgement or

24  to do a weighting -- let me strike that.  If you included it

25  as the more likely outcome where step one was prevented from

1    sharing in the disgorgement, Column B, the box for the

2    notes, would have been 255 rather than 105.  Can we agree on

3    that?

4    A    So I agree that if I used this as my main scenario,

5    and let's make sure we understand what I'm using.  I'm

6    saying that the 302 million of disgorgement to Tribune

7    doesn't go to the step one banks at all.  It doesn't go

8    directly.  It doesn't go to the step one protected debt and

9    it doesn't go first down to the subs and then out to the

10   banks.  I consider that to be low probability, but if I

11   assigned it a hundred percent probability in Scenario B,

12   then Scenario B would go up from 105 to 255.

13   Q    Okay.  And if you did a weighting between the step one

14   doesn't share in disgorgement outcome and step one does, it

15   would be somewhere between 105 and 255?

16   A    If I'm remembering correctly, if I allow even the step

17   one protected debt to share, then the 150 goes down to

18   thirty-nine.  So I don't think this is actually likely if I

19   assign weightings to move my numbers in Scenario B by very

20   much.  But it would be somewhere between zero and 150.  I

21   agree with that.

22   Q    Okay.  Fair enough.  Let's move on to Scenario C, and

23   am I correct with respect to how you modeled the

24   distributions, it's essentially the same as Scenario B

25   except that in this case the subsidiary debt has been

1    avoided at step two as well?

2    A    So in this case the subsidiary debt has been avoided

3    at step two and as I described on direct, that's going to

4    raise the question of whether post-filing interest is going

5    to be allowed as well.

6    Q    Okay.  Now if you had run the variant that we just

7    talked about respecting disgorgement, then there could be as

8    much as a hundred-and-fifty-dollar millions -- $150 million

9    extra that would flow to the notes in Scenario C as well?

10   A    No.

11   Q    Okay.  Did you run a variant in any way that modeled

12   at least -- strike that.  With respect to Scenario C-1 where

13   you allow post-petition interest --

14   A    Yes.

15   Q    Yes.  You ran that at the contract rate, not the

16   federal judgment rate?

17   A    Yes.  So in thinking about post-filing interest I also

18   had to think about if interest is allowed at what rate, it

19   could be at the statutory rate, which I took to be

20   effectively the same as saying you don't collect post-filing

21   interest.  It could be at the contract rate or it could

22   potentially be at the higher default rate.  And what I

23   modeled was a seventy percent chance of collecting at the

24   contract rate, or as I said in my robustness checks,

25   alternatively, collecting some amount of step two protected

1  debt.

2  Q     Okay.  Now you testified near the end of your direct

3  examination that -- that if the step one holders are capped

4  at their claim amount and are not permitted to collect post-

5  petition interest, and if the value is higher -- and you

6  added some other conditions and we'll get to those in a

7  minute.  But if we start to go down that road, that is a

8  viable route for superior recovery to the noteholders?

9  A     If you -- if you don't allow post-filing interest and

10  you go up high enough in enterprise value, then you can get

11  above the 659 in the DCL plan.

12  Q     Right.  And I think you testified last week that if we

13  got up to 7.5 billion, for example, that that would result

14  in almost a billion-dollar payment to the notes under the

15  hypothetical where post-petition interest is not allowed?

16  A     So what I think I testified to is in either Scenario C

17  or Scenario E, if you don't allow post-filing interest and

18  you don't have any step two protected debt and you kick

19  enterprise value up to seven-and-a-half-billion, then just

20  as a matter of the waterfall the notes would get about a

21  billion dollars.

22  Q     Right.  Now when you were discussing this with Mr.

23  Ducayet you said that one of the roadblocks, I think you

24  singled it out as the biggest one on the defense side, would

25  be the 546(e) defense?  You would have to overcome that for

1  this to result in recovery to the noteholders?

2  A    It's -- I certainly viewed it as a significant

3  statutory defense and, therefore, I took it into account in

4  all of my six cases.  I assigned different probabilities to

5  it.

6  Q    Okay.

7  A    It was never a high probability, but it was always

8  there.

9  Q    Okay.  But in connection with whether this provides a

10 route to superior recovery, you singled out 546 as what you

11 perceived to be a significant roadblock, isn't that your --

12 wasn't that your testimony on direct?

13 A    So you -- I am not recalling my testimony on direct.

14 So let me think through the scenario, right?

15 Q    I think it was a yes or no question, Professor.  If

16 you don't --

17 A    I'm not recalling my testimony.  I'm happy to think

18 through the scenario and assess whether 546(e) would be a

19 roadblock to this route.

20 Q    Let me see if we can parse it a little bit.  546(e)

21 would not apply even if the banks were right that it could

22 conceivably work in a fraudulent transfer case.  It wouldn't

23 apply to an intentional fraudulent transfer, would it?

24 A    That's correct.

25 Q    Okay.  And the examiner found that step two was

1  somewhat likely to be found to be an intentional fraudulent

2  transfer, true?

3  A     That's correct.

4  Q     Okay.  And under your rating system for the examiner's

5  probabilities, intent -- somewhat likely equals a fifty-five

6  to seventy percent chance of success --

7  A     Yes.

8  Q     -- correct?  Okay.

9  A     That's how I rated the examiner.  Yes.

10 Q     Right.  So under the examiner view of the world -- not

11 the Black view, but the examiner view, at your midpoint we

12 have a 62.5 percent chance of establishing intentional

13 fraudulent transfer at step two?

14 A     That would be how I would model the examiner's

15 discussion of somewhat likely for intentional fraud at step

16 two.  That's right.

17 Q     Okay.  And that would get us over the avoidance hurdle

18 and over the 546(e) hurdle at the same time, right, if you

19 have an intentional fraudulent transfer, the transfer's

20 avoided or the obligation is avoided and there's no 546(e)?

21 A     I believe that to be correct as a statutory matter.

22 Q     Okay.  Now before we leave Scenario C, you mentioned

23 -- I'm sorry -- you started to talk about D and E, I think,

24 and you mentioned protected debt, protected step one debt?

25 A     Yes.

1    Q      So --

2    A      Protected step one debt would be relevant in Scenarios

3    D and E.

4    Q      Right.  And C as well, right, where step one is -- no.

5    D and E.  I'm sorry.  I was right --

6    A      Principally D and E.  It -- it -- I referred to it

7    when we were talking about bypassing the step one banks in

8    Scenario B before, but the principal place where step one

9    protected debt matters is where the step one debt is avoided

10   and that's Scenarios D and E.  It doesn't matter in Scenario

11   F because the notes and PHONES get paid even if there is

12   step one protected debt.

13   Q      Okay.  And you applied in scenario -- modeling

14   Scenarios D and E $2.7 billion of protected debt?

15   A      I believe it was 2 billion,760 million.

16   Q      Okay.  And just so we're clear on terminology with the

17   Court, when you use protected debt, you mean debt that would

18   come back after avoidance under Section 548(c)?

19   A      That's correct.

20   Q      Okay.  And you understand that that only is available

21   to the holder of an avoided claim if they can establish good

22   faith?

23   A      That is correct.

24   Q      Okay.  And you didn't model, at least as shown on

25   Table 1, the impact of there being no good faith in the step

1    one holders?

2    A    I did not and I will be happy to explain why I made

3    that choice if you want me to.

4    Q    Okay.  Your -- you can be asked that on -- on

5    redirect.

6            THE COURT:  Well, he doesn't have to.

7            MR. ZENSKY:  If Your Honor would like to hear the

8    answer, I'm happy to ask the question.

9            THE COURT:  It's all right.

10            MR. ZENSKY:  Okay.

11        (Laughter)

12    BY MR. ZENSKY:

13    Q    Okay.  Now in Scenarios D and E you applied the same

14    methodology.  You let the subsidiaries present a claim

15    against the parent?

16    A    So in all of my scenarios, A through E, the

17    subsidiaries are considered to have a 6.9 billion claim

18    against the parent.  Scenario F, that doesn't matter.

19    Q    Okay.  Now if you look at Table 3 for a moment from

20    your demonstratives --

21    A    Okay.

22    Q    -- on direct, Professor --

23    A    Yes.

24    Q    -- you testified that -- you see how under the

25    examiner case you have fourteen percent for D and two

1  percent for E?

2  A    Yes.

3  Q    And you testified that the examiner assigned the

4  combined sixteen percent probability to those two scenarios?

5  A    I would say --

6  Q    You didn't really mean it that way, did you?

7  A    No.  The examiner does not give you probabilities.  I

8  assigned a combined sixteen percent to D and E in my

9  interpretation of the examiner case.

10  Q    Okay.  And I under -- I understood it that way.  I

11  wanted to make sure the record was clear was the Court.

12      Okay.  Now in going back to Table 1 for a moment, next

13  to the PHONES line under F, full avoidance, you have 791?

14  A    Yes.

15  Q    Seven-hundred-and-ninety-one-million?

16  A    Yes.

17  Q    Okay.  You understand there's an issue about the size

18  of the PHONES' claim?

19  A    I do.

20  Q    Right.  And  that if the PHONES' claim was allowed in

21  the larger amount, in a full avoidance scenario there's

22  enough value to pay the PHONES' claim in full?

23  A    That's correct.

24  Q    Okay.  And in that case Scenario F, the number that

25  would be there would be something closer to 1.1 billion?

1  A    My understanding is that the potential PHONES' claim

2  would be in the 1.1 billion range.  Yes.

3  Q    Okay.  And, finally, before leaving this part of our

4  discussion, Professor, in Scenarios C, E and F, you don't

5  treat any of the value that is -- that it result -- or

6  strike that.

7     Okay.  Let me move to Table 2 for a moment.  Just a

8  question or two on this, Professor.   With respect to the

9  $300 million that you hypothesized could be collected on

10  Table 2, am I right that you allocated it the same way you

11  allocated value in the scenarios that we just went through?

12  A    I allocated the 300 million among the allowed claims

13  that had not already been paid in full, and the reason that

14  matters is because in my Variance C-2 and E-2, the step one

15  banks have already been paid in full, so they're no longer

16  going to eat at the third party recovery table.

17  Q    Sure.  Because when you bring the disgorgement in, if

18  there's no post-petition interest, there's enough value to -

19  - they are paid in full, as you said?

20  A    They've already been paid in full, so they're not

21  sharing in the -- in the litigation trust recoveries.  That

22  was in -- in third party recoveries that was how I modeled

23  it.

24  Q    Okay.

25          MR. ZENSKY:  Your Honor, are we planning on going

1   straight through or --

2           THE COURT:  Well, how much do you have in

3   remaining cross-exam, estimate?

4           MR. ZENSKY:  Quite a bit.  I would --

5           THE COURT:  Could you be a little more specific?

6       (Laughter)

7           MR. ZENSKY:  I apologize, Your Honor.

8           THE COURT:  It's okay.

9           MR. ZENSKY:  I would say that we're somewhere

10  past a third through the cross.

11          THE COURT:  Okay.  Well, I had thought we might

12  take a break around five, but if you're telling me you would

13  like one a little sooner, we can do that.

14          MR. ZENSKY:  We can keep going.

15          THE COURT:  Okay.  But -- and then resume until

16  about six or so.  See how my stamina is at that point.

17  BY MR. ZENSKY:

18  Q    Okay.  Let's talk about Table 3, Professor, for a

19  moment. Now Table 3 has the -- the probabilities that you

20  determined for each of the six scenarios in each of the six

21  cases, correct?

22  A    Yes.

23  Q    Okay.  Now there is a chart that you produced to us

24  that has some backup that underlays (sic) the numbers on

25  this table, correct?

1  A      Yes.

2  Q      Okay.  Now I'm going to ask you if you could look in

3  your binder -- if you go to the tab that says, Spreadsheet

4  Full.

5  A      Yeah.

6  Q      And you see the exhibit that says, Defendant's Exhibit

7  Black 26?

8  A      Yeah.

9  Q      From your deposition?

10 A      Yes.

11 Q      Okay.

12        MR. ZENSKY:  I'm just looking, Your Honor, for

13 the trial number for that one.  This is Noteholder Exhibit

14 2367, Your Honor.

15 BY MR. ZENSKY:

16 Q      Okay.  Professor, am I correct that this first

17 document is the set of work papers that you produced in

18 connection with your original expert report?

19 A      I have no reason to think otherwise.  But, you know,

20 it's a sea of numbers, so to verify it would take a while.

21 Q      Yeah.  It is a sea of numbers.  You and I can agree on

22 that.

23        Now if you look at the Page 956.5 --

24 A      Okay.

25 Q      -- Professor --

1  A      Yeah.

2  Q      -- you and I spent some time discussing this last

3  week.

4  A      Yes.

5  Q      Okay.  And that is the backup to Table 3 as it stood

6  at the time of your deposition, correct?

7  A      Yes.

8  Q      Okay.  So to the extent Table 3 drives Table 4, would

9  you agree with me that the document we're looking at, the

10  work papers for Table 3 are pretty important?

11  A      Yeah.  Table -- the Page 956.5 is a important backup

12  for Table 3.

13  Q      Okay.  So let's see if we can help the Court

14  understand some of the numbers on this.  If we could zero

15  in --

16              THE COURT:  Well, first the Court has to be able

17  to read them.

18              MR. ZENSKY:  Yes.  We're going to try to

19  highlight the relevant section, Your Honor.

20              THE COURT:  Thank you.

21      (Pause)

22              MR. ZENSKY:  Your Honor, I think that there is a

23  blow-up of this document later in the binder if I can --

24              THE WITNESS:  Yeah.  I was going to say, gee,

25  I've got a version of this in a Word document that I can

1    actually read and maybe we should work with that.

2          (Pause).

3              THE COURT:  Yes, Mr. Bendernagel.

4              MR. BENDERNAGEL:  Would it be helpful to take a

5    break right now?  I mean, we were going to wait anyway and

6    it seems like it might be more efficient.

7              THE COURT:  Well, it couldn't hurt.  Ten-minute

8    recess.

9              MR. BENDERNAGEL:  Thank you.

10         (Recess)

11             MR. ZENSKY:  Thank you, Your Honor.  And we have

12   enlarged the particular line of the chart on your screen,

13   and to the extent we need to delve into those numbers I hope

14   that it's -- it's visible at this point.

15             THE COURT:   It looks great.  Thank you.

16             MR. ZENSKY:  Okay.  Thank you, Your Honor.

17   BY MR. ZENSKY:

18   Q    Okay.  When -- before we broke, Professor, we were

19   going to begin to look at kind of the build-up to Table 3,

20   and on direct you testified about the step integration

21   issue.  Do you recall that?

22   A    Yes.

23   Q    Okay.  And there are essentially --

24   A    Yes.

25   Q    Okay.  Thank you.

1       There are essentially three possibilities as you've

2   modeled it that there be -- there's no integration of any

3   kind, there's informal step integration as you described it,

4   and formal step integration, correct?

5   A    Yes.

6   Q    And you described formal integration, I think, as

7   swinging for a home run.  Do you recall that?

8   A    Yes.  So my concept was with formal step integration

9   you evaluate solvency at step one and only at step one, and

10  you might knock -- you might win on that, but if you don't,

11  you don't get a second look at step two.

12  Q    Okay.  And while I certainly understand the logic

13  behind that as you set it forth at argument for it as you

14  set it forth in your report, you would agree with me that

15  it's not clear that the examiner necessarily saw it that

16  way; that you only measure at step one informal integration

17  and don't take a second look at step two?

18  A    I agree that it's not clear.  I think that my view is

19  consistent with what the examiner does say, but he doesn't

20  squarely address this issue.

21  Q    Sure.  Okay.  And you agree with me that it's possible

22  that a Court could look at the step two debt at the time of

23  step one for a balance sheet test and then actually conduct

24  a balance sheet test at step two again as well?

25  A    Yes.

1    Q    Now with informal integration, which you apply to the

2    capital adequacy and ability to pay debts test, there you

3    look at the step two and step one debt, both at step one and

4    at step two again, correct?

5    A    Yes.

6    Q    At that point, the step one, that's already been

7    assumed.  So you can swing again with informal step

8    integration, right?

9    A    That's correct.  You're swinging only for step two,

10   but you're up at the plate again.

11   Q    Okay.  Now, if we look at the examiner case on the

12   document we've been looking at, which was Bates stamped

13   Black 956.5, the far-right column, there's a heading, step

14   Integration Possibility or Probabilities.

15   A    That's correct.

16   Q    And in the examiner case, you assigned 20 percent to

17   no integration, 35 percent to informal integration and 45-

18   percent chance of formal.

19   A    That's correct.

20   Q    Now, those numbers themselves do not appear in the

21   examiner report, correct?

22   A    That's correct.  The examiner describes categories

23   highly unlikely, reasonably unlikely, somewhat unlikely and

24   so on and does not assign probabilities or probability

25   ranges to those assessments.

1  Q    Sure.  We can agree on that.  And what you did in the

2  early part of your report was lay out a range of

3  probabilities or percentages that would align with the

4  examiner's seven-point continuum of conclusions, correct?

5  A    That's right.  That was my attempt to take the

6  examiner's language and turn it into probabilities.

7  Q    Okay.  And the numbers that you have assigned in the

8  examiner case to step-integration probability flowed

9  directly from the examiner's stated conclusion on those

10  points.

11  A    They are intended to, yes.

12  Q    Okay.  Now, in contrast to that, Professor, if you

13  could look at -- there are 18 other probabilities in the

14  examiner case across scenarios A through F.  You have

15  various numbers in there, correct?

16  A    That's correct.  So we've got three possibilities for

17  step integration, six scenarios for each, that gives you 18

18  percentages, and then the bottom line, the combined line, is

19  a mathematical combination of the three lines above it, so

20  it's not a separate number.

21  Q    Sure.  So the 18 that we're talking about now are the

22  numbers that flow across next to the no integration,

23  informal and formal.

24  A    That's correct.

25  Q    Okay.  And in contrast to the step-integration

1  percentages, these percentages represent your assessment of

2  an amalgam of issues that would drive any one or more of

3  these scenarios, correct?

4  A      That's correct.

5  Q      And when you multiply the numbers that you inserted

6  for each of scenarios A through F in the three cases times

7  the possibility of step integration, that's how we get the

8  combined probabilities?

9  A      That's how you get the probabilities on the combined

10  line, that's correct.  And I can give you a numerical

11  example, if you want.

12  Q      Okay.  Now, none of these numbers certainly, meaning

13  the 18 numbers we've just identified, none of those numbers

14  appear in the examiner report.

15  A      That's correct.

16  Q      Because I think as we've said -- strike that.  The

17  examiner never gave aggregate conclusions about the ultimate

18  success of any one particular claim.  He gave specific

19  conclusions about each issue or subissue as he saw it.

20  A      That's right.  So, for example, in scenario F, he

21  gives you an assessment of balance-sheet solvency at

22  Tribune, balance-sheet solvency at the subs, cash-flow

23  solvency and cash-flow cushion, but he doesn't say what's

24  the overall likelihood that Tribune is insolvent in one of

25  these senses or the overall likelihood that the guarantor

1    subs.  He just doesn't give you that.

2    Q    Sure.  And there are a lot of other issues that would

3    bear on these 18 percentages, as well.  You talked about

4    some of them before like defenses, among other things.

5    A    That's correct.  So he does provide assessments of the

6    defenses in terms of his ranges, but the defenses are not

7    all independent of each other, so you have again the

8    question of how do you assign an overall probability.

9    Q    Okay.  And how you did it, Professor, was through a

10   qualitative judgment, not through a strict mathematical

11   exercise, true?

12   A    So in some cases, I put mathematical bounds on

13   probabilities where, in effect, you can have balance-sheet

14   insolvency or lack of cash-flow cushion, and if I know the

15   examiner's assessment of each of those separately, I can put

16   an upper bound and a lower bound on where he could come out

17   for those two combined, and indeed, I do that in my report,

18   but then in between that upper and lower bound, I use my

19   judgment.

20   Q    Right.  A qualitative judgment.

21   A    I agree.

22   Q    Okay.  Now, for example, the 10 percent number that's

23   in scenario F with no integration in the examiner case, that

24   number was the product of a qualitative judgment.

25   A    That's correct because that's a combined number that

1  reflects the combined possibility with no step integration

2  of balance-sheet insolvency at both Tribune and subs or lack

3  of cash-flow cushion at both Tribune and subs or Tribune

4  actual intent at step one or bank-equitable subordination at

5  step one.

6  Q      Right.  A lot of issues were driving that number.

7  A      That one is going to be driven by those four issues

8  and then also by taking the statutory defenses off the top.

9  Q      Okay.  So in the absence of it being a mathematical

10 exercise and an exercise in judgment, there was also a

11 degree of subjectivity injected into this weighing of the

12 probabilities, was there not?

13 A      I needed to use my best judgment, yes.

14 Q      Okay.  And in some cases, I think you told me last

15 week some issues nudged you a percentage or two in one

16 direction or another as you weighed them in conjunction with

17 all the other possibilities.

18 A      I believe I used that term, yes.

19 Q      Okay.  And you said that in certain circumstances, the

20 possibility of a claim succeeding, like equitable

21 subordination for example, may have added a little bit of

22 probability of one percent, two percent.  That was part of

23 the process.

24 A      Yes.  So again, if you want to look at your ten-

25 percent number for scenario F in no step integration, I

1    added a -- part of that ten percent, but a small part

2    reflects the possibility that even though Tribune is cash-

3    flow solvent and has a cash-flow cushion and even though

4    either Tribune or the subs are balance-sheet solvent, that

5    you would nevertheless find actual intent or equitably

6    subordinate the banks.

7    Q    Right.  And you told me that, in fact, you had to do a

8    qualitative assessment in your head to prepare these

9    numbers.

10   A    Depending on the assessment, it might have been in my

11   head.  It might have been -- partly been on an calculator,

12   but at the end of the day, it was an overall qualitative

13   judgment, my best judgment as to how the examiner might come

14   out putting, in this case, these four factors combined

15   together in a way that he does not explicitly do in his

16   report.

17   Q    Sure.  And I'm not just focused on the ten-percent now

18   number.  I'm talking generally about the --

19   A    That's true more generally, yes.

20   Q    And you told me that, in fact, you had to do a

21   decision tree in your head with respect to some of these

22   issues.

23   A    In some cases, I tried to do that, and in some cases,

24   I had my trusty old HP 12C calculator, and I did it that

25   way, yes.

1  Q     Right.  And you had a lot of moving pieces in your

2  head, as many as you could handle.

3  A     I think I used the phrase that I tried to keep as many

4  pieces in my head at one time as I could handle, yes.

5  Q     All right.  Now, let's try to go back to some of the

6  examiner's conclusions that you had to kind of bring all

7  together to assign these probabilities.  One was the

8  examiner's view on the likelihood that asset disposition,

9  tax value or cash-flow tax value might be available.

10  A     No, because the examiner did not consider the source

11  of value, so in my understanding of the examiner case, I did

12  not consider it.  I gave it a zero-percent weight.

13  Q     For both of those tax issues?

14  A     Yes.

15  Q     Okay.  You did have to consider the examiner's view as

16  to the likelihood of balance-sheet insolvency at step one at

17  the parent.

18  A     That's correct.

19  Q     And balance-sheet insolvency at the subs at step one.

20  A     That's correct.

21  Q     Okay.  You had to look at -- or strike that.  Let me

22  back up.  The process we're talking about now is the same

23  process you used to develop the Black case and the low

24  settlement and high settlement and the two midcases, as

25  well.

1    A     Certainly, qualitatively similar, that's right, with

2    the difference that for the examiner, I know what the

3    examiner said and I'm trying to understand it.  For the

4    Black case, I'm trying to form my own best judgment of what

5    the judge might do, and for the low-settlement and high-

6    settlement cases, I'm trying to push in one direction or the

7    other direction.

8    Q     Okay.  And in those cases, unlike the examiner, you

9    would have to bring into the mix the asset disposition, tax

10   value and cash-flow tax-value issues.

11   A     And assign probabilities to those, that's correct.

12   Q     So moving on, with the issues you had to consider, you

13   had to look at the likelihood of the company satisfying the

14   capital adequacy test at step one and step two.

15   A     Yes.

16   Q     Okay.  And both at the parent and the sub?

17   A     Yes and no.  In my own analysis, I -- for the Black

18   case, I said, if you have cash-flow inadequacy at Tribune,

19   then what's going to happen?  Tribune's going to go

20   bankrupt, the banks are going to turn to the subs and say,

21   "Pay us $10 billion tomorrow please," the subs are going to

22   be bankrupt, as well, so I took Tribune cash-flow, lack of

23   cushion, to drive the result at the subs.  The examiner

24   actually doesn't do that.  He allows for some possibility

25   that the subs could have a cash-flow cushion even though

1  Tribune doesn't, so I did that different for the examiner

2  than for myself.

3  Q    Right.  So there were a few more mis -- moving pieces

4  in the examiner case on that issue than the Black case.

5  A    In that instance, there were more moving pieces in the

6  examiner case than in my case.  That's correct.

7  Q    Okay.  Now, included in this list of issues are some

8  of the statutory defenses you described earlier.

9  A    That's correct.

10 Q    Okay.  So you had to consider whether a bank defense

11 of no payment integration would succeed.

12 A    That's correct.

13 Q    And the examiner gave an opinion on that.

14 A    He did.

15 Q    Okay.  And whether a lack of reasonably-equivalent

16 value, whether that -- how the Court would come out on that

17 issue.

18 A    Yes.

19 Q    And you already talked about on direct, I believe, the

20 question of whether the -- whether there's standing at the

21 subsidiary level to pursue avoidance for the benefit of the

22 parent company creditors.

23 A    That was one of the what I called the substatutory

24 defenses, yes.

25 Q    Okay.  Now, in crunching all this in your head, as I

1  understand it, Professor, you first kind of mapped out the

2  two extremes, what probability to assign to scenario A and

3  what probability to assign to scenario F.

4  A     What I tried to do is remember that scenario F is

5  what's really driving the dollars, so I wanted to have a

6  clear view on scenario F.  And in order to get a clear view

7  on scenario F, I had to have a clear view also on the

8  statutory defenses because they pull weight away from

9  scenario F.  So the way I thought about it is the most

10  important statutory defenses end up being -- you know, some

11  are in scenario D, some are scenario A, so I wanted to start

12  at the ends.  I started with A and with F, and I wanted to

13  get a really clear view of those, and then I worked toward

14  the middle.

15  Q     Sure.  After setting A and F out, you distributed the

16  rest of the probabilities in B, C, D and E?

17  A     That's correct.  That's basically how I worked.

18  Q     Now, I think we've already agreed that the examiner

19  gave his specific conclusions along a seven-point continuum.

20  A     I would say even more than that because sometimes he

21  says somewhat unlikely, but close, somewhat unlikely, but

22  very close.  In a number of instances, he says reasonably

23  unlikely, but no evidence or no credible evidence.  So you

24  can't just look at his categories.  You also have to look at

25  his own qualifiers to those categories.

1  Q     Now, do you understand on Page 4 of the report, the

2  examiner stated that his conclusions were his bottom line

3  regarding the issues presented?

4  A     If you tell me it says that on Page 4 of the examiner

5  report, I'll believe you.

6  Q     You don't remember reading that?

7  A     I don't remember reading that particular sentence out

8  of 1,200 pages of the examiner report.

9  Q     Okay.  And what would bottom line regarding the issues

10  mean to you?

11  A     So there are a number of places where he spends five,

12  ten, even fifteen pages discussing an issue, and for each of

13  those, he usually comes to one of his seven conclusions, but

14  again, sometimes it's somewhat unlikely, but close.

15  Sometimes it's reasonably unlikely, but no significant

16  evidence.  So I take that collective sense to be his overall

17  view, including the qualifiers that he sometimes uses.

18  Q     Okay.  And in some cases, that was in derogation of

19  the bottom-line conclusion itself, was it not?

20  A     No.  I -- what I tried to do in assigning

21  probabilities to the examiner case is within what I

22  estimated to be his probability ranges, I would move my

23  probability assessment within that range rather than put it

24  always at the middle based on what he said about, sort of,

25  let me call it range-plus.

1    Q    Okay.  It's your view that on occasion, the examiner

2    used the bottom-line conclusion equipoise to mean, I had no

3    opinion, true?

4    A    I think there are some cases where he discusses an

5    issue and says, "I'm going to leave it in equipoise," and I

6    interpreted that to mean he hasn't reached a conclusion

7    rather than it's close to 50/50.

8    Q    Okay.  And there are other places where you believe

9    the examiner said something might be reasonably unlikely,

10   but what he meant was, I had no evidence.

11   A    No.  Where he had no evidence, he said he had no

12   evidence.  There are places where he says reasonably

13   unlikely, but no credible evidence or no reasonable basis or

14   words like that, and I view that as I'm going to assign

15   that, in my understanding of the examiner, toward the bottom

16   of his reasonably unlikely range, for example.

17   Q    Now, did you testify on direct that you believe the

18   examiner misunderstood the possibility of asset disposition

19   tax value?

20   A    Yes, I did.

21   Q    Okay.  So you believe he was aware of the issue, but

22   just didn't grasp it in its entirety?

23   A    I think he clearly knew something about the issue.  He

24   addresses it in a long, textual footnote, and he says, I'm

25   not going to count this value because Tribune wouldn't have

1  to pay tax, but it couldn't dispose of assets at a higher

2  value, and the reason why I think it might be counted is

3  because in my understanding, Tribune, in fact, could dispose

4  of assets at a higher value.  However, in my assessment of

5  the examiner case, I just said zero percent.

6  Q     Okay.  Now, let's talk about the issue of correlation

7  for a moment and start with the Bankruptcy Code Section 548.

8  You understand that the code -- the text of the code

9  provides four subsections that can lead to avoidance of an

10 obligation, correct?

11 A     Yes.

12 Q     Okay.  One intentional and three constructive routes.

13 A     Yes.

14 Q     Okay.  And the code does not say that any one of those

15 is a predicate for another.

16 A     That's correct.

17 Q     True?  And it doesn't say that any one is subsumed

18 within another.

19 A     That's correct.  The Bankruptcy Code does not say

20 that.

21 Q     And the examiner report itself doesn't say that in the

22 examiner's view, the tests are subsumed within another as a

23 matter of law, does it?

24 A     Not as a matter of law.  As a matter of practice, he

25 considers, in a number of cases, cash-flow solvency and

1  cash-flow cushion together because his view, similar to

2  mine, is you assess both of those by looking at the

3  company's projections and whether they could pay their

4  bills, and cash-flow solvency is kind of in a base case, and

5  cash-flow cushion is in a downside or stress case.

6  Q    Okay.  But --

7  A    So I think he adopts a view consistent with my view

8  that any time you have cash-flow insolvency, you would also

9  have lack of cash-flow cushion.

10 Q    Okay.  That's your interpretation.  He doesn't say

11 that expressly, does he?

12 A    He does not say that expressly, but his analysis is

13 consistent with that view.

14 Q    Okay.  And in fact, he gives independent, bottom-line

15 conclusions regarding all of those issues.

16 A    In some cases, he does, and in some cases, he analyzes

17 them together.  It depends on whether you're talking about

18 Tribune and subs in step one or step two.

19 Q    Right.  He may talk about them together, but he does

20 give separate conclusions for each of the tests, does he

21 not?

22 A    In some cases, he does.  In others, he does not, if I

23 recall correctly.

24 Q    Now, despite the fact that the examiner did not state

25 that he believes as a matter of law or practice that these

1    tests are subsumed within another -- within one another,

2    when you did your modeling of the examiner case, you added a

3    strong dose of correlation, true?

4    A    I believe that as a factual matter, the different

5    roads to insolvency are likely to be correlated in terms of

6    how a judge would actually look at them.  So in my view, the

7    objective prong of cash-flow insolvency, ability to pay

8    bills, is subsumed within lack of cash-flow cushion.  There

9    is a subjective prong that seems to be less important, and I

10   was focusing on the objective prong.

11   Q    Okay.  Will --

12   A    Balance-sheet solvency and cash-flow insolvency, cash-

13   flow cushion are different tests, and I view them as not --

14   one isn't subsumed within the other, but the factual

15   judgments that lead to one or make it more likely you would

16   get to the other, as well.

17   Q    I understand that, and I understand how you did that

18   in the Black view, but you also -- or in the Black case,

19   rather, but you also applied that thought process to

20   modeling the examiner case, correct?

21   A    Yes.  So I had to ask the question where the examiner

22   does not give you combined probabilities how would he

23   combine them given that these judgments, in my view, are

24   correlated as a factual matter.  He does not tell you what

25   he would do.

1  Q     Now, with respect to the issue of intentional

2  fraudulent transfer, you state in your report that Tribune

3  actual intent will only be found if insolvency is also

4  found, correct?  It's on Page 37 if you'd like to refer to

5  your report.

6  A     So let me look at my report because that doesn't sound

7  right.

8  Q     Take a look at conclusion 13, Professor, on Page --

9  A     Yes, I agree.  I say that in the report.  I think in

10 my probability modeling, I allowed for, you know, a nudge, a

11 small possibility that you could get to scenario F even

12 though you didn't get to -- through the Tribune actual-

13 intent route.

14 Q     Sure.  Understood.  That's one of the nudges we talked

15 about before, right?

16 A     That's correct.

17 Q     And the examiner didn't say that.  He gave a separate

18 conclusion for intentional fraudulent transfer at step one

19 and then again at step two.

20 A     Yes, he did.

21 Q     And at step one, he said reasonably unlikely, and in

22 your scale, that's a 15 to 30-percent chance of success?

23 A     Yes.

24 Q     Your scale of the examiner case.

25 A     My interpretation of the examiner scale, yes.

1  Q    All right.  And I think we already established at step

2  two, the examiner said it was somewhat likely that there was

3  an intentional fraudulent transfer which, in your scale, is

4  55 to 70-percent chance.

5  A    Yes.

6  Q    And when you say that you nudged up some of the

7  avoidance outcomes, you're saying that you maybe added a

8  percent or two that intentional fraudulent transfer might

9  bring to the table?  Something on that magnitude?

10  A    Yes.

11  Q    And as a result of the examiner not speaking to this

12  issue, the degree to which he believed the test to be

13  correlated or the outcomes to be correlated, you have less

14  confidence in your judgment about how you treat this issue;

15  isn't that true?

16  A    So it would be my judgment that he would be likely to

17  agree, without assigning a probability to likely, that these

18  are correlated judgments, but how correlated is, itself, a

19  judgment, and I don't know whether my view of the

20  correlation would map on to his correlation, so that was an

21  estimate as to what he might do if he were trying to answer

22  this specific question.

23  Q    Sure.  And as a result of him not speaking to it, it

24  gives you less confidence in your judgment on this issue

25  when you're modeling the examiner case.  True or false?

1  A    So there's more uncertainty in my assessment of the

2  examiner case because of the issues that he doesn't

3  expressly speak to.  That's correct.  And although I give

4  you a number for the examiner case of 475 million in table

5  five, clearly, that's not a precise number.  That's a rough

6  number.  This is roughly where I think the examiner would be

7  likely to come out with my interpretation of what his terms

8  mean in probabilities and my best estimate of what he would

9  say about issues to which he does not speak.

10            MR. ZENSKY:  Can you play video clip seven,

11  please.

12        (Video playback as follows:)

13        Q    -- state that intentional fraudulent transfers

14        should be analyzed the way you've described -- you've

15        analyzed it?

16        A    He doesn't.  He goes -- he starts with

17        intentional fraud and then goes to constructive fraud,

18        but if you look at the way that he analyzes

19        intentional fraud and the factors that he considers, I

20        think that his analysis is consistent with the way

21        that I approached my assessment of what he would be

22        likely to have said if he had addressed this issue.

23        But I agree that he doesn't, and therefore, I have

24        less confidence in my judgment than for areas that he

25        does explicitly address.

1        (End of video playback.)

2   Q    Okay.  So was that truthful testimony, Professor, when

3   you gave it?

4   A    Yes, and I think it's entirely consistent with what I

5   just said in Court.

6   Q    Okay.  So you do have less confidence in your examiner

7   case as a result of this issue.

8   A    As a result of a number of issues where the examiner

9   doesn't expressly speak to them, right, and I'm having to

10  use my judgment as to what I think he might say if he did

11  speak to them.

12  Q    Okay.  Fair enough.  Now, let's turn to the

13  constructive fraudulent transfer test.  I think you

14  testified already that because -- strike that.  You've

15  testified that with respect to the capital adequacy and

16  ability to pay debts as they come due, you basically treat

17  those as entirely correlated.

18  A    Yes.  So in my assessment for the Black case and in

19  trying to work through the low to high-settlement cases, I

20  made the -- let me call it the simplifying assumption, but I

21  think it's a good one, that if you are cash-flow insolvent,

22  you lack a cash-flow cushion, so the cash-flow cushion is

23  the tougher test.  Right?

24  Q    Okay.

25  A    I think that's consistent with the examiner's view of

1  unreasonably-small capital, and there are places where he

2  treats the two together and places where he treats them

3  separately.

4  Q    Right.  But I think you've already agreed that he does

5  not expressly state that it's his view that they are

6  entirely correlated, correct?

7  A    I do not recall him expressly so stating.

8  Q    So in the way you modeled the examiner case, we're now

9  down to really just two tests, balance-sheet solvency and

10 capital adequacy?  That's really what you focused on for

11 modeling the examiner case?

12 A    Effectively, yes.  I was focusing on balance-sheet

13 solvency, which is different at Tribune and the subs, and

14 then at cash-flow cushion, which is the tougher test.

15 Q    Okay.

16 A    And wasn't really worrying about cash-flow solvency

17 because cash-flow cushion was going to be the tougher test.

18 Q    Okay.  And I think you told us a few moments ago,

19 here, you didn't treat the last two tests we're talking

20 about as entirely correlated, but you felt that there was

21 some connectivity between the two, true?

22 A    So I thought that there was a correlation between the

23 factual circumstances in which a court would find balance-

24 sheet insolvency and the factual circumstances in which a

25 Court would find lack of cash-flow cushion.

1   Q    Okay.  And you determined therefore that the

2   likelihood of establishing one if you have failed to

3   establish the other is partially reduced from the

4   probability that the examiner gave, true?

5   A    So if I say I've already established that Tribune is

6   cash-flow solvent and has a cash-flow cushion, then I would

7   -- that would reduce the likelihood, in my judgment, that a

8   judge would find that Tribune was balance-sheet insolvent,

9   and I took that into account in the examiner case, as I

10  understood it, along with the other cases.

11  Q    Okay.  But, again, the examiner did not make an

12  express statement that that's how his conclusions should be

13  tied together, correct?

14  A    Correct.

15  Q    Now -- okay.  Let's move on then and talk about your

16  revised report.  By the time that you and I met last week

17  and I took your deposition, you'd been working on this

18  engagement for close to a year, true?

19  A    Correct.

20  Q    Yeah.  You were preparing to issue a report that would

21  support the April plan at some point.

22  A    Yes.  I have -- I had prepared a -- let me call it a

23  rough-draft report, and it was never completed because the

24  April plan fell apart.

25  Q    Sure.  But you started to work on it.

1  A    I did significant work toward a report on the April

2  plan, yes.

3  Q    And you studied the examiner report carefully after it

4  was released.

5  A    Slowly, but carefully.

6  Q    Okay.  And we've established that back in September,

7  you gave Sidley Austin your view that the settlement, as it

8  was being discussed, was reasonable in your view.

9  A    That -- as a shorthand for the testimony I had earlier

10  today, yes.

11  Q    Sure.  And by January, as I understand it, you had

12  already developed the first 50 pages of what became your

13  expert report and presented it to the bank lawyers, the

14  committee and the debtors, the meeting you talked about.

15  A    I'd say by that time, I had a 200-page report, but I

16  only thought the first 50 were in sufficiently good shape to

17  share with the bank lawyers.

18  Q    Okay, great.  And the first 50 pages contained the

19  charts that we talked about today, table one, two and three?

20  A    Tables one through five, yes.

21  Q    Okay.  And then you issued your report on February

22  8th, 2011.

23  A    Yes.

24  Q    Your overview report.

25  A    Yes.

1  Q    And I assume you quality-checked it a few times before

2  issuing it.

3  A    I did my best.

4  Q    Then you issued a rebuttal on February 21st, and you

5  didn't make any changes to your opening report at that

6  point.

7  A    I did not.

8  Q    Now, in the course of your deposition, I asked you to

9  explain some of the probabilities in the examiner case.  If

10  we could pull that back up on the screen.  Let me try it

11  without the chart at the moment.  I asked you some questions

12  about why you had assigned probabilities in the examiner

13  case, and you real -- you couldn't answer the question.

14  A    I would say that you were pushing me on the relative

15  weight between scenario D and F, where Tribune is found to

16  be step-one insolvent, and you were also pushing me on the

17  relative weight for B and C together versus D and E

18  together, which are the scenarios in which the subs are

19  step-one solvent.  I'm sorry.  They are what they are.  Let

20  me not -- the relative weight on B and C, which I think of

21  together for many reasons, and D and E together.  And then,

22  to some extent, pushing me on the relative weight between D

23  and E and B and C, and I thought you were effectively -- as

24  I talked through the scenarios in my depositions, I gave the

25  answers that I gave, and then I was thinking to myself, hey,

1    I hope that my probability tables match my testimony, and it

2    turned out that in some cases, they didn't, and therefore I

3    revised my probability tables to, I think, address the good

4    comments that you had in the deposition.

5    Q    Professor, let me try to help you.  Isn't what I asked

6    you in your deposition just to explain the weighting between

7    scenario E and D -- or, excuse me, F and D?

8    A    You asked me a whole bunch of questions about what I

9    think of as the interior probability scenarios B, C, D and

10   E, so I'm not remembering any specific question.

11   Q    Okay.  Do you remember I asked you to explain the

12   weighting between E, which you had a 17-percent chance with

13   informal integration, and D at 8 percent?

14   A    Again, I'm remembering a whole series of questions

15   about the interior weighting of F versus D and E versus D

16   and B and C versus D and E, and I'm not remembering specific

17   questions.

18            MR. ZENSKY:  All right.  Can you play 13, please?

19        (Video playback as follows:)

20        Q    Now, if we focus our attention on the examiner

21        case for a moment, Professor.

22        A    Okay.

23        Q    Okay.  And we look at the informal step

24        integration universe --

25        A    Yeah.

1          Q    -- why is there a higher chance of scenario E

2          occurring than scenario D?

3          A    So this is informal integration?

4          Q    Yes.

5          A    So E versus --

6          Q    Right.  You show 17-percent probability of D --

7          of E occurring, but only 8-percent chance of D,

8          correct?

9          (End of video playback.)

10              MR. ZENSKY:  Can you stop it, please?

11   BY MR. ZENSKY:

12   Q    All right.  So, Professor, we were looking at this

13   chart at that time, right, because I referred you to the

14   particular numbers 17 percent and 8 percent as shown on your

15   spreadsheet.

16   A    Yes.

17   Q    Okay.

18   A    And I had it in front of me, and that's why at the

19   beginning of the tape, I'm looking down instead --

20   Q    Right.

21   A    -- of up.

22   Q    Okay.  No problem.

23              MR. ZENSKY:  All right.  You can continue.

24          (Video playback as follows:)

25              A    Right.  So I've got 25 percent overall, and

1    I gave about two-thirds of it to E.  Right.  And the

2    question is why did I do that.  So this is in the

3    situation where Tribune is step-one insolvent, but the

4    subs are not, right?  So most of the time, if the

5    source of insolvency is cash-flow insolvency, then

6    you're going to be in scenario F.  So the other 25

7    percent is going to be mostly coming out of balance-

8    sheet insolvency, where Tribune is balance-sheet

9    insolvent, but not cash-flow insolvent.  And there, it

10   was my judgment that it would be difficult to get to

11   -- back up.  In the circumstances in which Tribune is

12   balance-sheet insolvent, but not cash-flow insolvent,

13   I then had to say, is it likely that the subs were

14   also balance-sheet insolvent at step two, and I judged

15   that to be roughly two-thirds likely, given we're not

16   talking cash-flow insolvency, we're only talking

17   balance-sheet insolvency, do I think the subs were

18   balance-sheet insolvent also.  In other words, was the

19   Tribune balance-sheet insolvency deep enough to carry

20   the subs with it, and my answer to that was most of

21   the time, yes.

22   Q    Yes.

23   A    So that would also include some possibility of

24   step-two equitable subordination or intentional fraud,

25   which would hit the subsidiaries, as well.

1      Q    Okay.  Now, if we're in -- if we're in the

2           situation of informal step integration, why would you

3           be focused so much on the impact of balance-sheet

4           insolvency as opposed to capital adequacy or ability

5           to pay debts?

6      A    Because we're in the informal step integration,

7           and -- so let's see, informal step integration, it's

8           going to be relatively hard to get the balance-sheet

9           insolvency, right, at step one.  So I think that's

10          -- step-one insolvency, D and E, and -- so I know why

11          I got to reasonably unlikely.  And so -- so I'm sorry

12          for muttering.  What's now -- what I'm now not

13          understanding is why I put so much weight on D and E

14          combined, all right, why wasn't there more weight on B

15          and C.

16          (End of video playback.)

17   BY MR. ZENSKY:

18   Q    That was your testimony on Friday, right?  Thursday?

19   A    I believe it was Thursday, but yes, it was my

20   testimony last week.

21   Q    And all I asked you was why you had more weight on

22   scenario E than scenario D.  Does that refresh your

23   recollection?

24   A    And as I worked my way through it, I ended up saying

25   the issue was not E versus D.  The issue was why did I have

1    so much weight on D and E together, and the solution to that

2    after I went back after the deposition and tried to think

3    through it was I had too much weight on D and E combined,

4    and I moved weight over to B and C.

5    Q    All right.  You came back for the next day --

6    deposition, and you told me that you had thought it through

7    and had to make that change.

8    A    That's correct.

9    Q    And that was after 11 months of working on your

10   assignment.  Overnight, you changed your view.

11   A    I thought you did an effective job of pushing me on

12   the internal scenarios, and it made me rethink whether I

13   could -- why I had put the weights in the places that I had

14   put them, yes.

15   Q    Okay.  Let's look at your revised report that was

16   served yesterday that attempts to correct for these issues.

17   And if we could look at the black line to table three.

18   A    So where are you?

19   Q    Right here.  Yeah.  Can you zoom in on the table,

20   please, on the examiner case.  Little too close.  Okay.  So,

21   Professor, does this document from your report or redline

22   served by the debtor's counsel reflect the changes that you

23   made to the examiner case that emanated from our discussion

24   last week?

25   A    So I'm assuming this is my revised report, and it

1   shows the changes from my initial report, and what you're

2   going to see is I took up the -- in the examiner column,

3   right, I took up B and C, and I took down E by a lot, and I

4   ended up, after a full rethinking, D stays at 14 percent.

5   Q    Right.  So to just put some order of magnitude on it,

6   scenario E was reduced by more than 80 percent, from 11 to

7   2.

8   A    So I'd say that D and E combined went down from 25

9   percent to 16 percent, and then I also had to rethink as

10  between D and E, where should most of the weight go, and

11  that led me to put most of the weight on D rather than E.

12  So those were two separate judgments.

13  Q    Okay.  And scenario B, you raised from 5 percent to 9

14  percent?

15  A    Yes.  The way, again, I want to think about it is I

16  took B and C combined and raised them from a combined 16 to

17  a combined 25, and then I had to allocate that extra weight

18  between scenario B and scenario C.

19  Q    Okay.  So let's take a quick look at what's driving

20  your new opinion.  And if you look in your binder, after the

21  work papers -- the original work papers, there is enlarged

22  spreadsheets, Professor.

23  A    Yes.

24  Q    Okay.  And if you look at the one --

25           MR. ZENSKY:  Your Honor, this is the one that has

1    the Black case and Black case without SESOP tax value at the

2    top, the Black case in the middle, and the examiner case at

3    the bottom.  So it's going to be the third large page.  The

4    numbers are cut off at the bottom.  Does the Court have the

5    spreadsheet available?

6              THE COURT:  I do, but I have the screen, too.

7              MR. ZENSKY:  Okay, great.

8    BY MR. ZENSKY:

9    Q    Professor, when you -- when the revised report was

10   served yesterday, you served a new set of work papers that

11   showed the computation -- or showed the backup for a new

12   table three, correct?

13   A    Yes.

14   Q    Okay.  Would you agree with me that at the bottom of

15   the document we're looking at, we've compared the page we've

16   spent this afternoon looking at, which is the bottom --

17   excuse me, the top one from your original work papers, with

18   the backup for the revised report, and it shows the

19   reallocation that we just talked about?

20   A    If you'll represent to me that that's where those

21   numbers came from, I'll accept that.

22   Q    Okay.  Do they look familiar to you?

23   A    You know, I'd have to go back and look at my original

24   work papers and my revised work papers because I don't keep

25   this many numbers in my head.  I'm sorry.

1   Q      Okay.  Well, the revised work papers are in the book

2   if you'd like to check them.

3   A      As I said, I'll assume that you've correctly

4   represented my prior detailed buildup to table three for the

5   examiner case and my revised detailed buildup to table three

6   for the examiner --

7   Q      Okay.  And can you -- would you agree with me that

8   we'd put boxes around the numbers that changed in the two

9   examiner cases?

10  A      Yes.

11  Q      Okay.  And these are changes among the same set of 18

12  probabilities we talked about that are the drivers of the

13  ultimate outcome.

14  A      So I moved D and E over to B and C, and although you

15  had asked me only about informal-step integration, I made

16  the judgment that a similar move was appropriate for no-step

17  integration for similar reasons.  So I moved those

18  probabilities down, as well.

19  Q      Okay.  So just to take an example, whereas in the

20  original work papers, you had assigned a 25-percent chance

21  of scenario E occurring in the no-integration category --

22  A      Yeah.

23  Q      -- you dropped that all the way down to 3 percent in

24  your new papers, right?

25  A      Yeah.  So I had a combined 25 percent, and I dropped

1    it to 6 percent, and then I had to think about the

2    allocation between D and E.

3    Q    Okay.  And another comparison order of magnitude.  The

4    17 percent that you had originally assigned to scenario E in

5    the informal-step integration category became 5 percent.

6    A    Again, I think about it as the combined 25 percent on

7    D and E became 10 percent.

8    Q    Okay.  Professor, doesn't the fact that you had to

9    make changes of this magnitude after 11 months of working on

10   this cast doubt on your methodology?

11   A    No.

12   Q    Okay.  Is this what you get when you do decision trees

13   in your head, the need to recast things after 11 months of

14   work?

15            MR. DUCAYET:  Your Honor, objection.

16            THE COURT:  Sustained.

17   BY MR. ZENSKY:

18   A    I focused --

19            THE COURT:  Sustained.  You don't need to answer,

20   sir.

21   BY MR. ZENSKY:

22   Q    You stand behind your methodology.

23   A    I stand behind my judgment that my settlement range is

24   a reasonable settlement range, and I stand behind my

25   estimates of the overall likelihood of getting to scenario

1  F.

2  Q    Okay.  Let's look at the -- strike that.  You didn't

3  only make changes to the two examiner cases.  You went back

4  and remodeled virtually all the other cases, as well, after

5  your deposition, right?

6  A    The discussion we had of the examiner case had similar

7  implications for the other cases, as well, and so I went

8  back and thought through the whole set of cases so that I

9  would have an overall set of cases that was internally

10  consistent.

11  Q    Okay.  And would you agree with me that assuming that

12  these were properly copied from your two work papers, the

13  original set and the new set, that on the top of this

14  exhibit that we've put boxes around the numbers that you

15  changed in the two Black cases shown here?

16  A    I'm not sure which page you're on, so I'm on the big

17  spreadsheet that doesn't have boxes.

18  Q    It was the comparison, Professor, of the two.

19  A    So now it's back up on my screen, but I don't have it

20  in paper.

21  Q    It is in your book, and I can show you if you would

22  rather look at the hard copy.

23  A    Go ahead and tell me where to look.

24  Q    Okay.  Your Honor --

25  A    I'm happy to look onscreen as long as it's onscreen,

1    but the screen shuts down if you don't move it for 30

2    seconds or something like that.

3    Q    Whatever you would prefer, Professor.

4    A    The screen is easier if it's live.

5    Q    Okay.

6    A    But tell me where it is.

7            MR. BENDERNAGEL:  Your Honor, this has nothing to

8    do with the examination, Mr. Zensky's specific examination.

9    If this record's going to be reasonable, we're going to have

10   to associate the exhibit numbers with these documents or

11   nobody's going to know what anybody's talking about later on

12           MR. ZENSKY:  Okay.  That's a fine suggestion.  We

13   can stamp this as a trial exhibit, Your Honor, if that's

14   okay.

15   BY MR. ZENSKY:

16   Q    Okay.  Would you prefer the hard copy, Professor?

17   A    I think a hard copy would be useful since my screen

18   goes on and off.

19   Q    Okay.

20           MR. ZENSKY:  May I approach the witness, Your

21   Honor?

22           THE COURT:  Yes.

23           MR. ZENSKY:  All right.  Got it.  Thank you, Your

24   Honor.

25   BY MR. ZENSKY:

1  Q    Okay.  Professor, we now handed you the hard copy of

2  the exhibit that was in the binder that compares your old

3  work papers and your new work papers for three sets of the

4  cases, the examiner case, the Black case, and the Black case

5  with SESOP -- or without SESOP tax value.  Do you see that

6  now?

7              THE COURT:  And what should we call it, Mr.

8  Zensky?

9              MR. ZENSKY:  What's the last number?

10             We're just checking for what the last exhibit

11 number on the list is, Your Honor.  And I apologize for the

12 delay with the documents.  This is just based on the report

13 we got last night and didn't have time to --

14             THE COURT:  I understand.

15             MR. ZENSKY:  -- put everything together properly.

16             THE COURT:  Okay.

17             MR. ZENSKY:  If you don't grimace too badly, Your

18 Honor, this would be Noteholder Exhibit 2465.

19             THE COURT:  You're ahead of the examiner.

20          (Noteholder Exhibit 2465 marked for identification.)

21 BY MR. ZENSKY:

22 Q    Okay.  Back to the Q and A, Professor.  We've just

23 spent some time discussing, while you were looking at it on

24 the screen, the differences between your old examiner case

25 and new examiner case, and now I'm directing your attention

1  to the comparison between the Black case and Black case

2  without SESOP tax value that you prepared in connection with

3  your February 8th report and the work papers that we

4  received yesterday.  Do you see that?

5  A    I do.  And so you've got the old numbers at the top

6  from my detailed work papers and the new numbers at the

7  bottom, as I understand it.

8  Q    That's correct.

9  A    Okay.

10 Q    And just by glancing at it quickly, would you agree

11 with me that we have put a box around the probabilities that

12 you reassigned, so to speak, after your deposition?

13 A    On a quick look, that's how it appears, yes.

14 Q    Okay.  And if you could look at the next spreadsheet,

15 which I took out of the binder for you, which will be 2466

16 on our list, Professor.  Here, we combine the scenarios for

17 your settlement cases from the original work papers and the

18 settlement cases from your new report.  If you could just

19 eyeball that quickly and tell me if you think we've

20 identified all the changes.

21 A    So I'm not sure it's productive for me to look at each

22 cell by itself, and I'll accept your representation that

23 you've put red boxes around the cells that changed.

24 Q    Okay.  And does -- on this document we're looking at,

25 does it sound right that there were 37 probabilities that

1   were changed between the time of your deposition and today?

2   A     So I went through systematically all six cases, and I

3   thought through the extent to which our discussion had

4   implications for other types of integration.  It really

5   didn't bear on formal-step integration, so you'll see all of

6   the changes here are for either informal-step integration or

7   no-step integration.  But they percolated through all of my

8   six main cases.  I moved weight from -- for the most part,

9   from D and E to B and C and then reallocated, and in a

10  couple of cases, I look at D-E-F combined and reallocated

11  between D and F or among the three combined, but there are

12  fewer of those, only a couple of those.

13  Q     Okay.  All right.  I think we can move on to another

14  topic.  And you can put the sheets away, Professor.

15  A     Now, you discussed on direct, and I think we may have

16  touched on the issue briefly, the issue in the case as to

17  the degree to which the step-one holders can participate in

18  the disgorgement recoveries that would be associated with

19  step two or perhaps even the value that otherwise would have

20  been distributed to step two, correct?

21  A     Yes.

22  Q     We've talked about that.  All right.  Now, if you

23  could look at your original expert report on Page 45.

24  That's in your binder, the original report.

25  A     Okay.  The pages are going to be the same in the

1  revised report because I think the page numbers just didn't

2  change.

3  Q     Let me know when you have it open.

4  A     So it's okay, I'm looking at -- just because it's

5  smaller, I'm looking at the revised report --

6  Q     Actually, I would --

7  A     -- but this wouldn't have changed.

8  Q     I would ask you to look at the original report because

9  my questions will relate to this.

10            THE COURT:  Do I have that?

11            MR. ZENSKY:  It's in the binder, Your Honor.  I

12  apologize.  The large binder I handed out.

13            THE COURT:  Large binder.

14            MR. ZENSKY:  Yeah.

15            MR. BENDERNAGEL:  Your Honor, I assume all these

16  documents have exhibit numbers on them.  Otherwise, this

17  record is going to really be hard to follow.

18            THE COURT:  Sure.

19            MR. ZENSKY:  This is Noteholder 2216, Your Honor.

20            Thank you, Mr. Bendernagel.

21  BY MR. ZENSKY:

22  Q     Let me know when you have that open, Professor.

23  A     Page 45 of the revised report?

24  Q     No, the original report.

25  A     The original report, okay.  Yeah, it looks like in the

1  redline that you gave me for the revision, some of the

2  pagination has changed.  It did not change in the version I

3  have, so that's why I was --

4  Q     You need to speak into the microphone.

5  A     In the version I have, the page numbers are the same.

6  They aren't in our redline.  So that's why I was puzzled for

7  a minute.

8  Q     It's not my redline.  Do you need me to show you where

9  the report is in your binder, Professor?

10 A     No, I have it now.

11 Q     Okay, great.  So now we're on Page 45.  And this is

12 the portion of your opening report where you stated, or

13 contrasted in some cases, the examiner's view on many of the

14 issues and the Black view on the same issue, correct?

15 A     Yes.

16 Q     Okay.  So if we look at the first entry on Page 45

17 that deals with the question of equitable subordination --

18 do you see that reference, equitable subordination of step-

19 one banks with respect to disgorgement?

20 A     Yes.

21 Q     Okay.  So this entry is specifically talking about the

22 disgorgement issue, true?  That's all we're talking about

23 here.

24 A     I mean, I can read it to you if you want.  This is

25 about --

1  Q     Okay.  Please do.

2  A     So the issue here, which I addressed briefly here, but

3  not elsewhere in the report, is equitable subordination of

4  step-one banks with respect to disgorgement, and that's only

5  going to apply if the step-one bank loans are allowed

6  because if they're avoided, then you don't need to

7  subordinate them, they're already gone.

8  Q     Okay.  And what you're reporting here is that in that

9  instance where step two is avoided, step one is not, with

10  respect to the issue of disgorgement, the examiner left the

11  issue in equipoise, which you have characterized in your

12  parenthetical with the meaning of answer not known, and your

13  view is that this remedy is remote, correct?

14  A     So what the examiner --

15  Q     Just -- correct?  Yes or no?

16  A     No.  That's not what the examiner said.

17  Q     Okay.  Is that what your report says the examiner

18  says?

19  A     No.

20  Q     Okay.  Then why don't you read it into the record so

21  there's no mischaracterization of what the examiner's view

22  was on this issue.

23  A     So I have a summary line, Examiner View:  E-equipoise,

24  where I use the capital E to indicate that I'm indicating

25  the examiner's view (with the meaning of "answer not

1  known").  That's my interpretation of the equipoise

2  statement in the examiner report, but "difficult to find a

3  doctrinal basis" --

4  Q     Okay.

5  A     -- which is a quote from the examiner report.  And to

6  my mind, that's part of the examiner's overall assessment in

7  the same way that he qualifies other judgments in other

8  places.

9  Q     Okay.  Now, let's move to the next entry, which deals

10 with a separate issue.  And why don't you read your

11 description of the issue into the record for the next

12 equitable subordination entry in the report.

13 A     So then I had a separate entry, and again, you know, I

14 can give you the history of why, but I don't have a fuller

15 discussion of this elsewhere in my report.  This is

16 equitable subordination of the step-one banks with respect

17 to avoided step-two loans.  Okay?

18 Q     And how did you characterize the question?

19 A     And then I asked, "If step-two loan claims against

20 Tribune are avoidable, will these claims instead be treated

21 as allowed, but subordinated to Tribune's pre-LBO

22 creditors?"

23 Q     Okay.  And what did you report was the examiner's view

24 on this issue in your original report?

25 A     So the examiner doesn't directly address this issue.

1  The closest statement he makes is in what I call examiner

2  view, but it's not really on this issue.  It's on a related

3  issue.  And the examiner says it is "E-reasonably likely

4  that, unless the step-one bank loans are equitably

5  subordinated, the step-one banks will participate fully in

6  recoveries."

7  Q    Okay.  And your footnote cites the portion of the

8  examiner report that this sentence is taken from, correct?

9  A    That's what I would expect, yes.

10  Q    Okay.  Now, you and I tried to parse that sentence at

11  your deposition, and if we parse the statement of the

12  examiner's view that it is reasonably likely that unless the

13  step-one bank loans are equitably subordinated, the step-one

14  banks would participate in recoveries, that means that

15  putting aside equitable subordination, it was reasonably

16  unlikely that you could prevent the step-one banks from

17  sharing in the recoveries associated with the avoided step-

18  two debt, correct?

19  A    So that's a double negative.  So let me see if I can

20  unpack it.  So my --

21  Q    Can you answer the question yes or no?

22  A    No, I cannot.

23  Q    Okay.  Then I'm going to read you your deposition,

24  okay?  And this is Page 378, line 13 to 24.  Do you still

25  have your transcript, Professor?

1  A     Yes, I do.

2  Q     Okay.  It's going to sound familiar because I asked

3  you the exact same question I just asked you.  If you look

4  at --

5            THE COURT:  Let Mr. Zensky know when you're

6  there.

7  BY MR. ZENSKY:

8  Q     Line 13, Page 378.

9  A     Okay.

10  Q     We were talking about the section of your report, and

11  I asked you the question, quote, "So if we parse the

12  statement of the examiner view, that is reasonably likely

13  that unless the step-one bank loans are equitably

14  subordinated, the step-one banks will participate in those

15  recoveries."  Answer, right.  That -- question, "That means

16  that putting aside equitable subordination, it was

17  reasonably unlikely that you could prevent the step-one

18  banks from sharing in the recoveries associated with the

19  avoided step-two debt."  Answer, yes.  And did you give that

20  testimony on Thursday, Professor?

21  A     I did, and as I look at it, there's a double negative

22  here, and if I could explain what I think your question and

23  my answer were, I would appreciate it.

24  Q     Let me ask the next question, and then we'll see where

25  it takes us.  In the examiner review, reasonably unlikely,

1  or your rating system of the examiner's reasonably unlikely,

2  that's 15 to 30 percent of success, right?

3  A    Yes.

4  Q    Okay.  And then, if we use the midpoint of 15 to 30

5  percent, that would mean that there's a 22.5-percent chance

6  that you could prevent the step-one banks from participating

7  in the value that otherwise would have gone to the step-two

8  holders even in the absence of equitable subordination of

9  step one.  Isn't that how you read the examiner's report?

10  A    And I agreed with that.

11  Q    Okay.  And isn't that how you read the examiner

12  report?

13  A    Here, you've unpacked the double negative, so I agree

14  with this question and this answer.

15  Q    Okay.  Then we can move on.  Now, if we pull up your

16  revised report.

17  A    Okay.

18  Q    You know what?  Strike that.  All right.  Let me move

19  on and ask you a few questions about the Black case,

20  Professor.  Actually not.  Let me move even further along.

21  You talked a little bit today about the four settlement

22  cases.

23  A    More than a little bit.

24  Q    Yes, a lot.  And would you agree that whether

25  intentional or otherwise, the four cases, the low

1  settlement, high settlement and the two mid ones, form a

2  band more around the Black view of the world than the

3  examiner view of the world?

4  A     No.

5  Q     You think the examiner conclusions are dead in the

6  middle of your four sensitivity cases?

7  A     My --

8  Q     Or your four settlement cases?

9  A     My recollection, and I can go back and look at my

10  tables, is that for the most part, the examiner was above

11  the midpoint of my settlement range and not that far from

12  the mid-high case, and I was below the midpoint of my

13  settlement range and not that far from the low-mid case.

14  Q     Okay.  Now, the debtor committee lender plan

15  contemplates substantial litigation after exiting

16  bankruptcy.

17  A     Against non-creditors, yes.

18  Q     Right.  And you estimated for purposes of your report

19  that those claims were worth 300 million?

20  A     I testified on direct that I thought 300 was a conser

21  -- 300 million was a conservative estimate of the likely net

22  recoveries to the litigation trust from that litigation.

23  Q     Do you describe it that way in your report, a

24  conservative estimate?

25  A     In my report, I believe I called it an illustrative

1   estimate, but the reason I used that illustration was

2   because I thought it was both reasonable and on the

3   conservative side.

4   Q    Okay.  Now, you didn't -- when you were modeling the

5   case -- strike that.  When you created table two and table

6   five, which included that $300 million of proceeds, you

7   didn't make any assumption as to when the 300 million would

8   be paid, correct?

9   A    I did not discount it for the delay in receiving it,

10  that's correct.

11  Q    Right.  And you made no assumption about whether it

12  would require a full trial to recover that amount or whether

13  the claims would be settled in those charts, did you?

14  A    No.  This was a settlement analysis of what would it

15  be likely that the claims could be settled for, and I think

16  you saw that in my direct testimony as to the value of the

17  director and officer claims.  I was anticipating a

18  settlement with the D&O liability insurance policy and the

19  same for the other potential defendants.

20           MR. ZENSKY:  Excuse me one moment, Your Honor.

21  BY MR. ZENSKY:

22  Q    Now, when you were engaged for this matter by Sidley

23  Austin back in early 2010, that was not the -- do you need a

24  moment, Professor?

25  A    No, go ahead.

1  Q      I can wait if you're --

2  A      No.

3  Q      That was not the first time that you were retained by

4  Tribune to provide expert testimony, correct?

5  A      That's correct.

6  Q      Tribune was sued by a shareholder before closing step

7  one, and you were retained to give expert testimony on

8  behalf of Tribune in connection with that matter, right?

9  A      There was a -- let me call it a classic shareholder

10 class action at the time of step one challenging the

11 fairness of the price to the shareholders and seeking an

12 injunction against the closing of the step-one tender offer.

13 Q      Okay.  So you were there on the ground, so to speak,

14 in May 2007.

15 A      I was involved in providing an expert report.  It was

16 called a declaration in a litigation known as Garamella,

17 which I assume is the name of the plaintiff in that case.

18 Q      Okay.  Funny enough, Professor, there's a tab in your

19 book that says Garamella Declaration, if you can take a look

20 at that.

21 A      Okay.  So where in this big book is it?  Here it is.

22 Garamella declarations, okay.

23         MR. ZENSKY:  And this is Noteholder Exhibit, Your

24 Honor, 2314, Declaration of Bernard S. Black.

25 BY MR. ZENSKY:

1  Q     Is that the declaration you were just referring to,

2  Professor?

3  A     So let me look through it quickly.  Given the length,

4  the date on the last page, this appears to be my Garamella

5  declaration.  I'll accept your representation that it is.

6  Q     Okay.  And it was dated before step one closed,

7  correct?

8  A     It was dated May 20th of 2007.

9  Q     Okay.  And that was before step one closed.

10  A     Yes, about two weeks before.

11  Q     Now, you believe that as of 2007, Professor, the

12  general belief was that the newspaper publishing business

13  was in a long-term decline, correct?

14  A     I believe that the newspaper business was known in

15  2007 to be a long-term decline, yes.

16  Q     Okay.  And when you issued this declaration that we're

17  looking at, you had results for the company through April

18  2007.  You had their monthly results for the first four

19  months of the year, correct?

20  A     Yes.

21  Q     Okay.  And with respect to Tribune specifically, you

22  would agree that as of the time you issued this report, so

23  based on the first four months of performance, Tribune's

24  revenue was declining, their operating cash-flow was

25  declining, and they were performing below their projected

1   level of performance in the projections that were included

2   in the tender offer.  Is that true?

3   A     I agree with that.

4   Q     Okay.  And the projections that you referred to, we're

5   talking about, were February 2007 projections, right?

6   A     That's correct.

7   Q     Okay.  So based on the March and April results, you

8   knew the company was underperforming its February 2007

9   projections?

10  A     Indeed, in February -- I'm sorry, in March and April,

11  the company did underperform its February 2007 projections.

12  Q     All right.  That makes it easy to agree with my

13  question, correct?

14  A     Yeah.

15  Q     Now, if we look at your declaration footnote 22, which

16  is on Page 15, Your Honor.  Do you have that handy,

17  Professor?

18  A     Yes, I do.

19  Q     Okay.  In footnote 22, you told the Court in

20  Garamella, or in your declaration, stated, quote, "Tribune's

21  first-quarter performance was substantially below the

22  projections included in the offer to purchase and closest to

23  downside case B discussed in the projections, which

24  contemplated a three-percent annual decline in publishing

25  revenues."  Do you see that?

1   A       I see that.

2   Q       Okay.  And that was a correct statement when you made

3   it, right?

4   A       Yes.

5   Q       And if you look at paragraph 44, the first sentence on

6   the same page, you say, quote, "Tribune's financial

7   performance during 2007 has been weak."  That was a truthful

8   statement, right?

9   A       And footnote 22 is the backup for the sentence in the

10  text that you just read.

11  Q       But it was a truthful statement.  Their financial

12  performance had been weak, correct?

13  A       I so described it in my Garamella report.

14  Q       Okay.  And it was a true statement.

15  A       I think that that is a reasonable way to describe

16  Tribune's financial performance.  I can't say true or false

17  because it's an adjective.  What does weak mean?

18  Q       Okay.  Well, they're your -- they were your words.

19  A       They were my words.

20  Q       Okay.

21  A       I would be comfortable saying the same words today.

22  In my judgment, during the first four months of 2007,

23  Tribune's financial performance was weak.

24  Q       Okay.  And this is before step one closed again,

25  correct?

1    A     That's correct.

2    Q     And as a result of the weak performance, you would

3    agree that without the overhang of the merger or the tender

4    and the merger, Tribune's stock price would have been well

5    below $32 at the time, would it not?

6    A     I believe I said that in my Garamella report, that

7    without the prospect of the merger, Tribune's stock would

8    drop -- I forget the term -- significantly below $32 a share

9    or something like that.

10   Q     Right.  And that could have been $29 a share without

11   the overhang of the merger, right?

12   A     It could have been, yes.

13   Q     Could it have been lower?

14   A     I didn't try to form an opinion at the time as to how

15   significant was -- the drop might have been, but I used the

16   term, I believe, significant, and I didn't mean pennies.  I

17   meant, you know, 31, 30, 29, somewhere in there.

18   Q     If we go back to paragraph 44, Professor, the next

19   statement stated, it's standalone value without the merger

20   has thus likely dropped.  Do you see that?

21   A     I do.

22   Q     Okay.  And you're talking about Tribune, of course,

23   right?

24   A     Yes.

25   Q     And you're talking about -- when you say dropped,

1  you're talking about a drop from its value before the weak

2  performance in 2007 had set in.

3  A    Yeah.  So this is consistent with the discussion we

4  just had that Tribune's value without the merger would

5  likely have been below $32 by a significant amount per

6  share.

7  Q    All right.  And as far as you knew at the time, the

8  company's performance could continue to deteriorate beyond

9  where it already stood at that point.

10  A    That was certainly a possibility as of that time.

11  Q    And in paragraph 38, subsection 3, that's exactly what

12  you state, right, on Page 13?

13  A    So paragraph 38, subparagraph c says --

14  Q    Subparagraph 3.

15  A    -- 3 is imagining that there might have been a delay

16  and trying to explain why the Tribune special committee

17  chose to sign with Zell and not continue to search for

18  higher bids, and I said that during this hypothetical delay

19  period, "Tribune's performance could decline (again), which

20  could lead all bidders, including Zell, to withdraw or

21  reduce their bids."

22  Q    Okay.  At this point in time, May of 2007, the economy

23  wasn't in a recession, was it?

24  A    I believe that to be correct that the recession is

25  dated from later in 2007, if I recall correctly.

1  Q     Okay.  And in your rebuttal report, you state that in

2  earlier periods, Tribune's performance had dipped and

3  recovered from time to time.  Do you recall that?

4  A     So if you look at the past history of Tribune's

5  performance in recessions, its revenues and operating

6  profit, especially on the newspaper side, had dipped or

7  dropped, in some cases, more than just dipped in past

8  recessions, and then recovered as the economy came out of

9  recession.

10  Q     Okay.  But at this point in time, Tribune's

11  performance was weak and could decline further, but there

12  was no recession in place yet, true?

13  A     There was not yet an economy-wide recession in the

14  spring of 2007.  That's correct.

15  Q     And do you remember giving a deposition in the

16  Garamella case?

17  A     Yes.

18  Q     Okay.  If you'd look at the next document in your

19  binder, that's Noteholder Exhibit 231 -- excuse me, 2315.

20  It'd be right behind your declaration.

21  A     Okay.

22  Q     You remember giving your deposition, but I think you

23  told me last week you hadn't reviewed the transcript itself.

24  A     Yes.  This was heading toward a hearing on a

25  preliminary injunction against the tender offer, and I don't

1    recall ever receiving or seeing this deposition before.

2    Q     Okay.  And you were defended by a lawyer from Sidley

3    Austin at that deposition?

4    A     A lawyer from Sidley Austin was -- participated in the

5    deposition.  I don't know if I was defended is quite the

6    right term.

7    Q     Okay.  Fair enough.  And if you'll look at Page 18 of

8    the deposition.

9    A     Okay.

10    Q     Do you have that?

11    A     Yes.

12    Q     You were asked the question at Line 10, "And if it

13    were difficult to service four billion or whatever debt the

14    company has before the additional four billion, is it fair

15    to say it would be more difficult to service the debt after

16    the additional?"  And do you see that the lawyer from Sidley

17    objected and said it was beyond your area of expertise?

18    A     Yes.

19    Q     Do you see that?  Was he right?

20    A     No.

21    Q     You didn't overrule him, did you?

22    A     I don't think I get to do that in a deposition.  It

23    was beyond the area of expertise that I was asked to --

24    asked for for the purposes of this litigation, which is not

25    the same thing as beyond the things that I think I'm expert

1   in.

2   Q     On direct, you talked about, I think, the basis

3   spreads between the notes and other debt.  Do you recall

4   that --

5   A     I discussed the --

6   Q     -- at the time of step one and step two?

7   A     -- the yield at which the notes were trading at just

8   prior to step one as providing marked evidence on the extent

9   to which investors believe that Tribune would be able to

10  service its debt after step two.

11  Q     Okay.  As step two approached, however, you agreed the

12  spreads were very indicative of insolvency, were they not?

13  A     As step two approached, the notes' yields went from

14  roughly eight-something percent to well into the mid-teens,

15  and the prices correspondingly dropped.  The exact prices

16  and yields depend on the series of notes, and I would

17  describe, as step two approached, the notes were trading at

18  distressed prices that were indicating a significant

19  potential for bankruptcy over the next three to five years,

20  and I believe that I estimate that in my report.

21  Q     Okay.

22             MR. ZENSKY:  Your Honor, I think I have close to

23  a half-hour more.  I don't know how late the Court wants to

24  go.  I assume it will be substantial or some redirect, so I

25  don't know what the Court wishes at this point.

1          MR. DUCAYET:  Your Honor, there will be some

2    redirect.  I don't know if it's going to be substantial.

3          MR. BENDERNAGEL:  Can I make a suggestion, Your

4    Honor, while I'm over here?

5          THE COURT:  Certainly.

6          MR. BENDERNAGEL:  We've been talking about the

7    schedule for the rest of the week, and my sense is that

8    we're pretty much on schedule, and I don't think I have a

9    problem with letting Mr. Zensky carry this witness over to

10   tomorrow morning if that's helpful to him and helpful to

11   you.  If you've had enough of Mr. Black, maybe it isn't, but

12   it's your call.

13         THE COURT:  No comment.  All right.  We can

14   adjourn for the day at this point if it's convenient for

15   you, Mr. Zensky, to break at this point.

16         MR. ZENSKY:  That's why I asked, Your Honor.

17         THE COURT:  Okay.

18         MR. ZENSKY:  Could we -- Your Honor, can we have

19   an instruction about no consultation regarding the

20   testimony?

21         THE COURT:  Okay, sir.

22         Mr. Black, I direct you not to discuss your

23   testimony with anyone between now and the time that you

24   resume the stand tomorrow morning.

25         MR. BLACK:  How about my wife?

1        MR. ZENSKY:  As long as she's not a bankruptcy

2   lawyer.

3        THE COURT:  Well, let's put it this way, the

4   first question Mr. Zensky may ask you may relate to the

5   conversations with anyone that you might have had.  So guide

6   yourself accordingly.

7        MR. BLACK:  Okay.

8        THE COURT:  I'll answer it that way.  Okay.  You

9   may step down, sir.

10       (Witness excused)

11       THE COURT:  Let me just repeat the request that I

12  made at the end of yesterday's session, and that is to exit

13  as quickly and cleanly as possible so that Court's staff and

14  security can head home.  With respect to tomorrow morning,

15  I'll remind you that I do have a hearing here at nine o'

16  clock.  It's on shortened notice, so objections can be

17  raised at the time of hearing, and I say that because I

18  don't know whether it will be contested.  I suspect that it

19  might not be so that it might not last very long, but I

20  don't yet know that.

21       I ask that if you can clear the tables or at

22  least the first two, just the surfaces, that would be

23  helpful to the parties who will be visiting tomorrow.  And

24  to the extent that the parties in this case are in and out

25  of the courtroom at 9:00, I ask that you just respect those

1   who are asking for relief in the unrelated case.

2               I expect to go again to about the same time

3   tomorrow.  We will take a -- so we will begin at 10:30

4   tomorrow because I have a brief conference call at 10:00,

5   which will not be in the courtroom.  So we'll start at 10:30

6   tomorrow.  I expect to go to around 6:00 tonight.  Are there

7   any questions?

8               MR. BENDERNAGEL:  I have -- not about that, but I

9   have a question for you.

10              THE COURT:  Okay.

11              MR. BENDERNAGEL:  I just want to raise a

12  scheduling issue with you that I don't think is a problem

13  with anybody, and it may not come up, but I don't want to

14  get us into a jam.  As I see the schedule playing out,

15  tomorrow after Mr. Black finishes, and I presume he'll

16  finish certainly before lunchtime, we then put on Professor

17  Fischel, and my sense is that he will take a couple of

18  hours, maybe an -- we can only take an hour and a half on

19  direct, and there'll be some examination after that.  And

20  then, Mr. Mandava will follow Professor Fischel, and he's an

21  expert, so you -- it's going to take a couple hours.  And

22  then Mr. Chachas comes after that.  I don't expect that

23  we'll get to Mr. Chachas until Friday morning, but he's

24  available if we have to go forward and start the

25  examination.  I'd prefer not to start an examination and

1  carry a witness over on a direct, but we can see where we

2  are at the end of the day tomorrow.

3         After that, we have Mr. Whittman, and I'm told

4  that they're going to cross him on two of his three expert

5  reports, but not on the third, and that the cross might be

6  an hour, so there'll be some direct.  And then I think

7  there'll be a proffer for Mr. Dempsey.  And what I'd like to

8  ask the Court is that we end for the week at that juncture

9  because the last witness we have is Mr. Hartenstein.  He's

10 the publisher of the L.A. Times.  I don't want to drag him

11 all the way across the country on the possibility he may go

12 on at the very end of the day on Friday given the fact that

13 we have a hard stop at 3:30 and we'd be prepared to put him

14 on first thing Monday.

15        Now, it's possible that we are not going to get

16 all the way through this.  I think we probably will right

17 around 3:30, but I just don't want to bring this witness all

18 the way across the United States.  And I've talked to

19 people, and people have said, "Well, it's probably not going

20 to happen until Monday," and I just wanted to give the Court

21 an alert that that's what we were planning to do.  If people

22 are troubled by that, I'll try to get Mr. Hartenstein here,

23 but I had really planned to put him on Monday -- first thing

24 Monday morning at the earliest, and I wanted to run that by

25 the Court.

1          THE COURT:  Would anyone like to be heard on

2    that?

3        (No audible response)

4          MR. ZENSKY:  We have no problem with the

5    suggestion, Your Honor.  That's fine.

6          THE COURT:  Okay.  You may plan that way

7    accordingly then.

8          MR. BENDERNAGEL:  Appreciate it.

9          THE COURT:  All right.  Anything else before we

10   adjourn for the day?

11          (No audible response)

12          THE COURT:  Court is adjourned.  Thank you all.

13          UNIDENTIFIED MALE:  Thank you.

14      (Proceedings adjourned at 6:06 p.m.)

15

16                    CERTIFICATION

17        I certify that the foregoing is a correct

18   transcript from the electronic sound recording of the

19   proceedings in the above-entitled matter.

20

21

22   _____          March 9, 2011

23   Alicia Jarrett                            Date

24   Transcriber

25

```
 1                            INDEX
 2                  Direct   Cross   Redirect   Recross   Further
 3                                                        Redirect
 4
 5  WITNESSES:
 6
 7  Miriam Kulnis      12      45       78        84
 8
 9  Bernard Black      92     179
10
11
12
13
14
15  DCL EXHIBIT:                              Marked    Received
16
17  1484 - B. Black's Amended Report           105       106
18
19
```

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **08-13141-kjc**(1) 1:5 | | **academic**(13) 94:22 95:12 95:18 95:19 95:20 95:22 100:8 158:11 159:2 193:22 203:6 203:7 203:9 | | **admission**(1) 107:11 | | **all**(162) 11:4 13:14 20:17 22:15 23:21 28:16 28:21 29:6 32:3 32:10 32:21 36:5 36:10 39:3 40:23 41:21 45:1 55:13 55:16 56:16 58:6 58:7 59:7 62:5 62:14 66:9 66:15 66:20 67:3 67:7 71:6 72:7 76:19 78:19 78:24 79:3 79:17 80:7 82:24 84:25 85:24 87:3 87:15 87:17 90:9 91:18 91:22 92:17 100:9 101:24 102:13 103:8 108:7 109:25 110:16 111:3 111:6 115:2 115:15 117:19 118:22 119:16 120:3 120:13 120:17 123:5 123:20 125:20 127:21 129:20 131:6 131:24 132:19 135:16 135:24 136:4 136:9 136:21 138:13 138:19 139:14 141:14 144:17 145:1 146:12 146:12 147:20 148:1 148:18 151:18 151:18 153:11 157:17 158:12 158:14 158:16 161:18 161:23 163:14 164:1 165:16 166:10 166:10 167:19 167:20 169:18 169:24 172:21 175:25 177:11 177:19 178:3 179:8 180:5 182:3 187:12 189:23 195:4 204:19 205:17 207:4 208:12 208:16 209:18 213:7 216:4 219:9 219:16 230:7 231:17 233:5 233:6 235:25 240:15 243:1 250:18 251:12 251:23 253:14 253:21 254:5 257:23 259:4 260:23 262:20 263:2 263:5 263:7 263:13 263:22 264:15 265:22 270:18 275:12 278:7 278:20 282:13 285:11 285:16 285:17 286:9 286:12 |
| **10-minute**(1) 156:21 | | | | **admitted**(1) 107:13 | | |
| **17-percent**(2) 250:12 251:6 | | | | **adopts**(1) 240:7 | | |
| **20-percent**(1) 142:1 | | **academy**(1) 12:5 | | **advance**(1) 194:23 | | |
| **200-page**(1) 248:15 | | **accept**(5) 187:13 199:19 256:21 262:22 274:5 | | **advantage**(1) 89:3 | | |
| **22.5-percent**(3) 139:10 140:19 270:5 | | | | **adverse**(1) 61:24 | | |
| **25-percent**(1) 257:20 | | | | **advice**(2) 191:25 193:17 | | |
| **27-percent**(2) 142:22 143:7 | | **accepted**(4) 59:9 59:10 210:13 210:17 | | **advise**(2) 13:6 45:22 | | |
| **30-percent**(1) 242:22 | | **access**(1) 16:25 | | **advisors**(6) 80:6 96:10 151:24 151:25 152:9 154:3 | | |
| **39-percent**(1) 142:6 | | **accordingly**(4) 55:17 103:9 283:6 286:7 | | | | |
| **48-percent**(1) 137:20 | | **account**(7) 115:2 146:16 149:22 179:15 211:2 216:3 247:9 | | **advocate**(1) 61:21 | | |
| **5-year**(2) 146:1 146:2 | | | | **affect**(10) 141:3 141:4 158:5 158:5 168:3 168:4 168:7 209:3 209:7 211:1 | | |
| **50-percent**(2) 118:2 143:12 | | **accounting**(1) 95:14 | | | | |
| **60-something**(1) 140:10 | | **accounts**(1) 154:17 | | **afforded**(1) 39:16 | | |
| **70-percent**(1) 243:4 | | **accrued**(2) 163:17 164:2 | | | | |
| **8-percent**(1) 251:7 | | **accurate**(2) 88:4 196:22 | | **after**(63) 15:14 15:17 20:2 22:9 27:1 29:4 29:5 33:3 34:23 50:6 50:24 68:5 75:6 75:7 76:2 76:5 76:6 76:7 76:11 94:21 108:1 108:1 109:25 112:11 118:10 120:17 122:20 126:14 134:1 138:13 156:23 163:1 178:3 188:14 191:24 192:2 192:4 192:4 192:5 192:8 192:15 192:17 195:6 202:5 218:18 236:15 248:3 254:2 254:2 254:9 255:4 255:20 258:9 258:13 259:4 262:12 271:15 280:15 281:10 284:15 284:19 284:22 285:3 | | |
| **80-percent**(1) 143:13 | | **accurately**(1) 196:18 | | | | |
| **85-percent**(1) 140:17 | | **achieve**(2) 62:18 62:19 | | | | |
| **a.m**(6) 1:15 11:1 72:25 85:23 85:23 92:3 | | **acquisition**(1) 201:24 | | | | |
| **abandoned**(1) 192:18 | | **acquisitions**(10) 94:18 96:11 96:13 96:15 96:16 97:17 182:18 203:21 203:25 204:1 | | | | |
| **abbruzzese**(1) 5:19 5:20 | | | | | | |
| **abid**(1) 2:25 | | **access**(9) 64:9 95:14 137:4 137:16 139:1 228:14 228:22 285:11 285:18 | | **afternoon**(10) 88:12 90:14 90:23 92:11 92:12 93:7 172:22 180:25 181:1 256:16 | | |
| **ability**(5) 123:11 227:2 241:7 245:16 253:4 | | | | | | |
| **able**(14) 43:19 52:4 55:3 55:17 78:20 89:11 147:7 147:21 152:18 163:19 176:5 192:6 224:16 281:9 | | **action**(8) 16:22 18:21 37:8 57:10 58:16 58:24 59:2 273:10 | | **again**(34) 51:4 56:20 70:7 79:20 102:12 104:6 123:3 123:4 133:10 133:25 150:10 153:20 153:23 155:14 162:24 203:1 208:2 210:17 226:24 227:4 227:7 227:10 230:7 231:24 237:14 242:19 247:11 250:14 255:15 258:6 267:13 276:24 278:19 284:2 | | |
| | | | | | | |
| **about**(244) 12:21 14:24 15:4 15:5 15:6 18:21 19:11 22:8 24:13 24:21 25:2 25:15 26:8 27:6 27:12 28:6 28:9 29:13 29:24 30:2 33:23 34:10 35:14 36:1 36:4 38:20 38:22 39:4 39:14 42:6 43:10 44:5 46:12 52:10 52:18 53:13 54:2 55:8 55:19 55:22 55:25 57:8 58:4 59:2 60:11 61:18 62:7 62:18 63:19 64:20 65:12 65:22 66:17 67:17 67:20 67:22 68:4 70:3 71:5 72:3 73:5 73:7 74:16 74:17 74:24 75:3 75:24 76:24 76:24 77:8 78:6 79:23 80:18 81:5 82:1 82:2 87:7 88:24 88:24 89:2 89:25 91:4 91:17 91:20 94:11 94:19 94:22 95:2 95:20 97:9 97:13 99:15 101:12 101:13 102:7 102:11 102:14 102:18 103:6 103:18 104:12 104:13 104:24 105:4 105:7 106:1 107:20 109:23 111:2 114:1 116:21 118:11 118:12 119:1 127:25 129:4 130:14 132:9 137:18 139:14 139:18 139:22 139:25 140:15 141:3 141:5 141:18 144:10 144:22 145:22 146:3 147:14 147:21 151:4 151:5 152:19 154:14 156:24 161:5 162:22 168:1 168:12 168:24 169:5 169:8 169:14 172:18 172:21 173:3 173:21 174:11 174:14 175:22 176:24 177:7 177:12 179:7 180:9 181:23 184:1 184:5 184:25 185:12 187:15 189:20 190:16 193:21 195:2 195:3 195:5 195:11 199:17 200:3 200:17 202:6 202:10 202:25 203:1 203:24 204:25 205:1 205:5 214:7 214:17 214:18 215:20 217:23 218:7 220:1 222:16 222:18 225:20 228:21 229:17 229:19 230:3 232:3 232:12 235:19 236:9 237:24 238:23 239:6 240:17 240:19 242:1 243:14 244:9 246:16 246:20 247:15 248:14 248:19 249:12 250:8 250:15 252:1 255:15 256:19 257:12 257:15 258:1 258:6 260:11 263:22 265:21 265:22 265:25 269:10 270:19 270:21 272:11 274:10 275:2 277:22 277:25 278:1 281:2 282:6 282:19 282:25 284:2 284:8 | | **actions**(1) 26:19 | | | | |
| | | **active**(3) 29:2 29:6 63:15 | | | | |
| | | **actual**(14) 111:10 111:14 111:25 122:22 129:15 129:18 130:1 131:8 153:9 187:7 231:4 232:5 242:3 242:12 | | **against**(24) 16:5 40:20 62:9 80:5 80:5 100:25 103:22 112:6 150:8 150:12 167:3 178:9 200:3 203:16 205:14 210:16 210:21 210:25 219:15 219:18 267:19 271:17 273:12 279:25 | | |
| | | **actually**(37) 15:9 17:25 30:1 43:20 51:21 61:12 61:20 64:13 73:19 73:24 73:25 75:14 77:2 79:7 82:10 86:13 87:5 95:17 96:18 122:24 136:5 136:10 148:12 159:22 170:19 172:3 193:22 201:11 204:13 208:4 213:18 225:1 226:23 234:24 241:6 264:6 270:20 | | | | |
| | | **adam**(1) 3:26 | | **agent**(2) 66:14 90:6 | | |
| | | **add**(6) 121:1 130:25 135:16 136:22 148:1 177:11 | | **agents**(1) 66:9 | | **allowed**(18) 29:12 29:16 29:21 91:7 105:5 114:24 155:12 163:13 170:14 174:2 214:5 214:18 215:15 220:20 221:12 242:10 266:5 267:21 |
| | | **add-on**(1) 193:25 | | **aggregate**(1) 229:17 | | |
| | | **add-ons**(1) 91:14 | | **ago**(15) 21:23 34:10 38:2 70:10 71:7 71:11 101:12 101:13 102:19 186:24 189:2 190:1 191:7 191:9 246:18 | | **allowing**(2) 148:7 167:2 |
| | | **added**(6) 149:3 215:6 231:21 232:1 241:2 243:7 | | | | **allows**(1) 234:24 |
| | | | | **agree**(38) 24:11 27:23 27:23 51:1 51:19 56:16 87:10 160:18 190:24 191:8 203:11 203:21 204:1 204:22 205:6 213:2 213:4 213:21 223:21 224:9 226:14 226:18 226:2 228:1 230:21 242:9 243:17 244:23 256:14 257:7 259:11 262:10 270:13 270:24 274:2 275:3 275:12 277:3 | | **almost**(3) 39:24 108:16 215:14 |
| | | **adding**(1) 169:17 | | | | **alone**(1) 38:15 |
| | | **addition**(3) 49:20 71:15 114:4 | | | | **along**(9) 98:16 110:9 143:19 152:13 161:18 161:23 236:19 247:10 270:20 |
| | | **additional**(17) 17:11 33:2 33:25 34:7 37:20 38:13 79:4 79:6 79:8 79:12 91:21 172:14 196:24 206:25 280:14 280:1 | | | | |
| | | | | | | **already**(25) 99:2 104:10 117:20 125:9 135:21 143:8 143:25 168:21 177:8 177:10 178:1 211:7 221:13 221:15 221:20 227:6 235:19 236:18 243:1 245:14 246:4 247:5 248:12 266:7 278:9 |
| | | **address**(5) 11:25 226:20 244:25 250:3 267:25 | | **agreed**(6) 38:25 192:9 236:18 246:4 270:10 281:11 | | |
| | | | | | | |
| | | **addressed**(5) 101:5 209:19 211:10 244:22 266:2 | | **agreeing**(1) 151:8 | | **also**(66) 12:7 15:6 18:5 24:17 32:22 35:1 35:4 40:20 43:22 57:20 62:24 63:5 66:6 66:11 69:24 70:2 71:16 72:10 72:23 93:14 95:10 96:3 96:6 97:17 101:3 101:21 105:1 109:12 111:7 111:12 120:1 122:25 124:15 130:10 133:9 140:22 141:4 154:24 167:8 168:14 171:22 171:23 173:10 173:11 187:23 188:9 188:11 197:16 202:3 203:4 212:2 214:17 231:8 231:10 236:7 236:24 240:8 241:18 241:19 242:3 249:16 252:14 252:18 252:23 255:9 |
| | | **addresses**(2) 100:14 238:24 | | **agreement**(25) 4:4 6:15 10:33 15:5 20:6 21:1 21:5 21:24 22:18 26:21 27:2 28:24 74:22 76:12 76:13 76:21 81:10 81:15 86:5 86:7 87:5 100:23 121:23 159:12 160:24 | | |
| | | **addressing**(2) 170:8 198:13 | | | | |
| | | **adds**(1) 176:1 | | | | |
| | | **adelman**(1) 8:21 | | | | |
| **above**(13) 116:1 117:25 117:25 118:1 137:18 148:14 149:14 171:16 171:23 172:2 215:11 228:19 271:10 | | **adequacy**(6) 205:9 227:2 234:14 245:15 246:10 253:4 | | **agudelo**(1) 10:21 | | **alternate**(1) 164:15 |
| | | | | **ahead**(9) 25:4 52:24 112:10 131:19 152:17 152:22 259:23 261:19 272:25 | | **alternative**(4) 6:31 6:32 64:21 157:24 |
| | | **adequate**(3) 88:15 89:5 89:5 | | | | **alternatively**(1) 214:25 |
| **above-entitled**(1) 286:19 | | **adjective**(1) 276:17 | | | | **alternatives**(1) 157:12 |
| **absence**(2) 231:9 270:8 | | **adjourn**(3) 87:19 282:14 286:10 | | **akin**(4) 2:19 8:14 43:9 90:10 | | **although**(3) 188:2 244:3 257:14 |
| **absolutely**(4) 64:24 77:9 130:13 130:14 | | **adjourned**(2) 286:12 286:14 | | **alert**(1) 285:21 | | **alvarez**(12) 9:43 9:43 113:23 114:3 188:3 191:22 196:2 210:13 210:17 210:20 210:22 211:1 |
| **absorb**(1) 192:21 | | **adjust**(1) 107:4 | | **algebra**(4) 147:25 206:14 206:19 206:20 | | |
| | | **adler**(1) 4:23 | | **alicia**(1) 286:23 | | |
| | | **admin**(1) 66:9 | | **align**(1) 228:3 | | **always**(9) 32:21 44:24 45:24 66:14 66:22 73:13 177:24 216:7 237:24 |
| | | **administrative**(1) 66:14 | | | | |
| | | **administrator**(1) 14:3 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| amalgam(1) 229:2 | | and(301) 76:24 77:3 77:7 77:10 77:17 | | and(301) 126:14 126:17 126:17 126:20 | | and(301) 174:10 174:14 174:15 175:2 | |

**amalgam**(1) 229:2
**amended**(7) 65:7 90:13 90:14 105:24 106:6 161:2 287:17

**amending**(1) 15:5
**amendment**(1) 22:11
**amendments**(2) 133:4 133:9
**america**(2) 6:36 6:42
**amit**(1) 6:9
**among**(5) 27:5 221:12 230:4 257:11 263:1
**amongst**(1) 19:21
**amount**(38) 61:13 78:20 82:18 82:18 82:24 110:5 115:17 116:5 117:8 118:2 126:11 126:11 135:8 150:25 163:4 163:4 163:18 164:1 164:2 164:14 166:12 167:9 169:4 169:6 174:10 179:3 199:13 199:20 210:12 210:18 210:19 211:21 211:23 214:25 215:4 220:21 272:12 278:5

**amounts**(1) 105:2
**analyses**(4) 91:2 159:16 175:7 175:22
**analysis**(35) 88:22 89:9 97:13 97:15 97:24 97:25 98:7 102:5 112:22 114:15 115:9 115:20 120:7 127:18 134:12 140:24 159:5 159:14 159:18 160:19 165:18 165:19 166:11 169:1 188:4 188:21 188:23 210:19 210:24 211:11 211:12 234:17 240:12 242:2 272:14

**analytically**(1) 108:3
**analyzed**(3) 109:3 244:14 244:15
**analyzes**(2) 240:16 244:18
**analyzing**(1) 16:25
**and**(301) 11:11 11:25 12:5 12:6 12:8 12:12 12:14 12:20 12:22 12:24 13:3 13:6 13:9 13:14 13:18 13:22 14:4 14:5 14:6 14:7 14:8 14:14 14:18 14:25 15:1 15:4 15:6 15:10 15:19 15:19 15:21 15:24 16:12 17:6 17:13 17:19 18:5 18:6 18:9 18:13 18:23 18:25 19:2 19:5 19:5 19:11 19:14 19:22 19:23 19:24 19:25 20:5 20:7 20:10 20:10 20:12 20:19 20:21 20:22 20:22 20:22 20:24 21:1 21:12 21:10 21:14 21:16 21:19 21:24 22:7 22:15 22:18 22:20 23:2 23:7 23:8 23:18 24:2 24:5 24:25 25:4 25:6 26:5 26:10 26:12 26:14 26:18 26:19 26:22 26:23 27:1 27:5 27:8 27:11 27:13 27:15 27:24 28:1 28:4 28:22 28:25 29:6 29:16 29:20 30:5 30:17 31:7 31:8 31:12 31:22 31:24 32:3 32:4 32:6 32:8 32:10 32:11 32:20 32:22 32:25 33:8 33:8 33:13 33:23 34:4 34:16 34:18 34:22 34:25 35:1 35:2 35:4 35:25 36:17 37:3 37:7 37:9 37:12 37:21 37:22 37:25 38:10 38:19 39:4 39:8 39:21 40:1 40:8 42:5 42:8 42:9 42:10 42:16 42:20 43:13 44:6 44:21 44:22 44:24 45:5 45:18 45:19 46:6 46:15 46:20 46:23 47:3 47:7 47:10 47:12 47:15 47:16 47:19 47:24 48:3 48:7 48:10 48:25 49:1 49:2 49:12 49:21 49:25 50:4 50:5 50:11 50:11 50:15 50:15 50:24 51:4 51:7 51:12 52:14 52:15 52:16 53:5 53:9 53:18 53:23 53:25 54:7 55:6 55:7 56:3 56:5 56:9 56:13 56:15 56:20 57:4 57:13 57:18 58:11 58:12 58:14 58:18 59:3 59:24 60:17 60:20 61:15 61:15 62:10 62:11 62:11 62:17 62:18 62:24 63:2 63:5 63:24 64:7 64:8 64:9 64:13 64:14 64:15 64:17 65:1 65:5 65:13 65:14 65:15 65:25 66:1 66:21 66:23 67:7 67:10 67:12 67:13 67:15 67:25 68:15 68:22 68:25 69:21 70:2 70:12 70:18 70:21 71:3 71:20 71:21 72:1 72:2 72:2 72:3 72:4 72:4 72:12 72:17 72:24 73:1 73:3 73:5 73:7 73:8 73:10 73:12 73:16 73:19 73:22 74:3 74:9 74:10 74:11 74:13 74:20 75:2 75:21 76:1 76:3 76:10 76:20 76:20 76:20

**and**(301) 76:24 77:3 77:7 77:10 77:17 77:17 77:24 78:4 78:9 78:13 78:14 78:16 78:17 79:4 79:11 80:2 80:6 80:9 80:14 80:21 80:21 81:12 81:19 82:5 82:20 84:6 84:9 84:13 85:15 85:15 85:16 86:6 86:24 87:9 87:22 87:23 87:24 88:3 88:10 88:11 88:12 88:16 88:20 88:24 89:4 89:8 89:17 89:18 89:21 89:21 89:24 90:1 90:1 90:3 90:7 90:17 91:4 91:15 91:18 91:21 91:23 92:5 92:6 92:8 92:9 92:14 92:17 92:19 92:24 93:12 93:13 93:14 93:16 93:19 93:22 93:23 94:1 94:12 94:17 94:18 94:19 94:19 94:21 94:22 95:2 95:4 95:5 95:5 95:10 95:11 95:13 95:15 95:25 96:2 96:4 96:7 96:8 96:9 96:13 96:13 96:14 96:15 96:17 96:21 97:2 97:5 97:7 97:13 97:16 97:20 97:23 98:2 98:4 98:6 98:12 98:12 98:15 98:20 98:20 98:25 99:1 99:6 99:10 99:17 99:23 99:23 99:25 100:3 100:14 100:15 100:17 100:17 100:22 100:22 100:23 100:25 101:2 101:7 101:14 101:16 101:18 101:20 101:21 101:23 101:24 102:11 102:12 102:12 102:15 102:20 103:13 103:14 103:23 103:25 104:6 104:1 104:17 104:19 104:23 104:24 104:25 105:6 105:15 105:16 106:10 106:22 106:2 107:1 107:3 107:4 107:4 107:25 108:2 108:8 108:11 108:17 108:17 108:18 108:1 108:19 108:21 109:4 109:6 109:11 109:15 109:19 109:23 109:23 109:23 110:1 110:2 110:6 110:7 110:8 110:9 110:14 110:17 110:18 110:19 110:20 110:24 111:5 111:5 111:16 111:17 111:20 111:23 112:7 112:1 112:21 113:7 113:8 113:9 113:12 113:16 113:20 113:21 113:23 114:2 114:7 114:7 114:25 115:1 115:4 115:7 115:11 115:13 115:15 115:18 115:19 115:23 116:1 116:7 116:12 116:13 116:16 116:19 116:21 117:1 117:4 117:6 117:10 117:11 117:17 117:24 118:1 118:4 118:13 118:15 118:17 118:18 118:19 118:20 118:25 119:4 119:11 119:11 119:14 119:15 119:15 119:18 120:1 120:23 120:6 120:7 120:10 120:17 120:19 120:23 120:25 121:3 121:7 121:14 121:14 121:24 122:3 122:7 122:17 122:20 123:1 123:2 123:2 123:6 123:6 123:7 123:9 123:12 123:14 123:17 123:24 124:2 124:8 124:10 124:12 125:2 125:5 125:6 125:10 125:13 125:16 125:24

**and**(301) 126:14 126:17 126:17 126:20 127:6 127:12 127:15 127:19 127:23 127:25 127:25 128:2 128:5 128:8 128:8 128:11 128:11 128:14 128:16 129:1 129:4 129:6 129:8 129:10 129:12 129:12 129:16 129:17 129:21 129:24 129:25 129:25 130:2 130:9 130:17 130:21 130:24 130:24 131:2 131:2 131:3 131:3 131:12 131:20 132:1 132:3 132:14 132:17 132:18 132:19 132:23 133:15 133:20 133:21 133:22 133:24 134:1 134:11 134:20 134:23 134:24 135:5 135:12 135:14 135:15 135:19 135:21 136:1 136:4 136:15 136:17 136:19 137:8 137:11 137:11 137:12 137:13 137:15 137:15 137:20 137:22 137:23 137:24 137:24 138:1 138:12 138:12 138:18 138:23 139:9 139:13 139:16 139:21 139:23 139:2 140:2 140:7 140:8 140:16 140:16 140:21 140:2 141:2 141:2 141:4 141:7 141:8 141:10 141:10 141:21 141:24 142:9 142:10 142:10 142:11 142:16 142:20 142:22 143:11 144:13 143:19 143:21 144:5 144:6 144:12 144:16 144:25 145:11 145:18 145:25 146:1 146:5 146:10 146:14 146:16 146:23 147:2 147:6 147:6 147:13 147:24 147:25 148:1 148:2 148:5 148:7 148:13 148:19 148:20 149:4 149:13 149:14 149:1 149:16 149:19 150:8 150:11 150:12 150:13 150:20 150:22 150:23 150:25 151:2 151:5 151:9 151:22 151:24 152:1 152:8 152:9 152:10 152:11 152:16 152:1 152:19 152:19 152:22 152:22 152:23 152:24 153:4 153:9 153:10 153:13 153:19 153:22 153:24 154:2 154:7 154:10 154:11 155:7 155:8 155:9 155:22 155:23 156:3 156:5 156:12 156:17 157:9 157:11 157:11 157:14 158:3 158:6 158:13 158:15 158:19 158:21 158:24 159:2 159:3 159:12 159:12 159:16 160:11 160:15 160:19 161:15 162:8 162:9 162:12 162:14 163:9 163:13 163:16 164:4 164:5 164:6 164:6 164:17 164:18 164:24 165:7 165:12 165:15 165:20 165:24 166:7 166:7 166:8 166:9 166:21 166:21 167:6 167:10 167:13 167:2 168:3 168:6 168:11 168:14 168:24 169:3 169:7 169:12 169:14 169:18 170:2 170:3 170:3 170:17 170:18 170:19 170:19 170:22 170:24 170:25 171:23 172:5 172:10 172:17 172:18 172:21 173:1 173:5 173:6 173:9 173:11 173:16 173:16 173:17 173:1 173:18 173:19 173:24 174:8

**and**(301) 174:10 174:14 174:15 175:2 175:5 175:6 175:10 175:12 175:13 175:14 175:17 175:21 175:24 176:14 176:24 177:2 177:4 177:8 177:13 177:16 177:21 177:23 177:25 178:5 178:10 178:18 178:22 178:25 179:3 179:5 179:16 180:21 181:14 181:23 181:24 181:25 182:2 182:3 182:18 182:18 182:23 183:8 183:13 183:14 183:16 184:6 184:9 184:25 185:6 185:11 185:14 185:14 185:20 185:22 185:24 186:1 186:5 186:11 186:12 186:13 186:15 187:1 187:2 187:6 187:17 187:18 187:20 187:24 188:3 188:5 188:10 188:11 188:12 189:8 189:12 189:12 189:17 190:9 190:12 190:12 190:13 190:14 190:16 190:17 190:21 191:18 191:18 191:22 191:22 192:7 192:17 192:18 192:19 192:24 192:25 193:8 193:10 193:15 193:17 193:22 193:23 193:24 194:2 194:2 194:3 194:3 194:13 194:23 194:25 195:3 195:9 195:5 195:6 195:8 195:17 195:20 196:2 196:2 196:3 196:18 196:23 196:25 197:2 197:4 197:7 197:16 198:9 198:11 198:15 198:16 198:24 199:2 199:5 199:7 199:12 199:17 199:23 200:3 200:4 200:5 200:6 200:8 200:8 200:13 200:16 201:2 201:6 201:7 201:7 201:8 201:8 201:9 201:11 201:11 201:14 201:20 201:22 202:3 202:6 202:6 202:7 202:8 202:9 202:15 202:18 202:20 203:6 203:11 203:15 203:2 203:25 204:4 204:9 204:13 204:16 204:16 205:1 205:2 205:9 205:10 205:15 205:18 206:2 206:9 206:13 206:19 206:20 206:21 206:21 206:22 207:1 207:3 207:22 208:5 208:6 208:7 208:11 208:17 209:10 209:13 209:19 209:24 210:2 210:8 210:12 210:15 210:18 210:20 210:23 211:3 211:4 211:6 211:14 212:1 212:5 212:18 213:5 213:8 213:9 213:13 213:14 213:15 213:20 213:22 214:3 214:22 215:4 215:5 215:5 215:6 215:9 215:12 215:17 215:18 216:3 216:18 216:25 217:4 217:17 217:18 217:20 217:23 217:24 218:3 218:4 218:5 218:6 218:10 218:10 218:11 218:13 218:14 218:16 218:20 218:24 219:2 219:13 219:25 220:3 220:8 220:10 220:20 220:24 221:3 221:4 221:13 221:14 222:15 223:6 223:21 224:2 224:5 225:1 225:5 225:11 225:13 225:20 225:23 226:4 226:6 226:9 226:9 226:12 226:17 226:21 226:23 227:2 227:3 227:3 227:16 227:17 227:23 227:24 228:1 228:6 228:7 228:18 228:23 228:25 229:5 229:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**and(301)** 229:23 230:2 230:9 230:14 230:16 230:17 230:18 231:2 231:3 231:8 231:10 231:14 231:19 232:3 232:3 232:7 232:17 232:20 232:23 232:24 233:1 233:1 233:23 233:24 233:24 234:3 234:5 234:5 234:8 234:10 234:11 234:14 234:16 234:16 234:17 234:20 235:13 235:15 235:19 236:2 236:6 236:12 236:12 236:13 236:15 236:16 237:9 237:12 237:18 238:5 238:5 238:8 238:14 238:24 239:2 239:7 239:12 239:14 239:17 239:21 239:25 240:3 240:4 240:4 240:14 240:16 240:18 241:9 241:12 241:13 241:17 242:17 242:19 242:21 242:21 243:1 243:6 243:11 243:19 243:23 244:3 244:8 244:17 244:19 244:23 245:4 245:9 245:15 245:18 246:1 246:2 246:9 246:13 246:13 246:16 246:18 246:24 247: 247:6 247:9 247:15 247:16 247:17 247:23 248:3 248:6 248:11 248:13 248:14 248:18 248:19 248:21 249:1 249:4 249:13 249:15 249:16 249:17 249:17 249:20 249:21 249:21 249:21 249:23 249:23 249:23 249:23 249:25 250:1 250:2 250:7 250:7 250:9 250:13 250:15 250:16 250:16 250:1 250:16 250:23 251:14 251:18 251:18 251:25 252:1 252:9 252:14 252:20 253:7 253:10 253:10 253:11 253:13 253:15 253:21 253:24 254:1 254:1 254:2 254:3 254:4 254:4 254:6 254:7 254:9 254:12 254:17 254:25 255:1 255:3 255:3 255:3 255:8 255:9 255:10 255:10 255:13 255:16 255:16 255:17 255:18 255:20 255:24 256: 256:2 256:18 256:23 256:24 257:5 257:7 257:11 257:14 257:14 257:14 257:25 258:1 258:2 258:3 258:7 258:24 259:4 259:7 259:8 259:11 259:13 259:21 259:23 260:1 261:3 261:4 261:7 261:11 261:13 261:22 261:25 261:25 262:1 262:3 262:5 262:6 262:10 262:14 262:17 262:19 262:22 262:24 263:1 263:2 263:9 263:9 263:9 263:9 263:10 263:11 263:14 263:15 265:1 265:14 266:4 266:8 266:12 267:5 267:10 267:13 267:18 267:19 267:23 268:3 268:7 268:10 268:11 268:24 269:10 269:19 269:21 269:22 269:22 269:24 270:4 270:1 270:11 270:14 270:19 270:24 271:1 271:9 271:9 271:11 271:12 271:13 271:18 272:2 272:5 272:11 272:15 272:17 272:18 273:7 273:11 273:23 274:6 274:9 274:16 274:21 274:25 275:4 275:7 275:10 275:22 276:2 276:5 276:9 276:14 276:24 277:2 277:4 277:10 277:16 277:22 277:25 278:7

**and(51)** 278:11 278:16 278:17 278:18 279:1 279:2 279:5 279:8 279:11 279:15 279:25 280:2 280:7 280:12 280:16 280:17 281:3 281:6 281:15 281:16 281:16 281:20 282:7 282:8 282:10 282:23 283:12 283:13 283:13 283:17 283:23 283:24 284:13 284:15 284:17 284:18 284:19 284:19 284:20 284:21 284:24 284:25 285:3 285:5 285:6 285:7 285:13 285:18 285:19 285:20 285:24

**and/or(2)** 18:15 111:8
**anderson(1)** 2:31
**andrea(1)** 8:42
**andrew(9)** 3:16 3:34 5:6 5:40 5:41 6:24 7:42 7:44 10:35

**angeles(1)** 4:18
**angell(1)** 4:40
**angelo(17)** 6:16 19:3 20:21 26:21 26:22 27:1 28:22 31:7 33:7 33:8 63:2 67:6 67:10 67:11 67:13 78:14 81:23

**ann(1)** 13:21
**anna(2)** 8:49 8:49
**annex(2)** 113:15 207:16
**annual(1)** 275:24

**another(28)** 18:21 27:3 35:14 64:8 68:17 81:14 96:25 110:9 111:11 111:18 115:24 116:11 118:21 119:17 125:3 126:22 144:1 151:20 159:20 162:5 231:16 239:15 239:18 239:22 241:1 241:1 258:3 263:13

**answer(39)** 28:14 29:21 29:23 30:2 30:10 36:15 43:18 52:3 55:3 55:16 64:3 64:4 72:5 76:4 82:13 83:22 102:15 124:19 176:11 176:25 180:3 187:1 190:14 190:16 190:19 201:12 219:8 243:21 249:13 252:2 258:19 266:12 266:25 268:21 269:15 269:19 269:23 270:14 283:8

**answered(3)** 74:3 76:3 211:7
**answers(1)** 249:25
**answer's(1)** 142:7
**anticipated(2)** 101:7 111:20
**anticipating(1)** 272:17
**any(88)** 13:25 16:1 16:9 16:16 16:24 20:24 21:12 21:25 22:23 24:20 27:17 29:14 29:17 29:18 33:2 33:25 36:4 36:6 38:13 39:17 42:3 42:23 55:10 55:20 59:16 56:17 61:18 63:19 63:21 65:16 68:3 68:7 74:6 75:7 76:1 76:8 76:20 79:15 80:9 86:11 90:19 94:23 95:21 97:3 97:14 98:15 99:4 103:3 103:18 105:22 107:10 134:4 137:1 153:8 159:13 161:3 161:5 162:10 162:24 165:17 165:17 168:13 170:22 178: 180:8 183:17 191:8 197:21 198:5 198:6 203:16 204:5 205:4 209:10 211:25 214:11 215:18 221:5 226:2 229:2 229:18 239:14 239:17 240:8 249:5 250:10 272:7 284:7

**anybody(2)** 127:8 284:13
**anybody's(1)** 260:11
**anyone(8)** 13:18 60:11 68:3 75:21 153:19 282:23 283:5 286:1

**anything(11)** 17:25 77:9 78:23 83:7 83:13 91:24 98:16 113:19 153:7 189:20 286:9

**anyway(4)** 73:2 112:5 151:10 225:5
**anywhere(1)** 27:16
**apart(7)** 19:16 26:17 26:24 29:5 42:8 76:12 247:24

**apologize(4)** 88:11 222:7 261:11 264:12
**appeals(1)** 94:16
**appear(2)** 227:20 229:14
**appearances(6)** 5:17 6:1 7:1 8:1 9:1 10:1
**appears(2)** 262:13 274:4
**applicable(1)** 122:15
**application(1)** 98:13
**applied(4)** 138:10 218:13 219:13 241:19
**applies(1)** 123:19
**apply(15)** 123:20 123:21 123:23 123:25 125:20 174:20 177:6 177:18 183:10 183:1 212:13 216:21 216:23 227:1 266:5
**applying(2)** 147:6 179:9
**appointed(3)** 23:1 28:2 95:5
**appreciate(5)** 85:20 192:7 194:8 269:23 286:8

**approach(8)** 43:4 92:14 98:2 99:25 146:20 147:1 180:20 260:20

**approached(6)** 88:2 90:12 244:21 281:11 281:13 281:17

**appropriate(8)** 27:24 61:7 61:9 61:13 73:9 87:11 160:20 257:16

**approved(5)** 22:11 26:10 31:24 65:9
**approved."(1)** 65:10
**approximately(2)** 12:23 78:2

**april(31)** 20:5 21:21 21:22 22:1 22:8 22:21 22:22 22:24 23:23 23:24 24:4 24:2 27:4 35:16 35:19 35:23 49:19 63:5 74:22 76:11 192:1 192:4 192:5 192:8 192:18 241:21 247:24 248:1 274:17 275:7 275:10

**are(237)** 11:23 13:6 13:9 13:14 13:14 13:16 13:16 15:23 15:24 29:18 36:19 37: 40:2 40:22 42:16 43:19 45:8 48:10 49:19 49:22 52:3 58:4 60:16 62:10 68:18 67:3 79:7 67:13 67:19 69:18 70:21 70:22 73:1 77:2 77:6 78:20 80:7 80:9 80:11 81:9 85:24 86:19 86:23 86:25 88:14 88:22 88:23 91:4 91:14 91:16 95:23 95:24 97:1 97:19 97:23 98:6 100:1 100:1 100:3 100: 101:19 102:7 102:8 103:6 105:1 105:2 105:3 105:5 106:12 108:6 108:7 108:20 109:6 109:10 110:18 110:22 112:14 114:2 115:15 115:21 116:8 116:20 117:18 117:20 118:3 120:4 122:15 123:20 123:21 124:7 124:8 125:10 126:4 126:15 127:17 127:17 127:21 129:8 129:11 130:25 132:2 133:18 133:21 134:4 134:6 135:16 136:1 136:7 137:3 140:8 140:25 141:8 141:9 141:20 143:15 144:20 145:15 146:4 146:7 147:7 147:13 147:21 149:10 149:16 150:6 150:7 150:8 150:16 150:19 151:8 151:25 152:7 154:25 155:17 158:19 158:15 158:16 159:16 160:9 162:1 164:4 165:4 165:4 165:6 165:10 165:14 165:20 167:17 169:2 169:24 170:22 174:2 174:6 174:14 174:23 177:25 181:21 183:13 183:14 183:15 185:21 185:25 186:4 186:6 186:15 188:7 189:21 190:12 195:17 199:2 199:23 199:2 202:13 204:14 204:15 207:1 207:3 209:14 209:18 215:3 215:4 219:17 221:19 221:25 224:10 225:23 226:1 228:11 228:13 228:2 230:2 230:6 232:4 234:20 234:21 235:7 236:11 236:11 237:11 238:4 238:8 238:12 239:24 241:1 241:5 241:24 243:18 245:21 246:1 246:5 249:18 249:18 249:19 249:19 252:4 254:18 256:4 257:1 257:11 257:12 263:6 263:11 263:25 265:5 266:5 267:20 268:4 268:13 269:13 271:5 283:24 284:1 284:6 285:2 285:15 285:22

**area(11)** 27:22 96:8 96:10 96:17 97:13 97:14 98:6 198:19 203:21 280:17 280:23
**areas(6)** 95:21 95:23 98:21 184:4 185:5 244:24
**aren't(1)** 265:6
**arena(1)** 203:22
**aren't(2)** 138:6 146:7
**argue(1)** 177:7
**argument(19)** 127:10 132:24 133:1 133:2 133:3 133:8 133:11 133:12 155:15 167:8 168:25 170:8 177:1 177:3 178:17 188:6 189:4 189:7 226:13

**arguments(9)** 40:21 100:1 100:1 100:3 180:8 185:12 185:13 185:14 194:25

**arif(1)** 8:6
**arise(1)** 185:5
**arisen(1)** 101:4
**arises(13)** 163:15
**arising(1)** 57:10
**arose(1)** 27:3
**around(30)** 16:10 20:12 22:10 22:13 22:24 27:3 34:23 35:3 39:20 46:13 54:6 54:22 58:9 59:14 59:23 73:11 83:25 91:18 101:24 101:25 162:17 193:20 222:12 257: 259:14 262:11 262:23 271:2 284:6 285:17

**arps(1)** 94:16
**arrived(3)** 43:23 146:19 157:15
**arrowgrass(2)** 8:4 8:4
**articles(2)** 95:14 100:8

**ashish(1)** 8:38
**ashley(2)** 3:18 5:24
**aside(6)** 22:7 59:16 66:18 79:5 268:15 269:16

**ask(40)** 28:5 28:9 28:10 33:13 35:16 38:21 57:7 61:2 74:12 77:20 106:1 119:18 121:4 142:5 147:15 156:20 157:17 158:10 161:14 168:14 172:18 173:24 174:3 175:22 175:23 179:20 179:25 202:24 208:7 210:20 219:8 223:2 241:21 264:8 269:24 270:19 283:4 283:21 283:25 285:8

**asked(37)** 29:25 38:19 71:17 71:22 74:3 76:3 79:22 81:5 82:1 89:14 101:16 101:17 103:21 130:1 152:7 189:3 189:19 190:12 193:23 200:6 201:6 219:4 249:8 249:11 250:5 250:8 250:11 253:21 257:15 267:19 269:2 269:3 269:11 280:12 280:23 280:24 282:16

**asking(8)** 22:12 52:1 61:10 161:5 190:15 205:4 208:24 284:1

**aspects(3)** 99:13 100:19 191:19
**asserting(1)** 58:15
**assess(10)** 103:21 105:7 105:9 122:25 123:6 157:20 183:20 187:9 216:18 240:2

**assessed(1)** 159:25
**assessing(14)** 54:16 54:18 112:24 118:4 120:3 121:17 121:17 121:18 124:4 125:18 134:7 175:6 176:14 190:18

**assessment(23)** 120:16 128:17 141:2 141:9 145:24 148:15 162:6 163:10 166:13 179:15 183:10 185:11 229:1 229:21 230:15 232:8 232:10 237:23 239:4 244:1 244:21 245:18 267:6

**assessments(3)** 159:21 227:25 230:5
**asset(10)** 8:44 8:45 40:4 127:1 155:18 169:18 202:1 233:8 234:9 238:18

**assets(5)** 97:7 126:11 204:2 239:1 239:4
**assign(16)** 120:12 120:14 120:25 140:17 163:20 175:10 189:17 189:18 213:19 227:24 230:8 233:7 234:11 236:2 236:3 238:14
**assigned(14)** 46:18 48:18 107:5 129:19 203:12 213:11 216:4 220:3 220:8 227:16 228:7 249:12 257:20 258:4

**assigning(4)** 119:1 136:2 237:20 243:17
**assignment(6)** 184:7 185:9 186:2 192:16 195:12 254:10

**assigns(1)** 175:9
**assist(4)** 17:18 45:18 45:18 45:20
**assistant(1)** 196:1
**assists(1)** 44:21
**associate(4)** 93:14 94:17 202:17 260:10
**associated(7)** 16:2 36:2 148:1 202:11 263:18 268:17 269:18

**assume(6)** 90:18 249:1 257:3 264:15 273:17 281:24

**assumed(6)** 111:16 177:7 208:16 210:10 210:15 227:7

**assumes(2)** 211:25 212:2
**assuming(6)** 124:6 130:15 163:3 254:25 259:11

**assumption(6)** 175:22 178:5 210:13 245:20 272:7 272:11

**assumption(5)** 155:1 157:22 206:6 207:5 208:11

| Word | Page:Line |
|---|---|

atamian(1) 6:5
attach(1) 25:4
attached(4) 26:10 81:10 166:16 200:13
attempt(1) 228:5
attempted(1) 44:3
attempts(1) 254:16
attended(1) 201:3

attorney(2) 186:5 186:12
attributed(3) 75:3 78:17 78:18
audible(5) 79:16 91:25 106:3 286:3 286:11
audit(1) 95:4
august(3) 49:9 49:13 72:13
aurelius(22) 2:19 8:9 8:10 28:25 29:1 29:2 29:5 29:10 30:15 43:9 43:23 44:2 44:13 63:12 63:14 63:21 63:23 80:17 80:18 188:10 188:21 188:23

austin(17) 1:23 7:10 99:21 101:4 101:15 185:8 186:1 186:4 187:23 188:5 188:9 188:19 196:4 248:7 272:23 280:3 280:4

autopilot(1) 122:19
availability(2) 184:12 184:21
available(6) 82:22 189:8 218:20 233:9 256:5 284:24

ave(1) 1:35
avenue(5) 2:8 2:43 4:16 4:48 12:1
avoid(6) 112:9 112:17 114:10 114:12 132:15 133:7

avoidable(1) 267:20
avoidance(41) 38:3 38:7 38:12 77:18 77:22 78:2 78:5 78:22 82:3 104:25 111:7 111:11 111:22 112:3 112:7 112:16 113:2 132:24 133:9 134:7 134:11 135:15 136:5 142:23 167:3 170:2 170:2 170:3 170:4 172:18 173:3 193:10 209:24 211:19 217:1 218:18 220:13 220:21 235:21 239:9 243:7

avoidance"(1) 109:19
avoided(19) 86:10 112:13 133:23 176:4 178:22 208:19 211:15 212:7 214:1 214:2 217:20 217:20 218:9 218:21 266:6 266:9 267:17 268:17 269:19

avoiding(2) 112:19 114:5
aware(5) 142:12 16:1 40:19 57:9 238:21
away(16) 38:14 38:17 131:14 133:16 134:3 135:14 135:25 137:13 141:24 146:1 146:24 168:13 168:15 171:14 236:8 263:14

awfully(1) 142:25
awhile(1) 178:18
bachelor's(1) 12:6
back(8) 51:10 56:4 56:13 63:5 89:22 96:21 106:10 106:14 107:4 109:21 110:24 112:10 112:13 114:8 116:24 125:21 130:2 133:6 145:2 145:10 151:18 152:18 153:10 154:9 157:6 157:7 159:3 160:2 160:4 162:21 165:24 166:18 171:17 171:20 173:19 178:23 181:2 181:4 191:11 194:2 196:10 201:9 201:12 210:21 218:18 220:1 233:5 233:22 248:6 249:10 252:11 254:2 254:5 256:23 259:3 259:8 259:19 261:22 271:9 272:23 277:18

background(2) 12:3 196:4
backup(6) 222:24 224:5 224:11 256:11 256:18 276:9

backwards(1) 94:8
bad(2) 128:10 204:16
badly(1) 261:17
baiera(1) 6:17

balance(9) 141:3 169:20 202:12 202:13 208:20 226:23 226:24 246:23 252:7

balance-sheet(40) 102:3 121:17 123:9 124:7 124:11 126:10 126:17 126:21 127:1 127:15 128:22 131:7 139:23 139:23 140:5 140:13 141:6 142:4 144:12 144:21 229:21 229:22 230:13 231:2 232:4 233:16 233:19 241:12 246:9 246:12 247:8 252:8 252:12 252:17 252:18 252:19 253:8 253:8

bale(1) 6:29
band(1) 271:2
bank(33) 6:36 6:42 9:4 9:7 9:26 9:26 10:9 11:9 11:24 48:6 49:19 95:6 95:7 111:24 111:25 112:9 114:5 114:6 132:23 135:12 137:12 177:19 184:22 198:12 198:13 198:17 235:10 248:13 248:17 266:5 268:4 268:13 269:13

bank-equitabl(2) 129:15 231:4
bank-favorabl(2) 118:19 118:20
bank-favoring(4) 132:5 135:18 136:6
bank-friendly(2) 126:19 136:2
banker(2) 47:1 47:2
bankers(1) 198:8
bankrupt(3) 95:4 234:20 234:22
bankruptcy(66) 1:1 1:19 13:15 13:16 14:21 14:23 15:7 15:11 15:14 18:20 22:5 29:3 35:12 41:21 41:22 42:21 46:11 62:15 68:6 99:5 99:6 99:6 99:7 99:9 99:14 99:16 99:25 100:4 100:7 100:7 100:8 100:10 100:19 101:4 102:6 114:7 123:10 123:12 123:13 126:12 126:16 133:5 145:1 145:22 163:17 165:8 181:18 181:21 182:19 182:23 183:13 184:5 190:23 191:3 197:22 203:2 203:3 203:5 203:14 203:22 205:14 239:7 239:19 271:16 281:19 283:1

banks(61) 62:2 110:4 111:14 111:16 112:5 112:13 117:13 117:19 117:19 118:18 119:3 119:3 119:14 119:23 119:24 119:24 130:20 132:12 132:24 133:8 133:24 134:1 134:9 135:7 139:16 145:4 149:10 163:15 163:25 166:24 167:12 167:17 170:17 174:1 174:9 177:16 177:16 177:25 178:11 179:12 200:3 204:16 211:11 212:6 212:15 213:7 213:10 216:21 218:7 221:15 222:16 234:20 265:19 266:4 267:16 268:5 268:14 268:16 269:14 269:18 270:6

barclays(3) 4:40 6:4 6:12
barnes(1) 4:34
barriers(1) 143:15
base(3) 114:9 205:10 240:4
based(18) 41:23 44:10 74:1 80:14 80:15 80:15 103:17 150:8 171:3 189:7 193:19 208:9 209:14 209:18 237:24 261:12 274:2 275:7

basic(4) 34:16 109:16 113:22 128:2
basically(16) 19:24 94:17 98:21 100:8 100:15 102:21 112:3 114:22 118:1 152:12 165:14 170:17 171:15 191:23 236:17 245:1

basis(17) 25:17 25:19 36:8 40:13 43:11 51:24 54:25 82:12 129:18 147:11 149:20 177:19 193:24 198:16 238:13 267:3 281:2

bates(1) 227:12
bayonne(1) 12:10
bear(2) 230:3 263:5
became(15) 14:4 14:6 29:6 46:2 46:6 46:11 48:17 50:19 58:12 63:23 64:1 70:18 248:12 258:5 258:7

because(107) 14:25 37:8 38:15 39:25 40:7 52:20 58:10 59:15 76:16 76:24 77:10 86:1 89:9 89:14 89:19 89:23 91:20 97:6 98:22 100:17 101:18 101:21 104:24 109:12 111:11 111:24 112:18 115:22 116:8 117:2 119:20 121:19 126:5 128:1 130:3 131:1 131:13 131:20 135:18 136:6 140:9 142:11 143:15 144:8 144:20 145:19 146:8 146:25 149:8 149:16 150:19 153:17 155:21 156:1 159:23 163:25 167:4 168:20 169:13 169:21 169:24 170:14 170:21 171:8 171:18 174:9 174:11 177:24 178:3 178:16 188:3 189:4 192:5 192:21 194:12 199:3 199:5 205:2 218:11 221:14 221:17 229:16 230:22 233:10 236:8 236:20 238:25 239:3 240:1 242:6 244:2 245:14 246:17 247:23 251:13 253:6 256:24 264:1 264:4 264:8 266:6 269:2 272:2 276:17 283:17 284:4 285:9

become(5) 14:22 29:2 53:17 104:11 164:10
becomes(6) 48:7 48:10 51:6 104:5 112:25 168:2

becoming(1) 71:5
been(69) 12:14 12:21 12:22 27:8 29:12 29:14 29:25 30:5 35:13 39:13 41:18 41:21 41:25 42:1 42:2 88:24 88:24 92:7 94:25 100:9 100:21 100:24 101:1 101:22 102:20 102:21 106:16 114:18 116:25 128:9 145:15 147:21 150:9 153:18 157:14 161:5 169:8 170:14 172:21 173:2 181:11 181:14 199:2 200:5 202:17 211:15 213:2 213:25 214:2 221:13 221:15 221:20 227:6 227:12 232:1 232:11 247:17 263:20 276:7 276:12 277:4 277:10 277:12 277:13 277:1 278:5 278:15 282:6

before(73) 1:18 12:25 15:8 28:6 33:24 46:3 46:13 54:2 54:7 54:17 56:3 57:5 63:23 69:4 72:3 72:17 76:11 76:13 80:14 83:14 83:19 84:15 91:8 91:24 100:22 100:22 103:23 112:21 113:9 115:24 116:17 117:24 119:4 121:4 127:1 132:7 134:2 134:2 135:13 136:15 137:13 143:19 145:9 148:7 148:17 158:9 167:13 175:2 176:11 185:6 188:8 188:16 190:10 194:18 207:13 211:9 217:22 218:8 221:3 225:18 230:4 242:15 249:1 273:6 274:6 274:9 274:10 276:24 278:1 280:1 280:14 284:16 286:9

began(2) 18:20 99:18
begin(4) 14:18 112:14 225:19 284:3
beginning(4) 15:1 32:7 88:3 251:19
begins(2) 65:2 182:15
behalf(11) 29:9 30:14 54:15 54:23 55:5 58:2 61:21 66:9 101:15 188:10 273:8

behave(2) 96:9 96:10
behavior(1) 198:18
behind(5) 226:13 258:22 258:23 258:24 279:20

being(24) 26:20 29:18 38:21 48:1 48:1 60:18 79:6 79:9 79:9 104:12 105:25 119:22 127:6 134:7 141:21 142:14 186:8 187:20 191:24 195:17 218:25 231:9 236:1 248:8

belief(3) 43:12 98:19 274:12
believe(45) 23:7 29:5 31:23 31:24 34:25 35:16 38:12 43:17 46:17 48:6 48:9 51:9 74:2 80:20 92:6 123:2 134:12 147:12 153:21 186:3 188:7 191:19 195:22 196:22 200:2 201:20 210:12 217:21 218:15 231:11 253:19 271:25 274:11 274:14 277:17 278:24 281:9 281:20

believed(1) 243:12
believer(1) 159:1
believes(1) 240:25

below(9) 64:14 115:25 182:21 271:12 274:25 275:21 277:5 277:8 278:5

below."(1) 50:17
ben(2) 6:13 90:5
bench(2) 111:12 180:21
bendernagel(22) 1:25 87:20 88:2 89:8 89:13 90:12 91:11 92:4 92:4 191:20 194:5 225:3 225:4 225:9 260:7 264:15 264:20 282:3 282:6 284:8 284:11 286:8

benefit(4) 40:6 87:10 145:2 235:21
benefiting(1) 211:19
benefits(1) 202:2
benjamin(1) 2:6
bennett(2) 4:13 8:33
benson(1) 10:14
berkeley(1) 94:11
bernard(4) 92:21 92:25 273:24 287:9
bernstein(4) 2:7 64:14 64:17 64:20
berry(1) 8:17
besides(2) 41:19 75:21
best(21) 35:11 42:20 48:1 54:4 59:1 62:4 66:15 68:24 87:23 87:24 120:5 120:8 120:9 144:5 148:12 156:15 231:13 232:13 234:4 244:8 249:3

better(9) 56:14 81:14 116:3 116:7 118:5 135:13 137:13 154:8 178:12

better."(1) 56:15
between(46) 32:5 32:5 37:18 37:23 72:2 76:19 77:3 77:3 77:17 86:6 87:23 106:9 109:11 109:21 114:6 116:7 125:6 137:20 143:16 154:22 165:10 165:17 166:1 173:5 186:15 196:24 208:20 213:13 213:15 213:20 230:18 246:21 246:22 249:15 249:22 250:6 250:12 255:10 255:18 258:2 261:24 262:1 263:1 263:11 281:3 282:23

beyond(6) 55:1 55:2 278:8 280:17 280:23 280:25

bias(1) 203:16
bible(1) 92:20
bidders(1) 278:20
bids(2) 278:18 278:21
bifferato(1) 3:4
big(8) 35:21 108:5 129:14 129:15 151:23 159:1 259:16 259:17

bigger(1) 64:1
biggest(1) 215:24
billed(2) 195:20 199:20
billion(46) 40:9 40:11 41:12 41:16 44:8 78:2 82:6 110:9 113:25 114:2 115:1 133:22 144:10 150:25 153:12 163:7 163:8 163:8 163:9 163:12 164:8 164:12 167:25 167:25 169:5 171:22 173:20 173:22 173:22 174:9 174:11 174:13 174:23 178:9 179:3 209:18 211:3 215:13 215:21 218:14 219:17 220:25 221:2 234:21 280:13 280:14

billion,760(1) 218:15
billion-dollar(3) 209:14 210:16 215:14
bills(2) 240:4 241:8
binder(21) 11:12 11:13 31:13 33:14 48:21 56:4 71:24 105:21 182:7 185:16 223:3 224:23 255:20 261:2 262:15 263:24 264:11 264:12 264:13 265:9 279:19

binders(1) 43:3
bingham(1) 10:9
bit(7) 35:10 67:1 101:7 103:15 106:19 106:23 107:18 112:21 118:1 122:4 129:21 130:16 131:20 145:13 151:12 151:25 154:21 170:6 178:12 181:2 199:9 202:9 216:20 222:4 231:21 270:21 270:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**black**(72) 87:19 87:22 88:5 88:6 89:10 89:22 89:23 92:9 92:17 92:21 92:25 93:5 93:7 97:3 99:4 102:24 103:12 107:17 108:25 118:8 119:4 120:11 122:12 122:11 124:19 127:2 132:6 142:12 149:10 154:9 157:6 159:22 165:3 168:13 172:7 180:7 180:25 181:10 182:25 190:8 190:14 190:1 206:2 217:11 223:7 227:13 233:23 234:4 234:17 235:4 241:18 241:18 245:18 254:1 256:1 256:1 256:2 259:15 261:4 261:4 262:1 262:1 265:14 270:19 271:2 273:24 282:11 282:22 282:25 283:7 284:15 287:9

**black's**(3) 88:17 89:20 91:10
**blackstone**(1) 104:16
**black's**(2) 105:20 287:17
**blake**(1) 4:6
**blank**(1) 5:11
**blanket**(1) 40:19
**blending**(1) 96:2
**block**(3) 5:4 22:19 26:9
**blockage**(1) 77:9
**blocked**(1) 76:18
**blocking**(2) 77:8 134:11
**blocks**(2) 207:1 207:2
**blow**(1) 156:13
**blow-up**(1) 224:23
**bluth**(2) 198:24 198:24
**board**(8) 3:42 15:12 67:4 72:9 72:11 74:11 95:3 104:17

**bob**(2) 2:13 3:19
**bond**(1) 169:7
**bonds**(4) 21:7 27:4 27:6 84:8
**book**(5) 196:12 257:1 259:21 273:19
**books**(1) 100:7
**borrowed**(1) 122:24
**both**(36) 49:21 65:13 66:21 66:22 88:4 96:4 101:18 101:20 102:11 102:12 104:2 108:19 110:3 110:17 111:5 111:17 114:24 121:19 123:8 146:12 154:19 154:22 158:6 168:4 168:6 168:7 169:12 173:18 188:11 227:3 231:2 231:3 233:13 234:16 240:2 272:2

**bottom**(16) 49:2 72:16 100:2 171:12 171:13 171:14 210:24 228:18 237:2 237:9 238:15 256:3 256:4 256:14 256:16 262:7

**bottom-line**(3) 237:19 238:2 240:14
**bought**(1) 29:5
**bound**(4) 195:5 230:16 230:16 230:18
**bounds**(1) 230:12
**box**(2) 213:1 262:11
**boxes**(4) 257:8 259:14 259:17 262:23
**brandywine**(1) 4:7
**brass**(1) 6:47
**breach**(2) 15:3 150:12
**break**(13) 85:9 85:16 85:16 85:19 87:23 87:24 88:17 91:24 156:21 160:15 222:12 225:5 282:15

**breakdown**(1) 27:19
**brett**(1) 7:19
**brian**(2) 9:44 191:21
**bridge**(5) 19:25 28:23 32:25 34:3 100:24
**brief**(3) 57:24 188:13 284:4
**briefly**(7) 12:2 43:10 100:8 109:18 166:21 263:16 266:2

**briefs**(7) 100:10 100:11 100:11 100:11 100:20 188:10 198:13

**brigade**(2) 9:21 9:22
**bring**(9) 38:13 98:24 153:10 178:23 221:17 233:6 234:9 243:9 285:17

**bringing**(1) 138:9
**broad**(1) 32:24
**broadcasting**(4) 128:1 128:2 128:5 128:6

**broader**(1) 39:1
**broadly**(1) 175:21
**broke**(1) 225:18
**bromberg**(1) 7:30
**brothers**(1) 15:24
**brown**(2) 6:4 7:29
**browning**(1) 198:24
**bruce**(1) 4:13
**bryant**(1) 2:27
**buettell**(1) 198:25
**build**(2) 162:8 164:19
**build-up**(1) 225:19
**building**(3) 4:7 207:1 207:2
**buildup**(3) 147:3 257:4 257:5
**built**(3) 143:6 143:20 156:3
**bullet**(2) 65:5 65:6
**bump**(1) 204:11
**bumps**(2) 127:22 129:25
**bunch**(5) 96:15 100:4 116:18 158:2 250:8
**burns**(1) 6:33
**bush**(2) 3:33 5:38
**business**(18) 77:4 93:24 94:23 95:11 97:10 100:18 110:10 125:6 127:25 128:1 128:10 128:14 129:5 129:16 141:1 141:3 274:12 274:14

**businesses**(2) 128:2 128:7
**busy**(1) 201:9
**but**(285) 11:16 15:7 22:5 22:17 25:3 25:7 25:16 26:11 27:13 28:8 30:8 33:24 35:11 35:15 37:4 38:20 40:6 42:19 43:22 44:16 45:24 50:10 51:13 51:19 52:17 53:17 54:13 56:13 57:24 58:7 58:11 59:9 59:25 61:17 62:8 63:9 65:9 66:5 66:11 66:12 66:14 69:23 70:16 71:9 71:13 77:1 79:3 82:21 84:18 86:25 89:1 89:16 89:17 89:24 89:25 90:17 91:8 95:16 97:11 101:7 102:9 104:2 104:22 105:8 109:11 109:14 109:21 110:8 110:15 110:23 111:4 111:14 112:9 115:14 117:25 118:7 118:14 118:21 119:3 119:17 119:24 120:5 121:4 122:25 123:4 123:20 124:9 124:15 124:17 126:22 127:4 127:7 127:10 127:21 128:4 129:20 130:7 130:14 130:17 131:5 131:21 132:24 133:2 133:12 134:2 134:8 135:9 136:5 136:9 136:13 137:19 137:25 138:6 138:17 139:7 139:11 139:19 140:5 140:10 140:14 140:2 141:12 141:20 143:10 144:2 144:9 144:19 144:22 145:6 145:14 146:6 146:12 146:25 147:4 149:11 150:18 151:10 151:19 152:1 153:8 153:19 154:22 154:24 155:12 156:7 156:14 158:25 159:14 161:7 162:17 163:11 164:8 164:16 164:25 166:4 166:15 168:3 168:18 169:7 169:16 169:23 169:25 170:5 170:11 173:9 173:24 174:8 174:24 175:18 176:4 177:10 177:12 177:20 178:6 178:13 178:15 178:24 181:21 182:19 183:14 183:21 186:6 187:11 188:9 188:13 188:16 188:25 189:6 189:10 189:21 192:2 192:4 192:22 197:3 197:9 198:19 199:13 199:14 201:8 203:4 203:11 205:5 206:23 207:19 209:25 211:2 212:12 212:17 212:21 213:1 213:20 215:7 216:7 216:9 217:11 218:8 222:12 222:15 223:19 226:10 226:19 227:10 229:23 230:6 230:18 232:1 232:12 236:21 236:21 236:23 237:13 237:14 237:15 238:10 238:13 238:21 239:1 240:6 240:12 240:19 241:14 241:18 241:19 243:18 244:18 244:23 245:20 246:4 246:2 247:11 247:25 248:5 248:15 251:7 252:3 252:9 252:12 253:19 256:6 259:19 260:1 260:6 263:7 263:11 264:7 266:2 267:2 267:14 267:21 268:2 272:1 276:11 277:15 279:10 279:11 279:22 282:11 283:19 284: 284:13 284:23 285:1 285:5 285:17 285:23

**buy**(1) 47:20

**buyout**(8) 57:11 95:1 99:10 100:5 101:20 114:7 133:5 197:20

**buyouts**(7) 96:11 96:14 97:15 97:16 99:11 99:13 132:16

**bynum**(1) 7:36
**bypass**(2) 212:17 212:18
**bypassing**(1) 218:7
**c's**(1) 208:8
**c-1**(2) 208:5 214:12
**c-2**(2) 208:5 221:14
**calculate**(3) 113:4 113:13 113:17
**calculation**(1) 116:14
**calculator**(2) 232:11 232:24
**calendar**(1) 194:13
**california**(1) 94:10
**call**(43) 13:12 29:22 58:10 71:20 71:22 73:12 74:9 74:12 75:24 95:17 95:24 102:7 102:10 105:9 108:12 108:13 110:22 111:7 112:2 118:13 121:12 122:14 127:5 137:1 140:6 147:1 156:3 157:21 174:21 184:22 191:17 192:20 202:1 205:14 212:17 237:22 245:20 247:22 261:7 268:1 273:9 282:12 284:4

**called**(12) 22:10 22:13 54:10 95:1 95:12 96:1 98:13 109:14 124:20 235:23 271:25 273:16

**calling**(1) 86:16
**calls**(9) 111:8 43:22 63:6 121:13 123:10 121:12 123:13 139:5 141:22

**came**(13) 15:19 19:12 43:11 75:6 81:19 143:19 143:20 192:17 194:2 201:12 254:5 256:21 279:8

**can**(160) 12:2 13:2 18:9 19:6 20:7 20:19 20:19 20:24 23:4 24:6 26:25 30:12 31:18 34:16 36:7 37:7 45:10 45:13 45:14 45:22 50:25 52:11 56:6 58:8 61:3 64:5 64:23 68:1 68:24 69:15 73:11 75:7 75:10 75:14 80:2 80:24 81:12 81:13 82:18 83:4 83:19 84:15 85:6 85:16 89:13 89:17 90:17 91:15 91:15 91:23 92:9 92:10 92:14 98:2 103:13 103:14 104:6 104:7 104:7 106:1 106:8 107:17 108:8 108:11 109:17 109:19 110:2 114:21 122:3 122:14 123:17 124:14 124:15 124:18 127:2 128:19 129:21 128:23 138:25 145:1 145:15 148:25 150:4 153:11 155:23 159:9 160:2 160:4 161:7 161:22 162:16 162:24 163:16 164:19 164:25 169:25 175:24 176:11 179:4 179:2 179:25 185:24 190:1 190:8 193:24 202:3 199:21 201:9 201:10 204:18 205:18 213:2 215:10 216:20 218:21 219:4 222:15 222:1 223:21 224:13 224:23 224:25 227:7 228:1 229:10 230:13 230:15 239:9 244:10 250:1 251:10 251:23 254:19 257:7 259:21 260:13 263:13 263:14 263:17 265:24 267:14 268:19 268:21 270:15 271:9 273:1 273:19 282:3 282:13 282:18 283:14 283:1 283:21 284:18 285:1

**can't**(6) 40:16 75:8 76:1 89:8 236:24 276:16

**candidates**(4) 69:23 74:7 74:8 74:14
**cannot**(1) 268:22
**cantor**(1) 6:37
**canyon**(1) 10:42
**can't**(7) 68:12 112:17 132:15 133:6 134:1 147:4 151:2

**capacity**(1) 13:19

**capital**(33) 2:19 6:12 6:27 6:27 6:32 6:32 8:4 8:9 8:10 9:17 9:18 9:21 9:22 9:38 9:39 9:51 9:51 10:24 10:25 102:5 123:13 126:17 184:19 205:9 205:12 205:13 227:2 234:14 245:15 246:1 246:10 253:4 266:24

**capped**(2) 164:1 215:3
**capture**(3) 111:7 111:12 208:21
**career**(2) 94:23 95:22
**careful**(2) 30:19 59:14
**carefully**(2) 248:3 248:5
**carey**(1) 1:18
**caridas**(1) 5:41
**carikoff**(1) 5:12
**carmel**(1) 12:5
**carol**(1) 6:29
**carry**(4) 169:3 252:19 282:9 285:1
**case**(154) 1:5 10:29 11:13 53:18 63:21 65:18 80:17 95:24 98:5 99:15 99:22 100:12 100:21 101:18 101:19 102:18 104:14 105:13 107:3 108:16 118:12 118:17 118:18 118:21 118:24 118:25 119:12 122:16 123:19 126:14 126:19 126:19 126:25 130:20 131:17 132:6 132:8 133:1 134:25 135:6 135:8 136:2 136:11 137:8 137:9 138:14 138:21 138:25 139:2 141:15 142:16 142:23 144:13 149:7 149:7 149:10 149:11 150:18 152:7 153:18 154:11 154:12 154:14 154:21 154:22 155:8 157:11 160:19 161:25 166:4 168:13 173:6 173:7 175:9 178:8 179:6 181:10 181:14 184:18 187:20 190:13 190:14 190:16 191:19 194:20 196:1 205:10 205:11 205:15 205:16 213:25 214:2 216:22 219:25 220:9 220:24 227:11 227:16 228:8 228:14 230:23 232:14 233:11 233:23 234:4 234:18 235:4 235:4 235:6 235:6 237:21 239:5 240:4 240:5 241:2 241:18 241:20 242:24 243:25 244:2 244:4 245:7 245:18 246:8 246:11 247:9 249:9 249:13 250:21 254:20 254:23 256:1 256:1 256:2 256:2 257:5 259:6 261:4 261:4 261:4 261:24 261:25 262:1 262:1 263:16 270:19 271:12 271:13 272:5 273:17 275:23 279:16 283:4 284:1

**cases**(84) 18:20 28:3 28:21 29:3 29:7 40:22 57:9 64:18 82:24 98:22 100:3 100:4 100:5 100:7 118:14 118:14 119:6 120:19 120:23 120:24 121:1 121:7 123:20 123:21 126:18 129:20 132:2 132:15 132:25 134:8 147:2 147:6 147:8 147:22 148:6 149:7 149:18 168:16 181:25 184:6 185:3 185:15 190:14 193:3 205:9 205:14 206:11 216:4 222:21 229:6 230:12 231:14 232:23 232:23 234:6 234:8 237:18 238:4 239:25 240:16 240:16 240:22 245:19 247:10 250:2 257:9 259:3 259:4 259:7 259:8 259:9 259:15 261:4 262:17 262:18 263:2 263:8 263:10 265:13 270:22 270:25 271:6 271:8 279:7

**cash**(16) 31:21 34:7 34:19 37:9 97:8 123:10 124:2 129:24 130:21 142:4 143:18 144:22 155:19 205:12 232:2 241:12

**cash-flow**(68) 102:3 102:4 102:7 102:8 102:10 121:17 121:18 123:12 124:3 124:3 124:5 124:10 127:5 127:19 127:20 127:20 127:21 127:23 128:14 129:1 129:1 129:24 130:8 130:9 130:21 131:7 139:25 140:1 140:15 140:15 140:16 140:19 141:5 141:7 146:8 229:22 229:23 230:14 231:3 232:3 233:9 234:10 234:18 234:22 234:25 239:25 240:1 240:4 240:5 240:8 240:9 240:9 241:7 241:8 241:12 245:21 245:22 245:22 246:14 246:16 246:17 246:25 247:6 247:6 252:5 252:9 252:12 252:16 274:24

**cast**(1) 258:10
**categories**(3) 227:22 236:24 236:25
**categorize**(1) 110:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| category(5) 125:13 133:13 151:23 257:21 258:5 | | charts(3) 148:2 248:19 272:13 | | close(24) 41:5 46:14 92:23 113:16 131:2 139:19 140:6 144:8 144:9 144:11 146:8 153:24 155:24 169:7 173:22 186:23 196:2 236:21 236:22 237:14 238:7 247:18 254:20 281:22 | | communication(3) 77:3 77:5 77:6 | |
| catherine(1) 5:5 | | chase(7) 9:4 11:7 11:9 11:24 153:10 153:13 153:14 | | | | communications(5) 29:14 55:11 59:16 76:19 77:2 | |
| causal(3) 98:18 98:21 99:3 | | | | | | companies(4) 13:14 94:25 97:9 204:17 | |
| cause(4) 74:1 171:4 180:8 200:7 | | chased(1) 153:19 | | | | company(47) 1:7 4:46 6:46 6:46 7:24 7:35 14:21 14:25 15:17 17:10 22:9 26:19 35:12 42:20 47:18 49:19 49:20 49:23 53:1 54:2 54:10 54:16 54:19 67:18 68:5 70:3 70:23 73:5 95:1 101:15 191:12 191:25 193:1 193:4 193:8 193:17 194:17 194:23 204:10 205:2 205:10 234:13 235:22 274:17 275:8 275:11 280:14 | |
| causes(6) 18:21 37:8 57:10 58:15 58:24 59:2 | | chasing(1) 153:19 | | closed(14) 46:3 46:15 46:15 47:18 50:6 50:24 50:25 54:3 54:7 54:17 57:5 274:6 274:9 276:24 | | | |
| | | check(6) 50:10 51:1 89:13 89:17 199:21 257:2 | | | | | |
| caution(2) 55:10 55:12 | | | | | | | |
| cell(2) 146:19 262:22 | | checked(1) 194:13 | | closely(1) 104:11 | | | |
| cells(3) 146:21 147:2 262:23 | | checking(1) 261:10 | | closer(3) 19:25 183:1 220:25 | | | |
| centerbridge(10) 19:5 19:13 20:5 20:6 20:22 24:21 24:23 63:16 63:16 76:20 | | checks(4) 158:18 159:2 209:20 214:24 | | closest(2) 268:1 275:22 | | company's(8) 53:14 54:21 73:6 182:3 187:10 204:21 240:3 278:8 | |
| | | chicago(4) 1:29 3:45 4:49 5:8 | | closing(4) 14:17 53:10 273:6 273:12 | | | |
| centerbridge's(1) 29:6 | | choice(2) 207:14 219:3 | | closure(1) 201:2 | | comparable(1) 148:20 | |
| central(2) 118:3 123:4 | | choices(2) 158:16 158:16 | | co-author(1) 96:12 | | compare(4) 36:23 37:1 41:24 117:14 | |
| cents(4) 31:25 35:3 84:8 174:15 | | choose(2) 67:6 67:8 | | co-chairs(1) 15:24 | | compared(1) 256:15 | |
| ceo(7) 69:23 69:25 71:5 73:3 74:7 74:11 74:15 | | chose(1) 278:17 | | co-presidents(1) 70:12 | | compares(1) 35:14 | |
| | | chosen(1) 67:10 | | cobb(2) 3:25 5:44 | | comparing(1) 35:14 | |
| certain(10) 19:2 21:5 21:24 26:19 26:20 44:4 88:6 88:13 91:18 231:19 | | chronologically(1) 94:8 | | code(16) 123:10 123:12 123:13 126:12 126:17 133:5 165:8 181:18 181:21 181:25 181:25 239:7 239:8 239:8 239:14 239:19 | | comparison(4) 115:14 258:3 259:18 262:1 | |
| | | chronology(1) 57:2 | | | | compensated(1) 195:17 | |
| | | chung(2) 2:24 6:43 | | | | compiling(1) 199:7 | |
| certainly(27) 40:15 40:15 43:5 61:24 62:1 69:24 85:7 86:10 96:5 97:12 98:11 130:5 138:8 161:4 165:6 189:19 190:20 192:4 202:17 204:18 216:2 226:12 229:12 234:1 278:10 282:5 284:16 | | chunk(1) 151:11 | | cole(1) 1:32 | | complaint(5) 58:15 58:19 200:12 200:13 200:17 | |
| | | cinch(1) 121:15 | | collapse(3) 121:13 122:17 123:25 | | | |
| | | circuit(4) 94:16 100:6 132:16 179:6 | | collect(7) 110:5 112:5 163:16 163:19 166:25 214:20 215:4 | | | |
| | | circuitous(1) 179:14 | | | | complaints(10) 100:24 101:2 199:22 200:4 200:5 200:8 200:10 200:10 200:14 201:7 | |
| | | circumstances(6) 128:16 130:5 231:19 246:23 246:24 252:11 | | collectable(1) 210:14 | | | |
| certification(1) 286:16 | | | | collected(1) 221:9 | | complete(1) 130:12 | |
| certify(1) 286:17 | | cites(1) 268:7 | | collecting(3) 174:14 214:23 214:25 | | completed(3) 89:1 121:15 247:23 | |
| cetera(1) 73:6 | | citi(1) 152:18 | | collective(1) 237:16 | | complicated(2) 101:19 211:4 | |
| chabraja(1) 93:11 | | citibank(3) 7:39 104:17 152:10 | | college(2) 12:6 12:7 | | component(8) 20:15 25:8 32:1 35:4 84:9 169:12 169:13 202:13 | |
| chachas(2) 284:22 284:23 | | claim(27) 32:13 63:16 76:19 78:2 82:9 82:10 115:17 118:2 163:18 163:25 164:1 178:19 188:17 210:16 210:20 211:16 212:11 215:4 218:21 219:14 219:17 220:1 220:20 220:22 221:1 229:18 231:20 | | color(1) 93:5 | | | |
| chad(1) 10:11 | | | | columbia(2) 94:5 94:21 | | components(1) 38:20 | |
| chadbourne(6) 3:12 5:23 17:7 17:8 18:23 19:2 | | | | column(11) 115:13 116:13 134:21 134:24 134:25 136:20 162:3 190:13 213:1 227:13 255:2 | | comprised(1) 143:9 | |
| | | | | | | computation(2) 207:3 256:11 | |
| | | | | combination(3) 147:6 193:15 228:19 | | compute(1) 113:24 | |
| chain(2) 48:25 95:2 | | claims(96) 16:5 16:10 16:11 16:17 16:20 17:1 17:18 18:1 19:10 19:11 19:13 19:15 20:6 20:17 21:8 25:5 27:7 32:3 32:10 32:11 32:11 32:14 32:15 32:22 34:8 36:19 38:4 38:7 38:10 38:12 38:15 39:3 39:17 40:2 43:12 43:14 43:24 44:4 44:7 44:11 44:14 44:14 57:13 61:22 66:3 70:4 77:18 77:22 78:6 78:19 78:22 80:2 80:4 80:5 80:7 80:9 80:12 80:18 80:20 82:3 82:6 90:21 103:1 103:19 103:22 105:2 105:5 105:8 114:24 150:7 150:10 150:11 150:16 153:6 174:2 174:9 174:12 179:2 179:2 181:18 189:17 191:3 193:10 199:25 200:2 200:3 210:23 210:24 211:15 221:12 267:1 267:20 271:19 272:13 272:15 272:17 | | combine(4) 206:19 206:21 241:23 262:16 | | computing(2) 98:10 98:11 | |
| chair(1) 95:4 | | | | combined(24) 65:8 65:12 146:14 175:9 220:4 220:8 228:18 229:8 229:9 230:17 230:25 231:1 232:14 241:22 253:14 254:3 255:8 255:16 255:16 255:17 257:25 258:6 263:10 263:11 | | conaway(1) 4:4 | |
| chaired(1) 93:23 | | | | | | conceivably(1) 216:22 | |
| chairman(3) 72:19 72:20 72:23 | | | | | | concentrate(1) 129:13 | |
| chairs(1) 15:23 | | | | | | concept(6) 121:12 121:25 123:18 123:23 124:12 226:8 | |
| challenging(1) 273:10 | | | | | | | |
| champaign(1) 193:23 | | | | come(33) 15:15 17:10 18:19 19:24 42:9 59:24 60:20 87:22 102:6 108:1 108:8 109:21 110:24 112:10 112:10 112:13 114:7 120:13 120:15 120:17 136:8 148:13 148:14 151:18 165:15 165:16 218:18 230:16 232:13 235:14 244:7 245:16 284:1 | | concerned(11) 15:2 22:17 26:8 29:24 30:1 42:15 53:13 62:6 62:17 66:17 118:16 | |
| chance(40) 135:22 136:2 137:22 137:22 138:20 139:14 139:10 139:13 139:15 140:1 140:21 140:23 142:6 142:11 142:22 143:7 143:12 143:13 144:5 144:6 151:3 152:16 153:8 154:7 165:12 165:13 166:24 168:13 175:19 214:23 217:6 217:12 227:18 242:2 243:4 250:12 251:1 251:7 257:20 270:5 | | clarification(2) 68:7 192:7 | | | | | |
| | | clarified(1) 106:2 | | | | concerning(5) 43:14 46:9 62:22 62:24 63:2 | |
| | | clarify(1) 68:16 | | | | concerns(1) 14:25 | |
| | | clarity(1) 208:8 | | comes(10) 89:20 99:13 136:10 136:23 173:19 174:7 176:12 210:8 237:13 284:22 | | conclude(1) 144:15 | |
| | | clark(1) 5:7 | | | | concluding(1) 130:10 | |
| chances(3) 115:22 146:6 146:7 | | clarke(7) 96:6 97:18 98:1 108:9 206:6 209:10 273:10 | | comfort(1) 172:4 | | conclusion(12) 55:8 55:21 55:25 86:16 100:2 130:3 228:9 237:19 238:2 238:6 242:8 242:18 | |
| chaney(1) 10:43 | | | | comfortable(7) 96:5 96:5 97:12 99:8 99:10 195:8 276:21 | | | |
| change(25) 106:22 128:8 156:14 156:15 159:19 159:20 162:3 162:5 162:9 162:18 163:9 163:10 167:19 167:20 168:22 169:22 171:4 177:21 177:22 177:23 180:9 195:6 254:7 264:2 265:2 | | classes(3) 87:11 113:5 150:7 | | | | | |
| | | classic(2) 116:2 273:9 | | coming(8) 96:25 98:19 134:10 136:5 137:21 170:12 177:15 252:7 | | conclusions(15) 103:13 141:5 182:21 182:22 228:4 229:17 229:19 233:6 236:19 237:2 237:13 240:15 240:20 247:12 271:5 | |
| | | cleanly(1) 283:13 | | | | | |
| | | clear(22) 83:22 87:2 101:8 112:25 132:8 152:15 152:22 176:11 186:11 188:18 189:10 207:6 209:13 218:16 220:11 226:1 226:18 236:6 236:6 236:7 236:13 281:21 | | comment(1) 282:13 | | | |
| | | | | comments(1) 250:4 | | concrete(6) 40:8 40:16 40:21 40:24 41:2 105:4 | |
| changed(17) 42:10 106:22 133:10 157:22 157:23 159:24 162:10 169:18 194:21 205:1 254:10 257:8 259:15 262:23 263:1 264:7 265:2 | | | | commercial(3) 14:4 14:6 95:7 | | | |
| | | | | commissioner(1) 94:20 | | conditions(1) 215:6 | |
| | | | | committee(58) 3:11 3:41 5:22 15:16 15:19 15:20 15:21 15:23 15:25 16:1 16:4 16:8 16:16 16:20 16:21 17:4 17:6 17:11 17:18 17:25 18:10 18:13 18:14 19:2 19:3 20:23 27:15 28:23 32:25 33:9 38:24 57:14 58:15 58:18 58:23 59:3 59:20 59:20 61:6 61:21 72:11 78:9 95:4 95:10 95:10 101:2 104:18 152:10 197:19 197:25 200:1 200:15 201:6 248:14 271:14 278:16 | | conduct(3) 177:19 177:20 226:23 | |
| | | clearly(3) 177:4 238:23 244:5 | | | | conducted(2) 18:5 197:5 | |
| changes(10) 91:18 106:9 249:5 254:22 255:1 257:11 258:9 259:3 262:20 263:6 | | cleary(1) 4:6 | | | | confer(1) 85:6 | |
| | | clerk(7) 11:2 92:16 92:19 92:22 93:1 93:3 93:6 | | | | conference(1) 284:4 | |
| | | | | | | conferred(3) 28:6 160:15 184:16 | |
| channels(1) 163:16 | | | | | | confess(1) 23:20 | |
| chapter(1) 1:8 | | clerked(1) 94:15 | | | | confidence(5) 182:21 243:14 243:24 244:24 245:6 | |
| characterize(1) 267:18 | | client(2) 43:14 135:13 | | | | | |
| characterized(1) 266:11 | | clip(1) 244:10 | | | | confident(4) 153:25 154:1 154:2 157:19 | |
| chart(19) 108:21 108:24 114:14 117:2 119:5 122:17 136:1 148:25 155:3 155:6 159:17 159:20 162:22 166:18 222:2 225:12 249:11 251:13 | | clock(2) 194:8 283:16 | | committee's(1) 16:19 16:25 18:16 | | confidential(2) 186:5 186:12 | |
| | | | | common(3) 76:18 76:25 158:17 | | confidentiality(1) 30:9 | |
| | | | | | | confirmation(2) 29:19 195:1 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| confirming(1) 162:14 | | conveyance(8) 97:17 97:21 97:22 99:10 99:12 104:25 111:12 153:18 | | counsel(22) 17:4 17:11 24:6 28:6 53:24 54:12 54:15 55:11 64:17 70:19 77:14 85:12 94:20 118:18 119:13 135:7 135:12 137:12 147:14 191:15 202:3 254:22 | | creditor(6) 37:17 100:23 108:9 113:5 192:25 206:5 | |
| conflict(1) 16:8 | | | | | | | |
| conflicts(1) 16:1 | | conveyed(5) 59:3 59:10 59:20 60:11 61:7 | | | | creditors(67) 3:12 5:23 15:16 15:18 20:11 20:13 20:23 31:19 31:22 31:23 31:25 32:24 33:9 35:3 35:18 36:24 42:9 58:14 58:18 58:23 59:3 59:8 59:20 59:23 61:6 61:21 61:25 62:5 62:11 62:14 78:9 83:15 83:19 84:4 84:5 84:7 84:14 84:14 86:19 87:1 87:11 95:5 97:20 101:2 103:23 103:25 111:10 111:16 112:10 112:11 130:2 130:11 134:1 164:6 170:19 172:6 174:14 174:24 178:25 182:4 197:19 197:24 200:15 201:5 212:4 235:22 267:22 | |
| confront(1) 158:16 | | convince(2) 22:3 91:16 | | | | | |
| confusing(1) 63:18 | | convincing(2) 22:6 138:1 | | count(17) 121:16 122:21 122:22 122:23 124:4 125:18 126:17 126:20 126:24 127:9 127:10 155:17 155:19 169:11 172:17 202:14 238:25 | | | |
| confusion(1) 208:8 | | cooperate(2) 18:16 23:10 | | | | | |
| congress(1) 133:10 | | cooperstown(2) 10:24 10:25 | | | | | |
| conjunction(1) 231:16 | | copied(2) 64:15 259:12 | | | | | |
| conlan(2) 1:24 64:14 | | copy(6) 31:15 190:1 259:22 260:16 260:17 261:1 | | counted(3) 126:16 169:12 239:2 | | | |
| connection(15) 45:21 61:22 88:9 100:21 107:19 159:4 165:10 165:17 183:10 185:9 201:24 216:9 223:18 262:2 273:8 | | | | counter-argument(1) 124:15 | | | |
| | | | | counterclaims(1) 101:23 | | creditors'(1) 60:7 | |
| | | core(2) 40:21 97:6 | | counting(1) 153:23 | | | |
| | | corning(1) 179:6 | | country(1) 285:11 | | credits(27) 12:18 12:22 12:24 13:2 13:6 13:7 13:11 13:19 13:25 14:9 14:14 14:18 44:18 44:21 44:22 44:24 45:17 45:19 45:21 45:23 45:23 45:24 46:2 47:22 48:15 49:25 50:14 | |
| connectivity(1) 246:21 | | corporate(16) 94:17 96:6 96:7 96:7 96:11 96:13 96:16 97:16 97:20 98:1 150:15 151:4 182:17 182:18 182:18 185:5 | | counts(3) 127:12 144:16 202:11 | | | |
| consensus(1) 27:22 | | | | couple(22) 13:5 16:15 18:12 18:14 20:4 23:14 28:5 30:23 31:3 39:4 42:14 75:1 83:9 85:25 98:25 121:4 157:11 161:24 263:10 263:12 284:17 284:21 | | | |
| conser(1) 271:20 | | | | | | | |
| conservative(5) 117:8 153:1 271:21 271:24 272:3 | | | | | | | |
| | | corporations(1) 97:18 | | coupon(1) 169:7 | | | |
| | | correct(123) 44:22 46:5 49:9 50:25 51:4 52:21 53:16 56:10 58:3 67:9 70:23 77:23 77:25 83:11 106:7 106:16 181:13 181:15 181:16 181:19 181:25 183:6 183:18 184:7 188:1 192:10 192:14 192:16 193:18 194:1 195:25 197:7 197:11 197:15 198:7 201:25 203:18 206:7 206:13 209:11 209:16 209:22 209:23 210:1 210:6 211:10 211:22 212:8 212:9 213:23 216:24 217:3 217:8 217:21 218:19 218:23 220:23 222:21 222:25 223:16 224:6 226:4 227:4 227:9 227:15 227:19 227:21 227:22 228:4 228:15 228:18 228:24 229:3 229:4 229:10 229:15 230:5 230:25 233:18 233:20 234:11 235:6 235:9 235:12 236:17 239:10 239:16 239:19 241:20 242:4 242:16 244:3 246:6 247:13 247:14 247:19 251:8 254:8 254:16 256:12 262:8 263:20 265:14 266:13 266:15 268:8 268:18 272:8 272:10 273:4 273:5 274:7 274:13 274:19 275:6 275:13 276:2 276:12 276:25 277:1 278:24 279:14 286:17 | | | | criticized(3) 48:8 48:10 51:7 | |
| consider(8) 103:23 207:24 213:10 233:10 233:12 233:15 234:12 235:10 | | | | | | | |
| | | | | couri(1) 10:26 | | cross(12) 35:15 42:23 42:24 43:25 79:15 79:22 81:4 81:4 122:10 285:4 285:5 287:3 | |
| | | | | course(8) 97:8 97:11 99:15 194:14 196:16 201:17 249:8 277:22 | | | |
| consideration(7) 31:19 39:17 78:4 78:20 78:23 79:2 79:4 | | | | | | | |
| | | | | courses(2) 97:9 98:15 | | cross-exam(1) 222:3 | |
| considerations(1) 79:9 | | | | court(182) 1:1 11:3 11:10 11:14 11:17 13:1 24:11 25:10 25:22 26:25 28:2 28:10 28:14 28:16 29:22 30:3 30:8 30:22 34:14 36:6 36:10 36:15 36:18 40:13 40:15 42:19 40:23 41:1 41:3 41:5 41:7 42:23 43:2 43:5 43:13 43:18 43:21 51:24 52:3 54:25 55:3 55:13 55:16 60:19 61:2 65:18 69:5 74:4 76:4 77:12 79:15 79:17 81:2 82:14 83:2 83:24 84:1 85:7 85:10 85:15 85:19 85:24 87:14 87:17 88:1 88:3 88:12 89:7 89:11 90:4 90:9 91:24 92:1 92:1 92:10 92:12 92:16 93:4 94:16 103:3 103:8 105:22 106:8 107:8 107:10 107:13 147:11 147:17 153:9 156:11 156:20 156:23 157:1 160:22 160:24 161:12 161:14 161:16 161:19 161:22 170:10 170:16 176:16 176:19 176:19 179:22 180:2 180:4 180:19 180:22 181:4 182:25 183:3 183:10 187:9 191:3 194:7 199:21 199:23 200:24 204:15 205:22 205:24 207:22 209:2 211:14 211:12 212:13 212:14 218:17 219:6 219:9 220:1 222:2 222:5 222:8 222:11 222:15 224:13 224:16 224:16 224:20 225:3 225:7 225:15 226:22 235:14 245:5 246:25 256:4 256:6 258:16 258:19 260:22 261:7 261:14 261:16 261:19 264:10 264:13 264:18 269:275:19 281:23 281:25 282:5 282:13 282:17 282:21 283:3 283:8 283:11 284:10 285:8 285:20 285:25 286:1 286:9 286:12 286:12 | | cross-examination(2) 180:19 180:23 | |
| considered(9) 38:24 38:24 61:24 69:23 157:24 157:24 158:2 183:16 219:17 | | | | | | crowded(1) 11:17 | |
| | | | | | | crunching(1) 235:25 | |
| | | | | | | current(8) 12:16 18:14 23:8 42:16 50:11 50:14 68:4 93:10 | |
| considers(2) 239:25 244:19 | | | | | | | |
| consistent(12) 60:17 146:20 159:12 186:8 226:19 240:7 240:13 244:20 245:4 245:25 259:10 278:3 | | | | | | | |
| | | | | | | currently(3) 11:23 70:12 72:20 | |
| | | | | | | cushion(38) 102:4 102:9 102:10 121:18 123:12 124:3 127:20 127:20 127:24 129:2 129:25 130:9 130:22 131:8 140:1 140:16 140:19 141:7 145:5 145:7 205:13 229:23 230:14 231:3 232:3 234:23 234:25 240:1 240:5 240:9 241:8 241:13 245:22 245:22 246:14 246:17 246:25 247:6 | |
| consolidation(2) 179:5 179:7 | | corrections(3) 88:6 90:15 90:19 | | court's(1) 283:13 | | | |
| constituents(1) 28:21 | | correctly(5) 212:2 213:16 240:23 257:3 278:25 | | courtney(1) 9:27 | | | |
| constitutes(1) 184:15 | | | | courtroom(4) 1:10 119:8 283:25 284:5 | | | |
| constraints(1) 99:12 | | | | courts(1) 102:6 | | | |
| construction(1) 14:2 | | correlated(10) 165:5 241:5 241:24 243:13 243:13 243:18 243:18 245:17 246:6 246:2 | | covenant(1) 153:23 | | | |
| constructive(4) 133:6 239:12 244:17 | | | | cover(2) 96:14 96:14 | | cushioned(1) 102:8 | |
| constructively(1) 107:1 | | | | covered(1) 211:13 | | cut(1) 256:4 | |
| consultation(2) 191:1 282:19 | | correlation(5) 239:6 241:3 243:20 243:20 246:22 | | covering(1) 186:16 | | cutler(2) 6:20 10:33 | |
| consulted(1) 189:9 | | | | crazy(1) 52:8 | | cuts(1) 204:19 | |
| contact(1) 47:18 | | | | created(1) 272:5 | | cutting(1) 89:22 | |
| contain(1) 90:21 | | correlations(1) 98:11 | | creates(1) 116:17 | | cycle(1) 52:8 | |
| contained(1) 248:18 | | correspondence(1) 198:15 | | creative(1) 101:23 | | do  (4) 150:20 151:12 153:25 272:18 | |
| contemplated(1) 275:24 | | correspondingly(1) 281:15 | | credence(1) 167:9 | | d-e-f(1) 263:10 | |
| contemplates(1) 271:15 | | corroon(1) 2:31 | | credentials(1) 203:12 | | d-plus(1) 174:21 | |
| contemplating(1) 193:8 | | costs(1) 151:10 | | credible(2) 236:23 238:13 | | d.c(1) 94:15 | |
| contentious(1) 42:2 | | could(87) 24:21 29:22 35:15 43:4 52:25 62:19 73:8 73:9 76:22 82:23 93:10 105:4 118:8 119:5 123:4 128:11 130:6 130:8 130:21 134:25 135:5 136:14 138:22 144:2 145:5 147:15 149:23 152:8 154:8 154:10 157:7 159:15 162:21 166:19 166:21 168:7 177:18 177:20 179:8 182:6 182:14 185:16 188:11 194:21 196:10 196:12 207:22 208:13 208:23 210:15 214:7 214:19 214:2 214:21 216:21 221:9 222:5 222:3 224:14 226:22 228:13 230:16 233:2 233:4 234:25 239:3 240:3 242:11 249:10 254:13 254:17 262:14 262:18 263:23 268:16 269:17 269:22 270:6 272:15 277:10 277:12 277:1 278:8 278:19 278:20 279:11 282:18 | | credit(34) 4:4 6:15 10:33 13:4 14:5 14:6 15:5 21:1 21:5 21:24 22:18 28:24 44:21 44:25 45:18 45:20 46:21 47:2 48:3 48:3 48:4 48:7 48:8 48:10 48:19 50:1 56:10 56:17 81:10 81:14 112:12 145:24 146:2 167:6 | | daniel(4) 2:1 3:27 6:37 6:39 | |
| contested(1) 283:18 | | | | | | data(5) 1:41 98:9 158:15 158:15 158:22 | |
| context(2) 41:21 63:12 | | | | | | date(11) 74:20 76:2 164:3 188:14 188:16 188:18 193:20 194:12 195:20 274:4 286:23 | |
| continue(6) 69:25 119:4 165:15 251:25 278:8 278:17 | | | | | | | |
| | | | | | | dated(6) 49:3 64:10 73:16 274:6 274:8 278:25 | |
| continued(15) 2:2 3:2 4:2 5:2 6:2 7:2 8:2 9:2 10:2 20:2 100:19 157:24 192:15 192:19 195:7 | | | | | | | |
| | | | | | | dave(1) 7:7 | |
| continues(1) 50:23 | | | | court's(1) 283:13 | | david(9) 2:20 3:13 4:23 4:29 4:35 5:12 8:40 10:17 90:10 | |
| continuing(2) 167:17 198:22 | | | | | | | |
| continuum(2) 228:4 236:19 | | | | | | | |
| contract(3) 214:15 214:21 214:24 | | | | | | davis(5) 2:4 7:40 9:14 11:6 90:5 | |
| contrarian(2) 9:38 9:39 | | | | | | day(22) 3:42 14:11 14:11 15:8 50:6 50:23 51:10 56:16 88:5 88:7 88:8 90:17 109:22 116:9 119:14 209:2 232:12 254:5 282:14 285:2 285:12 286:10 | |
| contrast(3) 117:22 228:12 228:25 | | | | | | | |
| contrasted(1) 265:13 | | | | | | | |
| convenient(1) 282:14 | | | | | | | |
| conversation(15) 29:16 29:17 29:20 67:16 69:8 70:5 70:16 71:4 71:9 73:23 74:2 74:17 74:20 75:14 75:17 | | | | | | | |
| | | | | | | day-to-day(1) 13:13 | |
| | | | | | | days(2) 189:24 191:7 | |
| conversations(16) 22:3 24:20 30:5 53:16 53:21 54:1 67:22 68:3 68:11 68:20 69:21 70:2 74:21 75:9 194:4 283:5 | | | | | | dbtca(1) 4:21 | |
| | | couldn't(4) 27:14 225:7 239:1 249:13 | | | | | |
| | | couldn't(1) 127:8 | | | | | |
| conversely(4) 135:11 136:3 138:10 140:18 | | council(2) 70:14 70:22 | | | | | |
| convert(1) 169:13 | | | | | | | |
| convey(5) 60:7 60:12 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**dcl(55)** 11:8 11:18 31:12 33:15 34:13 34:14 34:17 35:9 35:17 36:25 39:5 39:5 39:9 44:15 67:1 80:3 83:10 84:4 84:10 86:18 100:22 103:1 103:19 103:22 105:21 107:11 107:14 115:13 115:25 116:5 116:6 116:13 116:17 116:21 117:3 117:22 117:2 118:4 148:10 149:5 149:11 149:12 149:19 149:20 163:11 171:15 171:16 171:19 171:2 172:2 178:16 180:11 181:17 215:11 287:15

**dead(2)** 121:15 271:5
**deal(26)** 16:7 25:7 26:14 26:24 38:20 38:21 38:22 39:11 47:1 59:9 59:10 62:17 66:15 78:10 78:16 78:16 81:17 109:23 110:8 118:22 125:1 144:13 145:4 145:8 152:13 168:5
**dealing(1)** 174:22
**deals(3)** 204:16 265:17 267:9
**dealt(3)** 47:19 187:6 187:17
**dearborn(1)** 1:28
**debating(4)** 51:12 52:15 53:6 53:11
**debenture(4)** 3:4 10:14 19:4 20:22
**deborah(1)** 2:22
**debt(78)** 29:6 42:9 47:20 51:21 64:2 82:18 82:19 110:9 114:5 114:6 121:16 122:21 122:23 122:23 124:4 124:5 125:5 125:18 125:20 126:11 130:23 140:9 167:1 167:3 167:5 167:9 167:10 167:16 169:2 169:6 169:6 169:12 169:17 170:15 173:21 174:4 174:11 174:19 174:20 174:24 175:11 175:18 178:1 178:3 178:6 178:14 208:12 208:15 208:16 208:18 208:19 212:11 212:11 212:17 212:18 213:8 213:17 213:25 214:2 215:1 215:18 217:24 217:24 218:2 218:9 218:9 218:12 218:14 218:17 218:17 226:2 227:3 268:18 269:19 280:13 280:15 281:10

**debtor(8)** 18:4 20:22 28:23 62:13 62:17 92:5 192:25 271:4
**debtor's(1)** 254:22
**debtors(15)** 1:12 1:23 19:18 19:20 20:3 31:7 33:8 34:10 39:23 40:9 41:12 62:22 76:20 192:9 248:14
**debts(6)** 48:15 123:11 128:15 227:2 245:16 253:5

**december(9)** 14:17 14:20 46:7 46:14 46:16 49:3 52:13 102:12 123:2

**decent(1)** 141:22
**decide(14)** 108:6 109:24 110:15 110:25 111:8 126:24 129:16 129:17 145:6 170:10 170:17 170:17 179:12 212:16
**decided(4)** 94:12 107:4 129:24 178:6
**deciding(1)** 98:4
**decision(1)** 15:11 15:13 17:19 66:20 106:21 169:1 183:23 184:3 207:19 232:5 258:12
**decision-tree(4)** 97:23 97:25 98:2 98:3
**decisions(1)** 118:25
**declaration(9)** 273:16 273:19 273:24 274:1 274:5 274:15 275:15 275:20 279:20
**declarations(1)** 273:22
**decline(5)** 274:13 274:15 275:24 278:19 279:11

**declining(2)** 274:24 274:25
**deep(1)** 252:19
**deep-out-of-the-money(1)** 145:8
**deeper(1)** 207:5
**default(3)** 15:6 145:24 214:22
**defendant(2)** 16:22 57:13
**defendant's(1)** 223:6
**defendants(1)** 272:19

**defended(3)** 77:11 280:2 280:5
**defense(10)** 133:15 133:19 139:5 141:22 141:25 151:10 215:24 215:25 216:3 235:11

**defenses(43)** 112:3 112:6 112:8 112:14 112:15 112:18 112:20 130:10 131:12 132:11 132:13 133:18 134:4 134:9 134:10 135:23 136:6 136:7 136:10 138:4 138:5 138:8 138:15 139:16 141:16 141:22 142:8 146:15 146:24 162:1 164:24 165:1 166:9 184:22 230:4 230:6 230:6 231:8 235:8 235:24 236:8 236:10

**deference(1)** 100:16
**defraud(2)** 111:10 130:2
**degree(9)** 12:6 12:7 90:15 90:18 94:9 207:25 231:11 243:12 263:17

**delaware(5)** 1:2 1:12 1:35 11:1 15:19
**delay(6)** 111:10 130:2 261:12 272:9 278:15 278:18

**deliberations(1)** 16:17
**delivered(5)** 104:16 104:17 104:18 104:19 104:21

**delve(1)** 225:13
**demo(1)** 7:11
**demonstrate(1)** 30:6
**demonstrativ(1)** 209:14
**demonstratives(6)** 88:9 88:10 88:14 90:21 92:15 219:20

**dempsey(1)** 285:7
**denied(2)** 77:12 81:2
**department(1)** 93:14
**departments(1)** 96:4
**depend(1)** 281:16
**depending(3)** 82:21 152:24 232:10
**depends(1)** 240:17
**deposed(4)** 18:14 90:25 198:9 198:23
**deposition(42)** 45:2 45:5 51:16 52:6 69:17 71:4 77:10 77:11 88:7 90:16 100:25 183:5 185:18 188:12 189:23 190:4 191:8 193:19 194:14 197:18 203:13 203:20 223:9 224:6 247:17 249:8 250:4 250:6 254:2 254:6 259:5 262:12 263:1 268:11 268:23 279:15 279:22 280:1 280:3 280:5 280:8 280:22

**depositions(10)** 18:5 88:25 197:24 198:6 198:10 198:23 199:1 199:8 199:12 249:24

**depth(1)** 97:11
**derogation(1)** 237:18
**describe(23)** 13:2 18:9 19:6 20:7 20:19 23:4 26:25 31:18 34:16 81:12 104:8 109:18 114:21 123:17 148:25 151:7 160:22 161:22 182:12 188:5 271:23 276:15 281:17
**described(17)** 29:9 103:17 114:15 121:24 165:11 174:3 193:18 196:3 206:14 208:3 209:9 214:3 226:3 226:6 235:8 244:14 276:13
**describes(2)** 122:18 227:22
**describing(3)** 19:9 146:18 157:14
**description(1)** 267:11
**designed(2)** 91:17 98:18
**despite(1)** 122:4
**detail(1)** 122:4
**detailed(3)** 257:4 257:5 262:6
**deteriorate(1)** 15:1 278:8
**details(4)** 33:23 159:14 162:24 208:22
**determine(6)** 44:3 112:22 146:21 147:7 147:21 207:23
**determined(5)** 65:18 147:5 154:4 222:20 247:1
**determines(1)** 209:2
**deutsch(2)** 3:20 5:26

**deutsche(1)** 10:9
**develop(6)** 104:8 118:10 131:25 189:13 190:25 233:23
**developed(9)** 95:21 102:7 118:10 118:13 120:18 185:3 191:1 205:18 248:12
**developments(2)** 22:24 125:5
**devine(7)** 54:10 54:14 55:7 55:19 55:21 55:25 197:14
**dewey(1)** 4:12
**dialed(1)** 43:21
**dialogue(1)** 113:17
**diamond(1)** 7:5
**diaz(1)** 1:41
**did(195)** 12:12 12:24 14:14 14:18 14:22 15:9 15:14 16:7 16:12 16:14 16:24 17:2 17:6 17:8 17:10 17:25 18:16 18:18 18:19 21:4 21:25 22:7 22:9 23:10 23:12 23:18 23:20 23:21 23:21 24:20 24:23 25:3 25:11 25:15 26:3 26:4 26:5 26:8 26:9 26:14 27:17 27:19 29:2 29:9 30:14 30:16 30:19 32:17 32:19 34:10 35:4 38:3 38:6 38:6 38:22 39:8 39:10 44:2 47:7 54:20 56:23 60:6 61:22 65:22 66:4 68:3 68:11 68:20 71:25 74:6 74:14 75:24 81:23 81:25 99:17 99:18 102:3 106:6 107:21 107:22 108:14 108:15 111:17 112:22 113:10 113:11 113:17 113:19 113:20 117:2 117:4 117:7 118:11 119:11 120:21 128:14 130:1 130:7 130:15 131:25 132:3 138:12 139:3 144:25 145:3 159:4 159:7 159:14 160:11 160:20 161:16 161:23 161:23 162:5 163:12 166:2 166:22 171:4 172:7 172:9 172:10 172:12 173:11 173:15 175:6 176:3 176:24 180:8 183:20 184:5 189:10 192:1 192:2 193:2 193:3 193:7 194:1 195:21 195:25 196:1 196:1 196:9 197:10 197:12 197:19 198 198:25 199:1 199:10 199:11 199:13 200:1 202:5 207:21 208:10 208:10 208:15 210:20 210:22 210:25 213:13 214:11 219:2 220:6 228:1 229:3 232:24 233:10 233:15 233:15 235:1 235:14 238:17 238:20 240:2 241:2 241:17 242:12 242:17 246:19 249:5 250:2 252:9 261:13 263:5 264:1 272:4 272:7 267:18 267:23 269:19 269:21 272:9 272:1 275:11 280:21

**didn't(19)** 60:12 82:25 99:24 106:20 111:14 125:2 142:11 143:14 146:10 151:7 153:16 155:19 155:10 155:12 155:12 155:1 179:16 183:9 198:23

**differ(1)** 208:9
**difference(8)** 37:17 37:22 109:20 154:18 164:7 166:12 171:1 234:2

**differences(5)** 92:8 154:24 155:1 155:2 261:24

**different(49)** 13:5 25:2 37:2 38:20 60:25 77:20 99:22 107:2 107:3 108:7 108:17 109:10 109:12 113:5 113:18 116:9 117:11 119:1 119:6 120:16 122:8 123:7 126:15 132:1 140:24 146:5 147:8 147:20 147:22 148:6 157:17 158:8 158:20 158:20 168:16 172:14 177:4 186:16 186:16 190:24 191:13 191:19 194:20 200:17 216:4 235:1 241:4 241:13 246:13

**differing(1)** 128:11
**difficult(8)** 23:24 42:1 42:10 89:14 252:10 267:2 280:13 280:15
**digging(2)** 143:7 207:5
**dinner(1)** 194:2
**dip(1)** 171:17
**dipped(3)** 279:2 279:6 279:7
**direct(46)** 11:19 43:11 46:8 55:1 57:18 58:5 62:21 65:1 65:21 71:23 72:15 72:24 73:4 74:17 77:15 89:21 93:8 157:4 179:19 181:24 184:4 185:1 188:8 189:14 190:8 195:10 202:9 205:19 205:23 214:3 215:2 216:12 216:13 219:22 225:20 235:19 238:17 263:15 271:20 272:16 281:2 282:22 284:19 285:1 285:6 287:3

**directing(2)** 115:4 261:25
**direction(7)** 171:10 171:10 171:10 196:6 231:16 234:6 234:7
**directly(6)** 157:23 159:20 179:13 213:8 228:9 267:25
**director(10)** 12:18 12:21 12:25 13:10 13:19 13:23 47:10 94:25 95:6 272:17
**directors(11)** 3:42 15:13 67:4 72:11 80:6 95:3 95:6 96:9 99:23 150:12 151:22
**dirt(1)** 130:11
**disagree(2)** 60:24 124:18
**discipline(1)** 136:21
**disciplines(2)** 95:15 96:3
**disciplining(1)** 120:11
**disclosure(2)** 22:9 201:14
**discount(2)** 169:11 272:9
**discounted(2)** 97:8 169:6
**discover(1)** 76:22
**discovery(10)** 16:23 18:2 18:6 18:9 29:13 76:18 76:22 77:8 152:21 195:1
**discreet(1)** 118:25
**discuss(1)** 282:22
**discussed(13)** 57:4 77:5 90:15 104:10 188:7 188:9 188:10 190:20 192:24 192:25 248:8 263:15 275:23 281:5
**discusses(1)** 238:4
**discussing(7)** 161:3 190:9 191:19 215:22 224:2 237:12 261:23
**discussion(16)** 25:20 52:10 54:4 59:1 61:12 76:22 90:2 101:3 132:7 217:15 221:4 254:23 259:6 263:3 267:15 278:3
**discussions(28)** 16:10 16:13 17:22 18:25 19:7 19:20 20:1 22:15 24:10 24:14 24:25 26:3 26:5 27:3 27:5 27:11 27:21 46:9 46:13 55:20 58:6 58:9 59:13 59:23 60:10 61:14 62:16 63:14

**disgorgement(43)** 20:10 32:22 34:18 35:4 35:6 37:22 37:25 39:1 65:14 66:23 78:24 79:10 83:11 83:16 84:9 114:9 114:10 114:11 114:13 115:2 170:12 173:18 174:7 177:15 193:10 193:14 210:8 210:10 211:6 211:9 211:11 211:20 212:23 213:1 213:6 213:14 214:7 221:17 263:18 265:19 265:22 266:4 266:10

**disgorgement(2)** 173:12 173:13
**dispense(1)** 209:8
**dispensed(1)** 210:5
**displays(1)** 60:16
**dispose(2)** 239:1 239:3
**disposition(7)** 127:1 155:13 155:18 202:1 233:8 234:9 238:18
**disproportionally(1)** 171:19

| Word | Page:Line |
| --- | --- |

disproportionat(1) 104:3
disproportionately(2) 116:22 149:4
dispute(1) 202:19
dissertation(1) 94:12
dissimilar(1) 185:4
distressed(8) 44:22 44:24 45:19 45:21
45:23 45:24 145:15 281:18

distribute(1) 82:22
distributed(5) 137:3 137:4 143:23 236:15
263:20

distribution(2) 139:1 143:18
distributions(2) 187:25 213:24
district(1) 1:2
divulge(2) 55:10 59:15
docket(1) 199:21
doctrinal(1) 267:3
document(18) 18:6 31:11 33:14 48:22
48:25 56:4 72:3 73:22 74:1 223:17 224:9
224:23 224:25 227:12 254:21 256:15
262:24 279:18
documents(11) 18:13 18:12 18:13 23:7
152:21 189:1 189:8 189:11 260:10 261:12
264:16
dodge(1) 4:40
does(64) 13:3 35:8 35:20 39:5 39:7 45:17
50:17 52:21 69:2 69:7 71:6 73:22 74:1
81:11 87:18 90:15 90:20 105:5 105:15
105:18 113:12 125:16 126:9 128:7 136:19
139:20 149:15 155:20 155:22 161:11 162:
169:17 171:1 173:24 204:6 204:8 204:11
213:14 220:7 226:19 227:24 230:5 232:15
239:14 239:19 239:23 240:11 240:12
240:16 240:19 240:20 240:22 240:22
241:22 241:24 244:9 244:25 246:4 253:22
254:21 256:4 262:24 262:25 276:17

doesn't(43) 38:13 38:17 39:24 60:20 66:8
69:11 73:25 91:3 168:4 168:22 169:21
169:22 169:25 171:11 171:11 177:11 178:
197:21 204:5 213:7 213:7 213:8 213:9
213:14 218:10 219:6 219:18 226:19 229:22
230:1 234:24 235:1 239:17 239:21 240:10
242:6 244:2 244:16 244:23 245:9 258:8
259:17 267:25

doesn't(10) 114:2 116:8 120:4 125:8
133:11 139:6 142:2 149:8 150:19 155:19

doing(8) 38:17 54:22 89:19 94:13 98:19
120:12 179:1 212:16

dollar(7) 32:7 37:14 84:8 110:5 145:10
155:1 174:15

dollars(23) 61:13 101:22 109:11 109:12
119:21 121:6 129:13 146:25 153:10 153:1
153:23 162:20 164:4 164:13 164:14
164:20 165:1 187:19 211:3 211:6 211:11
215:21 236:5

dominated(1) 128:5
don(1) 4:47

don't(105) 30:8 30:17 37:13 37:15 41:7
45:11 46:7 46:14 48:20 50:20 50:22 52:6
52:7 52:9 53:18 54:18 55:20 56:1 56:17
56:22 56:25 59:13 60:1 61:11 61:17 63:25
65:25 67:19 67:23 70:6 71:8 71:13 74:8
74:25 75:8 75:13 75:25 76:6 76:8 77:6
82:12 84:17 87:10 91:8 91:11 91:14 91:22
91:22 158:4 158:24 159:13 160:15 161:4
165:17 170:4 170:17 173:20 179:4 180:14
186:11 187:21 189:6 189:21 191:8 191:13
194:19 194:22 203:15 212:10 213:18
214:20 215:9 215:17 215:18 216:16 221:4
226:10 226:11 226:17 237:6 237:7 243:19
256:24 258:19 259:19 260:1 261:17 266:6
266:20 267:10 267:14 279:25 280:5 280:2
281:23 281:25 282:2 282:8 283:18 283:20
284:12 284:13 284:22 285:10 285:17

donald(1) 2:7
done(9) 39:11 44:14 62:17 90:22 96:7
123:25 148:22 159:6 188:3

don't(41) 53:1 97:8 97:10 98:21 98:23
104:1 106:15 107:22 108:24 109:11 109:1
114:17 117:13 118:23 119:4 121:20 122:
122:10 122:22 123:3 123:21 123:23 123:2
124:6 126:6 130:9 132:25 133:10 134:9
138:5 138:18 140:10 146:13 148:4 150:16
153:5 153:6 154:23 155:7 187:11 211:25

doomed(1) 204:14
dorr(2) 6:21 10:34
dose(1) 241:3
double(3) 268:19 269:21 270:13
doubt(3) 203:13 203:15 258:10
dougherty(2) 8:25 8:26
douglas(2) 3:20 5:26
down(35) 15:19 15:19 49:22 65:5 65:6
65:6 87:18 103:14 107:18 112:21 126:21
127:14 138:9 143:7 143:10 145:12 155:20
162:7 162:9 169:23 171:24 174:8 178:10
193:22 213:9 213:17 215:7 246:9 251:19
255:3 255:8 257:18 257:23 260:1 283:9

downgrade(8) 49:17 49:18 50:1 50:10
52:10 52:10 53:5 57:4

downgraded(2) 50:16 50:21
downgrading(1) 56:17
downloads(1) 95:18
downside(5) 205:11 205:15 205:16 240:5
275:23

downturn(1) 102:9
downturns(1) 127:22
downward(2) 56:9 56:12
dozens(1) 158:16
draft(1) 200:12
drag(1) 285:10
dramatically(1) 178:13
draw(1) 133:15
drill(3) 103:14 107:18 112:21
drilling(1) 127:14
drive(15) 109:11 113:1 119:21 121:8
121:11 125:23 126:21 129:9 134:5 144:7
144:11 162:19 211:20 229:2 234:23

driven(2) 135:17 231:7
driver(1) 170:5
drivers(2) 129:12 257:12
drives(4) 121:9 121:10 142:13 224:8
driving(7) 121:6 129:13 146:25 155:1
231:6 236:5 255:19

drop(3) 277:8 277:15 278:1
dropped(6) 257:23 257:25 277:20 277:25
279:7 281:15

drowning(1) 208:22
dry(1) 95:19

dual(1) 171:24
dublin(1) 2:23
ducayet(56) 1:27 88:17 92:6 92:9 92:11
92:13 93:7 93:9 102:23 103:10 103:11
105:19 106:1 106:4 107:7 107:9 107:15
107:16 147:16 147:18 147:19 156:22
156:22 156:25 157:3 157:5 159:9 159:11
160:4 160:7 160:8 160:18 160:23 161:4
161:9 161:13 161:15 161:20 161:21 176:8
176:13 176:17 176:20 176:21 179:18
179:20 179:25 180:3 180:5 180:6 191:20
194:4 200:20 215:23 258:15 282:1

due(2) 15:1 245:16
duff(3) 10:50 104:19 198:24
dumps(1) 152:1
during(23) 29:8 30:13 42:11 58:21 59:17
63:11 63:19 63:20 69:21 76:18 76:22 77:7
88:5 160:15 172:13 180:8 192:21 194:14
195:1 205:3 276:7 276:22 278:18

duty(2) 150:13 151:5
dynamic(1) 42:10
dynamics(1) 150:19
e-2(1) 221:14
e-equipoise(1) 266:23
e-mail(2) 53:2 130:22
e-reasonably(1) 268:3
each(36) 19:24 38:20 106:21 108:9 114:25
119:5 120:24 120:24 121:1 132:1 132:21
143:9 146:21 147:8 147:22 147:25 149:18
152:12 156:18 186:24 190:18 206:5 206:6
206:10 207:5 209:10 222:20 222:20 228:1
229:6 229:19 230:17 235:15 237:12 240:20
262:21

earlier(8) 50:5 115:7 151:7 200:4 201:17
235:8 248:9 279:2

earliest(1) 285:24
early(18) 18:22 67:15 68:25 71:6 71:12
73:24 74:2 94:18 99:19 101:10 191:13
191:16 191:25 198:1 200:10 200:15 228:2
272:23

easier(4) 140:12 140:14 144:21 260:4
east(1) 10:46
easy(3) 181:3 209:8 275:12
eat(4) 134:1 178:3 178:7 221:16
econometrics(1) 98:13
economic(2) 52:8 98:14
economics(3) 95:14 96:23 97:1
economy(2) 278:22 279:8
economy-wide(1) 279:13
ecro(1) 1:39
eddy(6) 70:2 70:5 71:8 73:2 73:10 73:12
education(3) 12:6 12:7 12:10
educational(1) 12:2
edwards(1) 4:40
effect(15) 99:2 119:20 134:1 146:9 158:4
162:13 164:21 165:1 169:25 170:1 175:19
175:23 181:24 212:14 230:13

effective(1) 254:11
effectively(4) 112:12 214:20 246:12 249:23
efficient(1) 225:6
effort(3) 139:12 188:17 196:20
efforts(1) 18:10
egi-trb(1) 5:4
egregious(3) 130:18 130:25 198:18
eight(5) 91:23 143:6 148:4 170:19 208:2
eight-something(1) 281:14
either(20) 45:22 91:9 104:25 126:6 127:9
129:18 129:19 140:20 146:8 146:13 155:9
161:5 167:15 169:20 172:2 186:6 186:15
215:16 232:4 263:6

elaborate(1) 37:7
elden(1) 8:25
eldersveld(1) 7:7
electronic(2) 1:47 286:18

element(2) 126:12 127:16
elements(1) 147:20
elicited(1) 76:17
elicits(1) 29:15
elimination(2) 197:9 197:16
elizabeth(1) 7:48
elkins(1) 9:14
elliot(2) 2:5 11:5
else(15) 90:2 91:24 100:13 115:23 116:1
127:8 127:9 131:9 133:22 136:24 139:17
151:13 152:14 210:5 286:9

elsewhere(2) 266:3 267:15
else's(1) 104:13
email(23) 48:25 49:3 49:9 49:12 49:16
50:4 50:5 50:23 51:17 51:20 52:1 53:6
53:7 56:5 57:1 57:2 64:10 64:14 64:15
72:1 72:16 72:25 73:16

emails(2) 64:9 198:15
emanated(1) 254:23
embodied(7) 21:16 23:22 34:17 35:9 35:18
103:1 103:19

emergence(3) 67:18 69:25 128:8
emerges(1) 68:6
empirical(5) 98:8 98:9 98:20 158:12
94:2

employed(6) 11:23 12:9 12:14 93:20 93:21
94:2

employees(3) 18:15 23:8 49:13
enable(1) 182:20
encourage(1) 19:23
end(31) 16:22 45:25 52:7 53:3 60:13
68:14 69:1 89:20 105:10 105:11 109:7
109:22 116:9 148:9 148:10 151:8 188:8
201:18 209:2 209:7 209:7 215:2 232:12
236:10 245:1 251:9 253:16 283:12 285:2
285:8 285:12

ended(3) 108:5 253:24 255:4
ends(2) 171:12 236:12
enforce(1) 81:24
engaged(4) 99:19 181:11 181:15 272:22
engagement(2) 201:18 247:18
english(1) 4:21
enjoy(1) 87:9
enlarged(2) 225:12 255:21
enormous(1) 199:13
enough(26) 26:1 27:14 41:5 84:22 105:7
124:5 128:14 145:5 168:6 179:25 199:3
199:9 200:11 201:15 206:23 208:21 212:3
213:22 215:10 220:22 221:18 245:12
252:19 273:18 280:7 282:11

enter(1) 204:9
entered(2) 194:18 204:13
enterprise(21) 38:17 39:22 39:25 40:5
40:7 41:16 113:24 158:1 158:1 163:5
164:17 164:22 165:7 166:7 167:21 167:24
171:22 171:23 209:19 215:10 215:19

entire(4) 39:2 58:21 63:11
entirely(10) 27:19 78:16 78:16 164:3
190:17 190:25 245:4 245:17 246:6 246:20

entirety(1) 238:22
entrenched(1) 42:7
entry(5) 265:16 265:21 267:9 267:12
eos(2) 9:30 9:30
ephraim(1) 7:5
equals(1) 217:5
equipoise(4) 238:2 238:5 266:11 267:1
equitable(25) 111:25 129:19 130:19 131:8
165:8 170:10 170:16 177:3 177:6 177:10
177:18 179:9 179:9 212:12 212:14 231:20
252:24 265:17 265:18 266:3 267:12 267:1
268:15 269:16 270:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**equitably(5)** 111:15 232:5 268:4 268:13 269:13

**equity(6)** 112:10 134:2 145:9 169:2 169:12 178:24

**equivalent(1)** 84:8
**esop(2)** 104:19 168:14
**especially(9)** 100:5 101:1 101:5 130:13 131:13 139:4 152:20 171:11 279:6

**esq(121)** 1:24 1:25 1:26 1:27 1:34 2:5 2:6 2:7 2:13 2:20 2:21 2:22 2:23 2:24 2:25 2:26 2:32 2:33 2:41 2:42 3:5 3:13 3:14 3:15 3:16 3:17 3:18 3:19 3:20 3:26 3:27 3:33 3:34 3:35 3:43 4:6 4:13 4:14 4:15 4:22 4:23 4:29 4:35 4:41 4:47 5:5 5:6 5:12 5:24 5:26 5:28 5:30 5:32 5:34 5:38 5:39 5:40 5:41 5:45 6:5 6:7 6:9 6:17 6:24 6:29 6:33 6:37 6:39 6:43 6:47 7:5 7:7 7:11 7:13 7:15 7:17 7:19 7:21 7:25 7:30 7:32 7:36 7:40 7:42 7:44 7:46 7:48 8:6 8:11 8:15 8:17 8:22 8:26 8:34 8:38 8:40 8:42 8:46 9:5 9:7 9:11 9:15 9:19 9:27 9:31 9:35 9:40 9:44 9:48 9:52 10:6 10:15 10:17 10:21 10:26 10:30 10:35 10:39 10:43 10:47

**essentially(7)** 26:11 129:4 160:25 165:10 213:24 225:23 226:1

**establish(6)** 24:6 36:8 61:3 176:9 218:21 247:3

**established(4)** 25:21 243:1 247:5 248:6
**establishing(2)** 217:12 247:2
**establishment(1)** 157:18
**estate(2)** 14:5 14:7
**esther(1)** 6:43
**estimate(21)** 42:24 114:1 140:11 145:17 148:12 152:8 153:1 155:16 156:16 170:1 170:25 176:1 177:22 210:17 222:3 243:21 244:8 271:21 271:24 281:20

**estimated(9)** 132:6 139:7 148:6 149:3 154:10 166:11 206:5 237:22 271:18

**estimates(3)** 106:17 113:15 258:25
**estimating(1)** 150:10
**evaluate(1)** 177:1 226:9
**evaluating(1)** 119:2
**even(31)** 30:2 86:6 98:22 111:8 112:8 123:24 136:11 137:18 138:20 143:3 146:6 146:14 153:12 153:13 153:21 156:6 160:13 178:6 204:10 213:16 216:21 218:11 232:2 232:3 234:25 236:20 237:12 242:11 263:11 270:8 270:20

**event(1)** 170:22
**ever(15)** 18:19 21:16 36:12 41:18 42:11 46:12 56:23 61:11 68:3 74:6 74:14 122:19 122:20 201:21 280:1

**every(5)** 95:18 146:13 162:3 162:3 210:23
**everybody(2)** 104:13 133:21
**everyone(3)** 11:3 100:13 210:5
**everyone's(1)** 91:9
**everything(8)** 113:3 115:23 116:1 116:25 121:13 139:17 164:15 261:15

**evidence(18)** 88:25 107:14 130:4 143:17 143:24 156:2 156:9 177:5 194:25 198:21 236:23 236:23 237:16 238:10 238:11 238:12 238:13 281:8

**exact(3)** 109:7 269:3 281:15
**exactly(8)** 67:24 101:11 121:5 183:15 194:13 200:22 202:7 278:11

**exaggerated(1)** 154:24

**examination(24)** 11:19 28:7 42:23 43:25 79:15 79:18 79:22 79:24 81:5 86:2 88:18 91:3 91:4 91:8 93:8 157:4 188:8 189:15 215:3 260:8 260:8 284:19 284:25 284:25

**examine(1)** 90:24
**examiner(167)** 23:1 23:2 23:11 75:6 76:5 100:10 101:5 108:14 108:15 109:5 109:7 109:11 109:13 113:10 113:11 113:14 120: 120:6 120:9 121:13 122:17 124:12 124:14 131:17 132:6 132:8 133:1 133:11 133:13 133:18 138:25 139:2 139:3 139:15 139:18 140:20 141:15 141:21 142:2 148:13 148:2 149:11 150:13 150:17 151:1 152:1 152:1 154:12 154:14 155:9 155:21 155:25 156:1 161:25 166:1 167:8 169:12 170:9 170:25 175:8 175:9 190:13 190:16 190:22 192:17 192:21 197:5 198:14 199:9 199:17 203:1 207:17 216:25 217:9 217:10 217:11 219:25 220:3 220:7 220:9 226:15 226:19 227:11 227:16 227:21 227:22 228:8 228:14 229:1 229:17 230:23 232:13 233:10 233:11 234:2 234:3 234:8 234:23 235:1 235:4 235:6 235:13 236:18 237:2 237:4 237:8 237:21 238:1 238:9 238:15 238:18 239:5 239:21 240:24 241:2 241:20 241:21 242:1 242:24 242:25 243:2 243:11 243:25 244: 244:4 244:6 245:6 245:8 246:8 246:11 247:4 247:9 247:11 248:3 249:9 249:12 250:20 254:20 254:23 255:2 256:2 257:5 257:6 257:9 259:3 259:6 261:4 261:19 261:24 261:25 266:10 266:14 266:16 266:17 266:23 267:2 267:5 267:25 268:1 268:3 268:8 269:12 269:25 270:11 271:3 271:5 271:10

**examiner's(32)** 23:5 23:22 24:15 24:22 25:3 26:15 26:15 80:12 170:23 174:5 177:14 190:21 198:20 217:4 217:14 228:4 228:8 228:9 230:15 233:6 233:8 233:15 239:22 245:25 265:13 266:21 266:25 267:23 268:12 270:1 270:9

**examiner's(10)** 100:14 100:16 122:22 123:3 123:18 123:23 141:25 142:6 154:25 156:17

**example(12)** 40:21 98:1 131:16 131:17 171:13 215:13 229:11 229:20 230:22 231:21 238:16 257:19

**excellent(4)** 104:5 118:7 149:21 180:11
**except(8)** 24:6 78:24 94:6 115:3 178:1 182:15 182:17 213:25

**exception(2)** 88:21 89:23
**excerpts(1)** 60:21
**exchange(2)** 72:2 95:8
**excluding(2)** 158:19 207:10
**excuse(5)** 91:7 250:7 256:17 272:20 279:11
**excused(1)** 283:10
**executive(2)** 12:18 12:21 12:25 13:10 13:19 70:14 70:19 70:22

**exercise(4)** 161:17 230:11 231:10 231:10
**exhibit(26)** 11:12 11:13 31:12 33:14 33:15 48:22 56:2 57:2 64:6 64:6 71:24 105:21 223:6 223:6 223:13 259:14 260:10 260:13 261:2 261:10 261:18 261:20 264:16 273:2 279:19 287:15

**exhibits(1)** 185:21
**exist(1)** 97:10
**existed(1)** 145:25
**existing(2)** 130:11 176:1
**exists(1)** 158:25
**exit(1)** 283:12
**exiting(1)** 271:15
**expect(5)** 60:19 268:9 284:2 284:6 284:22

**expected(10)** 44:3 44:7 69:22 116:20 122:23 129:14 149:22 175:16 206:24 206:24

**experience(4)** 41:23 94:23 203:20 203:22
**expert(27)** 9:34 88:25 89:24 90:14 99:14 102:24 169:1 182:19 183:15 188:14 188:1 192:10 192:12 194:20 196:10 197:17 203:14 207:20 223:18 248:13 263:23 273:7 273:15 280:25 284:21 285:4

**expertise(15)** 95:23 95:25 96:8 96:10 97:4 97:14 97:17 99:4 99:6 100:17 182:17 185:7 203:11 280:17 280:23

**expired(1)** 179:18
**explain(15)** 106:8 129:21 131:15 134:23 150:4 159:16 188:19 189:4 208:25 219:2 249:9 250:6 250:11 269:22 278:16

**explained(1)** 173:4
**explicitly(3)** 211:5 232:15 244:25
**explore(2)** 29:16 194:22
**exposure(2)** 152:12 152:23
**express(1)** 247:12
**expressed(3)** 75:2 75:4 138:24
**expressly(7)** 65:7 240:11 240:12 244:3 245:9 246:5 246:7

**extension(1)** 177:14
**extensively(2)** 189:9 196:2
**extent(17)** 24:6 29:15 30:4 81:15 88:20 99:7 99:9 103:6 176:8 182:22 207:22 224:8 225:13 249:22 263:3 281:8 283:24

**extra(7)** 125:5 144:20 166:25 175:13 175:16 214:9 255:17

**extreme(3)** 119:11 136:15 137:7
**extremes(1)** 236:2
**eyeball(1)** 262:19
**face(7)** 78:1 82:2 82:5 82:9 82:16 82:24 169:4

**faces(1)** 150:23
**fachela(3)** 89:15 90:6 90:7
**facilitate(1)** 62:16
**facilitating(1)** 19:20
**fact(25)** 15:7 16:12 55:21 56:22 62:8 66:19 106:6 111:21 113:17 124:24 136:9 165:20 165:24 167:18 176:14 182:23 199:16 204:4 232:7 232:20 239:3 240:14 240:24 258:8 285:12

**factors(3)** 159:20 232:14 244:19
**facts(12)** 101:18 104:11 107:25 108:2 118:19 120:17 130:9 136:11 137:11 141:1 150:17 152:24

**factual(8)** 153:7 196:2 196:3 241:4 241:14 241:24 246:23 246:24

**faculty(3)** 93:14 99:1 203:4
**fail(1)** 204:14
**failed(2)** 164:16 247:2
**fair(26)** 26:1 37:1 51:19 59:4 59:7 59:11 59:21 60:2 60:7 62:7 62:10 62:14 62:18 84:22 152:1 174:10 179:25 182:3 199:9 200:11 201:15 206:23 213:22 245:12 280: 280:14

**fairly(3)** 103:14 110:6 191:16
**fairness(2)** 181:15 273:11
**faith(6)** 178:5 198:12 198:14 198:18 218:22 218:25

**fall(8)** 67:15 68:25 93:18 93:19 93:25 105:2 192:19 205:1

**fallen(1)** 76:12
**falls(1)** 30:9

**false(2)** 243:25 276:16
**faltas(2)** 8:29 8:30
**familiar(8)** 81:9 97:23 98:6 98:12 104:11 104:23 256:22 269:2

**family(1)** 12:5
**far(12)** 19:16 29:22 39:14 42:8 61:6 116:12 128:19 148:10 195:4 271:11 271:13 278:7

**far-right(1)** 227:13
**far-flung(1)** 10:29
**farther(1)** 41:7
**fast(1)** 14:10
**fault(1)** 88:12
**favorable(5)** 119:2 119:3 119:23 119:23 142:18

**features(2)** 65:2 104:14
**february(15)** 45:3 72:22 72:25 73:17 106:10 183:22 201:2 204:25 248:21 249:4 262:3 275:5 275:8 275:10 275:11

**fed(1)** 157:22
**federal(1)** 214:16
**feel(3)** 42:6 56:15 181:2
**feels(2)** 177:17 179:5
**fees(1)** 152:18
**feld(3)** 2:19 8:14 90:11
**fell(4)** 26:17 26:24 29:5 247:24
**felt(7)** 22:16 32:23 65:16 73:8 179:11 207:15 246:20

**female(1)** 68:8
**few(8)** 23:6 34:2 73:4 80:5 235:3 246:18 249:1 270:19

**fewer(2)** 174:25 263:12
**fiduciary(1)** 150:12
**field(1)** 96:1
**fifteen(2)** 186:15 237:12
**fifty(1)** 165:12
**fifty-five(1)** 217:5
**fighting(1)** 146:8
**figure(3)** 56:14 69:10 187:24
**file(14)** 14:23 15:8 15:11 34:10 34:14 67:2 199:23 200:6

**filed(18)** 14:21 15:17 21:19 22:9 26:19 27:17 27:18 57:14 58:15 62:8 65:6 65:23 100:21 101:1 106:14 163:17 200:6 200:17

**filing(9)** 15:7 15:14 22:24 46:11 163:20 167:20 184:13 199:23 208:4

**filings(1)** 188:10
**final(1)** 179:20
**finally(6)** 104:20 111:5 153:1 170:7 189:12 221:3

**finance(24)** 47:11 47:16 93:14 93:22 93:24 95:14 95:25 96:2 96:5 96:6 96:13 96:17 96:18 96:20 96:24 97:2 97:5 97:7 98:1 100:17 169:10 182:18 204:16

**financial(12)** 96:9 96:23 97:1 151:24 151:25 152:9 154:3 176:10 276:6 276:11 276:16 276:23

**find(16)** 27:22 110:11 110:12 110:13 130:18 141:6 141:7 171:9 177:5 201:10 204:15 232:5 246:23 246:25 247:8 267:2

**finding(1)** 132:25
**findings(3)** 23:25 24:17 25:3
**fine(4)** 112:9 118:6 260:12 286:5
**finger(2)** 2:12 9:10
**finish(4)** 85:13 85:17 147:4 284:16
**finished(1)** 56:5
**finishes(1)** 284:15
**finishing(1)** 94:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

firm(5) 11:6 99:20 187:23 188:3 203:5

first(85) 14:14 14:16 14:22 15:18 18:24 28:20 31:5 31:9 31:12 33:3 33:11 34:21 37:6 37:14 37:16 38:1 46:11 46:12 48:23 50:10 56:3 57:1 70:6 70:16 72:7 73:8 77:17 77:21 78:15 79:2 83:18 83:25 84:11 94:24 94:25 95:24 101:8 104:10 107:21 107:22 108:3 116:23 117:10 121:11 134:9 138:15 139:3 143:3 144:7 144:15 145:4 149:16 154:19 155:10 159:23 161:8 173:11 177:3 177:9 182:15 186:20 193:5 200:11 201:2 203:7 203:10 209:21 212:16 213:9 223:16 224:16 236:1 248:12 248:16 248:1 265:16 273:3 274:18 274:23 276:5 276:22 283:4 283:22 285:14 285:23

first-quarter(1) 275:21

fischel(2) 284:17 284:20

fit(1) 90:22

five(19) 12:13 91:20 116:3 145:22 149:2 154:9 165:12 175:19 189:3 189:6 189:24 191:7 195:21 222:12 237:11 244:5 248:20 272:6 281:19

flag(1) 28:5

flavor(1) 175:8

flavors(1) 122:14

flip(1) 185:24

floor(2) 2:36 4:8

flow(17) 90:3 97:8 123:11 124:3 129:25 130:22 142:5 144:23 205:12 206:5 206:22 208:12 209:3 214:9 228:22 232:3 241:13

flowed(1) 228:8

flowing(1) 164:4

focus(9) 64:13 95:21 96:17 134:20 140:3 159:23 194:9 208:24 250:20

focused(6) 127:23 146:23 232:17 246:10 253:3 258:18

focusing(2) 241:10 246:12

folks(1) 119:8

follow(3) 82:25 264:17 284:20

followed(4) 100:12 101:2 107:19 118:9

following(8) 26:14 26:15 100:9 100:20 150:23 159:1 190:22 190:22

follows(8) 45:16 52:12 60:5 68:2 68:19 244:12 250:19 251:24

foods(1) 128:4

footnote(5) 238:24 268:7 275:15 275:19 276:9

for(301) 1:2 1:23 2:4 2:19 2:31 3:4 3:11 3:41 4:4 4:21 4:28 4:34 4:40 4:46 5:4 5:19 5:22 6:4 6:15 6:27 6:31 6:36 6:46 7:4 7:29 7:35 7:39 8:4 8:9 8:25 8:29 8:31 8:37 8:44 8:49 9:4 9:14 9:17 9:21 9:26 9:30 9:34 9:38 9:43 9:47 9:51 10:4 10:9 10:14 10:20 10:24 10:29 10:33 10:37 10:42 10:50 11:14 11:15 12:12 12:13 12:21 12:22 13:13 13:14 14:11 14:21 14:23 15:8 15:11 16:15 17:4 19:23 20:1 21:12 22:13 22:14 24:7 24:19 25:18 26:25 27:18 28:8 29:20 29:23 30:6 33:1 35:6 36:3 36:8 38:7 38:10 38:18 38:25 39:1 39:5 41:19 42:24 43:11 47:22 49:21 49:2 51:21 53:5 54:12 55:12 60:3 60:18 60:21 61:9 61:17 61:25 62:4 62:10 62:11 62:14 63:10 64:8 64:17 65:18 66:8 66:15 69:23 72:17 73:4 73:13 74:7 74:7 74:15 74:25 78:5 78:21 78:23 78:24 79:10 80:2 82:12 83:7 83:10 86:16 87:11 88:11 90:6 90:7 90:11 90:24 91:9 92:4 92:16 92:23 93:1 93:6 94:11 94:15 94:19 97:15 97:15 98:18 103:24 104:5 104:19 108:6 108:18 108:18 109:2 110:4 112:20 112:24 114:1 115:14 115:18 115:19 115:21 116:5 116:2 118:15 120:24 121:1 123:8 124:2 125:21 128:7 128:9 128:12 128:13 129:18 130:17 130:18 131:17 132:1 132:14 132:17 133:2 133:15 135:14 137:24 138:9 139:6 139:17 140:2 140:22 143:4 144:14 145:20 146:19 146:21 147:1 147:22 148:7 148:9 148:18 149:1 149:20 149:21 149:23 150:4 150:12 150:22 150:25 150:25 151:16 152:12 152:20 153:4 154:11 154:17 156:9 158:21 161:8 161:22 162:13 163:17 164:10 164:13 164:20 165:21 166:1 166:2 166:3 166:25 167:4 167:6 168:5 168:12 171:13 172:5 173:4 173:9 173:10 174:15 177:3 178:1 178:2 178:4 178:4 178:7 179:25 181:6 184:16 185:2 185:20 186:1 187:6 190:5 194:24 196:1 196:2 196:3 196:12 198:16 199:3 199:23 200:2 201:4 201:5 201:5 202:4 203:1 203:25 204:2 208:3 208:10 208:11 210:21 212:19 213:1 215:8 215:13 215:25 217:4 217:15 219:19 219:25 220:1 220:12 221:7 222:18 222:20 223:12

for(85) 223:13 224:10 224:12 226:7 226:13 226:23 227:9 228:16 228:17 229:6 229:20 230:17 230:22 231:21 231:25 233:13 234:2 234:3 234:5 234:17 234:24 235:1 235:2 235:21 237:12 238:16 239:7 239:15 240:20 242:10 242:18 244:4 244:2 245:18 246:10 247:18 248:9 249:17 249:21 250:21 253:12 254:5 254:16 256:12 256:18 257:4 257:6 257:16 257:17 259:7 260:1 261:3 261:10 261:20 262:15 262:16 262:21 263:4 263:6 263:8 265:1 265:6 267:11 271:10 271:18 272:9 272:15 272:19 272:22 274:17 274:18 276:9 278:1 280:24 280:24 281:19 282:7 282:14 282:14 284:1 284:9 285:7 285:8 286:10

forces(1) 108:16

foregoing(1) 286:17

forget(1) 277:8

form(11) 52:23 60:9 84:1 104:23 114:8 127:19 130:7 192:6 234:4 271:1 277:14

formal(31) 122:17 123:18 123:24 124:25 126:6 127:15 137:22 137:23 138:16 139:1 139:24 140:1 142:9 143:5 143:12 143:13 143:15 144:3 144:4 145:20 155:25 162:6 162:11 170:14 184:24 185:2 226:4 226:8 227:18 228:23

formal-step(1) 263:5

formally(2) 14:18 200:6

forman(1) 1:32

formed(3) 72:13 103:18 129:16

former(3) 18:15 23:8 73:3

forming(3) 104:12 107:19 128:16

forms(2) 126:15 127:17

forth(5) 112:16 157:10 159:16 196:15 206:7 226:13 226:14

fortune(1) 23:18

forward(9) 25:6 26:8 26:12 70:3 92:9 94:8 125:2 145:19 284:24

forwarding(4) 14:10 49:8 49:12 50:5

found(8) 86:11 115:8 177:19 216:25 217:1 242:3 242:4 249:15

foundation(6) 10:38 24:7 36:3 80:24 82:11 104:16

four(28) 57:5 70:18 70:21 94:11 119:21 148:5 164:21 164:25 165:3 165:18 166:6 168:10 172:17 173:5 189:24 190:14 231:7 232:14 239:9 270:21 270:25 271:6 271:8 274:18 274:23 276:22 280:13 280:14

four-percent(1) 136:2

four-person(1) 70:14

fourteen(1) 219:25

fourth(1) 167:18

framework(1) 104:7

frank(1) 5:32

frankel(1) 10:5

frankly(4) 22:17 44:12 62:6 198:19

fraud(9) 80:9 80:12 133:6 187:7 217:15 244:17 244:17 244:19 252:24

fraudulent(22) 97:17 97:21 97:22 99:10 99:12 104:25 111:12 153:18 181:11 187:7 204:20 216:22 216:23 217:1 217:13 217:19 242:2 242:18 243:3 243:8 244:13 245:13

frequently(1) 185:8

friday(3) 253:18 284:23 285:12

friedman(1) 8:20

friend(2) 73:12 202:16

friendly(2) 138:14 202:18

from(144) 16:9 16:12 17:22 18:3 18:3 18:4 18:4 27:1 28:11 29:10 30:15 34:22 35:21 36:16 43:22 47:24 49:3 49:13 49:11 49:17 49:22 53:10 53:25 54:5 55:19 60:20 62:2 64:10 64:14 65:17 68:6 71:20 72:16 72:25 73:2 74:8 74:21 79:2 83:15 85:23 88:5 92:3 93:24 94:4 94:18 95:3 95:8 99:23 102:15 104:16 105:10 112:18 112:1 113:23 113:25 119:14 127:6 131:14 133:2 133:9 133:16 134:3 134:11 135:24 135:24 135:25 136:6 136:10 137:16 137:2 138:2 145:16 146:16 146:24 147:5 149:3 149:6 149:19 153:25 154:1 154:3 162:15 164:5 165:16 168:15 169:10 170:12 171:9 175:15 185:4 187:25 188:12 188:12 191:2 191:21 194:20 197:16 198:24 205:21 205:23 206:22 207:13 210:9 211:19 211:11 212:25 213:12 219:19 223:9 228:9 236:8 247:3 254:21 254:23 255:1 255:6 255:8 255:13 255:16 256:17 256:21 259:12 262:16 262:17 263:8 263:9 267:5 268:8 268:16 269:18 270:6 271:11 271:13 271:22 278:1 278:25 279:3 280:2 280:4 280:16 281:13 286:18

front(4) 33:18 143:22 201:18 251:18

fulfill(1) 48:11

full(40) 20:11 35:2 49:21 76:7 84:6 84:17 92:23 110:5 111:7 113:2 115:16 117:1 117:20 118:14 120:17 126:7 134:7 134:7 134:11 141:13 141:14 145:12 150:11 150:25 167:13 172:18 173:2 182:15 186:8 220:13 220:21 220:22 221:13 221:15 221:19 221:20 223:4 255:4 272:12

full-avoidanc(1) 142:1

full-time(1) 102:21

fuller(1) 267:14

fully(2) 150:9 268:5

fund(4) 9:14 117:9 167:5 167:6

funny(1) 273:18

further(6) 50:1 112:21 143:10 270:20 279:11 287:2

fury(1) 109:23

future(7) 102:14 128:7 128:13 128:15 130:5 152:13 154:4

galbraith(3) 8:33 8:34

gandhi(1) 8:38

gap(3) 19:25 143:16 155:24

garamella(8) 273:16 273:19 273:22 274:4 275:20 276:13 277:6 279:16

garvan(1) 3:5

gary(1) 7:25

gave(39) 53:5 65:25 99:21 100:15 155:13 155:15 168:16 172:4 178:4 185:11 185:13 191:6 191:25 193:1 193:7 208:6 229:17 229:18 233:12 235:13 236:19 242:17 245:3 247:4 248:7 249:24 249:25 252:1 265:1

gavin(1) 6:17

gee(1) 224:24

general(14) 34:4 35:2 37:17 84:4 84:5 84:6 86:19 87:1 103:25 121:23 147:1 164:6 186:24 274:12

generally(13) 19:6 20:7 31:18 50:3 57:25 58:11 99:1 122:7 157:14 203:25 205:5 232:18 232:19

gentilotti(1) 3:4

gentleman(1) 201:18

genuinely(1) 172:5

george(2) 8:25 8:26

get(143) 14:14 15:20 16:24 19:24 21:25 22:5 22:14 26:10 27:14 27:17 33:24 34:21 35:2 35:3 35:11 35:22 36:7 37:5 37:8 37:9 37:16 40:6 41:8 42:9 42:20 46:23 47:3 47:4 48:4 60:2 61:16 61:19 61:25 62:2 62:4 62:12 64:4 64:7 64:7 64:7 81:13 82:23 84:4 84:6 84:7 87:12 90:17 90:18 98:23 101:24 101:25 106:2 106:13 110:5 111:18 112:4 113:9 116:10 116:23 116:24 121:3 126:7 129:9 130:16 132:7 134:1 135:24 135:24 136:12 137:12 137:18 138:13 140:12 140:14 141:10 141:11 142:1 142:6 142:11 143:5 144:2 144:2 145:5 145:24 146:1 146:11 147:4 148:17 150:4 151:11 152:18 156:4 156:5 156:7 156:16 158:9 158:21 159:13 164:25 165:24 166:3 166:24 167:12 167:14 169:21 170:4 173:2 175:14 175:15 175:18 178:3 178:15 183:1 186:1 189:9 190:6 201:1 206:15 206:20 206:21 215:6 215:10 215:20 217:17 218:11 226:11 229:7 236:6 236:13 241:16 242:11 242:12 252:10 253:8 258:12 280:22 284:14 284:23 285:15 285:22

gets(15) 44:25 48:4 48:7 67:11 67:12 67:12 81:15 115:1 117:11 124:14 127:14 134:13 167:11 167:16 174:8

getting(25) 22:20 35:21 62:18 86:19 91:7 119:20 128:18 134:11 137:3 137:15 140:22 141:13 141:16 141:18 141:19 145:8 149:16 149:17 149:18 159:3 165:23 173:13 175:19 189:5 258:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**give(20)** 89:5 91:12 92:14 107:2 139:6 143:12 168:22 175:7 192:10 195:15 220:7 229:10 230:1 240:20 241:22 244:3 267:14 269:19 273:7 285:20

**given(17)** 21:15 24:17 51:12 52:15 99:3 112:7 139:10 157:17 162:11 162:11 167:4 172:10 241:23 252:15 274:3 285:12

**gives(7)** 91:22 167:8 194:19 228:17 229:21 240:14 243:24

**giving(10)** 61:1 85:2 89:3 133:14 133:25 168:21 193:22 195:6 279:15 279:22

**glad(3)** 76:23 89:16 89:24

**glancing(1)** 262:10
**glean(1)** 188:11
**gleich(1)** 2:41
**global(1)** 8:29
**goal(2)** 98:23 102:12
**goes(18)** 29:24 39:23 40:21 84:12 84:20 116:23 117:13 117:17 137:17 149:6 170:1 170:18 174:8 174:10 213:17 244:16 244:17 260:18

**going(193)** 14:23 15:3 15:8 16:4 21:12 22:12 28:5 42:15 47:19 52:9 57:7 68:17 70:3 77:20 80:18 85:15 88:15 88:17 89:21 95:24 96:8 96:10 102:1 102:2 102:4 102:10 104:24 109:7 110:11 110:11 113:1 113:2 114:11 114:12 114:17 115:12 115:2 116:6 116:18 117:1 117:4 117:18 119:21 120:15 120:16 121:8 121:11 121:16 121:21 122:11 122:20 123:9 126:8 126:20 127:2 127:16 127:24 129:9 129:11 129:17 130:24 130:25 131:1 131:10 132:18 132:2 133:7 133:15 133:19 134:3 134:6 134:7 135:14 135:19 135:20 135:25 136:8 137:1 137:14 138:3 138:10 138:12 140:2 140:16 140:23 141:1 141:3 141:4 141:8 141:24 142:7 143:5 143:9 143:12 144:1 144:12 146:4 147:24 148:8 149:6 149:10 150:19 150:21 151:3 151:8 151:14 151:19 151:24 153:13 153:14 155:16 155:23 156:1 156:4 156:11 156:13 156:14 156:16 156:20 156:21 161:2 162:15 162:1? 162:24 164:7 165:23 165:25 166:12 167:14 168:1 168:3 173:2 173:25 174:1 174:2 175:23 177:21 177:23 178:8 178:10 178:21 178:22 178:23 179:2 179:12 179:19 179:14 182:6 194:24 208:7 210:23 212:3 212:4 214:3 214:4 220:12 221:16 221:25 222:14 223:2 224:18 224:24 225:5 225:19 231:7 234:19 234:19 234:20 234:21 238:5 238:14 238:25 246:17 252:6 252:7 253:8 255:2 256:3 260:9 260:9 260:11 263:25 264:17 266:5 268:23 269:2 282:2 284:21 285:4 285:15 285:19

**golden(2)** 2:21 151:17
**goldfarb(2)** 3:34 5:40
**goldis(1)** 6:22
**goldman(4)** 6:24 7:35 7:35 10:35
**gone(5)** 42:8 152:13 210:4 266:7 270:7
**good(58)** 11:3 11:4 11:5 11:21 11:22 22:16 23:18 24:2 25:22 40:2 43:6 43:7 45:11 51:21 52:20 79:20 79:21 92:5 92:11 92:12 93:7 103:24 108:10 118:7 118:22 119:18 119:19 121:21 128:9 135:22 136:7 137:21 137:22 139:4 140:21 140:23 147:18 148:18 150:16 151:11 170:15 171:25 172:5 174:15 178:5 180:25 181:1 198:12 198:14 198:17 199:3 211:16 211:21 218:21 218:25 245:21 248:16 250:3

**gordon(13)** 6:16 7:42 19:4 20:21 26:22 27:1 28:22 31:7 33:8 63:2 67:6 78:14 81:23

**got(82)** 12:5 14:16 33:15 33:18 41:4 43:22 46:12 85:4 88:11 90:23 94:5 96:22 96:25 104:15 104:21 106:15 109:15 116:13 119:17 119:25 120:1 120:5 120:18 120:19 120:25 123:14 125:1 128:20 128:22 129:1 131:3 131:4 131:6 131:7 131:7 131:8 131:17 132:4 132:20 132:23 133:22 134:14 135:22 136:16 137:20 137:21 137:25 138:1 140:21 141:12 141:15 141:1? 142:8 142:22 144:6 144:10 145:10 146:12? 151:1 151:20 152:23 153:1 154:5 154:10 164:21 164:22 164:22 164:23 164:24 166:16 174:13 175:10 200:8 215:13 224:25 228:16 251:25 253:11 260:23 261:13 262:5

**gotshal(1)** 8:37
**governance(1)** 96:7
**governing(1)** 183:9
**grab(1)** 133:6
**grade(3)** 12:4 50:25 51:6
**graduate(3)** 94:10 98:22 99:1
**graduated(1)** 94:14
**graem(2)** 3:33 5:38
**grand(1)** 4:16
**grasp(1)** 238:22
**great(18)** 36:8 36:18 100:15 100:16 110:4 133:11 133:12 146:7 168:5 172:4 187:22 191:10 194:16 207:4 225:15 248:18 256:7 265:11

**greater(3)** 81:6 82:6 172:14
**greatly(1)** 91:6
**green(1)** 156:5
**greg(1)** 7:11
**greissman(1)** 10:30
**grimace(1)** 261:17
**grippo(1)** 8:25
**gross(2)** 28:2 210:12
**ground(1)** 273:13
**grounds(1)** 140:13
**group(29)** 12:19 12:22 12:25 13:3 13:4 13:11 13:13 13:20 13:25 14:5 14:7 14:7 14:9 19:9 19:10 21:1 21:2 22:18 28:24 44:19 44:21 45:17 47:11 63:6 63:7 63:9 63:10 66:18 94:18
**groups(3)** 19:23 20:3 201:4
**grundfest(1)** 94:21
**guarantee(1)** 86:11
**guarantees(3)** 38:16 40:2 40:7
**guaranteed(8)** 102:11 108:18 109:25 114:4 123:8 140:7 164:5 229:25
**gucs(7)** 35:1 37:20 85:3 87:1 87:3 87:8 87:10
**guess(12)** 19:12 44:16 44:17 46:6 60:24 61:17 69:10 69:18 71:13 72:17 151:19 177:19
**guide(1)** 283:5
**guided(1)** 188:2
**guise(1)** 177:4
**gump(4)** 2:19 8:14 43:9 90:11
**guys(2)** 153:14 190:23

**had(159)** 14:25 15:1 22:2 25:2 25:17 30:18 37:14 42:3 43:21 47:12 47:18 50:11 53:17 55:11 59:13 59:16 59:22 59:25 60:10 62:12 65:17 65:21 66:10 66:20 67:16 70:2 73:23 74:21 75:8 75:15 76:12 81:6 85:3 88:4 88:6 88:7 88:15 88:22 90:25 93:22 99:14 100:13 100:23 101:3 101:24 101:25 102:10 103:5 105:1 105:6 108:1 110:9 111:10 116:12 118:17 119:22 120:7 120:23 124:5 127:7 128:2 128:3 128:4 130:8 130:9 145:9 147:3 152:9 152:9 152:11 152:16 152:24 153:9 156:1 162:22 169:3 177:1 179:15 181:11 183:23 183:24 183:25 184:3 188:3 189:10 189:17 191:17 194:3 196:15 196:16 196:24 198:16 199:5 199:5 199:9 199:12 199:14 200:5 203:11 203:16 205:10 208:4 214:6 214:18 221:13 222:11 232:7 232:20 232:24 233:1 233:6 233:21 234:12 234:13 235:10 236:7 238:2 238:10 238:11 238:11 241:21 244:2 247:22 248:9 248:11 248:15 249:12 250:7 250:12 251:18 252:13 253:21 254:3 254:6 254:7 254:13 254:13 255:9 255:17 257:15 257:20 257:25 258:1 258:4 258:8 259:6 259:6 263:3 267:13 274:17 274:18 276:12 278:2 278:4 279:2 279:6 282:11 283:5 285:23

**hadn't(1)** 279:23
**hale(2)** 6:20 10:33
**half(4)** 148:11 148:20 163:4 284:18
**half-hour(2)** 156:24 281:23
**hand(4)** 11:12 92:19 92:20 190:1
**handed(3)** 48:21 261:1 264:12
**handle(4)** 88:17 124:5 233:2 233:4
**handled(2)** 126:18 193:14
**handling(1)** 47:17
**hands(2)** 101:24 101:25
**handy(1)** 275:16
**hanover(2)** 14:3 14:8
**happen(18)** 39:21 83:14 151:6 153:15 153:8 158:6 167:22 168:10 168:13 168:17 168:18 174:22 175:5 204:11 204:11 234:19 285:20

**happened(11)** 20:1 23:13 26:18 27:1 27:11 28:1 29:13 60:15 68:23 69:8 204:12

**happening(1)** 63:14
**happens(8)** 110:13 122:18 143:22 167:20 167:21 168:17 168:20 175:17

**happy(4)** 216:17 219:2 219:8 259:25
**harbor(1)** 184:9
**hard(27)** 27:22 61:9 83:6 107:1 119:24 126:7 126:8 130:22 136:12 136:13 137:18 144:13 144:21 144:22 144:23 144:24 146:16 173:4 201:1 253:8 259:22 260:16 260:17 261:1 264:17 285:13

**harder(1)** 140:14
**hardly(1)** 122:20
**harrisburg(1)** 1:43
**hartenstein(9)** 70:3 70:11 71:5 71:14 73:3 73:20 73:23 285:22

**has(55)** 16:16 16:19 25:21 42:8 42:9 42:10 44:14 47:21 48:11 48:14 49:20 60:15 80:18 81:10 81:16 83:13 83:18 88:24 88:25 90:2 96:3 109:7 113:15 120:7 127:2 128:9 129:24 130:21 134:15 136:23 143:8 150:17 150:20 153:19 161:11 162:3 170:19 170:21 179:18 203:22 204:12 210:21 213:25 214:2 222:19 222:24 224:11 232:3 247:6 255:25 260:7 276:7 277:20 280:14

**hasn't(3)** 29:14 88:14 238:6
**hat(5)** 119:19 135:18 136:11 143:11 146:6
**hauer(3)** 2:19 8:14 90:11

**have(301)** 11:11 12:14 12:20 13:7 13:12 13:13 13:25 15:10 15:20 16:18 16:21 16:24 17:15 17:24 21:4 21:10 22:19 23:18 24:20 25:11 25:17 26:3 26:9 27:8 27:10 30:5 31:13 32:23 32:24 33:17 34:4 35:22 36:12 36:12 37:3 37:6 37:10 37:13 38:16 38:25 39:11 39:14 40:1 41:7 41:18 41:20 41:21 42:1 42:2 43:3 44:2 45:10 50:15 51:7 53:18 55:11 55:24 59:16 60:21 61:17 63:21 64:5 66:15 68:3 68:20 68:22 69:16 73:9 73:12 76:8 76:15 76:21 77:8 80:1 80:17 81:20 82:15 82:22 83:7 83:22 84:3 84:23 84:23 85:6 87:15 90:1 90:16 90:18 92:5 93:12 93:16 94:23 95:17 95:21 96:3 97:3 97:14 97:18 98:4 99:4 99:6 100:13 100:21 100:24 101:1 101:4 101:22 102:3 102:6 102:9 102:13 102:18 103:17 104:1 105:12 105:14 108:16 108:17 108:21 108:23 110:24 111:2 111:14 111:20 112:2 113:13 114:11 114:12 114:14 115:24 118:19 118:20 119:19 119:21 120:25 122:9 125:3 125:13 126:6 128:11 128:14 130:1 132:12 132:24 133:8 135:12 136:15 136:22 138:4 139:24 140:1 140:9 140:22 142:16 144:5 144:10 144:11 144:15 144:16 145:1 145:2 145:10 146:5 146:9 146:14 148:2 148:3 148:22 148:24 150:10 151:3 151:6 151:10 154:4 155:3 156:3 159:3 159:13 160:14 162:18 163:1 164:2 164:22 164:22 164:23 164:24 164:25 165:11 165:24 166:7 166:7 166:7 166:8 166:8 166:9 166:9 166:8 168:4 169:8 169:13 169:25 172:7 173:18 173:24 174:3 174:9 174:11 175:4 175:18 176:11 176:22 177:4 177:20 178:1 179:8 181:10 182:20 182:21 184:5 185:6 185:6 186:3 186:6 186:24 189:10 190:5 190:24 192:5 194:21 195:21 195:23 199:22 200:9 201:7 202:18 203:20 204:4 204:13 204:24 205:15 205:15 205:20 206:2 207:6 207:9 208:4 208:8 208:13 208:14 208:17 209:24 210:4 211:2 211:7 211:15 212:22 213:2 215:18 215:25 217:12 217:19 219:6 219:17 219:25 220:13 221:15 222:2 223:19 225:11 228:7 228:14 230:7 230:13 231:21 232:10 232:11 233:15 234:9 234:18 236:5 236:7 236:24 238:25 240:8 240:9 243:13 244:22 244:23 245:6 247:2 247:22 253:25 256:4 256:6

**have(45)** 256:23 259:9 259:17 259:19 260:9 261:13 262:11 263:15 263:19 264:3 264:7 264:10 264:16 264:22 265:3 265:5 265:10 266:11 266:23 267:14 268:25 270:7 275:16 277:4 277:10 277:12 277:13 277:15 278:5 278:15 280:10 281:22 282:8 282:18 283:5 283:15 284:4 284:8 284:9 284:24 285:3 285:13 285:19 286:4

**haven't(5)** 29:12 89:14 169:18 169:23
**haven't(2)** 95:16 232:16
**having(21)** 29:25 36:3 55:20 61:12 61:14 67:22 70:5 75:17 90:25 90:25 118:10 152:12 152:20 161:5 175:11 180:7 194:17 194:23 208:2 208:21 245:9

**he'll(2)** 284:15
**he's(22)** 47:10 49:12 50:5 51:13 52:1 165:12 70:12 70:13 70:14 72:19 72:20 73:10 76:24 88:12 88:15 91:21 202:17 203:4 203:4 284:20 284:23 285:9

**head(11)** 46:20 50:14 232:8 232:11 232:21 233:4 233:21 235:25 256:25 258:13 283:14

**heading(2)** 227:13 279:24
**hear(8)** 24:3 43:20 106:6 113:25 172:10 173:11 176:3 219:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**heard**(11) 36:12 36:17 43:13 44:5 46:12 95:16 101:19 106:5 127:1 180:7 286:1

**hearing**(8) 29:19 55:19 65:9 161:8 172:15 279:24 283:15 283:17

**heavily**(2) 152:2 202:20
**heck**(1) 126:20
**heilbut**(1) 8:46
**held**(4) 12:20 13:25 93:16 128:13
**help**(5) 40:8 55:6 106:2 224:13 250:5

**helpful**(7) 73:7 87:21 119:6 225:4 282:10 282:10 283:23

**helping**(1) 199:12
**her**(9) 13:22 24:9 24:9 25:19 36:8 52:1 60:16 77:10 80:26

**hercules**(1) 2:34
**here**(63) 15:19 43:13 56:12 61:1 64:6 77:9 89:15 100:1 100:1 100:2 100:3 100:13 100:25 104:7 107:19 108:6 109:1 113:1 115:11 116:13 117:19 117:23 118:3 119:2 121:19 125:13 132:9 134:14 134:18 135:14 136:16 137:14 140:2 142:14 142:18 147:4 148:8 151:25 156:21 159:14 170:23 175:24 191:14 195:3 198:12 199:2 204:20 206:11 246:19 254:19 259:15 262:16 265:23 265:23 266:2 266:8 269:22 270:13 273:21 282:4 283:15 285:22

**here's**(6) 76:25 178:19 178:20 195:4 200:25 200:25

**here's**(3) 139:3 143:3 150:18
**hey**(3) 126:25 168:5 249:25
**he'd**(1) 155:11
**he's**(9) 52:17 109:15 120:5 133:14 133:25 139:10 140:11 140:18 154:21

**high**(41) 12:5 21:7 21:9 24:2 24:18 103:14 104:6 105:11 124:12 126:22 127:11 137:17 140:20 148:10 150:13 151:21 154:1 154:22 157:11 159:15 162:25 164:17 164:22 165:6 166:7 167:14 167:19 168:6 168:16 168:20 171:21 171:23 173:6 174:4 201:13 209:7 215:10 216:7 233:24 234:5 271:1

**high-settle**(1) 148:9
**high-settlement**(9) 119:12 126:24 137:8 137:9 138:20 142:16 142:23 149:7 245:19

**higher**(18) 13:7 109:13 127:13 137:14 143:14 154:15 155:13 157:25 158:1 158:1 163:2 209:19 214:22 215:5 239:1 239:4 251:1 278:18

**highest**(1) 117:17
**highlight**(2) 98:3 224:19
**highlighted**(1) 91:19
**highly**(8) 130:4 130:12 133:13 139:6 142:4 142:5 227:23

**him**(39) 23:7 54:13 55:19 69:22 70:17 70:25 71:5 73:8 73:9 74:10 74:13 74:16 74:21 75:3 75:9 75:15 75:18 88:5 88:16 89:3 89:5 90:12 90:25 91:13 91:16 199:12 201:20 201:21 202:24 203:2 203:6 243:23 246:7 280:21 282:10 285:4 285:10 285:13 285:23

**himself**(1) 49:13
**hinder**(2) 111:10 130:2
**hindsight**(1) 145:2

**his**(60) 25:15 26:6 47:15 50:23 67:17 67:23 70:3 71:1 72:22 73:5 75:15 88:7 88:7 88:10 88:14 88:23 91:3 91:3 91:4 91:8 91:19 102:25 109:12 109:14 109:15 109:16 113:15 113:15 120:7 123:24 124:6 127:2 133:13 155:16 160:23 169:1 170:20 199:11 199:14 199:17 200:21 230:13 236:19 236:24 236:25 237:2 237:2 237:1 237:16 237:22 238:16 240:1 240:12 243:2 244:7 244:20 246:5 247:12 285:4

**history**(2) 267:14 279:4
**hit**(7) 115:22 137:25 138:17 146:13 146:15 162:18 252:25

**hitting**(3) 144:5 146:7 171:19
**hold**(3) 12:24 28:14 128:7
**holder**(4) 64:1 134:2 178:24 218:21
**holders**(7) 176:5 210:4 211:8 215:3 219:1 263:17 270:8

**holy**(1) 12:5
**home**(7) 153:24 173:9 174:17 175:25 178:16 226:7 283:14

**homeland**(1) 95:1
**homerun**(12) 115:18 115:21 115:22 137:24 138:17 140:22 144:5 146:7 146:13 146:15 153:20 153:22

**home'**(1) 73:2
**honestly**(1) 53:1
**honor**(86) 11:14 11:5 11:8 11:11 24:5 24:8 25:9 25:14 26:1 28:4 28:15 29:11 29:11 30:2 30:6 30:18 35:25 40:12 40:25 40:11 43:3 43:17 54:24 55:9 60:14 69:4 76:15 80:23 80:25 82:11 83:21 85:8 85:14 85:22 85:25 87:16 90:10 91:11 92:2 92:11 92:11 102:23 103:5 103:10 105:19 105:23 106:22 147:10 160:14 176:7 176:14 176:18 180:22 185:20 200:25 201:20 219:7 221:25 222:5 223:22 223:14 224:19 224:22 225:11 225:16 255:25 258:15 259:24 260:7 260:7 260:21 260:24 261:11 261:18 264:11 264:15 264:19 272:20 273:24 275:16 281:22 282:1 282:4 282:16 282:18 286:5

**honorable**(1) 1:18
**hope**(5) 56:15 73:1 181:2 225:13 250:1
**hoped**(1) 88:22
**host**(2) 95:15 101:23
**hot**(2) 89:17 89:19
**houlihan**(1) 198:25
**hour**(5) 89:23 92:6 195:18 284:18 285:6
**hours**(4) 195:15 199:18 284:18 284:21
**housekeeping**(1) 92:13
**how**(108) 12:12 12:14 12:20 16:7 23:16 23:21 36:23 38:6 38:6 40:9 41:23 42:24 74:24 75:24 82:10 82:19 82:21 84:25 91:17 93:16 96:9 96:9 97:7 98:2 98:21 98:23 99:2 99:11 102:18 106:15 108:9 109:4 109:25 112:25 113:20 115:1 116:9 118:19 118:24 126:9 128:10 130:22 131:1 134:23 138:12 140:9 140:15 141:13 141:25 142:5 143:6 144:6 144:22 150:4 150:9 152:24 153:3 154:3 154:5 155:21 157:18 158:7 158:14 158:15 163:9 163:10 167:11 173:1 173:2 175:4 175:6 175:23 175:23 177:22 187:9 187:24 193:24 195:4 198:12 202:6 202:7 213:23 217:9 217:14 219:24 221:22 222:2 222:16 229:7 229:9 230:8 230:9 232:13 235:16 236:17 241:6 241:17 241:22 243:14 243:18 247:12 262:13 267:18 270:9 270:11 277:14 281:22 282:25

**howard**(2) 3:15 5:34
**however**(3) 86:9 239:4 281:11
**huge**(1) 166:12

**hundred**(2) 18:13 213:11
**hundred-and-fifty-dollar**(1) 214:8
**hurdle**(2) 217:17 217:18
**hurley**(54) 2:26 24:5 25:9 25:14 25:21 25:22 29:11 30:1 30:4 30:21 35:25 40:12 40:14 40:16 42:23 42:25 43:3 43:6 43:8 43:8 44:1 45:13 45:15 46:1 52:11 53:4 55:7 55:23 60:4 60:20 60:21 60:24 61:4 67:25 68:15 68:18 69:2 69:6 74:5 76:10 76:23 77:13 79:14 80:23 82:11 83:1 83:2 83:25 85:22 85:24 85:25 86:3 86:17 87:15

**hurt**(1) 225:7
**hybrid**(1) 169:2
**hyphenated**(1) 65:6
**hypothesized**(1) 221:9
**hypothetical**(6) 40:8 40:14 40:17 207:10 215:15 278:18

**hypothetical's**(1) 40:20
**i'd**(9) 71:23 80:23 88:16 89:16 248:15 255:8 256:23 284:25 285:7

**i'll**(22) 23:20 28:4 28:10 30:18 41:9 56:18 67:25 71:3 73:12 86:18 158:25 176:16 187:11 187:13 237:5 256:21 257:3 262:22 274:5 283:8 283:15 285:22

**i'm**(98) 12:18 13:12 28:5 28:9 33:7 37:13 37:13 40:19 40:25 43:8 49:5 54:20 56:4 56:11 56:12 57:7 58:7 63:18 66:2 69:9 70:9 76:23 77:20 82:25 87:6 87:7 159:1 159:1 161:6 161:8 167:2 168:21 173:2 176:18 177:7 177:24 179:2 179:7 181:2 182:6 182:25 183:15 186:23 188:21 188:2 190:15 194:24 197:2 198:19 201:20 203:9 205:4 207:6 208:24 212:3 212:4 213:5 213:5 213:16 216:17 216:17 217:23 218:8 219:8 223:2 223:12 232:17 232:18 234:3 234:4 234:6 238:5 238:14 238:24 245:9 249:19 250:10 250:14 250:16 251:16 253:11 253:12 254:25 256:25 259:16 259:16 259:25 261:16 262:21 264:4 264:5 266:24 268:23 275:10 280:25 282:4 285:3

**i've**(20) 12:21 12:22 28:6 36:16 36:17 38:19 42:3 44:5 48:21 87:5 168:12 175:10 179:5 195:4 196:3 208:3 224:25 247:5 251:25 285:18

**idea**(4) 68:22 89:17 89:19 158:21
**identification**(1) 261:20
**identified**(8) 31:12 33:15 79:5 126:1 147:23 157:9 229:13 262:20

**identify**(4) 20:20 20:24 64:8 78:20
**illinois**(2) 3:45 193:23
**illustration**(1) 272:1
**illustrative**(4) 117:7 149:25 150:1 271:25
**imagine**(3) 121:14 122:18 175:8
**imagined**(1) 118:18
**imagining**(4) 119:12 129:23 135:7 278:15
**immediately**(3) 64:2 192:2 192:4
**impact**(5) 23:22 24:15 66:20 218:25 253:3
**impeachment**(1) 60:18
**implications**(3) 165:20 259:7 263:4
**imply**(1) 105:5
**important**(20) 89:25 97:21 112:1 112:24 120:4 127:16 128:3 128:17 140:23 141:8 164:10 166:15 168:2 189:12 199:8 202:13 224:10 224:11 236:10 241:9

**importantly**(1) 105:9
**impossible**(3) 90:24 127:4 136:13
**impression**(1) 25:1
**inaccurate**(1) 69:17
**inadequacy**(1) 234:18
**inappropriate**(2) 29:20 36:5
**inc**(2) 6:12 9:43 9:43

**include**(13) 39:5 39:8 104:3 184:9 184:12 184:15 184:18 184:21 184:24 186:18 187:9 193:9 252:23

**included**(10) 125:5 125:5 163:18 187:14 212:22 212:24 235:7 272:6 275:1 275:22

**including**(13) 53:10 62:1 62:5 78:13 96:11 125:20 130:6 158:19 158:20 177:8 212:1 237:17 278:20

**income**(1) 127:7
**inconsistency**(1) 191:9
**incorporating**(1) 34:11
**increase**(3) 39:24 40:15 41:15
**increased**(2) 40:5 79:2
**increases**(1) 39:25
**increment**(1) 78:15
**incurred**(1) 124:6
**indeed**(4) 122:21 202:24 230:17 275:10
**independent**(12) 54:21 141:8 141:12 144:1 165:4 165:11 165:15 165:19 165:21 203:15 230:7 240:14

**independently**(1) 143:25
**index**(1) 287:1
**indicate**(2) 26:5 266:24
**indicated**(4) 24:9 71:4 88:6 184:4
**indicating**(2) 266:24 281:18
**indicative**(1) 281:12
**individual**(1) 183:21
**individually**(1) 19:22
**infer**(1) 145:16
**inference**(3) 98:19 98:21 99:3
**inform**(1) 87:21
**informal**(23) 123:15 123:22 124:8 124:16 126:6 137:23 143:14 144:3 162:6 162:11 184:25 226:3 226:16 227:1 227:7 227:17 228:23 250:13 250:23 251:3 253:2 253:6 253:7

**informal-step**(3) 257:15 258:5 263:6
**information**(2) 200:7 202:6
**informed**(2) 102:14 104:13
**initial**(2) 100:10 255:1
**injected**(1) 231:11
**injunction**(2) 273:12 279:25
**input**(3) 122:1 196:2 196:3
**inquire**(1) 29:12
**inserted**(1) 229:5
**insider**(2) 130:19 151:23
**insiders**(2) 151:16 154:1
**insolvency**(46) 109:20 109:22 109:24 110:11 111:22 112:7 126:21 127:13 134:8 135:21 139:23 139:24 140:1 140:5 140:13 141:5 141:13 141:19 141:19 144:21 144:23 146:3 164:24 166:9 204:17 230:14 231:2 233:16 233:19 240:8 241:5 241:7 241:12 242:3 246:24 252:5 252:8 252:16 252:17 252:19 253:4 253:9 253:10 281:12

**insolvent**(42) 110:13 110:15 110:18 110:22 110:23 111:1 111:3 111:4 112:1 112:4 112:6 112:8 119:14 123:9 125:7 125:9 133:21 136:12 138:2 144:8 144:12 144:14 144:18 144:9 145:9 152:15 152:16 163:15 163:22 163:23 169:20 170:11 229:24 245:21 247:8 249:16 252:3 252:9 252:9 252:12 252:12 252:14 252:18

**instance**(6) 31:9 33:11 38:25 204:6 235:5 266:9

**instances**(1) 236:22
**instead**(12) 94:8 117:24 119:22 138:3 149:17 163:6 168:23 170:18 174:23 175:2 251:19 267:20

**institute**(1) 93:15
**institutions**(3) 54:1 54:5 153:15
**instructed**(2) 46:23 47:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| instruction(1) 282:19 | | investment(3) 48:6 66:19 128:3 | | its(27) 22:9 26:23 58:23 61:7 81:14 81:16 104:20 114:6 121:20 125:17 125:19 126:1 126:11 126:11 126:12 128:15 169:18 183:10 200:12 205:2 209:10 238:22 275:8 275:11 278:1 279:5 281:10 | | joshua(2) 4:15 9:40 | |
| instrument(2) 169:2 169:6 | | investments(2) 128:3 128:4 | | | | journal(4) 96:23 97:1 97:2 97:2 | |
| insurance(3) 151:5 151:22 272:18 | | investor(1) 204:5 | | | | journals(3) 96:18 96:20 96:24 | |
| insured(1) 9:47 | | investors(7) 8:29 47:19 144:25 145:17 145:21 146:4 281:9 | | | | joy(1) 100:13 | |
| insurer(1) 150:23 | | | | itself(11) 16:9 16:12 66:8 90:14 161:2 202:21 237:19 239:21 243:18 262:22 279:23 | | jpm(8) 39:11 45:17 48:3 57:13 73:13 76:20 90:2 198:8 | |
| insurers(2) 150:22 151:8 | | | | | | | |
| insurmountabl(1) 91:15 | | | | | | jpmorgan(1) 9:4 | |
| integrate(3) 126:9 132:20 153:3 | | involve(3) 57:10 181:20 182:22 | | it's(72) 19:14 95:7 95:16 101:18 102:20 102:21 105:24 106:15 107:13 108:24 110:11 112:13 112:25 114:17 116:2 116:2 116:3 116:3 116:18 117:25 118:1 122:10 123:3 124:13 126:7 126:7 127:3 127:4 128:9 130:21 131:1 133:1 133:2 133:2 133:11 133:12 133:13 136:12 136:13 136:17 137:18 138:3 138:6 139:11 139:19 140:4 140:25 141:4 141:9 141:11 141:12 142:3 143:3 143:4 144:7 144:18 144:18 144:21 144:22 144:24 147:18 148:12 148:13 148:19 148:19 148:20 149:6 149:1 152:1 153:2 153:12 154:6 | | judge(14) 1:19 28:2 94:15 138:2 146:9 152:14 164:17 164:18 183:23 190:5 212:2 234:5 241:6 247:8 | |
| integrated(1) 119:16 123:5 | | involved(36) 14:15 14:16 17:3 17:19 41:18 41:25 44:25 46:2 46:6 46:9 46:10 46:11 46:13 48:4 48:17 50:19 53:15 53:17 53:22 54:1 57:19 57:20 58:2 58:6 58:9 58:12 58:22 59:18 63:23 88:18 90:2 99:22 181:24 202:20 208:7 273:15 | | | | | |
| integrating(2) 124:10 124:11 | | | | | | | |
| integration(90) 121:12 121:25 121:25 122:5 122:8 122:15 122:17 123:5 123:15 123:19 123:21 123:22 123:22 123:24 124:17 125:14 126:1 126:5 126:6 127:15 128:20 131:6 132:21 132:22 132:25 135:1 135:19 135:20 135:22 137:22 137:23 138:16 139:14 139:19 139:24 140:2 140:25 142:9 143:5 143:13 143:14 143:16 144:3 144:4 145:20 155:25 156:10 162:6 162:7 162:7 162:11 162:12 162:12 170:15 184:2 184:25 185:3 185:4 225:20 226:3 226:4 226:6 226:8 226:16 227:1 227:8 227:14 227:17 227:17 228:17 228:22 229:1 230:23 231:1 231:25 235:11 250:13 250:24 251:3 253:2 253:6 253:7 257:15 257:17 258:5 263:4 263:5 263:6 263:7 | | | | judged(1) 252:14 | |
| | | | | | | judgment(42) 102:14 105:4 110:25 123:4 128:16 130:7 131:3 151:4 151:8 165:8 168:3 168:5 168:7 169:10 198:17 199:3 201:14 208:1 208:7 208:20 211:4 214:16 230:10 230:19 230:20 230:24 231:10 231:13 232:13 232:13 234:4 243:14 243:16 243:19 243:24 244:24 245:10 247:7 252:10 257:16 258:23 276:22 | |
| intended(2) 201:24 228:11 | | | | | | | |
| intending(2) 130:11 130:12 | | | | i'd(6) 100:15 102:24 105:20 105:23 147:15 154:19 | | | |
| intent(13) 110:10 111:14 111:25 129:15 129:18 130:1 131:8 153:9 217:5 231:4 232:5 242:3 242:13 | | involvement(5) 23:5 47:12 57:8 57:20 | | | | judgments(6) 98:3 241:15 241:23 243:18 255:12 267:7 | |
| | | involves(3) 99:7 99:9 181:17 | | | | | |
| | | isn't(31) 36:3 44:25 47:4 47:22 51:7 53:12 54:3 54:23 56:20 56:23 58:22 59:5 59:11 59:19 61:5 62:3 63:13 64:22 66:6 66:13 79:12 82:12 181:12 189:12 216:11 241:14 243:15 250:5 270:9 270:11 282:11 | | i'll(9) 92:8 97:7 110:24 115:24 116:20 118:6 137:17 147:16 150:22 | | july(5) 23:14 50:16 50:21 75:7 76:2 | |
| intentional(17) 80:9 80:12 216:23 217:1 217:12 217:15 217:19 239:12 242:1 242:1 243:3 243:8 244:13 244:17 244:19 252:24 270:25 | | | | | | jump(2) 115:15 149:15 | |
| | | | | i'm(51) 86:24 93:14 95:10 96:4 96:12 96:24 97:11 98:9 98:9 98:10 98:10 98:11 98:12 99:10 101:10 102:4 102:10 109:6 118:18 119:1 119:12 119:13 127:2 129:23 135:7 135:8 135:11 135:21 136:2 136:25 137:2 137:11 137:23 137:24 138:14 143:12 138:8 139:8 139:12 140:16 141:24 143:12 146:8 150:10 153:24 153:25 154:2 154:20 155:16 156:14 156:20 | | jumped(2) 131:19 142:10 | |
| | | isn't(3) 94:13 112:11 138:14 | | | | jumps(1) 149:12 | |
| intentionally(2) 142:21 142:22 | | isolation(1) 183:18 | | | | juncture(1) 285:8 | |
| intently(1) 146:23 | | issuance(1) 26:15 | | | | june(6) 102:12 123:1 128:12 138:17 142:10 146:3 | |
| intercompanies(1) 210:21 | | issue(55) 43:10 54:10 54:22 87:21 87:25 90:1 92:8 126:5 126:8 126:14 128:11 129:4 158:14 187:14 187:20 188:20 198:1 204:19 204:20 205:7 220:17 225:21 226:20 229:19 235:4 235:17 237:12 238:5 238:21 238:23 239:6 242:1 243:12 243:14 243:24 244:22 245:7 247:20 253:25 253:2 263:16 263:16 265:14 265:22 266:2 266:10 266:11 266:22 267:10 267:11 267:24 267:25 268:2 268:3 284:12 | | | | | |
| intercompany(1) 210:23 | | | | i've(25) 92:7 94:24 96:6 96:2 96:25 100:8 100:19 101:3 102:6 111:16 115:13 119:17 119:25 120:25 135:22 137:20 137:21 137:25 138:1 141:15 143:25 146:1 149:2 150:16 152:6 | | just(157) 14:16 16:15 24:5 24:8 24:9 24:13 25:4 26:11 28:10 29:1 29:9 29:23 30:2 31:16 33:20 34:10 37:16 39:4 40:8 41:10 45:8 50:22 53:17 55:9 62:14 64:1 64:7 67:1 69:18 72:4 74:12 76:6 81:18 83:7 83:9 84:20 85:25 87:19 90:5 91:16 97:19 99:19 100:2 101:7 101:17 101:21 103:5 103:12 103:17 104:1 104:6 104:7 105:23 106:5 106:8 109:2 109:18 114:15 114:21 115:23 118:11 120:16 121:4 121:24 122:22 124:19 126:7 129:21 131:19 132:8 135:5 136:21 137:8 138:22 138:25 140:6 140:7 147:14 147:24 150:4 156:14 157:17 158:10 159:15 159:22 160:2 162:11 162:24 162:25 165:3 166:21 171:4 171:11 173:1 175:7 176:7 176:10 177:23 179:11 179:13 180:12 180:14 185:12 185:24 186:4 186:11 186:12 186:13 187:2 190:15 191:9 193:17 194:7 194:9 195:24 200:22 208:23 208:25 209:13 214:6 215:19 218:16 221:7 221:11 223:12 229:13 230:1 232:17 236:24 238:22 239:5 245:5 246:9 250:6 255:5 256:19 257:19 261:10 261:12 261:22 262:10 262:18 264:1 264:4 266:15 269:3 274:1 276:10 278:4 279:7 281:7 283:11 283:22 283:25 284:11 285:17 285:20 | |
| interest(35) 16:2 16:8 76:18 76:25 115:17 163:16 163:20 164:18 164:23 165:9 165:1 166:8 166:25 167:12 167:15 167:20 168:2 169:3 171:24 184:13 194:19 208:4 208:5 208:7 208:9 214:4 214:13 214:17 214:18 214:21 215:5 215:9 215:15 215:17 215:18 | | | | | | | |
| | | | | jaime(2) 73:4 73:9 | | | |
| | | issued(8) 23:15 76:6 76:7 76:7 248:21 249:4 274:16 274:22 | | jam(1) 284:14 | | | |
| | | | | james(7) 1:24 1:25 1:27 3:35 4:14 5:39 9:34 | | | |
| interested(4) 10:42 64:22 71:21 74:10 | | issues(45) 29:18 77:5 96:15 99:8 99:8 99:10 99:20 99:22 100:15 100:17 101:4 101:24 108:8 120:2 120:4 125:23 126:2 129:8 130:14 134:4 181:22 181:23 184:6 234:18 185:12 186:17 186:18 229:2 230:2 231:6 231:7 231:15 232:22 233:13 234:10 234:12 235:7 237:3 240:15 244:2 244:9 245:8 254:16 265:14 | | | | | |
| interior(2) 250:9 250:15 | | | | | | | |
| intermediary(1) 62:13 | | | | jane(1) 2:42 | | | |
| internal(3) 16:25 47:21 254:12 | | | | january(2) 18:22 248:11 | | justifies(1) 111:15 | |
| internally(1) 259:9 | | | | jarashow(1) 8:22 | | justify(1) 208:25 | |
| internet(4) 95:11 128:4 128:8 128:9 | | it'd(1) 279:20 | | jarrett(1) 286:23 | | justin(1) 6:47 | |
| interpretation(7) 51:19 52:22 220:9 240:10 242:25 244:7 267:1 | | it's(130) 11:17 15:12 17:17 18:2 19:8 19:21 21:2 27:14 28:20 29:4 29:19 29:23 31:12 34:6 34:25 35:10 35:11 36:18 37:1 37:19 39:16 39:20 40:3 40:14 40:20 41:1 42:18 42:20 44:12 44:24 48:22 53:9 53:1 56:3 56:11 56:15 61:9 63:24 63:25 67:2 67:11 71:13 72:1 83:6 83:22 84:24 86:15 87:2 90:16 158:25 160:4 160:18 160:19 160:20 163:3 163:7 163:8 163:8 165:20 165:23 166:11 166:14 166:16 166:16 167:25 167:25 167:25 168:1 173:4 174:1 174:16 174:17 175:13 175:23 175:24 176:13 177:23 178:8 178:13 178:22 179:2 195:22 199:21 200:22 213:24 216:2 219:9 222:8 223:20 225:14 225:14 226:15 226:24 226:21 228:20 237:14 237:15 238:1 238:7 242:4 245:4 245:24 246:5 253:7 256:3 259:19 259:25 260:4 262:21 264:4 264:4 264:11 265:8 268:2 268:2 269:2 276:17 277:19 282:2 282:12 282:14 283:16 284:2 285:18 285:19 | | jason(2) 5:19 5:20 | | kalenchits(2) 8:49 8:49 | |
| | | | | jean-marie(1) 6:5 | | kaminetzky(3) 2:6 90:5 90:5 | |
| | | | | jeff(6) 46:18 50:11 50:12 50:15 51:13 | | kansa(1) 7:13 | |
| | | | | jeff."(2) 51:1 56:18 | | kapadia(4) 47:9 47:12 53:23 198:9 | |
| | | | | jefferies(2) 6:46 6:46 | | kaplan(2) 8:20 197:14 | |
| interpreted(3) 53:1 82:19 238:6 | | | | jeffrey(1) 10:10 | | kasowitz(1) 10:14 | |
| interpreting(3) 165:8 181:25 184:18 | | | | jenner(1) 5:4 | | katharine(1) 4:22 | |
| interview(3) 191:17 197:12 197:13 | | | | jennifer(1) 9:48 | | katherine(1) 7:30 | |
| interviewed(2) 23:8 191:14 | | | | jersey(1) 12:11 | | katten(1) 10:38 | |
| interviews(2) 197:5 199:2 | | | | jessica(1) 5:28 | | kay(2) 4:40 10:20 | |
| into(52) 14:7 14:8 32:4 40:24 42:9 43:22 47:20 56:17 80:2 80:7 80:10 80:13 80:18 97:10 102:1 102:2 104:25 105:20 107:18 114:8 115:2 120:3 132:6 132:17 143:20 146:16 149:21 157:18 157:22 159:13 159:21 162:24 169:13 170:2 170:3 171:17 173:19 179:2 179:15 182:14 211:2 216:3 225:13 228:6 231:11 234:9 247:9 265:4 266:20 267:11 281:14 284:14 | | | | jillian(1) 7:17 | | kaye(1) 10:6 | |
| | | | | jim(1) 92:4 | | keep(5) 23:24 104:1 222:14 233:3 256:24 | |
| | | | | jimmy(7) 71:16 71:17 71:17 71:20 71:21 72:2 73:1 74:12 | | keeping(3) 103:5 194:7 | |
| | | | | | | kellogg(1) 93:13 | |
| | | | | job(4) 67:17 69:23 189:18 254:11 | | ken(2) 7:13 23:3 | |
| introduce(1) 92:8 | | | | jobs(1) 68:5 | | kenneth(1) 9:19 | |
| inundated(1) 104:14 | | item(1) 31:12 | | joe(1) 10:51 | | kenney(2) 197:13 197:14 | |
| investigate(1) 17:25 | | iterations(1) 58:7 | | john(2) 8:17 10:39 | | | |
| investigation(9) 16:5 16:10 16:20 17:18 18:10 18:17 23:5 23:9 23:10 | | | | johnston(1) 4:14 | | | |
| | | | | joining(1) 12:8 | | | |
| | | | | joint(2) 93:22 95:25 | | | |
| | | | | jonathan(1) 10:21 | | | |
| | | | | jones(1) 3:42 | | | |
| | | | | jordan(1) 10:6 | | | |
| | | | | joseph(1) 94:20 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **kevin**(2) 1:18 1:26 | | **kulnis**(129) 11:9 11:18 11:21 11:23 12:2 12:8 12:16 13:2 13:9 13:18 13:24 14:10 14:14 14:22 15:10 15:14 15:23 16:1 16:7 16:16 17:3 17:19 17:24 18:6 18:19 18:25 19:6 19:18 20:1 20:7 20:15 20:19 21:4 21:10 21:16 21:23 22:23 23:4 23:13 23:18 23:21 24:13 24:20 26:14 26:18 26:25 27:19 28:10 28:15 28:18 29:1 29:8 30:10 30:12 30:14 30:16 30:23 31:1 31:8 31:11 31:15 31:18 32:1 32:10 32:17 33:2 33:5 33:10 33:13 33:20 33:24 34:9 34:16 35:8 35:13 35:15 36:12 36:16 36:22 38:2 38:6 38:19 39:4 39:8 39:13 39:18 39:21 41:18 41:23 42:5 42:11 42:16 42:22 43:6 43:7 43:9 43:20 45:14 52:5 55:4 55:13 55:15 55:18 56:3 57:7 76:5 76:13 77:3 77:8 79:20 79:22 80:1 80:14 81:4 81:9 81:23 82:1 82:9 82:15 82:17 82:25 83:9 83:12 83:16 84:3 85:5 86:4 87:17 287:7 | | **lay**(3) 84:24 103:13 228:2 | | **let's**(26) 95:17 95:20 103:12 107:17 114:18 115:14 118:8 128:19 131:23 132:8 134:17 134:20 134:24 136:14 137:7 138:22 138:23 138:24 143:3 147:4 148:4 148:22 149:23 153:9 154:9 156:14 |
| **key**(52) 6:2 113:1 115:19 115:19 121:19 122:1 125:22 126:2 126:5 126:8 126:12 129:8 131:13 140:2 170:4 | | | | **layton**(2) 2:12 9:10 | | |
| | | | | **lazard**(4) 113:25 188:23 191:21 196:2 | | |
| **kick**(1) 215:18 | | | | **lazard's**(2) 163:6 163:7 | | **level**(43) 3:7 27:9 101:20 101:21 103:14 |
| **kim**(1) 9:5 | | | | **lbo**(23) 16:5 16:10 16:11 16:17 16:20 17:1 17:18 18:1 18:1 18:4 18:21 19:9 19:11 20:6 32:13 36:24 39:17 58:15 58:24 61:22 103:1 103:19 169:5 | | 104:6 105:3 105:3 111:17 111:18 112:5 112:6 112:8 112:15 112:18 112:20 113:21 127:14 132:13 133:18 135:11 135:13 137:13 143:8 143:10 159:15 161:24 162:7 162:9 162:14 162:25 174:7 177:2 177:2 177:13 177:13 177:17 178:25 187:18 210:4 212:6 235:21 275:1 |
| **kind**(11) 52:8 61:21 104:7 130:18 154:20 159:15 225:19 226:3 233:6 236:1 240:4 | | | | | | |
| **kinds**(2) 122:8 161:11 | | | | **lead**(5) 141:6 141:7 239:9 241:15 278:20 | | |
| **king**(6) 2:15 3:6 4:24 4:30 12:6 12:7 | | | | **leaders**(1) 73:10 | | **levels**(1) 108:17 |
| **kira**(1) 7:40 | | | | **leadership**(1) 73:6 | | **leverage**(19) 51:12 52:15 55:21 57:11 95:1 96:11 96:14 97:15 97:16 99:9 99:11 99:13 100:5 101:20 114:7 132:16 133:5 197:20 201:25 |
| **kirby**(1) 3:19 | | | | **leading**(2) 25:9 83:21 | | |
| **kizzy**(1) 8:22 | | | | **leaning**(2) 119:24 119:25 | | |
| **klauder**(1) 4:29 | | | | **leap**(1) 41:9 | | |
| **klee**(3) 23:3 23:6 203:21 | | | | **learn**(4) 99:15 100:20 102:10 107:25 | | **leveraged**(5) 47:11 47:16 130:4 130:12 203:25 |
| **klee's**(1) 23:25 | | | | **learning**(1) 101:17 | | |
| **knew**(9) 16:4 82:2 119:14 130:13 194:13 200:5 238:23 275:8 278:7 | | | | **least**(16) 28:8 36:11 61:6 67:16 92:6 110:23 152:17 156:9 172:17 177:6 194:4 200:14 206:10 214:12 218:24 283:22 | | **leverage"**(1) 52:19 |
| | | | | | | **levered**(1) 204:10 |
| **knock**(6) 113:3 164:3 164:15 178:21 179:13 226:10 | | **kurinskas**(1) 13:21 | | | | **levin**(2) 10:4 10:4 |
| | | **kurtz**(1) 64:10 | | **leave**(2) 217:22 238:5 | | **levy**(1) 7:44 |
| | | **l.a**(1) 285:10 | | **leaving**(3) 22:7 66:17 221:3 | | **lexington**(1) 2:8 |
| **knocked**(3) 163:14 174:6 177:25 | | **labeled**(1) 109:19 | | **lebouel**(1) 4:12 | | **liability**(3) 99:24 152:3 272:18 |
| **knocking**(2) 164:9 178:14 | | **lack**(10) 140:1 140:19 230:14 231:2 234:22 235:15 240:9 241:8 245:22 246:25 | | **led**(1) 255:11 | | **liable**(2) 150:24 150:25 |
| **know**(136) 11:15 11:17 15:7 18:24 23:2 24:3 25:17 29:12 29:23 30:17 31:13 33:15 39:18 41:13 44:16 46:12 47:18 50:20 50:20 51:1 52:5 52:7 53:1 54:18 55:18 57:13 58:14 59:13 59:14 60:1 61:6 61:22 61:15 64:7 69:11 71:8 71:21 72:4 72:7 72:22 73:12 74:8 74:25 75:1 76:10 77:1 77:10 78:1 80:21 82:12 83:6 84:7 87:6 87:24 89:2 89:9 89:18 91:16 93:23 96:22 97:5 98:21 99:23 99:24 106:15 108:13 111:9 118:1 118:20 123:10 124:24 127:3 128:15 130:8 135:9 137:11 140:10 140:10 140:13 145:3 145:14 150:8 152:8 152:15 154:20 154:21 160:15 164:1 165:11 168:12 179:4 179:4 183:9 184:1 186:20 187:11 188:11 189:6 189:16 189:2 190:22 191:2 192:20 192:22 193:25 194:1 195:2 197:9 197:16 199:17 200:25 201:6 201:12 223:19 230:14 234:2 236:10 242:11 243:19 253:10 256:23 260:11 264:3 264:22 267:13 269:5 270:18 277:17 280:5 281:23 281:25 282:2 283:18 283:20 | | **lady**(1) 12:4 | | **lee**(8) 71:16 72:2 72:16 72:18 73:1 73:19 74:6 74:14 | | **liang**(1) 9:19 |
| | | **laid**(1) 80:24 | | | | **lie**(1) 105:10 |
| | | **lance**(1) 9:15 | | | | **liebentritt**(4) 4:47 191:14 191:16 191:22 |
| | | **landis**(3) 3:25 3:26 5:44 | | **left**(10) 66:25 92:20 133:22 133:23 135:1 139:17 141:17 141:17 156:24 266:10 | | **liewant**(1) 10:51 |
| | | **language**(1) 228:6 | | | | **light**(4) 24:22 156:4 156:7 156:13 |
| | | **lantry**(2) 1:26 64:11 | | | | **like**(39) 22:11 49:11 50:21 52:21 56:12 63:6 70:9 71:11 71:23 88:16 89:21 89:24 99:23 100:13 105:20 131:1 135:8 141:9 141:12 144:24 167:6 176:7 179:1 190:1 211:23 219:7 222:13 225:6 230:4 231:20 238:14 242:4 257:2 260:2 264:25 277:9 285:7 286:1 |
| | | **large**(11) 66:11 66:18 162:19 164:14 166:14 169:25 177:3 198:19 256:3 264:12 264:13 | | **legal**(21) 16:25 77:5 82:21 86:16 86:16 94:7 99:22 100:14 100:16 101:24 103:6 105:6 105:8 108:7 176:9 185:17 185:25 186:10 188:13 189:17 196:4 | | |
| | | **larger**(9) 35:22 37:9 37:10 63:9 66:12 169:16 164:2 167:12 220:21 | | | | |
| | | | | **legend**(1) 186:13 | | |
| | | | | **lemay**(1) 3:13 | | |
| **knowing**(2) 151:4 151:5 | | **largest**(1) 95:7 | | **lend**(3) 21:2 130:10 204:16 | | |
| **knowledge**(5) 29:3 42:5 55:7 75:23 192:6 | | **larsen**(1) 201:19 | | **lender**(10) 21:18 63:10 63:16 81:13 81:15 82:23 100:23 192:25 201:4 271:14 | | **likelihood**(27) 105:8 116:10 126:21 127:23 128:17 129:9 134:7 139:22 139:25 142:14 145:16 146:3 153:22 155:17 162:10 173:5 176:15 198:17 204:17 229:24 229:25 233:8 233:16 234:13 247:2 247:7 258:25 |
| **known**(4) 127:25 266:12 273:16 274:14 | | **larson**(3) 197:13 202:5 202:15 | | | | |
| **known"**(1) 267:1 | | **last**(34) 57:2 75:24 89:1 93:4 93:25 96:22 98:15 99:19 102:15 102:21 102:22 102:22 103:5 105:24 106:25 115:13 125:13 152:2 159:9 211:14 215:12 224:2 231:14 246:11 247:16 253:20 254:24 261:9 261:10 261:1 274:4 279:23 283:19 285:9 | | **lenders**(42) 4:4 6:16 10:33 16:6 18:4 19:10 19:15 20:4 21:1 21:5 21:24 22:8 22:10 22:13 22:16 23:25 24:3 24:10 24:14 27:24 28:23 28:24 34:3 35:1 37:15 38:16 62:5 62:7 62:9 66:10 66:15 66:18 67:3 67:7 78:13 81:17 81:21 86:6 170:12 170:14 210:9 211:15 | | |
| **knows**(1) 74:12 | | | | | | |
| **kookmin**(1) 95:6 | | | | | | **likely**(42) 16:4 24:18 130:17 140:16 141:14 150:14 151:2 154:6 156:12 167:24 169:19 171:3 173:2 175:4 175:23 176:15 191:2 198:12 207:23 210:18 212:23 212:25 213:18 217:1 217:5 217:15 241:5 241:15 243:2 243:16 243:17 244:7 244:22 252:13 252:15 268:3 268:12 269:12 271:21 272:15 277:20 278:5 |
| **korea**(1) 95:7 | | | | | | |
| **korpus**(1) 10:15 | | **late**(7) 88:11 89:9 90:17 145:23 151:5 197:25 281:23 | | **length**(3) 62:21 100:15 274:3 | | |
| **kowalczuk**(12) 46:24 47:1 47:4 49:3 49:5 50:9 50:23 52:13 53:20 56:5 56:13 198:9 | | | | **lengthy**(2) 23:15 147:3 | | |
| | | | | **leonard**(1) 1:33 | | |
| **kowalczuk's**(1) 50:4 | | **later**(15) 12:6 14:8 23:14 34:2 88:8 96:25 114:1 116:20 118:25 137:18 190:5 200:18 224:23 260:11 278:25 | | **leslie**(1) 9:7 | | **likes**(1) 124:12 |
| **kramer**(2) 10:4 10:4 | | | | **less**(13) 27:4 41:17 138:11 144:17 144:19 154:7 169:9 194:24 241:9 243:13 243:24 244:24 245:6 | | **limited**(2) 125:2 199:14 |
| | | | | | | **limits**(3) 150:22 151:9 152:7 |
| | | **latitude**(1) 90:18 | | | | **line**(25) 13:6 45:22 100:2 106:19 106:21 123:14 131:3 132:15 136:16 147:5 190:9 190:12 210:24 220:13 225:12 228:18 228:18 229:10 237:2 237:9 254:17 266:23 268:24 269:8 280:12 |
| | | **laughter**(15) 11:16 25:25 28:13 41:6 45:12 83:3 83:5 83:8 152:5 179:24 180:16 181:5 197:23 219:11 222:6 | | **let**(63) 31:11 31:13 33:13 33:15 35:15 38:21 50:25 64:6 72:4 73:12 77:20 95:24 103:25 105:9 106:1 109:6 112:2 120:5 121:4 121:24 131:16 131:16 147:1 152:17 155:19 156:3 157:17 158:10 159:22 161:1 172:18 174:21 179:3 188:18 189:2 192:20 205:14 208:13 212:16 212:17 212:24 216:14 216:20 219:14 221:7 233:21 237:2 242:6 245:20 247:22 249:10 249:19 250:5 264:3 264:22 268:19 269:5 269:24 270:18 270:20 273:9 274:3 283:11 | | **lines**(3) 98:16 208:21 228:19 |
| | | | | | | **lion's**(1) 117:12 |
| | | **laurie**(1) 2:32 | | | | **list**(9) 49:23 49:25 49:25 187:12 197:4 198:22 235:7 261:11 262:16 |
| | | **law**(60) 3:4 10:14 11:6 19:4 20:22 92:16 93:12 93:22 93:23 94:3 94:4 94:14 94:14 95:15 95:25 96:1 96:8 96:12 96:17 97:12 97:18 97:21 97:22 98:20 99:5 99:14 99:16 99:20 99:25 100:19 101:18 104:12 107:25 108:2 118:20 119:15 123:19 133:10 137:1 150:15 158:13 176:14 181:2 181:4 181:7 181:19 181:21 182:18 182:19 182:23 183:13 184:18 185:5 190:23 203:4 203:5 203:14 239:23 239:24 240:25 | | **let's**(30) 16:15 31:4 33:5 36:22 54:9 59:16 64:5 91:11 162:21 162:21 166:18 177:12 194:22 203:1 203:24 205:17 213:3 213:22 222:18 224:13 233:5 239:6 245:12 247:15 253:7 254:15 255:19 259:2 267:9 283:3 | | **listed**(5) 95:7 160:16 196:18 196:23 199:2 |
| | | | | | | **listen**(1) 172:8 |
| | | | | | | **listening**(3) 44:6 191:18 191:23 |
| | | **lawyer**(6) 36:3 82:12 280:2 280:4 280:16 283:2 | | | | **listing**(2) 109:2 185:13 |
| | | | | | | **literally**(1) 96:1 |
| | | **lawyers**(9) 101:4 177:7 186:7 196:4 201:4 202:8 202:8 248:13 248:17 | | **letters**(1) 167:6 | | **litigated**(1) 150:9 |
| | | | | **letting**(2) 11:15 282:9 | | |
| | | **law's**(1) 118:23 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| litigation(62) 20:15 25:5 25:8 26:10 26:12 32:1 32:4 34:20 34:21 34:22 34:24 35:21 35:23 35:24 36:2 36:4 36:9 36:14 36:19 37:10 43:10 43:12 44:11 62:8 66:25 79:5 79:11 79:23 80:2 80:3 80:7 80:10 80:19 98:1 103:24 104:4 116:17 116:24 117:8 117:10 117:18 117:22 118:3 118:14 118:1 147:14 149:3 149:9 149:22 150:7 150:21 152:25 154:4 206:25 209:10 209:22 221:2 271:15 271:22 271:22 273:16 280:24 | | lot(42) 19:1 22:16 23:25 24:3 35:13 36:2 37:3 42:2 52:8 74:12 74:13 75:1 80:4 80:20 88:10 95:18 96:3 96:7 98:8 98:22 110:11 116:7 117:14 118:5 134:15 136:5 144:24 145:9 153:11 154:8 157:20 173:19 174:7 174:8 178:9 179:23 210:22 230:2 231:6 233:1 255:3 270:24 | | mandava(2) 191:21 284:20 manges(1) 8:37 manufacturers(2) 14:3 14:8 many(17) 14:3 62:21 62:24 63:2 74:24 96:18 120:2 143:9 153:10 181:23 198:13 205:9 233:2 233:3 249:21 256:25 265:13 | | meaningfully(1) 210:25 means(12) 39:15 52:19 82:16 124:23 125:17 139:6 139:7 139:16 140:6 163:23 268:14 269:15 meant(5) 52:6 53:1 196:5 238:10 277:17 measure(2) 198:19 226:16 measuring(1) 158:18 |
| little(32) 25:1 35:10 42:18 67:1 88:11 89:14 90:17 101:7 103:15 106:18 106:23 107:18 109:12 112:21 122:4 129:21 130:1 131:20 145:13 151:23 153:14 154:21 170:6 178:12 183:1 216:20 222:5 222:13 231:21 254:20 270:21 270:23 | | love(1) 73:4 low(27) 11:14 105:10 118:17 126:18 127:4 127:10 129:20 131:4 131:5 136:3 138:6 142:25 143:1 143:3 148:9 149:6 157:10 163:1 168:15 168:23 169:3 173:5 209:7 213:10 233:23 245:19 270:25 | | map(1) 243:20 mapped(1) 236:1 marc(3) 3:18 5:24 5:30 march(5) 1:14 11:1 191:11 275:7 275:10 marginal(1) 164:4 marino(1) 4:41 mark(1) 9:11 marked(5) 33:14 185:17 261:20 281:8 287:15 | | mediation(26) 28:6 28:19 28:20 29:8 29:13 30:13 31:2 31:6 34:1 34:12 59:13 59:15 59:17 59:17 59:19 59:22 61:15 61:15 61:16 62:20 63:12 63:20 63:22 63:24 63:25 64:2 mediator(1) 28:2 meet(5) 19:24 20:3 29:9 30:14 30:19 meeting(9) 15:18 18:23 19:22 20:2 30:9 75:5 191:18 201:3 248:14 |
| litvack(1) 8:40 live(2) 126:14 260:4 llc(1) 8:25 llp(15) 1:23 3:12 5:11 5:23 5:37 5:44 6:4 7:29 8:37 9:4 9:14 10:5 10:9 10:20 10:38 | | low-mid(3) 119:22 137:16 271:13 low-middle(1) 154:21 low-settle(1) 148:8 low-settlement(6) 118:17 118:24 134:25 135:5 137:16 234:5 | | market(7) 1:11 2:35 3:28 4:42 5:13 146:9 146:10 marrero(1) 5:28 marsal(6) 9:43 9:43 113:23 188:3 191:22 196:3 | | meisel(1) 1:32 melwani(7) 24:23 25:15 25:20 26:3 74:18 75:22 77:3 melwani's(1) 25:12 member(9) 16:20 16:21 67:16 70:14 70:18 70:18 72:9 72:10 74:11 |
| loading(1) 130:23 loan(5) 14:2 34:23 40:2 47:17 267:19 loans(19) 13:13 13:14 32:6 32:8 40:1 40:6 47:17 112:5 112:9 112:13 130:20 132:14 132:15 132:23 266:5 267:17 268:4 268:13 269:13 | | lower(11) 124:16 135:25 139:11 150:17 156:9 157:25 166:4 210:19 230:16 230:18 277:13 lowest(1) 133:13 lucy(2) 8:33 8:34 ludwig(1) 7:17 lugano(1) 1:39 | | master's(1) 12:7 match(2) 109:15 250:1 material(1) 29:18 materials(2) 196:15 196:24 mathematical(5) 207:3 228:19 230:10 230:12 231:9 | | members(7) 19:2 63:5 67:4 67:9 67:12 68:4 70:21 memo(2) 186:14 187:21 memoranda(1) 16:25 memos(12) 99:21 185:13 185:17 185:25 186:4 186:7 186:10 186:16 186:19 187:5 187:14 187:17 |
| lodged(1) 86:15 logged(1) 199:17 logic(3) 123:5 143:11 226:12 logical(1) 110:21 logically(1) 165:14 long(16) 12:12 12:14 12:20 23:16 42:11 70:9 71:7 71:11 75:24 93:16 116:6 153:17 238:24 259:25 283:1 283:19 | | lunch(4) 88:17 89:25 91:23 92:6 lunchtime(1) 284:16 lynch(4) 2:31 10:20 104:17 152:10 lynn(1) 3:43 ma'am(6) 46:2 48:25 51:20 62:3 71:24 macquarie(2) 9:51 9:51 made(52) 15:11 15:13 18:2 19:8 19:10 19:13 19:13 23:24 25:22 32:21 42:10 63:2 66:23 88:3 88:6 88:13 88:13 98:4 106:9 106:21 114:5 118:25 130:20 139:21 159:24 160:24 169:1 169:19 200:11 207:14 207:19 208:1 208:11 211:4 219:2 245:20 254:12 254:23 257:15 271:6 276:2 283:12 | | matter(45) 14:12 14:15 14:19 41:19 46:18 82:21 82:21 92:14 101:9 112:4 116:8 120:10 124:17 125:8 147:24 150:19 153:7 156:2 156:13 159:4 162:14 165:7 166:10 166:11 170:10 170:16 177:18 179:9 206:17 206:19 206:20 207:2 215:20 217:21 218:10 219:18 239:23 239:24 239:24 240:25 241:4 241:24 272:22 273:8 286:19 | | mention(7) 35:4 43:11 66:4 66:5 74:6 74:14 106:5 mentioned(10) 21:23 29:1 44:18 65:21 66:1 96:17 115:7 116:12 217:22 217:24 merger(12) 102:2 126:14 143:20 143:22 144:14 151:15 277:3 277:4 277:7 277:11 277:19 278:4 |
| long-term(2) 274:13 274:15 long-time(2) 202:16 202:17 longer(3) 42:2 190:1 221:15 longest(1) 89:23 look(93) 45:11 54:10 78:14 88:15 89:4 89:5 89:6 91:13 106:24 115:14 116:7 121:14 123:3 123:4 123:6 124:9 124:20 125:2 125:7 125:10 126:10 131:1 131:1 137:16 138:12 138:18 138:24 141:1 144:7 145:11 150:6 153:4 156:8 156:11 158:7 182:6 183:17 183:19 185:16 186:3 196:10 197:2 197:4 199:13 205:18 219:19 223:2 223:23 225:19 226:11 226:17 226:22 227:1 227:18 231:24 233:21 234:13 236:24 236:24 241:6 242:6 242:8 244:18 250:23 254:15 254:17 255:19 255:20 255:24 256:22 256:23 259:2 259:22 259:2 259:25 262:13 262:14 262:21 263:10 263:23 264:8 265:16 269:3 269:21 271:9 273:19 274:3 275:15 276:5 279:4 279:18 280:7 | | madison(1) 12:1 madlyn(1) 2:41 maggie(1) 72:2 maggie."(1) 73:13 main(16) 91:10 106:12 108:6 108:7 108:9 109:2 109:18 127:19 133:18 134:6 164:14 165:6 166:15 208:21 213:4 263:8 major(8) 28:21 95:17 100:9 129:11 143:18 150:7 201:4 majority(1) 34:20 make(38) 41:2 41:9 66:24 87:18 88:8 90:15 90:19 91:13 91:18 92:22 105:4 106:5 130:8 130:24 132:8 134:17 141:2 146:5 156:15 159:23 162:2 164:7 166:12 171:1 175:22 195:7 197:21 213:5 220:11 241:15 247:11 249:5 254:7 258:9 259:3 272:7 282:3 | | matthew(2) 5:45 8:11 matured(2) 145:23 146:1 may(41) 11:12 12:15 29:24 30:5 30:10 36:15 43:18 52:3 52:19 55:3 55:11 55:16 76:4 87:18 87:21 87:21 89:16 90:22 90:22 91:15 92:16 111:20 172:14 180:4 180:20 180:22 204:4 211:7 231:21 240:19 260:20 263:15 273:14 274:8 278:22 283:4 283:4 283:9 284:13 285:11 286:6 maybe(35) 40:23 53:17 54:12 68:12 73:8 87:22 87:23 91:12 91:15 91:22 120:10 130:23 131:17 134:20 138:7 139:20 139:22 145:5 145:6 151:9 151:12 151:20 151:21 152:2 156:6 157:7 175:12 176:1 178:15 208:13 225:1 243:7 282:11 284:18 | | mergers(3) 14:4 94:18 203:21 merits(3) 16:17 58:23 59:2 merrill(5) 2:31 10:20 104:17 152:10 mess(1) 73:2 message(1) 118:3 messed(1) 106:15 mester(1) 4:15 met(12) 14:24 15:3 20:3 20:4 20:4 23:6 30:23 185:8 191:16 201:18 201:21 247:16 methodology(5) 98:3 107:18 219:14 258:10 258:22 |
| looked(9) 38:23 39:2 78:7 124:8 152:20 188:22 189:14 189:20 212:21 looking(26) 52:22 54:19 55:5 56:2 73:13 145:2 145:19 145:22 145:24 177:24 197:1 207:7 207:13 223:12 224:9 227:12 240:2 251:12 251:19 256:15 256:16 261:23 262:24 264:4 264:5 274:17 | | makes(3) 44:16 268:1 275:12 making(3) 40:22 64:20 188:7 male(1) 68:7 68:9 286:13 manage(5) 13:7 14:18 45:18 45:19 45:23 management(1) 8:10 management(21) 6:28 8:4 8:10 8:33 8:45 8:45 9:14 9:18 9:18 9:22 9:22 9:39 9:39 9:47 10:25 10:25 13:4 14:20 67:17 68:5 93:13 management-strategy(1) 95:10 manager(1) 13:12 manages(1) 44:22 managing(3) 13:23 14:12 47:10 | | mayer(2) 4:22 6:4 ma'am(1) 64:7 mccarter(1) 4:21 mccolm(1) 7:48 mccombs(1) 93:24 mccormack(1) 3:14 mccormick(2) 10:37 104:16 mccutchen(1) 10:9 mcdaniel(1) 3:5 mcguire(1) 5:45 mcneill(1) 2:33 mean(29) 27:21 41:5 52:2 58:6 59:7 61:10 69:9 78:8 82:18 91:19 122:4 124:22 131:11 131:15 132:11 133:20 139:20 160:12 218:17 220:6 225:5 237:10 238:2 238:6 244:8 265:24 270:5 276:17 277:16 meaning(3) 229:12 266:12 266:25 meaningful(1) 179:16 | | methods(1) 99:3 michael(1) 6:7 michaels(4) 67:21 68:21 69:8 69:22 michele(1) 4:41 michelle(1) 6:22 michigan(1) 4:48 microphon(3) 183:1 196:21 265:4 microphone's(1) 92:23 mid(1) 271:1 mid-high(4) 119:25 137:17 154:22 271:12 mid-teens(1) 281:14 midcases(1) 233:24 middle(9) 139:9 140:17 147:2 162:17 163:6 236:14 237:24 256:2 271:6 middle-road(1) 116:2 midpoint(5) 217:11 270:4 271:11 271:12 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**might(58)** 22:18 24:3 51:21 52:1 59:16 69:24 89:14 89:18 105:10 110:15 110:25 118:12 118:14 119:6 119:17 120:15 120:1 123:23 124:16 135:23 135:24 137:24 137:25 137:25 138:17 146:5 146:15 151:1 152:25 163:19 170:10 176:10 183:14 187:9 202:11 209:5 209:7 212:16 222:11 225:6 226:10 226:10 232:10 232:11 232:1 233:9 234:5 238:9 239:2 243:8 243:21 245:10 277:15 278:15 283:5 283:19 283:1 285:5

**might've(1)** 123:25
**mike(1)** 9:31
**million(87)** 19:14 19:15 20:9 21:6 27:6 31:21 34:7 34:19 34:22 34:23 35:7 37:16 37:20 37:24 39:1 39:20 41:17 78:6 79:6 83:11 83:14 83:16 83:18 83:19 84:9 84:15 84:20 84:20 85:2 95:17 114:3 114:10 116:23 116:23 117:8 117:9 117:11 117:12 122:24 148:9 149:3 149:16 149:18 150:2 150:5 150:20 150:23 151:11 151:12 151:1 151:20 151:21 151:21 152:19 152:24 154:5 154:7 154:15 155:8 155:23 162:16 163:3 169:8 169:15 169:17 170:11 170:18 171:18 175:14 175:15 175:16 175:18 175:20 176:1 178:15 210:10 211:21 213:6 214:8 218:15 221:9 221:12 244:4 271:19 271:21 272:6 272:7

**millions(1)** 214:8
**millisecond(1)** 132:17
**mina(2)** 8:29 8:30
**mind(7)** 30:18 66:24 78:15 103:5 176:22 194:21 267:6

**mine(3)** 109:14 113:16 240:2
**minimal(2)** 41:16 110:6
**minute(7)** 16:24 33:24 43:1 113:14 122:3 215:7 265:7

**minutes(5)** 16:15 73:5 73:7 121:4 191:9
**miriam(3)** 11:9 11:18 287:7
**mis(1)** 235:3
**misbehaved(2)** 111:14 179:12
**misbehavior(2)** 130:18 130:25
**mischaracterization(1)** 266:21
**mischaracterize(1)** 200:21
**misconduct(1)** 177:5
**miss(2)** 138:18 138:18
**missed(1)** 142:10
**misstated(1)** 207:25
**misstates(1)** 43:16
**mistaken(1)** 58:8
**misunderstood(1)** 238:18
**mitch(2)** 2:26 43:8
**mix(2)** 97:2 234:9
**mixed(2)** 176:13 182:22
**mk-03(1)** 45:10
**mk-08(1)** 52:11
**mk-60(1)** 68:1
**mk-61(1)** 68:15
**mode(1)** 136:7
**model(14)** 44:2 105:4 106:17 106:18 106:20 106:22 108:8 114:24 158:15 187:24 207:20 211:5 217:14 218:24

**modeled(9)** 91:21 170:24 210:2 213:23 214:11 214:23 221:22 226:2 246:8

**modeling(7)** 218:13 241:2 241:20 242:10 243:25 246:11 272:4

**models(4)** 91:20 170:19 170:20 170:24
**moderate(1)** 164:7
**moderately(1)** 119:23
**modern(2)** 99:3 181:7
**modify(3)** 26:11 171:4 180:9

**moment(16)** 21:23 28:9 34:10 38:2 85:6 203:2 203:25 219:19 220:12 221:7 222:19 239:7 249:11 250:21 272:20 272:24

**moments(1)** 246:18
**monarch(2)** 6:31 6:32
**monday(4)** 285:14 285:20 285:23 285:24
**money(14)** 62:2 79:6 82:22 114:8 132:13 132:16 132:18 132:22 133:6 173:19 173:2 173:25 178:4 212:6

**moneys(1)** 79:10
**month(1)** 192:8
**monthly(1)** 274:18
**months(13)** 23:14 34:2 57:5 102:22 192:8 192:8 199:11 254:9 258:9 258:13 274:19 274:23 276:22

**more(79)** 29:6 30:20 33:4 35:15 35:17 37:5 37:8 39:4 42:1 42:2 57:4 60:2 61:16 61:25 62:2 62:3 75:7 76:1 76:8 81:15 83:9 86:1 91:13 99:24 105:8 112:1 112:2 115:23 118:2 122:4 122:24 129:21 131:1 138:22 140:8 140:9 140:10 141:11 151:2 151:12 151:20 155:24 157:14 169:19 190:1 188:2 191:23 195:16 199:9 202:5 203:2 203:20 203:22 208:8 208:14 212:23 212:2 222:5 225:6 229:2 232:19 235:3 235:5 236:20 241:15 244:1 253:14 253:21 255:6 270:23 271:2 279:7 280:15 281:23

**morgan(75)** 2:4 4:34 8:37 11:7 11:9 11:24 12:8 12:14 12:17 13:5 14:1 14:4 14:9 14:11 15:15 15:21 15:24 16:9 16:12 16:16 16:19 16:21 16:24 17:8 18:7 18:15 18:16 19:3 20:21 21:25 22:7 23:9 23:10 26:23 27:1 27:8 28:22 29:9 30:14 32:17 33:7 33:8 35:8 39:8 47:21 48:11 49:13 50:18 53:11 56:10 58:2 64:17 64:21 65:22 66:8 67:7 67:10 67:12 67:13 71:16 72:19 72:24 78:8 78:9 78:11 78:13 80:6 81:6 89:15 90:6 104:18 152:11 152:19 152:20 201:5

**morgan's(9)** 16:2 18:9 23:4 24:14 57:19 66:6 66:13 66:19 66:20

**morning(17)** 11:3 11:4 11:5 11:21 11:22 43:6 43:7 79:20 79:21 88:13 90:13 194:3 282:10 282:24 283:14 284:23 285:24

**moskowitz(53)** 2:5 11:5 11:6 11:11 11:20 24:8 24:12 25:11 25:19 25:24 26:1 26:2 28:4 28:17 30:13 30:17 30:25 36:7 36:11 36:21 40:18 40:19 40:25 41:2 41:4 41:9 41:11 42:22 43:16 51:23 51:25 54:24 55:9 55:9 60:14 68:17 69:3 74:3 76:3 79:19 80:25 81:3 82:15 82:20 83:2 83:4 83:9 83:13 84:2 85:5 85:13 86:14 87:13

**most(29)** 38:15 38:16 49:18 66:23 70:22 88:20 102:22 117:12 117:18 117:22 136:9 140:11 142:8 146:23 149:9 151:10 158:4 158:24 170:13 171:15 189:12 199:8 236:9 252:4 252:20 255:10 255:11 263:8 271:10

**mostly(4)** 135:17 151:22 163:23 252:7
**motion(4)** 28:11 77:12 81:2 200:12
**move(34)** 24:5 25:6 35:25 36:22 76:15 80:23 83:4 89:11 92:9 112:16 112:18 117:13 118:8 136:14 138:6 149:8 162:16 170:1 170:5 170:5 171:11 171:12 213:19 213:22 221:7 237:22 265:7 266:1 263:13 267:9 270:15 270:18 270:20

**moved(9)** 14:7 93:18 169:23 169:23 211:2 254:4 257:14 257:17 263:8

**moves(6)** 91:17 112:20 149:10 149:11 171:14 171:15

**moving(7)** 24:13 162:17 171:12 233:1 234:12 235:3 235:5

**much(69)** 21:8 32:23 35:22 38:6 38:18 39:24 40:2 40:10 41:7 42:1 42:2 42:24 51:11 52:15 52:19 52:20 66:12 66:19 82:10 82:22 102:18 108:9 112:12 115:1 116:8 118:24 127:3 130:23 131:13 135:7 137:14 137:18 138:5 138:6 140:10 142:2 144:21 149:8 150:9 150:17 154:4 154:7 158:1 167:20 167:21 168:17 168:20 168:2 168:22 171:1 171:11 175:6 175:23 177:1 177:22 177:24 188:2 199:5 200:17 201:13 213:20 214:8 222:2 253:3 253:13 254:1 254:3 282:8

**muchin(1)** 10:38
**mulhern(1)** 9:15
**mullen(1)** 7:15
**multiple(1)** 184:2
**multiply(5)** 147:25 165:13 175:12 175:13 229:5

**murray(7)** 54:10 54:14 55:7 55:19 55:21 55:25 197:14

**music(1)** 60:4
**must(1)** 145:10
**muttering(1)** 253:12
**mutual(2)** 183:24 184:3
**myers(1)** 6:36
**myrick(1)** 7:19
**myself(8)** 108:6 113:24 114:1 120:11 162:13 195:5 235:22 249:25

**name(6)** 43:8 80:4 92:23 93:4 151:17 273:17

**named(4)** 46:24 201:19 203:5 203:5
**names(1)** 186:7
**nancy(1)** 2:24
**natural(7)** 39:14 39:15 39:18 39:21 40:10 41:13 170:13

**nature(5)** 19:6 23:4 24:25 106:9 175:21
**near(1)** 215:2
**nearly(2)** 97:10 166:14
**necessarily(1)** 226:15
**need(15)** 42:24 61:2 61:19 91:22 130:18 182:25 187:1 196:21 225:13 258:13 258:19 265:4 265:8 266:6 272:23

**needed(4)** 100:6 104:23 192:21 231:13
**needs(3)** 89:4 183:10 183:12
**neftalis(1)** 10:4
**negative(3)** 268:19 269:21 270:13
**negotiate(4)** 18:20 66:8 66:9 66:15
**negotiated(1)** 38:21
**negotiating(2)** 18:24 60:6
**negotiation(1)** 57:8
**negotiations(12)** 27:19 41:19 41:24 41:25 42:8 57:19 57:20 58:22 58:22 59:18 59:25 63:20

**neighborhood(1)** 44:8
**neil(1)** 9:23
**neither(3)** 23:21 127:11 144:15
**nervous(1)** 25:2
**net(3)** 117:9 175:7 271:21
**network(1)** 95:13
**neutral(2)** 62:4 62:13
**never(24)** 22:22 38:25 55:8 58:23 58:25 59:3 59:10 59:20 60:6 61:7 61:17 63:12 63:24 74:16 87:5 122:19 127:1 132:19 153:18 181:10 181:14 216:7 229:17 247:2

**nevertheless(2)** 118:22 232:5

**new(48)** 2:9 2:28 2:44 3:22 12:1 12:10 27:3 42:9 56:6 78:16 78:16 88:14 88:21 88:23 90:21 91:2 91:7 94:17 95:8 100:20 101:4 124:11 161:7 161:10 179:16 192:19 192:23 194:25 194:25 196:13 197:3 200:5 200:7 200:8 200:9 201:3 201:7 201:11 201:13 255:20 256:10 256:11 257:24 259:13 261:3 261:25 262:6 262:18

**newman(1)** 2:22
**news(1)** 92:5
**newspaper(6)** 127:25 128:10 128:13 274:12 274:14 279:6

**newspapers(1)** 128:2
**next(45)** 11:9 20:1 23:13 28:1 29:23 29:25 30:18 33:5 51:13 52:17 60:20 64:6 71:24 82:20 89:11 110:21 111:20 116:23 117:5 118:9 118:11 118:12 119:11 120:22 121:2 121:9 131:10 143:6 147:9 155:6 162:7 162:9 187:2 190:15 194:5 220:12 228:22 254:5 262:14 267:9 267:11 269:24 277:18 279:18 281:19

**nh-670(1)** 56:3
**nicholas(2)** 8:46 93:11
**night(3)** 91:8 105:25 261:13
**nils(1)** 201:19
**nine(2)** 208:2 283:15
**ninety-five(1)** 210:13
**no-integration(1)** 257:21
**no-step(2)** 257:16 263:7
**nobody(1)** 152:8
**nobody's(1)** 260:11
**noise(1)** 109:23
**non(1)** 36:23
**non-creditors(2)** 116:18 271:17
**non-lbo(2)** 31:19 35:18
**non-party(1)** 10:50
**none(5)** 79:5 79:8 79:11 229:12 229:13
**normally(1)** 22:11
**norman(1)** 1:34
**north(11)** 2:15 2:35 3:6 4:36 4:48 5:7 138:3 150:14 152:25 164:12 195:22

**northwestern(2)** 93:12 93:18
**northwestern's(1)** 93:15

| Word | Page:Line |
|---|---|

**not**(301) 13:16 16:18 16:21 17:2 19:3 24: 25:16 29:16 30:7 30:9 32:3 32:10 32:11 32:19 32:20 36:1 37:1 38:3 39:10 40:2 40:19 42:12 43:14 43:17 44:12 45:1 54:16 54:20 55:10 56:11 59:14 60:17 60:18 62: 63:9 65:9 65:22 66:5 67:9 67:23 70:7 71:14 75:23 76:22 77:22 78:7 81:9 82:20 83:7 86:25 87:2 87:2 87:6 87:8 89:1 89:2 89:3 89:16 89:18 90:6 90:7 90:22 99:14 101:10 102:7 102:8 102:16 102:17 105:25 110:22 111:3 111:4 112:13 112:19 116:8 117:25 118:14 119:2 119:17 119:24 120:3 120:8 120:13 120:15 123:1 124:10 126:21 127:2 127:3 127:7 127:21 128:9 129:19 130:6 130:7 130:17 130:19 130:24 131:5 132:21 133:2 133:7 133:13 135:9 135:19 135:20 135:20 135:21 136:13 137:25 137:25 138:6 140:3 140:12 140:20 141:8 141:9 141:11 141:12 143:4 143:22 144:1 144:11 145:15 145:20 150:11 151:2 151:9 151:18 151:18 153:7 153:13 154:6 156:12 158:24 158:25 160:18 161:10 163:18 164:2 164:18 165:7 166:6 166:12 166:14 167:20 167:21 167:25 167:25 168:17 168:20 168:21 169:7 170:20 170:2 172:2 174:4 174:17 174:25 175:24 176:4 176:5 177:21 177:23 178:6 178:13 178:15 179:13 179:22 182:19 183:15 183:21 183:23 183:25 184:3 185:4 186:4 186:23 188:15 188:24 189:16 189:22 191:7 192:1 192:2 192:4 193:2 195:5 195:25 196:1 196:9 197:10 197:12 198:6 198:10 199:1 199:10 199:11 200:9 200:9 201:12 201:13 201:20 203:13 204:8 205:4 207:25 208:24 209:4 209:7 210:25 211:4 211:11 211:15 212:4 212:7 212:18 214:15 215:4 215:15 216:13 216:17 216:21 217:10 219:2 220:7 221:13 221:20 226:15 226:18 227:20 227:24 228:20 230:6 230:10 231:12 232: 232:17 233:10 233:12 237:19 238:25 239:14 239:19 239:24 240:12 240:21 240:22 240:24 241:13 241:22 241:24 243:11 243:23 244:5 244:9 246:5 246:7 247:11 249:7 249:20 250:10 250:16 252:4 252:9 252:12 252:15 253:12 253:25 259:1 262:21 265:2 265:8 266:3 266:9 266:12 266:16 266:25 268:2 270:20 271:11 271:1 272:9 272:23 273:3 277:5 278:17 279:13 280:24 281:12 282:22 283:1 283:19 283:1 284:5 284:8 284:13 284:25 285:5 285:15 285:19

**note**(1) 28:8
**noteholder**(13) 48:22 63:17 100:22 172:11 178:17 185:21 188:10 223:13 261:18 261:20 264:19 273:23 279:19

**noteholder's**(1) 41:13
**noteholders**(44) 15:2 19:8 20:10 32:6 32:9 33:1 34:7 36:14 37:5 38:14 38:18 39:19 39:22 40:11 41:15 59:4 59:11 59:21 60:3 60:8 61:8 61:14 61:17 62:1 62:10 62:11 79:7 79:12 83:14 83:20 84:12 84:16 84:2 86:20 86:24 86:25 87:7 87:9 89:18 159:13 188:7 188:20 215:8 261:1

**notes**(71) 27:24 31:22 34:20 34:25 35:7 42:19 84:21 85:3 86:23 103:25 104:1 104:4 104:5 110:6 113:2 115:4 115:11 115:14 115:16 115:18 115:19 115:21 116:22 116:22 116:24 117:14 117:15 117:20 117:23 119:2 119:13 120:1 121:6 121:8 125:23 134:3 134:5 137:12 138:13 142:14 142:18 145:12 145:14 145:23 145:25 148:9 148:18 149:5 149:16 149:21 164:5 164:10 164:13 164:20 168:5 172:5 173:9 173:19 174:16 175:1 211:21 213:2 214:9 215:14 215:20 218:11 281:3 281:7 281:13 281:16 281:17

**notes-favorabl**(2) 119:19 137:10
**notes-favoring**(6) 126:25 127:12 132:5 137:19 138:4 143:11

**notes-friendly**(3) 122:16 143:4 146:6
**nothing**(3) 39:24 200:17 260:7
**notice**(1) 283:16
**notwithstanding**(1) 207:19
**november**(6) 14:24 46:6 46:7 46:9 46:10 46:14

**now**(176) 18:6 21:23 28:5 29:1 29:8 33:10 34:21 36:22 42:21 46:2 48:17 49:8 50:25 51:10 51:16 52:22 54:9 56:2 56:22 57:7 58:21 60:15 62:20 63:11 64:20 65:21 67: 70:15 76:21 85:9 86:9 86:23 87:9 87:23 89:20 99:4 105:12 106:5 113:4 113:17 114:14 114:18 116:4 117:24 117:25 118:8 119:12 120:18 120:19 121:6 124:11 124:2 125:21 131:23 132:7 132:15 134:14 135:21 137:7 137:23 138:2 138:23 142:1 142:12 142:12 145:2 146:14 146:18 146:1 147:3 148:22 149:6 149:11 149:12 150:8 150:15 152:20 153:11 154:9 156:6 156:19 166:25 169:21 171:3 172:7 174:22 175:4 175:10 177:12 181:17 182:6 182:14 183:12 184:4 185:8 186:23 187:23 189:18 190:16 191:11 191:24 192:15 194:12 194:17 195:23 196:10 197:2 198:8 198:22 199:22 201:17 203:1 203:19 204:9 206:4 207:13 209:8 209:21 211:13 212:20 214:6 215:2 215:22 217:22 219:13 219:19 220:12 227:11 227:20 228:12 228:21 229:12 230:22 232:17 233:5 233:22 235:7 235:25 234:18 237:1 238:17 239:6 240:24 242:1 245:12 246:8 247:15 249:8 250:20 253:1 253:12 253:12 259:19 261:1 261:6 261:2 263:15 263:22 265:10 265:11 267:9 268:10 270:15 271:14 272:4 272:22 274:11 275:15 282:23 285:15

**npp-757**(1) 71:24
**npp-851**(2) 64:7 64:8
**nudge**(1) 242:10
**nudged**(2) 231:15 243:6
**nudges**(1) 242:14
**number**(59) 15:4 18:3 22:2 22:2 22:10 22:13 23:8 24:24 59:25 59:25 60:1 61:11 61:18 65:25 69:22 74:21 75:8 81:5 88:9 99:18 104:21 104:22 120:8 120:8 142:12 150:4 150:5 154:1 154:11 154:25 160:5 162:3 163:16 168:11 168:12 168:24 168:25 228:20 230:22 230:24 231:23 231:25 232:18 236:22 237:11 239:25 244:4 244:5 244:6 245:8 246:9 261:11

**numbers**(43) 90:22 106:22 113:23 115:15 116:8 135:16 136:1 143:8 143:10 144:12 151:15 155:2 207:14 209:13 211:3 212:22 213:19 222:24 223:20 223:21 224:14 225:13 227:20 228:7 228:15 228:22 229:5 229:12 229:13 229:13 232:9 251:14 256:4 256:21 256:25 257:8 259:14 260:10 262:5 262:6 264:1 264:16 265:5

**number's**(1) 155:23
**numerical**(3) 106:17 153:16 229:10
**numerically**(1) 108:8
**oaktree**(26) 9:17 9:18 19:4 21:1 21:24 22:1 22:7 22:18 22:20 26:8 28:22 31:7 33:7 33:8 62:24 63:6 63:7 63:9 65:16 67:6 67:10 67:11 67:13 78:14 81:23 201:5

**oaky**(1) 205:9
**oath**(1) 45:6
**object**(6) 24:5 52:23 60:9 83:2 88:15 176:
**objected**(1) 280:17

**objection**(38) 25:9 25:14 29:11 30:21 35:25 40:12 41:16 51:23 54:24 55:9 60:1 68:9 69:3 69:3 74:3 76:3 80:23 82:11 83:1 83:21 86:14 86:14 86:15 87:13 90:1 90:20 91:1 103:3 103:4 105:22 107:10 107:12 107:13 147:10 147:18 160:14 200:20 258:15

**objectionable**(2) 25:16 28:8
**objections**(1) 283:16
**objective**(2) 241:7 241:10
**obligation**(2) 217:20 239:10
**observations**(1) 88:3
**obvious**(2) 162:15 165:9
**obviously**(7) 29:12 57:9 73:16 88:18 89:16 89:18 110:4

**occasion**(3) 30:20 204:2 238:1
**occur**(1) 68:11
**occurred**(2) 19:7 181:12
**occurring**(3) 251:2 251:7 257:21
**october**(2) 37:4 70:19
**off**(17) 49:19 84:15 94:6 103:12 112:11 116:25 117:20 133:21 134:10 136:16 165:15 165:16 167:5 212:4 231:8 256:4 260:18

**offer**(15) 19:13 102:1 105:20 110:24 111:1 120:4 123:1 131:16 137:12 143:22 150:24 273:22 275:22 279:25

**offered**(4) 16:9 19:15 105:25 198:11
**offering**(1) 27:6
**offers**(2) 19:12 99:23
**office**(1) 4:28
**officer**(2) 14:6 272:17
**officers**(7) 44:21 45:19 70:22 80:6 96:9 150:12 151:22

**officers,''**(1) 45:20
**official**(2) 3:11 5:22
**often**(2) 99:7 100:15

**okay**(301) 21:23 22:7 25:24 28:10 31:18 33:5 33:23 34:4 34:9 34:16 36:16 36:22 43:2 44:6 44:10 44:13 44:18 45:2 45:5 45:10 45:15 46:8 46:15 47:3 47:21 48:17 48:21 48:25 49:8 49:12 49:16 50:4 51:6 51:10 51:16 51:19 53:9 53:15 53:25 54:7 54:14 56:2 56:9 56:13 56:22 57:1 57:13 57:18 57:23 58:18 61:2 61:5 64:5 64:20 64:25 65:25 67:6 67:25 68:9 68:20 69:12 69:14 69:16 69:21 70:8 70:25 71:3 71:10 71:12 71:14 71:19 71:23 72:6 72:7 72:10 72:15 72:24 73:16 75:19 76:1 78:1 78:4 80:1 81:4 85:19 86:9 86:23 87:4 87:15 87:18 88:1 91:24 94:1 94:22 96:17 97:3 97:23 98:6 101:7 101:14 102:18 102:23 103:10 103:15 103:16 104:6 105:12 105:15 105:19 106:2 106:8 107:7 107:17 107:24 108:1 108:11 108:21 108:24 108:25 109:4 109:9 109:17 110:7 110:8 110:19 112:21 113:4 113:9 113:17 114:2 114:14 114:17 114:21 115:4 115:7 115:17 116:12 117:2 118:8 119:10 119:16 120:1 120:11 120:18 121:3 122:5 122:6 122:10 122:11 122:12 125:13 125:21 126:8 127:9 127:17 128:10 128:19 129:8 131:1 131:6 131:11 131:17 131:19 131:22 132:4 132:7 132:10 132:12 133:5 133:17 134:4 134:14 134:19 134:21 135:10 135:23 136:14 137:7 138:2 138:24 139:9 139:17 142:12 143:3 147:3 147:17 148:2 148:16 148:22 148:25 149:23 151:13 154:14 154:17 154:19 155:5 155:7 157:8 157:9 158:9 159:3 159:8 159:12 160:7 160:11 161:9 161:12 161:20 162:21 162:28 166:20 166:23 168:24 170:7 171:3 172:7 172:24 173:8 173:11 173:16 173:20 175:8 176:3 176:17 176:20 176:24 177:2 177:9 177:16 179:20 180:17 181:14 181:17 182:2 182:6 182:9 182:11 182:24 183:2 183:4 183:8 183:16 183:22 184:1 184:4 184:9 184:12 184:18 184:21 184:24 185:8 185:11 185:16 186:18 186:22 187:1 187:3 187:9 187:14 187:17 187:22 188:5 189:12 191:6 191:10 191:24 192:7 192:12 192:15 192:24 193:8 193:17 194:7 194:10 194:11 194:16 194:22 194:23 195:10 195:14 195:17 195:23 196:10 196:14 196:18 196:21 196:23 197:10 197:9 197:12 197:16 197:22 198:2 198:8 198:11 198:22 199:3 199:6 199:19 199:16 200:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **okay**(229) 200:16 201:8 201:15 201:22 202:3 202:9 202:15 202:20 202:23 203:1 203:8 203:11 203:19 203:24 203:24 204:4 204:9 204:13 204:16 204:19 205:17 205:23 206:4 206:9 206:23 207:4 207:8 207:12 207:19 207:22 208:23 209:6 209:8 209:17 209:21 209:24 210:2 210:7 210:15 210:20 211:6 211:13 211:24 212:7 212:10 212:20 213:13 213:22 214:6 214:11 215:2 216:6 216:9 216:25 217:4 217:8 217:17 217:22 218:13 218:16 218:20 218:24 219:4 219:19 219:13 219:19 219:21 220:10 220:12 220:17 220:24 221:3 221:7 221:24 222:8 222:11 222:15 222:18 222:23 223:2 223:11 223:16 223:24 224:5 224:8 224:13 225:16 225:18 225:23 225:25 226:12 226:21 227:11 228:7 228:12 228:25 229:12 230:9 230:22 231:9 231:14 231:19 233:15 233:2 234:8 234:16 235:7 235:10 235:15 235:25 237:9 237:18 238:1 238:8 238:21 239:6 239:12 239:14 240:6 240:10 240:14 241:1 245:2 245:6 245:12 245:24 246:15 246:18 247:1 247:11 247:15 248:6 248:18 248:21 250:11 250:22 250:23 251:17 251:22 253:2 254:15 254:20 255:13 255:19 255:24 256:7 256:14 256:22 257:1 257:7 257:11 257:19 258:3 258:8 258:12 259:2 259:11 259:24 260:5 260:12 260:14 260:16 260:18 261:1 261:16 261:22 262:9 262:14 262:23 263:13 263:25 264:4 264:25 265:11 265:15 265:21 266:1 266:8 266:17 266:20 267:4 267:9 267:17 267:23 268:7 268:10 268:23 268:24 269:2 269:9 270:4 270:11 270:15 270:17 271:14 272:4 273:13 273:18 273:22 273:22 274:6 274:9 274:16 274:21 275:4 275:7 275:19 276:2 276:14 276:18 276:20 276:24 277:22 278:22 279:1 279:10 279:11 279:21 280:2 280:7 280:9 281:11 281:21 282:17 282:21 283:7 283:8 284:10 286:6 | | **one**(301) 1:28 2:14 2:27 10:46 18:21 23:20 24:1 24:1 24:17 25:3 28:24 30:20 31:4 32:7 32:13 32:22 34:18 35:14 37:5 37:14 38:1 38:15 38:16 39:5 40:4 40:8 47:24 48:1 50:15 52:25 53:5 53:17 54:4 55:12 55:24 65:8 65:10 65:13 65:17 65:17 66:1 66:2 66:3 66:7 66:11 66:13 66:21 66:25 66:7 67:7 67:12 67:12 67:16 68:17 70:12 71:17 72:13 73:10 74:14 78:17 81:19 81:19 85:6 86:6 86:12 88:4 88:21 86:23 96:25 97:11 97:20 98:2 100:1 104:14 105:1 106:10 106:12 106:14 106:11 106:24 108:19 108:24 108:25 108:25 109:2 110:10 110:12 110:14 110:23 111:4 111:24 112:1 113:3 114:12 114:12 114:19 114:22 115:12 116:10 117:14 117:15 117:16 119:14 119:16 121:14 121:16 121:20 122:16 122:18 122:20 122:21 122:25 123:1 123:5 123:6 123:15 124:1 124:1 124:8 124:10 125:1 125:2 125:6 125:8 125:10 125:17 125:19 126:1 126:5 126:7 126:9 126:23 127:1 127:4 127:11 132:13 134:9 134:20 135:23 136:2 137:25 138:2 138:22 141:12 141:19 143:10 143:20 144:7 144:9 144:15 144:23 145:10 145:12 145:13 145:18 146:13 146:19 150:18 152:6 153:4 153:4 153:6 155:10 156:2 158:13 159:9 159:18 161:24 162:10 163:1 163:13 163:14 163:15 163:16 163:2 164:3 164:15 164:16 165:12 166:6 167:3 168:4 169:20 170:11 170:14 170:15 170:17 172:18 173:12 173:18 173:21 174:3 174:10 174:19 174:20 174:24 175:5 175:7 175:17 176:4 176:5 177:16 177:20 178:1 178:2 178:6 178:14 179:11 179:20 185:3 185:13 186:19 186:20 186:24 187:5 187:9 187:14 187:17 187:21 191:17 196:11 196:13 196:13 197:4 197:17 203:5 205:1 208:15 208:16 208:17 208:18 208:19 211:11 211:15 211:18 211:25 212:1 212:7 212:11 212:15 212:17 212:18 212:20 212:25 213:7 213:8 213:13 213:14 213:17 215:3 215:23 215:24 217:24 218:2 218:4 218:7 218:8 218:9 218:12 219:1 221:14 222:13 223:13 226:9 226:9 226:16 226:23 227:3 227:3 227:6 229:2 229:18 229:24 231:4 231:5 231:7 231:15 231:22 233:4 233:7 233:16 233:19 234:6 234:14 235:23 237:13 239:12 239:14 239:17 240:18 241:1 241:14 241:15 242:14 242:18 242:21 245:21 247:2 248:19 | | **opined**(1) 185:6<br><br>**opining**(1) 200:1<br><br>**opinion**(25) 36:8 55:6 55:20 103:23 104:9 104:20 105:20 107:19 120:4 125:1 125:4 145:1 149:20 151:4 152:1 152:2 156:5 171:5 171:8 182:2 192:6 235:13 238:3 255:20 277:14<br><br>**opinions**(21) 102:25 103:6 103:7 103:18 104:12 104:13 104:15 104:15 105:15 118:10 120:2 120:5 138:23 144:1 180:9 181:24 198:11 204:15 205:17 206:16 206:22<br><br>**opportunity**(5) 88:16 89:4 91:12 135:12 172:8<br><br>**opposed**(11) 20:24 21:2 21:3 21:5 21:11 111:22 171:21 176:10 203:7 203:9 253:4<br><br>**option**(2) 90:8 169:13<br><br>**options**(1) 15:4<br><br>**order**(8) 30:9 91:9 120:23 195:14 195:20 236:6 255:5 258:3<br><br>**organizational**(1) 15:18<br><br>**original**(18) 49:22 105:25 106:9 190:10 192:18 223:18 255:21 256:17 256:23 257:20 259:13 262:17 263:23 263:24 264:24 264:25 267:24<br><br>**originally**(4) 99:19 101:16 101:17 258:4<br><br>**other**(89) 13:6 13:24 13:25 18:4 19:24 22:8 22:23 24:14 24:18 41:18 41:24 42:3 49:13 53:25 53:25 54:5 55:24 58:1 58:11 59:9 59:17 62:10 62:11 63:5 63:20 69:17 74:7 79:15 81:16 85:3 95:15 96:15 98:20 100:2 106:21 111:16 112:1 119:11 126:23 127:17 127:19 128:3 129:8 129:11 133:18 134:4 136:14 137:3 143:9 149:5 149:18 156:18 157:12 158:2 162:3 165:16 165:22 166:6 166:6 166:22 166:25 171:10 178:4 183:18 185:5 185:14 190:14 208:11 215:25 228:13 230:2 230:4 230:7 231:17 234:7 238:8 241:14 241:16 247:3 247:10 252:6 252:18 259:4 259:7 263:4 267:7 267:7 272:19 281:3<br><br>**others**(7) 64:15 88:23 119:21 126:4 183:14 199:2 240:22<br><br>**otherwise**(11) 40:6 54:15 77:6 134:12 210:3 212:5 223:19 263:19 264:16 270:7 270:25<br><br>**ought**(2) 40:23 88:18<br><br>**our**(22) 11:8 12:4 19:11 66:15 88:20 89:22 89:24 90:19 98:23 112:5 132:14 132:15 143:23 193:19 201:7 202:7 221:3 250:20 254:23 262:16 263:3 265:6<br><br>**ourselves**(2) 45:24 125:22<br><br>**out**(96) 13:17 14:2 22:5 35:12 42:7 42:21 51:10 51:13 52:17 56:14 56:18 56:23 57:10 62:18 66:25 67:10 69:20 69:24 73:13 74:9 74:13 75:6 91:9 91:23 92:7 96:4 96:25 98:19 103:13 106:13 106:19 108:8 113:3 114:22 120:13 120:15 120:17 121:12 131:23 140:23 141:17 141:22 148:5 148:13 148:14 149:2 150:20 151:1 151:12 151:20 151:21 152:24 163:14 164:5 164:5 164:9 164:15 170:2 170:2 170:3 170:13 170:18 174:1 174:6 174:8 174:10 174:19 177:16 177:25 178:10 178:14 178:21 179:13 187:24 201:10 206:4 212:6 213:9 215:24 216:10 228:2 230:16 232:14 235:25 236:1 236:15 237:7 244:7 250:2 252:7 262:15 264:12 279:8 283:24 284:14 | | **outcome**(20) 62:4 103:24 110:4 116:2 147:15 147:22 148:18 149:21 153:20 153:22 173:9 175:25 176:15 190:22 190:23 194:19 212:23 212:25 213:14 257:13<br><br>**outcomes**(11) 107:2 107:6 108:6 108:10 108:18 119:1 190:19 206:10 208:22 243:7 243:13<br><br>**outliers**(2) 158:19 158:19<br><br>**outside**(13) 41:22 59:19 59:22 61:15 61:16 62:20 63:11 63:21 63:25 79:10 94:25 95:6 171:21<br><br>**over**(29) 14:20 18:12 23:7 23:17 88:8 88:16 89:25 91:23 92:6 95:5 102:21 102:21 116:25 133:22 138:19 140:7 142:11 143:6 145:17 146:3 195:11 217:17 217:18 254:4 257:14 281:19 282:4 282:9 285:1<br><br>**overall**(20) 103:13 113:24 118:4 121:5 137:19 141:2 146:20 162:4 165:21 182:2 183:20 229:24 229:25 230:8 232:12 237:16 251:25 258:25 259:9 267:6<br><br>**overcome**(1) 215:25<br><br>**overhang**(2) 277:3 277:11<br><br>**overlaps**(2) 182:15 182:17<br><br>**overlay**(1) 105:6<br><br>**overnight**(1) 254:10<br><br>**overpaid**(1) 204:6<br><br>**overpay**(1) 204:2<br><br>**overrule**(1) 280:21<br><br>**overruled**(7) 24:11 30:22 52:3 69:5 76:4 161:19 200:24<br><br>**overview**(2) 186:20 248:24<br><br>**overwhelmingly**(1) 66:7<br><br>**owens**(1) 1:9<br><br>**own**(13) 3:9 24:14 55:21 63:15 95:5 104:12 104:24 121:20 125:18 125:19 148:15 188:4 189:18 191:1 234:4 234:17 236:25<br><br>**o'melveny**(1) 6:36<br><br>**p.a**(1) 1:33<br><br>**p.m**(7) 49:4 49:6 56:16 92:3 157:2 157:2 286:14<br><br>**pace**(1) 192:20<br><br>**package**(8) 38:23 38:24 38:25 39:2 78:10 78:18 78:25 79:3<br><br>**page**(30) 48:23 49:2 72:17 106:14 182:10 190:8 197:2 197:3 223:23 224:11 237:1 237:4 242:4 242:8 256:3 256:15 259:16 263:23 264:1 264:23 265:15 265:16 268:24 269:8 274:4 275:16 276:6 278:12 280:7<br><br>**pages**(9) 18:13 23:17 196:15 201:10 237:8 237:12 248:12 248:18 263:25<br><br>**pagination**(1) 265:2<br><br>**paid**(24) 34:6 35:2 37:24 79:6 79:10 84:6 84:15 84:17 112:11 116:25 117:20 132:13 145:5 152:18 164:4 167:7 167:13 174:8 218:11 221:13 221:15 221:19 221:20 272:8<br><br>**palmer**(1) 4:40<br><br>**paper**(2) 96:22 259:20<br><br>**papers**(21) 95:13 95:18 95:19 161:6 223:17 224:10 255:21 255:21 256:10 256:17 256:24 256:24 257:1 257:20 257:24 259:12 261:3 261:3 262:3 262:6 262:17<br><br>**parachutes**(1) 151:17<br><br>**paragraph**(7) 65:1 182:15 197:4 276:5 277:18 278:11 278:13<br><br>**pardon**(1) 75:12 |
| **oklahoma**(1) 95:2<br>**old**(6) 167:5 196:12 232:24 261:2 261:24 262:5<br><br>**olinsky**(1) 10:10<br>**omit**(1) 207:23<br>**omitted**(1) 209:11<br>**onboard**(5) 27:15 32:25 32:25 33:1 63:8<br>**once**(9) 63:12 104:3 105:4 110:14 110:25 120:18 122:18 123:6 146:15 | | **one**(16) 248:20 253:9 255:24 255:25 256:17 265:19 266:9 270:9 272:20 273:7 273:10 274:6 274:9 276:24 281:6 281:8<br><br>**one-in-three**(1) 141:18<br><br>**one-step**(1) 143:21<br><br>**ones**(8) 91:21 97:21 101:5 130:6 134:6 165:6 197:9 271:1<br><br>**ongoing**(1) 101:3<br><br>**only**(46) 28:24 32:13 37:3 55:18 59:22 63:9 63:23 65:8 65:10 66:3 66:8 73:7 77:1 102:7 102:8 110:22 111:4 125:18 127:21 134:8 135:16 135:21 139:16 153:1 158:4 162:19 164:9 169:22 175:18 199:5 208:9 209:25 212:3 218:20 226:9 226:16 227:9 242:3 248:16 251:7 252:16 257:15 259:3 263:12 266:4 284:18<br><br>**onscreen**(2) 259:25 259:25<br>**onto**(1) 169:17<br>**open**(2) 264:3 264:22<br>**opening**(11) 161:1 172:10 172:13 180:8 182:7 188:12 196:16 196:25 197:3 249:5 265:12<br><br>**openings**(1) 172:8<br>**operating**(2) 274:24 279:5<br>**opine**(1) 181:11 181:15 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| parent(31) 20:14 31:25 35:3 37:21 40:3 40:4 84:7 84:14 84:14 84:19 85:4 86:18 140:11 173:13 173:14 173:19 187:19 210: 210:5 210:8 210:16 210:20 210:25 211:8 211:16 212:5 219:15 219:18 233:17 234:1 235:22 | | payments(13) 15:1 114:6 133:7 151:16 151:16 151:17 151:23 153:4 153:12 172:1 187:24 210:2 211:20 | | picture(2) 42:9 108:5 | | position(20) 12:16 12:20 12:24 15:15 15:20 66:6 66:10 66:11 66:12 66:13 67:23 74:7 81:6 90:24 93:10 93:16 93:22 94:1 102:13 188:20 | |
| | | payouts(2) 148:6 207:9 | | piece(7) 37:10 66:25 131:10 140:24 151:14 193:20 193:21 | | | |
| parenthetical(1) 266:12 | | peculiar(1) 178:23 | | pieces(9) 100:20 157:18 183:17 183:21 193:16 233:1 233:4 235:3 235:5 | | positions(4) 13:25 93:12 93:17 96:4 226:1 228:16 231:17 | |
| parents(1) 20:13 | | pennies(1) 277:16 | | | | | |
| pari(2) 210:5 211:7 | | pennock(1) 7:46 | | place(16) 23:25 25:7 25:13 26:14 36:18 71:5 92:19 102:16 106:18 108:10 167:11 167:16 193:21 212:16 218:8 279:12 | | possibility(33) 69:24 111:13 111:24 112:1 122:16 122:16 130:16 133:3 133:14 133:25 136:8 153:20 166:13 170:9 170:16 173:12 174:21 175:25 176:3 204:6 211:10 212:19 227:14 229:7 231:1 231:20 232:2 234:24 238:18 242:11 252:23 278:10 285:11 | |
| park(4) 2:27 2:43 5:23 10:14 | | pennsylvania(1) 1:43 | | | | | |
| parke(3) 3:12 17:7 17:8 | | people(27) 27:23 27:23 38:22 53:25 54:5 63:7 71:20 74:9 74:12 74:13 77:4 95:19 98:19 99:1 124:17 128:11 174:25 193:21 196:5 199:12 201:10 204:1 204:9 204:13 285:19 285:19 285:21 | | placed(1) 194:12 | | | |
| parse(4) 216:20 268:10 268:11 269:11 | | | | places(7) 237:11 238:8 238:12 246:1 246:2 254:13 267:8 | | | |
| part(49) 13:4 20:17 21:2 23:9 38:8 39:1 39:2 44:10 44:18 66:5 78:18 78:24 79:3 84:10 91:10 95:25 96:13 97:16 101:10 103:7 104:10 104:20 128:17 128:25 135:2 151:6 152:12 160:19 161:10 162:12 167:2 172:3 176:14 183:20 183:21 185:2 188:25 188:25 200:18 201:2 201:6 221:3 228:2 231:22 232:1 232:1 263:8 267:6 271:10 | | per(1) 278:5 | | plaintiff(2) 58:19 273:17 | | possible(14) 56:15 71:12 71:13 91:13 102:14 108:6 108:18 113:4 123:4 124:13 209:3 226:21 283:13 285:15 | |
| | | perceived(1) 216:11 | | plan(105) 11:8 11:18 21:17 21:19 21:21 21:22 22:1 22:8 22:12 22:14 22:21 22:22 22:25 23:23 23:24 24:21 26:11 26:20 27:17 27:18 31:24 34:10 34:13 34:14 34:17 35:9 35:16 35:17 35:19 35:23 36:25 36:9 39:5 39:9 44:15 49:19 49:22 50:17 58:10 58:12 59:6 59:24 65:6 67:2 67:5 80:3 83:10 84:4 84:11 86:18 100:22 100:22 100:23 100:24 103:2 103:20 103:22 104:3 104:5 110:13 115:25 116:5 116:6 116:13 116:17 116:21 117:22 117:24 118:9 124:2 148:10 149:5 149:11 149:12 149:19 149:20 156:1 156:6 156:7 163:11 171:5 171:16 171:19 171:20 172:2 172:11 178:1 181:17 182:3 185:21 188:11 192:1 192:8 192:10 192:15 192:17 192:18 192:19 192:25 215:11 247:21 247:24 248:2 271:1 286:6 | | possibly(1) 95:16 | |
| | | percent(102) 31:24 32:7 32:8 34:25 35:1 116:24 117:1 121:1 126:22 133:2 135:16 136:17 136:22 137:3 137:15 138:3 138:7 138:13 138:14 139:8 139:9 139:15 139:17 139:20 139:21 139:21 140:18 141:16 141:17 141:17 141:20 141:20 141:23 141:24 142:7 144:2 144:3 144:6 144:6 145:15 145:22 146:3 146:11 146:17 149:1 150:15 151:9 162:2 162:2 165:12 165:13 166:1 166:2 173:5 173:6 175:9 175:12 175:13 175:15 175:15 175:19 208:6 210:1 213:11 214:23 217:6 217:12 219:25 220:7 220:20 220:8 227:16 227:17 227:18 230:22 231:22 231:22 231:25 232:1 239:5 243:8 250:13 251:14 251:14 251:21 252:7 255:4 255:6 255:9 255:9 255:13 255:14 257:23 257:25 258:1 258:4 258:5 258:6 258:7 270:15 270:25 281:14 | | post(67) 67:18 69:25 95:13 163:19 167:19 184:12 208:3 215:4 | |
| part-owner(1) 95:11 | | | | play(5) 52:11 68:17 150:20 244:10 250:18 60:13 68:2 68:14 68:19 69:1 244:12 245: 250:19 251:9 251:24 253:16 | | | |
| partial(3) 37:3 114:6 209:22 | | | | | | post-filing(18) 164:18 164:23 165:9 165:13 166:8 166:24 167:11 167:15 168:1 171:24 208:5 208:6 208:9 214:4 214:17 214:20 215:9 215:17 | |
| partially(1) 247:3 | | | | | | | |
| participant(2) 29:12 63:15 | | | | | | | |
| participants(1) 19:1 | | | | | | post-petition(4) 115:17 214:13 215:15 221:18 | |
| participate(6) 170:17 176:5 263:17 268:5 268:14 269:14 | | | | players(1) 100:9 | | | |
| | | | | playing(1) 284:14 | | post-step(2) 50:15 50:16 | |
| participate."(1) 64:11 | | | | plaza(3) 2:34 3:7 3:21 | | potential(20) 15:6 16:1 16:5 16:7 16:22 18:1 27:3 35:22 57:10 88:19 133:15 138:9 147:22 153:16 157:10 201:23 212:21 221:3 272:19 281:19 | |
| participated(7) 16:16 16:19 18:25 28:18 54:4 59:1 280:4 | | | | pleadings(2) 43:22 80:15 | | | |
| | | | | please(30) 11:2 18:9 30:12 37:7 43:4 45:10 49:16 49:22 52:11 60:4 64:23 68:1 71:23 92:18 92:22 92:22 93:3 93:10 129:22 137:9 149:1 155:7 157:7 161:22 234:21 244:11 250:18 251:10 254:20 266: | | potentially(15) 15:3 15:5 47:19 112:19 121:18 122:15 129:14 132:23 214:22 | |
| participating(2) 42:4 270:6 | | | | | | | |
| particular(18) 29:16 52:9 60:1 67:19 75:3 95:21 97:3 97:14 107:5 112:23 134:21 165:12 183:17 188:20 225:12 229:18 237:7 251:14 | | percentage(5) 86:19 140:20 146:19 153:13 231:15 | | | | potter(1) 2:31 | |
| | | | | | | power(1) 177:5 | |
| | | percentages(9) 134:15 134:18 134:24 139:6 228:3 228:18 229:1 229:1 230:3 | | pleasure(1) 42:3 | | powers(1) 179:10 | |
| particularly(2) 28:11 115:8 | | | | plus(6) 114:10 115:2 115:17 117:3 173:12 173:13 | | powlen(1) 4:35 | |
| parties(27) 18:3 18:4 18:20 19:16 19:22 20:2 20:20 20:24 27:5 31:4 33:6 39:16 42:2 42:6 100:25 101:1 101:22 116:18 149:4 192:1 192:22 192:24 192:24 203:16 207:13 283:23 283:24 | | percolated(1) 263:7 | | | | ppearances(5) 1:21 2:1 3:1 4:1 5:1 | |
| | | perfectly(1) 177:17 | | | | practical(1) 82:21 | |
| | | perform(2) 161:16 203:12 | | point(27) 35:14 65:5 68:7 77:8 88:13 90:14 91:22 102:23 105:19 105:25 123:6 150:21 156:17 159:24 174:13 192:5 222:1 225:14 227:6 247:21 249:6 278:9 278:22 279:10 281:25 282:14 282:15 | | practice(6) 112:2 153:15 158:17 182:19 239:24 240:25 | |
| | | performance(15) 14:25 274:23 275:1 275:21 276:7 276:12 276:16 276:23 277:2 278:2 278:8 278:19 279:2 279:5 279:11 | | | | | |
| partisan(1) 61:21 | | | | | | practitioner(2) 203:3 203:9 | |
| partly(5) 100:20 100:24 101:21 105:7 232:11 | | performed(1) 190:17 | | | | pre-lbo(1) 267:21 | |
| | | performing(1) 274:25 | | | | precise(1) 244:5 | |
| partner(3) 9:14 92:9 203:5 | | perhaps(2) 189:12 263:19 | | points(1) 228:10 | | preclude(1) 204:5 | |
| partners(8) 5:19 7:4 8:4 9:30 9:30 10:42 10:46 203:6 | | period(8) 58:21 59:17 63:11 63:19 76:19 145:17 192:21 278:19 | | policy(9) 48:3 93:15 150:20 150:22 151:12 151:22 152:7 153:25 272:18 | | preclusion(1) 40:20 | |
| | | | | | | predicate(1) 239:15 | |
| partnership(1) 201:25 | | periods(2) 57:24 279:2 | | political(2) 95:15 98:20 | | prefer(4) 85:13 260:3 260:16 284:25 | |
| parts(1) 184:2 | | permissible(1) 85:9 | | polk(2) 2:4 9:4 11:6 90:6 | | preference-recovery(1) 154:2 | |
| party(16) 10:42 19:21 62:4 76:20 130:19 157:25 157:25 158:5 163:2 163:2 171:18 175:2 175:3 200:2 221:16 221:22 | | permitted(4) 29:20 67:3 86:11 215:4 | | pop(1) 155:23 | | prejudiced(1) 91:6 | |
| | | pernick(1) 1:34 | | portfolio(1) 13:12 | | preliminary(1) 279:25 | |
| | | person(1) 67:17 | | portion(2) 265:12 268:7 | | prepare(2) 117:2 232:8 | |
| parver(1) 2:42 | | person's(1) 84:24 | | | | prepared(16) 105:12 108:21 114:14 122:7 148:2 151:25 159:4 192:9 193:4 193:11 193:13 194:1 194:17 247:22 262:2 285:13 | |
| passu(2) 210:5 211:8 | | personal(1) 13:9 | | | | | |
| past(4) 195:11 222:10 279:4 279:7 | | personally(1) 150:15 | | | | | |
| path(1) 42:12 | | personnel(1) 53:10 | | | | | |
| patricia(1) 94:15 | | perspective(2) 83:15 169:11 | | | | preparing(2) 196:16 247:20 | |
| paul(1) 7:39 | | persuade(3) 146:9 164:16 164:18 | | | | present(3) 44:6 127:5 219:14 | |
| pause(4) 156:21 187:4 224:21 225:2 | | peter(2) 9:5 10:26 | | | | presentation(2) 19:9 19:10 | |
| pay(22) 38:25 116:23 118:23 123:11 128:15 130:21 133:21 133:23 135:9 144:2 151:8 167:5 212:4 212:5 220:22 227:22 234:21 239:1 240:3 241:7 245:16 253:5 | | petition(1) 215:5 | | | | presented(2) 237:3 248:13 | |
| | | petrik(1) 197:14 | | | | preserved(1) 170:22 | |
| | | phelps(3) 10:50 104:19 198:25 | | | | president(1) 13:1 | |
| | | philip(1) 2:23 | | | | press(2) 106:13 210:16 | |
| | | phone(2) 75:17 201:20 | | | | presume(1) 284:15 | |
| paying(1) 127:7 | | phones(17) 19:5 21:3 21:11 21:13 86:23 117:1 169:2 169:13 169:24 173:10 200:4 218:11 220:13 220:18 220:20 220:22 221: | | | | pretty(9) 22:16 83:22 121:21 136:3 136:7 152:2 173:22 224:10 282:8 | |
| payment(19) 20:9 20:11 20:12 21:6 21:7 21:9 21:12 31:21 31:22 34:19 35:6 37:9 42:19 132:21 132:21 132:25 139:13 215:1 235:11 | | | | | | | |
| | | phrase(2) 104:2 233:3 | | | | prevent(6) 15:5 211:14 211:18 268:16 269:17 270:6 | |
| | | physics(3) 94:9 94:10 94:13 | | | | | |
| | | pick(1) 120:7 | | | | | |
| | | pickering(2) 6:20 10:33 | | | | prevented(1) 212:25 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| previewed(1) 91:19 | | professor(84) 87:19 87:22 93:7 93:11 | | purposes(6) 124:3 178:4 184:16 196:12 | | range(48) 43:1 91:17 105:9 117:15 117:15 |
| previously(2) 99:14 133:23 | | 93:23 93:24 94:4 97:3 99:4 102:24 103:12 | | 271:18 280:24 | | 118:16 139:10 140:17 140:18 148:8 |
| price(6) 24:18 145:12 146:1 146:2 273:11 | | 107:17 108:25 118:8 119:4 120:11 121:22 | | | | 148:11 148:19 148:20 149:5 149:14 154:20 |
| 277:4 | | 122:11 124:19 142:12 154:9 157:6 159:22 | | pursue(2) 80:22 235:21 | | 154:23 157:10 157:15 157:18 157:19 |
| | | 165:3 172:7 180:7 180:25 181:10 182:8 | | pursued(1) 80:2 | | 158:3 158:4 158:7 162:16 162:18 163:6 |
| prices(5) 145:11 145:23 281:15 281:15 | | 183:6 185:16 185:24 186:11 190:4 190:8 | | push(2) 171:9 234:6 | | 163:7 163:9 168:19 168:21 170:5 171:2 |
| 281:18 | | 191:4 194:7 195:18 196:11 197:22 204:20 | | pushed(2) 107:1 201:9 | | 171:9 171:16 171:17 171:20 172:2 172:3 |
| | | 206:2 207:6 208:24 216:15 219:22 221:4 | | pushing(4) 249:14 249:16 249:22 254:11 | | 176:2 221:2 228:2 237:23 238:16 258:23 |
| primoff(1) 2:41 | | 221:8 222:18 223:16 223:25 225:18 228:1 | | put(62) 32:4 40:23 41:1 49:22 50:9 50:20 | | 258:24 271:11 271:13 |
| princeton(1) 94:9 | | 230:9 236:1 242:8 245:2 250:5 250:21 | | 80:7 80:12 80:20 89:9 89:10 108:24 109:5 | | |
| principal(3) 14:11 185:14 218:8 | | 251:12 254:21 255:22 256:9 258:8 259:18 | | 114:17 114:18 115:13 119:5 120:21 120:22 | | range-plus(1) 237:25 |
| principally(5) 112:16 118:16 181:20 | | 260:3 260:16 261:1 261:22 262:16 263:14 | | 121:6 122:10 124:16 127:3 131:4 131:20 | | ranges(4) 47:24 227:25 230:6 237:22 |
| 188:24 218:6 | | 264:22 265:9 268:25 269:20 270:20 272:2 | | 141:14 141:24 143:14 148:4 148:25 150:1 | | ranging(1) 99:23 |
| | | 273:18 274:2 274:11 275:17 277:18 | | 153:16 156:9 159:9 160:4 167:21 168:6 | | rapid(1) 128:7 |
| principle(8) 94:24 95:11 100:5 112:20 | | 284:16 284:20 | | 168:6 169:8 173:5 193:16 193:21 199:7 | | rate(8) 169:3 214:15 214:16 214:18 |
| 151:16 151:24 198:15 198:21 | | | | 206:13 230:12 230:15 237:23 253:13 | | 214:19 214:21 214:22 214:24 |
| | | proffer(1) 285:7 | | 254:13 254:14 255:5 255:11 257:8 259:14 | | |
| principles(1) 97:12 | | profile(1) 13:8 | | 261:15 262:11 262:23 263:14 283:3 284:1 | | rated(1) 217:9 |
| prior(24) 12:8 14:16 14:16 53:9 64:2 70:4 | | profit(1) 279:6 | | 285:13 285:23 | | rath(3) 3:25 3:27 5:44 |
| 70:6 70:25 81:1 93:19 94:1 94:3 94:4 | | profitability(1) 73:11 | | | | rather(13) 78:12 85:11 100:18 167:7 |
| 94:7 123:20 123:21 132:25 181:10 181:14 | | program(1) 14:6 | | puts(4) 124:12 133:12 133:24 150:1 | | 202:10 208:2 208:17 213:2 237:23 238:7 |
| 183:22 188:18 197:10 257:4 281:8 | | projected(1) 274:25 | | putting(4) 147:20 232:14 268:15 269:16 | | 241:19 255:11 259:22 |
| | | projection(1) 49:21 | | puzzled(1) 265:6 | | |
| prioritizing(1) 199:7 | | projections(16) 129:7 187:10 204:21 | | qualifications(1) 182:12 | | rating(11) 47:21 47:24 48:4 48:18 50:18 |
| priority(1) 201:13 | | 204:25 205:1 205:3 205:5 205:6 240:3 | | qualifiers(2) 236:25 237:17 | | 51:21 52:20 56:16 56:21 217:4 270:1 |
| privilege(2) 77:1 77:4 | | 275:1 275:4 275:5 275:9 275:11 275:22 | | qualifies(1) 267:7 | | |
| privileged(4) 77:2 77:6 186:5 186:12 | | 275:23 | | qualify(1) 204:24 | | ratings(3) 49:17 50:11 50:15 |
| pro-rata(4) 32:5 81:14 81:16 84:18 | | prong(5) 102:5 178:17 241:7 241:9 241:10 | | qualitative(6) 205:4 230:10 230:20 230:24 | | raymond(1) 9:34 |
| probabilities(68) 98:11 107:5 119:1 120:9 | | properly(2) 259:12 261:15 | | 232:8 232:12 | | reach(9) 42:15 56:18 56:23 66:24 74:13 |
| 120:13 120:14 120:25 121:3 125:24 131:5 | | property(3) 126:12 126:16 184:15 | | | | 110:25 130:3 192:23 212:10 |
| 131:5 131:21 131:25 132:6 137:14 139:1 | | proponents(5) 11:8 11:18 44:15 172:11 | | qualitatively(2) 178:13 234:1 | | |
| 146:21 147:5 148:15 156:15 156:16 157:2 | | 185:21 | | quality-checked(1) 249:1 | | reached(17) 20:5 31:1 31:3 31:5 33:2 |
| 157:23 159:19 159:19 159:25 160:9 | | | | quandary(1) 150:23 | | 33:25 34:3 34:11 42:13 55:8 55:21 55:25 |
| 160:12 161:13 162:14 165:4 165:11 165:2 | | proposal(2) 64:20 143:21 | | quantitative(2) 98:8 158:13 | | 74:9 105:16 105:16 192:25 238:6 |
| 165:25 168:17 189:14 189:18 189:21 | | propose(2) 17:8 44:15 | | quarterly(1) 199:23 | | |
| 189:22 189:22 190:18 190:25 206:10 216: | | proposed(6) 65:2 65:18 90:20 182:2 | | question(76) 25:15 25:16 29:15 29:22 | | reaching(1) 165:22 |
| 217:5 220:7 222:19 227:14 227:24 228:3 | | 183:11 183:16 | | 29:23 30:10 30:11 30:18 30:19 43:18 | | reaction(2) 173:16 177:9 |
| 228:6 228:13 229:8 229:9 230:13 231:12 | | | | 52:23 60:20 60:22 60:23 61:2 63:18 77:2 | | read(32) 23:18 36:17 52:17 64:23 72:4 |
| 233:7 234:11 236:16 237:21 241:22 244:8 | | prospect(1) 277:7 | | 79:8 82:17 82:19 82:20 83:23 111:2 | | 87:5 100:4 100:4 100:11 120:6 179:5 |
| 249:9 249:12 257:12 257:18 262:11 262:2 | | prospects(1) 73:6 | | 111:20 119:18 121:5 121:9 121:19 128:10 | | 182:14 184:3 186:23 188:9 188:16 199:7 |
| | | protect(2) 112:6 133:9 | | 129:14 129:15 143:1 143:2 147:15 157:23 | | 199:8 200:8 200:9 200:10 201:7 201:11 |
| probability(59) 98:7 98:12 106:23 120:25 | | protected(36) 76:19 167:1 167:3 167:10 | | 163:15 176:11 176:13 176:22 178:2 179:8 | | 224:17 225:1 265:24 266:20 267:10 268:23 |
| 124:12 124:16 126:23 127:3 127:14 127:11 | | 167:11 167:16 173:21 174:3 174:11 174:1 | | 179:21 179:22 180:15 190:15 190:17 194:9 | | 270:9 270:11 276:10 |
| 127:11 127:13 129:20 129:20 136:17 137: | | 174:20 174:24 175:11 175:18 178:1 178:7 | | 196:12 205:5 208:1 208:24 212:10 214:4 | | |
| 137:2 137:4 138:6 142:1 145:21 147:25 | | 178:4 178:14 208:12 208:15 208:16 208:17 | | 243:22 249:13 250:10 252:2 265:17 267:1 | | reading(5) 43:22 95:19 100:13 237:6 237:7 |
| 150:13 150:18 156:9 159:21 162:8 163:21 | | 212:1 212:11 212:18 213:8 213:17 214:25 | | 268:21 269:3 269:11 269:15 269:22 | | reads(1) 49:16 |
| 165:21 165:23 166:3 166:4 166:16 168:6 | | 215:18 217:24 217:24 218:2 218:9 218:12 | | 269:24 270:14 275:13 280:12 283:4 284:9 | | ready(4) 72:5 85:24 89:15 91:9 |
| 170:1 174:4 175:10 175:11 175:12 177:9 | | 218:14 218:17 | | | | real(10) 14:4 14:6 18:24 138:1 143:15 |
| 213:10 213:11 216:7 220:4 227:24 228:8 | | | | questions(26) 28:5 28:7 28:9 29:25 38:20 | | 152:23 159:9 166:2 193:1 249:13 |
| 230:8 231:22 236:2 236:3 237:22 237:23 | | protection(1) 146:2 | | 39:4 57:7 72:5 81:5 82:1 83:10 86:1 | | |
| 242:10 243:17 247:4 250:1 250:3 250:9 | | protections(1) 97:19 | | 100:12 152:6 181:24 182:22 185:4 187:2 | | reallocated(2) 263:9 263:10 |
| 251:6 | | protects(1) 77:1 | | 187:17 249:11 250:8 250:14 250:17 264:9 | | reallocation(1) 256:19 |
| | | proud(1) 96:25 | | 270:19 284:7 | | really(84) 15:7 26:8 27:15 36:19 37:1 |
| probable(2) 145:19 147:7 | | provide(4) 98:25 179:16 230:5 273:4 | | | | 38:13 38:18 39:24 39:25 40:3 42:6 42:14 |
| probably(18) 18:12 24:18 53:22 53:24 | | provided(14) 20:11 31:19 31:21 34:1 34:5 | | quick(4) 159:10 186:3 255:19 262:13 | | 43:24 50:22 51:11 52:6 52:9 52:14 53:18 |
| 60:15 71:7 94:7 102:20 105:8 106:12 | | 37:20 49:19 49:20 78:5 78:21 79:9 88:4 | | quickly(6) 22:5 138:22 262:10 262:19 | | 75:8 75:13 76:8 83:6 87:6 87:7 94:13 |
| 112:1 129:17 146:4 155:11 191:21 197:3 | | 161:6 185:25 188:22 | | 274:3 283:13 | | 101:17 102:7 104:11 118:7 119:18 123:18 |
| 285:16 285:19 | | | | | | 126:8 129:12 129:13 130:17 130:22 135:8 |
| | | provides(7) 34:19 35:17 35:20 81:12 83:10 | | quite(12) 66:11 91:14 91:14 95:16 107:1 | | 137:22 142:13 146:11 149:12 149:20 |
| problem(4) 251:22 282:9 284:12 286:4 | | 216:9 239:9 | | 148:12 169:7 190:1 199:9 202:9 202:24 | | 149:21 153:3 153:17 153:24 155:14 158:22 |
| problems(2) 94:14 98:14 | | | | 280:5 | | 162:17 162:19 163:1 164:17 165:17 |
| proceed(4) 90:17 103:9 156:5 156:8 | | providing(3) 79:9 273:15 281:8 | | | | 168:12 171:21 171:25 175:24 179:7 179:11 |
| proceeded(2) 113:8 156:6 | | provision(6) 21:12 81:10 81:12 81:13 | | quote(4) 267:5 269:11 275:20 276:6 | | 179:12 185:4 189:16 199:11 200:9 201:8 |
| proceedings(6) 1:17 1:47 39:14 199:4 | | 81:20 81:24 | | qureshi(1) 2:25 | | 201:9 220:6 236:5 236:13 246:9 246:10 |
| 286:14 286:19 | | | | radically(1) 116:9 | | 246:16 263:4 264:17 268:2 285:23 |
| | | provisions(1) 99:16 | | raise(5) 85:3 92:19 164:8 214:4 284:11 | | |
| proceeds(7) 32:5 32:7 34:21 34:22 34:24 | | public(1) 94:25 | | raised(9) 29:18 100:11 112:2 132:12 | | realm(2) 5:19 172:1 |
| 155:13 272:6 | | publicly(2) 48:14 151:1 | | 168:25 170:8 255:13 255:16 283:17 | | reason(14) 53:5 69:16 111:24 138:3 |
| | | publish(3) 96:18 158:23 158:24 | | | | 138:15 163:25 168:20 186:3 202:4 202:18 |
| process(14) 99:7 100:9 104:8 105:16 118:5 | | published(2) 95:14 96:22 | | raising(1) 101:23 | | 221:13 223:19 239:2 272:1 |
| 146:18 157:14 195:1 197:9 197:10 231:22 | | publisher(4) 70:13 71:2 73:3 285:10 | | raj(1) 47:9 | | |
| 233:22 233:23 241:19 | | publishing(7) 96:19 96:20 97:2 128:5 | | ramifications(1) 176:10 | | reasonable(28) 22:4 102:9 105:10 106:20 |
| | | 128:6 274:12 275:24 | | ran(1) 214:15 | | 106:20 108:2 115:20 124:13 124:17 127:22 |
| produced(3) 1:48 222:23 223:17 | | | | randy(3) 67:21 67:22 68:21 | | 128:13 128:15 150:24 182:3 182:21 |
| product(4) 91:7 186:5 186:12 230:24 | | pull(8) 131:14 134:3 135:25 146:24 171:17 | | | | 192:12 193:5 193:12 193:15 193:16 194:18 |
| productive(1) 262:21 | | 236:8 249:10 270:15 | | | | 205:10 238:13 248:8 258:24 260:9 272:2 |
| prof(1) 9:34 | | | | | | 276:15 |
| professional(1) 151:4 | | purchase(1) 275:22 | | | | |
| professionally(1) 151:6 | | purported(1) 91:2 | | | | |
| | | purpose(3) 60:21 178:7 201:22 | | | | |

| Word | Page:Line |
|------|-----------|
| **reasonableness**(16) 91:17 102:25 103:18 103:21 107:20 112:24 118:4 129:6 163:11 166:13 168:8 171:5 180:9 187:10 204:21 205:6 | |
| **reasonably**(24) 133:12 133:24 139:5 139:7 139:7 139:9 140:16 141:23 207:23 209:2 227:23 236:22 237:15 238:9 238:12 238:1 242:21 253:11 268:12 268:15 269:12 269:17 269:25 270:1 | |
| **reasonably-equivalent**(1) 235:15 | |
| **reasons**(7) 65:21 65:25 66:1 163:19 173:4 249:21 257:17 | |
| **reassess**(2) 124:23 125:19 | |
| **reassessed**(1) 124:24 | |
| **reassigned**(1) 262:12 | |
| **rebuttal**(5) 196:23 196:25 211:13 249:4 279:1 | |
| **recall**(30) 18:14 23:16 38:4 48:18 48:20 50:22 56:1 60:1 61:11 63:25 68:24 79:23 81:7 82:3 82:7 83:10 161:4 187:11 187:15 187:19 187:20 212:2 225:21 226:7 240:23 246:7 278:25 279:3 280:1 281:3 | |
| **recalling**(2) 216:13 216:17 | |
| **recast**(1) 258:13 | |
| **received**(4) 107:14 186:10 262:4 287:15 | |
| **receives**(1) 209:10 | |
| **receiving**(4) 16:22 91:8 272:9 280:1 | |
| **recent**(1) 49:18 | |
| **receptive**(1) 194:25 | |
| **recess**(7) 85:23 92:2 92:3 157:1 157:2 225:8 225:10 | |
| **recession**(5) 278:23 278:24 279:9 279:12 279:13 | |
| **recessions**(3) 127:22 279:5 279:8 | |
| **recipient**(1) 18:7 | |
| **recognize**(1) 186:7 | |
| **recognized**(1) 96:24 | |
| **recognizing**(1) 140:24 | |
| **recollection**(34) 19:8 19:14 19:21 21:3 27:15 28:20 29:4 34:6 37:19 40:4 41:17 50:18 51:25 53:18 54:5 55:24 59:2 59:24 61:18 63:24 64:1 65:20 68:1 69:2 69:7 69:11 71:6 73:22 73:25 76:8 189:2 193:19 253:23 271:9 | |
| **reconcile**(1) 154:25 | |
| **reconvene**(1) 92:1 | |
| **record**(19) 64:8 72:17 76:21 90:11 92:24 105:20 105:23 130:4 143:17 143:24 152:2 182:14 185:20 186:11 207:6 220:11 264:17 266:20 267:11 | |
| **record's**(1) 260:9 | |
| **recorded**(1) 1:47 | |
| **recording**(2) 1:47 286:18 | |
| **record's**(1) 101:8 | |
| **recounting**(1) 198:20 | |
| **recover**(11) 82:10 115:16 116:19 116:19 151:19 164:14 167:17 212:1 212:3 212:5 272:12 | |
| **recoverable**(1) 151:19 | |
| **recovered**(3) 115:2 279:3 279:8 | |

| Word | Page:Line |
|------|-----------|
| **recoveries**(70) 37:22 81:19 81:20 86:12 103:24 104:4 105:6 109:3 113:1 113:4 116:10 116:22 117:3 117:9 117:18 117:23 118:3 118:5 121:8 125:23 134:5 142:13 147:14 148:7 148:18 148:23 149:3 149:22 155:21 157:10 157:25 157:25 158:1 162:4 163:2 163:3 164:7 165:16 167:22 169:25 170:22 171:18 175:2 175:3 175:24 176:5 177:23 177:24 188:21 188:23 206:5 206:24 206:25 206:25 209:11 221:21 221:22 263:18 268:6 268:14 268:17 269:1 269:18 271:22 | |
| **recovers**(1) 108:9 | |
| **recovery**(56) 35:21 35:22 36:2 37:6 37:18 39:14 39:15 39:16 39:18 39:22 40:10 41:13 81:14 84:23 85:3 85:4 86:20 87:12 110:6 113:15 114:15 115:19 118:2 121:6 129:10 129:14 147:7 147:7 148:1 150:11 152:8 153:13 154:11 164:10 164:20 166:1 166:14 167:19 168:3 174:15 174:16 175:15 175:16 178:2 178:8 178:15 179:4 179:17 193:14 207:11 211:1 211:21 215:8 216:1 216:10 221:16 | |
| **recross**(3) 85:17 86:2 287:3 | |
| **recuse**(2) 16:9 16:12 | |
| **recused**(1) 17:22 | |
| **red**(3) 28:5 156:7 262:23 | |
| **redirect**(3) 79:17 79:18 86:4 219:5 281:24 282:2 287:3 287:3 | |
| **redline**(4) 254:21 265:1 265:6 265:8 | |
| **reduce**(3) 165:23 247:7 278:21 | |
| **reduced**(4) 31:8 33:10 247:3 255:6 | |
| **refer**(7) 104:1 108:11 111:21 125:16 187:2 192:1 242:4 | |
| **reference**(7) 51:4 56:9 56:20 173:11 176:5 197:24 265:18 | |
| **referenced**(1) 111:21 | |
| **referred**(8) 31:16 33:20 124:19 150:1 198:15 218:6 251:13 275:4 | |
| **referring**(6) 49:1 50:12 125:22 160:9 188:14 274:1 | |
| **refers**(1) 123:17 | |
| **reflect**(6) 65:7 91:2 105:24 136:19 138:9 254:22 | |
| **reflected**(3) 32:18 115:11 146:22 | |
| **reflects**(2) 231:1 232:2 | |
| **reform**(1) 94:7 | |
| **refresh**(10) 50:17 67:25 69:2 69:7 69:11 71:6 73:22 73:25 189:2 253:22 | |
| **refuse**(1) 150:24 | |
| **regard**(6) 56:23 88:19 99:17 106:23 194:5 196:4 | |
| **regarding**(6) 16:17 171:5 237:3 237:9 240:15 282:19 | |
| **regressions**(1) 158:20 | |
| **reinforce**(1) 173:1 | |
| **reinforced**(1) 171:8 | |
| **relate**(4) 109:4 138:23 264:9 283:4 | |
| **related**(6) 18:21 77:10 82:18 140:25 141:11 268:2 | |
| **relates**(1) 44:14 | |
| **relative**(8) 107:2 138:25 140:9 158:7 249:14 249:17 249:20 249:22 | |
| **relatively**(2) 173:4 253:8 | |
| **release**(2) 44:15 193:10 | |
| **released**(1) 248:4 | |

| Word | Page:Line |
|------|-----------|
| **releases**(4) 39:5 39:9 39:11 153:6 | |
| **releasing**(1) 153:7 | |
| **relevant**(13) 95:24 97:15 99:16 110:14 111:9 120:2 125:11 127:18 170:21 183:12 184:7 218:2 224:19 | |
| **relied**(2) 188:5 188:19 | |
| **relief**(1) 284:1 | |
| **rely**(1) 196:1 | |
| **relying**(4) 188:24 188:25 189:1 198:20 | |
| **remaining**(6) 34:24 67:8 67:9 67:11 67:12 222:3 | |
| **remains**(1) 171:16 | |
| **remedy**(8) 171:1 176:9 177:6 177:12 177:18 212:12 212:14 266:13 | |
| **remember**(60) 19:1 19:4 23:6 30:11 43:15 45:2 46:7 46:14 51:17 51:17 52:6 52:7 52:9 55:18 55:20 56:22 56:25 60:2 61:14 61:16 65:23 67:19 67:22 67:24 69:15 69:18 70:5 70:6 71:8 71:14 74:18 74:24 75:2 75:4 75:8 75:10 75:14 75:17 75:25 76:1 76:5 76:6 76:11 77:15 107:22 146:15 149:8 172:15 177:24 178:16 188:21 191:13 212:12 236:4 237:6 237:7 250:11 279:15 279:22 | |
| **remembering**(8) 101:10 186:23 188:21 188:23 213:16 250:10 250:14 250:16 | |
| **remind**(3) 135:5 137:8 283:15 | |
| **remodeled**(1) 259:4 | |
| **remote**(1) 266:13 | |
| **reorganization**(1) 21:17 | |
| **reorient**(1) 125:22 | |
| **repayment**(1) 34:23 | |
| **repeat**(2) 30:12 283:11 | |
| **repeating**(1) 104:2 | |
| **rephrase**(2) 147:15 147:16 | |
| **replaced**(1) 106:16 | |
| **reply**(1) 100:11 | |
| **report**(144) 13:18 13:21 23:15 23:19 23:22 24:15 24:22 26:16 48:14 75:6 76:6 76:7 80:12 88:5 88:8 88:23 90:13 90:14 90:16 91:4 96:21 100:14 101:6 105:12 105:15 105:24 105:25 106:6 106:10 106:1 106:18 106:19 106:20 106:23 109:14 109:16 114:22 120:2 120:6 127:2 129:12 144:25 148:5 149:2 150:1 151:1 161:1 161:1 161:2 161:5 163:20 169:1 182:6 182:7 183:19 183:21 183:22 188:15 188:1 190:10 192:17 192:22 196:11 196:16 196:23 196:25 196:25 197:3 197:10 197:17 198:11 198:14 199:18 201:2 207:17 207:20 211:13 223:18 226:14 227:21 228:23 229:14 230:17 230:12 231:7 237:5 237:8 239:21 242:2 242:5 242:6 242:9 247:16 247:20 247:23 248:1 248:3 248:13 248:5 248:21 248:24 249:5 254:15 254:21 254:2 255:1 256:9 256:18 261:12 262:3 262:18 263:23 263:24 264:1 264:5 264:8 264:23 264:24 264:25 265:9 265:12 266:3 266:17 267:2 267:5 267:12 267:15 267:23 267:24 268:8 269:10 270:9 270:12 270:16 271:18 271:23 271:25 273:15 274:22 276:13 277:279:1 281:20 287:17 | |
| **reporting**(3) 48:11 51:7 266:8 | |
| **reports**(2) 90:19 285:5 | |
| **represent**(5) 43:9 71:3 120:9 229:1 256:20 | |
| **representation**(4) 187:13 199:19 262:22 274:5 | |
| **representatives**(2) 29:10 30:15 | |
| **represented**(1) 257:4 | |
| **representing**(1) 11:7 | |
| **represents**(1) 120:8 | |
| **reputation**(1) 204:5 | |

| Word | Page:Line |
|------|-----------|
| **request**(2) 18:7 283:11 | |
| **requested**(1) 18:3 | |
| **requests**(4) 16:23 18:3 18:7 18:11 | |
| **require**(2) 185:5 272:12 | |
| **requirements**(4) 48:11 | |
| **requires**(1) 48:3 | |
| **research**(15) 93:15 95:12 96:1 96:7 98:8 98:9 98:18 98:20 100:12 151:7 158:13 158:13 182:20 184:5 196:1 | |
| **reserve**(3) 38:7 38:8 38:10 | |
| **resolving**(1) 87:25 | |
| **respect**(38) 24:1 25:5 26:6 46:10 48:14 58:7 58:11 81:19 83:16 86:15 87:22 110:19 131:25 141:25 147:8 156:12 171:7 191:25 204:25 205:1 206:23 211:6 211:19 212:21 212:23 213:23 214:12 221:8 232:21 242:1 245:15 265:19 266:4 266:10 267:16 274:21 283:14 283:25 | |
| **respecting**(1) 214:7 | |
| **respond**(3) 52:13 56:15 56:16 | |
| **response**(10) 18:10 36:6 77:7 79:16 91:25 106:3 107:3 200:8 286:1 286:11 | |
| **responsibilities**(1) 13:10 | |
| **responsibility**(2) 13:13 14:11 | |
| **responsive**(1) 80:16 | |
| **rest**(7) 87:7 114:3 142:8 149:17 155:24 236:16 282:7 | |
| **restrict**(1) 78:11 | |
| **restructuring**(1) 203:17 | |
| **result**(21) 22:15 31:1 31:5 32:12 33:25 49:18 80:11 158:22 158:25 187:25 207:24 210:3 215:13 216:1 221:5 234:23 243:11 243:23 245:7 245:8 277:2 | |
| **results**(9) 49:18 114:15 158:23 160:23 190:12 209:3 274:17 274:18 275:7 | |
| **resume**(2) 222:15 282:24 | |
| **resumed**(1) 157:4 | |
| **retain**(4) 17:20 67:17 67:23 68:5 | |
| **retained**(14) 17:11 17:16 17:17 54:9 54:12 54:15 101:8 101:14 102:16 102:19 191:11 191:24 273:3 273:7 | |
| **rethink**(2) 254:12 255:9 | |
| **rethinking**(1) 255:4 | |
| **rethought**(1) 107:4 | |
| **return**(12) 57:1 59:4 59:7 59:11 59:21 60:2 60:8 61:7 61:9 61:13 62:10 84:7 | |
| **returning**(3) 34:9 56:2 | |
| **revenue**(1) 274:24 | |
| **revenues**(2) 275:25 279:5 | |
| **review**(14) 54:21 80:15 80:15 90:25 186:1 187:4 187:5 197:10 197:12 197:17 198:3 198:10 198:23 269:25 | |
| **reviewed**(15) 183:23 187:6 196:16 196:18 196:24 197:7 198:6 198:13 198:14 198:14 199:1 200:4 200:13 200:14 279:23 | |
| **reviewing**(2) 74:1 184:1 | |
| **reviews**(1) 96:20 | |
| **revise**(2) 56:6 56:12 | |
| **revised**(19) 49:20 50:17 88:5 190:10 205:2 206:10 247:16 250:3 254:15 254:25 256:9 256:18 256:24 257:1 257:5 264:1 264:5 264:23 270:16 | |
| **revising**(2) 56:9 56:11 | |
| **revision**(1) 265:1 | |
| **revolver**(1) 167:5 | |
| **rich**(2) 35:10 42:18 | |
| **richards**(2) 2:12 9:10 | |
| **ridiculously**(1) 119:2 | |
| **rifkind**(1) 7:39 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **right**(234) 28:5 28:16 36:10 42:21 44:19 44:25 46:4 46:16 46:24 47:5 47:13 47:22 48:5 48:8 49:14 50:2 50:7 50:8 51:8 51:11 52:14 53:12 54:3 54:7 54:17 54:23 55:8 55:13 55:16 56:24 57:5 57:11 57:21 58:16 58:25 58:25 59:5 59:12 62:15 62:25 63:8 63:13 63:23 64:6 64:18 64:22 65:13 65:15 65:19 66:3 67:4 67:18 69:19 69:20 69:25 70:15 70:18 70:20 72:11 73:20 77:18 77:22 77:24 78:3 78:6 79:7 79:12 79:13 79:17 85:24 86:7 87:17 90:9 90:12 92:17 92:19 98:21 98:23 99:3 103:8 106:21 108:7 110:5 115:9 115:10 116:15 120:14 120:19 123:20 127:21 128:20 131:1 131:3 131:4 131:16 131:24 132:22 133:19 134:15 136:4 137:2 137:6 137:25 141:17 142:18 142:23 142:24 143:8 144:17 145:1 146:12 146:13 148:10 148:11 148:19 153:11 154:15 154:16 156:18 157:12 157:15 163:14 164:2 166:5 169:10 170:13 172:19 172:22 174:6 174:17 175:25 177:1 177:19 178:15 180:5 181:12 183:8 185:9 186:15 187:8 188:7 189:23 190:16 195:21 195:24 196:8 196:19 200:1 202:1 203:2 203:15 205:17 207:4 208:20 208:23 209:13 211:16 211:23 215:12 215:22 216:14 216:21 217:10 217:16 217:18 218:5 218:8 218:5 219:9 220:20 221:10 225:5 227:8 228:5 229:20 230:20 231:6 232:7 233:1 233:5 234:1 235:3 240:19 242:7 242:15 243:1 245:9 245:23 246:4 250:18 251:6 251:12 251:13 251:20 251:23 251:2 252:1 252:4 253:9 253:14 253:18 254:5 254:19 255:3 255:5 257:24 259:5 260:23 262:25 263:13 263:22 269:15 270:2 270:1 271:18 272:11 273:8 275:5 275:12 276:3 276:8 277:10 277:11 277:23 278:7 278:12 279:20 280:6 280:19 282:13 285:16 286:9<br><br>**right-hand**(1) 116:13<br>**rise**(3) 40:7 40:11 76:15<br>**rises**(1) 40:3<br>**risk**(11) 13:4 13:7 47:2 47:21 50:18 50:24 51:7 56:11 95:9 152:6 154:6<br><br>**risk-management**(1) 95:9<br>**road**(11) 127:22 129:25 144:21 144:22 144:23 166:14 166:15 166:16 179:16 204:11 215:7<br><br>**roadblock**(2) 216:11 216:19<br>**roadblocks**(1) 215:23<br>**roads**(2) 146:12 241:5<br>**robert**(5) 3:17 6:33 7:32 9:35 10:37<br>**robust**(3) 158:22 158:24 158:25<br>**robustness**(6) 157:21 158:18 159:2 160:23 209:20 214:24<br><br>**rochester**(1) 8:15<br>**rockefeller**(1) 3:21<br>**rodney**(1) 2:14<br>**rogers**(1) 9:27<br>**roitman**(1) 5:30<br>**role**(7) 16:2 19:18 47:15 70:3 71:1 71:21 74:10<br><br>**roles**(1) 13:5<br>**rolled**(1) 88:25<br>**rome**(1) 5:11<br>**room**(1) 191:18<br>**rose**(1) 41:12<br>**rosenblatt**(1) 3:16<br>**rosenman**(1) 10:38<br>**rosner**(1) 10:17<br>**rough**(4) 140:11 198:16 199:3 244:5<br>**rough-draft**(1) 247:23 | | **roughly**(9) 31:25 32:6 32:8 34:25 37:20 84:7 244:6 252:15 281:14<br><br>**round**(1) 151:15<br>**route**(12) 111:11 116:11 124:8 164:13 164:14 164:16 167:19 179:14 215:8 216:1 216:19 242:13<br><br>**routes**(4) 141:9 141:11 172:14 239:12<br>**row**(3) 115:14 115:11 115:14<br>**royal**(2) 9:26 9:26<br>**rucker**(1) 198:24<br>**rudnick**(1) 7:29<br>**rule**(3) 69:24 183:9 197:22<br>**run**(10) 114:23 158:17 173:9 174:18 175:25 178:16 214:6 214:11 226:7 285:24<br><br>**running**(6) 98:9 98:10 98:17 157:20 158:20 159:2<br><br>**runs**(3) 95:2 135:14 137:13<br>**rush**(1) 193:24<br>**rushablk**(1) 9:52<br>**russia**(1) 94:6<br>**russian**(1) 94:7<br>**s-esop**(6) 126:13 126:13 127:6 127:9 144:9 155:10<br><br>**s-esops**(1) 126:16<br>**saavedra**(1) 8:42<br>**sachs**(2) 7:35 7:35<br>**safe**(1) 184:9<br>**said**(73) 42:18 43:17 46:3 52:5 55:4 61:12 71:8 73:19 74:8 76:23 79:10 80:14 80:18 106:19 113:21 114:2 117:10 120:1 126:19 126:25 139:9 139:12 139:13 139:17 141:1 142:12 143:11 143:23 144:4 144:7 152:22 154:25 156:14 159:18 159:24 161:23 189:4 189:6 191:8 191:9 191:25 200:23 201:7 201:8 201:8 201:9 202:7 203:13 207:15 208:13 212:20 214:24 215:23 221:19 229:16 231:19 234:3 234:1 237:24 238:9 238:11 239:5 242:21 243:2 244:22 245:5 257:3 266:16 277:6 278:18 280:17 285:19<br><br>**sam**(3) 5:4 143:19 145:7<br>**same**(45) 30:21 49:10 51:10 56:16 69:3 79:3 82:9 82:24 86:15 86:19 87:12 87:13 90:18 97:11 109:7 109:16 111:2 130:17 141:5 150:16 166:3 167:11 167:16 197:3 208:10 208:10 208:15 211:8 213:24 214:2 217:18 219:13 221:10 233:22 257:11 263:25 265:5 265:14 267:7 269:3 272:19 276:6 276:21 280:25 284:2<br><br>**satisfied**(1) 42:16<br>**satisfying**(1) 234:13<br>**saturday**(2) 194:3 194:5<br>**savings**(1) 127:6<br>**saw**(7) 62:3 62:13 62:16 78:8 226:15 229:19 272:16<br><br>**say**(85) 32:10 36:17 45:20 52:14 52:16 52:18 56:5 60:19 61:9 68:13 71:20 71:25 83:7 100:16 107:1 110:8 110:22 111:13 112:3 112:8 119:12 120:11 120:24 125:10 132:11 135:13 135:18 138:12 144:17 148:17 150:22 152:1 152:16 152:22 153:9 154:19 155:9 158:25 160:11 161:25 170:1 171:6 171:8 174:19 175:4 175:8 175:22 178:21 186:4 186:12 188:2 193:4 193:11 193:13 194:18 195:16 212:3 220:5 222:9 224:24 226:19 229:23 234:20 236:20 239:14 239:17 239:19 239:21 240:10 240:12 242:9 242:17 243:6 244:9 245:10 247:5 248:15 249:14 252:13 255:8 276:6 276:16 277:25 280:15 283:17 | | **saying**(20) 52:19 56:12 60:1 61:18 109:7 130:22 140:18 140:21 151:1 153:24 155:2 173:2 179:1 204:24 212:14 213:6 214:20 243:7 253:24 276:21<br><br>**says**(39) 50:20 64:11 65:6 81:13 114:3 120:6 120:7 123:14 132:16 133:5 136:16 137:11 139:19 140:2 140:4 140:8 140:15 143:24 150:14 152:15 166:10 170:15 184:1 185:17 186:20 190:21 223:3 223:6 236:21 236:22 237:4 238:5 238:12 238:24 266:17 266:18 268:3 273:19 278:13<br><br>**scale**(4) 242:22 242:24 242:25 243:3<br>**scenario**(149) 109:18 109:19 109:25 110:6 110:7 110:17 110:17 110:19 111:3 111:5 111:6 111:7 111:12 111:19 112:16 112:17 112:23 113:1 113:2 113:3 113:5 115:8 115:18 115:21 116:1 116:3 116:4 116:10 117:16 117:19 117:25 119:20 121:9 121:1 121:11 121:11 127:14 128:18 129:9 129:23 131:4 131:13 131:13 131:14 133:1 134:8 136:3 136:23 137:17 140:12 141:19 141:23 141:24 142:6 142:14 146:23 146:2 148:1 162:16 162:19 163:24 164:8 164:9 164:15 165:1 165:22 165:22 165:24 166:1 166:3 166:4 166:5 166:15 168:2 169:21 170:20 170:21 170:23 173:17 174:6 174:1 174:22 175:16 175:17 177:9 178:12 178:14 179:16 207:11 207:24 208:8 208:1 208:11 209:1 209:3 209:8 209:12 209:21 209:21 209:24 210:1 211:16 212:7 212:1 213:4 213:11 213:12 213:19 213:22 213:24 214:9 214:12 215:16 215:17 216:1 216:18 217:22 218:8 218:10 218:13 219:18 220:21 220:24 229:20 230:20 231:25 236:2 236:3 236:4 236:6 236:7 236:9 236:11 236:11 242:11 249:15 250:7 251:1 251:2 252:6 253:22 253:22 255:6 255:13 255:18 255:18 257:21 258:4 258:2<br><br>**scenarios**(81) 108:11 108:12 108:13 108:19 108:22 109:2 109:4 109:9 109:16 110:8 111:22 111:12 112:15 112:23 113:5 113:1 113:15 113:18 114:5 114:23 114:25 115:7 115:12 116:7 117:11 117:12 117:13 118:1 120:19 120:22 120:24 121:7 132:1 135:15 137:5 139:1 147:6 147:13 149:6 157:24 162:11 163:13 163:22 166:6 167:2 170:20 174:17 175:5 177:25 187:25 206:6 207:6 207:15 207:16 207:20 207:23 208:2 208:13 208:14 208:17 208:18 208:21 209:18 218:2 218:10 218:14 219:13 219:16 220:4 221:4 221:11 222:20 228:14 228:17 229:3 229:25 249:18 249:24 250:9 254:12 262:16<br><br>**schedule**(3) 282:7 282:8 284:14<br>**scheduling**(1) 284:12<br>**scholar**(3) 203:3 203:6 203:10<br>**scholars**(2) 95:13 98:24<br>**scholer**(2) 2:40 10:20<br>**school**(13) 12:4 12:5 93:13 93:13 93:23 93:24 94:3 94:10 94:14 94:14 181:2 181:4 181:8<br><br>**schools**(1) 97:10<br>**schott**(1) 9:31<br>**schotz**(1) 1:32<br>**schuylkill**(1) 1:42<br>**schwartz**(1) 9:35<br>**schwinger**(1) 3:17<br>**science**(3) 95:12 95:15 98:20<br>**scope**(1) 55:1<br>**scotland**(2) 9:26 9:26<br>**scott**(2) 7:36 10:30<br>**screen**(11) 114:19 122:10 134:14 225:12 249:10 256:6 259:19 260:1 260:4 260:17 261:24 | | **sea**(2) 223:20 223:21<br>**search**(1) 278:17<br>**seated**(2) 1:12 92:22<br>**sec**(1) 94:9<br>**second**(45) 33:6 33:13 37:5 37:11 37:15 37:19 37:25 49:2 60:15 64:23 65:5 65:5 76:16 77:17 77:24 79:3 88:7 96:8 106:16 124:9 124:20 125:7 125:10 125:21 126:8 127:4 138:16 138:18 142:11 149:23 151:14 155:14 156:8 156:11 163:5 164:13 166:14 166:15 167:18 178:17 193:9 193:20 194:6 226:11 226:17<br><br>**seconds**(1) 260:2<br>**secret**(3) 53:9 53:13 128:9<br>**section**(7) 97:18 133:4 183:13 218:18 224:19 239:7 269:10<br><br>**sections**(1) 183:14<br>**security**(1) 183:14<br>**see**(83) 28:11 45:13 48:24 49:2 49:4 49:23 50:17 51:2 51:13 53:6 54:9 56:6 56:18 61:20 64:5 64:9 64:11 64:15 65:3 65:10 72:1 73:13 73:16 89:17 96:21 107:17 113:14 114:19 115:5 115:23 117:23 118:25 119:8 122:3 123:15 124:14 124:15 128:19 130:22 134:17 135:3 135:14 136:14 137:14 138:23 141:14 143:6 147:4 148:8 148:13 153:3 154:12 158:3 158:6 158:22 160:15 165:17 168:10 168:18 175:24 189:9 191:4 192:23 194:24 222:16 223:6 224:13 253:7 255:2 261:5 262:4 263:5 265:18 268:19 269:24 275:25 276:1 277:20 280:16 280:19 284:14 285:1<br><br>**seeing**(2) 103:12 280:1<br>**seek**(1) 39:8<br>**seeking**(3) 62:4 176:8 273:11<br>**seem**(1) 52:21<br>**seemed**(1) 156:10<br>**seems**(12) 50:21 56:12 60:22 69:9 70:9 71:11 130:2 142:25 152:8 190:1 225:6 241:9<br>**seen**(1) 150:16<br>**seife**(2) 3:15 5:34<br>**seiler**(1) 8:20<br>**select**(2) 17:6 67:3<br>**selected**(4) 15:21 67:13 208:25 210:25<br>**selection**(1) 17:3<br>**sell**(9) 46:18 46:20 46:23 47:3 50:12 51:4 56:20 56:23 127:8<br><br>**selling**(1) 39:6<br>**sending**(1) 104:4<br>**sends**(2) 116:17 116:21<br>**senior**(34) 19:10 19:14 20:4 20:9 21:2 22:10 27:24 31:22 32:6 32:8 34:19 34:25 35:1 35:7 37:5 37:15 38:13 40:1 40:2 40:6 62:5 62:7 62:9 63:7 67:7 70:22 79:7 82:19 84:12 85:2 86:20 86:24 119:13<br><br>**sense**(17) 29:17 32:21 44:17 66:23 66:24 87:18 89:21 116:1 134:17 144:5 158:21 186:25 197:21 203:16 237:16 282:7 284:17<br><br>**senses**(4) 110:14 111:9 125:12 229:25<br>**sensitive**(2) 28:11 88:21<br>**sensitivities**(4) 91:16 91:20 158:10 212:21<br>**sensitivity**(32) 88:22 89:9 91:2 157:21 158:2 158:18 159:5 159:16 159:18 159:25 160:11 160:16 160:17 161:1 161:7 161:10 162:22 166:18 166:22 166:23 167:18 168:9 171:3 171:15 171:24 171:25 175:7 175:22 177:22 210:19 211:12 271:6<br><br>**sent**(3) 49:9 88:8 149:4<br>**sentence**(6) 182:14 237:7 268:8 268:10 276:5 276:9 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**separate**(13) 78:23 79:11 96:2 97:18 124:7 141:9 151:6 228:20 240:20 242:17 255:12 267:10 267:13

**separately**(6) 124:9 153:5 177:2 204:25 230:15 246:3

**september**(15) 32:18 36:22 36:24 37:2 38:3 38:6 38:11 64:10 65:23 66:2 81:23 86:7 193:18 194:12 248:6

**serengeti**(2) 8:44 8:45
**series**(5) 99:21 112:2 187:2 250:14 281:16
**serious**(7) 38:19 111:15 133:14 156:11 205:11 205:15 205:16

**serve**(2) 13:5 15:21
**served**(7) 90:13 105:24 106:10 254:16 254:22 256:10 256:10

**service**(5) 1:41 1:48 280:13 280:15 281:10
**services**(1) 1:41
**serving**(2) 16:3 16:8
**sesop**(4) 256:1 261:5 261:5 262:2
**session**(3) 18:24 28:21 283:12
**sessions**(4) 29:8 30:13 63:20 98:25
**set**(25) 38:8 50:15 59:16 73:12 92:14 92:16 104:7 120:8 121:2 128:15 131:25 159:16 165:21 186:8 196:15 223:17 226:1 226:14 256:10 257:11 259:8 259:9 259:13 259:13 278:2

**sets**(3) 206:4 206:9 261:3
**setting**(5) 60:22 79:5 118:16 157:9 236:15
**settle**(16) 19:13 19:15 32:21 34:7 38:3 66:21 66:22 98:5 118:15 118:24 135:9 135:12 137:12 150:22 151:3 151:5

**settled**(18) 20:10 20:18 32:3 32:10 32:11 32:11 32:13 32:15 35:6 37:9 38:1 66:2 66:3 77:18 77:22 118:13 272:13 272:15

**settlement**(207) 20:6 20:8 20:16 20:17 20:20 20:25 21:5 21:11 21:13 21:14 21:16 21:25 22:4 22:17 23:22 24:2 24:4 24:16 24:19 25:2 25:4 25:6 25:12 26:6 26:7 26:9 26:13 26:21 27:2 27:4 27:5 27:6 27:9 27:12 27:25 29:4 31:1 31:5 31:8 31:19 32:2 32:12 32:17 33:1 33:3 33:5 33:6 33:10 33:24 34:3 34:5 34:9 34:17 35:5 35:8 35:14 35:17 35:18 36:25 37:4 37:19 37:24 39:2 41:19 41:24 41:25 42:1 42:15 42:17 57:21 58:4 59:18 60:6 62:8 62:14 62:19 62:22 62:25 63:3 63:10 63:19 64:21 65:8 65:8 65:9 65:12 65:13 65:16 65:17 65:18 65:22 66:2 66:24 70:4 70:6 74:22 75:4 75:16 76:12 78:21 81:18 83:1 83:17 98:2 102:14 102:16 103:1 103:19 103:22 105:10 107:20 112:24 115:20 115:20 116:2 118:13 118:16 118:18 118:22 119:6 119:22 119:25 120:3 121:7 126:19 135:11 147:13 147:22 148:6 148:8 148:19 149:5 149:7 149:9 149:14 150:9 150:10 150:24 153:23 154:10 154:20 154:23 157:11 157:11 158:3 158:4 158:5 158:7 162:18 163:9 166:11 167:15 168:15 168:1 168:18 168:21 170:5 171:2 171:7 171:9 171:16 171:17 171:20 172:2 172:3 172:5 173:6 173:7 175:20 176:2 180:10 180:11 180:13 181:15 181:17 181:20 183:11 183:16 183:19 184:2 186:18 186:20 192:1 192:23 193:1 193:5 193:6 193:9 194:18 200:1 206:24 233:24 233:24 234:6 248:7 258:23 258:24 262:17 262:18 270:21 271:1 271:21 271:8 271:11 271:13 272:14 272:18

**settlements**(9) 31:3 33:2 33:25 34:11 37:18 37:23 42:3 57:9 61:22

**settlements'**(1) 65:3

**settles**(1) 34:18
**settling**(4) 39:3 78:5 78:19 116:5
**set''**(1) 50:11
**seven**(8) 48:7 51:20 52:14 52:19 91:23 135:16 237:13 244:10

**seven-and-a-half**(2) 164:12 171:23
**seven-and-a-half-billion**(1) 215:19
**seven-hundred-and-ninety-o**: 220:15

**seven-point**(2) 228:4 236:19
**seventy**(3) 208:6 214:23 217:6
**seventy-five**(1) 141:16
**seventy-percent**(1) 163:21
**severable**(1) 65:17
**several**(3) 91:1 132:12 201:4
**severance**(1) 151:17
**shadow**(1) 118:5
**shamah**(1) 6:39
**shannon**(1) 7:46
**shape**(1) 248:16
**share**(17) 37:13 37:14 81:16 84:18 86:11 117:12 143:19 143:23 144:14 144:17 179:? 213:14 213:17 248:17 277:8 277:10 278:?

**shared**(2) 81:16 81:21
**shareholder**(5) 153:3 153:12 170:22 273:6 273:9

**shareholders**(13) 39:6 80:5 132:18 133:7 133:8 143:18 143:23 153:2 153:2 153:10 153:19 167:7 273:11

**shares**(1) 169:14
**sharing**(11) 81:10 81:13 81:20 81:24 86:5 86:5 174:25 213:1 221:21 268:17 269:18

**shaya**(1) 8:15
**she**(9) 13:23 24:8 24:9 25:16 43:17 55:11 73:1 81:1 83:22

**she's**(4) 61:1 72:9 72:10 283:1
**sheet**(36) 31:10 31:15 31:20 32:4 32:18 32:23 33:12 33:20 36:23 36:24 37:2 37:4 37:6 37:11 37:14 37:15 37:25 38:3 38:7 38:9 38:11 77:17 77:18 77:21 77:24 78:11 79:2 81:24 141:4 169:20 202:12 202:14 226:23 226:24 246:24 252:8

**sheets**(2) 77:14 263:14
**sheffield**(1) 10:43
**sheila**(1) 49:16
**sheron**(1) 10:15
**short**(5) 85:9 85:19 94:12 117:17
**shortened**(1) 283:16
**shorthand**(1) 248:9
**shortly**(2) 26:23 46:3
**shot**(9) 35:20 116:6 119:18 119:19 138:1 141:12 141:18 152:22 153:17

**shots**(1) 141:12
**should**(24) 21:14 25:13 48:23 59:5 87:19 94:7 105:24 107:4 114:8 119:15 122:21 124:4 126:16 127:10 154:24 167:10 179:8 201:8 205:13 225:1 244:14 247:12 255:10 261:7

**shouldn't**(1) 177:15
**shouldn't**(1) 127:9
**show**(10) 31:11 60:21 88:22 115:12 117:6 161:7 206:11 251:6 259:21 265:8

**showed**(4) 77:14 189:19 256:11 256:11
**showing**(3) 60:12 168:4 187:6
**shown**(6) 190:13 198:12 205:19 218:24 251:14 259:15

**shows**(10) 108:21 114:14 117:2 119:5 122:7 148:23 153:3 159:5 255:1 256:18

**shuts**(1) 260:1
**sic**(1) 222:24
**sick**(1) 51:11
**side**(20) 28:12 100:1 100:2 118:21 118:23 119:15 119:17 124:7 124:10 124:11 126:2 131:2 140:4 146:8 154:6 185:14 185:14 215:24 272:3 279:6

**siding**(1) 62:1
**sidley**(30) 1:23 7:10 99:21 101:3 101:15 185:8 186:1 186:4 186:6 186:7 187:23 188:5 188:9 188:19 188:24 189:3 189:9 189:13 189:16 189:19 190:20 191:2 191:15 196:4 201:10 248:7 272:22 280:2 280:4 280:16

**sidley's**(1) 188:25
**sieger**(1) 10:39
**sign**(1) 278:17
**signed**(1) 74:22
**significance**(1) 202:10
**significant**(25) 22:23 66:10 66:25 104:22 115:8 133:25 138:1 138:20 152:11 153:23 154:3 156:2 164:19 165:1 167:2 200:7 204:19 216:2 216:11 237:15 248:1 277:15 277:16 278:5 281:18

**significantly**(3) 37:5 172:14 277:8
**silverstein**(1) 2:19
**simes**(1) 6:7
**similar**(17) 84:23 85:4 93:22 104:3 108:15 145:24 147:1 148:12 154:11 178:13 178:20 207:16 234:1 240:1 257:16 257:17 259:6

**simplifying**(1) 245:20
**simply**(5) 30:19 99:19 143:16 159:19 164:? **sina**(1) 10:47
**since**(5) 100:8 102:19 131:21 194:7 260:17
**single**(2) 106:24 197:17
**singled**(2) 215:24 216:10
**sir**(12) 93:1 93:4 94:23 117:6 134:5 137:5 152:4 176:22 196:21 258:20 282:21 283:9

**sitting**(4) 23:20 28:12 156:18 191:14
**situation**(5) 152:13 252:3 253:2
**six**(33) 48:4 91:20 109:2 109:7 109:16 114:23 114:25 116:3 118:13 120:24 120:2 121:1 122:11 162:10 170:20 187:25 190:19 206:6 206:10 206:11 207:15 207:16 207:20 208:2 208:25 216:4 222:10 222:20 222:20 228:17 263:2 263:8

**six-month**(1) 143:16
**sixteen**(6) 166:1 175:9 175:12 175:14 220:4 220:8

**size**(3) 38:14 101:22 220:17
**skadden**(1) 94:16
**skeptic**(1) 155:24
**skeptical**(1) 179:7
**slam-dunk**(1) 116:4
**slide**(6) 108:25 108:25 109:2 143:6 148:22 160:16

**slides**(3) 91:1 205:18 205:21
**slightly**(1) 109:10
**slower**(1) 192:20
**slowly**(1) 248:5
**small**(12) 40:4 102:5 122:13 135:16 136:1 139:13 153:12 184:19 204:11 205:13 232:1 242:11

**smaller**(2) 104:21 264:5
**smart**(1) 204:5
**smith**(1) 9:47
**smoosh**(2) 121:13 121:20
**smoothly**(1) 90:3
**soaks**(3) 38:15 38:16
**social**(1) 95:12

**solely**(1) 44:14
**solid**(2) 73:11 202:6
**solution**(1) 254:1
**solvency**(66) 51:12 53:6 53:14 54:6 54:11 54:20 54:21 54:22 55:5 55:8 55:19 55:22 55:25 97:13 97:15 102:5 104:20 104:24 121:17 121:18 122:25 123:9 123:10 123:11 124:3 124:23 124:25 125:1 125:3 125:18 125:20 127:15 127:17 127:19 128:22 129:1 130:9 130:14 131:7 131:8 134:2 139:23 140:6 140:8 140:15 140:25 141:4 141:6 142:2 142:4 142:5 144:1 151:25 152:2 156:5 165:18 226:9 229:21 229:22 229:23 239:25 240:4 241:12 246:9 246:13 246:16

**solvency?''**(1) 52:16
**solvent**(29) 53:11 54:2 54:17 54:19 102:3 102:3 102:8 109:24 109:25 110:16 111:9 111:13 118:22 125:9 125:11 127:21 129:17 129:24 130:15 130:21 136:9 144:20 156:8 163:14 170:11 232:3 232:4 247:6 249:19

**some**(146) 13:16 13:16 15:1 16:23 18:4 18:5 19:22 21:14 23:7 27:13 27:21 27:22 35:15 39:13 41:22 41:22 43:3 43:22 49:13 53:15 53:20 53:25 54:22 57:7 59:13 63:6 63:7 65:21 70:22 75:8 81:15 82:1 90:14 90:15 91:21 91:21 96:19 96:20 99:6 100:12 100:25 100:25 103:14 106:15 107:5 108:1 109:10 111:15 112:5 112:7 114:4 114:7 120:21 125:22 128:4 130:5 130:11 130:14 130:16 133:3 133:14 134:17 135:8 136:4 136:7 139:13 143:10 143:15 146:18 148:2 150:21 151:9 152:3 152:6 152:11 152:20 152:23 153:8 154:7 159:5 162:14 164:19 165:5 166:2 166:16 167:1 167:9 167:10 170:1 170:2 170:3 171:10 174:20 175:7 181:21 183:13 183:20 184:6 185:7 184:4 186:6 190:6 193:3 197:4 205:18 207:4 207:25 214:25 215:6 222:24 224:2 224:14 230:4 230:12 231:14 231:15 232:21 232:23 232:23 233:5 234:24 235:7 236:10 236:11 237:18 238:4 240:16 240:16 240:22 243:6 246:21 247:21 249:9 249:11 249:22 250:2 252:23 255:5 261:23 265:1 265:13 279:7 281:24 282:1 284:19 285:6

**somebody**(1) 127:8
**someone**(3) 14:10 46:24 152:14
**something**(25) 25:15 52:18 78:17 78:17 108:14 108:15 113:10 124:20 136:23 158:10 167:22 178:19 194:8 195:14 195:20 212:15 220:25 238:9 238:23 243:9 260:2 277:9

**sometime**(4) 46:6 68:12 70:19 71:5
**sometimes**(12) 13:6 29:5 45:23 74:11 74:11 83:6 158:16 195:25 236:20 237:14 237:15 237:17

**somewhat**(13) 30:1 139:19 140:5 147:4 150:14 217:1 217:5 217:15 227:23 236:21 236:21 237:14 243:2

**somewhere**(6) 42:25 136:24 213:15 213:20 222:9 277:17

**soon**(1) 56:14
**sooner**(1) 222:13
**sophia**(1) 7:15
**sorry**(27) 11:14 33:7 37:13 37:13 40:25 49:5 56:4 63:18 66:2 66:5 75:13 76:8 79:8 82:25 86:24 139:8 176:18 180:15 182:25 203:9 205:4 217:23 218:5 249:19 253:11 256:25 275:10

**sort**(10) 24:1 27:22 92:7 98:15 134:23 147:3 190:22 203:6 209:10 237:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **sottile**(2) 3:35  5:39 | | **start**(23) 43:10 49:1 51:7 72:3 87:18 | | **step**(301) 14:17 24:1 24:1 24:17 25:3 25:5 | | **steps**(9) 20:10 21:25 101:19 108:17 110:3 |
| **sought**(2) 15:15 15:19 | | 89:22 101:17 103:12 104:23 107:17 109:1 | | 28:24 32:13 32:15 32:22 32:22 34:18 | | 123:25 143:17 143:24 147:9 |
| | | 114:18 134:24 155:8 164:8 164:19 182:7 | | 34:18 38:3 38:7 38:10 38:12 38:14 38:14 | | |
| **sound**(7) 1:47 109:22 199:16 242:6 262:25 | | 215:7 236:11 239:7 284:5 284:24 284:25 | | 38:15 38:17 39:5 46:3 46:13 46:15 46:15 | | **steven**(1) 92:25 |
| 269:2 286:18 | | | | 50:6 50:24 50:25 53:9 54:2 54:7 54:17 | | |
| | | **started**(12) 14:2 42:7 94:5 98:17 98:17 | | 57:5 65:8 65:9 65:13 65:13 65:16 65:17 | | **still**(21) 22:17 26:9 66:25 104:22 110:16 |
| **sounds**(4) 63:6 125:17 187:8 211:23 | | 108:3 113:21 150:11 194:2 217:23 236:12 | | 65:17 65:19 66:2 66:3 66:7 66:7 66:10 | | 112:4 112:9 125:11 128:4 138:11 138:20 |
| **source**(7) 155:13 155:14 155:18 164:10 | | 247:25 | | 66:11 66:12 66:13 66:17 66:20 66:21 | | 144:20 171:25 174:11 174:23 178:8 192:22 |
| 168:2 233:10 252:5 | | **starting**(3) 24:3 35:16 108:10 | | 66:21 66:22 66:22 77:18 77:21 78:1 78:5 | | 201:9 205:20 212:18 268:24 |
| | | **starts**(8) 27:13 117:1 117:15 117:16 164:9 | | 78:5 78:17 78:18 78:21 80:5 81:6 81:7 | | |
| **sources**(6) 94:24 106:12 126:20 126:23 | | 167:13 167:22 244:16 | | 81:19 81:19 81:21 82:2 82:18 82:23 86:6 | | **stock**(4) 95:8 151:17 277:4 277:7 |
| 144:16 155:10 | | | | 86:6 86:10 86:11 86:12 87:18 104:22 | | **stood**(4) 142:9 204:22 224:5 278:9 |
| | | **state**(15) 65:7 92:23 93:10 129:5 129:6 | | 105:1 105:1 106:24 106:24 108:19 108:19 | | **stop**(8) 121:24 122:20 156:3 156:5 156:13 |
| **south**(2) 1:28 4:16 | | 137:20 143:4 181:18 181:21 240:24 242:2 | | 110:17 110:10 110:10 110:12 110:12 110:14 | | 159:22 251:10 285:13 |
| **spaeder**(5) 3:32 5:37 17:14 17:15 17:20 | | 244:13 246:5 278:12 279:1 | | 110:17 110:23 110:23 111:4 111:4 113:3 | | |
| **speak**(17) 18:6 22:7 45:22 71:17 73:4 | | | | 114:10 114:11 114:12 114:12 118:9 120:2 | | **stops**(1) 27:13 |
| 73:8 73:9 73:20 91:5 193:2 244:3 244:9 | | **stated**(5) 228:9 237:2 265:12 275:20 | | 121:12 121:14 121:15 121:16 121:20 | | **stores**(1) 95:1 |
| 245:9 245:11 262:12 265:4 273:13 | | **statement**(15) 22:10 36:12 183:6 188:12 | | 121:25 121:25 122:4 122:8 122:15 122:17 | | **straight**(1) 222:1 |
| | | 206:15 247:12 267:2 268:1 268:11 269:12 | | 122:18 122:18 122:19 122:20 122:21 | | **strange**(1) 179:11 |
| **speaking**(6) 63:25 71:15 71:16 202:5 | | 276:2 276:8 276:11 276:14 277:19 | | 122:22 122:22 123:1 123:5 123:15 123:15 | | **strategies**(2) 201:23 202:10 |
| 243:11 243:23 | | | | 123:18 123:21 123:22 123:22 123:24 124:1 | | **strategy**(5) 95:9 202:1 202:6 202:14 |
| | | **statements**(1) 80:16 | | 124:1 124:1 124:2 124:8 124:8 124:9 | | **strauss**(3) 2:19 4:30 90:11 |
| **special**(27) 3:41 12:10 12:18 12:22 12:24 | | **states**(3) 1:1 1:19 285:18 | | 124:10 124:16 124:24 124:25 125:1 125:2 | | **street**(13) 1:11 1:42 2:15 2:35 3:6 3:28 |
| 13:2 13:10 13:13 13:19 13:24 14:9 14:14 14:18 | | **stating**(1) 246:7 | | 125:3 125:4 125:4 125:6 125:6 125:8 | | 3:36 4:8 4:24 4:30 4:42 5:7 5:13 |
| 44:18 44:21 44:24 45:17 46:2 46:20 48:3 | | **statistical**(1) 98:10 | | 125:8 125:9 125:11 125:14 125:17 125:19 | | |
| 50:14 72:10 94:20 104:18 126:15 144:8 | | **statistics**(2) 98:12 98:13 | | 125:19 125:20 126:1 126:5 126:6 126:7 | | **stress**(5) 158:8 158:9 205:15 205:16 240:5 |
| 152:10 278:16 | | **statute**(3) 111:12 124:15 183:9 | | 126:9 127:15 128:20 130:13 131:6 132:1 | | **stretched**(1) 42:19 |
| | | **statutes**(1) 184:5 | | 132:21 135:17 135:19 135:20 135:22 | | **strict**(1) 230:10 |
| **specific**(15) 16:15 61:11 61:18 75:7 99:16 | | **statutory**(34) 112:3 112:6 112:14 131:10 | | 136:12 137:22 137:23 138:2 139:18 139:2 | | **strictly**(1) 164:1 |
| 121:3 146:19 161:3 222:5 229:18 236:19 | | 131:12 132:11 132:12 134:9 134:10 135:2 | | 140:2 142:3 142:9 143:5 143:16 143:20 | | **strike**(16) 24:6 36:1 76:16 80:24 140:23 |
| 243:22 250:10 250:16 260:8 | | 136:6 136:7 136:10 138:4 138:8 138:10 | | 143:21 144:4 144:7 144:9 144:15 144:23 | | 199:16 207:14 212:24 214:12 221:6 229:16 |
| | | 138:15 139:16 141:16 142:8 146:15 146:2 | | 145:12 145:13 145:18 145:19 145:19 | | 233:21 245:14 259:2 270:18 272:5 |
| **specifically**(4) 97:9 187:11 265:21 274:21 | | 162:1 164:24 165:14 166:9 184:22 214:19 | | 145:20 150:14 153:4 153:5 153:6 153:8 | | |
| **specifics**(1) 161:3 | | 216:3 217:21 231:8 235:8 236:10 | | 155:25 156:2 156:4 156:4 156:8 156:10 | | **string**(2) 64:9 72:1 |
| **speculate**(1) 52:1 | | | | 162:6 162:6 162:7 162:11 162:12 162:12 | | **stromberg**(1) 7:21 |
| **speed**(2) 47:4 186:1 | | | | 163:13 163:13 163:14 163:14 163:14 | | **strong**(2) 53:18 241:3 |
| **spell**(3) 92:24 93:3 93:4 | | | | 163:22 163:22 164:3 164:3 164:9 164:15 | | **stronger**(1) 133:3 |
| **spend**(2) 200:7 207:4 | | | | 164:16 164:23 165:18 166:8 167:1 167:3 | | **strongly**(6) 42:6 65:16 118:19 118:20 |
| **spends**(1) 237:11 | | **stay**(3) 25:7 25:13 26:14 | | 167:9 167:10 167:15 169:20 169:20 170:1 | | 119:3 119:23 |
| **spent**(7) 102:18 146:18 151:10 195:11 | | **stayed**(3) 94:5 94:11 132:17 | | 170:11 170:12 170:14 170:15 170:15 | | |
| 224:2 256:16 261:23 | | **staying**(1) 153:24 | | 170:17 170:12 173:12 173:18 173:18 | | **structure**(2) 64:21 124:25 |
| | | **stays**(1) 255:4 | | 173:20 174:3 174:10 174:19 174:20 174:2 | | **structure."**(1) 65:3 |
| **split**(4) 32:5 34:24 211:7 211:8 | | **ste**(4) 1:35 4:30 4:36 5:13 | | 175:11 175:17 176:4 176:4 176:4 176:6 | | **struggling**(4) 69:10 69:18 70:9 189:7 |
| **spoke**(15) 22:2 24:23 62:21 62:24 63:2 | | **stearn**(1) 2:13 | | 177:15 177:16 177:16 177:20 178:1 178:2 | | **students**(1) 99:1 |
| 63:5 63:12 70:25 74:16 74:25 78:13 92:6 | | **steege**(1) 5:5 | | 178:6 178:14 178:21 185:2 193:9 193:10 | | **studied**(2) 151:6 248:3 |
| 147:14 201:20 202:3 | | | | 193:20 193:24 194:6 205:1 205:2 208:12 | | **stuff**(3) 52:9 89:4 167:6 |
| | | | | 208:15 208:16 208:18 208:19 209:24 210:5 | | **sub**(16) 112:7 112:11 112:12 112:14 |
| **spoken**(1) 63:21 | | | | 210:9 211:11 211:15 211:18 211:19 | | 112:18 112:20 133:18 134:1 139:23 141:20 |
| **spreads**(2) 281:3 281:12 | | | | 211:25 212:1 212:7 212:11 212:15 212:17 | | 141:21 169:24 177:2 179:3 212:6 234:16 |
| **spreadsheet**(9) 90:23 106:17 114:4 211:4 | | | | 212:18 212:25 213:7 213:8 213:13 213:14 | | |
| 223:3 251:15 256:5 259:17 262:14 | | | | 213:16 | | **sub-assumption**(1) 109:10 |
| | | | | | | **sub-claims**(2) 178:9 210:18 |
| **spreadsheets**(1) 255:22 | | | | | | **sub-level**(2) 177:13 179:2 |
| **spring**(1) 279:14 | | | | | | **sub-trade**(1) 212:4 |
| **square**(1) 2:14 | | | | | | **subissue**(1) 229:19 |
| **squarely**(1) 226:20 | | **step**(79) 214:1 214:3 214:25 215:3 215:18 | | | |
| **ssrn**(1) 95:12 | | 216:25 217:13 217:15 217:24 218:2 218:4 | | **subject**(3) 55:12 132:24 199:25 |
| **staff**(1) 283:13 | | 218:7 218:8 218:9 218:12 218:25 221:14 | | **subjective**(1) 241:9 |
| **stage**(2) 193:5 193:9 | | 225:20 226:3 226:4 226:8 226:9 226:9 | | **subjectivity**(1) 231:11 |
| **stake**(1) 101:22 | | 226:11 226:16 226:17 226:22 226:23 | | **submitted**(2) 100:10 106:11 |
| **stamina**(1) 222:16 | | 226:24 227:3 227:3 227:3 227:4 227:6 | | **subordinat**(2) 232:6 266:7 |
| **stamp**(1) 260:13 | | 227:7 227:9 227:13 228:17 229:7 231:1 | | **subordinated**(11) 15:2 86:24 86:25 86:25 |
| **stamped**(1) 227:12 | | 231:4 231:5 231:25 233:16 233:19 234:14 | | 87:2 87:6 178:24 267:21 268:5 268:13 |
| **stand**(9) 92:2 92:17 141:10 157:1 194:24 | | 234:14 240:18 240:18 242:18 242:19 | | 269:14 |
| 258:22 258:23 258:24 282:24 | | 242:21 243:1 250:23 252:14 253:2 253:6 | | **subordinating**(1) 111:15 |
| | | 253:7 253:9 263:19 263:20 265:18 266:9 | | **subordination**(21) 87:5 87:10 111:25 |
| **standalone**(1) 277:19 | | 266:9 268:17 270:9 273:6 273:10 274:6 | | 129:16 129:19 130:19 131:9 177:4 177:6 |
| **standard**(1) 185:2 | | 274:9 276:24 281:6 281:6 281:8 281:10 | | 177:10 231:4 231:21 252:24 265:17 265:18 |
| **standards**(5) 183:12 183:15 186:18 186:21 | | 281:11 281:13 281:17 283:9 | | 266:3 267:12 267:16 268:15 269:16 270:8 |
| 187:6 | | | | | |
| | | | | **step-integration**(2) 228:8 228:25 | | **subparagraph**(2) 278:13 278:14 |
| **standing**(4) 138:16 187:18 200:12 235:20 | | **step-one**(24) 100:23 102:1 104:15 125:18 | | **subs**(55) 108:18 109:25 110:16 110:18 |
| **stands**(2) 125:17 125:19 | | 135:15 135:20 249:16 249:19 252:3 253:1 | | 111:2 111:5 111:8 112:8 112:19 114:4 |
| **stanford**(2) 94:3 94:14 | | 263:17 266:4 266:5 267:16 268:4 268:5 | | 123:8 123:21 140:4 140:7 140:8 140:13 |
| **stanley**(7) 4:34 8:37 80:6 104:18 152:11 | | 268:13 268:13 268:16 269:13 269:14 | | 140:15 141:22 144:8 144:10 144:11 144:14 |
| 152:19 152:20 | | 269:17 270:6 273:12 | | 144:19 144:22 163:23 164:5 167:1 167:13 |
| | | | | 169:22 174:8 174:9 174:23 178:10 178:20 |
| **stargatt**(1) 4:4 | | **step-two**(11) 102:2 121:16 122:21 122:23 | | 178:22 212:3 212:5 213:9 229:22 230:1 |
| **stark**(1) 7:32 | | 124:4 124:5 252:24 267:17 267:19 269:19 | | 231:2 231:3 232:4 233:19 234:20 234:21 |
| **stars**(1) 11:14 | | 270:7 | | 234:23 234:25 240:18 246:13 249:18 252:4 |
| | | **stephen**(1) 2:33 | | 252:13 252:17 252:20 |
| | | **stepping**(1) 125:21 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| subsection(1) 278:11 | | suttonbrook(2) 6:27 6:27 | | teach(10) 96:6 97:5 97:6 97:7 97:8 97:17 97:21 97:25 98:15 98:25 | | than(68) 13:24 25:3 27:4 30:20 35:18 37:6 41:17 42:3 57:4 58:1 59:9 59:17 60:25 63:20 66:12 69:17 75:7 76:1 76:8 78:12 81:14 81:14 81:16 82:6 85:11 100:18 109:12 109:13 110:10 110:12 115:23 116:3 116:3 118:2 122:24 139:11 141:11 143:14 144:19 151:2 154:7 154:15 155:25 163:3 167:7 171:12 171:14 178:12 199:10 203:3 208:2 208:8 208:17 213:2 235:2 235:4 235:6 236:20 237:23 238:7 244:24 251:2 253:22 255:6 255:11 270:23 271:2 279:7 | |
| subsections(1) 239:9 | | swaps(1) 145:25 | | | | | |
| subsidiaries(12) 35:2 40:1 84:6 102:11 114:25 167:17 210:15 210:21 210:25 219:14 219:17 252:25 | | swing(3) 140:22 141:10 227:7 | | teacher(1) 12:10 | | | |
| | | swinging(3) 137:24 226:7 227:9 | | teaching(1) 94:5 | | | |
| | | sworn(3) 11:18 92:17 92:21 | | team(2) 195:23 199:17 | | | |
| | | swung(1) 142:10 | | technical(5) 99:13 99:25 100:19 133:8 | | | |
| subsidiary(10) 20:12 31:23 37:21 101:21 105:3 111:18 187:18 213:25 214:2 235:21 | | syndicated(2) 47:10 47:16 | | technically(1) 43:21 | | | |
| | | syndications(1) 47:17 | | technological(1) 128:8 | | | |
| | | system(4) 47:21 47:24 217:4 270:1 | | telephone(2) 75:19 75:21 | | | |
| substance(3) 109:14 178:21 179:1 | | systematically(1) 263:2 | | telephonic(5) 5:17 6:1 7:1 8:1 9:1 10:1 | | thank(36) 11:14 11:17 28:16 36:16 42:22 43:5 66:6 67:15 79:14 85:5 85:20 85:22 87:17 90:4 90:9 91:3 93:2 93:6 103:8 103:10 107:15 125:21 156:25 157:3 182:24 183:3 224:20 225:9 225:11 225:15 225:16 225:25 260:23 264:20 286:12 286:13 | |
| substantial(9) 90:21 95:25 99:2 116:20 129:10 167:9 271:15 281:24 282:2 | | tab(7) 105:21 117:5 143:6 165:25 185:17 223:3 273:18 | | tell(20) 12:2 25:15 30:3 58:8 69:15 74:9 89:8 90:1 167:23 185:24 187:2 187:12 189:20 198:8 202:18 237:4 241:24 259:23 260:6 262:19 | | | |
| substantially(5) 148:14 163:2 169:9 211:3 275:21 | | table(86) 22:12 85:12 106:16 114:19 114:22 115:12 115:25 117:4 117:7 117:14 117:14 117:15 117:15 117:16 131:18 132:3 134:14 139:21 143:8 146:22 148:5 149:2 154:9 157:7 160:2 161:25 162:8 162:15 165:25 178:3 178:7 189:14 190:10 190:13 190:25 191:16 206:4 206:4 206:9 206:9 206:13 206:13 206:15 206:19 206:19 206:20 206:21 206:22 206:23 207:1 207:1 207:2 207:3 207:3 207:7 207:9 207:25 209:4 209:14 212:22 218:25 219:19 220:1 221:7 221:10 221:16 222:18 222:19 222:25 224:5 224:8 224:8 224:10 224:11 224:12 225:19 243:9 244:4 248:19 254:17 254:19 256:12 257:4 257:5 272:5 272:5 | | telling(4) 115:18 140:11 146:4 222:12 | | | |
| | | | | tells(5) 139:18 139:22 139:25 142:3 146:2 | | that(301) 11:12 11:14 12:12 13:7 13:7 13:13 13:14 14:4 14:13 14:22 15:2 15:7 15:12 15:13 16:2 16:4 16:7 16:24 17:13 17:17 19:7 19:7 19:8 19:18 19:21 19:25 20:2 20:8 20:16 20:17 20:20 20:25 21:3 21:3 21:6 21:18 21:18 21:14 21:19 21:19 21:22 21:24 22:3 22:4 22:6 22:12 22:16 22:18 23:2 23:6 23:9 23:19 24:1 24:3 24:7 24:8 24:9 24:17 24:18 24:18 24:19 25:1 25:6 25:8 26:7 26:9 26:12 26:20 27:4 27:9 27:15 27:18 27:20 28:7 28:8 28:20 29:4 29:5 29:8 29:17 29:18 29:20 29:24 30:4 30:4 30:10 31:5 31:8 31:11 31:13 31:15 32:5 32:6 32:17 32:23 33:10 33:16 33:18 33:20 34:5 34:6 34:11 35:8 35:11 35:15 35:17 36:4 36:8 36:11 36:18 36:19 37:19 37:25 38:2 38:4 38:8 40:4 40:4 40:21 40:22 41:9 42:5 42:12 42:12 43:11 43:11 43:12 43:13 43:15 43:17 43:21 43:23 43:23 44:2 44:5 44:7 44:10 44:11 44:13 44:14 44:16 44:16 44:16 44:16 44:25 45:2 45:5 45:11 45:21 46:4 46:8 46:24 47:5 47:13 47:22 48:5 48:8 48:11 48:12 48:21 48:22 49:5 49:9 49:12 49:14 49:16 49:19 49:23 50:1 50:12 50:17 50:21 51:2 51:7 51:12 51:14 51:16 51:17 51:19 51:20 51:20 52:15 52:18 52:18 52:19 52:21 52:21 52:25 53:2 53:5 53:6 53:6 53:9 53:12 53:13 54:3 54:7 54:14 54:18 54:19 54:20 54:23 55:8 55:11 55:14 56:7 56:18 56:24 57:9 57:14 57:16 57:18 57:21 58:6 58:12 58:14 58:19 58:21 58:22 59:5 59:6 59:7 59:7 59:7 59:12 59:14 59:18 59:19 60:6 60:11 60:16 60:19 60:25 61:1 61:3 61:5 61:5 61:19 62:3 62:4 62:6 62:6 62:8 62:9 62:12 62:13 62:15 62:19 62:19 62:21 63:8 63:13 64:1 64:11 64:14 64:15 64:15 64:21 64:22 65:2 65:3 65:7 65:10 65:16 65:16 65:18 65:22 65:23 66:1 66:4 66:6 66:19 66:21 66:24 67:2 67:3 67:8 67:17 68:22 69:2 69:7 69:9 69:15 69:16 69:17 69:22 69:24 70:25 71:3 71:6 71:8 71:15 71:15 72:1 72:13 72:17 73:14 73:16 | |
| substantive(7) 29:14 29:17 30:5 179:5 179:6 186:14 186:16 | | | | ten(8) 12:23 47:24 48:1 73:7 85:16 231:24 232:1 237:12 | | | |
| substatutory(1) 235:23 | | | | ten-minute(1) 225:7 | | | |
| subsumed(5) 239:17 239:22 241:1 241:8 241:14 | | | | ten-percent(1) 232:17 | | | |
| | | | | tender(10) 102:1 102:24 110:24 111:1 123:1 143:22 273:12 275:2 277:3 279:25 | | | |
| succeed(2) 24:21 235:11 | | | | tentative(2) 195:3 195:6 | | | |
| succeeding(1) 231:20 | | tables(8) 106:14 206:21 206:22 248:20 250:1 250:3 271:10 283:21 | | tenure(1) 94:6 | | | |
| success(7) 105:8 191:2 209:9 217:6 229:18 242:22 270:2 | | | | term(35) 31:10 31:15 31:20 32:4 32:18 32:23 33:12 33:20 36:23 36:24 37:2 37:4 37:6 37:11 37:14 37:15 37:25 38:3 38:7 38:8 38:11 77:14 77:17 77:17 77:21 77:24 78:15 79:2 81:24 152:24 231:18 277:8 277:16 280:6 | | | |
| successful(1) 22:20 | | | | | | | |
| successfully(1) 153:19 | | tabs(1) 196:11 | | | | | |
| such(6) 32:6 89:17 89:19 97:9 97:11 | | take(47) 21:25 31:4 64:23 64:24 72:3 73:7 85:19 89:2 102:15 114:23 122:3 125:10 135:13 137:13 138:18 141:24 146:15 147:25 149:21 151:12 155:16 155:16 155:25 156:8 156:11 156:21 170:25 171:14 174:19 175:11 177:14 195:15 205:20 222:12 223:20 225:4 226:17 228:5 237:16 242:8 255:19 257:19 273:19 284:3 284:17 284:18 284:21 | | | | | |
| sue(2) 62:12 116:18 | | | | terminated(3) 74:23 76:14 192:15 | | | |
| sued(1) 273:6 | | | | terminology(1) 218:16 | | | |
| sufficient(4) 177:5 182:20 192:6 198:16 | | | | terms(21) 20:7 28:9 34:17 38:22 42:18 76:2 79:1 79:4 95:20 98:4 105:5 108:2 112:15 136:19 144:13 148:14 167:16 190:18 230:6 241:5 244:7 | | | |
| sufficiently(1) 248:16 | | | | | | | |
| suggest(1) 91:9 | | | | | | | |
| suggested(3) 73:20 82:5 172:13 | | | | terrible(1) 109:23 | | | |
| suggesting(2) 51:20 91:15 | | taken(6) 42:1 45:2 136:22 179:15 197:18 268:8 | | terribly(1) 58:9 | | | |
| suggestion(4) 25:23 260:12 282:3 286:5 | | | | test(20) 127:20 144:12 160:12 160:16 166:18 166:23 167:18 168:10 171:25 177:22 202:12 226:23 226:24 227:2 234:1 243:12 245:13 245:23 246:14 246:17 | | | |
| suggests(2) 30:4 170:9 | | | | | | | |
| suite(3) 3:28 3:37 4:17 | | | | | | | |
| summarize(3) 105:15 128:19 160:17 | | takes(3) 179:23 211:2 269:25 | | | | | |
| summary(2) 76:7 266:23 | | taking(4) 113:22 115:2 199:12 231:8 | | tested(3) 160:21 205:13 210:18 | | | |
| summer(3) 67:15 68:24 98:18 | | talk(20) 33:23 51:13 52:16 67:1 88:16 89:1 89:24 91:12 91:17 95:20 116:20 137:18 202:7 203:1 203:24 217:23 222:18 239:6 240:19 247:15 | | testified(21) 38:2 46:8 51:16 57:18 62:20 86:4 94:22 118:11 195:10 202:9 203:19 211:14 215:2 215:12 215:16 219:24 220:3 225:20 245:14 245:15 271:20 | | | |
| sunil(1) 191:20 | | | | | | | |
| superior(2) 215:8 216:10 | | | | | | | |
| supermarkets(1) 95:2 | | | | | | | |
| supplement(1) 26:20 | | | | testify(4) 102:25 118:6 189:3 238:17 | | | |
| supplied(1) 187:5 | | | | testifying(1) 147:21 | | | |
| support(24) 21:25 22:1 22:14 22:21 26:21 26:22 26:23 27:2 27:14 32:17 32:23 32:24 35:8 35:10 35:11 37:3 63:10 65:22 74:22 76:12 76:21 192:10 194:1 247:21 | | talked(24) 15:4 15:4 15:6 24:13 74:17 168:12 181:23 184:25 185:12 187:15 202:8 214:7 230:3 235:19 242:14 248:14 248:15 249:24 256:19 257:12 263:22 270:21 281:5 285:18 | | testimony(56) 24:7 24:9 25:8 31:16 33:21 35:13 36:1 36:5 38:4 39:13 43:13 43:17 43:21 44:7 55:2 58:5 60:17 60:25 61:1 69:16 76:16 76:17 77:7 80:24 81:1 82:3 86:16 88:10 89:21 91:10 91:19 103:4 103:9 142:13 147:13 161:9 188:12 191:6 192:10 192:12 193:19 200:21 216:12 216:13 216:17 245:2 248:9 250:1 253:18 253:20 269:20 272:16 273:4 273:7 282:20 282:23 | | | |
| supported(5) 20:20 20:21 22:17 22:22 59:9 | | | | | | | |
| supporting(1) 24:4 | | | | | | | |
| supportive(1) 27:8 | | | | | | | |
| suppose(9) 56:6 111:8 126:9 144:3 155:15 156:14 170:25 178:6 212:13 | | talking(29) 34:10 43:10 55:18 58:4 63:17 63:19 65:12 67:19 72:3 132:9 172:21 193:21 218:7 228:21 232:18 233:22 240:1 246:19 252:16 252:16 260:11 265:21 265:22 269:10 275:5 277:22 277:25 278:1 282:6 | | | | | |
| supposed(1) 160:17 | | | | tests(23) 98:10 98:10 124:7 157:21 157:21 158:2 158:8 158:9 160:17 161:3 161:4 162:22 166:22 171:3 171:15 204:20 205:9 239:22 240:20 241:1 241:13 246:9 246:19 | | | |
| supposedly(1) 75:15 | | | | | | | |
| sure(52) 12:4 13:4 15:8 54:20 87:6 87:7 92:22 104:10 106:12 119:7 122:17 129:23 130:24 131:19 132:8 139:3 143:4 149:24 150:6 156:22 159:18 159:23 163:1 177:7 181:6 181:23 186:9 188:13 190:3 190:15 192:3 192:7 195:7 196:5 201:21 210:10 213:5 220:11 221:17 226:21 228:1 228:21 230:2 232:17 236:15 242:14 243:23 247:2 248:11 259:16 262:21 264:18 | | talks(1) 91:20 | | | | | |
| | | tape(1) 251:19 | | texas(2) 93:21 94:3 | | | |
| | | taught(1) 98:23 | | text(3) 161:2 239:8 276:10 | | | |
| | | tax(32) 126:15 127:2 127:5 127:6 127:7 127:16 128:23 128:24 144:9 144:16 155:1 155:17 168:14 168:22 171:13 201:23 202:1 202:3 202:6 202:7 202:8 202:10 202:25 233:9 233:9 233:13 234:9 238:9 239:1 256:1 261:5 262:2 | | textbook(2) 96:12 96:14 | | | |
| | | | | textual(1) 238:24 | | | |
| surfaces(1) 283:22 | | | | | | | |
| surrounding(1) 96:16 | | | | | | | |
| survive(2) 130:6 130:7 | | | | | | | |
| suspect(2) 11:13 283:18 | | tax-value(1) 234:10 | | | | | |
| sustained(8) 25:10 40:24 74:4 82:14 84:1 87:14 258:16 258:19 | | taxations(1) 96:15 | | | | | |
| | | taylor(1) 4:5 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 73:16 73:19 73:20 74:2 74:6 74:8 74:9 74:14 74:16 74:18 74:20 75:3 75:5 75:5 75:6 75:14 75:17 76:9 76:10 76:11 76:17 76:19 77:1 77:2 77:4 77:6 77:6 77:7 77:11 77:15 77:21 78:1 78:4 78:13 78:21 79:4 79:6 79:7 79:8 79:9 79:11 79:12 79:23 80:9 80:10 80:21 80:21 80:22 80:24 80:25 81:7 81:12 81:13 81:15 82:3 82:5 82:7 82:13 82:17 82:19 82:25 83:10 83:11 83:13 83:19 83:22 83:22 84:12 84:20 85:2 85:4 85:13 85:17 86:4 86:10 86:11 86:12 86:15 86:20 86:23 87:2 87:9 87:10 87:21 87:21 88:4 88:6 88:6 88:11 88:14 88:18 88:20 88:22 88:23 89:2 89:13 89:16 89:17 89:25 90:1 90:15 90:21 90:22 90:23 91:1 91:2 91:16 91:23 92:7 92:8 93:16 94:1 94:4 94:7 94:21 95:16 95:20 95:23 96:1 96:4 96:14 96:25 97:11 97:14 98:3 98:19 98:25 99:7 99:9 99:17 99:20 99:22 99:24 99:24 100:20 100:22 101:1 101:5 101:16 102:10 102:11 102:13 102:15 103:6 103:17 103:23 104:8 104:8 105:4 105:5 105:15 105:16 105:24 106:1 106:6 106:6 106:9 106:11 106:13 106:17 106:22 106:23 107:2 107:3 107:4 107:5 107:18 108:3 108:7 108:10 108:16 108:21 108:24 109:4 109:10 109:20 109:21 110:6 110:13 110:13 110:15 110:15 110:16 110:22 110:25 110:25 111:8 111:13 111:1 111:16 111:17 111:21 111:23 112:3 112:6 112:8 112:22 112:23 112:25 113:7 113:8 113:9 113:11 113:14 113:20 113:25 114:1 114:8 114:14 114:19 114:21 115:5 115:7 115:11 115:22 116:1 116:10 116:12 116:2 117:2 117:12 118:6 118:9 118:11 118:24 118:25 119:5 119:8 119:14 120:3 120:4 120:8 120:9 120:10 120:23 121:4 121:5 121:12 121:15 121:23 122:7 122:10 122:1 122:15 122:18 123:7 123:14 123:14 123:15 123:17 123:20 123:21 124:22 124:23 124:24 125:1 125:2 125:4 125:16 125:17 125:23 126:13 126:15 126:23 127: 127:3 127:7 127:9 127:10 127:11 127:17 128:9 128:11 128:16 129:4 129:8 129:9 129:16 129:17 129:21 129:23 129:24 130: 130:3 130:6 130:6 130:7 130:15 130:18 130:20 130:20 130:25 131:4 131:15 131:2 132:16 132:18 132:24 133:3 133:8 133:9

**that**(301) 133:20 133:24 134:4 134:12 134:20 135:3 135:7 135:17 135:22 135:25 136:5 136:8 136:16 136:16 136:19 136:23 137:1 137:11 138:2 138:14 138:23 139:4 139:5 139:7 139:10 139:11 139:15 139:16 139:20 140:6 140:17 140:24 140:25 140:22 141:6 141:9 141:13 141:14 141:21 141:22 142:8 142:10 142:13 142:25 143:15 143:12 143:20 143:24 144:6 144:15 145:17 145:21 145:23 145:25 146:2 146:9 146:14 146:20 146:22 146:24 147:5 147:12 147:12 147:20 147:23 148:2 148:22 148:25 149:8 149:13 149:15 149:20 149:23 150:4 150:5 150:7 151:2 151:7 151:18 151:18 151:20 151:21 154:2 152:4 152:8 152:18 152:23 152:25 153:4 153:8 153:17 153:25 154:1 154:2 154:12 154:15 154:17 154:17 155:1 155:2 155:13 155:17 155:18 155:20 156:3 156:6 156:9 156:10 156:11 156:12 156:17 157:1 157:18 157:18 157:19 157:20 157:22 158:10 158:14 158:19 158:22 159:3 159:5 159:14 159:16 159:16 159:20 159:23 159:22 160:4 160:13 160:16 160:19 160:25 161: 161:6 161:7 161:10 161:16 162:1 162:2 162:3 162:4 162:5 162:9 162:13 162:22 163:4 163:4 163:9 163:10 163:21 163:23 164:2 164:17 164:19 165:3 165:20 166:10 166:13 166:22 166:24 167:6 167:8 168:7 167:11 167:12 167:23 167:24 168:1 168:7 169:1 169:2 169:8 169:19 169:21 170:9 170:9 170:10 170:12 170:13 170:16 170:1 170:18 170:19 170:20 170:24 170:24 171:1 171:3 171:8 171:10 172:1 172:4 172:4 172:10 172:13 172:13 172:15 172:22 173:2 173:16 173:17 173:21 173:22 173:23 173:24 174:4 174:13 174:21 174:2 174:22 175:4 175:4 175:6 175:12 175:14 175:16 176:4 176:6 176:8 176:9 176:24 177:1 177:7 177:14 177:17 177:18 177:20 178:8 178:19 179:4 179:5 179:12 179:15 179:22 180:4 181:12 181:24 182:2 182:14 183:9 183:9 183:14 184:6 185:4 185:5 185:5 185:17 185:25 186:3 186:10 187:5 187:8 187:13 187:14 187:15 187:19 187:20 187:25 188:6 188:7 188:20 188:22 188:2 189:3 189:13 189:14 190:24 191:4 191:6 191:19 192:5 192:7 192:10 192:12 192:15 192:17 192:21 193:4 193:9 193:11 193:11 193:13 193:13 193:14 193:15 193:17 193:20 193:20 193:21 193:25 194:5 194:1 194:19 194:22 194:22 194:24 195:2 195:7 195:8 195:10

**that**(301) 195:14 195:21 196:20 197:5 197:18 197:24 198:8 198:12 198:16 198:1 199:2 199:14 199:16 199:17 199:20 199:22 199:25 200:1 200:5 200:7 200:13 200:16 200:17 200:20 201:1 201:3 201:6 201:12 201:14 201:20 201:21 201:22 201:23 202:1 202:4 202:11 202:15 202:18 203:2 203:13 203:15 203:16 203:20 203:2 204:1 204:4 204:5 204:6 204:10 204:11 204:12 204:14 204:15 204:18 204:19 204:23 204:24 205:6 205:12 205:17 205:1 206:4 206:5 206:9 206:11 207:1 207:14 207:15 207:15 207:16 207:19 207:22 207:23 207:24 208:1 208:7 208:7 208:8 208:12 208:20 208:25 209:1 209:3 209:9 209:24 210:2 210:3 210:3 210:13 210:13 210:15 210:18 210:24 210:24 211:7 211:1 211:14 211:20 211:23 211:25 211:25 212:2 212:2 212:6 212:12 212:14 212:19 212:20 212:21 212:24 213:3 213:4 213:6 213:10 213:21 213:25 214:6 214:9 214:11 214:12 214:15 215:2 215:3 215:5 215:7 215:13 215:13 215:23 215:25 216:11 216:12 216:21 216:25 217:14 217:17 217:21 218:17 218:20 218:20 218:23 219:3 219:4 219:18 219:24 220:3 220:6 220:10 220:20 220:24 220:24 221:1 221:5 221:13 221:21 221:22 222:9 222:11 222:16 222:21 222:23 222:24 222:24 223:3 223:6 223:13 223:16 223:17 223:22 224:5 224:9 224:22 224:25 225:1 225:14 225:21 226:2 226:7 226:10 226:13 226:14 226:15 226:16 226:18 226:18 226:21 226:22 227:6 228:1 228:3 228:5 228:7 228:12 228:17 228:21 228:22 229:2 229:5 229:16 229:24 229:25 230:1 230:2 230:17 230:18 230:23 230:25 231:6 231:7 231:18 231:19 231:22 232:1 232:2 232:4 232:7 232:15 232:20 232:23 232:24 233:3 233:8 233:21 234:2 234:24 234:25 235:1 235:4 235:5 235:13 235:16 235:16 235:3 236:4 236:18 236:20 237:2 237:4 237:6 237:7 237:16 237:17 237:18 237:23 238:1 238:6 238:14 238:14 238:15 238:17 238:9 239:9 239:14 239:17 239:20 239:25 240:8 240:11 240:12 240:13 240:24 240:2 240:25 241:4 241:9 241:15 241:17 241:19 241:19 241:23 242:2 242:6 242:9 242:11 242:17 242:3 242:3 243:6 243:7 243:8 243:9 243:15 243:16 243:17 243:20 244:2 244:1 244:18 244:19 244:20 244:21 244:23 244:24 245:2

**that**(232) 245:14 245:14 245:15 245:21 246:4 246:5 246:5 246:20 246:22 247:1 247:4 247:5 247:7 247:7 247:8 247:9 247:12 247:16 247:20 248:6 248:7 248:9 248:15 248:19 249:5 249:10 249:14 249:25 250:1 250:2 250:4 251:13 252:2 252:10 252:13 252:15 252:20 252:23 253:18 253:22 254:1 254:6 254:7 254:9 254:13 254:15 254:16 254:22 254:23 255:8 255:11 255:17 255:25 256:10 256:14 256:19 256:20 256:21 257:3 257:7 257:8 257:12 257:16 257:23 258:4 258:8 258:23 259:2 259:8 259:9 259:11 259:11 259:13 259:14 259:14 259:17 260:2 261:2 261:2 261:5 262:2 262:3 262:4 262:11 262:11 262:19 262:22 262:23 262:25 262:25 263:18 263:19 263:22 264:10 264:22 265:1 265:17 265:18 266:8 266:8 266:13 266:17 266:24 267:7 268:4 268:8 268:10 268:12 268:12 268:14 268:14 268:16 269:12 269:13 269:15 269:15 269:16 269:17 269:19 270:5 270:5 270:6 270:7 270:9 270:10 270:11 270:18 270:24 271:10 271:11 271:13 271:19 271:20 271:22 271:23 272:1 272:5 272:6 272:12 272:15 272:16 272:23 273:3 273:3 273:8 273:17 273:19 273:20 274:1 274:5 274:9 274:11 274:12 274:14 274:16 274:22 275:1 275:2 275:3 275:4 275:7 275:16 275:25 276:1 276:2 276:7 276:10 276:15 276:15 277:3 277:6 277:9 277:10 277:20 278:4 278:9 278:10 278:15 278:18 278:24 278:24 279:1 279:3 280:3 280:10 280:16 280:19 280:22 280:25 280:25 281:4 281:9 281:18 281:20 281:20 282:7 282:23 283:5 283:8 283:11 283:12 283:13 283:15 283:17 283:18 283:19 283:20 283:21 283:22 283:24 283:25 284:8 284:12 284:17 284:19 284:22 284:22 285:3 285:4 285:5 285:8 285:8 285:12 285:15 285:21 285:22 285:24 286:2 286:6 286:17

**that's**(167) 25:16 30:6 34:13 34:14 34:14 36:5 42:10 45:1 46:5 46:17 48:6 48:9 49:11 51:4 55:12 56:9 56:20 57:4 58:25 58:25 65:20 66:5 67:2 67:9 70:20 70:21 71:7 76:18 78:3 78:7 79:13 82:19 84:10 86:22 87:15 87:22 88:11 89:19 90:7 91:18 102:19 163:17 164:6 165:25 166:4 168:9 171:18 172:21 174:5 174:5 174:16 174:17 175:21 175:21 177:6 177:10 177:21 178:5 181:6 181:13 181:16 182:10 183:6 183:21 185:3 186:7 186:13 186:15 186:19 191:10 192:14 194:11 194:20 195:25 197:15 198:7 200:2 201:25 201:25 202:24 203:18 209:12 209:16 209:23 210:1 210:6 211:10 212:9 214:3 216:24 217:3 217:9 217:16 218:10 218:19 220:23 220:7 227:15 227:19 227:22 228:5 228:16 228:24 229:4 229:7 229:9 229:10 229:15 229:20 230:5 230:22 230:25 230:25 232:19 233:18 233:20 234:1 234:11 235:6 235:9 235:12 236:17 236:17 239:16 239:19 240:10 242:14 242:16 242:22 244:3 244:5 244:5 245:25 246:10 247:12 251:18 253:9 254:8 256:20 260:12 260:13 262:8 262:13 264:22 265:3 265:6 265:22 266:4 266:16 267:1 267:6 268:9 268:19 270:2 272:10 273:5 275:6 277:1 278:11 279:14 279:19 282:10 282:16 285:21 286:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that's**(65) 52:25 96:8 96:21 97:8 103:1 103:19 104:24 106:7 108:19 109:25 110:1 110:4 111:6 111:11 111:18 113:1 115:10 115:17 115:18 115:22 116:15 117:4 119:2 121:2 121:19 123:9 124:17 127:24 132:3 132:5 133:15 134:3 134:25 135:17 136:1 136:3 136:21 137:6 137:21 138:19 139:11 140:19 141:8 141:25 143:2 144:12 144:23 146:11 146:21 146:25 147:24 148:11 149:14 150:14 150:14 151:3 152:19 153:1 153:11 154:5 154:16 155:4 155:8 155:21 156:16 | | **the**(301) 1:1 1:2 1:18 1:23 3:41 4:7 4:28 11:2 11:3 11:6 11:8 11:10 11:12 11:13 11:13 11:14 11:17 12:18 12:22 12:24 13:2 13:4 13:6 13:10 13:19 13:24 14:4 14:5 14:6 14:7 14:8 14:12 14:15 14:16 14:17 14:19 14:20 14:24 15:5 15:6 15:11 15:12 15:14 15:15 15:17 15:18 15:18 15:20 15:21 15:23 15:23 15:24 16:3 16:4 16:5 16:8 16:10 16:10 16:11 16:17 16:17 16:19 16:20 16:22 16:22 16:25 17:1 17:3 17:4 17:6 17:10 17:10 17:18 17:18 17:18 17:19 17:25 17:25 18:1 18:4 18:4 18:13 18:14 18:16 18:19 18:21 18:23 19:2 19:3 19:5 19:6 19:8 19:9 19:9 19:10 19:10 19:11 19:11 19:13 19:14 19:15 19:16 19:18 19:18 19:20 19:21 20:2 20:3 20:6 20:7 20:9 20:11 20:11 20:13 20:13 20:13 20:13 20:17 20:19 20:20 20:22 20:22 21:1 21:3 21:5 21:6 21:7 21:7 21:11 21:11 21:13 21:13 21:21 21:22 21:25 22:1 22:4 22:4 22:8 22:9 22:12 22:14 22:15 22:16 22:17 22:21 22:22 22:24 22:24 22:24 23:3 23:4 23:5 23:10 23:10 23:18 23:21 23:22 23:22 23:24 24:2 24:4 24:6 24:11 24:15 24:15 24:15 24:17 24:21 24:22 24:25 25:2 25:3 25:4 25:5 25:7 25:7 25:10 25:12 25:15 25:17 25:19 25:22 26:6 26:7 26:11 26:14 26:15 26:15 26:15 26:19 26:21 26:23 26:25 27:1 27:4 27:4 27:5 27:6 27:6 27:12 27:15 27:23 27:23 27:24 28:2 28:2 28:4 28:6 28:8 28:9 28:10 28:14 28:16 28:18 28:20 28:21 28:21 28:22 28:23 28:23 29:4 29:7 29:8 29:13 29:15 29:15 29:18 29:20 29:22 29:22 29:23 29:24 29:25 30:2 30:3 30:4 30:8 30:9 30:11 30:17 30:19 30:22 31:1 31:4 31:5 31:7 31:9 31:12 31:15 31:18 31:19 31:21 31:22 31:23 31:24 31:24 31:25 32:2 32:3 32:4 32:5 32:6 32:6 32:7 32:8 32:8 32:10 32:12 32:13 32:13 32:15 32:17 32:22 32:24 32:25 33:3 33:5 33:6 33:6 33:8 33:8 33:11 33:13 33:20 33:23 34:1 34:3 34:7 34:9 34:10 34:11 34:13 34:14 34:14 34:16 34:17 34:17 34:19 | **the**(301) 34:20 34:20 34:21 34:21 34:22 34:23 34:24 34:24 34:25 35:1 35:1 35:2 35:2 35:3 35:5 35:7 35:8 35:9 35:11 35:12 35:16 35:17 35:17 35:18 35:18 35:18 35:21 35:22 35:23 35:23 36:1 36:2 36:3 36:6 36:7 36:8 36:9 36:10 36:11 36:13 36:14 36:14 36:15 36:22 36:23 36:23 36:24 36:24 36:25 37:1 37:2 37:4 37:4 37:5 37:6 37:10 37:10 37:14 37:14 37:15 37:16 37:18 37:19 37:20 37:21 37:21 37:23 37:25 38:1 38:2 38:6 38:6 38:10 38:11 38:12 38:12 38:13 38:14 38:14 38:15 38:15 38:16 38:17 38:18 38:20 38:21 38:22 38:23 39:3 39:4 39:5 39:9 39:15 39:16 39:16 39:17 39:18 39:19 39:21 39:22 39:22 39:22 39:25 40:1 40:1 40:1 40:2 40:3 40:4 40:5 40:6 40:6 40:6 40:7 40:9 40:9 40:10 40:10 40:13 40:15 40:18 40:21 40:23 40:24 40:24 41:1 41:3 41:5 41:7 41:12 41:12 41:13 41:13 41:15 41:15 41:15 41:16 41:19 41:21 41:24 42:2 42:3 42:6 42:8 42:9 42:9 42:16 42:19 42:19 42:20 42:20 42:23 42:25 43:2 43:5 43:10 43:11 43:12 43:16 43:18 43:18 43:22 43:23 43:23 44:3 44:6 44:7 44:8 44:11 44:13 44:14 44:14 44:14 44:21 44:24 45:17 45:18 45:20 45:22 46:7 46:11 46:11 46:18 46:20 46:20 46:20 47:1 47:1 47:2 47:10 47:10 47:16 47:17 47:17 47:20 47:22 47:24 48:1 48:3 48:3 48:6 48:18 48:18 48:21 48:23 49:1 49:2 49:5 49:10 49:12 49:17 49:17 49:18 49:19 49:19 49:20 49:21 49:22 49:22 49:23 49:25 49:25 50:6 50:9 50:10 50:14 50:18 50:23 51:6 51:10 51:25 52:3 52:7 52:7 52:8 52:17 52:18 52:23 52:23 53:5 53:7 53:10 53:11 53:18 54:2 54:4 54:9 54:10 54:12 54:16 54:16 54:18 54:19 54:21 54:22 54:23 54:25 55:1 55:3 55:5 55:5 55:10 55:11 55:12 55:13 55:16 55:19 55:24 56:2 56:3 56:6 56:10 56:11 56:16 56:17 57:1 57:2 57:2 57:4 57:8 57:8 57:10 57:14 57:19 57:20 57:21 58:2 58:6 58:7 58:9 58:10 58:11 58:11 58:12 | **the**(301) 58:14 58:15 58:18 58:18 58:22 58:23 58:24 59:1 59:2 59:2 59:3 59:4 59:6 59:9 59:10 59:11 59:17 59:19 59:19 59:21 59:22 59:23 59:23 60:3 60:6 60:9 60:10 60:15 60:16 60:17 60:19 60:19 60:21 60:21 60:22 60:25 60:25 61:2 61:5 61:5 61:7 61:13 61:17 61:20 61:22 61:22 61:25 62:1 62:2 62:4 62:5 62:7 62:8 62:8 62:9 62:10 62:11 62:11 62:13 62:14 62:17 62:20 62:21 63:6 63:7 63:7 63:9 63:9 63:10 63:11 63:15 63:16 63:17 63:19 63:20 63:22 63:23 64:1 64:2 64:3 64:4 64:5 64:6 64:8 64:9 64:13 65:1 65:2 65:2 65:5 65:5 65:8 65:9 65:12 65:12 65:18 66:17 66:19 66:23 67:1 67:3 67:4 67:4 67:7 67:8 67:8 67:9 67:11 67:12 67:13 67:15 67:18 68:4 68:5 68:12 68:24 68:24 68:25 69:3 69:5 69:7 69:9 69:23 69:24 69:25 70:3 70:4 70:6 70:12 70:12 70:13 70:13 70:14 70:16 70:18 70:21 70:21 70:22 70:22 70:22 71:2 71:4 71:17 71:24 71:24 72:3 72:9 72:10 72:11 72:13 72:15 72:16 72:16 72:17 72:20 72:24 73:3 73:5 73:5 73:10 73:11 73:23 74:1 74:4 74:7 74:14 74:20 74:21 74:22 75:4 75:6 75:14 75:16 75:19 75:21 75:24 76:2 76:4 76:5 76:7 76:7 76:10 76:11 76:13 76:16 76:16 76:18 76:20 76:20 76:21 77:7 77:12 77:12 77:14 77:17 77:17 77:21 77:24 78:1 78:1 78:4 78:5 78:7 78:9 78:13 78:15 78:19 78:20 78:21 78:21 78:24 79:1 79:2 79:2 79:3 79:3 79:4 79:5 79:6 79:7 79:9 79:10 79:11 79:12 79:15 79:17 79:23 79:23 80:2 80:3 80:3 80:5 80:5 80:6 80:7 80:11 80:12 80:15 80:16 80:18 80:18 80:19 80:24 81:2 81:4 81:9 81:13 81:15 81:15 81:17 81:20 81:21 81:23 82:1 82:2 82:2 82:5 82:9 82:9 82:12 82:12 82:14 82:18 82:18 82:19 82:23 83:6 83:10 83:14 83:14 83:15 83:15 83:16 83:17 83:18 83:18 83:19 83:22 83:24 83:25 84:1 84:4 84:4 84:5 84:5 84:6 84:7 84:8 84:8 | **the**(301) 84:8 84:9 84:10 84:12 84:13 84:14 84:15 84:16 84:18 84:20 84:21 84:23 85:2 85:2 85:3 85:3 85:3 85:7 85:10 85:14 85:15 85:19 85:24 86:5 86:6 86:15 86:18 86:18 86:19 86:20 86:24 86:25 87:1 87:3 87:5 87:6 87:7 87:7 87:9 87:10 87:12 87:14 87:17 87:22 87:23 87:23 87:23 87:24 88:1 88:2 88:3 88:5 88:7 88:8 88:8 88:13 88:14 88:16 88:16 88:20 88:21 88:21 88:21 88:22 88:23 88:25 88:25 89:3 89:4 89:7 89:11 89:11 89:18 89:20 89:21 89:23 89:24 90:2 90:4 90:9 90:11 90:14 90:16 90:16 90:17 90:18 90:20 90:22 90:22 90:24 91:1 91:3 91:7 91:8 91:9 91:14 91:16 91:17 91:22 91:24 92:1 92:5 92:6 92:10 92:12 92:14 92:16 92:19 92:20 92:22 92:23 92:24 92:25 93:1 93:2 93:3 93:4 93:5 93:5 93:6 93:11 93:12 93:13 93:13 93:18 93:19 93:21 93:23 93:24 94:15 94:25 95:4 95:5 95:7 95:8 95:9 95:9 95:10 96:2 96:12 96:12 96:14 96:21 96:22 96:23 96:24 97:1 97:6 97:10 97:13 97:19 97:20 98:2 98:3 98:6 98:13 98:22 99:1 99:7 99:9 99:13 99:14 99:15 99:16 99:20 99:20 99:25 100:1 100:1 100:2 100:3 100:4 100:5 100:6 100:7 100:9 100:10 100:13 100:14 100:16 100:16 100:18 100:20 100:22 100:23 100:23 100:25 100:25 101:1 101:3 101:5 101:8 101:10 101:18 101:18 101:20 101:20 101:21 101:21 101:22 101:22 101:25 102:1 102:2 102:4 102:6 102:11 102:12 102:16 102:21 102:22 102:22 102:25 102:25 103:1 103:1 103:3 103:4 103:5 103:6 103:6 103:7 103:8 103:9 103:17 103:18 103:18 103:19 103:19 103:21 103:22 103:22 103:22 103:25 103:25 104:1 104:2 104:2 104:3 104:3 104:4 104:5 104:7 104:8 104:11 104:12 104:14 104:16 104:17 104:18 104:19 104:19 105:1 105:2 105:2 105:3 105:3 105:6 105:7 105:9 105:15 105:16 105:20 105:21 105:22 105:23 105:24 105:25 106:5 106:8 106:8 106:9 106:10 106:13 106:14 106:14 106:14 106:16 106:16 106:17 106:18 106:19 106:19 106:20 106:21 106:22 106:22 106:22 106:23 107:1 107:3 107:5 107:8 107:10 107:10 107:13 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| the(301) | 107:18 107:20 107:20 107:20 107:22 107:25 107:25 108:1 108:2 108:2 108:3 108:6 108:7 108:7 108:14 108:15 108:18 108:21 109:4 109:5 109:7 109:7 109:11 109:13 109:13 109:15 109:17 109:21 109:22 109:22 109:24 110:4 110:6 110:8 110:14 110:15 110:16 110:18 110:2 110:24 110:24 111:1 111:1 111:2 111:2 111:5 111:6 111:8 111:9 111:11 111:13 111:14 111:16 111:16 111:17 111:18 111:21 111:24 112:1 112:1 112:2 112:8 112:9 112:11 112:12 112:12 112:14 112:1 112:17 112:19 112:20 112:20 112:24 112:25 113:1 113:2 113:5 113:10 113:11 113:14 113:21 113:22 113:22 113:22 113:24 113:25 114:3 114:4 114:6 114:6 114:7 114:7 114:8 114:9 114:14 114:15 114:23 114:24 114:25 114:25 115:1 115:4 115:11 115:13 115:13 115:14 115:14 115:16 115:16 115:17 115:18 115:19 115:19 115:19 115:21 115:21 115:21 115:25 116:3 116:5 116:5 116:6 116:8 116:9 116:9 116:10 116:12 116:13 116:17 116:19 116:21 116:22 116:22 116:23 116:23 116:24 117:1 117:1 117:3 117:3 117:4 117:9 117:9 117:10 117:12 117:12 117:13 117:14 117:15 117:16 117:18 117:18 117:19 117:20 117:22 117:22 117:23 117:24 118:2 118:3 118:4 118:4 118:9 118:9 118:10 118:15 118:17 118:18 118:19 118:20 118:23 118:23 118:24 119:1 119:3 119:5 119:8 119:11 119:11 119:13 119:14 119:15 119:18 119:21 119:23 119:24 119:24 120:1 120:1 120:2 120:6 120:9 120:12 120:14 120:17 120:22 120:2 120:23 120:24 120:25 121:1 121:3 121:7 121:8 121:9 121:12 121:14 121:16 121:16 121:20 121:25 122:7 122:14 122:16 122:1 122:21 122:22 122:22 122:23 122:24 122:25 123:5 123:2 123:3 123:5 123:7 123:8 123:10 123:11 123:13 123:18 123:1 123:22 123:25 124:1 124:4 124:5 124:7 124:8 124:10 124:11 124:12 124:14 124:1 124:23 124:23 124:25 124:25 125:1 125:4 125:5 125:6 125:7 125:8 125:9 125:11 125:11 125:13 125:17 125:18 125:20 125:22 125:23 126:11 126:11 126:12 126:14 126:16 126:18 126:18 126:19 126:21 126:23 126:25 127:4 127:5 127:5 127:6 127:6 127:8 127:12 127:19 127:20 127:22 127:23 127:25 127:25 127:25 128: 128:8 128:9 128:9 128:10 128:11 128:13 128:13 128:17 129:4 129:5 129:5 129:6 | the(301) | 129:6 129:6 129:7 129:9 129:14 129:16 129:23 129:25 130:4 130:6 130:7 130:9 130:17 130:18 130:20 130:20 130:2 131:2 131:2 131:3 131:10 131:10 131:12 131:13 131:16 131:20 132:1 132:7 132:12 132:13 132:15 132:16 132:22 132:23 132:24 132:25 133:1 133:4 133:6 133:7 133:7 133:8 133:8 133:10 133:11 133:14 133:15 133:18 133:18 133:18 133:19 133:21 133:23 133:24 133:25 134:1 134:3 134:5 134:5 134:6 134:7 134:8 134:9 134:10 134:10 134:12 134:14 134:17 134:23 134:24 134:25 134:25 135:1 135:5 135:7 135:23 135:24 135:25 136:1 136:6 136:7 136:8 136:9 136:10 136:11 136:14 136:15 136:20 136:21 137:2 137:3 137:4 137:7 137:8 137:9 137:10 137:11 137:12 137:19 137:20 137:24 138:1 138:2 138:2 138:4 138:5 138:7 138:8 138:9 138:13 138:14 138:14 138:15 138:15 138:17 138:19 138:20 138:23 138:24 138:24 138:25 139:1 139:1 139:3 139:4 139:9 139:15 139:15 139:15 139:17 139:22 139:25 140:2 140:3 140:4 140:7 140:8 140:12 140:13 140:15 140:17 140:17 140:20 140:24 141:1 141:1 141:2 141:5 141:10 141:11 141:14 141:15 141:17 141:21 141:22 141:25 142:1 142:2 142:6 142:7 142:7 142:8 142:9 142:14 142:14 142:18 142:23 143:1 143:4 143:6 143:7 143:16 143:17 143:17 143:20 143:22 143:23 143:24 143:25 144:4 144:7 144:9 144:11 144:12 144:13 144:14 144:14 144:18 144:19 144:22 145:1 145:3 145:3 145:4 145:4 145:8 145:11 145:11 145:12 145:13 145:14 145:14 145:16 145:16 145:18 145:21 145:23 145:23 145:24 145:25 146:1 146:2 146:6 146:8 146:9 146:9 146:10 146:15 146:16 146:18 146:2 146:21 146:21 146:24 146:25 147:1 147:1 147:2 147:2 147:5 147:6 147:6 147:7 147:8 147:9 147:11 147:12 147:12 147:14 147:15 147:17 147:22 147:25 148:1 148:6 148:8 148:9 148:9 148:10 148:10 148:11 148:11 148:12 148:15 148:18 148:19 148:20 148:20 148:20 148:24 149:5 149:5 149:6 149:7 149:8 149:9 149:10 149:10 149:10 149:11 149:12 149:14 149:16 149:16 149:17 149:18 149:25 150:6 150:7 150:11 150:12 150:13 150:16 150:17 150:19 150:19 150:20 150:21 150:22 150:23 150:23 150:25 151: 151:8 | the(301) | 151:9 151:11 151:12 151:14 151:14 151:14 151:16 151:21 151:22 151:23 151:23 151:24 151:24 152:1 152:2 152:6 152:8 152:10 152:12 152:13 152:17 152:18 152:21 152:21 152:21 152:24 153: 153:2 153:3 153:5 153:6 153:8 153:10 153:14 153:14 153:21 153:25 154:1 154:3 154:5 154:5 154:6 154:11 154:14 154:19 154:21 154:22 154:22 154:23 154:23 154:25 154:25 155:1 155:4 155:9 155:10 155:14 155:15 155:16 155:18 155:21 155:21 155:24 155:24 155:25 156:1 156:6 156:7 156:7 156:11 156:13 156:16 156:17 156:20 156:23 157:1 157:7 157:10 157:11 157:14 157:17 157:18 157:23 158:4 158:5 158:5 158:7 158:7 158:9 158:9 158:12 158:14 158:15 158:15 158:21 158:22 158:23 159:1 159:3 159:5 159:9 159:12 159:13 159:14 159:14 159:16 159:19 159:20 159:24 159:25 159:25 160:6 160:9 160:12 160:15 160:16 160:17 160:19 160:19 160:20 160:21 160:22 160:24 160:24 161:1 161:1 161:1 161:3 161:4 161:8 161:9 161:12 161:14 161:16 161:18 161:18 161:19 161:22 161:23 161:24 161:25 162:1 162:7 162:8 162:10 162:10 162:13 162:16 162:17 162:18 162:19 162:21 162:22 162:24 163:3 163:5 163:6 163:7 163:9 163:10 163:11 163:12 163:15 163:22 163:23 163:25 163:25 164: 164:4 164:5 164:5 164:6 164:8 164:10 164:13 164:14 164:15 164:16 164:18 164:20 164:25 165:6 165:8 165:14 165:15 165:16 165:16 165:18 165:18 165:20 165:20 165:21 165:23 165:25 166:1 166:3 166:6 166:6 166:13 166:15 166:18 166:20 166:23 166:24 166:24 167:1 167:3 167:5 167:8 167:11 167:12 167:13 167:14 167:21 167:16 167:17 167:18 167:18 167:21 167:24 168:4 168:5 168:9 168:13 168:20 168:20 169:1 169:2 169:4 169:5 169:10 169:11 169:12 169:12 169:13 169:14 169:22 169:23 169:24 170:1 170:4 170:5 170:9 170:9 170:10 170:10 170:12 170:13 170:13 170:16 170:17 170:18 170:25 171:1 171:2 171:3 171:5 171:5 171:9 171:11 171:12 171:12 171:13 171:14 171:14 171:15 171:16 171:16 171:17 171:19 171:20 171:20 171:21 172:1 172:2 172:3 172:5 172:5 172:8 172:10 172:10 172:15 173:4 173:5 173:5 173:6 173:9 173:9 173:10 173:11 173:13 173:13 173:14 173:19 173:22 173:25 174:1 174:1 174:5 174:6 174:7 | the(301) | 174:8 174:9 174:9 174:10 174:14 174:15 174:15 174:23 174:24 175:1 175:1 175:1 175:8 175:9 175:11 175:13 175:19 175:21 175:23 175:25 176:1 176:3 176:8 176:9 176:10 176:11 176:14 176:15 176:15 176:16 176:19 176:22 177:2 177:2 177:4 177:7 177:12 177:13 177:13 177:14 177:15 177:15 177:16 177:17 177:19 177:23 177:25 178:2 178:2 178:3 178:5 178:6 178:7 178:8 178:10 178:10 178:11 178:14 178:16 178:17 178:17 178:19 178:20 178:22 178:25 179:2 179:3 179:5 179:8 179:12 179:18 179:22 179:22 180:2 180:4 180:8 180:9 180:10 180:11 180:19 180:20 180:21 180:22 181:4 181:7 181:7 181:15 181:17 181:18 181:21 181:23 181:25 181:25 182:2 182:3 182:14 182:14 182:15 182:21 182:22 182:25 183:1 183:2 183:3 183:9 183:9 183:11 183:12 183:12 183:16 183:19 183:23 184:3 184:6 184:9 184:12 184:18 184:21 184:22 184:24 185:2 185:3 185:5 185:11 185:12 185:13 185:14 185:14 185:14 185:17 185:20 185:25 186:4 186:5 186:8 186:11 186:13 186:13 186:19 186:20 187:5 187:6 187:10 187:10 187:14 187:14 187:17 187:18 187:18 187:19 187:20 187:23 187:24 188:3 188:6 188:7 188:8 188:9 188:10 188:13 188:14 188:16 188:17 188:18 188:19 188:23 189:4 189:7 189:8 189:10 189:13 189:17 189:20 190:6 190:13 190:13 190:14 190:16 190:18 190:19 190:20 190:21 190:22 190:22 190:25 191:2 191:3 191:11 191:18 191:19 191:24 191:25 192:1 192:1 192:8 192:9 192:17 192:18 192:19 192:21 192:22 192:24 192:24 192:25 193:1 193:4 193:5 193:5 193:8 193:8 193:9 193:9 193:14 193:14 193:15 193:15 193:17 193:20 193:20 194:3 194:6 194:7 194:9 194:12 194:14 194:14 194:17 194:18 194:19 194:23 195:1 195:4 195:11 195:14 195:20 196:3 196:4 196:11 196:11 196:12 196:13 196:15 196:16 196:21 196:24 197:3 197:5 197:9 197:12 197:13 197:18 197:18 197:20 197:20 197:24 197:25 198:13 198:14 198:14 198:17 198:20 198:20 198:23 198:25 199:1 199:8 199:9 199:12 199:13 199:17 199:19 199:21 199:23 199:25 199:25 199:25 200:2 200:3 200:3 200:4 200:7 200:8 200:9 200:10 200:11 200:14 200:17 200:18 200:24 200:25 201:4 201:5 201:10 201:11 201:17 201:18 201:20 201:22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 201:23 201:24 201:25 202:10 202:11 202:12 202:21 202:25 203:1 203:4 203:4 203:5 203:11 203:11 203:12 203:16 203:16 203:20 203:22 203:24 204:4 204:6 204:9 204:11 204:20 204:21 204:21 204:2 204:22 204:25 205:1 205:2 205:6 205:6 205:9 205:10 205:12 205:15 205:17 205:17 205:21 205:22 205:24 206:4 206:4 206:6 206:6 206:9 206:10 206:11 206:15 206:24 206:25 206:25 207:2 207:5 207:5 207:9 207:9 207:10 207:13 207:16 207:16 207:1 207:19 207:22 207:22 207:24 208:1 208:2 208:10 208:10 208:12 208:15 208:15 208:17 208:18 208:18 208:20 208:21 208:22 208:24 208:25 209:1 209:2 209:2 209:3 209:7 209:7 209:13 209:14 209:18 209:21 210:2 210:2 210:3 210:4 210:4 210:5 210:8 210:9 210:12 210:13 210:15 210:17 210:18 210:20 210:21 210:23 210:23 210:24 211:4 211:4 211:6 211:8 211:8 211:11 211:10 211:10 211:11 211:14 211:16 211:18 211:19 211:20 211:21 211:21 211:23 212:1 212:2 212:3 212:4 212:5 212:5 212:6 212:6 212:10 212:13 212:14 212:14 212:16 212:17 212:18 212:20 212:22 212:23 212:25 213:1 213:1 213:1 213:6 213:7 213:8 213:9 213:9 213:13 213:16 213:17 213:23 213:24 213:25 214:2 214:4 214:6 214:9 214:15 214:15 214:19 214:20 214:21 214:22 214:23 215:2 215:3 215:5 215:8 215:11 215:11 215:14 215:14 215:20 215:20 215:23 215:24 215:24 215:25 216:1 216:1 216:18 216:21 216:25 217:4 217:9 217:10 217:10 217:11 217:11 217:17 217:17 217:18 217:18 217:19 217:24 218:8 218:9 218:11 218:16 218:21 218:25 218:2 219:6 219:7 219:8 219:9 219:13 219:14 219:15 219:16 219:18 219:24 220:3 220:3 220:7 220:9 220:11 220:11 220:13 220:17 220:18 220:20 220:21 220:22 220:24 221: 221:2 221:5 221:8 221:10 221:11 221:12 221:12 221:13 221:14 221:16 221:17 221:21 221:21 222:2 222:5 222:8 222:10 222:11 222:15 222:19 222:19 222:20 222:20 222:24 223:3 223:6 223:13 223:17 223:23 224:5 224:6 224:8 224:9 224:9 224:11 224:13 224:14 224:16 224:16 224:19 224:20 224:23 224:24 225:3 225:7 225:12 225:12 225:13 225:15 225:19 225:20 226:12 226:15 226:19 226:22 226:22 227:1 227:3 227:6 227:10 227:11 227:11 227:13 227:16 227:20 227:22 | | **the**(301) 228:1 228:3 228:5 228:7 228:7 228:9 228:13 228:18 228:18 228:19 228:2 228:21 228:22 228:25 229:5 229:6 229:7 229:7 229:9 229:9 229:13 229:14 229:16 229:17 229:22 229:24 229:25 229:25 230: 230:6 230:7 230:14 230:22 230:23 230:24 231:1 231:8 231:8 231:9 231:11 231:17 231:19 231:23 232:2 232:4 232:6 232:10 232:12 232:12 232:13 232:17 232:18 233: 233:5 233:7 233:8 233:10 233:10 233:11 233:15 233:16 233:17 233:19 233:22 233:22 233:23 233:23 233:24 234:2 234:2 234:2 234:3 234:5 234:5 234:6 234:8 234:9 234:9 234:12 234:13 234:13 234:13 234:16 234:16 234:17 234:20 234:20 234:21 234:23 234:23 234:24 234:25 235: 235:4 235:4 235:5 235:8 235:13 235:16 235:19 235:20 235:20 235:21 235:21 235:23 235:23 236:1 236:5 236:7 236:9 236:9 236:12 236:14 236:15 236:16 236:16 237:1 237:1 237:3 237:4 237:8 237:9 237:17 237:19 237:21 237:24 238:1 238:2 238:9 238:15 238:15 238:17 238:18 238:22 238:23 239:2 239:5 239:6 239:7 239:8 239:8 239:8 239:14 239:19 239:21 239:21 239:22 240:2 240:20 240:24 240:24 241:2 241:4 241:6 241:10 241:10 241:14 241:16 241:18 241:18 241:20 241:21 241:21 242: 242:9 242:12 242:14 242:17 242:24 242:25 243:2 243:6 243:9 243:11 243:12 243:12 243:13 243:19 243:25 244:1 244:2 244:5 244:6 244:14 244:18 244:19 244:20 245:8 245:12 245:15 245:18 245:19 245:20 245:20 245:22 245:23 245:25 246:2 246:2 246:6 246:11 246:13 246:14 246:17 246:1 246:21 246:22 246:24 247:1 247:3 247:3 247:4 247:7 247:9 247:10 247:11 247:16 247:21 247:23 248:1 248:3 248:7 248:9 248:12 248:13 248:13 248:14 248:14 248:16 248:17 248:18 248:18 249:8 249:9 249:9 249:10 249:11 249:11 249:12 249:17 249:14 249:16 249:18 249:18 249:20 249:22 249:24 249:24 250:3 250:4 250:6 250:9 250:11 250:15 250:20 250:23 251:1 251:18 251:19 252:1 252:2 252:3 252:4 252:4 252:6 252:11 252:13 252:17 253:6 252:20 252:21 252:25 253:1 253:3 253:6 253:8 253:25 253:25 254:1 254:2 254:5 254:12 254:13 254:13 254:17 254:19 254:20 254:22 254:22 254:23 255:1 255:2 255:2 255:10 255:11 255:15 255:20 255:2 255:24 255:25 256:1 | | **the**(301) 256:1 256:2 256:2 256:2 256:3 256:3 256:5 256:6 256:4 256:4 256:6 256:6 256:9 256:11 256:11 256:14 256:15 256:15 256:16 256:17 256:18 256:18 256:18 256:21 257:1 257:1 257:4 257:8 257:8 257:11 257:12 257:12 257:16 257:18 257:21 257:23 258:1 258:3 258:5 258:6 258:8 258:13 258:16 258:19 258:25 259:2 259:3 259:4 259:6 259:6 259:7 259:8 259:12 259:13 259:13 259:14 259:15 259:16 259:18 259:18 259:22 260:1 260:4 260:8 260:10 260:16 260:20 260:22 261:1 261:2 261:2 261:3 261:4 261:4 261:4 261:7 261:9 261:10 261:11 261:11 261:12 261:12 261:14 261:16 261:19 261:19 261:22 261:24 261:24 262:1 262:1 262:3 262:5 262:6 262:6 262:6 262:11 262:14 262:15 262:16 262:17 262:17 262:20 262:23 263:1 263:3 263:6 263:8 263:11 263:14 263:16 263:16 263:16 263:17 263:17 263:18 263:19 263:24 263:25 263:25 263:25 264:1 264:5 264:8 264:10 264:11 264:12 264:13 264:18 264:23 264:24 264:25 264:25 265:1 265:2 265:4 265:5 265:5 265:5 265:9 265:12 265:13 265:13 265:14 265:14 265:16 265:21 265:21 266:2 266:3 266:5 266:10 266:10 266:10 266:12 266:14 266:16 266:17 266:20 266:21 266:24 266:25 266:25 267:1 267:2 267:5 267:6 267:7 267:9 267:11 267:11 267:17 267:12 267:15 267:16 267:18 267:23 267:25 268:1 268:5 268:6 268:7 268:7 268:11 268:11 268:12 268:13 268:16 268:17 268:17 268:21 269:3 269:5 269:10 269:11 269:11 269:12 269:13 269:14 269:17 269:18 269:18 269:24 269:25 270:1 270:4 270:6 270:7 270:7 270:8 270:9 270:11 270:13 270:19 270:21 270:25 270:25 271:1 271:2 271:2 271:3 271:5 271:5 271:10 271:10 271:11 271:12 271:12 271:13 271:14 271:21 271:22 272:1 272:2 272:7 272:9 272:13 272:15 272:16 272:16 272:18 272:18 272:19 272:23 273:3 273:1 273:10 273:11 273:11 273:12 273:12 273:13 273:17 273:17 273:17 274:3 274:4 274:4 274:11 274:12 274:14 274:17 274:1 274:19 274:22 274:23 275:1 275:2 275:3 275:5 275:8 275:11 275:19 275:21 275:22 275:23 276:5 276:6 276:9 276:9 276:9 276:21 276:22 277:2 277:3 277:3 277:3 277:6 277:7 277:7 277:7 277:8 277:11 277:11 277:14 277:15 277:15 | | **their**(45) 14:25 19:9 22:14 22:18 26:22 36:17 42:7 50:17 55:21 68:5 82:24 92:7 94:17 95:3 95:5 110:5 112:13 115:16 130:11 134:9 140:9 144:20 152:7 163:18 164:1 169:4 169:6 185:11 185:13 188:3 189:22 190:20 190:21 199:18 201:14 202:8 211:1 211:16 215:4 240:3 274:18 274:24 274:25 276:11 278:21 |
| | | | | | | **them**(88) 15:4 21:15 22:2 22:3 22:3 22:6 30:20 30:23 31:4 35:20 36:17 53:19 59:1 59:25 61:12 61:14 61:16 61:18 61:24 62:3 62:16 63:7 63:17 63:25 71:22 74:12 89:10 105:17 108:12 108:13 112:3 114:23 118:6 118:7 118:7 120:3 130:23 133:9 143:11 146:14 147:1 148:1 150:13 150:18 152:17 158:24 166:25 169:4 169:5 169:11 179:3 179:13 180:8 183:13 186:4 186:6 186:6 186:24 186:25 187:1 187:4 187:9 187:13 189:19 189:19 191:1 192:9 193:11 202:11 206:2 208:3 211:5 224:17 230:4 231:16 240:17 240:19 241:6 241:13 241:23 245:9 245:11 246:2 254:14 255:16 257:2 264:16 266:7 |
| | | | | | | **themselves**(5) 37:16 130:10 159:25 160:12 227:20 |
| | | | | | | **then**(178) 12:5 14:5 14:8 19:11 19:14 19:22 26:12 26:22 28:10 29:6 34:22 34:24 35:1 35:16 37:9 48:11 52:16 58:11 67:7 67:12 71:23 76:16 88:8 94:15 94:16 94:18 94:19 94:21 95:4 95:6 100:3 100:8 100:13 100:19 103:9 103:14 104:20 104:23 105:6 108:8 108:17 109:6 109:17 110:19 111:2 112:7 112:17 113:8 115:1 115:13 115:15 116:6 116:24 117:1 117:10 119:21 120:1 120:10 121:9 122:3 123:3 123:7 123:14 124:7 125:3 125:10 125:13 126:1 126:8 129:8 130:1 131:20 134:23 136:14 137:7 138:19 139:13 139:17 139:21 140:7 141:5 142:5 143:19 144:3 144:4 145:11 146:14 146:24 150:23 152:9 152:10 154:11 154:24 155:9 156:3 156:5 157:11 157:22 160:2 162:2 162:8 162:9 164:3 164:5 164:13 165:17 167:22 168:2 168:7 169:17 170:7 173:11 173:21 173:24 174:3 174:8 175:4 175:13 177:13 178:22 179:8 186:13 189:17 190:9 192:17 193:8 193:15 195:6 195:7 200:5 201:9 206:13 206:21 207:24 208:6 212:5 213:9 213:12 213:17 214:7 215:10 215:19 222:15 226:23 228:18 230:18 231:8 234:19 236:13 242:19 244:17 246:14 247:6 247:15 248:21 249:4 249:21 249:25 252:5 252:13 255:9 255:17 258:1 263:9 266:6 266:20 267:13 267:19 268:23 269:24 270:4 270:15 279:8 284:16 284:20 284:22 285:6 286:7 |
| | | | | | | **theory**(2) 154:2 178:8 |
| | | | | **the**(111) 277:18 277:19 278:1 278:3 278:4 278:7 278:7 278:16 278:22 278:24 279:4 279:6 279:9 279:15 279:17 279:19 279:23 279:25 280:4 280:5 280:8 280:12 280:13 280:14 280:15 280:16 280:16 280:23 280:24 280:25 280:25 281:2 281:3 281:5 281:6 281:7 281:7 281:8 281:11 281:13 281:14 281:15 281:15 281:16 281:17 281:19 281:23 281:25 282:5 282:6 282:7 282:7 282:13 282:14 282:17 282:19 282:21 282:22 282:23 282:24 283:3 283:3 283:4 283:8 283:11 283:11 283:12 283:17 283:21 283:22 283:22 283:23 283:24 283:24 283:25 284:1 284:2 284:5 284:10 284:14 284:24 285:2 284:24 285:5 285:5 285:8 285:8 285:9 285:10 285:10 285:11 285:11 285:11 285:12 285:12 285:16 285:18 285:18 285:20 285:24 285:25 286:1 286:4 286:6 286:9 286:10 286:12 286:17 286:18 286:18 286:19 | | | |

| Word | Page:Line |
|---|---|

**there**(227) 13:6 14:10 15:14 15:17 17:10 18:19 18:22 19:1 19:2 19:3 19:4 19:5 19:5 19:12 19:12 19:12 20:15 21:12 21:17 22:23 27:5 27:13 27:21 28:22 28:22 28:23 28:23 28:24 28:25 29:13 29:15 30:5 30:8 31:3 31:10 32:1 32:3 33:4 33:12 33:24 33:25 34:2 35:14 35:23 36:1 37:17 37:22 38:8 38:10 41:8 42:11 42:14 42:19 48:10 48:21 49:2 57:24 60:22 61:11 63:17 64:7 66:25 74:6 75:1 76:25 77:9 78:16 78:23 79:15 80:9 80:11 80:13 81:18 83:13 86:5 86:9 86:10 88:10 88:11 91:1 94:5 94:11 97:22 100:24 101:19 102:15 102:17 103:3 105:22 106:12 106:18 107:10 109:10 112:7 112:11 112:22 113:9 120:4 121:24 122:10 123:20 123:21 124:9 124:14 126:4 127:17 129:8 129:11 129:18 129:18 130:5 130:14 130:17 131:9 131:21 132:17 133:4 133:19 134:4 134:13 135:1 135:22 136:17 140:14 140:14 141:20 143:15 143:17 145:7 145:9 145:10 145:11 146:1 151:1 151:15 152:3 152:6 152:23 153:16 153:20 158:15 158:16 159:22 160:18 166:16 167:12 168:17 168:21 172:13 172:17 174:4 174:5 174:20 174:23 174:25 175:1 177:11 181:21 183:14 184:4 185:6 186:15 188:2 191:20 191:20 191:21 191:22 192:1 192:22 198:15 200:6 200:12 200:16 201:11 201:13 204:15 204:17 208:16 209:22 210:17 212:10 214:7 216:8 218:17 218:25 220:25 222:23 224:22 225:23 226:22 227:2 228:13 228:15 230:2 231:10 231:12 235:3 235:5 237:11 238:4 238:8 238:12 241:8 243:2 246:1 246:22 251:1 252:9 253:14 255:21 262:25 263:11 269:6 273:9 273:13 277:17 278:15 279:11 279:13 282:1 284:6

**there'll**(3) 284:19 285:6 285:7
**there's**(44) 22:11 22:12 35:13 36:3 36:4 36:8 37:24 39:13 40:4 51:25 64:9 77:4 77:5 80:4 80:4 82:22 164:13 165:9 166:2 166:13 167:1 167:8 170:15 171:25 174:4 174:25 175:17 178:9 186:13 196:8 201:12 217:20 220:17 220:21 221:18 221:18 226:2 226:3 227:13 244:1 266:21 269:21 270:5 273:18
**thereafter**(1) 26:23
**therefore**(23) 24:2 97:5 115:19 122:20 124:2 126:17 127:13 127:16 128:14 129:1 132:14 132:19 132:23 134:2 140:22 153:22 163:10 169:19 178:25 216:3 244:2 247:1 250:2
**there's**(47) 52:20 101:20 109:20 114:2 114:3 118:21 119:17 121:23 126:22 126:22 127:10 130:4 132:15 133:3 135:8 135:19 135:19 135:20 136:3 138:6 138:10 138:11 138:19 139:4 139:13 139:14 139:16 140:18 143:10 143:16 143:24 152:22 152:11 152:23 153:5 153:8 153:16 153:18 153:20 153:21 153:25 154:1 154:2 154:7 156:2 156:9 235:20
**these**(71) 18:20 24:9 29:2 39:13 40:22 42:1 43:24 57:9 59:18 64:17 70:4 91:2 91:4 91:13 95:19 109:4 111:21 113:5 113:18 114:4 120:24 121:7 126:20 126:23 127:1 127:11 128:7 138:5 141:7 141:9 141:20 144:16 145:15 147:13 147:20 150:16 152:9 155:9 155:17 158:16 158:17 160:9 161:11 171:15 180:7 185:21 186:3 186:23 189:21 199:4 200:8 202:13 205:5 229:1 229:3 229:12 229:25 230:3 232:8 232:14 232:21 233:7 240:25 241:23 243:17 254:16 257:11 259:12 260:10 264:15 267:20

**they**(205) 14:25 15:1 15:2 15:2 15:8 15:9 17:17 18:2 18:5 19:21 19:23 21:6 21:7 21:8 21:13 22:22 29:6 31:24 32:16 34:6 34:21 34:23 35:21 36:18 36:19 37:6 37:8 37:9 37:10 37:13 37:14 37:15 37:15 40:20 40:21 41:16 42:6 42:18 42:20 42:25 43:2 47:16 48:16 48:22 51:11 51:13 52:5 52:1 52:17 53:22 53:24 54:4 54:12 54:19 55:2 54:4 56:11 56:14 57:18 58:5 58:25 58:25 60:14 60:16 62:6 62:17 62:20 66:1 67:24 69:13 69:15 71:20 74:10 75:11 76:19 77:1 77:24 80:20 80:21 80:22 81:22 84:17 84:18 84:18 84:23 85:4 85:13 86:15 88:10 89:16 89:19 95:4 95:5 98:23 99:11 99:25 103:6 105:2 105:2 105:3 106:20 109:6 109:11 110:5 110:22 111:2 111:3 112:10 112:10 115:15 116:21 117:19 122:19 122:24 125:1 125:3 125:9 125:10 127:8 128:2 128:3 128:4 128:4 130:8 130:8 130:9 130:10 130:12 130:13 130:15 131:1 131:3 131:4 131:14 132:14 133:21 133:22 135:16 138:5 140:9 143:9 143:21 145:3 145:4 145:5 145:6 145:7 151:2 152:9 152:16 152:21 152:22 156:1 165:5 165:15 169:3 171:8 174:11 178:4 185:11 185:13 186:11 188:3 189:10 199:25 201:6 201:7 201:10 202:7 202:14 204:21 211:2 212:15 212:16 218:20 221:19 228:1 236:8 240:3 245:16 246:5 249:19 249:19 250:2 256:22 263:7 265:6 274:25 276:18 276:19 281:12

**they're**(24) 13:16 34:6 37:2 42:7 60:16 71:21 87:2 87:6 88:23 91:6 91:14 158:24 167:13 169:7 169:7 178:4 189:22 202:18 221:15 221:20 266:6 266:7 276:18 285:4
**they've**(4) 42:1 76:17 170:14 221:20
**they'll**(1) 151:9
**they're**(19) 59:15 112:9 113:16 115:22 120:15 120:16 125:8 126:20 130:15 130:24 141:11 146:4 146:12 149:18 150:24 150:25 151:2 151:3 158:23
**they've**(4) 92:7 116:25 133:22 151:1
**thing**(17) 90:3 107:21 107:22 108:3 119:11 130:17 154:19 162:5 163:12 166:3 169:10 208:10 208:11 208:15 280:25 285:14 285:23
**things**(14) 88:23 91:13 99:18 99:23 99:24 119:2 161:24 162:17 164:21 164:25 165:3 230:4 258:13 280:25

**think**(246) 18:22 18:23 19:5 20:12 21:7 23:14 23:17 24:8 25:14 25:17 25:19 25:23 26:9 28:7 29:19 30:8 35:10 35:11 35:13 35:20 36:5 36:7 36:19 38:22 38:23 39:20 40:20 41:16 42:6 42:18 42:20 42:25 43:22 47:16 48:16 48:22 51:11 51:13 52:5 52:1 52:17 53:22 53:24 54:4 54:12 54:19 55:2 54:4 56:11 56:14 57:18 58:5 58:25 58:25 60:14 60:16 62:6 62:17 62:20 66:1 67:24 69:13 69:15 71:20 74:10 75:11 73:9 77:7 78:3 78:9 80:7 80:25 82:2 82:6 84:4 86:14 87:20 88:16 89:13 89:17 89:18 91:3 91:14 92:5 95:23 103:5 106:19 108:15 108:16 109:20 109:21 111:21 115:16:19 116:21 117:18 118:12 119:13 119:14 119:15 119:15 121:23 128:9 129:11 131:12 133:1 133:2 133:11 133:11 134:16 134:10 136:7 138:3 139:11 139:14 141:3 141:4 142:2 142:3 143:10 143:15 145:1 145:5 145:21 145:21 149:25 150:16 150:18 151:11 152:1 152:11 152:22 152:2 153:13 153:15 154:5 154:23 155:10 155:13 155:14 155:18 155:19 156:7 156:2 157:9 158:22 160:2 160:18 160:20 161:9 167:23 174:4 176:13 176:24 177:12 178:1 185:6 188:14 191:22 191:24 193:13 193:24 194:3 194:4 194:19 194:22 194:23 195:2 195:16 195:17 199:13 200:20 200:2 201:4 201:17 202:9 203:19 203:20 204:2 205:18 206:14 209:8 212:13 212:20 213:1 214:18 215:12 215:16 215:23 216:14 216:15 216:17 217:23 223:19 224:22 226:22 226:18 229:16 231:14 233:3 236:18 238:7 238:23 239:2 240:7 242:9 243:1 244:6 244:20 245:4 245:10 245:13 245:21 245:22 246:4 246:18 249:20 250:3 250:9 252:17 253:9 254:2 255:15 258:1 258:6 260:17 262:19 263:13 264:1 269:22 271:5 272:15 276:15 279:22 280:22 280:25 281:22 282:8 284:12 285:6 285:16

**thinking**(4) 88:24 88:24 214:17 249:25
**thinks**(7) 139:4 139:16 139:22 139:25 141:21 142:4 198:20
**third**(29) 96:10 100:25 102:20 106:25 116:18 129:14 130:9 141:20 149:4 151:2 157:25 157:25 158:5 163:1 163:2 163:12 166:23 171:17 175:2 175:3 179:6 195:11 200:2 207:13 221:16 221:22 222:10 256:3 285:5
**third-party**(7) 111:24 115:25 116:14 117:3 148:7 148:17 148:23
**thirteen**(1) 208:3
**thirty**(2) 175:13 175:15
**thirty-five**(2) 162:2 166:2
**thirty-nine**(1) 213:18

**this**(300) 11:12 12:20 21:13 21:16 21:21 22:8 11 29:19 29:19 30:17 30:19 31:15 31:20 32:4 32:13 32:18 32:23 33:3 33:14 33:23 35:14 38:21 42:11 48:25 50:5 50:5 51:11 51:17 51:21 52:6 52:7 52:9 52:15 52:18 52:19 53:2 53:13 56:23 58:21 60:1 60:15 60:15 61:18 63:11 63:21 65:15 68:15 73:22 76:16 76:17 76:23 77:10 78:9 78:15 80:17 84:25 85:11 87:25 88:13 89:20 90:3 90:12 91:2 92:8 95:24 96:3 99:20 98:24 99:9 99:15 99:22 100:10 100:21 101:7 101:8 101:18 102:13 102:18 102:23 103:13 103:24 104:14 105:12 105:19 105:25 106:6 108:13 108:15 109:23 113:14 114:22 115:24 116:13 117:2 117:6 118:12 118:21 118:22 118:24 119:16 120:12 120:13 120:14 122:13 122:14 122:15 123:5 123:18 123:19 124:6 124:11 124:13 124:14 127:1 130:4 131:18 133:1 135:7 135:12 136:11 137:10 137:13 137:19 138:7 138:13 139:12 139:21 140:24 143:7 144:13 146:20 148:5 148:17 148:18 148:25 149:2 149:19 152:7 152:14 155:7 155:17 157:9 157:17 159:10 159:16 158:18 158:25 159:4 159:17 160:16 160:16 161:7 161:10 161:10 161:14 161:25 162:8 162:25 165:22 166:14 168:5 168:14 169:2 169:22 171:10 171:24 172:4 172:4 173:9 175:16 175:25 177:3 177:10 177:11 177:12 178:2 178:7 179:8 179:11 179:14 181:7 181:7 181:17 181:10 181:14 186:8 187:12 187:12 189:2 190:17 193:25 194:20 194:28 195:11 196:1 196:12 198:4 199:16 201:13 202:6 203:17 204:6 211:7 211:13 212:12 212:16 212:20 212:22 213:4 213:18 213:25 214:2 215:22 216:1 216:9 216:10 221:23 221:8 222:25 223:13 223:16 224:2 224:14 224:23 224:25 225:14 226:20 231:11 232:14 235:7 235:25 238:25 243:11 243:14 243:22 243:24 244:6 244:22 245:7 247:17 251:3 251:12 252:2 254:21 254:25 255:25 256:16 256:25 258:9 258:10 258:12 259:13 260:7 260:9 260:13 261:12 261:18 262:24 264:7 264:9 264:16 264:19 265:11 265:21 265:24 266:13 266:22 267:15 267:24 267:25 268:2 268:24 270:14 270:14 272:14 272:22 273:21 273:23 274:4 274:16 274:22 276:24 278:3 278:18 278:22 279:10 279:24 280:1 280:24 281:25 282:9 282:14 282:15 283:3 283:24 285:16 285:17

**thomas**(1) 3:14
**thornburg**(1) 4:34
**those**(134) 13:14 16:12 17:22 18:7 18:10 18:25 19:7 20:1 22:15 24:25 26:5 27:11 30:13 34:8 36:19 38:22 39:8 39:11 41:21 43:14 44:7 48:14 48:15 53:15 53:20 54:1 57:13 58:13 63:14 66:1 68:11 68:20 69:21 70:21 80:7 80:11 80:20 81:20 82:6 87:11 89:9 91:21 93:16 98:16 100:11 100:11 100:14 101:2 101:25 104:23 108:9 108:11 112:14 112:19 113:24 114:17 116:22 117:11 118:5 120:17 124:7 126:1 126:18 128:1 129:19 130:25 131:5 134:6 135:15 136:1 143:9 149:4 150:10 152:12 153:24 155:20 158:4 159:21 164:25 165:3 165:4 165:10 165:10 165:13 170:22 171:4 172:18 174:2 182:22 183:15 184:9 185:6 185:24 185:25 186:18 189:1 190:12 197:7 198:5 198:6 198:10 198:16 202:10 212:1 211:20 215:6 220:4 225:13 227:20 227:25 228:9 229:13 230:15 230:17 231:7 233:13 234:8 234:11 236:13 236:25 237:13 239:14 240:2 240:15 245:17 255:12 256:20 257:17 263:12 263:12 269:14 271:19 272:13 283:25

| Word | Page:Line |
|------|-----------|
| **though**(10) 23:20 53:21 111:8 154:3 156:6 185:2 232:2 232:3 234:25 242:12 | |
| **thought**(58) 21:6 21:13 24:17 32:21 42:12 43:14 43:23 46:8 50:24 59:4 59:7 59:11 59:20 60:7 66:23 71:4 75:4 80:21 80:21 89:25 100:6 105:7 105:10 116:4 116:6 143:25 144:2 145:4 145:7 145:10 145:18 146:5 172:1 172:4 172:17 177:1 177:8 179:11 179:14 189:18 195:2 195:3 195:4 198:16 199:8 202:24 222:11 236:9 241:19 246:22 248:16 249:23 254:6 254:11 258:9 263:3 271:20 272:2 | |
| **thoughts**(1) 73:5 | |
| **thousand**(2) 18:13 23:17 | |
| **three**(29) 67:11 94:24 96:24 102:22 106:12 110:21 122:14 131:18 132:3 134:1 143:8 166:6 191:9 192:8 199:11 226:1 228:16 228:19 229:6 239:12 248:19 254:1 256:12 257:4 257:5 261:3 263:11 281:19 285:4 | |
| **three-and-a-half**(1) 94:19 | |
| **three-billion-dolla**(1) 173:14 | |
| **three-hundred-million-dollar** 174:16 207:10 | |
| **three-percent**(1) 275:24 | |
| **through**(63) 14:3 14:5 50:10 55:6 58:6 97:19 104:8 108:17 109:6 110:16 111:6 114:23 115:13 117:13 118:1 118:23 122:4 123:7 130:18 130:24 132:22 136:9 136:15 138:25 155:7 156:13 159:15 162:25 163:15 163:19 166:22 179:14 185:24 193:24 195:4 204:19 208:12 209:4 212:13 216:14 216:18 219:16 221:11 222:1 222:10 228:1 229:6 230:9 230:10 242:12 245:19 248:20 249:24 253:24 254:3 254:6 259:8 263:2 263:3 263:7 274:17 285:16 | |
| **throughout**(2) 57:19 58:2 | |
| **thrust**(1) 91:3 | |
| **thursday**(3) 253:18 253:19 269:20 | |
| **thus**(1) 277:20 | |
| **tied**(1) 247:13 | |
| **till**(1) 74:22 | |
| **tim**(1) 49:12 | |
| **time**(138) 13:24 15:15 16:2 17:10 18:19 19:7 19:12 19:19 22:24 27:20 31:4 42:8 42:24 46:12 46:20 49:5 52:8 58:21 59:18 59:22 60:15 63:11 63:19 63:21 64:23 65:15 68:7 70:10 70:16 71:7 71:11 71:15 71:20 71:20 72:4 74:8 74:9 74:21 74:23 90:25 99:20 102:16 102:18 102:21 106:13 109:13 110:24 111:1 114:6 114:7 121:14 121:16 122:24 122:25 123:1 123:7 124:1 124:23 124:25 125:4 125:6 125:8 125:9 125:11 127:25 128:7 129:5 140:12 141:2 145:1 145:3 145:3 145:12 145:13 145:17 145:18 146:13 146:18 155:14 156:24 158:12 158:14 161:8 168:4 169:5 169:14 179:18 179:23 193:1 193:15 195:11 196:24 198:4 199:5 199:7 199:10 199:14 199:14 200:8 201:14 204:22 207:4 217:18 224:2 224:6 226:22 233:4 240:8 247:16 248:15 251:13 252:4 252:21 261:13 261:23 263:1 273:3 273:10 274:22 277:5 277:14 278:7 278:10 278:22 279:3 279:3 279:10 281:6 282:23 283:17 284:2 | |
| **timeframe**(2) 85:17 89:3 | |
| **times**(24) 13:7 20:4 22:2 23:7 24:24 30:24 42:11 42:14 62:21 62:24 63:2 70:13 71:2 73:3 73:11 75:1 142:13 175:15 175:15 189:3 189:6 229:6 249:1 285:10 | |
| **tiny**(1) 11:11 | |
| **title**(3) 13:22 72:22 96:12 | |

| Word | Page:Line |
|------|-----------|
| **today**(14) 14:10 45:8 69:18 73:2 76:25 85:16 88:3 157:15 188:16 248:10 248:19 263:1 270:21 276:21 | |
| **together**(37) 19:25 67:7 67:14 106:24 109:5 110:20 120:21 120:23 121:14 121:2 123:25 136:22 139:14 141:15 147:20 155:16 166:10 167:22 168:4 168:6 168:7 168:9 193:16 206:14 232:15 233:7 240:1 240:17 240:19 246:2 247:13 249:17 249:1 249:21 249:21 254:1 261:15 | |
| **told**(23) 26:7 58:23 61:11 62:9 69:22 71:15 75:15 92:7 162:1 192:9 193:4 193:11 194:17 194:23 200:16 231:14 232:2 232:20 246:18 254:6 275:19 279:23 285:3 | |
| **tomorrow**(10) 234:21 282:10 282:24 283:14 283:23 284:3 284:4 284:6 284:15 285:2 | |
| **tonight**(1) 284:6 | |
| **too**(18) 21:7 21:9 21:14 24:2 24:18 51:21 52:20 52:20 85:15 89:9 130:23 135:25 144:24 200:24 254:3 254:20 256:6 261:17 | |
| **took**(28) 14:20 26:19 59:6 71:5 82:17 85:5 95:5 113:24 131:1 146:16 146:20 168:13 168:15 178:18 183:8 189:23 197:25 201:1 214:19 216:3 234:22 247:9 247:17 255:2 255:3 255:3 255:16 262:15 | |
| **top**(24) 25:5 64:9 73:10 96:24 106:21 129:14 130:12 149:14 156:18 163:7 165:11 165:16 171:11 171:12 171:14 171:16 171:21 186:6 186:13 231:8 256:2 256:17 259:13 262:5 | |
| **topic**(2) 203:24 263:14 | |
| **topics**(1) 59:14 | |
| **torres**(1) 10:14 | |
| **tortured**(1) 42:12 | |
| **total**(4) 114:2 115:1 136:16 199:19 | |
| **totally**(1) 177:25 | |
| **touch**(2) 46:23 47:3 | |
| **touched**(1) 263:16 | |
| **tough**(2) 144:7 146:12 | |
| **tougher**(4) 127:20 245:23 246:14 246:17 | |
| **toussi**(1) 10:47 | |
| **toward**(9) 126:17 154:20 154:21 192:19 202:12 236:13 238:15 248:1 279:24 | |
| **towards**(1) 134:3 | |
| **town**(1) 90:6 | |
| **trade**(3) 112:11 112:12 134:1 | |
| **trader**(3) 42:9 145:12 145:25 | |
| **trading**(5) 145:11 145:14 145:23 281:7 281:17 | |
| **train**(1) 194:3 | |
| **training**(4) 14:5 98:22 99:1 99:2 | |
| **transaction**(8) 106:25 119:16 123:6 130:5 130:13 131:2 202:21 204:22 | |
| **transactions**(4) 97:20 100:18 204:9 204:13 | |
| **transcribed**(2) 197:4 199:1 | |
| **transcriber**(1) 286:24 | |
| **transcript**(7) 1:17 1:48 190:4 197:13 268:25 279:23 286:18 | |
| **transcription**(2) 1:41 1:48 | |
| **transcripts**(1) 197:18 | |
| **transfer**(13) 181:11 187:1 204:20 216:22 216:23 217:2 217:13 217:19 242:2 242:18 243:3 243:8 245:1 | |
| **transfer's**(1) 217:19 | |
| **transfers**(1) 244:13 | |
| **trapped**(2) 133:19 141:22 | |

| Word | Page:Line |
|------|-----------|
| **treat**(8) 119:16 132:18 156:12 178:24 221:5 243:14 245:16 246:19 | |
| **treated**(1) 267:20 | |
| **treatises**(1) 100:7 | |
| **treatment**(2) 36:23 104:2 | |
| **treats**(2) 246:2 246:2 | |
| **tree**(1) 232:21 | |
| **trees**(1) 258:12 | |
| **trehan**(1) 6:9 | |
| **trial**(6) 76:17 120:17 185:21 223:13 260:13 272:12 | |
| **trib**(2) 50:9 50:16 | |
| **tribune**(198) 1:7 4:46 4:46 7:4 7:24 14:12 14:15 14:19 14:23 15:11 15:12 41:19 41:24 46:3 46:9 46:12 46:13 46:18 47:1 47:4 47:12 47:20 48:17 48:18 49:17 50:15 56:10 57:11 67:16 68:6 68:10 71:6 72:9 72:11 73:5 73:10 74:7 74:10 101:15 101:20 102:1 102:2 102:11 103:25 104:17 104:18 104:21 105:3 108:18 109:24 110:15 110:15 110:17 110:23 111:1 111:5 111:8 111:9 111:13 111:14 111:17 111:25 112:4 112:5 112:15 112:17 113:21 113:22 114:3 114:5 114:8 114:9 114:11 114:12 114:25 118:22 119:13 123:8 124:5 124:24 125:7 126:10 126:15 127:2 127:6 128:14 129:15 129:17 129:24 130:1 130:6 130:20 132:13 132:14 132:17 132:19 132:20 132:22 132:22 134:2 135:15 136:8 136:12 138:2 139:22 140:3 140:4 140:8 140:14 142:2 143:18 144:8 144:9 144:11 144:18 144:19 144:22 146:11 150:20 151:16 152:9 152:12 153:9 155:19 156:1 163:17 163:18 164:1 164:5 164:6 167:14 167:16 168:18 169:19 169:22 169:23 169:24 170:10 170:18 172:21 173:19 174:2 174:6 174:7 174:10 174:12 174:13 174:14 174:23 174:24 177:2 177:17 177:25 177:17 177:17 177:8 178:7 178:9 178:10 178:24 178:25 179:2 188:22 197:20 209:2 210:8 210:24 213:6 229:22 229:24 231:2 231:3 231:2 232:4 232:4 234:18 234:22 235:1 238:25 239:3 240:18 242:2 242:12 246:13 247:5 247:8 249:15 252:3 252:8 252:11 252:19 267:20 273:4 273:6 273:8 274:21 277:22 278:16 281:9 | |
| **tribune's**(15) 164:17 234:19 267:21 274:23 275:20 276:6 276:16 276:23 277:4 277:7 278:4 278:19 279:2 279:4 279:10 | |
| **tribune's**(7) 109:13 110:10 124:2 125:6 128:1 141:4 144:17 | |
| **tried**(16) 22:3 100:4 107:23 118:12 150:6 154:24 157:20 177:21 188:11 194:8 232:2 233:3 236:4 237:20 254:2 268:10 | |
| **trouble**(2) 146:10 153:6 | |
| **troubled**(1) 285:22 | |
| **true**(33) 30:6 45:1 46:17 48:6 48:9 58:22 59:19 61:5 62:3 66:6 87:9 183:6 189:13 197:14 201:19 202:12 206:18 217:2 230:11 232:19 238:3 239:17 241:3 243:15 243:25 246:21 247:4 247:18 265:22 275:2 276:14 276:16 279:12 | |
| **truly**(1) 104:5 | |
| **trump**(1) 9:40 | |
| **trust**(46) 7:29 10:14 20:15 25:5 25:8 26:10 26:12 32:1 32:4 34:21 34:22 34:24 35:16 35:23 35:24 36:2 36:5 36:9 36:14 36:19 37:10 43:10 43:12 44:11 79:5 79:1 79:23 80:2 80:3 80:8 80:19 80:19 103:24 104:4 116:17 116:24 117:9 117:10 117:18 117:23 118:3 149:9 149:22 150:7 221:21 271:22 | |
| **trustee**(4) 4:28 4:28 104:19 150:21 | |
| **trusty**(1) 232:24 | |

| Word | Page:Line |
|------|-----------|
| **truthful**(4) 191:6 245:2 276:7 276:11 | |
| **try**(26) 22:14 27:22 30:18 41:9 66:14 66:24 67:25 72:24 87:24 90:3 106:13 129:13 134:17 148:4 183:20 189:2 189:9 201:1 201:22 208:24 210:22 224:18 233:5 249:10 250:5 277:14 285:22 | |
| **trying**(29) 19:23 19:24 27:22 55:6 60:2 61:25 62:2 62:10 62:14 62:16 62:18 63:7 63:10 85:11 89:2 99:19 104:11 108:5 113:23 114:1 138:17 189:7 192:23 234:3 234:4 234:6 243:21 245:19 278:16 | |
| **tuesday**(1) 172:8 | |
| **tulliano**(2) 168:25 169:16 | |
| **turn**(18) 33:13 64:5 127:24 132:5 137:7 148:22 149:23 152:24 154:9 157:7 162:21 166:18 179:2 205:10 205:17 228:6 234:20 245:12 | |
| **turned**(5) 18:12 23:7 73:11 106:13 250:2 | |
| **turns**(4) 128:23 128:24 129:4 140:7 | |
| **twenty**(2) 165:11 186:16 | |
| **twenty-five**(1) 162:1 | |
| **twenty-one**(1) 174:14 | |
| **twenty-seven**(1) 173:6 | |
| **twice**(3) 141:10 141:10 163:4 | |
| **two**(231) 12:21 14:17 15:8 15:17 25:5 32:15 32:22 33:4 34:18 37:1 37:18 37:23 38:3 38:7 38:10 38:14 38:17 46:3 46:14 46:15 46:15 49:9 50:6 50:16 50:24 50:25 53:9 53:17 54:2 54:7 54:17 57:5 58:12 65:13 65:16 65:19 66:7 66:10 66:12 66:17 66:20 66:21 66:22 67:6 67:8 67:9 67:10 67:11 77:4 77:14 77:18 77:21 78:1 78:5 78:5 78:18 78:21 80:5 81:7 81:21 82:2 82:18 82:23 86:6 86:10 86:11 88:3 88:21 89:22 94:25 96:2 101:19 104:22 105:1 106:24 108:17 108:17 108:19 109:21 110:9 110:10 110:12 110:14 110:17 110:23 111:4 114:10 114:11 114:18 114:18 117:4 117:7 117:14 117:16 121:15 121:20 122:19 122:19 122:23 123:25 124:1 124:2 124:8 124:9 124:24 124:25 125:3 125:4 125:4 125:7 125:8 125:11 125:19 125:20 126:15 126:23 128:1 129:11 130:3 136:12 141:9 141:12 142:3 143:17 145:19 145:19 146:12 150:14 153:5 153:8 156:4 156:4 164:23 165:6 165:10 165:14 165:18 166:8 167:1 167:9 167:10 167:15 167:21 168:9 169:20 170:11 170:12 173:12 173:18 176:4 176:1 177:15 177:16 178:22 187:21 192:8 193:10 193:10 193:15 193:20 193:24 198:8 200:14 205:2 208:8 208:12 208:17 209:25 210:4 210:19 211:19 214:1 214:3 214:25 215:18 216:25 217:13 217:16 219:25 220:4 221:8 226:11 226:17 226:22 226:24 227:5 227:4 227:9 230:17 231:15 231:22 233:24 234:14 236:2 240:18 242:19 243:2 243:8 246:2 246:9 246:19 246:21 248:19 252:14 255:12 257:8 259:2 259:12 259:18 263:19 263:20 266:9 268:18 271:1 272:5 274:10 281:6 281:10 281:11 281:11 281:17 283:22 285:4 | |
| **two-fold**(1) 138:15 | |
| **two-percent**(1) 169:3 | |
| **two-step**(1) 156:1 | |
| **two-thirds**(2) 252:1 252:15 | |
| **type**(1) 159:18 | |
| **types**(3) 140:25 158:20 263:4 | |
| **typical**(1) 194:20 | |
| **u.s**(1) 8:5 | |
| **ucc**(2) 59:10 200:4 | |
| **ucla**(1) 203:4 | |
| **ultimate**(4) 206:15 207:24 229:17 257:13 | |
| **ultimately**(7) 14:8 20:5 22:5 22:20 27:11 27:14 42:20 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**um-hum**(8) 53:8 58:14 66:16 75:2 85:1 117:21 120:20 134:22

**unable**(2) 30:6 204:10
**uncertainty**(1) 244:1
**unclear**(1) 123:20
**under**(39) 31:20 36:24 45:6 67:2 80:3 81:20 84:4 86:6 86:18 105:21 107:3 111:11 113:18 117:10 124:14 125:23 126:16 140:6 157:10 158:7 158:25 178:7 181:18 181:21 183:12 183:13 183:14 190:13 196:5 196:11 206:6 211:3 215:14 217:4 217:10 218:18 219:24 220:10 220:1
**undergraduate**(1) 94:9
**underlays**(1) 222:24
**underlies**(2) 106:17 202:1
**underlying**(1) 178:5
**underneath**(1) 123:14
**underperform**(1) 275:11
**underperforming**(1) 275:8
**understand**(51) 44:13 50:11 55:14 57:16 61:10 86:9 86:12 86:23 99:20 102:6 105:5 105:6 120:6 139:12 146:10 155:11 155:11 155:12 155:15 158:15 177:13 178:18 178:19 181:20 184:6 188:6 188:13 188:17 189:7 196:5 199:22 201:23 202:20 205:14 210:3 210:22 213:5 218:20 220:17 224:14 226:12 234:3 236:1 237:1 239:8 241:17 241:17 248:11 261:14 262:7
**understanding**(49) 15:10 15:12 17:15 17:17 17:24 18:2 21:4 21:10 25:11 25:17 25:18 34:6 36:13 36:18 39:15 44:2 48:12 54:14 65:15 67:2 67:8 80:1 82:16 82:23 83:17 84:3 84:10 84:13 84:24 84:25 86:2 86:22 99:11 99:11 99:12 100:18 102:2 123:2 123:3 137:2 174:1 188:25 189:10 189:17 221:1 233:11 238:15 239:3 253:13
**understood**(5) 45:5 58:5 220:10 242:14 247:10
**undertake**(1) 201:24
**undertaken**(1) 182:20
**undertook**(1) 112:22
**underwriters**(6) 53:10 54:9 54:12 54:16 54:23 55:6
**underwriting**(1) 53:25
**unfolded**(1) 194:25
**unfortunately**(1) 90:7
**unidentified**(1) 286:13
**unit**(5) 44:25 46:2 46:21 48:4 50:14
**united**(3) 1:1 1:19 285:18
**universe**(1) 250:24
**university**(4) 93:12 93:21 94:10 193:23
**unknown**(5) 52:23 60:9 68:7 68:8 68:9
**unless**(6) 80:24 89:21 127:8 268:4 268:12 269:13
**unlike**(1) 234:8
**unlikely**(33) 130:3 133:13 133:14 133:24 139:5 139:6 139:7 139:8 139:10 139:19 140:5 141:23 142:3 142:4 142:5 168:1 227:23 227:23 227:23 236:21 236:21 236:23 237:14 237:15 238:9 238:13 238:1 242:21 253:11 268:16 269:17 269:25 270:1
**unpack**(1) 268:20
**unpacked**(1) 270:13
**unprotected**(1) 212:17
**unreasonable**(1) 65:19
**unreasonably**(4) 102:5 123:13 184:19 205:13
**unreasonably-smal**(1) 246:1
**unrelated**(1) 284:1

**unsecured**(33) 3:12 5:23 15:18 20:13 31:22 31:23 31:25 35:2 37:17 58:14 58:1 58:22 59:3 59:19 61:6 61:20 61:25 62:5 83:15 83:18 83:19 84:4 84:5 84:6 84:14 86:19 87:1 101:1 103:25 164:6 172:6 200:14 201:5
**unsuccessful**(1) 22:6
**until**(12) 15:8 93:25 94:4 94:6 94:18 95:3 95:8 116:25 167:14 222:15 284:23 285:20
**upfront**(2) 37:9 156:7
**upper**(6) 144:18 148:11 148:20 172:3
**upset**(1) 21:8
**upstreaming**(1) 187:18
**urbana**(1) 193:23
**usa**(1) 9:51
**use**(17) 61:5 87:23 88:9 89:22 91:7 98:1 98:2 131:16 195:25 196:12 201:13 218:17 230:18 231:13 245:10 266:24 270:4
**used**(16) 60:18 117:7 117:9 167:5 167:5 167:6 169:14 173:23 210:19 213:4 231:18 233:3 233:23 238:2 272:1 277:15
**useful**(3) 110:20 202:24 260:17
**uses**(1) 237:17
**using**(4) 113:5 147:5 149:25 213:5
**usually**(2) 117:25 237:13

**vacation**(3) 57:24 58:1 58:10
**vail**(1) 5:6
**valerio**(1) 10:11
**valid**(1) 210:18
**valuable**(5) 36:20 43:12 43:15 43:24 44:11
**valuation**(19) 44:13 96:6 97:4 97:6 97:6 97:9 99:8 99:8 100:17 101:25 104:12 104:13 104:15 104:15 104:24 109:13 163:12 209:15 209:19
**valuations**(2) 97:12 104:22
**value**(144) 19:11 21:14 35:17 36:4 36:8 36:14 36:18 38:13 38:15 38:16 39:22 39:25 39:25 40:3 40:5 40:5 40:7 40:9 40:10 41:12 41:13 41:15 41:5 44:3 44:7 78:1 79:12 79:23 80:18 80:20 82:2 82:6 82:9 82:16 97:7 113:22 113:22 113:23 113:24 114:2 114:9 114:9 126:10 126:15 126:20 126:24 127:2 127:5 127:5 127:7 127:16 128:23 129:12 132:14 132:20 132:23 133:19 133:22 140:9 141:2 144:9 144:16 144:17 144:20 145: 145:10 150:9 150:10 150:11 153:5 153:8 153:16 153:25 154:1 154:3 155:10 155:19 158:1 158:1 163:5 164:7 164:8 164:7 164:22 165:7 165:12 166:7 166:25 167:4 167:4 167:12 167:13 167:21 167:24 168:14 168:22 169:4 169:5 169:14 169:18 184:15 202:11 209:19 210:3 211:8 215:5 215:10 215:19 220:22 221:5 221:11 221:1 233:9 233:9 233:11 234:10 235:16 238:1 238:25 239:4 256:1 261:5 262:2 263:19 270:7 272:16 277:19 278:1 278:4
**values**(2) 155:17 167:15
**variable**(1) 158:18
**variables**(1) 158:21
**variance**(5) 208:3 208:4 208:4 208:5
**variant**(3) 208:17 214:6 214:11
**variation**(1) 159:1
**various**(16) 19:22 20:3 44:22 45:19 58:7 100:24 103:22 125:23 137:4 180:7 181:18 185:12 192:18 197:5 197:25 228:15
**vary**(3) 160:16 166:1 166:24
**vazquez**(1) 5:32
**verify**(1) 223:20
**verifying**(1) 162:13

**version**(3) 224:25 265:2 265:5
**versus**(9) 66:7 81:6 156:17 249:17 250:15 250:15 250:16 251:5 253:25
**very**(49) 11:10 28:18 32:23 37:2 39:24 42:7 42:7 42:10 45:11 62:17 65:16 66:17 76:23 85:19 89:20 92:10 98:12 99:7 101:19 101:22 103:24 104:2 104:6 108:15 113:16 118:6 118:24 130:17 137:21 140:5 140:23 142:2 150:16 152:17 153:22 159:2 167:14 168:22 169:3 171:11 177:21 177:24 201:1 207:16 213:19 236:22 281:1 283:19 285:12
**very-quickly**(1) 112:25
**viable**(1) 215:5
**vice**(4) 13:1 72:19 72:20 72:23
**vice-versa**(1) 141:7
**victory**(1) 209:22
**video**(21) 45:10 45:11 45:16 45:25 52:12 53:3 60:5 60:13 60:16 68:2 68:14 68:19 69:1 69:9 244:10 244:12 245:1 250:19 251:9 251:24 253:16
**videotape**(1) 190:6
**view**(113) 19:9 19:11 24:15 25:2 25:12 25:16 35:22 36:4 36:13 37:3 43:23 44:10 58:23 60:25 61:7 75:3 75:15 80:17 88:14 88:20 118:17 118:19 118:20 122:22 123:22 124:6 124:13 124:15 126:25 127:12 127:24 128:6 128:9 129:16 130:16 136:10 137:10 137:11 137:19 138:4 139:15 140:2 141:2 141:13 141:25 142:7 146:6 153:17 155:16 155:16 156:15 158:23 162:10 167:24 170:25 173:25 174:5 177:1 190:20 190:21 190:21 190:24 193:1 195: 195:5 195:6 195:6 195:8 203:2 203:6 205:12 209:1 217:10 217:11 217:11 226:1 233:8 233:15 236:6 236:6 236:7 236:13 237:17 238:1 238:14 239:22 240:1 240:7 240:7 240:13 241:6 241:13 241:18 241:23 243:19 245:25 246:5 248:7 248:8 254:10 265:13 265:14 266:13 266:21 266:23 266:25 267:23 268:2 268:12 269:12 271:2 271:3
**viewed**(3) 23:25 26:20 216:2
**views**(8) 26:6 42:7 100:16 104:24 107:3 128:11 155:21 176:9
**viking**(1) 8:29
**vindication**(1) 24:1
**vinson**(1) 9:14
**violation**(1) 26:21
**virtually**(1) 259:4
**visible**(1) 225:14
**visiting**(1) 283:23
**viv**(1) 24:23
**volume**(1) 113:14
**vora**(1) 9:52
**vote**(3) 22:13 67:10 67:13
**vrc**(6) 55:5 55:19 80:7 104:20 151:25
**vrc's**(1) 54:20
**vulnerable**(3) 49:23 49:25 50:1
**wacker**(1) 3:44
**wait**(4) 131:20 190:5 225:5 273:1
**waive**(1) 28:4
**wald**(1) 94:15
**walk**(9) 97:19 109:6 122:3 136:15 138:25 155:7 159:15 162:25 166:21
**walrath**(1) 183:23
**want**(40) 28:8 43:9 49:1 51:1 55:10 56:17 59:14 64:13 65:1 67:1 71:21 72:4 72:15 72:24 94:13 103:13 109:21 118:13 118:23 121:12 140:3 143:14 143:21 152:17 157:21 159:13 159:23 187:12 195:8 201:11 207:4 219:3 229:11 231:24 255:15 265:24 284:11 284:13 285:10 285:17

**wanted**(29) 25:4 25:7 26:7 26:10 26:11 32:24 32:25 33:1 50:9 50:10 62:7 66:21 66:22 107:2 120:11 131:20 158:6 166:23 168:14 168:18 202:5 212:13 212:19 220:11 236:5 236:11 236:12 285:20 285:24
**wanting**(1) 61:16
**wants**(2) 50:20 281:23
**wardwell**(3) 2:4 9:4 11:6
**warner**(2) 15:24 169:14
**warrant**(1) 145:9
**was**(301) 12:10 13:1 14:4 14:23 14:25 15:17 15:21 16:4 16:22 17:13 17:16 17:23 18:7 18:22 18:23 18:23 18:23 19:2 19:4 19:4 19:12 19:12 19:18 20:9 20:15 21:7 21:20 21:22 22:14 22:16 21:18 21:19 21:19 23:2 23:14 24:2 24:2 24:3 24:14 24:18 24:18 24:25 25:1 25:1 25:12 26:8 27:4 27:18 28:23 28:24 28:25 29:15 29:17 30:8 31:1 31:3 31:8 31:10 32:1 32:3 32:18 33:7 33:10 33:12 34:2 35:7 37:3 38:8 38:21 42:14 44:8 45:2 46:7 46:14 46:20 47:1 47:2 47:15 47:17 47:18 48:18 49:9 50:1 50:12 50:12 50:18 50:19 50:25 52:7 52:8 52:9 53:1 53:20 53:22 54:2 54:7 54:14 54:15 54:16 54:19 57:24 58:10 58:12 59:7 59:23 60:8 60:25 60:25 61:11 62:4 62:13 62:17 63:16 63:17 63:18 63:18 65:15 65:19 65:22 66:6 66:19 68:24 69:10 69:17 70:6 70:9 70:25 71:2 71:7 71:9 71:11 71:12 71:16 72:13 72:22 73:19 73:24 74:2 74:15 74:20 74:23 75:5 75:6 75:16 75:19 75:21 76:1 76:5 76:6 76:6 76:7 76:7 76:11 76:13 76:13 76:24 77:7 78:2 78:4 78:6 78:10 78:15 78:16 78:18 78:21 78:24 79:3 79:6 79:9 79:11 81:18 82:5 88:4 88:12 89:17 90:21 93:21 93:21 93:23 94:3 94:11 94:17 94:20 95:1 95:3 95:3 95:6 95:9 99:14 99:18 101:17 101:25 102:1 102:2 102:3 102:13 102:15 102:17 103:21 105:24 106:10 106:18 106:18 107:20 107:22 109:23 109:24 110:10 110:13 110:15 110:23 111:13 112:14 112:23 112:23 113:22 116:4 116:6 117:25 118:15 118:18 118:22 118:24 119:13 119:23 119:24 119:25 120:22 122:19 122:23 123:4 123:24 124:2 124:6 125:1 125:2 125:7 126:10 126:10 126:11 126:13 126:13 126:18 127:9 127:24 128:10 128:12 129:18 129:18 130:15 131:2 131:2 133:6 135:22 136:8 136:11 138:2 139:8 141:13 144:6 144:6 144:8 144:9 144:14 145:5 145:7 145:7 145:8 145:10 145:19 145:22 146:3 146:10 146:11 147:1 147:13 152:15 152:15 153:24 155:13 155:24 156:1 156:6 156:7 156:7 159:19 159:20 160:2 160:17 160:24 160:25 162:13 163:1

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**was**(212) 163:3 163:5 166:24 167:4 167:4 167:5 167:6 167:18 167:24 168:25 169:5 169:11 172:1 172:4 172:10 172:13 172:18 173:16 175:8 175:20 175:22 176:25 177:8 177:9 186:24 187:21 188:2 188:7 188:14 188:15 188:22 188:24 188:24 188:25 189:1 189:6 189:7 189:18 190:9 190:10 190:14 190:15 191:6 191:17 191:18 191:18 191:21 191:20 191:21 191:22 191:23 191:23 192:8 192:12 192:18 192:18 192:22 193:5 193:8 193:11 193:13 193:13 193:14 193:1 193:16 193:20 193:21 193:22 193:23 194:18 194:18 195:7 196:20 197:20 199:7 199:12 199:14 200:9 200:12 200:16 200:1 200:17 201:1 201:3 201:8 201:12 201:17 201:22 202:6 202:20 202:24 203:12 203:1 208:1 208:7 208:16 208:20 209:2 210:13 210:24 212:20 212:25 214:23 216:7 216:7 216:15 216:25 218:5 218:15 220:11 220:1 220:20 221:22 221:22 224:24 226:8 227:12 228:2 228:5 230:9 230:24 231:10 231:12 231:22 232:12 233:7 235:23 237:1 237:19 238:10 238:21 241:10 243:2 243:2 243:20 245:2 246:12 246:17 246:20 246:2 247:8 247:23 248:4 248:8 248:8 249:25 252:10 252:18 252:20 253:18 253:19 253:19 253:21 253:25 253:25 254:3 254:9 254:15 255:6 256:9 257:16 259:9 259:18 261:2 265:3 265:6 266:22 267:23 268:15 269:16 271:10 271:12 271:20 271:21 272:2 272:2 272:14 272:17 272:23 273:3 273:6 273:9 273:15 273:15 274:6 274:8 274:9 274:12 274:13 274:14 274:24 274:24 275:2 275:21 276:2 276:7 276:11 276:14 276:23 277:15 278:10 278:23 279:11 279:12 279:13 279:24 280:4 280:5 280:17 280:19 280:23 280:23

**washington**(3) 3:38 183:24 184:3
**wasn't**(17) 17:21 27:15 37:25 38:10 39:1 43:20 53:21 58:9 63:15 70:17 78:17 78:23 161:1 216:12 246:16 253:14 278:23

**wasn't**(3) 113:23 114:1 153:23
**waterfall**(6) 170:13 187:24 188:4 209:10 211:1 215:20

**way**(81) 22:4 29:18 35:11 40:24 42:20 52:17 52:25 55:24 78:7 87:23 106:14 106:15 110:16 111:6 111:15 111:18 112:1 115:16 115:23 115:23 118:1 118:23 120:21 125:17 126:18 130:12 133:10 134:20 135:24 136:9 136:15 138:19 145:2 149:15 149:25 150:19 158:19 158:19 160:20 161:18 161:23 162:19 164:11 165:1 166:25 171:24 175:5 178:23 189:2 193:14 195:2 195:4 204:6 205:12 210:2 210:23 211:8 214:11 220:6 220:10 221:10 226:16 232:15 232:25 236:9 244:14 244:18 244:2 246:8 253:24 255:15 257:23 267:7 271:23 276:15 283:3 283:8 285:11 285:16 285:18 286:6

**ways**(1) 108:7
**we'd**(3) 89:24 257:8 285:13
**we'll**(12) 16:24 33:23 83:4 89:5 90:18 92:1 187:2 190:5 215:6 269:24 284:5 284:23
**we're**(40) 13:4 22:12 29:16 30:1 30:5 66:9 85:15 89:1 89:2 89:3 89:9 89:22 175:8 178:21 178:22 178:23 181:4 209:13 218:16 222:9 224:9 232:6 228:21 233:22 246:8 246:19 252:15 252:16 253:1 253:1 253:6 256:15 260:9 261:10 262:24 265:11 265:22 274:16 275:4 282:8

**we've**(15) 88:24 172:21 227:12 228:16 229:13 229:16 236:18 248:6 256:15 256:15 259:14 261:22 262:19 263:22 282:6

**weak**(9) 133:1 133:2 276:7 276:12 276:17 276:23 277:2 278:1 279:11
**weather**(4) 102:9 127:22 129:25 204:10
**website**(2) 95:12 95:17
**wednesday**(1) 11:1
**week**(16) 15:17 56:17 75:1 89:1 103:6 106:25 211:14 215:12 224:3 231:15 247:11 253:20 254:24 279:23 282:7 285:8

**week."**(2) 51:13 52:17
**weeklong**(2) 98:18 98:24
**weeks**(2) 34:2 274:10
**weighed**(1) 231:16
**weighing**(1) 231:11
**weight**(30) 107:2 136:4 136:4 137:1 137:21 138:11 138:11 155:14 155:15 168:21 168:23 168:23 170:2 208:6 233:12 236:8 249:15 249:17 249:20 249:22 253:1 253:14 253:21 254:1 254:3 254:4 255:10 255:11 255:17 263:8

**weighting**(5) 212:24 213:13 250:6 250:12 250:15

**weightings**(1) 213:19
**weightings**(3) 137:3 254:13
**weil**(1) 8:37
**weiss**(1) 7:39
**weitman**(1) 7:25
**welcome**(1) 157:6
**well**(130) 11:10 12:21 14:24 16:9 18:2 19:8 20:2 21:3 21:12 22:16 23:6 23:24 25:1 26:19 27:3 28:18 29:22 32:21 34:18 34:20 37:1 37:8 38:12 40:23 42:18 43:18 47:13 49:5 53:24 54:1 55:2 57:16 59:6 59:22 60:19 60:24 61:20 61:2 63:14 66:8 67:25 76:10 77:1 78:11 82:17 82:23 83:24 85:10 87:20 89:7 89:10 92:10 92:17 95:20 98:17 101:3 105:7 108:14 111:13 113:9 113:10 113:11 114:13 127:7 130:10 130:23 131:15 131:19 135:17 139:20 144:23 146:17 147:2 148:19 152:2 153:21 154:17 154:19 154:22 158:2 160:22 160:25 161:12 164:20 165:2 165:1 165:19 167:10 170:24 174:3 176:13 176:16 179:22 181:18 181:22 189:1 189:1 190:15 193:12 194:5 194:22 199:15 200:9 222:2 222:11 224:16 225:7 226:24 230:3 233:25 234:22 241:16 252:25 257:1 257:1 259:4 259:7 276:18 277:4 281:14 283:3 285:19

**well."**(1) 49:23
**wells**(1) 10:29
**went**(36) 12:4 14:5 32:7 32:8 38:14 40:9 41:16 79:7 79:7 79:12 94:9 94:13 94:14 94:16 94:21 95:4 100:3 100:6 104:8 107:4 110:8 132:17 132:17 132:19 132:22 194:2 194:2 201:3 202:8 221:11 254:2 255:8 259:3 259:7 263:2 281:13

**were**(248) 12:8 12:25 15:2 15:3 15:8 15:22 16:1 17:3 17:17 17:19 17:22 18:8 19:1 19:3 19:5 19:16 19:17 19:20 19:21 19:23 20:17 20:24 21:2 21:8 21:8 22:20 22:23 24:9 26:6 27:5 27:13 27:21 27:21 28:21 28:22 31:3 31:4 32:4 32:5 32:21 32:11 32:13 32:15 33:2 33:4 33:6 33:25 34:9 34:11 42:11 42:14 43:12 43:13 43:1 43:24 44:6 44:11 45:6 46:8 46:10 46:13 46:18 47:19 50:15 51:12 51:20 52:15 53:4 53:11 53:13 53:15 54:1 54:18 54:19 54:2 55:4 56:2 57:14 57:19 57:20 57:24 58:1 58:1 58:6 58:21 59:18 60:2 61:25 62:1 62:2 62:6 62:9 63:14 63:17 66:17 66:18 67:24 69:13 69:15 69:17 74:6 74:10 75:1 75:11 76:17 77:18 77:22 77:24 79:22 80:11 80:12 80:22 81:5 81:18 82:1 86:9 86:10 87:9 88:4 88:10 89:19 90:13 90:15 93:19 94:1 99:20 99:22 99:24 99:25 101:15 101:14 101:16 102:16 102:19 109:25 110:16 110:22 111:2 111:3 111:5 111:9 112:8 112:13 120:12 122:19 125:3 125:9 125:22 128:1 128:5 130:5 130:10 130:12 130:14 133:4 134:11 138:24 143:24 144:1 145:4 145:6 145:6 145:14 145:25 151:15 152:16 152:18 156:1 156:4 156:12 161:6 164:11 164:11 167:23 167:23 172:17 176:5 184:4 184:6 185:25 187:5 190:9 191:11 191:14 192:9 192:22 193:11 193:21 194:11 197:18 198:9 198:16 198:23 199:8 205:19 207:15 207:16 211:14 211:18 212:2 212:11 212:22 215:22 216:21 218:7 225:5 225:18 231:6 235:3 235:5 237:2 243:21 247:20 248:16 249:14 249:16 249:23 251:12 252:13 252:17 255:12 259:12 261:23 262:25 263:1 269:10 269:23 271:19 272:4 272:22 273:3 273:7 273:13 274:1 274:25 275:1 275:5 276:18 276:19 280:2 280:12 280:13 281:7 281:12 281:12 281:17 281:1 285:21

**weren't**(4) 32:16 42:15 161:2 189:5
**weren't**(1) 101:5
**west**(3) 3:44 4:8 4:36
**we'll**(3) 113:14 121:3 148:25
**we're**(13) 104:14 130:23 130:24 131:21 132:8 132:9 132:18 132:20 133:7 154:19 154:22 156:18 156:21

**we've**(16) 98:17 104:10 104:15 104:21 116:13 120:1 128:19 128:22 131:6 131:7 131:13 131:8 131:17 134:14 143:23 147:3

**wharton**(1) 7:39

**what**(298) 11:25 12:16 12:24 13:2 13:9 13:12 13:22 17:15 17:24 18:23 19:18 20:1 22:15 23:13 24:14 24:25 25:12 25:17 26:5 26:18 26:25 27:11 27:24 28:1 29:13 34:4 36:13 36:16 36:17 39:15 39:21 41:13 44:10 45:17 47:15 48:18 49:11 50:18 52:1 52:6 53:1 58:10 59:4 59:10 59:20 60:7 61:7 61:10 70:25 71:7 72:22 73:2 74:20 75:3 75:15 80:2 80:14 80:17 80:17 81:12 82:12 82:16 84:3 88:12 94:13 97:13 97:19 98:4 99:17 99:20 101:16 101:25 102:1 102:4 105:1 105:5 105:7 106:19 107:20 107:22 108:3 108:5 108:6 108:7 108:19 108:25 109:6 109:18 110:12 110:13 111:9 114:21 114:24 115:18 115:21 116:9 116:21 117:7 117:23 118:11 118:13 118:14 120:4 120:7 121:2 121:5 121:9 121:10 122:4 123:17 123:23 124:22 125:16 126:10 126:10 126:11 127:14 127:24 128:6 128:12 130:8 130:15 131:11 131:12 131:15 132:8 132:11 133:20 133:5 135:9 135:14 136:16 136:19 136:19 137:9 137:14 137:21 139:3 139:6 139:11 139:12 139:18 139:20 139:22 139:25 140:2 140:20 141:3 141:4 142:13 144:25 145:2 145:3 145:16 146:10 148:7 150:6 150:6 150:8 150:18 151:13 152:7 152:15 153:15 154:17 154:25 155:20 155:22 156:2 156:13 157:21 158:3 158:6 158:6 160:12 160:24 161:10 161:22 161:23 161:25 162:2 162:5 162:9 162:12 162:15 163:1 163:3 163:5 163:7 163:8 163:8 163:20 165:20 166:21 168:10 168:11 168:13 168:14 168:15 168:17 168:18 168:24 169:16 171:9 172:21 173:1 173:16 174:19 174:21 175:6 176:10 176:24 176:24 176:25 177:7 178:19 178:20 178:20 178:21 179:1 183:15 184:1 184:15 184:21 186:24 188:11 189:4 189:7 190:9 190:23 191:8 191:9 192:1 193:13 196:18 198:20 199:8 199:11 200:3 200:22 200:25 201:12 202:1 207:20 210:20 213:5 214:18 214:22 215:16 216:10 226:19 228:1 234:2 234:4 235:23 236:2 236:3 236:4 237:9 237:20 237:21 237:24 238:10 241:24 243:21 244:7 244:8 244:21 245:4 245:10 246:10 248:12 249:19 250:5 250:8 253:12 255:1 258:12 260:11 261:17 261:10 266:8 266:14 266:16 266:17 266:21 267:23 268:1 268:9 269:22 270:18 272:14 276:17 278:11 281:25 285:7 285:21

**what's**(8) 49:5 201:11 229:23 234:19 236:5 253:12 255:19 261:9

**whatever**(4) 116:19 145:1 260:3 280:13
**what's**(18) 98:12 110:7 113:21 114:18 115:20 116:10 117:6 119:12 119:20 121:8 121:11 122:13 127:23 128:5 128:6 129:13 144:4 146:25

**when**(87) 14:14 14:18 14:20 14:22 15:15 19:12 21:19 22:11 29:1 31:13 33:15 37:12 38:21 39:25 42:14 45:20 47:17 48:4 48:7 48:10 48:17 50:16 50:19 57:24 58:1 59:6 59:9 59:9 61:9 63:14 64:7 67:24 68:11 68:13 68:22 69:7 69:10 69:13 70:25 71:8 72:4 75:2 75:4 75:5 75:11 78:8 99:13 99:18 101:4 101:8 101:11 132:11 153:2 160:11 161:16 161:16 171:19 183:8 191:6 191:13 193:8 200:11 204:9 206:13 215:22 218:7 218:17 221:17 225:18 229:5 241:2 243:6 243:25 245:2 256:9 256:9 258:12 264:3 264:22 269:5 272:4 272:5 272:7 272:22 274:16 276:2 277:25

**whenever**(1) 161:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**where**(103) 11:23  12:8  17:10  17:10  18:19  27:23  27:23  44:3  44:24  49:4  49:25  51:6  61:12  61:14  75:15  93:19  93:22  94:1  95:9  95:13  96:11  97:19  100:6  105:2  106:18  113:12  113:13  114:23  119:12  119:22  119:25  120:9  120:10  120:12  120:13  120:1  120:15  120:16  130:20  132:5  134:8  140:3  141:15  148:12  148:14  148:17  149:2  150:1  152:13  153:18  157:22  161:7  163:22  168:16  173:24  173:25  177:25  182:12  184:2  191:18  194:13  199:7  204:17  207:9  208:1  208:16  208:18  209:21  210:19  212:25  214:12  215:15  218:4  218:8  218:9  230:13  230:16  237:11  238:4  238:8  238:11  238:12  241:21  244:6  245:8  246:1  246:2  249:15  252:3  252:8  254:18  255:10  256:20  259:23  260:6  265:8  265:12  266:9  266:24  269:24  273:21  278:9  285:1

**whereas**(2) 35:23  257:19
**whether**(66) 24:21  25:12  25:16  26:8  29:15  29:17  30:6  30:8  36:1  36:4  36:13  43:14  53:11  54:2  54:15  54:16  54:18  55:25  56:22  66:1  67:17  67:23  68:4  71:14  73:23  81:6  81:9  82:23  83:17  84:10  84:13  98:4  123:19  124:4  126:15  143:22  145:20  158:21  163:1  165:7  179:7  181:11  187:20  189:10  193:25  198:17  200:5  202:11  205:10  209:1  214:4  216:9  216:18  235:10  235:15  235:16  235:2  235:20  240:3  240:17  243:19  254:12  270:24  272:11  272:12  283:18

**which**(124) 14:3  32:11  32:11  37:4  41:25  49:21  50:4  50:6  56:3  58:4  64:6  71:24  79:11  88:4  90:21  95:7  95:13  95:18  96:2  96:12  96:23  98:13  102:5  105:5  105:9  105:16  105:21  106:10  108:8  109:3  111:3  111:4  111:6  111:20  117:16  121:13  122:23  123:11  123:12  124:17  126:19  127:5  128:23  133:5  133:23  134:8  134:15  135:11  136:5  136:21  137:8  140:3  142:18  145:13  145:25  146:19  151:5  151:25  153:6  153:15  156:23  157:15  160:20  162:13  162:15  163:6  163:7  163:13  165:6  167:12  169:4  169:8  169:16  170:3  170:3  170:4  172:1  175:14  182:7  185:3  185:17  196:11  201:3  201:10  206:15  206:24  207:9  210:23  214:19  227:1  227:12  243:3  243:12  244:9  246:13  246:14  246:23  246:24  249:18  249:18  249:20  250:12  252:11  252:25  256:16  259:16  262:15  262:15  263:3  263:17  266:2  266:11  267:5  267:9  272:6  273:17  275:15  275:23  278:19  280:24  281:7  281:9  284:5

**while**(9) 16:8  19:20  74:25  187:4  203:19  223:20  226:12  261:23  282:4

**white**(10) 10:29
**whitman**(1) 191:21
**whittman**(2) 9:44  285:3
**who**(30) 15:10  15:23  17:6  17:13  18:25  20:20  20:24  21:2  23:2  28:18  31:4  33:6  47:9  47:19  67:19  68:20  70:11  71:17  72:7  72:17  73:13  73:19  117:11  150:8  174:2  198:22  200:16  200:16  283:23  284:1

**whoever**(1) 90:2
**whoever's**(1) 133:23
**whole**(17) 19:3  38:19  78:18  78:24  96:15  100:4  101:23  117:14  118:5  147:12  158:2  174:7  183:17  183:19  250:8  250:14  259:8

**whom**(1) 101:14
**whose**(2) 186:7  211:15

**why**(56) 21:4  21:10  30:3  32:20  38:10  42:5  65:22  76:25  91:11  96:3  108:24  109:17  111:23  114:17  119:4  120:6  122:3  122:10  135:17  136:1  137:18  138:14  138:19  143:12  143:3  144:24  146:11  148:4  149:13  149:15  153:6  155:7  163:19  168:9  175:24  202:24  219:2  239:2  249:12  251:1  251:18  252:2  253:2  253:10  253:13  253:14  253:21  253:22  254:13  265:3  265:6  266:20  267:10  267:1  278:16  282:16

**wife**(1) 282:25
**wild**(1) 9:48
**wilderotter**(5) 72:2  72:7  72:16  72:25  74:15  89:19  107:12  109:12  111:7  111:12  112:15  112:18  112:20  114:9  116:19  116:19  116:2  139:5  139:11  154:4  155:17  171:17  171:22  173:21  175:1  176:19  194:10  206:2  219:2  241:11  242:3  262:15  264:9  267:20  268:5  269:14  281:24  282:1  283:18  283:23  284:3  284:5  284:17  284:20  285:16

**willing**(4) 89:1  135:8  145:4  145:7
**wilmer**(2) 6:20  10:33
**wilmington**(14) 1:12  1:36  2:16  2:37  3:8  3:29  4:9  4:25  4:31  4:37  4:43  5:14  7:29  11:1
**wilson**(1) 6:13
**win**(6) 119:17  134:9  139:5  139:11  139:16  226:10

**winning**(2) 119:18  135:23
**wishes**(1) 281:25

**with**(301) 11:6  12:14  14:11  14:24  15:3  16:2  16:7  18:16  18:20  19:22  19:22  19:24  20:3  20:4  20:6  22:3  23:6  23:10  23:25  24:10  24:14  24:20  25:4  25:5  25:7  25:20  26:3  26:6  26:12  26:22  27:4  27:11  28:6  29:10  30:14  30:19  30:23  32:7  34:3  34:14  35:16  35:20  36:2  37:14  38:17  40:8  40:16  42:16  43:8  45:21  46:10  46:23  47:4  47:12  47:18  47:19  48:14  48:17  49:8  49:20  50:10  50:25  51:1  51:11  52:13  52:21  54:5  55:11  58:7  58:11  59:1  59:23  59:24  59:25  60:10  60:17  61:12  61:14  62:12  62:2  62:21  62:23  63:2  67:16  67:22  68:3  68:20  69:8  69:21  70:2  70:5  70:16  71:4  73:4  73:8  73:9  73:23  74:17  74:21  75:9  75:15  75:17  75:21  87:9  81:16  81:21  83:16  85:14  86:15  87:22  88:9  88:13  88:20  89:23  90:1  90:13  92:8  92:9  96:3  96:5  96:5  97:12  97:23  98:6  98:9  98:12  99:2  99:9  99:11  100:12  100:2  101:3  104:11  104:14  104:23  106:16  106:1  106:23  107:19  108:4  110:5  110:19  112:14  113:15  114:18  115:25  117:2  118:5  118:7  118:16  119:19  120:23  127:14  130:23  131:25  134:25  135:18  136:11  138:10  143:11  143:20  145:2  146:6  146:20  147:8  150:11  152:13  153:7  155:8  159:4  159:12  159:13  161:6  170:21  171:7  174:22  175:3  182:7  182:17  183:10  184:2  185:8  189:5  186:8  187:6  187:6  187:17  187:23  188:9  188:19  189:13  189:16  190:20  190:24  191:7  191:8  191:9  191:16  191:25  194:4  194:4  194:5  195:8  195:23  196:4  197:13  198:22  201:18  201:24  202:11  204:1  204:22  204:2  205:1  206:23  207:5  208:3  208:5  208:15  208:17  209:9  210:22  211:6  211:19  212:21  212:23  213:21  213:23  214:12  215:22  216:  218:16  221:8  223:18  224:9  225:1  226:8  226:14  226:19  226:21  227:1  227:17  228:3  230:23  231:1  231:16  232:21  234:1  234:12  236:12  236:12  239:7  240:7  240:13  242:1  244:7  244:16  244:20  245:4  245:15  245:25  247:10  248:17  250:12  252:20  256:14  256:17  257:7  259:11  260:8  260:10  261:5  261:12  262:2  262:11  263:18  265:17  265:19  266:4  266:9  266:12  266:25  267:10  267:16  268:17  269:18  270:10  270:14  272:18  273:8  274:21  275:3  275:12  278:3  278:17  282:9  282:23  283:5  283:14  284:12  284:13

**with**(1) 286:4
**withdraw**(5) 77:21  79:8  86:18  195:8
**withdrawn**(1) 83:15
**withdrew**(3) 26:22  26:23  27:1
**within**(19) 30:9  85:17  105:9  132:21  134:24  148:19  154:20  154:23  162:9  171:20  172:1  237:21  237:23  239:18  239:22  241:1  241:1  241:8  241:14

**without**(26) 29:25  39:11  39:17  90:25  107:13  118:6  118:7  124:1  138:7  144:8  162:24  165:1  206:25  208:5  208:18  208:22  243:17  249:11  256:1  261:5  262:2  277:3  277:7  277:10  277:19  278:4

**witness**(31) 11:9  11:18  29:24  36:7  52:25  55:10  55:12  82:12  85:14  89:12  90:24  92:25  93:2  93:5  102:24  160:6  161:18  180:20  181:7  183:2  194:20  197:5  198:25  200:25  224:24  260:20  282:9  283:10  285:1  285:9  285:17

**witness's**(3) 60:17  160:17  176:9
**witnesses**(6) 36:3  89:24  197:7  197:25  198:22  287:5

**witness's**(1) 103:7
**won't**(2) 28:7  89:10
**word**(1) 224:25

**words**(6) 39:15  238:14  252:18  276:18  276:19  276:21

**work**(58) 11:25  54:20  54:22  55:6  87:24  88:14  90:1  90:21  91:7  91:23  94:6  95:20  99:12  99:15  103:17  113:25  129:12  134:24  158:11  159:2  159:3  161:6  183:20  186:5  186:12  190:17  192:19  192:20  195:7  195:15  199:11  199:13  199:18  201:17  203:12  210:22  216:22  223:17  224:10  225:1  245:19  247:25  248:1  255:21  255:21  256:10  256:17  256:24  256:24  257:1  257:20  258:14  259:12  261:3  261:3  262:3  262:6  262:17

**worked**(9) 92:7  187:23  189:13  189:16  194:3  202:7  236:13  236:17  253:24

**working**(10) 55:4  95:13  98:9  192:16  195:23  196:5  201:1  247:17  254:9  258:9

**workout**(1) 14:7
**works**(2) 84:25  172:25
**workshop**(5) 98:18  98:24  98:25  193:22  194:1

**workshops**(1) 98:15
**world**(17) 96:24  126:25  127:12  137:19  137:20  138:5  138:14  139:15  142:7  143:4  155:21  156:1  158:23  174:1  217:10  271:2  271:3
**world-class**(1) 98:24
**worrying**(1) 246:16
**worse**(3) 48:5  110:10  116:3
**worst**(1) 48:1
**worth**(7) 21:8  102:1  102:2  138:6  173:20  208:2  271:19

**worthwhile**(1) 80:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **would**(257) 13:12 14:13 26:9 27:8 27:10 27:23 27:23 27:25 36:1 36:23 37:6 38:25 39:11 39:12 39:21 40:5 40:6 40:10 41:14 41:23 42:12 56:14 59:11 59:21 60:1 60:21 61:8 62:12 65:7 65:7 67:17 67:23 68:5 69:23 73:4 73:7 73:7 74:9 74:12 78:11 80:21 81:20 81:22 85:8 85:13 85:15 86:5 86:11 87:20 89:11 89:25 91:6 97:11 102:13 106:24 107:1 108:10 110:16 111:3 111:4 111:17 120:3 120:10 120:12 120:13 120:14 125:7 125:10 126:24 128:12 128:1 130:3 130:16 131:3 134:12 138:7 140:11 141:6 141:6 141:14 144:11 144:15 144:16 144:18 145:21 146:24 148:13 148:14 150:17 152:14 153:9 153:15 158:3 158:6 158:6 158:7 159:21 161:9 161:24 161:25 162:8 163:9 163:10 164:2 166:24 167:1 168:3 168:10 168:13 168:15 168:17 168:1 169:8 170:16 171:6 171:8 174:21 175:5 176:5 176:7 177:7 177:20 177:22 178:1 184:9 184:12 184:15 184:18 184:21 184:2 187:25 188:2 193:4 193:9 193:25 194:8 194:17 194:24 195:14 195:16 199:16 200: 203:21 204:22 204:24 205:5 205:12 206:5 207:25 207:25 208:1 208:19 208:23 209:3 209:4 210:2 210:4 211:2 211:11 211:20 213:2 213:12 213:15 213:20 214:9 215:13 215:20 215:24 215:25 216:18 216:21 216:23 217:14 217:14 217:17 218:2 218:1 219:7 220:5 220:25 220:25 221:2 222:4 222:9 222:12 223:20 224:8 225:4 226:14 228:3 229:2 230:2 232:5 234:9 235:11 235:16 236:20 237:9 237:22 240:8 241:6 241:15 241:22 241:25 243:16 243:16 243:20 244:6 244:8 244:21 246:23 246:25 247:6 247:7 247:8 247:20 249:14 252:10 252:23 252:25 253:2 256:14 257:7 259:9 259:11 259:21 260:3 260:16 260:17 261:1 262:10 263:18 263:19 264:6 264:8 268:9 268:14 269:23 270:5 270:7 270:24 272:7 272:12 272:13 272:14 274:22 276:21 277: 277:4 277:5 277:7 278:4 280:15 281:9 281:16 283:22 286:1 | | **yes**(301) 13:21 14:2 14:13 15:17 15:22 16:4 16:14 17:5 17:12 18:8 18:18 18:22 19:17 21:1 21:6 21:18 21:20 22:2 22:9 23:1 24:23 26:7 27:10 28:15 29:23 30:2 30:10 30:16 30:23 31:10 31:14 32:3 33:4 33:12 33:19 33:22 34:2 34:13 34:15 35:20 37:19 37:24 38:5 39:7 39:12 39:16 44:5 44:9 44:20 44:23 45:4 45:7 45:9 45:14 45:22 46:19 46:22 46:25 47:2 47:6 47:8 47:14 47:23 47:25 48:2 48:6 48:9 48:13 48:16 48:24 49:5 49:7 49:11 49:15 49:24 53:8 53:14 54:8 54:13 55:15 56:8 56:19 57:25 58:17 58:20 62:23 63:1 63:4 63:9 66:10 67:5 68:10 69:10 70:1 70:5 70:16 70:24 72:1 72:12 72:14 72:21 73:15 73:1 73:21 74:19 75:20 77:16 79:25 80:4 80:1 80:8 81:8 81:11 81:22 81:25 82:4 82:8 83:12 84:5 84:12 85:18 85:25 86:8 93:11 94:24 95:23 96:19 97:25 105:18 108:12 110:21 113:6 114:16 114:20 115:6 117:4 119:9 122:2 123:16 124:21 125:15 125:25 126:5 126:20 129:3 132:3 136:18 142:15 142:19 146:23 147:24 148:24 150:3 154:1 157:13 157:16 158:12 159:7 160:10 172:16 172:20 172:23 176:23 179:25 180: 180:7 181:22 182:1 182:5 182:13 182:16 183:7 184:8 184:11 184:14 184:17 184:20 184:23 185:10 185:15 185:19 186:21 187:16 188:2 188:16 189:25 190:11 190:1 192:11 193:3 193:7 194:15 195:13 195:1 196:12 196:17 196:20 196:22 197:1 197:6 197:8 199:22 200:2 202:13 202:22 203:23 204:3 204:12 205:8 206:3 206:8 206:12 207:3 207:18 207:21 208:13 209:1 210:17 211:11 211:23 212:12 214:1 214:15 214:17 216:15 217:7 217:9 217:25 219:23 220:2 220:14 220:16 221:2 222:22 223:1 223:10 224:4 224:7 224:18 225:3 225:22 225:24 226:5 226:8 226:25 227:5 228:11 231:13 231:18 231:24 232:19 232:25 233:4 233:14 234:15 234:17 235:1 235:24 238:20 239:11 239:13 241:21 242:9 242:20 242:23 242:25 243:5 243:10 245:4 245:18 246:12 247:22 248:2 248:10 248:20 248:23 248:25 251:4 251:16 | | **you**(301) 11:15 11:17 11:23 12:2 12:9 12:12 12:14 12:20 12:24 12:25 13:2 13:1 13:18 13:25 14:22 15:10 16:1 16:7 17:3 17:15 17:19 17:22 17:24 18:6 18:9 18:24 19:6 20:7 20:19 20:19 20:24 21:4 21:10 21:23 22:20 23:2 23:4 23:16 23:18 24:3 24:13 24:20 25:11 25:15 26:3 26:5 26:25 28:11 28:11 28:16 29:1 29:9 29:9 29:12 29:24 30:10 30:12 30:14 30:19 31:11 31:13 31:15 31:18 32:10 33:13 33:18 33:20 34:4 34:16 35:4 35:16 35:16 36:12 36:12 36:15 36:16 36:23 37:7 37:12 38:2 38:4 38:19 38:21 39:14 39:18 40:16 40:2 41:7 41:12 41:18 42:1 42:12 42:16 42:2 42:24 43:5 43:11 43:13 43:13 43:15 43:1 43:19 44:2 44:6 44:10 44:13 44:18 45:2 45:5 45:5 45:8 45:10 45:13 45:20 46:3 46:8 46:8 46:12 46:18 46:23 47:3 47:7 47:18 48:17 48:18 48:21 49:4 49:8 49:9 49:12 49:23 50:4 50:9 50:10 50:11 50:1 50:20 50:25 51:1 51:1 51:7 51:10 51:11 51:13 51:16 51:16 51:17 51:20 52:3 52:3 52:5 52:7 52:11 52:13 52:14 52:16 52:24 53:5 53:6 53:15 53:21 55:3 55:13 55:16 55:18 55:24 56:4 56:5 56:5 56:6 56:15 56:15 56:16 56:16 116:10 116:12 57:13 57:16 57:18 57:18 57:20 58:1 58:1 58:4 58:6 58:8 58:14 58:21 58:23 59:4 59:10 59:14 59:16 59:18 59:20 60:1 60:2 61:2 61:3 61:6 61:9 61:10 61:12 61:15 61:20 61:20 61:23 62:3 62:13 62:20 62:2 62:23 63:5 63:6 63:12 63:21 64:5 64:7 64:11 64:15 65:3 65:10 65:21 65:23 65:25 66:1 66:5 66:6 67:15 67:5 67:19 68:1 68:3 68:20 68:22 69:11 69:15 69:16 69:17 69:18 69:22 69:22 69:23 70:2 70:4 70:25 71:3 71:4 71:4 71:8 71:14 71:15 71:15 71:21 71:25 72:4 72:7 72:22 73:1 73:4 73:8 73:8 73:9 74:1 74:6 74:17 74:18 74:24 74:25 75:2 75:3 74:5 74:7 75:10 75:14 75:14 75:15 75:21 75:21 76: 76:4 76:10 76:11 77:14 77:15 78:1 78:8 78:8 78:11 78:20 79:10 | | **you**(301) 79:14 79:22 79:23 80:1 80:14 80:17 80:21 81:5 81:7 81:9 81:12 81:18 82:1 82:2 82:3 82:5 82:6 82:10 82:15 82:22 83:6 83:10 83:17 84:3 84:7 84:9 84:13 85:5 85:20 85:22 85:24 86:4 86:9 86:12 86:23 87:12 87:17 87:18 87:21 87:24 88:22 89:2 89:4 89:8 89:8 89:11 89:15 89:18 89:21 90:1 90:4 90:9 91:12 91:16 91:18 91:22 92:14 92:16 92:17 92:23 93:1 93:2 93:6 93:10 93:16 93:19 93:23 94:1 94:23 95:16 95:21 96:17 96:18 96:22 97:3 97:7 97:13 97:23 98:6 98:15 99:4 99:17 100:21 100:22 101:7 101:8 101:14 101:16 102:7 102:8 102:8 102:9 102:16 102:18 102:19 103:8 103:10 103:17 103:23 104:3 104:6 104:7 104:8 105:12 106:5 106:6 106:8 106:9 106:11 106:23 107:15 107:18 107:21 108:1 108:3 108:13 108:13 108:16 108:16 108:21 109:17 109:19 109:24 110:13 110:14 110:15 110:22 110:25 111:1 111:8 111:9 111:13 111:17 111:17 111:20 111:21 111:21 112:9 112:16 112:17 112:18 112:22 112:22 113:3 113:17 113:20 114:10 114:11 114:14 114:19 114:21 115:5 115:7 115:7 115:12 115:18 116:4 116:4 116:5 116:10 116:12 116:12 117:2 117:14 117:23 118:1 118:11 118:14 119:4 119:8 120:12 120:12 120:15 120:16 120:21 121:5 121:13 121:20 121:24 122:4 122:18 122:21 122:22 122:23 122:25 123:3 123:4 123:6 123:7 123:7 123:10 123:15 123:17 123:23 123:23 123:24 123:25 124:4 124:6 124:13 124:19 124:22 125:10 125:13 125:18 125:19 125:21 125:22 126:6 126:9 126:24 127:14 127:21 127:21 128:12 128:15 129:16 129:21 130:3 130:7 130:7 130:16 130:18 131:11 131:12 131:15 131:15 131:25 132:11 132:11 132:14 133:6 133:20 134:1 134:12 134:13 134:23 135:3 135:5 135:9 135:13 136:15 137:2 137:8 137:11 137:16 138:17 138:18 138:18 138:25 139:24 140:1 140:10 140:11 140:13 140:22 141:3 141: 141:6 141:7 141:10 141:11 141:14 141:16 142:3 142:10 142:10 142:11 142:12 142:16 143:12 144:2 144:5 144:15 144:16 144:18 145:15 145:20 146:1 146:2 146:4 146:5 146:13 146:14 146:15 146:16 146:19 146:20 146:24 147:7 147:21 148:2 148:17 148:22 148:25 149:21 150:1 150:4 150:4 151:17 151:19 |
| **wouldn't**(9) 77:19 87:11 87:12 181:4 191:17 212:15 216:22 238:25 264:7 | | | | | | | |
| **wouldn't**(2) 116:5 152:14 | | | | | | | |
| **would've**(2) 145:18 155:12 | | | | | | | |
| **wow**(1) 102:20 | | **yes**(32) 252:21 252:22 253:19 254:14 255:15 255:23 256:13 257:10 260:22 262:13 263:21 265:15 265:20 266:15 268:9 268:21 269:1 269:19 270:3 270:24 271:17 274:10 274:15 274:20 275:18 276:4 277:12 277:24 279:17 279:24 280:11 280:18 | | | | | |
| **write**(2) 51:10 56:4 | | | | | | | |
| **writes**(5) 50:5 50:9 50:24 56:13 73:1 | | | | | | | |
| **writing**(3) 31:9 33:11 51:17 | | | | | | | |
| **writings**(1) 36:17 | | | | | | | |
| **written**(4) 91:19 105:12 189:8 189:11 | | **yesterday**(10) 44:7 76:24 88:5 88:12 90:13 90:23 106:11 254:16 256:10 262:4 | | | | | |
| **wrong**(9) 76:24 76:24 130:15 145:6 145:6 146:10 161:6 189:20 212:15 | | | | | | | |
| **wrote**(1) 109:14 | | **yesterday's**(1) 283:12 | | | | | |
| **www.diazdata.com**(1) 1:45 | | **yet**(5) 192:5 198:11 279:12 279:13 283:20 | | | | | |
| **yeah**(41) 23:17 33:17 35:6 41:3 42:14 56:1 62:16 65:5 68:18 75:17 103:21 112:25 114:22 115:12 120:22 126:3 127:1 129:11 131:16 147:9 160:1 160:3 160:6 161:15 170:8 210:12 223:5 223:8 223:21 224:1 224:11 224:24 247:20 250:25 254:19 257:22 257:25 264:14 264:25 275:14 278:3 | | **yield**(2) 145:13 281:7 | | | | | |
| | | **yields**(4) 145:15 145:16 281:13 281:16 | | | | | |
| | | **york**(8) 2:9 2:28 2:44 3:22 12:1 94:17 95:8 201:3 | | | | | |
| **year**(19) 49:10 49:21 52:7 94:6 94:12 95:18 96:22 97:1 98:17 99:19 101:12 101:13 102:19 102:20 102:21 186:24 195:11 247:18 274:19 | | | | | | | |
| **year."**(1) 56:6 | | | | | | | |
| **years**(8) 12:13 12:15 12:22 12:23 94:11 94:19 146:4 281:19 | | | | | | | |
| **yep**(5) 128:21 134:16 135:2 135:4 142:17 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **you**(301) | 152:14 152:15 152:16 152:16 152:17 153:3 153:4 153:21 154:7 154:12 154:15 154:20 154:21 155:3 155:7 156:12 156:12 156:20 156:25 157:3 157:9 157:15 157:17 157:19 158:10 158:11 158:14 158:14 158:15 158:22 159:3 159:4 159:12 159:4 159:13 159:14 159:15 159:22 159:2 159:24 159:24 159:24 160:4 160:11 160:11 160:12 160:15 161:16 161:22 161:23 161:23 161:23 162:1 162:16 162:1 162:25 164:3 164:8 164:11 164:11 164:1 164:16 164:16 164:16 164:17 164:19 164:19 164:25 164:25 165:3 165:9 165:11 165:11 165:13 165:24 165:24 166:3 166:7 166:7 166:8 166:9 166:21 166:22 167:11 167:14 167:16 167:23 168:6 168:6 168:12 169:16 169:18 169:21 169:23 169:25 170: 170:4 170:5 170:5 170:25 171:4 171:9 171:9 172:7 172:10 172:15 172:18 173:11 173:18 173:20 173:24 174:3 174:19 174:1 174:20 175:4 175:7 175:18 175:18 175:24 176:3 176:22 176:24 177:4 177:5 177:18 177:18 177:20 178:1 178:6 178:12 178:12 178:15 178:19 178:20 178:21 179:4 179:4 179:7 179:8 179:9 180:4 180:8 180:22 181:3 181:10 181:23 182:6 182:12 182:14 182:24 182:25 183:3 183:9 183:16 183:17 183:23 183:24 184:1 184:4 184:5 184:21 184:25 185:8 185:11 185:16 185:24 185:2 186:1 186:20 187:1 187:4 187:5 187:5 187:11 187:12 187:15 187:19 187:23 188:6 188:6 188:6 188:6 188:11 188:19 188:20 189:3 189:4 189:4 189:4 189:13 189:16 189:19 189:23 190:1 190:1 190:15 190:17 190:22 190:23 190:24 191:2 191:4 191:6 191:11 191:14 191:24 191:25 192:1 192:9 192:9 192:15 192:20 192:22 193:1 193:2 193:4 193:4 193:11 193:11 193:17 193:24 193:25 193:25 194:1 194:8 194:12 194:12 194:13 194:13 194:17 194:19 194:19 194:22 194:24 195:2 195:10 195:17 195:23 195:2 196:10 196:12 196:15 196:15 196:18 196:21 196:23 196:24 197:2 197:4 197:7 197:7 197:10 197:12 197:17 197:19 198:3 198:8 198:23 198:25 199:10 199:17 199:21 199:22 200:13 200:16 201:6 201:7 201:8 201:9 201:10 201:12 201:18 202:3 202:9 202:15 202:18 202:20 203:2 203:11 203:15 203:19 203:20 203:21 204:1 204:2 204:24 205:4 205:5 205:15 205:17 205:19 205:20 206:2 206:5 206:11 206:14 |
| **you**(301) | 207:5 207:9 207:14 207:15 207:15 207:19 207:24 208:23 208:24 208:25 209:1 209:24 210:2 210:10 210:15 212:10 211:7 211:7 211:8 211:13 211:25 212:10 212:20 212:21 212:22 212:24 213:13 213:23 214:6 214:11 214:13 214:12 214:20 215:2 215:5 215:9 215:9 215:10 215:10 215:12 215:17 215:18 215:18 215:22 215:23 215:23 215:25 216:10 216:10 216:13 216:16 217:18 217:22 217:24 218:13 218:17 218:17 218:20 218:24 219:3 219:4 219:13 219:14 219:19 219:24 219:25 220:3 220:6 220:6 220:7 220:13 220:17 221:4 221:9 221:10 221:10 221:17 221:19 222:2 222:5 222:12 222:19 222:23 223:2 223:2 223:3 224:9 224:20 225:9 225:11 225:15 225:16 225:20 225:21 225:25 226:3 226:6 226:7 226:9 226:10 226:10 226:10 226:11 226:1 226:13 226:14 226:16 226:21 227:1 227:2 227:7 227:16 228:1 228:7 228:12 228:14 228:17 229:5 229:5 229:9 229:10 229:11 229:21 230:1 230:3 230:7 230:8 230:9 230:13 231:14 231:15 231:16 231:19 231:24 232:5 232:7 232:22 232:20 233:1 233:2 233:6 233:15 233:21 233:23 234:8 234:12 234:12 234:18 235:8 235:10 235:19 236:1 236:10 236:15 236:23 236:2 237:1 237:4 237:5 237:6 237:10 238:8 238:17 238:17 238:21 239:8 240:2 240:8 240:8 241:2 241:2 241:15 241:17 241:18 241:19 241:21 241:24 242:2 242:10 242:1 242:12 243:6 243:6 243:7 243:13 243:14 243:24 244:10 244:18 245:3 245:6 245:13 245:16 245:21 245:22 246:8 246:1 246:18 246:19 246:20 247:1 247:2 247:16 247:20 247:25 248:3 248:7 248:11 248:14 248:21 249:1 249:4 249:4 249:8 249:11 249:12 249:13 249:13 249:14 249:16 249:23 250:4 250:5 250:8 250:11 250:11 250:12 250:18 251:6 251:10 251:7 251:23 252:3 253:21 253:21 254:5 254:6 254:6 254:10 254:11 254:18 254:19 254:22 255:13 255:20 255:24 256:9 256:10 256:14 256:22 256:23 257:7 257:7 257:14 257:20 257:23 258:4 258:8 258:8 258:22 258:22 258:22 259:2 259:3 259:11 259:14 259:21 259:21 260:1 260:3 260:16 260:23 261:1 261:5 261:17 261:23 262:2 262:4 |
| **you're**(42) | 41:5 44:18 55:3 55:17 57:9 61:10 68:17 72:5 160:9 162:17 163:14 163:22 166:5 168:1 168:3 169:17 173:2 174:22 175:17 179:1 179:1 179:12 179:13 179:13 188:13 200:1 222:12 227:9 227:10 240:17 243:7 243:25 252:6 255:1 259:16 261:19 266:8 269:5 273:1 277:22 277:25 278:1 |
| **you've**(32) | 33:15 33:18 41:25 79:5 157:14 159:5 164:21 164:21 164:22 164:23 164:24 166:5 169:19 169:23 171:3 173:1 174:13 181:14 195:10 195:20 198:11 209:9 226:1 244:14 244:14 245:14 246:4 257:3 262:5 262:23 270:13 282:11 |
| **young**(1) | 4:4 |
| **your**(301) | 11:4 11:5 11:8 11:11 11:25 12:2 12:16 13:9 13:18 13:24 24:5 24:8 24:13 25:8 25:9 25:14 26:1 28:4 28:14 28:15 29:3 29:10 29:13 30:2 30:6 30:18 31:13 31:16 33:14 33:21 35:25 40:12 40:25 41:9 41:23 42:3 43:11 43:12 44:17 44:10 45:2 45:5 48:12 49:1 50:17 51:16 53:5 54:14 54:24 55:7 55:9 56:4 56:5 57:8 58:5 60:14 64:13 64:24 65:1 65:15 65:21 67:2 67:8 68:1 69:2 69:4 69:7 69:16 69:17 71:3 71:6 71:23 72:4 72:15 72:24 73:4 73:22 74:2 74:17 76:15 77:14 77:14 79:22 80:14 80:15 80:15 80:16 80:23 80:25 81:4 82:11 83:21 85:8 85:14 85:20 85:25 86:20 87:15 90:10 91:11 92:4 92:11 92:13 92:19 92:19 92:2 93:10 94:22 95:21 96:17 102:15 102:23 103:4 103:10 103:13 105:19 105:2 105:23 106:2 106:9 107:19 112:22 115:4 115:8 118:10 120:18 120:19 124:19 125:2 127:18 127:24 128:5 128:6 130:10 131:3 132:1 132:2 141:2 142:13 144:4 147:7 150:1 154:11 156:24 157:10 158:11 160:1 165:8 171:4 173:16 176:7 176:14 176:14 176:25 179:9 179:18 180:9 180:20 181:24 182:2 182:6 182:7 182:7 182:12 183:8 183:22 184:7 185:9 185:16 185:17 185:20 186:1 187:25 188:12 188:14 188:18 189:2 189:14 189:23 190:4 190:8 190:9 190:10 190:14 192:16 193:1 194:13 195:11 196:6 196:10 196:16 196:23 196:25 197:2 197:3 197:10 197:17 198:1 199:19 200:23 201:13 201:17 201:18 203:19 205:20 206:10 206:15 207:15 207:20 207:23 209: 209:13 211:13 215:2 216:11 216:12 217:4 217:11 219:4 219:10 221:25 222:7 223:3 223:9 223:12 223:14 223:18 224:6 224:19 224:22 225:11 225:12 225:16 226:14 228:2 229:1 231:24 232:8 232:21 233:1 235:25 238:1 240:10 241:2 242:2 242:5 242:22 242:24 243:3 243:14 243:24 245:6 247:15 247:17 248:7 248:8 248:12 248:21 248:24 249:5 249:8 250:6 251:14 253:18 253:22 254:9 254:10 254:15 254:2 255:20 255:20 255:25 256:17 257:24 258:10 258:13 258:15 258:22 259:5 259:12 259:21 259:24 260:7 260:13 260:20 260:23 261:2 261:3 261:11 261:17 261:24 261:25 262:3 262:12 262:17 262:18 262:22 263:1 |
| **you'll**(10) | 96:21 113:25 115:23 118:25 142:5 143:6 145:6 148:13 151:11 156:23 |
| **you're**(33) | 52:19 64:15 110:11 112:17 112:18 114:5 114:11 114:12 121:15 124:10 126:9 129:9 129:17 130:1 134:6 135:14 137:14 138:12 138:16 138:19 140:12 140:23 141:1 143:5 144:1 148:7 149:25 153:2 153:7 153:13 153:14 154:6 156:10 |
| **you've**(34) | 94:22 101:19 103:17 105:16 105:16 112:11 114:15 118:9 118:11 120:18 120:18 120:19 121:6 121:24 122:7 123:14 125:24 129:1 129:23 131:19 136:16 140:21 141:12 141:18 142:8 142:9 142:10 142:22 146:18 147:5 147:21 147:23 153:1 154:10 |
| **zell**(9) | 5:4 143:19 145:7 201:23 202:16 202:17 204:4 278:17 278:20 |
| **zell's**(1) | 202:3 |
| **zensky**(101) | 2:20 76:15 76:23 85:6 85:8 85:11 85:18 85:20 88:2 89:2 90:1 90:10 90:10 91:12 92:5 103:4 103:8 105:23 106:5 106:25 107:12 147:10 147:12 160:14 160:25 173:23 173:23 176:7 176:18 180:20 180:24 181:6 181:9 183:4 183:5 185:20 185:23 190:5 190:7 200:22 201:15 201:16 205:20 205:23 205:25 206:1 219:17 219:10 219:12 221:25 222:4 222:7 222:9 222:14 222:17 223:12 223:15 224:18 224:22 225:15 225:16 225:17 244:10 250:18 251:10 251:11 251:23 253:17 260:15 260:20 260:23 260:25 261:8 261:9 261:15 261:17 261:21 264:11 264:14 264:19 264:21 269:5 269:7 272:20 272:21 273:23 273:25 281:22 282:9 282:15 282:15 282:18 283:1 283:4 283:6 284:6 |
| **zensky's**(2) | 77:8 260:8 |
| **zero**(10) | 129:20 131:5 133:2 138:7 155:20 168:22 169:7 213:20 224:14 239:5 |
| **zero-percent**(1) | 233:12 |
| **zloto**(1) | 8:11 |
| **zoom**(1) | 254:19 |
| **zuckerman**(5) | 3:32 5:37 17:14 17:15 17:20 |
| **'alternative'**(1) | 65:3 |
| **'working**(1) | 73:2 |
| **"here**(1) | 65:2 |
| **"kevin'**(1) | 64:11 |
| **"likely"**(1) | 140:8 |
| **"okay**(1) | 56:13 |
| **"stella**(1) | 49:16 |
| **"still**(1) | 51:10 |
| **"the**(2) | 50:14 65:6 |
| **"with**(1) | 52:18 |
| **march**(1) | 286:22 |
| **you**(106) | 264:22 265:1 265:4 265:8 265:8 265:12 265:18 265:24 265:24 266:6 266:1 266:20 267:10 267:13 267:14 267:18 267:23 268:10 268:16 268:21 268:23 268:24 269:3 269:3 269:3 269:11 269:17 269:19 270:6 270:9 270:11 270:18 270:19 270:21 270:24 271:5 271:18 271:23 272:4 272:4 272:5 272:6 272:11 272:13 272:16 272:22 272:23 273:3 273:7 273:13 273:19 274:1 274:11 274:16 274:17 274:24 274:22 275:4 275:7 275:16 275:19 275:25 276:2 276:5 276:6 276:10 277:2 277:17 277:20 277:25 278:7 278:12 279:1 279:3 279:4 279:15 279:22 279:23 280:2 280:10 280:12 280:16 280:19 280:21 280:21 281:2 281:3 281:11 282:11 282:25 282:22 282:23 283:4 283:5 283:8 283:15 283:21 283:25 284:9 284:12 284:21 284:21 286:6 286:12 286:13 |
| **you'd**(7) | 51:19 57:1 87:10 242:4 247:17 257:2 279:18 |
| **you'll**(6) | 49:2 64:9 72:1 256:20 263:5 |
| **your**(46) | 263:23 263:24 264:11 264:15 264:19 265:9 265:12 266:11 266:12 266:17 267:10 267:24 268:7 268:11 268:23 268:25 269:10 269:22 270:1 270:15 271:6 271:8 271:18 271:23 272:18 273:18 273:23 274:5 275:15 275:16 275:20 276:18 276:18 279:1 279:18 279:20 279:22 280:17 281:22 282:1 282:3 282:12 282:16 282:18 282:22 286:5 |
| **yourself**(5) | 78:11 120:12 190:18 195:24 283:6 |