IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 08-13141-KJC |
| | ) | |
| | ) | |
| TRIBUNE COMPANY, | ) | Chapter 11 |
| | ) | |
| | ) | Courtroom 5 |
| | ) | 824 Market Street |
| Debtors. | ) | Wilmington, Delaware |
| | ) | |
| | ) | March 10, 2011 |
| | ) | 10:00 a.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Debtors: | Sidley Austin, LLP |
| | BY: JAMES CONLAN, ESQ. |
| | BY: JAMES BENDERNAGEL, ESQ. |
| | BY: JAMES DUCAYET, ESQ. |
| | One South Dearborn |
| | Chicago, IL 60603 |
| | (312) 853-7000 |
| | |
| | Cole, Schotz, Meisel, Forman |
| | & Leonard, P.A. |
| | BY: NORMAN PERNICK, ESQ. |
| | 500 Delaware Ave., Ste. 1410 |
| | Wilmington, DE 19801 |
| | (302) 652-3131 |
| | |
| ECRO: | BRANDON McCARTHY |
| | |
| Transcription Service: | DIAZ DATA SERVICES |
| | 331 Schuylkill Street |
| | Harrisburg, Pennsylvania 17110 |
| | (717) 233-6664 |
| | www.diazdata.com |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For JP Morgan:                    Davis Polk & Wardwell
                                  BY: ELLIOT MOSKOWITZ, ESQ.
                                  BY: BENJAMIN KAMINETZKY, ESQ.
                                  BY: DONALD S. BERNSTEIN, ESQ.
                                  BY: MICHAEL RUSSANO, ESQ.
                                  BY: DENNIS GLAZER, ESQ.
                                  BY: LYNN BUSATH, ESQ.
                                  450 Lexington Avenue
                                  New York, NY 10017
                                  (212) 450-4000

                                  Richards Layton & Finger
                                  BY: BOB STEARN, ESQ.
                                  BY: MARK COLLINS, ESQ.
                                  One Rodney Square
                                  920 North King Street
                                  Wilmington, DE  19801
                                  (302) 651-7700

For Tribune:                      Tribune Company
                                  BY: DON LIEBENTRITT, ESQ.
                                  435 North Michigan Avenue
                                  Chicago, IL 60611
                                  (312) 222-9100

For EGI-TRB & Sam Zell:           Jenner & Block
                                  BY:  CATHERINE STEEGE, ESQ.
                                  BY: ANDREW VAIL, ESQ.
                                  353 North Clark Street
                                  Chicago, IL  60654-3456
                                  (312) 923-2952

                                  Blank Rome, LLP
                                  BY: DAVID CARIKOFF, ESQ.
                                  1201 Market Street, Ste. 800
                                  Wilmington, DE  19801
                                  (302) 425-6434

For DBTCA:                        McCarter & English
                                  BY: KATHARINE MAYER, ESQ.
                                  BY: DAVID ADLER, ESQ.
                                  405 N. King Street, 8th Fl.
                                  Wilmington, DE  19801
                                  (302) 984-6312

APPEARANCES:
(Continued)

For Official Committee
of Unsecured Creditors:          Chadbourne & Parke, LLP
                                 BY: DAVID LEMAY, ESQ.
                                 BY: THOMAS MCCORMACK, ESQ.
                                 BY: HOWARD SEIFE, ESQ.
                                 BY: ANDREW ROSENBLATT, ESQ.
                                 BY: ROBERT SCHWINGER, ESQ.
                                 BY: MARC ASHLEY, ESQ.
                                 BY: BOB KIRBY, ESQ.
                                 BY: DOUGLAS DEUTSCH. ESQ.
                                 30 Rockefeller Plaza
                                 New York, NY 10112
                                 (212) 408-5100

                                 Landis, Rath & Cobb
                                 BY: ADAM G. LANDIS, ESQ.
                                 BY: DANIEl B. RATH, ESQ.
                                 919 Market Street, Suite 1800
                                 Wilmington, DE 19801
                                 (302) 467-4400

                                 Zuckerman Spaeder
                                 BY: GRAEM BUSH, ESQ.
                                 BY: ANDREW GOLDFARB, ESQ.
                                 BY: JAMES SOTTILE, ESQ.
                                 1800 M Street, NW
                                 Suite 1000
                                 Washington, DC 20036
                                 (202) 778-1800

For U. S. Trustee:               Office of the U. S. Trustee
            `                    BY:  DAVID KLAUDER, ESQ.
                                 844 King Street, Ste. 2207
                                 Wilmington, DE  19801
                                 (302) 573-6491

For Special Committee of the
Board of Directors:              Jones Day
                                 BY: LYNN MARVIN, ESQ.
                                 77 West Wacker
                                 Chicago, Illinois 60601
                                 (312) 782-3939

APPEARANCES:
(Continued)

For Credit Agreement Lenders: Young, Conaway, Stargatt &
                              Taylor
                              BY: BLAKE N. CLEARY, ESQ.
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, DE 19801
                              (302) 571-6600

                              Dewey LeBouef
                              BY: BRUCE BENNETT, ESQ.
                              BY: JAMES JOHNSTON, ESQ.
                              BY: JOSHUA MESTER, ESQ.
                              333 South Grand Avenue
                              Suite 2600
                              Los Angeles, CA 90071
                              (213) 621-6000

                              Akin Gump Strauss Hauer & Feld
                              BY: DAVID ZENSKY, ESQ.
                              BY: DANIEL GOLDEN, ESQ.
                              BY: DEBORAH NEWMAN, ESQ
                              BY: ABID QURESHI, ESQ.
                              One Bryant Park
                              New York, NY 10036
                              (212) 872-1000

For Merrill Lynch:            Potter, Anderson & Corroon
                              BY: LAURIE S. SILVERSTEIN, ESQ
                              Hercules Plaza
                              1313 North Market Street
                              6th Floor
                              Wilmington, DE 19801
                              (302) 984-6000

                              Kay Scholer
                              BY: MADLYN GLEICH PRIMOFF, ESQ
                              BY: JANE PARVER, ESQ.
                              425 Park Avenue
                              New York, NY  10022-3598
                              (212) 836-7042

APPEARANCES:
(Continued)

For Law Debenture:                Bifferato Gentilotti
                                  BY: GARVAN MCDANIEL, ESQ.
                                  800 North King Street
                                  Plaza Level
                                  Wilmington, DE 19801
                                  (302) 429-1900

                                  Kasowitz Benson Torres &
                                  Friedman, LLP
                                  BY: MATT STEIN, ESQ.
                                  1633 Broadway
                                  New York, NY  10019
                                  (212) 506-1717

For Morgan Stanley:               Barnes & Thornburg
                                  BY: DAVID POWLEN, ESQ.
                                  1000 North West St., Ste. 1200
                                  Wilmington, DE  19801-1058
                                  (302)868-4536

For Aurelius:                     Ashby & Geddes
                                  BY: WILLIAM P. BOWDEN, ESQ.
                                  500 Delaware Avenue
                                  Wilmington, DE  19899
                                  (302) 654-1888

For Great Banc:                   Womble Carlyle Sandridge &
                                  Rice, PLLC
                                  BY: THOMAS M. HORAN, ESQ.
                                  222 Delaware Ave., Ste. 1501
                                  Wilmington, DE  19801
                                  (302) 252-4339

TELEPHONIC APPEARANCES:

For Jason D Abbruzzese:           Realm Partners
                                  BY: JASON D. ABBRUZZESE
                                  (212) 612-1441

TELEPHONIC APPEARANCES:
(Continued)

For Official Committee of
Unsecured Creditors:            Chadbourne & Park, LLP
                                BY:  MARC D. ASHLEY, ESQ.
                                (212) 408-5194
                                BY: DOUGLAS DEUTSCH, ESQ.
                                (212) 408-5169
                                BY: JESSICA MARRERO, ESQ.
                                (212)408-5100
                                BY: MARC ROITMAN, ESQ.
                                (212)408-5271
                                BY: FRANK VAZQUEZ, ESQ.
                                (212)408-5111

                                Zuckerman & Spaeder, LLP
                                BY: GRAEM BUSH, ESQ.
                                BY: JAMES SOTTILE, ESQ.
                                BY: ANDREW GOLDFARB, ESQ.
                                BY: ANDREW CARIDAS, ESQ.
                                (202) 778-1800

                                Landis Rath & Cobb, LLP
                                BY: MATTHEW B. MCGUIRE, ESQ.
                                (302)467-4431

For Barclays:                   Mayer Brown, LLP
                                BY: JEAN-MARIE ATAMIAN, ESQ.
                                (212)506-2678
                                BY: MICHAEL L. SIMES, ESQ.
                                (212) 506-2607
                                BY: AMIT TREHAN, ESQ.
                                (212) 506-2198

                                Barclays Capital, Inc.
                                BY: BEN WILSON
                                (212)412-7642
                                BY: EITAN MELAMED, ESQ.
                                (310) 907-0455

For SuttonBrook Capital:        SuttonBrook Capital
                                Management, LP
                                BY: CAROL L. BALE, ESQ.
                                (212) 588-6640

```
TELEPHONIC APPEARANCES:
(Continued)

For Credit Agreement
Lenders:                        Angelo Gordon & Co., LP
                                BY: GAVIN BAIERA, ESQ.
                                (212)692-0217

                                Wilmer Cutler Pickering Hale &
                                Dorr
                                BY: MICHELLE GOLDIS, ESQ.
                                (212) 295-6329
                                ANDREW N. GOLDMAN, ESQ.
                                (212)230-8836

For Monarch Alternative
Capital, LP:                    Monarch Alternative Capital LP
                                BY: ROBERT G. BURNS, ESQ.
                                (212) 554-1768

For Bank of America:            O'Melveny & Myers
                                BY: DANIEL CANTOR, ESQ.
                                (212) 326-2000
                                BY: DANIEL SHAMAH, ESQ.
                                (212) 326-2138

                                Bank of America
                                BY: ESTHER CHUNG, ESQ.
                                (646) 855-6705

For Jefferies & Company:        Jefferies & Company
                                BY: JUSTIN BRASS, ESQ.
                                (203) 708-5847

For Wilmington Trust:           Brown Rudnick, LLP
                                BY:  KATHERINE BROMBERG, ESQ.
                                (212) 209-4929
                                BY: ROBERT STARK, ESQ.
                                (212)209-4862

For Goldman Sachs & Co.:        Goldman Sachs & Company
                                BY: SCOTT BYNUM, ESQ.
                                (212) 902-8060
```

```
TELEPHONIC APPEARANCES:
(Continued)

For Tribune:                    DK Partners
                                BY: EPHRAIM DIAMOND, ESQ.
                                (646) 282-5841

                                Sidley Austin
                                BY: GREG DEMO, ESQ.
                                (312) 853-7758
                                BY: KEN KANSA, ESQ.
                                (312) 853-7163
                                BY: SOPHIA MULLEN, ESQ.
                                (212) 839-5884
                                BY: JILLIAN LUDWIG, ESQ.
                                (312) 853-7523
                                BY: BRETT MYRICK, ESQ.
                                (312) 853-1049
                                Tribune Company
                                BY: GARY WEITMAN, ESQ.
                                (312) 222-3394
                                BY: JANET HENDERSON, ESQ.
                                (312) 853-2931
                                BY:  ALLISON E. STROMBERG ESQ.
                                (312) 853-0497

                                Tribune
                                BY: DAVID ELDERSVELD, ESQ.
                                (312) 222-4707

For Citibank:                   Paul Weiss Rifkind Wharton
                                BY: KIRA DAVIS, ESQ.
                                (212) 373-3000
                                BY: ANDREW GORDON, ESQ.
                                (212)373-3543
                                BY: ANDREW LEVY, ESQ.
                                (202)223-7328
                                BY: SHANNON PENNOCK, ESQ.
                                (212) 373-3000
                                BY: ELIZABETH MCCOLM, ESQ.
                                (212) 373-3000

For Arrowgrass Management:      Arrowgrass Capital Partners,
                                U.S., LP
                                BY: ARIF GANGAT, ESQ.
                                (212) 584-1160
```

```
TELEPHONIC APPEARANCES:
(Continued)

For George Dougherty:          Grippo & Elden, LLC
                               BY: GEORGE DOUGHERTY, ESQ.
                               (312) 704-7700

For Mina Faltas:               Viking Global Investors
                               BY: MINA FALTAS
                               (212) 672-7011
For Aurelius Capital
Managemeent:                   Aurelius Capital Management LP
                               BY: MATTHEW A. ZLOTO, ESQ.
                               (646) 445-6518

                               Akin Gump Strauss Hauer & Feld
                               BY: SHAYA ROCHESTER, ESQ.
                               (212) 872-1076
                               BY: JOHN BERRY, ESQ.
                               (212) 872-8075

                               Friedman Kaplan Seiler &
                               Adelman
                               BY: KIZZY JARASHOW, ESQ.
                               (212) 833-1115

For Morgan Stanley:            Weil Gotshal & Manges, LLP
                               BY: ASHISH D. GANDHI, ESQ.
                               (212) 310-8024
                               BY: DAVID LITVACK, ESQ.
                               (212)310-8361
                               BY: ANDREA SAAVEDRA, ESQ.
                               (212) 310-8544
                               BY: BRIAN MCGOWAN, ESQ.
                               (212) 761-1596
For Serengeti Asset
Management:                    Serengeti Asset Management
                               BY: NICHOLAS HEILBUT, ESQ.
                               (212) 466-2167

For Anna Kalenchits:           Anna Kalenchits
                               (212)723-1808
```

```
TELEPHONIC APEARANCES:
(Continued)
```

| For JPMorgan Chase Bank: | Davis Polk & Wardwell, LLP<br>BY: PETER KIM, ESQ.<br>(212) 450-3028<br>BY: LESLIE BANK, ESQ.<br>(212)450-4175 |
| --- | --- |
| For Partner Fund Management: | Vinson & Elkins, LLP<br>BY: LANCE A. MULHERN, ESQ.<br>(212) 237-0184 |
| For Oaktree Capital<br>Management: | Oaktree Capital Management<br>BY: KENNETH C. LIANG, ESQ.<br>(213) 830-6422 |
| For Brigade Capital<br>Management: | Brigade Capital Management<br>BY: NEIL LOSQUADRO<br>(212) 745- 9758 |
| For Royal Bank of Scotland: | Royal Bank of Scotland<br>BY: COURTNEY ROGERS, ESQ.<br>(203) 897-4815 |
| For Eos Partners: | Eos Partners<br>BY: MIKE J. SCHOTT, ESQ.<br>(212) 593-4046 |
| For Prof. Expert: | Raymond James<br>BY: ROBERT SCHWARTZ, ESQ.<br>(212) 872-7441 |
| For Contrarian Capital<br>Management: | Contrarian Capital Management<br>BY: JOSHUA TRUMP, ESQ.<br>(203) 862-8299 |
| For Alvarez & Marsal, Inc.: | Alvarez & Marsal, Inc.<br>BY: BRIAN WHITTMAN, ESQ.<br>(312) 601-4227 |
| For Insured: | Smith Management<br>BY: JENNIFER WILD, ESQ.<br>(212) 418-6877 |

```
TELEPHONIC APEARANCES:
(Continued)
```

For Macquarie Capital:          Macquarie Capital (USA)
                                BY: RUSHABH VORA, ESQ.
                                (212) 231-6311

For Kramer Levin:               Kramer Levin Neftalis &
                                Frankel, LLP
                                BY: JORDAN KAYE, ESQ.
                                (212) 715-9489

For Deutsche Bank AG:           Bingham McCutchen, LLP
                                BY: JEFFREY OLINSKY
                                BY: CHAD VALERIO
                                (212) 705-7857

For Law Debenture Trust:        Kasowitz Benson Torres & Park
                                BY: SHERON KORPUS, ESQ.
                                (212) 506-1700
                                BY: DAVID ROSNER, ESQ.
                                (212) 506-1726
                                BY: CHRISTINE MONTENEGRO, ESQ.
                                (212) 506-1715

For Merrill Lynch:              Kay Scholer, LLP
                                BY: JONATHAN AGUDELO, ESQ.
                                (212) 836-8369

For Cooperstown Capital
Management:                     Cooperstown Capital Management
                                BY: PETER COURI, ESQ.
                                (203) 552-6900

For Wells Fargo:                White & Case
                                BY: SCOTT GREISSMAN, ESQ.
                                (212) 819-8567

For Robert R. McCormick
Foundation:                     Katten Muchin Rosenman, LLP
                                BY: JOHN SIEGER, ESQ.
                                (312) 902-5294
                                BY: DAVID C. BOHAN, ESQ.
                                (312) 902-5566

TELEPHONIC APEARANCES:
(Continued)

For Interested Party:            Canyon Partners
                                 BY: CHANEY M. SHEFFIELD, ESQ.
                                 (310) 272-1062

                                 One East Partners
                                 BY: SINA TOUSSI, ESQ.
                                 (212) 230-4510

For Non-Party:                   Duff & Phelps
                                 BY: JOE LIEWANT
                                 (973) 775-8336

For Tricadia Capital:            Tricadia Capital
                                 BY: IMRAD AHMED, ESQ.
                                 (212) 891-5013

For Bennett Management:          Lucy Galbraith
                                 BY: LUCY GALBRAITH, ESQ.
                                 (203) 353-3101

For Silver Point Capital:        Silver Point Capital
                                 BY: MARK EHMER, ESQ.
                                 (203) 542-4219

For Chicago Fundamental
Investment Partners:             Chicago Fundamental Investment
                                 BY: PETER GRUSZKA, ESQ.
                                 (312) 416-4215

For Board of Committee:          Jones Day
                                 BY: XOCHITL STROHBEHN, ESQ.
                                 (212) 326-3691

1 WILMINGTON, DELAWARE, THURSDAY, MARCH 10, 2011, 10:41 A.M.

2          THE CLERK:  All rise.  Be seated, please.

3          THE COURT:  Good morning, all.

4          ALL:  Good morning, Your Honor.

5          THE COURT:  Sorry to keep you waiting, it was

6 unavoidable.  Good morning, Mr. Zensky.

7          MR. ZENSKY:  Good morning, Your Honor.  May we

8 continue?

9          THE COURT:  You certainly may.

10          MR. ZENSKY:  Yes.  Good morning, Professor Black.

11                CROSS EXAMINATION (Resumed)

12 BY MR. ZENSKY:

13 Q    Good morning, Professor Black.

14 A    Good morning.

15 Q    You understand you're still under oath from yesterday,

16 sir?

17 A    I do.

18 Q    Okay.  Sorry to drag you back here on a rainy morning,

19 but I'll try to get through this quickly.  Professor, did

20 you speak to anyone about the case last night at any time?

21 (Laughter)

22          MR. BLACK:  Only to my wife.

23 BY MR. ZENSKY:

24 Q    Okay.  Did you send or receive any emails regarding

25 the case, Professor?

1  A      No.

2  Q      Okay.  And did you read any materials to prepare for

3  today's continued testimony?

4  A      I continued to read through my deposition transcript

5  which I had not previously had time to fully read through.

6  Q      Okay, great.  Anything other than that?  Did you read

7  anything other than that?

8  A      Did I read anything other than that, no.

9  Q      Okay.  Now Professor, in your expert reports, you're

10  not offering any sort of definitive opinion that the company

11  was solvent or able to pay its bills at the time of either

12  Step 1 or Step 2.  Correct?

13  A      Correct.

14  Q      Okay.  And you've just kind of weighed the

15  possibilities and handicapped that so to speak in terms of

16  figuring out what you think is the fair settlement value of

17  the case?

18  A      That's correct.  I have estimated balance sheet

19  capital values at both Step 1 and Step 2, under different

20  assumptions about tax value for both Tribune and the

21  subsidiaries, but I don't have a bottom line they were

22  solvent, they were insolvent.

23  Q      Okay.  Now in order to reach those views, you thought

24  about each of the three tests for constructive fraudulent

25  transfer?

1  A    I did, although as we discussed yesterday, I think

2  that the objective prong of cash flow solvency is a subset

3  of unreasonably small capital which I call cash flow

4  cushion.

5  Q    Okay, understood.  Now you testified yesterday that

6  the driver of expected value in the litigation that's

7  proposed to be settled by the DCL plan is the possibility of

8  full avoidance.

9  A    That's the principal driver of value, yes.

10 Q    Okay.  And one of the main drivers, if not the main

11 driver in your view, a full avoidance is whether you get

12 formal step integration for one.

13 A    Or informal step integration.

14 Q    Okay.  With respect to formal step integration, if I

15 understand it, the driver would be balance sheet insolvency

16 at step one?

17 A    So the difference between informal and formal step

18 integration would be balance sheet solvency at Step 1.

19 Q    Okay.  And you looked at the question of whether the

20 company would be likely to found balance sheet solvent or

21 insolvent assuming formal integration at Step 1?

22 A    Yes, I did.

23 Q    Okay.  And the principal test that you looked at when

24 you thought about this issue was a market value test, true?

25 A    So I attempted to estimate the market value of

1  Tribune's assets by looking at the trading prices of its

2  shares and debt and then making adjustments for pieces that

3  should not be counted at Step 1 if you look at Step 1 only.

4  And also pieces that the market might not have known about.

5  I then, in effect, assessed whether the market value

6  approach to determining balance sheet capital was consistent

7  with the valuations, contemporaneous valuations at the time

8  by others.

9  Q    By advisors to the company and people involved in the

10 transaction?

11 A    By advisors to the company.  I also then for the --

12 especially on the cash flow side, looked at the trading

13 prices of the senior notes.

14 Q    Okay.  Before we get to the cash flow side, so the

15 answer to my earlier question was yes, the principal thing

16 that you did was look at the market value of the company to

17 conduct your balance sheet solvency inquiry?

18 A    So I looked for myself at a market value approach in

19 part because I believe that's an important approach and in

20 part because it wasn't something that other people had done,

21 but I then checked whether that approach was giving

22 consistent answers to other approaches.

23 Q    The other approaches being the views of the company's

24 advisors?

25 A    Yes.

1   Q      Okay.

2   A      Who typically use other approaches.

3   Q      Okay, understood.  Now when you looked at the value of

4   the company from a market approach as I understand it, you

5   arrived at an initial estimate of $13.1 to $13.6 billion?

6   A      I could look at my report to see what number I have,

7   but I don't recall it off the top of my head.

8   Q      Okay.  It would be on Page 87 of your opening report,

9   sir, if you want to check.

10  A      Okay.

11  Q      I didn't know if you had a loose copy or you can look

12  at the binder I gave you yesterday.

13  A      So balance sheet value initial estimate and so my

14  initial estimate was -- so I'm now looking at the revised

15  report and do you want me to look at initial or revised?

16  Yeah, so my initial estimate is 13 -- is a range from $13.1

17  to 13.6 billion, that's correct.

18  Q      Okay.  And that's a market value that you placed on

19  the company as of just prior to the close of Step 1?

20  A      That's correct.

21  Q      Okay.  Now how many shares were outstanding just prior

22  to the close of Step 1?

23  A      I'm remembering 242 million and change, not including

24  the shares owned by the ESOP.

25  Q      Okay.  And what price of the equity did you use in

1  calculating the $13.1 to $13.6 billion market value?

2  A     So I believe that this was -- this value was based on

3  though it doesn't matter much because the value doesn't

4  change, would have been just after Step 1, instead of just

5  before so it would have been 118 million shares instead of

6  242.  I used whatever the market price was.  It would have

7  been, you know, I think $33 a share just before Step 1.  It

8  dropped to $32 something a share just after Step 1.

9  Q     Okay.  So something in the range of $32 to $33?

10 A     Yes.

11 Q     Okay.  And then you added into that the market price

12 of the debt to come up with the $13.1 to $13.6 billion?

13 A     That's correct.

14 Q     Okay.  Now you talked in an earlier answer about some

15 subtractions and additions to that and I want to explore

16 that for a moment.  One of the things that you added to the

17 balance sheet test on the asset side was the present value

18 of asset disposition tax value.  Or you considered whether

19 that would be added.

20 A     So I really worked through three variants of tax

21 value; asset disposition tax value, cash flow tax value to

22 Tribune, and then no tax value.  So this was an initial

23 estimate without either source of tax value.  And then what

24 I did was I estimated the amount of each source of tax

25 value.  I assigned a probability to each and then under each

1   approach, I assigned a likelihood of balance sheet solvency.

2   Q     Okay, sure.  And in the third possibility, there would

3   be no value because you said there was not tax value in the

4   third category.

5   A     That's correct.

6   Q     Okay.  So let's talk about the first one, the asset

7   disposition tax value.  Professor, as you define it, that's

8   the possibility that Tribune because it was S ESOP Corp.,

9   could participate in certain leverage partnership

10  structures.  Is that right?

11  A     So it's the possibility that Tribune could use its S

12  ESOP status under which Tribune was not a taxpayer.  And it

13  was owned by an ESOP, and employee stock ownership plan

14  which was also not a taxpayer and, therefore, nobody on the

15  Tribune side is paying tax.  In order effectively to take a

16  write up of the tax basis of its assets to market value

17  without paying tax, that would then let it dispose of

18  effectively those assets at a higher tax basis which then

19  gives higher depreciation deductions to the counterparty and

20  the higher depreciation deductions are something the

21  counterparty would pay for and that was the source of higher

22  disposition proceeds.

23  Q     Okay.  And that's the leverage partnership structure,

24  right?

25  A     And the way one did that under the tax code was

1  through a leverage partnership structure rather than through

2  a direct sale, yes.

3  Q    Okay.  Could you look at Page 58 of your expert

4  report, Professor?  And it's Page 58 in your original

5  report.  I'm not sure if it's the same page or not in your

6  revised report.

7  A    So I've got a heading to estimated amount of --

8  Q    No.

9  A    No, it's not, okay.

10 Q    It's the section dealing with asset disposition tax

11 value.

12 A    So that's starts for me on Page 55.  So let's just

13 make sure we know we know which version you're looking at.

14 So what do you have on the screen?

15 Q    The paragraph that you have that begins this is not

16 the end of the matter.

17 A    I'm sorry, which version of the report do you have on

18 screen?  Let's just work with the same version.

19 Q    The original.

20 A    The original report, okay.  And that's what page?

21 Q    It was 58.

22 A    58. Okay.

23 Q    Okay.  Do you see the paragraph this is not the end of

24 the matter, however?

25 A    Yes.

1  Q    Okay.  Can you read the next sentence in -- the next

2  two sentences into the record for us?

3  A    Sure.  Tribune had available a tax planning approach,

4  developed by Zell's Tax Advisors, that would let Tribune

5  realize cash for its assets without incurring income tax

6  until after the ten year period had expired.  This approach

7  allowed Tribune to obtain the higher disposition proceeds

8  available with a step up in inside basis, again without

9  incurring current income tax.

10  Q    Okay.  And that's what we've been talking about the

11  past few moments, right?

12  A    That's correct, a direct sale within a ten year period

13  would trigger income tax to Tribune.  The leverage partners

14  strategy was a way to defer that tax until you were outside

15  the ten year period, but realize the proceeds within the ten

16  year period.

17  Q    Okay, great.  And that's a strategy that at best would

18  only be available to S ESOP corporation.

19  A    That was a strategy that in my judgment would be

20  available to Tribune as S ESOP corporation and only because

21  it would be an S ESOP corporation after the merger.

22  Q    Okay.  Now you say in this part of your report that

23  this was an approach developed by Mr. Zell's tax advisors,

24  right?

25  A    Yes.

1  Q      You know that because you consulted with Mr. Zell's

2  tax advisor when you were working on your report, right?

3  A      Yes.

4  Q      Okay.  And Mr. Zell built that -- strike that.  Mr.

5  Zell built in the contemplation of these tax benefits into

6  his $34 a share bid.  True?

7  A      He was certainly aware of the possibility that if

8  Tribune were to need to sell assets during the ten year

9  period, that this would provide a way to dispose of assets

10 at a higher value.  I believe that to be true, yes.

11 Q      Right.  But don't you think he built that into his bid

12 price when he was formulating how much he could afford to

13 pay?

14 A      So that might affect how much he was willing to pay,

15 but this is an auction and so it's not nearly so clear that

16 this would affect how much he had to pay since he was trying

17 to leave some expected profit on the table for himself.  And

18 the normal way that people think about auctions, you end up

19 -- the winning bidder ends up paying slightly more than what

20 the next nearest bidder would have been willing to pay

21 rather than the maximum amount that they might have been

22 willing to pay if they were competing with themselves.

23 Q      Professor, do you still have your deposition

24 transcript here?

25 A      I do.

1          MR. ZENSKY:  Actually, I need to give you day

2     two, I'm sorry.  Your Honor, may I approach?

3          THE COURT:  You may.  Thank you.

4          MR. ZENSKY:  Professor, if I could direct your

5     attention to the bottom of Page 532?  This is the deposition

6     transcript of the continuation on the second day, last

7     Friday.

8          MR. BLACK:  Okay.

9          MR. ZENSKY:  I asked you a question at the bottom

10    on Line 25.  Okay.  The asset disposition tax value was

11    certainly a tax strategy that was known to Mr. Zell and his

12    advisors.  Answer:  Yes.  Question:  Right.  And would you

13    assume that that was built into his bid?  Answer:  That is

14    my understanding.  And was that truthful testimony when you

15    gave it, Professor?

16         MR. BLACK:  I believe that the availability or

17    the likely availability of this strategy was a factor in Mr.

18    Zell's willingness to offer $34 a share, yes.

19         MR. ZENSKY:  Okay.

20         MR. DUCAYET:  Your Honor, if I could just note

21    for the record.  Mr. Black goes onto to continue to answer

22    the question.

23         THE COURT:  Well is there a request that for

24    completeness that be read into the record as well?

25         MR. DUCAYET:  That was my request, Your Honor.

1          THE COURT:  Okay.

2          MR. ZENSKY:  Okay.  Is there a particular

3  portion, Mr. Ducayet?

4          MR. DUCAYET:  It's the next little bit right

5  after that.

6          MR. ZENSKY:  Okay.  Question:  Okay.  So?

7  Answer:  That was part of his willingness to pay the price

8  that he paid.  Is that the part?

9          MR. DUCAYET:  Yes.

10  BY MR. ZENSKY:

11  Q    Okay.  That was easy.  Okay.  Now when you thought

12  about Professor, how to value this possibility for purposes

13  of your balance sheet test, you made the assumption that

14  Tribune could sell 75 percent of its assets during the ten

15  year period and utilize this leverage partnership structure.

16  Correct?

17  A    I made the assumption that this structure would be tax

18  beneficial for 75 percent of Tribune's assets.  I didn't

19  make an assumption as to what proportion of its assets

20  Tribune would sell because this is a hypothetical

21  calculation.  It doesn't make -- form any judgments about

22  whether Tribune would or would not actually dispose of

23  assets.

24  Q    Okay.  And, in fact, Tribune had no plan to dispose of

25  75 percent of its assets as of the time of this transaction,

1    did it?

2    A    I would say that Tribune had a plan to dispose of the

3    Chicago Cubs and use the strategy to dispose of it.  And

4    that part of the planning for the transaction was that

5    Tribune had many discrete assets that could be disposed of

6    if this were to be important in the future.

7    Q    Okay, understood.  So you used -- strike that.  You

8    made the assumption that they could dispose of approximately

9    $9 billion worth of their assets, utilizing the leverage

10    partnership structure, if they needed to?

11    A    I made the assumption that if they were to dispose of

12    their assets, which is what balance sheet solvency is about,

13    that the leverage partnership structure would be

14    advantageous for roughly 75 percent or roughly $9 billion in

15    market value of those assets.

16    Q    Okay.

17    A    $9 billion before the asset disposition --

18    Q    Sure.  Okay.  And that led you to conclude that were

19    they to sell 75 percent of their assets using the leverage

20    partnership structure, that that would create additional

21    value of $1.8 billion to $2.7 billion?

22    A    Almost.  I tried to be rigorously careful in the

23    report not to say "sell", but always to say "dispose of"

24    because it was central to whether this leverage partnership

25    strategy worked that the transaction would not be considered

1  a sale under the income tax code.

2  Q    Okay.  I appreciate that clarification.  So they're

3  not selling them in the sense you sell an asset free and

4  clear to a third party, it's a partnership structure where

5  they get the benefit of what effectively would be a sale?

6  A    I can -- you think of it that way, yes.

7  Q    Okay.  Not being a tax lawyer, that's the closest I

8  can come.  Okay.  So you took that value, the $1.8 to $2.7

9  billion and added that to the asset side of the equation on

10  the belief that it was, I think, modestly likely that a

11  Court would consider asset disposition tax value?

12  A    So I judged it to be moderately likely that a Court

13  would consider asset disposition tax value in assessing

14  Tribune's balance sheet solvency at Step 1 with formal step

15  integration.

16  Q    Okay, understood.  And you thought that was

17  appropriate because you deemed that to be property as

18  defined by the bankruptcy code.  Correct?

19  A    That would be the underlying question because that's

20  the standard for insolvency in the Bankruptcy Code is

21  whether this source of value is "property".

22  Q    Okay.  So you disagree that the standard would be fair

23  market value in terms of applying the constructive

24  fraudulent transfer tests?

25  A    There are certainly bankruptcy cases that assess the

1  amount of property by looking at the fair market value for

2  which assets could be sold.  I understand this as reflecting

3  the fair market value for which assets could be disposed of

4  using this leverage partnership strategy by an S ESOP.

5  Q    Okay.  And, therefore, it could constitute property

6  under the code?

7  A    Yes.

8  Q    Okay.  Now you agree with me that there's no case on

9  point that says whether a Court examining whether a

10  constructive fraudulent transfer occurred would incorporate

11  any sort of asset disposition tax value.

12  A    I agree.  And that's why I chose to make it moderately

13  likely.

14  Q    Okay.  And your decision to include it, I think you

15  described to me the other day was a rough judgment?

16  A    If I used those words.  I don't know how you could

17  make more than a rough judgment given that this is not a

18  source of value that has been previously considered in a

19  balance sheet solvency.  Analysis because it's only

20  available to an S ESOP and we don't have a plethora of S

21  ESOP bankruptcies.

22  Q    Okay.  Now when you were working on your expert

23  report, you gave drafts of it to Mr. Larsen and to Mr.

24  Zell's tax counsel to comment on.  Correct?

25  A    I don't know if we gave them a draft of the full

1  portion.  I believe we gave them a draft of the specific

2  discussion of the asset disposition tax value and asked them

3  to comment on that specific portion.

4  Q    Okay.  Now was it also your -- or is it also your view

5  that Tribune's managers didn't understand the tax strategy

6  as of the time of the transaction?

7  A    I have not seen evidence in the record that Tribune's

8  own managers understood the strategy at the level of having

9  built it into their projections.  It's possible that they

10  had some understanding that isn't reflected in the written

11  record, but I haven't -- I didn't see any clear signs of it

12  in their assessment of balance sheet solvency or their fall

13  2007 projections.

14  Q    Okay.  Now I think you mentioned this already today,

15  Professor.  You looked at second potential source of tax

16  value, something you called cash flow tax value.

17  A    Cash flow tax value to Tribune, yes.

18  Q    Right.  And you assumed that it was moderately likely

19  if a Court did not accept asset disposition tax value, that

20  it would accept cash flow tax value.  Correct?

21  A    That was my judgment, yes.

22  Q    Okay.  And like asset disposition tax value, we can

23  agree there's no case that says that in the fraudulent

24  transfer context, that is a source of value that should be

25  considered for the balance sheet test?

1  A    So, no.  So there's a recent *Easterbrook* opinion the

2  Seventh Circuit involving a non-profit hospital which also

3  doesn't pay income tax which one can read as consistent with

4  the view that the tax savings from not paying income tax are

5  a proper part of balance sheet solvency is my understanding.

6  I'm not aware of other cases in part because again, you need

7  a specialized circumstance.  You need a bankruptcy of an

8  entity that doesn't pay income tax for this issue to arise.

9  Q    Can I ask you to look at Page 544 of your deposition,

10  Professor?

11  A    Okay.

12  Q    At Line 5, I asked you the question, I believe in your

13  rebuttal you think a Court would be moderately likely to

14  include cash flow tax value or likely to include cash flow

15  tax value for balance sheet.  Is there any particular case

16  that you had in mind for that?  Answer:  I think what I said

17  was a Court would be moderately likely to include asset

18  disposition tax value and if did not, it would be moderately

19  likely to include cash flow tax value to Tribune.  It can't

20  include both, that would be logically inconsistent.  We do

21  not have a plethora of bankruptcy cases involving S ESOP

22  bankrupt corporations so there is no case directly on point.

23  This was my rough judgment and I certainly talked to the

24  Sidley Austin bankruptcy lawyers about this.  Do you see

25  that?

1    A      I do.

2    Q      Okay.  So would you agree with me that there is no

3    case on point?

4    A      No, I don't.  I think the answer in my deposition as I

5    read it was about asset disposition tax value.  And I agree,

6    there is no case on point on asset disposition tax value.

7    There is one case that I think is relevant on cash flow tax

8    value to Tribune.

9    Q      Okay.  Well, I think the record will reflect the

10   question and answer as it was posed.  Now the examiner found

11   that these kinds of benefits should not be considered in a

12   balance sheet solvency analysis.  Correct?

13   A      Which kind?

14   Q      Either.  Or strike that, the asset disposition tax

15   value.

16   A      So the examiner considered what I call asset

17   disposition tax value in a long textual footnote on tax

18   value.  And says this would, you know, ensure that Tribune

19   would not pay income tax, but would not increase the amount

20   that Tribune would receive and, therefore, should not count

21   toward balance sheet value.  And I agree with the examiner

22   that if this strategy did not increase, the amount of

23   proceeds Tribune would receive, then it should not count,

24   but I believe that it would increase the amount that Tribune

25   would receive.  And that the examiner did not fully

1   understand the strategy.

2   Q     All right.  Let's look at the long textual footnote

3   that you just described, Professor.  It's in your binder

4   under examiner report.  Your Honor, the examiner report is

5   Noteholder Exhibit 782.

6   A     Okay.

7   Q     And you should find the excerpts -- it's Page 27 and

8   28 of Volume 2, Professor.

9   A     So I've got --

10  Q     Footnote 87.

11  A     Oh, so you're just giving me excerpts here?

12  Q     Yeah.

13  A     Okay.  That's what I was trying to figure out.

14  Q     It just happens to have the footnote you referred to.

15  A     Okay.

16  Q     So here we've got Volume 2.

17            MR. DUCAYET:  Just a coincidence, right?

18  (Laughter)

19            MR. BLACK:  And so you didn't give me the whole

20  1,200 pages, okay.  And what page is it at?

21            MR. ZENSKY:  It's Page 27, Footnote 87.

22            MR. BLACK:  Yeah, then the footnote continues

23  over onto Page 28.

24            MR. ZENSKY:  Right.  Okay.  So let's take it one

25  step at a time.  If you could look at -- Your Honor, have

1  you found those pages?

2          THE COURT:  I'll get there, keep going.

3  BY MR. ZENSKY:

4  Q     Okay.  If you look, Professor on the first page of the

5  footnote, the second paragraph that begins whether a

6  hypothetical buyer.  Do you see that?

7  A     Yes.

8  Q     Okay.  Could you read that into the record for us?

9  A     Yes.  Whether a hypothetical buyer of Tribune,

10 however, could construct its own tax avoidance structure

11 would not represent value attributable *to Tribune* (or any

12 other seller for that matter) and should not be counted as

13 an element of its fair market value: --

14 Q     Okay.  You don't have to go on for the moment.  Then

15 he quotes excerpts from what we can see on the second page

16 is a treatise called S Corporation ESOP valuation issues.

17 Do you see that?

18 A     I do.

19 Q     Okay.  Sounds like something that might be a good

20 source of information, right?

21 A     Which I read myself.

22 Q     Okay.  Now if you continue after excerpting the

23 treatise, the examiner tells us in the following paragraph.

24 I'm looking at the second sentence.  I'll read it this time,

25 Professor.  Solvency valuation assumes a hypothetical

1  disposition by a willing seller to a willing buyer.  Do you

2  see that?

3  A     I do.

4  Q     Okay.  Do you agree with that?

5  A     I -- so let me back up.  I considered three possible

6  sources of tax value.  I considered asset disposition tax

7  value.  I considered cash flow tax value to Tribune which is

8  Tribune's own value of tax savings.  And then I considered

9  what I call cash flow tax value (asset sale) which is what I

10  believe the examiner was considering here which is a

11  hypothetical S ESOP buyer wouldn't pay tax and, therefore,

12  might hypothetically be willing to pay more for Tribune's

13  assets.  I did not assign probability to cash flow tax value

14  asset sale because I agreed with the examiner's view that

15  this should not be included in an assessment of the value of

16  Tribune's property and I discussed that -- I discussed why I

17  reached that conclusion in my report.

18  Q     Okay.  Professor, the question was as general matter,

19  do you agree that the solvency valuation assumes a

20  hypothetical disposition by a willing seller to a willing

21  buyer.  That's either yes, no, or I can't answer the

22  question.

23  A     I don't -- there are certainly circumstances under

24  which I would agree with that, but I think the underlying

25  standard is this -- is a source of tax value that is

1  specific to an S ESOP property of the S ESOP.  And I think

2  the answer to that is it might be.

3  Q    Okay.  Let's continue.

4  A    So in that -- to that extent, to the extent you've got

5  an S ESOP, I think I would not fully agree with the

6  sentence.

7  Q    Okay.  Let's continue.  In the bottom paragraph, could

8  you read the first sentence into the record first, please?

9  Continuing in Footnote 87.

10  A    Sure.  The examiner also considered whether the

11  preceding conclusion differs based on the prospect that

12  Tribune might be able to further effectuate one or more

13  dispositions under a leverage partnership structure --

14  leverage partnership transaction (a structure that

15  apparently was used in the Cubs and Newsday sales

16  transactions), under which Tribune might monetize assets and

17  still obtain the tax avoidance benefit that it would

18  otherwise have to wait ten years to achieve by holding such

19  assets.

20  Q    That's the asset disposition tax value we've been

21  talking about the last half hour or so, right?

22  A    This is the exam -- this is the paragraph where the

23  examiner considers what I have called asset disposition tax

24  value, yes.

25  Q    Okay.  And let's look at what he concludes.  Can you

1  read the last sentence of the footnote into the record,

2  please?

3  A     Yes.  So let me read the rest of the paragraph, if I

4  can.

5  Q     Okay.

6  A     Because I think it's relevant.

7  Q     Please.

8  A     Okay.  So it then gives a citation to a news article

9  that explains the Chicago Cubs transaction and then "this is

10 not a benefit that is passed onto the buyer, but, rather, if

11 successful permits tribune to shield the income from the

12 asset monetized as if Tribune held and generated income from

13 the asset.  In this fashion, this benefit is no different

14 for fair market value purposes from the S-Corporation/ESOP

15 structure generally.  Although the structure, to the extent

16 still available, might affect the net consideration remitted

17 to creditors from a disposition of Tribune's assets, it

18 would not affect the fair market value of Tribune's assets,

19 in other words, it would not affect the price paid by a

20 willing buyer for those assets.

21 Q     Okay.  And do you agree or disagree with the last

22 sentence of this footnote, Professor?

23 A     So my analysis was that the leverage partnership

24 structure would affect the amount that a counterparty,

25 again, I'm going to try not to call it a buyer, would be

1   willing to pay for the cash flow from those assets.  So I

2   though this last sentence reflected the examiner's

3   incomplete understanding of the leverage partnership

4   strategy.

5   Q    Okay.  And again, the counterparty in your last

6   sentence refers to the counterparty to a leverage

7   partnership, not a true third party sale.

8   A    That's correct.

9   Q    If Tribune had to sell off up to 75 percent of its

10  assets to pay its creditors and utilize this tax structure,

11  don't you think it would be something of a fire sale?

12  A    I don't think that's the assumption that one makes in

13  balance sheet solvency analysis.  I think one makes the

14  assumption that Tribune is going to sell, but they're going

15  to do so on a -- in the ordinary course of business rather

16  than on a fire sale basis.

17  Q    Okay.  But we did establish earlier they had no plan

18  to sell any asset other than the Cubs as far as you know at

19  this time?

20  A    At the time of the leveraged buyout, I would say that

21  to my knowledge, Mr. Zell had no concrete plans to sell any

22  assets other than the Cubs and some miscellaneous real

23  estate that wasn't effectively being used by Tribune, but

24  also considered as part of his willingness to enter into the

25  transaction, the availability of potential dispositions

1  should that turn out to be necessary.

2  Q    Okay.  All right.  Let's talk about the liability side

3  of your balance sheet test for a moment, Professor.

4  A    Okay.

5  Q    Now at the time of the Step 1 transaction or at the

6  time of Step 1, the PHONES, the outstanding amount of PHONES

7  debt was about $1.1 billion give or take?

8  A    I believe that at the time of the leveraged buyout,

9  the outstanding face amount of PHONES debt was about $1.25

10 billion.

11 Q    Okay.

12 A    And as I testified, I treated that as a debt amount in

13 my balance sheet solvency analysis of about $470 million

14 which was the value that Tribune carried the PHONES debt on

15 its books for.

16 Q    Okay.  I think you answered my next two questions, but

17 let's just try to parse it so it's clear.  Before we get to

18 the 470, I think you would agree that if the company was

19 liquidated, they would have to pay that full amount $1.25

20 billion to the holders of the PHONES notes before there

21 could be any return to equity?

22 A    That is my understanding.

23 Q    Right.  That was the face amount of the debt.

24 A    That is my understanding.

25 Q    Okay.  But nevertheless, you used $470 million as you

1   just testified on the liability side of your balance sheet

2   assessment?  True or false?

3   A    That is correct.

4   Q    Okay.  And you did so, I think based on the belief

5   that that's how Tribune handled it in its financial plans at

6   the time?

7   A    No, that's how I believe it should be handled in

8   assessing whether the value of a company's assets exceeds

9   the amount of its liabilities.  And then I had to decide,

10  okay, what amount do I assign to this deeply discounted

11  debt?  And there I decided that it was reasonable to assign

12  the value that Tribune used in its own balance sheet.

13  Q    Okay.  So you believe that Tribune carried it at $470

14  million?

15  A    Tribune carried the debt component of the PHONES at

16  depending on the exact date because it was accreting over

17  time, about $470 million is my recollection.  The PHONES

18  were a hybrid debt equity instrument and it was also an

19  equity component to the PHONES.  So the total carrying value

20  of the PHONES was in the five hundreds.

21  Q    All right.  And was that number net of the Time-Warner

22  stock?

23  A    No, the Time-Warner stock was an asset and that was

24  separately counted on the asset side.

25  Q    Okay.  So if you're wrong about how the company or its

1   advisors booked the PHONES debt at that time, that would

2   affect your opinion, would it not?

3   A    So my opinion is that the PHONES for balance sheet

4   solvency purposes should be discounted and I'm capable of

5   computing for myself what the right discount value would be.

6   And, indeed, an early version of my work, I did so and I

7   think my value was about $440 million.  And then I later

8   decided let me just go with the value that I obtained from

9   Tribune's balance sheet rather than my own slightly lower

10  value.

11  Q    Okay.  And as with asset disposition tax value, you're

12  not aware of any case that says in a fraudulent transfer

13  context, a Court should look at the discounted value of debt

14  as opposed to its face value on the liability side of the

15  equation?

16  A    I am not aware of any case that addresses that issue.

17  Q    Okay.  Now let me turn to the Zell note.  Am I correct

18  that at Step 1, you treated the Zell note in the amount of

19  $225 million as equity rather than debt for your balance

20  sheet test?

21  A    Yes, I did.

22  Q    And you did that because you believe the note was

23  subordinated and had a market value that was far below the

24  $225 million?

25  A    No, that's not correct.

1  Q     Okay.  Let's turn to the capital adequacy inquiry for

2  a moment, Professor.

3  A     Okay.

4  Q     Whether the company had adequate capital to operate

5  its business, pay its debts.  You thought about that test as

6  well?

7  A     Yes, I did.

8  Q     Okay.  And as I understand it, first, you explored if

9  the company would be able to pay its debts in a reasonably

10 serious downside?

11 A     I forget exactly what term I used, but you want to

12 explore cash flow cushion in let me call it a serious

13 downside case.  And the question that the bankruptcy cases

14 leave unanswered is okay, just how big a downturn is that?

15 Q     Okay.  And to do that, as I understand it, you looked

16 at the downside cases that were in the company's February

17 2007 projections, Downside Case A, Downside Case B?

18 A     I looked at the contemporaneous downside or stress

19 cases and those included Management's Downside Case A and

20 Management's Downside Case B.

21 Q     Okay.  And what was the difference between those two?

22 A     Downside Case B was lower than the Downside Case A.  I

23 believe that generally speaking, in Downside Case A, they

24 assumed a steady 2 percent annual decline in publishing

25 revenues and flat broadcasting revenues.  And in Downside

1  Case B, they assumed a 3 percent annual decline over five

2  years in publishing revenues and a 1 percent annual decline

3  in broadcasting revenues.

4  Q    Okay.  Now a downside case is supposed to project what

5  things will look like if you hit an unexpected bump in the

6  road so to speak or an unexpected downturn in the business?

7  A    I say I think of a downside case as reflecting a

8  pessimistic view of the future of the business.  And then

9  you again have the question of okay, how pessimistic is

10 pessimistic enough to make it a reasonable or serious

11 downside case.

12 Q    And whether it's pessimistic enough has to be measured

13 against whether the base case is a fair assessment of the

14 company's prospects.  You would agree with that?

15 A    No.  I think the question is -- so I can certainly

16 imagine the base case is more optimistic than one would

17 think the company's prospects were, but the downside case is

18 still a good pessimistic case.  And, indeed, in February --

19 in the spring of 2007, that would accord with my view of the

20 spring 2007 projections.

21 Q    Okay.

22 A    The base case was optimistic, but the downside cases

23 were serious and realistic.

24 Q    Okay.  We'll get there in a moment.  Now when you

25 looked at the Downside Case A and Case B and you looked into

1  the future as to whether the company would able to pay its

2  bills and operate its business, one of the things you

3  assumed was that they could forego the $100 million a year

4  it had projected it would spend on acquisitions.  True?

5  A     In assessing whether Tribune would run out of cash to

6  repay debt in Downside Case B, in 2009 and 2010 when it had

7  to repay a significant piece of the bank loans and also some

8  notes, I assumed that if you get into 2008 and 2009 and

9  things are looking on the grim side, that Tribune would

10  choose not to make acquisitions rather than make

11  acquisitions today than discover in six months it can't pay

12  its debt.

13  Q     Okay.  So think that was a yes.  They treated the --

14  you treated the acquisitions as optional in effect and

15  likely to be foregone.

16  A     Likely to be foregone if there was need to forego

17  them.

18  Q     Okay.  Now the planned acquisitions were predominately

19  on the interactive side of the business were they not?

20  A     I believe that to be the case, but I actually didn't

21  try to trace that through.

22  Q     Okay.  And the company's projections assumed a fairly

23  robust growth rate in the interactive side of the business?

24  A     Yes, they did.

25  Q     Okay.  And if they didn't -- strike that.  If they

1  didn't make the acquisitions in 2008 and 2009, couldn't that

2  affect whether they would achieve the growth rate they were

3  assuming in the interactive business?

4  A    If they forewent the acquisitions, they would have

5  more cash today and, therefore, could pay off more debt

6  today and have less debt tomorrow.  But they also wouldn't

7  have the acquisitions so they would have less income

8  tomorrow.  Both of those things would happen together.

9  Q    All right, well presumably, they believe the

10 acquisitions would be accretive.

11 A    I would certainly expect that they would make

12 acquisitions that they would believe at the time to be

13 accretive and as we all know, sometimes acquisitions turn

14 out well and sometimes they don't.

15 Q    All right.  Now you didn't model the degree to which

16 the planned acquisitions if they were not pursued to affect

17 the company's operating cash flow in the future?

18 A    I think I did not, but any impact of $100 million a

19 year in planned acquisitions for a two or three year period

20 over the next several years for a business of this scale

21 would be small.

22 Q    Okay.  But you didn't model it?

23 A    I did not.

24 Q    Okay.  Now you told us yesterday that Tribune's

25 performance was week in the first five months of 2007.

1  Correct?

2  A     That's correct.

3  Q     And the country was not yet in a recession at that

4  point in time.

5  A     That's correct.

6  Q     Okay.  And you told us yesterday when we talked about

7  your Garamella report, that as of May 2007 which was before

8  Step 1, the company's performance was already tracking the

9  Downside B scenario was it not?

10  A     For the first four months of 2007, that is correct.

11  Q     Okay.  And that performance as a whole was

12  substantially below the base case from the February 2007

13  projections, right?

14  A     That's correct.

15  Q     Now publishing was far and away the largest part of

16  the company's business in 2007.

17  A     It was about two-thirds of the operating cash flow and

18  maybe about 50 percent of the market value of assets, if I

19  recall.

20  Q     Okay.  And about 72 percent or so of the revenue?

21  A     I don't remember the revenue percentage but --

22  Q     Okay.

23  A     -- it's about -- that would be about right, yes.

24  Q     Two-thirds of the cash flow.  Okay.  Now if we go back

25  to Footnote 22 in your Garamella declaration, Professor.

1  A     Okay.  So we're back to Garamella.

2  Q     Which is in your binder.

3  A     Yes.

4  Q     I believe it was Page 16.

5  A     All the way --

6  Q     15.

7  A     Yeah.  Okay.  Yes.

8          MR. ZENSKY:  Excuse me.  Your Honor, do you have

9  that available?

10          THE COURT:  I do.

11  BY MR. ZENSKY:

12  Q    Okay.  Now, if we look at your footnote that was

13  written prior to Step 1 closing, the publishing business

14  which we just established was two-thirds of the operating

15  cash flow.  I think you state here in the third sentence

16  that "Tribune's publishing business performed worse than

17  Downside Case B, but it was partly offset by stronger

18  results for broadcasting and entertainment.  Was that a true

19  statement, Professor, at the time you made it?  Do you see

20  where I'm referring to?

21  A     Yes, I do.  And I agree that that is an accurate

22  description of Tribune's performance in the first four

23  months of 2007.

24  Q    Okay.  And then when we look at the next sentence

25  which talks about April, you stated and this was under oath,

1  Tribune's publishing business dropped off even more rapidly

2  in April.  Correct?

3  A    That's correct.

4  Q    All right.  And you believe April was the last month

5  for which full results were available before Step 1 closed?

6  A    At the time that Tribune would have had to make a

7  decision to reforecast and at the time that the banks were

8  making their decision to sign the bank loan agreement, that

9  would be correct.

10 Q    Okay.  And we established yesterday on an earlier

11 page, you told the Court that it was possible that the

12 company's performance could continue to decline from where

13 it stood.

14 A    I did.

15 Q    Now doesn't that mean that the more reasonable set of

16 projections as of this time was really the Downside Case B?

17 A    I think my judgment was that at this point in time, it

18 would be a challenge in the near term for Tribune to meet

19 its own projections, but it still might be reasonable to

20 rely on what's been called the research case which is the

21 consensus of analyst estimates which was below Tribune's own

22 plan.

23 Q    Okay.

24 A    But above Downside Case A and above Downside Case B.

25 Q    Okay.  All right.  Now sticking with the cash flow

1  cushion and cash flow solvency test that you put together

2  and thought about.

3  A    Yes.

4  Q    I understand that in addition to looking at the

5  downside projections and whether the company would or would

6  not be able to pay its bills, that you concluded that it was

7  likely the company would be able to pay its bills as they

8  came due because a bunch of hopefully smart people decided

9  to go forward with the transaction?

10  A    So in addition to looking at the cash flow

11  projections, I also tried to look at market evidence because

12  in my way of thinking, I place a lot of weight on the

13  contemporaneous views of investors.  And so one source of

14  contemporaneous views was the willingness of the banks to

15  lend and the willingness of Mr. Zell to invest.

16  Q    Okay.  So aren't those exact words that you used on

17  Friday that a third reason you felt that the company would

18  be found to have adequate capital at Step 1 was because

19  hopefully smart people decided to go forward with the

20  leveraged buyout in the spring of 2007?

21  A    If you're quoting from my deposition, that sounds

22  consistent with what I just said here.

23  Q    Okay.  Why don't you look at Page 554 and tell me if

24  I've got it right.  Line 15 to 20.

25  A    Yeah.  So if I look at Page 554 as whole, the first

1  reason was looking at projections and deciding did they have

2  a serious downside case.  We've already talked about that.

3  And then 554 begins by saying my second line of analysis was

4  to say well, regardless of what I think and regardless of

5  what Tribune's projections are, what did the market think?

6  And the third reason was what did the banks and Mr. Zell

7  think.

8  Q    Okay.  Can you read your answer into the record that

9  you gave me on Friday beginning at Line 15?

10 A    Yes.  "The third source would be -- look, there are a

11 bunch of hopefully smart people who decided to go forward

12 with a leveraged buyout in the spring of 2007, including Mr.

13 Zell and including the collection of banks.  And so they

14 would -- it would not make sense for them to do that unless

15 they had thought Tribune had a reasonable cash flow cushion.

16 They might have been wrong, but the fact that they went

17 forward with an arm's length transaction, provides evidence

18 pushing toward cash flow cushion that I thought a Court

19 would find of some probative value."

20 Q    Okay.  I think we agreed yesterday, Professor, that

21 smart people can overpay for assets?

22 A    We did.

23 Q    Okay.  And smart people can enter transactions where a

24 company is so levered that it will be unable to weather even

25 a small bump in the road?

1   A     We did.

2   Q     Okay.  And we agreed that smart people can finance bad

3   deals and lend to companies that will be rendered insolvent?

4   A     We did.

5             MR. ZENSKY:  Okay.  That's all I have, Your

6   Honor.

7             THE COURT:  All right.  Let's just take a five

8   minute break and I'll ask if there's any other cross and

9   we'll finish with this witness.  Five minutes only.

10  (Recess from 11:20 a.m. to 11:39 a.m.)

11            THE CLERK:  All rise. Be seated, please.

12            THE COURT:  All right.  Is there any other cross

13  examination?

14            MS. STEEGE:  Good morning, Your Honor.  Catherine

15  Steege on behalf of EGI, TRB, and Mr. Zell.

16  BY MS. STEEGE:

17  Q     Good morning, Professor Black.

18  A     Good morning.

19  Q     Just a few questions for you.  Do you recall that you

20  testified yesterday afternoon on direct that you had

21  allocated $300 million of value to the litigation trust in

22  connection with offering your opinion about the

23  reasonableness of the DCL plan settlement?

24  A     As a moderately conservative estimate, yes.

25  Q     Okay.  And you also testified as to how you arrived at

1  that $300 million which claims you included in arriving at

2  that number.  Do you recall that testimony?

3  A    Yes, I do.

4  Q    Okay.  And do you recall that one of the claims that

5  you did not list among those claims were the alleged breach

6  of fiduciary duty and aiding and abetting breach of

7  fiduciary duty claims that have been alleged against my

8  client, Mr. Zell?

9  A    That's correct.

10  Q    Okay.  And, in fact, your opinion is that these

11  alleged claims against Mr. Zell do not have a significant

12  recovery value.  Isn't that correct?

13  A    That is my opinion.

14  Q    And you come to that conclusion, come that opinion

15  because you do not believe that these claims have a

16  meaningful chance of success.  Isn't that correct?

17  A    That's correct.  If they were to succeed, there were

18  large dollars attached, but I do not think they have a

19  meaningful chance of success.

20  Q    And that's true both for any claims alleged at Step 1

21  or any claims alleged at Step 2.

22  A    Yes.

23  Q    Okay.  Now there's been some questions asked about

24  your bankruptcy law experience and you've been candid that

25  you don't hold yourself out as a bankruptcy law expert, but

1  one of the things you do hold yourself out as, as a

2  corporate governance expert.  Correct?

3  A    Corporate law, corporate governance, corporate

4  acquisitions, yes.

5  Q    Okay.  And in connection with that expertise, one of

6  the reasons why you reach the opinion that there are not

7  claims with a meaningful chance of success against Mr. Zell

8  at Step 1 is because Mr. Zell was on the other side of the

9  deal from the Tribune.  Correct?

10  A    That is an important source of my opinion.  So he

11  could not be liable for breach of fiduciary duty as a

12  director because he was not a director at the time that Step

13  1 was negotiated and entered into is my understanding.

14  Q    And you have no reason or no evidence that you have

15  seen that the negotiations regarding the acquisition of the

16  Tribune were anything other than arm's length.

17  A    I have seen no evidence that they were other than at

18  arm's length.

19  Q    And, in fact, with regard to Step 2, the evidence that

20  you're aware of is that Mr. Zell abstained from all of the

21  Tribune board's consideration of the second step merger.

22  A    So I believe what I say in my report is he abstained.

23  We know is a formal matter, he abstained.  So unless he was

24  informally or secretly trying to influence Tribune decision,

25  Tribune's decision, then it's hard to see how he is liable

1  as a director and I am aware of no evidence that he was

2  secretly trying to influence Tribune's decision.  Let me

3  stop there.

4  Q    Okay.  And so you have not seen any evidence in the

5  record based upon your review that you've undertaken for the

6  last year, that the claims against Mr. Zell or EGI, TRB have

7  any significant merit.  Correct?

8  A    That's my view.

9  Q    And in your opinion, there's no basis in the record to

10 suggest that Mr. Zell any way acted in bad faith here.

11 A    I have seen no evidence in the record to suggest bad

12 faith on the part of Mr. Zell.

13 Q    And in your opinion, you've seen no basis in the

14 record to suggest that Mr. Zell knew or thought that the

15 Tribune was insolvent at any point during Step 1 or Step 2?

16 A    I am not aware of evidence in the record that Mr. Zell

17 believed Tribune was insolvent at either Step 1 or Step 2.

18 And as I testified at deposition, there is some evidence

19 suggesting he believed Tribune continued to be solvent at

20 Step 2.

21 Q    Okay.  Now, in fact, if a litigation trust or a party

22 pursues a claim without significant merit that has a very,

23 very low probability for success and they don't hit a home

24 run and lose, that can cause the litigation trust or the

25 party bringing that claim to suffer some economic downside.

1  Correct?

2          MR. SOTTILE:  Objection to form, lack of

3  foundation.

4          THE COURT:  Well, let me just ask this.

5  Understanding that almost every question asked on cross is

6  designed in some respect to be self serving --

7  (Laughter)

8          THE COURT:  -- even I get the point.

9  (Laughter)

10          THE COURT:  Do I have to sustain the objection?

11          MS. STEEGE:  Your Honor, we'll withdraw the

12  question.

13          THE COURT:  Thank you.

14  BY MS. STEEGE:

15  Q    Okay.  Now you talked about the Zell note in

16  connection with some questions that Mr. Zensky asked you.

17  A    Very briefly.

18  Q    Okay.  Now, in fact --

19  A    I think that I -- you know, he asked me is the

20  following true and I said no and he went onto the next

21  topic.

22  Q    Right.  And the point that I would like to draw out

23  is, in fact, the Zell note is actually a note that's held by

24  EGI-TRB.  Correct?

25  A    So there were two notes.  There was a Step 1 note and

1  a Step 2 note and I believe both of them were held by EGI-

2  TRB, LLC is my understanding.

3  Q     Okay.  Now, sir, are you aware that EGI-TRB takes the

4  position that its notes are senior to the PHONES notes based

5  upon the subordination provisions in each of those

6  agreements?

7  A     I am aware that EGI-TRB takes that position and I'm

8  aware of the language in the subordination agreements that

9  is related to that position, yes.

10  Q     Okay.  And now in your charts in your report where you

11  show what the recoveries will be under the various

12  scenarios, you don't include the EGI-TRB notes.  Correct?

13  A     I do not, that's correct.

14  Q     Okay.  But in failing to include the EGI-TRB notes,

15  you are not offering an opinion on how those notes would be

16  treated by the Bankruptcy Court in this bankruptcy

17  proceedings?

18  A     I am not.

19          MS. STEEGE:  Your Honor, I have no further

20  questions.

21          THE COURT:  All right.  Any other cross

22  examination?

23  (No audible response.)

24          THE COURT:  Redirect?

25          MR. DUCAYET:  May I proceed, Your Honor?  Thank

1    you.

2                    REDIRECT EXAMINATION

3    BY MR. DUCAYET:

4    Q      Good morning, Professor Black.  I have just a few

5    questions for you.  First of all, you just heard counsel for

6    Mr. Zell ask you some questions about the Zell note and

7    claims against Mr. Zell.  Do you have any understanding as

8    to whether or not the committee has filed a complaint that

9    includes claims against Mr. Zell?

10   A      My understanding is that it has.

11   Q      And Mr. Zensky asked you some questions about the

12   valuation of the Zell notes in your analysis.  Do you recall

13   that?

14   A      Yes, although again, remember, there's a Step 1 note

15   and a Step 2 note.

16   Q      Can you just explain for us how it is that you valued

17   the Zell note for purposes of your analysis?

18   A      Yes.  So at Step 1 which would be without formal step

19   integration, the -- Zell held a $225 million note which was

20   exchangeable into common shares at Mr. Zell's option.  And

21   convertible into common shares at the company's option.  So

22   my thought process was if Tribune is having trouble paying

23   its bills, it has an easy way not to have to pay off the

24   Zell Step 1 note which is they just cause it to be converted

25   into shares.  And that's why I treated it as effectively

1  equity because it was both convertible at Mr. Zell's option

2  and critically exchangeable into shares at Tribune's option.

3  Q    Now Mr. Zensky also asked you some questions about the

4  valuation of the PHONES.  Do you recall that for purposes of

5  your analysis?

6  A    Yes.

7  Q    Okay.  And do you have any understanding as to how the

8  examiner valued the PHONES for purposes of the work that he

9  did?

10  A    So I believe that the examiner used the total value

11  that Tribune carried the PHONES at on its books which

12  includes both a debt component and an equity component.  And

13  the footnotes to the financial statements breakout those two

14  pieces.  And I thought for the balance sheet solvency

15  analysis, I should include only the debt component on the

16  debt side.  The difference is about $100 million.

17  Q    Thank you.  And Mr. Zensky also asked you a number of

18  questions about asset disposition tax value and cash flow

19  tax value to Tribune and the like.  Do you recall that?

20  A    Yes, I do.

21  Q    Now you testified yesterday about having performed

22  various sensitivity analyses.  Do you recall that?

23  A    Yes.

24  Q    And did you, in fact, perform some sensitivities

25  around this issue of whether or not tax value counted for

1   purposes of your analysis?

2   A      Yes.  I think we worked through an example of

3   reconciling my central estimate of a settlement recovery to

4   my estimate of the examiner's estimate of essential

5   recovery.  And an important part of that reconciliation was

6   that if I removed all possibility of either source of tax

7   value from my analysis, then I think my central estimate

8   went up from about $290 million to about $400 million and

9   closed about two-thirds of the gap to the examiner.

10  Q      Okay.  By the way, if I could just follow up on that

11  point.  In terms of the reconciliation between your view and

12  the examiner's view, are there any other adjustments that

13  you could make in connection with reconciling the value that

14  you come up, the value that the examiner has?

15  A      Well, there were, I think three principal adjustments

16  that would be worth making.  The first was take out S ESOP

17  tax value.  You just take out, say it's not there.  The

18  second was to move my probabilities of either formal or

19  informal step integration which are substantially lower than

20  the examiners and just take his probabilities as I

21  understand them to be.  And that would substantially close

22  the rest of the gap.  The third piece was that the examiner

23  treated the Cubs and part of the Tribune entities ownership

24  of Classified Ventures as belonging to Tribune, when, in

25  fact, all of the Cubs belonged to a guarantor sub and part

1  of the interest in Classified Ventures belonged to a

2  guarantor sub.  The implication of that is that the examiner

3  has about an extra $1.1 billion in value at the sub's

4  balance sheet value so assets minus debt.  And the corrected

5  value would be about $1.8 billion.  And the implication of

6  that is that would make it harder to find balance sheet

7  insolvency at the subs.  Right?  It wouldn't affect balance

8  sheet insolvency at Tribune, it would only affect the subs.

9  In my estimate of how that might have affected the

10  examiner's view, that would matter, you know, $15 million,

11  $25 million.  So if I make all three of those adjustments,

12  my estimate of litigation recoveries is actually a little

13  bit north of the examiner's estimate.

14  Q    Okay.  And just to follow up on the point about the

15  Cubs and the Classified Ventures issue.  When you were

16  trying to model the examiner's probabilities and the

17  recoveries from the examiner's scenario, if you will, did

18  you make any adjustments regarding the cubs or the interest

19  in Classified Ventures?

20         MR. ZENSKY:  Your Honor, I have an objection to

21  form.  I don't think it was intentional.  Counsel referred

22  to the examiner's scenarios and I think you're referring to

23  the examiner's conclusions?

24         MR. DUCAYET:  That's a good --

25         MR. ZENSKY:  Can you rephrase that?

1       MR. DUCAYET:  Yeah, let me rephrase.

2   BY MR. DUCAYET:

3   Q    So yesterday, you walked us through the various

4   outcomes that you computed based on a high settlement case

5   and a low settlement case and in the examiner case.  Do you

6   recall that?

7   A    Yes.

8   Q    And in computing the examiner case, did you attempt to

9   correct for the factual errors regarding the Cubs in

10  Classified Ventures?

11  A    I took the examiner's case to be my effort to model

12  what the examiner said mistakes and all.  So he clearly got

13  the Cubs wrong and I said I'm going to treat the Cubs the

14  way he treated the Cubs.  I believe that he misunderstood

15  asset disposition tax value.  And if he understood, it might

16  have had a different view.  I took his understanding of

17  asset disposition tax value and so on for any other places

18  where I thought, you know, he just got this wrong.  I was

19  taking his words as best I understood them and his analysis

20  as best I understood it.

21  Q    Let me switch to a different topic.  Yesterday, at the

22  beginning of Mr. Zensky's cross examination, he asked you

23  some questions about the Alvarez intercompany analysis.  Do

24  you recall that?

25  A    Actually, no.

1    Q    Okay.  Do you recall that he asked you some questions

2    about different -- the intercompany model that fed into your

3    recovery analysis?

4    A    Oh, yeah, the sub claims against Tribune and Tribune's

5    claims against the guarantor subs, yes.

6    Q    And do you recall that you also talked about yourself

7    having developed at least something of a model regarding the

8    intercompany claims?

9    A    I would say that the potential value of the

10   intercompany claims was a live issue in this case and so I

11   spent a substantial amount of time with principally with

12   Brian Whittman at Alvarez trying to understand why he had

13   reached the judgments he had reached and whether I agreed

14   with those judgments and then I performed sensitivity

15   analyses around those judgments.  So the higher the sub

16   claims against Tribune, the more of Tribune value goes down

17   to the subs and then mostly out to the banks.  So if you

18   could reduce that value, more of the Tribune value would go

19   out to the notes.  So I wanted to try to assess kind of what

20   was a minimum value that nobody would be likely to argue was

21   legitimate debt of Tribune to the subs.  And then I ran a

22   sensitivity analyses using lower values for the sub claims

23   against Tribune.

24   Q    And let me just ask you this.  The way I heard it and

25   I went back last night and took a look at the transcript is

1  I think you said that the differences between Alvarez's

2  analysis and your analysis was $1 billion?

3  A      No.

4  Q      Is that a misstatement or a --

5  A      No.  So that was something different.  That was Alvarez

6  took into account not only that the subs have claims against

7  Tribune, but Tribune has net claims against some of the

8  subs.  So there are lots of claims going both ways.  We

9  assume they offset each other under the offset provisions of

10  the Bankruptcy Code.  And we ask about the net amounts that

11  are left, right?  There are some cases where Tribune has

12  claims against some of the subs.  And then you have to ask

13  if we enforce those, how much will that matter?  And the

14  answer is a relatively small amount of dollars would go up

15  to Tribune.

16  Q      Um-hum.

17  A      But a lot of that would either go out to the banks if

18  they're allowed in at least at Step 1.  And a lot of it

19  would go right back down to the other guarantor subs who are

20  creditors of Tribune.  And the net effect of that movement

21  of funds would have been, I think under a million dollars,

22  not a billion, a million dollars in recoveries for the

23  notes.  And so I made the judgment that in my modeling, I

24  would not take into account that flow of funds because it

25  was quite complicated to do so and I just thought this is a

1  rounding error.

2  Q    Okay.  And I just wanted to make sure.  You -- when

3  you said billion, you misspoke, you meant million, right?

4  A    I meant million for this movement of sub value up to

5  Tribune under Tribune claims against subs and then how much

6  ends up getting left at Tribune and then getting distributed

7  to the notes.

8  Q    Okay, thank you.  Now, Mr. Zensky asked you some

9  questions about your role in the Garamella shareholder

10  litigation.  Do you recall that?

11  A    I certainly recall some testimony about my report.

12  Q    Yes.  Let me just ask you this.  Did your involvement

13  in the Garamella case back in 2007 inform your views on the

14  issue of step integration?

15  A    Yes, it did.

16  Q    In what way?

17  A    So I was aware from 2007, that at that time, it was

18  the Tribune view, not thinking about solvency, not thinking

19  about formal step integration, just thinking about can we

20  get this deal done.  That the tender offer stood on its own

21  and they should be allowed to complete it whether or not the

22  merger were ever going to close.  So that informs my

23  judgment as to how you might with a full development of the

24  facts, decide on formal step integration.  That there was a

25  contemporaneous history there that suggested that the

1  separate Step 1 was important to Tribune.

2  Q    And now Mr. Zensky also asked you some views about --

3  some questions about your views of the performance of

4  Tribune in the first couple months of 2007.  Do you recall

5  that?

6  A    Yes, he did.

7  Q    Okay.  Now is this a topic that the examiner also

8  looked at?

9  A    Yes, it is.

10  Q    Okay.  And did the examiner have anything to say about

11  the reasonableness of the forecast for the first step of

12  this transaction?

13  A    The examiner concluded that as of the time of Step 1,

14  it continued to be reasonable for -- to rely on the Step 1

15  projections, the pre-Step 1 projections, the February 2007

16  projections in assessing solvency at the time of Step 1.

17  Q    Okay.  And do you have any different view?

18  A    So here's how I thought about the reasonableness of

19  projections.  I looked at them and said first of all, what

20  you really care about is not how Tribune is doing in the

21  next three months.  What you really care about is how are

22  they doing over five years?  All right.  And so how

23  reasonable are these projections over five years, even

24  though they missed for a couple of months period.  It's only

25  two months.  Maybe not such a big deal over five years.  I

1  then compared the Tribune projections to the research case,

2  the analyst estimates to see whether there was a large

3  difference over the long run.  There was clearly a

4  difference over the short run, right?  Tribune had

5  underperformed its own projections over the short run.  I

6  then tried to think about, okay, we have these downside

7  cases.  We have Management Downside A down 2 percent in

8  publishing, 0 in broadcasting.  We have Management Downside

9  Case B, down 3 percent on publishing and I think it was -1

10 on broadcasting, if I'm remembering.  And I said, how do I

11 get comfortable with what would a real downside case be

12 because after all, I'm not a publishing industry expert.

13 I'm not a broadcasting industry expert.  How do I assess

14 whether the right downside case is down two, which they

15 could -- under which Tribune could pay its bills, down three

16 under which it could barely pay its bills, or down five

17 under which it couldn't pay its bills.  And I said let me

18 look for extrinsic evidence on that.  And one of the pieces

19 that I looked to is what was the market for the notes and

20 the credit default swaps telling me about the likelihood of

21 solvency?  So that was an important piece of my analysis.

22 And my sense was it was likely to be an important piece of

23 your analysis because you might end up thinking I'm not a

24 publishing expert either, let me look for other sources of

25 evidence.  And the three to five year likelihood of default

1   was low, the market was telling you that.  Then I also asked

2   the question suppose down three were the right estimates?

3   Suppose it were not just the downside case, that was the

4   central long-term estimate, right?  It wasn't a downside

5   case that should be the base case and the downside case

6   should be off of that.  Under that state of the world, what

7   should Tribune's share price be?  All right.  And the answer

8   and it's in the Morgan Stanley valuation is they did a DCF,

9   discounted cash flow valuation, of Downside Case A and

10  Downside Case B.  In Downside Case B, I think their range

11  was Tribune's share price before Step 1 should be between

12  $14 and $18 a share.  Well, it wasn't between $14 and $18 a

13  share.  Even without the merger, it would have been clearly

14  well into the 20's is my best judgment of the market.  So

15  that's telling me that Downside Case B is well below what

16  the market thought Tribune was going to do at that time.  So

17  that was another source of comfort that Downside Case B was

18  a serious downside case and was well below market

19  expectations.  And I've already testified that it was well

20  below the long-term research case.

21  Q    Okay.  And ultimately, did you form a judgment

22  regarding the reasonableness of the projections?

23  A    I made a judgment that it was given knowledge to the

24  end of April that it continued to be reasonable to rely on

25  the projections for the stress case.  All right.  And I was

1    interested in the stress case in cash flow cushion.

2    Q      For all the reasons you just described?

3    A      Yes.

4    Q      Okay.  Let me switch topics here.  Mr. Zensky asked

5    you a number of questions yesterday about some changes that

6    you made to the report as it was initially filed back in

7    early February.  Do you recall that?

8    A      Yes, I do.

9    Q      And in particular, he asked you questions about

10   changes in what I think you referred to as your interior

11   probabilities.  Do you recall that?

12   A      That's right.  Those would be the probabilities for

13   Scenarios B, C, D, and E.  Not no avoidance and not full

14   avoidance, but in between.

15   Q      Okay.  Now Mr. Zensky did not ask you what the

16   financial impact of the changes were, did he?

17   A      He did not.

18   Q      Okay.  And did you, in fact, calculate what the

19   financial impact was of making those changes?

20   A      Yes, I did, and you can see that by comparing my

21   initial report to my revised report.

22           MR. DUCAYET:  Let's do that then.  Could I ask

23   you guys to put up the red line?  Page 29.

24           MR. BENDERNAGLE:  Does it have an exhibit number?

25           MR. DUCAYET:  It doesn't.  Yeah.

1       UNKNOWN:  You've try to correspond it with the

2  exhibit number --

3       MR. DUCAYET:  Yeah.  29.

4       UNKNOWN:  29?

5       MR. DUCAYET:  That's the revised chart, by the

6  way.  Thank you.  Okay.  And could you guys do me a favor

7  and just cull out the chart that's at the top of that page?

8  And if you could further cull out the notes line there, it's

9  three down.

10       UNKNOWN SPEAKER:  I'm not finding notes.  The

11  notes?

12  BY MR. DUCAYET:

13  Q    Notes.  Okay.  I'm having a hard time seeing that, but

14  okay.  Now Professor Black, I've asked for the demonstrative

15  here to be pulled out and show Table 5 of your report and

16  this is a red line showing the changes from your initial

17  report to your revised report.  Does this look familiar to

18  you?

19  A    Yes.

20  Q    Okay.  And could you just walk us through the notes

21  line and this is Table 5, right?  This is the showing

22  recoveries in the different cases with the third party

23  recoveries?

24  A    Do you want just the numbers or an explanation?

25  Q    I would like both.  Why don't we start with the

1   numbers though.  And if you could just start for me, I'm not

2   sure if you're going to need your trusty HP calculator here,

3   but if you could just so the record is clear, identify the

4   original number that you had for the low settlement case for

5   the notes.

6   A     Yeah.  So my original low settlement number for the

7   low end of my settlement range was $227 million recovery to

8   the notes.

9   Q     And how did it change?

10  A     It went down to $217 so it was change of negative $10

11  million.

12  Q     Okay.  And then taking a look at the high settlement

13  case, can you just read into the record the differences

14  between your original report and your revised report?

15  A     Yeah, the original number was $609 million and that

16  went down to $600 million, so a drop of $9 million.

17  Q     Okay.  So roughly $10 million difference in the range

18  between the low settlement and the high settlement and that

19  was an adjustment downward, right?

20  A     Yeah, both the low and the high went down by about $10

21  million.

22  Q     Okay.  And then just for the sake of completeness, can

23  you identify the differences on the Black case, please?

24  A     So the Black case went down by $3 million from $297 to

25  $294.  The reason that's smaller is because I also made a

1  change in the probabilities of no step integration versus

2  informal step integration that would have been plus 8 and

3  then the effect of the let me call them the Zensky changes

4  was -11 and that lead to a net of -3.

5  Q    Okay.

6  A    And the examiner went down -- the examiner case went

7  down by $13 million.

8  Q    Okay.  Now if you could just now provide the

9  explanation.  Why is it that these numbers are moving down

10  only by about $10 million?

11  A    Sure.  So as we discussed in my direct testimony, the

12  key drivers of value, the key driver of value is what's the

13  weight on Scenario F?  All right.  And, therefore, the key

14  drivers are what gets you to the weight on Scenario F.  And

15  those drivers are balance sheet solvency, cash flow solvency

16  at Step 1 and then statutory defenses.  And then my

17  assessment that if Tribune were cash flow solvent with a

18  cash flow cushion at Step 1, the likelihood of Tribune

19  actual intent or full equitable subordination of the banks

20  was low in that sub scenario.  And so the question then

21  becomes did the changes I made in response to Mr. Zensky's,

22  you know, excellent analysis of my original probabilities,

23  did those change the underlying substantive drivers of

24  Scenario F?  And, therefore, did they change the

25  probabilities of Scenario F?  And the answer is that there

1  was almost no change.  It would have been, I'm reporting to

2  the nearest percent in my table, in the fractions of

3  percents, I think there were a couple of cases where I

4  slightly changed the likelihood of Scenario F.  But if you

5  look at, I think it's going to be Table 3 in my original

6  report and look at the Scenario F line which is the critical

7  line and then look at my revised report, it's the same

8  percentages.  So if Scenario F is driving recoveries, the

9  Scenario F percentages are the same.  B, C, D, and E can

10  move around a little and that will nudge things a little bit

11  one way or a little bit the other, but they're not going to

12  be major drivers of my settlement range.

13  Q     Okay.  And Mr. Zensky asked if changes of the

14  magnitude that he identified suggested a flaw in your

15  methodology.  Do you recall that?

16  A     I remember his asking whether I had less confidence in

17  my results.

18  Q     Okay.  And what did you answer?

19  A     I said no, I didn't have less confidence.  And I think

20  actually I had what will initially seem an odd reaction, but

21  I want to explain.  I have more confidence in my settlement

22  range now.

23  Q     Okay.  And why is that?

24  A     So the way I want to think about it is think about my

25  academic research where a lot of what I publish is in peer

1  review journals.  And what we think is that the process of

2  peer review of someone else checking and pushing on your

3  results, strengthens the results.  Sometimes, they go away,

4  right?  But the ones that are left get stronger because

5  they've been through the peer review process.  And I was

6  thinking about the paper that on corporate governance in

7  Korea of all things that I'm going to publish in the Journal

8  of Financial Economics later this year, where we got a

9  really smart, really tough referee report.  It took us over

10 a year and significant work to respond to all the things the

11 referee wanted us to do to check our results.  And some of

12 the results in the original draft, in fact, went away.  They

13 were not robust to the ways that the referee wanted us to

14 test them.  Fortunately, the main results survived and

15 that's why the paper will get published in a top journal.

16 And the result of that process is the main results in my

17 view, gets stronger because a smart tough referee has pushed

18 on them.  So my view here was, Mr. Zensky is a smart tough

19 lawyer and he knows the facts really well and he knows the

20 examiner report really well and he's pushed on my results

21 and they move a little, but they moved only a little and

22 there were a lot of pieces of my report that I think he

23 didn't really push on, so I end up actually with more

24 confidence that my settlement range is a reasonable range.

25 Q     Okay, thank you.  Let me turn to a different topic.

1  Now you were asked on cross a number of questions about

2  potential recoveries in situations where Step 2 is avoided,

3  enterprise value goes up, and post petition interest is not

4  allowed.  Do you recall that?

5  A     So Step 2 is avoided, but not Step 1?

6  Q     Right.

7  A     And enterprise value is north, substantially north of

8  the Lazard estimate of $6.75 billion.  And one assumes that

9  you make a judgment not to allow post filing interest.

10 That's correct.

11 Q     Okay.  And you did some sensitivity analyses along

12 those lines, testing those different variables?

13 A     Yes, I did.

14 Q     Okay.  And what was the outcome of that sensitivity

15 analysis?

16 A     So as I think I described some of this on my direct.

17 If you only move up enterprise value and stay with my

18 estimate that post filing interest has a 70 percent

19 probability in Scenarios C and E, then not much happens at

20 7.1 billion valuation.  Not much happens at $.5 billion

21 valuation.  And the range moves up significantly if you go

22 to an $ billion valuation.  And by the time you get to an 8

23 billion valuation, the top of the range is slightly higher

24 than the DCL plan, but the DCL plan is still very much at

25 the top end of the range at an 8 billion valuation.  If I

1  stay with either a 6.75 billion valuation or move it up to

2  7.1 billion and say let me bring down the likelihood of post

3  filing interest, let me bring it down to 30 percent or an

4  extreme test, let me bring it down to zero percent, though

5  that's not realistic in a settlement analysis.  30 percent

6  is really as low as I think one ought to go because there

7  are real arguments for why post filing interest should be

8  allowed.  Not much happens at a 7.1 billion valuation.  And

9  somewhat more happens at a 7.5 billion valuation.  And at

10 that valuation, the top end of the range is if I recall in

11 the low 700's, but the DCL plan at 659 is still well toward

12 the top end of the range.  So just to be clear, that would

13 be 7.5 billion of enterprise value and a 30 percent

14 likelihood of post filing interest.  If I then try to say

15 well 7.5 billion is just one possibility, suppose I give it

16 a probability, then once again, the DCL plan is going to be

17 above the top end of the range.  If I push to $8 billion in

18 valuation and a 30 percent likelihood of post filing

19 interest, so I move valuation way up and I move post filing

20 interest as far down as I would be comfortable moving it,

21 then I believe the DCL plan becomes in the middle of the

22 range. But if, again, if all I do is assign a possibility to

23 that outcome where you have to go way up in value and that's

24 got a probability and you've got to go substantially down in

25 post filing interest and that's got a probability, then the

1  DCL plan would still look very good.

2  Q     Okay.  Now, Mr. Zensky read to you a portion of your

3  deposition testimony in which you were talking about the

4  examiner's views on the possibility that Step 1 banks would

5  be prevented from participating in recoveries that would

6  otherwise would have gone to the Step 2 holders even in the

7  absence of equitable subordination.  Do you recall that?

8  A     I recall some discussion, but not the details.

9  Q     Okay.  And at your deposition, you agreed that --

10  well, do you recall what the examiner's conclusion was in

11  this regard?

12  A     So what the examiner said was he considered the

13  possibility that disgorgement either from shareholders or

14  from the Step 2 banks would come in to Tribune and then not

15  go to the Step 1 banks, but only go to the notes.  And he

16  said, you know, this is a possible equitable remedy.  He

17  considered it I think "appealing".  He also said I can't

18  find a doctrinal basis for it so let me leave it in

19  equipoise.  And then he modeled what would happen in that

20  outcome in his Case 8.  So he has six main scenarios 1

21  through 6, 7 is shareholder recoveries,  8 is shareholder

22  recoveries, plus Step 2 disgorgement, plus the disgorgement

23  only goes out to the old Tribune creditors.  And he modeled

24  that as one of his scenarios.

25  Q     Okay.  And just so we're clear, do you believe that's

1  a way to generate enough value to pay the senior notes in

2  full?

3  A    I don't believe that it is because as long as you're

4  only operating at the Tribune value, at the Tribune level,

5  the Step 2 disgorgement is only $300 million and it's not

6  all going to go to the notes.  There's a good chance that

7  some of it will go to the subs.  Maybe a lot of it would go

8  to the subs so you would then have to make a decision, okay,

9  the money's coming in to Tribune, but there's this $6.9

10 billion sub claim, do you allow it?  Do you allow it in

11 full?  Do you allow it in part in order to pay off the other

12 sub creditors who would include the sub trade credit and the

13 interest rate swap, I think would be the principal non-bank

14 sub creditors.  Because it would be hard to see why they

15 wouldn't get to eat at the Tribune table as I think of it

16 because they're not bank debt.  If you did that, the

17 remaining amount is going to be small.  So even if you

18 assign a probability to this equitable remedy, in the

19 scenarios to which it applies which only apply with some

20 probability, it just not -- is not going to move the

21 expected recoveries -- I think my estimate was with

22 realistic probabilities was about $5 million.

23 Q    Now Mr. Zensky asked you a number of questions about

24 the subjective aspects of your analysis, generally.  Do you

25 recall that?

1  A      Generally.

2  Q      Okay.  Do you dispute that part of your analysis

3  involves making judgments?

4  A      I think my analysis is centrally about making

5  judgments.

6  Q      Okay.  So I -- do you believe that's a flaw in your

7  methodology?

8  A      I think it's a necessity.  I had to make judgments

9  about value.  I had to make judgments about balance sheet

10 value.  I had to make judgments about whether projections

11 were reasonable.  I had to make judgments about market

12 values.  I had to make judgments about how to interpret the

13 examiner case.  I had to make judgments about, in the low

14 settlement case, how hard do I want to push toward a bank-

15 favoring view of the world?  In the high settlement case,

16 how hard is it realistic to push toward a note favoring view

17 of the world?  So I think my report is full of judgments.

18 Q      Okay.  Let me ask you about one specific issue.  You

19 talked a little bit about the matter of related or compound

20 probabilities of different events.

21 A      Yes.  So many of the relevant outcomes are related to

22 each other.  And one example would be a view of Tribune that

23 would lead you to find balance sheet insolvency would be

24 more likely to also lead you to find lack of cash flow

25 cushion and vice versa.  That was one example.

1    Q    Is there some mechanical way of dealing with those

2    kinds of related or compound probabilities?

3    A    So what you can do is put outer bounds on them.  So

4    let me use an example from my report.  So suppose you were

5    to decide consistent with the examiner view that there is a

6    60 percent likelihood of balance sheet solvency at Step 1

7    with formal step integration.  And a 70 percent likelihood

8    of cash flow cushion at Step 1 with integration.  So we got

9    60 percent for one route and 70 percent for the other.  Then

10   the question would be what's the combined likelihood that

11   Tribune will be insolvent on both routes?  The lowest it can

12   be is if these are truly independent, you take 60 percent,

13   you multiply by 70 percent, you get to 42 percent.  The

14   highest it can be is these are completely related and you

15   just go with the 60 percent which was the lower of 60 and

16   70.  In my judgment, and I applied this to all of my

17   settlement cases was that the true probability would be

18   somewhere in between.  And, you know, maybe roughly in the

19   middle, but that would be a judgment.

20   Q    Okay.

21   A    It would be more than 42 percent here.  It would be

22   less than 60 percent and it would be somewhere in between.

23   Q    And the use of judgment in the way you've just

24   described it is that consistent with the way the issue is

25   dealt with the academic literature?

1   A      I'm not sure that --

2              MR. ZENSKY:  Objection to form, Your Honor.

3              MR. BLACK:  -- that I understand the question,

4   I'm sorry.

5   BY MR. DUCAYET:

6   Q      Okay.  Are you familiar with the academic literature

7   on how to model situations in which you have compound or

8   related probabilities?

9   A      So, look, you would assess what's the likely

10  correlation between two outcomes in order to assess the

11  combined probability.  Now I don't know what the correlation

12  is, right?  Zero percent correlation in my example gets me

13  to 42 percent probability of solvency.  100 percent

14  correlation gets me to 60 percent probability of solvency.

15  What's the real correlation?  I don't know so I put it

16  somewhere in the middle.

17  Q      And ultimately you used your judgment to make that --

18  A      Yes, I did.

19  Q      Okay.  During the first part of the cross, Mr. Zensky

20  asked you about some deposition testimony in which you said

21  you were struggling to understand the argument that the

22  noteholders were making about Step 1 not participating in

23  recoveries on Step 2.  Do you recall just generally that

24  testimony?

25  A      Yeah, especially with regard to the argument at the

1  subsidiary level.

2  Q     And as you sit here today, Professor Black are you

3  still struggling to understand that issue?

4  A     So I describe in probably in my rebuttal report what I

5  assumed the argument is and we discussed on my direct

6  testimony how I understand the argument and how for me this

7  is in effect turning the Tribune level creditors into

8  sublevel creditors with a $3.7 billion claim, but I might be

9  wrong about that.

10  Q    Okay.  So is it fair to say you're still struggling to

11  understand exactly what the issue is?

12            MR. ZENSKY:  Objection, leading.

13            THE COURT:  Sustained.

14            MR. DUCAYET:  I'll withdraw.  Professor Black are

15  you generally available to return to provide rebuttal

16  testimony if the need should arrive?

17            MR. BLACK:  Yes.

18            MR. DUCAYET:  Okay.  Nothing further.

19                 THE COURT:  Recross?

20                 RECROSS EXAMINATION

21  BY MR. ZENSKY:

22  Q    Professor, just a few questions.  You said that during

23  the course of the deposition there were parts I pushed you

24  hard on and other parts of your report I didn't push you on?

25  Do you recall that?

1    A     That sounds like approximately what I just said a few

2    minutes ago, yes.

3    Q     You do remember I was limited to nine and a half

4    hours, right?

5    (Laughter)

6            MR. BLACK:   I thought it was ten hours.

7    BY MR. ZENSKY:

8    Q     I had to share some of my time.  Mr. Ducayet asked you

9    a few questions at the beginning of his redirect about

10   whether you could reconcile the Black conclusion with the

11   examiner conclusion by making some adjustments for how you

12   treat the tax value.  Do you recall that?

13   A     So what I described was reconciling the Black case

14   which is my best estimate of how a judge would resolve

15   issues with the examiner case which is not the examiner

16   conclusion is my best estimate of how the examiner would

17   assign probabilities and, therefore, assess an expected

18   settlement outcome.

19   Q     Sure, okay.  And your ability to reconcile your

20   outcome with the way you modeled the examiner outcome would

21   assume by necessity that you have properly applied the

22   examiner's conclusions about the individuals issue.

23   Correct?

24   A     Well, technically no, because technically what I'm

25   doing is reconciling my view of how a judge might decide to

1   my view of how the examiner would decide.  So if I'm wrong

2   about how the examiner would decide, then I'm wrong in the

3   examiner case estimate, but I'm still right in reconciling

4   my Black case to my examiner case.

5           MR. ZENSKY:  Okay.  I think that's all I have,

6   Your Honor.

7           THE COURT:  All right.  Any other recross?

8   (No audible response.)

9           THE COURT:  Well, Professor, I was going to tell

10  you, you can now go home and tell your wife everything, but

11  if you are going to be recalled for rebuttal, you might not

12  want to do that.  But you may step down now, sir.

13          MR. BLACK:  Thank you.

14          MR. BENDERNAGEL:  Is this a good time to break

15  for lunch?

16          THE COURT:  I'd say it would be an ideal time to

17  break for lunch.

18  (Laughter)

19          THE COURT:  We will reconvene at 1:30.

20          MR. BENDERNAGEL:  Thank you, Your Honor.

21          THE COURT:  Court will stand in recess.

22  (Recess from 12:26 p.m. to 1:33 p.m.)

23          THE CLERK:  All rise.

24          MR. BUSATH:  Good afternoon, Your Honor.  Lynn

25  Busath from Davis, Polk & Wardwell for JPMorgan Chase, its

1   agents, and we call our next witness, Professor Daniel R.

2   Fischel.

3             THE COURT:  All right.  Please remain standing to

4   be sworn in, sir.

5             THE CLERK:  Raise your right and place your left

6   hand on the bible.

7                  DANIEL ROBERT FISCHEL, SWORN

8             THE CLERK:  Please be seated.

9             THE COURT:  I ask anyone with an active PDA on

10  this side of the bar, please, to turn it off.

11            MR. BUSATH:  And Your Honor, I have a set of

12  binders and exhibits.  May I hand them up at this time?

13            THE COURT:  You may.

14            THE CLERK:  Please pull the microphone toward

15  you.  Please state your name, for the record, and spell your

16  last name.

17            THE WITNESS:  My name is Daniel Robert Fischel,

18  spelled F-i-s-c-h-e-l.

19            THE CLERK:  Thank you, sir.

20                         VOIR DIRE

21  BY MR. BUSATH:

22  Q    Okay.  Professor Fischel, where are you currently

23  employed?

24  A    I'm employed by an economics consulting firm by the

25  name of Compass Lexecon.  I'm also professor of law and

1 business emeritus of the University of Chicago Law School,

2 and I also currently am professor of law and business at

3 both Northwestern Law School, and I also have a courtesy

4 appointment at the Kellogg School of Managed at Northwestern

5 University, although I've recently resigned my position at

6 Northwestern, effective at the end of this academic year.

7 Q    And could you tell us, what is Compass Lexecon?

8 A    Compass Lexecon is an economics consulting firm that,

9 for the most part, specializes in the application of

10 economics to various different types of legal disputes.

11 Q    Okay.  Can you give the Court a sense of the --

12 Compass Lexecon's personnel and clients?

13 A    Yes, we have approximately 300 employees, with offices

14 in Chicago, Boston, New York, Washington, Los Angeles, and

15 San Francisco.  Our professional staff consists primarily of

16 PhDs, MBAs, some CPAs, and some individuals with master's

17 degrees, and then we also have a number of research

18 assistants that have BA degrees.  In addition to that, we

19 have a number of affiliations with outside academics,

20 including a number of Nobel Prize winners in economics

21 throughout the country, as well as a number of other

22 academics with particular expertise in particular areas.  In

23 terms of our clients, they really run the gamut from

24 government entities to private firms to classes of

25 investors.  I think, probably, most relevant for a

1  proceeding like this, we've been involved, on one side or

2  the other, performing solvency analyses in many of the major

3  cases: Lehman, Chrysler, AIG, Adelphia, Anadarko, Lyondell,

4  Enron, many others.  But --

5  Q    Okay.  And what do you do at Compass Lexecon?

6  A    I do two things.  First, I'm the president and

7  chairman of the firm, so I have overall responsibility for

8  the entire firm.  And beyond that, I am an expert in

9  financial economics and the various related areas of

10 financial economics, and as a result of that, I frequently,

11 myself, serve, as I am in this case, as an expert witness.

12 Q    Okay.  What is your current position at Northwestern

13 University?

14 A    As I said, it's professor of law and business, both at

15 the law school and the Kellogg School of Management, the

16 business school, although I've recently resigned that

17 position, so as of the fall, I will no longer hold that

18 title.

19 Q    All right.  Now, what is your current position at the

20 University of Chicago?

21 A    It's the professor of law and business emeritus at the

22 University of Chicago Law School.

23 Q    Okay.  Have you had other positions at the University

24 of Chicago?

25 A    Yes.  For a number of years, I had a joint appointment

1  at the University of Chicago Graduate School of Business.  I

2  also served as dean of the law school for a number of years.

3  And for many years, I was head of the law and economics

4  program at the university, which is a university-wide

5  program, really focused, as the name suggests, on applying

6  economics to various issues in law.

7  Q    Okay.  What courses have you taught at Northwestern

8  University and the University of Chicago?

9  A    Throughout my career, I've taught courses in corporate

10  finance, corporations, business organizations, advanced

11  research seminars on selected topics in financial markets.

12  I've taught the economic analysis of law course, the

13  advanced seminar many times, and then assorted other

14  courses.  I've also taught the economics of pensions,

15  pension law and policy, which has a considerable component

16  on ESOPs, and a variety of other courses, but I would say

17  those are the core ones.

18  Q    And do any of the courses you've taught deal with the

19  subject of the testimony you're to give today?

20  A    Yes.  First of all, the -- my core focus of my

21  testimony is on valuation, and that is a principal area in,

22  particularly, the corporate finance class, but also in some

23  of the advance research seminars and advanced classes that

24  I've taught.  Also, the context of this case, a

25  recapitalization followed by a merger involving the use of

1  leverage, a leveraged buyout transaction, I have taught the

2  subject of corporate control transactions and the role of

3  leverage throughout my career.  And as I said, I've also --

4  it's less of a main interest, but I've also taught courses

5  involving pension economics, including the economics of

6  ESOPs.

7  Q    And you've taught courses in both the business school

8  and the law school?

9  A    Yes, throughout my career.

10  Q    And do business students take your courses?

11  A    Yes, they do.

12  Q    Okay.  Can you briefly describe your educational

13  background?

14  A    Yes, I went to Cornell University, where I graduated

15  in 1972 with a BA in history and a minor in economics.

16  Then, I went to Brown University, where I got an MA in

17  history.  Then, I went to the University of Chicago Law

18  School, where I got a JD degree, and that's where I

19  developed my interest in law and economics, studying the

20  interaction between law and economics with various members

21  of the faculty.

22  Q    And what did you do after law school?

23  A    I had the great privilege of serving as a law clerk

24  for two years, first to the Honorable Thomas Fairchild, who

25  was then the Chief Judge of the 7th Circuit Court of Appeals,

1  and then to the late Justice Potter Stewart.

2  Q    Okay.  Have you published any books or articles?

3  A    Yes, I've published several books, and approximately

4  50 articles in peer- and non-peer-review journals.  And you

5  know, it's a particularly -- the book that I wrote -- co-

6  authored with Judge Frank Easterbrook, *The Economic*

7  *Structure of Corporate Law*, published by Harvard University

8  Press, and I've also written a number of other articles,

9  both individually and with Judge Easterbrook on various

10 subjects relating to the economics of corporate law and

11 financial markets.

12 Q    Okay.  And have any of your books or articles been

13 cited by Courts?

14 A    Yes, hundreds of times from the United States Supreme

15 Court, multiple times to lower courts, at all levels.

16 Q    Okay.  And have any of your books or articles covered

17 the same issues that are arising in this case?

18 A    Yes, my books and articles, like my courses, deal

19 extensively with issues of valuation, the relationship

20 between market evidence and other methods of valuation.

21 I've written extensively on going private and other types of

22 corporate control transactions, and I've also written a

23 little bit about ESOPs as well.

24 Q    Okay.  And from time to time, have you been invited to

25 lecture to various audiences?

1  A      Yes, I've lectured extensively to groups of federal

2  judges, to business groups, to legal groups.  I've lectured

3  at many of the major universities in the country.  I

4  recently gave the Ralph Winter lecture, in honor of Judge

5  Ralph Winter, at Yale University, and that's something I do

6  fairly routinely.

7  Q      Okay.  As you -- have you served as a consultant on

8  economic issues to regulatory agencies or government bodies?

9  A      Yes, I've been a consultant or an expert witness for

10 many of the government agencies: the United States

11 Department of Justice, the Securities and Exchange

12 Commission, the Commodity Futures Trading Commission, the

13 Department of Labor, the Federal Trade Commission, the

14 NASDAQ, the New York Stock Exchange, as well as the Futures

15 and Commodities Exchanges as well.

16 Q      Okay.  Have you testified as an expert witness before?

17 A      Yes, many times.

18 Q      How many times?

19 A      Well, it's over a 30-year period, and if you include

20 all forms of testimony, all forms of sworn testimony namely

21 -- affidavits, depositions, and trials -- approximately 250

22 times.

23 Q      Have you ever testified as an expert in cases

24 involving valuing a company or the stock of a company?

25 A      Yes, dozens, if not more than that, times.

1  Q    Okay.  And have you testified before in cases

2  involving solvency of a company?

3  A    Yes.

4  Q    And have you testified in cases involving solvency in

5  a leveraged buyout?

6  A    Yes.

7         MR. BUSATH:  Your Honor, at this time, I'd

8  proffer -- tender Professor Fischel as an expert in

9  financial markets, valuation, and solvency.

10        MR. QURESHI:  No objection, Your Honor.

11        THE COURT:  All right.  You may proceed.

12                    DIRECT EXAMINATION

13 BY MR. BUSATH:

14 Q    Professor Fischel, who retained you in this matter?

15 A    I was retained by the Davis Polk law firm on behalf of

16 its client JPMorgan.

17 Q    And what were you asked to do?

18 A    I was asked to form an independent opinion of solvency

19 of Tribune, both in -- I guess, in terms of the language

20 that's frequently used in this case, step one and step two,

21 in June of 2007 and also December of 2007.

22 Q    Um-hum.  And can you summarize briefly how you went

23 about approaching that assignment and carrying it out?

24 A    Yes.  I tried to collect as much of the background

25 documents as I could, relating to the analysis of solvency

1  that was performed by the various participants.  I also

2  examined independent evidence on market conditions, of

3  conditions in the publishing and broadcasting industries and

4  how that affected the Tribune and comparable companies over

5  time.  I formed judgments about comparable companies.  I

6  reviewed the examiner's report, and then I looked at a

7  number of other different types of economic data: bond yield

8  data, stock price data, economic data of that sort.

9  Q    Okay.  Have you prepared a report in this matter?

10 A    I've prepared two.

11 Q    Okay.  And you have in front of you DCL Exhibit 1106.

12 Is that the initial report you prepared?

13 A    Yes.

14         MR. BUSATH:  At this time, Your Honor, I'd move

15 DCL Exhibit 1106 into the record, with a note that Appendix

16 E and Appendix H contain data that has come from the company

17 and third parties on various projections.  We offer those

18 only to -- for the purpose of showing the basis for

19 Professor Fischel's opinions.

20         THE COURT:  Is there any objection?

21         MR. QURESHI:  No objection, Your Honor.

22         THE COURT:  It's admitted without objection.

23 (DCL Exhibit 1106 received in evidence.)

24 BY MR. BUSATH:

25 Q    Now, you mentioned preparing a second report.  Could

1  you tell us about that one?

2  A    Yes.  After the preparation of my initial report, I

3  received a copy of a report by a Mr. Tuliano, which also

4  analyzed solvency.  And I reviewed that report and then

5  prepared a rebuttal report that I believe was also filed in

6  the case.

7  Q    Okay.  And you have in front of you DCL Exhibit 1115.

8  Is that a copy of your rebuttal report?

9  A    Yes.

10        MR. BUSATH:  At this time, Your Honor, I would

11 move into admission the rebuttal report.

12        THE COURT:  Any objection?

13        MR. QURESHI:  No objection, Your Honor.

14        THE COURT:  All right.  It's admitted without

15 objection.

16 (DCL Exhibit 1115 received in evidence.)

17 BY MR. BUSATH:

18 Q    Professor Fischel, have you prepared an exhibit,

19 summarizing your conclusions that you've reached?

20 A    I have.

21 Q    And is that behind tab one in your binder?

22 A    It is.

23 Q    Could you describe those conclusions for the Court,

24 please?

25 A    Yes, these are the three opinions that I have reached

1  in the case.  my first opinion is that the contemporaneous

2  economic evidence demonstrates that the Tribune was solvent

3  as of June 4, 2007, and that's true whether the

4  recapitalization and the merger are viewed as two separate

5  transactions or as a single transaction, although, as I

6  think I'll have a chance to explain, I believe the proper

7  view is to view them as two separate transactions.  My

8  second opinion is that the examiner's analysis of solvency

9  as of December 20, 2007 is internally inconsistent and

10 fundamentally flawed, and that once these errors are

11 corrected and solvency is properly analyzed, the economic

12 evidence supports the reasonableness of the lenders' and

13 bridge-lenders' decision not to contest the Tribune's

14 solvency certificate.  And again, what I mean by that is if

15 you form an independent analysis of solvency on December 20,

16 which is what I did, I concluded that the Tribune was

17 solvent as of that date as well, although, as I've stated in

18 my reports and previous testimony/deposition, it's a very

19 close call.  It's -- I would say it's borderline solvent,

20 but nevertheless, the economic evidence is more consistent

21 with solvency than insolvency, and therefore, I believe,

22 based on my independent analysis that the lenders' decision

23 not to contest the solvency certificate was a reasonable

24 one.  And my third conclusion, my third opinion, is that the

25 Tribune's eventual bankruptcy filing in December 2008, a

1    year after step two, really followed an unprecedented

2    industry- and economy-wide decline, and therefore, the fact

3    of bankruptcy one year after step two does not establish, in

4    any way, that the Tribune was insolvent either one year

5    earlier, as of December 2007, or 18 months earlier, as of

6    June 2007.

7    Q    Okay.  Now, before we turn to your analyses on

8    solvency as of June 4, 2007, have you analyzed whether the

9    merger was a foregone conclusion as of June 4, 2007?

10   A    I have.

11   Q    And what did you conclude?

12   A    I concluded, primarily based on market evidence and

13   some of the supporting discussions that I reviewed, that the

14   two steps should be analyzed separately: that they're two

15   separate transactions.

16   Q    Okay.  And have you prepared a report -- sorry, an

17   exhibit, showing your analysis?

18   A    I have.

19   Q    And is that behind tab two?  Could you --

20   A    It is.

21   Q    -- turn to that and explain that to the Court, please?

22   A    Yes.  This is a graph, just reflecting Tribune's stock

23   price from January 1, 2007 to December 20, 2007, the time of

24   the second-step transaction.  And the vertical lines, as I

25   hope the graph is self-explanatory, reflect the relevant

1    dates: the announcement of the merger on April 2, 2007; the

2    date of the recapitalization on June 4, 2007; and then

3    eventually, the merger on December 20, 2007.  And what the

4    graph reflects is, if you analyze the view of market

5    participants, the consensus judgment of buyers and sellers

6    in the marketplace, buyers and sellers in the marketplace

7    clearly viewed the two transactions as two, separate

8    transactions.  And that is why the Tribune's stock price

9    shoots up to a little below $34 when the initial transaction

10   is announced, stays roughly at the same level, maybe

11   declines very slightly, between that time and the

12   recapitalization.  But after the recapitalization, Tribune's

13   stock price falls significantly, from the low-30s to the

14   mid-20s, reflecting the uncertainty about whether or not

15   there would ever be a step two.  And in a situation where

16   there was that much uncertainty, because of the

17   contingencies which had to occur in order for step two to

18   take place, in my opinion, the economic evidence

19   demonstrates that market participants viewed these two

20   transactions as two, separate transactions, which, as I

21   said, is consistent with the documentary evidence that I've

22   seen.  But my principle focus is on the economic evidence,

23   the market evidence.

24   Q    Now, Professor Fischel, I'd like to discuss your first

25   opinion.  Just before doing that, can you tell us how you

1  analyzed solvency?

2  A     Yes.  First, I looked at the availability of market

3  evidence.  In all my work as an expert witness, as well as

4  my academic career and my writings on valuation, I've always

5  emphasized the role of market evidence and the value of

6  market evidence, because it demonstrates what

7  contemporaneous participants at the time, putting their

8  wealth at stake, thought about the value of a particular

9  entity, as opposed to after-the-fact judgments by experts in

10 litigation, who don't have any of the same reinforcing

11 tendencies of putting any of their wealth in litigation.  So

12 while I -- putting any of their wealth at risk in the

13 litigation.  And so, while I think it's important to

14 consider all relevant evidence, to me, I think the

15 contemporaneous valuation evidence, when market participants

16 are putting their wealth at risk, is entitled to particular

17 deference when it exists.  So I looked for that.  And I also

18 performed the traditional, three different solvency

19 analyses: a balance-sheet test, an ability-to-pay test, and

20 a capital-adequacy test.

21 Q     Okay.  Now, let's turn to the market evidence you

22 analyzed as of June 4, 2007.  Have you prepared a slide to

23 summarize that and describe it?

24 A     I have.

25 Q     And is that behind tab three?

1  A     It is.

2  Q     Would you please explain that to the Court?

3  A     Yes.  This is just a list of some of the principle

4  market evidence that I thought was relevant for purposes of

5  my analysis, starting with the investment by Mr. Zell and

6  his entity of $250 million of new money, going on to the

7  arrangers, primarily the lenders' internal analyses of

8  value, which I've also reviewed, and then even more

9  importantly than their internal analysis, their decision to

10  fund, to invest approximately $8 billion in a venture that,

11  you know, absent extraordinary circumstances, I would not

12  expect to observe if there was a belief on the part of these

13  market participants that the entity that they were investing

14  in was insolvent.  I also looked at rating agency data and

15  observed that the -- there was a ratings change, ratings

16  downgrade at the time of the recapitalization, as you would

17  expect because of the increase in leverage that resulted,

18  but not to the point of a rating that indicated insolvency.

19  And finally, I looked at bond yields, which is something

20  very significant, because bond yields tell you whether

21  investors in the marketplace consider the new entity and the

22  new anticipated entity, a sufficiently riskier venture, that

23  they would demand a much higher rate of return, which would

24  manifest itself in much higher yields.

25  Q     Um-hum.

1   A     And I didn't see any significant change in bond

2   yields, which is again buyers and sellers in the marketplace

3   this time, determining the riskiness of bonds, publicly

4   traded bonds.  That again, to me, was highly relevant market

5   evidence on the issue of solvency.

6   Q     Okay.  Now, you've read Mr. Tuliano's rebuttal report?

7   A     I have.

8   Q     And in that, did he criticize you for not looking at

9   credit-default swaps?

10  A     He did.

11  Q     And could you respond to his criticism?

12  A     I've also looked at credit default swap spreads, and

13  what they indicate, I would say they're most similar to the

14  rating agency's actions; namely, there was a spike up at the

15  time of the step one, at the time of the recapitalization,

16  reflecting the higher leverage, but again, nowhere near the

17  point where market participants, judging by the credit

18  default swap spreads, thought that there was any significant

19  risk of insolvency or bankruptcy in the near term.

20  Q     Okay.  Let's turn now, Professor Fischel, to the

21  solvency test you used in your analysis as of June 4, 2007.

22  Can you explain to the Court what tests you performed?

23  A     As I indicated, I performed the three, traditional

24  solvency tests: a balance-sheet test, an ability-to-pay

25  test, and a capital-adequacy test.  And I performed the

1   tests, both analyzing the step one as step one only, namely

2   the recapitalization only, which I believe is the correct

3   approach.  But I also performed the same three analyses,

4   collapsing the two steps to analyze solvency as of June 4,

5   if the two steps were collapsed, even though I don't

6   consider it correct to do that.

7   Q    Okay.  Let's start with the balance-sheet test.  How

8   did you calculate the value of Tribune's assets as of June

9   4, 2007?

10  A    What I did was I started by taking the management

11  projections that existed as of June 4.  I think they were

12  prepared a little -- a couple of months before June 4.  And

13  what I then did was I analyzed, using those management

14  projections, what the value of the Tribune's assets were, at

15  least the -- or the publishing and broadcasting assets of

16  Tribune by performing a traditional DCF analysis, which

17  involves using these projections, calculating a terminal

18  value using a discount rate.  So I did that, but I also

19  performed a comparable-companies analysis and a comparable-

20  transactions analysis, all of which are conventional methods

21  of analyzing balance-sheet solvency.

22  Q    Okay.  Thank you.  Professor, if you could turn now to

23  the next tab, or the copy of Exhibit E to your report.

24  Could you explain this to the Court?

25  A    Yes.  I think, you know, the heading of the exhibit,

1  you know, demonstrates what is being analyzed.  It's

2  analyzing the value of the Tribune publishing and

3  broadcasting assets, based on a DCF analysis, a discounted-

4  cash-flow analysis, as of June 4, 2007, using management

5  projections without taking into account the merger, the

6  second step, and using a discount rate, a weighted average

7  cost of capital, that was calculated by reference to a set

8  of comparable companies, using again a traditional method,

9  derived from the capital-asset-pricing model.

10  Q     Okay.  Could I have you now turn to Appendix D to your

11  report, which is behind tab five, and could you please

12  explain that exhibit?

13  A     Yes.  Well, just to put that in context --

14  Q     Um-hum.

15  A     -- if I could just refer to the bottom horizontal

16  panel, which is the calculation of value.  I think if I just

17  explain that for a second, I think, of Appendix D, would --

18  Q     Okay.

19  A     -- be --

20  Q     Please.

21  A     -- the --

22  Q     You're back on tab four?

23  A     Yes, I'm back at tab four.  I think --

24  Q     Okay.

25  A     -- the context will make it clear.  If you look at the

1    bottom panel, there's a -- on the left-hand side, there's a

2    calculation of the average EBITDA, based on management

3    projections from 2007/2012.  Then there's a terminal value,

4    which I'll explain in a minute, an 8.75 multiple.  Then

5    there's a present value of the terminal multiple at the -- a

6    discount rate of 8 percent, which I'll also explain in a

7    minute.  And then there's also a present value of the cash-

8    flows from 2007 to 2012, which is line K on the exhibit.

9    And then there's a total value of $10,864,000,000

10   approximately for the value of the Tribune publishing and

11   broadcasting assets.  And in order to reach that conclusion,

12   I had to use certain inputs.  One was the EBITDA, which I

13   got from the management projections.  From the EBITDA, it's

14   possible to calculate free cash-flow.  That's what these

15   various adjustments are.  But then importantly, I also had

16   to calculate a terminal multiple, and I had to calculate a

17   discount rate in order to use those as inputs into this

18   calculation.  And for both the terminal-value calculation as

19   well as the discount-rate calculation, I had to start by

20   coming up with a list of comparable companies and then

21   analyze those --

22   Q      Um-hum.

23   A      -- comparable companies.  And now, going back to your

24   original question: Appendix D, on the next page, reflects

25   how I came up with a list of comparable companies.  And --

1    Q     Yes, would you please explain that?

2    A     Yeah.  I'm -- what I did was, I wanted to use as

3    objective a method of selecting comparable companies as I

4    could, because frequently, the analysis of comparable

5    companies gets very subjective, and it's hard to form

6    meaningful conclusions about which companies are comparable

7    and which companies are not, particularly since no companies

8    are identical with each other.  There's always some

9    similarities and some differences, so you have to have some

10   kind of principle method for deciding what companies are

11   comparable.  And so, what I did again, using the same basic

12   approach that the contemporaneous analysis of market

13   participants is frequently very probative when they have no

14   stake in any particular litigation, I wanted to look at what

15   contemporaneous analyses of which companies were comparable.

16   And so, what I did was, I chose the various sources,

17   contemporaneous sources, that are listed at the top of the

18   exhibit, beginning with The Benchmark Company, Duff &

19   Phelps, Morgan Stanley, JPMorgan, the Tribune Company itself

20   and its proxy statement, going all the way across.  And I

21   listed every company that was referred to as a "comparable

22   company" in any of those analyses.  And what I did was, any

23   time any company that was referred to as a "comparable

24   company" five times or more by these contemporaneous

25   sources, I considered a comparable company.  Then I did some

1  follow-up analysis, and one of the fifth -- one of the 14

2  companies, I eliminated The Washington Post, as reflected in

3  Note A, at the very bottom of the page, and I eliminated

4  that, because a very significant percentage of its revenues

5  came from a different kind of business segment: educational

6  services.  But all the others, I included, and that was my

7  set of 13 comparable companies.  And using those 13

8  comparable companies, I calculated the 8-percent discount

9  rate that is referred to in the previous exhibit as well as

10  the 8.75 terminal multiple to apply to the Tribune's average

11  EBITDA from 2007 to 2012, based on management projections.

12  Q    Okay.  Thank you.  Now, if I could have you turn to

13  page three of Appendix G to your report, which is behind tab

14  six.  Could you explain that exhibit?

15  A    Yes, this is the calculation of the discount rate,

16  using the capital-asset-pricing model, or alternatively

17  could be referred to as a weighted-average cost of capital,

18  the WACC.  And what this is based on is the 13 comparable

19  companies that I just referred to.  It analyzes the -- just

20  going across the columns -- the median debt-to-capital

21  ratio, the median debt-equity ratio.  From that, it's

22  possible to calculate a -- what's known as a re-levered

23  beta.  And that's described in an appendix, I think, to my

24  original report exactly how an unlevered beta is transformed

25  into a re-levered beta.  And then take the median-after-tax

1  cost of debt, which is 4.2 percent, and then the cost of

2  equity.  You see three different costs of equity here, based

3  on a short-term cost of equity, an intermediate-term, and a

4  long-term.  And so what I did was, I added all three to the

5  after-tax cost of debt and got a range for the weighted-

6  average cost of capital, from 7.7 percent to 8.2 percent,

7  and just took a basic average of 8 percent and used that in

8  my -- as my discount rate.

9  Q    Okay.  Could you now turn to Appendix F, page one of

10 Appendix F of your report, which is behind tab seven, and

11 explain that please?

12 A    Yes.  You know, very briefly, this is the same

13 comparable companies, but this is measuring enterprise value

14 to last-12-months EBITDA in order to get a multiple, a

15 terminal multiple.  And what I did was, I looked over the

16 period from 2000 to 2007, the first quarter, which is the

17 last quarter before the first step.  And for each quarter,

18 there's a blue bar that reflects the median-enterprise value

19 to last-12-months EBITDA for these comparable companies.

20 And if you look at the box in the upper, right-hand corner,

21 what you see is that the median multiple is 9.86, but I

22 thought that was a little bit too high, precisely because

23 the future of the industries that the Tribune was in was a

24 little bit uncertain.  You're also predicting -- you -- this

25 method is calculating values into perpetuity, so I think you

1    have to have a little understanding that there's no way to

2    be completely precise about that.  So basically, what I did

3    was I lowered the multiple.  I didn't use the 9.86.  I took

4    a range between 8.5 and 9.  The midpoint of that is 8.75 as

5    a downward adjustment, just to reflect the uncertainty of

6    the valuation process and the Tribune's business.  And that

7    8.75 is the multiple that was used in the DCF analysis along

8    with the 8-percent discount rate.

9    Q    Okay.  And that's the DCF analysis that was behind tab

10   four that you discussed earlier?

11   A    Correct.

12   Q    Okay.  And then you also did a comparable-company

13   analysis?

14   A    Correct.

15   Q    And is that exhibit -- in Exhibit F to your report,

16   behind --

17   A    Yes.

18   Q    -- tab eight?

19   A    Yes.

20   Q    Would you describe that, please?

21   A    Yes.  Again, very typical in valuation analysis, for

22   balance-sheet purposes, to do both a discounted-cash-flow

23   analysis as well as a comparable-company analysis.  Again,

24   I'm using the same set of comparable companies, the 13

25   companies.  Now, I am looking at a median multiple of

1  enterprise value to EBITDA for those 13 companies.  That's

2  line A.  And you see, for estimated EBITDA for 2007, the

3  median comparable-company multiple is 10.2.  For 2008, the

4  current -- the ratio of the current-enterprise value to

5  estimated-2008 EBITDA for these comparable companies is

6  9.29.  I then apply that number to the management projection

7  -- management EBITDA projection for Tribune, for estimated

8  2007 and estimated 2008.  And then, line C is just a

9  multiplication of lines A and B.  And then, because the

10  comparable-company analysis excluded cash from the

11  comparable companies, it's appropriate to add the cash and

12  cash equivalence that the Tribune had, and then you just add

13  up the various entries for a comparable-company valuation

14  for using 2007 estimated EBITDA and 2008 estimated EBITDA.

15  Q     Okay.  Now, you also did a comparable-transaction

16  analysis.

17  A     I did.

18  Q     Is that set out behind tab nine, Exhibit --

19  A     Yes.

20  Q     -- G to your report?  Would you explain that?

21  A     Yes.  As I said in my report, I placed a little bit

22  less weight on this particular methodology, but again, it's

23  very standard.  I looked at three different data sources of

24  comparable transactions, namely transactions that occurred

25  roughly during this period, roughly -- of a certain size

1  that -- in other words, that they were relatively large

2  transactions.  And I calculated a transaction value to

3  EBITDA multiple for the median of -- from these three

4  different sets of transactions, and you get multiples,

5  ranging from 11.01 on the low side, to 14.91 on the high

6  side, with 14.20 in the middle.  And then, I applied those

7  multiple to the Tribune's last-12-months EBITDA, again in

8  order to have an apples-to-apples comparison.  And again,

9  just a simple multiplication, I get a value of Tribune

10 assets that's in the far, right-hand column.

11 Q    Okay.  If I could have you now turn to Exhibit I to

12 your report, behind tab 10.  Will you please explain that to

13 the Court?

14 A    Yes, this is a summary exhibit of Tribune's balance-

15 sheet solvency, using the different methodologies that I

16 described as of June 4, using management projections with no

17 consideration of the merger, the recap only.  And this --

18 the first part of the -- this particular exhibit, the value

19 of publishing and broadcasting with the letter A, those

20 numbers are just taken from the exhibits that we just went

21 through.  These are the numbers for publishing and

22 broadcasting, using the three methodologies: the DCF

23 methodology, the comparable-company methodology, and the

24 comparable-transactions methodology.  Then to that, I added

25 the value of equity investments in Time Warner stock, and I

1   think I'll have a chance to explain in a minute where these

2   numbers came from.  And then, I got a total-enterprise value

3   reflected in column C.  Then, I subtracted the total debt in

4   -- from column D, to get a Tribune equity value in column E.

5   And what this shows, putting aside the comparable-

6   transactions methodology, which I said I put less weight on,

7   is that as of June 4, based on a balance-sheet analysis,

8   using management projections, focusing solely on the recap,

9   without consideration of the merger, you get a Tribune value

10  -- a low value of the Tribune being solvent by approximately

11  $3.7 billion, a little more than that, and a high number of

12  the Tribune being solvent by $7 billion.  And if you use the

13  comparable-transactions numbers, you know, there would be

14  the -- be higher still.  So that led me to conclude that,

15  based on a balance-sheet test, using management projections,

16  focusing on step one only, Tribune is not only solvent but

17  very comfortably solvent.

18  Q     Okay.  Now, you mentioned you wanted to explain how

19  you got the value of the equity investments.  Could you do

20  that?

21  A     Yes.  That's in the next exhibit, behind tab 11.

22  Q     Would you explain that, please?

23  A     Yeah, it was difficult to know exactly how to

24  calculate the value of these equity investments, so what I

25  did was I looked at the -- it's probably best to focus on

1    the second half of the page, as of December 20, 2007.  I

2    took the VRC estimate of these equity investments, and then

3    I took the discount applied by the examiner, with respect to

4    the calculations or the valuations of VRC, to get examiner's

5    estimates, which is the final column.  And where the

6    examiner didn't make any adjustments, I just reported the

7    numbers as they were.  And then, for June 4, 2007, what I

8    did was I took -- again started with VRC's estimates, and

9    then I applied the exact same discounts that the examiner

10   applied in December.  I applied that -- those exact same

11   discounts in June, in order to lower the VRC numbers by the

12   same percentage that the examiner did, to get what's

13   referred to as the implied-examiner estimate.  And then, if

14   you just add up all the numbers, you see the number

15   2,478,000,000.  And then, if you turn back the page to the

16   valuation in the summary, you would see --

17   Q    You --

18   A    -- the same number.

19   Q    -- are looking at tab 10?

20   A    Right.  Exactly.

21   Q    Okay.  Could I have you now turn to Exhibit J of your

22   report, behind tab 12?  Could you explain that, please?

23   A    Yes.  This is an exhibit of capital adequacy and

24   ability to pay.  And it is again based on management's base-

25   case projections, with no consideration of the merger.  So

1   it's just step one only.  And what this is is an attempt to

2   analyze, at every point in time, how much cash the Tribune

3   would have in terms of what it was able to -- what the

4   Tribune would be able to do to meet all its obligations and

5   whether or not it would have to use its revolver that it had

6   in place.  And so, just to explain the exhibit, the top line

7   is the starting debt balance in 2007.  And from that,

8   there's -- the next entry is the cash that is generated

9   leading to the entry "total cash generated before interest

10  and principle payments" on the number at the top, the

11  9,387,000,000 number.  And so then, if you'd just keep going

12  down the column, you see that in 2007, there was $390

13  million paid in interest, which on an after-tax basis was

14  $243 million, which left cash available for mandatory

15  repayments of $1,223,000,000.  Then, there was $132 million

16  of mandatory repayments, leaving cash available after

17  mandatory repayments of a little over a billion dollars, a

18  1,091,000,000, so then there's no need to draw the revolver,

19  so that number is zero.  And then, that means that there's

20  an ability to make a discretionary debt repayment of that

21  amount, 1,091,000,000.  There's $685 million of revolver

22  availability that you don't have to touch.  You can also

23  deal with the promissory note exchangeable into equity.  So

24  if you add up all those numbers, you get a total ending

25  balance at the end of the 2007 of 7,966,000,000.  And then,

1    if you go to the very top of 2008, you see that number, the

2    same number: 7,966,000,000.  And then, you just repeat the

3    same exercise for every year.  And what I want to highlight

4    in this particular exhibit is row R.  The -- and just -- if

5    you could possibly highlight row R, just go across.  That --

6    based on this analysis, this ability-to-pay analysis, the

7    Tribune has the ability to meet all its obligations in every

8    year and doesn't have to reach into its revolver in any --

9    or doesn't need to tap into the revolver in any year.  And

10   so you could call this a base case ability-to-pay analysis,

11   and again, based on this analysis, I would say this, again,

12   is -- supports the basic conclusion that, as of step one,

13   Tribune was solvent, and --

14   Q     Okay.

15   A     -- again, based on this analysis, comfortably so.

16   Q     Okay.  Could I have you turn, please, to Exhibit K,

17   which is behind tab 13?  And could you explain that, please?

18   A     Yes.  In addition to doing an ability-to-pay analysis,

19   using a -- management projections, I also wanted to look at

20   downside projections.  And rather than using solely

21   management projections, I wanted to look at the downside

22   projections of other participants in the transaction,

23   particularly the other lenders.  And so, what I did was, I

24   created an average of downside projections by third parties.

25   And I think the concept of average is significant in this

1  context, because obviously some are higher, some are lower,

2  but what an average is is a -- it's a type of consensus.

3  It's like a market price, where you have some buyers more

4  optimistic, some less optimistic, and sellers the reverse,

5  but there's a convergence on a particular price.  And this

6  is not exactly like that, because there's no price, but it's

7  the same idea.  It's an attempt to take both the high

8  estimates into account, the low estimates into account, and

9  come up with an average, a sort of -- you could say a type

10 of consensus number.  And this is exactly the same analysis,

11 but instead of using management projections in a base case,

12 this now uses downside projections by these third parties.

13 And again, just focusing perhaps -- as opposed to having to

14 repeat, focusing again on row R, which in some ways is, I

15 think, the most relevant summary line.  In this downside

16 case, for 2007 and 2008, there's no need to dip into the

17 revolver.  But this is a downside case, so for 2009, there's

18 a need to dip a little bit into the revolver.  That's why

19 it's 674 as opposed to 685.  In 2010, it's 533 instead of

20 685, so again, a need to dip into the revolver a little bit

21 more.  But in 2011, there's enough cash generated to

22 basically replenish the revolver, bring it back up to 685,

23 which is why, in the final box, there's the number 685.  So

24 based on this downside analysis, while there's a need to tap

25 into the revolver a little bit, in a couple of years, you

1  wind up back where you started with, with the Tribune having

2  the full revolver.  So this is not using management

3  projections.  It's using downside projections, all the

4  downside projections that -- by third parties, that we found

5  at least as of the time that this exhibit was prepared, and

6  again, reached the conclusion that, even in terms of capital

7  adequacy, which I understand capital adequacy as the ability

8  to pay your debts when they become due in a downside case,

9  that Tribune, as of step one, based on recap only, would

10  meet any test of solvency.

11  Q    Okay.  Thank you, Professor.  I'd like, now, to turn

12  to the topic of your solvency analysis as of June 4,

13  assuming a merger.  And we turn first --

14  A    Okay.

15  Q    -- to page one of Exhibit M of your report, behind tab

16  14.  Could you explain that?

17  A    Yes.  What I wanted to do is basically do the same

18  three types of analyses: a discounted-cash-flow analysis,

19  comparable-companies analysis, and a comparable-transactions

20  analysis.  But I was aware that there was a dispute in the

21  case, in terms of a balance-sheet analysis, whether it was

22  appropriate to include the tax benefits from the S-corp.

23  ESOP structure as part of a balance-sheet analysis.  And I

24  think, for reasons that I -- reasons that I'll have a chance

25  to explain, I believe it is proper to include it.  But I did

1   an analysis both including it and not including it, just to

2   highlight what the results would be if it were included and

3   if it weren't included.  And this first exhibit is a DCF

4   analysis, using -- with consideration of merger, taking into

5   account the S-corp. tax rate and the benefits from the S-

6   corp. ESOP structure.  So let me just highlight how this

7   particular exhibit --

8   Q    Okay.

9   A    -- does that.

10  Q    Well --

11  A    It's a little bit repetitive from what I said before,

12  so I just want to highlight the differences that exist

13  because of the tax treatment and because of -- that this

14  considers the merger.  First of all, the EBITDA line at the

15  top is a little bit different, because the Tribune

16  anticipated eliminating SBC expense if there were a merger,

17  so EBITDA is adjusted to reflect that elimination.  But if

18  we go to line D, the tax rate, and just take that across.

19  The number there is 4.1 percent, reflecting the fact that

20  the Tribune, under the S-corp. tax structure, wasn't going

21  to pay federal taxes.  And at least as of June, my

22  understanding is that the Tribune expected to pay 4.1

23  percent in state taxes, although I've seen different numbers

24  for the state tax.  But here, I used 4.1 percent.  And

25  because of the fact that the tax rate is so low, the cash-

1  flow, line K, if we can highlight that, that's going to be

2  higher obviously, because you're not paying federal taxes,

3  and the dollars that you would've paid in federal taxes now

4  are available in terms of free cash-flow.  And then, if I go

5  down to the box, there's a very -- the bottom panel, there's

6  a very significant change there as well, which -- well,

7  first of all, the 8.75 multiple, that doesn't change,

8  because that's just based on comparable companies that we

9  talked about before.  But if we look at the discount rate of

10 11 percent, that's significantly higher than the 8-percent

11 discount rate that I was using before.  And the reason for

12 that, it's -- is that it's an all-equity discount rate.  And

13 just to explain briefly, the 8-percent discount rate was a

14 combination of the after-tax cost of debt and the cost of

15 equity.  But if you use an S-corp. ESOP structure, you no

16 longer have an after-tax cost of debt.  In fact, you're not

17 getting any benefit from the tax shield that you would get

18 if you had debt in the capital structure.  So I used,

19 basically, an all-equity discount rate.

20 Q      Um-hum.

21 A      And because equity is riskier than debt, and I

22 calculated the equity discount rate the same way as

23 previously but now just focusing on cost of equity, I got an

24 11-percent discount rate and then applied that to both the

25 present value of the terminal value and the present value of

1  the 2008 to 2012 cash-flow.  So basically, there's a

2  tradeoff.  If you have higher original cash-flows because

3  you're not paying taxes, that increases valuation.  But

4  then, if you also increase the discount rate to reflect that

5  you're using an equity discount rate as opposed to a WACC,

6  which includes an after-tax cost of debt, the higher the

7  discount rate, the lower the present value, so there's that

8  tradeoff.  And the calculation about what the value of

9  publishing and broadcasting is reflected at the bottom of

10  the exhibit.  Again, this is taking management projections,

11  but using the benefits from the S-corp. ESOP tax structure

12  as part of the balance-sheet analysis.

13  Q    Okay.  So you're aware that the examiner's taken the

14  position that the benefits of the tax savings from the S-

15  corp. should not be included in the balance-sheet test?

16  A    I am.

17  Q    And do you agree with that?

18  A    I do not.  I -- you know, I've seen a lot of analysis

19  of this issue and a lot of terms of investment value and

20  market value and fair value and balance-sheet value, but you

21  know, to me, it's a simple issue of economics.  If you have

22  a company that's -- that has an asset that's generating $100

23  of value, that's $100 that's available to pay creditors.

24  And if the same company has a tax structure that's also

25  saving -- that's also creating the same $100 of value,

1    there's no difference between those two $100 of value.  They

2    are both real dollars that are available to pay creditors.

3    And in my opinion, it would be a fundamental economic error

4    to say that some real dollars count, for purposes of

5    analyzing whether a company can pay creditors, but other

6    dollars that are equally real don't count for analyzing the

7    same question.  And just to get a sense of how perverse this

8    is and how this could really lead you to make a really

9    serious error, take a company that was not in bankruptcy,

10   not like the Tribune, but had a structure like this, and

11   because of the structure, because of the real tax dollars

12   that were able to be used to pay creditors, the company was

13   able to pay its creditors at every point in time -- pay

14   interest when it was due, pay principal when it was due --

15   so it was never in default.  You would never do a balance-

16   sheet-solvency analysis of that company and conclude that it

17   was insolvent, even though it never defaulted ever, because

18   some of the real dollars that were used to pay creditors

19   don't count, according to some artificial definition of

20   value, even though those same dollars are real economic

21   value that were used to pay creditors.  And if you concluded

22   that this obviously solvent company was insolvent because of

23   this, in my opinion, arbitrary and artificial definition of

24   value, as I've said, you would really be making a

25   fundamental error.  You would be classifying an obviously

1  solvent company as insolvent, not because the company wasn't

2  able to pay creditors, but because you started with some

3  artificial and unrealistic definition of value.  And that,

4  in my opinion, is what the examiner did.  It makes no sense,

5  in my opinion, for the examiner to say that real value

6  counts for a capital-adequacy analysis, but the same real

7  value doesn't count for a balance-sheet analysis.  If it's

8  real value, it's real value, and it counts for any

9  valuation, no matter what you call it.  And so, for that

10 reason, I -- on that particular issue, I don't agree with

11 the examiner.

12 Q     Okay.  Have you, nevertheless, done an analysis under

13 a different -- using a different methodology?

14 A     I have.

15 Q     And is that page two of Exhibit M, behind tab 15?

16 A     It is.

17 Q     And would you please explain that one?

18 A     Yes.  You know, again, there's two different ways to

19 analyze tax benefits.  One way is to basically increase the

20 cash-flows, because you're not paying taxes, and then use a

21 higher discount rate, because you don't have the after-tax

22 cost of debt in the WACC.  The other way to do it is to have

23 lower cash-flows, because you're applying the federal tax

24 rate combined with the state tax rate, but to have a lower

25 discount rate and get the full tax benefits of leverage in

1   the WACC.  And so your discount rate is much lower.  Your

2   cash-flows are lower, but your discount rate is also lower,

3   and that's a very standard methodology that doesn't take

4   into account at all the S-corp. ESOP structure, but does

5   take into account the Tribune's capital structure.  And

6   that's what this particular exhibit does.  So again, if we

7   could highlight line D going across.  Instead of using 4.1

8   percent here, I used 37.7, which is the blended federal and

9   state tax rate.  And then, just, you know, in the interest

10  of time, if we could highlight the present value of terminal

11  value and the net present value of 2007 to 2012 cash-flows,

12  the bottom two lines, the -- in other words, the multiple

13  stays the same, but the discount rate, because you're

14  getting the benefit of high leverage in the Tribune's

15  capital structure, you're getting a -- you have a much lower

16  WACC, which is calculated separately, on a different

17  exhibit, of 7.75 percent.  So you have lower cash-flows,

18  because you're paying the taxes, but you also have a much

19  lower discount rate.  And if you do that, you get the number

20  of the Tribune's publishing and broadcasting assets at the

21  bottom of the page.  And let me just say one other thing.

22  For this purpose, I used the Tribune's actual debt-equity

23  ratio --

24  Q     Um-hum.

25  A     -- but the conclusion doesn't change if I use the

1   industry average debt-equity ratio.  You get exactly the

2   same conclusion, based on the value of leverage having

3   nothing to do with the S-corp. ESOP tax structure.  As I

4   said, I did it two different ways, notwithstanding my belief

5   the examiner was incorrect about disregarding the value from

6   the S-corp. ESOP tax structure.  I don't agree with that

7   conclusion, but I also performed a different analysis, which

8   ignores the tax benefits from the S-corp. ESOP tax

9   structure, and reached exactly the same result.

10  Q      Okay.  Now, have you prepared a summary of your -- of

11  these analyses as of June 4, assuming the merger?

12  A      Yes.

13  Q      Is that behind tab 16?

14  A      It is.

15  Q      And can you tell us briefly what that shows?

16  A      Yes.  This is, you know, the same summary, same type

17  of summary as before, but this time collapsing the two

18  transactions, the -- I'm sorry, the two steps: step one and

19  step two.  And you know, again, just in the interest of

20  time, if you look at the last column, the Tribune equity

21  value, and you get, again, a range of different values,

22  depending on which methodology you use.  And the numbers are

23  little bit lower if you collapse the two steps, than just

24  based on step-one recap only, but you're still, I would say,

25  in the comfortable range of solvency on a balance-sheet

1  test, I would say, whether or not you take into account the

2  S-corp. ESOP tax benefits that the examiner concluded, in my

3  opinion, incorrectly.  It should not be treated as relevant.

4  Q    Okay.  Now, these analyses that you did, that we've

5  discussed, were based on management's projections, is that

6  right?

7  A    Correct.

8  Q    And did you also do an analysis based on third-party

9  projections?

10  A    I did.

11  Q    And is that behind tab 17?

12  A    Yes.

13  Q    Could you just -- is this the same thing, the same DCF

14  type of analysis, but using the average third-party

15  projections?

16  A    Yes.  And again, this -- again, I did this two ways

17  again.

18  Q    Okay.

19  A    The same two ways.  And I think it would be a little

20  bit repetitive, maybe, to go through the exhibits, but it's

21  basically -- in the first one, there's an assumption of no

22  federal taxes and a high discount rate.  That's behind tab

23  17, Exhibit BB, I guess, page four.  And then, the next

24  page, page five, is again my alternative methodology, just

25  taking into account the benefits of leverage, without

1  consideration of the Tribune's S-corp. ESOP tax structure,

2  using the Tribune's debt-equity ratio.  But again, the

3  results don't change if I use an industry-average debt-

4  equity ratio.

5  Q    And then, have you summarized those results behind tab

6  18?

7  A    Yes.

8  Q    And briefly, just what does that show?

9  A    You know, again, if you just highlight the last

10 column, Tribune equity value, you see the numbers are, you

11 know, again, a little bit lower, that the third-party

12 projections are lower than management projections.  But

13 again, this is on the assumption that you're collapsing the

14 two transactions, which I don't believe is correct, but

15 that's what this analysis is based on.  You still find

16 solvency, although the numbers are getting a little bit

17 lower.

18 Q    Okay.  Now, did you also do an analysis of ability to

19 pay and capital adequacy, assuming the merger?

20 A    I did.

21 Q    And in the interest of time, why don't we turn to tab

22 20, which is Exhibit Q?  This is the analysis using the

23 downside projections, is that right?

24 A    I'm sorry.  What tap did you say?

25 Q    At tab 20, Exhibit Q to your report.

1  A     Yeah, I -- my -- it's not tab 20 in my binder.  It's

2  tab 19 in my binder, just so we're --

3  Q     Tab 19 is based on management's base-case projections,

4  is that right?

5  A     No.

6  Q     No?

7  A     No.

8  Q     All right.

9  A     Not in my binder anyway.

10  Q     Well, let's look at Exhibit Q.

11  A     Okay.  I have Exhibit Q.  It doesn't matter what tab

12  it is.

13  Q     That's right.

14  (Laughter)

15           THE COURT:  Darn those paralegals.

16           MR. BUSATH:  That's right.

17  (Laughter)

18  BY MR. BUSATH:

19  Q     Could you summarize that for us?

20  A     Yes.  This is a capital-adequacy analysis based on

21  downside cases, again an average of third-party downside

22  cases, with the consideration of the merger, so again, this

23  is collapsing the two steps, even though, in my opinion,

24  it's not appropriate to do that.  For purposes of analyzing

25  solvency, it may be reasonable to analyze the desirability

1  or the feasibility of the second step, but --

2  Q      Um-hum.

3  A      -- not for purposes of analyzing solvency as of June

4  4.  And again, you really -- now you can see the effect of

5  the merger in a downside case.  If we highlight line S going

6  across.  And what this shows is, you know, again focusing on

7  the availability of the revolver, you start with 685, and

8  then you have to -- in 2008 and 2009, you have to tap into

9  the revolver immediately, so the revolver numbers go down.

10  And then, in 2010 and 2011, the revolver numbers turn

11  negative, meaning that, in those years, the Tribune does not

12  have enough liquidity in order to meet its mandatory

13  obligations.  And then, in 2012, the number turns positive,

14  to a plus-9.  So it's very close, making these assumptions,

15  whether the Tribune satisfies the capital-adequacy test.

16  But there's certain assumptions that I've built into this

17  analysis, which can be varied, which I think create a more

18  optimistic picture about solvency, even under these most

19  negative of assumptions.  And should I --

20  Q      Please.

21  A      Okay.  Well, you know, I would say the most important

22  is the number that we use for asset sales.  If we could look

23  at line H.  We use a number of 602, you know, for the Cubs,

24  because that's the only thing we were confident of that we

25  could document.  But the examiner, himself, uses a higher

1   number, a higher number that Mr. Tuliano, himself, adopts.

2   And I have a page from Mr. Tuliano's report here.

3   Q    Is that behind tab 21?

4   A    Well, let's forget the tabs --

5   Q    Or --

6   A    -- because we're --

7   Q    -- the tab --

8   A    -- out of order.

9   (Laughter)

10  A    It's excerpt from page 120, expert report of Ralph

11  Tuliano.  And if we could just -- yes.  In Mr. Tuliano's

12  analysis, taken from the examiner, he says that he's assumed

13  net-after-tax proceeds from the sale of assets of 87 million

14  and 735 million, which is, if my instant math is correct,

15  822 million.  And now, if we turn back to my exhibit, and

16  again, highlight line G -- Exhibit Q, I'm sorry, and

17  highlight line G -- I'm sorry, line H.  I apologize.  If we

18  substitute that 822 number for the 602 number, that's $220

19  million of extra cash from asset sales, and then all these

20  negative numbers for 2010 and 2011 would disappear, and the

21  number at the end, the 9, would be much higher as well.

22  There's other steps as well, other well-known, recognized

23  steps of -- you could decrease capital expenditures.  You

24  could layoff some people.  You could save costs in other

25  ways, perhaps some -- use some of the assets from the over-

1  funded pension plan, so there's other things, if this were a

2  real-world scenario, that the Tribune could do in addition

3  to selling additional, particularly non-cash-earning or

4  little-cash-earning assets.  So while I thought this

5  analysis produced a result that was close to the line for

6  the reasons that I said, there's reasons to believe that,

7  even though this is a downside, it's too much of a downside

8  that, in the real world, there would be steps that could be

9  taken to create a bigger cushion that's -- than is reflected

10 on this exhibit.

11 Q    Okay.  Now, have you also looked at what's been

12 referred to as downside case A and downside case B?

13 A    I have.

14 Q    And what did you do?  What did your results, your

15 analysis show, with respect to them?

16 A    Well, I ran downside A's -- downside case A and B

17 through all my different analyses, just recap only, recap

18 with merger, and -- well, first of all, again, downside A

19 and downside B, if you use the 822 number, they all produce

20 -- both produce positive numbers, even the downside B

21 number.  But even using my 602 number, which I used

22 originally, none of my conclusions about capital adequacy

23 changed.  Obviously the numbers changed slightly if you

24 introduce new projections, but the qualitative nature of the

25 conclusions do not change.

1  Q     Okay.  Then to summarize, Professor Fischel, what is

2  your opinion regarding Tribune's solvency as of June 4,

3  2007?

4  A     My opinion is that the proper way to analyze solvency

5  as of June 4 is looking at step one only.  I believe the

6  Tribune was clearly solvent, using any test of solvency, as

7  well as the market evidence that I described as of June 4.

8  And if I also perform the same analysis, collapsing the two

9  steps, I reach the same conclusion, although the numbers are

10  lower.  The degree of solvency is less than if I just

11  analyzed step one, focusing on the recap only.

12  Q     Okay.  Now, you also looked at solvency as of December

13  20, 2007, is that right?

14  A     I did.

15  Q     And did you perform the same type of methodology?

16  A     Exactly the same analysis.  I looked at the market

17  evidence, and then I performed the same three standard

18  valuation analysis -- methodologies of balance-sheet

19  analysis, an ability-to-pay analysis, and a capital-adequacy

20  analysis.

21  Q     Okay.  Now, briefly, could you describe the market

22  evidence that you looked at of December 20?

23  A     Yes, the -- in December 20, there's additional money

24  being invested by market participants.  There's some

25  additional money being put in my Zell, in the form of

1    purchase of warrants and a little additional money in terms

2    of the subordinated note.   There's also a purchase of

3    warrants by a third party, Mr. Greenspun.   The lenders

4    advance another $4 billion worth of debt.   And I also looked

5    at the rating agency data, the CDS data, the internal

6    valuations of the various participants in the venture.   So

7    basically did the exact same thing as I did for June, but as

8    applied to December.

9    Q     Okay.   Can I have you look at Exhibit W of your

10   report?

11   A     Okay.   I have that.

12   Q     Is that the summary of the results of the solvency

13   analyses you did?

14   A     I -- it is.

15   Q     Okay.   And then, did you also look at Tribune's

16   ability to pay its debts as of December 20, 2007?

17   A     I did.

18   Q     And did you use -- what projections did you use in

19   doing that?

20   A     Well, I used several different ones.   I used

21   management's base case.   I used management's downside case.

22   And I also used an average of third parties' downside case

23   projections --

24   Q     Okay.   And --

25   A     -- and the series of exhibits.

1  Q      For the interest of time, could we turn to Exhibit Z

2  to your report?

3  A      Okay.  I've got --

4  Q      In my binder --

5  A      -- that.

6  Q      -- it's behind tab 25.

7  A      Okay.

8  (Laughter)

9  Q      This is your capital-adequacy analysis, based on the

10 average of downside case projections, is that correct?

11 A      That's right.

12 Q      Could you explain that briefly?

13 A      Yes, this is, you know, I would say the exhibit of

14 everything that I did that's the closest to the line on

15 solvency.  I feel fairly comfortable with everything that I

16 did in June, whether it's one transaction or two

17 transactions, particularly one transaction, which I think is

18 correct.  And also, I feel comfortable in December with my

19 balance-sheet analysis as well as my ability-to-pay

20 analysis.  And I also feel comfortable with several of the

21 downside cases.  But this one, particularly, I think is very

22 close to the line.  I just want to be candid about that.

23 And again, I think the simplest way to see that is to

24 highlight row Q going across.  And here is where, again, you

25 start with the revolver of 685.  You have to dip into the

1 revolver immediately.  The revolver continually goes down,

2 and you end up with a negative 5.  So you not only end up

3 with a negative number, but you have a negative trend, from

4 beginning to end.  And so I would say, even though some of

5 the steps that I outlined before -- reducing capital

6 expenditures, reducing employee compensation, layoffs,

7 possibly some assets from an over-funded pension plan --

8 it's possible that some of those steps could correct this

9 negative number.  In fact, I think they probably would

10 correct this negative number.  If I were looking at this

11 document in isolation, I would say I'm not sure that I would

12 reach any opinion on solvency, and this is, as I said, the

13 most negative.  But viewed in combination with the other

14 analyses that I did, I concluded, as I said at the outset,

15 that I think the Tribune was borderline solvent in December,

16 making the lenders' decision not to contest the solvency

17 certificate a reasonable one.

18 Q     Okay.  Professor Fischel, could you turn to Exhibit R

19 to your report?  There's two pages to that in the binder.

20 Are you with me?

21 A     Yes.

22 Q     Could you explain this analysis?

23 A     Yeah, this is another area where I disagreed with the

24 examiner on the examiner's conclusion that the guarantor

25 subsidiaries were insolvent as well as the combined entity.

1  And again, in -- what I did was, I started with the

2  examiner's analysis that's on page 52, and then I made two

3  adjustments to the examiner's analysis that's on page 53.

4  And what I did was, I took the Cubs, and I moved the Cubs

5  from the parent to the subsidiary, because my understanding

6  is the examiner incorrectly included the Cubs as an asset of

7  the parent, as opposed to the asset of the subsidiary -- or

8  subsidiaries.  And then, I also took the examiner's low

9  number for the S-corp. ESOP tax benefit, and I included that

10  in a balance-sheet valuation.  If I had used my alternative

11  methodology of ignoring the S-corp. ESOP structure but just

12  using the tax benefits from leverage, I would've gotten

13  exactly the same result.  And making those two adjustments,

14  if you look at the very bottom right, the equity number for

15  the guarantor subs, it turns positive, as probably other

16  adjustments -- in fact I know there are other adjustments

17  that you could make, but I wanted to just present simply, if

18  you corrected the error on the Cubs and you treated the tax

19  benefits correctly, whether from an S-corp. ESOP structure,

20  just analyzing the value of leverage correctly, you would

21  reverse the examiner's conclusion on the solvency of the

22  subsidiaries.

23  Q    Okay.  Professor Fischel, could we turn, for the

24  remaining time, to your third opinion, regarding your

25  analysis of what occurred in 2008, and could you summarize

1  that?

2  A      You know, I think my report is fairly self-

3  explanatory.  I also think the economy-wide crisis that

4  really accelerated in 2008 is well known.  I think that had

5  a very major effect on a company like the Tribune because

6  when the economy goes into a precipitous downturn, there's

7  less retail sales.  There's less auto sales.  That means

8  there's going to be a lot less advertising, which is the

9  principle source of revenue for the Tribune's businesses.

10  And you can see that in all kinds of different ways with

11  various types of economic statistics that I provided in my

12  original report, and, you know, I could go through the

13  exhibits, but I -- I'm not sure how much time there is and I

14  think they're fairly self-explanatory anyway.

15  Q      Yeah.  So those are the exhibits we've included in AA

16  to AF in the binder?

17  A      That's right.  Beginning on AE and going through AF.

18  Q      Now have you looked at Professor -- Mr. Tuliano's

19  report?

20  A      I have.

21  Q      And do you have any reactions to his report?

22  A      You know, again, I think they're summarized in my

23  rebuttal report.  I think it's difficult for -- in a minute

24  to try and summarize them.  I think it -- it's fair to say I

25  disagree with virtually every aspect of --

1          (Laughter)

2    A      -- Mr. Tuliano's report.  I think what he did with

3    projections is wrong, what he did with discount rates is

4    wrong, what he did with terminal values is wrong, what he

5    did with cash flows is wrong, and I tried to summarize all

6    that in my rebuttal report, so.

7    Q      Very good.  Thank you, Professor.

8              THE COURT:  Take a short recess, five minutes,

9    ten minutes.

10         (Recess)

11             THE CLERK:  All rise.

12             Be seated, please.

13             THE COURT:  Cross-examination.

14             MR. QURESHI:  Thank you, Your Honor.  May I

15   approach with exhibits?  I've already left a set at the

16   witness box.

17             THE COURT:  You may.

18             MR. QURESHI:  Thank you.

19             THE COURT:  Mr. Qureshi, will we be using the

20   binders that were used for direct at all?

21             MR. QURESHI:  I do not anticipate so, with the

22   exception, Your Honor, of one or two slides, but we'll pull

23   those up on the monitor, so --

24             THE COURT:  Okay.

25             MR. QURESHI:  -- I think you can set that binder

1   aside.

2              THE COURT:  Thank you.

3              MR. QURESHI:  Thank you.

4                        CROSS EXAMINATION

5   BY MR. QURESHI:

6   Q    Good afternoon, Professor Fischel.  For the record my

7   name is Abid Qureshi from Akin, Gump on behalf of Aurelius

8   Capital.

9        So I heard your counsel take you through your -- your

10  credentials and I must say having heard that I'm actually

11  glad it was my partner, Ms. Newman, who took your

12  deposition.

13       (Laughter)

14  Q    Now your hourly rate, Professor Fischel, is how much?

15  A    A thousand dollars an hour.

16  Q    Okay.  And when did you start working on this

17  engagement?

18  A    I think -- you know, if I remember correctly, sometime

19  in the -- maybe the spring of 2010.

20  Q    Okay.  And am I correct, sir, that in your expert

21  report you do not define the standard of value that you are

22  applying?

23  A    Well, I -- I think I do.  At least in my opinion I do.

24  I define it as the value that's available in terms of

25  whether assets are greater than liabilities, whether the

1  company has sufficient ability to pay its creditors when

2  creditors are owed interest or principal payments.  That's -

3  - in other words, my definition of value is real economic

4  value that the company has that it could be used to pay

5  creditors.

6  Q     Right.  So you go through all of the tests -- balance

7  sheet, capital adequacy -- and you conclude, based on your

8  definition of real economic value that there's enough there

9  to satisfy creditors, right?

10 A     Basically.  Correct.

11 Q     Right.  But -- but you don't, in the front or anywhere

12 else in your report, say that the standard of value that I

13 am applying is X.  Is that right?

14 A     I don't agree.  The standard of value is what the

15 assets are worth.

16 Q     Okay.

17 A     That's the standard of value.

18 Q     Okay.  And -- and you know who Professor Pratt is,

19 don't you?

20 A     I do.

21 Q     Okay.  And do you agree that he's -- he's a well known

22 author in the valuation field?

23 A     I do.

24 Q     And you would agree that his texts are authoritative?

25 A     You know, I would say they're well known.  As I -- I

1  think I explained to your colleague, I just went through

2  another trial which focused on Professor Pratt, so I'm very

3  familiar with his work as well as what I agree with and

4  disagree with in his -- in his text.

5  Q    Okay.  If you could please take a look at the binder

6  that I've placed before you --

7  A    Okay.

8  Q    -- and turn to Tab 3, and you will see at Tab 3 an

9  excerpt from Professor Pratt's book, *Valuing a Business:*

10 *The Analysis and Appraisal of Closely Held Companies*.

11          MR. QURESHI:  And for the record, this has been

12 marked as NPP Exhibit 88.

13 BY MR. QURESHI:

14 Q    And if you could turn, please, to Page 41.

15 A    I have it.

16 Q    Okay.  And -- excuse me --

17          MR. QURESHI:  Your Honor, I'm told that the

18 screens have been turned off.  If we could get those turned

19 back on.

20      (Pause)

21          THE COURT:  I'm told they're on.

22          MR. QURESHI:  Can I have just a moment, Your

23 Honor, so we can --

24          THE COURT:  Certainly.

25          MR. QURESHI:  -- figure this out?

1        (Pause)

2             MR. QURESHI:  Your Honor, I'm told we just need a

3    minute or two to restart the system if --

4             THE COURT:  Okay.

5             MR. QURESHI:  Thank you.

6        (Pause)

7             MR. QURESHI:  Apologies for that, Your Honor.

8    We're ready to go.

9             THE COURT:  All right.  Just keep Mr. Siegel away

10   from the electronics during the breaks.

11       (Laughter)

12   BY MR. QURESHI:

13   Q    Professor Fischel, what I would like you to do, sir,

14   please is on the screen or in front of you, Page 41 of

15   Professor Pratt's book, and I would like you read under the

16   heading, "Standards of Value," the second paragraph.

17   A    The paragraph that begins, "Without"?

18   Q    Correct.

19   A    "Without carefully defining the term, 'value,' the

20   conclusions reached in the valuation report have no

21   meaning."

22   Q    Okay.  And, sir, you're -- you're familiar with the

23   term, fair market value, though, right?

24   A    You know, again, I've heard terms used in a variety of

25   different contexts meaning different things.  I certainly

1  have my own understanding of what the term, fair market

2  value, is, but I think frequently these terms are used

3  loosely and I think as Professor Pratt himself suggests they

4  can mean different things to different people.

5  Q    Right.  So -- so turn the page in Professor Pratt's

6  book, please, to Page 42 --

7  A    Okay.

8  Q    -- and you'll see a paragraph there beginning, "In

9  most interpretations of fair market value."  Do you see

10  that?

11  A    I do.

12  Q    Can you please read that?

13  A    You want me to read it out loud?

14  Q    Yes, please.

15  A    "In most interpretations of fair market value, the

16        willing buyer and willing seller are hypothetical

17        persons dealing at arms length rather than any

18        particular buyer or seller.  In other words, a price

19        would not be considered representative of fair market

20        value if influenced by special motivations not

21        characteristic of a typical buyer or seller."

22  Q    And you disagree with that particular definition of

23  fair market value, right?

24  A    Well, I guess I -- I would need to know exactly what

25  is meant.  It's not obvious to me.  I think if you're

1   dealing with real world buyers and sellers, just like if

2   you're dealing with real world assets and liabilities, it's

3   better to focus on the real world buyers and sellers and the

4   real world assets and liabilities rather than hypothetical

5   assets and liabilities or hypothetical buyers or sellers.  I

6   mean, I could understand possibly trying to reconstruct a

7   market transaction if you don't have actual transactions,

8   but if you have actual transactions in the same way, if you

9   have actual assets and liabilities, I think you should value

10  the actual assets and liabilities, not hypothetical assets

11  and liabilities.

12  Q    Okay.  So -- so in other words, under your real

13  economic value standard, as I think you described it on

14  direct, the specific attributes of a -- of a buyer should be

15  taken into account.  You shouldn't use the hypothetical

16  buyer as suggested by Professor Pratt, correct?

17  A    I think if you're analyzing whether or not there's

18  sufficient assets to pay creditors --

19  Q    Okay.

20  A    -- you should analyze the value of the assets in the

21  real world, not in a hypothetical world.

22  Q    And so when you're doing a balance sheet solvency

23  test, what you're doing is analyzing whether there's enough

24  there to pay creditors?

25  A    You're analyzing whether the value of assets is

1  greater than the value of liabilities, and the only way to

2  do that in a meaningful way is to look at the real assets

3  and the real liabilities, not hypothetical assets and

4  liabilities.

5  Q    Okay.  And -- and as you talked about on direct, in

6  your balance sheet solvency analysis you take into account

7  the tax benefits of the buyer in this transaction here being

8  an S-Corp ESOP structure, right?

9  A    Well, I -- I do it in two ways, sir.  One way, yes,

10  and one way, no.

11  Q    Right.  And -- and am I right that -- that you don't

12  cite any academic authority in your report for doing it that

13  way; that is to say for taking into account those -- those

14  tax benefits.  Is that right?

15  A    No.  I do not.  I think the point is clear and

16  consistent with basic economics about how assets should be

17  placed in their highest and best use, and assets should be

18  valued based on how they are.  But I didn't cite any

19  specific academic literature for those propositions.

20  Q    Turn, sir, please to Tab 4 of the binder in front of

21  you.

22  A    Okay.  I have it.

23  Q    And, again, this is an excerpt from a handbook

24  entitled, *S-Corporation ESOPS*.  I would like you to turn to

25  Page 98 and under the heading, "Conclusion," I would like

1    you to read the first sentence, please.

2    A      "No increase in value is appropriate in the appraisal

3    of S-Corporation ESOPs only as a result of a change in tax

4    status."

5    Q    And then if you skip one sentence and then there's

6    another sentence in that same paragraph beginning, "The

7    presumption."  Can you please read that as well?

8    A      "The presumption of an S-Corporation buyer violates

9    the fair market value standard because another S-Corporation

10   is a specific buyer."  Should I keep reading?

11   Q      No.  You can stop there.  Thank you, Professor.

12          And you're aware -- I think you mentioned on your

13   direct testimony, actually, that the -- that the examiner

14   also disagrees with taking into account the tax benefits of

15   an S-Corp ESOP structure in doing a balance sheet solvency

16   test.  Is that right?

17   A      I am aware of that.

18   Q      All right.

19          Now what I would like you to do is in the -- in the

20   red weld that has been placed in front of you, sir, there

21   should be -- all right.  Actually, you know, the section of

22   the examiner's report that I wanted is not in the binder.

23   So let's just pull it up on the screen.  It's Page 225 and

24   226 of Volume I.

25          And I gather you're aware from the work that you've

1   done in this case, Professor, that -- that there was a

2   solvency opinion rendered by VRC at the time of the

3   transaction?

4   A    Yes, sir.  I am aware of that.

5   Q    Okay.  Now -- and we'll -- we'll blow up Page 226 in

6   particular and you'll -- you'll see Brian Browning, he was a

7   managing director or, perhaps, still is the managing

8   director at VRC.  And if you look at the top of Page 226, I

9   would like you to just read the sentence that begins, "Brian

10  Browning."  Do you see that?  And we'll blow it up for you.

11  A    I would appreciate that because I don't -- I don't --

12  Q    Yeah.

13  A    Oh, I see.  I'm sorry.  You want me to read that

14  sentence, sir?

15  Q    Yes, please.

16  A    Okay.

17       "Brian Browning, a managing director at VRC who has

18       worked on 400 to 500 solvency opinions, including the

19       Tribune opinions, testified that he did not believe he

20       had ever worked on a solvency opinion that modified

21       the definition of fair value in that fashion."

22  Q    Okay.  And you'll see, if you flip back to Page 225 --

23  and we'll blow it up for you -- that there the examiner

24  notes that VRC was required to measure fair market value as:

25       "The consideration that would change hands between a

1          willing buyer and a willing seller, both having

2          structures similar to the structure contemplated by

3          the -- by the subject entity; that is, an S-Corp

4          ESOP."

5          Do you see that?

6    A     I do.

7    Q     Have you heard -- did you come across in your

8    investigation here, sir, a firm by the name of Murray

9    Devine?

10   A     You know, I think I've heard that name, but I don't

11   really remember anything specific about it.

12   Q     Okay.  Well, they were a -- they are a solvency firm

13   hired by, among others of your client, JPM.  And what I

14   would like you to do is I'm going to play a short excerpt

15   from the deposition of Mr. Kenney, who is from Murray Devine

16   and who worked on this matter back in 2007.

17          MR. QURESHI:  It's Click 32, please, Robbie.

18          (EXCERPT OF DEPOSITION PLAYED AS FOLLOWS):

19          "Q  Okay.  And is it appropriate to include

20          within a fair value determination attribute --

21          attributes  or value that results from unique aspects

22          of the buyer?"

23          "ATTORNEY:  Objection as to form.  Object to form

24          and foundation.

25          "A  I have not seen that before.

1      "Q   Okay.   So in your opinion would it not be

2         appropriate to include that -- those aspects of value?

3            ATTORNEY:   Objection to form and foundation.

4      "A   I've never seen it before.   I would probably

5         say it's not appropriate."

6         (PLAYBACK OF DEPOSITION CONCLUDED)

7   Q    And, Professor Fischel, those were the words of a

8   contemporaneous participant in the transaction, right, not

9   an after the fact expert?

10  A    From what -- what you represented that sounds right.

11  Q    Okay.

12            MR. BUSATH:   Your Honor, we have a series where

13  they're reading excerpts and not asking -- not laying a

14  foundation that the -- that there was expertise here and not

15  asking Mr. Fischel about what's being said, just reading

16  things into the record.   I'm not sure that's proper.

17            THE COURT:   Well, with respect to the last

18  question the objection is overruled.   But you may rise again

19  if you think it's appropriate.

20  BY MR. QURESHI:

21  Q    Now let's -- let's talk about the balance sheet

22  solvency test that you did here.

23       Now after you read Mr. Tuliano's report, you ran a DCF

24  analysis of step one with consideration of the merger using

25  average based case projections, right?

1    A      Correct.

2    Q      And in your opening report you just used management

3    projections, did you not?

4    A      That's right.

5    Q      Okay.  And in your rebuttal report -- I think it's

6    Exhibit BB to your rebuttal report -- that shows the

7    analysis that you -- that you did, correct?

8    A      Hold on.

9    Q      It's Page 5 of Exhibit BB in particular.

10   A      Correct.

11   Q      Okay.  And if you look on Page 5 in Exhibit BB in your

12   rebuttal report, this analysis -- your DCF analysis there

13   you use Tribune's debt to equity capital structure, right?

14   A      Correct.

15   Q      Okay.  Now I would like you to -- I apologize -- we're

16   going to be flipping back and forth a little bit between

17   your reports.  But go to your opening report.  I think it's

18   probably easiest and -- to use the tabbed version that I

19   believe was handed up on your direct.

20   A      Okay.  I have it.

21   Q      And turn to Exhibit M, and once you're in Exhibit M go

22   to Page 38.  And this is -- this is the same DCF that you

23   ran but using the management projections.  Is that right?

24   A      Correct.

25   Q      Okay.  And you show -- at the bottom right there's a

1  box and it shows discount rates from a range of seven-and-a-

2  quarter to eight-and-a-quarter percent --

3  A    That's right.

4  Q    -- and then along the top terminal multiples of eight-

5  and-a-half to nine, right?

6  A    Correct.

7  Q    okay.  And -- and that's commonly referred to as a

8  sensitivity analysis or a sensitivity table.  Is that right?

9  A    You could call it that.

10 Q    Okay.  And what -- what you're trying to do here is

11 show how your conclusion would be impacted by using

12 different discount rates and different terminal multiples,

13 right?

14 A    That's correct.

15 Q    Okay.  Now I want you to go back to Exhibit BB --

16 A    Okay.

17 Q    -- in your rebuttal report.  So, again, same DCF

18 analysis except here we're using third party projections

19 rather than management, correct?

20 A    Correct.

21 Q    And you don't have a sensitivity table, do you?

22 A    That's right.

23 Q    And is there a particular reason that you didn't put a

24 sensitivity table in?

25 A    There is.  I could have, but this particular exhibit

1  was a response to a criticism of Mr. Tuliano and what I

2  tried to do was create the exhibit in a way that was

3  responsive to his particular criticism where he did not

4  report a range for purposes of this analysis.  He reported

5  one number.  So that's what I did as well.

6       But you're quite right.  I could have also -- if I

7  weren't just responding to Mr. Tuliano, there would have

8  been nothing wrong with including the other data.

9  Q    Right.  And -- and if you included a sensitivity table

10 here with the same discount rate spread and the same

11 terminal multiple spread it would, at the low end, at least,

12 show insolvency, wouldn't it?

13 A    I think at the low end you would get some negative

14 numbers.  That's correct.

15 Q    Okay.  Now in your opening report when you -- when you

16 ran your analysis using management's projections, you simply

17 accepted those projections, right?  You didn't do any

18 analysis of them.

19 A    That's right.

20 Q    And you're not offering an opinion, I gather, sir, as

21 to the reasonableness of management's projections at step

22 one?

23 A    Correct.  I have no expertise in the reasonableness of

24 management's projections.

25 Q    Okay.  By the way, were you in court yesterday for any

1  of Professor Black's testimony?

2  A      No, sir, I was not.

3  Q      Okay.

4  A      I was there this morning so I heard much of Professor

5  Black's testimony this morning, but I was not in court

6  yesterday.

7  Q      Okay.  Well, Professor Black, he described the

8  industry that Tribune is in in May of '07 as being in a

9  state of long-term decline.  Would you agree with that?

10  A      Well, from what perspective?  I mean, from the

11  perspective of today, from the perspective of -- what --

12  what time -- long-period decline, people anticipated that it

13  was going to be a long -- long-term decline, with the

14  benefit of hindsight it's a long-term decline.

15  Q      Well, let me --

16  A      I mean --

17  Q      -- let me try to -- let me try it this way.  You

18  testified on direct when you were talking about why you took

19  a discount to the median multiple range, you testified that

20  the future of the industry was a little uncertain.

21  A      I did.

22  Q      Right?  And so -- so from that perspective, what the

23  future of the industry looked like back at that point in

24  time in 2007, what Professor Black said was that in May of

25  2007 in his view the industry was in long-term decline.

1       And so at that time period, sir, do you have a view as

2  to -- as to whether you agree with that?

3  A    Well, I -- I don't want to comment on what Professor

4  Black said one way or the other because I didn't hear it and

5  I'm not familiar with it.  But I don't think it could be

6  said in -- from what I know in May of 2007 that there was a

7  consensus that the industry was in long-term decline.

8  Certainly, the market evidence is not consistent with that

9  proposition.

10  Q    Okay.  Turn to Tab 6, please, of your binder.

11  A    Which binder, sir?

12  Q    The binder of exhibits that I handed up.  It's the big

13  binder.

14  A    Okay.  I have it.

15  Q    Okay.  And you'll see here this is an email from April

16  30th from Peter Knapp who is the controller of the

17  publishing group and it's written to, among others, Mr.

18  Bigelow who, at the time, was the treasurer of the company.

19       Is this a document that you looked at or were provided

20  in the course of -- of preparing your report?

21  A    I don't know if we were -- if I was provided with it

22  or we were provided with it, but it played no role in the

23  preparation of my report.

24  Q    Okay.  And -- and for the record, this is NPP Exhibit

25  Number 397.

1          And so I gather, then, sir, that you weren't -- you

2     were not aware that, at least according to Mr. Knapp, there

3     was some consideration being given at Tribune at the time of

4     revising the projections?

5     A     No, sir.  I wasn't aware of that one way or the other.

6     Q     Okay.  And you're also not offering any opinion as to

7     the reasonableness of the company's projections at step two.

8     Is that right?

9     A     That's right.  I mean, one of the reasons why I did

10    the alternative analysis using the average of third party

11    projections was as a -- basically a check, an alternative

12    methodology.  But as I said, I have no expertise in the

13    reasonableness of projections and didn't form any opinions

14    one way or the other on that issue.

15    Q     Right.  And -- and you're obviously aware that the

16    examiner concluded that management's projections in October

17    of '07, before step two were not supportable, right?

18    A     Yes.  My understanding is the examiner accepted

19    management projections for step one, did not accept them for

20    step two, and I used an average of third party projections

21    at both steps in addition to management projections.

22    Q     Okay.  Let's -- let's talk a little bit about

23    combining the two -- the two steps of the transaction here.

24    A     Okay.

25    Q     Now you spent a lot of time on your direct and showed

1  a -- showed us a lot of slides where you measure solvency at

2  step one without consideration for merger, right?

3  A     Both with and without.  That's right, sir.

4  Q     Right.  And -- and you're aware that Mr. Tuliano does

5  not allege in his report and does not opine in his report

6  that the company at step one is insolvent if you don't also

7  take into consideration step two debt, right?

8  A     I believe Mr. Tuliano just assumes -- and this is, I

9  think, one of my fundamental criticisms of his analysis.  He

10 just assumes without any basis that the two steps were one

11 step.

12 Q     And -- and what you say in your report and what you

13 said on direct is that the contemporaneous evidence that you

14 looked at suggests that step one and step two were separate

15 and should be -- should be analyzed as such, right?

16 A     I said I placed principal emphasis on the market

17 evidence, which was consistent with my sort of general

18 understanding of the transaction from some of the documents

19 that I looked at.  But my role for the most part is not to

20 interpret documents.  My role is to analyze economic

21 evidence and that was the principal basis for my conclusion.

22 Q     And -- and you did no analysis of the legal standard

23 for collapsing the two steps of this transaction, right?

24 A     No, sir.  You know, in my view that's not an

25 appropriate role for an expert.

1   Q    Okay.

2   A    It's judgment for the Court.

3   Q    And you did no systematic review of the -- of the

4   documents that -- that have been the millions of pages that

5   are in the document depository here in connection with your

6   analysis of whether these two steps of the transaction

7   should be considered together or not, right?

8   A    That's correct.

9   Q    And nor, sir, did you review the credit agreement to

10  determine whether any of the terms of the credit agreement

11  should impact the analysis of how to consider these two

12  steps?

13  A    That's correct.

14  Q    Okay.  Now let's go back to your report.  Let's stay

15  with Exhibit M as in Michael.  That's on Page 38 of the

16  report and let's -- let's take a look at your -- your DCF --

17  A    Okay.  Hold on.  Exhibit M in my original report, sir?

18  Q    Correct.

19  A    Okay.  Got it.

20  Q    Thank you, Professor.

21       Now you'll agree with me, sir, that there are two

22  generally accepted ways of, in a DCF analysis, calculating

23  the terminal value, correct?  You can use a terminal

24  multiple as you did here or a perpetuity growth rate.  Is

25  that right?

1   A     Yes, sir.  That's right.

2   Q     Okay.  And -- and it's possible, is it not, if you, as

3   you did, calculate the terminal multiple -- or the terminal

4   value, rather, using an exit multiple that you can do some

5   math to imply what the growth rate is?

6   A     I believe that's correct.

7   Q     Okay.  And do you recall at your deposition in

8   connection with this -- this analysis here in Exhibit M, Ms.

9   Newman asked you if you knew what the implied long-term

10  growth rate was from your terminal multiple analysis?

11  A     I think I do recall that.

12  Q     Okay.  And -- and what you told her was you recalled

13  looking at it, but you couldn't remember the number at the

14  time, right?

15  A     That's right.

16  Q     Do you know today?

17  A     No, I don't.  I mean, not from memory anyway.  I could

18  -- I think we have that in our work papers somewhere.  But I

19  don't recall as I sit here.

20  Q     All right.  Well, I'm going to ask you to assume that

21  -- that there's going to be testimony later in this case

22  that will show that the implied long-term growth rate from

23  your analysis is 2.4 percent at the low end and 2.8 percent

24  at the high end.

25        Now, Professor, I've handed you -- in addition to the

1  binder there's a red weld containing a number of documents.

2  If you could please pull that out.

3  A    I have it.

4  Q    Thank you.

5      Let's start with -- and I apologize.  I don't know

6  what order these are in.  But you will see two presentations

7  in there from Duff and Phelps, one of them has a date, March

8  29 in brackets 2007.

9  A    I have that.

10  Q    Okay.

11          MR. QURESHI:  And for the record, that is NPP

12  Exhibit Number 300.  Your Honor, do you have that document

13  in front of you?

14          THE COURT:  I do.

15  BY MR. QURESHI:

16  Q    And do you know, sir, who Duff and Phelps represented

17  back in 2007?

18  A    You know, I think I do, but I don't want to guess.

19  Q    Okay.  Well, I'll -- I'll represent to you, sir, that

20  -- that I believe they represented the ESOP.

21  A    I was going to say I think they were advisors to the

22  ESOP.

23  Q    Okay.  Is this a presentation that you looked at in

24  preparing your expert report?

25  A    I would have to check my Exhibit H of my original

1    report to answer that question, so let me do that.

2         (Pause)

3    A    It looks like I have a -- a couple of Duff and Phelps

4    reports that I used, but they look like they have different

5    dates than this one.

6    Q    Okay.  But you'll agree that Duff and Phelps, sir, is

7    a -- or was a contemporaneous participant in this

8    transaction, right?

9    A    Yes, sir, I would.

10   Q    Not an after the fact expert?

11   A    I would agree with that.

12   Q    Right.  And, again, that's the type of evidence that

13   you place most weight on in your analysis, right?

14   A    As part of a general approach to try and consider as

15   much of the contemporaneous valuation evidence as possible.

16   That's correct.

17   Q    Turn to Page 7 of that document, please.  This is the

18   one dated March 29.  Again, it's Exhibit NPP 300.

19   A    Okay. I have it.

20   Q    And that says on the top, "Valuation analysis

21   publishing," and what do they show, sir, at the bottom of

22   the page as their terminal growth rate?

23   A    For publishing .75 percent.

24   Q    Sir, turn to Page 25.

25   A    Okay.

1  Q     And the top of that page you'll see is called,

2  "Valuation analysis broadcasting."  And, sir, tell me what

3  the terminal growth rate is that they're showing for

4  broadcasting?

5  A     .75 percent.

6  Q     And by the way, when I told you that we would have

7  testimony later in this case that the implied growth rate in

8  your DCF is 2.4 to 2.8 percent, do you have any reason to

9  disagree with that?

10  A     I don't have any reason to either agree or disagree.

11  I know there are some contemporaneous forecasts of growth

12  rates at that level.  That's in my rebuttal report.  But

13  more importantly, I derive my multiple from which you could

14  calculate a growth rate from what actual participants in the

15  marketplace were valuing the comparable firms.  It was not

16  an assumption that I made.  It was a specific calculation

17  taking all of the firms that were comparable and analyzing

18  the relationship between their enterprise value and various

19  financial indicators, particularly EBITA to derive a

20  multiple that could be applied to the Tribune.

21       So whatever the implied growth rate is, it comes

22  directly from the market evidence of comparable companies,

23  not internal documents, but how investors in the marketplace

24  actually valued these companies, which is one of the reasons

25  I didn't agree with your statement about the Tribune or the

1  businesses of the Tribune being in a long-term decline in

2  May of 2007 because the market evidence just doesn't support

3  that.

4  Q    Let's look at the Duff and Phelps analysis at December

5  31 of 2007.  Do you have that in front of you?

6  A    Hold on.

7  Q    Sure.

8         THE COURT:  What's the exhibit number on this?

9         MR. QURESHI:  Your Honor, that exhibit is NPP

10  676.

11        THE COURT:  Thank you.

12        THE WITNESS:  I have it, sir.

13  BY MR. QURESHI:

14  Q    Okay.  So this is Duff and Phelps analysis just after

15  step two.  And turn, please, sir, to Page 39 of the

16  document.

17  A    Okay.

18  Q    And, again, you'll see from the heading, "Valuation

19  analysis publishing."  At the bottom of that page please

20  tell me the terminal growth rate that Duff and Phelps uses

21  in their analysis at December 31 of '07?

22  A    .5 percent.

23  Q    And turn, sir, within that document to Page 57,

24  please.

25  A    Okay.

1   Q      And you'll see here is the valuation analysis for the

2   broadcasting segment.  Sir, what is the terminal growth rate

3   that Duff and Phelps shows at step two for broadcasting?

4   A      1.5 percent.

5   Q      And do you know who Morgan Stanley advised in

6   connection with the LBO?

7   A      Same answer as before.  I think so, but I don't want

8   to guess, so.

9   Q      Okay.  Well, let -- why don't you pull out the Morgan

10  Stanley presentation that's in the red weld?

11           MR. QURESHI:  And, Your Honor, for the record

12  this one is NPP 338.

13           THE WITNESS:  Okay.  I have it.

14  BY MR. QURESHI:

15  Q      Okay.  And does looking at the title page, sir,

16  refresh your recollection that Morgan Stanley advised the

17  committee of independent directors of the board of Tribune?

18  A      yeah.  Again, I --

19  Q      Okay.

20  A      -- I thought that, but I wasn't sure.  So --

21  Q      And, again, I gather you'll agree with me that they're

22  a contemporaneous participant and not an after the fact

23  expert?

24  A      Yes, sir, I would.

25  Q      Okay.  And you'll see from the cover page it's April 1

1  of 2007?

2  A     I do.

3  Q     Okay.  Turn, sir, please, to Page 27 of the document.

4  And you will see from the heading that this is a DCF

5  analysis for the management plan.

6  A     I see that.

7  Q     Okay.  Now I need you to look at the bottom of the

8  page.  It's the second row from the very bottom.  You'll see

9  it says, "implied perpetuity growth rate."

10  A     I see that.

11  Q     Okay.  And you'll see that they have a range at a

12  seven percent discount rate and then they have a range at an

13  eight percent discount rate.  Sir, what is the -- the

14  implied growth rate that Morgan Stanley shows at their seven

15  percent discount rate?

16  A     Well, they have a range from negative 0.4 percent to 0

17  -- positive 0.3 percent.

18  Q     Okay.  And at the eight percent discount rate what is

19  the range that Morgan Stanley shows for their implied

20  perpetuity growth rate?

21  A     0.4 percent to 1.2 percent.

22         MS. BUSATH:  Your Honor, I wonder if at some

23  point there will be a question for Mr. Fischel about these

24  things that have been read to the record.

25         THE COURT:  Mr. Qureshi?

1          MR. QURESHI:  Your Honor, I'm simply contrasting

2   the implied growth rate in the professor's own analysis with

3   the contemporaneous evidence that he said he looked to.  I

4   think the conclusions speak for themselves.

5          THE COURT:  Well, that may all be true, but you

6   still need to ask a question.

7      (Laughter)

8          MR. QURESHI:  Okay.  And, Your Honor, I'm going

9   to show him one more and then we'll -- we'll get to the

10  ultimate question on this issue.

11  BY MR. QURESHI:

12  Q     Professor, let's -- let's look at what your client was

13  doing at the time.  Pull out the JP Morgan presentation.

14         MR. QURESHI:  This is Exhibit Number, Your Honor,

15  NPP 365.

16  BY MR. QURESHI:

17  Q     Sir, do you have that document?

18  A     I do.

19  Q     Okay.  And you'll see from the title page that it's

20  dated April 5 of 2007?

21  A     I see that.

22  Q     Okay.  And turn to Page 68 of the document, please.

23  A     I have it.

24  Q     Okay.  And you will see the title page here is, "DCF

25  Valuation Based Case Step One."  Do you see that?

1    A       Actually, I don't.  I'm sorry.

2    Q       At the top of the page in bold --

3    A       Oh, I'm sorry.  The heading.  Yes.  I do see it.

4    Q       Yes.  That's just -- okay.  So I want you to scroll

5    down to the middle box on the page and you'll see a Column

6    B, and on top of that it says, "PV of terminal value at

7    perpetuity growth rate."  Do you see that?

8    A       I do.

9    Q       Okay.  Can you tell me what the range is that JPM

10   shows in -- on this page?

11   A       Zero percent to one percent.

12   Q       Okay.  Now let's look at step two, which is on Page 70

13   of the document.  And it's the same -- the same box on that

14   page.  And can you tell me, sir, what the implied growth

15   rate is that JPM is showing at step two?

16   A       If I'm reading it correctly the same range, from zero

17   percent to one percent.

18   Q       Okay.  And, sir, all of these contemporaneous analyses

19   that I've shown you from -- from Duff and Phelps, from

20   Morgan Stanley, and from your client, JPM, do any of those

21   cause you, sir, to change your opinion and to conclude that

22   the implied growth rate in your DCF of 2.4 to 2.8 percent is

23   too high?

24   A       No.

25           (Pause)

1  Q     And, Professor, are you able to tell me approximately

2  what the impact would be on your DCF analysis if instead of

3  a multiple applying a growth rate of 2.4 to 2.8 percent, you

4  used the multiple that implied a growth rate of -- of zero

5  to one percent?

6  A     Well, if I -- if I did that, you know, just as a

7  matter of arithmetic it would produce lower enterprise

8  values.

9  Q     Now let's take a minute and look at you r-- your

10 weighted average cost of capital that you used in your

11 DCF --

12 A     Okay.

13 Q     Now fair to say, sir, that a key assumption in the

14 WACC is the debt to equity ratio that you use?

15 A     Yes, sir.  It is.

16 Q     Okay.  And -- and am I right that what you do in your

17 DCF analysis and your balance sheet solvency test is you

18 calculate the WACC using Tribune specific debt to equity

19 capital structure, right?

20 A     Correct, although as I said I also checked it against

21 the industry average.  It doesn't make any difference.

22 Q     Okay.

23 A     Not any -- I mean, the numbers change, but in terms of

24 the opinion on solvency it doesn't make any difference.

25 Q     Okay.  Well, let's -- let's look at Appendix G of your

1   report.

2   A     Okay.

3   Q     And once you're in Appendix G, sir, please turn to

4   Page 5.

5   A     Oh, I'm sorry.  Appendix G.

6   Q     Yeah.  I got confused to.  It's Appendix G as opposed

7   to Exhibit G.

8   A     It is confusing.  I have it.

9   Q     And on Page 5, that's where you're calculating the

10  unlevered beta for your comparable companies, correct?

11  A     That's right.

12  Q     I would like you to focus on Column D, the debt to

13  capital ratio.

14  A     Okay.

15  Q     And what do you calculate the median debt to capital

16  ratio of your comparable companies to be?

17  A     Forty-seven percent.

18  Q     And this is as of step one, correct?

19  A     That's right.

20  Q     Okay.  Within that exhibit, sir, I would like you to

21  turn to Page 7.  And on --

22  A     Okay.

23  Q     And on Page 7 you are showing your weighted average

24  cost of capital at step one for Tribune with consideration

25  of the merger, right?

1   A     That's right.

2   Q     And please tell me, sir, what you show the debt to

3   capital ratio to be of Tribune?

4   A     A range from seventy-five to eighty-five percent.

5   Q     And so that's as compared to a median for your comps

6   of forty-seven percent, correct?

7   A     That's right.

8   Q     Okay.  Now let's quickly look at those same numbers at

9   step two.  So, again, staying within this exhibit --

10  A     Okay.

11  Q     -- go to Page 10, please.  And am I correct that at

12  step two the debt to capital ratio for your comparable

13  companies shows a median of sixty percent?

14  A     Correct.

15  Q     Okay.  And flipping, then, to Page 12, again at step

16  two the weighted average cost of capital for Tribune you're

17  showing at 92.5 percent up to 97.5 percent, correct?

18  A     That's correct.

19  Q     And, again, that's as compared to a median for your

20  comps of sixty percent?

21  A     Correct.

22  Q     Okay.  And you believe, sir, that this capital

23  structure is potentially sustainable?

24  A     I think it's hard to know if it's sustainable.  It's

25  potentially sustainable, at least for a short period of

1   time.  But, you know, as I've indicated I also checked my

2   calculations against the median industry debt equity ratio

3   and it didn't make any difference in terms of my conclusions

4   of solvency because as you decrease leverage, your -- your

5   tax benefits go down, but the rate of return that both debt

6   and equity holders demand goes down because it's a less

7   risky company.  So those effects offset.  So my conclusion

8   really isn't dependant on the Tribune-specific capital

9   structure.

10  Q     Okay.  Sir, let's turn, please, to Appendix E of your

11  report.  And, again, this is Appendix E as opposed to

12  Exhibit E.

13  A     Okay.

14  Q     And in particular to the fourth page.  I want to just

15  explore here another one of the inputs into your -- your

16  solvency analysis.

17  A     Okay.

18  Q     And so this page is showing publishing and

19  broadcasting projections at step one.  Is that right?

20  A     Correct.

21  Q     Okay.  And I want you to focus on the row that says,

22  "increase/decrease in working capital."

23  A     I see that.

24  Q     Okay.  And you'll see that from 2008 through 2012,

25  you're showing increases in working capital ranging from $26

1  million annually to $28 million annually.  Is that right?

2  A    That's correct.

3  Q    Okay.  Turn to Page 6 within this exhibit.

4  A    Okay.

5  Q    And on Page 6, this is now the publishing and

6  broadcasting projections at step two, correct?

7  A    Correct.

8  Q    And your working capital increase at step two has been

9  reduced from the twenty-six to twenty-eight-million-dollar

10  range at step one all the way down to $1 million annually,

11  correct?

12  A    That's right.

13  Q    And isn't it true, sir, that you never formed an

14  opinion as to -- as to the reasonableness of an annual

15  working capital increase going all the way down to $1

16  million?

17  A    I have not.  These are just management projections and

18  as I said, I did not form any opinion on the reasonableness

19  of the management projections.

20  Q    All right, Professor.  Let's -- let's switch topics

21  one more time and talk about the PHONES debt for a moment.

22  A    Okay.

23  Q    Now you use, at step one -- and this is in your -- in

24  your rebuttal report if you would -- if you would like to

25  take a look at Page 6.  You use, for the PHONES debt, a

1  number of $663 million at step one and 597 at step two,

2  right?

3  A    Umm --

4  Q    You'll see it in Paragraph 17.

5  A    Yeah.  I'm looking.  I'm looking.

6  Q    All right.

7  A    Correct.

8  Q    And -- and you understanding that approximately 1.3

9  billion would be due upon maturity of the funds' notes?

10 A    Yes, sir.  I do understand that.

11 Q    Okay.  And one of the reasons, if I understood your

12 deposition testimony correctly, that you decided to use an

13 amount lower than the face value of the PHONES notes is that

14 those notes had a very low interest rate and at the present

15 value of the interest payments and the conversion option,

16 that was all lower than the face amount of the debt.  Is

17 that right?

18 A    Yes.  Well, I think what I said was I just took the

19 numbers directly from the Tribune's financial statements,

20 but I understand the economic logic of recording the value

21 of the PHONES at less than the face value for the reasons

22 that you correctly stated.

23 Q    Right.  And -- and you've never valued debt in that

24 way before, have you, for purposes of a balance sheet

25 solvency test?

1  A     Well, I've done a lot of present value analyses of

2  debt. I -- I, frankly, just don't remember anything exactly

3  like the PHONES that I've encountered before.

4         (Pause)

5  Q     Now I would like you, sir, to please turn in your

6  binder to Tab 8.  And for the record at Tab 8 you will find

7  Exhibit NPP 767.

8  A     I have it, sir.

9  Q     And you'll see that that's a pleading filed with this

10  Court and it's entitled, "Statement of Facts Concerning

11  Tribune, the Leveraged ESOP Transaction and Related

12  Matters."

13  A     I see that.

14  Q     And turn, please, to Page 12 of this document.

15  A     Okay.

16  Q     And you'll see on this page it's entitled changes in

17  the company's capital structure as a result of the ESOP LBO.

18  A     I see that.

19  Q     And if you go down the left side of the table you'll

20  see the -- third from the bottom there's a line item.

21  There's a row for the PHONES.

22  A     I see that.

23  Q     And does that, sir, show both that the pre-LBO time

24  period in April and at step two, that on this document the

25  PHONES are -- the PHONES notes are shown at face value?

1   A     Yes.

2   Q     Okay.  And is this a document that you were provided

3   at the time that you prepared your expert report?

4   A     I guess I don't recall one way or another, but it

5   certainly played no role in my expert report.

6   Q     All right.  Let's -- let's now take a look at your

7   comparable company analysis for a moment.

8   A     Okay.

9   Q     And let's go to Exhibit N and that can be found at

10  Page 40 of your opening report.

11        (Pause)

12  A     I'm sorry.  Where -- where is it found, sir?

13  Q     Exhibit N and I believe it's Page 40 of your opening

14  report.

15  A     Oh, I -- yeah.  My comparable company's valuation --

16  Q     Right.

17  A     -- not selection of comparable companies.  I got it.

18  Q     You got it?

19  A     Okay.

20  Q     Yeah.

21  A     I have it.

22  Q     And Row D, "cash and cash equivalency," do you see

23  that?

24  A     I do, sir.

25  Q     And you have a cash and cash equivalence number of

1 $362 million, correct?

2 A     Correct.

3 Q     And if you look at Footnote D, your cash balance

4 includes an addition of $100 million used to pay down the

5 Tranche X facility on June 29th of 2007, right?

6 A     Yes.  I think I stated in my deposition that's an

7 error.  There's a double-counting of the hundred million

8 dollars.

9 Q     Okay.  So the -- the correct cash balance should be a

10 hundred million lower.  Is that right?

11 A     That's right.  And it reduces the comparable company

12 valuation by a hundred million dollars from 3.7 million to

13 4.2 million to 3.6 billion to 4.1 billion.

14 Q     Okay.  Now the balance sheet solvency analysis that

15 you did for Tribune, you did it on a consolidated basis,

16 right?

17 A     Correct.

18 Q     Okay.

19 A     And, again, I did the adjustment that I testified

20 about which is a balance sheet type of adjustment, but in

21 terms of a full balance sheet analysis, I did it on a

22 consolidated basis.

23 Q     Right, you didn't do a -- what's referred to as a sum

24 of the parts valuation.  You did one DCF for the entire

25 enterprise, right?

1  A     That's right.  Correct.

2  Q     Okay.  And you obviously know from -- from analyzing

3  the documents and the business that Tribune, at this time

4  and indeed today is a diversified media company, right?

5  A     That's my understanding.

6  Q     So it's got a broadcasting business and a publishing

7  business?

8  A     Correct.

9  Q     Now let's go to Appendix D, please.  And this is a

10 page that you -- that we looked at during your direct.  This

11 shows your selection of the comparable companies, right?

12 A     Correct.

13 Q     And if I understand your methodology correctly, what

14 you did is you looked at a bunch of contemporaneous analyses

15 that were done by numerous advisors and you looked to see

16 how often those advisors or banks selected a particular

17 company as part of their comparable analysis, right?

18 A     That's correct.

19 Q     Okay.  And those companies that were chosen five times

20 or more are the ones that ended up in your comps with, I

21 think, one exception, right?

22 A     That's correct.

23 Q     Okay.  And -- and so the only specific analysis you

24 did with respect to these companies is -- is you wanted to

25 make sure that none of them had a significant percentage of

1   their income that came from a business that Tribune didn't

2   have, right?

3   A     Right.  And that they were in the broadcasting and/or

4   publishing business or both.

5   Q     Right.  And that's why you eliminated the *Washington*

6   *Post* company --

7   A     Correct.

8   Q     -- as part of the comps because they derive a lot of

9   business from non-publishing or non-broadcasting businesses,

10  correct?

11  A     That's right.

12  Q     Okay.  And -- and I gather you're aware that back in

13  2007, Tribune derived a majority of its revenues from the

14  publishing business?

15  A     That's my understanding.

16  Q     Okay.  But you don't know from this list of comparable

17  companies which of these companies are purely broadcasting

18  companies, do you?

19  A     Not from this list.  No.  You would have to

20  investigate.

21  Q     And you don't know which of these comparable companies

22  are purely publishing companies, do you?

23  A     Same answer.  That's right.

24  Q     Okay.  Let's now turn, please, sir, to Exhibit U.  Do

25  you have that in front of you?

1    A      I do, sir.

2    Q      And this is, again, Exhibit U in your -- in your

3    opening report.  And, again, I want you to focus on the cash

4    and cash equivalence number.  So this is as of step two,

5    right, December 20th?

6    A      Correct.

7    Q      And you show a cash number -- a cash balance of $233

8    million, correct?

9    A      Correct.

10   Q      And Footnote D tells us that your source for that

11   number is a 10-K filed -- or a 10-K for the year ending

12   December 30, 2007, correct?

13   A      That's correct.

14   Q      Okay.  And you recall we -- I shouldn't say we.  I

15   wasn't there.  You discussed with -- with Ms. Newman at your

16   deposition that -- I don't think you were aware that VRC in

17   its analysis showed a different -- a different cash number

18   at December 20th of 2007, right?

19   A      I think I vaguely recall that issue coming up, but I

20   don't remember more than that.

21   Q      Sir, turn to Tab 11 in your binder, please.

22            MR. QURESHI:  And for the record this is Exhibit

23   NPP 669.

24            THE WITNESS:  Okay.  I have it.

25   BY MR. QURESHI:

1    Q     And turn to Page 7 of that document, please.

2    A     Okay.

3    Q     And can you tell me on Page 7 what the cash number is

4    that VRC is showing as of December 20th?

5    A     A-hundred-and-ninety-seven, almost 198 million.

6    Q     Okay.  And would you agree, sir, that that's the cash

7    number that you should have used, a number as of December

8    20th as opposed to as of yearend?

9    A     Yeah.  I guess I -- I would say that.  I don't know

10   how this number was calculated.  I think we made an attempt

11   with the 233 to see if there were any significant changes

12   between December 20th and yearend, and decided that the 233

13   was a reliable number.  And, frankly, there's only a very

14   small difference in any event and I don't know how the VRC

15   number was calculated.  But I do agree that conceptually the

16   right exercise is to know the number -- the amount of cash

17   on December 20th.

18   Q     All right.

19          MR. BUSATH:  Your Honor, I'll just note an

20   objection.  Since this witness does not know how it was

21   calculated, there's been no foundation laid how it was

22   calculated, the assumption in the question that it was a

23   number as of December 20 -- is not established and I would

24   object to the question.

25          THE COURT:  Well, it's been asked and answered.

1  Overruled.

2  BY MR. QURESHI:

3  Q    Let's move on and talk about your comparable

4  transaction analysis, Professor.

5  A    Okay.

6  Q    If we can please pull up Page 3 of the demonstratives.

7       (Pause)

8           MR. QURESHI:  Sorry, Your Honor.  One minute.

9       (Pause)

10          MR. QURESHI:  Let me see if we can do this a

11  different way.

12  BY MR. QURESHI:

13  Q    Sir, why don't' we go instead to your report and let's

14  turn to Exhibit G and that has your comparable transactions'

15  methodology as of Step 1, correct?

16  A    Yes, sir, it does.

17  Q    Okay.  And am I correct in understanding the

18  methodology, and if you go to Page 17 within that -- within

19  that exhibit I think you have a footnote that explains it.

20  But basically what you did is you looked at all transactions

21  between June 4th of 2004 and June 4th of 2007 that had

22  particular SIC codes or fact set codes, industry codes,

23  basically, and then from that set you backed out any deals

24  that were under a billion dollars or were less than a fifty

25  percent interest was purchased.  Is that right?

1   A      That's right.

2   Q      Okay.  And I think you also backed out any deals that

3   had no reported or negative enterprise value to EBITA?

4   A      That's right.

5   Q      Okay.  And, again, you didn't do any independent

6   analysis to assess whether the company's involved with any -

7   - if any of these transactions were truly comparable with

8   Tribune, correct?

9   A      Well, the analysis that I did, again, similar to my

10  analysis of comparable companies was to use objective

11  criteria to select transactions that third parties who had

12  no stake in this litigation said met certain criteria that

13  this transaction also met, and I used that as the set of

14  comparable transactions.

15  Q      Right.  So -- so other than pulling down this list and

16  excluding the companies that you've described in the

17  footnote here, you didn't independently look at each

18  transaction and do any type of analysis to compare whether

19  those companies involved in those transactions were

20  comparable to Tribune?

21  A      Correct.  I -- I --

22  Q      Okay.

23  A      -- used a filter which had these third party

24  classifiers putting these transactions in the same industry

25  as the Tribune, but I did not analyze every individual

1  transaction.   That's correct.

2  Q     Okay.  And it's your opinion, right, that this -- this

3  particular analysis here, your comparable transaction

4  analysis, is a less-reliable indicator of Tribune's value

5  than the other methodologies that you applied?

6  A     Under the facts and circumstances of this case, yes.

7  That's my opinion.

8  Q     Okay.  And you didn't do any type of a weighting

9  between the various methodologies, your DCF, your comps, and

10 your -- and your transactions, right?

11 A     No, I did not.

12 Q     So you can't tell me how much less weight should be

13 accorded to this methodology?

14 A     Not in terms of a mathematical formula. I could tell

15 you what I relied on principally in my opinion, which was

16 not this methodology for reasons that I've described.  But,

17 again, it's a very standard conventional methodology, so I

18 included it.

19 Q     Okay.  Now one of the demonstratives that your counsel

20 pulled up on your direct testimony this morning related to

21 market evidence.  So let's talk about that for a minute.

22 A     Okay.

23 Q     And I believe that one of the things you point to,

24 sir, as evidence of solvency here is the willingness of

25 lenders to fund this transaction --

1   A      That --

2   Q      -- correct?

3   A      That's one of the factors.  Yes, sir.

4   Q      Okay.  Now I would like you to turn, please, in your

5   binder to Exhibit 12.

6          (Pause)

7   Q      And you will find as Exhibit -- at Exhibit 12 a

8   document which is Exhibit NPP 296.  And this, sir, is an

9   email, an internal email at Citi -- at Citigroup. I can tell

10  you if you look at the top of the page you'll see the date

11  of it is March 29th of 2007.  Do you see that?

12  A      I see that.

13  Q      And I will represent to you that Julie Persily, the

14  sender of this email, was at the time a managing director in

15  the leveraged finance group at Citi.

16         And, sir, I would like you to read, please, the first

17  two sentences that begin with "Christina."

18  A      "Christina, afraid that Morgan Stanley, special

19  advisor to the board, will trash us in the marketplace.

20  That's what got me on board,"

21  Q      And you'll --

22  A      Do you want me to read more?

23  Q      No.  That's fine.

24  A      Okay.

25  Q      Is this a document that you considered when you

1    assessed the market evidence of the willingness of lenders

2    to fund this transaction?

3    A      No.

4    Q      Okay.  When you analyzed the market evidence of the

5    willingness of the lenders to fund this transaction, sir,

6    did you consider that -- that the banks may have been

7    pressured into doing this transaction?

8    A      I'm not sure what you mean by pressured.

9    Q      Okay.  Well, let's -- let's turn to the next document

10   in your binder.  It's Tab 13.

11   A      Okay.

12   BY MR. QURESHI:

13   Q      And, again, for the record this is Exhibit NPP 297,

14   and this is another email from Ms. Persily at Citi and,

15   again, it's an internal document and I would like you to

16   focus on the email at the bottom of the page.

17          And I would like you to read, sir, the two -- the

18   three sentences or so, I guess -- the paragraph that begins

19   with the word, "Chad."

20   A      "Chad got pressure from MNA to move forward.  He wants

21          to meet at seven" -- I assume that means 7 a.m. --

22          "and go through terms.  Assume twelve percent, maybe

23          12.5 percent if downgrade, same drill, can we sell."

24   Q      And again, sir, is this an email that was shown to you

25   that you looked at in connection with your assessment of the

1  market evidence of the lenders' willingness to fund this

2  transaction?

3  A     I don't believe so, no.

4  Q     Okay.  And does seeing this email at all cause you to

5  reconsider, sir, your conclusion as to the lenders'

6  willingness to do this transaction?

7  A     No.

8  Q     Okay.  Let's turn to Exhibit 14.

9           MR. QURESHI:  And this one, for the record, is

10  Exhibit NPP 362.

11  BY MR. QURESHI:

12  Q     And sir, I will represent to you that this document is

13  an internal email at your client, JPM, and I'd like you to

14  focus on the sentence beginning, "There was a Wall-Street

15  Journal article."  Do you see that?

16  A     I'm sorry, sir.  Maybe I can see it on the screen.

17  The type is really small.

18           UNIDENTIFIED MALE:  It is.  We're going to try to

19  blow it up for you right now.

20           MR. FISCHEL:  Got it.  Okay.  I see it.

21  BY MR. QURESHI:

22  Q     Can you please read that sentence?

23  A     "There was a Wall-Street Journal article today that

24  talked about how TRB should be very, very careful at

25  executing any deals or doing anything from now on as the

1  company has no room for mistake no more."

2  Q      Keep going, please.

3  A      "The article also talked about how there is a wide

4  speculation that the company might have to put so much debt

5  that all of its assets aren't going to cover the debt in

6  case of (knock knock) you know what.  Well, that is actually

7  basically what we (JK and me and rest of the group) are

8  saying, too, but we're doing this because it's enough to

9  cover our bank debt."

10 Q      Okay.  You can stop there, sir.  Is this a document

11 that you considered in connection with your analysis of the

12 market evidence of the lenders' willingness to fund this

13 transaction?

14 A      No.

15 Q      Okay.  And when you assessed the lenders' willingness

16 to fund it, did you consider as a relevant factor how much

17 of the debt the lenders were actually willing to -- or

18 planning to hold?

19 A      I discussed that in my original report.  The relevance

20 of the possible future securitization.

21 Q      Well, let's go to tab 15 in your binder, and this,

22 sir, is Exhibit NPP 0462.

23 A      Okay.

24 Q      And you'll see this is a document that comes from Bank

25 of America, and the date at the top is June 5 of 2007.  Do

1    you see that?

2    A      I do.

3    Q      I'd like you to turn to Page 5 of 12.

4    A      Okay.

5    Q      And you will see in the middle of the page is a table,

6    and above that, it says, "The table below outlines our

7    exposure upon closing step one at 6/4/07 and our targeted

8    exposure upon closing step two by 12/31/07."  Do you see

9    that?

10   A      I do.

11   Q      Now, if you'll look at the box itself, you'll see the

12   gross facility amount.  If you just look at the total line,

13   that's all I need to look at.  You'll see a gross facility

14   amount, and then you'll see B of A's share, and then at the

15   far right, B of A's exposure upon closing of step two.

16   A      I see that.

17   Q      Okay.  So, sir, when you considered market evidence

18   of, in this case, B of A's willingness to lend as being

19   evidence of solvency, was it relevant to the analysis that

20   according to this document, B of A intended to reduce its

21   holdings from 1.8 billion down to $40 million?

22   A      It is relevant, but respectfully, sir, I think exactly

23   in the opposite way that you're suggesting in your question.

24   What this suggests is, to me, is that B of A was

25   sufficiently confident in the soundness of its loan that it

1  was going to be able to convince other market participants

2  in subsequent and additional arm's-length transactions to

3  basically take part of the loan and share the risk.  So I

4  would expand my earlier point about market evidence to refer

5  not only to the decision of the lenders and the other

6  investors, but also to the assumed additional investors in

7  the future who would look at the fundamentals of the loan

8  and decide, at least based on the judgment of B of A,

9  regardless of how it eventually turned out in the

10  marketplace, that the loan was sound enough that other

11  market participants in arm's-length transactions would be

12  willing to coinvest with B of A, and I would say that's

13  additional market evidence that supports my conclusions that

14  I've expressed in my reports and what I've said today.

15  Q     All right.  Well, let's take a closer look at the

16  confidence of the lenders, as you put it, in the -- in

17  funding this transaction.  Turn please to tab 16 --

18  A     Okay.

19  Q     -- of the binder, and this is Exhibit NPP 482.  You'll

20  see this is another internal email from Ms. Persily at Citi,

21  and again, as I described, she was, at the time, the

22  managing director in the leveraged --

23  A     Okay.

24  Q     -- finance group.  And I'd like you to just read, sir,

25  the email dated June 29th, 2007, and second from the top of

1    the page.  You see that, beginning with "I expect"?

2    A      "I expect a real problem.  Let's hope that it is so

3    bad that they trip the 9x covenant that they have to meet to

4    close step two."

5    Q      All right.  Is this a document that you considered,

6    sir, as part of your analysis of the market evidence of the

7    lenders' willingness to lend?

8    A      No, sir.  I did not consider this document.

9    Q      Okay.  Turn to tab 17, please.

10   A      Okay.

11   Q      And here, we have Exhibit NPP 497.

12   A      Okay.

13   Q      And again, this is another internal email within Citi,

14   this one dated July 20th of 2007.

15   A      Okay.

16   Q      And you'll see at the bottom of the first paragraph,

17   there's a sentence that reads," I'm told that there are only

18   three ways that the deal won't close: They miss the nine-

19   times -- it looks like G-T-E-E-D, guaranteed debt covenant,

20   they don't get a solvency opinion, whatever the FCC

21   determines causes a MAC in the broadcasting business.  And

22   what does Ms. Persily, sir, write after laying out those

23   three conditions?

24   A      According to this email, it says, "I'm hoping for one

25   of the first two."

1  Q      And again, is this an email that you considered?

2  A      No.

3  Q      And, sir, does this document and the other one that I

4  showed you cause you at all to reassess your conclusion that

5  the lenders' confidence or willingness to do this --

6  A      Well, what --

7  Q      -- transaction is an indication of solvency?

8  A      You can't have it both ways.  You can't say

9  simultaneously that the lenders have no exposure because

10 they're going to securitize all the debt, but they have no

11 confidence and are not going to be able to securitize any of

12 the debt.  I mean, those two are mutually exclusive, and to

13 me, what's more relevant than what's said in emails is how

14 people act when their wealth is at stake, and the reality

15 is, the lenders lent $12 billion in the two steps, and

16 there's no rational explanation why the lenders would do

17 that if they'd believe they were lending to an insolvent

18 entity.  And while I don't consider that conclusive evidence

19 by itself, I consider it relevant market evidence in

20 addition to the other market evidence and the other analyses

21 that I've performed.

22 Q      Okay.  Now, you testified on direct, sir, that you --

23 among the market evidence that you analyzed were the

24 internal valuation analyses of the lenders, correct?

25 A      Correct.

1  Q     All right.  Let's look at Exhibit -- tab 18 of your

2  binder, and this, sir, is Exhibit NPP 0543.

3  A     Okay.

4  Q     And again, this is an internal email exchange at your

5  client, JPM.  The sender of this particular email is a

6  Darryl Jacobson, and among the individuals on the To: line,

7  you will see a Brit Bartter, who I will represent to you,

8  sir, was, at the time, the vice-chairman of the JPM

9  Investment Bank, and a Mr. Kapadia, managing director in the

10  syndicated leverage finance group.  And you'll see in the

11  email, there's a description of an S&P recovery report that

12  was apparently released the day of this email, which is

13  August the 23rd of 2007.  Do you see that?

14  A     I do.

15  Q     And if you -- of course, feel free to read the whole

16  email, but you'll see at the very least sentence of the

17  email, it reads -- and again, referring to the S&P recovery

18  report -- "With these assumptions, this company would

19  default toward the end of 2009."  Do you see that?

20  A     I do.

21  Q     Do -- have you seen this email before?

22  A     Not that I recall.  I mean, I may have.  I've seen so

23  many documents, and I guess I should say with this email and

24  the others, I've certainly heard a lot of discussion of this

25  issue of the internal differences of opinion, the

1  reservations, which, you know, again, is not surprising

2  given the economic situation of the Tribune at step two.  I

3  would sort of expect that.  But I didn't do a comprehensive

4  study of emails.

5  Q    Okay.  Well, as part of your analysis of the market

6  evidence and the valuation analysis conducted at the time,

7  do you recall if you looked at the S&P recovery report

8  that's referenced in this email?

9  A    I think I did.

10  Q    You think you did?

11  A    Yes.

12  Q    Okay.

13  A    I looked at an S&P valuation analysis.  I'm not sure

14  if it's the one that's referred to in this email.

15  Q    Okay.  Well, if, indeed, it was the one that had a

16  suggestion that the company would default toward the end of

17  2009, would that have lent support to your conclusion of

18  solvency?

19  A    Well, I think what I did was I -- there are many,

20  many, you know, predications and valuations.  What I did was

21  I focused on the participants in the transaction itself, you

22  know, particularly the lenders who were investing money and

23  advisors in the transaction.  So, you know, I guess I can't

24  comment on this particular document because I'm not sure

25  which one it is.

1  Q     Okay.  Well, let's look at a couple of the lenders

2  then and see what they were doing internally.

3              THE COURT:  Mr. Qureshi, before we move on --

4              MR. QURESHI:  Sure.

5              THE COURT:  -- I just want to note for the

6  record.  I think this is NPP 0534 as opposed to 43.

7              MR. QURESHI:  I apologize, Your Honor.  You're

8  right.

9              THE COURT:  It's okay.

10 BY MR. QURESHI:

11 Q     Sir, please turn to tab 19 of the binder.

12 A     Okay.

13 Q     And this time, I'll get it right.  It's Exhibit NPP

14 2417.  And sir, this, I will represent to you is another

15 internal email exchange at Citigroup.  Mr. Dilworth, who is

16 the sender of this email, I will tell you was, at the time,

17 a managing director in Citi's leveraged finance group.

18 You'll see from the date that this email was sent on

19 December the 16th of 2007.  That's --

20 A     Okay.

21 Q     -- just a few days before the closing of step two,

22 right?

23 A     Correct.

24 Q     And you'll look at the cover email, it says attached

25 is the next version of the valuation analysis.  Turn the

1  page, please, and you'll see the valuation comparison on

2  that page.

3  A      I see that.

4  Q      Do you see a column labeled Citi case?  It's the first

5  column.

6  A      I do.

7  Q      What is the total equity value conclusion under the

8  Citi case?

9  A      Looks like, if I'm reading this correctly, $-2.7

10 billion.

11 Q      And sir, is this one of the lenders' valuation

12 analyses that you looked at at the time?

13 A      Hold on, I want to give you an exact answer to that

14 question.

15 Q      Sure.

16 A      No.  It's not in my list of valuation analyses that

17 are in my list.

18 Q      Looking at this valuation analysis by Citi, obviously

19 a lender at the time of the transaction, I gather, sir, you

20 would agree with me that this analysis is not evidence of

21 solvency at step two, is it?

22 A      I think the -- you know, I need to look at this, but I

23 think the problem is that -- I'm not sure there's separate

24 Citi projections in this document, and the documents that I

25 considered, as I explained, were documents that -- by third-

1  party advisors that contained projections, which I averaged

2  using the most recent to the relevant date of first step and

3  the second step for both the base case and downside case.

4  But just an opinion without projections is not part of my

5  valuation.

6  Q    Okay.  Well, let's take a look at some testimony from

7  Ms. Persily about projections that may help you in analyzing

8  this.  It's clip 64, please.

9        (A recording was played)

10        "Q   Did you have an opinion as to whether or not the

11  company's projections at this time were still achievable

12  given the first-quarter operating results?

13  A    I think I've said throughout this, no matter what

14  time, we didn't believe the company's projections were

15  achievable, we created our own set."

16  BY MR. QURESHI:

17  Q    Now, sir, with that context that Citi, according to

18  Ms. Persily's testimony that you just saw, never believed

19  management's projections and, therefore, used their own,

20  does that cause you to look at this valuation analysis and

21  still conclude that in the Citi case, that $-2.7 billion in

22  equity value is evidence of solvency?

23  A    Well, first of all, you know, as I indicated, I also

24  used an average of third-party projections other than the

25  management projections.  And with respect to any particular

1   document or opinion about value, I included the ones that

2   had projections.  I guess the clip indicates that they did

3   projections, but I would have to know and be able to examine

4   those projections, and then they did exist in a way that was

5   produced in the litigation that I had access to include them

6   in my average.

7   Q    Well, would you agree, sir, that this Citi valuation

8   analysis would have been a relevant document for you to have

9   analyzed in connection with your conclusions?

10  A    Not necessarily, if it doesn't have independent

11  projections because what I was doing was valuing the Tribune

12  at step one and step two using both management projections

13  and third-party projections, but in order to do that, I

14  needed to have third-party projections.

15  Q    Okay.  Let's turn to tab 20 in your binder, please.

16  A    Okay.

17  Q    And this, for the record, is Exhibit NPP 2412, and

18  this is another Citibank valuation analysis.  You'll see in

19  the email, it says Tribune Discounted Cash-flow Analysis.

20  This one's dated December the 18th of 2007.  Do you see

21  that?

22  A    I do.

23  Q    And turn to the first page of the document.  And

24  you'll see from the heading here is VRC Valuation Summary

25  with Citi Adjustments.  Do you see that?

1   A      I do.

2   Q      Sir, is this a document that you recall reviewing in

3   connection with your analysis of market evidence and

4   internal lender valuations?

5   A      I don't believe I included any VRC valuations, if

6   that's what this is.

7   Q      This is, as the page indicates, a VRC valuation

8   summary with Citi adjustments.

9   A      Still nevertheless, it's a VRC valuation summary, so I

10  don't -- you know, I see there's an analysis of management

11  projections in the downside case that I did include.

12  Q      And do you see a heading in the middle of the page

13  there, Citi adjustment?

14  A      I do.

15  Q      And you'll see a description of the adjustments that

16  Citi is describing having made to the VRC summary.

17  A      I see that.

18  Q      And do you see the adjustment with respect to the

19  phones notes?

20  A      I do.

21  Q      And does that suggest here that the adjustment that

22  they're making, that Citi is making here, is to value the

23  phones notes at face?

24  A      Well, I mean, this document says Citi adjustments with

25  an adjustments for phones.  It looks like its face, but, you

1  know, without knowing the background of this document

2  particularly, again, I'm not even sure what it is, but it

3  appears to be a VRC document.  So --

4  Q    And therefore, it's irrelevant because it's a VRC

5  document?

6  A    For my purposes, it would be irrelevant.

7  Q    Okay.  Sir --

8  A    Again, what I was trying do was forming my own

9  independent opinion of solvency.

10  Q    Turn, please, to tab 21.

11  A    Okay.

12  Q    And at tab 21, we have an analysis from your client,

13  JPM, and for the record, this is Exhibit NPP 538.  It's a

14  little difficult to read, sir, but you'll see it's a draft

15  document.  It's to Jamie Dimon and Jimmy Lee.  It's from a

16  number of individuals from the leveraged finance group, and

17  you'll see on the date, it says September, and then there's

18  a blank and brackets, 2007.  Do you see that?

19  A    Maybe it could be highlighted because I guess I don't

20  see it.

21  Q    Sure.  If we can just blow up the -- if you look at

22  the screen, there's the date.

23  A    Oh, I see.  It is very hard to read, but I --

24  Q    It is.

25  A    -- I now see it.

1  Q    Okay.  Now, I'm going to direct your attention --

2  we'll blow it up on the screen -- to the very last bullet

3  point in the bottom right-hand corner of the document.

4         MR. QURESHI:  Rodney, if we can blow that up a

5  little more.

6  BY MR. QURESHI:

7  Q    Sir, are you able to read the text that's in the box

8  on the screen?

9  A    Sure.  Do you want me to read it out loud?

10  Q    Yes, please.

11  A    JP Morgan's deal teams, DCF and some of the parts

12  analysis based on revised July projections dictate that the

13  current valuation of Tribune is approximately 10 to 13

14  billion, potentially failing the solvency tests, i.e. debt

15  amount exceeds the value of borrower.

16  Q    And do you recall, Professor, whether this is a

17  valuation analysis that you were provided in connection with

18  your work?

19  A    Well, this is a conclusion.  As I said, I looked at

20  all valuation analyses, at least the most current valuation

21  analyses, of any third-party advisor or lender that had

22  projections, which is what I was using to perform my

23  alternative balance-sheet valuation, other than relying

24  solely on the management projections.

25  Q    Okay.  Well, let's look at tab 22 in your book.

1  A     And not a -- not just the balance-sheet valuation.

2  Q     Okay.

3  A     Okay.  I have it.

4  Q     And that, for the record, is Exhibit NPP 1852.  And

5  you'll see it's another valuation update from your client,

6  JPM, dated December 18th of 2007, right?

7  A     I see that.

8  Q     So two days before the closing of step two.  And turn

9  to the first page of the document, and you'll see it's

10 entitled Tribune Valuation Summary.  Do you see that?

11 A     I do.

12 Q     And again, it's a little hard to read, but there are

13 three headings we'll try to blow up for you on the top of

14 the page.  One says stress case, and then beside that, it

15 says low, mid and high.

16 A     I see that.

17 Q     And if you go down to the bottom of that column,

18 there's a line, excess capital post step two, and you'll see

19 under the stress step -- under the stress case, the

20 conclusion is $-1.2 billion.  Do you see that?

21 A     I do.

22 Q     And then under the low, it's $50 million positive.

23 And if you further look, it's difficult to read, but there's

24 a footnote ten.  We'll blow it up for you on the screen.

25 And that shows what the assumptions are that JPM used in the

1    stress case.  Are you able to read that footnote?  Not yet?

2    A      Not so easy, but blown up, I can read it.

3    Q      Okay.  And the first question, Professor, is is this a

4    valuation summary, sir, that -- a valuation analysis from

5    JPM that you have seen before?

6    A      Not this specific -- well, I can't -- whether I've

7    seen this specific page or not, I don't recall.

8    Q      Okay.  Well, looking at the conclusions reached on

9    this -- in this particular analysis, would you agree, sir,

10   that this valuation analysis is not market evidence of

11   solvency?

12   A      Well, I would say it is what it is.

13   Q      Okay.

14   A      It has a series of different values under different

15   scenarios.

16   Q      Turn to tab 23, please.

17   A      Okay.

18   Q      And for the record, this is Exhibit NPP 2451.  And,

19   sir, I'll represent to you that this email is an internal

20   email at the firm of Houlihan Lokey.

21   A      Okay.

22   Q      Mr. Buettell, the sender of the email at the top of

23   the page, is a managing director at Houlihan Lokey, and

24   you'll see the date is December the 7th of 2007.  Are you

25   aware of what Houlihan Lokey's involvement was in connection

1  with Tribune at this time?

2  A    Actually, I once knew that, but unlike the other times

3  you asked me similar questions where I thought I knew but

4  didn't want to guess, this time, I just don't remember.

5  Q    Well, it's in the examiner's report here, and I'll

6  represent to you that Citi had contacted Houlihan about the

7  potential of Houlihan providing a solvency opinion.  And you

8  will see Mr. Buettell writes to one of his colleagues,

9  "Company was insolvent in May and more so now."  Did you, at

10  all -- first of all, have you seen this email before?

11  A    I'm not sure I've seen the email, but I have heard, as

12  I said earlier, in terms of discussions about the background

13  of the case and also reviewing some of the pleadings in the

14  case, that conclusion expressed --

15  Q    Okay.  And --

16  A    -- by one of the financial firms.

17  Q    Okay.  And did you consider that conclusion, sir, to

18  be relevant to your analysis?

19  A    Well, it's certainly background.  I knew the

20  transaction was very controversial.  I knew there were a lot

21  of differences of opinion, even within the particular firms,

22  so in that sense, it was relevant background.  Everything

23  that you're showing me is consistent with my understanding,

24  but what I was trying to do was do an objective, independent

25  analysis of solvency not based on anybody's opinion, but

1  based on the analysis and the calculations that I performed

2  using the best methodology that I believe is available.

3  Q    Okay.  Now, in the demonstrative exhibit where you

4  summarize the market evidence that you looked at, the

5  indicators of market evidence of what, in your opinion, is

6  market evidence of solvency, you looked at the yields on

7  certain Tribune bonds, correct?

8  A    That's correct.

9  Q    Okay.  Let's take a look at Exhibit A, please, to your

10  opening report.

11  A    Okay.  I have it.

12  Q    Okay.  And it's on Page 2 of your expert report.  And

13  at the top of that page is -- I gather YTM is yield-to-

14  maturity of Tribune's and comparable companies' debt; is

15  that right?

16  A    That's right.

17  Q    Okay.  And is -- what's going on in this chart, sir?

18  This is where you're trying to show how the yields of

19  Tribune's bonds, in your view, lead you to a conclusion of

20  solvency.

21  A    I would say it's supportive of my conclusion of

22  solvency, correct.

23  Q    Okay.  Now, on the left of the chart, there is two

24  bars that are quite high relative to the others, and if

25  you'll look at the headings at the bottom, one is a Merrill

1  Lynch distressed index.  Do you see that?

2  A      I do.

3  Q      And the next one is a Barclay's Ca to D index.

4  A      I see that.

5  Q      Okay.  Well, with respect first to the Merrill Lynch

6  distressed index, sir, would it be reasonable to conclude

7  that that distressed index would include within it companies

8  that are in bankruptcy?

9  A      I believe it would be reasonable to conclude that.

10  I'm not sure it's limited to that, but it would certainly --

11  Q      Right.

12  A      -- be reasonable to conclude that --

13  Q      And --

14  A      -- those companies would be included.

15  Q      And likewise, in the Barclay's Ca to D index, sir, you

16  would agree that that index will include within it companies

17  that are in bankruptcy or have defaulted?

18  A      That's certainly reasonable to make that assumption.

19  Q      Okay.  Now, you also testified on direct that you

20  looked at the credit default swaps, in particular, spreads

21  in credit default swaps, correct?

22  A      Correct.

23  Q      And you did that at step one, and you did it again at

24  step two?

25  A      Correct.

1  Q    And you observed, if I understood you correctly, that

2  there was indeed -- I think what you described as somewhat

3  of a spike in CDS spreads in connection with step one,

4  correct?

5  A    That's right.

6  Q    And you drew from that spike in CDS spreads the

7  conclusion that that was supportive of your opinion of

8  solvency, correct?

9  A    Well, I think what I said is that the increase in the

10 spreads reflected a riskier company to insure the debt of

11 because it was now more highly levered, but the increase did

12 not indicate an insolvent company or anything close to it.

13 Q    Okay.  Going back to your market evidence slide, the

14 first item you have listed as market evidence of solvency is

15 Mr. Zell/EGI-TRB investing $250 million.  Do you see that?

16 A    I do, sir.

17 Q    Okay.  And you also mentioned a $90-million warrant

18 purchased by EGI as part of this transaction.

19 A    In step two.

20 Q    Right.

21 A    Not as part of this, but as part of step two.

22 Q    As part of step two.  And that, too, you view as

23 market evidence of solvency, correct?

24 A    Correct.

25 Q    And, in fact, I think you talked with Ms. Newman at

1  your deposition about the Black-Scholes analysis that you

2  ran to determine the value of the equity based on the

3  purchase price of the warrant, right?

4  A    That's correct.

5  Q    And that is part of what caused you to conclude that

6  the purchase of that $90-million warrant is evidence of

7  solvency.

8  A    Correct.  I think with all this market evidence, you

9  know, none of it is dispositive by itself, but I think it is

10 consistent with market participants believing, not just at

11 step one, but at step two, judged by their actions as

12 opposed to emails, that the Tribune was solvent at both

13 stages, although --

14 Q    And isn't it --

15 A    -- just to be clear, my opinion based on my analysis

16 is at step two, very borderline solvent, as I stated.

17 Q    Right.  And isn't it the case that a Black-Scholes

18 analysis of a warrant is always going to show positive

19 equity value?

20 A    Yes.

21 Q    Okay.

22 A    Just a question of how positive.

23 Q    All right.  Let's switch gears one more time and talk

24 about capital adequacy, and in particular, refinancing.  And

25 let's turn to Exhibit Q, please.

1    A      Okay.  I have that.

2    Q      And you'll see that in Exhibit Q, this is your -- on

3    Page 49, your capital adequacy at step one, correct?

4    A      Correct.

5    Q      And just so we have the other pages, well, Exhibit Z

6    is your capital adequacy at step two, at December 20th,

7    correct?

8    A      Correct.

9    Q      Okay.  So let's start with Q, which is your step-one

10   analysis.

11   A      Okay.

12   Q      And your analysis here goes out to 2012, correct?

13   A      That's right.

14   Q      Okay.  But you're aware and you were aware when you

15   did this analysis that Tribune had a $9 billion balloon debt

16   payment due in 2014, correct?

17   A      I'm aware of that.  It was discussed in my deposition.

18   Q      Right.  And in your analysis, you assumed that Tribune

19   would be able to refinance that $9-billion obligation,

20   correct?

21   A      That's correct.

22   Q      Okay.  And you agree that if, in fact, Tribune was not

23   able to refinance that obligation in 2014, that it would be

24   hard to imagine how it could meet the obligation?

25   A      Yes.  I think, generally speaking, the -- if the

1  Tribune would have to completely liquidate, if there were no

2  ability to refinance that obligation.

3  Q    Okay.  Sir, turn to the last tab in your binder.  It's

4  tab 24.  And for the record, this is Exhibit NPP 540.  And

5  you'll see this is an internal JPM email from Mr. Jacobson

6  to Mr. Kapadia and others, and it's dated September 6th of

7  2007.  I'd like you to read aloud, sir, beginning with the

8  word "interesting."

9  A    "Interesting question might be the following: For

10 solvency opinion, one assumption made that makes it possible

11 to satisfy the test of meeting their obligations as they

12 become due is that the company can refinance its maturities,

13 presumably the existing bonds that mature in 2008 to 2010,

14 but if we were to fund the second-step commitments, one

15 would then reasonably have to assume that the company would

16 not have access to capital markets to refinance these,

17 except perhaps at extreme coupons that would likely result

18 in the company not being able to cover the interest.  Can we

19 contact the solvency firm to let them know they should not

20 be assuming markets would be open to Trib to refinance their

21 maturities?"

22 Q    And Professor, is this an email that you saw no

23 connection with your analysis of Tribune's ability to

24 refinance that $9-billion payment?

25 A    You know, I would say the same answer, that I may or

1  may not have seen it.  I've seen so many documents,

2  including ones referred to in pleadings.  I can't remember

3  whether the examiner and his conclusion that the debt could

4  be refinanced discusses this or not.  If he does, then I've

5  seen this document or at least discussion of this document.

6  If he didn't then I probably didn't.

7  Q    Okay.  But obviously, to the extent you did see it, it

8  didn't cause you to change your conclusion.

9  A    Did not change me to cause my conclusion [sic],

10 correct.

11 Q    Now, when performing a capital-adequacy test, you

12 agree that that's a test that should be performed using

13 downside projections, right?

14 A    I do.

15 Q    Okay.  And you ran your capital-adequacy test using

16 averaged downside projections prepared by third parties,

17 correct?

18 A    Among other things, correct.

19 Q    All right.  Let's turn to Exhibit H, please.  I'm

20 sorry, I misspoke, sir, Appendix H.

21 A    Okay, I have it.

22 Q    And these are the third-party projections that you

23 used; is that right?

24 A    All the third-party projections that I used are listed

25 in Exhibit H.  That's correct.

1  Q      Just wanted to confirm the source.  So now, let's go

2  to Exhibit Q.

3  A      Yeah, I should say all the ones that I used at the

4  time of the preparation of this report.  There are others

5  later.  You want me to go to Exhibit Q?

6  Q      Yes, please.

7  A      Okay.

8  Q      So this is your capital-adequacy analysis at step one

9  with the average downside projections, correct?

10 A      Correct.

11 Q      Okay.  And I think this is one of the slides we looked

12 at on your direct, and I think you've said that the key line

13 to be looking at is the revolver availability, which is row

14 S.

15 A      Correct.

16 Q      And under your analysis, in 2010, revolver

17 availability goes $-79 million, correct?

18 A      Correct.  Under the assumptions on this exhibit,

19 that's right.

20 Q      Right.  And at 2011, you're still $-45 million,

21 correct?

22 A      That's right.

23 Q      And at 2012, it turns barely positive to $9 million,

24 right?

25 A      That's correct.

1    Q      Okay.  And that's as of step one.

2    A      That's ri -- well, step one taking the merger into

3    account --

4    Q      Right.

5    A      -- which I think, for solvency purposes, as of June

6    4th is improper for reasons that I've described, but if you

7    collapse them and you don't take into consideration the

8    additional $200 million from asset sales or any of the other

9    steps that the Tribune could have taken, this would be the

10   result that you get.

11   Q      Okay.  And let's turn, please, sir, to now Exhibit Z.

12   It's Page 83 of the report.

13   A      Okay.

14   Q      And this is your capital adequacy using average

15   downside projections at step two, correct?

16   A      Correct.

17   Q      And, again, focusing on the row that you said was the

18   most important, in this case, it's row Q, revolver

19   availability.  It's negative at 2012, correct, $-5 million?

20   A      That's right.  And as I said in my direct testimony,

21   this is the one exhibit which gives me the most pause of

22   everything that I did.

23   Q      Right.  And not -- so notwithstanding the fact that

24   this solvency analysis shows $-5 million in availability on

25   the revolver at 2012, you've still concluded that the

1  company was, I think to use your words, barely solvent,

2  right?

3  A    Correct, because, first of all, this particular

4  exhibit should not be viewed in isolation, but moreover,

5  there are a series of steps that I discuss in my report that

6  the Tribune, like other companies facing financial distress,

7  could have taken or would be able to take to raise

8  additional cash if they had to, if they were actually in

9  this particular position.  So I think that this particular

10 document, as I said, is the least consistent with my opinion

11 of solvency of any of the analyses that I've performed, but

12 for the reasons that I've stated, I think particularly

13 taking it in combination with the other economic evidence, I

14 still believe it's reasonable to conclude, as I did, that

15 the Tribune was solvent both at the time of step one and

16 step two, although barely so at the time of step two, and

17 therefore, the lender's decision not to contest the solvency

18 certificate was reasonable.

19 Q    Well, sir, let's take a look at some of the other

20 things the company could do, as you described it.

21 A    Okay.

22 Q    Paragraph 93 of your report.

23 A    All right.

24 Q    And that's at Page 32.  Why don't you let me know when

25 you have that in front of you.

1  A      I do.  I have it.

2  Q      And toward the end of that -- it's actually the last

3  sentence of that paragraph.  You write, "To the extent,

4  Tribune were to be able to further reduce capital

5  expenditures, reduce operating expenses, eliminate public-

6  company-related expenses, sell some assets, and/or use a

7  portion of its pension overfunding, it could meet its

8  obligations without fully drawing the revolver."  Sir, are

9  those the other things that you were referring to that

10 companies commonly do?

11 A      I think they're illustrative.  There are other things

12 like layoffs, for example, cutting back of benefits.

13 There's a variety of things that companies in financial

14 distress can do, but these are certainly illustrative of

15 those things.

16 Q      Okay.  And isn't it true, sir, that you didn't conduct

17 any analysis to determine whether Tribune could actually

18 take any of these steps or how much cash could be generated

19 by any of these things?

20 A      That's correct, but it's in 2012, so I'm not sure how

21 that analysis would be undertaken.  I think you could talk

22 about what companies typically do, which is what I said.

23             MR. QURESHI:  Your Honor, could I ask for a short

24 break?

25             THE COURT:  How much time would you like?

1        MR. QURESHI:  I think I am very close to being

2   done.  If I could take a five-minute break, that'd be great.

3        THE COURT:  Five-minute recess.

4        MR. QURESHI:  Appreciate it.  Thank you.

5     (Recess taken from 5:07 to 5:15)

6        THE COURT OFFICER:  All rise.  Be seated, please.

7        THE COURT:  I guess you're done, Mr. Qureshi.

8        MR. QURESHI:  Indeed, I am, Your Honor.

9        MR. BUSATH:  I guess we should verify --

10       THE COURT:  All right.  Well, first, let me ask.

11       MR. BUSATH:  Yeah.

12       THE COURT:  Is there any other cross-examination?

13    (No audible response)

14       THE COURT:  I hear no response.  Redirect.

15       MR. BUSATH:  Thank you, Your Honor.  Lynn Busath

16   from Davis Polk.

17                    REDIRECT EXAMINATION

18   BY MR. BUSATH:

19   Q    Professor Fischel, Mr. Qureshi showed you a document

20   in his binder, tab 24.  Could you turn to that, please?

21   A    Okay.  I have it.

22   Q    This was a document talking about the -- it referred

23   to the difficulties that there may be for refinancing in the

24   years 2008 to 2010.  Do you see that?

25   A    I see that.

1  Q      Could you turn to Exhibit Q in your report?  This is

2  your analysis of capital adequacy; is that correct?

3  A      Correct.

4  Q      And can you tell me were you assuming in this report

5  the refinancing of those maturities in those years?

6  A      No.  There's a little bit of a mix and match in the

7  questions that I was being asked.  The question about

8  refinancing dealt with the 2014 refinancing of the new

9  senior debt, and this document deals with a different

10 refinancing in earlier years, which I didn't make any

11 assumption about.  It was factored into my ability-to-pay

12 and capital-adequacy analysis.

13 Q      Okay.  And could you show on this exhibit where that's

14 factored in?

15 A      We're talking about Exhibit Q?

16 Q      Yes, uh-huh.

17 A      Well, there are lines for mandatory repayments, line

18 O.  And every mandatory repayment that was -- that the

19 Tribune was obligated to make, it made in the context of

20 this analysis.

21 Q      Okay.

22 A      So I didn't make any assumptions.

23 Q      Okay.  And that -- your analysis covers the years 2008

24 to 2010, which was a separate --

25 A      Yes.  As I said, there was a little bit of a mix and

1  match in the question.  There was a question about

2  refinancing in 2014, and the document was expressing

3  reservations about the ability to refinance from 2008 to

4  2010, which, in fact, occurred.  So the doubts proved to be

5  unrealistic in terms of what happened.

6  Q    Okay.  There were some questions about some downside

7  cases and projections of Citigroup.  Do you recall that?

8  A    I do.

9  Q    And if I could have you turn to Appendix H.

10 A    Okay.

11 Q    Appendix H is where you have -- well, could you tell

12 us what is in Appendix H.

13 A    Appendix H is all the third-party projections that I

14 used in all of my different analyses, at least as of the

15 time of this report.

16 Q    Okay.  And turn to Page 12.  Does that show what

17 downside cases you used in your average third-party cases?

18 A    It does.

19 Q    And did you include a downside case from Citigroup?

20 A    I did, on December 7th, where there were projections.

21 Q    Okay.  There were a number of questions posed to you

22 concerning various emails.  Do you recall that?

23 A    I do.

24 Q    Were -- did -- were you shown any comments by the

25 examiner concerning those -- his conclusions about any of

1  those emails?

2  A     No.

3  Q     Were you shown any snippets of testimony concerning

4  any of those emails to put those into context?

5  A     Possibly.  I don't remember, but --

6  Q     During the cross-examination.

7  A     Yeah.  No, that's what I meant.

8  Q     Yeah.

9  A     I saw a couple of excerpts from testimony.  I don't

10  remember whether any of them referred to -- or where the

11  deponent was being asked questions about an email.

12  Q     All right.  There was one email shown to you from JP

13  Morgan, files, an email that had the phrase "knock knock" in

14  it.  Do you remember that one?

15  A     I do.

16  Q     I'd like to show you the -- what the examiner said

17  about that, if we could.

18        MR. BUSATH:  Can we call that up?  Not yet?

19  We'll hold off on that.

20        THE COURT:  On the other side, it's Mr. Johnston

21  messing around.

22  BY MR. BUSATH:

23  Q     You -- we'll get to that in a minute, but there was

24  also some discussion about perpetuity growth rates.  Do you

25  recall that?

1  A      Very well.

2  Q      Uh-huh.  And these were rates implied from that

3  multiple that you used; is that right?

4  A      That's what was represented.

5  Q      Okay.  It's also possible to imply a multiple from a

6  perpetuity growth rate; is that correct?

7  A      Correct.

8  Q      And did you look at Mr. Tuliano's perpetuity growth

9  rate and examine what multiples were implied by his growth

10  rate?

11  A      Yes.  What I was showed was a series of line items

12  with different entries about growth rates, which, in fact,

13  are completely inconsistent with the enterprise values that

14  those firms themselves calculated, which they made their --

15  based their decisions on.  But apart from the dichotomy, the

16  anomalous -- the anomaly between those -- what I was shown

17  and what actually occurred, in terms of the enterprise

18  value, is that those firms ultimately concluded was the

19  case.  What I did was a market test, and I also put Mr.

20  Tuliano's analysis to a market test and my terminal

21  multiple, which as I stated can be transformed into a growth

22  assumption, and even the growth assumptions that were

23  represented to me of what my analysis shows are consistent

24  with what market participants were stating at the time, as I

25  say in my rebuttal report.  But there's no connection in

1    reality between what Mr. Tuliano assumed and what actual

2    market participants at the time concluded about the

3    multiples or the implied growth rates of firms in the same

4    industry.  I had -- my analysis is a real market check of

5    what actually happened in the marketplace.  His analysis is

6    completely divorced from market reality.  He has a growth

7    rate which implies a multiple that is far below the median

8    or even the 25th percentile of comparable firms.  So I would

9    say what he concludes is not only inconsistent with all the

10   valuations -- the enterprise valuations of all the

11   contemporaneous participants, but it's also inconsistent

12   with a market check of what happened in the -- what was

13   happening in the marketplace in terms of how actual

14   investors were valuing the growth expectations for these

15   firms.

16   Q    Okay.  And you included this analysis in your rebuttal

17   report; is that correct?

18   A    I did.

19   Q    Could you turn to Exhibit BD in your rebuttal report?

20   And particularly, I guess, Page 2 of the analysis -- of the

21   exhibit, rather.  No, we're at Exhibit BD --

22   A    BD?

23   Q    -- BD of the rebuttal report.

24   A    D or B?

25   Q    BD.

1    A      Got it, sorry.   Yes.   This is my exhibit showing how

2    Mr. Tuliano's analysis just bears no relationship to market

3    reality, what actual -- how actual investors valued the

4    growth prospects of these companies.

5    Q      Okay.   And could you explain briefly how it shows

6    that?

7    A      Yes.   If you look at the dotted lines going

8    horizontally, that's Mr. Tuliano's implied multiple range of

9    5.9 to 6.4 based on his growth assumption, and then I

10   compare Mr. Tuliano's growth assumption to a series of

11   different benchmarks, the Tribune company itself, the median

12   of my comparable companies, the median of the companies that

13   Mr. Tuliano, himself, concluded were the comparable

14   companies, and then the tenth percentile, the bottom ten

15   percent of my comparable companies and the bottom ten

16   percent of Mr. Tuliano's comparable companies.   And if you

17   look at the relationship between all of the different lines

18   above the two dash lines, which is -- reflects Mr. Tuliano's

19   multiple range, again, there's no connection to reality

20   between what Mr. Tuliano is assuming to suppress Tribune's

21   enterprise value and what was actually going on in the

22   marketplace in terms of how investors were actually valuing

23   these firms.   And, in fact, the only lines that intersect at

24   the end with Mr. Tuliano's multiples are the bottom ten

25   percent of my comparables and the bottom ten percent of his

1   comparables, which isn't really a fair comparison if you're

2   trying to get your best guess of what the marketplace's

3   expectation is of what the growth rate of Tribune is going

4   to be.

5   Q    Okay.  And do you recall what economists were thinking

6   expected inflation rate was in -- during December 2007?

7   A    Yes, and I alluded to that several times without

8   agreeing or disagreeing with the representation made to me

9   about -- that I was implying a growth assumption of 2.4 to

10  2.8 percent.  If you look in my rebuttal report, in

11  paragraph 12, what you see is if you take Federal Reserve

12  data in surveys from June to December, which is the time of

13  step one and step two, economists' expected rate of

14  inflation over time was 2.5 percent.  So even if it was an

15  accurate representation of my implied growth assumption was

16  between 2.4 and 2.8 percent based on an actual market test,

17  that's completely consistent with what, again, economists

18  who are not connected in any way to this transaction were,

19  themselves, calculating in terms of what a logical expected

20  growth rate would be.

21  Q    Okay.  Can I have you turn to tab 22 in the binder

22  that Mr. Qureshi provided to you?

23              UNIDENTIFIED MALE:  What tab?

24              MR. BUSATH:  Twenty-two.

25              MR. FISCHEL:  I have it.

1   BY MR. BUSATH:

2   Q      This was an analysis done by JP Morgan around December

3   18th of 2007; is that right?

4   A      Correct.

5   Q      And Mr. Qureshi focused you on the stress case.  Can

6   you see that JP Morgan had other cases there, as well?

7   A      Yes.  Again, it's very hard to read, but I do see,

8   ranging from 50 million to 3.3 billion.

9   Q      And can you, sir -- looking at footnote three, can you

10  identify the perpetuity growth rates that were being used in

11  the low, mid and high cases in this analysis?

12  A      So the low value has a perpetuity growth rate of zero

13  percent, and a high value has a perpetuity growth rate of

14  two percent.

15  Q      And the midpoint continues --

16  A      One percent, obviously.

17  Q      Is one percent, okay.

18         MR. BUSATH:  Your Honor, may I hand the witness a

19  copy of the examiner's report, volume one?

20         MR. FISCHEL:  Okay.  I have it.

21  BY MR. BUSATH:

22  Q      And looking at the examiner's report, volume one, Page

23  267 -- I guess starting at Page 266, do you see that this is

24  a discussion concerning the email that was shown to you by

25  Mr. Qureshi?

1    A      Yes.  And as I said when I was shown the emails, I

2    couldn't remember if I saw them, but if I saw them discussed

3    in the examiner's report, then I saw at least the discussion

4    in the examiner's report.  And I couldn't remember whether

5    that was one, but looking at the examiner's report, it

6    clearly is.

7    Q      Okay.  At the bottom of Page 267, starting -- and you

8    see where it starts "on balance"?

9    A      I do.

10   Q      Just to read that into the record, that sentence.

11   Could you read it?

12   A      "On balance, the evidence reveals that Ms. Choi's

13   email reflects a misunderstanding by a junior analyst who

14   failed to understand the nature and purpose of the analysis

15   she was asked to perform and whose conclusion that total

16   debt is 14,639,000 was inaccurate."

17   Q      Now, do you believe an email like this is probative of

18   market value at the time?

19   A      No.  No.  I mean, I analyzed market value at the time,

20   and I analyzed all of the relevant valuation evidence,

21   including all the valuation analyses by third parties that

22   contained projections that I was able to analyze, both base

23   cases and downside cases, and reach the conclusions that I

24   did.

25   Q      Okay.  Can I have you please turn to, in the binder

1    that we used on your direct, to tab one.

2    A    Okay, I have it.

3    Q    This is a summary of your opinions; is that right?

4    A    It is.

5    Q    Now, Mr. Qureshi quoted some materials from you from

6    Shannon Pratt and from -- had you read some sentences out of

7    another text.  Do either of those things cause you now to

8    change your opinion?

9    A    No.  I mean, first of all, they were -- a lot of those

10   things were talking about a different situation, whether a

11   purchaser would pay the same price as the value to a

12   particular owner of assets if some of that value was unique

13   to the owner of the assets.  You know, that, to me, is no

14   different from saying if you have a company that's managed

15   by a key man and the value of that company is greater as a

16   result of the key man than it would be without the key man,

17   and if somebody else bought the company and didn't have the

18   key man, it would have a lower value.  I mean, that's

19   obvious.  But if you're asking the question of the company

20   in the real world with the key man, is that company able to

21   pay creditors, to meet its debts when they become due, the

22   value -- the real value, real economic value created by the

23   key man, should count just as much as the value created by

24   any other source.  And I believe exactly the same is true

25   with respect to the S-Corp ESOP tax structure, although

1  again, I performed a completely different methodology that

2  ignored the tax benefits from the S-Corp ESOP tax structure

3  and reached exactly the same conclusions as I described and

4  as contained in my report.

5  Q    Okay.  Mr. Qureshi also showed you a number of other

6  documents and went over some numbers with you of different

7  growth rates that other companies were using.  Sometimes he

8  asked you if that would change your opinion, sometimes not.

9  I'd just like to ask you whether anything that he covered on

10  his cross-examination causes you to change your first

11  opinion here on the exhibit.

12  A    No, absolutely not.

13  Q    And could you explain why not.

14  A    Yes.  Because what I was shown was snippets from

15  documents which are inconsistent with the valuations that

16  those very firms performed in reaching the decisions that

17  they made to be willing to lend.  So if I look at the -- all

18  of the market evidence, not just the actions by the lenders,

19  but the investment of $250 million of new money at the time

20  of the original transaction, the additional investments by

21  the lenders and by Mr. Zell and by other third parties at

22  the time of the second step, the rating agencies' actions,

23  the evidence from CDS spreads, all of the different balance-

24  sheet comparable company and comparable-transaction analyses

25  that I performed, they all point to the same conclusion that

1   the Tribune was solvent on June 4th, regardless of whether

2   the two steps are collapsed or not, although I believe the

3   evidence is overwhelming, as least in terms of market

4   evidence, that they should not be collapsed based on the

5   stock price data that I looked at.  And with respect to step

6   two, as I stated, it's a much closer question, but one of

7   the things that also has to be taken into account is that

8   the Tribune, at step two, in the real world, had $700

9   million less debt than what was predicted, that was

10  projected at the time of June 4th, and that offset, to a

11  significant extent, the deterioration in the projection.  So

12  while I think it's a very close case, I also concluded that

13  the Tribune was solvent in December 20th, as well.

14  Q    Okay.  And Mr. Fischel, let me ask you whether

15  anything that was covered on cross-examination caused you to

16  change your opinion -- second opinion on this page.

17  A    No, for the reason that I just stated, because I

18  believe the economic evidence supports the conclusion that

19  the Tribune was solvent, not only in the first step, but as

20  of the time of the second step, as borderline as it was,

21  still solvent.  I believe that supports the reasonableness

22  of the lender's decision not to contest the solvency

23  certificate.

24  Q    Okay.  And Mr. -- Professor Fischel, are you willing

25  to come back as a rebuttal witness, if necessary?

1   A       I am.

2   Q       Thank you very much.

3               THE COURT:  Recross.

4               MR. QURESHI:  Thank you, Your Honor.  Very

5   briefly.  Again, for the record, Abid Qureshi.

6                       RECROSS EXAMINATION

7   BY MR. QURESHI:

8   Q       Professor, I gather that unlike some of the valuation

9   analyses that I handed you that you told me you hadn't seen,

10  you did spend some time analyzing the financial analysis

11  that went along with the examiner's report, correct?

12  A       Well, I would say I looked at the examiner's report,

13  but I performed an independent analysis of solvency at both

14  June and December as I've indicated, relying on

15  contemporaneous evidence as opposed to after-the-fact

16  analysis with the exception of the analysis that I've done

17  of Mr. Tuliano's opinions and also certain data that I got

18  from the examiner's report that I wouldn't have otherwise

19  been able to find.

20  Q       Sir, if you can take a look at the monitor in front of

21  you, I'm going to pull up a paragraph from the examiner's

22  report.  It's from the appendix, and it's Page A-62 of

23  appendix A to the examiner's report.  And I'd like you to

24  read, please, the first paragraph on the top of that page

25  that we'll blow up for you.  If you can just read that last

1  paragraph -- or that one paragraph, please.

2  A      "When these revenue growth rates are averaged on the

3  basis of relative 2012 publishing segment and broadcasting

4  segment free cash-flows, the result is a terminal period

5  weighted average growth rate of -0.10 percent.  The

6  examiner's financial advisor thus stabilized the long-term

7  growth rate at zero.  It is believed that this growth rate

8  is an appropriate rate to use in the calculation of a

9  terminal period value."  That's actually a paragraph that I

10  criticized in my rebuttal report, as I'm sure you know.

11  Q      Yep.

12          MR. QURESHI:  I have nothing further, Your Honor.

13  Thanks.

14          THE COURT:  Thank you, sir.  You may step down.

15          MR. FISCHEL:  Thank you, Your Honor.

16      (Witness excused)

17          MR. BENDERNAGEL:  Your Honor, it's 20 to 6:00.  I

18  think we have a couple of choices.  One is that we could

19  break for today.  I think what I'd prefer to do is have Mr.

20  Lotsoff [ph] tender the testimony of Mr. Dempsey.  Mr.

21  Dempsey's testimony is not contested by anyone.  My sense is

22  that a tender of the testimony will take 15 or 20 minutes,

23  and maybe we could get that out of the way at this juncture.

24  The other alternative would be to start Mr. Mandava, but I'm

25  reluctant to do that because we'd just get a little into the

1   direct, and then we'd have to break.

2            THE COURT:  Well, I have a third choice, and that

3   is to do neither.

4            MR. BENDERNAGEL:  I'm sorry?

5            THE COURT:  That is to do neither.  My

6   inclination is to adjourn at this point, but --

7            MR. BENDERNAGEL:  That's fine.

8            THE COURT:  -- before we do, I'd like you to give

9   me a preview for tomorrow.

10           MR. BENDERNAGEL:  I think we start at 9:30

11  tomorrow; is that correct?

12           THE COURT:  We do.

13           MR. BENDERNAGEL:  I think the first witness will

14  be Mr. Mandava.  Mr. Mandava is an expert whose testimony

15  will take less than an hour and a half, and my sense is that

16  there'll be, you know, some fairly extensive cross, maybe an

17  hour, hour and a half.  The -- next witness is Mr. Chachas.

18  He is also an expert.  Our hope is his testimony will take

19  less than an hour and a half.  We'll see how well that goes,

20  and I presume his cross would take less.  I'm hoping to get

21  both of those witnesses in tomorrow.  The other two

22  witnesses that we have stacked for tomorrow are Mr. Dempsey.

23  Obviously, we could do that today or we can do it tomorrow,

24  and we have Mr. Whittman available, and my understanding is

25  that he's going to -- you know, one of his reports will be

1  proffered.  The other two will be -- he'll be offered live

2  for.  I expect that his testimony's not going to take more

3  than an hour in total.  So hopefully, we can get all three

4  of those -- four of those people done.  That's pretty

5  ambitious, given the fact we're going to break at 3:30,

6  but --

7              THE COURT:  Yeah, I --

8              MR. BENDERNAGEL:  -- that's what we're trying to

9  do.

10             THE COURT:  Okay.  I appreciate that.  It does

11  seem ambitious to me, but -- and I will tell folks I -- 3:30

12  is a hard stop for me because I've got a nearby commitment

13  at 3:45.  I have no flexibility in that schedule.

14             Okay.  I would also -- I'll give you a little

15  preview of what I would like to have, I guess, by Monday

16  morning, and that is I have been keeping my own time

17  records, but haven't compiled them at all.  I'd like the

18  parties to do that and present something in writing about

19  where they think we stand with that and what they would

20  predict for the remainder of the time that's been allotted

21  through the end of next week best as they can.  I'd also

22  like the parties to confer and consider whether there's a

23  continuing need for the overflow room.  There have been very

24  few attendees in our overflow facility.  It does involve

25  some additional cost for security, and the Marshal has asked

1  us to consider whether we have a continuing need for that.

2  Of course, the alternative is the estate could decide to

3  pick up some of the security cost.  I'm sure it wouldn't be

4  very much.  But I ask you to think about that.

5       MR. BENDERNAGEL:  We can certainly do those

6  things, Your Honor.

7       THE COURT:  Well, we will start promptly at 9:30

8  tomorrow.  We will, even though we have a shortened day,

9  take a lunch break of some order, anyway, midday.  Are there

10  any other questions or anything else --

11       MR. BENDERNAGEL:  One other thing that you ought

12  to be aware of.  Tomorrow, we're going to run into

13  confidentiality issues because we're dealing with forecasted

14  data, some of which the company doesn't even really control.

15  And as a consequence, we've talked to the noteholders, and I

16  think there's an agreement as to how to do this.  I think we

17  can use most of the monitors, but I think we need to shut

18  off the big monitors and maybe the monitors at the back desk

19  so people can't see the material.  We've also talked about

20  is there a possibility of, you know, utilizing exhibits that

21  have the key data, but trying not to use the numbers on the

22  record as opposed to simply talking about what the documents

23  show, and we'll sort of work our way through that.  We've

24  been pretty good in terms of working through the books and

25  only identifying what pages are problematic, and we're in

1  the process of putting together redacted versions of these

2  exhibits so that, you know, people can get as much of the

3  information as we feel comfortable providing it to them.

4  And the redactions aren't that extensive, so we'll be

5  prepared to deal with that tomorrow as it comes up.

6              THE COURT:  All right.  Thank you.

7              MR. QURESHI:  Your Honor, if I may, just one

8  question with respect to the issue of confidentiality.  In

9  order that we still have a workable, useful record, what I

10  was contemplating, as Mr. Bendernagel suggested, is putting

11  together basically in demonstratives the portions of the

12  valuation data that are confidential and that I would intend

13  on questioning the witness on, hand those up to Your Honor

14  and, of course, the witness and counsel, and have those

15  given an exhibit number that -- where the exhibit would

16  remain under seal, and then hopefully it'll, unfortunately,

17  take a little longer to do, but walk through without the

18  witness revealing what the numbers are, and hopefully Your

19  Honor will be able to follow along.  So if that sounds

20  acceptable, that's what I would propose, Your Honor.

21              THE COURT:  I'm willing to give it a try.

22              MR. QURESHI:  Thank you.

23              MR. BENDERNAGEL:  Two other things, Your Honor.

24  One is, I actually think it'd be helpful to start to mark as

25  exhibits, not for purposes of offering, but just

1    identification, these demonstratives because this record's

2    going to be very, very hard to follow if these documents

3    just sort of float off and nobody knows exactly what the

4    document was.

5         THE COURT:  Here's -- I don't disagree with that,

6    but here's what I typically do at the conclusion of

7    extensive evidentiary hearings.  Once it's been decided

8    what's to be admitted, what's to be admitted as redacted,

9    what's to be admitted under seal, I ask the parties to

10   confer and submit a joint list.  So to the extent we've

11   missed anything so far, the -- we'll be able to catch up

12   with it at the end of the evidentiary phase of this hearing.

13        MR. BENDERNAGEL:  The other thing that Mr. Zensky

14   reminded me to bring up with you, we had had a discussion at

15   lunchtime about what to do with all the exhibits on the

16   exhibit list that clearly are not going to be talked about

17   in court, and there was some suggestion that we take some

18   time after the evidence has come in to be able to consult as

19   to which documents the parties would like to submit to you

20   as part of the process you just described, maybe take a week

21   to do that, work out any evidentiary questions we have,

22   maybe come up with a protocol as to how this gets handled,

23   and do it rather than waste valuable court time trying to

24   squabble about this thing because my guess is we're not

25   going to squabble.  I mean, we've already agreed as to how

1    to deal with the examiner report, and my sense is we'll work

2    our way through this, as well as the deposition excerpts

3    that don't actually get shown in court, but people want to

4    put into the record for whatever reason.  And it might be

5    helpful to do that, to just have a sort of time period after

6    the live testimony comes in so that we can do that, but we

7    can talk -- we can work on that and make a presentation to

8    you on Monday, if that makes sense.

9              THE COURT:  Well, sure.  And I'll just comment.

10   I guess it's not really too early to acknowledge that, at

11   least based on how things have proceeded so far, it's

12   possible we might not be done by the end of next week.

13             MR. BENDERNAGEL:  You think?

14             THE COURT:  Oh, I've been resisting having to say

15   that aloud.  So I say that because you'll have the time, I

16   guess is -- even before we're finished with the evidentiary

17   portion to begin to work on that stuff.

18             MR. BENDERNAGEL:  Okay.

19             THE COURT:  And to the extent that you need time

20   after, you'll have that, too.

21             MR. BENDERNAGEL:  Yeah.  At some point, for

22   planning purposes, it probably makes sense to talk a little

23   more loudly about this issue, but it doesn't have to be

24   today.

25             THE COURT:  Well, I confess I did that a month

1   ago.  We'll talk tomorrow about dates.

2           MR. BENDERNAGEL:  All right.  Thank you, Your

3   Honor.

4           THE COURT:  Okay.  That concludes this hearing

5   for today.  Court will stand adjourned.

6       (Proceedings adjourned at 5:49 p.m.)

7

8                       CERTIFICATION

9       I certify that the foregoing is a correct

10  transcript from the electronic sound recording of the

11  proceedings in the above-entitled matter.

12

13
14  _____        10 March 2011
15  Traci Calaman, Transcriber                  Date
16

17

1                              INDEX

2                    Voir Dire    Direct    Cross    Redirect    Recross

3

4  WITNESSES:

5

6  Bernard Black                              13        55          79

7

8  Daniel R. Fischel      82        89      132        208        220

9

10

11

12

13  DCL EXHIBIT:                                  Marked      Received

14

15  1106 - D.R. Fischel Initial Report            90          90

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**08-13141-kjc**(1) 1:5

**11-percent**(1) 114:24

**30-year**(1) 88:19

**8-percent**(4) 102:8 104:8 114:10 114:13

**9-billion**(2) 201:19 202:24

**90-million**(2) 199:17 200:6

**a's**(3) 181:14 181:15 181:18

**a-62**(1) 221:22

**a-hundred-and-ninety-seven**( 173:5

**a.m**(5) 1:15 13:1 49:10 49:10 178:21

**abbruzzese**(2) 5:39 5:40

**abetting**(1) 50:6

**abid**(3) 4:25 133:7 221:5

**ability**(11) 80:19 108:24 109:20 110:7 112:7 121:18 127:16 134:1 202:2 202:23 210:3

**ability-to-pay**(8) 95:19 97:24 110:6 110:10 110:18 126:19 128:19 209:11

**able**(28) 14:11 34:12 40:9 42:1 47:6 47:7 109:3 109:4 116:12 116:13 117:2 161:1 182:1 184:11 190:3 193:7 195:1 201:19 201:23 202:18 206:7 207:4 217:22 218:20 221:19 226:19 227:11 227:18

**about**(151) 13:20 14:20 14:24 15:24 16:4 18:14 19:6 21:12 21:18 24:12 24:21 25:1 29:24 30:5 34:21 37:2 37:7 37:9 37:13 38:17 38:25 39:7 40:5 44:6 44:17 44:18 44:20 44:23 44:23 45:25 47:2 48:2 49:22 50:23 53:15 55:6 55:11 56:3 56:16 56:18 56:21 57:8 57:9 58:3 58:5 58:14 59:23 60:2 60:6 61:10 62:9 62:11 62:18 62:19 62:19 63:3 63:10 63:18 63:20 63:21 64:6 64:20 66:5 66:9 68:20 69:10 70:24 70:24 71:6 72:1 74:3 75:22 75:23 76:4 76:9 76:9 76:10 76:11 76:12 76:18 76:19 78:20 78:22 79:9 80:9 80:22 81:2 87:23 89:23 90:5 91:1 94:14 95:8 101:6 104:2 114:9 115:8 119:5 123:18 125:22 128:22 139:5 139:16 142:11 143:15 143:21 147:18 149:22 155:25 158:23 165:21 169:20 174:3 176:21 179:24 180:3 182:4 189:7 190:1 196:16 196:12 200:1 200:24 207:22 208:22 209:17 209:11 209:1 210:1 210:3 210:6 210:25 211:11 211:17 211:24 212:12 213:2 215:9 218:10 224:18 225:4 225:19 225:22 227:15 227:16 227:24 228:23 229:11

**above**(5) 46:24 46:24 73:17 181:6 214:18

**aboveentitled** (1) 229:11

**absence**(1) 74:7

**absent**(1) 96:11

**absolutely**(1) 39:12

**abstained**(3) 51:20 51:22 51:23

**academic**(7) 70:25 77:25 78:6 83:6 95:4 139:12 139:19

**academics**(2) 83:19 83:22

**accelerated**(1) 131:4

**accept**(3) 28:19 28:20 149:19

**acceptable**(1) 226:20

**accepted**(3) 146:17 149:18 151:22

**access**(2) 190:5 202:16

**accord**(1) 41:19

**accorded**(1) 176:13

**according**(3) 116:19 149:2 181:20 183:24 189:17

**account**(16) 61:6 61:24 99:5 111:8 111:8 113:5 118:4 118:5 120:1 120:25 138:15 139:6 139:13 140:14 205:3 220:7

**accreting**(1) 38:16

**accretive**(2) 43:10 43:13

**accurate**(2) 45:21 215:15

**achievable**(2) 189:11 189:15

**achieve**(2) 34:18 43:2

**acknowledge**(1) 228:10

**acquisition**(1) 51:15

**acquisitions**(14) 42:10 42:11 42:14 42:18 43:1 43:4 43:7 43:10 43:12 43:13 43:16 43:19 51:4

**across**(8) 101:20 102:20 110:5 113:18 118:7 123:6 128:24 142:7

**act**(1) 184:14

**acted**(1) 52:10

**actions**(4) 97:14 200:11 219:18 219:22

**active**(1) 82:9

**actual**(12) 69:19 118:22 138:7 138:8 138:9 138:10 155:14 213:1 213:13 214:3 214:3 215:16

**actually**(26) 23:1 24:22 42:20 53:23 58:12 59:25 70:20 71:23 133:10 140:13 140:21 155:24 160:1 180:6 180:17 196:2 206:8 207:2 207:17 212:17 213:5 214:21 214:22 222:9 226:24 228:3

**adam**(1) 3:19

**add**(4) 105:11 105:12 108:14 109:24 106:24

**addition**(9) 47:4 47:10 83:18 110:18 125:2 149:21 152:25 169:4 184:20

**additional**(12) 25:20 125:3 126:23 126:25 127:1 182:2 182:6 182:13 205:8 206:8 219:20 224:25

**additions**(1) 18:15

**addresses**(1) 39:16

**adelman**(1) 9:23

**adelphia**(1) 84:3

**adequacy**(12) 40:1 108:23 112:7 112:7 121:19 125:22 134:7 200:24 201:3 201:6 205:14 209:2

**adequate**(2) 40:4 47:18

**adjourn**(1) 223:6

**adjourned**(2) 229:5 229:6

**adjusted**(1) 113:17

**adjustment**(7) 68:19 104:5 169:19 169:20 191:13 191:18 191:21

**adjustments**(17) 16:2 57:12 57:15 58:11 58:18 80:11 100:15 108:6 130:3 130:13 130:16 130:16 190:25 191:8 191:15 191:2 191:25

**adler**(1) 2:44

**admission**(1) 91:11

**admitted**(5) 90:22 91:14 227:8 227:8 227:24

**adopts**(1) 124:1

**advance**(2) 85:23 127:4

**advanced**(3) 85:10 85:13 85:23

**advantageous**(1) 25:14

**advertising**(1) 131:8

**advised**(2) 157:5 157:16

**advisor**(4) 22:2 177:19 193:21 222:6

**advisors**(12) 16:9 16:11 16:24 21:4 21:23 23:12 39:1 153:21 170:15 170:16 186:23 189:1

**affect**(11) 22:14 22:16 35:16 35:18 35:19 35:24 39:2 43:2 43:16 58:7 58:8

**affected**(2) 58:9 90:4

**affidavits**(1) 88:21

**affiliations**(1) 83:19

**afford**(1) 22:12

**afraid**(1) 177:18

**after**(22) 18:4 18:8 21:6 21:21 24:5 32:22 64:12 86:22 91:2 93:1 93:3 94:12 109:16 143:9 143:23 154:10 156:14 157:22 183:2 227:18 228:5 228:20

**after-tax**(6) 103:5 109:13 114:14 114:16 115:6 117:21

**after-the-fact**(2) 95:9 221:15

**afternoon**(3) 49:20 81:24 133:6

**again**(89) 21:8 29:6 35:25 36:5 41:9 55:14 73:16 73:22 92:14 97:2 97:4 97:16 99:8 101:11 104:21 104:23 105:22 106:7 106:8 108:8 108:24 110:11 110:11 110:15 111:14 111:20 112:6 115:10 117:18 118:6 119:19 119:21 120:16 120:16 120:17 120:24 121:2 121:9 121:11 121:13 122:21 122:22 123:4 123:6 124:16 125:18 128:23 128:24 130:1 131:22 136:24 139:23 143:17 145:17 154:12 154:18 156:18 157:18 157:21 163:9 163:15 163:19 164:11 169:1 172:2 172:3 175:5 175:9 176:17 178:13 178:15 178:24 182:21 183:13 184:1 185:4 185:17 186:1 192:2 192:8 194:12 198:23 205:17 214:19 215:17 216:7 219:1 221:5

**against**(17) 41:13 50:7 50:11 51:7 52:6 55:7 55:9 60:4 60:5 60:16 60:23 61:6 61:7 61:12 62:5 161:20 164:2

**agencies**(3) 88:8 88:10 219:22

**agency**(2) 96:14 127:5

**agency's**(1) 97:14

**agents**(1) 82:1

**ago**(2) 80:2 229:1

**agree**(37) 27:8 27:12 28:23 30:2 30:5 30:21 33:4 33:19 33:24 34:5 35:21 37:18 41:14 45:21 115:17 117:10 119:6 134:14 134:21 134:24 135:3 147:9 148:2 151:21 154:6 154:11 155:10 155:25 157:21 173:6 173:15 188:20 190:7 195:9 198:16 201:22 203:12

**agreed**(6) 33:14 48:20 49:2 60:13 74:9 227:25

**agreeing**(1) 215:8

**agreement**(6) 4:4 7:4 46:8 151:9 151:10 225:16

**agreements**(2) 54:6 54:8

**agudelo**(1) 51:6

**ahmed**(1) 12:17

**aiding**(1) 50:6

**aig**(1) 84:3

**alain**(3) 4:21 9:16 133:7

**all**(123) 13:2 13:3 13:4 31:2 37:2 38:21 43:9 43:13 43:15 45:5 46:4 46:25 49:5 49:7 49:11 49:12 51:20 54:21 55:5 57:6 57:25 58:11 59:12 63:19 63:22 64:12 65:65:25 66:2 69:13 71:7 71:10 73:22 75:6 77:16 81:5 81:7 81:23 82:3 84:19 85:20 87:15 88:20 88:20 89:11 91:14 95:3 95:14 98:20 101:20 102:6 103:4 108:14 109:4 109:24 110:7 112:3 113:14 114:7 118:4 122:8 124:19 125:17 125:18 125:19 131:10 132:5 132:11 132:20 134:6 136:9 140:18 140:1 152:20 155:17 159:5 160:18 165:10 165:15 165:20 166:6 166:16 168:6 173:18 174:20 179:4 180:5 181:13 182:15 183:5 184:4 184:10 185:1 189:23 193:20 196:10 196:10 200:8 200:23 203:19 203:24 204:3 206:3 206:23 208:6 208:10 210:13 210:14 211:12 213:9 213:10 214:17 217:20 217:21 218:9 219:17 219:23 219:25 224:3 224:17 226:6 227:15 229:2

**all-equity**(2) 114:12 114:19

**allege**(1) 150:5

**alleged**(5) 50:5 50:7 50:11 50:20 50:21

**allison**(1) 8:24

**allocated**(1) 49:21

**allotted**(1) 224:20

**allow**(4) 72:9 75:10 75:10 75:11

**allowed**(5) 21:7 61:18 62:21 72:4 73:8

**alluded**(1) 215:7

**almost**(4) 25:22 53:5 70:1 173:5

**along**(5) 72:11 104:7 145:4 221:11 226:19

**aloud**(2) 202:7 228:15

**already**(6) 28:14 44:8 48:2 65:19 132:15 227:25

**also**(97) 16:4 16:11 19:14 28:4 28:4 29:2 34:10 36:24 38:18 42:7 43:6 47:11 49:25 56:3 56:17 74:17 76:24 82:25 83:2 83:3 83:17 85:2 85:14 85:22 85:24 86:3 86:4 87:8 87:22 89:21 90:1 91:3 91:5 95:17 96:8 96:14 97:12 98:3 98:18 100:6 100:7 100:15 103:24 104:12 105:15 109:22 110:19 115:4 115:24 115:25 118:2 118:18 119:7 120:8 121:18 125:11 126:8 126:12 127:2 127:4 127:15 127:22 128:18 128:20 130:8 131:3 140:14 146:6 149:6 150:6 161:20 164:1 175:2 175:13 180:3 182:6 189:23 196:13 198:19 199:17 211:24 212:5 212:19 213:11 219:5 220:7 220:12 221:17 223:18 224:14 224:21 225:19

**alternative**(9) 7:16 7:17 120:24 130:10 149:10 149:11 193:23 222:24 225:2

**alternatively**(1) 102:16

**although**(15) 15:1 35:15 55:14 83:5 84:16 92:5 92:17 113:23 121:16 126:9 161:20 200:13 206:16 218:25 220:2

**alvarez**(5) 10:39 10:39 59:23 60:12 61:5

**alvarez's**(1) 61:1

**always**(4) 25:23 95:4 101:8 200:18

**ambitious**(2) 224:5 224:11

**america**(3) 7:21 7:27 180:25

**amit**(1) 6:33

**among**(6) 50:5 142:13 148:17 184:23 185:6 203:18

**amount**(26) 18:24 20:7 22:21 27:1 30:19 30:22 30:24 35:24 37:6 37:9 37:12 37:19 37:23 38:9 38:10 39:18 60:11 61:14 75:17 109:21 166:13 166:16 173:16 181:12 181:14 193:15

**amounts**(1) 61:10

**anadarko**(1) 84:3

**analyses**(31) 56:22 60:15 60:22 72:11 84:2 93:7 95:19 96:7 98:3 101:15 101:22 112:18 119:11 120:4 125:17 127:13 129:14 160:18 167:1 170:14 184:20 184:24 188:12 188:16 193:20 193:21 206:11 210:14 217:21 219:24 221:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **analysis**(198) 27:19 30:12 35:23 36:13 37:13 48:3 55:12 55:17 56:5 56:15 57:1 57:7 59:19 59:23 60:3 61:2 61:2 64:21 64:23 69:22 72:15 73:5 75:24 76:2 76:4 85:12 89:25 92:8 92:15 92:22 93:17 96:5 96:9 97:21 98:16 98:19 98:20 99:3 99:4 101:4 101:12 102:1 104:7 104:9 104:13 104:21 104:23 104:23 105:10 105:16 107:1 110:6 110:6 110:10 110:11 110:15 110:18 111:10 111:24 112:12 112:18 112:19 112:20 112:21 112:23 113:1 113:4 115:12 115:18 116:16 117:6 117:7 117:12 119:7 120:8 120:14 121:15 121:18 121:22 122:2 123:17 124:12 125:5 125:15 126:8 126:16 126:18 126:19 126:19 126:20 128:9 128:11 128:20 129:22 130:2 130:3 130:25 135:10 139:6 143:24 144:7 144:12 144:12 145:8 145:18 146:4 146:16 146:18 149:10 150:9 150:22 151:6 151:11 151:22 152:8 152:10 152:23 154:13 154:20 155:2 156:4 156:14 156:19 156:21 157:1 158:5 159:2 161:2 161:17 164:16 168:7 169:14 169:21 170:1 170:23 172:17 174:4 175:6 175:9 175:10 175:18 176:3 176:4 180:11 181:19 183:6 186:5 186:6 186:13 187:25 188:18 188:20 189:20 190:8 190:18 190:19 191:3 191:10 192:12 193:12 193:17 195:4 195:9 195:10 196:18 196:25 197:1 200:1 200:15 200:18 201:10 201:12 201:15 201:18 202:23 204:1 204:16 205:24 207:17 207:21 209:2 209:12 209:20 209:23 212:20 212:23 213:7 213:5 213:16 213:20 214:2 216:2 216:11 217:14 221:10 221:13 221:16 221:16<br><br>**analyst**(3) 46:21 64:2 217:13<br><br>**analyze**(11) 94:4 98:4 100:21 109:2 117:19 122:25 126:4 138:20 150:20 175:24 217:22<br><br>**analyzed**(15) 91:4 92:11 93:8 93:14 95:1 95:22 98:13 99:1 126:11 150:15 178:4 184:23 190:9 217:19 217:20<br><br>**analyzes**(1) 102:19<br><br>**analyzing**(15) 98:1 98:21 99:2 116:5 116:6 122:24 123:3 130:20 138:17 138:23 138:25 155:17 170:2 189:7 221:10 | **and**(301) 14:2 14:14 14:15 14:19 14:20 15:10 15:17 15:19 15:23 16:2 16:2 16:4 16:9 16:19 17:13 17:15 17:18 17:23 17:25 18:11 18:13 18:15 18:22 18:23 18:25 19:2 19:12 19:13 19:14 19:19 19:21 19:23 19:25 20:4 20:20 21:10 21:17 21:20 22:4 22:15 22:17 23:11 23:12 23:14 24:15 24:24 25:3 25:3 25:18 26:3 26:9 26:16 27:5 27:12 27:14 27:20 27:23 28:2 28:18 28:22 29:18 29:23 30:5 30:10 30:18 30:28 30:21 30:25 31:7 31:7 31:19 31:20 32:12 33:8 33:11 33:16 34:1 34:15 34:16 34:25 34:18 34:9 38:11 38:18 38:21 38:23 39:4 39:6 39:6 39:7 39:11 39:22 39:23 40:8 40:13 40:15 40:19 40:19 40:21 40:25 40:25 41:2 41:8 41:12 41:13 41:23 41:25 42:22 42:25 43:1 43:5 43:6 43:13 43:14 44:3 44:6 44:11 44:15 44:17 44:20 45:18 45:21 45:24 45:25 46:4 46:7 46:10 46:24 47:1 47:2 47:5 47:13 47:15 47:23 48:1 48:3 48:4 48:6 48:6 48:13 48:13 48:23 49:2 49:3 49:8 49:8 49:15 49:25 50:4 50:6 50:6 50:10 50:14 50:20 50:24 51:5 51:13 51:14 51:19 52:1 52:4 52:9 52:13 52:18 52:23 52:24 53:20 53:20 53:22 53:25 54:1 54:7 54:10 55:6 55:11 55:15 55:20 55:25 56:2 56:7 56:12 56:12 56:14 56:17 56:18 56:19 56:24 57:5 57:8 57:11 57:20 57:21 57:23 57:25 58:4 58:5 58:14 59:13 59:15 59:17 59:19 60:4 60:6 60:10 60:13 60:14 60:17 60:21 60:24 60:24 60:25 61:2 61:10 61:12 61:13 61:18 61:20 61:23 61:25 62:2 62:5 62:6 62:21 63:2 63:10 63:17 63:19 63:22 64:9 64:10 64:17 64:18 64:19 64:22 64:25 65:5 65:7 65:8 65:9 65:12 65:12 65:18 65:19 65:21 65:25 66:9 66:13 66:13 66:18 66:20 67:6 67:7 67:8 67:15 67:15 67:20 67:21 68:1 68:9 68:12 68:14 68:15 68:18 68:18 68:20 68:22 69:2 69:4 69:6 69:13 69:14 69:16 69:16 69:20 69:24 69:25 70:6 70:7 70:9 70:10 | **and**(301) 70:13 70:18 70:19 70:23 71:1 71:2 71:5 71:10 71:11 71:14 71:16 71:19 71:19 71:20 71:21 71:21 72:3 72:7 72:8 72:11 72:14 72:17 72:19 72:21 72:22 73:1 73:8 73:9 73:13 73:18 73:19 73:23 73:24 73:25 74:9 74:14 74:15 74:19 74:23 74:25 75:5 75:12 76:22 76:25 77:7 77:9 77:14 77:15 77:16 77:18 77:22 77:23 78:17 79:2 79:5 79:6 79:24 80:3 80:17 80:19 81:10 82:1 82:5 82:11 82:12 82:15 82:25 83:2 83:2 83:3 83:7 83:12 83:14 83:16 83:17 84:5 84:6 84:8 84:9 84:10 84:14 84:15 84:21 85:3 85:3 85:8 85:13 85:15 85:16 85:18 85:21 85:23 86:2 86:3 86:7 86:8 86:10 86:15 86:18 86:19 86:20 86:22 87:3 87:3 87:4 87:4 87:8 87:9 87:10 87:12 87:16 87:18 87:20 87:21 87:22 87:24 88:11 88:15 88:19 88:21 89:1 89:4 89:9 89:17 89:20 89:21 89:22 89:23 90:3 90:3 90:4 90:6 90:10 90:16 90:17 91:4 91:4 91:7 91:21 92:3 92:4 92:9 92:10 92:11 92:12 92:14 92:18 92:21 92:24 93:2 93:2 93:11 93:12 93:16 93:19 93:21 93:24 94:2 94:3 94:5 94:6 94:8 94:11 94:15 95:4 95:5 95:13 95:17 95:19 95:23 95:25 96:5 96:8 96:14 96:19 96:21 97:1 97:2 97:8 97:11 97:12 97:25 97:25 98:12 98:15 98:19 99:2 99:6 99:11 100:7 100:9 100:10 100:11 100:16 100:18 100:20 100:23 100:25 101:5 101:7 101:9 101:11 101:16 101:20 101:20 101:22 102:1 102:3 102:6 102:7 102:18 102:23 102:25 103:1 103:3 103:4 103:5 103:7 103:7 103:10 103:15 103:19 104:3 104:4 104:6 104:6 104:9 104:12 104:15 105:2 105:8 105:8 105:9 105:9 105:11 105:12 105:14 106:2 106:4 106:6 106:8 106:17 106:19 106:21 106:23 106:25 107:2 107:5 107:11 107:12 108:2 108:5 108:7 108:8 108:13 108:15 108:23 108:24 109:1 109:4 109:6 109:7 109:10 109:19 109:25 110:2 110:3 110:4 110:8 110:9 110:11 110:13 110:17 110:20 110:23 110:25 111:4 111:5 111:8 111:10 111:13 111:16 112:5 112:13 112:19 112:2 113:1 113:2 113:3 113:5 113:13 113:18 113:21 113:24 114:3 114:4 114:11 114:12 114:14 | **and**(301) 114:21 114:21 114:24 114:25 115:8 115:9 115:17 115:19 115:19 115:20 115:20 115:24 116:3 116:7 116:8 116:10 116:16 116:21 116:23 117:3 117:3 117:8 117:9 117:15 117:17 117:20 117:25 118:1 118:3 118:5 118:8 118:8 118:9 118:11 118:19 118:20 118:21 118:25 119:9 119:15 119:18 119:19 119:21 119:22 120:8 120:11 120:16 120:19 120:22 120:23 121:5 121:8 121:19 121:21 123:4 123:6 123:7 123:8 123:10 123:10 123:13 123:19 124:2 124:11 124:14 124:15 124:15 124:16 124:19 124:20 124:20 125:12 125:14 125:16 125:18 125:19 126:8 126:15 126:17 126:19 127:1 127:4 127:15 127:18 127:22 127:24 127:25 128:18 128:20 128:23 128:24 129:2 129:4 129:12 130:1 130:2 130:4 130:4 130:8 130:9 130:13 130:18 130:25 131:10 131:12 131:13 131:17 131:21 131:24 132:5 133:10 133:16 133:20 134:7 134:18 134:18 134:21 134:24 135:3 135:8 135:8 135:10 135:14 135:16 136:15 136:16 136:22 137:3 137:8 137:16 137:22 138:1 138:2 138:3 138:3 138:4 138:5 138:9 138:10 138:11 138:22 139:1 139:3 139:3 139:5 139:5 139:10 139:11 139:11 139:15 139:17 139:17 139:23 139:25 140:5 140:5 140:12 140:23 140:25 141:5 141:6 141:8 141:10 141:22 141:23 142:1 142:13 142:16 142:19 142:24 143:3 143:7 143:13 143:14 144:2 144:5 144:11 144:16 144:18 144:21 144:22 144:22 144:25 145:1 145:4 145:7 145:7 145:10 145:12 145:21 145:23 146:1 146:9 146:9 146:10 146:20 147:22 148:1 148:4 148:15 148:17 148:24 148:24 149:1 149:6 149:13 149:15 149:15 149:20 149:25 150:3 150:4 150:4 150:5 150:8 150:12 150:12 150:12 150:14 150:15 150:21 150:22 150:22 151:3 151:9 151:16 152:2 152:2 152:7 152:12 152:12 152:23 153:5 153:7 153:11 153:16 153:16 154:3 154:6 154:12 154:14 154:20 154:21 155:1 155:2 155:6 155:17 155:18 156:4 156:14 156:15 156:18 156:20 156:23 157:1 157:3 157:5 157:11 157:15 157:21 157:22 157:25 158:4 158:11 158:12 158:18 159:8 159:9 159:19 159:22 159:24 160:5 160:6 160:13 160:14 160:18 160:19 160:20 160:21 161:1 161:9 161:16 161:16 161:17 162:3 162:9 162:15 162:18 162:21 162:23 162:23 163:1 163:15 163:19 163:22 164:3 164:6 164:11 164:14 164:18 164:18 164:21 |

| Word | Page:Line |
|------|-----------|
| **and**(301) 164:24 165:5 165:5 165:8 165:13 | |
| 165:17 165:21 165:25 166:1 166:8 166:8 | |
| 166:11 166:14 166:15 166:23 166:23 167: | |
| 167:9 167:10 167:11 167:14 167:16 | |
| 167:19 167:23 167:24 168:2 168:9 168:9 | |
| 168:13 168:22 168:22 168:25 168:25 169: | |
| 169:11 169:19 170:2 170:3 170:4 170:6 | |
| 170:9 170:13 170:15 170:19 170:23 170:2 | |
| 171:3 171:5 171:12 171:12 171:21 172: | |
| 172:3 172:4 172:7 172:10 172:14 172:22 | |
| 173:1 173:3 173:6 173:12 173:12 173:13 | |
| 173:14 173:23 173:25 174:3 174:13 174:14 | |
| 174:17 174:18 174:21 174:23 175:2 175:5 | |
| 175:13 175:15 175:18 176:2 176:6 176:8 | |
| 176:9 176:10 176:23 177:7 177:8 177:13 | |
| 177:16 177:21 178:13 178:14 178:14 | |
| 178:15 178:17 178:22 178:24 179:4 179:9 | |
| 179:12 179:13 180:7 180:7 180:15 180:21 | |
| 180:24 180:25 181:5 181:6 181:7 181:14 | |
| 181:14 182:2 182:3 182:5 182:8 182:12 | |
| 182:14 182:19 182:21 182:24 182:25 | |
| 183:11 183:13 183:16 183:21 184:1 184:3 | |
| 184:3 184:11 184:12 184:14 184:15 184:1 | |
| 184:20 185:2 185:4 185:6 185:9 185:10 | |
| 185:15 185:17 185:23 185:23 186:6 186:21 | |
| 186:22 187:2 187:13 187:14 187:24 188:1 | |
| 188:11 188:24 189:2 189:3 189:19 189:20 | |
| 189:25 190:3 190:4 190:12 190:13 190:17 | |
| 190:17 190:23 191:3 191:12 191:1 | |
| 191:18 191:21 192:4 192:12 192:13 | |
| 192:15 192:16 192:17 192:18 193:11 | |
| 193:16 194:1 194:4 194:4 194:8 194:9 | |
| 194:12 194:14 194:15 194:17 194:18 | |
| 194:22 194:23 194:25 195:3 195:18 195:1 | |
| 195:23 196:5 196:7 196:9 196:13 196:15 | |
| 196:17 197:1 197:12 197:12 197:14 197:1 | |
| 197:24 198:3 198:13 198:15 198:23 | |
| 198:23 199:1 199:6 199:17 199:22 199:25 | |
| 200:5 200:14 200:17 200:23 200:24 200:2 | |
| 201:2 201:5 201:12 201:14 201:18 201:22 | |
| 202:4 202:4 202:6 202:6 202:22 203:3 | |
| 203:15 203:22 204:11 204:12 204:16 | |
| 204:20 204:23 205:1 205:7 205:11 205:14 | |
| 205:17 205:20 205:23 206:15 206:16 | |
| 206:24 207:2 207:16 209:4 209:6 209:9 | |
| 209:12 209:13 209:18 209:23 209:25 210: | |
| 210:7 210:9 210:16 210:19 210:19 212:2 212:8 | |
| 212:9 212:17 212:19 212:20 212:22 213:1 | |
| 213:16 213:20 214:5 214:9 214:14 214:15 | |
| 214:16 214:21 214:23 214:25 215:5 215:7 | |
| 215:13 215:16 216:5 216:9 216:11 216:13 | |
| 216:15 216:22 217:1 217:4 217:7 | |
| | |
| | |
| **and**(64) 217:14 217:15 217:20 217:23 | |
| 217:23 218:6 218:15 218:17 218:17 218:2 | |
| 219:3 219:3 219:6 219:13 219:21 219:21 | |
| 219:24 220:5 220:10 220:14 220:24 221:1 | |
| 221:17 221:22 221:23 222:3 222:3 222:3 | |
| 223:2 223:15 223:15 223:17 223:19 223:2 | |
| 223:24 223:24 224:11 224:16 224:18 | |
| 224:19 224:22 224:25 225:15 225:15 | |
| 225:18 225:23 225:24 225:25 226:4 226:1 | |
| 226:14 226:14 226:14 226:16 226:18 | |
| 227:3 227:10 227:17 227:23 228:1 228:4 | |
| 228:7 228:9 228:19 | |
| | |
| **and-a-half**(1) 145:5 | |
| **and/or**(2) 171:3 207:6 | |
| **anderson**(1) 4:30 | |
| **andrea**(1) 9:32 | |
| **andrew**(8) 2:31 3:9 3:27 6:20 6:21 7:13 | |
| 8:34 8:36 | |
| | |
| **angeles**(2) 4:18 83:14 | |
| **angelo**(1) 7:5 | |
| **anna**(2) 9:41 9:41 | |
| **announced**(1) 94:10 | |
| **announcement**(1) 94:1 | |
| **annual**(4) 40:24 41:1 41:2 165:14 | |

| Word | Page:Line |
|------|-----------|
| **annually**(3) 165:1 165:1 165:10 | |
| **anomalous**(1) 212:16 | |
| **anomaly**(1) 212:16 | |
| **another**(15) 67:17 127:4 129:23 135:2 | |
| 140:6 140:9 164:15 168:4 178:14 182:20 | |
| 183:13 187:14 190:18 194:5 218:7 | |
| | |
| **answer**(21) 16:15 18:14 23:12 23:13 23:2 | |
| 24:7 29:16 30:4 30:10 33:21 34:2 48:8 | |
| 61:14 65:7 69:25 70:18 154:1 157:7 | |
| 171:23 188:13 202:25 | |
| | |
| **answered**(2) 37:16 173:25 | |
| **answers**(1) 16:22 | |
| **anticipate**(1) 132:21 | |
| **anticipated**(3) 96:22 113:16 147:12 | |
| **any**(104) 13:20 13:24 14:2 14:10 24:21 | |
| 27:11 28:11 29:15 32:11 36:18 36:21 | |
| 37:21 39:12 39:16 43:18 49:8 49:12 50:20 | |
| 50:21 52:4 52:7 52:10 52:15 54:21 55:7 | |
| 56:7 57:12 58:18 59:17 63:17 81:7 85:18 | |
| 87:2 87:12 87:16 90:20 91:12 93:4 95:10 | |
| 95:11 95:12 97:1 97:18 101:14 101:22 | |
| 101:22 101:23 108:6 110:8 110:9 112:10 | |
| 114:17 117:8 126:6 129:12 131:21 137:17 | |
| 139:12 139:18 146:17 146:25 149:6 149:11 | |
| 150:10 151:10 155:8 155:10 160:20 | |
| 161:21 161:23 161:24 164:3 165:18 173:11 | |
| 173:14 174:23 175:2 175:5 175:6 175:7 | |
| 175:18 176:8 179:25 184:11 189:25 191:5 | |
| 193:21 205:8 206:11 207:17 207:18 207:1 | |
| 208:12 209:10 209:22 210:24 210:25 | |
| 211:3 211:4 211:10 215:18 218:24 225:10 | |
| 227:21 | |
| | |
| **anybody's**(1) 196:25 | |
| **anyone**(3) 13:20 82:9 222:21 | |
| **anything**(13) 14:6 14:7 14:8 51:16 63:10 | |
| 142:11 167:2 179:25 199:12 219:9 220:15 | |
| 225:10 227:11 | |
| | |
| **anyway**(4) 122:9 131:14 152:17 225:9 | |
| **anywhere**(1) 134:11 | |
| **apart**(1) 212:15 | |
| **apearances**(3) 10:1 11:1 12:1 | |
| **apologies**(1) 136:7 | |
| **apologize**(4) 124:17 144:15 153:5 187:7 | |
| **apparently**(2) 34:15 185:12 | |
| **appealing**(1) 74:17 | |
| **appeals**(1) 86:25 | |
| **appearances**(5) 5:37 6:1 7:1 8:1 9:1 | |
| **appears**(1) 192:3 | |
| **appendix**(23) 90:15 90:16 99:10 99:17 | |
| 100:24 102:13 102:23 103:9 103:10 161:2 | |
| 162:3 162:5 162:6 164:10 164:11 170:9 | |
| 203:20 210:9 210:11 210:12 210:13 221:2 | |
| 221:23 | |
| | |
| **apples-to-apples**(1) 106:8 | |
| **application**(1) 83:9 | |
| **applied**(11) 77:16 80:21 106:6 108:3 108:9 | |
| 108:10 108:10 114:24 127:8 155:20 176:5 | |
| | |
| **applies**(1) 75:19 | |
| **apply**(3) 75:19 102:10 105:6 | |
| **applying**(6) 26:23 85:5 117:23 133:22 | |
| 134:13 161:3 | |
| | |
| **appointment**(2) 83:4 84:25 | |
| **appraisal**(2) 135:10 140:2 | |
| **appreciate**(4) 26:2 141:11 208:4 224:10 | |
| **approach**(11) 16:16 16:18 16:19 16:21 17:4 | |
| 19:1 21:3 21:6 21:23 23:2 98:3 101:12 | |
| 132:15 154:14 | |
| | |
| **approaches**(3) 16:22 16:23 17:2 | |
| **approaching**(1) 89:23 | |
| **appropriate**(11) 26:17 105:11 112:22 | |
| 122:24 140:2 142:19 143:2 143:5 143:19 | |
| 150:25 222:8 | |

| Word | Page:Line |
|------|-----------|
| **approximately**(11) 25:8 80:1 83:13 87:3 | |
| 88:21 96:10 100:10 107:10 161:1 166:8 | |
| 193:13 | |
| | |
| **april**(9) 45:25 46:2 46:4 65:24 94:1 | |
| 148:15 157:25 159:20 167:24 | |
| | |
| **arbitrary**(1) 116:23 | |
| **are**(122) 19:20 26:25 29:4 33:23 42:9 48:5 | |
| 48:10 51:6 54:3 54:4 54:4 54:15 57:12 57:19 | |
| 61:8 61:11 61:11 61:19 63:21 63:23 69:9 | |
| 69:14 69:15 70:9 71:4 73:7 76:21 77:12 | |
| 77:14 78:6 79:2 79:14 81:11 82:22 85:17 | |
| 87:17 91:25 92:4 92:10 95:16 98:20 | |
| 100:15 101:16 101:7 101:8 101:10 101:17 | |
| 106:20 106:21 108:19 111:1 111:1 114:4 | |
| 116:2 116:2 116:6 116:20 118:2 119:22 | |
| 121:10 121:12 121:16 126:9 129:20 130:1 | |
| 131:15 133:21 133:25 134:2 134:15 | |
| 134:24 137:2 137:16 139:18 142:12 151:5 | |
| 151:21 153:6 155:11 161:1 162:23 165:17 | |
| 167:25 167:25 170:20 171:17 171:22 180:2 | |
| 183:17 184:11 184:12 186:19 188:17 | |
| 193:7 194:12 194:25 195:1 195:24 197:24 | |
| 198:8 198:17 203:22 203:24 204:4 206:5 | |
| 207:8 207:11 207:14 209:17 212:13 212:2 | |
| 214:24 215:18 219:15 220:2 220:24 222:2 | |
| 223:22 225:9 225:25 226:12 226:18 227:1 | |
| | |
| **area**(2) 85:21 129:23 | |
| **areas**(2) 83:22 84:9 | |
| **aren't**(3) 47:16 180:5 226:4 | |
| **argue**(1) 60:20 | |
| **argument**(4) 78:21 78:25 79:5 79:6 | |
| **arguments**(1) 73:7 | |
| **arif**(1) 8:45 | |
| **arise**(1) 29:8 | |
| **arising**(1) 87:17 | |
| **arithmetic**(1) 161:7 | |
| **arm's**(3) 48:17 51:16 51:18 | |
| **arm's-length**(2) 182:2 182:11 | |
| **arms**(1) 137:17 | |
| **around**(5) 56:25 60:15 70:10 211:21 216:2 | |
| **arrangers**(1) 96:7 | |
| **arrive**(1) 179:16 | |
| **arrived**(2) 17:5 49:25 | |
| **arriving**(1) 50:1 | |
| **arrowgrass**(2) 8:43 8:43 | |
| **article**(4) 35:8 179:15 179:23 180:3 | |
| **articles**(4) 87:2 87:4 87:8 87:12 87:16 | |
| 87:18 | |
| | |
| **artificial**(3) 116:19 116:23 117:3 | |
| **ashby**(1) 5:24 | |
| **ashish**(1) 9:28 | |
| **ashley**(2) 3:11 6:6 | |
| **aside**(2) 107:5 133:1 | |
| **ask**(20) 29:49 49:8 53:4 55:6 60:24 61:10 | |
| 61:12 62:12 66:15 66:22 76:18 82:9 | |
| 152:20 159:6 207:23 208:10 219:9 220:14 | |
| 225:4 227:9 | |
| | |
| **asked**(33) 23:9 28:2 29:12 50:23 53:5 | |
| 53:16 53:19 55:11 56:3 56:17 59:22 60:1 | |
| 62:8 63:2 65:1 66:4 66:9 67:14 70:13 | |
| 72:1 75:23 78:20 80:8 89:17 89:18 152:9 | |
| 173:25 196:3 209:7 211:11 217:15 219:8 | |
| 224:25 | |
| | |
| **asking**(4) 70:16 143:13 143:15 218:19 | |
| **aspect**(1) 131:25 | |
| **aspects**(3) 75:24 142:21 143:2 | |
| **assess**(7) 26:25 60:19 64:13 78:9 78:10 | |
| 80:17 175:6 | |
| | |
| **assessed**(3) 16:5 178:1 180:15 | |
| **assessing**(4) 26:13 38:8 42:5 63:16 | |
| **assessment**(6) 28:12 33:15 38:2 41:13 | |
| 69:17 178:25 | |

| Word | Page:Line |
|------|-----------|
| **asset**(42) 9:36 9:37 18:17 18:18 18:21 | |
| 19:6 20:10 23:10 25:17 26:3 26:9 26:11 | |
| 26:13 27:11 28:2 28:19 28:22 29:17 30:5 | |
| 30:6 30:14 30:16 33:6 33:9 33:14 34:20 | |
| 34:23 35:12 35:13 36:18 38:23 38:24 | |
| 39:11 56:18 59:15 59:17 115:22 123:22 | |
| 124:19 130:6 130:7 205:8 | |
| | |
| **assets**(61) 16:1 19:16 19:18 21:5 22:8 | |
| 22:9 24:14 24:18 24:19 24:24 24:25 25:5 | |
| 25:9 25:12 25:15 25:19 27:2 27:3 33:13 | |
| 34:16 34:19 35:17 35:18 35:20 36:1 36:10 | |
| 36:22 38:8 44:18 48:21 58:4 98:8 98:14 | |
| 98:15 99:3 100:11 106:10 118:20 124:13 | |
| 124:25 125:4 129:7 133:25 134:15 138:2 | |
| 138:4 138:5 138:9 138:10 138:10 138:18 | |
| 138:20 138:25 139:2 139:3 139:16 139:17 | |
| 180:5 207:6 218:12 218:13 | |
| | |
| **assign**(6) 33:13 38:10 38:11 73:22 75:18 | |
| 80:17 | |
| | |
| **assigned**(2) 18:25 19:1 | |
| **assignment**(1) 89:23 | |
| **assistants**(1) 83:18 | |
| **assorted**(1) 85:13 | |
| **assume**(7) 23:13 61:9 80:21 152:20 178:21 | |
| 178:22 202:15 | |
| | |
| **assumed**(11) 28:18 40:24 41:1 42:3 42:8 | |
| 42:22 79:5 124:12 182:6 201:18 213:1 | |
| | |
| **assumes**(5) 32:25 33:19 72:8 150:8 150:10 | |
| **assuming**(8) 15:21 43:3 112:13 119:11 | |
| 121:19 202:20 209:4 214:20 | |
| | |
| **assumption**(20) 24:13 24:17 24:19 25:8 | |
| 25:11 36:12 36:14 120:21 121:13 155:16 | |
| 161:13 173:22 198:18 202:10 209:11 | |
| 212:22 214:9 214:10 215:9 215:15 | |
| | |
| **assumptions**(9) 14:20 123:14 123:16 | |
| 123:19 185:18 194:25 204:18 209:22 | |
| 212:22 | |
| | |
| **atamian**(1) 6:29 | |
| **attached**(2) 50:18 187:24 | |
| **attempt**(4) 59:8 109:1 111:7 173:10 | |
| **attempted**(1) 15:25 | |
| **attendees**(1) 224:24 | |
| **attention**(2) 23:5 193:1 | |
| **attorney**(2) 142:23 143:3 | |
| **attributable**(1) 32:11 | |
| **attribute**(1) 142:20 | |
| **attributes**(2) 138:14 142:21 | |
| **auction**(1) 22:15 | |
| **auctions**(1) 22:18 | |
| **audible**(3) 54:23 81:8 208:13 | |
| **audiences**(1) 87:25 | |
| **august**(1) 185:13 | |
| **aurelius**(4) 5:24 9:11 9:12 133:7 | |
| **austin**(3) 1:25 8:8 29:24 | |
| **author**(1) 134:22 | |
| **authored**(1) 87:6 | |
| **authoritative**(1) 134:24 | |
| **authority**(1) 139:12 | |
| **auto**(1) 131:7 | |
| **availability**(10) 23:16 23:17 36:25 95:2 | |
| 109:22 123:7 204:3 204:17 205:19 205:24 | |
| | |
| **available**(17) 21:3 21:8 21:18 21:20 27:20 | |
| 35:16 45:9 46:5 79:15 109:14 109:16 | |
| 114:4 115:23 116:2 133:24 197:2 223:24 | |
| | |
| **ave**(2) 1:36 5:33 | |
| **avenue**(5) 2:11 2:25 4:16 4:41 5:26 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **average**(27) 99:6 100:2 102:10 103:6 103:7 110:24 110:25 111:2 111:9 119:1 120:14 122:21 127:22 128:10 143:25 149:10 149:20 161:10 161:21 162:23 163:16 189:24 190:6 204:9 205:14 210:17 222:5 | | **based**(45) 18:2 34:11 38:4 52:5 54:4 59:4 92:22 93:12 99:3 100:2 102:11 102:18 103:2 107:7 107:15 108:24 110:6 110:11 110:15 111:24 112:9 114:8 119:2 119:24 120:5 120:8 121:15 122:3 122:20 128:9 134:7 139:18 143:25 159:25 182:8 193:12 196:25 197:1 200:2 200:15 212:15 214:9 215:16 220:4 228:11 | | **believed**(4) 52:17 52:19 189:18 222:7 **believing**(1) 200:10 **belonged**(2) 57:25 58:1 **belonging**(1) 57:24 **below**(9) 39:23 44:12 46:21 65:15 65:18 65:20 94:9 181:6 213:7 | | **black**(26) 13:10 13:13 13:22 23:8 23:16 23:21 31:19 31:22 49:17 55:4 67:14 68:23 68:24 78:3 79:2 79:14 79:17 80:6 80:10 80:13 81:4 81:13 147:7 147:24 148:4 230:6 |
| **averaged**(3) 189:1 203:16 222:2 | | | | **ben**(1) 6:37 | | **black's**(2) 147:1 147:5 |
| **avoidance**(6) 15:8 15:11 32:10 34:17 66:13 66:14 | | **basic**(4) 101:11 103:7 110:12 139:16 | | **benchmark**(1) 101:18 **benchmarks**(1) 214:11 | | **black-scholes**(2) 200:1 200:17 **blake**(1) 4:6 **blank**(2) 2:36 192:18 |
| **avoided**(2) 72:2 72:5 | | **basically**(15) 104:2 111:22 112:17 114:19 115:1 117:19 120:21 127:7 134:10 149:11 174:20 174:23 180:7 182:3 226:11 | | **bendernagel**(18) 1:27 81:14 81:20 222:17 223:4 223:7 223:10 223:13 224:8 225:5 225:11 226:10 226:23 227:13 228:13 228:18 228:21 229:2 | | **blended**(1) 118:8 **block**(1) 2:29 **blow**(10) 141:5 141:10 141:23 179:19 192:21 193:2 193:4 194:13 194:24 221:25 |
| **aware**(28) 22:7 29:6 39:12 39:16 51:20 52:1 52:16 54:3 54:7 54:8 62:17 112:20 115:13 140:12 140:17 145:20 141:4 149:2 149:5 149:15 150:4 171:12 172:16 195:25 201:14 201:14 201:17 225:12 | | **basis**(14) 19:16 19:18 21:8 36:16 52:9 52:13 74:18 90:18 109:13 150:10 150:21 169:15 169:22 222:3 | | **bendernagle**(1) 66:24 **beneficial**(1) 24:18 **benefit**(8) 26:5 34:17 35:10 35:13 114:17 118:14 130:9 147:14 | | **blown**(1) 195:2 **blue**(1) 103:18 **board**(5) 3:41 12:33 157:17 177:19 177:20 |
| **away**(4) 44:15 71:3 71:12 136:9 **a's**(1) 125:16 | | **bears**(1) 214:2 | | **benefits**(19) 5:25 30:11 112:22 113:5 115:11 115:14 117:19 117:25 119:8 120:2 120:25 130:12 130:19 139:7 139:14 140:1 164:5 207:12 219:2 | | **board's**(1) 51:21 **bob**(2) 2:16 3:12 **bodies**(1) 88:8 **bohan**(1) 11:43 |
| **back**(21) 13:18 33:5 44:24 45:1 60:25 61:19 62:13 66:6 99:22 99:23 100:23 108:15 111:22 112:1 124:15 135:19 141:2 142:16 144:16 145:15 147:23 151:14 153:17 171:12 199:13 207:12 220:25 225:18 | | **because**(91) 16:19 16:20 18:3 19:3 19:8 21:20 22:1 24:20 25:24 26:17 26:19 27:19 29:6 33:14 35:6 38:16 39:22 47:8 47:11 47:18 50:15 51:8 51:12 56:1 61:24 64:12 64:23 68:25 71:4 71:17 73:6 75:3 75:14 75:16 80:24 94:16 95:6 96:17 96:20 101:4 102:4 103:22 105:9 111:1 111:6 113:3 113:13 113:15 113:25 114:2 114:8 114:21 115:2 116:11 116:11 116:17 116:22 117:1 117:2 117:20 117:21 117:23 118:13 118:15 123:24 124:6 130:5 131:5 140:9 141:11 148:4 156:2 164:4 164:6 171:8 180:8 189:8 186:24 190:11 192:4 192:19 199:11 206:3 219:14 220:17 222:25 224:12 225:15 227:1 227:24 228:15 | | **benjamin**(1) 2:6 **bennett**(2) 4:13 12:20 **benson**(2) 5:11 11:18 **bernard**(1) 230:6 **bernstein**(1) 2:7 **berry**(1) 9:19 **beside**(1) 194:14 **best**(11) 21:17 59:19 59:20 65:14 80:14 80:16 107:25 139:17 197:2 215:2 224:21 | | **bold**(1) 160:2 **bond**(4) 90:7 96:19 96:20 97:1 **bonds**(5) 97:3 97:4 197:7 197:19 202:13 **book**(5) 87:5 135:9 136:15 137:6 193:25 **booked**(1) 39:1 **books**(8) 37:15 56:11 87:2 87:3 87:12 87:16 87:18 225:24 |
| **backed**(2) 174:23 175:2 | | | | | | **borderline**(4) 92:19 129:15 200:16 220:20 **borrower**(1) 193:15 |
| **background**(6) 86:13 89:24 192:1 196:19 196:22 | | | | **beta**(4) 102:23 102:24 102:25 162:10 **better**(1) 138:3 **between**(28) 15:17 40:21 57:11 61:1 65:11 65:12 66:14 68:14 68:18 77:18 77:22 78:10 86:20 87:20 94:11 104:4 116:1 141:25 144:16 155:18 173:12 174:21 176:2 212:16 213:1 214:17 214:20 215:16 | | **boston**(1) 83:14 **both**(39) 14:19 14:20 29:20 43:8 50:20 54:1 56:1 56:12 61:8 67:25 68:20 77:11 83:3 84:14 86:7 87:9 89:19 98:1 100:18 104:22 111:7 113:1 114:24 116:2 125:20 142:1 149:21 150:3 164:5 167:23 171:4 184:8 189:3 190:12 200:12 206:15 217:22 221:13 223:21 |
| **bad**(4) 49:2 52:10 52:11 183:3 **baiera**(1) 7:6 | | | | **beyond**(1) 84:8 **bible**(1) 82:6 **bid**(3) 22:6 22:11 23:13 | | **bottom**(28) 14:21 23:5 23:9 34:7 99:15 100:1 102:3 114:5 115:9 118:12 118:21 130:14 144:25 154:21 156:19 158:7 158:8 167:20 178:16 183:16 193:3 194:17 197:25 214:14 214:15 214:24 214:25 217:7 |
| **balance**(55) 14:18 15:15 15:18 15:20 16:6 16:17 17:13 18:17 19:1 24:13 25:12 26:14 27:19 28:12 28:25 29:5 29:15 30:12 30:21 36:13 37:3 37:13 38:1 38:12 39:3 39:9 39:19 56:14 58:4 58:9 58:7 69:15 76:9 76:23 77:6 106:14 109:7 109:25 116:15 134:6 138:22 139:6 140:15 143:21 161:17 166:24 169:3 169:9 169:14 169:20 169:21 172:7 217:8 217:12 219:23 | | **become**(3) 112:8 202:12 218:21 **becomes**(2) 69:21 73:21 **been**(41) 18:4 18:5 18:7 21:10 22:20 22:21 27:18 34:20 46:20 48:16 50:7 50:23 50:24 61:21 65:13 69:2 70:1 71:5 84:1 87:12 87:24 88:9 125:11 135:11 135:18 140:20 146:8 151:4 158:24 165:8 173:21 173:25 178:6 190:8 221:19 224:16 224:20 224:23 225:24 227:7 228:14 | | **bidder**(2) 22:19 22:20 **bifferato**(1) 5:4 **big**(4) 40:14 63:25 148:12 225:18 **bigelow**(1) 148:18 **bigger**(1) 125:9 **billion**(50) 15:7 17:17 18:1 18:12 25:9 25:14 25:17 25:21 25:21 26:9 37:7 37:10 37:20 58:3 58:5 61:2 61:22 62:3 72:8 72:20 72:20 72:22 72:23 72:25 73:1 73:2 73:8 73:9 73:13 73:15 73:17 75:10 79:8 96:10 107:11 107:12 109:17 127:4 166:9 169:13 169:13 174:24 181:21 184:15 188:10 189:21 193:14 194:20 201:15 216:2 | | **bought**(1) 218:17 **bounds**(1) 77:3 **bowden**(1) 5:25 **box**(9) 103:20 111:23 114:5 132:16 145:1 160:5 160:13 181:11 193:7 **brackets**(2) 153:8 192:18 **brandon**(1) 1:40 **brandywine**(1) 4:7 **brass**(1) 7:32 **breach**(3) 50:5 50:6 51:11 **break**(9) 49:8 81:14 81:17 207:24 208:2 222:19 223:1 224:5 225:9 |
| **bale**(1) 6:44 **balloon**(1) 201:15 **banc**(1) 5:30 **bank**(14) 7:21 7:27 10:4 10:7 10:22 10:22 11:13 42:7 46:8 75:16 76:14 180:9 180:2 185:9 | | **before**(37) 1:19 16:14 18:5 18:7 25:17 37:17 37:20 44:7 46:5 65:11 88:16 89:1 93:7 94:25 98:12 103:17 109:9 113:11 114:9 114:11 119:17 129:5 135:6 142:25 143:14 149:17 157:7 166:24 167:3 185:21 187:3 187:21 194:8 195:5 196:10 223:8 228:16 | | | | **breakout**(1) 56:13 **breaks**(1) 136:10 **brett**(1) 8:17 **brian**(6) 9:34 10:40 60:12 141:6 141:9 141:17 |
| **bankrupt**(1) 29:22 **bankruptcies**(1) 27:21 **bankruptcy**(20) 1:1 1:20 26:18 26:20 26:25 29:7 29:21 29:24 40:13 50:24 54:16 54:16 61:10 92:25 93:3 97:19 116:9 198:8 198:17 | | **begin**(2) 177:17 228:17 **beginning**(11) 48:9 59:22 80:9 101:18 129:4 131:17 137:8 140:6 179:14 183:1 202:7 | | **bills**(8) 14:11 42:2 47:6 47:7 55:23 64:15 64:16 64:17 | | **bridge-lenders'**(1) 92:13 **briefly**(11) 53:17 86:12 89:22 103:12 114:13 119:15 121:8 126:21 128:12 214:5 221:5 |
| **banks**(12) 46:7 47:14 48:6 48:13 60:17 61:17 69:19 74:4 74:14 74:15 170:16 178:6 | | **begins**(6) 20:15 32:5 48:3 136:17 141:9 178:18 **behalf**(3) 49:15 89:15 133:7 | | **binder**(32) 17:12 31:3 45:2 91:21 122:1 122:2 122:9 128:4 129:19 131:16 132:25 135:5 139:20 140:22 148:10 148:11 148:12 148:13 153:1 167:6 172:21 177:5 178:10 180:21 182:19 185:2 187:11 190:15 202:3 208:20 215:21 217:25 | | **brigade**(2) 10:17 10:18 **bring**(5) 73:2 73:3 73:4 111:22 227:14 **bringing**(1) 52:25 **brit**(1) 185:7 |
| **bar**(2) 82:10 103:18 **barclay's**(2) 198:3 198:15 **barclays**(2) 6:28 6:36 **barely**(4) 64:16 204:23 206:1 206:16 **barnes**(1) 5:18 **bars**(1) 197:24 **bartter**(1) 185:7 | | **behind**(21) 91:21 93:19 95:25 99:11 102:13 103:10 104:9 104:16 105:18 106:1 107:21 108:22 110:17 112:15 117:15 119:13 120:11 120:22 121:5 124:3 128:6 | | | | **broadcasting**(25) 40:25 41:3 45:18 64:8 64:10 64:13 90:3 98:15 99:3 100:11 106:19 106:22 115:9 118:20 155:2 155:4 157:2 157:3 164:19 165:6 170:6 173:1 171:17 183:21 222:3 |
| **base**(11) 41:13 41:16 41:22 44:12 65:5 108:24 110:10 111:11 127:21 189:3 217:2 | | **belief**(4) 26:10 38:4 96:12 119:4 **believe**(55) 16:19 18:2 22:10 23:16 28:1 25:20 30:24 33:10 37:8 38:7 38:13 39:22 40:23 42:20 43:9 43:12 45:4 46:4 50:15 51:22 54:1 56:10 59:14 73:21 74:25 75:3 76:6 91:5 92:6 92:21 98:2 112:25 121:14 125:6 126:5 141:19 144:19 150:8 152:6 153:20 163:22 168:13 176:23 179:3 184:17 189:14 191:5 197:2 198:9 206:14 217:17 218:24 220:2 220:18 220:21 | | **binders**(2) 82:12 132:20 **bingham**(1) 11:13 **bit**(22) 24:4 58:13 70:10 70:11 76:19 87:23 103:22 103:24 105:21 111:18 111:2 111:25 113:11 113:15 119:23 120:20 121:11 121:16 144:16 149:22 209:6 209:2 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

broadway(1) 5:14
bromberg(1) 7:36
brown(3) 6:28 7:35 86:16
browning(3) 141:6 141:10 141:17
bruce(1) 4:13
bryant(1) 4:26
buettell(2) 195:22 196:8
building(1) 4:7
built(6) 22:4 22:5 22:11 23:13 28:9 123:16
bullet(1) 193:2
bump(2) 41:5 48:25
bunch(3) 47:8 48:11 170:14
burns(1) 7:18
busath(27) 2:10 81:24 81:25 82:11 82:21
89:7 89:13 90:14 90:24 91:10 91:17
122:16 122:18 143:12 158:22 173:19 208:
208:11 208:15 208:15 208:18 211:18
211:22 215:24 216:1 216:18 216:21

bush(2) 3:26 6:18
business(34) 36:15 40:5 41:6 41:8 42:2
42:19 42:23 43:3 43:20 44:16 45:13 45:16
46:1 83:1 83:2 84:14 84:16 84:21 85:1
85:10 86:7 86:10 88:2 102:5 104:6 135:9
170:3 170:6 170:7 171:1 171:4 171:9
171:14 183:21

businesses(3) 131:9 156:1 171:9
but(220) 13:19 14:21 16:21 17:7 21:5
22:11 22:15 25:23 28:11 30:19 30:24
33:24 35:10 36:14 36:17 36:23 37:16
37:25 40:11 41:17 41:22 42:20 43:6 43:18
43:22 44:21 45:17 46:19 46:24 48:16
50:18 50:25 54:14 61:7 61:17 66:14 67:13
68:3 70:4 70:11 70:20 71:4 71:21 72:5
72:24 73:11 73:22 74:8 74:15 75:9 77:19
79:8 81:3 81:10 81:12 84:4 85:16 85:22
86:4 92:20 94:12 94:22 96:18 97:16 98:3
98:18 100:15 102:6 103:13 103:21 105:22
107:16 111:2 111:5 111:6 111:11 111:17
111:21 112:20 112:25 113:17 113:24 114:
114:15 114:23 115:3 115:11 115:20 116:5
116:10 117:2 117:6 117:24 118:2 118:4
118:13 118:18 118:25 119:7 119:17 119:2
120:14 120:20 121:2 121:12 121:14 123:1
123:16 123:25 125:21 125:24 127:7 128:2
129:3 129:13 130:11 130:17 131:13
132:22 134:11 134:11 137:2 138:8 139:18
142:10 143:18 144:17 144:23 145:25 146:
147:5 148:5 148:22 149:12 150:19 152:11
152:18 153:6 153:18 154:4 154:6 155:12
155:23 157:7 157:20 159:5 161:23 164:1
164:5 166:20 168:4 169:20 171:16 172:19
173:15 174:20 175:25 176:16 180:8 181:22
182:6 184:10 185:16 186:3 188:22 189:4
190:3 190:13 191:25 192:2 192:14 192:23
194:12 194:23 195:2 196:2 196:3 196:11
196:24 196:25 198:10 199:11 199:21 200:9
200:11 201:14 202:14 203:7 205:6 206:4
206:11 207:14 207:20 211:5 211:23 212:14
212:25 213:11 216:7 217:2 217:5 218:19
219:19 220:6 220:19 221:13 222:24 223:6
224:6 224:11 224:17 225:4 225:17 225:21
226:17 226:25 227:6 228:3 228:6 228:23

buyer(18) 32:6 32:9 33:1 33:11 33:21
35:10 35:20 35:25 137:16 137:18 137:21
138:14 138:16 139:7 140:8 140:10 142:1
142:22
buyers(7) 94:5 94:6 97:2 111:3 138:1
138:3 138:5

buyout(6) 36:20 37:8 47:20 48:12 86:1
bynum(1) 7:42
calaman(1) 229:15

calculate(11) 66:18 98:8 100:14 100:16
100:16 102:22 107:24 152:3 155:14 161:1
162:15

calculated(10) 99:7 102:8 106:2 114:22
118:16 173:10 173:15 173:21 173:22
212:14
calculating(6) 18:1 98:17 103:25 151:22
162:9 215:19

calculation(10) 24:21 99:16 100:2 100:18
100:18 100:19 102:15 115:8 155:16 222:8
calculations(3) 108:4 164:2 197:1
calculator(1) 68:2
called(12) 15:3 30:16 33:9 35:20 42:12 69:3
82:1 92:19 110:10 117:9 145:9 211:18

called(5) 28:16 32:16 34:23 46:20 155:1
came(5) 47:8 100:25 102:5 107:2 171:1
can(85) 17:11 21:1 26:6 26:8 28:22 29:3
29:9 32:15 34:25 35:4 41:15 48:8 48:21
48:23 49:2 52:24 55:16 58:25 62:19 66:23
68:13 68:22 70:9 77:3 77:11 77:14 81:10
83:11 86:12 89:22 94:25 97:22 109:22
114:1 116:5 119:15 123:4 123:17 127:9
131:10 132:25 135:22 135:23 137:4 137:12
140:7 140:11 151:23 152:4 160:9 160:14
168:9 173:3 174:6 174:10 177:9 178:23
179:16 179:22 180:10 192:21 193:4 195:2
202:12 202:18 207:14 209:4 211:18 212:2
215:21 216:5 216:9 216:9 217:25 221:20
221:25 223:23 224:3 224:21 225:5 225:17
226:2 228:6 228:7 228:7

can't(11) 29:19 33:21 42:11 74:17 176:12
184:8 184:18 186:23 195:6 203:2 225:19

candid(2) 50:24 128:22
cantor(1) 7:22
canyon(1) 12:4
capable(1) 39:4
capital(67) 6:36 6:42 6:42 7:17 7:17 8:43
9:11 9:12 10:13 10:14 10:17 10:18 10:34
10:35 11:4 11:4 11:30 11:32 12:16 12:16
12:24 12:24 14:19 15:3 16:6 40:1 40:4
47:18 99:7 102:17 103:6 108:23 112:6
112:7 114:18 118:5 118:15 121:19 124:23
125:22 129:5 133:8 134:7 144:13 161:10
161:19 162:13 162:15 162:24 163:3 163:11
163:16 163:22 164:8 164:22 164:25 165:8
165:15 167:17 194:18 200:24 201:3 201:6
202:16 205:14 207:4 209:2

capital-adequacy(11) 95:20 97:25 117:6
122:20 123:15 124:19 128:9 203:11 203:1
204:8 209:12

capital-asset-pricing(2) 99:9 102:16
care(2) 63:20 63:21
career(4) 85:9 86:3 86:9 95:4
careful(2) 25:22 179:24
carefully(1) 136:19
carey(1) 1:19
caridas(1) 6:21
carikoff(1) 2:37
carlyle(1) 5:30
carol(1) 6:44
carried(4) 37:14 38:13 38:15 56:11
carrying(2) 38:19 89:23

case(126) 1:5 11:35 13:20 13:25 14:17
27:8 28:23 29:15 29:22 30:3 30:6 30:7
39:12 39:16 40:13 40:17 40:17 40:19
40:20 40:22 40:22 40:23 41:1 41:4 41:7
41:11 41:13 41:16 41:17 41:18 41:22
41:25 41:25 42:6 42:20 44:12 45:17 46:16
46:20 46:24 46:24 48:22 59:4 59:5 59:5
59:8 59:11 60:10 62:13 64:1 64:9 64:11
64:14 65:3 65:5 65:5 65:5 65:9 65:10
65:10 65:15 65:15 65:17 65:18 65:20 65:25
68:4 68:13 68:23 68:24 69:6 74:20 76:13
76:14 76:15 80:13 80:15 81:3 81:4 81:4
84:11 85:24 87:17 89:20 91:6 92:1 108:25
110:10 111:11 111:16 111:17 112:8 112:22
123:5 125:12 125:12 125:16 127:21
127:21 127:22 128:10 141:1 143:25 152:2
155:7 159:25 176:6 180:6 181:18 188:4
188:8 189:3 189:3 189:21 191:11 194:14
194:19 195:1 196:13 196:14 200:17 205:1
210:19 212:19 216:5 220:12

cases(26) 26:25 29:6 29:21 40:13 40:16
40:19 41:22 61:11 64:7 67:22 70:3 77:17
84:3 88:23 89:1 89:4 122:21 122:22
128:21 210:7 210:17 210:17 216:6 216:11
217:23 217:23

cash(66) 15:2 15:3 16:12 16:14 18:21 21:5
28:16 28:17 28:20 29:14 29:14 30:19 30:
33:7 33:9 33:13 36:1 40:12 42:5 43:5
43:17 44:17 44:24 45:15 46:25 47:1 47:10
48:15 48:18 56:18 65:9 66:1 69:15 69:17
69:18 76:24 77:8 100:7 105:10 105:11
105:12 109:2 109:8 109:9 109:14 109:16
111:21 113:25 124:19 132:5 168:22 168:2
168:25 168:25 169:3 169:9 172:3 172:4
172:7 172:7 172:17 173:3 173:6 173:16
206:8 207:18

cash-flow(5) 99:4 100:14 114:4 115:1
190:19

cash-flows(7) 115:2 117:20 117:23 118:2
118:11 118:17 222:4

catch(1) 227:11
category(1) 19:4
catherine(2) 2:30 49:14
cause(9) 52:24 55:24 160:21 179:4 184:4
189:20 203:8 203:9 218:7

caused(2) 200:5 220:15
causes(2) 183:21 219:10
cds(4) 127:5 199:3 199:6 219:23
central(4) 25:24 57:3 57:7 65:4
centrally(1) 76:4
certain(7) 19:9 100:12 105:25 123:16
175:12 197:7 221:17

certainly(19) 13:9 22:7 23:11 26:25 29:23
33:23 41:15 43:11 62:11 135:24 136:25
148:8 168:5 185:24 196:19 198:10 198:18
207:14 225:5

certificate(5) 92:14 92:23 129:17 206:18
220:23

certification(1) 229:8
certify(1) 229:9
chachas(1) 223:17
chad(3) 11:15 178:19 178:20
chadbourne(2) 3:5 6:5
chairman(1) 84:7
challenge(1) 46:18
chance(7) 50:16 50:19 51:7 75:6 92:6
107:1 112:24

chaney(1) 12:5

change(25) 17:23 18:4 68:9 68:10 69:1
69:23 69:24 70:1 96:15 97:1 114:6 114:7
118:25 121:3 125:25 140:3 141:25 160:21
161:23 203:8 203:9 218:8 219:8 219:10
220:16
changed(3) 70:4 125:23 125:23
changes(10) 66:5 66:10 66:16 66:19 67:16
69:3 69:21 70:13 167:16 173:11

chapter(1) 1:8
characteristic(1) 137:21
chart(4) 67:5 67:7 197:17 197:23
charts(1) 54:10
chase(2) 10:4 81:25
check(6) 17:9 71:11 149:11 153:25 213:4
213:12

checked(3) 16:21 161:20 164:1
checking(1) 71:2
chicago(16) 1:30 2:26 2:33 3:44 12:28
12:29 25:3 35:9 83:1 83:14 84:20 84:22
84:24 85:1 85:8 86:17

chief(1) 86:25
choice(1) 223:2
choices(1) 222:18
choi's(1) 217:12
choose(1) 42:10
chose(2) 27:12 101:16
chosen(1) 170:19
christina(2) 177:17 177:18
christine(1) 11:23
chrysler(1) 84:3
chung(1) 7:28
circuit(2) 29:2 86:25
circumstance(1) 29:7
circumstances(3) 33:23 96:11 176:6
citation(1) 35:8
cite(2) 139:12 139:18
cited(1) 87:13
citi(19) 177:9 177:15 178:14 182:20
183:13 188:4 188:8 188:18 188:24 189:17
189:21 190:7 190:25 191:8 191:13 191:16
191:22 191:24 196:6

citi's(1) 187:17
citibank(2) 8:31 190:18
citigroup(4) 177:9 187:15 210:7 210:19
claim(4) 52:22 52:25 75:10 79:8
claims(23) 50:1 50:4 50:5 50:7 50:11
50:15 50:20 50:21 51:7 52:6 55:7 55:9
60:4 60:5 60:8 60:10 60:16 60:22 61:6
61:7 61:8 61:12 62:5

clarification(1) 26:2
clark(1) 2:32
class(1) 85:22
classes(2) 83:24 85:23
classified(5) 57:24 58:1 58:15 58:19 59:10
classifiers(1) 175:24
classifying(1) 116:25
clear(10) 22:15 26:4 28:11 37:17 68:3
73:12 74:25 99:25 139:15 200:15

clearly(7) 59:12 64:3 65:13 94:7 126:6
217:6 227:16

cleary(1) 4:6
clerk(9) 13:2 49:11 81:23 82:5 82:8 82:14
82:19 86:23 132:11

click(1) 142:17
client(9) 50:8 89:16 142:13 159:12 160:20
179:13 185:5 192:12 194:5

clients(2) 83:12 83:23
clip(2) 189:8 190:2

| Word | Page:Line |
| --- | --- |

**close**(13) 17:19 17:22 57:21 62:22 92:19 123:14 125:5 128:22 183:4 183:18 199:12 208:1 220:12

**closed**(2) 46:5 57:9

**closely**(1) 135:10

**closer**(2) 182:15 220:6

**closest**(2) 26:7 128:14

**closing**(6) 45:13 181:7 181:8 181:15 187:21 194:8

**cobb**(2) 3:18 6:24

**code**(6) 19:25 26:1 26:18 26:20 27:6 61:10

**codes**(3) 174:22 174:22 174:22

**coincidence**(1) 31:17

**coinvest**(1) 182:12

**cole**(1) 1:33

**collapse**(2) 119:23 205:7

**collapsed**(3) 98:5 220:2 220:4

**collapsing**(6) 98:4 119:17 121:13 122:23 126:8 150:23

**colleague**(1) 135:1

**colleagues**(1) 196:8

**collect**(1) 89:24

**collection**(1) 48:13

**collins**(1) 2:17

**column**(13) 106:10 107:3 107:4 107:4 108:5 109:12 119:20 121:10 160:5 162:12 188:4 188:5 194:17

**columns**(1) 102:20

**combination**(3) 114:14 129:13 206:13

**combined**(4) 77:10 78:11 117:24 129:25

**combining**(1) 149:23

**come**(12) 18:12 26:8 50:14 50:14 57:14 74:14 90:16 111:9 142:7 220:25 227:18 227:22

**comes**(4) 155:21 180:24 226:5 228:6

**comfort**(1) 65:17

**comfortable**(7) 64:11 73:20 119:25 128:15 128:18 128:20 226:3

**comfortably**(2) 107:17 110:15

**coming**(3) 19:7 150:20 172:19

**comment**(5) 27:24 28:3 148:3 186:24 228:7

**comments**(1) 210:24

**commission**(3) 88:12 88:12 88:13

**commitment**(1) 224:12

**commitments**(1) 202:14

**committee**(6) 3:4 3:40 6:4 12:33 55:8 157:17

**commodities**(1) 88:15

**commodity**(1) 88:12

**common**(2) 55:20 55:21

**commonly**(2) 145:7 207:10

**companies**(59) 49:3 90:4 90:5 99:8 100:20 100:23 100:25 101:3 101:5 101:6 101:7 101:7 101:10 101:15 102:2 102:7 102:8 102:19 103:13 103:19 104:24 104:25 105:1 105:5 105:11 114:8 135:10 155:22 155:24 162:10 162:16 163:13 168:17 170:11 170:19 170:24 171:17 171:17 171:18 171:21 171:22 175:10 175:16 175:19 197:14 198:7 198:14 198:16 206:6 207:10 207:13 207:22 214:4 214:12 214:12 214:1 214:15 214:16 219:7

**company**(71) 1:8 2:23 7:31 7:31 7:41 8:19 14:10 15:20 16:9 16:11 16:16 17:4 17:19 37:18 38:25 40:4 40:9 42:1 47:5 47:7 47:17 48:24 88:24 88:24 89:2 90:16 101:18 101:19 101:21 101:23 101:25 115:22 115:24 116:5 116:9 116:12 116:16 116:22 117:1 117:1 131:5 134:1 134:4 148:18 150:6 164:7 168:7 169:11 170:4 170:17 171:6 180:1 180:4 185:18 186:16 196:9 199:10 199:12 202:12 202:15 202:1 206:1 206:20 214:11 218:14 218:15 218:17 218:19 218:20 219:24 225:14

**company's**(17) 16:23 38:8 40:16 41:14 41:17 42:22 43:17 44:8 44:16 46:12 55:2 149:7 167:17 168:15 175:6 189:11 189:14

**company-related**(1) 207:6

**company"**(2) 101:22 101:24

**comparable**(52) 90:4 90:5 98:19 99:8 100:20 100:23 100:25 101:3 101:4 101:6 101:11 101:15 101:25 102:7 102:8 102:18 103:13 103:19 104:24 105:5 105:11 105:24 107:5 114:8 155:15 155:17 155:22 162:10 162:16 163:12 168:7 168:15 168:17 169:1 170:11 170:17 171:16 171:21 174:3 174:14 175:7 175:10 175:14 175:20 176:3 197:14 213:8 214:12 214:13 214:15 214:1 219:24

**comparable-companie**(2) 98:19 112:19

**comparable-company**(6) 104:12 104:23 105:3 105:10 105:13 106:23

**comparable-transaction**(2) 105:15 219:24

**comparable-transaction**(3) 106:24 107:13 112:19

**comparables**(2) 214:25 215:1

**compare**(2) 175:18 214:10

**compared**(3) 64:1 163:5 163:19

**comparing**(1) 66:20

**comparison**(3) 106:8 188:1 215:1

**compass**(5) 82:25 83:7 83:8 83:12 84:5

**compensation**(1) 129:6

**competing**(1) 22:22

**compiled**(1) 224:17

**complaint**(1) 55:8

**complete**(1) 62:21

**completely**(7) 77:14 104:2 202:1 212:13 213:6 215:17 219:1

**completeness**(2) 23:24 68:22

**complicated**(1) 61:25

**component**(6) 38:15 38:19 56:12 56:12 56:15 85:15

**compound**(3) 76:19 77:2 78:7

**comprehensiv**(1) 186:3

**comps**(5) 163:5 163:20 170:20 171:8 176:5

**computed**(1) 59:4

**computing**(2) 39:5 59:8

**conaway**(1) 4:4

**concept**(1) 110:25

**conceptually**(1) 173:15

**concerning**(5) 167:10 210:22 210:25 211:3 216:24

**conclude**(12) 25:18 93:11 107:14 116:16 134:7 160:21 189:21 198:8 198:9 198:12 200:5 206:14

**concluded**(14) 47:6 63:13 92:16 93:12 116:21 120:12 129:14 143:6 149:16 205:25 212:18 213:2 214:13 220:12

**concludes**(3) 34:25 213:9 229:4

**conclusion**(40) 33:17 34:11 50:14 74:10 80:10 80:11 80:16 92:24 93:9 100:11 110:12 112:6 118:25 119:2 119:7 126:9 129:24 130:21 139:25 145:11 150:21 166:1 179:5 184:4 186:17 188:7 193:19 194:20 196:14 196:17 197:19 197:21 199:7 203:3 203:8 203:9 217:15 219:25 220:18 227:6

**conclusions**(16) 58:23 80:22 91:19 91:23 101:6 125:22 125:25 136:20 159:4 164:3 182:13 190:9 195:8 210:25 217:23 219:3

**conclusive**(1) 184:18

**concrete**(1) 36:21

**conditions**(3) 90:2 90:3 183:23

**conduct**(2) 16:17 207:16

**conducted**(1) 186:6

**confer**(2) 224:22 227:10

**confess**(1) 228:25

**confidence**(7) 70:16 70:19 70:21 71:24 182:16 184:5 184:11

**confident**(2) 123:24 181:25

**confidentiak**(1) 226:12

**confidentiality**(2) 225:13 226:8

**confirm**(1) 204:1

**confused**(1) 162:6

**confusing**(1) 162:8

**conlan**(1) 1:26

**connected**(1) 215:18

**connection**(17) 49:22 51:5 53:16 57:13 151:5 152:8 157:6 178:25 180:11 190:9 191:3 193:17 195:25 199:3 202:23 212:25 214:19

**consensus**(5) 46:21 94:5 111:2 111:10 111:10

**consequence**(1) 225:15

**conservative**(1) 49:24

**consider**(15) 26:11 26:13 95:14 96:21 98:6 151:11 154:14 178:6 180:16 183:8 184:18 184:19 196:17 224:22 225:1

**considerable**(1) 85:15

**consideration**(15) 35:16 51:21 106:17 107:9 108:25 113:4 121:1 122:22 141:25 143:24 149:3 150:2 150:7 162:24 205:7

**considered**(23) 18:18 25:25 27:18 28:25 30:11 30:16 33:5 33:6 33:7 33:8 34:10 36:24 74:12 74:17 101:25 137:19 151:7 177:25 180:11 181:17 183:5 184:1 188:25

**considering**(1) 33:10

**considers**(2) 34:23 113:14

**consistent**(16) 16:6 16:22 29:3 47:22 77:5 77:24 92:20 94:21 139:16 148:8 150:17 196:23 200:10 206:10 212:23 215:17

**consists**(1) 83:15

**consolidated**(2) 169:15 169:22

**constitute**(1) 27:5

**construct**(1) 32:10

**constructive**(3) 14:24 26:23 27:10

**consult**(1) 227:18

**consultant**(2) 88:7 88:9

**consulted**(1) 22:1

**consulting**(2) 82:24 83:8

**contact**(1) 202:19

**contacted**(1) 196:6

**contained**(3) 189:1 217:22 219:4

**containing**(1) 153:1

**contemplated**(1) 142:2

**contemplating**(1) 226:10

**contemplation**(1) 22:5

**contemporaneou**(23) 16:7 40:18 47:13 47:14 62:25 92:1 95:7 95:15 101:12 101:15 101:17 101:24 143:8 150:13 154:7 154:15 155:11 157:22 159:3 160:18 170:14 213:11 221:15

**contest**(5) 92:13 92:23 129:16 206:17 220:22

**contested**(1) 222:21

**context**(9) 28:24 39:13 85:24 99:13 99:25 111:1 189:17 209:19 211:4

**contexts**(1) 136:25

**contingencies**(1) 94:17

**continually**(1) 129:1

**continuation**(1) 23:6

**continue**(6) 13:8 23:21 32:22 34:3 34:7 46:12

**continued**(16) 2:2 3:2 4:2 5:2 6:2 7:2 8:2 9:2 10:2 11:2 12:2 14:3 14:4 52:19 63:14 65:24

**continues**(2) 31:22 216:15

**continuing**(3) 34:9 224:23 225:1

**contrarian**(2) 10:34 10:35

**contrasting**(1) 159:1

**control**(3) 86:2 87:22 225:14

**controller**(1) 148:16

**controversial**(1) 196:20

**conventional**(2) 98:20 176:17

**convergence**(1) 111:5

**conversion**(1) 166:15

**converted**(1) 55:24

**convertible**(2) 55:21 56:1

**convince**(1) 182:1

**cooperstown**(2) 11:30 11:31

**copy**(5) 17:11 91:3 91:8 98:23 216:19

**core**(2) 85:17 85:20

**cornell**(1) 86:14

**corner**(2) 103:20 193:3

**corp**(3) 19:8 113:6 115:15

**corporate**(11) 51:2 51:3 51:3 51:3 71:6 85:9 85:22 86:2 87:7 87:10 87:22

**corporation**(4) 21:18 21:20 21:21 32:16

**corporations**(2) 29:22 85:10

**correct**(156) 14:12 14:13 14:18 17:17 17:20 18:13 19:5 21:12 24:16 26:18 27:24 28:20 30:12 36:8 38:3 39:17 39:25 44:1 44:2 44:5 44:10 44:14 46:3 46:3 46:9 50:9 50:12 50:16 50:17 51:2 51:9 52:7 53:1 53:24 54:2 54:13 59:9 72:10 80:23 98:2 98:6 104:11 104:14 120:7 121:14 124:14 128:10 128:18 129:8 129:10 133:20 134:10 136:18 138:16 144:1 144:7 144:10 144:24 145:6 145:14 145:19 145:20 146:14 146:23 151:8 151:13 151:18 151:23 152:6 154:16 161:20 162:10 162:18 163:6 163:11 163:14 163:17 163:18 163:21 164:20 165:2 165:6 165:7 165:11 166:7 169:1 169:2 169:9 169:17 170:1 170:8 170:12 170:18 170:22 171:7 171:10 172:6 172:8 172:9 172:12 172:13 174:15 174:17 175:8 175:21 176:1 177:2 184:24 184:25 187:23 197:7 197:8 197:22 198:21 198:22 198:25 199:4 199:8 199:23 199:24 200:4 200:8 201:3 201:4 201:7 201:8 201:12 201:16 201:20 201:21 203:10 203:17 203:18 203:25 204:9 204:10 204:15 204:17 204:18 204:21 204:25 205:15 205:16 205:19 206:3 207:20 209:2 209:3 212:6 212:7 213:17 216:4 221:11 223:11 229:9

**corrected**(3) 58:4 92:11 130:18

**correctly**(9) 130:19 130:20 133:18 160:16 166:12 166:22 170:13 188:9 199:1

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **correlation**(5) 78:10 78:11 78:12 78:14 78:15 | | **cover**(5) 157:25 180:5 180:9 187:24 202:11 | | **dcl**(14) 15:7 49:23 72:24 72:24 73:11 73:16 73:21 74:1 90:11 90:15 90:23 91:7 91:16 230:13 | | **demonstrativ**(2) 67:14 197:3 |
| | | **covered**(3) 87:16 219:9 220:15 | | | | **demonstrative**(4) 174:6 176:19 226:11 227:1 |
| **correspond**(1) 67:1 | | **covers**(1) 209:23 | | **deal**(10) 51:9 62:20 63:25 85:18 87:18 109:23 183:18 193:11 226:5 228:1 | | |
| **corroon**(1) 4:30 | | **cpas**(1) 83:16 | | | | **dempsey**(2) 222:20 223:22 |
| **cost**(18) 99:7 102:17 103:1 103:1 103:3 103:5 103:6 114:14 114:14 114:16 114:23 115:6 117:22 161:10 162:24 163:16 224:22 225:3 | | **create**(4) 25:20 123:17 125:9 146:2 | | **dealing**(6) 20:10 77:1 137:17 138:1 138:2 225:13 | | **dempsey's**(1) 222:21 |
| | | **created**(4) 110:24 189:15 218:22 218:23 | | | | **dennis**(1) 2:9 |
| | | **creating**(1) 115:25 | | | | **department**(2) 88:11 88:13 |
| | | **credentials**(1) 133:10 | | **deals**(5) 49:3 174:23 175:2 179:25 209:9 | | **dependant**(1) 164:8 |
| **costs**(2) 103:2 124:24 | | **credit**(10) 4:4 7:4 64:20 75:12 97:12 97:17 151:9 151:10 198:20 198:21 | | **dealt**(2) 77:25 209:8 | | **depending**(2) 38:16 119:22 |
| **could**(126) 17:6 19:9 19:11 20:3 22:12 23:4 23:20 24:14 25:5 25:8 27:2 27:3 27:5 27:16 31:25 32:8 32:10 34:7 37:21 42:3 43:5 46:12 51:11 57:10 57:13 60:18 64:15 64:15 64:16 66:22 67:6 67:20 68:1 68:3 69:8 80:10 83:7 89:25 90:25 91:23 93:19 97:11 98:22 98:24 99:10 99:11 99:15 101:4 102:12 102:14 102:17 103:9 106:11 107:19 108:21 108:22 110:5 110:10 110:16 110:17 111:9 112:16 116:8 118:7 118:10 120:13 122:19 123:22 123:2 124:11 124:23 124:24 124:24 125:2 125:8 126:21 128:1 128:12 129:8 129:18 129:22 130:17 130:23 130:25 131:12 134:4 135:5 135:14 135:18 138:6 145:9 145:25 146:6 148:5 152:17 153:2 155:13 155:20 176:14 192:19 201:24 203:3 205:9 206:7 206:20 207:7 207:17 207:18 207:21 207:23 208:2 208:20 209:1 209:13 210:9 210:11 211:17 213:19 214:5 217:11 219:13 222:18 222:2 223:23 225:2 | | **credit-default**(1) 97:9 | | **dean**(1) 85:2 | | **deponent**(1) 211:11 |
| | | **creditors**(25) 3:5 6:5 35:17 36:10 61:20 74:23 75:12 75:14 79:7 79:8 115:23 116:2 116:5 116:12 116:13 116:18 116:21 117:2 134:1 134:2 134:5 134:9 138:18 138:24 218:21 | | **dearborn**(1) 1:29 | | **deposition**(22) 14:4 22:23 23:5 29:9 30:4 47:21 52:18 74:3 74:9 78:20 79:23 133:12 142:15 142:18 143:6 152:7 166:12 169:6 172:16 200:1 201:17 228:2 |
| | | | | **debenture**(2) 5:4 11:18 | | |
| | | | | **deborah**(1) 4:24 | | |
| | | **crisis**(1) 131:3 | | **debt**(66) 16:2 18:12 37:7 37:9 37:12 37:14 37:23 38:11 38:15 38:18 39:1 39:13 39:1 42:6 42:12 43:5 43:6 56:12 56:15 56:16 58:4 60:21 75:16 103:1 103:5 107:3 109:2 109:20 114:14 114:16 114:18 114:21 115:4 117:22 121:3 127:4 144:13 150:7 161:14 161:18 162:12 162:15 163:2 163:12 164:2 164:5 165:21 165:25 166:16 166:23 167:22 180:4 180:5 180:9 180:17 183:19 184:10 184:12 193:14 197:14 199:10 201:15 203:2 209:9 217:16 220:9 | | **depositions**(1) 88:21 |
| | | **criteria**(2) 175:11 175:12 | | | | **depository**(1) 151:5 |
| | | **critical**(1) 70:6 | | | | **depreciation**(2) 19:19 19:20 |
| | | **critically**(1) 56:2 | | | | **derive**(3) 155:13 155:19 171:8 |
| | | **criticism**(3) 97:11 146:1 146:3 | | | | **derived**(2) 99:9 171:13 |
| | | **criticisms**(1) 150:9 | | | | **describe**(6) 79:4 86:12 91:23 95:23 104:20 126:21 |
| | | **criticize**(1) 97:8 | | | | |
| | | **criticized**(1) 222:10 | | | | |
| | | **cross**(12) 13:11 49:8 49:12 53:5 54:21 59:22 72:1 78:19 133:4 223:16 223:20 230:2 | | **debt-equity**(4) 102:21 118:22 119:1 121:2 | | **described**(19) 27:15 31:3 66:2 72:16 77:24 80:13 102:23 106:16 126:7 138:13 147:7 175:16 176:16 182:21 199:2 205:6 206:20 219:3 227:20 |
| | | | | **debt-to-capital**(1) 102:20 | | |
| | | | | **debtors**(2) 1:12 1:25 | | |
| | | **cross-examination**(5) 132:13 208:12 211:6 219:10 220:15 | | **debts**(5) 40:5 40:9 112:8 127:16 218:21 | | **describing**(1) 191:16 |
| | | | | **december**(37) 89:21 92:9 92:15 92:25 93:5 93:23 94:3 108:1 108:10 126:12 126:22 126:23 127:8 127:16 128:18 129:15 156:4 156:21 172:5 172:12 172:18 173:4 173:7 173:12 173:17 173:23 187:19 190:20 194:5 195:24 201:6 210:20 215:6 215:12 216:2 220:13 221:14 | | **description**(3) 45:22 185:11 191:15 |
| | | **cubs**(18) 25:3 34:15 35:9 36:18 36:22 57:23 57:25 58:15 58:18 59:9 59:13 59:1 59:14 123:23 130:4 130:4 130:6 130:18 | | | | **designed**(1) 53:6 |
| | | | | | | **desirability**(1) 122:25 |
| | | | | | | **desk**(1) 225:18 |
| | | | | | | **details**(1) 74:8 |
| | | **cull**(2) 67:7 67:8 | | | | **deterioration**(1) 220:11 |
| | | **current**(6) 21:9 84:12 84:19 105:4 193:13 193:20 | | **decide**(8) 38:9 62:24 77:5 80:25 81:1 81:2 182:8 225:2 | | **determination**(1) 142:20 |
| **couldn't**(5) 43:1 64:17 152:13 217:2 217:4 | | | | | | **determine**(3) 151:10 200:2 207:17 |
| **counsel**(6) 27:24 55:5 58:21 133:9 176:19 226:14 | | | | **decided**(4) 38:11 39:8 47:8 47:19 48:11 166:12 173:12 227:7 | | **determines**(1) 183:21 |
| | | **current-enterpris**(1) 105:4 | | | | **determining**(2) 16:6 97:3 |
| | | **currently**(2) 82:22 83:2 | | **deciding**(2) 48:1 101:10 | | **deutsch**(2) 3:13 6:8 |
| **count**(7) 30:20 30:23 116:4 116:6 116:19 117:7 218:23 | | **cushion**(10) 15:4 40:12 47:1 48:15 48:18 66:1 69:18 76:25 77:8 125:9 | | **decision**(14) 27:14 46:7 46:8 51:24 51:25 52:2 75:8 92:13 92:22 96:9 129:16 182:5 206:17 220:22 | | **deutsche**(1) 11:13 |
| | | | | | | **developed**(4) 21:4 21:23 60:7 86:19 |
| **counted**(4) 16:3 32:12 38:24 56:25 | | **cutler**(1) 7:9 | | | | **development**(1) 62:23 |
| **counterparty**(5) 19:19 19:21 35:24 36:5 36:6 | | **cutting**(1) 207:12 | | **decisions**(2) 212:15 219:16 | | **devine**(2) 142:9 142:15 |
| | | | | **declaration**(1) 44:25 | | **dewey**(1) 4:12 |
| **country**(3) 44:3 83:21 88:3 | | **daniel**(8) 3:20 4:23 7:22 7:24 82:1 82:7 82:17 230:8 | | **decline**(12) 40:24 41:1 41:2 46:12 93:2 147:9 147:12 147:13 147:14 147:25 148:7 156:1 | | **diamond**(1) 8:5 |
| **counts**(2) 117:6 117:8 | | | | | | **diaz**(1) 1:42 |
| **couple**(9) 63:4 63:24 70:3 98:12 111:25 154:3 187:1 211:9 222:18 | | **darn**(1) 122:15 | | **declines**(1) 94:11 | | **dichotomy**(1) 212:15 |
| | | **darryl**(1) 185:6 | | **decrease**(2) 124:23 164:4 | | **dictate**(1) 193:12 |
| **coupons**(1) 202:17 | | **dash**(1) 214:18 | | **deductions**(2) 19:19 19:20 | | **did**(171) 13:19 13:24 14:2 14:6 14:8 15:1 15:22 16:16 17:25 18:24 19:25 25:1 28:19 29:18 30:22 30:25 33:13 36:17 38:4 39:6 39:21 39:22 40:7 42:24 43:18 43:23 46:14 48:1 48:5 48:6 48:22 49:1 49:4 50:5 56:9 56:24 58:17 59:8 62:12 62:15 63:6 63:10 65:8 65:21 66:15 66:16 66:17 66:18 66:20 68:9 69:21 69:23 69:24 70:18 72:11 72:13 75:16 78:18 86:22 92:16 93:11 97:8 97:10 98:8 98:10 98:13 98:18 101:2 101:11 101:16 101:22 101:25 103:4 103:15 104:2 104:12 105:15 105:17 107:25 108:8 108:12 110:23 112:25 117:4 119:4 120:4 120:8 120:10 120:16 121:18 121:20 121:24 125:14 125:14 126:14 126:15 127:7 127:13 127:15 127:17 127:18 128:14 128:16 129:14 130:1 130:4 132:2 132:3 132:4 132:5 133:16 141:19 142:7 143:22 144:3 144:7 146:3 146:5 147:21 149:9 149:19 150:22 151:3 151:9 151:24 152:3 161:6 165:18 169:15 169:15 169:19 169:21 169:24 170:14 174:20 175:9 175:25 176:11 178:6 180:16 183:8 186:9 186:10 186:19 186:20 189:10 190:2 190:4 191:11 196:9 196:17 198:23 198:23 199:11 201:15 203:7 203:9 205:22 206:14 210:19 210:20 210:24 212:8 212:19 213:18 217:24 221:10 228:25 |
| **couri**(1) 11:32 | | | | **deemed**(1) 26:17 | | |
| **course**(7) 36:15 79:23 85:12 148:20 185:15 225:2 226:14 | | **data**(17) 1:42 90:7 90:8 90:8 90:16 96:14 105:23 127:5 127:5 146:8 215:12 220:5 221:17 225:14 225:21 226:12 | | **deeply**(1) 38:10 | | |
| | | | | **default**(9) 64:20 64:25 97:12 97:18 116:15 189:5 186:16 198:20 198:21 | | |
| **courses**(9) 85:7 85:9 85:14 85:16 85:18 86:4 86:7 86:10 87:18 | | **date**(12) 38:16 92:17 94:2 153:7 177:10 180:25 187:18 189:2 192:17 192:22 195:23 229:15 | | | | |
| | | | | **defaulted**(2) 116:17 198:17 | | |
| **court**(106) 1:1 13:3 13:5 13:9 23:3 23:23 24:1 26:11 26:12 27:9 28:19 29:13 29:17 32:2 39:13 45:10 46:11 48:18 49:7 49:12 53:4 53:8 53:10 53:13 54:16 54:21 54:24 79:13 79:19 81:7 81:9 81:16 81:19 81:21 81:21 82:3 82:9 82:13 83:11 86:25 87:15 89:11 90:20 90:22 91:12 91:14 91:23 93:21 96:2 97:22 98:24 106:13 122:15 132:8 132:13 132:17 132:19 132:24 133:2 135:21 135:24 136:4 136:9 143:17 146:25 147:5 151:2 153:14 156:8 156:11 158:25 159:5 167:10 173:25 187:3 187:5 187:9 207:25 208:3 208:6 208:7 208:10 208:12 208:14 211:20 221:3 222:14 222:3 223:5 223:8 223:12 224:7 224:10 225:7 226:6 226:21 227:5 227:17 227:23 228:3 228:9 228:14 228:19 228:25 229:4 229:5 | | **dated**(7) 154:18 159:20 182:25 183:14 190:20 194:6 202:6 | | **defenses**(1) 69:16 | | **definitive**(1) 14:10 |
| | | | | **defer**(1) 21:14 | | **degree**(3) 43:15 86:18 126:10 |
| | | | | **deference**(1) 95:17 | | **degrees**(2) 83:17 83:18 |
| | | **dates**(3) 94:1 154:5 229:1 | | **define**(3) 19:7 133:21 133:24 | | **delaware**(6) 1:2 1:12 1:36 5:26 5:33 13:1 |
| | | **david**(10) 2:37 2:44 3:6 3:35 4:22 5:19 8:28 9:30 11:21 11:43 | | **defined**(1) 26:18 | | **demand**(2) 96:23 164:6 |
| **courtesy**(1) 83:3 | | | | **defining**(1) 136:19 | | **demo**(1) 8:9 |
| **courtney**(1) 10:23 | | **davis**(6) 2:4 8:32 10:4 81:25 89:15 208:16 | | **definition**(7) 116:19 116:23 117:3 134:3 134:8 137:22 141:21 | | **demonstrates**(4) 92:2 94:19 95:6 99:1 |
| **courtroom**(1) 1:10 | | **day**(7) 3:41 12:33 23:1 23:6 27:15 185:12 225:8 | | | | |
| **courts**(2) 87:13 87:15 | | | | | | |
| **covenant**(2) 183:3 183:19 | | **days**(2) 187:21 194:8 | | | | |
| | | **dbtca**(1) 2:42 | | | | |
| | | **dcf**(24) 65:8 98:16 99:3 104:7 104:9 106:22 113:3 120:13 143:23 144:12 144:24 145:17 151:16 151:22 155:8 158:4 159:2 160:22 161:2 161:11 161:17 169:24 176:9 193:11 | | | | |

| Word | Page:Line |
|---|---|

didn't(33) 17:11 24:18 28:5 28:11 31:19 42:20 42:25 43:1 43:15 43:22 70:19 71:2 79:24 145:23 146:17 148:4 149:13 155:25 169:23 171:1 175:5 175:17 176:8 186:3 189:14 196:4 203:6 203:6 203:8 207:16 209:10 209:22 218:17

didn't(5) 97:1 104:3 108:6 139:18 164:3
difference(11) 15:17 40:21 56:16 64:3 64:4 68:17 116:1 161:21 161:24 164:3 173:14
differences(7) 61:1 68:13 68:23 101:9 113:12 185:25 196:21

different(53) 14:19 35:13 59:16 59:21 60:2 61:5 67:23 67:22 71:25 72:12 76:20 83:10 90:7 95:18 102:5 103:2 105:23 106:4 106:15 113:15 113:23 117:13 117:17 117:18 118:16 119:4 119:7 119:21 125:17 127:20 131:10 136:25 136:25 137:4 137:4 145:12 145:12 154:4 172:17 172:17 174:1 195:14 195:14 209:9 210:14 212:12 214:11 214:17 218:10 218:14 219:1 219:6 219:23

differs(1) 34:11
difficult(4) 107:23 131:23 192:14 194:23
difficulties(1) 208:23
dilworth(1) 187:15
dimon(1) 192:15
dip(4) 111:16 111:18 111:20 128:25
dire(2) 82:20 230:2
direct(36) 20:2 21:12 23:4 49:20 69:11 72:16 79:5 89:12 132:20 138:14 139:5 140:13 144:19 147:18 149:25 150:13 170:10 176:20 184:22 193:1 198:19 204:1 205:20 218:1 223:1 230:2
directly(3) 29:22 155:22 166:19
director(11) 51:12 51:12 52:1 141:7 141:8 141:17 177:14 182:22 185:9 187:17 195:23
directors(2) 3:41 157:17
disagree(8) 26:22 35:21 131:25 135:4 137:22 155:9 155:10 227:5

disagreed(1) 129:23
disagreeing(1) 215:8
disagrees(1) 140:14
disappear(1) 124:20

discount(36) 39:5 98:18 99:6 100:6 100:17 102:8 102:15 103:8 104:8 108:3 114:9 114:11 114:12 114:13 114:19 114:22 114:24 115:4 115:5 115:7 117:21 117:25 118:1 118:2 118:13 118:19 120:22 132:3 145:1 145:12 146:10 147:19 158:12 158:1 158:15 158:18

discount-rate(1) 100:19
discounted(6) 38:10 39:4 39:13 65:9 99:3 190:19

discounted-cash-flow(2) 104:22 112:18
discounts(2) 108:9 108:11
discover(1) 64:17
discrete(1) 25:5
discretionary(1) 109:20
discuss(2) 94:24 206:5
discussed(11) 15:1 33:16 33:16 69:11 79:5 104:10 120:5 172:15 180:19 201:17 217:7

discusses(1) 203:4
discussion(8) 28:2 74:8 185:24 203:5 211:24 216:24 217:3 227:14

discussions(2) 93:13 196:12
disgorgement(4) 74:13 74:22 74:22 75:5
dispose(5) 19:17 22:9 24:22 24:24 25:2 25:3 25:8 25:15 25:23

disposed(2) 25:5 27:3
disposition(29) 18:18 18:21 19:7 19:22 20:10 21:7 23:10 25:17 26:11 26:13 27:1 28:2 28:19 28:22 29:18 30:5 30:6 30:14 30:17 33:1 33:6 33:20 34:20 34:23 35:17 39:11 56:18 59:15 59:17

dispositions(2) 34:13 36:25
dispositive(1) 200:9
dispute(2) 76:2 112:20
disputes(1) 83:10
disregarding(1) 119:5
distress(2) 206:6 207:14
distressed(3) 198:1 198:6 198:7
distributed(1) 170:4
diversified(1) 74:18
divorced(1) 213:6
doctrinal(1) 74:18
document(48) 123:25 129:11 148:19 151:5 153:1 154:17 156:16 156:23 158:3 159:1 159:22 160:13 167:14 167:24 168:2 173:7 177:8 177:25 178:9 178:15 179:12 180:10 180:24 181:20 183:5 183:8 184:3 186:24 188:24 190:1 190:8 190:23 191:2 191:24 192:1 192:3 192:5 192:15 193:3 194:9 203:5 203:5 206:10 208:19 208:22 209:9 210:2 227:4

documentary(1) 94:21
documents(16) 89:25 150:18 150:20 151:4 153:1 155:23 170:3 185:23 188:24 188:25 203:1 219:6 219:15 225:22 227:2 227:19

does(24) 66:24 67:17 93:3 113:9 118:4 118:6 121:8 123:11 150:4 150:5 157:15 167:23 173:20 174:16 179:4 183:22 184:3 189:20 191:21 203:4 210:16 210:18 224:1 224:24

doesn't(12) 18:3 18:3 24:21 29:3 29:8 46:15 156:2 161:21 161:24 190:10 225:14 228:23

doesn't(8) 66:25 110:8 110:9 114:7 117:7 118:3 118:25 122:11
doing(16) 63:20 63:22 80:25 94:25 110:18 127:19 138:22 138:23 139:12 140:15 159:13 178:7 179:25 180:8 187:2 190:11
dollars(16) 50:18 61:14 61:21 61:22 109:17 114:3 116:2 116:4 116:6 116:11 116:18 116:20 133:15 169:8 169:12 174:2

don(1) 2:24
don't(63) 14:21 17:7 22:11 27:16 27:25 30:4 32:14 33:23 36:11 36:12 43:1 44:21 47:23 50:25 52:23 54:12 58:21 67:25 75:3 78:11 78:15 134:11 134:14 138:7 139:11 141:11 142:10 145:21 148:3 148:5 148:21 150:6 152:17 152:19 153:5 153:18 155:10 157:7 157:9 160:1 167:2 168:4 171:16 171:21 172:16 172:20 173:9 173:14 179:2 183:20 184:18 191:5 191:10 192:19 195:7 196:4 205:7 206:24 211:5 211:9 227:5 228:3

donald(1) 2:7
done(12) 16:20 62:20 117:12 141:1 167:1 170:15 200:8 208:7 216:2 221:16 224:4 228:12
don't(14) 95:10 98:5 109:22 116:6 116:19 117:10 117:21 119:6 121:3 121:14 121:21 134:19 141:11 174:13

dorr(1) 7:10
dotted(1) 214:7
double-counting(1) 169:7
doubts(1) 210:4
dougherty(2) 9:4 9:5

douglas(2) 3:13 6:8
down(37) 60:16 61:19 64:7 64:9 64:14 64:15 64:16 65:2 67:9 68:10 68:16 68:20 68:24 69:6 69:7 69:9 73:2 73:3 73:4 73:20 73:24 81:12 109:12 114:5 123:9 129:1 160:5 164:5 164:6 165:10 165:15 167:19 169:4 175:15 181:21 194:17 222:1

downgrade(2) 96:16 178:23
downside(78) 40:10 40:13 40:16 40:17 40:17 40:18 40:19 40:20 40:22 40:22 40:23 40:25 41:4 41:7 41:11 41:17 41:22 41:25 42:6 44:9 45:17 46:16 46:24 46:24 47:5 48:2 52:25 64:6 64:7 64:14 64:14 65:3 65:4 65:5 65:9 65:10 65:10 65:15 65:17 65:18 110:20 110:21 110:24 111:12 111:15 111:17 111:24 112:3 112:4 112:8 121:23 122:21 122:21 123:5 125:7 125:7 125:12 125:12 125:16 125:16 125:19 125:20 127:21 127:22 128:10 128:21 189:3 191:11 203:13 203:16 204:9 205:15 210:6 210:17 210:19 217:23

downturn(3) 40:14 41:6 131:6
downward(2) 68:19 104:5
dozens(1) 88:25
draft(2) 27:25 28:1 71:12 192:14
drafts(1) 27:23
drag(1) 13:18
draw(1) 53:22 109:18
drawing(1) 207:8
drew(1) 199:6
drill(1) 171:7
driver(5) 15:6 15:9 15:11 15:15 69:12
drivers(6) 15:10 69:12 69:14 69:15 69:23 70:12

driving(1) 70:8
drop(1) 68:16
dropped(2) 18:8 46:1
ducayet(21) 1:28 23:20 23:25 24:3 24:4 24:9 31:17 54:25 55:3 58:24 59:1 59:2 66:22 66:25 67:3 67:5 67:12 78:5 79:14 79:18 80:8

due(8) 47:8 112:8 116:14 116:14 116:9 201:16 202:12 218:21
duff(11) 12:12 101:18 153:7 153:16 154:3 154:6 156:4 156:14 156:20 157:3 160:19

during(10) 22:8 24:14 52:15 78:19 79:22 105:25 136:10 170:10 211:6 215:6
duty(3) 50:6 50:7 51:11
each(10) 14:24 18:24 18:25 18:25 54:5 61:9 76:22 101:8 103:17 175:17

earlier(10) 16:15 18:14 36:17 46:10 93:5 95:3 104:10 182:4 196:12 209:10
early(3) 39:6 66:7 228:10
easiest(1) 144:18
east(1) 12:8
easterbrook(3) 29:1 87:6 87:9
easy(3) 24:11 55:23 195:2
eat(1) 75:15
ebita(2) 155:19 175:3
ebitda(16) 100:2 100:12 100:13 102:11 103:14 103:19 105:1 105:2 105:5 105:7 105:14 103:14 106:3 106:7 113:14 113:17

economic(23) 52:25 85:12 87:6 88:8 90:7 90:8 92:2 92:11 92:20 94:18 94:22 116:3 116:20 131:11 134:3 134:8 138:13 150:20 166:20 186:2 206:13 218:22 220:18

economics(18) 71:8 82:24 83:8 83:10 83:20 84:9 84:10 85:3 85:6 85:14 86:5 86:5 86:15 86:19 86:20 87:10 115:21 139:16

economists(3) 215:5 215:13 215:17
economy(1) 131:6
economy-wide(2) 93:2 131:3
ecro(1) 1:40
educational(2) 86:12 102:5
effect(7) 16:5 42:14 61:20 69:3 79:7 123:4 131:5

effective(1) 83:6
effectively(5) 19:15 19:18 26:5 36:23 55:25
effects(1) 164:7
effectuate(1) 34:12
effort(1) 59:11
egi(4) 49:15 52:6 54:1 199:18
egi-trb(6) 2:29 53:24 54:3 54:7 54:12
ehmer(1) 6:39
eight(4) 104:18 145:4 158:13 158:18
eight-and-a-quarter(1) 145:2
eighty-five(1) 163:4
eitan(1) 6:39
either(14) 14:11 18:3 30:14 33:21 52:17 57:6 57:18 61:17 64:24 73:1 74:13 93:4 155:10 218:7

elden(1) 9:4
eldersveld(1) 8:28
electronic(2) 1:48 229:10
electronics(1) 136:10
element(1) 32:13
eliminate(1) 207:5
eliminated(3) 102:2 102:3 171:5
eliminating(1) 113:16
elimination(1) 113:17
elizabeth(1) 8:40
elkins(1) 10:10
elliot(1) 2:5
else(4) 71:2 134:12 218:17 225:10
email(42) 148:15 177:9 177:9 177:14 178:14 178:16 178:24 179:4 179:13 182:20 182:25 183:13 183:24 184:1 185:4 185:5 185:11 185:12 185:16 185:17 185:21 185:23 186:8 186:14 187:15 187:16 187:18 187:24 190:19 195:19 195:20 195:22 196:10 196:11 202:5 202:22 211:11 211:12 211:13 216:24 217:13 217:17

emails(8) 13:24 184:13 186:4 200:12 202:12 211:1 211:4 217:1

emeritus(2) 83:1 84:21
emphasis(1) 150:16
emphasized(1) 95:5
employed(2) 82:23 82:24
employee(2) 19:13 129:6
employees(1) 83:13
encountered(1) 167:3
end(28) 20:16 20:23 22:18 64:23 65:24 68:7 71:23 72:25 73:10 73:12 73:17 83:6 109:25 124:21 129:2 129:2 129:4 146:11 146:13 152:23 152:24 185:19 186:16 207:2 214:24 224:21 227:12 228:12

ended(1) 170:20
ending(2) 109:24 172:11
ends(2) 22:19 62:6
enforce(1) 61:13
engagement(1) 133:17
english(1) 2:14
enough(9) 41:10 41:12 75:1 111:21 123:12 134:8 138:23 180:8 182:10

enron(1) 84:4
ensure(1) 30:18
enter(2) 36:24 48:23
entered(1) 51:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| enterprise(14) 72:3 72:7 72:17 73:13 103:13 105:1 155:18 161:7 169:25 175:3 212:13 212:17 213:10 214:21 | | even(26) 46:1 48:24 53:8 63:23 65:13 74:6 75:17 96:8 98:5 112:6 116:17 116:20 122:23 123:18 125:7 125:20 125:21 129:4 192:2 196:21 212:22 213:8 215:14 225:8 225:14 228:16 | | excerpts(6) 31:7 31:11 32:15 143:13 211:9 228:2 | | explanatory(1) 131:3 | |
| entertainment(1) 45:18 | | | | excess(1) 194:18 | | explore(3) 18:15 40:12 164:15 | |
| entire(2) 84:8 169:24 | | | | exchange(4) 88:11 88:14 185:4 187:15 | | explored(1) 40:8 | |
| entities(2) 57:23 83:24 | | event(1) 173:14 | | exchangeable(3) 55:20 56:2 109:23 | | exposure(4) 181:7 181:8 181:15 184:9 | |
| entitled(5) 95:16 139:24 167:10 167:16 194:10 | | events(1) 173:14 | | exchanges(1) 88:15 | | expressed(2) 182:14 196:14 | |
| | | eventual(1) 92:25 | | excluded(1) 105:10 | | expressing(1) 210:2 | |
| entity(9) 29:8 95:9 96:6 96:13 96:21 96:22 129:25 142:3 184:18 | | eventually(2) 94:3 182:9 | | excluding(1) 175:16 | | extensive(3) 223:16 226:4 227:7 | |
| | | ever(5) 62:22 88:23 94:15 116:17 141:20 | | exclusive(1) 184:12 | | extensively(3) 87:19 87:21 88:1 | |
| entries(2) 105:13 212:12 | | every(9) 53:5 101:21 109:2 110:3 110:7 116:13 131:25 175:25 209:18 | | excuse(2) 45:8 135:16 | | extent(8) 34:4 34:15 35:15 203:7 207:3 220:11 227:10 228:19 | |
| entry(2) 109:8 109:9 | | | | excused(1) 222:16 | | | |
| eos(2) 10:26 10:26 | | everything(5) 81:10 128:14 128:15 196:22 205:22 | | executing(1) 179:25 | | extra(2) 58:3 124:19 | |
| ephraim(1) 8:5 | | | | exercise(2) 110:3 173:16 | | extraordinary(1) 96:11 | |
| equally(1) 116:6 | | | | exhibit(124) 31:5 66:24 67:2 90:11 90:15 90:23 91:7 91:16 91:18 93:17 98:23 98:25 99:12 100:8 101:18 102:9 102:14 104:15 104:15 105:18 106:11 106:14 106:18 107:21 108:21 108:23 109:6 110:4 110:16 112:5 112:15 113:3 113:7 115:10 117:15 118:6 118:17 120:23 121:22 121:25 122:19 122:1 124:15 124:16 125:10 127:9 128:7 128:13 129:18 135:12 144:9 144:11 144:21 144:21 145:15 145:25 146:2 148:2 151:15 151:17 152:8 153:12 153:25 154:18 156:8 156:9 159:14 162:7 162:20 163:9 164:12 165:3 167:7 168:9 168:13 171:24 172:2 172:22 174:14 174:19 177:5 177:7 177:7 178:8 178:13 179:8 179:10 180:22 182:19 183:11 185:1 185:2 187:13 190:17 192:13 194:4 195:18 197:3 197:9 200:25 201:2 201:5 202:4 203:19 203:25 204:2 204:5 204:18 205:11 205:21 206:4 209:1 209:13 209:15 213:19 213:21 213:2 214:1 219:11 226:15 226:15 227:16 230:13 | | extreme(2) 73:4 202:17 | |
| equation(2) 26:9 39:15 | | | | | | extrinsic(1) 64:18 | |
| equipoise(1) 74:19 | | | | | | f-i-s-c-h-e-l(1) 82:18 | |
| equitable(4) 69:19 74:7 74:16 75:18 56:1 56:12 103:2 103:2 103:3 106:25 107:4 107:19 107:24 108:2 109:23 114:15 114:21 114:22 114:23 115:5 119:20 121:4 121:10 130:14 144:13 161:14 161:18 164:1 164:6 188:7 189:22 200:2 200:19 | | | | | | face(9) 37:9 37:23 39:14 166:13 166:16 166:21 167:25 191:23 191:25 | |
| equity(34) 17:25 37:21 38:18 38:19 39:19 | | evidence(83) 28:7 47:11 48:17 51:14 51:17 51:19 52:1 52:4 52:11 52:16 52:18 64:18 64:25 87:20 90:2 90:23 91:14 92:10 92:12 92:20 93:12 94:18 94:21 94:22 94:23 95:5 95:5 95:6 95:14 95:15 95:21 96:4 97:5 126:7 126:17 126:22 148:8 150:13 150:17 150:21 154:12 154:15 155:22 156:2 159:3 161:24 176:24 178:1 178:4 179:1 180:12 181:17 181:19 182:4 182:13 183:16 184:18 184:19 184:20 184:23 186:6 188:20 189:22 191:3 195:10 197:4 197:5 197:16 199:13 199:14 199:23 200:6 200:8 206:13 217:12 217:20 219:18 219:23 220:3 220:4 220:18 221:15 227:18 | | | | facility(4) 169:5 181:12 181:13 224:24 | |
| | | | | | | facing(1) 206:6 | |
| equivalence(3) 105:12 168:25 172:4 | | | | | | fact(24) 24:24 48:16 50:10 51:19 52:21 53:18 53:23 56:24 57:25 66:18 71:12 93:2 113:19 113:25 114:16 129:9 130:16 143:9 154:10 157:22 174:22 199:25 201:22 205:23 210:4 212:12 214:23 224:5 | |
| equivalency(1) 168:22 | | | | | | | |
| error(6) 62:1 116:3 116:9 116:25 130:18 169:7 | | | | | | factor(2) 23:17 180:16 | |
| | | | | | | factored(2) 209:11 209:14 | |
| errors(2) 59:9 92:10 | | evidentiary(4) 227:7 227:12 227:21 228:16 | | | | factors(1) 177:3 | |
| esop(39) 17:24 19:8 19:12 19:13 21:18 21:20 21:21 27:4 27:20 27:21 29:21 32:1 33:11 34:1 34:1 34:5 57:14 112:23 113:6 114:15 115:11 118:4 119:3 119:6 119:8 120:2 121:1 130:9 130:11 130:19 139:8 140:15 142:4 153:20 153:22 167:11 218:25 219:2 | | exact(6) 38:16 47:16 108:9 108:10 127:7 188:13 | | | | facts(4) 62:24 71:19 167:10 176:6 | |
| | | | | exhibits(12) 82:12 106:20 120:20 127:25 131:13 131:15 132:15 148:12 225:20 226: 226:25 227:15 | | factual(1) 59:9 | |
| | | exactly(17) 40:11 79:11 102:24 107:23 108:20 111:6 111:10 119:1 119:9 126:16 131:14 137:24 167:2 181:22 218:24 219:3 227:3 | | | | faculty(1) 86:21 | |
| | | | | | | failed(1) 217:14 | |
| | | | | | | failing(2) 54:14 193:14 | |
| esops(5) 85:16 86:6 87:23 139:24 140:3 | | exam(1) 34:22 | | exist(2) 113:12 190:4 | | fair(23) 14:16 26:22 27:1 27:3 32:13 35:14 35:18 41:13 79:10 115:20 131:24 136:23 137:1 137:9 137:15 137:19 137:23 140:9 141:21 141:24 142:20 161:13 215:1 | |
| especially(2) 16:12 78:25 | | examination(10) 13:11 49:13 54:22 55:2 59:22 79:20 89:12 133:4 208:17 221:6 | | existed(1) 98:11 | | | |
| esq(128) 1:26 1:27 1:28 1:35 2:5 2:6 2:7 2:8 2:9 2:10 2:16 2:17 2:24 2:30 2:31 2:37 2:43 2:44 3:6 3:7 3:8 3:9 3:10 3:11 3:12 3:13 3:19 3:20 3:26 3:27 3:28 3:35 3:42 4:6 4:13 4:14 4:15 4:22 4:23 4:24 4:25 4:31 4:39 4:40 5:5 5:13 5:19 5:25 5:32 6:6 6:8 6:10 6:12 6:14 6:18 6:19 6:20 6:21 6:25 6:29 6:31 6:33 6:39 6:44 7:6 7:11 7:13 7:18 7:22 7:24 7:28 7:32 7:36 7:38 7:42 8:5 8:9 8:11 8:13 8:15 8:17 8:20 8:22 8:24 8:28 8:32 8:34 8:36 8:38 8:40 8:45 9:5 9:13 9:17 9:19 9:24 9:28 9:30 9:32 9:34 9:38 10:5 10:7 10:11 10:15 10:23 10:27 10:31 10:36 10:40 10:44 11:5 11:10 11:19 11:21 11:23 11:27 11:32 11:36 11:41 11:43 12:5 12:21 12:27 12:21 12:25 12:30 12:34 | | | | existing(1) 202:13 | | fairchild(1) 86:24 | |
| | | examine(3) 190:3 212:9 | | exists(1) 95:17 | | fairly(6) 42:22 88:6 128:15 131:2 131:14 223:16 | |
| | | examined(1) 90:2 | | exit(1) 152:4 | | | |
| | | examiner(58) 30:10 30:16 30:21 30:25 31:4 31:4 32:23 33:10 34:10 34:23 56:8 56:10 57:9 57:14 57:22 58:2 59:4 59:8 59:12 63:7 63:10 63:13 69:6 69:6 71:20 74:12 76:13 77:5 80:11 80:15 80:15 80:17 80:20 81:1 81:2 81:3 81:4 108:3 108:6 108:9 108:12 117:4 117:5 117:11 119:5 120:2 120:25 124:12 129:24 130:6 140:13 141:23 149:16 149:18 203:3 210:25 211:1b 228:1 | | expand(1) 182:4 | | faith(2) 52:10 52:12 | |
| | | | | expect(7) 43:11 96:12 96:17 183:1 183:2 186:3 224:2 | | fall(2) 28:12 84:17 | |
| essential(1) 57:4 | | | | | | falls(1) 94:13 | |
| establish(2) 36:17 93:3 | | | | | | false(1) 38:2 | |
| established(3) 45:14 46:10 173:23 | | | | expectation(1) 215:3 | | faltas(2) 9:8 9:9 | |
| estate(2) 36:23 225:2 | | | | expectations(2) 65:19 213:14 | | familiar(5) 67:17 78:6 135:3 136:22 148:5 181:15 213:7 227:11 228:11 | |
| esther(1) 7:8 | | | | expected(8) 15:6 22:17 75:21 80:17 113:22 215:6 215:13 215:19 | | | |
| estimate(23) 15:25 17:5 17:13 17:14 17:16 18:23 49:24 57:3 57:4 57:4 57:7 58:9 58:12 58:13 65:4 72:8 72:18 75:21 80:14 80:16 81:3 108:2 108:13 | | examiner's(27) 33:14 36:2 57:4 57:12 58:13 58:18 58:16 58:17 58:22 58:23 59:11 74:4 74:10 80:22 140:22 196:5 216:19 216:22 217:3 217:4 217:5 221:11 221:12 221:18 221:21 221:23 222:6 | | | | far(9) 36:18 39:23 44:15 73:20 106:10 181:15 213:7 227:11 228:11 | |
| | | | | expenditures(3) 124:23 129:6 207:5 | | fargo(1) 11:35 | |
| estimated(8) 14:18 18:24 20:7 105:2 105:7 105:8 105:14 105:14 | | examiners(1) 57:20 | | expense(1) 113:16 | | fashion(2) 35:13 141:21 | |
| | | examiner's(9) 90:6 92:8 108:4 115:13 129:24 130:2 130:3 130:8 130:21 | | expenses(2) 207:5 207:6 | | favor(1) 67:6 | |
| | | | | experience(1) 50:24 | | favoring(2) 76:15 76:16 | |
| estimated-2008(1) 105:5 | | examining(1) 27:9 | | expert(28) 10:30 14:9 20:3 27:22 50:25 51:2 64:12 64:13 64:24 84:8 84:11 88:9 88:16 88:23 89:8 95:3 124:10 133:20 143:9 150:25 153:24 154:10 157:23 168:3 168:5 197:12 223:14 223:18 | | fcc(1) 183:20 | |
| estimates(7) 46:21 64:2 65:2 108:5 108:8 111:8 111:8 | | example(6) 57:2 76:22 76:25 77:4 78:12 207:12 | | | | feasibility(1) 123:1 | |
| | | | | | | february(5) 40:16 41:18 44:12 63:15 66:7 | |
| | | exceeds(2) 38:8 193:15 | | | | fed(1) 60:2 | |
| | | excellent(1) 69:2 | | expertise(5) 51:5 83:22 143:14 146:23 149:12 | | federal(9) 88:1 88:13 113:21 114:2 114:3 117:23 118:8 120:22 215:11 | |
| | | except(2) 145:18 202:17 | | | | | |
| | | exception(3) 132:22 170:21 221:16 | | experts(1) 95:9 | | feel(5) 128:15 128:18 128:20 185:15 226:3 | |
| | | excerpt(5) 124:10 135:9 139:23 142:14 142:18 | | expired(1) 21:6 | | feld(2) 4:21 9:16 | |
| | | | | explain(30) 55:16 70:21 92:6 93:21 96:2 97:22 98:24 99:12 99:17 100:4 100:6 101:1 102:14 103:11 105:20 106:12 107:1 107:18 107:22 108:22 109:6 110:17 112:1 112:25 114:13 117:17 128:12 129:22 214:5 219:13 | | felt(1) 47:17 | |
| | | | | | | few(8) 31:11 49:19 55:4 79:22 80:1 80:9 187:21 224:24 | |
| | | excerpting(1) 32:22 | | explained(2) 135:1 188:25 | | fiduciary(3) 50:6 50:7 51:11 | |
| | | | | explains(2) 35:9 174:19 | | field(1) 134:22 | |
| | | | | explanation(3) 67:24 69:9 184:16 | | fifth(1) 102:1 | |
| | | | | | | fifty(1) 174:24 | |
| | | | | | | figure(3) 21:13 135:25 | |
| | | | | | | figuring(1) 14:16 | |
| | | | | | | filed(5) 55:8 66:6 91:5 167:9 172:11 | |
| | | | | | | files(1) 211:13 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**filing(9)** 72:9 72:18 73:3 73:7 73:14 73:18 73:19 73:25 92:25

**filter(1)** 175:23

**final(2)** 108:5 111:23

**finally(1)** 96:19

**finance(8)** 49:2 85:10 85:22 177:15 182:25 185:10 187:17 192:16

**financial(17)** 38:5 56:13 66:16 66:19 71:8 84:9 84:10 85:11 87:11 89:9 155:19 166:19 196:16 206:6 207:13 221:10 222:6

**find(10)** 31:7 48:19 58:6 74:18 76:23 76:24 111:15 167:6 177:7 221:19

**finding(1)** 67:10

**fine(2)** 177:23 223:7

**finger(1)** 2:15

**finish(1)** 49:9

**finished(1)** 228:16

**fire(2)** 36:11 36:16

**firm(9)** 82:24 83:8 84:7 84:8 89:15 142:8 142:12 195:20 202:19

**firms(12)** 83:24 155:15 155:17 196:16 196:21 212:14 212:18 213:3 213:8 213:15 214:23 219:16

**first(50)** 19:6 32:4 34:8 34:8 40:8 43:25 44:10 45:22 47:25 55:5 57:16 63:4 63:11 63:19 78:19 84:6 85:20 86:24 92:1 94:24 95:2 103:16 103:17 106:18 112:13 113:3 113:14 114:7 120:21 125:18 140:1 177:16 183:16 183:25 188:4 189:2 189:23 190:23 194:9 195:3 196:10 198:5 199:14 206:3 208:10 218:9 219:10 220:19 221:24 223:1

**first-quarter(1)** 189:12

**fischel(26)** 82:2 82:7 82:17 82:22 89:8 89:14 91:18 94:24 97:20 126:1 129:18 130:23 133:6 133:14 136:13 143:17 143:15 158:23 179:20 208:19 215:25 216:20 220:14 220:24 222:15 230:8

**fischel's(1)** 90:19

**five(13)** 32:20 41:1 43:25 49:7 49:9 63:22 63:23 63:25 64:16 64:25 99:11 101:24 120:24 132:8 170:19

**five-minute(1)** 208:2 208:3

**flat(1)** 40:25

**flaw(2)** 70:14 76:6

**flawed(1)** 92:10

**flexibility(1)** 224:13

**flip(1)** 141:22

**flipping(2)** 144:16 163:15

**float(3)** 227:3

**floor(2)** 4:8 4:34

**flow(36)** 15:2 15:3 16:12 16:14 18:21 28:16 28:17 28:20 29:14 29:14 29:19 30:7 33:7 33:9 33:13 36:1 40:12 43:17 44:17 44:24 45:15 46:25 47:1 47:10 48:15 48:18 56:18 61:24 65:9 66:1 69:15 69:17 69:18 76:24 77:8 114:1

**flows(2)** 100:8 132:5

**focus(9)** 85:20 94:22 107:25 138:3 162:12 164:21 172:3 178:16 179:14

**focused(4)** 85:5 135:2 186:21 216:5

**focusing(8)** 107:8 107:16 111:13 111:14 114:23 123:6 126:11 205:17

**folks(1)** 224:11

**follow(4)** 57:10 58:14 226:19 227:2

**follow-up(1)** 102:1

**following(3)** 32:23 53:20 202:9

**follows(1)** 142:18

**footnote(19)** 30:17 31:2 31:10 31:14 31:21 31:22 32:5 34:9 35:1 35:22 44:25 45:12 169:3 172:10 174:19 175:17 194:24 195:1 216:9

**footnotes(1)** 56:13

**for(301)** 1:2 1:25 2:4 2:23 2:29 2:42 3:4 3:34 3:40 4:4 4:30 5:4 5:18 5:24 5:30 5:39 6:4 6:28 6:42 7:4 7:16 7:21 7:31 7:35 7:41 8:4 8:31 8:43 9:4 9:8 9:11 9:22 9:36 9:41 10:4 10:10 10:13 10:17 10:22 10:26 10:30 10:34 10:39 10:43 11:4 11:8 11:13 11:18 11:26 11:30 11:35 11:39 12:4 12:12 12:16 12:20 12:24 12:28 12:34 14:20 14:24 15:12 16:2 16:11 16:18 18:14 19:21 20:12 21:2 21:5 22:17 23:21 23:23 24:12 24:18 25:4 25:14 26:20 27:1 27:3 28:25 29:8 29:15 29:16 32:8 32:12 32:14 33:12 35:14 35:20 36:1 37:3 37:15 39:3 39:5 39:19 40:1 43:19 43:20 44:10 45:18 46:5 46:18 48:14 48:21 49:19 50:20 51:1 52:5 52:23 55:5 55:5 55:16 55:17 56:4 56:8 56:14 56:25 59:9 59:17 60:22 61:22 62:4 63:11 63:14 63:24 64:18 64:19 64:24 65:25 66:2 66:12 67:14 68:1 68:8 68:6 68:22 73:7 74:18 77:9 77:9 79:6 80:11 81:11 81:15 81:17 81:25 82:15 83:25 84:7 84:25 85:2 85:3 86:24 88:9 90:18 90:18 91:23 94:17 95:17 96:4 97:8 99:17 100:10 100:18 101:10 103:5 103:17 103:19 104:21 105:1 105:2 105:5 105:5 105:7 105:7 105:13 105:14 106:3 106:21 108:7 109:14 110:3 111:16 111:17 112:24 113:24 114:11 116:4 116:6 117:5 117:6 117:7 117:8 117:9 118:22 122:19 122:23 123:3 123:22 123:23 124:18 124:2 125:5 127:7 128:1 130:9 130:14 130:23 131:9 131:13 132:20 133:6 135:11 136:7 139:12 139:13 139:19 141:10 141:23 146:1 146:25 148:24 149:19 149:19 150:2 150:19 150:21 150:23 150:25 151:2 153:1 154:23 155:3 157:1 157:3 157:11 158:5 158:19 158:23 159:4 162:10 162:24 163:5 163:12 163:16 163:19 163:25 165:21 165:25 166:21 166:24 167:6 167:21 168:7 169:15 169:24 172:10 172:11 172:22 176:14 176:21 178:13 179:19 179:19 180:1 183:24 187:5 189:3 190:8 190:17 191:25 192:13 192:13 194:4 194:13 194:24 195:18 202:4 202:9 205:5 205:6 206:12 207:12 207:23 208:23 209:17 213:14 220:17 221:21 221:25 222:19 223:9 223:22 224:2 224:21 224:20

**for(7)** 224:23 224:25 225:1 226:25 228:4 228:21 229:5

**forecast(1)** 63:11

**forecasted(1)** 225:13

**forecasts(1)** 155:11

**forego(2)** 42:3 42:16

**foregoing(1)** 229:9

**foregone(3)** 42:15 42:16 93:9

**forewent(1)** 43:4

**forget(2)** 40:11 124:4

**form(14)** 24:21 53:2 58:21 65:21 78:2 89:18 92:15 101:5 126:25 142:23 142:23 143:3 149:13 165:18

**formal(11)** 15:12 15:14 15:17 15:21 26:14 51:23 55:18 57:18 62:19 62:24 77:7

**forman(1)** 1:33

**formed(2)** 90:5 165:13

**forming(1)** 192:8

**forms(2)** 88:20 88:20

**formula(1)** 176:14

**formulating(1)** 22:12

**forth(1)** 144:16

**fortunately(1)** 71:11

**forty-seven(2)** 162:17 163:6

**forward(5)** 47:9 47:19 48:11 48:17 178:20

**found(7)** 11:25 30:10 32:1 47:18 112:4 168:9 168:12

**foundation(6)** 11:40 53:3 142:24 143:3 143:14 173:21

**four(7)** 44:10 45:22 99:22 99:23 104:10 120:23 224:4

**fourth(1)** 164:14

**fractions(1)** 70:2

**francisco(1)** 83:15

**frank(2)** 6:14 87:6

**frankel(1)** 11:9

**frankly(2)** 167:2 173:13

**fraudulent(5)** 14:24 26:24 27:10 28:23 39:12

**free(5)** 26:3 100:14 114:4 185:15 222:4

**frequently(5)** 84:10 89:20 101:4 101:13 137:2

**friday(3)** 23:7 47:17 48:9

**friedman(2)** 5:12 9:22

**from(163)** 11:35 17:4 17:16 29:4 32:15 35:11 35:12 35:14 35:17 36:1 39:8 44:12 46:12 47:21 49:10 51:9 51:20 57:7 57:8 58:7 62:17 67:16 68:24 74:5 74:13 74:14 77:4 81:22 81:25 83:23 87:14 87:24 90:16 93:23 94:13 99:9 100:3 100:8 100:13 100:13 102:1 102:1 103:16 103:16 105:10 106:3 106:5 106:20 107:2 107:4 109:7 112:22 113:5 113:11 114:17 115:11 115:14 119:5 119:8 124:2 124:10 124:12 124:13 124:19 124:25 129:3 129:7 130:5 130:12 130:19 133:7 135:9 136:10 139:23 140:25 142:15 142:15 142:21 143:10 145:1 147:10 147:10 147:11 147:22 148:6 148:15 148:16 150:18 150:10 152:17 152:22 153:7 155:13 155:14 155:22 156:10 157:25 158:4 158:8 158:16 159:19 160:16 160:19 160:19 160:20 163:4 164:22 164:25 165:9 166:19 167:20 169:12 170:2 170:2 171:1 171:9 171:13 171:16 171:19 174:23 178:14 178:20 179:25 180:24 181:21 182:20 182:25 187:18 189:6 190:24 192:12 192:15 192:16 194:5 195:4 199:6 202:5 205:8 208:5 208:16 210:3 210:19 215:12 216:8 218:5 218:5 218:6 218:14 219:2 219:14 219:23 221:18 221:21 221:22 229:10

**front(11)** 90:11 91:7 134:11 136:14 139:20 140:20 153:13 156:5 171:25 206:25 221:20

**full(14)** 15:8 15:11 27:25 37:19 46:5 62:23 66:13 69:19 75:2 75:11 76:17 112:7 117:25 169:21

**fully(4)** 14:5 30:25 34:5 207:8

**fund(9)** 10:10 96:10 176:25 178:2 178:5 179:1 180:12 180:16 202:14

**fundamenta(5)** 12:28 12:29 116:3 116:25 150:9

**fundamentally(1)** 92:10

**fundamentals(1)** 182:7

**funded(1)** 125:1

**funding(1)** 182:17

**funds(3)** 61:21 61:24 166:9

**further(7)** 34:12 54:19 67:8 79:18 194:23 207:4 222:12

**future(9)** 25:6 41:8 42:1 43:17 103:23 147:20 147:23 180:20 182:7

**futures(2)** 88:12 88:14

**g-t-e-e-d(1)** 183:19

**galbraith(2)** 12:20 12:21

**gamut(1)** 83:23

**gandhi(1)** 9:28

**gangat(1)** 8:45

**gap(2)** 57:9 57:22

**garamella(5)** 44:7 44:25 45:1 62:9 62:13

**garvan(1)** 1:5

**gary(1)** 8:20

**gather(8)** 140:25 146:20 149:1 157:21 171:12 188:19 197:13 221:8

**gave(7)** 17:12 23:15 27:23 27:25 28:1 48:9 88:4

**gavin(1)** 7:6

**gears(1)** 200:23

**geddes(1)** 5:24

**general(3)** 33:18 150:17 154:14

**generally(8)** 35:15 40:23 75:24 76:1 78:23 79:15 151:22 201:25

**generate(1)** 75:1

**generated(5)** 35:12 109:8 109:9 111:21 207:18

**generating(1)** 115:22

**gentilotti(1)** 5:4

**george(2)** 9:4 9:5

**get(44)** 13:19 15:11 16:14 26:5 32:2 37:17 41:24 42:8 53:8 62:20 64:11 71:4 71:15 72:22 75:15 77:13 103:14 106:4 106:9 107:4 107:9 108:4 108:12 109:24 114:17 116:7 117:25 118:19 119:1 119:21 135:18 146:13 159:9 183:20 187:13 205:10 211:25 215:2 222:23 222:25 223:20 224:3 226:2 228:3

**gets(5)** 69:14 71:17 78:12 78:14 101:5 227:22

**getting(6)** 62:6 62:6 114:17 118:14 118:15 121:16

**give(10)** 23:1 31:19 37:7 73:15 83:11 85:19 188:13 223:8 223:14 224:14 226:21

**given(7)** 27:17 65:23 149:3 186:2 189:12 224:5 226:15

**gives(3)** 19:19 35:8 205:21

**giving(2)** 16:21 31:11

**glad(1)** 133:11

**glazer(1)** 2:9

**gleich(1)** 4:39

**global(1)** 9:8

**goes(10)** 23:21 60:16 72:3 74:23 129:1 131:6 166:6 201:12 204:17 223:19

**going(60)** 32:2 35:25 36:14 36:14 59:13 61:8 62:22 65:16 68:2 70:5 70:11 71:7 73:16 75:6 75:17 75:20 81:9 81:11 87:21 96:6 100:23 101:20 102:20 109:11 113:20 114:1 118:7 123:5 128:24 131:8 131:17 142:14 144:16 147:13 152:20 152:21 153:21 159:8 165:15 179:18 180:2 180:5 182:1 184:10 184:11 193:1 197:17 199:13 200:18 214:7 214:21 215:3 221:21 223:25 224:2 224:5 225:12 227:2 227:16 227:25

**golden(1)** 4:23

**goldfarb(2)** 3:27 6:20

**goldis(1)** 7:11

**goldman(3)** 7:13 7:41 7:41

**gone(1)** 74:6

**good(21)** 13:3 13:4 13:6 13:7 13:10 13:13 13:14 32:19 41:18 49:14 49:17 49:18 55:1 58:24 74:1 75:6 81:14 81:24 132:7 133:6 225:24

**gordon(2)** 7:5 8:34

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**got(31)** 20:7 31:9 31:16 34:4 47:24 59:12 59:18 71:18 73:24 73:25 77:8 86:16 86:18 100:13 103:5 107:2 107:19 114:23 128:3 151:19 162:6 168:17 168:18 170:6 177:20 178:20 179:20 214:1 221:17 224:1

**gotshal(1)** 9:27
**gotten(1)** 130:12
**governance(3)** 51:2 51:3 71:6
**government(3)** 83:24 88:8 88:10
**graduate(1)** 85:1
**graduated(1)** 86:14
**graem(2)** 3:26 6:18
**grand(1)** 4:16
**graph(3)** 93:22 93:25 94:4
**great(5)** 5:30 14:6 21:17 86:23 208:2
**greater(3)** 133:25 139:1 218:15
**greenspun(1)** 127:3
**greg(1)** 8:9
**greissman(1)** 11:36
**grim(1)** 42:9
**grippo(1)** 9:4
**gross(2)** 181:12 181:13
**group(7)** 148:17 177:15 180:7 182:24 185:10 187:17 192:16

**groups(3)** 88:1 88:2 88:2
**growth(48)** 42:23 43:2 151:24 152:5 152:10 152:22 154:22 155:3 155:7 155:11 155:14 155:21 156:20 157:2 158:9 158:14 158:20 159:2 160:7 160:14 160:22 161:3 161:4 211:24 212:6 212:8 212:9 212:12 212:21 212:22 213:3 213:6 213:14 214:4 214:9 214:10 215:3 215:9 215:15 215:20 216:10 216:12 216:13 219:7 222:2 222:5 222:7 222:7

**gruszka(1)** 12:30
**guaranteed(1)** 183:19
**guarantor(6)** 57:25 58:2 60:5 61:19 129:24 130:15

**guess(22)** 89:19 120:23 137:24 153:18 157:8 168:4 173:9 178:18 185:23 186:23 190:2 192:19 196:4 208:7 208:9 213:20 215:2 216:23 224:15 227:24 228:10 228:1

**gump(3)** 4:21 9:16 133:7
**guys(2)** 66:23 67:6
**had(73)** 14:5 14:5 16:20 17:11 21:3 21:6 22:16 24:24 25:2 25:5 28:10 29:16 36:9 36:17 36:21 38:9 39:23 40:4 42:4 42:6 46:6 48:15 48:15 49:20 59:16 60:12 60:13 64:4 68:4 70:16 70:20 76:8 76:9 76:10 76:11 76:12 76:13 80:8 84:8 84:25 86:22 94:17 100:12 100:15 100:16 100:19 105:12 109:5 114:18 116:10 130:10 131:4 141:20 166:14 170:25 174:21 175:3 175:11 175:23 186:15 190:2 190:5 193:21 196:6 201:15 206:8 211:13 213:4 216:6 218:6 220:8 227:14 227:14

**hadn't(1)** 221:9
**hale(1)** 7:9
**half(6)** 34:21 80:3 108:1 223:15 223:17 223:19

**hand(4)** 82:6 82:12 216:18 226:13
**handbook(1)** 139:23
**handed(4)** 144:19 148:12 152:25 221:9
**handicapped(1)** 14:15
**handled(3)** 38:5 38:7 227:22
**hands(1)** 141:25
**happen(2)** 43:8 74:19
**happened(3)** 210:5 213:5 213:12
**happening(1)** 213:13
**happens(5)** 13:14 72:19 72:20 73:8 73:9
**hard(14)** 51:25 67:13 75:14 76:14 76:16 79:24 101:15 163:24 192:23 194:12 201:24 216:7 224:12 227:2

**harder(1)** 58:6
**harrisburg(1)** 1:44
**harvard(1)** 87:7
**has(34)** 27:18 41:12 52:22 55:8 55:10 55:23 57:14 58:3 61:7 61:11 71:17 72:18 74:20 85:15 90:16 110:7 115:22 115:24 134:1 134:4 135:11 140:20 141:17 153:7 165:8 174:14 180:1 195:14 213:6 216:12 216:13 220:7 224:25 227:18

**hauer(2)** 4:21 9:16
**have(274)** 14:18 14:21 16:4 17:6 17:18 18:4 18:5 18:6 20:14 20:15 20:17 22:20 22:21 22:23 27:20 28:7 29:21 31:14 31:25 32:14 34:18 34:23 37:19 41:9 43:4 43:6 43:7 43:7 45:8 46:6 47:18 48:1 48:16 49:5 50:7 50:11 50:15 50:18 51:14 51:14 51:17 52:4 52:6 52:11 53:10 54:19 55:4 55:7 55:23 56:7 58:9 58:20 59:16 61:6 61:12 61:21 63:10 63:17 64:6 64:7 64:8 65:13 66:24 69:2 70:1 70:19 70:21 73:23 74:6 75:8 78:7 80:21 81:5 82:11 83:3 83:3 83:17 83:18 83:19 84:7 84:23 85:7 86:1 87:2 87:12 87:16 87:24 88:7 88:16 88:23 89:1 89:4 90:9 90:11 91:7 91:18 91:20 91:25 92:6 93:8 93:10 93:16 93:18 95:10 95:22 95:24 97:7 99:10 101:9 101:9 101:13 102:12 104:1 104:1 106:8 106:11 107:1 108:21 109:3 109:5 109:22 110:8 110:16 111:3 112:24 114:16 115:2 115:21 116:16 117:12 117:14 117:21 117:22 117:24 118:15 118:17 118:18 119:10 121:5 122:7 123:9 127:11 128:25 129:3 131:18 131:20 131:21 131:25 133:15 135:18 135:22 136:20 137:1 138:7 138:8 138:9 139:22 142:7 142:25 143:12 144:20 145:21 145:25 146:6 146:7 146:23 148:1 148:14 149:12 151:4 152:18 153:3 153:9 153:12 153:25 154:3 154:4 154:19 155:6 155:8 155:10 156:5 156:12 157:13 158:11 158:12 158:16 158:24 159:17 159:23 162:8 165:17 166:24 167:8 168:21 168:25 171:2 171:19 171:25 172:2 173:7 174:19 178:6 180:4 183:3 183:11 184:8 184:9 184:10 185:21 185:22 186:17 187:10 190:3 190:8 190:10 190:10 190:14 192:12 194:3 195:5 196:10 196:11 197:11 198:17 199:14 201:1 201:5 202:1 202:15 202:16 203:1 203:21 205:9 206:7 206:25 207:1 208:21 210:9 210:11 215:21 215:25 216:20 217:25 218:14 218:17 218:1 221:18 222:12 222:18 222:19 223:1 223:22 223:24 224:13 224:15 224:16 224:23 225:1 225:8 225:21 226:9 226:14 227:5 228:5 228:11 228:15 228:20 228:23

**haven't(2)** 28:11 224:17
**having(12)** 28:8 55:22 56:21 60:7 67:13 111:13 112:1 119:2 133:10 142:1 191:16 228:14

**he'll(1)** 224:1
**he's(4)** 71:20 134:21 134:21 223:25
**head(2)** 17:7 85:3
**heading(9)** 20:7 98:25 136:16 139:25 156:18 158:4 160:3 190:24 191:12

**headings(3)** 194:13 197:25
**hear(2)** 148:4 208:14
**heard(10)** 55:5 60:24 133:9 133:10 136:24 142:7 142:10 147:4 185:24 196:11

**hearing(2)** 227:12 229:4
**hearings(1)** 227:7
**heilbut(1)** 9:38
**held(5)** 35:12 53:23 54:1 55:19 135:10
**help(1)** 189:7
**helpful(2)** 226:24 228:5
**henderson(1)** 8:22

**her(1)** 152:12
**hercules(1)** 4:32
**here(45)** 13:18 22:24 31:11 31:16 33:10 45:15 47:22 52:10 66:4 67:15 68:2 71:18 77:21 79:2 103:2 113:24 118:8 124:2 128:24 139:7 142:8 143:14 143:22 145:10 145:18 146:10 148:15 149:23 151:5 151:25 152:8 152:19 157:1 159:24 164:15 175:1 176:3 176:24 183:11 190:24 191:21 191:2 196:5 201:12 219:11

**here's(3)** 63:18 227:5 227:6
**he's(1)** 124:12
**high(17)** 59:4 68:12 68:18 68:20 76:15 102:22 106:5 107:11 111:7 118:14 120:22 152:24 160:23 194:15 197:24 216:11
**higher(21)** 19:18 19:19 19:20 19:21 21:7 22:10 60:15 72:23 96:23 96:24 97:16 107:14 111:1 114:2 114:10 115:2 115:6 117:21 123:25 124:1 124:21

**highest(2)** 77:14 139:17
**highlight(13)** 110:3 110:5 113:2 113:6 113:12 114:1 118:7 118:10 121:9 123:5 124:16 124:17 128:24

**highlighted(1)** 192:19
**highly(2)** 97:4 199:11
**him(1)** 159:9
**himself(5)** 22:17 123:25 124:1 137:3
**hindsight(1)** 147:14
**his(39)** 22:6 22:11 23:11 23:13 24:7 36:24 57:20 59:16 59:19 59:19 70:16 74:20 74:24 80:9 96:6 97:11 131:21 134:24 135:3 135:4 135:4 146:3 147:25 150:5 150:5 150:9 196:8 203:3 208:20 210:25 212:9 213:5 214:9 214:25 219:10 223:18 223:20 223:25 224:2

**history(3)** 62:25 86:15 86:17
**hit(2)** 41:5 52:23
**hold(9)** 50:25 51:1 84:17 144:8 151:17 156:6 180:18 188:13 211:19

**holders(3)** 37:20 74:6 164:6
**holding(1)** 34:18
**holdings(1)** 181:21
**home(2)** 52:23 81:10
**honor(58)** 13:4 13:7 23:2 23:20 23:25 31:4 31:25 45:8 49:6 49:14 53:11 54:19 54:25 58:20 78:2 81:6 81:20 81:24 82:11 88:4 89:7 89:10 90:14 90:21 91:10 91:13 143:12 153:12 156:9 157:11 158:22 159:1 159:8 159:14 173:19 174:8 187:7 207:23 208:8 208:15 216:18 221:4 222:12 222:15 222:17 225:6 226:7 226:13 226:19 226:20 226:23 229:3

**honorable(2)** 1:19 86:24
**hope(3)** 93:25 183:2 223:17
**hopefully(5)** 47:8 47:19 48:11 224:3 226:16 226:18

**hoping(2)** 183:24 223:20
**horan(1)** 5:32
**horizontal(1)** 99:15
**horizontally(1)** 214:8
**hospital(1)** 29:2
**houlihan(5)** 195:20 195:23 195:25 196:6 196:7

**hour(7)** 34:21 133:15 223:15 223:17 223:17 223:19 224:9
**hourly(1)** 133:14
**hours(2)** 80:4 80:6

**how(86)** 17:21 22:12 22:14 22:16 24:12 27:16 38:5 38:7 38:25 40:14 41:9 49:25 51:25 54:15 55:16 56:7 58:9 61:13 62:5 62:23 63:18 63:20 63:21 63:22 64:10 64:13 68:9 76:12 76:14 76:16 78:7 79:6 79:6 80:11 80:14 80:16 80:25 81:1 81:2 88:18 89:22 90:4 94:25 98:7 100:25 102:24 107:18 107:23 109:2 113:6 116:7 116:8 131:13 133:14 139:16 139:18 145:11 151:11 155:23 170:16 173:10 173:16 173:21 173:22 173:24 180:3 180:16 182:9 184:13 197:18 200:22 201:24 207:18 207:20 207:25 213:13 214:1 214:3 214:5 214:22 223:19 225:16 227:22 227:25 228:11

**howard(1)** 3:8
**however(2)** 20:24 32:10
**hundred(3)** 169:7 169:10 169:12
**hundreds(2)** 38:20 87:14
**hybrid(1)** 38:18
**hypothetical(13)** 24:20 32:6 32:9 32:25 33:11 33:20 137:16 138:4 138:5 138:10 138:15 138:21 139:3
**hypothetically(1)** 33:12
**i'd(12)** 81:16 179:13 181:3 182:24 202:7 211:16 219:9 221:23 222:19 223:8 224:17 224:21
**i'll(13)** 13:19 32:2 32:24 49:8 79:14 153:19 153:19 173:19 187:13 195:19 196:5 224:14 228:9
**i'm(69)** 17:14 17:23 20:5 20:17 23:2 29:6 32:24 35:25 39:4 45:20 54:7 59:13 64:10 64:12 64:13 64:23 67:10 67:13 68:1 70:1 71:7 78:1 78:4 80:24 81:1 81:2 81:3 131:13 133:10 135:2 135:17 135:21 136:2 141:13 142:14 143:16 148:5 152:20 159:1 159:8 160:1 160:3 160:16 162:5 166:5 166:5 168:12 178:8 179:16 183:17 183:24 186:13 186:24 188:9 188:23 192:2 193:1 196:11 198:10 201:17 203:19 207:20 221:21 222:10 222:24 223:4 223:20 225:3 226:21
**i've(33)** 20:7 31:9 47:24 65:19 67:14 132:15 135:6 136:24 142:10 143:4 152:25 160:19 164:1 167:1 167:3 176:16 182:14 182:14 184:21 185:22 185:24 189:13 195:5 196:11 203:1 203:4 205:6 206:11 206:12 221:16 224:12 228:14
**i.e(1)** 193:14
**idea(1)** 111:7
**ideal(1)** 81:16
**identical(1)** 101:8
**identification(1)** 227:1
**identified(1)** 70:14
**identify(3)** 68:3 68:23 216:10
**identifying(1)** 225:25
**ignored(1)** 219:2
**ignores(1)** 119:8
**ignoring(1)** 130:13
**illinois(1)** 3:44
**illustrative(2)** 207:11 207:14
**imagine(2)** 41:16 201:24
**immediately(2)** 123:9 129:1
**impact(3)** 43:18 66:16 66:19 151:11 161:2
**impacted(1)** 145:11
**implication(2)** 58:2 58:5
**implied(16)** 152:9 152:22 155:7 155:21 158:9 158:14 159:18 159:2 160:14 160:22 161:4 212:2 212:9 213:3 214:8 215:15
**implied-examiner(1)** 108:13
**implies(1)** 213:7
**imply(2)** 152:5 212:5
**implying(1)** 215:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**important**(10) 16:19 25:6 51:10 57:5 63:1 64:21 64:22 95:13 123:21 205:18

**importantly**(3) 96:9 100:15 155:13

**improper**(1) 205:6
**imrad**(1) 12:17
**inaccurate**(1) 217:16
**inc**(3) 6:36 10:39 10:39
**inclination**(1) 223:6
**include**(20) 27:14 29:14 29:14 29:17 29:19 29:20 54:12 54:14 56:15 75:12 88:19 112:22 112:25 142:19 143:2 190:5 191:11 198:7 198:16 210:19

**included**(16) 33:15 40:19 50:1 102:6 113:3 115:15 130:6 130:9 131:15 146:9 176:18 190:1 191:5 198:14 213:16

**includes**(4) 55:9 56:12 115:6 169:4
**including**(11) 17:23 48:12 48:13 83:20 86:5 113:1 113:1 141:18 146:8 203:2 217:21
**income**(12) 21:5 21:9 21:13 26:1 29:3 29:4 29:8 30:19 35:11 35:12 43:7 171:1

**incomplete**(1) 36:3
**inconsistent**(6) 29:20 92:9 212:13 213:9 213:11 219:15

**incorporate**(1) 27:10
**incorrect**(1) 119:5
**incorrectly**(2) 120:3 130:6
**increase**(11) 30:19 30:22 30:24 96:17 115:4 117:19 140:2 165:8 165:15 199:9 199:11
**increase/decrease**(1) 164:22
**increases**(2) 115:3 164:25
**incurring**(2) 21:5 21:9
**indeed**(6) 39:6 41:18 170:4 186:15 199:2 208:8

**independent**(11) 77:12 89:18 90:2 92:15 92:22 157:17 175:5 190:10 192:9 196:24 221:13

**independently**(1) 175:17
**index**(7) 198:1 198:3 198:6 198:7 198:15 198:16 230:1

**indicate**(2) 97:13 199:12
**indicated**(5) 96:18 97:23 164:1 189:23 221:14

**indicates**(2) 190:2 191:7
**indication**(1) 184:7
**indicator**(1) 176:4
**indicators**(2) 155:19 197:5
**individual**(1) 175:25
**individually**(1) 87:9
**individuals**(4) 80:22 83:16 185:6 192:16
**industries**(2) 90:3 103:23
**industry**(14) 64:12 64:13 93:2 119:1 147:8 147:20 147:23 147:25 148:7 161:21 164:2 174:22 175:24 213:4

**industry-averag**(1) 121:3
**inflation**(2) 215:6 215:14
**influence**(2) 51:24 52:2
**influenced**(1) 137:20
**inform**(1) 62:13
**informal**(4) 15:13 15:17 57:19 69:2
**informally**(1) 51:24
**information**(2) 32:20 226:3
**informs**(1) 62:22
**initial**(11) 17:5 17:13 17:14 17:15 17:16 18:22 66:21 67:16 90:12 91:2 94:9

**initially**(2) 66:6 70:20
**inputs**(3) 100:12 100:17 164:15
**inquiry**(2) 16:17 40:1

**inside**(1) 21:8
**insolvency**(9) 15:15 26:20 58:7 58:8 76:23 92:21 96:18 97:19 146:12

**insolvent**(16) 14:22 15:21 49:3 52:15 52:17 77:11 93:4 96:14 116:17 116:22 117:1 129:25 150:6 184:17 196:9 199:12

**instant**(1) 124:14
**instead**(5) 18:4 18:5 111:11 111:19 118:7 161:2 174:13

**instrument**(1) 38:18
**insure**(1) 199:10
**insured**(1) 10:43
**integration**(15) 15:12 15:13 15:14 15:18 15:21 26:15 55:19 57:19 62:14 62:19 62:24 69:1 69:2 77:7 77:8

**intend**(1) 226:12
**intended**(1) 181:20
**intent**(1) 69:19
**intentional**(1) 58:21
**interaction**(1) 86:20
**interactive**(3) 42:19 42:23 43:3
**intercompany**(1) 59:23 60:2 60:8 60:10
**interest**(26) 58:1 58:18 72:3 72:9 73:8 73:3 73:7 73:14 73:19 73:20 73:25 75:13 86:4 86:19 109:9 109:13 116:14 118:9 119:19 121:21 128:1 134:2 166:14 166:15 174:25 202:18

**interested**(2) 12:4 66:1
**interesting**(3) 202:8 202:9
**interior**(1) 66:10
**intermediate-term**(1) 103:3
**internal**(16) 96:7 96:9 127:5 155:23 177:9 178:15 179:13 182:20 183:13 184:24 185:2 185:25 187:15 191:4 195:19 202:5

**internally**(2) 92:9 187:2
**interpret**(2) 76:12 150:10
**interpretations**(2) 137:9 137:15
**intersect**(1) 214:23
**into**(67) 18:11 21:2 22:5 22:11 23:13 23:24 28:9 32:8 34:8 35:1 36:24 41:25 42:8 48:8 51:13 55:20 55:21 55:25 56:2 60:2 61:6 61:24 65:14 68:13 79:7 90:15 91:11 99:5 100:17 102:25 103:25 109:23 110:8 110:9 111:8 111:8 111:16 111:18 111:20 111:25 113:4 118:4 118:5 120:1 120:25 123:8 123:16 128:25 131:6 138:15 139:6 139:13 140:14 143:16 150:7 164:15 178:7 205:2 205:7 209:11 211:4 212:21 217:10 220:7 222:25 225:12 228:4

**introduce**(1) 125:24
**invest**(2) 47:15 96:10
**invested**(1) 126:24
**investigate**(1) 171:20
**investigation**(1) 142:8
**investing**(3) 96:13 186:22 199:15
**investment**(6) 12:29 12:29 96:5 115:19 185:9 219:19
**investments**(5) 106:25 107:19 107:24 108:2 219:20

**investors**(10) 9:8 47:13 83:25 96:21 155:23 182:6 182:6 213:14 214:3 214:22

**invited**(1) 87:24
**invite**(2) 47:5 96:10
**involve**(1) 62:12
**involved**(4) 16:9 84:1 175:6 175:19
**involvement**(2) 62:12 195:25
**involves**(2) 76:3 98:17
**involving**(7) 29:2 29:21 85:25 86:5 88:24 89:2 89:4

**irrelevant**(2) 192:4 192:6

**isn't**(9) 28:10 50:12 50:16 164:8 165:13 200:14 200:17 207:16 215:1

**isolation**(2) 129:11 206:4
**issue**(22) 15:24 29:8 39:16 56:25 58:15 60:10 62:14 76:18 77:24 79:3 79:11 80:22 97:5 115:19 115:21 117:10 149:14 159:10 172:19 185:25 226:8 228:23

**issues**(7) 32:16 80:15 85:6 87:17 87:19 88:8 225:13

**it'd**(1) 226:24
**it'll**(1) 226:16
**it's**(104) 19:11 20:4 20:5 20:9 20:10 22:15 24:4 26:4 27:19 28:9 31:1 31:7 31:21 35:6 37:17 41:12 44:23 51:25 57:17 63:24 65:8 67:8 70:5 70:7 75:5 76:8 131:23 131:24 138:2 140:23 142:17 143:5 143:19 144:5 144:9 144:17 147:14 148:12 148:17 151:2 152:2 154:18 157:25 158:8 159:19 160:13 162:6 163:24 163:24 163:24 164:6 167:10 167:16 168:13 170:6 173:25 176:2 176:17 178:10 178:15 180:8 186:14 187:3 187:13 188:4 188:16 188:9 191:9 192:4 192:4 192:13 192:14 192:15 192:15 194:18 194:9 194:12 194:22 194:23 196:5 196:19 197:12 197:21 198:10 202:3 202:6 205:12 205:18 205:19 206:14 207:2 207:20 211:22 212:5 213:11 216:7 220:6 220:12 221:22 221:22 222:17 227:7 228:10 228:11

**item**(2) 167:20 199:14
**items**(1) 212:11
**its**(57) 14:11 16:1 19:11 19:16 21:5 24:14 24:19 24:25 32:10 32:13 36:9 36:10 37:15 38:5 38:9 38:12 38:25 39:14 40:5 40:5 40:9 42:1 42:2 42:12 46:19 47:6 47:7 54:4 55:23 56:11 62:20 64:5 64:15 64:16 64:17 81:25 89:16 101:20 102:4 109:4 109:5 110:7 110:8 116:13 123:12 127:16 134:1 171:13 172:17 180:5 181:20 181:25 191:25 202:12 207:7 207:7 218:21

**itself**(7) 96:24 101:19 181:11 184:19 186:21 200:9 214:11

**it's**(43) 84:14 84:21 86:4 87:5 88:19 90:21 91:14 92:18 92:19 92:19 95:13 99:1 100:13 101:5 102:21 105:11 105:22 107:2 109:1 111:2 111:3 111:6 111:7 111:19 111:19 112:2 113:3 114:12 114:12 115:2 117:17 117:8 120:20 122:1 122:1 122:24 123:14 124:10 125:7 128:6 128:16 129:8 137:25

**i'd**(4) 89:7 90:14 94:24 112:11
**i'll**(5) 92:6 100:4 100:6 107:1 112:24
**i'm**(11) 82:24 82:25 84:6 99:23 101:2 104:24 119:18 121:24 124:16 124:17 129:11
**i've**(26) 83:5 84:16 85:9 85:12 85:14 85:24 86:3 86:4 87:3 87:8 87:21 87:22 88:1 88:2 88:9 90:10 92:17 94:21 95:4 96:8 97:12 123:23 115:18 116:24 123:16 128:3

**jacobson**(2) 185:6 202:5
**james**(7) 1:26 1:27 1:28 3:28 4:14 6:19 10:30

**jamie**(1) 192:15
**jane**(1) 4:40
**janet**(1) 8:22
**january**(1) 93:23
**jarashow**(1) 9:24
**jason**(2) 5:39 5:40
**jean-marie**(1) 6:29
**jefferies**(2) 7:31 7:31
**jeffrey**(1) 11:14
**jenner**(1) 2:29

**jennifer**(1) 10:44
**jessica**(1) 6:10
**jillian**(1) 8:15
**jimmy**(1) 192:15
**joe**(1) 12:13
**john**(2) 9:19 11:41
**johnston**(2) 4:14 211:20
**joint**(2) 84:25 227:10
**jonathan**(1) 11:27
**jones**(2) 3:41 12:33
**jordan**(1) 11:10
**joshua**(2) 4:15 10:36
**journal**(4) 71:7 71:15 179:15 179:23
**journals**(2) 71:1 87:4
**jpm**(12) 142:13 160:9 160:15 160:20 179:13 185:5 185:8 192:13 194:6 194:25 195:5 202:5
**jpmorgan**(4) 10:4 81:25 89:16 101:19
**judge**(8) 1:19 1:20 80:14 80:25 86:25 87:6 87:9 88:4

**judged**(2) 26:12 200:11
**judges**(1) 88:2
**judging**(1) 97:17
**judgment**(19) 21:19 27:15 27:17 28:21 29:23 46:17 61:23 62:23 65:14 65:21 65:23 72:9 77:16 77:19 77:23 78:17 94:5 151:2 182:8
**judgments**(15) 24:21 60:13 60:14 60:15 76:3 76:5 76:8 76:9 76:10 76:11 76:12 76:13 76:17 90:5 95:9

**julie**(1) 177:13
**july**(2) 183:14 193:12
**juncture**(1) 222:23
**june**(36) 89:21 92:3 93:6 93:8 93:9 94:2 95:22 97:21 98:4 98:8 98:11 98:12 99:4 106:16 107:7 108:7 108:11 112:12 113:21 119:11 123:3 126:2 126:5 126:7 127:7 128:16 169:5 174:21 174:21 180:25 182:25 205:5 215:12 220:1 220:10 221:14

**junior**(1) 217:13
**just**(153) 14:14 17:19 17:21 18:4 18:4 18:7 18:8 20:12 20:18 23:20 31:3 31:11 31:14 31:17 37:17 38:1 39:8 40:14 45:14 47:22 49:7 49:19 53:4 55:4 55:5 55:16 55:24 57:10 57:17 57:20 58:14 59:18 60:24 61:25 62:2 62:12 62:19 65:3 66:2 67:7 67:20 67:24 68:1 68:3 68:13 68:22 69:8 73:12 73:15 74:25 75:20 77:15 77:23 78:23 79:22 80:1 93:22 94:25 96:3 99:13 99:15 99:16 102:19 102:19 103:7 104:5 105:8 105:12 106:9 106:20 106:20 108:6 108:14 109:1 109:6 109:11 110:2 110:4 110:5 111:13 113:1 113:6 113:12 113:18 114:8 114:13 114:23 116:7 118:9 118:21 119:19 119:23 120:13 120:24 121:8 121:9 122:2 124:11 125:17 126:10 128:22 130:11 130:17 130:20 135:1 135:22 136:2 136:9 138:1 140:23 141:9 143:15 144:2 146:7 150:8 150:10 156:2 156:14 160:4 161:6 164:14 165:17 166:18 167:2 173:19 181:12 182:24 187:5 187:21 189:4 189:18 192:1 194:1 196:4 200:10 200:15 200:22 201:5 204:1 214:2 217:10 218:23 219:9 219:18 220:17 221:25 222:25 226:7 226:25 227:3 227:20 228:5 228:9

**justice**(2) 87:1 88:11
**justin**(1) 7:32
**kalenchits**(2) 9:41 9:41
**kaminetzky**(1) 2:6
**kansa**(1) 8:11
**kapadia**(2) 185:9 202:6
**kaplan**(1) 9:22
**kasowitz**(2) 5:11 11:18
**katharine**(1) 2:43
**katherine**(1) 7:36
**katten**(1) 11:40

| Word | Page:Line |
|------|-----------|

kay(2) 4:38 11:26
kaye(1) 11:10
keep(6) 13:5 32:2 109:11 136:9 140:10 180:2

keeping(1) 224:16
kellogg(2) 83:4 84:15
ken(1) 8:11
kenneth(1) 10:15
kenney(1) 142:15
kevin(1) 1:19
key(12) 69:12 69:12 69:13 161:13 204:12 218:15 218:16 218:16 218:18 218:20 218:23 225:21

kim(1) 10:5
kind(5) 14:14 30:13 60:19 101:10 102:5
kinds(3) 30:11 77:2 131:10
king(4) 2:19 2:45 3:36 5:6
kira(1) 8:32
kirby(1) 3:12
kizzy(1) 9:24
klauder(1) 3:35
knapp(2) 148:16 149:2
knew(6) 52:14 152:9 196:2 196:3 196:19 196:20

knock(4) 180:6 180:6 211:13 211:13
know(88) 17:11 18:7 20:13 20:13 22:1 27:16 27:25 30:18 36:18 43:13 51:23 53:19 58:10 59:9 69:22 74:16 77:18 78:11 78:15 87:5 96:11 98:25 99:1 103:13 107:13 107:23 115:18 115:21 117:18 118:9 119:16 119:19 121:9 121:11 123:6 123:23 123:23 128:13 130:16 131:2 131:12 131:2 133:18 134:18 134:25 136:24 137:24 140:21 142:10 148:6 148:21 150:24 152:1 153:5 153:16 153:18 155:11 157:5 161:6 163:24 164:1 170:2 171:16 171:21 173:9 173:14 173:16 173:20 180:6 186:1 186:20 186:22 186:23 188:22 189:23 190:3 191:17 192:1 200:9 202:19 202:25 206:24 218:13 222:10 223:16 223:25 225:20 226:2

knowing(1) 192:1
knowledge(2) 36:21 65:23
known(6) 16:4 23:11 102:22 131:4 134:7 134:25

knows(3) 71:19 71:19 227:3
korea(1) 71:7
korpus(1) 11:19
kramer(2) 11:8 11:8
labeled(1) 188:4
labor(1) 88:13
lack(2) 53:2 76:24
laid(1) 173:21
lance(1) 10:11
landis(3) 3:18 3:19 6:24
language(2) 54:8 89:19
large(3) 50:18 64:2 106:1
largest(1) 44:15
larsen(1) 27:23
last(19) 13:20 23:6 34:21 35:1 35:21 36:2 36:5 46:4 52:6 60:25 82:16 103:17 119:2 121:9 143:17 193:2 202:3 207:2 221:25

last-12-months(3) 103:14 103:19 106:7
late(1) 87:1
later(5) 39:7 71:8 152:21 155:7 204:5
laughter(14) 13:21 31:18 53:7 53:9 80:5 81:18 122:14 122:17 124:9 128:8 132:1 133:13 136:11 159:7

laurie(1) 4:31

law(27) 5:4 11:18 50:24 50:25 51:3 82:25 83:1 83:2 83:3 84:14 84:15 84:21 84:22 85:2 85:3 85:6 85:12 85:15 86:8 86:17 86:19 86:20 86:22 86:23 87:7 87:10 89:11

lawyer(1) 26:7 71:19
lawyers(1) 29:24
laying(2) 143:13 183:22
layoff(1) 124:24
layoffs(2) 129:6 207:12
layton(1) 2:15
lazard(1) 72:8
lbo(2) 157:6 167:17
lead(5) 69:4 76:23 76:24 116:8 197:19
leading(2) 79:12 109:9
least(18) 60:7 61:18 98:15 112:5 113:21 133:23 146:11 149:2 163:25 182:8 185:16 193:20 203:5 206:10 210:14 217:3 220:3 228:11

leave(3) 22:17 40:14 74:18
leaving(1) 109:16
lebouef(1) 4:12
lecture(2) 87:25 88:4
lectured(2) 88:1 88:2
led(2) 25:18 107:14
lee(1) 192:15
left(8) 61:11 62:6 71:4 82:5 109:14 132:15 167:19 197:23

left-hand(1) 100:1
legal(3) 83:10 88:2 150:22
legitimate(1) 60:21
lehman(1) 84:3
lemay(1) 3:6
led(5) 47:15 49:3 181:18 183:7 219:17
lender(3) 188:19 191:4 193:21
lender's(2) 206:17 220:22
lenders(25) 4:4 7:5 110:23 127:3 175:6 178:1 178:5 179:1 179:5 180:12 180:15 180:17 182:5 182:16 183:7 184:5 184:9 184:15 184:16 184:24 186:22 187:1 188:1 219:18 219:21

lenders'(4) 92:12 92:22 96:7 129:16
lending(1) 184:17
length(4) 48:17 51:16 51:18 137:17
lent(2) 184:15 186:17
leonard(1) 1:34
leslie(1) 10:7
less(36) 43:6 43:7 70:16 70:19 77:22 86:4 105:22 107:6 111:4 126:10 131:7 131:7 131:8 164:6 166:21 174:24 176:12 220:9 223:15 223:19 223:20

less-reliable(1) 176:4
let(36) 19:17 21:4 33:5 35:3 39:8 39:17 40:12 52:2 53:4 59:1 59:21 60:24 62:12 64:17 64:24 66:4 69:3 71:25 73:2 73:3 73:4 74:18 76:18 77:4 113:6 118:21 147:15 147:17 147:17 154:1 157:9 174:10 202:19 206:24 208:10 220:14

let's(61) 19:6 20:12 20:18 31:2 31:24 34:3 34:7 34:25 37:2 37:17 40:1 49:7 66:22 140:23 143:21 143:21 149:22 149:22 151:14 151:14 151:16 151:16 153:5 154:2 159:12 159:12 160:12 161:9 161:25 161:3 163:8 164:10 165:20 166:8 168:6 168:9 170:9 171:24 174:3 174:13 176:21 178:9 178:9 179:8 180:21 182:15 183:2 185:1 187:1 189:6 190:15 193:25 197:9 200:23 200:25 201:9 203:19 204:1 205:11 206:19

letter(1) 106:19
let's(5) 95:21 97:20 98:7 122:10 124:4
level(7) 5:7 28:8 75:4 79:1 79:7 94:10 155:12

levels(1) 87:15

leverage(27) 19:9 19:23 20:1 21:13 24:15 25:9 25:13 25:19 25:24 27:4 34:13 34:14 35:23 36:3 36:6 86:1 86:3 96:17 97:16 117:25 118:14 119:2 120:25 130:12 130:20 164:4 185:10

leveraged(11) 36:20 37:8 47:20 48:12 86:1 89:5 167:11 177:15 182:22 187:17 192:16
levered(2) 48:24 199:11
levin(2) 11:8 11:8
levy(1) 8:36
lexecon(4) 82:25 83:7 83:8 84:5
lexecon's(1) 83:12
lexington(1) 2:11
liabilities(11) 38:9 133:25 138:2 138:4 138:5 138:9 138:10 138:11 139:1 139:3 139:4

liability(3) 37:2 38:1 39:14
liable(2) 51:11 51:25
liang(1) 10:15
liebentritt(1) 2:24
liewant(1) 12:13
like(56) 28:22 32:19 41:5 53:22 56:19 67:25 80:1 84:1 87:18 94:24 111:3 111:6 112:11 116:10 116:10 116:13 136:13 136:15 138:1 139:24 139:25 140:19 141:9 142:14 144:15 147:23 154:3 154:4 162:12 162:20 165:24 167:3 167:5 177:4 177:16 178:15 178:17 179:13 181:3 182:24 183:19 188:9 191:25 202:7 206:6 207:12 207:25 211:16 217:17 219:9 221:23 223:8 224:15 224:17 224:22 227:19

likelihood(11) 19:1 64:20 64:25 69:18 70:4 73:2 73:4 73:18 77:6 77:7 77:10

likely(18) 15:20 23:17 26:10 26:12 27:13 28:18 29:13 29:14 29:17 29:19 42:15 42:16 47:7 60:20 64:22 76:24 78:9 202:11

likewise(1) 198:15
limited(2) 80:3 198:10
line(36) 14:21 23:10 29:12 47:24 48:3 48:9 66:23 67:8 67:12 67:21 70:6 70:7 100:8 105:2 105:8 109:6 111:15 113:14 113:18 114:1 118:7 123:5 123:23 124:16 124:17 124:17 125:5 128:14 128:22 167:20 181:12 185:6 194:18 204:12 209:17 212:11

lines(9) 72:12 93:4 105:9 118:12 209:17 214:7 214:17 214:18 214:23

liquidate(1) 202:1
liquidated(1) 37:19
liquidity(1) 123:12
list(11) 50:5 96:3 100:20 100:25 171:16 171:19 175:18 188:16 188:17 227:10 227:16
listed(4) 101:17 101:21 199:14 203:24
literature(3) 77:25 78:6 139:19
litigation(12) 15:6 49:21 52:21 52:24 58:12 62:10 95:10 95:11 95:13 101:14 175:12 190:5
little(39) 24:4 58:12 70:10 70:10 70:11 71:21 71:21 76:19 87:23 94:9 98:12 103:22 103:24 104:1 105:21 107:11 109:1 111:18 111:20 111:25 113:11 113:15 119:23 120:19 121:11 121:16 127:1 144:1 147:20 149:22 192:14 193:5 194:12 209:25 222:25 224:14 226:17 228:22

little-cash-earning(1) 125:4
litvack(1) 9:30
live(3) 60:10 224:1 228:6
llc(2) 9:4 54:2

llp(16) 1:25 2:36 3:5 5:12 6:5 6:17 6:24 6:28 7:35 9:27 10:4 10:10 11:9 11:13 11:26 11:40

loan(5) 46:8 181:25 182:3 182:7 182:10
loans(1) 42:7
logic(1) 166:20
logical(1) 215:19
logically(1) 29:20
lokey(2) 195:20 195:23
lokey's(1) 195:25
long(5) 30:17 31:2 64:3 75:3 147:13
long-period(1) 147:12
long-term(12) 65:4 65:20 103:4 147:9 147:13 147:14 147:25 148:7 152:9 152:22 156:1 222:6

longer(3) 84:17 114:16 226:17
look(82) 16:3 16:16 17:1 17:15 20:3 29:9 31:2 31:25 32:4 34:25 39:13 41:5 45:12 45:24 47:11 47:23 47:25 48:10 60:25 64:18 64:24 67:17 68:12 70:5 70:6 70:7 74:1 78:9 99:25 110:1 103:20 110:19 110:21 114:9 119:20 122:10 123:22 127:9 127:15 130:14 135:5 139:2 141:8 144:11 151:16 154:4 156:4 158:7 159:12 160:12 161:9 161:25 163:25 165:25 168:6 169:3 175:17 177:10 181:11 181:12 181:18 182:7 182:15 185:1 187:1 187:24 188:22 189:6 189:20 192:21 193:25 194:23 197:9 197:25 206:19 212:8 214:7 214:17 215:10 219:17 221:20

looked(49) 15:19 15:23 16:12 16:18 17:3 28:15 40:15 40:18 41:25 41:25 63:8 63:19 64:19 90:6 95:2 95:17 96:14 96:19 97:12 103:15 105:23 107:25 125:11 126:12 126:16 126:22 127:4 131:18 147:23 148:9 150:14 150:19 153:23 159:3 170:10 170:14 170:15 174:20 178:25 186:7 186:13 188:12 193:19 197:4 197:6 198:20 204:11 220:5 221:12

looking(24) 16:1 17:14 20:13 27:1 32:4 42:9 47:4 47:10 48:1 97:8 104:25 108:19 126:5 129:10 152:13 157:15 166:5 166:5 188:18 195:8 204:13 216:9 216:22 217:5

looks(4) 154:3 183:19 188:9 191:25
loose(1) 17:1
loosely(1) 137:3
los(2) 4:18 83:14
lose(1) 52:24
losquadro(1) 10:19
lot(16) 47:12 61:17 61:18 70:25 71:22 75:7 115:18 115:19 131:8 149:25 150:1 167:1 171:8 185:24 196:20 218:9

lots(1) 61:8
lotsoff(1) 222:20
loud(2) 137:13 193:9
loudly(1) 228:23
low(25) 52:23 59:5 65:1 68:4 68:6 68:7 68:18 68:20 69:20 73:9 73:11 76:13 106:5 107:10 111:8 113:25 130:8 146:11 146:13 152:23 166:14 194:15 194:22 216:11 216:12

low-30s(1) 94:13
lower(27) 39:9 40:22 57:19 60:22 77:15 87:15 108:11 111:1 115:7 117:23 117:24 118:1 118:2 118:2 118:15 118:17 118:19 119:23 121:11 121:12 121:17 126:10 161:7 166:13 166:16 169:10 218:18

lowered(1) 104:3
lowest(1) 77:11
lucy(2) 12:20 12:21
ludwig(1) 8:15
lunch(3) 81:15 81:17 225:9
lunchtime(1) 227:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| lynch(4) 4:30 11:26 198:1 198:5 | | market(106) 1:11 2:38 3:21 4:33 15:24 15:25 16:4 16:5 16:16 16:18 17:4 17:18 18:1 18:6 18:11 19:16 25:15 26:23 27:1 27:3 32:13 35:14 35:18 39:23 44:18 47:11 48:5 64:19 65:1 65:14 65:16 65:18 76:11 87:20 90:2 93:12 94:4 94:19 94:23 95:2 95:5 95:6 95:15 95:21 96:4 96:13 97:4 97:17 101:12 111:3 115:20 126:7 126:16 126:21 126:24 136:23 137:1 137:9 137:15 137:19 137:23 138:7 140:9 141:24 148:8 150:16 155:22 156:2 176:21 178:1 178:4 179:1 180:12 181:17 182:1 182:4 182:11 182:13 183:6 184:19 184:20 184:23 186:5 191:3 195:10 197:4 197:5 197:6 199:13 199:14 199:23 200:8 200:10 212:19 212:7 212:24 213:2 213:4 213:6 213:12 214:2 215:16 217:18 217:19 219:18 220:3 | | median(15) 102:20 102:21 103:21 104:25 105:3 106:3 147:19 162:15 163:5 163:13 163:19 164:2 213:7 214:11 214:12

median-after-tax(1) 102:25 median-enterpris(1) 103:18 meet(10) 46:18 109:4 110:7 112:10 123:12 178:21 183:3 201:24 207:7 218:21

meeting(1) 202:11 meisel(1) 1:33 melamed(1) 6:39 members(1) 86:20 memory(1) 152:17 mentioned(5) 28:14 90:25 107:18 140:12 199:17

merger(26) 21:21 51:21 62:22 65:13 85:25 92:4 93:9 94:1 94:3 99:5 106:17 107:9 108:25 112:13 113:4 113:14 113:16 119:1 121:19 122:22 123:5 125:18 143:24 150:2 162:25 205:2

merit(2) 52:7 52:22 merrill(4) 4:30 11:26 197:25 198:5 messing(1) 211:21 mester(1) 4:15 met(2) 175:12 175:13 method(4) 99:3 101:10 103:25 methodologies(5) 106:15 106:22 126:18 176:5 176:9

methodology(22) 70:15 76:7 105:22 106:23 106:23 106:24 107:6 117:13 118:3 119:22 120:24 126:15 130:11 149:12 170:13 174:15 174:18 176:13 176:16 176:17 197:2 219:1

methods(1) 87:20 98:20 michael(3) 2:8 6:31 151:15 michelle(1) 7:11 michigan(1) 2:25 microphone(1) 82:14 mid(2) 194:15 216:11 mid-20s(1) 94:14 midday(1) 225:9 middle(7) 73:21 77:19 78:16 106:6 160:5 181:5 191:12

midpoint(2) 104:4 216:15 might(22) 16:4 22:14 22:21 32:19 33:12 34:2 34:12 34:16 35:16 46:19 48:16 58:9 59:15 62:23 64:23 79:8 80:25 81:11 180:4 202:9 228:4 228:12

mike(1) 10:27 million(70) 17:23 18:5 37:13 37:25 38:14 38:17 39:7 39:19 39:24 42:3 43:18 49:21 50:1 55:19 56:16 57:8 57:8 58:10 58:11 61:21 61:22 62:3 64:2 68:7 68:11 68:15 68:16 68:16 68:17 68:21 68:24 69:7 69:10 75:5 75:22 96:6 99:6 113:9 109:14 109:15 109:21 124:13 124:14 124:15 124:19 165:1 165:10 165:16 166:1 169:1 169:4 169:7 169:10 169:12 169:12 169:13 172:8 173:5 181:21 194:22 199:15 204:17 204:21 204:23 205:8 205:19 205:24 216:8 219:17 220:9

millions(1) 151:4 mina(2) 9:8 9:9 mind(1) 29:16 minimum(1) 60:20 minor(1) 86:15 minus(1) 58:4 minute(10) 49:8 100:4 100:7 107:1 131:23 136:3 161:9 174:8 176:21 211:23

minutes(5) 49:9 80:2 132:8 132:9 222:22 miscellaneous(1) 36:22 | | miss(1) 183:18 missed(2) 63:24 227:11 misspoke(2) 62:3 203:20 misstatement(1) 61:4 mistake(1) 180:1 mistakes(1) 59:12 misunderstanding(1) 217:13 misunderstood(1) 59:14 mix(2) 209:6 209:25 mna(1) 178:20 model(9) 43:15 43:22 58:16 59:11 60:2 60:7 78:7 99:9 102:16

modeled(3) 74:19 74:23 80:20 modeling(1) 61:23 moderately(7) 26:12 27:12 28:18 29:13 29:17 29:18 49:24

modestly(1) 26:10 modified(1) 141:20 moment(8) 18:16 32:14 37:3 40:2 41:24 135:22 165:21 168:7

moments(1) 211:11 monarch(2) 7:16 7:17 monday(1) 224:15 228:8 monetize(1) 34:16 monetized(1) 35:12 money(9) 96:6 126:23 126:25 127:1 186:22 219:19

money's(1) 75:9 monitor(2) 132:23 221:20 monitors(3) 225:17 225:18 225:18 montenegro(1) 11:23 month(2) 46:2 228:25 months(10) 42:11 43:25 44:10 45:23 63:4 63:21 63:24 63:25 93:5 98:12

more(38) 22:19 27:17 33:12 34:12 41:16 43:5 43:5 46:1 46:15 60:16 60:18 70:21 71:23 73:9 76:24 77:21 88:25 92:20 96:8 101:24 107:11 111:3 111:21 123:17 155:13 159:9 165:21 170:20 172:20 177:22 180:1 184:13 193:5 196:9 199:11 200:23 224:2 228:23

moreover(1) 206:4 morgan(16) 2:4 5:18 9:27 65:8 101:19 157:5 157:9 157:16 158:14 158:19 159:13 160:20 177:18 211:13 216:2 216:6

morgan's(1) 193:11 morning(16) 13:3 13:4 13:6 13:7 13:10 13:13 13:14 13:18 49:14 49:17 49:18 55:4 147:4 147:5 176:20 224:16

moskowitz(1) 2:5 most(16) 83:9 83:25 97:13 111:15 123:18 123:21 129:13 137:9 137:15 150:19 154:13 189:2 193:20 205:18 205:21 225:17

mostly(1) 60:17 motivations(1) 137:20 move(13) 57:18 70:10 71:21 72:17 73:1 73:19 73:19 75:20 90:14 91:11 174:3 178:20 187:3

moved(2) 71:21 130:4 movement(2) 61:20 62:4 moves(1) 72:21 moving(2) 69:9 73:20 much(34) 18:3 22:12 22:14 22:16 61:13 62:5 72:19 72:22 72:24 73:8 89:24 94:16 96:23 96:24 109:2 118:1 118:15 118:18 124:21 125:7 133:14 143:14 147:4 154:15 176:12 180:4 180:16 207:18 207:25 218:28 220:6 221:2 225:4 226:2

muchin(1) 11:40 |
| lynn(4) 2:10 3:42 81:24 208:15 | | | | | | | |
| lyondell(1) 84:3 | | | | | | | |
| mac(1) 183:21 | | | | | | | |
| macquarie(2) 11:4 11:4 | | | | | | | |
| made(9) 24:13 24:17 25:8 25:11 45:19 61:23 65:23 66:6 68:25 69:21 130:2 155:16 173:10 191:16 202:10 209:19 212:14 215:8 219:17 | | | | | | | |
| madlyn(1) 4:39 | | | | | | | |
| magnitude(1) 70:14 | | | | | | | |
| main(6) 15:10 15:10 71:14 71:16 74:20 86:4 | | | | | | | |
| major(4) 70:12 84:2 88:3 131:5 | | | | | | | |
| majority(1) 111:17 | | | | | | | |
| make(40) 20:13 24:19 24:21 27:12 27:17 41:10 42:10 42:10 43:1 43:11 46:6 48:14 57:13 58:6 58:11 58:18 62:2 72:9 75:8 76:8 76:9 76:10 76:11 76:12 76:13 78:17 99:25 108:6 109:20 116:8 130:17 161:21 161:24 164:3 170:25 198:18 209:10 209:1 209:22 228:7 | | | | | | | |
| makes(6) 36:12 36:13 117:4 202:10 228:8 228:22 | | | | | | | |
| making(14) 16:2 46:8 57:16 66:19 76:3 76:4 78:22 80:11 116:24 123:14 129:16 130:13 191:22 191:22 | | | | | | | |
| male(2) 179:18 215:23 | | | | | | | |
| man(6) 218:15 218:16 218:16 218:18 218:20 218:23 | | | | | | | |
| managed(2) 83:4 218:14 | | | | | | | |
| manageme(1) 9:12 | | | | | | | |
| management(48) 6:43 8:43 9:12 9:37 9:37 10:10 10:14 10:14 10:18 10:18 10:35 10:35 10:43 11:31 11:31 12:20 64:7 64:8 84:15 98:10 98:13 99:4 100:2 100:13 102:11 105:6 105:7 106:16 107:8 107:15 110:19 110:19 111:1 111:21 112:2 115:10 121:1 144:2 144:23 145:19 149:19 149:23 158:5 165:17 165:19 189:25 190:12 191:10 193:24 | | | | | | | |
| management's(7) 40:19 40:20 146:16 146:21 146:24 149:16 189:19 | | | | | | | |
| management's(5) 108:24 120:5 122:3 127:21 127:21 | | | | | | | |
| managers(2) 28:5 28:8 | | | | | | | |
| managing(8) 141:7 141:7 141:17 177:14 182:22 185:9 187:17 195:23 | | | | | | | |
| mandatory(6) 109:14 109:16 109:17 123:12 209:17 209:18 | | | | | | | |
| mandava(3) 222:24 223:14 223:14 | | | | | | | |
| manges(1) 9:27 | | | | | | | |
| manifest(1) 96:24 | | | | | | | |
| many(15) 17:21 25:5 76:21 84:2 84:4 85:3 85:13 88:3 88:10 88:17 88:18 185:23 186:19 186:20 203:1 | | | | | | | |
| marc(3) 3:11 6:6 6:12 | | | | | | | |
| march(6) 1:14 13:1 153:7 154:18 177:11 229:14 | | | | | | | |
| mark(3) 2:17 12:25 226:24 | | | | | | | |
| marked(2) 135:12 230:13 | | | | | | | |
| | | marrero(1) 6:10 | | | | | |
| | | marsal(2) 10:39 10:39 | | | | | |
| | | marshal(1) 224:25 | | | | | |
| | | marvin(1) 3:42 | | | | | |
| | | master's(1) 83:16 | | | | | |
| | | match(2) 209:6 210:1 | | | | | |
| | | material(1) 225:19 | | | | | |
| | | materials(2) 14:2 218:5 | | | | | |
| | | math(2) 124:14 152:5 | | | | | |
| | | mathematical(1) 176:14 | | | | | |
| | | matt(1) 5:13 | | | | | |
| | | matter(17) 18:3 20:16 20:24 32:12 33:18 51:23 58:10 61:13 76:19 89:14 90:9 117:5 122:11 142:16 161:7 189:13 229:11 | | | | | |
| | | matters(1) 167:12 | | | | | |
| | | matthew(2) 6:25 9:13 | | | | | |
| | | mature(1) 202:13 | | | | | |
| | | maturities(3) 202:12 202:21 209:5 | | | | | |
| | | maturity(2) 166:9 197:14 | | | | | |
| | | maximum(1) 22:21 | | | | | |
| | | max(29) 13:7 13:9 23:2 23:3 44:7 54:25 81:12 82:12 82:13 89:11 122:25 132:14 132:17 143:18 147:8 147:24 148:6 156:2 159:5 178:6 185:22 189:7 196:9 202:25 203:1 208:23 216:18 222:14 226:7 | | | | | |
| | | maybe(15) 44:18 63:25 75:7 77:18 94:10 120:20 133:19 178:22 179:16 192:19 222:23 223:16 225:18 227:20 227:22 | | | | | |
| | | mayer(2) 2:43 6:28 | | | | | |
| | | mbas(1) 83:16 | | | | | |
| | | mccarter(1) 2:42 | | | | | |
| | | mccarthy(1) 1:40 | | | | | |
| | | mccolm(1) 8:40 | | | | | |
| | | mccormack(1) 3:7 | | | | | |
| | | mccormick(1) 11:39 | | | | | |
| | | mccutchen(1) 11:13 | | | | | |
| | | mcdaniel(1) 5:5 | | | | | |
| | | mcgowan(1) 9:34 | | | | | |
| | | mcguire(1) 6:25 | | | | | |
| | | mean(17) 46:15 92:14 137:4 138:6 147:10 147:16 149:9 152:17 161:23 178:8 184:12 185:22 191:24 217:19 218:9 218:18 227:25 | | | | | |
| | | meaning(3) 123:11 136:21 136:25 | | | | | |
| | | meaningful(5) 50:16 50:19 51:7 101:6 | | | | | |
| | | means(3) 109:19 131:7 178:21 | | | | | |
| | | meant(4) 62:3 62:4 137:25 211:7 | | | | | |
| | | measure(2) 141:24 150:1 | | | | | |
| | | measured(1) 41:12 | | | | | |
| | | measuring(1) 103:13 | | | | | |
| | | mechanical(1) 77:1 | | | | | |
| | | media(1) 170:4 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**mulhern**(1) 10:11
**mullen**(1) 8:13
**multiple**(32) 87:15 100:4 100:5 100:16 102:10 103:14 103:15 103:21 104:3 104:7 104:25 105:3 106:3 106:7 114:7 118:12 146:11 147:19 151:24 152:3 152:4 152:10 155:13 155:20 161:3 161:4 212:3 212:5 212:21 213:7 214:8 214:19

**multiples**(6) 106:4 145:4 145:12 212:9 213:3 214:24

**multiplication**(2) 105:9 106:9
**multiply**(1) 77:13
**murray**(2) 142:8 142:15
**must**(1) 133:10
**mutually**(1) 184:12
**myers**(1) 7:21
**myrick**(1) 8:17
**myself**(4) 16:18 32:21 39:5 84:11
**name**(8) 82:15 82:16 82:17 82:25 85:5 133:7 142:8 142:10

**namely**(4) 88:20 97:14 98:1 105:24
**nasdaq**(1) 88:14
**nature**(2) 125:24 217:14
**near**(3) 46:18 97:16 97:19
**nearby**(1) 224:12
**nearest**(2) 22:20 70:2
**nearly**(1) 22:15
**necessarily**(1) 190:10
**necessary**(2) 37:1 220:25
**necessity**(2) 76:8 80:21
**need**(23) 22:8 23:1 29:6 29:7 42:16 68:2 79:16 109:18 110:9 111:16 111:18 111:20 111:24 136:2 137:24 158:7 159:6 181:13 188:22 224:23 225:1 225:17 228:19

**needed**(2) 25:10 190:14
**neftalis**(1) 11:8
**negative**(14) 68:10 123:11 123:19 124:20 129:2 129:3 129:3 129:9 129:10 129:13 146:13 158:16 175:3 205:19

**negotiated**(1) 51:13
**negotiations**(1) 51:15
**neil**(1) 10:19
**neither**(2) 223:3 223:5
**net**(7) 35:16 38:21 61:7 61:10 61:20 69:4 118:11

**net-after-tax**(1) 124:13
**never**(7) 116:15 116:15 116:17 143:4 165:13 166:23 189:19
**nevertheless**(4) 37:25 92:20 117:12 191:9
**new**(13) 2:12 3:15 4:27 4:42 5:15 83:14 88:14 96:6 96:21 96:22 125:24 209:8 219:19
**newman**(5) 4:24 133:11 152:9 172:15 199:25

**news**(1) 35:8
**newsday**(1) 34:15
**next**(21) 21:1 21:1 22:20 24:4 37:16 43:20 45:24 53:20 63:21 82:1 98:23 100:24 107:21 109:8 120:23 178:9 187:25 198:3 223:17 224:21 228:12

**nicholas**(1) 9:38
**night**(2) 13:20 60:25
**nine**(4) 80:3 105:18 145:5 183:18
**nobel**(1) 83:20
**nobody**(3) 19:14 60:20 227:3
**non-bank**(1) 75:13
**non-broadcasting**(1) 171:9
**non-cash-earning**(1) 125:3
**non-party**(1) 12:12
**non-peer-review**(1) 87:4

**non-profit**(1) 29:2
**non-publishing**(1) 171:9
**none**(3) 125:22 170:25 200:9
**nor**(1) 151:9
**normal**(1) 22:18
**norman**(1) 1:35
**north**(9) 2:19 2:25 2:32 4:33 5:6 5:20 58:13 72:7 72:7

**northwestern**(5) 83:3 83:4 83:6 84:12 85:7
**not**(256) 14:5 14:10 15:10 16:3 16:4 17:25 19:3 19:12 19:14 20:5 20:9 20:19 20:15 20:23 22:15 24:22 25:23 25:25 26:3 26:7 27:17 28:7 28:19 29:4 29:6 29:18 29:21 30:11 30:19 30:19 30:20 30:22 30:23 30:25 32:21 32:12 33:13 33:5 34:12 35:16 35:18 35:19 35:25 36:7 39:2 39:12 39:16 39:25 42:10 42:13 43:16 43:18 43:23 44:7 44:9 47:6 48:14 50:5 50:11 50:15 50:18 51:6 51:11 51:12 52:4 52:16 54:13 54:15 54:18 55:8 55:23 56:25 57:17 61:6 61:22 61:24 62:18 62:18 62:21 63:20 63:25 64:12 64:13 64:23 65:3 66:13 66:13 66:15 66:17 67:10 68:1 70:11 71:13 72:3 72:5 72:9 72:19 72:20 73:5 73:8 74:8 74:14 75:5 75:16 75:20 75:20 78:1 78:22 80:15 81:11 88:25 92:13 92:23 93:3 94:14 96:1 96:18 97:8 101:7 107:16 109:5 111:6 112:2 113:1 114:2 114:16 115:3 115:15 115:18 116:9 116:10 117:1 117:20 120:1 120:3 122:1 122:9 122:24 123:3 123:11 125:25 129:2 129:11 129:16 131:13 132:25 133:21 137:19 137:20 137:25 138:10 138:17 138:21 139:3 139:15 140:22 141:17 142:25 143:1 143:5 143:8 143:13 143:13 143:14 143:16 144:3 146:3 146:20 147:2 147:5 148:5 148:8 149:2 149:6 149:17 149:19 150:5 150:19 150:24 151:7 152:2 152:17 154:10 155:15 155:23 157:2 161:23 165:17 165:18 168:17 171:19 173:20 173:23 175:25 176:11 176:14 176:16 178:8 182:5 183:8 184:11 185:22 186:1 186:13 186:24 188:16 188:20 188:23 189:4 189:10 190:10 192:2 194:1 194:1 195:1 195:2 195:6 195:7 195:10 196:11 196:25 198:10 199:12 199:21 200:10 201:22 202:16 202:18 202:19 203:1 203:4 203:9 205:23 206:4 206:17 207:20 211:18 213:9 215:18 219:8 219:12 219:13 219:18 220:2 220:4 220:19 220:22 222:21 224:2 225:21 226:25 227:16 227:24 228:10 228:12

**note**(22) 23:20 39:17 39:18 39:22 53:15 53:23 53:23 53:25 54:1 55:6 55:14 55:15 55:17 55:19 55:24 76:16 90:15 102:3 109:23 127:2 173:19 187:5

**noteholder**(1) 31:5
**noteholders**(2) 78:22 225:15
**notes**(31) 16:13 37:20 42:8 53:25 54:4 54:4 54:12 54:14 54:15 55:12 60:19 61:2 62:7 64:19 67:8 67:10 67:11 67:13 67:20 68:5 68:8 74:15 75:1 75:6 141:24 166:9 166:13 166:14 167:25 191:19 191:23

**nothing**(4) 79:18 119:3 146:8 222:12
**notwithstanding**(2) 119:4 205:23

**now**(123) 14:9 14:23 15:5 17:3 17:14 17:21 18:14 21:22 24:11 27:8 27:22 28:4 28:14 30:10 32:22 37:5 39:17 41:4 41:24 42:18 43:15 43:24 44:15 44:24 45:12 46:15 46:25 50:23 52:21 53:15 53:18 54:3 54:10 56:3 56:21 62:8 63:2 63:7 66:15 67:14 69:8 69:8 70:22 72:1 74:2 75:23 78:11 81:10 81:12 84:19 90:25 93:7 94:24 95:21 97:6 97:20 98:22 99:10 100:23 102:12 103:9 104:25 105:15 106:11 107:11 108:21 111:12 112:11 114:3 114:23 119:10 120:4 121:18 123:4 124:15 125:11 126:12 126:21 131:18 133:14 140:19 141:14:25 151:4 151:24 151:21 152:25 158:7 160:1 161:9 161:13 163:5 165:23 167:5 168:6 169:14 170:9 171:24 176:19 177:4 179:19 179:25 181:11 184:22 189:17 192:25 193:1 196:9 197:3 197:23 198:19 199:11 203:11 204:1 205:11 217:17 218:5 218:7

**nowhere**(1) 97:16
**npp**(23) 135:12 148:24 153:11 154:18 155:12 157:12 159:15 167:7 172:23 177:8 178:13 179:10 180:22 182:19 183:11 185:4 187:6 187:13 190:17 192:13 194:4 195:18 202:4
**nudge**(1) 70:10
**number**(74) 17:6 38:21 50:2 56:17 66:5 66:24 67:2 68:4 68:6 68:15 72:1 75:23 83:17 83:19 83:20 83:21 84:25 85:2 87:8 90:7 105:6 107:11 108:14 108:18 109:10 109:11 109:19 110:1 110:2 111:10 111:23 113:19 118:19 123:13 123:22 123:23 124:1 124:1 124:18 124:18 124:21 125:19 125:21 125:21 129:3 129:9 130:9 130:14 146:5 148:25 152:13 153:1 153:12 156:8 159:14 166:1 168:25 172:4 172:7 172:11 172:17 172:3 173:7 173:7 173:10 173:13 173:15 173:16 173:23 192:16 210:21 219:5 226:15

**numbers**(28) 67:24 68:1 69:9 106:20 106:21 107:2 107:13 108:7 108:11 108:14 109:24 113:23 119:22 121:10 121:16 123:1 123:10 124:20 125:20 125:23 126:9 146:14 161:23 163:8 166:19 219:6 225:21 226:18

**numerous**(1) 170:15
**oaktree**(2) 10:13 10:14
**oath**(2) 13:15 45:25
**object**(2) 142:23 173:24
**objection**(16) 53:2 53:10 58:20 78:2 79:12 89:10 90:20 90:21 90:22 91:12 91:13 91:15 142:23 143:3 143:18 173:20

**objective**(4) 15:2 101:3 175:10 196:24
**obligated**(1) 209:19
**obligation**(4) 201:19 201:23 201:24 202:2
**obligations**(5) 109:4 110:7 123:13 202:11 207:8

**observe**(1) 96:12
**observed**(2) 96:15 199:1
**obtain**(2) 21:7 34:17
**obtained**(1) 39:8
**obvious**(2) 137:25 218:19
**obviously**(11) 111:1 114:2 116:22 116:25 125:23 149:15 170:2 188:18 203:7 216:16 223:23
**occur**(1) 94:17
**occurred**(5) 27:10 105:24 130:25 210:4 212:17

**october**(1) 149:16
**odd**(1) 14:17
**off**(12) 17:7 36:9 43:5 46:1 55:23 65:6 75:11 82:10 135:18 211:19 225:18 227:3

**offer**(3) 23:18 62:20 90:17
**offered**(1) 224:1
**offering**(6) 14:10 49:22 54:15 146:20 149:6 226:25

**office**(1) 3:34
**officer**(1) 208:6
**offices**(1) 83:13
**official**(2) 3:4 6:4
**offset**(5) 45:17 61:9 61:9 164:7 220:10
**often**(1) 170:16
**okay**(301) 13:18 13:24 14:2 14:6 14:9 14:14 14:23 15:5 15:10 15:14 15:19 15:23 16:14 17:1 17:3 17:8 17:10 17:18 17:21 17:25 18:9 18:11 18:14 19:2 19:16 19:23 20:3 20:9 20:20 20:22 20:23 21:1 21:10 21:17 21:22 22:4 23:8 23:10 23:19 24:1 24:2 24:6 24:6 24:11 24:11 24:24 25:7 25:16 25:18 26:2 26:7 26:8 26:16 26:22 27:5 27:8 27:14 27:22 28:4 28:14 28:22 29:11 30:2 30:9 31:6 31:13 31:15 31:20 31:24 32:4 32:8 32:12 32:19 32:22 33:4 33:18 34:3 34:7 34:25 35:5 35:8 35:21 36:5 36:17 37:2 37:4 37:11 37:16 37:25 38:4 38:10 38:13 38:25 39:11 39:17 40:1 40:3 40:8 40:14 40:15 40:21 41:4 41:9 41:21 41:24 42:13 42:18 42:22 42:25 43:22 43:24 44:6 44:11 44:20 44:22 44:24 45:1 45:7 45:12 45:24 46:10 46:23 46:25 47:16 47:23 48:8 48:20 48:23 49:2 49:5 53:15 53:18 54:3 54:10 54:14 56:7 57:10 58:14 60:1 62:2 62:8 63:7 63:10 63:17 64:6 65:21 66:4 66:15 66:18 67:6 67:13 67:14 67:20 68:12 68:17 68:22 69:5 69:8 70:13 70:18 70:23 71:25 72:11 72:14 74:2 74:9 74:25 75:8 76:2 76:6 76:18 77:20 78:6 78:19 79:10 79:18 80:19 81:5 82:22 83:11 84:5 84:12 84:23 85:7 86:19 86:25 87:12 87:16 88:7 88:16 89:1 90:9 90:11 91:7 93:7 93:16 95:21 97:6 97:20 98:7 98:22 99:10 99:18 99:24 102:12 103:9 104:9 104:12 105:15 106:11 107:18 108:21 110:14 110:16 112:11 112:14 113:8 115:13 117:12 119:10 120:4 120:18 121:18 122:11 123:21 125:11 126:1 126:12 126:21 127:9 127:11 127:15 127:24 128:3 128:7 129:18 130:23 132:24 133:16 133:20 134:16 134:18 134:21 135:5 135:7 135:16 139:22 141:5 141:16 141:22 142:12 142:19 143:1 143:11 144:5 144:11 144:15 144:20 144:25 145:7 145:10 145:15 145:16 146:15 146:25 147:3 147:7 148:10 148:14 148:15 148:24 149:6 149:22 149:24 151:1 151:14 151:17 151:19 152:2 152:7 152:12 153:10 153:19 153:23 154:6 154:19 154:25

| Word | Page:Line |
|---|---|

okay(163) 156:14 156:17 156:25 157:9
157:13 157:15 157:19 157:25 158:3 158:7
158:11 158:18 159:8 159:19 159:22 159:24
160:4 160:9 160:12 160:18 161:12 161:16
161:22 161:25 162:2 162:14 162:20 162:2
163:8 163:10 163:15 163:22 164:10
164:13 164:17 164:21 164:24 165:3 165:4
165:22 166:11 167:15 168:4 168:19 168:19
169:9 169:14 169:18 170:2 170:19 170:23
171:12 171:16 171:24 172:14 172:24 173:
173:6 174:5 174:17 175:2 175:5 175:22
176:2 176:8 176:19 176:22 177:4 177:24
178:4 178:9 178:11 179:4 179:8 179:20
180:10 180:15 180:23 181:4 181:17 182:1
182:23 183:9 183:10 183:12 183:15
184:22 185:3 186:5 186:12 186:15 187:1
187:9 187:12 187:20 189:6 190:15 190:16
192:7 192:11 193:1 193:25 194:2 194:3
195:3 195:8 195:13 195:17 195:21 196:15
196:17 197:3 197:9 197:11 197:12 197:17
197:23 198:5 198:19 199:13 199:17 200:2
201:1 201:9 201:11 201:14 201:22 202:3
203:7 203:15 203:21 204:7 204:11 205:1
205:11 205:13 206:21 207:16 208:21
209:13 209:21 209:23 210:6 210:10 210:1
210:21 212:5 213:16 214:5 215:5 215:21
216:17 216:20 217:7 217:25 218:2 219:5
220:14 220:24 224:10 224:14 228:18 229:

old(1) 74:23
olinsky(1) 11:14
once(6) 73:16 92:10 144:21 162:3 196:2
227:7

one(149) 1:29 2:18 4:26 12:8 15:10 15:12
15:16 18:16 19:6 19:25 29:3 30:7 31:24
34:12 36:12 36:13 41:16 42:2 47:13 50:4
51:1 51:5 64:18 70:11 72:8 73:6 73:15
74:24 76:18 76:22 76:25 77:9 84:1 89:20
91:1 91:21 92:24 93:3 93:4 97:5 98:1
98:1 100:12 102:1 102:1 103:9 107:16
109:1 110:12 112:9 112:15 117:17 117:19
118:21 119:18 120:21 126:5 126:11 128:1
128:17 128:21 129:17 132:22 139:9
139:10 140:5 143:24 146:5 146:22 148:4
149:5 149:9 149:14 149:19 150:2 150:6
150:9 150:10 150:14 153:7 154:5 154:18
155:24 157:12 159:9 159:25 160:11 160:1
161:5 162:18 162:24 164:15 164:19
165:10 165:21 165:23 166:1 166:11 168:4
169:24 170:21 174:8 176:19 176:23 177:3
179:9 181:7 183:14 183:24 184:3 186:14
186:15 186:25 188:11 190:12 194:14 196:
196:16 197:25 198:3 198:23 199:3 200:1
200:23 201:3 202:10 202:14 204:8 204:11
205:1 205:2 205:21 206:15 211:12 211:14
215:13 216:16 216:17 216:19 216:22 217:
218:1 220:6 222:1 222:18 223:25 225:11
226:7 226:24

one's(1) 190:20
ones(7) 71:4 85:17 127:20 170:20 190:1
203:2 204:3

only(42) 13:22 16:3 21:18 21:20 27:19
49:9 56:15 58:8 61:6 63:24 69:10 71:21
72:17 74:15 74:23 75:4 75:5 75:19 90:18
98:1 98:2 106:17 107:16 107:16 109:1
112:9 119:24 123:24 125:17 126:5 126:11
129:2 139:1 140:3 170:23 173:13 182:5
183:17 213:9 214:23 220:19 225:25

onto(4) 23:21 31:23 35:10 53:20
open(1) 202:20
opening(8) 17:8 144:2 144:17 146:15
168:10 168:13 172:3 197:10

operate(2) 40:4 42:2

operating(6) 43:17 44:17 45:14 75:4
189:12 207:5

opine(1) 150:5
opinion(61) 14:10 29:1 39:2 39:3 49:22
50:10 50:13 50:14 51:6 51:10 52:9 52:13
54:15 89:18 92:1 92:8 92:24 94:18 94:25
116:3 116:23 117:4 117:5 120:3 122:23
126:2 126:4 129:12 130:24 133:23 141:2
142:10 143:1 146:20 149:6 160:21 161:24
165:14 165:18 176:2 176:7 176:15 183:20
185:25 189:4 189:10 190:1 192:9 196:7
196:21 196:25 197:5 199:7 200:15 202:10
206:10 218:8 219:8 219:11 220:16 220:16

opinions(7) 90:19 91:25 141:18 141:19
149:13 218:3 221:17

opposed(13) 39:14 95:9 111:13 111:19
115:5 130:7 162:6 164:11 173:8 187:6
210:22 221:15 225:22

opposite(1) 181:23
optimistic(5) 41:16 41:22 111:4 111:4
123:18

option(5) 55:20 55:21 56:1 56:2 166:15
optional(1) 42:14
order(16) 14:23 19:15 75:11 78:10 94:17
100:11 100:17 103:14 106:8 108:11 123:1
124:8 153:6 190:13 225:9 226:9

ordinary(1) 36:15
organizations(1) 85:10
original(18) 20:4 20:19 20:20 68:4 68:6
68:14 68:15 69:22 70:5 71:12 100:24
102:24 115:2 131:12 151:17 153:25 180:1
219:20

originally(1) 125:22
other(94) 14:6 14:7 14:8 16:20 16:22
16:23 17:2 27:15 29:6 32:12 35:19 36:18
39:2 49:8 49:12 51:8 51:16 51:17 54:21
57:12 59:17 61:9 61:19 64:24 70:11 75:11
76:22 77:9 79:24 81:7 83:24 84:22 84:23
85:13 85:16 87:8 87:20 87:21 90:7 101:8
106:1 110:22 110:23 116:5 117:22 118:12
118:21 124:22 124:22 124:24 125:1 129:1
130:15 130:16 134:3 137:18 138:12 146:8
148:4 149:5 149:14 175:15 176:5 182:1
182:5 182:10 184:3 184:20 184:20 189:24
193:23 196:2 201:5 203:18 205:8 206:6
206:13 206:19 207:9 207:11 208:12 211:2
216:6 218:24 219:5 219:7 219:21 222:24
223:21 224:1 225:10 225:11 226:23 227:1

others(9) 16:8 84:4 102:6 142:13 148:17
185:24 197:24 202:6 204:4

otherwise(3) 34:18 74:6 221:18
ought(2) 73:6 225:11
our(13) 71:11 82:1 83:15 83:23 152:18
180:9 181:6 181:7 189:15 223:18 224:24
225:23 228:2

out(34) 14:16 31:13 37:1 42:5 43:14 50:2
51:1 53:22 57:16 57:17 60:17 60:19 61:1
67:7 67:8 67:15 74:23 89:23 105:18 124:1
135:25 137:13 153:2 157:9 159:13 174:23
175:2 182:9 183:22 193:9 201:12 218:6
222:23 227:21

outcome(6) 72:14 73:23 74:20 80:18 80:20
80:20

outcomes(3) 59:4 76:21 78:10
outer(1) 77:3
outlined(1) 129:5
outlines(1) 181:6

outset(1) 129:14
outside(2) 21:14 83:19
outstanding(3) 17:21 37:6 37:9
over(18) 31:23 38:16 41:1 43:20 63:22
63:23 63:25 64:3 64:4 64:5 71:9 88:19
90:4 103:15 109:17 124:25 215:14 219:6

over-funded(1) 129:7
overall(1) 84:7
overflow(2) 224:23 224:24
overfunding(1) 207:7
overpay(1) 48:21
overruled(2) 143:18 174:1
overwhelming(1) 220:3
owed(1) 134:2
own(15) 28:8 32:10 33:8 38:12 39:9 46:19
46:21 62:20 64:5 137:1 159:2 189:15
189:19 192:8 224:16

owned(2) 17:24 19:13
owner(2) 218:12 218:13
ownership(2) 19:13 57:23
o'melveny(1) 7:21
p.a(1) 1:34
p.m(3) 81:22 81:22 229:6
page(115) 17:8 20:3 20:4 20:5 20:12
20:20 23:5 29:9 31:7 31:20 31:21 31:23
32:4 32:15 45:4 46:11 47:23 47:25 66:23
67:7 100:24 102:3 102:13 103:9 108:1
108:15 112:15 117:15 118:21 120:23
120:24 120:24 124:2 124:10 130:2 130:3
135:14 136:14 137:5 137:6 139:25 140:23
141:5 141:8 141:22 144:9 144:11 144:22
151:15 154:17 154:22 154:24 155:1 156:1
156:19 156:23 157:15 157:25 158:3 158:
159:19 159:22 159:24 160:2 160:5 160:10
160:12 160:14 162:4 162:9 162:21 162:23
163:11 163:15 164:14 164:18 165:3 165:5
165:25 167:14 167:16 168:10 168:13
170:10 173:1 173:3 174:6 174:18 177:10
178:16 181:3 181:5 183:1 188:1 188:2
190:23 191:7 191:12 194:9 194:14 195:7
195:23 197:12 197:13 201:3 205:12 206:2
210:16 213:20 216:22 216:23 217:7
220:16 222:22 221:24

pages(6) 31:20 32:1 129:19 151:4 201:5
225:25

paid(4) 24:8 35:19 109:13 114:3
panel(3) 99:16 100:1 114:5
paper(2) 71:6 71:15
papers(1) 152:18
paragraph(22) 20:15 20:23 32:5 32:23
34:7 34:22 35:3 136:16 136:17 137:8
140:6 166:4 178:18 183:16 206:22 207:3
215:11 221:21 224:22 224:1 222:1 222:9

paralegals(1) 122:15
parent(2) 130:5 130:7
park(4) 4:26 4:41 6:5 11:18
parke(1) 3:5
parse(1) 37:17
part(36) 16:19 16:20 21:22 24:7 24:8 25:
29:5 29:6 36:24 44:15 52:12 57:5 57:23
57:25 75:11 76:2 78:19 83:9 96:12 106:18
112:23 115:12 150:19 154:14 170:17 171:
182:3 183:6 186:5 189:4 199:18 199:21
199:21 199:22 200:5 227:20

participant(3) 143:18 154:7 157:22
participants(19) 90:1 94:5 94:19 95:7
95:15 96:13 97:17 101:13 110:22 126:24
127:6 155:14 182:1 182:11 186:21 200:10
212:24 213:2 213:11

participate(1) 19:9
participating(2) 74:5 78:22

particular(37) 24:2 29:15 66:9 83:22
83:22 95:8 95:16 101:14 105:22 106:18
110:4 111:5 113:7 117:10 118:6 137:18
137:22 141:6 144:9 145:23 145:25 146:3
164:14 170:16 174:22 176:3 185:5 186:24
189:25 195:9 196:21 198:20 200:24 206:3
206:9 206:9 218:12

particularly(12) 85:22 87:5 101:7 110:23
125:3 128:17 128:21 155:19 186:22 192:2
206:12 213:20

parties(12) 90:17 110:24 111:12 112:4
175:11 203:16 217:21 219:21 224:18
224:22 227:9 227:19

parties'(1) 127:22
partly(1) 45:17
partner(2) 10:10 133:11
partners(9) 5:39 8:4 8:43 10:26 10:26
12:4 12:8 12:29 21:13

partnership(15) 19:9 19:23 20:1 24:15
25:10 25:13 25:20 25:24 26:4 27:4 34:13
34:14 35:23 36:3 36:7

parts(4) 79:23 79:24 169:24 193:11
party(12) 12:4 26:4 36:7 52:21 52:25
67:22 127:3 145:18 149:10 149:20 175:23
189:1

parver(1) 4:40
passed(1) 35:10
past(1) 21:11
paul(1) 8:31
pause(11) 135:20 136:1 136:6 154:2
160:25 167:4 168:11 174:7 174:9 177:6
205:21

pay(52) 14:11 19:21 22:13 22:14 22:16
22:20 22:22 24:7 29:3 29:8 30:19 33:11
33:12 36:1 36:10 37:19 40:5 40:9 42:1
42:11 43:5 47:6 47:7 55:23 64:15 64:16
64:17 75:1 75:11 108:24 112:8 113:21
113:22 115:23 116:2 116:5 116:12 116:13
116:13 116:14 116:18 116:21 117:2 121:19
127:16 134:1 134:4 138:18 138:24 169:4
218:11 218:21

paying(9) 19:15 19:17 22:19 29:4 55:22
114:2 115:3 117:20 118:18

payment(2) 201:16 202:24
payments(3) 134:2 166:15
payments'(1) 109:10
pda(1) 82:9
peer(4) 70:25 71:2 71:5 87:4
pennock(1) 8:38
pennsylvania(1) 1:44
pension(5) 85:15 86:5 125:1 129:7 207:7
pensions(1) 85:14
people(17) 16:9 16:20 22:18 47:8 47:19
48:11 48:21 48:23 49:2 124:24 137:4
147:12 184:14 224:4 225:19 226:2 228:3

percent(90) 24:14 24:18 24:25 25:14
25:19 36:9 40:24 41:1 41:2 44:18 44:20
64:7 64:9 70:2 72:18 73:3 73:4 73:5
73:13 73:18 77:6 77:7 77:9 77:9 77:12
77:13 77:13 77:15 77:21 77:22 78:12
78:13 78:13 78:14 100:6 103:1 103:6
103:6 103:7 113:19 113:23 113:24 114:10
118:8 118:17 145:2 152:23 152:23 154:23
155:5 155:8 156:22 157:4 158:12 158:13
158:15 158:16 158:17 158:18 158:21
158:21 160:11 160:11 160:17 160:17
160:22 161:3 161:5 162:17 163:4 163:6
163:13 163:17 163:17 163:20 174:25
178:22 178:23 214:15 214:16 214:25
214:25 215:10 215:14 215:16 216:13
216:14 216:16 216:17 222:5

| Word | Page:Line |
|---|---|
| percentage(4) | 44:21 102:4 108:12 170:25 |
| percentages(2) | 70:8 70:9 |
| percentile(2) | 213:8 214:14 |
| percents(1) | 70:3 |
| perform(5) | 56:24 126:8 126:15 193:22 217:15 |
| performance(6) | 43:25 44:8 44:11 45:22 46:12 63:3 |
| performed(20) | 45:16 56:21 60:14 90:1 95:18 97:22 97:23 97:25 98:3 98:19 119:7 126:17 184:21 197:1 203:12 206:11 219:1 219:16 219:25 221:13 |
| performing(3) | 84:2 98:16 203:11 |
| perhaps(4) | 111:13 124:25 141:7 202:17 |
| period(17) | 21:6 21:12 21:15 21:16 22:9 24:15 43:19 63:24 88:19 103:16 105:25 148:1 163:25 167:24 222:4 222:9 228:5 |
| permits(1) | 35:11 |
| pernick(1) | 1:35 |
| perpetuity(11) | 103:25 151:24 158:9 158:20 160:7 211:24 212:6 212:8 216:10 216:12 216:13 |
| persily(5) | 177:13 178:14 182:20 183:22 189:7 |
| persily's(1) | 189:18 |
| personnel(1) | 83:12 |
| persons(1) | 137:17 |
| perspective(4) | 147:10 147:11 147:11 |
| perverse(1) | 116:7 |
| pessimistic(5) | 41:8 41:9 41:10 41:12 41:18 |
| peter(4) | 10:5 11:32 12:30 148:16 |
| petition(1) | 72:3 |
| phase(1) | 227:12 |
| phds(1) | 83:16 |
| phelps(11) | 12:12 101:19 153:7 153:16 154:3 154:6 156:4 156:14 156:20 157:3 160:19 |
| phones(26) | 37:6 37:6 37:9 37:10 37:20 38:15 38:17 38:19 38:20 39:1 39:2 54:4 56:4 56:8 56:11 165:21 165:25 166:13 166:21 167:3 167:21 167:25 167:25 191:1 191:23 191:25 |
| phrase(1) | 211:13 |
| pick(1) | 225:3 |
| pickering(1) | 7:9 |
| picture(1) | 123:18 |
| piece(4) | 42:7 57:22 64:21 64:22 |
| pieces(5) | 16:2 16:4 56:14 64:18 71:22 |
| place(5) | 47:12 82:5 94:18 109:6 154:13 |
| placed(6) | 17:18 105:21 135:6 139:17 140:20 150:16 |
| places(1) | 59:17 |
| plan(16) | 15:7 19:13 24:24 25:2 36:17 46:22 49:23 72:24 72:24 73:11 73:16 73:21 74:1 125:1 129:7 158:5 |
| planned(3) | 42:18 43:16 43:19 |
| planning(4) | 21:3 25:4 180:18 228:22 |
| plans(2) | 36:21 38:5 |
| play(1) | 142:14 |
| playback(1) | 143:6 |
| played(4) | 148:22 168:5 189:9 |
| plaza(3) | 3:14 4:32 5:7 |
| pleading(1) | 167:9 |
| pleadings(2) | 196:13 203:2 |
| please(80) | 13:2 34:8 35:2 35:7 49:11 68:23 82:3 82:8 82:10 82:14 82:15 91:24 93:21 96:2 99:11 99:20 101:1 103:11 104:20 106:12 107:22 108:22 110:16 110:17 117:17 123:20 132:12 135:5 135:1 136:14 137:6 137:12 137:14 139:20 140:1 140:7 141:15 142:17 148:10 153:2 154:17 156:15 156:19 156:24 158:3 159:22 162:3 163:2 163:11 164:10 167:5 167:14 170:9 171:24 172:21 173:1 174:6 177:4 177:16 179:22 180:2 182:17 183:9 187:11 188:1 189:8 190:15 192:10 193:10 195:16 197:9 200:25 203:19 204:6 205:11 208:6 208:20 217:25 221:24 222:1 |
| plethora(2) | 27:20 29:21 |
| pllc(1) | 5:31 |
| plus(3) | 69:2 74:22 74:22 |
| plus-9(1) | 123:14 |
| point(26) | 12:24 12:24 27:9 29:22 30:3 30:6 44:4 46:17 52:15 53:8 53:22 57:11 58:14 96:18 97:17 109:2 116:13 139:15 147:23 158:23 176:23 182:4 193:3 219:25 223:6 228:21 |
| policy(1) | 85:15 |
| polk(5) | 2:4 10:4 81:25 89:15 208:16 |
| portion(6) | 24:3 28:1 28:3 74:2 207:7 228:17 |
| portions(1) | 226:11 |
| posed(2) | 30:10 210:21 |
| position(9) | 54:4 54:7 54:9 83:5 84:12 84:17 84:19 115:14 206:9 |
| positions(1) | 84:23 |
| positive(8) | 123:13 125:20 130:15 158:17 194:22 200:18 200:22 204:23 |
| possibilities(1) | 14:15 |
| possibility(12) | 15:7 19:2 19:8 19:11 22:7 24:12 57:6 73:15 73:22 74:4 74:13 225:20 |
| possible(13) | 28:9 33:5 46:11 74:16 100:14 102:22 129:8 152:2 154:15 180:20 202:10 212:5 228:12 |
| possibly(4) | 110:5 129:7 138:6 211:5 |
| post(12) | 72:3 72:9 72:18 73:2 73:7 73:14 73:18 73:19 73:25 102:2 171:6 194:18 |
| potential(5) | 28:15 36:25 60:9 72:2 196:7 |
| potentially(3) | 163:23 163:25 193:14 |
| potter(2) | 4:30 87:1 |
| powlen(1) | 5:19 |
| ppearances(5) | 1:23 2:1 3:1 4:1 5:1 |
| pratt(5) | 134:18 135:2 137:3 138:16 218:6 |
| pratt's(3) | 135:9 136:15 137:5 |
| pre-lbo(1) | 167:23 |
| pre-step(1) | 63:15 |
| preceding(1) | 34:11 |
| precipitous(1) | 131:6 |
| precise(1) | 104:2 |
| precisely(1) | 103:22 |
| predications(1) | 186:20 |
| predict(1) | 224:20 |
| predicted(1) | 220:9 |
| predicting(1) | 103:24 |
| predominately(1) | 42:18 |
| prefer(1) | 222:19 |
| preparation(3) | 91:2 148:23 204:4 |
| prepare(1) | 14:2 |
| prepared(13) | 90:9 90:10 90:12 91:5 91:18 93:16 95:22 98:12 112:5 119:10 168:3 203:16 226:5 |
| preparing(3) | 90:25 148:20 153:24 |
| present(12) | 18:17 100:5 100:7 114:25 114:25 115:7 118:10 118:11 130:17 166:1 167:1 224:18 |
| presentation(4) | 153:23 157:10 159:13 |
| presentations(1) | 153:6 |
| president(1) | 84:6 |
| press(1) | 87:8 |
| pressure(1) | 178:20 |
| pressured(2) | 178:7 178:8 |
| presumably(2) | 43:9 202:13 |
| presume(1) | 223:20 |
| presumption(2) | 140:7 140:8 |
| pretty(2) | 224:4 225:24 |
| prevented(1) | 74:5 |
| preview(2) | 223:9 224:15 |
| previous(2) | 92:18 102:9 |
| previously(3) | 14:5 27:18 114:23 |
| price(19) | 17:25 18:6 18:11 22:12 24:7 35:19 65:7 65:11 90:8 93:23 94:8 94:13 111:3 111:5 111:6 137:18 200:3 218:11 220:5 |
| prices(2) | 16:1 16:13 |
| primarily(3) | 83:15 93:12 96:7 |
| primoff(1) | 4:39 |
| principak(10) | 15:9 15:23 16:15 57:15 75:13 85:21 116:14 134:2 150:16 150:21 |
| principally(2) | 60:11 176:15 |
| principle(5) | 94:22 96:3 101:10 109:10 |
| prior(3) | 17:19 17:21 45:13 |
| private(2) | 83:24 87:21 |
| privilege(1) | 86:23 |
| prize(1) | 83:20 |
| probabilities(13) | 57:18 57:20 58:16 66:11 66:12 69:1 69:22 69:25 75:22 76:20 77:2 78:8 80:17 |
| probability(13) | 18:25 33:13 52:23 72:19 73:16 73:24 73:25 75:18 75:20 77:17 78:11 78:13 78:14 |
| probably(9) | 79:4 83:25 107:25 129:9 130:15 143:4 144:18 203:6 228:22 |
| probative(3) | 48:19 101:13 217:17 |
| problem(2) | 183:2 188:23 |
| problematic(1) | 225:25 |
| proceed(2) | 54:25 89:11 |
| proceeded(1) | 228:11 |
| proceeding(1) | 84:1 |
| proceedings(5) | 1:18 1:48 54:17 229:6 229:11 |
| proceeds(5) | 19:22 21:7 21:15 30:23 124:13 |
| process(7) | 55:22 71:1 71:5 71:16 104:6 226:1 227:20 |
| produce(3) | 125:19 125:20 161:7 |
| produced(3) | 1:49 125:5 190:5 |
| prof(1) | 10:30 |
| professional(1) | 83:15 |
| professor(80) | 13:10 13:13 13:19 13:25 14:9 19:7 20:4 22:23 23:4 23:15 24:12 28:15 29:10 31:3 31:8 32:4 32:25 33:18 35:22 37:3 40:2 44:25 45:19 48:20 49:17 55:4 67:14 79:2 79:14 79:22 81:9 82:1 82:22 82:25 83:2 84:14 84:21 89:8 89:14 90:19 91:18 94:24 97:20 98:22 112:11 126:1 129:18 130:23 131:18 132:7 133:6 133:14 134:18 135:2 135:9 136:13 136:15 137:3 137:5 138:16 140:1 141:1 143:7 147:1 147:4 147:7 147:24 148:3 151:20 152:25 159:12 161:1 165:20 174:4 193:16 195:3 202:22 208:19 220:24 221:8 |
| professor's(1) | 159:2 |
| proffer(1) | 89:8 |
| proffered(1) | 224:1 |
| profit(1) | 22:17 |
| program(2) | 85:4 85:5 |
| project(1) | 41:4 |
| projected(2) | 42:4 220:10 |
| projection(3) | 105:6 105:7 220:11 |
| projections(107) | 28:9 28:13 40:17 41:20 42:22 44:13 46:16 46:19 47:5 47:11 48:1 48:5 63:15 63:15 63:19 63:23 64:1 64:5 65:22 65:25 76:10 90:17 98:11 98:14 98:17 99:5 100:3 100:13 102:11 106:16 107:8 107:15 108:25 110:19 110:20 110:21 110:22 110:24 111:11 111:12 112:3 112:3 112:4 115:10 120:5 120:9 120:15 121:12 121:12 121:23 122:3 125:24 127:18 127:28 128:10 132:3 143:25 144:3 144:23 145:18 146:16 146:17 146:21 146:24 149:4 149:7 149:11 149:13 149:16 149:19 149:20 149:21 164:19 165:6 165:17 165:19 188:24 189:1 189:4 189:7 189:11 189:14 189:19 189:24 189:25 190:2 190:3 190:4 190:11 190:12 190:13 190:14 191:11 193:12 193:22 193:24 203:13 203:16 203:22 203:24 204:9 205:15 210:7 210:13 210:20 217:22 |
| promissory(1) | 109:23 |
| promptly(1) | 225:7 |
| prong(1) | 15:2 |
| proper(5) | 29:5 92:6 112:25 126:4 143:16 |
| properly(2) | 80:21 92:11 |
| property(6) | 26:17 26:21 27:1 27:5 33:16 34:1 |
| proportion(1) | 224:19 |
| propose(1) | 226:20 |
| proposed(1) | 15:7 |
| proposition(1) | 148:9 |
| propositions(1) | 139:19 |
| prospect(1) | 34:11 |
| prospects(3) | 41:14 41:17 214:4 |
| protocol(1) | 227:22 |
| proved(1) | 210:4 |
| provide(3) | 22:9 69:8 79:15 |
| provided(7) | 131:11 149:19 148:21 148:22 168:2 193:17 215:22 |
| provides(1) | 48:17 |
| providing(2) | 196:7 226:3 |
| provisions(2) | 54:5 61:9 |
| proxy(1) | 101:20 |
| public(1) | 207:5 |
| publicly(1) | 97:3 |
| publish(2) | 70:25 71:7 |
| published(4) | 71:15 87:2 87:3 87:7 |
| publishing(29) | 40:24 41:2 44:15 45:13 45:16 46:1 64:8 64:9 64:12 64:24 90:3 98:15 99:2 100:10 106:19 106:21 115:9 118:20 148:17 154:21 154:23 156:19 164:18 165:5 170:6 171:4 171:14 171:22 222:3 |
| pull(8) | 82:14 132:22 140:23 153:2 157:9 159:13 174:6 221:21 |
| pulled(2) | 67:15 176:20 |
| pulling(1) | 175:15 |
| purchase(4) | 127:1 127:2 200:3 200:6 |
| purchased(2) | 174:25 199:18 |
| purchaser(1) | 218:11 |
| purely(2) | 171:17 171:22 |
| purpose(3) | 90:18 118:22 217:14 |
| purposes(18) | 24:12 35:14 39:4 55:17 56:4 56:8 57:1 96:4 104:22 116:4 122:24 123:3 146:4 166:24 192:6 205:5 226:25 228:22 |
| pursued(1) | 43:16 |
| pursues(1) | 52:22 |
| push(5) | 71:23 73:17 76:14 76:16 79:24 |
| pushed(3) | 71:17 71:20 79:23 |
| pushing(2) | 48:18 71:2 |
| put(13) | 47:1 66:23 77:3 78:15 99:13 107:16 125:25 145:23 180:4 182:16 211:4 212:19 228:4 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **putting**(8) 95:7 95:11 95:12 95:16 107:5 175:24 226:1 226:10 | | **ratio**(13) 102:21 102:21 105:4 118:23 119:1 121:2 121:4 161:14 162:13 162:16 163:3 163:12 164:2 | | **recap**(7) 106:17 107:8 112:9 119:24 125:17 125:17 126:11 | | **reflects**(5) 94:4 100:24 103:18 214:18 217:13 |
| | | | | | | **reforecast**(1) 46:7 |
| **qualitative**(1) 125:24 | | **rational**(1) 184:16 | | **recapitalization**(8) 85:25 92:4 94:2 94:12 94:12 96:16 97:15 98:2 | | **refresh**(1) 157:16 |
| **quarter**(4) 103:16 103:17 103:17 145:2 | | **raymond**(1) 10:30 | | | | **regard**(3) 51:19 74:11 78:25 |
| **question**(40) 15:19 16:15 23:9 23:12 24:6 26:19 29:12 30:10 33:18 33:22 40:1 41:9 41:15 53:5 53:12 65:2 69:20 77:10 78:3 100:24 116:7 143:18 154:1 158:23 159:6 159:10 173:22 173:24 181:23 188:14 195:3 200:22 202:9 209:7 210:1 210:1 218:19 220:6 226:8 | | **re-levered**(2) 102:22 102:25 | | **receive**(4) 13:24 30:20 30:23 30:25 | | **regarding**(8) 13:24 51:15 58:18 59:9 60:7 65:22 126:2 130:24 |
| | | **reach**(7) 14:23 51:6 100:11 110:8 126:9 129:12 217:23 | | **received**(4) 90:23 91:3 91:16 230:13 | | **regardless**(4) 48:4 48:4 182:9 220:1 |
| | | | | **recent**(2) 29:1 189:2 | | **regulatory**(1) 88:8 |
| | | **reached**(10) 33:17 60:13 60:13 91:19 91:25 112:6 119:9 136:20 195:8 219:3 | | **recently**(3) 83:5 84:16 88:4 | | **reinforcing**(1) 95:10 |
| | | | | **recess**(7) 49:10 81:21 81:22 132:8 132:10 208:3 208:5 | | **related**(9) 54:9 76:19 76:21 77:2 77:14 78:8 84:9 167:11 176:20 |
| **questioning**(1) 226:13 | | **reaching**(1) 219:16 | | **recession**(1) 44:3 | | **relating**(2) 87:10 89:25 |
| **questions**(27) 37:16 49:19 50:23 53:16 54:20 55:5 55:6 55:11 56:3 56:18 59:23 60:1 62:9 63:3 66:5 66:9 72:1 75:23 79:22 80:9 196:3 209:7 210:6 210:21 211:11 225:10 227:21 | | **reaction**(1) 70:20 | | **recognized**(1) 124:22 | | **relationship**(4) 87:19 155:18 214:2 214:17 |
| | | **reactions**(1) 131:21 | | **recollection**(2) 38:17 157:16 | | **relative**(2) 197:24 222:3 |
| | | **read**(49) 14:12 14:4 14:5 14:6 14:8 21:1 23:24 29:3 30:5 32:8 32:21 32:24 34:8 35:1 35:3 48:8 68:13 74:2 97:6 136:15 137:12 137:13 140:1 140:7 141:9 141:13 143:23 158:24 177:16 177:22 178:17 179:22 182:24 185:15 192:14 192:23 193:3 193:9 194:12 194:23 195:1 195:2 202:7 216:7 217:10 217:11 218:6 221:24 221:25 | | **reconsider**(1) 179:5 | | **relatively**(4) 61:14 106:1 |
| | | | | **reconstruct**(1) 138:6 | | **released**(1) 185:12 |
| **quickly**(2) 13:19 163:8 | | | | **reconvene**(1) 81:19 | | **relevance**(1) 180:19 |
| **quite**(3) 61:25 146:6 197:24 | | | | **record**(41) 21:2 23:21 23:24 28:7 28:11 30:9 32:8 34:8 35:1 48:8 52:5 52:9 52:11 52:14 52:16 68:3 68:13 82:15 90:15 133:11 143:16 148:24 153:11 157:11 158:24 167:6 172:22 178:13 179:9 187:6 190:17 192:13 194:4 195:18 202:4 217:10 221:5 225:22 226:9 228:4 | | **relevant**(20) 30:7 35:6 76:21 83:25 93:25 95:14 96:4 97:4 111:15 120:3 180:16 181:19 181:22 184:13 184:19 189:2 190:8 196:18 196:22 217:20 |
| **quoted**(1) 218:5 | | | | | | **reliable**(1) 173:13 |
| **quotes**(1) 32:15 | | | | | | **relied**(1) 176:15 |
| **quoting**(1) 47:21 | | | | | | **reluctant**(1) 222:25 |
| **qureshi**(69) 4:25 89:10 90:21 91:13 132:14 132:18 132:19 132:21 132:25 133:1 133:5 133:7 135:11 135:13 135:17 135:22 135:25 136:2 136:5 136:7 136:12 142:17 143:20 153:15 153:15 156:9 156:16 157:1 157:14 158:25 159:1 159:8 159:11 159:16 159:16 172:22 172:25 174:2 174:8 174:10 174:12 178:12 179:9 179:11 179:21 187:3 187:4 187:7 187:10 189:16 193:4 193:6 207:23 208:1 208:4 208:7 208:8 208:19 215:22 216:5 216:25 218:5 219:5 221:4 221:5 221:7 222:12 226:7 226:22 | | **reads**(2) 183:17 185:17 | | | | **rely**(3) 46:20 63:14 65:24 |
| | | **ready**(1) 136:8 | | **record's**(1) 227:1 | | **relying**(2) 193:23 221:14 |
| | | **real**(31) 36:22 64:11 73:7 78:15 116:2 116:4 116:16 116:11 116:18 116:20 117:5 117:6 117:8 117:8 125:8 134:3 134:8 138:1 138:2 138:3 138:4 138:12 138:21 139:2 139:3 183:2 213:4 218:20 218:22 218:22 220:8 | | **recorded**(1) 1:48 | | **remain**(2) 82:3 226:16 |
| | | | | **recording**(4) 1:48 166:20 189:9 229:10 | | **remainder**(1) 224:20 |
| | | | | **records**(1) 224:17 | | **remaining**(2) 75:17 130:24 |
| | | **real-world**(1) 125:2 | | **recoveries**(13) 54:11 58:12 58:17 61:22 67:22 67:23 70:8 72:2 74:5 74:21 74:22 75:21 78:23 | | **remedy**(2) 74:16 75:18 |
| **rainy**(1) 13:18 | | **reality**(5) 184:14 213:1 213:6 214:3 214:15 | | | | **remember**(16) 44:21 55:14 70:16 80:3 133:18 142:11 152:13 167:2 172:20 196:4 203:2 211:5 211:10 211:14 217:2 217:4 |
| **raise**(2) 82:5 206:7 | | **really**(24) 18:20 46:16 63:20 63:21 71:9 71:9 71:19 71:20 71:23 73:6 83:23 85:5 93:1 116:8 116:18 116:24 123:4 131:4 142:11 164:8 179:17 215:1 225:14 228:10 | | **recovery**(8) 50:12 57:3 57:5 60:3 68:7 185:11 185:17 186:7 | | |
| **ralph**(3) 88:4 88:5 124:10 | | | | | | |
| **ran**(7) 60:21 125:16 143:23 144:23 146:16 200:2 203:15 | | | | **recross**(6) 79:19 79:20 81:7 221:3 221:6 230:2 | | **remembering**(2) 17:23 64:10 |
| | | | | | | **reminded**(1) 227:14 |
| **range**(33) 17:16 18:9 65:10 68:7 68:17 70:12 70:22 71:24 71:24 72:21 72:23 72:25 73:10 73:12 73:17 73:22 103:5 104:4 119:21 119:25 145:1 146:4 147:19 158:11 158:12 158:16 158:19 160:9 160:1 163:4 165:10 214:8 214:19 | | **realm**(1) 5:39 | | **red**(5) 66:23 67:16 140:20 153:1 157:10 | | **remitted**(1) 35:16 |
| | | **reason**(12) 47:17 48:1 48:6 51:14 68:25 114:11 117:10 145:23 155:8 155:10 220:1 228:4 | | **redacted**(2) 226:1 227:8 | | **removed**(1) 57:6 |
| | | | | **redactions**(1) 226:4 | | **rendered**(2) 49:3 141:2 |
| | | | | **redirect**(6) 54:24 55:2 80:9 208:14 208:17 230:2 | | **repay**(2) 42:6 42:7 |
| | | **reasonable**(19) 38:11 41:10 46:15 46:19 48:15 63:14 63:23 65:24 71:24 76:11 92:23 122:25 129:17 198:6 198:9 198:12 198:18 206:14 206:18 | | | | **repayment**(2) 109:20 209:18 |
| | | | | **reduce**(4) 60:18 181:20 207:4 207:5 | | **repayments**(4) 109:15 109:16 109:17 |
| **ranging**(3) 106:5 164:23 216:8 | | | | **reduces**(1) 165:9 | | **repeat**(2) 110:2 111:14 |
| **rapidly**(1) 46:1 | | | | **reduces**(1) 169:11 | | **repetitive**(2) 113:11 120:20 |
| **rate**(77) 42:23 43:2 75:13 96:23 98:18 99:6 100:6 100:17 102:9 102:15 103:8 104:8 113:5 113:18 113:25 114:9 114:11 114:12 114:13 114:19 114:22 114:24 115:15:5 115:7 117:21 117:24 117:24 117:25 118:1 118:2 118:9 118:13 118:19 120:22 133:14 146:10 151:24 152:5 152:10 152:2 154:22 155:3 155:7 155:14 155:21 156:20 157:2 158:9 158:12 158:13 158:14 158:15 158:18 158:20 159:2 160:7 160:15 160:22 161:3 161:4 164:5 166:14 212:6 212:9 212:10 213:7 215:3 215:5 215:20 216:12 216:13 222:5 222:7 222:7 222:8 | | **reasonableness**(12) 49:23 63:11 63:18 65:22 92:12 146:21 146:23 149:7 149:13 165:14 165:18 220:21 | | **reducing**(2) 129:5 129:6 | | **rephrase**(2) 58:25 59:1 |
| | | | | **refer**(2) 99:15 182:4 | | **replenish**(1) 111:22 |
| | | **reasonably**(2) 40:9 202:15 | | **referee**(4) 71:9 71:11 71:13 71:17 | | **report**(138) 17:6 17:8 17:15 20:4 20:5 20:6 20:17 20:20 21:22 22:2 25:23 27:23 31:4 31:4 33:17 44:7 51:22 54:10 62:11 66:6 66:21 66:21 67:15 67:17 67:17 68:14 68:14 70:6 70:7 71:9 71:20 71:22 76:17 77:4 79:4 79:24 90:6 90:9 90:12 90:25 91:2 91:3 91:4 91:5 91:8 91:11 93:16 97:6 98:23 99:11 102:13 102:24 103:10 104:15 105:20 105:21 106:12 108:22 112:15 121:25 124:2 124:10 127:10 128:2 129:19 131:2 131:12 131:19 131:21 131:23 132:2 132:6 133:21 134:12 136:20 139:12 140:22 143:23 144:2 144:5 144:6 144:12 144:17 145:17 146:4 146:15 148:20 148:23 150:5 150:5 150:12 151:14 151:16 151:17 153:24 154:1 155:12 162:1 164:11 165:24 168:3 168:5 168:10 168:14 172:3 174:13 180:19 185:11 185:18 186:7 196:5 197:10 197:12 204:4 205:12 206:5 206:22 209:1 209:4 210:15 212:25 213:17 213:19 213:23 215:10 216:19 216:22 217:3 217:4 217:5 219:4 221:11 221:12 221:18 221:22 222:10 228:1 |
| | | **referees**(1) 99:7 | | | | |
| | | **referenced**(1) 186:8 | | **reference**(16) 31:14 58:21 66:10 101:21 101:23 102:9 102:17 102:19 108:13 125:1 145:7 169:23 186:14 203:2 208:22 211:10 | | |
| **rates**(11) 132:3 145:1 145:12 155:12 211:24 212:2 212:12 213:3 216:10 219:7 222:2 | | **reasons**(13) 51:6 66:2 112:24 112:24 125:6 125:16 149:9 155:24 166:11 166:21 176:16 205:6 206:12 | | | | |
| **rath**(3) 3:18 3:20 6:24 | | | | **referring**(4) 45:20 58:22 185:17 207:9 | | |
| **rather**(14) 20:1 22:21 35:10 36:15 39:9 39:19 42:10 110:20 137:17 138:4 145:19 152:4 213:21 227:23 | | **reassess**(1) 184:4 | | **refers**(1) 36:6 | | |
| | | **rebuttal**(23) 29:13 79:4 79:15 81:11 91:5 91:8 91:11 97:6 131:23 132:6 144:5 144:6 144:12 145:17 155:12 165:24 212:25 213:16 213:19 213:23 215:10 220:25 222:10 | | **refinance**(8) 201:19 201:23 202:2 202:12 202:16 202:20 202:24 204:11 203:3 | | |
| | | | | **refinanced**(1) 203:4 | | |
| **rating**(5) 96:14 96:18 97:14 127:5 219:22 | | **recall**(43) 17:7 44:19 49:19 50:2 50:4 55:12 56:4 56:19 56:22 59:6 59:24 60:1 60:6 62:10 62:11 63:4 66:7 66:11 70:15 72:4 73:10 74:7 74:8 74:10 75:25 78:23 79:25 80:12 152:7 152:11 152:19 168:4 172:14 172:19 185:22 186:7 191:2 193:16 195:7 210:7 210:22 211:25 215:5 | | **refinancing**(7) 200:24 208:23 209:5 209:8 209:8 209:10 210:2 | | |
| **ratings**(2) 96:15 96:15 | | | | **reflected**(5) 30:9 93:25 104:5 113:17 115:4 | | |
| | | | | **reflected**(7) 28:10 36:2 102:7 107:3 115:9 125:9 199:10 | | |
| | | | | **reflecting**(6) 27:2 41:7 93:22 94:14 97:16 113:19 | | |
| | | **recalled**(2) 81:11 152:12 | | | | **reported**(3) 108:6 146:4 175:3 |
| | | | | | | **reporting**(1) 70:1 |
| | | | | | | **reports**(6) 14:9 92:18 144:17 154:4 182:14 223:25 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**represent**(8) 32:11 153:19 177:13 179:12 185:7 187:14 195:19 196:6

**representation**(2) 215:8 215:15

**representativ**(1) 137:19

**represented**(5) 143:10 153:16 153:20 212:4 212:23

**request**(2) 23:23 23:25

**required**(1) 141:24

**research**(7) 46:20 64:1 65:20 70:25 83:17 85:11 85:23

**reservations**(2) 186:1 210:3

**reserve**(1) 215:11

**resigned**(2) 83:5 84:16

**resisting**(1) 228:14

**resolve**(1) 80:14

**respect**(12) 15:14 53:6 108:3 125:15 143:17 170:24 189:25 191:18 198:5 218:2 220:5 226:8

**respectfully**(1) 181:22

**respond**(2) 71:10 97:11

**responding**(1) 146:7

**response**(6) 54:23 69:21 81:8 146:1 208:13 208:14

**responsibility**(1) 84:7

**responsive**(1) 146:3

**rest**(3) 35:3 57:22 180:7

**restart**(1) 136:3

**result**(11) 71:16 84:10 119:9 125:5 130:13 140:3 167:17 202:17 205:10 218:16 222:4

**resulted**(1) 96:17

**results**(17) 45:18 46:5 70:17 71:3 71:3 71:11 71:12 71:14 71:16 71:20 113:2 121:3 121:5 125:14 127:12 142:21 189:12

**resumed**(1) 13:11

**retail**(1) 131:7

**retained**(2) 89:14 89:15

**return**(4) 37:21 79:15 96:23 164:5

**revealing**(1) 226:18

**reveals**(1) 217:12

**revenue**(4) 44:20 44:21 131:9 222:2

**revenues**(6) 40:25 40:25 41:2 41:3 102:4 171:13

**reverse**(2) 111:4 130:21

**review**(6) 52:5 71:1 71:2 71:5 151:3 151:9

**reviewed**(4) 90:6 91:4 93:13 96:8

**reviewing**(2) 191:2 196:13

**revised**(9) 17:14 17:15 20:6 66:21 67:5 67:17 68:14 70:7 193:12

**revising**(1) 149:4

**revolver**(23) 109:5 109:18 109:21 110:8 110:9 111:17 111:18 111:20 111:22 111:22 112:2 123:7 123:9 123:9 123:10 128:25 129:1 129:1 204:13 204:16 205:18 205:25 207:8

**rice**(1) 5:31

**richards**(1) 2:15

**rifkind**(1) 8:31

**right**(198) 19:10 19:24 21:11 21:24 22:2 22:11 23:12 24:4 28:18 31:2 31:17 31:24 32:20 34:21 37:2 37:23 38:21 39:5 43:9 43:15 44:13 44:23 46:4 46:25 47:24 49:7 49:12 53:22 54:21 58:7 61:11 61:19 62:3 63:22 64:4 64:14 65:2 65:4 65:7 65:25 66:12 67:21 68:19 69:13 71:4 72:6 78:12 80:4 81:3 81:7 82:3 82:5 84:19 89:11 91:14 108:20 120:6 121:23 122:4 122:8 122:13 122:16 126:13 128:11 130:14 131:17 134:6 134:9 134:11 134:13 136:9 136:23 137:5 137:23 139:8 139:11 139:11 139:14 140:16 140:18 140:21 143:8 143:1 143:25 144:4 144:13 144:22 144:25 145:5 145:8 145:13 145:22 146:6 146:9 146:17 146:19 147:22 149:8 149:9 149:25 149:17 150:2 150:3 150:4 150:7 150:15 150:23 151:7 151:25 152:1 152:14 152:15 152:20 154:8 154:12 154:13 161:16 161:1 162:11 162:19 162:25 163:1 163:7 164:19 165:1 165:12 165:20 166:2 166:6 166:17 166:23 168:6 168:16 169:5 169:10 169:11 169:16 169:23 169:25 170:1 170:4 170:11 170:17 170:21 171:2 171:3 171:5 171:11 171:23 172:5 172:18 173:6 173:18 174:2 175:1 175:4 175:15 176:2 176:10 179:19 181:15 182:15 183:5 185:1 187:8 187:13 187:22 194:6 197:15 198:11 199:5 199:20 200:3 200:17 200:23 201:13 201:3 203:13 203:19 203:23 204:19 204:20 204:22 204:24 205:4 205:20 205:23 206:2 206:23 208:10 211:12 212:3 216:3 218:3 226:6 229:2

**right-hand**(3) 103:20 106:10 193:3

**rigorously**(1) 25:22

**rise**(6) 13:2 49:11 81:23 132:11 143:18 208:6

**risk**(4) 95:12 95:16 97:19 182:3

**riskier**(3) 96:22 114:21 199:10

**riskiness**(1) 97:3

**risky**(1) 164:7

**road**(2) 41:6 48:25

**robbie**(1) 142:17

**robert**(7) 3:10 7:18 7:38 10:31 11:39 82:7 82:17

**robust**(2) 42:23 71:13

**rochester**(1) 9:17

**rockefeller**(1) 3:14

**rodney**(2) 2:18 193:4

**rogers**(1) 10:23

**roitman**(1) 6:12

**role**(6) 62:9 86:2 95:5 148:22 150:19 150:20 150:25 168:5

**rome**(1) 2:36

**room**(2) 180:1 224:23

**rosenblatt**(1) 3:9

**rosenman**(1) 11:40

**rosner**(1) 11:21

**rough**(3) 27:15 27:17 29:23

**roughly**(7) 25:14 25:14 68:17 77:18 94:10 105:25 105:25

**rounding**(1) 62:1

**route**(1) 77:9

**routes**(1) 77:11

**routinely**(1) 88:6

**row**(11) 110:4 110:5 111:14 128:24 158:8 164:21 167:21 168:22 204:13 205:17 205:18

**royal**(2) 10:22 10:22

**rudnick**(1) 7:35

**run**(7) 42:5 52:24 64:3 64:4 64:5 83:23 225:12

**rushabh**(1) 11:5

**russano**(1) 2:8

**sp**  (4) 185:11 185:17 186:7 186:13

**s-corp**(19) 112:22 113:5 113:20 114:15 115:11 118:4 119:3 119:6 119:8 120:2 121:1 130:9 130:11 130:19 139:8 140:15 142:3 218:25 219:2

**s-corporation**(4) 139:24 140:3 140:8 140:9

**s-corporation/esop**(1) 35:14

**saavedra**(1) 9:32

**sachs**(2) 7:41 7:41

**said**(55) 19:3 29:16 47:22 53:20 59:12 59:13 61:1 62:3 63:19 64:10 64:17 70:19 74:12 74:16 74:17 78:20 79:22 80:1 84:1 86:3 94:21 105:21 107:6 113:11 116:24 119:4 125:6 129:12 129:14 143:15 147:24 148:4 148:6 149:12 150:13 150:16 159:3 161:20 165:18 166:8 175:12 182:14 184:13 189:13 193:19 196:12 199:9 204:12 205:17 205:20 206:10 207:22 209:25 211:16 217:1

**sake**(1) 68:22

**sale**(10) 20:2 21:12 26:1 26:5 33:9 33:14 36:7 36:11 36:16 124:13

**sales**(6) 34:15 123:22 124:19 131:7 131:7 205:8

**sam**(1) 2:29

**same**(61) 20:5 20:18 70:7 70:9 87:17 94:10 95:10 98:3 101:11 103:12 104:24 108:9 108:10 108:12 108:18 110:2 110:3 111:7 111:10 112:17 114:22 115:24 115:2 116:7 116:20 117:6 118:13 119:2 119:9 119:16 119:16 120:13 120:13 120:19 126:6 126:16 126:16 126:17 127:7 130:15 138:8 140:6 144:22 145:17 146:10 146:10 157:7 160:13 160:13 160:16 163:8 171:23 175:24 178:23 202:25 213:3 218:11 218:2 219:3 219:25

**san**(1) 83:15

**sandridge**(1) 5:30

**satisfies**(1) 123:15

**satisfy**(2) 134:9 202:11

**save**(1) 124:24

**saving**(1) 115:25

**savings**(3) 29:4 33:8 115:14

**saw**(6) 189:18 202:22 211:9 217:2 217:2 217:3

**say**(53) 21:22 25:2 25:23 25:23 36:20 41:48:4 51:22 57:17 60:9 63:10 73:2 73:14 79:10 81:16 85:16 92:19 97:13 110:11 111:9 116:4 117:5 118:21 119:24 120:1 121:24 123:21 128:13 129:4 129:11 131:24 133:10 134:12 134:25 139:13 143:5 150:12 153:21 161:13 172:14 173:9 182:1 184:8 185:23 195:12 197:21 202:25 204:3 212:25 213:9 221:12 228:14 228:15

**saying**(4) 48:3 180:8 218:14

**says**(17) 27:9 28:23 30:18 39:12 124:12 154:20 158:9 160:6 164:21 181:6 183:24 187:24 190:19 191:24 192:17 194:14 194:15

**sbc**(1) 113:16

**scale**(1) 43:20

**scenario**(12) 44:9 58:17 69:13 69:14 69:20 69:24 69:25 70:4 70:6 70:8 70:9 125:2

**scenarios**(8) 54:12 58:22 66:13 72:19 74:20 74:24 75:19 195:15

**schedule**(1) 224:13

**scholer**(2) 4:38 11:26

**school**(13) 83:1 83:3 83:4 84:15 84:15 84:16 84:22 85:1 85:2 86:7 86:8 86:18 86:22

**schott**(1) 10:27

**schotz**(1) 1:33

**schuylkill**(1) 1:43

**schwartz**(1) 10:31

**schwinger**(1) 3:10

**scotland**(2) 10:22 10:22

**scott**(2) 7:42 11:36

**screen**(9) 20:14 20:18 136:14 140:23 179:16 192:22 193:2 193:8 194:24

**screens**(1) 135:18

**scroll**(1) 160:4

**seal**(2) 226:16 227:9

**seated**(5) 13:2 49:11 82:8 132:12 208:6

**second**(21) 23:6 28:15 32:5 32:15 32:24 48:3 51:21 57:18 90:25 92:8 99:6 99:17 108:1 123:1 136:16 158:8 182:25 189:3 219:22 220:16 220:20

**second-step**(2) 93:24 202:14

**secretly**(2) 51:24 52:2

**section**(2) 20:10 140:21

**securities**(1) 88:11

**securitization**(1) 180:20

**securitize**(2) 184:10 184:11

**security**(2) 224:25 225:3

**see**(130) 17:6 20:23 28:11 29:24 32:6 32:15 32:17 33:2 45:19 51:25 64:2 66:20 75:14 97:1 103:2 103:21 105:2 108:14 108:16 109:12 110:1 121:10 123:4 128:23 131:10 135:8 137:8 137:9 141:6 141:10 141:13 141:22 142:5 148:15 153:6 155:1 156:18 157:1 157:25 158:4 158:6 158:8 158:10 158:11 159:19 159:21 159:24 159:25 160:3 160:5 160:7 164:23 164:24 166:4 167:9 167:13 167:16 167:18 167:20 167:22 168:22 170:15 173:11 174:10 177:10 177:11 177:12 179:15 179:16 179:20 180:24 181:1 181:5 181:8 181:11 181:13 181:14 181:16 182:20 183:1 183:15 185:7 185:10 185:13 185:16 185:19 187:2 187:18 188:1 188:3 188:4 190:18 190:20 190:24 190:25 191:10 191:12 191:15 191:17 191:18 192:14 192:17 192:18 192:20 192:23 192:25 194:5 194:7 194:9 194:10 194:16 194:18 194:20 195:24 196:8 198:1 198:4 199:15 201:2 202:5 203:7 208:24 208:25 215:11 216:6 216:7 216:23 217:8 223:19 225:19

**seeing**(2) 67:13 179:4

**seem**(2) 70:20 224:11

**seen**(21) 28:7 51:15 51:17 52:4 52:11 52:13 94:22 113:23 115:18 142:25 143:4 185:21 185:22 195:5 195:7 196:10 196:11 203:1 203:1 203:5 221:9

**segment**(4) 102:5 157:2 222:3 222:4

**seife**(1) 3:8

**seiler**(1) 9:22

**select**(1) 175:11

**selected**(2) 85:11 170:16

**selecting**(1) 101:3

**selection**(2) 168:17 170:11

**self**(2) 53:6 131:2

**self-explanatory**(2) 93:25 131:14

**sell**(12) 22:8 24:14 24:20 25:19 25:23 26:3 36:9 36:14 36:18 36:21 178:23 207:6

**seller**(7) 32:12 33:1 33:20 137:16 137:18 137:21 142:1

**sellers**(7) 94:5 94:6 97:2 111:4 138:1 138:3 138:5

**selling**(2) 26:3 125:3

**seminar**(1) 85:13

**seminars**(2) 85:11 85:23

**send**(1) 13:24

**sender**(4) 177:14 185:5 187:16 195:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **senior**(4) 16:13 54:4 75:1 209:9 | | **should**(47) 16:3 28:24 30:11 30:20 30:23 31:7 32:12 33:15 37:1 38:7 39:4 39:13 56:15 62:21 65:5 65:6 65:7 65:11 73:7 79:16 93:14 115:15 120:3 123:19 138:9 138:14 138:20 139:16 139:17 140:10 140:21 150:15 150:15 151:7 151:11 169:9 173:7 176:12 179:24 185:23 202:19 203:1 204:3 206:4 208:9 218:23 220:4 | | **situation**(3) 94:15 186:2 218:10 | | **sottile**(3) 3:28 6:19 53:2 | |
| **sense**(12) 26:3 48:14 64:22 83:11 116:7 117:4 196:22 222:21 223:15 228:1 228:8 228:22 | | | | **situations**(2) 72:2 78:7 | | **sound**(3) 1:48 182:10 229:10 | |
| | | | | **six**(3) 42:11 74:20 102:14 | | **soundness**(1) 181:25 | |
| | | | | **sixty**(2) 163:13 163:20 | | **sounds**(5) 32:19 47:21 80:1 143:10 226:19 | |
| **sensitivities**(1) 56:24 | | | | **size**(1) 105:25 | | **source**(18) 18:23 18:24 19:21 26:21 27:18 28:15 28:24 32:20 33:25 47:13 48:10 51:10 57:6 65:17 131:9 172:10 204:1 218:24 | |
| **sensitivity**(10) 56:22 60:14 60:22 72:11 72:14 145:8 145:8 145:21 145:24 146:9 | | | | **skip**(1) 140:5 | | | |
| | | | | **slide**(2) 95:22 199:13 | | | |
| **sent**(1) 187:18 | | | | **slides**(3) 132:22 150:1 204:11 | | **sources**(6) 33:6 64:24 101:16 101:17 101:25 105:23 | |
| **sentence**(21) 21:1 32:24 34:6 34:8 35:1 35:22 36:2 36:6 45:15 45:24 140:1 140:5 140:6 141:9 141:14 179:14 179:22 183:17 185:16 207:3 217:10 | | **shouldn't**(2) 138:15 172:14 | | **slightly**(6) 22:19 39:9 70:4 72:23 94:11 125:23 | | | |
| | | **show**(54) 11:1 67:15 121:18 125:15 144:25 145:11 146:12 152:22 154:21 159:9 163:2 167:23 172:7 197:18 200:18 209:13 210:15 211:16 225:23 | | | | **south**(2) 1:29 4:16 | |
| | | | | | | **spaeder**(3) 3:25 6:17 | |
| | | | | **small**(7) 15:3 43:21 48:25 61:14 75:17 173:14 179:17 | | **speak**(4) 13:20 14:15 41:6 159:4 | |
| **sentences**(4) 21:2 177:17 178:18 218:6 | | | | | | **speaker**(1) 67:10 | |
| **separate**(9) 63:1 92:4 92:7 93:15 94:7 94:20 150:14 188:23 209:24 | | **showed**(7) 149:25 150:1 172:17 184:4 208:19 212:11 219:5 | | **smaller**(1) 68:25 | | **speaking**(2) 40:23 201:25 | |
| | | | | **smart**(9) 47:8 47:19 48:11 48:21 48:23 49:2 71:9 71:17 71:18 | | **special**(3) 3:40 137:20 177:18 | |
| **separately**(3) 38:24 93:14 118:16 | | | | | | **specialized**(1) 29:7 | |
| **september**(2) 192:17 202:6 | | **showing**(5) 67:16 67:21 90:18 93:17 155:3 160:15 162:23 163:17 164:18 164:2 173:4 196:23 214:1 | | | | **specializes**(1) 83:9 | |
| **serengeti**(2) 9:36 9:37 | | | | **smith**(1) 10:43 | | **specific**(13) 28:1 28:3 34:1 76:18 138:14 139:19 140:10 142:11 155:16 161:18 170:23 195:6 195:7 | |
| **series**(6) 127:25 143:12 195:14 206:5 212:11 214:10 | | | | **snippets**(2) 211:3 219:14 | | | |
| | | | | **sold**(1) 27:2 | | | |
| | | **shown**(11) 160:19 167:25 178:24 210:24 211:3 211:12 212:16 216:24 217:1 219:14 228:3 | | **solely**(4) 107:8 110:20 193:24 | | **speculation**(1) 180:4 | |
| **serious**(7) 40:10 40:12 41:10 41:23 48:2 65:18 116:9 | | | | **solvency**(106) 15:2 15:18 16:17 19:1 25:12 26:14 27:19 28:12 29:5 30:12 32:25 33:1 36:13 37:13 39:4 47:5 56:14 62:18 63:16 64:21 69:15 69:15 77:6 78:13 78:14 82:2 89:2 89:4 89:9 89:18 89:25 91:4 92:8 92:11 92:14 92:15 92:21 92:23 93:8 95:1 95:18 97:5 97:21 97:24 98:4 98:21 106:15 112:10 112:12 119:25 121:16 122:25 123:12 123:18 126:2 126:4 126:6 126:10 126:12 127:12 128:15 129:12 129:16 130:21 138:22 139:6 140:15 141:2 141:18 141:20 142:1 143:22 150:1 161:17 161:24 164:4 164:16 166:25 169:14 176:24 181:19 183:20 184:7 186:18 188:21 189:22 192:9 193:14 195:11 196:7 196:25 197:6 197:10 197:22 199:8 199:14 199:23 200:7 202:10 202:9 205:5 205:24 206:11 206:17 220:2 221:13 | | **spell**(1) 82:15 | |
| | | **shows**(15) 107:5 119:15 123:6 144:6 145:1 157:3 158:14 158:19 160:10 163:13 170:11 194:25 205:24 212:23 214:5 | | | | **spelled**(1) 82:18 | |
| | | | | | | **spend**(2) 42:4 221:10 | |
| **serve**(1) 84:11 | | | | | | **spent**(2) 60:11 149:25 | |
| **served**(2) 85:2 88:7 | | **shut**(1) 225:17 | | | | **spike**(3) 97:14 199:3 199:6 | |
| **service**(2) 1:42 1:49 | | **sic**(2) 174:22 203:9 | | | | **spread**(2) 146:10 146:11 | |
| **services**(2) 1:42 102:6 | | **side**(21) 16:12 16:14 18:17 19:15 26:9 37:2 38:1 38:24 39:14 42:9 42:19 42:23 51:8 56:16 82:10 84:1 100:1 106:5 106:6 167:19 211:20 | | | | **spreads**(7) 97:12 97:18 198:20 199:3 199:6 199:10 219:23 | |
| **serving**(2) 53:6 86:23 | | | | | | | |
| **set**(12) 46:15 82:11 99:7 102:7 104:24 105:18 132:15 132:25 174:22 174:23 175:13 189:15 | | | | | | **spring**(5) 41:19 41:20 47:20 48:12 133:19 | |
| | | | | | | **squabble**(2) 227:24 227:25 | |
| **sets**(1) 106:4 | | **sidley**(3) 1:25 8:8 29:24 | | | | **square**(1) 2:18 | |
| **settled**(1) 15:7 | | **siegel**(1) 136:9 | | | | **stabilized**(1) 222:6 | |
| **settlement**(19) 14:16 49:23 57:3 59:4 59:5 68:4 68:6 68:7 68:12 68:18 68:18 70:12 70:21 71:24 73:5 76:14 76:15 77:17 80:18 | | **sieger**(1) 11:41 | | | | **stacked**(1) 223:22 | |
| | | **sign**(1) 46:8 | | **solvent**(25) 14:11 14:22 15:20 52:19 69:17 92:2 92:17 92:19 107:10 107:12 107:16 107:17 110:13 116:22 117:1 126:6 129:15 200:12 200:16 206:1 206:15 220:1 220:13 220:19 220:21 | | **staff**(1) 83:15 | |
| | | **significant**(14) 42:7 50:11 52:7 52:22 71:10 96:20 97:1 97:18 102:4 110:25 114:6 170:25 173:11 220:11 | | | | **stages**(1) 200:13 | |
| | | | | | | **stake**(4) 95:8 101:14 175:12 184:14 | |
| **seven**(4) 103:10 158:12 158:14 178:21 | | | | | | **stand**(3) 81:21 224:19 229:5 | |
| **seven-and-a**(1) 145:1 | | | | | | **standard**(14) 26:20 26:22 33:25 105:23 118:3 126:17 133:21 134:12 134:14 134:17 138:13 140:9 150:22 176:17 | |
| **seventh**(1) 29:2 | | **significantly**(3) 72:21 94:13 114:10 | | | | | |
| **seventy-five**(1) 163:4 | | **signs**(1) 28:11 | | **some**(88) 18:14 22:17 28:10 36:22 42:7 48:19 50:23 52:18 52:25 53:6 53:16 55:6 55:11 56:3 56:24 59:23 60:1 61:7 61:11 61:12 62:8 62:11 63:2 63:3 66:5 71:11 72:11 72:16 74:8 75:7 75:19 77:1 78:20 80:8 80:11 83:16 83:16 85:22 93:13 96:3 101:8 101:9 101:9 101:25 111:1 111:1 111:3 111:4 111:14 116:4 116:18 116:19 117:2 124:24 124:25 124:25 124:25 124:9 129:7 129:8 146:13 149:3 150:18 152:4 155:11 158:22 189:6 193:11 196:13 206:19 207:6 210:6 210:6 211:24 218:5 218:6 218:12 219:6 221:8 221:10 223:16 224:25 225:3 225:9 225:14 227:17 227:17 228:21 | | **standards**(1) 136:16 | |
| **several**(5) 43:20 87:3 127:20 128:20 215:7 | | **silver**(2) 12:24 12:24 | | | | **standing**(1) 4:4 | |
| | | **silverstein**(1) 4:31 | | | | **stanley**(11) 5:18 9:27 65:8 101:19 157:5 157:10 157:16 158:14 158:19 160:20 177:18 | |
| | | **simes**(1) 6:31 | | | | | |
| **shamah**(1) 7:24 | | **similar**(4) 97:13 142:2 175:9 196:3 | | | | **stargatt**(1) 4:4 | |
| **shannon**(2) 8:38 218:6 | | **similarities**(1) 101:9 | | | | **stark**(1) 7:38 | |
| **share**(11) 18:7 18:8 22:6 23:18 65:7 65:11 65:12 65:13 80:8 181:14 182:3 | | **simple**(2) 106:9 115:21 | | | | **start**(13) 67:25 68:1 98:7 100:19 123:7 128:25 133:16 153:5 201:9 222:24 223:10 225:7 226:24 | |
| | | **simplest**(1) 128:23 | | **somebody**(1) 218:17 | | | |
| **shareholder**(3) 62:9 74:21 74:21 | | **simply**(4) 130:17 146:16 159:1 225:22 | | **someone**(1) 71:2 | | | |
| **shareholders**(1) 74:13 | | **simultaneously**(1) 184:9 | | **something**(12) 16:20 18:8 18:9 19:20 28:16 32:19 36:11 60:7 61:5 88:5 96:19 224:18 | | **started**(5) 98:10 108:8 112:1 117:2 130:1 | |
| **shares**(8) 16:2 17:21 17:24 18:5 55:20 55:21 55:25 56:2 | | **sina**(1) 12:9 | | | | **starting**(4) 96:5 109:7 216:23 217:7 | |
| | | **since**(3) 22:16 101:7 173:20 | | | | **starts**(2) 20:12 217:8 | |
| | | **single**(1) 92:5 | | **sometime**(1) 133:18 | | **state**(8) 45:15 65:6 82:15 113:23 113:24 117:24 118:9 147:9 | |
| **shaya**(1) 9:17 | | **sir**(116) 13:16 17:9 54:3 81:12 82:4 82:19 133:20 136:13 136:22 139:9 139:20 140:2 141:4 141:14 142:8 146:20 147:2 148:1 148:11 149:1 149:5 150:3 150:24 151:9 151:17 151:21 152:1 153:16 153:19 154:9 154:9 154:21 154:24 155:2 156:12 156:15 156:23 157:2 157:15 157:24 158:3 158:13 159:17 160:14 160:18 160:21 161:13 161:15 162:3 162:20 163:2 163:22 164:10 165:13 166:10 167:5 167:8 167:23 168:12 168:24 171:24 172:1 172:21 173:6 174:13 174:16 176:24 177:3 177:8 177:16 178:5 178:17 178:24 179:5 179:12 179:16 180:1 180:22 181:17 181:22 182:24 183:6 183:22 184:3 184:22 185:2 185:8 187:11 187:14 188:11 188:19 189:17 190:7 191:2 192:7 192:14 193:7 195:4 195:9 195:19 196:17 197:17 198:6 198:15 199:16 202:3 202:7 203:20 205:11 206:19 207:8 207:16 216:9 221:20 222:14 | | **sometimes**(5) 43:13 43:14 71:3 219:7 219:9 | | | |
| **she**(2) 182:21 217:15 | | | | **somewhat**(2) 73:9 199:2 | | | |
| **sheet**(47) 14:18 15:15 15:18 15:20 16:6 16:17 17:13 18:17 19:1 24:13 25:12 26:14 27:19 28:12 28:25 29:5 29:15 30:12 30:21 36:13 37:3 37:13 38:1 38:12 39:3 39:9 39:20 56:14 58:4 58:6 58:8 69:5 76:2 76:23 77:6 106:15 134:7 138:22 139:6 140:15 143:21 161:17 166:24 169:14 169:20 169:21 219:24 | | | | **somewhere**(4) 77:18 77:22 78:16 152:18 | | **stated**(9) 45:25 92:17 166:22 169:6 200:16 206:12 212:21 220:6 220:17 | |
| | | | | **sophia**(1) 8:13 | | | |
| | | | | **sorry**(20) 13:5 13:18 20:17 23:2 78:4 93:16 119:18 121:24 124:16 124:17 141:1 160:1 160:3 162:5 168:12 174:8 179:16 203:20 214:1 223:4 | | **statement**(4) 45:19 101:20 155:25 167:10 | |
| | | | | | | **statements**(2) 56:13 166:19 | |
| | | | | | | **states**(4) 1:1 1:20 87:14 88:10 | |
| **sheet-solvency**(1) 116:16 | | | | | | **stating**(1) 212:24 | |
| **sheffield**(1) 12:5 | | | | | | **statistics**(1) 131:11 | |
| **sheron**(1) 11:19 | | | | | | **status**(2) 19:12 140:4 | |
| **shield**(2) 35:11 114:17 | | | | **sort**(9) 14:10 27:11 90:8 111:9 150:17 186:3 225:23 227:3 228:5 | | **statutory**(1) 69:16 | |
| **shoots**(1) 94:9 | | | | | | **stay**(3) 72:17 73:1 151:14 | |
| **short**(6) 64:4 64:5 132:8 142:14 163:25 207:23 | | | | | | **staying**(1) 163:9 | |
| | | | | | | **stays**(2) 94:10 118:13 | |
| **short-term**(1) 103:3 | | | | | | **ste**(5) 1:36 2:38 3:36 5:20 5:33 | |
| **shortened**(1) 225:8 | | | | | | **steady**(1) 40:24 | |
| | | **sit**(2) 79:2 152:19 | | | | **stearn**(1) 2:16 | |

| Word | Page:Line |
|------|-----------|
| steege(7) 2:30 49:14 49:15 49:16 53:11 53:14 54:19 | |
| stein(1) 5:13 | |
| step(169) 14:12 14:12 14:19 14:19 15:12 15:13 15:14 15:16 15:17 15:18 15:21 16:3 16:3 17:19 17:22 18:4 18:7 18:8 21:8 26:14 26:14 31:25 37:5 37:6 39:18 44:8 45:13 46:5 47:18 50:20 50:21 51:8 51:12 51:19 51:21 52:15 52:15 52:17 52:17 52:20 53:25 54:1 55:14 55:15 55:18 55:24 57:19 61:18 62:14 62:19 62:24 63:11 63:13 63:14 63:16 65:11 69:1 69:2 69:16 69:18 72:2 72:5 72:5 74:4 74:14 74:15 74:22 75:5 77:6 77:7 77:8 78:22 78:23 81:12 89:20 89:20 93:1 93:3 94:15 94:17 97:15 98:1 98:1 99:6 103:17 107:16 109:1 110:12 112:9 119:18 119:19 123:1 126:5 126:11 143:24 146:21 149:7 149:17 149:19 149:20 150:2 150:6 150:7 150:11 150:14 150:14 156:16 157:3 159:2 160:12 160:15 162:18 162:24 162:25 163:12 163:15 164:19 165:6 165:8 165:10 165:23 166:1 166:1 167:24 172:4 174:15 181:7 181:8 181:15 183:4 186:2 187:21 188:21 189:2 189:3 190:12 190:12 194:8 194:18 194:19 198:23 198:24 199:3 199:1 199:21 199:22 200:11 200:11 200:16 201:3 201:6 204:8 205:1 205:2 205:15 206:15 206:16 206:16 211:3 215:13 219:22 220:5 220:8 220:19 220:20 222:4 | |
| step-one(2) 119:24 201:9 | |
| steps(23) 93:14 98:4 98:5 119:18 119:23 122:23 124:22 124:23 125:8 126:9 129:5 129:8 149:21 149:23 150:10 150:23 151:6 151:12 184:15 205:9 206:5 207:18 220:2 | |
| stewart(1) 87:1 | |
| sticking(1) 46:25 | |
| still(25) 13:15 22:23 34:17 35:16 41:18 46:19 72:24 73:11 74:1 79:3 79:10 81:3 107:14 119:24 121:15 141:7 159:6 189:11 189:21 191:9 204:20 205:25 206:14 220:2 226:9 | |
| stock(11) 19:13 38:22 38:23 88:14 88:24 90:8 93:22 94:8 94:13 106:25 220:5 | |
| stood(2) 46:13 62:20 | |
| stop(4) 52:3 140:11 180:10 224:12 | |
| strategy(13) 21:14 21:17 21:19 23:11 23:17 25:3 25:25 27:4 28:5 28:8 30:22 31:1 36:4 | |
| strauss(2) 4:21 9:16 | |
| street(12) 1:11 1:43 2:19 2:32 2:38 2:45 3:21 3:29 3:36 4:8 4:33 5:6 | |
| strengthens(1) 71:3 | |
| stress(8) 40:18 65:25 66:1 194:14 194:19 194:19 195:1 216:6 | |
| strike(4) 22:4 25:7 30:14 42:25 | |
| strohbehn(1) 12:34 | |
| stromberg(3) 45:17 71:4 71:17 | |
| stronger(3) 45:17 71:4 71:17 | |
| structure(44) 19:23 20:1 24:15 24:17 25:10 25:13 25:20 26:4 32:10 34:13 34:13 35:15 35:15 35:24 36:10 87:7 112:23 113:6 113:20 114:15 114:18 115:11 115:2 116:10 116:11 118:4 118:5 118:13 119:3 119:6 119:9 121:1 130:11 130:19 139:8 140:15 142:2 144:13 161:19 163:23 164:9 167:17 218:25 219:2 | |
| structures(2) 19:10 142:2 | |
| struggling(3) 78:21 79:3 79:10 | |
| students(1) 86:10 | |
| study(1) 186:4 | |
| studying(1) 86:19 | |
| stuff(1) 228:17 | |
| sub(11) 57:25 58:2 60:4 60:15 60:22 62:4 69:20 75:10 75:12 75:12 75:14 | |
| sub's(1) 58:3 | |
| subject(3) 85:19 86:2 142:3 | |
| subjective(2) 75:24 101:5 | |
| subjects(1) 87:10 | |
| sublevel(1) 79:8 | |
| submit(2) 227:10 227:19 | |
| subordinated(2) 39:23 127:2 | |
| subordination(4) 54:5 54:8 69:19 74:7 | |
| subs(13) 58:7 58:8 60:5 60:17 60:21 61:6 61:8 61:12 61:19 62:5 75:7 75:8 130:15 | |
| subsequent(1) 182:2 | |
| subsidiaries(4) 14:21 129:25 130:8 130:22 | |
| subsidiary(3) 79:1 130:5 130:7 | |
| substantial(1) 60:11 | |
| substantially(5) 44:12 57:19 57:21 72:7 73:24 | |
| substantive(1) 69:23 | |
| substitute(1) 124:18 | |
| subtracted(1) 107:3 | |
| subtractions(1) 18:15 | |
| succeed(1) 50:17 | |
| success(4) 50:16 50:19 51:7 52:23 | |
| successful(1) 35:11 | |
| such(3) 34:18 63:25 150:15 | |
| suffer(1) 52:25 | |
| sufficient(2) 134:1 138:18 | |
| sufficiently(2) 96:22 181:25 | |
| suggest(4) 52:10 52:11 52:14 191:21 | |
| suggested(4) 62:25 70:14 138:16 226:10 | |
| suggesting(2) 52:19 181:23 | |
| suggestion(2) 186:16 227:17 | |
| suggests(4) 85:5 137:3 150:14 181:24 | |
| suite(3) 3:21 3:30 4:17 | |
| sum(1) 169:23 | |
| summarize(3) 89:22 95:23 122:19 126:1 | |
| summarized(2) 121:5 131:22 | |
| summarizing(1) 91:19 | |
| summary(14) 106:14 108:16 111:15 119:10 119:16 119:17 127:12 190:24 191:9 191:16 191:16 194:10 195:4 218:3 | |
| support(2) 156:2 186:17 | |
| supportable(1) 149:17 | |
| supporting(1) 93:13 | |
| supportive(2) 197:21 199:7 | |
| supports(5) 92:12 110:12 182:13 220:18 220:21 | |
| suppose(4) 65:2 65:3 73:15 77:4 | |
| supposed(1) 41:4 | |
| suppress(1) 214:20 | |
| supreme(1) 87:14 | |
| sure(32) 19:2 20:5 20:13 21:3 25:18 34:10 62:2 68:2 69:11 78:1 80:19 129:11 131:1 143:16 156:7 157:20 170:25 178:8 186:13 186:24 187:4 188:15 188:23 192:2 192:21 193:9 196:11 198:10 207:20 222:10 225:3 228:9 | |
| surprising(1) 186:1 | |
| surveys(1) 215:12 | |
| survived(1) 71:14 | |
| sustain(1) 53:10 | |
| sustainable(3) 163:23 163:24 163:25 | |
| sustained(1) 79:13 | |
| suttonbrook(2) 6:42 6:42 | |
| swap(3) 75:13 97:12 97:18 | |
| swaps(4) 64:20 97:9 198:20 198:21 | |
| switch(4) 59:21 66:4 165:20 200:23 | |
| sworn(3) 82:4 82:7 88:20 | |
| syndicated(1) 185:10 | |
| system(1) 136:3 | |
| systematic(1) 151:3 | |
| tab(56) 91:21 93:19 95:25 98:23 99:11 99:22 99:23 102:13 103:10 104:9 104:18 105:18 106:12 107:21 108:19 108:22 110:17 112:15 117:15 119:13 120:11 120:22 121:5 121:21 121:25 122:1 122:2 122:3 122:11 124:3 124:7 128:6 135:8 135:8 139:20 148:10 167:6 167:6 172:21 178:10 180:21 182:17 183:9 185:1 187:11 190:15 192:10 192:12 193:25 195:16 202:4 208:20 215:21 215:23 218:1 | |
| tabbed(1) 144:18 | |
| table(13) 22:17 67:15 67:21 70:2 70:5 75:15 145:8 145:21 145:24 146:9 167:19 181:5 181:6 | |
| tabs(1) 124:4 | |
| take(47) 19:15 31:24 37:7 49:7 57:16 57:17 57:20 61:24 77:12 86:10 94:18 102:25 111:7 113:18 116:9 118:3 118:5 120:1 132:8 133:9 135:5 139:6 150:7 151:16 161:9 165:6 165:8 182:3 182:15 189:6 197:9 205:7 206:7 206:19 207:18 208:2 215:11 221:20 222:22 223:15 223:18 223:20 224:2 225:9 226:17 227:17 227:20 | |
| taken(9) 106:20 115:13 124:12 125:9 138:15 205:9 206:7 208:5 220:7 | |
| takes(2) 54:3 54:7 | |
| taking(12) 59:19 68:12 98:10 99:5 113:4 115:10 120:25 139:13 140:14 155:17 205:16 206:13 | |
| talk(12) 19:6 37:2 143:21 149:22 165:21 174:3 176:21 200:23 207:21 228:7 228:22 229:1 | |
| talked(15) 18:14 29:23 44:6 48:2 53:15 60:6 76:19 114:9 139:5 179:24 180:3 199:25 225:15 225:19 227:16 | |
| talking(8) 21:10 34:21 74:3 147:18 208:22 209:15 218:10 225:22 | |
| talks(1) 45:25 | |
| tap(4) 110:9 111:24 121:24 123:8 | |
| targeted(1) 181:7 | |
| tax(113) 14:20 18:18 18:20 18:21 18:21 18:22 18:23 18:24 19:3 19:7 19:15 19:16 19:17 19:18 19:25 20:10 21:3 21:4 21:5 21:9 21:13 21:14 21:23 22:2 22:5 23:10 23:11 24:17 26:1 26:17 26:18 27:11 27:24 28:2 28:5 28:15 28:16 28:17 28:19 28:20 28:22 29:3 29:4 29:8 29:14 29:15 29:18 29:19 30:5 30:6 30:7 30:14 30:17 30:17 30:19 32:10 33:8 33:17 33:8 33:9 33:11 33:13 33:25 34:17 34:20 34:23 36:10 39:15 39:17 57:17 57:19 59:15 59:17 80:12 112:22 113:5 113:13 113:18 113:20 113:24 113:25 114:17 115:11 115:14 115:24 116:11 117:19 117:23 117:24 117:25 118:9 119:3 119:6 119:8 119:8 120:2 121:1 130:9 130:12 130:18 139:7 139:14 140:3 140:14 164:5 218:25 219:2 219:2 | |
| taxes(8) 113:21 113:23 114:2 114:3 115:3 117:20 118:18 120:22 | |
| taxpayer(2) 19:12 19:14 | |
| taylor(1) 4:5 | |
| teams(1) 193:11 | |
| technically(2) 80:24 80:24 | |
| telephonic(8) 5:37 6:1 7:1 8:1 9:1 10:1 11:1 12:1 | |
| tell(22) 47:23 81:9 81:10 83:7 91:1 94:25 96:20 119:15 155:2 156:20 160:9 160:14 161:1 163:2 173:3 176:12 176:14 177:9 187:16 209:4 210:11 224:11 | |
| telling(3) 64:20 65:1 65:15 | |
| tells(2) 32:23 172:10 | |
| ten(14) 21:6 21:12 21:15 21:15 22:8 24:14 34:18 80:6 132:9 194:24 214:14 214:15 214:24 214:25 | |
| tendencies(1) 95:11 | |
| tender(4) 62:20 89:8 222:20 222:22 | |
| tenth(1) 214:14 | |
| term(6) 40:11 46:18 97:19 136:19 136:23 137:1 | |
| terminal(25) 98:17 100:3 100:5 100:16 102:10 103:15 114:25 118:10 132:4 145:4 145:12 146:11 151:23 151:23 152:3 152:3 152:10 154:22 155:3 156:20 157:2 160:6 212:20 222:4 222:9 | |
| terminal-valu(1) 100:18 | |
| terms(28) 14:15 26:23 57:11 83:23 89:19 109:3 112:6 112:21 114:4 115:19 127:1 133:24 136:24 137:2 151:10 161:23 164:3 169:21 176:14 178:22 196:12 210:5 212:17 213:13 214:22 215:19 220:3 225:24 | |
| test(37) 15:23 15:24 18:17 24:13 28:25 37:3 39:20 40:5 47:1 71:14 73:4 95:19 95:19 95:20 97:21 97:24 97:25 97:25 98:7 107:15 112:10 115:15 120:1 123:15 126:6 138:23 140:16 143:22 161:17 166:25 202:11 203:11 203:12 203:15 212:19 212:20 215:16 | |
| testified(18) 15:5 37:12 38:1 49:20 49:25 52:18 56:21 65:19 88:16 88:23 89:1 89:4 141:19 147:18 147:19 169:19 184:22 198:19 | |
| testimony(32) 14:3 23:14 50:2 62:11 69:11 74:3 78:20 78:24 79:6 79:16 85:19 85:21 88:20 88:20 140:13 147:1 147:5 152:21 155:7 166:12 176:20 189:6 189:18 205:20 211:3 211:9 222:20 222:21 222:22 223:14 223:18 228:6 | |
| testimony's(1) 224:2 | |
| testimony/deposition(1) 92:18 | |
| testing(1) 72:12 | |
| tests(7) 14:24 26:24 97:22 97:24 98:1 134:6 193:14 | |
| text(3) 135:4 193:7 218:7 | |
| texts(1) 134:24 | |
| textual(2) 30:17 31:2 | |
| than(56) 14:6 14:7 14:8 20:1 22:19 22:21 27:17 36:16 36:18 36:22 39:9 39:19 40:22 41:16 42:10 42:11 45:16 51:16 51:17 57:19 72:24 77:21 77:22 88:25 92:21 96:9 107:11 110:20 114:10 114:21 119:23 121:12 125:9 126:10 133:17 138:4 139:1 145:19 154:5 166:13 166:16 166:21 172:20 174:24 175:15 176:5 184:13 189:24 193:23 218:16 220:9 223:15 223:19 223:22 227:23 | |
| thank(32) 23:3 53:13 54:25 56:17 62:8 67:6 71:25 81:13 81:20 82:19 98:22 102:12 112:11 132:7 132:14 132:22 133:3 136:5 140:11 151:20 153:4 156:11 208:4 208:15 221:2 221:4 222:14 222:15 226:6 226:22 229:2 | |
| thanks(1) 222:13 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that(301)** 14:6 14:7 14:8 14:10 14:15 15:2 15:5 15:23 16:2 16:4 16:16 16:20 16:21 17:18 18:2 18:11 18:15 18:16 18:16 18:19 19:8 19:10 19:11 19:17 19:21 19:25 20:15 20:15 21:4 21:14 21:17 21:19 21:19 21:21 22:1 22:4 22:4 22:7 22:9 22:10 22:11 22:14 22:15 22:18 22:21 23:11 23:13 23:13 23:13 23:14 23:16 23:23 23:24 23:25 24:5 24:7 24:8 24:8 24:11 24:13 24:17 25:2 25:4 25:4 25:5 25:7 25:8 25:11 25:13 25:18 25:18 25:20 25:20 25:25 26:2 26:6 26:8 26:9 26:10 26:10 26:12 26:16 26:17 26:19 26:22 26:25 27:8 27:9 27:17 27:18 28:3 28:5 28:7 28:9 28:10 28:18 28:19 28:21 28:23 28:23 28:24 28:24 29:4 29:8 29:16 29:16 29:20 29:25 30:2 30:7 30:11 30:14 30:18 30:20 30:22 30:24 30:24 30:25 31:3 32:5 32:6 32:8 32:12 32:17 32:19 33:2 33:4 33:14 33:16 33:17 33:19 33:24 33:25 34:2 34:4 34:4 34:11 34:14 34:17 35:9 35:10 35:23 35:24 36:12 36:16 36:20 36:23 37:1 37:8 37:12 37:14 37:18 37:19 37:22 37:23 37:24 38:3 38:5 38:11 38:12 38:13 38:21 38:23 39:1 39:1 39:3 39:8 39:12 39:16 39:16 39:18 39:22 39:23 40:5 40:13 40:14 40:15 40:16 40:23 41:14 41:19 42:3 42:8 42:9 42:13 42:20 42:21 42:25 43:1 43:11 43:12 43:24 44:3 44:7 44:10 44:11 44:23 45:9 45:12 45:16 45:18 45:21 45:21 46:6 46:7 46:8 46:11 46:11 46:15 46:15 46:17 47:1 47:4 47:6 47:6 47:16 47:17 47:17 47:21 48:2 48:8 48:14 48:16 48:18 48:20 48:24 49:2 49:3 49:19 49:20 50:1 50:2 50:2 50:4 50:4 50:7 50:10 50:12 50:13 50:14 50:14 50:15 50:16 50:24 51:5 51:6 51:10 51:12 51:14 51:15 51:17 51:19 51:20 52:1 52:5 52:6 52:10 52:14 52:14 52:16 52:22 52:24 52:25 53:5 53:16 53:19 53:22 54:3 54:4 54:7 54:7 54:8 54:9 55:8 55:10 55:13 55:16 56:4 56:9 56:11 56:19 56:22 57:5 57:6 57:10 57:12 57:13 57:14 57:16 57:21 57:22 58:2 58:2 58:6 58:6 58:9 58:10 58:25 59:4 59:6

**that(301)** 59:14 59:24 60:1 60:2 60:6 60:9 60:18 60:20 61:1 61:4 61:5 61:5 61:6 61:10 61:13 61:17 61:20 61:23 61:24 62:10 62:17 62:17 62:20 62:22 62:24 62:25 62:25 63:5 63:7 63:13 64:18 64:19 64:21 65:1 65:3 65:5 65:6 65:6 65:15 65:16 65:17 65:17 65:19 65:23 65:24 66:5 66:7 66:11 66:20 66:22 67:7 67:13 68:4 68:15 68:18 69:2 69:4 69:9 69:17 69:20 69:25 70:10 70:14 70:15 70:23 71:1 71:4 71:6 71:7 71:13 71:16 71:22 71:24 72:4 72:8 72:14 72:18 73:10 73:12 73:23 74:4 74:5 74:7 74:9 74:13 74:19 74:24 75:3 75:6 75:16 75:25 76:2 76:22 76:25 77:5 77:10 77:17 77:19 77:24 78:1 78:3 78:17 78:21 78:23 79:3 79:9 79:22 79:25 80:1 80:12 80:21 81:12 83:8 83:18 83:18 84:8 84:10 84:16 84:17 85:21 85:23 87:5 87:17 88:25 89:23 90:1 90:4 90:8 90:12 90:15 90:16 91:1 91:4 91:5 91:8 91:19 91:21 91:25 92:1 92:2 92:8 92:10 92:14 92:16 92:17 92:22 92:24 93:4 93:13 93:13 93:14 93:19 93:21 94:8 94:11 94:16 94:19 94:21 94:25 95:17 95:23 95:25 96:2 96:4 96:10 96:13 96:13 96:15 96:17 96:18 96:22 97:4 97:8 97:18 98:6 98:11 98:18 99:7 99:12 99:13 99:17 100:11 101:1 101:12 101:17 101:21 101:23 102:4 102:8 102:9 102:14 102:19 102:21 103:7 103:11 103:18 103:21 103:22 103:23 104:1 104:2 104:4 104:6 104:7 104:9 104:10 104:15 104:20 105:6 105:12 105:18 105:20 105:24 106:1 106:1 106:12 106:15 106:20 106:24 107:7 107:11 107:14 107:14 107:20 107:23 108:9 108:10 108:12 108:22 109:5 109:7 109:8 109:12 109:19 109:19 109:21 109:22 110:1 110:5 110:12 110:17 111:6 112:4 112:4 112:5 112:6 112:9 112:16 112:20 112:24 112:24 113:9 113:12 113:1 113:17 113:18 113:19 113:22 113:25 114:1 114:3 114:7 114:8 114:11 114:12 114:12 114:17 114:24 115:3 115:10 115:12 115:13 115:14 115:17 115:22 116:2 116:4 116:6 116:9 116:12 116:16 116:16 116:18 116:21 116:22 117:3 117:5 117:9 117:10 117:15 117:17 118:3 118:19 119:6 119:13 119:15 120:2 120:4 120:4

**that(301)** 120:5 120:11 121:8 121:11 121:13 121:23 122:4 122:19 122:24 123:1 123:16 123:22 123:24 124:1 124:3 124:12 124:18 125:2 125:5 125:6 125:6 125:8 125:8 126:4 126:7 126:13 126:22 127:11 127:12 127:19 128:5 128:10 128:12 128:1 128:15 128:22 128:23 129:5 129:8 129:11 129:14 129:15 129:19 129:24 130:9 130:1 131:1 131:3 131:4 131:7 131:10 131:11 132:6 132:20 132:25 133:10 133:20 133:2 134:4 134:4 134:8 134:12 134:12 134:13 134:21 134:24 135:6 135:17 136:7 136:17 137:10 137:12 137:22 139:2 139:11 139:1 139:12 139:13 139:14 140:6 140:7 140:13 140:13 140:16 140:17 140:20 140:22 140:25 141:1 141:1 141:4 141:9 141:10 141:11 141:13 141:19 141:20 141:21 141:23 141:24 141:25 142:5 142:10 142:21 142:25 143:2 143:10 143:14 143:15 142:10 143:22 144:4 144:7 144:18 144:22 144:23 145:8 145:9 145:23 146:2 147:8 147:9 147:12 147:19 147:22 147:23 147:25 148:1 148:2 148:6 148:7 148:8 148:12 148:19 149:1 149:2 149:5 149:8 149:14 149:15 149:16 150:4 150:6 150:10 150:13 150:13 150:14 150:19 150:21 151:4 151:4 151:4 151:21 151:25 152:4 152:11 152:18 152:20 152:21 152:22 152:22 153:2 153:9 153:11 153:13 153:13 153:20 153:23 154:1 154:4 154:6 154:11 154:12 154:17 154:20 155:1 155:3 155:6 155:7 155:9 155:12 155:16 155:20 156:3 156:5 156:9 156:19 156:20 156:23 157:3 157:16 157:20 157:21 158:4 158:6 158:10 158:12 158:14 158:19 158:24 159:3 159:5 159:17 159:19 159:21 159:25 160:6 160:7 160:9 160:13 160:15 160:19 160:21 161:4 161:6 161:10 161:13 161:14 161:16 161:16 162:20 163:11 163:22 164:5 164:19 164:21 164:2 164:24 165:1 165:13 166:8 166:10 166:11 166:13 166:16 166:17 166:22 166:23 167:9 167:18 167:22 167:23 167:24 168:2 168:3 168:9 168:23 169:10 169:14 169:19 170:3 170:10 170:11 170:15 170:19 170:20 170:25 171:1 171:12 172:16 172:19 172:20 173:1 173:4 173:6 173:7 173:9 173:12 173:15 173:22 174:14 174:18 174:19 174:19 174:21 174:23 174:24 174:25 175:2 175:9 175:11 175:12 175:13 175:16 176:2 176:5 176:16 176:19 176:21 176:23

**that(301)** 177:1 177:11 177:12 177:13 177:17 177:18 177:25 178:6 178:6 178:18 178:21 178:24 178:25 179:12 179:15 179:22 179:23 180:4 180:5 180:6 180:11 180:19 180:24 181:1 181:6 181:9 181:16 181:19 181:23 181:24 181:25 182:10 182:10 182:13 182:13 183:1 183:2 183:3 183:3 183:5 183:17 183:17 183:18 184:1 184:3 184:4 184:9 184:17 184:18 184:21 184:22 184:23 185:11 185:13 185:19 185:22 186:3 186:15 186:16 186:17 187:18 188:2 188:3 188:12 188:13 188:16 188:20 188:23 188:24 188:25 189:1 189:7 189:17 189:17 189:18 189:20 189:21 190:1 190:2 190:4 190:5 190:7 190:13 190:21 190:25 191:2 191:11 191:15 191:17 191:21 191:21 191:21 191:22 192:18 193:4 193:12 193:17 193:21 194:4 194:7 194:10 194:14 194:16 194:17 194:20 194:25 194:25 195:1 195:4 195:5 195:10 195:19 196:2 196:6 196:14 196:17 196:22 196:23 197:1 197:2 197:4 197:13 197:15 197:24 198:1 198:4 198:7 198:7 198:8 198:9 198:10 198:12 198:16 198:16 198:17 198:18 198:19 198:23 199:1 199:6 199:7 199:7 199:19 199:15 199:22 200:1 200:5 200:5 200:6 200:12 200:17 201:1 201:2 201:15 201:17 201:18 201:19 201:22 201:23 201:23 202:2 202:10 202:12 202:13 202:15 202:17 202:22 202:24 202:25 203:3 203:12 203:12 203:22 203:23 203:24 204:3 204:12 205:6 205:9 205:10 205:17 205:22 205:23 205:25 206:5 206:5 206:9 206:11 206:12 206:14 206:25 207:2 207:3 207:9 207:9 207:13 207:16 207:21 208:20 208:23 208:24 208:25 209:2 209:7 209:18 209:18 209:23 210:7 210:13 210:16 210:22 211:13 211:14 211:17 211:18 211:19 211:23 211:25 212:2 212:3 212:3 212:6 212:12 212:18 212:22 213:7 213:17 214:6 214:12 214:23 215:7 215:9 215:22 216:3 216:6 216:10 216:23 216:24 217:5 217:10 217:10 217:12 217:15 217:21 217:22 217:23 218:1 218:3 218:12 218:13 218:15 218:20 219:1 219:7 219:8 219:9 219:15 219:23 219:25 220:4 220:5 220:7 220:7 220:9 220:10 220:12 220:15 220:17 220:18 220:21 221:8 221:9 221:11 221:16 221:17 221:18 221:24 221:25 221:25 222:1 222:7 222:9 222:18 222:22 222:23 222:25 223:2 223:5 223:11 223:15 223:19 223:22 223:23 223:25 224:2 224:10 224:13 224:16

**that(35)** 224:18 224:19 225:1 225:4 225:11 225:20 225:23 226:2 226:4 226:5 226:9 226:12 226:12 226:15 226:19 227:5 227:13 227:16 227:17 227:21 228:3 228:5 228:6 228:6 228:7 228:8 228:10 228:15 228:15 228:17 228:19 228:20 228:25 229:4 229:9

**that'd(1)** 208:2

Word Page:Line

**that's**(146) 14:18 15:6 15:9 16:19 17:17 17:18 17:20 18:13 19:5 19:7 19:23 20:12 20:20 21:10 21:12 21:17 26:7 26:19 27:12 31:13 33:21 34:20 36:8 36:12 38:5 38:7 39:25 44:2 44:5 44:14 46:3 49:5 50:9 50:17 50:20 52:8 53:23 54:13 55:25 58:24 65:15 66:12 67:7 68:25 71:15 72:10 73:5 73:23 73:25 74:25 76:6 81:5 131:17 133:24 134:2 134:17 143:16 144:4 145:3 145:7 145:14 145:22 146:5 146:14 146:19 149:9 150:3 150:24 151:8 151:13 151:15 152:1 152:6 152:15 154:12 154:16 155:12 157:10 160:4 162:9 162:11 162:19 163:1 163:5 163:7 163:18 163:19 165:2 165:12 167:9 169:6 169:11 170:1 170:5 170:18 170:22 171:5 171:11 171:15 171:23 172:1 173:6 175:1 175:4 176:1 176:7 177:3 177:20 177:23 181:13 182:12 186:8 186:1 187:19 191:6 193:7 197:8 197:16 198:18 199:5 200:4 201:13 201:21 203:12 203:25 204:19 204:22 204:25 205:1 205:2 205:20 206:24 207:20 209:13 211:7 212:4 214:8 215:17 218:14 218:18 222:9 223:7 224:4 224:8 224:20 226:20

**that's**(34) 67:5 86:18 88:5 89:20 92:3 100:14 102:23 104:9 105:1 106:10 107:21 111:18 114:1 114:8 114:10 115:22 115:22 115:23 115:23 115:24 115:25 118:3 118:6 120:22 121:15 122:13 122:16 123:24 124:18 125:9 128:11 128:14 130:2 130:3

**the**(301) 1:1 1:2 1:19 3:34 3:40 4:7 13:2 13:3 13:5 13:9 13:20 13:25 14:10 14:11 14:14 14:16 14:17 14:20 14:24 15:2 15:6 15:6 15:7 15:7 15:9 15:10 15:10 15:15 15:17 15:19 15:19 15:23 15:25 16:1 16:4 16:5 16:7 16:7 16:9 16:9 16:11 16:11 16:12 16:12 16:13 16:14 16:14 16:15 16:16 16:16 16:23 16:23 16:23 17:3 17:4 17:7 17:12 17:14 17:19 17:19 17:22 17:24 17:24 17:25 18:1 18:3 18:6 18:9 18:11 18:12 18:12 18:16 18:16 18:17 18:17 18:24 19:2 19:3 19:6 19:6 19:8 19:11 19:14 19:16 19:19 19:20 19:20 19:21 19:23 19:25 19:25 20:5 20:10 20:14 20:15 20:16 20:16 20:17 20:18 20:19 20:20 20:23 20:23 20:24 21:1 21:1 21:2 21:6 21:7 21:10 21:13 21:15 21:15 21:15 21:21 22:5 22:7 22:8 22:17 22:18 22:19 22:20 22:21 23:3 23:5 23:5 23:6 23:6 23:9 23:10 23:16 23:17 23:21 23:22 23:23 23:24 24:1 24:4 24:7 24:8 24:13 24:14 24:17 24:25 25:2 25:3 25:4 25:4 25:6 25:8 25:9 25:11 25:13 25:17 25:19 25:22 25:25 26:1 26:3 26:5 26:7 26:8 26:9 26:9 26:10 26:18 26:19 26:20 26:20 26:22 26:23 26:25 27:1 27:3 27:6 27:15 27:25 28:1 28:2 28:5 28:6 28:6 28:7 28:8 28:8 28:10 28:23 28:25 29:1 29:4 29:4 29:12 29:23 30:4 30:9 30:9 30:10 30:14 30:16 30:19 30:21 30:22 30:24 30:25 31:1 31:2 31:4 31:7 31:14 31:19 31:22 32:2 32:4 32:4 32:5 32:8 32:14 32:15 32:22 32:23 32:23 32:24 33:10 33:14 33:15 33:18 33:19 33:21 33:24 34:1 34:2 34:4 34:5 34:7 34:8 34:8 34:10 34:10 34:11 34:15 34:17 34:20 34:21 34:22 34:22 34:22 35:1 35:1 35:1 35:3 35:3 35:9 35:10 35:11 35:11 35:13 35:14 35:15 35:15 35:16 35:18 35:19 35:21 35:23 35:24 36:1 36:2 36:3 36:5 36:6 36:12 36:13 36:15 36:18 36:20 36:20 36:22 36:24 36:25 37:2 37:5 37:5 37:5 37:6 37:6 37:8 37:8 37:9 37:14 37:14 37:18 37:18 37:20 37:20 37:23 37:23 38:1 38:4 38:6 38:8 38:9

Word Page:Line

**the**(301) 38:12 38:15 38:15 38:16 38:17 38:19 38:19 38:20 38:20 38:21 38:23 38:24 38:25 39:1 39:3 39:5 39:8 39:13 39:14 39:14 39:17 39:18 39:18 39:22 39:23 40:1 40:4 40:9 40:13 40:13 40:16 40:16 40:18 40:21 40:22 41:5 41:6 41:8 41:8 41:9 41:13 41:13 41:15 41:16 41:17 41:17 41:19 41:19 41:22 41:22 41:25 42:1 42:1 42:2 42:3 42:7 42:9 42:13 42:14 42:18 42:19 42:19 42:20 42:22 42:23 42:23 43:1 43:2 43:3 43:4 43:7 43:9 43:12 43:15 43:16 43:17 43:17 43:20 43:25 44:3 44:8 44:8 44:10 44:12 44:12 44:15 44:16 44:17 44:18 44:20 44:21 44:24 45:5 45:10 45:13 45:14 45:15 45:19 45:22 45:24 46:4 46:6 46:7 46:7 46:8 46:11 46:11 46:15 46:16 46:18 46:20 46:20 46:25 47:4 47:5 47:7 47:9 47:10 47:12 47:14 47:14 47:15 47:17 47:19 47:20 47:25 48:5 48:6 48:6 48:8 48:12 48:13 48:16 48:25 49:7 49:11 49:12 49:21 49:22 49:23 50:4 50:5 51:1 51:6 51:6 51:8 51:8 51:9 51:12 51:15 51:15 51:15 51:19 51:20 51:21 52:4 52:5 52:6 52:9 52:11 52:12 52:13 52:14 52:16 52:24 52:24 53:4 53:8 53:8 53:10 53:10 53:11 53:13 53:15 53:19 53:20 53:22 53:23 54:3 54:4 54:5 54:8 54:8 54:11 54:11 54:12 54:14 54:16 54:21 54:24 55:6 55:8 55:11 55:12 55:17 55:19 55:21 55:23 56:3 56:4 56:7 56:8 56:8 56:10 56:10 56:11 56:13 56:13 56:14 56:15 56:15 56:16 56:19 57:4 57:9 57:9 57:10 57:11 57:12 57:13 57:14 57:14 57:16 57:17 57:20 57:22 57:22 57:22 57:22 57:23 57:23 57:25 58:1 58:2 58:2 58:3 58:4 58:5 58:7 58:8 58:9 58:13 58:14 58:14 58:15 58:16 58:16 58:17 58:18 58:18 58:22 58:23 59:3 59:5 59:8 59:9 59:9 59:11 59:12 59:13 59:13 59:13 59:14 59:21 59:23 60:2 60:4 60:5 60:7 60:9 60:9 60:13 60:15 60:15 60:16 60:17 60:17 60:18 60:19 60:21 60:22 60:24 60:25 61:1 61:6 61:7 61:9 61:10 61:10 61:12 61:13 61:17 61:19 61:20 61:22 61:23 62:7 62:9 62:13 62:13 62:18

Word Page:Line

**the**(301) 62:20 62:21 62:23 62:25 63:3 63:4 63:7 63:10 63:11 63:11 63:11 63:13 63:13 63:14 63:15 63:15 63:16 63:18 63:20 64:1 64:1 64:2 64:3 64:4 64:5 64:14 64:18 64:19 64:19 64:20 64:20 64:25 65:1 65:2 65:2 65:3 65:3 65:5 65:5 65:6 65:7 65:8 65:13 65:14 65:14 65:16 65:20 65:22 65:22 65:23 65:25 65:25 66:1 66:2 66:6 66:12 66:15 66:16 66:18 66:23 67:1 67:5 67:5 67:7 67:7 67:8 67:10 67:14 67:16 67:20 67:21 67:22 67:22 67:24 67:25 68:3 68:3 68:4 68:5 68:6 68:8 68:12 68:13 68:13 68:15 68:17 68:18 68:18 68:20 68:20 68:22 68:23 68:23 68:24 68:25 69:1 69:3 69:3 69:3 69:6 69:6 69:8 69:11 69:12 69:12 69:13 69:14 69:18 69:19 69:20 69:21 69:23 69:24 69:25 70:2 70:2 70:4 70:6 70:6 70:7 70:8 70:9 70:11 70:13 70:24 71:1 71:3 71:4 71:5 71:6 71:7 71:10 71:10 71:12 71:12 71:13 71:13 71:14 71:15 71:16 71:16 71:19 71:19 72:8 72:14 72:21 72:22 72:23 72:23 72:24 72:24 72:25 72:25 73:2 73:10 73:10 73:11 73:11 73:12 73:12 73:16 73:17 73:17 73:21 73:21 73:21 73:25 74:3 74:4 74:6 74:6 74:8 74:10 74:12 74:12 74:14 74:15 74:15 74:22 74:23 75:1 75:4 75:4 75:5 75:6 75:7 75:8 75:9 75:11 75:12 75:12 75:13 75:15 75:16 75:18 75:20 75:24 76:12 76:13 76:15 76:15 76:17 76:19 76:21 77:5 77:9 77:10 77:10 77:11 77:13 77:15 77:15 77:17 77:18 77:23 77:23 77:24 77:24 77:25 78:3 78:6 78:9 78:10 78:11 78:15 78:16 78:19 78:19 78:21 78:21 78:25 78:25 79:5 79:6 79:7 79:11 79:13 79:16 79:19 79:23 79:23 80:9 80:10 80:10 80:12 80:13 80:15 80:15 80:16 80:20 80:20 80:21 80:22 81:1 81:2 81:2 81:7 81:9 81:16 81:19 81:21 81:23 82:3 82:5 82:6 82:8 82:9 82:10 82:13 82:14 82:14 82:15 82:17 82:19 82:24 83:1 83:4 83:6 83:9 83:9 83:11 83:11 83:21 83:23 84:2 84:2 84:6 84:7 84:8 84:9 84:15 84:15 84:15 84:17 84:19 84:21 84:21 84:23 85:1 85:2 85:3

Word Page:Line

**the**(301) 85:4 85:5 85:8 85:12 85:12 85:14 85:17 85:18 85:18 85:19 85:20 85:22 85:23 85:24 85:25 86:1 86:2 86:5 86:7 86:8 86:17 86:19 86:21 86:23 86:24 86:25 86:25 87:1 87:5 87:6 87:10 87:14 87:17 87:19 88:3 88:3 88:4 88:10 88:10 88:11 88:12 88:12 88:13 88:13 88:14 88:14 88:24 89:11 89:15 89:19 89:24 89:25 90:1 90:3 90:4 90:6 90:12 90:15 90:16 90:18 90:18 90:20 90:22 91:2 91:6 91:11 91:12 91:14 91:23 91:25 92:1 92:1 92:2 92:3 92:4 92:6 92:8 92:11 92:12 92:12 92:13 92:16 92:20 92:22 92:23 92:24 93:2 93:4 93:8 93:13 93:13 93:21 93:23 93:24 93:24 93:25 93:25 94:1 94:1 94:1 94:2 94:3 94:3 94:4 94:5 94:6 94:6 94:7 94:8 94:9 94:10 94:11 94:12 94:13 94:13 94:14 94:16 94:18 94:21 94:22 94:23 95:2 95:5 95:5 95:7 95:8 95:10 95:12 95:14 95:18 95:21 96:2 96:3 96:5 96:6 96:7 96:12 96:13 96:15 96:16 96:16 96:17 96:18 96:21 96:21 96:21 97:2 97:3 97:5 97:13 97:14 97:15 97:15 97:15 97:16 97:16 97:17 97:19 97:20 97:22 97:23 97:25 98:1 98:2 98:2 98:3 98:4 98:5 98:7 98:8 98:10 98:14 98:14 98:15 98:15 98:23 98:23 98:24 98:25 98:25 99:2 99:2 99:5 99:5 99:9 99:15 99:16 99:21 99:25 99:25 100:1 100:2 100:5 100:5 100:7 100:8 100:10 100:10 100:12 100:13 100:13 100:18 100:19 100:24 101:4 101:11 101:12 101:16 101:17 101:17 101:18 101:19 101:20 102:1 102:1 102:2 102:3 102:3 102:6 102:8 102:9 102:10 102:10 102:15 102:15 102:16 102:18 102:18 102:19 102:20 102:20 102:21 102:25 103:1 103:4 103:5 103:12 103:15 103:16 103:16 103:17 103:18 103:20 103:20 103:21 103:23 103:23 103:23 104:3 104:3 104:4 104:5 104:6 104:6 104:7 104:7 104:8 104:9 104:24 104:24 105:2 105:3 105:4 105:4 105:6 105:9 105:10 105:11 105:12 105:13 106:3 106:5 106:5 106:6 106:7 106:10 106:13 106:15 106:17 106:17 106:18 106:18 106:18 106:19 106:20 106:21 106:22 106:22 106:23 106:23 106:25 107:3 107:5 107:8 107:9 107:10 107:12 107:12 107:14 107:19 107:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | 107:21 107:24 107:25 108:1 | **the**(301) | 129:12 129:13 129:14 129:15 | **the**(301) | 159:2 159:3 159:4 159:5 159:9 | **the**(301) | 190:2 190:5 190:11 190:17 |

108:1 108:2 108:3 108:3 108:4 108:4
108:5 108:5 108:6 108:9 108:9 108:11
108:11 108:12 108:13 108:14 108:14
108:15 108:15 108:16 108:18 108:25 109:
109:3 109:6 109:6 109:7 109:8 109:8
109:9 109:10 109:10 109:10 109:12 109:
109:23 109:25 109:25 110:1 110:1 110:2
110:4 110:6 110:7 110:9 110:12 110:21
110:22 110:23 110:25 111:4 111:7 111:7
111:8 111:10 111:15 111:16 111:18 111:2
111:22 111:23 111:23 111:25 112:1 112:2
112:3 112:5 112:6 112:7 112:12 112:17
112:20 112:22 112:22 113:2 113:5 113:5
113:5 113:12 113:13 113:14 113:14 113:1
113:15 113:18 113:19 113:19 113:20
113:20 113:22 113:24 113:25 113:25
113:25 114:3 114:5 114:5 114:7 114:9
114:10 114:11 114:13 114:14 114:14
114:17 114:18 114:22 114:22 114:24
114:25 114:25 115:1 115:4 115:6 115:6
115:7 115:7 115:8 115:8 115:9 115:10
115:11 115:11 115:12 115:13 115:13
115:14 115:14 115:14 115:15 115:24
115:25 116:6 116:10 116:11 116:11 116:1
116:18 117:1 117:4 117:5 117:6 117:11
117:19 117:21 117:22 117:22 117:23
117:24 117:25 118:1 118:4 118:5 118:8
118:9 118:10 118:11 118:12 118:12 118:1
118:13 118:13 118:14 118:14 118:18
118:19 118:20 118:20 118:21 118:22
118:25 118:25 119:1 119:2 119:3 119:5
119:5 119:6 119:8 119:8 119:9 119:11
119:16 119:17 119:18 119:18 119:19
119:20 119:20 119:22 119:23 119:25 120:
120:2 120:13 120:13 120:14 120:19
120:20 120:21 120:23 120:25 121:1 121:2
121:2 121:9 121:10 121:11 121:13 121:13
121:16 121:19 121:21 121:21 121:22 121:2
122:15 122:22 122:22 122:23 122:25 123:
123:1 123:4 123:5 123:7 123:7 123:9
123:9 123:10 123:11 123:13 123:15 123:1
123:21 123:22 123:23 123:24 123:25
124:4 124:7 124:12 124:13 124:18 124:20
124:21 124:21 124:25 124:25 125:2 125:5
125:6 125:8 125:19 125:20 125:23 125:24
125:24 126:4 126:5 126:7 126:8 126:8
126:9 126:9 126:10 126:11 126:15 126:16
126:16 126:17 126:21 126:23 126:25 127:
127:3 127:5 127:5 127:5 127:6 127:6
127:7 127:12 127:12 127:12 127:25 128:1
128:9 128:13 128:14 128:14 128:20 128:2
128:23 128:25 128:25 129:1 129:5

129:16 129:16 129:19 129:23 129:24
129:24 129:25 130:1 130:3 130:4 130:4
130:5 130:5 130:6 130:6 130:7 130:7
130:7 130:8 130:9 130:11 130:12 130:13
130:14 130:14 130:15 130:18 130:18
130:18 130:20 130:21 130:21 130:21
130:23 131:3 131:5 131:6 131:8 131:9
131:12 131:15 131:16 132:8 132:11 132:1
132:15 132:17 132:19 132:19 132:21
132:23 132:24 133:2 133:6 133:19 133:19
133:21 133:24 133:25 134:4 134:6 134:11
134:12 134:14 134:14 134:17 134:22 135:
135:10 135:11 135:17 135:21 135:24
136:3 136:4 136:9 136:10 136:10 136:14
136:15 136:16 136:17 136:19 136:19
136:20 136:22 137:1 137:5 137:15 138:3
138:3 138:8 138:10 138:14 138:15 138:20
138:20 138:20 138:25 139:1 139:1 139:2
139:3 139:7 139:7 139:15 139:20 139:25
140:1 140:2 140:6 140:8 140:9 140:13
140:13 140:14 140:19 140:19 140:21
140:22 140:22 140:23 140:25 141:2 141:2
141:7 141:8 141:9 141:18 141:21 141:23
141:25 142:2 142:3 142:3 142:8 142:15
142:22 143:7 143:8 143:9 143:14 143:16
143:17 143:17 143:18 143:21 143:24 144:
144:18 144:22 144:23 144:25 145:4 146:2
146:8 146:10 146:10 146:11 146:13 146:2
146:23 146:25 147:7 147:10 147:11
147:13 147:19 147:20 147:20 147:22
147:23 147:25 148:4 148:7 148:8 148:12
148:12 148:16 148:16 148:18 148:18
148:18 148:20 148:22 148:24 149:3 149:4
149:5 149:7 149:7 149:9 149:10 149:10
149:12 149:14 149:15 149:18 149:23
149:23 149:23 150:6 150:10 150:13 150:1
150:18 150:18 150:19 150:21 150:22
150:23 151:2 151:3 151:3 151:4 151:5
151:6 151:9 151:10 151:10 151:11 151:15
151:23 152:3 152:3 152:5 152:9 152:13
152:15 152:22 152:23 152:24 152:25
153:11 153:14 153:20 153:21 154:10
154:12 154:15 154:17 154:20 154:21
154:22 155:1 155:3 155:6 155:7 155:14
155:15 155:17 155:18 155:20 155:21
155:22 155:23 155:24 155:25 155:25 156:
156:2 156:4 156:8 156:8 156:11 156:12
156:16 156:18 156:19 156:20 157:1 157:1
157:2 157:6 157:9 157:10 157:11 157:12
157:15 157:16 157:17 157:22 157:25 158:
158:4 158:5 158:7 158:7 158:8 158:8
158:13 158:13 158:18 158:19 158:24
158:25 159:2

159:13 159:13 159:19 159:22 159:24 160:
160:2 160:3 160:5 160:5 160:9 160:13
160:13 160:13 160:14 160:16 160:22 161:
161:4 161:13 161:14 161:18 161:21
161:23 161:24 162:9 162:12 162:15 162:2
163:2 163:12 163:16 164:2 164:5 164:8
164:14 164:15 164:21 165:5 165:9 165:10
165:14 165:15 165:18 165:19 165:21
165:25 166:9 166:11 166:13 166:13 166:1
166:15 166:15 166:16 166:16 166:18
166:19 166:20 166:20 166:21 166:21
166:21 167:3 167:6 167:11 167:17 167:17
167:19 167:19 167:20 167:20 167:21
167:23 167:24 167:25 168:3 169:4 169:7
169:9 169:9 169:11 169:14 169:19 169:24
169:24 170:3 170:3 170:11 170:20 170:23
171:3 171:5 171:8 171:13 172:3 172:11
172:22 172:24 173:3 173:6 173:11 173:12
173:14 173:15 173:16 173:16 173:22
173:22 173:24 173:25 174:6 174:17 175:6
175:9 175:13 175:16 175:16 175:24 175:2
176:5 176:6 176:9 176:19 176:23 176:24
177:3 177:10 177:10 177:10 177:13 177:1
177:15 177:16 177:19 177:19 178:1 178:
178:4 178:4 178:5 178:6 178:9 178:13
178:16 178:16 178:16 178:17 178:17
178:18 178:19 178:25 179:1 179:5 179:9
179:14 179:16 179:17 179:25 180:3 180:4
180:5 180:7 180:11 180:12 180:15 180:17
180:17 180:19 180:20 180:25 180:25 181:
181:5 181:6 181:11 181:11 181:12 181:14
181:19 181:23 181:25 182:3 182:3 182:5
182:5 182:6 182:7 182:7 182:7 182:7
182:8 182:9 182:10 182:15 182:16 182:16
182:19 182:21 182:21 182:22 182:25
182:25 183:1 183:3 183:6 183:6 183:16
183:16 183:18 183:18 183:20 183:21
183:25 184:3 184:5 184:9 184:10 184:12
184:14 184:15 184:15 184:16 184:20
184:20 184:23 184:23 184:24 185:5 185:6
185:6 185:8 185:8 185:8 185:9 185:10
185:12 185:13 185:15 185:16 185:16
185:17 185:19 185:24 185:25 185:25 186:
186:2 186:5 186:6 186:6 186:7 186:14
186:15 186:16 186:16 186:16 186:21
186:22 186:23 187:1 187:3 187:5 187:5
187:9 187:11 187:16 187:16 187:18 187:1
187:21 187:24 187:25 187:25 187:25
188:1 188:4 188:7 188:7 188:11 188:12
188:19 188:19 188:22 188:23 188:24 189:
189:2 189:3 189:3 189:10 189:12 189:14
189:21 189:24 190:1

190:19 190:20 190:23 190:23 190:24 191:
191:11 191:12 191:12 191:15 191:16
191:18 191:18 191:21 191:22 192:1 192:1
192:16 192:17 192:21 192:22 192:22
193:2 193:2 193:3 193:3 193:7 193:7
193:8 193:11 193:12 193:14 193:15 193:2
193:24 194:1 194:4 194:8 194:9 194:9
194:13 194:14 194:17 194:19 194:19
194:19 194:22 194:24 194:25 194:25 195:3
195:8 195:18 195:20 195:22 195:22
195:22 195:23 195:24 195:24 196:2 196:5
196:6 196:11 196:12 196:13 196:13 196:1
196:16 196:19 196:21 197:1 197:1 197:2
197:3 197:4 197:4 197:6 197:13 197:18
197:23 197:23 197:24 197:25 197:25 198:3
198:5 198:15 198:20 199:6 199:9 199:9
199:10 199:11 199:13 200:1 200:2 200:2
200:2 200:3 200:6 200:12 200:17 201:5
201:24 201:25 201:25 202:3 202:4 202:7
202:9 202:11 202:12 202:13 202:14 202:15
202:18 202:18 202:19 202:25 203:3 203:
203:7 203:22 203:24 204:1 204:3 204:3
204:4 204:9 204:11 204:12 204:13 204:18
205:2 205:7 205:8 205:9 205:9 205:12
205:17 205:17 205:21 205:21 205:23
205:25 205:25 206:6 206:10 206:11 206:1
206:13 206:15 206:15 206:16 206:17
206:17 206:19 206:20 207:2 207:2 207:3
207:8 207:9 207:25 208:3 208:6 208:7
208:10 208:12 208:14 208:22 208:23
208:23 209:5 209:6 209:7 209:8 209:8
209:18 209:19 209:23 210:1 210:2 210:3
210:4 210:13 210:14 210:24 211:6 211:10
211:13 211:16 211:16 211:20 211:20
212:13 212:15 212:15 212:16 212:17
212:18 212:22 212:24 213:2 213:2 213:3
213:3 213:5 213:7 213:8 213:9 213:10
213:10 213:12 213:13 213:14 213:20
213:20 213:23 214:3 214:7 214:11 214:11
214:12 214:12 214:13 214:14 214:14
214:15 214:17 214:17 214:18 214:21
214:23 214:24 214:24 214:25 215:2 215:3
215:8 215:12 215:21 216:5 216:10 216:11
216:12 216:16 216:18 216:19 216:22
216:24 217:1 217:3 217:3 217:4 217:5
217:7 217:10 217:12 217:14 217:14 217:18
217:19 217:20 217:21 217:23 217:25
218:11 218:11 218:13 218:13 218:15
218:16 218:16 218:17 218:17 218:19
218:19 218:20 218:20 218:21 218:22
218:22 218:23 218:24 218:25 219:2 219:2
219:3 219:11 219:15 219:16 219:17 219:18
219:18 219:18

**the**(136) 219:19 219:19 219:20 219:20
219:21 219:22 219:22 219:23 219:23
219:23 219:25 220:1 220:2 220:2 220:4
220:7 220:8 220:8 220:10 220:11 220:11
220:13 220:17 220:18 220:18 220:19
220:19 220:20 220:22 220:22 220:22
220:22 221:3 221:5 221:8 221:10 221:11
221:12 221:16 221:16 221:18 221:20
221:21 221:22 221:23 221:24 221:24 222:2
222:4 222:5 222:6 222:8 222:14 222:20
222:22 222:23 222:24 222:25 223:2 223:5
223:8 223:12 223:13 223:17 223:21 224:1
224:5 224:7 224:10 224:17 224:20 224:20
224:21 224:22 224:24 224:25 225:2 225:2
225:3 225:7 225:14 225:15 225:17 225:18
225:18 225:18 225:19 225:21 225:21
225:21 225:22 225:24 226:1 226:2 226:4
226:6 226:8 226:11 226:11 226:13 226:14
226:15 226:15 226:18 226:21 227:3 227:5
227:6 227:9 227:10 227:11 227:12 227:12
227:13 227:15 227:15 227:18 227:19
227:20 228:1 228:2 228:4 228:6 228:9
228:12 228:12 228:15 228:16 228:19
228:19 228:25 229:4 229:9 229:10 229:10
229:11

| Word | Page:Line |
| --- | --- |

**their**(29) 25:9 25:12 25:19 28:9 28:12 28:12 46:8 65:10 95:7 95:11 95:12 95:16 96:9 96:9 139:17 154:22 155:18 156:21 158:14 158:19 170:17 171:1 184:14 189:1 200:11 202:11 202:20 212:14 212:15

**them**(30) 26:3 27:25 28:1 28:2 42:17 48:14 54:1 57:21 59:19 63:19 69:3 71:14 71:18 77:3 82:12 92:7 125:15 131:24 146:18 149:19 153:7 170:25 190:5 202:19 205:7 211:10 217:2 217:2 224:17 226:3

**themselves**(4) 22:22 159:4 212:14 215:19

**then**(129) 16:2 16:5 16:11 16:21 18:11 18:22 18:23 18:25 19:17 19:18 20:3 31:22 32:14 33:8 35:8 35:9 38:9 39:7 41:8 45:24 48:3 51:25 57:7 60:14 60:17 60:21 61:12 62:5 62:6 64:1 64:6 65:1 66:22 68:12 68:22 69:3 69:16 69:16 69:20 70:7 72:19 73:14 73:16 73:21 73:25 74:14 74:19 75:8 77:9 81:2 83:17 85:13 86:16 86:17 86:25 87:1 90:6 91:4 94:2 96:8 98:13 100:3 100:4 100:7 100:9 100:15 100:20 101:25 102:25 103:1 104:12 105:6 105:8 105:9 105:12 106:6 106:24 107:2 107:3 108:2 108:7 108:9 108:13 108:15 109:11 109:15 109:18 109:19 109:25 110:2 114:4 114:24 115:4 117:20 118:9 120:23 121:5 123:18 123:10 123:13 124:19 126:1 126:17 127:15 130:2 130:8 140:5 140:5 145:4 149:1 158:12 159:9 163:15 174:23 181:14 181:14 187:2 190:4 192:17 194:14 194:22 202:15 203:4 203:6 214:9 214:14 217:3 223:1 226:16

**there**(109) 19:2 19:3 23:23 24:2 26:25 29:15 29:22 30:2 30:6 30:7 32:2 33:23 37:20 38:11 41:24 42:16 48:10 49:12 50:17 51:6 52:3 52:18 53:25 53:25 57:12 57:15 57:17 61:8 61:11 62:24 62:25 64:2 64:3 67:8 69:25 70:3 71:22 73:6 77:1 77:5 79:23 90:20 94:15 94:16 96:12 96:15 97:14 97:18 107:13 109:12 109:15 112:20 113:16 113:19 114:6 125:8 130:16 131:13 134:8 137:8 138:24 140:11 140:20 141:1 141:23 143:14 144:12 145:23 145:25 146:15 147:4 148:6 149:2 151:21 153:7 155:11 158:23 172:15 173:11 179:14 179:23 180:5 180:10 183:17 186:19 191:13 194:12 196:20 197:23 199:2 202:1 204:4 206:5 207:11 208:12 208:23 209:17 209:25 210:10 210:6 210:20 210:21 211:12 211:23 216:6 224:23 225:9 225:20 227:17

**there'll**(1) 223:16

**there's**(39) 27:8 28:23 29:1 49:8 50:23 52:9 55:14 75:6 75:9 131:6 131:7 131:18 134:8 138:17 138:23 140:5 144:25 152:21 153:1 167:20 167:21 169:7 173:13 173:21 183:17 184:16 185:11 188:23 191:10 192:17 192:22 194:18 194:23 207:13 209:12 212:25 214:19 224:22 225:16

**therefore**(13) 19:14 27:5 30:20 33:11 43:5 69:13 69:24 80:17 92:21 93:2 189:19 192:4 206:17

**there's**(35) 100:1 100:1 100:3 100:5 100:7 100:9 100:9 103:18 104:1 109:8 109:18 109:19 109:21 111:5 111:6 111:16 111:17 111:21 111:23 111:24 114:5 114:5 115:1 115:7 116:1 117:18 120:21 123:16 124:22 125:1 125:6 126:23 126:24 127:2 129:19

**thinking**(7) 47:12 62:18 62:18 62:19 64:23 71:6 215:5

**these**(57) 22:5 30:11 50:10 50:15 63:23 64:6 69:9 77:12 77:14 91:25 92:10 94:19 96:12 98:17 100:14 101:24 103:19 105:5 106:3 106:21 107:1 107:24 108:2 111:12 119:11 120:4 123:14 123:18 124:19 137:2 151:6 151:11 153:6 155:24 158:23 160:18 165:17 170:24 171:17 171:21 175:7 175:2 175:24 185:18 202:16 203:22 207:14 207:18 207:19 212:2 213:14 214:4 214:23 222:2 226:1 227:1 227:2

**they**(103) 14:21 14:22 22:21 22:22 25:8 25:10 25:11 25:19 26:5 28:9 36:17 37:19 40:23 41:1 42:3 42:13 42:19 42:24 42:25 42:25 43:2 43:2 43:4 43:4 43:6 43:7 43:9 43:11 43:12 43:14 43:16 47:7 48:1 48:13 48:15 48:16 48:16 50:17 50:18 51:17 52:23 55:24 61:9 62:21 63:22 63:24 64:1 64:6 65:8 69:24 71:3 71:12 71:21 71:21 75:14 82:3 86:11 96:13 96:23 97:13 98:11 101:13 106:1 108:7 112:8 116:1 125:19 129:9 137:3 139:18 142:12 142:12 153:20 153:21 154:4 154:21 158:11 158:12 158:16 171:3 171:8 183:3 183:3 183:18 183:20 184:10 184:17 187:2 190:2 190:4 202:11 202:19 206:8 206:8 212:14 218:9 218:21 219:17 219:25 224:19 224:1 224:11

**they'd**(1) 184:17

**they're**(15) 26:2 36:14 61:18 70:11 75:16 131:14 131:22 134:25 135:21 143:13 155:7 157:21 184:10 191:22 207:11

**they've**(1) 71:5

**they're**(2) 93:14 97:13

**thing**(8) 16:15 118:21 120:13 123:24 127:7 225:11 227:13 227:24

**things**(29) 18:16 41:5 42:2 42:9 43:8 51:1 143:16 158:24 176:23 203:18 206:20 207:1 207:11 207:13 207:15 207:19 218:7 218:10 220:7 225:6 226:23 228:11

**think**(165) 14:16 15:1 18:7 22:11 22:18 30:7 30:9 33:24 34:1 34:5 35:6 36:11 36:12 36:13 37:16 37:18 38:4 39:7 41:7 41:15 41:17 42:13 43:18 45:15 46:17 48:5 48:7 48:20 50:18 53:19 57:2 57:7 57:15 58:21 58:22 61:1 61:21 64:6 64:9 65:10 66:10 70:3 70:5 70:19 70:24 70:24 71:1 71:22 72:16 73:6 73:14 73:17 73:15 75:21 76:4 76:8 76:17 81:5 83:25 92:6 95:13 95:14 98:11 98:25 99:16 99:17 99:23 102:23 103:25 107:1 110:25 111:15 112:24 120:19 123:17 128:17 128:11 129:9 129:15 131:2 131:3 131:4 131:14 131:22 131:24 132:22 133:18 133:23 135:1 137:2 137:3 137:25 138:9 138:13 138:17 139:15 140:12 142:10 143:19 144:5 144:17 146:13 148:5 150:9 152:11 152:18 153:18 153:21 157:7 159:4 163:24 166:18 169:6 170:21 172:16 172:17 173:10 177:20 178:17 180:25 181:11 182:17 182:19 182:20 183:8 183:13 183:14 184:1 184:3 184:5 185:2 185:4 185:5 185:12 185:18 185:21 185:23 185:24 186:8 186:14 186:21 187:9 189:11 189:13 189:20 190:7 190:17 190:18 190:20 191:2 191:6 191:7 191:24 192:1 192:13 193:16 193:5 195:3 195:6

**this**(61) 195:7 195:9 195:9 195:10 195:18 195:19 196:1 196:4 196:10 197:17 197:18 198:18 199:21 200:8 201:2 201:15 202:4 202:5 202:22 203:4 203:5 203:5 204:4 204:8 204:11 204:18 205:9 205:14 205:18 205:21 205:24 206:3 206:9 206:9 208:22 209:1 209:4 209:9 209:13 209:20 210:15 213:16 214:1 215:18 216:2 216:11 216:23 217:17 218:3 220:16 222:7 222:23 223:6 225:16 227:1 227:12 227:22 227:24 228:2 228:23 229:4

**thomas**(3) 3:7 5:32 86:24

**thornburg**(1) 5:18

**third**(30) 19:2 19:4 26:4 36:7 45:15 47:17 48:6 48:10 57:22 67:22 90:17 92:24 92:25 110:24 111:12 112:4 127:3 127:22 130:24 145:18 149:10 149:20 167:20 175:11 175:23 188:25 203:16 217:21 219:21 223:5

**third-party**(12) 120:8 120:14 121:11 122:21 189:24 190:13 190:14 193:21 203:22 203:24 210:13 210:17

**this**(301) 13:19 15:24 18:2 18:2 18:22 20:15 20:23 21:6 21:22 21:23 22:9 22:15 22:16 23:5 23:17 24:12 24:15 24:17 24:25 24:25 25:6 25:24 26:21 27:2 27:4 27:17 28:14 29:8 29:23 29:24 30:18 30:22 32:22 33:15 33:25 34:22 34:22 35:9 35:13 35:13 35:22 36:2 36:10 36:19 38:10 43:20 45:25 46:16 46:17 49:9 53:4 54:16 56:25 59:18 60:10 60:24 61:25 62:4 62:12 62:20 63:7 63:12 67:16 67:17 67:21 67:21 71:8 72:16 74:11 74:16 75:9 75:18 77:16 79:6 81:14 82:10 82:12 83:6 84:1 84:11 85:24 87:17 89:7 89:14 89:20 90:9 90:14 91:10 93:22 96:3 97:3 98:24 100:17 102:15 102:18 103:12 103:13 103:24 105:22 105:25 106:14 106:17 106:18 107:5 108:23 109:1 110:4 110:6 110:6 110:10 110:11 110:17 110:15 110:25 111:5 111:10 111:12 111:17 111:17 111:24 112:2 112:5 113:3 113:6 113:13 115:10 115:19 116:7 116:8 116:10 116:22 116:23 118:6 118:22 119:16 119:17 120:13 120:16 120:16 121:13 121:15 121:22 122:20 122:22 123:6 123:16 125:11 124:5 125:7 125:10 128:9 128:13 128:21 129:8 129:10 129:10 129:12 129:22 129:2 133:16 135:11 135:25 139:7 139:23 141:22 142:16 144:12 144:22 144:22 145:25 146:4 147:4 147:5 147:17 148:15 148:19 148:22 150:8 150:23 152:8 152:8 152:21 153:23 154:5 154:7 154:17 155:7 156:8 156:14 157:12 158:4 159:10 159:14 160:10 162:1 163:9 163:22 164:11 164:18 165:3 165:5 165:23 167:9 167:14 167:16 167:24 168:2 170:3 170:9 170:10 171:16 171:19 172:2 172:4 172:22 173:10 173:20 174:10 175:1 175:13 175:15 176:2 176:2 176:6 176:13 176:16 176:20 176:25 177:8 177:14 177:20 178:2 178:5 178:7 178:13 178:14 178:24 179:1 179:4 179:6 179:9 179:12 180:8 180:10 180:12 180:21 180:24 181:18 181:20 181:24 182:17 182:19 182:20 183:1 183:8 183:13 183:14 183:24 184:1 184:3 184:5 185:2 185:2 185:5 185:12 185:18 185:21 185:24 186:8 186:14 186:22 186:13 187:16 187:18 187:19 188:9 189:1 189:13 189:20 190:7 190:17 190:18 190:20 191:2 191:6 191:7 191:24 192:1 192:13 193:16 193:5 195:3 195:6

**those**(87) 14:23 19:18 25:15 27:16 32:1 35:20 36:1 40:19 40:21 43:8 47:16 50:5 54:5 54:15 56:13 58:11 60:14 60:15 61:13 66:12 66:19 69:15 69:23 72:12 72:12 77:1 85:17 90:17 91:23 98:13 100:17 100:21 101:22 102:7 105:1 106:6 106:19 108:10 109:24 116:1 116:20 121:5 122:15 123:11 129:8 130:13 131:15 132:23 135:18 139:13 139:13 139:19 143:2 143:7 146:17 160:20 163:8 164:7 166:14 170:16 170:19 175:19 175:19 183:22 184:12 190:4 198:14 207:9 207:15 209:5 209:9 210:25 211:11 211:4 211:14 212:16 212:18 218:7 218:9 219:16 223:21 224:4 224:4 224:5 225:5 226:13 226:14

**though**(13) 18:3 36:2 63:24 68:1 73:4 98:5 116:17 116:20 122:23 125:7 129:4 136:23 225:8

**thought**(23) 14:23 15:24 24:11 26:16 40:5 47:2 48:15 48:18 52:14 55:22 56:14 59:18 61:25 63:18 65:16 80:6 95:8 96:4 97:18 103:22 125:4 157:20 196:3

**thousand**(1) 133:15

**three**(30) 14:24 18:20 33:5 43:19 57:15 58:11 63:21 64:9 64:25 65:2 67:9 91:25 95:18 95:25 97:23 98:3 102:13 103:2 103:4 105:23 106:3 106:22 112:18 126:17 178:18 183:18 183:23 194:13 216:9 224:3

**through**(27) 13:19 14:4 14:5 18:20 20:1 20:1 42:21 57:2 59:3 67:20 71:5 74:21 106:21 120:20 125:17 131:12 131:17 133:9 134:6 135:1 164:24 178:22 224:21 225:23 225:24 226:17 228:2

**throughout**(5) 83:21 85:9 86:3 86:9 189:13

**thursday**(1) 13:1

**thus**(1) 222:6

**time**(110) 13:20 14:5 14:11 16:7 24:25 28:6 31:25 32:24 36:19 36:20 37:5 37:6 37:8 38:6 38:17 39:1 43:12 44:4 45:19 46:6 46:7 46:16 46:17 51:12 60:11 62:17 63:13 63:16 65:16 67:13 72:22 80:8 81:14 81:16 82:12 87:24 87:24 89:7 90:5 90:14 91:10 93:23 94:11 95:7 96:16 97:3 97:15 97:15 101:23 106:25 109:2 112:5 116:13 118:10 119:17 119:20 121:21 128:1 130:24 131:13 141:2 147:12 147:24 148:1 148:18 149:3 149:25 152:14 159:13 164:1 165:22 167:23 168:3 170:3 177:14 182:21 185:8 186:6 187:13 187:16 188:12 188:19 189:1 189:14 196:1 196:4 200:23 204:4 206:15 206:16 207:25 210:15 212:24 213:2 215:12 215:14 217:18 217:19 219:19 219:22 220:10 220:20 221:10 224:16 224:20 227:18 227:23 228:5 228:19

**time-warner**(2) 38:21 38:23

**times**(12) 85:13 87:14 87:15 88:17 88:18 88:22 88:25 101:24 170:19 183:19 196:2 215:7

**title**(4) 84:18 157:15 159:19 159:24

**today**(15) 28:14 42:11 43:5 43:6 79:2 85:19 147:11 152:16 170:4 179:23 182:14 222:19 223:23 228:24 229:5

**today's**(1) 14:3

**together**(5) 43:8 47:1 151:7 226:1 226:11

**told**(10) 43:24 44:6 46:11 135:17 135:21 136:2 152:12 155:6 183:17 221:9

**tomorrow**(11) 43:6 43:6 43:9 223:11 223:21 223:22 223:23 225:8 225:12 226:5 229:1

**too**(7) 103:22 125:7 160:23 180:8 199:22 228:10 228:20

| Word | Page:Line |
| --- | --- |

**took**(16) 26:8 59:11 59:16 60:25 61:6 71:9 103:7 104:3 108:2 108:3 108:8 108:8 130:4 130:8 133:11 147:18 166:18

**top**(26) 17:7 67:7 71:15 72:23 72:25 73:10 73:12 73:17 101:17 109:6 109:10 110:1 113:15 141:8 145:4 154:20 155:1 160:2 160:6 177:10 180:25 182:25 194:13 195:2 197:13 221:24

**topic**(5) 53:21 59:21 63:7 71:25 112:12
**topics**(3) 66:4 85:11 165:20
**torres**(2) 5:11 11:18
**total**(9) 38:19 56:10 100:9 107:3 109:24 181:12 188:7 217:15 224:3

**total-enterprise**(1) 107:2
**touch**(1) 109:22
**tough**(3) 71:9 71:17 71:18
**toussi**(1) 12:9
**toward**(9) 30:21 48:18 73:11 76:14 76:16 82:14 185:19 186:16 207:2

**trace**(1) 42:21
**traci**(1) 229:15
**tracking**(1) 44:8
**trade**(2) 75:12 88:13
**traded**(1) 97:4
**tradeoff**(2) 115:2 115:8
**trading**(3) 16:1 16:12 88:12
**traditional**(4) 95:18 97:23 98:16 99:8
**tranche**(1) 169:5
**transaction**(51) 16:10 24:25 25:4 25:25 28:6 34:14 35:9 36:25 37:5 47:9 48:17 63:12 86:1 92:5 93:24 94:9 106:2 110:22 128:16 128:17 138:7 139:7 141:3 143:8 149:23 150:18 150:23 151:6 154:8 167:11 174:4 175:13 175:18 176:1 176:3 176:25 178:2 178:5 178:7 179:2 179:6 180:13 182:17 184:7 186:21 186:23 188:19 196:20 199:18 215:18 219:20

**transactions**(32) 34:16 48:23 86:2 87:22 92:5 92:7 93:15 94:7 94:8 94:20 94:20 98:20 105:24 105:24 106:2 106:4 107:6 119:18 121:14 128:17 138:7 138:8 174:14 174:20 175:7 175:11 175:14 175:19 175:23 176:10 182:2 182:11

**transcriber**(1) 229:15
**transcript**(7) 1:18 1:49 14:4 22:24 23:6 60:25 229:10

**transcription**(2) 1:42 1:49
**transfer**(5) 14:25 26:24 27:10 28:24 39:12
**trash**(1) 177:19
**trb**(4) 49:15 52:6 54:2 179:24
**treasurer**(1) 148:18
**treat**(2) 59:13 80:12
**treated**(10) 37:12 39:18 42:13 42:14 54:16 55:25 57:23 59:14 120:3 130:18

**treatise**(2) 32:16 32:23
**treatment**(1) 113:13
**trehan**(1) 6:33
**trend**(1) 129:3
**trial**(1) 135:2
**trials**(1) 88:21
**trib**(1) 202:20

**tribune**(176) 1:8 2:23 2:23 8:4 8:19 8:27 14:20 18:22 19:8 19:11 19:12 19:15 21:3 21:4 21:7 21:13 21:20 22:8 24:14 24:20 24:22 24:24 25:2 25:5 28:17 29:19 30:8 30:18 30:20 30:23 30:24 32:9 32:11 33:7 34:12 34:16 35:11 35:12 36:9 36:14 36:21 37:14 38:5 38:12 38:13 38:15 42:5 42:9 46:6 46:18 48:15 51:9 51:16 51:21 51:24 52:15 52:17 52:19 55:22 56:11 56:19 57:23 57:24 58:8 60:4 60:16 60:16 60:18 60:21 60:23 61:7 61:7 61:11 61:15 61:20 62:5 62:5 62:6 62:18 63:1 63:4 63:20 64:1 64:4 64:15 65:16 69:17 69:18 74:14 74:23 75:4 75:4 75:9 75:15 76:22 77:11 79:7 89:19 90:4 92:2 92:16 93:4 98:16 99:2 100:10 101:19 103:23 105:7 105:12 106:9 109:4 107:9 107:10 107:12 107:16 109:2 109:4 110:7 110:13 112:1 112:1 113:15 113:20 113:22 116:10 119:20 121:10 123:11 123:15 123:22 126:6 129:15 131:5 141:19 147:8 149:3 155:20 155:25 156:1 157:17 161:18 162:24 163:3 163:16 167:11 169:15 170:3 171:1 171:13 175:8 175:20 175:25 186:2 190:11 190:19 194:10 196:1 197:7 200:12 201:15 201:18 201:22 202:1 205:9 206:6 206:15 207:4 207:17 209:19 214:11 215:3 220:1 220:8 220:13 220:19

**tribune-specific**(1) 164:8
**tribune's**(19) 92:13 92:25 93:22 94:8 94:12 98:8 98:14 102:10 104:6 106:7 106:14 118:5 118:14 118:20 118:22 121:1 121:2 126:2 127:15

**tricadia**(2) 12:16 12:16
**tried**(6) 25:22 47:11 64:6 89:24 132:5
**trigger**(1) 21:13
**trip**(1) 183:3
**trouble**(1) 55:22
**true**(15) 15:24 22:6 22:10 36:7 38:2 42:4 45:18 50:20 53:20 77:17 92:3 159:5 165:13 207:16 218:24

**truly**(2) 77:12 175:7
**trump**(1) 10:36
**trust**(5) 7:35 11:18 49:21 52:21 52:24
**trustee**(2) 3:34 3:34
**trusty**(1) 68:2
**truthful**(1) 23:14
**try**(14) 13:19 35:25 37:17 42:21 60:19 67:1 73:14 131:24 147:17 147:17 154:14 179:18 194:13 226:21

**trying**(15) 22:16 31:13 51:24 52:2 58:16 60:12 138:6 145:10 192:8 196:24 197:18 215:2 224:8 225:21 227:23

**tuliano**(10) 91:3 124:1 124:11 146:1 146:7 150:4 150:8 213:1 214:13 214:20

**tuliano's**(9) 212:8 212:20 214:2 214:8 214:10 214:16 214:18 214:24 221:17

**tuliano's**(6) 97:6 124:2 124:11 131:18 132:2 143:23

**turn**(73) 37:1 39:17 40:1 43:13 71:25 82:10 93:7 93:21 95:21 97:20 98:22 100:12 103:9 106:11 108:15 108:21 110:15 112:11 112:13 121:21 123:10 124:15 128:1 129:18 130:23 135:8 135:14 137:5 139:20 139:24 144:21 148:10 154:17 154:24 156:16 156:23 158:3 159:22 162:3 162:21 164:10 165:3 167:5 167:14 174:24 172:21 173:1 174:14 177:4 178:9 179:8 181:3 182:17 183:9 187:11 187:25 190:15 190:23 192:10 194:8 195:16 200:25 202:3 203:19 205:11 208:20 209:1 210:9 210:16 213:19 215:21 217:25

**turned**(3) 135:18 135:18 182:9
**turning**(1) 79:7
**turns**(3) 123:13 130:15 204:23
**twelve**(1) 178:22
**twenty-eight-million-dolla**(1) 165:9
**twenty-six**(1) 165:9
**twenty-two**(1) 215:24
**two**(110) 21:2 23:2 37:16 40:21 43:19 53:25 56:13 63:25 64:14 78:10 84:6 86:24 89:20 90:10 92:4 92:7 93:1 93:3 93:14 92:10 98:4 98:5 116:1 117:15 117:18 118:12 119:4 119:17 119:18 119:19 119:2 120:16 120:19 121:14 122:23 126:8 128:16 129:19 130:2 130:13 132:22 136:3 139:9 149:7 149:17 149:20 149:23 150:7 150:10 150:14 150:23 151:6 151:11 151:21 153:6 156:15 157:3 160:12 160:15 163:9 163:12 163:16 165:6 165:8 166:1 167:24 172:4 177:17 178:17 181:8 181:5 183:4 183:25 184:12 184:15 186:2 187:21 188:21 190:12 194:8 194:18 194:18 197:23 198:24 199:19 199:21 199:22 200:11 200:16 201:6 205:15 206:16 206:16 214:1 215:13 216:14 220:2 220:6 220:8 223:21 224:1 226:23

**two-thirds**(4) 44:17 44:24 45:14 57:9
**type**(10) 111:2 111:9 119:16 120:14 126:15 154:12 169:20 175:18 176:8 179:1
**types**(5) 83:10 87:21 90:7 112:18 131:11
**typical**(2) 104:21 137:21
**typically**(3) 17:2 207:22 227:6
**u.s**(1) 8:44
**uh-huh**(2) 209:16 212:2
**ultimate**(1) 159:10
**ultimately**(3) 65:21 78:17 212:18
**um-hum**(8) 61:16 89:22 96:25 99:14 100:22 114:20 118:24 123:2

**umm**(1) 166:3
**unable**(1) 48:24
**unanswered**(1) 40:14
**unavoidable**(1) 13:6
**uncertain**(2) 103:24 147:20
**uncertainty**(3) 94:14 94:16 104:5
**under**(37) 13:15 14:19 18:25 19:12 19:25 26:1 27:6 31:4 33:23 34:13 34:16 45:25 54:11 61:9 61:21 62:5 64:15 64:16 64:17 65:6 113:20 117:12 123:18 136:15 138:12 139:25 174:24 176:6 188:7 194:19 194:19 194:22 195:14 204:16 204:18 226:16 227:9

**underlying**(3) 26:19 33:24 69:23
**underperformed**(1) 64:5
**understand**(22) 13:15 15:15 17:4 27:2 28:5 31:1 40:8 40:15 47:4 57:21 60:12 78:3 78:21 79:3 79:6 79:11 112:7 138:6 166:10 166:20 170:13 217:14

**understanding**(25) 23:14 28:10 29:5 36:3 37:22 37:24 51:13 53:5 54:2 55:7 55:10 56:7 59:16 104:1 113:22 130:5 137:1 149:18 150:18 166:8 170:5 171:15 174:17 196:23 223:24

**understood**(10) 15:5 17:3 25:7 26:16 28:8 59:15 59:19 59:20 166:11 199:1

**undertaken**(2) 52:5 207:21
**unexpected**(2) 41:5 41:6
**unfortunately**(1) 226:16
**unidentified**(2) 179:18 215:23
**unique**(2) 142:21 218:12
**united**(4) 1:1 1:20 87:14 88:10
**universities**(1) 88:3
**university**(51) 83:1 83:5 84:13 84:20 84:22 84:23 85:1 85:4 85:8 85:8 86:14 86:16 86:17 87:7 88:5

**university-wid**(1) 85:4
**unknown**(3) 67:1 67:4 67:10
**unless**(2) 48:14 51:23
**unlevered**(2) 102:24 162:10
**unlike**(2) 196:2 221:8
**unprecedented**(1) 93:1
**unrealistic**(2) 117:3 210:5
**unreasonably**(1) 15:3
**unsecured**(2) 3:5 6:5
**until**(2) 21:6 21:14
**update**(1) 194:5
**upon**(6) 52:5 54:5 166:9 181:7 181:8 181:15

**upper**(1) 103:20
**usa**(1) 11:4
**use**(39) 17:2 17:25 19:11 25:3 77:4 77:23 85:25 100:12 100:17 101:2 104:3 107:12 109:5 114:15 117:20 118:25 119:22 121:3 123:22 123:23 124:25 125:19 127:18 127:18 138:15 139:17 144:13 144:18 151:23 161:14 165:23 165:25 166:12 175:10 206:1 207:6 222:8 225:17 225:21

**used**(52) 18:6 25:7 27:16 34:15 36:23 37:25 38:12 40:11 47:16 56:10 78:17 89:20 97:21 103:7 104:7 113:24 114:18 116:12 116:18 116:21 118:8 118:22 125:21 127:20 127:20 127:21 127:22 130:10 132:20 134:4 136:24 137:2 144:2 149:20 154:4 161:4 161:10 169:4 173:7 175:13 175:23 189:19 189:24 194:25 203:23 203:24 204:3 210:14 210:17 212:3 216:10 218:1

**useful**(1) 226:9
**uses**(3) 111:12 123:25 156:20
**using**(53) 25:19 27:4 60:22 98:13 98:17 98:18 99:4 99:6 99:8 101:11 102:7 102:16 104:24 105:14 106:15 106:16 106:22 107:8 107:15 110:19 110:20 111:11 112:2 112:3 113:4 114:11 115:5 115:11 117:13 118:7 120:14 121:2 121:22 125:21 126:6 130:12 132:19 143:24 144:23 145:11 145:18 146:16 149:10 152:4 161:18 189:2 190:12 193:22 197:2 203:12 203:15 205:14 219:7

**utilize**(2) 24:15 36:10
**utilizing**(2) 35:9 225:20
**vaguely**(1) 172:19
**vail**(1) 2:31
**valerio**(1) 11:15
**valuable**(1) 227:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **valuation**(73) 32:16 32:25 33:19 55:12 56:4 65:8 65:9 72:20 72:21 72:22 72:23 72:25 73:1 73:8 73:9 73:10 73:18 73:19 85:21 87:19 87:20 89:9 95:4 95:15 104:6 104:21 105:13 108:16 115:3 117:9 126:18 130:10 134:22 136:20 154:15 154:20 155:12 156:18 157:1 159:25 168:15 169:12 169:24 184:24 186:6 186:13 187:25 188:1 188:11 188:16 188:18 189:5 189:20 190:7 190:18 190:24 191:7 191:9 193:13 193:17 193:20 193:20 193:23 194:1 194:5 194:10 195:4 195:4 195:10 217:20 217:21 221:8 226:12 | | **versions**(1) 226:1 **versus**(1) 69:1 **vertical**(1) 93:24 **very**(48) 52:22 52:23 53:17 72:24 74:1 92:18 94:11 96:20 101:5 101:13 102:3 102:4 103:12 104:21 105:23 107:17 110:1 114:5 114:6 118:3 123:14 128:21 130:14 131:5 132:7 135:2 158:8 166:14 173:13 176:17 179:24 179:24 185:16 192:23 193:1 196:20 200:16 208:1 212:1 216:7 219:16 220:12 221:2 221:4 224:23 225:4 227:2 227:2 | | **was**(301) 13:5 14:11 15:24 16:6 16:15 16:16 16:21 17:14 18:2 18:12 18:6 18:17 18:22 18:24 19:3 19:8 19:12 19:13 19:14 19:21 19:25 20:21 21:14 21:19 21:23 22:7 22:12 22:14 22:16 23:10 23:11 23:13 23:14 23:17 23:25 24:7 24:11 25:4 25:24 26:10 26:16 27:15 28:4 28:18 28:21 29:7 29:23 30:5 30:10 31:13 33:10 33:18 34:15 38:16 38:18 38:20 38:21 38:23 38:23 39:7 39:22 39:23 40:21 40:22 41:22 42:3 42:13 42:16 43:25 44:3 44:7 44:8 44:9 44:11 44:15 44:17 45:4 45:12 45:14 45:17 45:19 45:25 46:4 46:11 46:16 46:17 46:21 47:6 47:14 47:18 48:1 48:3 48:6 51:8 51:12 51:13 51:23 52:1 52:15 52:17 53:25 55:19 55:22 56:1 57:5 57:16 57:18 57:22 58:21 59:18 60:10 60:20 60:20 61:2 61:5 61:5 61:25 62:17 62:17 62:24 63:1 64:2 64:3 64:9 64:19 64:21 64:22 64:22 65:1 65:1 65:3 65:11 65:16 65:17 65:17 65:18 65:19 65:23 65:25 66:6 66:19 68:7 68:10 68:15 68:19 69:4 69:20 70:1 71:5 71:18 72:14 74:10 74:12 75:21 75:22 76:25 77:15 77:17 80:3 80:6 80:13 81:9 85:3 86:25 89:15 89:18 90:1 91:5 92:2 92:16 92:23 93:4 93:9 94:16 96:4 96:12 96:14 96:15 97:4 97:14 97:18 98:10 98:13 99:7 100:1 101:2 101:16 101:21 101:22 101:23 102:6 103:4 103:15 103:22 103:23 103:23 104:3 104:7 104:9 107:23 107:25 108:8 109:3 109:12 109:13 109:15 110:13 110:23 112:1 112:20 112:20 112:21 114:11 114:13 116:9 116:12 116:14 116:14 116:15 116:1 116:22 119:5 125:5 126:6 129:15 130:1 130:4 133:13 141:1 141:6 141:24 143:14 144:19 146:1 146:2 146:2 147:2 147:4 147:5 147:13 147:20 147:24 147:25 148:3 148:7 148:18 148:21 149:3 149:11 150:17 150:21 152:10 152:12 152:13 154:7 155:1 155:16 159:12 166:16 166:18 173:10 173:13 173:15 173:20 173:22 174:25 175:10 176:15 177:14 178:24 179:14 179:23 181:19 181:24 182:12 182:21 185:8 185:12 186:15 186:19 186:20 187:16 187:18 189:9 190:4 190:11 190:11 192:8 192:8 193:22 195:25 196:9 | | **we'd**(2) 222:25 223:1 **we'll**(22) 41:24 49:9 53:11 132:22 141:5 141:5 141:10 141:23 159:9 159:9 193:2 194:13 194:24 211:19 211:23 221:25 223:19 225:23 226:4 227:11 228:1 229:1 **we're**(16) 45:1 74:25 136:8 144:15 145:18 179:18 180:8 209:15 213:21 224:5 224:8 225:12 225:13 225:25 227:24 228:16 **we've**(10) 21:10 31:16 34:20 48:2 131:15 225:15 225:19 225:23 227:10 227:25 **wealth**(5) 95:8 95:11 95:12 95:16 184:14 **weather**(1) 48:24 **week**(4) 43:25 224:21 227:20 228:12 **weighed**(1) 14:14 **weight**(7) 47:12 69:13 69:14 105:22 107:6 154:13 176:12 **weighted**(6) 99:6 103:5 161:10 162:23 163:16 222:5 **weighted-averag**(1) 102:17 **weighting**(1) 176:8 **weil**(1) 9:27 **weiss**(1) 8:31 **weitman**(1) 8:20 **weld**(3) 140:20 153:1 157:10 **well**(110) 23:23 23:24 30:9 40:6 43:9 43:14 48:4 53:4 57:15 65:12 65:14 65:15 65:18 65:19 71:19 71:20 73:11 73:15 74:10 80:24 81:9 83:21 87:23 88:14 88:15 88:19 92:17 95:3 99:13 100:19 102:9 104:23 113:10 114:6 114:6 122:10 123:21 124:4 124:21 124:22 125:16 125:18 126:7 127:20 128:19 129:25 131:4 133:23 134:21 134:25 135:3 137:24 139:9 140:7 142:12 143:17 146:5 147:7 147:10 147:15 148:3 152:20 153:19 157:9 158:16 159:5 161:6 161:25 166:18 167:1 173:25 175:9 178:9 180:6 180:21 182:15 184:6 186:5 186:15 186:19 187:1 189:6 189:23 190:7 191:24 193:19 193:25 195:6 195:8 195:12 196:5 196:19 198:5 199:9 201:5 205:2 206:19 208:10 209:17 210:11 212:1 216:6 220:13 221:12 223:2 223:19 225:7 228:2 228:9 228:25 **well-known**(1) 124:22 **wells**(1) 11:35 **went**(19) 48:16 53:20 57:8 60:25 68:10 68:16 68:20 68:24 69:6 69:6 71:12 86:14 86:16 86:17 89:22 106:20 135:1 219:6 221:11 **were**(124) 14:21 14:22 17:21 21:14 22:2 22:8 22:22 25:6 25:11 25:18 27:22 38:18 40:16 41:17 41:23 42:18 42:19 43:2 43:16 46:5 46:7 50:5 50:17 50:17 51:16 51:17 53:25 54:1 57:15 58:15 62:22 65:2 65:3 66:16 69:17 70:3 71:13 71:22 72:1 74:3 76:11 77:4 78:21 78:22 79:23 89:17 96:13 98:5 98:11 98:18 101:15 106:1 108:7 113:2 113:16 116:12 116:18 116:21 120:5 123:24 125:1 129:10 129:25 132:20 142:12 143:7 146:25 147:18 148:19 148:21 148:22 149:2 149:17 150:10 150:14 153:21 155:15 155:17 168:2 170:15 170:19 171:3 172:16 173:1 174:24 174:24 175:7 175:9 180:17 184:17 184:23 186:22 187:2 188:25 189:11 189:14 193:17 196:20 201:14 202:1 202:14 206:8 207:4 207:9 209:4 210:6 210:20 210:21 210:24 210:24 211:3 212:2 212:9 212:22 212:24 213:14 214:13 214:22 215:5 215:18 216:10 218:9 218:10 219:7 **weren't**(2) 146:7 149:1 **weren't**(1) 113:3 **west**(3) 3:43 4:8 5:20 |
| **valuations**(10) 16:7 16:7 108:4 127:6 186:20 191:4 191:5 213:10 213:10 219:15 | | **vice**(1) 76:25 **vice-chairman**(1) 185:8 **view**(29) 15:11 28:4 29:4 33:14 41:8 41:19 52:8 57:11 57:12 58:10 59:16 62:15 63:17 71:17 71:18 76:15 76:16 76:22 77:5 80:25 81:1 92:7 92:7 94:4 147:25 148:1 150:24 197:19 199:22 | | | | |
| **value**(238) 14:16 14:20 15:6 15:9 15:24 15:25 16:5 16:16 16:18 17:3 17:13 17:18 18:1 18:2 18:3 18:17 18:18 18:21 18:21 18:21 18:22 18:23 18:25 19:3 19:3 19:7 19:16 20:11 22:10 23:10 24:12 25:15 25:21 26:8 26:11 26:13 26:21 26:23 27:1 27:3 27:11 27:18 28:2 28:16 28:16 28:17 28:19 28:20 28:22 28:24 29:14 29:15 29:18 29:19 30:5 30:6 30:8 30:15 30:17 30:18 30:21 32:11 32:13 33:6 33:7 33:7 33:8 33:9 33:13 33:15 33:25 34:20 34:24 35:14 35:18 37:14 38:8 38:12 38:19 39:5 39:7 39:8 39:10 39:11 39:13 39:14 39:23 44:18 49:21 50:12 56:10 56:18 56:19 56:25 57:7 57:13 57:14 57:17 58:3 58:4 58:5 59:15 59:17 60:9 60:16 60:18 60:18 60:20 62:4 69:12 69:12 72:3 72:7 72:17 73:13 73:23 75:1 75:4 76:9 80:12 95:5 95:8 96:8 98:8 98:14 98:18 99:2 99:16 100:3 100:5 100:7 100:9 100:10 103:13 103:18 105:1 105:4 106:2 106:9 106:18 106:25 107:2 107:4 107:9 107:10 107:19 107:24 114:25 114:25 114:25 115:8 115:19 115:20 115:20 115:20 115:23 115:25 116:1 116:20 116:21 116:24 117:3 117:5 117:7 117:8 117:8 118:10 118:11 118:11 119:2 119:5 119:21 121:10 130:20 133:21 133:24 134:3 134:4 134:8 134:12 134:14 134:17 136:16 136:19 136:23 137:2 137:9 137:15 137:20 137:23 138:9 138:13 138:20 138:25 139:1 140:2 140:9 141:21 141:24 142:20 142:21 143:2 151:23 152:4 155:18 160:6 166:13 166:15 166:20 166:21 167:1 167:25 175:3 176:4 188:7 189:22 190:1 191:22 193:15 200:2 200:19 212:18 214:21 216:12 216:13 217:18 217:19 218:11 218:12 218:15 218:18 218:22 218:22 218:22 218:23 222:5 | | **viewed**(5) 92:4 94:7 94:19 129:13 206:4 **views**(8) 14:23 16:23 47:13 47:14 62:13 63:2 63:3 74:4 **viking**(1) 9:8 **vinson**(1) 10:10 **violates**(1) 140:8 **virtually**(1) 131:25 **voir**(2) 82:20 230:2 **volume**(5) 3:1 31:16 140:24 216:19 **vora**(1) 11:5 **vrc**(17) 108:2 108:4 108:11 141:2 141:8 141:17 141:24 172:16 173:4 173:14 190:2 191:7 191:17 191:9 191:16 192:3 192:4 **vrc's**(1) 108:8 **wacc**(7) 108:18 115:5 117:22 118:1 118:16 161:14 161:18 **wacker**(1) 3:43 **wait**(1) 34:18 **waiting**(1) 13:5 **walk**(2) 67:20 226:17 **walked**(1) 59:3 **wall-street**(2) 179:14 179:23 **wanted**(14) 60:19 62:2 71:11 71:13 101:2 101:14 107:18 110:19 110:21 112:17 130:17 140:22 170:24 204:1 **wants**(1) 178:20 **wardwell**(3) 2:4 10:4 81:25 **warner**(1) 106:25 **warrant**(4) 199:17 200:3 200:6 200:18 **warrants**(2) 127:1 127:3 | | **value."**(1) 48:19 **valued**(6) 55:16 56:8 139:18 155:24 166:23 214:3 **values**(9) 14:19 60:22 76:12 103:25 119:2 132:4 161:8 195:14 212:13 **valuing**(6) 88:24 135:9 155:15 190:11 213:14 214:22 **variables**(1) 72:12 **variants**(1) 18:20 **varied**(1) 123:17 **variety**(3) 85:16 136:24 207:13 **various**(19) 54:11 56:22 59:3 83:10 84:9 85:6 86:20 87:9 87:25 90:1 90:17 100:15 101:16 105:13 127:6 131:11 155:18 176:9 210:22 **vazquez**(1) 6:14 **venture**(3) 96:10 96:22 127:6 **ventures**(5) 57:24 58:1 58:15 58:19 59:10 **verify**(1) 208:9 **versa**(1) 76:25 **version**(6) 20:13 20:17 20:18 39:6 144:18 187:25 | | **washington**(4) 3:31 83:14 102:2 171:5 **wasn't**(7) 16:20 36:23 65:4 65:12 149:5 157:20 172:15 **wasn't**(2) 113:20 117:1 **waste**(1) 227:23 **way**(55) 19:25 21:14 22:9 22:18 26:6 45:5 47:12 52:10 55:23 57:10 59:14 60:24 62:16 67:6 70:11 70:24 73:9 73:23 75:1 77:1 77:23 77:24 80:20 93:4 101:20 104:1 114:22 117:19 117:22 126:4 128:23 138:8 139:1 139:2 139:9 139:10 139:13 146:2 146:25 147:17 148:4 149:5 149:14 155:6 165:10 165:15 166:24 168:4 174:11 181:2 190:4 215:18 222:23 225:23 228:2 **ways**(13) 61:8 71:13 111:14 117:18 119:4 120:16 120:19 124:25 131:10 139:9 151:2 183:18 184:8 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| we're(2) 122:2 124:6 | | which(130) 14:5 15:3 19:12 19:14 19:18 | | with(223) 15:14 16:7 18:12 20:10 20:18 | | would(278) 15:15 15:18 15:20 17:8 18:4 |
| we've(2) 84:1 120:4 | | 20:13 20:17 25:12 27:2 27:3 29:2 29:3 | | 21:8 22:1 22:22 26:14 27:8 29:21 30:2 | | 18:5 18:6 18:19 19:2 19:17 19:21 21:4 |
| wharton(1) 8:31 | | 30:13 32:21 33:7 33:9 33:10 33:24 34:16 | | 30:21 33:4 33:14 33:24 34:5 35:21 39:8 | | 21:13 21:17 21:19 21:21 22:9 22:16 22:20 |
| what(239) 14:16 17:6 17:25 18:23 20:14 | | 37:14 43:15 44:7 45:2 45:14 45:25 46:5 | | 39:11 41:14 41:14 46:25 47:9 47:19 47:22 | | 23:12 24:17 24:20 24:22 24:22 25:2 25:13 |
| 20:20 21:10 22:19 24:19 25:12 26:5 29:16 | | 46:20 46:21 50:1 55:18 55:19 55:24 56:1 | | 48:12 48:17 49:9 49:22 51:5 51:7 51:19 | | 25:20 25:25 26:5 26:11 26:13 26:19 26:22 |
| 30:16 31:13 31:20 32:15 33:9 33:9 34:23 | | 57:19 64:14 64:15 64:16 64:17 70:6 74:3 | | 53:16 57:13 60:11 60:11 60:14 62:23 | | 27:10 28:20 29:13 29:17 29:18 29:20 30:2 |
| 34:25 38:10 39:5 40:11 40:21 41:4 47:22 | | 75:19 75:19 77:15 78:7 78:20 80:14 80:17 | | 64:11 67:1 67:22 67:25 69:17 71:23 72:1 | | 30:18 30:19 30:19 30:20 30:23 30:24 |
| 48:4 48:5 48:5 48:6 51:22 54:11 59:12 | | 85:4 85:15 91:3 92:16 94:17 94:20 96:8 | | 73:1 73:15 75:21 77:1 77:5 77:7 77:8 | | 30:25 32:11 33:24 34:5 34:17 35:18 35:19 |
| 60:19 62:16 63:19 63:21 64:11 64:19 65:5 | | 96:19 96:23 97:2 98:2 98:16 98:20 99:11 | | 77:15 77:24 77:25 78:6 78:25 79:8 80:10 | | 35:24 35:25 36:11 36:20 37:18 37:19 39:1 |
| 65:15 66:10 66:15 66:18 69:14 70:8 | | 99:16 100:4 100:6 100:8 100:12 101:6 | | 80:15 80:20 82:9 83:13 83:16 83:19 83:23 | | 39:2 39:5 40:9 41:14 41:16 41:19 42:1 |
| 70:20 70:25 71:1 72:14 74:10 74:12 74:19 | | 101:7 101:15 102:13 103:1 103:10 103:16 | | 85:18 86:15 86:20 87:6 87:9 87:19 90:15 | | 42:4 42:5 42:9 43:2 43:4 43:7 43:8 43:10 |
| 77:3 78:11 79:4 79:11 80:1 80:13 80:24 | | 107:6 108:5 109:13 109:14 110:17 111:14 | | 92:21 94:21 96:7 98:7 100:20 100:25 | | 43:11 43:11 43:12 43:21 44:23 46:6 46:9 |
| 83:7 84:5 84:12 84:19 85:7 86:22 89:17 | | 111:23 112:7 114:6 115:6 118:8 118:16 | | 101:8 101:18 104:8 106:6 106:16 106:19 | | 46:18 47:5 47:5 47:7 47:17 48:10 48:14 |
| 92:14 92:16 93:11 94:3 95:6 97:13 97:22 | | 119:7 119:22 121:14 121:22 123:17 123:1 | | 108:3 108:8 108:25 109:23 111:9 112:1 | | 48:14 48:19 53:22 54:15 55:18 57:16 |
| 98:10 98:13 98:14 99:1 100:14 101:2 | | 124:14 125:21 128:17 131:8 135:2 148:11 | | 112:1 113:4 115:17 117:2 117:10 117:24 | | 57:21 58:5 58:6 58:8 58:10 60:9 60:25 |
| 101:10 101:11 101:14 101:16 101:22 | | 150:17 155:13 155:24 160:12 169:20 | | 119:3 119:6 122:22 123:7 125:15 125:18 | | 60:20 61:14 61:17 61:19 61:21 61:24 |
| 102:18 103:4 103:15 103:21 104:2 107:5 | | 171:17 171:21 175:23 176:15 177:8 185:1 | | 128:15 128:18 128:20 128:25 129:2 129:3 | | 64:11 65:13 66:12 67:25 69:2 70:1 73:12 |
| 107:24 108:7 109:1 109:3 109:3 110:3 | | 186:1 186:25 189:1 193:22 201:9 204:13 | | 129:13 129:20 129:23 130:1 131:10 131:22 | | 73:20 74:1 74:4 74:5 74:6 74:14 74:19 |
| 110:23 111:2 112:17 113:2 113:11 115:8 | | 205:5 205:21 207:22 209:10 209:24 210:4 | | 132:2 132:3 132:4 132:5 132:15 132:21 | | 75:7 75:8 75:12 75:13 75:14 76:22 76:23 |
| 117:4 117:9 118:6 119:15 121:8 121:15 | | 212:12 212:14 212:21 213:7 214:18 215:1 | | 133:5 133:5 135:4 136:22 137:22 138:1 | | 76:23 77:10 77:17 77:19 77:21 77:21 |
| 121:24 122:11 123:6 125:14 125:14 126:1 | | 215:12 219:15 225:14 227:19 | | 138:2 139:16 140:14 143:17 143:24 146:8 | | 77:22 78:9 80:14 80:16 80:20 81:1 81:2 |
| 127:18 130:1 130:4 130:25 132:2 132:3 | | | | 146:10 147:9 147:13 148:2 148:5 148:8 | | 81:16 85:16 91:10 92:19 94:15 96:2 96:11 |
| 132:4 132:4 134:14 135:3 136:13 137:1 | | while(6) 95:12 95:13 111:24 125:4 184:18 | | 148:21 148:22 150:3 150:17 151:5 151:15 | | 96:16 96:23 96:23 97:13 99:17 101:1 |
| 137:24 138:23 140:19 142:13 143:10 | | 220:12 | | 151:21 152:8 153:5 154:11 155:9 155:25 | | 104:20 105:20 107:13 107:22 108:16 109:3 |
| 143:10 145:10 145:10 146:1 146:5 147:10 | | | | 157:6 157:21 159:2 162:24 167:9 170:20 | | 109:4 109:5 110:11 112:9 113:2 114:17 |
| 147:11 147:12 147:22 147:24 148:3 148:6 | | white(1) 11:35 | | 170:24 172:15 172:15 173:11 175:6 175:7 | | 116:3 116:15 116:24 116:25 117:17 119:24 |
| 150:12 150:12 152:5 152:9 152:12 153:6 | | whitman(3) 10:40 60:12 223:24 | | 177:17 178:19 178:25 180:11 182:12 183: | | 120:1 120:19 123:21 124:20 124:21 125:8 |
| 154:21 155:2 155:14 157:2 158:13 158:18 | | who(23) 17:2 48:11 61:19 75:12 86:24 | | 185:18 185:23 188:20 189:17 189:25 | | 128:13 129:4 129:9 129:11 129:11 130:20 |
| 159:12 160:9 160:14 161:2 161:16 162:15 | | 92:14 95:10 133:11 134:18 141:17 142:15 | | 190:9 190:25 191:3 191:8 191:18 191:24 | | 134:24 134:25 136:13 136:15 137:19 |
| 163:2 166:18 170:13 173:3 174:20 176:15 | | 142:16 148:16 148:18 153:16 157:5 175:1 | | 193:17 196:1 196:23 198:5 199:3 199:25 | | 137:24 139:24 139:25 140:19 141:9 141:11 |
| 177:20 178:8 180:6 180:7 181:24 182:14 | | 182:7 185:7 186:22 187:15 215:18 217:13 | | 200:8 200:10 201:9 202:7 202:23 204:9 | | 141:25 142:14 143:1 143:4 144:15 145:15 |
| 183:22 184:6 186:19 186:20 187:2 188:7 | | | | 206:10 206:13 209:8 209:9 212:12 212:13 | | 146:7 146:11 146:13 147:9 153:25 154:9 |
| 189:13 190:11 191:6 192:2 192:8 193:22 | | whole(4) 31:19 44:11 47:25 185:15 | | 212:24 213:9 213:12 214:24 215:8 215:17 | | 154:11 155:6 157:24 161:2 161:7 162:12 |
| 194:25 195:12 195:25 196:24 197:5 199:2 | | whose(2) 217:15 223:14 | | 216:1 218:20 218:25 219:6 219:15 220:5 221:11 | | 162:20 165:24 165:24 166:9 167:5 171:19 |
| 199:9 200:5 207:22 207:22 210:5 210:12 | | why(24) 27:12 33:16 47:23 51:6 55:25 | | 221:16 224:19 225:13 226:5 226:8 227:5 | | 173:6 173:9 173:23 177:4 177:16 178:15 |
| 210:16 211:7 211:16 212:4 212:9 212:11 | | 60:12 67:25 69:9 70:23 71:15 73:7 75:14 | | 227:12 227:14 227:15 227:22 228:1 228:1 | | 178:17 182:4 182:7 182:11 182:12 184:16 |
| 212:16 212:17 212:19 212:23 212:24 213: | | 94:8 111:18 111:23 121:21 147:18 149:9 | | | | 185:18 186:3 186:16 186:17 188:20 190:3 |
| 213:1 213:5 213:9 213:12 213:12 214:3 | | 157:9 171:5 174:13 184:16 206:24 219:13 | | withdraw(2) 53:11 79:14 | | 190:7 190:8 192:6 195:9 195:12 197:21 |
| 214:20 214:21 215:2 215:3 215:5 215:11 | | | | within(13) 21:12 21:15 142:20 156:23 | | 198:6 198:7 198:9 198:10 198:14 198:16 |
| 215:17 215:19 215:23 219:14 220:9 222:1 | | wide(1) 180:3 | | 162:20 163:9 165:3 174:18 174:18 183:13 | | 201:19 201:23 202:1 202:15 202:15 202:17 |
| 224:8 224:15 224:19 225:22 225:25 226:9 | | wife(2) 13:22 81:10 | | 196:21 198:7 198:16 | | 202:20 202:25 205:9 206:7 207:21 207:25 |
| 226:18 226:20 227:3 227:6 227:15 | | wild(1) 10:44 | | | | 213:8 215:20 218:11 218:16 218:18 219:8 |
| | | wild(47) 30:9 41:5 48:24 49:3 54:11 58:17 | | without(23) 18:23 19:17 21:5 21:8 52:22 | | 221:12 222:24 223:20 224:14 224:15 |
| what's(14) 46:20 69:12 77:10 78:9 78:15 | | 61:13 70:10 70:20 71:15 75:7 77:11 81:16 | | 55:18 65:13 90:22 91:14 99:5 107:9 | | 224:19 226:12 226:15 226:20 227:3 |
| 143:15 156:8 169:23 184:13 184:13 187:1 | | 81:21 84:17 99:25 106:12 132:19 135:8 | | 120:25 136:17 136:19 140:17 150:2 150:10 | | |
| 227:8 227:8 227:9 | | 152:22 153:6 158:4 158:23 159:24 167:6 | | 189:4 192:1 207:8 215:7 218:16 226:17 | | wouldn't(7) 33:11 43:6 58:7 75:15 146:12 |
| | | 177:7 177:13 177:19 179:12 181:5 185:7 | | | | 221:18 225:3 |
| whatever(4) 18:6 155:21 183:20 228:4 | | 185:7 187:14 187:16 196:8 198:16 222:22 | | witness(20) 49:9 82:1 82:17 84:11 88:9 | | |
| what's(3) 102:22 108:12 125:11 | | 223:13 223:15 223:18 223:25 224:1 224:1 | | 88:16 95:3 132:16 156:12 157:13 172:24 | | would've(2) 114:3 130:12 |
| when(40) 15:23 17:3 22:2 22:12 24:14 | | 225:7 225:8 226:19 229:5 | | 173:20 216:18 220:25 222:16 223:13 | | write(3) 19:16 183:22 207:3 |
| 24:11 27:22 41:24 42:6 44:6 45:24 57:24 | | | | 223:17 226:13 226:14 226:18 | | writes(1) 196:8 |
| 58:15 62:2 94:9 95:15 95:17 101:13 112:3 | | william(1) 5:25 | | | | writing(1) 224:18 |
| 116:14 116:14 131:16 133:16 134:1 138:22 | | willing(19) 22:14 22:20 22:22 33:1 33:1 | | witnesses(3) 223:21 223:22 230:4 | | writings(1) 95:4 |
| 146:15 146:15 147:18 155:6 177:25 178:4 | | 33:12 33:20 33:20 35:20 36:1 137:16 | | womble(1) 5:30 | | written(6) 28:10 45:13 87:8 87:21 87:22 |
| 180:15 181:17 184:14 201:14 203:11 | | 137:16 142:1 142:1 180:17 182:12 219:17 | | won't(1) 183:18 | | 148:17 |
| 206:24 217:1 218:21 222:2 | | 220:24 226:21 | | wonder(1) 158:22 | | |
| | | | | word(2) 178:19 202:8 | | wrong(12) 38:25 48:16 59:13 59:18 79:9 |
| where(42) 26:4 34:22 45:20 46:12 48:23 | | willingness(15) 23:18 24:7 36:24 47:14 | | words(11) 27:16 35:19 47:16 59:19 106:1 | | 81:1 81:2 123:2 132:4 132:4 132:5 146:8 |
| 54:10 59:18 61:11 70:3 70:25 71:8 72:2 | | 47:15 176:24 178:1 178:5 179:1 179:6 | | 118:12 134:3 137:18 138:12 143:7 206:1 | | wrote(1) 87:5 |
| 73:23 82:22 86:14 86:16 86:18 86:18 | | 180:12 180:15 181:18 183:7 184:5 | | | | www.diazdata.com(1) 1:46 |
| 94:15 97:17 107:1 108:5 111:3 112:1 | | | | work(14) 20:18 39:6 56:8 71:10 95:3 | | xochitl(1) 12:34 |
| 128:24 129:23 143:12 146:3 150:1 162:9 | | wilmer(1) 7:9 | | 135:3 140:25 152:18 193:18 225:23 227:2 | | yale(1) 88:5 |
| 168:12 168:12 196:3 197:3 197:18 209:13 | | wilmington(15) 1:12 1:37 2:20 2:39 2:46 | | 228:1 228:7 228:17 | | yeah(31) 17:16 31:12 31:22 45:7 47:25 |
| 210:11 210:20 211:10 217:8 224:19 226:1 | | 3:22 3:37 4:9 4:35 5:8 5:21 5:27 5:34 | | | | 59:1 60:4 66:25 67:3 68:6 68:15 68:20 |
| | | 7:35 13:1 | | workable(1) 226:9 | | 78:25 101:2 107:23 122:1 129:23 131:15 |
| whether(64) 15:11 15:19 16:5 16:21 18:18 | | | | worked(6) 18:20 25:25 57:2 141:18 | | 141:12 157:18 162:6 166:5 168:15 168:20 |
| 24:22 25:24 26:21 27:9 27:9 32:5 32:9 | | wilson(1) 6:37 | | 141:20 142:16 | | 173:9 204:3 208:11 211:7 211:8 224:7 |
| 34:10 38:8 40:4 41:12 41:13 42:1 42:5 | | wind(1) 112:1 | | | | 228:21 |
| 43:2 47:5 55:8 56:25 60:13 62:21 64:2 | | winners(1) 83:20 | | working(8) 22:2 27:22 133:16 164:22 | | year(21) 21:6 21:12 21:15 21:16 22:8 |
| 64:14 70:16 76:10 80:10 92:3 93:8 94:14 | | winning(1) 22:19 | | 164:25 165:8 165:15 225:24 | | 24:15 42:3 43:19 43:19 52:6 64:25 71:8 |
| 96:20 109:5 112:21 116:5 120:1 123:15 | | winter(2) 88:4 88:5 | | | | 71:10 83:6 93:1 93:3 93:4 110:3 110:8 |
| 128:16 130:19 133:25 133:25 138:17 | | | | world(12) 65:6 76:15 76:17 125:8 138:1 | | 110:9 172:11 |
| 138:23 138:25 148:2 151:6 151:10 175:6 | | | | 138:2 138:3 138:4 138:21 138:21 218:20 | | yearend(2) 173:8 173:12 |
| 175:18 189:10 193:16 195:6 203:3 207:17 | | | | 220:8 | | years(16) 34:18 41:2 43:20 63:22 63:23 |
| 211:10 217:4 218:10 219:9 220:1 220:14 | | | | worse(1) 45:16 | | 63:25 84:25 85:2 85:3 86:24 111:25 |
| 224:22 225:1 | | | | worth(4) 25:9 57:16 127:4 134:15 | | 123:11 208:24 209:5 209:10 209:23 |
| | | | | | | yep(1) 222:11 |

| Word | Page:Line |
|---|---|

**yes**(141) 13:10 15:9 15:22 16:15 16:25 18:10 20:2 20:25 21:25 22:3 22:10 23:12 23:18 24:9 26:6 27:7 28:17 28:21 32:7 32:9 33:21 34:24 35:3 39:21 40:7 42:13 42:24 44:23 45:3 45:7 45:21 47:3 48:10 49:24 50:3 50:22 51:4 54:9 55:14 55:18 56:6 56:20 56:23 57:2 59:7 60:5 62:12 62:15 63:6 63:9 66:3 66:8 66:20 67:19 72:13 76:21 78:18 79:17 80:2 83:13 84:2 85:20 86:9 86:11 86:14 87:3 87:14 87:18 88:1 88:9 88:17 88:25 89:3 89:6 89:24 90:13 91:2 91:9 91:25 93:22 95:2 96:3 98:25 99:13 99:23 101:1 102:15 103:12 104:17 104:19 104:21 105:19 105:21 106:14 107:21 108:23 110:18 112:17 117:18 119:12 119:16 120:12 120:16 121:7 122:20 124:11 126:23 128:13 129:21 137:14 139:9 141:4 141:15 149:18 152:1 154:9 157:24 160:3 160:4 161:15 166:10 166:18 168:1 169:6 174:16 176:6 177:3 186:11 193:10 200:20 201:25 204:6 209:14 209:25 212:11 214:1 214:7 215:7 216:7 217:1 219:14

**yesterday**(15) 13:15 15:1 15:5 17:12 43:24 44:6 46:10 48:20 49:20 56:21 59:3 59:21 66:5 146:25 147:6

**yet**(3) 44:3 195:1 211:18
**yield**(1) 90:7
**yield-to**(1) 197:13
**yields**(6) 96:19 96:20 96:24 97:2 197:6 197:18

**york**(7) 2:12 3:15 4:27 4:42 5:15 83:14 88:14

**you**(301) 13:5 13:9 13:15 13:18 13:20 13:24 14:2 14:6 14:16 14:23 15:5 15:11 15:19 15:23 15:24 16:3 16:16 17:3 17:4 17:9 17:11 17:11 17:12 17:15 17:18 17:25 18:7 18:11 18:14 18:16 18:18 19:3 19:7 20:3 20:14 20:15 20:17 20:23 21:1 21:14 21:22 22:1 22:1 22:2 22:11 22:18 22:23 23:1 23:3 23:3 23:9 23:12 23:14 24:11 24:13 25:7 25:7 25:18 26:3 26:6 26:8 26:16 26:17 26:22 27:8 27:14 27:16 27:22 27:23 28:14 28:15 28:16 28:18 29:6 29:7 29:9 29:12 29:13 29:16 29:24 30:2 30:18 31:3 31:7 31:14 31:19 31:25 32:1 32:4 32:6 32:8 32:14 32:17 32:22 33:1 33:4 33:19 34:8 34:25 35:21 36:11 36:18 37:16 37:18 37:25 37:25 38:4 38:13 39:8 39:22 39:22 40:5 40:8 40:11 40:15 41:5 41:9 41:14 41:24 41:25 42:2 42:8 42:14 43:15 43:22 43:24 44:6 45:8 45:15 45:19 45:19 45:25 46:4 46:11 47:1 47:6 47:16 47:17 47:23 48:8 48:9 49:19 49:19 49:19 49:20 49:25 49:25 50:1 50:2 50:4 50:5 50:14 50:15 50:25 51:1 51:6 51:14 51:14 52:4 53:13 53:15 53:16 53:19 54:3 54:10 54:11 54:15 55:1 55:5 55:5 55:6 55:7 55:11 55:12 55:16 55:16 56:3 56:4 56:7 56:17 56:17 56:19 56:21 56:22 56:24 57:13 57:14 57:17 58:10 58:15 58:17 58:18 58:25 59:3 59:4 59:5 59:8 59:18 59:22 59:24 60:1 60:1 60:6 60:6 60:17 60:24 61:1 61:12 62:2 62:3 62:3 62:4 62:8 62:8 62:10 62:12 62:23 63:2 63:4 63:17 63:20 63:21 64:23 65:1 65:21 66:2 66:5 66:6 66:7 66:9 66:10 66:11 66:15 66:18 66:20 66:23 67:6 67:6 67:8 67:18 67:20 67:24 68:1 68:3 68:4 68:13 68:23 69:8 69:14 69:22 70:4 70:15 70:18 71:25 72:1 72:4 72:9 72:11 72:17 72:21 72:22 73:23 74:2 74:3 74:7 74:9 74:10 74:16 74:25 75:8 75:10 75:10 75:11 75:16 75:17 75:23 75:24 76:2 76:6 76:18 76:18 76:23 76:24 77:3 77:4 77:12 77:13 77:13 77:14 77:18 78:6 78:7 78:9 78:17 78:20 78:20 78:21 78:23 79:2 79:2 79:15

**you**(301) 79:22 79:23 79:24 79:25 80:3 80:8 80:10 80:11 80:12 80:20 80:21 81:1 81:10 81:11 81:11 81:12 81:13 81:20 82:13 82:15 82:19 82:22 83:7 83:11 84:5 84:23 85:7 86:12 86:22 87:2 87:4 87:24 88:7 88:7 88:16 88:19 88:23 89:1 89:4 89:11 89:14 89:17 89:22 89:22 90:9 90:1 90:11 90:12 90:25 91:1 91:7 91:7 91:18 91:23 92:15 93:8 93:11 93:16 93:19 94:4 94:25 94:25 95:21 95:22 96:2 96:11 96:16 96:20 97:8 97:11 97:21 97:22 97:22 98:8 98:22 98:22 98:24 98:25 99:1 99:10 99:16 99:25 101:1 101:9 102:12 102:12 102:14 103:2 103:9 103:12 103:20 103:21 103:24 103:25 104:10 104:12 104:20 105:2 105:15 105:15 105:20 106:4 106:11 106:12 107:9 107:12 107:13 107:18 107:18 107:19 107:19 107:22 108:14 108:14 108:15 108:16 108:17 108:21 108:22 109:12 109:22 109:22 109:24 109:24 110:1 110:5 110:2 110:5 110:10 110:16 110:17 111:3 111:9 111:25 112:1 112:11 112:16 114:3 114:15 114:15 114:17 114:18 115:2 115:4 115:17 115:18 115:20 115:21 116:8 116:17 116:21 116:24 116:25 117:2 117:9 117:12 117:17 117:18 117:21 118:9 118:15 118:1 118:18 118:19 118:19 119:1 119:10 119:15 119:16 119:19 119:20 119:21 119:22 119:23 120:1 120:4 120:8 120:13 121:5 121:9 121:9 121:10 121:10 121:15 121:18 121:24 122:19 123:4 123:4 123:6 123:7 123:8 123:8 123:21 123:21 123:23 124:23 124:24 125:11 125:14 125:19 125:23 126:12 126:15 126:21 126:22 127: 127:13 127:15 127:18 127:18 128:12 128:13 128:24 128:25 129:2 129:2 129:3 129:18 129:20 129:22 130:14 130:17 130:18 130:18 130:20 130:25 131:2 131: 131:12 131:18 131:21 131:22 132:7 132:14 132:17 132:18 132:25 133:2 133:3 133:9 133:16 133:18 133:21 133:21 134:6 134:7 134:11 134:18 134:19 134:21 134:2 134:25 135:5 135:6 135:8 135:14 136:5 136:13 136:14 136:15 136:24 137:9 137:1 137:13 137:22 138:7 138:8 138:8 138:9 138:13 138:15 138:20 139:5 139:6 139:11 139:21 139:24 140:1 140:5 140:7 140:11 140:11 140:12 140:19 140:20 140:21 141: 141:9 141:10 141:10 141:13 141:22 141:23 142:5 142:7 142:7 142:10 142:14 143:10 143:18

**you**(301) 143:19 143:22 143:23 143:23 144:2 144:3 144:7 144:7 144:11 144:13 144:15 144:22 144:25 145:9 145:15 145:21 145:21 145:23 146:9 146:13 146:15 146:15 146:16 146:17 146:25 147:9 147:17 147:18 147:18 147:19 148:1 148:2 148:19 149:1 149:1 149:25 150:1 150:6 150:12 150:12 150:13 150:22 150:24 151:3 151:9 151:20 151:23 151:24 152:2 152:3 152:4 152:7 152:9 152:9 152:12 152:12 152:13 152:16 152:20 152:25 153:2 153:4 153:6 153:12 153:13 153:16 153:18 153:19 153:23 154:13 155:6 155:8 155:13 156:5 156:5 156:11 157:5 157:9 158:4 158:7 159:5 159:17 159:24 159:25 160:4 160:7 160:9 160:14 160:19 160:21 161:1 161:3 161:6 161:9 161:10 161:14 161:16 161:17 162:12 162:15 162:20 162:23 163:2 163:22 164:1 164:4 164:21 165:13 165:23 165:24 165:24 165:25 166:6 166:12 166:12 166:24 167:5 167:6 167:19 168:2 168:3 168:18 168:22 168:25 169:3 169:15 169:15 169:23 169:24 170:2 170:10 170:14 170:14 170:15 170:23 170:24 171:5 171:16 171:18 171:19 171:21 171:22 171:25 171:25 172:3 172:7 172:14 172:15 172:16 173:3 173:6 173:7 174:18 174:19 174:20 174:20 174:23 175:2 175:5 175:17 176:5 176:8 176:12 176:15 176:23 177:4 177:7 177:10 177:10 177:11 177:13 177:16 177:22 177:25 177:25 178:4 178:6 178:8 178:15 178:17 178:24 178:25 179:4 179:12 179:13 179:15 179:19 179:22 180:6 180:10 180:11 180:15 180:16 181:1 181:3 181:5 181:8 181:12 181:17 182:16 182:24 183:1 183:5 184:1 184:4 184:4 184:8 184:8 184:22 184:22 184:23 185:7 185:7 185:13 185:15 185:19 185:21 186:1 186:7 186:7 186:10 186:10 186:20 186:21 186:23 187:14 187:16 188:4 188:12 188:13 188:19 188:22 189:7 189:10 189:18 189:20 189:23 190:7 190:8 190:20 190:25 191:2 191:10 191:12 191:18 191:25 192:18 192:21 193:7 193:9 193:16 193:17 194:10 194:13 194:17 194:20 194:23 194:24 195:1 195:5 195:9 195:19 195:24 196:3 196:6 196:7 196:9 196:10 196:17 197:3 197:4 197:6 197:19 198:1 198:5 198:19 198:19 198:23 198:23 199:1 199:1 199:2 199:6 199:14 199:15 199:17 199:22 199:25 200:1 200:5 200:8 201:14 201:14 201:18 201:22 202:7 202:22 202:25 203:7 203:8 203:11

**you**(109) 203:15 203:22 204:5 205:6 205:7 205:10 205:17 206:20 206:24 206:25 206:25 207:3 207:9 207:16 207:21 207:25 208:4 208:15 208:19 208:20 208:24 209:1 209:4 209:9 209:13 210:7 210:9 210:11 210:11 210:17 210:19 210:21 210:22 210:24 211:3 211:12 211:14 211:16 211:23 211:24 212:3 212:8 213:16 213:19 214:5 214:7 214:16 215:5 215:10 215:11 215:11 215:21 215:22 216:5 216:6 216:9 216:9 216:23 216:24 217:7 217:11 217:17 217:25 218:5 218:6 218:7 218:13 218:14 219:5 219:6 219:8 219:9 219:10 219:13 220:14 220:15 220:24 221:2 221:4 221:9 221:9 221:9 221:10 221:20 221:21 221:23 221:25 221:25 222:10 222:14 222:14 222:15 223:8 223:16 223:23 224:14 225:4 225:11 225:20 226:2 226:6 226:22 227:14 227:19 227:20 228:8 228:13 228:19 229:2

| Word | Page:Line | Word | Page:Line |
|---|---|---|---|

**you'll**(49) 137:8  141:6  141:6  141:22  148:15  151:21  154:6  155:1  156:18  157:1  157:21  157:25  158:8  158:11  159:19  160:5  164:24  166:4  167:9  167:16  167:19  177:10  177:21  180:24  181:11  181:11  181:13  181:14  182:19  183:16  185:10  185:16  187:18  187:24  188:1  190:18  190:24  191:1  192:14  192:17  194:5  194:9  194:18  195:24  197:25  201:2  202:5  228:15  228:20

**you're**(43) 13:15  14:9  20:13  31:11  38:25  39:11  47:21  51:20  58:22  68:2  75:3  79:10  136:22  136:22  137:25  138:2  138:17  138:2  138:23  138:25  140:12  140:25  144:21  145:10  146:6  146:20  149:6  149:15  150:4  162:3  162:9  163:16  164:25  171:12  181:23  187:7  196:23  197:18  201:14  204:20  208:7  215:1  218:19

**you've**(12) 14:14  34:4  50:24  52:5  52:13  73:24  77:23  140:25  166:23  175:16  204:12  205:25

**young**(1) 4:4

**your**(301) 13:4  13:7  14:9  15:11  16:17  17:8  20:3  20:4  20:5  21:22  22:2  22:23  23:2  23:4  23:20  23:25  24:13  27:14  27:22  28:4  28:4  29:9  29:12  31:3  31:4  31:25  36:5  37:3  38:1  39:2  39:19  44:7  44:25  45:2  45:8  45:12  48:8  49:5  49:14  49:22  50:10  50:24  52:5  52:9  52:13  53:11  54:10  54:10  54:19  54:25  55:12  55:17  56:5  57:1  57:11  58:20  60:2  61:2  62:9  62:12  62:13  63:3  64:23  66:10  67:15  67:16  67:17  68:2  68:14  68:14  70:14  71:2  74:2  74:9  75:24  76:2  76:6  78:2  78:17  79:24  80:19  80:19  81:6  81:10  81:20  81:24  82:5  82:5  82:11  82:15  82:15  84:12  84:19  86:10  86:12  87:12  87:16  89:7  89:10  90:14  90:21  91:8  91:10  91:13  91:19  91:21  93:7  93:17  94:24  97:21  98:23  99:10  100:23  102:13  103:10  104:15  105:20  106:12  108:21  112:8  112:12  112:15  118:1  118:1  118:2  119:10  121:25  125:14  125:14  126:2  127:9  128:2  128:9  129:19  130:24  130:24  132:14  132:22  133:9  133:9  133:9  133:11  133:14  133:20  134:7  134:12  135:1  135:17  135:22  136:2  136:7  138:12  139:6  139:12  140:12  142:7  142:13  143:1  143:12  144:2  144:5  144:6  144:11  144:12  144:17  144:17  144:19  145:11  145:17  146:15  146:16  148:10  148:20  149:25  150:12  151:5  151:14  151:16  151:16  152:7  152:10  152:23  153:12  153:24  154:13  155:8  155:25  156:9  157:11  157:16  158:22  159:1  159:8  159:12  159:14  160:20  160:21  160:22  161:2  161:9  161:10  161:16  161:17  161:25  162:10  162:16  162:23  163:5  163:12  163:19  164:4  164:4  164:10  164:15  164:15  165:8  165:23  165:24  166:11  167:5  168:3  168:6  168:10  168:13  169:3  170:10  170:11  170:13  170:20  172:2  172:2  172:10  172:15  172:21  173:19  174:3  174:8  174:13  174:14  176:2  176:3  176:9  176:9  176:10  176:10  176:19  176:20  177:4  178:10  178:25  179:5  179:13  180:11  180:21  181:23  183:6  184:4  185:1  185:4  186:5  186:17  187:7  190:9  190:15  191:3  192:12  193:1  193:18  193:25  194:5  196:18  197:5  197:9  197:12  197:19  199:7  199:13  200:1  201:2  201:3  201:6  201:9  201:12  201:18  202:3  202:23  203:8  203:15  204:8  204:12  204:16  205:14  206:1  206:22  207:23  208:8  208:15  209:1  209:2  209:23  210:17

**your**(21) 213:16  213:19  215:2  216:18  218:1  218:3  218:8  219:8  219:10  220:16  221:4  222:12  222:15  222:17  225:6  226:7  226:13  226:18  226:20  226:23  229:2

**yourself**(3) 50:25  51:1  60:6
**you'd**(1) 109:11

**you're**(15) 85:19  99:22  103:24  114:2  114:16  115:3  115:5  115:13  117:20  117:23  118:13  118:15  118:18  119:24  121:13

**you've**(5) 67:1  85:18  86:7  91:19  97:6
**ytm**(1) 197:13
**zell**(34) 2:29  22:4  22:5  23:11  36:21  39:17  39:18  47:15  48:6  48:13  49:15  50:8  50:11  51:7  51:8  51:20  52:6  52:10  52:12  52:14  52:16  53:13  53:23  55:6  55:6  55:7  55:9  55:12  55:17  55:19  55:24  96:5  126:25  219:21

**zell's**(7) 21:4  21:23  22:1  23:18  27:24  55:20  56:1

**zell/egi-trb**(1) 199:15
**zensky**(41) 4:22  13:6  13:7  13:10  13:12  13:23  23:1  23:4  23:9  23:19  24:2  24:6  24:10  31:21  31:24  32:3  45:8  45:11  49:5  53:16  55:11  56:3  56:17  58:20  58:25  62:8  63:2  66:4  66:15  69:3  70:13  71:18  74:2  75:23  78:2  78:19  79:12  79:21  80:7  81:5  227:13

**zensky's**(2) 59:22  69:21
**zero**(8) 73:4  78:12  109:19  160:11  160:16  161:4  216:12  222:7

**zloto**(1) 9:13
**zuckerman**(2) 3:25  6:17
**"comparable**(2) 101:21  101:23
**"the**(1) 48:10
**"total**(1) 109:9