IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE


| | | |
|---|---|---|
| IN RE: | ) | Case No. 08-13141-KJC |
| | ) | |
| TRIBUNE COMPANY | ) | Chapter 11 |
| | ) | Courtroom 5 |
| | ) | 824 Market Street |
| Debtors. | ) | Wilmington, Delaware |
| | ) | |
| | ) | March 17, 2011 |
| | ) | 10:00 a.m. |


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                    Sidley Austin, LLP
                               BY: JAMES BENDERNAGEL, ESQ.
                               BY: RONALD S. FLAGG, ESQ.
                               BY: JAMES CANLON, ESQ.
                               BY: JAMES DUCAYET, ESQ.
                               One South Dearborn
                               Chicago, IL 60603
                               (312) 853-7000

                               Cole, Schotz, Meisel, Forman
                               & Leonard, P.A.
                               BY: NORMAN PERNICK, ESQ.
                               500 Delaware Ave., Ste. 1410
                               Wilmington, DE 19801
                               (302) 652-3131

ECRO:                          AL LUGANO

Transcription Service:         DIAZ DATA SERVICES
                               331 Schuylkill Street
                               Harrisburg, Pennsylvania 17110
                               (717) 233-6664
                               www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For JP Morgan:                  Davis Polk & Wardwell
                                BY: BENJAMIN KAMINETZKY, ESQ.
                                BY: MICHAEL RUSSANO, ESQ.
                                BY: ELLIOT MOSKOWITZ, ESQ.
                                BY: LYNN BUSATH, ESQ.
                                BY: DAMIEN SCHAIBLE, ESQ.
                                450 Lexington Avenue
                                New York, NY 10017
                                (212) 450-4000

                                Richards Layton & Finger
                                BY: BOB STEARN, ESQ.
                                One Rodney Square
                                920 North King Street
                                Wilmington, DE  19801
                                (302) 651-7700

For Law Debenture:              Bifferato Gentilotti
                                BY: GARVAN MCDANIEL, ESQ.
                                800 North King Street
                                Plaza Level
                                Wilmington, DE 19801
                                (302) 429-1900

                                Kasowitz Benson Torres &
                                Friedman, LLP
                                BY: MATTHEW STEIN, ESQ.
                                BY: CHRISTINE MONTENEGRO, ESQ.
                                1633 Broadway
                                New York, NY  10019
                                (212) 506-1717

For Aurelius:                   Akin Gump Strauss Hauer & Feld
                                BY: MITCHELL HURLEY, ESQ.
                                BY: DANIEL GOLDEN, ESQ.
                                BY: DAVID ZENSKY, ESQ.
                                BY: NANCY CHUNG, ESQ.
                                BY: DAWN HARROP, ESQ.
                                One Bryant Park
                                New York, NY 10036
                                (212) 872-1000

                                Ashby & Geddes
                                BY: BILL BOWDEN, ESQ.
                                500 Delaware Avenue
                                Wilmington, DE  19899
                                (302) 654-1888

APPERANCES:
(Continued)

For Aurelius:                        Frideman Kaplan Seiler &
(Continued)                          Adelman, LLP
                                     BY: EDWARD FRIEDMAN, ESQ.
                                     KIZZY JARASAHW, ESQ.
                                     1633 Broadway
                                     New York, N Y  10019-6708
                                     (212) 833-1102

                                     Lerman Senter
                                     BY: MEREDITH S. SENTER, ESQ.
                                     BY: SALLY BRUCKMAN, ESQ.
                                     2000 K Street NW, Suite 600
                                     Washington, DC  20006
                                     (202) 416-6740

For Barclays:                        DLA Piper
                                     BY: MICHELLE MARINO, ESQ.
                                     1251 Avenue of the Americas
                                     New York, NY  10020-1104
                                     (212) 335-4500

For Official Committee
of Unsecured Creditors:              Landis, Rath & Cobb
                                     BY: ADAM G. LANDIS, ESQ.
                                     BY: DANIEL B. RATH, ESQ.
                                     919 Market Street, Suite 1800
                                     Wilmington, DE 19801
                                     (302) 467-4400

                                     Chadbourne & Parke, LLP
                                     BY: DAVID LEMAY, ESQ.
                                     BY: THOMAS MCCORMACK, ESQ.
                                     BY: HOWARD SEIFE, ESQ.
                                     BY: ANDREW ROSENBLATT, ESQ.
                                     BY: ROBERT SCHWINGER, ESQ.
                                     BY: MARC ASHLEY, ESQ.
                                     BY: DOUGLAS DEUTSCH, ESQ.
                                     30 Rockefeller Plaza
                                     New York, NY 10112
                                     (212) 408-5100

                                     Zuckerman Spaeder
                                     BY: GRAEM BUSH, ESQ.
                                     BY: ANDREW GOLDFARB, ESQ.
                                     BY: JAMES SOTTILE, ESQ.
                                     1800 M Street, NW
                                     Suite 1000
                                     Washington, DC 20036
                                     (202) 778-1800

APPERANCES:
(Continued)

For Special Committee of the
Board of Directors:                 Jones Day
                                    BY: LAUREN BUONAME, ESQ.
                                    77 West Wacker
                                    Chicago, Illinois 60601
                                    (312) 782-3939


For Merrill Lynch:                  Potter Anderson & Carroon, LLP
                                    BY: LAURIE SILVERSTEIN, ESQ.
                                    BY: R. STEPHEN MCNEILL, ESQ.
                                    Hercules Plaza
                                    1313 North Market Street
                                    6th Floor
                                    Wilmington, DE  19801
                                    (302) 984-6033

For DBTCA:                          McCarter & English
                                    BY: KATHARINE MAYER, ESQ.
                                    BY: DAVID ADLER, ESQ.
                                    405 N. King Street, 8th Fl.
                                    Wilmington, DE  19801
                                    (302) 984-6312

For Wilmington Trust:               Brown Rudnick
                                    BY: HOWARD SIEGEL, ESQ.
                                    185 Asylum Street
                                    Hartford, CT  06103
                                    (860)509-6519

                                    Sullivan Hazeltine Allinson,
                                    LLC
                                    BY: WILLIAM SULLIVAN, ESQ.
                                    4 East 8th Street, Suite 400
                                    Wilmington, DE  19801
                                    (302) 428-8191

For Wells Fargo:                    Fox Rothschild
                                    BY: JEFFREY SCHLERF, ESQ.
                                    Citizens Bank Center
                                    919 North Market Street
                                    Wilmington, DE  19801
                                    9302) 654-7444

```
APPEARANCES:
(Continued)

For Oaktree & Angelo Gordon:   Young Conaway Stargatt &
                               Taylor,LLP
                               BY: BLAKE CLEARY, ESQ.
                               The Brandywine Building
                               1000 West Street, 17th Floor
                               Wilmington, De  19801
                               (302) 571-6714

                               Dewey & LeBoeuf
                               BY: JAMES JOHNSTON, ESQ.
                               BY: BRUCE BENNETT, ESQ.
                               BY: JOSHUA MESTER, ESQ.
                               333 South Grand Avenue
                               Suite 2600
                               Los Angeles, CA  90071-1530

For JP Morgan Chase:           Wiley Rein, LLP
                               BY: JAMES R.W. BAYES, ESQ.
                               1776 K Street, NW
                               Washington, DC  20006
                               (202) 719-7064

For Tribune:                   Tribune Company
                               BY: DAN LEIBENTRITT, ESQ.
                               435 North Michigan Avenue
                               Chicago, IL  60611
                               (312) 222-9100

TELEPHONIC APPEARANCES:

For Official Committee of
Unsecured Creditors:           Chadbourne & Park, LLP
                               BY:  MARC D. ASHLEY, ESQ.
                               (212) 408-5194
                               BY: JESSICA MARRERO, ESQ.
                               (212)408-5100
                               BY: MARC ROITMAN, ESQ.
                               (212)408-5271
                               BY: FRANK VAZQUEZ, ESQ.
                               (212)408-5111

                               Zuckerman & Spaeder, LLP
                               BY: GRAEM BUSH, ESQ.
                               BY: ANDREW CARIDAS, ESQ.
                               (202) 778-1800

                               Landis Rath & Cobb, LLP
                               BY: MATTHEW B. MCGUIRE, ESQ.
                               (302)467-4431
```

```
TELEPHONIC APPEARANCES:
(Continued)

For SuttonBrook Capital:      SuttonBrook Capital
                              Management, LP
                              BY: CAROL L. BALE, ESQ.
                              (212) 588-6640

For Credit Agreement
Lenders:                      Wilmer Cutler Pickering Hale &
                              Dorr
                              BY: MICHELLE GOLDIS, ESQ.
                              (212) 295-6329
                              ANDREW N. GOLDMAN, ESQ.
                              (212)230-8836

                              Angelo Gordon & Co., LP
                              BY: GAVIN BAIERA, ESQ.
                              (212)692-0217

For Bank of America:          O'Melveny & Myers
                              BY: DANIEL CANTOR, ESQ.
                              (212) 326-2000
                              BY: DANIEL SHAMAH, ESQ.
                              (212) 326-2138

                              Bank of America
                              BY: ESTHER CHUNG, ESQ.
                              (646) 855-6705

For Wilmington Trust:         Brown Rudnick, LLP
                              BY:  KATHERINE BROMBERG, ESQ.
                              (212) 209-4929
                              BY: ROBERT STARK, ESQ.
                              (212)209-4862

For George Dougherty:         Grippo & Elden, LLC
                              BY: GEORGE DOUGHERTY, ESQ.
                              (312) 704-7700

For Mina Faltas:              Viking Global Investors
                              BY: MINA FALTAS
                              (212) 672-7011
```

TELEPHONIC APPEARANCES:
(Continued)

For Tribune:                    Sidley Austin
                                BY: GREG DEMO, ESQ.
                                (312) 853-7758
                                BY: KEN KANSA, ESQ.
                                (312) 853-7163
                                BY: JILLIAN LUDWIG, ESQ.
                                (312) 853-7523
                                BY: JANET HENDERSON
                                (312)853-2931
                                BY: BRETT MYRICK, ESQ.
                                (312) 853-1049
                                BY: BRYAN KRAKAUER, ESQ.
                                (312)853-7515
                                BY: PATRICK WACKERLY, ESQ.
                                (312) 853-2931
                                BY: ALLISON E. STROMBERG, ESQ.
                                (312) 853-0497

                                Tribune Company
                                BY: GARY WEITMAN, ESQ.
                                (312) 222-3394
                                BY: DAVID ELDERSVELD, ESQ.
                                (312) 222-4707
                                BY: MICHAEL D. O'NEAL. ESQ.
                                (312) 222-3490

For Citibank:                   Paul Weiss Rifkind Wharton
                                BY: KIRA DAVIS, ESQ.
                                (212) 373-3000
                                BY: ANDREW GORDON, ESQ.
                                (212)373-3543
                                BY: ANDREW LEVY, ESQ.
                                (202)223-7328
                                BY: SHANNON PENNOCK, ESQ.
                                (212) 373-3000
                                BY: ELIZABETH MCCOLM, ESQ.
                                (212) 373-3000

For Goldman Sachs:              Goldman Sachs & Company
                                BY: SCOTT BYNUM, ESQ.
                                (212) 902-8060
                                BY: LEXI FALLON, ESQ.
                                (212) 902-0791

```
TELEPHONIC APPEARANCES:
(Continued)

For Former Special Committee
Of Tribune's Board of
Directors:                       Skadden Arps Slate Meagher &
                                 Flom
                                 BY: NICK CAMPANARIO, ESQ.
                                 (312) 407-0974

                                 Jones Day
                                 BY: LYNN MARVIN, ESQ.
                                 (312) 782-3939
For Aurelius Capital
Management:                      Aurelius Capital Management LP
                                 BY: MATTHEW A. ZLOTO, ESQ.
                                 (646) 445-6518
                                 BY: REBECCA NEUMANN, ESQ.
                                 (202) 416-1082

                                 Akin Gump Strauss Hauer & Feld
                                 BY: SHAYA ROCHESTER, ESQ.
                                 (212) 872-1076
                                 BY: JOHN BERRY, ESQ.
                                 (212) 872-8075

For Morgan Stanley:              Weil Gotshal & Manges, LLP
                                 BY: ASHISH D. GANDHI, ESQ.
                                 (212) 310-8024
                                 BY: DAVID LITVACK, ESQ.
                                 (212)310-8361
                                 BY: ANDREA SAAVEDRA, ESQ.
                                 (212) 310-8544
For Serengeti Asset
Management:                      Serengeti Asset Management
                                 BY: NICHOLAS HEILBUT, ESQ.
                                 (212) 466-2167

For Anna Kalenchits:             Anna Kalenchits
                                 (212)723-1808

For Partner Fund Management:     Vinson & Elkins, LLP
                                 BY: LANCE A. MULHERN, ESQ.
                                 (212) 237-0184
For Oaktree Capital
Management:                      Oaktree Capital Management
                                 BY: KENNETH C. LIANG, ESQ.
                                 (213) 830-6422
```

TELEPHONIC APPEARANCES:
(Continued)

For JP Morgan Chase Bank:        Davis Polk & Wardwell, LLP
                                 BY: PETER KIM, ESQ.
                                 (212) 450-3028

                                 Richards Layton & Finger
                                 BY: MARK COLLINS, ESQ.
                                 (302) 651-7531

                                 JP Morgan Chase Bank NA
                                 BY: SHACHAR MINKOVE, ESQ.
                                 (212) 834-7174

For Brigade Capital
Management:                      Brigade Capital Management
                                 BY: NEIL LOSQUADRO
                                 (212) 745- 9758

For Royal Bank of Scotland:      Royal Bank of Scotland
                                 BY: COURTNEY ROGERS, ESQ.
                                 (203) 897-4815

For Eos Partners:                Eos Partners
                                 BY: MIKE J. SCHOTT, ESQ.
                                 (212) 593-4046

For Prof. Expert:                Raymond James
                                 BY: ROBERT SCHWARTZ, ESQ.
                                 (212) 872-7441

For Contrarian Capital
Management:                      Contrarian Capital Management
                                 BY: JOSHUA TRUMP, ESQ.
                                 (203) 862-8299

For Alvarez & Marsal, Inc.:      Alvarez & Marsal, Inc.
                                 BY: STUART KAUFMAN, ESQ.
                                 (224) 388-0634

For Macquarie Capital:           Macquarie Capital (USA)
                                 BY: RUSHABH VORA, ESQ.
                                 (212) 231-6311

For Wells Fargo:                 White & Case
                                 BY: SCOTT GREISSMAN, ESQ.
                                 (212) 819-8567

TELEPHONIC APPEARANCES:
(Continued)

For Deutsche Bank AG:              Bingham McCutchen, LLP
                                   BY: JEFFREY OLINSKY
                                   BY: CHAD VALERIO
                                   (212) 705-7857

                                   Kramer Levin Neftalis &
                                   Frankel, LLP
                                   BY: JORDAN KAYE, ESQ.
                                   (212) 715-9489
For Barclays:                      Barclays Capital, Inc.
                                   BY: BEN WILSON
                                   (212)412-7642
                                   BY: EITAN MELAMED, ESQ.
                                   9310) 907-0455

                                   Mayer & Brown, LLP
                                   BY: MICHAEL L. SIMES, ESQ.
                                   (212) 506-2607
                                   BY: AMIT K. TREHAN, ESQ.
                                   (212) 506-2500
                                   BY: JEAN MARIE ATAMIAN, ESQ.
                                   (212) 506-2678

For Law Debenture Trust:           Kasowitz Benson Torres & Park
                                   BY: SHERON KORPUS, ESQ.
                                   BY: DAVID ROSNER, ESQ.
                                   (212) 506-1715

For Cooperstown Capital
Management:                        Cooperstown Capital Management
                                   BY: PETER COURI, ESQ.
                                   (203) 552-6900

For Robert R. McCormick
Foundation:                        Katten Muchin Rosenman, LLP
                                   BY: DAVID C. BOHAN, ESQ.
                                   BY: DANIEL J. POLATSEK, ESQ.
                                   (312) 902-5566

For Interested Party:              Canyon Partners
                                   BY: CHANEY M. SHEFFIELD, ESQ.
                                   (310) 272-1062

For Non-Party:                     Duff & Phelps
                                   BY: JOE LIEWANT
                                   (973) 775-8336

TELEPHONIC APPEARANCES:
(Continued)

For Tricadia Capital:          Tricadia Capital
                               BY: IMRAD AHMED, ESQ.
                               (212) 891-5013

For Silver Point Capital:      Silver Point Capital
                               BY: MARK EHMER, ESQ.
                               (203) 542-4219

For Chicago Fundamental
Investment Partners:           Chicago Fundamental Investment
                               BY: PETER GRUSZKA, ESQ.
                               (312) 416-4215

For Board of Committee:        Jones Day
                               BY: XOCHITL STROHBEHN, ESQ.
                               (212) 326-3691

For Dow Jones News Wires:      Dow Jones & Company
                               BY: PEG BRICKLEY, ESQ.
                               (215) 462-0953

For Matthew Frank:             Alvarez & Marsal, Inc.
                               BY: MATTHEW FRANK, ESQ.
                               (312) 371-9955

For Chandler Bigelow:          Sperling & Slater
                               BY: CLAIRE P. MURPHY, ESQ.
                               (312) 641-3200
                               BY: DANIEL A. SHMIKLER, ESQ.
                               (312) 641-3200

For Merrill Lynch:             Kaye Scholer, LLP
                               BY: JONATHAN AGUDELO, ESQ.
                               BY: JANE PARVER, ESQ.
                               BY: MADLYN G. PRIMOFF, ESQ.
                               (212)836-8369

For Robert McCormick
Foundation:                    Katten Muchin Rosenman, LLP
                               BY: JOHN SIEGER, ESQ.
                               (312)902-5294

For DK Partners:               DK Partners
                               BY: EPHRAIM DIAMOND, ESQ.
                               (646) 282-5841

For Jefferies & Company:       Jefferies & Company
                               BY: JUSTIN BRASS, ESQ.
                               (203) 708-5847

TELEPHONIC APPEARANCES:
(Continued)

For Arrowgrass Management:        Arrowgrass Capital Partners,
                                  U.S., LP
                                  BY: ARIF GAGAT, ESQ.
                                  (212) 584-1160
For Smith Management:             Smith Management
                                  BY: JENNIFER WILD, ESQ.
                                  (212) 418-6877


For One East Partners:            One East Partners
                                  BY: SINA TOUSSI, ESQ.
                                  (212) 230-4510


For Pryor Cashman:                Pryor Cashman, LLP
                                  BY: TINA MOSS, ESQ.
                                  (212)326-0421

1

1  WILMINGTON, DELAWARE, THURSDAY, MARCH, 17, 2011, 10:05 A.M.

2              THE CLERK:  All rise.  Be seated, please.

3              THE COURT:  Good morning, everyone.

4              ALL PARTIES:  Good morning, Your Honor.

5              THE COURT:  Ready to proceed with your next

6  witness?

7              MR. FRIEDMAN:  In one minute, Your Honor, only

8  because there are a few administrative matters that will

9  just take a couple of minutes, related to the testimony that

10  this witness will be giving.

11              THE COURT:  Very well.

12              MR. FRIEDMAN:  Okay.  May it please the Court,

13  this is Edward Friedman, with the firm of Friedman Kaplan

14  Seiler & Adelman.  I'm an attorney for Aurelius.  I will be

15  examining the witness this morning, Mark J. Prak.

16              Just a few things, and this relates to FCC

17  matters.  One, we would, at this time, like to move into

18  evidence Noteholder FCC Exhibits 1 through 118, and we have,

19  as I understand it, consent from the DCL plan proponents to

20  the admission into evidence of these exhibits.

21              Just a couple of qualifications.  One is that

22  there is no Noteholder FCC 91.  That's a blank.  The exhibit

23  was withdrawn.  Two is the agreement and consent of the DCL

24  plan proponents is subject to the understanding that

25  exhibits that are designated confidential or highly

1  confidential, while they are being admitted into evidence,

2  are not going to be made publicly available, unless there's

3  a further agreement of the parties or order of the Court.

4              THE COURT:  How many of the 117 are marked

5  confidential?

6              MR. FRIEDMAN:  I would be giving Your Honor a

7  rough estimate if I said 25 percent.  I don't have an exact

8  number at this time.

9              THE COURT:  All right.

10             MR. JOHNSTON:  I have that number.

11             MR. FRIEDMAN:  We have the number.  What is it?

12             MR. JOHNSTON:  Your Honor, Jim Johnston of Dewey

13 & LeBoeuf on behalf of Oaktree and Angelo Gordon.  We

14 touched upon these issues at the beginning of the trial.

15 This information relates to my clients' holdings and

16 entities other than Tribune, as well as some JPMorgan-

17 related information that's similar.  There are, by my count,

18 15 exhibits that are marked confidential or highly

19 confidential.

20             THE COURT:  Okay.

21             MR. FRIEDMAN:  So that's --

22             THE COURT:  All right.

23             MR. FRIEDMAN:  So --

24             THE COURT:  They're admitted without objection,

25 but with those conditions.

1  (Noteholder FCC Exhibits 1 through 90 and 92 through 118

2  admitted in evidence.)

3       MR. FRIEDMAN:  Thank you, Your Honor.  Second, in

4  connection with the examination of Mr. Prak this morning, we

5  have prepared exhibit binders for the witness, for Your

6  Honor, and for counsel.  I would just like to note that

7  those exhibit binders do include some exhibits that are

8  confidential or highly confidential, only a small number.

9       And in the interest of moving the examination

10  along, hopefully without bumps or hurdles, I believe that my

11  questioning will not touch upon those documents in the

12  binders.  So I'm sure my colleagues who are representing the

13  DCL plan proponents will say something, and I welcome their

14  interruption, if I inadvertently refer to one of those.  But

15  my plan is to conduct an examination that can be conducted

16  entirely confidentially -- I mean, entirely on the public

17  record, consistent with what has been requested by the DCL

18  plan proponents.

19       And there's just one specific note about the

20  exhibit binders I would like to mention, so the record is

21  clear.  One of the exhibits that has been admitted into

22  evidence is the report of Mr. Prak regarding FCC matters.

23  The full and complete report is Noteholder FCC Exhibit 65.

24  What we have in the binder is a redacted version of that

25  report, which is Noteholder FCC Exhibit 117.  The redactions

1    were worked out in connection with discussions with the DCL

2    plan proponents, so they have been agreed upon.  When the

3    time comes, if any exhibits become publicly available, the

4    agreement, on behalf of the DCL plan proponents, is that the

5    redacted version -- Exhibit 117 -- is what would become

6    public.

7              What I'd like to note for Your Honor and for our

8    DCL counsel is that in the binder is Noteholder Exhibit 117,

9    which is the redacted report, except for the Court and the

10   witness and the DCL plan proponents' counsel, even though it

11   says DCL -- even though it says Noteholder Exhibit 117, it

12   is actually the full and un-redacted report but with yellow

13   highlighting, to indicate what is redacted in the redacted

14   report.  We just thought it'd be easier for Your Honor to

15   have the full report, to the extent it comes up.

16             And finally, very quickly as I advised the DCL

17   plan proponents' counsel, when I finish my questioning of

18   Mr. Prak, there are just a few questions that I'm not going

19   to be asking Mr. Prak because of conflicts on my part, and

20   Mr. Meredith Senter with the firm of Lerman Senter, also

21   counsel for Aurelius, will ask that handful of questions of

22   Mr. Prak, to conclude his direct examination when I finish

23   my questions.  So I anticipate that I'll be 45 minutes to an

24   hour, and Mr. Senter will be 5 minutes, so just a few

25   things.

1              MR. FLAGG:  Your Honor, Ron Flagg for the

2   debtors.  We have no objection to that arrangement.

3              THE COURT:  Okay.  Thank you.

4              MR. FRIEDMAN:  Okay.  So --

5              THE COURT:  Mr. Johnston, was there anything

6   further?

7              MR. FRIEDMAN:  No.  Oh, sorry.  Go ahead.

8              MR. JOHNSTON:  That's okay.  The -- no, Your

9   Honor.  Mr. Friedman anticipated my comments.  I just wanted

10  to reiterate the sensitivity of some of this material that

11  is subject to the exhibits as well as the report itself, the

12  highlighted, un-redacted version of the report that has been

13  handed around by Mr. Friedman and his colleagues this

14  morning and to the people in front of the bar isn't marked

15  on the cover under seal or highly confidential, attorneys'

16  eyes only.  The pages on the inside are.  I just wanted to

17  reiterate to the people on this side of the bar that this

18  document is, in fact, confidential and should not be

19  disclosed outside of the attorneys'-eyes-only limitation.

20             THE COURT:  Very well.

21             MR. JOHNSTON:  Thank you.

22             THE COURT:  Is there anything else preliminarily?

23             MR. FRIEDMAN:  I believe no, Your Honor.

24             THE COURT:  Okay.  Do you want to hand out the

25  binders?

1              MR. FRIEDMAN:  Yes.

2              THE COURT:  Okay.

3              MR. FRIEDMAN:  May I approach, Your Honor?

4              THE COURT:  Yes, certainly.  And you have one for

5    my law clerk as well?

6              MR. FRIEDMAN:  Oh, we need another one for the

7    clerk as well.

8              THE COURT:  And while the binders are being

9    circulated, I'll just mention, we will go until 5:30 today.

10   I have a conference call in chambers at that time.  We'll

11   take a lunch break, of course, as we usually do.

12             MR. ZENSKY:  Your Honor, can I address that issue

13   for a moment?  I don't anticipate the first two witnesses

14   will take us through to 5:30, and I believe that it was

15   agreed, at least among the parties, subject of course to the

16   Court's approval, that we would not begin our last witness

17   until first thing tomorrow morning.

18             THE COURT:  That was my impression from

19   yesterday.

20             MR. ZENSKY:  Okay.  So I don't believe we'll be

21   here until 5:30 today, Your Honor.

22             THE COURT:  All right.

23             MR. FRIEDMAN:  Okay.  Your Honor, the noteholder

24   plan proponents call, as their next witness, Mr. Mark J.

25   Prak.

1          THE CLERK:  Please remain standing, raise your

2     right hand, and place your right hand on the bible.

3     MARK J. PRAK, SWORN

4          THE CLERK:  Please be seated and adjust the

5     microphone closer to you.  State your full name for the

6     record, and spell your last name.

7          THE WITNESS:  My name is Mark, middle initial J.,

8     Prak, P-r-a-k.

9          THE CLERK:  Thank you, sir.

10                        VOIR DIRE

11    BY MR. FRIEDMAN:

12    Q     Good morning, Mr. Prak.  When you are not in

13    Wilmington for the Tribune confirmation hearing, where do

14    you work?

15    A     I work at Brooks, Pierce, McLendon, Humphrey & Leonard

16    in Raleigh, North Carolina.

17    Q     You are a lawyer?

18    A     I am.

19    Q     Would you please describe the nature of your practice?

20    A     For the past 31 years, I've been practicing

21    communications law.

22    Q     And can you mention some of the kinds of work you do

23    in the area of communications law, some of the clients you

24    represent in a general way, without disclosing anything,

25    obviously, privileged or confidential?

1  A     Sure.  We have principally an FCC regulatory practice.

2  We generally do all manner of things.  Our firm does all

3  manner of things for clients and own or operate media

4  businesses, newspapers, magazines, phone companies, cable

5  systems, radio and television stations, people that are

6  involved in communications.  More recently, we do more web-

7  based things as well.  Clients that we represent include

8  trade associations.  We do a lot of work in the television

9  industry.  We represent the ABC Television Affiliates

10 Association, which is a national trade association of all of

11 the ABC affiliates that are not owned by the network -- by

12 the ABC Network.  We also represent the North Carolina

13 Association of Broadcasters, the Virginia Association of

14 Broadcasters, the Ohio Association of Broadcasters.  The

15 principle clients that I represent are generally a matter of

16 public record at the FCC.  We represent the Hearst

17 Corporation, which is a large publisher and broadcasting

18 concern.  We represent a number of other TV groups, Young

19 Broadcasting, Fisher Communications, Quincy Newspapers, and

20 a variety of others that operate radio and television

21 stations.

22 Q     As part of your law practice, do you appear at the

23 FCC?

24 A     Oh, yes.

25 Q     Can you tell us how frequently you are at the FCC in

1  connection with your practice?

2  A     I'm at the FCC about four days a month.

3  Q     And what's the nature of the appearances you make

4  before the FCC?

5  A     Well, in our practice, we represent trade

6  associations, so we're involved in all kinds of industry

7  matters, and many of our clients are involved in trade

8  associations and interested in regulatory matters that

9  affect their business.  So we will, on occasion, lobby

10 Congress.  Congress generally -- you know, Congress passed

11 the Communications Act of '34.  It amends it periodically.

12 When it does, the Commission, the FCC, has to interpret what

13 Congress has done, and generally, the Commission adopts

14 rules and regulations and policies to interpret the

15 Communications Act.  We would be involved in notice and

16 comment rulemaking proceedings before the Commission.  We

17 would be involved in application work.  When we do mergers

18 or acquisitions work, there's always an FCC component to

19 securing the approval of the transfer of the licenses.

20 We're involved in ongoing counseling of parties who are

21 seeking to comply with the Communications Act and the

22 Commission's rules, regulations, and policies.  And then, we

23 also give day-to-day operational advice and litigate rules

24 and policies or statutes passed by Congress, if there's some

25 question either as to their constitutionality or as to the

1  application -- the legality of the application of a

2  particular rule.  So we have a fairly comprehensive

3  representation of communications companies.

4  Q     Now, as part of your practice, do you get involved in

5  matters relating to the FCC media ownership rules?

6  A     Oh, yes.  For about 31 years, that's been a very

7  focused part of my practice.  If you have a client and that

8  client wishes to acquire another property or sell a

9  property, the ownership rules are always implicated, because

10 you have to know -- if you're a seller, you have to know if

11 your buyer has any multiple-ownership problems that could

12 affect, delay the transaction, or inhibit the transaction in

13 some fashion that would be negative.  Or if you're a buyer,

14 you have to make sure that, as you structure your entity,

15 you're going to comply with the Commission's multiple-

16 ownership rules.

17 Q     And does your practice involve dealing with the FCC

18 attribution rules?

19 A     Absolutely.  The attribution rules are sort of the

20 core of the multiple-ownership rules, in terms of its

21 implementation.  The attribution rules, Your Honor, are just

22 a simple means by which the Commission decides what kind of

23 interest in an entity, operating a radio or a television

24 station or a newspaper, are going to be considered relevant

25 for ownership-rule purposes.  In other words, the

1   Commission's ownership rules are based on the notion of

2   promoting diversification of the ownership of the media mass

3   communications of diversification of programming,

4   preservation of alternative voices, and attempt to ensure

5   that we have a diverse and localized system of

6   communications.  From the inception, there have been rules

7   and limits on how many stations someone can own nationally

8   and how many stations someone can own in local markets.  To

9   implement that, the attribution rules serve as the basis for

10  that kind of analysis, and what would happen is, if you have

11  party A, who owns 5 percent of a company, call it company B,

12  that operates a TV station in the market, and also owns 5

13  percent of company C, that operates a television station in

14  the same market, the companies would -- the individual

15  person A, whether it's an individual, a company, or some

16  form of business entity, would have an attributable interest

17  in both stations.  Because of the 5-percent attributable

18  interest in both stations, there would be a violation of the

19  local-television-ownership rule, under certain

20  circumstances, depending upon the facts and the -- well, the

21  local-television-ownership rule now would require an

22  analysis of whether the stations were among the top four

23  rated stations in the market and whether there would be

24  eight or more voices -- independent voices -- remaining

25  after a merger.  So they come into play that way.  The

1  attribution rules are ultimately the basis by which we

2  decide whether or not someone has an interest that the FCC's

3  going to say is cognizable for purposes of application of

4  the multiple-ownership rules.

5  Q      In addition to your practice, Mr. Prak, do you do any

6  teaching?

7  A      I do.

8  Q      And tell us, please, where you're teaching and what

9  you're teaching.

10 A      Well, I teach a course in telecommunications law and

11 public policy at my alma mater: Duke.  I went -- I took the

12 course when I was a sophomore.  I liked it.  It got me into

13 my life's work, and I've been teaching it for about 19

14 years.  I have class tonight.

15         THE COURT:  So where do you have Duke in the

16 bracket?

17 (Laughter)

18         THE WITNESS:  I'd have to say, Your Honor, I have

19 two brackets --

20 (Laughter)

21         THE WITNESS:  -- one bracket that I use with my

22 heart, in which I have Duke going all the way, now that

23 Kyrie's supposed to play on Friday, and another bracket

24 where I go with my head, and where I might bet money.

25 (Laughter)

1            THE WITNESS:  And I consider the answer to both

2  those questions highly confidential within the bar.

3  (Laughter)

4            THE WITNESS:  There are Duke fans who'd give me a

5  hard time if they knew the result of my confidential

6  bracket.

7  (Laughter)

8  BY MR. FRIEDMAN:

9  Q     Mr. Prak, have you ever served as an expert witness in

10  a case, prior to this case?

11  A     I have.

12  Q     And just -- how many times?

13  A     Twice.

14  Q     Okay.  Now, in this case, you've been engaged by

15  Aurelius, correct?

16  A     That's correct.

17  Q     And are you being paid for your services?

18  A     I am.

19  Q     At your regular hourly rate?

20  A     $575 an hour.

21  Q     And is -- your arrangement is that you will be paid,

22  regardless of the opinions you express and regardless of the

23  outcome of this matter?

24  A     That's true.

25            MR. FRIEDMAN:  Now, Your Honor, at this time, we

1  would like to tender Mr. Prak as an expert with respect to

2  FCC procedures, regulations, and policies, with particular

3  reference to cases involving multiple ownership and/or

4  cross-ownership of broadcast and newspaper interests.

5          THE COURT:  Is there any objection?

6          MR. FLAGG:  No objection, Your Honor.

7          THE COURT:  You may proceed accordingly.

8                    DIRECT EXAMINATION

9  BY MR. FRIEDMAN:

10  Q    Mr. Prak, in connection with your engagement in this

11  matter, you prepared a report, correct?

12  A    I did.

13  Q    And the report is in evidence as Noteholder FCC

14  Exhibit 65 and also in redacted form and in everyone's

15  binders as Noteholder Plan Proponents Exhibit 117.  Let me

16  begin by asking you, generally, what does the FCC have to do

17  with Tribune's emergence from bankruptcy?

18  A    Well, Tribune is now in bankruptcy, and the licensee

19  of the stations is the Tribune Company debtor-in-possession.

20  To come out of bankruptcy, the FCC will need to approve the

21  reorganized Tribune's ownership structure and the like, and

22  in doing that, they will await the receipt of this Court's

23  confirmation order and the various information that will be

24  provided as a result of that order to the Commission in the

25  form of an amendment to the pending application.

1  Q      Let me ask you to take a look at DCL Exhibit 307,

2  which is in the binder.  And the DCL Exhibit 307 comes after

3  the Noteholder exhibits, and --

4  A      I see it.

5  Q      Okay.  So I'd appreciate your turning to page 38 of

6  that exhibit.

7  A      I see it.

8  Q      And the first full paragraph contains a reference to

9  FCC applications.  Can you just explain what is meant by an

10  FCC application in the context of a company, such as

11  Tribune, in bankruptcy?

12  A      Yes, there would be an application filed with the FCC.

13  This provision of the plan implements just what I was

14  discussing, Your Honor.  The -- there will be an application

15  filed with the FCC, as has already been done by the Tribune

16  Company.  The information will be provided based on the plan

17  confirmed by the Court.  And the Commission will evaluate

18  the bona fides of the proposed assignee of the licenses of

19  Tribune Company.  It will look for compliance with the

20  multiple-ownership rules, foreign-ownership rules, character

21  qualifications.  There are a number of different kinds of

22  criminal offenses that Congress has made subject to the

23  denial of federal benefits, so there are a variety of legal

24  requirements that the Commission considers in granting an

25  application.  But for the most part, it's compliance with

1  the multiple-ownership rules and the citizenship rules.

2  Q      And in order of approval from the FCC is necessary --

3  A      That's right.

4  Q      -- in order for Tribune to emerge from bankruptcy?

5  A      That's correct.

6  Q      Now, staying on page 37 of DCL Exhibit 37 -- sorry,

7  DCL Exhibit 307, page 38, would you look at the very top of

8  that page in the carryover paragraph?  There's a sentence

9  that reads:

10  "Because the debtors' operations include newspapers,

11  television stations, and a radio station, the debtor

12  committee lender plan must comply with certain FCC-related

13  multiple- and cross-ownership requirements and

14  restrictions."

15  So can you just tell us, briefly, what those multiple- and

16  cross-ownership requirements and restrictions are?

17  A      Sure.  There are -- the Commission has a variety of

18  multiple-ownership rules, ranging from the 39-percent

19  national items cap on the ownership of stations nationwide,

20  through the newspaper broadcast cross-ownership rule, the

21  television local market cross-ownership rule, the radio

22  local market cross-ownership rule, the television radio

23  local market cross-ownership rule, the restrictions on LMAs,

24  joint sales agreements, all kinds of joint-operating

25  agreements can also come into play.  There have been rules

1    in the past, some of which have been eliminated: the cross-

2    interest policy, the 100-mile rule -- all kinds of ownership

3    rules during the history of the Commission.  But at present,

4    and for the purposes here today, the most relevant rules are

5    the newspaper broadcast cross-ownership rule, because

6    Tribune is an old-line publisher and broadcaster, the local

7    market television rule, and the radio ownership -- local

8    market radio ownership rule, in one instance, and perhaps in

9    others, the TV and radio local market rules.

10   Q    If you would, turn the page, please.  In DCL Exhibit

11   307, on page 39, at the very bottom of the page, there's a

12   heading "FCC matters".  And if you look at that paragraph,

13   you see a reference to the disclosure statement.  It says

14   that waivers of certain FCC broadcast multiple- and cross-

15   ownership rules must be obtained.  Can you explain what is

16   meant by a waiver of FCC rules?

17   A    Sure.  In this case, Tribune has been granted a

18   variety of waivers, most recently when Mr. Zell and the --

19   when the control of the company transferred to Mr. Zell, I

20   guess it was in 2007, the Commission granted Tribune seven

21   waivers in six markets of the various multiple-ownership

22   rules.  Those waivers are not waivers for all time.  If the

23   station's control is to be -- if the company's control or

24   the licenses are to be assigned or the station's -- the

25   company's control is to be transferred, then there would be

1  -- need to be a new application, such as will occur in this

2  case, and the Commission will consider anew whether it

3  should waive its rules in the fashion that it did in the

4  past.  Generally speaking -- and this has changed over the

5  years, Your Honor, but the Commission has sometimes taken

6  the rule -- taken the position that once it waives a rule,

7  it won't necessarily waive it again; that it -- when you

8  sell, it's got to be re-evaluated.  In some cases in the

9  past, they've required combinations to be split up.  That's

10  not the prevailing wave at present.  Right now, we have new

11  rules that were adopted as recently as 2007, which have yet

12  really to be the subject of any reported Commission

13  decisions as to what they'll do with waivers that have been

14  granted in the past and they seek to be renewed in a

15  subsequent transaction.  A waiver of the Commission's rules

16  is a decision that the public interest would require

17  something different than the enforcement of the bright-

18  line/black-letter rule.  And generally, when I'm seeking a

19  waiver of a Commission rule, I want to be able to

20  demonstrate that, in this case, the enforcement or

21  application of the rule would actually be contrary to the

22  public interest: that there would be a case for looking at

23  the rule and its purpose and for saying that those

24  principles embedded in the rule itself don't make a lot of

25  sense when applied to the facts of this unique, particular

1    case.  And that's generally the premise for a waiver of

2    whatever Commission rule there is.

3    Q    And in this case, am I correct that Tribune's

4    application for waivers would be part of the Tribune FCC

5    application?

6    A    That's correct.  You file the application on either

7    form 314 or 315, depending on whether it's an assignment or

8    a transfer of control, and you, as a part of that, as an

9    exhibit to the application, you would make your case as to

10   why the public interest would be served by waiving the rule.

11   Q    So one ingredient of the FCC decision-making process

12   as to whether to approve the transfer of the licenses to

13   reorganized Tribune would be its decision whether to grant

14   those waiver requests?

15   A    Absolutely.  Yes.

16   Q    I'd like to call your attention, please, to what I

17   believe is the next exhibit in your binder, which is DCL

18   Exhibit 1441, and this is a notice of filing of the second

19   amended plan of reorganization and the second amended plan

20   itself.  And I should mention, with respect to this exhibit

21   and other exhibits in the binder, many of the exhibits are

22   very, very lengthy, and what we've tried to do is put, in

23   the binder, selected pages, so that the binder's not too

24   thick and we have the pages that we will be referring to

25   this morning.  So I'd like to call your attention, please,

1  to page 50 of the DCL plan.

2  A     I see that.

3  Q     And the pages are in order.  I'm almost there.  Okay.

4  And if you look at page 50, you see the heading of Section

5  5.3.2, directors and officers of reorganized Tribune, and

6  the provision goes on to state that JPMorgan and Angelo

7  Gordon each designate one board member of the initial board,

8  and it goes on further to state that JPMorgan and Angelo

9  Gordon have certain rights to designate the placement

10  directors during the initial term of the director they

11  designate.  Do you see those provisions?

12  A     I do.

13  Q     Do you have an opinion as to whether JPMorgan and

14  Angelo Gordon have attributable interests in reorganized

15  Tribune by virtue of this DCL plan provision, relating to

16  their board-designation rights?

17  A     Yes, I do.

18  Q     And what is your opinion in that regard?

19  A     My opinion is that both JPMorgan and Angelo Gordon

20  have attributable interests in Tribune, by virtue of the

21  designation rights.

22  Q     Okay.  And I don't think there's any dispute about

23  that in this case, but could you just briefly state the

24  basis for your opinion in that regard?

25  A     Sure.  The -- one of the things, in looking at

1   attribution, the Commission is concerned with is the

2   potential for control or influence over the operations of

3   the broadcast licensee.  The Commission has held that the

4   ability to designate a member of the board of directors of a

5   licensee company is an attributable interest.  And so it's

6   not in the rule, but it's in gloss -- administrative gloss

7   -- provided by Commission decisions interpreting the rules.

8   So any time there's an application filed such as Tribune's,

9   the Commission is required to make a public-interest

10  judgment about the granting of the application.  And

11  embedded in the public-interest judgment will be its

12  judgment about the various legal compliance factors, whether

13  it's ownership of stations with multiple-ownership issues,

14  whether it's foreign-ownership issues, whether it's issues

15  relating to character or other kinds of qualifications.  All

16  of those will be a part of the public-interest judgment.

17  And the Commission will look and determine whether or not

18  there's something about the propose transaction that causes

19  it to feel like it either needs to be changed or it needs to

20  be conditioned -- the transaction needs to be conditioned in

21  some way on a different structure, in order to serve its

22  interest.  Here, the principle interest the Commission will

23  be, do these people -- and in the cases interpreting the

24  designation-right issue, it will be, do these people have

25  the ability to influence or control the affairs of the

1   company.  And with respect to certain positions, the

2   Commission has said these positions are attributable.

3   Officers -- general officers of a corporate licensee and

4   directors are considered to hold positional-attributable

5   interest.

6   Q     Okay.  If you flip over to page 54 of DCL Exhibit

7   1441, 53 and 54, there are provisions for distribution of

8   common stock in reorganized Tribune under the DCL plan.  And

9   the question I would like to ask you is to consider the

10  possibility that JPMorgan and Angelo Gordon will each

11  receive 5 percent or more of the common stock devoting

12  equity of reorganized Tribune.  And I would like to ask you

13  if you have an opinion as to whether receipt and holding of

14  5 percent or more of the voting stock in an entity amounts

15  to an attributable interest in that entity?

16  A     Yes, I do have an opinion.

17  Q     And what's your opinion?

18  A     My opinion is that the holding of 5 percent or more of

19  the voting stock in a corporate licensee will constitute an

20  attributable interest.

21  Q     And that's pretty standard, as you understand --

22  A     It is.

23  Q     -- it.  There's no dispute of that --

24  A     No, that's in the rule.

25  Q     -- in this case.

1  A      That's in *47 CFR Section 73355* of the rules.

2  Q      Okay.  So now, focusing on the situation where

3  JPMorgan and Angelo Gordon have attributable interest in

4  reorganized Tribune, the question I'd like to ask you is

5  what are the consequences for Tribune if the DCL plan is

6  confirmed and Angelo Gordon and/or JPMorgan also have

7  attributable interest in other media companies that own

8  radio or TV stations or daily newspapers?

9  A      Oh, the consequences would be that since they're going

10  to have attributable in Tribune, if they have attributable

11  interest in other entities that operate media in markets

12  that overlap with Tribune, then there are the potential for

13  multiple-ownership rule violations.

14  Q      Now, do you have an understanding as to the position

15  that has been taken by JPMorgan and Angelo Gordon as to

16  whether or not they own attributable interest in other media

17  companies?

18  A      I do.

19  Q      And what's your understanding of their position?

20  A      My understanding of their position is that both

21  JPMorgan and Angelo Gordon consider themselves not to have

22  attributable interest in other media companies in which they

23  hold a stake.

24  Q      And do you agree or disagree with that position?

25  A      I disagree with that opinion.

1  Q    Okay.  So let me call your attention to the

2  demonstrative that has been prepared.  Do we have a hard

3  copy for the Court?

4  (No audible response)

5          MR. FRIEDMAN:  Your Honor, may I approach the

6  bench?

7          THE COURT:  Certainly.

8          MR. FRIEDMAN:  This will be on the screen, but I

9  know it's often easier to have a hard copy.

10          THE COURT:  Thank you.

11  BY MR. FRIEDMAN:

12  Q    Mr. Prak, I'd appreciate your turning to slide number

13  6.  The numbers are -- appear fairly faintly, the lower

14  right of each page, and --

15  A    Yes, I see that.

16  Q    -- the heading on slide 6 is "basis for opinions,

17  question one", and then it says "see interest of interest of

18  JPMorgan and Angelo Gordon".  And actually, I should ask you

19  an important question before you turn to slide number 6.  I

20  would appreciate your turning to slide number 1, which is

21  entitled "questions".  And the first question there is:

22  "Will the interests of JPMorgan and Angelo Gordon, in

23  reorganized Tribune, under the terms of the DCL plan, taking

24  into account other media interests held by JPMorgan and

25  Angelo Gordon, violate the FCC's media-ownership rules?"

1  That's the question.  My question for you now is, do you

2  have an opinion as to the answer to that question?

3  A    I do.

4  Q    And what is your opinion?

5  A    My opinion is that they will violate the FCC's media-

6  ownership rules, as things are presently constituted.

7  Q    And do you have an opinion, in the event the FCC

8  determines that these media interests of JPMorgan and Angelo

9  Gordon violate the media-ownership rules, how will that

10 impact whether or not the FCC approves the DCL plan, as it

11 is currently structured?

12 A    Well, the interests they have are going to complicate

13 and adversely affect the process.  It will slow the process

14 down.

15 Q    Okay.  And do you have an opinion as to whether the

16 DCL plan, as it is currently structured, will be approved by

17 the FCC?

18 A    Yes.

19 Q    And what's your opinion?

20 A    It would not be approved by the FCC, as it presently

21 stands.

22 Q    Okay.  Now, let me call your attention now to -- we'll

23 get into the basis for your opinion, starting with slide

24 number 6.  And I'm going to ask you about the other media

25 interests of JPMorgan and Angelo Gordon.  And I'd like to

1  start with the column at the far right that is entitled

2  "interests of Angelo Gordon".

3  A     Yes.

4  Q     And I'll just note, as you can see, what appears on

5  the chart are certain interests of reorganized Tribune, or

6  Tribune presently, in certain markets that are listed on the

7  lower left, and then the next couple of columns, as you can

8  see, are Tribune newspapers and Tribune broadcast stations.

9  And then, the two columns to the right: one is interests of

10 JPMorgan; the other is interests of Angelo Gordon.  And

11 we've set forth there certain companies and interests of

12 those companies in those markets.  So I'd like to start in

13 the column "interests of Angelo Gordon" with "NextMedia",

14 which is right in the middle.  Do you see that?

15 A     I do.

16 Q     And do you know what NextMedia is?

17 A     Yes, it's a company that operates radio stations and

18 billboards -- outdoor advertising.

19 Q     Okay.  And does NextMedia have operations or radio

20 stations in Chicago?

21 A     It has eight radio stations that play in the Chicago

22 market.

23 Q     Okay.  Now, I'm going to ask you to turn, please, to

24 Noteholder FCC Exhibit 21, which is in your binder.

25 A     Okay.  I'm there.

1    Q      Are you there?

2    A      Yes, I am.

3    Q      Okay.  Do you know what this is?

4    A      Yes, this is a copy of an exhibit to the NextMedia

5    application that it filed with the FCC when it was coming

6    out of bankruptcy.  So it's akin to what we're doing here.

7    NextMedia was in bankruptcy.  It was coming out of

8    bankruptcy.  After the confirmation order, this application

9    was approved by the FCC, and this was a part of that

10   application.

11   Q     And does the NextMedia FCC application indicate the

12   equity ownership interests of Angelo Gordon in NextMedia?

13   A      It does.

14   Q      And do you know where in here?

15   A      Yes, at page 11 of 12, there is a table that

16   demonstrates the -- actually, page 10.  It begins on page 10

17   and proceeds to page 11.  There's a table that delineates

18   the ownership structure of NextMedia Group, Inc., as

19   reorganized.  And as you see, on page 11, three investment

20   funds directly -- indirectly controlled by Angelo Gordon &

21   Company, LP, own a non-attributable, non-voting equity stake

22   in NextMedia of 42.6 percent.

23   Q     That's 42.6 percent of the equity in NextMedia?

24   A      Right.  And then, at page 3, in footnote 8, there's a

25   similar notation.  There's a -- the claim's made that none

1    of the non-attributable stockholders of reorganized

2    NextMedia individually will hold an equity or voting

3    interest greater than 4 percent, except three investment

4    funds indirectly controlled by Angelo Gordon, that will, in

5    the aggregate, hold a 42.6-percent equity interest and a

6    zero-percent voting interest in the company, as reorganized.

7    Q    Now, I'm going to ask you, please, to turn to

8    Noteholder Exhibit FCC 20, which is actually the first tab

9    in your binder.

10   A    Okay.

11   Q    And I'll just note that the complete exhibit is

12   approximately 600 pages in length, probably bigger than this

13   entire binder.  It consists -- as you can see, the first

14   page is the order of the Court, confirming the Chapter 11

15   plan of reorganization for NextMedia.  And the exhibit goes

16   on.  It contains the plan itself, and then, as you turn the

17   pages in the excerpt that you have, there's a plan

18   supplement and then a supplement to the plan supplement, and

19   then you get to the last page of our excerpt, which is

20   actually the very last page of the actual Exhibit 20 that's

21   in evidence.  And I'd like to call your attention to that

22   last page of Exhibit 20 and specifically call your attention

23   to the very last sentence on that page.  Do you see that?

24   Why don't you just, please, read that into the record?

25   A    Yes.  It indicates:

1  "The final member of the new board will be designated by

2  Angelo Gordon and disclosed at or before the confirmation

3  hearing."

4  Q     Okay.  And that's the final member of the board of

5  directors of NextMedia when it comes out of bankruptcy,

6  correct?

7  A     That's correct.

8  Q     Now, I would appreciate your turning to Exhibit 80 in

9  the binder.  Can you tell us what this is, please?

10  A     This appears to be a stockholders agreement by and

11  among NextMedia Group, Inc. and certain stockholders named

12  in the document.

13  Q     And I'm going to call your attention to pages 9

14  through 11 of the document.  And you see, on page 9, section

15  2, "corporate governance, board of directors".  And I'm not

16  going to read this somewhat detailed provision, but if you

17  look at it, you can see that it refers to what are described

18  as certain board-nomination rights for Angelo Gordon.  Do

19  you see that?

20  A     I do.

21  Q     Okay.  Now, I would like to ask you, do you have an

22  opinion based on Angelo Gordon's 42.6-percent non-voting

23  equity interest in NextMedia, Angelo Gordon's director-

24  designation right in NextMedia, and the what are described

25  as nomination rights for Angelo Gordon in the NextMedia

1    stockholder agreement?  Do you have an opinion, taking all

2    of those things together, as to whether Angelo Gordon has an

3    attributable interest in NextMedia?

4    A      I do.

5    Q      And what is your opinion?

6    A      My opinion is that Angelo Gordon has an attributable

7    interest in NextMedia.

8    Q      What is the basis for your opinion?

9    A      Well, the -- my understanding is that NextMedia has a

10   single majority stockholder, so the 42.6-percent non-voting

11   equity stake would ordinarily be viewed as non-attributable.

12   However, the Commission's attribution rules and its

13   decisions interpreting the attribution rules make clear that

14   they will look at all of the facts and circumstances and not

15   view themselves as bound by the labels put on things by the

16   party.  And so here, the 42.6-percent equity stake, which is

17   quite large -- in fact, depending upon the total debt and

18   equity of the company, it could trigger attribution under an

19   attribution rule that requires one to take the total debt

20   and total equity of the company, and if an entity has more

21   than 33 percent of that, the interest will be deemed

22   attributable.  Here, 40-percent non-voting stock interest,

23   standing alone, doesn't give me enough information to make

24   the determination, because I don't know the company's total

25   debt-load coming out of bankruptcy.  But given that it's at

1   46 percent, there's that concern that, if I were at the

2   Commission, I'd want to know what the answer to that is.

3   But here, the reason that I find it attributable, in any

4   event, is -- the right to designate a member of the board of

5   directors is an attributable interest, in and of itself.

6   And the provisions in this stockholder's agreement, while

7   they are nominally referred to as nomination rights, if you

8   look at them, there's no way, once you interpret the

9   agreement, that anyone under -- other than the person

10  selected by Angelo Gordon, either to be the CEO or the

11  replacement alternate director, is likely to end up being

12  selected.  And so, I would tell you that it -- based on my

13  experience, the Commission's staff, when it looks at this,

14  will say this is an attributable interest; you need to

15  address that matter; it needs to be fixed, because we're not

16  going to approve this application with the interests that

17  NextMedia holds in Chicago and the interests that Tribune

18  holds in Chicago as well.

19  Q    Okay.  Let me ask you, staying with slide number 6,

20  and staying in that column "interests of Angelo Gordon",

21  take a look at Freedom Communications.  And I want to ask

22  you about some of the background facts relating to Angelo

23  Gordon's interests in Freedom.  And there are confidential

24  documents that I'm not going to refer to, but I will call

25  your attention to what you have towards the back of your

1    binder.  It's miscellaneous document A.  So it's an excerpt

2    from a deposition that was taken in this case, so it's

3    obviously not a document that's an exhibit in evidence, but

4    it is deposition testimony in this case.  It's an excerpt

5    from the deposition of Gavin Baiera, who is a managing

6    director at Angelo Gordon.  And if you look at pages 326

7    through 328 his deposition, and I'm not going to read all

8    of these pages, but what I'd like to call to your attention

9    is that Mr. Baiera is testifying about the interests of

10   Angelo Gordon in Freedom.  And what he says first, with

11   respect to the equity-ownership interest, he states the

12   range of ownership.  And if you look at the top of page 327,

13   you see that he says:

14   "The equity ownership is in the range of 18 to 25 percent."

15   A     I see that.

16   Q     Do you see that?

17   A     Yes, I do.

18   Q     And then, if you look further down, on page 327,

19   continuing to 328, Mr. Baiera says that "Angelo Gordon also

20   has the right to be a board observer", and he mentions that

21   he, himself, has served as a board observer at Freedom.  Do

22   you see that?

23   A     I do see those.

24   Q     So now, I would like you to assume, for purposes of my

25   question, that the equity-ownership interest of Angelo

1  Gordon in Freedom is at the low end of the range mentioned

2  by Mr. Baiera -- that is 18 percent -- and I'd like you to

3  assume that it's non-voting equity.  And I would like you to

4  assume, as Mr. Baiera said, that Angelo Gordon has board-

5  observer rights.  And my question to you is, do you have an

6  opinion?  Based on those facts that I've asked you to

7  assume, do you have an opinion as to whether Angelo Gordon's

8  interest in Freedom is attributable?

9  A     I do.

10 Q     And what is your opinion?

11 A     My opinion is that they have an attributable interest

12 in Freedom.

13 Q     Okay.  And let me just ask.  I should've asked before.

14 What is Freedom Communications?

15 A     It's a publisher and broadcasting company.

16 Q     Okay.  Now, you just stated your opinion that Angelo

17 Gordon has an attributable interest in Freedom.  Could you

18 explain, please, the basis for your opinion?

19 A     Well, here again, as we're discussing when we're

20 discussing NextMedia, you have an equity stake of 18

21 percent, the question tells me to assume.  That equity stake

22 is nominally non-attributable.  Although it's a significant

23 equity stake, it's not as large as what we saw with

24 NextMedia in Chicago.  But it would generally be treated as

25 non-attributable, for purposes of the multiple-ownership

1  rules.  The board-observer rights are more problematic, and

2  that's for this reason, Your Honor:  The Commission has

3  looked at board-observer rights, and in some contexts, said

4  they're not attributable.  In others, they may be

5  attributable.  We have a decision from the Commission in the

6  *Paxson* case, where it was necessary for NBC to pull back its

7  board-observer rights, because the Commission was

8  uncomfortable with the fact that NBC was attempting to

9  influence the operations of that licensee and was using the

10  board-observer positions for that purpose.  So to some

11  degree, it depends on all of the atmospherics and facts as

12  to whether or not a board-observer position is attributable.

13  Here, I would find it to be attributable, and I think the

14  Commission would find it to be attributable, because

15  subsequent to the *Paxson* decision, which was a decision by

16  the full Commission, the staff has been taking the position

17  that they're not interested in board-observer rights.  I

18  know that, because I spoke personally with one of the staff

19  members about it on a matter where I had that issue to deal

20  with.  And I know it because, in a recent decision last

21  fall, in a case dealing with foreign ownership, not the

22  multiple-ownership rules, but the same issue with respect to

23  board-observer rights, the Commission staff said that board-

24  observer rights could be attributable in Una Vez Mas.  It

25  could be attributable, depending upon the facts.  So my

1  feeling is right now that, given the Commission -- the full

2  Commission's decision, the staff's view is the board-

3  observer rights are going to be attributable, especially

4  when combined with a substantial, nominally non-voting

5  stake.  And I'd like to just explain that more to you and

6  why I think it's important.  It's important in this case,

7  because most of these entities in which JPMorgan or Angelo

8  Gordon have interests, are coming out of bankruptcies

9  themselves.  People have lost lots of money, and the

10  entities that are picking up the pieces have either lost

11  substantial amounts of money or are doubling-down and hoping

12  to make money coming out.  And so those entities tend to

13  want exactly what they Commission doesn't want them to have,

14  which is the potential for control or influence over the

15  operating affairs of the company.  And so, in this case,

16  Freedom has been through a bankruptcy.  They are coming out,

17  and Angelo Gordon has an 18-percent stake for the purposes

18  of Mr. Friedman's question, and they've got the right to

19  nominate a board observer who'd use those rights.  I don't

20  believe the Commission's staff will view that as a non-

21  attributable interest.  I think when -- if this issue is

22  presented to the staff, they will say: we don't like that;

23  we think it's an attributable interest; you need to

24  restructure.  So that's the basis for my opinion.

25  Q    Okay.  Let me ask you about the interests of JPMorgan

1   that appears on slide number 6.  It's the next-to-the-last

2   column to the right.  And if you look down, you see

3   Gannett in that column.  Can you tell us, please, what is

4   Gannett?

5   A    Gannett is a very large publisher and broadcaster --

6   one of the larger ones in the country.

7   Q    Okay.  Now, let me ask you, please, to take a look at

8   Noteholder Exhibit 44, which is in your binder.  This is the

9   JPMorgan media ownership certification that was provided to

10  Tribune in connection with Tribune's FCC application.

11  A    I see that.

12  Q    I -- you're faster than I am.  I'm almost there.  Now,

13  if you look at page 5 of the JPMorgan certification, which

14  is Exhibit 44, you see that JPMorgan makes various

15  statements about its interests in Gannett.  For example,

16  JPMorgan says that, as of May 2010, JPMorgan held 25,657,691

17  shares, or 10.8459 percent of Gannett's outstanding stock.

18  A    I see that.

19  Q    JPMorgan also says although an interest in 5 percent

20  or more of the voting stock of a corporate broadcast

21  licensee is generally attributable under the FCC's ownership

22  rules, and I've deleted some words, but that's a statement

23  that JPMorgan makes in its certification that generally 5

24  percent or more of the voting stock is attributable.  In

25  this document, JPMorgan goes on to state:

1   "JPMorgan believes that its interest in Gannett does not

2   constitute an attributable interest under the FCC rules.

3   JPMorgan says that certain of its interests in Gannett

4   qualifies for the 20-percent attribution threshold."

5   A    Yes, I see all of that.

6   Q    Do you understand what JPMorgan is saying here?

7   A    I do.

8   Q    Could you explain the JPMorgan position, and then I'll

9   ask you some questions about it?

10  A    Well, as I understand their position, they take the

11  view that the passive investor note to 733555 of the rules,

12  would apply to a number of the shares of stock that they

13  hold in Gannett.  As they rightly note, the Commission has

14  set a higher attribution threshold for certain kinds of

15  passive investors.  For example, investment companies under

16  the '40 Act, that would be *15 USC 80(a)(3)*, insurance

17  companies and banks holding stocks through their trust

18  departments in trust accounts are entitled to the 20-percent

19  expanded threshold.  And the reason for that is the

20  Commission wanted to -- in -- to make it easier for people

21  to flow cash into the broadcasting business.  And so

22  companies like that, that are passive investors, are allowed

23  to have a higher threshold for attribution.

24  Q    Okay.

25  A    The Commission has also considered whether --

1    Q      Well, let me -- before you get into that --

2    A      Sure.

3    Q      -- let me -- I just wanted to have, in the record, a

4    statement of what we understand JPMorgan to be saying.  And

5    now, I would like to ask you whether you have an opinion as

6    to whether JPMorgan has an attributable interest in Gannett.

7    A      Yes, my -- I do have an opinion.

8    Q      And what is your opinion?

9    A      My opinion is that they do have an attributable

10   interest in Gannett, because I disagree with the way they

11   have given their opinion here with the facts that are

12   presented.

13   Q      And can you explain the basis for your opinion that

14   JPMorgan has an attributable interest in Gannett?

15   A      Yes, I can.

16   Q      Please do.

17   A      Okay.  That's where I was heading.  The Commission has

18   looked at this question, because all of this relates to the

19   opportunity for control or influence on the operating

20   affairs of the country -- company: programming, personnel,

21   finances.  Those kinds of core operating functions are what

22   the Commission's concerns are with its attribution rules and

23   its multiple-ownership rules.  And the investment community

24   is at the edge of that.  Once you get to non-attributable

25   status, you'd like to have as much opportunity as you can to

1  protect your investment and look after things.  And the

2  attribution rules really set the firewall for that.  Here,

3  JPMorgan, as one of its affiliates that is an investment

4  advisor -- I think it's JPMorgan Management Advisors, Inc.

5  -- provides -- or some such title.  It's their investment

6  advisor company -- serves as investment advisor to many

7  mutual funds.  Now, the people who own the mutual-fund

8  interests have non-attributable interests.  Those interests

9  are not going to be attributable in Gannett to a piece of --

10  if I own a mutual fund, and I've got a piece of Gannett in a

11  mutual fund, I'm going to be a passive investor.  But the

12  investment advisor at the top, if they vote the stock, has

13  the ability to aggregate the voting power of numerous mutual

14  funds that combined voting power can, depending upon the way

15  things work, have the potential for influence on the

16  operating policies of a company.  Some investment advisors

17  more aggressive than others.  The Commission has been

18  importuned, most recently in -- as 1999, in a rulemaking

19  proceeding involving the multiple-ownership rules and the

20  attribution rules, the Commission has been importuned to

21  allow investment advisors to be subject to the higher

22  threshold.  It's refused to do that, precisely for the

23  reason that I'm explaining, which is they don't want

24  investment advisors to be able to aggregate the votes of

25  many mutual funds and have the ability to control or

1   influence the affairs of a broadcast licensee.  And so, if

2   you look at the 1999 order, you will see the Commission

3   discusses it.  It was a notice-and-comment rulemaking

4   proceeding.  They discuss whether investment advisors --

5   whether rules should be liberalized and investment advisors

6   should be subject to the 20-percent threshold.  They

7   concluded no because of the potential for influence or

8   control.  Here, what I did was a calculation where I looked

9   at the mutual funds that JPMorgan provides investment -- its

10  funds and the ones it provides investment advice to and

11  votes the stock of.  And what I concluded is that they -- in

12  my report, that they have a greater-than-5-percent interest

13  in Gannett.  This is significant, because Gannett is one of

14  the largest publishers and broadcasters in the country and

15  overlaps Tribune in a variety of markets.  So --

16  Q    Let's shift gears somewhat now and talk about waiver

17  -- Tribune's waiver applications.

18  A    Okay.

19  Q    And I'd like you to look, please, at question number

20  2, which is on page 1 of the demonstrative that you have.

21  Question number 2 asks will those interests -- that is the

22  attributable interests of JPMorgan and Angelo Gordon in

23  reorganized Tribune and the other media interests JPMorgan

24  and Angelo Gordon have -- will those interests of JPMorgan

25  and Angelo Gordon delay and/or adversely affect the FCC's

1  decision on Tribune's applications for waiver of the media-

2  ownership rules?  Do you see that question?

3  A      I do see that question.

4  Q      And do you have an opinion, in terms of the answer to

5  that question?

6  A      I do.

7  Q      And what is your opinion?

8  A      My opinion is that they will delay and adversely

9  affect Tribune's waiver requests at the Commission, and it's

10 because waiver requests are different than presenting mere

11 compliance with the attribution and multiple-ownership

12 rules.  Waiver requests allow one to look at the entire

13 field.  And you have to recall, Your Honor, that the issue

14 here for the Commission, in any merger or public-interest

15 finding on a waiver request, is everything is relevant.  All

16 right.  Any interest that shows a tendency to inhibit

17 competition or -- interfere with competition or create

18 greater consolidation or opportunity for influence and

19 control in markets, the Commission gets into a judgment

20 that, though not exactly the same as what the Department of

21 Justice would look at it in an anti-trust case, overlaps a

22 little bit with that.  The Justice gets to the pure

23 competition issue, and the Commission gets competition as it

24 affects the public interest and diversity of voices and

25 diversity of programming and outlet and source diversity for

1    competing media interests in a local market.

2    Q    Okay.  Now, let me ask you -- we'll get into just a

3    couple of the specifics concerning the waiver issues.  Would

4    you look, please, at slide number 9, which is entitled

5    "basis for opinions, question 2", and it relates to the

6    waiver applications?

7    A    Okay.

8    Q    And this --

9    A    I see it.

10    Q    This slide lists some additional media interests of

11    JPMorgan.  You see --

12    A    Correct.

13    Q    -- under "interest of JPMorgan", there's a listing

14    under the Journal Register.

15    A    Yes.

16    Q    And we also have -- we repeat the Angelo Gordon

17    interest in NextMedia, the Angelo Gordon interest in Freedom

18    Communications.  And JPMorgan also has an interest in

19    Freedom Communications, correct?

20    A    That's correct.

21    Q    Now, just to be clear, with respect to JPMorgan's

22    interest in the Journal Register, you're not expressing an

23    opinion that that interest of JPMorgan is an attributable

24    interest, correct?

25    A    No, that's true.

1    Q      And with respect to JPMorgan's interest in Freedom

2    Communications, you're not expressing an opinion that that

3    interest is an attributable interest, correct?

4    A      That's correct.

5    Q      And we're not, on the public record, going to get into

6    the exact nature of that interest, because that's in some of

7    the confidential exhibits.  With respect to Angelo Gordon's

8    interest in NextMedia, Angelo Gordon's interest in Freedom

9    Communications, you have already expressed the opinion that

10   those Angelo Gordon interests are attributable, correct?

11   A      That is correct.

12   Q      For purposes of my question now, regarding waivers,

13   I'd like you to assume, for the sake of argument, that the

14   Angelo Gordon interests in Freedom and in NextMedia are not

15   attributable interests, and assume, as you've said, that the

16   JPMorgan interests in Freedom and in the Journal Register

17   are not attributable interests.  If you assume those facts,

18   does that cause you, you any way, to change your opinion

19   that these various media-ownership interests will adversely

20   affect the waiver applications?

21   A      No, it does not.

22   Q      And can you explain why that is?

23   A      Sure.  When you're seeking a waiver from the

24   Commission, as I was mentioning before, one of the things

25   you're interested in doing is you're interested in making a

1  public interest showing that will cause the FCC to look with

2  favor upon your waiver request.  Here, Tribune, in its

3  application to the FCC, is saying: this is just a status-quo

4  play; we just want you all to give us the same waivers you

5  gave us in 2007, when Mr. Zell took over, so we want the

6  same waivers.  And it's a status-quo kind of situation.  The

7  thing that's adversely affecting, in the calculus, the

8  status quo here, is these additional interests add what I

9  would call additional regulatory hair on the deal.  They

10  make it different than status quo.  They add interests that

11  the Commission is going to have to consider.  And the way

12  the calculus plays out in the Hartford market, where -- the

13  Journal Register owns the New Haven Register, the -- that is

14  a market where, under the Commission's new rules adopted in

15  2007 and not yet applied, there would be a negative

16  presumption attaching to this waiver request.  And so, the

17  addition of this additional interest by JPMorgan in that

18  market creates more weight, if you will, in favor of the

19  negative presumption, which the staff has to get past, under

20  the recently adopted rules, to grant.

21  Q     Let's -- before you go on --

22  A     Sure.

23  Q     -- since you've mentioned the Hartford market, let me

24  ask you to take a look at Exhibit 25 in your binder, which

25  is part of the Tribune FCC application.  It's a request for

1   cross-ownership waiver, relating to the Hartford market, as

2   you can see on the first page.  And if you turn to the

3   second page of the excerpt, which is the table of contents,

4   you see, towards the bottom, in III(b), the heading in this

5   section of the Tribune's submission is "the Hartford market

6   is remarkably diverse and competitive".  And then, if you

7   turn to page 50 of the document, you see that heading again:

8   "the Hartford market is remarkably diverse and competitive".

9   And let me just pause.  Did -- you know that it's the

10  Hartford Courant, which is the Tribune paper in that market?

11  A     That's correct.

12  Q     And if you look at the bottom of the text, on page 50,

13  you see Tribune stating "the Courant faces strong

14  competition from the New Haven Register" and it continues

15  "other papers".  So do you have an opinion as to how the

16  Tribune assertion concerning strong competition from the New

17  Haven Register will be -- how the JPMorgan interest in the

18  Journal Register Company will impact the Tribune waiver

19  request, in light of these assertions by Tribune?

20  A     Yes, I do.

21  Q     And what's your opinion?

22  A     My opinion is that it adversely affects the waiver

23  request.  And if you'd like me to explain, I'll explain why

24  I think that's so.

25  Q     Briefly, if you would.

1  A      Yes.   I think, as I was saying before, Your Honor, it

2  adds some additional regulatory hair on the deal.   But the

3  other thing about it is, now that they've said to the

4  Commission that the Courant faces strong competition --

5  they've used the adjective "strong competition" to the

6  Commission, as a representation.   Now, they've got an

7  attributable stockholder who owns a significant stake in a

8  -- in this competing newspaper, the New Haven Register.   So

9  the question is -- and one of the concepts in

10  telecommunications law and regulation is, if you have this

11  interweaving web of interests, the Japanese have a phrase

12  called keiretsu.   You'd like to keep -- it's a little rift

13  on Don Corleone's line: "Keep your friends close and your

14  enemies closer."   If you can keep a competitor closer by a

15  kind of interlocking sort of relationship, maybe the

16  competition is not so strong.   Now, I'm not saying that's

17  necessarily true here.   I don't know what the facts are, but

18  structurally, if you just look at it from a structural

19  standpoint, which is one of the things the FCC does, they're

20  going to look and say, are the Courant and the Register

21  really going to be as strong of competitors when they have

22  someone who owns a fairly substantial equity stake now in

23  this competing paper?   Are they going to be looking to do

24  things?   I don't know the answer to these questions, but the

25  point is that the Commission's staff will be concerned about

1  it, as a structural matter.  And in a market where their new

2  rule says there's a negative presumption, the addition of

3  this sort of regulatory interest, when called to the

4  attention of the Commission, is going to create more

5  problems.

6  Q     Let me try to move along, shift gears, just a few more

7  questions.  Would you take a look, please, at question

8  number 3, which asks:

9  "If JPMorgan's and Angelo Gordon's interests in reorganized

10  Tribune, under the DCL plan, are restructured to comply with

11  the media-ownership rules, will that process delay the FCC

12  decision and approval that is necessary for Tribune's

13  emergence from bankruptcy?"

14  Do you have an opinion and answer to that question?

15  A     Yes.

16  Q     And what's your opinion?

17  A     Well, one of the answers that, as I understand the DCL

18  plan is, we're going to fix all of these problems if the FCC

19  makes us fix them.  And regardless of when that process of

20  fixing the problems begins, it will still delay the

21  decision.

22  Q     Okay.  And did you -- in forming your opinion, did you

23  look at the so-called remedial provisions in the DCL plan?

24  A     Yes.

25  Q     Let me just call your attention to DCL Exhibit 1441,

1  at page 50.  That's the DCL plan of reorganization.

2  A      What exhibit number is that?

3  Q      It's DCL 1441.  It's towards the middle of the

4  binder --

5  A      Yeah.

6  Q      -- just before tab A.

7  A      Okay.  And is there a place on page 50 you want me

8  to --

9  Q      If you look on page 50, you have this section

10  "directors and officers of reorganized Tribune that provides

11  for board of director designation rights for Angelo Gordon

12  and JPMorgan".  And there's a -- towards the bottom of the

13  page -- about one, two, three, four, five -- about six lines

14  up from the bottom, there's a "provided further that, in the

15  event a creditor proponents and the debtors reasonably

16  determine, based upon comments received from the FCC, that

17  the required approval of the FCC will not be obtained, due

18  to the designation rights afforded to such creditor

19  proponents in this section 5.3.2 (the designation rights),

20  then such creditor proponents shall, within 60 days of such

21  determination, take such action as is necessary or

22  appropriate to enable the debtors and the creditor

23  proponents to obtain such FCC approval".  Do you see that?

24  A      I do.

25  Q      So do you have an opinion as to how that kind of

1  remedial provision will impact the timing of the FCC process

2  and what actually happens in the FCC when remedial action of

3  this nature is attempted to be undertaken?

4  A    Sure.

5  Q    And what is that?

6  A    Well, I mean, this is what you do when you're dealing

7  with a very complex transaction.  You're going to have to be

8  able to try to fix problems.  And fixing problems takes

9  time.  Here, we see that there's a 60-day time period within

10  which some of these people with these other interests will

11  have to consider what they're going to do.  Are they going

12  to go -- are they going to solve the problem at one -- on --

13  in one market or the other?  For example, JPMorgan, if we're

14  talking about Journal Register, could try to figure out what

15  to do with its stake in Journal Register to solve that

16  problem.  But sometimes, the elimination of a stake in a

17  company, if it's not publicly traded -- I  mean, if it's an

18  equity stake that's non-voting and not publicly traded,

19  that's a different market.  It doesn't mean it can't be

20  traded to somebody.  These kinds of interests are traded.

21  They're not quite as simple as you and I calling our

22  stockbroker and say, sell 100 shares of this.  But all of

23  that takes time, whether it's at one end of the continuum or

24  the other.  Here, the process, itself, that the parties have

25  drafted, contemplates 60 days for folks like JPMorgan and

1   Angelo Gordon to decide how they wish to respond to this

2   problem.

3   Q     And then, the response gets submitted to the FCC, and

4   then what happens?

5   A     Well, what happens first is, first they have to talk

6   to the FCC about it, and they're going to lobby the FCC and

7   say, you know, we really don't see this as a problem.  Our

8   guys are going to be passive investors.  And if the

9   Commission pushes back, as I say they will, then they're

10  going to have to figure out how to restructure their

11  proposals in a way to satisfy the Commission and its staff.

12  And that process -- the process of lobbying the Commission,

13  itself, can take some time.  I mean, as my experience has

14  been, every time we've got a bunch of lawyers in a room,

15  taking a deposition, once somebody takes a break, it's

16  sometimes hard to get everybody back all at the same time.

17  The same thing would be true as -- just as a logistical

18  matter, in trying to get the approval of everybody you've

19  got to get to go have the conversation.  Those are things

20  that are -- you know, they're minor, but they have an

21  impact.  Their cumulative effect is to delay matters.  It's

22  simpler if someone just says, call your broker and sell 100

23  shares of X.  That would be a much quicker, flatter way to

24  solve a problem.  Here, the parties, obviously, have

25  decided, we need to have a structure for this, and we need

1  to have some time period.  They say it starts after that

2  first meeting at the Commission.  If the Commission pushes

3  back and doesn't accept what they want to do, then they've

4  got 60 days to figure it out.  Then, they're going to go

5  back to the Commission again, and hopefully, find a way to

6  solve the problem for the -- at the Commission.

7  Q     Let's try to wrap this up, Mr. Prak.  I'm going to ask

8  you, please, to look at question number 4 on the first page

9  of the demonstrative.  Question number 4 asks:

10  "Whatever the FCC ultimately decides regarding the issues

11  presented by Tribune's application, will the facts

12  concerning JPMorgan's and Angelo Gordon's media interests

13  have an effect on the timing of the FCC decision?"

14  A     Yes.

15  Q     You have an opinion?

16  A     I do.  I have an opinion.

17  Q     And what is your opinion?

18  A     My opinion is that those media interests will have an

19  effect on the timing of the FCC decision.

20  Q     And what's the effect that, in your opinion, will

21  occur, and what's the basis for your opinion?

22  A     Well, the basis of my opinion is my experience in

23  dealing with the FCC over 30 years and transactions in

24  getting matters approved at the Commission.  When there's a

25  petition to deny, as there are in this case, there are going

1  to be delays while the staff analyzes whatever arguments are

2  made by the parties and prepares and order.  And if it's --

3  as in this case, it's going to be decided by the Commission,

4  you have more than just the staff to convince.  You've got

5  to get it signed-off on by the five Commissioners.  So you

6  know, there will be -- there's time involved.  It's a delay

7  that results merely from the contentiousness of it.  When

8  you also get, factored into the mix, these interests of

9  JPMorgan's and Angelo Gordon's, some of which have not been

10 disclosed to the Commission, it's my understanding, then

11 there's going to be time, while the staff gets its arms

12 around these issues, and decides what the resolution to

13 recommend is and how to deal with it and then to deal with

14 the folks from Tribune as to how to work out the issues.

15 So, in any event, the mere fact that we have these interests

16 and that they're pending, as we sit here today, is going to

17 affect the timing of the FCC's approval.

18        MR. FRIEDMAN:  Thank you.  I have no further

19 questions.  Mr. Senter has just a few questions.  Thank you,

20 Your Honor.

21 MR. SENTER:  Your Honor, Meredith Senter from Lerman Senter

22 in Washington D.C., representing Aurelius.

23 BY MR. SENTER:

24 Q    Mr. Prak, Mr. Friedman has asked you questions about

25 JPMorgan and Angelo Gordon's other media interests.  I'd

1  like -- now like to turn your attention to another one of

2  the creditor proponents, Oaktree Capital.  Do you have an

3  opinion whether Oaktree Capital will have an attributable

4  interest in reorganized Tribune?

5  A     I do.

6  Q     And what is the basis for your opinion?

7  A     The basis for my opinion is that Oaktree has a

8  substantial equity stake in Liberman Broadcasting and also

9  has designated a member of the board of directors of

10 Liberman Broadcasting.

11 Q     I'm sorry.  My question may not have been clear.  I'm

12 asking, does -- will Oaktree Capital have an attributable

13 interest in --

14 A     Oh.

15 Q     -- reorganized Tribune?

16 A     Yes, as with JPMorgan and Angelo Gordon, Oaktree is

17 going to have 5 percent -- more than 5 percent of Tribune

18 and the ability to designate directors.

19 Q     Okay.  To your knowledge, does Oaktree Capital have

20 other media interests?

21 A     It does.

22        MR. SENTER:  And what are those other media

23 interests that are relevant to your opinion?  And to speed

24 things along, I can direct your attention to a slide

25 numbered -- I don't have a hard copy, Your Honor.  I just --

1  it doesn't have a number.  Does the Judge have a copy of

2  these two slides?  It's on the screen, Your Honor.  Would

3  you like a hard copy?

4           THE COURT:  Well, I'll tell you in a moment.

5           MR. SENTER:  Okay.

6           THE COURT:  No, thank you.

7           MR. SENTER:  Okay.  Your Honor, I just learned,

8  it's actually the next-to-the-last page of the document that

9  you have.

10  BY MR. SENTER:

11  Q    And directing your attention to the column on the far

12  right-hand side, Mr. Prak, now this is -- this slide is

13  similar to a slide that Mr. Friedman showed you, except that

14  another column has been added to the right-hand side for

15  Oaktree.

16  A    Yes, I see that.

17  Q    Okay.  So just confining your answer to Oaktree

18  Capital's other media interests that are relevant to this

19  case, what are those interests?

20  A    They have an equity stake of something like 25 percent

21  in Liberman Broadcasting and also the right to appoint a

22  director, and they have exercised that right.

23  Q    Does Oaktree have an attributable interest in Liberman

24  Broadcasting?

25  A    They do.  I mean, they designated Bruce Karsh as their

1  director, and Oaktree's got the equity interest I mentioned.

2  Liberman owns seven Los Angeles radio stations and a

3  television station, as the slide indicates.

4  Q     Would the combination of Oaktree's interest in

5  Liberman -- attributable interest in Liberman Broadcasting

6  and its attributable interest in Tribune violation the FCC's

7  rules?

8  A     Yes, it will violate the newspaper-broadcast-cross-

9  ownership rule.

10 Q     In which market?

11 A     In Los Angeles.

12 Q     Let's assume that -- well, you've seen Oaktree's media

13 ownership certification that it submitted to Tribune, and in

14 that media ownership certification, Oaktree has committed to

15 relinquish its board-designation right and eliminate its

16 attributable interest in Liberman Broadcasting, is that

17 correct?

18 A     That is correct.  That's my understanding.

19 Q     Let's assume that Oaktree fulfills this commitment, it

20 eliminates its interest in Liberman Broadcasting.  Do you

21 have an opinion whether Oaktree's retention of a non-

22 attributable interest in Liberman Broadcasting will affect

23 the FCC's approval of the waiver that Tribune is requesting

24 in Los Angeles?  And if I could direct your attention to the

25 last slide.

1  A     Yes.

2  Q     And the last slide is the same slide that Mr. Friedman

3  discussed with you about the waiver request, except that a

4  column has been added to the right-hand side to show

5  Liberman -- excuse me, Oaktree's other media interests.

6            THE COURT:  Although I do not have the hard

7  copies of those slides.

8            MR. SENTER:  Oh.

9            THE COURT:  You can give them to me --

10           UNKNOWN:  Here you go.

11           THE COURT:  -- at the conclusion of the

12  testimony.  They're on the screen, so I don't need them now,

13  but if you want me to have them for later consideration --

14           MR. SENTER:  We'll do that, Your Honor.

15           THE COURT:  Okay.

16           THE WITNESS:  Yes, I do see that, and I do have

17  an opinion.

18  BY MR. SENTER:

19  Q     What is your opinion?

20  A     My opinion is that even if -- and I -- as I understood

21  your question, it was even if Oaktree took the steps to

22  eliminate their board-designation right, and Mr. Karsh were

23  to resign, having been appointed by Liberman, that the

24  equity stake held by Liberman, the 25-percent equity stake

25  in Liberman held by Oaktree, would still adversely affect

1  the waiver request in Los Angeles, because you have to look

2  at all of the interests that will be before the Commission.

3  And the Commission is going to have the fact that The Times

4  is owned by Tribune, the fact that KTLA is owned by Tribune,

5  the fact that the Orange County Register is attributable to

6  JPMorgan and Angelo Gordon, or if you take away the

7  attribution, the fact that they have, together, very

8  substantial equity stakes in Freedom is going to be there,

9  which is the second-largest newspaper.  Then, you throw

10 another television station and seven radio stations into

11 that mix, the addition of all that regulatory hair on the

12 waiver request will change the calculus in Los Angeles.

13 Now, Los Angeles is a market where, under the 2007 rule,

14 Your Honor, the Commission would presumptively waive the

15 rule in favor of the reorganized Tribune, all things being

16 equal.  Now, what I'm saying is the addition of this

17 additional regulatory -- these additional regulatory

18 interests, including the interest of Oaktree in Liberman,

19 will have a dilutive effect on the regulatory presumption,

20 because the -- one of the steps in the presumptions is, is

21 there only one television station in the market?  And now,

22 there are two.  Is there only one newspaper involved?  And

23 now, there are two.  So, the difficulty for the Commission

24 will be to determine whether they want to waive their rules

25 in order to accommodate all of this additional -- these

1  additional interests.  And my view, based on my experience

2  is, that's going to be a tough sell.  I don't see that

3  happening.  I see the Commission saying to them, we're not

4  going to waive the rule on these facts.  You're going to

5  need to address this and resolve it.  And all of that, while

6  possible, is going to take time, complicate, and delay the

7  transaction at the Commission.

8           MR. SENTER:  Thank you.  I have no other

9  questions.

10          THE COURT:  Okay.  We'll take a 10-minute recess

11 and then undertake cross-examination.

12 (Recess at 11:30 a.m. to 11:41 a.m.)

13          THE COURT:  All right.  Cross examination.

14          MR. FLAGG:  Thank you, Your Honor.  Ron Flagg for

15 the Debtors.  May I approach the bench and the witness to

16 provide binders?

17          THE COURT:  You may.

18          MR. FLAGG:  Thank you.  Thank you.

19                    CROSS EXAMINATION

20 BY MR. FLAGG:

21 Q    Good morning, Mr. Prak.

22 A    Good morning, Ron.

23 Q    Now I'd like to ask you some questions about really

24 the two sets of interests you addressed in your expert

25 testimony.  One of those sets of interest is the interest

1   that the Lender Co-Proponents would have in the Tribune if

2   the DCL Plan were approved, right?

3   A      That's correct.

4   Q      And the second set of interests, speaking generally,

5   is the interest that the Lender Co-Proponents currently have

6   in a variety of media interests around the country, correct?

7   A      That's correct.

8   Q      And you spent the bulk of your testimony this morning

9   talking about those -- the latter set of interests.  For

10  example, in your demonstrative exhibit, Page 6, that exhibit

11  reflects the other ownership interests of JPMorgan and

12  Angelo Gordon, correct?

13  A      I'm just getting to Page 6.  Yes.  The demonstrative

14  exhibit reflects the interests of JPMorgan and Angelo Gordon

15  that we believe are relevant.  That's right.

16  Q      And you had a similar exhibit, which I won't bother to

17  show, that added Oaktree, right?

18  A      That's correct.

19  Q      And those interests around the country exist today

20  under either of the two competing plans, right?

21  A      The interests of JPMorgan, Angelo Gordon, and Oaktree

22  in other media interests, absolutely.  Yes, they do.

23  Q      And your expert testimony does not address the FCC

24  issues and the delays or any other thing else that would

25  arise under the Noteholders Proposed Plan of Reorganization,

1 | correct?

2 | A     I have not opined about the Noteholder Plan.  That's

3 | correct.

4 | Q     And so if there are FCC issues associated with the

5 | Noteholders Plan, you're not opining on them.

6 | A     Well, no.  I have actually now subsequent to my

7 | deposition, been asked to look at the Noteholder Plan and so

8 | I'm not going to opine about them unless you ask me, but if

9 | you want to ask me I'll tell you.

10 | Q     No.  When you --

11 | (Laughter)

12 | Q     Let's make the record very clear on this.  Your

13 | original expert report did not address the Noteholders Plan,

14 | correct?

15 | A     That's right.  That's true and I was not engaged to

16 | address the Noteholders Plan.

17 | Q     And when you were deposed five days after the

18 | Noteholders amended their Plan, you had not been engaged to

19 | address the Noteholders Plan, correct?

20 | A     I hadn't seen the Noteholders Plan at that point.

21 | Q     Okay.  And you had not been engaged to address it?

22 | A     That's correct.

23 | Q     And as a result you did not address it in your

24 | testimony this morning.

25 | A     That's correct.

1  Q    And you've had the opportunity to review the expert

2  report of Mr. Rosenstein, Mace Rosenstein?

3  A    I have.

4  Q    And it's fair to say that Mr. Rosenstein takes

5  interest -- takes issue with your analysis of the various

6  interests that Angelo Gordon, JPMorgan, and Oaktree have in

7  these various other markets, correct?

8  A    I agree.

9  Q    And we'll be hearing from Mr. Rosenstein in April on

10  that.  Now I'd like to ask you some questions about the

11  first set of interests, that is the interests of the Lenders

12  at the Tribune level, okay?

13  A    Yes.

14  Q    And if we go to Page 4 of your demonstrative exhibit,

15  you address those interests and you highlight the greater

16  than 5 percent voting equity of those Lenders in reorganized

17  Tribune, correct?

18  A    That's true.

19  Q    And their right to designate directors in reorganized

20  Tribune, correct?

21  A    Um-hum.  That's correct.

22  Q    And under the FCC rules those are attributable

23  interests, correct?

24  A    They are.

25  Q    But isn't it in fact the case that the DCL Plan

1  provides that the stock holdings and board designation

2  rights of the Lenders may be modified to ensure compliance

3  with the FCC rules?

4  A    That's my understanding.

5  Q    And that's part of the structure of the DCL Plan?

6  A    That is what the DCL Plan proposes.

7  Q    So when you say that the structure of the DCL Plan

8  violates the FCC rules, that's not quite right.

9  A    I didn't say the structure of the DCL Plan violates

10 the rules.  The facts as presented presently violate the

11 rules.

12 Q    But the DCL Plan includes provisions that would permit

13 modification of the ownership structure to accommodate the

14 FCC rules, correct?

15 A    It does, but my view would be that the DCL Plan right

16 now is loaded up with all of the interests that you've

17 described and among the things I was asked to opine about

18 are whether those things would take time and complicate both

19 the ownership questions and the waiver questions.

20 Q    All right.  Well, let's just -- so we're all on the

21 same wavelength, just quickly go through the DCL Plan.  Take

22 a look at Tab 1 in your binder, DCL Exhibit 1102 and let's

23 take a look at a provision you've already seen this morning

24 at Page 54 of this exhibit, which is Section 5.4.2(d).

25 A    Yes, I see that.

1    Q      And --

2    A      This is in your binder rather than mine -- rather than

3    the Aurelius --

4    Q      Right.  Same document, just different binder.  And

5    that provision allows the Debtors to issue a sufficient

6    amount of Class B stock to any claim holder otherwise

7    eligible to receive 5 percent or more of the equity of

8    Tribune if the holder has other media interests that could

9    impair the ability of reorganized Tribune to comply with the

10   Communication Act or the FCC rules, right?

11   A      That's correct.

12   Q      And it would be your understanding that this provision

13   has been designed to be non-attributable under the FCC

14   rules, right?

15   A      It's designed to ensure that Tribune complies with the

16   FCC's rules by dealing with attributable ownership interests

17   that may present conflicts.  I think that's true.

18   Q      And I know you're not expressing an opinion about the

19   Noteholders Plan, but are you aware that the same procedure

20   is incorporated in the Noteholders Plan to deal with this

21   same sort of issue?

22   A      I would imagine that they would be because everybody -

23   - anyone who is going to be running reorganized Tribune is

24   going to have to ensure that they comply with the FCC's

25   rules.

1  Q      Exactly.  And indeed you testified at your deposition,

2  didn't you, that this sort of provision that you just looked

3  at at Section 5.4.2(d), to deal with potential FCC issues is

4  often used by parties?

5  A      Very often.  I mean it's common in the sense that if

6  you represent the licensee, you want to be able to

7  demonstrate to the Commission you're going to comply with

8  the Commission's rules.

9  Q      And let's likewise take a look at Section 5.3.2 of the

10 Debtor/Committee/Lender Plan, which is at Pages 50 and 51.

11 And we just looked at this a few minutes ago with your

12 Counsel and I just want to make sure the record is clear

13 under this -- on this.  Under this section of the DCL Plan,

14 the Lender Co-Proponents also hold rights to designate

15 members to the board of directors of reorganized Tribune,

16 correct?

17 A      That is correct.

18 Q      And I take it those rights standing alone could

19 separately constitute an attributable interest in the

20 Tribune under various cases implementing the FCC's rules.

21 A      That's correct.

22 Q      And Section 5.3.2 of the Debtor/Committee/Lender Plan

23 provides for the surrender of the board designation rights

24 or the restructuring of any other potentially conflicting

25 attributable interests in the event of an FCC hurdle,

1  correct?

2  A     That's correct.

3  Q     And again, you testified at your deposition that this

4  sort of provision to deal with a potential FCC issue is

5  often used by parties.

6  A     That's correct.

7  Q     So, and at your deposition, you agreed that these

8  provisions we just looked at in Section 5.4.2 and Section

9  5.3.2 would permit the Commission to approve the pending

10 applications, correct?

11 A     No.  These provisions won't permit the Commission to

12 approve the pending application.  The taking of the actions

13 required by the provisions, if it was felt by the Commission

14 that there were in fact attributable interests as I've

15 outlined in my testimony, would require these to be

16 implemented and the application amended to do whatever was

17 necessary to satisfy the Commission.

18 Q     And then the Commission would approve it.

19 A     The Commission would not just then approve it.  Then

20 we would move on to the question of waivers.  Right now

21 we're discussing multiple ownership rules.

22 Q     Well, you made it clear in your deposition, did you

23 not, that it was not your opinion that this transaction

24 wouldn't close?

25 A     All transactions can close if the parties are willing

1  to do what the Commission may require to close the

2  transaction.   Whether JPMorgan, Angelo Gordon, and Oaktree

3  would do what the Commission may require is not something I

4  can answer.

5  Q    And you can't answer it under the Noteholders Plan,

6  which you haven't addressed or the DCL Plan, right?

7  A    No, it'd be speculative.   I mean you -- those are

8  business prerogatives of those entities.   They would have to

9  decide whether -- if the Commission said X, they've got to

10 decide whether they're willing to do X.

11 Q    So --

12 A    But if they don't do X, the deal is not going to

13 close.   These provisions are certainly one step in that

14 conversation with the Commission in an effort to demonstrate

15 compliance -- an intent to comply with the Commission's

16 rules.

17 Q    So the real crux of your expert testimony isn't that

18 the DCL Plan is not feasible, but that there could be some

19 additional delay while the Commission considers various

20 media interests of the Lender Co-Proponents, correct?

21 A    No.   I don't have any -- there's no way I can say --

22 if you want to use the word feasible, the way I use the word

23 feasible may not be a judgment committed to the Bankruptcy

24 Court.   I wouldn't opine as to feasibility because I don't

25 know what you mean by feasibility.   But if you mean by

1  feasibility is it possible for the Plan to be approved by

2  the Commission if whatever the Commission wants complied

3  with under these strictures here are complied with?  Sure.

4  Q     And so the crux of your opinion beyond that goes to

5  the delay that would be associated with those various

6  remedial steps, right?

7  A     Well, the remedial steps that would have to be taken

8  in my judgment to cause this -- the Plan, the DCL Plan as it

9  sits now, to come into compliance are going to delay this

10 transaction at the FCC.

11 Q     And again, you haven't expressed an opinion about what

12 would need to be done vis-à-vis the Noteholders.

13 A     If anything.  I've expressed no opinion.  I don't know

14 -- they may not need to do a thing, they may need to do

15 something.  I couldn't tell you that.

16 Q     Right.  And we -- but you've already testified that

17 the JPMorgan, Angelo Gordon, and Oaktree interests around

18 the country in varied media interests exist under either

19 plan, right?

20 A     Those entities hold those interests.

21 Q     Right.  And in fact you've not only talked about

22 delay, but in your testimony, in your demonstrative and in

23 your expert report, you've actually put a number on it.

24 You've said that you opine that these various interests

25 would delay the FCC approval of the transaction by six

1  months, right?

2  A      Six to eight months.

3  Q      Six to eight months.  And do you recall, sir, when I

4  asked -- and you testified today that you've had 31 years of

5  experience working under the multiple ownership rules?

6  A      Sure.

7  Q      And when I asked you at your deposition if you could

8  identify a single case which had been delayed by six months

9  as a result of the FCC's consideration of the multiple

10  ownership rules, you were not able to identify a single case

11  at your deposition.

12  A      I didn't identify a single case at my deposition.

13  I've gone back and looked.  If you want me to pull out a

14  file I can give you about 20.

15  Q      Okay.  Well, let's take a look at Prak 3, which is

16  what you said at your deposition.

17  (Playback, 11:55 to 11:55, of Video Deposition of MARK PRAK)

18        Q      Can you name a case in which there was a six-

19        month delay as a result of the multiple and cross-

20        ownership rules?

21        A      You mean a petition filed under the multiple --

22        Q      Yes.

23        A      No.  Off the top of my head I wouldn't tell you I

24        could name a case.  I probably could go back and look

25        at all the cases and see if there are petitions and

1          I'll bet you if we did the math we'd find out that

2          that's about how long the time is.

3          Q    But as we sit here today you can't identify a --

4          A    I'm not going to name you a case.  I can tell you

5          based on my experience that anytime I've had a

6          transaction at the Commission in which there was a

7          petition to deny filed, frivolous or otherwise, that it

8          adds about six months to the time calculus.

9    BY MR. FLAGG:

10   Q    I'd like to follow-up on something you said in that

11   last comment.  So even if a petition to deny was frivolous,

12   it would take the Commission some amount of time to deal

13   with it, right?

14   A    That's been my experience.

15   Q    Right.

16   A    I wouldn't change a thing that was on that deposition

17   clip you just showed.

18   Q    Neither would I.  And in thinking about the issue of

19   the potential delay of the FCC's consideration of the DCL

20   Plan, did you review the FCC's docket entries for the

21   Tribune application?

22   A    I haven't reviewed the docket entries.

23   Q    Well, let -- but you've seen FCC docket entries in

24   other cases, right?

25   A    I've seen docket entries of the FCC.  Sure.

1    Q     Okay.  Well, let's take a look at the docket entries

2    in the Tribune application, since that's what's pending in

3    this case.  Take a look behind Tab 4, DCL Exhibit 1496.  And

4    I'll represent to you that this -- these are the docket

5    entries that were pulled off the FCC website just a few days

6    ago.  Do you have any reason to doubt that?

7    A     I don't have any reason to doubt it.  If you say that,

8    I'll accept that.

9    Q     Thank you.

10   A     I'll assume that.

11   Q     Okay.  And this document reflects that the Tribune's

12   FCC application was filed almost 11 months ago on April 28,

13   2010, right?

14   A     It does.

15   Q     And this document also reflects that various documents

16   have been filed with the FCC in connection with the

17   Tribune's application, right?

18   A     That's true.

19   Q     And among those filings are notices of so-called ex-

20   party meetings between the various parties and protestants

21   and the FCC staff, right?

22   A     That's correct.

23   Q     And based on the docket if you look at the first page,

24   Counsel for the Tribune has communicated with the FCC staff

25   on several occasions, correct?

1   A    That's true.

2   Q    And the docket indicates that Counsel for JPMorgan

3   communicated with the FCC staff on December 22, 2010, right?

4   A    I beg your pardon?

5   Q    If you take a look -- I actually misspoke.  It

6   indicates that Counsel for JPMorgan communicated with the

7   FCC staff on December 21, 2010, right?

8   A    It did.  It indicates that an attorney named Martha

9   Heller from Wiley Rein communicated with the staff.

10  Q    And based on your experience and your review of this

11  docket, would it be your opinion that the staff has already

12  been working on the Tribune's FCC applications?

13  A    Oh, I suspect the staff has done some work on the

14  applications that have been filed.  Sure.

15  Q    And you really can't say with any certainty how much

16  additional time the FCC staff and commissioners would take

17  to consider the DCL Plan if it were confirmed, can you?

18  A    Oh, no.  That's not true.

19  Q    You can say with certainty how much additional time

20  they would take?

21  A    No.  I can tell you -- I can't say with certainty, but

22  I can tell you what we're driving at here.  I mean I can

23  tell you why -- where my six to eight months comes in and

24  you haven't gotten there yet.

25  Q    Well, let's get there.  Let's get to the basis for

1    your delay opinion.  Let's take a look at your demonstrative

2    Page 12.  Now you worked with your Counsel to prepare that

3    demonstrative, right?

4    A     Sure did, my direction.

5    Q     Okay.  And I notice it says six months, but at some

6    point -- at least six months, but you've now said six to

7    eight months, right?

8    A     My report says six to eight months in its conclusion.

9    That's correct.

10   Q     Okay.  And at the bottom you identify the factors that

11   underlie this opinion, right?

12   A     Those are some of the factors.  That's true.

13   Q     But I take it these were the principal factors that

14   you identified when you --

15   A     That's right.

16   Q     Okay.  So --

17   A     That's correct.

18   Q     -- let's go through these principal factors.

19   A     Okay.

20   Q     The first one is the pending litigation concerning the

21   newspaper broadcast co-ownership rule, right?

22   A     That's correct.

23   Q     And that litigation has been pending for oh, about

24   eight years?

25   A     A goodly amount of time.  The oral arguments were held

1 | in Philadelphia last month.

2 | Q      But there have been multiple arguments in the Court of

3 | Appeals during that eight-year period, right?

4 | A      Oh, that's true.  Various Courts of Appeal.  Not just

5 | one.

6 | Q      Right.  And it's not as if the FCC proceedings have --

7 | with respect to applications for ownership change or waivers

8 | associated with those sorts of applications have ground to a

9 | halt during the eight-year pendency of this litigation.

10 | A      Well, I don't know that -- you've conflated a few

11 | things.  I mean applications for assignment of licenses and

12 | transfers of control haven't ground to a halt, but this is

13 | the first time -- I mean to put this in context for you,

14 | this is the first time since 2007 that we've had a

15 | transaction of this magnitude with the number of multiple

16 | requests for waiver of the multiple ownership rules,

17 | including the newspaper broadcast cross-ownership rule

18 | that's been before the Commission while there's been a Court

19 | case pending that could impact that.

20 | Q      Do you have an opinion as to when the Third Circuit is

21 | going to rule?

22 | A      No, I don't have an opinion as to when they'll rule,

23 | but I will tell you that if the folks at the FCC are

24 | attempting to evaluate how to respond to the waiver requests

25 | contained in the Tribune application, that that will be a

1  factor in the calculus.

2  Q     Isn't it a fact that if the Noteholders Plan was to be

3  approved, that those waiver requests would either have to be

4  refiled or advanced under the Noteholders Plan?

5  A     I would assume that they would have to be.  I think

6  this is one that's constant.

7  Q     Okay.  Second one you -- the second factor that you

8  cite on this document is the likelihood that there will be

9  further objections to the Tribune application by third

10  parties, right?

11  A     That's correct.

12  Q     Now let's just unpack that for a second.  The Tribune

13  application was -- has been pending for about 11 months,

14  right, the FCC application?

15  A     That's true.

16  Q     And during that time, three petitions to deny,

17  including one from Wilmington Trust, which is one of the

18  Noteholders, have been filed, correct?

19  A     That's correct.

20  Q     And none of those objections have identified the

21  various interests that you've been talking about this

22  morning, correct?

23  A     If you mean by various interests you mean the

24  interests of JPMorgan, Angelo Gordon, and Tribune, I think

25  that's correct.

1   Q     Okay.  But your --

2   A      If they weren't disclosed in the application, I mean

3   what was disclosed in the application has been objected to

4   by the public interest petitioners, Angela Campbell and her

5   folks, have been objecting to the multiple ownership rule

6   waivers being regranted, if you will.  And they haven't made

7   much of those arguments I assume because they're not aware

8   of the facts.

9   Q     But your opinion is now that you've identified these

10  issues publicly, that protestors will pick up on those

11  issues and file new petitions to deny, right?

12  A      What I think is likely is this, not that I've

13  identified the issues publicly, but the fact that these

14  interests are publicly known, if known by the people who

15  filed the petitions to deny, they will file again because

16  they add further ammunition to their argument that the

17  waivers should not be granted, either in Hartford or in Los

18  Angeles or wherever else Tribune is seeking the waivers, you

19  know the seven waivers in the six markets.

20  Q     And those petitions, even if they were frivolous,

21  would add delay to the consideration of the applications,

22  right?

23  A      Oh, I think they would.  Yes.

24  Q     And then the third factor you cite on Page 12 of your

25  demonstrative exhibit is the change in the cross-ownership

1  status quo resulting from the DCL Plan, right?

2  A     That's right.

3  Q     And again, the cross-ownership status quo would change

4  no matter which of these -- if either of these two plans

5  were approved, correct?

6  A     No.  I don't agree with that.

7  Q     Well, isn't it --

8  A     I mean now you're wanting me to do a comparison.

9  Q     No, no.  All I'm asking you --

10 A     I mean --

11 Q     No.  I'm not asking you to do a comparison at all.

12 Isn't it a fact that Angelo Gordon, JPMorgan, and Oaktree

13 would have ownership interests of some sort --

14 A     That's right.

15 Q     -- in the Tribune under the Noteholder Plan or do you

16 know?

17 A     Well, the -- my understanding is that under the DCL

18 Plan, the interests of JPMorgan, Angelo Gordon, and Oaktree

19 are going to be attributable.  If they're attributable and

20 you have these other ownership interests, you're going to

21 have exactly what I've described and it doesn't matter

22 whether the interests of Angelo Gordon and JPMorgan and

23 Oaktree are themselves attributable in these other entities.

24 You're going to have a change in the cross-ownership status

25 quo.  That's what I testified to --

1  Q      Okay.

2  A      -- previously, so --

3  Q      But again just when you say they're attributable at

4  the Tribune level, that is before -- you have -- just to

5  make the record clear, you have agreed that under the DCL

6  Plan there are provisions to make those interests non-

7  attributable if necessary, correct?

8  A      That -- yes, we've been through that.

9  Q      Right.  Okay.  Just one last line of questions.  Take

10  a look at DCL Exhibit 1497, behind Tab 5 in your binder.

11  And this is the -- this exhibit is the declaration of Mr.

12  Senter in support of a motion by the Noteholders, correct?

13  A      Yes.

14  Q      And this exhibit indicates that Mr. Senter's

15  declaration was filed just a couple of weeks ago on March 1,

16  right?

17  A      That's true.

18  Q      And we all know because of his five minutes of glory

19  here this morning that Mr. Senter is the Counsel to the

20  Noteholder Plan Proponents with respect to the FCC issues in

21  this case, correct?

22  A      I believe that's true.

23  Q      Well, in fact he retained you, right?

24  A      He did.

25  Q      And if you take a look at Page 5, Paragraph 8 on Page

1    5, could you just read into the record Paragraph 8?

2    A      Based on the current confirmation schedule, the need

3    to amend the pending FCC applications after a plan is

4    confirmed, the opposition to the Debtors' request for

5    waivers of the FCC's ownership rules, and the pendency of

6    litigation in the Third Circuit on the very rules that the

7    FCC must apply in ruling on the waiver requests, it's highly

8    possible that the FCC will not have granted the requisite

9    approvals necessary for either of the competing plans to go

10   into effect -- to go effective prior to June 4, 2011.

11   Q      And sir, do you have any basis to dispute Mr. Senter's

12   sworn statement that it is highly possible that the FCC will

13   not have granted the requisite approvals necessary for

14   either of the competing plans to go effective prior to June

15   4, 2011?

16   A      No.  I think that's true.

17              MR. FLAGG:  Thank you.  I have no further

18   questions, Your Honor.

19              THE COURT:  Any other cross examination?

20   Redirect?

21              MR. FRIEDMAN:  Thank you, Your Honor.

22                        REDIRECT EXAMINATION

23   BY MR. FRIEDMAN:

24   Q      When you were testifying today, Mr. Prak, you gave a

25   lot of testimony concerning the interests of JPMorgan and

1  Angelo Gordon under the DCL Plan, correct?

2  A     Correct.

3  Q     And you testified that under the DCL Plan, the

4  interests of JPMorgan and Angelo Gordon, as that Plan is

5  currently structured, would be attributable, correct?

6  A     That is correct.

7  Q     Have you seen anything at any time indicating that

8  under the DCL Plan as currently structured, the interests of

9  JPMorgan and Angelo Gordon would not be attributable?

10  A     No.

11  Q     Okay.  Now I'm going to call your attention to

12  Noteholder Plan Proponent Exhibit 2224 and I didn't know

13  this was coming up.  Nobody has a hard copy.  We're pulling

14  it up on the screen.  This is a declaration of Dan Gropper

15  in support of confirmation of the Noteholder Plan.  And I'm

16  going to direct your attention to Pages 22 and 23 of this

17  exhibit and I just want to read something and then I'm going

18  to ask you a question.  At the bottom of Page 22, the

19  sentence that begins in the next to the last line, that's

20  where I'll start reading, as the Noteholder Plan Proponents

21  have indicated in their objections to the DCL Plan, the

22  Noteholder Plan Proponents currently intend to exercise

23  their discretion under 5.4.2(b) of the Noteholder Plan to

24  limit the amount of new Class A common stock allocated to

25  JPMorgan, Angelo Gordon, and Oaktree to less than five

1  percent each in order to ensure compliance with the

2  Communications Act and the FCC rules and avoid substantial

3  delay in obtaining FCC approval as defined in the Noteholder

4  Plan.  Thus under the Noteholder Plan, only the distribution

5  trustee, the members of the distribution trust advisory

6  board, and the officers and directors of reorganized Tribune

7  would have attributable interests in reorganized Tribune

8  under the FCC rules.  Do you see that?

9  A    I do see it.

10 Q    Do you understand that the Noteholders are explaining

11 that they are taking action so that from the outset,

12 JPMorgan and Angelo Gordon would not have attributable

13 interests in reorganized Tribune under the Noteholder Plan?

14              MR. FLAGG:  Your Honor, I would object.  When I

15 asked this very same line of questions at Mr. Prak's

16 deposition, at Page 162 of his deposition, Mr. Friedman

17 objected and he said I object to the question.  The witness

18 has said he hasn't been engaged to opine with respect to

19 what's in the Noteholder Plan.  And I wanted to make sure

20 that we wouldn't get this line of questions at this hearing,

21 so I went on to ask him the question again and I asked him

22 on Page 170 were you engaged to offer an opinion as to

23 whether or not there would be FCC issues associated with the

24 Noteholder Plan?  No.  I wasn't able to answer -- ask any

25 questions at that time.

1          THE COURT:  Mr. Friedman?

2          MR. FRIEDMAN:  Your Honor, a couple of things.

3  One, this is redirect with respect to an area of questioning

4  that Mr. Flagg opened up.

5          THE COURT:  Well, I'll acknowledge -- again, the

6  door was opened a crack, but the witness said I wasn't

7  engaged to compare the plans and until after my deposition I

8  didn't.  And so if I remember correctly, he wasn't asked

9  questions about comparing directly the two plans.  I

10  interrupted you.

11          MR. FRIEDMAN:  Okay.  And the second thing is

12  that what these exhibits show is that as a matter of fact,

13  based on the evidence in the record, there are certain

14  aspects of the Noteholder Plan that are part of the record.

15  This witness has not previously opined about them, but

16  following up on Mr. Flagg's questions, I'm now putting these

17  factual matters in front of the witness and I'm asking him

18  whether these matters, which Mr. Flagg did not call to his

19  attention, would have a bearing on his analysis.

20          THE COURT:  I'll entertain a motion to strike.

21          MR. FLAGG:  Thank you, Your Honor.

22          THE COURT:  Granted.

23          MR. FLAGG:  I so move.

24          THE COURT:  Granted.

25          MR. FRIEDMAN:  Your Honor, I have a similar

1  exhibit that I would like to read to the witness from,

2  relating to the determination by Aurelius with respect to

3  director designation rights and I believe it raises exactly

4  the same issue, Your Honor, as just addressed.  So I would

5  like to at least proffer Noteholder Plan Proponent FCC

6  Exhibit 92, which as I say relates to director designations

7  under the Noteholder Plan, just as NPP 2224 relates to

8  issuance of voting stock under the Noteholder Plan.

9           THE COURT:  What is FCC92?

10          MR. FRIEDMAN:  FCC92 is a Noteholder addendum to

11 Plan supplement in support of the Amended Joint Plan of

12 Reorganization.  And again, both of these exhibits are in

13 the record and the Noteholders intention until Mr. Flagg

14 opened the door with his questions to Mr. Prak was simply to

15 point out what is in the record when it comes time to argue

16 about the differences between the plans.  I understand Your

17 Honor's ruling with respect to the motion to strike to be

18 that I should not be asking this witness about these matters

19 at this time.

20          THE COURT:  Well, let's see if there's an

21 objection.

22          MR. FRIEDMAN:  Okay.

23          MR. FLAGG:  Yeah.

24          THE COURT:  Is there an objection?

25          MR. FLAGG:  There is an objection, Your Honor.

1      THE COURT:  Sustained.

2  (Laughter)

3  BY MR. FRIEDMAN:

4  Q     Mr. Prak, when Mr. Flagg was questioning you, he asked

5  you about the FCC application that has been pending for

6  approximately 11 months I believe he said.  Do you recall

7  that?

8  A     I do recall that.

9  Q     Now in terms of the FCC processes and procedures, can

10 you explain what happens at the FCC before confirmation of a

11 plan of reorganization and what happens after confirmation

12 of a plan of reorganization?

13 A     Well, the application has been pending for awhile, so

14 the staff has had an opportunity to work on the application.

15 On the other hand it's been my experience in bankruptcy

16 cases that the Commission knows that they're not going to

17 get the final organized company data and the information

18 until the Plan is confirmed.  So while they'll have done

19 some preliminary work on it, in this case, given the number

20 of contacts with the Commission, they may have been advised

21 of all manner of possible issues.  I mean the staff went to

22 this -- generally speaking when there's been a petition to

23 deny filed, Your Honor, one can't go talk to the Commission

24 without the parties' Counsel or the parties who filed the

25 petitions to deny.  In this case the Commission issued an

1    order requiring that it be treated as a permit, but

2    disclosed proceeding, which means that the parties can go in

3    exparte, but they have to disclose what they're talking

4    about to the other side.  So there's been a lot of back and

5    forth based on the docket entries that Mr. Flagg showed me.

6    There's been a lot of back and forth.  There may have been

7    some effort on the part of the applicant to familiarize,

8    given the complexity of this transaction, to familiarize the

9    Commission staff with what's going on, what's being

10   proposed, and all of that is helpful.  I mean all of that is

11   the kind of thing that you know good lawyers would do.

12   Whether the Commission, though, has worked up a draft order

13   or whether they've started circulating it to the five

14   commissioners, I couldn't begin to say.  There's no way to

15   know how much they've worked on it.  And to some degree it

16   would depend on the approach taken.  I mean the other

17   bankruptcy matter with which I'm familiar recently involved

18   two separate applications with two competing plans and the

19   Commission's approach was we're not going to do anything on

20   either Plan until we know which one that the Court is going

21   to confirm.  But that doesn't mean they wouldn't do

22   preliminary you know take a look kind of things.  And here

23   with Tribune we have a single application and I think you

24   know it's likely that given the amount of work that's going

25   on, the Commission staff is doing some work.  Given the fact

1   that we've got waivers of the multiple ownership rules

2   involved, the real work is going to start when it gets to

3   the eighth floor and the full Commission has to consider

4   what the staff recommends about the waivers, because that's

5   a policy issue.  That's a policy call.

6   Q     Mr. Flagg asked you some questions about the

7   demonstrative that I was showing to you on direct

8   examination and that Mr. Senter was showing to you on direct

9   examination, correct?

10  A     Yes, I recall that.

11  Q     And you testified that that was prepared under your

12  direction and you reviewed it and approved it, correct?

13  A     That is correct.

14  Q     Do -- does the demonstrative accurately summarize the

15  opinions you've expressed in this case?

16  A     Yes, I think it does.  I think it shows us where the

17  problem issues are and where the rule violations are and

18  then the demonstrative of dealing with the waivers shows you

19  where the hot buttons are on the waiver requests.

20              MR. FRIEDMAN:  And finally, Your Honor, if I may,

21  with respect to Noteholder Plan Proponent Exhibit 2224 and

22  Noteholder FCC Exhibit 92, at this time I would like to move

23  them into evidence.  I believe, but I'm sure I'll be

24  corrected if I'm wrong, I believe there have been no

25  objections to those exhibits, but anyway at this time I move

1  them into evidence.

2          MR. FLAGG:  Your Honor, I request that we have

3  some time to review those exhibits.  I don't know that we'll

4  have an objection to them, but this witness hasn't been able

5  to testify about them.  I'm not saying they shouldn't

6  ultimately come into the record, but we'd like to take a

7  look at them.  One of them is an affidavit -- declaration of

8  Mr. Gropper, who's been here, so before we say this is fine

9  I'd like us all to have a chance to take a look at it.

10          THE COURT:  I think Gropper's declaration was

11  moved into evidence.

12          MR. ZENSKY:  It was admitted yesterday with no

13  objection, Your Honor.

14          THE COURT:  And that's --

15          MR. ZENSKY:  And Mr. Friedman wasn't --

16          THE COURT:  All right.  And that's 2224?

17          MR. FRIEDMAN:  It's 2224 and --

18          THE COURT:  Okay.  So that's in already.

19          MR. FRIEDMAN:  That's in.  And then also we'd

20  like to move in Noteholder Plan Proponent FCC92.

21          THE COURT:  And refresh me, what is that?

22          MR. FRIEDMAN:  And FCC92, Your Honor, is the Plan

23  -- the addendum to Plan supplement in support of the Amended

24  Joint Plan of Reorganization.

25          THE COURT:  All right.  That's been filed of

1  record anyway.

2              MR. FLAGG:  That was on your original list that

3  we discussed this morning, so it's already in.

4              THE COURT:  Okay.

5              MR. FRIEDMAN:  You know I try to cover

6  everything, Your Honor.  I have no further questions.

7              THE COURT:  No harm in that, Mr. Friedman.

8              MR. FRIEDMAN:  Thank you.

9              THE COURT:  Recross?

10             MR. FLAGG:  Just one question.

11                       RECROSS EXAMINATION

12  BY MR. FLAGG:

13  Q   Mr. Prak, you've been talking obviously today about the

14  FCC's handling of applications associated with this

15  bankruptcy proceeding and we talked about this at your

16  deposition.  The FCC has a policy of comity C-O-M-I-T-Y,

17  correct, when it comes to dealing with bankruptcy

18  applications?  I mean that is FCC applications associated

19  with bankruptcy proceedings.

20             MR. FRIEDMAN:  Objection, Your Honor.

21             THE COURT:  Basis?

22             MR. FRIEDMAN:  Beyond the scope.

23             THE COURT:  I'll allow it.  You may answer, sir,

24  if you're able.

25             MR. PRAK:  Yes.  Certainly.  The FCC does have a

1   policy of comity which requires them and what they try to

2   do, what the word comity means in this context is they will

3   try to accommodate the interests of the bankruptcy law and

4   the bankruptcy court in dealing with trying to protect

5   innocent creditors and third parties by moving on matters as

6   quickly as they can.

7              MR. FRIEDMAN:  Thank you.

8              MR. PRAK:  Um-hum.

9              THE COURT:  Thank you, sir.  You may step down.

10             MR. PRAK:  Thank you.

11             THE COURT:  Okay.  We'll take a break now until

12  1:30, at which point we'll take Dr. Beron.

13             MR. HURLEY:  Yes, that's correct, Your Honor.

14             THE COURT:  All right.  Court will stand in

15  recess.

16  (Off the record)

17             THE COURT:  All right.  Would you stand, sir,

18  please, and be sworn in?

19             BRUCE BERON, WITNESS, SWORN

20             MR. HURLEY:  Good afternoon, Your Honor.  Mitch

21  Hurley with Akin Gump Strauss Hauer & Feld for Aurelius.  I

22  have some binders I'd like to work with, with the witness

23  today.  If I could approach?

24             THE COURT:  Yeah.  Just wait one moment.

25             MR. HURLEY:  Okay.  May I approach?

1       THE COURT:  Yes.

2       MR. HURLEY:  Thanks.

3       THE COURT:  Thank you.

4                   DIRECT EXAMINATION

5  BY MR. HURLEY:

6  Q      Good afternoon, Dr. Beron.

7  A      Good afternoon.

8  Q      How are you today?

9  A      All right.

10 Q      Dr. Beron, you've been asked to provide an expert

11 opinion in this case.  Is that right?

12 A      That's correct.

13 Q      Okay.  Now without disclosing the substance of your

14 opinion, sir, would you please just describe generally for

15 the Court the subject matter of the opinion you expect to

16 give?

17 A      I was asked to calculate the expected value of the LBO

18 related claims against the Lenders, using decision tree

19 analysis based on the conclusions in the examiner's report.

20 Q      Thank you, Dr. Beron.  And I understand you've

21 prepared some slides that you'll be using in your testimony

22 today.  Is that correct?

23 A      Yes, it is.

24 Q      Can you please turn to Tab 1 in the binder that I've

25 just handed you?  And can you advise the Court whether these

1  are the slides?

2  A      Yes.

3          MR. HURLEY:  Okay.  And Your Honor, throughout

4  the course of the presentation, we'll be putting slides up

5  on the screen that obviously if they're difficult to read,

6  they're also available in the binder.

7          THE COURT:  Thank you.

8  BY MR. HURLEY:

9  Q    I want to start by asking you some questions about

10 your education experience as it relates to the subject

11 matter with respect to which you anticipate testifying

12 today.  Have you prepared a slide concerning your background

13 as it relates to those matters?

14 A      I have.

15 Q    Okay.  And is the first slide in the notebook and the

16 slide appearing on the screen now that slide, sir?

17 A      Yes.

18 Q    Okay.  Why don't you start by telling the Court about

19 your education?

20 A      I attended Princeton University where I received a

21 bachelor's degree in physics, with honors.  From there I

22 went to Stanford University where I received a Master of

23 Science and a PhD in Physics.

24 Q    Sir, in the course of your studies did you have

25 occasion to take any advanced mathematics?

1  A    Yes, I did.  I had advanced calculus and matrix

2  algebra in undergraduate school and in graduate school we

3  studied thermodynamics, theoretical physics, quantum

4  electrodynamics, and general relativity.

5  Q    And when did you get your PhD in physics?

6  A    1972.

7  Q    Okay.  Sir, do you have any formal training in

8  decision tree analysis?

9  A    Yes.  While I was post-docing at Stanford in physics,

10  I took a series of classes at Stanford in the decision and

11  risk analysis department, essentially a one-year sequence.

12  Q    And after that sequence of courses, sir, what did you

13  do next related to decision tree analysis?

14  A    I went to work at SRI International, which was

15  formerly known as Stanford Research Institute.  It's still

16  associated with Stanford University.  And I went to work in

17  the decision and risk analysis department there, founded by

18  Ron Howard, who was the father of decision and risk

19  analysis.

20  Q    How much of your work at SRI involved decision trees

21  and risk analysis?

22  A    All of it.

23  Q    And was any of it related to risk analysis in the

24  context of settlement of litigation?

25  A    Yes.  There were approximately three cases that I

1  worked on while I was at SRI and related strictly to

2  litigation.

3  Q    And I understand you were at SRI until about the mid

4  1980's.  Is that right?

5  A    That's correct.

6  Q    What did you do after SRI as it relates to decision

7  tree analysis?

8  A    In 1985 I left SRI and set up the Beron Group as a

9  consulting company to consult both in business related risk

10  -- decision and risk analysis and litigation analysis.  And

11  then in 1988 I formed the Litigation Risk Management

12  Institute, which -- referred to as LRMI and that was set up

13  to do a series of public seminars around the country

14  teaching attorneys and business people how to apply decision

15  tree and risk analysis to litigation and that program went

16  on for -- I did about 12 seminars a year for about 11 or 12

17  years.

18  Q    Sir, how much of your work at the Beron Group and LRMI

19  relates to litigation?

20  A    Probably for the last 15 or 20 years it's been about

21  80 percent litigation.

22  Q    Now I believe you mentioned you do some teaching as

23  well.  Can you tell the Court a little bit more about the

24  teaching you've done?

25  A    Well, in addition to the seminars, which I did in a

1  public fashion and continue to do for clients and companies

2  that call me in to do the training, I also lecture at the

3  decision and risk analysis program at Stanford.

4  Q     You mentioned that you do some consulting work at your

5  company.  Can you please describe for the Court what kind of

6  consulting work you undertake for clients that are involved

7  in litigation?

8  A     Generally the assignments are someone is either

9  considering litigation or has been sued and they call me in

10  to do a decision tree risk analysis calculating an expected

11  value of the outcome of the case to help them decide whether

12  or not to settle, some issues around litigation strategy in

13  the case, and give them some advice about settlement

14  negotiations.

15  Q     Sir, have you prepared a slide that identifies some of

16  the representative clients that have used these services?

17  A     I have.

18  Q     Okay.  And is the slide that is appearing on the

19  screen now, that slide?

20  A     Yes.

21  Q     Okay.  And these listed clients are all clients that

22  have used your litigation related decision tree services?

23  A     Correct.

24  Q     It says it's a representative clients.  Are there

25  clients that you've provided those services to that are not

1  listed?

2  A      Yes.  Many more than this.

3  Q      Okay.  How many times in your career, sir, have you

4  provided decision tree analysis as it relates to settlement

5  of litigations?

6  A      Hundreds of cases.

7  Q      Okay.  Have you ever testified before today, sir?

8  A      I have not.

9  Q      Ever testified in any capacity?

10  A      I have not.

11  Q      Before you were involved in this case, did you ever

12  have your deposition taken?

13  A      Thankfully no.

14  (Laughter)

15  Q      Okay.  So the hundreds of --

16              THE COURT:  Well, you're in for a real treat

17  today, sir.

18  (Laughter)

19              DR. BERON:  It's going to be even better.

20  BY MR. HURLEY:

21  Q      So the hundreds of prior analyses you referred to that

22  you've conducted in this sector have all related to parties

23  actually involved in litigation, to help them determine

24  appropriate settlement of those cases?

25  A      That's correct.

1    Q      Okay.  Can you provide for the Court an example of

2    litigation consulting work that you've done for a client at

3    LRMI?

4    A      One of my regular clients in the telecom industry was,

5    as happened regularly was being sued for infringement of a

6    particular patent portfolio and I was called in to do my

7    settlement valuation, to guide them about possible

8    settlement negotiations.  At the time I was called in they

9    were conducting what I call a scorched earth litigation

10   defense where they were just fighting everything tooth and

11   nail.  During the course of my analysis it became apparent

12   that the exposure was actually significantly higher than

13   they had originally thought.  There was -- if they were to

14   lose the case, the damages -- potential damages ran well

15   above a billion dollars and there was a significantly higher

16   probability of losing than they had thought.  And as the

17   result of this analysis and discussions with them and the

18   expected value, they changed their strategy from sort of

19   defense at all costs to seriously trying to negotiate

20   settlement and subsequently did come to a satisfactory

21   settlement.

22   Q      And you used risk analysis in that context?

23   A      Yes.

24   Q      Okay.  I'd like to ask a few questions about kind of

25   the history of this area.  When were the concepts of risk

1   analysis and expected value first developed?

2   A      Well, the concept of expected value goes all the way

3   back to the 17th century.   Several mathematicians came up

4   with the idea.   And then over the subsequent centuries and

5   decades there have been further developments in probability

6   theory, operations research, calculational abilities.   All

7   of this culminated in the mid 60's with the definition or

8   development of a methodology which is generally referred to

9   as decision analysis by Professor Ron Howard at Stanford.

10  He then caused to be created a group at what was then

11  Stanford Research Institute, is now SRI as I said where I

12  worked, a group to start applying these tools and techniques

13  to both business and public policy decisions and to

14  promulgate their use generally.

15  Q      And do you have an understanding as to the extent of

16  the use of these tools today by commercial entities?

17  A      Yes.   This methodology, decision analysis, is

18  generally accepted across a broad range of industries and

19  Fortune 500 companies and is used routinely by them as for

20  most business decisions, as well as litigation.

21  Q      So if you would explain for the Court please, sir,

22  just at a high level what decision trees are.   You mentioned

23  that concept earlier in your testimony.

24  A      Well, the central tool, concept of a decision analysis

25  is a decision tree, which has two functions.   It first is

1 able to lay out all the issues in the case, applying the

2 litigation.  It's all those issues that the trier of fact

3 must rule on or come to a determination of in order to be

4 able to determine a final judgment or outcome in the case.

5 It shows how those issues are connected.  And then at the

6 next step when one puts in the probabilities, it's a very

7 comprehensive way of making sure that all the probabilities

8 are calculated correctly and at the end of the day you've

9 got the right probability calculations at the end of the

10 tree.

11 Q    Thank you, sir.  And you mentioned the concept of

12 expected value.  Could you please explain that concept for

13 the Court?

14 A    Yes.  Decision analysis is applied to situations where

15 uncertain -- and if you do a litigation the outcome is only

16 going to happen once, but in terms of valuing it, the

17 appropriate concept to use here is the expected value or

18 probability weighted average.  So if you could run the case

19 a thousand or a million times, on average that's what you

20 would get.  So sometimes you'd win, sometimes you lose, but

21 on average the expected value represents what you would get

22 and it's generally accepted for decision making purposes,

23 business, investing, and in these litigation analyses that

24 that's the proper tool for valuation and as a basis for

25 decision making.

1    Q    And sir, are you aware of a simple example that you

2    could use to help explain how you use decision trees to

3    calculate expected value?

4    A    Yes.

5    Q    And have you prepared some slides illustrating that

6    example?

7    A    Yes.  I've prepared some slides illustrating a simple

8    hypothetical litigation.

9    Q    Okay.  Can we have that slide?  Is this the slide

10   you're referring to, sir?

11   A    Yes.

12   Q    Why don't you explain for the Court how this slide

13   will help you explain expected value?

14   A    All right.  This hypothetical -- we are representing

15   the Plaintiff and the Plaintiff has two potential claims.

16   Claim 1 has a -- we have a 30 percent chance of prevailing

17   on.  Claim 2 we have a 60 percent chance of prevailing on.

18   The damages are $100 and if we prevail on either Claim 1 or

19   Claim 2, we get $100, but in fact even if we prevail on

20   both, the damages are still $100.

21   Q    And you have a slide with a simple decision tree

22   showing how you calculate expected value?

23   A    Yes, I do.

24   Q    That's the next slide?

25   A    Yes, it is.

1    Q     Okay.  Can you please explain for the Court how this

2    slide fits in your analysis?

3    A     Well, the first column is also referred to as the

4    first node or uncertain event in the tree, represents our

5    Claim 1.  And we had a 30 percent chance that it would --

6    that we would prevail on Claim 1.  So the no there has to be

7    given that -- it's either yes or no.  Those two have to add

8    up to 100 percent.  So if yes is 30 percent, no has to be 70

9    percent.  So that's the first uncertain issue.  The next we

10   have -- in the next column we have Claim 2, which here

11   appears twice in the tree if we prevail on Claim 1 or if we

12   don't prevail on Claim 1.  And again, there's a 60 percent

13   chance of prevailing on Claim 2 and if we don't prevail,

14   again the probabilities have to add to 100 percent, so

15   there's a 40 percent chance of prevailing on Claim 2.

16   Q     Now I see you have a column entitled Scenario and it

17   says 1, 2, 3, 4.  You see that?

18   A     That's correct.

19   Q     And what do those scenarios represent, sir?

20   A     Those represent the -- in this simple case the

21   possible litigation outcomes and it's just -- I found it's

22   very useful to have an identifying number, so you can tell

23   where you are in the tree.  But each of these as I said is a

24   particular litigation outcome.

25   Q     And can you explain for the Court the significance of

1  the probability column?

2  A     Yes.  The probability column is just the likelihood of

3  getting to the outcome of Scenario 1 and what it represents

4  is if we prevail on Claim 1, we then have a 60 percent

5  chance of prevailing on Claim 2.  So the overall likelihood

6  of prevailing on Claim 1 and Claim 2 is just 30 percent

7  times 60 percent, which is the 18 and that's also just the

8  particular path we've gone through on the tree.  We both

9  applied all those probabilities together.  You can do the

10  same thing if we prevail on Claim 1 and lose on Claim 2, so

11  that's 30 percent times 40 percent and that's the 12 percent

12  and the other numbers are calculated similarly.

13  Q     So sir, using this type of tree, how do you calculate

14  expected value of your hypothetical litigation?

15  A     Well, the next thing you have to put at the end of the

16  tree is the recovery and as we said, there's a recovery if

17  you succeed either on Claim 1 or on Claim 2, so for the

18  first three scenarios, we've prevailed either on Claim 1 or

19  Claim 2 or both and there's $100 and on the final note where

20  we haven't prevailed on either it's zero dollars.  And so to

21  calculate the expected value I just multiply each --

22  probability for each scenario times its associated recovery.

23  So for example for Scenario 1 it's 18 percent of $100, which

24  is $18.  For Scenario 2 it's 12 percent of $100, which is

25  12.  Scenario 3 is 42 percent of $100, which is 42.  And the

1  last one is 28 percent of zero dollars, so that doesn't

2  contribute.  And the total is $72, which is generally

3  represented as a circle at the left hand side of the tree,

4  which represents the expected value of this simple

5  litigation.

6  Q    And this example illustrates how you do even in less

7  simple litigations?

8  A    Yes.

9  Q    Okay.  So it looks like with just two claims it's a

10 pretty straight forward chart.  I assume it could probably

11 get pretty complicated pretty quick if there are more than

12 two claims.  Is there anything you do to try and simplify

13 the presentation of these charts, sir?

14 A    Yes.  Well, both simplification and calculation, but

15 you'll notice at the end of Scenarios 1 and 2 where you have

16 a $100 outcome and the probabilities of 18 and 12 just add

17 up to the 30 because once we've succeeded on Claim 1,

18 there's really no need for any further consideration of

19 Claim 2 in calculating the expected value, so we can redo

20 the tree in a slightly simpler fashion.

21 Q    And you have a slide that illustrates that?

22 A    Yes.

23 Q    Okay.

24 A    And so here we have a tree which is a little simpler,

25 but it's functionally and calculationally completely

1  equivalent to the first tree and as I say this doesn't look

2  like much of a simplification, but if you had even five of

3  these and you simplified from four to three, you'd end up

4  with 27 -- well, you'd end up with about a factor of 10

5  fewer outcomes.

6  Q    Thank you, sir.  I want to talk for a moment about the

7  inputs into your trees.  I see you -- first of all obviously

8  there are probabilities associated with the uncertain

9  events?

10 A    Yes.

11 Q    Where do you, generally in your practice, sir, get

12 those probabilities?

13 A    From my client, which is usually Counsel for the

14 client or their Counsel.

15 Q    Okay.  And I see another input here is the recovery or

16 damages associated with particular litigation outcomes.  And

17 where do you ordinarily get those inputs, sir?

18 A    Again, from the Counsel or the client.

19 Q    Okay.  And in your experience, sir, and in your

20 practice, is it necessary to understand how the recovery

21 numbers were calculated?

22 A    It is not.

23 Q    Okay.  In your years of working with litigants, sir,

24 what alternatives have you seen to litigants using decision

25 tree analysis to try and assess the value of litigation?

1    A      Well, try and think of a -- it's usually seat of the

2    pants, finger in the air, because once you get beyond a tree

3    that's a little bit more complicated than this, it's

4    extremely difficult to sort of juggle those figures in your

5    head and come out with a -- either a correct answer or

6    something that you can explain to someone.  So it's a --

7    it's very nice to be able to go through in a comprehensive,

8    systematic, logical fashion looking at each element in the

9    tree, assessing the probability of that, and then seeing

10   what the consequences are.  And it, as I say it gives a very

11   reliable estimate of the expected value of the case.

12   Q      Thank you, sir.  I'd like to talk about what you've

13   done in this case.  First, you were engaged by Akin Gump,

14   Counsel for Aurelius?

15   A      That's correct.

16   Q      Okay.  Approximately when was that?

17   A      Late November 2010.

18   Q      Okay.  And what is your understanding of what your

19   assignment was, sir?

20   A      I was asked to calculate an expected value of the LBO

21   related claims against the LBO Lenders, based on the

22   conclusions in the examiner's report using my customary

23   decision trees.

24   Q      And what -- did the examiner report play a role in

25   that, I think you said?

1  A    Yes.  As I say I was -- had to use the conclusions in

2  the examiner's report, so I based the analysis essentially

3  on the conclusions and the issues addressed in the

4  examiner's report.

5  Q    Okay.  And another input in your tree is obviously is

6  recoveries as we mentioned before and are there recovery

7  inputs in the tree that you used in this case, sir?

8  A    Yes, there are.

9  Q    Okay.  And where did you get those recovery figures

10 from?

11 A    Those came from a model built and operated by

12 Aurelius.

13 Q    Okay.  Have you ever seen the Aurelius model, sir?

14 A    Yes, I have.

15 Q    Okay.  Can you turn to Tab 2 in your binder, please,

16 sir?

17 A    Sure.

18 Q    And at Tab 2 you'll see a document that is marked

19 Exhibit NPP -- oh, I'm sorry.  At the wrong tab.  Tab 4,

20 please, sir.

21 A    Yes.

22 Q    And at Tab 4 you'll see an exhibit marked NPP0031.

23 And sir, do you recognize this as a copy of the Aurelius

24 waterfall model?

25 A    Yes.

1   Q      Okay.  Now sir, recognizing that you didn't create the

2   Aurelius waterfall model, do you have a general

3   understanding of how it works?

4   A      Yes, I do.

5   Q      Okay.  Could you describe for the Court your general

6   understanding of how it works?

7   A      The termination of which money goes where starts with

8   the value in the company.  Then depending on the various

9   findings in the litigation, there are recoveries,

10  avoidances, and end up with a net set of claims, which are

11  then distributed according to the litigation outcomes.

12  Q      Okay.  You mentioned litigation outcomes.  Who

13  provided the litigation outcomes to Aurelius?

14  A      I did, from my tree.

15  Q      Okay.  Now sir, in relying on your client as you did

16  here to provide you with recovery numbers to put into your

17  tree, are you departing from your ordinary practice?

18  A      I am not.

19              MR. SOTTILE:  Objection, Your Honor.

20              THE COURT:  Basis?

21              MR. SOTTILE:  The witness has not yet been

22  tendered as an expert and I think we are now eliciting

23  testimony that is only permissible from an expert.

24              MR. HURLEY:  I'm about to tender him as an expert

25  and I don't think we're asking for any opinions yet, sir.

1          THE COURT:  Well, how much more, Mr. Hurley?

2          MR. HURLEY:  Very little.  Couple of questions.

3          THE COURT:  You may proceed.

4          MR. HURLEY:  Okay.

5   BY MR. HURLEY:

6   Q     So just going back to the -- I think the last question

7   I asked you whether in your practice it's a departure to

8   rely on your client for the recovery numbers?

9   A     Absolutely not.

10  Q     Okay.  And do you have a -- you've worked with other

11  practitioners in the decision tree analysis?

12  A     Yes.  I'm acquainted with a few.

13  Q     Then you mentioned you trained with someone named Ron

14  Howard, who you described as the father of decision tree

15  analysis.

16  A     Yes, I did.

17  Q     Okay.  And are you in contact on occasion with other

18  practitioners of decision tree analysis as it relates to

19  litigation?

20  A     Yes.

21  Q     You stay up on the literature?

22  A     Yes.

23  Q     Okay.  In your understanding, is it typical for

24  practitioners to rely on the litigants or the litigants

25  lawyers to identify potential damages for their trees?

1    A    Yes.

2    Q    Do you have a view as to whether the Aurelius model

3    that you relied on here is the type of information that

4    other practitioners in decision tree analysis would

5    reasonably rely upon in forming opinions of expected value

6    and reasonableness of settlement using decision trees?

7    A    Yes.

8    Q    And what is that opinion?

9    A    That it's perfectly normal practice.

10   Q    Okay.  Using your analysis, did you reach any

11   conclusions?

12   A    Yes, I did.

13   Q    Okay.  I don't want you to disclose any of your

14   conclusions yet, sir, but please just advise the Court

15   whether you determined an expected value of the LBO causes

16   of action against the Lenders in this case?

17   A    I did.

18   Q    And again without disclosing -- well, back up.  Did

19   you familiarize yourself with the terms of the proposed

20   settlement of those claims?

21   A    I did.

22   Q    Okay.  And again without giving us any of your

23   conclusions, did you reach an opinion concerning the

24   reasonableness of the proposed settlement of those claims?

25   A    I did.

1  Q    Okay.  Sir, are you a lawyer?

2  A    I am not.

3  Q    No law degree?

4  A    No, sir.

5  Q    You an expert on bankruptcy law?

6  A    I am not.

7  Q    Okay.  Did you intend to give a legal opinion today?

8  A    I do not.

9           MR. HURLEY:  Your Honor, at this time the

10 Noteholder Plan Proponents offer Dr. Beron as an expert

11 witness to provide his opinion concerning the expected value

12 of the LBO related causes of action the DCL plan proponents

13 seek to settle and the reasonableness of that proposed

14 settlement.

15          THE COURT:  Is there any objection?

16          MR. SOTTILE:  Your Honor, James Sottile of

17 Zuckerman Spaeder, Special Counsel to the Committee.  I

18 guess I would like some clarification on the field of

19 expertise.  Is the field of expertise decision tree analysis

20 that has been described by the witness?  Is that what he's

21 being tendered as an expert in?

22          MR. HURLEY:  Yes, that's right.

23          MR. SOTTILE:  Then I have no objection, Your

24 Honor.

25          THE COURT:  All right.  You may proceed

1  accordingly.

2          MR. HURLEY:  Thank you, Your Honor.

3  BY MR. HURLEY:

4  Q    I want to come now specifically to what you've done in

5  this case, sir.  And let's start with you mentioned you

6  relied on the examiner's report.  Did you read the

7  examiner's report?

8  A    Great parts of it, yes.

9  Q    Okay.  Did you focus on any particular aspects of the

10  examiner's report?

11  A    Yes, I focused on his discussion of the claims that I

12  was analyzing and in particular on his conclusions regarding

13  either findings or elements of determinations of claims.

14  Q    Okay.  And was there anything in the examiner report

15  that caused you to believe it was appropriate to focus on

16  the conclusions?

17  A    Yes.  The examiner himself said that he organized the

18  report in such a way that those conclusions are stated in a

19  particular section of his report and that that's one should

20  focus on to get to his bottom line conclusions.

21  Q    And have you prepared a slide that includes the page

22  that you're referring to?

23  A    Yes, I have.

24  Q    Okay.  Can you pull that up?  And sir, if you would

25  read for the record, please, just the highlighted material

1   on the slide.

2   A      "The examiner has organized this portion of the

3   report, as well as, Volume 3 to enable the reader to obtain

4   in a relatively quick fashion, the examiner's bottom line

5   regarding the issues presented.  To accomplish this

6   objective, the report sets forth the examiner's conclusions

7   regarding the principal issues addressed in each subsection,

8   at the outset of that subsection, followed immediately by

9   the examiner's factual and legal analysis."

10  Q      Thank you, sir.  And how did the examiner express his

11  bottom line conclusions?

12  A      He used a set of seven consistent terms of what I call

13  verbal likelihoods to consistently express his opinion about

14  the likelihood of findings in these various elements.

15  Q      And do you have a slide of the page where he

16  identifies those verbal likelihoods?

17  A      I do.

18  Q      And is that the next slide in your binder?  Okay.  Can

19  you please read for the Court just the highlighted material

20  from that slide, sir?

21  A      "Specifically, the examiner determined to frame his

22  conclusion in the report in a uniform fashion utilizing the

23  following continuum; highly likely, reasonably likely,

24  somewhat likely, equipoise, somewhat unlikely, reasonably

25  unlikely, and highly unlikely."

1  Q      Thank you.  Did the examiner assign these verbal

2  probabilities in connection with fraudulent conveyance

3  claims arising out of the LBO?

4  A      He did.

5  Q      Did he assign one of those terms to the likelihood of

6  an intentional fraudulent conveyance?

7  A      He did.

8  Q      Okay.  And do you have a -- each of Step 1 and 2?

9  A      Yes.

10 Q      And do you have a slide identifying his assignment

11 with respect to Step 1?

12 A      I do.

13 Q      Okay.  That's the next slide in the binder.  Do you

14 recognize that, sir, that slide?

15 A      Yes.

16 Q      Okay.  Can you please read the highlighted material

17 with respect to the Step 1?

18 A      "The Court is reasonably unlikely to find that the

19 Tribune entities incurred the obligations and made the

20 transfers in the Step 1 transactions with actual intent to

21 hinder, delay, or defraud."

22 Q      Now, sir, reasonably unlikely is one of the seven

23 probabilities?

24 A      That's correct.

25 Q      Is that the lowest grade the examiner provides or the

1  least likely?

2  A     It is not.

3  Q     Okay.  And do you have a slide identifying the

4  conclusion he reached with respect to Step 2?

5  A     I do.

6  Q     And is that the next slide in your binder?

7  A     I believe it is.

8  Q     Okay.  And when you get there, sir, if you could read

9  it again, just the highlighted material regarding the IFC at

10  Step 2.

11  A     "A Court is somewhat likely to find that the Tribune

12  entities incurred the obligations and made the transfers in

13  the Step 2 transactions with actual intent to hinder, delay,

14  or defraud creditors."

15  Q     And somewhat likely again is one of those seven

16  phrases?

17  A     That's correct.

18  Q     What about constructive fraudulent conveyance?  Did

19  the examiner assign a likelihood to the ultimate issue of

20  whether there was a constructive fraudulent conveyance?

21  A     He did not.  For a constructive fraudulent conveyance,

22  he gave conclusions regarding the elements required for

23  finding a constructive fraudulent conveyance.

24  Q     Okay.  I think you said you used the examiner's

25  assignments of those probabilities to build your trees.  Is

1    that right?

2    A    That's correct.

3    Q    The illustrative tree you showed us used numerical

4    probabilities.

5    A    Correct.

6    Q    So the examiner did not himself include numerical

7    probabilities.  Is that right?

8    A    He did not.

9    Q    So how did you proceed in building your tree in this

10   case, sir?

11   A    Well, I looked at his terms and the first thing I did

12   was to determine whether he was -- how he was using the

13   terms and whether he was using them in a what I would call a

14   symmetrical fashion such that if highly likely meant 85

15   percent, then highly unlikely meant 15 percent.  And it

16   turns out in several places which I've noted in my report,

17   he says an event is highly likely and the he says that the

18   opposite finding is highly unlikely.  So I was comfortable

19   that he was using these in a symmetrical fashion.

20   Q    And do you have a slide prepared that illustrates the

21   probabilities, numerical probabilities you assigned?

22   A    Yes.

23   Q    Okay.  And is that the next slide in your binder?  Do

24   you recognize that, sir?

25   A    Yes.

1  Q    Okay.  Can you just provide a little more detail for

2  the Court about how you went about selecting these

3  probabilities?

4  A    Well, the first one which is the easiest to determine

5  was the question of equipoise which by common sense

6  definition in both by the fact it's the middle of seven, and

7  in order to be self complimentary, it has to be 50 percent

8  so that was where we started.  And then I -- using common

9  usage terms and some logic which is described in detail in

10 my report, I came up with this set of seven probabilities

11 which go from 15 percent through 85 percent for the seven

12 terms.

13 Q    Okay.

14 A    And that was my base set.

15 Q    Yeah.  And did you run any sensitivities?

16 A    Yes.  I was concerned that the conclusions that I came

17 to might be influenced by the choice of particular sets of

18 numbers or the way in which I determined these.  So I also

19 developed two alternative sets to test my conclusion

20 against.

21 Q    Now we haven't gotten to your conclusion yet, sir, but

22 just give us a preview.  Did the change from the base set to

23 the sensitivities make a great deal of difference in your

24 analysis?

25 A    No, it was not material difference.

1    Q    Okay.  Now in determining expected value in this case

2    you used some decision trees?

3    A    That's correct.

4    Q    And do you have a slide listing the trees that you

5    used in reaching your conclusion?

6    A    Yes, I do.

7    Q    Okay.  And is that the next slide?

8    A    Yes.

9    Q    I guess it's the next one after that, yeah.  Dr.

10   Beron's decision trees.  Are you there with me?

11   A    Yeah.

12   Q    Okay.  And can you just describe very briefly what

13   these tree are and how they fit into your analysis, sir?

14   A    Well, the first four are really the most important

15   ones in the analysis, the step one avoidance trees,

16   addresses the issues of the examiner's determination of

17   intention fraudulent conveyance and the elements of

18   constructive fraudulent conveyance regarding the Step 1.

19   Step 2 avoidance trees does the exact same thing for Step 2.

20   And then the Step 1 and 2 avoidance trees, I essentially put

21   those two together to form a set of avoidance scenarios

22   which are then used in the recovery trees and there the

23   other limitations, defenses, and remedies are applied to

24   those initial avoidance findings to determine my expected

25   value.

1    Q    I see there are two trees that are kind of set off

2    from the others at the bottom.  Why are they set off like

3    that, sir?

4    A    Well, those are the first one the limitations and

5    remedies trees relates to those subsequent issues in the

6    recovery tree which were required to determine the outcome

7    and the likelihood of each outcome.  And the 548c defense

8    tree relates to findings of good faith of which then have an

9    effect on the conferred value that the banks are allowed to

10    retain.

11    Q    Fair to say, sir, that the first four trees listed are

12    the primary building blocks of the analysis?

13    A    They are.

14    Q    Okay.  Why don't we focus on those and go through them

15    in some more detail?  Now I know you have some slides that

16    show these, but before I -- you would get to the slides, I

17    would like you to identify the trees that we're going to be

18    looking at for the record.  So if you could just turn in

19    your binder to Tab 5.

20    A    Okay.

21    Q    And if you could advise the Court that there are -- it

22    should be behind Tab 5, Your Honor, a number of larger

23    pages.  Dr. Beron, if you could just advise the Court

24    whether you recognize these pages as the trees that you used

25    in your analysis?

1   A      They are.

2   Q      Okay.  And okay -- and these trees also appear in your

3   report that you filed?

4   A      Yes, they do.

5   Q      Okay.  Okay.  Let's start with the fraudulent

6   conveyance Step 1 tree and we have a slide, I know that

7   identifies that tree.  Will you pull that up?  Is this your

8   fraudulent conveyance at Step 1 tree, sir?

9   A      It is.

10  Q      Okay.  Pretty complicated obviously.  I think we have

11  a slide that makes it a little easier to read.

12  A      Yes.

13  Q      Would you pull that up, please?

14  A      Okay.

15  Q      Okay.  Now, sir, can you explain how this tree works

16  and perhaps by relating it to the simpler illustration we

17  talked about in the beginning of the testimony.

18  A      Yes.  This tree relates to the issues of intentional

19  fraudulent conveyance of Step 1 and constructive fraudulent

20  conveyance.  The examiner made a direct determination of

21  intentional fraudulent conveyance and so that's the first

22  note in the tree.  And then the rest of the tree relates to

23  finding of constructive fraudulent conveyance for the parent

24  and the subs.

25  Q      Okay.  Now while are there so many more notes for

1  constructive fraudulent conveyance than intentional

2  fraudulent conveyance?

3  A    Well, because there are several issues to have to be

4  ruled on before, in fact, we can determine what the finding

5  is of construction fraudulent conveyance for either parent

6  or sub at this point.

7  Q    Okay.  So I see there are 82 scenarios.  I think on

8  the earlier chart, you could see there were 82 scenarios in

9  the chart.

10  A    Yes, that's correct.

11  Q    And what do the 82 scenarios represent?

12  A    Those are all the possible combinations of, excuse me,

13  the -- in finding intentional fraudulent conveyance and the

14  various combinations of finding for constructive fraudulent

15  conveyance that lead to all the possible combinations of

16  outcome.

17  Q    Okay.  Now if you could just by walking through the

18  tree, quickly explain to the Court how this models the

19  intentional fraudulent conveyance claim and the claims of --

20  and the elements of constructive fraudulent conveyance?

21  A    Well, the first note, as I said, the first column on

22  the left is the examiner's direct ruling on the finding of

23  intentional fraudulent conveyance.  And then we have to move

24  into the issues related to constructive fraudulent

25  conveyance.  The second column in the tree relates to

1  whether the entities received reasonably equivalent value.

2  The next three columns relate to given that this is at Step

3  1, there was an issue of whether or not the Step 2 debt

4  would be included in consideration of three financial tests

5  for constructive fraudulent conveyance.  And so we have to

6  allow for the inclusion or not for each of those three

7  tests.  Then the next three nodes on the tree relate to

8  those three financial tests as applied to the parent.  And

9  the last three relate to those three financial tests as

10 applied to the subsidiaries.

11 Q    Thank you, sir.  Now if we could, let's walk through a

12 couple of branches to make sure that we're making this as

13 clear as we can.  Why don't we start with what looks at

14 least to my eye like the simplest branch on the tree which

15 is the first one.  Do you see that?

16 A    Yes.

17 Q    Okay.  And can you explain for the Court what this

18 first branch of the tree represents?

19 A    Well, as I said before, the examiner made a direct

20 ruling about the likelihood of intentional fraudulent

21 conveyance.  And he said that was reasonably unlikely.  And

22 that corresponds to I had assigned a 30 percent probability

23 to that.  And like the Claim 1, Claim 2 tree, once there's

24 been a finding of intentional fraudulent conveyance, there's

25 no need to consider the issues of constructive fraudulent

1   conveyance.  And so the line goes right to the end of the

2   tree.  And that's Scenario 1 which is a finding of

3   intentional fraudulent conveyance.  And the probability

4   there is 30 percent which is just the one element, the one

5   node we have to go through which is also 30 percent.

6   Q    Thank you, sir.  So why don't we go through a little

7   bit more complicated version or branch of the tree in that

8   the next sort of least complicated one looks like it's the

9   final branch which I think you can see on your blowup there.

10  A    Yes.

11  Q    Is that Scenario 82.

12  A    Right.  Well, if there's no finding of intentional

13  fraudulent conveyance, again we had assigned a 30 percent

14  chance to a finding of intentional fraudulent conveyance.

15  If there's no finding of intentional fraudulent conveyance,

16  we then have to consider the constructive fraudulent

17  conveyance.  And the first element in that is the reasonably

18  equivalent value and, in fact, if the Tribune entities

19  received reasonably equivalent value, there can be no

20  determination of construction fraudulent conveyance.  And

21  the examiner determined that it was highly likely that they

22  would not receive reasonably equivalent value which is the

23  85 percent.  So the compliment of that is the 15 percent.

24  So what this path represents is no finding of intentional

25  fraudulent conveyance, no finding of reasonably -- excuse

1   me, a finding that there was reasonable equivalent value

2   which goes to Scenario 82 which has an 11 percent chance of

3   occurring which is again, just the 15 percent times the 70

4   percent.

5   Q    Thank you, sir.  So let's look at a more complex

6   example in the tree, sir.  And we've highlighted in your

7   tree, I guess it's Branch 11 of the tree.  And could you

8   please walk the Court through without giving too much

9   detail, how you get through that branch of the tree?

10  A    Okay.  Well now we're on the path where there was a

11  finding of no reasonably equivalent value.  And so we then

12  have to consider the three issues of whether or not Step 2

13  debt is included in consideration for the financial tests.

14  And here we're on a path where they -- it is included for

15  all of them.  And then we look at the three financial tests

16  for the parent and in this particular scenario, the parent

17  passes all three of those tests.  It's solvent, there's

18  adequate capital, and there was no intent to incur.  And

19  then we subsequently look at those three issues for the subs

20  and again, the subs pass all of those tests.  And so we end

21  up with Scenario 11 which like 82, represents a finding of

22  no constructive fraudulent conveyance and no intentional

23  fraudulent conveyance.

24  Q    And I see there are numbers, percentages at each node

25  in your tree there, sir.  And where do those numbers come

1  from?

2  A    Those are directly from the examiner's conclusions as

3  with the probabilities I assigned to them.

4  Q    Okay.  And you say this scenario, or this particular

5  litigation scenario has a 1.5 percent chance of happening.

6  That seems pretty small, can you explain?

7  A    Well, first of all, we've only picked one particular

8  path through the tree.  In fact, there are several ways in

9  this tree to get to the same conclusion.  And we have 82

10  scenarios so even if we distribute them all evenly, there's

11  only a 1.2 percent chance at each so this is a very

12  reasonable outcome.

13  Q    Thank you, sir.  Why don't we move on to the next tree

14  that you identified which I think is the Step 2 tree.  And

15  you prepared a slide that identifies the Step 2 tree?

16  A    I have.

17  Q    Okay.  And is the slide -- it's Slide 15 in the book

18  and on the screen.  That's the slide you're referring to?

19  A    Yes.

20  Q    Now it looks -- is this the same type of analysis as

21  in the Step 1 tree?

22  A    Exactly the same, just like the Claim 1 and Claim 2

23  there's an issue of intentional fraudulent conveyance which

24  the examiner ruled on directly.  And if that's not found,

25  then we'd have to consider the elements of constructive

1   fraudulent conveyance.

2   Q      I see it generates only 22 litigation outcomes.   Why

3   is it so much shorter than the Step 1 tree?

4   A      Well, we're already at Step 2 so the issue of whether

5   or not the Step 2 debt is included for each of the tests is

6   no longer relevant so that's a big reduction in the

7   complexity.

8   Q      Okay.   Other than that difference, what other

9   differences standout for you in this tree, sir?

10  A      Well, the probabilities or the likelihood phrases that

11  the examiner assigned to virtually all of his conclusions

12  here other than the received equivalent value are higher

13  than in the Step 1 tree, excuse me.

14  Q      Okay.   You mentioned earlier you created the chart

15  that combines the Step 1 and Step 2 trees and you have a

16  slide that shows that combined tree, sir?

17  A      I do.

18  Q      And that's Slide 16 in your book and the slide is now

19  appearing on the screen?

20  A      Yes.

21  Q      Okay.   Again, can you relate this tree to the simple

22  example we did at the beginning, sir?

23  A      Well, it's like the Claim 1, Claim 2 in that the first

24  two nodes deal with the issue of intentional fraudulent

25  conveyance.   And the next four nodes deal with the issues of

1    constructive fraudulent conveyance for parent and subs at

2    Step 1 and Step 2.  And this one leads to 25 possible

3    combinations.

4    Q    And sir, the Step 1 tree had 82 scenarios and the Step

5    2, I think had 22.  How do you get from all those scenarios

6    to just 25 in the combined tree?

7    A    Well, as I mentioned when we looked at that particular

8    -- the last path through the Step 1 tree, I said that was

9    just one of several scenarios that lead to the same

10   conclusion.  And so what I did was I combined like

11   conclusions and aggregated the probabilities from each of

12   those scenarios so that, in fact, here we're only dealing

13   with a finding of constructive fraudulent conveyance at

14   either the parent or subs at Step 1 or Step 2 instead of all

15   those other combinations of findings.

16   Q    So, sir, as a percentage, what percentage of possible

17   avoidance scenarios are represented in those 25 scenarios?

18   A    100 percent.

19   Q    Okay.  I see you have a table that's set forth at the

20   bottom of the tree.

21   A    Yes.

22   Q    And you have a slide that we can focus on that a

23   little bit more?

24   A    Yes.

25   Q    Okay.  And the Step 1 and Step 2 avoidance decision

1  tree slide at 18 is that what you're looking at, sir?

2  A    Yes.

3  Q    Okay.  So can you please explain for the Court how

4  this table fits into your analysis?

5  A    Well, this was our -- sort of our goal of these first

6  two trees was to come to a set of avoidance scenarios that

7  we would then consider for determination of recoveries.  And

8  what we did here is the first four of these are straight

9  from individual branches and the summary tree and they are

10  full avoidance at Step 1 and Step 2.  And then E and F are

11  just full avoidance at Step 2.  And in G, we considered --

12  we put all of the other possible combinations, kept all the

13  probabilities, but then considered no recoveries for those

14  beyond the natural recovery.

15  Q    So among other things here, you're grouping like

16  litigation outcomes together.  Is that right?

17  A    That's correct.

18  Q    I see A through D,  all of those scenarios are

19  complete avoidance at Step 1 and Step 2, so why are they

20  broken out separately?

21  A    Well, my understanding that 546e limitation applies

22  differently to a finding -- well, it doesn't apply to a

23  finding of intentional fraudulent conveyance, but it does

24  apply to findings of constructive fraudulent conveyance.  So

25  we had to keep those elements separated in order to further

1  include the effects of 546e.

2  Q     Okay.  And I see your Groups E and F also are I guess

3  like in that they're both avoidance at Step 2.  Why are they

4  separate?

5  A     Again, because the limitation of 546e applies -- my

6  understanding is it applies differently to the intentional

7  fraudulent conveyance than to the constructive fraudulent

8  conveyance.

9  Q     Now in G, none grouping, I see there's a bunch of

10  scenarios there.  Do you see that?

11  A     Yes.

12  Q     Okay.

13  A     It's fifteen more.

14  Q     Okay.  In those fifteen scenarios are there any

15  avoidance outcomes?

16  A     Yes, there are some scenarios with no avoidance

17  outcomes and there are some scenarios where there's partial

18  avoidance at Step 1 or partial avoidance at Step 2, partial

19  avoidance at both, but not full avoidance at 1 and 2 or at

20  2.

21  Q     What do you mean when you say partial avoidance?

22  A     It's either against what we're calling full avoidance

23  here is both parent and subs at one step.

24  Q     Okay.  And do -- in calculating your expected value,

25  do the noteholder plan proponents, I guess get any credit

1  for those partial avoidance scenarios?

2  A     They do not.

3  Q     Okay.  So you mentioned that this table is important

4  for your ultimate recovery tree.  So why don't we turn to

5  the recovery tree and you explain to the Court how this

6  table fits into that tree.

7           MR. SOTTILE:  Your Honor, James Sottile of

8  Zuckerman Spaeder.  We have not previously had testimony

9  based on the recovery model.  And I think we are about to go

10 into that area and I wanted to interpose an objection

11 because I do not believe the witness can reasonably rely

12 upon the recovery model given the Court's ruling that it's

13 not admissible.  And I believe that I could show either now

14 or on cross examination, that the witness could not

15 reasonably rely upon the recovery model to make it useable

16 under Rule 703.

17           THE COURT:  Are we talking about the Aurelius

18 waterfall?

19           MR. SOTTILE:  We are, Your Honor.

20           THE COURT:  I don't remember ruling that it was

21 inadmissible.  I think the effect of the ruling I made

22 previously was that it could not come in through the witness

23 that the noteholders were previously using.

24           MR. SOTTILE:  Your Honor, let me -- I think that

25 the Court is quite right that it has not been admitted so

1    far.  The witness is about, I believe, to testify to views

2    based on that Aurelius waterfall model.  In order to do so,

3    either the document must be admitted or it must be of a type

4    that experts in the field could reasonably rely upon under

5    Rule 703.  So far --

6              THE COURT:  I thought he testified among other

7    things, that this was the kind of information routinely

8    provided to him by his clients and/or counsel.

9              MR. SOTTILE:  He did, Your Honor, but I believe

10   that I could demonstrate that, in fact, the reliance here is

11   not reasonable.

12             THE COURT:  You'll have that chance on cross

13   examination.  The objection is overruled.

14             MR. SOTTILE:  Thank you, Your Honor.

15             THE COURT:  Mr. Hurley, you may proceed.

16             MR. HURLEY:  Thank you, Your Honor.

17   BY MR. HURLEY:

18   Q    Okay, sir.  So we were I think moving to the recovery

19   tree which I think you said was the last of the four

20   principal trees you relied on, right?

21   A    That's correct.

22   Q    Okay.  And is the slide that is now up on the screen

23   and that appears at Page 19 in your binder, is that the

24   recovery decision tree you're referring to?

25   A    Yes, it is.

1  Q    Okay.  First, I think while we still have the big one

2  up, even though it's not that easy to read, but you can at

3  least see the full page, can you explain for the Court how

4  the table we were just looking at, that A through D table

5  fits into this recovery tree?

6  A    Yes, the -- in fact, the table we were just looking at

7  is, in fact, just the first column here.  We've just -- if

8  you look down the A, B, C, D, E, F, G, same label, same

9  probabilities, it just has to be bigger because it now

10  accommodates all of the other various findings that need to

11  be determined for a recovery.

12  Q    Okay.  And then I take it that I understood that your

13  explanation of the prior tables, the first column here then

14  represents all the potential avoidance outcomes at Step 1

15  and 2?

16  A    The -- excuse me, could you repeat that question?

17  Q    Sure.  It represents all the potential litigation

18  outcomes on avoidance at Step 1 and 2?

19  A    That's correct.

20  Q    Okay.  Can you explain to the Court now just briefly

21  what the remaining columns on the recovery tree chart are,

22  the next I should say five columns on the recovery chart?

23  A    Yes, the first one as I mentioned before, relates to

24  the 546e defense and it only appears in the tree where there

25  is a finding, the initial finding of constructive fraudulent

1  conveyance.  The next one is the issue of whether the parent

2  creditors recovery from subsidiaries which we called

3  upstreaming for ease of description.  The next two relate to

4  equitable disallowance and subordination.  And the last one

5  refers to participation of the Step 1 lenders and

6  distributions and recoveries from Step 2.

7  Q    Okay.  And the five issues that you just identified,

8  sir, did you also do decision trees for those issues?

9  A    I did.

10  Q    Based on information from the examiner report?

11  A    Correct.

12  Q    And the principals applied to those decision trees is

13  different than you've described so far?

14  A    Absolutely not.

15  Q    Okay.  Let's walk through Scenario 1 or the first

16  branch of the recovery tree to get a little bit more detail

17  about how this works.  So if you could, sir, just explain

18  for the Court what scenario -- what the Scenario 1 branch is

19  telling you.

20  A    Okay.  Well, this starts with an initial finding of

21  intentional fraudulent conveyance and constructive

22  fraudulent conveyance at Steps 1 and -- at Step 1 and Step 2

23  as directly determined by the examiner.  And the only other

24  issue we address in this particular branch is the

25  upstreaming issue as to whether or not the parent creditors

1  can recover value from the subsidiaries.

2  Q     Let me stop you right there for one second, Dr. Beron.

3  I see that the branch skips the 546e defense.  Why is that?

4  A     Well because my understanding is 546e does not apply

5  if there's a finding of intentional fraudulent conveyance.

6  Q     Okay.  So if you could just proceed then to -- with

7  the branch.

8  A     Okay.  So then that branch goes all the way to the end

9  and the -- that's Scenario 1 and here we have, excuse me, 48

10  possible scenarios.  And associated with that is a dollar

11  recovery amount and a probability in here that is 11 percent

12  which is just again, the product of 70 times 18 percent,

13  excuse me.

14  Q     Okay.  So you mentioned that there are 48 scenario

15  numbers on the chart.  Are there 48 unique recovery

16  scenarios?

17  A     No.  There are 48 litigation outcome scenarios which

18  it turned out led to 19 different recovery scenarios which I

19  then passed onto Aurelius who determined the recovery

20  amounts.

21  Q     Okay.  So Aurelius used those 19 scenarios for the

22  waterfall model we've been discussing today?

23  A     Correct.

24  Q     Thank you.  I think you mentioned before that you can

25  determine expected value based on the information on this

1   recovery chart.  Is that right?

2   A     That's correct.

3   Q     Okay.  Can you explain for the Court how you go about

4   determining expected value based on this chart?

5   A     Well, the expected value again, like our other cases

6   is for each litigation outcome scenario there's a

7   probability and an associated recovery number.  And if you

8   just multiply each of those together 48 times, add up those

9   products, that is the expected value.

10  Q     And the same principal as you illustrated with the

11  simple litigation?

12  A     Correct.

13  Q     Okay.  And so what is the expected value that you

14  calculated using this chart, sir, for the LBO related cause

15  of action?

16  A     It's the number again in the circle.  In this case

17  it's $1.57 billion.

18  Q     Okay.  So you we've looked at four trees.  It looks

19  like a pretty complicated analysis to me.  Is this the most

20  complicated decision tree you've ever done, sir?

21  A     Not even close.

22  Q     Okay.  What do you mean not even close?

23  A     Well, I've done analyses where there were multiple

24  claims in multiple venues both domestic and international.

25  There were just millions and millions of outcomes.  And it

1  took awhile for the computer to crank through that, so this

2  is not particularly complicated.

3  Q     And despite that complexity, your client relied on it

4  for purposes of making decisions related to settlement?

5  A     Absolutely.

6  Q     Okay.  Sir, did you prepare an expert report in this

7  case?

8  A     I did.

9  Q     Can you please turn in your binder to Tab 2.  It's a

10  document that's marked NPP 2476.  Do you recognize that as a

11  copy of your opening expert report, sir?

12  A     I do.

13          MR. HURLEY:  Okay.  Your Honor, at this time, the

14  noteholder plan proponents offer into evidence the opening

15  report of Dr. Beron.

16          THE COURT:  Is there any objection?

17          MR. SOTTILE:  Your Honor, the objection is on the

18  same basis as indicated earlier.  I understand that the

19  Court wishes to await cross examination to hear whether

20  there's a basis for the objection.

21          THE COURT:  All right.  I'll reserve ruling then.

22          MR. SOTTILE:  Thank you, Your Honor.

23  BY MR. HURLEY:

24  Q     Sir, in -- I want to turn now to some additional

25  detail about creating the trees.  Did you in creating the

1   trees make any choices that you viewed as conservative in

2   that they were not favorable to the noteholder plan

3   proponents?

4   A      I did.

5   Q      Okay.  And you've prepared some slides to illustrate

6   some of the choices you made, sir?

7   A      Yes.

8   Q      Okay.  And so I think the first slide we have relates

9   to the -- whether Step 2 debt is considered for Step 1.  Is

10  that right?

11  A      That's correct.

12  Q      Okay.  And do you recognize that slide?  I think we

13  have that up there.

14  A      Yes.

15  Q      Okay.  So can you explain for the Court what

16  conservative assumption you made with respect to the

17  question of whether Step 2 is considered with -- sorry.

18  Whether Step 2 is considered in assessing the tests on Step

19  1?

20  A      Yes, as I said before, the examiner determined the

21  likelihood that Step 2 debt would be included in

22  consideration of each of the financial tests.  And he gave a

23  conclusion regarding the likelihood of the entities, either

24  the parent or the subs passing or failing those tests given

25  that Step 2 debt was included.  For both the -- well,

1  initially for Step 2 capital -- for capital adequacy, he did

2  not give a conclusion if the Step 2 debt were not included

3  and it was just Step 1 debt.

4  Q    So how did you handle the fact that he didn't reach a

5  conclusion about those two tests in the event where the Step

6  2 debt is not included?

7  A    We gave a 100 percent chance of success to the LBO

8  lenders or 0 percent chance of the non-LBO creditors

9  prevailing on that particular issue.  Where he did make --

10 where he made no determination of that likelihood.

11 Q    And the circles that just came up represent the nodes

12 where you zeroed out the -- or where you made this choice?

13 A    Yes.

14 Q    Okay.  And what about with respect to the test related

15 to intent to pay or to incur debt?

16 A    Same set of circumstances.  He gave his determinations

17 of the likelihood of passing that test for if Step 2 debt

18 were included, but he failed to give those conclusions where

19 Step 2 debt wasn't included.  So again, we assigned zero to

20 the failing of the test or 100 percent to passing of the

21 test.

22 Q    And the circles have just appeared to highlight those

23 choices?

24 A    That's correct.

25 Q    Sir, do you have understanding of what effect these

1  choices that you made have on the ultimate amount of

2  expected value in the case?

3  A    Yes, it lowers the likelihood of the avoidance

4  scenarios that were considering and so, therefore, it lowers

5  the expected value.

6  Q    Okay.  And let's move to the next slide which I think

7  we go back to the table that we spent some time talking a

8  few moments ago that was at the bottom of the recovery tree.

9  A    Yes.

10 Q    Can you please explain for the Court what conservative

11 assumptions you made in connection with this part of your

12 trees?

13 A    Well, you'll notice for both scenarios, A through D

14 have only a single scenario in them. Scenarios E, F, and G,

15 in fact, have multiple scenarios.  And what those scenarios

16 represent are a situation in which there's a finding of

17 intentional fraudulent conveyance at Step 2 and there is

18 either no or partial avoidance findings at Step 1.  So we

19 included them in here, but we took no credit for those

20 partial avoidance scenarios further on in the tree.  And

21 that's, in fact, in scenario -- excuse me, in Branch G where

22 it says none, we have 15 scenarios and for those we took no

23 credit beyond the natural recoveries.

24 Q    And again, sir, do you have an understanding of what

25 effect those choices have on the ultimate expected value in

1  this case?

2  A    Yes, it's lowers the likelihood of the initial

3  findings and essentially the lowering of the expected value

4  of the recoveries.

5  Q    Okay.  And I think you have two more conservative

6  assumptions slides.  Let's move to the next one.  Can you

7  please explain for the Court, the slide here is titled

8  conservative assumptions #4 and 5, equitable disallowance

9  and subordination.  First, I don't think we've seen this

10  tree before.  Can you just identify for the Court what it

11  is?

12  A    It's the combination of relevant examiner's

13  conclusions relating to a finding and application of a

14  equitable disallowance of debt or equitable subordination of

15  debt.

16  Q    And where -- do the conclusions from this chart appear

17  anywhere on the large recovery chart that we looked at for

18  some time?

19  A    Well, in these two particular cases, the combinations

20  of the one particular scenario we considered for recoveries

21  is on that chart.

22  Q    Okay.  And can you explain what the conservative

23  choice was that you made here?

24  A    Yes.  Well the examiner determined that it was

25  somewhat unlikely that there would be equitable disallowance

1   of the debt, but there was a further step which was whether

2   the acts of the lead banks would be attributable to all the

3   LBO lenders.  If he said yes, we took credit for the

4   disallowance or included that in the calculation.  If he

5   said no, we said essentially that there would be no

6   disallowance even though my understanding is the lead banks

7   whose acts are responsible for the disallowance, still hold

8   significant debt and could have been included, but we did

9   not include that for recovery.

10  Q    Thank you, sir.  And again, do you have an

11  understanding of what effect the choices you made here have

12  on the expected value in this case?

13  A    Yes.  The -- there are recoveries that we -- there is

14  some likelihood of our having received of the non-LBO

15  creditors having received and we did not take credit for

16  those so it lowers the expected value.

17  Q    Okay.  Let's move to the next and final slide you

18  prepared here on conservative assumptions.  It says across

19  the top conservative assumption #6, 548c defense.  And this

20  is another tree that we haven't see before yet, sir, but

21  it's one of the ones referenced in your initial slide.  Is

22  that right?

23  A    Yes, that's correct.

24  Q    And can you explain for the Court what conservative

25  assumption you made in putting the 548c tree together?

1  A      Well, my understanding is is that if there's a

2  determination of the agents lack of good faith.  There's an

3  issue of whether that lack of good faith is imputed to all

4  of the subsequent holders of the debt.  The examiner thought

5  that it was highly likely to occur, but if it didn't occur,

6  again, the agents still hold, I understand, significant

7  amounts of debt, but we took no credit for any potential

8  recoveries against those avoidance of those claims.

9  Q      And again, do you have an understanding of what effect

10 this choice has on expected value?

11 A      Yes.  Again, we omitted possible recoveries which

12 would have increased the expected value.  So by omitting

13 them -- well, actually in this one, excuse me.  In this one,

14 this is -- this tree is used to calculate the expected value

15 of conferred debt that the lenders would be allowed to

16 retain.  And so the effect of this is to increase the

17 likelihood of a finding of good faith which increases the

18 conferred value which, therefore, reduces the recoveries.

19 Q      Thank you, sir.  Sir, I want to move onto another

20 topic briefly.  You testified earlier today, that Aurelius

21 provided you with recovery calculations that are plugged

22 into your model, right?

23 A      That's correct.

24 Q      Now, sir, other than supplying you with those

25 calculations, did Aurelius provide any other input into your

1    analysis?

2    A       They did not.

3    Q       Okay.  Since being retained, I think you said it was

4    November, right?

5    A       Correct.

6    Q       Since being retained up to the time that you filed

7    your reports in this case, sir, how many times have spoken

8    with any representative of Aurelius?

9    A       Once.

10   Q       Okay.  And who did you speak with?

11   A       Matt Zloto.

12   Q       Is Matt Zloto a senior person at Aurelius?

13   A       My understanding from his age and function is that

14   he's an analyst.

15   Q       Okay.  How long did you talk to Mr. Zloto?

16   A       I think it was about an hour meeting.

17   Q       Did you talk about anything other than the Aurelius

18   waterfall model?

19   A       No.

20   Q       Okay.  During that same period of time, sir, from the

21   time you were engaged until the time you put in your reports

22   in this case, did you ever communicate in any way with Dan

23   Gropper?

24   A       I did not.

25   Q       Did you ever communicate in any way with Mark Brodsky?

1  A      I did not.

2  Q      Okay.  Did you in preparing your trees include,

3  exclude, or change anything at the instruction of Aurelius?

4  A      I did not.

5  Q      Did Aurelius ever ask you to include, exclude, or

6  change anything in the construction of your trees?

7  A      They did not.

8  Q      Okay.  Now I'd like to turn to a few questions

9  regarding an expert report filed by one of the DCL plan

10 proponents consultants.  You're aware that Professor Black

11 filed a report in this case, sir?

12 A      I am.

13 Q      Okay.  And you had a chance to review Professor

14 Black's report?

15 A      I did.

16 Q      Now among other things, Professor Black purported to

17 use some kind of probability analysis.  Is that right?

18 A      That's correct.

19 Q      Okay.  And in your review of his report, did you

20 identify any flaws in his approach to that analysis?

21 A      I did.

22 Q      Okay.  And I think you've prepared a slide that lists

23 some of the flaws that you identified?

24 A      Yes.

25 Q      Okay.  And could you please just quickly take the

1  Court through these flaws and we'll take them one at a time?

2  A     Yes.  The first thing is that Professor Black used

3  both for his own assignment of likelihoods and for those of

4  the examiner, he used a range of probabilities instead of

5  single probabilities.

6  Q     Okay.

7  A     The second one is that, in fact, he didn't follow the

8  examiner's conclusions, he actually second guessed the

9  examiner and came to his own conclusions.  The third one is

10  that it was apparent to me that he did not use decision

11  trees in calculating his expected value.  And as a result of

12  that or I'm not sure why, but he ended up modeling less than

13  all of the possible litigation outcomes.

14  Q     Thank you, sir.  Let's go through these one at a time.

15  The first one you criticized him for using ranges of

16  probabilities instead of a fixed probability, right?

17  A     That's correct.

18  Q     So just before we get to whether that's appropriate or

19  not, I just want to make clear I understand that the DCL

20  plan proponent's own expert did seek to assign numerical

21  probabilities to the examiner report?  That's your

22  understanding?

23  A     Yes.

24  Q     Okay.  And do you have an understanding of how the

25  general ranges that he put together compare in terms of, you

1   know, the amounts that he assigned to the probabilities that

2   you assigned?

3   A      Yes.

4   Q      Okay.  And you've prepared a slide that compares them

5   side by side?

6   A      Yes.

7   Q      Okay.  And we have that slide, please?

8   A      I do.

9   Q      Okay.  So why don't you explain for the Court what

10  this chart is illustrating.

11  A      Well this is the left column are the base set of

12  probabilities that I assigned and the right chart is the

13  range of probabilities that Professor Black assigned to the

14  examiner's conclusions.  And they're in general agreement

15  but, in fact, if you compared these to my spread set, the

16  midpoint of Professor Black's range corresponds virtually

17  identically to my spread set.

18  Q      Okay.  And you said before he used a range, you used a

19  fixed point.  In your view is it appropriate to use

20  probability ranges in decision tree analysis rather than

21  fixed probabilities?

22  A      It is not.

23  Q      Why is that?

24  A      Well, the whole point of decision analysis is to

25  express a judgment about the likelihood of an outcome of a

1    particular event as a number which is the best estimate of

2    the likelihood of that event.  And so the result is that you

3    get an unambiguous conclusion of all of those assumptions.

4    Using a range is like using a verbal probability because it

5    can be interpreted various ways.

6    Q    Now, sir, in your 30 plus years of experience, have

7    you ever used ranges rather fixed probabilities in creating

8    a decision tree?

9    A    I have not.

10   Q    Okay.  Are you aware of any decision tree experts that

11   use ranges rather than fixed percentages?

12   A    I am not.

13   Q    Now you said you read the report and did Black,

14   Professor Black try to evaluate, do some kind of expected

15   value calculation using his ranges that he assigned the

16   examiner report?

17   A    Yes, he did.

18   Q    Did he use the midpoint of the ranges?  How did he go

19   about doing it?

20   A    Well, again, one of the criticisms of ranges is that

21   he was able to pick within each range which -- what

22   probability he wanted to assign to which conclusions to the

23   examiner's report and, in fact, there were one or two

24   instances where he actually used a number that was outside

25   of his assigned range for the examiner's conclusion.

1    Q     Sir, did you do anything to test what the expected

2    value outcome would be if you plugged in Dr. Black's

3    midpoint of his ranges, rather than using arbitrarily

4    selected parts of the range?

5    A     I did.

6    Q     Okay.  And did you reach a conclusion?

7    A     Yes, I did.

8    Q     And what was the conclusion?

9    A     That it was -- the results of that were not materially

10   different from my spread set which was, in fact, not

11   materially different from my base set of probabilities.  So

12   it was essentially the same expected value that I had

13   calculated.

14   Q     Okay.  When you say essentially the same, using the

15   Black midpoint in your tree was the expected value greater

16   than $1.5 billion?

17   A     I don't remember the exact number, but it was very

18   close.

19   Q     Okay.  And the next criticism I think you identified

20   was the Black second guess of the examiner's conclusions.

21   And why don't you explain for the Court what you mean by

22   that.

23   A     Well, as I say, the examiner assigned his verbal terms

24   to each of the findings of intentional fraudulent

25   conveyance, the elements of constructive fraudulent

1    conveyance, and the various defenses and remedies.

2    Professor Black went through and assigned his own verbal

3    probabilities and then subsequently picked a numerical

4    probability from that range to apply to the findings

5    necessary to determine a recovery.

6    Q      So Black assigned a second set of probability ranges?

7    A      That's correct.

8    Q      Okay.  And different than the probability ranges that

9    Black himself had assigned to his understanding of the

10   examiner report?

11   A      Yes, he defined a second set of terms that he used and

12   that he applied to the conclusion to determine a recovery.

13   Q      And did Black's own probabilities depart in any way

14   from the Black assignment of probabilities to the examiner

15   report?

16   A      Yes, quite significantly.

17   Q      Okay.  Now directionally, sir, do you have an idea of

18   whether Black's departures from the probabilities he

19   assigned, he himself assigned to the examiner report verbal

20   statements, but directionally again, tended to favor the DCL

21   plan proponents view of the world or the noteholder plan

22   proponents view of the world?

23   A      They greatly favored the DCL proponents.

24   Q      Okay.  And have you prepared a slide illustrating

25   Black's departures, Professor Black's departures from the

1   probabilities that he himself assigned to the examiner

2   conclusion?

3   A      I have.

4   Q      Okay.  Can we see that slide?

5   A      Yes.

6   Q      And this is the slide?

7   A      Yes, it is.

8   Q      Okay.  Can you explain for the Court what this slide

9   illustrates, sir?

10  A      Well, this again, represents the difference between

11  the midpoint of the probability that Professor Black

12  assigned to the examiner's conclusion regarding particular

13  issues and the midpoint of his own range of the term --

14  excuse me, the mid-range of the particular term that he

15  assigned to the same issue.

16  Q      So these are Black's departures from his own view of

17  what the examiner thought with respect to these issues?

18  A      That's correct.

19  Q      Okay.  Now I see there some of the bars are green and

20  some of them are red or pink.  First of all, what are the

21  green bars?

22  A      The green bars represent the midpoint of his range

23  being greater than the midpoint of Professor Black's own

24  range being of the term that he assigned being greater than

25  the midpoint of Professor Black's probability of the

1    examiner's term.

2    Q     And which side do the green bars favor, sir?

3    A     The green bars favor the non-LBO creditors.

4    Q     Okay.  What about the pink bars?  What are those?

5    A     They are favorable to the LBO lenders.

6    Q     Fair to say Professor Black's judgments overwhelmingly

7    favor the DCL in his report?

8    A     Yes.

9    Q     Now, sir, you mentioned before you're not a lawyer.

10   Did you in your analysis try and second guess the examiner?

11   A     No, I did not.

12   Q     Did you try and determine whether the examiner was

13   right or wrong?

14   A     I did not.

15   Q     Okay.  Now, sir, at your deposition and I think you

16   mentioned that it was the first time you've ever been

17   deposed?

18   A     Yes.

19   Q     Okay.  In your deposition, you were asked a question

20   and something along the lines of, you know, does your

21   analysis reflect reality?  And I think you gave an answer

22   along the lines of that you're -- you didn't model reality,

23   you modeled the examiner report.  Do you remember that?

24   A     Yes.

25   Q     Okay.

1    A      Vividly.

2    Q      Can you explain for the Court what you meant by that?

3    (Laughter)

4            DR. BERON:  Yes.  My assignment was to model the

5    conclusions of the examiner's report.  It was not to make

6    any judgments about how well the examiner had done his job.

7    It was to accurately reflect what the examiner had said.

8    BY MR. HURLEY:

9    Q      And do you have any opinion about whether the examiner

10   was right or wrong?

11   A      I do not.

12   Q      Okay.  Now sometimes when you do this type of analysis

13   in your practice, I take it that you speak to your client

14   about various aspects of the case.  And I guess you weren't

15   able to speak to the examiner in this case, right?

16   A      No, I was not.

17   Q      Okay.  Are there any sort of benefits to the approach

18   that you were able to take here as compared to the way you

19   sometimes approach these matters?

20   A      Well, normally, when I'm -- when I work for my

21   clients, I'm working for an advocate for one side or the

22   other.  And advocates tend to have a somewhat bias view of

23   the world.  And so I have to spend a fair amount of my time

24   sort of countering those biases of advocacy.  The nice thing

25   about this case was that I was dealing with a metaphorical

1  client and was a completely neutral observer.

2  Q    Thank you, sir.  Now let's return to your final couple

3  of criticisms that you listed of the Professor Black report.

4  The next line, I think is that Professor Black did not use

5  decision trees in his analysis.  Is that right?

6  A    That's correct.

7  Q    And what's your basis for believing he did not?

8  A    Well, he made -- my general impression that it was an

9  expected value calculation done in a piecemeal, excuse me,

10  and not very consistent fashion.  It would have been very

11  easy even doing it in a piecemeal fashion to use decision

12  trees to calculate partial calculations that he did, but it

13  was clear to me that he did not use that either there or in

14  determining a set of litigation outcomes which would lead to

15  recoveries.

16  Q    Sir, I'll represent to you that at the trial and in

17  his deposition, Professor Black testified that he did

18  decision trees, but he did them in his head.  What's your

19  view of doing decision trees in your head?

20  A    It's extremely difficult.  I mean if -- I've been

21  doing this for 30 years, I'm very quantitative and if

22  anything gets much beyond that Claim 1 or Claim 2 example we

23  did before, I always sort of sketch out the tree and put in

24  some probabilities to make sure I'm doing it right because

25  if you don't, there's just too many ways to make mistakes or

1    probabilities don't work quite in the way you think they

2    would.  And so you're very likely to make a mistake.

3    Q    Now, sir, in your experience and in your view, would

4    it even be possible to do a reliable decision tree on the

5    facts that you analyzed in this case in your head?

6    A    Well, as I say, I am very quantitative and I would

7    have trouble with more than four or five branches and we had

8    82 in the first and 25 in the second, and ended up reducing

9    those to 48 possible ones, so it's highly unlikely that

10   anyone that I'm aware of could even approximate the right

11   answer in their head.

12   Q    Thank you, sir.  Let's turn to the, I guess the final

13   criticism on your list which was that Black didn't model all

14   of the possible litigation outcomes.  Can you explain what

15   you mean by that?

16   A    Well, he picked just six avoidance scenarios which he

17   claimed were added up to 100 percent.  And those are

18   represented -- oh, excuse me.

19   Q    Sure.  And you prepared a slide that illustrates this?

20   A    I prepared a slide to --

21   Q    Okay.  Let's see the next slide.  Is this the pie

22   chart slide --

23   A    Yeah.

24   Q    -- that you're referring to?  Okay.  And so, sir, what

25   are the six, I guess it looks like six pink wedges in the

1  pie represent?

2  A     Those are the six scenarios that Professor Black

3  represented covered all of the litigation outcomes and whose

4  likelihoods added up to 100 percent.

5  Q     Okay.  And what's the green wedge of the pie?

6  A     Well, those are the -- by my calculations using

7  Professor Black's own assignments in my tree, those is --

8  that's the 36 percent of the probability of all of the

9  outcomes that were not included in those six scenarios.

10  Q     Now when you say 36 percent, do you mean that there

11  are 36 litigation scenarios that were omitted or what does

12  that mean?

13  A     No, it just means that of all the possible outcomes,

14  36 percent of the probability is not included.

15  Q     Okay.  In your experience, sir, is it appropriate or

16  reliable to create a chart that omits nearly 40 percent of

17  possible litigation scenarios?

18  A     Absolutely not.  There's no way to make an accurate

19  determination of expected value if you leave out A, that

20  much probability and B, not knowing what the scenarios that

21  you've left out are.

22  Q     Sir, did you prepare a report that summarizes these

23  responses and others to Professor Black's opinion?

24  A     I did.

25  Q     Sir, if you could turn in your binder, please, to Tab

1   3.   And Tab 3 is a document that's been marked Exhibit NPP

2   0957.  Are you there?

3   A     Correct.

4   Q     Okay.  Do you recognize this as a copy of your

5   rebuttal report?

6   A     It is.

7          MR. HURLEY:  Okay.  And at this time, the

8   noteholder plan proponents offer the rebuttal report, Your

9   Honor.

10         THE COURT:  Is there any objection?

11         MR. SOTTILE:  Your Honor, the objection would be

12   on the same basis that to the extent it relies on the

13   Aurelius' waterfall model, I'd like an opportunity to

14   explore that on cross examination.

15         THE COURT:  And does it rely on Aurelius'

16   waterfall model?

17         MR. SOTTILE:  Your Honor, in part, I believe it

18   does.

19         THE COURT:  I'll reserve ruling.

20   BY MR. HURLEY:

21   Q     So, we're almost there, Dr. Beron.  So let's just come

22   back to some of the conclusions that you reached with

23   respect to the value of the claims that the DCL plan

24   proponents seek to settle.  First, you mentioned before that

25   you familiarized yourself generally with the terms of the

1    proposed settlement.  Is that right?

2    A     Yes.

3    Q     And what's your understanding generally of the terms?

4    A     That there is cash and the natural recovery

5    consideration being offered to the non-LBO creditors to

6    settle the particular claims that I analyzed.

7    Q     And what's your understanding of what the amount of

8    that cash is?

9    A     That's -- well, including the natural recovery it's

10   $565 million.

11   Q     Okay.  And you're aware that the plan that's being

12   proposed includes a litigation trust component that will

13   includes claims that will survive.  Are you aware of that?

14   A     Yes.

15   Q     Okay.  And why is that when you identify the

16   settlement consideration, you're not making reference to the

17   trust claims?

18   A     Because those -- the trust claims are related to other

19   issues not related to the amount that's offered to settle

20   the claims that I analyzed so I did an apples to apples

21   comparison.

22   Q     Okay.  Sir, in your analysis, did you put together

23   some conclusions about the likelihood that if the LBO claims

24   against the lenders proceed, that the pre-LBO creditors will

25   receive more consideration than is contemplated under the

1  proposed settlement?

2  A      I did.

3  Q      Okay.  Can we see that slide?  Is this the slide that

4  you put together, sir?

5  A      Yes.

6  Q      Okay.  Would you please starting, I guess with the

7  probability of the proposed settlement, can you identify for

8  the Court what this slide is telling us?

9  A      Well, let's start with the first highlighted bar.

10  What this says is that the probability that the non-LBO

11  creditors would recover more than or equal to the proposed

12  settlement is 74 percent.

13  Q      Okay.  And why don't you just proceed down the chart.

14  A      Okay.

15  Q      And --

16  A      Okay.  The probability of a recovery greater than $1

17  billion is 67 percent.  The probability of greater than $1.5

18  billion is 66 percent.  The probability of recovery greater

19  than $2 billion is the same as the probability of full

20  recovery which because it's close to that is 57 percent.

21  Q      I'm sorry, why is it that the probability of $2

22  billion and the probability of full recovery are more or

23  less the same?

24  A      Because there's no outcomes that fall between the $2

25  billion and the full recovery.

1   Q     Okay.  Now you said that you calculated expected value

2   at $1.57 billion.  That is using the base case.  Is that

3   right?

4   A     That's correct.

5   Q     Okay.  You mentioned you used some sensitivities and

6   did you prepare a slide illustrating the sensitivities you

7   made?

8   A     I did.

9   Q     Okay.  Can you pull that up?  Is this the slide you're

10  referring to, sir?

11  A     Yes, it is.

12  Q     Okay.  First, why don't you explain how the

13  sensitivities that you mentioned before are illustrated on

14  this slide?

15  A     Well, at the bottom, you see three sets of bars.  The

16  middle one is the conclusion -- the results of the

17  calculation based on my base set.  The set of bars to the

18  left are the expected values calculated related to my

19  contracted -- using my contracted set.  And the bars on the

20  right are related to the -- or result from the use of the

21  spread set.

22  Q     I see that there -- the bottom is a reference to high

23  PHONES and low PHONES.  Can you just explain quickly your

24  understanding of why that's in here?

25  A     My understanding is there is a dispute related to the

1   PHONES notes and if the -- it has a high value then, in

2   fact, the recoveries are higher.  And if it's got a low

3   value, the recoveries are lower.

4   Q     Do you have a view as to whether it should be the high

5   PHONES or the low PHONES?

6   A     Absolutely none.

7   Q     And no opinion on which one is right?

8   A     Correct.

9   Q     Okay.  So you model --

10          THE COURT:  That makes two of us.

11  (Laughter)

12  BY MR. HURLEY:

13  Q     Okay.  And so I'll return you to -- you mentioned the

14  expected value is $1.57 and I see it appears on one of these

15  bars.  How did you select this bar as your identified

16  expected value because obviously there are a couple of other

17  numbers here.

18  A     Well, again, in order to be conservative given that

19  there were two sets of numbers, we picked the lower number

20  which is the low PHONES scenario.  And this is essentially

21  determined by the base set of probabilities that I used.

22  Q     Okay, sir.  Now what's your understanding using

23  absolute dollar terms of what the dollar difference is

24  between the settlements being proposed here and your

25  expected value?

1  A     It's about $1 billion.

2  Q     And I guess the settlement that they're proposing is

3  about a third of the expected value?

4  A     Roughly.

5  Q     Okay.  Now, sir, based on your more than 30 years of

6  experience, do you have an opinion as to whether or not that

7  settlement is reasonable?

8  A     I do.

9  Q     And what is that opinion, sir?

10  A     It is not.

11  Q     Is it close to reasonable?

12  A     Not even close.

13  Q     Okay.  In your 30 years of experience, have you ever

14  recommended that a client agree to a proposed settlement

15  this different than your calculated expected value?

16  A     I have not.

17  Q     If advising a plaintiff, have you ever recommended

18  that a plaintiff agree to accept payment that's equal to

19  just one-third of the expected value of the claims they're

20  releasing?

21  A     I have not.

22  Q     Half of the expected value of the claims being

23  released?

24  A     No.

25  Q     Seventy-five percent of the expected value?

1  A     Not that I can recall, no.

2           MR. HURLEY:  Thank you, sir.

3           THE COURT:  We'll take a ten minute recess.

4  (Recess from 2:58 p.m. to 3:08 p.m.)

5           THE CLERK:  All rise.  Be seated, please.

6           THE COURT:  Cross examination?

7           MR. SOTTILE:  Thank you, Your Honor.

8                    CROSS EXAMINATION

9  BY JAMES SOTTILE:

10 Q     Good afternoon, Dr. Beron.

11 A     Good afternoon.

12 Q     Dr. Beron on direct examination, you were asked a

13 question about whether or not Aurelius Capital Management

14 ever told you to include, exclude, or change anything in

15 your report.  Do you recall that question?

16 A     Yes.

17 Q     And you said no, isn't that right?

18 A     That's correct.

19 Q     Isn't it true that Akin Gump, counsel for Aurelius

20 Capital Management did instruct you to change things in your

21 analysis?

22 A     I wouldn't characterize it as instructing me to change

23 things in the analysis.

24 Q     Uh-huh.

25 A     The analysis was developed in collaboration.  As I

1  say, I am not an expert on the law.  I propose various

2  structures to represent what was happening in the tree.  We

3  discussed where it was appropriate to put various remedies

4  and equitable disallowances under the various avoidance

5  scenarios.  And we had back and forth discussions on those.

6  And I did mention there was one spot where, in fact, I had

7  proposed an interpretation which they instructed me I had

8  misread the conclusions and so I did the -- an alternative.

9  Q    You accepted the instruction to change your initial

10  model?

11  A    It was not an instruction.  They informed me that I

12  had misinterpreted what the examiner had said and so I did a

13  different structure.

14  Q    Okay.  Let's focus in on exactly what the subject

15  matter was of this discussion with Aurelius' counsel, Akin

16  Gump.  Can you turn to Page 31 of your report, sir, which I

17  believe in the binder of exhibits that was handed to you is

18  behind Tab #2.

19  A    Page 31.

20  Q    I actually want to focus, sir, on the decision trees

21  that appear on the page following Page 31 which misleadingly

22  is not Page 32.

23  A    Yes, yes.

24  (Laughter)

25  BY MR. SOTTILE:

1    Q      Do you have that page in front of you, sir?

2    A      I do.

3    Q      And I want to look in particular at the trees at the

4    bottom of the page.  They're titled step one participation

5    in distributions and recoveries.  Do you see that, sir?

6    A      Yes.

7    Q      And I want to make sure we understand what the subject

8    matter of these trees is.

9    A      Okay.

10   Q      This is an effort to model the examiner's conclusion

11   about whether if the Step 2 debt were avoided, the Step 1

12   debt was not avoided, the Step 1 debt would be able to

13   participate in distributions and recoveries of disgorgement

14   amounts arising from the avoidance of Step 2.  Do I have

15   that right, sir?

16   A      Yes.

17   Q      Okay.  And isn't it correct, sir, that when you

18   originally proposed the decision tree that appears at the

19   bottom of the page, that is the one that's headed on the

20   left under avoidance outcome FT2, all entities, and then has

21   the heading S1 participation in distributions and

22   recoveries, when you originally proposed this to Akin Gump,

23   it didn't look like this.  Isn't that right?

24   A      That's correct.

25   Q      Okay.  And, in fact, the way it looked was that you

1  had different probabilities for the chance that that

2  conclusion that the examiner referred to would apply to

3  distributions as opposed to recoveries.  Isn't that right?

4  A     Yes.

5  Q     Okay.  And in particular, you relied in your initial

6  reading of the examiner's conclusion in this issue on some

7  text that is quoted further on in your report on Page 40,

8  its conclusion that you've number C30?  Do I have that

9  right?

10  A     That's correct.

11  Q     Okay.  And could you read aloud, sir, the first

12  sentence that appears under -- next to the heading C30 on

13  Page 40?

14  A     Yes.  It is reasonably likely that if Step 2 debt, but

15  not Step 1 debt is avoided absent an otherwise applicable

16  basis to subordinate or disallow the Step 1 debt or assert

17  rights of unjust enrichment, the Step 1 debt would

18  participate in distributions from the estates in accordance

19  with applicable non-bankruptcy priorities, although a

20  question exists whether the Step 1 debt would participate in

21  any recoveries of payments made in connections with

22  avoidance of the Step 2 transactions.

23  Q     Now when you first read this, you thought the

24  reasonably likely finding by the examiner applied to the

25  question of the Step 1 lenders participating in

1   distributions following avoidance of Step 2.  Isn't that

2   right?

3   A      I believe so.

4   Q      All right.  Whereas, when you first read it, you

5   thought that the examiner's conclusion as to whether Step 1

6   debt would participate in recoveries following the avoidance

7   of Step 2 was something he left in equipoise.  Correct?

8   A      That's correct.

9   Q      And is it correct that in your original construction,

10  that would result in an expected value lower than the

11  construction you ultimately adopted for your decision tree?

12  A      Yes, but I have no idea how much.

13  Q      All right.  Dr. Beron, is it correct that after you

14  presented a tree that dealt differently with the likelihood

15  the Step 1 lenders would participate in the distributions

16  than recoveries, you had a discussion with Akin Gump,

17  counsel for Aurelius on that subject?  Is that right, sir?

18  You need to speak aloud.

19  A      Yes.  Oh, I'm sorry, yes.

20  Q      And is it correct, sir, that they told you you had

21  misinterpreted the examiner's report on this issue?

22  A      That's correct.

23  Q      Now is it correct that they also told you that there

24  was uncertainty about just what it was the examiner had

25  concluded on this issue?

1  A     That is correct.

2  Q     And they told you you should resolve that uncertainty

3  by treating the conclusions of the examiner about Step 1

4  debt participating in distributions and recoveries as the

5  same, both equipoise.  Isn't that right, sir?

6  A     That is correct.

7  Q     And you thought that the approach they described to

8  you was at least a possible interpretation, right?

9  A     I did.

10  Q     But you weren't persuaded they were right of your own

11  judgment.  Isn't that so, sir?

12  A     I have no judgment about the interpretation of these

13  things in terms of legal or financial matters.

14  Q     And you thought they were applying some legal

15  principal that they were -- that was the basis for their

16  comment to you?

17  A     We didn't discuss.  They said the interpretation was

18  ambiguous and this was the proper way to model them.

19  Q     And since it was an ambiguous interpretation, they

20  told you to model it in a way more favorable to Aurelius.

21  Isn't that right?

22  A     It turned out that way, yes.

23  Q     Well you knew it would turn out that way didn't you

24  before they said so?  You knew that would be more favorable

25  to Aurelius?

1  A    I hadn't see any recovery numbers at that point so --

2  but directionally it would probably go that way.

3  Q    Well it had to go that way, didn't it, sir?

4  A    Yes.

5  Q    Thank you.  Dr. Beron, I think that I heard you say on

6  direct that you focused your evaluation of the examiner's

7  report on his conclusions.  Do I have that right?

8  A    That's correct.

9  Q    Okay.  And generally, you didn't look at his

10 explanations or rely on his explanations for his

11 conclusions.  Do I have that right?

12 A    That's correct with this one exception.

13 Q    This was an exception to the general practice?

14 A    Yes.

15 Q    Okay.  And the exception is that in this case, the

16 statement about what was in equipoise didn't appear in the

17 examiner's conclusions.  Isn't that right?

18 A    That's correct.

19        MR. SOTTILE:  Your Honor, may we approach with a

20 copy of Volume 2 of the examiner's report for the witness?

21        THE COURT:  Yes.

22        MR. SOTTILE:  Does the Court and Clerk need

23 copies?  We have them available, if the Court does not have

24 them.

25        THE COURT:  I have them.

1          MR. SOTTILE:  Thank you, Your Honor.

2   BY MR. SOTTILE:

3   Q     Dr. Beron, could you turn in Volume 2 of the

4   examiner's report to Page 298?  And let me know when you're

5   there, sir.

6   A     I'm there.

7   Q     And under the heading examiner's conclusions on this

8   page, do you see that the last sentence under examiner's

9   conclusions is the same sentence that I had you read aloud

10  from Paragraph C30 of your report, the one that starts, "it

11  is reasonably likely"?

12  A     Yes.

13  Q     Okay.  And that sentence ends with the phrase,

14  "although a question exists whether the Step 1 debt would

15  participate in any recoveries of payments made in connection

16  with avoidance of the Step 2 transactions."  Isn't that what

17  it says?

18  A     That's correct.

19  Q     Okay.  There was no question expressed in the

20  conclusions about the participation of the Step 1 debt in

21  distributions, right?

22  A     That is -- excuse me, repeat the question again.

23  Q     Of course.  We just read the last phrase of the

24  sentence.

25  A     Um-hum.

1    Q    Which says that there's a question whether the Step 1

2    debt would participate in recoveries of payments made in

3    connection with avoidance of the Step 2 transactions, right?

4    A    Correct.

5    Q    And this sentence doesn't indicate that there is a

6    similar question with respect to whether the Step 1 debt

7    participates in distributions, does it?

8              MR. HURLEY:  Objection, Your Honor.

9              THE COURT:  Basis?

10             MR. HURLEY:  I think he may have misread and he

11   said the wrong word.  It reads distributions not recoveries.

12             MR. SOTTILE:  Well, I'm sorry, I'm not certain

13   what exactly I said.  Why don't I rephrase the question in

14   case I have created some error or ambiguity.

15             THE COURT:  Mr. Hurley?

16             MR. HURLEY:  I withdraw the objection.

17             THE COURT:  All right.

18   BY MR. SOTTILE:

19   Q    Dr. Beron, do you have the question in mind or should

20   I restate it?

21   A    Please restate it.

22   Q    Of course.  Is it correct that the only question the

23   examiner identifies in this sentence has to do with whether

24   Step 1 debt which participate in recoveries of payments?

25   A    That's how it reads, yes.

1    Q    Yes, sir.  Can you now turn to Page 303 of the

2    examiner's report in Volume 2?

3    A    Um-hum.

4    Q    And in particular to the first sentence in the first

5    full paragraph.  And if you could read that aloud, the one

6    that starts because.

7    A    Because the law is not clear, the examiner leaves this

8    question in equipoise.

9    Q    Wouldn't you agree, sir, that the question left in

10   equipoise is whether the Step 1 lenders would participate in

11   recoveries, not distributions?

12   A    It can be read that way.

13   Q    Can it be read any other way, sir?

14   A    Yes.

15   Q    Please explain how else you could read this.

16   A    I was informed by counsel that that, in fact, referred

17   to both distributions and recoveries.

18   Q    So you read it to apply only to recoveries and counsel

19   told you no, you were wrong?

20   A    That's correct.

21   Q    Thank you.  And as a result, you changed the way you

22   originally modeled this issue.  Isn't that right, sir?

23            MR. HURLEY:  Objection, Your Honor, asked and

24   answered.

25            THE COURT:  Sustained.

1    MR. SOTTILE:  Thank you, Your Honor.

2   BY MR. SOTTILE:

3   Q    Can you turn to Volume 1 of the examiner's report,

4   sir?

5   A    Yes.

6   Q    I'm sorry, just one moment while I get the right

7   reference.  I'm sorry for the delay.  Page 24, sir, of

8   Volume 1.  All right, and let me know when you're there.

9   A    Yes.

10   Q    Okay.  I'm in the second full paragraph on the page,

11   the one that starts first the examiner concludes.  Are you

12   with me?

13   A    That's the third -- well, the second full paragraph,

14   yes.

15   Q    Yes, sir.  Turn to the last sentence if you would

16   there.  And could you read the sentence aloud and then I

17   have a couple of questions.

18   A    This is the one it is reasonably likely?

19   Q    Yes, sir.

20   A    It is reasonably likely that if the Step 2 debt, but

21   not the Step 1 debt is avoided absent an otherwise

22   applicable basis to subordinate or disallow the Step 1 debt

23   or assert rights of unjust enrichment, the Step 1 debt would

24   participate in distributions from the estate in accordance

25   with applicable bankruptcy -- non-bankruptcy priorities.

1    What the examiner leaves in equipoise, the question of

2    whether the Step 1 debt would participate in avoidance

3    recoveries if the Step 2 debt transactions are avoided.

4    Q     Would you agree with me that this sentence is

5    unambiguous?  That the question left in equipoise is whether

6    the Step 1 debt would participate in avoidance recoveries if

7    the Step 2 transactions are avoided?

8    A     As a non-expert that's a very reasonable

9    interpretation.

10   Q     Do you see any other way you would read it as a non-

11   expert, sir?

12   A     In my opinion?

13   Q     Yes, sir, that's what I'm asking.

14   A     But I'm not qualified to give an opinion in terms of

15   the interpretation of this either legally or financially.

16   Q     As an informed reader, sir, I'd be grateful.

17   (Laughter)

18            DR. BERON:  As an informed reader, that was my

19   first impression.

20   BY MR. SOTTILE:

21   Q     Thank you.  Do you know how much difference making

22   this change that Akin Gump asked you to make would result --

23   resulted in in your expected value?

24   A     I believed I looked at it.  I don't have a particular

25   thing, but I don't believe it was a significant difference.

1  Q     If I told you it was $76 million would that refresh

2  your recollection?

3  A     76?

4  Q     76, yes, sir.

5  A     That's probably reasonably close, but I couldn't tell

6  you that was the exact number.

7  Q     All right, but $76 million wasn't significant here?

8  A     Not in terms of my overall conclusions, no.

9  Q     Fair enough.  Dr. Beron, I want to turn to the subject

10 of how you used the examiner's report in your work, if I

11 may.  And I think you testified earlier that your focus was

12 on the conclusions, that's what you relied on and you didn't

13 rely generally at least on the explanations.  Do I have that

14 right?

15 A     That's correct.

16 Q     Okay.  Is it correct Dr. Beron that you would regard

17 it as important in your work to understand how conclusions

18 about the likely outcome of litigation fit together?

19 A     In terms of the interpretation of the logic of the law

20 and what pieces must be determined in what order to get to a

21 conclusion?

22 Q     Sure.

23 A     Yes.

24 Q     Okay.  It would be important, for example, to know

25 whether or not there was any chance of winning on a second

1  claim if you lost on a related claim on similar facts.

2  That's something you'd want to know, isn't it?

3  A    In -- are you asking me if I would want to know it or

4  if --

5  Q    If you'd want to know it in the course of your work as

6  an analyst doing the kind of work you do, sir.

7  A    Yes.

8  Q    Okay.  Is it correct that you couldn't discern what

9  those connections were between the examiner's conclusions as

10  a general matter because usually he didn't say what

11  connection there was between his conclusions?

12  A    Actually, in several circumstances, he did say what

13  the connections were between his conclusions and in some

14  cases he did not say.

15  Q    Okay.  And in the cases where he didn't say what

16  connection or what there was between his conclusions, you

17  don't know what he thought on the subject, do you?

18  A    There's no way to determine that.  He may have

19  included some connections and he may have not.

20  Q    Right.

21  A    And if he did include some connections, isn't it true

22  that the construction of your trees doesn't reflect the

23  examiner's conclusions properly?

24          MR. HURLEY:  Objection, Your Honor.

25          THE COURT:  Basis?

1          MR. HURLEY:  I think the witness has already

2    testified what his tree is based on and that it's based on

3    the conclusions and that's what he did in his expert report.

4          THE COURT:  Overruled.  You may answer, sir, if

5    you're able.

6          DR. BERON:  Could you repeat the question,

7    please?

8          MR. SOTTILE:  Could we read it back, please?

9          COURT REPORTER:  If he did include some

10   connections, isn't it true that the construction of your

11   trees don't reflect the examiner's conclusions properly?

12         DR. BERON:  So I'm trying to understand if this

13   is --

14         MR. SOTTILE:  Of course.

15         DR. BERON:  Or is this --

16   BY MR. SOTTILE:

17   Q    Well, it follows, sir from what I understand to be

18   your testimony that unless the examiner expressly stated a

19   connection between two of his conclusions, you don't know

20   what he thought about how they connected up.

21   A    That's correct.

22   Q    And so you don't know for example whether or not in

23   the examiner's view there was any chance of proving an

24   intentional fraudulent conveyance at Step 1 of the

25   transactions if no constructive fraudulent conveyance was

1  proved.  You just don't what he thought about that.

2  A      I -- he did not state specifically, but the order in

3  which he analyzed them and made no specific connections.

4  And if those -- that was an important connection, it would

5  not be unreasonable for him to state so.

6  Q      Can we pull up Page 109 of Dr. Beron's deposition

7  transcript?  Dr. Beron, do you recall that your deposition

8  was taken by me as it happens in this case a couple of weeks

9  ago?

10 A      Yes, I do.

11 Q      You understood that you were under oath at the time,

12 sir?

13 A      Yes.

14 Q      On Page 109 of your deposition at Line 10, the

15 following question was put and you gave the following

16 answer.  So isn't it true that you don't know whether or not

17 the examiner believed there was a connection between a

18 finding of constructive fraud and a finding of intentional

19 fraud?  Answer:  He did not so state in his conclusions.

20 Question:  So you don't know.  Correct?

21 A      Yes.

22 Q      Answer:  Correct.  That was truthful testimony then

23 and it's truthful testimony now.  Isn't that right, sir?

24 A      Correct.  And I don't believe that what I just said

25 disagrees with that.

1    Q      Reasonable minds might differ.  Can we pull up the

2    simple decision tree example that was used in the slides on

3    direct, please?  Dr. Beron, if you can look on the screen, I

4    think we have in front of you what was described as a

5    decision tree example, in particular Part 1.  Do you

6    recognize that to be the document you were taken through on

7    direct examination, sir?

8    A      Yes.

9    Q      And as I understand the factual situation that you're

10   reflecting in the tree, there are two claims, one and two.

11   Both of them lead to the same damages of $100.  Correct?

12   A      Correct.

13   Q      And in the way you've constructed this tree, the

14   outcome of those two claims is entirely independent of one

15   another.  That is the outcome of Claim 2 is not affected in

16   any way by how Claim 1 comes out.  Isn't that right?

17   A      That's correct.

18   Q      Okay.  And in -- so in this situation, whether you win

19   on Claim 1, that's the yes 30 percent line that starts at

20   the left, or you lose, you have the no, 70 percent, the

21   chance of winning on Claim 2 is exactly the same.  It's 60

22   percent no matter what happens on Claim 1.

23   A      That's correct.

24   Q      Okay.  Now this construction of the tree would be

25   wrong, wouldn't it if, in fact, liability can be found on

1  Claim 2 only in the event that the facts that would support

2  liability on Claim 1 are proved at trial.

3  A    If the facts -- that's generally correct, yes.

4  Q    Okay.  And in my scenario, the two -- the outcome of

5  the two claims would be dependent on one another.  Isn't

6  that right?

7  A    That's correct.

8  Q    And you'd have to model the tree differently as a

9  result?

10  A    That's correct.

11  Q    And, in fact, the way you would model it in my

12  hypothetical based on your tree is that if you took the no,

13  70 percent line at the bottom under Claim 1, the answer on

14  Claim 2 would be no, 100 percent, right?  That's what would

15  happen?

16  A    Let me go back to your hypothetical again.

17  Q    Of course.

18  A    The premise here is --

19  Q    You can't win on Claim 2 unless you prove at trial the

20  facts that would establish liability on Claim 1.

21  A    That would be correct.

22  Q    So if the situation was as I've just described it, the

23  expected value would drop from $72 to $30, right?

24  A    That's correct.

25  Q    So these are the kind of issues that are important to

1  understand when you're constructing a decision tree, how

2  claims are connected to one another, right?

3  A     As you've demonstrated, yes.

4  Q     All right.  And you try to understand how claims are

5  connected to one another in the course of your work

6  precisely because it has a huge potential impact on the

7  ultimate expected value.  Isn't that right?

8  A     As the examiner expressed them, yes, based on his

9  conclusions.

10  Q     But again, there are a number of cases where you don't

11  know what the examiner thought about the connections between

12  different claims, right?

13  A     Right.

14  Q     And when you can't find something in the examiner's

15  conclusions that tells you there's a connection, you assumed

16  there was no connection.  Isn't that right?

17  A     No, I assumed that either that the connection was not

18  stated explicitly, but he may, in fact, have taken that into

19  consideration when he expressed his conclusion.

20  Q     He may have, he may not, you don't know.

21  A     That's correct.

22  Q     Isn't that right?  Okay.  Let's look at a real world

23  example of this from the examiner's report.  In particular,

24  I want to focus on the subject matter of equitable

25  subordination and equitable disallowance.  You're familiar

1  with that as one of the matters that are analyzed in the

2  examiner's report?

3  A    I am.

4  Q    And I believe that is subject of some decision trees

5  that are contained in your report.  Could you turn, sir, to

6  Page 30 of your report?  And just let me know when you've

7  gotten to Page 30 in your report and I have some follow up

8  questions.

9  A    Okay.

10 Q    There is a description here in Items 4B and 4C of an

11 equitable disallowance decision tree and an equitable

12 subordination decision tree.

13 A    Yes.

14 Q    Do you see them sir?

15 A    That's correct.

16 Q    The actual trees appear on the page that follows Page

17 31?  Is that right?

18 A    That's correct.

19 Q    And the way in which those trees end in probabilities

20 is that you calculate the probability of each as 20 percent.

21 Correct?

22 A    That's correct.

23 Q    So there's a 20 percent chance as you read the

24 examiner's report that a Court will find equitable

25 disallowance to be the appropriate remedy and a 20 percent

1  chance that a Court will find equitable subordination to be

2  the right remedy.  Is that right, sir?  Am I reading it

3  correctly?

4  A      That's correct.

5  Q      Okay.  Turn to Page 11 of your report.  In particular,

6  I'm focusing on the first full paragraph of Page 11, the one

7  that starts the preceding analysis.  Are you with me?

8  A      Hang on, no, wrong page.

9  Q      I'm sorry.  Take your time, sir.

10  A      That's okay.  Okay.

11  Q      And I want to look at I believe it's the third

12  sentence that begins moreover.  Do you see it?

13  A      Yes.

14  Q      Could you read it aloud for us, sir?

15  A      Yes.  Moreover, based upon the examiner's conclusions,

16  there is a 30 percent -- 36 percent likelihood that the non-

17  LBO creditors would be successful in either equitably

18  disallowing or equitably subordinating all claims held by

19  the LBO lenders.

20  Q      And can you explain to the Court how it is that you

21  got from the 20 percent probability of each to a 36 percent

22  chance that one or the other would be found as an

23  appropriate remedy by a Court?

24  A      Well, if the way it's modeled in the tree, I

25  considered disallowance first.  And there's' a 20 percent

1   chance of that.  So if there's no disallowance, then we have

2   an 80 percent chance of an application of a 20 percent

3   chance of subordination which is 16 percent.  So 20 plus 16

4   is 36.

5   Q    And it also works the opposite way.  That is if you

6   had constructed the tree such that equitable subordination

7   came first, there would be a 20 percent chance of equitable

8   subordination, and then a -- you -- a 20 percent chance of

9   equitable disallowance.  And when you combine the

10  probabilities, the chance of getting one or the other would

11  be 36 percent.  Isn't that right?

12  A    Mathematically, yes.

13  Q    Yes.  Do you know whether or not there's any real

14  world possibility that a Court that has not found equitable

15  subordination will equitably disallow claims?

16  A    I have a general understanding of the relationship.  I

17  can't say it's -- I would rely on it.  I rely on counsel for

18  those things.

19  Q    Well, do you know whether in the real world if you

20  were trying a case and you were arguing for both remedies of

21  equitable subordination and equitable disallowance and the

22  Court found no, there's no basis for equitable

23  subordination, do you know whether or not there's any chance

24  that same Court would find equitable disallowance?

25          MR. HURLEY:  Objection.

1        THE COURT:  Sustained.

2        MR. SOTTILE:  Thank you.

3   BY MR. SOTTILE:

4   Q     I'd like to go now if I may to -- back to Volume 2 of

5   the Examiner's report, Dr. Beron.  And in particular, to

6   Page 339.  Just let me know when you've reached that, sir.

7   A     Okay.

8   Q     I'm focused on the top of the Page 339 under the

9   heading 4, examiner's conclusions and explanation concerning

10  equitable disallowance.

11  A     Yes.

12  Q     Are you with me, sir?

13  A     Yes.

14  Q     And am I correct that in constructing your decision

15  tree on equitable disallowance, you focused on the second

16  part of that sentence which reads and a Court is somewhat

17  unlikely to equitably disallow the LBO lender debt based on

18  any actions by the lead banks in connection with the Step 2

19  transactions?

20  A     Correct.

21  Q     Okay.  That's what led to the 20 percent probability

22  of equitable disallowance that's in your trees?  Is that

23  right?

24  A     With our conservative assumptions, yes.

25  Q     Yes.  And is it correct that given the way you worked

1  with the examiner's report, you relied only on this

2  conclusion sentence and not on the explanation sentence that

3  follows?  Is that right?

4  A      That's correct.

5  Q      Did you read the sentence the followed, the one that

6  appears under the hearing explanation of examiner's

7  conclusions while you were working on your report, sir?

8  A      Most likely.

9  Q      Could you read it now aloud, sir?

10  A      Yes.  The examiner reaches these conclusions for the

11  same reasons as his conclusions on the question of equitable

12  subordination.

13  Q      Dr. Beron, would you agree with me that given that the

14  examiner reached his conclusions on equitable disallowance

15  for the same reason he reached his conclusions on equitable

16  subordination, that he saw these as not independent?

17          MR. HURLEY:  Objection, Your Honor.

18          THE COURT:  Overruled.  You may answer if you're

19  able, sir.

20          THE WITNESS:  From a logical standpoint, in terms

21  of probability interpretation, not a legal interpretation,

22  one can use the same reasoning and come to a different

23  probability conclusion.  So it does not necessarily follow

24  that if he used the same reasoning, he would come to the

25  same conclusion probabilistically.

1  BY MR. SOTTILE:

2  Q    Would you agree with me that one reasonable

3  interpretation of this language is that the examiner didn't

4  see any chance of finding equitable disallowance if he had

5  not find equitable subordination?

6  A    I do not.

7  Q    I see.  That's because of the possibility you just

8  described; you might reach different conclusions for the

9  same reasons?

10  A    Yes.

11  Q    I see.

12  A    The -- excuse me.  Let me clarify that.  The

13  conclusions that I'm talking about are an expression of the

14  likelihood of something occurring and that does not

15  necessarily follow directly from A plus B plus C.  It is an

16  expression of judgment relating to the factors that he has

17  expressed.

18  Q    I see.  Dr. Beron, would you agree with me that if it

19  were true that the examiner believed that equitable

20  disallowance could only be found where the facts would also

21  support equitable subordination, that the chance of

22  obtaining either remedy in your analysis would fall from

23  thirty-six percent to twenty percent?

24           MR. HURLEY:  Objection, Your Honor.

25           THE COURT:  Overruled.

1          You may answer, sir, if you're able.

2          THE WITNESS:  Well, I think the implication here

3   is that there's some underlying behavior which was found and

4   then he gets to a conclusion regarding the likelihood of

5   equitable subordination and, again, there's not necessarily

6   a connection there.

7   BY MR. SOTTILE:

8   Q     I'm -- I'm asking you to assume the connection, sir.

9   A     Just -- explain the connection again for me.

10  Q     Sure.  I want you to assume that the examiner believed

11  that equitable disallowance was only available as a remedy

12  if the facts would also support equitable subordination.  Do

13  you have that assumption in mind?

14  A     Yes.

15  Q     Okay.  If that were true, isn't it correct that given

16  the way you model the examiner's conclusions, the chance of

17  obtaining either remedy would fall from the thirty-six

18  percent reflected in your report to twenty percent?

19  A     Roughly, yes.

20  Q     Thank you.

21          Is it correct that that would reduce the expected

22  value reflected in your report by over $100 million?

23  A     I don't think I did that direct calculation, so I have

24  no way of --

25  Q     You simply don't know what difference it would make?

1    A      For that single test, no, I do not.

2    Q      Okay.  Dr. Beron, I would like to turn to the subject

3    of intentional fraudulent conveyance claims and you'll

4    recall that's one of the issues that the examiner analyzed

5    in his report?

6    A      Yes.

7    Q      Yes, sir.  And I think that a slide was put up in your

8    direct examination concerning the examiner's conclusions

9    regarding the likelihood of an intentional fraudulent

10   conveyance being found at step one, and if I'm recalling it

11   correctly, you were concluding that there was a thirty

12   percent chance that a plaintiff would prevail on intentional

13   fraudulent conveyance claim at step one based on your

14   reading of the examiner's conclusions?

15   A      Yes.

16   Q      And that's because the examiner said that a Court was

17   reasonably likely to find no intentional fraud at step one

18   and that means that there's a thirty percent chance that a

19   Court would find intentional fraud at step one.  Is that

20   right?

21   A      I'm sorry.  Repeat that again.  I'm afraid --

22   Q      Sure.

23   A      -- I'm losing track of which side of --

24   Q      Sure.  The examiner's conclusion on this was that a

25   Court was reasonably likely to find no intentional fraud at

1    step one?

2    A      I believe his conclusion stated reasonably unlikely.

3    Q      Let's work with reasonably unlikely.  That means

4    thirty percent the way you do the analysis?

5    A      Yes.

6    Q      Okay.  Can we turn to Volume I of the examiner's

7    report, Page 7?

8    A      Sorry.  Wrong volume.  Hang on.

9    Q      Sure.  Just let me know when you're there, sir.

10   A      Okay.

11   Q      In particular, I want to focus your attention on the

12   Section I-A and the last full paragraph on Page 7.  Do you

13   have that in front of you, sir?

14   A      Yes.

15   Q      And I want to focus on the first sentence here, the

16   last clause of which reads:

17              "The examiner finds that a Court is reasonably

18              likely to conclude that the step one transactions

19              did not constitute an intentional fraudulent

20              transfer."

21         Do you see that, sir?

22   A      Yes.

23   Q      It's that conclusion that you translate into a thirty

24   percent chance that a Court would find an intentional

25   fraudulent transfer at step one?

1  A      No.   It's the conclusion stated at the beginning of

2  the section in which he discusses it in Volume II.

3  Q      Ah.  You don't rely in your work, sir, on the

4  examiner's summary of his conclusions, which is the first

5  part of Volume I.  Is that right?

6  A      I do not.

7  Q      Okay.  Nothing in that section you rely on?

8  A      Not that I recall.  I was focused primarily on the

9  conclusions in Volume II.

10 Q      Did you understand that the examiner was attempting in

11 this first section of Volume I to summarize his principal

12 conclusions?

13 A      Yes.

14 Q      And this is one place where he's summarizing a

15 principal conclusion, correct?

16 A      That's correct, but he also stated that his

17 conclusions were contained in a bottom-line fashion at the

18 beginning of each section of Volume II as I previously

19 testified from the --

20 Q      Okay.

21 A      -- section that I read.

22 Q      Right.  And that's -- those are conclusions like the

23 one we saw on equitable disallowance, the one sentence that

24 we saw there.  That's the kind of thing you're talking

25 about?

1  A      The -- that it's reasonably likely or reasonably

2  unlikely, whatever term he applied, yes.

3  Q      But it has to appear under the heading, Examiner's

4  conclusions, for you to have relied on it, right?

5  A      No.   It could also appear in the beginning of the

6  subsection in which he discusses that.

7  Q      All right.   But it can't appear in the section headed,

8  "Examiner's explanations for conclusions," with the one

9  exception that you described earlier in order for you to

10  have relied?

11  A      That's correct.

12  Q      All right.   Dr. Beron, sticking on Page 7 of Volume I

13  of the examiner's report, can you read aloud the last

14  sentence that appears there?

15  A      The "although step one"?

16  Q      Yes, sir.   That's the one.

17  A      Okay.

18            "Although step one was a highly leveraged

19            transaction, which after giving effect to the

20            step two transactions consummated half a year

21            later turned out very badly for creditors, the

22            examiner did not find credible evidence that

23            Tribune entities entered into the step one

24            transactions to hinder delay or defraud

25            creditors."

1  Q    And the last clause here, the one that reads, "The

2  examiner did not find credible evidence that the Tribune

3  entities entered into the step one transactions to hinder

4  delay or defraud creditors," this is something you would not

5  have relied upon because it appeared in the summary of

6  principle conclusions?

7  A    No, but the examiner certainly relied on it when he

8  determined his conclusion that it was still reasonably

9  unlikely.  He could have said it was highly unlikely, but he

10  said it was reasonably unlikely and he clearly had this in

11  mind.

12  Q    All right.  Just -- just to be clear, you didn't rely

13  on the clause I read in your work, isn't that right?

14  A    I relied on what the examiner said and I assumed the

15  examiner relied on this.

16  Q    All right.  You didn't rely on the sentence, isn't

17  that right, sir?  You can answer --

18  A    That's correct.

19  Q    -- that one yes or no.  Thank you.

20      Now it's -- it's you who have translated the

21  examiner's qualitative likelihoods:  Reasonably likely,

22  reasonably unlikely, into percentages for percentage

23  probabilities, right?

24  A    Correct.

25  Q    That's not something the examiner did?

1  A    Correct.

2  Q    Right.  And the examiner didn't calculate expected

3  values for the claims either, right?

4  A    He did not.

5  Q    Okay.  Is it -- is it fair to say, then, that you

6  don't know whether the examiner would agree with you that

7  the way to translate his conclusions on intentional

8  fraudulent conveyance at step one is a thirty percent chance

9  of winning?  You don't -- you just don't know, isn't that

10 right?

11 A     I think it's pretty safe to say that it's somewhere

12 between twenty and thirty percent, the way he used those

13 terms and the way I set them up.

14 Q    But  -- but you don't, in fact, know whether that's

15 the case?

16 A    I do not.

17 Q    Right.  I want to make sure that I understand the

18 implications of your conclusion on this issue, on the chance

19 of winning on intentional fraudulent conveyance at step one.

20 Am I understanding your methodology to be that your -- when

21 you determine a probability weighted recovery, you're

22 looking at the outcome of lots and lots of hypothetical

23 litigations of the same issue.  Is that right?

24 A    The probability weighted average overall of all of

25 those possible outcomes.  Yes.

1  Q      Right.  And if we were to apply that -- that approach

2  here, would it be fair to say that your thirty percent

3  probability of a intentional fraudulent conveyance at step

4  one means that thirty times out of a hundred that this issue

5  is tried, a judge or jury would find an intentional

6  fraudulent conveyance at step one?

7  A      That's correct.

8  Q      Okay.  And they would find that even though the

9  examiner found there was no credible evidence of intent to

10 defraud given your analysis.  Is that right?

11 A      That's the direct implication of the examiner's

12 conclusion; that he thought it was reasonably unlikely.

13 Q      But, of course, you don't know whether or not, in

14 fact, the examiner would agree with you that thirty times

15 out of a hundred that follows?

16          MR. HURLEY:  Objection.  Asked and answered.

17          THE COURT:  Sustained.

18          MR. SOTTILE:  Thank you.

19 BY MR. SOTTILE:

20 Q      Dr. Beron, is it correct that the way you constructed

21 your decision trees, the chances of someone prevailing on an

22 intentional fraudulent conveyance claim are unrelated to the

23 chances that person would prevail on a constructive

24 fraudulent conveyance claim?

25 A      That is a reflection of the way the examiner stated

1  it.  Yes.

2  Q     You treat them as entirely independent?

3  A     The examiner stated no -- in his conclusion stated no

4  dependence as he had -- as he could have as he did in other

5  issues.

6  Q     What other issues did he say dependence on other than

7  the question of inclusion of step two debt in a insolvency

8  analysis at step one?  Can you think of any others --

9  A     The lineal --

10  Q     Can you think of any others, sir?

11  A     Yes.  Whether or not the test for intent to incur was

12  subjective or objective and whether or not the standard of

13  good faith or determination of good faith.

14  Q     Those are the ones that you can recall now?

15  A     Yes.

16  Q     All right.  And -- all right.  Fine.

17        So the examiner was silent in your reading on the

18  question of whether or not there was any connection between

19  the chances of winning on constructive fraud and intentional

20  fraud?

21  A     In his conclusions, that's correct.

22  Q     Okay.  And because he was silent you modeled it as if

23  they were completely independent?

24  A     That's correct.

25  Q     Okay.  Let's turn to -- back to your report, if we

1    can, Dr. Beron, and in particular to Page 8 of your report.

2    A      All right.  I have it.

3    Q      And I want to focus on Figure 2 towards the top of

4    Page 9 which is titled, "Probability of fraudulent

5    conveyance at step one."  Are --

6    A      I see it.

7    Q      -- you there, sir?

8    A      I see it.

9    Q      Okay.  Is it correct that this is modeling the

10   probability of different fraudulent conveyance outcomes at

11   step one of the transactions?

12   A      Yes, it is.

13   Q      Okay.  And the chance that a -- there will be an

14   intentional fraudulent conveyance is indicated as thirty

15   percent, correct?

16   A      That's correct.

17   Q      And the chance that there will no intentional

18   fraudulent conveyance is shown as seventy percent?

19   A      Correct.

20   Q      And then the chance that there will be a constructive

21   fraudulent conveyance follows on the bottom branch, right?

22   A      Correct.

23   Q      And the chance that there's a constructive fraudulent

24   conveyance here doesn't depend on whether or not an

25   intentional fraudulent conveyance is found?

1   A     Correct.

2   Q     And the reverse would also be true; if you had started

3   with constructive fraudulent conveyance, a finding of no

4   constructive fraudulent conveyance would not have had any

5   effect on the chance of an intentional fraudulent conveyance

6   being found?

7   A     The examiner did not so state, so it would not have

8   reflected that.

9   Q     Right.  And I want to follow up on a sentence that

10  appears -- I guess it's the next to the last sentence on

11  this page.

12  "There is a fifty-one percent probability that a Court would

13  find that the step one transfers and obligations are

14  avoidable at all Tribune entities as either intentionally or

15  constructively fraudulent conveyances."

16        Do you see where I've read, sir?

17  A     Yes.

18  Q     All right.  I want to make sure that I understand how

19  you get to that number.  Is it correct that thirty percent

20  of that number is the probability of an intentional fraud

21  being found at step one?

22  A     Correct.

23  Q     And the remaining twenty-one percent is multiplying

24  the figures across the top of the branch that starts with

25  seventy percent no at the left?  Do I have -- do I have that

1  right?

2  A      That's correct.

3  Q      Okay.  So it's seventy percent times fifty percent

4  times sixty percent gives you twenty-one percent?

5  A      Correct.

6  Q      Okay.  And then you add the two together and that's

7  how you conclude that there's a fifty-one percent

8  probability given your reading of the examiner's conclusions

9  that a Court would find the step one transfers and

10  obligations are avoidable at all Tribune entities, right?

11  A      That's correct.

12  Q      So it's more likely than not in your reading of the

13  examiner's conclusions that step one will be avoided?

14  A      Yes.

15  Q      Okay.  You're aware, aren't you, Dr. Beron, that in

16  his report the examiner said that reasonably equivalent

17  value and the various solvency tests for constructive fraud

18  are also elements that could support a finding of

19  intentional fraud?

20  A      I don't recall reading all of that detail.

21  Q      Why don't you turn --

22            MR. SOTTILE:  Let's pull up Page 77 of Dr.

23  Beron's deposition.

24  BY MR. SOTTILE:

25  Q      Dr. Beron, I want to start on Line 6 of Page 77 --

1    A      Okay.

2    Q      -- with a question.

3    A      Yes.

4    Q      "You went back and looked at his explanation for those

5    conclusions?"  "Answer: Right."

6    A      Correct.

7    Q      "Question:  And what did you find when you went back

8    and looked?"

9    "Answer:  I found that he made a statement to the effect

10   that while REV -- reasonably equivalent value -- and the

11   various solvency tests are elements of a finding of

12   intentional fraudulent conveyance, they are not a

13   prerequisite."

14          Do you see where I've read, sir?

15   A      Yes, I did.

16   Q      Does that accurately set forth your truthful testimony

17   at the time?

18   A      Yes.

19   Q      All right.  So you were aware at the time of your

20   deposition, in any event, that the examiner's report said

21   that the principle elements of a constructive fraudulent

22   conveyance were also elements that would support a finding

23   of intentional fraudulent conveyance?

24   A      Does this say that it was a principle requirement or

25   that it was some elements?

1  Q      Are there any other elements you're aware of?

2  A      As I say, I didn't read the entire description, so --

3  Q      Fair enough.  Let me -- let me restate.  I take your

4  point.

5         Is it correct that you were aware at the time of your

6  deposition that the examiner's report said that the issue of

7  reasonably equivalent value, which is a -- that's a

8  component of constructive fraudulent conveyance to your

9  understanding, right?

10  A      Correct.

11  Q      And the various solvency tests, that's a reference to

12  the various solvency tests for a constructive fraudulent

13  conveyance?

14  A      Correct.

15  Q      Okay.  So you knew that the examiner's report said

16  that the issue of reasonable value, the issue of the

17  constructive fraud solvency test were also elements that

18  could support a finding of intentional fraud according to

19  the examiner?

20  A      Yes.

21  Q      Wouldn't that indicate to you, sir, that the examiner

22  believed there was a connection between a finding of

23  constructive fraud and a finding of intentional fraud

24  because the same elements can support a finding of both?

25  A      Again, the examiner did not state in his conclusions

1    that there was such a connection.  He could easily have done

2    so.  He did not.  And I was not to -- my instructions were

3    not to subjectively interpret what the examiner might have

4    meant, but what he actually did conclude.

5    Q    Okay.  Except in the instance where Akin Gump told you

6    that you should interpret an uncertain provision in the way

7    they thought was appropriate?

8              MR. HURLEY:  Objection.  Argumentative.

9              THE COURT:  Sustained.

10         (Pause)

11   BY MR. SOTTILE:

12   Q    Dr. Beron, is it correct that in the ordinary course

13   of your work where you were dealing, let's say, with a law

14   firm seeking your help in modeling the expected value of

15   litigation that you would try to talk to them about whether

16   or not they believed that claims like intentional fraudulent

17   conveyance and constructive fraudulent conveyance were

18   connected to one another?

19   A    Yes.

20   Q    Is it correct you didn't do that here because that

21   wasn't your assignment as you understood it?

22   A    That's correct.

23   Q    Okay.  Dr. Beron, do you know how much of your

24   expected value calculation of 1.57 billion is accounted for

25   by scenarios where there's an intentional fraudulent

1  conveyance found at step one?

2  A      I have not done that calculation.

3  Q      Okay.

4         MR. SOTTILE:  Can we pull up our demonstratives

5  and in particular the page that we've marked as DCL Exhibit

6  2000-3.

7         (Pause)

8         MR. SOTTILE:  Your Honor, may we approach with

9  hard copy which may be helpful to the witness and the Court?

10        THE COURT:  Yes.

11  BY MR. SOTTILE:

12  Q      Dr. Beron, you have on the screen or in the hard copy

13  we've given you the document we've marked as DCL Exhibit

14  2000-3.  It's behind Tab 4 in the binder we've just given

15  you --

16  A      Yes.  I have it.

17  Q      -- if that's easier.

18  A      Oh, wait.  Excuse me.  The -- yes.

19  Q      Okay.  Dr. Beron, what we have done here -- and -- and

20  please tell us if we've gotten something wrong -- is to take

21  some of the branches from your recovery tree found following

22  Page 33 of your report.  So if you want to look at where

23  we've pulled this information from, it's from the chart that

24  is between Pages 33 and 34 of your report.

25  A      I -- I understand where it's from.

1  Q    Yes.  And, in particular, what we've done is reproduce

2  in Columns 1 through 4 items that appear in Branches A and B

3  of the recovery tree, isn't that right?

4  A    Correct.  I -- correct.

5  Q    Right.

6  A    I mean, it -- I would have to look through in detail,

7  but that's apparently what it is.

8  Q    Right.  And first of all, in the first column we

9  identify the branch that we've reproduced and the first one

10 is A eighteen percent IFC 1 and IFC 2.  Do you see that?

11 A    Yes.

12 Q    IFC here is a reference to intentional fraudulent

13 conveyance?

14 A    Correct.

15 Q    One is step one?

16 A    Correct.

17 Q    And two is step two?

18 A    Correct.

19 Q    Okay.  So this is a branch where an intentional

20 fraudulent conveyance is found at both steps of the

21 transaction?

22 A    Correct.

23 Q    Okay.  And, Dr. Beron, if you look at the next column

24 in the chart we've put here under the heading, "Scenario,"

25 we have put in numbers that correspond to the scenario

1  numbers that go against this branch, 1, 2, 3.  Do you see

2  that?

3  A     Yes, I do.

4  Q     Those are references to recovery scenarios.  Do I have

5  that right?

6  A     Yes.  Litigation outcome scenarios.

7  Q     Litigation outcome scenarios.  Thank you.

8        And then next, Column 3 as it appears here is headed,

9  "Recovery," and that shows the recovery in those different

10 litigation outcomes, again reproducing the numbers from your

11 recovery tree, correct?

12 A     Correct.

13 Q     And finally -- well, not finally, in the fourth column

14 there's a probability and this also comes from your recovery

15 tree, correct?

16 A     I -- I -- it looks like it and I'll accept that that's

17 where it's from.

18 Q     If not, some paralegal will be very unhappy.

19       Dr. Beron, the probability here, as you use it in the

20 recovery tree, is the probability of the particular

21 litigation outcome.  Is that right?

22 A     Correct.

23 Q     Is it correct that if we wanted to get the probability

24 weighted recovery for each of these notes in Branch A, the

25 way to do it is to multiply the amount of the recovery by

1  the probability?

2  A       Right.

3  Q       Is that right?

4  A       Yes.

5  Q       Okay.  And so if you look at Scenario 1 at the top,

6  you would multiply $2.312 billion by a probability of

7  thirteen percent and then we've just done the math and it

8  comes out to a little over $300 million.  Do you see that?

9  A       The math appears to be correct.

10  Q       And that's the way in which you take the various

11  outcomes in the recovery tree to get a total expected value

12  of 1.57 billion?

13  A       That's correct.

14  Q       Okay.  Would you agree with me that we have reproduced

15  on this slide all of the scenarios that involve a finding of

16  an intentional fraudulent conveyance at step one of the

17  transaction?

18  A       Let me take a look at my tree and --

19  Q       Of course.

20  A       -- see if that's correct.

21         (Pause)

22  A       Yes.  That appears to be all of those scenarios.  It's

23  through eleven.

24  Q       And assuming we've gotten the math right, the

25  scenarios where an intentional fraud is found at step one

1  account for $606 million of your total expected value?

2  A     That is completely incorrect.  It is a --

3  Q     Ah.

4  A     -- total misapplication of this calculation.  The math

5  is right, but it is completely wrong in determining expected

6  value.  The individual components of expected value that one

7  sums together is the appropriate measure and the individual

8  components is a meaningless number.

9  Q     Well, let's -- let's explore that further.  Let's try

10  it a different way, Dr. Beron.

11  A     Okay.

12  Q     These are the numbers that you would sum up in order

13  to get to your 1.57 billion.  These are some of the numbers,

14  right?

15  A     These are some of the numbers.  Correct.

16  Q     Okay.  Let's try this a different way.  If, in fact,

17  there was no chance of an intentional fraudulent conveyance

18  at step one, zero percent chance, do you know what affect

19  that would have on your total expected value?

20  A     I do not.

21  Q     And would you -- would it surprise you if I told you

22  it was more than $200 million?

23         MR. HURLEY:  Objection, Your Honor.  He said he

24  doesn't have any actual --

25         THE COURT:  Sustained.

1              (Pause)

2    BY MR. SOTTILE:

3    Q      Dr. Beron, can we turn to -- back to Page 8 of your

4    report, sir?

5    A      Okay.  Just trying to keep track of what's going on

6    here.

7    Q      Of course, sir.

8    A      Okay.  I have it.

9    Q      And I want to go back to Figure 2 which we looked at

10   earlier.  Do you remember, sir?

11   A      I see that.

12   Q      And I want to start with the bottom branch, the one

13   where there's no intentional fraudulent conveyance found at

14   step one of the transactions.  Are you with me?

15   A      Yes.

16   Q      And then if we move to the next node of this tree,

17   that's under the heading, "Parent CFC," and that is a

18   reference to whether or not a constructive fraudulent

19   conveyance is found at the Tribune parent.  Is that right?

20   A      That is correct.

21   Q      Okay.  And I want to follow along the branch here that

22   reads, "Fifty percent no."  Do -- do you have that in front

23   of you, sir?

24   A      Yes, I do.

25   Q      Okay.  So this is a scenario where there's no

1  intentional fraud at step one --

2  A      Correct.

3  Q      -- and there's no constructive fraud found at the

4  Tribune parent, right?

5  A      That -- that -- at the same point.  Yes.

6  Q      At this point.

7  A      Yes.

8  Q      Right.  And then let's go to the next node, which is

9  the last one shown in this tree.  That's under the heading,

10  "Sub CFC," and that's a reference to whether or not the

11  guarantor subsidiaries would be found to -- would -- whether

12  a constructive fraudulent conveyance would be found at the

13  guarantor subsidiaries at step one?

14  A      That is correct.

15  Q      Okay.  Is it correct in reading the bottom branch of

16  your tree that in the scenario where there's no intentional

17  fraud at step one, there's no constructive fraud at the

18  parent at step one, there's a thirty-nine percent chance of

19  a constructive fraud at the guarantor subsidiaries?  Is that

20  the right way to read this tree?

21  A      That is correct.

22  Q      Okay.  Do you know whether that result is even

23  possible under the facts as found by the examiner?

24  A      I do not, but I can say that given that I was bound by

25  the conclusions of the examiner, I will also note that this

1  scenario where there is no constructive fraudulent

2  conveyance at the parent and a constructive fraudulent

3  conveyance at the subs leads to no recoveries beyond natural

4  recoveries because we did not include any disjunctive

5  partial avoidance scenarios.  So this has absolutely no

6  effect on the expected value.

7  Q    You didn't include it because you wanted to simplify

8  the decision tree in the way you described on direct.  Is

9  that right?

10  A    That's correct.

11  Q    The reason you didn't include it is not because you

12  thought this was impossible, right?

13  A    We -- as I say, it follows logically what the examiner

14  said, but we did not include it.

15  Q    It follows logically in your view from the examiner's

16  conclusions that even though there's no constructive fraud

17  at the parent, there's a -- almost a forty percent chance of

18  a constructive fraud at the subsidiaries at step one; that

19  follows logically from the examiner's conclusions?

20  A    It follows logically, but, again, we did not include

21  it in any of our recoveries.

22  Q    I see.

23        (Pause)

24  Q    Dr. Beron, could you turn to Volume II of the

25  examiner's report, Page 207, and just let me know when

1  you're at that page, sir.

2  A     Okay.  I'm -- I'm there.

3  Q     Yes.  Forgive me for just a moment while I find the

4  sentence that I wanted to direct your attention to.

5      (Pause)

6  Q     And let me come back to the point.  My apologies.  Oh,

7  no.  I have it.

8      Under the heading, "Explanation for the examiner's

9  conclusions," could you read aloud the first sentence, sir,

10  and my apologies for the delay.

11  A     Sure.

12  "Considering Tribune's capital structure it is highly likely

13  that Tribune was solvent at step one.  If the step two debt

14  is not included it necessarily follows that guarantor

15  subsidiaries were, on a consolidated basis, also solvent at

16  step one if the step two debt is not included."

17  Q     Dr. Beron, would you agree with me that the examiner

18  is saying here that in the situation described, if the

19  Tribune parent is solvent, it necessarily follows that the

20  subsidiaries are also solvent?

21  A     Yes.

22  Q     Umm --

23  A     But -- excuse me.  That's a logical connection, not

24  necessarily a probabilistic connection.

25  Q     I would be grateful --

1   A      I -- I --

2   Q      -- if you could explain because I did not understand

3   the answer.

4   A      Necessarily follows does not mean that there's a one-

5   hundred percent chance in probabilistic terms that --

6   nothing is certain in court and --

7   Q      Would --

8   A      -- so in terms of modeling these types of issues, one

9   can say something follows logically and necessarily does not

10  imply that there's a one-hundred percent chance of the issue

11  you're discussing.

12  Q      Would you agree --

13          THE COURT:  Allowing for illogical decisions by

14  judges, I presume.

15      (Laughter)

16          MR. SOTTILE:  It's a remote possibility, Your

17  Honor.

18          THE COURT:  There are appellate courts for a

19  reason, I suppose.

20  BY MR. SOTTILE:

21  Q      Would you agree with me that in common dictionary

22  parlance, "necessarily follows" means that it must follow?

23  A      Yes.

24  Q      And if that's how the examiner was using the word

25  here, there's no chance of the subsidiaries being insolvent

1   when the parent is solvent, correct?

2           MR. HURLEY:  Objection.  I believe the witness

3   has already testified as to the parts of the model and he's

4   testified that he relied on the conclusions in that report

5   and that he understands that the conclusions are based on

6   the record before him.  So I'm not sure what the exercise is

7   of continuing going through this material.

8           THE COURT:  Any response, Mr. Sottile?

9           MR. SOTTILE:  Certainly, Your Honor.  The point

10  of the exercise is that the witness has closed his eyes to a

11  large measure of what the examiner said.  He has relied only

12  on headline conclusions.  He hasn't looked at explanations.

13  And when you look at the explanations, they tell you that

14  his interpretation of the conclusions isn't right.

15          THE COURT:  Sustained.

16  BY MR. SOTTILE:

17  Q    Dr. Beron, is it correct that your assignment -- given

18  your assignment you assigned a set of probability values to

19  each of the examiner's qualitative likelihoods?  I'm reading

20  from Page 3 of your report, just to be fair.

21  A    Yes.  That's the base set you're referring to.

22  Q    Yes.  Is -- and so if the examiner expressed a

23  qualitative likelihood, a highly likely, highly unlikely, so

24  forth, with respect to the LBO lender claims you were

25  analyzing, that's something you assigned a probability value

1  to?

2  A    Correct.

3  Q    Can you turn to Page 288 in Volume II of the

4  examiner's report?

5  A    All right.  I have that.

6  Q    And I'm at the bottom of the page under the heading,

7  "8-A, Examiner's conclusions and explanation concerning the

8  questions of standing and scope of avoidance at guarantor

9  subsidiary levels."  Could you read aloud the sentence that

10  appears under the heading, "The examiner's conclusions,."

11  The first sentence, the one that carries over to 289?

12  A    Okay.

13  "The examiner concludes that it's highly likely that a Court

14  will find that each guarantor subsidiary that is a debtor in

15  the Chapter 11 cases has standing to bring actions to avoid

16  the obligations incurred to the LBO lenders."

17  Q    Did you assign a probability value to this qualitative

18  likelihood?

19  A    I did not.

20  Q    Is that because counsel told you not to?

21  A    Well, counsel informed me and I mistakenly said that I

22  did not get the explanation, but I, in fact, had forgotten

23  that, in fact, the explanation was that that ruling already

24  had been made so it was not at that point uncertain and so,

25  therefore, it was not appropriate to include it in the

1  decision tree.

2  Q     Well, let's take it step by step.

3  A     Okay.

4  Q     This is something that counsel told you not to reflect

5  in your analysis, correct?

6  A     Yes, because it had already been decided.

7  Q     Okay.  Well, let's just do it bit by bit.

8  A     Okay.

9  Q     At your deposition -- at your deposition you testified

10 that counsel told you it wasn't necessary to include this

11 conclusion, but they hadn't told you why.  Is that

12 correct --

13 A     That's --

14 Q     -- as of what you testified to in your deposition?

15 A     That's what I testified.

16 Q     All right.  You've had a conversation with counsel

17 since then on the subject --

18 A     I have --

19 Q     -- or have you had a refreshed recollection?

20 A     It was a refreshed recollection, and as I just

21 testified, I did not recall at the time that counsel had

22 told me that that was the reason.

23 Q     And -- and just so I'm clear, can you repeat to me the

24 reason that you've now recalled as to why counsel told you

25 not to do this?

1          MR. HURLEY:  Objection, Your Honor.

2          THE COURT:  Sustained.

3          MR. SOTTILE:  Thank you.

4          Your Honor, would this be a convenient time to

5    take a short break?

6          THE COURT:  Yes.  Let me ask you this, though,

7    Mr. Sottile.  How much left do you have on cross-

8    examination?

9          MR. SOTTILE:  Your Honor, I -- I hesitate to

10   venture an estimate given my very poor record of yesterday.

11   That said, Your Honor, no more than thirty minutes and I

12   will ensure that I keep it within that.

13         THE COURT:  All right.  Ten-minute recess.

14       (Recess)

15         THE CLERK:  All rise.

16         Be seated, please.

17   BY MR. SOTTILE:

18   Q    Dr. Beron, you testified on direct examination about a

19   litigation trust that you understand is part of the plan

20   proposed by the DCL plan proponents.  Do you recall that

21   general subject?

22   A    Yes.

23   Q    And as I understand your testimony, you did not

24   analyze the value of the claims that would be pursued by

25   that trust.  Is that right?

1  A     That's correct.

2  Q     Okay.  Dr. Beron, are you aware that the settlement

3  that's reflected in the DCL plan gives the non-LBO creditors

4  a greater share of recoveries from that litigation trust

5  than they would have gotten absent the settlement, at least

6  in some scenarios?

7           MR. HURLEY:  Objection.  It's a question of law.

8  He's already stated he's not a lawyer, and that it assumes

9  analysis.

10          THE COURT:  Mr. Sottile.

11          MR. SOTTILE:  Your Honor, if he's -- if he's not

12  aware of the fact, he can say so.  I think it's --

13          THE COURT:  Well, it's not -- I don't know if

14  it's purely a fact.  I'll sustain the objection.

15          MR. SOTTILE:  Thank you, Your Honor.

16  BY MR. SOTTILE:

17  Q     Well, in any event, you didn't take any account of the

18  claims that are in the litigation trust in comparing the

19  value of the DCL settlement to your calculation expected

20  value, correct?

21  A     I did not.

22  Q     Right.  Dr. Beron, you testified about a waterfall

23  model that you used in the course of your work that was

24  provided to you by Aurelius.  Do you recall that testimony,

25  sir?

1   A     I used the numbers generated by that model.  I did not

2   use the model.

3   Q     All right.  You used the recovery amounts that came

4   out the waterfall model in order to determine expected

5   value?

6   A     Correct.

7   Q     And you couldn't determine the expected value of the

8   claims without those recovery amounts, correct?

9   A     Correct.

10  Q     And you didn't play any part in the development of

11  that model.  Is that right?

12  A     I did not.

13  Q     And you don't know whether or not that model

14  accurately reflects how distributions would fall to

15  different creditor groups in different scenarios?

16  A     I do not, but it was represented to me to be an

17  accurate calculation.  I have no reason to believe

18  otherwise.

19  Q     But you don't, as a matter of your own personal

20  knowledge, know one way or the other whether it's correct?

21  A     That's correct.

22  Q     And you don't know whether or not it accurately models

23  the capital structure of the debtors, do you?

24  A     I do not.

25  Q     Would you agree with me that if the recovery numbers

1    that you got from Aurelius as outputs from this model are

2    wrong, the expected value you calculate would also be wrong?

3    A    Under that hypothetical, correct.

4    Q    Dr. Beron, I think that you testified on direct that

5    it is customary for you and other practitioners in the

6    decision tree analysis field to rely upon damages

7    calculations provided by their clients.  Is that correct?

8    A    That's correct.

9    Q    And to do so without verifying independently whether

10   those calculations are right or not?

11   A    That's correct.

12   Q    Is it correct, then, that you believe it's reasonable

13   for you to rely on damage calculations even though you don't

14   know whether they're correct or not?

15   A    My expertise here was doing the decision tree and

16   calculating the results based on the results of that model,

17   and as I said in my report, I relied on those numbers.

18   Q    You assumed them to be correct?

19   A    Correct.

20   Q    And you believe it to be reasonable for practitioners

21   in your field to rely upon such numbers provided by clients?

22            MR. HURLEY:  Objection.  Asked and answered.

23            THE COURT:  Overruled.

24            THE WITNESS:  Yes.

25   BY MR. SOTTILE:

1  Q     Dr. Beron, in the situations you're talking about, you

2  would be providing advice to the client who's giving you the

3  recovery scenarios, right?

4  A     Correct.

5  Q     And the client who provided you the recovery scenarios

6  here is Aurelius?

7  A     My client is Akin, Gump, but, yes.  Aurelius supplied

8  the numbers.

9  Q     Okay.  But in distinction to your normal practice that

10 you rely on your clients' numbers without checking them,

11 here your testimony is being offered in an effort to

12 persuade the Court that your expected value is correct, not

13 your client, right?

14 A     That is correct.

15 Q     And you don't know whether your numbers are -- your

16 calculations of expected value are right because you don't

17 know whether the recovery numbers are right?

18         MR. HURLEY:  Objection, Your Honor.  Asked and

19 answered.

20         THE COURT:  Sustained.

21         MR. SOTTILE:  Thank you.

22 BY MR. SOTTILE:

23 Q     Dr. Beron, is it correct that before your work in this

24 case you didn't really have any working knowledge about the

25 test for a constructive fraudulent conveyance?

1    A      That is correct.

2    Q      And your sources of information that you've relied

3    upon come from the examiner's conclusions and discussions

4    with your counsel, Akin, Gump?

5    A      That is correct.

6    Q      And you don't have any independent source of

7    information you rely on other than those two, correct?

8    A      That is correct.

9    Q      Dr. Beron, is it correct you don't know as a matter of

10   fact whether or not the three solvency tests for a

11   constructive fraudulent conveyance are independent of one

12   another?

13            MR. HURLEY:  Objection, Your Honor.  I think

14   that's a question of a matter of law, not a matter of fact.

15            THE COURT:  I'll allow him to answer it if he is

16   able.

17            THE WITNESS:  The examiner did not so state and I

18   was not told so by counsel.

19   BY MR. SOTTILE:

20   Q      Is it correct that you don't know whether or not the

21   examiner saw any connection between those three tests?

22   A      He did not so state in his conclusions.

23   Q      And, therefore, you don't know?

24            MR. HURLEY:  Objection, Your Honor.  Asked and

25   answered.

1                    THE COURT:  Sustained.

2  BY MR. SOTTILE:

3  Q     In constructing your decision trees, you treated these

4  three tests as independent of one another.  Is that right?

5  A     I treated them as the examiner treated them.

6  Q     At least as you understood the examiner to treat them?

7  A     As the examiner stated in his conclusions.

8  Q     Okay.  And he didn't say whether they were independent

9  or not, but you treated them as independent?

10 A     I treated them as the examiner stated and he did not

11 explicitly state a condition.  But he may have had that in

12 mind when he gave his judgments.

13 Q     Let's -- let's try it a different way.  In the way

14 your decision tree works, does the fact that there is a

15 finding that Tribune is solvent on a balance sheet basis

16 have any effect on the chance that it has adequate capital

17 in the way you've constructed your trees?

18 A     In the way I've constructed the tree, it -- it does

19 not, as I believe that reflects what the examiner said.

20 Q     And if you're wrong about the examiner's report and

21 there is some relationship between the two tests in the

22 examiner's view, then is it correct that your expected value

23 calculations based on that assumption would be incorrect?

24 A     Could you repeat the question, please?

25 Q     It was a little awkward.  Let me try it again.  It

1    probably should have drawn an objection.

2              THE COURT:  I was surprised that it didn't.

3         (Laughter)

4              THE COURT:  Not a criticism, Mr. Hurley.

5    BY MR. SOTTILE:

6    Q    Dr. Beron, is it correct that if, in fact, the

7    examiner believed that there was a relationship between the

8    chances of proving Tribune was balance sheet insolvent and

9    the chances of proving it lacked adequate capital, then the

10   construction of your trees doesn't accurately reflect the

11   examiner's thinking?  Is that right?

12   A    I -- I'm not quite sure how to treat this

13   hypothetical.  My -- I believe the tree accurately reflects

14   what the examiner said.  So I'm a little confused about if

15   the examiner was wrong --

16   Q    No.  Let me --

17   A    -- then --

18   Q    Let me -- let me state it a little differently, and

19   forgive me for being a little awkward in the phrasing.

20        The way you've constructed the trees, the chances of

21   someone proving that Tribune lacked adequate capital are not

22   affected by whether or not Tribune is shown to be balance

23   sheet insolvent, correct?

24   A    That -- assuming the examiner did not take that into

25   account in his probabilities, that is correct.  But I don't

1 know that he did not.

2 Q     All right.  And, again, you don't know one way or the

3 other?

4 A     That's correct.

5 Q     Okay.  Let's assume as a hypothetical for purposes of

6 my question that, in fact, if Tribune were found to have

7 adequate capital, there would be a smaller chance of showing

8 that it was insolvent on a balance sheet test.  Let's assume

9 that's the fact.  Do you have that in mind?

10 A     If it were assumed to have adequate capital there's a

11 smaller chance of it being balance sheet insolvent.

12 Q     Right.  If that were so, your tree doesn't accurately

13 reflect that situation?

14           MR. HURLEY:  Objection, Your Honor.  It's an

15 incomplete hypothetical.  And, again, I think the witness

16 has testified as to what he did and I don't see the point of

17 the exercise of continuing to go back to what he said he

18 didn't do.

19           THE COURT:  I'll allow it, if you can answer,

20 sir.

21           THE WITNESS:  Okay.  Can we go back to the

22 question again?

23           MR. SOTTILE:  Of course, Dr. Beron.

24 BY MR. SOTTILE:

25 Q     Dr. Beron, the way you've constructed your trees I

1  think it's clear you don't change the probability of winning

2  on any one of the three constructive fraud tests based on

3  the outcome of any of the others.  Is that right?

4  A    That's correct.  That's the way the tree is

5  constructed.

6  Q    Right.  If the -- losing on one of the tests made it

7  less likely that a plaintiff could establish a constructive

8  fraud based on one of the other tests, if that's the fact --

9  let's just -- could you have that assumption in mind?

10 A    Yes.

11 Q    Then your tree would need to be constructed

12 differently to reflect that fact, if it were true?

13 A    Yes.

14 Q    Thank you.

15      Dr. Beron, can you turn to Volume II of the examiner's

16 report, Page 303?

17 A    I have it.

18 Q    And in particular I want to refer to the section that

19 appears under C, "Examiner's conclusions and explanation

20 concerning effect of avoidance on PHONES subordination."  Do

21 you have it, sir?

22 A    I do.

23 Q    There's a conclusion expressed here by the examiner

24 concerning what would happen with the PHONES subordination

25 in the event that LBO lender debt were avoided at the parent

1    level.  Is that right?

2    A    I believe that's what it refers to.

3    Q    All right.  And, in particular, I'm focusing on the

4    second sentence of the conclusion.  Do you see it?

5    A    Oh, hang on.

6        (Pause)

7    A    Yes, I see.

8    Q    Is this a conclusion that you assigned a probability

9    to in your decision trees?

10   A    I did not.

11   Q    Okay.  And the reason you didn't is because to your

12   understanding this didn't affect the initial recoveries to

13   the non-LBO creditors as a group.  Is that right?

14   A    That is correct.

15   Q    Your understanding of this conclusion, though, is that

16   there's some chance that after a recovery is received by the

17   PHONES, they would have to turn some part of it over to the

18   LBO lenders?

19   A    That is correct.

20   Q    All right.  So if that situation happened, if that

21   possibility occurred, the PHONES would get some money in,

22   but then they would have to turn it over?

23        MR. HURLEY:  Objection, Your Honor.  The witness

24   has already testified that he didn't assess this area, not

25   aware.  We're asking for an interpretation of the --

1           THE COURT:  Sustained.

2    BY MR. SOTTILE:

3    Q    Is the reason that you did not reflect this conclusion

4    in your decision trees that you did not believe it to be

5    part of your assignment to look at what would happen with

6    recoveries after they were received by any one of the non-

7    LBO creditors?

8    A    I -- my assignment was to determine recovery of the

9    group and what happened to the money from any person in that

10   group afterwards was not what I was analyzing.

11   Q    Dr. Beron, we spoke earlier about whether there was a

12   connection between a finding of constructive fraudulent

13   conveyance at step one and a finding of an intentional

14   fraudulent conveyance at step one.  Do you recall the

15   general subject matter?

16   A    Yes.

17   Q    And I think you testified that if, in fact, an

18   intentional fraudulent conveyance could only be found if a

19   constructive fraudulent conveyance was also found at step

20   one, that would -- if that were true that would cause you to

21   change the construction of your trees?  It would be

22   dependent.

23   A    Yes, if it were -- if that were the case.

24   Q    And if the two findings were partially dependent, you

25   would also have to chance the construction of your trees,

1  isn't that right?

2  A     That's correct.

3  Q     And that would be true for all of your conclusions;

4  that if they were dependent or partially dependent and

5  you've shown them as independent, you would have to change

6  the construction of your trees?

7  A     Yes.  But, again, based on the examiner's conclusions

8  I modeled those as he concluded them.

9  Q     I understand.

10         MR. SOTTILE:  Your Honor, may I have a brief

11 moment to consult?  I may be done.

12         THE COURT:  You may.

13     (Pause)

14         MR. SOTTILE:  Your Honor, unfortunately, my

15 colleagues did remind me of one line of inquiry that I had

16 not pursued.  I'll be brief.

17 BY MR. SOTTILE:

18 Q     Dr. Beron, you reviewed some rebuttal reports that

19 were addressed to your initial expert report.  Is that

20 right?

21 A     That's correct.

22 Q     And at least one of those reports, the Golden

23 Associates' report contained a criticism that you thought

24 was a valid criticism of your report.  Do I have that right?

25 A     Which one are you referring to?

1  Q      Time value of money.

2  A      Actually, I don't think it was a valid criticism,

3  although I do remember testifying to that effect.  Sometimes

4  I do include the calculation of present value, but I was

5  modeling the examiner's report and the examiner included no

6  such considerations in his report, neither in discussion nor

7  in the values that he calculated for his scenarios.

8      And just as an additional note, in my thirty years of

9  doing this great majority of the times when I do make these

10  calculations, the effects of the time discounting are offset

11  by the prejudgment interest.

12  Q      Those are things that you've thought about since your

13  deposition?

14  A      Well, I had forgotten about the prejudgment interest

15  and as I recall at the deposition I said that it was outside

16  the scope of my assignment.

17  Q      Yes.  Did counsel suggest to you there there were --

18  there was prejudgment interest that ought to be taken into

19  account with respect to the importance of time value of

20  money?

21  A      They did not.  That was my general --

22  Q      Your point of view?

23  A      I had just forgot it at the deposition.  I was not

24  exactly in best of circumstances there.

25  Q      I understand, Dr. Beron.

1        So you thought it was a valid criticism at the time of

2   your deposition, but you no longer think so?

3   A      Again, but outside the scope of the assignment, but on

4   further consideration I don't think it was.  Again, I was

5   modeling the examiner's report and the examiner gave no

6   consideration to those issues.

7   Q      You would agree with me that litigation of the type

8   you were analyzing and the examiner was analyzing takes some

9   years to resolve, wouldn't you?

10  A      It may.  I have no opinion as to how long this one

11  might take.

12  Q      All right.

13  A      I believe I said it would take longer than a month,

14  but --

15        (Laughter)

16  Q      Would you agree with me that -- that if litigation is

17  going to take some material amount of time to resolve, say

18  more than a year, it would be appropriate to discount

19  recoveries for time value of money?

20  A      On a decision-making basis, yes.  But I have neither

21  the expertise nor the knowledge to determine either a

22  discount rate or the amount of time it would take.

23  Q      Isn't it true that -- that you frequently, when you're

24  advising clients, tell them that they should discount future

25  recoveries in litigation to reflect time value?

1  A     As I said, when we do take that into consideration it

2  is -- a vast majority of the time it is offset by the

3  prejudgment interest and it's not -- we don't bother doing

4  that calculation.

5  Q     Dr. Beron, can you --

6           MR. SOTTILE:  Can we pull up Page 94 of the

7  deposition transcript?

8  BY MR. SOTTILE:

9  Q     Dr. Beron, I want to read you to a question and answer

10 that appears starting at Line 16 on Page 94.

11 A     Right.

12 Q     "Why is it you believe that's" -- referring to time

13 value -- "a valid criticism"?

14           MR. HURLEY:  Your Honor, I believe it's

15 misleading to start at that line of the page.  If we start

16 with the previous answer I think it would provide a clearer

17 understanding of what the testimony was on this topic.

18           THE COURT:  All right.

19           MR. SOTTILE:  I'm --

20           THE COURT:  Please do so, Mr. Sottile.

21           MR. SOTTILE:  Of course.  I'm happy to start

22 earlier.  Let's start on Line 12, then.

23           Is that where you wanted me to start?

24           MR. HURLEY:  Sure.

25           MR. SOTTILE:  Okay.

1  BY MR. SOTTILE:

2  Q      "Answer:  The only one that I considered to be valid,

3         again, outside the scope of my assignment, was Number

4         7 'fails to adjust to the time value of money.'"

5  "Question:  Why is it you believe that's a valid criticism?"

6  "Answer:  Because in general when doing these analyses one

7  calculates an expected present value and does a discount for

8  future -- discount of future cash flows to the present."

9  "Question:  You generally do that in the course of your

10 professional work.  Is that right?"

11 "Answer:  Sometimes."

12        Was that answer -- was that testimony truthful when

13 you gave it, sir?

14 A      Yes.  Sometimes.

15 Q      All right.  Sometimes you do it, sometimes you don't?

16 A      That's correct.

17 Q      Okay.  And in general when you do these analyses one

18 does calculate an expected present value as you testified in

19 your deposition?

20            MR. HURLEY:  Objection.  Asked and answered.

21            THE COURT:  Sustained.

22            MR. SOTTILE:  Thank you.

23 BY MR. SOTTILE:

24 Q      Dr. Beron, would you agree with me that in the

25 circumstances of this case, a five percent discount rate for

1  time value of money applied to the expected value of these

2  claims would not be unreasonable?

3          MR. HURLEY:  Objection, Your Honor.  I think the

4  witness has already testified he did an analysis and he

5  doesn't believe he's competent to give that particular

6  opinion.

7          THE COURT:  He says he sometimes does employee

8  such methods.  I'll allow him to answer if he's able.

9  BY MR. SOTTILE:

10  Q     Dr. Beron?

11  A     I believe I said it was not unreasonable, but that was

12  directly after I said that I was not qualified to make a

13  determination of the appropriate discount rate.

14  Q     You're not an expert in the field.  It didn't sound

15  unreasonable to you as -- as a person who wasn't an expert.

16  Is that your testimony?

17  A     That's correct.

18  Q     It is something that you do from -- sometimes in the

19  course of your work; that is, you work with others who

20  assist you in selecting a discount rate?

21  A     Yes.  Generally, the client gives me the discount rate

22  and the time period to the resolution of the litigation.

23  Q     And -- and it's based on that prior experience that

24  you answered me in the deposition and now that five percent

25  was -- seemed not unreasonable to you?

1    A      Yes.  I mean, it wasn't ten or twenty percent, so it

2    was not unreasonable.

3    Q      Dr. Beron, without a lot of testimony about what your

4    assignment was, what you were trying to do and -- and,

5    essentially, you were trying to take the examiner's

6    conclusions as you understood them and use them to develop

7    an expected value for the litigation, correct?

8    A      Correct.

9    Q      Were you ever advised that the examiner had made any

10   factual errors that might affect any of his conclusions?

11   Did counsel ever tell you that?

12   A      I was not.

13   Q      Okay.  If, in fact, the examiner did make factual

14   errors, is that something that you would want to know in --

15   to do the kind of work you're doing?

16   A      I was -- I'm not sure -- quite sure how to answer

17   that.  My report is based on the conclusions.  If there were

18   factual errors I don't believe I related any -- I -- what --

19   like what type of factual errors are you referring to?

20   Let's try that.

21   Q      Sure.  Let me be more specific.  Fair -- fair point,

22   Dr. Beron.

23         Dr. Beron, is it correct that if you're looking at

24   that -- to your understanding, that the balance sheet test

25   for solvency looks at a comparison of total assets versus

1  liabilities?

2          MR. HURLEY:  Objection, Your Honor.  The witness

3  has testified he's not a lawyer.  The examiner report didn't

4  make conclusions about the law.

5          COURT REPORTER:  I'm sorry.

6          THE COURT:  Mr. Sottile

7          COURT REPORTER:  Counsel, I didn't hear that last

8  word.  You said a lawyer --

9          MR. HURLEY:  The modeled examiner report did not

10  make conclusions about the law.

11          COURT REPORTER:  Thank you.

12          THE COURT:  Mr. Sottile.

13          MR. SOTTILE:  Your Honor, I do not believe it is

14  a conclusion about the law to have an understanding as a lay

15  person that that test involves a comparison of assets and

16  liabilities.

17          THE COURT:  Sustained.

18          MR. SOTTILE:  Thank you, Your Honor.

19  BY MR. SOTTILE:

20  Q    Dr. Beron, are you aware that at the time of the LBO

21  transactions one of the assets of the debtors was the

22  Chicago Cubs?

23  A    I am not.  Well, at the -- excuse me.  At the time of

24  the transaction that the Chicago Cubs were owned by the

25  Tribune?

1    Q      Yes, sir.  That's the question.  Did you know that?

2    A      I believe I was aware of that.

3    Q      And -- and just to put an end to this line, no one

4    ever told you that the examiner had made a factual error as

5    to where in the Tribune structure the ownership of the

6    Chicago Cubs lay?

7    A      I was not made aware of that.

8    Q      Thank you, Dr. Beron.

9              MR. SOTTILE:  I have nothing further.

10             THE COURT:  Is there any other cross-examination?

11             MR. BRADFORD:  Yes, Your Honor.

12             MR. SOTTILE:  Your Honor, I'm sorry to interrupt.

13   It is my intention to ask the Court to consider a motion to

14   exclude the witness's testimony on the grounds previously

15   described.  I was assuming the Court would want to hear that

16   at the conclusion of the examination, but I'm happy to

17   proceed --

18             THE COURT:  You assumed correctly.

19             MR. SOTTILE:  Thank you, Your Honor.

20             MR. BRADFORD:  David Bradford for EGI TRB and Mr.

21   Zell.

22   BY MR. BRADFORD:

23   Q      Dr. Beron, to be clear your analysis is of the claims

24   against the lenders that are being settled.  Is that

25   correct?

1    A      That's correct.

2    Q      And you did not do an analysis of claims against third

3    parties, correct?

4    A      Correct.

5    Q      And you are not offering an opinion about whether the

6    claims against Mr. Zell have no meaningful probability of

7    success as Professor Black testified.  Is that correct?

8    A      That is correct.

9           MR. BRADFORD:  No further questions.

10          THE COURT:  Is there any other cross-examination?

11      (No audible response)

12          THE COURT:  Dr. Beron, I have a couple of

13   questions of my own.

14          Have you had occasion previously to undertake a

15   decision tree risk analysis with respect to fraudulent

16   transfer litigation or claims?

17          THE WITNESS:  In the thirty years and the

18   hundreds of cases it -- it rings a vague bell, but I really

19   can't recall a particular case.

20          THE COURT:  Okay.  Are you aware of whether

21   others of your expertise have done so?

22          THE WITNESS:  I can't say.

23          THE COURT:  Are you aware of whether the analysis

24   has ever been employed in the bankruptcy context?

25          THE WITNESS:  Just generally related to

1    bankruptcy.  I can't recall anything in particular.  I'm

2    sure it must have been, but --

3                THE COURT:  Okay.  Does it make a difference?

4                THE WITNESS:  No.

5                THE COURT:  All right.

6                Redirect.

7                MR. HURLEY:  Your Honor, could we have just five-

8    minutes?  I think the redirect will be quite short.

9                THE COURT:  Okay.  We've got a hard break at

10   5:30, remember.  I'll give you five minutes.

11               MR. HURLEY:  Thank you, Your Honor.

12               THE COURT:  All right.

13        (Recess)

14               THE CLERK:  All rise.

15               Be seated, please.

16               THE COURT:  Redirect.

17               MR. HURLEY:  Thank you, Your Honor.  Mitch Hurley

18   with Akin, Gump again for Aurelius.

19                         REDIRECT EXAMINATION

20   BY MR. HURLEY:

21   Q    Dr. Beron, on the cross Mr. Sottile asked you some

22   questions about financial condition tests associated with

23   these claims that you analyzed.  Do you remember that?

24   A    Yes.

25   Q    And he had some questions about what would happen if

1   they were treated as connected instead of not connected?

2   A      Correct.

3   Q      Okay.  And he also asked you some questions about

4   equitable subordination and equitable disallowance and

5   whether it's appropriate in your view to treat those as two

6   different tests instead of the same test.  Do you remember

7   that?

8   A      Yes.

9   Q      Okay.  And then he finally asked you some questions

10  about a change that -- that you made to your trees based on

11  conversations you had with counsel about a meaning of a

12  section of the examiner report.  Do you remember that?

13  A      I do.

14  Q      Okay.  And you remember Mr. Sottile asking you

15  questions about these topics at your deposition as well,

16  sir?

17  A      Yes.

18  Q      Okay.  And at your deposition you remember he asked

19  you whether you had run any sensitivities to find out what

20  change there would be in your ultimate expected value

21  conclusion if you made those changes?

22  A      He did.

23  Q      Okay.  And do you remember that at your deposition you

24  were only able to give a -- a rough answer of where you

25  thought a -- that expectability was?

1   A      That's correct.

2   Q      Now since your deposition, sir, have you had an

3   opportunity to refresh your recollection about what effect

4   on the expected value it would have to make the changes

5   identified in -- by Mr. Sottile?

6   A      I did.

7   Q      Okay.  And -- and what affect would it have, sir?

8   A      Taking all three into account, essentially using only

9   two financial conditions tests instead of three, allowing

10  for no equitable subordination if there was no disallowance

11  and changing the participation scenarios to, I guess, call

12  it bifurcated, I believe lowered the expected present value

13  to 1.3 billion.

14  Q      Now, sir, are you amending your expert report in this

15  case, sir, based on these sensitivities?

16  A      I am not.

17  Q      Okay.  Is it your view that the changes identified by

18  Mr. Sottile on his cross are necessary for your opinion to

19  be accurate?

20  A      I -- I do not -- I am -- ask the question again.

21  Q      Is it your view that the changes that Mr. Sottile

22  brought out on his cross are necessary for your -- to your

23  analysis to be accurate?

24  A      I do not believe the changes are necessary for the

25  report -- the conclusions to be accurate.

1    Q      Thank you.

2           And so you stand by your expected value in your

3    original report and rebuttal report?

4    A      I do.

5    Q      And that number again, sir?

6    A      1.57 billion.

7    Q      Thank you.

8              THE COURT:  Recross.

9              MR. SOTTILE:  Very brief, Your Honor.  I'm sorry.

10   But a couple of things I think I have to follow up on.

11                     RECROSS-EXAMINATION

12   BY MR. SOTTILE:

13   Q    Dr. Beron, I just want to be sure that the record is

14   clear on the sensitivities that you ran.

15          Is it correct that one of the sensitivity -- one of

16   the changes you made in those sensitivities is that you

17   treated two of the three tests for a constructive fraudulent

18   conveyance as dependent while leaving the third independent?

19   Do I have that right?

20   A      No. I -- I eliminated the third test.  However, I

21   believe that the effects you're discussing from the

22   dependencies -- now are you talking about the dependencies

23   from one test to the other or between parent and subs?

24   Q      Between one test and another, Dr. Beron.

25   A      That's correct.  They were left as independent.

1  Q     Okay.  So you -- you left balance sheet insolvency and

2  capital adequacy as independent when you ran the

3  sensitivity?

4  A     I left them, again, as the examiner concluded.

5  Q     Dr. Beron, you described three changes you made in

6  these sensitivities.  Do you recall that testimony you just

7  gave?

8  A     Yes.

9  Q     Is it correct that none of those changes related to

10 the treatment of intentional fraudulent conveyance in your

11 analysis?

12 A     That's correct.

13 Q     Thank you, Dr. Beron.

14        THE COURT:  Any other recross?

15     (No audible response)

16        THE COURT:  Thank you, sir.  You may step down.

17        MR. HURLEY:  We're hoping to have an opportunity

18 to move the reports in, sir.  I don't know or, Your Honor,

19 if we're waiting for the argument.  I just want to make sure

20 that request is still --

21        THE COURT:  I think we have some time.

22     (Laughter)

23        MR. HURLEY:  Okay.

24        THE COURT:  Okay.  Let me hear your objection,

25 Mr. Sottile.

1          MR. SOTTILE:  Certainly, Your Honor.

2          THE COURT:  And the motion if you have it to

3    make.

4          MR. SOTTILE:  Your Honor, we move to strike the

5    testimony on the -- of the witness, Dr. Beron, on the

6    grounds that Dr. Beron does not meet the requirements of

7    either Rule 702 of the federal rules of evidence or Rule 703

8    with respect to whether he relied upon information that is

9    reasonably relied upon by experts in his field.

10          Rule 702, as the Court is aware, is the general

11    rule that deals with testimony by experts.  It states that

12    if scientific, technical or other specialized knowledge will

13    assist the trier of fact to understand the evidence or to

14    determine a fact in issue, a witness qualified as an expert

15    by knowledge, skill, experience, training or education may

16    testify thereto when -- if three requirements are met:

17          The testimony is based upon sufficient facts or

18    data.  As to that one, Your Honor, we believe the testimony

19    was clear that it is not based on sufficient facts or data.

20    Dr. Beron repeatedly described what he did.  He looked at

21    the headlines in the examiner's report, the conclusions.

22    That was his assignment.  That's what he did.  He did

23    nothing more.  He did not look at the entirety of the

24    examiner's report.  He did not consider how the examiner's

25    explanations might affect the assignment of probabilities to

1  his conclusions.  And we, therefore, submit, Your Honor,

2  that his opinion is not based upon sufficient facts or data

3  to be helpful to this Court in evaluating the expected value

4  of the fraudulent conveyance and other claims against the

5  LBO lenders.

6           THE COURT:  Mr. Sottile, why wasn't this issue

7  raised before?

8           MR. SOTTILE:  Your Honor, in many ways the basis

9  for the motion was not -- could not be apparent until we

10  took the deposition.  We took the deposition on the Saturday

11  before the confirmation hearing began.  And if the Court is

12  raising the question whether we should have raised it last

13  week --

14           THE COURT:  I think I just did.

15           MR. SOTTILE:  Yes.

16      (Laughter)

17           MR. SOTTILE:  Your Honor, in all candor, until we

18  saw the evidence here, until we saw how it was the proposed

19  -- the noteholders proposed to have the witness rely upon

20  recovery data, which is the Rule 703 part of our argument,

21  it was difficult for us to evaluate the merits of an

22  argument to exclude Dr. Beron.  But I take the Court's point

23  that perhaps some of these issues could have been raised

24  earlier.

25           That said, Your Honor, I think the record is

1  clear now that there is a basis on which the testimony

2  should be excluded under both Rule 702 and Rule 703.

3          THE COURT:  All right.  Thank you.

4          MR. SOTTILE:  Your Honor, may I speak very

5  briefly to the Rule 703 prong of the argument, just so the

6  Court understands my thinking?

7          THE COURT:  Go ahead.

8          MR. SOTTILE:  Your Honor, as the Court is aware

9  in order for an expert to rely on materials that have not

10  otherwise been admitted into evidence, the finder of fact,

11  the Court must conclude that the materials are of the type

12  reasonably relied upon by experts in the field.

13          The principle thing that Dr. Beron relied upon

14  that he can't validate himself is the amounts of recoveries

15  produced by the Aurelius waterfall model.  That is central

16  to his analysis.  Without it, he -- he testified he could

17  not give the Court an opinion on expected value.

18          Your Honor, I submit that the testimony on cross-

19  examination shows that Dr. Beron could not reasonably rely

20  upon it.  What people in his field do, he says, is take

21  uncritically what their clients tell them to assume about

22  litigation recoveries.  That may be entirely appropriate

23  when it's the client who is requesting the analysis, and if

24  the client gets its damages numbers wrong, the only one hurt

25  is the client.  That's not the case here, Your Honor.

 1              Here, you are being asked to accept the testimony

 2  of this expert as probative of the value of these claims and

 3  you have an expert who's telling you, I don't know whether

 4  the numbers that underlie my report are right or not.  All I

 5  know is my client told me to use them, and you have no other

 6  evidence establishing that those numbers are right or wrong.

 7  And in those circumstances we submit, Your Honor, that the

 8  report, to the extent it's based on a use of these

 9  recoveries numbers, must be excluded.

10              Thank you, Your Honor.

11              THE COURT:  Thank you.

12              MR. HURLEY:  Mitch Hurley again, Your Honor.

13              Just respond to first the point that was made

14  about timing.

15              I think Mr. Sottile said that they weren't able

16  to assess the evidence or until they saw the evidence here

17  today they didn't know how they could formulate their

18  Daubert motion.  I'm not sure -- that seemed to be what he

19  was saying.  I just want to make it clear that the expert

20  report was produced on February 9th and the model was

21  produced along with it at that time.

22              The evidence that was presented here, Your Honor,

23  I think it's fair to say and you have a copy of the expert

24  report now, is one-hundred percent consistent with what Dr.

25  Beron said in both his opening expert report and his

1    rebuttal report.  In fact, it followed it very closely.

2         Now with respect to the question of whether or

3    not this expert is qualified under the circumstances, I

4    would cite, Your Honor, to the Third Circuit case, <u>Pineda</u>,

5    which is 520 F.3d. 237, which the Third Circuit held, I

6    guess, just in 2008, expert qualification requirement is

7    treated liberally in this circuit.  There are a broad range

8    of knowledge, skills and training that qualify a person as

9    an expert, and what you need to do is lay the foundation

10   based on -- that the person has the expertise based on

11   education or experience.

12        I think here, clearly, that Mr. -- Dr. Beron has

13   established that he has sufficient facility with these

14   materials -- he's been doing for thirty years -- to get over

15   that threshold.  Quite readily, that the expert opinion is

16   the product of reliable principles and methods.  Here, as I

17   believe he testified, risk analysis and expected value go

18   back centuries, and as applied to litigation decades.

19        I would also point out, Your Honor, that in this

20   case multiple parties have sought to do some kind of

21   decision tree and to put it in front of Your Honor.  The

22   difference between them and Dr. Beron, we submit, is that

23   Dr. Beron is -- has a lot more experience in this area than

24   the others who attempted to do so, and applied those methods

25   reliably and consistently.

1          In short, we believe the foundation required for

2    -- under 702 and under Penieda has been more than met.

3          Concerning the Rule 703 issue, Your Honor, the

4    rule, of course, is clear on its face.  It provides that if

5    a material of a type reasonably relied upon by experts in

6    the particular field in forming opinions or inferences upon

7    the subject, the facts or data need not be admissible in

8    evidence in order for the opinion or inference to be

9    admitted.

10         As Mr. Sottile pointed out, Dr. Beron testified

11   on direct that it would be customary in his field to rely on

12   damages and recovery materials provided by others and not to

13   calculate those materials himself or themselves, which makes

14   a lot of sense considering that he is not a lawyer and so

15   you would expect him to rely on counsel to provide that kind

16   of information.

17         There was an assertion, I think, that there's

18   been no foundation laid with respect to the reliability of

19   the Aurelius model in this case.

20         First of all, I know my colleague, Mr. Zensky,

21   did some examination with Mr. Gropper about the model

22   already and there's -- would remain some more examination to

23   do, obviously, if -- if we were allowed to do it.  But we

24   believe that based on the foundation already laid, it's

25   clear that the model is reliable.

1          Mr. Gropper testified that he supervised the

2   creation of the model.  It was produced in discovery.  It

3   was subject to extensive examination at depositions.  They

4   had all the time in the world to look at it and try and poke

5   holes in it.  Their numbers are based on the capital

6   structure, based on the amount of claims the creditors have

7   in these cases run through an Excel spreadsheet, and based

8   on the scenarios that we showed you at the end of Dr.

9   Beron's tree where they modeled the litigation scenarios.

10          There are no probabilities in the waterfall

11  model.  It's just math run through a spreadsheet and we

12  believe that there is clearly sufficient indicia of

13  reliability for this expert under the circumstances to rely

14  on it in formulating his opinion.

15          THE COURT:  Thank you.

16          Motion to strike is denied.  NPP 2476 and 0957

17  are admitted.

18      (NPP Exhibits 2476 and 0957 admitted in evidence.)

19          THE COURT:  We will start tomorrow at 9:30.

20  We'll break at about 12:15, and hopefully we'll wrap up with

21  the remaining witness before the end of the day.

22          Are there any questions or is there anything else

23  to be discussed before we adjourn?

24      (No audible response)

25          THE COURT:  Thank you all very much.  Court is

1  adjourned.

2        (Whereupon at 5:22 p.m., the hearing was adjourned)

3                        CERTIFICATION

4           I certify that the foregoing is a correct

5  transcript from the electronic sound recording of the

6  proceedings in the above-entitled matter.

7

8

9

10  Sherri Breach                    March 18, 2011
11  AAERT Cert. No. 397
12  Certified Court Transcriptionist
13

1                                    INDEX

2  WITNESSES:          Voir Dire     Direct    Cross    Redirect    Recross

3  Mark J. Prak          19            26        70        90          99
4
5  Bruce Beron                        101       171       246         249
6
7
8
9                                  EXHIBITS
10
11                                    Identified      Received

12  Noteholder FCC Exhibits:

13  1-90 & 92-118 - Confidential            14              15

14  NPP 2476 - Dr. Beron Report            257             257

| Word | Page:Line |
|---|---|
| **08-13141-kjc**(1) 1:5 | |
| **10-minute**(1) 70:10 | |
| **100-mile**(1) 29:2 | |
| **18-percent**(1) 47:17 | |
| **20-percent**(3) 49:4 49:18 52:6 | |
| **25-percent**(1) 68:24 | |
| **39-percent**(1) 28:18 | |
| **40-percent**(1) 42:22 | |
| **42.6-percent**(4) 40:5 41:22 42:10 42:16 | |
| **5-percent**(1) 23:17 | |
| **60-day**(1) 61:9 | |
| **80(a)(3**(1) 49:16 | |
| **a.m**(4) 1:13 13:1 70:12 70:12 | |
| **abc**(3) 20:9 20:11 20:12 | |
| **abilities**(1) 108:6 | |
| **ability**(6) 33:4 33:25 51:13 51:25 65:18 75:9 | |
| **able**(22) 30:19 51:24 61:8 76:6 80:10 92:24 98:4 99:24 109:1 109:4 115:7 156:21 161:15 161:18 173:12 185:5 194:1 196:1 229:16 241:8 247:24 254:15 | |
| **about**(131) 15:19 21:2 22:6 24:13 32:22 33:10 33:12 33:18 37:24 43:22 44:9 46:19 47:25 48:15 49:9 52:16 58:3 58:25 60:13 60:13 61:14 62:6 64:24 68:3 70:23 71:9 72:2 72:8 73:10 74:17 75:18 79:11 79:21 80:14 81:2 81:8 81:18 84:23 86:13 86:21 93:9 93:15 94:16 94:18 95:5 96:4 97:4 97:6 98:5 99:13 99:15 102:9 102:18 104:3 104:16 104:16 104:20 104:23 105:13 107:7 107:24 114:4 114:6 115:12 117:24 122:21 124:18 126:2 126:2 129:17 131:20 139:9 139:17 140:1 142:17 144:3 145:25 147:5 147:14 152:16 152:17 155:25 156:19 160:1 161:6 161:9 161:14 161:25 166:23 170:1 170:3 171:13 173:11 175:24 176:3 176:12 177:16 178:20 183:18 185:20 186:1 189:11 195:13 199:25 210:15 224:18 225:22 228:1 228:24 230:20 231:14 235:11 237:11 237:14 242:3 243:4 243:10 243:14 245:5 246:22 246:25 247:3 247:10 247:11 247:1 248:3 249:22 253:21 254:14 256:21 257:20 | |
| **above**(1) 107:15 | |
| **above-entitled**(1) 258:6 | |
| **absent**(3) 174:15 181:21 225:5 | |
| **absolute**(1) 169:23 | |
| **absolutely**(9) 22:19 31:15 71:22 118:9 142:14 145:5 164:18 169:6 218:5 | |
| **accept**(5) 63:3 82:8 170:18 213:16 254:1 | |
| **accepted**(3) 108:18 109:22 172:9 | |
| **accommodate**(3) 69:25 74:13 100:3 | |
| **accommodates**(1) 141:10 | |
| **accomplish**(1) 122:5 | |
| **accordance**(2) 174:18 181:24 | |
| **according**(2) 117:11 209:18 | |
| **accordingly**(2) 26:7 121:1 | |
| **account**(6) 36:24 215:1 225:17 231:25 237:19 248:8 | |
| **accounted**(1) 210:24 | |
| **accounts**(1) 49:18 | |
| **accurate**(5) 164:18 226:17 248:19 248:23 248:25 | |
| **accurately**(8) 97:14 161:7 208:16 226:14 226:22 231:10 231:13 232:12 | |
| **acknowledge**(1) 93:5 | |
| **acquainted**(1) 118:12 | |
| **acquire**(1) 22:8 | |
| **acquisitions**(1) 21:18 | |
| **across**(3) 108:18 150:18 206:24 | |
| **act**(6) 21:11 21:15 21:21 49:16 75:10 92:2 | |

| Word | Page:Line |
|---|---|
| **action**(6) 60:21 61:2 92:11 119:16 120:12 144:15 | |
| **actions**(3) 77:12 193:18 222:15 | |
| **acts**(2) 150:2 150:7 | |
| **actual**(5) 40:20 123:20 124:13 190:16 215:24 | |
| **actually**(20) 16:12 30:21 36:18 39:16 40:8 40:20 61:2 66:8 72:6 79:23 83:5 106:23 107:12 151:13 154:8 156:24 172:20 184:1 210:4 237:2 | |
| **adam**(1) 3:26 | |
| **add**(9) 56:8 56:10 87:16 87:21 111:7 111:14 113:16 144:8 207:6 | |
| **added**(5) 66:14 68:4 71:17 163:17 164:4 | |
| **addendum**(2) 94:10 98:23 | |
| **addition**(6) 24:5 56:17 59:2 69:11 69:16 104:25 | |
| **additional**(14) 54:10 56:8 56:9 56:17 58:2 69:17 69:17 69:25 70:1 78:19 83:16 83:17 145:24 237:8 | |
| **address**(11) 18:12 43:15 70:5 71:23 72:13 72:16 72:19 72:21 72:23 73:15 142:24 | |
| **addressed**(6) 70:24 78:6 94:4 116:3 122:7 236:19 | |
| **addresses**(1) 127:16 | |
| **adds**(2) 58:2 81:8 | |
| **adelman**(2) 3:5 13:14 | |
| **adequacy**(2) 147:1 250:2 | |
| **adequate**(6) 133:18 230:16 231:9 231:21 232:7 232:10 | |
| **adjective**(1) 58:5 | |
| **adjourn**(1) 257:23 | |
| **adjourned**(2) 258:1 258:2 | |
| **adjust**(2) 19:4 240:4 | |
| **adler**(1) 4:24 | |
| **administrative**(2) 13:8 33:6 | |
| **admissible**(2) 139:13 256:7 | |
| **admission**(1) 13:20 | |
| **admitted**(11) 14:1 14:24 15:2 15:21 98:12 139:25 140:3 253:10 256:9 257:17 257:18 | |
| **adopted**(4) 30:11 56:14 56:20 175:11 | |
| **adopts**(1) 21:13 | |
| **advanced**(3) 86:4 102:25 103:1 | |
| **adversely**(7) 37:13 52:25 53:8 55:19 56:7 57:22 68:25 | |
| **advertising**(1) 38:18 | |
| **advice**(4) 21:23 52:10 105:13 228:2 | |
| **advise**(4) 101:25 119:14 128:21 128:23 | |
| **advised**(3) 16:16 95:20 242:9 | |
| **advising**(2) 170:17 238:24 | |
| **advisor**(4) 51:4 51:6 51:6 51:12 | |
| **advisors**(6) 51:4 51:15 51:21 51:24 52:4 52:5 | |
| **advisory**(1) 92:5 | |
| **advocacy**(1) 161:24 | |
| **advocate**(1) 161:21 | |
| **advocates**(1) 161:22 | |
| **aert**(1) 258:11 | |
| **affairs**(4) 33:25 47:15 50:20 52:1 | |
| **affect**(14) 21:9 22:12 37:13 52:25 53:9 55:20 64:17 67:22 68:25 215:18 234:12 242:10 248:7 251:25 | |
| **affected**(2) 187:15 231:22 | |
| **affecting**(1) 56:7 | |
| **affects**(2) 53:24 57:22 | |
| **affidavit**(1) 98:7 | |

| Word | Page:Line |
|---|---|
| **affiliates**(3) 20:9 20:11 51:3 | |
| **afforded**(1) 60:18 | |
| **afraid**(1) 197:21 | |
| **after**(17) 23:25 27:2 39:8 51:1 63:1 72:17 90:3 93:7 95:11 103:12 104:6 127:9 175:13 200:19 234:16 235:6 241:12 | |
| **afternoon**(5) 100:20 101:6 101:7 171:10 171:11 | |
| **afterwards**(1) 235:10 | |
| **again**(59) 30:7 45:19 57:7 63:5 77:3 79:11 87:15 88:3 89:3 92:21 93:5 94:12 111:12 111:14 114:18 119:18 119:22 124:9 124:11 132:13 133:3 133:20 135:21 138:5 143:12 144:5 144:16 147:19 148:24 150:10 151:6 151:9 151:11 156:20 158:20 159:10 169:18 178:22 188:16 189:10 196:5 197:22 209:25 231:10 218:20 230:25 232:2 232:15 232:22 236:7 238:3 238:4 240:3 246:18 248:20 249:5 250:4 254:12 | |
| **age**(1) 152:13 | |
| **agents**(2) 151:2 151:6 | |
| **aggregate**(3) 40:5 51:13 51:24 | |
| **aggregated**(1) 136:11 | |
| **aggressive**(1) 51:17 | |
| **ago**(6) 76:11 82:6 82:12 89:15 148:8 186:7 | |
| **agree**(20) 35:24 73:8 88:6 170:14 170:18 180:9 182:4 194:13 195:2 195:18 202:6 203:14 214:14 219:17 220:12 220:21 226:25 238:7 238:16 240:24 | |
| **agreed**(4) 16:2 18:15 77:7 89:5 | |
| **agreement**(9) 6:9 13:23 14:3 16:4 41:10 42:1 43:6 43:9 155:4 | |
| **agreements**(2) 28:24 28:25 | |
| **agudelo**(1) 11:36 | |
| **ahead**(2) 17:7 253:7 | |
| **ahmed**(1) 11:5 | |
| **air**(1) 115:2 | |
| **akin**(14) 2:36 8:21 39:6 100:21 115:13 171:19 172:15 173:22 175:16 182:22 210:5 228:7 229:4 246:18 | |
| **algebra**(1) 103:2 | |
| **all**(135) 13:12 14:9 14:22 18:22 20:2 20:2 20:10 21:6 24:22 28:24 29:2 29:22 33:15 42:1 42:14 44:7 46:11 49:5 50:18 53:15 56:4 59:18 61:22 62:9 69:11 69:15 69:25 70:5 70:13 74:16 74:20 74:20 77:25 80:25 88:9 88:11 89:18 95:21 96:10 96:10 98:9 98:16 98:25 100:14 100:17 101:9 103:22 105:21 106:22 107:19 108:2 108:6 109:1 109:2 109:7 110:14 112:9 114:7 120:25 130:12 130:15 133:15 133:1 133:20 134:7 134:10 135:11 136:5 136:14 137:12 137:12 137:18 141:10 141:14 141:17 143:8 145:21 150:2 151:3 154:13 156:3 159:20 163:13 164:3 164:8 164:13 171:5 173:20 175:14 175:13 179:17 181:8 183:7 189:4 191:18 200:7 200:12 201:16 202:24 204:16 204:16 205:2 206:1 206:18 207:10 207:20 208:19 212:8 214:15 214:22 222:5 223:16 224:13 224:1 226:3 232:2 234:3 234:20 236:3 238:12 239:18 240:15 246:5 246:12 246:14 248:8 252:17 253:3 254:4 256:20 257:4 257:25 | |
| **allinson**(1) 4:35 | |
| **allison**(1) 7:19 | |
| **allocated**(1) 91:24 | |

| Word | Page:Line |
|---|---|
| **allow**(7) 51:21 53:12 99:23 131:6 229:15 232:19 241:8 | |
| **allowed**(4) 49:22 128:9 151:15 256:23 | |
| **allowing**(2) 220:13 248:9 | |
| **allows**(1) 75:5 | |
| **alma**(1) 24:11 | |
| **almost**(5) 32:3 48:12 82:12 165:21 218:17 | |
| **alone**(2) 42:23 76:18 | |
| **along**(7) 15:10 59:6 65:24 160:20 160:22 216:21 254:21 | |
| **aloud**(10) 174:11 175:16 178:9 180:5 181:16 191:14 194:9 200:13 219:9 222:9 | |
| **already**(17) 27:15 55:9 74:23 79:16 83:11 98:18 99:3 135:4 185:1 221:3 222:23 223:6 225:8 234:24 241:4 256:22 256:24 | |
| **also**(46) 16:20 20:12 21:23 23:12 26:14 28:25 35:6 44:19 48:19 49:25 54:16 54:18 64:8 65:8 66:21 76:14 82:15 98:19 102:6 105:2 111:3 112:7 126:18 129:2 132:5 138:2 142:8 175:23 192:5 195:20 196:12 199:16 200:5 206:2 207:18 208:22 209:17 213:14 217:25 219:15 219:20 227:2 235:19 235:25 247:3 255:19 | |
| **alternate**(1) 43:11 | |
| **alternative**(3) 23:4 126:19 172:8 | |
| **alternatives**(1) 114:24 | |
| **although**(7) 45:22 48:19 68:6 174:19 200:15 200:18 237:3 | |
| **alvarez**(3) 9:38 9:38 11:25 | |
| **always**(3) 21:18 22:9 162:23 | |
| **ambiguity**(1) 179:14 | |
| **ambiguous**(2) 176:18 176:19 | |
| **amend**(1) 90:3 | |
| **amended**(6) 31:19 31:19 72:18 77:16 94:11 98:23 | |
| **amending**(1) 248:14 | |
| **amendment**(1) 26:25 | |
| **amends**(1) 21:11 | |
| **america**(2) 6:21 6:27 | |
| **americas**(1) 3:21 | |
| **amit**(1) 10:22 | |
| **ammunition**(1) 87:16 | |
| **among**(8) 18:15 23:22 41:11 74:17 82:19 137:15 140:6 153:16 | |
| **amount**(14) 75:6 81:12 84:25 91:24 96:24 143:11 148:1 163:23 166:7 166:19 213:25 238:17 238:22 257:6 | |
| **amounts**(9) 34:14 47:11 143:20 151:7 155:1 173:14 226:3 226:8 253:14 | |
| **analyses**(5) 106:21 109:23 144:23 240:6 240:17 | |
| **analysis**(75) 23:10 23:22 73:5 93:19 101:19 103:8 103:11 103:13 103:17 103:19 103:21 103:23 104:7 104:10 104:10 104:15 105:3 105:10 106:4 107:11 107:17 107:22 108:1 108:9 108:17 108:24 109:14 111:2 114:25 116:2 118:11 118:15 118:18 119:4 119:10 120:19 126:24 127:13 127:15 128:12 128:25 134:20 137:4 144:19 152:1 153:17 153:20 155:20 155:24 160:10 160:21 161:12 162:5 166:22 171:21 171:23 171:25 191:7 195:22 198:4 203:10 204:8 223:5 225:9 227:6 241:4 244:23 245:2 245:15 245:23 248:23 250:11 253:16 253:23 255:17 | |
| **analysis."**(1) 122:9 | |
| **analyst**(2) 152:14 184:6 | |
| **analyze**(1) 224:24 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **analyzed**(7) 163:5 166:6 166:20 186:3 190:1 197:4 246:23 | | **and**(301) 59:14 59:16 59:19 59:22 60:7 60:10 60:12 60:12 60:15 60:22 61:2 61:5 61:8 61:18 61:21 61:22 61:25 62:3 62:3 62:6 62:6 62:8 62:11 62:12 62:22 62:25 63:3 63:5 63:12 63:17 63:20 63:21 63:23 64:2 64:2 64:2 64:9 64:12 64:13 64:13 64:16 64:25 65:6 65:16 65:18 65:22 65:23 66:11 66:21 66:22 67:1 67:2 67:6 67:13 67:15 67:24 68:2 68:16 68:20 68:21 69:3 69:6 69:10 69:21 69:22 70:1 70:5 70:5 70:6 70:11 70:15 71:4 71:8 71:11 71:14 71:16 71:19 71:21 71:23 71:24 72:2 72:7 72:15 72:17 72:21 72:23 73:1 73:4 73:5 73:9 73:14 73:15 73:19 73:22 74:1 74:5 74:17 74:18 74:19 74:22 75:1 75:4 75:12 75:18 76:1 76:9 76:10 76:11 76:12 76:18 76:22 77:3 77:7 77:8 77:16 77:18 78:2 78:5 79:4 79:11 79:16 79:17 79:21 79:22 80:3 80:4 80:7 80:13 80:19 80:24 80:25 80:25 81:18 82:3 82:11 82:15 82:15 82:20 82:21 82:23 83:2 83:10 83:10 83:15 83:16 83:23 84:5 84:10 84:23 85:6 85:11 86:16 86:20 86:24 87:4 87:6 87:11 87:20 87:24 88:3 88:12 88:18 88:19 88:21 88:25 89:11 89:14 89:18 89:25 90:5 90:11 90:25 91:3 91:4 91:9 91:12 91:15 91:16 91:17 91:17 91:25 92:2 92:2 92:6 92:6 92:12 92:17 92:19 92:21 93:7 93:8 93:11 93:17 94:3 94:12 94:13 95:9 95:11 95:17 96:4 96:6 96:16 96:18 96:22 96:23 97:3 97:8 97:11 97:12 97:12 97:17 97:20 97:21 98:14 98:15 98:16 98:17 98:19 98:22 99:15 100:1 100:3 100:5 100:18 101:20 101:25 102:3 102:15 102:23 103:1 103:2 103:4 103:5 103:10 103:12 103:16 103:17 103:18 103:21 103:23 104:1 104:3 104:8 104:10 104:10 104:10 104:12 104:14 104:15 104:15 104:18 105:1 105:1 105:3 105:9 105:13 105:18 105:21 107:6 107:10 107:11 107:16 107:17 107:17 107:20 107:22 108:1 108:4 108:4 108:12 108:13 108:13 108:18 108:18 108:19 109:5 109:8 109:11 109:15 109:22 109:23 109:24 110:1 110:5 110:15 110:18 110:21 111:5 111:12 111:1 111:16 111:19 111:21 111:25 112:3 | **and**(301) 112:6 112:7 112:10 112:11 112:12 112:16 112:19 112:19 112:20 112:25 113:2 113:6 113:12 113:14 113:15 113:16 113:16 113:21 113:24 113:25 114: 114:3 114:15 114:16 114:19 114:19 114:25 115:1 115:5 115:9 115:10 115:18 115:24 116:3 116:5 116:6 116:9 116:11 117:18 118:10 118:17 119:6 119:8 119:18 119:22 120:13 121:5 121:12 121:14 121:1 121:21 121:24 122:9 122:10 122:15 122:22 122:25 123:8 123:18 123:10 123:19 124:3 124:6 124:8 124:12 124:15 125:11 125:13 125:15 125:17 125:20 125:23 126: 126:8 126:9 126:14 126:15 127:4 127:7 127:12 127:13 127:17 127:20 127:20 127:22 127:23 128:4 128:7 128:7 128:14 128:21 129:2 129:2 129:6 129:16 129:19 129:21 129:22 129:24 130:11 130:13 130:19 130:20 130:23 131:5 131:8 131:17 131:21 131:21 131:23 132:1 132:2 132:3 132:17 132:18 132:20 133:6 133:7 133:11 133:14 133:15 133:16 133:18 133:18 133:20 133:22 133:24 133:25 134: 134:9 134:14 134:17 134:18 134:22 134:24 135:15 135:15 135:18 135:18 135:25 136:2 136:2 136:2 136:4 136:4 136:10 136:11 136:22 136:25 136:25 137:9 137:10 137:10 137:10 137:1 137:19 138:2 138:2 138:17 138:19 138:23 138:24 139:5 139:9 139:10 139:13 140:2 140:23 141:12 141:15 141:18 141:24 142:4 142:5 142:6 142:7 142:12 142:21 142:22 142:22 142:23 143:9 143:9 143:10 143:11 144:7 144:7 144:10 144:13 144:24 144:25 144:25 145:3 146:5 146:8 146:12 146:22 147:3 147:11 147:14 147:22 148:4 148:13 148:15 148:17 148:20 148:22 148:24 149:3 149:5 149:8 149:9 149:13 149:22 150:8 150:10 150:15 150:1 150:19 150:24 151:9 151:16 152:10 152:13 153:13 153:19 153:22 153:25 154: 154:3 154:9 154:11 154:24 155:4 155:7 155:12 155:14 155:18 156:2 156:13 156:2 157:6 157:8 157:19 157:21 158:1 158:1 158:2 158:3 158:8 158:11 158:13 158:24 159:6 159:13 159:19 160:2 160:10 160:12 160:15 160:20 160:21 161:9 161:14 161:1 161:23 162:1 162:7 162:10 162:16 162:2 162:23 163:2 163:3 163:6 163:7 163:8 163:8 163:17 163:19 163:24 164:3 164:5 164:20 164:23 165:1 165:7 165:15 166:3 166:4 | **and**(301) 166:7 166:11 166:15 166:13 167:15 167:22 167:25 168:5 168:19 168:2 169:1 169:2 169:7 169:13 169:14 169:20 169:24 170:2 170:9 171:17 172:4 172:5 172:5 172:6 172:8 172:12 173:3 173:5 173:7 173:13 173:17 173:20 173:21 173:2 174:5 174:11 175:9 175:20 176:2 176:4 176:7 176:14 176:18 176:19 177:9 177:15 177:22 178:4 178:7 178:13 179:5 179:10 180:4 180:5 180:17 180:18 180:21 180:23 181:8 181:16 181:16 183:11 183:12 183:20 184:13 184:15 184:19 184:21 185:2 185:3 186:24 187:9 187:10 187:13 187:18 188:4 188:8 188:11 189:4 189:14 189:25 190:4 190:6 190:7 190:10 190:11 190:19 190:25 192:20 192:21 192:21 193:5 193:9 193:14 193:16 193:25 194:2 194:22 195:14 196:3 196:5 197:3 197:7 197:10 197:16 197:18 198:12 198:15 199:14 199:22 201:1 201:10 201:14 202:2 202:12 202:13 202:22 203: 203:8 203:16 204:12 204:16 204:19 204:22 205:1 205:3 205:13 205:17 205:20 205:23 206:2 206:9 206:13 206:23 207:6 207:6 207:9 207:17 208:4 208:7 208:8 208:10 209:11 209:23 210:2 210:17 211:5 211:9 211:19 211:11 211:24 212:1 212:2 212:8 212:9 212:10 212:17 212:23 213:8 213:13 213:13 213:16 214:5 214:7 214:7 214:10 214:18 214:24 215:7 215:21 216:9 216:12 216:16 216:17 216:21 217:3 217:8 217:10 218:2 218:25 219:6 219:10 220:6 220:9 220:24 221:3 221:5 221:13 221:22 222:6 222:7 222:8 222:21 222:24 223:20 223:23 223:23 224:11 224:23 225:8 226:7 226:10 226:13 226:22 227:5 227:9 227:15 227:17 227:20 227:22 228:5 228:15 228:18 229:2 229:3 229:6 229:17 229:23 229:24 230:8 230:10 230:20 230:20 231:8 231:18 232:2 232:15 232:16 233:18 233:19 234:3 234:11 235:9 235:13 235:17 235:24 236:3 236:4 236:22 237:5 237:8 237:15 238:5 238:8 239:3 239:9 240:7 240:17 240:20 241:4 241:22 241:23 241:23 241:24 242:4 242:4 242:6 243:15 244:3 244:3 244:20 245:2 245:5 245:17 246:25 247:3 247:4 247:4 247:7 247:14 247:18 247:23 248:7 248:7 248:11 249:2 249:3 249:5 249:23 249:24 250:1 251:2 252:1 252:4 252:11 253:2 253:23 254:2

**and**(26) 254:5 254:7 254:20 254:23 254:25 255:8 255:9 255:16 255:17 255:18 255:21 255:22 255:24 255:25 256:2 256:12 256:12 256:14 256:22 257:4 257:7 257:7 257:11 257:16 257:18 257:20

**and/or**(4) 26:3 35:6 52:25 140:8
**anderson**(1) 4:13
**andrea**(1) 8:32
**andrew**(6) 3:36 3:46 5:46 6:14 7:33 7:35 8:32
**anew**(1) 30:2
**angela**(1) 87:4
**angeles**(8) 5:18 67:2 67:11 67:24 69:1 69:12 69:13 87:18

**angelo**(73) 5:4 6:17 14:13 32:6 32:8 32:14 32:19 34:10 35:3 35:6 35:15 35:21 36:18 36:22 36:25 37:8 37:25 38:2 38:10 38:13 39:12 39:20 40:4 41:2 41:18 41:22 41:23 41:25 42:2 42:6 43:10 43:20 43:22 44:6 44:10 44:25 45:4 45:7 45:16 47:7 47:17 52:2 52:24 52:25 54:16 54:17 55:7 55:8 55:10 55:14 59:9 60:11 62:1 63:12 64:9 64:25 65:16 69:6 71:12 71:14 71:21 73:6 78:2 79:17 86:24 88:12 88:18 88:22 91:1 91:4 91:9 91:25 92:12

**anna**(2) 8:39 8:39 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**another**(18) 18:6 22:8 24:23 65:1 66:14 69:10 116:15 116:5 150:20 151:19 187:15 188:5 189:2 189:5 210:18 229:12 230:4 249:24

**answer**(36) 25:1 37:2 43:2 53:4 58:24 59:14 66:17 78:4 78:5 92:24 99:23 115:5 160:21 163:11 185:4 186:16 186:19 186:2 188:13 194:18 196:1 201:17 208:5 209:9 220:3 229:15 232:19 239:9 239:16 240:2 240:6 240:11 240:12 241:8 242:16 247:24

**answered**(7) 180:24 203:16 227:22 228:19 229:25 240:20 241:24

**answers**(1) 59:17
**anti-trust**(1) 53:21
**anticipate**(3) 16:23 18:13 102:11
**anticipated**(1) 17:9
**any**(92) 16:3 22:11 24:5 26:5 30:12 32:22 33:8 43:3 53:14 53:16 55:18 64:15 71:24 75:6 76:24 78:21 82:6 82:7 83:15 90:11 90:19 91:7 92:24 102:25 103:7 103:23 106:9 113:18 117:25 119:10 119:13 119:2 120:15 121:9 126:15 138:14 138:25 145:16 146:1 151:7 151:25 152:8 152:22 152:25 153:20 156:10 158:13 161:6 161:9 161:17 165:10 174:21 177:1 178:15 180:1 182:10 183:25 185:23 187:16 192:13 192:23 193:18 195:4 204:8 204:10 204:18 206:4 208:20 209:1 215:24 218:4 218:21 221:8 225:17 225:17 226:10 228:24 229:6 229:21 230:16 233:2 233:3 235:6 235:9 242:9 242:10 242:18 244:10 245:10 247:1 250:14 257:22

**anyone**(3) 43:9 75:23 163:10
**anything**(16) 17:5 17:22 19:24 79:13 91:7 96:19 113:12 121:14 152:17 153:3 153:6 157:1 162:22 171:14 246:1 257:22

**anytime**(1) 81:5
**anyway**(2) 97:25 99:1
**anywhere**(1) 149:17
**apologies**(2) 219:6 219:10
**apparent**(3) 107:11 154:10 252:9
**apparently**(1) 212:7
**appeal**(1) 85:4
**appeals**(1) 85:3
**appear**(11) 20:22 36:13 129:2 149:16 172:21 177:16 190:16 200:3 200:5 200:7 212:2
**appearances**(9) 5:31 6:1 7:1 8:1 9:1 10:1 11:1 12:1 21:3
**appeared**(2) 147:22 201:5
**appearing**(3) 102:16 105:18 135:19
**appears**(18) 38:4 41:10 48:1 111:11 140:23 141:24 169:14 173:18 174:12 194:6 200:14 206:10 213:8 214:9 214:22 222:10 233:19 239:10

**appellate**(1) 220:18
**apples**(2) 166:20 166:20
**applicable**(4) 174:15 174:19 181:22 181:25
**applicant**(1) 96:7
**application**(44) 21:17 22:1 22:1 24:3 26:25 27:10 27:12 27:14 27:25 30:1 30:21 31:4 31:5 31:6 31:9 33:8 33:10 39:5 39:8 39:10 39:11 43:16 48:10 56:3 56:25 65:13 77:12 77:16 81:21 82:2 82:12 82:17 85:25 86:9 86:13 86:14 87:2 87:3 95:5 95:13 95:14 96:23 149:13 192:2

**applications**(17) 27:9 52:17 53:1 54:6 55:20 77:10 83:12 83:14 85:7 85:8 85:11 87:21 90:3 96:18 99:14 99:18 99:18

**applied**(14) 30:25 56:15 109:14 112:9 127:23 131:8 131:10 142:12 158:12 174:2 200:2 241:1 255:18 255:24

**applies**(3) 137:21 138:5 138:6
**apply**(10) 49:12 90:7 104:14 137:22 137:24 143:14 158:4 174:2 180:18 203:1

**applying**(3) 108:12 109:1 176:14
**appoint**(1) 66:21
**appointed**(1) 68:23
**appreciate**(4) 27:5 36:12 36:20 41:8
**approach**(14) 18:3 36:5 70:15 96:16 96:19 100:23 100:25 153:20 161:17 161:19 176:7 177:19 203:1 211:8

**appropriate**(17) 60:22 106:24 109:17 121:15 154:18 155:19 164:15 172:3 190:2 191:23 210:7 215:7 222:25 238:18 241:11 247:5 253:22

**approval**(10) 18:16 21:19 28:2 59:12 60:17 62:18 64:17 67:23 79:25 92:3

**approvals**(2) 90:9 90:13
**approval"**(1) 60:23
**approve**(7) 26:20 31:12 43:16 77:9 77:12 77:18 77:19

**approved**(9) 37:16 37:20 39:9 63:24 71:2 79:1 86:3 88:5 97:12

**approves**(1) 37:10
**approximate**(1) 163:10
**approximately**(4) 40:12 95:6 103:25
**april**(2) 73:9 82:12
**arbitrarily**(1) 157:3

**are**(281) 13:8 13:25 14:1 14:2 14:4 14:17 14:18 15:7 15:12 16:18 17:16 18:8 19:12 19:17 20:5 20:11 20:15 20:25 21:7 21:20 22:9 22:19 22:21 22:24 23:1 24:1 25:4 25:17 27:21 27:23 28:16 28:17 29:4 29:22 29:24 31:21 32:3 34:2 34:4 34:7 35:5 35:12 36:13 37:6 37:12 38:5 38:6 38:8 39:1 41:17 41:24 43:7 43:23 46:1 47:3 47:8 47:10 47:11 47:16 49:18 49:22 49:25 50:11 50:21 50:22 53:10 55:10 55:14 55:17 58:17 58:20 58:23 59:10 61:11 61:12 61:20 62:8 62:19 62:20 63:25 63:25 71:15 72:4 73:22 77:8 77:24 77:25 78:7 78:13 79:3 79:9 80:25 82:4 82:19 84:12 85:23 87:14 88:19 88:23 89:6 92:10 92:11 93:13 93:14 94:12 97:17 97:17 97:19 101:18 102:1 105:6 105:8 105:11 105:24 105:25 108:22 109:5 109:8 110:1 110:14 110:18 110:20 111:23 112:12 113:11 114:8 115:10 116:6 116:8 117:9 117:10 117:17 117:22 118:17 120:1 121:15 127:10 127:13 127:14 127:22 127:23 128:1 128:1 128:2 128:4 128:18 129:1 129:25 130:3 130:7 130:12 133:24 134:2 134:8 135:12 136:7 137:8 137:9 137:10 137:18 137:19 138:2 138:3 138:14 138:16 138:17 139:19 139:17 139:19 141:21 143:14 143:15 143:17 148:16 150:7 150:13 151:21 155:11 156:1 159:16 159:19 159:20 159:20 160:4 160:5 161:17 163:17 163:25 164:2 164:6 164:1 164:21 165:2 166:13 166:18 167:22 168:1 168:18 168:20 169:2 169:3 169:16 181:17 182:3 182:7 184:3 187:10 188:2 188:25 188:25 189:2 189:4 189:10 190:1 190:5 191:7 193:12 195:13 199:22 203:22 204:1 205:5 206:13 207:10 207:18 208:11 208:12 209:1 213:4 215:12 215:13 215:15 216:14 219:20 220:18 221:5 222:5 225:18 227:1 227:10 228:15 228:16 228:17 229:11 231:21 236:25 237:10 237:12 242:19 243:20 244:24 245:5 245:20 245:23 248:1 248:18 248:22 248:24 249:22 251:16 253:11 254:1 254:4 254:6 255:7 255:7 257:10 257:17 257:22

**aren't**(1) 207:15
**argue**(1) 94:15
**arguing**(1) 192:20
**argument**(6) 55:13 87:16 250:19 252:20 252:22 253:5

**argumentativ**(1) 210:8
**arguments**(4) 64:1 84:25 85:2 87:7
**arif**(1) 12:6
**arise**(1) 71:25
**arising**(2) 123:3 173:14
**arms**(1) 64:11
**around**(7) 17:13 64:12 71:6 71:19 79:17 104:13 105:12

**arps**(1) 8:6
**arrangement**(2) 17:2 25:21
**arrowgrass**(2) 12:4 12:4
**ashby**(1) 2:46
**ashish**(1) 8:28
**ashley**(2) 3:38 5:35
**ask**(32) 16:21 27:1 34:9 34:12 35:4 36:18 37:24 38:23 40:7 41:21 43:19 43:21 45:13 47:25 48:7 49:9 50:5 54:2 56:24 63:7 70:23 72:8 72:9 73:10 91:18 92:21 92:24 107:24 153:5 224:6 244:13 248:20

**asked**(30) 45:6 45:13 64:24 72:7 74:17 80:4 80:7 92:15 92:21 93:8 95:4 97:6 101:10 101:17 115:20 118:7 160:19 171:12 180:23 182:22 203:16 227:22 228:18 229:24 240:20 246:21 247:3 247:9 247:18 254:1

**asking**(14) 16:19 26:16 65:12 88:9 88:11 93:17 94:18 102:19 117:25 182:13 184:3 196:8 234:25 247:14

**asks**(3) 52:21 59:8 63:9
**aspects**(3) 93:14 121:9 161:14
**assert**(2) 174:16 181:23
**assertion**(2) 57:16 256:17
**assertions**(1) 57:19
**assess**(3) 114:25 234:24 254:16
**assessing**(2) 115:9 146:18
**asset**(2) 8:34 8:35
**assets**(3) 242:25 243:15 243:21
**assign**(6) 123:1 123:5 124:19 154:20 156:22 222:17

**assigned**(26) 29:24 125:21 131:22 132:13 134:3 135:11 147:19 151:1 155:2 155:12 155:13 156:15 156:25 157:23 158:2 158:6 158:9 158:19 158:19 159:1 159:12 159:15 159:24 221:18 221:25 234:8

**assignee**(1) 27:18
**assignment**(18) 31:7 85:11 115:19 123:10 154:3 158:14 161:4 210:21 221:17 221:18 235:5 235:8 237:16 238:3 240:3 242:4 251:22 251:25

**assignments**(3) 105:8 124:25 164:7
**assist**(2) 241:20 251:13
**associated**(13) 72:4 79:5 85:8 92:23 99:14 99:18 103:16 112:22 114:8 114:16 143:10 144:7 246:22

**associates**(1) 236:23
**association**(5) 20:10 20:10 20:13 20:13 20:14

**associations**(3) 20:8 21:6 21:8
**assume**(19) 44:24 45:3 45:4 45:7 45:21 55:13 55:15 55:17 67:12 67:19 82:10 86:5 87:7 113:10 196:8 196:10 232:5 232:8 253:21

**assumed**(6) 189:15 189:17 201:14 227:18 232:10 244:18
**assumes**(1) 225:8
**assuming**(3) 214:24 231:24 244:15
**assumption**(6) 146:16 150:19 150:25 196:13 230:23 233:9

**assumptions**(6) 148:11 149:6 149:8 150:18 156:3 193:24

**asylum**(1) 4:31
**atamian**(1) 10:24
**atmospherics**(1) 46:11
**attaching**(1) 56:16
**attempt**(1) 23:4
**attempted**(2) 61:3 255:24
**attempting**(3) 46:8 85:24 199:10
**attended**(1) 102:20
**attention**(20) 31:16 31:25 36:1 37:22 40:21 40:22 41:13 43:25 44:8 59:4 59:25 65:1 65:24 66:11 67:24 91:11 91:16 93:19 198:11 219:4

**attorney**(2) 13:14 83:8
**attorneys**(1) 104:14
**attorneys'**(1) 17:15
**attorneys'-eyes-only**(1) 17:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**attributable(70)** 23:16 23:17 32:14 32:20 33:5 34:2 34:15 34:20 35:3 35:7 35:10 35:16 35:22 42:3 42:6 42:22 43:3 43:5 43:14 45:8 45:11 45:17 46:4 46:5 46:12 46:13 46:14 46:24 46:25 47:3 47:21 47:23 48:21 48:24 49:2 50:6 50:9 50:14 51:9 52:22 54:23 55:3 55:10 55:15 55:17 58:7 65:3 65:12 66:23 67:5 67:6 67:16 67:22 69:5 73:22 75:16 76:9 76:25 77:14 88:19 88:19 88:23 89:3 89:7 91:5 91:9 92:7 92:12 150:2

**attribution(18)** 22:18 22:19 22:21 23:9 24:1 33:1 42:12 42:13 42:18 42:19 49:14 49:23 50:22 51:2 51:20 53:11 69:7

**audible(4)** 36:4 245:11 250:15 257:24
**aurelius(44)** 2:36 3:4 8:14 8:15 13:14 16:21 25:15 64:22 75:3 94:2 100:21 115:14 116:12 116:13 116:23 117:2 117:15 119:2 139:17 140:2 143:19 143:21 151:20 151:25 152:8 152:12 152:17 153:3 153:5 165:13 165:15 171:13 171:19 172:15 175:17 176:20 176:25 225:24 227:1 228:6 228:7 246:18 253:15 256:19

**austin(2)** 1:22 7:4
**available(5)** 14:2 16:3 102:6 177:23 196:1
**ave(1)** 1:34
**avenue(5)** 2:10 2:48 3:21 5:16 5:28
**average(4)** 109:18 109:19 109:21 202:24
**avoid(2)** 92:2 222:15
**avoidable(2)** 206:14 207:10
**avoidance(41)** 127:15 127:19 127:20 127:21 127:24 136:17 136:25 137:6 137:11 137:19 138:3 138:15 138:16 138:18 138:18 138:19 138:21 138:22 139:1 141:14 141:18 148:3 148:18 148:20 151:8 163:16 172:4 173:4 173:20 174:22 175:1 175:6 178:16 179:3 182:2 182:6 218:5 222:18 233:20

**avoidances(1)** 117:10
**avoided(8)** 173:11 173:12 174:15 181:21 182:3 182:7 207:13 233:25
**await(2)** 26:22 145:19
**aware(22)** 75:19 87:7 110:1 153:10 156:10 163:10 166:11 166:13 207:15 208:19 209:1 209:5 225:2 225:12 234:25 242:20 244:2 244:7 245:20 245:23 251:10 253:8
**away(1)** 69:6
**awhile(2)** 95:13 145:1
**awkward(2)** 230:25 231:19

**bachelor's(1)** 102:21
**back(28)** 43:25 46:6 62:9 62:16 63:3 63:5 80:13 80:24 96:4 96:6 108:3 118:6 119:18 148:7 165:22 172:5 185:8 188:16 193:4 204:25 208:4 208:7 216:3 216:9 219:6 232:17 232:21 255:18
**background(2)** 43:22 102:12
**badly(1)** 200:21
**baiera(6)** 6:18 44:5 44:9 44:19 45:2 45:4
**balance(7)** 230:15 231:8 231:22 232:8 232:11 242:24 250:1
**bale(1)** 6:6
**bank(8)** 4:44 6:21 6:27 9:4 9:12 9:21 9:21 10:4
**bankruptcies(1)** 47:8
**bankruptcy(25)** 1:1 1:18 26:17 26:18 26:20 27:11 28:4 39:6 39:7 39:8 41:5 42:25 47:16 78:23 95:15 96:17 99:15 99:17 99:19 100:3 100:4 120:5 181:25 245:24 246:1
**bankruptcy?"(1)** 59:13
**banks(5)** 49:17 128:9 150:2 150:6 193:18

**bar(5)** 17:14 17:17 25:2 167:9 169:15
**barclays(3)** 3:19 10:13 10:13
**bars(10)** 159:19 159:21 159:22 160:2 160:3 160:4 168:15 168:17 168:19 169:15
**beat(8)** 126:14 126:22 155:11 157:11 168:2 168:17 169:21 221:21

**based(51)** 20:7 23:1 27:16 41:22 43:12 45:6 60:16 70:1 81:5 82:23 83:10 90:2 93:13 96:5 101:19 115:21 116:2 139:9 140:2 142:10 143:25 144:4 168:17 170:5 185:2 185:2 188:12 189:8 191:15 193:17 223:15 227:16 230:23 233:2 233:8 236:7 241:23 242:17 247:10 248:15 251:1 251:19 252:2 254:8 255:10 255:10 256:24 257:5 257:6 257:7

**bayes(1)** 5:21
**bearing(1)** 93:19
**became(1)** 107:11
**because(58)** 13:8 16:19 22:9 23:17 29:5 42:24 43:15 46:7 46:14 46:18 46:20 47:7 50:10 50:18 52:7 52:13 53:10 55:6 69:1 69:20 75:22 78:24 87:7 87:15 89:18 97:4 113:17 115:2 130:3 138:5 139:11 141:9 143:4 156:4 162:24 166:18 167:20 167:22 169:16 180:6 180:7 184:10 189:6 195:7 197:16 201:5 204:22 209:24 210:20 218:4 218:17 218:11 220:2 222:20 223:6 228:16 234:11 240:6

**become(2)** 16:3 16:5
**been(8)** 15:17 15:21 16:2 17:12 19:20 22:6 23:6 24:13 25:14 27:15 28:25 29:1 29:17 30:13 35:15 36:2 46:16 47:16 51:1 51:20 62:14 64:9 65:11 66:14 68:4 68:23 72:7 72:18 72:21 75:13 80:8 81:14 82:16 83:12 83:14 84:23 85:2 85:18 85:18 86:15 86:18 86:21 87:3 87:5 89:8 92:18 95:5 95:13 95:15 95:20 95:22 96:4 96:6 96:6 97:24 98:4 98:8 98:25 99:13 101:10 104:20 105:9 108:5 117:21 120:20 131:24 139:25 143:22 150:8 160:16 162:10 162:2 165:1 222:24 223:6 245:24 246:2 252:23 253:10 255:14 256:2 256:18

**before(40)** 1:17 21:4 21:16 36:19 41:2 45:13 50:1 55:24 56:21 58:1 60:6 69:2 85:18 89:4 95:10 98:8 106:7 106:11 116:6 128:16 130:4 131:19 141:23 143:24 146:2 149:10 150:20 154:18 155:18 160:9 162:23 165:24 168:13 176:24 221:6 228:2 252:7 252:11 257:21 257:23

**beg(1)** 83:4
**began(1)** 252:11
**begin(3)** 18:16 26:16 96:14
**beginning(6)** 14:14 129:17 135:22 199:1 199:18 200:5
**begins(4)** 39:16 59:20 91:19 191:12
**behalf(2)** 14:13 16:4
**behavior(1)** 196:3
**behind(5)** 82:3 89:10 128:22 172:18
**being(27)** 14:1 18:8 25:17 43:11 69:15 87:6 96:9 107:5 120:21 152:3 152:6 159:23 159:24 159:24 166:14 166:11 169:2 170:22 197:10 206:6 206:21 220:25 228:11 231:19 232:11 244:24 254:1

**believe(52)** 15:10 17:23 18:14 18:20 31:17 47:20 71:15 89:22 94:3 95:6 97:23 97:24 104:22 121:15 124:7 139:11 139:13 140:1 140:9 165:17 172:17 175:3 182:25 186:24 190:4 191:11 198:2 221:2 226:17 227:12 227:20 230:19 231:13 234:2 235:4 238:13 239:12 239:14 240:5 241:5 241:11 242:18 243:13 244:2 248:22 248:24 249:21 251:18 255:17 256:1 256:24 257:12

**believed(7)** 182:24 186:17 195:19 196:10 209:22 210:16 231:7

**believes(1)** 49:1
**believing(1)** 162:7
**bell(1)** 245:18
**ben(1)** 10:14
**bench(2)** 36:6 70:15
**bendernagel(1)** 1:23
**benefits(2)** 27:23 161:17
**benjamin(1)** 2:5
**bennett(1)** 5:14
**benson(2)** 2:28 10:27
**beron(90)** 100:12 100:19 101:6 101:10 101:20 104:8 104:18 106:19 120:10 128:23 143:2 145:15 161:4 165:21 171:10 171:12 175:13 177:5 178:3 179:19 182:18 183:9 183:16 185:6 185:12 185:15 186:7 187:3 193:5 194:13 195:18 197:2 200:12 203:20 205:1 207:15 207:25 210:12 210:23 211:1 211:19 212:23 213:19 215:10 216:3 218:24 219:17 221:17 224:18 225:2 225:2 227:4 228:1 228:23 229:9 231:6 232:23 232:25 233:15 235:11 236:18 237:25 239:9 239:9 240:24 241:10 242:3 242:22 242:23 243:20 244:8 244:23 245:12 246:21 249:1 249:24 250:5 250:13 251:5 251:6 251:20 252:22 253:13 253:19 254:25 255:12 255:25 255:23 256:10 259:5

**beron's(4)** 127:10 186:6 207:23 257:9
**berry(1)** 8:24
**best(2)** 156:1 237:24
**bet(2)** 224:24 81:1
**better(1)** 106:19
**between(23)** 82:20 94:16 159:10 167:24 169:24 184:9 184:11 184:13 184:16 185:1 186:17 189:11 202:12 204:18 209:7 211:24 229:21 230:21 231:7 235:12 249:2 249:24 255:22

**beyond(7)** 79:4 99:22 115:2 137:14 148:23 162:22 218:3
**bias(1)** 161:22
**biases(1)** 161:24
**bible(1)** 19:2
**bifferato(1)** 2:21
**bifurcated(1)** 248:12
**big(2)** 135:6 141:1
**bigelow(1)** 11:29
**bigger(2)** 40:12 141:9
**bill(1)** 2:47
**billboards(1)** 38:18
**billion(16)** 107:15 144:17 157:16 167:17 167:18 167:19 167:22 167:25 168:2 170:1 210:24 214:6 214:12 215:13 248:13 249:6
**binder(31)** 15:24 16:8 27:2 31:17 31:21 31:23 38:24 40:9 40:13 41:9 44:1 48:8 56:24 60:4 74:22 75:2 75:4 80:9 101:24 102:6 116:15 122:18 123:13 124:6 125:23 128:19 140:23 145:9 164:25 172:17 211:1
**binders(9)** 15:5 15:7 15:12 15:20 17:25 18:8 26:15 70:16 100:22
**binder's(1)** 31:23
**bingham(1)** 10:4

**bit(8)** 53:22 104:23 115:3 132:7 136:23 142:16 223:7 223:7
**black(19)** 153:10 153:16 154:2 155:13 156:13 156:14 157:15 157:20 158:2 158:6 158:9 158:14 159:11 162:3 162:4 162:17 163:13 164:2 245:7
**black's(13)** 153:14 155:16 157:2 158:13 158:18 158:25 158:25 159:16 159:23 159:25 160:6 164:7 164:23
**blake(1)** 5:6
**blank(1)** 13:22
**blocks(1)** 128:12
**blowup(1)** 132:9
**board(22)** 4:5 8:5 11:17 32:7 32:7 33:4 41:1 41:4 41:15 43:4 44:20 44:21 45:4 46:23 47:2 47:19 60:11 65:9 74:1 76:15 76:23 92:6
**board-designation(3)** 32:16 67:15 68:22
**board-nomination(1)** 41:18
**board-observer(5)** 46:1 46:3 46:7 46:10 46:12 46:17 46:23
**bob(1)** 2:15
**bohan(1)** 10:39
**bona(1)** 27:18
**book(2)** 134:17 135:18
**both(29)** 23:17 23:18 25:1 32:19 35:20 74:18 94:12 104:9 108:13 110:20 112:8 112:19 113:14 126:6 138:3 138:19 138:23 144:24 146:25 148:13 154:3 176:5 180:17 187:11 192:20 209:24 212:20 253:2 254:25
**bother(2)** 71:16 239:3
**bottom(22)** 39:11 57:4 57:12 60:12 60:14 84:10 91:18 121:20 122:4 122:11 128:2 136:20 148:8 168:15 168:22 173:4 173:19 188:13 205:21 216:12 217:15 222:6
**bottom-line(1)** 199:17
**bound(2)** 42:15 217:24
**bowden(1)** 2:47
**bracket(4)** 24:16 24:21 24:23 25:6
**brackets(1)** 24:19
**bradford(5)** 244:11 244:20 244:20 244:22 245:9
**branch(22)** 131:14 131:18 132:7 132:9 133:7 133:9 142:16 142:18 142:24 143:3 143:7 143:8 148:21 205:21 206:24 212:9 212:19 213:1 213:24 216:12 216:21 217:15
**branches(5)** 131:12 137:9 163:7 211:21 212:2
**brandywine(1)** 5:7
**brass(1)** 11:50
**breach(1)** 258:10
**break(6)** 18:11 62:15 100:11 224:5 246:9 257:20
**brett(1)** 7:13
**brickley(1)** 11:22
**brief(3)** 236:10 236:16 249:9
**briefly(7)** 28:15 32:23 57:25 127:12 141:20 151:20 253:5
**brigade(2)** 9:16 9:17
**bright(1)** 30:17
**bring(1)** 222:15
**broad(2)** 108:18 255:7
**broadcast(10)** 26:4 28:20 29:5 29:14 33:3 38:8 48:20 51:22 84:21 85:17
**broadcaster(2)** 29:6 48:5
**broadcasters(4)** 20:13 20:14 20:14 52:14

| Word | Page:Line |
|------|-----------|
| **broadcasting**(12) 20:17 20:19 45:15 49:21 65:8 65:10 66:21 66:24 67:5 67:16 67:20 67:22 | |
| **broadway**(2) 2:32 3:8 | |
| **brodsky**(1) 152:25 | |
| **broken**(1) 137:20 | |
| **broker**(1) 62:22 | |
| **bromberg**(1) 6:32 | |
| **brooks**(1) 19:15 | |
| **brought**(1) 248:22 | |
| **brown**(3) 4:29 6:31 10:19 | |
| **bruce**(4) 5:14 66:25 100:19 259:5 | |
| **bruckman**(1) 3:14 | |
| **bryan**(1) 7:15 | |
| **bryant**(1) 2:42 | |
| **build**(1) 124:25 | |
| **building**(3) 5:7 125:9 128:12 | |
| **built**(1) 116:11 | |
| **bulk**(1) 71:8 | |
| **bumps**(1) 15:10 | |
| **bunch**(2) 62:14 138:9 | |
| **buoname**(1) 4:6 | |
| **busath**(1) 2:8 | |
| **bush**(2) 3:45 5:45 | |
| **business**(9) 21:9 23:16 49:21 78:8 104:9 104:14 108:13 108:20 109:23 | |
| **businesses**(1) 20:4 | |
| **but**(137) 14:25 15:14 16:12 27:25 29:3 30:5 32:23 33:6 36:8 41:16 42:25 43:3 43:24 44:3 44:8 45:24 46:22 48:22 51:11 58:2 58:17 58:24 61:16 61:22 62:20 68:11 72:8 73:25 74:12 74:15 75:19 78:12 78:25 79:16 79:22 81:3 81:23 83:21 84:5 84:6 84:13 85:2 85:12 85:23 87:1 87:9 87:13 89:3 93:6 93:15 96:1 96:3 96:21 97:23 97:25 98:4 98:6 109:16 109:20 110:19 111:23 113:14 113:25 114:2 119:1 126:21 128:16 137:13 137:23 138:19 140:9 141:2 147:18 148:19 150:1 150:8 150:20 151:5 151:7 154:12 155:15 157:17 158:20 162:12 162:18 174:14 175:12 176:10 177:2 181:20 182:14 182:25 183:5 183:7 186:2 189:10 189:18 199:16 200:3 200:7 201:7 201:9 202:14 202:24 203:13 210:4 212:7 215:5 217:24 218:14 218:20 219:23 222:22 223:11 226:16 226:19 228:7 228:9 230:9 230:11 231:25 234:22 236:7 237:4 238:2 238:3 238:3 238:14 238:20 241:11 244:16 245:18 246:2 249:10 252:2 256:23 | |
| **buttons**(1) 97:19 | |
| **buyer**(2) 22:11 22:13 | |
| **bynum**(1) 7:43 | |
| **c-o-m-i-t-y**(1) 99:16 | |
| **c30**(3) 174:8 174:12 178:10 | |
| **cable**(1) 20:4 | |
| **calculate**(13) 101:17 110:3 110:22 112:13 112:21 115:20 151:14 162:12 190:20 202:2 227:2 240:18 256:13 | |
| **calculated**(9) 109:8 112:12 114:21 144:14 157:13 168:1 168:18 170:15 237:7 | |
| **calculates**(1) 240:7 | |
| **calculating**(5) 105:10 113:19 138:24 154:11 227:16 | |
| **calculation**(14) 52:8 113:14 150:4 156:15 162:9 168:17 196:23 210:24 211:2 215:4 225:19 226:17 237:4 239:4 | |
| **calculational**(1) 108:6 | |
| **calculationally**(1) 113:25 | |
| **calculations**(11) 109:19 151:21 151:25 162:12 164:6 227:7 227:10 227:13 228:16 230:23 237:10 | |

| Word | Page:Line |
|------|-----------|
| **calculus**(6) 56:7 56:12 69:12 81:8 86:1 103:1 | |
| **call**(24) 18:10 18:24 23:11 31:16 31:25 36:1 37:22 40:21 40:22 41:13 43:24 44:8 56:9 59:25 62:22 91:11 93:18 97:5 105:2 105:9 107:9 122:12 125:13 248:11 | |
| **called**(5) 58:12 59:3 107:6 107:8 142:2 | |
| **calling**(2) 61:21 138:22 | |
| **came**(8) 108:3 116:11 126:10 126:16 147:11 154:9 192:7 226:3 | |
| **campanario**(1) 8:8 | |
| **campbell**(1) 87:4 | |
| **can**(123) 15:15 18:12 19:22 20:25 23:7 23:8 27:9 28:15 28:25 29:15 38:4 38:7 40:13 41:9 41:17 48:3 50:3 51:5 51:25 51:14 55:22 57:2 58:14 62:13 65:24 68:9 77:25 78:4 78:21 80:14 80:18 81:4 83:17 83:19 83:21 83:22 83:22 95:9 96:2 100:6 101:24 101:25 104:23 105:5 107:1 110:9 111:1 111:22 111:25 112:9 113:19 115:6 116:15 121:24 122:18 123:16 126:1 127:1 129:15 130:4 131:13 131:17 132:9 132:16 134:6 135:21 136:22 137:3 139:11 141:2 141:3 141:20 143:1 143:24 144:3 145:9 146:15 148:10 149:6 149:10 149:22 150:2 156:5 159:4 159:8 161:2 163:14 167:3 167:7 168:9 168:23 171:1 172:16 180:1 180:12 180:13 181:3 186:6 187:1 187:3 187:25 191:20 194:22 198:6 200:13 201:7 204:8 204:10 204:14 205:1 209:24 211:4 216:3 217:24 220:9 222:3 223:23 225:12 232:19 232:21 233:15 239:3 239:6 | |
| **can't**(13) 78:5 81:3 83:15 83:21 95:23 188:19 189:14 192:17 200:7 245:19 245:2 246:1 253:14 | |
| **candor**(1) 252:17 | |
| **canlon**(1) 1:25 | |
| **cantor**(1) 6:22 | |
| **canyon**(1) 10:43 | |
| **can't**(1) 61:19 | |
| **cap**(1) 28:19 | |
| **capacity**(1) 106:9 | |
| **capital**(38) 6:4 6:4 8:14 8:15 8:45 8:46 9:16 9:17 9:33 9:34 9:42 9:42 10:13 10:32 10:33 11:4 11:4 11:8 11:8 12:4 65:2 65:3 65:12 65:19 133:18 147:1 147:17:13 171:20 219:12 226:23 230:16 231:231:21 232:7 232:10 250:2 257:5 | |
| **capital's**(1) 66:18 | |
| **career**(1) 106:3 | |
| **carey**(1) 1:17 | |
| **caridas**(1) 5:46 | |
| **carol**(1) 6:6 | |
| **carolina**(2) 19:16 20:12 | |
| **carries**(1) 222:11 | |
| **carroon**(1) 4:13 | |
| **carryover**(1) 28:8 | |
| **case**(80) 1:5 9:46 25:10 25:10 25:14 29:17 30:2 30:20 30:22 31:1 31:3 31:9 32:3 34:25 44:2 44:4 46:6 46:21 47:6 47:15 53:21 63:25 64:3 66:19 72:25 80:8 80:10 80:12 80:18 80:24 81:4 82:3 85:19 89:21 95:19 95:25 97:15 101:11 105:11 105:13 106:11 107:14 109:1 109:4 109:18 111:20 111:25 115:13 116:7 119:16 121:5 125:10 127:1 144:16 145:7 148:2 149:1 150:12 152:7 152:22 153:11 161:14 161:15 161:21 163:5 168:2 177:15 179:14 186:8 192:20 202:15 228:24 235:23 240:25 245:19 248:15 253:25 255:4 255:20 256:19 | |

| Word | Page:Line |
|------|-----------|
| **cases**(18) 26:3 30:8 33:23 76:20 80:25 81:24 95:16 103:25 106:6 106:24 144:5 149:19 184:14 184:15 189:10 222:15 245:18 257:7 | |
| **cash**(4) 49:21 166:4 166:8 240:8 | |
| **cashman**(2) 12:16 12:16 | |
| **cause**(5) 55:18 56:1 79:8 144:14 235:20 | |
| **caused**(2) 108:10 121:15 | |
| **causes**(3) 33:18 119:15 120:12 | |
| **center**(1) 4:44 | |
| **central**(2) 108:24 253:15 | |
| **centuries**(2) 108:4 255:18 | |
| **century**(1) 108:3 | |
| **ceo**(1) 43:10 | |
| **cert**(1) 258:11 | |
| **certain**(15) 23:19 28:12 29:14 32:9 34:1 38:5 38:6 38:11 41:11 41:18 49:3 49:14 93:13 179:12 220:6 | |
| **certainly**(7) 18:4 36:7 78:13 99:25 201:7 221:9 251:1 | |
| **certainty**(3) 83:15 83:19 83:21 | |
| **certification**(6) 48:9 48:13 48:23 67:13 67:14 258:3 | |
| **certified**(1) 258:12 | |
| **certify**(1) 258:4 | |
| **cfc**(2) 216:17 217:10 | |
| **cfr**(1) 35:1 | |
| **chad**(1) 10:16 | |
| **chadbourne**(2) 3:32 5:34 | |
| **chambers**(1) 18:10 | |
| **chance**(54) 98:9 110:16 110:17 111:5 111:13 111:15 112:5 132:14 133:2 134:5 134:11 140:12 147:7 147:8 153:13 174:1 183:25 185:23 187:21 190:23 191:1 191:25 192:1 192:2 192:3 192:7 192:8 192:10 192:23 195:4 195:21 196:16 197:12 197:1 198:24 202:8 202:18 205:13 205:17 205:20 205:23 206:5 215:17 215:18 217:1 218:17 220:5 220:10 220:25 230:16 232:7 232:11 234:16 235:25 | |
| **chances**(6) 203:21 203:23 204:19 231:8 231:9 231:20 | |
| **chandler**(1) 11:29 | |
| **chaney**(1) 10:44 | |
| **change**(20) 55:18 69:12 81:16 85:7 87:25 88:3 88:24 126:22 153:3 153:6 171:14 171:20 171:22 172:9 182:22 233:1 235:21 236:5 247:10 247:20 | |
| **changed**(4) 30:4 33:19 107:18 180:21 | |
| **changes**(8) 247:21 248:4 248:17 248:21 248:24 249:16 250:5 250:9 | |
| **changing**(1) 248:11 | |
| **chapter**(3) 1:7 40:14 222:15 | |
| **character**(2) 27:20 33:15 | |
| **characterize**(1) 171:22 | |
| **chart**(21) 38:5 113:10 130:8 130:9 135:14 141:21 141:22 143:15 144:1 144:4 144:14 149:16 149:17 149:21 155:10 155:12 163:22 164:16 167:13 211:23 212:24 | |
| **charts**(1) 113:13 | |
| **chase**(3) 5:20 9:4 9:12 | |
| **checking**(1) 228:10 | |
| **chicago**(13) 1:28 4:8 5:29 11:12 11:13 38:20 38:21 43:17 43:18 45:24 243:22 243:24 244:6 | |
| **chief**(2) 126:17 147:12 149:23 151:10 | |
| **choices**(6) 146:1 146:6 147:23 148:1 148:25 150:11 | |
| **christine**(1) 2:31 | |
| **chung**(2) 2:40 6:28 | |
| **circle**(2) 113:3 144:16 | |

| Word | Page:Line |
|------|-----------|
| **circles**(2) 147:11 147:22 | |
| **circuit**(5) 85:20 90:6 255:4 255:5 255:7 | |
| **circulated**(1) 18:9 | |
| **circulating**(1) 96:13 | |
| **circumstance**(5) 23:20 42:14 147:16 184:12 237:24 240:25 254:7 255:3 257:13 | |
| **cite**(3) 86:8 87:24 255:4 | |
| **citibank**(1) 7:30 | |
| **citizens**(1) 4:44 | |
| **citizenship**(1) 28:1 | |
| **claim**(49) 75:6 110:16 110:17 110:18 111:9 111:5 111:10 111:10 111:11 111:12 111:13 111:15 123:6 130:19 144:24 151:8 165:23 166:6 166:13 166:17 166:18 166:20 166:23 170:19 170:22 187:10 187:14 188:5 189:2 189:4 189:12 191:18 192:15 197:3 202:3 210:16 221:24 224:24 225:18 226:8 241:2 244:23 245:2 245:6 245:6 246:23 252:4 254:2 257:6 | |
| **claimed**(1) 163:17 | |
| **claims**(47) 101:18 110:15 113:9 113:12 115:21 117:10 119:20 119:24 121:11 121:13 123:3 130:19 144:24 151:8 165:23 166:6 166:13 166:17 166:18 166:20 166:23 170:19 170:22 187:10 187:14 188:5 189:2 189:4 191:18 192:15 197:3 202:3 210:16 221:24 224:24 225:18 226:8 241:2 244:23 245:2 245:6 245:6 246:23 252:4 254:2 257:6 | |
| **claim's**(1) 39:25 | |
| **claire**(1) 11:30 | |
| **clarification**(1) 120:18 | |
| **clarify**(1) 195:12 | |
| **class**(3) 24:14 75:6 91:24 | |
| **classes**(1) 103:10 | |
| **clause**(3) 198:16 201:1 201:13 | |
| **clear**(22) 15:21 42:13 54:21 65:11 72:12 76:12 77:22 89:5 131:13 154:19 162:13 180:7 201:12 223:23 233:1 244:23 249:14 251:19 253:1 254:19 256:4 256:25 | |
| **clearer**(1) 239:16 | |
| **clearly**(3) 201:10 255:12 257:12 | |
| **cleary**(1) 5:6 | |
| **clerk**(10) 13:2 18:5 18:7 19:1 19:4 19:9 171:5 177:22 224:15 246:14 | |
| **client**(21) 22:7 22:8 107:2 114:13 114:14 114:18 117:15 118:8 145:3 161:13 162:1 170:14 228:2 228:5 228:7 228:13 241:21 253:23 253:24 253:25 254:5 | |
| **clients**(20) 19:23 20:3 20:7 20:15 21:7 105:1 105:6 105:16 105:21 105:24 105:25 107:4 140:8 161:21 227:7 227:21 228:10 238:24 253:21 | |
| **clients'**(1) 14:15 | |
| **clip**(1) 81:17 | |
| **close**(12) 58:13 77:24 77:25 78:1 78:13 144:21 144:22 157:18 167:20 170:11 170:12 183:5 | |
| **closed**(1) 221:10 | |
| **closely**(1) 255:1 | |
| **closer**(2) 19:5 58:14 | |
| **closer."**(1) 58:14 | |
| **co-ownership**(1) 84:21 | |
| **co-proponents**(4) 71:1 71:5 76:14 78:20 | |
| **cobb**(2) 3:25 5:49 | |
| **cognizable**(1) 24:3 | |
| **cole**(1) 1:31 | |
| **collaboration**(1) 171:25 | |
| **colleague**(1) 256:20 | |
| **colleagues**(3) 15:12 17:13 236:15 | |
| **collins**(1) 9:9 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **column**(22) 38:1 38:13 43:20 48:2 48:3 66:11 66:14 68:4 111:3 111:10 111:16 112:1 112:2 130:21 130:25 141:7 141:3 155:11 212:8 212:23 213:8 213:13 | | **compared**(2) 155:15 161:18 **compares**(1) 155:4 **comparing**(2) 93:9 225:18 **comparison**(5) 88:8 88:11 166:21 242:25 243:15 | | **conclusions**(100) 101:19 115:22 116:1 116:3 119:11 119:14 119:23 121:12 121:1 121:18 121:20 122:6 122:11 124:22 126:16 134:2 135:11 136:11 147:18 149:1 149:16 154:8 154:9 155:14 156:22 157:20 161:5 165:22 166:23 172:8 176:3 177:7 177:11 177:17 178:7 178:9 178:20 183:8 183:12 183:17 184:9 184:11 184:13 184:1 184:23 185:3 185:11 185:19 186:19 189:9 189:15 191:15 193:9 194:7 194:10 194:11 194:14 194:15 195:8 195:13 196:16 197:8 197:14 199:4 199:9 199:12 199:17 199:22 200:4 200:8 201:6 202:7 204:21 207:8 207:13 208:5 209:25 217:25 218:16 218:1 219:9 221:4 221:5 221:12 221:14 222:7 229:3 229:22 230:7 233:19 236:3 236:7 242:6 242:10 242:17 243:4 243:10 248:25 251:21 252:1 | | **considers**(2) 27:24 78:19 **consistent**(4) 15:17 122:12 162:10 254:24 **consistently**(2) 122:13 255:25 **consists**(1) 40:13 **consolidated**(1) 219:15 **consolidation**(1) 53:18 **constant**(1) 86:6 **constitute**(4) 34:19 44:2 76:19 198:19 **constituted**(1) 37:6 **constitutionality**(1) 21:25 **constructed**(9) 187:13 192:6 203:20 230:17 230:18 231:20 232:25 233:5 233:11 |
| **columns**(6) 38:7 38:9 131:2 141:21 141:22 212:2 | | **competent**(1) 241:5 **competing**(7) 54:1 58:8 58:23 71:20 90:9 90:14 96:18 | | | | **constructing**(3) 189:1 193:14 230:3 **construction**(12) 130:5 132:20 153:6 175:9 175:11 184:22 185:10 187:24 231:10 235:21 235:25 236:6 |
| **combination**(2) 67:4 149:12 **combinations**(8) 30:9 130:12 130:14 130:15 136:3 136:15 137:12 149:19 | | **competition**(8) 53:17 53:17 53:23 53:23 57:14 57:16 58:4 58:16 | | **conclusions.**(1) 222:10 **condition**(2) 230:11 246:22 **conditioned**(2) 33:20 33:20 **conditions**(2) 14:25 248:9 | | **constructive**(54) 124:18 124:20 124:21 124:23 127:18 129:19 129:23 130:1 130:14 130:20 130:24 131:5 131:25 132:16 133:22 134:25 136:1 136:13 137:24 138:7 141:25 142:21 157:25 185:25 186:18 203:23 204:19 205:20 205:23 206:3 206:4 207:17 208:21 209:8 209:12 209:17 209:23 210:17 216:18 217:3 217:12 217:17 217:19 218:1 218:2 218:16 218:18 228:25 229:11 233:2 233:7 235:12 235:19 249:17 |
| **combine**(1) 192:9 **combined**(5) 47:4 51:14 135:16 136:6 136:10 | | **competition"**(2) 57:6 57:8 **competitive**(1) 58:14 **competitor**(1) 58:14 **competitors**(1) 58:21 **complete**(3) 15:23 40:11 137:19 **completely**(5) 113:25 162:1 204:23 215:2 215:5 | | **conduct**(1) 15:15 **conducted**(2) 15:15 106:22 **conducting**(1) 107:9 **conference**(1) 18:10 **conferred**(3) 128:9 151:15 151:18 **confidential**(15) 13:25 14:1 14:5 14:18 14:19 15:8 15:8 17:15 17:18 19:25 25:2 25:5 43:23 55:7 259:13 | | |
| **combines**(1) 135:15 **come**(17) 23:25 26:20 28:25 79:9 98:6 107:20 109:3 115:5 121:4 133:25 137:6 139:22 165:21 194:22 194:24 219:6 229:3 | | **complex**(2) 61:7 133:5 **complexity**(3) 96:8 135:7 145:3 **compliance**(8) 27:19 27:25 33:12 53:11 74:2 78:15 79:9 92:1 | | | | **constructively**(1) 206:15 **consult**(2) 104:9 236:11 **consultants**(1) 153:10 **consulting**(4) 104:9 105:4 105:6 107:2 **consummated**(1) 200:20 **contact**(1) 118:17 |
| **comes**(10) 16:3 16:15 27:2 41:5 83:23 94:15 99:17 187:16 213:14 214:8 | | **complicate**(3) 37:12 70:6 74:18 **complicated**(8) 113:11 115:3 129:10 132:7 132:8 144:19 144:20 145:2 | | **confidentially**(15) 15:16 **confining**(1) 66:17 **confirm**(1) 96:21 **confirmation**(9) 19:13 26:23 39:8 41:2 90:2 91:15 95:10 95:11 252:11 | | **contacts**(1) 95:20 **contained**(4) 85:25 190:5 199:17 236:23 **contains**(2) 27:8 40:16 **contemplated**(1) 166:25 **contemplates**(1) 81:25 |
| **comfortable**(1) 125:18 **coming**(7) 39:5 39:7 42:25 47:8 47:12 47:16 91:13 | | **complied**(1) 79:2 79:3 **complies**(1) 75:15 **compliment**(1) 132:23 **complimentary**(1) 126:7 **comply**(8) 81:21 22:15 28:12 59:10 75:9 75:24 76:7 78:15 | | **confirmed**(5) 27:17 35:6 83:17 90:4 95:18 **confirming**(1) 40:14 **conflated**(1) 85:10 **conflicting**(1) 76:24 **conflicts**(2) 16:19 75:17 **confused**(1) 231:14 | | **contentiousness**(1) 64:7 **contents**(1) 57:3 **context**(6) 27:10 85:13 100:2 103:24 107:22 245:24 |
| **comity**(3) 99:16 100:1 100:2 **comment**(3) 21:16 81:11 176:16 **comments**(2) 17:9 60:16 **commercial**(1) 108:16 **commission**(88) 21:12 21:13 21:16 22:22 26:24 27:17 27:24 28:17 29:3 29:20 30:2 30:5 30:12 30:19 33:2 33:1 33:3 33:7 33:9 33:17 33:22 34:2 43:2 46:2 46:5 46:7 46:14 46:16 46:23 47:1 47:13 49:13 49:20 49:25 50:17 51:17 51:20 52:1 53:9 53:14 53:19 53:23 55:24 56:11 58:4 58:6 59:4 62:9 62:11 62:12 63:2 63:5 63:6 63:24 64:3 64:10 69:2 69:3 69:14 69:23 70:3 70:7 76:7 77:9 77:11 77:13 77:17 77:18 77:19 78:1 78:3 78:9 78:14 78:19 79:2 79:2 81:6 81:12 85:18 95:16 95:20 95:23 95:25 96:9 96:12 96:25 97:3 | | **component**(3) 21:18 166:12 209:8 **components**(2) 215:6 215:8 **comprehensive**(2) 22:2 109:7 115:7 **computer**(1) 145:1 **conaway**(1) 5:4 **concept**(6) 108:2 108:23 108:24 109:11 109:12 109:17 | | **congress**(6) 21:10 21:10 21:10 21:13 21:24 27:22 **connected**(7) 109:5 185:20 189:2 189:5 210:18 241:1 247:1 **connection**(29) 15:4 16:1 21:1 26:10 48:10 82:16 123:2 148:11 178:15 179:3 184:11 184:16 185:19 186:4 186:17 189:15 189:1 189:17 193:18 196:6 196:8 196:9 204:18 209:22 210:1 219:23 219:24 229:21 235:1 | | **contexts**(1) 46:3 **continue**(1) 105:1 **continued**(12) 2:2 3:2 3:5 4:2 5:2 6:2 7:2 8:2 9:2 10:2 11:2 12:2 **continues**(1) 57:14 **continuing**(3) 44:19 221:7 232:17 **continuum**(2) 61:23 122:23 **contracted**(2) 168:19 168:19 **contrarian**(2) 9:33 9:34 **contrary**(1) 30:21 **contribute**(1) 113:2 |
| **commission's**(3) 76:8 78:15 96:19 **commissioners**(3) 64:5 83:16 96:14 **commission's**(11) 21:22 22:15 23:1 30:5 42:12 43:13 47:2 47:20 50:22 56:14 58:25 | | **concepts**(2) 58:9 107:25 **concern**(2) 20:18 43:1 **concerned**(3) 33:1 58:25 126:16 **concerning**(14) 54:3 57:16 63:12 84:20 90:25 102:12 119:23 120:11 193:9 197:8 222:7 233:20 233:24 256:3 | | **connections**(8) 174:21 184:9 184:13 184:19 184:21 185:10 186:3 189:11 | | **control**(13) 29:19 29:23 29:23 29:25 31:8 33:2 33:25 47:14 50:19 51:25 52:8 53:19 85:12 **controlled**(2) 39:20 40:4 **convenient**(1) 224:4 **conversation**(3) 62:19 78:14 223:16 **conversations**(1) 247:11 |
| **commitment**(1) 67:19 **committed**(2) 67:14 78:23 **committee**(7) 3:24 4:4 5:33 8:4 11:17 28:12 120:17 | | **concerns**(1) 50:22 **conclude**(5) 16:22 198:18 207:7 210:4 253:11 | | **consent**(2) 13:19 13:23 **consequences**(3) 35:5 35:9 115:10 **conservative**(11) 146:1 146:16 148:10 149:5 149:8 149:22 150:18 150:19 150:24 169:18 193:24 | | |
| **common**(7) 34:8 34:11 76:5 91:24 126:5 126:8 220:21 | | **concluded**(5) 52:7 52:11 175:25 236:8 **concludes**(2) 181:11 222:13 **concluding**(1) 197:11 **conclusion**(49) 68:11 84:8 122:22 124:4 126:19 126:21 127:5 134:9 136:10 146:23 147:2 147:5 156:3 156:25 157:6 157:8 158:12 159:2 159:12 168:16 173:10 174:2 174:6 174:8 175:5 183:21 189:19 194:2 194:23 194:25 196:4 197:24 198:2 198:23 199:1 199:15 201:8 202:18 203:12 204:3 223:11 233:23 234:4 234:8 234:15 235:3 243:16 244:16 247:21 | | **consider**(15) 25:1 30:2 34:9 35:21 56:11 61:11 83:17 97:3 131:25 132:16 133:12 134:25 137:7 244:13 251:24 | | |
| **communicate**(2) 152:22 152:25 **communicated**(4) 82:24 83:3 83:6 83:9 **communication**(1) 75:10 **communication**(17) 19:21 19:23 20:6 20:19 21:11 21:15 21:21 22:3 23:3 23:6 43:21 45:14 54:18 54:19 55:2 55:9 92:2 | | | | **consideration**(15) 68:13 80:9 81:19 87:21 113:18 131:4 133:13 146:22 166:5 166:16 166:25 189:19 238:4 238:6 239:1 | | |
| **community**(1) 50:23 **companies**(13) 20:4 22:3 23:14 35:7 35:11 35:22 38:11 38:12 49:15 49:17 49:22 105:1 108:19 | | | | **considerations**(1) 237:6 **considered**(11) 22:24 44:9 49:25 137:11 137:13 146:9 146:17 146:18 149:20 191:25 240:2 | | |
| **company**(34) 1:7 5:26 7:22 7:42 11:21 11:49 11:49 23:11 23:11 23:13 23:15 26:19 27:10 27:16 27:19 29:19 33:5 34:1 38:17 39:21 40:6 42:18 42:20 45:15 47:15 50:20 51:6 51:16 51:18 61:17 95:17 104:9 105:5 117:8 | | | | **considering**(4) 105:9 148:4 219:12 256:14 | | |
| **company's**(3) 29:23 29:25 42:24 **compare**(1) 93:7 154:25 | | | | | | |

| Word | Page:Line |
|------|-----------|
| **conveyance**(99) | 123:2 123:6 124:18 124:20 124:21 124:23 127:17 127:18 129:6 129:18 129:19 129:20 129:21 129:23 130:1 130:2 130:5 130:13 130:15 130:19 130:20 130:2 130:25 131:5 131:21 131:24 132:1 132:3 132:13 132:14 132:15 132:17 132:20 132:25 133:22 133:23 134:23 135:1 135:2 136:1 136:13 137:23 137:24 138:7 138:8 142:1 142:21 142:22 143:5 148:17 157:25 158:1 185:24 185:25 197:3 197:10 197:13 202:8 202:19 203:3 203:6 203:22 203:24 205:5 205:10 205:14 205:18 205:21 205:22 205:25 206:3 206:4 206:5 208:12 208:22 208:23 209:8 209:13 210:17 210:17 211:1 212:13 212:20 214:16 215:17 216:13 216:19 217:12 218:2 218:3 228:25 229:11 235:13 235:14 235:18 235:19 249:18 250:10 252:4 |
| **conveyances**(1) | 206:11 |
| **convince**(1) | 64:4 |
| **cooperstown**(2) | 10:32 10:33 |
| **copies**(2) | 68:7 177:23 |
| **copy**(14) | 36:2 36:9 39:4 65:25 66:1 66:3 91:13 116:23 145:11 165:4 177:20 211:9 211:12 254:23 |
| **core**(2) | 22:20 50:21 |
| **corleone's**(1) | 58:13 |
| **corporate**(3) | 34:3 34:19 48:20 |
| **corporation**(1) | 20:17 |
| **correct**(257) | 25:15 25:16 26:11 28:5 31:3 31:6 41:6 41:7 54:12 54:19 54:20 54:24 55:3 55:4 55:10 55:11 57:11 67:17 67:18 71:3 71:6 71:7 71:12 71:18 72:1 72:3 72:14 72:19 72:22 72:25 73:7 73:17 73:20 73:21 73:23 74:14 75:11 76:16 76:17 76:21 77:1 77:2 77:6 77:10 78:20 82:22 82:25 84:9 84:17 84:22 86:11 86:18 86:19 86:22 86:25 88:5 89:7 89:12 89:21 91:1 91:2 91:5 91:6 97:9 97:12 99:17 100:13 101:12 101:22 104:5 105:23 106:25 111:18 115:5 115:15 123:24 124:17 125:2 125:5 127:3 130:10 137:17 140:21 141:19 142:11 143:23 144:2 144:12 146:11 147:24 150:23 151:23 152:5 153:18 154:17 158:7 159:18 162:6 165:3 168:4 169:8 171:18 173:17 173:24 174:10 175:7 175:8 175:9 175:13 175:20 175:22 175:23 176:1 176:6 177:8 177:12 177:18 178:18 179:4 179:22 180:20 183:15 183:16 184:8 185:21 186:20 186:22 186:24 187:11 187:12 187:17 187:23 188:3 188:7 188:10 188:21 188:24 189:21 190:15 190:18 190:21 190:22 191:4 193:14 193:20 193:25 194:4 196:15 196:21 199:15 199:16 200:11 201:18 201:24 202:1 203:7 203:20 204:21 204:24 205:9 205:15 205:16 205:19 205:22 206:1 206:19 206:22 207:2 207:5 207:11 208:6 209:5 209:10 209:14 210:12 210:20 210:22 212:4 212:4 212:14 212:16 212:18 212:22 213:11 213:12 213:15 213:22 213:23 214:9 214:13 214:20 215:15 216:20 217:2 217:17 217:15 217:21 218:10 221:1 221:17 222:2 223:5 223:12 225:1 225:20 226:6 226:8 226:9 226:20 226:21 227:3 227:7 227:8 227:11 227:12 227:14 227:18 227:19 228:4 228:12 228:14 228:23 229:1 229:5 229:7 229:8 229:9 229:20 230:22 231:6 231:23 231:25 232:4 233:4 234:14 234:19 236:2 236:21 240:16 241:17 242:7 242:8 242:23 244:25 245:1 245:3 245:4 245:7 245:8 247:2 248:1 249:15 249:25 250:9 250:12 258:4 |
| **corrected**(1) | 97:24 |
| **correctly**(5) | 93:8 109:8 191:3 197:11 |
| **correspond**(1) | 212:25 |
| **corresponds**(2) | 131:22 155:16 |
| **costs**(1) | 107:19 |

| Word | Page:Line |
|------|-----------|
| **could**(74) | 22:11 32:23 42:18 45:17 46:24 46:25 49:8 61:14 67:24 75:8 76:18 78:18 80:7 80:24 80:24 85:19 90:1 100:23 109:12 109:18 110:2 113:10 117:5 124:8 128:18 128:21 128:23 130:8 130:17 131:5 133:7 139:13 139:14 139:14 140:4 140:10 141:16 142:17 143:6 150:8 153:25 163:10 164:25 174:11 178:3 180:5 180:15 181:16 185:6 185:8 190:5 191:14 194:9 195:20 200:5 201:9 204:4 207:18 209:18 210:1 218:24 219:9 220:2 222:9 230:24 233:7 233:9 235:18 246:7 252:9 252:23 253:16 253:19 254:17 |
| **couldn't**(5) | 79:15 96:14 183:5 184:8 226:7 |
| **counsel**(38) | 15:6 16:8 16:10 16:17 16:21 76:12 82:24 83:2 83:6 84:2 89:19 95:24 114:13 114:14 114:18 115:14 120:17 140:1 171:19 172:15 175:17 180:16 180:18 192:17 222:20 222:21 223:4 223:10 223:1 223:21 223:24 229:4 229:18 237:17 242:11 243:7 247:11 256:15 |
| **counseling**(1) | 121:20 |
| **count**(1) | 14:17 |
| **countering**(1) | 161:24 |
| **country**(7) | 48:6 50:22 52:14 71:6 71:19 79:18 104:13 |
| **county**(1) | 69:5 |
| **couple**(14) | 13:9 13:21 38:7 54:3 89:15 93:2 118:2 131:12 162:2 169:16 181:17 186:8 245:12 249:10 |
| **courant**(4) | 57:10 57:13 58:4 58:20 |
| **couri**(1) | 10:34 |
| **course**(23) | 38:11 18:15 24:10 24:12 102:4 102:4 107:11 178:23 179:22 184:5 185:1 188:17 189:5 203:13 210:12 214:19 216:7 225:23 232:23 239:21 240:9 241:19 256:4 |
| **court's**(2) | 139:12 252:22 |
| **courtney**(1) | 9:22 |
| **courtroom**(1) | 1:8 |
| **courts**(2) | 85:4 220:18 |
| **court'**(2) | 18:16 26:22 |
| **cover**(1) | 17:15 99:5 |
| **covered**(1) | 164:3 |
| **crack**(1) | 93:6 |
| **crank**(1) | 145:1 |
| **create**(4) | 53:17 59:4 117:1 164:16 |
| **created**(3) | 108:10 135:14 179:14 |
| **creates**(1) | 56:18 |
| **creating**(3) | 145:25 145:25 156:7 |
| **creation**(1) | 257:2 |
| **credible**(3) | 200:22 201:2 203:9 |
| **credit**(7) | 6:9 138:25 148:19 148:23 150:3 150:15 151:7 |
| **creditor**(6) | 60:15 60:18 60:20 60:22 65:2 226:15 |
| **creditors**(19) | 3:25 5:34 100:5 142:2 142:25 148:7 150:15 160:3 166:5 166:24 167:11 191:17 200:21 200:25 201:4 225:3 234:13 235:7 257:6 |
| **creditors.'**(1) | 124:14 |
| **criminal**(1) | 27:22 |
| **criticism**(9) | 157:19 163:13 231:4 236:23 236:24 237:2 238:1 239:13 240:5 |
| **criticisms**(2) | 156:20 162:3 |
| **criticized**(1) | 154:15 |
| **cross**(18) | 29:14 70:13 70:19 80:19 90:19 139:14 140:12 145:19 165:14 171:6 171:8 224:7 246:21 248:18 248:22 253:18 259:2 |
| **cross-examination**(3) | 70:11 244:10 245:10 |

| Word | Page:Line |
|------|-----------|
| **court**(235) | 1:1 13:3 13:5 13:11 13:12 14:3 14:4 14:9 14:20 14:22 14:24 16:9 17:3 17:5 17:20 17:22 17:24 18:2 18:4 18:8 18:18 18:22 24:15 26:5 26:7 27:17 36:3 36:7 36:10 40:14 66:4 66:6 68:6 68:9 68:11 68:15 70:10 70:13 70:17 78:24 85:2 85:18 90:19 93:1 93:5 93:20 93:22 93:24 94:9 94:20 94:24 95:1 96:20 98:10 98:14 98:16 98:18 98:21 98:25 99:4 99:7 99:9 99:21 99:23 100:4 100:9 100:11 100:14 100:17 100:24 101:1 101:3 101:15 101:25 102:7 102:18 104:23 105:5 106:16 107:1 108:21 109:13 110:12 111:1 111:25 117:5 117:20 118:1 118:3 119:14 120:15 120:25 122:19 123:18 124:11 126:2 128:22 128:23 130:18 131:17 133:8 137:3 139:5 139:17 139:20 139:25 140:6 140:12 140:15 145:21 146:15 148:10 149:7 149:10 150:2 154:1 155:9 157:21 159:8 161:2 165:10 165:15 165:19 167:8 169:10 171:3 171:6 177:21 177:22 177:23 177:25 179:9 179:11 179:17 180:25 184:25 185:4 185:9 190:24 191:1 191:20 191:23 192:14 192:22 192:2 193:1 193:16 194:18 195:25 197:16 197:19 197:25 198:17 198:24 203:17 206:12 207:9 210:9 211:9 211:10 215:25 220:6 220:13 220:18 221:8 221:15 222:3 224:2 224:6 224:13 225:10 225:13 227:23 228:12 228:20 229:15 230:1 231:2 231:4 232:19 235:1 236:12 239:18 239:20 240:2 243:7 243:15 243:6 243:7 243:11 243:12 243:17 244:10 244:13 244:15 244:18 245:10 245:12 245:20 245:23 246:4 246:5 246:9 246:12 246:16 246:19 249:8 250:14 250:16 250:21 250:24 251:2 251:10 252:3 252:6 252:11 252:14 253:2 253:6 253:7 253:8 253:11 253:17 254:11 257:15 257:17 257:25 257:25 258:12 |

| Word | Page:Line |
|------|-----------|
| **cross-ownership**(13) | 26:4 28:13 28:16 28:20 28:21 28:22 28:23 29:5 57:1 85:17 87:25 88:3 88:24 |
| **crux**(2) | 78:17 79:4 |
| **cubs**(3) | 243:22 243:24 244:6 |
| **culminated**(1) | 108:7 |
| **cumulative**(1) | 62:21 |
| **current**(1) | 90:2 |
| **currently**(6) | 37:11 37:16 71:5 91:5 91:8 91:22 |
| **customary**(3) | 115:22 227:5 256:11 |
| **cutler**(1) | 6:10 |
| **d.c**(1) | 64:22 |
| **daily**(1) | 35:8 |
| **damage**(1) | 227:13 |
| **damages**(10) | 107:14 107:14 110:18 110:20 114:16 118:25 187:11 227:6 253:24 256:12 |
| **damien**(1) | 2:9 |
| **dan**(3) | 5:27 91:14 152:22 |
| **daniel**(6) | 2:38 3:27 6:22 6:24 10:40 11:32 |
| **data**(7) | 1:40 95:17 251:18 251:19 252:2 252:20 256:7 |
| **daubert**(1) | 254:18 |
| **david**(8) | 2:39 3:33 4:24 7:25 8:30 10:29 10:39 244:20 |
| **davis**(3) | 2:4 7:31 9:4 |
| **dawn**(1) | 2:41 |
| **day**(5) | 4:5 8:11 11:17 109:8 257:21 |
| **day-to-day**(1) | 21:23 |
| **days**(6) | 21:2 60:20 61:25 63:4 72:17 82:5 |
| **dbtca**(1) | 4:22 |
| **dcl**(65) | 13:19 13:23 15:13 15:17 16:1 16:4 16:8 16:10 16:11 16:16 27:1 27:2 28:6 28:7 29:10 31:17 32:1 32:15 34:6 34:8 35:5 36:23 37:10 37:16 59:10 59:17 59:23 59:25 60:1 60:3 71:2 73:25 74:5 74:6 74:7 74:9 74:12 74:15 74:21 74:22 76:13 78:6 78:18 79:8 80:22 81:4 83:17 88:1 88:17 89:5 89:10 91:1 91:3 91:8 91:21 120:12 153:9 154:19 158:20 158:23 160:7 165:23 211:5 211:13 224:20 225:3 225:19 |
| **deal**(13) | 46:19 56:9 58:2 64:13 64:13 75:20 76:3 77:4 78:12 81:12 126:23 135:24 135:25 |
| **dealing**(11) | 22:17 46:21 61:6 63:23 75:16 97:18 99:17 100:4 136:12 161:25 210:13 |
| **deals**(1) | 251:11 |
| **dealt**(1) | 175:14 |
| **dearborn**(1) | 1:27 |
| **debenture**(2) | 2:21 10:27 |
| **debt**(48) | 42:17 42:19 131:3 133:13 135:5 146:9 146:21 146:25 147:2 147:3 147:6 147:15 147:17 147:19 149:14 149:15 150:1 150:8 151:4 151:7 151:15 173:11 173:12 173:12 174:14 174:15 174:16 174:17 174:20 175:6 176:4 178:14 178:20 179:2 179:6 179:24 181:20 181:21 181:22 181:23 182:2 182:3 182:6 193:17 204:7 219:13 219:16 233:25 |
| **debt-load**(1) | 42:25 |
| **debtor**(2) | 28:11 222:14 |
| **debtor-in-possession**(1) | 26:19 |
| **debtor/committee/lender**(2) | 76:10 76:22 |
| **debtors**(9) | 1:10 1:22 17:2 60:15 60:22 70:15 75:5 226:23 243:21 |
| **debtors'**(2) | 28:10 90:4 |
| **decades**(2) | 108:5 255:18 |
| **december**(2) | 83:3 83:7 |
| **decide**(5) | 24:2 62:1 78:9 78:10 105:11 |
| **decided**(3) | 62:25 64:3 223:6 |
| **decides**(3) | 22:22 63:10 64:12 |

Page : 7                                                                    10/05/11 15:40:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**decision**(81) 30:16 31:13 46:5 46:15 46:15 46:20 47:2 53:1 59:12 59:21 63:19 101:7 103:8 103:10 103:13 103:17 103:18 103:20 104:6 104:10 104:14 105:3 105:10 105:22 106:4 108:9 108:17 108:22 108:24 108:25 109:14 109:22 109:25 110:2 110:2 114:24 115:23 118:11 118:14 118:18 119:4 119:6 120:19 127:2 127:10 136:25 140:24 142:8 142:12 144:20 154:10 155:20 155:24 156:8 156:10 162:5 162:11 162:18 162:19 163:4 172:20 173:18 175:11 187:2 187:5 189:1 190:4 190:11 190:12 193:14 203:21 218:8 223:1 227:6 227:15 230:3 230:14 234:9 235:4 245:15 255:21

**decision-making**(2) 31:11 238:20
**decision?"**(1) 63:13
**decisions**(7) 30:13 33:7 42:13 108:13 108:20 145:4 220:13

**declaration**(5) 89:11 89:15 91:14 98:7
**deemed**(1) 42:21
**defense**(6) 107:10 107:19 128:7 141:24 143:3 150:19

**defenses**(2) 127:23 158:1
**defined**(2) 52:3 158:11
**definition**(2) 108:7 126:6
**defraud**(4) 124:14 200:24 201:4 203:10
**defraud."**(1) 123:21
**degree**(4) 46:11 96:15 102:21 120:3
**delaware**(5) 1:2 1:10 1:34 2:48 13:1
**delay**(24) 22:12 52:25 53:8 59:11 59:20 62:21 64:6 70:6 78:19 79:5 79:9 79:22 79:25 80:19 81:19 84:1 87:21 92:3 123:2 124:13 181:7 200:24 201:4 219:10

**delayed**(1) 80:8
**delays**(2) 64:1 71:24
**deleted**(1) 48:22
**delineates**(1) 39:17
**demo**(1) 7:5
**demonstrate**(4) 30:20 76:7 78:14 140:10
**demonstrated**(1) 189:3
**demonstrates**(1) 39:16
**demonstrativ**(13) 36:2 52:20 63:9 71:10 71:13 73:14 79:22 84:1 84:3 87:25 97:7 97:14 97:18

**demonstratives**(1) 211:4
**denial**(1) 27:23
**denied**(1) 257:16
**deny**(8) 63:25 81:7 81:11 86:16 87:11 87:15 95:23 95:25

**depart**(1) 158:13
**departing**(1) 117:17
**department**(3) 53:20 103:11 103:17
**departments**(1) 49:18
**departure**(1) 118:7
**departures**(4) 158:18 158:25 158:25 159:16

**depend**(2) 96:16 205:24
**dependence**(2) 204:4 204:6
**dependencies**(2) 249:22 249:22
**dependent**(6) 188:5 235:22 235:24 236:4 236:4 249:18

**depending**(6) 23:20 31:7 42:17 46:25 51:14 117:8

**depends**(1) 46:11
**deposed**(2) 72:17 160:17

**deposition**(46) 44:2 44:4 44:5 44:7 62:15 72:7 76:1 77:3 77:7 77:22 80:7 80:11 80:12 80:16 80:17 81:16 92:16 92:16 93:1 99:16 106:12 160:15 169:19 162:17 186:6 186:7 186:14 207:23 208:20 209:6 223:9 223:9 223:14 237:13 237:15 237:23 238:2 239:7 240:19 241:24 247:15 247:18 247:21 248:2 252:10 252:10

**depositions**(1) 257:3
**describe**(5) 19:19 101:14 105:5 117:5 127:12

**described**(18) 41:17 41:24 74:17 88:21 118:14 120:20 126:9 142:13 176:7 187:4 188:22 195:8 200:9 218:8 219:18 244:15 250:5 251:20

**description**(3) 142:3 190:10 209:2
**designate**(8) 32:7 32:9 32:11 33:4 43:4 65:18 73:19 76:14

**designated**(4) 13:25 41:1 65:9 66:25
**designation**(8) 32:21 41:24 60:11 60:18 60:19 74:1 76:23 94:3

**designation-right**(1) 33:24
**designations**(1) 94:6
**designed**(2) 75:13 75:15
**despite**(1) 145:3
**detail**(8) 126:1 126:9 128:15 133:9 142:16 145:25 207:20 212:6

**detailed**(1) 41:16
**determination**(13) 42:24 60:21 94:2 109:3 127:16 129:20 132:20 137:7 147:10 151:2 164:19 204:13 241:13

**determinations**(2) 121:13 147:16
**determine**(21) 33:17 60:16 69:24 106:23 109:4 125:12 126:4 127:24 128:6 130:4 143:25 158:5 158:12 160:12 184:18 202:7 226:4 226:7 235:8 238:21 251:14

**determined**(12) 119:15 122:21 126:18 132:21 141:11 142:23 143:19 146:20 149:24 169:21 183:20 201:8

**determines**(1) 37:8
**determining**(4) 127:1 144:4 162:14 215:5
**deutsch**(1) 3:39
**deutsche**(1) 10:4
**develop**(1) 242:6
**developed**(3) 108:1 126:19 171:25
**development**(2) 108:8 226:10
**developments**(1) 108:5
**devoting**(1) 34:11
**dewey**(2) 5:12 14:12
**diamond**(1) 11:46
**diaz**(1) 1:40
**dictionary**(1) 220:21

**did**(180) 26:12 30:3 52:8 57:9 59:22 59:22 72:13 72:23 77:8 81:1 81:20 83:8 84:4 89:24 93:18 102:24 103:1 103:5 103:12 104:6 104:16 104:25 106:11 107:20 115:2 116:9 117:14 117:15 118:16 119:10 119:12 119:17 119:18 119:21 119:23 119:25 120:7 121:6 121:9 122:10 123:1 123:4 123:5 123:7 124:18 124:21 125:6 125:8 125:9 125:11 126:15 126:22 135:22 136:10 137:8 140:9 142:8 142:9 145:6 145:18 145:25 146:4 147:1 147:4 147:9 150:8 150:15 151:25 152:2 152:10 152:15 152:17 152:22 152:24 152:25 153:1 153:2 153:4 153:25 153:7 153:15 153:19 153:21 154:10 154:20 156:13 156:17 156:18 156:18 157:1 157:5 157:6 157:7 158:13 160:10 160:11 160:12 160:14 162:4 162:7 162:12 162:13 162:17 162:18 162:23 164:22 164:24 166:20 166:22 167:2 168:6 168:8 169:15 171:20 172:6 172:8 172:12 176:9 184:12 184:14 184:21 185:3 185:9 186:2 186:19 194:5 196:23 198:19 199:10 200:22 201:2 201:25 202:4 204:4 204:6 206:7 208:7 208:15 209:25 210:2 210:4 218:4 218:14 218:20 220:2 222:17 222:19 222:22 223:21 224:23 225:21 226:1 226:1 229:17 229:22 230:10 231:24 232:1 232:16 234:10 235:3 235:4 236:15 237:17 237:21 241:4 242:11 242:13 243:9 244:1 245:2 247:22 248:6 251:20 251:22 251:22 251:23 251:24 252:14 256:21

**didn't**(37) 74:9 76:2 80:12 91:12 93:8 117:1 147:4 151:5 154:7 160:22 163:13 173:23 176:17 176:23 177:3 177:9 177:16 183:12 184:10 184:15 195:3 201:12 201:15 202:2 209:2 210:20 225:17 226:10 231:2 232:18 234:11 234:12 234:24 241:14 243:7 254:17

**didn't**(4) 218:7 218:11 228:24 230:8
**differ**(1) 187:1
**difference**(10) 126:23 126:25 135:8 159:10 169:23 182:21 182:25 196:25 246:3 255:22

**differences**(2) 94:16 135:9
**different**(26) 27:21 30:17 33:21 53:10 56:10 61:19 75:4 142:13 143:18 157:10 157:11 158:8 170:15 172:13 174:1 189:12 194:22 195:8 205:10 213:9 215:10 215:16 226:15 226:15 230:13 247:6

**differently**(6) 137:22 138:6 175:14 188:8 231:18 233:12

**difficult**(4) 102:5 115:4 162:20 252:21
**difficulty**(1) 69:23
**dilutive**(1) 69:19
**dire**(1) 259:2
**direct**(24) 16:22 26:8 65:24 67:24 91:16 97:7 97:8 101:4 129:20 130:22 131:19 171:12 177:6 187:3 187:7 196:23 197:8 203:11 218:8 219:4 224:18 227:4 256:11 259:2

**directing**(1) 66:11
**direction**(2) 84:4 97:12
**directionally**(3) 158:17 158:20 177:2
**directly**(7) 39:20 93:9 134:2 134:24 142:23 195:15 241:12

**director**(9) 32:10 41:23 43:11 44:6 60:11 66:22 67:1 94:3 94:6

**directors**(13) 4:5 8:6 32:5 32:10 33:4 34:4 41:5 43:5 65:9 65:18 73:19 76:15 92:6

**directors"**(1) 41:15
**disagree**(3) 35:24 35:25 50:10
**disagrees**(1) 186:25
**disallow**(4) 174:16 181:22 192:15 193:17

**disallowance**(25) 142:4 149:8 149:14 149:25 150:4 150:6 150:7 189:25 190:11 190:25 191:25 192:1 192:9 192:21 192:24 193:10 193:15 193:22 194:14 195:4 195:20 196:11 199:23 247:4 248:10

**disallowances**(1) 172:4
**disallowing**(1) 191:18
**discern**(1) 184:8
**disclose**(2) 96:3 119:13
**disclosed**(6) 17:19 41:2 64:10 87:2 87:3 96:2

**disclosing**(3) 19:24 101:13 119:18
**disclosure**(1) 29:13
**discount**(9) 238:18 238:22 238:24 240:7 240:8 240:25 241:13 241:20 241:21

**discounting**(1) 237:10
**discovery**(1) 257:2
**discretion**(1) 91:23
**discuss**(2) 52:4 176:17
**discussed**(4) 68:3 99:3 172:3 257:23
**discusses**(3) 52:3 199:2 200:6
**discussing**(7) 27:14 45:19 45:20 77:21 143:22 220:11 249:21

**discussion**(4) 121:11 172:15 175:16 237:6
**discussions**(4) 16:1 107:17 172:5 229:3
**disgorgement**(1) 173:13
**disjunctive**(1) 218:4
**dispute**(4) 32:22 34:23 90:11 168:25
**distinction**(1) 228:9
**distribute**(1) 134:10
**distributed**(1) 117:11
**distribution**(3) 34:7 92:4 92:5
**distributions**(16) 142:6 173:5 173:13 173:21 174:3 174:18 175:1 175:15 176:4 178:21 179:7 179:15 180:11 180:17 181:24 226:14

**district**(1) 1:2
**diverse**(3) 23:5 57:6 57:8
**diversification**(2) 23:2 23:3
**diversity**(3) 53:24 53:25 53:25
**dla**(1) 3:19
**docket**(10) 81:20 81:22 81:23 81:25 82:1 82:4 82:23 83:2 83:11 96:5

**document**(18) 17:18 41:12 41:14 44:1 44:23 48:25 57:7 66:8 75:4 82:11 82:15 86:8 116:18 140:3 145:10 165:1 187:6 211:13

**documents**(3) 15:11 43:24 82:15
**does**(45) 20:2 21:12 22:17 26:16 38:19 39:11 39:13 49:1 55:18 55:21 58:19 65:12 65:19 65:21 66:1 66:23 71:23 74:15 82:14 97:14 97:16 99:25 127:19 137:23 143:4 160:20 164:11 165:15 165:18 177:22 177:23 179:7 194:23 195:14 208:16 208:24 220:4 220:9 230:14 230:18 240:7 240:18 241:7 246:3 251:6

**doesn't**(12) 88:21 96:21 113:1 114:1 137:22 179:5 184:22 205:24 215:24 231:10 232:12 241:5

**doesn't**(5) 42:23 47:13 61:19 63:3 66:1
**doing**(16) 26:22 39:6 55:25 96:25 156:19 162:11 162:19 162:21 162:24 184:6 227:15 237:9 239:3 240:6 242:15 255:14

**dollar**(3) 143:10 169:23 169:23
**dollars**(3) 107:15 112:20 113:1
**domestic**(1) 144:24
**don**(1) 58:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| don't(69) 78:12 78:21 78:24 79:13 82:7 85:10 85:22 88:6 98:3 102:18 110:12 111:12 111:13 117:25 119:13 128:14 131:13 132:6 134:13 139:4 139:20 149:9 155:9 157:17 157:21 162:25 163:1 167:13 168:12 179:13 182:24 182:25 184:17 185:11 185:19 185:22 186:1 186:16 186:24 189:10 189:20 196:25 199:3 202:9 202:9 202:9 202:14 203:13 207:20 207:21 226:13 227:13 228:15 229:6 229:9 229:20 229:23 231:25 232:2 232:16 233:1 237:2 238:4 239:3 240:15 242:18 250:18 254:3 | | eight-year(2) 85:3 85:9 eighteen(1) 212:10 eighth(1) 97:3 eitan(1) 10:16 either(38) 21:25 31:6 33:19 43:10 47:10 71:20 79:18 86:3 87:17 88:4 90:9 90:14 96:20 105:8 110:18 111:7 112:17 112:18 112:20 115:5 121:13 130:5 136:14 138:22 139:13 140:3 146:23 148:18 162:13 182:1 189:17 191:17 195:22 196:17 202:3 206:14 238:21 251:7 | | equipoise(9) 122:24 126:5 175:7 176:5 177:16 180:8 180:10 182:1 182:5 equitable(37) 142:4 149:8 149:14 149:14 149:25 172:4 189:24 189:25 190:11 190:1 190:24 191:1 192:12 192:7 192:9 192:14 192:21 192:21 192:22 192:24 193:10 193:15 193:22 194:11 194:14 194:15 195:5 195:19 195:21 196:5 196:11 196:12 199:23 247:4 247:4 248:10 | | evidence(26) 13:18 13:20 14:1 15:2 15:22 26:13 40:21 44:3 93:13 97:23 98:1 98:11 145:14 200:22 201:2 203:9 251:7 251:13 252:18 253:10 254:6 254:16 254:16 254:22 256:8 257:18 exact(5) 14:7 55:6 127:19 157:17 183:6 exactly(10) 47:13 53:20 76:1 88:21 94:3 134:22 172:14 179:13 187:21 237:24 |
| done(20) 21:13 27:15 79:12 83:13 95:18 104:24 107:2 115:13 121:4 144:20 144:23 161:6 162:9 210:1 211:2 211:19 212:1 214:7 236:11 245:21 | | elden(1) 6:37 eldersveld(1) 7:25 electrodynamics(1) 103:4 electronic(2) 1:46 258:5 element(3) 115:8 132:4 132:17 elements(16) 121:13 122:14 124:22 127:17 130:20 134:25 137:25 157:25 207:18 208:11 208:21 208:22 208:25 209:1 209:1 209:24 | | equitably(4) 191:17 191:18 192:15 193:17 equity(26) 34:12 39:12 39:21 39:23 40:2 40:5 41:23 42:11 42:16 42:18 42:20 44:14 45:3 45:20 45:21 45:23 58:22 61:18 65:8 66:20 67:1 68:24 68:24 69:8 73:16 75:7 | | examination(30) 15:4 15:9 15:15 16:22 26:8 70:13 70:19 90:19 90:22 97:8 97:9 99:11 101:4 139:14 140:13 145:19 165:14 171:6 171:8 171:12 187:7 197:8 224:8 224:18 244:16 246:19 253:19 256:21 256:22 257:3 |
| don't(21) 14:7 18:13 18:20 30:24 32:22 40:24 42:24 47:19 47:22 51:23 58:17 58:24 62:7 65:25 68:12 70:2 196:23 225:13 226:19 226:22 228:16 | | eleven(1) 214:23 eliciting(1) 117:22 eligible(1) 75:7 eliminate(2) 67:15 68:22 eliminated(2) 29:1 249:20 eliminates(1) 67:20 elimination(1) 61:16 elizabeth(1) 7:39 elkins(1) 8:42 elliot(1) 2:7 else(5) 17:22 71:24 87:18 180:15 257:22 embedded(1) 30:24 33:11 emerge(1) 28:4 emergence(2) 26:17 59:13 employed(1) 245:24 employee(1) 241:7 enable(2) 60:22 122:3 | | equity-ownership(2) 44:11 44:25 equivalent(11) 114:1 131:1 132:18 132:19 132:22 133:1 133:11 135:12 207:16 208:1 209:7 error(2) 179:14 244:4 errors(4) 242:10 242:14 242:18 242:19 especially(1) 47:3 esq(136) 1:23 1:24 1:25 1:26 1:33 2:5 2:6 2:7 2:8 2:9 2:15 2:22 2:30 2:31 2:37 2:38 2:39 2:40 2:41 2:47 3:6 3:7 3:13 3:14 3:20 3:26 3:27 3:33 3:34 3:35 3:36 3:37 3:38 3:39 3:45 3:46 3:47 4:6 4:14 4:15 4:23 4:24 4:30 4:37 4:43 5:6 5:13 5:14 5:15 5:21 5:27 5:35 5:37 5:39 5:41 5:45 5:46 5:50 6:6 6:12 6:14 6:18 6:22 6:24 6:28 6:32 6:34 6:58 7:5 7:7 7:9 7:11 7:15 7:17 7:19 7:23 7:25 7:27 7:31 7:33 7:35 7:37 7:39 7:43 7:45 8:8 8:12 8:16 8:30 8:24 8:28 8:30 8:32 8:36 8:43 8:47 9:5 9:9 9:13 9:22 9:26 9:30 9:35 9:39 9:43 9:47 10:11 10:16 10:20 10:22 10:24 10:28 10:29 10:34 10:39 10:40 10:44 11:5 11:9 11:14 11:18 11:22 11:26 11:30 11:32 11:36 11:37 11:38 11:42 11:46 11:50 12:6 12:9 12:13 12:17 | | examiner(108) 115:24 121:14 121:17 122:2 122:10 122:21 123:1 123:25 124:19 125:6 129:20 131:19 132:21 134:24 135:11 142:10 142:23 146:20 149:24 151:4 154:4 154:9 154:21 156:16 157:23 158:10 158:14 158:19 159:1 159:17 160:10 160:12 160:23 161:6 161:7 161:9 161:15 172:12 174:2 174:24 175:24 176:3 179:23 180:7 181:11 182:1 185:18 186:17 189:8 189:11 194:10 194:14 195:3 195:19 196:10 197:4 197:16 198:17 199:10 200:22 201:2 201:7 201:14 201:15 201:25 202:2 202:6 203:9 203:14 203:25 204:3 204:17 206:7 207:16 209:19 209:21 209:25 210:3 217:23 217:25 218:13 219:17 220:24 221:11 221:22 222:13 229:17 229:21 230:5 230:6 230:7 230:10 230:19 231:7 231:14 231:15 231:24 233:23 237:5 238:5 238:8 242:9 242:13 243:3 243:9 244:4 247:12 250:4 |
| door(2) 93:6 94:14 dorr(1) 6:11 doubling-down(1) 47:11 doubt(2) 82:6 82:7 dougherty(2) 6:37 6:38 douglas(1) 3:39 dow(2) 11:21 11:21 down(7) 37:14 44:18 48:2 100:9 141:8 167:13 250:16 | | end(17) 43:11 45:1 61:23 109:8 109:9 112:15 113:15 114:3 114:4 117:10 132:1 133:20 143:8 190:19 244:3 257:8 257:21 ended(2) 154:12 163:8 ends(1) 178:13 enemies(1) 58:14 enforcement(2) 30:17 30:20 engaged(9) 25:14 72:15 72:18 72:21 92:18 92:22 93:7 115:13 152:21 engagement(1) 26:10 | | essentially(10) 103:11 116:2 127:20 149:3 150:5 157:12 157:14 169:20 242:5 248:8 establish(2) 188:20 233:7 established(1) 255:13 establishing(1) 254:6 estate(1) 181:24 estates(1) 174:18 esther(1) 6:28 estimate(4) 14:7 115:11 156:1 224:10 evaluate(4) 27:17 85:24 156:14 252:21 evaluating(1) 252:3 evaluation(1) 177:6 | | examiner's(86) 101:19 115:22 116:2 116:4 121:6 121:7 121:10 122:4 122:6 122:9 124:24 127:16 130:22 134:2 149:12 154:8 155:14 156:23 156:25 157:20 159:12 160:1 161:5 173:10 174:6 175:5 175:21 177:6 177:17 177:20 178:4 178:7 178:8 180:2 181:3 183:10 184:9 184:23 185:1 185:23 189:14 189:23 190:2 190:24 191:15 193:5 193:9 194:1 194:6 196:16 197:8 197:14 197:24 198:6 199:4 200:3 200:8 200:13 201:21 203:11 207:8 207:13 208:20 209:6 209:15 218:15 218:19 218:25 219:8 221:19 222:4 222:7 222:10 229:3 230:20 230:22 231:11 233:15 233:19 236:7 237:5 238:5 242:5 251:21 251:24 251:24 |
| draft(1) 96:12 drafted(1) 61:25 drawn(1) 231:1 driving(1) 83:22 drop(1) 188:23 ducayet(1) 1:26 due(1) 60:17 duff(1) 10:48 duke(4) 24:11 24:15 24:22 25:4 during(7) 29:3 32:10 85:3 85:9 86:16 107:11 132:20 | | engagement(1) 26:10 english(1) 4:22 enough(3) 42:23 183:9 209:3 enrichment(2) 174:17 181:23 ensure(6) 23:4 74:2 75:15 75:24 92:1 224:12 entered(2) 200:23 201:3 entertain(1) 93:20 entire(3) 40:13 53:12 209:2 entirely(5) 15:16 15:16 187:14 204:2 entirety(1) 251:23 entities(19) 14:16 35:11 47:7 47:10 47:12 78:8 79:20 88:23 108:16 123:19 124:12 131:1 132:18 146:23 173:20 200:23 201:3 206:14 207:10 | | even(23) 16:10 16:11 68:20 68:21 81:11 87:20 106:19 110:19 113:6 114:2 134:10 141:2 144:21 144:22 150:6 162:11 163:4 163:10 170:12 203:8 217:22 218:16 227:1 evenly(1) 134:10 event(14) 37:7 43:4 60:15 64:15 76:25 111:4 125:17 147:5 156:1 156:2 188:1 208:20 225:17 233:25 events(1) 114:9 ever(18) 25:9 106:7 106:9 106:11 116:13 144:20 152:22 152:25 153:5 156:7 160:16 170:13 170:17 171:14 242:9 242:11 244:4 245:24 every(1) 62:14 everybody(3) 62:16 62:18 75:22 everyone(1) 133:3 everyone's(1) 26:14 everything(3) 53:15 99:6 107:10 | | examining(1) 13:15 example(17) 48:15 49:15 61:13 71:10 107:1 110:1 110:6 112:23 113:6 133:6 135:22 162:22 183:24 185:22 187:2 187:5 189:23 excel(1) 257:7 except(5) 16:9 40:3 66:13 68:3 210:5 exception(4) 177:12 177:13 177:15 200:9 excerpt(5) 40:17 40:19 44:1 44:4 57:3 exclude(1) 153:3 153:5 171:14 244:14 252:22 excluded(2) 253:2 254:9 excuse(17) 68:5 130:12 132:25 135:13 141:16 143:9 143:13 148:21 151:13 159:14 162:9 163:18 178:22 195:12 211:18 219:23 243:23 exercise(4) 91:22 221:6 221:10 232:17 exercised(1) 66:22 |
| each(27) 32:7 34:10 36:14 92:1 111:23 112:21 112:22 115:8 122:7 123:8 128:7 131:6 133:24 134:11 135:5 136:11 144:6 144:8 146:22 156:21 157:24 190:20 191:2 199:18 213:24 221:19 222:14 | | earlier(11) 108:23 130:8 135:14 145:18 151:20 183:11 200:9 216:10 235:11 239:2 252:24 | | earth(1) 107:9 ease(1) 142:3 easier(5) 16:14 36:9 49:20 129:11 211:17 easiest(1) 126:4 easily(1) 210:1 east(3) 4:38 12:12 12:12 easy(2) 141:2 162:11 ecro(1) 1:38 edge(1) 50:24 education(4) 102:10 102:19 251:15 255:11 edward(2) 3:6 13:13 effect(21) 62:21 63:13 63:19 63:20 69:19 90:10 128:9 139:21 147:25 148:25 150:11 151:9 151:16 200:19 206:5 208:9 218:6 230:16 233:20 237:3 248:3 effective(2) 90:10 90:14 effects(3) 138:1 237:10 249:21 effort(4) 78:14 96:7 173:10 228:11 egi(1) 244:20 ehmer(1) 11:9 eight(8) 23:24 38:21 80:2 80:3 83:23 84:7 84:8 84:24 | | | | | | |
| | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**exhibit**(59) 13:22 15:5 15:7 15:20 15:23 15:25 16:5 16:8 16:11 26:14 26:15 27:1 27:2 27:6 28:6 28:7 29:10 31:9 31:17 31:18 31:20 34:6 38:24 39:4 40:8 40:11 40:15 40:20 40:22 41:8 44:3 48:8 48:14 56:24 59:25 60:2 71:10 71:10 71:14 71:16 73:14 74:22 74:24 82:3 87:25 89:10 89:1 89:14 91:12 91:17 94:1 94:6 97:21 97:22 116:19 116:22 165:1 211:5 211:13

**exhibits**(21) 13:18 13:20 13:25 14:18 15:1 15:7 15:21 16:3 17:11 27:3 31:21 31:21 55:7 93:12 94:12 97:25 98:3 172:17 257:18 259:9 259:12

**exist**(2) 71:19 79:18
**exists**(2) 174:20 178:14
**expanded**(1) 49:19
**exparte**(1) 96:3
**expect**(2) 101:15 256:15
**expectability**(1) 247:25
**expected**(86) 101:17 105:10 107:18 108:1 108:2 109:12 109:17 109:21 110:3 110:13 110:22 112:14 112:21 113:4 113:19 115:1 115:20 119:5 119:15 120:11 127:1 127:24 138:24 143:25 144:4 144:5 144:9 144:13 148:2 148:5 148:25 149:3 150:12 150:16 151:10 151:12 151:14 154:11 156:14 157:1 157:12 157:15 162:9 164:19 168:1 168:18 169:14 169:16 169:25 170:3 170:15 170:11 170:22 170:25 175:10 182:23 188:23 189:7 196:21 202:2 210:14 210:24 214:11 215:1 215:5 215:6 215:19 218:6 225:19 226:4 226:7 227:2 228:12 228:16 230:22 240:7 240:18 241:1 242:7 247:20 248:4 248:12 249:2 252:3 253:17 255:17

**experience**(20) 43:13 62:13 63:22 70:1 80:5 81:5 81:14 83:10 95:5 101:10 114:19 156:6 163:3 164:15 170:6 170:13 241:23 251:15 255:11 255:23

**expert**(39) 9:29 9:25 26:1 70:24 71:23 72:13 73:1 78:17 79:23 101:10 117:22 117:23 117:24 120:5 120:10 120:21 145:5 145:11 153:9 154:20 172:1 182:11 185:3 236:19 241:14 241:15 248:14 251:14 253:7 254:2 254:3 254:14 254:23 254:25 255:3 255:6 255:9 255:15 257:13

**expertise**(6) 120:19 120:19 227:15 238:21 245:21 255:10

**experts**(6) 140:4 156:10 251:9 251:11 253:12 256:5

**explain**(44) 27:9 29:15 45:18 47:5 49:8 50:13 55:22 57:23 57:23 95:10 108:21 109:12 110:2 110:12 110:13 111:1 111:25 115:6 129:15 130:18 131:17 134:6 137:3 139:5 141:3 141:20 142:17 144:3 146:15 148:10 149:7 149:22 150:24 155:9 157:21 159:8 161:12 163:14 168:12 168:23 180:15 191:20 196:9 220:2

**explaining**(2) 51:23 92:10
**explanation**(10) 141:13 193:9 194:2 194:6 208:4 219:8 222:7 222:22 222:23 233:19

**explanations**(7) 177:10 177:10 183:13 200:8 221:12 221:13 251:25

**explicitly**(2) 189:18 230:11
**explore**(2) 165:14 215:9
**exposure**(1) 107:12
**express**(4) 25:22 122:10 122:13 155:25
**expressed**(10) 55:9 79:11 79:13 97:15 178:19 189:8 189:19 195:17 221:22 233:23

**expressing**(3) 54:22 55:2 75:18

**expression**(2) 195:13 195:16
**expressly**(1) 185:18
**extensive**(1) 257:3
**extent**(4) 16:15 108:15 165:12 254:8
**extremely**(2) 115:4 162:20
**eye**(1) 131:14
**eyes**(2) 17:16 221:10
**f.3d**(1) 255:5
**face**(1) 256:4
**faces**(2) 57:13 58:4
**facility**(1) 255:13
**fact**(62) 17:18 42:17 46:8 64:15 69:3 69:4 69:5 69:7 73:25 77:14 79:21 86:2 87:13 88:12 89:23 93:12 96:25 109:2 110:19 126:6 130:4 132:18 134:8 136:2 140:10 141:6 141:7 147:4 148:15 148:21 154:7 155:15 156:23 157:10 169:2 172:6 173:25 180:16 187:25 188:11 189:18 202:14 203:14 215:16 222:22 222:23 225:12 225:14 229:10 229:14 230:14 231:6 232:6 232:9 233:8 233:12 235:17 242:13 251:13 251:14 253:10 255:1

**factor**(4) 86:1 86:7 87:24 114:4
**factored**(1) 64:8
**factors**(6) 33:12 84:10 84:12 84:13 84:18 195:16

**facts**(26) 23:20 30:25 42:14 43:22 45:6 46:11 46:25 50:11 55:17 58:17 63:11 70:24 74:10 87:8 163:5 184:1 188:1 188:3 188:20 195:20 196:12 217:23 251:17 251:19 252:2 256:7

**factual**(8) 93:17 122:9 187:9 242:10 242:13 242:18 242:19 244:4

**failed**(1) 147:18
**failing**(2) 146:24 147:20
**fails**(1) 240:4
**faintly**(1) 51:13
**fair**(12) 73:4 128:11 160:6 161:23 183:9 202:5 203:2 209:3 221:20 242:21 242:21 254:23
**fairly**(3) 22:2 36:13 58:22
**faith**(6) 128:8 151:2 151:3 151:17 204:13 204:13
**fall**(5) 46:21 167:24 195:22 196:17 226:14
**fallon**(1) 7:45
**faltas**(2) 6:41 6:42
**familiar**(2) 96:17 189:25
**familiarize**(3) 96:7 96:8 119:19
**familiarized**(1) 165:25
**fans**(1) 25:4
**far**(5) 38:1 66:11 140:1 140:5 142:13
**fargo**(2) 4:42 9:46
**fashion**(12) 22:13 30:3 105:1 113:20 115:8 122:4 122:22 125:14 125:19 162:10 162:11 199:17

**faster**(1) 48:12
**father**(2) 103:18 118:14
**favor**(7) 56:2 56:18 69:15 158:20 160:2 160:3 160:7
**favorable**(4) 146:2 160:5 176:20 176:24
**favored**(1) 158:23

**fcc**(104) 13:16 13:18 13:22 15:1 15:22 15:23 15:25 20:1 20:16 20:23 20:25 21:2 21:4 21:12 21:18 22:5 22:17 26:2 26:13 26:16 26:20 27:9 27:10 27:12 27:15 28:2 29:14 29:16 31:4 31:11 37:7 37:10 37:17 37:20 38:24 39:5 39:9 39:11 40:8 40:10 49:2 56:1 56:3 56:25 58:19 59:11 59:18 60:16 60:17 60:23 61:1 61:2 62:3 62:6 62:6 63:10 63:13 63:19 63:23 71:23 72:4 73:22 74:3 74:8 74:14 75:10 75:13 76:3 76:25 77:4 79:10 79:25 81:23 81:25 82:5 82:12 82:16 82:21 82:24 83:3 83:7 83:12 83:16 85:6 85:23 86:14 89:20 90:3 90:7 95:5 95:9 95:10 97:22 99:16 99:18 99:25 99:16 101:14 101:15 156:3
**fcc's**(8) 75:16 75:24 76:20 80:9 81:19 81:20 90:5 99:14

**fcc-related**(1) 28:12
**fcc92**(4) 94:9 94:10 98:20 98:22
**fcc's**(8) 24:2 36:25 37:5 48:21 52:25 64:17 67:6 67:23

**feasibility**(3) 78:24 78:25 79:1
**feasible**(3) 78:18 78:22 78:23
**february**(1) 254:20
**federal**(2) 27:23 251:7
**feel**(1) 33:19
**feeling**(1) 47:1
**feld**(3) 2:36 8:21 100:21
**felt**(1) 77:13
**few**(13) 13:8 13:16 16:18 16:24 59:6 64:19 76:11 82:5 85:10 107:24 118:12 148:8 153:8
**fewer**(1) 114:5
**fides**(1) 27:18
**field**(12) 53:13 120:18 120:19 140:4 227:6 227:21 241:14 251:9 253:12 253:20 256:6 256:11
**fifteen**(2) 138:13 138:14
**fifty**(2) 207:3 216:22
**fifty-one**(2) 206:12 207:7
**fighting**(1) 107:10
**figure**(5) 61:14 62:10 63:4 205:3 216:9
**figures**(3) 115:4 116:9 206:24
**file**(4) 31:6 80:14 87:11 87:15
**filed**(19) 27:12 27:15 33:8 39:5 80:21 81:7 82:12 82:16 83:14 86:18 87:15 89:15 95:23 95:24 98:25 129:3 152:6 153:9 153:11
**filing**(1) 31:18
**filings**(1) 82:19
**final**(9) 41:1 41:4 95:17 109:4 112:19 132:9 150:17 162:2 163:12

**finally**(5) 16:16 97:20 213:13 213:13 247:9
**finances**(1) 50:21
**financial**(9) 131:4 131:8 131:9 133:13 133:15 146:22 176:13 246:22 248:9

**financially**(1) 182:15
**find**(26) 43:3 46:13 46:14 63:5 81:1 123:18 124:11 189:14 190:24 191:1 192:2 195:5 197:17 197:19 197:25 198:24 200:22 201:2 203:5 203:8 206:13 207:9 208:7 219:3 222:14 247:19

**finder**(1) 253:10
**finding**(44) 53:15 124:23 125:18 129:23 130:4 130:13 130:14 130:22 131:24 132:2 132:12 132:14 132:15 132:24 132:25 133:1 133:11 133:21 136:13 137:22 137:23 141:25 141:25 142:20 143:5 148:16 149:13 151:17 174:24 186:18 186:18 195:4 206:3 207:18 208:11 208:22 209:18 209:22 209:23 209:24 214:15 230:15 235:12 235:13

**findings**(13) 117:9 121:13 122:14 127:24 128:8 136:15 137:24 141:10 148:18 149:3 157:24 158:4 235:24

**finds**(1) 198:17
**fine**(2) 98:8 204:16
**finger**(3) 2:14 9:8 115:2
**finish**(2) 16:17 16:22
**firewall**(1) 51:2
**firm**(4) 13:13 16:20 20:2 210:14
**first**(77) 18:13 18:17 27:8 36:21 40:8 40:13 44:10 57:2 62:5 62:5 63:2 63:8 73:11 82:23 84:20 85:13 85:14 102:15 108:1 108:25 111:3 111:4 111:9 112:18 114:1 114:7 115:13 125:11 126:4 127:14 128:4 128:11 129:21 130:21 130:21 131:15 131:18 132:17 134:7 135:23 137:5 137:8 141:1 141:7 141:13 141:23 142:15 146:8 149:9 154:2 154:15 159:20 160:16 163:8 165:24 167:9 168:12 174:11 174:23 175:4 180:4 180:4 181:11 182:19 191:6 191:25 192:7 198:15 199:4 199:11 212:8 212:8 212:9 219:9 222:11 254:13 256:20

**fisher**(1) 20:19
**fit**(2) 127:13 183:18
**fits**(4) 111:2 137:4 139:6 141:5
**five**(14) 60:13 64:5 72:17 89:18 91:25 96:13 114:2 141:22 142:7 163:7 240:25 241:24 246:7 246:10

**fix**(3) 59:18 59:19 61:8
**fixed**(6) 43:15 154:16 155:19 155:21 156:7 156:11

**fixing**(2) 59:20 61:8
**flagg**(25) 1:24 17:1 17:1 26:6 70:14 70:14 70:18 70:20 81:9 90:17 92:14 93:4 93:18 93:21 93:23 94:13 94:23 94:25 95:4 96:5 97:6 98:2 99:2 99:10 99:12

**flagg's**(1) 93:16
**flatter**(1) 62:23
**flaws**(3) 153:20 153:23 154:1
**flip**(1) 34:6
**flom**(1) 8:7
**floor**(3) 4:18 5:8 97:3
**flow**(1) 49:21
**flows**(1) 240:8
**focus**(12) 121:9 121:15 121:20 128:14 136:22 172:14 172:20 183:11 189:24 198:11 198:15 205:3

**focused**(6) 22:7 121:11 177:6 193:8 193:15 199:8

**focusing**(3) 35:2 191:6 234:3
**folks**(4) 61:25 64:14 85:23 87:5
**follow**(8) 154:7 190:7 194:23 195:15 206:9 216:21 220:22 249:10

**follow-up**(1) 81:10
**followed**(3) 122:8 194:5 255:1
**following**(8) 93:16 122:23 172:21 175:1 175:6 186:15 186:15 211:21

**follows**(14) 185:17 190:16 194:3 203:15 205:21 218:13 218:15 218:19 218:20 219:14 219:19 220:4 220:9 220:22

**footnote**(1) 39:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**for**(301) 1:2 1:22 2:4 2:21 2:36 3:4 3:19 3:24 4:4 4:13 4:22 4:29 4:42 5:4 5:20 5:26 5:33 6:4 6:9 6:21 6:31 6:37 6:41 7:7 7:30 7:42 8:4 8:14 8:27 8:34 8:39 8:42 8:45 9:4 9:16 9:21 9:25 9:29 9:33 9:38 9:42 9:46 10:4 10:13 10:27 10:32 10:37 10:43 10:48 11:4 11:8 11:12 11:17 11:21 11:25 11:29 11:35 11:40 11:45 11:49 12:2 12:8 12:12 12:16 13:14 15:5 15:5 15:6 16:7 16:7 16:9 16:14 16:21 17:1 18:4 18:6 18:13 19:5 19:13 19:20 20:3 22:6 22:25 23:9 24:3 24:13 25:17 27:19 27:25 28:4 29:4 29:22 30:22 30:23 31:1 31:4 32:24 33:2 34:7 35:5 35:12 36:3 36:16 37:1 37:23 40:15 41:18 41:25 42:8 44:24 45:18 45:25 46:2 46:6 46:10 47:14 47:17 47:24 48:15 49:4 49:14 49:15 49:19 49:20 49:23 50:13 50:19 51:2 51:15 51:22 52:17 53:1 53:14 53:18 53:25 54:5 55:12 55:13 56:25 59:12 60:11 60:11 61:13 61:25 62:25 63:6 63:21 65:6 66:14 68:13 69:23 70:14 71:9 76:23 79:1 81:20 82:24 83:2 83:6 83:25 84:23 85:7 85:11 85:13 85:16 86:12 86:13 90:4 90:9 90:13 95:5 95:13 100:21 101:14 104:16 104:16 104:2 105:1 105:5 105:6 106:16 107:1 107:2 107:5 108:19 108:21 109:12 109:22 109:2 109:24 110:12 111:1 111:25 112:17 112:22 112:23 112:23 112:24 113:18 114:13 114:13 115:14 117:5 117:25 118:8 118:23 118:25 121:25 122:19 124:21 124:22 126: 126:11 127:19 128:18 129:23 129:25 130:5 130:14 131:5 131:6 131:6 131:17 133:13 133:14 133:16 133:19 135:5 135:9 136:1 137:3 137:7 137:13 139:1 139:4 141:3 141:11 142:3 142:8 142:18 143:2 143:21 144:3 144:6 144:14 145:1 145:4 145:20 146:9 146:15 146:25 147:1 147:1 147:17 148:10 148:13 148:19 148:22 149:1 149:10 149:17 149:20 150:3 150:7 150:9 150:15 150:24 151:7 154:3 154:3 154:15 155:9 156:25 157:21 159:8 161:2 161:20 161:21 161:21 162:7 162:21 167:7 171:19 174:1 175:11 175:17 176:15 177:10 177:22 181:7 183:24 185:22 186:5 191:14 192:17 192:20 192:22 194:10 194:15 195:8

**for**(50) 196:9 197:1 200:4 200:8 200:9 200:21 201:22 202:3 204:11 207:17 208:4 209:12 210:24 213:24 215:1 219:3 219:8 219:10 220:13 220:18 227:5 227:13 227:2 228:25 229:10 231:19 232:5 234:25 236:3 237:7 238:19 240:7 240:25 242:7 242:25 244:20 246:18 248:10 248:18 248:22 248:24 249:17 250:19 252:9 252:21 253:9 255:14 256:1 256:8 257:13

**foregoing**(1) 258:4
**foreign**(1) 46:21
**foreign-ownership**(2) 27:20 33:14
**forgive**(2) 219:3 231:19
**forgot**(1) 237:23
**forgotten**(2) 222:22 237:14
**form**(5) 13:16 26:14 26:25 31:7 127:21
**formal**(1) 103:7
**forman**(1) 1:31
**formed**(1) 104:11
**former**(1) 8:4
**formerly**(1) 103:15
**forming**(3) 59:22 119:5 256:6
**formulate**(1) 254:17
**formulating**(1) 257:14
**forth**(8) 38:11 96:5 96:6 122:6 136:19 172:5 208:16 221:24

**fortune**(1) 108:19
**forty**(1) 218:17
**forward**(1) 113:10

**found**(27) 111:21 134:24 187:25 191:22 192:14 192:22 195:20 196:3 197:10 203:9 205:25 206:6 206:21 208:9 211:1 211:21 212:20 214:25 216:13 216:19 217:3 217:1 217:12 217:23 232:6 235:18 235:19

**foundation**(6) 10:38 11:41 255:9 256:1 256:18 256:24

**founded**(1) 103:17
**four**(11) 21:2 23:22 60:13 114:3 127:14 128:11 135:25 137:8 140:19 144:18 163:7

**fourth**(1) 213:13
**fox**(1) 4:42
**frame**(1) 122:21
**frank**(3) 5:41 11:25 11:26
**frankel**(1) 10:10
**fraud**(24) 186:18 186:19 197:17 197:19 197:25 204:19 204:20 206:20 207:17 207:19 209:17 209:18 209:23 209:23 214:25 217:1 217:3 217:17 217:17 217:19 218:18 218:18 233:2 233:8

**fraudulent**(103) 123:2 123:6 124:18 124:20 124:21 124:23 127:17 127:18 129: 129:8 129:19 129:19 129:21 129:23 130: 130:2 130:5 130:13 130:14 130:19 130:20 130:23 130:24 131:5 131:20 131:24 131:2 132:3 132:13 132:14 132:15 132:16 132:20 132:25 133:22 133:23 134:23 135: 135:24 136:1 136:13 137:23 137:24 138: 138:7 141:25 142:21 142:22 143:5 148:17 157:24 157:25 185:24 185:25 197:3 197:9 197:13 198:19 198:25 202:8 202:19 203:3 203:6 203:22 203:24 205:4 205:10 205:14 205:18 205:21 205:23 205:25 206:3 206:4 206:5 206:15 208:12 208:21 208:23 209:8 209:12 210:16 210:17 210:25 212:12 212:20 214:16 215:17 216:13 216:18 217:12 218:1 218:2 228:25 229:11 235:12 235:14 235:18 235:19 245:15 249:17 250:20 252:4

**freedom**(17) 43:21 43:23 44:10 44:21 45:1 45:8 45:12 45:14 45:17 47:16 54:17 54:1 55:1 55:8 55:14 55:16 69:8

**frequently**(2) 20:25 238:23
**friday**(1) 24:23
**frideman**(1) 3:4
**friedman**(52) 2:29 3:6 13:7 13:12 13:13 13:13 14:6 14:11 14:21 14:23 15:3 17:4 17:7 17:9 17:13 17:23 18:1 18:3 18:6 18:23 19:11 25:8 25:25 26:9 36:5 36:8 36:11 64:18 64:24 66:13 68:2 90:21 90:2 92:16 93:1 93:2 93:11 93:25 94:10 94:22 95:3 97:20 98:15 98:17 98:19 98:22 99:5 99:7 99:8 99:20 99:22 100:7

**friedman's**(1) 47:18
**friends**(1) 58:13
**frivolous**(3) 81:7 81:11 87:20
**from**(93) 13:19 18:18 23:6 26:17 28:2 28:4 28:18 44:2 44:5 46:5 55:23 57:14 57:16 58:18 59:13 60:14 60:16 64:7 64:14 64:21 73:9 83:9 86:17 88:1 92:11 94:1 102:21 107:18 114:3 114:13 114:18 116:1 116:11 117:14 117:17 117:23 122:20 126:11 126:22 128:2 134:1 134:2 136:5 136:11 137:9 142:2 142:6 142:10 143:1 149:16 152:13 152:20 157:10 157:11 158: 158:14 158:18 158:25 159:16 168:20 171:4 173:14 174:18 178:10 181:24 185:1 188:23 189:23 191:21 194:20 195:15 195:22 196:17 199:19 211:21 211:23 211:23 211:25 213:10 213:14 213:17 218:15 218:19 221:20 225:4 227:1 227:1 229:3 235:9 241:18 249:21 249:23 258:5

**front**(7) 17:14 93:17 173:1 187:4 198:13 216:22 255:21

**ft2**(1) 173:20
**fulfills**(1) 67:19
**full**(21) 15:23 16:12 16:15 19:5 27:8 46:16 47:1 97:3 137:10 137:11 138:19 138:22 141:3 167:19 167:22 167:25 180:5 181:10 181:13 196:1 198:12

**function**(1) 152:13
**functionally**(1) 135:25
**functions**(2) 50:21 108:25
**fund**(3) 8:42 51:10 51:11
**fundamental**(2) 11:12 11:13
**funds**(7) 39:20 40:4 51:7 51:14 51:25 52: 52:10

**further**(20) 14:3 17:6 32:8 44:18 60:14 64:18 86:9 87:16 90:17 99:6 108:5 113:18 137:25 148:20 150:1 174:7 215:9 238:4 244:9 245:9

**future**(3) 238:24 240:8 240:8

**gagat**(1) 1:22
**gandhi**(1) 8:28
**gannett**(14) 48:3 48:4 48:5 48:15 49:1 49:3 49:13 50:6 50:10 50:14 51:9 51:10 52:13 52:13
**gannett's**(1) 48:17
**garvan**(1) 2:22
**gary**(1) 7:23
**gave**(5) 56:9 90:24 124:22 146:22 147:7 147:16 160:21 186:15 230:12 238:5 240:1 250:7

**gavin**(2) 6:18 44:5
**gears**(2) 52:16 59:6
**geddes**(1) 2:40
**general**(17) 19:24 34:3 103:4 117:2 117:5 154:25 155:14 162:8 177:13 184:10 192:11 224:21 235:15 237:21 240:6 240:17 251:10

**generally**(29) 20:2 20:15 21:10 21:13 26:16 30:4 30:18 31:1 45:24 48:21 48:23 71:4 95:22 101:14 105:8 108:8 108:14 108:18 109:22 113:2 114:11 165:25 166:3 177:9 183:13 188:3 240:9 241:21 245:25

**generated**(1) 226:1
**generates**(1) 135:2
**gentilotti**(1) 2:21
**george**(2) 6:37 6:38
**get**(45) 22:4 37:23 40:19 50:1 50:24 54:2 55:5 56:19 62:16 62:18 62:19 64:5 64:8 83:25 83:25 92:20 95:17 103:5 109:20 109:21 110:19 113:11 114:11 114:17 115: 116:9 121:20 124:8 128:16 133:9 134:9 136:5 138:25 142:16 154:18 156:3 181:6 183:20 206:19 213:23 214:11 215:13 222:22 234:21 255:14

**gets**(9) 53:19 53:22 53:23 62:3 64:11 97:2 162:22 196:4 253:24

**getting**(4) 63:24 71:13 112:3 192:10 101:16 105:13 120:7 126:22 147:2 147:1 182:14 241:5 246:10 247:24 253:17

**given**(22) 42:25 47:1 50:11 95:19 96:8 96:24 96:25 111:7 131:2 139:12 146:24 169:18 193:25 194:13 196:15 203:10 207: 211:13 211:14 217:24 221:17 224:10

**gives**(4) 115:10 207:4 225:3 241:21
**giving**(6) 13:10 14:6 119:22 133:8 200:19 228:2

**global**(1) 6:41
**glory**(1) 89:18
**gloss**(2) 33:6 33:6
**goal**(1) 137:5
**goes**(10) 32:6 32:8 40:15 48:25 79:4 108:2 117:7 132:1 133:2 143:8

**going**(73) 14:2 16:18 22:15 22:24 24:3 24:22 35:9 37:12 37:24 38:23 40:7 41:13 41:16 43:16 43:24 44:7 47:3 51:9 51:11 55:5 56:11 58:20 58:21 58:23 59:4 59:18 61:7 61:11 61:11 61:12 62:6 62:8 62:10 63:4 63:7 63:25 64:3 64:11 64:16 65:17 69:3 69:8 70:2 70:4 70:4 70:6 72:8 75:23 75:24 76:7 78:12 79:9 81:4 85:21 88:19 88:20 88:24 91:11 91:16 91:17 96:16 96:9 96:19 96:20 96:24 97:2 106:19 109:16 118:6 128:17 216:5 221:7 238:17

**golden**(2) 2:38 236:22
**goldfarb**(1) 3:46
**goldis**(1) 6:12
**goldman**(3) 6:14 7:42 7:42
**gone**(2) 80:13 112:8
**good**(17) 13:3 13:4 19:12 70:21 70:22 96:11 100:20 101:6 101:7 128:8 151:2 151:3 151:17 171:10 171:11 204:13 204:13

**goodly**(1) 84:25
**gordon**(61) 5:4 6:17 7:33 14:13 32:7 32:9 32:14 32:19 34:10 35:3 35:6 35:15 35:21 36:22 36:25 37:9 37:25 38:10 39:12 39:20 40:4 41:2 41:18 41:25 42:2 42:6 43:10 44:6 44:10 44:19 45:1 45:4 45:17 47:8 47:17 52:22 52:24 52:25 54:16 54:17 55:10 55:14 60:11 62:1 65:16 69:6 71:12 71:14 71:21 73:6 78:2 79:17 86:24 88:12 88:18 88:22 91:1 91:4 91:9 91:25 92:12

**gordon's**(10) 41:22 41:23 43:23 45:7 55:7 55:8 59:9 63:4 64:9 64:25

**gordon''**(24) 12:30 38:2 38:13 43:20 62:19 63:4 64:4 67:1 78:9 97:1 109:9 169:2 191:21 227:1 246:9

**gotshal**(1) 8:27
**gotten**(6) 83:24 126:21 190:7 211:20 214:24 225:5

**governance**(1) 41:15
**grade**(1) 123:25
**graduate**(1) 103:2
**graem**(2) 3:45 5:45
**grand**(1) 5:16
**grant**(2) 31:13 56:20
**granted**(8) 29:17 29:20 30:14 87:17 90:8 90:13 93:22 93:24

**granting**(2) 27:24 33:10
**grateful**(2) 182:16 219:25
**great**(3) 121:8 126:23 237:9
**greater**(10) 40:3 53:18 73:15 157:15 159:23 159:24 167:16 167:17 167:18 225:4

**greater-than-5-percen**(1) 52:12
**greatly**(1) 158:23
**green**(6) 159:19 159:21 159:22 160:2 160:3 164:5

**greg**(1) 7:5
**greissman**(1) 9:47
**grippo**(1) 6:37
**gropper**(5) 91:14 98:8 152:23 256:21
**gropper's**(1) 98:13
**ground**(2) 85:8 85:12
**grounds**(2) 244:14 251:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**group(9)** 39:18 41:11 104:8 104:18 108:10 108:12 234:13 235:9 235:10

**grouping(2)** 137:15 138:9
**groups(3)** 20:18 138:2 226:15
**gruszka(1)** 11:14
**guarantor(6)** 217:11 217:13 217:19 219:14 222:8 222:14

**guess(16)** 29:20 120:18 127:9 133:7 138:2 138:25 157:20 160:10 161:14 163:12 163:25 167:6 170:2 206:10 248:11 255:6

**guessed(1)** 154:8
**guide(1)** 107:7
**gump(13)** 2:36 8:21 100:21 115:13 171:19 172:16 173:22 175:16 182:22 210:5 228:7 229:4 246:18

**guys(1)** 62:8
**had(63)** 46:19 71:16 72:18 72:21 73:1 107:16 111:5 114:2 116:11 132:12 132:13 136:4 136:5 137:25 139:8 153:13 157:12 158:9 161:6 161:7 163:7 172:5 172:6 172:7 172:12 172:12 174:1 175:16 175:20 175:24 177:3 178:9 192:6 195:4 201:10 204:4 206:2 206:4 222:22 222:24 223:6 223:16 223:19 223:21 230:11 236:15 237:14 237:23 242:9 244:4 245:14 246:25 247:11 247:19 248:2 257:4

**hadn't(3)** 72:20 177:1 223:11
**hair(3)** 56:9 58:2 69:11
**hale(1)** 6:10
**half(2)** 170:22 200:20
**halt(2)** 85:9 85:12
**hand(5)** 17:24 19:2 19:2 95:15 113:3
**handed(3)** 17:13 101:25 172:17
**handful(1)** 16:21
**handle(1)** 147:4
**handling(1)** 99:14
**hang(3)** 191:8 198:8 234:5
**happen(6)** 23:10 109:16 188:15 233:24 235:5 246:25

**happened(3)** 107:5 234:20 235:9
**happening(3)** 70:3 134:5 172:2
**happens(7)** 61:2 62:4 62:5 95:10 95:11 186:8 187:22

**happy(2)** 239:21 244:16
**hard(11)** 25:5 36:2 36:9 62:16 65:25 66:3 68:6 91:13 211:9 211:12 246:9

**harm(1)** 99:7
**harrisburg(1)** 1:42
**harrop(1)** 2:41
**hartford(8)** 4:32 56:12 56:23 57:1 57:5 57:8 57:10 87:17

**has(104)** 15:17 15:21 17:12 21:12 21:13 22:11 24:2 27:15 27:22 28:17 29:17 30:4 30:5 33:3 34:2 35:15 36:2 38:21 42:2 42:6 42:9 42:20 44:20 44:21 45:4 45:17 46:2 46:16 47:16 47:17 49:13 49:25 50:6 50:14 50:17 51:12 51:17 51:20 54:18 56:19 62:13 64:19 64:24 65:7 65:9 66:14 67:14 68:4 75:8 75:13 82:24 83:11 83:13 84:23 86:13 87:3 91:13 92:18 93:15 95:5 95:13 95:14 96:12 97:3 99:16 105:9 108:25 110:15 110:16 111:6 111:8 115:7 120:20 122:2 126:7 133:2 134:5 139:25 141:9 151:10 169:1 173:20 179:23 185:1 189:6 192:14 195:16 200:3 218:5 221:13 221:21 221:25 230:16 232:16 234:14 241:4 243:3 245:24 255:10 255:12 255:13 255:23 256:2

**hasn't(3)** 92:18 98:4 221:12

**hauer(3)** 2:36 8:21 100:21
**have(301)** 13:18 14:7 14:10 14:11 15:5 15:24 16:2 16:15 17:2 18:4 18:10 20:1 22:2 22:7 22:10 22:10 22:14 23:5 23:6 23:10 23:16 24:14 24:15 24:18 24:18 24:22 25:9 25:11 26:16 28:25 29:1 30:10 30:11 30:13 31:24 32:9 32:13 32:14 32:20 33:24 34:13 34:16 35:3 35:6 35:10 35:10 35:14 35:21 36:2 36:9 37:2 37:7 37:12 35:19 38:19 40:17 41:21 42:1 43:25 45:5 45:7 45:11 45:20 46:5 47:8 47:9 47:10 47:13 49:23 50:3 50:5 50:7 50:9 50:11 50:25 51:8 51:15 51:25 52:12 52:20 52:25 53:4 53:13 54:16 55:9 56:11 57:15 58:10 58:11 58:21 59:14 60:9 60:25 61:7 61:11 61:24 62:5 62:10 62:19 62:20 62:24 62:23 63:1 63:13 63:15 63:16 63:18 64:4 64:9 64:15 64:18 65:2 65:3 65:11 65:12 65:17 65:19 65:25 66:1 66:9 66:20 66:22 66:23 67:21 68:6 68:13 68:16 69:1 69:3 69:7 69:19 70:8 71:1 71:5 72:2 72:6 73:3 73:6 75:24 78:8 78:21 79:7 82:6 82:7 82:16 83:14 85:2 85:6 85:8 85:20 85:22 86:21 86:5 86:18 86:20 87:5 88:13 88:20 88:21 88:24 89:4 89:5 90:8 90:11 90:13 90:17 91:7 91:21 92:7 92:12 93:19 93:25 95:18 95:20 96:3 96:6 96:23 97:24 98:2 98:4 98:9 99:6 99:25 100:22 102:12 102:14 102:24 103:7 105:15 105:16 105:1 105:22 106:3 106:7 106:8 106:10 106:12 106:22 108:5 108:15 110:5 110:9 110:16 110:17 110:21 111:7 111:10 111:10 111:11 111:16 111:22 112:4 112:15 113:15 113:21 113:24 114:24 116:13 116:14 117:11 118:10 119:2 120:23 121:21 121:23 122:15 123:8 123:10 124:3 125:20 127:4 128:8 128:15 129:6 129:10 130:3 130:23 131:5 132:5 132:16 133:12 134:9 134:16 134:25 135:15 136:19 136:22 139:8 140:1 141:1 143:9 146:8 146:13 147:22 147:25 148:1 148:14 148:15 148:22 148:24 148:25 149:5 150:8 150:10 150:11 151:9 151:12 152:7 154:24 155:7 156:6 156:9 158:17 158:24 159:3 161:9 161:22 161:23 162:10 163:7 169:4 170:6 170:13 170:16 170:17 170:21 173:1 173:14 174:8 175:12 176:12 177:7 177:11 177:23 177:23 177:25 179:1 179:14 179:19 181:17

**have(91)** 182:24 183:13 184:18 184:19 187:4 187:20 188:8 189:18 189:20 190:7 192:1 192:16 196:13 196:23 198:13 200:4 200:10 200:15 201:9 201:20 204:4 205:2 206:4 206:7 206:25 206:25 210:1 210:3 211:2 211:12 211:16 211:19 212:6 212:25 213:4 214:14 215:19 215:24 216:8 216:22 219:7 222:5 223:18 223:19 224:7 225:5 226:17 228:24 229:6 230:11 230:16 231:1 232:6 232:9 232:10 233:9 233:17 233:21 234:17 234:22 235:25 236:5 236:10 236:21 238:10 238:20 243:14 244:9 245:6 245:12 245:14 245:21 246:2 246:7 248:2 248:4 247:11 248:7 249:10 249:19 250:17 250:21 251:3 252:25 253:9 253:16 254:23 255:20 257:6

**haven(4)** 56:13 57:14 57:17 58:8
**haven't(9)** 78:6 79:11 81:22 83:24 85:12 87:6 112:20 126:21 150:20

**having(3)** 68:23 150:14 150:15
**hazeltine(1)** 4:35
**he's(12)** 120:20 152:14 199:14 221:3 225:8 225:11 225:11 241:5 241:8 243:3 255:14

**head(7)** 24:24 80:23 115:5 162:18 162:19 163:5 163:11

**headed(3)** 173:19 200:7 213:8

**heading(17)** 29:12 32:4 36:16 50:17 57:4 57:7 173:21 174:12 178:7 193:9 200:3 212:24 216:17 217:9 219:8 222:6 222:10

**headline(1)** 221:12
**headlines(1)** 251:21
**hear(4)** 145:19 243:7 244:15 250:24
**heard(1)** 177:5
**hearing(6)** 19:13 73:9 92:20 194:6 252:11 258:2

**hearing."(1)** 41:3
**hearst(1)** 20:16
**heart(1)** 24:22
**heilbut(1)** 8:36
**held(8)** 33:3 36:24 48:16 68:24 68:25 84:25 191:18 255:5

**heller(1)** 83:9
**help(5)** 105:11 106:23 110:2 110:13 210:1
**helpful(3)** 96:10 211:9 252:3
**henderson(1)** 7:11
**her(1)** 87:4
**hercules(1)** 4:16
**here(84)** 18:21 29:14 33:22 39:6 39:14 51:2 52:8 53:14 56:2 56:8 58:17 61:9 61:24 62:24 64:16 68:10 79:3 81:3 83:22 89:19 96:22 98:8 109:17 111:10 113:24 114:15 117:16 119:3 133:14 135:12 136:1 137:8 137:15 138:23 140:10 141:7 141:13 143:9 143:11 148:19 149:7 149:23 150:11 150:18 161:18 168:24 169:17 169:24 188:18 188:10 190:10 196:2 198:15 201:1 203:2 205:24 210:20 211:19 212:12 222:24 213:19 216:6 216:21 219:18 220:25 227:15 228:6 228:11 233:23 252:18 253:2 254:1 254:16 254:22 255:12 255:16

**hesitate(1)** 224:9
**high(4)** 108:22 168:22 169:1 169:4
**higher(7)** 49:14 49:23 51:21 107:12 107:15 135:12 169:2

**highlight(2)** 73:15 147:22
**highlighted(7)** 17:12 121:25 122:19 123:16 124:9 133:6 167:9

**highlighting(1)** 16:13
**highly(22)** 13:25 14:18 15:8 17:15 25:2 90:7 90:12 122:23 122:25 125:14 125:15 125:17 125:18 132:21 151:5 163:9 200:18 201:9 219:12 221:23 221:23 222:13

**him(11)** 92:21 92:21 93:17 117:24 140:8 154:15 186:5 221:6 229:15 241:8 256:15

**himself(8)** 44:21 121:17 125:16 158:9 158:19 159:1 253:14 256:13

**hinder(4)** 123:21 124:13 200:24 201:3
**his(90)** 16:22 17:13 44:7 89:18 92:16 93:19 94:14 120:11 121:11 121:12 121:19 121:20 122:10 122:13 122:21 123:10 125:11 135:11 140:8 147:16 152:1 153:19 153:20 154:3 154:9 154:11 156:15 156:25 157:3 157:23 158:2 158:9 159:13 159:16 159:22 160:7 161:6 162:5 162:17 162:18 177:7 177:9 177:10 177:10 184:11 184:13 184:16 185:22 185:3 185:19 186:19 189:8 189:19 194:11 194:14 194:15 197:5 198:2 199:4 199:11 199:16 201:8 202:7 204:3 204:21 207:16 208:4 209:25 221:10 221:14 229:22 230:17 230:23 237:7 242:10 248:18 248:22 251:9 251:22 252:1 252:2 253:16 253:20 254:25 254:25 256:11 257:14

**history(2)** 29:3 107:25

**hold(3)** 34:4 35:23 40:2 40:5 49:13 76:14 79:20 150:7 151:6

**holder(2)** 75:6 75:8
**holders(1)** 151:4
**holding(3)** 34:13 34:18 49:17
**holdings(2)** 14:15 74:1
**holds(2)** 43:17 43:18
**holes(1)** 257:5
**honor(127)** 13:4 13:7 14:6 14:12 15:3 15:6 16:7 16:14 17:1 17:9 17:23 18:3 18:12 18:21 18:23 22:2 25:25 26:6 27:14 30:5 36:5 46:2 53:13 58:1 64:20 64:21 65:25 66:2 66:7 68:14 69:14 70:14 90:18 90:21 92:14 93:2 93:21 93:25 94:4 94:25 95:23 97:20 98:2 98:13 98:22 99:6 99:20 100:13 100:20 102:3 117:19 120:9 120:16 120:24 121:2 128:22 139:7 139:19 139:24 140:9 140:14 140:16 145:13 145:17 145:22 165:9 165:11 165:17 171:7 177:19 178:1 179:8 180:23 181:1 184:24 194:17 195:24 211:8 215:23 220:17 221:9 224:1 224:4 224:9 224:11 225:11 225:15 228:18 229:13 229:24 232:14 234:23 236:10 236:14 239:14 241:3 243:2 243:13 243:18 244:11 244:12 244:19 246:7 246:11 246:17 249:9 250:18 251:1 251:4 251:18 252:1 252:8 252:17 252:25 253:4 253:8 253:18 253:25 254:7 254:7 254:10 254:12 254:22 255:4 255:19 255:21 256:3

**honor's(1)** 94:17
**honorable(1)** 1:17
**honors(1)** 102:21
**hopefully(3)** 51:10 63:5 257:20
**hoping(2)** 47:11 250:17
**hot(1)** 97:19
**hour(3)** 16:24 25:20 152:16
**hourly(1)** 25:19
**how(79)** 14:4 20:25 23:7 23:8 25:12 37:9 57:15 57:17 60:25 62:1 62:10 64:13 64:14 81:2 83:15 83:19 85:24 96:15 101:8 103:20 104:14 104:18 106:3 109:5 110:2 110:12 110:22 111:1 112:13 113:16 114:20 117:3 117:6 118:1 122:10 125:9 125:12 126:2 127:13 129:15 130:18 133:9 136:5 137:3 139:5 141:3 142:17 144:3 147:4 152:7 152:15 154:24 156:18 161:6 168:12 169:15 175:12 179:25 180:15 182:21 183:10 183:17 185:20 187:16 189:1 189:4 191:20 206:18 207:7 210:23 220:24 224:7 226:14 231:12 238:10 242:16 251:24 252:18 254:17

**howard(5)** 3:35 4:30 103:18 108:9 118:14
**however(2)** 42:12 249:20
**huge(1)** 189:6
**humphrey(1)** 19:15
**hundred(3)** 203:4 203:15 220:5
**hundreds(4)** 106:6 106:15 106:21 245:18
**hurdle(1)** 76:25
**hurdles(1)** 15:10
**hurley(67)** 2:37 100:13 100:20 100:21 100:25 101:2 101:5 102:3 102:8 106:20 117:24 118:1 118:2 118:4 118:5 120:9 120:22 121:2 121:3 140:15 140:16 140:17 145:13 145:23 161:8 165:7 165:20 169:12 171:2 179:8 179:10 179:15 179:16 180:23 184:24 185:1 192:25 194:17 195:24 203:16 210:8 215:23 221:2 224:1 225:7 227:22 228:18 229:13 229:24 231:4 232:14 234:23 239:14 239:24 240:20 241:3 243:2 243:9 246:7 246:11 246:17 246:17 246:20 250:17 250:23 254:12 254:12

**hurt(1)** 253:24
**hypothetical(10)** 110:8 110:14 112:14 188:12 188:16 202:22 227:3 231:13 232:5 232:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**i'd**(11) 70:23 73:10 81:10 98:9 100:22 107:24 115:12 153:8 165:13 182:16 193:4

**i'll**(21) 72:9 81:1 82:4 82:8 82:10 91:20 93:5 93:20 97:23 99:23 145:21 162:16 165:19 169:13 213:16 225:14 229:15 232:19 236:16 241:8 246:10

**i'm**(62) 71:13 72:8 81:4 88:9 88:11 91:11 91:15 91:17 93:16 93:17 96:17 97:23 97:24 98:5 116:19 117:24 118:12 154:12 161:20 161:21 162:21 162:24 163:10 167:21 175:19 178:6 179:12 179:12 181:7 181:10 182:13 182:14 185:12 191:6 191:9 193:8 195:13 196:8 196:8 197:10 197:21 197:21 197:23 219:2 219:2 219:22 221:19 222:6 223:23 231:12 231:14 234:3 239:19 239:21 242:16 243:5 244:12 244:1 246:1 249:9 254:18

**i've**(16) 77:14 79:13 80:13 81:5 81:25 87:12 88:21 101:24 110:7 125:16 144:23 162:20 188:22 206:16 208:14 230:18

**i-a**(1) 198:12
**idea**(3) 108:4 158:17 175:12
**identically**(1) 155:17
**identified**(12) 84:14 86:20 87:9 87:13 134:14 142:7 153:23 157:19 169:15 248:5 248:17 259:11

**identifies**(5) 105:15 122:16 129:7 134:15 179:23

**identify**(12) 80:8 80:10 80:12 81:3 84:10 118:25 128:17 149:10 153:20 166:15 167: 212:9

**identifying**(3) 111:22 123:10 124:3
**ifc**(4) 124:9 212:10 212:10 212:12
**iii(b)**(1) 57:4
**illinois**(1) 4:8
**illogical**(1) 220:13
**illustrate**(1) 146:5
**illustrated**(2) 144:10 168:13
**illustrates**(5) 113:6 113:21 125:20 159:9 163:19

**illustrating**(5) 110:5 110:7 155:10 158:24 168:6

**illustration**(1) 129:16
**illustrative**(1) 125:3
**imagine**(1) 75:22
**immediately**(1) 122:8
**impact**(6) 37:10 57:18 61:1 62:21 85:19 189:6

**impair**(1) 75:9
**implement**(1) 23:9
**implementation**(1) 22:21
**implemented**(1) 77:16
**implementing**(1) 76:20
**implements**(1) 27:13
**implicated**(1) 22:9
**implication**(2) 196:2 203:11
**implications**(1) 202:18
**imply**(1) 220:10
**importance**(1) 237:19
**important**(9) 36:19 47:6 47:6 127:14 139:3 183:17 183:24 186:4 188:25

**importuned**(2) 51:18 51:20
**impossible**(1) 218:12
**impression**(3) 18:18 162:8 182:19
**imputed**(1) 151:3
**imrad**(1) 11:5
**inadvertently**(1) 15:14

**inc**(7) 9:38 9:38 10:13 11:25 39:18 41:11 51:4

**inception**(1) 23:6
**include**(19) 15:7 20:7 28:10 125:6 138:1 150:9 153:2 153:5 171:14 184:21 185:9 218:4 218:7 218:11 218:14 218:20 222:25 223:10 237:4

**included**(10) 131:4 133:13 133:14 135:5 146:21 146:25 147:2 147:6 147:18 147:19 148:19 150:4 150:8 164:9 164:14 184:19 219:14 219:16 237:5

**includes**(4) 74:12 121:21 166:12 166:13
**including**(4) 69:18 85:17 86:17 166:9
**inclusion**(1) 131:6 204:7
**incomplete**(1) 232:15
**incorporated**(1) 75:20
**incorrect**(2) 215:2 230:23
**increase**(1) 151:16
**increased**(1) 151:12
**increases**(1) 151:17
**incur**(3) 133:18 147:15 204:11
**incurred**(3) 123:19 124:12 222:16
**indeed**(1) 76:1
**independent**(14) 23:24 187:14 194:16 204:2 204:23 229:6 229:11 230:4 230:8 230:9 236:5 249:18 249:25 250:2

**independently**(1) 227:9
**index**(1) 259:1
**indicate**(4) 16:13 39:11 179:5 209:21
**indicated**(3) 91:21 145:18 205:14
**indicates**(6) 40:25 67:3 83:2 83:6 83:8 89:14

**indicating**(1) 91:7
**indicia**(1) 257:12
**indirectly**(2) 39:20 40:4
**individual**(5) 23:14 23:15 137:9 215:6
**individually**(1) 40:2
**industries**(1) 108:18
**industry**(3) 20:9 21:6 107:4
**inference**(1) 256:8
**inferences**(1) 256:6
**influence**(9) 33:2 33:25 46:9 47:14 50:19 51:15 52:1 52:7 53:18

**influenced**(1) 126:17
**information**(15) 14:15 14:17 26:23 27:16 42:23 95:17 119:3 140:7 142:10 143:25 211:23 229:2 229:7 251:8 256:16

**informed**(5) 172:11 180:16 182:16 182:18 222:21

**infringement**(1) 107:5
**ingredient**(1) 31:11
**inhibit**(2) 52:3 53:16
**initial**(12) 19:7 32:7 32:10 127:24 141:25 142:20 149:2 150:21 172:9 174:5 234:12 236:19

**initially**(1) 147:1
**innocent**(1) 100:5
**input**(3) 114:15 116:5 151:25
**inputs**(3) 114:7 114:17 116:7
**inquiry**(1) 236:15
**inside**(1) 17:16
**insolvency**(1) 204:7 250:1
**insolvent**(5) 220:25 231:8 231:23 232:8 232:11

**instance**(2) 29:8 210:5
**instances**(1) 156:24
**instead**(6) 136:14 154:4 154:16 247:1 247:6 248:9

**institute**(3) 103:15 104:12 108:11

**instruct**(1) 171:20
**instructed**(1) 172:7
**instructing**(1) 171:22
**instruction**(3) 153:3 172:9 172:11
**instructions**(1) 210:2
**insurance**(1) 49:16
**intend**(2) 91:22 120:7
**intent**(7) 78:15 123:20 124:13 133:18 147:15 203:9 204:11

**intention**(3) 94:13 127:17 244:13
**intentional**(62) 123:6 129:18 129:21 130:1 130:13 130:19 130:23 131:20 131:24 132:2 132:12 132:14 132:15 132:24 133:2 134:23 135:24 137:23 138:6 142:21 143:5 148:17 157:24 185:24 186:18 197:7 197:9 197:12 197:17 197:19 197:25 198:19 198:24 202:7 202:19 203:3 203:5 203:22 204:19 205:14 205:17 205:25 206:5 206:21 207:19 208:12 208:23 209:18 209:23 210:16 210:25 212:12 212:19 214:16 214:25 215:17 216:13 217:1 217:16 235:1 235:18 250:10

**intentionally**(1) 206:14
**interest**(85) 15:9 22:23 23:16 23:18 24:2 29:2 30:16 30:22 31:10 33:5 33:22 33:22 34:5 34:15 34:20 35:3 35:7 35:11 35:16 35:22 36:17 36:17 40:3 40:5 40:6 41:23 42:3 42:7 42:21 42:22 43:5 43:14 44:11 44:25 45:8 45:11 45:17 47:21 47:23 48:19 49:1 49:2 50:6 50:10 50:14 52:12 53:16 53:24 54:17 54:17 54:18 54:22 54:23 54:24 55:1 55:3 55:3 55:6 55:8 55:8 56:1 56:17 57:17 59:3 65:4 65:13 66:23 67:1 67:4 67:5 67:6 67:16 67:22 69:18 70:25 70:25 71:5 73:5 76:19 87:4 237:11 237:18 239:3

**interested**(5) 10:43 21:8 46:17 55:25 55:22
**interests**(94) 26:4 32:14 32:20 36:22 36:24 37:8 37:12 37:25 38:5 38:9 38:10 38:11 39:12 43:16 43:17 43:23 44:9 47:8 47:25 48:15 49:3 51:8 51:8 51:8 52:21 52:22 52:23 52:24 54:1 54:10 55:10 55:14 55:11 55:16 55:17 55:19 56:8 56:10 58:11 59:9 61:10 61:20 63:12 63:18 64:8 64:15 64:23 65:20 65:23 66:18 66:19 68:5 69:2 69:18 70:1 70:24 71:4 71:6 71:9 71:11 71:14 71:19 71:21 71:22 73:6 73:11 73:11 73:13 73:23 74:16 75:8 75:16 76:25 77:14 78:20 79:17 79:18 79:20 79:24 86:21 86:23 86:24 87:14 88:13 88:18 88:22 89:0 90:25 91:4 91:8 92:7 92:13 100:3

**interfere**(1) 53:17
**interlocking**(1) 58:15
**international**(2) 103:14 144:24
**interpose**(1) 139:10
**interpret**(5) 21:12 21:14 43:8 210:3 210:6
**interpretation**(13) 172:7 176:8 176:12 176:17 176:19 182:9 182:15 183:19 194:2 194:21 195:3 221:14 234:25

**interpreted**(1) 156:5
**interpreting**(3) 33:7 33:23 42:13
**interrupt**(1) 244:12
**interrupted**(1) 93:10
**interruption**(1) 15:14
**interweaving**(1) 58:11
**into**(45) 13:17 13:20 14:1 15:21 23:25 24:12 28:25 36:24 37:23 40:24 49:21 50: 53:19 54:2 55:5 64:8 69:10 79:9 90:1 90:10 97:23 98:1 98:6 98:11 114:7 117:16 127:13 130:24 137:4 139:6 139:10 141:5 145:14 151:22 151:25 189:18 198:23 200:23 201:3 201:22 231:24 237:18 239:1 248:8 253:10

**investing**(1) 109:23

**investment**(18) 11:13 11:13 39:19 40:3 49:15 50:23 51:1 51:3 51:5 51:6 51:12 51:16 51:21 51:24 52:4 52:5 52:9 52:10

**investor**(2) 49:11 51:11
**investors**(4) 6:41 49:15 49:22 62:8
**involve**(2) 22:17 214:15
**involved**(15) 20:6 21:6 21:7 21:15 21:17 21:20 22:4 64:6 69:22 96:17 97:2 103:20 105:6 106:11 106:23

**involves**(1) 243:15
**involving**(2) 26:3 51:19
**isn't**(36) 73:25 78:17 86:2 88:7 88:12 171:17 171:19 173:17 173:23 174:3 175:1 176:5 176:11 176:21 177:17 178:16 180:22 184:2 184:21 185:10 186:16 186:23 187:16 188:5 189:7 189:16 189:22 192:11 196:15 201:13 201:16 202:9 212:3 221:14 236:1 238:23

**isn't**(1) 17:14
**issuance**(1) 94:8
**issue**(40) 18:12 33:24 46:19 46:22 47:21 53:13 53:23 73:5 75:5 75:21 77:4 81:18 94:4 97:5 111:9 124:19 131:3 134:23 135:4 135:24 142:1 142:24 142:25 147:9 151:3 159:15 174:6 175:21 175:25 180:22 202:18 202:23 203:4 209:6 209:16 209:16 220:10 251:14 252:6 256:3

**issued**(1) 95:25
**issues**(46) 14:14 33:13 33:14 33:14 54:3 63:10 64:12 64:14 71:24 72:4 76:3 87:10 87:11 87:13 89:20 92:23 95:21 97:17 105:12 109:1 109:2 109:5 116:3 122:5 122:7 127:16 128:5 129:18 130:3 130:24 131:25 133:12 133:19 135:25 142:7 142:8 159:13 159:17 166:19 188:25 197:4 204:5 204:6 220:8 238:6 252:23

**it'd**(1) 78:7
**it's**(93) 73:4 75:15 76:5 85:6 90:7 95:15 96:24 98:17 99:3 103:15 104:20 105:24 106:19 109:2 109:6 109:22 111:7 111:21 111:21 112:20 112:23 112:24 113:9 113:25 115:1 115:3 115:6 115:7 118:7 119:9 126:6 127:9 132:8 133:7 133:17 134:17 135:23 138:13 138:22 139:12 141:2 144:16 144:17 145:9 149:2 149:12 150:21 162:20 163:9 166:9 167:20 169:2 170:1 185:2 186:23 187:21 191:11 191:24 192:17 198:23 199:1 200:1 201:20 201:22 202:11 206:10 207:3 207:12 211:14 211:23 211:25 213:17 214:22 220:16 222:13 225:12 225:13 225:14 226:20 227:12 232:14 233:1 239:3 239:14 241:23 247:5 253:23 254:8 254:23 256:24 257:11

**items**(3) 28:19 190:10 212:2
**its**(29) 22:20 30:3 30:23 31:13 33:11 33:21 42:12 46:6 48:15 48:23 49:1 49:3 50:22 50:23 51:3 52:9 56:2 61:15 62:11 64:11 67:6 67:15 67:15 67:20 84:8 112:22 174:8 253:24 256:4

**itself**(7) 17:11 30:24 31:20 40:16 43:5 61:24 62:13

**it'd**(1) 16:14
**it's**(46) 23:15 27:25 30:8 31:7 33:5 33:6 33:13 33:14 33:14 36:9 38:17 39:6 42:25 44:1 44:1 44:2 44:4 45:3 45:15 45:22 45:23 47:6 47:6 47:23 48:1 51:4 51:5 51:22 53:9 56:6 56:25 57:9 58:12 60:3 60:3 61:17 61:17 61:23 62:15 62:21 64:2 64:3 64:6 64:10 66:2 66:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **i'd**(17) 16:7 24:18 27:5 31:16 31:25 35:4 36:12 37:25 38:12 40:21 43:2 44:8 45:2 47:5 52:19 55:13 64:25 | | **just**(155) 13:9 13:16 13:21 15:6 15:19 16:14 16:18 16:24 17:9 17:16 18:9 22:21 25:12 27:9 27:13 28:15 32:23 38:4 40:11 40:24 45:13 45:16 47:5 50:3 54:2 54:21 56:3 56:4 57:9 58:18 59:6 59:25 60:6 62:17 62:22 64:4 64:19 65:25 66:7 66:17 71:13 74:20 74:21 75:4 76:2 76:11 76:12 77:8 77:19 81:17 82:5 85:4 86:12 89:3 89:4 89:9 89:15 90:1 91:17 94:4 94:7 90:10 100:24 101:14 105:15 107:10 108:2 111:21 112:2 112:6 112:7 112:21 113:9 113:16 118:6 119:14 121:25 122:19 124:9 126:1 126:22 127:12 128:18 128:23 130:1 132:4 133:3 134:22 136:6 136:9 137:11 141:4 141:6 141:7 141:7 141:9 141:20 142:7 142:17 143:6 143:12 144:8 144:25 147:3 147:11 147:22 149:10 153:25 154:18 154:19 162:25 163:16 164:13 165:21 167:13 168:23 170:19 175:24 178:23 181:5 186:1 186:24 188:22 190:6 193:6 195:7 196:9 198:9 201:12 201:12 202:9 211:14 214:7 216:5 218:25 219:3 221:20 223:7 223:20 223:23 233:9 237:8 237:23 244:3 245:25 246:7 249:13 250:6 250:19 252:14 253:5 254:13 254:19 255:6 257:11 | | **korpus**(1) 10:28 **krakauer**(1) 7:15 **kramer**(1) 10:9 **ktla**(1) 69:4 **kyrie's**(1) 24:23 **label**(1) 141:8 **labels**(1) 42:15 **lack**(2) 151:2 151:3 **lacked**(2) 231:9 231:21 **laid**(2) 256:18 256:24 **lance**(1) 8:43 **landis**(3) 3:25 3:26 5:49 **language**(1) 195:3 **large**(6) 20:17 42:17 45:23 48:5 149:17 221:11 **larger**(2) 48:6 128:22 **largest**(1) 52:14 **last**(31) 18:16 19:6 40:19 40:20 40:22 40:23 46:20 67:25 68:2 81:11 85:1 89:9 91:19 104:20 131:3 131:8 131:9 136:8 140:19 142:4 178:8 178:23 181:15 198:12 198:16 200:13 201:1 206:10 217:9 243:7 252:12 **late**(1) 115:17 **later**(2) 68:13 200:21 **latter**(1) 71:9 **laughter**(18) 24:17 24:20 24:25 25:3 25:7 72:11 95:2 106:14 106:18 161:3 169:11 172:24 182:17 220:15 231:3 238:15 250:2 252:16 **lauren**(1) 4:6 **laurie**(1) 4:14 **law**(20) 2:21 10:27 18:5 19:21 19:23 20:22 24:10 58:10 100:3 120:3 120:5 172:1 180:7 183:19 210:13 225:7 229:14 243:4 243:10 243:14 **lawyer**(7) 19:17 120:1 160:9 225:8 243:3 243:8 256:14 **lawyers**(3) 62:14 96:11 118:25 **lay**(4) 109:1 243:14 244:6 255:9 **layton**(2) 2:14 9:8 **lbo**(21) 101:17 115:20 115:21 119:15 120:12 123:3 144:14 147:7 150:3 160:5 166:23 191:17 191:19 193:17 221:24 222:16 233:25 234:18 235:7 243:20 252:5 **lead**(7) 130:15 136:9 150:2 150:6 162:14 187:11 193:18 **leads**(2) 136:2 218:3 **learned**(1) 66:7 **least**(12) 18:15 84:6 94:5 124:1 131:14 132:8 141:3 176:8 183:13 225:5 230:6 236:22 **leave**(1) 164:19 **leaves**(2) 180:7 182:1 **leaving**(1) 249:18 **leboeuf**(2) 5:12 14:13 **lecture**(1) 105:2 **led**(2) 143:18 193:21 **left**(17) 38:7 104:8 113:3 130:22 155:11 164:21 168:18 173:20 175:7 180:9 182:5 187:20 206:25 224:7 249:25 250:1 250:4 **legal**(7) 27:23 33:12 120:7 122:9 176:13 176:14 194:21 **legality**(1) 22:1 **legally**(1) 182:15 **leibentritt**(1) 5:27 **lemay**(1) 3:33 **lender**(8) 28:12 71:1 71:5 76:14 78:20 193:17 221:24 233:25 | | **lenders**(21) 6:10 73:11 73:16 74:2 101:18 115:21 119:16 142:5 147:8 150:3 151:15 160:5 166:24 174:25 175:15 180:10 191:19 222:16 234:18 244:24 252:5 **length**(1) 40:12 **lengthy**(1) 31:22 **leonard**(2) 1:32 19:15 **lerman**(3) 3:12 16:20 64:21 **less**(7) 91:25 113:6 154:12 167:23 233:7 **let**(37) 26:15 27:1 36:1 37:22 43:19 45:13 47:25 48:7 50:1 50:3 54:2 56:23 57:9 59:6 59:25 81:23 139:24 143:2 178:4 181:8 188:16 190:6 193:6 195:12 198:9 209:3 209:3 214:18 218:25 219:6 224:6 230:25 231:16 231:18 231:18 242:21 250:24 **let's**(46) 72:12 74:20 74:22 76:9 80:15 82:1 83:25 83:25 84:1 84:18 86:12 94:20 121:5 129:5 131:11 133:5 142:15 148:6 149:6 150:17 154:14 162:2 163:12 163:21 165:21 167:9 172:14 189:22 198:3 204:25 207:22 210:13 215:9 215:9 215:9 215:16 217:8 222:3 223:7 230:13 230:13 232:5 232:8 233:9 239:22 242:20 **let's**(5) 52:16 56:21 63:7 67:12 67:19 **level**(5) 2:24 73:12 89:4 108:22 234:1 **levels**(1) 222:9 **leveraged**(1) 200:18 **levin**(1) 10:9 **levy**(1) 7:35 **lexi**(1) 7:45 **lexington**(1) 2:10 **liabilities**(2) 243:1 243:16 **liability**(3) 187:25 188:2 188:20 **liang**(1) 8:47 **liberalized**(1) 52:5 **liberally**(1) 255:7 **liberman**(15) 65:8 65:10 66:21 66:23 67:2 67:5 67:5 67:16 67:20 67:22 68:5 68:23 68:24 68:25 69:18 **licensee**(9) 26:18 33:3 33:5 34:3 34:19 46:9 48:21 52:1 76:6 **licenses**(5) 21:19 27:18 29:24 31:12 85:11 **liewant**(1) 10:49 **life's**(21) 24:13 **light**(1) 57:19 **like**(73) 13:17 15:6 15:20 16:7 26:21 31:16 31:25 33:19 34:9 34:12 35:4 37:25 38:12 40:21 41:21 44:8 44:24 45:2 45:3 47:5 47:22 49:22 50:5 50:25 52:19 55:13 57:23 58:12 61:25 65:1 65:1 66:3 66:20 70:23 73:10 81:10 94:1 94:5 97:22 98:6 98:9 98:20 100:22 107:24 113:9 114:2 115:12 120:18 128:2 128:17 131:14 131:23 132:8 133:21 134:22 135:23 136:10 137:15 138:3 144:5 144:19 153:8 156:4 163:25 165:13 173:23 193:4 197:2 199:22 210:16 213:16 242:19 **liked**(1) 24:12 **likelihood**(27) 86:8 112:2 112:5 122:14 123:5 124:19 128:7 131:20 135:10 146:21 146:23 147:10 147:17 148:3 149:2 150:14 151:17 155:25 156:2 166:23 175:14 191:15 195:14 196:4 197:5 221:23 222:18 **likelihoods**(6) 122:13 122:16 154:3 164:4 201:21 221:19 **likely**(30) 43:11 87:12 96:24 122:23 122:23 122:24 124:1 124:11 124:15 125:14 125:17 132:21 151:5 163:2 174:14 174:24 181:18 181:20 183:18 194:8 197:17 197:25 198:18 200:1 201:21 207:12 210:12 221:23 222:13 233:7 |
| **i'll**(7) 16:23 18:9 38:4 40:11 49:8 57:23 66:4 | | | | | | | |
| **i'm**(22) 13:14 15:12 16:18 21:2 30:18 32:3 37:24 38:23 38:25 40:7 41:13 41:15 43:24 44:7 48:12 51:11 51:23 58:16 63:7 65:11 65:11 69:16 | | | | | | | |
| **i've**(5) 19:20 24:13 45:6 48:22 51:10 | | | | | | | |
| **james**(10) 1:23 1:25 1:26 3:47 5:13 5:21 9:29 120:16 139:7 171:9 | | | | | | | |
| **jane**(1) 11:37 | | | | | | | |
| **janet**(1) 7:11 | | | | | | | |
| **japanese**(1) 58:11 | | | | | | | |
| **jarasahw**(1) 3:7 | | | | | | | |
| **jean**(1) 10:24 | | | | | | | |
| **jefferies**(2) 11:49 11:49 | | **justice**(2) 53:21 53:22 | | | | | |
| **jeffrey**(2) 4:43 10:5 | | **justin**(1) 11:50 | | | | | |
| **jennifer**(1) 12:9 | | **kalenchits**(2) 8:39 8:39 | | | | | |
| **jessica**(1) 5:37 | | **kaminetzky**(1) 2:5 | | | | | |
| **jillian**(1) 7:9 | | **kansa**(1) 7:7 | | | | | |
| **jim**(1) 14:12 | | **kaplan**(2) 3:4 13:13 | | | | | |
| **job**(1) 161:6 | | **karsh**(2) 66:25 68:22 | | | | | |
| **joe**(1) 10:49 | | **kasowitz**(2) 2:18 10:27 | | | | | |
| **john**(2) 8:24 11:42 | | **katharine**(1) 4:23 | | | | | |
| **johnston**(7) 5:13 14:10 14:12 14:12 17:5 17:8 17:21 | | **katherine**(1) 6:32 **katten**(2) 10:38 11:41 **kaufman**(1) 9:39 | | | | | |
| **joint**(3) 28:24 94:11 98:24 | | **kaye**(2) 10:11 11:35 | | | | | |
| **joint-operating**(1) 28:24 | | **keep**(5) 58:12 58:14 137:25 216:5 224:12 | | | | | |
| **jonathan**(1) 11:36 | | **keiretsu**(1) 58:12 | | | | | |
| **jones**(5) 4:5 8:11 11:17 11:21 11:21 | | **ken**(1) 7:7 | | | | | |
| **jordan**(1) 10:11 | | **kenneth**(1) 8:47 | | | | | |
| **joshua**(2) 5:15 9:35 | | **kept**(1) 137:12 | | | | | |
| **journal**(5) 54:14 54:22 55:16 56:13 57:18 61:14 61:15 | | **kevin**(1) 1:17 **kim**(1) 9:5 | | | | | |
| **jpmorgan**(66) 14:16 32:6 32:8 32:13 32:19 34:10 35:3 35:6 35:15 35:21 36:18 36:22 36:24 37:8 37:25 38:10 47:7 47:25 48:9 48:13 48:14 48:16 48:18 48:19 48:22 48:25 49:3 49:6 49:8 50:4 50:6 50:14 51:3 51:4 52:9 52:22 52:23 52:24 54:11 54:18 54:23 55:16 56:17 57:17 61:13 61:25 64:25 65:16 69:6 71:17 71:14 71:21 73:6 78:2 79:17 83:2 83:6 86:24 88:12 88:18 88:22 90:25 91:4 91:9 91:25 92:12 | | **kind**(19) 22:22 23:10 56:6 58:15 60:25 96:11 96:22 105:5 107:24 128:1 140:7 153:17 156:14 184:6 188:25 199:24 242:15 255:20 256:15 | | | | | |
| **jpmorgan's**(5) 54:21 55:1 59:9 63:12 64:9 **jpmorgan"**(2) 54:13 60:12 | | **kinds**(19) 19:22 21:6 27:21 28:24 29:2 33:15 49:14 50:21 61:20 | | | | | |
| **judge**(4) 1:17 1:18 66:1 203:5 | | **king**(3) 2:17 2:23 4:25 | | | | | |
| **judges**(1) 220:14 | | **kira**(1) 7:31 | | | | | |
| **judgment**(12) 33:10 33:11 33:12 33:16 53:19 78:23 79:8 109:4 155:25 176:11 176:12 195:16 | | **kizzy**(1) 3:7 **knew**(4) 25:5 176:23 176:24 209:15 | | | | | |
| **judgments**(3) 160:6 161:6 230:12 | | **know**(84) 21:10 22:10 22:10 36:9 38:16 39:3 39:14 42:24 43:2 46:18 46:20 57:9 58:17 58:24 62:7 62:20 64:6 75:18 78:25 79:13 85:10 87:19 88:16 89:18 91:12 96:11 96:15 96:20 96:22 96:24 98:3 99:5 128:15 129:6 155:1 160:20 178:4 181:8 182:21 183:24 184:2 184:3 184:5 184:17 185:19 185:22 186:16 186:20 189:11 189:20 190:6 192:13 192:19 192:23 193:6 196:25 198:9 202:6 202:9 202:14 203:13 210:23 215:18 217:22 218:25 225:13 226:12 226:20 226:22 227:14 228:15 228:17 229:9 229:20 229:23 232:1 232:2 242:14 244:1 250:18 254:3 254:5 254:17 256:20 | | | | | |
| **juggle**(1) 115:4 | | | | | | | |
| **june**(2) 90:10 90:14 | | | | | | | |
| **jury**(1) 203:5 | | **knowing**(1) 164:20 **knowledge**(7) 65:19 226:20 228:24 238:21 251:12 251:15 255:8 | | | | | |
| | | **known**(3) 87:14 87:14 103:15 **knows**(1) 95:16 | | | | | |

| Word | Page:Line |
|---|---|

**likely**"(1) 178:11
**likewise**(1) 76:9
**limit**(1) 91:24
**limitation**(3) 17:19 137:21 138:5
**limitations**(2) 127:23 128:4
**limits**(1) 23:7
**line**(19) 58:13 89:9 91:19 92:15 92:20 121:20 122:4 122:11 132:1 162:4 186:14 187:19 188:13 207:25 236:15 239:10 239:15 239:22 244:3

**line/black-letter**(1) 30:18
**lineal**(1) 204:9
**lines**(3) 60:13 160:20 160:22
**list**(2) 99:2 163:13
**listed**(5) 38:6 105:21 106:1 128:11 162:3
**listing**(2) 54:13 127:4
**lists**(2) 54:10 153:22
**literature**(1) 118:21
**litigants**(4) 114:23 114:24 118:24 118:24
**litigate**(1) 21:23
**litigation**(66) 84:20 84:23 85:9 90:6 103:24 104:2 104:10 104:11 104:15 104:1 104:21 105:7 105:9 105:12 105:22 106:23 107:2 107:9 108:20 109:2 109:15 109:23 110:8 111:21 111:24 112:14 113:5 114:16 114:25 117:9 117:11 117:12 117:13 118:11 134:5 135:2 137:16 141:17 143:17 144:6 144:11 154:13 162:14 163:14 164:3 164:1 164:17 166:12 183:18 210:15 213:6 213:7 213:10 213:21 224:19 225:4 225:18 238:7 238:16 238:25 241:22 242:7 245:16 253:2 255:18 257:9

**litigations**(3) 106:5 113:7 202:23
**little**(16) 53:22 58:12 104:23 113:24 115:3 118:2 126:1 129:11 132:6 136:23 142:16 214:8 230:25 231:14 231:19

**litvack**(1) 8:30
**llc**(2) 4:36 6:37
**llp**(20) 1:22 2:29 3:5 3:32 4:13 5:20 5:34 5:44 5:49 6:31 8:27 8:42 9:4 10:4 10:10 10:19 10:38 11:35 11:41 12:16

**lmas**(1) 28:23
**loaded**(1) 74:16
**lobby**(2) 21:9 62:6
**lobbying**(1) 62:12
**local**(8) 23:8 28:21 28:22 28:23 29:6 29:7 29:9 54:1

**local-television-ownership**(2) 23:19 23:21
**localized**(1) 23:5
**logic**(2) 126:9 183:19
**logical**(3) 115:8 194:20 219:23
**logically**(5) 218:13 218:15 218:19 218:20 220:9

**logistical**(1) 62:17
**long**(3) 81:2 152:15 238:10
**longer**(3) 135:6 238:2 238:13
**look**(68) 27:1 27:19 28:7 29:12 32:4 33:17 41:17 42:14 43:8 43:21 44:6 44:12 44:18 48:2 48:7 48:13 51:1 52:2 52:19 53:12 53:21 54:4 56:1 56:24 57:12 58:18 58:20 59:7 59:23 60:9 63:8 69:1 72:7 74:22 74:23 76:9 80:15 80:24 82:1 82:3 82:23 83:5 84:1 89:10 89:25 96:22 98:7 98:9 114:1 133:5 133:15 133:19 144:18 173:3 173:23 177:9 187:3 189:22 191:11 211:22 212:6 212:23 214:5 214:18 221:13 235:5 251:23 257:4

**looked**(18) 46:3 50:18 52:8 76:2 76:11 77:8 80:13 125:11 136:7 144:18 149:17 173:25 182:24 208:4 208:8 216:9 221:12 251:20

**looking**(10) 30:22 32:25 58:23 115:8 128:18 137:1 141:4 141:6 202:22 242:23

**looks**(5) 43:13 113:9 131:13 132:8 134:20 144:18 163:25 213:16 242:25

**los**(8) 5:18 67:2 67:11 67:24 69:1 69:12 69:13 87:17

**lose**(1) 107:14 109:20 112:10 187:20
**losing**(3) 107:16 197:23 233:6
**losquadro**(1) 9:18
**lost**(3) 47:9 47:10 184:1
**lot**(8) 20:8 30:24 90:25 96:4 96:6 242:3 255:23 256:14

**lots**(3) 47:9 202:22 202:22
**low**(5) 45:1 168:23 169:2 169:5 169:20
**lower**(5) 36:13 38:7 169:3 169:19 175:10
**lowered**(1) 248:12
**lowering**(1) 149:3
**lowers**(4) 148:3 148:4 149:2 150:16
**lowest**(1) 123:25
**lrmi**(3) 104:12 104:18 107:3
**ludwig**(1) 7:9
**lugano**(1) 1:38
**lunch**(1) 18:11
**lynch**(2) 4:13 11:35
**lynn**(2) 2:8 8:12
**mace**(1) 73:2
**macquarie**(2) 9:42 9:42
**made**(37) 14:2 27:22 39:25 64:2 77:22 87:6 123:19 124:12 129:20 131:19 139:21 146:6 146:16 147:10 147:12 148:1 148:11 149:23 150:11 150:25 162:8 168:7 174:21 178:15 179:2 186:3 208:9 222:24 233:6 224:9 244:4 244:7 247:10 247:21 249:16 250:5 254:13

**madlyn**(1) 11:38
**magazines**(1) 20:4
**magnitude**(1) 85:15
**majority**(3) 42:10 237:9 239:2
**make**(41) 21:3 22:14 30:24 31:9 33:9 42:13 42:23 47:12 49:20 56:10 72:12 76:12 89:5 89:6 92:19 126:23 131:12 139:15 146:1 147:9 154:19 161:5 162:24 162:25 163:2 164:18 173:7 182:22 196:25 202:17 206:18 237:9 241:12 242:13 243:3 243:10 246:3 248:4 250:19 251:3 254:19

**makes**(6) 48:14 48:23 59:19 129:11 169:10 256:13

**making**(8) 55:25 109:7 109:22 109:25 131:12 145:4 166:16 182:21

**management**(21) 6:5 8:15 8:15 8:35 8:35 8:42 8:46 8:46 9:17 9:17 9:34 9:34 10:33 10:33 12:4 12:8 12:8 51:4 104:11 171:13 171:20

**managing**(1) 44:5
**manges**(1) 8:27
**many**(14) 14:4 21:7 23:7 23:8 25:12 31:2 51:6 51:25 106:2 106:3 129:25 152:7 162:25 252:8

**marc**(3) 3:38 5:35 5:39
**march**(4) 1:12 13:1 89:15 258:10
**marie**(1) 10:24
**marino**(1) 3:20
**mark**(9) 9:9 11:9 13:15 18:24 19:3 19:7 80:17 152:25 259:3

**marked**(9) 14:4 14:18 17:14 116:18 116:22 145:10 165:1 211:5 211:13

**market**(29) 1:9 3:28 4:17 4:45 23:12 23:14 23:23 28:21 28:22 28:23 29:7 29:8 29:9 38:22 54:1 56:12 56:14 56:18 56:23 57:1 57:5 57:8 57:10 59:1 61:13 61:19 67:10 69:13 69:21

**markets**(9) 23:8 29:21 35:11 38:6 38:12 52:15 53:19 73:7 87:19

**marrero**(1) 5:37
**marsal**(3) 9:38 9:38 11:25
**martha**(1) 83:8
**marvin**(1) 8:12
**mas**(1) 46:24
**mass**(1) 23:2
**master**(1) 102:22
**mater**(1) 24:11
**material**(7) 17:10 121:25 122:19 123:16 124:9 126:25 221:7 238:17 256:5

**materially**(2) 157:9 157:11
**materials**(5) 253:9 253:11 255:14 256:12 256:13

**math**(6) 81:1 214:7 214:9 214:24 215:4 257:11

**mathematically**(1) 192:12
**mathematician**(1) 108:3
**mathematics**(1) 102:25
**matrix**(1) 103:1
**matt**(2) 152:11 152:12
**matter**(24) 20:15 25:23 26:11 43:15 46:19 59:1 62:18 88:4 88:21 93:12 96:17 101:15 102:11 172:15 173:8 184:10 187:22 189:2 226:19 229:9 229:14 235:15 258:10

**matters**(16) 13:8 13:17 15:22 21:7 21:8 22:5 62:21 63:24 93:17 93:18 94:18 100:5 102:13 161:19 176:13 190:1

**matters**"(1) 29:12
**matthew**(5) 2:30 5:50 8:16 11:25 11:26
**may**(48) 13:12 18:3 26:7 36:5 46:4 48:16 65:11 70:15 70:17 74:2 75:17 78:1 78:3 78:23 79:14 79:14 95:20 96:6 97:20 99:23 100:9 100:25 118:3 120:25 140:15 177:19 179:10 183:11 184:18 184:19 185:4 189:15 189:20 189:20 193:4 194:18 196:1 211:8 211:9 230:11 236:10 236:11 236:12 238:10 250:16 251:15 253:4 253:22

**maybe**(1) 58:15
**mayer**(2) 4:23 10:19
**mccarter**(1) 4:22
**mccolm**(1) 7:39
**mccormack**(1) 3:34
**mccormick**(2) 10:37 11:40
**mccutchen**(1) 10:4
**mcdaniel**(1) 2:22
**mcguire**(1) 5:50
**mclendon**(1) 19:15
**mcneill**(1) 4:15
**meagher**(1) 8:6
**mean**(34) 15:16 61:6 61:17 61:19 62:13 66:25 76:5 78:7 78:25 78:25 80:21 83:22 85:11 85:13 86:23 86:23 87:22 88:8 88:10 95:21 96:10 96:16 96:21 99:18 138:21 144:22 157:21 162:20 163:15 164:10 164:12 212:6 220:4 242:1

**meaning**(1) 247:11
**meaningful**(1) 245:6
**meaningless**(1) 215:8
**means**(8) 22:22 96:2 100:2 144:13 197:18 198:3 203:4 220:22

**meant**(6) 27:9 29:16 125:14 125:15 161:2 210:4

**measure**(2) 215:7 221:11
**media**(30) 20:3 22:5 23:2 35:7 35:11 35:16 35:22 36:24 37:5 37:8 37:24 48:9 52:23 53:1 54:1 54:10 63:12 63:18 64:25 65:20 65:22 66:18 67:12 67:14 68:5 71:6 71:22 75:8 78:20 79:18

**media-ownership**(4) 36:25 37:9 55:19
**meet**(1) 251:6
**meeting**(2) 63:2 152:16
**meetings**(1) 82:20
**meisel**(1) 1:31
**melamed**(1) 10:16
**member**(6) 32:7 33:4 41:1 41:4 43:4 65:9
**members**(4) 46:19 76:15 92:5
**mention**(5) 15:20 18:9 19:22 31:20 172:6
**mentioned**(23) 45:1 56:23 67:1 104:22 105:4 108:22 109:11 116:16 117:12 118:13 121:5 135:14 136:7 139:3 141:23 143:14 143:24 160:9 160:16 165:24 168:5 168:13 169:13

**mentioning**(1) 55:24
**mentions**(1) 44:20
**mere**(2) 53:10 64:15
**meredith**(3) 3:13 16:20 64:21
**merely**(1) 64:7
**merger**(2) 23:25 53:14
**mergers**(1) 21:17
**merits**(1) 252:21
**merrill**(2) 4:13 11:35
**mester**(1) 5:15
**met**(2) 251:16 256:2
**metaphorical**(1) 161:25
**methodology**(3) 108:8 108:17 202:20
**methods**(3) 241:8 255:16 255:24
**michael**(3) 2:6 7:27 10:20
**michelle**(2) 3:20 6:12
**michigan**(1) 5:28
**microphone**(1) 19:5
**mid**(2) 104:3 108:7
**mid-range**(1) 159:14
**middle**(5) 19:7 38:14 60:3 126:6 168:16
**midpoint**(9) 155:16 156:18 157:3 157:15 159:11 159:13 159:22 159:23 159:25

**might**(8) 24:24 126:17 187:1 195:8 210:3 238:11 242:10 251:25

**mike**(1) 9:26
**million**(8) 109:19 166:10 183:1 183:7 196:22 214:8 215:1 215:22

**millions**(2) 144:25 144:25
**mina**(2) 6:41 6:42
**mind**(6) 179:19 196:13 201:11 230:12 232:9 233:9

**minds**(1) 187:1
**mine**(1) 75:2
**minkove**(1) 9:13
**minor**(1) 62:20
**minute**(2) 13:7 171:3
**minutes**(8) 13:9 16:23 16:24 76:11 89:18 224:11 246:8 246:10

**misapplication**(1) 215:4
**miscellaneous**(1) 44:1
**misinterpreted**(2) 172:12 175:21
**misleading**(1) 239:15
**misleadingly**(1) 172:21
**misread**(2) 172:8 179:10
**misspoke**(1) 83:5
**mistake**(1) 163:2
**mistakenly**(1) 222:21
**mistakes**(1) 162:25
**mitch**(3) 100:20 246:17 254:12

| Word | Page:Line |
|---|---|
| **mitchell**(1) 2:37 | |
| **mix**(2) 64:8 69:11 | |
| **model**(41) 116:11 116:13 116:24 117:2 119:2 139:9 139:12 139:15 140:2 143:22 151:22 152:18 160:22 161:4 163:13 165:1 165:16 169:9 172:10 173:10 176:18 176:20 188:8 188:11 196:16 221:3 225:23 226:1 226:2 226:4 226:11 226:13 227:1 227:16 253:15 254:20 256:19 256:21 256:25 257:2 257:11 | |
| **modeled**(7) 160:23 180:22 191:24 204:22 236:8 243:9 257:9 | |
| **modeling**(6) 154:12 205:9 210:14 220:8 237:5 238:5 | |
| **models**(2) 130:18 226:22 | |
| **modification**(1) 74:13 | |
| **modified**(1) 74:2 | |
| **moment**(7) 18:13 66:4 100:24 114:6 181:6 219:3 236:11 | |
| **moments**(1) 148:8 | |
| **money**(11) 24:24 47:9 47:11 47:12 117:7 234:21 235:9 237:1 237:20 238:19 241:1 | |
| **money.**(1) 240:4 | |
| **montenegro**(1) 2:31 | |
| **month**(4) 21:2 80:19 85:1 238:13 | |
| **months**(13) 80:11 80:22 80:23 80:8 81:8 82:12 83:23 84:5 84:6 84:7 84:8 86:13 95:6 | |
| **more**(48) 20:6 20:6 23:24 34:11 34:14 34:18 42:20 46:1 47:8 49:20 48:24 51:17 56:18 59:4 59:6 64:4 65:17 75:7 104:23 106:2 113:11 115:3 118:1 126:1 128:15 129:25 132:7 133:5 136:23 138:13 142:16 149:5 163:7 166:25 167:11 167:22 170:5 176:20 176:24 207:12 215:22 224:11 238:18 242:21 251:23 255:23 256:2 256:2 | |
| **moreover**(2) 191:12 191:15 | |
| **morgan**(5) 2:4 5:20 8:27 9:4 9:12 | |
| **morning**(16) 13:3 13:4 13:15 15:4 17:14 18:17 19:12 31:25 70:21 70:22 71:8 72:24 74:23 86:22 89:19 99:3 | |
| **moskowitz**(1) 2:7 | |
| **moss**(1) 12:17 | |
| **most**(9) 27:25 29:4 29:18 47:7 51:18 108:20 127:14 144:19 194:8 | |
| **motion**(8) 89:12 93:20 94:17 244:13 251:2 252:9 254:18 257:16 | |
| **move**(16) 13:17 59:6 77:20 93:23 97:22 97:25 98:20 130:23 134:13 148:6 149:6 150:17 151:19 216:16 250:18 251:4 | |
| **moved**(1) 98:11 | |
| **moving**(3) 15:9 100:5 140:18 | |
| **much**(19) 50:25 62:23 83:15 83:19 87:7 96:15 103:20 104:18 114:2 118:1 133:8 135:3 162:22 164:20 175:12 182:21 210:2 224:7 257:25 | |
| **muchin**(2) 10:38 11:41 | |
| **mulhern**(1) 8:43 | |
| **multiple**(19) 22:15 26:3 28:13 28:15 29:14 77:21 80:5 80:9 80:19 80:21 85:2 85:15 85:16 87:5 97:1 144:23 144:24 148:15 255:20 | |
| **multiple-ownership**(14) 22:11 22:20 24:4 27:20 28:1 28:18 29:21 33:13 35:13 45:22 46:22 50:23 51:19 53:11 | |
| **multiply**(4) 112:21 144:8 213:25 214:6 | |
| **multiplying**(1) 206:23 | |
| **murphy**(1) 11:30 | |
| **must**(11) 28:12 29:15 90:7 109:3 140:3 140:3 183:20 220:22 246:2 253:11 254:9 | |
| **mutual**(6) 51:7 51:10 51:11 51:13 51:25 52:9 | |
| **mutual-fund**(1) 51:7 | |
| **myers**(1) 6:21 | |
| **myrick**(1) 7:13 | |
| **nail**(1) 107:11 | |
| **name**(6) 19:5 19:6 19:7 80:18 80:24 81:4 | |
| **named**(3) 41:11 83:8 118:13 | |
| **nancy**(1) 2:40 | |
| **national**(2) 20:10 28:19 | |
| **nationally**(1) 23:7 | |
| **nationwide**(1) 28:19 | |
| **natural**(5) 137:14 148:23 166:4 166:9 | |
| **nature**(4) 19:19 21:3 55:6 61:3 | |
| **nbc**(2) 46:6 46:8 | |
| **nearly**(1) 164:16 | |
| **necessarily**(11) 30:7 58:17 194:23 195:15 196:5 219:14 219:19 219:22 220:4 220:9 220:22 | |
| **necessary**(14) 28:2 46:6 59:12 60:21 77:17 89:7 90:9 90:13 114:20 158:5 223:10 248:18 248:22 248:24 | |
| **need**(21) 18:6 26:20 30:1 43:14 47:23 62:25 62:25 68:12 70:5 79:12 79:14 79:21 90:2 113:18 131:25 141:10 175:18 177:22 233:11 255:9 256:7 | |
| **needs**(4) 33:19 33:19 33:20 43:15 | |
| **neftalis**(1) 10:9 | |
| **negative**(4) 22:13 56:15 56:19 59:2 | |
| **negotiate**(1) 107:19 | |
| **negotiations**(2) 105:14 107:8 | |
| **neil**(1) 9:18 | |
| **neither**(3) 81:18 237:6 238:20 | |
| **network**(2) 20:11 20:12 | |
| **neumann**(1) 8:18 | |
| **neutral**(1) 162:1 | |
| **new**(17) 2:11 2:33 2:43 3:9 3:22 3:41 30:1 30:10 41:1 56:13 56:14 57:14 57:16 58:8 59:1 87:11 91:24 | |
| **news**(1) 11:21 | |
| **newspaper**(9) 22:24 26:4 28:20 29:5 58:8 69:9 69:22 84:21 85:17 | |
| **newspaper-broadcast-cros**(1 67:8 | |
| **newspapers**(5) 20:4 20:19 28:10 35:8 38:8 | |
| **next**(37) 13:5 18:24 31:17 38:7 91:19 103:13 109:6 110:24 111:9 111:10 112:15 122:18 123:13 124:6 125:23 127:7 127:9 131:2 131:7 133:8 134:13 135:25 141:22 142:1 142:3 148:6 149:6 150:17 157:19 162:4 163:21 174:12 206:10 212:23 213:8 216:16 217:8 | |
| **next-to-the-last**(2) 48:1 66:8 | |
| **nextmedia**(25) 38:16 38:19 39:4 39:7 39:12 39:17 39:18 39:22 39:23 40:2 40:11 41:5 41:11 41:23 41:24 41:25 42:3 42:7 42:9 43:17 45:20 45:24 54:17 55:8 55:14 | |
| **nice**(2) 115:7 161:24 | |
| **nicholas**(1) 8:36 | |
| **nick**(1) 8:8 | |
| **nobody**(1) 91:13 | |
| **node**(5) 111:4 132:5 133:24 216:16 217:8 | |
| **nodes**(4) 131:17 135:24 135:25 147:11 | |
| **nominally**(3) 43:7 45:22 47:4 | |
| **nominate**(1) 47:19 | |
| **nomination**(2) 41:25 43:7 | |
| **non**(6) 47:20 67:21 89:6 182:10 191:16 235:6 | |
| **non-attributabl**(8) 39:21 40:1 42:11 45:22 45:25 50:24 51:8 75:13 | |
| **non-bankruptcy**(2) 174:19 181:25 | |
| **non-expert**(1) 182:8 | |
| **non-lbo**(7) 147:8 150:14 160:3 166:5 167:10 225:3 234:13 | |
| **non-party**(1) 10:48 | |
| **non-voting**(7) 39:21 41:22 42:10 42:22 45:3 47:4 61:8 | |
| **none**(6) 39:25 86:20 138:9 148:22 169:6 250:9 | |
| **nor**(2) 237:6 238:21 | |
| **normal**(2) 119:9 228:9 | |
| **normally**(1) 161:20 | |
| **norman**(1) 1:33 | |
| **north**(7) 2:17 2:23 4:17 4:45 5:28 9:16 20:12 | |
| **not**(301) 14:2 15:11 16:18 17:18 18:16 19:12 20:11 24:2 29:22 30:10 31:23 33:6 33:17 35:16 35:21 37:10 37:20 41:15 42:14 43:15 43:24 44:3 44:7 45:23 46:4 46:12 46:17 46:21 49:1 51:9 53:20 54:22 55:2 55:5 55:14 55:17 55:21 56:15 58:16 58:16 60:17 61:17 61:18 61:21 64:9 65:1 68:6 70:3 71:23 72:2 72:5 72:8 72:13 72:15 72:18 72:21 72:23 74:8 75:18 77:15 77:23 77:23 78:3 78:12 78:18 78:23 79:21 80:10 81:4 83:18 85:4 85:6 87:7 87:12 87:17 88:11 90:8 91:9 91:22 92:12 92:23 93:15 93:18 94:18 95:16 96:19 98:8 105:12 105:25 106:8 106:10 114:22 117:17 117:21 118:9 120:2 120:8 120:20 124:2 124:21 125:6 125:8 126:25 131:3 131:6 132:22 133:12 134:24 135:5 138:19 139:2 139:8 139:11 139:13 139:14 139:22 139:23 140:11 141:2 142:14 142:25 143:4 144:2 144:22 145:2 146:2 147:2 147:2 147:6 150:9 150:15 152:2 152:24 153:1 153:4 153:7 154:10 154:12 154:19 155:22 156:9 156:12 157:9 157:10 160:9 160:11 160:14 161:5 161:11 161:6 162:4 162:7 162:10 162:13 164:9 164:14 164:18 164:20 166:15 166:19 170:6 170:10 170:12 170:16 170:21 171:1 171:13 172:1 172:11 172:22 173:12 174:15 177:23 179:11 179:12 180:1 180:11 181:21 182:14 183:8 183:25 184:14 184:19 185:22 186:2 186:5 186:16 186:19 187:15 189:17 189:20 192:13 192:4 192:23 194:2 194:16 194:21 194:2 195:5 195:6 195:14 196:5 197:1 198:19 199:6 199:8 200:22 201:2 201:4 201:25 202:4 202:16 203:13 204:11 204:12 204:18 209:25 210:2 210:2 210:3 210:16 211:2 213:13 213:18 215:20 216:18 217:10 217:24 218:4 218:11 218:14 218:20 219:1 219:16 219:23 220:2 220:4 220:9 221:6 222:19 222:20 222:22 222:24 223:5 223:23 223:21 223:25 224:23 225:8 225:11 225:13 225:21 226:1 226:12 226:13 226:16 226:22 226:24 227:10 227:14 227:22 228:8 228:10 228:15 228:17 253:24 254:9 254:6 254:9 257:5 | |
| **notation**(1) 39:25 | |
| **note**(12) 15:6 15:19 16:7 38:4 40:11 49:11 49:13 112:19 129:22 130:21 217:25 237:8 | |
| **notebook**(1) 102:15 | |
| **noted**(1) 125:16 | |
| **noteholder**(43) 13:18 13:22 15:1 15:23 15:25 16:8 16:11 18:23 26:13 26:15 27:3 38:24 40:8 48:8 72:2 72:7 88:15 89:20 91:12 91:15 91:20 91:22 91:23 92:3 92:4 92:13 92:19 92:24 93:14 94:5 94:7 94:8 94:10 97:21 97:22 98:20 120:10 138:25 145:14 146:2 158:21 165:8 259:12 | |
| **noteholders**(19) 71:25 72:5 72:13 72:16 72:18 72:19 72:20 75:19 75:20 78:5 79:12 86:2 86:4 86:18 89:12 92:10 94:13 139:23 252:19 | |
| **notes**(3) 129:25 169:1 213:24 | |
| **nothing**(4) 199:7 220:6 244:9 251:23 | |
| **notice**(5) 21:15 31:18 84:5 113:15 148:13 | |
| **notice-and-commen**(1) 52:3 | |
| **notices**(1) 82:19 | |
| **notion**(1) 23:1 | |
| **november**(2) 115:17 152:4 | |
| **now**(114) 22:14 23:21 24:22 25:14 25:25 26:18 28:6 30:10 35:2 35:14 37:1 37:22 37:22 38:23 40:7 41:8 41:21 44:24 45:16 45:17 48:7 48:12 50:5 51:7 52:16 54:2 54:21 55:12 58:3 58:6 58:16 58:22 65:1 66:12 68:12 69:13 69:16 69:21 69:23 70:23 72:6 73:10 74:16 77:20 79:9 84:2 84:6 86:12 87:9 88:8 91:11 93:16 95:9 100:11 101:13 102:16 104:22 105:19 108:11 111:16 117:1 117:15 117:22 121:4 123:22 126:21 127:1 128:15 129:15 129:25 130:17 131:11 133:10 134:20 135:18 138:9 139:13 140:22 141:9 141:20 145:24 151:24 153:8 153:16 156:6 156:13 158:17 159:19 160:9 160:15 161:12 162:2 163:3 164:10 168:1 169:22 170:5 174:23 175:23 180:1 186:23 187:24 193:4 194:9 201:20 204:14 223:24 241:24 248:2 248:14 249:22 253:1 254:24 255:2 | |
| **npp**(6) 94:7 116:19 145:10 165:1 257:16 257:18 | |
| **npp0031**(1) 116:22 | |
| **number**(40) 14:8 14:10 14:11 15:8 20:18 27:21 36:12 36:19 36:20 37:24 43:19 48:1 49:12 52:19 52:21 54:4 59:8 60:2 63:8 63:9 66:1 79:23 85:15 95:19 111:22 128:22 144:7 144:16 156:1 156:24 157:17 169:19 174:8 183:6 189:10 206:19 206:20 215:8 240:3 249:5 | |
| **numbered**(1) 65:25 | |
| **numbers**(31) 36:13 112:12 114:21 117:16 118:8 126:18 133:24 133:25 143:15 169:17 169:19 177:1 212:25 213:1 213:10 215:12 215:15 215:15 226:1 226:25 227:17 227:21 228:8 228:10 228:15 228:17 253:24 254:6 254:9 257:5 | |
| **numerical**(5) 125:3 125:6 125:21 154:20 158:3 | |
| **numerous**(1) 51:13 | |
| **oaktree**(27) 5:4 8:45 8:46 14:13 65:2 65:3 65:7 65:12 65:16 65:19 66:15 66:17 66:23 67:14 67:19 68:21 68:25 69:18 71:17 71:21 73:6 73:22 79:17 88:12 88:18 88:23 91:25 | |
| **oaktree's**(5) 67:1 67:4 67:12 67:21 68:5 | |
| **oath**(1) 186:11 | |
| **object**(2) 92:14 92:17 | |
| **objected**(2) 87:3 92:17 | |
| **objecting**(1) 87:5 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **objection**(45) 14:24 17:2 26:5 26:6 94:21 94:24 94:25 98:4 98:13 99:20 117:19 120:15 120:23 139:10 140:13 145:16 145:17 145:20 165:10 165:11 179:8 179:11 180:23 184:24 192:25 194:17 195:24 203:16 210:8 215:23 221:2 224:1 225:7 225:14 227:22 228:18 229:13 229:24 231:2 232:14 234:23 240:20 241:3 243:2 250:24 | | **okay**(301) 13:12 14:20 17:3 17:4 17:8 17:24 18:2 18:20 18:23 25:14 27:5 32:3 32:22 34:6 35:2 36:1 37:15 37:22 38:19 38:23 38:25 39:3 40:10 41:4 41:21 43:19 45:13 45:16 47:25 48:7 49:24 50:17 52:1 54:2 54:7 59:22 60:7 65:19 66:5 66:7 66:17 68:15 70:10 72:21 73:12 80:15 82:11 84:5 84:10 84:16 84:19 86:7 87:1 89:1 89:9 91:11 93:11 94:22 98:18 99:4 100:11 100:25 101:13 102:3 102:15 102:1 103:7 105:18 105:21 106:3 106:7 106:15 107:1 107:24 110:9 111:1 113:9 113:23 114:15 114:19 114:23 115:16 115:18 116:9 116:13 116:15 117:1 117:5 117:12 117:15 118:4 118:10 118:17 118:23 119:1 119:13 119:22 120:7 121:9 121:14 121:24 122:18 123:8 123:13 123:16 124:3 124:8 124:24 125:23 126:1 126:13 127:1 127:7 127:12 128:14 128:20 129:2 129:2 129:5 129:5 129:10 129:14 129:15 129:25 130:7 130:17 131:17 133:10 134:4 134:17 135:8 135:14 135:21 136:19 136:25 137:3 138:2 138:12 138:14 138:24 139:3 140:18 140:22 141:1 141:12 141:20 142:7 142:15 142:20 143:6 143:8 143:14 143:21 144:3 144:13 144:18 144:22 145:6 145:13 146:5 146:8 146:12 146:15 147:14 148:6 149:5 149:22 150:17 152:3 152:10 152:15 152:22 153:2 153:8 153:13 153:19 153:22 153:25 154:6 154:24 155:4 155:7 155:9 155:18 156:10 157:6 157:14 157:19 158:8 158:17 158:24 159:4 159:8 159:19 160:4 160:15 160:19 160:25 161:12 161:17 163:21 163:24 164:5 164:15 165:4 165:7 166:11 166:15 166:22 167:3 167:6 167:13 167:14 167:16 168:1 168:5 168:9 168:12 169:9 169:13 169:22 170:5 170:13 172:14 173:9 173:17 173:25 174:5 174:11 177:9 177:15 178:13 178:19 181:10 183:16 183:24 184:8 184:15 187:18 187:24 188:4 189:22 190:1 191:5 191:10 191:10 193:7 193:21 196:15 197:2 198:6 198:10 199:7 199:20 200:17 202:5 203:8 204:22 204:25 205:9 205:13 207:3 207:6 207:15 208:1 209:15 210:5 210:23 211:3 211:19 212:19 212:23 214:5 214:14 215:11 215:16 216:5 216:8 216:21 216:25 217:15 217:22 219:2 222:12 223:3 223:7 223:8 225:2 228:9 230:8 232:5 232:21 234:11 239:25 240:17 242:13 245:20 246:3 | | **one**(192) 1:27 2:16 2:42 12:12 12:12 13:7 13:17 13:21 15:14 15:19 15:21 18:4 18:5 24:21 29:8 31:11 32:7 32:25 38:9 42:19 46:18 48:6 51:3 52:13 53:12 55:24 58:9 58:19 59:17 60:13 61:12 61:13 61:23 65: 69:20 69:21 69:22 70:25 78:13 84:20 85: 86:6 86:7 86:17 86:17 89:9 93:3 95:23 96:20 98:7 99:10 100:24 107:4 109:6 113:1 121:19 123:5 123:22 124:15 126:4 127:9 127:15 128:4 131:15 132:4 132:4 132:8 134:7 136:2 136:9 138:23 141:1 141:23 142:1 142:4 143:2 149:6 149:18 150:21 151:13 151:13 153:9 154:1 154:7 154:9 154:14 154:15 156:20 156:23 161:21 168:16 169:7 169:14 172:6 173:4 173:19 177:12 178:10 180:5 181:6 181:11 181:18 187:10 187:14 188:5 189:2 189:5 190:1 191:6 191:22 192:10 194:5 194:22 195:2 198:18 198:25 199:14 199:23 199:23 200: 200:15 200:16 200:18 200:23 201:1 201: 201:19 202:8 202:19 203:4 203:6 204:8 205:5 205:11 206:13 206:21 207:9 207:13 210:18 211:1 212:9 212:15 212:15 214:16 214:25 215:6 215:18 216:12 216:14 217:1 217:9 217:13 217:17 217:18 218:18 219:1 219:16 220:4 220:8 222:11 226:20 229:1 230:4 232:2 233:2 233:6 233:8 235:6 235:13 235:14 235:20 236:15 236:22 236:25 238:10 240:2 240:6 240:17 243:21 244:3 249:15 249:15 249:23 249:24 251:1 253:24 | |
| **objections**(4) 86:9 86:20 91:21 97:25 | | | | **one-hundred**(2) 220:10 254:24 | | **opportunity**(8) 50:19 50:25 53:18 73:1 95:14 165:13 248:3 250:17 | |
| **objective**(2) 122:6 204:12 | | | | **one-third**(1) 170:19 | | | |
| **obligations**(5) 123:19 124:12 206:13 207:10 222:16 | | | | **one-year**(1) 103:11 | | **opposed**(1) 174:3 | |
| | | | | **ones**(6) 48:6 52:10 127:15 150:21 163:9 204:14 | | **opposite**(2) 125:18 192:5 | |
| | | | | | | **opposition**(1) 90:4 | |
| **observer**(6) 44:21 45:5 46:24 47:3 47:19 162:1 | | | | **"one"**(1) 36:17 | | **oral**(1) 84:25 | |
| | | | | | | **orange**(1) 69:5 | |
| **observer"**(1) 44:20 | | | | **ongoing**(1) 21:20 | | **order**(27) 14:3 26:23 26:24 28:2 28:4 32:3 33:21 39:8 40:14 52:2 64:2 69:25 92:1 96:1 96:12 109:3 126:7 137:25 140:2 169:18 183:20 186:2 200:9 215:12 226:4 253:9 256:8 | |
| **obtain**(2) 60:23 122:3 | | | | **only**(28) 13:7 15:8 17:16 69:21 69:22 79:21 92:4 109:15 117:23 134:7 134:11 135:2 136:12 141:24 142:23 148:14 179:2 180:18 188:1 194:1 195:20 196:11 221:11 235:18 240:2 247:24 248:8 253:24 | | | |
| **obtained**(2) 29:15 60:17 | | **okay**(11) 246:9 247:3 247:9 247:14 247:18 247:23 248:7 248:17 250:1 250:23 250:2 | | | | | |
| **obtaining**(3) 92:3 195:22 196:17 | | | | | | **ordinarily**(2) 42:11 114:17 | |
| **obviously**(10) 19:25 44:3 62:24 99:13 102:5 114:7 116:5 129:10 169:16 256:23 | | **old-line**(1) 29:6 | | **onto**(2) 143:19 151:19 | | **ordinary**(2) 117:17 210:12 | |
| | | **olinsky**(1) 10:5 | | **opened**(3) 93:4 93:6 94:14 | | **organized**(3) 95:17 121:17 122:2 | |
| | | **omits**(1) 164:16 | | **opening**(3) 145:11 145:14 254:25 | | **original**(4) 72:13 99:2 175:9 249:3 | |
| **occasion**(4) 21:9 102:25 118:17 245:14 | | **omitted**(2) 151:11 164:11 | | **operate**(3) 20:3 20:20 35:11 | | **originally**(4) 107:13 173:18 173:22 180:22 | |
| **occasions**(1) 82:25 | | **omitting**(1) 151:12 | | **operated**(1) 116:11 | | **other**(79) 14:16 20:18 22:25 31:21 33:15 35:7 35:11 35:16 35:22 36:24 37:24 38:10 43:9 52:23 58:3 61:10 61:13 61:24 64:25 65:20 65:22 66:18 68:5 70:8 71:11 71:22 71:24 73:7 75:8 76:24 81:24 88:20 88:23 90:19 95:15 96:4 96:16 112:12 118:10 118:17 119:4 127:23 135:8 135:8 135:12 136:15 137:12 137:15 140:6 141:10 142:23 144:5 151:24 151:25 152:17 153:16 161:22 166:18 169:16 180:13 182:10 191:22 192:10 204:4 204:6 204:6 209:1 226:20 227:5 229:7 232:3 233:8 244:10 245:10 249:23 250:14 251:12 252:4 254:5 | |
| **occur**(4) 30:1 63:21 151:5 151:5 | | **once**(9) 30:6 43:8 50:24 62:15 109:16 113:17 115:2 131:23 152:9 | | **operates**(3) 23:12 23:13 38:17 | | | |
| **occurred**(1) 234:21 | | | | **operating**(5) 22:23 47:15 50:19 50:21 | | | |
| **occurring**(2) 133:3 195:14 | | | | **operational**(1) 21:23 | | | |
| **off**(5) 80:23 82:5 100:16 128:1 128:2 | | | | **operations**(5) 28:10 33:2 38:19 46:9 108:6 | | | |
| **offenses**(1) 27:22 | | | | **opine**(5) 72:8 74:17 78:24 79:24 92:18 | | | |
| **offer**(4) 92:22 120:10 145:14 165:8 | | | | **opined**(2) 72:2 93:15 | | **others**(13) 20:20 29:9 46:4 51:17 128:2 164:23 204:8 204:10 233:3 241:19 245:21 255:24 256:12 | |
| **offered**(3) 166:5 166:19 228:11 | | | | **opining**(1) 72:5 | | | |
| **offering**(1) 245:5 | | | | **opinion**(99) 32:13 32:18 32:19 32:24 34:13 34:16 34:17 34:18 35:25 37:2 37:4 37:5 37:7 37:15 37:19 37:23 41:22 42:1 42:5 42:6 42:8 45:6 45:7 45:10 45:11 45:16 45:18 47:24 50:5 50:7 50:8 50:9 50:11 50:13 53:4 53:7 53:8 54:23 55:2 55:9 55:18 57:15 57:21 57:22 59:14 59:16 59:22 60:25 63:15 63:16 63:17 63:18 63:20 63:21 63:22 65:3 65:6 65:7 65:23 67:21 68:17 68:19 68:20 75:18 77:23 79:1 79:11 79:13 83:11 84:1 84:11 85:20 85:2 87:9 92:22 101:11 101:14 101:15 119:8 119:23 120:7 120:11 122:13 161:9 164:23 169:7 170:6 170:9 182:12 182:14 238:10 241:6 245:5 248:18 252:2 253:17 255:15 256:8 257:14 | | **otherwise**(6) 75:6 81:7 174:15 181:21 226:18 253:10 | |
| **officers**(5) 32:5 34:3 34:3 60:10 92:6 | | | | | | | |
| **official**(2) 3:24 5:33 | | | | | | | |
| **offset**(2) 237:10 239:2 | | | | | | **ought**(1) 237:18 | |
| **often**(4) 36:9 76:4 76:5 77:5 | | | | | | **our**(17) 16:7 18:16 20:2 21:5 21:7 40:19 61:21 62:7 111:4 137:5 137:5 144:5 150:14 192:4 211:4 218:21 252:20 | |
| **ohio**(1) 20:14 | | | | | | | |
| | | | | | | **out**(40) 16:1 17:24 26:20 39:6 39:7 41:5 42:25 47:8 47:12 47:16 56:12 61:14 62:10 63:4 64:14 80:13 81:1 94:15 109:1 115:5 123:3 125:16 137:20 143:18 147:12 162:23 164:19 164:21 176:22 176:23 178:16 200:21 203:4 203:15 214:8 226:4 247:19 248:22 255:19 256:10 | |
| | | | | **opened**(3) 93:4 93:6 94:14 | | | |
| | | | | | | **outcome**(25) 25:23 105:11 109:4 109:15 111:24 112:3 113:16 128:6 128:7 130:16 134:12 143:17 144:6 155:25 157:2 173:20 183:18 187:14 187:15 188:4 202:22 213:6 213:7 213:21 233:3 | |
| | | | | | | **outcomes**(24) 111:21 114:5 114:16 117:11 117:12 117:13 135:2 137:16 138:15 138:17 141:14 141:18 144:25 154:13 162:14 163:14 164:3 164:9 164:13 167:24 202:25 205:10 213:10 214:11 | |
| | | | | | | **outdoor**(1) 38:18 | |
| | | | | | | **outlet**(1) 53:25 | |
| | | | | | | **outlined**(1) 77:15 | |
| | | | | | | **outputs**(1) 227:1 | |
| | | | | | | **outset**(2) 92:11 122:8 | |
| | | | | | | **outside**(5) 17:19 156:24 237:15 238:3 | |
| | | | | | | **outstanding**(1) 48:17 | |
| | | | | **opinions**(7) 25:22 36:16 54:5 97:15 117:25 119:5 256:6 | | **over**(13) 30:4 33:2 34:6 47:14 56:5 63:23 108:4 196:22 214:8 222:11 234:17 234:22 255:14 | |
| | | | | | | **overall**(3) 112:5 183:8 202:24 | |
| | | | | | | **overlap**(1) 35:12 | |
| | | | | | | **overlaps**(2) 52:15 53:21 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**overruled**(5) 140:13 185:4 194:18 195:25 227:23

**overwhelmingly**(1) 160:6

**own**(20) 20:3 23:7 23:8 35:7 35:16 39:21 51:7 51:10 154:3 154:9 154:20 158:2 158:13 159:13 159:16 159:23 164:7 176:10 226:19 245:13

**owned**(4) 20:11 69:4 69:4 243:24

**ownership**(41) 22:5 22:9 22:16 23:1 23:2 26:3 26:21 28:19 29:2 29:7 29:8 29:15 33:13 37:6 39:12 39:18 44:12 44:14 46:21 48:9 48:21 53:2 67:9 67:13 67:14 71:11 74:13 74:19 75:16 77:21 80:5 80:10 80:20 85:7 85:16 87:5 88:13 88:20 90:5 97:1 244:5

**ownership-rule**(1) 22:25

**owns**(6) 23:11 23:12 56:13 58:7 58:22

**o'melveny**(1) 6:21

**o'neal**(1) 7:27

**p-r-a-k**(1) 19:8

**p.a**(1) 1:32

**p.m**(3) 171:4 171:4 258:2

**page**(99) 27:5 28:6 28:7 28:8 29:10 29:11 29:11 32:1 32:4 34:6 36:14 39:15 39:16 39:16 39:17 39:19 39:24 40:14 40:19 40:20 40:22 40:23 41:14 44:12 44:18 48:13 52:20 57:2 57:3 57:7 57:12 60:1 60:7 60:9 61:3 63:8 66:8 71:10 71:13 73:14 74:24 82:23 84:2 87:24 89:25 89:25 91:18 92:16 92:22 121:21 122:15 140:23 141:3 172:16 172:19 172:21 172:21 172:22 173:1 173:4 173:19 174:7 174:13 178:4 178:8 180:1 181:7 181:10 186:6 186:14 190:6 190:7 190:16 190:16 191:5 191:6 191:8 193:6 193:8 198:7 198:12 200:12 205:1 205:4 206:11 207:22 207:25 211:5 211:22 216:3 218:25 219:1 221:20 222:3 222:6 233:16 239:6 239:10 239:15

**pages**(14) 17:16 31:23 31:24 32:3 40:12 40:17 41:13 44:6 44:8 76:10 91:16 128:23 128:24 211:24

**paid**(2) 25:17 25:21

**pants**(1) 115:2

**paper**(2) 57:10 58:23

**papers'**(1) 57:15

**paragraph**(11) 27:8 28:8 29:12 89:25 90:1 178:10 180:5 181:10 181:13 191:6 198:12

**paralegal**(1) 213:18

**pardon**(1) 83:4

**parent**(21) 129:23 130:5 131:8 133:16 133:16 136:1 136:14 138:23 142:1 142:25 146:24 216:17 216:19 217:4 217:18 218:2 218:17 219:19 221:1 233:25 249:23

**park**(3) 2:42 5:34 10:27

**parke**(1) 3:32

**parlance**(1) 220:22

**part**(23) 16:19 20:22 22:4 22:7 27:25 31:31:8 33:16 39:9 56:25 74:5 93:14 96:7 148:11 165:17 187:5 193:16 199:5 224:19 226:10 234:17 235:5 252:20

**partial**(9) 138:17 138:18 138:18 138:21 139:1 148:18 148:20 162:12 218:5

**partially**(2) 235:24 236:4

**participate**(12) 173:13 174:18 174:20 175:6 175:15 178:15 179:2 179:24 180:10 181:24 182:2 182:6

**participates**(1) 179:7
**participating**(2) 174:25 176:4
**participation**(5) 142:5 173:4 173:21 178:20 248:11

**particular**(42) 22:2 26:2 30:25 107:6 111:24 112:8 114:16 121:9 121:12 121:19 126:17 133:16 134:4 134:7 136:7 142:24 147:9 149:19 149:20 156:1 159:12 159:14 166:6 173:3 174:5 180:4 182:24 187:5 189:23 191:5 193:5 198:8 205:1 211:5 212:1 213:20 233:18 234:3 241:5 245:19 246:1 256:6

**particularly**(1) 145:2

**parties**(19) 13:4 14:3 18:15 21:20 61:24 62:24 64:2 76:4 77:5 77:25 82:20 86:10 95:24 95:24 96:2 100:5 106:22 245:3 255:20

**partner**(1) 8:42

**partners**(9) 9:25 9:25 10:43 11:13 11:45 11:45 12:4 12:12 12:12

**parts**(3) 121:8 157:4 221:3
**party**(1) 10:43 23:11 42:16 82:20
**parver**(1) 11:37
**pass**(1) 133:20
**passed**(3) 21:10 21:24 143:19
**passes**(1) 133:17
**passing**(3) 146:24 147:17 147:20
**passive**(5) 49:11 49:15 49:22 51:11 62:8
**past**(6) 19:20 29:1 30:4 30:9 30:14 56:19
**patent**(1) 71:8
**path**(6) 112:8 132:24 133:10 133:14 134:8 136:8

**patrick**(1) 7:17
**paul**(1) 7:30
**paxon**(9) 57:9 210:10 211:7 214:21 216:1 218:23 219:5 234:6 236:13

**paxson**(2) 46:6 46:15
**pay**(1) 147:15
**payment**(1) 170:18
**payments**(4) 174:21 178:15 179:2 179:24
**peg**(1) 11:22
**pendency**(2) 85:9 90:5
**pending**(12) 26:25 64:16 77:9 77:12 82:2 84:20 84:23 85:19 86:13 90:3 95:5 95:13

**penieda**(1) 256:2
**pennock**(1) 7:37
**pennsylvania**(1) 1:42
**people**(12) 17:14 17:17 20:5 33:23 33:24 47:9 49:20 51:7 61:10 87:14 104:14 253:20

**percent**(129) 14:7 23:11 23:13 34:11 34:14 34:18 39:22 39:23 40:3 42:21 43:1 45:2 45:21 48:17 48:19 48:24 65:17 65:1 66:20 73:16 75:7 92:1 104:21 110:16 110:17 111:5 111:8 111:8 111:9 111:12 111:14 111:15 112:4 112:6 112:7 112:11 112:11 112:11 112:23 112:24 112:25 113:1 125:15 125:15 126:7 126:11 126:11 131:22 132:4 132:5 132:13 132:23 132:23 133:2 133:3 133:4 133:5 134:11 134:11 138:16 143:11 143:12 147:7 147:8 147:20 163:17 164:4 164:8 164:10 164:14 164:16 167:12 167:17 167:18 167:20 170:25 187:19 187:20 187:22 188:13 188:14 190:20 190:25 191:16 191:16 191:21 191:21 191:25 192:2 192:2 192:3 192:7 192:8 192:11 193:21 193:23 195:23 195:24 196:18 197:12 197:18 198:4 198:24 202: 202:12 203:2 205:15 205:18 206:12 206:19 206:23 206:25 207:3 207:3 207:4 207:4 207:7 212:10 214:7 215:18 216:22 217:18 218:17 220:5 220:10 240:25 241:24 242:1 254:24

**percent."**(1) 44:14
**percentage**(3) 136:16 136:16 201:22
**percentages**(3) 133:24 156:11 201:22
**perfectly**(1) 119:9
**perhaps**(3) 29:8 129:16 252:23
**period**(5) 61:9 63:1 85:3 152:20 241:22

**periodically**(1) 21:11
**permissible**(1) 117:23
**permit**(4) 74:12 77:9 77:11 96:1
**pernick**(1) 1:33
**person**(9) 23:15 43:9 152:12 203:23 235:9 241:15 243:15 255:8 255:10

**personal**(1) 226:19
**personally**(1) 46:18
**personnel**(1) 50:20
**persuade**(1) 228:12
**persuaded**(1) 176:10
**peter**(3) 9:5 10:34 11:14
**petition**(5) 63:25 80:21 81:7 81:11 95:22
**petitioners**(1) 87:4
**petitions**(6) 80:25 86:16 87:11 87:15 87:20 95:25

**phd**(2) 102:23 103:5
**phelps**(1) 10:48
**philadelphia**(1) 85:1
**phone**(1) 20:4
**phones**(10) 168:23 168:23 169:1 169:5 169:5 169:20 233:20 233:24 234:17 234:2

**phrase**(3) 58:11 178:13 178:23
**phrases**(2) 124:16 135:10
**phrasing**(1) 231:19
**physics**(5) 102:21 102:23 103:3 103:5
**pick**(2) 87:10 156:21
**picked**(4) 134:7 158:3 163:16 169:19
**pickering**(1) 6:10
**picking**(1) 47:10
**pie**(3) 163:21 164:1 164:5
**piece**(2) 51:9 51:10
**piecemeal**(2) 162:9 162:11
**pieces**(2) 47:10 183:20
**pierce**(1) 19:15
**pineda**(1) 255:4
**pink**(3) 159:20 160:4 163:25
**piper**(1) 3:19
**place**(3) 19:2 60:7 199:14
**placement**(1) 32:9
**places**(1) 125:16
**plaintiff**(6) 110:15 110:15 170:17 170:18 197:12 233:7

**plan**(116) 13:19 13:24 15:13 15:15 15:18 16:2 16:4 16:10 16:17 18:24 26:15 27:13 27:16 28:12 31:19 31:19 32:2 32:15 34:8 35:5 36:23 37:10 37:16 40:15 40:16 40:8 40:18 59:10 59:18 59:23 60:1 71:2 71:25 72:2 72:5 72:7 72:13 72:16 72:18 72:19 72:20 73:25 74:5 74:6 74:7 74:9 74:12 74:15 74:21 75:19 75:20 76:10 76:13 76:22 78:5 78:6 78:18 79:1 79:8 79:8 79:19 81:20 83:17 86:2 86:4 88:1 88:15 88:18 89:6 89:20 90:3 91:1 91:3 91:4 91:8 91:12 91:15 91:20 91:21 91:22 91:23 94:3 94:22 92:13 92:19 92:24 94:5 94:7 94:8 94:11 94:11 95:11 95:12 95:18 96:20 97:21 98:20 98:22 98:23 98:24 120:10 120:12 138:25 145:14 146:2 153:9 154:20 158:21 158:21 165:8 165:23 166:1 224:19 224:20 225:3

**plans**(8) 71:20 88:4 90:9 90:14 93:7 93:9 94:16 96:18

**play**(3) 23:25 24:23 28:25 38:21 56:4 115:24 226:10

**playback**(1) 80:17
**plays**(1) 56:12
**plaza**(3) 2:24 3:40 4:16

**please**(55) 13:2 13:12 19:1 19:4 19:19 24:8 29:10 31:16 31:25 38:23 40:7 40:24 41:9 45:18 48:3 48:7 50:16 52:19 54:4 59:7 63:8 100:18 101:14 101:24 105:5 108:21 109:12 111:1 116:15 116:20 119:14 121:25 122:19 123:16 129:13 133:8 137:3 145:9 148:10 149:7 153:25 155:7 164:25 167:6 171:5 179:21 180:15 185:7 185:8 187:3 211:20 224:16 230:24 239:20 246:15

**plugged**(2) 151:21 157:2
**plus**(4) 156:6 192:3 195:15 195:15
**point**(23) 11:8 11:8 58:25 72:20 84:6 94:15 100:12 130:6 155:19 155:24 177:1 209:4 217:5 217:6 219:6 221:9 222:24 232:16 237:22 242:21 252:22 254:13 255:19

**pointed**(1) 256:10
**poke**(1) 257:4
**polatsek**(1) 10:40
**policies**(5) 21:14 21:21 21:24 26:2 51:16 100:1 108:13

**polk**(2) 2:4 9:4
**poor**(1) 224:10
**portfolio**(1) 107:6
**portion**(1) 122:2
**position**(9) 30:6 35:14 35:19 35:20 35:24 46:12 46:16 49:8 49:10

**positional-attributabl**(1) 34:4
**positions**(3) 34:1 34:2 46:10
**possibility**(5) 34:10 192:14 195:7 220:16 234:21

**possible**(23) 70:6 79:1 90:8 90:12 95:21 107:7 111:21 130:12 130:15 136:2 136:16 137:12 143:10 151:11 154:13 163:4 163:9 163:14 164:13 164:17 176:8 202:25 217:23

**post-docing**(1) 103:9

**potential**(15) 33:2 35:12 47:14 51:15 52:7 76:3 77:4 81:19 107:14 110:15 118:25 141:14 141:17 151:7 189:6

**potentially**(1) 76:24
**potter**(1) 4:13
**power**(2) 51:13 51:14
**ppearances**(3) 1:20 2:1 5:1
**pperances**(2) 3:1 4:1
**practice**(17) 19:19 20:1 20:22 21:1 21:5 22:4 22:7 22:17 24:5 114:11 114:20 117:17 118:7 119:19 161:13 177:13 228:9

**practicing**(1) 19:20
**practitioners**(6) 118:11 118:18 118:24 119:4 227:25 227:20

**prak**(29) 13:15 15:4 15:22 16:18 16:19 16:22 18:25 19:3 19:8 19:12 24:5 25:9 26:1 26:10 36:12 63:7 64:24 66:12 70:21 80:15 80:17 90:24 94:14 95:4 99:13 99:25 100:8 100:10 259:3

**prak's**(1) 92:15
**pre-lbo**(1) 166:24
**preceding**(1) 191:7
**precisely**(2) 51:22 189:6
**prejudgment**(4) 237:11 237:14 237:18
**preliminarily**(1) 17:22
**preliminary**(2) 95:19 96:22
**premise**(2) 31:1 188:18
**prepare**(4) 84:2 145:6 164:22 168:6
**prepared**(19) 15:5 26:11 36:2 97:11 101:21 102:12 105:15 110:5 117:20 121:5 125:20 134:15 146:5 150:18 153:22 155:4 158:24 163:16 163:20

**prepares**(1) 64:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| preparing(1) 153:2 | | problematic(1) 46:1 | | pryor(2) 12:16 12:16 | | raises(1) 94:3 | |
| prerequisite(1) 208:13 | | problems(6) 22:11 59:5 59:18 59:20 61:8 61:8 | | public(14) 15:16 16:6 20:16 24:11 30:16 30:22 31:10 53:24 55:5 56:1 87:4 104:13 105:1 108:13 | | raising(1) 252:12 | |
| prerogatives(1) 78:8 | | | | | | raleigh(1) 19:16 | |
| present(8) 29:3 30:10 75:17 237:4 240:7 240:8 240:18 248:12 | | procedure(1) 75:19 | | | | ran(3) 147:14 249:14 250:2 | |
| | | procedures(2) 26:2 95:9 | | public-interest(4) 33:9 33:11 33:16 53:14 | | range(17) 44:12 44:14 45:1 108:18 154:4 155:13 155:16 155:18 156:4 156:21 156:25 157:4 158:4 159:13 159:22 159:24 255:7 | |
| presentation(2) 102:4 113:13 | | proceed(10) 13:5 26:7 118:3 120:25 125:9 140:15 143:6 166:24 167:13 244:17 | | publicly(7) 14:2 16:3 61:17 61:18 87:10 87:13 87:14 | | | |
| presented(7) 47:22 50:12 63:11 74:10 122:5 175:14 254:22 | | proceeding(4) 51:19 52:4 96:2 99:15 | | publisher(4) 20:17 29:6 45:15 48:5 | | ranges(11) 154:15 154:25 155:20 156:7 156:11 156:15 156:18 156:20 157:3 158:6 158:8 | |
| presenting(1) 53:10 | | proceedings(6) 1:16 1:46 21:16 85:6 99:15 258:6 | | publishers(1) 52:14 | | ranging(1) 28:18 | |
| presently(4) 37:6 37:20 38:6 74:10 | | | | pull(11) 64:16 80:13 121:24 129:7 129:13 168:9 186:6 187:1 207:22 211:4 239:6 | | rate(5) 25:19 238:22 240:25 241:13 241:20 241:21 | |
| preservation(1) 23:4 | | proceeds(1) 39:17 | | | | | |
| presume(1) 220:14 | | process(9) 31:11 37:13 37:13 59:11 59:19 61:1 61:24 62:12 62:12 | | pulled(2) 82:5 211:23 | | rated(1) 13:23 | |
| presumption(4) 56:16 56:19 59:2 69:19 | | | | pulling(1) 91:13 | | rath(3) 3:25 3:27 5:49 | |
| presumptions(1) 69:20 | | processes(1) 95:9 | | pure(1) 53:22 | | rather(6) 75:2 75:2 155:20 156:7 156:11 157:3 | |
| presumptively(1) 69:14 | | produced(5) 1:47 253:15 254:20 254:21 257:2 | | purely(1) 225:14 | | | |
| pretty(8) 34:21 113:10 113:11 113:11 129:10 134:6 144:19 202:11 | | | | purported(1) 153:16 | | raymond(1) 9:29 | |
| | | product(2) 143:12 255:16 | | purpose(2) 30:23 46:10 | | re-evaluated(1) 30:8 | |
| prevail(10) 110:18 110:19 111:6 111:11 111:12 111:13 112:4 112:10 197:12 203:2 | | products(1) 144:9 | | purposes(10) 22:25 24:3 29:4 44:24 45:25 47:17 55:12 109:22 145:4 232:5 | | reach(5) 113:9 139:23 147:4 157:6 195:8 | |
| | | prof(1) 9:29 | | | | reached(5) 124:4 165:22 193:6 194:14 194:15 | |
| prevailed(2) 112:18 112:20 | | professional(1) 240:10 | | pursued(2) 224:24 236:16 | | | |
| prevailing(9) 30:10 110:16 110:17 111:13 111:15 112:5 112:6 147:9 203:21 | | professor(21) 108:9 153:10 153:13 153:16 154:2 155:13 155:16 156:14 158:2 158:25 159:11 159:23 159:25 160:6 162:3 162:4 162:17 164:2 164:7 164:23 245:7 | | pushes(2) 62:9 63:2 | | reaches(1) 194:10 | |
| | | | | put(20) 31:22 42:15 79:23 85:13 112:15 117:16 127:20 137:12 152:21 154:25 162:23 166:22 167:4 172:3 186:15 197:7 212:24 212:25 244:3 255:21 | | reaching(1) 127:5 | |
| preview(1) 126:22 | | | | | | read(42) 40:24 41:16 44:7 90:1 91:17 94:1 102:5 121:6 121:25 122:19 123:16 124:8 129:11 141:2 156:13 174:11 174:23 175:4 178:9 178:23 180:5 180:12 180:13 180:15 180:18 181:16 182:10 185:8 190:23 191:14 194:5 194:9 199:21 200:13 201:13 206:16 208:14 209:2 217:20 219:9 222:9 239:9 | |
| previous(1) 239:16 | | | | puts(1) 109:6 | | | |
| previously(8) 89:2 93:15 139:8 139:22 139:23 199:18 244:14 245:14 | | proffer(1) 94:5 | | putting(3) 93:16 102:4 150:25 | | | |
| | | program(2) 104:15 105:3 | | | | | |
| primarily(1) 199:8 | | programming(3) 23:11 50:20 53:25 | | qualification(1) 255:6 | | reader(3) 122:3 182:16 182:18 | |
| primary(1) 128:12 | | promoting(1) 23:2 | | qualifications(3) 13:21 27:21 33:15 | | readily(1) 255:15 | |
| primoff(1) 11:38 | | promulgate(1) 108:14 | | qualified(4) 182:14 241:12 251:14 255:3 | | reading(10) 91:10 174:6 191:2 197:14 204:17 207:8 207:12 207:20 217:15 221:19 | |
| princeton(1) 102:20 | | prong(1) 253:5 | | qualifies(1) 49:4 | | | |
| principal(8) 84:13 84:18 122:7 140:20 144:10 176:15 199:11 199:15 | | proper(2) 109:24 176:18 | | qualify(1) 255:8 | | | |
| | | properly(2) 184:23 185:11 | | qualitative(4) 201:21 221:19 221:23 222:1 | | reads(7) 28:9 179:11 179:25 193:16 198:16 201:1 216:22 | |
| principally(1) 20:1 | | property(2) 22:8 22:9 | | quantitative(2) 162:21 163:6 | | | |
| principals(1) 142:12 | | proponent(4) 91:12 94:5 97:21 98:20 | | quantum(1) 103:3 | | ready(1) 13:5 | |
| principle(6) 20:15 33:22 201:6 208:21 208:24 253:13 | | proponent's(1) 154:22 | | question(74) 21:25 34:9 35:4 36:17 36:19 36:21 37:1 37:1 37:2 44:25 45:5 45:21 47:18 50:18 52:19 52:22 53:2 53:3 53:5 54:5 55:12 58:9 59:7 59:14 63:9 63:9 65:11 68:21 77:20 91:18 92:17 92:21 99:10 118:6 126:5 141:16 146:17 160:19 171:13 171:15 174:20 174:25 178:9 178:18 178:22 179:1 179:6 179:13 179:19 179:22 180:8 180:9 182:1 182:5 185:6 186:15 186:20 194:11 204:7 204:18 208:2 208:7 225:7 229:14 230:24 232:6 232:22 239:9 240:5 240:9 244:1 248:20 252:12 255:2 | | real(6) 78:17 97:2 106:16 189:22 192:13 192:19 | |
| | | | | | | | |
| principles(2) 30:24 255:16 | | proponents(28) 13:19 13:24 15:13 15:18 16:2 16:4 18:24 26:15 60:15 60:19 60:20 60:23 65:2 89:20 91:20 91:22 120:10 120:12 138:25 145:14 146:3 153:10 158:2 158:22 158:23 165:8 165:24 224:20 | | | | reality(2) 160:21 160:22 | |
| prior(6) 25:10 90:10 90:14 106:21 141:23 241:23 | | | | | | really(10) 30:12 51:2 58:21 62:7 70:23 83:15 113:18 127:14 228:24 245:18 | |
| | | | | questioning(4) 15:11 16:17 93:3 95:4 | | | |
| | | | | questions(40) 16:18 16:21 16:23 25:2 49:9 58:24 59:7 64:19 64:19 64:24 70:9 70:23 73:10 74:19 74:19 89:9 90:18 92:15 92:25 93:3 93:16 94:17 96:2 99:6 102:9 107:24 118:2 133:8 181:17 190:8 222:8 245:9 245:13 246:22 246:25 247:3 247:9 247:15 257:22 | | reason(14) 43:5 46:2 49:19 51:23 82:6 82:7 194:15 218:11 220:19 223:22 223:24 226:17 234:11 235:3 | |
| priorities(2) 174:19 181:25 | | proponents'(2) 16:10 16:17 | | | | | |
| privileged(1) 19:25 | | proposals(1) 62:11 | | | | reasonable(11) 133:1 134:12 140:11 170:7 170:11 182:8 187:1 195:2 209:16 227:12 227:20 | |
| probabilistic(2) 219:24 220:5 | | propose(2) 33:18 172:1 | | | | | |
| probabilistically(1) 194:25 | | proposed(9) 115:17 76:21 96:10 119:19 119:24 120:13 166:1 166:22 167:1 167:7 167:11 169:24 170:14 172:7 173:18 173:22 224:20 252:18 252:19 | | quick(2) 113:11 122:4 | | reasonableness(3) 119:6 119:24 120:13 | |
| probabilities(46) 109:6 109:7 111:14 112:3 113:16 114:8 114:12 123:2 123:23 124:25 125:4 125:7 125:21 125:21 126:3 126:10 134:3 135:10 136:11 137:13 141:9 154:4 154:5 154:16 154:21 155:1 155:12 155:13 155:21 156:7 157:11 158:3 158:13 158:14 158:18 159:1 162:24 163:1 169:21 174:1 190:19 192:10 201:23 231:23 251:25 257:10 | | | | quicker(1) 62:23 | | reasonably(41) 60:15 119:5 122:23 122:24 123:18 123:22 131:1 131:21 132:17 132:19 132:22 132:25 133:11 139:11 139:15 140:4 174:14 174:24 178:11 181:18 181:20 183:5 197:17 197:25 198:2 198:3 198:17 200:1 200:1 201:8 201:10 201:21 201:22 203:12 207:16 208:10 209:7 251:9 253:12 253:19 256:5 | |
| | | | | quickly(6) 16:16 74:21 100:6 130:18 153:25 168:23 | | | |
| | | proposes(1) 74:6 | | | | | |
| | | proposing(1) 170:2 | | quincy(1) 20:19 | | | |
| | | protect(2) 51:1 100:4 | | quite(10) 42:17 61:21 74:8 139:25 158:16 163:1 231:12 242:16 246:8 255:15 | | | |
| | | protestants(1) 82:20 | | | | | |
| probability(58) 107:16 108:5 109:9 109:18 112:1 112:2 112:22 115:9 131:22 132:3 143:11 144:7 153:17 154:16 155:20 156:4 156:22 158:4 158:6 158:8 159:11 159:25 164:8 164:14 164:20 164:7 167:10 167:16 167:17 167:18 167:19 167:21 167:22 190:20 191:21 193:21 194:21 194:23 202:21 202:24 203:3 205:4 205:10 206:12 206:20 207:8 213:14 213:19 213:20 213:22 214:1 214:6 221:18 221:25 222:17 233:1 234:8 245:6 | | protestors(1) 87:10 | | quo(5) 56:8 56:10 88:1 88:3 88:25 | | | |
| | | prove(1) 188:19 | | | | reasoning(2) 194:22 194:24 | |
| | | proved(2) 186:1 188:2 | | quoted(1) 174:7 | | reasons(2) 194:11 195:9 | |
| | | provide(9) 70:16 101:10 107:1 117:16 120:11 126:1 155:21 239:16 266:15 | | r.w(1) 5:21 | | rebecca(1) 8:18 | |
| probably(7) 40:12 80:24 104:20 113:10 177:2 183:5 231:1 | | | | radio(15) 20:5 20:20 22:23 28:11 28:21 28:22 29:7 29:8 29:9 35:8 38:17 38:19 38:21 67:2 69:10 | | rebuttal(5) 165:5 165:8 236:18 249:3 | |
| | | proving(4) 185:23 231:8 231:9 231:21 | | | | recall(20) 53:13 80:3 95:6 95:8 97:10 171:1 171:15 186:7 197:4 199:8 204:14 207:20 223:21 224:20 225:24 235:14 237:15 245:19 246:1 250:6 | |
| probative(1) 254:2 | | provision(11) 27:13 32:6 32:15 41:16 61:1 74:23 75:5 75:12 76:2 77:4 210:6 | | | | | |
| | | | | raise(1) 19:1 | | | |
| problem(7) 61:12 61:16 62:2 62:7 62:24 63:6 97:17 | | provisions(10) 32:11 34:7 43:6 59:23 74:12 77:8 77:11 77:13 78:13 89:6 | | raised(3) 252:7 252:12 252:23 | | recalled(1) 223:24 | |
| | | | | | | recalling(1) 197:10 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **receipt**(2) 26:22 34:13 | | **refiled**(1) 86:4 | | **remedies**(5) 127:23 128:5 158:1 172:3 192:20 | | **required**(7) 30:9 33:9 60:17 77:13 124:22 128:6 256:1 | |
| **receive**(4) 34:11 75:7 132:22 166:25 | | **reflect**(10) 160:21 161:7 184:22 185:11 223:4 231:10 232:13 233:12 235:3 238:25:6 | | **remedy**(6) 190:25 191:2 191:23 195:22 196:11 196:17 | | **requirement**(2) 208:24 255:6 | |
| **received**(11) 60:16 102:20 102:22 131:1 132:19 135:12 150:14 150:15 234:16 235:6 259:11 | | **reflected**(4) 196:18 196:22 206:8 225:3 | | **remember**(13) 93:8 139:20 157:17 160:23 216:10 237:3 246:10 246:23 247:6 247:12 247:14 247:18 247:23 | | **requirements**(5) 27:24 28:13 28:16 251:6 251:16 | |
| | | **reflecting**(1) 187:10 | | | | **requires**(2) 42:19 100:1 | |
| **recent**(1) 46:20 | | **reflection**(1) 203:25 | | **remind**(1) 236:15 | | **requiring**(1) 96:1 | |
| **recently**(6) 20:6 29:18 30:11 51:18 56:20 96:17 | | **refresh**(3) 98:21 183:1 248:3 | | **remote**(1) 220:16 | | **requisite**(2) 90:8 90:13 | |
| | | **refreshed**(2) 223:19 223:20 | | **renewed**(1) 30:14 | | **research**(3) 103:15 108:6 108:11 | |
| **recess**(8) 70:10 70:12 100:15 171:3 171:4 224:13 224:14 246:13 | | **refused**(1) 51:22 | | **reorganization**(8) 31:19 40:15 60:1 71:25 94:12 95:11 95:12 98:24 | | **reserve**(2) 145:21 165:19 | |
| | | **regard**(3) 32:18 32:24 183:15 | | | | **resign**(1) 68:23 | |
| **recognize**(8) 116:23 123:14 125:24 128:24 145:10 146:12 165:4 187:6 | | **regarding**(14) 31:22 55:12 63:10 121:12 122:5 122:7 124:9 124:22 127:18 146:23 153:9 159:12 196:4 197:9 | | **reorganized**(26) 26:21 31:13 32:5 32:14 34:8 34:12 35:4 36:23 38:5 39:19 40:1 40:6 52:23 59:9 60:10 65:4 65:15 69:15 73:16 73:19 75:9 75:23 76:15 92:6 92:7 92:13 | | **resolution**(2) 64:12 241:22 | |
| **recognizing**(1) 117:1 | | | | | | **resolve**(4) 70:5 176:2 238:9 238:17 | |
| **recollection**(4) 183:2 223:19 223:20 248:3 | | **regardless**(3) 25:22 25:22 59:19 | | | | **respect**(30) 26:1 31:20 34:1 44:11 46:22 54:21 55:1 55:7 85:7 89:20 92:18 93:3 94:2 94:17 97:21 102:11 123:11 123:17 124:4 146:16 147:14 159:17 165:23 179:6 221:24 237:19 245:15 251:8 255:2 256:18 | |
| **recommend**(1) 64:13 | | **register**(12) 54:14 54:22 55:16 56:13 56:13 57:11 57:18 58:8 58:20 61:14 61:15 69:5 | | **repeat**(7) 54:16 141:16 178:22 185:6 197:21 223:23 230:24 | | | |
| **recommended**(2) 170:14 170:17 | | | | | | | |
| **recommends**(1) 97:24 | | **register"**(1) 57:14 | | **repeatedly**(1) 251:20 | | | |
| **record**(24) 15:17 15:20 19:6 20:16 40:24 50:3 55:5 72:12 76:12 89:5 90:1 93:13 93:14 94:13 94:15 98:6 99:1 100:16 121:25 128:18 221:6 224:10 249:13 252:2 | | **regranted**(1) 87:6 | | **rephrase**(1) 179:13 | | **respond**(3) 62:1 85:24 254:13 | |
| | | **regular**(2) 25:19 107:4 | | **replacement**(1) 43:11 | | **response**(6) 36:4 62:3 221:8 245:11 250:15 257:24 | |
| | | **regularly**(1) 107:5 | | **report**(120) 15:22 15:23 15:25 16:9 16:12 16:14 16:15 17:11 17:12 26:11 26:13 52:12 72:13 73:2 79:23 84:8 101:19 115:22 115:24 116:12 116:4 121:6 121:7 121:10 121:14 121:18 121:19 122:3 122:6 122:22 125:16 126:10 129:3 142:10 145:6 145:11 145:15 153:9 153:11 153:14 153:1 154:21 156:13 156:16 156:23 158:10 158:15 158:19 160:7 160:23 161:5 162:3 164:22 165:5 165:8 171:15 172:16 174:7 175:21 177:7 177:20 178:4 178:10 180:2 181:3 183:10 185:3 189:23 190:2 190:5 190:6 190:7 190:24 191:5 193:5 194:1 194:7 196:18 196:22 197:5 198:7 200:13 204:25 205:1 207:16 208:20 209:6 209:15 211:22 211:24 216:4 218:25 221:4 221:20 222:4 227:17 230:20 233:16 236:19 236:2 236:24 237:5 237:6 238:5 242:17 243:3 243:9 247:12 248:14 248:25 249:3 249:3 251:21 251:24 254:4 254:8 254:20 254:24 254:25 255:1 | | **restate**(3) 179:20 179:21 209:3 | |
| **recorded**(1) 1:46 | | **regulation**(1) 58:10 | | | | **restrictions**(2) 28:16 28:23 | |
| **recording**(2) 1:46 258:5 | | **regulations**(3) 21:14 21:22 26:2 | | | | **restrictions."**(1) 28:14 | |
| **recover**(2) 143:1 167:11 | | **regulatory**(9) 20:1 21:18 56:9 58:2 59:3 69:11 69:17 69:17 69:19 | | | | **restructure**(2) 47:24 62:10 | |
| **recoveries**(43) 116:6 117:9 137:7 137:13 142:6 148:23 149:4 149:20 150:13 151:8 151:11 151:18 162:15 169:2 169:3 173:5 173:13 173:22 174:3 174:21 175:6 175:16 176:4 178:15 179:12 179:11 179:24 180:11 180:17 180:18 182:3 182:6 218:3 218:4 218:21 225:4 234:12 235:6 238:19 238:25 253:14 253:22 254:9 | | **rein**(2) 5:20 83:9 | | | | **restructured**(1) 59:10 | |
| | | **reiterate**(2) 17:10 17:17 | | | | **restructuring**(1) 76:24 | |
| | | **relate**(5) 131:2 131:7 131:9 135:21 142:3 | | | | **result**(14) 25:5 26:24 72:23 80:9 80:19 107:17 154:11 156:2 168:20 175:10 180:21 182:22 188:9 217:22 | |
| | | **related**(24) 13:9 14:17 101:18 103:13 103:23 104:1 104:9 105:22 106:22 115:21 120:12 130:24 144:14 145:4 147:14 166:11 166:19 168:18 168:20 168:25 184:1 242:18 245:25 250:9 | | **reported**(1) 30:12 | | | |
| **recovery**(67) 112:16 112:16 112:22 114:15 114:20 116:6 116:9 117:16 118:8 127:22 128:6 137:14 139:4 139:5 139:9 139:12 139:15 140:18 140:24 141:5 141:11 141:2 141:22 142:2 142:16 143:11 143:15 143:18 143:19 144:1 144:7 148:8 149:17 150:9 151:21 158:5 158:12 164:4 166:9 167:16 167:18 167:20 167:22 167:25 177: 202:21 211:21 212:3 213:4 213:9 213:9 213:11 213:14 213:20 213:24 213:25 214:11 226:3 226:8 226:25 228:3 228:5 228:17 234:16 235:8 252:20 256:12 | | **relates**(19) 13:16 13:15 50:18 54:5 94:6 94:7 102:10 102:13 104:6 104:19 106:4 118:18 128:5 128:8 129:18 129:22 130:25 141:23 146:8 | | **reporter**(4) 185:9 243:5 243:7 243:11 | | | |
| | | **relating**(9) 22:5 32:15 33:15 43:22 57:1 94:2 129:16 149:13 195:16 | | **reports**(5) 152:7 152:21 236:18 236:22 250:18 | | **resulted**(1) 182:23 | |
| | | **relationship**(4) 58:15 192:16 230:21 231:7 | | | | **resulting**(1) 88:1 | |
| | | **relatively**(1) 122:4 | | **represent**(19) 19:24 20:7 20:9 20:12 20:15 20:16 20:18 21:5 76:6 82:4 111:19 111:20 130:11 147:11 148:16 159:22 162:16 164:1 172:2 | | **results**(5) 64:7 157:9 168:16 227:16 227:16 | |
| **recross**(5) 99:9 99:11 249:8 250:14 259:2 | | **relatively**(1) 103:4 | | | | **retain**(2) 128:10 151:16 | |
| **recross-examination**(1) 249:11 | | **released**(1) 170:23 | | | | **retained**(3) 89:23 152:3 152:6 | |
| **red**(1) 159:20 | | **releasing**(1) 170:20 | | **representation**(2) 22:3 58:6 | | **retention**(1) 67:21 | |
| **redacted**(6) 15:24 16:5 16:9 16:13 16:13 26:14 | | **relevant**(8) 22:24 29:4 53:15 65:23 66:18 71:15 135:6 149:12 | | **representativ**(3) 105:16 105:24 152:8 | | **return**(2) 162:2 169:13 | |
| | | | | **represented**(5) 113:3 136:17 163:18 164:3 226:16 | | **rev**(1) 208:10 | |
| **redactions**(1) 15:25 | | **reliability**(2) 256:18 257:13 | | | | **reverse**(6) 1 206:2 | |
| **redirect**(8) 90:20 90:22 93:3 246:6 246:8 246:16 246:19 259:2 | | **reliable**(5) 115:11 163:4 164:16 255:16 256:25 | | **representing**(3) 15:12 64:22 110:14 | | **review**(6) 73:1 81:20 83:10 98:3 153:13 153:19 | |
| | | | | **represents**(10) 109:21 111:4 112:3 113:4 131:18 132:24 133:21 141:14 141:17 159:10 | | | |
| **redo**(1) 113:19 | | **reliably**(1) 255:25 | | | | | |
| **reduce**(1) 196:21 | | **reliance**(1) 140:10 | | **reproduce**(1) 212:1 | | **reviewed**(3) 81:22 97:12 236:18 | |
| **reduces**(1) 151:18 | | **relied**(22) 119:3 121:6 140:20 145:3 174:5 183:12 194:1 200:4 200:10 201:5 201:7 201:14 201:15 221:4 221:11 227:17 229:2 251:8 251:9 253:12 253:13 256:5 | | **reproduced**(2) 212:9 214:14 | | **richards**(2) 2:14 9:8 | |
| **reducing**(1) 135:6 | | | | **reproducing**(1) 213:10 | | **rifkind**(1) 7:30 | |
| **reduction**(1) 135:6 | | | | **request**(12) 53:15 56:2 56:16 56:25 57:19 57:23 68:3 69:1 69:12 90:4 98:2 250:20 | | **rift**(1) 58:12 | |
| **refer**(3) 15:14 43:24 233:18 | | **relies**(1) 165:12 | | | | | |
| **reference**(10) 26:3 27:8 29:13 166:16 168:22 181:7 209:11 212:12 216:18 217:1 | | **relinquish**(1) 67:15 | | **requested**(1) 15:17 | | | |
| | | **rely**(26) 118:8 118:24 119:5 139:11 139:15 140:4 165:15 177:10 183:13 192:1 192:17 199:3 199:7 201:12 201:16 227:6 227:13 227:21 228:10 229:7 252:19 253:9 253:19 256:11 256:15 257:13 | | **requesting**(2) 67:23 253:23 | | | |
| **referenced**(1) 150:21 | | | | **requests**(9) 31:14 53:9 53:10 53:12 85:16 85:24 86:3 90:7 97:19 | | | |
| **references**(1) 213:4 | | | | | | | |
| **referred**(7) 43:7 104:12 106:21 108:8 111:3 174:2 180:16 | | **relying**(1) 117:15 | | | | | |
| | | **remain**(2) 19:1 256:22 | | **require**(5) 23:21 30:16 77:15 78:1 78:3 | | | |
| **referring**(11) 31:24 110:10 121:22 134:18 140:24 163:24 168:10 221:21 236:25 | | **remaining**(4) 23:24 141:21 206:23 257:21 | | | | | |
| | | **remarkably**(2) 57:6 57:8 | | | | | |
| **refers**(3) 41:17 142:5 234:2 | | **remedial**(5) 59:23 61:1 61:2 79:6 79:7 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **right**(231) 14:9 14:22 18:22 19:2 19:2 28:3 30:10 36:14 38:1 38:9 38:14 39:24 41:24 43:4 44:20 47:1 47:18 48:2 53:16 66:21 66:22 67:15 68:22 70:13 71:2 71:5 71:17 71:20 72:15 73:19 74:8 74:15 74:20 75:4 75:10 75:14 77:20 78:6 79:6 79:16 79:19 79:21 80:1 81:13 81:15 81:24 82:1 82:17 82:21 83:3 83:7 84:3 84:7 84:11 84:15 84:21 85:3 85:6 86:10 86:14 87:11 87:22 88:1 88:2 88:14 89:9 89:16 89:23 98:16 98:25 100:14 100:17 101:9 101:11 104:4 109:9 110:14 120:22 120:25 125:1 125:7 132:1 132:12 137:16 139:25 140:20 143:2 144:1 145:21 146:10 150:22 151:22 152:4 153:17 154:16 155:12 160:13 161:1 161:15 162:5 162:24 163:10 166:1 168:3 168:20 169:7 171:17 173:15 173:23 174:3 174:9 175:2 175:4 175:13 175:17 176:5 176:8 176:10 176:21 177:7 177:11 177:17 178:21 179:3 179:17 180:22 181:6 181:8 183:7 183:14 184:20 186:23 187:16 188:6 188:14 188:23 189:2 189:4 189:7 189:12 189:13 189:16 189:22 190:17 191:2 191:2 192:11 193:23 194:3 197:20 199:5 199:22 200:4 200:7 200:12 201:12 201:13 201:16 201:17 201:23 202:2 202:3 202:10 202:17 202:23 203:1 203:10 204:16 204:16 205:2 205:21 206:9 206:18 207:1 207:10 208:5 208:19 209:9 212:3 212:5 212:8 213:5 213:21 214:2 214:3 214:24 215:5 215:14 216:19 217:4 217:8 217:20 218:9 218:12 221:14 222:5 223:16 224:13 224:25 225:2 226:3 226:11 227:10 228:3 228:13 228:16 228:17 230:4 231:11 232:2 232:13 233:6 234:1 234:3 234:13 234:20 236:1 236:20 236:24 238:12 239:11 239:18 240:10 240:15 246:5 246:12 249:19 253:3 254:4 256:6 | **right-hand**(3) 66:12 66:14 68:4 | **rightly**(1) 49:13 | **rights**(25) 32:9 32:16 32:21 41:18 41:25 43:7 45:5 46:1 46:3 46:7 46:17 46:23 46:24 47:3 47:19 60:11 60:18 60:19 74:2 76:14 76:18 76:23 94:3 174:17 181:23 | **rings**(1) 245:18 | **rise**(4) 13:2 171:5 224:15 246:14 | **risk**(15) 103:11 103:17 103:18 103:21 103:23 104:9 104:10 104:11 104:15 105:3 105:10 107:22 107:25 245:15 255:17 | **robert**(5) 3:37 6:34 9:30 10:37 11:40 | **rochester**(1) 8:22 | **rockefeller**(1) 3:40 | **rodney**(1) 2:16 | **rogers**(1) 9:22 | **roitman**(1) 5:39 | **role**(1) 115:24 | **ron**(6) 17:1 70:14 70:22 103:18 108:9 118:13 | **ronald**(1) 1:24 | **room**(1) 62:14 | **rosenblatt**(1) 3:36 | **rosenman**(2) 10:38 11:41 | **rosenstein**(4) 73:2 73:2 73:4 73:9 | **rosner**(1) 10:29 | **rothschild**(1) 4:42 | **rough**(2) 14:7 247:24 | **roughly**(2) 170:4 196:19 | **routinely**(2) 108:19 140:7 | **royal**(2) 9:21 9:21 | **rudnick**(2) 4:29 6:31 | **rule**(48) 22:2 23:19 23:21 28:20 28:21 28:22 28:23 29:2 29:5 29:7 29:8 30:6 30:6 30:18 30:19 30:21 30:23 30:24 31:2 30:9 31:6 33:4 34:24 35:13 42:19 59:2 67:9 69:13 69:15 70:4 84:21 85:17 85:21 85:22 87:5 97:17 109:3 139:16 140:5 251:7 251:17 251:10 251:11 252:20 253:2 253:2 253:5 256:3 256:4 | **ruled**(2) 130:4 134:24 | **rulemaking**(3) 21:16 51:18 52:3 | **rules**(78) 21:14 21:22 21:23 22:5 22:9 22:16 22:18 22:19 22:20 22:21 23:1 23:6 23:9 24:1 24:4 27:20 27:20 28:1 28:1 28:18 28:25 29:3 29:4 29:9 29:15 29:16 29:22 30:3 30:11 30:15 33:7 35:1 37:6 37:9 42:12 42:13 46:1 46:22 48:22 49:2 49:11 50:22 50:23 51:2 51:19 51:20 52:5 53:2 53:12 56:14 56:20 59:11 67:7 69:24 73:22 74:3 74:8 74:10 74:11 74:14 74:18 75:14 75:16 75:25 76:8 76:20 77:21 78:10 80:5 80:10 80:20 85:16 90:5 90:6 92:2 92:8 97:1 251:7 | **rules?"**(1) 36:25 | **ruling**(10) 90:7 94:17 130:22 131:20 139:12 139:20 139:21 145:21 165:19 222:23 | **run**(5) 109:18 126:15 247:19 257:7 257:11 | **running**(1) 75:23 | **rushabh**(1) 9:43 | **russano**(1) 2:6 | **saavedra**(1) 8:32 | **sachs**(2) 7:42 7:42 | **safe**(1) 202:11 | **said**(69) 14:7 34:2 45:4 46:3 46:23 55:15 58:3 78:9 79:24 80:16 81:10 84:6 92:17 92:18 93:6 95:6 108:11 111:23 112:16 115:25 121:17 124:24 130:21 131:19 131:21 136:8 140:19 146:20 150:3 150:5 150:5 152:3 155:18 156:13 161:7 168:1 171:17 172:12 176:17 176:24 179:11 179:13 186:24 197:16 201:9 201:10 201:14 207:16 208:20 209:6 209:15 215:23 218:14 221:11 222:21 224:11 227:17 230:19 231:14 232:17 237:15 238:13 239:7 241:11 241:12 243:8 252:25 254:15 254:25 | **sake**(1) 55:13 | **sales**(1) 28:24 | **sally**(1) 3:14 | **same**(47) 23:14 46:22 53:20 56:4 56:6 62:16 62:17 68:2 74:21 75:4 75:19 75:21 92:15 94:4 112:10 127:19 134:9 134:20 134:22 136:9 141:8 141:8 144:10 145:18 147:16 152:20 157:12 157:14 159:15 165:12 167:19 167:23 176:5 178:9 187:11 187:21 192:24 194:11 194:15 194:22 194:24 194:25 195:9 202:23 209:24 217:5 247:6 | **satisfactory**(1) 107:20 | **satisfy**(2) 62:11 77:17 | **saturday**(1) 252:10 | **saw**(8) 45:23 194:16 199:23 199:24 229:2 252:18 252:18 254:16 | **say**(56) 15:13 24:3 24:18 43:14 47:22 58:20 61:22 62:7 62:9 63:1 73:4 74:7 74:9 78:21 82:7 83:15 83:19 83:21 89:3 94:6 96:14 98:8 114:1 115:10 116:1 128:11 134:4 138:21 141:22 157:14 157:2 160:6 163:6 164:10 172:1 177:5 180:4 184:12 184:14 184:15 192:17 202:5 202:1 203:2 204:6 208:24 209:2 210:13 217:24 218:13 220:9 225:12 230:8 238:17 245:22 254:23 | **saying**(11) 30:23 49:6 50:4 56:3 58:1 58:16 69:16 70:3 98:5 219:18 254:19 | **says**(25) 16:11 16:11 29:13 36:17 44:10 44:13 44:19 48:16 48:19 49:3 59:2 62:22 84:5 84:8 105:24 111:17 125:17 125:17 148:22 150:18 167:10 178:17 179:1 241:7 253:20 | **scenario**(30) 111:16 112:3 112:22 112:23 133:21 134:4 134:5 134:12 142:5 142:18 143:9 143:14 144:6 148:14 148:21 149:20 169:20 188:4 212:24 212:25 214:5 216:25 217:16 218:1 | **scenarios**(56) 111:19 112:18 113:15 127:21 130:7 130:8 130:11 134:10 136:4 136:5 136:9 136:12 136:17 136:17 137:6 137:18 138:10 138:14 138:16 138:17 139:1 143:1 143:16 143:17 143:18 143:21 148:4 148:13 148:14 148:15 148:19 148:22 163:16 164:2 164:9 164:11 164:17 164:20 172:5 202:25 213:4 213:6 213:7 214:15 214:22 214:25 218:5 225:6 226:15 228:3 228:5 237:7 248:11 257:8 257:9 | **schaible**(1) 2:9 | **schedule**(1) 90:2 | **schlerf**(1) 4:43 | **scholer**(1) 11:35 | **school**(2) 103:2 103:2 | **schott**(1) 9:26 | **schotz**(1) 1:31 | **schuylkill**(1) 1:41 | **schwartz**(1) 9:30 | **schwinger**(1) 3:37 | **science**(1) 102:23 | **scientific**(1) 251:12 | **scope**(5) 99:22 222:8 237:16 238:3 240:3 | **scorched**(1) 107:9 | **scotland**(1) 9:21 9:21 | **scott**(2) 7:43 9:47 | **screen**(12) 36:8 66:2 68:12 91:14 102:5 102:16 105:19 134:18 135:19 140:22 187:211:12 | **seal**(1) 17:15 | **seat**(1) 115:1 | **seated**(5) 13:2 19:4 171:5 224:16 246:15 | **second**(23) 15:3 31:18 31:19 57:3 71:4 86:7 86:7 86:12 93:11 130:25 143:2 154:7 154:8 157:20 158:6 158:11 160:10 163:8 181:10 181:13 183:25 193:15 234:4 | **second-largest**(1) 69:9 | **section**(23) 32:4 35:1 41:14 57:5 60:9 60:19 74:24 76:3 76:9 76:13 76:22 77:8 77:8 121:19 186:12 199:2 199:7 199:11 199:18 199:21 200:7 233:18 247:12 | **sector**(1) 106:22 | **security**(1) 21:19 | **see**(99) 27:4 27:7 29:13 32:2 32:4 32:11 36:15 38:4 38:8 38:14 39:19 40:13 40:23 41:14 41:17 41:19 44:13 44:15 44:16 44:22 44:23 48:2 48:11 48:14 48:18 49:5 52:2 53:2 53:3 54:9 54:11 57:2 57:4 57:7 57:13 60:7 60:23 61:9 62:7 66:16 68:16 70:2 70:3 74:25 80:25 92:8 92:9 94:20 111:16 111:17 114:7 114:15 116:18 116:22 128:1 130:7 130:8 131:15 132:9 133:24 135:2 136:19 137:18 138:2 139:18 138:10 141:3 143:3 150:20 159:4 159:19 163:21 167:3 168:15 168:22 169:14 173:5 177:1 178:8 182:10 190:14 191:12 195:4 195:7 195:11 195:18 198:21 205:6 205:8 206:16 208:14 212:10 213:1 214:8 214:20 216:11 218:22 232:16 234:4 234:7 | **seeing**(1) 115:9 | **seek**(4) 30:14 120:13 154:20 165:24 | **seeking**(5) 21:21 30:18 55:23 87:18 210:14 | **seemed**(2) 241:25 254:18 | **seems**(1) 134:6 | **seen**(9) 67:12 72:20 74:23 81:23 81:25 91:7 114:24 116:13 149:9 | **seife**(1) 3:35 | **seiler**(2) 3:4 13:14 | **select**(1) 169:15 | **selected**(4) 31:23 43:10 43:12 157:4 | **selecting**(2) 126:2 241:20 | **self**(1) 126:7 | **sell**(5) 22:8 30:8 61:22 62:22 70:2 | **seller**(1) 22:10 | **seminars**(3) 104:13 104:16 104:25 | **senior**(1) 152:12 | **sense**(40) 30:25 76:5 126:5 256:14 | **sensitivities**(10) 126:15 126:23 168:5 168:6 168:13 247:19 248:15 249:14 249:16 250:6 | **sensitivity**(3) 17:10 249:15 250:3 | **sentence**(30) 28:8 40:23 91:19 174:12 178:8 178:9 178:13 178:24 179:5 179:23 180:4 181:15 181:16 182:4 191:12 193:16 194:2 194:2 194:5 198:15 199:23 200:14 201:16 206:9 206:10 219:4 219:9 222:9 221:11 234:4 | **senter**(21) 3:12 3:13 16:20 16:20 16:24 64:19 64:21 64:21 64:21 64:23 65:22 66:5 66:7 66:10 68:8 68:14 68:18 70:8 89:12 89:19 97:8 | **senter's**(2) 89:14 90:11 | **separate**(2) 96:18 138:4 | **separated**(1) 137:25 | **separately**(2) 76:19 137:20 | **sequence**(2) 103:11 103:12 | **serengeti**(2) 8:34 8:35 | **series**(2) 103:10 104:13 | **seriously**(1) 107:19 | **serve**(2) 23:9 33:21 | **served**(3) 25:9 31:10 44:21 | **serves**(1) 51:6 | **service**(2) 1:40 1:47 | **services**(5) 1:40 25:17 105:16 105:22 | **set**(36) 38:11 49:14 51:2 71:4 71:9 73:11 104:8 104:12 117:10 122:12 126:10 126:14 126:22 127:21 128:1 128:2 136:19 137:6 147:16 155:11 155:15 155:17 157:10 157:11 158:6 158:11 162:14 168:17 168:17 168:19 168:21 169:21 202:13 208:16 221:18 221:21 | **sets**(7) 70:24 70:25 122:6 126:17 126:19 168:15 169:19 | **settle**(5) 105:12 120:13 165:24 166:6 | **settled**(1) 244:24 | **settlement**(24) 103:24 105:13 106:24 107:7 107:8 107:20 107:21 119:6 119:20 119:24 120:14 120:14 145:4 166:1 166:16 167:1 167:12 167:12 170:2 170:7 170:14 225:2 225:5 225:19 | **settlements**(1) 169:24 | **seven**(10) 29:20 67:2 69:10 87:19 122:12 123:22 124:15 126:6 126:10 126:11 | **seventy**(3) 205:18 206:25 207:3 | **seventy-five**(1) 170:25 | **several**(7) 82:25 108:3 125:16 130:3 134:8 136:9 184:12 | **shachar**(1) 9:13 | **shall**(1) 60:20 | **shamah**(1) 6:24 | **shannon**(1) 7:37 | **share**(1) 225:4 | **shares**(4) 48:17 49:12 61:22 62:23 | **shaya**(1) 8:22 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| sheet(7) 230:15 231:8 231:23 232:8 232:1 242:24 250:1 | | sir(184) 19:9 80:3 90:11 99:23 100:9 100:17 101:14 102:16 102:24 103:7 103:12 104:18 105:15 106:3 106:7 106:17 108:21 | | solvent(7) 133:17 219:13 219:15 219:19 219:20 221:1 230:15 | | specialized(1) 251:12 specific(3) 15:19 186:3 242:21 specifically(3) 40:22 121:4 186:2 |

sheffield(1) 10:44
sheron(1) 10:28
sherri(1) 258:10
shift(2) 52:16 59:6
shmikler(1) 11:32
short(3) 224:5 246:8 256:1
shorter(1) 135:3
should(19) 17:18 30:3 31:20 36:18 52:5 52:6 87:17 94:18 121:19 128:22 141:22 169:4 176:2 179:19 210:6 231:1 238:24 252:12 253:2
shouldn't(1) 98:5
should've(1) 45:13
show(5) 68:4 71:17 93:12 128:16 139:13
showed(5) 66:13 81:17 96:5 125:3 257:8
showing(5) 56:1 97:7 97:8 110:22 232:7
shown(4) 205:18 217:9 231:22 236:5
shows(7) 53:16 97:16 97:18 109:5 135:16 213:9 253:19

side(11) 17:17 66:12 66:14 68:4 96:4 113:3 155:5 155:5 160:2 161:21 197:23

sidley(2) 1:22 7:4
siegel(1) 4:30
sieger(1) 11:42
signed-off(1) 64:5
significance(1) 111:25
significant(7) 45:22 52:13 58:7 150:8 151:6 182:25 183:7

significantly(3) 107:12 107:15 158:16
silent(2) 204:17 204:22
silver(2) 11:8 11:8
silverstein(1) 4:14
simes(1) 10:20
similar(7) 14:17 39:25 66:13 71:16 93:25 179:6 184:1

similarly(1) 112:12
simple(11) 22:22 61:21 110:1 110:7 110:21 111:20 113:4 113:7 135:21 144:11 187:2
simpler(4) 62:22 113:20 113:24 129:16
simplest(1) 131:14
simplification(2) 113:14 114:2
simplified(1) 114:3
simplify(2) 113:12 218:7
simply(2) 94:14 196:25
sina(1) 12:13
since(10) 35:9 56:23 82:2 85:14 152:3 152:6 176:19 223:17 237:12 248:2

single(8) 42:10 80:8 80:10 80:12 96:23 148:14 154:5 197:1

sir(184) 19:9 80:3 90:11 99:23 100:9 100:17 101:14 102:16 102:24 103:7 103:12 104:18 105:15 106:3 106:7 106:17 108:21 109:11 110:1 110:10 111:19 112:13 113:1 114:6 114:11 114:17 114:19 114:23 115:12 115:19 116:7 116:13 116:16 116:24 116:23 117:1 117:15 117:25 119:14 120:15 120:4 121:5 121:24 122:10 122:20 123:14 123:22 124:8 125:10 125:24 126:21 127:15 128:3 128:11 129:8 129:15 131:11 132:6 133:5 133:6 133:25 134:13 135:9 135:16 135:22 136:4 136:16 137:1 140:18 142:23 142:17 144:14 144:20 145:6 145:11 145:24 146:6 147:25 148:24 150:10 150:20 151:19 151:19 151:24 152:7 152:20 153:14 154:14 156:6 157:1 158:17 159:9 160:2 160:9 160:15 162:2 162:16 163:3 163:12 163:24 164:15 164:22 164:25 166:22 167:168:10 169:22 170:5 170:9 171:2 172:16 172:20 173:1 173:15 173:17 174:11 175:17 175:20 176:5 176:11 177:3 178:5 180:1 180:9 180:13 180:22 181:4 181:7 181:15 181:19 182:11 182:13 182:16 183:184:6 185:4 185:17 186:12 186:23 187:7 190:5 190:14 191:2 191:9 191:14 193:6 193:12 194:7 194:9 194:19 196:1 196:8 197:7 198:9 198:13 198:21 199:3 200:16 201:17 204:10 205:7 206:16 208:14 209:2 216:4 216:7 216:10 216:23 219:1 219:9 225:25 232:20 233:21 240:13 244:1 247:1 248:2 248:7 248:14 248:15 249:5 250:16 250:18

sit(2) 64:16 81:3
sits(1) 79:9
situation(9) 35:2 56:6 148:16 187:9 187:18 188:22 219:18 232:13 234:20

situations(2) 109:14 228:1
six(19) 29:21 60:13 79:25 80:2 80:3 80:8 80:18 81:8 83:23 84:5 84:6 84:6 84:8 87:19 163:16 163:25 163:25 164:2 164:9

sixty(1) 207:4
skadden(1) 8:6
sketch(1) 162:23
skill(1) 251:15
skills(1) 255:8
skips(1) 143:3
slate(1) 8:6
slater(1) 11:29
slide(81) 36:12 36:16 36:19 36:20 37:23 43:19 48:1 54:4 54:10 65:24 66:12 66:13 67:3 67:25 68:2 68:2 102:12 102:15 102:16 102:16 105:15 105:18 105:19 110:9 110:12 110:21 110:24 111:2 113:12 121:21 122:1 122:15 122:18 122:20 123:13 123:13 124:13 124:14 124:3 124:6 125:20 125:22 127:4 127:7 129:6 129:11 134:15 134:17 134:17 134:18 135:16 135:18 135:18 136:22 137:1 140:22 146:8 146:12 148:6 149:7 150:17 150:21 153:22 155:4 155:7 158:24 159:4 159:6 159:8 163:19 163:20 163:21 163:22 167:3 167:3 167:8 168:6 168:9 168:14 197:7 214:15

slides(12) 66:2 68:7 101:21 102:1 102:4 110:5 110:7 128:15 128:16 146:5 149:6 187:2
slightly(1) 113:20
slow(1) 37:13
small(2) 15:8 134:6
smaller(2) 232:7 232:11
smith(2) 12:8 12:8
so-called(2) 59:23 82:19
solve(4) 61:12 61:15 62:24 63:6
solvency(7) 207:17 208:11 209:11 209:12 209:17 229:10 242:25

solvent(7) 133:17 219:13 219:15 219:19 219:20 221:1 230:15

some(103) 14:16 15:7 17:10 19:22 19:23 21:24 22:13 23:15 29:1 30:8 33:21 43:22 46:3 46:10 48:22 49:9 51:5 51:16 54:10 55:6 58:2 61:10 62:13 63:1 64:9 70:23 73:10 78:18 81:12 83:13 84:5 84:12 88:1 95:19 96:7 96:15 96:25 97:6 98:3 100:22 101:21 102:9 104:22 105:4 105:12 105:13 105:15 110:5 110:7 120:18 126:9 127:2 128:15 128:15 138:16 138:17 145:24 146:146:6 148:7 149:18 150:14 153:17 153:23 156:14 159:19 159:20 162:24 165:22 166:23 168:5 174:6 176:14 179:14 184:13 184:19 184:21 185:9 190:4 190:7 196:3 208:25 211:21 213:18 215:13 215:15 225:230:21 234:16 234:17 234:21 236:18 238:8 238:17 246:21 246:25 247:3 247:9 250:21 252:23 255:20 256:21 256:22

somebody(2) 61:20 62:15
someone(10) 23:7 23:8 24:2 58:22 62:22 105:8 115:6 118:13 203:21 231:21

something(22) 15:13 30:17 33:18 66:20 78:3 79:15 81:10 91:17 115:6 160:20 175:7 184:2 189:14 195:14 201:4 201:25 211:20 220:9 221:25 223:4 241:18 242:14

sometimes(14) 30:5 61:16 62:16 109:20 109:20 161:12 161:19 237:3 240:11 240:15 240:15 241:7 241:18

somewhat(9) 41:16 52:16 122:24 122:24 124:11 124:15 149:25 161:22 193:16

somewhere(1) 202:11
sophomore(1) 24:12
sorry(16) 17:7 28:6 65:11 116:19 146:17 167:21 175:19 179:12 181:6 181:7 191:9 197:21 198:8 243:5 244:12 249:9

sort(14) 22:19 58:15 59:3 75:21 76:2 77:4 88:13 107:18 115:4 132:8 137:5 161:17 161:24 162:23

sorts(1) 85:8
sottile(105) 3:47 117:19 117:21 120:16 120:16 120:23 139:7 139:7 139:19 139:24 140:9 140:14 145:17 145:22 165:11 165:15 171:7 171:9 172:25 177:19 177:22 178:1 178:2 179:12 179:18 181:1 181:2 182:20 185:8 185:14 185:16 193:2 193:3 195:1 196:7 203:18 203:19 207:22 207:24 210:1 211:4 211:8 211:21 216:2 220:16 220:20 221:8 221:9 221:16 224:3 224:7 224:9 224:17 225:11 225:15 225:15 225:16 227:25 228:21 228:22 229:19 230:2 231:5 232:23 232:24 235:10 236:14 236:14 239:6 239:8 239:19 239:20 239:21 239:25 240:1 240:22 240:23 241:9 243:6 243:12 243:13 243:18 243:19 244:9 244:12 244:13 246:21 247:14 248:5 248:18 248:21 249:9 249:12 250:25 251:1 251:4 252:22 252:8 252:15 252:17 253:4 253:8 254:15 256:10

sought(1) 255:20
sound(3) 1:46 241:14 258:5
source(2) 53:25 229:6
sources(1) 229:2
south(2) 1:27 5:16
spaeder(4) 3:44 5:44 120:17 139:8
speak(5) 152:10 161:13 161:15 175:18 253:4

speaking(3) 30:4 71:4 95:22
special(3) 4:4 8:4 120:17

specialized(1) 251:12
specific(3) 15:19 186:3 242:21
specifically(3) 40:22 121:4 186:2
specifics(1) 54:3
speculative(1) 78:7
speed(1) 65:23
spell(1) 19:6
spend(1) 161:23
spent(2) 71:8 148:7
sperling(1) 11:29
split(1) 30:9
spoke(2) 46:18 235:11
spoken(1) 152:7
spot(1) 172:6
spread(4) 155:15 155:17 157:10 168:21
spreadsheet(2) 257:7 257:11
square(1) 2:16
sri(7) 103:14 103:20 104:1 104:3 104:6 104:8 108:11

staff(25) 43:13 46:16 46:18 46:23 47:20 47:22 56:19 58:25 62:11 64:1 64:4 64:11 82:21 82:23 83:3 83:7 83:9 83:11 83:13 83:16 95:14 95:21 96:9 96:25 97:4

staff's(1) 47:2
stake(18) 35:23 39:21 42:11 42:16 45:20 45:21 45:23 47:5 47:17 58:7 58:22 61:15 61:16 61:18 65:8 66:20 68:24 68:24
stakes(1) 69:8
stand(3) 100:14 100:17 249:2
standard(2) 34:21 204:12
standing(5) 19:1 42:23 76:18 222:8 222:15
standout(1) 135:9
standpoint(2) 58:19 194:20
stands(1) 37:21
stanford(8) 102:22 103:9 103:10 103:15 103:16 105:3 108:9 108:11

stanley(1) 8:27
stargatt(1) 5:4
stark(1) 6:34
start(19) 38:1 38:12 91:20 97:2 102:9 102:18 108:12 121:5 129:5 131:13 167:9 207:25 216:12 239:15 239:15 239:21 239:22 239:23 257:19

started(3) 96:13 126:8 206:2
starting(3) 37:23 167:6 239:10
starts(9) 63:1 117:7 142:20 178:10 180:6 181:11 187:19 191:7 206:24

state(14) 19:5 32:6 32:8 32:23 48:25 186:2 186:5 186:19 206:7 209:25 229:17 229:22 230:11 231:18

stated(13) 45:16 121:18 185:18 189:18 198:2 199:1 199:16 203:25 204:3 204:3 225:8 230:7 230:10

statement(6) 29:13 48:22 50:4 90:12 177:16 208:9

statements(2) 48:15 158:20
states(4) 1:1 1:18 44:11 251:11
stating(1) 57:13
station(7) 22:24 23:12 23:13 28:11 67:3 69:10 69:21

stations(19) 20:5 20:21 23:7 23:8 23:17 23:18 23:22 23:23 26:19 28:11 28:19 33:13 35:8 38:8 38:17 38:20 38:21 67:2 69:10

station's(2) 29:23 29:24
status(6) 50:25 56:8 56:10 88:1 88:3 88:24
status-quo(2) 56:3 56:6
statutes(1) 21:24
stay(1) 118:21

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| staying(3) 28:6 43:19 43:20 | | subjective(1) 204:12 | | suttonbrook(2) 6:4 6:4 | | test(17) 126:19 147:14 147:17 147:20 |
| ste(1) 1:34 | | subjectively(1) 210:3 | | sworn(4) 19:3 90:12 100:18 100:19 | | 147:21 157:1 197:1 204:11 209:17 228:25 |
| stearn(1) 2:15 | | submission(1) 57:5 | | symmetrical(2) 125:14 125:19 | | 232:8 242:24 243:15 247:6 249:20 249:23 |
| stein(1) 2:30 | | submit(4) 252:1 253:18 254:7 255:22 | | system(1) 23:5 | | 249:24 |
| step(151) 78:13 100:9 109:6 123:8 123:11 | | submitted(2) 62:3 67:13 | | systematic(1) 115:8 | | testified(35) 76:1 77:3 79:16 80:4 88:25 |
| 123:17 123:20 124:4 124:10 124:13 127:1 | | subordinate(2) 174:16 181:22 | | systems(1) 20:5 | | 91:3 97:11 106:7 106:9 140:6 151:20 |
| 127:18 127:19 127:19 127:20 129:6 129:8 | | subordinating(1) 191:18 | | tab(18) 40:8 60:6 74:22 82:3 89:10 101:24 | | 162:17 183:11 185:2 199:19 221:3 221:4 |
| 129:19 131:2 131:3 133:12 134:14 134:15 | | subordination(22) 142:4 149:9 149:14 | | 116:15 116:18 116:19 116:19 116:22 | | 223:9 223:14 223:15 223:21 224:18 225:22 |
| 134:21 135:3 135:4 135:5 135:13 135:15 | | 189:25 190:12 191:1 192:3 192:6 192:8 | | 128:19 128:22 145:9 164:25 165:1 172:18 | | 227:4 232:16 234:24 235:17 240:18 241:4 |
| 135:15 136:2 136:2 136:4 136:4 136:8 | | 192:15 192:21 192:23 194:12 194:16 195:2 | | 211:14 | | 243:3 245:7 253:16 255:17 256:10 257:1 |
| 136:14 136:14 136:25 136:25 137:10 | | 195:21 196:5 196:12 233:20 233:24 247:24 | | table(11) 39:15 39:17 57:3 136:19 137:4 | | |
| 137:10 137:11 137:19 137:19 138:3 138:13 | | 248:10 | | 139:3 139:6 141:4 141:4 141:6 148:7 | | testify(3) 98:5 140:1 251:16 |
| 138:18 138:23 141:14 141:18 142:5 142:6 | | | | | | testifying(4) 44:9 90:24 102:11 237:3 |
| 142:22 142:22 146:9 146:9 146:17 146:18 | | subs(9) 129:24 133:19 133:20 136:1 | | tables(1) 141:13 | | testimony(36) 13:9 44:4 68:12 70:25 71:8 |
| 146:18 146:21 146:25 147:1 147:2 147:3 | | 136:14 138:23 146:24 218:3 249:23 | | take(61) 13:9 18:11 18:14 27:1 42:19 | | 71:23 72:24 77:15 78:17 79:22 90:25 |
| 147:5 147:17 147:19 148:17 148:18 150:1 | | | | 43:21 48:7 49:10 56:24 59:7 60:21 62:13 | | 101:21 108:23 117:23 129:17 139:8 185:18 |
| 173:4 173:11 173:11 173:12 173:14 174:1 | | subsection(3) 122:7 122:8 200:6 | | 69:6 70:6 70:10 74:18 74:21 74:23 76:9 | | 186:22 186:23 208:16 224:23 225:24 |
| 174:15 174:16 174:17 174:20 174:22 | | subsequent(6) 30:15 46:15 72:6 108:4 | | 76:18 80:15 81:12 82:11 82:3 83:5 83:16 | | 228:11 239:17 240:12 241:16 242:3 244:14 |
| 174:25 175:1 175:5 175:7 175:15 176:3 | | 128:5 151:4 | | 83:20 84:1 84:13 89:9 89:25 96:22 98:6 | | 250:6 251:5 251:11 251:17 251:18 253:1 |
| 178:14 178:16 178:20 179:1 179:3 179:6 | | | | 98:9 100:11 100:12 102:25 141:12 150:15 | | 253:18 254:1 |
| 179:24 180:10 181:20 181:21 181:22 | | subsequently(3) 107:20 133:19 158:3 | | 153:25 154:1 161:13 161:18 171:3 191:9 | | |
| 181:23 182:2 182:3 182:6 182:7 185:24 | | subsidiaries(10) 131:10 142:2 143:1 | | 209:3 211:20 214:10 214:18 223:2 224:5 | | tests(28) 134:1 131:7 131:8 131:9 133:13 |
| 193:18 197:10 197:13 197:17 197:19 198: | | 217:11 217:13 217:19 218:18 219:15 | | 225:17 231:24 238:11 238:13 238:17 | | 133:15 133:17 133:20 135:5 146:18 146:22 |
| 198:18 198:25 200:15 200:18 200:20 | | 219:20 220:25 | | 238:22 239:1 242:5 252:22 253:20 | | 146:24 147:5 207:17 208:11 209:11 |
| 200:23 201:3 202:8 202:19 203:3 203:6 | | subsidiary(2) 222:9 222:14 | | | | 209:12 229:10 229:21 230:4 230:21 233:2 |
| 204:7 204:8 205:5 205:11 206:14 206:21 | | substance(1) 101:13 | | taken(11) 30:5 30:6 35:15 44:2 79:7 96:16 | | 233:6 233:8 246:22 247:6 248:9 249:17 |
| 207:9 207:13 211:1 212:15 212:17 214:16 | | substantial(6) 47:4 47:11 58:22 65:8 69:8 | | 106:12 186:8 187:6 189:18 237:18 | | |
| 214:25 215:18 216:14 217:1 217:13 217:1 | | 92:2 | | | | text(2) 57:12 174:7 |
| 217:18 218:18 219:13 219:13 219:16 | | | | takes(6) 61:8 61:23 62:15 73:4 73:5 238:8 | | than(58) 14:16 30:17 40:3 40:12 42:21 |
| 219:16 223:2 223:2 235:13 235:14 235:19 | | succeed(1) 112:17 | | taking(7) 36:23 42:1 46:16 62:15 77:12 | | 43:9 48:12 51:17 53:10 56:10 64:4 65:17 |
| 250:16 | | succeeded(1) 113:17 | | 92:11 248:8 | | 73:16 75:2 75:2 91:25 106:2 107:12 |
| | | success(2) 147:7 245:7 | | | | 107:16 113:11 115:3 130:1 135:3 135:8 |
| stephen(1) 4:15 | | successful(1) 191:17 | | talk(8) 52:16 62:5 95:23 114:6 115:12 | | 135:12 135:13 138:7 142:13 151:24 152:17 |
| steps(6) 68:21 69:20 79:6 79:7 142:22 | | such(16) 27:10 30:1 33:8 51:5 60:18 | | 152:15 152:17 210:15 | | 154:12 155:20 156:11 157:3 157:16 158:8 |
| 212:20 | | 60:20 60:20 60:21 60:23 121:18 125:14 | | | | 159:23 159:24 163:7 166:25 167:11 167:15 |
| | | 192:6 210:1 227:21 237:6 241:8 | | talked(3) 79:21 99:15 129:17 | | 167:17 167:19 170:5 170:15 175:10 |
| sticking(1) 200:12 | | | | talking(11) 61:14 71:9 86:21 96:3 99:13 | | 175:16 204:6 207:12 215:22 224:11 225:5 |
| still(9) 59:20 68:25 103:15 110:20 141:1 | | sued(2) 105:9 107:5 | | 139:17 148:7 195:13 199:24 228:1 249:22 | | 229:7 238:13 238:18 255:23 256:2 |
| 150:7 151:6 201:8 250:20 | | sufficient(6) 75:5 251:17 251:19 252:2 | | | | |
| | | 255:13 257:12 | | taylor,llp(1) 5:5 | | thank(74) 15:3 17:3 17:21 19:9 36:10 |
| stock(15) 34:8 34:11 34:14 34:19 42:22 | | | | teach(1) 24:10 | | 64:18 64:19 66:9 70:8 70:14 70:18 70:18 |
| 48:17 48:20 48:24 49:12 51:12 52:11 74: | | suggest(1) 237:17 | | teaching(7) 24:6 24:8 24:9 24:13 104:14 | | 82:9 90:17 90:21 93:21 99:8 100:7 100:9 |
| 75:6 91:24 94:8 | | suite(5) 3:15 3:28 3:49 4:38 5:17 | | 104:22 104:24 | | 100:10 101:3 101:20 102:7 109:11 114:6 |
| | | sullivan(2) 4:35 4:37 | | | | 115:12 121:2 122:10 123:1 131:11 132:6 |
| stockbroker(1) 61:22 | | sum(1) 215:7 | | technical(1) 251:12 | | 133:5 134:13 140:14 140:16 143:24 145:22 |
| stockholder(3) 42:1 42:10 58:7 | | summarize(2) 97:14 199:11 | | techniques(1) 108:12 | | 150:10 151:19 154:14 162:2 163:12 171:2 |
| stockholders(3) 40:1 41:10 41:11 | | summarizes(1) 164:22 | | telecom(1) 107:4 | | 171:7 177:5 178:1 180:21 181:1 182:21 |
| stockholder's(1) 43:6 | | summarizing(1) 199:14 | | telecommunications(2) 24:10 58:10 | | 193:2 196:20 201:19 203:18 213:7 224:3 |
| stocks(1) 49:17 | | summary(3) 137:9 199:4 201:5 | | telephonic(8) 5:31 6:1 7:1 8:1 9:1 10:1 | | 225:15 228:21 233:14 240:22 243:11 |
| stop(1) 143:2 | | sums(1) 215:7 | | 11:1 12:1 | | 243:18 244:8 244:19 246:11 246:17 249:1 |
| straight(2) 113:10 137:8 | | supervised(1) 257:1 | | | | 249:7 250:13 250:16 253:3 254:10 254:11 |
| strategy(2) 105:12 107:18 | | supplement(5) 40:18 40:18 40:18 94:11 | | television(13) 20:5 20:8 20:9 20:20 22:23 | | 257:15 257:25 |
| strauss(3) 2:36 8:21 100:21 | | 98:23 | | 23:13 28:11 28:21 28:22 29:7 67:3 69:10 | | |
| street(14) 1:9 1:41 2:17 2:23 3:15 3:28 | | | | 69:21 | | thankfully(1) 106:13 |
| 3:48 4:17 4:25 4:31 4:38 4:45 5:8 5:22 | | supplied(1) 228:7 | | tell(23) 20:25 24:8 28:15 41:9 43:12 48:3 | | thanks(1) 101:2 |
| | | supplying(1) 151:24 | | 66:4 72:9 79:15 80:23 81:4 83:21 83:22 | | |
| strictly(1) 104:1 | | support(11) 89:12 91:15 94:11 98:23 | | 83:23 85:23 104:23 111:22 183:5 211:20 | | |
| strictures(1) 79:3 | | 188:1 195:21 196:12 207:18 208:22 209:1 | | 221:13 238:24 242:11 253:21 | | |
| strike(4) 93:20 94:17 251:4 257:16 | | 209:24 | | | | |
| strohbehn(1) 11:18 | | suppose(1) 220:19 | | telling(4) 102:18 142:19 167:8 254:3 | | |
| stromberg(1) 7:19 | | supposed(1) 24:23 | | tells(2) 45:21 189:15 | | |
| strong(5) 57:13 57:16 58:4 58:16 58:21 | | sure(44) 15:12 20:1 22:14 28:17 29:17 | | ten(2) 171:3 242:1 | | |
| structural(2) 58:18 59:1 | | 32:25 50:2 55:23 56:22 61:4 76:12 79:3 | | ten-minute(1) 224:13 | | |
| structurally(1) 58:18 | | 80:6 81:25 83:14 84:4 92:19 97:23 109:7 | | tend(2) 47:12 161:22 | | |
| structure(14) 22:14 26:21 33:21 39:18 | | 116:17 131:12 141:17 154:12 162:24 | | tended(1) 158:20 | | |
| 62:25 74:5 74:7 74:9 74:13 172:13 219:12 | | 163:19 173:7 183:22 196:10 197:22 197:2 | | tendency(1) 53:16 | | |
| 226:23 244:5 257:6 | | 198:9 202:17 206:18 219:11 221:6 231:1 | | tender(2) 26:1 117:24 | | |
| | | 239:24 242:16 242:16 242:21 246:2 249:1 | | tendered(2) 117:22 120:21 | | |
| structured(4) 37:11 37:16 91:5 91:8 | | 250:19 254:18 | | term(6) 32:10 159:13 159:14 159:24 160:1 | | |
| structures(1) 172:2 | | | | 200:2 | | |
| stuart(1) 9:39 | | surprise(1) 215:21 | | | | |
| studied(1) 103:3 | | surprised(1) 231:2 | | termination(1) 117:7 | | |
| studies(1) 102:24 | | surrender(1) 76:23 | | terms(26) 22:20 36:23 53:4 95:9 109:16 | | |
| sub(2) 130:6 217:10 | | survive(1) 166:13 | | 119:19 122:12 123:5 125:11 125:13 126:9 | | |
| subject(22) 13:24 17:11 18:15 27:22 30:1 | | suspect(1) 83:13 | | 126:12 154:25 157:23 158:11 165:25 166:3 | | |
| 51:21 52:6 101:15 102:10 172:14 173:7 | | sustain(1) 225:14 | | 169:23 176:13 182:14 183:8 183:19 | | |
| 175:17 183:9 184:17 189:24 190:4 197:2 | | sustained(13) 95:1 180:25 193:1 203:17 | | 194:20 202:13 220:5 220:8 | | |
| 223:17 224:21 235:15 256:7 257:3 | | 210:9 215:25 221:15 224:2 228:20 230:1 | | | | |
| | | 235:1 240:21 243:17 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) | | **that**(301) | | **that**(301) | | **that**(301) | |

that(301) 13:8 13:9 13:21 13:24 13:25 14:10 14:18 15:6 15:7 15:10 15:15 15:21 15:24 16:4 16:8 16:18 16:21 16:23 17:2 17:10 17:12 17:17 18:10 18:12 18:14 18:16 18:18 20:5 20:7 20:11 20:15 20:20 21:8 22:7 22:11 22:13 22:14 23:5 23:9 23:10 23:12 23:13 23:25 24:2 24:21 24:22 25:21 26:22 26:23 26:24 27:6 27:22 27:24 28:8 28:9 29:12 29:14 30:3 30:6 30:7 30:11 30:13 30:16 30:20 30:22 30:23 31:3 31:8 31:23 31:24 32:2 32:6 32:8 32:18 32:19 32:23 32:24 33:3 33:18 34:10 34:15 34:18 34:23 35:7 35:9 35:11 35:12 35:15 35:20 35:24 35:25 36:2 36:15 37:2 37:5 37:8 37:9 38:1 38:6 38:14 38:17 38:21 39:5 39:9 39:15 39:17 39:25 40:4 40:15 40:17 40:21 40:23 40:23 40:24 41:17 41:19 42:6 42:9 42:13 42:19 42:21 42:25 43:1 43:1 43:2 43:3 43:9 43:12 43:15 43:16 43:17 43:20 43:24 44:2 44:9 44:13 44:15 44:16 44:19 44:20 44:22 44:25 45:2 45:3 45:4 45:6 45:11 45:16 45:21 46:8 46:9 46:10 46:17 46:18 46:19 46:23 47:1 47:5 47:10 47:20 47:22 48:1 48:3 48:9 48:11 48:14 48:16 48:18 48:23 48:23 49:3 49:5 49:11 49:12 49:16 49:19 49:22 49:22 50:1 50:9 50:11 50:13 50:24 51:2 51:3 51:14 51:22 51:23 52:9 52:11 52:12 52:20 52:21 53:2 53:3 53:5 53:8 53:13 53:16 53:20 53:22 54:23 54:23 55:2 55:2 55:6 55:9 55:11 55:13 55:15 55:18 55:19 55:22 56:1 56:10 56:13 56:17 57:7 57:9 57:10 57:22 58:3 58:4 58:25 59:11 59:12 59:14 59:17 59:19 60:2 60:10 60:14 60:16 60:23 60:25 61:5 61:9 61:15 61:23 61:24 62:12 62:20 62:23 63:1 63:18 63:20 64:7 64:15 64:16 65:7 65:23 66:8 66:13 66:13 66:16 66:18 66:22 67:12 67:13 67:16 67:18 67:19 67:23 68:2 68:3 68:14 68:16 68:20 68:23 69:2 69:3 69:4 69:5 69:7 69:11 69:11 70:2 70:5 71:1 71:5 71:10 71:15 71:17 71:24 72:20 73:4 73:6 73:10 73:11 73:25 74:1 74:6 74:7 74:12 74:15 74:16 74:25 75:5 75:8

that(301) 75:12 75:15 75:17 75:19 75:22 75:24 76:2 76:2 76:5 76:17 77:3 77:7 77:14 77:23 77:23 78:13 78:17 78:18 79:5 79:7 79:15 79:16 79:24 79:24 80:4 81:1 81:5 81:7 81:10 81:16 81:16 82:4 82:5 82:6 82:7 82:8 82:10 82:11 82:15 83:2 83:6 83:8 83:11 83:14 84:2 84:10 84:13 84:23 85:3 85:10 85:14 85:19 85:19 85:23 85:25 85:25 86:2 86:3 86:5 86:7 86:8 86:12 86:16 86:21 87:9 87:10 87:12 87:13 87:16 88:6 88:12 88:17 89:4 89:5 89:8 89:8 89:14 89:19 90:6 90:8 90:12 90:12 91:3 91:4 91:6 91:7 91:19 92:8 92:10 92:11 92:11 92:20 92:25 93:4 93:12 93:12 93:14 94:1 94:18 95:5 95:7 95:8 95:16 95:16 96:1 96:2 96:5 96:10 96:10 96:11 96:20 96:21 96:24 97:1 97:7 97:8 97:10 97:11 97:11 97:13 98:2 98:3 98:21 99:2 99:2 99:7 99:18 101:11 101:21 101:22 101:24 102:5 102:16 103:12 103:22 104:4 104:12 104:15 105:2 105:4 105:6 105:15 105:16 105:18 105:19 105:21 105:25 106:21 107:2 107:12 107:2 108:23 109:2 109:7 109:12 109:23 110:1 110:5 110:9 111:5 111:6 111:7 111:17 113:1 113:21 113:21 115:6 115:9 115:16 115:25 116:7 116:18 117:1 117:23 119:3 119:3 119:8 119:9 120:13 120:20 120:20 121:11 121:15 121:17 121:18 121:19 121:21 121:22 121:24 122:8 122:18 122:21 123:14 123:14 123:18 123:25 124:6 124:11 125:1 125:7 125:14 125:17 125:19 125:20 125:23 125:24 126:8 126:14 126:1 126:16 127:4 127:7 127:9 128:1 128:3 128:9 128:11 128:15 128:17 128:21 128:2 129:3 129:6 129:7 129:7 129:11 129:13 130:15 131:2 131:12 131:15 131:21 131:2 131:23 132:7 132:11 132:17 132:21 133:21 132:23 133:1 133:9 134:6 134:14 134:15 135:8 135:10 135:15 135:16 135:17 135:23 136:7 136:8 136:9 136:12 136:22 136:22 137:1 137:6 137:16 137:21 138:3 138:10 139:3 139:6 139:10 139:12 139:13 139:14 139:20 139:22 139:23 139:24 139:25 140:2 140:4 140:7 140:10 140:10 140:12 140:22 140:23 140:23 141:2 141:4 141:10 141:12 141:16 142:7 143:3 143:3 143:8 143:10 143:11 143:14 143:24 144:1 144:9

that(301) 144:13 145:1 145:3 145:10 145:18 146:1 146:2 146:10 146:12 146:13 146:21 146:25 147:4 147:9 147:10 147:11 147:17 148:1 148:4 148:7 148:8 149:17 149:21 149:23 149:24 149:25 150:4 150:5 150:9 150:13 150:20 150:22 151:1 151:3 151:5 151:15 151:20 151:21 152:6 152:13 152:20 153:10 153:17 153:20 153:22 153:23 154:2 154:7 154:10 154:10 154:12 154:19 154:25 155:1 155:1 155:4 155:7 155:12 155:13 155:23 156:2 156:2 156:10 156:15 156:20 156:24 157:9 157:9 157:12 157:22 158:4 158:8 158:11 158:12 159:1 159:4 159:11 159:14 159:24 160:16 160:2 160:23 161:2 161:13 161:18 161:25 162:5 162:4 162:5 162:8 162:12 162:12 163:3 163:9 163:10 162:16 162:17 162:22 163:5 163:9 163:10 163:13 163:15 163:19 163:24 164:2 164:9 164:10 164:11 164:12 164:13 164:16 164:19 164:20 164:22 165:12 165:14 165:22 165:23 165:24 166:1 166:4 166:6 166:8 166:11 166:12 166:13 166:13 166:14 166:20 166:23 166:24 167:3 167:3 167:10 167:10 167:20 167:21 167:24 168:1 168:2 168:2 168:9 168:13 168:22 169:10 169:18 169:21 170:2 170:6 170:9 170:14 170:18 171:1 171:15 171:17 171:19 172:11 172:21 172:21 173:1 173:5 173:15 173:17 173:18 173:19 173:23 173:25 174:1 174:1 174:2 174:3 174:7 174:8 174:8 174:12 174:14 175:1 175:5 175:9 175:10 175:13 175:14 175:17 175:17 175:20 175:23 175:23 176:1 176:2 176:5 176:6 176:6 176:7 176:11 176:15 176:15 176:21 176:22 176:23 176:24 177:1 177:2 177:3 177:5 177:6 177:7 177:11 177:15 177:17 177:18 178:9 178:10 178:10 178:16 178:22 179:1 179:5 179:22 180:5 180:6 180:9 180:12 180:16 180:16 180:22 181:11 181:20 182:4 182:5 182:18 182:22 183:1 183:5 183:11 183:13 183:16 184:6 184:18 184:22 185:2 185:10 185:18 186:1 186:4 186:7 186:11 186:16 186:22 186:23 186:24 186:25 187:2 187:6 187:9 187:15 187:16 187:19 188:1 188:1 188:6 188:2 188:20 188:21 188:25 189:7 189:15 189:1 189:17 189:17 189:18 189:18 189:22 190:1 190:4 190:5 190:16 190:17 190:20 190:24 191:1 191:2 191:7 191:12 191:16 191:20 191:22 192:1 192:5 192:6 192:11 192:14 192:14 192:24 193:6 193:14 193:16 193:2 193:25 194:2 194:3 194:5 194:13 194:13

that(301) 194:16 194:24 195:2 195:3 195:12 195:13 195:14 195:16 195:18 195:19 195:19 195:21 196:3 196:10 196:11 196:13 196:16 196:15 196:21 196:21 196:23 197:1 197:4 197:7 197:11 197:12 197:16 197:18 197:18 197:18 197:19 197:21 197:24 198:3 198:13 198:17 198:18 198:21 198:23 198:24 199:5 199:7 199:8 199:10 199:16 199:21 199:23 200:1 200:6 200:9 200:14 200:22 201:1 201:2 201:8 201:13 201:17 201:19 202:5 202:6 202:9 202:11 202:17 202:20 202:23 203:1 203:1 203:2 203:4 203:4 203:8 203:10 203:12 203:14 203:15 203:20 203:23 203:25 204:14 205:9 205:13 205:17 205:20 205:23 206:8 206:9 206:12 206:13 206:18 206:19 206:19 206:20 206:24 206:25 207:7 207:9 207:13 207:15 207:16 207:18 207:20 208:9 208:10 208:16 208:20 208:21 208:22 208:24 208:25 209:5 209:6 209:6 209:15 209:16 209:17 209:21 209:21 210:1 210:6 210:12 210:15 210:16 210:20 210:20 211:2 211:5 211:23 212:2 212:3 212:12 212:10 212:25 213:1 213:2 213:5 213:9 213:16 213:21 213:23 214:3 214:8 214:14 214:15 214:22 215:2 215:6 215:9 215:12 215:19 216:11 216:17 216:19 216:20 216:21 216:22 217:5 217:5 217:14 217:16 217:19 217:21 217:22 217:24 217:24 217:25 218:9 218:16 218:18 218:19 219:4 219:13 219:14 219:17 219:18 219:19 220:4 220:5 220:10 220:21 220:22 221:4 221:4 221:5 221:5 221:10 221:13 221:17 222:5 222:9 222:11 222:13 222:13 222:14 222:14 222:20 222:21 222:23 222:23 223:22 223:24 223:4 223:10 223:11 223:21 223:22 223:22 223:24 224:11 224:12 224:12 224:19 224:20 224:24 224:25 224:25 225:2 225:4 225:8 225:18 225:23 225:23 225:24 226:1 226:3 226:11 226:11 226:13 226:25 227:1 227:3 227:4 227:4 227:7 227:12 227:16 228:9 228:12 228:14 228:23 229:1 229:2 229:5 229:8 229:20 230:4 230:11 230:14 230:15 230:16 230:19 230:22 230:23 231:2 231:6 231:7 231:11 231:21 231:24 231:24 231:25 232:1 232:6 232:8 232:9 232:12 232:13 233:3 233:7 233:9 233:12 233:18 233:25 234:1 234:8 234:13 234:14 234:15 234:16 234:19 234:20 234:20 234:24 235:3 235:4 235:9 235:17 235:20 235:20 235:20 235:23 236:1 236:3 236:4 236:15 236:18 236:19 236:23 236:24 237:3 237:7

**that**(122) 237:12 237:15 237:18 237:21 238:7 238:16 238:16 238:23 238:23 238:24 239:1 239:4 239:10 239:15 239:23 240:2 240:9 240:10 240:12 240:12 240:24 241:5 241:11 241:12 241:16 241:18 241:19 241:23 241:23 241:24 242:9 242:10 242:11 242:14 242:17 242:18 242:23 242:24 242:24 243:7 243:15 243:15 243:20 243:24 244:1 244:2 244:4 244:7 244:15 244:24 244:24 245:7 245:8 246:23 246:23 247:7 247:10 247:10 247:12 247:23 247:25 248:17 248:21 248:21 249:5 249:13 249:14 249:15 249:16 249:19 249:21 250:6 250:9 250:20 251:6 251:8 251:11 251:11 251:18 251:19 251:22 252:2 252:25 253:1 253:9 253:11 253:13 253:14 253:15 253:18 253:19 253:22 254:4 254:6 254:7 254:13 254:15 254:18 254:19 254:21 254:22 255:8 255:10 255:12 255:13 255:15 255:15 255:19 255:22 256:4 256:11 256:14 256:15 256:17 256:24 256:25 257:1 257:8 257:12 258:4

TRIBUNE.3.17.REV2.DOC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that's(207)** 71:3 71:7 71:15 71:18 72:2 72:15 72:15 72:22 72:25 73:18 73:21 74:4 74:5 74:8 75:11 75:17 76:21 77:2 77:6 81:2 81:14 82:2 82:18 82:22 83:1 83:18 84:9 84:12 84:15 84:17 84:22 85:4 85:18 86:6 86:11 86:15 86:19 86:25 88:2 88:14 88:25 89:17 89:22 90:16 91:19 96:24 97:5 98:14 98:16 98:18 98:19 98:25 100:13 101:12 104:5 106:25 109:19 109:2 110:24 111:9 111:18 112:7 112:11 112:15 115:3 115:15 120:22 121:19 123:13 123:2 124:17 125:2 127:3 129:21 130:10 132:2 134:18 134:24 135:6 135:18 136:19 137:1 140:21 141:19 143:9 144:2 145:10 146:1 147:24 148:21 150:23 151:23 153:18 154:17 154:18 154:21 158:7 159:18 162:6 164:8 165:1 166:9 166:11 166:19 168:4 168:24 170:18 171:18 173:19 173:24 174:10 175:8 175:22 177:8 177:12 177:18 178:18 179:25 180:20 181:13 182:8 182:1 183:5 183:12 183:15 184:2 185:3 185:21 187:17 187:19 187:23 188:3 188:7 188:10 188:14 188:24 189:21 190:15 190:18 190:22 191:4 191:10 193:21 193:22 194:4 195:7 197:4 197:16 199:16 199:22 199:24 200:11 200:16 201:18 201:25 202:14 203:1 203:11 204:21 204:24 205:16 207:2 207:7 209:7 209:11 210:22 211:17 212:7 213:16 214:10 214:13 214:20 216:17 217:9 217:17 218:10 219:23 220:24 221:21 221:25 223:13 225:1 225:3 226:21 227:8 227:11 229:14 232:4 232:9 233:4 233:4 233:8 234:2 236:2 236:21 239:12 240:5 240:16 241:17 244:1 245:1 248:1 249:25 250:12 251:22 253:25

**that's(40)** 13:22 14:17 14:21 17:8 22:6 25:16 25:24 28:3 28:5 30:9 31:1 31:6 34:21 34:24 35:1 37:1 39:23 40:20 41:4 41:7 44:3 46:2 47:24 48:22 50:17 54:20 54:25 55:4 55:6 56:7 57:11 57:24 58:16 60:1 61:18 61:19 67:18 70:2 207:11 223:15

**the(301)** 1:1 1:2 1:17 3:21 4:4 5:7 13:2 13:19 13:20 13:22 13:23 13:23 13:24 14:3 14:3 14:4 14:4 14:9 14:11 14:14 14:14 14:20 14:22 14:24 15:4 15:5 15:9 15:9 15:11 15:12 15:16 15:17 15:19 15:20 15:21 15:22 15:23 15:24 15:25 16:1 16:2 16:12 16:13 16:4 16:8 16:9 16:9 16:10 17:3 17:5 17:8 17:10 17:11 17:11 17:11 17:12 17:14 17:14 17:15 17:16 17:16 17:17 17:17 17:19 17:20 17:22 17:24 17:24 18:2 18:4 18:6 18:8 18:8 18:13 18:15 18:15 18:18 18:22 18:23 19:1 19:2 19:4 19:4 19:5 19:7 19:9 19:13 19:19 19:20 19:22 19:23 19:23 20:8 20:9 20:11 20:11 20:12 20:12 20:13 20:14 20:14 20:16 20:16 20:20 20:25 21:2 21:3 21:3 21:4 21:11 21:12 21:12 21:13 21:14 21:16 21:19 21:19 21:19 21:21 21:21 21:25 22:1 22:5 22:9 22:12 22:12 22:15 22:17 22:19 22:19 22:20 22:21 22:22 22:25 23:1 23:2 23:2 23:6 23:9 23:9 23:12 23:14 23:14 23:14 23:17 23:18 23:20 23:20 23:20 23:22 23:22 23:23 23:25 24:1 24:2 24:4 24:11 24:15 24:18 24:21 24:22 24:5 24:6 26:5 26:7 26:13 26:16 26:18 26:19 26:20 26:20 26:21 26:22 26:23 26:24 26:24 26:25 27:2 27:2 27:3 27:8 27:10 27:12 27:13 27:14 27:15 27:15 27:16 27:16 27:17 27:17 27:18 27:18 27:18 27:19 27:22 27:24 27:25 28:1 28:1 28:2 28:7 28:8 28:10 28:11 28:17 28:18 28:19 28:20 28:20 28:21 28:22 28:23 29:1 29:1 29:2 29:3 29:3 29:4 29:4 29:5 29:6 29:7 29:9 29:10 29:11 29:11 29:13 29:18 29:15 29:19 29:20 29:21 29:22 29:23 29:24 29:24 29:24 30:2 30:3 30:3 30:4 30:5 30:6 30:6 30:8 30:10 30:12 30:14 30:15 30:16 30:17 30:17 30:20 30:21 30:21 30:23 30:24 30:25 31:1 31:4 31:6 31:9 31:10 31:10 31:11 31:12 31:12 31:17 31:18 31:19 31:21 31:21 31:23 31:23 31:24 32:1 32:3

**the(301)** 32:4 32:6 32:7 32:9 32:10 32:10 32:20 32:23 32:25 32:25 33:1 33:1 33:2 33:3 33:3 33:3 33:4 33:6 33:7 33:9 33:10 33:10 33:11 33:12 33:16 33:17 33:18 33:20 33:22 33:22 33:23 33:23 33:25 33:25 33:25 34:1 34:8 34:9 34:9 34:11 34:14 34:18 34:19 34:24 35:1 35:2 35:4 35:5 35:5 35:9 35:12 35:14 36:1 36:3 36:5 36:7 36:8 36:10 36:13 36:13 36:16 36:21 36:22 36:23 36:23 36:25 37:1 37:2 37:5 37:7 37:7 37:9 37:10 37:10 37:12 37:13 37:13 37:15 37:17 37:20 37:23 37:24 38:1 38:1 38:5 38:6 38:7 38:9 38:9 38:10 38:13 38:14 38:21 39:4 39:5 39:8 39:9 39:11 39:11 39:16 39:18 39:23 39:25 40:1 40:5 40:6 40:8 40:11 40:13 40:14 40:14 40:14 40:15 40:16 40:16 40:17 40:18 40:19 40:20 40:20 40:23 40:24 41:1 41:2 41:4 41:4 41:9 41:11 41:14 41:24 41:25 42:8 42:9 42:10 42:12 42:13 42:14 42:15 42:15 42:16 42:17 42:18 42:19 42:20 42:21 42:24 42:24 43:1 43:2 43:3 43:4 43:4 43:6 43:8 43:9 43:10 43:10 43:13 43:16 43:17 43:22 43:25 44:5 44:9 44:11 44:11 44:12 44:14 44:20 44:25 45:1 45:18 45:21 45:25 46:1 46:2 46:5 46:5 46:7 46:8 46:9 46:9 46:9 46:11 46:13 46:15 46:16 46:16 46:16 46:17 47:1 46:22 46:23 46:25 47:1 47:1 47:2 47:2 47:10 47:10 47:14 47:14 47:15 47:17 47:1 47:20 47:22 47:24 47:25 48:1 48:2 48:6 48:6 48:8 48:13 48:20 48:21 48:24 49:2 49:4 49:8 49:10 49:11 49:11 49:12 49:13 49:16 49:18 49:19 49:19 49:21 49:25 50:1 50:10 50:11 50:13 50:17 50:18 50:19 50:20 50:22 50:23 50:24 51:1 51:2 51:7 51:11 51:11 51:12 51:12 51:13 51:13 51:14 51:15 51:15 51:17 51:19 51:19 51:20 51:21 51:22 51:24 51:25 52:2 52:2 52:6 52:7 52:9 52:10 52:11 52:14 52:14 52:20 52:21 52:23 52:25 53:1 53:4 53:9 53:11 53:13 53:13 53:14 53:19 53:20 53:20 53:22 53:22 53:23 53:24 54:3 54:3 54:5 54:14 54:16 54:17 54:22 55:5 55:6 55:7

**the(301)** 55:9 55:13 55:13 55:15 55:16 55:20 55:23 55:24 56:1 56:3 56:4 56:5 56:6 56:7 56:7 56:9 56:11 56:11 56:12 56:12 56:12 56:12 56:13 56:14 56:16 56:18 56:19 56:20 56:23 56:25 57:1 57:2 57:2 57:3 57:3 57:4 57:4 57:5 57:7 57:9 57:10 57:12 57:12 57:14 57:15 57:16 57:17 57:17 57:18 57:22 58:2 58:3 58:4 58:5 58:5 58:8 58:9 58:9 58:11 58:15 58:17 58:19 58:19 58:20 58:20 58:24 58:24 58:25 59:2 59:3 59:4 59:10 59:11 59:11 59:17 59:17 59:18 59:20 59:20 59:23 59:23 60:1 60:3 60:3 60:12 60:12 60:14 60:14 60:15 60:16 60:17 60:17 60:18 60:19 60:22 60:22 61:1 61:1 61:2 61:12 61:13 61:16 61:23 61:24 61:24 61:24 62:3 62:3 62:6 62:6 62:8 62:11 62:12 62:12 62:16 62:17 62:18 62:19 62:24 63:2 63:2 63:5 63:6 63:6 63:6 63:8 63:9 63:10 63:10 63:11 63:13 63:13 63:19 63:20 63:21 63:22 63:23 63:24 64:1 64:2 64:3 64:4 64:5 64:7 64:8 64:10 64:11 64:12 64:14 64:14 64:15 64:17 64:17 65:2 65:6 65:6 65:8 65:9 65:18 66:1 66:2 66:4 66:6 66:8 66:8 66:11 66:11 66:14 66:21 67:1 67:3 67:4 67:6 67:8 67:23 67:23 67:24 68:2 68:2 68:3 68:4 68:6 68:6 68:9 68:11 68:11 68:12 68:15 68:16 68:21 68:23 68:24 69:1 69:2 69:2 69:3 69:3 69:3 69:4 69:5 69:5 69:6 69:7 69:9 69:11 69:11 69:12 69:13 69:14 69:14 69:15 69:16 69:18 69:19 69:20 69:20 69:20 69:21 69:23 69:23 70:3 70:4 70:6 70:7 70:10 70:13 70:15 70:15 70:17 70:24 70:25 71:1 71:1 71:2 71:4 71:5 71:5 71:6 71:8 71:9 71:11 71:13 71:14 71:19 71:20 71:21 71:23 71:24 71:25 72:2 72:4 72:7 72:12 72:13 72:16 72:17 72:19 72:20 73:1 73:1 73:5 73:10 73:11 73:11 73:12 73:15 73:22 73:25 73:25 74:1 74:2 74:3 74:5 74:5 74:6 74:7 74:7 74:8 74:9 74:9 74:10 74:10 74:10 74:12 74:13 74:13 74:15 74:16 74:17 74:19 74:19 74:20 74:21 75:3 75:5 75:7 75:8 75:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the(301)** 75:9 75:10 75:13 75:15 75:18 75:19 75:20 75:24 76:5 76:6 76:7 76:8 76:9 76:12 76:13 76:14 76:15 76:19 76:20 76:22 76:23 76:23 76:24 76:25 77:9 77:9 77:11 77:12 77:12 77:12 77:13 77:13 77:16 77:17 77:17 77:18 77:19 77:20 77:25 78:1 78:3 78:5 78:6 78:9 78:12 78:14 78:15 78:17 78:18 78:19 78:20 78:22 78:22 78:22 78:23 79:1 79:2 79:2 79:4 79:5 79:7 79:8 79:8 79:10 79:12 79:17 79:18 79:25 79:25 80:5 80:9 80:9 80:19 80:21 80:23 80:25 81:1 81:2 81:6 81:8 81:12 81:18 81:19 81:19 81:19 81:20 81:20 81:22 81:25 82:1 82:2 82:4 82:5 82:11 82:16 82:16 82:20 82:21 82:23 82:23 82:24 82:24 83:2 83:3 83:6 83:9 83:11 83:12 83:13 83:13 83:16 83:17 83:25 84:10 84:10 84:12 84:13 84:20 84:20 84:20 84:25 85:2 85:6 85:9 85:13 85:14 85:15 85:16 85:17 85:18 85:20 85:23 85:23 85:24 85:25 86:1 86:2 86:4 86:7 86:8 86:9 86:12 86:14 86:17 86:20 86:23 87:2 87:3 87:4 87:5 87:8 87:13 87:13 87:14 87:15 87:16 87:18 87:19 87:19 87:21 87:21 87:24 87:25 87:25 88:3 88:15 88:15 88:17 88:17 88:18 88:22 88:24 89:4 89:5 89:5 89:11 89:11 89:12 89:19 89:19 89:20 90:1 90:2 90:3 90:4 90:4 90:5 90:5 90:6 90:6 90:6 90:7 90:8 90:8 90:9 90:12 90:13 90:14 90:19 90:25 91:1 91:3 91:3 91:8 91:8 91:14 91:15 91:18 91:18 91:19 91:19 91:20 91:21 91:21 91:23 91:24 92:1 92:2 92:3 92:4 92:4 92:5 92:5 92:6 92:8 92:10 92:11 92:13 92:17 92:17 92:19 92:21 92:23 93:1 93:5 93:5 93:6 93:7 93:9 93:11 93:13 93:13 93:14 93:14 93:17 93:20 93:22 93:24 94:1 94:2 94:4 94:7 94:8 94:9 94:11 94:13 94:13 94:14 94:15 94:16 94:16 94:17 94:20 94:24 95:1 95:5 95:9 95:10 95:13 95:14 95:14 95:15 95:16 95:17 95:17 95:18 95:19 95:20 95:21 95:23 95:24 95:24 95:24 95:25 96:2 96:4 96:5 96:7 96:7 96:8 96:8 96:11 96:12 96:13 96:16 96:16 96:18 96:20 96:24 | **the(301)** 96:25 96:25 97:1 97:2 97:3 97:3 97:4 97:4 97:6 97:14 97:14 97:16 97:17 97:18 97:18 97:19 97:19 98:6 98:10 98:14 98:16 98:18 98:21 98:22 98:23 98:23 98:25 99:4 99:7 99:9 99:13 99:16 99:21 99:22 99:23 99:25 100:2 100:3 100:3 100:4 100:9 100:11 100:14 100:16 100:17 100:22 100:24 101:1 101:3 101:13 101:15 101:15 101:15 101:17 101:17 101:18 101:19 101:19 101:24 101:25 102:1 102:4 102:4 102:5 102:6 102:7 102:10 102:15 102:15 102:15 102:16 102:18 102:24 103:10 103:17 103:18 103:23 104:3 104:8 104:11 104:13 104:18 104:20 104:23 104:23 104:25 105:2 105:2 105:5 105:8 105:11 105:11 105:13 105:16 105:18 105:18 106:15 106:16 106:21 107:1 107:4 107:8 107:11 107:12 107:14 107:14 107:17 107:17 107:25 107:25 108:2 108:2 108:3 108:4 108:4 108:7 108:7 108:15 108:16 108:21 108:24 109:1 109:1 109:1 109:2 109:4 109:5 109:6 109:7 109:8 109:8 109:9 109:9 109:9 109:11 109:13 109:15 109:16 109:17 109:18 109:21 109:24 110:2 110:12 110:15 110:15 110:18 110:20 110:24 111:1 111:3 111:3 111:4 111:6 111:9 111:9 111:10 111:11 111:14 111:20 111:20 111:23 111:25 111:25 112:1 112:2 112:3 112:5 112:7 112:7 112:8 112:9 112:11 112:12 112:15 112:15 112:1 112:16 112:17 112:19 112:21 112:25 113:2 113:3 113:3 113:4 113:13 113:15 113:16 113:17 113:19 113:20 114:1 114:6 114:8 114:13 114:15 114:18 114:18 114:22 114:25 115:1 115:2 115:8 115:9 115:10 115:11 115:11 115:20 115:21 115:21 115:22 115:24 116:1 116:2 116:2 116:3 116:3 116:3 116:7 116:13 116:16 116:23 117:1 117:5 117:7 117:8 117:8 117:8 117:9 117:11 117:13 117:20 117:21 118:1 118:3 118:6 118:6 118:8 118:11 118:14 118:21 118:24 118:24 119:2 119:3 119:14 119:15 119:16 119:19 119:19 119:23 119:24 120:9 120:11 120:12 120:12 120:1 120:15 120:17 120:18 120:19 120:20 120:25 121:6 121:6 121:9 121:11 121:14 121:16 121:17 121:17 121:21 121:25 121:25 122:1 122:2 122:3 122:4 122:5 122:6 122:6 122:7 122:8 122:9 122:10 122:14 122:15 122:18 122:19 122:19 122:21 122:22 122:22 123:1 123:3 123:5 123:13 123:13 123:16 | **the(301)** 123:17 123:18 123:19 123:19 123:20 123:22 123:25 123:25 123:25 124: 124:6 124:9 124:9 124:11 124:12 124:12 124:13 124:19 124:19 124:22 124:24 125: 125:6 125:11 125:12 125:17 125:17 125:20 125:23 126:2 126:4 126:4 126:5 126:6 126:6 126:11 126:16 126:17 126:18 126:22 126:22 126:23 127:4 127:7 127:9 127:14 127:14 127:15 127:15 127:16 127:16 127:17 127:18 127:19 127:20 127:22 127:22 128:2 128:2 128:4 128:4 128:5 128:6 128:7 128:7 128:9 128:9 128:11 128:12 128:12 128:16 128:17 128:18 128:21 128:23 128:24 129:5 129:1 129:17 129:17 129:18 129:20 129:21 129:22 129:22 129:22 129:23 129:24 130: 130:8 130:9 130:11 130:12 130:13 130:1 130:15 130:17 130:18 130:18 130:19 130:20 130:21 130:21 130:22 130:22 130:22 130:24 130:25 130:25 131:1 131:2 131:3 131:6 131:7 131:7 131:8 131:9 131:10 131:14 131:14 131:15 131:17 131:18 131:19 131:20 131:23 131:25 132: 132:1 132:1 132:3 132:4 132:4 132:7 132:8 132:8 132:16 132:17 132:17 132:18 132:21 132:22 132:23 132:23 133:3 133:3 133:6 133:7 133:8 133:9 133:10 133:12 133:13 133:15 133:16 133:16 133:19 133:20 134:2 134:3 134:8 134:9 134:13 134:14 134:15 134:17 134:17 134:18 134:18 134:20 134:21 134:22 134:22 134:24 134:25 135:3 135:4 135:5 135:5 135:6 135:10 135:10 135:11 135:12 135:1 135:14 135:15 135:18 135:19 135:21 135:22 135:23 135:23 135:24 135:25 135:25 136:4 136:6 136:8 136:8 136:9 136:11 136:14 136:19 136:20 136:2 137:3 137:8 137:9 137:12 137:12 137:14 138:1 138:5 138:6 138:7 138:25 139:5 139:5 139:9 139:11 139:12 139:12 139:14 139:15 139:17 139:17 139:20 139:21 139:21 139:22 139:23 139:25 140:1 140:3 140:4 140:6 140:7 140:10 140:12 140:3 140:15 140:18 140:19 140:19 140:22 140:22 140:23 141:1 141:3 141:3 141:4 141:6 141:6 141:7 141:8 141:10 141:13 141:13 141:14 141:16 141:17 141:20 141:21 141:21 141:22 141:22 141:23 141:24 141:24 141:25 142:1 142:1 142:1 142:15 142:16 142:18 142:18 142:23 142:23 142:24 142:25 142:7 142:10 142:12 142:15 142:16 142:18 142:18 142:23 142:23 142:24 142:25 143:1 143:3 143:3 143:7 143:8 143:8 143:9 143:12 143:15 143:19 143:21 143:25 | **the(301)** 144:3 144:5 144:9 144:10 144:10 144:13 144:14 144:16 144:16 144:19 145: 145:13 145:14 145:16 145:17 145:17 145:18 145:20 145:21 145:25 145:25 146:2 146:6 146:8 146:9 146:15 146:16 146:18 146:20 146:20 146:22 146:23 146:23 146:24 146:24 146:25 147:2 147:4 147:5 147:5 147:7 147:8 147:11 147:11 147:12 147:14 147:17 147:20 147:20 147:20 147:22 148:1 148:2 148:3 148:3 148:5 148:6 148:7 148:8 148:8 148:10 148:20 148:23 148:25 149:2 149:2 149:3 149:3 149:4 149:6 149:7 149:7 149:10 149:12 149:16 149:17 149:19 149:20 149:22 149:24 150:1 150:2 150:2 150:3 150:4 150:6 150:7 150:11 150:12 150:13 150:14 150:16 150:17 150:19 150:21 150:24 150:25 151:2 151:4 151:4 151:4 151:6 151:12 151:14 151:15 151:16 151:16 151:17 151:18 152:6 152:17 152:20 152:21 153:3 153:6 153:9 153:23 153:25 154:2 154:4 154:7 154:7 154:8 154:9 154:13 154:15 154:19 154:21 154:24 155:1 155:1 155:9 155:11 155:11 155:12 155:12 155:13 155:15 155:24 155:25 156:1 156:2 156:2 156:13 156:15 156:18 156:20 156:22 156:25 157:1 157:4 157:8 157:9 157:12 157:14 157:14 157:15 157:17 157:19 157:20 157:20 157:21 157:23 157:24 157:25 158:1 158:4 158:8 158:9 158:12 158:14 158:14 158:18 158:19 158:20 158:21 158:21 158:22 158:23 158:25 159:1 159:6 159:8 159:10 159:11 159:11 159:12 159:13 159:13 159:14 159:14 159:15 159:17 159:19 159:20 159:22 159:22 159:23 159:24 159:25 159:25 160:2 160:3 160:3 160:4 160:5 160:7 160:10 160:12 160:16 160:20 160:22 160:23 161:2 161:4 161:5 161:6 161:7 161:9 161:14 161:15 161:17 161:18 161:21 161:23 161:24 162:3 162:4 162:16 162:23 163:1 163:4 163:8 163:8 163:10 163:12 163:12 163:14 163:21 163:21 163:25 163:25 164:2 164:3 164:5 164:5 164:6 164:8 164:8 164:8 164:13 164:14 164:20 165:7 165:8 165:10 165:11 165:12 165:12 165:12 165:15 165:19 165:22 165:23 165:23 165:23 165:25 165:25 166:3 166:4 166:5 166:6 166:7 166:9 166:11 166:15 166:16 166:18 166:19 166:20 166:23 166:23 166:24 166:25 167:3 167:6 167:7 167:8 167:9 167:10 167:10 167:11 167:13 167:17 167:17 167:18 167:19 167:19 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the(301)** 167:21 167:22 167:23 167:24 167:25 168:2 168:6 168:9 168:12 168:15 168:15 168:16 168:16 168:16 168:17 168:17 168:18 168:19 168:19 168:20 168:20 168:20 168:22 168:25 169:1 169:2 169:3 169:4 169:5 169:10 169:13 169:19 169:20 169:21 169:23 169:24 170:2 170:3 170:19 170:19 170:22 170:22 170:25 171:1 171:5 171:6 171:23 171:25 172:1 172:2 172:4 172:8 172:8 172:9 172:12 172:14 172:17 172:20 172:21 173:3 173:3 173:4 173:7 173:10 173:11 173:11 173:12 173:12 173:18 173:18 173:19 173:19 173:19 173:21 173:25 174:1 174:2 174:6 174:11 174:12 174:16 174:17 174:18 174:20 174:22 174:23 174:24 174:24 174:25 175:6 175:10 175:14 175:15 175:15 175:21 175:24 176:3 176:3 176:4 176:7 176:12 176:15 176:17 176:18 177:6 177:1 177:15 177:15 177:16 177:20 177:20 177:21 177:22 177:23 177:25 178:3 178:7 178:8 178:9 178:10 178:13 178:14 178:16 178:19 178:20 178:20 178:22 178:23 178:23 179:1 179:3 179:6 179:11 179:13 179:16 179:16 179:17 179:19 179:22 179:22 180:1 180:4 180:4 180:5 180:7 180:7 180:9 180:10 180:21 180:25 181:3 181:6 181:7 181:10 181:10 181:11 181:11 181:13 181:15 181:16 181:18 181:20 181:21 181:22 181:23 181:24 182:1 182:1 182:2 182:3 182:5 182:6 182:7 182:15 183:6 183:9 183:10 183:12 183:13 183:18 183:19 183:19 183:19 184:5 184:6 184:9 184:13 184:15 184:17 184:22 184:22 184:25 185:1 185:3 185:4 185:6 185:10 185:11 185:18 185:23 185:24 186:2 186:11 186:14 186:15 186:1 187:1 187:2 187:3 187:6 187:9 187:10 187:11 187:13 187:13 187:15 187:19 187:20 187:20 187:20 187:21 187:24 188: 188:1 188:3 188:4 188:4 188:5 188:8 188:11 188:12 188:13 188:13 188:18 188:19 188:22 188:22 188:25 189:5 189:6 189:8 189:11 189:11 189:14 189:17 189:23 189:24 190:1 190:1 190:16 190:16 190:19 190:20 190:23 190:25 191:2 191:6 191:6 191:7 191:11 191:15 191:16 191:19 191:2 191:21 191:22 191:24 191:24 192:5 192:2 192:9 192:10 192:10 192:16 192:19 192:2 193:1 193:5 193:8 193:8 193:8 193:15 193:17 193:18 193:18 193:21 193:25 194: 194:2 194:5 194:5 194:5 194:6 194:10 194:10 194:11 194:13 194:15 | | **the(301)** 194:18 194:20 194:22 194:24 194:24 195:3 195:7 195:8 195:12 195:12 195:13 195:16 195:19 195:20 195:21 195:25 196:2 196:2 196:4 196:8 196:9 196:10 196:12 196:16 196:16 196:16 196:17 196:21 197:2 197:4 197:4 197:8 197:9 197:14 197:16 197:24 198:4 198:4 198:6 198:11 198:12 198:15 198:15 198:18 198:19 199:1 199:2 199:3 199:4 199:18 199:10 199:17 199:19 199:22 199:25 199:24 200:1 200:3 200:5 200:5 200:7 200:8 200:13 200:13 200:15 200:16 200:1 200:21 200:23 201:1 201:1 201:2 201:3 201:5 201:7 201:13 201:14 201:14 201:16 201:20 201:25 202:2 202:3 202:6 202:7 202:12 202:13 202:15 202:17 202:1 202:22 202:23 202:24 203:8 203:11 203:11 203:14 203:17 203:20 203:21 203:22 203:25 203:25 204:3 204:7 204:9 204:11 204:12 204:14 204:17 204:17 204:19 205:3 205:9 205:11 205:13 205:17 205:20 205:21 205:23 206:2 206:5 206:7 206:10 206:10 206:13 206:20 206:23 206:24 206:24 206:25 207:6 207:8 207:9 207:12 207:16 207:17 208:9 208:10 208:17 208:19 208:20 208:21 209:2 209:6 209:6 209:11 209:12 209:15 209:16 209:16 209:19 209:21 209:24 209:25 210:3 210:5 210:6 210:9 210:12 210:14 211:5 211:9 211:9 211:10 211:12 211:12 211:13 211:14 211:18 211:21 211:23 212:3 212:8 212:9 212:9 212:20 212:23 212:24 212:24 212:25 213:9 213:1 213:13 213:19 213:19 213:20 213:20 213:23 213:24 213:25 214:1 214:5 214:7 214:9 214:10 214:10 214:11 214:15 214:16 214:24 214:24 215:4 215:6 215:7 215:7 215:12 215:13 215:15 215:25 216:1 216:12 216:14 216:16 216:17 216:19 216:21 217:3 217:5 217:8 217:9 217:9 217:10 217:12 217:15 217:16 217:17 217:25 217:20 217:23 217:23 217:25 217:25 218:2 218:3 218:6 218:8 218:8 218:11 218:13 218:15 218:17 218:18 218:19 218:24 219:3 219:6 219:8 219:8 219:9 219:10 219:13 219:16 219:17 219:1 219:18 219:19 220:3 220:10 220:13 220:18 220:24 220:24 220:25 221:1 221:2 221:3 221:3 221:4 221:5 221:6 221:6 221:8 221:9 221:10 221:10 221:11 221:13 221:14 221:15 221:19 221:21 221:22 221:24 222:3 222:6 222:6 222:6 222:7 222:9 222:10 222:10 222:11 222:11 222:1 | | **the(301)** 222:15 222:16 222:16 222:22 222:23 222:5 224:2 224:6 224:13 224:15 224:19 224:20 224:24 224:24 225:2 225:3 225:3 225:5 225:10 225:12 225:13 225:14 225:15 225:18 225:18 225:19 225:23 226:1 226:2 226:3 226:4 226:7 226:7 226:10 226:20 226:23 226:23 226:25 227:2 227:5 227:15 227:16 227:16 227:23 227:24 228:1 228:2 228:2 228:5 228:5 228:8 228:12 228:17 228:20 228:24 229:3 229:10 229:15 229:1 229:17 229:20 230:1 230:5 230:6 230:7 230:10 230:13 230:14 230:16 230:17 230:18 230:18 230:19 230:20 230:21 230:21 230:24 231:2 231:4 231:6 231:7 231:9 231:9 231:10 231:13 231:14 231:15 231:19 231:20 231:20 231:20 231:24 232:9 232:15 232:16 232:17 232:19 232:21 232:21 232:25 233:1 233:2 233:3 233:3 233:4 233:4 233:6 233:6 233:8 233:8 233:15 233:18 233:23 233:24 233:25 233:25 234:3 234:4 234:11 234:12 234:13 234:16 234:17 234:21 234:23 234:25 235:3 235:5 235:6 235:8 235:9 235:14 235:21 235:23 235:24 235:25 236:6 236:7 236:12 236:22 237:4 237:5 237:5 237:7 237:9 237:10 237:10 237:11 237:14 237:15 237:16 237:19 237:23 238:1 238:3 238:3 238:5 238:5 238:7 238:8 238:21 238:21 238:22 239:2 239:2 239:6 239:15 239:16 239:17 239:18 239:20 240:2 240:3 240:4 240:8 240:9 240:21 240:24 241:1 241:3 241:7 241:13 241:14 241:18 241:21 241:2 241:22 241:22 241:22 241:24 242:5 242:7 242:3 243:4 243:6 243:9 243:10 243:12 243:14 243:17 243:20 243:20 243:21 243:21 243:23 243:23 243:24 244:1 244:4 244:5 244:5 244:5 244:10 244:13 244:14 244:14 244:1 244:16 244:18 244:23 244:24 245:5 245:10 245:12 245:17 245:17 245:1 245:20 245:22 245:23 245:23 245:24 245:25 246:3 246:4 246:5 246:8 246:9 246:12 246:14 246:16 246:21 247:6 247:1 248:4 248:11 248:12 248:17 248:20 248:21 248:24 248:24 248:25 249:8 249:1 249:14 249:15 249:16 249:17 249:18 249:20 249:21 249:21 249:22 249:23 250: 250:4 250:10 250:14 250:16 250:18 250:19 250:21 250:24 250:16 250:18 251:5 251:5 251:5 251:6 251:7 251:10 251:10 251:13 | | **their(32)** 15:13 18:24 21:9 21:25 32:16 35:19 35:20 49:10 49:17 50:11 51:5 59:1 62:10 62:21 66:25 68:22 69:24 72:18 73:19 87:16 91:21 91:23 107:18 108:14 114:14 118:25 163:11 176:15 227:7 253:21 254:17 257:5 **them(62)** 43:8 47:13 59:19 68:9 68:12 68:13 70:3 72:5 72:8 93:15 97:23 98:1 98:4 98:5 98:7 98:7 100:1 105:11 105:13 106:23 107:7 107:17 108:19 125:13 128:14 133:15 134:3 134:10 148:14 148:19 151:13 154:1 155:4 159:20 162:18 176:18 177:23 177:24 177:25 186:3 187:11 189:8 190:14 202:13 204:2 210:15 227:18 228:10 230:5 230:5 230:6 230:9 230:10 236:5 236:8 238:24 242:6 242:6 250:4 253:21 254:5 255:22 **themselves(5)** 35:21 42:15 47:9 88:23 256:13 **then(87)** 21:22 29:25 35:12 36:17 38:7 38:9 39:24 40:16 40:18 40:19 44:18 49:8 57:6 60:20 62:3 62:4 62:9 63:3 63:4 64:10 64:13 69:9 70:11 77:18 77:19 77:19 87:24 91:17 97:18 98:19 104:11 108:4 108:10 108:10 109:5 112:4 115:9 117:8 117:11 118:13 120:23 125:15 126:8 127:20 127:22 128:8 129:22 130:23 131:7 132:16 133:11 133:15 133:19 134:25 137:7 137:10 137:13 141:12 141:13 143:6 143:8 143:19 145:21 158:3 169:1 173:20 181:16 186:22 192:1 192:8 196:4 202:5 205:20 207:6 213:8 214:7 216:16 217:8 223:17 227:12 230:22 231:9 231:17 233:11 234:22 239:22 247:9 **theoretical(1)** 103:3 **theory(1)** 108:6 **there(184)** 13:8 13:22 14:17 16:18 17:5 17:22 23:6 23:18 23:23 25:4 26:5 27:12 27:14 27:21 27:23 28:17 28:25 29:25 30:22 31:2 32:3 34:7 35:12 36:21 38:11 38:25 39:1 39:15 43:23 48:12 56:15 60:7 63:25 63:25 64:6 69:8 69:21 69:22 69:22 69:23 72:4 77:14 78:18 80:18 80:25 81:6 83:24 83:25 85:2 86:8 89:6 92:23 93:13 94:24 94:25 96:6 97:24 102:21 103:17 103:25 105:24 107:13 107:15 108:5 111:6 113:11 113:12 114:8 116:6 116:8 117:9 120:15 121:14 124:22 127:10 127:22 128:1 128:21 129:25 130:3 130:7 130:8 131:3 132:4 132:9 132:19 133:1 133:10 133:18 133:24 133:25 134:8 138:10 138:14 138:16 138:17 141:24 143:2 143:14 143:15 143:17 144:23 144:25 145:16 146:13 148:17 149:25 150:1 150:5 150:13 150:13 156:23 159:19 161:17 162:13 164:10 165:2 165:10 165:21 166:4 168:22 168:25 169:16 169:19 172:6 175:23 178:5 178:6 178:19 179:5 181:8 181:16 183:25 184:11 184:16 185:23 186:17 187:10 189:10 189:16 190:10 191:16 192:7 196:6 197:11 198:9 199:24 200:14 203:9 204:18 205:7 205:13 205:17 205:20 206:12 209:1 209:22 210:1 215:17 218:1 219:2 220:18 230:14 230:21 231:7 232:7 235:11 237:17 237:17 237:18 237:24 242:17 244:10 245:10 247:20 248:10 253:1 255:7 256:17 257:10 257:12 257:22 257:22 |
| | | | | **the(113)** 251:13 251:17 251:18 251:21 251:21 251:21 251:23 251:23 251:24 251:25 252:3 252:4 252:4 252:6 252:8 252:9 252:10 252:10 252:10 252:11 252:1 252:12 252:14 252:18 252:18 252:19 252:19 252:20 252:21 252:22 252:25 253: 253:3 253:5 253:5 253:5 253:7 253:8 253:10 253:11 253:11 253:11 253:12 253:13 253:14 253:15 253:17 253:18 253:23 253:23 253:24 253:24 253:25 253:25 254:1 254:2 254:4 254:7 254:8 254:1 254:13 254:16 254:16 254:19 254:20 254:22 254:23 255:2 255:3 254:4 255:5 255:9 255:10 255:10 255:15 255:16 255:21 255:24 256:1 256:3 256:3 256:6 256:7 256:7 256:8 256:18 256:19 256:21 256:24 256:25 257:2 257:4 257:4 257:5 257:6 257:6 257:8 257:8 257:9 257:10 257:13 257:15 257:19 257:21 257:21 257:21 257:25 258:2 258:4 258:5 258:5 258:6 | | | |

10/05/11 15:40:19

| Word | Page:Line |
|------|-----------|
| **there's**(62) | 78:21 85:18 94:20 95:22 96:4 96:6 96:14 111:12 111:15 112:16 112:19 113:18 131:23 131:24 132:12 132:15 133:17 134:10 134:23 138:9 138:17 143:5 144:6 145:20 148:16 151:1 151:2 162:25 164:18 167:24 179:1 184:18 189:15 190:2 191:25 192:1 192:13 192:22 192:23 196:3 196:5 197:18 205:23 207:7 210:25 213:14 216:13 216:25 217:3 217:16 217:17 217:18 218:16 218:17 220:4 220:10 220:25 232:10 233:23 234:16 256:17 256:22 |
| **therefore**(5) | 148:4 151:18 222:25 229:23 252:1 |
| **thereto**(1) | 251:16 |
| **there's**(24) | 14:2 15:19 21:18 21:24 28:8 29:11 32:22 33:8 33:18 34:23 39:17 39:24 39:25 40:17 43:1 43:8 54:13 59:2 60:12 60:14 61:9 63:24 64:6 64:11 |
| **thermodynamics**(1) | 103:3 |
| **these**(98) | 13:20 14:14 33:23 33:24 34:2 37:8 44:8 47:7 55:19 56:8 57:19 58:24 59:18 61:10 61:20 61:21 64:8 64:12 64:15 66:2 69:17 69:25 70:4 73:7 77:7 77:11 77:15 78:13 79:3 79:24 82:4 84:13 84:18 87:9 87:13 88:4 88:4 88:20 88:23 93:12 93:16 93:18 94:12 94:18 101:25 105:16 105:21 108:12 108:16 109:23 111:23 113:13 114:3 122:14 123:1 125:19 126:2 126:18 127:13 128:16 128:24 129:2 137:5 137:8 147:25 149:19 154:1 154:14 155:15 159:16 159:17 161:19 164:22 169:14 173:8 176:12 188:25 194:10 194:16 213:24 215:12 215:13 215:15 220:8 230:3 237:9 240:6 240:17 241:1 246:23 247:15 248:15 250:6 252:23 254:2 254:8 255:13 257:7 |
| **they**(133) | 14:1 16:2 23:25 25:5 26:22 30:14 32:10 35:10 35:16 35:22 37:5 37:12 42:14 43:7 45:11 46:4 47:13 47:16 47:22 49:10 49:12 49:13 50:9 50:10 51:12 51:23 52:4 52:6 52:11 52:12 53:8 56:9 56:10 58:21 58:23 61:11 61:12 62:1 62:5 62:9 62:20 63:1 63:3 66:20 66:22 66:25 66:25 69:7 69:24 71:22 73:24 75:22 75:24 78:8 78:12 79:14 79:14 83:20 86:5 87:2 87:6 87:15 87:16 87:20 87:23 92:11 95:20 96:3 96:21 98:5 100:1 100:2 100:6 105:9 107:8 107:10 107:13 107:13 107:16 107:18 127:13 128:2 128:13 129:1 129:4 132:21 133:14 137:9 137:19 138:3 139:2 146:2 152:2 153:7 158:23 160:5 163:1 172:7 172:11 175:20 175:23 176:2 176:7 176:10 176:14 176:15 176:17 176:19 176:24 185:20 203:8 204:23 208:12 210:7 210:16 221:13 223:11 225:5 230:8 234:17 234:22 235:6 236:4 237:21 238:24 247:1 249:25 254:15 254:16 254:17 254:17 257:3 257:9 |
| **they'll**(2) | 85:22 95:18 |
| **they're**(14) | 78:10 87:7 88:19 89:3 95:16 96:3 102:5 102:6 138:3 155:14 170:2 170:19 173:4 227:14 |
| **they've**(3) | 78:9 96:13 96:15 |
| **they'll**(1) | 30:13 |
| **they're**(13) | 14:24 35:9 46:4 46:17 58:19 61:11 61:21 62:6 62:9 62:20 63:4 64:16 68:12 |
| **they've**(6) | 30:9 47:18 58:3 58:5 58:6 63:3 |
| **thick**(1) | 31:24 |
| **thing**(18) | 18:17 56:7 58:3 62:17 71:24 79:14 81:16 93:11 96:11 112:10 112:15 125:11 127:19 154:2 161:24 182:25 199:24 253:13 |
| **things**(31) | 13:16 16:25 20:2 20:3 20:7 32:25 37:6 42:2 42:15 51:1 51:15 55:24 58:19 58:24 62:19 65:24 69:15 74:17 74:18 85:11 93:2 96:22 137:15 140:7 153:16 171:20 171:23 176:13 192:18 237:12 249:10 |
| **think**(80) | 32:22 46:13 47:6 47:21 47:23 87:23 90:16 96:23 97:16 97:16 98:10 115:1 115:25 117:22 117:25 118:6 124:24 129:10 130:7 132:9 134:14 136:5 139:9 139:21 139:24 140:18 140:19 141:1 143:2 146:8 146:12 148:6 149:5 149:9 152:3 152:16 153:22 157:19 160:15 160:21 162:1 163:1 177:5 179:10 183:11 185:1 187:4 196:2 196:23 197:7 202:11 204:8 204:10 225:12 227:4 229:13 232:15 233:1 235:17 237:2 238:2 238:4 239:16 241:3 246:8 249:10 250:21 252:14 252:25 254:15 254:23 255:12 256:17 |
| **thinking**(3) | 81:18 231:11 253:6 |
| **third**(14) | 85:20 86:9 87:24 90:6 100:5 154:9 170:3 181:13 191:11 245:2 249:18 249:20 255:4 255:5 |
| **thirteen**(1) | 214:7 |
| **thirty**(15) | 197:11 197:18 198:4 198:23 202:8 202:12 203:2 203:4 203:14 205:14 206:19 224:11 237:8 245:17 255:14 |
| **thirty-nine**(1) | 217:18 |
| **thirty-six**(2) | 195:23 196:17 |
| **this**(301) | 13:10 13:13 13:15 13:16 13:17 14:8 14:15 15:4 17:10 17:13 17:17 17:17 25:10 25:14 25:23 25:25 26:10 26:22 27:13 29:17 30:1 30:4 30:20 30:25 31:3 31:18 31:20 31:25 32:15 32:23 34:25 36:8 39:3 39:4 39:8 39:9 40:12 41:9 41:10 41:16 43:6 43:13 43:14 43:16 44:2 44:4 46:2 47:6 47:15 47:21 48:8 48:25 50:18 50:18 52:13 54:8 54:10 56:3 56:16 56:17 57:4 58:8 58:10 58:23 59:3 60:9 60:19 61:3 61:6 61:22 62:1 62:7 62:25 63:7 63:25 64:3 66:12 66:12 66:18 67:19 69:16 69:25 70:5 71:8 72:12 72:24 74:23 74:24 75:22 75:12 75:20 76:2 76:11 76:13 76:13 76:13 77:3 77:23 79:8 79:9 82:3 82:4 82:11 82:15 83:10 84:11 85:9 85:22 89:11 85:14 85:15 86:6 86:8 86:21 87:12 89:11 89:11 89:14 89:19 89:21 91:13 91:14 91:16 92:15 92:20 92:20 93:3 93:15 94:18 94:19 95:19 95:22 96:8 97:15 97:22 97:25 98:4 98:8 99:3 99:14 99:15 100:2 101:11 106:21 106:22 107:17 107:22 108:7 108:17 110:9 110:12 110:14 111:1 111:20 112:13 113:14 113:6 114:1 115:3 115:13 116:7 116:23 119:16 120:9 121:5 122:2 122:5 125:9 126:10 127:1 129:7 129:15 129:18 130:16 131:2 131:12 131:17 132:24 133:16 134:4 134:4 134:9 134:11 134:20 135:9 135:21 136:2 137:4 137:5 139:3 139:5 140:7 141:5 142:17 142:20 142:24 143:25 144:4 144:14 144:1 144:19 145:1 145:6 145:13 147:12 148:1 149:1 149:9 149:16 150:12 150:19 151:10 151:13 151:13 151:14 151:14 151:16 152:2 152:22 153:11 155:10 155:11 159:6 159:8 159:10 161:12 161:15 161:25 162:21 163:3 163:19 163:21 165:4 165:7 167:3 167:8 167:10 168:9 168:14 169:15 169:20 170:11 172:15 173:10 173:22 173:23 174:6 174:23 175:21 175:25 176:18 177:12 177:13 177:15 178:7 179:5 179:23 180:7 180:15 180:22 181:18 182:4 182:15 182:22 185:12 185:15 186:8 187:13 187:18 187:24 189:23 194:1 195:3 197:24 199:11 199:14 201:4 201:10 201:15 202:18 203:4 205:9 206:11 208:24 211:23 212:19 213:1 213:14 214:15 215:4 215:16 216:16 216:2 217:6 217:9 217:20 217:25 218:5 |
| **this**(31) | 218:12 221:7 222:17 223:4 223:10 223:25 224:4 224:6 227:1 228:23 231:12 234:8 234:12 234:15 234:24 235:3 237:9 238:10 239:17 240:25 244:3 248:14 252:3 252:6 254:2 255:3 255:7 255:19 255:23 256:19 257:13 |
| **thomas**(1) | 3:34 |
| **those**(156) | 14:25 15:7 15:11 15:14 25:2 28:15 29:22 30:23 31:14 32:11 33:16 38:12 38:12 42:2 44:23 45:6 47:12 47:19 50:21 51:8 52:2 52:24 55:10 55:17 62:19 63:18 65:22 66:19 68:7 70:25 71:9 71:19 73:15 73:16 73:22 74:18 76:18 78:7 78:8 79:5 79:20 79:20 82:19 84:12 85:8 86:3 86:20 87:7 87:10 87:20 89:6 97:25 98:3 102:13 105:25 106:24 109:2 109:5 111:7 111:19 111:20 112:9 114:12 114:17 115:4 116:9 116:11 119:20 119:24 121:18 122:16 123:5 124:15 124:25 127:21 127:24 128:4 128:5 128:14 130:12 131:6 131:9 131:9 133:17 133:19 133:20 133:25 134:2 136:5 136:12 136:16 136:17 137:13 137:18 137:25 138:14 139:1 142:8 142:12 143:21 144:8 144:8 146:24 147:5 147:18 147:22 148:15 148:19 148:22 148:25 150:16 151:8 151:8 151:24 154:3 156:3 160:4 161:24 163:9 163:17 164:2 164:6 164:7 164:9 166:18 172:5 184:9 186:4 187:14 190:19 192:18 199:22 202:12 202:25 204:14 208:4 213:4 213:9 214:22 226:8 227:10 227:17 229:7 229:21 236:8 236:22 237:12 238:6 247:5 247:21 249:16 250:9 254:6 254:7 255:24 256:13 |
| **though**(11) | 16:10 16:11 53:20 96:12 141:2 150:6 203:8 218:16 224:6 227:13 234:15 |
| **thought**(21) | 16:14 107:13 107:16 140:6 151:4 159:17 174:23 175:5 176:7 176:14 184:17 185:20 186:1 189:11 203:12 210:7 218:12 236:23 237:12 238:1 247:25 |
| **thousand**(1) | 109:19 |
| **three**(28) | 39:19 40:3 60:13 86:16 103:25 112:18 114:3 131:2 131:4 131:6 131:7 131:8 131:9 131:9 131:12 133:15 133:17 133:19 168:15 229:10 229:21 230:4 233:2 248:8 248:9 249:17 250:5 251:16 |
| **threshold**(6) | 49:14 49:19 49:23 51:22 52:6 255:15 |
| **threshold."**(1) | 49:4 |
| **through**(40) | 13:18 15:1 15:1 18:14 28:20 41:14 44:7 47:16 49:17 74:21 84:18 89:8 112:8 115:7 126:11 128:14 130:17 131:11 132:5 132:6 133:8 133:9 134:8 136:8 137:18 139:22 141:4 142:15 145:1 148:13 154:1 154:14 158:2 187:6 212:2 212:6 214:23 221:7 257:7 257:11 |
| **throughout**(1) | 102:3 |
| **throw**(1) | 69:9 |
| **thursday**(1) | 13:1 |
| **thus**(1) | 92:4 |
| **time**(74) | 13:17 14:8 16:3 18:10 25:5 25:25 29:22 33:8 61:9 61:9 61:23 62:13 62:14 62:16 63:1 64:6 64:11 70:6 74:18 81:2 81:8 81:12 83:16 83:19 84:25 85:13 85:14 86:16 91:7 92:25 94:15 94:19 97:22 97:25 98:3 107:8 120:9 145:13 148:7 149:18 152:6 152:20 152:21 152:21 154:1 154:14 160:16 161:23 165:7 186:11 191:9 208:17 208:19 209:5 223:21 224:4 237:1 237:10 237:19 238:1 238:17 238:19 238:22 238:25 239:2 239:12 240:4 241:1 241:22 243:20 243:23 250:21 254:21 257:4 |
| **times**(16) | 25:12 69:3 106:3 109:19 112:7 112:11 112:22 133:3 143:12 144:8 152:7 203:4 203:14 207:3 207:4 237:9 |
| **timing**(5) | 61:1 63:13 63:19 64:17 254:14 |
| **tina**(1) | 12:17 |
| **title**(1) | 51:5 |
| **titled**(3) | 149:7 173:4 205:4 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **today**(20) 18:9 18:21 29:4 64:16 71:19 80:4 81:3 90:24 99:13 100:23 101:8 101:22 102:12 106:7 106:17 108:16 120:7 143:22 151:20 254:17 | | **tree**(140) 101:18 103:8 103:13 104:7 104:15 105:10 105:22 106:4 108:25 109:1 110:21 111:4 111:11 111:23 112:8 112:13 112:16 113:3 113:20 113:24 114:1 114:25 115:2 115:9 116:5 116:7 117:14 117:17 118:11 118:14 118:18 119:4 120:19 125:3 125:9 127:13 128:6 128:8 129:6 129:7 129:8 129:15 129:18 129:22 129:22 130:18 130:25 131:7 131:14 131:18 131:23 132:7 133:6 133:7 133:7 133:9 133:25 134:8 134:9 134:13 134:14 134:15 134:21 135:3 135:9 135:13 135:16 135:21 136:4 136:6 136:8 136:20 137:1 137:9 139:4 139:5 139:6 140:19 140:24 141:5 141:21 141:24 142:16 144:20 148:8 148:20 149:1 150:20 150:25 151:14 155:20 156:8 156:10 157:15 162:23 163:4 164:7 172:2 173:18 175:11 175:14 185:2 187:2 187:5 187:10 187:13 187:24 188:8 188:12 189:1 190:11 190:12 191:24 192:6 193:15 211:2 212:3 213:11 213:15 213:20 214:11 214:18 216:16 217:9 217:16 217:20 218:8 223:1 227:6 227:15 230:14 230:18 231:13 232:12 233:4 233:11 245:15 255:21 257:9 | | **try**(21) 59:6 61:8 61:14 63:7 99:5 100:1 100:3 113:12 114:25 115:1 156:14 160:10 160:12 189:24 215:10 215:9 215:16 203:13 230:25 242:20 257:4 | | **understanding**(41) 13:24 35:14 35:19 35:20 42:9 64:10 67:18 74:4 75:12 88:17 108:15 115:18 117:3 117:6 118:23 137:21 138:6 143:4 147:25 148:24 150:6 150:11 151:1 151:9 152:13 154:22 154:24 158:9 166:3 166:7 168:24 168:25 169:22 192:16 202:20 209:9 234:12 234:15 239:17 242:24 243:14 |
| **together**(13) 42:2 69:7 112:9 127:21 137:16 144:8 150:25 154:25 166:22 167:4 183:18 207:6 215:7 | | | | **trying**(6) 62:18 100:4 107:19 185:12 192:20 216:5 242:4 242:5 | | **understands**(2) 221:5 253:6 **understood**(6) 68:20 141:12 186:11 210:21 230:6 242:6 |
| **told**(18) 171:14 175:20 175:23 176:2 176:20 180:19 183:1 210:5 215:21 222:20 223:4 223:10 223:11 223:22 223:24 229:11 244:4 254:5 | | | | **turn**(36) 29:10 36:19 38:23 40:7 40:16 57:2 57:7 65:1 101:24 116:15 128:18 139:4 145:9 145:24 153:8 163:12 164:25 172:16 176:23 178:3 180:1 181:3 181:15 183:9 190:5 191:5 197:2 198:6 204:25 207:21 216:3 218:24 222:3 233:15 234:17 234:22 | | **undertake**(3) 70:11 105:6 245:14 **undertaken**(1) 61:3 **unfortunately**(1) 236:14 |
| **tomorrow**(2) 18:17 257:19 **tonight**(1) 24:14 **too**(3) 31:23 133:8 162:25 **took**(12) 24:11 56:5 68:21 103:10 145:1 148:19 148:22 150:3 151:7 188:12 252:10 252:10 **tool**(2) 108:24 109:24 **tools**(2) 108:12 108:16 **tooth**(1) 107:10 **top**(10) 23:22 28:7 44:12 51:12 80:23 150:19 193:8 205:3 206:24 214:5 | | | | **turned**(3) 143:18 176:22 200:21 **turning**(4) 27:5 36:12 36:20 41:8 **turns**(1) 125:16 **twenty**(4) 195:23 196:18 202:12 242:1 **twenty-one**(2) 206:23 207:4 **twice**(2) 25:13 111:11 **two**(50) 13:23 18:13 24:19 38:9 60:13 66:2 69:22 69:23 70:24 71:20 88:4 93:9 96:18 96:18 108:25 110:15 111:7 113:9 113:12 126:19 127:21 128:1 135:24 137:6 142:3 147:5 149:5 149:19 156:23 169:10 169:19 185:19 187:10 187:10 187:14 188:5 188:20 204:7 207:6 212:17 212:17 219:13 219:16 229:7 230:21 235:24 247:5 248:9 249:17 | | **unhappy**(1) 213:18 **uniform**(1) 122:22 **unique**(2) 30:25 143:15 **united**(2) 1:1 1:18 **university**(3) 102:20 102:22 103:16 **unknown**(1) 68:10 **unjust**(2) 174:17 181:23 **unless**(4) 14:2 72:8 185:18 188:19 **unlikely**(19) 122:24 122:25 123:18 123:22 125:15 125:18 131:21 149:25 163:9 193:17 198:2 198:3 200:2 201:9 201:9 201:10 201:22 203:12 221:23 |
| **topic**(2) 151:20 239:17 **topics**(1) 247:15 **torres**(2) 2:28 10:27 **total**(10) 42:17 42:19 42:20 42:24 113:2 214:11 215:11 215:4 215:19 242:25 **touch**(1) 15:11 **touched**(1) 14:14 **tough**(1) 70:2 **toussi**(1) 12:13 **towards**(5) 43:25 57:4 60:3 60:12 205:3 **track**(2) 197:23 216:5 **trade**(4) 20:8 20:10 21:5 21:7 **traded**(4) 61:17 61:18 61:20 61:20 **trained**(1) 117:18 **training**(4) 103:7 105:2 251:15 258:8 **transaction**(18) 22:12 22:12 30:15 33:18 33:20 61:7 70:7 77:23 78:2 79:10 79:25 81:6 85:15 96:8 200:19 212:21 214:17 243:24 **transactions**(17) 63:23 77:25 123:20 124:13 174:22 179:3 182:3 182:7 185:25 193:19 198:18 200:20 200:24 201:3 205:1 216:14 243:21 **transactions."**(1) 178:16 **transcript**(5) 1:16 1:47 186:7 239:7 258:5 **transcription**(2) 1:40 1:47 **transcriptionist**(1) 258:12 **transfer**(6) 21:19 31:8 31:12 198:20 198:25 245:16 **transferred**(2) 29:19 29:25 **transfers**(5) 85:12 123:20 124:12 206:13 207:9 **translate**(2) 198:23 202:7 **translation**(1) 201:20 **trb**(1) 244:20 **treat**(5) 106:16 204:2 230:6 231:12 247:5 **treated**(10) 45:24 96:1 230:3 230:5 230:5 230:9 230:10 247:1 249:17 255:7 **treating**(1) 176:3 **treatment**(1) 250:10 | | **trees**(58) 103:20 108:22 110:2 114:7 115:23 118:25 119:6 124:25 127:2 127:4 127:10 127:15 127:19 127:20 127:22 128:5 128:5 128:11 128:17 128:24 129:2 135:5 137:6 140:20 142:8 142:12 144:18 145:25 146:1 148:12 153:2 153:6 154:11 162:5 162:12 162:18 162:19 172:20 173:3 173:8 184:22 185:11 190:4 190:16 190:19 193:2 203:21 230:3 230:17 231:10 231:20 232:25 234:9 235:4 235:21 235:25 236:6 247:10 **trehan**(1) 10:22 **trial**(4) 14:14 162:16 188:2 188:19 **tribune**(97) 1:7 5:26 5:26 7:4 7:22 14:16 19:13 26:18 26:19 27:11 27:15 27:19 28:1 29:6 29:17 29:20 31:4 31:13 32:5 32:15 32:20 34:8 34:12 35:4 35:5 35:10 35:12 36:23 38:5 38:6 38:8 38:8 43:17 48:10 52:15 52:23 56:2 56:25 57:10 57:13 57:17 57:18 57:19 59:10 60:10 64:14 65:4 65:15 65:17 67:6 67:13 67:23 69:4 69:4 69:15 71:1 73:12 73:17 73:20 75:8 75:9 75:15 75:23 76:15 76:20 81:21 82:2 82:24 85:22 200:23 201:2 206:14 207:10 216:19 217:7 219:13 219:19 230:15 231:8 231:21 231:2 232:6 243:25 244:5 **tribune's**(4) 82:11 82:17 83:12 219:12 **tribune's**(12) 8:25 26:17 26:21 31:3 33:8 48:10 52:17 53:1 53:9 57:5 59:12 63:11 **tricadia**(2) 11:4 11:4 **tried**(3) 31:22 203:5 **trier**(2) 109:2 251:13 **trigger**(1) 42:18 **trouble**(1) 163:7 **true**(27) 25:24 54:25 58:17 62:17 72:15 73:18 75:17 82:18 83:1 83:18 84:12 85:4 86:15 89:17 89:22 90:16 171:19 184:21 185:10 186:16 195:19 196:15 206:2 233:1 235:20 236:3 238:23 **trump**(1) 9:35 **trust**(14) 4:29 6:31 10:27 49:17 49:18 86:17 92:5 166:12 166:17 166:18 224:19 224:25 225:4 225:18 **trustee**(1) 92:5 **truthful**(4) 186:22 186:23 208:16 240:12 | | **type**(9) 112:13 119:3 134:20 140:3 161:12 238:7 242:19 253:11 256:5 **types**(1) 220:8 **typical**(1) 118:23 **u.s**(1) 12:5 **uh-huh**(1) 171:24 **ultimate**(6) 124:19 139:4 148:1 148:25 189:7 247:20 **ultimately**(4) 24:1 63:10 98:6 175:11 **um-hum**(4) 73:21 100:8 178:25 180:3 **umm**(1) 219:22 **un-redacted**(2) 16:12 17:12 **una**(1) 46:24 **unambiguous**(2) 156:3 182:5 **uncertain**(6) 109:15 111:4 111:9 114:8 210:6 222:24 **uncertainty**(2) 175:24 176:2 **uncomfortable**(1) 46:8 **uncritically**(1) 253:21 **under**(68) 17:15 23:19 34:8 36:23 42:18 43:9 48:21 49:2 49:15 54:13 54:14 56:14 56:19 59:10 69:13 71:20 71:25 73:22 75:13 76:13 76:13 76:20 78:5 79:3 79:18 80:5 80:21 86:4 88:15 88:7 89:5 91:1 91:3 91:3 91:23 92:4 92:8 92:13 94:7 94:8 97:11 139:16 140:4 166:25 172:4 173:20 174:12 178:7 178:8 186:11 188:13 193:8 194:6 200:3 212:24 216:17 217:9 217:23 219:8 222:6 222:10 227:3 233:19 253:2 255:3 256:2 256:2 257:13 **undergraduate**(1) 103:2 **underlie**(2) 84:11 254:4 **underlying**(1) 196:3 **understand**(31) 13:19 34:21 49:6 49:10 50:4 59:17 92:10 94:16 101:20 104:3 114:20 145:18 151:6 154:19 173:7 183:17 185:12 185:17 187:9 189:1 189:4 199:10 202:17 206:18 211:25 220:2 224:19 242:2 236:9 237:25 251:13 | | **unlikely."**(1) 122:25 **unpack**(1) 86:12 **unreasonable**(6) 186:5 241:2 241:11 241:15 241:25 242:2 **unrelated**(1) 203:22 **unsecured**(2) 3:25 5:34 **until**(14) 18:9 18:17 18:21 93:7 94:13 95:18 96:20 100:11 104:3 152:21 252:9 252:17 252:18 254:16 **upon**(28) 14:14 15:11 16:2 23:20 42:17 46:25 51:14 56:2 60:16 119:5 139:12 139:15 140:4 191:15 201:5 227:6 227:21 229:3 251:8 251:9 251:17 252:2 252:19 253:12 253:13 253:20 256:5 256:6 **upstreaming**(2) 142:3 142:25 **usa**(1) 9:42 **usage**(1) 126:9 **usc**(1) 49:16 **use**(25) 24:21 47:19 78:22 78:22 108:14 108:16 109:17 110:2 110:2 116:1 153:17 154:10 155:19 156:11 156:18 162:4 162:11 162:13 168:20 194:22 213:19 226:2 242:6 254:5 254:8 **useable**(1) 139:15 **used**(33) 58:5 76:4 77:5 105:16 105:22 107:22 108:19 116:7 122:12 124:24 125:3 127:2 127:5 127:22 128:24 143:21 151:14 154:2 154:4 155:18 155:18 156:7 156:24 158:11 168:5 169:21 183:10 187:2 194:24 202:12 225:23 226:1 226:3 **useful**(1) 111:22 **using**(26) 46:9 101:18 101:21 112:13 114:24 115:22 119:6 119:10 125:12 125:13 125:19 126:8 139:23 144:14 154:15 156:4 156:4 156:15 157:3 157:14 164:6 168:2 168:19 169:22 220:24 248:8 **usually**(4) 18:11 114:13 115:1 184:10 **utilizing**(1) 122:22 **vague**(1) 245:18 **valerio**(1) 10:6 **valid**(5) 236:24 237:2 238:1 239:13 240:2 240:5 **validate**(1) 253:14 **valuation**(2) 107:7 109:24 |

**TRIBUNE.3.17.11.REV2.DOC**

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **value**(116) 101:17 105:11 107:18 108:1 108:2 109:12 109:17 109:21 110:3 110:13 110:22 112:14 112:21 113:4 113:19 114:25 115:11 115:20 117:8 119:5 119:15 120:1 127:1 127:25 128:9 131:1 132:18 132:19 132:22 133:1 133:11 135:12 138:24 143:1 143:25 144:4 144:5 144:9 144:13 148:2 148:5 148:25 149:3 150:12 150:16 151:10 151:12 151:14 151:18 154:11 156:15 157:1 157:12 157:15 162:9 164:19 165:23 168:1 169:1 169:3 169:14 169:16 169:25 170:3 170:15 170:19 170:22 170:25 175:10 182:23 188:23 189:7 196:22 207:17 208:1 209:7 209:16 210:14 210:24 214:11 215:1 215:6 215:6 215:19 218:6 221:25 222:17 224:24 225:19 225:20 226:5 226:7 227:2 228:12 228:16 230:22 237:1 237:4 237:19 238:19 238:25 239:13 240:4 240:7 240:18 241:1 241:1 242:7 247:20 248:4 248:12 249:2 252:3 253:17 254:2 255:17 | | **voting**(10) 34:14 34:19 40:2 40:6 48:20 48:24 51:13 51:14 73:16 94:8 | | **was**(266) 13:23 17:5 18:14 18:18 24:12 27:13 29:20 39:5 39:7 39:7 39:9 39:9 44:2 46:6 46:7 46:8 46:9 46:15 48:9 50:17 52:3 52:8 55:24 58:1 68:21 72:15 74:17 77:13 77:16 77:23 80:18 81:6 81:1 81:16 82:12 86:2 86:13 87:3 89:15 91:13 93:6 94:14 95:4 96:19 97:7 97:8 97:11 98:10 98:12 99:2 101:17 103:9 103:14 103:18 103:23 104:1 104:12 107:4 107:5 107:6 107:8 107:12 107:13 107:15 108:10 115:16 115:19 115:20 116:1 121:12 121:15 121:15 124:20 125:12 125:12 125:12 125:13 125:18 125:19 126:5 126:8 126:14 126:16 126:25 131:3 131:21 132:21 133:1 133:10 133:18 136:10 137:5 137:6 139:20 139:22 140:7 140:19 146:25 147:3 148:8 149:23 149:24 150:1 150:1 151:5 152:3 152:16 154:10 156:21 156:24 157:8 157:9 157:10 157:12 157:15 157:17 157:22 160:12 160:16 161:4 161:5 161:7 161:10 161:16 161:25 161:25 162:1 162:8 162:13 163:13 171:25 172:2 172:3 172:6 172:11 172:15 172:17 173:12 173:25 175:7 175:25 175:24 176:8 176:15 176:17 176:18 176:19 177:13 177:16 178:19 180:16 182:18 182:25 183:1 183:6 183:11 183:25 184:11 184:16 185:23 185:25 186:4 186:8 186:15 186:17 186:22 187:2 187:4 188:22 189:16 189:17 196:3 196:11 197:7 197:11 197:16 197:24 197:25 199:8 199:10 201:8 201:9 201:10 203:9 203:12 204:11 204:17 204:18 204:22 208:24 208:25 209:22 210:1 210:2 210:7 215:17 215:22 217:24 218:12 219:13 220:24 222:23 222:24 222:25 223:20 223:22 225:23 226:16 227:15 229:18 230:25 231:2 231:7 231:8 231:15 232:8 235:8 235:10 235:10 235:11 235:19 236:24 237:2 237:4 237:15 237:18 237:21 237:23 238:1 238:4 238:4 238:8 239:17 240:3 240:12 240:12 241:11 241:11 241:12 241:25 242:2 242:4 242:12 242:16 243:21 244:2 244:7 244:15 247:25 248:10 251:19 251:22 252:9 252:18 252:2 254:13 254:19 254:20 254:20 254:22 256:17 257:2 257:3 258:2 | | **we've**(24) 85:14 89:8 97:1 112:8 112:18 113:17 133:6 134:7 141:7 143:22 144:18 149:9 211:5 211:13 211:13 211:14 211:20 211:23 212:1 212:9 212:24 214:7 214:24 246:9 |
| **values**(4) 168:18 202:3 221:18 237:7 | | **voting**(1) 109:16 | | | | **web**(2) 20:6 58:11 |
| **valuing**(1) 109:16 | | **varied**(1) 79:18 | | | | **website**(1) 82:5 |
| **varied**(1) 79:18 | | | | | | **wedge**(1) 164:5 |
| **variety**(6) 20:20 27:23 28:17 29:18 52:15 71:6 | | | | | | **wedges**(1) 163:25 |
| | | | | | | **week**(1) 252:13 |
| | | | | | | **weeks**(2) 89:15 186:8 |
| **various**(31) 26:23 29:21 33:12 48:14 55:19 73:5 73:7 76:20 78:9 78:19 79:5 79:24 82:15 82:20 85:4 86:21 86:23 117:8 122:14 130:14 141:10 156:5 158:1 161:14 172:1 172:3 172:4 207:17 208:11 209:11 209:12 214:10 | | **waivers**(20) 29:14 29:18 29:21 29:22 29:22 30:13 31:4 55:12 56:4 56:6 77:20 85:7 87:6 87:17 87:18 87:19 90:5 97:1 97:4 97:18 | | **weight**(1) 56:18 |
| | | | | | | **weighted**(4) 109:18 202:21 202:24 213:24 |
| | | **waives**(1) 30:6 | | | | **weil**(1) 8:27 |
| | | **waiving**(1) 31:10 | | | | **weiss**(1) 7:30 |
| | | **walk**(3) 131:11 133:8 142:15 | | | | **weitman**(1) 7:23 |
| | | **walking**(1) 130:17 | | | | **welcome**(1) 15:13 |
| **vast**(1) 239:2 | | **want**(54) 17:24 30:19 43:2 43:21 47:13 47:13 51:23 56:4 56:5 60:7 63:3 68:13 69:24 72:9 76:6 76:12 78:22 80:13 91:17 102:9 114:6 119:13 121:4 145:24 151:19 154:19 172:20 173:3 173:7 183:9 184:2 184:3 184:5 189:24 191:11 196:10 198:11 198:15 202:17 205:3 206:9 206:18 207:25 211:22 216:9 216:12 216:21 233:18 239:9 242:14 244:15 249:13 250:19 254:19 | | | | **well**(113) 13:11 14:16 17:11 17:20 18:5 18:7 20:7 21:5 23:20 24:10 26:18 37:12 42:9 43:18 45:19 49:10 50:1 59:17 61:6 62:5 63:22 66:4 67:12 72:6 74:20 77:22 79:7 80:15 81:23 82:1 83:25 85:10 88:7 88:17 89:23 93:5 94:20 95:13 104:23 104:25 106:16 107:14 108:2 108:20 108:24 111:3 112:15 113:14 114:4 115:1 118:1 119:18 122:3 125:11 126:4 127:14 128:4 130:3 130:21 131:19 132:12 133:10 134:7 135:4 135:10 135:23 136:7 137:5 137:21 137:22 142:20 143:4 144:5 144:23 146:25 148:13 149:19 149:24 151:1 151:13 155:11 155:24 156:20 157:23 159:10 161:6 161:20 162:8 163:6 163:16 164:6 166:9 167:9 168:15 169:18 176:23 177:3 179:12 181:13 185:17 191:24 192:19 196:2 213:13 215:9 222:21 223:2 223:7 225:13 225:17 237:14 243:23 247:15 |
| **vazquez**(1) 5:41 | | | | | | |
| **venture**(1) 224:10 | | | | | | |
| **venues**(1) 144:24 | | | | | | |
| **verbal**(7) 122:13 122:16 123:1 156:4 157:23 158:2 158:19 | | | | | | **wells**(2) 4:42 9:46 |
| | | | | | | **went**(11) 24:11 92:21 95:21 102:22 103:14 103:16 104:15 126:2 158:2 208:4 208:7 |
| **verifying**(1) 227:9 | | **wanted**(11) 17:9 17:16 49:20 50:3 92:19 139:10 156:22 213:23 218:7 219:4 239:23 | | | | **were**(99) 16:1 23:22 30:11 43:1 68:22 71:2 72:17 77:14 80:10 82:5 83:17 84:13 84:25 87:20 88:5 90:24 92:22 103:25 104:3 106:11 107:9 107:10 107:13 107:25 114:21 115:13 128:6 130:8 139:23 140:18 141:4 141:6 144:23 144:25 146:2 147:2 147:18 148:4 152:21 156:23 157:9 160:19 161:18 163:17 164:9 164:11 169:19 171:12 173:11 176:10 176:14 176:15 180:19 184:9 184:13 186:11 187:6 192:20 192:20 194:7 195:19 196:15 197:11 199:17 203:1 204:23 208:19 208:22 209:5 209:17 210:2 210:13 210:17 219:15 221:24 230:8 232:6 232:10 232:12 233:12 233:25 235:6 235:20 235:23 235:24 236:4 236:19 237:17 238:8 242:4 242:5 242:9 242:17 243:24 247:1 247:24 249:25 256:23 |
| **version**(4) 15:24 16:5 17:12 132:7 | | | | | | |
| **versus**(1) 242:25 | | **wanting**(1) 88:8 | | | | |
| **very**(38) 13:11 16:16 17:20 22:6 28:7 29:11 31:22 31:22 40:20 40:23 48:5 61:7 69:7 72:12 76:5 90:6 110:6 111:22 115:7 115:10 118:2 127:12 134:11 157:17 162:10 162:10 162:21 163:2 163:6 182:8 200:21 213:18 224:10 244:5 253:4 255:1 257:25 | | **wants**(1) 79:2 | | | | |
| | | **wardwell**(2) 2:4 9:4 | | | | |
| **vez**(1) 46:24 | | | | | | |
| **video**(1) 80:17 | | | | | | **weren't**(4) 87:2 161:14 176:10 254:15 |
| **view**(22) 42:15 47:2 47:20 49:11 70:1 74:15 119:2 155:19 158:21 158:22 159:16 161:22 162:19 163:3 169:4 185:23 218:15 230:22 237:22 247:5 248:17 248:21 | | | | **washington**(4) 3:16 3:50 5:23 64:22 **wasn't**(11) 92:24 93:6 93:8 98:15 147:19 183:7 210:21 223:10 241:15 242:1 252:6 | | **west**(2) 4:7 5:8 |
| | | | | | | **we'll**(6) 18:10 18:20 37:22 54:2 68:14 |
| | | | | | | **we're**(10) 21:6 21:20 39:6 43:15 45:19 |
| | | | | | | 45:19 55:5 59:18 61:13 70:3 |
| **viewed**(2) 42:11 146:1 | | | | **waterfall**(12) 116:24 117:2 139:18 140:2 143:22 152:18 165:13 165:16 225:22 226:2 253:15 257:10 | | |
| **views**(1) 140:1 | | | | | | |
| **viking**(1) 6:41 | | | | | | **we've**(3) 31:22 38:11 62:14 |
| **vinson**(1) 8:42 | | | | **wave**(1) 30:10 | | **wharton**(1) 7:30 |
| **violate**(5) 36:25 37:5 37:9 67:8 74:10 | | | | **wavelength**(1) 74:21 | | |
| **violates**(2) 74:8 74:9 | | | | **way**(69) 19:24 23:25 24:22 33:21 43:8 50:10 51:14 55:18 56:11 62:11 62:23 63:5 78:21 78:22 96:14 108:2 109:7 121:18 126:18 143:8 152:22 152:25 158:13 161:1 163:1 164:18 173:25 176:18 176:20 176:22 176:23 177:2 177:3 180:12 180:13 180:21 182:10 184:18 187:13 187:16 188:11 190:19 191:24 192:5 193:25 196:1 196:24 198:4 202:7 202:12 202:13 203:20 203:25 210:6 213:25 214:10 215:10 215:16 217:20 218:8 226:20 230:13 230:13 230:17 230:18 230:21 234:25 233:4 | | |
| **violation**(2) 23:18 67:6 | | | | | | |
| **violations**(2) 35:13 97:17 | | | | | | |
| **virginia**(1) 20:13 | | | | | | |
| **virtually**(2) 135:11 155:16 | | | | | | |
| **virtue**(2) 32:15 32:20 | | | | | | |
| **vis-à-vis**(1) 79:12 | | | | | | |
| **vividly**(1) 161:1 | | | | | | |
| **voices**(4) 23:4 23:24 23:24 53:24 | | | | | | |
| **voir**(2) 19:10 259:2 | | | | | | |
| **volume**(18) 122:3 177:20 178:3 180:2 181:3 181:8 193:4 198:6 198:8 199:2 199:5 199:9 199:11 199:18 200:12 218:24 222:3 233:15 | | | | **ways**(4) 134:8 156:5 162:25 252:8 **we'd**(4) 81:1 98:6 98:19 134:25 **we'll**(9) 73:9 98:3 100:11 100:12 102:4 154:1 171:3 257:20 257:20 | | |
| **vora**(1) 9:43 | | | | | | |
| **vote**(1) 51:12 | | | | **we're**(17) 74:20 77:21 83:22 91:13 96:19 117:25 128:17 131:12 133:10 133:14 135:4 136:12 138:22 165:21 234:25 250:17 250:19 | | |
| **votes**(2) 51:24 52:11 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **what**(228) 14:11 15:17 15:24 16:5 16:7 16:13 21:12 22:22 23:10 24:8 26:16 27:9 27:13 28:15 29:15 30:13 31:16 31:22 32:18 35:5 37:4 38:4 38:16 39:3 39:6 41:9 41:17 41:24 42:5 42:8 43:2 43:25 44:8 44:10 45:10 45:14 45:23 47:13 48:3 49:6 50:4 50:8 50:21 52:8 52:11 53:7 53:20 56:8 58:17 60:2 61:2 61:5 61:6 61:11 61:14 62:4 62:5 63:3 63:17 64:12 65:6 65:22 66:19 68:19 69:16 74:6 78:1 78:3 78:25 79:11 80:16 83:22 87:3 87:12 88:21 88:25 93:12 94:9 94:15 95:10 95:11 96:3 97:4 98:21 100:1 100:2 103:12 104:5 107:9 108:10 108:22 109:19 109:21 111:19 112:3 114:24 115:10 115:12 115:21 115:18 115:24 119:8 120:20 121:4 122:12 124:18 125:13 127:12 130:4 130:11 131:12 131:17 132:24 135:8 136:10 136:16 137:5 137:8 138:21 138:22 141:21 142:18 142:21 144:13 144:22 146:15 147:14 147:25 148:10 148:15 148:24 149:10 149:22 150:11 150:24 151:9 155:9 156:21 157:1 157:8 157:21 159:8 159:17 159:20 160:4 160:4 161:2 161:7 163:14 163:24 164:11 164:20 166:7 167:8 167:10 169:23 170:9 172:2 172:12 172:14 173:7 175:24 177:16 178:16 179:13 182:1 182:13 183:12 183:2 183:20 184:8 184:10 184:12 184:15 184:16 184:17 185:2 185:3 185:17 185:20 186:1 186:24 187:4 187:22 188:14 189:11 193:21 196:25 201:14 204:6 208:7 210:3 210:4 211:19 212:1 212:7 215:18 218:13 221:6 221:11 223:14 223:15 230:19 231:1 232:16 232:17 233:24 234:2 235:5 235:9 235:10 239:17 242:3 242:4 242:18 242:19 246:25 247:19 248:3 248:7 251:20 251:22 253:20 253:21 254:18 254:24 255:9 | | **whether**(116) 23:15 23:22 23:23 24:2 30:2 31:7 31:12 31:13 32:13 33:12 33:14 33:17 34:13 35:16 37:10 37:15 42:2 45:7 46:12 49:25 50:5 50:6 52:4 52:5 61:23 65:3 67:21 69:24 74:18 78:2 78:9 78:10 88:22 92:23 93:18 96:12 96:13 101:25 105:11 118:7 119:2 119:15 124:20 125:12 125:13 128:24 131:1 131:3 133:12 135:4 142:1 142:25 145:19 146:9 146:17 146:18 150:1 151:3 154:18 158:18 160:12 161:9 169:4 170:6 171:13 173:11 174:20 175:5 178:14 179:1 179:6 179:23 180:10 182:2 182:5 183:25 185:22 186:16 187:18 192:1 192:19 192:23 202:6 202:14 203:13 204:11 204:12 204:18 205:24 210:15 216:18 217:10 217:11 217:22 226:13 226:20 226:22 227:9 227:14 228:15 228:17 229:10 229:20 230:8 231:22 235:11 245:9 245:20 245:23 247:5 247:19 251:8 252:12 254:3 255:2 | | **will**(99) 13:8 13:10 13:14 15:11 15:13 16:21 16:24 18:9 18:14 21:9 25:21 26:20 26:22 26:23 27:14 27:16 27:17 27:19 30:2 30:2 31:24 33:11 33:16 33:17 33:22 33:24 34:10 34:19 36:8 37:5 37:9 37:13 37:16 40:2 40:4 41:1 42:14 42:21 43:14 43:24 47:20 47:22 52:2 52:21 52:24 53:8 55:19 56:1 56:18 57:17 57:18 58:25 59:11 59:22 60:17 61:1 61:10 62:9 63:11 63:18 63:20 64:6 65:3 65:12 67:8 67:22 69:2 69:12 69:19 69:24 85:23 85:25 86:8 87:6 87:10 87:15 90:8 90:12 100:2 100:14 110:13 129:7 166:12 166:13 166:24 190:24 191:1 192:15 205:13 205:17 205:20 207:13 213:18 217:25 222:14 224:12 246:8 251:1 257:19 | | **witness**(53) 13:6 13:10 13:15 15:5 16:10 18:16 18:24 24:14 24:18 24:21 25:1 25:4 25:9 68:16 70:15 92:17 93:6 93:15 93:17 94:1 94:18 98:4 100:19 100:22 117:21 120:11 120:20 139:11 139:14 139:22 140:1 177:20 185:1 194:20 196:2 211:9 221:2 221:10 227:24 229:17 232:15 232:21 234:23 241:4 243:2 245:17 245:22 245:25 246:4 251:5 251:14 252:19 257:21 |
| | | | | | | **witness's**(1) 244:14 | |
| | | | | | | **witnesses**(2) 18:13 259:2 | |
| | | | | | | **won't**(2) 71:16 77:11 | |
| | | | | | | **won't**(1) 30:7 | |
| **which**(141) 15:25 16:9 20:10 20:17 22:22 24:1 24:22 27:2 29:1 30:11 31:17 35:22 36:20 38:14 38:24 40:8 40:19 42:16 46:15 47:7 47:14 48:8 48:13 51:23 52:20 54:4 56:19 56:24 57:3 57:10 58:19 59:8 61:10 61:19 67:10 69:9 71:16 74:24 76:10 78:6 80:8 80:15 80:18 81:6 86:17 88:4 93:18 94:6 96:2 96:17 96:20 100:1 100:12 102:11 103:14 104:12 104:25 108:8 108:22 111:10 112:7 112:23 112:24 112:25 113:2 113:4 113:24 114:13 117:7 117:10 125:16 126:4 126:5 126:9 126:11 126:18 127:22 126:8 128:8 131:14 132:2 132:4 132:5 132:9 132:22 133:2 133:2 133:3 133:21 134:14 134:23 140:19 142:2 143:12 143:17 143:18 148:6 148:16 150:1 151:11 151:17 151:18 156:1 156:21 156:22 157:10 160:2 162:14 163:13 163:16 167:20 169:7 169:2 172:7 172:16 172:21 179:1 179:24 186:3 190:19 192:3 193:16 196:3 197:23 198:16 199:2 199:4 200:6 200:19 205:4 209:7 211:9 214:10 216:9 217:8 236:25 252:20 253:1 255:5 255:5 256:13 | | **william**(1) 4:37 | |
| | | | | **willing**(2) 77:25 78:10 | |
| | | | | **wilmer**(1) 6:10 | |
| | | | | **wilmington**(16) 1:10 1:35 2:18 2:25 2:49 3:29 4:19 4:26 4:29 4:39 4:46 5:9 6:31 13:1 19:13 86:17 | |
| | | | | **wilson**(1) 10:14 | |
| | | | | **win**(3) 109:20 187:18 188:19 | |
| | | | | **winning**(6) 183:25 187:21 202:9 202:19 204:19 233:1 | |
| | | | | | | **worked**(8) 16:1 84:2 96:12 96:15 104:1 108:12 118:10 193:25 |
| **what's**(11) 82:2 92:19 96:9 96:9 162:7 162:18 164:5 166:3 166:7 169:22 216:5 | | | | | | **working**(6) 80:5 83:12 114:23 161:21 194:7 228:24 | |
| **whatever**(5) 31:2 64:1 77:16 79:2 200:2 | | | | **wires**(1) 11:21 | |
| **what's**(8) 21:3 34:17 35:19 37:19 57:21 59:16 63:20 63:21 | | **while**(18) 14:1 14:8 43:6 64:1 64:11 70:5 78:19 85:18 95:18 103:9 104:1 129:25 141:1 181:16 194:7 208:10 219:3 249:18 | | **wish**(1) 62:1 | | **works**(6) 117:3 117:6 129:15 142:17 192:5 230:14 |
| | | | | **wishes**(2) 22:8 145:19 | |
| **when**(85) 16:2 16:17 16:22 19:12 21:12 21:17 24:12 29:18 29:19 30:7 30:18 30:25 39:5 41:5 43:13 45:19 47:4 47:21 55:23 56:5 58:21 59:3 59:19 61:2 61:6 63:24 64:7 72:10 72:17 74:7 80:3 80:7 84:14 85:20 85:22 89:3 90:24 92:14 94:15 95:4 95:22 97:2 99:17 103:5 107:25 109:6 115:16 124:8 136:7 138:21 157:14 161:12 161:20 161:20 164:10 166:15 173:17 173:22 174:23 175:4 178:4 181:8 189:1 189:14 189:19 190:6 192:9 193:6 198:9 201:7 202:20 208:7 218:25 221:1 221:13 230:12 237:9 238:23 239:1 240:6 240:12 240:17 250:2 251:16 253:23 | | **with**(246) 13:5 13:13 14:25 15:4 15:17 16:1 16:1 16:12 16:20 21:1 21:21 22:15 22:17 24:21 24:24 26:1 26:2 26:10 26:17 27:12 27:15 27:19 27:25 28:12 30:13 31:20 33:1 33:13 34:1 35:12 35:24 35:25 37:23 38:1 38:13 39:5 43:16 43:19 44:10 45:23 46:8 46:18 46:20 46:21 46:22 47:4 48:10 50:10 50:11 50:22 53:11 53:17 53:22 54:21 55:1 55:7 56:1 59:10 61:7 61:10 61:15 63:23 64:13 64:13 65:16 68:3 72:4 73:5 74:3 74:16 75:9 75:15 75:16 75:20 75:24 76:3 76:7 76:11 77:4 78:14 78:15 79:3 79:3 79:5 81:13 82:16 82:16 82:24 83:3 83:6 83:9 83:15 83:19 83:21 84:2 85:7 85:8 85:15 88:6 89:20 92:1 92:18 92:23 93:3 94:2 94:14 94:17 95:20 96:9 96:17 96:18 96:23 97:18 97:21 98:12 99:14 99:17 99:19 100:4 100:21 100:22 100:22 102:1 102:21 103:16 107:17 108:4 108:7 110:21 113:9 114:4 114:4 114:8 114:16 114:23 115:5 117:7 117:10 117:16 118:10 118:12 118:13 118:17 119:19 121:5 123:12 123:11 123:17 123:20 124:4 124:13 126:10 127:10 129:5 131:13 133:21 134:3 135:24 135:25 136:13 138:16 142:20 143:6 143:10 144:10 146:16 146:17 147:14 148:11 151:21 151:24 152:8 152:10 152:22 152:25 159:17 161:25 163:7 165:22 165:25 167:6 167:9 172:15 174:19 174:21 175:14 175:16 177:12 177:19 178:13 178:16 179:3 179:6 179:23 181:12 181:25 182:4 186:25 190:1 191:7 193:12 193:18 193:4 194:1 194:13 195:2 195:18 198:3 200:8 202:6 203:14 206:3 206:24 208:2 210:13 211:8 214:14 216:12 216:14 219:17 220:21 221:24 223:16 226:25 229:4 233:24 235:5 237:19 238:7 238:16 239:16 240:24 241:19 245:15 246:18 246:22 247:11 251:8 251:11 254:21 254:24 255:2 255:13 256:18 256:21 257:20 | | **world**(17) 158:21 158:22 161:23 189:22 192:14 192:19 257:4 |
| **white**(1) 9:46 | | | | | | |
| **who**(21) 15:12 21:20 23:11 44:5 51:7 58:7 58:22 75:23 87:14 95:24 103:18 117:12 118:14 143:19 152:10 201:20 228:5 241:1 241:19 253:23 255:24 | | | | | | |
| **who's**(3) 98:8 228:2 254:3 | | | | | | |
| **whole**(1) 155:24 | | | | | | |
| **whose**(2) 150:7 164:3 | | | | | | |
| **who'd**(2) 25:4 47:19 | | | | | | |
| **where**(73) 19:13 24:8 24:15 24:24 24:24 35:2 39:14 46:6 46:19 50:17 52:8 56:12 56:14 59:1 69:13 83:23 91:20 97:16 97:17 97:19 102:20 102:22 107:10 108:11 109:11 111:23 112:19 113:15 114:11 114:17 116:9 117:7 122:15 126:8 133:10 133:14 133:25 138:17 141:24 144:23 147:5 147:9 147:10 147:12 147:12 147:18 148:21 149:16 156:24 172:3 172:6 184:15 189:10 195:20 199:14 206:16 208:14 210:5 210:13 210:25 211:22 211:25 212:19 213:17 214:25 216:13 216:25 217:16 218:1 239:23 244:5 247:24 257:9 | | **why**(34) 31:10 40:24 47:6 55:22 57:23 83:22 102:18 110:12 128:2 128:14 131:13 132:6 134:13 135:2 137:19 138:3 139:4 143:3 154:12 155:9 155:23 157:21 166:15 167:13 167:21 168:12 168:24 179:13 207:21 223:11 223:24 239:12 240:5 252:6 | | **within**(5) 25:2 60:20 61:9 156:21 224:12 | | |
| | | **wild**(1) 12:9 | | **without**(13) 14:24 15:10 19:24 95:24 101:13 119:18 119:22 133:8 226:8 227:9 228:10 242:3 253:16 | | |
| | | **wiley**(2) 5:20 83:9 | | | | |
| **whereas**(1) 175:4 | | | | **withdraw**(1) 179:16 | | |
| **whereupon**(1) 258:2 | | | | **withdrawn**(1) 13:23 | | |
| **wherever**(1) 87:18 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **would**(255) 13:17 14:6 15:6 15:20 16:5 18:16 19:19 21:15 21:17 22:13 23:10 23:14 23:16 23:18 23:21 23:23 26:1 27:12 28:7 29:10 29:25 30:16 30:21 30:22 31:4 31:9 31:10 31:13 34:9 34:12 35:9 36:20 37:20 41:8 41:21 42:11 43:12 44:24 45:3 45:24 46:13 46:14 49:12 49:16 50:5 53:2 54:3 56:9 56:15 57:25 59:7 62:17 62:23 66:2 67:4 68:25 69:14 71:1 71:24 74:12 74:15 74:18 75:12 75:22 75:22 77:9 77:15 77:18 77:19 77:20 78:3 78:8 79:5 79:7 79:12 79:25 81:12 81:18 83:11 83:16 83:20 86:3 86:5 86:5 87:21 87:23 88:3 88:13 91:5 91:9 92:7 92:12 92:14 92:23 93:19 94:1 94:4 96:11 96:16 97:22 100:17 101:14 108:21 109:20 109:21 111:5 111:6 119:4 120:18 121:24 125:13 128:16 128:1 129:13 131:4 132:22 137:7 146:21 149:25 150:2 150:5 151:12 151:15 157:2 162:10 162:14 163:2 163:3 163:6 165:11 167:6 167:11 173:12 174:2 174:17 174:20 175:6 175:10 175:15 176:23 176:24 177:2 178:1 179:2 180:10 181:15 181:23 182:2 182:4 182:6 182:10 182:22 183:1 183:16 183:24 184:3 186:4 187:24 188:1 188:5 188:11 188:14 188:14 188:20 188:21 188:23 191:17 191:22 192:7 192:10 192:17 192:2 194:13 194:24 195:2 195:18 195:20 195:22 196:12 196:17 196:21 196:25 197:1 197:12 197:19 198:24 201:4 202:6 203:2 203:5 203:8 203:14 203:23 206:2 206:4 206:7 206:12 207:9 208:22 210:15 212:6 214:6 214:14 215:12 215:19 215:21 215:2 217:11 217:11 217:12 219:17 219:25 220:7 220:12 220:21 224:4 224:24 225:5 226:14 226:25 227:2 228:2 230:23 232:7 233:11 233:24 234:17 234:21 234:22 235:2 235:20 235:20 235:21 235:25 236:3 236:5 238:7 238:13 238:16 238:18 238:22 239:1 240:24 241:2 242:14 244:15 246:25 247:20 248:4 248:7 255:4 255:19 256:11 256:15 256:22 | | **yes**(250) 18:1 18:4 20:24 22:6 27:12 31:15 32:17 34:16 36:15 37:18 38:3 38:17 39:2 39:4 39:15 40:25 44:17 49:5 50:7 50:15 54:15 57:20 58:1 59:15 59:24 63:14 65:10 66:16 67:8 68:1 68:16 71:13 71:22 73:13 74:25 80:22 87:23 89:8 89:13 97:10 97:1 99:25 100:13 101:1 101:23 102:2 102:17 103:1 103:9 103:25 105:20 106:2 107:23 108:17 109:14 110:4 110:7 110:11 110:23 110:25 111:7 111:8 112:2 113:8 113:14 113:22 114:10 116:1 116:8 116:14 116:21 116:25 117:4 118:12 118:16 118:20 118:22 119:1 119:7 119:12 120:22 121:8 121:11 121:17 121:23 123:9 123:15 125:22 125:24 126:16 127:6 127:8 129:4 129:12 129:18 130:10 131:16 132:10 134:19 135:20 136:21 136:24 137:2 138:11 138:16 140:2 141:6 141:23 146:7 146:14 146:20 147:1 148:3 148:9 149:2 149:24 150:3 150:13 150:23 151:11 153:24 154:2 154:23 155:3 155:6 156:17 157:7 158:11 158:16 159:5 159:7 160:8 160:18 160:24 161:4 166:2 166:14 167:5 168:11 171:16 172:23 172:5 173:6 173:16 174:4 174:15 174:15 175:11 175:19 176:22 177:4 177:14 177:21 178:1 179:25 180:1 180:14 181:5 181:9 181:14 181:21 182:25 183:4 183:23 184:7 184:12 185:5 187:4 189:3 189:8 190:13 191:13 191:15 192:11 192:13 193:11 193:13 193:24 193:25 194:10 195:10 196:14 196:19 197:6 197:15 197:18 198:5 198:14 198:22 199:13 200:2 200:16 201:19 202:25 204:1 204:11 204:1 205:12 206:17 207:14 208:3 208:15 208:18 209:20 210:19 210:10 211:16 211:18 212:1 212:11 213:3 213:6 214:4 214:22 216:15 216:24 217:5 217:7 219:3 219:21 220:23 221:21 221:22 223:6 224:6 224:22 227:24 228:7 233:10 233:13 234:7 235:16 235:23 236:7 237:17 238:20 240:1 241:21 242:1 244:1 244:11 246:24 247:8 247:17 250:8 252:15 | | **you**(301) 15:3 17:3 17:21 17:24 18:4 19:5 19:9 19:12 19:14 19:17 19:19 19:22 19:22 19:23 20:22 20:25 20:25 21:3 21:10 22:4 22:7 22:10 22:10 22:14 22:14 23:10 24:5 24:15 25:9 25:17 25:21 25:22 26:7 26:11 26:16 27:1 27:9 28:7 28:15 29:10 29:12 29:13 29:15 30:7 31:6 31:8 31:9 32:4 32:4 32:11 32:13 32:23 34:6 34:9 34:12 34:13 34:21 35:4 35:14 35:24 36:10 36:18 36:19 37:1 37:1 37:7 37:15 37:24 38:4 38:7 38:14 38:16 38:23 39:1 39:3 39:14 39:19 40:7 40:13 40:16 40:17 40:19 40:23 40:24 41:9 41:14 41:16 41:17 41:19 41:23 41:25 42:1 43:7 43:8 43:12 43:14 43:19 43:22 43:25 44:6 44:12 44:13 44:16 44:18 44:22 44:24 45:2 45:3 45:5 45:5 45:6 45:7 45:16 45:17 45:20 47:5 47:23 47:25 48:2 48:3 48:7 48:13 48:14 49:6 49:8 49:9 50:1 50:5 50:5 50:13 50:24 50:25 52:2 52:9 52:19 52:20 53:2 53:4 53:13 54:2 54:4 54:11 55:9 55:13 55:17 55:18 55:18 55:22 56:4 56:4 56:18 56:21 56:24 57:2 57:2 57:4 57:6 57:7 57:9 57:12 57:13 57:15 57:25 58:10 58:14 58:18 59:7 59:14 59:22 59:22 60:7 60:9 60:9 60:23 60:25 61:6 61:21 62:7 62:20 63:8 63:15 64:4 64:5 64:8 64:18 64:19 64:24 65:2 66:3 66:4 66:6 66:10 66:8 68:9 68:10 68:13 69:1 69:6 69:9 70:8 70:14 70:17 70:18 70:18 70:23 70:24 71:8 71:16 72:8 72:9 72:9 72:10 72:17 72:18 72:21 72:23 73:10 73:15 73:15 74:7 75:19 76:1 76:2 76:2 76:6 76:6 77:3 77:7 77:22 77:22 78:5 78:6 78:7 78:22 78:25 78:25 79:11 79:15 79:25 80:3 80:4 80:7 80:7 80:10 80:13 80:14 80:16 80:18 80:21 80:23 81:1 81:3 81:4 81:4 81:10 81:17 81:20 82:4 82:6 82:7 82:9 82:23 83:5 83:15 83:17 83:19 83:21 83:22 83:23 83:24 84:2 84:10 84:14 84:1 85:13 85:20 85:23 86:7 86:7 86:23 86:23 87:6 87:18 87:24 88:9 88:11 88:15 88:20 89:3 89:4 89:5 89:23 89:25 90:11 90:11 90:17 90:21 90:24 | | **you**(301) 90:24 91:3 91:7 91:18 92:8 92:10 92:22 93:10 93:21 95:4 95:5 95:6 95:10 96:11 96:22 96:23 97:6 97:7 97:8 97:11 97:12 97:18 99:5 99:8 99:23 100:7 100:9 100:9 100:10 100:17 101:3 101:8 101:14 101:15 101:20 101:24 101:25 101:25 102:7 102:9 102:11 102:12 102:18 102:24 103:5 103:7 103:12 104:3 104:6 104:22 104:22 104:23 105:4 105:5 105:6 105:15 106:3 106:7 106:11 106:11 106:21 107:1 107:22 108:15 108:21 108:22 109:11 109:11 109:12 109:15 109:18 109:19 109:20 109:21 110:1 110:1 110:2 110:5 110:12 110:13 110:21 110:22 111:1 111:16 111:17 111:22 111:23 111:25 112:9 112:13 112:15 112:17 113:6 113:12 113:15 113:21 114:2 114:3 114:6 114:7 114:11 114:17 114:24 115:2 115:6 115:12 115:13 115:25 116:7 116:9 116:13 116:15 116:23 117:1 117:2 117:5 117:12 117:15 117:16 117:17 118:3 118:7 118:10 118:13 118:13 118:14 118:17 118:21 119:2 119:3 119:10 119:13 119:15 119:19 119:23 120:1 120:5 120:7 120:25 121:2 121:5 121:5 121:6 121:9 121:15 121:21 121:24 121:24 122:10 122:15 122:19 123:1 123:8 123:10 123:13 123:16 124:3 124:8 124:8 124:24 124:24 125:3 125:9 125:20 125:21 125:24 126:1 126:2 126:15 127:2 127:4 127:4 127:10 127:12 128:15 128:16 128:17 128:18 128:21 128:23 128:24 128:24 129:3 129:7 129:13 129:15 130:8 130:17 131:11 131:15 131:17 132:6 132:9 133:5 133:7 133:9 134:4 134:6 134:13 134:14 134:15 135:9 135:14 135:14 135:15 135:21 136:5 136:19 136:22 137:3 138:10 138:21 138:22 139:3 139:5 140:14 140:15 140:16 140:19 140:20 141:2 141:3 141:8 141:16 141:20 142:7 142:8 142:17 142:19 143:2 143:6 143:14 143:24 143:24 143:24 144:3 144:3 144:7 144:10 144:13 144:18 144:22 145:6 145:9 145:10 145:22 145:25 146:1 146:6 146:12 146:15 146:16 147:4 147:12 147:12 147:25 148:1 148:10 148:11 148:24 149:5 149:6 149:10 149:22 149:23 150:10 150:10 150:11 150:17 150:24 150:25 151:9 151:19 151:20 151:21 151:24 152:3 152:6 152:10 152:15 152:17 152:21 152:21 152:22 152:25 153:2 153:5 153:13 153:19 153:23 153:25 154:14 154:15 154:24 154:25 155:2 155:9 155:15 155:18 155:18 |
| **wouldn't**(10) 77:24 78:24 80:23 81:16 92:20 96:21 171:22 180:9 187:25 209:21 | | | | | | | |
| **wouldn't**(1) 238:9 | | | | | | | |
| **wrap**(2) 63:7 257:20 | | | | | | | |
| **wrong**(17) 97:24 116:19 160:13 161:10 179:11 180:19 187:25 191:8 198:8 211:20 215:5 227:2 227:2 230:20 231:15 253:24 254:6 | | **yesterday**(3) 18:19 98:12 224:10 | | | | | |
| **www.diazdata.com**(1) 1:44 | | **yet**(8) 30:11 56:15 83:24 117:21 117:25 119:14 126:21 150:20 | | | | | |
| **xochitl**(1) 11:18 | | **york**(6) 2:11 2:33 2:43 3:9 3:22 3:41 | | | | | |
| **yeah**(7) 60:5 94:23 100:24 126:15 127:9 127:11 163:23 | | | | | | | |
| **year**(3) 104:16 200:20 238:18 | | | | | | | |
| **years**(18) 19:20 22:6 24:14 30:5 63:23 80:4 84:24 104:17 104:20 114:23 156:6 162:21 170:5 170:13 237:8 238:9 245:17 255:14 | | | | | | | |
| **yellow**(1) 16:12 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **you**(301) 156:2  156:7  156:10  156:13  156:13  157:1  157:2  157:6  157:14  157:19  157:21  157:21  158:17  158:24  159:8  160:9  160:10  160:12  160:15  160:19  160:20  160:21  160:22  160:23  160:23  161:2  161:2  161:9  161:12  161:13  161:14  161:18  161:18  162:2  162:3  162:16  162:25  163:1  163:5  163:12  163:14  163:15  163:19  164:10  164:10  164:19  164:22  164:25  165:2  165:4  165:22  165:24  165:25  166:13  166:15  166:22  167:4  167:6  167:7  167:13  168:1  168:1  168:5  168:5  168:6  168:6  168:9  168:12  168:13  168:15  168:23  169:4  169:9  169:13  169:13  169:15  170:6  170:13  170:13  171:2  171:7  171:12  171:14  171:15  171:17  171:20  172:9  172:16  172:17  173:1  173:1  173:5  173:17  173:22  173:25  174:5  174:11  174:23  174:23  175:4  175:4  175:11  175:13  175:16  175:16  175:20  175:20  175:23  176:  176:2  176:7  176:8  176:10  176:14  176:16  176:20  176:23  176:23  176:24  177:5  177:5  177:6  177:9  178:1  178:3  178:8  178:9  179:19  180:1  180:5  180:9  180:15  180:18  180:19  180:19  180:21  180:21  181:1  181:3  181:11  181:15  181:16  182:4  182:10  182:4  183:4  184:6  184:8  184:16  184:17  185:4  185:6  185:19  185:22  186:1  186:7  186:11  186:11  186:15  186:16  186:20  187:3  187:4  187:5  187:6  187:18  187:20  187:20  188:11  188:12  188:19  188:19  189:4  189:10  189:1  189:15  189:15  189:20  190:5  190:14  190:20  190:23  191:7  191:12  191:14  191:22  191:20  192:5  192:8  192:9  192:13  192:19  192:19  192:20  192:23  193:2  193:12  193:15  193:25  194:1  194:5  194:7  194:9  194:13  194:18  195:2  195:7  195:8  195:18  196:1  196:8  196:10  196:13  196:16  196:20  196:2  197:11  198:4  198:12  198:13  198:21  198:23  199:3  199:17  199:10  200:4  200:9  200:9  200:13  201:4  201:12  201:16  201:17  201:19  201:20  202:5  202:6  202:9  202:9  202:14  202:21  203:13  203:14  203:18  203:20  204:2  204:8  204:10  204:14  204:22  205:7  206:2  206:16  206:19  207:4  207:6  207:7  207:15  207:21  208:4  208:7  208:7  208:14  208:19  209:5  209:15  209:21  210:5  210:6  210:13  210:15  210:20  210:21  210:2  211:12  211:13  211:15  211:22  212:10  212:23  213:1  213:7  213:19  214:5  214:6  214:8  214:10  214:14  215:12 | | **you**(209) 215:18  215:21  215:21  215:21  216:10  216:14  216:22  216:23  217:22  218:  218:7  218:8  218:11  218:11  218:24  219:9  219:17  220:2  220:12  220:21  221:13  221:11  221:18  221:24  221:25  222:3  222:9  222:17  221:20  223:4  223:9  223:10  223:11  223:14  223:19  223:23  223:24  224:3  224:6  224:7  224:18  224:19  224:20  224:23  225:2  225:15  225:17  225:22  225:23  225:24  225:24  226:3  226:7  226:10  226:13  226:19  226:22  226:23  226:25  227:1  227:2  227:4  227:5  227:12  227:13  227:13  227:18  227:20  228:5  228:2  228:5  228:10  228:15  228:16  228:2  228:24  229:6  229:7  229:9  229:20  229:23  230:3  230:6  230:9  230:24  232:2  232:9  232:19  233:1  233:9  233:13  233:15  233:21  234:4  234:8  234:11  235:3  235:4  235:14  235:17  235:20  235:24  236:5  236:12  236:17  236:17  236:25  237:17  238:1  238:2  238:7  238:8  238:9  238:16  238:23  239:5  239:9  239:12  239:23  240:5  240:9  240:13  240:15  240:15  240:17  240:18  240:22  240:24  241:15  241:18  241:19  241:20  241:24  241:25  242:4  242:5  242:6  242:9  242:11  242:14  242:19  243:8  243:11  243:18  243:  244:1  244:4  244:8  244:18  244:19  245:2  245:5  245:14  245:20  245:23  246:10  246:1  246:17  246:21  246:23  246:23  247:3  247:6  247:9  247:10  247:11  247:12  247:14  247:1  247:18  247:19  247:21  247:23  247:23  247:24  248:2  248:14  249:1  249:2  249:7  249:14  249:16  249:16  249:22  250:1  250:1  250:2  250:5  250:5  250:6  250:6  250:13  250:16  250:16  251:2  253:3  254:1  254:3  254:3  254:5  254:10  254:11  254:23  255:9  256:15  257:8  257:15  257:25 | | **your**(301) 13:4  13:5  13:7  14:6  14:12  15:3  15:5  16:7  16:14  17:1  17:8  17:23  18:3  18:12  18:21  18:23  19:1  19:2  19:5  19:6  19:19  20:22  21:1  22:4  22:12  22:14  22:17  22:21  24:5  24:18  25:17  25:19  25:21  25:25  26:6  26:10  27:5  27:14  30:5  31:9  31:16  31:17  31:25  32:18  32:24  34:17  35:19  36:1  36:5  36:12  36:20  37:3  37:19  37:22  37:23  38:24  40:9  40:21  40:22  41:8  41:13  42:5  42:8  43:25  43:25  44:8  45:10  45:16  45:18  46:2  48:8  50:8  50:13  51:1  53:7  53:13  55:18  56:2  56:24  57:21  58:1  58:13  58:13  59:16  59:22  59:25  62:22  63:17  63:20  63:21  64:20  64:21  65:1  65:6  65:19  65:23  65:24  65:25  66:2  66:7  66:11  66:17  67:24  68:18  68:19  68:21  69:14  70:14  70:24  71:22  71:10  71:23  72:12  72:23  73:5  73:14  74:22  75:2  75:12  76:1  76:11  77:3  77:7  77:22  77:23  78:17  79:4  79:22  79:22  79:23  80:7  80:11  80:16  83:4  83:10  83:10  83:11  84:1  84:1  84:2  87:1  87:9  87:24  89:10  90:18  90:21  91:11  91:16  92:14  92:13  93:21  93:2  94:4  94:16  94:25  95:23  97:11  97:20  98:2  98:13  98:22  99:2  99:6  99:15  99:20  100:1  100:20  101:13  101:21  102:3  102:10  102:1  102:19  102:24  103:5  103:20  104:18  105:4  105:22  106:3  106:12  108:23  111:2  112:14  114:7  114:11  114:19  114:19  114:23  115:4  115:18  115:18  116:5  116:15  117:5  117:15  117:16  117:17  117:19  118:7  118:8  118:23  119:10  119:13  119:22  120:9  120:16  120:2  121:2  122:18  124:6  124:25  129:5  125:23  126:21  126:23  127:5  127:13  128:19  128:2  128:25  129:2  129:7  130:8  133:6  133:25  135:18  137:4  138:2  138:24  139:4  139:7  139:19  139:24  140:9  140:14  140:16  140:22  141:12  145:3  145:9  145:11  145:13  145:1  145:22  148:11  150:21  151:22  151:25  152:  152:21  153:2  153:6  153:19  154:21  155:19  156:6  157:15  160:10  160:15  160:19  160:22  161:13  161:13  162:2  162:7  162:18  162:19  163:3  163:3  163:5  163:13  164:15  164:25  165:4  165:8  165:11  165:17  166:3  166:7  166:22  168:23  169:15  169:22  169:24  170:5  170:13  170:15  171:7  171:15  171:20  172:5  172:16  174:5  174:7  175:9  175:11  176:10  177:6  177:19  178:1 | | **your**(188) 178:10  179:8  180:23  181:1  182:23  183:2  183:10  183:11  183:17  184:5  184:22  184:24  185:10  185:18  186:7  186:14  188:12  188:16  189:5  190:5  190:6  190:7  191:5  191:9  193:14  193:22  194:7  194:17  195:22  195:24  196:18  196:22  197:7  197:13  198:11  199:3  201:13  202:18  202:20  202:20  203:2  203:10  203:21  204:17  204:25  205:1  207:8  207:12  208:16  208:19  209:3  209:5  209:8  210:13  210:14  210:21  210:23  211:8  211:21  211:22  211:24  213:10  213:14  215:1  215:13  215:19  215:23  216:3  217:16  218:15  219:4  220:16  221:9  221:17  221:18  221:20  223:5  223:9  223:9  223:14  224:1  224:4  224:9  224:11  224:23  225:11  225:15  225:19  225:23  226:19  227:21  228:9  228:10  228:11  228:12  228:13  228:15  228:15  228:18  228:23  229:2  229:4  229:13  229:24  230:3  230:14  230:17  230:22  231:10  232:12  232:14  232:25  233:11  234:9  234:11  234:15  234:23  235:4  235:5  235:21  235:25  236:3  236:6  236:10  236:14  236:19  236:24  237:12  237:22  238:2  239:14  240:9  240:19  241:3  241:16  241:19  242:3  242:24  243:2  243:13  243:18  244:11  244:12  244:19  244:23  245:2  246:7  246:11  246:17  247:5  247:10  247:15  247:18  247:20  247:23  248:2  248:3  248:14  248:17  248:18  248:21  248:22  248:22  249:2  249:2  249:9  250:10  250:18  250:24  251:1  251:4  251:18  252:1  252:8  252:17  252:25  253:4  253:8  253:18  253:25  254:7  254:10  254:12  254:22  255:4  255:19  255:21  256:3 |
| | | **you'd**(6) 109:20  114:3  114:4  184:2  184:5  188:8 | | **you'd**(3) 50:25  57:23  58:12 **you're**(14) 22:10  22:13  22:15  24:8  24:9  48:12  54:22  55:2  55:23  55:25  55:25  61:6  61:7  70:4 | | **yourself**(2) 119:19  165:25 |
| | | **you'll**(7) 101:21  113:15  116:18  116:22  140:12  148:13  197:3 | | **you've**(6) 25:14  55:15  56:23  62:18  64:4  67:12 | | |
| | | **you're**(45) 72:5  75:18  76:7  88:8  88:20  88:24  99:24  106:16  110:10  121:22  134:18  137:1  137:15  140:24  153:10  160:9  160:22  163:2  163:24  166:11  166:16  168:9  178:4  181:8  185:5  187:9  189:1  189:25  194:18  196:1  198:9  199:24  202:21  207:15  209:1  219:1  220:11  221:21  228:1  230:20  238:23  241:14  242:15  242:23  249:21 | | **zell**(5) 29:18  29:19  56:5  244:21  245:6 **zensky**(6) 2:39  18:12  18:20  98:12  98:15  256:20 | | |
| | | **you've**(45) 73:1  74:16  74:23  79:16  79:21  79:23  79:24  80:4  81:23  84:6  85:10  86:21  87:9  97:15  99:13  101:10  101:20  104:24  105:25  106:22  107:2  109:8  115:12  118:10  121:4  142:13  144:20  146:5  153:22  155:4  160:16  164:21  174:8  187:13  189:3  190:6  193:6  223:16  223:24  229:2  230:17  231:20  232:25  236:5  237:12 | | **zero**(4) 112:20  113:1  147:19  215:18 **zero-percent**(1) 40:6 **zeroed**(1) 147:12 **zloto**(4) 8:16  152:11  152:12  152:15 **zuckerman**(4) 3:44  5:44  120:17  139:8 **"although**(1) 178:14 **"angelo**(1) 44:19 **"basis**(2) 36:16  54:5 **"because**(1) 28:10 **"corporate**(1) 41:15 **"directors**(1) 60:10 **"fcc**(1) 29:12 **"interest**(1) 54:13 **"interests**(3) 38:2  38:13  43:20 **"jpmorgan**(1) 49:1 **"keep**(1) 58:13 **"nextmedia"**(1) 38:13 **"other**(1) 57:15 **"provided**(1) 60:14 **"questions"**(1) 36:21 **"see**(1) 36:17 **"specifically**(1) 122:21 **"strong**(1) 58:5 **"the**(7) 41:1  44:14  57:5  57:8  57:13  122:2  123:18 **"whatever**(1) 63:10 **"will**(1) 36:22 |
| | | **young**(2) 5:4  20:18 | | | | | |