```
                 IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE


IN RE:                      )    Case No. 08-13141(KJC)
                            )
                            )
TRIBUNE COMPANY             )    Chapter 11
                            )
                            )    Courtroom 5
                            )    824 Market Street
           Debtors.         )    Wilmington, Delaware
                            )
                            )    June 27, 2011
                            )    10:00 a.m.


                     TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:                     Sidley Austin, LLP
                                 BY: JAMES BENDERNAGEL, ESQ.
                                 BY: JAMES CARLAN, ESQ.
                                 BY: JAMES DUCAYET, ESQ.
                                 One South Dearborn
                                 Chicago, IL 60603
                                 (312) 853-7000


                                 Cole, Schotz, Meisel, Forman
                                 & Leonard, P.A.
                                 BY: NORMAN PERNICK, ESQ.
                                 500 Delaware Ave., Ste. 1410
                                 Wilmington, DE 19801
                                 (302) 652-3131


                                 Tribune Company
                                 BY: DON LIEBENTRITT, ESQ.
                                 435 North Michigan St.
                                 Chicago, IL  60611
                                 (312) 222-9100


ECRO:                            AL LUGANO

Transcription Service:           DIAZ DATA SERVICES
                                 331 Schuylkill Street
                                 Harrisburg, Pennsylvania 17110
                                 (717) 233-6664
                                 www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For Oaktree & Angelo Gordon:    Young Conaway Stargatt &
                                Taylor
                                BY: BLAKE CLEARY, ESQ.
                                The Brandywine Building
                                1000 West Street, 17th Floor
                                Wilmington, DE 19801
                                (302) 571-6600

                                Dewey & LeBeouf
                                BY: BRUCE BENNETT, ESQ.
                                BY: JAMES JOHNSTON, ESQ.
                                333 S. Grand Ave., Ste. 2600
                                Los Angeles, CA  90071-1530
                                (213) 621-6021

For Merrill Lynch:              Potter Anderson & Carroon, LLP
                                BY: R. STEPHEN MCNEILL, ESQ.
                                BY: LAURIE SELBER SILVERSTEIN,
                                ESQ.
                                Hercules Plaza
                                1313 North Market Street
                                6th Floor
                                Wilmington, DE  19801
                                (302) 984-6033

For JP Morgan:                  Davis Polk & Wardwell
                                BY: ELLIOT MOSKOWITZ, ESQ
                                BY: MICHAEL RUSSANO, ESQ.
                                BY: DONALD BERNSTEIN, ESQ.
                                BY: DAMIAN SCHAIBLE, ESQ.
                                BY: LYNN BUSATH, ESQ.
                                BY: ELI VONNEGUT, ESQ.
                                450 Lexington Avenue
                                New York, NY 10017
                                (212) 450-4000

                                Richards Layton & Finger
                                BY: ROBERT STEARN, ESQ.
                                One Rodney Square
                                920 North King Street
                                Wilmington, DE  19801
                                (302) 651-7700

APPEARANCES:
(Continued)

For Barclays:                    DLA Piper
                                 BY: MICHELLE MARINO, ESQ.
                                 1251 Avenue of the Americas
                                 New York, NY  10020-1104
                                 (212) 335-4500

For Official Committee
of Unsecured Creditors:          Landis, Rath & Cobb
                                 BY: DANIEL B. RATH, ESQ.
                                 BY: ADAM G. LANDIS, ESQ.
                                 919 Market Street, Suite 1800
                                 Wilmington, DE 19801
                                 (302) 467-4400

                                 Chadbourne & Parke, LLP
                                 BY: DAVID LEMAY, ESQ.
                                 BY: THOMAS MCCORMACK, ESQ.
                                 BY: HOWARD SEIFE, ESQ.
                                 BY: ANDREW ROSENBLATT, ESQ.
                                 BY: MARC ASHLEY, ESQ.
                                 30 Rockefeller Plaza
                                 New York, NY 10112
                                 (212) 408-5100

                                 Zuckerman Spaeder
                                 BY: JAMES SOTTILE, ESQ.
                                 BY: GRAEME BUSH, ESQ.
                                 1800 M Street, NW
                                 Suite 1000
                                 Washington, DC 20036
                                 (202) 778-1800

For DBTCA:                       McCarter & English
                                 BY: KATHARINE MAYER, ESQ.
                                 405 N. King Street, 8th Fl.
                                 Wilmington, DE  19801
                                 (302) 984-6312

```
APPEARANCES:
(Continued)

For Wilmington Trust:        Brown Rudnick
                             BY: MARTIN SIEGEL, ESQ.
                             185 Asylum Street
                             Hartford, CT  06103
                             (860)509-6519

                             Sullivan Hazeltine Allinson,
                             LLC
                             BY: WILLIAM SULLIVAN, ESQ.
                             4 East 8th Street, Suite 400
                             Wilmington, DE  19801
                             (302) 4268-8191

For Aurelius:                Akin Gump Strauss Hauer & Feld
                             BY: MITCHELL HURLEY, ESQ.
                             BY: DAVID ZENSKY, ESQ.
                             BY: ABID QUESHI, ESQ.
                             BY: PHIL DUBLIN, ESQ.
                             BY: DANIEL GOLDEN, ESQ.
                             One Bryant Park
                             New York, NY 10036
                             (212) 872-1000

                             Ashby & Geddes
                             BY: BILL BOWDEN, ESQ.
                             BY: LEIGH-ANNE RAPORT, ESQ.
                             (301) 654-1888

For Law Debenture:           Bifferato Gentilotti
                             BY: GARVAN MCDANIEL, ESQ.
                             800 North King Street
                             Plaza Level
                             Wilmington, DE  19801
                             (302) 429-1900

                             Kasowitz Benson Torres &
                             Friedman, LLP
                             BY: SHERON KORPUS, ESQ.
                             1633 Broadway
                             New York, NY  10019
                             (212) 506-1969
```

APPEARANCES:
(Continued)

For Morgan Stanley:              Weil Gotshal & Manges, LLP
                                 BY: ANDREA SAAVEDRA, ESQ.
                                 767 Fifth Avenue
                                 New York, NY  10153
                                 (212) 310-8544

                                 Barnes & Thornburg, LLP
                                 BY: DAVID M. POWLEN, ESQ.
                                 1000 North West St., Ste.1200
                                 Wilmington, DE  19801-1058
                                 (302) 888-4536

For Sam Zell/EGI-TRB:            Jenner & Block
                                 BY: DAVID BRADFORD, ESQ.
                                 353 North Clark Street
                                 Chicago, IL  60654-3456
                                 (312) 923-2975

For Great Banc:                  Womble Carlyle
                                 BY: THOMAS M. HORAN, ESQ.
                                 222 Delaware Avenue, Ste. 1501
                                 Wilmington, DE  19801
                                 (302) 252-4339

For Special Committee of
Board of Directors:              Jones Day
                                 BY: LAUREN BUONOME, ESQ.
                                 222 East 41st Street
                                 New York, NY  10017-6702
                                 (212) 326-3787

For U.S. Trustee:                U. S. Trustee
                                 BY: DAVID M. KLAUDER, ESQ.
                                 Office of the U.S. Trustee
                                 844 King Street, Suite 2313
                                 Wilmington, DE  19801

TELEPHONIC APPEARANCES:

For SuttonBrook Capital:         SuttonBrook Capital
                                 Management, LP
                                 BY: CAROL L. BALE, ESQ.
                                 (212) 588-6640

TELEPHONIC APPEARANCES:
(Continued)

For George Dougherty:            Grippo & Elden, LLC
                                 BY: GEORGE DOUGHERTY, ESQ.
                                 (312) 704-7700

For Official Committee of
Unsecured Creditors:             Chadbourne & Park, LLP
                                 BY: MARC ROITMAN, ESQ.
                                 (212)408-5271
                                 BY: ALI NELLOS, ESQ.
                                 (212) 408-5100
                                 BY: DOUGLAS DEUTSCH, ESQ.
                                 (212) 408-5169

                                 Zuckerman & Spaeder, LLP
                                 BY: ANDREW GOLDFARB, ESQ.
                                 (202) 778-1800

For Bank of America:             O'Melveny & Myers
                                 BY: DANIEL SHAMAH, ESQ.
                                 (212) 326-2138

                                 Bank of America
                                 BY: ESTHER CHUNG, ESQ.
                                 (646)858-6705

For Citibank:                    Paul Weiss Rifkind Wharton
                                 BY: KIRA DAVIS, ESQ.
                                 (212) 373-3000
                                 BY: SHANNON PENNOCK, ESQ.
                                 (212) 373-3000
                                 BY: ANDREW LEVY, ESQ.
                                 (202) 223-7328

For Merrill Lynch:               Kaye Scholer, LLP
                                 BY: JONATHAN AGUDELO, ESQ.
                                 (212) 836-8369
                                 BY: MADLYN G. PRIMOFF, ESQ.
                                 (212) 836-7042
                                 BY: JANE PARVER, ESQ.
                                 (212) 836-8510

TELEPHONIC APPEARANCES:
(Continued)

For Tribune:                    Sidley Austin
                                BY: BRETT MYRICK, ESQ.
                                (312) 853-1049
                                BY: DENNIS TWOOMEY, ESQ.
                                (312) 853-7824
                                BY: BRYAN KRAKAUER, ESQ.
                                (312) 853-7515
                                BY: CANDICE KLINE, ESQ.
                                (312) 853-7778
                                BY: KEVIN LANTRY, ESQ.
                                (213) 896-6022
                                BY: ALLISON E. ROSS-STROMBERG,
                                ESQ.
                                (312) 853-0497
                                BY: KERRIANN MILLS, ESQ.
                                (312) 853-0036
                                BY: DAVID MILES, ESQ.
                                (202) 736-8556
                                BY: JILLIAN LUDWIG, ESQ.
                                (312) 853-7523
                                BY: KEN KANSA, ESQ.
                                (312) 853-7163
                                BY: COLLEEN KENNEY, ESQ.
                                (312) 853-2931
                                BY: HILLE R. SHEPPARD, ESQ.
                                (312) 853-2931
                                BY: MELANIE WALKER, ESQ.
                                (312) 853-2078
                                BY: GREG DEMO, ESQ.
                                (312) 853-7758

                                Tribune Company
                                BY: GARY WEITMAN, ESQ.
                                (312) 222-3494
                                BY: DAVE ELDERSVELD, ESQ.
                                (312) 222-4707

For Anna Kalenchits:            Anna Kalenchits
                                (212)723-1808

TELEPHONIC APPEARANCES:
(Continued)

For Aurelius Capital
Management:                         Aurelius Capital Management LP
                                    BY: MATTHEW A. ZLOTO, ESQ.
                                    (646) 445-6518

                                    Akin Gump Strauss Hauer & Feld
                                    BY: SHAYA ROCHESTER, ESQ.
                                    (212) 872-1076
                                    BY: NICHOLAS C. ADAMS, ESQ.
                                    BY: JASON GOLDSMITH, ESQ.
                                    (212) 872-1000

                                    Friedman Kaplan Seiler &
                                    Adelman
                                    BY: KIZZY L. JARASHOW, ESQ.
                                    (212) 833-1115

                                    The Lerman Senter
                                    BY: REBECCA NEUMANN, ESQ.
                                    (202) 416-1082

For JP Morgan Chase Bank:           Davis Polk & Wardwell, LLP
                                    BY: PETER KIM, ESQ.
                                    (212) 450-3028

For Barclays:                       Barclays
                                    BY: BEN WILSON, ESQ.
                                    (212) 412-7642

For Eos Partners:                   Eos Partners
                                    BY: MIKE J. SCHOTT, ESQ.
                                    (212) 593-4046

For DK Partners:                    DK Partners
                                    BY: EPHRAIM DIAMOND, ESQ.
                                    (646) 282-5841

For EGI-TRB:                        Jenner & Block, LLP
                                    BY: ANDREW VAIL, ESQ.
                                    (312) 840-8688

TELEPHONIC APPEARANCES:
(Continued)

For Interested Party:          Schulte Roth & Zabel, LLP
                               BY: KAREN S. PARK, ESQ.
                               (212) 756-2036

For Deutsche Bank:             McCarter & English
                               BY: DAVID ADLER, ESQ.
                               (212) 609-6847

                               Kramer Levin, Naftalis &
                               Frankel, LLP
                               BY: DAVID E. BLABEY, JR.,ESQ.
                               BY: JORDAN KAYE, ESQ.
                               (212) 715-9100

For Chandler Bigelow:          Sperling & Slater
                               BY: CLAIRE P. MURPHY, ESQ.
                               (312)641-3200

For Goldman Sachs & Co.:       Goldman Sachs & Company
                               BY: LEXI FALLON, ESQ.
                               (212) 902-0791

For Wells Fargo:               White & Case
                               BY: SCOTT GREISSMAN, ESQ.
                               (212) 819-8567

For Miller Tabak Roberts
Securities:                    Miller Tabak Roberts
                               Securities, LLC
                               BY: ANDREW M. THAU
                               (212) 692-51

For Law Debenture Trust:       Kasowitz Benson Torres &
                               Friedman
                               BY: CHRISTINE MONTENEGRO, ESQ.
                               (212)506-1715

For Arrowgrass Capital:        Arrowgrass Capital Partners,
                               US, LP
                               BY: DAVID DUNN, ESQ.
                               (212) 584-5946

TELEPHONIC APPEARANCES:
(Continued)

For Robert R. McCormick
Foundation &
Cantigny Foundation:            Katten Muchin Rosenman, LLP
                                BY: JOHN SIEGER, ESQ.
                                (312) 902-5294


For Employees Compensation
Defendants Group:               Frank Gecker, LLP
                                BY: REED HEILIGMAN, ESQ.
                                BY: JOSEPH FRANK, ESQ.
                                (312) 276-1400


For Nealesh Jhaveri:            Citadel Investment Group
                                BY: NEALESH JHAVERI
                                (212) 651-7636


For Morgan Stanley:             Weil Gotshal & Manges, LLP
                                BY: ASHIH D. GANDHI, ESQ.
                                (212) 310-8024


For Smith Management:           Smith Management
                                BY: JENNIFER WILD, ESQ.
                                (212) 418-6877


For Tricadia:                   Tricadia Capital
                                BY: IMRAN AHMED, ESQ.
                                (212) 891-5013


For Angelo Gordon:              Angelo Gordon & Co., LP
                                BY: GAVIN BAIERA, ESQ.
                                (212) 692-0217


                                Wilmer Cutler Pickering Hale &
                                Dorr
                                BY: ANDREW N. GOLDMAN, ESQ.
                                (212) 230-8836


For Jefferies & Co.:            Jefferies & Company
                                BY: JUSTIN BRASS, ESQ.
                                (203) 708-5847

TELEPHONIC APPEARANCES:
(Continued)

| | |
|---|---|
| For Interested Party: | ERIC BILMES, In Pro Per/Pro se<br>(212) 588-5115 |
| For Dow Jones News Wires: | Dow Jones & Company<br>BY: PEG BRICKLEY, ESQ.<br>(215) 462-0953 |
| For Interested Party: | South Ferry Capital<br>BY: JASON BYUN<br>(212) 612-3340 |
| For David Chasen: | DAVID CHASEN<br>(212) 479-0631 |
| For Cooperstown Capital: | Cooperstown Capital Management<br>BY: PETER COURI, ESQ.<br>(203) 552-6900 |
| For Silver Point Capital: | Silver Point Capital<br>BY: MATTHEW EHMER<br>(203) 542-4219<br>BY: CHAIM FORTGANG<br>(203) 542-4216 |
| For Serengeti Asset Mgmt.: | Serengeti Asset Management<br>BY: NICHOLAS HEILBUT, ESQ.<br>(212) 466-2167 |
| For Nomura Securities: | Nomura Securities<br>BY: ARTHUR KAVALIS<br>(212) 667-2370 |
| For Monarch Alternative: | Monarch Alternative Capital LP<br>BY: MICHAEL J. KELLY<br>(212) 554-1780 |
| For Citi: | Paul Weiss Rifkind Wharton &<br>Garrison, LLP<br>BY: MAY KIM, ESQ.<br>(202) 223-7379 |

TELEPHONIC APPEARANCES:
(Continued)

For Corre Partners:              Corre Partners
                                 BY: STEPHEN LARN
                                 (646) 863-7157

For Credit Agreement
Lenders:                         Oaktree Capital Management
                                 BY: EDGAR LEE
                                 (213) 830-6415
                                 BY: KENNETH C. LIANG
                                 (213) 830-6422

                                 Dewey & LeBoeuf, LLP
                                 BY: JOSHUA M. MESTER, ESQ.
                                 (213) 621-6016

For Interested Party:            Brigade Capital Management
                                 BY: NEIL LOSQUADRO, ESQ.
                                 (212) 745-9758

For Great Banc Trust Co.:        Morgan Lewis & Bockius, LLP
                                 BY: RACHEL MAUCERI, ESQ.
                                 (215) 963-5000

For Timothy Knight:              Hannafan & Hannafan, Ltd.
                                 BY: JAMES A. MCGUINNESS, ESQ.
                                 (312) 527-0055

For Shachar Minkove:             JPMorgan Chase Bank, NA
                                 BY: SHACHAR MINKOVE
                                 (212) 834-7174

For Pryor Cashman:               Pryor Cashman, LLP
                                 BY: TINA MOSS
                                 (212) 326-0421

For Third Party,
Daniel Kazan:                    Dewey & LeBoeuf, LLP
                                 BY: THERESE K. NOHOS, ESQ.
                                 (312) 794-8027

For Wilmington Trust:            Brown Rudnick, LLP
                                 BY: GORDON NOVOD, ESQ.
                                 (212) 209-4940

```
TELEPHONIC APPEARANCES:
(Continued)

For Royal Bank of Scotland:    Royal Bank of Scotland
                               BY: COURTNEY ROGERS
                               (203) 897-4815

For Aaron Rosen:               Archview Investment Group
                               BY: AARON ROSEN
                               (212) 728-2528

For Canyon Partners:           Canyon Partners, LLC
                               BY: CHANEY M. SHEFFIELD
                               (310) 272-1062

For Dominion:                  McGuire Woods, LLP
                               BY: BETH SIEG, ESQ.
                               (804) 775-1137

For Maglan Capital:            Maglan Capital
                               BY: DAVID D. TAWIL
                               (212) 300-6791

For One East Partners:         One East Partners
                               BY: SINA TOUSSI
                               (212) 230-4510

For Macquarie Capital:         Macquarie Capital (USA)
                               BY: RUSHABH VORA
                               (212) 231-6311

For Alvarez & Marsal:          Alvarez & Marsal, Inc.
                               BY: BRIAN WHITTMAN
                               (312) 601-4226

For Former Special
Committee:                     Skadden Arps Slate Meagher &
                               Flom
                               BY: JUSTIN WINEMAN, ESQ.
                               (312) 407-0924

For Carval Investors:          Carval Investors
                               BY: TECK WONG
                               (952) 984-3292
```

TELEPHONIC APPEARANCES:
(Continued)

For Wells Fargo Bank:          White & Case, LLP
                               BY: ANDREW ZATZ, ESQ.
                               (212)819-8744

1

WILMINGTON, DELAWARE, MONDAY, JUNE 27, 2011, 10:10 A.M.

THE CLERK:  Be seated, please.

THE COURT:  Good morning, everyone.

ALL:  Good morning, Your Honor.

MR. SOTTILE:  Good morning, Your Honor.  James Sottile of Zuckerman Spaeder, special counsel to the official committee of unsecured creditors.

Your Honor, unless the Court has any preliminary matters it wanted to take up, we thought we'd plunge straight into closing arguments.

THE COURT:  I think that's a fine plan, Mr. Sottile.

MR. SOTTILE:  Thank you, Your Honor.  Let me say a few words about how the DCL side plans to present the argument to the Court.

As the Court is well aware, we are a sometimes uneasy coalition of parties with pretty different views about the merits of the claims.  Nonetheless, as the Court knows, we've been able to come together from very different places on a settlement that all three parts of that coalition support.  And we believe it will be helpful for the Court in these closings to hear directly from each of the three members of our group, the debtors, the committee, and the lenders about their different perspectives on the claims and on the settlement that's before the Court.  So

1  that the Court can appreciate why, although we come from

2  entirely different places, we all agree the settlement

3  before you is a reasonable one that the Court should

4  approve.

5           THE COURT:  And refresh me, Mr. Sottile, on the

6  division of time.

7           MR. SOTTILE:  Certainly, Your Honor.  We agreed

8  on a total of five hours as between the plan proponents

9  groups, two and a half hours per side with each side having

10 ability to reserve up to an hour for rebuttal or as the

11 Court indicated, other purposes that they find appropriate

12 to use later on in the day.  Your Honor, we anticipate using

13 perhaps an hour and 45 minutes up front and would like to

14 reserve whatever time we don't use for rebuttal thereafter.

15          THE COURT:  All right.

16          MR. SOTTILE:  Your Honor, I'm obviously going to

17 go first.  I'm going to layout why the committee believes

18 the settlement is a reasonable one that the Court should

19 approve.  Mr. Bennett will then speak and present the Court

20 with the senior lender's perspective on the claims and the

21 defenses that the senior lenders would press if those claims

22 were litigated.  I suspect the Court is going to hear Mr.

23 Bennett tell you that I got it wrong on a whole bunch of

24 things about my views on the claims.  That's okay.  I've

25 gotten used to Mr. Bennett telling me I'm wrong on a lot of

1    things over the last couple of years.  The maddening part,

2    however, Your Honor, is that sometimes he turns out to be

3    right.

4            Finally, Mr. Bendernagel and Mr. Conlan will rise

5    to set forth the debtors' perspective on these claims and

6    why the debtors believe the settlement before you is a

7    reasonable one and the importance to the debtors of emerging

8    from bankruptcy with a resolution of as many of the disputed

9    issues as possible.

10           This case turns, Your Honor, on one central

11   issue.  Is the settlement that's embodied in the DCL plan, a

12   reasonable one, that this Court should approve?  We submit

13   the clear answer that emerges for more than two weeks of

14   testimony and a blizzard of paper is yes.  The evidence

15   shows that the settlement is a fair compromise of complex,

16   hotly disputed issues, and it reflects in a very real way

17   the substantial risks that any plaintiff litigating the LBO

18   claims would face.

19           Importantly, Your Honor, and this is a theme that

20   will run throughout the presentations, the settlement that's

21   been reached is entirely consistent with and indeed was

22   guided by the examiner's conclusions on the key disputed

23   issues.  In contrast, the noteholders, after telling you at

24   trial that the examiner's report was a game changer, it

25   showed how plainly the settlement was unreasonable, now ask

1    the Court to find the examiner got it wrong on almost every

2    important issue, except where he agreed with them.   This

3    Court should approve the settlement and confirm the DCL

4    plan.

5            Your Honor, after everything the Court has seen,

6    I don't think this Court or any of the parties will dispute

7    that this is a very complicated case.   And the ultimate

8    outcome is uncertain.   Unsurprisingly, everyone of the

9    parties has different views about how strong the LBO claims

10   are and what a reasonable settlement might look like.   And

11   it's now for this Court to make a judgment on those issues.

12           The examiner's report we submit provides valuable

13   assistance to the Court in cutting through all of that

14   complexity and the partisan arguments of the parties.

15   Everyone here, Your Honor, agrees that the examiner is

16   highly qualified, that he was independent, and that he

17   undertook a very thorough analysis of the claims both on

18   their facts and the law.

19           The noteholders said in their post trial briefs

20   that the examiner performed a comprehensive factual and

21   legal review of the LBO claims.   That he was the only truly

22   independent party to undertake that review, and that he was

23   in the best position to provide the Court and the parties

24   with the most neutral assessments of those claims.   We

25   agreed.   We think they're absolutely right.   His report

1   provided essential guidance for this Court and for the

2   parties as we look at the claims in the settlement.  And,

3   Your Honor, his report and his conclusions support the DCL

4   settlement.

5           Let's take a look at what the examiner found on

6   the key issues, the likelihood of avoidance at step one and

7   step two of the LBO transactions.  The examiner like

8   everyone else, concluded that the likelihood of avoidance

9   was much higher at step two than at step one.  I don't think

10  there's any real dispute that step two is significantly more

11  likely to be avoided than step one.

12          In fact, the examiner concluded that in his

13  judgment, step two was likely to be found to be a fraudulent

14  conveyance by a Court hearing those claims.  However, he

15  found that a win on step two standing alone wouldn't do the

16  unsecured creditors a whole lot of good in the absence of

17  some kind of equitable remedy.  That reason is obvious, that

18  the step one claims if they're allowed are enormous and they

19  will swallow up the great bulk of the assets unless there's

20  some equitable remedy that will somehow prevent them from

21  doing so.

22          In contrast, if we look at the examiner's views

23  in step one, it seems clear that the examiner believes a

24  challenge of step one is more likely than not to fail.  He

25  found no credible evidence of an intentional fraudulent

1  transfer at step one.  And as to constructive fraud, he

2  looked at all three of tests for a constructive fraud, but

3  focused first on balance sheet insolvency.  And as the Court

4  is aware, the examiner found that balance sheet insolvency

5  was highly unlikely unless you collapsed the steps, you

6  counted the step two debt, the $4.2 billion in evaluating

7  solvency at step one.

8         As to whether you would collapse, the examiner

9  found that it was somewhat unlikely, although a close

10  question that a Court would collapse the two steps.  That,

11  of course, didn't end the analysis for balance sheet

12  solvency because collapse in and of itself wouldn't

13  establish insolvency.  A plaintiff pursuing step one claims

14  would still have to prove even with collapse that the

15  Tribune parent and the guarantor subsidiaries were insolvent

16  if you counted that extra debt.

17         As to that question, at the parent level, the

18  examiner found that even with collapse, it was still

19  somewhat unlikely that the Tribune parent was insolvent,

20  although it was then, in his judgment, a very close

21  question.  And as the Court is aware, and as I think is

22  apparent, the question of insolvency of the guarantor

23  subsidiaries is a significantly more difficult one for a

24  plaintiff than insolvency at the parent level.  It's

25  uncontested that the guarantor subsidiaries have about $2

1  billion less debt.  So just proving insolvency at the parent

2  does not mean that you will establish insolvency at the

3  subsidiaries.  Instead, you will have to surmount a much

4  bigger hurdle to prove insolvency at the subsidiaries as the

5  examiner found in his report.

6           It's worth noting, as the Court heard during the

7  hearing, that the examiner found insolvency was harder to

8  prove at the subs than at the parent, even though he made an

9  error with respect to ownership of the Cubs and some other

10 assets which he assumed belonged at the parent level and, in

11 fact, belonged at the guarantor subsidiary level.  And, of

12 course, the question about whether or not you can prove

13 insolvency at the subs as opposed to the parent is a

14 critical one because as Billy Sutton used to say, that's

15 where the money is.  More than 90 percent of the assets of

16 the enterprise at the relevant times are in the guarantor

17 subsidiaries.

18          The examiner then looked, after he had gone

19 through his analysis of a balance sheet insolvency, at the

20 other two tests for constructive fraudulent transfer, the

21 ability to pay debts and capital adequacy.  There on the

22 question of whether or not you should look at the step two

23 debt, he found that it was highly likely that a Court would

24 consider the step two debt in analyzing these two tests.

25 However, he found that even if you did so, it was reasonably

1  unlikely that a Court would conclude that Tribune couldn't

2  pay its debts or had inadequate capital at step one.

3          Your Honor, I'd like to pull up at this point, a

4  chart, which is Slide #1 on your screen, that illustrates

5  what happens according to the analysis by the examiner's

6  financial advisor to recoveries of the noteholders in six

7  key litigation scenarios that the examiner identified.  And

8  the scenarios, as the chart before you indicates, range all

9  the way from no avoidance at all, no avoidance at step one,

10 no avoidance at step two either at the parent or the subs,

11 to Scenario #6, which is full avoidance.  All the LBO debt

12 at the parent and the subs is avoided at step two and at

13 step one.

14          And we believe, Your Honor, that this chart is

15 highly instructive in evaluating whether or not the DCL

16 settlement is reasonable.  As you can see from the chart,

17 the DCL settlement produces a total of $432 million for the

18 noteholders.  That includes the base recovery if there were

19 no avoidance.  That's more money, Your Honor, in fact, it's

20 substantially more money than five of the six scenarios the

21 examiner evaluated.

22          THE COURT:  And where does the support for these

23 figures come from in this record?

24          MR. SOTTILE:  Your Honor, the examiner's report,

25 I think has been submitted into evidence pursuant to the

1  stipulation of the parties, thereby permitting the Court to

2  consider the tables prepared by the examiner's financial

3  advisor, which are an appendix to Volume 2 of the report.

4  These figures come directly from those tables prepared by

5  the examiner's financial advisor.  We've simply transposed

6  them into the chart.

7           THE COURT:  Okay.  And it comes from information

8  given nowhere else in the record, at least directly?

9           MR. SOTTILE:  Your Honor, I believe that

10  Professor Black, also in the course of his testimony,

11  referenced the examiner's findings as to the amounts of

12  recovery in these six scenarios, but the primary source for

13  him, as for this chart, was the tables attached to the

14  examiner's Volume 2.

15           And as I've said, all we've done here, Your

16  Honor, is pull the two numbers the examiner provided in each

17  of these scenarios.  One for cases where there were what he

18  called low intercompany balances, one where there were what

19  he called high intercompany balances.

20           Your Honor, as I say, I think it is important to

21  bear in mind that under this analysis, prepared by the

22  examiner's financial advisor, the only way you do better

23  than the DCL settlement is with a home run.  If you avoid

24  all the LBO debt at both steps, at both the parent and the

25  subsidiaries.  In every other scenario that the examiner's

1  financial advisor focused on, the settlement is a superior

2  result.

3           Now, Your Honor, the noteholders, through Dr.

4  Beron and others, have suggested this isn't very important

5  because it's only six scenarios and there are really dozens

6  or hundreds of different litigation scenarios.  With all due

7  respect, Your Honor, that's just whistling Dixie.  The

8  examiner didn't pick six scenarios out of a magic hat.  He

9  picked six that he believed were important for anyone like

10 this Court or the parties that was trying to understand the

11 likely outcome on the LBO claims.  And the ones he picked

12 are the obvious ones that I think anyone would pick who

13 wanted to understand what might happen on the claims.  No

14 avoidance, avoidance at step two just at the parent, step

15 two avoidance at both the parent and the subsidiaries, full

16 avoidance at step two and winning at the parent at step one.

17 And then finally, winning it all, both steps, both parent

18 and subs.  There are certainly additional scenarios one can

19 conjure up, Your Honor, but these are the major obvious

20 alternatives for the outcome of this litigation and only one

21 of them does better than the DCL settlement.

22          Your Honor, let me speak a little bit about the

23 committee's approach to this settlement.  In its evaluation

24 of the claims in its negotiation of the settlement you heard

25 the testimony from Salganik on these points.  The committee

1  carefully considered the examiner's report.  The committee

2  also did its own investigation with the help of its

3  professionals including my firm on the merits of those

4  claims.  And based on its reading of the examiner's report

5  which I just talked about the highlights of and the

6  committee's own analysis through its professionals, it

7  concluded that the settlement that's before this Court

8  reached as a result of the mediation process is a reasonable

9  one and, in fact, represents a very good result for all of

10  the unsecured creditors.

11           As I said in opening, Your Honor, this isn't a

12  settlement that just barely creeps over the low end of

13  reasonableness in the committee's judgment.  The committee

14  believes that this is a very good settlement that is well

15  within the range of reasonableness, that we want to see this

16  Court approve and that we want to see implemented because we

17  believe it's in the interests of all of the unsecured

18  creditors.

19           Why is it a good result in the committee's

20  judgment?  Your Honor, it's a good result because we think

21  it strikes the right balance between what the examiner found

22  and the committee's own views on the merits of the avoidance

23  claims at step two and step one and the risks of litigating

24  those claims.  We believe we win the claims in step two,

25  Your Honor.  If we were litigating these claims for the

1    benefit of the debtors' estates, we think that's a winner at

2    the end of the day.  This is one of the points where Mr.

3    Bennett may disagree with me.  That's not to say it's a sure

4    thing, Your Honor.

5         There are statutory defenses.  You're going to

6    hear about those from Mr. Bennett that the senior lenders

7    would advance like lack of standing, good faith, Section

8    546(e) and so forth.  And we would encounter all of those

9    defenses if the step two claims were litigated, but at least

10   from the committees' perspective, we believe we would defeat

11   those statutory defenses and the step two would be avoided.

12   Albeit with some risk and uncertainly that accompanies

13   litigation of any claims.  There is no sure thing here.

14        The problem is that if that's all you win on,

15   Your Honor, and you don't get some follow on equitable

16   relief, and I'll come back to the noteholders' argument on

17   that point, it doesn't do you much good for -- if you're an

18   unsecured creditor because avoiding step two alone doesn't

19   add much to the recoveries of the unsecured creditors.

20        Your Honor, you can see that if you look at the

21   chart and compare Scenario 1 with Scenario 3.  Scenario 1 is

22   no avoidance anywhere, and there the noteholders would

23   recover under the examiner's analysis $58 to $65 million.

24   Scenario 3 is avoidance at both the parent and the subs at

25   step two, so a complete win at step two, but a loss at step

1   one.  All right.  That's the step two win that in our

2   judgment would likely follow on litigation.  But take a look

3   at what that does, Your Honor.  It adds only about $40

4   million to the recoveries of the noteholders under the

5   examiner's analysis as presented in these scenarios.  So

6   yes, it's a strong claim, yes, it's a claim we believe we'd

7   win if we fought, but it doesn't help very much.

8           In contrast, as the Court can see from Scenario 6

9   and as I think is apparent to everyone, if you get full

10  avoidance, if you avoid the LBO debt at step one and two at

11  both parent and subs, you get a full recovery.  The

12  unsecured creditors are completely made whole.  However, as

13  the Court heard in the testimony and as the examiner's

14  report we think pretty graphically illustrates, there are a

15  number of significant hurdles to winning in that scenario to

16  avoiding the debt at step one at both the parent and the

17  subsidiaries.  That's a case, Your Honor, that the committee

18  believes we could well lose.

19          And in the examiner's view, as we just went

20  through his assessment of probabilities, his conclusion is

21  that we likely would lose that claim, even though pieces of

22  it are close, where he comes down ultimately is if he were

23  deciding it based on what he has in front of him, he would

24  conclude that that is a claim that fails.  And the committee

25  had to take the risk into account that this Court or any

1   other court litigating these claims would reach the same

2   conclusion as the examiner, that we would lose on step one

3   and, therefore, in our analysis, not get much bang for the

4   buck out of litigating these claims as compared to the DCL

5   settlement.

6          Let's take a look at what those hurdles are to

7   winning on step one and, therefore, getting a full recovery.

8   Your Honor, we noted above that the examiner found as to

9   intentional fraud that there was no credible evidence to

10  support it.  That we submit is a huge hurdle to overcome.

11  No plaintiff puts a lot of value on a claim where he looks

12  at the evidence and says I don't have any credible evidence

13  or where a neutral third party who's thoroughly looked at

14  the claims like the examiner looks at them and says I don't

15  see any credible evidence of intentional fraud.  It's not a

16  claim any litigant puts a lot of value on.

17         As to constructive fraud, Your Honor, the parties

18  at the hearing as the Court heard, focused primarily on the

19  first test, balance sheet insolvency.  And there are three

20  big hurdles in our judgment and under the examiner's

21  analysis to avoidance at step one on this test.  First,

22  there's collapse.  Second, there's whether or not with

23  collapse you can prove insolvency at the parent.  And

24  finally, there's the question of even if you prove

25  insolvency of the parent, can you prove that the guarantor

1    subs with $2 billion less debt are also insolvent?  Each one

2    of those has significant challenges for any plaintiff

3    pursuing those claims.

4           First, and I think this is uncontroverted by the

5    parties.  The two steps have to be collapsed for there to be

6    a realistic argument for balance sheet insolvency at step

7    one.  If you don't count the $4 billion of step two debt at

8    step one, there is no realistic case that any party has

9    advanced that the parent of Tribune was insolvent on a

10   balance sheet basis.  That's step one.  And collapse is not

11   a slam dunk under the examiner's analysis.  His conclusion

12   is that the chance of getting a win on collapse before a

13   court was less than 50/50.

14          And again, as we read it, that tells us that if

15   the examiner were deciding the issue, he would say no, no,

16   collapse and, therefore, you lose the balance sheet

17   insolvency fight at step one.  If you get a win on collapse,

18   that doesn't mean your home on avoidance even at the parent.

19   You still have to prove as the examiner noted that there was

20   insolvency at step one.

21          And the Court heard at some length, testimony

22   from Professor Fischel about the challenges that a plaintiff

23   would face in trying to prove balance sheet insolvency at

24   step one even with collapse.  He pointed to all of the

25   market evidence that in Professor Fischel's judgment

1   indicated that the market believed notwithstanding the

2   issues raised by the noteholders, that Tribune was solvent

3   at step one.

4        On that issue, again, Your Honor, the examiner

5   found that while it was very close, the odds were still less

6   than 50/50 of prevailing on the argument.  Somewhat

7   unlikely, but very close is the way he described this

8   argument.  So if you get past the less than 50/50 collapse

9   point, you then have less than 50/50 chance of winning

10  according to the examiner on parent insolvency.

11        And even that, Your Honor, in our analysis

12  doesn't do you a whole lot of good because the money is

13  primarily at the guarantor subsidiary level and in order to

14  produce a substantial win that's better than the settlement,

15  you have to prove insolvency at the subsidiaries at step one

16  and that's a very difficult challenge to pass because of the

17  $2 billion less debt they face.

18        Now, Your Honor, the noteholders told you at

19  trial and I suspect you're going to hear today that none of

20  these hurdles that I've outlined matter a whole lot because

21  there's a whole bunch of other paths to a full recovery,

22  even if they don't get full avoidance at step one.  Your

23  Honor, they're right, but there are other arguments that

24  could be and would be advance to produce if not a full

25  recovery, substantial recoveries for the noteholders and

1  others without avoidance of step one.  But every one of

2  those like the arguments for step one avoidance faces very

3  substantial hurdles.  In fact, we believe the hurdles are

4  much steeper on their alternative arguments.  Every one of

5  them presents substantial risks for any plaintiff litigating

6  the claims.

7          The noteholders tell us first, Your Honor, that

8  the collapse issue on balance sheet insolvency is not a big

9  deal, not a big problem because you don't have to prove

10  balance sheet insolvency to prove constructive fraud at step

11  one. You can prove constructive fraud in one of the

12  alternative tests, inadequate capital, ability to pay debts

13  as they come due.  And there -- and they're right, the

14  examiner concluded it was highly likely that a court would

15  consider the step two debt to be foreseeable and, therefore,

16  taken into account on those tests.  The problem is that even

17  doing that, the examiner found that a court was reasonably

18  unlikely to find that Tribune was insolvent on either of

19  those tests.  The committee wasn't prepared to bet this

20  settlement which produces hundreds of millions of dollars

21  more than you'd get from step two avoidance on an argument

22  that the examiner found was reasonably unlikely to succeed.

23          Second, as to the point I made about the

24  guarantor or subsidiaries and the problem that it's

25  difficult to prove insolvency there, the noteholders agree

1  that it's more difficult to prove insolvency at the

2  subsidiaries than at the parent.  You saw that in Mr.

3  Tuliano's analysis while he found in his judgment that the

4  subsidiaries were still insolvent at step one.  It was

5  clearly a much closer question, $2 billion closer, even

6  under Mr. Tuliano's analysis.

7            However, the noteholders tell you, Your Honor

8  that that isn't a big deal to a full recovery because if you

9  get insolvency just at the parent level at step one, you

10  will get enormous disgorgement recoveries, enough to make

11  the noteholders whole or at least to get them an enormous

12  recovery far in excess of the settlement.

13            Now, Your Honor, they're right, that if you prove

14  avoidance of the parent at step one, there are big

15  disgorgement dollars out there.  And if all of those

16  disgorgement dollars were going to go 100 percent to the

17  noteholders, I would say they had a pretty persuasive point

18  that this is an alternative pathway that holds out some real

19  promise.  But they're just wrong, Your Honor.  They ignore

20  two critical facts about what would happen with disgorgement

21  dollars if they came in, if you prove step one avoidance at

22  the parent which again is problematic in itself for all the

23  reasons we've talked about.

24            First, they ignore the intercompany claims that

25  the guarantor subsidiaries have against the parent.  There's

1    almost $7 billion of those.  And, Your Honor, those are

2    likely to swallow up the great bulk of any disgorgement

3    recoveries leaving relatively little for the noteholders.

4    The noteholders' only answer here is to try to reconstruct

5    and adopt the intercompany claim settlement that's in the

6    DCL plan.  And with respect to Your Honor, you can't justify

7    a litigation recovery or litigation scenario based on a

8    settlement that you make up yourself which is essentially

9    what the noteholders are doing on this argument.

10           The noteholders are also ignoring when they say

11   no problem, I can get all of my money from disgorgement at

12   the parent step one.  They're ignoring that the senior

13   lenders have a strong argument that they have an allowed

14   claim as to the step one debt, even if there's insolvency at

15   step one because a substantial amount of money was used to

16   refinance existing debt and for other corporate purposes

17   that didn't go out to shareholders.  The senior lenders,

18   therefore, have a substantial argument that they're going to

19   have $3 billion, maybe even more in protected debt following

20   a step one avoidance.  And that debt will come ahead of the

21   noteholders with respect to participation and disgorgement

22   recoveries.

23           Now, Your Honor, I've told you that it doesn't do

24   a whole of good to win on step one avoidance at the parent

25   and that the disgorgement recoveries aren't going to go 100

1    percent to the noteholders.  You don't have to just take our

2    word for it, Your Honor.  The examiner also analyzed this

3    precise scenario where you get avoidance at the parent at

4    step one and two, but not at the subsidiaries.  And he

5    included in his analysis disgorgement recoveries.

6            And if you take a look, Your Honor, at Scenario

7    4, that represents the result.  If you get avoidance at the

8    parent at both steps, but not at the subsidiaries and you

9    get disgorgement recoveries, his analysis shows that the

10   noteholders do better for sure than in the no avoidance

11   scenario or the step two avoidance of parent only, but what

12   do they get?  They get $240 to $280 million, substantially

13   less than the $432 million DCL settlement.

14           Your Honor, the noteholders next say again in the

15   category of things that mean you don't have to worry about

16   all these hurdles that the DCL folks like to talk about.

17   They say that if you win on avoidance at step two alone,

18   that could be enough for a full recovery or at least a much

19   bigger recovery if Tribune's value is a lot more than the

20   $6.75 billion assumed in the DCL plan and that Lazard's

21   witnesses, Mr. Mandava and Mr. Chachas, the former Lazard

22   partner testified about during the hearings.  And they're

23   right, Your Honor, that you can do better with just step two

24   avoidance if Tribune's value is a whole lot higher.  In

25   fact, you'd probably get a full recovery if it gets close to

1 | $8 billion so long as the step one claims that are allowed

2 | in this assumption don't get any post petition interest.

3 | But, Your Honor, you're going to hear more about

4 | this from the debtors' counsel, Mr. Bendernagel and you've

5 | heard the evidence at trial.  And we submit that the

6 | evidence pretty clearly showed you that Tribune's value

7 | doesn't come anywhere close to $8 billion or to any number

8 | significantly above the $6.75 billion.  We don't believe

9 | there's a credible argument for that.  And even if the value

10 | of the company was a lot higher as Mr. Bennett will describe

11 | to you in some detail, the noteholders would have to prove

12 | that the step one allowed claims get no post petition

13 | interest and there are a number of hurdles to any such

14 | argument that Mr. Bennett will detail.

15 | Finally, Your Honor, we have the WEAR argument

16 | that you've heard a lot about.  And that argument runs

17 | something like this.  The noteholders say they can get a

18 | full recovery if they just avoid step two by winning on some

19 | equitable argument, one of a bundle of arguments that they

20 | lump under the rubric WEAR.

21 | Your Honor, the trouble with that argument which

22 | is certainly one that we would make if we were litigating

23 | these claims, we've pleaded arguments that sound similarly

24 | to this is that WEAR is not a legal doctrine.  It's not

25 | settled law.  It's not equitable subordination.  It's not

1 equitable estoppel.  It's not any of the traditional

2 remedies that this Court or other courts have recognized in

3 circumstances like this.  It's really a bundle of arguments

4 to make new law.

5 　　　　　And those arguments as Mr. Bennett will detail,

6 face their own significant hurdles.  That's not an argument

7 that any plaintiff pursuing these claims we submit would bet

8 hundreds of millions of dollars on winning and to give out

9 that kind of value in a settlement on the chance that you're

10 going to persuade a Court.  Well I don't have the facts for

11 equitable subordination, I don't have the facts for

12 equitable estoppel, but I got some other equitable argument

13 and you ought to recognize it and get me home.  We don't

14 believe, Your Honor, that that's an argument that drives

15 substantial value.

16 　　　　　Your Honor, our evaluation comes down to this.

17 Step two claims are going to win in our judgment, but don't

18 do a lot of good.  The step one claims the examiner found

19 were more likely than not to fail for a whole series of

20 reasons.  And they were particularly likely to fail as to

21 getting at the assets of the guarantor subsidiaries which is

22 where the money is.  That means this is a case that you

23 ought to settle as long as you can get full value for the

24 strong step two claim and some value for the chance that you

25 could win on step one.  That's precisely what the DCL

1  settlement before the Court does.

2          Your Honor, I've spent a lot of time talking

3  about why we believe the examiner's report supports the DCL

4  settlement.  Let me touch for a few minutes on what the

5  noteholders have to say about the examiner's report and its

6  relationship to the settlement.

7          They say basically two things.  First, they

8  presented testimony from Dr. Beron that the Court will

9  recall saying that as he read the examiner's report, it

10 doesn't support the DCL settlement.  In fact, taking the

11 examiner's conclusions, Dr. Beron says the claims are really

12 worth three times the DCL settlement, maybe more and,

13 therefore, it's unreasonable.

14         The second approach the noteholders took and you

15 see this really in the post trial briefs is to say the

16 examiner got it wrong on the key issues.  And so any

17 settlement that is premised on the assumption that the

18 examiner's report is right is going to be unreasonable.

19         Your Honor, I don't propose to spend a lot of

20 time on Dr. Beron's testimony.  We submit that the cross

21 examination at trial demonstrated pretty thoroughly to the

22 Court that he is not a reliable witness with respect to the

23 value of the claims.  As the Court will recall, he's the guy

24 who read the examiner's headline conclusions, but not any of

25 the explanation that follows.  So he didn't read more than

1    90 percent of the report.  He doesn't know anything about

2    fraudulent conveyance litigation.  He testified about how

3    important it was to know the connections between different

4    issues in a decision tree analysis, but it was perfectly

5    clear on cross examination that he didn't know what the

6    connections were between the critical issues.  He didn't

7    know whether your chances of winning on intentional fraud

8    went down if you lost on constructive fraud.  He didn't know

9    whether or not if you win on balance sheet insolvency, you

10   have a better or worse chance of winning on the other

11   constructive fraud tests.  Those are essential connections

12   to understand as Dr. Beron testified, but he doesn't know

13   what the examiner thought about any of it.

14            And finally, as the Court heard on cross

15   examination, Dr. Beron testified that he abandoned his own

16   reading of the examiner's report on one significant issue

17   and perhaps others on counsel's instruction.  It wasn't

18   because they persuaded him he was wrong, it was simply

19   because they told him to make a different assumption about

20   how to read the examiner's report.  Then he started with in

21   his own analysis.  That issue, Your Honor, had to do with

22   what happens with step one lenders participating in

23   disgorgement recoveries or distributions following step two

24   avoidance.  You don't have an opinion, we submit from Dr.

25   Beron based on the examiner's report, you have an opinion

1  from counsel.

2          For all of these reasons, Your Honor, Dr. Beron's

3  testimony is fundamentally unreliable and says absolutely

4  nothing about the value of the claims or the reasonableness

5  of the settlement.

6          Now, Your Honor, I've mentioned a couple of times

7  that the noteholders in their post trial briefs ask you to

8  find that the examiner got it wrong on a whole series of key

9  issues.  Let's pull up Slide #5 on the examiner's

10  conclusions.  Your Honor, I don't want to belabor this

11  because I think it's kind of obvious looking at this summary

12  here.  But let me just touch on a couple of these.  The

13  noteholders say in their post trial briefs, the examiner's

14  analysis of solvency at step one, the critical issue, Your

15  Honor was incomplete.  It's analysis of capital adequacy

16  there was also incomplete.  He erred when he didn't collapse

17  step one and two.  He overlooked the strong evidence of

18  intentional fraud at step one according to the noteholders,

19  although they haven't pointed to any evidence that wasn't

20  available to the examiner.  He failed to over recognize or

21  he overlooked problems in the projections.

22          Again, I don't want to belabor it, but I think

23  it's obvious that the noteholders in their post trial briefs

24  are asking you to find the examiner got it wrong on all the

25  key issues where they faced risks on the claims.  The only

1   place apparently where they think he got it right on an

2   issue that drove dollars is on the step two claims where he

3   agreed to them.

4          Your Honor, I would love it if I could pick and

5   choose from the examiner's conclusions.  There are some

6   things there I don't like where I think his analysis doesn't

7   agree with mine.  But if you are going to try to justify or

8   attack the DCL settlement on the basis of the examiner's

9   conclusions, you have to take it as a whole.  You can't just

10  take the parts you like.  The noteholders we submit are

11  asking the Court to take just the parts they like that go

12  their way.  We on the other hand, Your Honor, ask you to

13  take the examiner's report as a whole as I've described it,

14  lay it down against the DCL settlement, and we submit that

15  the Court will then conclude that the settlement is a

16  reasonable one.

17         Your Honor, let me conclude this way.  The bottom

18  line as we see it is that this is a case that's filled with

19  risks on litigation of the claims.  The outcome is highly

20  uncertain, the claims where we have some confidence don't

21  drive a lot of dollars, the other claims have lots of

22  hurdles as the examiner found and as we concluded from our

23  own review.  The only independent person to look at the step

24  one claims that produce a lot of dollars, the examiner

25  concluded they were unlikely to succeed.  The settlement

1    reflects that bottom line.  It's a much larger recovery than

2    we would expect to get from a victory at step two.  It's

3    much less than we would expect from a victory at step one

4    reflecting the hurdles identified by the examiner and his

5    evaluation of the likelihood of success on that claim.

6            It's also important, Your Honor, I think in

7    looking at this to remember that the headline up front

8    dollars to the noteholders in the DCL settlement, the $432

9    million is not everything.  There is a litigation trust from

10   which noteholders and other participants would end up

11   getting the lion's share of the recoveries that could

12   significantly increase the $432 million if the claims are

13   successful.  And if the Court were to make the kind of

14   findings and conclusions the noteholders ask you to make

15   about the merits of those claims, they ought to have very

16   substantial value and weigh significantly in the minds of

17   the noteholders at least in evaluating this settlement.

18           Your Honor, other than noteholders themselves,

19   the creditors largely agree with the assessment I have just

20   outlined for you that the committee has made about the

21   merits of the claims and the settlement.  I think three big

22   points stand out from the creditors' votes that I would ask

23   the Court to bear in mind.

24           First, if you look at the votes of the parent

25   unsecured creditors who are essentially in the same position

1    as the noteholders benefit from the same LBO claims, they

2    voted overwhelmingly in favor of the DCL plan.  They don't

3    want to gamble the examiner got it wrong again, and again,

4    and again which is what the noteholders ask you to do.

5    While a majority by amount of the senior noteholder class

6    voted to reject the DCL plan, I think it's instructive that

7    70 percent by number of creditors accepted the DCL plan.

8            Finally, Your Honor, as the Court is aware from

9    the voting, there are only three of the more than 250

10   impaired classes that voted to accept the noteholders' plan,

11   the senior noteholders themselves where the votes dominated

12   by Aurelius, the PHONES holders who are contractually

13   subordinated and need a litigation grand slam to get

14   anything, and a class that had one voting claim for $47.10

15   that the noteholders chose not to re-solicit, it's now

16   deemed to reject as a result.

17           I submit there's no real question.  The creditors

18   overwhelmingly prefer the DCL plan and approve the

19   committees' judgment that the settlement is a reasonable

20   one.  It's a fair compromise, Your Honor, of risky

21   litigation that yields large certain dollars payable right

22   now.  It's consistent with and guided by the examiner's

23   valuation of the claims.  The only neutral party to take a

24   hard look at these claims which this Court we submit should

25   rely.  It's supported by the debtors, the committee, the

1  senior lenders, and almost all of the voting classes of

2  creditors other than the senior noteholders and the PHONES.

3  It's well within the range of reasonableness and we ask this

4  Court to approve it as part of the DCL plan.  Thank you,

5  Your Honor.

6              THE COURT:  Now what enterprise valuation do the

7  PHONES and EGI-TRB come into the money?

8              MR. SOTTILE:  Your Honor, I don't have the figure

9  to hand, but we can provide it in the course of the

10 argument.  It has to get very substantially higher than

11 $6.75 billion and you have the post petition interest thing,

12 but I do not have the number immediately to mind.  We will

13 get it to the Court in the course of the day, if I may.

14             THE COURT:  Okay.  Then there's a second part to

15 that question.

16             MR. SOTTILE:  Certainly, Your Honor.

17             THE COURT:  If we don't get to that number, do I

18 have to decide priority between EGI-TRB and the PHONES?  And

19 do I have to decide the intra-class problem within the

20 PHONES?

21             MR. SOTTILE:  I'm just making a note, Your Honor.

22 Your Honor, those are issues that we're prepared to address,

23 but I have to confess, I'm not the person who was prepared

24 to address them and with the Court's indulgence, I would ask

25 that they defer until the person who is prepared to address

1    them can do so.

2            THE COURT:  Thank you.

3            MR. SOTTILE:  Thank you very much, Your Honor.

4            MR. BENNETT:  Good morning, Your Honor.  Bruce

5    Bennett on behalf of certain of the credit agreement lenders

6    and in my remarks today, I speak in large part for all of

7    the credit agreement lenders.

8            Mr. Sottile focused on the reality that the

9    examiner's report does support the fairness of the proposed

10   settlement.  And, of course, the noteholders' brief and

11   their proposed findings not only say that the examiner was

12   wrong in all respects, they just say we're going to win the

13   litigation in every single issue.  And while we've been

14   pretty quiet throughout the trial because we thought the

15   appropriate focus should be whether the settlement is

16   reasonable and we thought the best evidence of that was what

17   the examiner's report said taken at face value, not edited

18   for anything other than manifest errors, the lenders do not

19   agree that everything in the examiner's report is exactly

20   right.  And we also think that there's certain things that

21   require some special emphasis.  And for most of my argument

22   today, I'm going to try to jump to those issues.

23            I will say that Mr. Sottile said I'm going to

24   talk about a lot of different points and I'm going to try

25   to, but I'm severely limited as to time.  That's Mr.

1    Sottile's doing.  He doesn't want to hear too much of my

2    side of the case.  And we really don't want to be fighting

3    again.  By the way, I also asked Mr. Sottile when he gave me

4    my time if I could measure them on the scale of Sottile

5    minutes --

6    (Laughter)

7              MR. BENNETT:  -- and he said I couldn't do that

8    either.  So I may not get to all the points, but I will try

9    to.  We have some charts.  They are guides really to --

10   because I want to kind of hit certain points in the outline,

11   but not the whole outline because Your Honor, of course, has

12   heard the whole outline before.

13             And my first point deals with collapsing.  And

14   where we are on the map is that we have a transaction where

15   there are two parts divided by six months.  We all know why

16   this is important because, of course, integration is crucial

17   if anyone's going to take a serious run at the step one

18   transfers.  And the six month delay was of course because

19   there were certain contingencies that had to be met.  And I

20   just want to spend a few minutes focusing on two.

21             One of them, FCC approval.  When the noteholders

22   talk about collapsing FCC approval as a slam dunk, no

23   brainer, not a real contingency, but we spent hours in this

24   courtroom discussing FCC approval and the uncertainties and

25   difficulties of the process in connection with the

1  confirmation of the DCL plan.  And an interesting part about

2  it is -- two interesting parts.

3          First of all, if you go back four years to the

4  '07 review, while the cross ownership issue was already a

5  little bit receding from the FCC agenda, it used to be

6  totally unacceptable to have competing properties, TV and

7  newspapers in the same market.  That had been substantially

8  relaxed, but not gone.  And at the end of the day, it was a

9  really close vote.  And here we have a much less relaxed

10  attitude.  It's been continuously relaxed over years about

11  cross ownership.  And a plan that has all kind of

12  flexibility to make the problem go away if the FCC chooses

13  to raise it, which there's a controversy as whether they

14  even will.

15          I would say that in a more relaxed environment

16  what was proved before your Court is that you can say many

17  things about the FCC process, but the results are never

18  certain, that there's risk connected to it, and I think you

19  cannot do anything else but conclude that back in '07, when,

20  in fact, the review was a bit more searching because the

21  issues were a little bit more intensively evaluated, at

22  least a little bit more intensively evaluated, it was at

23  least as uncertain or -- and probably much more uncertain

24  than the impression that was left from the parade of experts

25  that Your Honor heard on the FCC today.

1          I think it's also interesting that this very week

2     we have a situation where major league baseball was called

3     upon to approve a transaction relating to a certain team

4     called the Dodgers and --

5          THE COURT:  They'll be sitting upstairs shortly.

6          MR. BENNETT:  Yeah, I'm headed there tomorrow.

7     And the transaction they're involved of course was one that

8     many other teams have done in prior years, but when the

9     Dodgers wanted to do it, the commissioner said no.  He says

10    this is a different case.  So the argument that an approval

11    by major league baseball of a transfer of control of a

12    baseball team to a particular person was slam dunk and not a

13    serious condition, I also think that is not credible.

14         THE COURT:  You think they're all not as easy as

15    the Cubs?

16         MR. BENNETT:  They're all not as easy as the

17    Cubs.

18    (Laughter)

19         MR. BENNETT:  And then the last point I want to

20    make with respect to this -- the whole issue of how -- for

21    how clear it was that step two was really going to happen is

22    the breakup fee.  Remember, the breakup fee in the

23    transaction was $25 million which I did a little math myself

24    and it's something on the order of .21 percent.  Not 21

25    percent, not 2.1 percent, .21 percent of kind of an

1    estimated transaction value.  We know about breakup fees in

2    Bankruptcy Court, we do that all the time.  We have

3    decisions that talk about a range somewhere in the mid 2's

4    to 4, not .21.  And my point here is is that this was a

5    transaction that wasn't wired nearly as tightly as other

6    transactions.  It was so loose that again, you can't call

7    them integrated, connected, or collapsed.

8            We have a slide that shows you the Tribune stock

9    price.  And this is really going to be the first of several

10   slides I'm going to talk about that focuses on real market

11   data.  It's in the record.  I think the exact reference,

12   it's in the examiner's report is on the bottom of the slide

13   on the lower right hand side.  And this shows that the

14   people in the market understood that there was uncertainty.

15   What would this curve look like if the market thought that

16   this was a transaction that was prewired, tightly

17   integrated, never any risk as to close?  Well it would start

18   with a discount at the beginning representing the interest

19   factor because you weren't going to get your money for six

20   or so months later.  And it would gradually approach the

21   actual offer price and coincide with it or nearly coincide

22   with it at the very end.

23           That's not what this chart looks like.  It is

24   completely different than what you would expect the market

25   to have done if the market thought that these two

1  transactions were really integrated and should be collapsed.

2  It's not even close.

3          And when it comes to collapse, this is another

4  area where what the examiner said in his headlines is quite

5  a bit different from what he says when he's actually

6  performing his analysis.  Professor Klee ends with in Volume

7  2, Pages 181 to 182, obviously something that Mr. Beron

8  didn't manage to get to that in order to collapse these two

9  transactions, the step one transaction, the step two

10 transaction, a Court would have to expand on existing law

11 and disregard in a very tangible way, substantive aspects of

12 the leveraged ESOP transactions.  What are the things he's

13 talking about that you would have disregard?  You'd have to

14 disregard the existence of real contingencies, small breakup

15 fee, and a market that assessed all of those things as

16 mattering quite a bit.

17          So from the perspective of the lenders, we don't

18 think collapse is a close call.  We certainly don't think

19 it's -- we certainly don't think it's a slam dunk.  And we

20 certainly don't think that the examiner got it wrong.

21          Now let's talk a little bit about solvency.  And

22 I'm going to focus on balance sheet insolvency for the time

23 being because quite frankly, even assuming collapse, the

24 examiner found that the cash flow tests were met and

25 substantially met.  He didn't -- particularly at the

1    subsidiary levels.  We'll talk about that maybe a little

2    later.  But the closer one was the balance sheet test.

3         And I guess the overarching point throughout this

4    presentation is the market evidence is the evidence that has

5    to matter the most, particularly in this context.  This

6    isn't just my idea.  This is a Third Circuit idea.  And the

7    place I think you start is the *Vlasic Pickle* case, the *VLF*

8    *-- VFB, LLC vs. Campbell Soup* and the quotes are on the

9    chart.  I'm not going to repeat them.  The Court comes down

10   very, very clearly in favor of market evidence when it's

11   available as opposed to after the fact expert testimony

12   concerning what happened way back when.   It's worth --

13        THE COURT:  If it's available and when it's

14   complete.

15        MR. BENNETT:  That's correct.  And we'll talk

16   about what is available and what we have here and how much

17   we have here.

18        I would have to say that the -- that if you're

19   going to read one case about this topic, I think *Iridium*'s

20   even better because Judge Peck really breaks down the kind

21   of problems he was having with the expert testimony offered

22   and its departure from market evidence.  And very, very

23   forcefully says that I've got market evidence, that's got to

24   be much more reliable than some expert who comes and redoes

25   projections with hindsight or uses, choose other indicia as

1    opposed to what people out there in the market who were

2    risking money were doing.

3         But I want to sit and reflect of why of all cases

4    is this case -- where that approach makes a lot of sense.

5    Let's think about 2007.  I think everybody admits that in

6    2007 there were problems affecting the publishing industry.

7    That was well known.  What people didn't really focus on,

8    but certainly the examiner mentions is that there were many

9    views out there about how well the industry would face those

10   problems and what they were going to do about them and how

11   it would come out in the end.

12        And the other part that we have to do which is

13   very hard, I find this very hard for myself is to remember

14   that the facts on the ground in 2007 are not exactly and not

15   even close to actually the facts that are on the ground

16   today or the facts that were even on the ground in 2008 or

17   2009.  To the publishing industry, it's probably relevant

18   that there was no such thing as the iPad in 2007.  And then

19   when I looked it up, it surprised me that at the closing of

20   step one, there wasn't such a thing as the iPhone.  The

21   iPhone wasn't introduced, wasn't sold until June 29, 2007.

22   At the time of step one, it was announced product, not a

23   circulating product.  No one knew what it was going to mean.

24        Moreover, and this point's been made many times

25   before, Your Honor, and you certainly know that is that in

1   the spring of 2007, we didn't have a financial crisis yet.

2   We still had an increasing stock market.  So against the

3   background that was at least ambiguous in lots of directions

4   in terms of prospects for the economy which of course

5   affects publishing, of course affects broadcasting, when

6   we're talking about prospects, you know, specifically about

7   how the market is going to evolve, people don't know what we

8   know today and we really can't imagine.  I don't think we

9   can imagine.  I have a hard time remembering what was the

10  world like before iPhones.  And we're going to soon not have

11  a hard time remembering what it was like before iPads.  So

12  if we want to go back to then, we probably should be looking

13  at some objective data that shows, you know, people making

14  business decisions without their iPad and without their

15  iPhone, what were they doing?  And so we have a couple of

16  charts, again from the record, examiner's report.

17         The next one is what was going on all the way up

18  to the last deadline -- the last line is the closing of step

19  one in the index that the examiner chose to look at

20  publishing stocks.  It's essentially flat.  So the -- yes,

21  there may have been secular declines or declines in certain

22  statistics and the noteholders point them out all the time,

23  but there were people trying to do something about that and

24  people who were making bets with money who were saying the

25  party's not over yet, or they might be able to find a way,

1  or they are finding a way to maintain the businesses in the

2  face of the challenges we were confronting then.

3         Next chart.  Your Honor, I'm sure noticed that

4  whenever they talk about Tribune's business at or about the

5  time of '07, the focus is on publishing.  If you read

6  carefully the numbers, the declines are about publishing.

7  The challenges are about publishing.  They don't ever talk

8  about broadcasting, although it was still a material part of

9  the business back then.  Of course now when they talk about

10 high values, they talk about broadcasting and they talk

11 about internet and stuff like that, but back -- whenever

12 they talk about '07, they're talking about publishing.  But

13 it's worth looking at broadcasting, too, because that was

14 also a significant part of the business, this chart's

15 broadcasting, that era, flat.

16        The -- I'm going skip over the next chart and go

17 right to the scattered diagram of bond prices.  Again,

18 talking about a complete record.  We are told, of course,

19 that this chart isn't any good because there's not enough

20 transactions.  And this is the transaction of bond prices.

21 Well let's think about this a second. If you have a market

22 that's illiquid, do we talk about an illiquidity premium or

23 do we talk about an illiquidity discount?  Of course when a

24 market is illiquid and people have to make transactions,

25 there is an illiquidity discount.  So what is the Tuliano

1    criticism of this chart really mean?  It means that if

2    anything, these prices are understated not overstated.  And

3    so is this a reliable indication?  The examiner thought so.

4    I think so, too.

5              But now let's talk to the next place where

6    Tuliano goes.  And what Tuliano next tries to do is he says

7    okay, I'm going to ignore the numbers that we've got from

8    actual bond trades.  I think I've got a better market to

9    look at and that's the CDS market.  Well I dug into his

10   index by the way and because there is no market for CDS.

11   You can't actually go to an exchange and find closing

12   prices.  We don't actually know and he doesn't actually know

13   how liquid this market is because when you look at the

14   Bloomberg page and say what is this stuff?  It's bid ask

15   prices.  It's midpoint of bid ask prices.  So it's what

16   people say they will do transactions at.  And so his premise

17   that there was high volume is something that doesn't stand

18   up very well to a test.

19              But now let's look at what he did.  And we call

20   it statistical mischief.  We used to say how to lie with

21   statistics because there's a book actually by that title.

22   The chart underneath which we'll show you the full page in a

23   second and if your -- if you have the hard copy, it's on the

24   next page -- is the chart from the Bloomberg, the entire

25   relevant Tribune history covering the step one and step two

1    transactions all the way to the bankruptcy filing.

2          And remember the assertion was that with the

3    Tuliano figure 41 was that there was something about step

4    one that caused the market to go haywire and to all of a

5    sudden reflect that there was insolvency on the horizon.

6    Well, we don't have to guess what a CDS market looks like

7    when an insolvency proceeding is on the horizon because we

8    got it on the next page.  We have it at the time of the

9    filing.  We have it a month before the filing.  We have it

10   two months before the filing.  And we see what it looks like

11   when an insolvency case is becoming a foregone conclusion.

12         And when we look at Mr. Tuliano's chart, we see

13   that he tried to make it look like something and now we

14   decide well how did he do it?  And this is something that I

15   try to focus everyone in my department on.  Whenever you're

16   given a chart, the first thing you do is look at the scale.

17   And you particularly do it by the way, not applicable here,

18   is when the scale is on both sides, that's when the mischief

19   gets really bad is when there's two different scales on both

20   sides of the chart.  And we see he wanted to make the

21   movement that is indecipherable when put in context with the

22   entire relevant range of price movements during the history

23   of the Tribune CDS and he shakes it up by blowing it up and

24   cutting it off prematurely.

25         Okay.  What does the chart really show?  The

1    chart really shows that the movement with respect to step

2    one if one can find any and give any meaning to it, most

3    certainly is not comparable at all to the kind of shake up

4    caused by lots of other events that we could locate on the

5    chart.  And most importantly, it is not a reflection of a

6    looming bankruptcy case.  We know what a looming bankruptcy

7    case looks like and it's all the way to the right.

8            So he has to search for market evidence.  He

9    knows it.  He knows the *Vlasic Pickle* case is out there.  He

10   knows the *Iridium* case is out there and this is the best he

11   can come up with?  I think there's a real problem.  There's

12   actually a deeper punch line.

13           The next chart is Mr. Tuliano's value against

14   everybody else's contemporaneous investment banking work

15   which is just more to the point that he's out of line with

16   what everybody was doing back then without their iPhones and

17   without their iPods.  But here's the most curious thing

18   about Mr. Tuliano.  Mr. Tuliano in his conventional

19   evaluation analysis loves market data because he needs to

20   find comparable companies and he needs to find rates in the

21   marketplace.  So he goes out there into the market and

22   embraces market data about companies other than Tribune from

23   exactly the same time period, but rejects all of the market

24   evidence and there is a lot of it about Tribune.

25           In our briefs, we talk about the existence of all

1   kinds of other market evidence like there was an auction,

2   there was the results of an auction.  It wasn't a one person

3   deal.  I don't even have to go to that point.  I'm just

4   looking at the market data collected at about the time, what

5   it was doing then.  And again, what's decisive to me is that

6   Mr. Tuliano somehow values market evidence when it's about

7   other companies, but doesn't when it's about Tribune itself.

8            I really don't have much to add in terms of

9   context to Mr. Sottile's discussion about the guaranteed

10  claims.  About the fact that more than 90 percent of the

11  action in this case is about whether the subsidiaries were

12  insolvent, rather than whether the parent was insolvent at

13  any given point in time.  And as Your Honor knows, 90

14  percent of the assets are at the subsidiary level and they

15  have a little more than $2 billion less in debt.  This has

16  powerful consequences running through everything.  The only

17  point I would make is that one of the errors that everyone

18  agrees the examiner made, and in 2,000 pages there are going

19  to be some, is that he put the Cubs in the wrong place and

20  he put Classified Ventures, half of it in the wrong place.

21           And that using the values that were on the Cubs

22  back then as Your Honor may remember, the numbers came out

23  higher in the end, would take $600 million from the parent,

24  put it at the subsidiary level and it doesn't reduce the

25  parent because the subsidiaries are solvent, the 600 still

1  flows up, but the subsidiaries gain an added cushion.    So

2  when we talk about the examiner's conclusion with the

3  subsidiaries, whatever his notch was he must have much more

4  confidence in his conclusion when the Cubs and Classified

5  Ventures are put in the right place.

6          The next point that Mr. Sottile and I will be

7  condemned to disagree about and the examiner came out his

8  way is the significance of the solvency opinion contingency

9  between step one and step two.  And in this instance, I'm

10  talking about the significance of the fact that an

11  independent solvency opinion was required before step two

12  can close.

13          To me, that requirement means that it can't be

14  foreseeable at step one that Tribune would incur debt at

15  step two if doing so would render it insolvent or

16  undercapitalized.  What was the test for?  And why is it

17  that any lender should be expected to foresee that the test

18  would fail particularly if the reason it failed is the

19  noteholder allegation that there was manipulation of

20  projections and inappropriate reporting concerning

21  investment banker advice rendered to the company?  How could

22  that be?

23          So again, we stand at step one and say if a

24  banker or an independent person back then reads the

25  documents and says how much debt is going to be incurred at

1  step two if in step two there's bad news and the company has

2  become insolvent?  The answer is zero.  Step two is not

3  going to happen if there's a solvency problem.  It's not

4  foreseeable that that's going to be loaded onto it.  And

5  it's certainly not foreseeable with the level of certainty

6  of 100 percent.

7          So I think logically when the trier of fact has

8  to confront this, and again, you'll have to move yourself

9  back to '07 and think really hard about what is that person

10  looking at the beginning of '07 when analyzing step two.

11  And you're going to say okay, the documents say it's not

12  supposed to happen.  Why should he foresee it?  I find that

13  very logically compelling.  I think most triers of fact

14  would find that logically compelling.  I don't really have

15  an explanation for why the examiner did it, but he did it.

16  So we will certainly be asserting that point in litigation.

17          There's another point that Mr. Sottile disagrees

18  with me on and I reduced this one to a sentence and we have

19  it on a chart here which I don't think it reduces it quite

20  this way which is while the federal rules say it's perfectly

21  okay to allege facts in the alternative, it not really a

22  good idea in front of a trier of fact to try to prove facts

23  in the alternative.  And what I'm thinking about here is how

24  it is that these noteholders can and Mr. Beron's report

25  certainly does assert that we are going to come to Court and

1   say that step one and step two should be integrated for

2   purposes of evaluating it at step one.  And they say they're

3   going to win that one, but the examiner says they're going

4   to lose that one.  That even after it's -- even if they are

5   integrated, the examiner says the transaction was not a

6   fraudulent transfer.  Noteholders say they're going to win

7   that one, examiner says they're going to lose that one.

8          Well if integrated and if as the examiner finds

9   there's still not a fraudulent transfer at step one is there

10  really a step two challenge left or have they walked away

11  from that?  How do you prove to a court that they're really

12  integrated in which event they're evaluated at one time, but

13  we were just kidding if we lose integration and there's a

14  separate evaluation at step two.  I think it works as a

15  matter of pleading.  I just don't think it works as a matter

16  of proof.  And this is just -- it's still another Beron

17  criticism is that he thinks these are two separate,

18  completely separate and independent enterprises and you get

19  to go through step one, find out your answer, and then go

20  through step two unencumbered by the answer with respect to

21  step one.  Logically, I don't think that's possible.

22         Another point that we disagree with in the

23  examiner's report which is on a chart, but I'm going to

24  through this very briefly because I need to save some time

25  for WEAR.  And that's whether creditors, excuse me, whether

1 Tribune creditors, parent creditors, creditors of a

2 shareholder can ever benefit from an avoidance case at the

3 subsidiaries.  Now remember, avoidance case at the

4 subsidiaries is far more difficult than the avoidance case

5 at the parent.

6           But what if notwithstanding that a Court says

7 well there's a problem at the subsidiary level.  What's

8 really the relief you get at the subsidiary level?  And it's

9 worth pointing out that I'm not really talking about

10 standing here.  I'm not talking about standing at all

11 because in this case there's probably standing because there

12 was one committee appointed for everybody.  Probably not the

13 best idea in a case like this, but the committee has

14 standing for subsidiaries, for parents, for everybody.  If

15 there were two separate committees, I think we'd have a real

16 issue as to whether creditors of the parent would ever have

17 standing to complain about a fraudulent transfer at the

18 subsidiary level.

19           So let's not talk about it as a matter of

20 standing, let's talk about it as a matter of recovery.

21 You'll note in the opening briefs, the noteholders spent

22 lots of time on this because they had lots of cases to

23 distinguish.  There's case after case after case that says

24 that the purpose of fraudulent transfer cases to begin with

25 are to benefit creditors, not shareholders.  They come about

1    it in many different ways, they express the conclusion in

2    many different ways.

3            We should note that the bankruptcy code that we

4    work with is an entity by entity device.  That the

5    fraudulent transfer laws are an entity by entity device.

6    There's never been any such thing as a recovery for the

7    benefit of shareholders on the books, not in any reported

8    opinions with one and only one exception that is never going

9    to be applicable here, and that is where there has been a

10   reorganization case some debt has been converted to equity.

11   Equity stayed in the money and had some of the equity at the

12   end of the case and the fraudulent transfer cases stayed in

13   the reorganized company.

14           And then the cases say well if that happened as a

15   result of the reorganization, the creditors are really still

16   benefitting because they've converted their claims to

17   equity.  And yeah, incidentally, shareholders are

18   benefitting and we're going to let that happen.

19           Your Honor, if you send your clerks to research

20   this issue, they're going to come back with the biggest

21   binder full of cases on any topic in this case.  They all

22   point in the same direction.  The examiner said well he

23   thinks it would come up differently but he didn't confront

24   the law.  He didn't talk about the cases and we think the

25   trier of fact and the decider of law in this case will have

1  to.

2           Okay, WEAR.  As Mr. Sottile explained, what WEAR

3  is all about is an effort to evade the fundamental reality

4  that step two avoidance isn't worth a lot.  Step two

5  avoidance isn't worth a lot because value is declined.

6  That's life.  Lots of people have to confront that now.  But

7  the WEAR idea which really at its essence talks about trying

8  to get money past valid claims at the subsidiary level and

9  up to the parent and really about taking claims that when

10 you get to WEAR have been found to be valid.  All step one

11 has been found to be valid, otherwise, you're not talking

12 about WEAR.  But you're not going to treat it as valid

13 because you're going to say well, it's a valid and allowable

14 claim, but I'm going to nick it's rights in one way or

15 another.  To me, that's -- when you start to say that,

16 you're really claiming that it should be equitably

17 disallowed to an extent.

18           And we, of course, know what the examiner thought

19 about equitable disallowance.  He said that's not something

20 that's going to happen here.  Maybe you can talk about it as

21 equitable subordination, but it's worse than equitable

22 subordination of course because you're never, ever going to

23 get the benefit of some assets of the estate, we're just

24 going to take them away from you.  Of course, we would only

25 reject this idea out of hand if it was called that.  And so

1   they had to come up with a catchy name and that's WEAR.

2            Now another problem with the catchy name is that

3   people have a tendency not to go past it and break down the

4   elements and that's what they want.  So let's not do it that

5   way.  Let's break them down.  The first one is waiver.  Well

6   the most important thing to remember about waiver is that

7   the first sentence of every case that talks about waiver is

8   it's a voluntary and knowing waiver of a right.  It's not

9   something that can happen by accident.  So I asked the

10  question when I read their papers, who did that?  When did

11  it happen?  What's the manifestation of it?  And, of course,

12  we don't get told that, it's WEAR.

13           Estoppel, in a sentence, precludes a person from

14  taking a position inconsistent with something previously

15  said.  Not super precise, but that's what the whole idea of

16  the doctrine is.  What exactly is the statement and who made

17  it that said something about step one creditors didn't

18  really mean it that they were going to enforce their claims

19  and expect to get every penny that they were entitled to as

20  a matter of the law as it's normally applied?

21           Assumption of the risk.  I don't know if you have

22  children, but this is the time of year when mine go to camp.

23  They want me to assume --

24           THE COURT:  Thank goodness.

25  (Laughter)

1          MR. BENNETT:  Yes, six weeks no kids.  They send

2     you a form.  I went to camp, too, I don't remember this

3     form.  Maybe my parents didn't show it to me, but I'll bet

4     it was shorter.  They want me to assume the risk.  They know

5     that if they ever want me -- want that to stick, they've got

6     to have -- explain to me what risks I'm assuming and that I

7     acknowledge exactly what risks I'm assuming.  It's got to be

8     knowing and voluntary just like a waiver because it is a

9     waiver.  It's not really something very different, just kind

10    of a subset.

11          So the question we have to ask ourselves, what

12    risk are they talking about that was knowingly and

13    voluntarily assumed?  Now I think every creditor knowingly

14    and voluntarily assumes that there will be -- there's the

15    potential for non-payment on valid claims if things don't

16    turn out well and values are declining and the company loses

17    money.  I get that part.  But can anyone point to an

18    assumption of risk that -- where the step one creditor said

19    well if our claim is partially allowed, we didn't really

20    mean it, and we assumed a different risk that that claim is

21    going to not share in the distribution to which it's

22    otherwise entitled as a matter of law?  That's what the

23    argument has to be if it's assumption of risk, assumption of

24    this risk, the risk they want us to have assumed.  Do they

25    mean that we assumed the risk?  That the lenders assumed the

1    risk?  That a false solvency certificate might be issued?

2    Is that what they're talking about?  I can't find that

3    anywhere either, they don't talk about it.

4         The two cases that they've cited for the first

5    time in their reply *Lebelon* and *Huff* don't help them on

6    these issues because in that case there was actually an

7    agreement not to pursue a particular recovery and an

8    agreement not to take from it.  It doesn't -- those --

9    citing those cases is not a substitute for explaining where

10   are the elements of each of these doctrines?  And if they

11   are really asserting that lumping them together into a word

12   makes them different, why is that?  And why is it that

13   lumping them together in a word, dispenses with the

14   individual requirements?  I don't think so.  They'd like us

15   to think so.

16        I'm running out of time.  And so I want to kind

17   of finish up with one little small thing or two little small

18   things which again, I think kind of are a little bit of a

19   window in what's been happening here.  I want the Court to

20   remember that the noteholders' plan includes an option which

21   wasn't accepted where Aurelius offered 15 cents to Tribune

22   creditors and 25 cents to subsidiary creditors to buy their

23   claims.  Mr. Gropper's testimony, I'm sorry, Mr. Gropper's

24   testimony, I confused him with the Judge, was that that

25   offer was fair to Aurelius and fair to the people they made

1   it to.  And we also heard loud and clear that Aurelius would

2   never accept the 15 cent offer in a plan or otherwise.  I've

3   always had problems reconciling those two points.  And both

4   came from the mouth of the same witness.

5          And I think there is only one way to put those

6   two points together really and take Mr. Gropper's testimony

7   what he did, as well as, what he said seriously.  And that

8   is that there is a range of reasonableness for Aurelius and

9   it's somewhere between, 15 on the low side and PAR on the

10  high side, otherwise he was playing games and his plan

11  wasn't filed in good faith and he said that's not what he

12  was doing.

13         Second, there was a moment in this case and Your

14  Honor commented on it which is one of the reasons I'm

15  commenting on it, where there was a -- where the noteholders

16  focused on the difference in the litigation trust between a

17  $20 million loan DCL plan and a $40 million grant, their

18  plan.  And I was wondering that if we take the noteholders

19  at their word that this really is an intentional fraudulent

20  transfer case, that they're really going to win it.  That

21  they'll get post petition interest, too.

22         By the way, Mr. Gropper during his testimony must

23  have described his claim as including post petition interest

24  a dozen times, but when it comes to talking about the

25  lender's claims, he kind of would rather forget that.  But

1    if he really believes that, we have an intentional

2    fraudulent transfer case, it's a slam dunk, everybody was

3    terribly dirty, then his claims against the shareholders are

4    even better than the claims against the banks because the

5    banks gave value all over the place, we think even more than

6    the committee gives us credit for.

7            And so I'm trying to scratch my head and say this

8    case is really about the difference between a $20 million

9    grant and a $40 million loan?  That's rounding error.  If

10   the noteholders really believe it, what are they talking

11   about?  Why are they picking on that issue?  And I come back

12   to the point that they don't really believe it.  This

13   probably is to them about the difference between the 20 and

14   40.  They're just trying to get somehow into a position

15   where they get control, they get to hold people up and drag

16   along a lot of people who want a better settlement than they

17   were willing to offer to do it their way.

18           I'd be happy to answer any questions, Your Honor

19   might have.

20           THE COURT:  I don't.  Thank you, Mr. Bennett.

21   We're going to take, Mr. Bendernagel, just a five minute

22   break here and I'll keep careful track of the time.

23           MR. BENDERNAGEL:  How much time do we have, Your

24   Honor?

25           THE COURT:  Well let's see.  We started at --

1  well let's use -- about 11:15 and once we got started and

2  it's now 11:28.  So --

3           MR. BENDERNAGEL:  No, we started at 10:15.

4           THE COURT:  10:15.

5           MR. BENDERNAGEL:  I'd love it if it was 11:15,

6  we'd have a lot more time, but --

7  (Laughter)

8           THE COURT:  So, you know, you've had an hour and

9  a quarter --

10          MR. BENDERNAGEL:  Thank you.

11          THE COURT:  -- so far.  All right.  We'll take a

12  five minute break.

13 (Recess from 11:29 a.m. to 11:39 a.m.)

14          THE CLERK:  All rise.  Be seated, please.

15          MR. BENDERNAGEL:  Thank you, Your Honor.  Jim

16 Bendernagel for the debtors.

17          Your Honor, just so that you know what the

18 remaining lineup is, I'm going to take a few moments to talk

19 about why the debtors perceived the DCL settlement to be

20 reasonable and talk a little about the DEV issues and then

21 Mr. Conlan is going to provide a broader perspective as to

22 why the company needs to get out of bankruptcy and at this

23 juncture in time.

24          With respect to the question you asked, it's my

25 understanding that people are still working on the answers

1  to your questions so if we were on the Johnny Carson show,

2  you would have stumped the band.

3  (Laughter)

4          MR. BENDERNAGEL:  But the -- moving to my two

5  points, Mr. Sottile indicated that --

6          THE COURT:  I preferred the Carnac routine.

7  (Laughter)

8          MR. BENDERNAGEL:  Well I'm quite sure that will

9  come later in the day.

10  (Laughter)

11          MR. BENDERNAGEL:  The -- Mr. Sottile correctly

12  indicated that the debtors support the DCL plan and they do

13  so for a number of reasons.  The first is the DCL settlement

14  is the result of a long and arduous process where everybody

15  has gotten to say everything about these claims.  You've

16  observed in the past that there's nothing new here and

17  you're right.  There have been criticisms of the process,

18  but one criticism that can't really be made is that the

19  parties entered into the settlement without knowing what the

20  issues were and the parties arguments.  You heard Mr.

21  Bennett today.  It's not the first time we've heard from Mr.

22  Bennett and it's not the first time we've heard the

23  noteholders' views on these subject matters.  As a

24  consequence, the issues were known.

25          Secondly, the debtors believe that the examiner's

1  report supports the settlement.  Mr. Sottile in much longer

2  verse suggested that what the examiner found was that with

3  respect to step two, the claims were stronger than step one,

4  but it doesn't drive a lot of dollars.  Step one drives a

5  lot of dollars, but there are substantial hurdles and there

6  are.  The biggest hurdle is if the step two debt isn't taken

7  into account there's no insolvency, end of game on the step

8  one issue.

9          And further, the examiner found that in balance

10 sheet context, there's less than a 50 percent chance that

11 you will take step one debt into account.  And even if you

12 do, it's less than a 50 cent chance still that you'd find

13 insolvency.  And that's without providing any value to the

14 tax savings, that's before you get to guarantor solvency,

15 and it's before you get to the statutory defenses.  I'd

16 submit those are pretty long odds.

17         And they don't get better on the capital adequacy

18 side.  It is true that he found a much higher probability

19 that the step two debt would come in, but he still found

20 that the likelihood of demonstrating insolvency on that

21 basis or demonstrating a problem was remote or not remote,

22 but was low.  And I think he used the term reasonably

23 unlikely.  And again, that's before he assesses the

24 guarantor situation, it's before he assesses the statutory

25 defenses.  In a word, the DCL settlement provides a

1    reasonable settlement in light of those findings.

2         The third factor that the debtors rely on is the

3    Black analysis, particularly his analysis of the range of

4    potential responses which has seemingly been overlooked by

5    the noteholders in their critique of Mr. Black.  Mr. Black

6    started his analysis much as the examiner did by looking at

7    potential recoveries in the key litigation scenarios.  If we

8    can see the first slide, this slide looks a lot like the

9    slide that Mr. Sottile put up, but it adds a column showing

10   what Mr. Black concluded.  And Mr. Black did his own

11   analysis in coming up with these numbers and they're very

12   similar which is not all that surprising.

13        They also show as Mr. Sottile pointed out, that

14   the only one of the scenarios studied that produces a result

15   that exceeds the DCL settlement before litigation trust

16   recoveries is the full avoidance scenario.  And as Mr.

17   Sottile suggested, this is powerful evidence that, in fact,

18   the DCL settlement is a reasonable resolution.  But Mr.

19   Black didn't stop here.  He continued on.  And what he

20   wanted to determine was whether the probabilities, the

21   likelihoods of each of these litigation scenarios occurring.

22   And to do that, what he had to do was come up with

23   probabilities for each of these various scenarios.

24        And instead of just looking at one case, a Black

25   case, or an examiner case, he looked at six potential cases,

1   two favorable to the banks and two favorable to the

2   noteholders.  He also looked at a case where he tried to

3   replicate the examiner's findings and he put his own views

4   in in that regard.  He's got six settlement cases that he's

5   looking at in terms of trying to come up with a range of

6   reasonable results.

7            If we can go to the next chart, the next chart

8   shows that without taking the litigation trust recoveries

9   into account, what he concluded.  And he concluded that the

10  range went from a low of $173 million to a high of $564

11  million and that the DCL plan was well within that range

12  towards the top of that range.

13           Now the next chart shows what happens when you

14  add the litigation trust recoveries.  And in this example,

15  Mr. Black utilized $300 million.  And he explained at the

16  trial how he got that number.  He assumed that about $200

17  million had come from the officers and directors either in

18  the form of insurance proceeds or recoveries from insiders

19  and that another $100 million would come from the advisors

20  or their insurers.  He did not interestingly enough, take

21  into account any recoveries from the shareholders.  So

22  that's what the $300 million does.  And you see when you

23  take the $300 million into account and you utilize the

24  method in the plan by which litigation recoveries are

25  distributed in any disproportionate manner to the senior

1  noteholders, it drives the DCL plan above the range of

2  reasonable results.

3          Again, Mr. Black did not stop his analysis at

4  this point.  He ran a number of sensitivity tests all of

5  which are identified on the next slide.  And he did this to

6  test the robustness of his analysis.  And what he concluded

7  was that when you ran all these plans, the DCL settlement

8  still stayed at the top or above the range of results when

9  you include it in the $300 million -- when you include it in

10 the litigation recoveries.  In no instance, did he find a

11 scenario where the DCL plan dropped down into the lower end

12 of the range of potential recoveries.

13         Now the noteholders never talk about this range.

14 Instead, they raise a lot of criticisms of Mr. Black which

15 in my view are somewhat periphery.  They do as they do with

16 a lot of people, accuse him of bias and they point to the

17 fact that he consulted with Mr. Zell's tax guys to determine

18 how the tax savings work.  There's nothing wrong with that.

19 They're the ones that created the tax savings.  That's

20 something you'd logically want to know.  More significantly,

21 however, they don't say that the Zell guys told them

22 anything that was wrong.  Nor did they deny that there's

23 real value there.  We simply point out he talked to Mr.

24 Zell's folks.

25         And similarly, they argue that he was unfamiliar

1  with the claims having only spent 700 hours on this

2  analysis.  700 hours is a lot of time for one person.  But

3  more significantly, I think it's hard to read his reports

4  and listen to him on the stand and say he wasn't familiar

5  with the claims.  You may disagree with what he -- his

6  conclusions were, but he seemed like he was familiar with

7  the claims.  He read the whole report, not simply the Cliffs

8  Notes version that seems to be preferred by some.  He looked

9  at the briefs that were submitted by the parties and that's

10  really important here.  It makes it sound like that the

11  examiner's report sprung from the earth.

12           The fact of the matter is there was extensive

13  briefing and most of the points addressed in the examiner's

14  report is the result of the fact that there were a wide

15  group of people including the debtor that put in extensive

16  briefs on these issues.  Again, there's nothing new here.

17  And, you know, as a consequence, we believe he did a pretty

18  thorough job.

19           They also question -- they assert -- well his

20  analysis is wholly subjective and it doesn't have any rigor

21  to it.  That's not true.  There's a lot of intellectual

22  rigor in what he did.  In developing his probabilities, what

23  he did was he started with the key question in this case

24  that Mr. Bennett talked about, collapse.  And for each of

25  the six cases, he asked what would be the probability or

1   what would be the likelihood with respect to the collapse

2   issue.  And he looked at formal integration, informal

3   integration, and no integration and created a sub case for

4   each case, three sub cases reflecting those facts.

5          He then took those three sub cases and with

6   respect to each scenario in each case, he made an evaluation

7   of assuming that there is this probability of formal

8   integration, what's the likelihood of balance sheet

9   solvency?  What's the likelihood of case inadequacy?  And

10  what's the impact of the guarantor -- the statutory

11  defenses?  And based on that analysis, he came up with a

12  probability and that's how he built his probability chart.

13         Now you can argue with where he came out on any

14  particular thing.  And you saw that Mr. Zensky and Mr. Black

15  did argue about that fact, but the argument they had in the

16  end only moved the meter by $10 million.  They never

17  demonstrated that these problems that they alleged were

18  really driving the thing.

19         And there's a good reason for that.  The reason

20  is is the key case is not the Black case.  The key case is

21  not the examiner case.  The key case is the case that

22  defines the high end of the range on this chart.  And they

23  don't talk about that high end of the range.  But in the

24  full -- if you look at the high settlement case in Black, he

25  attributes a 48 percent probability to some finding of

1  problem in step one and 27 percent to the full avoidance

2  scenario.

3         Think of all the obstacles we've talked about

4  with respect to that full avoidance scenario.  And the 27

5  percent is a pretty high probability for that.  And it

6  defines properly the top of this range.  They never

7  challenged that.  Instead, they want to talk about the fact

8  that he disagrees with the examiner or he disagrees, you

9  know, or he uses tax savings and the like.  It's irrelevant.

10  The tax savings aren't in the top end of this range, they're

11  not in the examiner number.  The key question here is is

12  that the top of this range and how does the DCL settlement

13  relate to that top of the range.  And it's our submission

14  that it is a valid number for the top of that range and if

15  it is, the settlement is reasonable.

16         There's one further fact that I'd ask you to

17  consider in connection with your reasonableness assessment.

18  That has to do with the senior noteholder vote.  Mr. Sottile

19  referred to the fact that 70 percent by number of the senior

20  noteholders voted in favor of the plan and 30 or so percent

21  of the people that expressed a preference among that group

22  said that they'd prefer the DCL plan.  What does that tell

23  you?  It certainly doesn't say the plan's unreasonable.  If

24  the plan was unreasonable, you would expect what the answer

25  would be is no way.  What it tells you is what the evidence

1    tells you and that that is a reasonable plan.  Of course the

2    noteholders would like more money.  And they probably voted

3    in favor of it to provide Aurelius with some leverage in

4    trying to extract those dollars and they've been successful,

5    in a sense, there had been modifications to the plan that

6    increased value.  What it doesn't tell you is that the

7    settlement is unreasonable.

8          Let me address the second point that I wanted to

9    address here and that's DEV.  There has been criticism of

10   Lazard Valuation.  The noteholders assert that the valuation

11   is essentially too low, that it should be significantly

12   higher and they presented the testimony of Mr. Singh, of

13   Raymond James in support of that position.  Now as an

14   initial matter, the reality is the DEV issue doesn't matter

15   very much, if, in fact, post petition interest is counted.

16   And as you'll see in our briefs and the like, there's a

17   strong argument that the senior lenders are entitled to post

18   petition interest.  And there hasn't been an effective

19   response to that question to date from the noteholders.

20          If, in fact, the senior lenders are entitled to

21   post petition interest, DEV could be as high as they contend

22   it is and it wouldn't make much difference.  But the fact of

23   the matter is the record doesn't support that high a DEV.

24   It supports the DEV that was presented by Lazard.

25          And Mr. Singh, at the hearing, testified he had

1   never been qualified as an expert before.  That he had never

2   sponsored a valuation study on his own before.  That he was

3   not an expert in either the publishing business or the

4   broadcast business, that he hadn't consulted with anybody in

5   the publishing business or the broadcast business.  And he

6   had only spent a couple of weeks in putting together his

7   analysis.  More significantly, beyond his qualifications,

8   his analysis is riddled with errors.  He didn't do a

9   valuation study.  He did a critique and the basis of the

10  critique was he guessed what Lazard did and then indexed

11  that based on market -- changes in the marketplace.

12            And the reality is he guessed wrong.  He assumed

13  that Lazard's comparable -- his multiple is based on

14  comparable companies who are based on pure play companies as

15  opposed to diversified companies.  Well let me correct that.

16  He assumed that it was based on a combination of both.  The

17  reality is that it was based on pure play companies as it

18  properly should because it was a sum of the parts analysis.

19            And we pointed out at the hearing that there are

20  numerous other errors in Mr. Singh's analysis.  The next

21  couple of charts that we presented to you layout what those

22  problems are.  There's problems both in the way he did the

23  core business analysis in terms of his selection of

24  multiplies, in terms of his use of weighting, in terms of

25  his use of past performance instead of future performance

1   and the like.  Similar problems exist which you'll see on

2   the next chart with respect to his analysis of the equity

3   holdings.  Again, he selects without any experience in the

4   area comparable companies that aren't comparable.  He picks

5   the weather channel.  The weather channel has a website.

6   That's not true at TV Food.

7          And there are other deficiencies in his analysis

8   including the fact that he double counts cash in a large

9   way.  As a consequence, it's our view that the Lazard

10  analysis is correct.  Now we presented two witnesses in

11  support of that, Mr. Chachas and Mr. Mandava.  It was really

12  clear they had spent a long time developing their analysis.

13  They had gone through a couple of different versions.  And

14  they selected the various comparable companies based on pure

15  play and they explained why.  It also explained the

16  weightings which reflected market reality.

17          Mr. Mandava testified that he picked 30 percent

18  from the DCF on the publishing side because the company's

19  forecast while low reflects a reality in the publishing

20  industry and that's that they may not find fixes to these

21  problems.  And it is a consequence there ought to be given

22  significant weight not predominant weight to that point of

23  view.  Mr. Singh just ignored it.

24          Similarly, on the broadcast side, he basically

25  only gave 40 percent weight to the comparable companies in

1    recognition of the fact that the comparable companies, TV

2    properties were more attractive than the Tribune TV

3    properties because they generally were affiliated with the

4    bigger networks rather than the CW Network and the like.

5            Similarly, on the equity properties, the analysis

6    is based on Mr. Chachas and Mr. Mandava's experience in

7    looking at each of these companies and talking to management

8    and coming up with the appropriate comparable companies and

9    comparable transactions.  And significantly, they did not

10   include a minority discount even though these are control

11   positions and the company does not have any control over the

12   cash flow.  If TV Food decided the next day, if Scripps

13   decided the next day it didn't want to send any more money

14   out in the way of dividends, there's nothing that Tribune

15   could do about that.  And that lessens the value of those

16   assets.  There's no explicit recognition of that though in

17   this analysis which makes the analysis more -- results in a

18   higher value than we might otherwise do.

19           And it explains to some degree why when the

20   company took a look in January as to whether they needed to

21   refresh the October valuation that was in the disclosure

22   statement, the Lazard folks came to the conclusion that

23   wasn't necessary.  The core business actually had gone down.

24   The only thing that had gone up was the equity properties in

25   which they have a minority interest and which were already

1    fully valued.  And Lazard based on that did not believe that

2    it was appropriate to make that valuation.  They also looked

3    at the fact of what was driving the valuation change.  There

4    was changes in the stock market which is highly volatile.

5    And the reality is if you look at what's happening in the

6    stock market recently, their decision not to make that

7    adjustment has been vindicated.  The fact of the matter is

8    the stock market has gone in the opposite direction to where

9    it was going in the January/February timeframe.

10            And sure, we think the DEV analysis that Lazard

11    put forward is a reasonable estimate of what the value of

12    this company would be at the effective date which was

13    projected to be June 30 which is a couple of weeks from now

14    or less than a couple of weeks from now.

15            Your Honor, at this juncture, let me ask Mr.

16    Conlan to address the last question unless you have

17    questions for me.

18            THE COURT:  I do not, thank you.

19            MR. CONLAN:  Well we're right between morning and

20    afternoon, so happy noon, Your Honor.  Jim Conlan on behalf

21    of the debtor.

22            And I'll be slightly more broad and yet brief and

23    very direct.  The company wants -- the company has always

24    wanted an appropriate value allocation or process for value

25    allocation in these cases.  But admittedly, we have wanted

1  it in a way that resulted in an exit from bankruptcy,

2  quickly if possible.  We're now several years into this.

3  Why do we want to exit bankruptcy?  I don't need to go on

4  and on about this.  Your Honor knows it quite well.  It's

5  expensive, it's distracting, it's confusing to our

6  customers, our vendors, and our employees and that destroys

7  value and that hurts everybody.

8            There are three what I would describe as meta-

9  themes that run through our papers and, frankly, I think

10  through the papers of Aurelius as well and Wilmington and

11  that is this.  Without litigating some or all of the LBO

12  issues, the company simply cannot confirm a plan without

13  acceptance by the senior lender class, i.e., the company

14  cannot cram down a plan on the senior lender class.

15            Second point, the company believes the DCL plan

16  can be crammed down on the notes and the PHONES.  They are

17  the recipients of a settlement, not the payers of a

18  settlement, the recipients and that is a key distinction and

19  we think it's a favorable settlement.

20            Third and this is the biggest theme of all, while

21  global, symmetrical, perhaps even consensual resolution

22  would certainly be optimal, even elegant, all approval or

23  cram down of the limited settlement in the DCL plan works,

24  it works and it is the next best choice to provide a path to

25  exit and we think a fair one.  That's it, Your Honor.  We

1   will have answers to the question you asked on rebuttal of

2   the specific questions.

3                THE COURT:  All right.  So I'd say you've used

4   about 20 minutes since we came back from the break, puts you

5   at about 1:50.

6                MR. CONLAN:  Sound right?

7                THE COURT:  Sound about right?

8                MR. SOTTILE:  Your Honor, we have about an hour

9   and 40 minutes total, an hour and 15 before and then a

10  little over 20 afterwards, so I think we've used about an

11  hour and 40 minutes.

12               THE COURT:  All right, well we're close.  I do

13  have a hard stop at 5:00 today so I'd like to break for

14  lunch now and reconvene at 1:00.  Anything before we break?

15               MR. SOTTILE:  Not from the DCL side, Your Honor.

16  You've heard now our opening remarks.

17               THE COURT:  Okay.  Court will stand in recess.

18  (Recess from 12:02 p.m. to 1:01 p.m.)

19               THE CLERK:  All rise.

20               MR. ZENSKY:  Good afternoon, Your Honor.  For the

21  record, David Zensky, Akin Gump Strauss Hauer & Feld for

22  Aurelius Capital Management and the noteholder plan

23  proponents.  Your Honor, may we hand up copies of our

24  demonstrative slides for closing, please?

25               THE COURT:  You may.  Thank you.

1              MR. ZENSKY:  We've handed out copies, Your Honor.

2         Your Honor, you'll be pleased to know, we, of

3    course, accept the Court's invitation to not address all the

4    evidence in the record that supports all the noteholder view

5    of the case.  We heard you have a 5 o'clock hard-stop.  If

6    we did, I'm not sure we would've made the 11 o'clock news

7    tonight.

8         Our comments are going to focus mostly on the

9    objection to the proposed DCL plan and settlement, because

10   at this juncture, there really is no evidentiary objection

11   to the noteholder plan.  We know that our plan is fine, that

12   it's feasible and confirmable, and we know that in part

13   because the debtors envision the plan that's identical to

14   our plan, Your Honor, and they called it the pure purity

15   plan.  You may recall that.

16        So, in fact, there's so little in dispute

17   regarding our plan, we're even going to let Mr. Golden get

18   in on the fun today and address our plan.

19   (Laughter)

20             MR. ZENSKY:  So for a roadmap, I'm going to speak

21   for a few moments and then turn the podium over to Mr.

22   Qureshi.  Then, you'll hear a bit more from me.  Then, Mr.

23   Friedman will address the FCC issues very briefly, and then

24   Mr. Golden will bring up the rear.  We hope to do that in

25   about 2 hours and 15 minutes and reserve a short amount for

1  rebuttal after the debtors -- the DCL plan proponents speak

2  again.

3          Your Honor, I think the first thing I said in my

4  opening statement to this Court, back on the first day of

5  the trial was that the trial would be about a transaction

6  that never should have occurred.  And boy, do I think we've

7  proved that, Your Honor.  Everyone knew that Tribune was the

8  wrong candidate for an LBO.  It was the wrong industry, the

9  wrong company, and the wrong time.  But they did it anyway,

10 Your Honor.  I don't think there's any doubt that anyone

11 knew this was a transaction that was fraught with peril and

12 mistake from the beginning.

13         And you know, people are still talking about it,

14 Your Honor.  You may have seen this hitting the bookshelves

15 as we speak.  It's called *The Deal From Hell*, by the former

16 editor of *The LA Times*, the managing editor of *The Chicago

17 Tribune*.  I think you have to like the little devil horns on

18 the cover.  I need to dispel any notion that the noteholders

19 were responsible for the publication of the book or for the

20 timing, Your Honor.

21         THE COURT:  Well, if I read it, it won't be until

22 later.

23         MR. ZENSKY:  Yes.

24 (Laughter)

25         MR. ZENSKY:  Well, I -- we're not asking to open

1  the record to submit it, Your Honor.  And I'm hopeful that

2  in the Court's confirmation ruling, the Court exercises

3  judicial restraint and doesn't describe the trial in similar

4  colorful terms, as was chosen by this author.

5        THE COURT:  Well, if I choose to do things in the

6  opinions, I'd never get them done.

7  (Laughter)

8        THE COURT:  There's only so much to write about.

9        MR. ZENSKY:  There is, Your Honor.

10        So Mr. Qureshi's presentation is going to focus

11  on that evidence, the strength of the claims, particularly

12  at step one, the expert testimony, and the fact testimony.

13  And I must say, I'm a bit jealous of ceding that material to

14  him, because I think it's rare in a trial lawyer's lifetime

15  where you get the kind of material that was presented to

16  Your Honor in this trial, regarding the strength of the

17  claims.

18        As you listen to Mr. Qureshi and you consider the

19  evidence, I think the Court should consider the burden --

20  who has the burden on this motion, Your Honor.  As you know,

21  and there's not dispute, that the DCL plan proponents have

22  the burden to prove to you that this is a settlement that

23  should be approved.  And part of that burden is to prove to

24  you that it's a reasonable adjustment of the risks of the

25  litigation and the rewards of pursuing the litigation to its

1    fruition.

2            Now, you told us, the parties assembled in this

3    room, at the very first hearing, after the term sheet was

4    issued that grew into the DCL plan -- you told us that you

5    don't view settlements as a give-me.  Okay.  And you told us

6    that in more eloquent terms, in your opinions.  You've told

7    us that in *Exide*.  You've told us that in *Spansion*.  So it's

8    a burden that this Court takes seriously and has in many

9    decisions in the past.

10           That means that we don't have the burden to prove

11   to you, during the course of the trial and in our post-trial

12   briefing, that we would, in fact, necessarily win the

13   litigation.  I think the burden is steep on the other side,

14   for the following reasons:  Clearly, the claims that they

15   are seeking to compromise, Your Honor, are the best claims

16   the estate has.  They're the easiest to prove, the easiest

17   to collect on.  There's no procedural issues.  There's no

18   jurisdictional issues.  The parties are before the Court.

19   The claims are before the Court.  They're claims which will

20   result, if successful, in full payment to every non-LBO

21   creditor.  And even short of full avoidance, there are

22   multiple other remedies, which you heard discussed a bit

23   this morning and which I'll touch on later, that result in

24   either full payment or very substantial payment to the non-

25   LBO creditors.

1          Now, the settlement is very, very small in

2    relation to the fruits of pursuing the litigation to

3    fruition.  So given all that, we feel that the burden on the

4    debtor is a steep one, Your Honor, to prove that the claims

5    have virtually no chance of success to produce that result.

6          THE COURT:  And where would that standard be

7    embodied?

8          MR. ZENSKY:  I think that's a standard that is

9    fairly taken away from all the 9019 cases, Your Honor,

10   talking about how we measure the fruits of -- the benefits

11   of pursuing the litigation versus the concrete benefits of

12   the settlement in the present.  I think it's part and

13   parcel, at least as I read your decisions, in terms of, in

14   effect, a tie does not go to the debtors.  The debtors have

15   the burden to prove that the claims have little worth or

16   little worth relative to what they're proposing to settle

17   them for.

18          Now, if we look at the terms of the settlement,

19   Your Honor, they're not favorable.  If I could direct your

20   attention to the first slide, Your Honor, the total amount

21   proposed to be paid to the non-LBO creditors is $488

22   million.  And you can see underneath, the derivation of that

23   is 360 million to the senior notes, zero to the PHONES.  And

24   the PHONES is a word I don't think you heard mentioned this

25   morning.  I don't think it came out of Mr. Sottile's mouth.

1  I think the creditors committee may have forgotten that

2  that's one of the unsecured creditor constituencies here.

3  They, of course, get zero.  $83 million to the subsidiary,

4  general unsecureds, 35 million to the parent.

5         And in the debtors' disclosure statement, they

6  say that the range of pre-petition allowed claims to the

7  non-LBO creditors ranges from about 2.23 to 2.83 billion.

8  And the number we've referenced here includes post-petition

9  interest.  We ran it through the end of next year, Your

10 Honor, based on a conservative assessment of how long it

11 would take to try the case and leave time for a potential

12 appeal so that the range of potential recoveries, if the

13 litigation is successful, would be 2.7 to 3.3 billion, the

14 difference being, of course, the high PHONES or low PHONES.

15         So that's not a lot of money, relative to the

16 fruits that the litigation would produce, if successful,

17 with respect to step one.  The 488 million doesn't compare

18 favorably to the exposure, either.  In the next bullet, you

19 see that if we look at the claims that have been presented

20 against the debtors' estates by step one and step two

21 holders and we add in the disgorgement dollars that are at

22 risk, that's more than $10 billion combined, so that the

23 settlement is less than five percent of that number.

24         And then, of course, Your Honor, we thought it

25 was relevant to look at the fees that the arrangers, LBO

1   lenders took off the table for the great work they did in

2   putting this transaction together, and that was about $300

3   million, so that the proposed settlement here, at least to

4   the senior notes is really not that much more than the fees

5   that were received by the lenders for doing this

6   transaction.

7            Now, let me say a word about the examiner report.

8   You heard it discussed in this morning's comments.  We

9   believe the examiner report was fundamentally good for the

10  non-LBO creditors, and I believe the record supports that,

11  Your Honor.  You heard Mr. Gropper testify about Aurelius'

12  view of the examiner report, that it was a game-changer.

13  Mr. Kurtz testified that he thought that the lenders would

14  be crazy to walk away from the April plan in light of the

15  examiner report.  That may be Mr. Gropper testifying about

16  his meeting with Mr. Kurtz, but that is in the record, and

17  it's uncontradicted.  Mr. Salganik for the committee

18  testified that the examiner report was good for the

19  bondholders.  And even Oaktree, in an unguarded moment in

20  one of its e-mails we'll look at later, thought that the

21  examiner report was good for the bonds.

22           Now, we do believe, at this juncture, that we

23  have developed evidence and analyses that show that the

24  claims are even stronger than the examiner thought at step

25  one.  But that's not to say that we don't think the examiner

1    report is good for us, and we produced evidence, through Dr.

2    Beron's  report, that shows if the Court does nothing other

3    than take the examiner's conclusions, both the ones we like

4    and the ones that we don't like, and values the litigation

5    based on the examiner report alone, that the settlement is

6    still woefully inadequate.

7         But either way, Your Honor, we think there's an

8    enormous disparity engulfed between the strength of the

9    claims and the value of the litigation and the proposed

10    settlement.  We don't think the DCL plan proponents have

11    proved that the claims are so lacking in merit that they

12    should not be allowed to proceed.  We don't think they came

13    within a country mile of proving that to Your Honor.

14         Now, the last thing I want to say before Mr.

15    Qureshi takes the podium, Your Honor, relates to the

16    examiner recovery scenarios that Mr. Sottile showed you

17    early in his presentation.  Mr. Sottile essentially said

18    that the committee deserves a pat on the back; we got a

19    settlement that's better than five out of the six scenarios

20    that the examiner showed in his annex.

21         Well, we don't think that adds up, for a number

22    of reasons, Your Honor.  The first instance, the examiner

23    never said that all of the different litigation outcomes

24    were presented in his recovery scenarios.  In fact, what he

25    said, on page B1, which is the beginning of the recovery

1   section or the recovery scenarios, he says, "The recovery

2   scenarios only address the effect of fraudulent transfer

3   actions on creditor recoveries and do not consider the

4   potential effect of preferences, equitable subordination,

5   equitable disallowance, or common law claim recoveries.

6   These claims are evaluated in the report, but the recovery

7   scenarios do not take into account the potential effect on

8   recoveries resulting from these possible remedies, claims,

9   and causes of action."  So the examiner never presented this

10  as the universe of potential litigation outcomes, and we

11  know that it does not represent the universe of potential

12  litigation outcomes.

13         But equally, if not more important, the examiner,

14  in this section of his report, does not assign any

15  probability to which of his models -- which of his scenarios

16  are the most likely or least likely.  That is in other

17  places in his report.  And what matters is the probability

18  weighted average of the different scenarios, not merely

19  showing that there's only one outcome, which they have

20  called the homerun scenario, that is better than the

21  settlement.  Again, his scenarios leave out multiple

22  important scenarios, which I will address later.

23         So let me turn it over to Mr. Qureshi.  He's

24  going to present the argument on the solvency and other

25  evidence relating to step one and step two, and then I will

1  return.

2         MR. QURESHI:  Thank you, Your Honor.  Good

3  afternoon.  For the record, Abid Qureshi, Akin Gump, on

4  behalf of Aurelius and the noteholder proponents.

5         Your Honor, we handed up an awful lot of slides,

6  and we did that, Your Honor, because there is an awful lot

7  of evidence.  I'm going to spend the next approximately 50

8  minutes or so, Your Honor, focused almost entirely on step

9  one of this transaction.  And the reason, Your Honor, that

10  I'm going to focus on step one is in part because of the

11  examiner's report concerning step two, but also, Your Honor,

12  because the DCL proponents do not seriously contest the

13  question of solvency at step two.

14         Let's look first at what JPM's own solvency

15  expert, Professor Fischel, had to say with respect to step

16  two.  Your Honor, the most he could muster was to say that

17  Tribune was "borderline solvent" and that the question was

18  "a very close call".

19         Now, Your Honor, on the next slide, you will see

20  that Professor Black, the debtor's expert, went even further

21  with respect to step two, and what Professor Black concluded

22  was that it was "unlikely that the debtors were solvent at

23  step two".

24         So I'm going to focus on step one, and that

25  analysis, Your Honor, has to start with the state of the

1   industry at the time that this transaction was first

2   conceived.  When that is understood, Your Honor, that the

3   debtors put $13 billion of debt on a company at a time of

4   crisis in the industry, it becomes clear why this

5   transaction was doomed, from the very start.

6           I want to start by looking at newspaper

7   circulation figures, Your Honor.  This chart, from Mr.

8   Tuliano's report, shows that circulation began a steady and

9   uninterrupted decline years before this transaction.  On the

10  far right of the chart, what Your Honor will note is that

11  the pace of the decline starts to accelerate from '05 into

12  '06, as we move closer to step one.

13          Now, the second pillar of the publishing

14  business, Your Honor, advertising revenue, that was headed

15  in the same direction.  On this chart, what Your Honor will

16  see is that that decline also started well before step one.

17  Again, the pace of the decline in advertising revenue starts

18  to pick up quite markedly from the fourth quarter of '06

19  right up until the closing of step one in -- on June the 4th

20  of 2007.

21          Now, the long-term decline in these two pillars

22  of publishing, circulation and advertising, Your Honor, that

23  was well documented by industry analysts, and it was well

24  known to everybody that was involved in this LBO.  Even the

25  debtors' own expert, Professor Black, acknowledge that

1    publishing was known, in 2007, to be in long-term decline.

2    Let's look at a brief excerpt here, Your Honor,

3    from Professor Black's cross-examination at trial, where

4    again he clearly says the newspaper business was known, in

5    2007, to be in long-term decline.

6    Morgan Stanley, Your Honor, published a similar

7    view.  The publishing -- the research arm of Morgan Stanley,

8    and recall, Your Honor, that Morgan Stanley served as the

9    advisor to the Special Committee that approved this deal.

10   Here's what they have to say in March of 2007.  Again, Your

11   Honor, this is two months before the step one close.  And

12   this is a public research report on the industry.  They note

13   that February of 2007 will go on record as one of the worst

14   months in recent years for the newspaper business, and that

15   the new online revenue streams were simply not enough to

16   offset the pace of the decline.

17   Now, Your Honor, also in March of 2007, and again

18   shortly before the LBO was publicly announced, *The New York*

19   *Times* published a couple of articles on the industry.  In

20   the first one quoted on the left side of the page, Your

21   Honor, *The Times* quoted an industry analyst as describing,

22   in early 2007, that that was a period of "wrenching change

23   and chaos in the industry" and forecasting that the next 10

24   years were going to be bad for the newspaper business.

25   In early April, just a couple of days after this

1  transaction was publicly announced, Your Honor, *The Times*

2  described the deal as theoretically encouraging because

3  somebody was willing to do a deal in the publishing

4  industry, but nonetheless, in their words, "one of the most

5  absurd deals ever". And that's certainly what it proved to

6  be.

7         The next slide, Your Honor, again, more of the

8  same, this time from an industry newsletter, again

9  describing the industry as being in a secular shift and a

10 business environment that will have changed forever.

11        Now, Your Honor, we simply don't have time to

12 review here the numerous lender and company documents and

13 the deposition testimony that, quite candidly, acknowledge

14 what the state of the industry was at the time. It's

15 indisputable. We certainly sample that evidence in our

16 post-trial brief. To sum it up, Your Honor, there just

17 isn't any serious dispute that the lenders, that Tribune

18 management were well aware of the deteriorating state of the

19 publishing industry, far in advance of step one.

20        As best as I can tell, Your Honor, there's only

21 one person that has a different view, and that's Professor

22 Fischel, and in this view, he stands utterly alone. Again,

23 here's what Professor Fischel testified to on cross-

24 examination, Your Honor. "I don't think it could be said,

25 from what I know in May of 2007, that there was consensus

1   that the industry was in long-term decline."

2          Your Honor, in light of the evidence that I just

3   reviewed, that's just amazing testimony.  The overwhelming

4   evidence establishes the secular decline.  There's not a

5   single document in the record.  There's not a line of

6   deposition testimony, Your Honor, there's not a line of

7   trial testimony that would establish or even suggest

8   otherwise.  The fact that Fischel, who is the one who claims

9   to pay particular deference in his work to market evidence,

10  comes to this conclusion, it's outlandish.  Further, Your

11  Honor, it's just not credible.  Either Fischel didn't take

12  the time to do the analysis and to appreciate what was going

13  on in the industry at the time of the LBO, or he was so

14  results-oriented in what he did do that he disregarded it.

15         Now, either way, Your Honor, the state of the

16  industry at the time the deal is done, that's the foundation

17  for the solvency opinion.  Where Fischel comes out on the

18  state of the industry, that necessarily infects all of his

19  conclusions, and we submit, Your Honor, that it renders them

20  unreliable.

21         Now, Your Honor, I'm going to shift gears briefly

22  here to look past the industry in crisis and to see how

23  Tribune was faring in the same period.

24         First, let's look at what the makeup of Tribune's

25  business was at the time of the LBO.  And what this chart

1    shows again, from Mr. Tuliano's report, is that Tribune was

2    dominated by the publishing sector: 68 percent of its

3    operating cash-flow.  And of that 68 percent, Your Honor,

4    approximately 91 was generated by its top six newspapers.

5            Now, as dramatic as the decline was for the

6    publishing industry, Tribune fared significantly worse.  And

7    what we show on this chart, Your Honor, and the source is,

8    again, the Morgan Stanley publishing handbook.  It compares

9    March '06 to March of '07, and what Your Honor will see is

10   that the industry decline was 2.7 percent, while Tribune

11   fell by 4.1 percent.  And Your Honor, this rapid decline in

12   performance -- underperformance, relative to an industry

13   that was clearly in crisis, that's something that Tribune's

14   pre-LBO shareholders certainly took note of.

15           In the next document, Your Honor, here you have

16   Mr. Steinhart of the Chandler Trust.  He's writing to the

17   Tribune board in a public letter in June of 2006.  This is a

18   full year before the step one close, Your Honor, recognizing

19   Tribune's significant underperformance, as compared to the

20   industry.  Now, Steinhart also recognizes the lack of any

21   basis to think that Tribune could stem that decline, let

22   alone return to growth.

23           Finally, in this letter, Your Honor, we'll see at

24   the very bottom that the Chandler Trust was demanding prompt

25   action from Tribune.  They wanted something to be done and

1   to be done quickly, before the bottom completely fell out.

2   And therein, Your Honor, lie the seeds of a transaction that

3   was conceived at the worst-possible time, in an industry

4   that another one of the debtors' bankers at the time,

5   Merrill Lynch, described as being on its back.

6           Here, Your Honor, is what the former chief

7   financial officer of *The LA Times* -- this is Tribune's

8   largest newspaper -- had to say under oath, after being

9   compelled to testify about the state of Tribune prior to

10  step one.

11  (Video playback:)

12  "Q    At the beginning of 2007, was *The Los Angeles Times*

13  projecting that its revenues were going to be declining?

14  "A    Yes.

15  "Q    And how long was that decline expected to last at the

16  beginning of 2007?  Do you recall?

17  "A    Without having specific data in front of me, it's hard

18  to answer the question, but what I can say, unequivocally,

19  is traditional print newspaper advertising revenue was

20  expected to decline indefinitely."

21  (End of video playback.)

22          MR. QURESHI:  Now, Your Honor, despite those

23  views, again, that's the CFO of Tribune's largest paper,

24  talking about pre-step one.  Management at Tribune's

25  headquarters, they clearly had a different idea.  They came

1   out with a set of projections that Your Honor can see on the

2   next slide, that really are outlandish when one considers

3   what was going on at the time.  What this chart shows,

4   Tribune's actual performance is reflected in the green bar

5   on the left.  The red bar to the right, Your Honor, reflects

6   the February 2007 projections, which again were the

7   foundation of the LBO.

8          Not only was Tribune's management projecting,

9   Your Honor, that they were going to instantaneously stem the

10  secular decline that was so well published and well written

11  about at the time, but they were saying they could reverse

12  it.  If Your Honor looks at the chart, this is much worse

13  than the proverbial hockey-stick projections the courts are

14  often very skeptical of and with good reason.  It's a V,

15  Your Honor.  It shows a total reversal.

16         Now, the evidence canvassed before Your Honor, we

17  think would overwhelmingly establish, at a trial on the

18  merits, that the -- this set of projections in February of

19  '07 were unreasonable when they were made, and when one

20  looks at what actually happened after they came out, Your

21  Honor, with every passing week, these projections became

22  even more unreasonable.

23         So, let's take a look at what happened in the

24  first few months of 2007.  First of all, Tribune never hit a

25  single month of its February projections, not even February,

1    Your Honor, and not even close.  This chart, on the bottom

2    left side of the page, summarizes the magnitude of the miss

3    through May of '07.  So through the first five months of

4    2007, Tribune Publishing underperformed against 2006 by

5    about 21-and-a-half percent, and against the February

6    projections by 11-and-a-half percent.

7              Now, remember also, Your Honor, that the 2007

8    projections, and Mr. Tuliano testified about this, he called

9    it the backend, loaded nature of those projections.  They

10   were projecting somewhat modest growth in the first half of

11   2007 and then much greater growth in the second half of the

12   year.  And yet, even the more modest numbers, they were way

13   off in the beginning of the year.

14             The chart on the right, what that shows, Your

15   Honor, is the implications for the February projections of

16   Tribune's performance through the first five months.  And

17   what it shows is that Tribune's top six papers, in order to

18   meet their targets, Your Honor, for the last seven months of

19   the year, would need to increase weekly cash-flows by 44-

20   and-a-half percent.  This is not disputed testimony, Your

21   Honor -- 44-and-a-half.  Tuliano testified that that would

22   be virtually impossible.

23             Your Honor heard from Mr. Bellack from *The LA*

24   *Times* what his view was, and Your Honor, the DCL's own

25   witnesses also had a lot to say about the February

1  projections, and that cuts in only one direction, Your

2  Honor: that they were unreasonable.

3            Let's start, again, with Professor Fischel.

4  First off, he disclaims having any opinion on management's

5  projections.  Again, Your Honor, when you step back and

6  think about it, that's kind of remarkable.  This is

7  fraudulent transfer litigation.  The centrality to that

8  litigation of management's projections suggests that it's

9  kind of odd to put up an expert who says, I don't have a

10  view.  Not only do I not have a view, I don't have the

11  expertise to do the analysis.  But that's what Professor

12  Fischel said.  And that lack of expertise, again, Your

13  Honor, it has to call into question the reliability of what

14  he did.

15            Now, Professor Black, once again, went a little

16  further than Fischel.  And he acknowledged, under oath, that

17  prior to the step one close, it was unrealistic for

18  management to rely upon its February projections.  Instead,

19  what he suggested -- and again, Your Honor, this is their

20  expert.  Instead, what he suggested is that it might be more

21  reasonable to rely upon consensus analyst estimates that are

22  lower than management's February projections.  This is

23  amazing stuff.  It's their own expert, acknowledging that in

24  May, continued reliance by management on those February

25  numbers was unreasonable.  We didn't say it, Your Honor;

1  they did.

2         Now, not surprisingly, it turns out that the

3  evidence shows that the lenders were as skeptical of

4  management's projections prior to step one as Professor

5  Black was.  Let's start with Julie Persily.  She was a

6  managing director of leveraged finance at Citigroup, and

7  here, she's being questioned at her deposition about

8  management's projections prior to step one.

9  (Playback, of Julie Persily:)

10      "Q   Did you have an opinion as to whether or not the

11  company's projections at this time were still achievable,

12  given the first quarter operating results?

13      "A   I think I've said throughout this, no matter what

14  time, we didn't believe the company's projections were

15  achievable.  We created our own."

16  (End of playback.)

17         MR. QURESHI:  Your Honor, now I'm going to turn

18  to a review of the uncontroverted evidence again,

19  establishing what management knew well before step one and

20  what Black acknowledged in his trial testimony: that those

21  projections were grossly unrealistic.

22         I want to pause for a minute and just remind the

23  Court, as we move into this segment, of the Third Circuit

24  standard for a finding of intentional fraud.  In the LBO

25  context specifically, Your Honor, the Third Circuit

1  instructs that courts should look to the natural

2  consequences of the debtors' actions.  If that natural

3  consequence is that debtors will be hindered, delayed, or

4  defrauded, a court is more likely to find that an

5  intentionally fraudulent transfer has occurred.  Now, Your

6  Honor, we have a detailed discussion of the cases in our

7  post-trial briefs, and of the supporting evidence, and of

8  the badges of fraud.  What I'm about to show Your Honor is

9  just some of the evidence that goes beyond just the set of

10 outlandish projections that we talked about.

11         And I want to start here, Your Honor, with a

12 discussion of this e-mail exchange from Tim Landon.  Mr.

13 Landon was, at the time of this transaction, the head of

14 interactive at Tribune.  He's writing this e-mail in August

15 of '07, and he's talking about the projected cash that

16 Tribune anticipated generating from its minority investments

17 in CareerBuilder and Classified Ventures.  What he writes,

18 Your Honor, is that, in reference to those cash projections,

19 that Tribune had a "very unrealistic expectations".  And

20 it's important to understand, Your Honor, that what he's

21 writing about here are the projections contained in the

22 February plan.

23         And in the bottom e-mail, what Your Honor sees is

24 Landon acknowledging that it was not until sometime in

25 August that he first became aware.  This is the head of

1  interactive.  That he first became aware that they -- into

2  Tribune's projections were cash distributions that would be

3  forthcoming from these minority investments.

4         Next, Your Honor, to an e-mail exchange involving

5  Mr. Bigelow, then the treasurer of Tribune.  Here, Your

6  Honor, he's acknowledging, in March of 2007 -- so again,

7  we're way before step one here, Your Honor -- that if

8  Tribune is off plan by just two percent, there would be no

9  equity value in the ESOP in the first five years.

10         Now, again, Your Honor, let's focus on what this

11  means.  This means that you have the treasurer of Tribune

12  acknowledging in March, more than two months ahead of step

13  one, that if Tribune was off plan by two percent, it would

14  be insolvent.  It's amazing.  It's also noteworthy, Your

15  Honor, that we took the deposition of Mr. Bigelow, but we

16  took it on one condition -- a condition insisted upon by the

17  debtors as the price of admission to that deposition.  We

18  couldn't ask Mr. Bigelow a single question about what

19  happened in 2007.  We were confined in our examination to

20  what happened post filing of the bankruptcy case.

21         Now, we know, Your Honor, that the company turned

22  out to be well more than two percent off plan in advance of

23  step one.  And we know that, because we have sworn testimony

24  from Professor Black.  And it's not just sworn testimony in

25  this case; it's actually contemporaneous, Your Honor.  This

1   is in the *Garmella* case in May 2007, where Professor Black

2   is again testifying on behalf of the debtors, and here, he's

3   acknowledging that Tribune's first quarter 2007 performance

4   is, in his words, "substantially below management's February

5   projections and closest to downside B". Well, what did

6   downside B contemplate? A three-percent decline in

7   publishing. And what he's talking about, when referencing

8   that three percent, Your Honor, is just the first quarter,

9   just through the end of March. We know what happened after

10  March. In April, as Professor Black notes in this

11  declaration, the falloff was even more dramatic, and it got

12  worse still in May.

13          So what you have, Your Honor, is the treasurer of

14  the company, Mr. Bigelow, acknowledging in March that a two-

15  percent miss would render Tribune insolvent, and in May,

16  their own expert testifying that they were off three. It

17  speaks for itself, Your Honor.

18          Now, we also know from the trial record, Your

19  Honor, what the responsible thing would have been for

20  management to do in light of how they were actually

21  performing against their February projections. Tribune's

22  current CEO, Eddy Hartenstein, we have a portion of his

23  testimony up on the screen, Your Honor. And what he

24  testified to is that the responsible way to forecast is to

25  take the most recently available information into account.

1   That's what should've happened.  It's clearly not what

2   happened.  We also know, Your Honor, again from the evidence

3   that's before this Court, that at least some members of

4   Tribune's management shared Mr. Hartenstein's view about the

5   responsible way to project, but those members of management

6   were overruled.

7          Here, we have, Your Honor, in early March, Thomas

8   Whayne, a managing director at Morgan Stanley, reporting in

9   this e-mail on a conversation involving Tribune's then-CEO,

10  Mr. FitzSimons.  What you have here, Your Honor, is the

11  company's own advisors asking the question, in early March

12  -- and remember, Your Honor, this e-mail is less than a

13  month after the February projections came out; the ink was

14  barely dry -- whether management planned to give another

15  update, given the horrible performance in January and

16  February.  The answer from management was no, though

17  management conceded that it had less confidence in the plan.

18         Now, a month later, Your Honor, early April of

19  '07, here you have Mr. Amsden, who was then the vice-

20  president of finance for publishing, acknowledging in early

21  April, Your Honor, that updated projections, in fact, exist

22  but identifying potential legal concerns as the reason why

23  those projections can't be shared with EGI.

24         Now, a few weeks later, now we're up to April 30.

25  Again, we're still well before the June 4 step one close,

1  Your Honor.  Here, we have Mr. Knapp, the controller of

2  publishing at Tribune, writing again to Mr. Chandler.  Mr.

3  Knapp candidly acknowledges that if Tribune released updated

4  projections, there would be what he calls "consistency

5  issues" to their recent disclosure.  The disclosure that Mr.

6  Knapp is, of course, referring to, Your Honor, is the proxy

7  statement.  What the proxy statement had in it was the

8  February projections.

9         Now, the next line down, Mr. Amsden is insisting

10 that Tribune had to issue updated projections.  But

11 apparently, he was overruled by more senior executives on

12 the sixth floor.  Now, Mr. Knapp's closing, and obviously

13 sarcastic, remark at the bottom of this e-mail about

14 "another stellar week in April" shows what direction he

15 certainly believed that the company was headed in, Your

16 Honor.  This is an amazing piece of evidence that's before

17 this Court.  It really does speak for itself.  There's

18 nothing I can add to it, Your Honor.

19         Finally, we have here a June 8 e-mail, so this is

20 four days after the step one close.  The author of this e-

21 mail is from EGI, and the e-mail is internal to EGI.  And

22 once again, Your Honor can see that the e-mail assumes the

23 existence of a revised forecast.  And more continuing legal

24 discussion within Tribune about whether it should be

25 released.  Your Honor, there's just no way that if, four

1    days after the close of step one, a set of projections

2    existed, that it didn't exist weeks earlier.  We know from

3    the other e-mails that we just reviewed, Your Honor, that it

4    did.  But the company never stepped back to think about

5    whether VRC, in doing its solvency opinion at step one,

6    should continue to rely  upon the February projections,

7    given how unreasonable they were when made and how they were

8    never hit, not even for the first month.

9              So, the evidence on the projections, Your Honor,

10   it's entirely one-sided, and it's overwhelming.  Those

11   projections were unrealistic when they were conceived in

12   February.  Management acknowledged, the very next month,

13   that they were unrealistic.  And management apparently began

14   working on an update as early as March, but ultimately, they

15   decided not to formally revise the long-term plan until

16   October, and not to update their forecast for the remainder

17   of calendar 2007 until July.  The 2007 update, Your Honor,

18   was issued about a month after the step one close.

19             So what this evidence shows is that the company

20   knowingly relied upon fraudulently inflated projections to

21   enter into a transaction, the natural consequence of which

22   was to impair the recoveries of the pre-LBO creditors.

23             Your Honor, now I want to turn to the question of

24   constructive fraud at step one.  And again, I want to start

25   with what the Third Circuit has to say on the issue,

1  specifically on the reasonableness of projections that are,

2  of course, central to the solvency analysis.  What the Third

3  Circuit says is that projections must be tested by an

4  objective standard, anchored in actual performance.  Now,

5  Your Honor, there's lots of precedent -- we cite a couple of

6  cases here -- of courts in the LBO context in particular,

7  throwing out projections that don't meet that standard.

8         What this chart on the next page shows, Your

9  Honor, is the projections used by the experts in the step

10  one solvency analysis.  I want to get into just a couple of

11  details on what Mr. Tuliano did.  First, Mr. Tuliano

12  concludes, Your Honor, that Tribune was insolvent at step

13  one -- and again, this is with collapsing -- even if

14  management's February projections are used.  He does a

15  revised set of projections, but it does not alter the

16  outcome of his opinion.  With respect to those revised

17  projections, Your Honor, you'll see that the blue line that

18  references -- that represents Tuliano's projections tracks

19  perfectly.  It's parallel to the red line at the top of the

20  page, which is management's projections.  And the reason for

21  that, Your Honor, is Mr. Tuliano assumed that management's

22  very aggressive growth rates would get hit, that they would

23  meet those numbers.  The difference being he lowered the

24  starting point to where Tribune actually was in advance of

25  step one.

1          Fischel, his is the blue line.  Those are his

2    third-party projections, and that is an average of various

3    third parties' projections at the time, and that average, by

4    the way, includes --

5          THE COURT:  I think Fischel's the orange line.

6          MR. QURESHI:  I apologize.  Correct.  Fischel is

7    the orange line.  Tuliano is the blue line.  That -- you've

8    discovered, Your Honor, that I am, indeed, color blind.

9    (Laughter)

10          MR. QURESHI:  And Your Honor, what -- the Fischel

11   line includes projections from analysts from some of the

12   banks who were actually involved in the transaction.  So

13   looking at these lines, Your Honor, it can hardly be said

14   that Tuliano's revised projections are too conservative.

15   They're actually higher than Fischel's third-party case.

16          Now, Your Honor, I want to turn for a moment to

17   the examiner's report and specifically talk about what the

18   examiner concluded with respect to the February projections.

19   Now, Your Honor, the DCL proponents did not put on any

20   evidence to support the reasonableness of the management --

21   of management's projections.  None whatsoever.  They rely on

22   the examiner's conclusion, which is excerpted here, that it

23   is "likely that a court would conclude that it would be

24   inappropriate to revise the February projections based on

25   April and May performance".

1          Not surprisingly, Your Honor, we respectfully

2    disagree with that conclusion.  First of all, this single

3    paragraph that we've blown up on the screen, Your Honor,

4    constitutes the entirety of the examiner's analysis on that

5    issue.  The examiner does not appear to have compared the

6    February projections to 2006 actual performance or to have

7    appreciated the performance that would be necessary in the

8    last seven months of 2007 to meet the projections.  Nor,

9    Your Honor, does the examiner analyze here the question of

10   the February projections being backend-loaded, as Mr.

11   Tuliano described, such that a miss in the first half of the

12   year was even more significant, given the greater growth

13   projections in the second half.  Your Honor, we submit that

14   had those aspects of the February projections been

15   appreciated by the examiner, had that comparison to the

16   actual performance and the -- to the historical performance

17   actually been done, the examiner would not have concluded

18   that the February projections were reasonable.  So we think

19   that a court that is presented with all of that evidence,

20   Your Honor, and after applying the Third Circuit standard of

21   testing reasonable of projections by an objective standard,

22   anchored in actual performance, would come out where we do,

23   Your Honor: that those projections are simply unreasonable

24   and can't be relied upon.

25          Now, Your Honor, I want to turn to collapsing.

1   As has already been stated, Your Honor, for Mr. Tuliano's

2   balance-sheet test, he does, indeed, assume that the step

3   two debt be considered for the step one balance-sheet

4   solvency analysis, and that is, indeed, necessary for his

5   finding of insolvency at step one.  The Third Circuit,

6   again, has written on this issue, Your Honor, and has

7   instructed that "the collapsing analysis should focus on

8   whether the two steps constitute" what the Third Circuit

9   describes as "an integrated transaction".

10          Now, the *Mervyns* Court held last year, in

11  conducting that analysis, that the court should look at the

12  totality of the circumstances, including the overall

13  financial consequences the transaction has on creditors.

14  Now, here, Your Honor, we think that a court deciding on the

15  merits of this issue, and focusing on those overall

16  financial consequences, would find in favor of collapsing,

17  and that's because when substance is elevated over form, as

18  the Third Circuit says that it must be, it's clear that the

19  two steps of the LBO were intended to be, and were, part of

20  one, integrated transaction.

21          On the next page, Your Honor, we've summarized

22  just some of the evidence that we think cuts in favor of

23  that conclusion.  First, Your Honor, the company described

24  this deal as a single deal.  That's how it was presented to

25  the market.  Both steps were described as a single

1  transaction.  Your Honor, the commitment letters for both
2  steps were executed simultaneously.  The step two lenders
3  were obligated to provide that step two financing at step
4  one.  The board approved both steps simultaneously, and Your
5  Honor, we think that all of that evidence points to this
6  being a single transaction.
7          Now, in arguing against collapsing, you heard Mr.
8  Bennett point to FCC approval, Major League Baseball
9  approval, and also the requirement that there be a solvency
10  certificate in advance of step two.  I believe those were
11  his top three points in arguing against collapsing.  And
12  Your Honor, we don't think that those factors change the
13  analysis, because those factors don't alter the fundamental
14  nature of the transaction.  Those factors don't alter what
15  the parties intended at the time.  Those factors don't alter
16  what the parties planned for at the time.  It was a
17  transaction that was conceived, it was designed, and it was
18  marketed to be a single transaction, occurring in two steps.
19  We, respectfully, think, Your Honor, that that is how a
20  court, again, at a trial on the merits, would come out.
21          Now, Your Honor, I want to move to Mr. Tuliano's
22  balance-sheet analysis in a little more detail.  And what
23  we've shown on this page, Your Honor, is his conclusion,
24  using his step one adjusted projections.  And you can see,
25  Your Honor, that the magnitude of the insolvency is fairly

1   dramatic.  It's in excess of $3 billion.  Now, Tuliano's

2   methodologies in arriving at these conclusions, Your Honor,

3   they were the right ones.  They were soundly applied, and

4   they're consistent with widely accepted valuation literature

5   and with the case law.

6          Now, Your Honor, I want to talk about a few of

7   the areas where Tuliano and Fischel part company in the

8   solvency analysis.  And the first has to do with the tax

9   savings, with whether, in the solvency analysis, Tribune

10  should get credit for approximately $1 billion in tax saving

11  as a result of the S-Corp ESOP structure.  That issue, Your

12  Honor, involves what the valuation treatises refer to as the

13  standard of value.

14         Now, there is no dispute, Your Honor, in the

15  valuation literature that business valuation should be done

16  on a fair-market-value basis.  The literature is also

17  unanimous that the fair-market standard requires the

18  assumption of a hypothetical buyer, not, Your Honor, a buyer

19  that is an S-Corp ESOP.  That's why Tuliano excluded the tax

20  savings from his balance-sheet analysis.  And on this point,

21  the examiner did agree with him.  Fischel, on the other

22  hand, includes that benefit, Your Honor, and his

23  justification for doing it, when we asked him in his

24  deposition on cross-examination, what standard of value did

25  you use, his response was "real economic value".  But he

1  also acknowledged, Your Honor, that there's no support in

2  the valuation literature for a standard of value called real

3  economic value.  It just doesn't exist.  What VRC did on

4  this issue of the tax savings provides further support for

5  Tuliano's approach.

6        The next page, Your Honor, is another excerpt

7  from volume one of the examiner's report, and the facts that

8  are highlighted are all facts stipulated to by the parties.

9  And that is, Your Honor, the VRC's engagement letter

10  explicitly modified the definition of fair market value to

11  actually require that their solvency analysis assume that

12  the buyer is an S-Corp, not a hypothetical buyer.  Now, Mr.

13  Browning of VRC testified to the examiner, Your Honor, that

14  over the course of his career, and he had done 400 to 500

15  solvency opinions, he had never seen the fair-market-value

16  definition altered in that way.

17        Thomas Kenny, Your Honor, was the senior vice-

18  president at Murray Devine in 2007 at the time of this

19  transaction.  He was the lender's solvency expert.  And

20  here's what he had to say on this subject.

21  (Playback, Video Deposition of Thomas Kenny:)

22      "Q   Is it appropriate to include, within a fair-value

23  determination, attributes or value that results from unique

24  aspects of the buyer?

25        "UNKNOWN:  Objection as to form.  Object to form,

1  foundation.

2      "A    I have not seen that before.

3      "Q    Okay.  So in your opinion, would it not be

4  appropriate to include that -- those aspects of value?

5      "UNKNOWN:   I object to the form, foundation.

6      "A    I've never seen it before.  I would probably say

7  it's not inappropriate.

8      "Q    Fair valuations are supposed to assume a

9  hypothetical buyer, correct?

10     "A    Yes.

11     "Q    Does an S -- is an S-Corp considered a

12  hypothetical buyer?

13     "UNKNOWN:   Object to the form.

14     "A    An S-Corp?  Well, a lot of times, buyers are not

15  necessarily S-Corps, but pass-through entities similar to an

16  S-Corps, but I guess S-Corps, due to their structure, are

17  frequently not buyers of larger companies, I believe.

18     "Q    Okay.  So would you consider that to be a

19  hypothetical buyer?

20     "UNKNOWN:   Objection: form.

21     "A    I would not consider them to be a hypothetical

22  buyer, no."

23  (End of playback.)

24          MR. QURESHI:  Again, Your Honor, the words of the

25  lender's own solvency expert from 2007.

1           Next, Your Honor, onto the question of the PHONES

2   notes and how those notes should be valued, for purposes of

3   the solvency analysis.  And on this issue, Your Honor, the

4   law is again decidedly with Mr. Tuliano's approach.  The

5   Third Circuit has clearly stated, in the *TWA* case, that "in

6   a solvency analysis, the face value of debt has to be used,

7   not the market value".  There's just no debate on the point,

8   Your Honor.  That's what the law requires.

9           Now, what VRC did on the issue of the PHONES

10  notes is again instructive.  In its step one solvency

11  opinion, Your Honor, VRC got it right.  They used the face

12  value of the PHONES.  In fact, they continued to use that

13  number until just days before the close of step two, when,

14  as Your Honor can see from this slide, they abruptly changed

15  course and used market value instead.  And what was the

16  result of that?  Their own footnote explains what they did.

17  It's a swing of over $600 million in favor of solvency, of

18  course, given what VRC was trying to achieve.

19          Now, Your Honor, there's no discussion in the

20  examiner's report.  There's no analysis of this issue.  The

21  examiner accepted VRC's December 18 number for the PHONES,

22  and, in his balance-sheet solvency analysis, used market

23  value and not face value.  Your Honor, we think that's

24  clearly wrong.  It cuts against the *TWA* case that we

25  referred to.  And Your Honor, it appears, from our reading

1    of the examiner's report, that it's just not an issue that

2    the examiner appreciated at the time to be a contested one.

3    There's no discussion of the point.

4            So, Your Honor, to close out the discussion on

5    the balance-sheet solvency test, what I'd like to end with

6    is a market test, of sorts, of both Fischel and Tuliano's

7    conclusions.  And I want to start with Fischel's conclusion.

8    So what Your Honor sees on this page, and this is the

9    demonstrative that we used during Fischel's cross-

10   examination.  In the box on the right-hand side, that's our

11   addition, Your Honor, to Fischel's page.  And recall that

12   Professor Fischel never concludes a single enterprise value

13   from his various methodologies.  He doesn't ever tie it all

14   together and give a single range.

15           So what this chart shows is that, by simple math,

16   the implied share price, based on Fischel's enterprise value

17   ranges, goes from a low that we've circled of $36 a share,

18   which Your Honor, again, that's $2 above the announced

19   transaction price.  The merger price was $34.  And it goes

20   to a high of double that: $68 a share.

21           Now, Professor Black got on that witness stand,

22   Your Honor, and he affirmed here what he testified to and

23   what he swore to, I should say, in his *Garmella* declaration,

24   which again was contemporaneous.  This was in May of 2007.

25   What he said was that, absent the merger, Tribune's stock

1   would've dropped well below $30 a share, to something in the

2   range of $29.  Now, compare that, Your Honor, to Fischel's

3   conclusion.  Fischel says implied share price is between $36

4   and $68.  And Black says the right price, absent the merger,

5   is closer to 32 and as low as 29.

6           So Black's contemporaneous 2007 sworn declaration

7   compels a very clear conclusion, Your Honor.  Not only did

8   Fischel get it wrong in his step one balance-sheet analysis;

9   he got it way wrong.  Now Tuliano, on the other hand, got it

10  exactly right.  And Professor Black says he got it exactly

11  right.  We do the same thing here, Your Honor, which is we

12  take the implied share price from Tuliano's step one

13  balance-sheet conclusion, and this is his conclusion relying

14  upon management's projections, and show what the implied

15  share price is.  And as Your Honor, can see circled there,

16  it's $28 a share.  Exactly in line with where Professor

17  Black said it should be.

18          Now, Your Honor, moving away from balance-sheet

19  and onto the capital adequacy test, I don't have a lot of

20  time, so I will cover this very briefly.  First, Your Honor,

21  it's important to note that the bankruptcy code is very

22  clear that, in the capital adequacy analysis, all of the

23  debt that the company intended to incur must be included, so

24  that includes step two.  There's no serious debate, and the

25  examiner also agrees that the step-two debt should be

1  included for this purpose.  And remember, Your Honor, we

2  only need to prove insolvency under one of these tests, not

3  all three of them.

4         There's also no dispute, Your Honor, that in

5  performing the capital adequacy and ability-to-pay tests,

6  reasonable downside projections should be used.  Now, the

7  results, Your Honor, they're clear.  It doesn't matter what

8  set of projections you use.  What Your Honor will see in

9  this chart is that the red bar represents the total debt

10  service obligations of Tribune.  The -- I think it's green,

11  Your Honor.  The green bar represents free cash-flow

12  available to service debt under a variety of projections.

13  And what it shows, Your Honor, is it doesn't matter what

14  projections you use.  The results are clear.  They're

15  dramatic.

16         THE COURT:  It's blue.  It's blue.

17         MR. QURESHI:  It's blue.  Okay.  Again, I stand

18  corrected.

19  (Laughter)

20         THE COURT:  It's okay.

21         MR. QURESHI:  Now, Your Honor, let's look at

22  Fischel's step one capital adequacy conclusion.  What it

23  suggests is exactly what one would expect it to show, Your

24  Honor, given the previous chart.  This is Fischel's

25  analysis, and it shows that, in 2010 and in 2011, the

1   revolver goes negative by almost $80 million, and then, in

2   2011, by $45 million.  And what that means, Your Honor, to

3   everybody but Professor Fischel, is that the capital

4   adequacy test was a fail.  The company is insolvent.

5          What he does, though, is he puts a box around the

6   positive $9 million in 2012, and he gets on the stand, and

7   he says to Your Honor, well, I can turn what's a clear fail

8   into a pass, and here's how I do it.  I'm just going to

9   assume that the company can sell some assets, that the

10  company can cut some more costs, and somehow generate some

11  additional cash to overcome a fairly significant shortfall

12  in 2010 and 2011.  Your Honor, he does it without any

13  analysis.  There's no quantification.  There's no support.

14  It's just -- it's made up.  It's just not credible to assume

15  away negative revolver availability of almost $80 million at

16  a time, Your Honor, where everybody but Fischel acknowledges

17  that the industry is in a state of extreme decline, where

18  Tribune is doing worse than the industry, as a whole, and

19  where the company is going to put just crushing leverage of

20  $13 billion on the company.  It just doesn't hold up.

21         Now, Your Honor, I want to shift to the market

22  evidence that we heard some about this morning.  Again, it's

23  what Professor Fischel purports to rely upon for his

24  conclusion of solvency at step one.  Now, the very first

25  category of market evidence that Fischel points to as

1  supporting his conclusion of solvency is Mr. Zell's

2  willingness to put 315 million of his own money into this

3  deal.  The fact, Your Honor, that Fischel points to this as

4  a hallmark of solvency, it's quite incredible, Your Honor,

5  when one thinks about the contemporaneous documents, which

6  show that Zell's equity was a sore point for the LBO

7  lenders, it was a sore point for analysts, and for

8  investors.

9          And let's look at some of that evidence.  Let's

10  start here with early 2007.  Again, Julie Persily from

11  Citibank, characterizing Zell's investment as a "very

12  inexpensive option on the company".  In May, Peter Cohen at

13  JPM wrote of the low equity check from Sam when trying to

14  explain why the deal struggled in the marketplace.

15          Onto March of '07, in *Moody's*, cited the

16  negligible amount of equity from Zell.  And in July, Jimmy

17  Lee, vice-chairman of JPM, he was scheduled to have lunch

18  with Mr. Zell.  Now, JPM's bankers suggested that, at that

19  lunch, Mr. Zell be asked to provide, number one, more

20  equity, number two, even more equity.  Your Honor, Mr. Lee's

21  bankers also suggested that at that lunch, Mr. Zell here,

22  unequivocally, that without more equity, this deal will

23  fail.  And of course, Your Honor, that's exactly what

24  happened.  That's just a sampling of the contemporaneous

25  evidence that Fischel didn't bother to look at, and it just

1  doesn't provide any support, Your Honor, for solvency.

2          Now, the next category of market evidence that

3  Fischel points to is the willingness of the banks to fund

4  the deal, and I'm going to move quickly through this, Your

5  Honor.

6          First of all, the logic just doesn't make sense.

7  Fischel says, well, they agreed to fund it, so how can it be

8  insolvent?  It's obviously circular, and it would mean, if

9  carried to its logical conclusion, that one could never have

10  an LBO that rendered the company insolvent.

11          Again, the contemporaneous evidence tells the

12  story, Your Honor, and there's no sign that Fischel looked

13  at it or analyzed it.  Let's start with early March of '07.

14  Here, Merrill Lynch writing of there being no comfort in the

15  type of leverage that's put on the deal.

16          The next slide, again we'll move quickly through

17  this, Citi also uncomfortable with the leverage.  Ms.

18  Persily here is very concerned, describes the declining

19  EBITDA as "scary".

20          And with respect to Citigroup in particular,

21  there's another story, Your Honor.  There's a series of e-

22  mails, again in the record, uncontroverted, involving Citi

23  and why it proceeded with this deal.  Senior Citi bankers

24  repeatedly wrote of a fear that Morgan Stanley, the advisor

25  to the Tribune's Special Committee, would "trash Citibank in

1    the marketplace if they backed out of the deal".  Their

2    words, Your Honor, not mine.

3            In this e-mail, the reference to Chad and to his

4    friends laughing at him for doing a deal with this kind of

5    leverage, that's not just a reference to some junior analyst

6    at Citigroup, Your Honor.  It's a reference to Chad Leat,

7    who at the time was the head of leveraged finance at

8    Citigroup.

9            In this next e-mail, Your Honor, again, same

10   concern: if Citi backs out, Morgan Stanley will use that

11   fact against Citi in marketing for other deals.  Here,

12   there's a reference to Frank being "very afraid of what

13   Morgan Stanley might do against Citi".  And again, Your

14   Honor, this isn't a junior analyst that's being referred to.

15   It's Frank Yeary, the head of M&A at Citi at the time.

16           In this next e-mail, Ms. Persily writes of a

17   concern regarding franchise risk.  Again, Your Honor, this

18   is not evidence of solvency, the fact that Citi, under these

19   circumstances, went ahead with this deal.  And again,

20   there's no sign that Fischel even reviewed these e-mails,

21   let alone analyzed them.

22           Now, the next series of documents, again not

23   analyzed by Fischel, show, Your Honor, that the banks had

24   significant difficulties in syndicating the debt and in

25   reducing their own exposure.

1          We don't have time to go through them all, so I'm

2    going to flip ahead a couple of slides, to an e-mail here

3    from JPM, writing that "we are fighting the good fight, but

4    even with full flex and throwing fees at it, we could fall

5    very short".  Now, as noted in the bottom e-mail, Your

6    Honor, the difficulty JPM was having was not due to the

7    market; it was about this deal.

8          Your Honor, very briefly, a Bank of America

9    report, it's the same thing.  And there's much more

10   evidence.  Again, it's cited in our briefs, Your Honor.  It

11   talks about the banks having to give up fees, give up rate,

12   and sell below par in order to place the debt in the

13   marketplace.  It's clear, Your Honor, that the investors who

14   did not have the same incentive that the lenders did to

15   participate in the LBO, they were anything but enthusiastic

16   about it.

17         Your Honor, the next category of market evidence

18   pointed to by Professor Fischel, it's kind of a remarkable

19   one.  It's the rating agency downgrades.  Now, defying all

20   logic, Fischel says that "the steady stream of pre-step one

21   downgrades are actually evidence of solvency".  It just

22   doesn't make sense, Your Honor, that -- first of all,

23   default ratings for corporate debt, they're not assigned

24   until there's actually a default.  What the record does show

25   is that the rating agencies uniformly expressed grave

1   concern about the high leverage and the low equity and the

2   declining revenues in this deal.  Through 2006 and the first

3   half of 2007, Your Honor, the agencies collectively

4   downgraded Tribune no fewer than seven times.  I just don't

5   understand, Your Honor, and respectfully, it's not credible

6   to conclude, from this evidence, that these downgradings are

7   evidence of solvency.  Your Honor, it compels the opposite

8   conclusion.

9           Now, before I get to CDS pricing, I want to

10  address, briefly, something Mr. Bennett brought up this

11  morning, and that was the *Iridium* case, the *Campbell's Soup*

12  case, and the question of market evidence.  Now, Your Honor,

13  those cases address the question of whether a vibrant equity

14  market could be looked at post the alleged fraudulent

15  transfer as an indicator of whether the company was solvent.

16  But that's, obviously, very distinguishable from this LBO,

17  Your Honor.  As Professor Black testified, the stock price,

18  pre step one, was obviously impacted by the public

19  announcement on April the 2nd that there was going to be a

20  merger at $34 a share.  That's why Tribune's equity price at

21  step one is of a categorically different nature than what

22  the *Iridium* and the *Campbell's* Courts were addressing.  That

23  just wasn't the situation in those cases, and it's vastly

24  different from what's going on here.

25          Now, with respect to CDS pricing, Your Honor,

1  again, I want to start with what Your Honor heard from Mr.

2  Bennett.  He is right that CDS does not trade on an exchange

3  and that therefore, the volume, the liquidity in the CDS

4  market, is not available on a daily basis.  But that's about

5  all that Mr. Bennett got right.

6           With respect to Tribune, Your Honor, because

7  there was a default, there had to be an option to settle out

8  the CDS contracts following the bankruptcy, and we know

9  about it, because articles were written about it.  It's well

10 known.  It's cited in Mr. Tuliano's report.  And what we

11 know, Your Honor, is that almost $18 billion in notional

12 value of credit default swaps were ultimately settled.

13 That's 20 times the outstanding bonds.  And that's why Mr.

14 Tuliano concluded and testified before this Court that the

15 CDS market is vastly more liquid and is therefore a much

16 better indication of market reaction than is a bond market,

17 with -- which both Tuliano and Fischel acknowledge was

18 highly illiquid.

19           And so the easiest way for investors, Your Honor,

20 to lay off risk, in advance of step one, was to purchase

21 CDS.  So let's look at what happened.  First of all, Mr.

22 Bennett takes issue with the scale in this chart, but Your

23 Honor, I think the important thing to note is -- let's focus

24 on step one completion.  It's on the left side of the chart.

25 It's circled.

1        So what happens to CDS prices as we move towards

2   step one?  Well, the spread goes from -- oh, it looks like,

3   maybe 175/150.  And it more than doubles, to above 400, by

4   the time you get to the step one close.  That's a dramatic

5   jump, Your Honor.

6        Now, the other thing that's important to note,

7   and Your Honor asked the question this morning, the market

8   can only respond to the information that the market has.  We

9   reviewed, Your Honor, the evidence concerning the February

10  projections and the updates that management was considering

11  but did not release to the market.  So the only information

12  the market had, at step one, was that the company was

13  standing by the February projections.  The market, of

14  course, assumed that those projections were done in good

15  faith, and the company continued to have a good-faith belief

16  that they could be met.  We, of course, know that that's not

17  the case.

18        So in July, a month later, when the company did

19  release revised projections and finally brought down its

20  2007 numbers, what happened?  Well that, Your Honor, is the

21  second circle on the right.  And what we can see, there's a

22  dramatic spike.  If Your Honor just looks at the -- where

23  the spread goes from the close of step one to July 22, it's

24  a 70-percent jump since step one, Your Honor, and the CDS

25  spread.  And there was a *Bloomberg* article at the time, and

1    again it's cited in Tuliano's report, that shows that, at

2    that level, Tribune was the fourth riskiest of 1,200 issuers

3    at the time.  That, Your Honor, is very clear evidence of

4    solvency.

5            So, Your Honor, I don't have time to discuss what

6    Houlihan did and their disinterested view of solvency, so

7    I'm going to skip over that.

8            And what I'd like to finish with, Your Honor, is

9    a review of the contemporaneous evidence presented by the

10   DCL proponents, lauding the wisdom of the LBO.  Here it is,

11   Your Honor.  And Your Honor can wait, but that's it.

12   There's not a single witness.  There's not a shred of

13   contemporaneous evidence.  There's not any documents, Your

14   Honor.  And that's despite the fact that much of the

15   management team of Tribune that was in place and that did

16   this deal in 2007 remains with the company, remains under

17   the debtors' control.  They didn't bring a single witness,

18   Your Honor.  They didn't put anybody into that witness stand

19   to explain to Your Honor why it made sense to do this deal,

20   to explain to Your Honor why the February projections were

21   valid and why it was reasonable for the company to continue

22   to rely upon them.

23           What the evidence does show, Your Honor, and it

24   really is uncontroverted -- it's why we have an almost-

25   hundred-page presentation, is that the LBO was doomed from

1  the outset.

2          So, unless the Court has any questions, I will

3  hand it back to Mr. Zensky.

4          THE COURT:  I do not.  We're going to take a

5  five-minute recess.

6  (Recess at 2:10 p.m. to 2:19 p.m.)

7          MR. ZENSKY:  Good afternoon, Your Honor.  David

8  Zensky for Aurelius and the noteholder plan proponents.

9  Your Honor, you look at the evidence that Mr. Qureshi took

10  you through and you just have to ask yourself why did this

11  transaction happen.  You know, I'm sad to say --

12          THE COURT:  That question kind of came up a long

13  time ago.

14  (Laughter)

15          MR. ZENSKY:  Well, it's a question that lingers,

16  Your Honor, and it's certainly one that would be relevant in

17  a trial on the merits.  It's sad to say it's not

18  unprecedented that smart people enter transactions like

19  this, over leverage companies, leave it with unreasonably

20  small capital, and pay more than it's worth.

21          THE COURT:  Seen a few here.

22          MR. ZENSKY:  Yep.  We know it's true from the

23  many cases that have applied, the fraudulent transfer

24  doctrine and associated remedies to leveraged buyouts.  We

25  know it from Professor Black, who, based on his research and

1    his corporate finance background, admitted as much, that

2    smart people overpay for assets.  And the truth is there

3    were smart people involved in this transaction, there's no

4    question about it.  But what they were able to do or thought

5    they were able to do was shift the risk of the transaction

6    onto the preexisting creditors.  That's the paradigm of an

7    LBO.  It shifts the risk of the transaction onto others.

8    And they did it here because there was something in it for

9    all of them, in other words, the proponents of the

10   transaction, and they didn't want to be at a risk of it.

11          And if we look at the next slide, we can quickly

12   look at why the participants to the transaction did it and

13   what they thought was in it for them.  Well, we know that

14   the lenders, for example, Your Honor, were planning to take

15   300 million dollars in fees off the table and only to retain

16   a modest exposure after closing.  They certainly intended to

17   syndicate a good portion of the debt.  And equally, if not

18   more important, these are banks that all wanted to curry

19   favor with Mr. Zell.  Certainly there aren't many banking

20   clients out there like Mr. Zell.  They also wanted to avoid

21   the reputational risk of backing out.  And you saw those

22   slides with respect to Citibank a few moments ago.  For Mr.

23   Zell, of course, this was nothing more than an inexpensive

24   option.  He put in 315 million dollars and he was able to

25   acquire control of Tribune plus 40 percent of the economics.

1  They say it's a 13 billion dollar company.  We say it's an

2  11 billion dollar company.  Either way, 315 million dollars

3  is an awfully inexpensive option for that type of control,

4  Your Honor.

5          It's easy to see what was in it for management.

6  Management got enormous payouts upon the change in control.

7  Just to name two, Mr. FitzSimons got 16.4 million, Mr.

8  Grenesko 8.2 million.  So, we know what's in it for them.

9  The shareholders -- the large shareholders of course, Your

10 Honor knows, were the ones that pushed for a transaction

11 like this.  And they got cashed out at an inflated premium

12 price.  The evidence certainly supports that.

13         And then there was the 2006 bank facility which

14 got repaid.  It was many, if not the identical -- many of

15 the same, if not the identical, group of lenders.  They got

16 repaid on that facility and then they relent the money at

17 higher interest rates into the LBO.  So, that's what they

18 got.

19         And what did the preexisting debt get, Your

20 Honor?  Well, they were asked to bear virtually all the risk

21 of the folly of this transaction.  Certain emails referred

22 to them as the bank's equity cushion.  These are creditors,

23 not equity, Your Honor.  These are creditors.  And then they

24 were -- it was described by one senior JP Morgan banker that

25 they squashed the other creditors.  And if you look at the

1  next email from Peter Cohen, this is pre-step one by two

2  months, and he is explaining the deal to someone internal to

3  JPM and he says, we squashed everything else, certainly an

4  unflattering view of the preexisting creditors, Your Honor,

5  who had nothing to do with the leveraged buyout.

6          So, the only problem with squashing other

7  creditors, Your Honor, if the deal goes south, as this one

8  predictably did, is that if you're the squasher, the Code

9  provides remedies to rectify what you did.  Those remedies

10 are called 11 U.S.C. 548, 544, equitable subordination,

11 equitable disallowance.  And all of those should apply in

12 this case, Your Honor.  If those doctrine don't apply to a

13 leveraged buyout like this, Your Honor, what do they apply

14 to?  And I think, again, the Court should recall my opening

15 comments about the burden.  We don't have to prove at this

16 stage that these are absolute winners.  I think you heard

17 Mr. Sottile say, well, they're not a slam-dunk.  I think

18 they have to prove to you that the claims have a low chance

19 of success.  And we don't believe they have done that.

20         Let me turn to the issue of step two avoidance,

21 as I have said I would.  There has been very little debate

22 about step two.  I think it's fairly evident that there is

23 just not any real defense to the company's solvency at step

24 two and to whether the step two debt would be avoided in a

25 full litigation.  We have an excerpt from the post-trial

1    brief of the DCL plan proponents.  And you can see what they

2    tell you here is that avoidance of the step two loans is not

3    a foregone conclusion.  That doesn't sound like a rousing

4    defense of that claim, Your Honor, and I think it's clear

5    that the evidence supports it.

6              Instead, the issue is what is the remedy that

7    would result from the avoidance of step two.  And you heard

8    Mr. Sottile and Mr. Bennett say that step two avoidance does

9    nothing for the non-LBO creditors because step one still has

10   a huge claim and they are entitled to suck up all or

11   virtually all of the value that otherwise would have gone to

12   the step two holders.  The noteholders, of course, disagree

13   with that and believe that in a trial on the merits there

14   are multiple remedies and courses that would result in

15   fabulous recoveries for the non-LBO creditors, the first

16   relating to WEAR, and the second to whether step one gets

17   post-petition interest.

18             Now, the various arguments respecting to WEAR,

19   Your Honor, at the root are simply designed to ensure that

20   if step two is avoided, that the benefits of that avoidance

21   go to the innocent, non-LBO debt that existed at the time

22   and not back into the hands of step one.  Now, it assumes

23   that step one, of course, would still recover the full

24   amount of it's pro rata claim as if step two was not

25   avoided.  It's just that step one doesn't improve its

1   position as a result of step two being avoided.

2          Now, if we look at the next slide, Your Honor,

3   Mr. Sottile, I think, somewhat sheepishly fessed up to this,

4   that the committee complaint, of course, pleads the very

5   remedies that we have been harping on to some degree, Your

6   Honor.  In Count 4, they are pleading estoppel against the

7   banks to prevent LBO lenders from benefiting from the

8   avoidance of step two obligations and transfers.  In Count

9   5, they plead the same relief based on an intentional

10  fraudulent transfer theory.  And in Count 7, they plead it

11  as a species of unjust enrichment.

12         The lenders never sought to challenge the

13  colorability of these claims, Your Honor, when the committee

14  saw it standing.  There was never any argument that any of

15  these causes of action failed to state a claim or should not

16  be part of the complaint.  Now --

17         THE COURT:  I never took that though to be an

18  admission of anything.

19         MR. ZENSKY:  Certainly, Your Honor, they would

20  have the right to raise it on motion practice later.  But

21  there was no argument that those claims were not colorable,

22  no question about that.

23         If we look at the next slide, Your Honor, we look

24  at the economics or the ramifications of whether, if where

25  applies, what the stakes are.  If step two is avoided -- and

1  this is at the DCL plan value of 6.75 billion, Your Honor,

2  of course, we believe the DEV is substantially higher.  This

3  uses the debtor's number of 6.75 billion.  If that's the

4  value of the company and step two is avoided, there is just

5  shy of 1.6 billion dollars of distributions that are slated

6  as of now for the step two holders.  There would be 318

7  million dollars of disgorgement dollars that would come in

8  before pre-judgment interest.  So, you're looking at about

9  1.9 billion dollars.  And the question is whether that value

10  goes to the non-LBO creditors or goes to the step one

11  lenders.

12          And you can see that that's a big pile of money

13  and that if that money was, in fact, rooted to the non-LBO

14  creditors, there is enough to pay all non-LBO creditors in

15  full, 100 percent of their claim, with the exception of the

16  PHONES, and the PHONES would still get more than 50 percent

17  recovery on their claim.  And all that would have to happen,

18  step two avoided.  You can see there is virtually no defense

19  of step two avoidance.  And one of the arguments respecting

20  to WEAR would have to be adopted to produce that recovery.

21          So, I think, again, within the context of

22  canvassing and the burden, the DCL plan proponents have to

23  prove to you that there is little chance that these claims

24  would be accepted or these arguments would be accepted in a

25  trial on the merits given the benefits that would result to

1  the non-LBO creditors if the litigation goes forward.

2         Now, the arguments that WEAR is based on derive

3  from a couple of sources, Your Honor.  In part, it's based

4  on the broad scope of equitable discretion that every

5  Bankruptcy Court has to sift the circumstances surrounding

6  any case and any claim and ensure that there is not

7  injustice or unfairness done in the administration of the

8  estate.  That, of course, comes from Pepper v. Litton.

9         But there is really a double dose of discretion

10 with respect to fraudulent transfer law, Your Honor, because

11 the remedies associated with avoidance are widely

12 discretionary as well.  And when a court is crafting

13 remedies for avoidance under 544 or 548, we believe the

14 cases show that it has enormous discretion to figure out how

15 to undo the harm to the creditors that were harmed by the

16 levered transaction or fraudulent transfer and not benefit

17 the parties who promoted it.  And that's the third leg of

18 WEAR, Your Honor.  And Mr. Bennett said there are no cases

19 on it.  And we respectfully disagree.  We have got excerpts

20 from three of them here, Your Honor, showing that there are

21 multiple Decisions where courts have said that a party who

22 consents to a particular transaction, transfer, or

23 assumption of an obligation, assumes the risk of it,

24 participates in it to some degree, can't benefit from the

25 avoidance of that transaction.  It's pretty simple and

1    straightforward, Your Honor, that these are parties in these

2    cases who a court says can neither pursue avoidance of the

3    action, and if they can't pursue avoidance of it, they can't

4    benefit when someone else pursues avoidance of it.  And we

5    believe that's the situation that we're in.  And these are

6    just three of the cases.  There are several others cited in

7    our brief.

8           And I think what's key to understand, one of the

9    keys of this, Your Honor, is that the courts that have

10   reached these rulings that limit and restrict certain

11   parties from participating in the benefits of avoidance,

12   they're not relying on a particular section of the Code,

13   they're relying on the general equitable powers of the Court

14   to adjust the equities in a given fraudulent transfer case.

15   It's not unlike in pari delicto, for example, Your Honor.

16   There is no statute that says that courts should prevent

17   recovery under those circumstances.  It's courts doing what

18   courts do, Judge, and look at the equities of a given

19   situation.

20           Now, Mr. Bennett told you that he thought the

21   *Labelon* case was distinguishable.  He said there was an

22   agreement in that place.  Well, I think he's forgetting

23   there's an agreement in place in this case.  It's called the

24   senior loan agreement.  And the step one and step two debt

25   was provided for by the exact same agreement, Your Honor.

1   The arrangers who set up step one also simultaneously set up

2   step two.  They priced the transaction together.  They

3   marketed it together.  They based the interest rate for step

4   one on the fact that step two was going to be added to the

5   transaction.  They negotiated their fees based on it being a

6   step one and step two transaction.  So, it's clear that the

7   step one holders and their successors certainly were part of

8   this transaction.  They promoted step two, Your Honor.  And

9   his comment in no way distinguishes the *Labelon* case.  Now,

10  there are more facts on this point that are set forth in our

11  papers.  But I think those are the principle ones.

12          I heard Mr. Bennett say that WEAR was rejected by

13  the examiner.  We certainly disagree with that.  The points

14  are in our papers.  And I know the Court has read the

15  report.  The examiner said that he felt that it was in

16  equipoise as to whether WEAR would apply to disgorgement

17  recoveries.  We believe he also said that it was in

18  equipoise as to who would benefit from the avoidance of

19  obligations of step two.  DCL plan proponents have argued

20  that he said reasonably unlikely as to that point, but he

21  certainly did not reject it.

22          Now lastly, Mr. Bennett said that WEAR can't be

23  applied to benefit shareholders.  And certainly Tribune is a

24  shareholder of the subsidiaries.  But the benefits of WEAR

25  would never be flowing, Your Honor, to the equity holders of

1    Tribune.   And the cases that have rejected the use of

2    equitable subordination, for example, to benefit equity,

3    have been in that context.   If WEAR were to apply here, and

4    you saw the slide with respect to the 1.9 billion dollars,

5    there would still be inadequate funds to pay back the PHONES

6    debt.   So, this is not a remedy where anyone is saying that

7    the actual equity owners of the company should benefit from

8    avoidance.

9            But I should add, Your Honor, that when that

10   issue was presented in the Bayou Case to Judge Hardin in the

11   Southern District, this is a fraudulent transfer case

12   between investors in a hedge fund, he flatly refused to

13   adopt a bright-line rule that equity can never benefit from

14   an avoidance action under the Code and he said that each

15   case has to be based on its facts and that that case, where

16   certain parties redeemed out of a hedge fund, that was found

17   to be insolvent.   And the non-redeemers wanted to claw back

18   the money.   He refused to say that they could not use the

19   avoidance powers of the Code to do so.

20           There is also the Goss Case, Your Honor, in which

21   an individual bankruptcy -- it was an individual bankruptcy

22   proceeding and a transfer was avoided.   The money came back

23   into the estate.   And the Court ruled that it would go to

24   the heirs of the debtor rather than back to the party that

25   received the transfer.   So, there are instances where, in

1  effect, equity has benefited in the way that Mr. Bennett was
2  using the phrase before.
3           Now, Your Honor asked this morning a question
4  about at what DEV is necessary for certain parties to be in
5  the money, I think was the phrase Your Honor used.  And the
6  next chart addresses that.  And this goes to the issue that
7  Mr. Sottile and Mr. Bennett discussed, which is if step two
8  is avoided, and this assumes that one of the WEAR doctrines
9  is not utilized, but step two is avoided and the step one
10 lenders do not get post-petition interest, what does that
11 mean for recoveries.  And this comes from our supplemental
12 objection, Your Honor.  And you can see in the blue box
13 that's second from the right that at as little as 7.2
14 billion, for example, the notes could obtain a 60 percent
15 recovery merely from step two being avoided, step one being
16 allowed, but not receiving post-petition interest.  And if
17 you go down further, you can see the chart as to what values
18 are required for the PHONES to begin receiving a
19 distribution.  The column on the far right runs the same
20 calculation, but when WEAR applies and step one does not
21 improve its position as a result of the step two avoidance.
22           Now, the question of whether the step one holders
23 get post-petition interest is in the briefs.  And I'll just
24 refer the Court to our post-trial brief at pages 60 to 61
25 and our conclusions of law at -- proposed conclusions of law

1  at page 63.

2          Finally, Your Honor, there was a third outcome

3  that we discussed briefly in our papers and, I believe, it

4  was discussed at trial as well.  And that is a litigation

5  outcome where there is avoidance at the parent company

6  level, but not at the subsidiary level of both step one and

7  step two.  And I believe Mr. Sottile touched on this outcome

8  this morning as well.  When that happens, there are enormous

9  disgorgement dollars that flow into the parent company

10  because the parent paid all the principal and interest back

11  to the step one and step two holders pre-petition.  We think

12  there is a very strong argument that those disgorgement

13  dollars would stay at the parent and go to the pre-LBO

14  noteholders and PHONES  and not the step one and step two

15  holders through intercompany claims.  And that's also set

16  forth in our brief, Your Honor, at page 61 to 62 of our

17  post-trial brief and pages 64 to 66 of our proposed

18  conclusions of law.

19          Let me change topics at this point, Your Honor,

20  and talk about the process by which the proposed settlement

21  now before you came about.  We think it's clear from the

22  cases that fairness and rigor are required aspects of any

23  process that will lead to a settlement -- that can lead to a

24  settlement that the Court should approve.  We know, Your

25  Honor, that the lenders were at the table at all times

1  trying to pay as little as they had to pay.  I don't think

2  there is any question about that.  This was not a charity

3  for them.

4         THE COURT:  That's not an uncommon character

5  trait of lenders, is it?

6         MR. ZENSKY:  It certainly is not, Your Honor.

7  It's entirely appropriate of lenders.  But what's also

8  entirely appropriate is having an equal advocate on the

9  other side who is pushing just as hard for the maximum

10 payment to settle the litigation.  That's the dynamic that

11 leads to a settlement that I think helps the Court determine

12 that the proposed settlement is a fair and reasonable and

13 within the right range.

14         I think that that concept, the requirement of

15 having a vigorous advocate and a party with a stake in the

16 outcome was recognized by the witnesses who testified before

17 you.  Mr. Gropper testified that that's certainly one of the

18 reasons that Aurelius did not oppose the April plan, because

19 they understood that Centerbridge was in the room, was

20 fighting hard for the noteholders' side, the non-LBO

21 creditor's side of the equation, and pushing back against

22 the lenders seeking to pay as little as possible.

23         Mr. Kurtz told you on cross-examination that to

24 the debtors, Centerbridge's involvement and approval of the

25 April plan was incredibly important to the debtors.  Mr.

1  Salganik testified to the same thing.  He said that, from

2  his perspective and the committee's perspective, knowing

3  that Centerbridge was in the room and negotiating hard over

4  a period of several months gave him validation that the

5  proposed settlement was fair.  And then on cross-examination

6  by Mr. Friedman, he had to confess, what we all know, that

7  that validation is lacking with respect to the settlement

8  now before you.

9          Now, why do I say that there was no one in the

10 room pushing hard for the parent company, noteholder side,

11 and PHONES side of the equation?  Well, Your Honor, I think

12 the evidence that you saw during the trial, and as

13 summarized in the post-trial brief, shows that this was a

14 process that was run by the debtors at all times.  You'll

15 recall the debtors' opposed committee standing originally.

16 They opposed at all times relinquishing settlement

17 authority.  They were opposed to letting the committee have

18 sole settlement authority.  And most important, the debtors

19 were controlled by the very people who envisioned the

20 transaction that we're talking about, Your Honor, Mr. Zell

21 from the outside, and some of his colleagues, and board

22 members of Tribune, and management on the inside.  The

23 people who put the deal together were running the company

24 and setting the policy with respect to the plan and proposed

25 settlement.

1          Now, we know Mr. Zell's defiant views about the

2     transaction.  Mr. Bradford reminds us of those every

3     opportunity that he gets.  Now, Your Honor, could you

4     imagine Mr. Zell being the one carrying the torch for the

5     noteholders in the room with the lenders saying you need to

6     pay more?  I don't think so, Your Honor.  And we know that

7     Mr. Zell was involved.

8          If you look at the next slide, this is after the

9     April plan fell apart.  And this is from a senior member of

10    Oaktree -- two senior members of Oaktree talking about where

11    things stand and they're talking about the examiner report.

12    And Mr. Mark says, I think it's good for us and most likely

13    good for the bonds.  So, he's commenting that the examiner

14    report is good for the bonds.  And then he goes on to say, I

15    have talked with Sam Zell almost five times in the last week

16    trying to maneuver the company to do what's best for us --

17    of course, as you said, lenders trying to pay as little as

18    they need to, Your Honor -- he keeps telling me all the

19    right things, but hasn't forced the company to file a plan I

20    like as yet, I think he will.  So, we don't think Mr. Zell

21    was an appropriate advocate for the notes, Your Honor.

22         It was really Mr. Liebentritt, however, who the

23    evidence shows was the most involved in negotiating the plan

24    from the debtors' side.  And while Mr. Liebentritt was not

25    an architect of the transaction in the same way that Mr.

1   Zell was, he was certainly no more in the right position to

2   be a vigorous advocate for us.  And you saw the emails

3   during the course of the trial and you heard evidence about

4   his close ties to Mr. Zell and the way he ran the settlement

5   talks.  I'm not going to take the time to go through it.

6   But this slide summarizes some of the reasons that we lack

7   confidence in Mr. Liebentritt's ability to push hard for a

8   settlement.  And he sat there the whole trial, Your Honor,

9   and if there was a defense of the process that the debtors

10  run, then I think that you would have heard it during the

11  course of the trial, and you didn't.

12          So, when we look at the background law, Your

13  Honor, and in particular, we have cited to you the second

14  *Cybergenics* decision and a case out of Georgia, *In Re:*

15  *Commercial and Military Systems*, it's just not reasonable to

16  assume that people who participated in the transaction were

17  then going to turn around and fight hard, fight equally as

18  hard as the lenders to produce a fair settlement.

19          Now, you have to layer on top of that that the

20  principsls were not the right people to be negotiating that.

21  They delegated the legal representation to Sidley.  Now,

22  they are fantastic lawyers, Your Honor.  I have the highest

23  respect for them.  And this trial showed how good the Sidley

24  Austin lawyers are.  But they were not the right firm for

25  the assignment to represent and stand up for the unsecured

1  creditor/noteholder side in the negotiations, Your Honor.

2  As you heard discussed during the trial --

3           THE COURT:  Well, you know, we could get into

4  that debate about, you know, what's the appropriate role of

5  counsel to debtor-in-possession.  But, you know, they're

6  still advocates as far as I'm concerned.  And I know the

7  cases, you know, where Judges have written about how this

8  role should go differ.  But they're still advocates.

9           MR. ZENSKY:  Sure.  Advocates for who is the

10  question, Your Honor.  The debtor and --

11           THE COURT:  They have a client.

12           MR. ZENSKY:  Right.  Okay.  So, their -- you're

13  right.  If their client instructs them to do something, they

14  have got to do what their client instructs them to do.  But

15  I think when a debtor involves a law firm that had

16  entanglement with the transaction, as Sidley did.  They did

17  the financing.  That's at issue here, Your Honor.  Their

18  senior partner, the chairman of the firm, is on the SEC

19  filings for this deal.  They did the senior loan agreement

20  for Tribune.  They are not likely to be recommending to the

21  debtor that these are great claims, you need to stand up and

22  negotiate harder for a greater payout from the step one and

23  step two lenders.

24           And if we add to that fact, Your Honor, the next

25  slide, that -- if you refer to the next slide, in the

1    Garamella litigation, which you've heard something about,

2    Sidley, of course, represented the company.  Nothing wrong

3    with that.  They represented the directors and officers of

4    the company who had been named in the litigation.  Nothing

5    wrong with that.  The problem is, when it comes then to

6    negotiating over what a fair settlement is when the debtors

7    are saying we're going to take control of this process and

8    some of the people that they represented are people whose

9    conduct is at issue in the underlying claims, Your Honor.

10   And a law firm is just not in a position to, I think, wear

11   both of those hats.  And I think it's noteworthy that the

12   company did consider retaining conflicts counsel at one

13   point, and did not, and chose to utilize Sidley.

14          So, from the debtors' side, Your Honor, we don't

15   think that the process was appropriate and produced a result

16   that the Court could have confidence in.  The Court may

17   remember that the company formed a Special Committee at one

18   point.  I think the Court probably can see from the evidence

19   that the Special Committee played a virtually non-existent

20   role in approving the plan and settlement here and had

21   conflicts of its own.  Mr. Shapiro paid a visit to Oaktree

22   to solicit investment for his private company just weeks

23   before he was made the chairman of the Special Committee.

24   You saw Ms. Wilderotter's correspondence with Mr. Lee of JP

25   Morgan.  JP Morgan has underwritten or helped underwrite the

1    largest transaction her business had ever done.  And she

2    signed off on her emails, your friend always looking out for

3    JPM.  So, Special Committee was not the holy water here to

4    cleanse the process, Your Honor.

5                 That turns to -- brings us to the committee.  And

6    unfortunately we don't think the creditors' committee either

7    filled the role of being an equal and opposing force to the

8    lenders seeking to pay as little as they had to, Your Honor.

9    And I think the facts show at this point, if you look at

10    slide 75, we know that from Mr. Carlston's testimony, the

11    committee never performed a solvency analysis, whether the

12    company was or was not insolvent at step one and step two.

13    They conducted only seven 2004 depositions before proceeding

14    into settlement.  And that was something the examiner

15    commented on as quite surprising to him.  And perhaps, you

16    know, most dramatic, Mr. Salganik testified that, as far as

17    he knows, the committee never demanded more than 450 million

18    dollars to settle the entirety of all the claims against the

19    lenders, Your Honor.  And that's against, as I showed you

20    earlier, a potential damage number of close to 3.3 billion

21    dollars.  And this was the most they ever asked for in a

22    negotiations.

23                 Mr. Kurtz said that -- testified, not said --

24    testified that he had never heard the committee demand more

25    than 420 million dollars.  And then Ms. Kulnis testified.

1   Remember Ms. Kulnis was the lead JP Morgan representative on
2   the committee and she was the lead negotiator for JP Morgan
3   in trying to reach a plan and settlement.  She said there
4   was never a time where the merits or strength of the claim
5   were argued to her.  Now, Your Honor, in any settlement
6   negotiation I've ever been involved with and, I dare say,
7   most of us in the room, there comes a point where at least
8   someone argues to you the claims are much stronger than you
9   think and here's what we're going to prove and so on.  And
10  none of that happened here, Your Honor.
11            THE COURT:  Well, I don't know.  I've always
12  wondered how much those speeches really matter, you know,
13  because each party is advised by their own professionals and
14  they have received their own advice on what the strengths
15  and weaknesses of their claims and their defenses are.  And
16  I have yet to see -- maybe I just wasn't there.  But I have
17  yet to see a situation in which someone heard one of those
18  speeches and said, oh my gosh, you're right, how much do you
19  want.  I mean, it just doesn't happen that way.  And more
20  often than not, after the parties have advised themselves of
21  what the other side is claiming and what they think their
22  own exposure is, they then say, if you really want to settle
23  something, okay, how do we get it done, and then you're
24  talking about numbers.  You're not talking about right or
25  wrong, good or bad.  You're talking about how do we get it

1    done.

2         MR. ZENSKY:  Okay.

3         THE COURT:  That's just what my experience tells

4    me.

5         MR. ZENSKY:  I hear Your Honor, but my experience

6    is to the contrary.  There is a time in every negotiation

7    where a party argues to the other party about how strong the

8    case is, and you're overlooking this, you're overlooking

9    that --

10         THE COURT:  Well, I didn't say I didn't hear

11    that.  I just said I never knew it really to make a

12    difference.

13         MR. ZENSKY:  Well, it may or may not make a

14    difference.  I believe it does.  But it's indicative of

15    arm's-length bargaining where at least you go through the

16    motion of arguing to the other side you are underestimating

17    the risk of the litigation, Ms. Kulnis.

18         THE COURT:  It could be.

19         MR. ZENSKY:  All right.  The last point about the

20    committee, Your Honor, you know that from the outset of the

21    case that the Chadbourne Firm had a conflict with respect to

22    suing the LBO lenders and Zuckerman was brought in as

23    special counsel.  But Chadbourne remained the point person

24    from the committee.  And Mr. Liang testified that Mr. Seife

25    was always the point person for negotiation of the -- or

1 │ discussion of the proposed settlement.

2 │         THE COURT:  Mr. Zensky, let me just say this

3 │ about process.  This is an argument that you have been

4 │ making all along.  And I guess if you and others or I were

5 │ to sit down and just kind of frame out the ideal way to

6 │ approach having resolved this, it might be that it would

7 │ look nothing like what happened here.  Now, just for

8 │ purposes of what I'm about to say, let's assume that.  But

9 │ given what has happened here, your clients have made their

10 │ views well and ably known to all of the others here,

11 │ including the ones whose arms are too short for you.  Okay.

12 │ So, at the end of the day, while the process has been

13 │ rigorous, everybody knows what you think and why.  And yet,

14 │ they're still pressing this settlement on the DCL side.  So,

15 │ even if I assume the evidence showed, and I'm not sure that

16 │ it does, but let's assume that it showed that you weren't

17 │ given a seat at the table, they have seen the show.  Okay.

18 │ Everybody knows why you think the deal that's being proposed

19 │ here by the DCL plan proponents is no good.  And as I think

20 │ I told you early on, I'm more impressed by -- well, I'm more

21 │ focused on the dynamic of is it a good deal or isn't it a

22 │ good deal --

23 │         MR. ZENSKY:  Sure.

24 │         THE COURT:  -- not as much on the process.

25 │         MR. ZENSKY:  Okay.  Understood, Your Honor.  A

1  couple of comments.  I think there is a world of difference

2  between everyone understanding the positions and having a

3  seat at the table and being in the room to try to push the

4  process to a settlement that everyone can live with.  You

5  can't pick your adversary, Your Honor.  And I don't think

6  that it's an appropriate plan process to simply kick out of

7  the room or never invite into the room the party that you

8  know will be the most vigorous advocate for the other side

9  of the case, not when they're the second largest creditor

10 and not when they're the largest creditor of the estate,

11 Your Honor, and it was inappropriate for the debtors.  As

12 Mr. Gropper testified and it's not contradicted in the

13 least, to say after the fact we're going to see if we can

14 get the settlement passed and we'll only negotiate with you

15 if the Court doesn't approve it.  Okay.  That's just not the

16 way a fair and appropriate process should be run.  And the

17 sole point of this, Your Honor, is to suggest that whatever

18 comfort the Court could take away from a fair settlement to

19 help it as a reference point with respect to a settlement

20 when assessing whether the claims are good or not is lacking

21 in this case.  I don't know if that responds to Your Honor's

22 question.

23         THE COURT:  It does.  And it, you know,

24 illustrates, I think, the difference in our views about

25 that.

1          MR. ZENSKY:  Okay.  Understood, Your Honor.  All

2    right.  Well, I will move on.  I'm going to skip ahead to

3    slide 83, Your Honor.  And you heard some comments this

4    morning about what you should take away from the vote of the

5    various creditors of the company.  And this, I think, is

6    relevant to *Martin* factor four, at a minimum, whether the

7    proposed settlement is in the paramount interest of

8    creditors.  And I think the decisions have provided that we

9    look at whether the settlement is fair from the perspective

10   of the non-settlers, the parties objecting to the

11   settlement.  I believe that was the statement in both

12   *Spansion* and in *Nutraquest*.

13          And let's talk for a moment about how the parties

14   approached the settlement.  Certainly we know, of course,

15   the PHONES voted resoundingly against the settlement.  They

16   get nothing.  And that's not surprising.  What I want to

17   focus on is how the senior noteholders voted.  You heard

18   commentary about how they voted by number.  Well, let's talk

19   how they voted by amount.  And more than 1 billion out of

20   the 1.1 billion dollars that voted with respect to -- of the

21   senior notes voted in favor of the noteholder plan.  So,

22   it's not just Aurelius, Your Honor, that voted in favor of

23   the noteholder plan and against the DCL plan, it's the

24   overwhelming majority by amount of the other noteholders out

25   there.  And some of them have filed objections.  There is no

1  noteholder in their capacity as such that has filed any

2  objection to our plan and supported the DCL plan.

3          And I think it's critical to appreciate that the

4  opposition is coming from parties not out of the money

5  creditors, not equity, but from a party who is being asked

6  to accept a 33.6 percent distribution on their claim.  So,

7  it -- and that -- those parties have voted and said that's

8  an inadequate settlement of this litigation, we would rather

9  take our chances and have the claims heard or settled

10 outside of bankruptcy.  And we think that that makes this

11 case very much like two cases we cited in our papers, *Cames*

12 *v. Joiner*, and *In Re: Revell*, in which a similar, if not

13 identical, dynamic was at play.  The creditors opposing the

14 settlement were being offered under the proposed settlement

15 substantial distributions, 40 percent in one case, 69

16 percent in the other case.  They presented evidence that the

17 claims did have a substantial chance of prevailing or

18 certainly there was evidence about the potential success of

19 the claims, and both Judges said that they would weigh very

20 heavily the opposition of that particular constituency to

21 the settlement, the parties most affected by it, and that

22 they were willing to, in effect, push the money back to the

23 middle of the table and say no thanks.  And therefore, I

24 think the votes of the senior notes by amount are the most

25 important aspect of this.

1          Now, I believe Mr. Sottile said this morning that

2     he wanted you to think about the votes of the other parent

3     creditor claim class.  In the DCL brief, the post-trial

4     brief, they say that this class gets virtually the same

5     treatment as the senior notes.  I think Mr. Sottile used the

6     phrase essentially the same treatment, Your Honor.

7     Whichever word you use, it's just not accurate.  And if we

8     look at the next slide, I think it's important.

9          They have argued to you that because this class

10    voted in favor of the settlement, you should take that as an

11    indication that it's viewed as reasonable.  And we thought

12    we would think about that for a moment.  Now, the other

13    parent claims class is comprised of three groups, the swap,

14    the retiree claimants, and then a small amount of parent

15    company general unsecured.  Well, Your Honor, the swap is

16    getting 100 percent payout between the parent and the

17    subsidiary distributions under the DCL plan.  The swap is

18    owned by Oaktree, a proponent of the plan and proponent of

19    the settlement.  And Oaktree gets a full release in

20    connection with its step one and step two holdings.  So,

21    only in an alternative universe could you say that the swap

22    claims vote in favor of this plan supports the notion that

23    other parent creditors think that a 33 percent distribution

24    to the senior notes is a fair settlement.

25          Let me turn then to the retirees.  It is true

1   that the retirees under the DCL plan also get on day one a

2   33.6 percent distribution plus trust interest.  But that's

3   where the similarity with that group ends.  They entered a

4   -- they, the retirees, Your Honor, entered a settlement back

5   in April with the company in which a couple of important

6   things happened.  The first is there was an adjustment of

7   the -- what would be the allowed amount of the aggregate

8   claim of the retirees.  The debtors originally scheduled

9   their claim against the company at 82, 83 million.  I

10  believe it was 82.  And the debtors settled with the

11  retirees for a claim of 103 million.  So right away, they

12  got a 25 percent bump above what the debtors initially

13  claimed was the appropriate amount.

14          Second, the retirees get released from any estate

15  claim.  And this is principally if any of the retirees were

16  shareholders and sold their stock into the LBO or redeemed

17  it, rather, then they get released from the claims that are

18  pending against the shareholders in the committee complaint.

19          And third, and perhaps most important, before the

20  examiner report came out and before the retirees had any

21  ability to really size up whether this was a good or bad

22  settlement, they contractually bound themselves to support a

23  settlement that paid anything at or above 33 percent

24  distribution.  So, they were bound to vote in favor of the

25  plan.  Their representative on the committee was bound to

1  support the settlement because it was consistent with the

2  deal they made back in April.

3         So, when you put all those things together, they

4  don't bear any similarity to the notes, Your Honor.  And

5  their approval of the settlement should not stand in any --

6  their class's vote in favor of the DCL plan should not stand

7  in any way for any sort of countervailing judgment that

8  other similarly-situated, unsecured creditors prefer the DCL

9  plan rather than the noteholder plan.

10        Let me turn then to another topic, Your Honor.

11 And that's the aspect of the case where we heard from

12 Professor Black and Dr. Beron.  And I'll just refer to them

13 as Black and Beron so I don't stumble over my words too much

14 given the alliteration, the "B" and the "B".

15        I want to start with Professor Black.  They

16 called him to the stand.  He was their two-hour witness,

17 you'll recall.  And they called him to try to make their

18 burden of convincing you that this was a fair settlement,

19 that the numbers I showed you before, I think, that was on

20 the order of 15 to 18 percent of the total claim if the

21 litigation was allowed to proceed and was successful.  He

22 was the witness they were going to use to prove that.  We

23 don't think he helped the DCL plan proponents prove that at

24 all.

25        First, Your Honor, if we look at slide 85, and the

1   point here is, of course, we don't think he had the right

2   credentials to do what he attempted to do.  And what he did

3   was very different from what Dr. Beron did.  And I'll get to

4   that in a few moments.  He testified and conceded he's not a

5   bankruptcy expert.  The Court declined to qualify him as a

6   solvency expert or decision tree expert.  And he testified

7   he's not a fraudulent transfer expert.  So, we believe he's

8   lacking in base credentials to do what he claims he

9   attempted to do here.  On top of that, Your Honor will

10  recall that he received somewhere on the order of 15 to 20

11  legal memo from Sidley that he said was necessary to help

12  him get up to speed on the law that governed the various

13  issues here.  On top of that, he did his own legal research.

14  He testified he looked at 546(e), he looked at cases on

15  reasonably equivalent value.  He had to learn about

16  unreasonably small capital under the Code and how that has

17  been applied.  And he had never rendered an expert opinion

18  before this case on whether a settlement is reasonable,

19  whether something was or was not a fraudulent transfer.

20         And when you put all that together, Your Honor, I

21  don't think it's what courts expect from a testifying

22  expert.  I think testifying experts are supposed to come to

23  the engagement essentially preloaded with the relevant

24  expertise, and they are handed a set of facts, even

25  potentially complex facts, and they apply their preexisting

1  expertise, they apply that to the facts before them and they

2  can provide expert opinion.  He didn't have the right

3  expertise.  And he's a very smart guy.  But being a very

4  smart guy, even being a very smart law professor, as

5  Professor Black is, is not the credentials that Rule 702

6  talks about with respect to a credible expert opinion.

7           Now, courts also expect expert opinions to do

8  adequate due diligence before they finalize their opinions.

9  And leaving aside the lack of expertise, Your Honor, we

10 don't think that Professor Black even got this part of his

11 engagement right, even though he had ten to eleven months to

12 prepare his report from when he was first engaged by the

13 debtors back in April of 2010.

14          For example, he didn't review a single one of the

15 2004 deposition transcripts that the committee took.  And

16 you heard my comment a moment ago, there weren't that many

17 of them.  There were seven of them.  He didn't review the

18 first amended complaint filed by the committee against the

19 lenders before finalizing his opinion.  And the opinions he

20 purported to give this Court were impacted by those things.

21 There were depositions that would go to whether the lenders

22 acted in good faith.  And he had a view of the world as to

23 whether the lenders would qualify for a 548(c) clawback.  He

24 couldn't reach that opinion without reading those

25 depositions, Your Honor.  He had opinions about WEAR and

1    remedies and that.  But he didn't read the committee

2    complaint before reaching those opinions, Your Honor.  I

3    have not yet read any response from the DCL plan proponents

4    to address the shortcomings in his diligence or his

5    expertise.  And we think that, in itself, precludes any

6    reliance on the opinions he gave.

7              Let me turn though to some of the errors in what

8    he did, even if they could get past those problems.  I think

9    you heard Mr. Bendernagel describe this morning the nature

10   of Professor Black's exercise.  He first carved the panoply

11   of remedies, and claims, recoveries against the lenders into

12   just six scenarios.  And we saw -- strike that.  And what he

13   did within those six outcomes was assign the probability

14   that each of those would be the relevant outcome in

15   litigation within six different cases, as he called it.  And

16   I want the Court to focus on the word "assigned", and I'm

17   going to come back to it.  That's the DCL plan proponent's

18   word for what he did.  He assigned probabilities.  And

19   that's on page 22 of their post-trial brief.

20             So, what are some of the errors that would

21   preclude any reliance on Professor Black's conclusions?

22   Well, one, it was an error to assume that the world could be

23   summarized or consolidated into six avoidance -- six

24   scenarios only.  He squished together all the different

25   claims and outcomes that would get to avoidance, equitable

1   subordination, equitable disallowance, and all the different

2   fraudulent transfer scenarios, intentional and constructive,

3   into a single box in his mind.  And he omitted many outcomes

4   that were in play in the case.  They're in the committee

5   complaint.  He omitted any modeling of an outcome where WEAR

6   would apply.  He omitted any outcome where the step one

7   lenders did not get the benefit of 548(c).  This is in his

8   base modeling.

9           Now, Dr. Beron charted 48 potential outcomes of

10  the litigation, Your Honor.  And Professor Black admitted

11  that if he left out plausible scenarios, that all of his

12  numbers would be wrong.  And that's at page 206 of the trial

13  transcript.  Naturally if he left out scenarios, his

14  estimate of the reasonable settlement value would be wrong.

15  And if you look at the next slide, we think that he did.  We

16  think that Professor Black left out a world of potential

17  scenarios, 36 percent of them to be exact.  This is a chart

18  that was in Dr. Beron's rebuttal report.  He testified about

19  it during his direct.  It was not challenged in any way on

20  cross and not responded to in rebuttal.  And what it shows

21  is that, using the examiner's probabilities of the different

22  litigations, different litigation outcomes, that Professor

23  Black's six scenarios only comprise 64 percent of the

24  universe and that he has left out 36 percent.  By his own

25  admission, if he left out plausible scenarios, his numbers

1  are wrong.

2          Let me move to a second error.  And that is with

3  respect to his methodology and his canvassing of the issues.

4  You know that we objected to his report and we feel that he

5  just -- either he posited himself as a replacement examiner,

6  or as a replacement judge, or both.  And if you look at the

7  next slide, this comes from the DCL post-trial brief, Your

8  Honor, page 23, this lists some of the issues that they say

9  he had to assess as to what the outcome would be.  And if

10  you go down the list, you'll see that they're all legal

11  questions, which are the province of the Court, or solvency

12  questions, which he lacked expertise to weigh in on, or go

13  to an ultimate factual question, the fourth bullet as to

14  whether there was a good intentional fraud claim here or

15  not.

16          So, they asked him to, in a sense, look at the

17  evidence and come up with his own view of the world on all

18  of these issues.  And it's a little surprising because I

19  thought I heard them say today they're happy with the

20  examiner report and that they think they can justify the

21  settlement based on the examiner report.  Well, they asked

22  Professor Black to do the same thing.  And boy, he didn't

23  disappoint.  If you look at the next page, 88, Your Honor,

24  these are -- this is a chart that also was not challenged

25  during the trial.  And this shows Professor Black's negative

1   departures from the examiner's conclusions with regard to

2   the likely success of the claims on the issues that are

3   specified versus where he made a positive deviation, meaning

4   one that would show the claims having a higher chance.  And

5   you can see that virtually across the board, his canvassing

6   of the issues was that the claims had a far less likely

7   chance of success.  And these are all on issues, again, that

8   we don't think he has the proper expertise to speak to.

9            Well, let me come to, I think, the most damning

10  flaw in what he did and come back to the description that

11  what he did was assign probabilities.  I think the Court

12  understands now through the trial testimony that he didn't

13  do any sort of calculation of probabilities.  He did

14  everything in his head.  And he weighed things.  He balanced

15  things.  He nudged probabilities.  He judged.  And again,

16  it's an exercise he did in his head.  And if we look at

17  slide 89, this was the initial set of work papers that were

18  provided to us as the backup for his expert report prior to

19  his deposition.  And he had ten months to prepare this.  He

20  had ten months to assign these probabilities, Your Honor, to

21  go through that process in his head of weighing, and

22  nudging, and judging.  And at his deposition, which was

23  just, I think, five days before trial, before he testified,

24  I asked him a pretty simple question.  It wasn't a trick

25  question.  Within the examiner case, I asked him why he

1  assigned a higher probability to Scenario E rather than D.

2  And you saw the tape played during trial in which he kind of

3  stared at the paper for awhile and dissembled a bit about

4  the answer.  I asked a follow-up question, which you also

5  saw at trial.  And I think it's worthwhile to see his answer

6  once more.

7  (Playback:)

8  "Q    Okay.  Now if we're in the situation of income with

9  step integration, why would you be focused so much on the

10 impact of balance sheet insolvency as opposed to capital

11 adequacy or ability to pay debts?

12 A    Because we're in informal step integration and -- so

13 let's see, informal step integration is going to be

14 relatively hard to get the balance sheet insolvency, all

15 right, at step one.  So I think that's (pause).  Step one

16 insolvency D and E and -- so I know why I got to reasonably

17 unlikely, and so -- so I'm sorry for -- for muttering what's

18 now -- what I'm now not understanding is why I put so much

19 weight on D and E combined.  All right.  Why wasn't there

20 more weight on B and C."

21 (End of playback.)

22         MR. ZENSKY:  All right.  So Your Honor, you heard

23 it during trial, and saw it again.  Their lead expert, their

24 two-hour expert saying he's not understanding his own expert

25 opinion, his assignment of probabilities, Your Honor.  And

1  if you turn to the next two slides, 91 and 92, these of

2  course, we got a revised report on the eve of Professor

3  Black's testimony, and we showed him these demonstratives

4  during his testimony and the red boxes reflect all of the

5  assigned probabilities that changed in the five days between

6  his deposition and trial even though he had ten months

7  before his expert report to get it right.  And you heard Mr.

8  Bendernagel's defense that it only made a $10 million

9  difference.  Your Honor, the issue is not whether it moved

10 the needle.  It's the utter unreliability of his approach to

11 this, Your Honor, that it was all entirely subjective, and

12 if someone five days -- after having ten months can make 37

13 changes in probabilities, I don't think it matters how much

14 it moved the end result, Your Honor.  That -- this is no

15 more reliable than what he did the first time.  So we don't

16 think the Court can or should place any weight on his

17 opinion that this is a fair and appropriate settlement.  I

18 think I'm about out of time.  I would just say that Dr.

19 Beron took a totally different approach.  He did not inject

20 any subjectivity.  He took the bottom-line conclusions of

21 the examiner.  Everything that he did was there and

22 available to test his calculations to see if they were right

23 or wrong, and the DCL critique is essentially, you didn't do

24 what Black did.  Well I think we showed what was wrong with

25 what Professor Black did, what Dr. Beron did is what he's

1   done for paying clients for 20 years, which is take a

2   complex set of facts and tell them what the expected value

3   of the litigation would be if you were to go forward.

4   So unless the Court has any questions, I'm going to turn it

5   over to Mr. Friedman at this point.

6                THE COURT:  Thank you.

7                UNKNOWN:  Your Honor, how much time has

8   transpired?  Do you have a read on the time?

9                THE COURT:  Bear with me -- 3:13.  Well, someone

10  can do the math for me, but I'll tell you what my time

11  calculations are.  We started at 1:01.  Noteholder started

12  at 1:01.  We took a nine-minute recess and they concluded at

13  3:13.

14               UNKNOWN:  Little more than two hours or two hours

15  is where we are?

16               THE COURT:  About that.

17               MR. FRIEDMAN:  Good afternoon, Your Honor.  I've

18  been allotted five minutes to speak about FCC --

19  (Laughter)

20               MR. FRIEDMAN:  -- FCC issues.

21               THE COURT:  Well, what did you do wrong, Mr.

22  Friedman?

23               MR. FRIEDMAN:  I will be --

24               UNKNOWN:  He'll take the full five minutes, Your

25  Honor.

1              MR. FRIEDMAN:  I will be very brief.  I'm not

2    going to dwell on the slides that we have.  Your Honor heard

3    Debtors' Counsel today say it is very important for Tribune

4    to exit bankruptcy as soon as possible, however one of the

5    problems with the DCL Plan is that it creates issues not

6    present in the Noteholder Plan, that will delay and impede

7    FCC approval and Tribune's emergence from bankruptcy.  The

8    Noteholders have made sure that under their plan,

9    reorganized Tribune will have no attributable owners with

10   conflicting media ownership.  The DCL FCC expert agrees that

11   the Noteholder Plan will not cause a delay in FCC approval.

12             In contrast, the DCL Plan will inevitably cause

13   delay because at its core the DCL Plan transfers control of

14   Tribune to creditors with conflicting media interests,

15   including JP Morgan and Angelo Gordon.  Under the DCL Plan,

16   as summarized on slide 1, JP Morgan and Angelo Gordon will

17   each have more than five percent of the voting equity in

18   reorganized Tribune and will each have director designation

19   rights.  They will not have these rights under the

20   Noteholder Plan.

21             Because the plans are different, the FCC issues

22   are different, as summarized on slide 2.  If the DCL Plan is

23   confirmed, the FCC will consider JP Morgan's and Angelo

24   Gordon's other media interests in reviewing Tribune's

25   application.  This is because JP Morgan and Angelo Gordon

1    will be attributable owners of reorganized Tribune.  As

2    explained by the DCL's own FCC expert, the FCC will review

3    media interests of "reorganized Tribune and its attributable

4    owners."  In contrast, if the Noteholder Plan is confirmed,

5    the FCC will not have any reason to consider other media

6    interests of JP Morgan and Angelo Gordon.  In fact, under

7    the Noteholder Plan there will not be any attributable

8    owners with conflicting media interests.  There's no dispute

9    that JP Morgan and Angelo Gordon have substantial interests

10   in major media companies in Tribune markets.  There is also

11   no dispute that if the interests of JP Morgan and Angelo

12   Gordon, as we have summarized in slides 3 and 4 are

13   attributable, the FCC rules are violated as shown on these

14   charts.  That would mean 15 different FCC rule violations in

15   ten different Tribune markets.  We have explained at trial

16   and in our papers the reasons these interests create

17   violations of FCC rules.  We have also explained and

18   summarized on slide 5, that even if some or all of these

19   interests do not create violations, the FCC will consider

20   them in its review of Tribune's waiver request.  There is no

21   dispute that in the waiver context the FCC can consider any

22   metric, but the DCL expert testified he is not aware of

23   waiver cases in which the FCC considered non-attributable

24   interests.  In our papers however, we cite cases in which

25   the FCC did consider non-attributable interests in

1    evaluating waiver requests.  Recognizing at least the

2    potential for significant FCC issues created by their plan,

3    the DCL proponents argue that the DCL Plan contains

4    procedures to address any FCC issues that arise.  In fact,

5    the DCL Plan procedures, which we have excerpted on slide 6,

6    will cause regulatory delay rather than avoid it.  Instead

7    of empowering Tribune to initiate prompt remedial action,

8    the DCL Plan procedures leave Tribune at the mercy of JP

9    Morgan and Angelo Gordon, who are obviously reluctant to

10   relinquish their influence and control at Tribune.

11           These procedures are not even triggered until two

12   things happen.  First, comments from the FCC and second,

13   both Tribune and the Creditor Proponents determine that the

14   required FCC approval will not be obtained due to Creditor

15   Proponent director designation rights.  Even then, Tribune

16   does not have the power to take corrective action.  Rather,

17   the DCL Plan Proponents -- the DCL Plan procedures provide

18   that the Creditor Proponents will have sole discretion to

19   determine how they want to respond to FCC comments.  The DCL

20   Plan goes on to say that such action must be adequate to

21   obtain FCC approval, but does not say who determines if it

22   is adequate or when.  Moreover, if director designation

23   rights are ultimately relinquished, the DCL Plan provides

24   that the relinquishing Creditor obtains a nomination right

25   that appears to be effectively a designation right and a

1    subsequent right to regain designation rights, all of which

2    is a formula for regulatory delay.  The Noteholders' FCC

3    expert has explained in his report and testified in this

4    courtroom that in his opinion, based on decades of

5    experience with the FCC and the judgment that comes from

6    that experience, the issues created by the JP Morgan, Angelo

7    Gordon media interests under the DCL Plan will add six to

8    eight months to the FCC review process of the DCL Plan.  The

9    Noteholder Plan avoids those issues and that delay.  The FCC

10   issues presented at trial and discussed today are one of the

11   reasons the DCL Plan is not feasible and should not be

12   confirmed and the Noteholder Plan should be confirmed.

13   Thank you, Your Honor.

14              THE COURT:  Thank you.

15              MR. GOLDEN:  Good morning -- good afternoon, Your

16   Honor, it's a long day.  Daniel Golden, Akin, Gump, Strauss,

17   Hauer, and Feld, Counselor for Aurelius Capital Management

18   and the other Noteholder Plan Proponents.  Your Honor, I

19   rise to spend a few minutes to discuss the virtues of the

20   Noteholder Plan and why it should be confirmed.

21              At its essence, the Noteholder Plan accomplishes

22   the fundamental objectives of reorganization and in many

23   ways is identical, except in one key respect, to the DCL

24   Plan.  And turning to slide 98, Your Honor, you'll see in

25   the box the Noteholder Plan incorporates exactly the same

1    debt, capital, and corporate structure as the DCL Plan.  The

2    Noteholder Plan contemplates the same management team and

3    ongoing business operations and both the Noteholder Plan and

4    the DCL Plan contemplate the establishment of litigation

5    trusts and creditor trusts to prosecute the fraudulent

6    conveyance actions post-confirmation.

7            This last point, there is not an insignificant

8    aside I'd like to point out to the Court.  The DCL Plan

9    expressly contemplates that this Court, Your Honor, will

10    litigate the remaining LBO causes of action with all of the

11    attendant costs and uses of judicial resources, but they

12    will leave out from that litigation the single most valuable

13    set of causes of action, those against the LBO Lenders.  We

14    don't think that that makes any sense in terms of use of

15    resources and use of the Court's time.

16            Despite the fact that the Debtors Plan allows the

17    Debtor -- I'm sorry -- the Noteholder Plan allows the

18    Debtors to emerge quickly and is substantially similar to

19    the DCL Plan in terms of the impact of the reorganized

20    Debtor, the DCL's attempt to poison the well regarding the

21    virtues of the Noteholder Plan by complaining that the

22    ultimate creditor entitlement and allocation of post-

23    reorganized equity is not finally determined as of the

24    effective date under the Noteholder Plan.  While in some

25    respects, Your Honor, this is valid criticism, it is our

1  view and is a view we think that the Court can readily

2  acknowledge, that the Debtors and the Creditors Committee

3  have only themselves to blame for that situation when they

4  chose expediency over resolve and chose to settle the most

5  important LBO causes of action out from under the two and a

6  half billion dollars worth of pre-LBO Noteholders.  By

7  necessity, given the reality that the largest of the Senior

8  Lenders and the Debtors and the Creditors Committee

9  effectively froze out the pre-LBO Noteholders from the

10  settlement and plan process leading to the DCL Plan, the

11  Noteholders had no alternative, but to promulgate an

12  alternative plan that had three fundamental goals and those

13  goals are seen on page -- on slide 99, Your Honor.

14          First, the Noteholder Plan allows the Debtors to

15  emerge from Chapter 11 on an expedited basis.  Second, the

16  Noteholder retains the post -- for a post-effective date

17  adjudication the estate's most valuable causes of action.

18  And third and this is the key difference here, the

19  Noteholder Plan reserves in a distribution trust only that

20  amount of the reorganized Debtors' distributable enterprise

21  value, sometimes we refer to that as DEV, in the form of

22  cash, new debt, and equity necessary to pay the pre-LBO

23  Creditors in full and to create a reserve for the bridge

24  lenders and will allow the balance of the Debtors' DEV to be

25  distributed upon the effective date.

1           Your Honor, it's worth noting that under this

2   reserve structure and utilizing the Debtors' enterprise

3   valuation of 6.75 billion, which you've heard testimony that

4   the Noteholders believe is substantially undervalued, this

5   reserve structure will allow between 45 to 51 percent of the

6   Debtors' total DEV to be distributed to creditors on the

7   effective date of the Noteholder Plan and would also allow

8   between 70 to 80 percent of the post-reorganized equity to

9   likewise be distributed upon the effective date of the

10  Noteholder Plan and at higher valuations even more of the

11  Debtors' DEV and post-reorganized equity would be allowed to

12  be distributed to creditors upon the effective date of the

13  alternative Noteholder Plan.

14          Your Honor, you've heard the testimony regarding

15  the pure purity plan.  We think it's actually kind of ironic

16  that the DCL's are now contesting that the Noteholder Plan

17  would create a true and viable restructuring opportunity for

18  the Debtors' businesses.  As Your Honor may recall from the

19  trial testimony, the concept of a pure purity plan was on

20  the Debtors' radar screen long before the filing of the

21  first DCL Plan and is set forth in slide number 100, Your

22  Honor, up on the board.  You can see what Mr. Liebentritt,

23  the Debtors' chief restructuring officer, had to say about a

24  pure purity plan.  This is a pure purity plan -- there is a

25  pure purity plan possibility as a fallback to plan B.  We

1    just started working out the details and it appears as

2    though we might be able to get most, if not all of the

3    company out of bankruptcy without resolving any of the LBO

4    claims, but the banks are not yet too interested in pure

5    purity.  And similarly the testimony of Mr. Kurtz where he

6    says the pure purity plan is a pure holdback plan.  A

7    sufficient amount of value is placed in a litigation trust

8    or some form of trust to satisfy the obligations of pre-LBO

9    creditors and the company would emerge from bankruptcy with

10   that value in the litigation trust.

11            It's also clear from the testimony from the

12   Debtors representatives that they thought a pure purity plan

13   was a viable restructuring alternative.  Turning again to

14   the testimony of Mr. Kurtz in response to a question from

15   Mr. Bendernagel, he said well, the Whittman Plan then,

16   referring to that as the pure purity plan, could work if the

17   Lenders accepted it.  Similarly, the testimony of Ms.

18   Wilderotter, who is a member of the board of directors and a

19   member of this Special Committee and this is actually a

20   video clip that was played during the trial where she

21   testified we always looked at a pure -- at a purity plan as

22   an option and continuing, we always knew it was a potential

23   course.  And finally, back to the Don Liebentritt email of

24   September 23, at the bottom where he says if we get signals

25   that even after a failed mediation Carey may not be inclined

1   to take the claims in part, we may need to consider

2   seriously a pure purity approach.

3            Your Honor, but don't just take the

4   acknowledgments from the Debtors as to whether this pure

5   purity plan actually works in terms of a restructuring

6   alternative from the Debtors.  Let's see what the credit

7   agreement lenders had to say six months prior to Mr.

8   Liebentritt's memo and this was in a pleading that the

9   credit agreement lenders filed in connection with seeking

10  termination of Debtors' exclusivity where they said that the

11  credit agreement lenders are prepared to file an alternative

12  plan that provides for the alleged fraudulent conveyance and

13  related claims to be adjudicated for the benefit of

14  unsecured creditors, continuing on, while enabling the

15  debtors to exit bankruptcy rapidly and to begin the process

16  of healing the wounds that these cases have created.

17           Your Honor, I don't think it can be fairly or

18  appropriately said that there's any real controversy as to

19  whether the Noteholder Plan, which is in fact exactly the

20  pure purity plan that you heard the Debtors' representatives

21  describing, would allow these Tribune Debtors to

22  expeditiously exit from Chapter 11 and in the words of the

23  credit agreement lenders, begin the process of healing the

24  wounds that these cases have caused while at the same time

25  preserving prosecution of all the LBO causes of action, so

1  as to allow creditors to ultimately receive their rightful

2  and legal recoveries.

3          And Your Honor, I had a few concluding remarks,

4  but I want to try and preserve some amount of time for

5  rebuttal, but I do want to deal with one of the comments

6  made by Mr. Conlan this morning.  He indicated that he

7  believed or it was the Debtors' view that the Debtors simply

8  could not cram down the pure purity plan on the credit

9  agreement lenders.  He didn't really expand on that, but I

10  presume what he's talking about is the 1129(a)(10) impaired

11  consenting class issue.  Your Honor, that was argued

12  extensively by both sides in the briefs.  It was the subject

13  of argument at the April 14 hearing.  I just want to put up

14  on the screen one last slide, which is every single case

15  that has actually litigated this issue as to whether in a

16  joint plan context you need -- the 1129(a)(10) requirement

17  is a per debtor or a per plan requirement and every single

18  case that has litigated this issue agrees with the

19  Noteholder's proposition that it's a per plan and not a per

20  debtor requirement.  And so we significantly disagree with

21  the assertion by Mr. Conlan that this -- that the Noteholder

22  Plan cannot be and should not be crammed down on the Senior

23  Lenders.  And Your Honor, with that we will rest to try and

24  preserve some amount of time for rebuttal and so thank you.

25          THE COURT:  Thank you.

1          MR. SOTTILE:  Your Honor, would it be possible

2    for us to take a brief break so that we could organize the

3    rebuttal from the DCL side?

4          THE COURT:  All right.  What's -- let me ask how

5    much time does each side think they have left?

6          MR. SOTTILE:  Your Honor, by our count we have a

7    total of 50 minutes left.  I don't anticipate we would use

8    all of that.

9          MR. ZENSKY:  Your Honor, David Zensky.  I believe

10   we have eight to nine minutes, something in that order.

11         THE COURT:  Okay.  We'll take a ten-minute break.

12   (Recess from 3:32 p.m. to 3:42 p.m.)

13         MR. BENNETT:  If we could give back control of

14   the screen to the Noteholder side I would appreciate it and

15   if I could, could I have slide number 98 put on the screen?

16   Your Honor, Bruce Bennett for the DCL proponent group for

17   these purposes and I think I'm going to have the first word

18   and the last word.

19         I started with chart 98 because it is important

20   to focus on the differences in the Noteholders Plan and

21   regrettably this chart is a little bit incomplete.  I think

22   the first point we should talk about is the fact that the

23   Noteholder Plan we all discovered when we read their

24   pleadings implemented, that's their word I think, the inter-

25   company claims settlement that the Debtors proposed in a

1  rather unique and interesting way.  First of all, it didn't

2  implement it in accordance with its terms.  It basically

3  said that certain inter-company claims would be enforced,

4  that is those are the ones that benefit them, and certain

5  inter-company claims would be disregarded.  Those were the

6  inter-company claims that didn't benefit the Noteholders.

7  And I think a really important point concerning

8  confirmability of their plan versus ours is that while there

9  was extensive evidence presented particularly by Mr.

10 Whittman with respect to the reasonableness of the inter-

11 company claims settlement that the Debtors proposed and that

12 we thought everyone agreed to and no one opposed and that

13 evidence was clearly adequate to support it, no one during

14 the confirmation hearing entered any evidence into the

15 record concerning the inter-company claims settlement as

16 adopted or as they say they adopted it with these rather

17 substantial and absolutely material modifications.

18         So one item for the chart is inter claims

19 settlement adopted "differently" or implemented differently.

20 No proof as to reasonableness of the revisions or the

21 settlement as modified and that I would submit is enough

22 reason to not confirm the Noteholder Plan.

23         The second part of the Noteholder Plan that's

24 very materially different is that it contains a release of

25 subsidiary guarantees from non-Debtor subsidiaries that run

1  in favor of the credit agreement lenders.  Not a small

2  issue.  Not the kind of third party releases ever approved

3  by the cases in the Third Circuit.  We have briefed this.  I

4  don't have the time to go through them.  These are very

5  clear contractual guarantees running to creditors who

6  oppose, do not accept the Noteholder Plan, who are not being

7  paid in full.  In short, they fit into none of the possible

8  exception areas that have been identified by the cases for

9  disrupting non-Debtor guarantees running to commercial

10 creditors.  These are -- this is not litigation claims.

11 This is clear, unequivocal written guarantees and I would

12 point out that to the -- that these have been sitting there

13 for four years now, more than four years, and no one has

14 done anything about them because there are also good reasons

15 why no one is going to do anything about them.  They are

16 binding and enforceable.  Their plan can't upset them.

17          The next point I'd make about the chart is it

18 fails to note that there's one thing that's exactly the same

19 about both plans that the Noteholders seem now to be

20 critical of and that is both plans implement the retiree

21 settlement.  Never been a controversy about any aspect of it

22 before and the retiree -- the settling retirees of course

23 get those benefits whichever plan they support.  So I'm not

24 sure what point was ultimately coming as a result of that,

25 but the reality is that the retirees always could look at

1 the plans as sitting on an even footing with respect to the

2 benefits they expected to get, except for the distribution

3 amount.

4          Lastly for this part, 1129(a)(10), you saw the

5 screen shot of the cases where 1129(a)(10) has been

6 interpreted as being a plan based rather than debtor based

7 statute.  Well, first of all as I said in the connection

8 with the fraudulent transfer provisions of the Bankruptcy

9 Code, the whole code, with very few exceptions and this one

10 isn't, works debtor by debtor and that provision works

11 debtor by debtor, too, by virtue of the fact that the code,

12 the whole thing works debtor by debtor.  But more

13 importantly in this case we talked about the fact that 90

14 percent of the assets, 90 percent of the action in this case

15 is at the subsidiary level.  It is at that 90 percent where

16 there is no impaired accepting classes.  When they say to

17 you we have an impaired accepting class that we want to

18 count for purposes of every plan in this case, it is an

19 impaired accepting class and a debtor that has less than 10

20 percent of the assets, less than 10 percent of the action.

21          I'm not in favor of anything that the Courts have

22 -- that the four courts have been doing with 1129(a)(10)

23 because I think it makes no sense.  If we really do believe

24 that there has to be an impaired accepting class that should

25 be a debtor by debtor requirement because it's intended to

1  make sure that no plan by no entity and we care about

2  entities here because we have *Owens Corning*, is supposed to

3  be completely nonconsensual.  That's the congressional

4  policy.  And so particularly in circumstances where we're

5  talking about 80 percent -- excuse me -- 90 percent of the

6  throwaway to the case, not a single impaired accepting

7  class, we can't go find one in what is in asset value a

8  very, very small part of the case.  We start doing that,

9  we're going to have silly little subsidiaries created to get

10  by 1129(a)(10) or multiple filings so there's a little

11  subsidiary to make that requirement met and then the

12  requirement is going to be gone from the code.

13         And finally I don't think Your Honor needs to be

14  reminded about this because Mr. LeMay did such a good job of

15  describing the *Aurelius* position on 1129(a)(10) before Your

16  Honor in *Abitibi*, when they're acting as a client advancing

17  their economic interest, it's a little too soon for them to

18  be changing and frankly it would be --

19         THE COURT:  What's the appropriate waiting

20  period, Mr. Bennett?

21  (Laughter)

22         MR. BENNETT:  I was about to say frankly I don't

23  think there's any waiting period, but I'm pretty sure it had

24  -- if there is a waiting period it hasn't passed yet.  I'm

25  going to surrender the podium for awhile and come back soon.

1          THE COURT:  Thank you.

2          MR. SOTTILE:  Your Honor, James Sottile of

3   Zuckerman Spaeder, Special Counsel to the Committee.  Your

4   Honor, as I think I suggested was the case in opening, what

5   you have seen in the Noteholders' arguments is that when

6   they come to the examiner's conclusions they either ignore

7   them altogether and pretend they don't exist or they tell

8   you the examiner got it wrong, he overlooked stuff, he was

9   incomplete, he erred, so forth and so on.  Your Honor, we

10  submit that the right way for this Court to go about

11  evaluating the settlement is to take what the parties have

12  told you is a fair independent thorough evaluation by the

13  examiner as a whole and when you do, Your Honor, as we

14  believe we've demonstrated throughout the course of these

15  hearings, you're going to conclude the DCL Plan settlement

16  is a reasonable one.

17          Let me touch on a couple of points where Mr.

18  Qureshi dealt with issues that the examiner also dealt with.

19  And let me start with the issue of the February 2007

20  financial projections, which he spent a fair amount of time

21  on.  Now there he did point out what the examiner's

22  conclusion was by looking at one part of the report.  Let me

23  read to you from a different part of the report.  On page

24  219 of Volume II of the examiner's report, here's what the

25  examiner said about those projections.  The examiner does

1    not accept the contention advanced by certain parties,

2    including predecessors-in-interest to the Noteholder,

3    Centerbridge, that in view of what was known or

4    ascertainable as of the step one financing closing date, the

5    February 2007 projections were unreasonable, particularly in

6    comparison to contemporary analyst expectations.  So the

7    examiner just disagrees with the Noteholders on this point.

8    Now maybe that's because the examiner didn't see all the

9    evidence.  I think you may have had some implicit suggestion

10   in the Noteholder's presentation of that fact, but Your

11   Honor, that simply isn't the case.  The examiner had before

12   him every bit of evidence that you saw argued as to why the

13   financial projections were unreliable and unreasonable for

14   anyone to use in evaluating solvency.

15            Let me take just a couple of examples.  If you

16   look at Volume 1 of the examiner's report and I would start

17   on page 211, Your Honor, you will see something that I think

18   will look pretty familiar and let me just point it out to

19   the Court.  You remember being shown I think an email from

20   Mr. Bigelow saying, if I read this right, if we're off plan

21   or rather to Mr. Bigelow, if we're off plan by two percent,

22   we have no value in the ESOP for five years and then a

23   response from Mr. Bigelow.  That's quoted on page 211 of the

24   examiner's report when he's describing the evidence relating

25   to the financial projections that was argued to him by

1    Centerbridge and other parties as a reason for not relying

2    on the financial projections.

3              You will also see in the same section of the

4    examiner's report if you turn to page 212, a description of

5    his recognition that management had the monthly projections

6    -- had the monthly actual financial results before the step

7    one closing and the differences between those actual results

8    and the projections, which the examiner characterized as not

9    material for the first couple of months, material in March

10   and April, but the examiner's view as expressed in his

11   report is that the differences were not enough to justify

12   revising the projections given that they covered a

13   relatively long time period.

14             If you turn to page 214 of Volume 1 of the

15   examiner's report you're going to see another document that

16   looks familiar from Mr. Qureshi's argument.  That's an April

17   30, 2007 email from Mr. Knapp to Mr. Litman and Mr. Bigelow.

18   You may remember the words another stellar week in April,

19   Your Honor.  That email was quoted in full on page 214 of

20   Volume 1 of the examiner's report.

21             In addition, Your Honor, the examiner sets forth

22   in his report how the projections were developed.  He talks

23   about that they're ground up from the operating businesses.

24   He talks about how these projections were lower than 2006.

25   You may remember Mr. Qureshi laying some emphasis on maybe

1  the examiner overlooked the historical comparisons.  No, in

2  fact he directly cited the historical comparisons in the

3  course of his discussion of the financial projections.

4          In short, the bottom line is the examiner looked

5  at all the evidence that was cited to you and he disagreed

6  with the Noteholders.  He concluded that in his judgment,

7  giving weight to all of that evidence, he was not persuaded

8  by the arguments, that you could not reasonably rely upon

9  the financial projections in February of 2007.

10          Second point I want to touch on with respect to

11  the examiner's report, that's the issue of capital adequacy

12  at step one.  This is a situation where Mr. Qureshi ignored

13  the examiner's conclusion.  He told you what everybody

14  thought about capital -- step one, except for what the

15  examiner thought about that issue.  If you look at Volume 2

16  of the examiner's report at page 211, you'll see what the

17  examiner thought about the issue and he concluded that it's

18  reasonably likely that a court would find Tribune and its

19  guarantor subsidiaries had adequate capital at step one,

20  giving effect to the step two debt.  Now maybe he didn't pay

21  enough attention to the underlying evidence.  Maybe that's

22  the Noteholder's argument.  Well, Your Honor, that's clearly

23  not true if you look at Volume 2 of the examiner's report.

24  Mr. Qureshi laid some stress on the importance of looking at

25  downside cases when you're evaluating capital adequacy.  If

1  you look at page 214 of Volume 2 of the examiner's report,

2  the examiner says exactly the same thing.  You need to look

3  at downside cases and I did and he identified six downside

4  cases that his financial advisor evaluated and he tells us

5  on page 218 of Volume 2 that there's only one of those

6  downside cases that shows inadequate capital, that's the S&P

7  case that he refers to, and he tells you that he did not

8  give great credence to that because he thought the downside

9  assumptions there were aggressive, in his words.

10         In short, Your Honor, on this issue, on the

11  question of the financial projections, on virtually every

12  important issue what the Noteholders have argued today is

13  exactly what they argued in their post-hearing briefs, that

14  the examiner got it wrong and where they don't expressly

15  confront the examiner, they just ignore his conclusions.  If

16  instead this Court takes, as we submit the Court should, the

17  examiner's report as a guideline that the parties and this

18  Court could fairly use to evaluate the merits of the claims

19  this Court, we submit, will conclude that the DCL Plan

20  settlement is a reasonable one.

21         Your Honor, we also heard some effort, although I

22  would submit a relatively limited one, to go back to Dr.

23  Beron and to say that no, we don't really run away from the

24  examiner's report because we do in fact have Dr. Beron and

25  he took everything from the examiner's report, good and bad,

1  and he comes up with a huge number for the value of the

2  claims.  I think Mr. Zensky said that our criticism of Dr.

3  Beron is that he didn't do what Professor Black did.  Your

4  Honor, with respect that's simply not remotely what our

5  criticism of Dr. Beron is.  Our criticism is that he didn't

6  do what any competent, reliable expert would do.  He knew

7  the connections between the issues he was looking at were

8  critical to the results, but he conceded he didn't know what

9  the examiner thought about those connections and his

10  assumption that there weren't any connections is just

11  plainly wrong as he would have known if he knew anything

12  about fraudulent conveyance litigation.  And Your Honor, he

13  did something else that no reliable expert we submit would

14  do.  He took Counsel's reading of the report over his own,

15  so the opinion you got on one significant issue and others

16  that we notice in our briefs, was Counsel's opinion, not

17  his.  That's not what responsible, reliable experts do, Your

18  Honor.  And finally, we know that Dr. Beron didn't read more

19  than 90 percent of the report that he was trying to model

20  and I've heard a lot of arguments about why.  It's enough to

21  read the headline conclusions.  Your Honor, I submit that no

22  expert testifying in a case of this magnitude and trying to

23  determine what an independent third party's report means

24  about the value of the claims is going to read less than 10

25  percent of it and say I know enough to inform the Court and

1  for the Court to rely upon my judgment.

2            Your Honor, let me touch briefly on two other

3  issues.  Mr. Zensky spoke about WEAR and he said that I was

4  a little sheepish he thought in argument in conceding that

5  we had in fact asserted estoppel claims that might fall

6  under the WEAR acronym.  Your Honor, I'm not sheepish about

7  it.  I'm proud of it.  That's our job.  Our job was to

8  investigate and assert claims that we believe were

9  potentially viable.  If we could state a claim, we believed

10 that it was incumbent upon us to do so and had some factual

11 support for it.  But Your Honor, I don't confuse the ability

12 to state a claim in a pleading with a substantial chance of

13 prevailing on a theory that as I believe you've heard

14 repeatedly here and you're going to hear a little more about

15 this from Mr. Bennett, where you are asking the Court to in

16 fact make up an additional equitable remedy beyond the

17 traditional ones that have been used in connection with

18 leveraged buyouts, equitable estoppel, equitable

19 subordination, and that doesn't require the elements of

20 those traditional remedies.  And Your Honor, we would argue

21 for that in litigation, but I start from the proposition

22 that it's not easy to persuade courts to develop new

23 equitable remedies that don't require proof of the elements

24 that the traditional remedies do.  You might succeed, Your

25 Honor, but that's an uphill fight every time you take it.

1           Your Honor, finally let me touch very briefly on

2    the issue that Mr. Zensky raised about the votes of the

3    retiree claimants and the swap claim and why those don't

4    really mean anything.  I agree with him as to the swap

5    claim.  I did not mean to suggest that that should be taken

6    as indicative of the position of similarly situated

7    creditors to Noteholders.  As for retires, I disagree with

8    Mr. Zensky.  They do get the same 33.6 cents on the dollar

9    that the Noteholders get.  They would get much more if they

10   were to accept the view of the Noteholders that these claims

11   are much more valuable than that.  They have every incentive

12   if they thought the Noteholders were right and the DCL Plan

13   settlement was settling -- selling them short in terms of

14   value, to reject the plan to argue for a higher value.  And

15   Mr. Zensky says well, maybe so, but they're different

16   because they settled an issue about the total amount of

17   their claims, they got a release in their capacity as

18   shareholders, and so they're really not similarly situated.

19   Your Honor, I submit that's just not right.  It's true that

20   they settled a dispute over the amount of their claims and

21   got a limited shareholder release in response, but unlike

22   Mr. Zensky's characterization of that as the claim -- amount

23   of the claim just went up from where the Debtors had put it,

24   in fact the settled amount of the claim is substantially

25   below what the retirees thought the right number was.  It

1   was a compromise and as part of that compromise there was a

2   limited release of shareholder claims.  Now Mr. Zensky told

3   you that the retirees agreed and were bound, contractually

4   bound I think he said, to support the DCL Plan.  Your Honor,

5   that's simply not what the relevant agreement says.  What it

6   says is that the retiree claimants agreed that they would

7   not object to a plan that gave them the 33.6 cent treatment

8   that's described therein.  It's a very different thing from

9   being contractually bound to do it and Your Honor, with

10  respect to the suggestion that the committee representative,

11  Mr. Nease, would somehow abdicate his fiduciary

12  responsibilities and not fairly evaluate the claims, I

13  submit there's absolutely no evidence to support such a

14  naked assertion as you heard from Mr. Zensky about his

15  conduct.

16          In short, Your Honor, just to sum it up we ask

17  you to look at the examiner's report in the round.

18  Everybody has told you it's something you can and should

19  rely on and we submit that when you do and you measure it up

20  against the DCL settlement, you'll conclude that it's a

21  reasonable settlement of risky claims that takes into

22  account the chances of a big win, but the hurdles that a big

23  win faces and the reality that the really strong claim is

24  step two.  Unless you prevail and wear or other arguments

25  that have their own hurdles, it doesn't get you much.  Thank

1   you, Your Honor.

2            MR. BERNSTEIN:   Your Honor, Don Bernstein from

3   Davis Polk on behalf of JP Morgan.   I guess in a way I've

4   come up here to inject a little more cynicism than we've

5   already had, which has been plenty, into these proceedings.

6   Mr. Sottile just talked about again the fact that the

7   examiner report was ignored with respect to the projections

8   in the presentation coming from the Noteholders.   There were

9   some other things that were ignored or glossed over and one

10  reason I get up is that JP Morgan is one of the DCL

11  Proponents who's been here since the beginning, since the

12  transaction occurred, and it gives us a perspective on some

13  of these assertions of improprieties.   An example of this is

14  the Persily deposition that was played back.   Ms. Persily is

15  a Citibank officer and she was asked about the projections

16  and you heard what she had to say, but what you didn't hear

17  is what she also had to say is we always took a haircut on a

18  company's projections.   We do that with every company.   It

19  wasn't unique to Tribune.   We never necessarily believe

20  management's projections.   We always come up with our own

21  set.   That's at page 81 of her deposition.   Of course they

22  did that.   It's -- in fact the whole thrust of the use of

23  that deposition was that the Lenders were just rolling over

24  despite the fact they knew that the projections were wrong.

25  In fact, it was just the opposite.   They were doing their

1  homework.  They did a good job in evaluating this credit.

2  They may have been entirely mistaken and I'll get to that in

3  a minute and that's why we're here, but they actually did

4  their homework, they weren't rolling over, they were

5  evaluating the projections, they were recasting the

6  projections, they were doing everything they should have

7  done as good credit analysts.  And so this was not a

8  situation as suggested by the Noteholders where there was

9  any acquiescence in any inaccurate projections.

10          Another example of you know telling part of the

11  story is the whole discussion of the Debtor being in control

12  of the negotiations.  Well, I think we've heard before that

13  the Debtor says that they're an honest broker, that they

14  weren't in control of the negotiations.  We also know and

15  there was no mention of this that the negotiation of the

16  ultimate settlement here as opposed to the Centerbridge

17  settlement in April was under the auspices of a mediation.

18  We didn't hear the word mediation in the presentation coming

19  from the Noteholders and that puts another cast on the

20  situation.  And let me describe what I see happening here.

21  I see the first thing this process objection, which I'm not

22  going to go into and I know both the Noteholders' and the

23  Court's views of that, but the Noteholders clearly are

24  making this process objection for a reason.  It's a little

25  hard to make a credible argument that the process was flawed

1    in connection with the mediation because of Judge Gross'

2    involvement.  So they are necessarily making an uphill

3    argument and why?  The question is why?  And one reason is

4    they need because of the difficulty on the merits on step

5    one constructive fraudulent conveyance, to be able to rely

6    on some other argument.  And that is where these arguments

7    about improprieties in connection with step one come in, the

8    whole idea contrary to the examiner's report that there

9    might have been intentional fraud in connection with step

10    one comes in, and you've got to balance it because if people

11    ended up with a fair settlement at the end, then they're not

12    trying to cover up an intentional fraud that would have

13    gotten the Noteholders paid in full.  So you've got to make

14    the argument that the process was somehow flawed because if

15    you don't make that argument, you undercut all of these

16    arguments about improper conduct at the beginning.  And so

17    that's what makes the connection.  They're making this very

18    implausible argument about the process because if they don't

19    make that argument, they can't make these other arguments

20    about how there were flaws in conduct at the beginning.

21          So I would leave that with the Court and then you

22    ask yourself well, why do they need to make these arguments?

23    Well, if the DCL Plan gets confirmed and the company emerges

24    from bankruptcy, we have Mr. Gropper's testimony that that

25    is not an optimal settlement posture from his point of view.

1  He's dying and what he really wants because he thinks it's

2  going to engender a settlement, is he wants no result here.

3  He's not -- you know he would like to see a result where

4  things -- the process gets prolonged and he actually said in

5  his deposition that he thinks that that would induce a

6  richer settlement if that occurred.

7            Well, two things about that.  First of all, that

8  sort of settlement delayed by the process has nothing to do

9  with the merits.  It has to do simply with the inability to

10 get a result because -- well, as I say a part of this story,

11 leaving this conundrum of doubt.  And once you're in that

12 posture, then Mr. Gropper thinks he's got leverage for a

13 settlement and a better settlement than he's got now.  Well,

14 that is not the way this should work.  It should work based

15 on merits.  Everything that the DCL Proponents have put

16 forward is based on the examiner report.  The examiner did a

17 thorough analysis of the merits.  It was an independent

18 examiner and that should be the basis of the Decision here,

19 whichever way it goes.  And we shouldn't have objections to

20 process simply because not that the process wasn't bad, but

21 that the outcome of the process is not something that the

22 objectors like and I think that's what you've got here, Your

23 Honor.  I think the objection to the process has two

24 components.  It's a component relating to what happened at

25 the outset and the inability to make those arguments, unless

1  you object to the process and it has a component of we've

2  got to object to the process because we don't like the

3  outcome.  It has nothing to do with the process itself, Your

4  Honor.  And for those reasons and for all the other reasons

5  the DCL Proponents have suggested, we think that the Plan

6  here should be approved, the DCL Plan, and consummate.

7  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          MR. BENDERNAGLE:  Your Honor, Jim Bendernagel for

10 the Debtors.  I have a couple of topics I'd like to discuss.

11 I want to back up for a second and visit the whole issue of

12 the forecast and just ask the Court in looking through this

13 huge deck of material that Mr. Qureshi provided to you, to

14 realize that he hasn't presented the full side of the story.

15 And just to give an example, in slides 15 and 16, slide 15

16 is a picture of Mr. Bellack and they played a quote in which

17 Mr. Bellack said that it was the expectation that LA Times

18 historic publishing revenue would decline.  And then he

19 turned to paragraph 16 and showed this and suggested that

20 this somehow was related to what Mr. Bellack had said.  The

21 fact of the matter is this relates to EBITDA, not to revenue

22 and secondly it's whole company, not the publishing part of

23 the business.  The fact of the matter is in that forecast

24 the historic publishing revenues were expected to decline.

25          Secondly, Mr. Sottile pointed out to you that the

1   examiner discussed the financials quite a bit.  Mr. Qureshi

2   suggested the opposite.  I just recommend to you that pages

3   73 to page 96 of Volume 1 of the examiner report, as well as

4   pages starting on 210 and running through -- I'm sorry, Your

5   Honor -- 221 are the background sections where he talks

6   about the forecast and the prior performance and then in

7   Volume 2 he addresses this issue in a couple of different

8   places.  One is on 212 and 213 where Mr. Qureshi pointed

9   you, but also on page 25 and he says the examiner does not

10  conclude that Tribune unreasonably continued to rely on the

11  February 2007 projections up to and including the closing of

12  step one.  Some evidence additionally supports the view that

13  Tribune's entities management believed that various cost-

14  cutting initiatives then underway would counterbalance the

15  decline in revenue.  In his canvassing of the issues, there

16  was no mention of that.  Yet that was discussed extensively

17  or it was discussed with the Lenders at the April 26 meeting

18  in 2007.  I'm not suggesting that necessarily Mr. Qureshi --

19  I understand he's in a rush, but the idea that the story is

20  quite as one-sided as he suggests just doesn't hold water.

21          The second issue that I'd like to comment on just

22  briefly is Mr. Black.  In some respects I felt like we were

23  talking about two Mr. Blacks during the presentation because

24  for the first half he seemed to be their witness and then

25  all of a sudden he was unqualified.  You can't have it both

1    ways.  We believe Mr. Black was qualified and that he was

2    familiar -- fully familiar with the facts that he needed to

3    be to render his opinions.  This chart, which is chart 86,

4    that identifies the missing scenarios is interesting, but

5    not particularly illuminating because it doesn't tell you

6    whether any of these scenarios drive dollars or whether

7    they're duplicated and the reality is Mr. Beron had no way

8    of knowing that.  He did not know what the

9    interrelationships between these various scenarios are.

10           Another point -- a final point on Mr. Black is

11   during my opening this morning or my presentation this

12   morning, I pointed to the range of reasonableness and

13   indicated that the key case is the high settlement case,

14   specifically how it treats the step one issues.  And there's

15   been no reaction to that, other than just to dismiss Mr.

16   Black.  We submit that that high settlement case is a good

17   reading as to what the top of the range is.  There's no

18   evidence to suggest that that's not in fact the case and

19   that it supports the DCL Plan.

20           Final point relates to Mr. Friedman and he said

21   he'd take five minutes.  I'll take less time than five

22   minutes on the FCC issues.  With respect to the FCC issues

23   there's two issues.  One is, is the FCC going to reject the

24   Plan.  I think they've all but conceded that that's not

25   going to happen and there's three reasons why.  One is

1  despite their assertions to the contrary, non-attributable

2  interests are not taken into account by the FCC any longer.

3  The cases they cite in that respect were overruled in 1999

4  by the change in position by the commission.  Secondly,

5  we've indicated that we don't agree that the alleged

6  attributable interest that they say exists are problematic

7  and Appendix A to our initial brief indicates what our

8  position is on each of those issues.  Finally, we've pointed

9  out that there are two mechanisms that would solve any

10  problem that did occur and they have no answer to that,

11  other than to say well, it may take some time and they say

12  it will take a long time.  What's that based on?  None of

13  these issues have been raised by anybody at the FCC.

14  There's no indication that the FCC is going to delay the

15  proceedings to look at this and it defies the belief that

16  the DCL Proponents would drag their feet in trying to remedy

17  a problem.  These people want to get this company out of

18  bankruptcy.  Why would they delay in that regard?  In any

19  event, we don't believe that the issues that Mr. Friedman

20  has raised present a feasibility issue under 1129(a)(11).

21  Your Honor, I'll hand off at this juncture to Mr. Conlan.

22          MR. CONLAN:  Jim Conlan on behalf of the Debtors,

23  two points.  Expediency versus resolve.  That was nicely put

24  by Mr. Golden.  The point remains the same.  We cannot cram

25  a purity plan down on the Senior Lenders.  It is true that

1   Mr. Kurtz said that a purity plan could work if the Senior

2   Lenders accepted it.  They don't.  We asked.  We analyzed

3   the purity plan.  In fact, I think we analyzed it before the

4   Notes did, along with a lot of other potential plans, all of

5   which were designed admittedly to play all ends against the

6   middle, achieve a fair outcome, and cause the company to

7   exit bankruptcy.  The Senior Lenders don't accept the purity

8   plan.  It can't be crammed down on them for the reasons that

9   Mr. Bennett described, but two of them I'll highlight.

10          1129(a)(10), we don't think we have it wrong.  We

11  think it's by Debtor.  You'll tell us if we have it wrong

12  and also the non-Debtor guarantors.  They've guaranteed the

13  Senior Lenders' obligations.  There are ten entities.

14  They're worth $1.5 billion.  It is no accident that our plan

15  contained a pre-pack feature with respect to those non-

16  Debtor guarantors in the event we were unable to fold the

17  bridge lenders into our deal.  That's why.  But one last

18  time, we don't believe we can cram the purity plan down on

19  the Senior Lenders.  It would work if they would accept it.

20  They don't.

21          On the numbers that you asked for, Your Honor,

22  and I'll try to build it up.  At what DEV do the PHONES/EGI-

23  TRB Notes come into the money?  Not including post-petition

24  interest, there is 11.6 billion of indebtedness in front of

25  the PHONES and the EGI-TRB Notes.  As a result the DEV needs

1   to be at least 11.6 billion before the PHONES and EGI come

2   into the money.  Second question or rather subset, if step

3   two were avoided and the Court were to determine that step

4   one could not benefit from that avoidance, then that number

5   shrinks from 11.6 to approximately 7.9 by our calculations.

6   The second question we believe you asked, do you have to

7   decide priority between the PHONES and EGI?  We think the

8   answer is no, not now.  There are no initial recoveries to

9   either of these constituencies under the DCL Plan.  If the

10  EGI Notes claims are ultimately allowed and there are

11  sufficient recoveries from the trusts to provide these

12  Creditors with the recovery, then this issue will need to be

13  decided, but it doesn't need to be decided now.  And then

14  there was a third question, which may have been an embedded

15  question.  Do you have to decide the intra PHONES issue, the

16  whole subordinated, not subordinated issue?  We think the

17  answer is that you do not have to decide it at this

18  juncture.  In any event there is no provision in the DCL

19  Plan that requires it.  The DCL Plan assumes that they're

20  all subordinated.  It does not make a distinction between

21  the so-called exchange holders and non-exchange holders.

22  Thank you, Your Honor.  Mr. Bennett?

23           MR. BENNETT:  If you could switch back to the

24  noteholders, please.  And could we have chart 56?  A few

25  points Your Honor, hopefully all touching on central issues

1   of the case.  They come up in -- with respect to particular

2   charts that were presented to you earlier.

3            This is a really important chart.  It was kind of

4   in my remarks and I didn't have time for it, but I think

5   it's important to note, and the noteholders were helpful,

6   the places that they've underlined in the three different

7   spreads of ratings are the ratings that existed at the end

8   of step two -- excuse me, at the end of step one.  So at the

9   end of step one, we didn't see substantial credit risks from

10  any of the rating agencies.  We saw a high-yield rating.

11  The first one was BB minus, the second one was Ba-3, that's

12  Moody's terminology, and the third was Fitch B-plus.  They

13  were a little bit different.  They were in the same range.

14  None a substantial credit risk.  I think it's also

15  illuminating that substantial credit risk in all of them

16  didn't show up until well after the step two closing, six

17  months after the step two closing.  Again part of our

18  argument, more debt does create more leverage.  It does

19  create more risk.  What the rating agencies were not saying,

20  "Bankruptcy imminent, this is an insolvent company, it is

21  predestined to fail."  It just simply does not support the

22  noteholders' case.

23            The next chart very quickly please 57, we now

24  understand that the noteholders understand that there is no

25  real trading volume in this chart, but they say a lot was

1  outstanding at the end so we assume a liquid market.  Well

2  we don't know when the amounts outstanding at the end were

3  purchased or sold or how many of those positions cancelled

4  each other out, so we really have no evidentiary background

5  for greater liquidity or less liquidity versus bond  prices

6  at any point in this chart, just to keep it in perspective.

7          The next place I'll go, and I'll pause here, is

8  the blank page, page 59, if you could move to page 59.  Why

9  is it that page 59 is blank?  The DCL proponents put on a

10 case to approve a settlement centered very intentionally on

11 the examiner's report, an independent finding by someone

12 whose qualifications are universally admired.  My

13 colleagues, Mr. Sottile in particular, also Mr. Seife, also

14 the debtors, were not going to let me bring the lenders'

15 side of the case to the courtroom in support of a settlement

16 without saying, "But I don't agree with this, and I don't

17 agree with that and I don't agree with this and I don't

18 agree with that."  We did not think that was the right wa to

19 support the settlement.  We chose a strategy.  We had a

20 resource that the estate spent millions of dollars creating

21 the examiner's report and we decided that's the starting

22 point.  That's the evidentiary backbone.  That is the best

23 support for what happened here.

24          The noteholders did something completely

25 different.  They said -- they tried to say -- they had to

1    pay lip service to the examiner's report because they

2    concede it's got to be the most important piece of evidence

3    in the matter before you.  But then what they went off and

4    did was prove the case that they would prove if this were

5    litigated.  And they're now saying I should have done the

6    same thing.  Or maybe they're saying Mr. Sottile should have

7    done the same thing, which would have been, frankly, very

8    strange.

9                We're going to find out whether --

10               THE COURT:  Awkward at the least.

11   (Laughter)

12               MR. BENNETT:  We're going to find out from Your

13   Honor whether we read this case correctly and whether we

14   presented the right kind of case.  I'm convinced that we

15   did.  But the right kind of case to support the

16   reasonableness of a settlement against the background of

17   what's happened in this case is not to fill this blank page.

18   It's to do what we did.  And I think our record is fine.

19               I now want to turn and pause on page 64.  64 is

20   the page where the noteholders say, "Gotcha committee, you

21   have 'WEAR' in the complaint."  Well, they have the titles.

22   I noticed that the complaint doesn't allege the elements.

23   And our -- one of our, there are more, central themes about

24   "WEAR" is that the creation of the slogan was an effort to

25   obscure the fact that the doctrines captured within the

1  slogan are actually fairly well developed as elements you

2  can tick off, and we ought to see the facts which support

3  the elements.  The complaint doesn't have it.  And, frankly,

4  if I were the noteholders' counsel having heard our

5  presentation this morning about the missing elements, the

6  first thing I would have done when I got to page 64 is tick

7  off the elements.  So there's nowhere, w-h-e-r-e, to WEAR.

8  They can't show us any of the elements of any of the

9  doctrines that they allude to without applying.

10          Now there were more interesting things said when

11  they were discussing this page.  The most interesting part

12  was a statement that if someone can't pursue avoidance, and

13  they're referring to estopped creditors, they can't benefit.

14  I think that's a fascinating and interesting statement.  And

15  I think it summarizes very nicely the law I alluded to

16  relating to whether shareholders can benefit from a

17  fraudulent transfer case.  Shareholders cannot bring

18  fraudulent transfer cases in any of our States, and they

19  can't bring fraudulent transfer cases here.  How is it then

20  that shareholders are benefiting?  Remember what the

21  noteholders need, what the noteholders ask for are monstrous

22  dividends from subsidiaries after they reduce the amount of

23  their debt.  That's what they're in the business of seeking

24  here, the benefit of fraudulent transfer cases that

25  shareholders can't bring; their words, not ours.

1          Finally, they say that it's really up to this

2   Court to fashion an avoidance remedy and it could do

3   whatever it wants.  Well, I don't think that's right.  I

4   don't think you even think that's right.  The code tells us

5   what the remedies are, most of them are in 550.  The

6   disallowance remedy turns out not to be in 550, and they

7   make a lot of that.  But we can't get away from the fact

8   that the code specifies the remedy for a fraudulent

9   conveyance and it doesn't say, "Apply these remedies and

10  then do any other remedy you would like."  Moreover, at 550

11  there's one thing that's pretty clear.  You get a single

12  satisfaction for a fraudulent transfer claim, not a single

13  satisfaction and then a whole bunch of other remedies that

14  you would like too.

15          THE COURT:  Well there's been a lot of discussion

16  about remedies, but in determining whether which if either

17  plan should be confirmed I don't think I'll be ordering any

18  remedy --

19          MR. BENNETT:  They're talking about --

20          THE COURT:  -- at this stage of the proceedings.

21          MR. BENNETT:  Well and I'm not suggesting that

22  you are, and I agree that would be for later.  But there are

23  multiple paths to recovery, are effectively applications of

24  remedies that you can't find in the code.  They're remedies

25  they're asking you to make up.  I would say they are

1    inconsistent not only with the specific remedies described

2    but also with the code's direction of a single satisfaction.

3    The single satisfaction isn't paid in full.  The single

4    satisfaction is avoidance of the fraudulent transfer.  And

5    if it turns out as a result of avoidance you don't get all

6    the way home, it doesn't say make up another remedy.  You're

7    entitled to one remedy effectively.

8          Very briefly chart 68.  This is the Bruce Karsh

9    memorandum relating to questions with -- conversations with

10   Mr. Zell, a deposition they decided not to take.  Note

11   importantly that the plan that Mr. Karsh was describing that

12   was the one the noteholders wanted the Debtors never filed

13   that one.  I promise I would have let you know.

14          And, finally, one last loose end that I should

15   have mentioned before relating to the creative

16   implementation of the intercompany claim settlement by the

17   noteholders, what was the purpose of their creative

18   implementation?  I forgot to bring it home and connect the

19   dots.  The purpose was to find a way not to pay post-

20   petition interest on subsidiary indebtedness arising from

21   step one under those scenarios that are relevant here, which

22   is where step one is found not to be avoidable.

23   Implementing the intercompany claim settlement in the manner

24   in which it was presented in the Debtors' DCL plan, in the

25   manner it was presented for purposes of having it be deemed

1  reasonable through the testimony of Mr. Whittman, and the

2  only manner in which it was considered before the Court

3  generates a result that entitles the credit agreement

4  lenders to post-petition interest from many, more than

5  enough by the way, of the subsidiaries, not necessarily all

6  of them.  The noteholders don't have an argument as to why

7  that's not true with the intercompany claim settlement that

8  they didn't oppose and that the evidence supports would be

9  approved.  And so it was a sleight of hand.  They had

10 already let that settlement go.  They had already allowed

11 evidence to come in supporting it and adduced no evidence

12 contradicting it.  And they just said, "We're going to

13 implement it differently.  We're going to change it without

14 support for any of the changes."  Under their vision, under

15 their way to implement the settlement which of course hasn't

16 been approved Your Honor, can't approved Your Honor and,

17 most importantly, isn't in our plan and isn't the law, they

18 can get whatever result they want.  But they can't by fiat

19 including it in their plan, not supporting it, not creating

20 a basis for approval they cannot then adopt it as the

21 benchmark for measuring whether or not the credit agreement

22 lenders are entitled to post-petition interest.

23         The last words, again, we don't -- we the credit

24 agreement lenders do not agree with everything in the

25 examiner's report.  We would resist many of its findings and

1  conclusions if we were litigating the matter.  But for

2  purposes of this hearing, fairly reading the examiner's

3  report, living with the examiner's report except for the

4  couple of manifest errors that have been discussed, there is

5  no escaping that it supports the settlement and it ought to

6  be approved.

7            I'd be happy to answer questions Your Honor may

8  have.

9            THE COURT:  Thank you.

10           MR. ZENSKY:  Good afternoon Your Honor.  Would it

11 be possible for us to take a three-minute break to consult

12 so we can use our last eight to nine minutes wisely?

13           THE COURT:  Three minutes.

14           MR. ZENSKY:  We'll still be done by your hard

15 stop.

16           THE COURT:  Three minutes.

17           MR. ZENSKY:  Thank you.

18 [Recess from 4:32 p.m. to 4:38 p.m.]

19           THE CLERK:  All rise.

20           THE COURT:  Mr. Golden, are you going to take us

21 home?

22           MR. GOLDEN:  Me and two of my colleagues.

23 (Laughter)

24           MR. GOLDEN:  Something about "Beat the Clock"

25 comes to mind.

1          THE COURT:  All right.

2          MR. GOLDEN:  Your Honor you asked previously

3  whether you had to decide certain issues regarding

4  subordination.  One thing I'd like to remind the Court that

5  you do need -- you will need to decide the issue raised at

6  pages 33 to 36 of our post-trial reply brief as to whether

7  the swap claim and the retiree claims are in fact entitled

8  legally to get the benefit of subordination -- of the

9  subordination provisions from the PHONES and EGI-TRB notes.

10  We say no, we think it's in error, we think it violates

11  1129(b).  It's a $50 million error to the detriment of the

12  senior noteholders.  We think that makes their plan

13  unconfirmable on their face.

14          Number two, I'm sorry that Mr. Bennett doesn't

15  like the cases that have actually litigated and decided, the

16  requirements of 1129(a)(10).  But what I didn't hear him say

17  is that there are other cases that support the DCL's view as

18  to the proper interpretation.

19          One other thing.

20          THE COURT:  Well one of the things that he's

21  suggesting I think is that given the imbalance in where the

22  assets lie that -- well my words, not his -- even if other

23  Judges have decided it's okay, under these circumstances

24  it's not okay.

25          MR. GOLDEN:  I understood that argument, Your

1    Honor.

2              THE COURT:  Okay.

3              MR. GOLDEN:  And he seems to think that 20

4    percent of the assets where creditors of $2.5 billion worth

5    of claims reside shouldn't count in that exercise.  And all

6    I was saying is other courts haven't necessarily agreed.

7              But I will make the point that if he happens to

8    be right, and if that's how Your Honor ultimately

9    determines, their plan is equally unconfirmable because

10   there are 37 debtors where they did not get an impaired

11   consenting class so they will likewise be out of conformity

12   with the requirements of 1129(a)(10).

13             Third point Your Honor --

14             THE COURT:  Well let me ask you to pause again.

15   Then I say to myself if -- if those cross objections on the

16   same ground are still pending, I mean is this a collective

17   shooting yourselves in the foot type of thing?

18   (Laughter)

19             MR. GOLDEN:  Your Honor, from our point of view,

20   we think there's a certain interpretation to 1129(a)(10)

21   that would make both plans confirmable on that point.  It is

22   the DCLs who have raised the contrary interpretation, and if

23   they use that contrary interpretation they are, in effect,

24   shooting themselves in the foot.

25             THE COURT:  All right, thank you.

1          MR. GOLDEN:  Third, Your Honor, Mr. Bennett

2   suggested that there is a similarity between the two plans

3   because we, the noteholders, adopt the retiree settlement.

4   That's just not the case.  And I would suggest he just show

5   me the place in our plan that says we adopt the retiree

6   settlement.

7          Fourth Your Honor on the non-debtor guarantor

8   releases, at pages 26 through 28 of our post-trial reply

9   brief we discuss that issue.  The Third Circuit law in cases

10  like *Continental* and your case in *Spansion* makes it clear

11  that under compelling circumstances those kind of third-

12  party releases can be granted even on a non-consensual

13  basis.  And we refer Your Honor to the findings of fact and

14  conclusions of law in the *Hayes Lemmerz* case by Judge

15  Walrath which will recite facts amazingly similar to the

16  facts here.  And she believed that those facts were

17  compelling enough to allow non-debtor guarantor releases,

18  just like here, to be released under a plan.

19          And Your Honor with that, I am going to turn this

20  over to my colleague.

21          MR. QUERSHI:  Thank you, Your Honor.  I hope the

22  record will reflect who I am because I don't have time in my

23  83 seconds to repeat that, Your Honor.

24  (Laughter)

25          MR. QUERSHI:  Two really quick points.  The

1  examiner's capital adequacy conclusion at step one, it's not
2  just the NPP proponents that disagree with that outcome.
3  It's Professor Fischel too, Your Honor.  We don't run from
4  it, we don't ignore it.  We set forth why at page 44 in our
5  opening post-trial reply brief that it's wrong.
6          Three points, Your Honor.  Again the February
7  projections which we don't think can be relied upon, the
8  examiner assumed that the company could refinance $9 billion
9  in debt.  We don't think there's a basis for that
10 conclusion.
11         And finally Your Honor, the examiner made a
12 mathematical error and it's a significant one and it's one
13 that the DCL proponents don't dispute.  The examiner added
14 cash tax expense to cash flows rather than deducting it.
15 And the impact of that Your Honor is to increase cash flows
16 by $100 million which is, of course, significant in the
17 capital adequacy analysis.
18         Second point Your Honor goes to the February
19 projections.  Your Honor we're not suggesting that the
20 examiner didn't have the facts before him to come to the
21 conclusion that we come to.  What we're suggesting Your
22 Honor is that the examiner simply did not undertake the
23 analysis that we think is the right analysis that gets to
24 the inescapable conclusion that those projections are
25 unreasonable.

1            I want to very quickly pull up slide 17.  Your

2    Honor can search through Volume II of the examiner's report.

3    Volume I of the examiner's report Your Honor simply will not

4    find this analysis by the examiner.  And specifically Your

5    Honor what I'm referring to is the backend loaded nature of

6    the projections.  And what Your Honor can see is that in

7    2007 the front five months of the year, you can compare that

8    performance to 2006 and look at the implications of that for

9    the last seven months of the year Your Honor.  And if that

10   analysis is done, it shows that there's just no way that in

11   May one could conclude that those projections could be met.

12   And the examiner simply does not do that.

13           And with that Your Honor I'll turn it over to Mr.

14   Zensky for the last word.

15           MR. ZENSKY:  Thank you Your Honor, the last

16   couple of topics.

17           Mr. Bennett spoke a few moments about the "WEAR"

18   issue and he really made more of a standing attack or a

19   challenge attack to it than the cases and remedies that

20   we've discussed.  And I don't think there's any question

21   that there is standing to pursue the avoidance of the step

22   two debt.  In the debtors and the debtors' estates there are

23   massive intercompany claims owed to the debtors.  There are

24   general unsecured creditors at the subsidiary level that the

25   estates have standing to seek avoidance.  And it's not

1    disputed that when you avoid -- under 548 you avoid the

2    entirety of an obligation, not just a piece of it.  And the

3    question is what happens to the value that's freed up as a

4    result of the avoidance.

5            Now he referred you to code Section 550, and

6    that's not the right section with respect to this issue.

7    550 goes to bringing a transfer back into the estate.  So

8    that would be relevant at the parent level with respect to

9    disgorgement.  548 governs the issue of avoidance at the

10   guarantor subsidiaries, Your Honor, and 548 has no benefit

11   to the estate limit.

12           Finally on this topic, there is no dispute that

13   in what the DCL plan proponents concede as the homerun

14   scenario where both step one and step two are avoided that

15   in that scenario the value does flow up from the

16   subsidiaries to the parent company.  That also gave the

17   examiner no pause whatsoever.  And the only debate here is

18   whether that does or does not happen when step two is

19   avoided but not step one.  And I've addressed the bases for

20   that already.

21           Mr. Conlan told you that with respect to the

22   PHONES coming into the money in the event that step two is

23   avoided, that they calculate it to be about $7.9 billion.

24   If you look at our chart on page 67, we're fairly close to

25   each other on that issue.  We show it at just shy of 7.8

1    where the PHONES begin to get a recovery.  And what's
2    equally important to take away from this slide Your Honor,
3    which I didn't have time to address earlier, that at a value
4    as low as $7,050,000,000 the senior notes would get a 48.5
5    percent distribution which is well above the proposed
6    settlement amount here.  And you'll recall that Lazard, in
7    its January update, Lazard said the company was worth $7
8    billion and change at that point in time.  On top of that,
9    the debtors have amassed $200 million in cash beyond what
10   their plan assumed they would have upon exit.  So we think
11   we're already well into the 7.2 range and the recoveries
12   that would flow to the senior notes, if nothing happens
13   beyond step two being avoided and no post-petition interest
14   is allowed.

15           Third Your Honor I heard Mr. Bernstein I think
16   make a reference to Mr. Gropper's deposition.  I assume he
17   was talking about the trial because that's what's here for
18   discussion today, what happened at trial.  Mr. Gropper never
19   said anything remotely like what was ascribed to him, that
20   there was some value in dragging this out or delaying the
21   bankruptcy proceedings.  Indeed the noteholders have urged
22   you to adopt their plan so the company can exit from
23   bankruptcy.  Its testimony at page 13 and 14 of the
24   transcript from March 16th, Your Honor, was that if the note
25   holder plan is confirmed and a negotiation takes place by an

1  independent litigation trustee that he was confident, very

2  confident that a superior settlement would result from that.

3  And he never, for a second, ascribed the notion that there

4  was some value in delaying things here, Your Honor.

5              And if I have one minute left, let me turn to Mr.

6  Sottile's comments regarding Dr. Beron.  Dr. Beron did not

7  need to look beyond the bottom-line conclusions. Normally,

8  you heard him testify, he gets the probabilities from

9  counsel.  In this case he took them from the examiner's own

10  conclusions which the examiner said were what one should

11  look to to get his opinion.  In short order, Dr. Beron said

12  that this was well suited to the type of exercise that he

13  does, which is to value the claims based on someone's

14  probabilities.  He should not have done what Professor Black

15  did and try to intuit out of the examiner report alleged

16  correlations or dependencies, or make a conclusion that the

17  examiner said one thing but really meant another.  That

18  defeats the whole point of the exercise.  And most

19  importantly, Dr. Beron did run sensitivities.  He testified

20  to on redirect that he ran analyses where he took into

21  account the bulk of their objections where he zeroed out

22  certain paths to recovery.  He reversed the one issue where

23  the testimony was that we read the report as being in

24  equipoise he read it as being reasonably likely.  Taking all

25  those things into account, he reversed all that in favor of

1  their objections and came out with $1.3 billion Your Honor

2  as the expected value, still almost three times as much as

3  the proposed settlement.

4          So we ask that you turn down the proposed DCL

5  plan and confirm the noteholder plan Your Honor.

6          THE COURT:  Thank you.

7          MR. SOTTILE:  Your Honor, I think we've now

8  concluded the arguments by the planned proponent groups.

9          There are two very brief housekeeping matters I'd

10  like to address if that's all right with the Court.

11          THE COURT:  They're standing behind you, all

12  right.

13          MR. SOTTILE:  Well one of them may be relevant to

14  Mr. Bradford, so --

15          THE COURT:  Okay.

16          MR. SOTTILE:  -- if I might speak to that

17  briefly.

18          Your Honor we were here two weeks ago, as you

19  will recall, on the question of admissibility of certain

20  exhibits.  And we also had some discussion two weeks ago

21  about the use of any findings and conclusions on the merits

22  of the claims in other litigation.

23          With respect to the first issue Your Honor, the

24  parties have reached agreement on language for an Order, and

25  we will submit it under a Certification of Counsel.

1          With respect to the second issue, Your Honor, we

2    read into the record an agreement between the planned

3    proponent groups about use of findings and conclusions in

4    other matters.  We have, per the Court's instruction, been

5    consulting with counsel for various third parties, including

6    Mr. Zell since then in an effort to reach agreement on that.

7    I think we have reached agreement with everyone other than

8    Mr. Zell's counsel, and with the Court's indulgence we would

9    ask the opportunity to report to the Court briefly at

10   tomorrow's hearing on the status of those discussions and

11   that issue.

12          THE COURT:  Okay.

13          MR. SOTTILE:  Thank you Your Honor.

14          Finally Your Honor if I might just hand up, I

15   believe I forgot to give you a binder with the DCL

16   demonstratives.  May I hand that up, Your Honor?

17          THE COURT:  You may.

18          MR. SOTTILE:  Thank you Your Honor.

19          THE COURT:  Thank you.

20          MR. BRADFORD:  Your Honor David Bradford, Jenner

21   & Block, for Mr. Zell.  Your Honor was kind enough to offer

22   us a couple of minutes with respect to the noteholders'

23   findings.  In light of Your Honor's comments about the

24   process issues, I won't take more of the Court's time other

25   than to say that those findings as they relate to Mr. Zell

1  are unfounded.  And I appreciate that opportunity Your

2  Honor, thank you.

3              THE COURT:  All right.

4              MR. KRAKAUER:  Your Honor one other hopefully

5  positive matter that -- Bryan Krakauer for the debtor.

6              A few weeks ago we referred the DOL matter in the

7  Neil litigation matter over to mediation.  Mediation has

8  occurred and there have also been discussions among the

9  parties.  The parties being debtor, the Department of Labor,

10  the IRS, the Neil Plaintiffs and also a number of insurance

11  companies.  We are making progress.  There's been

12  significant progress made hopefully in the settlement.  And

13  I'm here to ask if it's acceptable to the Court, the request

14  is that you hold off ruling on the Department of Labor

15  objection to the plan for another two to three weeks to

16  allow us time to see if we can get a settlement done.

17              THE COURT:  I don't think you have anything to

18  worry about.

19  (Laughter)

20              MR. KRAKAUER:  You never know Your Honor, thank

21  you.

22              THE COURT:  Okay, can we just touch base a little

23  bit briefly about tomorrow?  I'm being advised that I guess

24  now except for the one status that we just added the only

25  thing going forward tomorrow is number 25 on the agenda.

1          MR. PERNICK:  Your Honor Norm Pernick from Cole,

2    Schotz, that's correct.

3          THE COURT:  Okay, now, I did have delivered today

4    a hardcopy of Aurelius' Notice of Withdrawal.

5          MR. PERNICK:  I think that was to number 24.

6          THE COURT:  It was.  But along with it came a

7    motion of the noteholder plan proponents to admit certain

8    documents.  I take it that was just sent as a matter of

9    convenience and courtesy and that's not a new motion, or is

10   it?

11         MR. HURLEY:  Mitch Hurley Your Honor, thank you.

12   It's not a new motion.  It was just this matter pressing.

13         THE COURT:  I appreciate that.  Okay, any notion

14   of how much time we'll need tomorrow?

15         MR. KORPUS:  Good afternoon, Your Honor, Sheron

16   Korpus of Kasowitz Benson for Law Debenture and the other

17   Plaintiffs in the [indiscernible] collections.

18         There have been several objections.  We're

19   working on resolving several of them.  I do not expect it

20   will take more than but half an hour --

21         THE COURT:  All right.

22         MR. KORPUS:  -- at most, if that.

23         THE COURT:  Anything further for today?

24         MR. HURLEY:  No Your Honor.

25         THE COURT:  Thank you.  That concludes this

1  hearing.  Court will stand adjourned.

2  (Whereupon, at 4:54 p.m., the hearing was adjourned.)

3

4                    CERTIFICATION

5          I certify that the foregoing is a correct

6  transcript from the electronic sound recording of the

7  proceedings in the above-entitled matter.

8

9

10  _____        27  June  2011

11  Traci Calaman, Transcriber                Date

12

13

14

15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **08-13141(kjc**(1) 1:5 | | **acceptance**(1) 83:13 | | **adjudication**(1) 175:17 | | **agree**(14) 16:2  31:25  40:7  41:19  44:19 |
| **11-and-a-half**(1) 102:6 | | **accepted**(8) 42:7  66:21  116:4  119:21 | | **adjust**(1) 140:14 | | 116:21  192:4  201:5  205:16  205:17  205:17 |
| **1129(a)(10**(11) 179:10  179:16  183:4  183:5 | | 138:24  138:24  177:17  202:2 | | **adjusted**(1) 115:24 | | 205:18  208:22  210:24 |
| 183:22  184:10  184:15  202:10  212:16 | | | | **adjustment**(3) 82:7  87:24  159:6 | | |
| 213:12  213:20 | | **accepting**(5) 183:16  183:17  183:19  183:24 | | **adler**(1) 9:9 | | **agreed**(9) 16:7  18:2  18:25  40:3  125:7 |
| | | 184:6 | | **administration**(1) 139:7 | | 181:12  193:3  193:6  213:6 |
| **1129(a)(11**(1) 201:20 | | | | **admired**(1) 205:12 | | |
| **21-and-a-half**(1) 102:5 | | **accident**(2) 64:9  202:14 | | **admissibility**(1) 220:19 | | **agreement**(24) 12:7  44:5  44:7  66:7  66:8 |
| **44-and-a-half**(1) 102:21 | | **accompanies**(1) 26:12 | | **admission**(3) 106:17  137:18  164:25 | | 140:22  140:23  140:24  140:25  149:19  178:7 |
| **70-percent**(1) 130:24 | | **accomplishes**(1) 173:21 | | **admit**(1) 223:7 | | 178:9  178:11  178:23  179:9  182:1  193:5 |
| **a.m**(4) 1:15  15:1  69:13  69:13 | | **accordance**(1) 181:2 | | **admits**(1) 51:5 | | 210:3  210:21  210:24  220:24  221:2  221:6 |
| **aaron**(2) 13:9  13:10 | | **according**(3) 22:5  30:10  39:18 | | **admitted**(2) 133:1  164:10 | | 221:7 |
| **abandoned**(1) 38:15 | | **account**(13) 27:25  31:16  71:7  71:11  73:9 | | **admittedly**(2) 82:25  202:5 | | |
| **abdicate**(1) 193:11 | | 73:21  73:23  93:7  107:25  193:22  201:2 | | **adopt**(6) 33:5  142:13  210:20  214:3  214:5 | | **agrees**(5) 18:15  57:18  121:25  170:10 |
| **abid**(2) 4:20  94:3 | | 219:21  219:25 | | 218:22 | | **agudelo**(1) 6:39 |
| **ability**(7) 16:10  21:21  31:12  148:7  159:21 | | | | | | **ahead**(5) 33:20  106:12  126:19  127:2  156:2 |
| 167:11  191:11 | | **accurate**(1) 158:7 | | **adopted**(4) 138:20  181:16  181:16  181:19 | | **ahmed**(1) 10:29 |
| | | **accuse**(1) 74:16 | | **advance**(7) 26:7  30:24  97:19  106:22 | | **akin**(5) 4:17  8:9  84:21  94:3  173:16 |
| **ability-to-pay**(1) 122:5 | | **achievable**(2) 104:11  104:15 | | 111:24  115:10  129:20 | | **albeit**(1) 26:12 |
| **abitibi**(1) 184:16 | | **achieve**(2) 119:18  202:6 | | | | **ali**(1) 6:13 |
| **able**(7) 15:19  52:25  133:4  133:5  133:24 | | **acknowledge**(5) 65:7  95:25  97:13  129:17 | | **advanced**(2) 29:9  186:1 | | **all**(150) 15:14  15:20  16:2  16:15  18:13  20:2 |
| 177:2  196:5 | | 175:2 | | **advancing**(1) 184:16 | | 22:8  22:9  22:11  23:15  23:24  24:6  24:17 |
| | | | | **adversary**(1) 155:5 | | 25:9  25:17  26:8  26:14  27:1  29:24  32:15 |
| **ably**(1) 154:10 | | **acknowledged**(4) 103:16  104:20  110:12 | | **advertising**(4) 95:14  95:17  95:22  100:19 | | 32:22  33:11  34:16  39:2  39:24  43:1  44:6 |
| **about**(250) 15:14  15:18  15:24  16:24  18:9 | | 117:1 | | **advice**(2) 58:21  152:14 | | 44:12  45:8  45:15  46:3  46:11  47:14  47:16 |
| 20:25  21:12  24:22  25:5  26:6  27:3  29:22 | | | | **advised**(3) 152:13  152:20  222:23 | | 48:2  49:15  51:3  52:17  52:22  55:1  55:4 |
| 31:23  32:20  32:23  34:15  34:16  34:22  35: | | **acknowledges**(2) 109:3  123:16 | | **advisor**(8) 22:6  23:3  23:5  23:22  24:1  96:9 | | 56:3  56:7  56:23  56:25  61:10  62:21  63:3 |
| 35:16  37:3  37:5  38:1  38:2  38:13  38:19 | | **acknowledging**(7) 103:23  105:24  106:6 | | 125:24  189:4 | | 63:10  68:5  69:11  69:14  72:12  74:4  74:7 |
| 39:4  41:15  44:24  45:22  46:1  46:10 | | 106:12  107:3  107:14  108:20 | | | | 77:3  83:11  83:20  83:22  84:3  84:12  84:19 |
| 46:17  48:1  48:3  48:10  49:13  49:21  50:1 | | | | **advisors**(2) 73:19  108:11 | | 85:3  85:4  89:3  89:9  92:23  98:18  101:24 |
| 50:16  50:19  51:5  51:9  51:10  52:6  52:6 | | **acknowledgment**(1) 178:4 | | **advocate**(5) 145:8  145:15  147:21  148:2 | | 113:2  113:19  115:5  117:8  120:13  121:22 |
| 52:23  53:4  53:6  53:7  53:8  53:9 | | **acquiescence**(1) 195:9 | | 155:8 | | 122:3  125:6  127:1  127:19  127:22  129:5 |
| 53:10  53:11  53:12  53:12  53:18  53:21 | | **acquire**(1) 133:25 | | | | 129:21  133:9  133:18  134:20  135:11  136:1 |
| 53:22  53:23  55:3  56:18  56:22  56:24  56:25 | | **acronym**(1) 191:6 | | **advocates**(3) 149:6  149:8  149:9 | | 136:11  138:14  138:17  140:10  144:25 |
| 57:4  57:6  57:7  57:9  57:10  57:11  58:2 | | **across**(1) 166:5 | | **affected**(1) 157:21 | | 146:6  146:14  146:14  147:18  151:18  153:19 |
| 58:7  58:10  59:9  59:23  61:9  61:10  61:17 | | **acted**(1) 162:22 | | **affecting**(1) 51:6 | | 154:4  154:10  156:1  160:3  160:24  161:20 |
| 61:19  61:20  61:25  62:24  63:3  63:7  63:9 | | **acting**(1) 184:16 | | **affects**(2) 52:5  52:5 | | 163:24  164:1  164:11  165:10  165:17  166:7 |
| 63:12  63:19  63:20  64:6  64:7  64:17  65:12 | | **action**(15) 57:11  99:25  137:15  140:3 | | **affiliated**(1) 120:22 | | 167:14  167:19  167:22  168:4  168:11  171:18 |
| 66:2  66:3  67:24  68:8  68:11  68:13  69:1 | | 142:14  172:7  172:16  172:20  174:10  174:1 | | **affirmed**(1) 120:22 | | 173:1  174:10  177:2  178:25  180:4  180:8 |
| 69:19  69:20  70:15  73:16  74:13  75:24 | | 175:5  175:17  178:25  183:14  183:20 | | **afraid**(1) 126:12 | | 180:23  181:1  183:7  186:8  188:5  188:7 |
| 76:15  76:23  77:3  77:7  81:5  83:4  84:4 | | | | **after**(27) 17:23  18:5  21:18  50:11  60:4 | | 196:15  197:7  198:4  199:25  200:24  202:5 |
| 84:5  84:7  84:8  84:10  85:25  86:5  86:13 | | **action."**(1) 93:9 | | 61:23  61:23  86:1  88:3  96:25  100:8  101:20 | | 202:5  203:20  203:25  204:15  209:5  210:5 |
| 87:8  89:10  90:7  91:2  91:7  91:11  91:15 | | **actions**(3) 93:3  105:2  174:6 | | 107:9  108:13  109:20  110:1  110:18  113:20 | | 211:19  212:1  213:5  213:25  219:24  219:25 |
| 100:9  100:24  101:11  102:5  102:8  102:25 | | **actual**(10) 48:21  54:8  101:4  111:4  113:6 | | 133:16  147:8  152:20  155:13  168:12  177:25 | | 220:10  220:11  222:3  223:21 |
| 103:6  104:7  105:8  105:10  105:15  105:21 | | 113:16  113:22  142:7  187:6  187:7 | | 204:16  204:17  207:22 | | |
| 106:18  107:7  108:4  109:13  109:24  110:4 | | | | | | |
| 110:18  112:17  116:6  123:22  124:5  127:7 | | **actually**(27) 49:5  51:15  54:11  54:12  54:12 | | **afternoon**(8) 82:20  84:20  94:3  132:7 | | **allegation**(1) 58:19 |
| 127:11  127:16  128:1  129:4  129:9  129:9 | | 54:21  56:12  66:6  81:23  101:20  106:25 | | 169:17  173:15  211:10  223:15 | | **allege**(2) 59:21  206:22 |
| 133:4  135:15  135:22  137:22  138:8  143:4 | | 107:20  111:24  112:12  112:15  113:17 | | | | **alleged**(5) 76:17  128:14  178:12  201:5 |
| 144:20  144:21  145:2  146:20  147:1  147:10 | | 117:11  127:21  127:24  176:15  177:19  178: | | **afterwards**(1) 84:10 | | 219:15 |
| 147:11  148:3  149:4  149:7  150:1  152:24 | | 179:15  195:3  197:4  207:1  212:15 | | **again**(80) 29:14  30:4  32:22  34:14  39:22 | | |
| 152:24  152:25  153:7  153:19  154:3  154:8 | | | | 42:3  42:3  42:4  45:3  48:6  52:16  53:17 | | **allinson**(1) 4:10 |
| 155:24  156:4  156:13  156:18  157:18  158:2 | | **adam**(1) 3:13 | | 57:5  58:23  59:8  66:18  71:23  74:3  75:16 | | **allison**(1) 7:15 |
| 158:12  161:15  162:6  162:25  164:18  167:3 | | **adams**(1) 8:12 | | 80:3  86:2  93:21  95:17  96:4  96:10  96:17 | | **alliteration**(1) 160:14 |
| 168:18  169:16  169:18  176:23  179:10 | | **add**(8) 26:19  57:8  73:14  90:21  109:18 | | 97:7  97:8  97:22  99:1  99:8  100:23  101:6 | | **allocation**(3) 82:24  82:25  174:22 |
| 180:22  182:14  182:15  182:17  182:19 | | 142:9  149:24  173:7 | | 103:3  103:5  103:12  103:15  103:19  104:18 | | **allotted**(1) 169:18 |
| 182:21  183:13  184:1  184:5  184:14  184:22 | | | | 106:6  106:10  107:2  108:2  108:25  109:2 | | **allow**(7) 175:24  176:5  176:7  178:21  179:1 |
| 185:10  185:25  187:23  187:24  188:14 | | **added**(4) 58:1  141:4  215:13  222:24 | | 109:22  110:24  111:3  114:6  115:20  118:2 | | 214:17  222:16 |
| 188:15  188:17  190:9  190:12  190:20  190:2 | | **addition**(2) 120:11  187:21 | | 119:4  119:10  120:18  120:24  122:17 | | |
| 191:3  191:6  191:14  192:1  192:16  193:14 | | **additional**(3) 24:18  123:11  191:16 | | 123:22  124:10  125:11  125:16  125:22  126: | | **allowable**(1) 63:13 |
| 194:6  194:15  196:7  196:16  196:18  196:20 | | **additionally**(1) 199:12 | | 126:13  126:17  126:19  126:22  127:10 | | **allowed**(14) 19:18  33:13  35:1  35:12  65:19 |
| 197:7  199:6  199:23  206:23  207:5  208:16 | | **address**(17) 43:22  43:24  43:25  78:8  78:9 | | 129:1  131:1  135:14  138:21  166:2  166:23 | | 90:6  92:12  143:16  159:7  160:21  176:11 |
| 208:19  211:24  216:17  217:23  218:17 | | 82:16  85:3  85:18  85:23  93:2  93:22  128:1 | | 167:23  177:13  194:6  204:17  210:23  213:1 | | 203:10  210:10  218:14 |
| 220:21  221:3  221:23  222:18  222:23 | | 128:13  163:4  172:4  218:3  220:10 | | | | |
| | | | | **against**(29) 32:25  40:14  52:2  56:13  68:3 | | **allows**(3) 174:16  174:17  175:14 |
| **above**(9) 28:8  35:8  74:1  74:8  120:18 | | **addressed**(2) 75:13  217:19 | | 68:4  90:20  102:4  102:5  107:21  115:7 | | **allude**(1) 207:9 |
| 130:3  159:12  159:23  218:5 | | **addresses**(2) 143:6  199:7 | | 115:11  119:24  126:11  126:13  137:6  145:2 | | **alluded**(1) 207:15 |
| | | **addressing**(1) 128:22 | | 151:18  151:19  156:15  156:23  159:9 | | **almost**(10) 18:1  33:1  43:1  94:8  123:1 |
| **aboveentitled**  (1) 224:7 | | **adds**(3) 27:3  72:9  92:21 | | 159:18  162:18  163:11  174:13  193:20  202: | | 123:15  129:11  131:24  147:15  220:2 |
| **abruptly**(1) 119:14 | | **adduced**(1) 210:14 | | 206:16 | | |
| **absence**(1) 19:16 | | **adelman**(1) 8:17 | | | | **alone**(7) 19:15  26:18  34:17  92:5  97:22 |
| **absent**(2) 120:25  121:4 | | **adequacy**(13) 21:21  39:15  71:17  121:19 | | **agencies**(4) 127:25  128:3  204:10  204:19 | | 99:22  126:21 |
| **absolute**(1) 135:16 | | 121:22  122:5  122:22  123:4  167:11  188:11 | | **agency**(1) 127:19 | | |
| **absolutely**(4) 18:25  39:3  181:17  193:13 | | 188:25  215:1  215:17 | | **agenda**(2) 46:5  222:25 | | **along**(4) 68:16  154:4  202:4  223:6 |
| **absurd**(1) 97:5 | | | | **aggregate**(1) 159:7 | | **already**(8) 46:4  81:25  114:1  194:5  210:10 |
| **accelerate**(1) 95:11 | | **adequate**(5) 162:8  172:20  172:22  181:13 | | **aggressive**(2) 111:22  189:9 | | 210:10  217:20  218:11 |
| **accept**(9) 42:10  67:2  85:3  157:6  182:6 | | 188:19 | | **ago**(6) 132:13  133:22  162:16  220:18 | | |
| 186:1  192:10  202:7  202:19 | | | | 220:20  222:6 | | |
| | | **adjourned**(2) 224:1  224:2 | | | | |
| **acceptable**(1) 222:13 | | **adjudicated**(1) 178:13 | | | | |

| Word | Page:Line |
|------|-----------|

**also**(64) 23:10 25:2 29:1 33:10 34:2 39:16 41:6 44:20 45:3 47:1 47:13 53:14 67:1 72:13 73:2 75:19 80:15 82:2 94:11 95:16 96:17 99:20 102:7 102:25 106:14 107:18 108:2 115:9 116:16 117:1 121:25 122:4 124:21 125:17 133:20 141:1 141:17 142:2 144:15 145:7 159:1 162:7 165:24 167:4 171:10 171:17 176:7 177:11 182:14 185:1 187:3 189:21 194:17 195:14 199:9 202:1 204:14 205:13 205:13 209:2 217:16 220:2 222:8 222:10

**alter**(4) 111:15 115:13 115:14 115:15
**altered**(1) 117:16
**alternative**(14) 11:36 11:36 31:4 31:12 32:18 59:21 59:23 158:21 175:11 175:12 176:13 177:13 178:6 178:11

**alternatives**(1) 24:20
**although**(6) 16:1 20:9 20:20 39:19 53:8 189:21

**altogether**(1) 185:7
**alvarez**(2) 13:33 13:33
**always**(10) 67:3 82:23 151:2 152:11 153:25 177:21 177:22 182:25 194:17 194:20

**amassed**(1) 218:9
**amazing**(4) 98:3 103:23 106:14 109:16
**amazingly**(1) 214:15
**ambiguous**(1) 52:3
**amended**(1) 162:1
**america**(3) 6:22 6:26 127:8
**americas**(1) 3:6
**among**(2) 77:21 222:8
**amount**(24) 33:15 42:5 85:25 89:20 124:16 136:24 156:19 156:24 157:24 158:14 159:7 159:13 175:20 177:7 179:4 179:24 183:3 185:20 192:16 192:20 192:2 192:24 207:22 218:6

**amounts**(2) 23:11 205:2
**amsden**(2) 108:19 109:9
**analyses**(2) 91:23 219:20
**analysis**(75) 18:17 20:11 21:19 22:5 23:21 25:6 26:23 27:5 28:3 28:21 29:11 30:11 32:3 32:6 34:5 34:9 38:4 38:21 39:14 39:15 40:6 49:6 56:19 72:3 72:3 72:6 72:11 74:3 74:6 75:2 75:20 76:11 79:7 79:8 79:18 79:20 79:23 80:2 80:7 80:10 80:12 81:5 81:17 81:17 82:10 94:25 98:12 103:11 111:2 111:10 113:4 114:4 114:7 114:11 115:13 115:22 116:8 116:9 116:20 117:11 119:3 119:6 119:20 119:22 121:8 121:22 122:25 123:13 151:11 197:17 215:17 215:23 215:23 216:4 216:10

**analyst**(5) 96:21 103:21 126:5 126:14
**analysts**(4) 95:23 112:11 124:7 195:7
**analyze**(1) 113:9
**analyzed**(6) 34:2 125:13 126:21 126:23 202:2 202:3

**analyzing**(2) 21:24 59:10
**anchored**(2) 111:4 113:22

**and**(301) 15:21 15:24 15:25 16:5 16:9 16:13 16:13 16:19 16:20 17:4 17:5 17:7 17:14 17:16 17:19 17:21 18:3 18:7 18:10 18:10 18:14 18:16 18:18 18:20 18:22 18:23 19:1 19:2 19:3 19:6 19:18 20:1 20:3 20:12 20:15 20:21 20:21 21:9 21:10 21:11 21:21 22:7 22:12 22:12 22:14 22:22 23:7 23:15 23:24 24:4 24:5 24:11 24:15 24:16 24:17 24:18 24:20 25:4 25:5 25:9 25:16 26:12 26:15 26:16 26:21 26:22 26:24 27:10 27:11 27:13 27:16 27:19 27:24 28:7 28:7 28:12 28:14 28:19 28:20 28:23 29:4 29:10 29:14 29:16 29:21 30:11 30:13 30:16 30:19 30:24 30:25 31:13 31:13 31:15 31:24 32:15 33:1 33:5 33:6 33:9 33:20 33:21 33:25 34:4 34:4 34:6 34:8 34:20 34:21 34:22 35:4 35:5 35:9 35:13 35:16 36:5 36:8 36:13 36:13 36:20 36:24 37:5 37:12 37:14 37:16 38:14 38:17 39:3 39:17 40:4 40:14 40:22 41:4 41:10 41:13 41:14 41:16 41:21 42:3 42:4 42:13 42:14 42:18 42:22 43:1 43:2 43:3 43:7 43:11 43:18 43:18 43:24 44:6 44:10 44:10 44:15 44:16 44:20 44:21 44:24 45:2 45:7 45:13 45:13 45:18 45:19 45:24 45:24 46:1 46:5 46:8 46:9 46:11 46:18 46:23 47:4 47:7 47:12 47:19 47:24 48:4 48:9 48:13 48:20 48:21 49:1 49:3 49:11 49:15 49:19 49:20 49:24 50:3 50:6 50:8 50:13 50:15 50:16 50:16 50:22 50:22 51:3 51:10 51:10 51:12 51:14 51:18 51:24 51:25 52:8 52:10 52:14 52:15 52:22 52:23 53:10 53:11 53:16 53:20 53:24 54:2 54:6 54:9 54:10 54:11 54:12 54:14 54:16 54:19 54:23 54:25 55:2 55:4 55:10 55:12 55:13 55:14 55:17 55:20 55:23 55:23 56:2 56:5 56:7 56:10 56:16 56:20 56:21 56:24 57:5 57:13 57:14 57:18 57:19 57:21 57:24 58:4 58:6 58:7 58:9 58:9 58:16 58:20 58:23 58:25 59:1 59:4 59:8 59:9 59:11 59:18 59:18 59:23 59:24 59:25 60:1 60:2 60:8 60:13 60:16 60:18 60:18 60:19 60:25 61:8 62:8 62:9 62:11 62:12 62:14 62:17 62:18 62:24

**and**(301) 62:25 63:8 63:9 63:13 63:18 63:25 64:1 64:3 64:4 64:8 64:11 64:16 64:19 65:6 65:8 65:12 65:14 65:16 65:16 65:20 66:5 66:7 66:10 66:12 66:16 66:22 66:25 67:1 67:1 67:3 67:5 67:6 67:7 67:8 67:9 67:10 67:11 67:13 67:17 67:18 68:7 68:9 68:11 68:13 68:15 68:22 69:1 69:1 69:8 69:20 69:20 69:22 70:12 70:14 70:16 70:20 70:22 71:5 71:9 71:11 71:13 71:15 71:17 71:22 71:23 72:10 72:11 72:16 72:19 72:22 72:24 73:1 73:3 73:9 73:11 73:14 73:15 73:17 73:19 73:22 73:23 74:5 74:6 74:16 74:25 75:4 75:4 75:9 75:13 75:17 75:20 75:24 76:2 76:3 76:3 76:5 76:9 76:11 76:12 76:14 76:14 76:19 76:22 77:1 77:4 77:5 77:9 77:12 77:13 77:14 77:20 78:1 78:2 78:4 78:9 78:12 78:16 78:16 78:18 78:22 78:25 79:5 79:7 79:10 79:12 79:19 79:19 80:1 80:7 80:11 80:13 80:15 80:20 80:21 81:4 81:6 81:7 81:8 81:8 81:9 81:11 81:15 81:19 81:25 82:1 82:5 82:10 82:19 82:22 82:22 82:22 83:4 83:6 83:6 83:7 83:9 83:10 83:10 83:13 83:16 83:18 83:18 83:20 83:24 83:25 84:5 84:9 84:9 84:11 84:14 84:22 85:9 85:12 85:12 85:14 85:18 85:21 85:23 85:25 85:25 86:6 86:9 86:11 86:13 87:1 87:3 87:3 87:13 87:18 87:21 87:23 87:25 88:8 88:11 88:21 88:23 89:6 89:12 89:22 90:3 90:8 90:11 90:20 91:2 91:10 91:16 91:19 91:23 92:1 92:4 92:4 92:9 92:9 92:9 93:3 93:9 93:10 93:17 93:24 93:25 93:25 94:4 94:6 94:9 94:17 94:21 94:24 95:8 95:23 96:8 96:11 96:14 96:17 96:23 96:23 97:5 97:9 97:12 97:12 97:21 97:22 98:12 98:19 98:22 98:25 99:3 99:6 99:7 99:9 99:11 99:25 100:2 100:15 101:10 101:14 101:19 102:1 102:5 102:8 102:11 102:12 102:16 102:24 103:1 103:5 103:12 103:16 103:19 104:6 104:19 104:22 105:7 105:7 105:11 105:15 105:17 105:19 105:23 106:23 106:24 107:5 107:7 107:11 107:15 107:23 108:1 108:15 109:12 109:21 109:21 109:23 110:10 110:13 110:16 110:24 111:13

**and**(301) 111:20 111:2 112:3 112:10 112:17 112:25 113:16 113:20 113:24 114:6 114:15 114:17 114:19 115:4 115:9 115:11 115:17 115:22 115:24 116:3 116:5 116:7 116:8 116:20 116:22 117:7 117:9 117:14 117:19 119:2 119:3 119:15 119:15 119:22 119:23 119:25 120:6 120:7 120:8 120:11 120:14 120:19 120:22 120:22 121:4 121:4 121:5 121:10 121:13 121:14 121:15 121:19 121:24 122:1 122:5 122:13 122:25 122:25 123:1 123:2 123:6 123:6 123:8 123:10 123:12 123:18 124:7 124:9 124:16 124:23 124:25 125:4 125:8 125:12 125:20 125:23 126:3 126:13 126:19 126:24 127:4 127:9 127:12 128:1 128:1 128:2 128:5 128:11 128:12 128:22 128:23 129:3 129:8 129:10 129:13 129:14 129:15 129:17 129:19 130:3 130:7 130:10 130:15 130:19 130:21 130:24 130:25 131:6 131:8 131:11 131:14 131:21 131:21 131:23 132:8 132:10 132:16 132:20 132:24 132:25 132:2 133:8 133:10 133:11 133:12 133:15 133:17 133:21 133:24 134:11 134:13 134:16 134:19 134:23 134:25 135:2 135:3 135:11 135:15 135:19 135:24 136:1 136:4 136:7 136:8 136:10 136:13 136:14 136:16 136:22 137:8 137:10 137:25 138:4 138:9 138:12 138:13 138:16 138:17 138:19 138:22 139:6 139:6 139:12 139:16 139:17 139:18 139:19 139:25 140:3 140:4 140:5 140:8 140:10 140:18 140:24 140:24 141:6 141:7 141:8 141:14 141:23 142:1 142:3 142:14 142:15 142:17 142:22 142:23 143:5 143:6 143:7 143:8 143:9 143:11 143:12 143:16 143:20 143:23 143:25 144:3 144:4 144:6 144:7 144:10 144:11 144:13 144:14 144:14 144:15 144:17 144:20 144:22 145:12 145:12 145:15 145:21 145:24 146:2 146:3 146:5 146:11 146:12 146:18 146:21 146:22 146:24 146:24 147:6 147:9 147:11 147:12 147:12 147:14 147:24 148:2 148:3 148:4 148:8 148:9 148:11 148:13 148:14 148:15 148:17 148:23 148:25 149:6 149:10 149:21 149:22 149:24 150:3 150:7 150:10 150:11 150:13 150:15 150:20 150:20 151:1 151:5 151:7 151:9 151:12 151:14 151:15 151:19 151:21 151:25 152:2 152:3 152:6 152:9 152:9 152:9 152:13 152:15 152:15 152:15 152:18 152:19 152:21 152:23 153:8 153:22 153:24 154:4 154:4 154:5 154:10 154:13 154:13 154:15 154:19 155:2

| Word | Page:Line |
|------|-----------|
| **and**(301) | 155:3 155:5 155:10 155:11 |
| | 155:12 155:14 155:16 155:16 155:23 156: |
| | 156:5 156:8 156:12 156:13 156:16 156: |
| | 156:23 156:25 157:2 157:3 157:7 157:7 |
| | 157:9 157:10 157:12 157:19 157:21 157:2 |
| | 157:23 158:7 158:11 158:14 158:16 |
| | 158:18 158:19 158:20 159:10 159:15 |
| | 159:16 159:19 159:19 159:20 160:4 160:1 |
| | 160:12 160:12 160:13 160:14 160:17 |
| | 160:21 160:25 161:2 161:3 161:4 161:6 |
| | 161:16 161:17 161:20 161:24 161:25 162: |
| | 162:3 162:9 162:15 162:19 162:22 162:2 |
| | 163:1 163:5 163:11 163:12 163:12 163:15 |
| | 163:16 163:18 163:25 164:1 164:2 164:3 |
| | 164:10 164:12 164:15 164:20 164:20 |
| | 164:24 165:2 165:3 165:4 165:6 165:9 |
| | 165:17 165:18 165:20 165:22 165:25 166: |
| | 166:7 166:10 166:14 166:15 166:16 |
| | 166:19 166:21 166:22 166:22 167:2 167:3 |
| | 167:5 167:12 167:16 167:16 167:17 167:1 |
| | 167:20 167:23 167:25 168:1 168:3 168:4 |
| | 168:6 168:7 168:11 168:17 168:21 168:23 |
| | 169:2 169:12 170:6 170:7 170:15 170:16 |
| | 170:18 170:23 170:25 171:3 171:6 171:9 |
| | 171:11 171:12 171:16 171:17 172:9 172:1 |
| | 172:12 172:13 172:25 173:3 173:5 173:9 |
| | 173:10 173:11 173:12 173:17 173:18 |
| | 173:20 173:22 173:24 174:1 174:2 174:3 |
| | 174:3 174:5 174:11 174:15 174:18 174:22 |
| | 175:1 175:2 175:4 175:5 175:8 175:8 |
| | 175:10 175:12 175:18 175:18 175:22 |
| | 175:23 175:24 176:2 176:7 176:10 176:11 |
| | 176:17 176:21 177:1 177:5 177:9 177:18 |
| | 177:19 177:22 177:23 178:8 178:12 178:15 |
| | 178:22 179:2 179:3 179:4 179:17 179:19 |
| | 179:20 179:22 179:23 179:23 179:24 |
| | 180:14 180:17 180:18 180:20 181:1 181:4 |
| | 181:7 181:11 181:12 181:12 181:17 181:2 |
| | 182:11 182:13 182:16 182:20 182:22 |
| | 183:9 183:10 183:19 184:1 184:4 184:11 |
| | 184:13 184:18 184:25 185:7 185:9 185:13 |
| | 185:19 186:13 186:16 186:18 186:22 187: |
| | 187:7 187:8 187:10 187:17 188:5 188:17 |
| | 188:18 189:3 189:3 189:4 189:7 189:14 |
| | 189:17 189:23 189:24 189:25 190:1 190:9 |
| | 190:12 190:15 190:18 190:20 190:22 |
| | 190:25 190:25 191:3 191:8 191:10 191:14 |
| | 191:19 191:20 192:3 192:3 192:12 192:14 |
| | 192:18 192:20 193:1 193:3 193:9 193:12 |
| | 193:18 193:19 193:19 193:23 193:24 194: |
| | 194:12 194:14 194:16 195:2 195:3 195:7 |
| | 195:14 195:19 195:20 195:22 195:22 196: |
| | 196:3 |

| Word | Page:Line |
|------|-----------|
| **and**(155) | 196:6 196:10 196:16 196:21 |
| | 196:23 197:1 197:4 197:11 197:13 197:18 |
| | 197:19 197:22 197:25 198:1 198:4 198:4 |
| | 198:6 198:11 198:12 198:15 198:15 198:1 |
| | 198:18 198:19 198:19 198:22 199:4 199:6 |
| | 199:6 199:8 199:9 199:11 199:24 200:1 |
| | 200:7 200:12 200:14 200:18 200:20 200:2 |
| | 201:7 201:10 201:11 201:15 202:6 202:12 |
| | 202:22 202:25 203:1 203:3 203:7 203:10 |
| | 203:13 203:21 203:24 204:4 204:5 204:12 |
| | 205:7 205:16 205:17 205:17 205:21 206:3 |
| | 206:5 206:13 206:18 206:19 206:23 207:2 |
| | 207:3 207:12 207:14 207:14 207:18 208:2 |
| | 208:4 208:9 208:9 208:13 208:21 208:22 |
| | 209:4 209:14 209:18 210:1 210:8 210:9 |
| | 210:11 210:12 210:16 210:17 210:25 211:2 |
| | 211:22 212:7 212:9 212:15 213:3 213:5 |
| | 213:8 213:22 214:4 214:10 214:13 214:13 |
| | 214:16 214:19 215:11 215:12 215:12 |
| | 215:15 216:4 216:6 216:8 216:9 216:12 |
| | 216:13 216:18 216:19 216:20 216:22 |
| | 216:25 217:2 217:5 217:10 217:14 217:17 |
| | 217:19 218:1 218:6 218:8 218:11 218:13 |
| | 218:23 218:25 219:3 219:5 219:15 219:18 |
| | 220:1 220:5 220:20 220:21 220:24 221:3 |
| | 221:8 221:10 222:1 222:8 222:10 222:12 |
| | 223:9 223:9 223:16 |
| **and-a-half**(1) | 102:20 |
| **anderson**(1) | 2:19 |
| **andrea**(1) | 5:5 |
| **andrew**(7) | 3:22 6:19 6:35 8:42 9:32 10:33 |
| | 14:5 |
| **angeles**(2) | 2:16 100:12 |
| **angelo**(12) | 2:4 10:32 10:32 170:15 170:16 |
| | 170:23 170:25 171:6 171:9 171:11 172:9 |
| | 173:6 |
| **anna**(2) | 7:41 7:41 |
| **annex**(1) | 92:20 |
| **announced**(4) | 51:22 96:18 97:1 120:18 |
| **announcement**(1) | 128:19 |
| **another**(20) | 49:3 59:17 60:16 60:22 63:15 |
| | 64:2 73:19 100:4 108:14 117:6 125:21 |
| | 160:10 187:15 187:18 195:10 195:19 |
| | 200:10 209:6 219:17 222:15 |
| **answer**(15) | 17:13 33:4 59:2 60:19 60:20 |
| | 68:18 77:24 100:18 108:16 167:4 167:5 |
| | 201:10 203:8 203:17 211:7 |
| **answers**(2) | 69:25 84:1 |
| **anticipate**(2) | 16:12 180:7 |
| **anticipated**(1) | 105:16 |
| **any**(107) | 15:8 17:17 18:6 19:10 26:13 |
| | 27:25 28:12 28:15 28:16 29:2 29:8 31:5 |
| | 33:2 35:2 35:7 35:13 36:1 36:7 37:16 |
| | 37:24 38:13 39:19 48:17 53:19 56:2 56:2 |
| | 57:13 58:17 62:6 62:7 62:21 68:18 71:13 |
| | 73:21 73:25 75:20 76:13 80:3 81:11 81:1 |
| | 86:10 86:18 93:14 97:17 99:20 103:4 |
| | 112:19 123:12 125:1 131:13 132:2 135:23 |
| | 137:14 137:14 139:6 139:6 144:22 145:2 |
| | 152:5 157:1 159:14 159:15 159:20 160:4 |
| | 160:5 160:7 160:7 163:3 163:5 163:21 |
| | 164:5 164:6 164:19 166:13 168:16 168:20 |
| | 169:4 171:5 171:7 171:21 172:4 174:14 |
| | 177:3 178:18 181:14 182:21 184:23 190:6 |
| | 190:10 195:9 195:9 200:6 201:2 201:9 |
| | 201:18 203:18 204:10 205:6 207:8 207:8 |
| | 207:18 208:10 208:17 210:14 216:20 |
| | 220:21 223:13 |
| **anybody**(3) | 79:4 131:18 201:13 |
| **anyone**(6) | 24:9 24:12 65:17 86:10 142:6 |
| | 186:14 |
| **anyone's**(1) | 45:17 |

| Word | Page:Line |
|------|-----------|
| **anything**(18) | 38:1 42:14 44:18 46:19 54:2 |
| | 74:22 84:14 127:15 137:18 159:23 182:14 |
| | 182:15 183:21 190:11 192:4 218:19 222:1 |
| | 223:23 |
| **anyway**(1) | 86:9 |
| **anywhere**(3) | 26:22 35:7 66:3 |
| **apart**(1) | 147:9 |
| **apologize**(1) | 112:6 |
| **apparent**(2) | 20:22 27:9 |
| **apparently**(3) | 40:1 109:11 110:13 |
| **appeal**(1) | 90:12 |
| **appear**(1) | 113:5 |
| **appearances**(10) | 5:40 6:2 7:1 8:1 9:1 10:1 |
| | 11:1 12:1 13:2 14:1 |
| **appears**(3) | 119:25 172:25 177:1 |
| **appendix**(2) | 23:3 201:7 |
| **applicable**(2) | 55:17 62:9 |
| **application**(1) | 170:25 |
| **applications**(1) | 208:23 |
| **applied**(5) | 64:20 116:3 132:23 141:23 |
| | 161:17 |
| **applies**(2) | 137:25 143:20 |
| **apply**(8) | 135:11 135:12 135:13 141:16 |
| | 142:3 161:25 162:1 164:6 |
| **applying**(2) | 113:20 207:9 |
| **appointed**(1) | 61:12 |
| **appreciate**(6) | 16:1 98:12 157:3 180:14 |
| | 222:1 223:13 |
| **appreciated**(3) | 113:7 113:15 120:2 |
| **approach**(10) | 24:23 37:14 48:20 51:4 |
| | 117:5 119:4 154:6 168:10 168:19 178:2 |
| **approached**(1) | 156:14 |
| **appropriate**(17) | 16:11 44:15 81:8 82:2 |
| | 82:24 117:22 118:4 145:7 145:8 147:21 |
| | 149:4 150:15 155:6 155:16 159:13 168:17 |
| | 184:19 |
| **appropriately**(1) | 178:18 |
| **approval**(14) | 45:21 45:22 45:24 47:10 |
| | 83:22 115:8 115:9 145:24 160:5 170:7 |
| | 170:11 172:14 172:21 210:20 |
| **approve**(11) | 16:4 16:19 17:12 18:3 25:16 |
| | 42:18 43:4 47:3 144:24 155:15 205:10 |
| **approved**(9) | 87:23 96:9 115:4 182:2 198: |
| | 210:9 210:16 210:16 211:6 |
| **approving**(1) | 150:20 |
| **approximately**(4) | 94:7 99:4 116:10 203:5 |
| **april**(20) | 91:14 96:25 107:10 108:18 |
| | 108:21 108:24 112:25 128:19 145:18 |
| | 145:25 147:9 159:5 160:2 162:13 179:13 |
| | 187:10 187:16 187:18 195:17 199:17 |
| **april'**(1) | 109:14 |
| **architect**(1) | 147:25 |
| **archview**(1) | 13:9 |
| **arduous**(1) | 70:14 |

| Word | Page:Line |
|------|-----------|
| **are**(220) | 15:16 18:10 19:18 21:16 23:3 |
| | 24:5 24:12 24:18 24:19 26:5 27:12 27:14 |
| | 27:22 28:6 28:19 29:1 30:23 31:3 32:14 |
| | 33:1 33:9 33:10 35:1 35:13 36:17 37:11 |
| | 38:11 39:24 40:5 40:7 40:10 41:12 41:25 |
| | 42:9 42:12 43:22 45:9 45:14 45:15 46:17 |
| | 49:12 50:8 51:14 51:15 53:1 53:6 53:7 |
| | 53:18 54:2 57:14 57:18 57:25 58:5 59:25 |
| | 60:4 60:17 61:25 62:5 62:15 62:17 65:12 |
| | 65:16 66:10 66:11 66:18 68:3 68:10 68:11 |
| | 69:25 71:5 71:6 71:16 73:24 74:5 74:15 |
| | 78:17 78:20 79:14 79:19 79:22 80:7 81:10 |
| | 83:8 83:16 85:8 86:13 88:15 88:15 88:18 |
| | 88:19 88:21 90:21 91:24 92:11 93:6 93:16 |
| | 101:2 101:13 103:21 105:21 111:1 111:14 |
| | 112:1 112:14 113:23 117:8 117:8 118:8 |
| | 118:14 118:16 122:14 127:3 127:21 128:6 |
| | 133:18 134:22 134:23 135:10 135:16 |
| | 136:10 136:14 136:19 137:6 137:25 138:5 |
| | 139:11 139:18 139:20 140:1 140:5 140:6 |
| | 141:10 141:10 141:11 141:14 142:25 |
| | 143:18 144:8 144:22 148:22 148:24 149:20 |
| | 149:21 150:7 150:8 152:8 152:15 153:16 |
| | 154:11 155:20 157:24 159:17 161:22 |
| | 161:24 163:20 165:1 165:11 165:24 166:2 |
| | 166:7 169:11 169:15 170:21 170:22 171:12 |
| | 171:13 172:9 172:11 172:23 173:10 |
| | 175:13 176:16 177:4 178:11 184:3 182:4 |
| | 182:6 182:10 182:14 182:15 191:15 192:11 |
| | 195:23 196:2 199:5 200:9 201:2 201:6 |
| | 201:9 202:13 203:8 203:10 203:10 204:7 |
| | 205:12 206:23 207:1 207:20 207:21 208:5 |
| | 208:5 208:22 208:22 208:23 208:25 209:21 |
| | 210:22 211:20 212:7 212:17 213:10 |
| | 213:16 213:23 215:24 216:22 216:23 |
| | 217:14 220:9 222:1 222:11 |
| **area**(2) | 49:4 80:4 |
| **areas**(2) | 116:7 182:8 |
| **aren't**(4) | 33:25 77:10 80:4 133:19 |
| **argue**(6) | 74:25 76:13 76:15 172:3 191:20 |
| | 192:14 |
| **argued**(8) | 141:19 152:5 158:9 179:11 |
| | 186:12 186:25 189:12 189:13 |
| **argues**(2) | 152:8 153:7 |
| **arguing**(3) | 115:7 115:11 153:16 |
| **argument**(43) | 15:15 26:16 29:6 30:6 30:8 |
| | 31:21 33:9 33:13 33:18 35:9 35:14 35:15 |
| | 35:16 35:19 35:21 36:6 36:12 36:14 43:10 |
| | 44:21 47:10 65:23 76:15 78:17 93:24 |
| | 137:14 137:21 144:12 154:3 179:13 187:16 |
| | 188:22 191:4 195:25 196:3 196:6 196:14 |
| | 196:15 196:18 196:19 204:18 210:6 212:25 |
| **arguments**(24) | 15:10 18:14 30:23 31:2 |
| | 31:4 35:19 35:23 36:3 36:5 70:20 136:18 |
| | 138:19 138:24 139:2 185:5 188:8 190:20 |
| | 193:24 196:6 196:16 196:19 196:22 197:25 |
| | 220:8 |
| **arise**(1) | 172:4 |
| **arising**(1) | 209:20 |
| **arm**(1) | 96:7 |
| **arm's-length**(1) | 153:15 |
| **arms**(1) | 154:11 |
| **around**(2) | 123:5 148:17 |
| **arps**(1) | 13:38 |
| **arrangers**(2) | 90:25 141:1 |
| **arriving**(1) | 116:2 |
| **arrowgrass**(2) | 9:40 9:40 |
| **arthur**(1) | 11:33 |
| **article**(1) | 130:25 |
| **articles**(2) | 96:19 129:9 |
| **ascertainable**(1) | 186:4 |
| **ascribed**(2) | 218:19 219:3 |
| **ashby**(1) | 4:27 |
| **ashih**(1) | 10:21 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| ashley(1) 3:23 | | auspices(1) 195:17 | | balances(2) 23:18 23:19 | | before(75) 1:18 15:25 16:3 17:6 22:8 25:7 | |

**ashley**(1) 3:23
**aside**(2) 162:9 174:8
**ask**(24) 17:25 39:7 40:12 41:14 41:22 42:4 43:3 43:24 54:14 54:15 65:11 77:16 82:15 106:18 132:10 180:4 193:16 196:22 198:12 207:21 213:14 220:4 221:9 222:13

**asked**(22) 45:3 64:9 69:24 75:25 84:1 116:23 124:19 130:7 134:20 143:3 151:21 157:5 165:16 165:21 166:24 166:25 167:4 194:15 202:2 202:21 203:6 212:2

**asking**(6) 39:24 40:11 86:25 108:11 191:15 208:25

**aspect**(3) 157:25 160:11 182:21
**aspects**(5) 49:11 113:14 117:24 118:4 144:22

**assembled**(1) 88:2
**assert**(4) 59:25 75:19 78:10 191:8
**asserted**(1) 191:5
**asserting**(2) 59:16 66:11
**assertion**(3) 55:2 179:21 193:14
**assertions**(2) 194:13 201:1
**assess**(1) 165:9
**assessed**(1) 49:15
**assesses**(2) 71:23 71:24
**assessing**(1) 155:20
**assessment**(4) 27:20 41:19 77:17 90:10
**assessments**(1) 18:24
**asset**(3) 11:28 11:28 184:7
**assets**(13) 19:19 21:10 21:15 36:21 57:14 63:23 81:16 123:9 133:2 183:14 183:20 212:22 213:4

**assign**(4) 93:14 163:13 166:11 166:20
**assigned**(5) 127:23 163:16 163:18 167:1 168:5

**assignment**(2) 148:25 167:25
**assistance**(1) 18:13
**associated**(2) 132:24 139:11
**assume**(14) 64:23 65:4 114:2 117:11 118:8 123:9 123:14 148:16 154:8 154:15 154:16 163:22 205:1 218:16

**assumed**(14) 21:10 34:20 65:13 65:20 65:24 65:25 65:25 73:16 79:12 79:16 111:21 130:14 215:8 218:10

**assumes**(6) 65:14 109:22 136:22 139:23 143:8 203:19

**assuming**(4) 49:23 65:6 65:7 76:7
**assumption**(10) 35:2 37:17 38:19 64:21 65:18 65:23 65:23 116:18 139:23 190:10

**assumptions**(1) 189:9
**asylum**(1) 4:6
**attached**(1) 23:13
**attack**(3) 40:8 216:18 216:19
**attempt**(1) 174:20
**attempted**(2) 161:2 161:9
**attendant**(1) 174:11
**attention**(2) 189:20 188:21
**attitude**(1) 46:10
**attractive**(1) 81:2
**attributable**(6) 170:9 171:1 171:3 171:7 171:13 201:6

**attributes**(2) 76:25 117:23
**auction**(2) 57:1 57:2
**august**(2) 105:14 105:25
**aurelius**(17) 4:17 8:4 8:5 42:12 66:21 66:25 67:1 67:8 78:3 83:10 84:22 94:4 132:8 145:18 156:22 173:17 184:15

**aurelius'**(2) 91:11 223:4

**auspices**(1) 195:17
**austin**(3) 1:23 7:4 148:24
**author**(2) 87:4 109:20
**authority**(2) 146:17 146:18
**availability**(1) 123:15
**available**(8) 39:20 50:11 50:13 50:16 107:25 122:12 129:4 168:22

**ave**(2) 1:34 2:15
**avenue**(4) 2:36 3:6 5:6 5:24
**average**(3) 93:18 112:2 112:3
**avoid**(7) 23:23 27:10 35:18 133:20 172:6 217:1 217:1

**avoidable**(1) 209:22
**avoidance**(72) 19:6 19:8 22:9 22:9 22:10 22:11 22:19 24:14 24:14 24:15 24:16 25:22 26:22 26:24 27:10 28:21 29:18 30:22 31:1 31:2 31:21 32:14 32:20 33:24 34:3 34:7 34:10 34:11 34:17 34:24 38:24 61:2 61:3 61:4 63:4 63:5 72:16 77:1 77:4 88:21 135:20 136:2 136:7 136:8 136:20 137:8 138:19 139:11 139:13 139:22 140:2 140:3 140:4 140:11 141:18 142:8 142:14 142:19 143:21 144:5 163:23 163:2 203:4 207:12 208:2 209:4 209:5 216:21 216:25 217:4 217:9

**avoided**(19) 19:11 22:12 26:11 135:24 136:20 136:25 137:1 137:25 138:4 138:18 142:22 143:8 143:9 143:15 203:3 217:14 217:19 217:23 218:13

**avoiding**(2) 26:18 27:16
**avoids**(1) 173:9
**aware**(8) 15:16 20:4 20:21 42:8 97:1 105:25 106:1 171:22

**away**(13) 46:12 60:10 63:24 89:9 91:14 121:18 123:15 155:18 156:4 159:11 189:2 208:7 218:2

**awful**(2) 94:5 94:6
**awfully**(1) 134:3
**awhile**(2) 167:3 184:25
**awkward**(1) 206:10
**b-plus**(1) 204:12
**ba-3**(1) 204:11
**back**(41) 26:16 46:3 46:19 50:12 52:12 53:9 53:11 56:16 57:22 58:24 59:9 62:20 68:11 84:4 86:4 92:18 100:5 103:5 110:4 132:3 136:22 142:5 142:17 142:22 144:24 144:10 145:21 157:22 159:4 160:2 162:13 163:17 166:10 177:23 180:13 184:25 189:22 194:14 198:11 203:23 217:7

**backbone**(1) 205:22
**backed**(1) 126:1
**backend**(2) 102:9 216:5
**backend-loaded**(1) 113:10
**background**(6) 52:3 133:1 148:12 199:5 205:4 206:16

**backing**(1) 133:21
**backs**(1) 126:10
**backup**(1) 166:18
**bad**(7) 55:19 59:1 96:24 152:25 159:21 195:20 197:20

**badges**(1) 105:8
**baiera**(1) 10:33
**balance**(21) 20:3 20:4 20:11 21:19 25:21 28:19 29:6 29:10 29:16 29:23 31:8 31:10 38:9 49:22 50:2 71:9 76:8 167:10 167:14 175:24 196:10

**balance-sheet**(9) 114:2 114:3 115:22 116:20 119:22 120:5 121:8 121:13 121:18

**balanced**(1) 166:14

**balances**(2) 23:18 23:19
**bale**(1) 5:44
**banc**(2) 5:22 12:22
**band**(1) 70:2
**bang**(1) 28:3
**bank**(10) 6:22 6:26 8:25 9:8 12:30 13:5 13:5 14:4 137:8 134:13

**bank's**(1) 134:22
**banker**(3) 58:21 58:24 134:24
**bankers**(4) 100:4 124:18 124:21 125:23
**banking**(2) 56:14 133:19
**bankruptcy**(30) 1:1 1:19 17:8 48:2 55:1 56:6 56:6 62:3 69:22 83:1 83:3 106:20 121:21 129:8 139:5 142:21 142:21 157:10 161:5 170:4 170:7 177:3 177:9 178:15 183:8 196:24 201:18 202:7 218:21 218:23

**banks**(10) 68:4 68:5 73:1 112:12 125:3 126:23 127:11 133:18 137:7 177:4

**bar**(4) 101:4 101:5 122:9 122:11
**barclays**(3) 3:4 8:29 8:29
**barely**(2) 25:12 108:14
**bargaining**(1) 153:15
**barnes**(1) 5:10
**base**(4) 22:18 161:8 164:8 222:22
**baseball**(4) 47:2 47:11 47:12 115:8
**based**(32) 25:4 27:23 33:7 38:25 76:11 79:11 79:13 79:14 79:16 79:17 80:14 81:2 82:1 90:10 92:5 112:24 120:16 132:25 137:9 139:2 139:3 141:3 141:5 142:15 165:21 173:4 183:6 183:6 197:14 197:16 201:12 219:13

**bases**(1) 217:19
**basically**(3) 37:7 80:24 181:2
**basis**(12) 29:10 40:8 71:21 79:9 99:21 116:16 129:4 175:15 197:18 210:20 214:12 215:9

**bayou**(1) 142:10
**bear**(5) 23:21 41:23 134:20 160:4 169:9
**became**(3) 101:21 105:25 106:1
**because**(97) 20:12 21:14 24:5 25:16 25:20 26:18 30:12 30:16 30:20 31:9 32:8 33:15 38:18 38:19 39:11 44:14 45:10 45:11 45:16 45:18 46:20 48:19 49:23 50:20 53:13 53:19 54:10 54:13 54:21 55:7 56:19 57:25 60:24 61:11 61:11 61:22 62:16 63:3 63:13 65:22 65:8 66:6 68:4 70:18 81:3 85:9 85:13 87:14 94:6 94:10 94:12 97:2 106:23 114:17 115:13 129:16 129:23 158:8 136:9 139:10 144:10 145:18 152:13 158:9 160:1 165:18 167:12 170:13 170:21 170:25 180:19 182:14 183:23 183:25 184:14 186:8 189:8 189:24 192:16 196:1 196:4 196:14 196:14 196:18 197:1 197:10 197:20 198:2 199:23 200:5 206:1 213:9 214:3 214:22 218:17

**become**(1) 59:2
**becomes**(1) 95:4
**becoming**(1) 55:11
**been**(57) 15:19 17:21 22:25 44:13 46:7 46:10 51:24 52:21 62:6 62:9 62:10 63:10 63:11 66:19 70:17 72:4 78:4 78:5 78:9 78:18 79:1 82:7 90:19 107:19 113:14 113:17 114:1 135:21 137:5 142:3 150:4 152:6 154:3 154:12 161:17 169:18 182:8 182:12 182:21 183:5 183:22 191:17 194:5 194:11 195:2 196:9 200:15 201:13 203:14 206:7 208:15 210:16 211:4 221:4 222:8 222:11 223:18

**before**(75) 1:18 15:25 16:3 17:6 22:8 25:7 29:12 37:1 45:12 46:16 51:25 52:10 52:11 55:9 55:10 58:11 71:14 71:15 71:23 71:24 72:15 79:1 79:2 84:9 84:14 88:18 88:19 92:14 95:9 95:16 96:11 96:18 99:18 100:1 101:16 104:19 106:7 108:3 108:25 109:16 118:2 118:6 119:13 128:9 129:14 138:8 143:2 144:21 145:16 146:8 150:23 151:13 159:19 159:20 160:19 161:18 162:1 162:8 162:19 163:2 166:23 166:23 168:7 176:20 182:22 184:15 186:11 187:6 195:12 202:3 203:1 206:3 209:15 210:2 215:20

**began**(2) 95:8 110:13
**begin**(5) 61:24 143:18 178:15 178:23 218:1
**beginning**(10) 48:18 59:10 86:12 92:25 100:12 100:16 102:13 194:11 196:16 196:20

**behalf**(6) 44:5 82:20 94:4 107:2 194:3 201:22

**behind**(1) 220:11
**being**(34) 49:23 90:14 97:9 100:5 100:8 104:7 111:23 113:10 115:16 125:14 126:12 126:14 137:1 141:5 143:15 143:15 147:4 151:7 154:18 155:3 157:5 157:14 162:3 162:4 182:6 183:6 186:19 193:9 195:11 218:13 219:23 219:24 222:9 222:23

**belabor**(2) 39:10 39:22
**belief**(2) 130:15 201:15
**believe**(48) 15:21 17:6 22:14 23:9 25:17 25:24 26:10 37:3 35:3 35:8 36:14 37:3 68:10 68:12 70:25 75:17 82:1 91:9 91:10 91:22 100:14 115:10 118:17 135:19 136:13 138:2 139:13 140:5 141:17 144:3 144:7 153:14 156:11 158:1 159:10 161:7 176:4 180:9 183:23 185:14 191:8 191:13 194:19 200:1 201:19 202:18 203:6 221:15

**believed**(7) 24:9 30:1 109:15 179:7 191:9 199:13 214:16

**believes**(6) 16:17 19:23 25:14 27:18 68:1 83:15

**bellack**(4) 102:23 198:16 198:17 198:20
**belonged**(2) 21:10 21:11
**below**(4) 107:4 121:1 127:12 192:25
**ben**(1) 8:30
**benchmark**(1) 210:21
**bendernagel**(16) 1:24 17:4 35:4 68:21 68:23 69:3 69:5 69:10 69:15 69:16 70:4 70:8 70:11 169:9 177:15 198:9

**bendernagel's**(1) 168:8
**bendernagle**(1) 198:9
**benefit**(25) 26:1 42:1 61:2 61:25 62:7 63:23 116:22 139:16 139:24 144:18 141:23 142:2 142:7 142:13 164:7 178:13 181:4 181:6 203:4 207:13 207:16 207:24 212:8 217:10

**benefited**(1) 143:1
**benefiting**(2) 137:7 207:20
**benefits**(8) 89:10 89:11 136:20 138:25 140:11 141:24 182:23 183:2

**benefitting**(2) 62:16 62:18
**bennett**(47) 2:13 16:19 16:23 16:25 26:3 26:6 35:10 35:14 36:5 44:4 44:5 45:7 47:6 47:16 47:19 50:15 65:1 68:20 70:21 70:22 75:24 115:8 128:10 129:2 129:5 129:22 136:8 139:18 140:20 141:12 141:22 143:1 143:17 180:13 180:16 184:20 184:22 191:15 202:9 203:22 203:23 206:12 208:19 208:21 212:14 214:1 216:17

**benson**(3) 4:39 9:35 223:16
**bernstein**(4) 2:32 194:2 194:2 218:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**beron**(24) 24:4 37:8 37:11 38:12 38:15 38:25 49:7 60:16 160:12 160:13 161:3 164:9 168:19 168:25 189:23 189:24 190:3 190:5 190:18 200:7 219:6 219:6 219:11 219:19

**beron's**(4) 37:20 39:2 59:24 164:18

**beron's**(1) 92:2

**best**(9) 18:23 44:16 56:10 61:13 83:24 88:15 97:20 147:16 205:22

**bet** (3) 31:19 36:7 65:3

**beth**(1) 13:18

**bets**(1) 52:24

**better**(15) 23:22 24:21 30:14 34:10 34:23 38:10 50:20 54:8 68:4 68:16 71:17 92:19 93:20 129:16 197:13

**between**(26) 16:8 25:21 38:3 38:6 43:18 58:9 67:9 67:16 68:8 68:13 82:19 92:8 121:3 142:12 155:2 158:16 168:5 176:5 176:8 187:7 190:7 190:9 203:7 203:20 214:2 221:2

**beyond**(6) 79:7 105:9 191:16 218:9 218:13 219:7

**bias**(1) 74:16

**bid**(2) 54:14 54:15

**bifferato**(1) 4:32

**big**(9) 28:20 31:8 31:9 32:8 32:14 41:21 138:12 193:22 193:22

**bigelow**(9) 9:18 106:5 106:15 106:18 107:14 186:20 186:21 186:23 187:17

**bigger**(3) 21:4 34:19 81:4

**biggest**(3) 62:20 62:21 221:15

**bill**(1) 4:28

**billion**(43) 20:6 21:1 29:1 29:7 30:17 32:5 33:1 33:19 34:20 35:1 35:7 35:8 43:11 57:15 90:7 90:13 90:22 95:3 116:1 116:10 123:20 129:11 134:1 134:2 138:1 138:3 138:5 138:9 142:4 143:14 151:20 156:19 156:20 175:6 176:3 202:14 202:24 203:1 213:4 215:8 217:23 218:8 220:1

**billy**(1) 21:14

**bilmes**(1) 11:4

**binder**(2) 62:21 221:15

**binding**(1) 182:16

**bit**(18) 24:22 46:5 46:20 46:21 46:22 49:5 49:16 49:21 66:18 85:22 87:13 88:22 167:3 180:21 186:12 199:1 204:13 222:23

**blabey**(1) 9:14

**black**(45) 23:10 72:3 72:5 72:5 72:10 72:10 72:19 72:24 73:15 74:3 74:14 76:14 76:20 76:24 94:20 94:21 95:25 103:15 104:5 104:20 106:24 107:1 107:10 120:21 121:4 121:10 121:17 128:17 132:25 160:1 160:13 160:15 162:5 162:10 164:10 164:16 165:22 168:24 168:25 190:3 199:2 200:1 200:10 200:16 219:14

**black's**(4) 163:10 163:21 164:23 165:25

**blacks**(1) 199:23

**black's**(3) 96:3 121:6 168:3

**blake**(1) 2:6

**blame**(1) 175:3

**blank**(3) 205:8 205:9 206:17

**blind**(1) 112:8

**blizzard**(1) 17:14

**block**(3) 5:16 8:41 221:21

**bloomberg**(3) 54:14 54:24 130:25

**blowing**(1) 55:23

**blown**(1) 113:3

**blue**(7) 111:17 112:1 112:7 122:16 122:16 122:17 143:12

| | | |
|---|---|---|

**board**(7) 5:28 99:17 115:4 146:21 166:5 176:22 177:18

**bockius**(1) 12:22

**bond**(5) 53:17 53:20 54:8 129:16 205:5

**bondholders**(1) 91:19

**bonds**(4) 91:21 129:13 147:13 147:14

**book**(2) 54:21 86:19

**books**(1) 62:7

**bookshelves**(1) 86:14

**both**(35) 18:17 23:24 23:24 24:15 24:17 24:17 26:24 27:11 27:16 34:8 55:18 55:15 67:3 79:16 79:22 92:3 114:25 115:1 115:8 120:6 129:17 144:6 150:11 156:11 157:19 165:6 172:13 174:3 179:12 182:19 182:20 195:22 199:25 213:21 217:14

**bother**(1) 124:25

**bottom**(11) 40:17 41:1 48:12 99:24 100:1 102:1 105:23 109:13 127:5 177:24 188:4

**bottom-line**(2) 168:20 219:7

**bound**(6) 159:22 159:24 159:25 193:3 193:4 193:9

**bowden**(1) 4:28

**box**(5) 120:10 123:5 143:12 164:3 173:25

**boxes**(1) 168:4

**boy**(2) 86:6 165:22

**bradford**(5) 5:17 147:2 220:14 221:20 221:20

**brainer**(1) 45:23

**brandywine**(1) 2:7

**brass**(1) 10:42

**break**(10) 64:3 64:5 68:22 69:12 84:4 84:13 84:14 180:2 180:11 211:11

**breaks**(1) 50:20

**breakup**(4) 47:22 47:22 48:1 49:14

**brett**(1) 7:5

**brian**(1) 13:34

**brickley**(1) 11:8

**bridge**(2) 175:23 202:17

**brief**(21) 44:10 82:22 96:2 97:16 136:1 140:7 143:24 144:16 144:17 146:13 158:3 158:4 163:19 165:7 170:1 180:2 201:7 212:6 214:9 215:5 220:9

**briefed**(1) 182:3

**briefing**(2) 75:13 88:12

**briefly**(14) 60:24 85:23 98:21 121:20 127:8 128:10 144:3 191:2 192:1 199:22 209:8 220:17 221:9 222:23

**briefs**(16) 18:19 37:15 39:7 39:13 39:23 56:25 61:21 75:9 75:16 78:16 105:7 127:10 143:23 179:12 189:13 190:16

**brigade**(1) 12:18

**bright-line**(1) 142:13

**bring**(7) 85:24 131:17 205:14 207:17 207:19 207:25 209:18

**bringing**(1) 217:7

**brings**(1) 151:5

**broad**(2) 82:22 139:4

**broadcast**(3) 79:4 79:5 80:24

**broadcasting**(5) 52:5 53:8 53:10 53:13 53:15

**broader**(1) 69:21

**broadway**(1) 4:42

**broker**(1) 195:13

**brought**(3) 128:10 130:19 153:22

**brown**(2) 4:4 12:43

**browning**(1) 117:13

**bruce**(4) 2:13 44:4 180:16 209:8

**bryan**(2) 7:9 222:5

| | | |
|---|---|---|

**bryant**(1) 4:23

**buck**(1) 28:4

**build**(1) 202:22

**building**(1) 2:7

**built**(1) 76:12

**bulk**(3) 19:14 33:2 219:21

**bullet**(2) 90:18 165:13

**bump**(1) 159:12

**bunch**(3) 16:23 30:21 208:13

**bundle**(2) 35:19 36:3

**buonome**(1) 5:29

**burden**(12) 87:19 87:20 87:22 87:23 88:8 88:10 88:13 89:3 89:15 135:15 138:22 160:18

**busath**(1) 2:34

**bush**(1) 3:30

**business**(21) 52:14 53:4 53:9 53:14 79:3 79:4 79:5 79:5 79:24 81:23 95:14 96:4 96:14 96:24 97:10 98:25 116:15 151:1 174:3 198:23 207:23

**businesses**(3) 53:1 176:18 187:23

**but**(185) 20:2 23:12 24:19 26:9 26:25 27:2 27:7 30:7 30:23 31:1 32:19 34:4 34:8 34:11 35:3 36:12 36:17 37:24 38:4 38:12 39:12 39:22 40:7 43:9 43:12 43:23 44:25 45:8 45:11 45:23 46:8 46:17 46:19 47:8 50:2 51:3 51:8 52:23 53:11 53:12 54:5 54:19 56:17 56:23 57:7 58:1 59:15 60:3 60:12 60:23 61:6 61:13 62:23 63:6 63:12 63:14 63:21 64:15 64:22 65:3 65:1 67:24 67:25 69:6 70:4 70:18 71:4 71:5 71:19 71:22 72:9 72:18 75:2 75:6 76:15 76:23 78:22 82:25 86:9 91:16 91:25 92:7 93:6 93:13 94:11 97:4 100:18 101:11 103:11 106:15 108:5 108:22 109:10 110:4 110:14 111:15 116:25 118:15 118:16 123:8 123:16 127:3 127:15 128:16 129:4 129:22 130:11 131:11 133:14 137:20 139:9 141:11 141:20 141:24 142:9 143:9 143:16 143:20 144:6 145:7 147:19 148:6 148:24 149:5 149:8 149:14 152:16 153:5 153:14 153:23 154:8 154:16 157:5 159:2 162:3 163:1 169:10 171:22 172:21 174:11 175:11 177:23 178:3 179:4 179:5 179:9 182:25 183:12 184:23 186:10 187:10 190:8 191:11 191:21 191:25 192:15 192:21 193:22 194:16 195:3 195:23 197:20 199:19 199:19 200:4 200:24 202:9 202:17 203:13 204:4 204:25 206:3 206:15 208:7 208:16 208:22 209:2 210:18 211:1 211:21 212:16 213:7 217:19 219:17 223:6 223:20

**buy**(1) 66:22

**buyer**(9) 116:18 116:18 117:12 117:12 117:24 118:9 118:12 118:19 118:22

**buyers**(2) 118:14 118:17

**buyout**(2) 135:5 135:13

**buyouts**(2) 132:24 191:18

**byun**(1) 11:12

**c."**(1) 167:20

**calaman**(1) 224:11

**calculate**(1) 217:23

**calculation**(2) 143:20 166:13

**calculations**(3) 168:22 169:11 203:5

**calendar**(1) 110:17

**call**(4) 48:6 49:18 54:19 103:13

**called**(15) 23:18 23:19 47:2 47:4 63:25 85:14 86:15 93:20 102:8 117:2 135:10 140:23 160:16 160:17 163:15

**calls**(1) 109:4

**call"**(1) 94:18

**came**(19) 32:21 57:22 58:7 67:4 76:11 76:13 81:22 84:4 89:25 92:12 100:25 101:20 108:13 132:12 142:22 144:21 159:20 220:1 223:6

**cames**(1) 157:11

| | | |
|---|---|---|

**camp**(2) 64:22 65:2

**campbell**(1) 50:8

**campbell's**(2) 128:11 128:22

**can**(82) 16:1 21:12 22:16 24:18 26:20 27:8 28:23 28:25 31:11 33:11 34:23 35:17 36:23 43:9 44:1 46:16 52:9 56:2 56:11 58:12 59:24 61:2 63:20 64:9 65:17 72:8 73:7 76:13 83:6 83:16 89:22 97:20 100:18 101:1 109:18 109:22 112:13 115:24 119:14 121:15 123:7 123:9 123:10 125:7 130:8 130:21 131:11 133:11 136:1 138:12 138:18 140:2 142:13 143:12 143:17 144:23 150:18 155:4 155:13 162:2 165:20 166:5 168:12 168:16 169:10 171:21 171:25 176:22 178:17 193:18 202:18 207:2 207:16 210:18 211:12 214:12 215:7 216:2 216:6 216:7 218:22 222:16 222:22

**can't**(18) 33:6 40:9 48:6 52:8 54:11 58:13 66:2 70:18 139:24 140:3 140:3 141:22 155:5 182:16 184:7 196:19 199:25 202:8

**cancelled**(1) 205:3

**candice**(1) 7:11

**candidate**(1) 86:8

**candidly**(2) 97:13 109:3

**cannot**(7) 46:19 83:12 83:14 179:22 201:24 207:17 210:20

**cantigny**(1) 10:6

**canvassed**(1) 101:16

**canvassing**(4) 138:22 165:3 166:5 199:15

**canyon**(2) 13:13 13:13

**can't**(11) 108:23 113:24 207:8 207:12 207:13 207:19 207:25 208:7 208:24 210:16 210:18

**capacity**(2) 157:1 192:17

**capital**(42) 5:42 5:42 8:4 8:5 9:40 9:40 10:28 11:11 11:18 11:18 11:22 11:22 11:36 12:8 12:18 13:21 13:21 13:29 13:29 21:21 22:2 31:12 39:15 71:17 84:22 121:19 121:22 122:5 122:22 123:3 132:20 161:16 167:10 173:17 174:1 188:11 188:14 188:19 188:25 189:6 215:1 215:17

**captured**(1) 206:25

**care**(1) 184:1

**career**(1) 117:14

**careerbuilder**(1) 105:17

**careful**(1) 68:22

**carefully**(2) 25:1 53:6

**carey**(2) 1:18 177:25

**carlan**(1) 1:25

**carlston's**(1) 151:10

**carlyle**(1) 5:22

**carnac**(1) 70:6

**carol**(1) 5:44

**carried**(1) 125:9

**caroon**(1) 2:19

**carrying**(1) 147:4

**carson**(1) 70:1

**carval**(2) 13:43 13:43

**carved**(1) 163:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**case**(118) 1:5 9:26 14:4 17:10 18:7 27:17 29:8 36:22 40:18 45:2 47:10 50:7 50:19 51:4 55:11 56:6 56:7 56:9 56:10 57:11 61:2 61:3 61:4 61:11 61:13 61:23 61:23 62:10 62:12 62:21 62:25 64:7 66:6 67:13 67:20 68:2 68:8 72:24 72:25 72:25 73:2 75:23 76:3 76:4 76:6 76:9 76:20 76:20 76:20 76:21 76:21 76:21 76:24 85:5 90:11 106:20 106:25 107:1 112:15 116:5 119:5 119:24 128:11 128:12 130:17 135:1 139:6 140:14 140:21 140:23 141:9 142:10 142:11 142:15 142:15 142:20 148:14 153:21 155:9 155:21 157:11 157:15 157:16 160:11 161:18 164:4 166:25 179:1 179:18 183:13 183:14 183:18 184:6 184:8 185:4 186:11 189:7 190:22 200:13 200:13 200:16 200:18 204:1 204:22 205:10 205:1 206:4 206:13 206:14 206:15 206:17 207:17 214:4 214:10 214:14 219:9

**cases**(51) 23:17 51:3 61:22 61:24 62:12 62:14 62:21 62:24 66:4 66:9 72:25 73:4 75:25 76:4 76:5 82:25 89:9 105:6 111:6 128:13 128:23 132:23 139:14 139:18 140:6 140:6 142:1 144:22 149:7 157:11 161:14 163:15 171:23 171:24 178:16 178:24 182:2 182:8 183:5 188:25 189:3 189:4 189:6 201:3 207:18 207:19 207:24 212:15 214:9 216:19

**cash**(12) 49:24 80:8 81:12 105:15 105:18 106:2 123:11 175:22 215:14 215:15 218:9

**cash-flow**(2) 99:3 122:11
**cash-flows**(1) 102:19
**cashed**(1) 134:11
**cashman**(2) 12:34 12:34
**cast**(1) 195:19
**catchy**(2) 64:1 64:2
**categorically**(1) 128:21
**category**(4) 34:15 123:25 125:2 127:17
**cause**(4) 170:11 170:12 172:6 202:6
**caused**(3) 55:14 88:24 178:24
**causes**(7) 93:9 137:15 174:10 174:13 175:5 175:17 178:25

**cds**(13) 54:9 54:10 55:6 55:23 128:9 128:25 129:2 129:3 129:8 129:15 129:21 130:1 130:24
**ceding**(1) 87:13
**cent**(3) 67:2 71:12 193:7
**centerbridge**(5) 145:19 146:3 186:3 187:1 195:16

**centerbridge's**(1) 145:24
**centered**(1) 205:10
**central**(4) 17:10 111:2 203:25 206:23
**centrality**(1) 103:7
**cents**(3) 66:21 66:22 192:8
**ceo**(1) 107:22
**certain**(20) 42:21 44:5 44:20 45:10 45:19 46:18 47:3 52:21 134:21 140:10 142:16 143:4 181:3 181:4 186:1 212:3 213:20 219:22 220:19 223:7

**certainly**(34) 16:7 24:18 35:22 43:16 49:18 49:19 49:20 51:8 51:25 56:3 59:5 59:16 59:25 77:23 83:22 97:5 97:15 99:1 109:15 132:16 133:16 133:19 134:12 135:1 137:19 141:7 141:13 141:21 141:23 145:17 148:1 156:14 157:18

**certainty**(1) 59:5
**certificate**(2) 66:1 115:10
**certification**(2) 220:25 224:4
**certify**(1) 224:5
**cfo**(1) 100:23
**chachas**(3) 34:21 80:11 81:6

**chad**(2) 126:3 126:6
**chadbourne**(4) 3:18 6:10 153:21 153:23
**chaim**(1) 11:25
**chairman**(2) 149:18 150:23
**challenge**(5) 19:24 30:16 60:10 137:12 216:19

**challenged**(3) 77:7 164:19 165:24
**challenges**(4) 29:2 29:22 53:2 53:7
**chance**(14) 29:12 30:9 36:9 36:24 38:10 71:10 71:12 89:5 135:18 138:23 157:17 166:4 166:7 191:12

**chances**(3) 38:7 157:9 193:22
**chandler**(4) 9:10 99:16 99:24 109:2
**chaney**(1) 13:14
**change**(8) 82:3 96:22 115:12 134:6 144:19 201:4 210:13 218:8

**changed**(3) 97:10 119:14 168:5
**changer**(1) 17:24
**changes**(3) 79:11 82:4 168:13
**changes."**(1) 210:14
**changing**(1) 184:18
**channel**(2) 80:5 80:5
**chaos**(1) 96:23
**chapter**(3) 1:8 175:15 178:22
**character**(1) 145:4
**characterization**(1) 192:22
**characterized**(1) 187:8
**characterizing**(1) 124:11
**charity**(1) 145:2
**chart**(62) 22:4 22:8 22:14 22:16 23:6 23:13 26:11 48:23 50:9 53:3 53:16 53:19 54:1 54:22 54:24 55:12 55:16 55:20 55:21 56:1 56:5 56:13 59:19 60:23 73:7 73:7 73:13 76:12 76:22 80:2 95:7 95:10 95:15 98:25 99:7 101:3 101:12 102:1 102:14 111:8 120:15 122:9 122:24 129:22 129:24 143:6 143:17 164:17 165:24 180:19 180:2 181:18 182:17 200:3 200:3 203:24 204:3 204:23 204:25 205:6 209:8 217:24

**chart's**(1) 53:14
**charted**(1) 164:9
**charts**(5) 45:9 52:16 79:21 171:14 204:2
**chase**(2) 8:25 12:30
**chasen**(2) 11:15 11:15
**check**(1) 113:14
**chicago**(4) 1:28 1:41 5:19 86:16
**chief**(2) 100:6 176:23
**children**(1) 64:22
**choice**(1) 83:24
**choose**(3) 40:5 50:25 87:5
**chooses**(1) 46:12
**chose**(6) 42:15 52:19 150:13 175:4 175:4 205:19

**chosen**(1) 87:4
**christine**(1) 9:37
**chung**(1) 6:27
**circle**(1) 130:21
**circled**(3) 120:17 121:15 129:25
**circuit**(12) 50:6 104:23 104:25 110:25 111:3 113:20 114:5 114:8 114:18 119:5 182:3 214:9
**circular**(1) 125:8
**circulating**(1) 51:23
**circulation**(3) 95:7 95:8 95:22
**circumstances**(3) 36:3 114:12 126:19

**citadel**(1) 10:16
**cite**(3) 111:5 171:24 201:3
**cited**(10) 66:4 124:15 127:10 129:10 131:1 140:6 148:13 157:11 188:2 188:5

**citi**(8) 11:40 125:17 125:22 125:23 126:10 126:11 126:15 126:18

**citibank**(5) 6:30 124:11 125:25 133:22 194:15

**citigroup**(4) 104:6 125:20 126:6 126:8
**citing**(1) 66:9
**citi'**(1) 126:13
**claim**(45) 27:6 27:6 27:21 27:24 28:11 28:16 33:5 34:14 36:24 41:5 42:14 63:14 65:19 65:20 67:23 93:5 136:4 136:10 136:24 137:15 138:15 138:17 139:6 152:4 157:6 158:3 159:8 159:9 159:11 159:15 160:20 165:14 191:9 191:12 192:3 192:5 192:22 192:23 192:24 193:23 208:12 209:16 209:23 210:7 212:7

**claimants**(3) 158:14 192:3 193:6
**claimed**(1) 159:13
**claiming**(2) 63:16 152:21
**claims**(134) 15:18 15:25 16:20 16:21 16:24 17:5 17:18 18:9 18:17 18:21 18:24 19:2 19:14 19:18 20:13 24:11 24:13 24:24 25:4 25:23 25:24 25:24 25:25 26:9 26:13 28:1 28:4 28:14 29:3 31:6 32:24 35:1 35:12 35:23 36:7 36:17 36:18 37:11 37:22 39:4 39:25 40:2 40:19 40:20 40:21 40:24 41:12 41:15 41:21 42:13 42:23 42:24 57:10 62:16 63:8 63:9 64:18 65:15 66:23 67:25 68:3 68:4 70:15 71:3 75:1 75:5 75:7 87:11 87:17 88:11 88:15 88:19 88:19 89:15 90:6 90:19 91:24 92:9 92:11 93:6 93:8 98:8 135:18 137:13 137:23 138:23 144:15 149:21 150:9 151:18 152:8 152:15 155:20 157:9 157:17 157:19 158:13 158:22 159:17 161:18 163:11 163:25 166:2 166:4 166:6 177:4 178:1 178:13 180:25 181:3 181:5 181:16 181:11 181:15 181:18 182:10 189:18 190:2 190:24 191:5 191:8 192:10 192:17 192:20 193:2 193:12 193:21 203:1 212:7 213:5 216:23 219:13 220:22

**claire**(1) 9:19
**clark**(1) 5:18
**class**(14) 42:5 42:14 83:13 83:14 158:3 158:4 158:9 158:13 179:11 183:17 183:19 183:24 184:7 213:11

**class's**(1) 160:6
**classes**(3) 42:10 43:1 183:16
**classified**(5) 57:20 58:4 105:17
**claw**(1) 142:17
**clawback**(1) 162:23
**cleanse**(1) 151:4
**clear**(23) 17:13 19:23 38:5 47:21 67:1 80:12 95:4 114:18 121:7 121:22 122:7 122:14 123:7 127:13 131:3 136:4 141:6 144:21 177:11 182:5 182:11 208:11 214:1
**clearly**(13) 32:5 35:6 50:10 88:14 96:4 99:13 100:25 108:1 119:5 119:24 181:13 188:22 195:23

**cleary**(1) 2:6
**clerk**(4) 15:2 69:14 84:19 211:19
**clerks**(1) 62:19
**client**(4) 149:11 149:13 149:14 184:16
**clients**(3) 133:20 154:9 169:1
**cliffs**(1) 75:7
**clip**(1) 177:20
**clock"**(1) 211:24
**close**(30) 20:9 20:20 27:22 30:5 30:7 34:25 35:7 44:9 48:17 49:2 49:18 51:15 58:12 84:12 94:18 96:11 99:18 102:1 103:17 108:25 109:20 110:1 110:18 119:15 120:4 130:4 130:23 148:4 151:20 217:24

**closer**(5) 32:5 32:5 50:2 95:12 121:5
**closest**(1) 107:5

**closing**(13) 15:10 51:19 52:18 54:11 84:24 95:19 109:12 133:16 186:4 187:7 199:11 204:16 204:17

**closings**(1) 15:22
**coalition**(2) 15:17 15:21
**cobb**(1) 3:11
**code**(15) 62:3 121:21 135:8 140:12 142:14 142:19 161:16 183:9 183:9 183:11 184:12 208:4 208:8 208:24 217:5

**code's**(1) 209:2
**cohen**(2) 14:12 135:1
**coincide**(2) 48:21 48:21
**cole**(2) 1:31 223:1
**collapse**(21) 20:8 20:10 20:12 20:14 20:18 28:22 28:23 29:10 29:12 29:16 29:17 29:24 30:8 31:8 39:16 49:3 49:8 49:18 49:23 75:24 76:1

**collapsed**(4) 20:5 29:5 48:7 49:1
**collapsing**(8) 45:13 45:22 111:13 113:25 114:7 114:16 115:7 115:11

**colleague**(1) 214:20
**colleagues**(3) 146:21 205:13 211:22
**collect**(1) 88:17
**collected**(1) 57:4
**collections**(1) 223:17
**collective**(1) 213:16
**collectively**(1) 128:3
**colleen**(1) 7:26
**color**(1) 112:8
**colorability**(1) 137:13
**colorable**(1) 137:21
**colorful**(1) 87:4
**column**(2) 72:9 143:19
**combination**(1) 79:16
**combined**(2) 90:22 167:19
**come**(42) 15:19 16:1 22:23 23:4 26:16 31:13 33:20 35:7 43:7 51:11 56:11 59:25 61:25 62:20 62:23 64:1 68:11 70:9 71:19 72:22 73:5 73:17 73:19 113:22 115:20 138:7 161:22 163:17 165:17 166:9 166:10 184:25 185:6 194:4 194:20 196:7 202:23 203:1 204:1 210:11 215:20 215:21

**comes**(18) 23:7 27:22 36:16 49:3 50:9 50:24 67:24 98:10 98:17 139:8 143:11 150:5 152:7 165:7 173:5 190:1 196:10 211:25
**comfort**(2) 125:14 155:18
**coming**(7) 72:11 81:8 157:4 182:24 194:8 195:18 217:22

**commen**(3) 141:9 162:16 199:21
**commentary**(1) 156:18
**commented**(2) 67:14 151:15
**commenting**(2) 67:15 147:13
**comments**(10) 85:8 91:8 135:15 155:1 156:3 172:12 172:19 179:5 219:6 221:23

**commercial**(2) 148:15 182:9
**commission**(1) 201:4
**commissioner**(1) 47:9
**commitment**(1) 115:1
**committee**(51) 3:10 5:27 6:9 13:38 15:7 15:23 16:17 24:25 25:1 25:13 27:17 27:24 31:19 41:20 42:25 61:12 61:13 68:6 90:1 91:17 92:18 96:9 125:25 137:4 137:13 146:15 146:17 150:17 150:19 150:23 151:3 151:5 151:6 151:11 151:17 151:24 152:2 153:20 153:24 159:18 159:25 162:15 162:18 163:1 164:4 175:2 175:8 177:19 185:3 193:10 206:20

**committee's**(2) 24:23 146:2
**committees**(3) 26:10 42:19 61:15
**committee's**(4) 25:6 25:13 25:19 25:22
**common**(1) 93:5

10/05/11 15:47:58

| Word | Page:Line |
|---|---|
| companies(17) | 56:20 56:22 57:7 79:14 79:14 79:15 79:17 80:4 80:14 80:25 81:1 81:7 81:8 118:17 132:19 171:10 222:11 |
| company(77) | 1:8 1:38 7:35 9:22 10:41 11:7 35:10 58:21 59:1 62:13 65:16 69:22 81:11 81:20 82:12 82:23 82:23 83:12 83:13 83:15 86:9 95:3 97:12 106:21 107:14 109:15 110:4 110:19 114:23 116:7 121:23 123:4 123:9 123:10 123:19 123:20 125:10 128:15 130:12 130:15 130:18 131:16 131:21 134:1 134:2 138:4 142:7 144:5 144:9 146:10 146:23 147:16 147:19 150:2 150:4 150:12 150:17 150:22 151:12 156:5 158:15 159:5 159:9 177:3 177:9 180:25 181:11 194:18 196:23 198:22 201:17 202:6 204:20 215:8 217:16 218:7 218:22 |
| company's(3) | 80:18 135:23 194:18 |
| company's(3) | 104:11 104:14 108:11 |
| company"(1) | 124:12 |
| comparable(11) | 56:3 56:20 79:13 79:14 80:4 80:4 80:14 80:25 81:1 81:8 81:9 |
| compare(4) | 26:21 90:17 121:2 216:7 |
| compared(3) | 28:4 99:19 113:5 |
| compares(1) | 99:8 |
| comparison(2) | 113:15 186:6 |
| comparisons(2) | 188:1 188:2 |
| compelled(1) | 100:9 |
| compelling(4) | 59:13 59:14 214:11 214:17 |
| compels(2) | 121:7 128:7 |
| compensation(1) | 10:10 |
| competent(1) | 190:6 |
| competing(1) | 46:6 |
| complain(1) | 61:17 |
| complaining(1) | 174:21 |
| complaint(8) | 137:4 137:16 159:18 162:18 163:2 164:5 206:22 207:3 |
| complaint."(1) | 206:21 |
| complete(3) | 26:25 50:14 53:18 |
| completely(6) | 27:12 48:24 60:18 100:1 184:3 205:24 |
| completion(1) | 129:24 |
| complex(3) | 17:15 161:25 169:2 |
| complexity(1) | 18:14 |
| complicated(1) | 18:7 |
| component(2) | 197:24 198:1 |
| components(1) | 197:24 |
| comprehensiv(1) | 18:20 |
| comprise(1) | 164:23 |
| comprised(1) | 158:13 |
| compromise(5) | 17:15 42:20 88:15 193:1 193:1 |
| conaway(1) | 2:4 |
| concede(2) | 206:2 217:13 |
| conceded(4) | 108:17 161:4 190:8 200:24 |
| conceding(1) | 191:4 |
| conceived(4) | 95:2 100:3 110:11 115:17 |
| concept(2) | 145:14 176:19 |
| concern(3) | 126:10 126:17 128:1 |
| concerned(2) | 128:15 149:6 |
| concerning(6) | 50:12 58:20 94:11 130:9 181:7 181:15 |
| concerns(1) | 108:22 |
| conclude(12) | 22:1 27:24 40:15 40:17 46:19 112:23 128:6 185:15 189:19 193:20 199:10 216:11 |
| concluded(18) | 19:8 19:12 19:12 25:7 31:14 40:25 40:25 72:10 73:9 73:9 74:6 94:21 112:18 113:17 129:14 169:12 188:6 188:1 220:8 |
| concludes(3) | 111:12 120:12 223:25 |
| concluding(1) | 179:3 |
| conclusion(31) | 27:20 28:2 29:11 55:11 58:2 58:4 62:1 81:22 98:10 112:22 113:2 114:23 115:23 120:7 121:3 121:7 121:13 121:13 122:22 123:24 124:1 125:9 128:8 136:3 185:22 188:13 215:1 215:10 215:21 215:24 219:16 |
| conclusions(28) | 17:22 19:3 37:11 37:24 39:10 40:5 40:9 41:14 75:6 92:3 98:19 116:2 120:7 143:25 143:25 144:18 163:21 166:1 168:20 185:6 189:15 190:21 211:1 214:14 219:7 219:10 220:21 221:3 |
| concrete(1) | 89:11 |
| condemned(1) | 58:7 |
| condition(3) | 47:13 106:16 106:16 |
| conduct(4) | 150:9 193:15 196:16 196:20 |
| conducted(1) | 151:13 |
| conducting(1) | 114:11 |
| confess(2) | 43:23 146:6 |
| confidence(5) | 40:20 58:4 148:7 150:16 |
| confident(2) | 219:1 219:2 |
| confined(1) | 106:19 |
| confirm(4) | 18:3 83:12 181:22 220:5 |
| confirmability(1) | 181:8 |
| confirmable(2) | 85:12 213:21 |
| confirmation(3) | 46:1 87:2 181:14 |
| confirmed(8) | 170:23 171:4 173:12 173:20 196:23 208:17 218:25 |
| conflict(1) | 153:21 |
| conflicting(3) | 170:10 170:14 171:8 |
| conflicts(2) | 150:12 150:21 |
| conformity(1) | 213:11 |
| confront(4) | 59:8 62:23 63:6 189:15 |
| confronting(1) | 53:2 |
| confuse(1) | 191:11 |
| confused(1) | 66:24 |
| confusing(1) | 83:5 |
| congressional(1) | 184:3 |
| conjure(1) | 24:19 |
| conlan(12) | 17:4 69:21 82:16 82:19 82:20 84:6 179:6 179:21 201:21 201:22 201:22 217:21 |
| connect(1) | 209:18 |
| connected(2) | 46:18 48:7 |
| connection(10) | 45:25 77:17 158:20 178:9 183:7 191:17 196:1 196:7 196:9 196:17 |
| connections(6) | 38:3 38:6 38:11 190:7 190:9 190:10 |
| consensual(1) | 83:21 |
| consensus(2) | 97:25 103:21 |
| consenting(2) | 179:11 213:11 |
| consents(1) | 139:22 |
| consequence(6) | 70:24 75:17 80:9 80:21 105:3 110:21 |
| consequences(4) | 57:16 105:2 114:13 |
| conservative(2) | 90:10 112:14 |
| consider(16) | 21:24 23:2 31:15 77:17 87:19 93:3 118:18 118:21 150:12 170:23 171:5 171:19 171:21 171:25 178:1 |
| considered(5) | 25:1 114:3 118:11 171:23 210:2 |
| considering(1) | 130:10 |
| considers(1) | 101:2 |
| consistent(4) | 17:21 42:22 116:4 160:1 |
| consolidated(1) | 163:23 |
| constituencies(2) | 90:2 203:9 |
| constituency(1) | 157:20 |
| constitutes(1) | 113:4 |
| constitute"(1) | 114:8 |
| constructive(11) | 20:1 20:2 21:20 28:17 31:10 31:11 38:8 38:11 110:24 164:2 196:5 |
| consult(1) | 211:11 |
| consulted(2) | 74:17 79:4 |
| consulting(1) | 221:5 |
| consummate(1) | 198:6 |
| contained(2) | 105:21 202:15 |
| contains(2) | 172:3 181:24 |
| contemplate(1) | 107:6 174:4 |
| contemplates(2) | 174:2 174:9 |
| contemporaneous(9) | 56:14 106:25 120:24 121:6 124:5 124:24 125:11 131:9 131:13 |
| contemporary(1) | 186:6 |
| contend(1) | 78:21 |
| contention(1) | 186:1 |
| contest(1) | 94:12 |
| contested(1) | 120:2 |
| contesting(1) | 176:16 |
| context(10) | 50:5 55:21 57:9 71:10 104:25 111:6 138:21 142:3 171:21 179:16 |
| continental(1) | 214:10 |
| contingencies(2) | 45:19 49:14 |
| contingency(2) | 45:23 58:8 |
| continue(2) | 110:6 111:21 |
| continued(18) | 2:2 3:2 4:2 5:2 6:3 7:2 8:2 9:2 10:2 11:2 12:2 13:3 14:2 72:19 103:24 119:12 130:15 199:10 |
| continuing(3) | 109:23 177:22 178:14 |
| continuously(1) | 46:10 |
| contracts(1) | 129:8 |
| contractual(1) | 182:5 |
| contractually(4) | 42:12 159:22 193:3 193:9 |
| contradicted(1) | 155:12 |
| contradicting(1) | 210:12 |
| contrary(5) | 153:6 196:8 201:1 213:22 213:23 |
| contrast(5) | 17:23 19:22 27:8 170:12 171:4 |
| control(14) | 47:11 68:15 81:10 81:11 131:17 133:25 134:3 134:6 150:7 170:13 172:10 180:13 195:11 195:14 |
| controlled(1) | 146:19 |
| controller(1) | 109:1 |
| controversy(3) | 46:13 178:18 182:21 |
| conundrum(1) | 197:11 |
| convenience(1) | 223:9 |
| conventional(1) | 56:18 |
| conversation(1) | 108:9 |
| conversations(1) | 209:9 |
| converted(2) | 62:10 62:16 |
| conveyance(9) | 19:14 38:2 174:6 178:12 190:12 196:5 208:9 |
| convinced(1) | 206:14 |
| convincing(1) | 160:18 |
| cooperstown(2) | 11:18 11:18 |
| copies(2) | 84:23 85:1 |
| copy(1) | 54:23 |
| core(3) | 79:23 81:23 170:13 |
| corning(1) | 184:2 |
| corporate(4) | 33:16 127:23 133:1 174:1 |
| corre(2) | 12:4 12:4 |
| correct(7) | 50:15 79:15 80:10 112:6 118:9 223:2 224:5 |
| corrected(1) | 122:18 |
| corrective(1) | 174:8 |
| correctly(2) | 70:11 206:13 |
| correlations(1) | 219:16 |
| correspondenc(1) | 150:24 |
| cost(1) | 199:13 |
| costs(2) | 123:10 174:11 |
| could(49) | 27:18 30:24 34:18 36:25 40:4 41:11 45:4 56:4 58:21 78:21 81:15 89:19 94:16 97:24 99:21 101:11 125:9 127:4 128:14 130:16 142:18 143:14 147:3 149:3 150:16 153:18 155:18 158:21 163:8 163:22 177:16 179:8 180:2 180:13 180:15 180:15 182:25 188:8 189:18 191:9 202:1 203:4 203:23 203:24 205:8 208:2 215:8 216:11 216:11 |
| couldn't(3) | 22:1 45:7 162:24 |
| couldn't(1) | 106:18 |
| counsel(13) | 15:6 35:4 39:1 149:5 150:12 153:23 170:3 185:3 207:4 219:9 220:25 221:5 221:8 |
| counsel's(3) | 38:17 190:14 190:16 |
| counselor(1) | 173:17 |
| count(7) | 29:7 137:6 137:8 137:10 180:6 183:18 213:5 |
| counted(3) | 20:6 20:16 78:15 |
| counterbalanc(1) | 199:14 |
| countervailing(1) | 160:7 |
| country(1) | 92:13 |
| counts(1) | 80:8 |
| couple(25) | 17:1 39:6 39:12 52:15 79:6 79:21 80:3 82:13 82:14 96:19 96:25 111:5 111:10 127:2 139:3 155:1 159:5 185:17 186:15 187:9 198:10 199:7 211:4 216:16 221:22 |
| couri(1) | 11:19 |
| course(54) | 20:11 21:12 23:10 43:9 43:13 44:10 45:11 45:16 45:18 47:7 52:4 52:5 53:9 53:18 53:23 63:18 63:22 63:24 64:11 78:1 85:3 88:11 90:3 90:14 90:24 109:6 111:2 117:14 119:15 119:18 124:23 130:18 130:16 133:23 134:9 136:12 136:23 137:4 138:2 139:8 147:17 148:3 148:11 150:2 156:14 161:1 168:2 177:23 182:22 185:14 188:3 194:21 210:15 215:16 |
| courses(1) | 136:14 |
| court(215) | 1:1 15:3 15:8 15:11 15:15 15:16 15:18 15:22 15:25 16:1 16:3 16:5 16:11 16:15 16:18 16:19 16:22 17:12 18:1 18:3 18:5 18:6 18:11 18:13 18:23 19:1 19:14 20:3 20:10 20:21 21:6 21:23 22:1 22:22 23:1 23:7 24:10 25:7 25:16 27:8 27:13 27:25 28:1 28:18 29:13 29:21 31:14 31:17 36:2 36:10 37:1 37:8 37:22 37:23 38:14 40:1 40:15 41:13 41:23 42:8 42:24 43:4 43:6 43:13 43:14 43:17 44:2 46:16 47:5 47:14 48:2 49:10 50:9 50:13 59:25 60:11 61:6 64:24 66:9 68:20 68:25 69:4 69:8 69:11 70:6 82:18 84:3 84:7 84:12 84:17 84:17 84:25 86:4 86:21 87:2 87:5 87:8 87:19 88:8 88:18 88:19 89:6 92:2 104:23 105:4 108:3 109:17 112:5 112:23 113:19 114:10 114:11 114:14 115:20 122:16 122:20 129:14 132:2 132:4 132:12 132:21 135:14 137:17 139:5 139:12 140:2 140:13 141:14 142:23 143:24 144:24 145:4 145:11 149:3 149:11 150:16 150:16 150:18 152:11 153:3 153:10 153:18 154:2 154:24 155:15 155:18 155:23 161:5 162:20 163:16 165:11 166:11 168:16 169:4 169:6 169:16 169:21 173:14 174:8 174:9 175:1 175:25 180:4 180:11 184:19 185:10 185:15 186:19 188:18 189:16 189:18 189:19 190:25 191:1 191:15 196:21 198:8 198:12 203:3 206:10 208:2 208:15 208:20 210:2 210:21 211:13 211:16 211:20 212:1 212:4 212:20 213:2 213:14 213:25 220:6 220:10 220:11 220:15 221:9 221:12 221:17 221:19 222:3 222:13 222:17 222:22 223:3 223:6 223:13 223:21 223:23 223:25 224:1 |
| court's(3) | 43:24 174:15 195:23 |
| courtesy(1) | 223:9 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| courtney(1) 13:6 | | cutting(3) 18:13 55:24 199:14 | | debtor(27) 75:15 82:21 89:4 142:24 | | delaying(2) 218:20 219:4 |
| courtroom(4) 1:10 45:24 173:4 205:15 | | cybergenics(1) 148:14 | | 149:10 149:15 149:21 174:17 174:20 | | delegated(1) 148:21 |
| courts(16) 36:2 101:13 105:1 111:6 128:22 | | cynicism(1) 194:4 | | 179:17 179:20 183:6 183:10 183:10 183:1 | | delicto(1) 140:15 |
| 139:21 140:9 140:16 140:17 140:18 | | daily(1) 129:4 | | 183:11 183:12 183:12 183:19 183:25 | | delivered(1) 223:3 |
| 161:21 162:7 183:21 183:22 191:22 213:6 | | damage(1) 151:20 | | 183:25 195:11 195:13 202:11 202:16 222: | | demand(1) 151:24 |
| court's(5) 85:3 87:2 221:4 221:8 221:24 | | damian(1) 2:33 | | 222:9 | | demanded(1) 151:17 |
| cover(1) 86:18 121:20 196:12 | | damning(1) 166:9 | | debtor's(1) 138:3 | | demanding(1) 99:24 |
| covered(1) 187:12 | | daniel(5) 3:12 4:22 6:23 12:39 173:16 | | debtor-in-possession(1) 149:5 | | demo(1) 7:32 |
| covering(1) 54:25 | | dare(1) 152:6 | | debtors(64) 1:12 1:23 15:23 17:5 17:6 | | demonstrated(3) 37:21 76:17 185:14 |
| crafting(1) 139:12 | | data(7) 1:46 48:11 52:13 56:19 56:22 57: | | 17:7 26:1 35:4 42:25 69:16 69:19 70:12 | | demonstrating(2) 71:20 71:21 |
| cram(5) 83:14 83:23 179:8 201:24 202:18 | | 100:17 | | 70:25 72:2 85:13 86:1 89:14 89:14 94:22 | | demonstrative(2) 84:24 120:9 |
| crammed(3) 83:16 179:22 202:8 | | date(10) 78:19 82:12 174:24 175:16 | | 95:3 105:3 106:17 107:2 145:24 145:25 | | demonstratives(2) 168:3 221:16 |
| crazy(1) 91:14 | | 175:25 176:7 176:9 176:12 186:4 224:11 | | 146:14 146:15 146:18 147:24 148:9 150:6 | | dennis(1) 7:7 |
| create(6) 171:16 171:19 175:23 176:17 | | dave(1) 7:38 | | 150:14 155:11 159:8 159:10 159:12 162: | | deny(1) 74:22 |
| 204:18 204:19 | | david(16) 3:19 4:19 5:11 5:17 5:35 7:20 | | 174:16 174:18 175:2 175:8 175:14 176:2 | | department(3) 55:15 222:9 222:14 |
| created(7) 74:19 76:3 104:15 172:2 173:6 | | 9:9 9:14 9:42 11:15 11:15 13:22 84:21 | | 176:18 176:20 177:12 178:4 178:6 178:15 | | departure(1) 50:22 |
| 178:16 184:9 | | 132:7 180:9 221:20 | | 178:20 178:21 179:7 179:7 180:25 181:11 | | departures(1) 166:1 |
| creates(1) 170:5 | | davis(4) 2:29 6:31 8:25 194:3 | | 192:23 198:10 201:22 205:14 209:12 | | dependencies(1) 219:16 |
| creating(2) 205:20 210:19 | | day(12) 5:28 16:12 26:2 43:13 46:8 70:9 | | 213:10 216:22 216:23 218:9 | | deposition(17) 97:13 98:6 104:7 106:15 |
| creation(1) 206:24 | | 81:12 81:13 86:4 154:12 159:1 173:16 | | debtors(15) 90:5 90:20 95:25 100:4 105:2 | | 106:17 116:24 117:21 162:15 166:19 |
| creative(3) 209:15 209:17 | | days(7) 96:25 109:20 110:1 119:13 166:23 | | 131:17 170:3 175:20 175:24 176:6 176:1 | | 166:22 168:6 194:14 194:21 194:23 197:5 |
| credence(1) 189:8 | | 168:5 168:12 | | 176:23 178:10 209:24 216:22 | | 209:10 218:16 |
| credibile(11) 19:25 28:9 28:12 28:15 35:9 | | dbtca(1) 3:36 | | debtor's(1) 94:20 | | depositions(3) 151:13 162:21 162:25 |
| 47:13 98:11 123:14 128:5 162:6 195:25 | | dcf(1) 80:18 | | debts(4) 21:21 22:2 31:12 167:11 | | derivation(1) 89:22 |
| credit(20) 12:7 44:5 44:7 68:6 116:10 | | dcl(116) 15:14 17:11 18:3 19:3 22:15 | | decades(1) 173:4 | | derive(1) 139:2 |
| 129:12 178:6 178:9 178:11 178:23 179:8 | | 22:17 23:23 24:21 28:4 33:6 34:13 34:16 | | december(1) 119:21 | | describe(5) 35:10 83:8 87:3 163:9 195:20 |
| 182:1 195:1 195:7 204:9 204:14 204:15 | | 34:20 36:25 37:3 37:10 37:12 40:8 40:14 | | decide(8) 43:18 43:19 55:14 203:7 203:15 | | described(12) 30:7 40:13 67:23 97:2 100:5 |
| 210:3 210:21 210:23 | | 41:8 42:2 42:6 42:7 42:18 43:4 46:1 | | 203:17 212:3 212:5 | | 113:11 114:23 114:25 134:24 193:8 202:9 |
| creditor(15) 26:18 65:13 65:18 88:21 90:2 | | 67:17 69:19 70:12 70:13 71:25 72:15 | | decided(9) 81:12 81:13 110:15 203:13 | | 209:1 |
| 93:3 155:9 155:10 158:3 172:13 172:14 | | 72:18 73:11 74:1 74:7 74:11 77:12 77:22 | | 203:13 205:21 209:10 212:15 212:23 | | describes(2) 114:9 125:18 |
| 172:18 172:24 174:5 174:22 | | 83:15 83:23 84:15 85:9 86:1 87:21 88:4 | | decidedly(1) 119:4 | | describing(6) 96:21 97:9 178:21 184:15 |
| creditor's(1) 145:21 | | 92:10 94:12 112:19 131:10 136:1 138:1 | | decider(1) 62:25 | | 186:24 209:11 |
| creditor/noteholder(1) 149:1 | | 138:22 141:19 154:14 154:19 156:23 157: | | deciding(3) 27:23 29:15 114:14 | | description(2) 166:10 187:4 |
| creditors(18) 5:7 3:11 6:10 15:7 19:16 25:10 | | 158:3 158:17 159:11 160:6 160:8 160:23 | | decision(5) 38:4 82:6 148:14 161:6 197:18 | | deserves(1) 92:18 |
| 25:18 26:19 27:12 42:11 41:19 41:22 41:25 42: | | 163:3 163:17 165:7 168:23 170:5 170:10 | | decisions(6) 48:3 52:14 88:9 89:13 139:21 | | designation(5) 170:18 172:15 172:22 |
| 42:17 43:2 60:25 61:1 61:1 61:1 61:6 | | 170:12 170:13 170:15 170:22 171:22 172: | | 156:8 | | 172:25 173:1 |
| 61:25 62:15 64:17 66:22 66:22 88:25 | | 172:3 172:5 172:17 172:17 172:17 172:19 | | decisive(1) 57:5 | | designed(3) 115:17 136:19 202:5 |
| 89:21 90:1 90:7 91:10 110:22 114:13 | | 172:23 173:7 173:8 173:11 173:23 174:1 | | deck(1) 198:13 | | despite(5) 100:22 131:14 174:16 194:24 |
| 133:6 134:22 134:23 134:25 135:4 135:7 | | 174:4 174:8 174:19 175:10 176:21 180:3 | | declaration(3) 107:11 120:23 121:6 | | 201:1 |
| 136:9 136:15 138:10 138:14 138:14 139:1 | | 180:16 188:15 189:19 192:12 193:4 193:2 | | decline(21) 95:9 95:11 95:16 95:17 95:21 | | destroys(1) 83:6 |
| 139:15 151:6 156:5 156:8 157:5 157:13 | | 201:16 203:9 203:18 203:19 205:9 209:24 | | 96:1 96:5 96:16 98:4 99:5 99:10 99:11 | | detail(4) 35:11 35:14 36:5 115:22 |
| 158:23 160:8 170:14 175:2 175:8 175:23 | | 215:13 217:13 220:4 221:15 | | 99:21 100:15 100:20 101:10 107:2 123:17 | | detailed(1) 105:6 |
| 176:6 176:12 177:9 178:14 179:1 182:5 | | dcl's(3) 171:2 174:20 176:16 | | 198:18 198:24 199:15 | | details(2) 111:11 177:1 |
| 182:10 192:7 203:12 207:13 213:4 216:24 | | dcls(1) 213:22 | | decline."(1) 98:1 | | deteriorating(1) 97:18 |
| creeps(1) 25:12 | | dcl's(2) 102:24 212:17 | | declined(2) 63:5 161:5 | | determination(1) 117:23 |
| crisis(4) 52:1 95:4 98:22 99:13 | | deadline(1) 52:18 | | declines(3) 52:21 52:21 53:6 | | determine(5) 72:20 74:17 145:11 172:13 |
| critical(7) 21:14 32:20 38:6 39:14 157:3 | | deal(32) 31:9 32:8 57:3 86:15 96:9 97:2 | | declining(4) 65:16 100:13 125:18 128:2 | | 172:19 190:23 203:3 |
| 182:20 190:8 | | 97:3 98:16 114:24 114:24 124:3 124:14 | | deducting(1) 215:14 | | determined(1) 174:23 |
| criticism(8) 54:1 60:17 70:18 78:9 174:25 | | 124:22 125:4 125:15 125:23 126:4 126:19 | | deemed(2) 42:16 209:25 | | determines(2) 172:21 213:9 |
| 190:2 190:5 190:5 | | 127:7 128:2 131:16 131:19 135:2 135:7 | | deeper(1) 56:12 | | determining(1) 208:16 |
| criticisms(2) 70:17 74:14 | | 146:23 149:19 154:18 154:21 154:22 160: | | default(4) 127:23 127:24 129:7 129:12 | | detriment(1) 212:11 |
| critique(4) 72:5 79:9 79:10 168:23 | | 179:5 202:17 | | defeat(1) 26:10 | | deutsch(1) 6:15 |
| cross(9) 37:20 38:5 38:14 46:4 46:11 | | deals(3) 45:13 97:5 126:11 | | defeats(1) 219:19 | | deutsche(1) 9:8 |
| 97:23 120:9 164:20 213:15 | | dealt(2) 185:18 185:18 | | defendants(1) 10:11 | | dev(15) 69:20 78:9 78:14 78:21 78:23 |
| cross-examination(4) 96:3 116:24 145:23 | | deal"(1) 126:1 | | defense(5) 135:23 136:4 138:18 148:9 | | 78:24 82:10 138:2 143:4 175:21 175:24 |
| 146:5 | | dearborn(1) 1:27 | | defenses(8) 16:21 26:5 26:9 26:11 71:15 | | 176:6 176:11 202:22 202:25 |
| crucial(1) 45:16 | | debate(5) 119:7 121:24 135:21 149:4 | | 71:25 76:11 152:15 | | develop(1) 191:22 |
| crushing(1) 123:19 | | debenture(4) 4:32 9:35 223:16 | | defer(1) 43:25 | | developed(3) 91:23 187:22 207:1 |
| cubs(6) 21:9 47:15 47:17 57:19 57:21 58: | | debt(47) 20:6 20:16 21:1 21:23 21:24 | | deference(1) 98:9 | | developing(2) 75:22 80:12 |
| curious(1) 56:17 | | 22:11 23:24 27:10 27:16 29:1 29:7 30:17 | | defiant(1) 147:1 | | deviation(1) 166:3 |
| current(1) 107:22 | | 31:15 33:14 33:16 33:19 33:20 57:15 | | deficiencies(1) 80:7 | | device(2) 62:4 62:5 |
| curry(1) 133:18 | | 58:14 58:25 62:10 71:6 71:11 71:19 95:3 | | defies(1) 201:15 | | devil(1) 86:17 |
| curve(1) 48:15 | | 114:3 119:6 121:23 121:25 122:9 122:12 | | defines(2) 76:22 77:6 | | devine(1) 117:18 |
| cushion(2) 58:1 134:22 | | 126:24 127:12 127:23 133:17 134:19 | | definition(2) 117:10 117:16 | | dewey(3) 2:12 12:14 12:39 |
| customers(1) 83:6 | | 135:24 136:21 140:24 142:6 174:1 175:22 | | defrauded(1) 105:4 | | diagram(1) 53:17 |
| cut(1) 123:10 | | 188:20 204:18 207:23 215:9 216:22 | | defying(1) 127:19 | | diamond(1) 8:38 |
| cutler(1) 10:36 | | | | degree(3) 81:19 137:5 139:24 | | diaz(1) 1:46 |
| cuts(3) 103:1 114:22 119:24 | | | | delaware(5) 1:2 1:12 1:34 5:24 15:1 | | |
| | | | | delay(9) 45:18 170:6 170:11 170:13 172:6 | | |
| | | | | 173:2 173:9 201:14 201:18 | | |
| | | | | delayed(2) 105:3 197:8 | | |

Page : 8                                                                                                                            10/05/11 15:47:58

Word Page:Line

**did**(109) 21:25 25:2 47:23 54:19 55:14 59:15 59:15 64:10 64:10 67:7 72:6 72:10 73:20 74:3 74:5 74:10 74:22 75:17 75:22 75:23 76:15 79:9 79:10 79:22 81:9 82:1 85:6 86:9 91:1 94:6 98:14 103:14 104:1 104:10 107:5 110:4 111:11 112:19 116:21 116:24 117:3 119:9 119:16 121:7 127:14 127:14 130:11 130:18 131:6 131:15 132:10 133:8 133:12 134:19 135:8 135:9 141:21 145:18 149:16 149:16 149:19 150:12 150:13 157:17 161:2 161:3 161:13 163:8 163:13 163:18 164:7 164:15 166:10 166:1 166:13 166:16 168:15 168:19 168:21 168:24 168:25 168:25 169:21 171:25 184:14 185:21 189:3 189:7 190:3 190:13 192:5 194:22 195:1 195:3 197:16 200:8 201:10 202:4 205:18 205:24 206:4 206:15 206:18 213:10 215:22 219:6 219:15 219:1 223:3

**didn't**(40) 20:11 24:8 37:25 38:5 38:6 38:8 39:16 49:8 49:25 51:7 52:1 62:23 62:24 64:17 65:3 65:19 72:19 79:8 81:13 133:10 148:11 153:10 153:10 162:2 162:1 162:17 163:1 165:22 166:12 179:9 181:1 181:6 186:8 188:20 190:3 190:5 190:8 190:18 194:16 195:18

**didn’t**(16) 33:17 98:11 103:25 104:14 110:2 124:25 131:17 131:18 168:23 204:4 204:9 204:16 210:8 212:16 215:20 218:3

**differ**(1) 149:8
**difference**(12) 67:16 68:8 68:13 78:22 90:14 111:23 153:12 153:14 155:1 155:24 168:9 175:18
**differences**(3) 180:20 187:7 187:11
**different**(44) 15:17 15:19 15:24 16:2 18:9 24:6 38:3 38:19 44:24 47:10 48:24 49:5 55:19 62:1 62:2 65:9 65:20 66:12 80:13 92:23 93:18 97:21 100:25 128:21 128:24 161:3 163:15 163:24 164:1 164:21 164:22 168:19 170:21 170:22 171:14 171:15 181:24 185:23 192:15 193:8 199:7 204:6 204:13 205:25

**differently**(4) 62:23 181:19 181:19 210:13
**difficult**(5) 20:23 30:16 31:25 32:1 61:4
**difficulties**(2) 45:25 126:24
**difficulty**(2) 127:6 196:4
**diligence**(2) 162:8 163:4
**direct**(3) 82:23 89:19 164:19
**direction**(6) 62:22 82:8 95:15 103:1 109:14 209:2

**directions**(1) 52:3
**directly**(4) 15:22 23:4 23:8 188:2
**director**(5) 104:6 108:8 170:18 172:15 172:22

**directors**(4) 5:28 73:17 150:3 177:18
**dirty**(1) 68:3
**disagree**(11) 26:3 58:7 60:22 75:5 113:2 136:12 139:19 141:13 179:20 192:7 215:2

**disagreed**(1) 188:5
**disagrees**(4) 59:17 77:8 77:8 186:7
**disallowance**(5) 63:19 93:5 135:11 164:1 208:6

**disallowed**(1) 63:17
**disappoint**(1) 165:23
**disclaims**(1) 103:4
**disclosure**(4) 81:21 90:5 109:5 109:5
**discount**(4) 48:18 53:23 53:25 81:10
**discovered**(2) 112:8 180:23
**discretion**(4) 139:4 139:9 139:14 172:18
**discretionary**(1) 139:12
**discuss**(4) 131:5 173:19 198:10 214:9

**discussed**(12) 88:22 91:8 143:7 144:3 144:4 149:2 173:10 199:1 199:16 199:17 211:4 216:20
**discussing**(2) 45:24 207:11
**discussion**(13) 57:9 105:6 105:12 109:24 119:19 120:3 120:4 154:1 188:3 195:11 208:15 218:18 220:20

**discussions**(2) 221:10 222:8
**disgorgement**(17) 32:10 32:15 32:16 32:20 33:2 33:11 33:21 33:25 34:5 34:9 38:23 90:21 138:7 141:16 144:9 144:12 217:9

**disinterested**(1) 131:6
**dismiss**(1) 200:15
**disparity**(1) 92:8
**dispel**(1) 86:18
**dispenses**(1) 66:13
**disproportionate**(1) 73:25
**dispute**(13) 18:6 19:10 85:16 87:21 97:17 116:14 122:4 171:8 171:11 171:21 192:20 215:13 217:12

**disputed**(5) 17:8 17:16 17:22 102:20 217:1
**disregard**(3) 49:11 49:13 49:14
**disregarded**(2) 98:14 181:5
**disrupting**(1) 182:9
**dissembled**(1) 167:3
**distinction**(2) 83:18 203:20
**distinguish**(1) 61:23
**distinguishable**(2) 128:16 140:21
**distinguishes**(1) 141:9
**distracting**(1) 83:5
**distributable**(1) 175:20
**distributed**(5) 73:25 175:25 176:6 176:9 176:12

**distribution**(9) 65:21 143:19 157:6 158:23 159:2 159:24 175:19 183:2 218:5

**distributions**(5) 38:23 106:2 138:5 157:15 158:17

**district**(2) 1:2 142:11
**diversified**(1) 79:15
**divided**(1) 45:15
**dividends**(2) 81:14 207:22
**division**(1) 16:6
**dixie**(1) 24:7
**dla**(1) 3:4
**doctrine**(4) 35:24 64:16 132:24 135:12
**doctrines**(4) 66:10 143:8 206:25 207:9
**document**(3) 98:5 99:15 187:15
**documented**(1) 95:23
**documents**(7) 58:25 59:11 97:12 124:5 126:22 131:13 223:8

**dodgers**(2) 47:4 47:9
**does**(48) 21:2 22:22 24:21 27:3 37:1 44:9 55:25 59:25 73:22 77:12 77:22 81:11 89:14 92:2 93:11 93:14 109:17 111:14 111:15 113:5 113:9 114:2 118:11 123:5 123:12 127:24 129:2 131:23 136:8 143:10 143:20 153:14 154:16 155:23 172:16 172:21 180:5 185:25 199:9 203:20 204:18 204:18 204:21 216:12 217:15 217:18 217:18 219:13

**doesn't**(32) 26:17 26:18 27:7 29:18 30:12 33:23 35:7 37:10 38:1 38:12 40:6 45:1 54:12 54:17 57:7 57:24 66:8 71:4 75:20 77:23 78:6 78:14 78:23 136:3 136:25 152:19 155:15 191:19 193:25 199:20 200: 203:13

**doesn’t**(15) 87:3 90:17 117:3 120:13 122:7 122:13 123:20 125:1 125:6 127:22 206:22 207:3 208:9 209:6 212:14

**doing**(20) 19:21 31:17 33:9 45:1 51:2 52:15 56:16 57:5 58:15 67:12 91:5 110:5 116:23 123:18 126:4 140:17 183:22 184:8 194:25 195:6

**dol**(1) 222:6
**dollar**(3) 134:1 134:2 192:8
**dollars**(31) 31:20 32:15 32:16 32:21 36:8 40:2 40:21 40:24 41:8 42:21 71:4 71:5 78:4 90:21 133:15 133:24 134:2 138:5 138:7 138:7 138:9 142:4 144:9 144:13 151:18 151:21 151:25 156:20 175:6 200:6 205:20
**dominated**(2) 42:11 99:2
**dominion**(1) 13:17
**don**(3) 1:39 177:23 194:2
**don't**(94) 16:14 18:6 19:9 26:15 28:12 28:14 29:7 30:22 31:9 34:1 34:15 35:2 35:8 36:10 36:11 36:13 36:17 37:19 38:24 39:10 39:22 40:6 40:20 42:2 43:8 43:17 45:2 49:17 49:18 49:19 49:20 52:7 52:8 53:7 54:12 55:6 57:3 57:8 59:14 59:19 60:15 60:21 64:12 64:21 65:2 65:15 66:3 66:5 66:14 68:12 68:20 71:17 74:21 76:23 83:3 135:12 135:15 135:19 145:1 147:6 147:20 151:6 152:11 155:21 160:4 160:13 160:23 161:1 161:21 162:10 166:8 174:14 178:3 178:17 180:7 182:4 184:13 184:22 185:7 189:14 189:23 191:11 191:23 192:3 196:15 196:18 198:2 201:5 201:19 202:2 202:7 202:10 202:18 202:20

**donald**(1) 2:32
**done**(26) 23:15 47:8 48:25 87:6 98:16 99:25 100:1 113:17 116:15 117:14 130:14 135:19 139:7 151:1 152:23 153:1 169:1 182:14 195:7 206:5 206:7 207:6 211:14 216:10 219:14 222:16

**don’t**(46) 86:10 88:5 88:10 89:24 89:25 91:25 92:4 92:10 92:12 92:21 97:11 97:24 103:9 103:10 111:7 115:12 115:13 115:14 115:15 121:19 127:1 128:4 131:5 150:14 155:5 168:13 168:15 205:2 205:16 205:16 205:17 205:17 208:3 208:4 208:17 209:5 210:6 210:23 214:22 215:3 215:4 215:7 215:9 215:13 216:20 222:17

**doomed**(2) 95:5 131:25
**dorr**(1) 10:37
**dose**(1) 139:9
**dots**(1) 209:19
**double**(3) 80:8 120:20 139:9
**doubles**(1) 130:3
**doubt**(2) 86:10 197:11
**dougherty**(2) 6:5 6:6
**douglas**(1) 6:15
**dow**(2) 11:7 11:7
**down**(24) 27:22 36:16 38:8 40:14 50:9 50:20 64:3 64:5 74:11 81:23 83:14 83:16 83:23 109:9 130:19 143:17 154:5 165:10 179:8 179:22 201:25 202:8 202:18 220:4

**downgraded**(1) 128:4
**downgrades**(2) 127:19 127:21
**downgradings**(1) 128:6
**downside**(8) 107:5 107:6 122:6 188:25 189:3 189:3 189:6 189:8

**dozen**(1) 67:24
**dozens**(1) 24:5
**drag**(2) 68:15 201:16
**dragging**(1) 218:20
**dramatic**(7) 99:5 107:11 116:1 122:15 130:4 130:22 151:16

**drive**(3) 40:21 71:4 200:6
**drives**(3) 36:14 71:4 74:1
**driving**(2) 76:18 82:3
**dropped**(2) 74:11 121:1

**drove**(1) 40:2
**dry**(1) 108:14
**dublin**(1) 4:21
**ducayet**(1) 1:26
**due**(6) 24:6 31:13 118:16 127:6 162:8 172:14

**dug**(1) 54:9
**dunk**(5) 29:11 45:22 47:12 49:19 68:2
**dunn**(1) 9:42
**duplicated**(1) 200:7
**during**(19) 21:6 34:22 55:22 67:22 88:11 120:9 146:12 148:3 148:10 149:2 164:19 165:25 167:2 167:23 168:4 177:20 181:13 199:23 200:11

**dwell**(1) 170:2
**dying**(1) 197:1
**dynamic**(3) 145:10 154:21 157:13
**e-mail**(15) 105:12 105:14 105:23 106:4 108:9 108:12 109:13 109:19 109:21 109:22 126:3 126:9 126:16 127:2 127:5

**e-mails**(3) 91:20 110:3 126:20
**each**(21) 15:22 16:9 23:16 29:1 66:10 72:21 72:23 75:24 76:4 76:6 76:6 81:7 142:14 152:13 163:14 170:17 170:18 180:5 201:8 205:4 217:25

**earlier**(4) 110:2 151:20 204:2 218:3
**early**(11) 92:17 96:22 96:25 108:7 108:11 108:18 108:20 110:14 124:10 125:13 154:20
**earth**(1) 75:11
**easiest**(3) 88:16 88:16 129:19
**east**(4) 4:13 5:30 13:25 13:25
**easy**(4) 47:14 47:16 134:5 191:22
**ebitda**(2) 125:19 198:21
**economic**(3) 116:25 117:3 184:17
**economics**(2) 133:25 137:24
**economy**(1) 52:4
**ecro**(1) 1:44
**eddy**(1) 107:22
**edgar**(1) 12:9
**edited**(1) 44:17
**editor**(2) 86:16 86:16
**effect**(8) 89:14 93:2 93:4 93:7 143:1 157:22 188:20 213:23

**effective**(7) 78:18 82:12 174:24 175:25 176:7 176:9 176:12

**effectively**(4) 172:25 175:9 208:23 209:7
**effort**(4) 63:3 189:21 206:24 221:6
**egi**(6) 108:23 109:21 109:21 203:1 203:7 203:10

**egi-trb**(5) 8:41 43:7 43:18 202:25 212:9
**ehmer**(1) 11:23
**eight**(3) 173:8 180:10 211:12
**either**(17) 22:10 31:18 45:8 66:3 73:17 79:3 88:24 90:18 92:7 98:11 98:15 134:2 151:6 165:5 185:6 203:9 208:16

**elden**(1) 6:5
**eldersveld**(1) 7:38
**electronic**(2) 1:52 224:6
**elegant**(1) 83:22
**elements**(10) 64:4 66:10 191:19 191:23 206:22 207:1 207:3 207:5 207:7 207:8

**elevated**(1) 114:17
**eleven**(1) 162:11
**eli**(1) 2:35
**elliot**(1) 2:30
**eloquent**(1) 88:6
**else**(6) 19:8 23:8 46:19 135:3 140:4 190:13
**else's**(1) 56:14
**email**(5) 135:1 177:23 186:19 187:17

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**emails**(3) 134:21 148:2 151:2
**embedded**(1) 203:14
**embodied**(2) 17:11 89:7
**embraces**(1) 56:22
**emerge**(3) 174:18 175:15 177:9
**emergence**(1) 170:7
**emerges**(2) 17:13 196:23
**emerging**(1) 17:7
**emphasis**(2) 44:21 187:25
**employees**(2) 10:10 83:6
**empowering**(1) 172:7
**enabling**(1) 178:14
**encounter**(1) 26:8
**encouraging**(1) 97:2
**end**(31) 20:11 25:12 26:2 41:10 46:8 48:22 51:11 57:23 62:12 71:7 74:11 76:16 76:22 76:23 77:10 90:9 100:21 104:16 107:9 118:23 120:5 154:12 167:21 168:14 196:11 204:7 204:8 204:9 205:1 205:2 209:14
**ended**(1) 196:11
**ends**(3) 49:6 159:3 202:5
**enforce**(1) 64:18
**enforceable**(1) 182:16
**enforced**(1) 181:3
**engaged**(1) 162:12
**engagement**(3) 117:9 161:23 162:11
**engender**(1) 197:2
**english**(2) 3:36 9:8
**engulfed**(1) 92:8
**enormous**(7) 19:18 32:10 32:11 92:8 134:6 139:14 144:8

**enough**(14) 32:10 34:18 53:19 73:20 96:15 138:14 181:21 187:11 188:21 190:20 190:25 210:5 214:17 221:21

**enrichment**(1) 137:11
**ensure**(2) 136:19 139:6
**entanglement**(1) 149:16
**enter**(2) 110:21 132:18
**entered**(4) 70:19 159:3 159:4 181:14
**enterprise**(6) 21:16 43:6 120:12 120:16 175:20 176:2

**enterprises**(1) 60:18
**enthusiastic**(1) 127:15
**entire**(2) 54:24 55:22
**entirely**(8) 16:2 17:21 94:8 110:10 145:7 145:8 168:11 195:2

**entirety**(1) 113:4 151:18 217:2
**entities**(4) 118:15 184:2 199:13 202:13
**entitled**(8) 64:19 65:22 78:17 78:20 136:10 209:7 210:22 212:7

**entitlement**(1) 174:22
**entitles**(1) 210:3
**entity**(5) 62:4 62:4 62:5 62:5 184:1
**environment**(2) 46:15 97:10
**envision**(1) 85:13
**envisioned**(1) 146:19
**eos**(2) 8:33 8:33
**ephraim**(1) 8:38
**equal**(2) 145:8 151:7
**equally**(5) 93:13 133:17 148:17 213:9
**equation**(2) 145:21 146:11
**equipoise**(3) 141:16 141:18 219:24
**equitable**(25) 19:17 19:20 26:15 35:19 35:25 36:1 36:11 36:12 36:12 63:19 63:21 63:21 93:4 93:5 135:10 135:11 139:4 140:13 142:2 163:25 164:1 191:16 191:18 191:18 191:23

**equitably**(1) 63:16
**equities**(2) 140:14 140:18

**equity**(30) 62:10 62:11 62:11 62:17 80:2 81:5 81:24 106:9 124:6 124:13 124:16 124:20 124:20 124:22 128:1 128:13 128:2 134:22 134:23 141:25 142:2 142:7 142:15 143:1 157:5 170:17 174:23 175:22 176:8 176:11

**equivalent**(1) 161:15

**era**(1) 53:15
**eric**(1) 11:4
**erred**(2) 39:16 185:9
**error**(7) 21:9 68:9 163:22 165:2 212:10 212:11 215:12

**errors**(7) 44:18 57:17 79:8 79:20 163:7 163:20 211:4

**escaping**(1) 211:5
**esop**(5) 49:12 106:9 116:11 116:19 186:22 2:13 2:14 2:20 2:22 2:30 2:31 2:32 2:33 2:34 2:35 2:41 3:5 3:12 3:13 3:19 3:20 3:21 3:22 3:23 3:29 3:30 3:37 4:5 4:12 4:18 4:19 4:20 4:21 4:22 4:28 4:29 4:33 4:41 5:5 5:11 5:17 5:23 5:29 5:35 5:44 6:6 6:11 6:13 6:15 6:19 6:23 6:27 6:31 6:33 6:35 6:39 6:41 6:43 7:5 7:7 7:9 7:13 7:16 7:18 7:20 7:22 7:24 7:26 7:28 7:30 7:32 7:36 7:38 8:6 8:10 8:12 8:13 8:18 8:22 8:26 8:30 8:34 8:38 8:42 9:5 9:9 9:15 9:19 9:23 9:27 9:37 9:42 10:7 10:12 10:13 10:21 10:25 10:29 10:33 10:38 10:42 11:8 11:19 11:29 11:42 12:15 12:19 12:21 12:23 12:27 12:40 12:44 13:18 13:40 14:5

**essence**(2) 63:7 173:21
**essential**(2) 19:1 38:11
**essentially**(8) 33:8 41:25 52:20 78:11 92:17 158:6 161:23 168:23

**establish**(4) 20:13 21:2 98:7 101:17
**establishes**(1) 98:4
**establishing**(1) 104:19
**establishment**(1) 174:4
**estate**(9) 63:23 88:16 139:8 142:23 155:10 159:14 205:20 217:7 217:11

**estate's**(1) 175:17
**estates**(4) 26:1 90:20 216:22 216:25
**esther**(1) 6:27
**estimate**(2) 82:11 164:14
**estimated**(1) 48:1
**estimates**(1) 103:21
**estopped**(1) 207:13
**estoppel**(6) 36:1 36:12 64:13 137:6 191:5 191:18

**evade**(1) 63:3
**evaluate**(2) 189:18 193:12
**evaluated**(22) 22:21 46:21 46:22 60:12 93:6 189:4

**evaluating**(10) 20:6 22:15 41:17 60:2 172:1 185:11 186:14 188:25 195:1 195:5

**evaluation**(7) 24:23 36:16 41:5 56:19 60:14 76:6 185:12

**eve**(1) 168:2

**even**(64) 20:14 20:18 21:8 21:25 27:21 28:24 29:18 29:24 30:11 30:22 31:16 32:5 33:14 33:19 35:9 46:14 49:2 49:23 50:20 51:15 51:16 57:3 60:4 60:4 68:4 68:5 71:11 81:10 83:21 83:22 85:17 88:21 91:19 91:24 94:20 95:24 98:7 101:22 101:25 102:1 102:12 107:11 110:8 111:13 113:12 124:20 126:20 127:4 154:15 162:4 162:10 162:11 163:8 168:6 171:18 172:11 172:15 176:10 177:25 183:1 208:4 212:22 214:12

**event**(5) 60:12 201:19 202:16 203:18
**events**(1) 56:4
**ever**(10) 53:7 61:2 61:16 63:22 65:5 120:13 151:1 151:21 152:6 182:2

**every**(21) 18:1 23:25 31:1 31:4 44:13 64:7 64:19 65:13 80:20 101:21 139:4 147:2 153:6 179:14 179:17 183:18 186:12 189:1 191:25 192:11 194:18

**everybody**(15) 51:5 56:14 56:16 61:12 61:14 68:2 70:14 83:7 95:24 123:3 123:10 154:13 154:18 188:13 193:18

**everyone**(12) 15:3 18:8 18:15 19:8 27:9 55:15 57:17 86:7 155:2 155:4 181:12 221:7

**everything**(12) 18:5 41:9 44:19 57:16 70:15 135:3 166:14 168:21 189:25 195:6 197:15 210:24

**ever"**(1) 97:5

**evidence**(93) 17:14 19:25 22:25 28:9 28:12 28:12 28:15 29:25 35:5 35:6 39:17 39:19 44:16 50:4 50:4 50:10 50:22 50:23 56:8 56:24 57:1 57:6 72:17 77:25 85:4 87:11 87:19 91:23 92:1 93:25 94:7 97:15 98:2 98:4 98:9 101:16 104:3 104:18 105:7 105:9 108:2 109:16 110:9 110:19 112:20 113:19 114:22 115:5 123:22 123:25 124:9 124:25 125:2 125:11 126:18 127:10 127:1 127:21 128:6 128:7 128:12 130:9 131:3 131:9 131:13 131:23 132:9 134:12 136:5 146:12 147:23 148:3 150:18 154:15 157:1 157:18 165:17 181:9 181:13 181:14 186:9 186:12 186:24 188:5 188:7 188:21 189:3 199:12 200:18 206:2 210:8 210:11 210:11

**evident**(1) 135:22
**evidentiary**(3) 85:10 205:4 205:22
**evolve**(1) 52:7
**exact**(3) 48:11 140:25 164:17
**exactly**(15) 44:19 51:14 56:23 64:16 65:7 121:10 121:10 121:16 122:23 124:23 173:25 178:19 182:18 189:2 189:13

**examination**(6) 37:21 38:5 38:15 97:24 106:19 120:10

**examiner**(133) 18:1 18:15 18:20 19:5 19:7 19:12 19:23 20:4 20:8 20:18 21:5 21:7 21:18 22:7 22:21 23:16 24:8 25:21 28:2 28:8 28:14 29:15 29:19 30:4 30:10 31:14 31:17 31:22 34:2 36:18 37:16 38:13 39:8 39:20 39:24 40:22 40:24 41:4 42:3 44:11 49:4 49:20 49:24 51:8 52:19 54:3 57:18 58:7 59:15 60:3 60:5 60:7 60:8 62:22 63:18 71:2 71:9 72:6 72:25 76:21 77:8 77:11 91:7 91:9 91:12 91:15 91:18 91:21 91:24 91:25 92:5 92:16 92:20 92:22 93:9 93:13 112:18 113:5 113:9 113:15 113:17 116:21 117:13 119:21 120:2 121:25 141:13 141:15 147:11 147:13 151:14 159:20 165:5 165:20 165:21 166:25 168:21 185:8 185:13 185:18 185:25 185:25 186:7 186:8 186:11 187:8 187:21 188:1 188:4 188:15 188:17 189:12 189:14 189:15 190:9 194:7 197:16 197:16 197:18 199:1 199:3 199:9 215:8 215:11 215:13 215:20 215:22 216:4 216:12 217:17 219:10 219:15 219:17

**examiner's**(67) 17:22 17:24 18:12 19:22 22:5 22:24 23:2 23:5 23:11 23:14 23:22 23:25 25:1 25:4 26:23 27:5 27:13 27:19 28:20 29:11 37:3 37:5 37:9 37:11 37:18 37:24 38:16 38:20 38:25 39:9 39:13 40:5 40:8 40:13 42:22 44:9 44:17 44:19 48:12 52:16 58:2 60:23 70:25 73:3 75:11 75:13 164:21 166:1 185:6 185:21 185:24 186:16 186:24 187:4 187:10 187:15 187:20 188:11 188:13 188:16 188:23 189:1 189:17 189:24 189:25 193:17 196:8

**examiner's**(18) 92:3 94:11 112:17 112:22 113:4 117:7 119:20 120:1 205:11 205:21 206:1 210:25 211:2 211:3 215:1 216:2 216:3 219:9

**example**(9) 73:14 133:14 140:15 142:2 143:14 162:14 194:13 195:10 198:15

**examples**(1) 186:15
**exceeds**(1) 72:15
**except**(6) 18:2 173:23 183:2 188:14 211:3 222:24
**exception**(3) 62:8 138:15 182:8
**exceptions**(1) 183:9
**excerpt**(3) 96:2 117:6 135:25
**excerpted**(2) 112:22 172:5
**excerpts**(1) 139:19
**excess**(2) 32:12 116:1
**exchange**(5) 54:11 105:12 106:4 129:2 203:21

**excluded**(1) 116:19
**exclusivity**(1) 178:10
**excuse**(3) 60:25 184:5 204:8
**executed**(1) 115:2
**executives**(1) 109:11
**exercise**(5) 163:10 166:16 213:5 219:12 219:18

**exercises**(1) 87:2
**exhibits**(1) 220:20
**exide**(1) 88:7
**exist**(5) 80:1 108:21 110:2 117:3 185:7
**existed**(3) 110:2 136:21 204:7
**existence**(3) 49:14 56:25 109:23
**existing**(3) 33:16 49:10
**exists**(1) 201:6
**exit**(9) 83:1 83:3 83:25 170:4 178:15 178:22 202:7 218:10 218:22

**expand**(2) 49:10 179:9
**expect**(9) 41:2 41:3 48:24 64:19 77:24 122:23 161:21 162:7 223:19

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**expectation**(1) 198:17
**expectations**(1) 186:6
**expectations"**(1) 105:19
**expected**(7) 58:17 100:15 100:20 169:2 183:2 198:24 220:2

**expediency**(2) 175:4 201:23
**expedited**(1) 175:15
**expeditiously**(1) 178:22
**expense**(1) 215:14
**expensive**(1) 83:5
**experience**(6) 80:3 81:6 153:3 153:5 173:5 173:6

**expert**(36) 50:11 50:21 50:24 79:1 79:3 87:12 94:15 94:20 95:25 103:9 103:20 103:23 107:16 117:19 118:25 161:5 161:6 161:6 161:7 161:17 161:22 162:2 162:6 162:7 166:18 167:23 167:24 167:24 168:7 170:10 171:2 171:22 173:3 190:6 190:13 190:22

**expertise**(9) 103:11 103:12 161:24 162:1 162:3 162:9 163:5 165:12 166:8

**experts**(4) 46:24 111:9 161:22 190:17
**explain**(4) 65:6 124:14 131:19 131:20
**explained**(8) 63:2 73:15 80:15 80:15 171:2 171:15 171:17 173:3

**explaining**(2) 66:9 135:2
**explains**(2) 81:19 119:16
**explanation**(2) 37:25 59:15
**explicit**(1) 81:16
**explicitly**(1) 117:10
**exposure**(4) 90:18 126:25 133:16 152:22
**express**(1) 62:1
**expressed**(3) 77:21 127:25 187:10
**expressly**(2) 174:9 189:14
**extensive**(3) 75:12 75:15 181:9
**extensively**(2) 179:12 199:16
**extent**(1) 63:17
**extra**(1) 20:16
**extract**(1) 78:4
**extreme**(1) 123:17
**fabulous**(1) 136:15
**face**(11) 17:18 29:23 30:17 36:6 44:17 51:9 53:2 119:6 119:11 119:23 212:13

**faced**(1) 39:25
**faces**(2) 31:2 193:23
**facility**(2) 134:13 134:16
**fact**(70) 19:12 21:11 22:19 25:9 31:3 59:13 59:22 62:25 72:17 74:17 75:12 75:14 76:15 77:7 77:16 77:19 78:15 78:20 78:22 80:8 81:3 82:3 82:7 85:16 87:12 88:12 92:24 98:8 108:21 119:12 124:3 126:11 126:18 131:14 134:13 141:4 149:2 155:13 171:6 172:4 174:16 178:19 180:22 183:11 183:13 186:10 188:2 189:24 191:5 191:16 192:24 194:6 194:22 194:24 194:2 198:21 198:23 200:18 202:3 206:25 208:7 212:7 214:13

**factor**(3) 48:19 72:2 156:6
**factors**(4) 115:12 115:13 115:14 115:15
**facts**(25) 18:18 32:20 36:10 36:11 51:14 51:15 51:16 59:21 59:22 76:4 117:7 117:8 141:10 142:15 151:9 161:24 161:25 162:1 169:2 200:2 207:2 214:15 214:16 214:16 215:20

**factual**(3) 18:20 165:13 191:10
**fail**(7) 19:24 36:19 36:20 58:18 123:4 123:7 124:23

**fail."**(1) 204:21
**failed**(4) 39:20 58:18 137:15 177:25
**fails**(2) 27:24 182:18

**fair**(21) 17:15 42:20 66:25 66:25 83:25 117:10 118:8 145:12 146:5 148:18 150:6 155:16 155:18 156:9 158:24 160:18 168:1 185:12 185:20 196:11 202:6

**fair-market**(1) 116:17
**fair-market-valu**(2) 116:16 117:15
**fair-value**(1) 117:22
**fairly**(10) 89:9 115:25 123:11 135:22 178:17 189:18 193:12 207:1 211:2 217:24
**fairness**(2) 44:9 144:22
**faith**(4) 26:7 67:11 130:15 162:22
**fall**(2) 127:4 191:5
**fallback**(1) 176:25
**falloff**(1) 107:11
**fallon**(1) 9:23
**false**(1) 66:1
**familiar**(6) 75:4 75:6 186:18 187:16 200:2 200:2

**fantastic**(1) 148:22
**far**(9) 32:12 61:4 69:11 95:10 97:19 143:19 149:6 151:16 166:6

**fared**(1) 99:6
**fargo**(2) 9:26 14:4
**faring**(1) 98:23
**fascinating**(1) 207:14
**fashion**(1) 208:2
**favor**(17) 42:2 50:10 77:20 78:3 114:16 114:22 119:17 133:19 156:21 156:22 158:10 158:22 159:24 160:6 182:1 183:21 219:25
**favorable**(4) 73:1 73:1 83:19 89:19
**favorably**(1) 90:18
**fcc**(42) 45:21 45:22 45:24 46:5 46:12 46:17 46:25 85:23 115:8 169:18 169:20 170:7 170:10 170:11 170:21 170:23 171:2 171:21 171:5 171:13 171:14 171:17 171:19 171:21 171:23 171:25 172:2 172:4 172:12 172:14 172:19 172:21 173:2 173:5 173:8 173:9 200:22 200:22 200:23 201:2 201:13 201:14

**fear**(1) 125:24
**feasibility**(1) 201:20
**feasible**(2) 85:12 173:11
**feature**(1) 202:15
**february**(35) 96:13 101:6 101:18 101:25 101:25 102:15 102:15 103:18 103:2 103:24 105:22 107:4 107:21 108:13 108:16 109:8 110:6 110:12 111:14 112:18 112:24 113:6 113:10 113:14 113:18 130:9 130:13 131:20 185:19 186:5 188:9 199:11 215:6 215:18

**federal**(1) 59:20
**fee**(3) 47:22 47:22 49:15
**fee**(2) 89:3 165:4
**fees**(7) 48:1 90:25 91:4 127:4 127:11 133:15 141:5

**feet**(1) 201:16
**feld**(4) 4:17 8:9 84:21 173:17
**fell**(3) 99:11 100:1 147:9
**felt**(2) 141:15 199:22
**ferry**(1) 11:11
**fessed**(1) 137:3
**few**(17) 15:14 37:4 45:20 69:18 85:21 101:24 108:24 116:6 132:21 133:22 161:4 173:19 179:3 183:9 203:24 216:17 222:6

**fewer**(1) 128:4
**fiat**(1) 210:18
**fiduciary**(1) 193:11
**fifth**(1) 5:9
**fight**(5) 29:17 127:3 148:17 148:17 191:25
**fighting**(3) 45:2 127:3 145:20
**figure**(3) 43:8 55:3 139:14

**figures**(3) 22:23 23:4 95:7
**file**(2) 147:19 178:11
**filed**(6) 67:11 156:25 157:1 162:18 178:9 209:12

**filing**(6) 55:1 55:9 55:9 55:10 106:20 176:20

**filings**(2) 149:19 184:10
**fill**(1) 206:17
**filled**(2) 40:18 151:7
**final**(2) 200:10 200:20
**finalize**(1) 162:8
**finalizing**(1) 162:19
**finally**(21) 17:4 24:17 28:24 35:15 38:14 42:8 99:23 109:19 130:19 144:2 174:23 177:23 184:13 190:18 192:1 201:8 208:1 209:14 215:11 217:12 221:14

**finance**(4) 104:6 108:20 126:7 133:1
**financial**(18) 22:6 23:2 23:5 23:22 24:1 52:1 100:7 114:13 114:16 185:20 186:13 186:25 187:2 187:6 188:3 188:9 189:4 189:11
**financials**(1) 199:1
**financing**(3) 115:3 149:17 186:4
**find**(27) 16:11 18:1 31:18 39:8 39:24 51:13 52:25 54:11 56:2 56:20 56:20 59:1 59:14 60:19 66:2 71:12 74:10 80:20 105:4 114:16 184:7 188:18 206:9 206:12 208:24 209:19 216:4

**finding**(5) 53:1 76:25 104:24 114:5 205:11
**findings**(11) 23:11 41:14 44:11 72:1 73:3 210:25 214:13 220:21 221:3 221:23 221:2

**finds**(1) 60:8
**fine**(3) 15:11 85:11 206:18
**finger**(1) 2:40
**finish**(2) 66:17 131:8
**firm**(6) 25:3 148:24 149:15 149:18 150:10 153:21

**first**(74) 16:17 20:3 28:19 28:21 29:4 31:7 32:24 37:7 41:24 45:13 46:3 48:9 55:16 64:5 64:7 66:4 70:13 70:21 70:22 72:8 86:3 86:4 88:3 89:20 92:22 94:14 95:1 96:20 98:24 101:24 101:24 102:3 102:10 102:16 103:4 104:12 105:25 106:1 106:9 107:3 107:8 110:8 111:11 113:2 113:11 114:23 116:8 121:20 123:24 125:6 127:22 128:2 129:21 136:15 159:6 160:25 162:12 162:18 163:10 168:15 172:12 175:14 176:21 180:17 180:22 181:1 183:7 187:9 195:21 197:7 199:24 204:11 207:6 220:23

**fischel**(34) 29:22 94:15 97:22 97:23 98:8 98:11 98:17 103:3 103:12 103:16 112:1 112:6 112:10 116:7 116:21 120:6 120:12 121:3 121:8 123:3 123:16 123:23 123:25 124:3 124:24 125:3 125:7 125:12 126:20 126:23 127:18 127:20 129:17 215:3

**fischel's**(1) 29:25
**fischel's**(9) 112:5 112:15 120:7 120:9 120:11 120:16 121:2 122:22 122:24

**fit**(1) 182:7
**fitch**(1) 204:12
**fitzsimons**(2) 108:10 134:7
**five**(20) 16:8 22:20 68:21 69:12 90:23 102:3 102:16 106:9 147:15 166:23 168:5 168:12 169:18 169:24 170:17 186:2 200:21 200:21 216:7

**five-minute**(1) 132:5
**fixes**(1) 80:20
**fix**(2) 52:20 53:15
**flatly**(1) 142:12
**flaw**(1) 166:10

**flawed**(2) 195:25 196:14
**flaws**(1) 196:20
**flex**(1) 127:4
**flexibility**(1) 46:12
**flip**(1) 127:2
**flom**(1) 13:39
**floor**(3) 2:8 2:25 109:12
**flow**(5) 49:24 81:12 144:9 217:15 218:12
**flowing**(1) 141:25
**flows**(3) 58:1 215:14 215:15
**focus**(15) 44:15 49:22 51:7 53:5 55:15 85:8 87:10 94:10 94:24 106:10 114:7 129:23 156:17 163:16 180:20

**focused**(8) 20:3 24:1 28:18 44:8 67:16 94:8 154:21 167:9

**focuses**(1) 48:10
**focusing**(2) 45:20 114:15
**fold**(1) 202:16
**folks**(3) 34:16 74:24 81:22
**follow**(2) 26:15 27:2
**follow-up**(1) 167:4
**following**(4) 33:19 38:23 88:14 129:8
**follows**(1) 37:25
**folly**(1) 134:21
**food**(2) 80:6 81:12
**foot**(2) 213:17 213:24
**footing**(1) 183:1
**footnote**(1) 119:16
**for**(301) 1:2 1:23 2:4 2:19 2:29 3:4 3:10 3:36 4:4 4:17 4:32 5:4 5:16 5:22 5:27 5:34 5:42 6:5 6:9 6:22 6:30 6:38 7:4 7:41 8:4 8:25 8:29 8:33 8:37 8:41 9:4 9:8 9:18 9:22 9:26 9:29 9:35 9:40 10:4 10:10 10:16 10:20 10:24 10:28 10:32 10:41 11:4 11:7 11:11 11:15 11:18 11:22 11:28 11:32 11:36 11:40 12:4 12:7 12:18 12:22 12:26 12:30 12:34 12:38 12:43 13:5 13:9 13:13 13:17 13:21 13:25 13:29 13:33 13:37 13:43 14:4 15:21 16:10 16:14 17:13 18:11 19:1 19:1 20:2 20:11 20:23 21:20 22:17 22:22 23:12 23:13 23:17 24:9 24:24 25:9 25:25 26:17 28:3 29:2 29:5 29:6 30:25 31:2 31:5 32:22 33:3 33:16 34:2 34:10 34:18 35:9 36:10 36:11 36:19 36:23 36:24 37:4 39:2 41:20 42:14 44:6 44:18 44:21 47:20 48:9 49:22 51:13 52:4 54:10 56:8 58:16 59:15 60:1 60:25 61:12 61:14 61:14 61:14 62:25 64:6 66:9 67:8 68:6 69:16 70:13 72:23 75:2 75:24 76:3 76:19 77:5 77:14 82:17 82:24 84:13 84:20 84:21 84:24 85:20 85:21 85:25 86:8 86:19 86:19 88:14 89:17 90:11 91:1 91:5 91:9 91:17 91:18 91:21 92:1 92:21 94:3 96:14 96:24 98:17 99:5 102:15 102:18 103:17 104:22 104:24 107:17 107:19 108:20 109:17 110:8 110:16 111:20 112:16 114:1 114:3 114:4 115:1 115:16 116:10 116:23 117:17 117:4 119:2 119:21 122:1 123:23 124:6 124:7 124:7 125:1 126:4 126:11 127:23 129:19 131:21 132:8 133:2 133:8 133:13 133:14 133:22 134:3 134:5 134:8 134:10 136:9 136:15 138:6 139:13 140:15 140:25 141:3 142:2 143:4 143:11 143:14 143:18 145:3 145:9 145:20 146:10 147:4 147:12 147:13 147:14 147:16 147:21 148:2 148:7 148:23 148:25 149:9 149:19 149:20 149:22 150:22 151:2 151:21 152:2 152:23 154:7 154:11 155:8 155:11 156:13 158:12 159:11 160:7 162:14 162:23 163:18 166:18 167:3 167:17 167:17 169:1 169:1 169:10 170:3 172:2 173:2 173:17 175:5 175:16 175:23 176:17 178:12 178:13 179:4 179:24 180:2 180:16 180:16 181:18 182:8 182:13 183:2 183:4 183:18

Page : 11

10/05/11 15:47:58

| Word | Page:Line |
|---|---|

**for(51)** 184:17 184:25 185:10 186:13 186:22 187:1 187:9 188:14 190:1 191:1 191:11 191:21 192:7 192:14 195:24 197:1 198:4 198:4 198:9 198:11 199:24 202:8 202:21 204:4 205:5 205:23 207:21 208:8 208:12 208:22 209:25 210:14 210:20 210:21 211:1 211:3 211:11 215:9 216:8 216:14 217:19 218:17 219:3 220:24 221:5 221:21 222:5 222:15 222:24 223:16 223:2

**force(1)** 151:7
**forced(1)** 147:19
**forcefully(1)** 50:23
**forecast(7)** 80:19 107:24 109:23 110:16 198:12 198:23 199:6

**forecasting(1)** 96:23
**foregoing(1)** 224:5
**foregone(2)** 55:11 136:3
**foresee(2)** 58:17 59:12
**foreseeable(4)** 31:15 58:14 59:4 59:5
**forever(1)** 97:10
**forget(1)** 67:25
**forgetting(1)** 140:22
**forgot(2)** 209:18 221:15
**forgotten(1)** 90:1
**form(11)** 65:2 65:3 73:18 114:17 117:25 117:25 118:5 118:13 118:20 175:21 177:8

**formal(2)** 76:2 76:7
**formally(1)** 110:15
**forman(1)** 1:31
**formed(1)** 150:17
**former(4)** 13:37 34:21 86:15 100:6
**formula(1)** 173:2
**fortgang(1)** 11:25
**forth(8)** 17:5 26:8 141:10 144:16 176:21 185:9 187:21 215:4

**forthcoming(1)** 106:3
**forward(5)** 82:11 139:1 169:3 197:16 222:25

**fought(1)** 27:7
**found(28)** 19:15 19:13 19:15 19:25 20:4 20:9 20:18 21:5 21:7 21:23 21:25 25:21 28:8 30:5 31:17 31:22 32:3 36:18 40:22 49:24 63:10 63:11 71:2 71:9 71:18 71:19 142:16 209:22

**foundation(6)** 10:5 10:6 98:16 101:7 118:1 118:5

**four(7)** 46:3 109:20 109:25 156:6 182:13 182:13 183:22

**fourth(4)** 95:18 131:2 165:13 214:7
**frame(1)** 154:5
**franchise(1)** 126:17
**frank(4)** 10:11 10:13 126:12 126:15
**frankel(1)** 9:13
**frankly(6)** 49:23 83:9 184:18 184:22 206:7 207:3

**fraud(17)** 20:1 20:2 28:9 28:15 28:17 31:10 31:11 38:7 38:8 38:11 39:18 104:24 105:8 110:24 165:14 196:9 196:12

**fraudulent(37)** 19:13 19:25 21:20 38:2 60:6 60:9 61:7 61:24 62:5 62:12 67:19 68:2 93:2 103:7 105:5 128:14 132:23 137:10 139:10 139:14 140:14 161:16 161:19 164:2 174:5 178:12 183:8 190:12 196:5 207:17 207:18 207:19 207:24 208:8 208:12 209:4

**fraudulently(1)** 110:20
**fraught(1)** 86:11
**free(1)** 122:11
**freed(1)** 217:3

**frequently(1)** 118:17
**friedman(13)** 4:40 8:16 9:36 85:23 146:6 169:5 169:17 169:20 169:22 169:23 170:1 200:20 201:19

**friend(1)** 151:2
**friends(1)** 126:4
**from(215)** 15:19 15:22 16:1 17:8 19:20 22:9 22:16 22:23 23:4 23:7 24:25 26:6 26:10 27:8 29:22 31:21 33:11 35:4 37:8 38:24 39:1 40:5 40:22 41:2 41:3 41:9 41:22 42:1 42:8 46:5 46:24 49:5 49:17 50:22 52:16 54:7 54:24 56:22 57:23 60:1 61:2 63:24 64:13 66:8 67:4 69:13 70:21 73:10 73:17 73:18 73:19 73:21 75:11 78:19 80:18 82:13 82:14 83:1 84:4 84:15 84:18 85:22 86:12 86:15 89:9 90:7 91:14 93:8 95:5 95:7 95:11 95:18 96:3 97:8 97:25 99:1 99:25 102:23 102:23 105:12 105:16 106:3 106:24 107:18 108:2 108:16 109:21 110:2 112:11 112:11 116:20 117:7 117:23 118:25 119:14 119:25 120:13 120:17 121:12 121:18 124:10 124:13 124:16 127:3 128:6 128:16 128:24 129:1 130:2 130:23 131:25 132:22 132:25 135:1 135:25 136:7 137:7 137:7 139:3 139:8 139:20 139:24 140:11 141:18 142:7 142:1 143:11 143:13 143:15 144:21 146:1 146:21 147:9 147:24 149:22 150:14 150:1 151:10 153:20 153:24 155:18 156:4 156:5 157:4 157:5 159:14 159:17 160:11 161:3 161:11 161:21 162:12 163:3 165:7 166:1 170:7 172:12 173:5 174:12 175:5 175:9 175:15 176:18 177:9 177:11 177:11 177:1 178:4 178:6 178:22 180:3 180:12 181:25 184:12 185:23 186:19 186:23 187:16 187:17 187:23 189:23 189:25 191:15 191:21 192:23 193:8 193:14 194:2 194:8 195:19 196:24 196:25 203:4 203:5 203:11 204:9 206:12 207:16 207:22 208:7 209:20 210:4 211:18 212:9 213:19 215:3 217:15 218:2 218:22 218:24 219:2 219:8 219:9 223:1 224:6

**front(7)** 16:13 27:23 41:7 59:22 100:7 202:24 216:7

**froze(1)** 175:9
**fruition(2)** 88:1 89:3
**fruits(3)** 89:2 89:10 90:16
**full(35)** 22:11 24:15 27:9 27:11 28:7 30:21 30:22 30:24 32:8 34:18 34:25 35:15 36:23 54:22 62:21 72:16 76:24 77:1 77:4 88:20 88:21 88:24 99:18 127:4 135:25 136:23 138:15 158:19 169:24 175:23 182:187:19 196:13 198:14 200:3

**fully(2)** 82:1 200:2
**fun(1)** 85:18
**fund(4)** 125:3 125:7 142:12 142:16
**fundamental(3)** 63:3 115:13 173:22 175:15

**fundamentally(2)** 39:3 91:9
**funds(1)** 142:5
**further(6)** 71:9 77:16 94:20 98:10 103:16 174:4 143:17 223:23

**future(1)** 79:25
**gain(1)** 58:1
**gamble(1)** 42:3
**game(2)** 17:24 71:7
**game-changer(1)** 91:12
**games(1)** 67:10
**gandhi(1)** 10:21
**garamella(1)** 150:1
**garmella(2)** 107:1 120:23
**garrison(1)** 11:41
**garvan(1)** 4:33
**gary(1)** 7:36

**gave(7)** 45:3 68:5 80:25 146:4 163:6 193:7 217:16

**gavin(1)** 10:33
**gears(1)** 98:21
**gecker(1)** 10:11
**geddes(1)** 4:27
**general(4)** 90:4 140:13 158:15 216:24
**generally(1)** 81:3
**generate(1)** 123:10
**generated(1)** 99:4
**generates(1)** 210:3
**generating(1)** 105:16
**gentilotti(1)** 4:32
**george(2)** 6:5 6:6
**georgia(1)** 148:14
**get(99)** 26:15 27:9 27:11 28:3 29:17 30:8 30:22 31:21 32:9 32:10 32:11 33:11 34:3 34:7 34:9 34:12 34:12 34:25 35:2 35:12 35:17 35:16 36:23 41:2 42:13 43:10 43:11 43:17 45:8 48:19 49:6 60:18 61:8 63:8 63:10 63:23 64:12 64:19 65:17 67:21 68:14 68:15 68:15 69:22 71:14 71:15 71:17 85:17 87:6 87:15 90:3 111:10 111:22 116:10 121:8 128:9 130:4 134:19 138:16 143:10 143:23 149:3 152:23 152:22 155:14 156:16 159:1 159:11 159:19 161:12 163:8 163:25 164:7 167:14 168:7 177:2 177:24 182:23 183:2 184:9 192:8 192:9 192:9 193:25 194:10 195:2 197:10 201:17 208:7 208:11 209:5 210:18 212:8 213:10 218:1 218:4 219:11 222:16

**gets(11)** 34:25 55:19 123:6 136:16 147:3 158:4 158:19 196:23 197:4 215:23 219:8

**getting(5)** 28:7 29:12 36:21 41:11 158:16 127:11 162:20 180:13 189:8 198:15 221:1

**give(11)** 36:8 56:2 108:14 120:14 127:11 127:11 162:20 180:13 189:8 198:15 221:1

**give-me(1)** 88:5
**given(20)** 23:8 55:16 57:13 80:21 89:3 104:12 108:15 110:7 113:12 119:18 122:2 138:25 140:14 140:18 154:9 154:17 160:14 175:7 187:12 212:21

**gives(2)** 68:6 194:12
**giving(2)** 188:7 188:20
**global(1)** 83:21
**glossed(1)** 194:9
**goals(2)** 175:2 175:13
**goes(18)** 54:6 56:21 105:9 120:17 120:19 123:1 130:2 130:23 135:7 138:10 138:10 139:1 143:6 147:14 172:20 197:19 215:18 217:7

**going(116)** 16:16 16:17 16:22 26:5 30:19 32:16 33:18 33:25 35:3 36:6 36:17 37:18 40:7 44:12 44:22 44:23 44:24 45:17 47:2 48:9 48:10 48:19 49:22 50:9 50:19 51:10 51:23 52:7 52:10 52:17 53:16 54:7 57:18 58:25 59:3 59:4 59:11 59:25 60:3 60:3 60:6 60:7 60:23 62:8 62:18 62:20 63:12 63:13 63:14 63:20 63:22 63:24 64:18 65:21 67:20 68:21 69:18 69:21 82:9 85:8 85:17 85:20 87:10 90:24 94:7 94:10 94:2 96:24 98:12 98:21 100:13 101:3 101:9 104:17 123:8 123:19 125:4 127:22 128:9 128:24 131:7 132:4 141:4 148:5 148:17 150:7 152:9 155:13 156:2 160:22 163:13 167:13 169:4 170:2 180:17 182:15 184:9 184:12 184:25 185:15 187:15 190:24 191:14 195:22 197:2 200:23 200:25 201:9 205:14 206:9 206:12 210:12 210:13 211:20 214:19 222:25

**golden(14)** 4:22 85:17 85:24 173:15 173:16 201:24 211:20 211:22 211:24 212:12:25 213:19 214:1

**goldfarb(1)** 6:19

**goldman(3)** 9:22 9:22 10:38
**goldsmith(1)** 8:13
**gone(8)** 21:18 46:8 80:13 81:23 81:24 82:8 136:11 184:12

**good(52)** 15:3 15:4 15:5 19:16 25:9 25:14 25:19 25:20 26:7 26:17 30:12 33:24 36:18 44:4 53:19 59:22 67:11 76:19 84:20 91:9 91:18 91:21 92:1 94:2 101:14 127:3 130:14 132:7 133:17 147:12 147:13 147:14 148:23 152:25 154:19 154:21 154:22 155:20 159:21 162:22 165:14 169:17 173:15 173:15 182:14 184:14 189:25 195:1 195:7 200:16 211:10 223:15

**good-faith(1)** 130:15
**goodness(1)** 64:24
**gordon(12)** 2:4 10:32 10:32 12:44 170:15 170:16 170:25 171:6 171:9 171:12 172:9 173:7

**gordon's(1)** 170:24
**gosh(1)** 152:18
**goss(1)** 142:20
**got(52)** 16:23 18:1 36:12 37:16 39:8 39:24 40:1 42:3 49:20 50:23 50:23 54:7 54:8 55:8 65:5 65:7 69:1 73:4 73:16 92:18 107:11 119:11 120:21 121:9 121:9 121:10 129:5 134:6 134:7 134:11 134:14 134:15 134:18 139:19 149:14 159:12 162:10 167:16 168:2 185:8 189:14 190:15 192:17 192:21 196:10 196:13 197:12 197:13 197:22 198:2 206:2 207:6

**gotshal(2)** 5:4 10:20
**gotten(3)** 16:25 70:15 196:13
**governed(1)** 161:12
**governs(1)** 217:9
**gradually(1)** 48:20
**graeme(1)** 3:30
**grand(2)** 2:15 42:13
**grant(2)** 67:17 68:9
**granted(1)** 214:12
**graphically(1)** 27:14
**grave(1)** 127:25
**great(7)** 5:22 12:22 19:19 33:2 91:1 149:21 189:8

**greater(4)** 102:11 113:12 149:22 205:5
**green(3)** 101:4 122:10 122:11
**greg(1)** 7:32
**greissman(1)** 9:27
**grenesko(1)** 134:8
**grew(1)** 88:4
**grippo(1)** 6:5
**gropper(7)** 67:22 91:11 91:15 145:17 155:12 197:12 218:18

**gropper's(4)** 66:23 66:23 67:6 196:24
**groppers's(1)** 218:16
**gross(1)** 196:1
**grossly(1)** 104:21
**ground(5)** 51:14 51:15 51:16 187:23 77:21 134:15 159:3 86:5

**group(9)** 10:11 10:16 13:9 15:23 75:15 77:21 134:15 159:3 86:5

**groups(4)** 16:9 158:13 220:8 221:3
**growth(5)** 99:22 102:10 102:11 112:22 113:12

**guaranteed(2)** 57:9 202:12
**guarantees(4)** 181:25 182:5 182:9 182:11
**guarantor(17)** 20:15 20:22 20:25 21:11 21:16 28:25 30:13 31:24 32:25 36:21 71:14 71:24 76:10 188:19 214:7 214:17 217:10

**guarantors(2)** 202:12 202:16
**guess(6)** 50:3 55:6 118:16 154:4 194:3 222:23

**guessed(2)** 79:10 79:12

**Word — Page:Line**

guidance(1) 19:1
guided(2) 17:22 42:22
guideline(1) 189:17
guides(1) 45:9
gump(5) 4:17 8:9 84:21 94:3 173:16
guy(3) 37:23 162:3 162:4
guys(2) 74:17 74:21
had(88) 21:18 22:2 27:25 32:17 38:21 42:14 45:19 46:7 52:2 61:22 62:11 64:1 67:3 69:8 72:22 73:17 76:15 78:5 78:25 79:1 79:6 80:12 80:13 81:23 81:24 94:15 100:8 100:25 102:25 105:19 108:17 109:7 109:10 113:14 113:15 117:14 117:15 117:20 126:23 129:7 130:12 135:5 145:1 146:6 149:15 150:4 150:20 151:1 151:8 151:24 153:21 154:15 160:1 161:15 161:1 162:11 162:22 162:25 165:9 166:6 166:19 166:20 168:6 175:11 175:12 176:23 178:7 179:3 184:23 186:9 186:11 187:5 187:6 188:19 191:5 191:10 192:23 194:5 194:16 194:17 198:20 200:7 205:19 205:25 210:9 210:10 212:3 220:20
hadn't(1) 79:4
haircut(1) 194:17
hale(1) 10:36
half(10) 16:9 57:20 102:10 102:11 113:11 113:13 128:3 175:6 199:24 223:20
hallmark(1) 124:4
hand(12) 40:12 48:9 48:13 63:25 84:23 116:22 121:9 132:3 201:21 210:9 221:14 221:16
handbook(1) 99:8
handed(3) 85:1 94:5 161:24
hands(1) 136:22
hannafan(2) 12:26 12:26
happen(15) 24:13 32:20 47:21 59:3 59:12 62:18 63:20 64:9 64:11 132:11 138:17 152:19 172:12 200:25 217:18
happened(20) 50:12 62:14 101:20 101:23 106:19 106:20 107:9 108:1 108:2 124:24 129:21 130:20 152:10 154:7 154:9 159:6 197:24 205:23 206:17 218:18
happening(3) 66:19 82:5 195:20
happens(8) 22:5 38:22 73:13 130:1 144:8 213:7 217:3 218:12
happy(4) 68:18 82:20 165:19 211:7
hard(20) 42:24 51:13 51:13 52:9 52:11 54:23 59:9 75:3 84:13 100:17 145:9 145:20 146:3 146:10 148:7 148:17 148:18 167:14 195:25 211:14
hard-stop(1) 85:5
hardcopy(1) 223:4
harder(2) 21:7 149:22
hardin(1) 142:10
hardly(1) 112:13
harm(1) 139:15
harmed(1) 139:15
harping(1) 137:5
harrisburg(1) 1:48
hartenstein(1) 107:22
hartenstein's(1) 108:4
hartford(1) 4:7

has(79) 15:8 18:5 18:9 18:9 22:25 27:23 29:2 29:8 41:20 43:10 45:11 46:11 50:4 56:8 57:15 59:1 59:7 61:13 62:9 62:10 63:11 65:23 70:15 72:4 77:18 78:9 80:5 82:7 82:8 82:23 87:20 88:8 88:16 94:25 97:21 103:13 105:5 110:25 114:1 114:6 114:6 114:13 116:8 119:5 119:6 130:8 132:2 135:21 136:9 139:5 139:14 141:14 142:15 143:1 150:25 154:9 154:12 157:1 161:16 164:24 166:8 169:4 169:7 173:3 179:15 179:18 182:13 183:5 183:19 183:24 193:1 194:5 197:8 197:9 197:23 198:1 198:3 201:20 217:10 222:7
hasn't(4) 78:18 147:19 184:24 198:14
hasn't(1) 210:15
hat(1) 24:8
hats(1) 150:11
hauer(4) 4:17 8:9 84:21 173:17
have(282) 20:14 20:25 21:3 24:4 28:22 25:9 29:19 30:9 30:15 31:9 32:25 33:13 33:13 33:18 33:19 34:1 34:15 35:11 35:15 36:2 36:10 36:11 37:5 38:10 38:24 38:25 40:9 40:20 40:21 41:15 41:19 43:8 43:11 43:12 43:18 43:19 43:23 45:9 45:14 46:6 46:9 47:2 47:8 48:2 48:8 48:25 49:10 49:13 49:13 50:16 50:17 50:18 51:12 52:52:9 52:10 52:15 52:21 53:21 53:24 54:22 55:6 55:8 55:9 55:9 57:3 57:8 57:15 58:3 59:8 59:14 59:18 60:10 61:15 61:16 62:24 63:6 63:10 64:3 64:21 65:6 65:11 65:24 67:23 68:1 68:19 68:23 69:6 70:2 70:17 75:20 81:11 81:25 82:16 82:25 84:1 84:8 84:13 85:5 86:6 86:14 86:17 87:21 88:10 89:5 89:14 89:15 90:1 90:19 91:23 92:10 93:19 96:10 97:10 97:11 99:15 103:9 103:10 103:10 104:10 105:6 106:11 106:2 107:13 107:19 107:22 108:7 108:9 108:19 109:1 109:19 113:5 113:6 113:17 118:2 121:19 124:17 125:9 127:1 127:14 130:15 131:5 131:24 132:10 132:23 135:1 135:13 135:25 136:11 137:5 137:20 138:17 138:19 139:21 140:9 141:19 142:1 142:3 146:17 147:15 148:10 148:13 148:19 149:11 149:14 150:16 152:1 152:16 152:16 152:20 153:4 154:9 154:20 156:8 156:25 157:7 157:9 157:17 158:9 162:2 163:3 169:8 170:2 170:8 170:9 170:17 170:18 170:19 171:5 171:9 171:4 171:15 171:17 172:5 172:16 172:18 175:3 176:16 178:24 180:5 180:6 180:10 180:15 180:17 182:3 182:3 182:8 182:12 183:17 183:21 183:22 184:2 184:9 185:5 185:11 186:9 186:22 189:12 189:24 190:11 191:1 192:11 193:25 195:2 195:6 196:9 196:24 197:15 197:19 197:19 198:5 198:10 199:2 201:10 201:13 202:10 202:11 203:6 203:14 203:15 203:17 203:24 204:4 205:4 205:5 206:5 206:6 206:7 206:21 206:21 207:6 209:13 209:15 210:6 211:4 211:8 212:15 212:23 213:22 214:22 215:20 216:25 218:3 218:9 218:10 218:21 219:5 219:14 220:24 221:4 221:7 222:8 222:17 223:3 223:18
haven't(1) 39:19
haven't(1) 213:6
having(15) 16:9 50:21 75:1 100:17 103:4 127:6 127:11 145:8 145:15 154:6 155:2 166:4 168:12 207:4 209:25
hayes(1) 214:14
haywire(1) 55:4
hazeltine(1) 4:10
he'd(1) 200:21
he'll(1) 169:24

he's(19) 37:23 49:5 49:12 56:15 73:4 73:4 140:22 147:13 161:4 161:7 161:7 162:3 179:10 186:24 197:1 197:3 197:12 197:13 199:19
head(8) 68:7 105:13 105:25 126:7 126:15 166:14 166:16 166:21
headed(3) 47:6 95:14 109:15
headline(3) 37:24 41:7 190:21
headlines(1) 49:4
headquarters(1) 100:25
healing(2) 178:16 178:23
hear(13) 15:22 16:22 26:6 30:19 35:3 45:1 85:22 153:5 153:10 191:14 194:16 195:18 212:16
heard(55) 21:6 24:24 27:13 28:18 29:21 35:5 35:16 38:14 45:12 46:25 67:1 70:20 70:22 84:16 85:5 88:22 89:24 91:8 91:11 102:23 115:7 123:22 129:1 135:16 136:7 141:12 148:3 148:10 149:2 150:1 152:14 152:17 156:3 156:17 157:9 160:11 162:16 163:9 165:19 167:22 168:7 170:2 176:3 176:14 178:20 189:21 190:20 191:1 193:14 194:16 195:12 207:4 218:15 219:...

hearing(12) 19:14 21:7 28:18 78:25 79:19 88:3 179:13 181:14 211:2 221:10 224:1 224:2
hearings(2) 34:22 185:15
heavily(1) 157:20
hedge(2) 142:12 142:16
heilbut(1) 11:29
heiligman(1) 10:12
heirs(1) 142:24
held(1) 114:10
hell(1) 86:15
help(5) 25:2 27:7 66:5 155:19 161:11
helped(2) 150:25 160:23
helpful(2) 15:21 204:5
helps(1) 145:11
her(5) 104:7 151:1 151:2 152:5 194:21
hercules(1) 2:23
here(98) 18:15 23:15 26:13 33:4 39:12 46:9 48:4 50:16 50:17 55:7 59:19 59:23 61:10 62:9 63:20 66:19 68:22 70:16 72:19 75:10 75:16 77:11 78:9 80:9 91:3 96:2 97:12 98:22 99:15 100:6 104:7 105:11 105:21 106:5 106:7 107:2 108:7 108:10 108:19 109:1 109:19 111:6 112:22 113:9 114:14 120:22 121:11 124:10 124:2 125:14 125:18 126:11 127:2 128:24 131:10 132:21 133:8 136:2 139:20 142:3 149:17 150:20 151:3 152:10 154:7 154:9 154:20 161:9 161:11 161:15 161:20 175:18 184:2 191:14 194:4 194:11 195:3 195:16 195:20 197:12 197:18 197:22 198:6 205:23 207:19 207:24 209:21 214:18 217:17 218:6 218:17 219:4 220:18 222:13
here's(3) 56:17 152:9 185:24
here's(4) 96:10 97:23 117:20 123:8
he's(11) 93:23 99:16 105:14 105:15 105:20 106:6 107:2 107:7 167:24 168:25 212:20
high(16) 23:19 53:10 54:17 67:10 73:10 76:22 76:23 76:24 77:5 78:21 78:23 90:14 120:20 128:1 200:13 200:16
high-yield(1) 204:10
higher(15) 19:9 34:24 35:10 43:10 57:23 71:18 78:12 81:18 112:15 134:17 138:2 166:4 167:1 176:10 192:14
highest(1) 148:22
highlight(1) 202:9
highlighted(1) 117:8
highlights(1) 25:5

highly(8) 18:16 20:5 21:23 22:15 31:14 40:19 82:4 129:18
hille(1) 7:28
him(28) 23:13 27:23 38:18 38:19 66:24 74:16 75:4 87:14 116:21 116:23 126:4 146:4 151:15 160:16 160:17 161:5 161:12 165:16 166:24 166:25 168:3 186:12 186:25 192:4 212:16 215:20 218:19 219:8
himself(1) 165:5
hindered(1) 105:3
hindsight(1) 50:25
his(148) 18:25 19:3 19:3 19:12 20:20 21:5 21:19 23:10 27:20 27:20 29:11 32:3 34:5 34:9 38:15 38:21 40:6 43:4 49:4 49:6 54:9 54:16 56:18 58:3 58:4 58:7 67:10 67:22 67:23 68:3 72:3 72:6 72:10 73:3 74:3 74:6 75:3 75:5 75:19 75:22 76:12 79:2 79:6 79:7 79:8 79:13 79:23 79:24 79:25 80:2 80:7 91:16 92:17 92:20 92:24 93:14 93:15 93:15 93:17 93:21 98:9 98:18 102:24 104:20 107:4 107:22 111:16 112:1 112:1 114:4 115:11 115:23 115:24 116:20 116:22 116:23 116:25 117:14 119:22 120:13 120:23 121:8 121:13 123:23 124:1 124:2 126:3 132:25 133:1 141:9 146:2 146:21 148:4 150:22 161:13 162:10 162:12 162:19 163:4 163:4 163:3 164:7 164:11 164:13 164:19 164:24 164:25 165:3 165:3 166:16 166:16 166:21 166:22 167:5 167:24 167:25 168:4 168:6 168:7 168:17 168:10 168:16 168:22 173:3 173:4 187:5 187:10 187:12 188:2 188:3 188:6 189:4 189:9 189:15 190:9 190:14 190:17 193:11 193:14 196:25 197:5 199:15 200:3 212:22 219:11
historic(2) 198:18 198:24
historical(3) 113:16 188:1 188:2
history(2) 54:25 55:22
hit(4) 45:10 101:24 110:8 111:22
hitting(1) 86:14
hockey-stick(1) 101:13
hold(4) 68:15 123:20 199:20 222:14
holdback(1) 177:6
holder(1) 218:25
holders(11) 42:12 90:21 136:12 138:6 141:7 141:25 143:22 144:11 144:15 203:21 203:21
holdings(2) 80:3 158:20
holds(1) 32:18
holy(1) 151:3
home(6) 23:23 29:18 36:13 209:6 209:18 211:21
homerun(2) 93:20 217:13
homework(2) 195:1 195:4
honest(1) 195:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**honor**(301) 15:4 15:5 15:8 15:13 16:7 16:12 16:16 17:2 17:10 17:19 18:5 18:15 19:3 22:3 22:14 22:19 22:24 23:9 23:16 23:20 24:3 24:7 24:19 24:22 25:11 25:20 25:25 26:4 26:15 26:20 27:3 27:17 28:8 28:17 30:4 30:11 30:18 30:23 31:7 32:7 32:13 32:19 33:1 33:6 33:23 34:2 34:6 34:14 34:23 35:3 35:15 35:21 36:14 36:16 37:2 37:19 38:21 39:2 39:6 39:10 39:15 40:4 40:12 41:7 41:6 41:18 42:8 42:20 43:5 43:8 43:16 43:21 43:22 44:3 44:4 45:11 46:25 51:5 53:3 57:13 57:22 62:1 67:14 68:18 68:24 69:15 69:17 82:15 82:20 83:4 83:25 84:8 84:15 84:20 84:23 85:1 85:2 85:14 86:3 86:7 86:10 86:14 86:20 87:1 87:9 87:16 87:20 88:15 89:4 89:9 89:19 89:20 90:10 90:24 91:11 92:7 92:13 92:15 92:22 94:2 94:5 94:6 94:8 94:9 94:11 94:16 94:19 94:25 95:2 95:7 95:10 95:14 95:15 95:22 96:2 96:6 96:8 96:11 96:17 96:21 97:1 97:7 97:11 97:16 97:20 97:24 98:2 98:6 98:11 98:15 98:19 98:21 99:3 99:7 99:9 99:11 99:15 99:18 99:23 100:2 100:6 100:22 101:1 101:5 101:9 101:12 101:15 101:16 101:21 102:1 102:7 102:15 102:18 102:21 102:23 102:2 103:2 103:5 103:13 103:19 103:25 104:17 104:25 105:6 105:8 105:11 105:18 105:20 105:23 106:4 106:6 106:7 106:10 106:15 106:21 106:25 107:8 107:13 107:17 107:17 107:23 108:2 108:7 108:10 108:12 108:18 108:21 109:1 109:6 109:16 109:18 109:22 109:25 110:3 110:9 110:17 110:23 111:5 111:9 111:12 111:17 111:21 112:8 112:10 112:13 112:16 112:19 113:1 113:3 113:9 113:13 113:20 113:23 113:25 114:1 114:5 114:14 114:21 114:23 115:1 115:5 115:12 115:19 115:21 115:23 115:25 116:2 116:6 116:12 116:14 116:18 116:22 117:1 117:6 117:9 117:13 117:17 118:24 119:1 119:3 119:8 119:11 119:14 119:19 119:23 119:2 120:4 120:8 120:11 120:18 120:22 121:2 121:7 121:11 121:15 121:18 121:20 122:1 122:4 122:7 122:8 122:11 122:23 122:21 122:24 123:2 123:7 123:12 123:16 123:21 124:3 124:4 124:20 124:23 125:1 125:5 125:12 125:21 126:2 126:6 126:9

**honor's**(1) 155:21
**honorable**(1) 1:18
**honor's**(1) 221:23
**hope**(2) 85:24 214:21
**hopeful**(1) 87:1
**hopefully**(3) 203:25 222:4 222:12
**horan**(1) 5:23
**horizon**(2) 55:5 55:7
**horns**(1) 86:17
**horrible**(1) 108:15
**hotly**(1) 17:16
**houlihan**(1) 131:6
**hour**(7) 16:10 16:13 69:8 84:8 84:9 84:11 223:20

**hours**(8) 16:8 16:9 45:23 75:1 75:2 85:25 169:14 169:14

**housekeeping**(1) 220:9
**how**(60) 15:14 17:25 18:9 38:2 38:20 47:20 47:21 50:16 51:9 51:10 52:7 54:13 54:20 55:14 58:21 58:25 59:23 60:11 68:23 73:16 74:18 76:12 77:12 89:10 90:10 98:22 100:15 107:20 110:7 110:7 114:24 115:19 119:2 123:8 125:7 139:14 148:23 149:7 152:12 152:18 152:23 152:2 153:7 156:13 156:17 156:18 156:19 161:16 168:13 169:7 172:19 180:4 187:22 187:24 196:20 200:14 205:3 207:19 213:8 223:14
**howard**(1) 3:21
**however**(9) 17:2 19:14 21:25 27:12 32:7 74:21 147:22 170:4 171:24

**huff**(1) 66:5
**huge**(4) 28:10 136:10 190:1 198:13
**hundred-pag**(1) 131:25

**honor**(241) 126:14 126:17 126:23 127:6 127:8 127:10 127:13 127:17 127:22 128:3 128:5 128:7 128:12 128:17 128:25 129:1 129:6 129:11 129:19 129:23 130:5 130:7 130:9 130:20 130:22 130:24 131:3 131:5 131:8 131:11 131:11 131:14 131:18 131:10 131:20 131:23 132:7 132:9 132:16 133:14 134:4 134:10 134:20 134:23 135:4 135:7 135:12 135:13 135:14 136:4 136:19 137:2 137:6 137:13 137:19 137:23 138:1 139:3 139:10 139:18 139:20 140:1 140:9 140:15 140:25 140:18 141:25 142:9 142:20 143:3 143:5 143:12 144:2 144:16 144:19 144:25 145:6 145:11 146:20 147:3 147:6 147:18 147:21 148:8 148:13 148:22 149:1 149:10 149:17 149:24 150:9 150:14 151:4 151:8 151:19 152:5 152:10 153:5 153:20 154:25 155:5 155:11 155:17 156:1 156:3 156:22 158:6 158:15 159:4 160:4 160:10 160:25 161:9 161:20 162:9 162:25 163:2 164:10 165:8 165:23 166:20 167:22 167:25 168:9 168:1 168:14 169:7 169:25 170:2 173:15 173:16 173:18 173:24 174:9 174:25 175:1 176:1 176:14 176:18 176:22 178:3 178:1 179:3 179:11 179:23 180:1 180:6 180:9 180:16 184:13 184:16 185:2 185:4 185:9 185:13 186:1 186:17 187:19 187:21 188:22 189:10 189:21 190:4 190:12 190:18 190:21 191:2 191:6 191:11 191:20 191:25 192:1 192:19 193:4 193:17 193:16 194:1 194:2 197:23 198:4 198:7 198:9 199:5 210:16 210:16 211:7 211:10 212:2 213:1 213:18 213:13 213:19 214:1 214:7 214:13 215:15 215:18 215:19 215:22 216:2 216:3 216:6 216:9 216:13 216:15 217:10 218:2 218:15 218:24 219:4 220:1 220:5 220:7 220:18 220:23 221:1 221:13 221:14 221:16 221:18 221:20 221:21 222:2 222:4 222:20 223:1 223:11 223:15 223:24

**hundreds**(3) 24:6 31:20 36:8
**hurdle**(3) 21:4 28:10 71:6
**hurdles**(14) 27:15 28:6 28:20 30:20 31:3 31:3 34:16 35:13 36:6 40:22 41:4 71:5 193:22 193:25

**hurley**(4) 4:18 223:11 223:11 223:24
**hurts**(1) 83:7
**hypothetical**(6) 116:18 117:12 118:9 118:12 118:19 118:21

**i'd**(11) 22:3 68:18 69:5 71:15 77:16 84:3 84:13 174:8 182:17 198:10 199:21

**i'll**(13) 26:16 65:3 68:22 82:22 143:23 160:12 161:3 169:10 195:2 200:21 201:21 202:9 202:22

**i'm**(52) 16:16 16:17 16:25 43:21 43:23 44:22 44:23 44:24 44:25 47:6 48:10 49:2 50:9 53:3 53:16 54:7 57:3 58:9 59:23 60:23 61:9 61:10 63:14 65:6 65:7 66:16 66:23 67:14 68:7 69:18 70:8 132:11 148:5 149:6 154:8 154:15 154:20 154:20 156:2 163:16 170:1 174:17 180:17 182:23 183:2 184:23 184:24 191:6 191:7 195:21 199:4 199:18

**i've**(15) 16:24 23:15 30:20 33:23 37:2 39:6 40:13 50:23 54:8 67:2 152:6 152:11 169:17 190:20 194:3

**i.e**(1) 83:13
**idea**(10) 50:6 50:6 59:22 61:13 63:7 63:25 64:15 100:25 196:8 199:19

**ideal**(1) 154:5
**identical**(5) 85:13 134:14 134:15 157:13 173:23

**identified**(5) 22:7 41:4 74:5 182:8 189:3
**identifies**(1) 200:4
**identifying**(1) 108:22
**ignore**(6) 32:19 32:24 54:7 185:6 189:15 215:4

**ignored**(4) 80:23 188:12 194:7 194:9
**ignoring**(2) 33:10 33:12
**illiquid**(3) 53:22 53:24 129:18
**illiquidity**(3) 53:22 53:23 53:25
**illuminating**(2) 200:5 204:15
**illustrates**(3) 22:4 27:14 155:24
**imagine**(3) 52:8 52:9 147:4
**imbalance**(1) 212:21
**immediately**(1) 43:12
**imminent**(1) 204:20
**impact**(4) 76:10 167:10 174:19 215:15
**impacted**(2) 128:18 162:20
**impair**(1) 110:22
**impaired**(8) 42:10 179:10 183:16 183:17 183:19 183:24 184:6 213:10

**impeded**(1) 170:6
**implausible**(1) 196:18
**implement**(4) 181:2 182:20 210:13 210:15
**implementation**(2) 209:16 209:18
**implemented**(3) 25:16 180:24 181:19
**implementing**(1) 209:23
**implications**(2) 102:15 216:8
**implicit**(1) 186:9
**implied**(6) 120:16 121:3 121:12 121:14 121:14
**importance**(2) 17:7 188:24
**important**(31) 18:2 23:20 24:4 24:9 38:3 41:16 45:16 64:6 75:10 93:13 95:20 121:21 129:23 130:6 133:18 145:25 146:1 157:25 158:8 159:5 159:19 170:3 175:5 180:19 181:7 189:12 204:3 204:5 206:2 218:2

**importantly**(6) 17:19 56:5 183:13 209:11 210:17 219:19

**impossible**(1) 102:22
**impressed**(1) 154:20
**impression**(1) 46:24
**improper**(1) 196:16
**improprieties**(2) 194:13 196:7
**improve**(2) 136:25 143:21
**imran**(1) 10:29
**inability**(2) 197:9 197:25
**inaccurate**(1) 195:9
**inadequacy**(1) 76:9
**inadequate**(6) 22:2 31:12 92:6 142:5 157:8 189:6

**inappropriate**(4) 58:20 112:24 118:7
**inc**(1) 13:33
**incentive**(2) 127:14 192:11
**incidentally**(1) 62:17
**inclined**(1) 177:25
**include**(5) 74:9 74:9 81:10 117:22 118:4
**included**(3) 34:5 121:23 122:1
**includes**(7) 22:18 66:20 90:8 112:4 112:11 116:22 121:24

**including**(12) 25:3 67:23 75:15 80:8 114:12 154:11 170:15 186:2 199:11 202:23 210:19 221:5

**income**(1) 167:8
**incomplete**(4) 39:15 39:16 180:21 185:9
**inconsistent**(2) 64:14 209:1
**incorporates**(1) 173:25
**increase**(3) 41:12 102:19 215:15
**increased**(1) 78:6
**increasing**(1) 52:2
**incredible**(1) 124:4
**incredibly**(1) 145:25
**incumbent**(1) 191:10
**incur**(2) 58:14 121:23
**incurred**(1) 58:25
**indebtedness**(2) 202:24 209:20
**indecipherable**(1) 55:21
**indeed**(5) 17:21 112:8 114:2 114:4 218:21
**indefinitely."**(1) 76:19
**independent**(11) 18:16 18:22 40:23 58:11 58:24 60:18 185:12 190:23 197:17 205:11 219:1

**index**(2) 52:19 54:10
**indexed**(1) 79:10
**indicated**(7) 16:11 30:1 70:5 70:12 179:6 200:13 201:5

**indicates**(2) 22:8 201:7
**indication**(4) 54:3 129:16 158:11 201:14
**indicative**(2) 153:14 192:6
**indicator**(1) 128:15
**indicia**(1) 50:25
**indiscernible**(1) 223:17
**indisputable**(1) 97:15
**individual**(3) 66:14 142:21 142:21
**induce**(1) 197:5
**indulgence**(2) 43:24 221:8
**industry**(28) 51:6 51:9 51:17 80:20 86:8 95:1 95:4 95:23 96:12 96:19 96:21 97:4 97:8 97:9 97:14 97:19 98:1 98:13 98:16 98:18 98:22 99:6 99:10 99:12 99:20 100:3 123:17 123:18

**industry"**(1) 96:23
**inescapable**(1) 215:24
**inevitably**(1) 170:12
**inexpensive**(3) 124:12 133:23 134:3
**infects**(1) 98:18
**inflated**(2) 110:20 134:11
**influence**(1) 172:10
**inform**(1) 190:25
**informal**(3) 76:2 167:12 167:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| information(4) 23:7 107:25 130:8 130:11 | | interpreted(1) 183:6 | | it's(144) 18:11 20:24 21:6 22:19 24:5 25:17 25:20 26:3 27:6 27:6 28:15 31:24 32:1 35:24 35:25 35:25 36:1 36:3 37:13 39:11 39:15 39:23 41:1 41:2 41:6 42:6 42:15 42:20 42:22 42:25 43:3 46:10 47:1 47:24 48:11 48:12 49:2 49:9 49:19 50:10 50:12 50:13 50:13 51:17 52:20 53:13 54:14 54:15 54:15 54:23 56:7 57:6 57:7 59:3 59:5 59:11 59:20 60:4 60:16 61:8 63:13 63:14 63:21 64:8 64:8 64:12 64:20 65:7 65:9 65:21 65:23 67:9 68:2 69:2 69:24 70:21 70:22 71:12 71:15 71:24 75:2 77:13 80:9 83:4 83:5 83:5 83:19 132:15 132:16 132:17 132:17 132:20 132:22 134:1 134:5 135:22 136:4 136:24 136:25 139:3 139:25 140:15 140:17 140:23 141:6 144:21 145:7 147:12 148:15 150:11 153:1 155:6 155:12 156:22 156:23 157:3 158:7 158:8 158:11 161:21 165:18 166:16 167:5 173:16 176:1 176:15 177:11 179:19 183:2 184:17 188:17 190:20 191:22 192:19 193:8 193:18 193:20 194:22 195:24 197:1 197:24 198:22 202:11 | | jonathan(1) 6:39 | |
| initial(4) 78:14 166:17 201:7 203:8 | | interrelationships(1) 200:9 | | | | jones(1) 5:28 11:7 11:7 | |
| initially(1) 159:12 | | into(56) 15:10 22:25 23:6 27:25 31:16 43:7 54:9 56:21 66:11 68:14 70:19 71:7 71:11 73:9 73:21 73:23 74:11 83:2 88:4 93:7 95:11 103:13 104:23 106:1 107:25 110:21 111:10 123:8 124:2 131:18 134:17 136:22 142:23 144:9 149:3 151:14 155:7 159:16 163:11 163:23 164:3 181:14 182:7 193:21 194:5 195:22 201:2 202:17 202:23 203:2 217:7 217:22 218:11 219:20 219:25 221:2 | | | | jordan(1) 9:15 | |
| initiate(1) 172:7 | | | | | | joseph(1) 10:13 | |
| initiatives(1) 199:14 | | | | | | joshua(1) 12:15 | |
| inject(2) 168:19 194:4 | | | | | | jpm(6) 124:13 124:17 127:3 127:6 135:3 151:3 | |
| injustice(1) 139:7 | | | | | | | |
| ink(1) 108:13 | | | | | | jpmorgan(1) 12:30 | |
| innocent(1) 136:21 | | | | | | jpm's(2) 94:14 124:18 | |
| inside(1) 146:22 | | | | | | jr.,esq(1) 9:14 | |
| insiders(1) 73:18 | | intra(1) 203:15 | | item(1) 181:18 | | judge(9) 1:18 1:19 50:20 66:24 140:18 142:10 165:6 196:1 214:14 | |
| insignificant(1) 174:7 | | intra-class(1) 43:19 | | | | | |
| insisted(1) 106:16 | | introduced(1) 51:21 | | | | | |
| insisting(1) 109:9 | | intuit(1) 219:15 | | its(37) 22:2 24:23 24:24 25:2 25:2 25:4 25:6 37:5 50:22 63:7 87:25 91:20 99:2 99:4 100:5 100:13 101:25 103:18 105:16 110:5 119:10 125:9 130:19 136:25 142:15 143:21 150:21 158:20 170:13 171:2 171:21 173:21 181:2 188:18 210:25 218:7 218:23 | | judged(1) 166:15 | |
| insolvency(40) 20:3 20:4 20:13 20:22 20:24 21:1 21:2 21:4 21:7 21:13 21:19 28:19 28:23 28:25 29:6 29:17 29:20 29:22 30:10 30:15 31:8 31:10 31:25 32:1 32:9 33:14 38:9 49:22 55:5 55:7 55:11 71:7 71:13 71:20 114:5 115:25 122:2 167:10 167:14 167:16 | | investigate(1) 191:8 | | | | judges(3) 149:7 157:19 212:23 | |
| | | investigation(1) 25:2 | | | | judging(1) 166:22 | |
| | | investment(6) 10:16 13:9 56:14 58:21 124:11 150:22 | | | | judgment(15) 18:11 19:13 20:20 25:13 25:20 27:2 28:20 29:25 32:3 36:17 42:19 160:7 173:5 188:6 191:1 | |
| insolvent(19) 20:15 20:19 29:1 29:9 31:18 32:4 57:12 57:12 58:15 59:2 106:14 107:15 111:12 123:4 125:8 125:10 142:17 151:12 204:20 | | | | | | | |
| | | | | | | judicial(2) 87:3 174:11 | |
| | | investments(2) 105:16 106:3 | | | | julie(3) 104:5 104:9 124:10 | |
| | | investors(6) 13:43 13:43 124:8 127:13 129:19 142:12 | | | | july(4) 110:17 124:16 130:18 130:23 | |
| instance(3) 58:9 74:10 92:22 | | | | | | jump(3) 44:22 130:5 130:24 | |
| instances(1) 142:25 | | | | | | juncture(6) 69:23 82:15 85:10 91:22 201:21 203:18 | |
| instantaneously(1) 101:9 | | invitation(1) 85:3 | | | | | |
| instead(11) 21:3 72:24 74:14 77:7 79:25 103:18 103:20 119:15 136:6 172:6 189:16 | | invite(1) 155:7 | | | | june(9) 1:14 15:1 51:21 82:13 95:19 99:17 108:25 109:19 224:10 | |
| | | involved(7) 47:7 95:24 112:12 133:3 147:7 147:23 152:6 | | | | | |
| | | | | | | junior(2) 126:5 126:14 | |
| instructed(1) 114:7 | | involvement(2) 145:24 196:2 | | itself(7) 20:12 32:22 57:7 107:17 109:17 163:5 198:3 | | jurisdictional(1) 88:18 | |
| instruction(3) 38:17 221:4 | | involves(2) 116:12 149:15 | | | | just(126) 21:1 24:7 24:14 25:5 25:12 27:19 32:9 32:19 34:1 34:23 35:18 39:12 40:9 40:11 41:19 43:21 44:12 45:20 50:6 56:15 57:3 60:13 60:15 60:16 63:23 65:8 65:9 68:14 68:21 69:17 72:24 80:23 96:25 97:16 98:2 98:3 98:11 104:22 105:9 106:8 106:24 107:8 107:9 109:25 110:3 111:10 114:22 117:3 119:7 119:13 120:1 123:8 123:14 123:14 123:19 123:20 124:24 124:25 125:6 126:5 127:21 128:4 128:23 130:22 132:10 134:7 135:23 136:25 138:4 140:6 143:23 145:9 148:15 150:10 150:22 152:16 152:19 153:3 153:11 154:2 154:5 154:7 155:15 156:22 158:7 162:13 162:12 165:5 166:23 168:18 177:1 178:3 179:13 186:7 186:15 186:18 189:15 190:10 192:19 192:23 193:16 194:6 194:23 194:25 198:12 198:15 199:2 199:20 199:21 200:15 204:21 205:6 210:12 214:4 214:4 214:18 215:2 216:10 217:2 217:25 221:14 222:22 222:24 223:8 223:12 | |
| instructive(3) 22:15 42:6 119:10 | | involving(3) 106:4 108:9 125:22 | | | | | |
| instructs(3) 105:1 149:13 149:14 | | ipad(2) 51:18 52:14 | | | | | |
| insurance(2) 73:18 222:10 | | ipads(1) 52:11 | | | | | |
| insurers(1) 73:20 | | iphone(3) 51:20 51:21 52:15 | | | | | |
| integrated(9) 48:7 48:17 49:1 60:1 60:5 60:8 60:12 114:9 114:20 | | iphones(2) 52:10 56:16 | | it's(76) 77:9 85:12 86:15 87:14 87:24 88:7 89:12 91:17 97:14 98:10 98:11 100:17 101:14 103:8 103:23 105:20 106:14 106:15 106:24 106:25 108:1 110:10 110:10 111:19 114:18 116:1 118:7 119:17 120:1 121:16 121:21 122:10 122:16 122:16 122:17 122:20 123:14 123:14 123:14 123:22 124:4 125:8 126:6 126:15 127:9 127:10 127:13 127:18 127:19 128:5 128:12 129:9 129:10 129:24 129:25 130:23 131:1 131:24 168:10 204:14 206:2 206:18 208:1 212:10 212:11 212:23 212:24 215:1 215:3 215:5 215:12 215:12 216:25 222:13 223:12 | | | | |
| | | ipods(1) 56:17 | | | | | |
| | | iridium(3) 50:18 128:11 128:22 | | | | | |
| | | iridium's(1) 50:19 | | | | | |
| integration(9) 45:16 60:13 76:2 76:3 76:3 76:8 167:9 167:12 167:13 | | ironic(1) 176:15 | | | | | |
| | | irrelevant(1) 77:9 | | | | | |
| | | irs(1) 222:10 | | | | | |
| intellectual(1) 75:21 | | isn't(11) 24:4 25:11 32:8 50:6 53:19 63:4 63:5 71:6 154:21 183:10 186:11 | | | | | |
| intended(5) 114:19 115:15 121:23 133:16 183:25 | | | | | | | |
| | | isn't(3) 95:17 126:14 209:3 210:17 210:17 | | | | | |
| intensively(2) 46:21 46:22 | | issue(67) 17:11 18:2 29:15 30:4 31:8 38:16 38:21 39:14 40:2 44:13 46:4 47:20 61:16 62:20 68:11 71:8 76:2 78:14 109:10 110:25 113:5 114:6 114:15 116:11 117:4 119:3 119:9 119:20 120:1 129:22 135:20 136:6 142:10 143:6 149:17 150:9 168:9 179:11 179:15 179:18 182:2 185:19 188:1 188:15 188:17 189:10 189:12 190:15 192:2 192:16 198:11 199:7 199:21 201:20 203:12 203:15 203:16 212:5 214:9 216:18 217:6 217:9 217:25 219:22 220:23 221:1 221:11 | | i'd(6) 87:6 120:5 131:8 211:7 212:4 220:9 | | justification(1) 116:23 | |
| | | | | i'll(8) 88:23 205:7 205:7 208:17 216:13 | | justify(4) 33:6 40:7 165:20 187:11 | |
| intentional(13) 19:25 28:9 28:15 38:7 39:18 67:19 68:1 104:24 137:9 164:2 165:14 196:9 196:12 | | | | i'm(24) 85:6 85:20 87:13 94:7 94:10 94:24 98:21 104:17 105:8 123:8 125:4 127:1 131:17 167:17 167:18 168:18 169:4 206:14 208:21 212:14 216:5 222:13 222:21 | | justin(2) 10:42 13:40 | |
| | | | | | | kalenchits(2) 7:41 7:41 | |
| | | | | | | kansa(1) 7:24 | |
| intentionally(2) 105:5 205:10 | | issued(3) 66:1 88:4 110:18 | | i've(3) 104:13 118:6 217:19 | | kaplan(1) 8:16 | |
| inter(3) 180:24 181:10 181:18 | | issuers(1) 131:2 | | | | karen(1) 9:5 | |
| inter-company(4) 181:3 181:5 181:6 | | issues(52) 17:9 17:16 17:23 18:11 19:6 30:2 37:16 38:6 39:9 39:25 43:22 44:22 46:21 66:6 69:20 70:24 75:14 83:12 85:23 88:17 88:18 161:13 165:3 165:8 165:18 166:2 166:6 166:7 169:20 170:5 170:21 172:2 172:4 173:6 173:9 173:10 185:18 190:7 191:3 199:15 200:14 200:22 200:22 200:23 201:8 201:13 201:1 203:25 212:3 221:24 | | jane(1) 6:43 | | karsh(2) 209:8 209:11 | |
| interactive(2) 105:14 106:1 | | | | january(3) 81:20 108:15 218:7 | | kasowitz(3) 4:39 9:35 223:16 | |
| intercompany(9) 23:18 23:19 32:24 33:5 144:15 209:16 209:23 210:7 216:23 | | | | january/february(1) 82:9 | | katharine(1) 3:37 | |
| | | | | jarashow(1) 8:18 | | katten(1) 10:6 | |
| | | | | jason(2) 8:13 11:12 | | kavalis(1) 11:33 | |
| interest(28) 35:2 35:13 43:11 48:18 67:21 67:23 78:15 78:18 78:21 81:25 90:9 134:17 136:17 138:8 141:3 143:10 143:16 143:23 144:10 156:7 159:2 184:17 201:6 202:24 209:20 210:4 210:22 218:13 | | | | jealous(1) 87:13 | | kaye(2) 6:38 9:15 | |
| | | | | jefferies(2) 10:41 10:41 | | kazan(1) 12:39 | |
| | | | | jenner(3) 5:16 8:41 221:20 | | keep(2) 68:22 205:6 | |
| | | | | jennifer(1) 10:25 | | keeps(1) 147:18 | |
| interested(5) 9:4 11:4 11:11 12:18 177:4 | | | | jhaveri(2) 10:16 10:17 | | kelly(1) 11:37 | |
| interesting(8) 46:1 46:2 47:1 181:1 200:4 207:10 207:11 207:14 | | | | jillian(1) 7:22 | | ken(1) 7:24 | |
| | | | | jim(4) 69:15 82:20 198:9 201:22 | | kenneth(1) 12:11 | |
| | | | | jimmy(1) 124:16 | | kenney(1) 7:26 | |
| interestingly(1) 73:20 | | | | job(5) 75:18 184:14 191:7 191:7 195:1 | | kenny(2) 117:17 117:21 | |
| interests(14) 25:17 170:14 170:24 171:3 171:6 171:8 171:9 171:11 171:16 171:3 171:24 171:25 173:7 201:2 | | | | john(1) 10:7 | | kerriann(1) 7:18 | |
| | | issues"(1) 109:5 | | johnny(1) 70:1 | | kevin(2) 1:18 7:13 | |
| internal(2) 109:21 135:2 | | | | johnston(1) 2:14 | | | |
| internet(1) 53:11 | | | | joiner(1) 157:12 | | | |
| interpretation(4) 212:18 213:20 213:22 213:23 | | | | joint(1) 179:16 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **key**(17) 17:22 19:6 22:7 37:16 39:8 39:25 72:7 75:23 76:20 76:10 76:21 77:11 83:18 140:8 173:23 175:18 200:13 | | **later**(13) 16:12 48:20 50:2 70:9 86:22 137:20 208:22 | | **lenders**(67) 12:8 15:24 16:21 26:6 33:13 33:17 38:22 43:1 44:5 44:7 44:18 49:17 65:25 78:17 78:20 91:1 91:5 91:13 97:17 104:3 115:2 124:7 127:14 133:14 134:15 | | **likelihood**(7) 19:6 19:8 41:5 71:20 76:1 76:8 76:9 | |
| **keys**(1) 140:9 | | **lauding**(1) 131:10 | | 137:7 137:12 138:11 143:10 144:25 145:5 145:7 145:22 147:5 147:17 148:18 149:23 | | **likelihoods**(1) 72:21 | |
| **kick**(1) 155:6 | | **laughing**(1) 126:4 | | 151:8 151:19 153:22 162:19 162:21 162:22 | | **likely**(20) 19:11 19:13 19:24 21:23 24:11 | |
| **kidding**(1) 60:13 | | **laughter**(20) 45:6 47:18 64:25 69:7 70:3 | | 163:11 164:7 174:13 175:8 175:24 177:11 | | 27:2 27:21 31:14 33:2 36:19 36:20 93:16 | |
| **kids**(1) 65:1 | | 70:7 70:10 85:19 86:24 87:7 112:9 122:15 | | 178:7 178:9 178:11 178:23 179:9 179:23 | | 93:16 105:4 147:12 149:20 166:2 166:6 | |
| **kim**(2) 8:26 11:42 | | 132:14 169:19 184:21 206:11 211:23 | | 182:1 194:23 199:17 201:25 202:2 202:7 | | 188:18 219:24 | |
| **kind**(28) 19:17 36:9 39:11 41:13 45:10 | | 213:18 214:24 222:19 | | 202:13 202:17 202:19 210:4 210:22 210:2 | | | |
| 46:11 47:25 50:20 56:3 65:9 66:16 66:18 | | **lauren**(1) 5:29 | | **lenders'**(1) 205:14 | | **likewise**(2) 176:9 213:11 | |
| 67:25 87:15 103:6 103:9 126:4 127:18 | | **laurie**(1) 2:21 | | **lender's**(2) 117:19 118:25 | | **limit**(2) 140:10 217:11 | |
| 132:12 154:5 167:2 176:15 182:2 204:3 | | **law**(28) 4:32 9:35 18:18 35:25 36:4 49:10 | | **length**(1) 29:21 | | **limited**(5) 84:23 83:23 189:22 192:21 | |
| 206:14 206:15 214:11 221:21 | | 62:24 62:25 64:20 65:22 93:5 116:5 119:8 | | **leonard**(1) 1:32 | | **line**(17) 40:18 41:1 52:18 56:12 56:15 | |
| **kinds**(1) 57:1 | | 119:8 139:10 143:25 143:25 144:18 148:1 | | **lerman**(1) 8:21 | | 98:5 98:6 109:9 111:17 111:19 112:1 | |
| **king**(4) 2:43 3:38 4:34 5:37 | | 149:15 150:10 161:12 162:4 207:15 | | **less**(23) 21:1 29:1 29:13 30:5 30:8 30:9 | | 112:5 112:7 112:7 112:11 121:16 188:4 | |
| **kira**(1) 6:31 | | 210:17 214:9 214:14 223:16 | | 30:17 34:13 41:3 46:9 57:15 71:10 71:12 | | **lines**(1) 112:13 | |
| **kizzy**(1) 8:18 | | **laws**(1) 62:5 | | 82:14 90:23 108:12 108:17 166:6 183:19 | | **lineup**(1) 69:18 | |
| **klauder**(1) 5:35 | | **lawyers**(2) 148:22 148:24 | | 183:20 190:24 200:21 205:5 | | **lingers**(1) 132:15 | |
| **klee**(1) 49:6 | | **lawyer's**(1) 87:14 | | | | **lion's**(1) 41:11 | |
| **kline**(1) 7:11 | | **lay**(2) 40:14 129:20 | | **lessens**(1) 81:15 | | **lip**(1) 206:1 | |
| **knapp**(4) 109:1 109:3 109:6 187:17 | | **layer**(1) 148:19 | | **let**(36) 15:13 24:22 37:4 39:12 40:17 | | **liquid**(5) 54:13 129:15 205:1 | |
| **knapp's**(1) 109:12 | | **laying**(1) 187:25 | | 62:18 78:8 79:15 82:15 85:17 91:7 93:23 | | **liquidity**(3) 129:3 205:5 205:5 | |
| **knew**(9) 51:23 86:7 86:11 104:19 153:11 | | **layout**(2) 16:17 79:21 | | 99:21 126:21 135:20 144:19 154:2 158:25 | | **list**(1) 165:10 | |
| 177:22 190:6 190:11 194:24 | | **layton**(1) 2:40 | | 160:10 163:7 165:2 166:9 180:4 185:17 | | **listen**(2) 75:4 87:18 | |
| | | **lazard**(10) 34:21 78:10 78:24 79:10 80:9 | | 185:19 185:22 186:15 186:18 191:2 192:1 | | **lists**(1) 165:8 | |
| **knight**(1) 12:26 | | 81:22 82:1 82:10 218:6 218:7 | | 195:20 205:14 209:13 210:10 213:14 219: | | **literature**(4) 116:4 116:15 116:16 117:2 | |
| **know**(77) 38:1 38:3 38:5 38:7 38:8 38:12 | | **lazard's**(1) 34:20 79:13 | | **let's**(19) 19:5 28:6 39:9 49:21 51:5 53:21 | | **litigant**(2) 28:16 | |
| 45:15 48:1 51:25 52:6 52:7 52:8 52:13 | | **lead**(5) 144:23 144:23 151:1 152:2 167:23 | | 54:5 54:19 61:19 61:20 64:4 64:5 68:25 | | **litigate**(1) 174:10 | |
| 54:12 54:12 56:6 63:18 64:21 65:4 69:8 | | **leading**(1) 175:10 | | 69:1 154:8 154:16 156:13 156:18 178:6 | | **litigated**(6) 16:22 26:9 179:15 179:18 | |
| 69:17 74:20 75:17 77:9 85:2 85:11 85:12 | | **leads**(1) 145:11 | | | | 206:5 212:15 | |
| 86:13 87:20 93:11 97:25 106:21 106:23 | | **league**(3) 47:2 47:11 115:8 | | **letter**(3) 99:17 99:23 117:9 | | | |
| 107:9 107:18 108:2 110:2 129:8 129:11 | | **learn**(1) 161:15 | | **letters**(1) 115:1 | | **litigating**(9) 17:17 25:23 25:25 28:1 28:4 | |
| 130:16 132:11 132:22 132:25 133:13 134: | | **least**(18) 23:8 26:9 32:11 34:18 41:17 | | **letting**(1) 146:17 | | 31:5 35:22 83:11 211:1 | |
| 141:14 144:24 146:6 147:1 147:6 149:3 | | 46:22 46:23 52:3 89:13 91:3 93:16 108:3 | | **let's**(14) 94:14 96:2 98:24 101:23 103:3 | | **litigation**(59) 22:7 24:6 24:20 26:13 27:2 | |
| 149:4 149:5 149:6 149:7 151:10 151:16 | | 152:7 153:15 155:13 172:1 203:1 206:10 | | 104:5 106:10 122:21 124:9 124:9 125:13 | | 33:7 33:7 38:2 40:19 41:9 42:13 42:21 | |
| 152:11 152:12 153:20 155:8 155:21 155:2 | | **leat**(1) 126:6 | | 129:21 129:23 167:13 | | 44:13 59:16 67:16 72:7 72:15 72:21 73:8 | |
| 156:14 165:4 167:16 190:8 190:18 190:2 | | **leave**(6) 90:11 93:21 132:19 172:8 174:12 | | | | 73:14 73:24 74:10 87:25 87:25 88:13 89:2 | |
| 195:10 195:14 195:22 197:3 200:8 205:2 | | 196:21 | | **level**(20) 4:35 20:17 20:24 21:10 21:11 | | 89:11 90:13 90:16 92:4 92:9 92:23 93:10 | |
| 209:13 222:20 | | | | 30:13 32:9 57:14 57:24 59:5 61:7 61:8 | | 93:12 103:7 103:8 135:25 139:1 144:4 | |
| | | **leaving**(3) 33:3 162:9 197:11 | | 61:18 63:8 131:2 144:6 144:6 183:15 | | 145:10 150:1 150:4 153:17 157:8 160:21 | |
| **knowing**(5) 64:8 65:8 70:19 146:2 200:8 | | **lebelon**(1) 66:5 | | 216:24 217:8 | | 163:15 164:10 164:22 169:3 174:4 174:12 | |
| **knowingly**(3) 65:12 65:13 110:20 | | **lebeouf**(1) 2:12 | | | | 177:7 177:10 182:10 190:12 191:21 219:1 | |
| **known**(9) 51:7 70:24 94:24 96:1 96:4 | | **leboeuf**(2) 12:14 12:39 | | **levels**(1) 50:1 | | 220:22 222:7 | |
| 129:10 154:10 186:3 190:11 | | **lee**(3) 12:9 124:17 150:24 | | **leverage**(9) 78:3 132:19 125:15 125:17 | | | |
| | | **lee's**(1) 124:20 | | 126:5 128:1 132:19 197:12 204:18 | | **litigations**(1) 164:22 | |
| **knows**(10) 15:19 56:9 56:9 56:10 57:13 | | **left**(14) 46:24 60:10 96:20 101:5 102:2 | | **leveraged**(7) 49:12 104:6 126:7 132:24 | | **litman**(1) 187:17 | |
| 83:4 134:10 151:17 154:13 154:18 | | 129:24 164:11 164:13 164:16 164:24 | | 135:5 135:13 191:18 | | **little**(39) 24:22 33:3 46:5 46:21 46:22 | |
| | | 164:25 180:5 180:7 219:5 | | **levered**(1) 139:16 | | 47:23 49:21 50:1 57:15 66:17 66:17 66:18 | |
| **korpus**(4) 4:41 223:15 223:16 223:22 | | | | **levin**(1) 9:12 | | 69:20 84:10 85:16 86:17 89:15 89:16 | |
| **krakauer**(4) 7:9 222:4 222:5 222:20 | | **leg**(1) 139:17 | | **levy**(1) 6:35 | | 103:15 115:22 135:21 138:23 143:13 145: | |
| **kramer**(1) 9:12 | | **legal**(19) 18:21 35:24 108:22 109:23 148:2 | | **lewis**(1) 12:22 | | 145:22 147:17 151:8 165:18 169:14 | |
| **kulnis**(3) 151:25 152:1 153:17 | | 161:11 161:13 165:10 179:2 | | **lexi**(1) 9:23 | | 180:21 184:9 184:10 184:17 191:4 191:14 | |
| **kurtz**(5) 91:13 91:16 145:23 151:23 177:5 | | | | **lexington**(1) 2:36 | | 194:24 195:24 204:13 222:22 | |
| 177:14 202:1 | | **legally**(1) 212:8 | | **liang**(2) 12:11 153:24 | | | |
| | | **leigh-anne**(1) 4:29 | | **lie**(3) 54:20 100:2 212:22 | | **litton**(1) 139:8 | |
| | | **lemay**(2) 3:19 184:14 | | **liebentritt**(5) 1:39 147:22 147:24 176:22 | | **live**(1) 155:4 | |
| **labelon**(2) 140:21 141:9 | | **lemmerz**(1) 214:14 | | 177:23 | | **living**(1) 211:3 | |
| **labor**(2) 222:9 222:14 | | **lender**(4) 58:17 83:13 83:14 97:12 | | | | **llc**(5) 4:11 6:5 9:31 13:13 50:8 | |
| **lack**(5) 26:7 99:20 103:12 148:6 162:9 | | **lender's**(1) 16:20 67:25 | | **liebentritt's**(2) 148:7 178:8 | | **llp**(24) 1:23 2:19 3:18 4:40 5:4 5:10 6:10 | |
| **lacked**(1) 165:12 | | | | **life**(1) 63:6 | | 6:18 6:38 8:25 8:41 9:4 9:13 10:6 10:11 | |
| **lacking**(4) 92:11 146:7 155:20 161:8 | | | | **lifetime**(1) 87:14 | | 10:20 11:41 12:14 12:22 12:34 12:39 | |
| **laid**(1) 188:24 | | | | **light**(5) 52:1 91:14 98:2 107:20 221:23 | | 12:43 13:17 14:4 | |
| **landis**(2) 3:11 3:13 | | | | **like**(64) 16:13 18:10 19:7 22:3 24:9 26:7 | | | |
| **landon**(3) 105:12 105:13 105:24 | | | | 28:14 31:2 34:16 35:17 36:3 40:6 40:10 | | **loaded**(3) 59:4 102:9 216:5 | |
| **language**(1) 220:24 | | | | 40:11 48:15 48:23 52:10 52:11 53:11 55:6 | | **loan**(4) 67:17 68:9 140:24 149:19 | |
| **lantry**(1) 7:13 | | | | 55:10 55:13 56:7 57:1 61:13 65:8 66:14 | | **loans**(1) 136:2 | |
| **large**(4) 42:21 44:6 80:8 134:9 | | | | 72:8 75:6 75:10 77:9 78:2 78:16 80:1 | | **locate**(1) 56:4 | |
| **largely**(1) 41:19 | | | | 81:4 84:13 86:17 92:3 92:4 120:5 130:2 | | **logic**(2) 125:6 127:20 | |
| **larger**(2) 41:1 118:17 | | | | 131:8 132:18 133:20 134:11 135:13 136:3 | | **logical**(1) 125:9 | |
| **largest**(6) 100:8 100:23 151:1 155:9 | | | | 147:20 154:7 157:11 174:8 197:3 197:22 | | **logically**(5) 59:7 59:13 59:14 60:21 74:20 | |
| 155:10 175:7 | | | | 198:2 198:10 199:21 199:22 208:14 212:4 | | 90:10 100:15 132:12 173:16 176:20 187:13 | |
| | | | | 212:15 214:10 214:18 218:19 220:10 | | 201:12 | |
| **larn**(1) 12:5 | | | | | | **long-term**(5) 95:21 96:1 96:5 98:1 110:15 | |
| **last**(22) 17:1 47:19 52:18 52:18 82:16 | | | | | | **longer**(2) 71:1 201:2 | |
| 92:14 100:15 102:18 113:8 114:10 147:15 | | | | | | | |
| 153:19 174:7 179:14 180:18 202:17 209:14 | | | | | | | |
| 211:12 216:9 216:14 216:15 | | | | | | | |
| **lastly**(2) 141:22 183:4 | | | | **like."**(1) 208:10 | | | |

| Word | Page:Line |
|---|---|
| **look**(71) 18:10 19:2 19:5 19:22 21:22 26:20 27:2 28:6 34:6 40:23 41:24 42:24 48:15 52:19 54:9 54:13 54:19 55:12 55:15 55:16 76:24 81:20 82:5 89:18 90:9 90:25 91:20 94:14 96:2 98:22 98:24 101:23 105:1 111:14 122:21 124:9 124:25 129:21 132:9 133:11 133:12 134:25 137:2 137:23 137:23 140:18 147:8 148:12 151:9 154:7 156:9 158:8 160:25 164:15 165:6 165:16 165:23 166:16 182:25 186:16 186:18 188:15 188:23 189:1 189:2 193:17 201:15 216:8 217:24 219:7 219:11 | |
| **looked**(15) 20:2 21:18 28:13 51:19 72:25 73:2 75:8 76:2 82:2 125:12 128:14 161:1 161:14 177:21 188:4 | |
| **looking**(18) 39:11 41:7 52:12 53:13 57:4 59:10 72:6 72:24 73:5 81:7 95:6 112:13 138:8 151:2 185:22 188:24 190:7 198:12 | |
| **looks**(12) 28:11 28:14 48:23 55:6 55:10 56:7 72:8 101:12 101:20 130:2 130:22 187:16 | |
| **looming**(2) 56:6 56:6 | |
| **loose**(2) 48:6 209:14 | |
| **los**(2) 2:16 100:12 | |
| **lose**(7) 27:18 27:21 28:2 29:16 60:4 60:7 60:13 | |
| **loses**(1) 65:16 | |
| **losquadro**(1) 12:19 | |
| **loss**(1) 26:25 | |
| **lost**(1) 38:8 | |
| **lot**(40) 16:25 19:16 28:11 28:16 30:12 30:20 34:19 34:24 35:10 35:16 36:18 37:7 37:19 40:21 40:24 44:24 51:4 56:24 63:4 63:5 68:16 69:6 71:4 71:5 72:8 74:14 74:16 75:2 75:21 90:15 94:5 94:6 102:25 118:14 121:19 190:20 202:4 204:25 208:7 208:15 | |
| **lots**(7) 40:21 52:3 56:4 61:22 63:6 111:5 | |
| **loud**(1) 67:1 | |
| **love**(2) 40:4 69:5 | |
| **loves**(1) 56:19 | |
| **low**(14) 23:18 25:12 67:9 71:22 73:10 78:11 80:19 90:14 120:17 121:5 124:13 128:1 135:18 218:4 | |
| **lower**(4) 48:13 74:11 103:22 187:24 | |
| **lowered**(1) 111:23 | |
| **ltd**(1) 12:26 | |
| **ludwig**(1) 7:22 | |
| **lugano**(1) 1:44 | |
| **lump**(1) 35:20 | |
| **lumping**(2) 66:11 66:13 | |
| **lunch**(4) 84:14 124:17 124:19 124:21 | |
| **lynch**(4) 2:19 6:38 100:5 125:14 | |
| **lynn**(1) 2:34 | |
| **ma**  (1) 126:15 | |
| **macquaric**(2) 13:29 13:29 | |
| **maddening**(1) 17:1 | |
| **made**(25) 21:8 27:12 31:23 41:20 51:24 57:18 64:16 66:25 70:18 76:6 85:6 101:11 110:7 123:14 131:19 150:23 154:9 160:2 166:3 168:8 170:8 179:6 215:11 216:18 222:12 | |
| **madlyn**(1) 6:41 | |
| **magic**(1) 24:8 | |
| **maglan**(2) 13:21 13:21 | |
| **magnitude**(3) 102:2 115:25 190:22 | |
| **mail**(1) 109:21 | |
| **mails**(1) 125:22 | |
| **maintain**(1) 53:1 | |
| **major**(5) 24:19 47:2 47:11 115:8 171:10 | |
| **majority**(2) 42:5 156:24 | |
| **make**(42) 18:11 32:10 33:8 35:22 36:4 38:19 41:13 41:14 46:12 47:20 53:24 55:13 55:20 57:17 78:22 82:2 82:6 125:6 127:22 153:11 153:13 160:17 168:12 182:17 184:1 184:11 191:16 195:25 196:1 196:15 196:16 196:19 196:22 197:25 203:20 208:7 208:25 209:6 213:7 213:21 218:16 219:16 | |
| **makes**(10) 51:4 66:12 75:10 81:17 157:10 174:14 183:23 196:17 212:12 214:10 | |
| **makeup**(1) 98:24 | |
| **making**(8) 43:21 52:13 52:24 154:4 195:24 196:2 196:17 222:11 | |
| **manage**(1) 49:8 | |
| **management**(35) 5:43 8:5 8:5 10:24 10:24 11:18 11:28 12:8 12:18 81:7 84:22 97:18 100:24 101:8 103:18 104:19 107:20 108:4 108:5 108:14 108:16 108:17 110:12 110:13 112:20 130:10 131:15 134:5 134:6 146:22 173:17 174:2 187:5 199:13 | |
| **management's**(1) 194:20 | |
| **management's**(11) 103:4 103:8 103:22 104:4 104:8 107:4 111:14 111:20 111:21 112:21 121:14 | |
| **managing**(3) 86:16 104:6 108:8 | |
| **mandava**(1) 34:21 80:11 80:17 | |
| **mandava's**(1) 81:6 | |
| **maneuver**(1) 147:16 | |
| **manges**(2) 5:4 10:20 | |
| **manifest**(2) 44:18 211:4 | |
| **manifestation**(1) 64:11 | |
| **manipulation**(1) 58:19 | |
| **manner**(4) 73:25 209:23 209:25 210:2 | |
| **many**(18) 17:8 46:16 47:8 51:8 51:24 62:2 62:2 88:8 132:23 133:19 134:14 134:14 162:16 164:3 173:22 205:3 210:4 210:25 | |
| **map**(1) 45:14 | |
| **marc**(2) 3:23 6:11 | |
| **march**(16) 96:10 96:17 99:9 99:9 106:12 107:9 107:10 107:14 108:7 108:11 110:14 124:15 125:13 187:9 218:24 | |
| **marino**(1) 3:5 | |
| **mark**(1) 147:12 | |
| **markedly**(1) 99:18 | |
| **market**(64) 1:11 2:24 3:14 29:25 30:1 46:7 48:10 48:14 48:15 48:24 49:15 50:4 50:10 50:22 50:23 51:1 52:2 52:7 53:21 53:24 54:8 54:9 54:10 54:13 55:4 55:6 56:8 56:19 56:21 56:12 56:23 57:1 57:4 57:6 79:11 80:16 82:4 82:6 82:6 98:9 114:25 117:10 119:7 119:15 119:22 120:6 123:21 123:25 125:2 127:7 127:17 128:12 128:14 129:4 129:15 129:16 129:15 130:7 130:8 130:11 130:12 130:13 205:1 | |
| **marketed**(2) 115:18 141:3 | |
| **marketing**(1) 126:11 | |
| **marketplac**(5) 56:21 79:11 124:14 126:1 127:13 | |
| **markets**(2) 171:10 171:15 | |
| **marsal**(2) 13:33 13:33 | |
| **martin**(2) 4:5 156:6 | |
| **massive**(1) 216:23 | |
| **material**(7) 53:8 87:13 87:15 181:17 187:9 198:13 | |
| **materially**(1) 181:24 | |
| **math**(3) 47:23 120:15 169:10 | |
| **mathematical**(1) 215:12 | |
| **matter**(27) 30:20 50:5 60:15 60:15 61:19 61:20 64:20 65:22 73:23 74:14 78:14 78:23 82:7 104:13 122:7 122:13 152:12 198:21 198:23 206:3 211:1 222:5 222:6 222:7 223:8 223:12 224:7 | |
| **mattering**(1) 49:16 | |
| **matters**(6) 15:9 70:23 93:17 168:13 220:9 221:4 | |
| **matthew**(2) 8:6 11:23 | |
| **mauceri**(1) 12:23 | |
| **maximum**(1) 145:9 | |
| **may**(40) 11:42 26:3 43:13 45:8 52:21 57:22 75:5 80:20 84:23 84:25 85:15 86:14 90:1 91:15 97:25 102:3 103:24 107:1 107:12 107:15 112:25 120:24 124:12 150:16 153:13 153:13 176:18 177:25 178:2 186:9 187:18 187:25 195:2 201:11 203:14 211:7 216:11 220:13 221:16 221:17 | |
| **maybe**(13) 33:19 37:12 50:1 63:20 65:3 130:3 152:16 186:8 187:25 188:20 188:21 192:15 206:8 | |
| **mayer**(1) 3:37 | |
| **mccarter**(2) 3:36 9:8 | |
| **mccormack**(1) 3:20 | |
| **mccormick**(1) 10:4 | |
| **mcdaniel**(1) 4:33 | |
| **mcguinness**(1) 12:27 | |
| **mcguire**(1) 13:17 | |
| **mcneill**(1) 2:20 | |
| **meagher**(1) 13:38 | |
| **mean**(15) 21:2 29:18 34:15 51:23 54:1 64:18 65:20 65:25 125:8 143:11 152:19 171:14 192:4 192:5 213:16 | |
| **meaning**(2) 56:2 166:3 | |
| **means**(8) 36:22 54:1 58:13 88:10 106:11 106:11 123:2 190:23 | |
| **meant**(1) 219:17 | |
| **measure**(3) 45:4 89:10 193:19 | |
| **measuring**(1) 210:21 | |
| **mechanisms**(1) 201:9 | |
| **media**(8) 170:10 170:14 170:24 171:3 171:5 171:8 171:10 173:7 | |
| **mediation**(7) 25:8 177:25 195:17 195:18 196:1 222:7 222:7 | |
| **meet**(4) 102:18 111:7 111:23 113:8 | |
| **meeting**(2) 91:16 199:17 | |
| **meisel**(1) 1:31 | |
| **melanie**(1) 7:30 | |
| **member**(3) 147:9 177:18 177:19 | |
| **members**(5) 15:23 108:3 108:5 146:22 147:10 | |
| **memo**(2) 161:11 178:8 | |
| **memorandum**(1) 209:9 | |
| **mention**(2) 195:15 199:16 | |
| **mentioned**(3) 39:6 89:24 209:15 | |
| **mentions**(1) 51:8 | |
| **mercy**(1) 172:8 | |
| **merely**(2) 93:18 143:15 | |
| **merger**(4) 120:19 120:25 121:4 128:20 | |
| **merit**(1) 92:11 | |
| **merits**(18) 15:18 25:3 25:22 41:15 41:21 101:18 114:15 115:20 132:17 136:13 138:25 152:4 189:18 196:4 197:9 197:15 197:17 220:21 | |
| **merrill**(4) 2:19 6:38 100:5 125:14 | |
| **mervyns**(1) 114:10 | |
| **mester**(1) 12:15 | |
| **met**(6) 45:19 49:24 49:25 130:16 184:11 216:11 | |
| **meta**(1) 83:8 | |
| **meter**(1) 76:16 | |
| **method**(1) 73:24 | |
| **methodologies**(2) 116:2 120:13 | |
| **methodology**(1) 165:3 | |
| **metric**(1) 171:22 | |
| **mgmt**(1) 11:28 | |
| **michael**(2) 2:31 11:37 | |
| **michelle**(1) 3:5 | |
| **michigan**(1) 1:40 | |
| **mid**(1) 48:3 | |
| **middle**(2) 157:23 202:6 | |
| **midpoint**(1) 54:15 | |
| **might**(15) 18:10 24:13 52:25 66:1 68:19 81:18 103:20 126:13 154:6 177:2 191:5 191:24 196:9 220:16 221:14 | |
| **mike**(1) 8:34 | |
| **mile**(1) 92:13 | |
| **miles**(1) 7:20 | |
| **military**(1) 148:15 | |
| **miller**(2) 9:29 9:30 | |
| **million**(48) 22:17 26:23 27:4 34:12 34:13 41:9 41:12 47:23 57:23 67:17 67:17 68:8 68:9 73:10 73:11 73:15 73:17 73:19 73:22 73:23 74:9 76:16 89:22 89:23 90:3 90:4 90:17 91:3 119:17 123:1 123:2 123:6 123:15 124:2 133:15 133:24 134:2 134:7 134:8 138:7 151:17 151:25 159:9 159:11 168:8 212:11 215:16 218:9 | |
| **millions**(3) 31:20 36:8 205:20 | |
| **mills**(1) 7:18 | |
| **mind**(5) 23:21 41:23 43:12 164:3 211:25 | |
| **minds**(1) 41:16 | |
| **mine**(3) 40:7 64:22 126:2 | |
| **minimum**(1) 156:6 | |
| **minkove**(2) 12:30 12:31 | |
| **minority**(4) 81:10 81:25 105:16 106:3 | |
| **minus**(1) 204:11 | |
| **minute**(5) 68:21 69:12 104:22 195:3 219:5 | |
| **minutes**(20) 16:13 37:4 45:5 45:20 84:4 84:9 84:11 85:25 94:8 169:18 169:24 173:19 180:7 180:10 200:21 200:22 211:12 211:13 211:16 221:22 | |
| **mischief**(2) 54:20 55:18 | |
| **miss**(3) 102:2 107:15 113:11 | |
| **missing**(2) 200:4 207:5 | |
| **mistake**(1) 86:12 | |
| **mistaken**(1) 195:2 | |
| **mitch**(1) 223:11 | |
| **mitchell**(1) 4:18 | |
| **model**(1) 190:19 | |
| **modeling**(2) 164:5 164:8 | |
| **models**(1) 93:15 | |
| **modest**(3) 102:10 102:12 133:16 | |
| **modifications**(2) 78:5 181:17 | |
| **modified**(2) 117:10 181:21 | |
| **moment**(6) 67:13 91:19 112:16 156:13 158:12 162:16 | |
| **moments**(5) 69:18 85:21 133:22 161:4 216:17 | |
| **monarch**(2) 11:36 11:36 | |
| **monday**(1) 15:1 | |
| **money**(29) 21:5 22:19 22:20 30:12 33:11 33:15 36:22 43:7 48:19 51:2 52:24 62:11 63:8 65:17 78:2 81:13 90:15 124:2 134:16 138:12 138:13 142:18 142:22 143:5 157:4 157:22 202:23 203:2 217:22 | |
| **monstrous**(1) 207:21 | |
| **montenegro**(1) 9:37 | |
| **month**(9) 45:18 55:9 101:25 108:13 108:18 110:18 110:12 110:18 130:18 | |
| **monthly**(2) 187:5 187:6 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **months**(24) 45:15 48:20 55:10 96:11 96:14 101:24 102:3 102:16 102:18 106:12 113:8 135:2 146:4 162:11 166:19 166:20 168:6 168:12 173:8 178:7 187:9 204:17 216:7 216:9 | | **myers**(1) 6:22 **myrick**(1) 7:5 **myself**(3) 47:23 51:13 213:15 **naftalis**(1) 9:12 **naked**(1) 193:14 **name**(3) 64:1 64:2 134:7 **named**(1) 150:4 **natural**(3) 105:1 105:2 110:21 **naturally**(1) 164:13 **nature**(5) 102:9 115:14 128:21 163:9 216: **nealesh**(2) 10:16 10:17 **nearly**(2) 48:5 48:21 **nease**(1) 193:11 **necessarily**(8) 88:12 98:18 118:15 194:19 196:2 199:18 210:5 213:6 | | **nohos**(1) 12:40 **nomination**(1) 172:24 **nomura**(2) 11:32 11:32 **non**(2) 88:24 202:15 **non-attributabl**(3) 171:23 171:25 201:1 **non-consensual**(1) 214:12 **non-debtor**(5) 181:25 182:9 202:12 214:7 214:17 **non-exchang**(1) 203:21 **non-existent**(1) 150:19 **non-lbo**(12) 88:20 89:21 90:7 91:10 136:9 136:15 136:21 138:10 138:13 138:14 139: 145:20 | | **not**(57) 197:3 197:14 197:20 197:21 198:21 198:22 199:9 199:18 200:5 200:8 200:18 200:24 201:2 202:23 203:4 203:8 203:16 203:17 203:20 204:19 204:21 205:14 205:18 206:17 207:25 208:6 208:12 208:21 209:1 209:10 209:19 209:22 210:5 210:7 210:19 210:19 210:21 210:24 212:22 212:24 213:10 214:4 215:1 215:19 215:22 216:3 216:12 216:25 217:2 217:6 217:18 217:19 219:6 219:14 223:9 223:12 223:19 |
| **moody's**(2) 124:15 204:12 **more**(96) 17:13 19:10 19:24 20:23 21:15 22:19 22:20 31:21 32:1 33:19 34:19 35:3 36:19 37:12 37:25 42:9 46:15 46:20 46:21 46:22 46:23 50:24 56:15 57:10 57:15 58:3 61:4 68:5 69:6 74:20 75:3 78:2 79:7 81:2 81:13 81:17 82:22 85:22 88:6 90:22 91:4 93:13 97:7 101:22 102:12 103:20 105:4 106:12 106:22 107:11 109:11 109:23 113:12 115:22 123:10 124:19 124:20 124:22 127:9 129:15 130:3 132:20 133:18 133:23 138:16 141:10 147:6 148:1 151:17 151:24 152:19 154:20 154:20 156:19 167: 167:20 168:15 169:14 170:17 176:10 182:13 183:12 190:18 191:14 192:9 192:1 194:4 204:18 204:18 204:19 206:23 207:10 210:4 216:18 221:24 223:20 | | **necessary**(6) 81:23 113:7 114:4 143:4 161:11 175:22 **necessity**(1) 175:7 **need**(21) 42:13 60:24 83:3 86:18 102:19 122:2 147:5 147:18 149:21 178:1 179:16 189:2 196:4 196:22 203:12 203:13 207:21 212:5 212:5 219:7 223:14 | | **non-payment**(1) 65:15 **non-redeemers**(1) 142:17 **non-settlers**(1) 156:10 **nonconsensual**(1) 184:3 **none**(6) 30:19 112:21 152:10 182:7 201:12 204:14 | | **notch**(1) 58:3 **note**(13) 43:21 61:21 62:3 95:10 96:12 99:14 121:21 129:23 130:6 182:18 204:5 209:10 218:24 |
| **moreover**(3) 51:24 172:22 208:10 **morgan**(28) 2:29 5:4 8:25 10:20 12:22 96:6 96:7 96:8 99:8 108:8 125:24 126:10 126:13 134:24 150:25 150:25 152:1 152:2 170:15 170:16 170:25 171:6 171:9 171:11 172:9 173:6 194:3 194:10 | | **needed**(2) 81:20 200:2 **needle**(1) 168:10 **needs**(5) 56:19 56:20 69:22 184:13 202:25 **negative**(3) 123:1 123:15 165:25 **negligible**(1) 124:16 **negotiate**(2) 149:22 155:14 **negotiated**(1) 141:5 **negotiating**(4) 146:3 147:23 148:20 150:6 **negotiation**(6) 24:24 152:6 153:6 153:25 195:15 218:25 | | **nonetheless**(2) 15:18 97:4 **noon**(1) 82:20 **nor**(2) 74:22 113:8 **norm**(1) 223:1 **normally**(2) 64:20 219:7 **norman**(1) 1:33 **north**(6) 1:40 2:24 2:43 4:34 5:12 5:18 | | **noted**(3) 28:8 29:19 127:5 **noteholder**(47) 42:5 58:19 77:18 84:22 85:4 85:11 94:4 132:8 146:10 156:21 156:23 157:1 160:9 169:11 170:6 170:11 170:20 171:4 171:7 173:9 173:12 173:18 173:20 173:21 173:25 174:2 174:3 174:17 174:21 174:24 175:14 175:16 175:19 176:7 176:10 176:13 176:16 178:19 179:21 180:14 180:23 181:22 181:23 182:6 182:7 220:5 223:7 |
| **morgan's**(1) 170:23 **morning**(20) 15:3 15:14 15:5 44:4 82:19 88:23 89:25 123:22 128:11 130:7 143:3 144:8 156:4 158:1 163:9 173:15 179:6 200:11 200:12 207:5 | | **negotiations**(4) 149:1 151:22 195:12 195:1 **negotiator**(1) 152:2 **neil**(3) 12:19 222:7 222:10 **neither**(1) 140:2 **nellos**(1) 6:13 **network**(1) 81:4 **networks**(1) 81:4 **neumann**(1) 8:22 **neutral**(3) 18:24 28:13 42:23 | | **not**(301) 19:24 21:2 21:12 21:22 22:15 26:3 28:3 28:15 28:22 29:10 30:24 31:8 31:9 34:4 34:8 35:24 35:24 35:25 35:25 36:1 36:6 36:19 37:22 37:24 38:9 41:9 42:15 43:12 43:23 44:11 44:17 44:18 45: 45:11 45:23 46:8 47:12 47:13 47:14 47:16 47:24 47:25 48:4 48:23 49:2 50:9 51:14 56:3 56:5 59:2 59:3 59:5 59:11 59:21 60:5 60:9 61:9 61:10 61:12 61:19 61:25 62:7 63:11 63:12 63:19 64:3 64:4 64:8 64:15 65:9 65:21 66:7 66:8 66:9 67:11 70:21 70:22 71:21 72:12 73:20 74:3 75:7 75:21 76:20 76:21 77:11 79:3 80:6 80:20 80:22 81:9 81:11 82:1 82:6 82:18 83:17 84:15 85:3 85:6 86:25 87:21 89:14 89:19 90:15 91:4 91:25 92:12 93:3 93:7 93:11 93:13 93:14 93:18 94:12 96:15 98:4 98:5 98:6 98:11 101:8 101:25 102:1 102:20 103:10 103:10 104:2 104:10 105:24 106:2 108:1 110:8 110:15 110:16 111:15 112:19 113:1 113:5 113:17 116:18 117:12 118:2 118:3 118:7 118:14 118:17 118:21 119:7 119:23 120:1 121:7 122:2 123:14 122:6 126:5 126:18 126:22 127:6 127:14 127:23 128:5 129:2 129:4 130:11 130:16 131:12 131:12 131:13 132:4 132:17 133:17 134:1 134:15 134:23 135:17 135:23 136:2 136:22 136:24 137:15 137:21 139:6 139:1 140:12 140:15 141:21 142:6 142:18 143:9 143:10 143:16 143:20 144:6 144:14 145:2 145:4 145:6 145:18 147:24 148:5 148:15 148:20 148:24 149:20 150:10 150:13 151: 151:12 151:23 152:20 152:24 153:13 154:15 154:24 155:9 155:10 155:12 155:1 155:20 156:16 156:22 157:4 157:5 157:12 158:7 160:5 160:6 161:4 161:7 161:19 162:5 163:3 164:7 164:19 164:20 165:15 165:24 167:18 167:24 168:9 168:19 170:1 170:5 170:11 170:19 171:5 171:7 171:19 171:22 172:11 172:14 172:16 172:21 173:11 173:11 174:7 174:23 177:2 177:4 177:25 179:8 179:19 179:22 181:22 182:1 182:2 182:6 182:6 182:10 182:18 182:23 183:21 184:6 186:1 187:1 187:8 187:11 188:7 188:8 188:23 189:7 190:4 190:16 190:17 191:6 191:22 192:5 192:18 192:19 193:5 193:7 193:12 195:7 195:21 196:11 196:25 | | **noteholder's**(3) 179:19 186:10 188:22 **noteholders**(105) 17:23 18:19 22:6 22:18 24:3 26:16 26:22 27:4 30:2 30:18 30:25 31:7 31:25 32:7 32:11 32:17 33:3 33:9 33:10 33:21 34:1 34:10 34:14 35:11 35:17 37:5 37:14 39:7 39:13 39:18 39:23 40:10 41:8 41:10 41:14 41:17 41:18 42:1 42:4 42:10 42:11 42:15 43:2 44:10 45:21 52:22 59:24 60:6 61:21 66:20 67:15 67:18 68:10 70:23 72:5 73:2 74:1 74:13 77:20 78:2 78:10 78:19 86:18 136:12 144:14 145:20 147:5 156:17 156:24 170:8 173:2 175:6 175:9 175:11 176:4 180:20 181:6 182:19 185:5 186:7 188:6 189:12 192:7 192:9 192:10 192:12 194:8 195:8 195:19 195:22 195:23 196:13 203:24 204:5 204:24 205:24 206:20 207:21 207:21 209:12 209:17 210:6 212:12 214:3 218:21 |
| **morning's**(1) 91:8 **moskowitz**(1) 2:30 **moss**(1) 12:35 **most**(34) 18:24 44:21 50:5 56:2 56:5 56:17 59:13 64:6 75:13 93:16 94:16 97:4 107:25 146:18 147:12 147:23 151:16 151:21 152:7 155:8 157:21 157:24 159:19 166:9 174:12 175:4 175:17 177:2 206:2 207:11 208:5 210:17 219:18 223:22 | | **never**(40) 46:17 48:17 62:6 62:8 63:22 67:2 74:13 76:16 77:6 79:1 79:1 86:6 87:6 92:23 93:9 101:24 110:4 110:8 117:15 118:6 120:12 125:9 137:12 137:14 137:17 141:25 142:13 151:11 151:17 151:24 152:4 153:11 155:7 161:17 182:21 194:19 209:12 218:18 219:3 222:20 | | | | **noteholders'**(4) 33:4 204:22 207:4 221:22 **notes**(22) 75:8 83:16 89:23 91:4 107:10 119:2 119:2 119:10 143:14 147:21 156:21 157:24 158:5 158:24 160:4 202:4 202:23 202:25 203:10 212:4 218:4 218:12 |
| **mostly**(1) 85:8 **motion**(6) 87:20 137:20 153:16 223:7 223:9 223:12 | | **new**(16) 2:37 3:7 3:25 4:24 4:43 5:7 5:31 36:4 70:16 75:16 96:15 96:18 175:22 191:22 223:9 223:12 **news**(3) 11:7 59:1 85:6 **newsletter**(1) 97:8 **newspaper**(6) 95:6 96:4 96:14 96:24 100:8 100:19 | | | | **noteworthy**(2) 106:14 150:11 **nothing**(17) 39:4 70:16 74:18 75:16 81:14 92:2 109:18 133:23 135:5 136:9 150:2 150:4 154:7 156:16 197:8 198:3 218:12 |
| **mouth**(2) 67:4 89:25 **move**(10) 59:8 95:12 104:23 115:21 125:4 125:16 130:1 156:2 165:2 205:8 | | **newspapers**(2) 46:7 99:4 **next**(56) 34:14 52:17 53:3 53:16 54:5 54:6 54:24 55:8 56:13 58:6 73:7 73:7 73:13 74:5 79:20 80:2 81:12 81:13 83:24 90:9 90:18 94:7 94:19 96:23 97:7 99:15 101:2 106:4 109:9 110:12 111:8 114:21 117:6 119:1 125:2 125:16 126:9 126:16 126:22 127:17 133:11 135:1 137:2 137:23 143:6 147:8 149:24 149:25 158:8 164:15 165:7 165:23 168:1 182:17 204:23 205:7 | | | | **notice**(2) 190:16 223:4 **noticed**(2) 53:3 206:22 **noting**(2) 21:6 176:1 **notion**(4) 86:18 158:22 219:3 223:13 **notional**(1) 129:11 **notwithstanding**(2) 30:1 61:6 |
| **moved**(3) 76:16 168:9 168:14 **movement**(2) 55:21 56:1 **movements**(1) 55:22 **moving**(2) 70:4 121:18 **much**(50) 19:9 21:3 26:17 26:19 27:7 28: 31:4 32:5 34:18 41:1 41:3 44:3 45:1 46: 46:23 50:16 50:24 57:8 58:3 58:25 68:23 71:1 71:18 72:6 78:15 78:22 87:8 91:4 101:12 102:11 127:9 129:15 131:14 133: 152:8 152:12 152:18 154:24 157:11 160:1 167:9 167:18 168:13 169:7 180:5 192:9 192:11 193:25 220:2 223:14 | | | | | | **novod**(1) 12:44 |
| **muchin**(1) 10:6 **multiple**(7) 79:13 88:22 93:21 136:14 139:21 184:10 208:23 | | | | | | |
| **multiplies**(1) 79:24 **murphy**(1) 9:19 **murray**(1) 117:18 **must**(7) 58:3 67:22 87:13 111:3 114:18 121:23 172:20 **muster**(1) 94:16 **muttering**(1) 167:17 | | **nicely**(2) 201:23 207:15 **nicholas**(2) 8:12 11:29 **nick**(1) 63:14 **nine**(2) 180:10 211:12 **nine-minute**(1) 169:12 **no."**(1) 118:22 | | **196:20** | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**now**(138) 17:25 18:11 24:3 30:18 32:13 33:23 39:6 42:15 46:22 48:9 51:24 54:5 54:19 55:13 61:3 63:6 64:2 65:13 69:2 73:13 74:13 76:13 78:13 80:10 82:12 82:14 83:2 84:14 84:16 88:2 89:1 89:18 91:7 91:22 92:14 94:19 95:13 95:21 96:1 97:11 98:15 98:21 99:5 99:20 100:12 101:16 102:7 103:15 104:2 104:17 105:5 106:10 106:21 107:18 108:18 108:24 108:24 109:9 109:12 110:23 111:4 112:16 112:19 113:25 114:10 114:14 115:7 115:2 116:1 116:6 116:14 117:12 119:19 119:19 120:21 121:2 121:9 121:18 122:6 122:21 123:21 123:24 124:18 125:2 126:22 127:5 127:19 128:9 128:12 128:25 130:6 136:18 136:22 137:2 137:16 138:6 139:2 140:20 141:9 141:22 143:3 143:22 144:21 146:8 146:9 147:1 147:3 148:19 148:21 152:5 154:7 158:1 158:12 162:7 164:9 166:12 167:8 167:18 167:16 176:16 182:13 182:15 185:21 186:8 188:20 193:2 197:13 203:8 203:13 204:23 206:5 206:19 207:10 217:5 220:7 222:24 223:3

**nowhere**(2) 23:8 207:7

**npp**(1) 215:2

**nudged**(1) 166:15

**nudging**(1) 166:22

**number**(31) 21:15 35:7 35:13 42:7 43:12 43:17 70:13 73:16 74:4 77:11 77:19 77:19 90:8 90:23 92:21 119:13 119:21 124:19 124:20 138:3 151:20 156:18 176:21 180:1 190:1 192:25 203:4 212:14 222:10 222:25 223:5

**numbers**(14) 23:16 53:6 54:7 57:22 72:11 102:12 103:25 111:23 130:20 152:24 160:19 164:12 164:25 202:21

**numerous**(2) 79:20 97:12

**nutraquest**(1) 156:12

**oaktree**(8) 2:4 12:8 91:19 147:10 147:10 150:21 158:18 159:14

**oath**(2) 100:8 103:16

**object**(6) 117:25 118:5 118:13 193:7 198:1 198:2

**objected**(1) 165:4

**objecting**(1) 156:10

**objection**(10) 85:9 85:10 117:25 118:20 143:12 157:2 195:21 195:24 197:23 222:15

**objections**(6) 156:25 197:19 213:15 219:21 220:1 223:18

**objective**(3) 52:13 111:4 113:21

**objectives**(1) 173:22

**objectors**(1) 197:22

**obligated**(1) 115:3

**obligation**(2) 133:23 217:2

**obligations**(5) 122:10 137:8 141:19 177:8 202:13

**obscure**(1) 206:25

**observed**(1) 70:16

**obstacles**(1) 77:3

**obtain**(2) 143:14 172:21

**obtained**(1) 172:24

**obtains**(1) 172:24

**obvious**(5) 19:17 24:12 24:19 39:11 39:23

**obviously**(7) 16:16 49:7 109:12 125:8 128:16 128:18 172:9

**occur**(1) 201:10

**occurred**(5) 86:6 105:5 194:12 197:6 222:7

**occurring**(2) 72:21 115:18

**october**(2) 81:21 110:16

**odd**(1) 103:9

**odds**(2) 30:5 71:16

**off**(18) 55:24 91:1 102:13 103:4 106:8 106:13 106:22 107:16 129:20 133:15 151:5 186:20 186:21 201:21 206:3 207:2 207:7 222:14

**offer**(5) 48:21 66:25 67:2 68:17 221:21

**offered**(3) 50:21 66:21 157:14

**office**(1) 5:36

**officer**(3) 100:7 176:23 194:15

**officers**(2) 73:17 150:3

**official**(3) 3:10 6:9 15:7

**offset**(1) 96:16

**often**(2) 101:14 152:20

**okay**(32) 16:24 23:7 43:14 54:7 55:25 59:11 59:21 63:2 84:17 88:5 118:3 118:19 122:17 122:20 149:12 152:23 153:2 154:1 154:17 154:25 155:15 156:1 167:8 180:1 213:23 214:24 213:2 220:15 221:12 222:7 222:25

**omitted**(3) 164:3 164:5 164:6

**once**(5) 69:1 103:15 109:22 167:6 197:11

**one**(301) 1:27 2:42 4:23 13:25 16:3 16:18 17:7 17:10 17:12 19:6 19:9 19:11 19:18 19:23 19:24 20:1 20:7 20:13 20:23 21:14 22:2 22:9 22:13 23:17 23:18 24:16 24:18 24:20 25:9 25:23 26:2 27:1 27:10 27:16 28:2 28:7 28:21 29:1 29:7 29:8 29:10 29:17 29:20 29:24 30:3 30:15 30:22 31:1 31:1 31:2 31:4 31:11 31:11 32:4 32:9 32:14 32:21 33:12 33:14 33:15 33:22 33:24 34:4 35:1 35:12 35:19 35:22 36:18 38:10 38:16 38:22 39:14 39:17 39:18 40:16 40:24 41:3 42:14 42:20 45:17 45:22 47:7 49:9 50:2 50:19 51:20 51:22 51:23 52:17 52:19 54:25 55:4 56:2 56:2 57:2 57:17 58:9 58:14 58:23 59:18 60:1 60:2 60:3 60:4 60:7 60:9 60:12 60:19 60:21 61:12 62:8 62:8 63:10 63:14 64:17 65:18 66:17 67:5 67:14 70:18 71:3 71:4 71:8 71:11 72:14 72:24 75:2 77:1 77:16 83:25 87:12 89:4 90:2 90:17 90:20 91:20 91:25 93:19 93:25 94:9 94:10 94:24 95:12 95:16 95:19 96:11 96:13 96:20 97:19 97:21 98:8 99:18 100:4 100:10 100:24 101:2 101:19 103:1 103:17 104:4 104:8 104:19 106:7 106:13 106:16 106:23 108:25 109:20 110:11 110:18 110:24 111:10 111:13 111:25 114:3 114:5 114:23 115:4 115:24 117:7 119:10 120:2 121:8 121:12 122:2 122:22 122:23 123:24 124:5 124:19 125:9 127:19 127:20 128:18 128:23 129:20 129:24 130:2 130:4 130:12 130:22 130:24 132:16 134:24 135:1 135:7 135:9 136:16 136:22 136:25 136:25 138:10 138:19 140:8 140:24 141:1 141:4 141:6 141:7 143:8 143:9 143:15 143:20 143:22 144:6 144:11 144:14 145:17 146:9 147:4 149:22 150:12 150:17 151:12 152:17 157:15 158:20 159:1 162:14 163:22 164:6 164:6 165:1 167:15 170:6 173:10 173:20 175:9 179:5 179:14 181:12 181:13 181:18 182:1 182:15 182:18 183:9 184:7 185:16 185:22 184:4 187:7 188:12 188:14 188:19 188:19 189:20 189:22 190:15 194:9 194:10 196:3 196:5 196:7 196:19 198:4 200:15 200:14 200:23 200:25 202:17 203:4 204:8 204:9 204:11 204:11 206:23 208:11 209:7 209:1 209:13 209:14 209:21 209:22 212:4 212:19 212:20 215:1

**one**(12) 215:12 215:12 216:11 217:14 217:19 219:5 219:10 219:17 219:22 220:13 222:4 222:24

**one-sided**(2) 110:10 199:20

**ones**(11) 24:11 24:12 74:19 92:3 92:4 116:3 134:10 141:11 154:11 181:4 191:17

**ongoing**(1) 174:3

**online**(1) 96:15

**only**(48) 18:21 23:22 24:5 24:20 27:3 34:11 39:25 40:23 42:9 42:23 44:11 57:3 62:8 63:24 67:5 72:14 75:1 76:16 79:6 80:25 81:24 87:8 93:2 93:19 97:20 101:8 103:1 103:10 121:7 122:2 130:8 133:2 133:15 135:6 151:13 155:14 158:21 163:2 164:23 168:8 173:5 175:19 189:5 209:1 210:2 217:17 222:24

**onto**(6) 59:4 119:1 121:19 124:15 133:6 133:7

**open**(1) 86:25

**opening**(8) 25:11 61:21 84:16 86:4 135:14 185:4 200:11 215:5

**operating**(3) 99:3 104:12 187:23

**operations**(1) 174:3

**opinion**(22) 38:24 38:25 58:8 58:11 98:17 103:4 104:10 110:3 111:16 118:3 119:11 161:17 162:2 162:6 162:19 162:24 167:25 168:17 173:4 190:15 190:16 219:11

**opinions**(11) 62:8 87:6 88:6 117:15 162:7 162:8 162:19 162:25 163:2 163:6 200:3

**opportunity**(4) 147:3 176:17 221:9 222:1

**oppose**(3) 145:18 182:6 210:8

**opposed**(10) 21:13 50:11 51:1 79:15 146:15 146:16 146:17 167:10 181:12 195:16

**opposing**(2) 151:7 157:13

**opposite**(4) 82:8 128:7 194:25 199:2

**opposition**(2) 157:4 157:20

**optimal**(3) 83:22 196:25

**option**(6) 66:20 124:12 129:7 133:24 134:3 177:22

**orange**(2) 112:5 112:7

**order**(13) 30:13 47:24 49:8 102:17 127:12 160:20 161:10 180:10 219:11 220:24

**ordering**(1) 208:17

**organize**(1) 180:2

**originally**(2) 146:15 159:8

**other**(78) 16:11 21:9 21:20 23:25 28:1 30:1 30:23 33:16 36:2 36:12 38:10 40:1 40:21 41:10 41:18 43:2 44:18 47:8 48:5 50:25 51:12 56:4 56:22 57:1 57:7 79:20 80:7 88:13 88:22 92:2 92:2 93:16 93:24 110:3 116:21 121:9 126:11 130:6 133:9 134:25 135:6 145:9 152:21 153:7 153:16 155:8 156:24 157:16 158:2 158:12 158:23 160:8 170:24 171:5 173:8 187:1 191:2 193:24 194:9 196:6 196:19 198:4 200:15 200:11 202:4 205:4 208:10 208:13 212:17 212:19 212:22 213:6 217:25 220:22 221:4 221:7 221:24 222:4 223:16

**others**(8) 24:4 31:1 38:17 133:7 140:6 154:4 154:10 190:15

**otherwise**(7) 63:11 65:22 67:2 67:10 81:8 98:8 136:11

**ought**(6) 36:13 36:23 41:15 80:21 207:2 211:5

**our**(77) 15:23 27:1 28:3 28:20 30:11 34:1 34:16 36:17 40:22 56:25 65:19 77:13 78:16 80:9 83:6 83:6 83:8 83:9 84:16 84:23 85:8 85:11 85:14 85:17 85:18 88:11 97:15 104:15 106:6 106:19 119:25 120:10 127:10 140:7 141:10 141:14 143:11 143:24 143:25 144:3 144:16 144:16 144:17 155:24 157:2 157:9 157:11 171:16 171:24 174:25 180:6 190:2 190:4 190:5 190:16 191:7 191:7 194:20 201:7 201:7 202:14 202:17 203:5 204:17 206:18 206:23 206:23 207:4 207:18 210:17 211:12 212:6 213:19 214:5 214:8 215:4 217:24

**ours**(2) 181:8 207:25

**ourselves**(1) 65:11

**out**(88) 17:2 24:8 32:4 32:15 32:18 33:17 36:8 41:22 51:1 51:9 51:11 52:22 56:9 56:10 56:15 56:21 57:22 58:7 60:19 61:9 63:25 65:16 66:16 69:22 72:13 74:23 98:17 100:1 101:1 101:20 104:2 106:22 108:13 111:7 113:22 115:20 120:4 126:1 126:10 129:7 133:20 133:21 134:1 139:14 142:16 148:14 151:2 154:5 155:6 156:19 156:24 157:4 159:20 164:11 164:13 164:18 164:24 164:25 168:18 174:8 174:12 175:5 175:9 177:1 177:3 182:12 185:21 186:18 198:25 201:9 201:17 205:4 206:9 206:12 208:6 209:5 213:11 218:20 219:15 219:21 220:1

**outcome**(18) 18:8 24:11 24:20 40:9 93:19 111:16 144:2 144:5 144:7 145:16 163:14 164:5 164:6 165:9 197:21 198:3 202:6 215:2

**outcomes**(8) 92:23 93:10 93:12 163:13 163:25 164:3 164:9 164:22

**outlandish**(3) 98:10 101:2 105:10

**outline**(3) 45:10 45:11 45:12

**outlined**(2) 30:20 41:20

**outset**(3) 132:1 153:20 197:25

**outside**(2) 146:21 157:10

**outstanding**(3) 129:13 205:1 205:2

**over**(29) 17:1 25:12 39:20 46:10 52:25 53:16 68:5 81:11 84:10 85:21 93:23 114:17 117:14 119:17 131:7 132:19 146:3 150:6 160:13 169:5 175:4 190:14 192:20 194:9 194:23 195:4 214:20 216:13 222:7

**overall**(2) 114:12 114:15

**overarching**(1) 50:3

**overcome**(2) 28:10 123:11

**overlooked**(5) 39:17 39:20 72:4 185:8

**overlooking**(2) 153:8 153:8

**overpay**(1) 133:2

**overruled**(3) 108:6 109:11 201:3

**overstated**(1) 54:2

**overwhelming**(3) 98:3 110:10 156:24

**overwhelmingly**(3) 42:2 42:18 101:17

**owed**(1) 216:23

**owens**(1) 184:2

**own**(33) 25:2 25:6 25:22 36:6 38:15 38:21 40:23 72:10 73:3 79:2 94:18 95:25 102:24 103:23 107:16 108:11 118:25 119:16 124:2 126:25 150:21 152:13 152:14 152:22 161:13 164:24 165:17 167:24 171:2 190:14 193:25 194:20 219:9

**own.”**(1) 104:15

**owned**(1) 158:18

**owners**(5) 142:7 170:9 171:1 171:4 181:2

**ownership**(4) 21:9 46:4 46:11 170:10

**o'clock**(2) 85:5 85:6

**o'melveny**(1) 6:22

**p.a**(1) 1:32

**p.m**(9) 84:18 84:18 132:6 132:6 180:12 180:12 211:18 211:18 224:2

| Word | Page:Line |
|---|---|
| pace(3) 95:11  95:17  96:16 | |
| page(45) 54:14  54:22  54:24  55:8  92:25 | |
| 96:20  102:2  111:8  111:20  114:21  115:23 | |
| 117:6  120:8  120:11  144:1  144:16  163:19 | |
| 164:12  165:8  165:23  175:13  185:23  186:1 | |
| 186:23  187:4  187:14  187:19  188:16  189:1 | |
| 189:5  194:21  199:3  199:9  205:8  205:8 | |
| 205:8  205:9  206:17  206:19  206:20  207:6 | |
| 207:11  215:4  217:24  218:23 | |
| | |
| pages(8) 49:7  57:18  143:24  144:17  199:2 | |
| 199:4  212:6  214:8 | |
| | |
| paid(7) 89:21  144:10  150:21  159:23  182:7 | |
| 196:13  209:3 | |
| | |
| panoply(1) 163:10 | |
| paper(3) 17:14  100:23  167:3 | |
| papers(11) 64:10  83:9  83:10  102:17 | |
| 141:11  141:14  144:3  157:11  166:17  171:7 | |
| 171:24 | |
| par(2) 67:9  127:12 | |
| parade(1) 46:24 | |
| paradigm(1) 133:6 | |
| paragraph(2) 113:3  198:19 | |
| parallel(1) 111:19 | |
| paramount(1) 156:7 | |
| parcel(1) 89:13 | |
| parent(54) 20:15  20:17  20:19  20:24  21:1 | |
| 21:8  21:10  21:13  22:10  22:12  23:24  24:11 | |
| 24:15  24:16  24:17  26:24  27:11  27:16 | |
| 28:23  28:25  29:9  29:18  30:10  32:2  32:9 | |
| 32:14  32:22  32:25  33:12  33:24  34:3  34:8 | |
| 34:11  41:24  57:12  57:23  57:25  61:1  61:5 | |
| 61:16  63:9  90:4  144:5  144:9  144:10 | |
| 144:13  146:10  158:2  158:13  158:14  158:1 | |
| 158:23  217:8  217:16 | |
| | |
| parents(2) 61:14  65:3 | |
| pari(1) 140:15 | |
| park(3) 4:23  6:10  9:5 | |
| parke(1) 3:18 | |
| part(11) 17:1  43:4  43:14  44:6  46:1  51:12 | |
| 53:8  53:14  65:17  85:12  87:23  89:12  94:10 | |
| 114:19  116:7  137:16  139:3  141:7  162:10 | |
| 178:1  181:23  183:4  184:8  185:22  185:23 | |
| 193:1  195:10  197:10  198:22  204:17  207:11 | |
| | |
| partially(1) 65:19 | |
| participants(2) 41:10  133:12 | |
| participate(1) 127:15 | |
| participated(1) 148:16 | |
| participates(1) 139:24 | |
| participating(3) 38:22  140:11 | |
| participation(1) 33:21 | |
| particular(12) 47:12  66:7  76:14  98:9 | |
| 111:6  125:20  139:22  140:12  148:13  157:2 | |
| 204:1  205:13 | |
| | |
| particularly(11) 36:20  49:25  50:5  55:17 | |
| 58:18  72:3  87:11  181:9  184:4  186:5  200:5 | |
| | |
| parties(37) 15:17  18:6  18:9  18:14  18:23 | |
| 19:2  23:1  24:10  28:17  29:5  70:19  70:20 | |
| 75:9  88:2  88:18  115:15  115:16  117:8 | |
| 139:17  140:1  140:11  142:16  143:4  152:20 | |
| 156:10  156:13  157:4  157:7  157:21  185:11 | |
| 186:1  187:1  189:17  220:24  221:5  222:9 | |
| 222:9 | |
| parties'(1) 112:3 | |
| partisan(1) 18:14 | |
| partner(2) 34:22  149:18 | |
| partners(11) 8:33  8:33  8:37  8:37  9:40 | |
| 12:4  12:4  13:13  13:13  13:25  13:25 | |
| | |
| parts(6) 15:20  40:10  40:11  45:15  46:2 | |
| 79:18 | |

| Word | Page:Line |
|---|---|
| party(19) 9:4  11:4  11:11  12:18  12:38 | |
| 18:22  28:13  29:8  42:23  139:21  142:24 | |
| 145:15  152:13  153:7  153:7  155:7  157:5 | |
| 182:2  214:12 | |
| party's(2) 52:25  190:23 | |
| parver(1) 6:43 | |
| pass(2) 30:16  123:8 | |
| pass-through(1) 118:15 | |
| passed(2) 155:14  184:24 | |
| passing(1) 101:21 | |
| past(8) 30:8  63:8  64:3  70:16  79:25  88:9 | |
| 98:22  163:8 | |
| | |
| pat(1) 92:18 | |
| path(1) 83:24 | |
| paths(3) 30:21  208:23  219:22 | |
| pathway(1) 32:18 | |
| paul(2) 6:30  11:40 | |
| pause(6) 104:22  167:15  205:7  206:19 | |
| 213:14  217:17 | |
| | |
| pay(18) 21:21  22:2  31:12  98:9  132:20 | |
| 138:14  142:5  145:1  145:1  145:22  147:6 | |
| 147:17  151:8  167:11  175:22  188:20  206:1 | |
| 209:19 | |
| payable(1) 42:21 | |
| payers(1) 83:17 | |
| paying(1) 169:1 | |
| payment(4) 88:20  88:24  88:24  145:10 | |
| payout(2) 149:22  158:16 | |
| payouts(1) 134:6 | |
| peck(1) 50:20 | |
| peg(1) 11:8 | |
| pending(2) 159:18  213:16 | |
| pennock(1) 6:33 | |
| pennsylvania(1) 1:48 | |
| penny(1) 64:19 | |
| people(30) 48:14  51:1  51:7  52:7  52:13 | |
| 52:23  52:24  53:24  54:16  63:6  64:3  66:25 | |
| 68:15  68:16  69:25  74:16  75:15  77:21 | |
| 86:13  132:18  133:2  133:3  146:19  146:23 | |
| 148:16  148:20  150:8  150:8  196:10  201:17 | |
| | |
| pepper(1) 139:8 | |
| per(6) 16:9  179:17  179:17  179:19  179:19 | |
| 221:4 | |
| per/pro(1) 11:4 | |
| perceived(1) 69:19 | |
| percent(64) 21:15  32:16  34:1  38:1  42:7 | |
| 47:24  47:25  47:25  47:25  57:10  57:14  59:6 | |
| 71:10  76:25  77:1  77:5  77:19  77:20  80:17 | |
| 80:25  90:23  99:2  99:3  99:10  99:11  102:5 | |
| 102:6  102:20  106:8  106:13  106:22  107:8 | |
| 107:15  133:25  138:15  138:16  143:14  157:6 | |
| 157:15  157:16  158:16  158:23  159:2 | |
| 159:12  159:23  160:20  164:17  164:23 | |
| 164:24  170:17  176:5  176:8  183:14  183:14 | |
| 183:15  183:20  184:8  184:5  186:21 | |
| 190:19  190:25  213:4  218:5 | |
| | |
| perfectly(3) 38:4  59:20  111:19 | |
| performance(15) 79:25  79:25  99:12  101:4 | |
| 102:16  107:3  108:15  111:4  113:6  113:7 | |
| 113:16  113:16  113:22  199:6  216:8 | |
| performance"(1) 112:25 | |
| performed(2) 18:20  151:11 | |
| performing(3) 49:6  107:21  122:5 | |
| perhaps(5) 16:13  38:17  83:21  151:15 | |
| 159:19 | |
| | |
| peril(1) 86:11 | |
| period(8) 56:23  96:22  98:23  146:4  184:20 | |
| 184:23  184:24  187:13 | |
| | |
| periphery(1) 74:15 | |
| permitting(1) 23:1 | |
| pernick(4) 1:33  223:1  223:1  223:5 | |

| Word | Page:Line |
|---|---|
| persily(7) 104:5  104:9  124:10  125:18 | |
| 126:16  194:14  194:14 | |
| | |
| person(12) 40:23  43:23  43:25  47:12  57:2 | |
| 58:24  59:9  64:13  75:2  97:21  153:23 | |
| 153:25 | |
| perspective(10) 16:20  17:5  26:10  49:17 | |
| 69:21  146:2  146:2  156:9  194:12  205:6 | |
| | |
| perspectives(1) 15:24 | |
| persuade(2) 36:10  191:22 | |
| persuaded(2) 38:18  188:7 | |
| persuasive(1) 32:17 | |
| peter(4) 8:26  11:19  124:12  135:1 | |
| petition(9) 35:2  35:12  43:11  67:21  67:23 | |
| 78:15  78:18  78:21  209:20 | |
| | |
| phil(1) 4:21 | |
| phones(28) 42:12  43:2  43:7  43:18  43:20 | |
| 83:16  89:23  89:24  90:14  90:14  119:1 | |
| 119:9  119:12  119:21  138:16  138:16  142:5 | |
| 143:18  144:14  146:11  156:15  202:25  203:2 | |
| 203:7  203:15  212:9  217:22  218:1 | |
| | |
| phones/egi(1) 202:22 | |
| phrase(3) 143:2  143:5  158:6 | |
| pick(5) 24:8  24:12  40:4  95:18  155:5 | |
| picked(3) 24:9  24:11  80:17 | |
| pickering(1) 10:36 | |
| picking(1) 68:11 | |
| pickle(2) 50:7  56:9 | |
| picks(1) 80:4 | |
| picture(1) 198:16 | |
| piece(3) 109:16  206:2  217:2 | |
| pieces(1) 27:21 | |
| pile(1) 138:12 | |
| pillar(1) 95:13 | |
| pillars(1) 95:21 | |
| piper(1) 3:4 | |
| place(15) 40:1  50:7  54:5  57:19  57:20  58:5 | |
| 68:5  127:12  131:15  140:22  140:23  168:16 | |
| 205:7  214:5  218:25 | |
| | |
| placed(1) 177:7 | |
| places(5) 15:20  16:2  93:17  199:8  204:6 | |
| plainly(2) 17:25  190:11 | |
| plaintiff(8) 17:17  20:13  20:24  28:11  29:2 | |
| 29:22  31:5  36:7 | |
| | |
| plaintiffs(2) 222:10  223:17 | |

| Word | Page:Line |
|---|---|
| plan(204) 15:11  16:8  17:11  18:4  33:6 | |
| 34:20  42:2  42:6  42:7  42:10  42:18  43:4 | |
| 46:1  46:11  66:20  67:2  67:10  67:17  67:18 | |
| 70:12  73:11  73:24  74:1  74:11  77:20  77:22 | |
| 77:24  78:1  78:5  83:12  83:14  83:15  83:23 | |
| 84:22  85:9  85:11  85:11  85:13  85:14  85:15 | |
| 85:17  85:18  86:1  87:21  88:4  91:14  92:10 | |
| 105:22  106:8  106:13  106:22  108:17  110:15 | |
| 132:8  136:1  138:1  138:22  141:19  145:18 | |
| 145:25  146:24  147:9  147:19  147:23  150:22 | |
| 152:3  154:19  155:6  156:21  156:23  156:23 | |
| 157:2  157:2  158:17  158:18  158:22  159:1 | |
| 159:25  160:6  160:9  160:9  160:23  163:3 | |
| 163:17  170:5  170:6  170:8  170:11  170:12 | |
| 170:13  170:15  170:20  170:22  171:4  171:7 | |
| 172:2  172:3  172:5  172:8  172:17  172:17 | |
| 172:20  172:23  173:7  173:8  173:9  173:11 | |
| 173:12  173:18  173:20  173:21  173:24 | |
| 173:25  174:1  174:2  174:3  174:4  174:8 | |
| 174:16  174:17  174:19  174:21  174:24 | |
| 175:10  175:10  175:12  175:14  175:19  176:7 | |
| 176:10  176:13  176:15  176:16  176:19 | |
| 176:21  176:24  176:24  176:25  176:25  177:6 | |
| 177:6  177:12  177:15  177:16  177:21  178:5 | |
| 178:12  178:19  178:20  179:8  179:16  179:17 | |
| 179:19  179:22  180:20  180:23  181:8 | |
| 181:22  181:23  182:6  182:16  182:23  183:6 | |
| 183:14  184:1  185:15  186:20  186:21  189:19 | |
| 192:12  192:14  193:4  193:7  196:23  198:5 | |
| 198:6  200:19  200:24  201:25  202:1  202:3 | |
| 202:8  202:14  202:18  203:9  203:19  203:19 | |
| 208:17  209:11  209:24  210:17  210:19 | |
| 212:12  213:9  214:5  214:18  217:13  218:10 | |
| 218:22  218:25  220:5  220:5  222:15  223:7 | |
| | |
| plan's(1) 77:23 | |
| planned(4) 108:14  115:16  220:8  221:2 | |
| planning(1) 133:14 | |
| plans(9) 15:14  74:7  170:21  182:19  182:20 | |
| 183:1  202:4  213:21  214:2 | |
| | |
| plausible(2) 164:11  164:25 | |
| play(6) 79:14  79:17  80:15  157:13  164:4 | |
| 202:5 | |
| | |
| playback(8) 100:11  100:21  104:9  104:16 | |
| 117:21  118:23  167:7  167:21 | |
| | |
| played(5) 150:19  167:2  177:20  194:14 | |
| 198:16 | |
| | |
| playing(1) 67:10 | |
| plaza(3) 2:23  3:24  4:35 | |
| plead(2) 137:9  137:10 | |
| pleaded(1) 35:23 | |
| pleading(4) 60:15  137:6  178:8  191:12 | |
| pleadings(1) 180:24 | |
| pleads(1) 137:4 | |
| please(5) 15:2  69:14  84:24  203:24  204:23 | |
| pleased(1) 85:2 | |
| plenty(1) 194:5 | |
| plunge(1) 15:9 | |
| plus(2) 133:25  159:2 | |
| podium(3) 85:21  92:15  184:25 | |
| point(75) 11:22  11:22  22:3  26:17  30:9 | |
| 31:23  32:17  45:13  47:19  48:4  50:3  52:22 | |
| 56:15  57:3  57:13  57:17  58:6  59:16  59:17 | |
| 60:22  62:22  65:17  68:12  74:4  74:16  74:23 | |
| 78:8  80:22  83:15  111:24  115:8  116:20 | |
| 119:7  120:3  124:6  124:7  141:10  141:20 | |
| 144:19  150:13  150:18  151:9  152:7  153:19 | |
| 153:23  153:25  155:17  155:19  161:1  169:5 | |
| 174:7  174:8  180:22  181:7  182:12  182:17 | |
| 182:24  185:21  186:7  186:18  188:10  196:25 | |
| 200:10  200:10  200:20  201:24  205:6 | |
| 205:22  213:7  213:13  213:19  213:21  215:18 | |
| 218:8  219:18 | |
| | |
| point's(1) 51:24 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**pointed**(9) 29:24 39:19 72:13 79:19 127:18 198:25 199:8 200:12 201:8

**pointing**(1) 61:9

**points**(21) 24:25 26:2 41:22 44:24 45:8 45:10 67:3 67:6 70:5 75:13 115:5 115:11 123:25 124:3 125:3 141:13 185:17 201:23 203:25 214:25 215:6

**poison**(1) 174:20

**policy**(2) 146:24 184:4

**polk**(3) 2:29 8:25 194:3

**portion**(2) 107:22 133:17

**posited**(1) 165:7

**position**(13) 18:23 41:25 64:14 68:14 78:13 137:1 143:21 148:1 150:10 184:15 192:6 201:4 201:8

**positions**(3) 81:11 155:2 205:3

**positive**(3) 123:6 166:3 222:5

**possibility**(1) 176:25

**possible**(9) 17:9 60:21 83:2 93:8 145:22 170:4 180:1 182:7 211:11

**post**(18) 18:19 35:2 35:12 37:15 39:7 39:13 39:23 43:11 67:21 67:23 78:15 78:17 78:21 106:20 128:14 174:22 175:16 209:19

**post-confirmation**(1) 174:6

**post-effective**(1) 175:16

**post-hearing**(1) 189:13

**post-petition**(9) 90:8 136:17 143:10 143:16 143:23 202:23 210:4 210:22 218:13

**post-reorganized**(2) 176:8 176:11

**post-trial**(13) 88:11 97:16 105:7 135:25 143:24 144:17 146:13 158:3 163:19 165:7 212:6 214:8 215:5

**posture**(2) 196:25 197:12

**potential**(19) 65:15 72:4 72:7 72:25 74:12 90:11 90:12 93:4 93:7 93:10 93:11 108:23 151:20 157:18 164:9 164:16 172:2 177:22 202:4

**potentially**(2) 161:25 191:9

**potter**(1) 2:19

**power**(1) 172:16

**powerful**(2) 57:16 72:17

**powers**(2) 140:13 142:19

**powlen**(1) 5:11

**ppearances**(5) 1:21 2:1 3:1 4:1 5:1

**practice**(1) 137:20

**pre**(1) 128:18

**pre-judgment**(1) 138:8

**pre-lbo**(7) 99:14 110:22 144:13 175:6 175:9 175:22 177:8

**pre-pack**(1) 202:15

**pre-petition**(2) 90:6 144:11

**pre-step**(3) 100:24 127:20 135:1

**precedent**(1) 111:5

**precise**(2) 34:3 64:15

**precisely**(1) 36:25

**preclude**(1) 163:21

**precludes**(2) 64:13 163:5

**predecessors-in-interes**(1) 186:2

**predestined**(1) 204:21

**predictably**(1) 135:8

**predominant**(1) 80:22

**preexisting**(4) 133:6 134:19 135:4 161:25

**prefer**(3) 42:18 77:22 160:8

**preference**(1) 77:21

**preferences**(1) 93:4

**preferred**(2) 70:6 75:8

**preliminary**(1) 15:8

**preloaded**(1) 161:23

**prematurely**(1) 55:24

**premise**(1) 54:16

**premised**(1) 37:17

**premium**(2) 53:22 134:11

**prepare**(2) 162:12 166:19

**prepared**(8) 23:2 23:4 23:21 31:19 43:22 43:23 43:25 178:11

**present**(6) 15:14 16:19 89:12 93:24 170:6 201:20

**presentation**(10) 50:4 87:10 92:17 131:25 186:10 194:8 195:18 199:23 200:11 207:5

**presentations**(1) 17:20

**presented**(22) 27:5 37:8 78:12 78:24 79:21 80:10 87:15 90:19 92:24 93:9 113:19 114:24 131:9 142:10 157:16 173:10 181:9 198:14 204:2 206:14 209:24 209:25

**presents**(1) 31:5

**preserve**(2) 179:4 179:24

**preserving**(1) 178:25

**president**(2) 108:20 117:18

**press**(1) 16:21

**pressing**(2) 154:14 223:12

**presume**(1) 179:10

**pretend**(1) 185:7

**pretty**(14) 15:17 27:14 32:17 35:6 37:21 44:14 71:16 75:17 77:5 139:25 166:24 184:23 186:18 208:11

**prevail**(1) 193:24

**prevailing**(3) 30:6 157:17 191:13

**prevent**(3) 19:20 137:7 140:16

**previous**(1) 122:24

**previously**(2) 64:14 212:2

**prewired**(1) 48:16

**price**(14) 48:9 48:21 55:22 106:17 120:16 120:19 120:19 121:3 121:4 121:12 121:15 128:17 128:20 134:12

**priced**(1) 141:2

**prices**(8) 53:17 53:20 54:2 54:12 54:15 54:15 130:1 205:5

**pricing**(2) 128:9 128:25

**primarily**(2) 28:18 30:13

**primary**(1) 23:12

**primofi**(1) 6:41

**principal**(1) 144:10

**principally**(1) 159:15

**principle**(1) 141:11

**principsls**(1) 148:20

**print**(1) 100:19

**prior**(8) 47:8 100:9 103:17 104:4 104:8 166:18 178:7 199:6

**priority**(2) 43:18 203:7

**private**(1) 150:22

**pro**(2) 11:4 136:24

**probabilities**(15) 27:20 72:20 72:23 75:22 163:18 164:21 166:11 166:13 166:15 166:20 167:25 168:5 168:13 219:18 219:14

**probability**(11) 71:18 75:25 76:7 76:12 76:12 76:25 77:5 93:15 93:17 163:13 167:1

**probably**(10) 34:25 46:23 51:17 52:12 61:11 61:12 68:13 78:2 118:6 150:18

**problem**(17) 26:14 31:9 31:16 31:24 33:11 43:19 46:12 56:11 59:3 61:7 64:2 71:21 77:1 135:6 150:5 201:10 201:17

**problematic**(2) 32:22 201:6

**problems**(12) 39:21 50:21 51:6 51:10 67:3 76:17 79:22 79:22 80:1 80:21 163:8 170:5

**procedural**(1) 88:17

**procedures**(5) 172:4 172:5 172:8 172:11 172:17

**proceed**(2) 92:12 160:21

**proceeded**(1) 125:23

**proceeding**(3) 55:7 142:22 151:13

**proceedings**(7) 1:17 1:52 194:5 201:15 208:20 218:21 224:7

**proceeds**(1) 73:18

**process**(39) 25:8 45:25 46:17 70:14 70:17 82:24 144:20 144:23 146:14 148:9 150:7 150:15 151:14 154:3 154:12 154:24 155:4 155:6 155:16 156:21 173:8 175:10 178:15 178:23 195:21 195:24 195:25 196:14 196:18 197:4 197:8 197:20 197:20 197:21 198:22 198:1 198:2 198:3 221:24

**produce**(7) 30:14 30:24 40:24 89:5 90:16 138:20 148:18

**produced**(3) 1:53 92:1 150:15

**produces**(3) 22:17 31:20 72:14

**product**(2) 51:22 51:23

**professionals**(3) 25:3 25:6 152:13

**professor**(44) 23:10 29:22 29:25 49:6 94:15 94:20 94:21 95:25 96:3 97:23 103:3 103:11 103:15 104:4 106:24 107:1 107:10 120:12 120:21 121:10 121:16 123:23 123:23 128:17 132:25 160:12 160:15 162:4 162:5 162:10 163:10 163:21 164:10 164:16 164:22 165:22 165:25 168:25 190:3 233:3 219:14

**progress**(2) 222:11 222:12

**project**(1) 108:5

**projected**(2) 82:13 105:15

**projecting**(3) 100:13 101:8 102:10

**projections**(103) 39:21 50:25 58:20 101:1 101:6 101:13 101:18 101:21 101:25 102:6 102:8 102:9 102:15 103:1 103:5 103:8 103:18 103:22 104:4 104:8 104:11 104:14 104:21 105:10 105:18 105:21 106:2 107:5 107:21 108:13 108:21 108:23 109:4 109:8 109:10 110:1 110:6 110:9 110:11 110:20 111:1 111:3 111:7 111:9 111:14 111:15 111:17 111:18 111:20 112:2 112:3 112:11 112:14 112:18 112:21 112:24 113:6 113:8 113:10 113:13 113:14 113:18 113:23 113:25 114:21 121:6 122:8 122:12 122:14 130:10 130:13 130:14 130:19 131:20 185:20 185:25 186:5 186:13 186:2 187:2 187:5 187:8 187:12 187:22 187:24 188:3 188:9 189:11 194:7 194:15 194:18 194:20 194:24 195:5 195:6 195:9 199:11 215:7 215:19 215:24 216:6 216:11

**prolonged**(1) 197:4

**promise**(2) 32:19 209:13

**promoted**(2) 139:17 141:8

**prompt**(2) 99:24 172:7

**promulgate**(1) 175:11

**proof**(3) 60:16 181:20 191:23

**proper**(2) 166:8 212:18

**properly**(2) 77:6 79:18

**properties**(5) 46:6 81:2 81:3 81:5 81:24

**proponent**(6) 158:18 158:18 172:15 180:16 220:8 221:3

**proponent's**(1) 163:17

**proponents**(31) 16:8 84:23 86:1 87:21 92:10 94:4 94:12 112:19 131:10 132:8 133:9 136:1 138:22 141:19 154:19 160:23 163:3 172:3 172:13 172:17 172:18 173:18 194:11 197:15 198:5 201:16 205:9 215:2 215:13 217:13 223:7

**propose**(1) 37:19

**proposed**(21) 44:9 44:11 85:9 89:21 91:3 92:9 143:25 144:17 144:20 145:12 146:5 146:24 154:1 154:18 156:7 157:14 180:25 181:11 218:5 220:3 220:4

**proposing**(1) 89:16

**proposition**(2) 179:19 191:21

**prosecute**(1) 174:5

**prosecution**(1) 178:25

**prospects**(2) 52:4 52:6

**protected**(1) 33:19

**proud**(1) 191:7

**prove**(35) 20:14 21:4 21:8 21:12 28:23 28:24 28:25 29:19 29:23 30:15 31:9 31:10 31:11 31:25 32:1 32:13 32:21 35:11 59:22 60:11 87:22 87:23 88:10 88:16 89:4 89:15 122:2 135:15 135:18 138:23 152:9 160:22 160:23 206:4 206:4

**proved**(4) 46:16 86:7 92:11 97:5

**proverbial**(1) 101:13

**provide**(11) 18:23 43:9 69:21 78:3 83:24 115:3 124:19 125:1 162:2 172:17 203:11

**provided**(6) 19:1 23:16 140:25 156:8 166:18 198:13

**provides**(6) 18:12 71:25 117:4 135:9 172:23 178:12

**providing**(1) 71:13

**province**(1) 165:11

**proving**(2) 21:1 92:13

**provision**(2) 183:10 203:18

**provisions**(2) 183:8 212:9

**proxy**(2) 109:6 109:7

**pryor**(2) 12:34 12:34

**public**(3) 96:12 99:17 128:18

**publication**(1) 86:19

**publicly**(2) 96:18 97:1

**published**(3) 96:6 96:19 101:10

**publishing**(28) 51:6 51:17 52:5 52:20 53:5 53:6 53:7 53:12 79:3 79:5 80:18 80:19 95:13 95:22 96:1 96:7 97:3 97:19 99:2 99:6 99:8 102:4 107:7 108:20 109:2 198:18 198:22 198:24

**pull**(4) 22:3 23:16 39:9 216:1

**punch**(1) 56:12

**purchase**(1) 129:20

**purchased**(1) 205:3

**pure**(19) 79:14 79:17 80:14 85:14 176:15 176:19 176:24 176:24 176:25 177:4 177:6 177:6 177:12 177:16 177:21 178:2 178:4 178:20 179:8

**purity**(20) 85:14 176:15 176:19 176:24 176:24 176:25 177:5 177:6 177:12 177:16 177:21 178:2 178:5 178:20 179:8 201:25 202:1 202:3 202:7 202:18

**purported**(1) 162:20

**purports**(1) 123:23

**purpose**(4) 61:24 122:1 209:17 209:19

**purposes**(9) 16:11 33:16 60:2 119:2 154:8 180:17 183:18 209:25 211:2

**pursuant**(1) 22:25

**pursue**(5) 66:7 140:2 140:3 207:12 216:21

**pursues**(1) 140:4

**pursuing**(6) 20:13 29:3 36:7 87:25 89:2 89:11

**push**(3) 148:7 155:3 157:22

**pushed**(1) 134:10

**pushing**(3) 145:9 145:21 146:10

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

put(28) 55:21 57:19 57:20 57:24 58:5 67:5 72:9 73:3 75:15 82:11 95:3 103:9 112:19 123:19 124:2 125:15 131:18 132:2 146:23 160:3 161:20 167:18 179:13 180:15 192:23 197:15 201:23 205:9

puts(5) 28:11 28:16 84:4 123:5 195:19
putting(2) 79:6 91:2
qualifications(2) 79:7 205:12
qualified(3) 18:16 79:1 200:1
qualify(2) 161:5 162:23
quantification(1) 123:13
quarter(5) 69:9 95:18 104:12 107:3 107:8
quershi(2) 214:21 214:25
queshi(1) 4:20
question(55) 20:10 20:17 20:21 20:22 21:12 21:22 28:24 32:5 42:17 43:15 64:10 65:11 69:24 75:19 75:23 77:11 78:19 82:16 84:1 94:13 94:17 100:18 103:13 106:18 108:11 110:23 113:9 119:1 128:12 128:13 130:7 132:12 132:15 133:4 137:22 138:9 143:3 143:22 145:2 149:10 155:22 165:13 166:24 166:25 167:4 177:14 189:1 196:3 203:2 203:6 203:14 203:15 216:20 217:3 220:19

questioned(1) 104:7
questions(10) 68:18 70:1 82:17 84:2 132:2 165:11 165:12 169:4 209:9 211:7

quick(1) 214:25
quickly(8) 83:2 100:1 125:4 125:16 133:11 174:18 204:23 216:1

quiet(1) 44:14
quite(12) 49:4 49:16 49:23 59:19 70:8 83:4 95:18 97:13 124:4 151:15 199:1 199:20
quote(1) 198:16
quoted(4) 96:20 96:21 186:23 187:19
quotes(1) 50:8
qureshi(22) 85:22 87:18 92:15 93:23 94:2 94:3 100:22 104:17 112:6 112:10 118:24 122:17 122:21 132:9 185:18 187:25 188:1 188:24 198:13 199:1 199:8 199:18

qureshi's(1) 187:16
qureshi's(1) 87:10
rachel(1) 12:23
radar(1) 176:20
raise(3) 46:13 74:14 137:20
raised(6) 30:2 192:2 201:13 201:20 212:5 213:22

ramifications(1) 137:24
ran(5) 74:4 74:7 90:9 148:4 219:20
range(31) 22:8 25:15 43:3 48:3 55:22 67:8 72:3 73:5 73:10 73:11 73:12 74:1 74:8 74:12 74:13 76:22 76:23 77:6 77:10 77:12 77:13 77:14 90:6 90:12 120:14 121:2 145:13 200:12 200:17 204:13 218:1

ranges(2) 90:7 120:17
rapid(1) 99:11
rapidly(1) 178:15
raport(1) 4:29
rare(1) 87:14
rata(1) 136:24
rate(2) 127:11 141:3
rates(3) 56:20 111:22 134:17
rath(2) 3:11 3:12
rather(16) 57:12 62:21 65:21 81:4 142:24 157:8 159:17 160:9 167:1 172:6 172:16 181:1 181:16 183:6 186:21 203:2 215:14

rating(5) 127:19 127:25 204:10 204:10 204:19

ratings(3) 127:23 204:7 204:7
raymond(1) 78:13
re-solicit(1) 42:15

reach(4) 28:1 152:3 162:24 221:6
reached(5) 17:21 25:8 140:10 220:24 221:...
reaching(1) 163:2
reaction(2) 129:16 200:15
read(26) 29:14 37:9 37:24 37:25 38:20 50:19 53:5 64:10 75:3 75:7 86:21 89:13 141:14 163:1 163:3 169:8 180:23 185:23 186:20 190:18 190:21 190:24 206:13 219:23 219:24 221:2

readily(1) 175:1
reading(7) 25:4 38:16 119:25 162:24 190:14 200:17 211:2

reads(1) 58:24
real(14) 17:16 19:10 32:18 42:17 45:23 48:10 49:14 56:11 61:15 74:23 117:2 135:23 178:18 204:25

realistic(2) 29:6 29:8
reality(12) 44:8 63:3 78:14 79:12 79:17 80:16 80:19 82:5 175:7 182:25 193:23 200:7

realize(1) 198:14
really(69) 24:5 36:3 37:11 37:15 45:2 45:9 46:9 47:21 48:9 49:1 50:20 51:7 52:4 54:1 55:19 55:25 56:1 57:8 59:9 59:14 59:21 60:10 60:11 61:8 61:9 62:15 63:7 63:9 63:16 64:18 65:9 65:19 66:11 67:6 67:19 67:20 68:1 68:8 68:10 68:12 70:18 75:10 76:18 80:11 85:10 91:4 101:2 109:17 131:24 139:9 147:22 152:12 152:2 153:11 159:21 179:19 181:7 183:23 189:2 192:4 192:18 193:23 197:1 204:3 205:4 208:1 214:25 216:18 219:17

rear(1) 85:24
reason(14) 19:17 58:18 76:19 76:19 94:9 101:14 108:22 111:20 171:5 181:22 187:1 194:10 195:24 196:3

reasonable(33) 16:3 16:18 17:7 17:12 18:10 22:16 25:8 40:16 42:19 44:16 69:20 72:1 72:18 73:6 74:2 77:15 78:1 82:11 87:24 103:21 113:18 113:21 122:6 131:21 145:12 148:15 158:11 161:18 164:14 185:16 189:20 193:21 200:1

reasonableness(12) 25:13 25:15 39:4 43:5 67:8 77:17 111:1 112:20 181:10 181:20 200:12 206:16

reasonably(10) 21:25 31:17 31:22 71:22 141:20 161:15 167:16 188:8 188:18 219:2

reasons(16) 32:23 36:20 39:2 67:14 70:13 88:14 92:22 145:18 148:6 171:16 173:11 182:14 198:4 198:4 200:25 202:8

rebecca(1) 8:22
rebuttal(9) 16:10 16:14 84:1 86:1 164:18 164:20 179:5 179:24 180:3

recall(13) 37:9 37:23 85:15 96:8 100:16 120:11 135:14 146:15 160:17 161:10 176:18 218:6 220:19

recasting(1) 195:5
receding(1) 46:5
receive(1) 179:1
received(4) 91:5 142:25 152:14 161:10
receiving(2) 143:16 143:18
recent(2) 96:14 109:5
recently(2) 82:6 107:25
recess(8) 69:13 84:17 84:18 132:5 132:6 169:12 180:12 211:18

recipients(2) 83:17 83:18
recite(1) 214:15
recognition(3) 81:1 81:16 187:5

recognize(2) 36:13 39:20
recognized(2) 36:2 145:16
recognizes(1) 99:20
recognizing(2) 99:18 172:1
recommend(1) 199:2
recommending(1) 149:20
reconciling(1) 67:3
reconstruct(1) 33:4
reconvene(1) 84:14
record(21) 22:23 23:8 48:11 52:16 53:18 78:23 84:21 85:4 87:1 91:10 91:16 94:3 96:13 98:5 107:18 125:22 127:24 181:15 206:18 214:22 221:2

recorded(1) 1:52
recording(2) 1:52 224:6
recover(2) 26:23 136:23
recoveries(34) 22:6 26:19 27:4 30:25 32:10 33:3 33:22 33:25 34:5 34:9 38:23 41:11 72:7 72:16 73:8 73:14 73:18 73:21 73:24 74:10 74:12 90:12 93:3 93:5 93:8 110:22 136:15 141:17 143:11 163:11 179:... 203:8 203:11 218:11

recovery(31) 22:18 23:12 27:11 28:7 30:21 30:25 32:8 32:12 33:7 34:18 34:19 34:25 35:18 41:1 61:20 62:6 66:7 92:16 92:24 92:25 93:1 93:1 93:6 138:17 138:20 140:17 143:15 203:12 208:23 218:1 219:2

rectify(1) 135:9
red(4) 101:5 111:19 122:9 168:4
redeemed(2) 142:16 159:16
redirect(1) 219:20
redoes(1) 50:24
reduce(2) 57:24 207:22
reduced(1) 59:18
reduces(1) 59:19
reducing(1) 126:25
reed(1) 10:12
refer(6) 116:12 143:24 149:25 160:12 175:21 214:13

reference(8) 48:11 105:18 126:3 126:5 126:6 126:12 155:19 218:16

referenced(2) 23:11 90:8
references(1) 111:18
referencing(1) 107:7
referred(6) 77:19 119:25 126:14 134:21 217:5 222:6

referring(4) 109:6 177:16 207:13 216:5
refers(1) 189:7
refinance(2) 33:16 215:8
reflect(4) 51:3 55:5 168:4 214:22
reflected(2) 80:16 101:4
reflecting(2) 41:4 76:4
reflection(1) 56:5
reflects(4) 17:16 41:1 80:19 101:5
refresh(2) 16:5 81:21
refused(2) 142:12 142:18
regain(1) 173:1
regard(3) 73:4 166:1 201:18
regarding(7) 85:17 87:16 126:17 174:20 176:14 212:3 219:6

regrettably(1) 180:21
regulatory(2) 172:6 173:2
reject(2) 42:6 42:16 63:25 141:21 192:14 200:23

rejected(2) 141:12 142:1
rejects(1) 56:23
relate(2) 77:13 221:25
related(2) 178:13 198:20
relates(3) 92:15 198:21 200:20

relating(8) 47:3 93:25 136:16 186:24 197:24 207:16 209:9 209:15

relation(1) 89:2
relationship(1) 37:6
relative(3) 89:16 90:15 99:12
relatively(4) 33:3 167:14 187:13 189:22
relaxed(4) 46:8 46:9 46:10 46:15
release(7) 130:11 130:19 158:19 181:24 192:17 192:21 193:2

released(5) 109:3 109:25 159:14 159:17 214:18

releases(4) 182:2 214:8 214:12 214:17
relent(1) 134:16
relevant(11) 21:16 51:17 54:25 55:22 90:25 132:16 156:6 161:23 163:14 193:5 209:21 217:8 220:13

reliability(1) 103:13
reliable(7) 37:22 50:24 54:3 168:15 190:6 190:13 190:17

reliance(3) 103:24 163:6 163:21
relied(3) 110:20 113:24 215:7
relief(3) 26:16 61:8 137:9
relinquish(1) 172:10
relinquished(1) 172:23
relinquishing(2) 146:16 172:24
reluctant(1) 172:9
rely(13) 42:25 72:2 103:18 103:21 110:6 112:21 123:23 131:22 188:8 191:1 193:19 196:5 199:10

relying(4) 121:13 140:12 140:13 187:1
remainder(1) 113:16
remained(1) 153:23
remaining(2) 69:18 174:10
remains(3) 131:16 131:16 201:24
remark(1) 109:13
remarkable(2) 103:6 127:18
remarks(4) 46:6 84:16 179:3 204:4
remedial(1) 172:7
remedies(23) 36:2 88:22 93:8 132:24 135:9 135:9 136:14 137:5 139:11 139:13 163:1 163:11 191:20 191:23 194:21 208:5 208:9 208:13 208:16 208:24 208:24 209:1 216:19

remedy(13) 19:17 19:20 136:6 142:6 191:16 201:16 208:2 208:6 208:8 208:10 208:18 209:6 209:7

remember(18) 41:7 47:22 51:13 55:2 57:22 61:3 64:6 65:2 66:20 102:7 108:12 122:1 150:17 152:1 186:19 187:18 187:25 207:20

remembering(2) 52:9 52:11
remind(2) 104:22 212:4
reminded(1) 184:14
reminds(1) 147:2
remote(2) 71:21 71:21
remotely(2) 190:4 218:19
render(3) 58:15 107:15 200:3
rendered(3) 58:21 125:10 161:17
renders(1) 98:19
reorganization(2) 62:10 62:15 173:22
reorganized(5) 62:13 170:9 170:18 171:1 171:3 174:19 174:23 175:20

repaid(2) 134:14 134:16
repeat(2) 50:9 214:23
repeatedly(2) 125:24 191:14
replacement(2) 165:5 165:6
replicate(1) 73:3
reply(4) 66:5 212:6 214:8 215:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **report**(102) 17:24 18:12 18:25 19:3 21:5 22:24 23:3 25:1 25:4 27:14 37:3 37:5 37:9 37:18 38:1 38:16 38:20 38:25 40:13 44:9 44:17 44:19 48:12 52:16 59:24 60:23 71:1 75:7 75:11 75:14 91:7 91:9 91:12 91:15 91:18 91:21 92:1 92:2 92:5 93:6 93:14 93:17 94:11 95:8 96:12 99:1 112:17 117:7 119:20 120:1 127:9 129:10 131:1 141:15 147:11 147:14 159:20 162:12 164:18 165:4 165:20 165:21 166:18 168:2 168:7 173:3 185:22 185:23 185:24 186:16 186:24 187:4 187:11 187:15 187:20 187:2 188:11 188:16 188:23 189:1 189:17 189:24 189:25 190:14 190:19 193:2 193:17 194:7 196:8 197:16 199:3 205:11 205:21 206:1 210:25 211:3 211:3 216:2 216:3 219:15 219:23 221:9 | **restrict**(1) 140:10 **restructuring**(4) 176:17 176:23 177:13 178:5 **result**(33) 24:2 25:8 25:9 25:19 25:20 34:7 42:16 62:15 70:14 72:14 75:14 88:20 88:23 89:5 116:11 119:16 136:7 136:14 137:1 138:25 143:21 150:15 168:14 182:2 197:2 197:3 197:10 202:25 209:5 210:3 210:18 217:4 219:2 | **risk**(27) 26:12 27:25 46:18 48:17 64:21 65:4 65:12 65:18 65:20 65:23 65:24 65:25 65:26 65:1 90:22 126:17 129:20 133:5 133:7 133:10 133:21 134:20 139:23 153:1 204:14 204:15 204:19 **riskiest**(1) 131:2 **risking**(1) 51:2 **risks**(9) 17:17 25:23 31:5 39:25 40:19 65:6 65:7 87:24 204:9 | **same**(35) 28:1 41:25 42:1 46:7 56:23 62:22 67:4 95:15 97:8 98:23 121:11 126:9 127:9 127:14 134:5 137:9 140:25 143:19 146:1 147:25 158:4 158:6 165:22 173:25 174:2 178:24 182:18 187:3 189:2 192:8 201:24 204:13 206:6 206:7 213:16 **sample**(1) 97:15 **sampling**(1) 124:24 **sarcastic**(1) 109:13 **sat**(1) 148:8 |
| **reported**(1) 62:7 **reporting**(2) 58:20 108:8 **reports**(1) 75:3 **represent**(2) 93:11 148:25 **representation**(1) 148:21 **representativ**(3) 152:1 159:25 193:10 **representatives**(2) 177:12 178:20 **represented**(3) 150:2 150:3 150:8 **representing**(1) 48:18 **represents**(5) 25:9 34:7 111:18 122:9 122:11 | **risky**(2) 42:20 193:21 **roadmap**(1) 85:20 **robert**(2) 2:41 10:4 **roberts**(1) 9:29 9:30 **robustness**(1) 74:6 **rochester**(1) 8:10 **rockefeller**(1) 3:24 **rodney**(1) 2:42 **rogers**(1) 13:6 **roitman**(1) 6:11 **role**(4) 149:4 149:8 150:20 151:7 **rolling**(2) 194:23 195:4 **room**(9) 88:3 145:19 146:3 146:10 147:5 152:7 155:3 155:7 155:7 | **satisfaction**(5) 208:12 208:13 209:2 209:3 209:4 **satisfy**(1) 177:8 **save**(1) 60:24 **saving**(1) 116:10 **savings**(8) 71:14 74:18 74:19 77:9 77:10 116:9 116:20 117:4 **saw**(15) 33:2 76:14 133:21 137:14 142:4 146:12 148:2 150:24 163:12 167:2 167:5 167:23 183:4 186:12 204:10 | |
| **reputational**(1) 133:21 **request**(2) 171:20 222:13 **requests**(1) 172:1 **require**(4) 44:21 117:11 191:19 191:23 **required**(4) 58:11 143:18 144:22 172:14 **requirement**(9) 58:13 115:9 145:14 179:16 179:17 179:20 183:25 184:11 184:12 **requirements**(3) 66:14 212:16 213:12 **requires**(3) 116:17 119:8 203:19 **research**(5) 62:19 96:7 96:12 132:25 176:2 176:5 | **root**(1) 136:19 **rooted**(1) 138:13 **rosen**(2) 13:9 13:10 **rosenblatt**(1) 3:22 **rosenman**(1) 10:6 **ross-stromberg**(1) 7:15 **roth**(1) 9:4 **round**(1) 193:17 **rounding**(1) 68:9 **rousing**(1) 136:3 **routine**(1) 70:6 **royal**(2) 13:5 13:5 **rubric**(1) 35:20 **rudnick**(2) 4:4 12:43 | **root**... | **saying**(13) 37:9 52:24 101:11 142:6 147:5 150:7 167:24 186:20 204:19 205:16 206:5 206:6 213:6 **says**(38) 28:12 28:14 37:11 39:3 47:9 49:5 50:23 54:6 58:25 60:3 60:5 60:7 61:6 61:23 93:1 96:4 103:9 111:3 114:18 121:3 121:4 121:10 123:7 125:7 127:20 135:3 140:2 140:16 147:12 177:6 177:24 189:2 192:15 193:5 193:6 195:13 199:9 214:5 **scale**(4) 45:4 55:16 55:18 129:22 |

| Word | Page:Line |
|---|---|

**screen(8)** 22:4 107:23 113:3 176:20 179:14 180:14 180:15 183:5

**scripps(1)** 81:12
**search(2)** 56:8 216:2
**searching(1)** 46:20
**seat(2)** 154:17 155:3
**seated(2)** 15:2 69:14
**sec(1)** 149:18
**second(31)** 28:22 31:23 37:14 43:14 53:21 54:23 67:13 78:8 83:15 95:13 102:11 113:13 130:21 136:16 143:13 148:13 155:1 159:14 165:2 172:12 175:15 181:23 188:10 198:11 199:21 203:2 203:6 204:11 215:18 219:3 221:1

**secondly(4)** 70:25 198:22 198:25 201:4
**seconds(1)** 214:23
**section(7)** 26:7 93:1 93:14 140:12 187:3 217:5 217:6

**sections(1)** 199:5
**sector(1)** 99:2
**secular(4)** 52:21 97:9 98:4 101:10
**securities(4)** 9:30 9:31 11:32 11:32
**see(61)** 22:16 25:15 25:16 26:20 27:8 28:15 37:15 40:18 55:10 55:12 55:20 68:25 72:8 73:22 78:16 80:1 89:22 90:19 94:19 95:16 98:22 99:9 99:23 101:1 109:22 111:17 115:24 119:14 121:15 122:1 130:21 134:5 136:1 138:12 138:18 143:13 143:17 150:18 152:16 152:17 155:13 165:10 166:5 167:5 167:13 168:22 173:24 176:22 178:6 186:8 186:17 187:3 187:15 188:16 195:20 195:21 197:3 204:9 207:2 216:6 222:16

**seeds(1)** 100:2
**seek(1)** 216:25
**seeking(5)** 88:15 145:22 151:8 178:9
**seem(1)** 182:19
**seemed(2)** 75:6 199:24
**seemingly(1)** 72:4
**seems(3)** 19:23 75:8 213:3
**seen(9)** 18:5 86:14 117:15 118:2 118:6 132:21 154:17 175:13 185:5

**sees(2)** 105:23 120:8
**segment(1)** 104:23
**seife(3)** 3:21 153:24 205:13
**seiler(1)** 8:16
**selber(1)** 2:21
**selected(1)** 80:14
**selection(1)** 79:23
**selects(1)** 80:3
**sell(2)** 123:9 127:12
**selling(1)** 192:13
**send(3)** 62:19 65:1 81:13
**senior(42)** 16:20 16:21 26:6 33:12 33:17 42:5 42:11 43:1 43:2 73:25 77:18 77:19 78:17 78:20 83:13 83:14 89:23 91:4 109:11 117:17 125:23 134:24 140:24 147:7 147:10 149:18 149:19 156:17 156:21 157:24 158:5 158:24 175:7 179:22 201:25 202:1 202:7 202:13 202:19 212:12 218:4 218:12

**sense(8)** 51:4 78:5 125:6 127:22 131:19 165:16 174:14 183:23

**sensitivities(1)** 219:19
**sensitivity(1)** 74:4
**sent(1)** 223:8
**sentence(3)** 59:18 64:7 64:13
**senter(1)** 8:21
**separate(4)** 60:14 60:17 60:18 61:15
**september(1)** 177:24
**serengeti(1)** 11:28 11:28
**series(4)** 36:19 39:8 125:21 126:22
**serious(4)** 45:17 47:13 97:17 121:24

**seriously(4)** 67:7 88:8 94:12 178:2
**served(1)** 96:8
**service(5)** 1:46 1:53 122:10 122:12 206:1
**services(1)** 1:46
**set(18)** 17:5 101:1 101:18 105:9 110:1 111:15 122:8 141:1 141:1 141:10 144:15 161:24 166:17 169:2 174:13 176:21 194:2 215:4
**sets(1)** 187:21
**setting(1)** 146:24
**settle(7)** 36:23 89:16 129:7 145:10 151:18 152:22 175:4

**settled(7)** 35:25 129:12 157:9 159:10 192:16 192:20 192:24
**settlement(165)** 15:20 15:25 16:2 16:18 17:6 17:11 17:15 17:20 17:25 18:3 18:10 19:2 19:4 22:16 22:17 23:23 24:1 24:21 24:23 24:24 25:7 25:12 25:14 28:5 30:14 31:20 32:12 33:5 33:8 34:13 36:9 37:1 37:4 37:6 37:10 37:12 37:17 39:5 40:8 40:14 40:15 40:25 41:8 41:17 41:21 42:1 44:10 44:15 68:16 69:19 70:13 70:19 71:25 72:1 72:15 72:18 73:4 74:7 76:24 77:12 77:15 78:7 83:17 83:18 83:19 83:21 85:9 87:22 89:1 89:12 89:18 90:23 91:3 92:5 92:10 92:19 93:21 144:20 144:23 144:24 145:11 145:12 146:5 146:7 146:16 146:18 148:16 146:25 148:4 148:8 148:18 150:6 150:20 151:14 152:3 152:5 154:1 154:14 155:4 155:14 155:18 155:19 156:7 156:9 156:11 156:14 156:15 157:8 157:14 157:1 157:21 158:10 158:19 158:24 159:4 159:22 159:23 160:1 160:5 160:18 161:18 164:14 165:21 168:17 175:10 180:25 185:11 185:15 185:20 192:13 193:20 193:21 195:16 195:17 196:11 196:25 197:6 197:8 197:13 197:13 200:13 200:16 205:10 205:15 205:19 206:16 209:16 209:23 210:7 210:10 210:15 211:5 214:3 214:6 218:6 219:2 220:3 222:12 222:16

**settlements(1)** 88:5
**settling(2)** 182:22 192:13
**seven(6)** 102:18 113:8 128:4 151:13 162:17 216:9

**several(6)** 48:9 83:2 140:6 146:4 223:18 223:19

**severely(1)** 44:25
**shachar(2)** 12:30 12:31
**shake(1)** 56:3
**shakes(1)** 55:23
**shamah(1)** 6:23
**shannon(1)** 6:33
**shapiro(1)** 150:21
**share(11)** 41:11 65:21 120:16 120:17 120:20 121:1 121:3 121:12 121:15 121:16 128:20
**shareholder(4)** 61:2 141:24 192:21 193:2
**shareholders(17)** 33:17 61:25 62:7 62:17 68:3 73:21 99:14 134:9 134:9 141:23 159:16 159:18 192:18 207:16 207:17 207:20 207:25

**shaya(1)** 8:10
**she(9)** 104:5 151:1 152:2 152:3 177:20 194:15 194:16 194:17 214:16

**sheepish(1)** 191:4 191:6
**sheepishly(1)** 137:3

**sheet(19)** 20:3 20:4 20:11 21:19 28:19 29:6 29:10 29:16 29:23 31:8 31:10 38:9 49:22 50:2 71:10 76:8 88:3 167:10 167:11

**sheffield(1)** 13:14
**sheppard(1)** 7:28
**sheron(2)** 4:41 223:15
**she's(1)** 104:7
**shift(4)** 97:9 98:21 123:21 133:5
**shifts(1)** 133:7
**shooting(2)** 213:17 213:24
**short(9)** 85:25 88:21 154:11 182:7 188:4 189:10 192:13 193:16 219:11

**shortcomings(1)** 163:4
**shorter(1)** 65:4
**shortfall(1)** 123:11
**shortly(2)** 47:5 96:18
**short"(1)** 127:5
**shot(1)** 183:5
**should(66)** 16:3 16:18 17:12 18:3 21:22 42:24 44:15 49:1 52:12 58:17 59:12 60:1 62:3 63:16 78:11 79:18 86:6 87:19 87:23 92:12 105:1 109:24 110:6 114:7 114:11 116:10 116:15 119:2 120:23 121:17 121:2 142:9 144:24 149:8 155:16 156:4 158:10 160:5 160:6 168:16 173:11 173:12 173:20 179:22 180:22 183:24 189:16 192:5 193:1 195:6 197:14 197:18 198:6 206:5 206:6 208:17 209:14 219:10 219:14

**shouldn't(1)** 197:19
**shouldn't(1)** 213:5
**should've(1)** 108:1
**show(22)** 54:22 55:25 65:3 70:1 72:13 91:23 99:7 105:8 121:14 122:23 124:6 126:23 127:24 131:23 139:14 151:9 154:1 166:4 204:16 207:8 214:4 217:25

**showed(12)** 17:25 35:6 92:16 92:20 148:22 151:19 154:15 154:16 160:19 168:3 168:24 198:19

**showing(3)** 72:9 93:19 139:20
**shown(3)** 115:23 171:13 186:19
**shows(29)** 51:15 34:9 48:8 48:13 52:13 56:1 73:8 73:13 92:2 95:8 99:1 101:3 101:15 102:14 102:17 104:3 109:14 110:1 111:8 120:15 122:13 122:25 131:1 146:1 147:23 164:20 165:25 189:6 216:10

**shred(1)** 131:12
**shrinks(1)** 79:9
**shy(1)** 138:5 217:25
**side(33)** 15:14 16:9 16:9 45:2 48:13 67:9 67:10 71:18 80:18 80:24 84:15 88:13 96:20 102:2 120:10 129:24 145:9 145:20 145:21 146:10 146:11 147:24 149:1 150:1 152:21 153:16 154:14 155:8 180:3 180:5 180:14 198:14 205:15

**sides(3)** 55:18 55:20 79:12
**sidley(1)** 1:23 7:4 148:21 148:23 149:16 150:2 150:13 161:11

**sieg(1)** 13:18
**siegel(1)** 4:5
**sieger(1)** 10:7
**sift(1)** 139:5
**sign(2)** 125:12 126:20
**signals(1)** 177:24
**signed(1)** 151:2
**significance(2)** 58:8 58:10
**significant(15)** 27:15 29:2 36:6 38:16 53:14 80:22 99:19 113:12 123:11 126:24 172:2 190:15 215:12 215:16 222:12

**significantly(12)** 19:10 20:23 35:8 41:12 41:16 74:20 75:3 78:11 79:7 81:9 99:6 179:20
**silly(1)** 184:9
**silver(2)** 11:22 11:22
**silverstein(1)** 2:21
**similar(8)** 72:12 80:1 87:3 96:6 118:15 157:12 174:18 214:15
**similarity(3)** 159:3 160:4 214:2
**similarly(8)** 35:23 74:25 80:24 81:5 177:5 177:17 192:6 192:18
**similarly-situated(1)** 160:8
**simple(3)** 120:15 139:25 166:24
**simply(20)** 23:5 38:18 74:23 75:7 83:12 96:15 97:11 113:23 136:19 155:6 179:7 186:11 190:4 193:5 197:9 197:20 204:21 215:22 216:3 216:12
**simultaneously(3)** 115:2 115:4 141:1
**sina(1)** 13:26
**since(5)** 84:4 130:24 194:11 194:11 221:6
**singh(3)** 78:12 78:25 80:23
**singh's(1)** 79:20
**single(24)** 44:13 98:5 101:25 106:18 113:2 114:24 114:25 115:6 115:18 120:12 120:14 131:12 131:17 162:14 164:3 174:12 179:14 179:17 184:6 208:11 208:12 209:2 209:3 209:3

**sit(2)** 51:3 154:5
**sitting(3)** 47:5 182:12 183:1
**situated(2)** 192:6 192:18
**situation(11)** 47:2 71:24 128:23 140:5 140:19 152:17 167:8 175:3 188:12 195:8 195:20

**six(26)** 22:6 22:20 23:12 24:5 24:8 24:9 45:15 45:18 48:19 65:1 72:25 73:4 75:25 92:19 99:4 102:17 163:12 163:13 163:15 163:23 163:23 164:23 173:7 178:7 189:3 204:16
**sixth(1)** 109:12
**size(1)** 159:21
**skadden(1)** 13:38
**skeptical(2)** 101:14 104:3
**skip(3)** 53:16 131:7 156:2
**slam(6)** 29:11 42:13 45:22 47:12 49:19
**slam-dunk(1)** 135:17
**slate(1)** 13:38
**slated(1)** 138:5
**slater(1)** 9:18
**sleight(1)** 210:9
**slide(41)** 22:4 39:9 44:8 48:12 72:8 72:8 72:9 74:5 89:20 94:19 97:7 101:2 119:14 125:16 133:11 137:2 137:23 142:4 147:8 148:6 149:25 149:25 151:10 156:3 158:8 160:25 164:15 165:7 166:17 170:16 170:22 171:18 172:5 173:24 175:13 176:21 179:14 180:15 198:15 216:1 218:2

**slides(9)** 48:10 84:24 94:5 127:2 133:22 168:1 170:2 171:12 198:15

**slightly(1)** 82:22
**slogan(2)** 206:24 207:1
**small(9)** 49:14 66:17 66:17 89:1 132:20 158:14 161:16 182:1 184:8

**smart(6)** 132:18 133:2 133:3 162:3 162:4

**smith(2)** 10:24 10:24
**so-called(1)** 203:21
**sold(3)** 51:21 159:16 205:3
**sole(3)** 146:18 155:17 172:18
**solicit(1)** 150:22
**solve(1)** 201:9

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| solvency(44) 20:7 20:12 39:14 49:21 58:8 58:11 59:3 66:1 71:14 76:9 93:24 94:13 94:14 98:17 110:5 111:2 111:10 114:4 115:9 116:8 116:9 117:11 117:15 117:19 118:25 119:3 119:6 119:10 119:17 119:22 120:5 123:24 124:1 124:4 125:1 126:18 128:7 131:4 131:6 135:23 151:11 161:6 165:11 186:14 | | special(13) 5:27 13:37 15:6 44:21 96:9 125:25 150:17 150:19 150:23 151:3 153:2 177:19 185:3 | | steeper(1) 31:4 steinhart(2) 99:16 99:20 stellar(2) 109:14 187:18 stem(2) 99:21 101:9 step(280) 19:7 19:9 19:9 19:10 19:11 19:13 19:15 19:18 19:23 19:24 20:1 20:6 20:7 20:13 21:22 21:24 22:2 22:9 22:10 22:12 22:13 24:14 24:14 24:16 24:16 25:23 25:23 25:24 26:9 26:11 26:18 26:25 26:25 26:25 27:1 27:10 27:16 28:2 28:7 28:21 29:6 29:7 29:8 29:10 29:17 29:20 29:24 30:3 30:15 30:22 31:1 31:2 31:10 31:15 31:21 32:4 32:9 32:14 32:21 33:12 33:14 33:15 33:20 33:24 34:4 34:11 34:17 34:23 35:1 35:12 35:18 36:17 36:18 36:24 36:25 38:22 38:23 39:14 39:17 39:18 40:2 40:23 41:2 41:3 45:17 47:21 49:9 49:9 51:20 51:22 52:18 54:25 54:25 55:3 56:1 58:9 58:9 58:11 58:14 58:15 58:23 59:1 59:1 59:2 59:10 60:1 60:1 60:2 60:9 60:10 60:14 60:19 60:20 60:21 63:4 63:4 63:10 64:17 65:18 71:3 71:3 71:4 71:6 71:7 71:11 71:19 77:1 87:12 90:17 90:20 90:20 91:24 93:25 93:25 94:8 94:10 94:11 94:13 94:15 94:21 94:23 94:24 95:12 95:16 95:19 96:11 97:19 99:18 100:10 103:5 103:17 104:4 104:8 104:19 106:7 106:12 106:23 108:25 109:20 110:1 110:5 110:18 110:24 111:9 111:12 111:25 114:2 114:3 114:5 115:2 115:3 115:3 115:10 115:24 119:10 119:13 121:8 121:12 121:21 122:22 123:24 128:18 128:21 129:20 129:24 130:2 130:4 130:12 130:23 130:24 135:20 135:22 135:23 135:24 136:2 136:7 136:8 136:9 136:12 136:16 136:20 136:22 136:23 136:24 136:25 137:1 137:8 137:25 138:4 138:6 138:10 138:18 138:19 140:24 140:24 141:1 141:2 141:3 141:4 141:6 141:6 141:7 141:8 141:19 143:7 143:9 143:9 143:15 143:15 143:20 143:21 143:22 144:6 144:7 144:11 144:11 144:14 144:11 149:22 149:23 151:12 151:12 158:20 158:20 164:6 167:9 167:12 167:13 167:15 167:15 186:4 187:6 188:12 188:14 188:19 188:20 193:24 196:4 196:7 196:9 199:12 200:14 203:2 203:3 204:8 204:8 204:9 204:16 204:17 209:21 209:22 215:1 216:2 217:14 217:14 217:18 217:19 217:22 218:13 | | streams(1) 96:15 street(14) 1:11 1:47 2:8 2:24 2:43 3:14 3:31 3:38 4:6 4:13 4:34 5:18 5:30 5:37 strength(4) 87:11 87:16 92:8 152:4 strengths(1) 152:14 stress(1) 188:24 strike(1) 163:12 strikes(1) 25:21 strong(9) 18:9 27:6 33:13 36:24 39:17 78:17 144:12 153:7 193:23 stronger(3) 71:3 91:24 152:8 structure(5) 116:11 118:16 174:1 176:2 176:5 struggled(1) 124:14 studied(1) 72:14 study(2) 79:2 79:9 stuff(4) 53:11 54:14 103:23 185:8 stumble(1) 160:13 stumped(1) 70:2 sub(3) 76:3 76:4 76:5 subject(3) 70:23 117:20 179:12 subjective(2) 75:20 168:11 subjectivity(1) 168:20 submission(1) 77:13 submit(27) 17:12 18:12 28:10 35:5 36:7 37:20 38:24 40:10 44:14 42:17 42:24 71:16 87:1 98:19 113:13 181:21 185:10 189:16 189:19 189:22 190:13 190:21 192:19 193:13 193:19 200:16 220:25 submitted(2) 22:25 75:9 subordinated(4) 42:13 203:16 203:16 203:20 subordination(12) 35:25 36:11 63:21 63:22 93:4 135:10 142:2 164:1 191:19 212:4 212:8 212:9 subs(8) 21:8 21:13 22:10 22:12 24:18 26:24 27:11 29:1 subsequent(1) 173:1 subset(2) 65:10 203:2 subsidiaries(32) 20:15 20:23 20:25 21:3 21:4 21:17 23:25 24:15 27:17 30:15 31:24 32:2 32:4 32:25 34:4 34:8 36:21 57:11 57:25 58:1 58:3 61:3 61:4 61:14 141:24 181:25 184:9 188:19 207:22 210:5 217:10 217:16 subsidiary(18) 21:11 30:13 50:1 57:14 57:24 61:7 61:8 61:18 63:8 66:22 90:3 144:6 158:17 181:25 183:15 184:11 209:20 216:24 substance(1) 114:17 substantial(19) 17:17 30:14 30:25 31:3 31:5 33:15 33:18 36:15 41:16 71:5 88:24 157:15 157:17 171:19 181:17 191:12 204:9 204:14 204:15 substantially(9) 22:20 34:12 43:10 46:7 49:25 138:2 174:18 176:4 192:24 substantiv(1) 49:11 substitute(1) 66:9 succeed(3) 31:22 40:25 191:24 success(6) 41:5 89:5 135:19 157:18 166:2 166:7 successful(6) 41:13 78:4 88:20 90:13 90:16 160:21 successors(1) 141:7 such(9) 35:13 51:18 51:20 62:6 113:11 157:1 172:20 184:14 193:13 suck(1) 136:10 sudden(2) 55:5 199:25 |
| solvency''(1) 127:21 solvent(4) 30:2 57:25 94:22 128:15 solvent''(1) 94:17 some(66) 19:17 19:20 21:9 26:12 26:15 29:21 32:18 35:11 35:18 36:12 36:24 40:5 40:20 44:21 45:9 50:24 52:13 57:19 60:24 62:10 62:11 63:23 75:8 76:25 78:3 81:19 83:11 105:9 108:3 112:11 114:22 123:9 123:10 123:10 123:22 124:9 126:5 137:5 139:24 146:21 148:6 150:8 156:3 156:25 163:7 163:20 165:8 171:18 174:24 177:8 179:4 179:24 186:9 187:25 188:24 189:21 191:10 194:9 194:12 196:6 199:12 199:22 201:11 218:20 219:4 220:20 somebody(1) 97:3 somehow(7) 19:20 57:6 68:14 123:10 193:11 196:14 198:20 someone(8) 135:2 140:4 152:8 152:17 168:12 169:9 205:11 207:12 someone's(1) 219:13 something(31) 35:17 47:24 49:7 52:23 54:17 55:3 55:13 55:14 63:19 64:9 64:14 64:17 65:9 74:24 82:25 99:25 121:1 128:10 133:8 149:13 150:1 151:14 152:23 161:19 180:10 186:17 190:13 193:18 197:21 205:24 211:24 sometime(1) 105:24 sometimes(3) 15:16 17:2 175:21 somewhat(6) 20:9 20:19 30:6 74:15 102:10 137:3 somewhere(3) 48:3 67:9 161:10 soon(4) 52:10 170:4 184:17 184:25 sore(2) 124 63:8 sorry(5) 66:23 167:17 174:17 199:4 212:14 sort(3) 160:7 166:13 197:8 sorts(1) 120:6 sottile(52) 3:29 15:5 15:6 15:12 15:13 16:5 16:7 16:16 22:24 23:9 43:8 43:16 43:21 44:3 44:8 44:23 45:3 45:4 58:6 59:17 63:2 70:5 70:11 71:1 72:9 72:13 72:17 77:18 84:8 84:15 92:16 92:17 135:17 136:8 137:3 143:7 144:7 158:1 158:5 180:1 180:6 185:2 185:2 194:6 198:25 205:13 206:6 220:7 220:13 220:16 221:13 221:18 sottile's(2) 45:1 57:9 sottile's(2) 89:25 219:6 sought(1) 137:12 sound(7) 1:52 35:23 75:10 84:6 84:7 136:3 224:6 soundly(1) 116:3 soup(2) 50:8 128:11 source(3) 23:12 99:7 sources(1) 139:3 south(3) 1:27 11:11 135:7 southern(1) 142:11 spaeder(4) 3:28 6:18 15:6 185:3 spansion(3) 89:7 89:11 speak(10) 16:19 24:22 44:6 85:20 86:1 86:15 109:17 166:8 169:18 220:16 speaks(1) 107:17 | | specific(3) 84:2 100:17 209:1 specifically(6) 52:6 104:25 111:1 112:17 200:14 216:4 specified(1) 166:3 specifies(1) 208:8 speeches(2) 152:12 152:18 speed(1) 161:12 spend(4) 37:19 45:20 94:7 173:19 spent(8) 37:2 45:23 61:21 75:1 79:6 80:12 185:20 205:20 sperling(1) 9:18 spike(1) 130:22 spoke(2) 191:3 216:17 sponsored(1) 79:2 spread(3) 130:2 130:23 130:25 spreads(1) 204:7 spring(1) 52:1 sprung(1) 75:11 square(1) 2:42 squashed(2) 134:25 135:3 squasher(1) 135:8 squashing(1) 135:6 squished(1) 163:24 stage(2) 135:16 208:20 stake(1) 145:15 stakes(1) 137:25 stand(16) 41:22 54:17 58:23 75:4 84:17 120:21 122:17 123:6 131:18 147:11 148:2 149:21 160:5 160:6 160:16 224:1 standard(11) 89:6 89:8 104:24 111:4 111:7 113:20 113:21 116:13 116:17 116:2 117:2 standing(15) 19:15 26:7 61:10 61:10 61:11 61:14 61:17 61:20 130:13 137:14 146:15 216:18 216:21 216:25 220:11 stands(1) 97:22 stanley(10) 5:4 10:20 96:6 96:7 96:8 96:9 108:8 125:24 126:10 126:13 stared(1) 167:3 stargatt(1) 2:4 start(19) 48:17 50:7 63:15 94:25 95:5 95:6 103:3 104:5 105:11 110:24 120:7 124:10 125:13 129:1 160:15 184:8 185:19 186:16 191:21 started(11) 38:20 68:25 69:1 69:3 72:6 75:23 95:16 169:11 169:11 177:1 180:19 starting(3) 111:24 199:4 205:21 starts(2) 95:11 95:17 state(10) 94:25 97:14 97:18 98:15 98:18 100:9 132:17 137:15 191:9 191:12 stated(2) 114:1 119:5 statement(9) 64:16 81:22 86:4 90:5 109:7 109:7 156:11 207:12 207:14 states(3) 1:1 1:19 207:18 statistical(1) 54:20 statistics(2) 52:22 54:21 status(2) 221:10 222:24 statute(2) 140:16 183:7 statutory(5) 26:5 26:11 71:15 71:24 76:10 stay(1) 144:13 stayed(3) 62:11 62:12 74:8 ste(3) 1:34 2:15 5:24 ste.1200(1) 5:12 steady(2) 95:8 127:20 stearn(1) 2:41 steep(2) 88:13 89:4 | | step-two(1) 121:25 stephen(2) 2:20 12:5 stepped(1) 110:4 steps(12) 20:5 20:10 23:24 24:17 29:5 34:8 114:8 114:19 114:25 115:2 115:4 115:18 stick(1) 65:5 still(30) 20:14 20:18 29:19 30:5 32:4 52:2 53:8 57:25 60:9 60:16 62:15 69:25 71:12 71:19 74:8 86:13 92:6 104:11 107:12 108:25 136:9 136:23 138:16 142:5 149:6 149:8 154:14 211:14 213:16 220:2 stipulated(1) 117:8 stipulation(1) 23:1 stock(8) 48:8 52:2 82:4 82:6 82:8 120:25 128:17 159:16 stocks(1) 52:20 stop(4) 72:19 74:3 84:13 211:15 story(6) 125:12 125:21 195:11 197:10 198:14 199:19 straight(1) 15:10 straightforward(1) 140:1 strange(1) 206:8 strategy(1) 205:19 strauss(4) 4:17 8:9 84:21 173:16 stream(1) 127:20 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **sufficient**(2) 177:7 203:11 | | **taken**(6) 31:16 44:17 71:6 89:9 192:5 | | **testimony**(41) 17:14 23:10 24:25 27:13 | | **that**(301) 15:20 15:20 16:1 16:3 16:11 |
| **suggest**(5) 98:7 155:17 192:5 200:18 214:4 | | **takes**(6) 88:8 92:15 129:22 189:16 193:21 | | 29:21 37:8 37:20 39:3 50:11 50:21 66:23 | | 16:18 16:21 16:23 17:2 17:12 17:13 17:15 |
| **suggested**(13) 24:4 71:2 72:17 103:19 | | 218:25 | | 66:24 67:6 67:22 78:12 87:12 87:12 97:11 | | 17:17 17:19 17:24 18:7 18:13 18:15 18:16 |
| 103:20 124:18 124:21 185:4 195:8 198:5 | | | | 98:3 98:6 98:7 102:20 104:20 106:23 | | 18:16 18:20 18:21 18:22 18:22 19:8 19:10 |
| 198:19 199:2 214:2 | | **taking**(5) 37:10 63:9 64:14 73:8 219:24 | | 106:24 107:23 151:10 166:12 168:3 168:4 | | 19:12 19:15 19:17 19:17 19:20 19:23 20:4 |
| | | **talk**(35) 34:16 44:24 45:22 48:3 48:10 | | 176:3 176:14 176:19 177:5 177:11 177:14 | | 20:9 20:10 20:10 20:14 20:16 20:17 20:18 |
| **suggesting**(5) 199:18 208:21 212:21 215:19 | | 49:21 50:1 50:15 53:4 53:7 53:9 53:10 | | 177:17 196:24 210:1 218:23 219:23 | | 20:19 20:25 21:2 21:7 21:23 21:23 21:25 |
| 215:21 | | 53:10 53:12 53:22 53:23 54:5 56:25 58:2 | | | | 22:1 22:1 22:4 22:7 22:14 22:18 23:9 |
| | | 61:19 61:20 62:24 63:20 66:3 69:18 69:2 | | **testing**(1) 113:21 | | 23:21 23:25 24:9 24:10 24:12 25:7 25:12 |
| **suggestion**(2) 186:9 193:10 | | 74:13 76:23 77:7 112:17 116:6 144:20 | | **tests**(11) 20:2 21:20 21:24 31:12 31:16 | | 25:14 25:14 25:15 25:16 26:6 26:12 26:14 |
| **suggests**(3) 103:8 122:23 199:20 | | 156:13 156:18 180:22 | | 31:19 38:11 49:24 74:4 122:2 122:5 | | 26:17 26:20 27:1 27:3 27:15 27:17 27:21 |
| **suing**(1) 153:22 | | | | | | 27:21 27:24 27:24 27:24 27:25 28:2 28:8 |
| **suite**(4) 3:14 3:32 4:13 5:37 | | **talked**(9) 25:5 32:23 74:23 75:24 77:3 | | **than**(101) 17:13 19:9 19:11 19:24 20:24 | | 28:9 28:10 28:25 29:8 29:9 29:12 29:14 |
| **suited**(1) 219:12 | | 105:10 147:15 183:13 194:6 | | 21:8 21:15 23:22 23:23 24:21 29:13 30:6 | | 29:14 29:18 29:19 29:22 29:25 30:1 30:2 |
| **sullivan**(2) 4:10 4:12 | | | | 30:8 30:9 30:14 31:21 32:2 34:10 34:13 | | 30:4 30:5 30:11 30:19 30:20 30:23 31:7 |
| **sum**(3) 79:18 97:16 193:16 | | **talking**(30) 37:2 49:13 52:6 53:12 53:18 | | 34:19 36:19 37:25 41:1 41:3 41:18 42:9 | | 31:14 31:16 31:17 31:17 31:18 31:22 |
| **summarized**(7) 114:21 146:13 163:23 | | 58:10 61:9 61:10 63:11 65:12 66:2 67:24 | | 43:2 43:10 44:18 46:24 48:24 50:24 56:2 | | 31:24 32:1 32:2 32:3 32:8 32:8 32:13 |
| 170:16 170:22 171:12 171:18 | | 68:10 81:7 86:13 89:10 100:24 105:15 | | 57:10 57:12 57:15 61:4 63:21 68:4 68:5 | | 32:18 32:18 32:24 33:8 33:12 33:13 33:17 |
| | | 107:7 146:20 147:10 147:11 152:24 152:7 | | 68:16 71:3 71:10 71:12 81:2 81:4 81:18 | | 33:18 33:20 33:23 33:25 34:7 34:9 34:15 |
| **summarize**(3) 102:2 148:6 207:15 | | 152:25 179:10 184:5 199:23 208:19 | | 82:14 90:22 90:23 91:4 91:24 92:3 92:19 | | 34:16 34:17 34:18 34:23 34:23 35:1 35:5 |
| **summary**(1) 39:11 | | 218:17 | | 93:20 101:13 103:16 103:22 106:12 106:2 | | 35:6 35:9 35:12 35:14 35:16 35:16 35:19 |
| **super**(1) 64:15 | | | | 108:12 112:15 123:18 128:4 128:22 | | 35:21 35:22 35:23 35:24 36:2 36:7 36:9 |
| **superior**(2) 24:1 219:2 | | **talks**(8) 63:7 64:7 127:11 148:5 162:6 | | 129:16 130:3 132:20 133:23 138:16 142:2 | | 36:9 36:14 36:14 36:22 36:22 36:24 37:8 |
| **supplemental**(1) 143:11 | | 187:22 187:24 199:5 | | 151:17 151:25 152:8 152:20 156:19 160:5 | | 37:9 37:17 37:17 37:20 37:22 37:25 38:5 |
| **support**(30) 15:21 19:3 22:22 28:10 37:10 | | | | 167:1 168:15 169:14 170:17 172:6 182:13 | | 38:15 38:21 39:7 39:8 39:19 39:23 40:2 |
| 44:9 70:12 78:13 78:23 80:11 112:20 | | **tangible**(1) 49:11 | | 183:6 183:19 183:20 187:24 190:19 190:22 | | 40:11 40:14 40:15 40:18 40:24 41:1 41:5 |
| 117:1 117:4 123:13 125:1 159:22 160:1 | | **tape**(1) 167:2 | | 192:11 194:4 197:13 200:15 200:21 | | 41:7 41:11 41:20 41:22 42:6 42:10 42:14 |
| 181:13 182:23 191:11 193:4 193:13 204:2 | | **targets**(1) 102:18 | | 201:11 210:4 215:14 216:19 221:7 221:25 | | 42:15 42:19 42:23 43:15 43:17 43:22 |
| 205:15 205:19 205:23 206:15 207:2 | | **tawil**(1) 13:22 | | 223:20 | | 43:25 44:8 44:11 44:16 44:19 44:20 44:20 |
| 210:14 212:17 | | **tax**(11) 71:14 74:17 74:18 74:19 77:9 | | | | 44:23 45:7 45:14 45:19 46:7 46:11 46:15 |
| | | 77:10 116:8 116:10 116:19 117:4 215:14 | | **thank**(34) 15:13 43:4 44:2 44:3 64:24 | | 46:16 46:18 46:19 46:24 46:25 47:1 47:7 |
| **supported**(2) 42:25 157:2 | | | | 68:20 69:10 69:15 82:18 84:25 94:2 169:4 | | 47:10 47:13 47:21 48:2 48:3 48:4 48:5 |
| **supporting**(4) 105:7 124:1 210:11 210:19 | | **taylor**(1) 2:5 | | 173:13 173:14 179:24 179:25 185:1 193:2 | | 48:25 49:7 49:8 49:13 49:15 49:20 49:24 |
| **supports**(12) 37:3 71:1 78:24 85:4 91:10 | | **team**(4) 47:3 47:12 131:15 174:2 | | 198:7 198:8 203:22 211:9 211:17 213:25 | | 50:1 50:4 50:18 50:20 50:23 51:4 51:5 |
| 134:12 136:5 158:22 199:12 200:19 210:8 | | **teams**(1) 47:8 | | 214:21 216:15 220:6 221:13 221:18 221:15 | | 51:7 51:8 51:12 51:14 51:15 51:16 51:18 |
| 211:5 | | **teck**(1) 13:44 | | 222:2 222:20 223:11 223:25 | | 51:19 51:25 51:25 52:3 52:13 52:19 52:23 |
| **supposed**(4) 59:12 118:8 161:22 184:2 | | **telephonic**(10) 5:40 6:2 7:1 8:1 9:1 10:1 | | | | 53:3 53:11 53:13 53:15 53:19 54:1 54:7 |
| **sure**(14) 26:3 26:13 34:10 53:3 70:8 82:10 | | 11:1 12:1 13:2 14:1 | | **thanks**(1) 157:23 | | 54:17 54:17 54:21 55:2 55:3 55:4 55:5 |
| 85:6 149:9 154:15 154:23 170:8 182:24 | | | | | | 55:13 55:14 55:21 56:1 56:4 56:15 57:3 |
| 184:1 184:23 | | **tell**(12) 16:23 31:7 32:7 77:22 78:6 97:20 | | | | 57:5 57:10 57:17 57:17 57:19 57:21 57:21 |
| | | 136:2 169:2 169:10 185:7 200:5 202:11 | | | | 58:6 58:10 58:13 58:13 58:14 58:17 58:17 |
| **surmount**(1) 21:3 | | | | | | 58:19 58:22 59:4 59:9 59:12 59:14 59:16 |
| **surprised**(1) 51:19 | | **telling**(4) 16:25 17:23 147:18 195:10 | | | | 59:17 59:24 59:25 60:1 |
| **surprising**(4) 72:12 151:15 156:16 165:18 | | **tells**(8) 29:14 77:25 78:1 125:11 153:3 | | | | |
| **surprisingly**(2) 104:2 113:1 | | 189:4 189:7 208:4 | | | | |
| **surrender**(1) 184:25 | | | | | | |
| **surrounding**(1) 139:5 | | **ten**(7) 162:11 166:19 166:20 168:6 168:12 | | | | |
| **suspect**(2) 16:22 30:19 | | 171:15 202:13 | | | | |
| **sutton**(1) 21:14 | | | | | | |
| **suttonbrook**(2) 5:42 5:42 | | **ten-minute**(1) 180:11 | | | | |
| **swallow**(2) 19:19 33:2 | | **tendency**(1) 64:3 | | | | |
| **swap**(7) 158:13 158:15 158:17 158:21 | | **term**(2) 71:22 88:3 | | | | |
| 192:13 192:4 212:7 | | **termination**(1) 178:10 | | | | |
| | | **terminology**(1) 204:12 | | | | |
| **swaps**(1) 129:12 | | **terms**(15) 52:4 57:8 73:5 79:23 79:24 | | | | |
| **swing**(1) 119:17 | | 79:24 87:4 88:6 89:13 89:18 174:14 | | | | |
| **switch**(1) 203:23 | | 174:19 178:5 181:2 192:13 | | | | |
| **swore**(1) 120:23 | | | | | | |
| **sworn**(3) 106:23 106:24 121:6 | | **terribly**(1) 68:3 | | | | |
| **symmetrical**(1) 83:21 | | **test**(13) 28:19 28:21 50:2 54:18 58:16 | | | | |
| **syndicate**(1) 133:17 | | 58:17 74:6 114:2 120:5 120:6 121:19 | | | | |
| **syndicating**(1) 126:24 | | 123:4 168:22 | | | | |
| **systems**(1) 148:15 | | **tested**(1) 111:3 | | | | |
| **tabak**(2) 9:29 9:30 | | **testified**(34) 34:22 38:2 38:12 38:15 78:25 | | | | |
| **table**(6) 91:1 133:15 144:25 154:17 155:3 | | 80:17 91:13 91:18 97:23 102:8 107:22 | | | | |
| 157:23 | | 107:24 117:13 120:22 128:17 129:14 | | | | |
| | | 145:16 145:17 146:1 151:16 151:23 151:24 | | | | |
| **tables**(3) 23:2 23:4 23:13 | | 151:25 153:24 155:12 161:4 161:6 161:14 | | | | |
| **take**(60) 15:9 19:5 27:2 27:25 28:6 34:1 | | 164:18 166:23 171:22 173:3 177:21 219:19 | | | | |
| 34:6 40:9 40:10 40:11 40:13 42:23 45:17 | | | | | | |
| 57:23 63:24 66:8 67:6 67:18 68:21 69:11 | | | | | | |
| 69:18 71:11 73:20 73:23 90:11 92:3 93:7 | | **testify**(3) 91:11 100:9 219:8 | | | | |
| 98:11 101:23 107:25 121:12 132:4 133:14 | | **testifying**(6) 91:15 107:2 107:16 161:21 | | | | |
| 148:5 150:7 155:18 156:4 157:9 158:10 | | 161:22 190:22 | | | | |
| 169:1 169:24 172:16 178:1 178:3 180:2 | | | | | | |
| 180:11 185:11 186:15 191:25 200:21 | | | | | | |
| 200:21 201:11 201:12 209:10 211:11 | | | | | | |
| 211:20 218:2 221:24 223:8 223:20 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) | | **that**(301) | | **that**(301) | | **that**(293) | |

**that**(301) 60:3 60:4 60:4 60:7 60:7 60:11 60:11 60:16 60:22 61:6 61:9 61:23 61:24 62:3 62:3 62:4 62:8 62:9 62:14 62:18 63:4 63:6 63:9 63:15 63:16 63:25 64:2 64:4 64:6 64:7 64:9 64:10 64:12 64:17 64:18 64:19 65:5 65:5 65:6 65:12 65:14 65:17 65:18 65:20 65:20 65:25 65:25 66: 66:2 66:2 66:4 66:6 66:11 66:12 66:12 66:20 66:24 66:24 67:1 67:7 67:8 67:18 67:19 67:20 67:20 67:25 68:1 68:11 68:12 69:17 69:25 70:5 70:8 70:12 70:16 70:18 70:18 70:25 71:2 71:2 71:9 71:10 71:12 71:18 71:19 71:20 71:20 72:2 72:9 72:12 72:13 72:14 72:15 72:17 72:22 73:4 73:4 73:8 73:9 73:11 73:11 73:12 73:16 73:16 73:19 74:7 74:17 74:18 74:19 74:21 74:24 74:22 74:25 75:8 75:9 75:10 75:14 75:15 75:24 76:7 76:11 76:14 76:15 76:17 76:17 76:19 76:21 76:23 77:4 77:5 77:7 77:8 77:12 77:13 77:14 77:14 77:16 77:17 77:19 77:21 77:21 77:22 77:22 78:1 78:1 78:5 78:6 78:8 78:10 78:11 78:13 78:17 78:19 78:23 78:24 79:1 79:2 79:4 79:11 79:13 79:15 79:16 79:17 79:19 79:19 79:21 80: 80:8 80:9 80:11 80:17 80:20 80:22 81:1 81:14 81:15 81:15 81:16 81:21 81:22 81:24 82:1 82:1 82:2 82:6 82:10 83:1 83:6 83:7 83:9 83:11 83:18 85:4 85:11 85:11 85:12 85:15 85:24 86:5 86:6 86:7 86:7 86:10 86:11 86:18 87:1 87:11 87:13 87:15 87:21 87:22 87:22 87:23 87:24 88: 88:4 88:6 88:7 88:7 88:8 88:10 88:10 88:12 88:14 88:23 89:3 89:3 89:4 89:5 89:6 89:8 89:15 89:22 90:1 90:6 90:12 90:16 90:19 90:19 90:21 90:22 90:23 90:25 91:2 91:3 91:4 91:5 91:10 91:12 91:13 91:13 91:15 91:16 91:18 91:20 91:22 91:23 91:23 91:25 92:2 92:4 92:5 92:11 92:11 92:13 92:16 92:18 92:20 92:21 92:23 93:11 93:16 93:19 93:20 94:6 94:9 94:16 94:17 94:20 94:22 94:22 94:24 95:1 95:2 95:2 95:8 95:10 95:14 95:16 95:22 95:24 95:25 96:8 96:9 96:13 96:14 96:22 96:22 96:23 97:10 97:13

**that**(301) 97:15 97:17 97:17 97:21 97:25 98:1 98:2 98:7 98:8 98:14 98:18 98:19 99:1 99:3 99:10 99:13 99:13 99:21 99:21 99:24 100:2 100:4 100:13 100:15 101:1 101:2 101:9 101:10 101:18 102:7 102:14 102:17 102:21 102:21 103:1 103:2 103:7 103:8 103:12 103:16 103:20 103:21 103:2 104:2 104:3 104:20 105:1 105:2 105:3 105:4 105:9 105:10 105:15 105:18 105:19 105:20 105:24 105:25 106:1 106:1 106:2 106:7 106:11 106:13 106:15 106:17 106:2 106:23 107:3 107:8 107:14 107:16 107:24 107:2 108:3 108:17 108:21 109:3 109:5 109:10 109:15 109:22 109:25 110:2 110:3 110:3 110:13 110:19 111:1 111:3 111:7 111:7 111:12 111:17 111:17 111:18 111:21 111:21 111:22 112:2 112:3 112:7 112:8 112:14 112:22 112:23 112:23 113:2 113:3 113:4 113:7 113:11 113:13 113:15 113:18 113:19 113:19 113:19 113:23 114:2 114:5 114:6 114:7 114:11 114:11 114:14 114:18 114:1 114:22 114:23 115:3 115:5 115:5 115:9 115:12 115:17 115:19 115:19 115:25 116:11 116:15 116:17 116:19 116:22 117: 117:7 117:9 117:11 117:11 117:13 117:16 117:23 118:2 118:4 118:18 119:5 119:12 119:16 119:24 120:1 120:1 120:9 120:11 120:15 120:17 120:20 120:21 120:25 121: 121:21 121:22 121:23 121:24 121:25 122:4 122:9 122:25 123:2 123:3 123:9 123:9 123:17 123:22 123:25 124:3 124:6 124:9 124:18 124:18 124:21 124:21 124:22 124:25 125:2 125:9 125:10 125:12 125:24 126:10 126:18 126:20 126:23 127:3 127:1 127:14 127:20 127:22 127:25 128:6 128:11 128:19 128:22 129:2 129:3 129:5 129:11 129:14 130:8 130:10 130:12 130:1 130:16 130:16 130:20 131:1 131:1 131:2 131:3 131:7 131:14 131:15 131:15 131:18 131:25 132:9 132:12 132:15 132:16 132:1 132:23 133:1 133:13 133:18 134:3 134:10 134:12 134:16 134:24 135:8 135:16 135:1 135:19 135:22 136:2 136:3 136:4 136:5 136:6 136:8 136:11 136:13 136:13 136:14 136:19 136:20 136:20 136:21 136:23 136:25 137:4 137:5 137:14 137:17 137:21 137:22 138:5 138:7 138:9 138:12 138:13 138:13 138:17 138:20 138:23 138:23 138:25 139:2 139:4 139:6 139:8 139:14 139:15 139:20 139:21 139:25 140:1 140:5 140:9 140:9 140:10 140:16 140:16 140:18

**that**(301) 140:22 141:4 141:6 141:10 141:12 141:13 141:15 141:15 141:17 141:20 141:20 141:22 142:1 142:3 142:6 142:9 142:9 142:13 142:14 142:15 142:15 142:16 142:18 142:23 142:24 143:1 143:6 143:6 143:8 143:10 143:13 144:3 144:4 144:8 144:9 144:12 144:22 144:23 144:23 144:24 144:25 145:2 145:10 145:11 145:14 145:14 145:17 145:18 145:19 145:23 146:1 146:3 146:4 146:6 146:7 146:9 146:12 146:13 146:14 146:20 147:3 147:6 147:13 147:25 148:6 148:9 148:10 148:16 148:19 148:19 148:20 149:4 149:1 149:21 149:24 149:25 150:3 150:5 150:8 150:11 150:15 150:16 150:17 150:19 151: 151:10 151:14 151:16 151:23 152:1 152:10 152:19 153:9 153:11 153:20 153:2 153:24 154:3 154:6 154:8 154:15 154:16 154:16 155:4 155:6 155:7 155:17 155:21 155:25 156:8 156:11 156:20 156:22 157:1 157:3 157:7 157:10 157:10 157:16 157:19 157:20 157:21 158:1 158:9 158:10 158:11 158:12 158:21 158:22 158:23 159: 159:3 159:17 159:23 160:7 160:18 160:19 160:19 160:22 160:23 161:4 161:9 161:10 161:11 161:12 161:13 161:16 161:20 162: 162:5 162:10 162:15 162:16 162:21 162:24 163:1 163:5 163:12 163:14 163:20 163:22 163:25 164:4 164:11 164:11 164:15 164:16 164:18 164:21 164:22 164:24 165:2 165:4 165:4 165:8 165:10 165:20 165:24 166:2 166:4 166:5 166:6 166:7 166:10 166:12 166:17 166:21 168:5 168:8 168:11 168:14 168:17 168:18 168:21 169:16 170:2 170:5 170:6 170:8 170:10 171:9 171:11 171:14 171:18 171:21 172:3 172:4 172:13 172:18 172:20 172:24 172:2 173:4 173:5 173:6 173:9 174:9 174:12 174:14 174:14 174:16 174:21 175:1 175:2 175:5 175:7 175:12 175:19 175:21 176:1 176:3 176:16 176:16 177:10 177:12 177:15 177:20 177:25 178:8 178:10 178:12 178:16 178:18 178:20 178:24 179:6 179:7 179:9 179:11 179:15 179:18 179:19 179:21 179:23 180:2 180:8 180:10 180:22 180:25 181:3 181:4 181:4 181:6 181:8 181:10 181:11 181:12 181:21 181:24 181:25 182:8 182:12 182:12 182:18 182:1 182:20 182:24 182:25 183:10 183:11 183:13 183:17 183:19 183:21 183:22 183:24 183:24 184:1 184:8 184:1 185:5 185:10 185:18 186:3 186:10 186:11 186:12

**that**(293) 186:17 186:25 187:5 187:11 187:12 187:15 187:19 187:23 188:5 188:6 188:7 188:8 188:15 188:17 188:18 189:4 189:5 189:6 189:7 189:7 189:8 189:13 189:17 189:19 189:23 190:2 190:3 190:5 190:10 190:13 190:16 190:18 190:19 190:21 191:3 191:4 191:5 191:8 191:10 191:13 191:17 191:19 191:21 191:22 191:23 191:24 192:2 192:5 192:5 192:9 192:10 192:11 192:19 192:22 193:1 193:3 193:6 193:6 193:7 193:10 193:19 193:20 193:21 193:22 193:23 193:25 194:6 194:9 194:10 194:14 194:18 194:22 194:23 194:23 194:24 195:2 195:12 195:13 195:13 195:15 195:19 195:23 195:25 196:6 196:8 196:12 196:14 196:15 196:19 196:19 196:24 196:24 197:5 197:5 197:6 197:7 197:7 197:11 197:14 197:15 197:18 197:20 197:21 197:21 198:5 198:13 198:14 198:17 198:17 198:19 198:23 198:25 199:2 199:10 199:12 199:13 199:16 199:16 199:18 199:19 199:21 200:1 200:2 200:4 200:8 200:13 200:15 200:16 200:16 200:18 200:19 200:24 201:3 201:5 201:5 201:6 201:9 201:9 201:10 201:10 201:12 201:14 201:15 201:18 201:19 201:19 201:23 201:25 202:1 202:8 202:14 202:21 203:3 203:4 203:4 203:17 203:19 203:19 204:2 204:6 204:7 204:15 204:24 204:24 204:24 205:9 205:17 205:18 205:20 205:22 206:4 206:14 206:22 206:24 206:25 207:9 207:12 207:20 207:24 208:1 208:7 208:8 208:13 208:21 208:22 208:24 209:11 209:11 209:11 209:13 209:14 209:21 210:3 210:7 210:8 210:10 211:4 211:5 212:4 212:12 212:14 212:15 212:17 212:17 212:20 212:21 212:22 212:25 213:3 213:5 213:7 213:21 213:21 213:23 214:2 214:5 214:9 214:11 214:16 214:19 214:23 215:2 215:2 215:5 215:8 215:9 215:13 215:15 215:19 215:21 215:22 215:23 215:23 215:24 215:5 216:7 216:8 216:9 216:10 216:10 216:11 216:12 216:13 216:19 216:21 216:24 217:1 217:18 217:20 217:21 217:22 217:23 217:25 218:3 218:6 218:8 218:8 218:12 218:19 218:24 219:1 219:2 219:2 219:3 219:12 219:12 219:16 219:17 219:20 219:23 219:25 220:4 220:16 221:6 221:11 221:16 221:25 222:2 222:5 222:14 222:23 222:24 223:5 223:8 223:13 223:22 223:25 224:5

**that's**(101) 15:11 15:25 16:24 17:11 17:20 21:14 22:19 24:7 25:7 26:1 26:3 26:14 27:1 27:17 29:10 30:14 30:16 33:5 36:6 36:14 36:25 40:18 44:25 48:23 50:15 50:23 53:22 54:9 55:18 59:4 60:21 60:25 63:6 63:15 63:19 63:20 64:1 64:4 64:15 65:22 67:11 68:9 71:13 71:14 71:23 73:22 74:19 75:9 75:21 76:12 80:6 80:20 83:25 133:6 134:17 138:3 138:12 139:17 140:5 143:13 144:15 145:10 145:14 145:17 149:17 151:19 153:3 154:18 155:15 156:16 157:7 159:2 160:11 163:17 163:19 164:12 180:24 181:23 182:18 184:3 186:8 186:23 187:16 188:11 188:21 188:22 189:6 190:4 190:17 191:7 191:25 192:19 193:5 193:8 194:21 195:3 196:17 197:22 200:18 200:24 202:17

**that."**(1) 205:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that's**(59) | 78:9  85:13  89:8  90:2  90:15 90:22  91:25  92:19  97:5  97:21  98:3  98:16 99:13  100:23  103:6  103:11  108:1  108:3 109:16  114:17  114:24  116:19  119:8  119:2 120:10  120:18  124:23  124:24  125:15 126:5  126:14  128:16  128:20  129:4  129:13 129:13  130:4  130:6  130:16  131:11  131:14 167:15  204:11  205:21  205:22  207:14 207:23  208:3  208:4  208:11  210:7  213:8 214:4  217:3  217:6  218:17  220:10  223:2 223:9 | | **the**(301) | 29:9  29:11  29:12  29:15  29:15 29:16  29:18  29:19  29:21  29:22  29:24  30: 30:1  30:2  30:4  30:5  30:6  30:7  30:8  30:10 30:12  30:13  30:14  30:15  30:16  30:18 30:25  31:2  31:3  31:6  31:7  31:8  31:11 31:13  31:15  31:16  31:17  31:19  31:22 31:23  31:23  31:24  31:25  32:1  32:2  32:3 32:7  32:9  32:11  32:12  32:14  32:16  32:22 32:22  32:24  32:25  32:25  33:2  33:3  33:4 33:5  33:5  33:9  33:10  33:12  33:13  33:14 33:17  33:20  33:24  33:25  34:1  34:2  34:3 34:4  34:7  34:7  34:8  34:9  34:10  34:11 34:13  34:14  34:14  34:16  34:19  34:20 34:21  34:22  35:1  35:4  35:5  35:5  35:8 35:9  35:10  35:11  35:12  35:15  35:17  35:2 35:21  36:1  36:9  36:10  36:11  36:14  36:18 36:21  36:21  36:22  36:23  36:24  36:25  37: 37:3  37:3  37:4  37:5  37:6  37:8  37:9  37:10 37:10  37:11  37:12  37:14  37:14  37:15 37:15  37:16  37:17  37:17  37:20  37:21 37:22  37:23  37:23  37:23  37:24  37:25  38: 38:3  38:5  38:6  38:10  38:13  38:14  38:16 38:20  38:25  39:4  39:4  39:4  39:5  39:7 39:8  39:9  39:12  39:13  39:14  39:17  39:18 39:20  39:21  39:23  39:24  39:24  39:25 39:25  40:2  40:5  40:8  40:8  40:8  40:10 40:10  40:11  40:11  40:12  40:13  40:14 40:15  40:15  40:17  40:19  40:19  40:20 40:21  40:22  40:23  40:23  40:24  40:25  41: 41:4  41:5  41:7  41:8  41:8  41:8  41:11 41:11  41:12  41:12  41:13  41:13  41:14 41:15  41:16  41:17  41:19  41:19  41:20 41:20  41:21  41:21  41:22  41:23  41:24 41:24  41:25  42:1  42:1  42:2  42:3  42:4 42:5  42:6  42:7  42:8  42:9  42:9  42:10 42:11  42:11  42:12  42:15  42:17  42:18 42:18  42:19  42:22  42:23  42:23  42:25 43:6  43:6  43:7  43:8  43:9  43:9  43:11 43:12  43:13  43:13  43:13  43:14  43:17 43:18  43:19  43:19  43:23  43:24  43:25  44: 44:5  44:7  44:8  44:8  44:9  44:9  44:10 44:11  44:12  44:14  44:14  44:15  44:16 44:18  44:19  44:19  45:2  45:3  45:4  45:8 45:10  45:11  45:12  45:15  45:17  45:18 45:21  45:24 | **the**(301) | 45:25  45:25  46:1  46:3  46:4  46:5 46:7  46:8  46:8  46:12  46:12  46:17  46:17 46:20  46:20  46:24  46:24  46:25  47:4  47:5 47:7  47:8  47:9  47:10  47:14  47:15  47:16 47:19  47:20  47:22  47:22  47:22  47:24  48: 48:3  48:8  48:9  48:11  48:11  48:12  48:12 48:12  48:13  48:13  48:14  48:15  48:18 48:18  48:20  48:22  48:24  48:25  49:4  49:9 49:9  49:12  49:12  49:14  49:17  49:17  49:20 49:22  49:23  49:24  49:25  50:2  50:2  50:3 50:4  50:4  50:5  50:6  50:7  50:7  50:8  50:8 50:9  50:11  50:13  50:18  50:20  50:21  51:1 51:6  51:8  51:9  51:11  51:12  51:14  51:14 51:15  51:15  51:16  51:16  51:17  51:18 51:19  51:20  51:20  51:22  52:1  52:2  52:4 52:7  52:9  52:16  52:17  52:17  52:18  52:18 52:18  52:19  52:19  52:20  52:22  52:22 52:24  53:1  53:1  53:2  53:4  53:5  53:6  53:6 53:7  53:9  53:14  53:16  53:16  53:17  53:20 53:25  54:3  54:5  54:7  54:9  54:10  54:13 54:22  54:22  54:23  54:23  54:24  54:24 55:5  55:7  55:8  55:8  55:8  55:9  55:10 55:16  55:16  55:17  55:18  55:18  55:20 55:20  55:21  55:22  55:23  55:25  55:25  56: 56:3  56:4  56:7  56:7  56:9  56:9  56:10  56:10 56:13  56:15  56:17  56:20  56:21  56:23 56:23  56:25  57:2  57:4  57:4  57:9  57:10 57:17  57:11  57:12  57:14  57:14  57:16 57:17  57:18  57:19  57:19  57:20  57:21 57:21  57:22  57:23  57:23  57:24  57:24 57:25  57:25  58:1  58:2  58:2  58:4  58:5 58:6  58:7  58:8  58:8  58:8  58:10  58:10  58:16 58:17  58:18  58:18  58:21  58:24  59:1  59:2 59:5  59:7  59:10  59:11  59:15  59:20  59:21 59:23  60:3  60:5  60:5  60:8  60:20  60:22 61:2  61:3  61:4  61:5  61:7  61:8  61:8  61:12 61:13  61:16  61:17  61:21  61:21  61:24  62: 62:3  62:4  62:6  62:7  62:11  62:11  62:11 62:12  62:12  62:13  62:14  62:15  62:15 62:20  62:22  62:22  62:24  62:24  62:24 62:25  63:3  63:7  63:8  63:9  63:18  63:23 63:23  64:2  64:3  64:5  64:6  64:7  64:9 64:11  64:15  64:16  64:16  64:20  64:21 64:22  64:24  65:4 | **the**(301) | 65:11  65:14  65:16  65:18  65:21 65:22  65:24  65:25  65:25  66:4  66:4 66:10  66:13  66:19  66:20  66:24  66:25  67:2 67:4  67:4  67:9  67:9  67:14  67:15  67:16 67:16  67:18  67:22  67:24  68:3  68:4  68:4 68:4  68:5  68:6  68:8  68:10  68:12  68:13 68:13  68:20  68:22  68:25  69:4  69:8  69:11 69:14  69:16  69:17  69:19  69:19  69:20 69:22  69:24  69:25  70:1  70:2  70:4  70:6 70:6  70:9  70:11  70:12  70:12  70:13  70:13 70:14  70:16  70:17  70:18  70:19  70:19 70:20  70:21  70:22  70:22  70:24  70:25 70:25  71:1  71:2  71:3  71:6  71:6  71:7  71:9 71:13  71:15  71:17  71:19  71:20  71:22 71:23  71:24  71:25  72:2  72:2  72:2  72:3 72:5  72:6  72:7  72:8  72:8  72:14  72:14 72:15  72:16  72:18  72:20  72:20  73:1  73:1 73:3  73:7  73:7  73:8  73:9  73:11  73:12 73:13  73:14  73:15  73:17  73:18  73:19 73:21  73:22  73:23  73:23  73:24  73:25  74:1 74:1  74:5  74:6  74:7  74:8  74:8  74:9  74:10 74:11  74:11  74:12  74:13  74:16  74:18 74:19  74:19  74:21  75:1  75:4  75:5  75:7 75:7  75:7  75:9  75:9  75:10  75:11  75:12 75:12  75:13  75:13  75:14  75:14  75:15 75:23  75:25  75:25  76:1  76:1  76:8  76:9 76:10  76:10  76:10  76:15  76:15  76:16 76:18  76:19  76:20  76:20  76:20  76:21 76:21  76:21  76:22  76:22  76:23  76:23 76:24  77:3  77:4  77:6  77:7  77:8  77:9 77:10  77:10  77:11  77:11  77:12  77:12 77:13  77:14  77:15  77:18  77:19  77:19 77:20  77:21  77:22  77:23  77:24  77:24 77:25  78:1  78:5  78:6  78:8  78:10  78:10 78:12  78:14  78:14  78:16  78:17  78:19 78:20  78:22  78:23  78:23  78:24  78:25  79:3 79:3  79:5  79:5  79:9  79:9  79:11  79:12 79:16  79:18  79:19  79:20  79:22  79:22  80:1 80:2  80:2  80:3  80:5  80:5  80:8  80:9  80:14 80:15  80:18  80:18  80:18  80:19  80:24 80:25  81:1  81:1  81:2  81:3  81:4  81:4  81:5 81:5  81:8  81:11  81:11  81:12  81:13  81:14 81:15  81:17  81:19  81:21  81:21  81:22 81:22  81:23  81:24  81:24  82:3  82:3  82:4 82:5  82:5  82:7  82:7  82:8  82:8 |
| **thau**(1) | 9:32 | | | | | | |
| **the**(301) | 1:1  1:2  1:18  2:7  3:6  5:36  8:21 15:2  15:3  15:6  15:8  15:11  15:14  15:14 15:15  15:16  15:18  15:18  15:18  15:22 15:23  15:23  15:23  15:24  15:24  15:25 15:25  16:1  16:2  16:3  16:5  16:5  16:8 16:10  16:12  16:15  16:17  16:18  16:18 16:19  16:20  16:20  16:20  16:21  16:22 16:24  17:1  17:1  17:5  17:6  17:6  17:7  17:7 17:8  17:11  17:11  17:13  17:14  17:15  17:17 17:17  17:20  17:20  17:22  17:22  17:23 17:24  17:25  18:1  18:1  18:3  18:3  18:5 18:6  18:7  18:8  18:9  18:12  18:13  18:14 18:14  18:15  18:17  18:18  18:19  18:20 18:21  18:21  18:23  18:23  18:23  18:24  19: 19:2  19:2  19:3  19:5  19:6  19:6  19:7  19:7 19:8  19:12  19:15  19:16  19:18  19:19  19:19 19:22  19:23  20:3  20:4  20:5  20:6  20:6 20:8  20:10  20:11  20:14  20:15  20:17  20:1 20:19  20:21  20:22  20:22  20:24  20:25  21: 21:2  21:4  21:4  21:6  21:6  21:7  21:8  21:8 21:9  21:10  21:11  21:12  21:13  21:13  21:15 21:15  21:16  21:16  21:16  21:18  21:19 21:20  21:21  21:22  21:24  22:5  22:5  22:6 22:7  22:8  22:8  22:9  22:10  22:12  22:17 22:12  22:12  22:15  22:16  22:17  22:17 22:18  22:20  22:20  22:22  22:22  22:24 22:25  23:1  23:1  23:2  23:2  23:3  23:5  23:6 23:7  23:8  23:10  23:11  23:11  23:12  23:13 23:13  23:16  23:16  23:21  23:22  23:23 23:24  23:24  23:24  23:25  24:1  24:3  24:7 24:10  24:10  24:11  24:11  24:12  24:13 24:14  24:15  24:15  24:16  24:19  24:20 24:21  24:22  24:24  24:24  24:25  24:25  25: 25:1  25:3  25:3  25:4  25:5  25:5  25:7  25:8 25:10  25:12  25:13  25:13  25:15  25:17 25:17  25:19  25:21  25:21  25:22  25:22 25:22  25:23  25:24  25:25  26:1  26:2  26:2 26:2  26:6  26:9  26:10  26:11  26:14  26:16 26:19  26:19  26:20  26:22  26:23  26:24 26:24  27:1  27:4  27:4  27:4  27:8  27:10 27:11  27:13  27:13  27:13  27:16  27:16 27:16  27:17  27:19  27:24  27:25  28:1  28:2 28:3  28:4  28:8  28:12  28:14  28:14  28:17 28:18  28:18  28:18  28:20  28:23  28:24 28:25  28:25  29:4  29:5  29:7 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the(301)** 82:9 82:10 82:11 82:12 82:16 82:18 82:21 82:23 82:23 83:10 83:11 83:12 83:13 83:13 83:14 83:15 83:15 83:16 83:16 83:17 83:17 83:18 83:20 83:23 83:23 83:24 84:1 84:2 84:3 84:4 84:7 84:12 84:15 84:17 84:19 84:20 84:22 84:25 85:3 85:3 85:4 85:4 85:5 85:6 85:8 85:9 85:11 85:13 85:13 85:14 85:18 85:21 85:23 85:24 86:1 86:1 86:3 86:4 86:5 86:5 86:7 86:8 86:8 86:9 86:12 86:14 86:15 86:15 86:16 86:16 86:16 86:17 86:18 86:18 86:19 86:19 86:19 86:21 87:2 87:2 87:3 87:5 87:5 87:8 87:11 87:11 87:12 87:12 87:15 87:16 87:18 87:19 87:19 87:20 87:21 87:22 87:24 87:24 87:25 87:25 88:2 88:3 88:3 88:4 88:9 88:10 88:11 88:11 88:12 88:13 88:13 88:14 88:14 88:15 88:16 88:16 88:16 88:18 88:18 88:19 88:19 88:19 88:24 89:2 89:2 89:3 89:3 89:4 89:6 89:9 89:10 89:10 89:11 89:11 89:12 89:12 89:14 89:14 89:15 89:15 89:18 89:18 89:20 89:21 89:22 89:23 89:23 89:24 90:2 90:3 90:4 90:5 90:6 90:6 90:8 90:9 90:11 90:12 90:13 90:14 90:15 90:16 90:17 90:18 90:18 90:19 90:20 90:21 90:22 90:25 90:25 91:1 91:1 91:3 91:4 91:4 91:5 91:7 91:9 91:9 91:10 91:12 91:13 91:14 91:14 91:16 91:17 91:18 91:18 91:20 91:21 91:23 91:24 91:25 92:2 92:3 92:3 92:4 92:4 92:5 92:5 92:8 92:8 92:9 92:9 92:9 92:10 92:12 92:14 92:15 92:15 92:18 92:18 92:19 92:20 92:22 92:22 92:23 92:25 93:1 93:2 93:3 93:3 93:6 93:6 93:7 93:9 93:10 93:11 93:13 93:16 93:17 93:18 93:20 93:20 93:24 93:24 94:3 94:4 94:7 94:9 94:10 94:12 94:12 94:16 94:17 94:19 94:20 94:22 94:25 94:25 95:1 95:2 95:4 95:5 95:9 95:10 95:11 95:11 95:13 95:13 95:15 95:17 95:17 95:18 95:19 95:19 95:21 95:24 96:4 96:7 96:7 96:8 96:9 96:11 96:12 96:13 96:14 96:15 96:16 96:16 96:18 96:18 96:19 96:20 96:20 96:21 96:23 96:24 97:1 97:2 97:3 97:4 97:7 | | **the(301)** 97:7 97:9 97:12 97:13 97:14 97:14 97:14 97:17 97:18 97:18 98:1 98:2 98:3 98:4 98:5 98:8 98:8 98:12 98:12 98:13 98:13 98:13 98:15 98:15 98:16 98:16 98:16 98:17 98:17 98:18 98:22 98:23 98:24 98:25 98:25 99:2 99:5 99:5 99:7 99:8 99:10 99:15 99:16 99:16 99:18 99:19 99:20 99:24 99:24 100:1 100:2 100:3 100:4 100:6 100:7 100:9 100:12 100:12 100:15 100:18 100:23 101:1 101:3 101:4 101:5 101:5 101:5 101:6 101:6 101:7 101:9 101:11 101:12 101:13 101:13 101:16 101:17 101:18 101:23 102:2 102:2 102:2 102:3 102:5 102:7 102:9 102:10 102:11 102:11 102:12 102:13 102:14 102:14 102:15 102:15 102:16 102:18 102:19 102:23 102:24 102:25 103:7 103:10 103:11 103:13 103:13 103:17 104:2 104:3 104:10 104:12 104:14 104:18 104:22 104:23 104:24 104:25 105:1 105:2 105:6 105:7 105:8 105:9 105:9 105:13 105:13 105:15 105:21 105:21 105:23 105:25 106:5 106:9 106:9 106:11 106:15 106:16 106:17 106:20 106:21 107:1 107:2 107:8 107:9 107:11 107:13 107:14 107:18 107:19 107:23 107:24 107:25 108:2 108:4 108:10 108:11 108:13 108:13 108:15 108:16 108:17 108:19 108:22 108:25 109:1 109:5 109:6 109:7 109:7 109:9 109:12 109:13 109:15 109:20 109:20 109:21 109:22 109:22 110:1 110:3 110:4 110:6 110:8 110:9 110:9 110:12 110:15 110:16 110:17 110:18 110:19 110:21 110:22 110:22 110:23 110:25 111:1 111:2 111:11 111:15 111:17 111:19 111:19 111:19 111:20 111:23 112:1 112:3 112:4 112:5 112:5 112:7 112:7 112:10 112:11 112:12 112:17 112:17 112:18 112:19 112:20 112:20 112:22 112:24 113:3 113:4 113:4 113:5 113:7 113:7 113:8 113:9 113:9 113:10 113:11 113:11 113:12 113:13 113:14 113:15 113:16 113:16 113:17 113:18 113:20 114:2 114:3 114:5 114:5 114:8 114:8 114:10 114:11 114:11 114:12 114:12 114:13 114:14 114:18 114:18 114:19 114:21 114:22 114:23 114:25 115:1 115:2 115:4 115:9 115:12 115:13 115:14 115:15 115:15 115:16 115:16 115:20 115:25 115:25 116:3 116:5 116:7 116:7 116:8 116:8 116:9 116:11 116:12 116:12 116:14 116:16 | | **the(301)** 116:17 116:17 116:19 116:21 116:21 117:2 117:4 117:6 117:7 117:7 117:8 117:9 117:10 117:12 117:13 117:14 117:15 117:17 117:18 117:19 117:24 118:13 118:24 118:24 119:1 119:1 119:3 119:3 119:4 119:5 119:6 119:7 119:7 119:8 119:9 119:9 119:11 119:12 119:13 119:15 119:19 119:20 119:21 119:24 120:2 120:2 120:3 120:4 120:5 120:8 120:10 120:10 120:16 120:18 120:19 120:25 121:1 121:4 121:4 121:9 121:11 121:12 121:14 121:19 121:21 121:22 121:22 121:23 121:24 121:25 122:5 122:6 122:9 122:9 122:10 122:11 122:14 122:16 122:20 122:24 122:25 123:3 123:4 123:5 123:6 123:9 123:9 123:17 123:18 123:18 123:20 123:21 123:24 124:3 124:5 124:6 124:13 124:14 124:14 124:15 124:24 125:2 125:3 125:3 125:4 125:6 125:10 125:11 125:11 125:14 125:15 125:16 125:17 125:18 125:22 125:24 125:25 126:1 126:1 126:3 126:7 126:7 126:15 126:15 126:18 126:22 126:23 126:24 127:3 127:5 127:6 127:6 127:9 127:11 127:12 127:12 127:13 127:14 127:14 127:15 127:17 127:19 127:24 127:25 128:1 128:1 128:1 128:2 128:3 128:15 128:17 128:18 128:19 128:22 128:22 128:23 129:3 129:3 129:8 129:8 129:12 129:14 129:19 129:22 129:22 129:24 129:24 130:2 130:4 130:4 130:6 130:7 130:7 130:8 130:8 130:9 130:9 130:10 130:11 130:12 130:12 130:13 130:13 130:15 130:17 130:18 130:20 130:21 130:22 130:23 130:24 130:25 131:2 131:3 131:9 131:9 131:10 131:14 131:14 131:16 131:17 131:20 131:21 131:23 131:25 132:2 132:4 132:8 132:9 132:12 132:12 132:17 132:22 132:23 132:23 133:2 133:2 133:5 133:5 133:6 133:6 133:7 133:7 133:9 133:9 133:11 133:12 133:12 133:13 133:14 133:15 133:17 133:21 133:25 134:6 134:9 134:9 134:10 134:11 134:12 134:13 134:14 134:20 134:21 134:22 134:24 134:25 135:2 135:4 135:5 135:7 135:8 135:8 135:14 135:15 135:18 135:20 135:23 135:24 135:25 136:1 136:2 136:5 136:6 136:6 136:7 136:9 136:11 136:12 136:12 136:13 136:15 136:16 136:16 136:18 136:19 136:20 136:21 136:21 136:22 136:23 137:4 137:4 137:6 | | **the(301)** 137:7 137:9 137:12 137:12 137:13 137:16 137:17 137:20 137:23 137:24 137:24 137:25 138:1 138:2 138:3 138:3 138:4 138:6 138:9 138:10 138:10 138:13 138:15 138:15 138:16 138:19 138:21 138:22 138:22 138:25 138:25 139:1 139:2 139:4 139:5 139:7 139:7 139:11 139:13 139:15 139:15 139:15 139:17 139:17 139:23 139:24 140:2 140:5 140:6 140:8 140:9 140:11 140:12 140:13 140:13 140:14 140:18 140:20 140:23 140:24 140:25 141:1 141:2 141:3 141:4 141:4 141:6 141:9 141:11 141:13 141:13 141:24 141:24 141:25 142:1 142:1 142:4 142:4 142:5 142:7 142:7 142:10 142:10 142:14 142:17 142:18 142:18 142:19 142:20 142:22 142:23 142:23 142:24 142:24 142:24 142:25 143:1 143:2 143:5 143:5 143:5 143:6 143:8 143:8 143:9 143:12 143:13 143:13 143:14 143:17 143:18 143:19 143:19 143:19 143:21 143:22 143:22 143:23 143:24 144:5 144:6 144:9 144:10 144:10 144:11 144:13 144:13 144:14 144:20 144:21 144:24 144:25 144:25 145:8 145:9 145:10 145:10 145:11 145:12 145:13 145:14 145:15 145:16 145:17 145:18 145:19 145:20 145:20 145:21 145:22 145:24 145:24 145:25 146:1 146:2 146:3 146:4 146:7 146:9 146:10 146:11 146:12 146:12 146:13 146:14 146:15 146:17 146:18 146:19 146:19 146:21 146:22 146:22 146:23 146:23 146:24 146:24 147:1 147:4 147:4 147:4 147:5 147:5 147:8 147:8 147:11 147:13 147:13 147:21 147:22 147:23 147:23 147:24 147:25 147:25 148:1 148:2 148:3 148:3 148:4 148:4 148:5 148:6 148:8 148:9 148:9 148:10 148:11 148:12 148:13 148:16 148:18 148:19 148:20 148:21 148:22 148:23 148:24 148:25 148:25 149:1 149:2 149:3 149:4 149:6 149:9 149:10 149:11 149:16 149:17 149:18 149:18 149:18 149:19 149:20 149:22 149:24 149:25 149:25 150:2 150:3 150:4 150:4 150:5 150:6 150:8 150:9 150:10 150:14 150:15 150:16 150:16 150:17 150:18 150:18 150:19 150:20 150:23 150:25 151:3 151:9 151:10 151:11 151:14 151:17 151:18 151:18 151:21 151:21 151:24 152:1 152:2 152:2 152:4 152:4 152:7 152:8 152:11 152:14 152:20 152:21 153:3 153:6 153:7 153:7 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 153:10 153:15 153:16 153:17 153:17 153:18 153:19 153:19 153:20 153:20 153:21 153:22 153:23 153:24 153:25 153:25 154:1 154:2 154:5 154:10 154:11 154:12 154:12 154:12 154:14 154:15 154:17 154:17 154:18 154:19 154:21 154:24 154:24 155:2 155:3 155:3 155:3 155:7 155:7 155:7 155:8 155:8 155:9 155:9 155:10 155:10 155:11 155:12 155:13 155:14 155:15 155:15 155:16 155:18 155:20 155:23 155:24 156:4 156:4 156:5 156:6 156:7 156:8 156:9 156:9 156:10 156:10 156:10 156:11 156:13 156:14 156:15 156:15 156:17 156:20 156:20 156:21 156:23 156:23 156:23 156:24 157:2 157:3 157:4 157:9 157:13 157:13 157:16 157:16 157:18 157:19 157:20 157:21 157:21 157:22 157:22 157:23 157:24 157:24 157:24 158: 158:2 158:3 158:3 158:4 158:5 158:5 158:6 158:8 158:10 158:12 158:13 158:14 158:15 158:16 158:16 158:17 158:17 158:18 158:19 158:21 158:22 158:24 158:25 159:1 159:1 159:3 159:4 159:5 159:6 159:7 159:7 159:7 159:8 159:8 159:9 159:10 159:10 159:12 159:13 159:1 159:15 159:16 159:17 159:18 159:18 159:19 159:20 159:24 159:25 160:1 160:1 160:4 160:5 160:6 160:8 160:9 160:11 160:11 160:14 160:14 160:14 160:16 160:19 160:20 160:20 160:20 160:22 160:23 160:25 161:1 161:5 161:10 161:12 161:12 161:16 161:23 161:23 162:1 162:2 162:5 162:9 162:12 162:14 162:15 162:17 162:18 162:18 162:19 162:21 162:22 162:23 163:1 163:3 163:4 163:6 163:7 163:9 163:10 163:11 163:13 163:14 163:1 163:16 163:17 163:20 163:22 163:24 164:1 164:4 164:4 164:6 164:7 164:10 164:12 164:14 164:15 164:21 164:24 164:23 165:3 165:6 165:7 165:8 165:9 165:10 165:11 165:11 165:13 165:16 165:17 165:19 165:20 165:21 165:22 165:23 165:25 166:1 166:2 166:2 166:2 166:4 166:5 166:6 166:6 166:8 166:9 166:10 166:11 166:12 166:17 166:18 166:25 167:2 167:3 167:4 167:8 167:9 167:14 168:1 168:2 168:4 168:4 168:5 168:9 168:10 168:14 168:15 168:1 168:20 168:21 168:23 169:2 169:3 169:4 169:6 169:8 169:9 169:10 169:16 169:21 169:24 170:2 170:4 170:5 170:6 170:7 170:10 170:11 170:12 170:13 170:15 170:17 170:19 170:21 170:21 170:22 170:23 171:2 | | **the**(301) 171:2 171:4 171:5 171:7 171:11 171:13 171:16 171:19 171:21 171:21 171:22 171:23 171:25 172:1 172:3 172:3 172:5 172:8 172:8 172:12 172:13 172:13 172:16 172:17 172:17 172:18 172:19 172:23 172:24 173:2 173:5 173:5 173:6 173:6 173:7 173:8 173:8 173:8 173:9 173:10 173:11 173:12 173:14 173:18 173:19 173:19 173:21 173:22 173:23 173:23 173:25 173:25 174:1 174:1 174:2 174:3 174:4 174:4 174:5 174:8 174:8 174:10 174:10 174:12 174:13 174:15 174:16 174:16 174:16 174:17 174:17 174:19 174:19 174:19 174:20 174:20 174:20 174:21 174:21 174:23 174:24 175: 175:2 175:2 175:4 175:5 175:7 175:7 175:7 175:8 175:8 175:9 175:9 175:10 175:10 175:14 175:14 175:15 175:16 175:17 175:18 175:18 175:20 175:21 175:22 175:23 175:24 175:24 175:25 176: 176:4 176:5 176:6 176:7 176:8 176:9 176:9 176:10 176:12 176:12 176:14 176:1 176:16 176:16 176:18 176:18 176:19 176:20 176:20 176:20 176:22 176:23 177: 177:2 177:3 177:4 177:5 177:6 177:8 177:9 177:10 177:11 177:11 177:14 177:1 177:16 177:16 177:17 177:18 177:20 177:23 177:24 178:1 178:3 178:4 178:6 178:6 178:8 178:10 178:12 178:13 178:14 178:15 178:16 178:19 178:19 178:20 178:22 178:22 178:23 178:23 178:24 178:25 179:5 179:7 179:7 179:8 179:8 179:10 179:12 179:12 179:13 179:14 179:16 179:18 179:21 179:21 179:22 179:25 180:2 180:3 180:4 180:11 180:14 180:14 180:15 180:16 180:17 180:18 180:20 180:20 180:22 180:22 180:22 180:24 180:25 181:4 181:5 181:6 181:10 181:10 181:11 181:14 181:14 181:15 181:18 181:20 181:20 182:1 182:3 181:23 182:1 182:2 182:3 182:3 182:4 182:6 182:7 182:8 182:12 182:17 182:17 182:18 182:19 182:20 182:22 182:22 182:25 182:25 183:1 183:1 183:2 183:4 183:5 183:7 183:8 183:8 183:9 183:11 183:11 183:12 183:13 183:14 183:14 183:15 183:20 183:20 183:21 183:22 184: 184:5 184:6 184:8 184:11 184:12 184:15 184:19 184:19 184:25 185:1 185:3 185:4 185:5 185:6 185:8 185:10 185:11 185:11 185:12 185:14 185:15 185:18 185:19 185:19 185:21 185:22 185:23 185:24 185:24 185:25 186:1 186:2 186:4 186:4 186:6 186:7 186:8 186:8 186:10 186:11 186:11 | | **the**(301) 186:12 186:16 186:19 186:22 186:23 186:24 186:25 187:2 187:3 187:3 187:5 187:6 187:6 187:7 187:8 187:8 187:9 187:10 187:11 187:12 187:14 187:1 187:20 187:21 187:22 187:23 188:1 188: 188:2 188:2 188:3 188:4 188:4 188:5 188:6 188:8 188:9 188:11 188:11 188:13 188:14 188:16 188:16 188:17 188:20 188:21 188:22 188:23 188:24 189:1 189:2 189:2 189:6 189:8 189:10 189:11 189:12 189:14 189:15 189:16 189:16 189:17 189:18 189:18 189:19 189:23 189:25 190: 190:1 190:7 190:7 190:8 190:9 190:14 190:15 190:19 190:21 190:24 190:24 190:25 191:1 191:6 191:11 191:15 191:16 191:19 191:21 191:23 191:24 192:2 192:2 192:3 192:4 192:6 192:8 192:8 192:9 192:10 192:10 192:12 192:12 192:13 192:16 192:20 192:22 192:23 192:23 192:24 192:24 192:25 192:25 193:3 193:4 193:5 193:6 193:7 193:10 193:10 193:12 193:17 193:17 193:20 193:22 193:22 193:23 193:23 194:6 194:6 194:7 194:8 194:8 194:10 194:11 194:11 194:14 194:1 194:22 194:22 194:23 194:24 194:24 194:25 195:5 195:5 195:8 195:10 195:11 195:11 195:12 195:13 195:14 195:15 195:15 195:16 195:17 195:18 195:18 195:19 195:19 195:21 195:22 195:22 195:23 195:25 196:1 196:3 196:4 196:4 196:7 196:8 196:11 196:13 196:14 196:14 196:16 196:17 196:18 196:20 196:21 196:23 196:23 197:4 197:8 197:9 197:9 197:14 197:15 197:16 197:16 197:17 197:18 197:18 197:20 197:21 197:21 197:21 197:23 197:23 197:25 197:25 198: 198:2 198:2 198:3 198:4 198:5 198:5 198:6 198:8 198:10 198:11 198:12 198:12 198:14 198:14 198:17 198:20 198:21 198:22 198:23 198:23 198:24 198:25 199:1 199:2 199:3 199:5 199:6 199:6 199:9 199:10 199:11 199:12 199:14 199:15 199:17 199:17 199:19 199:19 199:21 199:23 199:24 200:2 200:4 200:7 200:8 200:12 200:13 200:13 200:14 200:1 200:17 200:18 200:19 200:20 200:22 200:23 200:23 201:1 201:2 201:3 201:4 201:4 201:5 201:13 201:14 201:14 201:15 201:16 201:19 201:22 201:24 201:24 201:25 202:1 202:3 202:3 202:5 202:6 202:7 202:7 202:8 202:12 202:12 202:16 202:16 202:18 202:19 202:20 202:22 202:23 202:25 202:25 203:1 203:2 203:3 203:6 203:7 | | **the**(301) 203:7 203:9 203:9 203:11 203:12 203:15 203:15 203:16 203:18 203:19 203:21 203:23 204:1 204:5 204:6 204:6 204:7 204:7 204:8 204:8 204:10 204:11 204:11 204:12 204:13 204:16 204:17 204:19 204:21 204:23 204:24 205:1 205:2 205:2 205:7 205:8 205:9 205:11 205:14 205:14 205:15 205:15 205:18 205:20 205:20 205:21 205:21 205:22 205:22 205:24 206:1 206:2 206:3 206:4 206:5 206:7 206:10 206:10 206:14 206:15 206:15 206:16 206:20 206:20 206:21 206:21 206:22 206:22 206:24 206:24 206:25 206:25 206:25 207:2 207:3 207:3 207:4 207:5 207:5 207:7 207:8 207:8 207:11 207:15 207:20 207:21 207:22 207:23 207:24 208:4 208:5 208:5 208:7 208:8 208:8 208:15 208:20 208:20 208:24 209:1 209:2 209:3 209:3 209:4 209:6 209:8 209:11 209:12 209:12 209:12 209:15 209:16 209:16 209:17 209:18 209:19 209:23 209:23 209:24 209:24 210:1 210:1 210:2 210:3 210:5 210:5 210:6 210:7 210:8 210:14 210:15 210:17 210:20 210:2 210:23 210:23 210:24 211:1 211:2 211:3 211:3 211:5 211:9 211:13 211:16 211:19 211:20 211:24 212:1 212:4 212:5 212:7 212:7 212:8 212:8 212:9 212:11 212:11 212:15 212:15 212:17 212:18 212:20 212:20 212:21 212:21 213:2 213:4 213:7 213:12 213:14 213:15 213:17 213:22 213:22 213:24 213:25 214:2 214:3 214:3 214:4 214:5 214:5 214:7 214:9 214:13 214:14 214:15 214:21 214:25 215:2 215:6 215:7 215:8 215:11 215:13 215:13 215:15 215:16 215:18 215:19 215:20 215:20 215:22 215:22 215:23 215:24 216:2 216:3 216:4 216:5 216:6 216:7 216:7 216:8 216:9 216:9 216:12 216:14 216:15 216:17 216:19 216:21 216:21 216:22 216:22 216:23 216:24 216:24 217:1 217:2 217:3 217:4 217:6 217:7 217:8 217:9 217:9 217:11 217:13 217:13 217:15 217:15 217:16 217:16 217:17 217:19 217:21 217:22 217:22 218:1 218:4 218:5 218:7 218:9 218:11 218:11 218:12 218:17 218:20 218:21 218:22 218:23 218:24 219:3 219:7 219:8 219:9 219:10 219:12 219:13 219:15 219:16 219:18 219:18 219:21 219:22 219:23 219:23 220:2 220:3 220:4 220:5 220:6 220:8 220:8 220:10 220:11 220:15 220:19 220:21 220:21 220:22 220:23 220:23 221:1 221:2 221:2 221:4 221:8 221:9 |
| 170:23 171:2 | | 186:6 186:7 186:8 186:8 186:10 186:11 186:11 | | 203:3 203:6 203:7 | | **the**(42) 221:9 221:10 221:12 221:15 221:17 221:19 221:21 221:23 221:24 222:3 222:5 222:6 222:6 222:8 222:9 222:9 222:10 222:10 222:12 222:13 222:13 222:14 222:15 222:17 222:22 222:24 222:24 222:25 223:3 223:6 223:7 223:13 223:16 223:17 223:21 223:23 223:25 224:2 224:5 224:6 224:6 224:7 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**their**(100) 15:24  18:18  18:19  31:4  36:6  39:7  39:13  39:23  40:12  44:11  52:14  52:14  56:16  56:17  62:16  64:10  64:18  66:5  66:22  67:17  67:19  68:17  72:5  73:20  80:12  82:6  97:4  102:18  103:19  103:23  107:16  107:21  109:5  110:16  117:11  118:16  119:16  126:1  126:25  131:6  138:15  138:17  141:5  141:7  149:12  149:13  149:14  149:17  152:13  152:14  152:15  152:15  152:21  154:9  157:1  157:6  159:9  159:16  159:25  160:5  160:6  160:16  160:17  161:25  162:8  163:19  167:23  167:23  170:2  172:12  172:10  179:1  180:23  180:24  181:8  182:16  184:17  189:13  192:1  192:17  192:20  193:25  194:25  195:4  199:24  201:1  201:16  207:23  207:25  209:1  210:14  210:15  210:19  212:12  213:9  218:10  218:22  219:21  220:1

**theme**(2) 17:19  83:20
**themes**(2) 83:9  206:23
**themselves**(6) 41:18  42:11  152:20  159:22  175:3  213:24

**then**(70) 16:19  20:20  21:18  24:17  30:9  38:20  40:15  43:14  47:19  51:18  52:12  53:2  53:9  56:16  57:5  57:22  58:24  60:19  62:14  68:3  69:20  76:5  79:10  84:9  85:21  85:22  85:22  85:23  90:24  93:25  102:11  106:5  108:19  123:1  134:13  134:16  134:23  146:5  147:14  148:10  148:17  150:5  151:25  152:2  152:23  158:14  158:25  159:17  160:10  172:15  177:15  184:11  186:22  196:11  196:21  197:12  198:18  199:6  199:14  199:24  203:4  203:12  203:13  206:3  207:19  208:10  208:13  210:20  213:15  221:6

**then-ceo**(1) 108:9
**theoretically**(1) 97:2
**theory**(2) 137:10  191:13

**there**(186) 21:21  22:18  23:17  23:18  24:5  24:18  26:5  26:13  26:22  27:14  28:9  28:19  29:5  29:8  29:19  30:23  31:13  31:25  32:14  32:15  35:13  39:16  40:5  40:6  41:9  42:9  45:15  45:19  47:6  48:14  51:1  51:6  51:8  51:9  51:18  51:20  52:21  52:23  53:25  54:10  54:17  55:3  55:5  56:9  56:10  56:21  56:24  57:1  57:2  57:18  58:19  60:9  61:11  61:15  62:9  65:14  66:6  67:5  67:8  67:13  67:15  70:17  71:5  71:5  74:23  75:12  75:14  76:7  78:5  78:9  78:18  79:19  80:7  80:21  82:3  83:8  85:10  87:9  88:21  94:6  97:16  97:25  106:8  109:4  115:9  116:14  121:15  125:14  128:19  129:7  129:7  130:25  133:2  133:8  133:19  133:20  134:13  135:21  135:22  136:13  137:14  137:21  138:4  138:6  138:14  138:18  138:23  139:6  139:9  139:18  139:20  140:6  140:16  140:21  141:10  142:5  142:20  142:25  144:2  144:5  144:8  144:12  145:2  146:9  148:8  148:9  152:3  152:7  152:16  153:6  155:1  156:25  156:25  157:18  159:6  162:16  162:17  162:21  165:14  167:19  168:21  171:7  171:10  171:20  174:7  176:24  181:8  182:12  182:14  183:16  183:24  184:2  185:21  189:9  190:10  193:1  194:8  195:8  195:15  196:6  196:20  197:5  201:9  202:1  202:24  203:8  203:10  203:14  203:18  204:2  206:23  207:10  208:22  211:4  212:17  213:10  214:2  216:21  216:22  216:23  217:11  218:20  219:3  220:9  222:8  223:18

**there's**(56) 19:10  19:19  28:22  28:22  28:24  30:21  32:25  33:14  35:9  42:17  43:14  44:20  46:13  46:18  53:19  54:21  55:19  56:11  56:11  59:1  59:3  59:17  60:9  60:13  61:7  61:11  61:23  62:6  65:14  70:16  71:7  71:10  74:18  74:22  75:16  75:21  76:19  77:8  78:16  79:22  81:14  81:16  133:3  140:23  171:8  178:18  182:18  184:10  184:23  189:5  193:13  200:14  200:17  200:23  200:25  201:14

**thereafter**(1) 16:14
**thereby**(1) 23:1
**therefore**(9) 28:3  28:7  29:16  31:15  33:18  37:13  129:3  129:15  157:23

**therein**(2) 100:2  193:8
**therese**(1) 12:40
**there's**(43) 85:16  86:10  87:8  87:21  88:17  88:17  92:7  93:19  97:20  98:4  98:5  98:6  109:17  109:25  111:5  117:1  119:7  119:19  119:20  120:3  121:24  122:4  123:13  123:13  125:12  125:21  125:21  126:12  126:20  127:7  127:24  130:21  131:12  131:12  131:13  207:7  208:11  208:15  213:20  215:9  216:10  216:20  222:11

**these**(99) 15:22  17:5  21:24  22:22  23:4  23:12  23:17  24:19  24:25  25:25  27:5  28:1  28:4  30:20  34:16  35:23  36:7  39:2  39:12  42:24  48:25  49:8  54:2  59:24  60:17  66:6  66:10  70:15  70:23  72:11  72:21  72:23  74:7  75:16  76:17  80:20  81:7  81:10  82:25  93:6  93:8  95:21  101:21  106:3  112:13  116:2  122:2  126:18  126:20  128:6  133:18  134:22  134:23  135:16  137:13  137:15  138:23  138:24  140:1  140:1  140:5  140:10  149:21  165:18  165:24  166:7  166:20  168:1  168:3  170:19  171:13  171:16  171:18  172:11  178:16  178:21  178:24  180:17  181:16  182:4  182:10  182:12  185:14  187:24  192:10  194:5  194:13  196:6  196:15  196:19  196:22  200:6  200:9  201:13  201:17  203:9  203:11  208:9  212:23

**they**(301) 16:11  19:18  30:17  30:22  31:13  32:17  32:19  32:21  32:24  33:10  33:13  34:12  34:12  34:17  35:17  35:18  35:19  36:20  37:7  37:7  38:18  38:19  39:19  39:25  40:1  40:11  40:25  41:15  42:1  42:2  43:25  44:12  45:9  46:13  51:10  52:15  52:25  53:1  53:4  53:7  53:9  53:10  53:12  54:16  57:14  60:2  60:4  60:10  61:22  61:25  62:1  62:21  64:1  64:4  64:18  64:19  64:23  65:1  65:4  65:4  65:5  65:12  65:24  65:24  66:3  66:10  66:25  68:10  68:11  68:12  68:15  68:15  68:16  70:12  71:17  72:13  74:14  74:15  74:15  74:16  74:21  74:22  74:25  75:19  75:19  76:15  76:16  76:17  76:22  77:7  77:7  78:2  78:12  78:21  80:12  80:13  80:14  80:15  80:20  81:3  81:9  81:20  81:25  82:2  83:16  85:14  86:9  88:14  90:3  90:5  91:1  92:11  92:12  93:19  96:10  96:12  99:25  100:25  100:25  101:9  101:11  101:11  101:15  101:20  102:9  102:12  103:2  104:1  106:1  107:16  107:20  110:7  110:11  110:13  110:14  111:22  112:21  116:3  116:13  119:3  119:12  119:14  119:16  125:7  126:1  127:15  130:16  131:17  131:18  133:4  133:5  133:8  133:10  133:13  133:16  133:20  134:1  134:1  134:15  134:16  134:17  134:20  134:22  134:25  135:13  135:18  135:19  136:1  136:1  137:6  137:9  137:10  137:19  140:3  140:3  141:2  141:2  141:3  141:5  141:8  142:18  145:1  145:19  146:16  146:17  147:18  148:2  148:22  148:24  149:11  149:13  149:16  149:19  149:20  150:3  150:8  151:8  151:13  151:21  152:14  152:21  152:22  154:17  156:15  156:18  156:19  157:16  157:19  157:22  158:4  158:9  159:3  159:4  159:11  159:17  159:22  159:24  160:2  160:3  160:15  160:17  160:22  161:24  161:25  162:1  162:1  162:8  163:8  165:16  165:20  165:21  168:22  169:12  170:19  172:19  174:11  175:3  177:12  178:10  180:5  181:16  181:16  181:22  182:15  182:23  183:2  183:16  185:6  185:6  185:7  185:7  187:12  189:13  189:14  189:15  192:8  192:9  192:9  192:11  192:12  192:16  192:17  192:20  193:6  194:2  194:24  194:25  195:1  195:2  195:3  195:4  195:4  195:5  195:6  195:6  195:13  196:2  196:4  196:18  196:19  196:22  198:16  201:3  201:6  201:10  201:11  201:18  202:2  202:19  202:20  204:1  204:12  204:13  204:25  205:25  205:25  205:25

**they**(29) 206:1  206:3  206:4  206:21  207:8  207:9  207:11  207:13  207:18  207:22  208:1  208:6  208:25  209:10  210:8  210:9  210:10  210:12  210:17  210:18  210:18  210:20  213:10  213:11  213:23  213:23  217:23  218:10  221:25

**they'd**(2) 66:14  77:22
**they'll**(2) 47:5  67:21
**they're**(46) 18:25  19:18  31:13  32:13  32:19  33:12  33:18  47:7  47:14  47:16  53:12  60:2  60:3  60:6  60:7  60:11  60:12  62:20  66:2  67:20  68:14  72:11  74:19  77:10  135:17  140:12  140:13  147:11  149:5  149:8  154:14  155:9  155:10  164:4  165:10  165:19  184:16  187:23  192:15  192:18  195:13  196:11  196:17  200:7  202:14  203:19

**they've**(6) 62:16  65:5  66:4  78:4  200:24  202:12

**they're**(19) 30:23  34:22  88:16  88:19  89:16  89:19  112:15  116:4  122:7  122:14  127:23  206:5  206:6  207:13  207:23  208:19  208:24  208:25  220:11

**they've**(1) 204:6

**thing**(36) 26:4  26:13  43:11  51:18  51:20  55:16  56:17  62:6  64:6  66:17  76:14  76:18  81:24  86:3  92:14  107:19  121:11  127:9  129:23  130:6  146:1  165:22  182:18  183:12  189:2  193:8  195:21  206:6  206:7  207:6  208:11  212:4  212:19  213:17  219:17  222:25

**things**(27) 16:24  17:1  34:15  37:7  40:6  44:20  46:17  49:12  49:15  65:15  66:18  87:5  147:11  147:19  159:6  160:3  162:20  166:14  166:15  172:12  194:9  197:4  197:7  207:10  212:20  219:4  219:25

**think**(217) 15:11  18:6  18:25  19:9  20:21  22:25  23:20  24:12  25:20  26:1  27:9  27:14  29:4  39:11  39:22  40:1  40:6  41:6  41:21  42:6  44:20  46:18  47:1  47:13  47:14  48:11  49:18  49:18  49:19  49:20  50:7  50:19  51:5  51:5  52:8  53:21  54:4  54:8  56:11  59:7  59:9  59:13  59:19  60:4  60:15  60:21  61:15  62:24  65:13  66:14  66:15  66:18  67:5  68:5  71:22  75:3  77:3  82:10  83:9  83:19  83:25  84:10  86:3  86:6  86:10  86:17  87:14  87:19  88:13  89:8  89:12  89:24  89:25  90:1  91:25  92:7  92:10  92:12  92:21  97:24  99:21  101:17  103:6  104:13  110:4  112:5  113:18  114:14  114:22  115:5  115:12  115:19  119:23  122:10  129:23  135:14  135:16  135:17  135:22  136:4  137:3  138:21  140:8  140:22  141:11  143:5  144:11  144:21  145:11  145:11  145:14  146:11  147:6  147:12  147:20  147:20  148:10  149:15  150:10  150:11  150:15  150:18  151:6  151:9  152:9  152:21  154:13  154:18  154:19  155:1  155:5  155:24  156:5  156:8  157:3  157:10  157:24  158:2  158:5  158:8  158:12  158:23  160:9  160:23  161:1  161:21  161:22  162:10  163:5  163:8  164:15  164:16  165:20  166:8  166:9  166:11  166:23  167:5  167:15  168:13  168:16  168:18  168:24  174:14  175:1  176:15  178:17  180:5  180:17  180:21  180:24  181:7  183:23  184:13  184:23  185:4  186:9  186:17  186:19  190:2  193:4  195:12  197:22  197:23  198:5  200:24  202:3  202:10  202:11  203:7  203:16  204:4  204:14  205:18  206:18  207:14  207:15  208:3  208:4  208:4  208:17  212:10  212:10  212:12  212:12  213:3  213:20  215:7  215:9  215:23  216:20  218:10  218:15  220:7  221:7  222:17  223:5

**thinking**(1) 59:23
**thinks**(6) 60:17  62:23  124:5  197:1  197:5  197:12

**third**(30) 12:38  28:13  50:6  72:2  83:20  104:23  104:25  110:25  111:2  112:3  113:20  114:5  114:8  114:18  119:5  139:17  144:2  159:19  175:18  182:2  182:3  190:23  203:14  204:12  213:13  214:1  214:9  214:11  218:15  221:5
**third-party**(2) 112:2  112:15

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**this**(301) 17:10 17:12 17:19 18:2 18:6 18:7 18:11 19:1 22:3 22:14 22:23 23:13 23:21 24:4 24:10 24:20 24:23 25:7 25:11 25:14 25:15 26:2 27:25 28:21 29:4 30:7 31:19 32:18 33:9 34:2 35:2 35:4 35:17 35:24 36:2 36:3 36:16 36:22 37:15 39:10 39:11 40:17 40:18 41:7 41:17 42:24 43:3 45:16 45:23 47:1 47:10 47:20 48:4 48:9 48:13 48:15 48:16 48:23 49:3 50:3 50:5 50:5 50:6 50:19 51:4 51:13 51:24 53:14 53:19 53:20 53:21 54:1 54:3 54:13 54:14 55:14 56:10 57:11 57:15 58:9 59:8 59:18 59:20 60:16 60:24 61:11 61:13 61:22 62:20 62:21 62:25 63:25 64:22 65:2 67:13 67:19 68:7 68:12 69:22 72:8 72:17 73:14 74:4 74:5 74:13 75:1 75:23 76:7 76:22 77:6 77:10 77:12 81:17 82:12 82:15 83:2 83:4 83:11 83:20 85:10 86:4 86:11 86:14 87:14 87:16 87:20 87:22 88:2 88:8 88:23 89:24 91:2 91:5 91:8 91:22 93:9 93:14 94:9 95:1 95:4 95:7 95:9 95:15 95:24 96:9 96:11 96:12 96:25 97:8 97:22 98:10 98:25 99:7 99:11 99:17 99:23 100:1 101:3 101:12 101:18 102:1 102:8 102:20 103:6 103:19 103:22 104:11 104:13 104:2 105:12 105:13 105:14 105:25 106:10 106:11 106:25 106:25 107:10 108:3 108:9 108:12 109:13 109:16 109:17 109:19 109:20 110:19 111:8 111:13 113:2 114:6 114:15 114:24 115:5 115:23 116:20 117:4 117:18 117:20 119:3 119:14 119:20 120:8 120:8 120:15 120:24 121:13 121:20 122:1 122:9 122:24 123:22 124:2 124:3 124:22 125:4 125:17 125:23 126:3 126:4 126:9 126:14 126:16 126:17 126:19 127:7 128:22 128:6 128:10 128:16 129:14 129:22 130:7 131:16 131:19 132:10 132:19 133:3 133:22 134:11 134:21 135:1 135:7 135:13 135:15 137:3 138:1 138:2 140:9 140:23 141:8 141:10 142:6 142:11 143:3 143:6 143:8 143:11 144:7 144:8 144:19 145:2 146:13 147:8 147:9 148:6 148:24 149:19 150:7 151:9 151:21 153:8 154:2 154:3 154:6 154:14 155:17 155:23 156:5 157:8 157:10 157:25 158:1 158:4 158:9 158:22 159:15 159:21 160:18 161:1 162:10 162:20 163:9 164:7 164:17 165:7 165:8

**this**(95) 165:24 165:25 166:17 166:19 168:11 168:14 168:17 169:5 170:25 173:3 174:7 174:9 174:25 175:18 176:1 176:4 176:24 177:19 177:19 178:4 178:8 179:6 179:15 179:18 179:21 180:21 182:3 182:11 182:11 183:4 183:9 183:13 183:14 183:18 184:14 185:10 186:7 186:20 188:12 189:1 189:16 189:17 189:19 190:22 191:15 194:13 195:1 195:7 195:15 195:21 195:24 196:17 197:10 197:11 197:14 198:12 198:19 198:20 198:21 199:7 200:3 200:11 200:11 201:15 201:17 201:21 203:12 203:17 204:3 204:20 204:25 205:6 205:16 205:17 206:4 206:13 206:17 206:17 207:5 207:11 208:1 208:20 209:8 211:2 213:16 214:19 216:4 217:6 217:12 218:20 219:9 219:12 223:12 223:25

**thomas**(3) 15:22 53:23 108:7 117:17 117:21

**thornburg**(1) 5:10

**thorough**(4) 18:17 75:18 185:12 197:17

**thoroughly**(2) 28:13 37:21

**those**(107) 16:21 18:11 18:24 19:14 23:4 25:3 25:24 26:6 26:8 26:11 28:6 29:2 29:3 31:2 31:16 31:19 32:15 33:1 33:1 36:5 38:11 41:15 43:22 44:22 49:15 51:9 56:8 66:9 67:3 67:5 71:16 72:1 76:4 76:5 78:4 79:21 81:15 100:22 102:9 103:24 104:20 105:18 108:5 108:23 110:10 111:7 111:23 112:1 113:14 113:23 114:15 115:10 115:12 115:13 115:14 115:15 118:7 119:2 128:13 128:23 130:14 133:21 135:7 135:11 135:12 137:21 140:17 141:11 144:12 147:2 150:11 152:12 152:17 157:7 160:3 162:20 162:24 163:2 163:8 163:13 163:14 173:9 174:13 175:12 181:4 181:5 182:23 185:25 187:7 189:5 190:9 191:20 192:3 197:25 198:4 201:8 202:16 205:3 209:21 213:15 214:11 214:16 215:24 216:11 219:25 221:10 221:25

**though**(11) 21:8 27:21 81:10 81:16 108:16 123:5 137:17 162:11 163:7 168:6 177:2

**thought**(27) 15:9 38:13 44:14 44:16 48:15 48:25 54:3 63:18 90:24 91:13 91:20 91:22 133:4 133:13 140:20 158:11 165:19 177:12 181:12 188:14 188:15 188:17 189:8 190:5 191:4 192:12 192:25

**three**(25) 15:20 15:23 20:2 28:19 37:12 42:21 42:9 76:4 76:5 83:8 107:8 107:16 115:11 122:3 139:20 140:6 158:13 175:12 200:25 204:6 211:13 211:16 215:6 220:2 222:15

**three-minute**(1) 211:11

**three-percent**(1) 107:6

**through**(34) 18:13 21:19 24:3 25:6 27:20 57:16 60:19 60:20 60:24 80:13 83:9 83:10 90:9 92:1 102:3 102:3 102:16 107:9 125:8 125:16 127:1 128:2 132:10 144:15 148:5 153:15 166:12 166:21 182:4 198:12 199:4 210:1 214:8 216:2

**throughout**(5) 17:20 44:14 50:3 104:13 185:14

**throwaway**(1) 184:6

**throwing**(2) 111:7 127:4

**thrust**(1) 194:22

**tick**(2) 207:2 207:6

**tie**(2) 89:14 120:13

**ties**(1) 148:4

**tightly**(2) 48:5 48:16

**tim**(1) 105:12

**time**(93) 16:6 16:14 37:2 37:20 44:25 45:4 48:2 49:22 51:22 52:9 52:11 52:22 53:5 55:8 56:23 57:4 57:13 60:12 60:24 61:22 62:5 66:6 66:16 68:22 68:23 69:6 69:23 70:21 70:22 75:2 80:12 86:9 90:11 95:1 95:3 97:8 97:11 97:14 98:12 98:13 98:16 98:25 100:3 100:4 101:3 101:11 104:11 104:14 105:13 112:3 115:15 116:16 117:1 120:2 121:20 123:16 126:7 126:15 127:1 148:5 152:4 153:6 168:15 168:18 169:7 169:8 169:10 174:15 178:24 179:4 179:24 180:5 182:4 185:20 187:13 191:25 200:21 201:11 201:22 201:18 204:4 214:22 218:3 218:8 221:24 222:16 223:14

**timeframe**(1) 82:9

**times**(21) 21:16 37:12 39:6 51:24 67:24 86:16 96:19 96:21 97:1 100:7 100:12 102:24 118:14 128:4 129:13 144:25 146:1 146:16 147:15 198:17 220:2

**timing**(1) 86:20

**timothy**(1) 12:26

**tina**(1) 12:35

**title**(1) 54:21

**titles**(1) 206:21

**today**(16) 30:19 44:6 44:22 46:25 51:16 52:8 70:21 84:13 85:18 165:19 170:3 173:10 189:12 218:18 223:3 223:23

**together**(13) 15:19 66:11 66:13 67:6 79:6 91:2 120:14 141:2 141:3 146:23 160:3 161:20 163:24

**told**(19) 30:18 33:23 38:19 53:18 64:12 74:21 88:2 88:4 88:5 88:6 88:7 140:20 145:23 154:20 185:12 188:13 193:2 193:1 217:21

**tomorrow**(4) 47:6 222:23 222:25 223:14

**tomorrow's**(1) 221:10

**tonight**(1) 85:7

**too**(14) 45:1 53:13 54:4 65:2 67:21 78:11 112:14 154:11 160:13 177:4 183:11 184:1 208:14 215:3

**took**(18) 37:14 76:5 81:20 91:1 99:14 106:15 106:16 132:9 137:17 162:15 168:1 168:20 169:12 189:25 190:14 194:17 219:19 219:20

**top**(16) 73:12 74:8 77:6 77:10 77:12 77:13 77:14 99:4 102:17 111:19 115:11 148:19 161:9 161:13 200:17 218:8

**topic**(4) 50:19 62:21 160:10 217:12

**topics**(3) 144:19 198:10 216:16

**torch**(1) 147:4

**torres**(2) 4:39 9:35

**total**(10) 16:8 22:17 84:9 89:20 101:15 122:9 160:20 176:6 180:7 192:16

**totality**(1) 114:12

**totally**(2) 46:6 168:19

**touch**(5) 37:4 39:12 88:23 185:17 188:10 191:2 192:1 222:22

**touched**(1) 144:7

**touching**(1) 203:25

**toussi**(1) 13:26

**towards**(2) 73:12 130:1

**traci**(1) 224:11

**track**(1) 68:22

**tracks**(1) 111:18

**trade**(1) 129:2

**trades**(1) 54:8

**trading**(1) 204:25

**traditional**(5) 36:1 100:19 191:17 191:20 191:24

**trait**(1) 145:5

**transaction**(55) 45:14 47:3 47:7 47:23 48:1 48:5 48:16 49:9 49:10 53:20 60:5 86:5 86:11 91:2 91:6 94:9 95:1 95:5 95:9 97:1 100:2 105:13 110:21 112:12 114:13 114:20 115:1 115:6 115:14 115:17 115:18 117:19 120:19 132:11 133:3 133:5 133:7 133:10 133:12 134:10 134:21 139:16 139:22 139:25 141:2 141:5 141:6 141:8 146:20 147:2 147:25 148:16 149:16 151:1 194:12

**transactions**(11) 19:7 48:6 49:1 49:9 49:12 53:20 53:24 54:16 55:1 81:9 132:11

**transaction"**(1) 114:9

**transcriber**(1) 224:11

**transcript**(5) 1:17 1:53 164:13 218:24

**transcription**(2) 1:46 1:53

**transcripts**(1) 162:15

**transfer**(35) 20:1 21:20 47:11 60:6 60:9 61:17 61:24 62:5 62:12 67:20 68:2 93:2 103:7 105:5 128:15 132:23 137:10 139:10 139:16 139:22 140:14 142:11 142:22 142:25 161:7 161:19 164:2 183:8 207:17 207:18 207:19 207:24 208:12 209:4 217:7

**transfers**(3) 45:18 137:8 170:13

**transpired**(1) 169:8

**transposed**(1) 23:5

**trb**(1) 202:23

**treasurer**(3) 106:5 106:11 107:13

**treat**(1) 63:12

**treatises**(1) 116:12

**treatment**(3) 158:5 158:6 193:7

**treats**(1) 200:14

**tree**(2) 38:4 161:6

**trial**(47) 17:24 18:19 30:19 35:5 37:15 37:21 39:7 39:13 39:23 44:14 73:16 86:5 86:5 87:3 87:14 87:16 88:11 96:3 98:7 101:17 104:20 107:18 115:20 132:17 136:13 138:25 144:4 146:12 148:3 148:8 148:11 148:23 149:2 164:12 165:25 166:12 166:23 167:2 167:5 167:23 168:6 171:15 173:10 176:19 177:20 218:17 218:18

**tribune**(78) 1:8 1:38 7:4 7:35 20:15 20:19 22:1 29:9 30:2 31:18 48:8 54:25 55:23 56:22 56:24 57:7 58:14 61:1 66:21 81:2 81:14 86:7 86:17 94:17 97:17 98:23 99:1 99:6 99:10 99:17 99:21 99:25 100:9 101:24 102:4 105:14 105:16 105:19 106:5 106:8 106:11 106:13 107:15 109:2 109:3 109:10 109:24 111:12 111:24 116:9 122:12 123:18 128:4 129:6 131:2 131:15 133:25 141:23 142:1 146:22 149:20 170:3 170:14 170:18 171:1 171:3 171:10 171:15 172:7 172:8 172:10 172:13 172:15 178:21 188:18 194:19 199:10

**tribune's**(8) 34:19 34:24 35:6 53:4 170:7 170:24 171:20 199:13

**tribune's**(18) 98:24 99:13 99:19 100:7 100:23 100:24 101:4 101:8 102:16 102:17 106:2 107:3 107:21 108:4 108:9 120:25 125:25 128:20

**tricadia**(2) 10:28 10:28

**trick**(1) 166:24

**tried**(3) 55:13 73:2 205:25

**trier**(3) 59:7 59:22 62:25

**triers**(1) 59:13

**tries**(1) 54:6

**triggered**(1) 172:11

**trouble**(1) 35:21

**true**(10) 71:18 75:21 80:6 132:22 158:25 176:17 188:23 192:19 201:25 210:7

**truly**(1) 18:21

**trust**(16) 4:4 9:35 12:22 12:43 41:9 67:16 72:15 73:8 73:14 99:16 99:24 159:2 175:19 177:7 177:8 177:10

**trustee**(4) 5:34 5:34 5:36 219:1

**trusts**(3) 174:5 174:5 203:11

**truth**(1) 133:2

**try**(14) 33:4 40:7 44:22 44:24 45:8 55:15 59:22 90:11 155:3 160:17 179:4 179:23 202:22 219:15

**trying**(18) 24:10 29:23 52:23 63:7 68:7 68:14 73:5 78:4 119:18 124:13 145:1 147:16 147:17 152:3 190:19 190:22 196:12 201:16

**tuliano**(19) 53:25 54:6 54:6 55:3 56:18 56:18 57:6 102:8 102:21 111:11 111:11 111:21 112:7 113:11 116:7 116:19 121:9 129:14 129:17

**tuliano's**(4) 32:3 32:6 55:12 56:13

**tuliano's**(13) 95:8 99:1 111:18 112:14 114:1 115:21 116:1 117:5 119:4 120:6 121:12 129:10 131:1

| Word | Page:Line |
|---|---|
| **turn**(22) 65:16 85:21 93:23 104:17 110:23 112:16 113:25 123:7 135:20 148:17 158:2 160:10 163:7 168:1 169:4 187:4 187:14 206:19 214:19 216:13 219:5 220:4 | |
| **turned**(2) 106:21 198:19 | |
| **turning**(2) 173:24 177:13 | |
| **turns**(6) 17:2 17:10 104:2 151:5 208:6 209:5 | |
| **twa**(2) 119:5 119:24 | |
| **two**(174) 16:9 17:13 19:7 19:9 19:10 19:13 19:15 20:6 20:10 21:20 21:22 21:24 21:24 22:10 22:12 23:16 24:14 24:15 24:16 25:23 25:24 26:9 26:11 26:18 26:25 27:1 27:10 29:5 29:7 31:15 31:21 32:20 34:4 34:11 34:17 34:23 35:18 36:1 36:24 37:7 38:23 39:17 40:2 41:2 45:15 45:20 46:2 47:21 48:25 49:8 49:9 54:25 55:10 55:19 58:9 58:11 58:15 59:1 59:1 59:2 59:10 60:1 60:10 60:14 60:17 60:20 61:15 63:4 63:4 66:6 66:17 67:3 67:6 70:4 71:3 71:6 71:19 73:1 73:1 80:10 90:20 93:25 94:11 94:13 94:16 94:21 95:21 96:11 106:8 106:12 106:13 106:22 107:14 114:3 114:8 114:19 115:2 115:3 115:10 115:18 119:13 121:24 124:20 134:1 135:1 135:20 135:22 135:24 135:24 136:7 136:8 136:12 136:20 136:24 137:1 137:8 137:25 138:4 138:6 138:18 138:19 140:24 141:2 141:4 141:6 141:8 141:19 143:7 143:9 143:15 143:21 144:7 144:11 144:14 147:10 149:23 151:12 157:11 158:20 168:1 169:14 169:14 172:11 175:5 186:21 188:20 191:2 193:24 197:7 197:23 199:23 200:23 201:9 202:9 202:9 203:3 204:8 204:16 204:17 211:22 212:14 214:2 214:25 216:22 217:14 217:18 217:22 218:13 220:9 220:18 220:20 222:15 | |
| **two-hour**(2) 160:16 167:24 | |
| **twoomey**(1) 7:7 | |
| **two"**(1) 94:23 | |
| **type**(4) 125:15 134:3 213:17 219:12 | |
| **u.s**(2) 5:34 5:36 | |
| **u.s.c**(1) 135:10 | |
| **ultimate**(4) 18:7 165:13 174:22 195:16 | |
| **ultimately**(8) 27:22 110:4 129:12 172:25 179:1 182:24 203:10 213:8 | |
| **unable**(1) 202:16 | |
| **unacceptable**(1) 46:6 | |
| **unanimous**(1) 116:17 | |
| **uncertain**(4) 18:8 40:20 46:23 46:23 | |
| **uncertainly**(1) 26:12 | |
| **uncertainties**(1) 45:24 | |
| **uncertainty**(1) 48:14 | |
| **uncomfortable**(1) 125:17 | |
| **uncommon**(1) 145:4 | |
| **unconfirmable**(2) 212:13 213:9 | |
| **uncontested**(1) 20:25 | |
| **uncontradicted**(1) 91:17 | |
| **uncontroverted**(4) 29:4 104:18 125:22 131:24 | |
| **under**(40) 23:21 26:23 27:4 28:20 29:11 32:6 35:20 100:8 103:16 122:2 122:12 126:18 131:16 139:13 140:17 142:14 157:14 158:17 159:1 161:16 170:8 170:15 170:19 171:6 173:7 174:24 175:5 176:1 191:6 195:17 201:20 203:9 209:21 210:14 210:14 212:23 214:11 214:18 217:1 220:22 | |
| **undercapitalized**(1) 58:16 | |
| **undercut**(1) 196:15 | |
| **underestimating**(1) 153:16 | |
| **underlined**(1) 204:6 | |
| **underlying**(2) 150:9 188:21 | |
| **underneath**(2) 54:22 89:22 | |
| **underperformance**(2) 99:12 99:19 | |
| **underperformed**(1) 102:4 | |
| **understand**(9) 24:10 24:13 38:12 105:20 128:5 140:8 199:19 204:24 204:24 | |
| **understanding**(4) 69:25 155:2 167:18 167:24 | |
| **understands**(1) 166:12 | |
| **understate**(1) 54:2 | |
| **understood**(6) 48:14 95:2 145:19 154:25 156:1 212:25 | |
| **undertake**(2) 18:22 215:22 | |
| **undertook**(1) 18:17 | |
| **undervalued**(1) 176:4 | |
| **underway**(1) 199:14 | |
| **underwrite**(1) 150:25 | |
| **underwritten**(1) 150:25 | |
| **undo**(1) 139:15 | |
| **uneasy**(1) 15:17 | |
| **unencumbered**(1) 60:20 | |
| **unequivocal**(1) 182:11 | |
| **unequivocally**(2) 100:18 124:22 | |
| **unfairness**(1) 139:7 | |
| **unfamiliar**(1) 74:25 | |
| **unflattering**(1) 135:4 | |
| **unfortunately**(1) 81:6 | |
| **unfounded**(1) 222:1 | |
| **unguarded**(1) 91:19 | |
| **uniformly**(1) 127:25 | |
| **uninterrupted**(1) 95:9 | |
| **unique**(3) 117:23 181:1 194:19 | |
| **united**(2) 1:1 1:19 | |
| **universally**(1) 205:12 | |
| **universe**(4) 93:10 93:11 158:21 164:24 | |
| **unjust**(1) 137:11 | |
| **unknown**(3) 169:7 169:14 169:24 | |
| **unless**(8) 15:8 19:19 20:5 82:16 132:2 169:4 193:24 197:25 | |
| **unlike**(2) 140:15 192:21 | |
| **unlikely**(11) 20:5 20:9 20:19 22:1 30:7 31:18 31:22 40:25 71:23 141:20 167:17 | |
| **unprecedented**(1) 132:18 | |
| **unqualified**(1) 199:25 | |
| **unrealistic**(5) 103:17 104:21 105:19 110:11 110:13 | |
| **unreasonable**(15) 17:25 37:13 37:18 77:23 77:24 78:7 101:19 101:22 103:2 103:25 110:7 113:23 186:5 186:13 215:25 | |
| **unreasonably**(3) 132:19 161:16 199:10 | |
| **unreliability**(1) 168:10 | |
| **unreliable**(3) 39:3 98:20 186:13 | |
| **unsecured**(16) 3:11 6:10 15:7 19:16 25:10 25:17 26:18 26:19 27:12 41:25 90:2 148:25 158:15 160:8 178:14 216:24 | |
| **unsecureds**(1) 90:4 | |
| **unsurprisingly**(1) 18:8 | |
| **until**(11) 43:25 51:21 86:21 95:19 105:24 110:15 110:17 119:13 127:24 172:11 204:16 | |
| **update**(5) 108:15 110:14 110:16 110:17 218:7 | |
| **updated**(3) 108:21 109:3 109:10 | |
| **updates**(1) 130:10 | |
| **uphill**(2) 191:25 196:2 | |
| **upon**(19) 47:3 103:18 103:21 106:16 110:2 110:20 113:24 121:14 123:23 131:22 134:6 175:25 176:9 176:12 188:8 191:1 191:10 215:7 218:10 | |
| **upset**(1) 182:16 | |
| **upstairs**(1) 47:5 | |
| **urged**(1) 218:21 | |
| **usa**(1) 13:29 | |
| **use**(24) 16:12 16:14 69:1 79:24 79:25 116:25 119:12 122:8 122:14 126:10 142:1 142:18 158:7 160:22 174:14 174:15 180:7 186:14 189:18 194:22 211:12 213:23 220:21 221:3 | |
| **used**(19) 16:25 21:14 33:15 46:5 54:20 71:22 84:3 84:10 111:9 111:14 119:6 119:11 119:15 119:22 120:9 122:6 143:5 158:5 191:17 | |
| **uses**(4) 50:25 77:9 138:3 174:11 | |
| **using**(5) 16:12 57:21 115:24 143:2 164:21 | |
| **utilize**(2) 73:23 150:13 | |
| **utilized**(2) 73:15 143:9 | |
| **utilizing**(1) 176:2 | |
| **utter**(1) 168:10 | |
| **utterly**(1) 97:22 | |
| **vail**(1) 8:42 | |
| **valid**(9) 63:8 63:10 63:11 63:12 63:13 65:15 77:14 131:21 174:25 | |
| **validation**(2) 146:4 146:7 | |
| **valuable**(4) 18:12 174:12 175:17 192:11 | |
| **valuation**(15) 42:23 43:6 78:10 78:10 79:2 79:9 81:21 82:2 82:3 116:4 116:12 116:1 116:15 117:2 176:3 | |
| **valuations**(2) 118:8 176:10 | |
| **value**(67) 28:11 28:16 34:19 34:24 35:6 35:9 36:9 36:15 36:23 36:24 37:23 39:4 41:16 44:17 48:1 56:13 63:5 68:5 71:13 74:23 78:6 81:15 81:18 82:11 82:24 82:24 83:7 92:9 106:9 116:13 116:24 117:2 117:3 117:10 117:23 118:4 119:6 119:12 119:15 119:23 119:23 120:12 120:16 129:12 136:11 138:1 138:4 138:9 161:15 164:14 169:2 175:21 177:7 177:10 184:7 186:22 190:1 190:24 192:14 192:14 217:3 217:15 218:3 218:20 219:4 219:13 220:2 | |
| **valued**(2) 82:1 119:2 | |
| **values**(6) 53:10 57:6 57:21 65:16 92:4 143:17 | |
| **value"**(2) 116:25 119:7 | |
| **variety**(1) 122:12 | |
| **various**(10) 72:23 80:14 112:2 120:13 136:18 156:5 161:12 199:13 200:9 221:5 | |
| **vastly**(2) 128:23 219:15 | |
| **vendors**(1) 83:6 | |
| **ventures**(3) 57:20 58:5 105:17 | |
| **verse**(1) 71:2 | |
| **version**(1) 75:8 | |
| **versions**(1) 80:13 | |
| **versus**(5) 89:11 166:3 181:8 201:23 205:5 | |
| **very**(80) 15:19 17:16 18:7 18:19 20:24 24:4 25:9 25:14 27:7 30:5 30:7 30:16 31:2 41:15 43:10 44:3 47:1 48:22 49:11 50:10 50:10 50:22 50:22 51:13 51:13 54:18 59:13 60:24 65:9 72:11 78:15 82:23 85:23 88:3 88:24 89:1 94:18 95:5 99:24 101:14 110:12 111:22 121:17 121:20 121:21 123:24 125:18 127:5 127:8 128:16 131:3 135:21 137:4 144:12 146:19 157:11 157:19 161:3 162:3 162:3 162:4 170:1 170:3 181:24 182:4 183:9 184:8 184:8 192:1 193:8 196:17 204:23 205:10 206:7 207:15 209:8 216:1 219:1 220:9 | |
| **vfb**(1) 50:8 | |
| **viable**(3) 176:17 177:13 191:9 | |
| **vibrant**(1) 118:23 | |
| **vice**(2) 108:19 117:17 | |
| **vice-chairman**(1) 124:17 | |
| **victory**(2) 41:2 41:3 | |
| **video**(4) 100:11 100:21 117:21 177:20 | |
| **view**(28) 27:19 74:15 80:9 80:23 85:4 88:5 91:12 96:7 97:21 97:22 102:24 103:10 103:10 108:4 131:6 135:4 162:22 165:17 175:1 175:1 179:7 186:3 187:10 192:10 196:25 199:12 212:17 213:19 | |
| **viewed**(1) 158:11 | |
| **views**(13) 15:17 16:24 18:9 19:22 25:22 51:9 70:23 73:3 100:23 147:1 154:10 155:24 195:23 | |
| **vigorous**(3) 145:15 148:2 155:8 | |
| **vindicated**(1) 82:7 | |
| **violated**(1) 171:13 | |
| **violates**(1) 212:10 | |
| **violations**(3) 171:14 171:17 171:19 | |
| **virtually**(9) 89:5 102:22 134:20 136:11 138:18 150:19 158:4 166:5 189:11 | |
| **virtue**(1) 183:11 | |
| **visible**(1) 58:13 | |
| **vision**(1) 210:14 | |
| **visit**(2) 150:21 198:11 | |
| **vlasic**(2) 50:7 56:9 | |
| **vlf**(1) 50:7 | |
| **volatile**(1) 82:4 | |
| **volume**(19) 23:3 23:14 49:6 54:17 117:7 129:3 185:24 186:16 187:14 187:20 188:15 188:23 189:1 189:5 199:3 199:7 204:25 216:2 216:3 | |
| **voluntarily**(2) 65:13 65:14 | |
| **voluntary**(2) 64:8 65:8 | |
| **vonnegut**(1) 2:35 | |
| **vora**(1) 13:30 | |
| **vote**(6) 46:9 77:18 156:4 158:22 159:24 160:6 | |
| **voted**(14) 42:2 42:6 42:10 77:20 78:2 156:15 156:17 156:18 156:19 156:20 156:21 156:22 157:7 158:10 | |
| **votes**(6) 41:22 41:24 42:11 157:24 158:2 192:2 | |
| **voting**(4) 42:9 42:14 43:1 170:17 | |
| **vrc**(6) 110:5 117:3 117:13 119:9 119:11 119:18 | |
| **vrc's**(2) 117:9 119:21 | |
| **w-h-e-r-e**(1) 207:7 | |
| **wait**(1) 131:11 | |
| **waiting**(3) 184:19 184:23 184:24 | |
| **waiver**(10) 64:5 64:6 64:7 64:8 65:8 65:9 171:20 171:21 171:23 172:1 | |
| **walk**(1) 91:14 | |
| **walked**(1) 60:10 | |
| **walker**(1) 7:30 | |
| **walrath**(1) 214:15 | |
| **want**(57) 25:15 25:16 39:10 39:22 42:3 45:1 45:2 45:10 45:20 47:19 51:3 52:12 64:4 64:23 65:4 65:5 65:5 65:24 66:16 66:19 68:16 74:20 77:7 81:13 83:3 92:14 95:6 104:22 105:11 110:23 110:24 111:10 112:16 113:25 115:21 116:16 120:7 123:21 128:9 129:1 133:10 152:19 152:22 156:16 160:15 163:16 172:19 179:4 179:5 179:13 183:17 188:10 198:11 201:17 206:19 210:18 216:1 | |
| **wanted**(14) 15:9 24:13 47:9 55:20 72:20 78:8 82:24 82:25 99:25 133:18 133:20 142:17 158:2 209:12 | |
| **wants**(4) 82:23 197:1 197:2 208:3 | |
| **wardwell**(2) 2:29 8:25 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **was**(301) | 17:21 17:24 17:25 18:16 18:21 18:22 19:9 19:13 20:5 20:9 20:18 20:19 20:20 21:7 21:23 21:25 23:13 24:10 28:9 29:9 29:13 29:19 30:2 30:5 31:14 31:17 31:18 31:22 32:4 33:15 35:10 38:3 38:4 38:18 38:18 39:15 39:16 43:23 44:11 44:16 45:18 46:4 46:8 46:16 46:20 46:22 46:24 47:2 47:7 47:12 47:21 47:21 47:23 48:4 48:6 48:14 48:16 48:16 50:2 50:21 51:7 51:18 51:22 51:23 52:3 52:9 52:11 52:17 53:8 53:13 54:17 55:2 55:3 55:3 55:5 56:16 57:1 57:2 57:5 57:12 58:3 58:11 58:16 58:19 60:5 61:12 63:25 65:4 65:12 66:6 66:24 66:25 67:10 67:12 67:11 67:15 67:18 68:2 69:5 71:2 71:21 71:22 72:20 72:22 73:11 74:7 74:22 74:25 75:6 75:12 75:23 77:24 78:24 79:2 79:10 79:16 79:17 79:18 80:11 81:21 81:24 82:2 82:3 82:4 82:9 82:12 86:5 86:7 86:8 86:11 86:11 87:4 87:15 88:3 90:25 91:2 91:9 91:12 91:18 91:21 94:16 94:17 94:17 94:22 94:22 95:1 95:5 95:14 95:23 95:24 96:1 96:4 96:18 96:22 97:1 97:3 97:14 97:25 98:1 98:12 98:13 98:23 98:25 99:1 99:4 99:5 99:10 99:13 99:24 100:3 100:12 100:15 100:19 101:3 101:8 101:10 102:24 103:17 103:25 104:5 104:5 105:13 105:24 106:13 107:11 108:13 108:16 108:19 109:7 109:11 109:15 110:18 110:21 111:12 111:24 113:12 114:24 115:16 115:17 115:17 116:25 117:17 117:19 119:15 119:18 120:19 120:24 120:24 120:25 123:4 124:6 124:7 124:17 126:7 127:6 127:6 127:17 128:11 128:15 128:18 128:19 129:7 129:17 129:20 130:1 130:12 130:12 130:25 131:2 131:15 131:21 131:25 133:5 133:8 133:13 133:23 133:24 134:5 134:13 134:14 134:24 136:2 137:14 137:21 138:13 140:21 140:21 140:25 141:4 141:12 141:15 141:17 142:12 142:16 142:21 142:22 143:1 143:5 144:2 144:4 145:2 145:16 145:19 145:25 146:3 146:5 146:9 146:13 146:14 147:7 147:21 147:22 147:23 147:24 148:1 148:1 148:9 150:15 150:23 151:3 151:12 151:12 151:14 151:21 152:1 152:2 152:4 153:22 153:25 155:11 156:11 157:13 157:18 159: 159:10 159:13 159:21 159:25 | **way**(60) | 17:16 22:9 23:22 30:7 40:12 40:17 45:3 49:11 50:12 52:17 52:25 53:1 54:10 55:1 55:17 56:7 58:8 59:20 63:14 64:5 67:5 67:22 68:17 77:25 79:22 80:9 81:14 83:1 92:7 98:15 102:12 106:7 107:24 108:5 109:25 112:4 117:16 121:9 129:19 134:2 141:9 143:1 147:25 148:4 152:19 154:5 155:16 160:7 164:19 181:1 185:10 194:3 197:14 197:19 200:7 209:6 209:19 210:5 210:15 216:10 | **were**(173) | 16:22 20:15 22:18 23:17 23:18 24:9 25:25 26:9 27:22 29:15 30:5 32:4 32:16 35:22 36:19 36:20 38:6 40:25 41:13 45:19 46:21 49:1 49:24 51:1 51:2 51:6 51:8 51:10 51:16 52:15 52:23 52:24 52:24 53:2 57:11 57:21 60:13 61:15 64:18 64:1 68:17 70:1 70:20 70:24 71:3 75:6 75:9 75:14 76:17 81:2 81:3 81:25 86:19 91:5 92:24 94:22 96:15 96:24 97:18 100:13 101:6 101:9 101:11 101:19 101:19 102:10 102:12 103:2 104:3 104:11 104:14 104:21 106:2 106:19 107:16 107:20 108:6 110:7 110:7 110:11 110:11 110:13 112:12 113:17 114:19 114:19 114:25 115:2 115:3 115:10 130:14 131:20 133:3 133:13 133:5 133:14 134:10 134:20 134:24 137:21 139:15 141:6 142:3 144:25 146:17 146:19 146:23 148:16 148:20 148:24 152:5 154:4 157:14 157:22 159:15 159:24 160:22 162:17 162:20 162:21 164:4 166:17 168:22 169:3 181:5 186:5 186:13 187:11 187:22 187:24 189:9 190:7 191:8 192:10 192:12 193:3 194:8 194:9 194:23 194:24 194:25 195:4 195:5 195:6 196:20 198:24 199:22 201:3 202:5 202:16 203:3 203:3 204:2 204:5 204:13 204:13 204:19 205:2 205:14 206:4 207:4 207:10 207:11 211:1 214:16 219:10 220:18 | **what**(301) | 18:10 19:5 22:5 23:17 23:18 24:13 25:21 27:3 27:23 28:6 32:20 33:9 34:11 36:25 37:4 38:5 38:13 38:22 42:4 43:6 44:16 46:16 48:15 48:23 48:24 49:4 49:5 49:12 50:12 50:16 50:16 51:1 51:7 53:25 54:6 54:14 54:15 54:19 55:6 55:10 55:25 56:6 56:16 57:4 58:16 59:9 59:23 61:6 63:2 63:18 64:4 64:15 64:16 65:6 65:7 65:11 65:22 66:2 67:7 67:7 67:11 68:10 69:17 70:19 71:2 72:10 72:19 72:22 73:9 73:13 73:22 74:6 75:5 75:22 75:22 75:25 76:1 77:22 77:24 77:25 77:25 78:6 79:10 79:21 82:3 82:11 83:8 89:16 92:24 93:17 94:14 94:21 95:10 95:15 96:10 97:5 97:14 97:23 97:25 98:12 98:14 98:24 98:25 99:7 99:9 99:9 100:6 100:18 101:3 101:3 101:20 101:23 102:14 102:17 102:24 103:11 103:13 103:19 103:20 104:13 104:19 104:20 105:8 105:17 105:20 105:20 106:10 106:18 106:20 107:5 107:7 107:9 107:13 107:19 107:23 108:1 108:1 108:10 109:4 109:7 109:14 110:19 110:25 111:2 111:8 111:11 112:10 112:17 114:8 115:14 115:16 115:22 116:12 116:24 117:3 117:20 119:8 119:9 119:15 119:16 119:18 120:5 120:8 120:15 120:22 120:23 120:25 121:14 122:7 122:8 122:13 122:13 122:22 122:23 123:3 123:5 123:23 124:23 126:12 127:24 128:21 129:1 129:10 129:21 130:1 130:20 130:21 131:5 131:8 131:23 133:4 133:13 134:5 134:17 134:19 134:19 135:9 135:13 136:1 136:6 137:25 140:17 143:4 143:10 143:17 146:6 149:14 150:6 152:9 152:14 152:21 156:4 156:16 159:7 159:12 161:2 161:2 161:3 161:8 161:21 163:7 163:12 163:18 163:20 164:20 165:9 166:10 166:11 167:18 168:15 168:24 168:24 168:25 168:25 168:25 169:2 169:10 169:21 176:22 178:6 179:10 182:24 184:7 185:4 185:11 185:21 185:24 186:3 188:13 188:14 188:16 189:12 189:13 190:3 190:4 190:6 190:8 190:17 190:23 192:25 193:5 193:5 194:16 194:16 194:17 195:20 196:17 197:1 197:22 197:24 198:20 200:8 200:17 201:7 202:22 204:19 205:23 206:3 206:18 207:20 207:21 207:23 208:5 209:17 212:16 215:21 216:5 216:6 217:3 217:13 |
| **was**(110) | 160:1 160:16 160:18 160:19 160:21 160:21 160:22 161:3 161:11 161:1 161:19 162:12 163:13 163:22 164:18 164:19 165:14 165:24 166:6 166:11 166:1 166:22 168:11 168:21 168:24 176:19 177:13 177:20 177:22 178:8 179:7 179:11 179:12 181:9 181:13 182:24 184:22 185:4 185:8 185:22 186:3 186:25 187:19 188:5 188:7 190:7 190:16 190:19 191:3 191:7 191:10 192:13 192:25 193:1 193:1 194:7 194:14 194:15 194:23 194:25 195:7 195:8 195:15 195:17 195:25 196:14 197:17 198:17 198:20 199:16 199:16 199:17 199:25 200:1 200:1 201:23 203:14 204:3 204:11 204:11 204:12 204:25 205:18 206: 206:24 207:12 209:11 209:12 209:17 209:19 209:24 209:25 210:2 210:9 213:6 218:7 218:17 218:19 218:20 218:24 219:1 219:4 219:12 219:23 221:21 223:5 223:6 223:8 223:12 224:2 | **ways**(4) | 62:1 62:2 173:23 200:1 | **weren't**(6) | 48:19 154:16 162:16 190:10 195:4 195:14 | |
| **washington**(1) | 3:33 | **we'd**(4) | 15:9 27:6 61:15 69:6 | **west**(2) | 2:8 5:12 | |
| **wasn't**(16) | 31:19 38:17 39:19 48:5 51:20 51:21 51:21 57:2 66:21 67:11 75:4 81:23 152:16 166:24 194:19 197:20 | **we'll**(6) | 50:1 50:15 54:22 69:11 155:14 180:11 | **we'll**(3) | 91:20 99:23 125:16 211:14 223:14 | |
| **wasn't**(2) | 128:23 167:19 | **we're**(20) | 43:22 44:12 52:6 52:10 62:18 63:23 68:21 82:19 83:2 84:12 140:5 146:20 150:7 152:9 155:13 184:4 184:9 186:20 186:21 195:3 | **we're**(16) | 85:17 86:25 106:7 108:24 108:25 132:4 167:8 167:12 206:9 206:12 210:13 215:19 215:21 217:24 218:11 223:18 | |
| **water**(2) | 151:3 199:20 | **we've**(17) | 15:19 23:5 23:15 32:23 35:23 44:13 54:7 70:21 70:22 77:3 84:10 185:14 194:4 195:12 198:1 201:5 201:8 | **we've**(9) | 85:1 86:6 90:8 113:3 114:21 115:23 120:17 216:20 220:7 | |
| | | **wear**(30) | 35:15 35:20 35:24 60:25 63:2 63:2 63:7 63:10 63:21 64:1 64:12 136:16 136:18 138:20 139:2 139:18 141:12 141:1 141:22 141:24 142:3 143:8 143:20 150:10 162:25 164:5 191:6 193:6 193:12 207:7 | **wharton**(2) | 6:30 11:40 | |
| **weather**(2) | 80:5 80:5 | | | | | **what**(5) | 218:9 218:18 218:19 219:10 |
| **website**(1) | 80:5 | | | | | **what's**(16) | 57:5 61:7 64:11 66:19 76:8 76:9 76:10 82:5 134:8 140:8 145:7 147:16 149:4 180:4 184:19 201:12 |
| **week**(5) | 47:1 101:21 109:14 147:15 187:15 | | | | | | |
| **weekly**(1) | 102:19 | | | | | **whatever**(5) | 16:14 58:3 155:17 208:3 210:18 |
| **weeks**(12) | 17:13 65:1 79:6 82:13 82:14 108:24 110:2 150:22 220:18 220:20 222:6 222:15 | | | | | **whatsoever**(2) | 112:21 217:17 |
| **weigh**(3) | 41:16 157:19 165:12 | | | | | **what's**(6) | 123:7 128:24 167:17 206:17 218:1 218:17 |
| **weighed**(1) | 166:14 | | | | | | |
| **weighing**(1) | 166:21 | | | | | **whayne**(1) | 108:8 |
| **weight**(7) | 80:22 80:22 80:25 167:19 167:20 168:16 188:7 | | | | | **when**(86) | 33:10 39:16 45:3 45:21 46:19 47:8 49:3 49:5 50:10 50:12 50:13 51:19 52:5 53:9 53:23 54:13 55:7 55:11 55:12 55:18 55:18 55:19 55:21 57:6 57:7 58:2 58:4 59:7 59:10 63:9 63:15 64:10 64:10 64:22 67:24 73:13 73:22 74:7 74:8 74:9 81:19 95:2 101:2 101:19 101:19 103:5 107:7 110:7 110:11 114:17 116:23 119:13 124:5 124:13 130:18 137:13 139:12 140:4 142:9 143:20 144:8 148:12 149:15 150:5 150:6 155:9 155:10 155:20 160:3 161:20 162:12 172:22 175:3 180:23 183:16 184:16 185:5 185:13 186:24 188:25 193:19 205:2 207:6 207:10 217:1 217:18 |
| **weighted**(1) | 93:18 | | | | | | |
| **weighting**(1) | 179:24 | | | | | | |
| **weightings**(1) | 80:16 | | | | | | |
| **weil**(2) | 5:4 10:20 | | | | | | |
| **weiss**(2) | 6:30 11:40 | | | | | | |
| **weitman**(1) | 7:36 | | | | | | |
| **well**(104) | 15:16 25:14 27:18 36:10 43:3 48:17 51:7 51:9 53:21 54:9 54:18 55:6 55:14 60:6 61:7 62:14 62:22 63:13 64:5 65:19 65:19 67:7 68:25 69:1 70:8 73:11 75:19 79:15 82:19 83:4 83:10 84:12 86:21 86:25 87:5 92:21 95:16 95:23 95:23 97:18 118:14 121:1 123:7 125:7 129:9 130:2 130:20 132:15 133:13 134:20 135:17 139:12 140:22 144:4 144:8 146:11 149:3 152:11 153:10 153:13 154:10 154:20 156:2 156:18 158:15 163:12 165:21 166:9 168:24 169:9 169:21 174:20 177:15 183:7 188:22 192:15 195:12 196:22 196:23 197:7 197:10 197:13 199:3 201:11 204:16 205:1 206:21 207:1 208:3 208:15 208:21 212:20 212:22 213:14 218:5 218:11 219:12 220:13 | | | | | | |
| **wells**(2) | 9:26 14:4 | | | | | | |
| **went**(9) | 27:19 38:8 65:2 73:10 94:20 103:15 126:19 192:23 206:3 | | | | | **whenever**(3) | 53:4 53:11 55:15 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| where(93) 18:2 21:15 22:22 23:17 23:18 26:2 27:22 28:11 28:13 34:3 36:22 39:25 40:1 40:2 40:6 40:20 42:11 45:14 45:14 47:2 49:4 51:4 54:5 62:9 65:8 66:9 66:21 67:15 67:15 68:15 70:14 73:2 74:11 76:13 82:8 87:15 89:6 96:3 98:17 107:1 111:24 113:22 116:7 121:16 123:16 123:1 123:19 130:22 137:24 139:21 142:6 142:15 142:25 144:5 147:10 149:7 152:4 152:7 153:7 153:15 159:3 160:11 164:5 164:6 166:3 169:15 177:5 177:20 177:24 178:10 183:5 183:15 184:4 185:17 188:12 189:14 191:15 192:23 195:8 196:6 197:3 199:5 199:8 206:20 209:22 212:21 213:4 213:10 217:14 218:1 219:20 219:21 219:2 | | why(54) 16:1 16:17 17:6 25:19 37:3 45:15 51:3 58:16 59:12 59:15 66:12 66:12 68:1 69:19 69:22 80:15 81:19 83:3 95:4 108:2 116:19 124:14 125:23 128:20 129:13 131:19 131:20 131:21 131:24 132:10 133:12 146:9 154:13 154:18 166:25 167:9 167:16 167:18 167:19 173:20 182:15 186:12 190:20 192:3 195:3 196:3 196:3 196:22 200:25 201:18 202:17 205:8 210:6 215:4 | | with(255) 15:17 16:9 16:20 17:8 17:21 18:2 18:24 20:14 20:18 21:9 23:23 24:6 25:2 26:3 26:12 26:21 28:22 29:1 29:24 32:20 33:6 33:21 34:23 35:21 37:22 38:20 38:21 38:22 40:7 40:18 41:19 42:22 43:24 45:13 45:25 47:20 48:18 48:21 48:22 49:6 50:21 50:25 52:24 54:20 55:2 55:21 56:1 56:11 56:15 58:2 59:5 59:18 60:20 60:22 61:24 62:4 62:8 62:20 64:1 64:2 64:14 66:13 66:17 66:24 69:24 71:2 72:11 72:22 73:5 74:15 74:17 74:18 75:1 75:5 75:5 75:6 75:23 76:1 76:5 76:11 76:13 77:4 77:8 77:17 77:18 78:3 79:4 79:8 80:2 81:3 81:8 86:11 90:17 91:16 94:15 94:21 94:25 101:1 101:14 101:21 103:3 104:5 105:11 108:23 110:25 111:13 111:16 112:18 113:2 113:19 116:4 116:5 116:8 116:9 116:21 119:4 120:5 120:7 121:16 124:10 124:18 125:13 125:17 125:20 125:23 126:4 126:19 127:4 128:25 129:1 129:6 129:17 129:22 131:8 131:16 132:19 133:19 133:22 135:5 135:6 136:13 138:5 139:10 139:11 141:13 142:4 145:15 146:7 146:24 147:5 147:15 149:16 150:3 150:5 150:24 152:6 153:21 155:4 155:14 155:19 156:20 158:20 159:3 159:5 159:10 160:1 160:15 161:23 162:6 165:17 165:19 166:1 167:8 168:24 169:9 170:5 170:9 170:14 171:8 173:5 174:10 177:9 178:9 179:5 179:18 179:20 179:23 180:19 181:2 181:10 181:16 183:1 183:8 183:9 183:22 185:18 185:19 186:7 188:6 188:10 190:1 190:4 191:12 191:17 192:4 192:7 193:9 194:7 194:18 194:20 196:1 196:7 196:9 196:11 196:21 197:9 197:9 198:3 199:17 200:2 200:22 202:4 202:15 203:12 204:1 205:16 205:17 205:17 205:18 209:1 209:2 209:9 209:9 210:7 210:24 211:3 213:12 214:19 215:2 216:13 217:6 217:8 217:21 220:1 220:10 220:23 221:1 221:5 221:7 221:8 221:15 221:22 223:6 | | worry(2) 34:15 222:18 worse(6) 38:10 63:21 99:6 101:12 107:12 123:18 |
| whereupon(1) 224:2 whether(55) 20:8 21:12 21:22 22:15 28:22 38:7 38:9 44:15 46:13 57:11 57:12 60:25 60:25 61:16 72:20 81:20 104:10 108:14 109:24 110:5 114:8 116:9 128:13 128:15 135:24 136:16 137:24 138:9 141:16 143:2 151:11 155:20 156:6 156:9 159:21 161:18 161:19 162:21 162:23 165:14 168:9 178:4 178:19 179:15 200:6 200:6 206:9 206:13 206:13 207:16 208:16 210:21 212:3 212:6 217:18 | | wide(1) 75:14 widely(2) 116:4 139:11 wild(1) 10:25 wilderotter(1) 177:18 wilderotter's(1) 150:24 will(92) 15:21 16:19 17:4 17:20 18:6 35:14 36:5 37:8 37:23 40:15 43:12 44:23 45:8 46:14 54:16 58:6 59:16 62:25 65:14 70:8 71:11 84:1 84:17 85:23 85:24 88:19 93:22 93:25 94:19 95:10 95:15 96:13 97:10 99:9 105:3 121:20 122:8 124:22 126:10 132:2 144:23 147:20 155:8 156:2 161:9 169:23 170:1 170:6 170:9 170:11 170:12 170:16 170:18 170:19 170:23 171:1 171:2 171:5 171:7 171:19 172:6 172:14 172:18 173:7 174:9 174:12 175:24 176:5 179:23 186:17 186:18 187:3 189:19 201:1 203:12 212:5 213:7 213:11 214:15 214:22 216:3 220:19 220:25 223:20 224:1 | | without(19) 31:1 52:14 52:14 56:16 56:17 70:19 71:13 73:8 80:3 83:11 83:12 100:1 123:12 124:22 162:24 177:3 205:16 207:9 210:13 witness(9) 37:22 67:4 120:21 131:12 131:17 131:18 160:16 160:22 199:24 | | worst(1) 96:13 worst-possible(1) 100:3 worth(15) 21:6 37:12 50:12 53:13 61:9 63:4 63:5 89:15 89:16 132:20 175:6 176:1 202:14 213:4 218:7 worthwhile(1) 167:5 would(194) 16:13 16:21 17:18 20:8 20:10 20:14 21:23 22:1 24:12 26:7 26:8 26:10 26:11 26:22 27:2 27:21 27:23 28:1 28:2 29:15 29:23 30:24 31:14 32:17 32:20 35:11 35:22 36:7 40:4 41:2 41:3 41:10 41:22 43:24 46:15 48:15 48:17 48:20 48:24 49:10 49:13 50:18 51:9 51:11 57:17 57:23 58:14 58:15 58:18 59:14 61:16 62:23 63:24 67:1 67:25 70:2 71:19 73:19 75:25 76:1 77:24 77:25 78:2 82:12 83:8 83:22 86:5 88:12 89:6 90:11 90:13 90:16 91:13 98:7 101:17 102:19 102:21 106:2 106:8 106:13 107:15 107:19 109:4 111:22 111:22 112:23 112:23 113:7 113:17 113:22 114:16 115:20 118:3 118:6 118:18 118:21 122:23 125:8 125:25 132:16 135:21 135:24 136:7 136:11 136:14 136:23 137:19 138:6 138:7 138:16 138:17 138:20 138:24 138:24 138:25 141:16 141:18 141:25 142:5 142:23 144:13 148:10 154:6 157:8 157:19 158:12 159:7 162:21 162:23 163:14 163:20 163:25 164:6 164:12 164:14 165:9 166:4 167:9 168:18 169:3 171:14 176:7 176:11 176:17 177:9 178:21 180:1 180:7 180:14 181:3 181:5 181:21 182:11 184:18 186:16 188:18 189:22 190:6 190:11 190:13 191:20 192:9 193:6 193:11 196:12 196:21 197:3 197:5 198:18 199:14 201:9 201:16 201:18 202:19 202:19 206:4 206:7 207:6 208:10 208:14 208:22 208:25 209:13 210:8 210:25 211:10 213:21 214:4 217:8 218:4 218:10 218:12 219:2 221:8 |
| which(101) 21:10 22:4 22:11 23:3 25:5 31:20 32:22 33:8 35:21 36:21 41:10 42:4 42:24 46:13 47:23 51:12 52:4 54:22 56:1 59:19 59:20 60:12 60:23 63:7 65:21 66:18 66:20 67:14 72:4 72:12 73:24 74:5 74:14 80:1 80:16 81:17 81:25 81:25 82:4 82:12 82:13 88:19 88:22 88:23 92:25 93:15 93:15 93:19 93:22 101:6 110:21 111:20 112:22 120:18 120:24 121:11 124:5 129:1 134:13 142:20 143:7 144:20 150:1 152:17 157:12 159:5 165:11 165:12 166:22 167:2 167:4 169:1 171:23 171:24 172:5 173:1 176:3 178:19 179:14 185:20 187:8 194:5 195:21 198:16 200:3 203:14 206:7 207:2 208:16 209:21 209:24 210:2 210:15 214:15 215:7 215:16 218:3 218:5 219:10 219:13 | | william(1) 4:12 willing(3) 68:17 97:3 157:22 willingness(2) 124:2 125:3 wilmer(1) 10:36 wilmington(16) 1:12 1:35 2:9 2:26 2:44 3:15 3:39 4:4 4:14 4:36 5:13 5:25 5:38 12:43 15:1 83:10 wilson(1) 8:30 win(21) 19:15 25:24 26:14 26:25 27:1 27:7 29:12 29:17 30:14 33:24 34:17 36:1 36:25 38:9 44:12 60:3 60:6 67:20 88:12 193:22 193:23 | | withdrawal(1) 223:4 within(13) 25:15 43:3 43:19 73:11 92:13 109:24 117:22 138:21 145:13 163:13 163:15 166:25 206:25 | |
| whichever(3) 158:7 182:23 197:19 while(15) 30:5 32:3 42:5 44:13 46:4 59:20 80:19 83:20 90:10 147:24 154:12 174:24 178:14 178:24 181:8 whistling(1) 24:7 white(9) 9:26 14:4 | | window(1) 66:19 wineman(1) 13:40 winner(1) 26:1 winners(1) 135:16 winning(9) 24:16 24:17 27:15 28:7 30:9 35:18 36:8 38:7 38:10 | | | | wouldn't(3) 19:15 20:12 78:22 would've(2) 85:6 121:1 wounds(2) 178:16 178:24 write(1) 87:8 writes(2) 105:17 126:16 writing(6) 99:16 105:14 105:21 109:2 125:14 127:3 |
| whittman(1) 13:34 177:15 181:10 210:1 who(45) 24:12 37:24 41:25 42:12 43:23 43:25 50:24 51:1 52:24 52:24 64:10 64:16 68:16 79:14 87:20 98:8 98:8 103:9 108:19 112:12 126:7 127:13 132:25 135:5 139:17 139:21 140:2 141:1 141:18 145:9 145:16 146:19 146:23 147:22 148:16 149:9 150:4 157:5 172:9 172:21 177:18 182:5 182:6 213:22 214:22 | | wired(1) 48:5 wires(1) 11:7 wisdom(1) 131:10 wisely(1) 211:12 | | witnesses(4) 34:21 80:10 102:25 145:16 woefully(1) 92:6 womble(1) 5:22 wondered(1) 152:12 wondering(1) 67:18 wong(1) 13:44 won't(2) 86:21 221:24 woods(1) 13:17 word(15) 34:2 66:11 66:13 67:19 71:25 89:24 91:7 158:7 163:16 163:18 180:17 180:18 180:24 195:18 216:14 | | written(5) 101:10 114:6 129:9 149:7 wrong(39) 16:23 16:25 18:1 32:19 37:16 38:18 39:9 39:24 42:3 44:12 49:20 57:19 57:20 74:18 74:22 79:12 86:8 86:8 86:9 86:9 119:24 121:8 121:9 150:2 150:5 152:25 164:12 164:14 165:1 168:23 168:24 169:21 185:8 189:14 190:11 194:24 202:10 202:11 215:5 |
| who's(2) 28:13 194:11 whole(31) 16:23 19:16 27:12 30:12 30:20 30:21 32:11 33:24 34:24 36:19 39:8 40:9 40:13 45:11 45:12 47:20 64:15 75:7 123:18 148:8 183:9 183:12 185:13 194:22 195:11 196:8 198:11 198:22 203:16 208:13 219:18 | | | | words(13) 15:14 97:4 107:4 118:24 126:2 133:9 160:13 178:22 187:18 189:9 207:25 210:23 212:22 work(11) 56:14 62:4 74:18 91:1 98:9 166:17 171:16 172:14 197:14 202:1 202:1 | | wrote(2) 124:13 125:24 www.diazdata.com(1) 1:50 yeah(2) 47:6 62:17 year(10) 64:22 90:9 99:18 102:12 102:13 102:19 113:12 114:10 216:7 216:9 |
| wholly(1) 75:20 whose(3) 150:8 154:11 205:12 | | | | working(4) 69:25 110:14 177:1 223:19 works(8) 60:14 60:15 83:23 83:24 178:5 183:10 183:10 183:12 world(6) 52:10 155:1 162:22 163:22 164:16 165:17 | | years(13) 17:1 46:3 46:10 47:8 83:2 95:9 96:14 96:24 106:9 169:1 182:13 182:13 186:22 yearly(1) 126:15 yep(1) 132:22 yes(8) 17:14 27:6 27:6 52:20 65:1 86:23 100:14 118:10 yet(12) 52:1 52:25 82:22 102:12 147:20 152:16 152:17 154:13 163:3 177:4 184:24 199:16 yields(1) 42:21 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**york**(8) 2:37 3:7 3:25 4:24 4:43 5:7 5:31 96:18

**you**(301) 15:13 16:3 16:23 17:6 17:23 20:5 20:5 20:8 20:16 21:2 21:3 21:12 21:22 21:25 22:8 22:16 23:22 23:23 24:24 26:14 26:15 26:17 26:20 26:20 27:9 27:10 27:11 28:23 28:24 28:25 29:7 29:16 29:19 30:8 30:9 30:12 30:15 30:18 31:9 31:11 32:2 32:7 32:8 32:9 32:13 32:21 33:6 33:8 33:23 34:1 34:3 34:6 34:7 34:8 34:15 34:17 34:23 35:6 35:11 36:13 36:22 36:23 36:24 37:14 38:8 38:9 38:9 38:24 38:25 39:7 39:24 40:7 40:9 40:9 40:10 40:12 41:14 41:20 41:24 42:4 43:4 43:15 44:2 44:3 44:6 46:16 46:18 47:14 48:6 48:8 48:19 48:24 49:13 50:7 51:25 52:6 52:13 53:5 53:21 54:11 54:13 54:22 54:22 55:16 55:17 60:11 60:18 61:8 62:19 63:10 63:15 63:20 63:24 64:21 65:2 68:20 69:8 69:10 69:15 69:17 69:24 70:2 70:20 71:1 71:11 71:14 71:15 73:13 73:22 73:22 73:23 74:7 74:9 74:9 75:5 75:17 76:13 76:14 76:24 77:8 77:16 77:23 77:24 77:25 78:1 78:6 79:21 82:5 82:16 82:18 84:1 84:4 84:25 84:25 85:5 85:15 86:3 86:14 86:17 87:15 87:18 87:18 87:20 87:22 87:24 88:2 88:4 88:4 88:5 88:11 88:22 89:22 89:24 90:18 91:8 91:11 92:16 94:2 94:19 99:15 100:16 103:5 104:10 106:11 107:13 108:10 108:19 115:7 115:24 116:2 118:18 122:8 122:14 130:4 132:9 132:10 132:10 132:11 133:21 134:25 135:9 135:17 135:18 136:1 136:2 136:7 138:12 138:18 138:23 140:20 142:4 143:12 143:17 143:19 144:21 145:17 145:23 146:8 146:12 147:9 147:5 147:8 147:17 148:2 148:3 148:10 148:11 148:13 148:19 149:2 149:3 149:4 149:5 149:7 149:21 149:25 150:24 151:9 151:15 151:19 152:8 152:12 152:18 152:22 153:15 153:16 153:20 154:3 154:4 154:11 154:13 154:16 154:18 154:20 155:2 155:7 155:14 155:23 156:3 156:4 156:17 158:2 158:7 158:9 158:10 158:21 160:3 160:18 160:19 161:20 162:16 163:9 164:1 165:4 165:6 165:10 165:23 166:5 167:2 167:4 167:9 167:22 168:1 168:7 168:23 169:3 169:6 169:8 169:10 169:21 173:13 173:14 176:22 178:20 179:16 179:24 179:25 183:4 183:17

**you**(110) 185:1 185:5 185:8 185:12 185:13 185:23 186:9 186:12 186:15 186:17 186:19 187:3 187:4 187:14 187:18 187:25 188:5 188:8 188:13 188:15 188:23 189:1 189:2 189:7 190:15 191:15 191:24 191:25 193:3 193:14 193:17 193:18 193:18 193:19 193:19 193:24 193:25 194:1 194:16 194:16 195:10 196:15 196:15 196:21 197:3 198:1 198:7 198:8 198:13 198:25 199:2 199:9 199:25 200:5 202:21 203:6 203:6 203:15 203:17 203:22 203:23 204:2 205:8 206:3 206:20 207:1 208:4 208:10 208:11 208:14 208:22 208:24 208:25 209:5 209:13 211:9 211:17 211:20 212:2 212:3 212:5 212:5 213:14 213:25 214:21 216:7 216:15 217:1 217:1 217:5 217:21 217:24 218:22 219:8 220:4 220:6 220:11 220:18 221:13 221:15 221:17 221:18 221:19 222:2 222:14 222:17 222:20 222:21 223:11 223:25

**you'd**(5) 31:21 34:25 49:13 71:12 74:20
**you'll**(11) 59:8 61:21 78:16 80:1 146:14 160:17 165:10 173:24 188:16 193:20 202:11

**you're**(28) 26:5 26:17 30:19 35:3 36:9 50:18 55:15 59:11 63:11 63:12 63:13 63:16 63:22 70:17 135:8 138:8 149:12 152:18 152:23 152:24 152:25 153:8 153:8 185:15 187:15 188:25 191:14 197:11

**you've**(13) 35:4 35:16 69:8 70:15 84:3 184:16 150:1 176:3 176:14 191:13 196:10 196:13 197:22

**young**(1) 2:4

**your**(301) 15:4 15:5 15:8 15:13 16:7 16:12 16:16 17:2 17:10 17:19 18:5 18:15 19:3 22:3 22:4 22:14 22:19 22:24 23:9 23:15 23:20 24:3 24:7 24:19 24:22 25:11 25:14 26:4 26:15 26:20 27:3 27:17 28:8 28:17 29:18 30:4 30:11 30:18 30:22 31:7 32:7 32:13 32:19 33:1 33:6 33:23 34:2 34:6 34:14 34:23 35:3 35:15 35:21 36:14 36:16 37:2 37:19 38:7 38:21 39:2 39:6 39:10 39:14 40:4 40:12 40:17 41:6 41:18 42:8 42:20 43:5 43:8 43:16 43:21 43:22 44:3 44:4 45:11 46:16 46:25 48:19 62:19 67:13 68:18 68:23 69:15 69:17 70:7 71:17 82:15 82:20 83:4 83:25 84:8 84:15 84:20 84:23 85:1 85:2 85:14 86:3 86:7 86:8 86:10 86:17 87:1 87:9 87:16 87:20 88:6 88:15 89:4 89:9 89:13 89:19 89:19 90:24 91:11 92:7 92:13 92:15 92:22 94:2 94:5 94:6 94:8 94:9 94:11 94:16 94:19 94:25 95:2 95:7 95:10 95:14 95:15 95:22 96:2 96:6 96:8 96:10 96:17 96:20 97:1 97:7 97:11 97:16 97:20 97:24 98:2 98:6 98:10 98:15 98:19 98:21 99:3 99:7 99:9 99:11 99:15 99:18 99:23 100:2 100:6 100:22 101:1 101:5 101:9 101:12 101:15 101:16 101:20 102:1 102:7 102:14 102:18 102:20 102:23 102:24 103:1 103:5 103:12 103:19 103:25 104:17 104:25 105:4 105:8 105:11 105:18 105:20 105:23 106:2 106:5 106:7 106:10 106:14 106:21 106:25 107:8 107:13 107:17 107:18 107:23 108:2 108:7 108:10 108:12 108:18 108:21 109:1 109:6 109:15 109:18 109:22 109:25 110:3 110:9 110:17 110:23 111:5 111:8 111:12 111:17 111:21 112:8 112:10 112:13 112:1 112:19 113:1 113:3 113:9 113:13 113:20 113:23 113:25 114:1 114:6 114:14 114:21 114:23 115:1 115:14 115:17 115:19 115:21 115:23 115:25 116:2 116:6 116:11 116:14 116:18 116:22 117:6 117:9 117:9 117:13 117:17 117:18 118:3 118:24 119:1 119:3 119:8 119:11 119:14 119:19 119:23 119:25 120:8 120:8 120:11 120:18 120:22 121:2 121:7 121:11 121:15 121:18 121:20 122:1 122:4 122:7 122:8 122:11 122:13 122:21 122:23 123:2 123:7

**your**(262) 123:12 123:16 123:21 124:3 124:4 124:20 124:23 125:1 125:4 125:12 125:21 126:2 126:6 126:9 126:13 126:17 126:23 127:5 127:8 127:10 127:13 127:17 127:22 128:3 128:7 128:12 128:12 128:17 128:25 129:1 129:6 129:11 129:19 129:22 130:5 130:7 130:9 130:20 130:22 130:24 131:3 131:5 131:8 131:11 131:11 131:13 131:18 131:19 131:20 131:23 132:7 132:9 132:16 133:14 134:3 134:9 134:19 134:23 135:4 135:7 135:12 135:13 136:4 136:19 137:2 137:5 137:13 137:19 137:23 138:1 139:3 139:10 139:18 139:20 140:1 140:9 140:15 140:25 141:8 141:25 142:9 142:20 143:3 143:5 143:12 144:2 144:16 144:19 144:24 145:6 146:11 146:20 147:3 147:17 147:18 147:21 148:8 148:12 148:22 149:1 149:10 149:17 149:24 150:9 150:14 151:2 151:4 151:8 151:19 152:5 152:10 153:5 153:20 154:9 154:25 155:5 155:5 155:11 155:17 155:21 156:1 156:3 156:22 158:6 158:15 159:4 160:4 160:10 160:25 161:9 161:20 162:9 162:25 163:2 164:10 165:7 165:23 166:20 167:22 167:25 168:9 168:11 168:14 169:7 169:17 169:24 170:2 173:13 173:15 173:18 173:24 174:9 174:25 175:13 176:1 176:14 176:18 176:21 178:3 178:17 179:3 179:11 179:23 180:1 180:6 180:9 180:16 184:13 184:15 185:2 185:3 185:9 185:13 186:10 186:17 187:19 187:21 188:22 189:10 189:21 190:3 190:12 190:17 190:21 191:2 191:9 191:11 191:20 191:24 192:1 192:19 193:4 193:9 193:16 194:1 194:2 197:22 198:3 198:7 198:9 199:4 201:21 202:21 203:22 203:25 206:12 210:16 210:16 211:7 211:10 211:14 212:2 212:25 213:8 213:13 213:19 214:1 214:7 214:10 214:13 214:19 214:21 214:23 215:3 215:6 215:11 215:15 215:18 215:19 215:21 216:1 216:3 216:4 216:6 216:9 216:13 216:15 217:10 218:2 218:15 218:24 219:4 220:1 220:5 220:7 220:18 220:23 221:11 221:13 221:14 221:16 221:18 221:20 221:21 221:23 222:1 222:4 222:20 223:1 223:11 223:15 223:24

**yourself**(4) 33:8 59:8 132:10 196:22
**yourselves**(1) 213:17
**you'll**(4) 85:2 85:22 111:17 218:6
**you're**(1) 209:6
**you've**(3) 88:6 88:7 112:7
**zabel**(1) 9:4
**zatz**(1) 14:5
**zell**(19) 74:21 124:16 124:18 124:19 124:21 133:19 133:20 133:23 146:20 147:4 147:7 147:15 147:20 148:1 148:4 209:10 221:6 221:21 221:25

**zell's**(3) 74:17 74:24 147:1
**zell/egi-trb**(1) 5:16
**zell's**(4) 124:1 124:6 124:11 221:8
**zensky**(42) 4:19 76:14 84:20 84:21 85:1 85:20 86:23 86:25 87:9 89:8 132:3 132:7 132:8 132:15 132:22 137:19 145:6 149:9 149:12 153:2 153:5 153:13 153:19 154:2 154:23 154:25 156:1 167:22 180:9 180:9 190:2 191:3 192:2 192:8 192:15 193:2 193:14 211:10 211:17 211:17 216:14 216:15
**zensky's**(1) 192:22
**zero**(3) 59:2 89:23 90:3
**zeroed**(1) 219:21
**zloto**(1) 8:6
**zuckerman**(5) 3:28 6:18 15:6 153:22 185:3
**'wear'**(1) 206:21
**"another**(1) 109:14
**"apply**(1) 208:9
**"bankruptcy**(1) 204:20
**"beat**(1) 211:24
**"borderline**(1) 94:17

**"but**(1) 205:16
**"consistency**(1) 109:4
**"gotcha**(1) 206:20
**"likely**(1) 112:23
**"one**(1) 97:4
**"real**(1) 116:25
**"scary"**(1) 125:19
**"substantially**(1) 107:4
**"the**(3) 93:1 114:7 127:20
**"trash**(1) 125:25
**"unknown**(4) 117:25 118:5 118:13 118:20
**"unlikely**(1) 94:22
**"very**(3) 105:19 124:11 126:12
**"wear"**(2) 206:24 216:17
**"we're**(1) 210:12
**"wrenching**(1) 96:22