## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Requested Hearing Date: October 19, 2011 at 2:00 p.m. ET**[2] |
| | **Proposed Objection Deadline: October 18, 2011 at 4:00 p.m. ET** |

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 AUTHORIZING TRIBUNE COMPANY TO ENTER INTO IRS PENSION CLAIM SETTLEMENT AND TO PERFORM ALL OBLIGATIONS THEREUNDER

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Concurrently with the filing of this Motion, the Debtors are filing the Motion to Set Expedited Hearing and Shorten Notice Period With Respect to Debtors' Motion for An Order Pursuant to Sections 105(a), 362(d), and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 Authorizing Tribune Company to Enter Into IRS Pension Claim Settlement and to Perform All Obligations Thereunder, requesting that this Court set a hearing on the Motion on October 19, 2011 at 2:00 p.m. (Eastern Time).

Tribune Company ("Tribune"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing Tribune to enter into a settlement with the United States Department of the Treasury, Internal Revenue Service ("IRS") resolving certain pension-related tax claims (the "IRS Pension Claim Settlement"), on the terms set forth in the Closing Agreement attached hereto as Exhibit A;[3] and (ii) authorizing Tribune to perform all obligations thereunder. In support of this Motion, Tribune relies on the Declaration of Donald J. Liebentritt, Chief Restructuring Officer of Tribune Company (the "Liebentritt Declaration"), which is attached hereto as Exhibit B. In further support of this Motion, Tribune respectfully states as follows:

## INTRODUCTION[4]

1.      On May 2, 2011, the Court, at the Debtors' request, entered an order appointing the Honorable Kevin Gross as mediator to conduct a non-binding mediation concerning the resolution of certain claims, causes of action, and related matters arising from alleged violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in connection with the Tribune Employee Stock Ownership Plan and the Tribune Employee Stock Ownership Trust (individually or collectively, the "ESOP"), an employee retirement benefit plan sponsored by Tribune (the "ERISA Mediation"). (See Order Appointing Mediator for Mediation of Certain ERISA-Related Claims, Docket No. 8815.)

---

[3] The Closing Agreement attached hereto as Exhibit A is in materially final form. An executed version of the Closing Agreement will be filed with this Court as an amended exhibit.

[4] Capitalized terms used but not defined in the Introduction are defined in the text below.

46429/0001-7956852v1

2.      On August 19, 2011, the Debtors filed the Debtors' Motion For An Order
Pursuant to Sections 105(a), 362(d), and 363 of the Bankruptcy Code and Bankruptcy Rules
9019 and 4001(a)(3) (I) Authorizing Debtors to Enter into ERISA Claim Settlement and to
Perform all Obligations Thereunder, (II) Modifying the Automatic Stay to the Extent Necessary
to Allow Insurers to Pay Portions of the Settlement Amount, and (III) Granting Related Relief
(Docket No. 9681) (the "ERISA Claim Settlement Motion").  As described in detail in the
ERISA Claim Settlement Motion, the parties to the ERISA Mediation reached a settlement (the
"ERISA Claim Settlement") resolving all of the claims that were the subject of the ERISA
Mediation (collectively, the "ERISA-Related Claims"), with the exception of: (i) the IRS's
asserted priority claim for excise taxes under section 4975 of the Internal Revenue Code in an
amount totaling $37,500,000, together with interest accrued thereon, as set forth in Claim No.
6254 filed in these chapter 11 cases (such excise tax and accrued interest, collectively, the
"Pension Claim"), (ii) IRS claims against the ESOP for Unrelated Business Income Tax
("UBIT") on its share of Tribune's S-corporation taxable income, and (iii) all other claims of the
IRS against Tribune and the ESOP that derive from allegations that Tribune and/or the ESOP
engaged in prohibited transactions under ERISA when Tribune sold shares to the ESOP and
made loans to the ESOP as part of the Leveraged ESOP Transactions[5] that returned Tribune to
private ownership in 2007 (collectively, the "ESOP Tax Issues").

