# EXHIBIT B

## LIEBENTRITT DECLARATION

# EXHIBIT B

## LIEBENTRITT DECLARATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### DECLARATION OF DONALD J. LIEBENTRITT IN SUPPORT OF THE DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 AUTHORIZING TRIBUNE COMPANY TO ENTER INTO IRS PENSION CLAIM SETTLEMENT AND TO PERFORM ALL OBLIGATIONS THEREUNDER

I, Donald J. Liebentritt, declare as follows:

1. I am Chief Restructuring Officer of Tribune Company ("Tribune"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"). In my position as Chief Restructuring Officer I am responsible

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (8474); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

for, among other things, supervising the Debtors' pending chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware.

2. I have read the Debtors' Motion for an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 Authorizing Tribune Company to Enter into IRS Pension Claim Settlement and to Perform All Obligations Thereunder (the "Settlement Motion")[2] and am directly, or by and through the Debtors' personnel and advisors, familiar with all matters described therein. I am authorized to submit this declaration (the "Declaration") in support of relief requested in the Settlement Motion.

3. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) my view, based on my experience and knowledge of the claims and causes of action that are the subject matter of the settlement, (d) information supplied to me by others at the Debtors' request, or (e) as to matters involving United States bankruptcy law or rules, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Internal Revenue Code, as amended, or other applicable laws, reliance on my legal training and the advice of counsel or other advisors to the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

A. **BACKGROUND TO THE SETTLEMENT MOTION**

4. In my capacity as Chief Restructuring Officer, I served as the representative for Tribune and its Debtor and non-Debtor subsidiaries (collectively, the "Tribune Entities"), together with counsel for the Debtors, in the non-binding mediation concerning the resolution of certain claims, causes of action, and related matters arising from alleged violations of ERISA, in connection with the Tribune Employee Stock Ownership Plan and the Tribune

---

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Settlement Motion.

2

Employee Stock Ownership Trust (individually or collectively, the "ESOP"), an employee retirement benefit plan (the "ERISA Mediation").

5.   On August 19, 2011, the Debtors sought this Court's approval of the Debtors' Motion For An Order Pursuant to Sections 105(a), 362(d), and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 4001(a)(3) (I) Authorizing Debtors to Enter into ERISA Claim Settlement and to Perform all Obligations Thereunder, (II) Modifying the Automatic Stay to the Extent Necessary to Allow Insurers to Pay Portions of the Settlement Amount, and (III) Granting Related Relief (Docket No. 9681) (the "ERISA Claim Settlement Motion"). As described in detail in the ERISA Claim Settlement Motion, the parties to the ERISA Mediation reached a settlement (the "ERISA Claim Settlement") resolving all of the claims that were the subject of the ERISA Mediation (collectively, the "ERISA-Related Claims"), with the exception of: (i) the Internal Revenue Service's ("IRS") asserted priority claim for excise taxes under section 4975 of the Internal Revenue Code in an amount totaling $37,500,000, together with interest accrued thereon, as set forth in Claim No. 6254 filed in these chapter 11 cases (such excise tax and accrued interest, collectively, the "Pension Claim"), (ii) IRS claims against the ESOP for Unrelated Business Income Tax ("UBIT") on its share of Tribune's S-corporation taxable income, and (iii) all other claims of the IRS against Tribune and the ESOP that derive from allegations that Tribune and/or the ESOP engaged in prohibited transactions under ERISA when Tribune sold shares to the ESOP and made loans to the ESOP as part of the Leveraged ESOP Transactions[3] that returned Tribune to private ownership in 2007 (collectively, the "ESOP Tax Issues").

---

[3] A detailed summary of the "Leveraged ESOP Transactions" appears in the Joint Disclosure Statement and Exhibits filed on December 17, 2010 (Docket No. 7232).

6. As a result of extensive negotiations, the IRS, Tribune, and the ESOP have now reached a settlement, embodied in the Closing Agreement attached to the Settlement Motion as Exhibit A, resolving the ESOP Tax Issues (the "IRS Pension Claim Settlement").

7. By the Settlement Motion, the Debtors seek authority for Tribune to enter into IRS Pension Claim Settlement and to perform all obligations thereunder. For the reasons stated in this Declaration, and after evaluation of the terms of the IRS Pension Claim Settlement, the Debtors believe, and I agree, that the IRS Pension Claim Settlement is fair and reasonable and economically favorable to Debtors, their estates, and their creditors.

A. **FACTUAL BACKGROUND TO THE IRS PENSION CLAIMS**

1. **The Tribune ESOP and the ERISA Mediation**

8. The factual background concerning the formation of the ESOP, the allegations that Tribune and/or the ESOP engaged in prohibited transactions under ERISA in connection with the Leveraged ESOP Transactions, and the ERISA Mediation may be found in the ERISA Claim Settlement Motion and my declaration in support thereof. The factual background contained in those pleadings are incorporated herein by reference.

