# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: November 22, 2011 at 2:00 p.m. ET |
| | Objection Deadline: November 15, 2011 at 4:00 p.m. ET |

## DEBTORS' FORTY-EIGHTH OMNIBUS (NON-SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL RULE 3007-1

### ("JOANN PARKER CLAIMS")

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively the "Debtors"), by and through their undersigned counsel, hereby submit this forty-eighth omnibus objection to claims (the "Objection"), which Objection

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

CHI 6238939v.3

covers Claim Nos. 6797, 6798, and 6801 filed against Debtor Chicago Tribune Company ("CTC") by claimant Joann Parker (the "Parker Claims"), copies of which are attached hereto as Exhibits A, B, and C. By this Objection, the Debtors request the entry of an order disallowing and expunging each of the Parker Claims, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and this Court's Bar Date Order, on the grounds that such claims were untimely filed and, furthermore, that CTC has no substantive liability on account of the Parker Claims. The Debtors also request that Claim Nos. 6798 and 6801 be expunged on the additional grounds that such claims are duplicative of Claim No. 6797. In support of this Objection, the Debtors respectfully state as follows:

## INTRODUCTION

1. Ms. Parker is a former employee of CTC who was terminated in February 2009 as part of a reduction in force. Ms. Parker subsequently filed suit against CTC in August 2009 alleging employment discrimination based on race, age, and disability, and for wrongful termination, for actions that allegedly occurred between August 2008 and February 2009 (the "Parker Litigation"). CTC filed a motion for summary judgment in the Parker Litigation in July 2011. In its motion for summary judgment, CTC asserted, among other defenses, that Parker was barred from recovering any monetary damages attributable to alleged prepetition claims, based on Parker's failure to file a proof of claim in CTC's bankruptcy proceedings, despite receiving notice and multiple opportunities to do so. Ms. Parker responded to CTC's motion for summary judgment by filing three untimely proofs of claim in this Court, which were received by the Claims Agent in September 2011.

2.  Appended to Claim No. 6797 is a purported "Pro Se Motion For Leave to File Late Proof of Claim." (See Exhibit A.)[2] Although the purported motion has not been docketed by the Court or noticed by Ms. Parker for a hearing, the Debtors feel it is appropriate to address the contentions therein in this Objection. Even if the Court were to entertain the purported motion, it provides no legitimate basis on which to grant Ms. Parker leave to file the Parker Claims late, and they should each be expunged. Ms. Parker has failed to establish that the delay in filing the Parker Claims was due to "excusable neglect," which Ms. Parker bears the burden of meeting, as set forth by the United States Supreme Court in Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380 (1993). Specifically, the only reason described in the motion for why Ms. Parker did not timely file a proof of claim is that she did not open her mail at the time she was sent notice of the claims bar date based on asserted conditions of bi-polar disorder and depression. (See Exhibit A, Parker Motion at ¶ 8.) In addition to being late-filed and duplicative, the Debtors also dispute the Parker Claims on the grounds that CTC has no substantive liability on account of the Parker Claims.[3]

## STATUS OF THE CASE AND JURISDICTION

3.  On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries, including CTC, each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[4] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

---

[2] Claim No. 6801 also includes a copy of the purported motion; however, the copy appended omits paragraphs 12 and 13 of the motion.

[3] In the event that the Court does not sustain this Objection as to the Parker Claims on non-substantive grounds as requested herein, the Debtors reserve their rights to file a substantive objection on the merits of the Parker Claims.

[4] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (Docket No. 43, 2333.)

5.  The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

7.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are (i) section 502(b) of the Bankruptcy Code, (ii) Bankruptcy Rules 3001, 3003, and 3007, (iii) Local Rule 3007-1, and (iv) this Court's Bar Date Order.

