# EXHIBIT D

MOELIS & COMPANY

1999 Avenue of the Stars
19th Floor
LOS ANGELES, CALIFORNIA 90067

T 310.443.2300
F 310.443.8700

January 30, 2009

CONFIDENTIAL

The Official Committee of Unsecured Creditors of In re Tribune Company, et al.
c/o Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

Ladies & Gentlemen:

  We are pleased to confirm that since January 6, 2009 the Official Committee of Unsecured Creditors (the "Committee" or "you") appointed in the chapter 11 cases (the "Bankruptcy Cases") of Tribune Company, et al. (as debtors and debtors-in-possession, the "Company" or the "Debtors"), which Bankruptcy Cases currently are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), has engaged Moelis & Company LLC ("Moelis," and, together with its affiliates and subsidiaries, "we", "our" or "us") to act as its financial advisor.

  1. As part of our engagement, we will perform the following services, as requested by you.

  (a) undertake, in consultation with the Committee, a customary business and financial analysis of the Company;

  (b) to the extent Moelis reasonably deems necessary, appropriate and feasible, or as the Committee may request, review and analyze the Company's assets and its operating and financial strategies;

  (c) review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

  (d) evaluate the Company's debt capacity and assist in the determination of an appropriate capital structure for the Company;

  (e) as the Committee requests, identify, initiate, review, solicit proposals for, and evaluate any Restructuring (as defined below), and, if directed, develop and evaluate alternative proposals for a Restructuring;

(f) advise and assist the Committee, and if the Committee requests, participate in the negotiations of any Restructuring;

(g) determine and evaluate the risks and benefits of considering, initiating and consummating any Restructuring;

(h) assist the Committee in valuing the Company's assets or business, provided that any real estate or fixed asset appraisals will be undertaken by outside appraisers, separately retained and compensated from the Company's bankruptcy estates;

(i) be available at your request to meet with the Committee, the Company's management, the Company's board of directors, creditor groups, equityholders or other parties to discuss any Restructuring;

(j) if requested by the Committee, participate in hearings before the Bankruptcy Court and provide relevant testimony; and

(k) such other investment banking services as may reasonably be requested by the Committee, including, but not limited to, M&A and asset sale processes, and that is within the scope of this engagement.

2. In connection with our engagement, the Committee will furnish or will use its reasonable efforts to cause the Company to furnish us with all information that we reasonably deem appropriate (collectively, the "Information") and will use its reasonable efforts to provide or cause the Company to provide us with reasonable access to the officers, directors, employees, accountants, counsel and other representatives of the Company. The Committee understands and agrees that, in performing our services hereunder, we will use and rely upon the Information as well as publicly available information regarding the Company, and that we do not assume responsibility for independent verification of any Information, whether publicly available or otherwise furnished to us, concerning the Company, including, without limitation, any financial information, forecasts or projections, considered by us in connection with the rendering of our services. Accordingly, we shall be entitled to assume and rely upon the accuracy and completeness of all Information and are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of the Company.

3. (a) As compensation for our services hereunder, the Company's bankruptcy estates will pay us the following fees. We acknowledge that neither the Committee, nor any of its individual members nor any of its or their advisors or professionals (including, but not limited to, counsel to the Committee), shall have any obligation to pay our fees or expenses or any indemnity amounts. The payment of these fees shall be subject to Court approval pursuant to the interim compensation order to be entered in the Bankruptcy Cases and the rules and procedures of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable local rules, the guidelines of the Office of the United States Trustee and Bankruptcy Court orders:

> Monthly Fee: A cash fee of $200,000 per month (the "Monthly Fee"). Whether or not a Restructuring has taken place or will take place, we shall earn and be paid the Monthly Fee in the applicable amount beginning on January 6, 2009 until the expiration or termination of this agreement. For the month of January, Moelis will be paid a pro-rata Monthly Fee to reflect that Moelis began providing services on January 6, 2009.
>
> Restructuring Fee: In addition to the foregoing Monthly Fees, the Company shall pay Moelis a fee (the "Restructuring Fee") of $7,500,000 upon the consummation of a Restructuring. The term "Restructuring" shall mean any restructuring, reorganization, rescheduling, or recapitalization of all or a majority of the Company's liabilities, however such result is achieved, including, without limitation, through any chapter 11 plan confirmed in connection with the Bankruptcy Cases (a "Plan"). The Restructuring Fee shall be offset by one-half (50%) of the aggregate Monthly Fees actually paid by the Company commencing with the 13th Monthly Fee (which is the Monthly Fee for January 2010).

