## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:** Nov. 22, 2011 at 2:00 p.m. (ET) |
| | **Objection Deadline:** Nov. 15, 2011 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 363 AND
553 AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO AND
PERFORMANCE OF OBLIGATIONS UNDER SETTLEMENT AGREEMENT
WITH THE FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA**

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors"), hereby submit this motion (the "Motion")

seeking entry of an order pursuant to sections 363 and 553 of title 11 of the United States Code

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Ltd. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

1

(the "Bankruptcy Code") and rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") authorizing certain of the Debtors (as listed in footnote 2 below, the

"Taxpayers")[2] to enter into and perform their obligations under that certain settlement agreement

with the Franchise Tax Board of the State of California (the "FTB"), a copy of which is attached

hereto as Exhibit A (the "Settlement Agreement").  Pursuant to the Settlement Agreement, the

Debtors seek to settle the disputed prepetition liability of the Taxpayers for corporate income

taxes for the periods ending December 2002 through December 2007 (the "2002-2007 Tax

Years") owed to the FTB.  In accordance with the proposed settlement, the Taxpayers and the

FTB agree that the Taxpayers owe the FTB $3,245,097 in the aggregate for the 2002-2007 Tax

Years, plus interest for periods prior to the Petition Date, which shall be paid to the FTB in

whole through a setoff by the FTB against tax payments already made by Tribune on behalf of

the Taxpayers to the FTB.  In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

      1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain

of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code.  An additional Debtor, Tribune CNLBC, LLC[3], filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors comprise 111

entities.

---

[2] In all, twenty-seven (27) of the Debtors are Taxpayers, as follows: Tribune Company; 435 Production Company; 5800 Sunset Productions Inc.; California Community News Corporation; Candle Holdings Corporation; Channel 40, Inc.; Chicago River Production Company; Chicago Tribune Press Service, Inc.; Eagle New Media Investments, LLC; Fortify Holdings Corporation; Hoy Publications, LLC; KSWB Inc.; KTLA Inc.; Los Angeles Times Communications LLC; Los Angeles Times International, Ltd.; North Michigan Production Company; Shepard's Inc.; TMLH 2, Inc.; TMLS I, Inc.; Tribune California Properties, Inc.; Tribune Entertainment Company; Tribune Entertainment Production Company; Tribune License, Inc.; Tribune Los Angeles, Inc.; Tribune Media Net, Inc.; Tribune Media Services, Inc.; and Tribune Television Northwest, Inc.  The Settlement Agreement has been signed by Tribune on behalf of the Taxpayers.

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Creditors' Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 363 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELEVANT BACKGROUND

6.      The Settlement Agreement resolves disputes between certain of the Debtors and the FTB concerning corporate income taxes of the Taxpayers that FTB asserts the Taxpayers owe for the 2002-2007 Tax Years.  The Taxpayers are members of a unitary group for the purposes of filing a State of California combined unitary franchise (corporate income) tax return.  For the 2002-2007 Tax Years, Tribune was the key corporation for the Taxpayers'

46429/0001-8039386v1

unitary group, meaning that all relevant notices were issued to Tribune on behalf of the

Taxpayers, and all payments were made by Tribune on behalf of all Taxpayers.[4]

       7.     The Taxpayers filed timely tax returns as a unitary tax group for each of

the 2002-2007 Tax Years. The FTB began audits of Taxpayers' liability for the 2002-2007 Tax

Years and ultimately assessed additional taxes in disputed amounts, which initiated the tax

appeals process described below with respect to the Taxpayers' disputed tax liability.

