## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: November 22, 2011 at 2:00 p.m. (ET)**<br>**Objection Deadline: November 15, 2011 at 4:00 p.m. (ET)** |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 553 AND FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT AGREEMENT BY AND BETWEEN INSERTCO INC. AND 57-11 49th PLACE, LLC

The debtors and debtors-in-possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") seeking entry of an order

in the form submitted herewith, pursuant to sections 363 and 553 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(the "Bankruptcy Rules") authorizing one of the Debtors, InsertCo, Inc. ("InsertCo"), to enter

into that certain Settlement and Release Agreement, attached hereto as Exhibit A (the

"Agreement"), with 57-11 49th Place, LLC (the "Landlord," and together with InsertCo, the

"Parties").  The Debtors hereby request the Court's authorization to compromise and settle the

Landlord's disputed claim [Claim No. 6242] (the "Lease Claim") against InsertCo, upon the

terms and conditions set forth in the Agreement, which would result in the Lease Claim, asserted

in a face amount of $1,065,897.32, being reduced and allowed in a modified amount of

$521,254.00, net of the security deposit currently held by the Landlord.  In support of this

Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008, the Court

entered an order consolidating the Tribune Debtors' chapter 11 cases for procedural purposes

only.  An additional Debtor, Chicago National League Ball Club, LLC (n/k/a Tribune CNLBC,

LLC), voluntarily commenced a chapter 11 case on October 12, 2009, and that case was

procedurally consolidated with the other Debtors' chapter 11 cases by an order of the Court

entered October 14, 2009.

2.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On December 18, 2008, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors in these cases (the

"Committee").

2

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 363 and 553 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND OF THE MOTION

5.     Prior to the Petition Date, the Landlord, as successor landlord, and InsertCo, as co-tenant with Shuttle Printing, Inc. ("Shuttle"), were parties to that certain Lease dated April 24, 2003 among Wallace Packaging Corporation as Lessor and Shuttle Printing, Inc. and Insertco [sic] Inc. as Lessee (the "Lease") affecting the premises commonly known as 57-11 49th Place, in New York, New York (the "Premises").

6.     On August 7, 2009, the Debtors filed that certain Fifth Omnibus Motion For Entry of An Order to Reject Certain Leases of Nonresidential Real Property and Related Executory Contract Pursuant to Section 365 of the Bankruptcy Code [Docket No. 1920] (the "Rejection Motion"), pursuant to which the Debtors sought the Court's approval for InsertCo to reject the Lease. On September 2, 2009, the Court entered an order granting the Rejection Motion [Docket No. 2073] (the "Rejection Order"), which provided, among other things, that the Lease was deemed to be rejected by InsertCo as of August 31, 2009. On September 18, 2009, the Landlord timely filed its Lease Claim for rejection damages in connection with rejection of the Lease as a general unsecured claim for $1,065,897.32. The Lease Claim was assigned Claim No. 6242 by the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC (the "Claims Agent").[2]

---

[2] On September 30, 2009, Shuttle, as a co-tenant on the Lease, timely filed a contingent claim (the "Indemnification Claim") based on indemnification arising in connection with rejection of the Lease, on which Shuttle was also liable. The Indemnification Claim was assigned Claim No. 6260 by the Claims Agent. The Debtors intend to object to and seek the disallowance of the Indemnification Claim pursuant to 11 U.S.C. § 502(e)(1).

7.     After the rejection of the Lease, InsertCo attempted to initiate discussions with both the Landlord and Shuttle in the hopes of effectuating a tripartite settlement with all parties to the Lease.  The Debtors have negotiated over a period of months with the Landlord in an effort to resolve with finality any and all claims that currently exist or may in the future exist against InsertCo relating to the Lease Claim and Lease and to reconcile the Parties' different calculations of the damages arising from the rejection of the Lease.  Shuttle has not substantively responded to the Debtors' efforts to resolve the Lease Claim and the Indemnification Claim.

8.     As a result of their discussions, the Parties have agreed that the Lease Claim should be reduced to $521,254, consisting of $943,778 in rent reserved ($869,238 in base rent and $74,540 in applicable taxes), as the maximum amount of damages allowable under section 502(b)(6) of the Bankruptcy Code, less the security deposit currently held by the Landlord in the amount of $422,524 (the "Security Deposit").  As part of the resolution of the Lease Claim, the Landlord would be entitled to retain the Security Deposit.  The Parties' mutual agreement on the allowance of this reduced amount is the subject of this Motion.

