# EXHIBIT B

## Lease

**LEASE**

dated April 24, 2003

among

Wallace Packaging Corporation

as Lessor

and

Shuttle Printing, Inc. and
Insertco Inc.

as Lessee

Affecting premises commonly known as 57-11 49th Place, in The City of New York,
New York.

1 -- Demised Premises and Lease Term
2 -- Rent
3 -- No Counterclaim or Abatement
4 -- Use of Demised Premises
5 -- Condition of Demised Premises
6 -- Maintenance and Repair
7 -- Alterations and Additions
8 -- Impositions
9 -- Compliance with Requirements
10 -- Liens
11 -- Permitted Contests
12 -- Utility Services
13 -- Insurance
14 -- Indemnification
15 -- Damage or Destruction
16 -- Taking of the Demised Premises
17 -- Quiet Enjoyment
18 -- Right to Cure Lessee's Default
19 -- Events of Default and Termination
20 -- Repossession
21 -- Reletting
22 -- Assignment of Subrents
23 -- Lessee's Equipment
24 -- Security Deposit
25 -- Survival of Obligations; Damages
26 -- Injunction
27 -- Waivers
28 -- Lessor's Remedies Cumulative
29 -- Estoppel Certificates
30 -- Assignment and Subletting
31 -- Subordination and Attornment
32 -- Entry by Lessor
33 -- Conveyance by Lessor
34 -- No Merger of Title
35 -- Acceptance of Surrender
36 -- End of Lease Term
37 -- Option to Extend Lease Term
38 -- Brokerage
39 -- Definitions
40 -- Notices
41 -- Miscellaneous

Exhibit A -- Description of Land
Exhibit B -- Work to be Performed
Exhibit C -- Landlord's Waiver

# LEASE

This **LEASE**, is dated April 24, 2003, by and between Wallace Packaging Corporation, a New York corporation, having an address at 57-11 49th Place, Maspeth, NY 11385 ("Lessor"), and Shuttle Printing, Inc., a New York corporation, and Insertco, Inc., a New York corporation, each having an address at 48-23 55th Avenue, Maspeth, NY 11378 (collectively hereinafter referred to as "Lessee").

## 1.  The Demised Premises and Lease Term

In consideration of the Rent hereinafter reserved and the terms, covenants and conditions set forth in this Lease to be observed and performed by Lessee, Lessor hereby demises and leases to Lessee, and Lessee hereby rents and takes from Lessor, the following property (collectively hereinafter referred to as the "Demised Premises"):  (a) all the land (the "Land") described in Exhibit A hereto and designated as Block 2603, Lots 52 & 68; (b) all buildings, structures and other improvements (the "Improvements") now or hereafter located on the Land, other than Lessee's Equipment as hereinafter defined; and (c) all rights of way or of use, servitudes, licenses, tenements, appurtenances and easements now or hereafter belonging or pertaining to any of the foregoing; **TO HAVE AND TO HOLD** the Demised Premises unto Lessee, and the permitted successors and assigns of Lessee, upon and subject to all of the terms, covenants and conditions herein contained, for a term (the "Lease Term") of nine (9) years and nine (9) months, commencing on June 1, 2003 and expiring on February 28, 2013, unless the Lease Term shall sooner terminate or be extended pursuant to any of the conditional limitations or other provisions of this Lease.

## 2.  Rent

Lessee covenants to pay to Lessor as a net minimum rent (the "Fixed Rent") during the Lease Term $777,768.00 per annum for the portion of the Lease Term from August 1, 2003 until May 31, 2005, and $797,208.00 per annum from June 1, 2005 until May 31, 2006, and $817,140.00 per annum from June 1, 2006 until May 31, 2007, and $837,569.00 per annum from June 1, 2007 until May 31, 2008, and $858,504.00 per annum from June 1, 2008 until May 31, 2009, and $879,972.00 per annum from June 1, 2009 until May 31, 2010, and $901,968.00 per annum from June 1, 2010 until May 31, 2011, and $924,516.00 per annum from June 1, 2011 until May 31, 2012, and $947,628.00 per annum from June 1, 2012 through the remainder of the Lease Term.

The Fixed Rent shall be payable in advance in equal monthly installments on the first day of each calendar month.  If the Lease Term does not commence on the first day of a month, the Fixed Rent for the month in which the Lease Term commences shall be appropriately apportioned. ~~The first installment of Fixed Rent shall be paid simultaneously with the execution of this Lease.~~

Each date on which Fixed Rent is payable hereunder is hereinafter referred to as a "Rent Payment Date".

Lessee also covenants to pay, from time to time as provided in this Lease, as Additional Rent: all other amounts and obligations which Lessee assumes or agrees to pay under this Lease; interest at the rate of fifteen percent per annum on such of the foregoing amounts and obligations as are payable to Lessor and are not paid within ten days after the due date (or, if a demand therefor is required by the terms of this Lease, within ten days after such demand), from the due date or such demand, as the case may be, until the payment thereof; a late payment charge equal to $5,000.00 of any installment of Fixed Rent not paid within five days after the date when due; and interest at the rate of fifteen percent per annum on all installments of Fixed Rent not paid on the due date, from the due date until paid. If Lessee fails to pay any such Additional Rent, Lessor shall have all the rights, powers and remedies provided for in this Lease or at law or in equity or otherwise in the case of nonpayment of rent.

All Fixed Rent and Additional Rent (collectively hereinafter referred to as "Rent") shall be paid in such coin or currency (or, subject to collection, by good check payable in such coin or currency) of the United States of America as at the time shall be legal tender for the payment of public and private debts, at the office of Lessor as set forth above, or at such place and to such person as Lessor from time to time may designate.

## 3. No Counterclaim or Abatement

All Rent shall be absolutely net to Lessor so that this Lease shall yield to Lessor the full amount of the installments thereof throughout the Lease Term without deduction. All Rent shall be paid to Lessor without notice, demand, counterclaim, setoff, deduction or defense, and nothing shall suspend, defer, diminish, abate or reduce any Rent, except as otherwise specifically provided in this Lease.

The obligations and liabilities of Lessee hereunder in no way shall be released, discharged or otherwise affected (except as expressly provided herein) by reason of: any damage to or destruction of or any Taking of the Demised Premises or any part thereof; any restriction or prevention of or interference with any use of the Demised Premises or any part thereof; any title defect or encumbrance or any eviction from the Demised Premises or any part thereof by title paramount or otherwise; any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Lessor, or any action taken with respect to this Lease by any trustee or receiver of Lessor, or by any court, in any such proceeding; any claim which Lessee has or might have against Lessor; any failure on the part of Lessor to comply with or perform any of the terms hereof or of any other agreement with Lessee; or any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Lessee shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, Lessee waives all rights now or hereafter conferred by statute or otherwise to quit, terminate or surrender this Lease or the

3

Demised Premises or any part thereof, or to receive any abatement, suspension, deferment, diminution or reduction of any Rent payable by Lessee hereunder.

## 4. Use of Demised Premises

Lessee covenants that the Demised Premises shall be used solely for printing, inserting, collating and distribution of newspaper and advertising products and for no other purpose, unless approved in writing by Lessor, whose approval shall not be unreasonably withheld nor delayed provided such use is for any lawful use.

Lessee shall not do or permit any act or thing which is contrary to any Legal Requirements or Insurance Requirements, or which might impair the value or usefulness of the Demised Premises or any part thereof. Lessee shall not use, or allow the Demised Premises or any part thereof or any Improvements now or hereafter erected thereon or any appurtenances thereto to be used or occupied, for any unlawful purpose or in violation of any certificate of occupancy, and shall not suffer any act to be done or any condition to exist within the Demised Premises or any part thereof, or in any Improvements now or hereafter erected thereon, or on any appurtenance to the Demised Premises, or permit any article to be brought therein, which may be dangerous, unless safeguarded as required by law, or which may constitute a nuisance, public or private, or which may make void or voidable any insurance in force with respect thereto.

Lessee shall not do or suffer any permanent waste, damage, disfigurement or injury to the Demised Premises.

Lessee shall not permit the spilling, discharge, release, deposit or placement on the Demised Premises or any part thereof, whether in containers or other impoundments, of any substance which is a hazardous or toxic substance within the meaning of any applicable environmental law.

## 5. Condition of Demised Premises

Lessee represents that Lessee has examined and is fully familiar with the general physical condition of the Demised Premises, the Improvements thereon, the sidewalks, and uses thereof (excluding the structural condition of the Demised Premises). Lessee accepts the same, without recourse to Lessor, in the condition and state in which they now are, except for the work to be done by Lessor pursuant to the Exhibit B hereto, and agrees that the Demised Premises complies in all respects with all requirements of this Lease. Subject to the provisions of paragraph 6, Lessor makes no representation or warranty, express or implied in fact or by law, as to the nature or condition of the Demised Premises, or its fitness or availability for any particular use, or the income from or expenses of operation of the Demised Premises. Subject to the provisions of paragraph 6, Lessor shall not be liable for any latent or patent defect therein. Prior to the commencement of the

4

Lease Term, Lessor shall substantially complete the work and make installments in the Demised Premises as set forth in Exhibit B hereto. Lessor shall deliver the Premises broom clean and the roof will be free of leaks. Lessee shall notify Lessor of any leaks in the roof subsequent to June 1, 2003. If leaks are discovered, Lessor shall promptly repair such leaks, unless such leaks were caused by Lessee.

## 6. Maintenance and Repair

Lessee, at all times during the Lease Term and at Lessee's expense, shall keep the Demised Premises, and all Improvements now or hereafter located thereon, and all facilities and equipment thereon, and the adjoining sidewalks, curbs, vaults and vault space, if any, streets and ways, and all appurtenances to the Demised Premises, the same condition as tendered on June 1, 2003, normal wear and tear excepted, and in such condition as may be required by all Legal Requirements and Insurance Requirements (except as such shall relate to any structural condition including but not limited to the sidewalk, parking lot, roof, walls, flooring and subsurface, or any condition of the sprinkler or fire safety systems), and promptly shall make all necessary or appropriate repairs, replacements and renewals thereof, whether interior or exterior, ordinary or extraordinary, or foreseen or unforeseen. All repairs, replacements and renewals shall be equal in quality and class to the original work. Lessee waives any right created by any law now or hereafter in force to make repairs to the Demised Premises at Lessor's expense.

Unless caused by Lessee, Lessor, at all times during the Lease Term and at Lessor's expense, shall keep the structure of the Demised Premises, including the roof, walls, floors, subsurface, foundation, parking lot, sidewalk, and drains in structurally safe and sound condition and in compliance with all laws and regulations so that Lessee shall be able to conduct its business without interruption or interference. Lessor shall maintain the roof, walls and all membranes of the Demised Premises free of leaks from outside rain or other elements. Additionally, Lessor shall maintain the sprinkler system and fire safety system in good working condition, and in compliance with all laws and regulations now or hereinafter in effect.

Lessee, at Lessee's expense, shall do or cause others to do every act necessary or appropriate for the preservation and safety of the Demised Premises by reason of or in connection with any excavation or other building operation upon the Demised Premises or any adjoining property, including without limitation all shoring of foundations and walls of the Improvements or of the ground adjacent thereto, whether or not the owner of the Demised Premises shall be required by any Legal Requirement to take such action or shall be liable for failure to do so.

## 7. Alterations and Additions

Lessee shall not be entitled to make any alterations of or additions to the Demised Premises whose cost shall exceed $10,000.00 singularly or in aggregate, exclusive of Lessee's initial

5

alterations to move in during the first ninety (90) days of the Lease Term without the prior written consent of Lessor in each instance, whose consent shall not be unreasonably withheld nor delayed.

The title to all additions, repairs and replacements to any Improvements made during the Lease Term and any renewal thereof, forthwith shall vest in Lessor, and said Improvements, additions, repairs and replacements shall be and become the sole and absolute property of Lessor, without any obligation of payment by Lessor therefor, excluding any of Lessee's Equipment. Lessee's Equipment shall at all times remain the property of Lessee.

## 8.  Impositions

Subject to Article 11 relating to contests, Lessee, at Lessee's expense, shall bear, pay and discharge all Impositions at least twenty days prior to the last day upon which the same may be paid without any interest, penalty, fine or cost being added for the late payment thereof, and shall furnish to Lessor for inspection within thirty days after request, official receipts of the appropriate taxing authority or other proof satisfactory to Lessor evidencing such payment.  If by law any Imposition may be paid in installments, Lessee shall be obligated to pay only those installments as they become due from time to time before any interest, penalty, fine or cost may be added thereto. Any Imposition relating to the fiscal period of the taxing authority, part of which is included within the Lease Term and a part of which precedes or extends beyond the Lease Term, shall, if Lessee shall not be in default hereunder, be apportioned between Lessor and Lessee as of the commencement or expiration, as the case may be, of the Lease Term. An official certificate or statement issued or given by any sovereign or governmental authority or agency, or any public utility, showing the existence of any Imposition, or interest or penalties thereof, the payment of which is the obligation of Lessee as provided herein, shall be prima facia evidence for all purposes of this Lease of the existence, amount and validity of such Imposition.

At the option of Lessor, which may be exercised by written notice to Lessee, Lessee shall pay to Lessor, on each Rent Payment Date during the Lease Term, an amount equal to one twelfth (1/12th) of all Impositions becoming due within the ensuing twelve months, as reasonably estimated by Lessor.  Such estimate, and consequently the monthly installments, may be adjusted at any time by Lessor.  Each year Lessor shall provide to Lessee an accounting, and if such accounting shows that the total of the monies received hereunder exceeds the amounts paid by Lessor for all Imposition, Lessee shall be credited for the difference against the next installments becoming due hereunder. If immediately prior to any Rent Payment Date any Imposition is due, in whole or in part, or if on the rendering of an accounting as aforesaid a deficiency exists or may reasonably be expected, Lessee shall pay the same to Lessor on demand.  The obligations of the parties hereunder shall survive the expiration or termination of the Lease Term.

