IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Local Rule 2016 Waiver Requested<br><br>Hearing Date: November 22, 2011 at 2:00 p.m. (ET)<br>Objection Deadline: November 15, 2011 at 4:00 p.m. (ET) |

**SECOND SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF PRICEWATERHOUSECOOPERS LLP TO INCLUDE CERTAIN ADVISORY SERVICES IN CONNECTION WITH RECORDS MANAGEMENT, PAYROLL PROCESSING, AND OPERATIONS MANAGEMENT PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO NOVEMBER 1, 2011 AND SEEKING A LIMITED WAIVER OF COMPLIANCE WITH DEL. BANKR. L.R. 2016-2(d), IN ACCORDANCE WITH DEL. BANKR. L.R. 2016-2(g)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## Introduction

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") hereby submit this second supplemental application (the "Second Supplemental Application") for entry of an order, in substantially the form submitted herewith, modifying the scope of Tribune Company's ("Tribune") already-authorized employment of PricewaterhouseCoopers LLP ("PwC"), nunc pro tunc to November 1, 2011. PwC is currently retained by Tribune pursuant to sections 327(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as compensation and tax advisors and independent auditors to the Debtors in connection with these chapter 11 cases. The terms of PwC's existing retention by Tribune are summarized in the Debtors' Application for an Order Authorizing Debtors to Employ and Retain PricewaterhouseCoopers LLP as Compensation and Tax Advisors and Independent Auditors to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to the Petition Date, which was filed on December 26, 2008 [Docket No. 143] (the "Application") and subsequently approved by an order of this Court on March 3, 2009 [Docket No. 470] (the "Original Retention Order"). The Application is hereby incorporated by reference.[2] The terms of that retention were broadened by the Order Modifying the Scope of Retention of PricewaterhouseCoopers LLP to include Certain Advisory Services in Connection

---

[2] The Debtors also incorporate herein by reference the Declaration of William T. England in Support of the Application, which was filed concurrently with the Application on December 26, 2008 [Docket No. 143], as supplemented by the Supplemental Declaration of William T. England filed on March 2, 2009 [Docket No. 461], the Second Supplemental Declaration of William T. England filed on April 10, 2009 [Docket No. 892], the Third Supplemental Declaration of William T. England filed on July 2, 2009 [Docket No. 1681], the Fourth Supplemental Declaration of William T. England filed on February 5, 2010 [Docket No. 3318], the Fifth Supplemental Declaration of William T. England filed on April 30, 2010 [Docket No. 4216, Exhibit B], the Sixth Supplemental Declaration of William T. England filed on June 22, 2010 [Docket No. 4848], the Seventh Supplemental Declaration of William T. England filed on December 8, 2010 [Docket No. 7107], the Eighth Supplemental Declaration of William T. England filed on May 11, 2011 [Docket No. 8905], and the Ninth Supplemental Declaration of William T. England filed on October 5, 2011 [Docket No. 9903] (collectively, the "PwC Declarations").

With the Application of Fresh Start Accounting, <u>Nunc Pro Tunc</u> to February 8, 2010 on May 14, 2010 [Docket No. 4414] (the "<u>First Supplemental Retention Order</u>").

The limited purpose of this Second Supplemental Application is to modify the existing retention of PwC to encompass consulting services related to (1) the review and revision of Tribune's records and information management policy (the "<u>Records Management Services</u>") and (2) the review and revision of Blue Lynx Media, LLC's ("<u>BLM</u>") payroll process management, and a shared services operational assessment (the "<u>BLM Services</u>"). The Records Management Services to be provided by PwC are described in that certain supplemental engagement letter, dated as of November 1, 2011, by and between PwC and Tribune (the "<u>Records Management Services Engagement Letter</u>"). The BLM Services to be provided by PwC are described in that supplemental engagement letter, dated as of November 1, 2011, by and between PwC and Tribune (the "<u>BLM Services Engagement Letter</u>"). Collectively, the Records Management Services Engagement Letter and BLM Services Engagement Letter are the "<u>Second Supplemental Engagement Letters</u>" and are attached to this Application as <u>Exhibit A</u>. Such services are necessary to the Debtors' ongoing business but are not covered by PwC's existing engagement letters,[3] as the same may be amended from time to time (collectively, the "<u>Existing Engagement Letters</u>"), each as modified by the Original Retention Order and the First Supplemental Retention Order. Accordingly, the Debtors submit this Second Supplemental Application to encompass the Records Management Services, the BLM Services, and to obtain

