## EXHIBIT B

### TENTH SUPPLEMENTAL ENGLAND DECLARATION

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## TENTH SUPPLEMENTAL DECLARATION OF WILLIAM T. ENGLAND FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF PRICEWATERHOUSECOOPERS LLP TO INCLUDE CERTAIN ADVISORY SERVICES IN CONNECTION WITH RECORDS MANAGEMENT, PAYROLL PROCESSING, AND OPERATIONS MANAGEMENT PURSUANT TO 11 U.S.C. §§ 327(a) and 1107 *NUNC PRO TUNC* TO NOVEMBER 1, 2011 AND SEEKING A LIMITED WAIVER OF COMPILANCE WITH DEL. BANKR. L.R. 2016-2(d), IN ACCORDANCE WITH DEL. BANKR. L.R. 2016-2(g)

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss: |
| COUNTY OF COOK | ) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

WILLIAM T. ENGLAND, under penalty of perjury, hereby affirms as follows:

1.    I am a partner in PricewaterhouseCoopers LLP ("PwC"), an accounting and financial services firm that has an office at One North Wacker, Chicago, Illinois, 60606. I am duly authorized to make this tenth supplemental declaration (the "Tenth Supplemental Declaration") on behalf of PwC in support of the second supplemental application (the "Second Supplemental Application"[2]) of the above captioned debtors and debtors-in-possession (collectively, the "Debtors" or "Tribune") for entry of an order modifying the scope of the Debtors already-authorized employment of PwC, nunc pro tunc to November 1, 2011. Except as otherwise noted[3], I have personal knowledge of the matters set forth herein, or have been informed of such matters by professionals of PwC, and, if called as a witness, I would testify thereto.

2.    This Tenth Supplemental Declaration supplements the original Declaration of William T. England filed on December 26, 2008, the first Supplemental Declaration of William T. England filed on March 2, 2009, the second Supplemental Declaration of William T. England filed April 10, 2009, the third Supplemental Declaration of William T. England filed on July 2, 2009, the fourth Supplemental Declaration of William T. England filed on February 5, 2010, the fifth Supplemental Declaration of William T. England filed on April 30, 2010, the sixth Supplemental Declaration of William T. England filed on June 22, 2010, the seventh Supplemental Declaration of William T. England filed on December 8, 2010, the eighth Supplemental Declaration of William T. England filed on May 12, 2011, the ninth Supplemental

---

[2]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Second Supplemental Application

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at PwC and are based on information provided by them.

Declaration of William T. England filed on November 5, 2011; Dkt entry nos. 143, 461, 892, 1681, 3318, 4216, 4848, 7107, 8905, and 9903.

3.    Prior to the Petition Date, the Debtors engaged PwC to provide compensation and tax advisory services and independent audit services to the Debtors under the terms and conditions set forth within the five (5) separate engagement letters by which the Debtors intend for PwC to provide services to the Debtors subsequent to the Petition Date.

4.    Thereafter, on December 26, 2008, the Debtors filed the Application For an Order Authorizing Debtors to Retain and Employ PwC LLP as Compensation and Tax Advisors and Independent Auditors to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, *Nunc Pro Tunc* to the Petition Date [Dkt Entry No. 143]. In support of the Application, PwC filed the original declaration of William T. England. On March 4, 2009, the Court entered an order pursuant to sections 327(a) and 1107 of the Bankruptcy Code, authorizing the Debtors to retain PwC as their compensation and tax advisors and independent auditors effective as of December 8, 2008 on the terms and conditions set forth in the Engagement Letters and as modified within the Order (the "Original Retention Order"). Dkt entry no. 470.

5.    Thereafter, on April 30, 2010, the Debtors filed the Supplemental Application for an Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP to Include Certain Advisory Services in Connection with the Application of Fresh Start Accounting Services Pursuant to 11 U.S.C. §§ 327(a) and 1107, *Nunc Pro Tunc* to February 8, 2010 [Dkt Entry No. 4216]. On May 14, 2010, the court entered an Order Modifying the Scope of Retention of PricewaterhouseCoopers LLP to include Certain Advisory Services in Connection With the Application of Fresh Start Accounting, Nunc Pro Tunc to February 8, 2010 [Docket No. 4414] (the "First Supplemental Retention Order").

6.     As disclosed above, PwC has filed nine additional supplemental declarations with the Court to disclose further agreements between the Debtors and PwC regarding the terms and conditions, including fee structure, for the services approved within the Original Retention Order and the First Supplemental Retention Order.

7.     The Debtors and PwC have recently negotiated and entered into the Records Management Services Engagement Letter, pursuant to which PwC has agreed to provide advisory services related to the evaluation and assessment of Tribune's current records and information management policies.  These services were not among the services that PwC or the Debtors contemplated under the Existing Engagement Letters.   The Records Management Services to be provided by PwC in connection with this project include, but are not limited to, the following:

a.     Analyzing records management documents provided by Tribune, including the records retention mission statement, the draft records retention policy, draft records retention schedules, office of record documentation, records retention procedures manuals, and other records retention documents;

b.     Interviewing key records and information management stakeholders, business unit leaders, and information technology representatives;

c.     Analyzing the interviews and documentation to assess the existing records and information landscape and advise management to develop a records management program strategy;

d.     Providing recommendations for making a records retention schedule actionable;

e.     Creating a records and information management roadmap; and

f.     Providing a written records and information management strategy and report.

