# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br>Jointly Administered<br><br>Re: D.I. 8746, 9256, 9703, 10132<br><br>Hearing Date: November 22, 2011 at 2:00 p.m.<br>Objection Deadline: November 15, 2011 at 4:00 p.m. |

## MOTION FOR AN ORDER *NUNC PRO TUNC* AMENDING THE DEFINITION OF "TERMINATION EVENT" IN ORDERS GRANTING OFFICIAL COMMITTEE OF UNSECURED CREDITORS STANDING AND AUTHORITY TO COMMENCE, PROSECUTE, SETTLE AND RECOVER CERTAIN CAUSES OF ACTION ON BEHALF OF THE DEBTORS' ESTATES

The Official Committee of Unsecured Creditors (the "Committee") of Tribune Company and its various debtor-subsidiaries (collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court for the entry of an order amending the definition

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

{698.001-W0017533.}

of "Termination Event," *nunc pro tunc*, in the orders granting the Committee standing to prosecute certain actions on behalf of the Debtors' estates. This motion requests that subsection (ii) of the definition of "Termination Event" in the various Standing Orders (as defined *infra*) be deleted. In light of the Court's October 31, 2011 decision and order declining to approve a plan of reorganization for Tribune (together the "Confirmation Opinion") [D.I. 10133, 10134], the requested amendment to the Standing Orders is appropriate and necessary to keep in place the general stay in Tribune LBO- and bankruptcy-related litigation while the various plan proponents attempt to respond to the Confirmation Decision.

In support hereof, the Committee respectfully represents as follows:

## BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On December 18, 2008, the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in the Debtors' cases. The current members of the Committee are: JPMorgan Chase Bank, N.A., in its capacity as lender; Deutsche Bank Trust Company Americas, as successor Indenture Trustee; Wilmington Trust Company, as successor Indenture Trustee; Warner Brothers Television; Buena Vista Television; William Niese; Pension Benefit Guaranty Corporation; and Washington-Baltimore Newspaper Guild, Local 32035. *See* Second Amended Notice of Appointment of Committee of Unsecured Creditors (May 26, 2009) [D.I. 1238].

3.  By motion dated February 1, 2010, as supplemented by motion dated September 14, 2010 (D.I. 3281 and 5668, together, the "First Standing Motion"), the Committee requested that this Court authorize it to commence, prosecute and settle on behalf of the Debtors' estates claims and counterclaims arising out of or in connection with the Debtors' 2007 leveraged buyout transaction ("LBO-Related Claims"). By separate motion dated September 13, 2010 (D.I. 5698, the "Second Standing Motion"), the Committee requested that this Court authorize it to commence, prosecute and settle certain additional LBO-Related Claims on behalf of the Debtors estates (collectively, the "LBO Standing Motions").

4.  By Motion dated November 11, 2010 (D.I. 6414, the "Preference Standing Motion"), the Committee requested that this Court authorize it to commence, prosecute, and settle on behalf of the Debtors' estates certain claims related to avoidable transfers made by the Debtors. By separate motion dated November 23, 2010, the Committee requested that this Court authorize it to commence, prosecute and settle on behalf of the Debtors' estates certain claims related to avoidable transfers made by the Debtors to certain retained professionals (D.I. 6559, the "Professionals Preference Standing Motion," together with the LBO Standing Motions and the Preference Standing Motion, the "Standing Motions").

5.  By orders dated October 27, 2010 and November 29, 2010 (D.I. 6150, 6657 and 6658 the "Standing Orders"), this Court granted the Standing Motions. The Standing Orders provide that, pending the occurrence of a "Termination Event" as defined in the Standing Orders, any litigation commenced by the Committee pursuant to the authority granted in the Standing Orders (a) may not be settled absent the agreement of the Debtors and the Committee and (b) shall generally be stayed. Specifically, with respect to settlement, the Standing Orders each provide, in pertinent part, that:

> [N]either the Debtors nor the Committee shall settle, subject to the Court's approval, any of the claims to be transferred to the Litigation Trust or the Creditors Trust (under and as defined in the Proposed Plan) without the other's consent unless and until the earliest to occur of the following: (i) the Committee and/or the Debtors withdraw their support for the Proposed Plan; (ii) the Court declines to confirm the Proposed Plan, or (iii) April 1, 2011 (each a "Termination Event").

*See* Standing Orders, p. 3. With respect to the broad stay of any litigation commenced pursuant to the authority granted to the Committee in the Standing Orders, each of the Standing Orders provides, in pertinent part, that such actions:

> shall be deemed stayed, until a Termination Event occurs .... All applicable deadlines, other than those applicable to the discovery permitted in this Order, are suspended during the period of the Stay. All motion practice (other than motions respecting confidentiality, motions to lift, extend or otherwise respecting the Stay, motions with respect to the discovery permitted by this Order, motions to intervene and motions regarding settlements consistent with the terms of this Order) and contested hearings or trials are prohibited.

*See* Standing Orders, p. 4.

6. Since the entry of the Standing Orders, the Committee has filed certain complaints and/or negotiated tolling agreements with respect to statutes of limitations, all as contemplated by and consistent with the terms of the Standing Orders. Consistent with the Standing Orders, the litigation the Committee has commenced has been stayed, pending the occurrence of a Termination Event, except for the limited discovery and service activities permitted by the Standing Orders.

