# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: November 22, 2011 at 2:00 p.m. (ET)**
**Obj. Deadline: November 15, 2011 at 4:00 p.m. (ET)**

## FOURTH SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF ERNST & YOUNG LLP TO INCLUDE VALUATION OF CERTAIN COOKING CHANNEL ASSETS PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107 *NUNC PRO TUNC* TO JUNE 13, 2011

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors") hereby submit this Fourth Supplemental

Application (the "Fourth Supplemental Application") for entry of an order, in the form submitted

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

herewith, modifying the scope of the Debtors' already-authorized employment of Ernst & Young

LLP ("E&Y") pursuant to sections 327(a) and 1107 of the title 11 of the United States Code (the

"Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), nunc pro tunc to June 13, 2011. The Debtors have requested that E&Y

provide professional services to the Debtors in connection with the valuation of certain

intangible assets which were contributed to Television Food Network, G.P. ("TFN"), a general

partnership in which Tribune (FN) Cable Ventures, Inc. ("TCV"), a non-Debtor indirect

subsidiary of Tribune Company, holds and interest (collectively, the "Valuation Services"),

which are not within the scope of E&Y's existing retention by the Debtors.  In support of this

Fourth Supplemental Application, the Debtors respectfully represent as follows:[2]

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008,

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for

procedural purposes only.  An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the

Debtors comprise 111 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

Nos. 43, 2333].

---

[2] In further support of this Fourth Supplemental Application, E&Y will file the Fifth Supplemental Affidavit of
Matthew Howley (the "Fifth Supplemental Howley Affidavit"), prior to the hearing on this Application.

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND TO THE FOURTH SUPPLEMENTAL APPLICATION

### A.      Scope of E&Y's Current Retention

6.      E&Y is currently retained by the Debtors to provide (i) valuation and business modeling services, (ii) market survey services, (iii) valuation services for certain FCC licenses held by the Debtors, (iv) valuation services related to the application of fresh start accounting, and (v) advisory services relating to sales and use taxes and personal property taxes. The terms of E&Y's existing retention by the Debtors are summarized in (a) the Debtors' Application for an Order Authorizing Debtors to Retain and Employ Ernst & Young LLP to provide (i) valuation and business modeling services and (ii) market survey services to the Debtors, which was filed on June 5, 2009 [Docket No. 1298] (the "Application") and subsequently approved by an order of this Court on July 21, 2009 [Docket No. 1783] (the "Original Retention Order"); (b) the Debtors' Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to include continued performance of valuation services relating to FCC licenses, which was filed on February 22, 2010 [Docket No. 3516] (the

"Supplemental Application") and subsequently approved by an order of this Court on March 22,

2010 [Docket No. 3804] (the "Supplemental Retention Order"); (c) the Debtors' Second

Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young

LLP to encompass certain valuation services related to the application of fresh start accounting

and plan of reorganization adjustments upon the Debtors' emergence from bankruptcy, which

was filed on May 24, 2010 [Docket No. 4594] (the "Second Supplemental Application") and

subsequently approved by an order of this Court on June 14, 2010 [Docket No. 4779] (the

"Second Supplemental Retention Order"); and (d) the Debtors' Third Supplemental Application

for an Order Modifying the Scope of the Retention of Ernst & Young LLP to encompass certain

advisory services related to sales and use taxes and personal property taxes, which was filed on

March 4, 2011 [Docket No. 8277] (the "Third Supplemental Application" and collectively with

the Application, the Supplemental Application and Second Supplemental Application, the "Prior

Applications") and subsequently approved by an order of this Court on March 21, 2011 [Docket

No. 8459] (the "Third Supplemental Retention Order" and collectively with the Original

Retention Order, the Supplemental Retention Order and the Second Supplemental Retention

Order, the "Prior Retention Orders").

7.      Additionally, the Debtors filed an application, pursuant to sections 105,

363 and 1107 of the Bankruptcy Code, for an order authorizing E&Y to perform services as the

"Accounting Firm" under a 2009 Formation Agreement concerning the formation of Chicago

Baseball Holdings, LLC, which was filed on June 2, 2011 [Docket No. 9041] (the "Cubs

Engagement Application") and subsequently approved by an order of this Court on June 24,

2011 [Docket No. 9348]. The Prior Applications and the Cubs Engagement are hereby incorporated by reference.[4]

## B.    The Cooking Channel Contribution

8.    Tribune Company ("Tribune") is the ultimate parent company of each of the Debtors. Tribune Broadcasting Company, a Debtor in these chapter 11 cases, is the direct parent of TCV, a non-Debtor entity. TCV owns a 31.3% partnership interest in TFN, a Delaware general partnership formed in 1993. The remaining 68.7% partnership interest in TFN is collectively held by Scripps Networks, LLC ("Scripps") and Cable Program Management Co., G.P. ("CPMC" and together with Scripps, the "Scripps Parties"). TCV's investment in TFN is an important and valuable asset, generating in excess of $110 million in distributions to TCV in fiscal year 2010.

