# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 Cases |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Objection Deadline: December 6, 2011 at 4:00 p.m.** |
| | : | **Hearing Date: December 13, 2011 at 1:00 p.m.** |
----------------------------------------------------x Related Dkt. Nos. 10133, 10134

## JOINT MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERICAS REQUESTING RECONSIDERATION OF THE COURT'S CONFIRMATION OPINION WITH RESPECT TO THE SUBORDINATION OF THE PHONES

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company ("Tribune" and with its debtor subsidiaries, the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A. (as amended, the "1996 Indenture"), and Deutsche Bank Trust Company Americas ("DBTCA" and together with Law Debenture, the "Movants"), successor trustee under (i) that certain indenture dated March 1, 1992, by and between Tribune and Continental Bank, N.A. (as amended, the "1992 Indenture"); (ii) that certain indenture dated January 30, 1995, by and between Tribune and First Interstate Bank of California (as amended, the "1995 Indenture"); and (iii) that certain indenture dated January 1, 1997, by and between Tribune and Bank of Montreal Trust Company (as amended, the "1997 Indenture") (collectively, the "Senior Indentures" and the notes and holders of notes issued pursuant to the Senior Indentures, respectively, the "Senior Notes" and the "Senior Noteholders"), respectfully move this Court pursuant to Federal Rules of Civil Procedure 59(e) as made applicable Federal Rules of Bankruptcy Procedure 9023 to reconsider its determination in the *Opinion on Confirmation* dated October 31, 2011 [Dkt. No. 10133] (the "Confirmation Opinion") that the Exchangeable Subordinated Debentures due 2029 (the "PHONES") issued pursuant to that certain Indenture

(the "PHONES Indenture") dated April 1, 1999 among Tribune as issuer and Wilmington Trust Company as successor trustee (the "PHONES Trustee") are not subordinated with respect to payments from the Debtors' estates attributable to proceeds recovered on account of avoidance actions by the Post-Confirmation Trusts (as defined below). In support of their request for reconsideration, Movants respectfully represent as follows:

## PRELIMINARY STATEMENT

In its Confirmation Opinion the Court concluded that avoidance action recoveries are not subject to the subordination of the PHONES under the PHONES Indenture. However, that conclusion has no support (1) in the PHONES Indenture when read in its entirety and (2) under applicable, governing law.

First, as to the contract, the plain, unambiguous language of the PHONES Indenture imposes no limitation on subordination of payments to "assets of the Company," nor to any other source. Rather, the contract, read as a whole, explicitly provides for absolute subordination. It provides for holders of Senior Notes to be paid in full, in cash, prior to any payment being made to holders of the PHONES. The contract itself is clear, explicit, and unambiguous on this point. In addition, the qualifier, "assets of the Company" that appears in one provision, actually does not apply to "payments" inasmuch as the term "payments" is not the last antecedent in the phrase "payment or distribution of assets of the Company." Under basic grammatical rules of contract interpretation, which the United States Supreme Court twice has endorsed and which since have been applied to the interpretation of subordination provisions, the contract is clear and unambiguous on this point. Also, reading subordination provisions to choose which payments are or are not subordinate based upon the source of payments leads to a result inconsistent with the commercial concept of subordination. Capital markets understand subordinated debt to be

2

fully and completely subordinate to the prior payment in full of senior debt. A contrary reading here upsets that market expectation. And a contrary reading does not follow where the PHONES Indenture is unambiguous on the subordination point. Even if the Court were to find the subordination provision ambiguous such that the Court resorts to extrinsic evidence, the PHONES Prospectus (as defined) clarifies any such ambiguity in explaining to purchasers that the contractual subordination is absolute.

Second, as to applicable, governing law, the Court's distinction here between property of the debtor and property of the estate actually is not applicable to *proceeds* of avoidance actions from which payments are made to creditors as opposed to avoidance actions themselves. Indeed, the United States Supreme Court several years ago explained that property *of the debtor* includes avoidance actions recoveries. Thus, even if there is a meaningful difference between property of the debtor and property of the estate as the Court suggests in reliance on *Off'l Comm. Of Unsecured Creditors of Cybergenics Corp. v. Scott Chinery (In re Cybergenics Corp.)*, 226 F.2d 237 (3d Cir. 2000), that difference can not be relevant here, where property, had it not been fraudulently conveyed, would have been the debtor's property at the outset. Therefore, when the debtor recovers that property or its monetary substitute it regains its character as property of the debtor. And that is property of and for the debtor from which to make payments in accordance with the Debtors' creditors' agreed upon contractual priorities.

