# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Hearing Date: December 13, 2011 at 1:00 p.m. ET** |
| | ) **Objection Deadline: December 6, 2011 at 4:00 p.m. ET** |

## MOTION OF AURELIUS CAPITAL MANAGEMENT, LP
## FOR RECONSIDERATION OF THE COURT'S
## OCTOBER 31, 2011 DECISION AS IT PERTAINS TO
## THE APPLICATION OF PHONES NOTES SUBORDINATION

Aurelius Capital Management, LP, on behalf of itself and its managed entities (collectively, "Aurelius"),[1] by and through its undersigned counsel, hereby moves, pursuant to Rule 59 of the Federal Rules of Civil Procedure ("FRCP"), made applicable to these chapter 11 cases by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for reconsideration of the Court's October 31, 2011 Opinion on Confirmation [ECF No. 10133] (the "Decision") as it pertains to the application of the subordination provisions contained in the PHONES Indenture[2] to recoveries to holders of Senior Notes and PHONES Notes (the "Motion"). In support of this Motion, Aurelius respectfully represents as follows:

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes. Neither Aurelius nor any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any of its managed entities an insider of Tribune Company or any of its affiliates.

[2] All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Decision.

## PRELIMINARY STATEMENT

1. In the Decision, the Court stated that "[t]he Noteholders[3] and WTC ... argue that the PHONES Notes are entitled to receive distributions from the Litigation Trust and the Creditors' Trust without giving effect to the subordination provision [contained in the PHONES Indenture], because causes of action being pursued in those trusts belong to creditors, not the Debtors." Decision at 111-112. This statement, however, is not correct. The *only* party asserting that the PHONES Notes are not subordinated to the Senior Notes in respect of proceeds of causes of action pursued by the Creditors Trust or Litigation Trust under the DCL Plan was WTC, solely in its capacity as the successor indenture trustee for the PHONES Notes. [ECF Nos. 7996, 9268]. The holders of Senior Notes, in contrast, have always asserted that the PHONES Notes are subordinated to the Senior Notes in respect of all distributions to be made on account of the PHONES Notes, regardless of the source. In fact, the Noteholder Plan, of which WTC was a co-proponent, expressly provided as such with respect to all recoveries emanating from the Litigation Trust under the Noteholder Plan. *See* Noteholder Plan § 3.2.10(c).

2. WTC filed two pleadings in connection with confirmation regarding the applicability of the subordination of the PHONES Notes to potential distributions under the DCL Plan. First, in the *Objection of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES, to the Second Amended Debtor/Committee/Lender Plan* dated February 15, 2011 [ECF No. 7996] (the "<u>WTC Plan Objection</u>"), WTC argued that holders of PHONES Notes should not be required to turn-over to holders of "Senior Indebtedness" proceeds from the claims transferred to the Creditors' Trust under the DCL Plan (consisting of state law constructive fraudulent conveyance claims against Tribune's pre-LBO shareholders), because, pursuant to

---

[3] While the term "Noteholders" has not been defined in the Decision, the term has generally been used to refer, collectively, to the holders of the Senior Notes and the holders of the PHONES Notes or the Noteholder Plan Proponents.

2

Section 14.02 of PHONES Indenture, the PHONES Notes were not subordinated to Senior Indebtedness with respect to such claims.[4] Specifically, WTC argued that Section 14.02 limits the PHONES Notes' subordination to Senior Indebtedness only to "distributions of assets of the Company" and because the Creditors' Trust causes of action were not "assets of the Company," the PHONES Notes were not subordinated to Senior Indebtedness in respect of such claims.[5] WTC Plan Objection at 7-10.

