## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>               Debtors. | ) Chapter 11<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>) **Hearing Date: December 13, 2011 at 1:00 p.m. ET**<br>) **Objection Deadline:  December 6, 2011 at 4:00 p.m. ET**<br>) |

## MOTION OF THE NOTEHOLDER PLAN PROPONENTS FOR RECONSIDERATION AND CLARIFICATION OF THE COURT'S OCTOBER 31, 2011 DECISION

The Noteholder Plan Proponents, by and through their undersigned counsel, respectfully submit this Motion for Reconsideration and Clarification (the "Motion") of the Court's October 31, 2011 Opinion on Confirmation [ECF No. 10133] (the "Decision") pursuant to Rule 59 of the Federal Rules of Civil Procedure ("FRCP"), made applicable to these chapter 11 cases by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]  In support of this Motion, the Noteholder Plan Proponents respectfully submit as follows:

### PRELIMINARY STATEMENT

1.      The Noteholder Plan Proponents respectfully seek reconsideration and/or clarification respecting three discrete issues.  First, the Noteholder Plan Proponents seek reconsideration of the Court's apparent determination that the banks, agents and arrangers who financed and facilitated the failed 2007 leveraged buy-out (the "LBO") of the Tribune Company ("Tribune"), and the holders of the LBO debt (together with the foregoing banks, agents, and arrangers, the "LBO Lenders"), are entitled to share in recoveries by the litigation trust proposed by the DCL Plan (the "DCL Litigation Trust") that arise from the DCL Litigation Trust's pursuit

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Decision.

of causes of action arising from the LBO (the "Litigation Trust Causes of Action").  The

Noteholder Plan Proponents respectfully request that the Court issue a ruling that the

Lenders cannot share in any proceeds of the Litigation Trust Causes of Action.

2.    Second, the Noteholder Plan Proponents ask the Court to reconsider its

determination approving proportionate judgment reduction in conjunction with the Bar

Order contained in the plan of reorganization jointly submitted by the Debtors, the

Official Committee of Unsecured Creditors (the "Creditors' Committee") and certain

senior lenders (collectively, the "DCL Plan Proponents" and the "DCL Plan") [ECF Nos.

7136, 7701, 7801, 8231, 8259, 8580, and 8769].  *See* Decision at 71-78.  Instead, any

judgment reduction should be on a *pro tanto* basis, *i.e.*, limited to the payments made by

the subject settling defendants.[2]

3.    Finally, the Noteholder Plan Proponents also respectfully request that the

Court clarify that it has not made any determination as to how the PHONES Notes should

be valued for purposes of determining Tribune's solvency at the time of the LBO.[3]

### JURISDICTION AND VENUE

4.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The rule predicates for

the relief requested herein are FRCP 59 and Bankruptcy Rule 9023.

---

[2] Arguments in favor of the *pro tanto* judgment method were made to this Court on April 13, 2011 by counsel for Brigade Capital Management and adopted on behalf of the Noteholder Plan Proponents by counsel for Aurelius. 4/13/2011 Trial Tr. 137:24 – 138:6 (Pachulski) ("With respect, I don't think there's any basis to impose judgment reduction on plaintiff, but if you do, it should be limited to what is already going to happen anyway by operation of law which is the judgment reduction should be limited to the amount of the settlement proceeds that are applied to the payment of the debt that's the subject of any fraudulent conveyance action."); *see also id.* 139:1 – 8 (Golden).

[3] While this motion for reconsideration is limited to the three issues described above, the Noteholder Plan Proponents respectfully disagree with the Decision in several other respects, and have filed a Notice of Appeal concurrently with this Motion.

2

## BASIS FOR RELIEF

5.    FRCP 59(e), made applicable here pursuant to Bankruptcy Rule 9023, allows

parties to file motions for reconsideration or amendment of judgment. *See In re Vision Metals,*

*Inc.*, 327 B.R. 719, 721 (Bankr. D. Del. 2005) ("A motion for reconsideration ... generally fall[s]

within the parameters of Rule 59(e) ...."). The Court of Appeals for the Third Circuit has

recognized that motions for reconsideration should be granted where: (i) new evidence becomes

available; (ii) a supervening new law has been announced; or (iii) there is a need to correct an

earlier decision that was "clearly erroneous and would create manifest injustice." *See In re*

*Winstar Commc'ns, Inc.*, 435 B.R. 33, 39 (Bankr. D. Del. 2010) (citing *Public Interest Research*

*Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)); *see also In re*

*W.R. Grace & Co.*, 398 B.R. 368, 372 (Bankr. D. Del. 2008) (quoting *Max's Seafood Cafe by Lou*

*Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).


6.    The standards governing a motion for reconsideration seek to balance the

importance of finality in judicial decisions with a recognition that courts sometimes err. *Karr v.*

*Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd*, 22 F.3d 303 (3d Cir. 1994) (citing

*Brambles U.S.A., Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990)). Indeed, "[w]hile

finality of judgments is an important consideration, the goal of finality must yield, in appropriate

circumstances, to the equities of the particular case in order that the judgment might reflect the

true merits of the cause." *Karr v. Castle*, 768 F. Supp. at 1093 (internal citations omitted).

