## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### DECLARATION OF ORDINARY COURSE PROFESSIONAL

1.      I, Anthony M. Mateja, am a Principal of Mercer Health & Benefits, LLC

("Mercer H&B"), which maintains offices at 155 North Wacker Drive, in Chicago, Illinois.

2.      This Declaration is submitted in connection with an Order of the United

States Bankruptcy Court for the District of Delaware, entered on January 15, 2009 [Docket No.

227], authorizing the above-captioned debtors and debtors in possession (each a "Debtor" and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347);Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

collectively, the "Debtors"), to employ and compensate certain professionals in the ordinary course of business during the pendency of these chapter 11 cases.

3.       Mercer H&B has provided actuarial health and benefit services to the Debtors with respect to certain aspects of the Debtors' business operations, including analyses with respect to health benefit claims incurred but not reported and reviewing budgets, which Mercer H&B routinely performed both prior to and after the date each of the Debtors filed for relief under chapter 11 of title 11 of the United States Code and were administrative in nature. Recently, the Debtors have requested, and Mercer H&B has agreed, to provide additional and specialized health and benefit services to the Debtors on a postpetition basis, effective as of June 29, 2011, including assessing and assisting in the implementation of employee benefit plans, pursuant to an engagement letter (the "Engagement Letter"), a copy of which is attached hereto as Exhibit 1 and statements of work (each a "SOW") that are agreed upon under the Engagement Letter.

4.       The services Mercer H&B expects to provide under the Engagement Letter are based upon a fixed fee arrangement.  Mercer H&B's compensation under the current SOW is a fixed fee of $95,000.00, which is comprised of (i) $40,000 for development of 2012 health care strategy details; (ii) $35,000 for medical requests for proposal analyses; and (iii) $20,000 for prescription and pharmaceutical requests for proposal analyses.[2]  To the extent Mercer H&B provides additional services on an hourly basis, its current customary rates, subject to change from time to time, are set forth in the following chart.

---

[2]       Pursuant to the Engagement Letter, Mercer H&B is also entitled to reimbursement for all actual and necessary travel and other expenses related to the services provided.

| Professional | Hourly Rate Range |
|---|---|
| Partner | $700 - $900 |
| Principal | $550 - $800 |
| Senior Associate | $350 - $550 |
| Associate | $250 - $400 |
| Analyst | $200 - $300 |
| Support Staff | $50 - $100 |

5.      In the normal course of its business, Mercer H&B assesses its billing rates on April 1 of each year, but billing rates are subject to increase throughout the year. Accordingly, Mercer H&B respectfully requests that the aforementioned rates be revised to the regular hourly rates that are in effect at the time of providing any services to the Debtors on an hourly fee basis.

6.      In the ordinary course of its business, Mercer H&B and its affiliated entities maintain a database of its current and potential clients.  Pursuant to Federal Rule of Bankruptcy Procedure 2014(a), I obtained a list of the entities identified in Rule 2014(a) from counsel to the Debtors for purposes of searching the aforementioned database and determining the connection(s) which Mercer H&B has with such entities.  Mercer H&B's search of the database identified the connections attached hereto as Exhibit 2.

7.      With respect to the entities listed on Exhibit 2, Mercer H&B has provided services, and likely will continue to provide services, to those entities in matters *unrelated* to these chapter 11 cases.

8.      Despite Mercer H&B's efforts to identify and disclose connections with parties-in-interest in these chapter 11 cases, Mercer is unable to state with certainty that every client relationship or other connection has been disclosed due to the number and size of the Debtors.  If Mercer H&B discovers additional information that requires disclosure, Mercer H&B will file a supplemental disclosure with the Court as promptly as possible.

9.    Neither I nor any principal, partner or member of, or professional employed by, Mercer H&B has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals, partners, members and regular employees of Mercer H&B, as permitted by 11 U.S.C. § 504(b).

10.    The Debtors do not owe Mercer H&B any amounts for prepetition services, and it is not holding a retainer from the Debtors.

11.    I understand that any compensation paid to Mercer H&B is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

12.    Based upon the forgoing, neither I nor any principal, partner or member of, or professional employed by, Mercer H&B, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which Mercer H&B is to be employed.

13.    Mercer H&B is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if Mercer H&B should discover any facts bearing on the matters described herein, Mercer H&B will supplement the information contained in this Declaration.

Pursuant to 11 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 18, 2011

_____
Anthony M. Mateja

# EXHIBIT 1

# MERCER

July 1, 2011

Michael Bourgon
Vice President, Human Resources
Tribune Company
435 North Michigan Avenue
Chicago, IL 60611

**Subject:** Engagement Letter Agreement

We are delighted to have the opportunity to work with Tribune Company ("you" or "Client"). The purpose of this letter of engagement ("Agreement") is to set forth the terms governing any services that have been or will be provided to you ("Services") by Mercer Health & Benefits LLC ("Mercer" or "we").  Mercer and the Client may also be referred to collectively as the "Parties".

