# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## STATUS REPORT IN CONNECTION WITH THE FILING OF THE THIRD AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P. AND JPMORGAN CHASE BANK, N.A.

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] submit this status report (the "Status Report") in advance of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DCL Plan.

Court's requested status hearing on plan confirmation matters that is scheduled for November 22, 2011 and in connection with the filing of the Third Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Third Amended DCL Plan", and together with each of the prior versions of such plan, collectively, the "DCL Plan") and certain related documents. The Third Amended DCL Plan is intended to comport with the Court's recently-issued confirmation opinion [Docket No. 10133] (the "Confirmation Opinion") by remedying the obstacles to confirmation of the Second Amended DCL Plan identified by the Court, thus providing a fair and efficient basis for speedy confirmation of the DCL Plan and a clear path for the Debtors to exit from bankruptcy as quickly as possible, while still ensuring that the rights of creditors to be heard regarding the Allocation Disputes (as defined and described below) are protected. In an effort to work cooperatively with parties in interest to facilitate a rapid emergence, the Debtors and the other DCL Plan Proponents[3] provided a description of the Third Amended DCL Plan to counsel for the Noteholder Plan Proponents and certain other large Holders of Senior Noteholder Claims prior to its filing.

## Objectives of the DCL Plan Proponents

December 8, 2011 will be the third anniversary of the filing of the Debtors' bankruptcy cases. The Debtors have been in bankruptcy too long and, as the Court admonished, "…must promptly find an exit door to this chapter 11 proceeding" (Confirmation Opinion at 125). In its Confirmation Opinion, the Court found that the DCL Plan, with certain modifications, could be that exit door. The DCL Plan Proponents have therefore taken the

---

[3] The "DCL Plan Proponents" are the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.

Court's admonition to heart and have amended the DCL Plan to eliminate the remaining obstacles to confirmation. Perhaps most importantly, the Third Amended DCL Plan incorporates a protocol for resolution of the few remaining disputes arising from differing interpretations of the Confirmation Opinion in a manner that will not threaten or delay confirmation. Although the Court is free to resolve the remaining disputes on whatever schedule it deems appropriate, if those disputes cannot be resolved before emergence, the Third Amended DCL Plan includes a reserve mechanism that will allow the Debtors to emerge, with the few unresolved disputes to be adjudicated or settled after emergence. To that end, the Debtors have filed a motion for approval of solicitation procedures and related relief requesting a confirmation hearing on the Third Amended DCL Plan in the first week of February. The DCL Plan Proponents believe that the amended DCL Plan provides a fair and efficient path to emergence, is in the best interest of the Debtors, their estates and their creditors and fully honors the Court's ruling in its Confirmation Opinion.

## **The Confirmation Opinion**

The Confirmation Opinion approved as "fair, reasonable, and in the best interest of the Debtors' estates" the proposed settlements of certain LBO-Related Causes of Action embodied in the DCL Plan (the "Plan Settlements") and overruled the vast majority of objections to the DCL Plan. The Confirmation Opinion also, however, identified several discrete issues that precluded confirmation of the Second Amended DCL Plan then under consideration. Specifically, the Court determined that:

- the releases in Section 11.2.1 were too broad in their inclusion of certain parties, such that the inclusion of those parties was not "fair and equitable;"
- the exculpation provision in Section 11.5 must be limited to estate fiduciaries;

3

- to ensure fairness in the implementation of the Bar Order, its language must be revised to enjoin directly any actions by the Potential Plaintiffs that do not conform to the terms of the Bar Order;
- the DCL Plan had not been accepted by an impaired class at the various Debtors for which no votes were cast and hence did not comply with the requirements of section 1129(a)(10) of the Bankruptcy Code;
- the DCL Plan Proponents had not made a sufficiently clear record to enable the Court to conclude that the effects of providing the benefit of subordination rights (as against the PHONES Notes) under the DCL Plan to all Other Parent Claims, rather than to the Senior Notes only, is fair or appropriately enforces the terms of the PHONES Notes subordination provisions in accordance with section 510(a) of the Bankruptcy Code; and
- the DCL Plan unfairly applied the PHONES Notes subordination provisions to the distributions of proceeds of certain avoidance actions to be prosecuted by the Litigation Trust.