3.      As a result of extensive negotiations, the IRS, Tribune, and the ESOP have
now reached a settlement, embodied in the Closing Agreement attached hereto, resolving the
ESOP Tax Issues.  Specifically, the IRS Pension Claim Settlement resolves all ESOP Tax Issues
in consideration for a payment by Tribune to the IRS in the amount of $7 million in full

---

[5] A detailed summary of the "Leveraged ESOP Transactions" appears in the Joint Disclosure Statement and
Exhibits filed on December 17, 2010 (Docket No. 7232).

satisfaction of the Pension Claim. The Closing Agreement provides that the IRS will not assert, seek to assess, or collect any claims against Tribune arising under section 4975 of the Internal Revenue Code, 26 U.S.C. § 4975, in connection with Tribune's sale of 8,928,571 shares to the ESOP on April 1, 2007 or Tribune's loan of $250,000,000 to the ESOP, as asserted in Claim No. 6254 filed in these chapter 11 cases or otherwise. The Closing Agreement further provides that the IRS will not assert, seek to assess, or collect any claims that may be asserted against the ESOP for the taxable periods commencing January 1, 2007 and ending on December 31, 2012 for UBIT attributable to the ESOP's ownership of Tribune Company shares or attributable to the ESOP's receipt of settlement proceeds pursuant to the ERISA Claim Settlement. The parties have agreed that the IRS Pension Claim Settlement is not considered an admission or suggestion of liability with respect to any of the claims compromised therein.

4.    As set forth in more detail below, the IRS Pension Claim Settlement resolves a major outstanding claim against Tribune on terms very favorable to the Debtors. The $37.5 million Pension Claim is asserted by the IRS as an unsecured priority claim against Tribune, pursuant to section 4975 of the Internal Revenue Code, which provides for a tax on the amount involved in a prohibited transaction under ERISA. Although the Pension Claim is disputed and the Debtors believe that this claim would be subordinated under section 510(b) of the Bankruptcy Code, the potential exposure is sizable. Consequently, a settlement payment by Tribune of $7 million reasonably accounts for the risks, time, and costs associated with litigating the liability asserted by the IRS in the Pension Claim and the treatment of such claim under the Bankruptcy Code. The $7 million payment by Tribune to the IRS is also reasonable in light of the fact that, under the ERISA Claim Settlement, the $3.2 million claim allowed to the Department of Labor ("DOL") in settlement of the DOL's claims under section 502(l) of ERISA

4

shall be reduced dollar-for-dollar by any payment made by or on behalf of Tribune to the IRS to

settle or satisfy any tax obligations it may have under section 4975 of the Internal Revenue Code

relating to the ESOP Tax Issues.  Additionally, the Debtors and the ESOP avoid the imposition

of any further tax liability on the ESOP arising from allegations that Tribune and/or the ESOP

engaged in prohibited transactions under ERISA in connection with the Leveraged ESOP

Transactions.  Finally, the ERISA Claim Settlement provides, in relevant part, that the settlement

embodied therein is conditional upon Tribune reaching a settlement of the ESOP Tax Issues with

the IRS, on terms acceptable to Tribune.  Approval of this Motion is thus essential to preserving

the settlement struck in the ERISA Claim Settlement so that the Debtors may receive all of the

benefits of the resolution of all of the ERISA-Related Claims.  Accordingly, the IRS Pension

Claim Settlement constitutes a reasonable exercise of the Debtors' business judgment, is in the

best interests of their estates and creditors, and should be approved by this Court.

## STATUS OF THE CASE AND JURISDICTION

5.     On December 8, 2008, Tribune and most of its wholly-owned subsidiaries

each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, except

Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC, which filed on October

12, 2009 (each date, as applicable, the "Petition Date").  The Debtors' chapter 11 cases are

jointly administered for procedural purposes only.

6.     The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On December 18, 2008, the United States Trustee appointed the official

committee of unsecured creditors (the "Committee").  The Debtors have provided prior notice of

the filing of this Motion to counsel for the Committee and counsel for the other co-proponents of

5

the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries

Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital

Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (As Modified

April 26, 2011) (Docket No. 8769) (the "DCL Plan").

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought

herein are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

### FACTUAL BACKGROUND TO THE MOTION

9.      The factual background concerning the formation of the ESOP, the

allegations that Tribune and/or the ESOP engaged in prohibited transactions under ERISA in

connection with the Leveraged ESOP Transactions, and the ERISA Mediation may be found in

the ERISA Claim Settlement Motion and the Declaration of Donald J. Liebentritt in support

thereof.  (See Docket No. 9681.)  The factual background contained in those pleadings are

incorporated herein by reference.