2. **The Claims Asserted by the IRS Against Tribune and the ESOP**

9. I am generally familiar with the Debtors' schedules of assets and liabilities and the proofs of claim asserted by creditors in the Debtors' chapter 11 cases. In connection with the IRS Pension Claim Settlement, I reviewed the IRS's proof of claim against Tribune relating to tax underpayments in the aggregate amount of $351,688,793.98 (Claim No. 6254), of which $37.5 million (plus accrued interest) is asserted as a priority unsecured claim (pursuant to section 507(a)(8) of the Bankruptcy Code) for liability under section 4975 of the Internal Revenue Code, which I understand provides for an excise tax on the amount involved in a prohibited transaction under ERISA, and the IRS's objection to the DCL Plan. Tribune disputes

that it has engaged in any prohibited transaction in connection with the Leveraged ESOP Transactions and that it is liable for excise taxes under Internal Revenue Code § 4975.

10. I am also aware that the IRS has asserted, but did not file a proof of claim for, additional excise tax liability under section 4975 of the Internal Revenue Code arising from Tribune's loan to the ESOP as part of the Leveraged ESOP Transactions.

11. I am also familiar with the claims asserted by the IRS against the ESOP for UBIT on its share of Tribune's S-corporation taxable income from the period commencing January 1, 2007 to December 31, 2012.

### 3. The IRS Pension Claim Settlement

12. I am familiar with the terms of the IRS Pension Claim Settlement set forth in the Closing Agreement, and, as noted above, participated in the negotiation of the IRS Pension Claim Settlement. The IRS Pension Claim Settlement is the product of intensive negotiations between the Debtors and the IRS, both during the ERISA Mediation and in the several months subsequent to the ERISA Mediation to resolve the ESOP Tax Issues consensually. The Debtors have vigorously disputed allegations that Tribune and/or the ESOP engaged in one or more prohibited transactions under ERISA in connection with the Leveraged ESOP Transactions.

13. The parties to the IRS Pension Claim Settlement have agreed that the settlement is not an admission or suggestion of liability with respect to any of the claims or causes of action compromised therein. The Closing Agreement states specifically that "[t]his Agreement is the result of a compromise, and shall never at any time for any purpose be considered as an admission or evidence of liability or responsibility on the part of Tribune Company." (See Closing Agreement at ¶ 9.)

## B. BASIS FOR APPROVAL OF THE IRS PENSION CLAIM SETTLEMENT

14. The Debtors believe, and I agree, that entering into the IRS Pension Claim Settlement constitutes a reasonable exercise of the Debtors' business judgment, is in the best interests of their estates, creditors, and other parties in interest, and should be approved by this Court. In the Debtors' business judgment, the comprehensive resolution of the IRS Pension Claims in exchange for a $7 million payment to the IRS represents significant value for the benefit of the Debtors' other creditor constituencies. The Debtors, together with their legal advisors, have reviewed the applicable provisions of the IRS Pension Claim Settlement and believe the IRS Pension Claim Settlement should be approved for several reasons.

15. First, the IRS Pension Claim Settlement resolves a significant outstanding claim against Tribune on terms very favorable to the Debtors. The Debtors believe the proposed resolution of the ESOP Tax Issues embodied in the Closing Agreement is reasonable because it secures for Tribune and the ESOP a comprehensive resolution of the Pension Claim at a fraction of the asserted face value of such claim and agreement by the IRS to not assert, seek to assess, or collect any other claims the IRS may have arising out of the allegations that Tribune and/or the ESOP participated in prohibited transactions under ERISA in connection with the Leveraged ESOP Transactions. Although the Pension Claim is disputed and the Debtors believe that this claim would be subordinated under section 510(b) of the Bankruptcy Code, the potential exposure is sizable. Consequently, a settlement payment by Tribune of $7 million reasonably accounts for the risks, time, and costs associated with litigating the liability asserted by the IRS in the Pension Claim and the treatment of such claim under the Bankruptcy Code.

16. Second, the IRS Pension Claim Settlement's $7 million payment by Tribune to the IRS is also reasonable in light of the fact that, under the ERISA Claim Settlement, the $3.2 million claim allowed to the Department of Labor ("DOL") in settlement of the DOL's

claims under section 502(l) of ERISA shall be reduced dollar-for-dollar by any payment made by or on behalf of Tribune to the IRS to settle or satisfy any tax obligations it may have under section 4975 of the Internal Revenue Code relating to the ESOP Tax Issues.

17. Third, under the IRS Pension Claim Settlement, Tribune and the ESOP avoid the imposition of any further tax liability arising from allegations that Tribune and/or the ESOP engaged in prohibited transactions under ERISA in connection with the Leveraged ESOP Transactions.

18. Fourth, the ERISA Claim Settlement provides, in relevant part, that the settlement embodied therein is conditioned upon Tribune reaching a settlement of the ESOP Tax Issues with the IRS, on terms acceptable to Tribune. Approval of the IRS Pension Claim Settlement is thus essential to preserving the settlement struck in the ERISA Claim Settlement so that the Debtors may receive all of the benefits of the resolution of all of the ERISA-Related Claims.

19. Finally, settlement of the IRS's Claims avoids the significant costs and distraction of continuing the litigation and contested proceedings that are currently pending with respect to all of the ERISA-Related Claims, and additionally avoids the potential subsequent litigation for indemnification, contribution, or reimbursement that could result.

20. For all of these reasons, I submit on behalf of the Debtors that the IRS Pension Claim Settlement is well justified and should be approved.

[Signature Page Follows]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7 day of October 2011.

By: Donald J. Liebentritt