## FACTUAL BACKGROUND OF THE DEBTORS' CLAIMS PROCESS

8.  On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket No. 567-789), which were subsequently amended on April 13, 2009 (Docket No. 894-957), June 12, 2009 (Docket No. 1343-1453), March 2, 2010 (Docket No. 3548-3599), May 14, 2010 (Docket No. 4388), and January 28, 2011 (Docket No. 7661-7671) (collectively, the "Schedules").[5]

9.  On March 26, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising

---

[5] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009 (CNLBC Docket No. 8 and 9), which were subsequently amended on December 9, 2009 (Docket No. 2779), May 14, 2010 (Docket No. 4389), and January 28, 2011 (Docket No. 7665).

4

on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.[6] The Bar Date Order granted any claimants holding a claim affected by amendments to the Schedules and any claimants holding a claim relating to a Debtor's rejection of an executory contract or unexpired lease an additional 30 days from the applicable amendment or supplement to the Schedules or effective date of rejection to file a Proof of Claim or amend a previously filed Proof of Claim in connection therewith.

10. Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the Wall Street Journal and the New York Times and in the Chicago Tribune and Los Angeles Times on May 12, 2009.

11. To date, approximately 6,800 Proofs of Claim have been filed in these chapter 11 cases. The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent"). The Debtors' claims process is very well advanced, with the Debtors having filed forty-seven prior omnibus claims objections, and having obtained orders of the Bankruptcy Court disallowing approximately 1,693 proofs of claim filed in their chapter 11 cases, including 136 claims on the basis that they were untimely filed. Additionally, the Debtors have obtained disallowance of 32 claims by stipulation with the claimant, for a total of 1,725 disallowed claims.

---

[6] The Bar Date for the filing of Proofs of Claim against Tribune CNLBC, LLC was July 26, 2010. See Order Establishing Bar Date for Filing Proofs of Claim in the Tribune CNLBC, LLC Bankruptcy Case and Approving the Form and Manner of Notice Thereof entered on June 7, 2010 (Docket No. 4709).

## FACTUAL BACKGROUND CONCERNING THE PARKER CLAIMS

12.  Ms. Parker was employed by CTC from 1985 until her termination in February 2009 as part of a reduction in force that affected ten employees in her department. Ms. Parker last worked for CTC on December 8, 2008 (i.e., the Petition Date), and was on an extended leave of absence thereafter until the time she was terminated. As of the Petition Date, the Debtors were not aware of any actual or potential claims held by Ms. Parker against CTC, apart from employee wage and benefit claims arising in the ordinary course, which were authorized to be paid as part of this Court's first-day orders. Like all other employees, Ms. Parker was included on the Debtors' master creditor matrix and was served with the Notice of Commencement of the Debtors' chapter 11 cases on December 24, 2008, and with the Bar Date Notice on April 13, 2009.[7] Ms. Parker did not file a proof of claim prior to the Bar Date.

13.  On March 2, 2010, the Debtors filed Amended Schedules of Assets and Liabilities with the Bankruptcy Court. The Amended Schedules of Assets and Liabilities stated that the Debtors' books and records showed that Ms. Parker was owed $2.35 by CTC as of the Petition Date.[8] In connection with the service of the Notice of Amendment to Schedule of Assets and Liabilities, Ms. Parker was served a customized proof of claim form reflecting a claim amount of $2.35. The Notice of Amendment to Schedules of Assets and Liabilities restated the Notice of Bar Date and provided Ms. Parker with additional notice of the requirement to file a proof of claim. In accordance with the Bar Date Order, Ms. Parker was afforded until April 6, 2010 to file a proof of claim in response to the Notice of Amendment to

---

[7] See Affidavit of Mailing dated December 29, 2008 concerning the Notice of Commencement (Docket No. 154) (demonstrating that the Notice of Commencement was mailed to Ms. Parker at the same address as the proofs of claim she now seeks to file); Affidavit of Mailing dated April 22, 2009 concerning the Notice of Bar Date (Docket No. 1073) (demonstrating that the Notice of Bar Date was mailed to Ms. Parker at the same address as the proofs of claim she now seeks to file).

[8] The schedule record relates to an uncashed payroll check issued prior to the Petition Date.