(b) Whether or not any Restructuring is consummated, and in addition to any fees payable to us, the Company's bankruptcy estate will reimburse us, upon our written request from time to time, for all reasonable and documented out-of-pocket expenses incurred by us in entering into this agreement and in connection with our performing services pursuant to this agreement. These expenses generally include travel costs, document reproduction, telephone and facsimile charges, meals, and other customary expenses for this type of transaction, including the reasonable and documented fees, disbursements and other charges of our legal counsel. We will provide reasonable backup relating to such expenses to the extent requested by the Committee and as may be required by the Bankruptcy Court; it being understood that such expenses shall be subject to Court approval and all applicable rules and guidelines.

(c) Notwithstanding the obligations of the Company's bankruptcy estates hereunder, including, but not limited to, their obligation to pay the fees and expenses of and to indemnify us, Moelis' sole and exclusive client is the Committee, and Moelis will in no circumstance be deemed to be a financial advisor to or have any obligation to the Company or any other party.

(d) Moelis and its professionals will make a substantial professional commitment of time and effort hereunder. Such commitment may foreclose us from other business opportunities.

(d) The Committee shall use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed Plan contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions and affiliates, persons controlling Moelis and its affiliates, and the current or former directors, officers, partners, members, attorneys, agents or employees of Moelis, its affiliates or any person controlling Moelis or its affiliates, from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company, the Committee, any Plan or this agreement.

(e) The terms of this Section 4 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis. Any such waiver shall bind the persons described in subparagraph (d) above to the extent provided for therein.

5. If we are asked to act for the Committee in any additional capacity relating to this engagement outside the scope of services set forth in Paragraph 1 above as reasonably interpreted, then such services shall constitute separate engagements and the terms of any such additional engagements will be embodied in one or more separate written agreements, containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions. The indemnity provisions in *Annex A* referred to below shall apply to any such additional engagements, unless superseded by an indemnity provision set forth in a separate agreement applicable to any such additional engagements, and shall remain in full force and effect regardless of any completion, modification or termination of our engagement(s).

6. The Committee will not disclose, excerpt to or summarize, in whole or in part, any advice or opinion rendered by us, whether formal or informal, without our prior written consent (which shall not be unreasonably withheld or delayed), except to the extent required by order of the Bankruptcy Court or applicable law. It is understood, however, that if we are requested to render a formal opinion, the opinion may be included in its entirety (including all attachments thereto) or referred to or summarized in any communication by the Committee to parties in interest in the Bankruptcy Cases and in any filings with the Bankruptcy Court; provided, however, that we have had the opportunity to review such communication prior to any filing with the Securities and Exchange Commission or prior to its dissemination to parties in interest in the Bankruptcy Cases. The Committee acknowledges that we may, at our option and expense and after announcement of any Restructuring, place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as financial advisor to the Committee in connection with any Restructuring.

7. Since we will be acting on behalf of the Committee in connection with our engagement hereunder, the Committee and we agree to the indemnity provisions and other matters set forth in *Annex A,* which is incorporated by reference into this agreement.