       8.     The California tax appeals process begins with the audit of the corporate

income tax returns filed for the tax years in issue. Upon conclusion of the audit, the auditor

provides the taxpayers with audit work papers and issues Notices of Proposed Assessment. If the

taxpayer decides to protest the proposed assessment set forth in that notice, the taxpayer must file

a protest with the Franchise Tax Board. The taxpayer may then have the merits of the protest

resolved through an administrative process. Specifically, upon filing a protest, a taxpayer may

request that the matter be transferred to the FTB's Settlement Bureau (the "Settlement Bureau"),

where the taxpayer can attempt to reach a consensual resolution of the tax liability dispute. If the

matter is unsuccessfully resolved administratively with the FTB, the taxpayer may seek a review

before the State Board of Equalization. If the taxpayer is unsuccessful at the State Board of

Equalization, a taxpayer may then seek a *de novo* review of the tax liability in a California state

court. In this case, the Taxpayers requested a transfer of their Protests (as defined below) to the

Settlement Bureau before attempting to resolve the proposed deficiencies at the FTB

administrative level. The Settlement Agreement is a result of the negotiations before the

Settlement Bureau.

---

[4] While the FTB filed individual claims against the Taxpayers, the Taxpayers form one unitary tax group in California and file a single combined return for the group. As such, the Taxpayers maintain a single account with the FTB and all tax liabilities are assessed against the Taxpayers as a whole, and not on an entity-by-entity basis. See, e.g., Container Corp. of Am. v. Franchise Tax Board, 463 US 159 (1983) (holding that the Franchise Tax Board properly taxed a corporation and its foreign subsidiaries as a single entity under the unitary business method).

4

9.      The FTB began an audit of the Taxpayers for corporate income taxes on December 27, 2006. This audit covered the tax years ended December 29, 2002, December 28, 2003 and December 26, 2004. Upon concluding the audit, the FTB issued Notices of Proposed Assessment on March 9, 2009 for the tax years 2002 through 2004 that totaled $4,569,360 ("NPA #1").

10.     On January 13, 2009, the FTB began an audit of the Taxpayers for corporate income taxes for the tax years ended December 26, 2005, December 31, 2006 and December 30, 2007. Upon concluding the audit, the FTB issued Notices of Proposed Assessment on October 6, 2009 for the tax years 2005 through 2007 that totaled $2,476,291 ("NPA #2", and together with NPA #1, the "NPAs"). In total, the NPAs assessed California corporate taxes against the Taxpayers in the amount of $7,040,651.

11.     The Taxpayers submitted Protests to the FTB in response to each of the NPAs (the "Protests"). The Taxpayers' Protest of NPA #1 was timely filed on May 8, 2009, and the Taxpayers' Protest of NPA #2 was timely filed on December 4, 2009. The Protests raised the following issues: (i) whether the Taxpayers were entitled to additional Manufacturer's Investment Tax Credits; (ii) whether the Taxpayers were entitled to additional EZ Hiring Tax Credits; (iii) whether capital gains were properly offset by capital losses; and (iv) whether dividends received from two related partnerships should be eliminated from taxable income.

12.     The FTB filed proofs of claim in the Debtors' bankruptcy cases on June 5, 2009, which were assigned claim numbers 3550 through 3577 by the Court-appointed claims agent, asserting claims based on the FTB's records and pending audits of the Taxpayers' tax liabilities for tax periods ending December 31, 1998 and December 31, 2000 through December 31, 2008 (the "Initial California Tax Claims"). On March 4, 2011, the FTB amended certain of

5

the Initial California Tax Claims, which were assigned claim numbers 6710 through 6727 by the

Court-appointed claims agent (the "Amended California Tax Claims"). The Amended California

Tax Claims are based on, among other things, the results of the FTB's audits of the Taxpayers'

tax liabilities for tax periods ending December 31, 1998 and December 31, 2000 through

December 31, 2008 (the Initial California Tax Claims and the Amended California Tax Claims

are referred to herein collectively as the "California Tax Claims").[5] In total, the California Tax

Claims assert claims in the amount of approximately $63,485,740.87. As stated above, the

Taxpayers and the other Debtors have disputed the amount of the corporate income tax liability

asserted in the NPAs and in the California Tax Claims.

13.    In an attempt to further a consensual resolution of the disputed tax

liabilities set forth in the California Tax Claims and the NPAs, the Taxpayers filed requests to

transfer to the Settlement Bureau the matter relating to NPA#1 on July 2, 2009 and the matter

relating to NPA #2 on February 12, 2010. The Taxpayers met with the Settlement Bureau on

December 16, 2010 in order to reach a settlement and resolution of the NPAs and the California

Tax Claims.