## RELIEF REQUESTED

9.     The Debtors respectfully request that the Court enter an order authorizing Insertco to enter into, and carry out, the terms of the Agreement and to take all other actions necessary or desirable to implement the provisions of the Agreement.  The Debtors also request that the order authorize the Claims Agent to amend the claims register in these chapter 11 cases to reflect the allowed claim amount set forth in the Agreement.[3]

---

[3] This Motion is filed out of an abundance of caution, given that the Allowed Claim (as defined below) falls below the $1 million threshold requiring Bankruptcy Court approval pursuant to that certain Order Granting Debtors (I) Limited Waiver of Requirements of Local Rule 3007-1(f) and (II) Authority to Settle Disputed Claim [Docket No. 2657], which authorizes the Debtors to enter into claim settlements without Court approval if the settlement amount does not exceed $1 million.  Nonetheless, given the unusual nature of claims relating to the Lease, the Debtors believe it is prudent to file this Motion to ensure that all parties are on notice as to the settlement embodied in the Agreement and its terms.

10.    The Agreement itself is attached hereto as <u>Exhibit A</u>. The following is a summary of the material terms of the Agreement:[4]

- <u>Setoff of the Security Deposit</u>. The Landlord shall be entitled under the Agreement to retain the Security Deposit it currently holds in the amount of $422,524 and to offset such amount against the Lease Claim (Agmt. at ¶2.)

- <u>Reduction and Allowance of Lease Claim</u>. The Lease Claim, originally asserted in the amount of $1,065,897.32, shall be reduced and allowed as a general unsecured claim against InsertCo in the modified amount of $521,254.00 (the "<u>Allowed Claim</u>" or "<u>Settlement Amount</u>") after taking into account the setoff of the Security Deposit. (Agmt. at ¶ 2.) The Allowed Claim shall be satisfied in the same manner as all other general unsecured claims against InsertCo under the chapter 11 plan that is confirmed for InsertCo. (*Id.*)

- <u>Landlord's Release of Claims</u>. Satisfaction of the Allowed Claim in accordance with the Plan shall be in full and final satisfaction of any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, including, but not limited to, those arising under the Lease, obligations, controversies, debts, costs, expenses, damages, judgments, orders and liabilities of whatever kind or nature, in law, equity or otherwise, whether now known or unknown, vested or contingent, which exist, or may exist in the future, against InsertCo, any of InsertCo's respective parents, affiliates, subsidiaries (either direct or indirect), divisions, officers, directors, members, shareholders, employees and agents, and each of their successors, heirs, executors, administrators, and/or assigns arising from or related to the Lease Claim or the Lease. (Agmt. at ¶ 4.)

- <u>Mutual Waiver of Claims</u>. The Parties agree that the Allowed Claim, after taking into account the setoff of the Security Deposit, is the maximum amount permitted to be recovered by the Landlord pursuant to Section 502(b)(6) of the Bankruptcy Code in connection with any damages resulting from the rejection of the Lease. Landlord agrees to waive and release any additional claims, if any, against the Debtors only arising out of or relating to (i) the liabilities asserted in the Lease Claim and (ii) the Lease; <u>provided</u>, <u>however</u>, that the Landlord is expressly reserving all rights, remedies, and claims it may have against the co-tenant, Shuttle Printing, Inc. Landlord further agrees not to file any additional proofs of claim against the Debtor for liabilities arising out of or relating to (a) the Lease Claim or (b) the Lease. In consideration of the foregoing, InsertCo agrees to waive and release any set off and counterclaims that it may have against Landlord arising out of or relating to the subject matter of the Lease Claim except as set forth herein. (Agmt. at ¶ 7.)

---

[4] The terms as set forth in this Motion are intended only as a summary of the terms of the Agreement. The Motion shall not in any way supersede or alter the terms of the Agreement. In the event of any conflict between the summary herein and the Agreement itself, the terms of the Agreement shall control.

## BASIS FOR RELIEF REQUESTED

11.     The Court has discretion to approve settlements pursuant to section 363 of the Bankruptcy Code after notice and a hearing.  See Myers v. Martin (In re Martin), 91 F.3d 389, 394, 395 n.2 (3d Cir. 1996).  The procedure for approving a settlement in bankruptcy is set forth by Bankruptcy Rule 9019, which provides, in relevant part:

> On motion of the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

12.     In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Rule 9019, a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  Martin, 91 F.3d at 393.  The bankruptcy court will consider four criteria in applying this balancing test: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (relying on the same four factors to determine the fairness, reasonableness, and adequacy of a settlement). "The court must also consider 'all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'"  Marvel, 222 B.R. at 249 (citing TMT Trailer, 390 U.S. at 424).  The ultimate inquiry is whether, in the court's discretion, the compromise embodied in

the settlement "is fair, reasonable, and in the best interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

13.     The compromise proposed in the Agreement is fair, reasonable, and in the best interests of InsertCo's estate. The proposed settlement reduces a filed proof of claim by more than $500,000 (and more than $100,000 net of application of the Security Deposit), brings that claim in line with the Parties' calculations of the appropriate amount of the Lease Claim that may be asserted by the Landlord in accordance with the maximum amount permitted by section 502(b)(6) of the Bankruptcy Code, and provides for the Landlord's release of any further claims against InsertCo arising from the Lease. The compromise embodied in the Agreement also resolves one of the more substantial remaining lease rejection-related claims pending against the Debtors' estates.