6

### 9.  Compliance with Requirements

Lessor represents that the Demised Premises and Improvements are now in compliance with all Legal Requirements.  Paragraph 3 of this Lease is expressly applicable to this representation.

Subject to Article 11 relating to contests, Lessee, at all times during the Lease Term and at Lessee's expense, promptly and diligently shall:  comply with all Legal Requirements and Insurance Requirements, whether or not compliance therewith shall require structural changes in the Improvements or interfere with the use and enjoyment of the Demised Premises or any part thereof; comply with any instruments of record at the time affecting the Demised Premises or any part thereof;  and procure, maintain and comply with all permits, licenses, franchises and other authorizations required for any use of the Demised Premises or any part thereof then being made, including without limitation all permits, licenses, and franchises which Lessee is required to obtain for the proper erection, installation, operation or maintenance of the Improvements or Lessee's Equipment or any part thereof.

If Lessee's use of the Demised Premises is or becomes a legal nonconforming use under any Legal Requirement, Lessee shall continually occupy and use the Demised Premises without interruption and comply with such other requirements as may be necessary or appropriate so that such use does not become illegal and may be continued by future occupants of the Demised Premises following the expiration or termination of the Lease Term.

Lessee shall use reasonable efforts to not permit all or any part of the Demised Premises to be availed of to qualify for fulfillment of any municipal or governmental requirements for the construction or maintenance of any buildings or other improvements on property other than the Demised Premises, and no building or other improvement constructed on the Demised Premises shall rely on other property not demised hereunder in order to qualify for fulfillment of any governmental requirements.  Lessee shall not by act or omission impair the integrity of the Demised Premises as a zoning lot or lots separate and apart from all other property.  Any attempt by Lessee to take any action which would violate any provision of this paragraph shall be null and void.

During any period of the Lease Term when any perimeter portion of the Demised Premises shall be unimproved by any structure, wall, fence or gate, Lessee shall prevent the same from being used by the public, as such, without restriction or in such manner as might tend to impair Lessor's title to the Demised Premises or any part thereof, or in such manner as might create an enforceable claim or claims of adverse use or possession by the public, or of implied dedication, of the Demised Premises or any part thereof.  Such perimeter portion of the Demised Premises so unimproved at all times shall be subject to such rules or directions as Lessor from time to time may make or give in writing with respect to the maintenance and use thereof, consistent with Lessor's protection against a claim or claims of the public.  All such rules and directions so made or given shall be deemed to be and become incorporated in this Lease by reference and shall be complied with and performed fully and promptly by Lessee at Lessee's expense.  Lessee hereby acknowledges that

7

Lessor does not hereby consent, expressly or by implication, to the unrestricted use or possession of any portion of the Demised Premises by the public.

## 10. Liens

Lessee shall not directly or indirectly create or permit to be created or to remain, and shall discharge, any mortgage, lien, security interest, encumbrance or charge on, pledge of or conditional sale or other retention agreement with respect to the Demised Premises or any part thereof, Lessee's interest therein, or any Fixed Rent or other Rent payable under this Lease, other than: liens for Impositions not yet payable, or payable without the addition of any fine, penalty, interest or cost for nonpayment, or being contested as permitted in Article 11 hereof; and the liens of mechanics, materialmen, suppliers or vendors, or right thereto, incurred in the ordinary course of business for sums which under the terms of the related contract are not at the time due, provided that adequate provision for the payment thereof shall have been made and provisions of the following paragraph are complied with.

If, in connection with any work being performed by or for Lessee or any subtenant or in connection with any materials being furnished to Lessee or any subtenant, any mechanic's lien or other lien or charge shall be filed or made against the Demised Premises or any part thereof, or if any such lien or charge shall be filed or made against Lessor, then Lessee, at Lessee's expense, within thirty days after such lien or charge shall have been filed or made, shall cause the same to be canceled and discharged of record by payment thereof or filing a bond or otherwise. Lessee promptly and diligently shall defend any suit, action or proceeding which may be brought for the enforcement of such lien or charge; shall satisfy and discharge any judgment entered therein within thirty days from the entering of such judgment by payment thereof or filing a bond or otherwise; and on demand shall pay all damages, costs and expenses, including reasonable attorneys' fees, suffered or incurred by Lessor in connection therewith.

Nothing contained in this Lease shall constitute any consent or request by Lessor, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Demised Premises or any part thereof, nor as giving Lessee any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in any fashion that would permit the filing or making of any lien or claim against Lessor or the Demised Premises. Lessor shall have the right, from time to time, to place upon the Demised Premises in a conspicuous place such sign or other notice as Lessor may deem necessary so as to give notice to others of the provisions of the preceding sentence.

## 11. Permitted Contests

Lessee, at Lessee's expense, after prior written notice to Lessor, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity

8

or application, in whole or in part, of any Imposition or any Legal Requirement, or the application of any instrument of record referred to in Article 9 hereof, provided that:  Lessee shall first make all contested payments, under protest if Lessee desires, unless such proceedings shall suspend the collection thereof from Lessor, from any Rent and from the Demised Premises; neither the Demised Premises, nor any part thereof or interest therein, nor any Rent would be in any danger of being sold, forfeited, lost or interfered with; in the case of a Legal Requirement, Lessor would not be in any danger of any additional civil or criminal liability for failure to comply therewith and the Demised Premises would not be subject to the imposition of any lien as a result of such failure; and Lessee shall have furnished such security, if any, as may be reasonably requested by Lessor.

Prior to any Imposition being contested becoming due, and from time to time thereafter until payment thereof shall be made or shall be determined not to be payable by the appropriate body having jurisdiction, Lessee shall deposit and maintain with Lessor an amount of money, or other security satisfactory to Lessor, sufficient to pay the items so contested or intended to be contested together with the interest and penalties thereon which may accrue during such contest, which amount shall be held by Lessor and may be applied by Lessor to the payment of such items, interest and penalties, when finally fixed and determined.  If the amount deposited with Lessor shall exceed the amount of such items, and any interest and penalties, any excess remaining in Lessor's hands after the payment thereof shall be returned to Lessee.  At any time, prior to or during any such contest, Lessor, after written notice to Lessee, may pay and apply said money, or so much thereof as may be required, to the payment of any Impositions, interest and penalties which, in Lessor's judgment, should be paid to prevent the sale of the Demised Premises or any part thereof or of the lien created thereby, or to prevent the commencement of any action of foreclosure or otherwise, by the holder of any such lien.  To the extent that the amount of money so deposited with Lessor shall be insufficient fully to satisfy and discharge any such Imposition, and interest and penalties thereon, Lessor may pay the same and the deficiency so paid by Lessor shall be and become immediately due and payable by Lessee to Lessor.

## 12.  Utility Services

Lessee shall pay all charges for all public or private utility services and protection services at any time rendered to or in connection with the Demised Premises or any part thereof; shall comply with all contracts relating to any such services; and shall do all other things required for the maintenance and continuance of all such services, provided Lessee shall have elected to receive such services.

## 13.  Insurance

Lessee, at all times during the Lease Term and at Lessee's expense, shall provide and maintain in full force and effect with insurers approved by Lessor:  (a) intentionally deleted; (b) public liability and property damage insurance protecting Lessor against any and all liability

occasioned by negligence, occurrence, accident or disaster in or about the Demised Premises or any part thereof, or the Improvements now or hereafter erected thereon, or adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, or any appurtenances thereto, in amounts approved from time to time by Lessor, which amounts at the date hereof shall be, in the case of public liability, $1,000,000 per person and $3,000,000 per accident, and in the case of property damage, $2,000,000; (c) explosion insurance in respect of any steam and pressure boilers and similar apparatus located on the Demised Premises in amounts approved by Lessor, which amount at the date hereof shall be $500,000; (d) intentionally deleted; (e) appropriate workers' compensation or other insurance against liability arising from claims of workers in respect of and during the period of any work on or about the Demised Premises; (f) intentionally deleted; and (g) insurance against such other hazards and in such amounts as is customarily carried by prudent owners and operators of similar properties, and as Lessor reasonably may request. Lessee shall comply with such other requirements as Lessor from time to time reasonably may request for the protection by insurance of Lessor's interests.

All insurance maintained by Lessee pursuant to this Article 13: (a) shall, except for workers' compensation and public liability insurance, name Lessor and Lessee as insureds, as their respective interests may appear, and Lessee shall request an effective waiver by the issuer of all rights of subrogation against any named insured or such insured's interest in the Demised Premises or any income derived therefrom; (b) shall provide that all insurance claims for losses of less than $10,000 shall be adjusted by Lessee, and all insurance claims for losses of such amount or more, except for workers' compensation insurance which shall be adjusted by Lessee, shall be adjusted by Lessor; (c) shall provide, except in the case of public liability and workers' compensation insurance, that insurance proceeds shall be payable to Lessor for the benefit of Lessor and Lessee, as their respective interests may appear; (d) shall provide that any losses shall be payable notwithstanding any act or failure to act or negligence of Lessor or Lessee or any other person; (e) shall provide that no cancellation, reduction in amount or material change in coverage thereof shall be effective until at least ten days after receipt by Lessor and Lessee of written notice thereof; and (f) shall be satisfactory in all other respects to Lessor acting reasonably. Any such insurance, at Lessee's option, may be provided through a blanket policy or policies in form and substance satisfactory to Lessor, provided such policies shall provide in a manner satisfactory to Lessor for specific allocation to the Demised Premises of the coverage afforded by such blanket policy or policies, and provided further that such blanket policy or policies give to Lessor no less protection than that which would be afforded by separate policies.

Prior to June 1, 2003 and thereafter not less than fifteen days prior to the expiration date of any policy delivered pursuant to this Article 13, Lessee shall deliver to Lessor the originals of all policies or renewal policies, as the case may be, required by this Lease, bearing notations evidencing the payment of the premiums therefor. In lieu of any such policies, Lessee may deliver certificates of the insurer, in form and substance satisfactory to Lessor, as to the issuance and effectiveness of such policies and the amounts of coverage afforded thereby, accompanied by copies of such policies.

10

If at any time Lessee shall neglect or fail to provide or maintain insurance or to deliver insurance policies in accordance with this Article 13, Lessor may effect such insurance as agent for Lessee, by taking out policies in companies selected by Lessor, and the amount of the premiums paid for such insurance shall be paid by Lessee to Lessor on demand. Lessor, in addition to Lessor's other rights and remedies, shall be entitled to recover as damages for any breach of this Article 13 the uninsured amount of any loss, liability, damage, claim, costs and expenses suffered or incurred by Lessor, and shall not be limited in the proof of damages to the amount of the insurance premium not paid by Lessee for such insurance.

## 14.  Indemnification by Lessee

Lessee shall indemnify and hold Lessor harmless from and against all liabilities, obligations, claims, damages, fines, penalties, interest, causes of action, costs and expenses, including attorneys' fees (but excluding any income or excess profits or franchise taxes of Lessor determined on the basis of general income or revenue or any interest or penalties in respect thereof), imposed upon or incurred by or asserted against Lessor or the Demised Premises by reason of the occurrence or existence of any of the following, whether or not resulting from any negligent act or omission of Lessor: ownership of the Demised Premises or any interest therein, or receipt of any rent or other sum therefrom; any accident, injury to or death of persons (including workers) or loss of or damage to property occurring, or claimed to have occurred, on or about the Demised Premises or any part thereof, or any Improvements now or hereafter erected thereon, or the adjoining sidewalks, curbs, vaults or vault spaces, if any, streets or ways, or appurtenances thereto; any use or condition of the Demised Premises or any part thereof, or any Improvements now or hereafter erect thereon, or the adjoining sidewalks, curbs, vaults and vault spaces, if any, streets or ways, or appurtenances thereto; any failure on the part of Lessee promptly and fully to comply with or perform any of the terms, covenants or conditions of this Lease; or performance of any labor or services or the furnishing of any materials or other property in respect of the Demised Premises or any part thereof. In the case any suit, action or proceeding is brought against Lessor or filed against the Demised Premises or any part thereof by reason of any such occurrence, Lessee, upon Lessor's request and at Lessee's expense, shall resist and defend such suit, action or proceeding, or cause the same to be resisted and defended by counsel designated by Lessee and approved by Lessor. The obligations of Lessee under this Article 14 shall survive the expiration or termination of the Lease Term.

Lessor shall indemnify and hold Lessee harmless from and against all liabilities, obligations, claims, damages, fines, penalties, interest, causes of action, costs and expenses, including attorneys' fees (but excluding any income or excess profits or franchise taxes of Lessee determined on the basis of general income or revenue or any interest or penalties in respect thereof), imposed upon or incurred by or asserted against Lessee by reason of the occurrence or existence of any of the following, whether or not resulting from any negligent act or omission of Lessee: any failure on the part of Lessor promptly and fully to comply with or perform any of the terms, covenants or conditions of this Lease; or performance of any labor or services or the furnishing of any materials or other property by Lessor in respect of the Demised Premises or any part thereof.

11

In the case any suit, action or proceeding is brought against Lessee by reason of any such occurrence, Lessor, upon Lessee's request and at Lessor's expense, shall resist and defend such suit, action or proceeding, or cause the same to be resisted and defended by counsel designated by Lessor and approved by Lessee. The obligations of Lessor under this Article 14 shall survive the expiration or termination of the Lease Term.

## 15. Damage to or Destruction of the Demised Premises

If there is any material damage to or destruction of the Demised Premises or any part thereof, Lessee promptly shall give written notice thereof to Lessor, generally describing the nature and extent of such damage or destruction.

If there is any damage to or destruction of the Demised Premises or any part thereof, Lessee, at Lessee's expense whether or not the insurance proceeds, if any, on account of such damage or destruction shall be sufficient for the purpose, promptly shall commence and complete, subject to Unavoidable Delays, the restoration, replacement or rebuilding of the Demised Premises as nearly as possible to its value, condition and character immediately prior to such damage or destruction, with such alterations and additions as may be made at Lessee's election pursuant to and subject to the terms, covenants and conditions of Article 7. Pending the completion of such Restoration, Lessee shall perform all temporary work and take all such actions as may be necessary or desirable to protect and preserve the Demised Premises.

Any insurance proceeds held by Lessor on any termination of this Lease and not required to be paid to Lessee pursuant to this Article 15, shall be paid to and retained by Lessor.

## 16. Taking of the Demised Premises

Intentionally Deleted

## 17. Quiet Enjoyment

Lessor covenants that so long as Lessee is not in default hereunder in the payment of any Rent or compliance with or the performance of any of the terms, covenants or conditions of this Lease on Lessee's part to be complied with or performed, Lessee shall not be hindered or molested by Lessor in Lessee's enjoyment of the Demised Premises.

## 18. Right to Cure Lessee's Default

If Lessee fails to make any payment or to comply with or perform any term, covenant or condition of this Lease to be complied with or performed by Lessee, Lessor may, but shall be

12

under no obligation to, after thirty days' notice to Lessee (or upon shorter notice, or without notice, if necessary to meet an emergency situation or time limitation of a Legal Requirement), make such payment or perform or cause to be performed such work, labor, services, acts or things, and take such other steps as Lessor may deem advisable, to comply with any such term, covenant or condition which is in default. Entry by Lessor upon the Demised Premises for such purpose shall not waive or release Lessee from any obligation or default hereunder. Lessee shall reimburse Lessor (with interest at the rate of fifteen percent per annum) for all sums so paid by Lessor and all costs and expenses incurred by Lessor in connection with the making of any payments, the performance of any act or other steps taken by Lessor pursuant to this Article 18.

## 19: Events of Default and Termination

If any one or more of the following events ("Events of Default") shall occur:

(a)  if Lessee shall fail to pay any Fixed Rent when as the same becomes due and payable and such failure shall continue for more than ten (10) days after Lessor sends notice of such failure to Lessee; or

(b)  if Lessee shall fail to pay any Rent, other than Fixed Rent, when and as the same becomes due and payable and such failure shall continue for more than ten days after Lessor sends notice of such failure to Lessee; or

(c)  if Lessee shall fail to comply with or perform any term, covenant or condition of Articles 8, 9, 10 or 13, and such failure shall continue for more than thirty days after Lessee receives notice of such failure, regardless of the source of such notice; or

(d)  if Lessee shall fail to comply with or perform any other term, covenant or condition hereof, and such failure shall continue for more than thirty days after notice thereof from Lessor, and Lessee within said period, subject to Unavoidable Delays, shall not commence with due diligence and dispatch the curing of such default, or, having so commenced, thereafter shall fail or neglect to prosecute or complete with due diligence and dispatch the curing of such default for reasons other than Unavoidable Delays; or

(e)  if Lessee shall make a general assignment for the benefit of creditors, or shall admit in writing Lessee's inability to pay Lessee's debts as they become due, or shall file a petition in bankruptcy, or shall be adjudicated a bankrupt or insolvent, or shall file a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, or shall file an answer admitting, or shall fail to contest, the material allegations of a petition filed against Lessee in any such proceeding, or shall seek or

13

consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Lessee or any material part of Lessee's properties; or

(f) if, within ninety days after the commencement of any proceeding against Lessee seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed, or if, within ninety days after the appointment without the consent of acquiescence of Lessee, of any trustee, receiver or liquidator of Lessee or of any material part of Lessee's properties, such appointment shall not have been vacated; or

(g) if a final judgment for the payment of money shall be rendered against Lessee and, within sixty days after the entry thereof, such judgment shall not have been discharged or execution thereof stayed pending appeal, or if, within sixty days after the expiration of any such stay, such judgment shall not have been discharged;

**then,** and in any such Event of Default, regardless of the pendency of any proceeding which has or might have the effect of preventing Lessee from complying with the terms, covenants or conditions of this Lease, subject to the Landlord's Waiver, License and Consent Agreement incorporated herein and attached hereto as Exhibit "C", hereinafter referred to as Landlord's Waiver. Lessor, at any time thereafter may give a written termination notice to Lessee, and on the date specified in such notice this Lease shall terminate and, subject to Article 25, the Lease Term shall expire and terminate by limitation, and all rights of Lessee under this Lease shall cease, unless before such date (i) all arrears of Rent (with interest at the rate of fifteen percent per annum) and all costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of Lessor hereunder, shall have been paid by Lessee, and (ii) all other defaults at the time existing under this Lease shall have been fully remedied to the satisfaction of Lessor. Lessee shall reimburse Lessor for all costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of Lessor occasioned by or in connection with any default by Lessee under this Lease.

## 20. Repossession

If an Event of Default shall have occurred and be continuing, subject to the Landlord's Waiver, Lessor, whether or not the Lease Term shall have been terminated pursuant to Article 19, may enter upon and repossess the Demised Premises or any part thereof by force, summary proceedings, ejectment or otherwise, and may remove Lessee and all other persons and any and all property therefrom.

14

## 21. Reletting

At any time or from time to time after the repossession of the Demised Premises or any part thereof pursuant to Article 20, whether or not the Lease Term shall have been terminated pursuant to Article 19, Lessor may (but shall be under no obligation to) relet the Demised Premises or any part thereof for the account of Lessee, for such term or terms (which may be greater than or less than the period which would otherwise have constituted the balance of the Lease Term) and on such conditions (which may include concessions or free rent) and for such uses as Lessor, in Lessor's absolute discretion, may determine, and may collect and receive the rents therefrom. Lessor, at Lessor's option, may make such alterations and decorations in the Demised Premises as Lessor, in Lessor's sole judgment, considers necessary or advisable for the purpose of reletting the Demised Premises or any part thereof, and the making of such alterations and decorations shall not operate or be construed to release Lessee from any liability under this Lease. Lessor shall not be responsible or liable for any failure to relet the Demised Premises or any part thereof or for any failure to collect any rent due upon any such reletting.

## 22. Assignment of Subrents

Lessee hereby irrevocably assigns to Lessor all rents due or to become due from any assignee of Lessee's interest hereunder and any sublessee or any tenant or occupant of the Demised Premises or any part thereof, together with the right to collect and receive such rents, provided that, so long as Lessee is not in default under this Lease, Lessee shall have the right to collect such rents for Lessee's own use and purposes. Upon any default by Lessee under this Lease, Lessor shall have absolute title to such rents and the absolute right to collect the same. Lessor shall apply to the Rent due under this Lease the net amount (after deducting all costs and expenses incident to the collection thereof and the operation and maintenance, including repairs, of the Demised Premises) of any rents so collected and received by Lessor. Lessee shall not demand or accept from any sublessee, tenant or occupant of the Demised Premises or any part thereof, any payment, prepayment or advance payment in respect of more than one rental period under the applicable sublease and in no event shall Lessee demand or accept any payment, prepayment or advance payment for a period exceeding one month.

## 23. Lessee's Equipment

All Lessee's Equipment shall be the property of Lessee.

Subject to the Landlord's Waiver, any Lessee's Equipment not removed by Lessee, at Lessee's expense, within thirty days after any repossession of the Demised Premises, whether or not this Lease has been terminated, shall be considered abandoned by Lessee and may be appropriated, sold, destroyed or otherwise disposed of by Lessor without notice to Lessee and without obligation to account therefor; and Lessee shall pay Lessor, on demand, all costs and

15

expenses incurred by Lessor in removing, storing or disposing of any of Lessee's Equipment. Lessee shall immediately repair at Lessee's expense all damage to the Demised Premises caused by any removal of Lessee's Equipment therefrom, whether effected by Lessee or by any other person. Lessor shall not be responsible for any loss or damage to Lessee's Equipment.

### 24. Security Deposit

Lessee has deposited with Lessor the sum of $64,814.00 as security for the full and faithful observance and performance by Lessee of the terms, covenants and conditions of this Lease. If Lessee defaults in the observance or performance of any term, covenant or condition of this Lease, including without limitation the payment of Rent, Lessor may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any Rent or any other sum as to which Lessee is in default or for any sum which Lessor may expend or may be required to expend by reason of Lessee's default, including without limitation any damages or deficiency accrued before or after summary proceedings or other reentry by Lessor. If Lessee shall fully and faithfully observe and perform all of the terms, covenants and conditions of this Lease, the security, without interest, shall be returned to Lessee after the end of the Lease Term and after delivery of entire possession of the Demised Premises to Lessor.

In the event of a sale, transfer or leasing of the Demised Premises by Lessor, Lessor shall have the right to transfer the security to the vendee, transferee or lessee, and Lessor thereupon shall be released by Lessee from all liability for the return of such security. Lessee agrees to look solely to such new owner or landlord for the return of said security. The provisions of this paragraph shall apply to every transfer or assignment of the security to a new owner or landlord. Lessee shall not assign or encumber or attempt to assign or encumber the security, and neither Lessor nor the successors or assigns of Lessee shall be bound by any such assignment, encumbrance, or attempted assignment or encumbrance.

If Lessor applies or retains all or any portion of the security, Lessee on demand shall pay to Lessor the amount so applied or retained which shall be added to the security so that the same shall be replenished to its former amount and so that at all times the amount deposited shall be $64,814.00.

### 25. Survival of Lessee's Obligations and Damages

No expiration or termination of the Lease Term pursuant to this Lease, by operation of law or otherwise (except as expressly provided herein), and no repossession of the Demised Premises or any part thereof pursuant to this Lease or otherwise, shall relieve Lessee of Lessee's obligations or liabilities hereunder, all of which shall survive such expiration, termination or repossession.

16

In the event of any such expiration, termination or repossession, Lessee shall pay to Lessor all Rent up to the time of such expiration, termination or repossession, together with all costs and expenses incurred by Lessor in connection with such termination or repossession including attorneys' fees, and thereafter Lessee, until the end of what would have been the Lease Term in the absence of such expiration, termination or repossession, and whether or not the Demised Premises or any part thereof shall have been relet, shall be liable to Lessor for, and shall pay to Lessor, as liquidated and agreed and current damages for Lessee's default, (a) all Rent which would be payable under this Lease by Lessee in the absence of such expiration, termination or repossession, less (b) all net rents collected by Lessor from the tenants or subtenants of the Demised Premises, if any, and the net proceeds, if any, of any reletting affected for the account of Lessee pursuant to Article 21 after deducting from such proceeds all Lessor's expenses in connection with such reletting and other sums owed Lessor, including without limitation all repossession costs, brokerage commissions, legal and accounting expenses, attorneys' fees, employees' expenses, promotional expenses, reasonable alteration costs, and expenses of preparation for such reletting. Lessee shall pay such current damages monthly on the Rent Payment Dates applicable in the absence of such expiration, termination or repossession, and Lessor shall be entitled to recover the same from Lessee on each such date. Any suit brought to collect said amounts for any month or months shall not prejudice in any way the rights of Lessor to collect the deficiency for any subsequent month by similar action or proceeding.

At any time after such expiration, termination or repossession, whether or not Lessor shall have collected any current damages as aforesaid, Lessor shall be entitled to recover from Lessee, and Lessee shall pay to Lessor on demand, as and for liquidated and agreed final damages for Lessee's default and in lieu of all current damages beyond the date of such demand, an amount equal to the excess, if any, of (a) all Rent which would be payable under this Lease from the date of such demand (or, if it be earlier, the date to which Lessee shall have satisfied in full Lessee's obligation under the preceding paragraph of this Article 25 to pay current damages) until what would be the then unexpired Lease Term in the absence of such expiration, termination or repossession, over (b) the then fair net rental value of the Demised Premises for the same period. In determining said fair net rental value, the rent realized by any reletting of the Demised Premises, if such reletting is upon terms (other than rental amounts) generally comparable to the terms of this Lease, shall be deemed to be said fair net rental value. Upon the payment of such final damages, this Lease, if not already terminated, shall be deemed terminated. If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Lessor shall be entitled to the maximum amount allowable under such statute or rule of law.

## 26.  Injunction

Lessor, in addition to all other rights, powers and remedies and notwithstanding the concurrent pendency of summary or other dispossess proceedings, at Lessor's option, shall have the right at all times during the Lease Term to restrain by injunction any violation or attempted violation

17

by Lessee of any of the terms, covenants or conditions of this Lease, and to enforce by injunction any of such terms, covenants or conditions.

## 27. Waivers

To the extent permitted by law, Lessee waives:  any right of redemption, reentry or repossession; and any right to trial by jury in any action or proceeding or in any matter in any way connected with this Lease or the Demised Premises.

No failure by Lessor or Lessee to insist upon the strict performance of and compliance with any term, covenant or condition hereof or to exercise or enforce any right, power or remedy consequent upon a breach thereof, and no submission by Lessee or acceptance by Lessor of full or partial Rent during the continuance of any such breach, shall constitute a waiver of any such breach or of any such term, covenant or condition.  No waiver of any breach of any term, covenant or condition of this Lease shall affect or alter this Lease, which shall continue in full force and effect, or the respective rights, powers or remedies of Lessor or Lessee with respect to any other then existing or subsequent breach.

## 28. Lessor's Remedies Cumulative

All of the rights, powers and remedies of Lessor provided for in this Lease or now or hereafter existing at law or in equity, or by statute or otherwise, shall be deemed to be separate, distinct, cumulative and concurrent.  No one or more of such rights, powers or remedies, nor any mention of reference to any one or more of them in this Lease, shall be deemed to be in the exclusion of, or a waiver of, any other rights, powers or remedies provided for in this Lease, or now or hereafter existing at law or in equity, or by statute or otherwise.  The exercise or enforcement by Lessor of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise or enforcement by Lessor of any or all of such other rights, powers or remedies.

## 29. Estoppel Certificates

Lessee shall execute, acknowledge and deliver to Lessor, promptly upon request, a certificate certifying: (a) that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the Lease is in full force and effect, as modified, and identifying the modifications); (b) the dates to which Rent has been paid; (c) whether or not there is any existing default by Lessor or Lessee with respect to which a notice of default has been delivered, and if there is any such default, specifying the nature and extent thereof; and (d) whether or not there are any setoffs, defenses or counterclaims against the enforcement of any term, covenant or condition of this Lease.  Any such certificate may be relied upon by any prospective purchaser or mortgagee of the Demised Premises or any part thereof.

18

## **30. Assignment, Subletting and Mortgages**

Lessee expressly covenants that Lessee shall not voluntarily or involuntarily assign, encumber, mortgage or otherwise transfer this Lease, or sublet the Demised Premises or any part thereof, or suffer or permit the Demised Premises or any part thereof to be used or occupied by others, by operation of law or otherwise, without the prior written consent of Lessor in each instance, which consent shall not be unreasonably withheld nor delayed. Absent such consent, any act or instrument purporting to do any of the foregoing shall be null and void.

If this Lease is assigned, whether or not in violation of the terms of this Article 30, Lessor may collect Rent from the assignee. If the Demised Premises or any part thereof are sublet or occupied by anybody other than Lessee, Lessor, after any default by Lessee, may collect rent from the subtenant or occupant, and apply the net amount collected to the Rent due hereunder. Such collection of rent by Lessor shall not be deemed a waiver of the provisions hereof, the acceptance of the assignee, subtenant or occupant as a tenant, or a release of Lessee from the further observance and performance by Lessee of the terms, covenants and conditions of this Lease.

The consent by Lessor to an assignment, encumbrance, transfer or subletting shall not in any way be deemed consent to any further assignment, encumbrance, transfer or subletting. In no event shall any permitted sublessee assign or encumber its sublease or further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space or any part thereof to be used or occupied by others, without the prior written consent of Lessor in each instance, and each permitted sublease shall so provide in its terms.

If Lessee requests Lessor's consent to a specific assignment or subletting, Lessee shall first submit to Lessor in writing: the name and address of the proposed assignee or sublessee; a counterpart of the proposed agreement of assignment or sublease and all other instruments or agreements pertaining thereto; such information as to the nature and character of the business of the proposed assignee or sublessee and as to the nature of its proposed use of the space, as Lessor reasonably may request; banking, financial or other credit information relating to the proposed assignee or sublessee sufficient to enable Lessor to determine the financial responsibility and character of the proposed assignee or sublessee; and a statement of all sums or other consideration paid or to be paid to Lessee by or for the account of the assignee or sublessee for or in connection with such assignment or sublease, including without limitation sums paid or to be paid for the sale or rental of Lessee's fixtures, leasehold improvements, equipment, furniture, furnishings or other personal property.

Lessor shall not unreasonably withhold nor delay the Lessor's consent to Lessee's request to assign or sublet the entire Demised Premises or to sublet any part of the Demised Premises.

Any such consent of Lessor shall be subject to the terms of this Lease and conditional upon there being no default by Lessee, beyond any grace period, under any term, covenant or condition of this Lease at the time that Lessor's consent is requested and on the date of the commencement of the term of any such proposed sublease or the effective date of any such proposed assignment.

Upon receiving Lessor's written consent, a duly executed copy of the sublease or assignment shall be delivered to Lessor within thirty days after execution thereof. Any such sublease shall provide that the sublessee shall comply with all applicable terms, covenants and conditions of this Lease to be observed or performed by Lessee hereunder. Any such assignment shall contain an assumption by the assignee of all of the terms, covenants and conditions of this Lease to be observed or performed by Lessee.

The transfer of a majority of the issued and outstanding capital stock of any corporate tenant or subtenant of this Lease or of a majority of the total interest in any partnership tenant or subtenant, however accomplished, and whether in a single transaction or in a series of related or unrelated transactions, shall be deemed an assignment of this Lease or of such sublease, unless such transfer is for the convenience of the existing owners or employees. The transfer of outstanding capital stock of any corporate tenant or subtenant, for purposes of this Article 30, shall not include a sale of such stock by persons other than those deemed "insiders" within the meaning of the Securities Exchange Act of 1934 as amended, effected through any "over the counter" market or recognized stock exchange.

## 31. Subordination and Attornment

This Lease, and all rights of Lessee hereunder, are and shall be subject and subordinate in all respects to all mortgages which may now or hereafter affect the Demised Premises, whether or not such mortgages shall also cover other lands or buildings, to each and every advance made or hereafter to be made under such mortgages and to all renewals, modifications, replacements, spreaders, consolidations and extensions of such mortgages. In the event of any sale of the Demised Premises in a foreclosure of any such mortgage or the exercise by the holder of any such mortgages of any other remedies provided for by law or in such mortgage, Lessee, upon written request of the holder of the mortgage or the purchaser at such foreclosure or any person succeeding to the interest of the holder of the mortgage, shall attorn to such holder, purchaser or successor in interest, as the case may be, without change in the terms, covenants or conditions of this Lease. If such a request is made, this Lease shall not be deemed to be terminated by any foreclosure proceedings or other remedies for the enforcement of the mortgage by such holder, purchaser or successor in interest. The provisions of this Article 31 shall be self-operative and no further instrument of subordination and/or attornment shall be required. In confirmation of such subordination and/or attornment, Lessee promptly shall execute and deliver at Lessee's expense any instrument that Lessor or the holder of any such mortgage may reasonably request to evidence such subordination and/or attornment; and

20

Lessee hereby irrevocably constitutes and appoints Lessor as Lessee's attorney-in-fact, coupled with an interest, to execute, acknowledge and deliver any such instruments for and on behalf of Lessee.

## 32. Entry by Lessor

Lessor and the authorized representatives of Lessor shall have the right to enter the Demised Premises at all reasonable times for the purpose of inspecting the same or for the purpose of doing any work permitted to be done by Lessor under this Lease, and to take all such actions thereon as may be necessary or appropriate for any other purpose. Nothing contained in this Lease shall create or imply any duty on the part of Lessor to make any such inspection or do any such act. Lessor and representatives of Lessor shall have the right to enter the Demised Premises at all reasonable times for the purpose of showing the Demised Premises to prospective purchasers or mortgagees, and at any time during the twelve month period preceding the expiration or termination of this Lease for the purpose of showing the same to prospective tenants, and within said period to display on the Demised Premises advertisements for sale or letting if such advertisements do not interfere unreasonably with the business then conducted on the Demised Premises. No such entry shall constitute an eviction of Lessee.

## 33. Conveyance by Lessor

If the original or any successor Lessor shall convey or otherwise dispose of the Land and Improvements, Lessor shall thereupon be released from all obligations and liabilities of Lessor under this Lease (except those accruing prior to such conveyance or other disposition), and such obligations and liabilities shall be binding solely on the then owner of the Land and Improvements.

In any action brought to enforce the obligations or liabilities of Lessor under this Lease, any judgment or decree shall be enforceable against Lessor only to the extent of Lessor's interest in the Land and Improvements, and no such judgment shall be the basis of execution on, or be a lien on, assets of Lessor other that Lessor's interest in the Land and Improvements.

## 34. No Merger of Title

There shall be no merger of the leasehold estate created by this Lease with the fee estate in the Demised Premises by reason of the fact that the same person may own or hold (a) the leasehold estate created by this Lease or any interest therein, and (b) the fee estate in the Demised Premises or any interest in such fee estate. No such merger shall occur unless and until all persons having any interest in the leasehold estate created by this Lease, and in the fee estate in the Demised Premises, shall join in a written instrument effecting such merger and shall duly record the same.

21

### 35. Acceptance of Surrender

No modification, termination or surrender of this Lease or surrender of the Demised Premises or any part thereof or of any interest therein by Lessee shall be valid or effective unless agreed to and accepted in writing by Lessor, and no act by any representative or agent of Lessor, other than such a written agreement and acceptance, shall constitute an acceptance thereof.

### 36. End of Lease Term

Upon the expiration or termination of the Lease Term, Lessee shall quit, surrender and deliver to Lessor the Demised Premises with the Improvements thereon in good order and condition, ordinary wear and tear excepted, and shall remove all Lessee's Equipment therefrom.

If Lessee vacates the Demised Premises at any time prior to the expiration or termination of this Lease, Lessee shall cause the Demised Premises to be patrolled by armed guards on a 24 hour basis so as to prevent vandalism or other damage to the Demised Premises.

### 37. Option to Extend Lease Term

Lessee shall have the option to extend the Lease Term for an additional Five (5) years, subject to all of the terms, covenants and conditions of this Lease. During said extended Lease Term, Lessee shall pay Fixed Rent at the rate of $971,328.00 per annum from March 1, 2013 until May 31, 2014, and $995,604.00 from June 1, 2014 until May 31, 2015, and $1,020,492.00 from June 1, 2015 until May 31, 2016, and $1,046,004.00 from June 1, 2016 until May 31, 2017, and $1,072,152.00 from June 1, 2017 until May 31, 2018 in the manner provided in Article 2 hereof and shall pay all other items of Rent.

To be effective, Lessee must give Lessor written notice of Lessee's election to extend the Lease Term not less than one (1) year prior to the expiration of the then existing Lease Term. Lessee's right to extend the Lease Term pursuant to this Article 37 shall be conditioned upon there being no default by Lessee in the observance or performance of any of the terms, covenants and conditions of this Lease either at the time of the exercise of the option or on the expiration of the then existing Lease Term.

### 38. Brokerage

Lessor and Lessee each represents and warrants to the other that such party has not dealt with any broker or finder in connection with the Demised Premises or this Lease other than Michael J. Agusta, Esq., having an address at 62-15 Myrtle Avenue, Glendale, NY 11385; Hentz-Dor Real Estate, Inc., a New York corporation, having an address at 10-51 48th Avenue, Long Island

City, NY 11101 and George Tsunis Real Estate, Inc. having an address at 1174 Veterans Memorial Highway, Hauppauge, New York 11788 (collectively hereinafter referred to as "Broker"), whose commission shall be paid by Lessor pursuant to a separate agreement. Lessor and Lessee each agrees to indemnify and hold the other harmless from and against any and all commission, liability, claim, loss, damage or expense, including reasonable attorneys' fees, arising from any claims for brokerage or any other fee or commission by any person (other than Broker) with whom such party has dealt.

### 39. Definitions

As used in this Lease, the following terms have the following respective meanings:

"default" -- any condition or event which constitutes, or which after notice or lapse of time or both would constitute, an Event of Default.

"Demised Premises" -- as defined in Article 1.

"Event of Default" -- as defined in Article 19.

"Fixed Rent" -- as defined in Article 2.

"Impositions" -- all taxes greater than $153,223.00, assessments (including without limitation all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the Lease Term), water and sewer rents and charges, charges for public utilities, excises, levies, license fees, permit fees, inspection fees and other authorization fees and other charges of every nature and kind whatsoever (including all interest and penalties thereon), in each case, whether general or special, ordinary or extraordinary, foreseen or unforeseen, of every character, which at any time during or in respect of the Lease Term may be assessed, levied, charged, confirmed or imposed on or in respect of or be a lien upon (a) the Demised Premises or any part thereof or any rent therefrom or any estate, right or interest therein, or (b) any occupancy, use or possession of or activity conducted on the Demised Premises or any part thereof. The term "Impositions" shall exclude, however, any income taxes assessed against Lessor, franchise, estate, inheritance or transfer taxes of Lessor, or any tax or charge in replacement or substitution of the foregoing or of a similar character; provided, however, that if at any time during the Lease Term the then prevailing method of taxation or assessment shall be changed so that the whole or any part of the Impositions theretofore payable by Lessee as above provided, shall instead be levied, charged, assessed or imposed whole or partially on the rents received by Lessor from the Demised Premises, or shall otherwise be imposed against Lessor in the form of a franchise tax or otherwise, then Lessee shall pay the same (and the same shall be deemed Impositions) at least twenty days prior to the last day

23

upon which the same may be paid without interest or penalty for the late payment thereof.

"Improvements" -- as defined in Article 1. The term "Improvements" shall include all fixtures, equipment and machinery now situate on or appurtenant to the Improvements referred to in Article 1, other than Lessee's Equipment.

"Insurance Requirements" -- all terms of any insurance policy covering or applicable to the Demised Premises or any part thereof, all requirements of the issuer of any such policy, and all orders, rules, regulations and other requirements of the National Board of Fire Underwriters, or its successor or any other body exercising similar functions, applicable to or affecting the Demised Premises or any part thereof or any use or condition of the Demised Premises or any part thereof.

"Land" -- as defined in Article 1.

"Lease" -- this Lease, as at the time amended, modified or supplemented.

"Lease Term" -- as defined in Article 1, as the same may be extended or renewed.

"Legal Requirements" -- all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers, foreseen or unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to the Demised Premises or any part thereof, or the Improvements now or hereafter located thereon, or the facilities or equipment therein, or any of the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, or the appurtenances to the Demised Premises or the franchises and privileges connected therewith, or any use or condition of the Demised Premises or any part thereof. Legal Requirements shall include the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., and all other applicable environmental laws and regulations, and all requirements to be complied with pursuant to any certificate of occupancy affecting the Demised Premises.

"Lessee's Equipment" -- all fixtures, machinery, apparatus, furniture, furnishings and other equipment and all temporary or auxiliary structures installed by or at the request of Lessee in or about the Demised Premises or any part thereof, including but not limited to printing and inserting equipment which (a) are not used and are not procured for use, in whole or in part, in connection with the operation, maintenance or protection of the Demised Premises, and (b) are removable without non-repairable damage to the Demised Premises.

24

"person" -- an individual, a corporation, an association, a partnership, a joint venture, an organization, or other business entity, or a governmental or political unit or agency.

"Rent Payment Date" -- as defined in Article 2.

"Restoration" -- all restorations, replacements, rebuildings, alterations, additions, temporary repairs and property protection to be performed in connection with a Taking of the Demised Premises or the damage to or destruction of the Demised Premises.

"Taking" -- a taking during the Lease Term of all or any part of the Demised Premises, or any leasehold or other interest therein or right accruing thereto, as the result of the exercise of the right of condemnation or eminent domain or a sale in lieu or in anticipation of such exercise or a change or grade affecting the Demised Premises or any part thereof.

"Total Taking" -- as defined in Article 16.

"Unavoidable Delays" -- delays due to strikes, acts of God, governmental restrictions, enemy action, riot, civil commotion, fire, unavoidable casualty or other causes beyond the control of Lessee, provided that no delay shall be deemed an Unavoidable Delay if the Demised Premises or any part thereof or interest therein or any Rent would be in any danger of being sold, forfeited, lost or interfered with, or if Lessor or Lessee would be in danger of incurring any civil or criminal liability for failure to perform the required act. Lack of funds shall not be deemed a cause beyond the control of Lessee.

## 40. Notices

All notices, demands, elections and other communications desired or required to be delivered or given under this Lease shall be in writing, and shall be deemed to have been delivered and given when delivered by hand, or on the third business day after the same have been mailed by first class registered or certified mail, return receipt requested, postage prepaid, enclosed in a securely sealed envelop addressed to the party to which the same is to be delivered or given at such party's address as set forth in this Lease or at such other address as said party shall have designated in writing in accordance with this Article 40.

## 41. Miscellaneous

All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any applicable law, and are intended to be limited to the

extent necessary so that they will not render this Lease invalid, unenforceable or not entitled to be recorded under any applicable law. If any term, covenant or condition of this Lease shall be held to be invalid, illegal or unenforceable, the validity of the other terms, covenants and conditions of this Lease shall in no way be affected thereby. If any interest or late charge provided for herein shall be deemed to be in excess of the maximum amount permitted under applicable law, Lessee shall be deemed to be entitled to the maximum amount permitted under applicable law.

The headings in this Lease are for purposes of reference only and shall not limit or define the meaning hereof. This Lease may be executed in any number of counterparts, each of which is an original, but all of which shall constitute one instrument. Neither this Lease, nor any memorandum thereof, shall be recorded by Lessee without the prior written consent of Lessor.

This Lease may be changed or modified only by an instrument in writing signed by the party against which enforcement of such change or modification is sought.

Subject to Articles 30 and 33, this Lease shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto.

Lessor and Lessee are authorized to execute this Lease and that all necessary corporate actions have been taken to authorize execution of this Lease.

Lessor represents and warrants that it shall deliver to Lessee, within 30 days of the execution of this Lease, a Non-Disturbance Agreement, in form and substance reasonably satisfactory to Lessee, executed by Lessor's Mortgagee(s). If during the term hereof Lessor's Mortgagee(s) changes for any reason, Lessor shall (i) give Lessee advance written notice of such change and (ii) by no later than 30 days after the date upon which such change becomes effective, deliver to Lessee a new, and or additional Non-Disturbance Agreements, in form and substance reasonably satisfactory to Lessee.

26

**IN WITNESS WHEREOF,** Lessor and Lessee have executed this Lease on the date first above written.

ATTEST:                                                  WALLACE PACKAGING CORPORATION

                                                          By _____
                                                              Jonathan Allen, President

By _____
    Walter Carcione, Executive Vice President


ATTEST:                                                  SHUTTLE PRINTING, INC.

                                                          By _Frederick W. Newton_____
                                                              Frederick W.  Newton, President

By _____
Ken Akulin,      Vice President


ATTEST:                                                  INSERTCO INC.

                                                          By _Frederick W. Newt_____
                                                              Frederick W.  Newton, President

By _____
~~Richard M. Grant~~ Vice President
    Ken Akulin

27

## EXHIBIT A

### The Demised Premises

## Exhibit B

## <u>Work To Be Performed</u>

Correct, repair and or replace warehouse concrete floor following commercially reasonable standards with floor to be level in all places and of at least a load capacity of 5,000 lbs. per square inch. Floor to be sealed and painted battleship grey.

Repair minor damage to remaining floor of the Demised Premises caused by the relocation of Lessor's property.

Substantially eliminate all ponding or pooling of water in parking areas and loading docks thereby allowing all surface water to freely flow to drains.

Repair and replace roof, walls, and all membranes of the Demised Premises so that such is free from all leaks and outside elements.

Repair sidewalk, curbs, vault space so as to comply with all Legal Requirements, if required by New York City or Lessee's insurance company.

Deliver all existing building equipment, including but not limited to heating and air conditioning equipment, boilers, ductwork, sprinkler systems, and utilities in good working order.

29

Exhibit C

Landlord's Waiver, License and Consent Agreement

# BUILD OUT PLANS FOR WALLACE BUILDING

1. Build up to 3 additional docks in parking lot. Two with ramps and one for trash compactor. All covered by exterior awning.

2. Put skylights in ceiling where 4 highs are to be situated.

3. Remove current lighting and install new as needed.

4. Relocate power to appropriate places for equipment.

5. Open one additional door in wall to truck docks (currently known as Wallace Thermal area).

6. Remove interior walls and gating on south side of building.

7. Enclose outside semi private office for camera room.

8. Install plumbing to camera room.

9. Remove obsolete or current unused ceiling fixtures, e.g. piping.

10. Anticipate minor modifications to demised premises to accommodate telephone (if necessary), security, and computer systems.

12. Install overhead door at ramp between warehouse and main building.

Approved by:
Wallace Packaging Corporation

BY: Jonathan Allen, President.

Acknowledgment for Wallace Packaging Corporation:

STATE OF NEW YORK, COUNTY OF QUEENS, ss.

On the 24 day of April, 2003, before me, the undersigned notary public, personally appeared Jonathan Allen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public
My commission expires on

MICHAEL J. AGUSTA
Notary Public, State of New York
No. 02AG4951241
Qualified in Queens County
Commission Expires May 22, 2007

Acknowledgment for Shuttle Printing, Inc.:

STATE OF NEW YORK, COUNTY OF QUEENS, ss.

On the 24 day of April, 2003, before me, the undersigned notary public, personally appeared Frederick W. Newton, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public
My commission expires on

MICHAEL J. AGUSTA
Notary Public, State of New York
No. 02AG4951241
Qualified in Queens County
Commission Expires May 22, 2007

31

Acknowledgment for Insertco Inc.:

STATE OF NEW YORK, COUNTY OF QUEENS, ss.

On the 24 day of April, 2003, before me, the undersigned notary public, personally appeared Frederick W. Newton, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public
My commission expires on

MICHAEL J. AGUSTA
Notary Public, State of New York
No. 02AG4951241
Qualified in Queens County
Commission Expires May 22, 2006 07

32

N:\DMSTUFF\DESCRIPT\40884-9d14.doc
April 12, 1999



CITY & LAND
SURVEYORS

LOT 52

116-20  METROPOLITAN  AVE.•RICHMOND  HILL,N.Y  11418-1090 (718)849-0800

LEGAL DESCRIPTION
MONTROSE SURVEYING CO., INC
SURVEY No. 40884-9

ALL that certain, plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point the following three courses and distances from the corner formed by the intersection of the northwesterly side of Grand Avenue (80 feet wide) with the northeasterly side of 47th Street (70.00 feet wide):

1.  THENCE northeasterly along the northwesterly side of Grand Avenue, 655.00 feet to the northeasterly side of 49th Place (60.00 feet wide) as shown on Alteration Map No. 4500;
2.  RUNNING THENCE northwesterly along the northeasterly side of 49th place, 700.69 feet to an angle point in said street;
3.  RUNNING THENCE northerly along a line forming an angle of 143 degrees 42 minutes 34.6 seconds on the northeast with the last mentioned course, 119.70 feet to the point or place of BEGINNING.

RUNNING THENCE northerly along the easterly side of 49th Place, 99.16 feet to an angle point in said street;

RUNNING THENCE northerly along a line forming an angle of 179 degrees 54 minutes 45.7 seconds on the west with the last mentioned course, 200.84 feet to an angle point in said street;

RUNNING THENCE northerly along a line forming an angle of 175 degrees 28 minutes 08 seconds on the east with the last mentioned course, 11.04 feet to an angle point in said street;

RUNNING THENCE northerly along a line forming an angle of 185 degrees 01 minutes 45 seconds on the east with the last mentioned course, 0.31 feet to a point;

RUNNING THENCE easterly at right angles to the easterly side of 49th Place, part of the distance through a party wall, 281.89 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, 8.49 feet to a point;

RUNNING THENCE easterly at right angles to the last mentioned course, 2.85 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, 303.00 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, 287.77 feet to the easterly side of 49th Place, the point or place of BEGINNING.

MONTROSE SURVEYING CO., INC.• ESTABLISHED 1876 • INCORPORATED 1931 • RECORDS OF:
B.G. MENKHEM C.S. • L.C.L. SMITH C.S. • C.U. POWELL C.E. C.S. • NATHAN CAMPBELL C.E. C.S. • A.U. WHITSON C.E. C.S. • C. STOOLPH R.A. L.S. • WHITSON & POWELL INC. P.E. L.S. C.S. • G. WEBER L.S. C.S. • WILLIAM L SAVACOOL C.E. L.S. C.S. • KELLER & POWELL P.E. L.S. C.S. • FRED J. POWELL P.E. L.S. C.S. • LOUIS MONTROSE C.E. L.S. C.S. • LOUIS DORNHOEFER P.E. L.S. C.S. • COUNTY SURVEYING SERVICE L.S. • CHARLES E. RANHOFFER L.S. • NOYES PALMER L.S.

**INSERTCO INC.**
48-23 - 55TH AVE.
MASPETH, NY 11378

No. 1713

DATE 4/24/03

PAY
TO THE
ORDER OF Wallace Packaging Corp                    $ 64,814

Sixty Four Thousand Eight Hundred Fourteen                    DOLLARS

**CHASE** The Chase Manhattan Bank.
66 - 02 Grand Avenue
Maspeth, NY 11378

FOR Security Deposit                    Frederick W. Newton

⑈001713⑈ ⑆021000021⑆ 777571176⑈

07/23/03  WED 11:20 FAX 718 786 3200      STELLAR PRINTING                          ☑001

nt By: HP LaserJet 3100;              5167951623;        Jul-22-03 18:15;          Page 2/2

## ACORD. CERTIFICATE OF LIABILITY INSURANCE

| | CSR GM SHOPP-1 | DATE (MM/DD/YYYY) 07/22/03 |
|---|---|---|

DUCER

perstein Agency Inc.
1 North Broadway
Massapequa NY 11758
one:516-795-4100  Fax:516-795-1623

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

URED

Shuttle Printing, Inc. and
Impetco, Inc.
18-23 56th Avenue
Maspath NY 11378

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Atlantic Mutual Companies | 045 |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

VERAGES

HE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING NY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR AY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH OLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | 767007564D001 | 12/22/02 | 12/22/03 | EACH OCCURRENCE | $1,000,000 |
| X | X COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | CLAIMS MADE X OCCUR | | | | MED EXP (Any one person) | $10,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY PRO-JECT LOC | | | | | |
| | AUTOMOBILE LIABILITY | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | |
| | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | SCHEDULED AUTOS | | | | | |
| | HIRED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | NON-OWNED AUTOS | | | | | |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY | | | | AUTO ONLY - EA ACCIDENT | $ |
| | ANY AUTO | | | | OTHER THAN EA ACC | $ |
| | | | | | AUTO ONLY AGG | $ |
| X | EXCESS/UMBRELLA LIABILITY | 767007564D001 | 12/22/02 | 12/22/03 | EACH OCCURRENCE | $1000000 |
| X | OCCUR CLAIMS MADE | | | | AGGREGATE | $1000000 |
| | | | | | | $ |
| | DEDUCTIBLE | | | | | $ |
| X | RETENTION $10000 | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | WC STATU-TORY LIMITS OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? | | | | E.L. EACH ACCIDENT | $ |
| | If Yes, describe under SPECIAL PROVISIONS below | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | OTHER | | | | | |

ESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

ertificate Holder as Additional Insured Landlord as respects location 57-11

9th Place; Maspeth, New York

| ERTIFICATE HOLDER                    WALLACE | CANCELLATION |
|---|---|
| Wallace Packaging Corporation<br>57-11 49th Place<br>Maspeth NY 11385 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

CORD 25 (2001/08)                                                    © ACORD CORPORATION 1988

N:\ADMSTUFF\DESCRIPT\40884-10d1d.doc
April 12, 1999



**CITY & LAND
SURVEYORS**

lot 68

116—20  METROPOLITAN  AVE.•  RICHMOND  HILL, N.Y  11418-7090 (718)805-0800

### LEGAL DESCRIPTION
### MONTROSE SURVEYING CO., INC
### SURVEY No. 40884-10

ALL that certain, plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point the following seven courses and distances from the corner formed by the intersection of the northwesterly side of Grand Avenue (80 feet wide) with the northeasterly side of 47th Street (70.00 feet wide):

1. THENCE northeasterly along the northwesterly side of Grand Avenue 655.00 feet to the northeasterly side of 49th Place (60.00 feet wide) as shown on Alteration Map No. 4500;
2. RUNNING THENCE northwesterly along the northeasterly side of 49th place, 700.69 feet to an angle point in said street;
3. RUNNING THENCE northerly the easterly side of 49th Place, 218.86 feet to an angle point in said street;
4. RUNNING THENCE northerly along the easterly side of 49th Place, 200.84 feet to an angle point in said street;
5. RUNNING THENCE northerly along the easterly side of 49th Place, 11.04 feet to an angle point in said street;
6. RUNNING THENCE northerly along the easterly side of 49th Place, 0.31 feet to the point or place of BEGINNING;

RUNNING THENCE northerly along the easterly side of 49th Place, 92.26 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, 0.20 feet to a point;

RUNNING THENCE northerly at right angles to the last mentioned course, 0.99 feet to a point;

RUNNING THENCE easterly at right angles to the easterly side of 49th Place, part of the distance through a party wall, 282.09 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, 93.25 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, part of the distance through a party wall, 281.89 feet to the easterly side of 49th Place, the point or place of BEGINNING.

**MONTROSE SURVEYING CO., INC.•  ESTABLISHED 1876  •  INCORPORATED 1931  •  RECORDS OF:**

B.G. MENKHEM C.S. • L.C.L. SMITH C.S. • C.U. POWELL C.E. C.S. • NATHAN CAMPBELL C.E. C.S. • A.U. WHITSON C.E., C.S. • C. STIDOLPH R.A., L.S. • WHITSON & POWELL INC. P.E., L.S., C.S. • G. WEBER L.S., C.S. • WILLIAM L. SAVACOOL C.E. L.S., C.S. • KELLER & POWELL P.E., L.S., C.S. • FRED J. POWELL P.E. L.S. C.S. • LOUIS MONTROSE C.E., L.S., C.S. • LOUIS DORNHOEFER P.E., L.S., C.S. • COUNTY SURVEYING SERVICE L.S. • CHARLES E. RANHOFFER L.S. • NOYES PALMER L.S.

# LANDLORD'S WAIVER, LICENSE AND CONSENT AGREEMENT

April 23, 2003

JPMorgan Chase Bank
241-02 Northern Blvd.
Douglaston, New York 11362

Re:    INSERTCO, INC.

Ladies and Gentlemen:

Reference is made to the lease, dated as of April ___, 2003 (the "Lease") entered into by and between the undersigned ("Landlord") Shuttle Printing, Inc. and the above-referenced entities (the "Tenant") pursuant to which the Landlord as the owner of the real property and building and improvements located at 57-11 49th Place, Maspeth, New York (the "Premises"), leases the Premises to the Tenant.

We further refer to the credit facility by JPMorgan Chase Bank (the "Lender") in favor of the Tenant pursuant to the Credit Agreement, dated as of April 11, 2003, by and between the Tenant and the Lender, and the various documents, instruments, notes, guaranties and agreements delivered in connection therewith (the foregoing, together with all related documents, agreements, instruments or notes, and as the same may hereafter be amended, supplemented, renewed, restated or replaced, are collectively referred to herein as the "Agreements").

Pursuant to the terms of the Agreements, the Tenant has granted to the Lender, a security interest in and a general lien upon all now owned or hereafter acquired or existing accounts, contract rights, general intangibles, documents, instruments, chattel paper, machinery and goods, the proceeds and products thereof as the same are defined in the Uniform Commercial Code (the "Collateral"), as security for any now existing or hereafter arising obligations of the Tenant to the Lender.

In consideration of the loans, advances and other financial accommodations to the Tenant contemplated thereunder which will accrue to the benefit of the Landlord by enabling the Tenant to meet its obligations to the Landlord, including those arising under or in connection with the Lease, the Landlord hereby agrees to the waivers, consents and license set forth herein.

The Landlord and the Tenant represent and warrant to the Lender that the interests of the Tenant in the Lease is that of lessee, that the Lease is in full force and effect and that there is no currently existing event of default with respect thereto.

The Landlord agrees that in the event of any default under the Lease, the Landlord agrees to notify the Tenant in accordance with the terms of the Lease, and simultaneously notify the Lender of any such default. In addition, the Landlord shall not terminate the Lease without providing thirty (30) days prior written notice to the Lender, specifying the default, during which

thirty-day period the Lender shall have the right and opportunity, but not the obligation, to cure such default. Any payment made or act done by the Lender to cure any such default shall not constitute an assumption of the Lease or of any obligations thereunder by the Lender.

The Landlord and Tenant agree that they will not materially amend the terms and conditions of the Lease without the prior written consent of the Lender.

The Landlord hereby waives, as against the Lender, any landlord's lien, right of distraint or levy, claim, security interests or other interests which the Landlord may now or hereafter have in or relating to any of the equipment (as defined in the Uniform Commercial Code) now or hereafter located at the Premises, including any of the foregoing which might otherwise arise or exist in the Lender's favor pursuant to agreement, common law, statute (including Title 11 of the United States Code) or otherwise. The Landlord agrees that all Collateral is and shall remain personal property and shall not constitute fixtures, notwithstanding any attachment to real property or any other applicable law or doctrine relating to fixtures.

The Landlord hereby agrees that the Lender may enter the Premises for the purposes of repossessing, removing, selling or otherwise dealing with the Collateral in accordance with the provisions of the Agreements, the Uniform Commercial Code and any other applicable law. Said license shall be irrevocable and shall continue from the date the Lender enters into possession of the Premises for so long as the Lender deems necessary for the foregoing purposes; provided, however, in the event the Lender enters into possession of the Premises for a period of more than thirty (30) days, the Lender shall pay to the Landlord rent at the Fixed Rate (as defined in the Lease) pro rated for the number of days the Lender possess the Premises in excess of thirty (30) days. Use or occupancy of the premises by the Lender as set forth herein shall not constitute an assumption by the Lender of the Lease or of any obligations thereunder.

The Landlord understands that the Lender will rely upon this instrument in connection with the Lender's financial accommodations to the Tenant, and that any additional financial accommodation the Lender may hereafter extend will also be in reliance on this instrument.

Notice to any party hereunder shall be in writing and shall be sent by certified mail, return receipt requested, to the parties at the following addresses:

To the Landlord:

c/o Michael Augusta, Esq.
Augusta & Ross
62-15 Myrtle Avenue
Glendale, New York 11385

To the Tenant:

Insertco, Inc.
48-23 55th Avenue
Maspeth, New York 11378
Attention: Mr. Frederick W. Newton

2

To JPMorgan Chase:

JPMorgan Chase Bank
241-02 Northern Blvd.
Douglaston, New York  11362
Attention:     Relationship Manager
               Insertco, Inc.

This Agreement may not be changed or terminated orally and shall be binding upon the successors and assigns of the parties hereto and shall also be binding upon any successor, owner, or transferee of said Premises.

The parties have executed and delivered this Agreement as of the day and year first above written.

WALLACE PACKAGING CORPORATION

By: _____
Name:
Title:

ACKNOWLEDGED AND AGREED:

JPMORGAN CHASE BANK

By: _____
Name:
Title:

INSERTCO, INC.

By: _____
Name:
Title:

FFDOCS1\S20927.01

3

## NON-DISTURBANCE AGREEMENT

THIS AGREEMENT is made as of the 1st day of October, 2003, between
Michael J. Agusta, as Trustee located at 62-15 Myrtle Avenue, Glendale, New York 11385 ("Mortgagee"), and
Shuttle Printing, Inc. and Insertco Inc. located at 57-11 49th Place, Maspeth, New York 11378 ("Tenant") under
the following circumstances:

    A.    Wallace Packaging Corporation ("Landlord"), and Tenant entered into that certain lease dated April 24, 2003 ("Lease"), wherein Landlord leased to Tenant and Tenant leased from Landlord that certain real estate situated at 57-11 49th Place, Maspeth, New York ("Premises"); and

    B.    Mortgagee has made loans to Landlord secured by mortgages recorded with the County Clerk of Queens and other related security instruments ("Mortgage"), covering the Premises; and

    C.    Mortgagee and Tenant desire that the Lease remain in full force and effect notwithstanding any foreclosure and sale of the Premises; and

    D.    Mortgagee has agreed, upon the conditions hereinafter set forth, that Mortgagee shall recognize the rights of Tenant under the Lease and shall not interfere with or disturb the possession of Tenant thereunder through foreclosure of the Mortgage or any other method or action;

    NOW, THEREFORE, in consideration of One Dollar ($1.00) and other valuable consideration paid and of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

1.    Mortgagee shall not interfere with or disturb the right of possession of Tenant in and to the Premises, nor will it join Tenant, as an adverse or defendant party, in any action or proceeding brought to enforce or foreclose the Mortgage, and the Lease shall remain in full force and effect for the term and renewal terms set forth therein, provided, that at the time of the exercise of any remedy to enforce or foreclose the Mortgage Tenant's Lease shall then be in force and effect without a material default on the part of Tenant thereunder.

2.    In the event of foreclosure of the Mortgage, Tenant shall attorn to Mortgagee or to any purchaser of the Premises in foreclosure and will recognize the then owner of the Premises as its Landlord. If Mortgagee, its successors and assigns, succeeds to the interest of Landlord, Mortgagee, its successors and assigns, will be bound to Tenant under all of the terms, covenants and conditions of the Lease as if they were the landlord under the Lease. Such attornment shall be effective and self-operational without execution of any further instruments on the part of Mortgagee or Tenant, upon Mortgagee, its successors and assigns, succeeding to the interest of Landlord as owner; provided, however, that Tenant shall execute, acknowledge and deliver, upon the request of Mortgagee or any purchaser of the Premises in foreclosure, any instrument which may be necessary or appropriate to evidence such attornment.

3.    This Agreement shall bind and inure to the benefit of the parties hereto and their heirs, legal representatives, successors and assigns.

4.  Any notice, election, demand, delivery, payment or communication to be made under this Agreement shall be effective only if in writing signed by the party delivering same and shall be deemed effective when delivered in person or by commercial courier or three days after deposit thereof in any main or branch United States post office, by certified United States Mail, return receipt requested, postage prepaid, properly addressed to the party to be bound thereby as such address is set forth above or at such other place as such party may, from time to time, give notice of same to the other party.

5.  This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived, or cancelled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver, or cancellation is sought.

6.  This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties hereto as of the date set forth above.

Signed and acknowledged in
the presence of:

**MORTGAGEE:**

_____

_____
Michael J. Agusta, Trustee

Signed and acknowledged in
the presence of:

**TENANTS:**

_____

_____
By: Frederick Newton, their President

\Atty\NonDistAgr.Agusta

## NON-DISTURBANCE AGREEMENT

THIS AGREEMENT is made as of the  .   day of October, 2003, between
J. William Allen ("Mortgagee") located c/o Agusta & Ross, 62-15 Myrtle Avenue, Glendale, New York 11385, and Shuttle Printing, Inc. and Insertco Inc. ("Tenant") located at 57-11 49th Place, Maspeth, New York 11378 under the following circumstances:

      A.     Wallace Packaging Corporation ("Landlord"), and Tenant entered into that certain lease dated April 24, 2003 ("Lease"), wherein Landlord leased to Tenant and Tenant leased from Landlord that certain real estate situated at 57-11 49th Place, Maspeth, New York ("Premises"); and

      B.     Mortgagee has made loans to Landlord secured by mortgages recorded with the County Clerk of Queens and other related security instruments ("Mortgage"), covering the Premises; and

      C.     Mortgagee and Tenant desire that the Lease remain in full force and effect notwithstanding any foreclosure and sale of the Premises; and

      D.     Mortgagee has agreed, upon the conditions hereinafter set forth, that Mortgagee shall recognize the rights of Tenant under the Lease and shall not interfere with or disturb the possession of Tenant thereunder through foreclosure of the Mortgage or any other method or action;

      NOW, THEREFORE, in consideration of One Dollar ($1.00) and other valuable consideration paid and of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

1.     Mortgagee shall not interfere with or disturb the right of possession of  Tenant in and to the Premises, nor will it join Tenant, as an adverse or defendant party, in any action or proceeding brought to enforce or foreclose the Mortgage, and the Lease shall remain in full force and effect for the term and renewal terms set forth therein, provided, that at the time of the exercise of any remedy to enforce or foreclose the Mortgage Tenant's Lease shall then be in force and effect without a material default on the part of Tenant thereunder.

2.     In the event of foreclosure of the Mortgage, Tenant shall attorn to Mortgagee or to any purchaser of the Premises in foreclosure and will recognize the then owner of the Premises as its Landlord. If Mortgagee, its successors and assigns, succeeds to the interest of Landlord, Mortgagee, its successors and assigns, will be bound to Tenant under all of the terms, covenants and conditions of the Lease as if they were the landlord under the Lease. Such attornment shall be effective and self-operational without execution of any further instruments on the part of Mortgagee or Tenant, upon Mortgagee, its successors and assigns, succeeding to the interest of Landlord as owner; provided, however, that Tenant shall execute, acknowledge and deliver, upon the request of Mortgagee or any purchaser of the Premises in foreclosure, any instrument which may be necessary or appropriate to evidence such attornment.

3.     This Agreement shall bind and inure to the benefit of the parties hereto and their heirs, legal representatives, successors and assigns.

4.  Any notice, election, demand, delivery, payment or communication to be made under this Agreement shall be effective only if in writing signed by the party delivering same and shall be deemed effective when delivered in person or by commercial courier or three days after deposit thereof in any main or branch United States post office, by certified United States Mail, return receipt requested, postage prepaid, properly addressed to the party to be bound thereby as such address is set forth above or at such other place as such party may, from time to time, give notice of same to the other party.

5.  This Agreement contains the entire agreement between the parties and cannot be changed, modified, waived, or cancelled except by an agreement in writing executed by the party against whom enforcement of such modification, change, waiver, or cancellation is sought.

6.  This Agreement and the covenants herein contained are intended to run with and bind all lands affected thereby.

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties hereto as of the date set forth above.


Signed and acknowledged in                              **MORTGAGEE:**
the presence of:


_____                            _____
                                                        J. William Allen


Signed and acknowledged in                              **TENANTS:**
the presence of:


_Wila Conuprigth_                                       _____
                                                        By: Frederick Newton, their President


\Atty\NonDistAgr.Allen

## BROKERAGE AGREEMENT

Agreement dated April 24, 2003 among Wallace Packaging Corporation having an address at 57-11 49th Place, Maspeth, New York 11378 ("Lessor"), and Hentz-Dor Real Estate, Inc. a corporation, having an address at 10-51 48th Avenue, Long Island City, New York 11101 ("Broker").

## W I T N E S S E T H

As an inducement to Lessor to enter into and continue negotiations with Shuttle Printing, Inc. and Insertco, Inc., each having an address at 48-23 55th Avenue, Maspeth, New York 11378 ("Lessee"), for the lease of premises known as 57-11 49th Place, Maspeth, New York 11378 (the "Premises"), Broker represents and warrants to Lessor that: (i) Broker is a real estate broker duly licensed in the State of New York; (ii) other than Michael J. Agusta, Esq. and George Tsunis Real Estate, Inc.  Broker is the only broker in any way instrumental in interesting Lessee in leasing the Premises; and (iii) other than Michael J. Agusta, Esq. and George Tsunis Real Estate Inc., Broker is the only procuring cause of any contract of Lease for the Premises that may result from said negotiations.

Broker agrees that the only compensation for the services of Broker, or reimbursement of expenses to Broker, will be a commission of $124,000.00 to be paid in 40 equal monthly installments of $3,100.00 commencing on August 1, 2003 (hereinafter "Payment Period"), but that said commission shall not be deemed to be due, earned or payable unless and until all of the following conditions have been fulfilled: (i) a contract of Lease for the Premises, satisfactory in all respects to Lessor, shall be executed and delivered by Lessor and Lessee; (ii) Lessees shall pay the full Rent specified in, and shall accept title to the Premises in accordance with, said contract of Lease for said Payment Period; and (iii) in the event said Lease is terminated by either the Lessor or Lessees prior to or during the Payment Period, all payments made by Lessor to Broker shall be considered payment in full of Broker's commission and there will be no further obligation by Lessor to Broker.  Broker agrees to accept said commission as and for Broker's sole commission, fee and compensation in this matter.

~~should Lessee~~ (*) ~~If~~ after ~~three (3) months~~ 45 DAYS Lessor fails to pay Broker the commission installment due in accordance with the previous paragraph, then all remaining installments will be accelerated so that the balance of the commission due will immediately become due; provided, however, that the Lessor shall have received written notice of such default sent by certified mail, return receipt requested, and the Lessor shall have failed to cure such default within ten (10) days after receipt by Lessor of such written notice of default.

If the Lessor does not pay the commission when it is due, and the Broker hires an attorney to collect the fees, then the Lessor shall be responsible to pay the legal fees incurred by Broker in seeking to collect the above commission.

If for any reason a contract of Lease shall not be entered into between Lessor and Lessees, or such contract of Lease shall be entered into, but for any reason Lessees shall not take possession, including the default of, or the inability to perform of, either Lessor or Lessees; then said commission shall not be due, earned or payable, and Broker hereby shall have been deemed to release Lessor from any and all claims whatsoever, for a commission or otherwise, in connection with the Lease of the Premises.  The consummation of the Lease of the Premises and the taking of possession by the Lessee are absolute conditions to any liability for any compensation to Broker.

Broker acknowledges and agrees that: (i) any compensation to any real estate salesman shall be

*Provided Lessee shall be current in the Rent specified in said lease, and if

04/24/2003  12:40    7183666184                    AGUSTA AND ROSS

Broker's sole responsibility; (ii) Broker does not have, and shall not assert, any claim with respect to any other transaction that Lessor may have now, or in the future may have, with Lessees unless a separate written brokerage agreement shall be executed by the Lessor with respect thereto; and (iii) if Lessor enters into a new and materially different transaction with Lessees with respect to the Premises, Broker's compensation shall be limited to the compensation provided for herein upon the same terms and conditions.; and (iv) Broker has no claim for any compensation from Lessee, and

      To the extent of the amounts received by Broker, Broker agrees to indemnify and hold Lessor and ~~Lessees~~ harmless from and against any liability, claim, loss, damage or expense, including reasonable attorney's fees, incurred by Lessor or Lessees by reason of any claim of any nature that may arise in connection with any brokerage commission, fee or other compensation related to the Lease of the Premises claimed by any person, corporation, or other entity with whom Lessees have dealt other than Michael J. Agusta, Esq., and George Tsunis Real Estate, Inc., or in the event that any of Broker's representations or warranties are incorrect.

and Vincent Amoresano

      This agreement supersedes and replaces any prior written or oral agreement which may have been entered into between Lessor and Broker.

      **IN WITNESS WHEREOF**, Lessor and Broker have executed this agreement the date first above written.

WALLACE PACKAGING CORPORATION

By: _____
        Jonathan W. Allen, President


HENTZ-DOR REAL ESTATE, INC.

for A. Kleinberg as attorney
in fact for Joseph Hentze, Pres.

By: _____
      ~~Joseph Hentze, President~~

Josh A. Kleinberg,
Authorized to sign
on behalf of and attorney-in-fact for
Joseph Hentze, President.


\Atty\BrokAgree.HD

11/10/03    03:09    FAX 6318511877    GEORGE TSUNIS RE    002/003

# GEORGE TSUNIS
## REAL ESTATE, INC.

## BROKERAGE AGREEMENT

Agreement dated April 24, 2003 among Wallace Packaging Corporation having an address at 57-11 49th Place, Maspeth, New York 11378 ("Lessor") and George Tsunis Real Estate, Inc. a corporation having an address at 1174 Veteran's Memorial, New York 11788 ("Broker").

## WITNESSETH

As an inducement to Lessor to enter into and continue negotiations with Shuttle Printing, Inc., and Insertco, Inc., each having an address at 48-23 55th Avenue, Maspeth, NY 11378 ("Lessee"), for the lease of premises known as 57-11 49th Place, Maspeth, NY 11378 (the "Premises"), Broker represents and warrants to Lessor that: (i) Broker is a real estate broker duly licensed in the State of New York; (ii) other than Michael J. Agusta, Esq. and Hentz-Dor Real Estate, Inc. Broker is the only broker in any way instrumental in interesting Lessee or its designee in leasing the Premises; and (iii) other than Michael J. Agusta, Esq. and Hentz-Dor Real Estate Inc. Broker is the only procuring cause of any contract of Lease for the Premises that may result from said negotiations.

Broker agrees that the only compensation for the services of Broker, or reimbursement of expenses to Broker, will be a commission of $25,000.00 to be paid on September 15, 2003, but that said commission shall not be deemed to be due, earned or payable unless and until all of the following conditions have been fulfilled: (i) a contract of Lease for the Premises, satisfactory in all respects to Lessor, shall be executed and delivered by Lessor and Lessee or its designee; (ii) Lessees shall pay the full first month's Rent specified in, and shall accept title to the Premises in accordance with, said contract of Lease. Broker agrees to accept said commission as and for Broker's sole commission, fee and compensation in this matter.

If for any reason a contract of Lease shall not be entered into between Lessor and Lessees or its designee, or such contract of Lease shall be entered into, but for any reason Lessees shall not take possession, including the default of, or the inability to perform of Lessees; then said commission shall not be due, earned or payable and Broker hereby shall have been deemed to release Lessor from any and all claims whatsoever for a commission or otherwise in connection with the lease of the premises. The consummation of the lease of the premises and the taking of possession by the Lessees are absolute conditions to any liability for any compensation to Broker.

Broker acknowledges and agrees that: (i) any compensation to any of its real estate salesman shall be Broker's sole responsibility; (ii) Broker does not have, and shall not assert, any claim with respect to any other transaction that Lessor may have now, or in

1174 Veterans Memorial Hwy, Hauppauge, NY 11788 • 631.851.1000 • Fax 631.851.1677 • www.gtsunis.com

warranty or representation, expressed or implied, is made as to the accuracy of the information

Commercial • Industrial • Retail

# GEORGE TSUNIS
## REAL ESTATE, INC.

the future may have, with Lessees unless a separate written brokerage agreement shall be executed by the Lessor with respect thereto; and (iii) if Lessor enters into a new and materially different transaction with Lessees with respect to the Premises, Broker's compensation shall be limited to the compensation provided for herein upon the same terms and conditions.

Broker agrees to indemnify and hold Lessor and Lessees harmless from and against any liability, claim, loss, damage or expense, including reasonable attorney's fees, incurred by Lessor and Lessees by reason of any claim of any nature that may arise in connection with any brokerage commission, fee or other compensation related to the Lease of the Premises claimed by any person, corporation, or other entity with whom Lessees have dealt other than Michael J. Agusta, Esq. and Hentz-Dor Realty, Inc., or in the event that any Broker's representations or warranties are incorrect.

This agreement supersedes and replaces any prior written or oral agreement, which may have been entered into between Lessor and Broker.

IN WITNESS WHEREOF, Lessor and Broker have executed this agreement the date first above written.

WALLACE PACKAGING CORPORATION

By _____
        Jonathan W. Allen, President

GEORGE TSUNIS REAL ESTATE, INC.

By _____
        George Tsunis, President

1174 Veterans Memorial Hwy, Hauppauge, NY 11788 • 631.851.1000 • Fax 631.851.1677 • www.Tsunis.com

Jun 20 03 04:30p                                                                                          p. 1

J.P. Morgan Leasing Inc.

**WAIVER BY LANDLORD OR MORTGAGEE**

Master Lease Purchase Agreement Dated June 19, 2003
(as indicated above, hereinafter the "Lease")

**WHEREAS**, the undersigned, Wallace Packaging Corporation is the owner and landlord of, or the owners of a mortgage or other lien secured upon, the premises briefly described as 57-11 49th Place, Maspeth, New York which premises are rented to or owned by Shuttle Printing, Inc. (hereinafter called "Lessee"); and

**WHEREAS**, Lessee has applied to J.P. Morgan Leasing Inc. ("JPML") to lease equipment from time to time from JPML under terms which may or may not ultimately allow Lessee to secure title thereto. The equipment will include the following: equipment as described on Attachment 1 to Master Lease Schedule Number 1 to Master Lease Purchase Agreement dated June 19, 2003 (such equipment together with all other equipment now or hereafter leased to Lessee under the above referenced Lease is referred to hereinafter collectively as the "Equipment") and JPML is willing to enter into the Lease and acquire such Equipment for Lessee only upon condition that the undersigned subordinate and waive as to JPML any claims, demands or rights the undersigned may have or acquire with respect to such Equipment.

**NOW THEREFORE**, the undersigned, intending legally to be bound, hereby agree(s) as follows:

1.        Any and all security interests, liens, claims, demands or rights, including but not limited to the right to levy or distrain for unpaid rent, which the undersigned now has or may hereafter acquire on or in any of Lessee's Equipment leased to Lessee by JPML or upon which JPML may obtain a lien or security interest will be subordinate and inferior to the interest of JPML therein, and, as to JPML, the undersigned hereby specifically waives all rights of levy, distraint or execution with respect to such Equipment and all rights to notice from JPML as to any disposition of Lessee's interest by JPML and all rights to object to any such disposition.

2.        Any Equipment now or hereafter leased to Lessee by JPML or in which JPML has been or may be granted a security interest will at all times be considered as personal property, and such Equipment will not constitute fixtures or become a part of the aforementioned premises so long as any moneys are owing to JPML by Lessee. JPML may at any time and from to time enter upon the aforementioned premises or any other premises where any such Equipment may be found and remove such Equipment, provided, however, that JPML will reimburse the undersigned for the reasonable costs of repair of any damage done to the premises as a result of such removal.

3.        The undersigned will notify any purchaser or transferee of said premises or of such mortgage or lien and any subsequent mortgagee or other encumbrance holder, of the existence of this waiver, which will be binding upon the heirs, executors, administrators, successors, transferees and assigns of the undersigned and will inure to the benefit of JPML and its successors and assigns.

4.        The undersigned will give at least sixty (60) days prior actual written notice to JPML of the termination of Lessee's lease and vacation of the premises, and will allow JPML a reasonable time thereafter without storage costs in which to remove any Equipment provided, however, that in no event will JPML have the right to leave such Equipment on the premises for a period in excess of ninety (90) days after receiving notice of the termination of Lessee's lease and vacation of the premises without incurring reasonable storage costs for the same.

5.        The undersigned consents to the installation and location of such Equipment in the premises, to the extent such consent is required by the applicable lease or mortgage.

6.        Words of one gender used herein include the other gender, and singular words will include the plural and vice versa, whenever the same is necessary to produce a fair and meaningful construction. The laws of New York will govern the validity, interpretation and enforcement of this instrument.

**IN WITNESS WHEREOF**, the undersigned has executed this instrument under seal on the date hereafter indicated.

(Indicate under signature line whether Landlord, Owner or Mortgagee):     ☞     **Wallace Packaging Corporation**

(Owner and Landlord )

By: _____

Walter Carcione
_____

Executive Vice President
_____
(Title)

J.P. Morgan Leasing Inc.
One Chase Square
Rochester, NY 14643

June 20, 2003
(Date)

_____
(Signature of Witness)

June 20 2005
(Date)





# WALLACE PACKAGING CORPORATION

### FACSIMILE TRANSMITTAL

CALL (718) 386-1881 WITHIN 15 MINUTES IF YOU SHOULD NOT
RECEIVE THE FOLLOWING............./...............PAGES

DATE.........*6-20-03*...........................TIME........*5:00*.........(AM (PM))

TO:

COMPANY NAME:.........................................................

ATTENTION:....*Frederick W. Newton*.........................

FAX #:....*301 - 762 - 3855*...........................................

FROM:

COMPANY NAME:...........WALLACE PACKAGING CORP..........................

SENDER:...*Walter Carcione*.........................

EXTENSION:.........................................................

MESSAGE:

PLEASE ANSWER:
(   ) A.S.A.P.

# Confirmation Report – Memory Send

Time        : Jun-20-03   04:37pm
Tel line    :
Name        :

| | | |
|---|---|---|
| Job number | : | 358 |
| Date | : | Jun-20 04:36pm |
| To | : | 17183666184 |
| Document pages | : | 01 |
| Start time | : | Jun-20 04:36pm |
| End time | : | Jun-20 04:37pm |
| Pages sent | : | 01 |
| Status | : | OK |

Job number    : 358          *** SEND SUCCESSFUL ***

Jun 20 03 04:30p                                                                    P. 1

J.P. Morgan Leasing Inc.

**WAIVER BY LANDLORD OR MORTGAGEE**
Master Lease Purchase Agreement Dated June 19, 2003
(as indicated above, hereinafter the "Lease")

WHEREAS, the undersigned, Wallace Packaging Corporation is the owner and landlord of, or the owners of a mortgage or other lien secured upon, the premises briefly described as 57-11 49th Place, Maspeth, New York, which premises are leased to or owned by Shuttle Printing, Inc. (hereinafter called "Lessee"); and

WHEREAS, Lessee has applied to J.F. Morgan Leasing Inc. ("JFML") to lease equipment from time to time from JFML under terms which may or may not ultimately allow Lessee to acquire title thereto. The equipment will include the following: equipment as described on Attachment 1 to Master Lease Schedule Number 1 to Master Lease Purchase Agreement dated June 19, 2003 (such equipment together with all other equipment now or hereafter leased to Lessee under the above referenced Lease is referred to hereinafter collectively as the "Equipment") JFML is willing to enter into the Lease and acquire such Equipment for the Lease only upon condition that the undersigned subordinate and waive as to JFML any claims, demands or rights the undersigned may have or acquire with respect to the Equipment.

NOW THEREFORE, the undersigned, intending legally to be bound, hereby agree(s) as follows:

1.        Any and all security interests, liens, claims, demands or rights, including but not limited to the right to levy or distrain for unpaid rent, which the undersigned now has or may hereafter acquire on or in any of Lessee's Equipment leased to Lessee by JFML, or upon which JFML may obtain a lien or security interest will be subordinate and inferior to the interest of JFML, therein, and, as to JFML, the undersigned hereby specifically waives all rights of levy, distrain or execution with respect to such Equipment and all rights to notice from JFML as to any disposition of Lessee's interest by JFML, and all rights to object to any such disposition.

2.        Any Equipment now or hereafter leased to Lessee by JFML, or in which JFML has been or may be granted a security interest will at all times be considered to be personal property, and such Equipment will not constitute fixtures or become a part of the aforementioned premises so long as they currently are owing to JFML by Lessee. JFML may at any time and from to time enter upon the aforementioned premises or any other premises where any such Equipment may be found and remove such Equipment, provided, however, that JFML will reimburse the undersigned for the reasonable costs of repair of any damage done to the premises as a result of such removal.

3.        The undersigned will notify any purchaser or transferee of said premises or of such mortgage or lien and any subsequent mortgage or other encumbrance holder, of the existence of this waiver, which will be binding upon the heirs, executors, administrators, successors, transferees and assigns of the undersigned and will inure to the benefit of JFML and its successors and assigns.

4.        The undersigned will give at least sixty (60) days prior actual written notice to JFML of the termination of Lessee's lease and vacation of the premises, and will allow JFML a reasonable time thereafter without storage costs in which to remove any Equipment provided, however, that in no event will JFML leave the right to leave such Equipment on the premises for a period in excess of sixty (90) days after receiving notice of the termination of Lessee's lease and vacation of the premises without incurring reasonable storage costs for the same.

The undersigned consents to the installation and location of such Equipment in the premises, to the extent such consent is required by the applicable lease or mortgage.

Words of one gender used herein include the other gender, and singular words will include the plural and vice versa, whenever the same is necessary to produce a fair and meaningful construction. The laws of New York will govern the validity, interpretation and enforcement of this instrument.

IN WITNESS WHEREOF, the undersigned has executed this instrument under seal on the date hereafter indicated.

(Indicate under signature line whether Landlord, Owner or Mortgagee):

**Wallace Packaging Corporation**
(Owner and Landlord)

By:_____
        Walter Cardoso
        Executive Vice President
        (Title)

_____
        (Date)

_____
        (Signature of Witness)

_____
        (Date)

J.F. Morgan Leasing Inc.
One Chase Square
Rochester, NY 14643

# MICHAEL J. AGUSTA, ESQ.

### Attorney at Law

1012 Maple Drive
Franklin Square, New York 11010
Tel. No. (516) 355-2070
Fax No. (516) 355-2074

August 13, 2009

### Certified Mail-Return Receipt Requested

Mr. Richard McGerald
President
Insertco, Inc.
57-11 49th Place
Maspeth, New York 11378

Dear Mr. McGerald:

Please be advised Insertco, Inc. has been and continues to be in default of §8 of its lease with regard to the property at 57-11 49th Place in that Insertco, Inc. has failed to pay the real estate taxes for the premises in excess of $153,223.00 for the past three fiscal years. Please be additionally advised that these taxes have been paid by the Landlord. The amounts due are calculated as follows:

| PERIOD | Lot 68 | Total Taxes Lot 52 | Total | Amount Owed in excess of $153,223 |
|---|---|---|---|---|
| 07/01/07 thru 06/30/08 | $54,780.28 | $103,295.84 | $158,076.12 | $ 4,853.12 |
| 07/01/08 thru 06/30/09 | 77,874.76 | 128,101.36 | 205,976.12 | 52,753.12 |
| 07/01/09 thru 06/30/10 | 98,335.04 | 157,206.16 | 255,541.20 | 102,318.20 |

**TOTAL DUE**                                                              **$159,924.44**

. Payment of this amount is expected immediately upon receipt.

Professionally,

Michael J. Agusta

cc:    Jean William Allen

**LEASE**

dated April 24, 2003

among

Wallace Packaging Corporation

as Lessor

and

Shuttle Printing, Inc. and
Insertco Inc.

as Lessee

Affecting premises commonly known as 57-11 49th Place, in The City of New York,
New York.

1 -- Demised Premises and Lease Term
2 -- Rent
3 -- No Counterclaim or Abatement
4 -- Use of Demised Premises
5 -- Condition of Demised Premises
6 -- Maintenance and Repair
7 -- Alterations and Additions
8 -- Impositions
9 -- Compliance with Requirements
10 -- Liens
11 -- Permitted Contests
12 -- Utility Services
13 -- Insurance
14 -- Indemnification
15 -- Damage or Destruction
16 -- Taking of the Demised Premises
17 -- Quiet Enjoyment
18 -- Right to Cure Lessee's Default
19 -- Events of Default and Termination
20 -- Repossession
21 -- Reletting
22 -- Assignment of Subrents
23 -- Lessee's Equipment
24 -- Security Deposit
25 -- Survival of Obligations; Damages
26 -- Injunction
27 -- Waivers
28 -- Lessor's Remedies Cumulative
29 -- Estoppel Certificates
30 -- Assignment and Subletting
31 -- Subordination and Attornment
32 -- Entry by Lessor
33 -- Conveyance by Lessor
34 -- No Merger of Title
35 -- Acceptance of Surrender
36 -- End of Lease Term
37 -- Option to Extend Lease Term
38 -- Brokerage
39 -- Definitions
40 -- Notices
41 -- Miscellaneous

Exhibit A -- Description of Land
Exhibit B -- Work to be Performed
Exhibit C -- Landlord's Waiver

alterations to move in during the first ninety (90) days of the Lease Term without the prior written consent of Lessor in each instance, whose consent shall not be unreasonably withheld nor delayed.

The title to all additions, repairs and replacements to any Improvements made during the Lease Term and any renewal thereof, forthwith shall vest in Lessor, and said Improvements, additions, repairs and replacements shall be and become the sole and absolute property of Lessor, without any obligation of payment by Lessor therefor, excluding any of Lessee's Equipment. Lessee's Equipment shall at all times remain the property of Lessee.

## 8. Impositions

Subject to Article 11 relating to contests, ~~Lessor~~ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and discharge ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Lessor executing such ▓▓▓▓▓▓▓ If by law any Imposition may be paid in installments, Lessee shall be obligated to pay only those installments as they become due from time to time before any interest, penalty, fine or cost may be added thereto. Any Imposition relating to the fiscal period of the taxing authority, part of which is included within the Lease Term and a part of which precedes or extends beyond the Lease Term, shall, if Lessee shall not be in default hereunder, be apportioned between Lessor and Lessee as of the commencement or expiration, as the case may be, of the Lease Term. An official certificate or statement issued or given by any sovereign or governmental authority or agency, or any public utility, showing the existence of any Imposition, or interest or penalties thereof, the payment of which is the obligation of Lessee as provided herein, shall be prima facia evidence for all purposes of this Lease of the existence, amount and validity of such Imposition.

At the option of Lessor, which may be exercised by written notice to Lessee, Lessee shall pay to Lessor, on each Rent Payment Date during the Lease Term, an amount equal to one twelfth (1/12th) of all Impositions becoming due within the ensuing twelve months, as reasonably estimated by Lessor. Such estimate, and consequently the monthly installments, may be adjusted at any time by Lessor. Each year Lessor shall provide to Lessee an accounting, and if such accounting shows that the total of the monies received hereunder exceeds the amounts paid by Lessor for all Imposition, Lessee shall be credited for the difference against the next installments becoming due hereunder. If immediately prior to any Rent Payment Date any Imposition is due, in whole or in part, or if on the rendering of an accounting as aforesaid a deficiency exists or may reasonably be expected, Lessee shall pay the same to Lessor on demand. The obligations of the parties hereunder shall survive the expiration or termination of the Lease Term.

6

City, NY 11101 and George Tsunis Real Estate, Inc. having an address at 1174 Veterans Memorial Highway, Hauppauge, New York 11788 (collectively hereinafter referred to as "Broker"), whose commission shall be paid by Lessor pursuant to a separate agreement. Lessor and Lessee each agrees to indemnify and hold the other harmless from and against any and all commission, liability, claim, loss, damage or expense, including reasonable attorneys' fees, arising from any claims for brokerage or any other fee or commission by any person (other than Broker) with whom such party has dealt.

## 39. Definitions

As used in this Lease, the following terms have the following respective meanings:

"default" -- any condition or event which constitutes, or which after notice or lapse of time or both would constitute, an Event of Default.

"Demised Premises" -- as defined in Article 1.

"Event of Default" -- as defined in Article 19.

"Fixed Rent" -- as defined in Article 2.

"Impositions" - all taxes greater than $153,223.00, assessments (including without limitation all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the Lease Term), water and sewer rents and charges, charges for public utilities, excises, levies, license fees, permit fees, inspection fees and other authorization fees and other charges of every nature and kind whatsoever (including all interest and penalties thereon), in each case, whether general or special, ordinary or extraordinary, foreseen or unforeseen, of every character, which at any time during or in respect of the Lease Term may be assessed, levied, charged, confirmed or imposed on or in respect of or be a lien upon (a) the Demised Premises or any part thereof or any rent therefrom or any estate, right or interest therein, or (b) any occupancy, use or possession of or activity conducted on the Demised Premises or any part thereof. The term "Impositions" shall exclude, however, any income taxes assessed against Lessor, franchise, estate, inheritance or transfer taxes of Lessor, or any tax or charge in replacement or substitution of the foregoing or of a similar character; provided, however, that if at any time during the Lease Term the then prevailing method of taxation or assessment shall be changed so that the whole or any part of the Impositions theretofore payable by Lessee as above provided, shall instead be levied, charged, assessed or imposed whole or partially on the rents received by Lessor from the Demised Premises, or shall otherwise be imposed against Lessor in the form of a franchise tax or otherwise, then Lessee shall pay the same (and the same shall be deemed Impositions) at least twenty days prior to the last day

23

upon which the same may be paid without interest or penalty for the late payment thereof.

"Improvements" -- as defined in Article 1. The term "Improvements" shall include all fixtures, equipment and machinery now situate on or appurtenant to the Improvements referred to in Article 1, other than Lessee's Equipment.

"Insurance Requirements" -- all terms of any insurance policy covering or applicable to the Demised Premises or any part thereof, all requirements of the issuer of any such policy, and all orders, rules, regulations and other requirements of the National Board of Fire Underwriters, or its successor or any other body exercising similar functions, applicable to or affecting the Demised Premises or any part thereof or any use or condition of the Demised Premises or any part thereof.

"Land" -- as defined in Article 1.

"Lease" -- this Lease, as at the time amended, modified or supplemented.

"Lease Term" -- as defined in Article 1, as the same may be extended or renewed.

"Legal Requirements" -- all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorizations, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers, foreseen or unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to the Demised Premises or any part thereof, or the Improvements now or hereafter located thereon, or the facilities or equipment therein, or any of the adjoining sidewalks, curbs, vaults or vault space, if any, streets or ways, or the appurtenances to the Demised Premises or the franchises and privileges connected therewith, or any use or condition of the Demised Premises or any part thereof. Legal Requirements shall include the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., and all other applicable environmental laws and regulations, and all requirements to be complied with pursuant to any certificate of occupancy affecting the Demised Premises.

"Lessee's Equipment" -- all fixtures, machinery, apparatus, furniture, furnishings and other equipment and all temporary or auxiliary structures installed by or at the request of Lessee in or about the Demised Premises or any part thereof, including but not limited to printing and inserting equipment which (a) are not used and are not procured for use, in whole or in part, in connection with the operation, maintenance or protection of the Demised Premises, and (b) are removable without non-repairable damage to the Demised Premises.

24