---

[3] As described in the Application, the Debtors and PwC are parties to (i) that certain engagement letter dated December 1, 2008 covering general compensation advisory services (the "<u>Compensation Engagement Letter</u>"), (ii) two separate engagement letters, both dated May 1, 2008, covering the integrated audit of the financial statements of Tribune Company, Tribune Broadcasting Holdco, LLC and Tribune Finance, LLC (the "<u>Audit Engagement Letters</u>"), (iii) that certain engagement letter dated December 11, 2008 covering general tax consulting services (the "<u>Tax Engagement Letter</u>"), (iv) that certain engagement letter dated December 11, 2008 covering services related to tax claims responses and settlement (the "<u>Claims Engagement Letter</u>"), and (v) that certain supplemental engagement letter dated February 8, 2010 covering services related to fresh start accounting (the "<u>Fresh Start Accounting Engagement Letter</u>"). In addition, certain supplemental engagement letters have been filed with the PwC Declarations.

3

Court approval for the Second Supplemental Engagement Letters. In support of this Second Supplemental Application, the Debtors rely on the Tenth Supplemental Declaration of William T. England, which is attached hereto as Exhibit B (the "Tenth Supplemental England Declaration"). In further support of this Supplemental Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[4] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

---

[4] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

## BACKGROUND TO THE SECOND SUPPLEMENTAL APPLICATION

6. Pursuant to the Original Retention Order, PwC was retained as compensation and tax advisors and independent auditors to the Debtors in connection with these chapter 11 cases. Specifically, PwC's retention was approved to provide the following services, among others (and as described more thoroughly in the Existing Engagement Letters, as modified by the Original Retention Order), as necessary and requested:

    a. General Compensation Advisory Services, including, but not limited to:

        (i) advising on the design of annual and long-term incentive programs;

        (ii) preparing cost estimates for implementing any arrangements;

        (iii) advising on participant target levels for the incentive programs; and

        (iv) advising on severance and retention programs;

    b. Integrated Auditing Services of the Debtors at December 28, 2008 and each year following 2008 (as contained in the First Supplemental Retention Application);

    c. Review Tribune Company's unaudited consolidated quarterly financial information;

    d. General Tax Consulting Services, including, but not limited to:

        (i) advising on tax issues resulting from the Debtors' chapter 11 cases, including assisting with the structuring and estimation of the tax effects of restructuring plan alternatives;

        (ii) advising on tax planning or reporting matters;

        (iii) preparing and/or reviewing original and amended returns for all taxes including federal, state and local income taxes, gross receipts, license, sales and use taxes and property taxes;

    e. Claims Response and Settlement Services including, but not limited to:

        (i) assisting in managing, responding to and verifying the accuracy of claims submitted for federal income taxes, state and local net income taxes, franchise, sales use, property and business license or gross receipts taxes as a result of the Debtors' chapter 11 cases;

      (ii)    assisting in negotiating settlements with taxing authorities with respect to claims submitted due to the Debtors' chapter 11 cases, as well as tax assessments for which the Debtors request assistance during the pendency of these cases.

    f.    Additional compensation, tax and/or accounting consulting incident to the services described in paragraphs (a)-(e) above.

7. Pursuant to the First Supplemental Retention Order, PwC was also retained to implement so-called "fresh start accounting" to transition the Debtors' financial statements from a chapter 11 environment to a non-chapter 11 environment. Specifically, PwC's retention was approved to provide the following services, among others (and as described more thoroughly in the Existing Engagement Letters, as modified by the Original Retention Order and the First Supplemental Retention Order), as necessary and requested:

    a.    Advising the Debtors' management on the development of a detailed project plan, including assistance with project management of the Debtors' various work streams required to emerge from bankruptcy;

    b.    Advising on the requirements of fresh start accounting, as codified in existing and new accounting policies and based on PwC's knowledge of standard industry practice;

    c.    Facilitating practical and technical workshops and training for the Debtors' employees;

    d.    Advising on technical accounting and reporting issues that typically arise in the fresh start accounting and reporting process;

    e.    Coordinating with the Debtors' in-house tax professionals and outside tax specialists with respect to fresh start accounting tax implications, structuring issues, and accounting policy changes;

    f.    Advising on the technical requirements of fresh start accounting related to valuations, such as the development of valuation assumptions and methodologies;

    g.    Providing guidance on the standard industry practices regarding preparation, presentation, and disclosure of the bankruptcy and fresh start-related accounting in a Form 10 or equivalent filing with the Securities and Exchange Commission and related proforma financial statements;

      h.      Advising on the tactical and systemic ways to embed the valuation and accounting policy adjustments that arise as a result of the fresh start accounting in the Debtors' systems and processes;

      i.      Advising the Debtors' management on the requirements of public company post-bankruptcy fresh start accounting and reporting; and

      j.      Advising the Debtors' management on finalizing the opening balance sheet to reflect fresh start accounting adjustments.

8.     The Debtors now wish to expand the scope of PwC's services to accomplish additional tasks, specifically the Debtors desire to review and revise their current records and information management policies. In order to accomplish the review in the most efficient and cost-effective manner, the Debtors have determined that they need an advisor to provide analysis and recommendations for potential improvements to current records policies and to advise Tribune on how to implement suggested improvements. This will involve an analysis of current records management policies, and providing guidance for going-forward retention schedules, and will culminate in a records and information management strategy and recommendations report with a roadmap that includes recommended activities, suggested priorities, and proposed timelines.

9.     The Debtors believe that it is important to begin this process now so that they maintain sound records and information management policies and enhance those policies as practicable. Furthermore, the Debtors wish to begin the process of identifying and implementing improvements to those policies as soon as practicable, so that any improvements to their current records and information policies can be considered and implemented, at the earliest practicable date. All stakeholders in the Debtors stand to benefit from improvements in the Debtors' records and information management policies, and there is no compelling reason not to begin identifying and implementing such improvements in the near term.

10. Accordingly, Tribune and PwC have recently negotiated and entered into the Records Management Services Engagement Letter, pursuant to which PwC has agreed to provide advisory services related to the evaluation and assessment of Tribune's current records and information management policies. These services were not among the services that PwC or the Debtors contemplated under the Existing Engagement Letters. The Records Management Services to be provided by PwC in connection with this project include, but are not limited to, the following:

a. Analyzing records management documents provided by Tribune, including the records retention mission statement, the draft records retention policy, draft records retention schedules, office of record documentation, records retention procedures manuals, and other records retention documents;

b. Interviewing key records and information management stakeholders, business unit leaders, and information technology representatives;

c. Analyzing the interviews and documentation to assess the existing records and information landscape and advise management to develop a records management program strategy;

d. Providing recommendations for making a records retention schedule actionable;

e. Creating a records and information management roadmap; and

f. Providing a written records and information management strategy and report;

11. Additionally, the Debtors wish to review certain payroll issues and to make an operational assessment of BLM,[5] Tribune's in-house provider of payroll services and logistical support. In order to accomplish the review in the most efficient and cost-effective manner, the Debtors have determined that they need an advisor to provide analysis and recommendations for potential improvements to BLM's current payroll processing and

---

[5] Though BLM is a non-Debtor, the work contemplated under the BLM Services Engagement Letter will include interviews and review by the Tribune Company, and may also consist of review of certain Debtor subsidiaries (including Los Angeles Times Communications LLC). In addition the services will be paid for by Tribune Company.

operations policies and to advise Tribune on how to implement suggested improvements. The payroll processing component will involve working sessions to understand and review the end-to-end current state payroll process, assess process performance in terms of costs and complexity, and identify areas for payroll processing improvement. In the operations management portion of PwC's retention, PwC will assess BLM's operating model, review the organizational structure, governance, and performances metrics, and provide insight into shared services and outsourcing trends, while focusing on the implementation of best practices.

12. Accordingly, Tribune and PwC have recently negotiated and entered into the BLM Services Engagement Letter, pursuant to which PwC has agreed to provide advisory services related to the evaluation and assessment of BLM's payroll processing and shared services center operational assessment. These services were not among the services that PwC or the Debtors contemplated under the Existing Engagement Letters. The BLM Services to be provided by PwC in connection with this project include, but are not limited to, the following:

    a. Facilitating the creation of a value stream map to illustrate current process inputs, suppliers, key activities and key controls, outputs, and customers;

    b. Capturing current key performance metrics such as processing time, volume, level of effort, etc.;

    c. Analyzing the current payroll state process and providing findings and observations related to potential critical failure modes and challenges;

    d. Conducting a root-cause analysis and investigating the sources for payroll issues and process complexity;

    e. Providing findings, observations, and high level recommendations on process and control improvement opportunities along with high-level recommendations and facilitating management's determination of next steps for the future state process design and implementation efforts;

    f. Confer with finance and BLM leadership to gain further insight and confirm objectives and requirements for the BLM program;

    g. Review the BLM business case and provide comments;

h.  Assess and comment on the current scope, governance and performance of BLM, providing findings and identifying areas for potential improvement;

i.  Assess and comment on the elements and timeline included in the BLM Transition Plan based on management's objectives and similar engagement experiences;

j.  Provide relevant benchmark data related to finance and shared services and examples of best practices including governance, service level agreements, performance metrics and other measurements.

13. The BLM Services contemplated in the BLM Services Engagement Letter and the Records Management Services contemplated by the Records Management Services Engagement Letter will not be duplicative of those services provided by any other of the Debtors' professionals. Furthermore, the Debtors will ensure that PwC will coordinate any services performed at the Debtors' request with the Debtors' other professionals, as appropriate, to avoid duplication of effort.

## RELIEF REQUESTED

14. By this Second Supplemental Application, the Debtors seek authorization for Tribune to employ and retain PwC to provide the Records Management Services and BLM Services, as described in the Second Supplemental Engagement Letters annexed hereto as Exhibit A, pursuant to sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014, nunc pro tunc to November 1, 2011.

15. The modified retention and employment of PwC is requested in accordance with and subject to the terms of the Original Retention Order and First Supplemental Retention Order. All provisions of the Original Retention Order and First Supplemental Retention Order remain in full force and effect, are unaffected by this Second Supplemental

Application, and shall control over the terms of the Second Supplemental Engagement Letters.[6] Moreover, the terms of the Existing Engagement Letters, as such letters have been and may be modified by applicable orders of the Bankruptcy Court, remain in full force and effect and are not modified by the parties' entry into the Second Supplemental Engagement Letters.

16. PwC has advised the Debtors that it intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the services performed under the Second Supplemental Engagement Letters, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders established by this Court, consistent with the limited waiver of the information requirements of Local Rule 2016-2 that was granted to PwC with respect to the submission of time records in the Original Retention Order.[7] In consideration of PwC's services under the Records Management Engagement Letter, Tribune has agreed to the payment of fees on a monthly basis at the hourly rates specified in the Records Management Engagement Letter and the reimbursement of all actual and necessary out-of-pocket expenses and internal per-ticket charges for booking travel (not to exceed 10% of fees). See Records Management Engagement Letter at pg. 6. At this time, PwC estimates that its fees for the Records Management Services will range between $200,000 and $210,000. Id. The fee for the BLM Services will be $135,000 and PwC may bill for reasonable out-of-pocket expenses (not to exceed 20% of fees). See BLM Services Engagement Letter at pg. 5. This fixed fee

---

[6] Specifically, the provisions in the Second Supplemental Engagement Letters regarding the Debtors' indemnification obligations and PwC's limitation of liability thereunder shall be deemed to be modified by the terms of the Original Retention Order that were incorporated at the request of the Office of the United States Trustee to address the United States Trustee's concerns regarding similar provisions in the Original Engagement Letters.

[7] This waiver provides that for fixed-fee arrangements PwC may submit time records in a summary format and shall set forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors and for hourly engagements, PwC may submit time in ½ hour increments.

arrangement will comply with the provisions approving PwC's original fixed fee arrangement in the Original Retention Order. The Debtors believe that the foregoing fee structure is (a) reasonable, (b) market-based, and (c) merited by PwC's extensive knowledge and experience of the Debtors and its successful provision of similar services to other companies emerging from chapter 11.

17. Finally, PwC requests a waiver of the informational requirements of Local Rule 2016-2(d) based on the nature of the compensation sought by this Application.

## **LEGAL AUTHORITY**

18. In the instant case, the retention of PwC by Tribune with respect to the services contemplated by the Second Supplemental Engagement Letters is in the best interests of the Debtors' estates and creditors, and satisfies all other standards for retention under sections 327(a) and 1107. Tribune's existing retention of PwC, and the proposed modification of that retention described herein, comply in all respects with section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988)) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e). To the best of the Debtors' knowledge, information, and belief, and based on PwC's representations in the Tenth

Supplemental England Declaration, PwC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible for employment in these cases.

19.     Since the commencement of the Debtors' chapter 11 cases, PwC's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' business operations, finance and accounting systems, and related matters. In addition, PwC has extensive experience in providing compensation, tax, accounting, and auditing services to the Debtors and other similarly-situated companies in connection with their business operations. For these reasons, the Debtors have selected PwC to provide the project management expertise and advice necessary to assist them in reviewing and revising their records retention and management policies, BLM's payroll processes and policies, and BLM's shared services operational policies. The time and cost associated with engaging new consultants to perform such services, who would be unfamiliar with the Debtors and their assets would be both costly and inefficient, needlessly expending the Debtors' assets.

20.     Tribune seeks to retain PwC nunc pro tunc to November 1, 2011, the point at which PwC first began providing the Records Management Services and BLM Services to the Debtors. It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28, 2002). In determining whether the court should exercise its discretion to grant retroactive approval the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327(a), and may consider additional factors such as (1) whether the applicant was under time pressure to begin service without approval; (2) the amount

46429/0001-8047927v1

of delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties. In re Arkansas Co., Inc., 798 F.2d at 650.

21. The Debtors first approached PwC about performing the services described herein in the early fall of 2011, with a request that PwC begin to perform those services as soon as practicable. Since then, the Debtors and PwC have begun to undertake the initial planning and prepatory steps related to assessing the Debtors' current records management policies and certain BLM policies, and the services rendered by PwC prior to the date of this Second Supplemental Application have been preliminary in nature and on a limited basis. Meanwhile, Tribune and PwC have been negotiating the terms of PwC's Second Supplemental Engagement Letters and preparing this Second Supplemental Application. As a result of the Debtors' request that PwC commence the Records Management Services and BLM Services prior to the approval of the Second Supplemental Engagement Letters and the approval of this Second Supplemental Application. However, in between the filing of this Second Supplemental Application and this Court's approval of the application, PwC may incur a small amount of fees related to prepatory work. Payment of such amounts, which are likely to be modest in the context of these chapter 11 cases, presents no plausible prejudice to innocent third parties. The Debtors therefore request that the Court approve PwC's retention on a nunc pro tunc basis in order to cover the period in which those fees were incurred, as well as subsequent periods.

22. The authority to retain consultants to assist with a chapter 11 debtor's review of data and technology policies has been granted to other chapter 11 debtors by courts in this and other districts. See, e.g., In re General Growth Properties, Inc., et al, Case No. 09–11977 (ALG) (Bankr. S.D.N.Y. Oct. 21, 2010) (authorizing the retention of PwC to consult on migration of data interfaces); In re OTC Holdings Corp., et al., Case No. 10-12636 (BLS)

(Bankr. D. Del. Sept. 24, 2009) (authorizing retention of PwC to consult on compliance related technologies); In re Old Carco LLC (f/k/a Chrysler LLC), et al., Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. June 30, 2009) (supplemental retention authorizing PwC to work as information technology consultants). The authority to retain consultants to review payroll processes and make operational assessments is also well founded. See, e.g., In re DBSI, Inc., et al., Case No. 08-12687 (PJW) (Bankr. D. Del. Oct. 14, 2009) (order authorizing retention of Myers & Co. to provide financial and operational services); In re Collins & Aikman Corp., et al., Case No. 05-55927 (SWR) (Bankr. E.D. Mich. June 21, 2005) (order authorizing retention of consultant to provide operational and strategic advice). The Debtors therefore request this Court's authorization to approve the expansion of PwC's services on behalf of the Debtors pursuant to the terms of the Second Supplemental Engagement Letters.

### Request for Limited Waiver of Local Rule 2016-2(d)

23.     Local Rule 2016-2(d) requires retained professionals to submit detailed time entries that set forth, among other things: a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. However, Local Rule 2016-2(g) allows a professional to request a waiver of the requirements of Local Rule 2016-2 for cause. PwC respectfully submits that cause exists in these circumstances for the BLM Services.

24.     Specifically, the Debtors submit that the requirements of Local Rule 2016-2(d) should be tailored to the nature of PwC's BLM Services compensation structure. The parties' agreement calls for a flat fee payment to PwC, and the services contemplated under the BLM Services Engagement Letter are typically done on a flat fee basis. In the Original Retention Order the Bankruptcy Court approved a bifurcated fee structure with PwC (some

16

retentions flat fee, some retentions hourly) and the Debtors request that the BLM Services fall into the flat fee category. This arrangement is consistent with PwC's retention agreement with the Debtors for this matter, general market practice, and the Bankruptcy Court's past approval of the retention of PwC. For these reasons, the Debtors request a limited waiver of the informational requirements of Local Rule 2016-2(d).

## NOTICE

25. Notice of this Second Supplemental Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to PwC; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

26. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) approving the Second Supplemental Application and the retention of PwC to provide the Records Management Services and BLM Services pursuant to sections 327(a) and 1107 of the Bankruptcy Code and pursuant to the terms of the Second Supplemental Engagement Letters, nunc pro tunc to November 1, 2011, (ii) providing a limited waiver of Local Rule 2016-2(d), and (iii) granting to the Debtors such other relief as may be just and proper.

Dated: November 4, 2011

                                             TRIBUNE COMPANY
                                             (for itself and on behalf of each Debtor)

                                             _____
                                             Thomas Caputo
                                             Vice President – Auditing