8.     Accordingly, Tribune and PwC have recently negotiated and entered into the BLM Services Engagement Letter, pursuant to which PwC has agreed to provide advisory services related to the evaluation and assessment of BLM's payroll processing and shared

- 4 -

services center operational assessment. These services were not among the services that PwC or the Debtors contemplated under the Existing Engagement Letters. The BLM Services to be provided by PwC in connection with this project include, but are not limited to, the following:

a)    Facilitating the creation of a value stream map to illustrate current process inputs, suppliers, key activities and key controls, outputs, and customers;

b)    Capturing current key performance metrics such as processing time, volume, level of effort, etc.;

c)    Analyzing the current payroll state process and providing findings and observations related to potential critical failure modes and challenges;

d)    Conducting a root-cause analysis and investigating the sources for payroll issues and process complexity;

e)    Providing findings, observations, and high level recommendations on process and control improvement opportunities along with high-level recommendations and facilitating management's determination of next steps for the future state process design and implementation efforts;

f)    Confer with finance and BLM leadership to gain further insight and confirm objectives and requirements for the BLM program;

g)    Review the BLM business case and provide comments;

h)    Assess and comment on the current scope, governance and performance of BLM, providing findings and identifying areas for potential improvement;

i)    Assess and comment on the elements and timeline included in the BLM Transition Plan based on management's objectives and similar engagement experiences; and

j)    Provide relevant benchmark data related to finance and shared services and examples of best practices including governance, service level agreements, performance metrics and other measurements.

9.    The BLM Services contemplated in the BLM Services Engagement Letter and the Records Management Services contemplated by the Records Management Services Engagement Letter will not be duplicative of those services provided by any other of the Debtors' professionals. Furthermore, PwC will coordinate any services performed at the Debtors' request with the Debtors' other professionals, as appropriate, to avoid duplication of effort.

- 5 -

10.     In consideration of PwC's services under the Records Management Engagement Letter, Tribune has agreed to the payment of fees on a monthly basis at the hourly rates specified in the Records Management Engagement Letter and the reimbursement of all actual and necessary out-of-pocket expenses and internal per-ticket charges for booking travel (not to exceed 10% of fees).  See Records Management Engagement Letter within Exhibit A to the Second Supplemental Application.  At this time, PwC estimates that its fees for the Records Management Services will range between $200,000 and $210,000.  Id.  The fee for the BLM Services will be $135,000 and PwC may bill for reasonable out-of-pocket expenses (not to exceed 20% of fees).  See BLM Services Engagement Letter within Exhibit A to the Second Supplemental Application.   This fixed fee arrangement will comply with the provisions approving PwC's original fixed fee arrangement in the Original Retention Order.  The Debtors believe that the foregoing fee structure is (a) reasonable, (b) market-based, and (c) merited by PwC's extensive knowledge and experience of the Debtors and its successful provision of similar services to other companies emerging from chapter 11.

11.     The compensation structure described above is consistent with PwC's normal and customary billing practices for engagements of this size and complexity, and reflects the difficulty of the extensive assignments PwC expects to undertake.  PwC and the Debtors believe that the foregoing compensation arrangement is (a) reasonable, (b) market-based and (c) merited by PwC's extensive knowledge and experience, and its successful provision of auditing services to other troubled companies.

12.     Compliance with the detailed information requirements of Local Bankruptcy Rule 2016-2(d) would be unduly burdensome for PwC.  PwC advised the Debtors that it is not the practice of PwC's professionals to keep detailed time records in one-tenth-of-an-

hour increments (i.e., six minute increments) as customarily kept by attorneys who are compensated subject to approval of the Bankruptcy Court. Instead, the customary practice of PwC's professionals is to keep reasonably detailed records of services rendered during the course of an engagement in half-hour (0.5) increments. PwC requests that this Court allow PwC to provide the following in its monthly, interim and final fee applications: (a) for the fixed fees provided under the BLM Services Engagement Letter, PwC shall include as an exhibit to each fee application only (i) a summary of the approximate time spent by professionals in lieu of contemporaneous time records in partial hour increments and (ii) a general description of the services provided and (b) for services provided on an hourly basis under the Records Management Services Engagement Letter, PwC shall submit time records, which shall set forth a description of the services rendered by each professional and the amount of time spent on each date, in half hour (0.5) increments, by each such individual in rendering services on behalf of the Debtors.

13.    After considering the foregoing, and insofar as I have been able to ascertain after diligent inquiry, I believe PwC does not hold or represent an interest adverse to the Debtors or their estates with respect to the advice and services PwC has been asked to provide to the Debtors, and has been providing to the Debtors, during the pendency of these chapter 11 bankruptcy cases.

14.    Neither I nor any partner of, or professional employed by, PwC, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the advice and services PwC has been asked to provide to the Debtors, and has been providing to the Debtors, during the pendency of these chapter 11 bankruptcy cases.

- 7 -

15.    Additionally, no commitments have been made or received by PwC, nor any partner, associate or employee thereof, as to compensation or payment in connection with these chapter 11 bankruptcy cases other than in accordance with the provisions of the Bankruptcy Code. Further, neither I, nor any partner, associate or employee of, PwC has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of PwC.

16.    If PwC should discover any facts bearing on the matters described herein or becomes aware of any additional relationships requiring disclosure, PwC will supplement this Tenth Supplemental Declaration

I declare under penalty of perjury that the forgoing is true and correct.

Dated this 4th day of November 2011.

WILLIAM T. ENGLAND