7. On four occasions from March 21, 2011 forward, the Committee has requested entry of an order amending subsection (iii) of the definition of "Termination Event" in the Standing Orders [D.I. 8469, 9012, 9656, 9967]. The Court has granted each of the requests [D.I. 8746, 9256, 9703, 10132]. On October 31, 2011, the Court granted the fourth such request,

re-defining subsection (iii) of the "Termination Event" definition to be December 13, 2011 [D.I. 10132].

8.   Later that same day, October 31, the Court entered its Confirmation Opinion, denying confirmation of both the plan of reorganization proposed by the Debtors, Senior Lenders and the Committee (the "DCL Plan") and the plan proposed by certain Noteholders (the "Noteholder Plan" and collectively with the DCL Plan, the "Competing Plans"). Under the current terms of the Standing Orders, the Confirmation Opinion would constitute a "Termination Event" that would lift the litigation stays imposed by the Standing Orders. Accordingly, absent entry of the relief requested by this motion, the stays in the numerous actions initiated by the Committee will expire and active litigation of those proceedings could commence.[2]

**RELIEF REQUESTED**

9.   The Committee seeks an order *nunc pro tunc* modifying the definition of Termination Event in the Standing Orders to excise current subsection (ii) and thereby remove the portion of that definition that would cause the stay to terminate as a result of the Confirmation Opinion. The proposed amendment would renumber the current subsection (iii) as the new subsection (ii). This change should be deemed to have been made effective prior to the issuance of the Confirmation Opinion to ensure that the stays remain in place while the interested parties focus on addressing the impact of the Confirmation Opinion. As proposed, and taking into account the most recent extension granted by the Court, the Termination Event provision would now read:

---

[2] Counsel for Sam Zell has contacted the Committee advising that the Confirmation Opinion triggered the lifting of the stay. Mr. Zell's counsel has told the Committee's counsel, however, that they will not serve or file a Rule 9011 motion pending resolution of this motion to permit the Committee an opportunity to raise this matter with the Court.

[N]either the Debtors nor the Committee shall settle, subject to the Court's approval, any of the claims to be transferred to the Litigation Trust or the Creditors Trust (under and as defined in the Proposed Plan) without the other's consent unless and until the earliest to occur of the following: (i) the Committee and/or the Debtors withdraw their support for the Proposed Plan; or (ii) December 13, 2011 (each a "Termination Event").

## BASIS FOR RELIEF

10. The Court has inherent authority and jurisdiction to consider and enforce the terms of the orders it enters, including the Standing Orders. *See Langston Law Firm v. Mississippi,* 410 B.R. 150, 155 (S.D.N.Y. 2008) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334.") (quoting *In re Chateaugay Corp.,* 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996)); *see also In re Fibermark,* 369 B.R. 761, 765 (Bankr. D. Vt. 2007); *In re White Motor Credit Corp.,* 75 B.R. 944, 947-48 (Bankr. N.D. Ohio 1987). Notably, the Standing Orders carve out from the broad stay of litigation motions "to extend or otherwise respecting the stay . . . ." *See* LBO Standing Order, p. 4; Preference Standing Order, p. 3; Professionals Standing Order, p. 3. Consequently, the Court's consideration of the relief sought herein is appropriate at this time.

11. The Court has repeatedly extended the stay by re-defining the date reflected in subsection (iii) of "Termination Event," to permit the parties and the Court to complete confirmation proceedings. While the Confirmation Opinion denied confirmation of both proposed plans of reorganization, it spelled out the modifications in the competing plans required to make them confirmable and provided that, if both plans are so modified, the Court would confirm the DCL Plan. Confirmation Opinion at 125 ("[A]ssuming that both sets of plan proponents addressed only the flaws in their respective plans and both returned confirmable plans containing terms otherwise similar to those presently proposed, with similar voting results,

the DCL Plan would survive the crucible of §1129(c)."). The Court has scheduled a hearing for November 22, 2011, to confer with the parties "to further the expeditious and economical resolution of the case." Order Denying Confirmation at 2 (quoting Bankruptcy Code §105(d)(1)).

12. In short, while neither plan was confirmed, the Court has provided a road map to confirmation. For the same reasons that (a) the parties negotiated, and the Court entered, the Standing Orders providing for the Termination Events and (b) the Court entered the prior four orders modifying the definition of Termination Event to extend the stay, the parties-in-interest will benefit by maintaining December 13, 2011 as the operative Termination Event. At a time when the various plan proponents are focused on responding to the Confirmation Opinion, the parties should not be handicapped by having to divert attention to litigation involving hundreds, if not thousands, of parties. Maintaining the stay – and preserving the Committee's current ability to seek 60-day extensions – will conserve estate resources and permit the efficient and orderly conduct of the bankruptcy proceedings. Finally, as valuable claims will be transferred to a litigation trust once a plan is confirmed and becomes effective, maintaining the stay is appropriate so that the litigation trustee can make the important decisions about how to pursue those claims.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto, amending the Standing Orders *nunc pro tunc* to modify the definition of Termination Event in the Standing Orders and granting such other relief as the Court deems just and proper.

Dated: November 4, 2011
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Adam G. Landis

Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Matthew B. McGuire (No. 4366)
James S. Green, Jr. (No. 4406)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Counsel to the Official Committee of Unsecured Creditors*