9.    TFN owns and operates "Food Network", a 24-hour lifestyle cable television channel focusing on food and related topics, and "The Cooking Channel," primarily devoted to cooking instruction, food information, and other directly related topics. Food Network has enjoyed substantial commercial success and is recognized as a leader in food content and programming. Food Network's ratings have increased approximately 25% in the last three years, according to Nielsen Co. figures, reaching 707,000 viewers overall and 1.13 million in prime time, with commercial time often sold out. The Cooking Channel is currently available in approximately 57 million households with a lineup consisting of new, original programming,

---

[4] The Debtors incorporate herein by reference the Affidavit of Matthew Howley in Support of the Application, which was filed on June 5, 2009 [Docket No. 1298], the Supplemental Affidavit of Matthew Howley in Support of the Application, which was filed on July 13, 2009 [Docket No. 1712], Supplemental Affidavit of Ernst & Young LLP, which was filed on November 2, 2009 [Docket No. 2471] and the Fourth Supplemental Affidavit of Ernst & Young LLP, which was filed on August 3, 2011 [Docket No. 9600] (collectively, the "Prior Affidavits").

as well as syndicated content and programming from Food Network's library that explores the food content genre at a more detailed level, including expert advice and techniques.[5]

10.    The Cooking Channel became a wholly-owned subsidiary of TFN on or around August 31, 2010, when a subsidiary of Scripps contributed the outstanding membership interests of the entity owning the assets comprising The Cooking Channel to TFN. Subsequently, the Court authorized Tribune to cause TCV to contribute $52,803,821.00 to TFN, in order to prevent the dilution of its percentage interest in TFN as a result of the contribution of the Cooking Channel assets to the partnership. See Order Pursuant to 11 U.S.C. § 105(a) Authorizing Non-Debtor Tribune (FN) Cable Ventures, Inc.'s Contribution to Television Food Network, G.P., dated February 25, 2011 [Docket No. 8150]. As of the date of this Fourth Supplemental Application, The Cooking Channel has been fully integrated into TFN to create a unique pair of food-focused channels operating efficiently under one infrastructure.

### C.    The Proposed Supplemental Retention

11.    The Debtors now desire to retain and employ E&Y to estimate the fair value of certain underlying assets of The Cooking Channel that were contributed to TFN. Specifically, Tribune has requested that E&Y value certain of The Cooking Channel's intangible assets (the "Assets"). Such valuation will be used by Tribune in order to establish the value of the Assets for use in Tribune's accounting for its equity ownership in TFN in accordance with Accounting Standards Codification Topic 323, Investments – Equity Method and Joint Ventures, and ASC Topic 805, Fair Value Measurements and Disclosures.

12.    The Valuation Services that are the subject of this Fourth Supplemental Application are subject to the terms and conditions set forth in the Statement of Work – Cooking

---

[5] The Cooking Channel succeeded and replaced the Fine Living Network, another Scripps cable network, which Scripps rebranded as The Cooking Channel.

Channel Intangible Asset Valuation (the "SOW"), a true and correct copy of which is attached hereto as Exhibit B. Assistance with the Valuation Services was not among the services that E&Y or the Debtors contemplated under the existing engagement letters and statements of work that were the basis of the Prior Applications. Accordingly, the Debtors submit this Fourth Supplemental Application to encompass the Valuation Services and obtain Court approval for the SOW. E&Y has agreed to provide the Valuation Services, subject to the Court's approval of E&Y's retention in accordance with the terms and conditions of the SOW and the engagement letter dated May 15, 2009 between Tribune and E&Y (the "Original Engagement Letter"), as modified by the Original Retention Order, the scope of which are as follows:[6]

- o Conduct interviews with management concerning:

    - o the nature and operations of the business of The Cooking Channel, including its historical financial performance,

    - o existing business plans, future performance estimates, or budgets for The Cooking Channel, and

    - o the assumptions underlying the business plans, estimates, or budgets, as well as the risk factors that could affect planned performance;

- o Analyze the industry, as well as the economic and competitive environments in which The Cooking Channel operates;

- o Analyze the historical and projected financial data of The Cooking Channel and the Assets.

- o Analyze and prepare recommendations of value for the Assets, including;

    - o MSO relationships

    - o Advertiser relationships

    - o Trademarks

    - o Workforce

---

[6] In the event of any conflict between the summary of the Valuation Services provided herein and the terms of the SOW, the terms of the SOW shall govern.

46429/0001-8048532v

    o  Prepare a narrative report (the "Report") presenting the methodologies employed in E&Y's analysis, the assumptions on which E&Y's analysis was based, and E&Y's recommendations of value.

      13.    The SOW provides that Tribune shall be provided with the draft Report referenced above, and may provide editorial comments on the Report to E&Y. The SOW further provides that any subsequent changes in the Report beyond those required to address Tribune's initial comments are outside the scope of the Valuation Services. The Report will include a Statement of Limiting Conditions, a draft of which is attached to the SOW as Attachment 1.

      14.    The Valuation Services contemplated in the SOW are not duplicative of those services provided by any other of the Debtors' professionals.

## RELIEF REQUESTED

      15.    By this Fourth Supplemental Application, the Debtors seek authorization to employ and retain E&Y nunc pro tunc to June 13, 2011, to provide the Valuation Services in accordance with the SOW. At Tribune's request, E&Y began providing the Valuation Services on or about June 13, 2011, pending the filing of this Fourth Supplemental Application and Court approval hereof.

      16.    Subject to the Court's approval, E&Y will charge the Debtors for its performance of the Valuation Services on the basis described in the SOW, in accordance with the applicable orders of this Court concerning the compensation of professionals in the Debtors' chapter 11 cases. The applicable fees and hourly rates that E&Y will charge the Debtors in connection with the Valuation Services are set forth in the SOW. See Exhibit B. Specifically, E&Y will bill based on the actual time of E&Y professionals expended in performing the Valuation Services. Such time will be billed in quarter-hour increments. The rates, by level of professional, are as follows:

| Title | Rate Per Hour |
| --- | --- |
| Executive Director/Principal/Partner | $525 |
| Senior Manager | $475 |
| Manager | $375 |
| Senior | $275 |
| Staff | $175 |

17.    The Debtors will also pay E&Y's expenses and reimbursements in accordance with the terms of E&Y's Original Engagement Letter, which has been previously approved by the Court.

## LEGAL AUTHORITY

18.    The Debtors' existing retention of E&Y, and the proposed modification of that retention described herein, are pursuant to section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons."  11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.').  A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason.  See 11 U.S.C. § 101(14)(e).

19.    To the best of the Debtors' knowledge, information and belief, and based on E&Y's representations in the Prior Affidavits, E&Y is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible for retention and employment in these cases.

46429/0001-8048532v

20.    In the instant case, modifying the scope of E&Y's representation to include the Valuation Services is in the best interests of the Debtors' estates, and satisfies all other standards for retention under sections 327(a) and 1107 of the Bankruptcy Code. E&Y is best positioned to perform the needed services efficiently and economically on behalf of the Debtors. The partners, managers and staff of E&Y, through E&Y's prior work for the Debtors, are very familiar with the Debtors and their business operations. Furthermore, as discussed above, E&Y has already been retained to perform other valuation services for the Debtors, including valuation and business modeling services, valuation services for certain FCC licenses held by the Debtors and valuation services related to the application of fresh start accounting. E&Y's current provision of valuation services to the Debtors, coupled with E&Y's experience in asset valuation, leads the Debtors to believe that retaining E&Y to value the Assets – a necessary task in order for the Debtors to meet legally mandated accounting requirements – is both efficient and sensible. The Debtors therefore request this Court's authorization to approve the expansion of E&Y's Application to include the Valuation Services pursuant to the terms of the SOW, nunc pro tunc to June 13, 2011.

21.    Tribune seeks to retain E&Y nunc pro tunc to June 13, 2011, the point at which E&Y first began providing the Valuation Services to the Debtors. It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28, 2002). In determining whether the court should exercise its discretion to grant retroactive approval the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327(a), and may consider additional factors such as (1) whether the applicant was under time

pressure to begin service without approval; (2) the amount of delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties. In re Arkansas Co., Inc., 798 F.2d at 650.

22.    In order for the Debtors to expeditiously account for its equity ownership in TFN, it was necessary for E&Y to begin the Valuation Services shortly after the preparation of the SOW, which is dated June 6, 2011. As of the date of this Fourth Supplemental Application, E&Y has provided its preliminary valuation conclusions to Tribune and is in the process of preparing the Report. E&Y has incurred $10,940 in fees and $700 in expenses as of the date of this Application. The Debtors therefore request that the Court approve E&Y's retention on a nunc pro tunc basis.

## NOTICE

23.    Notice of this Fourth Supplemental Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to E&Y; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

24.    The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors' Fourth Supplemental Application and retention of E&Y to perform the Valuation Services in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code nunc pro tunc to June 13, 2011, pursuant to the terms of the SOW, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated: November 4, 2011

> TRIBUNE COMPANY
> (for itself and on behalf of each Debtor)
>
> _Brian Litman_
> Brian Litman
> Vice President & Controller

LEGAL02/32929374v4