One further point bears mention. In the Confirmation Opinion the Court stated that both the PHONES Trustee and the Senior Noteholders contended that there is no subordination as to avoidance action recoveries. However, the Senior Noteholders never made this contention, only the PHONES Trustee did. The Senior Noteholders, as beneficiaries of the subordination, contend to the contrary.

3

Here, reconsideration is appropriate to correct the Confirmation Opinion to remedy a clear error of law and fact and to prevent manifest injustice. Accordingly, Movants respectfully request that the Court reconsider its Confirmation Opinion with respect to this discrete issue and revise its decision accordingly.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicate for the relief requested are Rule 59 of the Federal Rules of Civil Procedure and Rule 9023 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### The Chapter 11 Cases

2. On December 8, 2008 (the "Petition Date"), the Debtors, with one exception, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1]

3. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) (the "Chapter 11 Cases"). [Dkt. Nos. 43 and 2333].

4. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### The Confirmation Process

5. On October 18, 2010, the Court entered an Order [Dkt. No. 6022] setting

---

[1] An additional Debtor, Tribune CNLBC, LLC, filed for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, 111 entities are currently Debtors in these chapter 11 cases.

deadlines for filing competing plans and disclosure statements. Parties filed four competing plans of reorganization. Two plans were subsequently withdrawn leaving two remaining plans: (1) the *Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.*, as amended [Dkt. Nos. 7136, 7701, 7801, 8231, 8259, 8580, and 8769] (the "DCL Plan") and (2) the *Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, L.P. on behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES*, as amended [Dkt. Nos. 7127, 7802, 8169, 8225, 8286, 8755, and 8756] (the "Noteholder Plan").

6. Specifically, as it relates to this motion, the DCL Plan provides for a settlement with certain current and former lenders and other parties of certain LBO-Related Causes of Action (as defined in Section 1.1.131 of the DCL Plan). The DCL Plan preserves the remaining LBO-Related Causes of Action (the "Preserved Causes of Action") by (i) assigning LBO-Related Causes of Action of the Estates to a litigation trust for the benefit of the Debtors' creditors (the "Litigation Trust"), and (ii) providing for the assignment to a trust (the "Creditor Trust," and, together with the Litigation Trust, the "Post-Confirmation Trusts") or, if an individual creditor opts out, the retention by the individual creditor, of creditors' state law fraudulent conveyance claims. *See* DCL Plan §§ 13, 14. The Preserved Causes of Action include, among others, avoidance action claims provided for in Chapter 5 of the Bankruptcy Code (the "Avoidance

5

Claims").

7. The DCL Plan provides that all payments to the PHONES from the Litigation Trust, including proceeds from Avoidance Claims, are subordinated to the prior payment in full in cash of the Senior Notes and leaves open the question of whether the PHONES are subordinated as such to payments from the Creditor Trust.[2]

8. On March 7, 2011, the Court commenced the hearing to consider confirmation of the DCL Plan and the Noteholder Plan (the "Confirmation Hearing"). The Court held the Confirmation Hearing over a two-week period in March 2011 and continued on April 12, 13, and 14. After post-trial briefing, the Court heard closing arguments on June 27, 2011.

## The Confirmation Opinion

9. On October 31, 2011, the Court issued its Confirmation Opinion denying confirmation of both the DCL Plan and the Noteholder Plan. The Court stated, however, that "assuming that both sets of plan proponents addressed only the flaws in their respective plans and both returned confirmable plans containing terms otherwise similar to those presently proposed, with similar voting results, the DCL Plan would survive the crucible of § 1129(c)". Confirmation Opinion at 125.

10. One of the flaws found by the Court in the DCL Plan was its subordination of the PHONES to the Litigation Trust's recoveries from Avoidance Claims. The Court stated that "causes of action that the Debtors' estate may assert under Chapter 5 of the Bankruptcy Code are not 'assets of the Company' subject to the PHONES' subordination provision." Confirmation

---

[2] It is hard to see how recoveries to the Creditor Trust would not similarly be subordinate until the prior payment in full in cash of the Senior Notes (*see infra* at §II.E.). In any event, the PHONES Trustee opted out of the Creditor Trust so it has no claims personal to it in the Creditor Trust.

Opinion at 112-13.[3]

**RELIEF REQUESTED**

11. By this Motion, the Movants seek (i) reconsideration, in part, of the Confirmation Opinion and (ii) upon reconsideration (a) vacating that portion of the Confirmation Opinion providing that "causes of action that the Debtors' estates may assert under Chapter 5 of the Bankruptcy Code are not subject to the PHONES' subordination provision;" and (b) amending the Confirmation Opinion to modify and supplement its conclusions of law to hold that the PHONES are subordinate in right of payment to the Senior Notes in recoveries and payments from all Preserved Causes of Action, including Avoidance Claims.

**BASIS FOR RELIEF**

**I. Legal Standard**

12. Bankruptcy Rule 9023 governs motions for reconsideration in bankruptcy cases. *Syracuse v. Orion Refining Corp. (In re Orion Refining Corp.)*, 2006 Bankr. LEXIS 1657 (Bankr. D. Del. Aug. 8, 2006) ("A motion for reconsideration is not specifically addressed in the Federal Rules of Civil Procedure; rather, such motions generally fall within the parameters of Rule 59(e), which allows a party to file a motion to alter or amend a judgment."); *see also In re Planet Hollywood Int'l*, 274 B.R. 391, 399 (Bankr. D. Del. 2001). Fed. R. Civ. P. 59, incorporated by reference in Fed. R. Bankr. P. 9023, provides in pertinent part that a court may amend an entered judgment, and by application of case law, an order, in an action tried without a jury. *See* Fed. R. Civ. P. 59(e).

13. A Rule 59(e) motion is "a 'device to relitigate the original issue' decided by the

---

[3] The Court's statement that "[t]he Noteholders and [the PHONES Trustee] also argue that the PHONES are entitled to receive distributions from the Litigation Trust and the Creditors' Trust without giving effect to the subordination provision . . . ." is not correct. Only the PHONES Trustee made this contention and then only in post-confirmation briefing. The Senior Noteholders contend otherwise as set forth in the Noteholder Plan.

7

District Court, and used to allege legal error." *Nusbaum v. MBFG Ltd. P'ship*, 314 Fed. Appx. 516, 517 (3d Cir. 2009); *see also North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). A motion for reconsideration should be granted if the moving party shows "the need to correct a clear error of law or fact or to prevent manifest injustice." *St. Louis v. Morris*, 2006 U.S. Dist. LEXIS 69108, at *2 (D. Del. Sept. 22, 2006); *see also Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *In re Winstar Commc'ns, Inc.*, 435 B.R. 33, 39 (Bankr. D. Del. 2010); *Planet Hollywood*, 274 B.R. at 399.

14. Mere dissatisfaction with an earlier ruling is insufficient to warrant reconsideration. However, a court must keep an open mind in considering reconsideration and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear legal error. *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd sub nom.*, *United States v. Carper*, 22 F.3d 303 (3d Cir. 1994). Reconsideration is considered particularly appropriate where the court has overlooked facts or precedent which, had they properly been considered, could reasonably have altered the result. *Karr*, 768 F. Supp. at 1093; *see also Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 398-99 (E.D. Pa. 2002).

## II. The Confirmation Opinion Incorrectly Limited The Scope Of The Subordination Of The PHONES

### A. The Plain, Unambiguous PHONES Indenture Provides For Complete Subordination To All Payments Without Reference To The Source Of Funds

15. The PHONES Indenture clearly and unambiguously provides – based upon a straightforward reading of the PHONES Indenture and the several relevant provisions *in their entirety* – that the PHONES are subordinate to the holders of "Senior Indebtedness" with respect to all payments from the Post-Confirmation Trusts. PHONES Indenture, §§1.01, 5.01, 14.02, 14.03, 14.04, 14.06.

8

16. Pursuant to Illinois law, which governs the PHONES Indenture, "the cardinal rule of contract interpretation is to discern the parties' intent from the contract language. Where the contract language is unambiguous, it should be given its plain and ordinary meaning." *Buenz v. Frontline Transp. Co.*, 227 Ill.2d 302, 308, 882 N.E.2d 525, 528-529 (Ill. 2008) (citation omitted); *Thompson v. Gordon*, 241 Ill.2d 428, 441, 948 N.E.2d 39, 47 (Ill. 2011) ("If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning."). A "contract must be construed as a whole, viewing each provision in light of the other provisions. The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson*, 241 Ill.2d at 441, 948 N.E.2d at 47 (citing *Gallagher v. Lenart*, 226 Ill.2d 208, 233, 874 N.E.2d 43 (Ill. 2007)); *Gallagher*, 226 Ill.2d at 233. Viewing a contract as a whole, a court should not "interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson*, 241 Ill.2d at 442 (*citing Fid. Nat'l Title Ins. Co. of New York v. Westhaven Props. P'ship*, 386 Ill. App.3d 201, 214, 898 N.E.2d 1051, 325 Ill. Dec. 772 (2007)). And such interpretation must avoid a result that is illogical and contrary to market expectations. *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App.3d 81, 92 (Ill. App. Ct. 1st Dist. 2009) (stating that courts must construe contracts "in accordance with the ordinary expectations of reasonable people" and "reasonably to avoid absurd results." (*citing Carey v. Richards Bldg. Supply Co.*, 367 Ill. App.3d 724 (Ill. App. Ct. 2d Dist. 2006) and *Health Professionals, Ltd. v. Johnson*, 339 Ill. App.3d 1021, 1036, 791 N.E.2d 1179, 274 Ill. Dec. 768 (2003)); *see also Chemical Bank v. First Trust, N.A. (In re Southeast Banking Corp.)*, 93 N.Y.2d 178, 184 (N.Y. 1999) (in construing a subordination provision, relying on "commercial and legal policies" to

determine the relevance of the rule of explicitness); *Madison Avenue Leasehold, LLC v Madison Bentley Associates, LLC*, 30 AD3d 1, 6, 811 N.Y.S.2d 47 (N.Y. App. Div. 1st Dept. 2006) (noting that "[a] consideration in interpreting a commercial contract is the business purpose to be served by the contract.").

17. The PHONES Trustee presented the Court with only a portion of § 14.02 of the PHONES Indenture. It appears from the Confirmation Opinion that, on this basis, the Court found that recoveries from the Avoidance Claims "do not fall within the PHONES' provision which subordinates payments from a distribution of assets of the *Company*." Confirmation Opinion, 113 n.84 (emphasis in original). However, in considering § 14.02, it appears that the Court may have focused solely on the introductory clause of this section, "[u]pon any distribution of assets of the Company in the event of . . ." (*See* Opinion at 112) and treated it as a "modifying" phrase rather than correctly treating it as the condition precedent or "triggering event" of an "if/then" clause that it is. As a modifier, the Court read the clause as a substantive limit on the payments to which the PHONES are subordinated. Read in full, however, it becomes plain that this phrase is a mere triggering or enabling clause that is meant to act as part of a condition precedent to the application of the substantive subordination provisions that follow. Thus, *if* assets of the Debtors are distributed in a bankruptcy proceeding (as they are) "*then* and in such event":

> the holders of *Senior Indebtedness shall be entitled to receive payment in full of all amounts* due or to become due on or in respect of all Senior Indebtedness, or provision shall be made for such payment in cash, *before the Holders of the [PHONES] are entitled to receive any payment* on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series.

PHONES Indenture, § 14.02(A) (emphasis added). There is no ambiguity. It is a simple "if/then" provision that requires full payment to the Senior Noteholders before the PHONES

receive anything. There is no limitation as to the source of such payments.

### B. The "Rule Of The Last Antecedent" Demonstrates Complete Subordination Without Reference To The Source Of Funding

18. The well-recognized "rule of the last antecedent" in contract construction provides that the term "payment" is not qualified by the phrase, "of assets of the Company" in PHONES Indenture §14.02(3)(B):

> [A]ny payment or distribution *of assets of the Company* of any kind or character . . . to which the Holders or the Trustees would be entitled but for the provisions of this Article Fourteen . . ., shall be paid by the liquidating trustee or agent or other Person making such payment or distribution . . . directly to the holders of the Senior Indebtedness. . . . (emphasis added)

19. In accordance with the rule of the last antecedent, which the United States Supreme Court consistently has enforced, the emphasized phrase "of assets of the Company" modifies only the word "distribution," and not the word "payment." *See Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380 (2003) (reversing the Third Circuit Court of Appeals; "a limiting clause or phrase . . . should ordinarily be read as modifying *only the noun or phrase that it immediately follows*.") (emphasis added); *Federal Trade Commission v. Mandel Bros. Inc.*, 359 U.S. 385, 79 S. Ct. 818 (1959) (reversing the Third Circuit Court of Appeals; a limiting clause applies *only* to the last antecedent). The term "payment" is not modified by the phrase "of assets of the Company." Thus read, § 14.02(3)(B) is consistent with, rather than in conflict with, clause (A).[4]

20. Recently, the District Court for the Southern District of New York applied the "rule of the last antecedent" in reversing the Bankruptcy Court's restriction of the scope of a subordination provision. *See JPMorgan Chase Bank N.A. v. The Baupost Group*, 380 B.R. 307

---

[4] Consistent with this rule of construction, when "the modifier is intended to relate to more than the last antecedent, a comma is used to set off the modifier from the entire series." *T.I. McCormack Trucking Co. v. United States*, 251 F. Supp. 526, 533 (D.N.J. 1996). No comma is present here to justify a departure from the rule of the last antecedent.

(S.D.N.Y. 2008). In that case, the indenture defined "Senior Indebtedness" to include "all indebtedness of [Enron] . . . evidenced by notes, debentures, bonds, or other securities sold by [Enron] for money borrowed." *Id.* at 319. The Bankruptcy Court held that the phrase "sold by [Enron] for money borrowed" modified the term "notes" though "notes" was not the last antecedent. The District Court reversed, holding that under the "rule of the last antecedent," the phrase "sold by [Enron] for money borrowed" modified only the immediately preceding term — "securities" — and not the earlier term — "notes." *Id.* at 319 ("The rule provides that where no contrary intention appears, a limiting phrase . . . should ordinarily be read as modifying only the noun or phrase that immediately follows.") *Id.* at 319. Here, not only is there no "contrary intention" demonstrated, but, as indicated above, the application of the "rule of the last antecedent" results in an interpretation of §14.02(3)(B) that is consistent with — rather than in conflict with — clause §14.02(3)(A).

### C. Other PHONES Indenture Provisions Demonstrate Complete Subordination Without Reference To The Source Of Funding

21. The Court also failed to take into account other provisions of the PHONES Indenture that unequivocally demonstrate the parties' intent to subordinate the PHONES in connection with any payment from any source. For example, §14.03 of the PHONES Indenture provides:

> In the event that any [PHONES] are declared due and payable before their maturity in accordance with Section 5.02 because of an Event of Default, *then and in such event the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness or provision shall be made for such payment in cash, before the Holders of the [PHONES] are entitled to receive any payment* . . . by the Company on account of the principal of (or premium, if any) or interest or other amounts on [the PHONES.] (emphasis added)

Like §14.02(3)(A), this provision is unqualified. Similarly, §14.04 of the Indenture provides:

12

> In the event and during the continuation of any default by the Company in the payment of principal (and premium, if any) interest or any other payment due on any Senior Indebtedness of the company, as the case may be, beyond any applicable grace period with respect thereto, or in the event that the maturity of any Senior Indebtedness of the company has been accelerated because of a default, *then, in any such case, no payment shall be made by the Company with respect to the principal (including redemption or exchange payments, if any) of, premium, if any, or interest or other amounts on the [PHONES] until such default is cured or waived or ceases to exist or any such acceleration or demand for payment has been rescinded.* (emphasis added)[5]

22. Additionally, §§ 5.01, 14.03 make clear that subordination is absolute irrespective of whether the Debtors distribute assets of the Company or the bankruptcy estate, if there is any difference for these purposes (and there is not, *see infra* §III.). Pursuant to §§5.01 and 14.03, upon the occurrence of an *event of default* (*i.e.* bankruptcy, default in performance of the Indenture, *etc.*), then

> the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness . . . before the Holders of the [PHONES] are entitled to receive any payment . . . by the Company . . . .

PHONES Indenture, §14.03. Because an event of default exists, the Senior Indebtedness must be paid in full from payments made from Avoidance Claims recoveries before any payment is made on the PHONES. And the same is found in PHONES Indenture §14.04 which provides upon an event of default with respect to the Senior Indebtedness "no payment shall be made by the Company with respect to the principal . . . or interest or other amounts on the [PHONES] until such default is cured or waived or ceases to exist or any such acceleration or demand for payment has been rescinded." PHONES Indenture, §14.04.

### D. Extrinsic Evidence Demonstrates Complete Subordination Without Reference To The Source Of Funding

23. Even if, notwithstanding the plain language of the PHONES Indenture, the Court

---

[5] Of course An "Event of Default" (as defined by section 5.01) currently exists under the Senior Indentures.

were to conclude that subordination provisions are ambiguous, extrinsic evidence, such as the prospectus for the PHONES (the "<u>PHONES Prospectus</u>"), makes clear that the PHONES subordination is absolute. *Gallagher v. Lenart*, 226 Ill.2d 208, 232 (2007) ("The goal of contract interpretation is to give effect to the parties' intent."); *Thomas D. Philipsborn Irrevocable Ins. Trust v. Avon Capital, LLC*, 2011 U.S. Dist. LEXIS 125416 (N.D. Ill. Oct. 31, 2011) (While the language of the contract, given its ordinary meaning and read in context, is the best evidence of that intent, Illinois courts will look to extrinsic evidence "to clarify an ambiguous or incomplete contract."). The PHONES Prospectus specifically provides that "no payment on the PHONES may be made if: . . . any senior indebtedness is not paid when due, any applicable grace period with respect to any default for non-payment has ended and that default has not been cured or waived or ceased to exist." PHONES Prospectus at 11. Additionally, the PHONES Prospectus provides that "[o]n any distribution of our assets to creditors upon . . . bankruptcy, insolvency, receivership, reorganization or other similar proceeding, all principal of, premium, if any, interest and any other amount due or to become due on, all senior indebtedness must be paid in full before the holders of the PHONES are entitled to receive or retain any payment." *Id.* Again, this is not a limitation on the source of funds, but, rather, an if/then condition precedent clause as set forth in the PHONES Indenture itself.

### E. Payments From The Litigation Trust Are Distributions Of Company Assets For Purposes Of The PHONES Indenture

24. Alternatively, if, notwithstanding the PHONE Indenture's plain language, the Court reads the PHONES Indenture to limit in some manner subordination by source of payments to "Company assets", the Court should view Avoidance Claims recoveries as Company assets for the purposes of this provision of the PHONES Indenture.

25. The Debtors' bankruptcy estate is best viewed as the successor to the Debtors.

14

And the Litigation Trust, constituted pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, is intended to enforce the Preserved Causes of Action of the Debtors' estates, is best viewed as the successor in interest to Tribune as to such claims. Accordingly, when PHONES Indenture §§ 1.01 (which defines "Company" to include any "successor corporation") and 14.02 (complete subordination) are read together, it is clear that the subordination under § 14.02 applies not only to the assets of the Company but to those of the bankruptcy estate and of the Litigation Trust as well. Similarly, the obligation of the Company not to make any payments on account of the PHONES in § 14.04 is binding upon the Company's "successors and assigns."

26. Recovered fraudulently transferred assets are best viewed as "assets of the Company" when considering the import of state fraudulent conveyance law. The transfer will be disregarded as to aggrieved creditors, and the asset will be treated as an asset of the debtor/transferor that must be applied to the payment of the debtor's debt to the aggrieved creditors. Put another way, a creditor may levy upon the property as if it were owned by the debtor. Thus, regardless of whether a debtor itself has a cause of action to recover assets fraudulently conveyed, the result of a successful fraudulent conveyance challenge to an asset transfer is that the transferred asset is treated as an asset of the debtor/transferor for the purpose of satisfying creditor claims. That is the essence of "avoiding" or "setting aside" a fraudulent transfer.

27. In sum, the intent of the parties is explicitly provided in the plain, unambiguous terms of the PHONES Indenture. There is nothing in the PHONES Indenture that distinguishes between (i) payments made from cash held and retained by the debtor and (ii) payments made from cash held by the debtor, fraudulently conveyed, recovered, and paid to creditors. If the Court believes that it need look outside the contract, the conclusion of absolute subordination is

15

buttressed by the PHONES Prospectus and the purpose of fraudulent conveyance law. The Court's failure to enforce the plain meaning of the entirety of the Indenture and interpretation of the phrase of "assets of the Company" too narrowly, has resulted in a clear error of the law and manifest injustice requiring reconsideration.

**III.   Here, There Exists No Relevant Distinction
Between Assets Of The Debtor And Assets Of The Estate**

28.     The Third Circuit Court of Appeals' decision in *Off'l Comm. Of Unsecured Creditors of Cybergenics Corp. v. Scott Chinery (In re Cybergenics Corp.)*, 226 F.2d 237 (3d Cir. 2000), does not support any limitation on the subordination of the PHONES. Whether the Avoidance *Claims* themselves constitute property of the debtor or property of the estate, which was the issue in *Cybergenics* relating to a section 363 sale, is not at issue. Footnote 15 of *Cybergenics* stated that "property of the estate" has a distinct meaning from "property of the debtor." The Third Circuit Court of Appeals held that the section 544(b) fraudulent transfer claims at issue there were state law *claims* that belonged to the creditors prior to the commencement of the bankruptcy case and concluded that such *claims* were not "assets . . . of *Cybergenics* [the debtor]" within the meaning of the sale agreement and sale order. *Id.* at 245. Focusing on avoidance claims rather than the proceeds from the successful prosecution of such claims, *Cybergenics* does not answer the question here. In fact, there is nothing in *Cybergenics* that suggests that, if the avoidance claims had been prosecuted successfully prior to the sale, resulting in cash proceeds, then a sale of all assets of the debtors would still exclude such cash proceeds.

29.     The Bankruptcy Code may distinguish assets of the debtor from assets of the estate in certain situations. Here, however, that distinction simply is immaterial. Unlike *Cybergenics*, here the issue is whether the Debtors' fraudulently conveyed property once

16

recovered is treated an "asset of the Company" — which it surely was before it was fraudulently transferred — for purposes of the PHONES Indenture. The answer must be yes; if the Debtor's fraudulently transfers assets are subsequently recovered, the recovered assets or their money's worth remain Debtor property. The United States Supreme Court agrees.

30. The United States Supreme Court has explained, in the context of Chapter 5 preference avoidance, that although "property of the debtor" is not defined by the Bankruptcy Code, it "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990). For this reason avoidance actions pursuant to Chapter 5 of the Bankruptcy Code have the express purpose of recovering these *debtor* assets. *See* 11 U.S.C. § 544(b) (providing that "the trustee may avoid any transfer of an *interest of the debtor in property*.") (emphasis added); 11 U.S.C. § 547(b) (providing that "the trustee may avoid any transfer of an *interest of the debtor in property* . . . .") (emphasis added); 11 U.S.C. § 548(a)(1) (providing that the trustee may avoid any transfer "of an *interest of the debtor in property* . . . .") (emphasis added). Thus, if and to the extent the Debtors recover fraudulent transfers, those are recoveries of the Debtors' property.

31. Here, the recoveries obtained from the Avoidance Claims pursued by the Post-Confirmation Trusts are assets that, prior to their transfer, were the Debtor's property. Accordingly, under the United States Supreme Court's definitional construct, application of the Bankruptcy Code, and common understanding, fraudulently conveyed Debtors property that is recovered (or its money's worth) continues to constitute the Debtor's property.

## **NOTICE**

32. Notice of the Motion has been provided to: (a) the Office of the United States

Trustee; (b) counsel to the Debtors; (c) counsel to the Creditors' Committee; (d) counsel to the administrative agent for the Debtors' post-petition financing facility; and (e) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). In light of the nature of the relief requested herein, Movants submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Movants respectfully request that the Court enter an order, upon reconsideration of the Confirmation Opinion (i) vacating that portion of the Confirmation Opinion providing that "causes of action that the Debtors' estates may assert under Chapter 5 of the Bankruptcy Code are not 'assets of the Company' subject to the PHONES' subordination provision;" (ii) amending the Confirmation Opinion to modify and supplement its conclusions of law to support the DCL Plan's subordinated treatment of the claims held by holders of the PHONES with respect to all payments from the Litigation Trust; and (iii) and granting such other further relief as may be required.

Dated: November 14, 2011
       Wilmington, Delaware

Respectfully submitted,

| | |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | BIFFERATO GENTILOTTI LLC |
| David S. Rosner | ___*/s/ Garvan F. McDaniel*_____ |
| Sheron Korpus | Garvan F. McDaniel (I.D. No. 4167) |
| Christine Montenegro | 800 N. King Street, Plaza Level |
| Matthew B. Stein | Wilmington, Delaware 19801 |
| 1633 Broadway | 302- 429-1900 |
| New York, New York 10019 | |
| 212-506-1700 | |

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

| | |
|---|---|
| McCARTER & ENGLISH, LLP<br>David J. Adler<br>245 Park Avenue<br>New York, NY 10167<br>212-609-6800 | McCARTER & ENGLISH, LLP<br><br>*James J. Freebery*<br>James J. Freebery IV (Bar # 3498)<br>Renaissance Centre<br>405 N. King Street<br>Wilmington, DE 19801<br>302-984-6300 |

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes.*