3. This portion of the WTC Plan Objection was resolved through an amendment made to the DCL Plan in April 2011 [ECF No. 8769] (the "April Amendment"). Pursuant to the April Amendment, section 1.1.44 of the DCL Plan, entitled "Class 1J Creditors' Trust Interests"[6] was amended to provide that "until (a) Holders of Allowed Senior Noteholder Claims, and (b) the Holders of any other Allowed Claims that are entitled to share in the Parent GUC Trust Preference, *if in each case such Holders are entitled to the benefit the contractual subordination of the PHONES Notes with respect to such distribution made in respect of the Class 1J Creditors' Trust Interests*, receive payment in full of the Allowed amount of such Holders' Claims plus, to the extent permissible under applicable law and required by the contractual subordination of the PHONES Notes, accrued Post-petition interest thereon, all distributions that would other be made in respect of the Class I J Creditors' Trust Interests shall be turned over to such Holders." April Amendment at 7-8 (emphasis added). Indeed, as stated on the record at the Confirmation Hearing, the inclusion of the italicized language above resolved the WTC Objection on this point and had the effect of adjourning to a later date the determination of who, if anyone, the PHONES

---

[4] The PHONES Indenture is NPP Exhibit 963. For the Court's convenience, the relevant pages are attached hereto as Exhibit A.

[5] Interestingly, the WTC Plan Objection did not assert that the subordination provision of the PHONES Notes limited the PHONES Notes' obligation to turn-over any payments made thereon from the Litigation Trust to holders of Senior Indebtedness.

[6] Class 1J Creditors' Trust Interests are the Creditors' Trust interests distributed to the holders of PHONES Notes.

3

Notes were subordinate with respect to the proceeds of Creditors' Trust causes of action. *See* 4/13/11 Hr'g. Tr. 178:13-18 (Johnston). In the Decision, the Court expressed the mistaken view that the effect of such DCL Plan amendment was to "provide that distributions from the Creditors' Trust are not subject to the PHONES subordination." Decision at 112. In fact, it is just the opposite. The effect of the April Amendment was to preserve the issue of the applicability of the PHONES subordination provisions to Creditors' Trust recoveries for future litigation, to the extent necessary.

4. The second pleading WTC filed in connection with confirmation regarding the applicability of the subordination of the PHONES Indenture to potential distributions under the DCL Plan was the *Post-Confirmation Hearing Brief of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES* dated May 11, 2011 [ECF No. 9268] (the "WTC Post-Trial Brief"). In the WTC Post-Trial Brief, WTC raised for the first time in a filed pleading WTC's view that the PHONES Notes were not subordinate to Senior Indebtedness in respect of distributions from the **Litigation Trust** under the DCL Plan that were derived from proceeds of chapter 5 causes of action.[7] As with respect to the Creditors' Trust causes of action, WTC argued that Section 14.02 of the PHONES Indenture limits the PHONES Notes' subordination to Senior Indebtedness only to "distributions of assets of the Company" and because, the Third Circuit held *In re Cybergenics Corp.*, 226 F.3d 237, 246 n.15 (3d Cir. 2000), that chapter 5 causes of action are not "property of the debtor," Litigation Trust proceeds in respect thereof were not "assets of the Company" upon which the PHONES Notes were subordinated to Senior Indebtedness. WTC Post-Trial Brief at 7-9.

---

[7] WTC did attempt to raise this issue for the first time at the Confirmation Hearing on April 13, 2011, but having not briefed the question as to whether subordination applied to the proceeds of the Litigation Trust in the WTC Plan Objection, the matter could not be fully addressed during oral argument. 4/13/11 Hr'g. Tr. 164:22-180:24 (Stark and Johnston).

5. Relying on WTC's assertions respecting the subordination provision in the PHONES Indenture and the Third Circuit's holding in *Cybergenics*, this Court held in the Decision that the PHONES Notes' subordination does not apply to proceeds of Litigation Trust causes of action that are pursued under chapter 5 of the Bankruptcy Code. Decision at 111-113. Aurelius respectfully submits that the Court's holding was clearly erroneous and, thus, is ripe for reconsideration under applicable law.

6. The foundation for this error is based upon WTC's failure to provide the Court with a complete analysis of the PHONES Notes' subordination provision, which clearly provides that the PHONES Notes are subordinated to payment in full of all Senior Indebtedness, in all respects, regardless of the source of payment or the form of property distributed.

7. In its pleadings, WTC represented to this Court that the PHONES Notes are subordinated to Senior Indebtedness only in respect of "distributions of the assets of the Company." WTC Plan Objection at 8-10; WTC Post-Trial Brief at 7-9. This statement is wrong. Indeed, in both the WTC Plan Objection and WTC Post-Trial Brief, WTC selectively cherry-picked language from Section 14.02(1)(B) of the PHONES Indenture to give the Court the false impression that the subordination provision is of limited extent. WTC failed to advise the Court of Section 14.02(1)(A) of the PHONES Indenture or the entire text of Section 14.02(1)(B), each of which clearly provides that Senior Indebtedness is to be paid in full, regardless of the source, before the PHONES Notes are entitled to receive and retain property.

8. Section 14.02(A) of the PHONES Indenture (the section WTC omitted entirely from its pleadings) expressly provides that upon any bankruptcy filing of Tribune and in the event that assets of Tribune are distributed, "the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior

Indebtedness, or provision shall be made for such payment in cash, before the Holders of the Securities of any series are entitled to receive any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series." There is no limitation in Section 14.02 as to the type of payment or distribution subject to the PHONES Notes subordination obligations. Rather, the language is clear and unambiguous in providing that the holders of Senior Indebtedness are entitled to receive payment in full on their claims before any payment on account of principal or interest is made on the PHONES Notes.

9. Contrary to WTC's position, Section 14.02(B), when considered as a whole, is consistent with Section 14.02(A). Section 14.02(B) provides in full that:

> *any payment* or distribution of assets of the Company of any kind or character, whether in cash, property or securities, by set-off or otherwise, to which the Holders or the Trustee would be entitled but for the provisions of this Article Fourteen, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, ***shall be paid by the liquidating trustee or agent or other Person making such payment or distribution***, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, ***directly to the holders of Senior Indebtedness or their representative or representatives or to the trustee or trustees under any indenture under which any instruments evidencing any of such Senior Indebtedness may have been issued***, ratably according to the aggregate amounts remaining unpaid on account of the principal of (and premium, if any) and interest on the Senior Indebtedness held or represented by each, ***to the extent necessary to make payment in full of all Senior Indebtedness*** remaining unpaid, after giving effect to any concurrent payment of distribution to the holders of such Senior Indebtedness or provision therefor.

PHONES Indenture § 14.02(B) (emphasis added). As evidenced by the full citation from Section 14.02(B), the PHONES Notes are subordinated not only to any distribution of assets of the Company of any kind or character, but also any payment from any source. *Id.* Any other

interpretation of the subordination provisions (i.e., the interpretation posited by WTC) would, as discussed below, lead to illogical and inequitable results.

10. WTC's misleading analysis of Section 14.02(B) and failure to reference Section 14.02(A) has led this Court to an incorrect ruling on the extent of the PHONES Notes subordination to Senior Indebtedness incorrect. Accordingly, for the foregoing reasons and as otherwise set forth below, Aurelius respectfully requests that the Court reconsider its holding in the Decision regarding the extent to which the PHONES Notes are subordinate to the Senior Notes.[8]

## JURISDICTION AND VENUE

11. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The rule predicates for the relief requested herein are FRCP 59 and Bankruptcy Rule 9023.

## BACKGROUND

13. On December 8, 2008 the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14. On February 15, 2011, WTC filed the WTC Plan Objection.

15. In March and April of 2011, the Court conducted a thirteen-day hearing to consider confirmation of the Noteholder Plan and the DCL Plan, during which the Court, among other things, heard testimony from over twenty witnesses and oral argument from counsel to the

---

[8] While this Motion is limited to issue described above, Aurelius respectfully disagrees with the Decision in several other respects and, together with the other Noteholder Plan Proponents, have filed a Notice of Appeal concurrently with this Motion.

7

DCL Plan Proponents and the Noteholder Plan Proponents. On June 27, 2011, the Court heard closing arguments.

16. On May 11, 2011, WTC filed the WTC Post-Trial Brief.

17. On October 31, 2011, the Court issued the Decision and an order [ECF No. 10135] (the "<u>Order</u>") denying confirmation of both the DCL Plan and the Noteholder Plan.

## RELIEF REQUESTED

18. By this Motion, Aurelius seeks, pursuant to FRCP 59 made applicable to these cases by Bankruptcy Rule 9023, reconsideration of the Decision as it pertains to the application of the subordination provisions in the PHONES Indenture to recoveries to holders of Senior Notes and PHONES Notes.

## BASIS FOR RELIEF

### I. <u>Legal Standard for Reconsideration</u>

19. FRCP 59(e), made applicable here pursuant to Bankruptcy Rule 9023, allows parties to file motions for reconsideration or amendment of judgment. *See in re Vision Metals, Inc.*, 327 B.R. 719, 721 (Bankr. D. Del. 2005) ("A motion for reconsideration ... generally fall[s] within the parameters of Rule 59(e) ...."). The Court of Appeals for the Third Circuit has recognized that motions for reconsideration should be granted where: (i) new evidence becomes available; (ii) a supervening new law has been announced; or (iii) there is a need to correct an earlier decision that was "clearly erroneous and would create manifest injustice." *See In re Winstar Commc'ns, Inc.*, 435 B.R. 33, 39 (Bankr. D. Del. 2010) (citing *Public Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)); *see also In re W.R. Grace & Co.*, 398 B.R. 368, 372 (D. Del. 2008) (quoting *Max's Seafood Cafe by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

20. The standards governing a motion for reconsideration seek to balance the importance of finality in judicial decisions with a recognition that courts sometimes err. *Karr v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991), *aff'd*, 22 F.3d 303 (3d Cir. 1994) (citing *Brambles U.S.A., Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del 1990)). Indeed, "[w]hile finality of judgments is an important consideration, the goal of finality must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Karr v. Castle*, 768 F. Supp. at 1093 (internal citations omitted). Accordingly, while parties should not use a motion for reconsideration as an opportunity to merely relitigate issues that have already been decided, a court should reconsider a prior decision when it appears that the court has overlooked a legal or factual matter "that might reasonably be expected to alter the conclusion reached by the court." *Caylon New York Branch v. Am. Home Mortgage Corp.*, 383 B.R. 585, 589-90 (Bankr D. Del 2008); *see also In re Liquidating Trust of Resmae Mortgage Corp.*, No. 07-10177 WL 4224409 at *3 n.6 (Bankr. D. Del. 2007). Aurelius respectfully submits that reconsideration of the Decision as it pertains to application of the subordination provisions in the PHONES Indenture to the proceeds of chapter 5 causes of action is warranted for the reasons set forth below.

## II. The Court's Analysis with Respect to Application of the PHONES Indenture Subordination Provisions to Litigation Trust Interest Recoveries Merits Reconsideration[9]

21. In the WTC Post-Trial Brief, WTC argued, among other things, that the DCL Plan misapplied the subordination provisions contained in the PHONES Indenture with respect to recoveries from chapter 5 causes of action to be obtained from the Litigation Trust established

---

[9] Although this Motion focuses on application of the PHONES Indenture subordination provisions to recoveries from the Litigation Trust, the arguments set forth herein are equally applicable to recoveries received from the Creditors' Trust. Indeed, as noted above, the April Amendment to the DCL Plan expressly preserved the issue for future litigation, to the extent necessary.

9

under the DCL Plan. WTC's analysis focused on the fact that the causes of action to be pursued by the Litigation Trust (as successor to the Committee) arising under chapter 5 of the Bankruptcy Code are not causes of action "that belonged to the Debtors pre-petition." Rather, they are "claims that belonged to creditors pre-petition." WTC Post-Trial Brief at 7; see also *In re Cybergenics Corp.*, 226 at 245. WTC argued that the foregoing distinction is especially relevant in these cases based on WTC's view that while the PHONES Notes are subordinated to payment in full of "Senior Indebtedness" and are thus required to turn-over recoveries to the holders of such debt, such turnover obligations are limited. *Id.*

22. Specifically, WTC posited that "[u]nder PHONES Indenture Section 14.02, holders of the PHONES are obligated to turn over to Senior Indebtedness, only 'distributions of assets of *the Company*'" and, under the Third Circuit's holding in *In re Cybergenics*, the holders of PHONES Notes "are not contractually subordinated respecting – and thus are not obligated to turn over – distributions from non-Debtor third parties, made on account of money judgments arising under fraudulent conveyance statutes." *Id.* at 8 (emphasis in WTC Post-Trial Brief); *In re Cybergenics*, 226 F.2d at 243 (holding that a chapter 11 debtor in possession does not acquire its creditors' fraudulent transfer claims against third parties as a result of filing for bankruptcy). Accordingly, WTC claimed that, because the chapter 5 causes of action are not assets of the Company, under the applicable provisions of the PHONES Indenture, holders of PHONES Notes are not obligated to turn over to holders of Senior Notes distributions that holders of PHONES Notes would have received from the Litigation Trust because such distributions would not have

been "distributions of assets *of the Company*." *See* WTC Post-Trail Brief at 8 (quoting PHONES Indenture § 14.02).[10]

23. In the Decision, the Court accepted WTC's argument. Specifically, the Court held that "[p]ursuant to *Cybergenics*, causes of action that the *Debtors'* estate may assert under Chapter 5 of the Bankruptcy Code are not "assets of the Company" subject to the PHONES Notes' subordination provision."[11] Decision at 112-113. The Court's ruling—guided by WTC's improper analysis of Section 14.02—is not correct. Unfortunately, the Court may also have been informed by the mistaken belief, referenced earlier, that (a) the Senior Notes had joined with WTC in arguing for this interpretation and (b) the DCL Plan had already been amended to provide that the subordination provisions would not apply to Creditors' Trust recoveries. Proper application of the subordination provisions in the PHONES Indenture as it pertains to Litigation Trust recoveries, however, requires a far more comprehensive analysis of Section 14.02 than was contained in the WTC Post-Trial Brief and upon which this Court relied.

24. Despite WTC's limited quotation from Section 14.02 of the PHONES Indenture, the provision is quite expansive. Indeed, Section 14.02, which is entitled "Payment Over of Proceeds Upon Dissolution, Etc.", is not just the six words recited by WTC, but is a two page long provision that provides, in relevant part, as follows:

> Upon any distribution of assets of the Company in the event of

---

[10] "Company" is defined in the PHONES Indenture as Tribune Company, a corporation duly organized and existing under the laws of the State of Delaware, ... having its principal office at 435 North Michigan Avenue, Chicago, Illinois 60611.

[11] It should be noted that *Cybergenics* only analyzed whether fraudulent transfer actions under Bankruptcy Code section 544 were property of the company so as to be included in a postpetition sale of all assets of Cybergenics. The *Cybergenics* decision explicitly did not address any of the following: (i) whether the Third Circuit's analysis would have differed had it been considering fraudulent transfer actions under Bankruptcy Code section 548 (*see In re Cybergenics*, 226 F.2d at 243); (ii) whether the proceeds of fraudulent transfer actions themselves constitute (or should for certain purposes be deemed to constitute) property of the company; or (iii) whether contractually subordinated creditors are exempt from subordination provisions as they relate to proceeds of fraudulent transfer actions.

(1) any insolvency or bankruptcy case or proceeding, or any receivership, liquidation, reorganization or other similar case or proceeding in connection therewith, relative to the Company or to its creditors, as such, or to its assets; [...] then and in such event

    (A) the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness, or provision shall be made for such payment in cash, before the Holders of the Securities of any series are entitled to receive any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series; and

    (B) any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, by set-off or otherwise, to which the Holders or the Trustee would be entitled but for the provisions of this Article Fourteen, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, shall be paid by the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, directly to the holders of Senior Indebtedness or their representative or representatives or to the trustee or trustees under any indenture under which any instruments evidencing any of such Senior Indebtedness may have been issued, ratably according to the aggregate amounts remaining unpaid on account of the principal of (and premium, if any) and interest on the Senior Indebtedness held or represented by each, to the extent necessary to make payment in full of all Senior Indebtedness remaining unpaid, after giving effect to any concurrent payment of distribution to the holders of such Senior Indebtedness or provision therefor.

In the event that, notwithstanding the foregoing provisions of this Section 14.02, the Trustee or the Holder of any Security of any series shall receive any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, before all Senior Indebtedness is paid in full or payment thereof provided for, and if such fact shall then have been made known to the Trustee as provided in Section 14.10, or, as the case may be, such Holder, then and in such event such payment or distribution shall be paid over or delivered forthwith to

12

> the trustee in bankruptcy, receiver, liquidating trustee, custodian, assignee, agent or other person making payment or distribution of assets of the Company for application to the payment of all Senior Indebtedness remaining unpaid, to the extent necessary to pay all Senior Indebtedness in full, after giving effect to any concurrent payment or distribution to or for the holders of Senior Indebtedness.

PHONES Indenture § 14.02.

25. Contrary to WTC's position, Section 14.02 of the PHONES Indenture requires Holders of the PHONES Notes to turn over payments received on account of principal and interest outstanding under the PHONES Notes to holders of "Senior Indebtedness" until such holders of Senior Indebtedness are paid in full, without qualification, which is consistent in all respects with the purpose of subordination provisions in a subordinated note indenture and applicable law. See, e.g. *In re Dura Auto. Sys., Inc.*, 379 B.R. 257 (Bankr. D. Del. 2007) (noting in the context of analyzing the X-clause in a subordinated indenture that "the purposes of subordination provisions . . . is to assure payment in full of the Senior Notes before there is any recovery on the Subordinated Notes"); 11 U.S.C. § 510(a) ("A subordination agreement in enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").

26. The analysis of Section 14.02 has multiple steps. First, Section 14.02 is triggered "[u]pon any distribution of assets of the Company in the event of... any insolvency case or bankruptcy case." PHONES Indenture § 14.02(1). Thus, for Section 14.02 to apply, Tribune must have commenced an insolvency case or a bankruptcy case <u>and</u> there must be a distribution of Tribune's assets. Section 14.02 will clearly be triggered here: (i) Tribune filed for chapter 11 and (ii) any plan confirmed in these cases will indisputably provide for the distribution of Tribune's assets (i.e., cash, new term loan, and new common stock in reorganized Tribune). WTC did not argue otherwise. This "trigger" language does not, however, limit or otherwise

13

circumscribe the PHONES Notes' subordination obligations, which obligations are (as discussed below) clearly set forth in Section 14.02(1)(A) and (B). Having established that the prerequisites for Section 14.02 to be operative will be satisfied in these cases, the analysis continues to the next step.

27. The second step in the Section 14.02 analysis requires application of 14.02(1)(A) – a section that was completely ignored by WTC and, thus, is not discussed in the Decision. As noted above, Section 14.02(1)(A) provides that "the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness, or provision shall be made for such payment in cash, before the Holders of the Securities of any series are entitled to receive any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series." PHONES Indenture § 14.02(A). In sum, subsection (A) requires the holders of Senior Indebtedness (i.e., the Senior Notes) to be paid in full, or provision to be made for the Senior Notes to be paid in full in cash, before the holders of PHONES Notes receive *any* payment on account of principal and interest. Remarkably, WTC failed to cite, let alone provide any analysis of, subsection (A) in its brief.

28. In addition, WTC's analysis of subsection (B)—the only subsection WTC (partially) addressed—was flawed. WTC led this Court to believe that, pursuant to subsection (B), the only circumstance in which the PHONES Notes were subordinate to the Senior Notes was in connection with the "distribution of assets of the Company." *See* WTC Post-Trial Brief at 8. However, this is not the case. Indeed, as noted above, subsection (B) quite clearly provides that "***any payment or*** any distribution of assets of the Company of any kind or character" payable to the PHONES Notes must instead be paid "directly" to holders of Senior Indebtedness

14

"to the extent necessary to make payment in full of all Senior Indebtedness." PHONES Indenture § 14.02(B) (emphasis added). Thus, subsection (B) delineates two types of consideration that must be paid directly to the holders of Senior Indebtedness until they are paid in full: (i) any payment or (ii) any distribution of assets of the Company of any kind or character. Clearly, "assets of the Company of any kind or character" applies only to the word "distribution" and not to "payment." *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (applying "rule of the last antecedent" and holding that "a limiting clause or phrase...should ordinarily be read as modifying only the noun or phrase that it immediately follows."). Indeed, to twist the language of subsection (B) any other way would render it impossible to give meaning to both subsections (A) and (B), and thus would render the provision as a whole nonsensical. *See e.g. New Castle Cnty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 174 F.3d 338, 349 (3d Cir. 1999) (noting the general proposition that courts should "take[ ] care not to render other portions of a provision or contract superfluous when construing contract language" ).

29. The remaining provisions of Section 14.02 support the conclusion that subsection (B) requires all payments from any source in respect of the PHONES Notes be for the benefit of Senior Indebtedness until such indebtedness is paid in full For example, Section 14.02 goes on to provide that "in the event that, notwithstanding the foregoing provisions of this Section 14.02 [meaning subsections (A) and (B)], the Trustee or the Holder of [PHONES Notes] shall receive *any payment* or distribution of assets of the Company of any kind or character, whether in cash, property or securities, . . ., before all Senior Indebtedness is paid in full or payment thereof provided for, . . . then and in such event such *payment* or distribution shall be paid over or delivered forthwith to the trustee in bankruptcy, receiver, liquidating trustee, custodian, assignee, agent or other person making *payment* or distribution of assets of the Company *for application*

15

*to the payment of all Senior Indebtedness remaining unpaid, to the extent necessary to pay all Senior Indebtedness in full*, after giving effect to any concurrent payment or distribution to or for the holders of Senior Indebtedness. PHONES Indenture § 14.02 (emphasis added). This provision thus provides that to the extent the PHONES Notes Trustee or any holder of PHONES Notes receives any payment from any source in respect of the PHONES Notes before Senior Indebtedness is paid in full, the PHONES Notes Trustee of holder of PHONES Notes must turnover that property to the holders of Senior Indebtedness. Thus, unlike subsections (A) and (B) which provide for direct payments or distributions to the holders of Senior Indebtedness, the added language at the end of Section 14.02 mandates that if a payment or distribution is made directly on the PHONES Notes before Senior Indebtedness is paid in full, such payment or distribution must be turned over to the holders of Senior Indebtedness.

30. The analysis set forth above is further supported by the language contained in the PHONES Notes Prospectus Supplement on Form 424(b)(2) filed with the SEC on April 9, 1999 (the "Prospectus").[12] The Prospectus provides in relevant part as follows:

Subordination

> The PHONES are unsecured and junior in right of payment to all senior indebtedness....This means that *no payment on the PHONES may be made if*:
> - Any senior indebtedness is not paid when due, any applicable grace period with respect to any default for non-payment has ended and that default has not been cured or waived or ceased to exist; or
> - The maturity of any senior indebtedness has been accelerated because of an event of default and that acceleration has not been rescinded.
>
> On any distribution of our assets to creditors upon any dissolution, winding-up or liquidation whether voluntary or involuntary or in bankruptcy, insolvency, receivership, reorganization or other similar proceedings, all principal of, premium, if any, interest and any other amounts due or to become due on, all senior indebtedness must be paid in full before the holders of the PHONES are entitled to receive or retain *any payment*.

---

[12] A copy of the Prospectus is attached hereto as Exhibit B.

Prospectus at S-16, S-17 (emphasis added). The language cited above clearly indicates that it was always intended the PHONES Notes would be subordinate to all senior indebtedness in all respects, and that in the event of a bankruptcy in which there was a distribution of company assets, the PHONES Notes would not be entitled to retain *any payment* before holders of senior indebtedness were paid in full. As with the PHONES Indenture, the Prospectus does not impose an artificial and illogical limitation on the form of payment or currency subject to the subordination obligations, but instead clearly provides that the subordination provisions apply broadly to *"any payment."*

31. To read the PHONES Indenture and Prospectus as limiting application of the subordination provisions solely to "assets of the Company" as opposed to any payment *or* distribution of Company assets would lead to an illogical and inequitable result. Query: Why would holders of senior indebtedness be in a worse position vis-a-vis holders of subordinated indebtedness simply because what was unquestionably an asset of the company (and thus clearly subject to subordination) was fraudulently transferred prior to the company's bankruptcy filing but subsequently recovered postpetition? Indeed, the very purpose of an avoidance action is to restore the fraudulently transferred property to the debtor as if there had been *no conveyance*. *See e.g., Adderton v. Newton (In re Amp'd Mobile, Inc.)*, 404 B.R. 118, 125 at n.7 (Bankr. D. Del. 2009) (remedies in a fraudulent conveyance action are designed to reach "the property which would have been available to satisfy the [debtor's obligations] had there been no conveyance, and requiring that it be restored to the debtor's possession.") (citations omitted). In this case, restoring the fraudulently conveyed property to the Debtors' possession—i.e., undoing the transaction such that the property was never fraudulently conveyed in the first place—should render the recovered property subject to the PHONES Indenture subordination provisions just as

it was prior to the fraudulent conveyance. *See Begier v. IRS*, 496 U.S. 53, 58 (1990) (stating that"[b]ecause the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate-the property available for distribution to creditors-"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.").

32. Based on the foregoing, the Court's analysis of the PHONES subordination provisions (predicated, as it was, on the flawed factual analysis advanced by WTC) resulted in clear errors in the findings of fact and conclusions of law in the Decision, which, if not corrected, will work a manifest injustice on the holders of Senior Notes who are properly entitled to payment of their claims in full before any value is retained by holders of PHONES Notes. The Motion should therefore be granted, and the Decision amended to address the errors identified herein.

## NO PRIOR REQUEST

33. Aurelius has not previously sought the relief requested herein from this Court or any other court.

## NOTICE

34. Notice of the Motion has been provided to: (a) the Office of the United States Trustee; (b) counsel to the Debtors; (c) counsel to the Creditors' Committee; (d) counsel to the administrative agent for the Debtors' postpetition financing facility; (e) counsel to WTC and (f) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). In light of the nature of the relief requested herein, Aurelius submits that no other or further notice is necessary.

# CONCLUSION

**WHEREFORE**, for the foregoing reasons, Aurelius respectfully requests that the Court: (i) enter an order substantially in the form attached hereto as <u>Exhibit C</u> (a) reconsidering its Decision as it pertains to the application of the subordination provisions contained in the PHONES Indenture to recoveries to holders of Senior Notes and PHONES Notes and (b) determining that the PHONES Notes are subordinated to the Senior Notes in all respects from all sources, including as to the Litigation Trust and proceeds of avoidance actions; and (ii) grant Aurelius such other and further relief as is just, proper and equitable.

Dated: November 14, 2011
       Wilmington, Delaware

| | |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD LLP<br>Daniel H. Golden<br>David M. Zensky<br>Philip C. Dublin<br>One Bryant Park<br>New York, NY 10036<br>(212) 872-1000<br><br>*Counsel for Aurelius Capital Management, LP* | ASHBY & GEDDES, P.A.<br><br>*/s/ William P. Bowden*<br>William P. Bowden (I.D. No. 2553)<br>Amanda M. Winfree (I.D. No. 4615)<br>Leigh-Anne M. Raport (I.D. No. 5055)<br>500 Delaware Avenue, P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888 |