Accordingly, while parties should not use a motion for reconsideration as an opportunity to

merely relitigate issues that have already been decided, a court should reconsider a prior decision

when it appears that the court has overlooked a legal or factual matter "that might reasonably be

expected to alter the conclusion reached by the court." *Caylon N.Y. Branch v. Am. Home Mortg.*

*Corp.*, 383 B.R. 585, 589-90 (Bankr. D. Del. 2008); *see also In re Liquidating Trust of Resmae Mortg. Corp.*, No. 07-10177, 2007 WL 4224409 at *3 n.6 (Bankr. D. Del. Nov. 26, 2007).

**I.    The LBO Lenders Should Not Be Permitted To Share In The DCL Litigation Trust Recoveries**

7.      Pursuant to the DCL Plan, the LBO Lenders are to receive, in partial satisfaction of their allowed claims against the Debtors, interests in the DCL Litigation Trust. *See* DCL Plan § 1.1.139 (defining DCL Litigation Trust Interests); *see generally* § 3.2 (discussing treatment).  The primary assets of the DCL Litigation Trust are to include the non-settled causes of action arising out of the LBO, including claims against a variety of defendants for intentional and constructive fraudulent conveyance, and claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and malpractice. *See id.* §§ 1.1.136 (defining DCL Litigation Trust Assets to mean "all Preserved Causes of Action"), 1.1.188 (defining Preserved Causes of Action to include "any and all LBO-Related Causes of Action"); *see Official Committee of Unsecured Creditors of Tribune Company v. FitzSimons et. al*, 08-13141, Adv. Pro. No. 10-54010-KJC (Bankr. D. Del.) (the "*FitzSimons* Complaint") [ECF No. 61] ¶¶ 229-494.  The Litigation Trust Causes of Action do not include *constructive* fraudulent conveyance claims against former Tribune shareholders who tendered their shares in connection with the LBO. *See* DCL Plan § 14.3.1 (including constructive fraudulent conveyance actions in the Creditors Trust).

8.      The Noteholder Plan Proponents objected to this aspect of the DCL Plan on the ground that, *inter alia*, permitting the LBO Lenders to benefit from the prosecution of the Litigation Trust Causes of Action, when innocent Non-LBO Creditors will not be paid in full, violates principles of law and equity. *See* NPP Objection at 184-96; 4/14/11

4

Trial Tr. 135:14-154:11; NPP Post-Trial Brief (Part I) at pp. 83-84. The Court's Decision does not expressly address this objection, although it could be interpreted to imply that the objection was overruled and that, therefore, the LBO Lenders may benefit from all of the Litigation Trust Causes of Action.

9.      The Noteholder Plan Proponents respectfully request that, to the extent the Court intended to rule in this manner, the Court reconsider this question and determine that the LBO Lenders may not share in the recoveries arising from the Litigation Trust Causes of Action. Such a result is mandated by the well-settled case law holding that facilitators of, and willing participants in, a subject transaction are prohibited from bringing or benefiting from claims that arise from that very transaction, at least until the innocent parties who did not participate in and were harmed by the transaction are made whole. *See, e.g., HSBC Bank USA, N.A. v. Adelphia Commc'ns Corp.,* No. 07-cv-553A, 2009 WL 385474, at *6-7 (W.D.N.Y. Feb. 12, 2009) (holding that creditors who ratified transaction by "accept[ing] benefits flowing from the contract, or remain[ing] silent, or acquiesce[ing] in the contract for any considerable length of time . . ." are estopped from challenging it as a fraudulent transfer); *Morin v. OYO Instruments, L.P. (In re Labelon Corp.),* No. 02-02-22582, 2006 WL 2516386, at *4 (Bankr. W.D.N.Y. Aug. 28, 2006); *Harris v. Huff (In re Huff),* 160 B.R. 256, 261 (Bankr. M.D. Ga. 1993); *In re PWS Holding Corp.,* 228 F.3d 224, 229, 239-40 (3d Cir. 2000); *In re Yellowstone Mountain Club, LLC,* 436 B.R. 598, 674-76 (Bankr. D. Mont. 2010).

10.     This is not a request that the Court revisit any part of its determination respecting "WEAR" or "upstreaming" in the context of Step Two avoidance. Decision at 65. Indeed, all of the payments that the DCL Litigation Trust seeks to avoid emanated from the Tribune parent. *See* Examiner's Report, Vol. I, 206-10, 460-62. Rather, the sole point is that, pursuant to

{00574913;v1}

applicable case law, the LBO Lenders' participation in the LBO precludes them from

benefitting from any claims held by the DCL Litigation Trust that are based on the theory

that the LBO they financed should not have been consummated.

11.     This notion is well-established under prevailing case law.  For example, in

*In re Labelon Corp.*, the court refused to allow a creditor to benefit from an action for

fraudulent conveyance, where the creditor had "knowingly and actively participated in

and benefitted from" the challenged transaction.  2006 WL 2516386, at *5.  The court

stated that "on equitable grounds, this Court would not make a finding of avoidance and

recovery on the proposed Section 548 and [state law] causes of action when the only

entity that would benefit from that avoidance and recovery would be [a creditor] which

specifically approved the [subject] transaction in writing and significantly benefited from

the transaction." *Id.*

12.     Similarly, in *In re Huff*, the court held that the trustee was estopped from

challenging a transfer as a fraudulent conveyance, where the creditor on whose behalf the

trustee was acting had consented to the transfer.  160 B.R. at 261.  And in *In re PWS*

*Holding Corp.*, the Third Circuit observed that there was a "reasonable possibility that

the [leveraged buyout lenders] would be estopped from sharing in any fraudulent transfer

recoveries." 228 F.3d at 229, 239-40.

13.     The LBO Lenders should also be precluded from participating in

recoveries arising from the Litigation Trust Causes of Action under the doctrine of *in pari*

*delicto*, which holds that "a plaintiff may not assert a claim against a defendant if the

plaintiff bears fault for the claim." *Official Comm. of Unsecured Creditors v. R.F.*

*Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3d Cir. 2001); *see also OHC Liquidation Trust v.*

6

*Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 389 B.R. 357, 365 (Bankr. D. Del. 2008) (noting that *in pari delicto* is analogous to the doctrine of unclean hands and "rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct."). In bankruptcy proceedings, *in pari delicto* is often employed by a defendant to preclude a trustee (or a party exercising the trustee's powers) from recovering on a claim where the debtor participated in the underlying misconduct. *See, e.g., R.F. Lafferty & Co., Inc.*, 267 F.3d at 360; *In re Oakwood Homes Corp.*, 389 B.R. at 372.

14.     The doctrine of *in pari delicto* has also been invoked to preclude individual creditors whose conduct contributed to an avoided transaction from sharing in the benefit of such avoidance. For example, in *In re Yellowstone Mountain Club, LLC*, the court held that the defense of *in pari delicto* precluded the agent of a loan that had rendered the debtors insolvent, and the holders of that debt, from sharing in the recoveries resulting from the avoidance of the debt. 436 B.R. at 674-76. The court found that the agent, motivated by the prospect of large fees, "proposed to increase the Debtors' debt load by at least six times," and that the agent "could not have believed under any set of circumstances that the Debtors could service such an increased debt load." *Id.* at 676-7.

15.     Here, as the Litigation Trust Causes of Action are pursued, in the event that either or both steps of the LBO are determined to have been a fraudulent transfer, the LBO Lenders who facilitated and acquiesced in the transaction should not, as a matter of law, be allowed to benefit. The LBO Lender's role in the LBO should also preclude them, as a matter of law, from benefitting from the claims that Tribune's fiduciaries and professionals breached their duties by allowing the LBO to proceed.

{00574913;v1}

16.     Accordingly, the Noteholder Plan Proponents respectfully submit that this objection to the LBO Lenders' sharing in the recoveries obtained by the DCL Litigation Trust should have been sustained.

17.     There can be little doubt that the defendants in the adversary proceeding commenced by the Creditors' Committee against Tribune's advisors, directors, officers and former shareholders who tendered stock in connection with the LBO (the "*FitzSimons* Action") will argue that the DCL Litigation Trust is legally precluded from asserting claims against them on behalf of the LBO Lenders.[4]  Similarly, they will undoubtedly approach any settlement discussions with the Litigation Trustee from that perspective and base any offers on the amounts still owed to non-LBO Creditors of Tribune.  The defendants will unquestionably support such arguments under the same theories of law discussed above, and by citing to the ample evidence showing that the LBO Lenders, motivated by a desire for large fees and other parochial business concerns, both agreed to and participated in the LBO notwithstanding their knowledge that it would render the Tribune Entities insolvent.  *See, e.g.*, NPP Post-Trial Brief (Part I) at 50-55.

18.     Clearly, in the context of these plan proceedings between the DCL Plan Proponents and the Noteholder Plan Proponents, the Court may not (and did not intend to) adjudicate the validity of such defenses to the Litigation Trust Causes of Action being pursued in the *FitzSimons* Action (which is stayed).  Successful invocation of these arguments by any of the *FitzSimons* defendants would — absent reconsideration of the

---

[4] Indeed, JPMorgan itself has asserted that, in an action commenced by a litigation trust for the benefit of a debtor's pre-petition creditors, the lenders who financed a leveraged buyout cannot benefit from the leveraged buyout's avoidance — as opposed to the company's other creditors, who may be able to benefit — in moving to dismiss fraudulent conveyance claims asserted against JPMorgan in its capacity as a former shareholder of Lyondell Chemical Company by the Lyondell litigation trustee. NPP 2520 (Lyondell Motion to Dismiss) at 44-47 (citing, *In re Refco, Inc. Sec. Litig.*, No. 07-MDL-1902, 2009 WL 7242548, *11 (S.D.N.Y. Nov. 13, 2009)).

{00574913;v1}

Decision — result in manifest injustice to Non-LBO Creditors, as it would mean that *the DCL Litigation Trust's recoveries would exclude any deficiency owing to the LBO Lenders and instead be limited to amounts due to Tribune's other parent creditors, but the Non-LBO Creditors would still be required to share such recoveries with the LBO Lenders.* As such, the Noteholder Plan Proponents respectfully request that the Court rule that the LBO Lenders cannot share in any recoveries to the DCL Litigation Trust.

II.    **The Court's Approval Of The Proportionate Judgment Reduction Method In The Bar Order Was Clear Error And Results In Manifest Injustice**

19.    The Bar Order proposed in the DCL Plan would "bar" or preclude all claims for non-contractual indemnification or contribution by non-settling defendants against the settling defendants (*i.e.*, the LBO Lenders), in connection with actions brought against such non-settling defendants by the Creditors' Committee, the trustees of the DCL Litigation Trust and Creditors' Trust to be established under the DCL Plan, as well as individual creditors. The Bar Order also contains a *proportionate* judgment reduction provision applicable to such pending or future actions, whether involving federal or state law claims. To the extent any or all of the non-settling defendants *have* any rights of contribution or non-contractual indemnification against the Released Parties (a proposition that was not before the Court and which the Noteholder Plan Proponents do not in any way concede), the judgment reduction provision in the DCL Plan would instead entitle such non-settling defendants to reduce the amount of their liability in proportion to the settling defendants' relative shares of fault, regardless of the settlement amount actually paid by the settling defendants. *See* DCL Plan § 11.3.

20.    The Bar Order and proportionate judgment reduction would apply to any future judgment(s) against non-settling defendants in a multitude of actions. The Bar Order and judgment reduction provisions of the DCL Plan are intended to apply to the Creditors'

9

Committee's *FitzSimons* Action, asserting various claims against Tribune's advisors, directors, officers and former shareholders who tendered stock in connection with the LBO. *See FitzSimons* Complaint.

21.    Second, the Bar Order and judgment reduction provisions are intended to apply to any federal and state court actions commenced by individual creditors asserting Disclaimed State Law Avoidance Claims against Tribune's former shareholders. On March 1, 2011, Aurelius Capital Management, LP, on behalf of its managed entities, and Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company, in their respective capacities as successor Indenture Trustees for a certain series of Senior Notes or the PHONES (the "State Court Plaintiffs"), moved this Court for an order providing, *inter alia*, that individual creditors of Tribune could prosecute state law constructive fraudulent conveyance claims. [ECF Nos. 8201, 8224]. On April 25, 2011, this Court granted the motion and issued an order permitting creditors to initiate state law constructive fraudulent conveyance claims. [ECF No. 8740]. Thereafter, on June 2 and June 3, 2011, the State Court Plaintiffs commenced dozens of actions across the nation alleging that the LBO payments to redeeming shareholders were constructively fraudulent under the laws of Massachusetts, Illinois, and New York (the "State Law Actions").[5]

---

[5] Apart from the *FitzSimons* and State Law Actions, a group of 186 former Tribune employees also commenced four constructive fraudulent transfer actions (the "Retiree Actions") against many of the same defendants named in the State Law Actions, and apparently alleging claims which raise similar legal and factual issues as the State Law Actions.

{00574913;v1}

22.     In the Decision, the Court ruled that the Bar Order, and the proportionate judgment reduction provision, are fair to the Noteholders[6] based on its conclusion that the DCL DCL Plan Settlement "falls within the range of reasonableness." Decision at 75. Specifically, Specifically, the Court held that "[e]ven though the Noteholders (or other state court plaintiffs) plaintiffs) did not negotiate or consent to the DCL Plan Settlement, *the Bar Order is fair because because I have determined that the DCL Plan Settlement falls within the range of reasonableness.*" *Id.* (emphasis added).[7]

23.     For the purposes of this Motion, the Noteholder Plan Proponents are not asking the Court to reconsider the validity of a Bar Order itself. Rather, the Noteholder Plan Proponents respectfully submit that the Court's approval of the proportionate judgment reduction method as the method to be applied to all claims against non-settling defendants (again, assuming *arguendo* that any contribution or indemnification claim against one or more Released Parties even exists) is a clear error of law resulting in manifest injustice. The Noteholder Plan Proponents request that the Court amend its Decision to provide that the *pro tanto* judgment reduction method apply to all pending and future claims against the non-settling defendants, whereby all non-settling defendants (to the extent any such defendants had valid rights of contribution or non-contractual indemnification) collectively share a judgment reduction in the amount of the payment actually made by the settling defendants under the proposed DCL Plan Settlement.

---

[6] While the term "Noteholders" has not been defined in the Decision, the term has generally been used to refer, collectively, to the holders of the Senior Notes and the holders of the PHONES Notes or the Noteholder Plan Proponents.

[7] The Court did not determine in any way, and was not asked to determine, whether any non-settling defendants in fact *have* a contribution right. The Bar Order itself explicitly states that it is without prejudice to this issue (*see* DCL Plan § 11.3), and case law cited by the DCL Plan Proponents, establishes that no such right exists. *See DCL Proposed Findings of Fact and Conclusions of Law* [ECF No. 9062] at 88 n.361 (citing *In re Amp'd Mobile Inc.*, 404 B.R. 118 (Bankr. D. Del. 2009); *Wieboldt Stores Inc. v. Schottenstein*, 111 B.R. 162 (N. D. Ill. 1990)).

{00574913;v1}

**A. Weighing Of The Relative Fault Of The Settling Defendants Compared to the Non-Settling Defendants Is Necessary To Determine That The Proportionate Judgment Reduction Method Is Fair**

24.     The Court's approval of the proportionate judgment method was improperly anchored on its separate and distinct finding that the DCL Plan Settlement was reasonable, rather than any weighing of relative fault of the settling defendants compared to the non-settling defendants. *See* Decision at 75.  In doing so, the Court erroneously incorporated into the Bar Order analysis its conclusion that the Noteholders are unlikely to obtain any meaningful recovery from the LBO Lenders if only Step Two is avoided because most of Tribune's value resides at the subsidiary level. *See* Decision at 64-65.  This determination, however, has no bearing on whether the proportionate judgment method in the Bar Order is appropriate; as such, the evidentiary record was inadequate to conclude that a bar order incorporating proportionate judgment reduction is fair and reasonable to (a) Tribune's creditors receiving interests in the DCL Litigation Trust, and (b) individual creditors pursuing suits against non-settling defendants.

25.     As a threshold matter, the Third Circuit holds that a sufficient evidentiary and legal basis is essential to release non-debtors from future third party actions. *See Gillman v. Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000).  As this Court has acknowledged, the Third Circuit's "hallmarks" of a permissible non-consensual release are "fairness [and] necessity to the reorganization" and "specific factual findings to support these conclusions." Decision at 74 (quoting *Continental*, 203 F.3d at 214).  Moreover, in evaluating these "hallmarks," courts have examined whether the non-consenting creditors received reasonable compensation in exchange for such releases.  Decision at 75. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001).

{00574913;v1}

26.     Since the Bar Order contains a proportionate fault judgment reduction provision, the plaintiffs entirely bear the risk of a "bad" settlement potentially imposing a severe limitation on future recoveries with the non-settling defendants.  *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 161 (4th Cir. 1991) ("As to plaintiffs, it is clear that the method of setoff chosen affects the desirability of a proposed partial settlement.  For example, plaintiffs bear the risk of a "bad" settlement under the "proportionate" rule,[8] while under the *"pro tanto"* rule the risk passes to the non-settling defendants and plaintiffs gain more certainty from the earlier resolution of the setoff figure.").  Cases decided in bankruptcy court, and cited by this Court, have approved a partial settlement with a *pro tanto* judgment reduction.  *See, e.g. In re Munford, Inc.*, 97 F.3d 449, 456 (11th Cir. 1996) (affirming approval of bar order containing "dollar-for-dollar reduction," *i.e. pro tanto* method, against any future judgment rendered against non-settling defendants); *see also Whyte v. Kivisto (In re SemCrude. L.P.)*, No. 08-11525 (BLS), 2010 Bankr. LEXIS 4160, at *17 (Bankr. D. Del. Nov. 19, 2010).  Given these well recognized risks on plaintiffs resulting from the proportionate rule and the unique procedural context of this confirmation/9019 hearing, the Court was obligated to evaluate whether the settlement consideration contributed by the settling defendants is a reasonable approximation of their fault when compared to the non-settling defendants, rather than simply fall back on its determination that the settlement consideration in the DCL Plan Settlement as a whole meets the lowest rung of reasonableness.

27.     However, no evidence was submitted, and no such assessment was made here on whether the settling defendants, some of whom ultimately may be found to have the greatest

---

[8] Put simply, and for illustrative purposes only, in a case involving two defendants properly deemed to be joint tortfeasors, if proportionate judgment reduction is ordered and if the plaintiff settles with one defendant for $200,000 and subsequently obtains a $2 million judgment against the non-settling defendant but the settling defendant is determined to be 80% at fault, then the non-settling defendant is entitled to reduce the judgment by $1,600,000 and pay only $400,000 of the $2 million, leaving the plaintiff with just $600,000 out of its proven $2 million loss.

13

fault, *vis-a vis* all of the non-settling defendants, settled too cheaply. Failure to conduct any weighing of relative fault before concluding that the proportionate judgment reduction method is reasonable was clear error because, absent such analysis, the Court had no basis to find the proportionate judgment reduction method was fair to the non-settling plaintiffs and other objecting parties.

28.    In the Decision, the Court expressly based its finding that proportionate judgment reduction *was* fair on its earlier conclusion "that the DCL Plan Settlement falls within the range of reasonableness." Decision at 75. Critically, however, this distinct conclusion about the reasonableness of the DCL Plan Settlement was based, in large part, on its assessment that, despite the strong likelihood of the Step Two debt being avoided, recovery from the LBO Lenders under WEAR theories was an "uphill battle". Decision at 64-65. That conclusion, while obviously relevant to whether the DCL Plan Settlement was within the lowest range of reasonableness, is wholly irrelevant to the Court's evaluation of the fairness of the proportionate judgment reduction method accompanying the proposed Bar Order. The Court's assessment of the likelihood of success of "WEAR" and "upstreaming" of value from Tribune's subsidiaries is only relevant to the likely consequences to parent company creditors of the Debtors' Estates successfully avoiding the Step Two (but not Step One) obligations, given Tribune's capital structure, and thus whether the DCL Plan Settlement was or was not within the range of reasonableness. Conversely, the Court's assessment of "WEAR" and "upstreaming" of value from Tribune's subsidiaries has absolutely no bearing on the relative fault of the LBO Lenders with respect to the transfers made to the former Tribune shareholders, in causing harm to Tribune itself.

14

29.     The irrelevance of Tribune's capital structure and the strength or weakness of the
WEAR remedies can also be shown by examining the potential contribution claims the non-
settling defendants could assert against the LBO Lenders in the absence of a bar order (assuming,
*arguendo*, that the settling and non-settling defendants are all joint tort-feasors), and the LBO
Lenders' defense thereto.  Were such claims asserted, the settling defendants could not rely on
the the fact of their guarantees from Tribune's subsidiaries—and the concomitant absence of
guarantees running to the Senior Notes or PHONES—as a defense.  To the contrary, in the event
that the DCL Litigation Trust or the plaintiffs in the State Law Actions won a judgment against
the former Tribune shareholders and/or the DCL Litigation Trust obtains a judgment against
Tribune's advisors, directors, or officers, and such non-settling defendants sought contribution
from the Released Parties (and again, assuming that such a right of contribution exists), the *only*
possible defense to the contribution claim would be to try to minimize their relative *fault* with
respect to the harm caused to Tribune alone relative to all other parties liable for the loss.  The
argument debated at length during the confirmation trial — that despite the obvious avoidability
of the Step Two debt, parent company creditors allegedly would receive little or no benefit
because of the Step One Lenders' structural superiority — could not conceivably be raised as a
reason why the shareholders should receive a smaller contribution from the LBO Lenders for
harm allegedly jointly caused to Tribune.  Accordingly, this Court's stated rationale for
approving the judgment reduction provision in the Bar Order warrants reconsideration of that
aspect of the Court's Decision.  Decision at 75.

30.     Notably, in the confirmation hearings the DCL Plan Proponents were agnostic on
the issue—or as counsel to JP Morgan put it, had "no dog in that fight"—as to which judgment
reduction method applied, as long as the DCL Plan included a bar against contribution claims by

15

the non-settling defendants.  4/13/2011 Trial Tr. 155:15-18 (Moskowitz) ("Mr. Pachulski

criticized the proportionate fault reduction formula that is set forth in the bar order in our

case.  I don't particularly have a dog in that fight other than to say that we are in the Third

Circuit and we have clear Third Circuit case law saying that among the different ways

you can calculate the reduction, the proportionate fault is the best way.").

31.     Accordingly, in the absence of a valid record and determination supporting

proportionate judgment reduction, the Court should amend its Decision to require that

any new DCL Plan provide only for *pro tanto* judgment reduction.  *See, e.g.*, *In re*

*Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) ("the court must make a reasoned

determination that bar order is fair and equitable.").  Indeed, even if the Court adheres to

its conclusion that the record establishes that the settlement consideration in the DCL

Plan Settlement is a fair proxy for the LBO Lenders' allocable fault, then the *pro tanto*

judgment reduction method should be no less fair to the non-settling defendants than

proportionate judgment reduction.  *Atl. Richfield Co. v. American Airlines, Inc.*, 836 F.

Supp. 763, 775 (N. D. Okla. 1993) (favoring the *pro tanto* rule over the proportionate rule

in a multi-defendant CERCLA litigation  because the non-settling defendants "pay the

balance owed to plaintiff regardless of whether any settling defendant has paid more or

less than its proportionate share" in addition to other litigation efficiencies).

### B. The Proportionate Judgment Reduction Method Directly Conflicts With The *Pro Tanto* Judgment Reduction And Other Methods Applicable To The State Law Claims

32.     Independent of the above arguments, the Court should reconsider its ruling

as to the application of proportionate judgment reduction to the State Law Actions; as

contribution rights (if any) and judgment reduction methods in those actions should be

dictated by state law.  That is because the imposition of a blanket proportionate judgment

reduction method in the DCL Plan—a provision drafted and proposed months *before* any State

Law Actions actually were commenced—directly conflicts with the contribution statutes of

Massachusetts, Illinois, and New York, the state laws governing the State Law Actions.[9]

33.     The contribution and bar statutes of Massachusetts and Illinois both mandate a

*pro tanto* method of judgment reduction in actions involving multiple joint tortfeasors and partial

settlements. MASS. GEN. LAWS. ch. 231B, § 4 (1962); 740 ILL. COMP. STAT. 100/2 (1986); *see*

*also In re Atl. Fin. Mgmt, Inc. Sec. Litig.*, 718 F. Supp. 1012, 1015 (D. Mass. 1988); *Pasquale v.*

*Speed Prods. Eng'g*, 654 N.E.2d 1365, 1382 (Ill. 1995).   Under the *pro tanto* method of

judgment reduction (assuming *arguendo* a valid right to contribution has been established), the

non-settling defendants receive a credit equal to the dollar amount paid by the settling

defendant(s); where there are multiple non-settling defendants, they each receive a proportionate

share of the settling defendants' payment to reduce any judgment against them.   New York

requires future judgments to be reduced by "the greater of" the proportionate fault or *pro tanto*

methods.   N.Y. GEN OBLIG. LAW § 15-108(a) (2007); *see also Banks ex rel. Banks v. Yokemick*,

177 F. Supp. 2d 239, 260 (S.D.N.Y. 2001).

34.     Here, the *pro tanto* method would entitle all non-settling defendants found to have

had a valid right of contribution or non-contractual indemnification against one or more of the

non-settling defendants collectively to reduce their liability by the amount paid by such settling

defendant(s) in settlement consideration.

35.     It is well settled that claims based on state law are governed by the state law

contribution statutes.   *See In re Jiffy Lube*, 927 F.2d at 161 ("state claims . . . are governed by

applicable state law regarding contribution among joint tortfeasors."); *Atl. Fin. Mgmt*, 718 F.

---

[9] The DCL Plan containing the current form of the Bar Order was filed on April 5, 2011.   [ECF No. 8580].
The State Law Actions were commenced on June 2 and June 3, 2011 after the confirmation hearings and post-trial
briefing had concluded.

{00574913;v1}

Supp. at 1015 ("As to those claims which are based on state law, [the applicable state statute] governs the parties' contribution rights."); *cf. In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 608 (N.D. Ill. 1987) (internal citation omitted) ("If . . . liability is grounded on state law, however, state law controls the question of the scope and limitations of indemnity and contribution."). Recognizing the appropriate application of state law to set-off rights, this court has approved contribution provisions in which set-off rights of non-settling defendants are governed by applicable state law. *See In re SemCrude. L.P.*, 2010 Bankr. LEXIS 4160, at* 17 (approving set-off rights in contribution provision "based on applicable law" providing, under Oklahoma state statute, for judgment reduction "to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater.").

36.    Moreover, where both federal and state claims are at issue in a single litigation, courts apply different judgment reduction methods for federal and state law claims to be consistent with the corresponding federal and state law contribution and bar statutes. *See In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. MDL-1446, 2008 WL 2566867, at *11 (S.D. Tex. June 24, 2008) (PSLRA's greater of proportionate fault/*pro tanto* reduction formula applied to federal securities claims, whereas Ohio bar statute's equivalent to *pro tanto* judgment reduction rule was applied to Ohio state common law claims). Courts have gone so far as to invoke the state law settlement bar rules of the forum state to secure uniformity between the contribution rights between federal and state law claims. *See, e.g., First Fed. Sav. & Loan Assoc. of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 631 F. Supp. 1029 (S.D.N.Y. 1986).

18

37.     As noted above, the DCL Plan Proponents stated on the record that they did not particularly care as to which method of judgment reduction applied.  Accordingly, the Noteholder Plan Proponents request that the Court reconsider the imposition of the proportionate judgment method with respect to the State Law Actions and specify that the judgment reduction method in the state's law governing the State Law Actions apply (to the extent any contribution claims are determined to exist): (i) the *pro tanto* method of judgment reduction under MASS. GEN. LAWS. ch. 231B, § 4 (1962); (ii) the *pro tanto* method of judgment reduction under 740 ILL. COMP. STAT. 100/2 (1986); and (iii) "the greater of" the proportionate fault or *pro tanto* methods under N.Y. GEN OBLIG. LAW § 15-108(a) (2007).  With respect to the *pro tanto* method, all non-settling defendants (to the extent any such defendants had valid rights of contribution or non-contractual indemnification) will collectively share a judgment reduction in the amount of the payment actually made by such settling defendant(s) under the proposed DCL Plan Settlement.

**III.     The Court Should Clarify That It Has Not Ruled On The Appropriate Method For Valuing The PHONES Notes When Assessing Tribune's Balance Sheet Solvency**

38.     One of the issues in dispute during the confirmation hearing was the proper way to value the Debtors' PHONES Notes when assessing Tribune's balance sheet solvency at the time of the LBO.  The Noteholder Plan Proponents argued that, consistent with Third Circuit case law and solvency analyses performed by the Company, the Company's advisors and the LBO Lenders at the time of the LBO and during the bankruptcy, the PHONES Notes should be valued at their $1.256 billion face amount, less the value of the Time Warner shares that could be netted against the liability upon redemption.  *See, e.g.*, NPP Post-Trial brief at 30-32.  Certain of the DCL Plan Proponents, on the other hand, ascribed a value of $663 million to the PHONES Notes.  This lower number was derived from certain of the Company's financial statements, which calculate the PHONES Notes using a mix of book and fair values pursuant to Financial

19

Accounting Standard No. 133. NPP 955 (Tuliano Rebuttal Rpt.) at 13-14; 3/10/11 Trial

Tr. 165:16-25 (Fischel); NPP 672 (12/30/07 Tribune 10-K) at 43, n.10. Valuing the

Phones Notes using accounting value, rather than face value, would increase Tribune's

value in a balance sheet solvency analysis by $593 million at Step One, and $659 million

at Step Two. NPP 955 (Tuliano Rebuttal Rpt.) at 14.

39.     In canvassing the issues respecting the DCL Plan Settlement, the Court

determined that that the DCL Plan Proponents reasonably relied upon the conclusion that

(i) Steps One and Two should not be collapsed for purposes of assessing Tribune's

solvency at Step One, and that it was thus also reasonable for the DCL Plan Proponents to

base the DCL Plan Settlement on the assumption that Tribune was not insolvent at Step

One, and (ii) "the Examiner's Report supports the Noteholders' contention that it is

highly likely that a court would avoid the Step Two transactions." Decision at 45, 55, 57.

The Decision does not address the merits of the PHONES valuation dispute discussed in

paragraph 37 above, ostensibly because, like many other issues, the Court found that it

was not necessary to do so in order to reach its conclusions regarding the reasonableness

of the DCL Plan Settlement.

40.     Nevertheless, on page 9 of the Decision, the Court includes a chart that

lists the amount of the PHONES Notes prior to the LBO using a number that is derived

from a Tribune 10-Q. The number is consistent with the accounting value endorsed by

certain of the DCL Plan Proponents for use in a solvency analysis. Given the absence of

any discussion in the Decision regarding whether this is the appropriate value to use

when performing a balance sheet solvency analysis, however, it does not appear that the

Court intended this chart to be a ruling that accounting value should be used.

20

41.    Notwithstanding the Court's approval of the DCL Plan Settlement, the PHONES valuation issue will be litigated in the *FitzSimons* Action and the State Law Actions.  It is possible that defendants in these actions may argue that this Court in fact ruled that the accounting value, rather than the face value, of the PHONES Notes should be used in a balance sheet solvency analysis of Tribune, and that such ruling should be binding upon the plaintiffs to those actions.  It is also possible that a court hearing those actions will so decide.  As such, the Noteholder Plan Proponents respectfully request that the Court clarify that it has not ruled on the appropriate method for valuing the PHONES Notes when assessing Tribune's balance sheet solvency.[10]

## NO PRIOR REQUEST

42.    The Noteholder Plan Proponents have not previously sought the relief requested herein from this Court or any other court.

## NOTICE

43.    Notice of the Motion has been provided to: (a) the Office of the United States Trustee; (b) counsel to the Debtors; (c) counsel to the Creditors' Committee; (d) counsel to the administrative agent for the Debtors' postpetition financing facility; and (e) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Noteholder Plan Proponents submit that no other or further notice is necessary.

---

[10] To the extent that the Court determines that this issue needs to be determined in connection with the Decision, the Noteholder Plan Proponents respectfully assert that the Court should find that a court would calculate the amount of the PHONES Notes at face value for purposes of determining Tribune's balance sheet solvency, as set forth in the Noteholder Plan Proponents' post-trial submissions.  NPP Post-Trial Reply brief (Part I) at 30-32; NPP Post-Trial Reply Brief at 5-6.

21

## CONCLUSION

44.     WHEREFORE, for all of the foregoing reasons, the Noteholder Plan Proponents respectfully request that the Court: (i) enter an order substantially in the form attached hereto as Exhibit A (a) reconsidering its apparent determination that the LBO Lenders may share in recoveries arising from the Litigation Trust Causes of Action and holding that the LBO Lenders may not share in such recoveries, (b) reconsidering its approval of the proportionate judgment reduction provision in the Bar Order, and holding that any judgment reduction should be on a *pro tanto* basis, and (c) clarifying that the Court has not determined how the PHONES Notes should be valued for purposes of determining Tribune's balance sheet solvency; and (ii) grant the Noteholder Plan Proponents such other and further relief as is just, proper, and equitable.

Dated: November 14, 2011

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
Abid Qureshi
Mitchell P. Hurley
One Bryant Park
New York, NY  10036
212-872-1000

*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.

/s/ William P. Bowden
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE  19899
302- 654-1888

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP

/s/ Katharine L. Mayer
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

{00574913;v1}

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
/s/ David S. Rosner
David S. Rosner
1633 Broadway
New York, NY 10019
212-506-1700

BIFFERATO GENTILOTTI LLC

/s/ Garvan F. McDaniel
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302-429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor
Indenture Trustee for certain series of Senior Notes*

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC

/s/ William D. Sullivan
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market St., Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for
the PHONES Notes*

23

{00574913;v1}