## Statements of Work

Each statement of work ("SOW") must specify at a minimum: (1) our respective responsibilities with respect to any Services; (2) the information and data we will need in order to perform the Services; (3) any time constraints on the performance of the Services; and (4) the compensation we will receive for performing the Services. To the extent you have accepted any SOWs at any time prior to the execution of this Agreement; such SOWs shall be subject to the terms of this Agreement. For purposes of this Agreement, the term "Agreement" shall include any SOWs.  In the event of any inconsistency between the terms of this Agreement and any SOWs, the provisions contained in this Agreement shall govern.

## Terms and Conditions Governing Engagement

***Our performance of the Services (whether provided pursuant to a written SOW or not) are subject to the following terms:***

1. **Payment Terms:**
   A.  We perform Services in consideration of your payment of our compensation. Our compensation for Services, such as professional fees, commissions or other amounts payable to us ("Compensation") is set forth in the applicable SOW or as otherwise agreed. In addition to our Compensation, we also bill monthly for our reasonable expenses incurred in the performance of the Services described and agreed to by the parties in the applicable SOW. You are responsible for any sales, value added taxes or similar taxes related to the performance or receipt of the Services, including those taxes assessed by authorities subsequent to payment for the Services, but excluding any taxes of our income or property.
   B.  Invoices are due and payable within thirty (30) days of the date of the invoice; subject, however, to applicable orders of and procedures established by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). If any undisputed invoice is not timely paid and remains unpaid ten (10) days following

Michael Bourgon
Tribune Company
Page 2

written notice of such delinquency, we may exercise our right to claim interest for late payment as permitted by applicable law; provided that during the pendency of Client's chapter 11 bankruptcy proceedings, any claim for interest shall not begin to accrue until after thirty (30) days from the date the invoice is approved to be paid by the Bankruptcy Court. If any undisputed invoice remains unpaid for longer than ninety (90) days from the date of the invoice and remains unpaid ten (10) days following written notice of such delinquency for any reason other than pending approval of the Bankruptcy Court, we may either suspend the provision of the Services until payment is received, or terminate this Agreement and/or any SOW with immediate effect.

C. If we become involved (whether or not as a party) in a dispute (including audits or investigations) between you and a third party (including a governmental entity), or if we are asked to preserve records relating to the Services or this Agreement, including where Mercer is requested to preserve documents, electronically stored information, back-up tapes or other media beyond its standard recycling or retention protocol, beyond the scope of Services described in the applicable SOW, these additional services will be documented in a SOW.

2. **Instructions; Provision of Information and Assistance:**
You will provide all necessary and reasonably requested information, direction and cooperation to enable us to provide the Services, and any direction (whether verbal or written) shall be effective if contained expressly in the applicable SOW or if received (whether verbally or in writing) from a person known to us or reasonably believed by us to be authorized to act on your behalf. You agree that we shall use all information and data supplied by you or on your behalf without independently verifying the accuracy, completeness or timeliness of it. We will not be responsible for any delays or liability to the extent arising from missing, delayed, incomplete, inaccurate or outdated information and data, or if you do not provide adequate access to your employees, agents or other representatives necessary for us to perform the Services.  In the event that it is necessary or appropriate to perform any additional Services as a result, we will obtain your prior approval before commencing such additional Services; provided that if you do not provide such prior approval, we shall not be obligated to perform such additional Services and we shall have no liability for the Services to the extent any Loss (as defined in Section 7 below) arises from or is related to the failure to perform such additional Services.

3. **Confidential Information; Data:**
A. Each of us is likely to disclose information ("Disclosing Party") to the other ("Receiving Party") from time to time in the course of the provision of the Services, which is marked or designated as confidential or proprietary at or prior to disclosure or which would appear to a reasonably prudent person to be confidential and/or proprietary in nature ("Confidential Information"). The Receiving Party will not disclose such Confidential Information to any person other than its employees, agents and advisors with a reasonable need to know in connection with the provision of the Services or as otherwise provided for in this Agreement. This restriction does not apply to information that (i) the Receiving Party must disclose by law or legal

Michael Bourgon
Tribune Company
Page 3

process, (ii) is either already in the public domain or enters the public domain through no fault of the Receiving Party, (iii) is available to the Receiving Party from a third party who, to the Receiving Party's knowledge, is not under any non-disclosure obligation to the Disclosing Party, or (iv) is independently developed by or for the Receiving Party without reference to any Confidential Information of the Disclosing Party.

B. Notwithstanding Section 3(A), you agree that we will be entitled to disclose information, including Confidential Information, relating to the Services or you to regulators having jurisdiction over our business. You also agree that, notwithstanding any other provision in this Agreement, we may include the identities of those persons who are identified by you as contact persons for you and information about the terms of this Agreement, the Services and the Compensation in our internal client management, financial and conflict checking databases.

C. Our respective obligations under Section 3(A) shall survive for a period of five (5) years from the date of termination of this Agreement or for such longer period as is required by law, except that any trade secrets disclosed to the Receiving Party shall be maintained in confidence in perpetuity or until such time as they are no longer reasonably considered to be trade secrets by the Disclosing Party.

D. Notwithstanding anything to the contrary in this Agreement, but subject to the terms and conditions of Section 3, we may (i) retain copies of Confidential Information that is required to be retained by law or regulation, (ii) retain copies of our work product that contain Confidential Information for archival purposes or to defend our work product and (iii) in accordance with legal, disaster recovery and records retention requirements, store such copies and derivative works in an archival format (e.g. tape backups), which may not be returned or destroyed. We may retain your information in paper or imaged format and we may destroy paper copies if we retain digital images thereof.

4. **Personal Information:**
Each of us and our respective Affiliates (as defined below) will comply with our respective obligations arising from data protection and privacy laws in effect from time to time to the extent applicable to this Agreement and the Services. This includes, without limitation, (i) the obligation, if any, of you or your Affiliates, to obtain any required consent(s) in respect of the transfer of information to us by you or any third party relating to an identified or identifiable individual that is subject to applicable data protection, privacy or other similar laws ("Personal Information"), (ii) any obligation with respect to the creation or collection of additional Personal Information by us, and (iii) any obligation with respect to the use, disclosure and transfer by us of Personal Information as necessary to perform the Services or as expressly permitted under this Agreement. Any use or processing by us of Personal Information supplied by or on your behalf in connection with the Services shall be done solely on your behalf. We shall handle such Personal Information in accordance with your reasonable instructions as may be provided from time to time in the applicable SOW or as reasonably necessary for the purpose of providing the Services and shall not handle such Personal Information in a manner inconsistent with the terms of this Agreement. We also confirm that we have

Michael Bourgon
Tribune Company
Page 4

taken appropriate technical and organizational measures intended to prevent the unauthorized or unlawful processing of Personal Information and the accidental loss or destruction of, or damage to, Personal Information. For purposes of this Agreement, "Affiliates" means, with respect to either Party, any entity directly or indirectly controlling, controlled by or under common control with such Party.

5.  **Ownership and Use of Work; Intellectual Property:**

    A.  All materials prepared by us specifically and exclusively for you pursuant to this Agreement (the "Work") shall be owned exclusively by you.  In addition, the data provided by you, including facts, figures, files, labels, lists, records reports, forms and other information concerning your employees or operations ("Client Data") shall be owned exclusively by you as between you and us.  Notwithstanding anything to the contrary set forth in this Agreement, we will retain all copyright, patent and other intellectual property rights in the methodologies, methods of analysis, ideas, concepts, know-how, models, tools, techniques, skills, knowledge and experience owned or possessed by us before the commencement of, or developed or acquired by us during or after, the performance of the Services, including without limitation, all systems, software, specifications, documentation and other materials created, owned or licensed and used by us or our Affiliates or subcontractors in the course of providing the Services (the "Intellectual Property"), and we shall not be restricted in any way with respect thereto to the extent that such Intellectual Property does not include Client Data or your Confidential Information. To the extent any Work incorporates any Intellectual Property; we hereby grant you a non-exclusive, non-transferable right to use such Intellectual Property solely for purposes of utilizing the Work internally in accordance with the terms of this Agreement.

    B.  Unless we provide our prior written consent, you will not use, in a manner other than as mutually contemplated when we were first retained by you to perform the applicable Services, or disclose to any third party, other than your attorneys, accountants or financial advisors with a need to know and who are bound by confidentiality obligations at least as restrictive as those contained in this Agreement, any Work or Intellectual Property or other material supplied by us under this Agreement, and you shall be responsible for, and we shall have no liability with respect to, modifications made by any person other than us to the Work, Intellectual Property or other work product provided to you by us. You will indemnify, defend and hold us and our Affiliates harmless in respect of any Loss (as defined in Section 7) to the extent incurred by us as a result of your breach of this obligation or any modifications made by any person other than us to the Work, Intellectual Property or other work product provided to you by us.

    C.  We will indemnify, defend and hold you and your Affiliates harmless in respect of any Loss incurred by you to the extent arising from a claim that the Services, Intellectual Property, or technology or material used by us in providing the Services infringes a patent, copyright, trademark, or other intellectual property or proprietary right of a third party. Mercer's indemnity obligations hereunder shall not apply to any claim for infringement or misappropriation of intellectual property rights to the extent any such infringement or misappropriation is caused by: (i) information or materials provided

Michael Bourgon
Tribune Company
Page 5

by Client or a third party other than Mercer's subcontractors, (ii) modifications made by Client or a third party other than Mercer's subcontractors to Services, Work, Intellectual Property or Mercer's other materials provided to Client in connection with the Services, or any parts thereof, or (iii) Client's use of Services, Work, Intellectual Property or such other materials or any parts thereof, in a manner inconsistent with the terms of this Agreement or the applicable SOW. If Services or Work become, or in Mercer's reasonable opinion is likely to become, the subject of a claim of infringement ("Infringing Material"), Mercer shall, at its expense and discretion, (a) procure for Client the right to continue using the Infringing Material; (b) modify or replace the Infringing Material with compatible, functionally equivalent, non-infringing material; or (c) if (a) or (b) are not reasonably practicable, Mercer shall refund an equitable portion of the fees paid for the Infringing Material which shall be Client's sole remedy for an infringement claim.

**6.  Dispute Resolution:**
  A.  Before commencing any action or proceeding with respect to any dispute between us arising out of or relating to any of our Services, the Parties shall first attempt to settle the dispute through consultation and negotiation in good faith and in a spirit of mutual cooperation. If the dispute is not resolved within five (5) business days, either of us may elect to escalate the resolution of such dispute by submitting the dispute in writing to senior executives from each of us who will promptly meet and confer in an effort to resolve the dispute. Each Party will identify such senior executive by notice to the other Party, and each Party may change its senior executive at any time thereafter by notice. Any mutually agreed decisions of the senior executives will be final and binding on both Parties. In the event the senior executives are unable to resolve any dispute within thirty (30) days after submission to them, either Party may then refer such dispute to mediation by a mutually acceptable mediator to be chosen by both Parties within forty-five (45) days after written notice by either Party demanding mediation. Neither Party may unreasonably withhold, delay or condition consent to the selection of a mediator. All communications and discussions in furtherance of this paragraph shall be treated as confidential settlement negotiations that are not subject to disclosure to any third party. The costs of the mediator shall be shared equally, but each Party shall pay its own attorney's fees.
  B.  Any dispute that is not resolved within six (6) months of the date of the initial demand for mediation by one of the Parties may then be submitted to a court of competent jurisdiction in accordance with the provisions of Section 10(J). Nothing in this Section 6 will prevent either of us from resorting to judicial proceedings at any time if interim equitable relief from a court is necessary to prevent serious and irreparable injury or damage to that Party.
  C.  ANY CLAIM, ACTION OR PROCEEDING IN ANY FORUM AGAINST A PARTY OR ANY OF ITS AFFILIATES WILL BE BARRED UNLESS THE OTHER PARTY INITIATES THE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THIS SECTION 6 WITHIN ONE YEAR OF THE DATE UPON WHICH THAT PARTY FIRST DISCOVERED THE ACT, ERROR OR OMISSION THAT IS THE BASIS FOR SUCH CLAIM, WHICHEVER DATE IS SOONER.

Michael Bourgon
Tribune Company
Page 6

**7. Limitation of Liability:**

A. The aggregate liability of Mercer, its Affiliates and any officer, director or employee of ours and our Affiliates ("Mercer Parties") to you, your Affiliates, officers, directors or employees or those of your Affiliates and any third party (including any benefit plan, its fiduciaries or any plan sponsor) for any and all Losses arising out of or relating to the provision of any Services at any time by any of the Mercer Parties shall not exceed the greater of two times the Compensation for the Services giving rise to such Loss and $100,000. Mercer shall have no liability for the acts or omissions of any third party (other than our subcontractors).

B. The aggregate liability of Client, its Affiliates and any officer, director or employee of Client's and its Affiliates to the Mercer Parties and any third party (including any benefit plan, its fiduciaries or any plan sponsor) for any and all Losses arising out of or relating to the provision of any Services at any time by any of the Mercer Parties or this Agreement shall not exceed the greater of two times the Compensation for the Services giving rise to such Loss and $100,000; provided that the foregoing limitation shall not apply to the obligation to pay the Compensation or other amounts due under Section 1 of this Agreement. Client shall have no liability for the acts or omissions of any third party (other than its representative).

C. In no event shall either Party or its Affiliates be liable in connection with this Agreement or the Services to the other Party, its Affiliates or any third party for any loss of profit or incidental, consequential, special, indirect, punitive or similar damages. The provisions of this Section 7 shall apply to the fullest extent permitted by law. Nothing in this Section 7 limiting the liability of a Party shall apply to (a) any liability that has been finally determined by a court to have been caused by a breach of confidentiality obligations under this Agreement or the fraud or gross negligence of such Party,  or (b) the indemnity obligations set forth in Section 5 of this Agreement.

D. For purposes of this Agreement "Loss" means damages, claims, liabilities, losses, awards, judgments, penalties, third party claims, interest, costs and expenses, including reasonable attorneys' fees, whether arising under any legal theory including, but not limited to claims sounding in tort (such as for negligence, misrepresentation or otherwise), contract (whether express or implied), by statute, or otherwise, claims seeking any kind of damages and claims seeking to apply any standard of liability such as negligence, statutory violation or otherwise. For the avoidance of doubt, multiple claims arising out of or based upon the same act, error or omission, or series of continuous, interrelated or repeated acts, errors or omissions shall be considered a single Loss. Each of the Parties acknowledges that the Compensation for the Services to be provided under this Agreement and the applicable SOW reflects the allocation of risk set forth in this Section 7.

**8. Unforeseen Events:**

Neither Party shall be liable for delays or failures in performance of obligations under this Agreement, to the extent resulting from events beyond its reasonable control, including without limitation "acts of God," fire, flood, riots, new laws which prevent the carrying out

Michael Bourgon
Tribune Company
Page 7

of the Services, the results of terrorist activity, failures of third party suppliers, and
electronic and other power failures.

9.  **Duration and Termination of this Agreement:**
This Agreement will continue until terminated as provided in this Section, except as
provided otherwise in a SOW. This Agreement and any SOW may be terminated (i) by
you upon thirty (30) days' prior written notice to us, or by us upon ninety (90) days' prior
written notice to you, (ii) by either Party upon material breach by the other Party, which
breach is not cured within thirty (30) days after receipt of written notice thereof, or (iii)
immediately by us for non-payment of invoices by you  beyond any applicable cure
period as provided under Section 1. After the termination of this Agreement, Sections 3,
4, 5, 6, 7, 9 and 10 will survive in full force and effect. Any termination of this Agreement
shall not relieve you or your Affiliates of their obligations to pay for Services rendered
and expenses incurred by us or our Affiliates in accordance with this Agreement and
applicable SOW up to and including the effective date of such termination, and such
termination may require you to pay termination fees to the extent provided in a mutually
executed  SOW. Notwithstanding the foregoing, to the extent that the Parties agree that
Mercer shall continue to provide Services after the effective date of termination of this
Agreement or any SOW, the terms and conditions of this Agreement and the applicable
SOW shall survive until such Services are completed or the Parties agree that the
Services shall no longer be provided.

10. **Additional Terms:**
   A.  ***Terms Incorporated by Reference; Excluded Services*** - The provision of Services
       (whether or not under any SOW) shall be considered to be provided under and
       subject to the terms of this Agreement and the terms set forth in any SOW shall be
       deemed incorporated by reference into this Agreement for purposes of that SOW.
       For purposes of this Agreement, the term "Excluded Services" means outsourcing
       and/or benefit administration services; investment management services; advice or
       counsel relating to executive remuneration services to the compensation committee
       of the Board of Directors; mergers and acquisitions related services (unless
       otherwise set forth in a SOW attached to this Agreement); services related to the
       use, support or development of our proprietary software, databases, information
       systems or other intellectual property; advice and counsel to trustees of Client
       Group-sponsored pension schemes or plans in countries outside the United States
       where it is necessary to contract directly with the trustees or pension boards or other
       similar persons or entities to avoid conflicts of interest or as required by law.
       Without limiting the foregoing, it is expressly understood between the Parties that
       Excluded Services include all services Mercer performs as compensation consultant
       for Client, pursuant to the Parties' March 3, 2009 engagement letter, as amended,
       and approved by the order entered by the Bankruptcy Court on May 12, 2009
       approving Mercer's engagement for such services. The Parties understand and
       agree that Excluded Services are provided under separate agreements that are
       specific to those particular services.

Michael Bourgon
Tribune Company
Page 8

B. ***Notices -*** Any notice that is to be given by one Party to the other under this Agreement will be given in writing and delivered to, Tony Mateja, Mercer Health & Benefits, 155 North Wacker, Suite 1500, Chicago, Illinois 60606 with a copy to the Legal Department, Mercer, 1166 Avenue of the Americas, New York, New York 10036 if to Mercer or Michael Bourgon, Vice President, Human Resources with a copy to General Counsel, The Tribune Company, 435 North Michigan Avenue, Chicago, Illinois 60611 if to Client, or any other address specified by notice subsequently by one Party to the other. A notice will be effective upon receipt.

C. ***No Third Party Beneficiaries -*** Neither this Agreement nor the provision of the Services is intended to confer any right or benefit on any third party, other than the Affiliates of each Party that execute a SOW, and, in such event, solely as set forth in such SOW and this Agreement. The provision of Services under this Agreement cannot reasonably be relied upon by any third party.

D. ***No Publicity -*** You agree not to refer to us or attribute any information to us in the press (including for the purposes of advertising or promotion, or for the purpose of informing or influencing any other party, including the investment community), without our prior written consent. We agree not to refer to you in the press or for promotional purposes without your prior written consent, provided that we may include your name in our representative client listing.

E. ***Waiver -*** The failure by either Party to insist upon strict performance of any provision of this Agreement shall in no way constitute a waiver of rights under this Agreement, at law or in equity.

F. ***WAIVER OF JURY TRIAL -*** EACH PARTY, ON BEHALF OF ITSELF AND ITS AFFILIATES, TO THE FULLEST EXTENT PERMITTED BY LAW, KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVES ITS RIGHT TO A TRIAL BY JURY IN ANY ACTION OR OTHER LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY SERVICES PROVIDED BY MERCER OR ITS AFFILIATES. THE WAIVER APPLIES TO ANY ACTION OR LEGAL PROCEEDING, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. EACH PARTY AGREES NOT TO INCLUDE ANY EMPLOYEE, OFFICER, DIRECTOR OR TRUSTEE OF THE OTHER AS A PARTY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO SUCH DISPUTE.

G. ***Warranties of Mercer –*** We warrant that we will perform Services hereunder in good faith and in a professional manner consistent with generally accepted industry standards for the performance of such Services as then in effect.  Except as expressly set forth in this Agreement, we expressly disclaim any warranty, express or implied, including but not limited to any implied warranty of merchantability and fitness for a particular purpose.

H. ***Entire Agreement -*** This Agreement is the complete, entire and fully integrated agreement between the Parties except with respect to the Excluded Services.  This Agreement (including any SOW and any schedules or exhibits attached hereunder) supersedes, revokes, cancels, extinguishes and replaces all prior or contemporaneous understandings, agreements, undertakings, negotiations and discussions, whether oral or written, between the Parties except with respect to the Excluded Services.  The Parties agree that, except for the obligations under this

Michael Bourgon
Tribune Company
Page 9

Agreement, they have no obligations to one another and have not relied upon any promises, representations, warranties, agreements, covenants or undertakings, other than those expressly set forth in this Agreement. Because the Parties are of equal commercial sophistication in negotiating contracts and have negotiated this Agreement at arms length, it shall not be construed for or against any Party.  Each Party is entering into this Agreement voluntarily, has read and understands all provisions of this Agreement and has had the opportunity to seek and obtain the advice of counsel on its rights and responsibilities under, and the terms and conditions of, this Agreement.

I.   *Amendment, Assignment, Subcontracting -* Except with respect to a change in address for notices, this Agreement shall not be amended except by a written document executed by both of us. In the event of any inconsistency between the terms of a SOW and those in the Agreement, the provisions contained in this Agreement shall prevail unless the SOW specifically amends a term contained herein. Neither of us may assign this Agreement without the prior written consent of the other, except that we may assign this Agreement to an Affiliate with reasonable prior written notice to you; provided any such assignment shall not release us from our obligations hereunder. We may subcontract with any of our Affiliates upon reasonable prior written notice to you, and we may subcontract with third parties with your prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

J.   *Governing Law and Jurisdiction -* Any and all actions or proceedings arising out of, or relating to this Agreement, any Services provided up to this date or any and all SOWs will be governed by, and interpreted in accordance with, the law of the State of New York; provided, however, that prior to the effective date of a plan of reorganization for Tribune in its chapter 11 case, exclusive jurisdiction for all matters referred to in this paragraph shall be in the Bankruptcy Court.  Each Party agrees that service of process in any such action or proceeding may be properly made by first class mail in accordance with the notice provisions in Section 10(B) above.

K.   *Severability –* It is the intent of the Parties that the provisions of this Agreement shall be enforced to the fullest extent permitted by applicable law. To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified, deleted or interpreted in such a manner so as to afford the Party for whose benefit it was intended the fullest benefit commensurate with making this Agreement as modified, enforceable and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.

L.   *Advice on Legal Matters -* We are not engaged in the practice of law and the Services provided hereunder, which may include commenting on legal issues or drafting documents, do not constitute and are not a substitute for legal advice. Accordingly, we recommend that you secure the advice of competent legal counsel with respect to any legal matters related to the Services or otherwise.

M.   *Counterparts -* This Agreement may be executed and delivered (including by facsimile or a scanned PDF version) in one or more counterparts, each of which

Michael Bourgon
Tribune Company
Page 10

    when executed shall be deemed an original, but all of which taken together shall
    constitute one and the same agreement.

N.  *Authority –* The Parties hereby represent and warrant that their respective
    signatories below have full legal authority to enter into this Agreement and each of its
    terms on their behalf.

O.  *Retention As Ordinary Course Professional -* Upon execution of this Agreement,
    Client will promptly supplement the list (the "*List*") of Ordinary Course Professionals,
    as defined in the *Order Authorizing the Debtors to Retain, Employ and Compensate
    Certain Professionals Utilized in the Ordinary Course of Business* (the "Ordinary
    Course Professionals Order") entered in the Bankruptcy Court on January 15, 2009
    in order to add Mercer to the List.  Mercer will promptly file its Affidavit of Ordinary
    Course Professional as required by the Ordinary Course Professionals Order.
    Should Mercer's monthly services to Client exceed the Monthly Cap as defined in the
    Ordinary Course Professionals Order and as set forth in the supplement to the List of
    Ordinary Course Professionals – thereby requiring Mercer to seek approval in the
    Bankruptcy Court of Mercer's fees and expenses incurred for the applicable month –
    Client agrees that all reasonable legal fees and expenses incurred by Mercer as a
    result of seeking such approval from the Bankruptcy Court shall be reimbursable to
    Mercer as an expense to the extent that reimbursement for such fees and expenses
    is approved by the Bankruptcy Court.

If you have any questions about these terms and conditions, please do not hesitate to call
me. If not, please indicate your agreement to the terms of this Agreement by signing the
enclosed copy of this Agreement and SOW, if applicable, and returning it to us.

## Mercer Health & Benefits, LLC

By: _Anthony M. Mateja_ _____

Name: _Anthony M. Mateja _____      Date: _November  4, 2011_
     (Please Print)

Title: _Principal_____

ACCEPTED AND AGREED

## Tribune Company

By: _Michael Bourgon_____
Name: _Michael Bourgon_____      Date: _11/7/2011__
     (Please Print)

Title: _Vice President, Human Resources_____

**EXHIBIT 2 – LIST OF INTERESTED PARTIES WITH WHICH
MERCER H&B HAS A CONNECTION**

## DEBTORS

Tribune Company
Distribution Systems of America, Inc.
Forum Publishing Group, Inc.
Los Angeles Times Communications LLC
Los Angeles Times International, Ltd.
Los Angeles Times Newspapers, Inc.
Sun-Sentinel Company
The Baltimore Sun Company
TMS Entertainment Guides, Inc.
Tribune Publishing Company

## THIRTY LARGEST UNSECURED
## CREDITORS (CONSOLIDATED)

Abitibi Consolidated
Barclays Capital
Bowater Inc.
Deutsche Bank National Trust Company
J.P. Morgan Chase Bank, N.A.
Merrill Lynch Capital Corporation
 NBC Universal Domestic Television
 Nielsen Media Research
 Paramount Pictures Corporation
 Sony Pictures Television
 SP Newsprint Company
 Warner Brothers Television

## CNLBC TWENTY LARGEST
## UNSECURED CREDITORS

 Bunzl
 Chicago Transit Authority
 JP Morgan Chase Bank, NA
Major League Baseball
 Merrill Lynch Capital Corporation
 Northwestern Memorial Hospital

## DEBTORS' PREPETITION LENDERS

ABN AMRO Holding NV
ABP Investments US Inc.
Aegon USA Investment Management
AIG Global Investment Corp.
Aladdin Capital Management LLC

Allstate Investment Management Company
Angelo Gordon & Co LP
Babson Capital Management LLC
Bank of America N.A.
Barclays Bank plc
Bear Stearns & Co., Inc
Bear Stearns Asset Management
Blue Mountain Capital Management LLC
Callidus Capital Management LLC
Canadian Imperial Bank of Commerce
Canyon Capital Advisors LLC
Capitalsource Finance LLC
Carlyle Investment Management LLC
Carval Investors LLC
CIT Group Incorporated
Citicorp North America Inc.
Citigroup Financial Products Inc.
Credit Suisse Asset Management
Credit Suisse Group AG
Davidson Kempner Capital Management LLC
Deutsche Bank AG
Deutsche Investment Management Americas
Inc.
Eaton Vance Mgmt
Farallon Capital Management LLC
Fidelity Investment/Fidelity Mutual Fund
Comp
Fidelity Investments
Franklin Templeton Inv Mgmt Ltd
Fraser Sullivan Investment Management LLC
GE Asset Management Inc.
General Electric Capital Corporation
Goldman Sachs Asset Management LP
Goldman Sachs Group Inc.
Greywolf Capital Management LP
GSO Capital Partners  LP
Harbert Management Corporation
Hartford Investment Management Company
Highland Capital Management LP
John Hancock A/C 62 JH High Yield Fund
(99140)
John Hancock Financial Services Inc.
JP Morgan BK Branch - 0802
JP Morgan Chase Bank, N.A.
Lehman Brothers Commercial Bank
Lehman Brothers Holdings Inc.
Littlejohn & Company

Marathon Asset Management LLC
Massachusetts Financial Services Company
Merrill Lynch & Co. Inc.
Metropolitan Life Insurance Company
Metropolitan West Asset Management LLC
Moore Capital Management LLC
Morgan Stanley
Morgan Stanley Investment Co Niston BV
Morgan Stanley Investment Management
Garda BV
Morgan Stanley Investment Management Inc.
as AgtINCAS AGT
Morgan Stanley Investment Management
Mezzano B V
MSD Capital LP
National City Corporation
New York Life Insurance Company
New York Life Investment Management
Nicholas-Applegate Capital Management LLC
Oaktree Capital Management LP
Oppenheimer Funds Inc
OZ Management LP
Patriarch Partners LLC
Pioneer Investment Management Inc.
PPM America Incorporated
Prudential Investment Management Inc
Putnam Investment Management LLC
Quadrangle Group LLC
Rabobank Int'l
Renaissance Reinsurance Limited
Riversource Investments LLC
Sankaty Advisors Bain Capital
Scotia Capital Inc.
Societe Generale
Stichting Pensioenfonds ABP – Portfolio 1211
Strategic Value Partners LLC
Sumitomo Mitsui Banking Corporation
Swiss Reinsurance Company Ltd.
Taconic Capital Advisors LLC
Trimaran Advr LLC
UBS AG
UBS O'Connor LLC
Varde Partners Inc.
Wachovia Bank National Association
Wells Capital Management Incorporated
Wells Fargo Foothill Inc.
Western Asset Management
WestLB AG
Wilmington Trust Company – Delaware
York Capital Management

## COUNTERPARTIES TO HEDGING AGREEMENTS

Barclays Capital

## AGENTS UNDER CREDIT AGREEMENTS

BANC OF AMERICA SECURITIES LLC
BANK OF AMERICA, N.A.
BARCLAYS BANK PLC
CITICORP NORTH AMERICA, INC.
JPMORGAN CHASE BANK, N.A.
JPMORGAN SECURITIES, INC.
MERRILL LYNCH CAPITAL
CORPORATION
MERRILL, LYNCH, PIERCE, FENNER &
SMITH, INC.

## FORMER INDENTURE TRUSTEES

Bank of New York
Citibank, N.A.
First Interstate Bank of California
Wells Fargo Bank, N.A.
Wilmington Trust Company

## PROFESSIONALS RETAINED BY PREPETITION LENDERS

Davis Polk & Wardwell
Richards, Layton & Finger, P.A.
FTI Consulting
Kramer Levin Naftalis & Frankel LLP
Blackstone Advisory Services, L.P.

## PROFESSIONALS RETAINED BY POSTPETITION LENDERS

Mayer Brown LLP

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS

J.P. Morgan Chase Bank, N.A.
Warner Brothers Television
Pension Benefit Guaranty Corporation
Merrill Lynch Capital Corporation

Vertis, Inc.
Washington-Baltimore Newspaper Guild
Deutsche Bank Trust Company Americas
Wilmington Trust Company

### PROFESSIONALS RETAINED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS

AlixPartners, LLP
Zuckerman Spaeder LLP

### PROFESSIONALS RETAINED BY THE DEBTORS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS

Deloitte & Touche LLP
Daniel J. Edelman, Inc.
EPIQ Bankruptcy Solutions, LLC
Ernst & Young
Jenner & Block LLP
Jones Day
Lazard Freres & Co.
McDermott Will & Emery LLP
Mercer (US) Inc.
PricewaterhouseCoopers LLP
Reed Smith LLP
Sidley Austin LLP

### INSURANCE CARRIERS

Chubb Atlantic Indemnity Ltd.
FM Global
Global Aerospace
The Hartford Insurance Group
Lexington Insurance Company
Lloyd's
Multimedia Insurance Company
St. Paul Fire & Marine Insurance Company (Travelers)
Scottsdale GL
XL Insurance (Bermuda) Ltd.
Zurich American Insurance Company

### DEBTORS' MAJOR CUSTOMERS

American Express Co
Anheuser Busch
AT&T
Bank of America

Cablevision
Carmax
Carnival Corp.
Circuit City
Citigroup
Comcast
Comcast Cable
Corinthian Schools
Countrywide Financial
CP Chrysler Factory
CP Dodge Dealer Association
CP Jeep/Eagle Dealer Association
Dell
Disney – Buena Vista
Domino's Pizza
Dunkin Donuts
Empire Home Services
Everest College
Foodmaker/Jack in the Box
Ford
Ford Dealer Associations
Ford Mazda Factory
GE – Vivendi Universal
GEICO
General Mills
General Motors
Glaxo Smith Kline Beecham Welcome
GM Chevy Dealer Associations
GM Chevy Factors
GM General Motors Corp
Honda Acura Factory
Honda Dealer Associations
Honda Factory
Hyundai Dealer Associations
Issue Advertising – Political
ITT Educational Services
Johnson & Johnson
Kent Advertising
Kia Factory Motors
Kraft General Foods
Liberty Travel
Lincoln Technical Institute
Lowe's – Home Improvement
Maximum Coverage Media – Euro RSCG
McDonalds – McDonald's
Metro Cable
News America Publ'g FSI
News Corp
News Corp – 20th Century Fox – Home - Theatrical

Nissan Dealer Associations
Nissan Factory
Nissan Infiniti Factory
Pepsi – Pepsi Cola Various
Pfizer
Procter & Gamble – P&G
Program Buy-Miscellaneous
Progressive Insurance
Qwest Communications
Raymour & Flanigan
Reckitt Benckiser
Six Flags Great America Parks
Sony Entertainment – Pictures – Columbia
Tristar
Southwest Airlines
Sprint/Nextel
Subway
Target Stores
T-Mobile
T-Mobile/Voice Stream
Toyota Dealer Associations
Toyota Lexus Dealer Associations
Toyota Local Dealers
TW New Line Cinema – Home Video
TW Time Warner
TW Warner Brothers
TW Warner Communications
U.S. Cellular
Verizon Wireless
Verizon Wireless – Cellular
Viacom – Paramount
Volkswagen Factory
Wachovia Bank
Washington Mutual
Washington Mutual
Westwood College
White Castle
Yum Brands – Kentucky Fried Chicken
Yum Brands – Pizza Hut
Yum Brands – Taco Bell

## PARTIES TO SIGNIFICANT LITIGATION WITH THE DEBTORS

CBS Broadcasting Inc.
CBS Radio Inc.

## DEBTORS' SIGNIFICANT LANDLORDS

Catellus Development Corporation
Forest Lawn Cemetery Association
Majestic Realty Co. and Yorba Linda Sub, LLC
Wells Fargo Bank, N.A.

## SIGNIFICANT FORMER SHAREHOLDERS

Robert R. McCormick Tribune Foundation

## COUNTERPARTIES TO RECENT SIGNIFICANT ASSET DISPOSITIONS

FREEDOM COMMUNICATIONS, INC.
GANNETT CO., INC.
HEARST CORPORATION
SUNBEAM TELEVISION CORPORATION

## JOINT VENTURE PARTNERS

GANNETT CO., INC.
THE MCCLATCHY CO., INC.
MEDIANEWS GROUP, INC.
MICROSOFT CORPORATION

## OTHER

EQUITY GROUP INVESTMENTS LLC

## EQUITY METHOD INVESTMENTS

CAREERBUILDER, LLC

## COUNTERPARTIES TO FORMATION AGREEMENT

RAC Education Trust OSA, LLC
Ricketts Acquisition LLC
Tribune Company
Wrigley Field Premium Ticket Services, LLC