## **Proposed Plan Amendments**

The DCL Plan Proponents have made specific modifications to the Second Amended DCL Plan to address the issues identified in the Confirmation Opinion as preventing confirmation of the DCL Plan. Attached hereto as Exhibit A, is a chart (the "Plan Amendment Chart") that sets forth certain findings of fact and conclusions of law in the Confirmation Opinion and describes the relevant amendments to the DCL Plan that address and implement those findings and conclusions. Those changes also are summarized below:

### *Releases and Exculpation*

Issues concerning the scope of releases and exculpation under the DCL Plan are addressed with straightforward revisions to the relevant plan provisions. Specifically, the DCL Plan has been amended as follows: (i) Section 11.2.1 has been amended to provide that the releases therein are granted by the Debtors only, (ii) the definition of "Released Parties" set forth in Section 1.1.205 has been amended to exclude the Debtors' "Related Persons," (iii) the releases in favor of 401(k) Stockholders and Current Employees have been eliminated by amending the definition of "Released Stockholder Parties" set forth in Section 1.1.206, and (iv) the exculpation

provision set forth in Section 11.5 has been amended to exclude parties who are not estate fiduciaries.

### *Bar Order*

The Bar Order has been amended in accordance with the Court's ruling, to include the following language "ORDERED that each Plaintiff is hereby enjoined and restrained from seeking relief or collecting judgments against any Non-Settling Defendants in any manner that fails to conform to the terms of this Bar Order, including, without limitation, the proportionate judgment reduction provision set forth herein . . . ."

### *Accepting Impaired Class*

With respect to compliance with section 1129(a)(10) of the Bankruptcy Code, the Court noted that "'deemed acceptance' by a non-voting impaired class, in the absence of objection, [may] constitute the necessary 'consent' to a proposed 'per plan' scheme." Based on the Court's ruling, Holders of Claims in Impaired Classes as to which no votes previously were cast will be given an additional opportunity to vote to accept or reject the DCL Plan, and will be explicitly notified in a Supplemental Disclosure Document and on their Ballots that a failure to vote will result in deemed acceptance of the Plan. Section 4.2 of the DCL Plan, entitled "Acceptance by an Impaired Class of Claims," has been amended to provide that if no Holders of Claims in an Impaired Class vote to accept or reject the DCL Plan, such Class shall be deemed to have accepted the DCL Plan. In addition, the DCL Proponents have amended Section 4.6.3 of the DCL Plan to clarify that if section 1129(a)(10) is not satisfied as to a given Debtor notwithstanding the foregoing, they may remove a particular Debtor from the DCL Plan, enabling emergence of the other Debtors.

### *PHONES Subordination and Implementation of Allocation Dispute Protocol*

The final plan amendments relate to certain disputes regarding the subordination provisions of the PHONES Notes Indenture and the EGI-TRB LLC Notes subordination agreement. In the Confirmation Opinion, the Court found that the DCL Plan unfairly applied the PHONES Notes subordination provisions to the future distribution of proceeds of certain avoidance actions to be pursued by the Litigation Trust. In light of that finding, certain parties have asserted that, in addition to future avoidance action proceeds, a material portion of the Plan Settlement consideration should also not be subject either to the PHONES Notes subordination provisions or the subordination provisions of the EGI-TRB LLC Notes subordination agreement, and that distributions under the DCL Plan itself thus must be reallocated to Holders of PHONES Notes Claims and EGI-TRB LLC Notes Claims. Such parties may seek a judicial adjudication of this issue if necessary. Other parties have recently taken the opposite position. On November 14, 2011, Aurelius Capital Management, LP, and Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas filed separate motions requesting that the Court reconsider the Confirmation Opinion as it pertains to the application of the subordination provisions contained in the PHONES Notes Indenture, arguing that the subordination provisions, properly read, in fact apply to all distributions regardless of their source.[4]

Parties in interest have also taken conflicting positions on whether the DCL Plan unfairly discriminated against the Senior Noteholders by applying the PHONES Notes subordination provisions so as to give holders of Other Parent Claims ratable distributions comparable to the distributions made to Holders of Senior Noteholder Claims. The Court held in the Confirmation Opinion that, because the record was unclear, it "[could not] conclude that the

---

[4] See D.I. 10222, 10223, 10225-10228, 10238; copies of which have been provided to the Court.

[Second Amended] Plan's treatment is fair or appropriately enforces the terms of the subordination agreements in accordance with Bankruptcy Code §510(a)" with respect to distributions to Holders of Other Parent Claims. In the Confirmation Opinion, however, the Court also approved as reasonable the Retiree Settlement that served as the baseline for a material proportion of the recoveries of Holders of Other Parent Claims and did not identify these distributions as an impediment to confirmation of the DCL Plan.

Other than with respect to the priority of Litigation Trust distributions, as to which the Court explicitly determined that the PHONES Notes' subordination provision would not apply in respect of proceeds of Chapter 5 causes of action, the Third Amended DCL Plan generally provides creditors the same distributions as the Second Amended DCL Plan. Because arguments for different allocations of those distributions have been raised, however, and given the necessity of a prompt emergence, the Third Amended DCL Plan has been modified to implement an "Allocation Dispute Protocol" for resolution of the various allocation issues.

The Allocation Dispute Protocol expressly contemplates and provides that the Court can modify distributions to the Holders of Other Parent Claims and Senior Noteholder Claims, and the priority of distributions from the Litigation Trust and/or Creditors' Trust, if it concludes it is necessary to do so to ensure that the DCL Plan satisfies the requirements of the Bankruptcy Code based on the adjudication or approved settlement of the various disputes related to subordination and turnover as among the various non-Senior Lender parent company creditor classes (the "Allocation Disputes"). If, for example, any of the Allocation Disputes are not resolved prior to the Effective Date, the Allocation Dispute Protocol provides that the Holders of Senior Noteholder Claims, Other Parent Claims, PHONES Notes Claims and EGI-TRB LLC Notes Claims will receive only those distributions to which they would be entitled were the

remaining unresolved Allocation Disputes resolved in a manner adverse to them, with the balance of the consideration payable to such Holders reserved for distribution upon resolution of the remaining Allocation Disputes. The DCL Plan Proponents estimate that the maximum size of this reserve would be approximately $215 million if no Allocation Disputes were resolved as of the date of emergence.

Through the Allocation Dispute Protocol the Third Amended DCL Plan therefore provides a speedy path to emergence while still ensuring that the rights of creditors to be heard regarding the Allocation Disputes are protected. The DCL Plan Proponents believe that this approach is appropriate and in keeping with the Confirmation Opinion and the narrow impediments to confirmation identified therein. In connection with confirmation of the DCL Plan, further evidence and arguments in support of the distributions set forth in the Third Amended DCL Plan will be presented.

## Timing and Process

Concurrently with the filing of this Status Report, the DCL Plan Proponents are filing the Third Amended DCL Plan, and the Debtors are filing a Supplemental Disclosure Document Relating to the Third Amended DCL Plan (the "Supplemental Disclosure Document") and a motion (the "Procedures Motion") seeking the following broad categories of relief: approval of the Supplemental Disclosure Document, approval of procedures for resoliciting votes and elections from Holders of Claims in certain Classes, affirmation that the prior votes and elections of Holders of Claims in certain other Classes will be counted as votes and elections on the Third Amended DCL Plan, and scheduling the confirmation hearing and related deadlines.[5] The

---

[5] The DCL Plan Proponents intend to resolicit votes from Holders of Other Parent Claims, Senior Noteholder Claims, EGI-TRB LLC Notes Claims, PHONES Notes Claims and General Unsecured Claims against Non-Guarantor Debtors for which no votes were cast.

Debtors propose that the Procedures Motion be heard on December 13, 2011. The Procedures Motion contemplates, among other things, a supplemental Voting Deadline of January 20, 2012 to be followed by a Confirmation Hearing during the first week of February 2012, subject to the Court's availability. As set forth in the Procedures Motion, the Debtors believe their proposed timeline provides Holders of Claims entitled to revote on the DCL Plan adequate time to make an informed decision whether to accept or reject the Third Amended DCL Plan, while permitting the Debtors to proceed expeditiously toward confirmation.

## Conclusion

The Court has very appropriately urged the parties to devise a fast and sure path to exit bankruptcy. The Debtors and the other DCL Plan Proponents have taken the Court's words to heart and have modified the DCL Plan to address the discrete barriers to confirmation identified in the Confirmation Opinion. The Third Amended DCL Plan, through the Allocation Dispute Protocol, will allow all parties to be heard regarding the Allocation Disputes, while preventing those disputes from jeopardizing the first and foremost goal of all parties in interest: a prompt resolution of these cases and emergence from bankruptcy protection.

46429/0001-8083015v1

Dated: Wilmington, Delaware
November 18, 2011

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312 853-7000
Facsimile: (312) 853-7036

– and –

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

*/s/ Patrick Reilley*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

*Counsel for Debtors and Debtors In Possession*

10

46429/0001-8083015v1