### A.      The ESOP Tax Issues

10.      The IRS has filed a proof of claim against Tribune, which was assigned

Claim No. 6254 by the Court-appointed claims agent, relating to alleged tax underpayments in

the aggregate amount of $351,688,793.98.[6]  That amount includes the Pension Claim, which is

asserted by the IRS as an unsecured priority claim (pursuant to section 507(a)(8) of the

Bankruptcy Code) in the amount of $37.5 million (plus accrued interest) for liability under

---

[6] The Pension Claim is a component part of Claim No. 6254 against Tribune, which is asserted in the total aggregate amount of $351,688,793.98.  Claim No. 6254 also includes certain asserted liabilities for corporate income and payroll taxes.  The Debtors and the IRS have engaged in independent substantive discussions regarding these additional component claims, and nothing herein is intended to or shall affect either of the parties' rights or defenses with respect thereto.

46429/0001-7956852v1

section 4975 of the Internal Revenue Code, which provides for an excise tax on the amount

involved in a prohibited transaction under ERISA. The IRS also asserted, but did not file a proof

of claim for, additional excise tax liability under section 4975 of the Internal Revenue Code

arising from Tribune's loan to the ESOP as part of the Leveraged ESOP Transactions. (See

Liebentritt Declaration at ¶ 10.) The IRS has asserted additional claims against the ESOP for

UBIT on its share of Tribune's S-corporation taxable income from the period commencing

January 1, 2007 to December 31, 2012. (See Liebentritt Declaration at ¶ 11.)

11.    The Debtors classified the Pension Claim as subordinated pursuant to

section 510(b) of the Bankruptcy Code, on the grounds that the excise tax asserted by the IRS

arose from the purchase of Tribune stock by the ESOP. The IRS objected to confirmation of the

DCL Plan based in part on an objection to the proposed subordination of the Pension Claim.[7]

**B.**    **The IRS Pension Claim Settlement**

12.    The IRS Pension Claim Settlement represents the final component of a

comprehensive resolution of all ERISA-Related Claims, which arise from and relate to the

allegations that Tribune and/or the ESOP engaged in one or more prohibited transactions under

ERISA in connection with the Leveraged ESOP Transactions. The Debtors have vigorously

disputed such allegations, and have negotiated intensively with all parties asserting ERISA-

Related Claims to resolve such claims consensually, including with the IRS with respect to the

ESOP Tax Issues. (See Liebentritt Declaration at ¶ 12.) The IRS Pension Claim Settlement

conclusively resolves any and all ESOP Tax Issues, whether asserted against Tribune or the

---

[7] Prior to the hearing on confirmation of the DCL Plan, the proponents of the DCL Plan and the IRS resolved the IRS's objection as it related to classification of the Pension Claim by agreeing on the inclusion of the following language to the proposed confirmation order:

"Nothing in the Plan or this Confirmation Order is intended to, or shall, constitute a determination that any claim of the Internal Revenue Service is or is not subordinated pursuant to 11 U.S.C. § 510(b), nor preclude the Debtors from seeking such subordination, or the Internal Revenue Service from opposing such subordination, as part of the claims resolution process."

ESOP itself. The IRS Pension Claim Settlement also confirms the parties' agreement that the IRS will not assert a claim against the ESOP on account of the settlement proceeds it receives pursuant to the ERISA Claim Settlement. (See Closing Agreement at ¶ 4.) The parties have agreed that the settlement is not an admission or suggestion of liability with respect to any of the claims or causes of action compromised therein. (See Closing Agreement at ¶ 9; Liebentritt Declaration at ¶ 13.)

13.    The IRS Pension Claim Settlement provides for the following resolution of claims, as more particularly set forth in the Closing Agreement attached hereto as Exhibit A. The principal settlement terms are as follows:[8]

a)    No later than 30 days after authorization and approval by the Bankruptcy Court, Tribune will make a payment of $7,000,000 by certified or cashier's check to the United States Treasury in full satisfaction of the Pension Claim;

b)    No later than 30 days after the payment of $7,000,000 to the IRS by Tribune in full satisfaction of the Pension Claim, the IRS shall amend Claim No. 6254 and release the Pension Claim;

c)    The IRS will not assert, seek to assess or collect any claims for I.R.C. § 4975 excise tax or interest thereon (except as set forth in Paragraph 1 hereof) from or against Tribune in connection with Tribune's sale of 8,928,571 Tribune Company shares to the ESOP on April 1, 2007 or Tribune's loan of $250,000,000 to the ESOP; and

d)    For the taxable periods commencing January 1, 2007 and ending on December 31, 2012, the IRS will not assert, seek to assess or collect from or against the ESOP any UBIT attributable to the ESOP's ownership of Tribune shares or attributable to the Trust's receipt of funds pursuant to the *Neil* Settlement.

(Closing Agreement ¶¶ 1-4.)

---

[8] The IRS Pension Claim Settlement terms summarized in this Motion do not in any way supersede or alter the terms of the IRS Pension Claim Settlement as set forth in the Closing Agreement, and in the event of any conflicts, the terms as set forth in the Closing Agreement control.

**RELIEF REQUESTED**

14.    By this Motion, Tribune respectfully requests this Court enter an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing Tribune's entry into the IRS Pension Claim Settlement, in conformance with the terms of the Closing Agreement attached hereto as <u>Exhibit A</u>, and (ii) authorizing Tribune to perform all obligations thereunder.  The IRS Pension Claim Settlement is contingent upon approval by this Court.  (<u>See</u> Closing Agreement at ¶ 1, 8.)

**BASIS FOR RELIEF REQUESTED**

15.    The IRS Pension Claim Settlement resolves all claims the IRS may have against Tribune and the ESOP relating to the Leveraged ESOP Transactions, including under section 4975 of the Internal Revenue Code, in consideration of a single payment by Tribune to the IRS in the amount of $7 million.  Such payment to the IRS will reduce, dollar-for-dollar, the $3.2 million claim granted to the DOL on account of the ERISA Claim Settlement.  (<u>See</u> Liebentritt Declaration at ¶ 16; <u>see also</u> Docket No. 9681, ERISA Claim Settlement at ¶ 18.) The Debtors believe that this settlement provides a meaningful and valuable benefit to the Debtors' estates and creditors, particularly in light of the substantial litigation costs that the Debtors and the IRS have expended to date on these disputed claims.  (Liebentritt Declaration at ¶¶ 15, 19.)

A.    <u>The IRS Pension Claim Settlement Meets Legal Standards for Approval</u>

16.    Settlements and compromises are encouraged and favored by courts to efficiently resolve disputes efficiently in bankruptcy proceedings.  <u>See</u> <u>Myers v. Martin</u> (<u>In re Martin</u>), 91 F.3d 389, 394, 393 (3d Cir. 1996); <u>In re TSIC, Inc.</u>, 393 B.R. 71, 78 (Bankr. D. Del. 2008).  In addition, there is a "strong presumption in favor of voluntary settlements" in complex litigation cases, especially in the class action context.  <u>Ehrheart v. Verizon Wireless</u>, 609 F.3d

590, 595 (3d Cir. 2010) ("This presumption is especially strong in 'class actions and other

complex cases where substantial judicial resources can be conserved by avoiding formal

litigation'") (quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability

Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

      17.     The Court has discretion to approve settlements pursuant to section 105(a)

of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §

105(a). The Court may also approve settlements under section 363 of the Bankruptcy Code after

notice and a hearing. See In re Martin, 91 F.3d at 394, 395 n.2. The procedure for approving a

settlement in bankruptcy is set forth by Bankruptcy Rule 9019, which provides, in relevant part:

> On motion of the trustee and after notice and a hearing, the court may
> approve a compromise or settlement. Notice shall be given to creditors,
> the United States trustee, the debtor, and indenture trustees as provided in
> Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). Approval of a settlement under Bankruptcy Rule 9019 is committed

to the sound discretion of the bankruptcy court. In re Spansion, Inc., Case No. 09-10690, 2009

Bankr. LEXIS 1283, *12 (Bankr. D. Del. June 2, 2009); In re TSIC, 393 B.R. at 78; Key3Media

Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.), 336 B.R. 87, 92 (Bankr. D. Del.

2005).

      18.     In determining whether to approve a settlement pursuant to section 363 of

the Bankruptcy Code and Bankruptcy Rule 9019, bankruptcy courts should consider the

following four factors: "(1) the probability of success in the litigation; (2) the likely difficulties

in collection;[9] (3) the complexity of the litigation involved, and the expense, inconvenience and

delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91

---

[9] With respect to the parties' dispute concerning the IRS Pension Claims, no collection difficulties are present.

F.3d at 393 (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.

Anderson, 390 U.S. 414, 424-25 (1968); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798,

803 (E.D. Pa. 1986)).  See also Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d

639, 644 (3d Cir. 2006) (confirming the Martin factors as a longstanding test for approval of

settlements).  "The court must also consider 'all other factors relevant to a full and fair

assessment of the wisdom of the proposed compromise.'"  In re Marvel Entm't Group, Inc., 222

B.R. 243, 249 (D. Del. 1998) (quoting TMT Trailer, 390 U.S. at 424).  Additionally, the court

should defer to the debtor's business judgment when approving consensual settlements.  See In

re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004).  See also Nashaminy, 62

B.R. at 803 (providing that when approving a proposed settlement, the court "does not substitute

its judgment for that of the trustee").

> a)    Probability of Success in Litigation.

19.    In evaluating the first Martin factor, "the Court's task . . . is to canvass the

issues to see whether the settlement fall[s] below the lowest point in the range of

reasonableness."  In re Exide Techs., 303 B.R. 48, 68 (Bankr. D. Del. 2003) (quoting

Neshaminy, 62 B.R. at 803).  The Court need not be convinced that the settlement is the best

possible compromise, just that the settlement is within the range of litigation possibilities.  In re

World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr D. Del. 2006); Coram Healthcare,

315 B.R. at 330.

20.    Here, the IRS has asserted claims against Tribune and the ESOP that have

a potential value in excess of $37.5 million, plus costs of litigation, which the Debtors expect

would be considerable.  Although Tribune has disputed the Pension Claim and has asserted that

liability for such claim would be subordinated pursuant to section 510 of the Bankruptcy Code,

such a claim, if successfully asserted in full as a priority claim, would substantially increase the

11

approval of the IRS Pension Claim Settlement will allow all of the parties to the ERISA Claim

Settlement, including Tribune, to avoid complicated and time-consuming litigation involving the

certified ERISA class action pending in the United States District Court for the Northern District

of Illinois and related claims of the DOL and ESOP Tax Issues that present the prospect of

substantial potential damages and other relief.  By contrast, continued pursuit of the highly

contested litigation, adversary proceedings, and plan confirmation disputes underpinning the

ERISA-Related Claims would unnecessarily increase the time, costs, and complexity in

resolving the ERISA-Related Claims.

        c)      Paramount Interest of the Creditors.

      23.      The IRS Pension Claim Settlement settles substantial ESOP-related tax

liabilities against the Debtors, potentially worth in excess of $37.5 million, and limits attendant

litigation costs.  In the Debtors' business judgment, the comprehensive resolution of the IRS

Pension Claims in exchange for a $7 million payment to the IRS represents significant value for

the benefit of the Debtors' other creditor constituencies.  (Liebentritt Declaration at ¶ 14.)

Similarly, approval of the IRS Pension Claim Settlement will allow the Debtors' creditor

constituencies to obtain the benefit of the bargain struck in the ERISA Claim Settlement, which

is conditional upon Tribune reaching a settlement of the ESOP Tax Issues with the IRS, on terms

acceptable to Tribune.  Specifically, the ERISA Claim Settlement provides that the DOL's

allowed general unsecured claim against Tribune of $3.2 million is subject to a dollar-for-dollar

reduction by any payment made by or on behalf of Tribune to the IRS on account of any claims

of the IRS under section 4975 of the Internal Revenue Code relating to the ESOP.  If the IRS

Pension Claim Settlement is approved, the DOL's claim will be fully offset.  Resolution and

liquidation of these disputed litigation and related indemnification claims serves creditors'

interests by limiting exposure to damages and litigation costs arising from the ERISA-Related

13

Claims and preparing the Debtors for emergence through a settlement that is well within the appropriate range of reasonableness under Bankruptcy Rule 9019.

24.     For these reasons, the IRS Pension Claim Settlement is fair, reasonable and adequate, well within the range of reasonableness as a valid exercise of the Debtors' business judgment, and is in the best interests of the Debtors' estates, and creditors.

## NO PRIOR REQUEST

25.     No prior request for the relief sought by this Motion has been made to this or to any other Court.

## NOTICE

26.     Notice of this Motion has been provided via electronic mail and first class mail to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the administrative agents for Tribune's prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' post-petition loan facility; (v) the indenture trustees for Tribune's prepetition notes; (vi) the IRS; (vii) the parties to the ERISA Claim Settlement; and (viii) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

46429/0001-7956852v1

WHEREFORE, the Debtors respectfully request this Court enter an order in the form submitted herewith, (i) authorizing Tribune to enter into the IRS Pension Claim Settlement, (ii) authorizing Tribune to perform all obligations thereunder, and (iii) granting such other related relief this Court may deem just and proper.

Dated:  Wilmington, Delaware
October 7, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

15

46429/0001-7956852v1