Schedules of Assets and Liabilities.[9] Ms. Parker did not file a proof of claim prior to the April 6, 2010 supplemental bar date.

14. Ms. Parker filed two EEOC charges against CTC on May 22, 2009 and August 27, 2009, respectively, alleging race and age discrimination based on actions occurring prior to the Petition Date. Both of Ms. Parker's EEOC charges were filed after her February 6, 2009 separation from CTC. Ms. Parker did not mention her termination in either of her EEOC charges, and further, both charges identify December 8, 2008 as the last date alleged discrimination took place. Ms. Parker received a right to sue letter from the EEOC and commenced the Parker Litigation in August 2009. In addition to the allegations of prepetition discrimination raised in the EEOC charges, Ms. Parker's complaint also stated causes of action arising from her post-petition termination. In August 2010, Parker filed a second lawsuit alleging employment discrimination on the basis of disability, which was consolidated with her existing action and remains pending before the United States District Court for the Northern District of Illinois (the "Illinois District Court"). Ms. Parker commenced the Parker Litigation pro se, but has since retained counsel in that action.

15. CTC vigorously disputes the allegations raised in the Parker Litigation. CTC took Ms. Parker's deposition on March 30, 2011 and filed a motion for summary judgment on July 8, 2011, which remains pending before the Illinois District Court. With respect to the prepetition claims alleged in the Parker Litigation, CTC asserted in its motion for summary judgment that (i) the action was filed in violation of the automatic stay, 11 U.S.C. § 362(a), and (ii) Ms. Parker was barred from recovering damages on account of any claims for events and

---

[9] See Notice of Amendment to Schedules of Assets and Liabilities (Docket No. 3653); Affidavit of Mailing dated March 10, 2010 concerning the Notice of Amendment to Schedules of Assets and Liabilities (Docket No. 3844) (demonstrating that the Notice of Amendment to Schedules of Assets and Liabilities was mailed to Ms. Parker at the same address as the proofs of claim she now seeks to file).

7

conduct that took place on or before December 8, 2008 based on her failure to file a proof of claim in the bankruptcy proceedings.

16.     In apparent response to CTC's motion for summary judgment, Ms. Parker filed Claim Nos. 6797 and 6798 on September 1, 2011 and Claim No. 6801 on September 6, 2011. Each is asserted in an unliquidated amount, estimated by Ms. Parker to be $125,000. (See Exhibits A-C.) Ms. Parker then filed a reply to CTC's motion for summary judgment in the Illinois District Court, in which she asserted that the District Court lacks jurisdiction to determine whether her prepetition claims are barred, due to the fact that she had filed late proofs of claim in this Court.

17.     Ms. Parker appended to Claim No. 6797 a document entitled "Pro Se Motion for Leave to File Late Proof of Claim" (the "Parker Motion"). (See Exhibit A.) That motion was neither served nor noticed for a hearing. In the Parker Motion, Ms. Parker asserts in relevant part that she was unaware of CTC's chapter 11 proceeding and the bar dates applicable to her claims because, although she does not contest that she received the applicable notices, she was "suffering from bi-polar and depression," was not rational, and did not open mail unless she recognized the sender. (See Exhibit A, Parker Motion at ¶ 8). Ms. Parker also asserts that the envelopes in question did not reference Tribune as the basis for not opening her mail. (See id.) Ms. Parker further states that she did not learn of the Debtors' bankruptcy proceedings until the Spring of 2011 (See id. at ¶ 9). Ms. Parker goes on to contend that her late claim should be accepted because (i) there is no prejudice to the Debtors, (ii) no plan has been confirmed for the Debtors, (iii) her delay in filing was not within her control due to her alleged medical conditions, and (iv) she has acted in good faith. (See id. at ¶ 13).

18. For the reasons set forth below, the Debtors dispute the assertions made by Ms. Parker in the Parker Motion and also dispute that such assertions meet the standards for "excusable neglect" under the standards articulated by the Supreme Court in <u>Pioneer</u>. In the interests of resolving the parties' dispute promptly as to whether Ms. Parker's prepetition claims are barred, the Debtors have filed the instant Objection, and hereby request that the Court expunge the Parker Claims.

## RELIEF REQUESTED

19. By this Objection, the Debtors seek entry of an order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, Local Rule 3007-1, and this Court's Bar Date Order (i) disallowing in full and expunging each of the Parker Claims as claims that were filed after the applicable Bar Date established in these chapter 11 cases; (ii) disallowing in full and expunging Claim Nos. 6798 and 6801 on the additional grounds that they are duplicative of Claim No. 6797; and (iii) authorizing the Claims Agent to modify the Claims Register in accordance with the proposed order. To the extent the Court considers the Parker Motion the Debtors request that such motion be denied for all of the reasons stated in this Objection. This Objection complies in all respects with Local Rule 3007-1.

## BASIS FOR OBJECTION

20. Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> > (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured

> . . . .
>
> (9)   proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726 (a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide . . . .

11 U.S.C. § 502(b)(1), (9).

21.   The Bar Date is a substantive protection for the Debtors, designed to channel claims through the Bankruptcy Court in a timely manner so that the Debtors will know with certainty the scope and amount of claims asserted against them that must be resolved as part of the Debtors' reorganization. The time for filing proofs of claim may be enlarged after the expiration of the bar date only "for cause" and upon a showing of "excusable neglect" by the party seeking to effect the untimely filing. See Fed. R. Bankr. P. 9006(b)(1) (setting the "excusable neglect" standard). Like "cause," the term "excusable neglect" is not defined in the Bankruptcy Code. However, the Supreme Court has enumerated four factors to be considered in determining whether a party's neglect was excusable: (i) the danger of prejudice to the debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. Pioneer, 507 U.S. at 397; In re O'Brien Envtl. Energy Inc., 188 F.3d 116, 125 (3d Cir. 1999) (adopting and applying the Pioneer factors in the Third Circuit). In addition, courts must also consider the "totality of circumstances presented" when determining whether the neglect was excusable. Pacificorp v. W.R. Grace, 2006 WL 2375371, *1 (D. Del. 2006); see also In re Am. Classic Voyages Co., 405 F.3d 127, 133 (3d Cir. 2005) ("All [Pioneer] factors must be considered and balanced; no one factor trumps the others.").

10

### (a) Ms. Parker's Delay Was Within Her Control

22.     In <u>Pioneer</u>, the Supreme Court concluded that ""excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence" such that "a party's failure to file on time for reasons beyond his or her control is not considered to constitute "neglect."" <u>Pioneer</u>, 507 U.S. at 394. A refusal to open one's mail does not rise to the level of "excusable neglect." <u>See, e.g.</u>, <u>Seitz v. Dipinto (In re Mohr)</u>, 2005 Bankr. Lexis 1235 at * 14-15 (Bankr. E.D. Pa. 2005) (finding that a defendant's refusal to open mail from the trustee in an adversary proceeding was not excusable neglect under Fed. R. Civ. P. 60(b)).[10] In <u>Mohr</u>, the Bankruptcy Court considered and rejected the defendant's contention that his depression excused his failure to open his mail under the circumstances. <u>Mohr</u>, 2005 Bankr. Lexis 1235 at * 14 ("DiPinto's testimony of depression, which presumably could have a paralyzing effect, does not have appeared to have disabled him from opening the mail that could benefit him and did not disable him from securing counsel and fighting the judgment at this time notwithstanding the continuation of his condition to this date. Absent medical evidence or other corroboration of diminished capacity, I cannot conclude that DiPinto's chronic condition justifies his conduct.").

23.     Similarly, in this case, Ms. Parker admits that she selectively opened some mail and selectively ignored other mail. In addition, between the time of her termination in February 2009 and the time she ultimately filed the Parker Claims, Ms. Parker prosecuted two EEOC complaints, received and acted on the EEOC letter, and commenced the Parker Litigation, all the while representing herself until she later retained counsel. If the Court were to accept Ms.

---

[10] Although <u>Pioneer</u> involved Bankruptcy Rule 9006(b)(1), the Supreme Court also discussed the meaning of the term "excusable neglect" as it is used elsewhere in the federal procedural rules, including Federal Rule of Civil Procedure 60(b)(1). <u>See also</u> <u>Prizevoits v. Indiana Bell Tel. Co.</u>, 76 F.3d 132, 134 (7th Cir. 1996) (interpreting excusable neglect under Federal Rule of Appellate Procedure 4(a)(5), and finding that "the term bears the same or similar meaning throughout the federal procedural domain").

11

Parker's excuse for not filing a timely proof of claim, then it would render the Bar Date meaningless.

24.  Ms. Parker does not dispute that she received notices relating to the Debtors' chapter 11 cases, including the Notice of Commencement, Bar Date Notice, and Notice of Amendment to Schedules applicable to her claim, but states that she failed to read them because "she did not open her mail, other than for mail she recognized the sender, and as such was not cognizant that mail she had received from "Epiq" was notification of the Debtor's bankruptcy, as the envelope did not reference her former employer and Debtor, the Chicago Tribune Company." (See Exhibit A, Parker Motion at ¶ 8.) The Debtors are sympathetic to any legitimate medical conditions that Ms. Parker may have, but dispute the facts asserted by Ms. Parker. All envelopes utilized in the service of the foregoing notices to creditors, including Ms. Parker, contained the following return address on their face:

> Tribune Company Claims Processing Center
> c/o Epiq Bankruptcy Solutions, LLC
> 757 Third Avenue, Third Floor
> New York, NY 10017

Additionally, all envelopes utilized in the service of the foregoing notices to creditors, including Ms. Parker, contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."[11] Thus, Ms. Parker was on notice that the documents she received related to Tribune and were legal documents requiring her attention.

---

[11] See Affidavit of Mailing of Diane Streany dated December 29, 2008 regarding Notice of Commencement (Docket No. 154); Affidavit/Declaration of Mailing of Diane Streany dated April 22, 2009 regarding Notice of Entry of Bar Date Order Establishing Deadlines for Filing Proofs of Claim Against the Debtors (Docket No. 1073); Affidavit of Mailing of Konstantina Haidopoulos dated March 10, 2010 concerning the Notice of Amendment to Schedules of Assets and Liabilities (Docket No. 3844).

12

25. Moreover, Ms. Parker does not explain why she failed to file a proof of claim upon being presented with copies of all of the notices sent to her by the Debtors, including the Bar Date Notice, during her deposition in May 2011. At that time, Ms. Parker was represented by counsel in the Parker Litigation, who could have, but did not, file a proof of claim on her behalf (i.e., pursuant to Local Rule 9010-1(e)(iii)). Instead, Ms. Parker filed the Parker Claims only after CTC asked the Illinois District Court to enter summary judgment in the Parker Litigation on the grounds that she was barred from recovering any monetary damages on account of those claims in the Parker Litigation.

26. The Debtors have complied in all respects with their obligations under the Bankruptcy Code and Bankruptcy Rules and have provided Ms. Parker with several notices and opportunities to assert her claims properly. Ms. Parker ignored those notices. Her belated attempt to assert the Parker Claims now should not be countenanced by this Court. As the Supreme Court noted in Pioneer, the requirement that the party's neglect of the bar date be "excusable" is intended to "deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." Pioneer, 507 U.S. at 395. Ms. Parker's asserted inability to open mail from unrecognized senders does not rise to the level of excusable neglect and, even if it did, the notices at issue here were clearly identified as relating to Tribune, which Ms. Parker seems to suggest would have caused her to open them. The Parker Motion should accordingly be denied.

### (b) Ms. Parker's Delay Was Unreasonable

27. Although Ms. Parker maintains that she learned of the Bar Date in Spring 2011 (see Exhibit A, Parker Motion at ¶ 9), neither she nor her counsel took any action to submit a claim to the Bankruptcy Court until August 29, 2011 (when the Parker Claims were mailed), for which no explanation is provided. Specifically, CTC took Ms. Parker's deposition in

13

connection with the Parker Litigation on March 30, 2011, at which time Ms. Parker was represented by counsel. At the deposition, counsel for CTC produced to Ms. Parker and her counsel the Notice of Commencement, Bar Date Notice, and Notice of Amended Schedules. Despite this additional actual notice of the requirement to file a proof of claim, Ms. Parker delayed filing the Parker Claims until August 29, 2011 (received by the Claims Agent on September 1, 2011), after CTC filed a motion for summary judgment in the Parker Litigation, arguing, in part, that Ms. Parker was barred from recovering on any of her prepetition causes of action because she had failed to file a proof of claim. Even if Ms. Parker's delay in seeking to file a proof of claim is judged only from the time the Debtors produced the notices at her deposition (a delay of 5 months), rather than from the time the Bar Date Notice and Notice of Amended Schedules were served on Ms. Parker (delays of 2 years 4 months and 1 year 5 months, respectively), Ms. Parker's delay was excessive and unreasonable under the circumstances.

### (c) Failure To Disallow The Parker Claims Would Prejudice The Debtors And Their Creditors

28. Ms. Parker's remaining contentions in the Parker Motion have no merit. (See Exhibit A, Parker Motion at ¶ 13.)[12] Ms. Parker estimates the value of her claim at $125,000 (see Exhibit A, Addendum to Proof of Claim), which, if accepted at face value, would be a sizeable claim against CTC's estate. Although CTC disputes that either the Parker Litigation or the Parker Claims have any merit whatsoever, permitting any late-filed claim of that

---

[12] The Debtors have generally assumed that a movant seeking to file a late proof of claim has proceeded in good faith. However, Ms. Parker's assertion that she did not open her mail because, in part, it did not reference "Tribune" on the envelope, is demonstrably inaccurate. Furthermore, the Parker Claims were not filed until long after she and her counsel had actual knowledge of the chapter 11 cases and the bar date (even accepting as true her basis for not reviewing the notices mailed to her), and only then were filed to coincide with Ms. Parker's response to CTC's motion for summary judgment in the Parker Litigation. These facts on their face raise questions as to the presence of good faith in this instance.

14

size to proceed at this late stage of the Debtors' bankruptcy proceedings is necessarily prejudicial to the Debtors and to other creditor constituencies.[13] Moreover, given that the Parker Claims are contingent, unliquidated, and disputed litigation claims, a failure to disallow and expunge the Parker Claims would cause CTC to have to litigate the underlying prepetition causes of action on the merits, at significant cost to its estate and creditors.[14]

29. Granting relief from the Bar Date in the instant case is particularly prejudicial to the Debtors and the other creditors in these cases, where the Debtors have given Ms. Parker constructive and actual notice of the Bar Date on multiple separate occasions, but where Ms. Parker has responded by ignoring the Bar Date until CTC affirmatively sought to bar her claims. A failure by the Debtors to seek and obtain disallowance of the Parker Claims could result in the filing of additional late-filed claims, undermining the certainty that is intended to be afforded by the Bar Date Order and negatively affecting the Debtors' legitimate creditors whose claims were either listed on the Schedules or who complied with the Bar Date Order.

## NOTICE

30. Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Joann Parker and her counsel of record in the Parker Litigation; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

---

[13] Ms. Parker's assertion that the Debtors will not be prejudiced because such claim "would go to the lowest level of potential distribution of assets" ignores that under the DCL Plan, all general unsecured claims against the filed subsidiary Debtors will be paid in full.

[14] CTC estimates that defending the Parker Claims on the merits would cost in excess of $50,000 in legal fees.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001 and 3007, and Local Rule 3007-1, (i) disallowing the Parker Claims in full; (ii) authorizing the Claims Agent to expunge the Parker Claims from the Claims Register; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
October 21, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

CH1 6238939v.3