8. (a) Our engagement hereunder shall extend until the earliest of (i) the effective date of a Plan confirmed in the Bankruptcy Cases, (ii) the conversion of the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, (iii) dismissal of the Bankruptcy Cases and (iv) the

dissolution of the Committee; provided, however, that our engagement may be (x) terminated earlier, with or without cause, either by us or by you upon 15 days' prior written notice thereof to the other party, (y) terminated earlier as provided elsewhere herein or (z) extended, in writing, by the Committee and us.  Subject to Bankruptcy Court orders to the contrary, notwithstanding the foregoing, in the event of any expiration or termination of our engagement hereunder, (i) we will continue to be entitled to payment by the Company's bankruptcy estates of the unpaid fees pursuant to Section 3 of this agreement accrued prior to the date of expiration or termination, (ii) the Company's bankruptcy estates shall continue to be obligated to pay in full our unreimbursed expenses as a result of services rendered prior to the date of expiration or termination, and (iii) (A) the obligation of the Company's bankruptcy estates to indemnify us and certain related persons and entities as provided in *Annex A* referred to above and (B) the provisions of Sections 4(c), 4(d), 6, 7, 8, 10, 11 and 12 hereof shall remain operative and in full force and effect regardless of any such termination or expiration.

(b) If, at any time prior to the expiration of 12 months following the expiration or termination of our engagement hereunder (other than a termination of our engagement by (i) us or (ii) the Committee due to our material nonperformance of our obligations hereunder), a Restructuring occurs, then the Company shall pay us the appropriate fee specified in Section 3 above immediately upon the consummation of the Restructuring.  The Committee agrees not to object to our request for allowance of such fee by the Bankruptcy Court or any appellate court, so long as the fee sought by Moelis is consistent with this agreement.

9.  We are a securities firm engaged in a number of merchant banking and investment banking activities.  We may have advised in the past, may currently advise, and may seek to advise in the future, parties with an interest in the Bankruptcy Cases in matters unrelated to them.  Information that Moelis has or can obtain, but of which none of the individuals involved in providing services contemplated by this agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining our responsibilities to the Committee under this agreement.  We will have no duty to disclose to the Company, the Committee or any other party, or utilize for the Company's, the Committee's or any other party's benefit any nonpublic information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on our business.

10.  All aspects of the relationship created by this agreement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein.  All actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court.  If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction we and the Committee hereby irrevocably submit.  WE HEREBY AGREE, AND THE COMMITTEE HEREBY AGREES, TO WAIVE ANY RIGHT TO TRIAL BY JURY

WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR OUR PERFORMANCE THEREOF.

11. This agreement (including all Annexes hereto) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void, unenforceable, or against public policy, it shall be interpreted to the fullest extent enforceable and consistent with its intent, and the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated. This agreement may not be amended or otherwise modified or waived except by an instrument in writing signed by both us and the Committee. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. This agreement shall be binding upon the Committee, the Company and us and their and our respective successors and permitted assigns.

12. The Committee acknowledges and agrees that Moelis has been retained to act solely as an advisor to the Committee, and not as an agent of the Committee or in a fiduciary capacity with respect to the Committee or as an advisor of any other person or entity. The Committee's engagement of Moelis is not intended to confer rights upon any person (including shareholders, employees or creditors of the Company) not a party hereto as against Moelis or its affiliates, or its directors, officers, principals, employees or agents, successors or assigns. Moelis shall act as an independent contractor and not in any other capacity under this agreement, and any duties arising out of its engagement shall be owed solely to the Committee.

13. We acknowledge and agree that we may not assign our obligations and rights under, and our consideration pursuant to, this agreement to another person without the prior written consent of the Committee, which may be granted or withheld in the Committee's sole discretion. Please note the important privacy, business continuity and USA PATRIOT Act disclosures on *Annex B* hereof.

*(Signature page follows)*

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this agreement. By affixing your signature hereto, you represent that you are a person authorized by the Committee to enter into this agreement on its behalf.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name: Thane Carlston
Title: Managing Director

Acknowledged and Agreed to:

JPMorgan Chase Bank, N.A., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____

Its: _____

Dated: _____

Warner Bros. Television., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____

Its: _____

Dated: _____

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this agreement. By affixing your signature hereto, you represent that you are a person authorized by the Committee to enter into this agreement on its behalf.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name:
Title:

Acknowledged and Agreed to:

JPMorgan Chase Bank, N.A., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: *Miriam G Kulnis*
Its: EXECUTIVE DIRECTOR
Dated: 2/13/09

Warner Bros. Television., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____
Its: _____
Dated: _____

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this agreement. By affixing your signature hereto, you represent that you are a person authorized by the Committee to enter into this agreement on its behalf.

Very truly yours,

MOELIS & COMPANY LLC

By: _____.

Name:
Title:

Acknowledged and Agreed to:

JPMorgan Chase Bank, N.A., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____
Its: _____
Dated: _____

Warner Bros. Television, solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: *[signature]*
Its: VICE PRESIDENT
Dated: FEB. 19, 2009

EAST\42345096.2

## ANNEX A

In further consideration of the agreements contained in the engagement letter dated the date hereof (the "engagement"), in the event that Moelis & Company LLC, its divisions, affiliates, or any person controlling Moelis or its affiliates, or the current or former directors, officers, partners, members, agents or employees of Moelis & Company LLC, its affiliates or any person controlling Moelis or its affiliates (collectively, "Indemnified Persons") become involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person (including, without limitation, creditors of Tribune Company (together with its affiliates and subsidiaries as debtors and debtors in possession, the "Company" or the "Debtors"), the Official Committee of Unsecured Creditors (the "Committee") appointed in the Company's cases under title 11 of the United States Code (the "Bankruptcy Cases"), any stockholder of the Company, a receiver, a custodian, a trustee appointed in the Bankruptcy Cases, any other official committee appointed in the Bankruptcy Cases, or a litigation trust, liquidating trust or similar vehicle created in connection with the Bankruptcy Cases (or a trustee of such trust or similar vehicle)), in connection with or as a result of the engagement or any matter referred to in the engagement, the Company shall reimburse such Indemnified Person for its reasonable and customary legal and other out-of-pocket expenses (including, without limitation, the reasonable out-of-pocket costs and expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred. The Company shall also indemnify and hold harmless any Indemnified Person from and against, and the Company and the Committee agree that no Indemnified Person shall have any liability to any party for, any Losses, claims, liabilities, damages and expenses (including actions or proceedings in respect thereof) (collectively, "Losses") (A) related to or arising out of (i) the Company's, the Committee's, or their respective agents' actions or failures to act (including statements or omissions made or information provided by the Committee, the Company or their respective agents) or (ii) actions or failures to act by an Indemnified Person with the Company's, the Committee's or their respective agents' consent or in reliance on the Company's, the Committee's or their respective agents' actions or failures to act or (B) otherwise related to or arising out of the engagement or our performance thereof. The Company's reimbursement and indemnity obligations hereunder shall not apply to any Losses or expenses to the extent that they are finally determined by a court or arbitral tribunal of competent jurisdiction to have resulted from the bad faith, willful misconduct or gross negligence of any Indemnified Person. Any amount previously paid by the Company pursuant to this Annex A will be promptly refunded to the Company to the extent the Losses or expenses are so finally determined to have resulted from the bad faith, willful misconduct or gross negligence of any Indemnified Party.

If such indemnification for any reason (other than such Indemnified Person's bad faith, willful misconduct or gross negligence as finally determined by a court or arbitral tribunal of competent jurisdiction to have primarily caused the Losses) is not available or is insufficient to hold an Indemnified Person harmless, the Company shall contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits

received (or anticipated to be received) by the Company's unsecured creditors, on the one hand, and by us, on the other hand, as well as the relative fault of the Company and Committee on the one hand and of us on the other hand with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect other equitable considerations; <u>provided</u>, <u>however</u>, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for amounts which, in the aggregate, are in excess of the amount of all fees actually received by us from the Company in connection with the engagement. To the extent required by order of the Bankruptcy Court or applicable law, relative benefits to the Company's unsecured creditors, on the one hand, and us, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company's unsecured creditors, as the case may be, pursuant to a Restructuring, whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received, or proposed to be received by us in connection with the engagement.

The Company and the Committee will not, without our prior written consent (which shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit, investigation or proceeding. The Company and the Committee will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's or the Committee's (as appropriate) prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

The Company's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise.

This agreement and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein. All actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction we and the Committee hereby irrevocably submit. WE, THE COMPANY AND THE COMMITTEE HEREBY

EAST\42345096.3

WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

The provisions of this *Annex A* shall apply to the engagement referred to in the engagement letter dated the date hereof (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

JPMorgan Chase Bank, N.A., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____

Its: _____

Dated: _____

Warner Bros. Television., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____

Its: _____

Dated: _____

Accepted and agreed to as of the date hereof:

MOELIS & COMPANY LLC

By: _____

Name: Thane Carlston
Title: Managing Director

The provisions of this *Annex A* shall apply to the engagement referred to in the engagement letter dated the date hereof (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

JPMorgan Chase Bank, N.A., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: *[signature]*
Its: EXECUTIVE DIRECTOR
Dated: FeB 13, 2009

Warner Bros. Television., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____

Its: _____

Dated: _____

Accepted and agreed to as of the date hereof:

MOELIS & COMPANY LLC

By: _____

   Name:
   Title:

EAST\42345096.2

The provisions of this *Annex A* shall apply to the engagement referred to in the engagement letter dated the date hereof (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

JPMorgan Chase Bank, N.A., solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____

Its: _____

Dated: _____

Warner Bros. Television, solely as Co-Chair of the Official Unsecured Creditors' Committee of Tribune Company and not in its individual capacity

By: _____[signature]_____

Its: _____VICE PRESIDENT_____

Dated: _____FEBRUARY 19, 2009_____

Accepted and agreed to as of the date hereof:

MOELIS & COMPANY LLC

By: _____

    Name:
    Title:

## ANNEX B

This *Annex B* is a part of and is incorporated into that certain engagement letter (the "Agreement") dated January 30, 2009 by and between the Official Committee of Unsecured Creditors (the "Committee" or "you") appointed in the cases of Tribune Company and its affiliates and subsidiaries commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Cases") and Moelis & Company LLC ("Moelis," and, together with its affiliates and subsidiaries, "we," "our" or "us").

## PRIVACY STATEMENT

One of the most important components of our relationship with you is the trust that you have placed in us to keep your nonpublic information private.

The information you provide or cause to be provided to Moelis is used for the purposes of advising and guiding you regarding certain investment transactions. The employees of Moelis do not discuss client information with anyone outside the company unless specifically authorized to do so by you. Information we collect and record about you is kept strictly confidential. We maintain security procedures and standards designed to protect nonpublic information at all times. Moelis will be bound by all confidentiality agreements entered into by the Committee.

With the exception of circumstances where we are required by law to disclose your nonpublic information, we do not share such information with any unaffiliated entity. In the event that we change this policy and determine that it is beneficial to share information with an unaffiliated third party, we will notify you beforehand and give you the opportunity to opt out of such information sharing. If you do not respond to such notification, you will be deemed to have opted out of any such information sharing.

Where a client/customer and Moelis have executed a Confidentiality Agreement that agreement will control the non-disclosure of confidential or private information.

## BUSINESS CONTINUITY DISCLOSURE

Moelis maintains a business continuity plan, which addresses interruptions to our normal course of business. This plan is reviewed annually and updated as necessary. Our disclosure statement is available on our website at www.moelis.com and is available in written form upon request.

The plan outlines the actions Moelis will take in the event of a single-building, citywide or regional business interruption, including the use of an office location not affected by the interruption, retrieval of off-site back up data, use of primary and alternate vendors for continued communication, notification of active clients to provide interim information and relocation of personnel to an unaffected site.

## USA PATRIOT ACT

In order to comply with the USA Patriot Act, Moelis must obtain, verify and record information that identifies each entity (or individual) that enters into a business relationship with Moelis. As a result, in addition to obtaining our client/customer's corporate name and address, Moelis may seek to obtain our client/customer's corporate tax identification number and certain other information. Moelis may also request relevant corporate resolutions and other identifying documents.