14.    After discussions and explanations of each parties' position, the Taxpayers

and the Settlement Bureau reached an agreement in concept on December 16, 2010 regarding the

approach to determining the amount of corporation taxes the Taxpayers owe the FTB for the

2002-2007 Tax Years. To aid in negotiations, the Taxpayers provided the Settlement Bureau

with additional detailed support information over the next few months with respect to several of

---

[5] Although the California Tax Claims nominally state that the claims include claims for tax liability for the tax year ending December 31, 2008, the California Tax Claims report that the tax liability for such tax year is "TBD." The FTB has taken the position that because the tax year ending December 31, 2008 ended after the Petition Date, the Taxpayers' liability for the 2008 tax year constitutes a post-petition liability of the Taxpayers. As a result, the FTB did not include the amount of the tax liability for the 2008 tax year in the California Tax Claims, but have reserved the right to amend the California Tax Claims to include the tax liability for the 2008 tax year if it is determined that all or part of such liability does not constitute a post-petition claim.

6

the issues disputed by the parties, such as the computation of capital gains and losses and the

calculation of additional credits, and the Settlement Bureau and the Taxpayers ultimately agreed

that the Taxpayers owed $3,245,097 in the aggregate for corporate income taxes for the 2002-

2007 Tax Years, plus applicable interest. After the Settlement Bureau and the Taxpayers agreed

to the amount of the tax liability, the parties continued negotiations over the next several months

regarding the language of the settlement agreement and the application of overpayments held by

FTB to offset the agreed-upon tax liability. Following these negotiations between the Taxpayers

and the Settlement Bureau, the agreement was embodied in the Settlement Agreement attached

hereto as Exhibit A.

15.     In the Settlement Agreement, the FTB and the Taxpayers have agreed that

for the 2002-2007 Tax Years, the Taxpayers owe corporate income taxes to the FTB in the

amount of $3,245,097, plus interest for periods prior to the Petition Date (the "Tax Liability").

See Settlement Agreement at ¶¶ 1, 2. As provided in the Settlement Agreement, FTB intends to

set off the Tax Liability against certain tax refunds owed by the FTB to the Taxpayers that are

currently being held by the FTB pending resolution of the Taxpayers' liabilities to the FTB.

Three tax refunds are currently being held by the FTB, as follows:

(a)  refunds for the taxable years ending December 1997 and December 1999 in the
amounts of $413,854 and $488,006, respectively, which are being held by the FTB pursuant to a
settlement agreement between the FTB and the Times Mirror Company, California Community
News Corporation, and Tribune dated March 19, 2010 (the "2010 FTB Settlement"), which
settled claims for franchise tax refunds for the 1997, 1998 and 1999 tax years;

(b)  an overpayment approved by the FTB for the taxable year ending in December 1998
in the amount of $36,226,073, excluding applicable interest, resulting from the filing of amended
returns primarily to report federal audit adjustments. This amount includes a $476,644 refund
previously agreed to by the FTB and Tribune in the 2010 FTB Settlement;  and

(c)  refunds for the taxable years ending in December 2000 and December 2001 in the
aggregate amount of $411,521 pursuant to a settlement agreement between the FTB and KTLA,
Inc., California Community News Corporation and Tribune dated February 3, 2009 (the "2009

7

FTB Settlement"), which settled claims for franchise tax refunds for the 2000 and 2001 tax
years.

The amounts held by the FTB described in this paragraph are referred to collectively hereafter as
the "Overpayments." The 2009 FTB Settlement was approved by the Bankruptcy Court by an
order entered on September 2, 2009 [Docket No. 2074],[6] and the 2010 FTB Settlement was
approved by the Bankruptcy Court by an order entered on April 19, 2010 [Docket No. 4097].[7]
Each of the 2009 FTB Settlement and the 2010 FTB Settlement provided that the FTB would be
entitled to retain the refunds as tax deposits pending the outcome of the audits for the 2002-2007
Tax Years so that the FTB could exercise any setoff rights if necessary.[8] The Taxpayers and the
FTB have agreed that the FTB will refund the remaining Overpayments, plus applicable interest,
after the FTB offsets the Tax Liability and amends the California Tax Claims.[9]

16.     The FTB will amend the California Tax Claims to take into account the

settlement described herein, which will reduce the California Tax Claims by over $57 million;

---

[6] As explained in the motion for approval of the 2009 FTB Settlement, certain of the Debtors (Tribune, KTLA, Inc.
and California Community News Corporation) had claimed they were entitled to $2,716,112 in franchise tax refunds
and credits for 2000 and 2001 that the FTB denied it owed. Prior to the Petition Date, $1,882,572 of the disallowed
refunds and credits were resolved in favor of these Debtors, leaving $833,540 in dispute. The 2009 FTB Settlement
provided that Tribune was entitled to (i) a refund for the 2000 and 2001 tax years in the amount of $310,700, plus
$100,820.55 in interest through December 31, 2008 (for a total of $411,520.55) and (ii) a tax credit in the amount of
$397,838 to carryover to later tax years.

[7] As explained in the motion for approval of the 2010 FTB Settlement, certain of the Debtors (Tribune and
California Community News Corporation) claimed they (as successors in interest to Times Mirror Company) were
entitled to a tax refund in the amount of $2,874,506 for the 1997 tax year, $605,225 for the 1998 tax year and
$608,247 for the 1999 tax year that the FTB denied it owed. The 2010 FTB Settlement provided that Tribune was
entitled to tax refunds in the amount of $413,854 for the 1997 tax year, $476,644 for the 1998 tax year, and
$488,006 for the 1999 tax year. The 2010 FTB Settlement also provided that Tribune was entitled to certain
depreciation deductions for the 2002-2008 tax years and that California Community News Corporation was entitled
to certain credits from the 1999 tax year that would be available for subsequent tax years.

[8] See Docket No. 1965, Ex. A at ¶ 2 ("The parties understand and agree that FTB has pending audits related to
Taxpayer's liability for the taxable years 2002 through 2007 and that FTB will not pay the refunds unless and until it
determines that it does not have and will not have any set-off or recoupment rights related to such refunds as a result
of the audits or otherwise. Until such determination is made, the settlement refund amounts will be held on account
as a tax deposit."); Docket No. 3887, Ex. A at ¶ 2 (same).

[9] The Taxpayers and the FTB have agreed separately to work together to determine the manner in which the
Overpayments will be applied to offset the Tax Liability, to calculate the applicable interest accruing on the
Overpayments, and to reconcile the net amount of overpayments after the Tax Liability is offset.

specifically, from $63,485,740.87 in the aggregate to approximately $6,158,285.66 in the aggregate. After FTB offsets the Tax Liability against the Overpayments, the California Tax Claims will be further reduced to only $2,913,188.66 in unresolved amounts.[10] The Settlement Agreement does not resolve or otherwise affect any disputes or claims regarding corporate income taxes owed for periods other than the 2002-2007 Tax Years, nor does the Settlement Agreement affect any defenses or counterclaims of any of the Debtors respecting any such tax liabilities.

## **RELIEF REQUESTED**

17.    By this Motion, the Debtors respectfully request that the Court enter an order authorizing the Taxpayers to enter into and perform all of their obligations under the Settlement Agreement. The Settlement Agreement settles the disputed claims asserted by the FTB relating to the Taxpayers' corporate income tax liabilities for the 2002-2007 Tax Years. The settlement of the Taxpayers' tax liabilities for the specified taxable periods is final and conclusive with respect to all tax, penalties, and interest owed by the Taxpayers for such taxable periods, except for four limited exceptions set forth in the Settlement Agreement.[11] Further, the Debtors request that the Court authorize the payment of the Tax Liability by permitting the FTB to setoff the Tax Liability against the Overpayments held by the FTB.

---

[10] The unresolved amounts in the California Tax Claims relate to the Taxpayers' alleged tax liability for years other than the 2002-2007 Tax Years. As noted above, however, the remaining $2,913,188.66 does not include the Taxpayers' alleged tax liability for the 2008 tax year because the FTB has claimed that the Taxpayers' tax liability for the 2008 tax year constitutes a post-petition claim.

[11] Specifically, the Settlement Agreement is a final and complete resolution of the Taxpayers' tax liabilities for the 2002-2007 Tax Years, except for the following exceptions: (i) further adjustments made to Taxpayers' California tax liability, which were not at issue in the Settlement Agreement or included in the settlement amount, due to any final federal determination(s), as defined in Revenue and Taxation Code section 18622; (ii) further adjustments made to Taxpayers' California tax liability, any associated interest, and/or any penalties provided for under Revenue and Taxation Code sections 19164, 19774 or 19777 that relate to any abusive tax avoidance transaction(s), as defined in Revenue and Taxation Code section 19753, subdivision (c); (iii) any penalty provided for in Revenue and Taxation Code section 19772 for a failure to disclose a listed transaction or other reportable transaction; and (iv) any amounts already due and payable by Taxpayers as of the date of Tribune's execution of the Settlement Agreement. (Settlement Agreement ¶ 6.)

## BASIS FOR RELIEF REQUESTED

18.    Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the
> court may approve a compromise or settlement.  Notice
> shall be given to creditors, the United States trustee, the
> debtor, and indenture trustees as provided in Rule 2002 and
> to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).  The Third Circuit has stated that section 363 of the Bankruptcy Code

is the substantive provision requiring a hearing and court approval of settlements, while

Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured.  See

Myers v. Martin (In re Martin), 91 F.3d 389, 395 n. 2 (3d Cir. 1996) (distinguishing the

substance of section 363 from the procedural effect of Bankruptcy Rule 9019).

19.    In determining whether to approve a settlement pursuant to section 363 of

the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy

court is required to "assess and balance the value of the claim that is being compromised against

the value to the estate of the acceptance of the compromise proposal." Id. at 393.  In making this

determination, a court should consider four criteria: "(1) the probability of success in the

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay...; and (4) the paramount interest of the creditors." Id.

(referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,

390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D.

Del. 1998) (listing the Anderson factors as controlling whether a settlement should be approved).

The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the

estate.  See In re Louise's, Inc., 221 B.R. 798, 801 (D. Del. 1997).

20.    The terms of the Settlement Agreement are fair and reasonable and in the

best interests of the Debtors' estates.  The Settlement Agreement is the product of arm's-length

negotiations between the Taxpayers and the California Settlement Bureau that took place over a nine-month period in 2010 and 2011. During the course of the negotiations, the Taxpayers and the FTB exchanged views as to the merits of their respective positions regarding the disputed California Tax Claims, the NPAs, and the Protests. As a result of these negotiations, the FTB and the Taxpayers agreed that the amounts of taxes and interest set forth in the Settlement Agreement represent an accurate amount of tax liabilities owed to the FTB for the 2002-2007 Tax Years.

21.    As a result of the negotiations and Settlement Agreement, the FTB's claim for taxes for the six (6) tax years ending between December 2002 through December 2007, inclusive, will be reduced by over $57 million from the amount the FTB asserted it was owed in the California Tax Claims, with the Taxpayers only owing the FTB approximately five percent (5%) of the amount claimed by the FTB for the 2002-2007 Tax Years in the California Tax Claims. The settlement of the Tax Liability also represents a reduction of more than fifty percent (50%) of the amounts assessed by the FTB in the NPAs. The Settlement Agreement thus constitutes a substantial reduction of the Taxpayers' potential liability to the FTB, and is a significant benefit to the Debtors' estates.

22.    Furthermore, the dispute between the Taxpayers and the FTB has been on-going for over two years and, and absent the resolution afforded by the Settlement Agreement, the FTB and the Taxpayers either would be forced to continue to litigate the merits of the California Tax Claims for the 2002-2007 Tax Years or the Taxpayers would be forced to accept the tax liability asserted in the NPAs. The next step in the tax appeals process involves litigating the merits of the claims before the State Board of Equalization, an administrative body, followed by pursuing relief in a California state court if necessary. Litigating the claims would be costly,

11

time-consuming, and disruptive to the Debtors, while providing an uncertain outcome that is

unlikely to reduce further by a material amount the Taxpayers' tax liability for the 2002-2007

Tax Years. In order to secure the benefits of the proposed settlement while avoiding the cost and

uncertainty of litigation, the Debtors seek approval of the Settlement Agreement. The Taxpayers

assessed the merits of each parties' position, the risks, the likelihood of recovery, and the costs of

continuing to litigate the portion of the California Tax Claims relating to the 2002-2007 Tax

Years and determined that the settlement described in the Settlement Agreement is fair and

reasonable. In addition, resolving the California Tax Claims for the 2002-2007 Tax Years is a

prerequisite to obtaining a refund of over $34 million from the FTB because the FTB has held

the Overpayments as a tax deposit pending the resolution of the tax liability for the 2002-2007

Tax Years.

   23. The Debtors have further determined that authorizing the FTB to setoff

the Tax Liability against the Overpayments is appropriate. Section 553 of the Bankruptcy Code

provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this
> title, this title does not affect any right of a creditor to offset a mutual debt owing
> by such creditor to the debtor that arose before the commencement of the case
> under this title against a claim of such creditor against the debtor that arose before
> the commencement of the case...

11 U.S.C. § 553. The Bankruptcy Code thus preserves whatever setoff rights a creditor may

have outside of bankruptcy. See, e.g., In re Alta+Cast, LLC, No. 02-12982, 2004 WL 48114881

at *6 (Bankr. D. Del. Mar. 2, 2004). In accordance with section 553 of the Bankruptcy Code, the

FTB would have the right to offset any amounts owed by the Taxpayers against the

Overpayments. Indeed, as described above, the previous settlement agreements between the

FTB and certain of the Debtors approved by the Court expressly contemplated such setoff, as the

parties agreed that the refunds owed to certain of the Debtors would be held by the FTB as tax

12

deposits pending the completion of the FTB's ongoing audits of the Debtors so that the FTB

could exercise setoff rights if necessary.  [Docket No. 1965, Ex. A at ¶ 2; Docket No. 3887, Ex.

A at ¶ 2.]  For purposes of the setoff at issue, the debts between the Taxpayers and the FTB can

be considered mutual because the Taxpayers file returns and incur tax liability to the FTB as a

unitary tax group, and the Overpayments are credited to the Taxpayers' single account with the

FTB.  Furthermore, although the FTB filed individual claims against the each Taxpayer based on

the estimated share of the Taxpayer's liability, the Tax Liability agreed to in the Settlement

Agreement has been determined to be the liability of the Taxpayers as unitary tax group, and is

not calculated on an entity-by-entity basis.  See Settlement Agreement, Ex. C (calculating the

Tax Liability of the Taxpayers).

        24.     In addition, even if the FTB was not able to assert its setoff rights, the

FTB has claimed that the majority of the California Tax Claims constitute priority tax claims that

would be paid in full under any plan of reorganization under section 1129(a)(9)(C) of the

Bankruptcy Code.  The Debtors believe that at least a portion of the Tax Liability would likely

constitute a priority tax claim that would be paid in full under a plan of reorganization.[12]  On the

whole, the setoff of the Tax Liability will not materially affect the Taxpayers' estates and should

be approved.

        25.     In addition, once the Settlement Agreement becomes effective, the FTB

will amend the California Tax Claims, as contemplated by the Settlement Agreement.  See

Settlement Agreement, ¶ 4 ("FTB shall modify the Claims to take this settlement into account.").

Specifically, the FTB is required to amend the California Tax Claims to reflect that the

Taxpayers' aggregate tax liability for the 2002-2007 Tax Years is $3,245,097 (plus interest for

---

[12] The Debtors reserve the right to object to the claimed priority status of the unresolved portion of the California Tax Claims.

periods prior to the Petition Date) and that such tax liability has been full satisfied through the setoff so that the California Tax Claims accurately reflect the unresolved tax liability asserted by the FTB.

## NOTICE

26.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel to the administrative agents for Tribune's prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' post-petition loan facility; (v) the indenture trustees for Tribune's prepetition notes; (vi) counsel to FTB; and (vii) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

27.     No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Taxpayers to enter into and perform their obligations under the Settlement Agreement and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
      November 1, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Allison Ross Stromberg
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-8039386v1