14.     The Parties have developed their view of the maximum allowable amount of the Lease Claim with reference to section 502(b)(6) of the Bankruptcy Code, which provides that damages arising from the rejection of a lease are capped at the greater of one year or fifteen percent (15%), not to exceed three (3) years, of "rent reserved" following the earlier of the Petition Date or the date of surrender of the lease. 11 U.S.C. § 502(b)(6). Under case law in this District and others, "rent reserved" includes charges that are (a) designated as (i) 'rent' or 'additional rent' in the lease or (ii) provided as the tenant's obligation in the lease; (b) related to the value of the property or the lease thereon; and (c) properly classifiable as rent because it is a fixed, regular, or periodic charge. See In re PPI Enter., 228 B.R. 339, 349 (Bankr. D. Del. 1998) (citing In re McSheridan, 184 B.R. 91, 99-100 (B.A.P. 9th Cir. 1995); see also In re Crown Books Corp., 291 B.R. 623 (Bankr. D. Del. 2003); In re Foamex Int'l Inc., et al., 368 B.R. 383, 394 (Bankr. D. Del. 2007) (affirming the McSheridan test). All other damages that might arise

from the lease, not constituting "rent reserved," are not recoverable from a debtor. Crown Books, 291 B.R. at 627 n.4.

15.    In the instant case, the parties have agreed that proper calculation of the lease rejection damages cap includes $869,238.00 for one (1) year of base rent from the Petition Date, including pertinent rent escalators, as required by the Bankruptcy Code. See In re Iron-Oak Supply Corp., 169 B.R. 414, 4250 (Bankr. E.D. Cal. 1994) (finding that periodic rent increases are honored when calculating the one year rent amount); see also In re Allegheny Int'l, Inc., 136 B.R. 396, 402-03 (Bankr. W.D. Pa. 1991) (same). Pursuant to the Lease, rent is calculated for the first six (6) months at $71,524 per month ($858,502 per annum from June 1, 2008 until May 31, 2009) and the second six (6) months at $73,331 ($879,972 per annum from June 1, 2009 until May 31, 2010). (Lease, § 2.)

16.    Rent under the Lease also includes certain taxes. (Lease, § 8.) Under the McSheridan test, taxes can be included in the damage calculation as rent reserved when, as here, they go the value of the lease, were periodic, and were designated as rent. Crown Books, 291 B.R. at 627 n.4. As such, rent reserved under the Lease properly includes one (1) year of taxes from the Petition Date, which the Debtors have calculated at $74,540. The maximum rent reserved that could arise from the rejection of the Lease pursuant to 11 U.S.C. § 502(b)(6) is thus $943,778 ($869,238 in rent and $74,540 in taxes).[5] See Id. The Parties have agreed to offset this amount by the security deposit of $422,524, which is currently being held by the Landlord. Therefore, the Allowed Claim is properly factored at $521,254. See In re PPI Enters., 324 F.3d 197, 208 (3d Cir. 2003) ("Once the §502(b)(6) calculation is complete, the prevailing view, and the view adopted by the Bankruptcy Court here, favors deduction of a security deposit from the

---

[5] As part of the process of arriving at the Settlement Amount specified in the Agreement, the Debtors objected to the inclusion of additional amounts that had previously been asserted by the Landlord as part of its Claim. Those objections are reflected in the Settlement Amount.

8

§502(b)(6) cap of a landlord's claim"); Cf. In re Handy Andy Home Improvement Ctrs., Inc., 222 B.R. 571, 574-75 (Bankr. N.D. Ill. 1998) (deducting security deposit from claim after the statutory cap is applied).

17.     The Agreement is the product of arm's-length negotiations between the Parties, which involved multiple exchanges between and among the Parties' counsel and included informal, limited discovery. The end result of the negotiations was a settlement that InsertCo believes, in its business judgment, to be fair and reasonable and accurately applies the damages cap set forth in 11 U.S.C. § 502(b)(6). The Parties' settlement should thus be approved by the Court.

## NO PRIOR REQUEST

18.     No previous request for the relief requested in this Motion has been made in this or any court.

## NOTICE

19.     Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agent for the post-petition lenders; (iv) counsel to the administrative agents for Tribune Company's prepetition lenders; (v) counsel to the Landlord; (vi) counsel to Shuttle; and (vii) all parties entitled to receive notice in these Chapter 11 Cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested, InsertCo submits no further notice need be given.

WHEREFORE, InsertCo respectfully requests that the Court enter an order (i) authorizing InsertCo to enter into and perform their obligations under the Agreement and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
       November 1, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Geoffrey M. King
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION