# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: December 13, 2011 at 1:00 p.m. ET**<br>**Objection Deadline: December 6, 2011 at 4:00 p.m. ET** |

## MOTION OF DEBTORS FOR ORDER (I) APPROVING SUPPLEMENTAL DISCLOSURE DOCUMENT; (II) ESTABLISHING SCOPE, FORMS, PROCEDURES, AND DEADLINES FOR RESOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT DCL PLAN FROM CERTAIN CLASSES; (III) AUTHORIZING TABULATION OF PRIOR VOTES AND ELECTIONS ON DCL PLAN MADE BY HOLDERS OF CLAIMS IN NON-RESOLICITED CLASSES; (IV) SCHEDULING THE CONFIRMATION HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT THEREOF; AND (V) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"),[2] by and through their undersigned counsel, hereby move this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(the "Motion") pursuant to sections 105(a), 1125, 1126, 1127, 1128, and 1129 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002, 3003, 3017, 3018, 3019, and 3020

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") and other applicable law, for entry of an order in

furtherance of the efforts of the Debtors, the Official Committee of Unsecured Creditors, Oaktree

Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the

"DCL Plan Proponents") to achieve confirmation of the Third Amended Joint Plan of

Reorganization for Tribune Company and Its Subsidiaries proposed by the DCL Plan

Proponents, which was filed with the Court on November 18, 2011 [Docket No. 10273] (the

"Third Amended DCL Plan", and together with each of the prior versions of such plan,

collectively, the "DCL Plan").[3]

  This Motion seeks four categories of relief in furtherance of the DCL Plan

Proponents' requested consideration of confirmation of the DCL Plan in the first week of

February 2012 (or as soon thereafter as is practicable) and an expeditious resolution of the

Debtors' Chapter 11 Cases:

  (i) Approval of a supplemental disclosure document (the "Supplemental Disclosure Document"), to be distributed to the Holders of Claims in Classes whose votes on and elections under the DCL Plan are being resolicited for the purposes of the Third Amended DCL Plan (as described herein, collectively, the "Revoting Classes"), which describes the modifications to the DCL Plan reflected in the Third Amended DCL Plan made following the Court's Confirmation Opinion (as defined below);

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Third Amended DCL Plan.

[3] See 11 U.S.C. § 1127(a) ("After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan."). References herein to the Third Amended DCL Plan and the Second Amended DCL Plan are intended to distinguish among the versions of the DCL Plan that have been distributed to creditors for the purpose of soliciting votes to accept or reject the DCL Plan, and are not intended to suggest that such plans are anything other than different versions of the same Plan.

(ii)     Authorization to resolicit votes on and applicable elections under the DCL Plan from the Revoting Classes, which consist of: (a) the Holders of Claims in the four (4) Classes of Claims at Tribune Company ("Tribune") whose distributions may be affected by the resolution of the Allocation Disputes (as defined below), which Classes are the Senior Noteholder Claims, Other Parent Claims, EGI-TRB LLC Notes Claims, and PHONES Notes Claims (the "Parent Revoting Classes"); and (b) the Holders of Claims in the thirty-seven (37) Classes of General Unsecured Claims against Non-Guarantor Debtors in which no Holders voted to accept or reject the DCL Plan in the prior solicitation process (the "Subsidiary Revoting Classes");

(iii)    A ruling by the Court that the votes cast and elections made respecting the Second Amended DCL Plan[4] by Holders of Claims in all Classes other than the Revoting classes remain binding and shall continue to be counted as votes and elections respecting the Third Amended DCL Plan, because the treatment of those Claims under the DCL Plan has not changed materially from the Second Amended DCL Plan to the Third Amended DCL Plan; and

(iv)    Establishment of a timetable that allows for the scheduling of the hearing to consider confirmation of the DCL Plan (the "Confirmation Hearing") in the first week of February 2012 or as soon thereafter as is practicable.

The Motion also seeks relief to allow for implementation of all of the foregoing, including the approval of forms of supplemental ballots and notice materials, procedures for solicitation and tabulation of votes and elections on the DCL Plan, and related and other relief as set forth in this Motion. The various elements of that relief are on terms consistent with the relief authorized by this Court in prior solicitations respecting the DCL Plan and other, competing plans for the Debtors. In support of this Motion, the Debtors respectfully state as follows:

## BACKGROUND TO THE MOTION

1.      The Debtors have filed this Motion, along with its related materials, to advance confirmation of the Third Amended DCL Plan, which has been filed concurrently herewith. In the Third Amended DCL Plan, the DCL Plan Proponents have made certain limited

---

[4] Second Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (As Modified April 26, 2011) [Docket No. 8769], as amended on October 19, 2011 [Docket No. 10024] (the "Second Amended DCL Plan").

modifications to the Second Amended DCL Plan to address the remaining issues relating to

confirmation of the DCL Plan noted by the Court in its recently-issued confirmation opinion

[Docket No. 10133] (the "Confirmation Opinion"). The Debtors have also filed a Status Report

concurrently with this Motion, which contains detailed descriptions of the specific modifications

made to the Third Amended DCL Plan to address each of the issues identified in the

Confirmation Opinion as a bar to confirmation of the DCL Plan and the reasons why it is critical

that the Third Amended DCL Plan proceed to confirmation as rapidly as possible under the

circumstances (the "Status Report").[5]

     **A.**     **The Confirmation Opinion**

     2.     As the Court is well aware, the Confirmation Opinion approved as "fair,

reasonable, and in the best interest of the Debtors' estates" the LBO Settlement and the Step Two

Disgorgement Settlement (each as defined in the Confirmation Opinion, the "Plan

Settlements").[6] The Confirmation Opinion also approved other key features of the DCL Plan

and overruled the majority of objections to the DCL Plan.  Specifically, the Court:

- approved the inclusion of the Bar Order in the DCL Plan (subject to a limited modification);

- concluded that the DCL Plan is feasible;

- approved the voluntary assignment of State Law Constructive Fraudulent Conveyance Claims to the Creditors' Trust;

- concluded that the Litigation Trust is fair and equitable,

- found that the classification of the Swap Claim in Class 1F under the DCL Plan is appropriate; and

---

[5] The Status Report has been filed in advance of the status hearing set by the Court in its October 31, 2011 order. (See Docket No. 10134.)  The purpose of the status hearing, set for November 22, 2011 at 2:00 p.m. (Eastern Time), is "to further the expeditious and economical resolution of the case." Id.

[6] See also Third Amended DCL Plan at §§ 1.1.238, 1.1.243, 5.15.1, 5.15.2.

- overruled objections to the DCL Plan's treatment of prepetition indemnification and reimbursement claims and with respect to the so-called PHONES Notes Exchange Claims.[7]

(Confirmation Opinion at 113.) The Court also concluded that the Debtors had a Total Distributable Enterprise Value ("DEV") of $7.019 billion, which was within the range of the DCL Plan Proponents' valuation of the Debtors and nearly $1 billion below the lowest point of the Noteholder Proponents' valuation. (Confirmation Opinion at 21.)[8]

3.    The Court also examined the preferences of creditors respecting the DCL Plan and the Noteholder Plan[9] and found that "creditors overwhelmingly prefer the DCL Plan over the Noteholder Plan" (Confirmation Opinion at 124). The Court found specifically that, as between a modified DCL Plan and a modified Noteholder Plan that addressed their respective confirmability issues and had similar voting results, the DCL Plan would be preferred to the Noteholder Plan. In the Court's words, the DCL Plan would "survive the crucible of section 1129(c)." (Confirmation Opinion at 125.)

4.    The Confirmation Opinion also identified several issues that precluded confirmation of the Second Amended DCL Plan. Specifically, the Court found that: (i) the DCL Plan had not been accepted by at least one impaired class at each Debtor and hence did not comply fully with the requirements of section 1129(a)(10) of the Bankruptcy Code; (ii) the

[7] The term "PHONES Notes Exchange Claims" refers to any Claims based on PHONES Notes relating to PHONES Notes purportedly put to Tribune for exchange prior to the Petition Date but not paid in cash prior to the Petition Date.

[8] The Court also found that the increase in valuation to $7.019 billion from the mid-point used by the DCL Plan Proponents of $6.75 billion was insufficient to alter the Court's conclusions regarding the reasonableness of the Plan Settlements. (See Confirmation Opinion at 40.)

[9] The "Noteholder Plan" refers to the Third Amended Joint Plan Of Reorganization For Tribune Company And Its Subsidiaries Proposed By Aurelius Capital Management, L.P., Deutsche Bank Trust Company Americas, Law Debenture Trust Company Of New York, And Wilmington Trust Company [Docket No. 8755], as amended on October 20, 2011 [Docket No. 10033], and the "Noteholder Proponents" refer to, collectively, Aurelius Capital Management, L.P. ("Aurelius"), Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company.

5

releases in Section 11.2.1 were too broad in their inclusion of certain parties, such that the

inclusion of those parties was not "fair and equitable;" (iii) the exculpation provision in Section

11.5 must be limited to estate fiduciaries; and (iv) the DCL Plan unfairly applied the PHONES

Notes subordination provisions to all Other Parent Claims and to the distribution of the proceeds

of certain avoidance actions by the Litigation Trust.  (Confirmation Opinion at 113.)

B.    **Plan Modifications Resulting From the Confirmation Opinion**

1.    **Parent Revoting Classes and Allocation Dispute Resolutions**

5.    The DCL Plan Proponents have made certain limited modifications to the

Second Amended DCL Plan to address the issues identified in the Confirmation Opinion as

preventing confirmation of the Second Amended DCL Plan.  Those modifications are reflected

in the Third Amended DCL Plan, and the Status Report and proposed Supplemental Disclosure

Document each describe in detail how those modifications address the issues identified by the

Court in the Confirmation Opinion.[10]  The principal modification to the DCL Plan for purposes

of this Motion is the Third Amended DCL Plan's implementation of the "Allocation Dispute

Protocol," which is described below.  (See Third Amended DCL Plan at § 5.18 and Exhibit

5.18.)  Other than the amendments described herein and in the Third Amended DCL Plan, the

classification and treatment of Claims against the Debtors remain the same as in the Second

Amended DCL Plan.

6.    Pursuant to the Allocation Dispute Protocol, as summarized below, certain

disputes, called the "Allocation Disputes," relating to the PHONES Notes Claims and the EGI-

TRB LLC Notes Claims, are reserved for litigation before the Court, which litigation may take

place before or in connection with the Confirmation Hearing, between the Confirmation Hearing

---

[10] The modifications are also reflected in the black-line comparison of the Third Amended DCL Plan and the Second Amended DCL Plan, which was filed together with the Third Amended DCL Plan. [See Docket No. 10273.]

and the Effective Date, or, if not resolved by the Effective Date, after the Effective Date, in

which case reserves will be created to provide for future distributions as dictated by the outcome

of the Allocation Disputes.[11]  Those disputes include:

    a)    whether and to what extent distributions to certain Holders of Claims must be adjusted in order for the distributions under the DCL Plan to satisfy the applicable requirements of the Bankruptcy Code because all or any portion of the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the Plan Settlements are not subject to (i) the subordination provisions of the PHONES Notes Indenture or (ii) the subordination agreement governing the EGI-TRB LLC Notes;

    b)    whether and to what extent the priority of the distributions from the Creditors' Trust and/or the Litigation Trust (if the Bankruptcy Court deems it to be necessary) must be adjusted in order for the distributions under the DCL Plan to satisfy the applicable requirements of the Bankruptcy Code because all or any distributions from the Creditors' Trust and/or Litigation Trust (if applicable) are not subject to the subordination provisions of the PHONES Notes Indenture;

    c)    whether and to what extent distributions to certain Holders of Claims or the priority of the distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the DCL Plan to satisfy the applicable requirements of the Bankruptcy Code because any category of Other Parent Claims does not constitute "Senior Indebtedness," as defined by the PHONES Notes Indenture;

    d)    whether and to what extent the priority of the distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the DCL Plan to satisfy the applicable requirements of the Bankruptcy Code because all or any distributions from the Creditors' Trust and/or the Litigation Trust are not subject to the subordination agreement governing the EGI-TRB LLC Notes;

    e)    whether and to what extent distributions to certain Holders of Claims or the priority of the distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the DCL Plan to satisfy the applicable requirements of the Bankruptcy Code because any category of Other Parent Claims does not constitute "Senior Obligations" as defined in the subordination agreement governing the EGI-TRB LLC Notes;

---

[11] The Allocation Dispute Protocol expressly provides that resolution of the Allocation Disputes will not delay the Effective Date of the Third Amended DCL Plan without the consent of the DCL Plan Proponents.  (See Allocation Dispute Protocol at § 3.2.)

f)      whether and to what extent beneficiaries of the subordination provisions of the PHONES Notes Indenture and the subordination agreement governing the EGI-TRB LLC Notes (as determined by the Court, if applicable) are entitled to receive post-petition interest before distributions to the Holders of the PHONES Notes and the EGI-TRB LLC Notes can be made;

g)      the Allowed Amount of the PHONES Notes Claims; and

h)      whether and to what extent the PHONES Notes are senior in right of payment to the EGI-TRB LLC Notes, or vice versa.

(See Allocation Dispute Protocol at §§ 2.1.1, 2.1.2.)  The Allocation Disputes also include any other issues that (a) are related to those listed above, raised by a party in interest in an objection to confirmation of the Third Amended DCL Plan, and must be resolved in order to determine that the distributions made under the Plan satisfy the applicable requirements of the Bankruptcy Code, or (b) are determined by the Bankruptcy Court to be necessary to the resolution of the issues listed above.  (See id. at § 2.1.3.)

        7.      Resolving the Allocation Disputes as set forth in the Allocation Dispute Protocol would allow the DCL Plan Proponents and the Court to address those issues identified in the Confirmation Opinion as obstacles to confirmation while permitting the Debtors to emerge from the Chapter 11 Cases expeditiously and economically.  As the Court is aware, the applicability of the subordination provisions of the PHONES Notes Indenture and the subordination agreement governing the EGI-TRB LLC Notes Claims was not conclusively determined by the Court in the Confirmation Opinion with respect to all sources of distributions under the DCL Plan.  The Debtors and the other DCL Plan Proponents continue to believe that the basic treatment of the Parent Revoting Classes as set forth in the Second Amended DCL Plan is appropriate, and that treatment is continued for purposes of the Third Amended DCL Plan. The Allocation Dispute Protocol, however, addresses the issues identified by the Court in the Confirmation Opinion by permitting the litigation over, and resolution of, the Allocation

8

Disputes to occur either prior to or after the Effective Date, with provision for modifying distributions to the Parent Revoting Classes depending on the outcome of those resolutions if such litigation and/or resolution occurs after the Effective Date.

        8.      Specifically, if all of the Allocation Disputes are not resolved as of the Effective Date of the Third Amended DCL Plan, the Reorganized Debtors will establish one or more distribution reserves pending the outcome of such Allocation Disputes (the "Allocation Dispute Reserves"). (See id. at § 1.3.1.) Distributions to the Holders of Parent Revoting Claims on the Initial Distribution Date would accordingly be modified from those provided for in the Second Amended DCL Plan to reflect the funding of these Allocation Dispute Reserves, with aggregate distributions to the Holders of Senior Noteholder Claims and Other Parent Claims on the Initial Distribution Date to be reduced by the amounts in the Allocation Dispute Reserves. Subsequent distributions from the Allocation Dispute Reserves to the Holders of Claims in the Parent Revoting Classes would then be determined by the outcome of the litigation or any settlement of the Allocation Disputes. (Id.)

        **2.**      **Subsidiary Revoting Classes and Resolution of 1129(a)(10)**
                  **Issues**

        9.      The treatment of Claims in the Subsidiary Revoting Classes is not changed under the Third Amended DCL Plan from the treatment that was provided for those Claims under the Second Amended DCL Plan. Such Claims – all General Unsecured Claims at the Filed Subsidiary Debtors – continue to receive a 100% distribution in Cash. Because no Holders in the Subsidiary Revoting Classes have previously voted on the DCL Plan, the Court concluded in the Confirmation Opinion that those Classes could not be deemed to accept the DCL Plan absent disclosure that Classes without votes would be deemed to accept the DCL Plan and a provision to that effect in the DCL Plan itself. (See Confirmation Opinion at 84.) The DCL Plan

Proponents have accordingly modified the applicable provision in the Third Amended DCL Plan to provide that wholly-non-voting impaired Classes of Claims will be deemed to accept the Plan and, by this Motion, the Debtors seek authorization to resolicit votes from the Subsidiary Revoting Classes with full disclosure of the consequence of the failure of such Classes to receive votes. (See Third Amended DCL Plan at § 4.2.2.)

## STATUS OF THE CASE AND JURISDICTION

10.     On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors comprise 111 entities.

11.     The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket Nos. 43, 2333.]

12.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the "Committee").

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a), 1125, 1126, 1127, 1128, and 1129 of the Bankruptcy Code,

Rules 2002, 3003, 3017, 3018, 3019, and 3020 of the Bankruptcy Rules, Rule 3017-1 of the

Local Rules, the Prior Solicitation Orders, and other applicable law.[12]

### RELIEF REQUESTED

15.     The relief requested by the Debtors in this Motion falls into four general

categories: (a) approval of the Supplemental Disclosure Document, pursuant to sections

1125(a)(1), (b), and (c), and 1127 of the Bankruptcy Code, Bankruptcy Rule 3017, and Local

Rule 3017-1(a); (b) approval of the scope, form, procedures, and deadlines for a process to

provide an opportunity for the Holders of Claims in the Revoting Classes to re-cast votes and

make again their elections on the DCL Plan, consistent with section 1127(d) of the Bankruptcy

Code; (c) a ruling by the Court that the previously-made votes and elections of Holders of

Claims in the non-Revoting Classes remain binding and will continue to be counted as votes on

and elections under the Third Amended DCL Plan, pursuant to sections 1126, 1127(a), (d), and

1129 of the Bankruptcy Code, and Bankruptcy Rules 3003, 3017, 3018(a), and 3019(a); and (d)

scheduling the Confirmation Hearing and related deadlines and approving notices in respect

thereof, pursuant to sections 1128 and 1129 of the Bankruptcy Code and Bankruptcy Rules

2002(b), (d), 3017(d), 3018(a), 3019, and 3020.  The Debtors also seek additional implementing

---

[12] This Court previously authorized procedures for solicitation of votes to accept or reject the DCL Plan, and to make elections thereunder, on two occasions.  See Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief [Docket No. 7126, amended at Docket No. 7215] (the "First Solicitation Order"); Order Approving (I) Form, Scope and Procedures to (A) Provide Holders of Senior Loan Claims and Senior Guaranty Claims with Opportunity to Change Votes on Debtor/Committee/ Lender Plan; (B) Allow Holders of Senior Noteholder Claims and Other Parent Claims to Make New Treatment Elections; (C) Allow Holders of Claims that Previously Granted Certain Releases to Make Elections Concerning Such Releases as Modified; and (D) Allow Holders of Claims Against Tribune Company to Opt Out of Transfer of Disclaimed State Law Avoidance Claims to Creditors Trust Under Debtor/Committee/Lender Plan; and (II) Supplement to Disclosure Statement and Explanatory Statement and Distribution of Same [Docket No. 8926] (the "Second Solicitation Order" and, together with the First Solicitation Order, the "Prior Solicitation Orders").

relief respecting the foregoing, as described herein.  The specific scope, forms, and procedures

sought to be approved by this Motion for each of these elements of the relief requested are

described in turn below.

## I.  Approval of the Supplemental Disclosure Document

16.    Contemporaneously with this Motion, the Debtors have filed the

Supplemental Disclosure Document respecting the Third Amended DCL Plan, which describes

the changes made to the DCL Plan following the Court's Confirmation Opinion.  Section

1127(c) of the Bankruptcy Code provides that a plan proponent must comply with section 1125

of the Bankruptcy Code with respect to a modified plan.  That section, in turn, provides that a

disclosure statement must contain adequate information to allow creditors to make an informed

judgment about the plan.  See 11 U.S.C. §§ 1125(a), (b).  Section 1125(c) further provides that

the holders of claims in one class under a plan may be provided with a disclosure statement

tailored to that class, as long as all members of the class receive the same disclosure statement.

See 11 U.S.C. § 1125(c) ("[t]he same disclosure statement shall be transmitted to each holder of

a claim or interest of a particular class, but there may be transmitted different disclosure

statements, differing in amount, detail, or kind of information, as between classes").

17.    Here, the Supplemental Disclosure Document provides the requisite

adequate information.  The Supplemental Disclosure Document supplements the previously-

approved Disclosure Documents respecting the DCL Plan[13] that have been distributed to all

---

[13] See General Disclosure Statement dated December 15, 2010 [Docket No. 7232] , approved by order entered on
December 9, 2010 [Docket Nos. 7215, 7126]; Specific Disclosure Statement Relating to First Amended Joint Plan of
Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of
Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank,
N.A. [Docket No. 7135] approved by order entered on December 9, 2009 [Docket No. 7216]; Explanatory Statement
Relating to Modified Elections Under Second Amended Joint Plan of Reorganization for Tribune Company and Its
Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital
Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified April 26, 2011)
[Docket No. 8754] approved by order entered on May 17, 2011 [Docket No. 8926] (collectively with the

Holders of Claims entitled to vote on the DCL Plan, and has been tailored specifically to provide

information respecting Plan modifications that affect the Revoting Classes.  The Revoting

Classes consist of:  (i) Senior Noteholder Claims (Class 1E); (ii) Other Parent Claims (Class 1F);

(iii) EGI-TRB LLC Notes Claims (Class 1I); (iv) PHONES Notes Claims (Class 1J); and (v) the

Subsidiary Revoting Classes, which are the Classes of General Unsecured Claims against the

thirty-seven (37) Non-Guarantor Subsidiary Debtors that had no impaired accepting Classes, due

to the fact that no votes to accept or reject the DCL Plan were cast by any members of such

Classes (Classes 2E, 4E through 7E, 10E, 12E through 15E, 18E through 20E, 22E through 38E,

40E, 42E, 43E, and 46E through 49E).

> 18.    The Debtors request that distribution of the Supplemental Disclosure

Document be required only to the Holders of Claims in the Revoting Classes, consistent with

sections 1125(c) and 1127(c) of the Bankruptcy Code.  The Supplemental Disclosure Document

is tailored to provide the additional information that is necessary to allow the Holders of Claims

in the Revoting Classes to determine how to vote on and make again their elections under the

Third Amended DCL Plan.  No legitimate purpose is served by requiring distribution of the

Supplemental Disclosure Document or related materials more broadly.  Moreover, requiring

distribution of the Supplemental Disclosure Document only to the Revoting Classes will reduce

both waste – by eliminating the dissemination of extraneous documents – and the confusion that

would result from providing further documentation to parties to which such documents do not

---

Supplemental Disclosure Document, and as defined in Section 1.1.85 of the Third Amended DCL Plan, the "Disclosure Documents").  The Supplemental Disclosure Document incorporates the previously-approved Disclosure Documents by reference.  The DCL Plan, Disclosure Documents, Confirmation Opinion, and other documents relating to the DCL Plan may be (i) obtained free of charge from Epiq Bankruptcy Solutions, LLC's dedicated website related to the Debtors' chapter 11 cases (http://chapter11.epiqsystems.com/tribune) or by telephoning Epiq at (646) 282-2400; (ii) inspected during regular business hours at the Office of the Clerk of the Bankruptcy Court, 3rd Floor, 824 Market Street Wilmington, DE 19801; or (iii) viewed on the Internet at the Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

apply. The Court should thus approve the Supplemental Disclosure Document and require its

distribution only to the Holders of Claims in the Revoting Classes.

**II.**   **Scope, Forms, Procedures, and Deadlines for the Resolicitation and Tabulation of Votes to Accept or Reject the Third Amended DCL Plan by the Revoting Classes**

   **A.**   **Resolicitation of Holders of Senior Noteholder Claims and Other Parent Claims**

   19.   The Debtors propose to resolicit votes to accept or reject the DCL Plan

from the Holders of Senior Noteholder Claims and Other Parent Claims[14] because of the

potential for a material adverse effect on the treatment of those Claims that may result from

determination of one or more of the Allocation Disputes.  Under the Third Amended DCL Plan,

the Holders of Senior Noteholder Claims and Other Parent Claims will receive recoveries

computed in the same manner as they were under the Second Amended DCL Plan, subject to the

possibility of a reduction in such recoveries if any of the Allocation Disputes results in the

reallocation of any portion of such recoveries to other constituents.

   20.   Section 1127(d) of the Bankruptcy Code provides that after votes are cast

on a plan of reorganization, a plan proponent may modify a plan prior to confirmation so long as

the plan still satisfies all requirements concerning the contents of the plan and the classification

of claims and interests.  See 11 U.S.C. § 1127(d); In re The New Power Co., 438 F.3d 1113,

1117-18 (11th Cir. 2006).  In general, a creditor that has voted to accept or reject a plan may also

be deemed to accept or reject a modifying proposal.  However, resolicitation is mandatory where

a modified plan "materially and adversely" affects the treatment of a claim when compared to

the treatment of that claim under the plan prior to its modification.  See In re Am. Solar King

Corp., 90 B.R. 808, 824-25 (Bankr. W.D. Tex. 1988) ("when a modification materially and

---

[14] For the avoidance of doubt, and as discussed in Section III, infra, the Debtors do not seek to resolicit Holders of Other Parent Claims that previously elected to have their Other Parent Claims treated as Convenience Claims as part of the prior solicitation process undertaken in connection with the Second Amended DCL Plan.

adversely affects [the voting parties'] interests, they must be afforded an opportunity to change their vote."); see also 11 U.S.C. § 1127(d); Fed. R. Bankr. P. 3019; In re Sentinel Mgmt. Group, Inc., 398 B.R. 281, 301 (Bankr. N.D. Ill. 2008); In re USN Commc'ns, Inc., 280 B.R. 573, 594-97 (Bankr. D. Del. 2002); cf. In re Concrete Designers, Inc., 173 B.R. 354, 357 (Bankr. S.D. Ohio 1994) (a 20% reduction in a class of creditors' recovery required resolicitation of the modified plan).

21.     The modifications reflected in the Third Amended DCL Plan have the potential to cause a material adverse change in the treatment of Senior Noteholder Claims and Other Parent Claims, depending upon the outcome of several of the Allocation Disputes. Specifically, and as set forth in more detail in the Supplemental Disclosure Document, the determination of certain of the Allocation Disputes in a manner adverse to the Holders of Senior Noteholder Claims and Other Parent Claims could result in the material reduction of recoveries to those Holders under the Third Amended DCL Plan.  (See Supplemental Disclosure Document at p. 14 & Exhibit A, providing, for illustrative purposes only, scenarios in which recoveries to Holders of Senior Noteholder Claims and Other Parent Claims may be reduced from the 33% to 36% recoveries provided in the Second Amended DCL Plan to recoveries of, in certain projections, 19% to 22% under the Third Amended DCL Plan.)

22.     It is uncertain that resolution of the Allocation Disputes will in fact result in a material adverse effect on the treatment to be afforded to the Holders of Senior Noteholder Claims and Other Parent Claims under the DCL Plan.  However, "the severity of the modification need not be such as would motivate a claimant to *change* their vote – only that they would be apt to *reconsider* acceptance." Am. Solar King, 90 B.R. at 824 (emphasis in original). Here, the Holders of Senior Noteholder Claims and Other Parent Claims may be apt to

reconsider their prior votes in light of the proposed effects on their recoveries from unfavorable resolution of any or all of the Allocation Disputes, and the Debtors accordingly seek to resolicit votes from the Holders of such Claims.[15]

**B.    Resolicitation of EGI-TRB LLC Notes Claims and PHONES Notes Claims**

23.    Resolicitation of votes from the Holders of EGI-TRB LLC Notes Claims and PHONES Notes Claims is also appropriate even though the amendments to the Third Amended DCL Plan are not adverse to such Holders.  Indeed, as noted above and in the Supplemental Disclosure Document, certain resolutions of the Allocation Disputes would result in recoveries to the Holders of such Claims that are higher than they were under the Second Amended DCL Plan.

24.    A material non-adverse change in the treatment of a claim under a plan as modified ordinarily does not require resolicitation of the relevant Holder's vote on a plan. However, in this instance the potential change in recoveries for the Holders of EGI-TRB LLC Notes Claims and PHONES Notes Claims may cause Holders who previously voted to reject the Second Amended DCL Plan to now vote to accept the Third Amended DCL Plan.  See, e.g., In re Dow Corning Corp., 237 B.R. 374, 379 (Bankr. E.D. Mich. 1999) ("[U]nder Rule 3019, only those who rejected the plan originally would be resolicited with regard to a modification that does nothing but enhance the treatment of creditors within that class.")[16]  This will, at a

---

[15] The proposed resolicitation of votes from the Holders of Senior Noteholder Claims and Other Parent Claims would also encompass obtaining new elections from such Holders under the DCL Plan.

[16] In Dow Corning, the court held that a class of creditors that had previously voted to reject a plan did not need to be resolicited with respect to a modification that improved its treatment, where the number of creditors necessary to determine the class vote had consented to the modification through the filing of a motion under Bankruptcy Rule 3018(a) seeking to change their rejecting votes to acceptances.  Based upon the facts before it, the court found that Bankruptcy Rule 3019 "does not require that every rejecting creditor be resolicited."  Id. at 379.  Instead, "only those creditors who have not 'accepted in writing the modification' need to be contacted to consider the modified plan."  Id.  Because the creditors seeking to change their vote had already been contacted, and had already consented to the modification in writing, they did not need to be resolicited.  Additionally, while from a theoretical perspective "all other rejecting claimants . . . should be resolicited", the court held that resolicitation of such rejecting claimants

minimum, permit the Court to more accurately gauge the level of support for the DCL Plan

among the Holders of such Claims.  Moreover, because the Holders of PHONES Notes Claims

need to be given the opportunity to make new elections under the DCL Plan for the reasons

explained immediately below, there will be little to no incremental expense – and no delay –

associated with the resolicitation of votes from such Holders.

> **C.    Need to Obtain New Elections from Holders of Senior Noteholder Claims and PHONES Notes Claims**

25.    Resolicitation of Senior Noteholder Claims and PHONES Notes Claims is

also beneficial, even if it were not otherwise necessary, so that the DCL Plan Proponents can

accurately track the various elections of the Holders of such Claims under the DCL Plan, which

have largely been lost.  In connection with the prior solicitation process undertaken in connection

with the Second Amended DCL Plan, Holders who made various elections on their Ballots as

provided in the Second Amended DCL Plan had their Senior Notes and PHONES Notes placed

in one of several "Contra-CUSIPs," (specifically, three Contra-CUSIPs for each of the eight

series of Senior Notes and one for the PHONES Notes) that were established for the elections

made under the Second Amended DCL Plan.  A Contra-CUSIP is a means of identifying and

"freezing" trading of a security as to which an election affecting the treatment of claims based on

such security has been made, so that appropriate distributions, or other distinctions as to

treatment, may later be made based on those elections under the plan of reorganization.

26.    Following the issuance of the Confirmation Opinion, Aurelius and its

counsel made demands on Epiq Bankruptcy Solutions, LLC, as voting agent (the "<u>Voting</u>

---

on the facts of that case would be futile because the number of claimants consenting to the modification "is sufficient by themselves to tip the scales of [the class] from rejecting to accepting." <u>Id.</u>  Thus, but for the affirmative consent of a sufficient number of previously rejecting holders to cause the previously rejecting class to accept the plan as modified, the <u>Dow Corning</u> court would have authorized resolicitation of that class based upon the improved treatment.

Agent") and the DCL Plan Proponents to release all Senior Notes and the PHONES Notes from

their respective Contra-CUSIPs so that the Senior Notes and the PHONES Notes could once

again be traded.  The DCL Plan Proponents agreed to that request.  As a result of the release of

the Senior Notes and the PHONES Notes from the Contra-CUSIPs, however, it is no longer

possible to track the elections previously made by the Holders of Senior Notes and PHONES

Notes on the DCL Plan.

       27.     It is accordingly necessary to resolicit elections under the DCL Plan from

the Holders of the Senior Notes and the PHONES Notes to allow for those creditors' elections to

be changed or affirmed, as each Holder elects.  Resoliciting votes from those Holders will also

provide the practical opportunity, at minimal additional cost, for the Holders to change their

votes in light of the Confirmation Opinion and the resulting modifications to the DCL Plan

reflected in the Third Amended DCL Plan.  Moreover, obtaining new elections without

resoliciting votes would doubtless lead to confusion among Holders as to the effect of their prior

votes and elections.  The resolicitation of votes and elections from the Holders of Senior

Noteholder Claims and PHONES Notes Claims should accordingly be approved.

    **D.**    **Resolicitation of Subsidiary Revoting Classes**

       28.     The Debtors also seek, by this Motion, the Court's approval for the

resolicitation of votes from Holders of Claims in the Subsidiary Revoting Classes.  The Court

noted in its Confirmation Opinion that at thirty-seven (37) of the Debtors, there was no accepting

impaired Class under the DCL Plan because no Holders of Claims within the Class of General

Unsecured Claims at those Debtors voted on the DCL Plan (often because there were only one or

two Holders of General Unsecured Claims capable of voting on the DCL Plan).  (See

Confirmation Opinion at 78.)[17]  The Court concluded that under section 1129(a)(10) of the

Bankruptcy Code, there must be an accepting impaired Class at each Debtor to satisfy the

requirements of confirmation.  (See id. at 83 ("I find nothing ambiguous in the language of

1129(a)(10), which, absent substantive consolidation, must be satisfied by each debtor in a joint

plan.").)

29.  The Court additionally stated that where no claim in an impaired class is

voted to accept or reject a particular debtor's plan, that class may be deemed to accept a plan in

the absence of objection,[18] citing In re Adelphia Commc'ns Corp., 368 B.R. 140 (Bankr.

S.D.N.Y. 2007), as authority.  In that case, a joint plan adopted a presumption (expressly stated

in the plan) that a non-voting impaired class of claims would be deemed to accept the plan and

stated that presumption prominently on the ballot and in the disclosure materials.  (See

Confirmation Opinion at 84.)

30.  To ensure that the Third Amended DCL Plan satisfies the Court's ruling

with respect to section 1129(a)(10), the DCL Plan Proponents propose to resolicit votes on the

Third Amended DCL Plan from the Subsidiary Revoting Classes, accompanied by express

disclosure that those Classes will be deemed to accept the DCL Plan if no votes are cast by

eligible Holders of Claims in those Classes.  The DCL Plan Proponents have also made

modifications to the DCL Plan to provide that, where an impaired Class of Claims is otherwise

entitled to vote on the DCL Plan, but no Claim in such Class is voted, such Class will be deemed

to have accepted the Plan for that Debtor.  (See Third Amended DCL Plan at § 4.2.2.)  In

[17] In connection with the prior solicitation of votes to accept or reject the DCL Plan in December 2010, solicitation materials were distributed to approximately 37 Holders in the Subsidiary Revoting Classes, in the aggregate.

[18] See id. at 84 & n.66. ("Would deemed acceptance by a non-voting impaired class, in the absence of an objection, constitute the necessary consent to a proposed per plan scheme?  I conclude that it may.") (internal references and quotations omitted).

accordance with the Confirmation Opinion and the <u>Adelphia</u> opinion cited therein, the

Supplemental Disclosure Document discloses the presumption that a non-voting impaired Class

of Claims will be deemed to accept the Plan, and the proposed form of Supplemental Ballot for

each such Class sets forth set forth in such presumption in bolded text. (<u>See</u> Supplemental

Disclosure Document at p. 9.) This proposed resolicitation should be approved because it

resolves the section 1129(a)(10) bar to confirmation for those Debtors that previously lacked an

accepting impaired Class in accordance with the Confirmation Opinion.

      31.    In order to address further the Court's ruling respecting section

1129(a)(10), the DCL Plan Proponents have also reserved the right to withdraw the Third

Amended DCL Plan as to any Debtor, including in the event that the Class of General Unsecured

Claims for that Debtor votes to reject the Third Amended DCL Plan through the proposed

resolicitation. In addition, in the event the DCL Plan Proponents withdraw the Third Amended

Plan as to any particular Debtor because (i) the Plan with respect to such Debtor fails to be

accepted by the requisite number and amount of Claims voting or (ii) the Bankruptcy Court, for

any reason, denies confirmation with respect to such Debtor, then, the DCL Plan Proponents

further reserve the right, and by this Motion seek the authority, pursuant to Section 4.6.3 of the

Third Amended DCL Plan, to sell such Debtor's assets to a Debtor that is a proponent of the

Third Amended DCL Plan, with such sale to be effective at or prior to the Effective Date of the

Third Amended DCL Plan for such proponent. The sale price shall be paid to the seller in cash

and shall be in an amount equal to the fair value of such assets as proposed by Tribune and

approved by the Court. (<u>See</u> Third Amended DCL Plan at § 4.6.3; Supplemental Disclosure

Document at pp. 9-10.)

E.    **Approval of Forms and Proposed Solicitation and Tabulation Procedures for Revoting Classes**

32.    The Debtors request that this Court approve the forms of supplemental ballots, beneficial ballots, and master ballots (the "Supplemental Ballots," "Supplemental Beneficial Ballots," and "Supplemental Master Ballots," respectively), together with their related balloting instructions (the "Instructions"), that the Debtors propose to distribute to Holders of Claims in each of the respective Revoting Classes for the purposes of voting to accept or reject the DCL Plan and making elections thereunder. Copies of the Supplemental Ballots, Supplemental Beneficial Ballots, and Supplemental Master Ballots, as applicable to each of the Revoting Classes, are attached hereto as Exhibits A - F. The Debtors seek the authority to make non-material modifications to any Supplemental Ballots, Supplemental Beneficial Ballots, and Supplemental Master Ballots to be distributed to Holders of Claims in the Revoting Classes without further order of the Court.

33.    The DCL Plan Proponents will distribute, through the Voting Agent, to Holders of Claims in the Revoting Classes, by first-class mail: (i) a copy of the Third Amended DCL Plan, (ii) a copy of the Supplemental Disclosure Document, (iii) an appropriate number of Supplemental Ballots, Supplemental Beneficial Ballots, and Supplemental Master Ballots, as applicable, together with corresponding Instructions and one or more pre-paid return envelopes, (iv) a copy of the Confirmation Hearing Notice (defined below), and (v) a copy of the Order approving this Motion (without exhibits) (collectively, the "Resolicitation Package"). The Debtors further request that distribution of the Resolicitation Packages be limited only to the Holders of Claims in the Revoting Classes.

34.    The Debtors additionally propose detailed solicitation and tabulation procedures for the Holders of all Claims in the Revoting Classes, as set forth below. These

procedures are identical in all material respects to the solicitation procedures that were previously approved by this Court in the Prior Solicitation Orders and employed by the DCL Plan Proponents and the proponents of competing plans in connection with the prior plan solicitations in the Debtors' chapter 11 cases. The procedures previously established by the Court to tabulate votes and elections respecting the DCL Plan shall also apply to the tabulation of votes and elections reflected on any Supplemental Ballots, Supplemental Beneficial Ballots, and Supplemental Master Ballots, as applicable, as shall the remaining provisions of the Prior Solicitation Orders except to the extent expressly modified by the order approving this Motion.[19]

### 1.    Senior Noteholder Claims and PHONES Notes Claims

35.    The Debtors seek Court approval for the following forms and procedures to govern the distribution, return, and tabulation of Supplemental Beneficial Ballots and Master Ballots from the Holders of Senior Noteholder Claims and PHONES Notes Claims:[20]

- The DCL Plan Proponents will cause Supplemental Beneficial Ballots and accompanying Instructions, together with a Supplemental Master Ballot, to be distributed to each person or entity that was a record Holder of a Senior Noteholder Claim or PHONES Notes Claim (other than the Holder of a PHONES Notes Exchange Claim, discussed below) as of December 12, 2011, the Supplemental Voting Record Date (discussed in Section II.F, below). Forms of Supplemental Beneficial Ballots, Supplemental Master Ballots, and Instructions for the Senior Noteholder Claims and PHONES Notes Claims are proposed to be substantially in the form attached hereto as Exhibit A and Exhibit B, respectively. The record Holders of Senior Noteholder Claims and PHONES Notes Claims include, without limitation, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees (collectively, the "Voting Nominees"). The Voting Agent will provide each Voting Nominee with reasonably sufficient numbers of Supplemental Beneficial Ballots and accompanying Instructions to distribute to the beneficial owners of the Senior Noteholder Claims and PHONES Notes Claims for whom such Voting Nominee acts (collectively, the "Beneficial Owners").

---

[19] See First Solicitation Order at ¶¶ 30-40; Second Solicitation Order at pp. 3-5 (incorporating solicitation procedures set forth in First Solicitation Order and providing supplemental procedures concerning additional release and treatment elections provided to certain Holders of Claims under the Second Amended DCL Plan).

[20] In connection with the prior solicitation of votes to accept or reject the DCL Plan in December 2010, solicitation materials were distributed to approximately 3,900 beneficial holders of Senior Noteholder Claims and 167 Holders of PHONES Notes Claims.

- Each Voting Nominee will be required to forward the Resolicitation Packages applicable to Holders of Senior Noteholder Claims and PHONES Notes Claims to each Beneficial Owner for voting, together with one or more pre-paid return envelopes, so that the Beneficial Owner may return the completed Supplemental Beneficial Ballot to the Voting Nominee by such deadline as may be established by the Voting Nominee. Each Voting Nominee then will tabulate the individual votes of its respective Beneficial Owners from their Supplemental Beneficial Ballots on the Supplemental Master Ballot and return the Supplemental Master Ballot to the Voting Agent so that it is received prior to January 20, 2012, the Supplemental Voting Deadline (discussed in Section II.F, below). The Voting Nominees will be required to retain Beneficial Ballots for inspection for a period of at least five (5) years following the Supplemental Voting Deadline.

- The elections made by Holders of Senior Noteholder Claims to receive the Senior Noteholder Alternative Treatment and/or the elections made by Holders of Senior Noteholder Claims or PHONES Notes Claims not to transfer their Disclaimed State Law Avoidance Claims to the Creditors' Trust to be established under the Third Amended DCL Plan (the "Treatment Elections") will be valid only if such Holders have electronically delivered their Senior Notes or PHONES Notes, as applicable, into the Automated Tender Offer Program at The Depository Trust Company (the "ATOP System") for placement into a Contra-CUSIP. Only the Voting Nominees can submit these elections on behalf of Beneficial Owners of Senior Noteholder Claims and PHONES Notes Claims. Holders of Senior Noteholder Claims or PHONES Notes Claims that make a Treatment Election and electronically deliver their Senior Notes or PHONES Notes into the Contra-CUSIP may withdraw their Senior Notes or PHONES Notes from the Contra-CUSIP up to and until the Supplemental Voting Deadline. However, following the Supplemental Voting Deadline, such Senior Notes or PHONES Notes will not be freely tradable. Holders of Senior Noteholder Claims or PHONES Notes Claims that either do not make a Treatment Election, or make a Treatment Election but fail to comply with the procedures for making such elections set forth above, will (a) not receive the Senior Noteholder Alternative Treatment on account of such Holders' Allowed Senior Noteholder Claims and/or (b) be deemed to consent to the transfer of such Holders' Disclaimed State Law Avoidance Claims to the Creditors' Trust pursuant to the Third Amended DCL Plan.

- With respect to Holders of PHONES Notes Exchange Claims, the DCL Plan Proponents will cause Resolicitation Packages applicable to Holders of PHONES Notes Exchange Claims to be distributed to the record Holder of the relevant PHONES Notes as of the date and time such PHONES Notes were put to Tribune for exchange. Forms of Supplemental Ballots and Instructions for the PHONES Notes Exchange Claims are proposed to be substantially in the form attached hereto as Exhibit C. It shall be the responsibility of such record Holder to provide the Resolicitation Packages, including any Supplemental Ballot, to any Beneficial Owner(s) of such PHONES Notes, and neither the Voting Agent nor any of the DCL Plan Proponents shall have any responsibility to provide the Resolicitation Packages applicable to Holders of PHONES Notes Exchange Claims to any party other than such record Holder. The Supplemental Ballots to be provided on account of PHONES Notes Exchange Claims, and/or the Instructions accompanying such Supplemental Ballots, shall provide that they are to be returned

directly to the Voting Agent and not to the relevant record Holders. The allowance of PHONES Notes Exchange Claims shall be solely for voting purposes pursuant to Bankruptcy Rule 3018(a), and shall not constitute a determination by the Court as to the allowance or classification of such Claims for any other purpose.

### 2.    Other Parent Claims, EGI-TRB LLC Notes Claims, and General Unsecured Claims in Subsidiary Revoting Classes

36.    The Debtors seek Court approval for the following forms and procedures to govern the distribution, return, and tabulation of Supplemental Ballots from the Holders of Other Parent Claims, EGI-TRB LLC Notes Claims, and General Unsecured Claims in the Subsidiary Revoting Classes:[21]

- The DCL Plan Proponents will cause Resolicitation Packages to be distributed to each person or entity that was a Holder of an Other Parent Claim, EGI-TRB LLC Notes Claim, or General Unsecured Claim in the Subsidiary Revoting Classes as of the Supplemental Voting Record Date. Forms of Supplemental Ballots and Instructions for the Other Parent Claims, EGI-TRB LLC Notes Claims, and Holders of Claims in the Subsidiary Revoting Classes are proposed to be substantially in the form attached hereto as Exhibit D, Exhibit E, and Exhibit F, respectively.

- The Supplemental Ballot for Holders of Claims in the Subsidiary Revoting Classes states in bolded text that where an impaired Class of Claims is otherwise entitled to vote on the DCL Plan, but no Claim in such Class is voted, such Class will be deemed to have accepted the Plan for that Debtor.

- The Holders of Other Parent Claims, EGI-TRB LLC Notes Claims, and General Unsecured Claims in the Subsidiary Revoting Classes will have until the Supplemental Voting Deadline to return the Supplemental Ballots to the Voting Agent.

37.    The foregoing forms and procedures for voting on the Third Amended DCL Plan establish an efficient process that will afford the Holders of Claims in the Revoting Classes an appropriate opportunity to vote to accept or reject the Third Amended DCL Plan and to make elections thereunder, and accordingly should be approved.

---

[21] In connection with the prior solicitation of votes to accept or reject the DCL Plan in December 2010, solicitation materials were distributed to approximately 843 Holders of Other Parent Claims, 28 Holders of EGI-TRB LLC Notes Claims, and, as noted above, 37 Holders of Claims in the Subsidiary Revoting Classes, in the aggregate.

F.    **Deadlines Applicable to Resolicitation of DCL Plan**

38.    In order to facilitate the expeditious confirmation of the DCL Plan, the

Debtors request that the Court establish the following deadlines applicable to the resolicitation

and tabulation of votes to accept or reject the DCL Plan, as amended:

- **December 12, 2011** as the supplemental voting record date for the purpose of identifying Holders of Claims in the Revoting Classes that are entitled to vote on the Third Amended DCL Plan (the "Supplemental Voting Record Date");

- **December 23, 2011** as the filing deadline for 3018 Motions (defined below);

- **January 20, 2012** as the supplemental voting deadline for Holders of Claims in the Revoting Classes to return Supplemental Ballots and Supplemental Master Ballots, as applicable (the "Supplemental Voting Deadline"); and

- **January 27, 2012** as the deadline for the Voting Agent to file the results of its tabulation of votes to accept or reject the Third Amended DCL Plan (the "Supplemental Tabulation Deadline").

1.    **Supplemental Voting Record Date**

39.    For the purpose of soliciting votes in connection with the confirmation of

a plan of reorganization, "creditors and equity security holders shall include holders of stock,

bonds, debentures, notes, and other securities of record on the date the order approving the

disclosure statement is entered or another date fixed by the court, for cause, after notice and a

hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision

regarding determination of the record date for voting purposes. See Fed. R. Bankr. P. 3018(a).[22]

40.    The Revoting Classes include, inter alia, Holders of Tribune's prepetition

Senior Notes and PHONES Notes, each of which are actively traded and hence have a changing

---

[22] Bankruptcy Rule 3018(a) provides, in relevant part, that "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing."

ownership. In addition, General Unsecured Claims in other Revoting Classes may be traded. In order to provide the Voting Agent with sufficient time to obtain the necessary records to identify the Holders of all Claims in advance of the date the order approving this Motion may be entered, the Debtors propose that the Court establish **December 12, 2011** as the Supplemental Record Date for the Revoting Classes, for purposes of determining which Holders of Claims in the Revoting Classes are entitled to vote to accept or reject the DCL Plan.

41.     Given that the Debtors do not propose to have the votes previously cast by the Revoting Classes used in computing acceptance or rejection of the Third Amended DCL Plan, using an up-to-date population of creditors will help to ensure that the vote accurately reflects the views of creditors that will receive the modified treatment contemplated under the Third Amended DCL Plan. The proposed Supplemental Record Date is the first business day prior to the date set for hearing of this Motion, and accordingly represents a reasonable date for fixing the identities of the Holders of Claims entitled to accept or reject the DCL Plan.

### 2.     Supplemental Voting Deadline

42.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or interests may vote to accept or reject a plan. Fed. R. Bankr. P. 3017(c). Assuming that an order approving this Motion is entered on December 13, 2011 (the scheduled hearing date on the Motion) or shortly thereafter, the Debtors anticipate that mailing of the Resolicitation Packages relating to the Third Amended DCL Plan to Holders of claims in the Revoting Classes would be completed by December 20, 2011.

43.     Given that timeframe, the Debtors respectfully request that the Court set **January 20, 2012 at 4:00 p.m. (prevailing Eastern Time)** as the Supplemental Voting Deadline by which all Supplemental Ballots and Supplemental Master Ballots must be properly

executed, completed, delivered to, and actually received by the Voting Agent. The Debtors

further request that the order approving this Motion specify that Supplemental Ballots and

Supplemental Master Ballots must be returned to the Voting Agent by first-class mail postage

prepaid, by personal delivery, or by overnight courier, and may not be transmitted by e-mail,

facsimile, or other electronic means.

44.     This proposed schedule will afford the Holders of Claims in the Revoting

Classes an adequate period to review the Third Amended DCL Plan and Supplemental

Disclosure Document, make an informed decision whether to accept or reject the Third Amended

DCL Plan and make applicable elections, and return their Supplemental Ballots and

Supplemental Master Ballots to the Voting Agent, while not unduly delaying the progress of the

Debtors' Chapter 11 Cases consistent with the timetable for the Confirmation Hearing requested

herein. The Debtors have further verified with the Voting Agent that the approximately thirty

(30) day time period will permit the Voting Agent to distribute the Resolicitation Packages in

sufficient time for the Holders of Senior Noteholder Claims and PHONES Notes Claims to make

elections and cast votes on the Third Amended DCL Plan, and return their documentation to the

Voting Nominees for submission by such Voting Nominees to the Voting Agent, by the

Supplemental Voting Deadline.

### 3.     Deadline for Filing of Supplemental Tabulation Report

45.     The Debtors further request that the Court establish **January 27, 2012** as

the Supplemental Tabulation Deadline for the Voting Agent to file the results of its tabulation of

votes to accept or reject the Third Amended DCL Plan. This deadline will ensure that the Voting

Agent has sufficient opportunity to complete tabulation of the Supplemental Ballots and

Supplemental Master Ballots while permitting the Court, the Debtors, and other parties in

interest to obtain and review the supplemental tabulation reports in advance of the anticipated commencement of the Confirmation Hearing in the first week of February 2012.

G.    **Submission of Rule 3018 Motions**

46.    If any Holder of a Claim in one of the Revoting Classes wishes to have its Claim allowed for purposes of voting to accept or reject the Third Amended DCL Plan in a manner that is inconsistent with the amount or classification(s) set forth on the Supplemental Ballot (or Supplemental Beneficial Ballot) it received, or if any party that did not receive a Supplemental Ballot wishes to have its Claim temporarily allowed for voting purposes only, such Holder must serve on the DCL Plan Proponents and file with the Court, on or before **December 23, 2011**, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "3018 Motion"). Any such 3018 Motion must set forth, with particularity, the amount and classification in which such Holder believes its Claim should be allowed for voting purposes and the evidence in support of its belief. In respect of any timely-filed 3018 Motion, the Supplemental Ballot or Supplemental Beneficial Ballot in question shall be tabulated (a) in the amount established by the Court pursuant an order entered on or before the Supplemental Voting Deadline, or (b) if such an order has not been entered by the Supplemental Voting Deadline and unless the DCL Plan Proponents and the party submitting the 3018 Motion have come to an agreement as to the relief requested in the 3018 Motion, in an amount equal to (i) the liquidated, non-contingent, and non-disputed amount of such Claim as set forth in the Debtors' schedules of assets and liabilities; (ii) if a proof of claim has been timely filed in respect of such Claim, the liquidated, non-contingent, and non-disputed amount set forth in such proof of claim; or (iii) if neither (i) nor (ii) applies, such party shall not have a Supplemental Ballot counted at all. Any such 3018 Motions that are filed shall be scheduled for a hearing by the Court at the January 11, 2012 omnibus hearing.

47.    With respect to the Holders of PHONES Notes Exchange Claims, the Court's First Solicitation Order shall continue to govern the allowance of such claims solely for the purposes of re-voting on and making elections under the Third Amended DCL Plan, in accordance with the procedures set forth in this Motion.  (See First Solicitation Order at ¶ 25.) The allowance of PHONES Notes Exchange Claims pursuant to section 3018(a) of the Bankruptcy Code shall not constitute a determination by the Court as to the allowance or classification of such Claims for any other purpose.

**III.    Authorization for Votes and Elections on the Second Amended DCL Plan Made by Holders of Claims Whose Treatment Is Not Materially and Adversely Altered to Count as Votes on and Elections under the Third Amended DCL Plan**

48.    The Debtors request that the votes cast on and elections made under the Second Amended DCL Plan by Holders of Senior Loan Claims and Senior Guaranty Claims (Classes 1C and 50C-111C), Bridge Loan Claims and Bridge Loan Guaranty Claims (Classes 1D and 50D-111D), and Holders of General Unsecured Claims against the Filed Subsidiary Debtors that had at least one impaired accepting Class (Classes 3E, 8E, 9E, 11E, 16E, 17E, 21E, 39E, 41E, 44E, 45E and 50E-111E) (collectively, the "Non-Resolicited Classes") continue to be tabulated as votes on the Third Amended DCL Plan.[23]  The Debtors further request that any Holders of Other Parent Claims that elected to have their Claims treated as Convenience Claims as part of the prior solicitation processes undertaken on the DCL Plan continue to have that treatment election recognized.

49.    Under section 1127(d) of the Bankruptcy Code, "[a]ny holder of a claim . . . that has accepted or rejected a plan is deemed to have accepted or rejected, as the case

---

[23] Additionally, the treatment of Priority Non-Tax Claims, Other Secured Claims, Convenience Claims, Intercompany Claims, Securities Litigation Claims and Tribune Interests are receiving the same treatment under the Third Amended DCL Plan as they did under the Second Amended DCL Plan and therefore the prior deemed acceptance or deemed rejection of the DCL Plan, as the case may be, by those classes will continue for purposes of the Third Amended DCL Plan.

may be, such plan as modified, unless, within the time fixed by the court, such holder changes

such holder's previous acceptance or rejection." 11 U.S.C. § 1127(d).  As discussed above in

detail in Section II of this Motion, case law has interpreted section 1127(d) to mean that when a

plan is modified, a holder of a claim that has previously accepted the plan must be afforded the

opportunity to reconsider its vote if the treatment of such claim is changed "materially and

adversely." Am. Solar King Corp., 90 B.R. at 824-825; Sentinel Mgmt. Group, 398 B.R. at 301;

USN Commc'ns, 280 B.R. at 594-97. See also Fed. R. Bankr. P. 3019(a).

      50.     The Third Amended DCL Plan is the Second Amended DCL Plan "as

modified" within the meaning of section 1127(d).  Under the Third Amended DCL Plan, the

treatment of Claims in the Non-Resolicited Classes is not materially affected by the limited

modifications reflected in the Third Amended DCL Plan.  Holders of Claims in such Classes will

continue to receive substantially the same distributions they did under the Second Amended

DCL Plan.[24]  Holders of Claims in the Non-Resolicited Classes are therefore not likely to

reconsider their acceptances because they are receiving the same treatment under the Third

Amended DCL Plan that they voted to accept or reject under the prior version of the Plan.

Accordingly, the votes cast by the Holders of such Claims on the DCL Plan (which were

---

[24] Two modifications reflected in the Third Amended DCL Plan may theoretically impact Holders of Claims in Classes that are not being resolicited in ways that are neither material nor adverse.  First, the overall distributions on account of creditors' percentage recoveries for their Allowed Claims may marginally increase as a result of the Court's determination regarding distributable enterprise value in the Confirmation Opinion.  That determination increased Debtors' DEV to $7.019 billion, which remained within the range of the valuation presented by the DCL Plan Proponents at the Confirmation Hearing.  Second, the scope of the releases being granted to certain parties under the DCL Plan has been modified in response to the Confirmation Opinion in two respects: (a) the Debtors' Related Persons have been removed from the definition of Released Parties and (b) the carve-out of MSCS from the definition of Released Parties will be limited generally to capacities other than MSCS's capacity as a Senior Lender. (See Third Amended DCL Plan at 11.2.1 and 1.1.205, respectively.)  Taken together, these modifications reflect a potential improvement in the treatment of Claims against the Debtors overall, with no corresponding potential detriment to any Holders of Claims.

overwhelmingly in favor of the DCL Plan), should continue to count as acceptances or

rejections, as the case may be, of the Third Amended DCL Plan.[25]

## IV.    Scheduling the Confirmation Hearing and Establishing Notice And Objection Procedures and Deadlines in Respect Thereof

        51.    The Debtors and the other DCL Plan Proponents agree entirely with the

Court's view that the Chapter 11 Cases should proceed to an expeditious and economical

resolution.  See Confirmation Opinion at 125 ("[t]he Court is of the determined view that the

Debtors must promptly find an exit door to this chapter 11 proceeding.")  The Third Amended

DCL Plan has been proposed and filed less than three (3) weeks after the Confirmation Opinion

was issued to provide precisely that exit door.  To proceed through the exit, the Debtors propose

a schedule below intended to achieve a near-term Confirmation Hearing in the first week of

February 2012.

### A.    Scheduling the Confirmation Hearing

        52.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall
> fix a time within which the holders of claims and interests may
> accept or reject the plan and may fix a date for the hearing on
> confirmation.

Fed. R. Bankr. P. 3017(c).  In accordance with Bankruptcy Rule 3017(c) and in light of the

Debtors' proposed solicitation schedule outlined herein, the Debtors propose that the Court fix

the Confirmation Hearing for a period of up to two consecutive calendar days commencing in the

first week of February 2012.  Such a date will provide the DCL Plan Proponents sufficient time

to solicit votes on the DCL Plan in accordance with the schedule described herein and to notify

the required parties of the Confirmation Hearing date.  The Debtors also request that the Court

---

[25] As discussed above in Section II of this Motion, Holders of Claims in the Subsidiary Revoting Classes will be provided the additional opportunity to cast votes to accept or reject the DCL Plan, in accordance with the Confirmation Opinion.

order that the Confirmation Hearing may be continued from time to time without further notice to creditors or other parties in interest.

**B.      Establishing Procedures for Notice of the Confirmation Hearing**

53.      Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice to all creditors, indenture trustees and equity security holders of the time fixed for filing objections to confirmation of a plan of reorganization and the hearing to consider confirmation of a plan of reorganization.  In accordance with the Bankruptcy Rules, except as otherwise provided in the Court's Prior Solicitation Orders,[26] the Debtors propose to provide a notice of the confirmation hearing (the "Confirmation Hearing Notice"), substantially in the form annexed to this Motion as Exhibit G, to all known creditors, parties filing a notice of appearance in these cases, governmental units having an interest in these cases, indenture trustees and equity interest holders, each as of the Supplemental Voting Record Date, with the exception of Holders of Customer Program Claims and Holders of Intercompany Claims, as provided in the First Solicitation Order.[27]

54.      The Confirmation Hearing Notice provides recipients with updated key information concerning the status of the DCL Plan and the Confirmation Hearing, as well as information concerning the casting of votes to accept or reject the DCL Plan for Holders of Claims in the Revoting Classes, the deadline for and manner for submitting objections to confirmation of the DCL Plan, other information useful for stakeholders concerning the DCL Plan and the Confirmation Hearing, and important deadlines relating thereto.

---

[26] See First Solicitation Order at ¶¶ 14-17 (establishing procedures for providing notice to, inter alia, Holders of Non-Voting Claims and Interests, Holders of Customer Program Claims, Holders of Intercompany Claims, Holders of Claims Against and Interests In Guarantor Non-Debtors or Subsidiary Non-Debtors).

[27] See First Solicitation Order at ¶ 15.

55.     The Debtors further request that the order approving this Motion provide, pursuant to Bankruptcy Rule 2002(l) (which permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice"), that the mailed Confirmation Hearing Notice be supplemented by published notice of the Confirmation Hearing (the "Publication Notice"), substantially in the form annexed to this Motion as Exhibit H, being placed once each in the national editions of The Wall Street Journal, The New York Times, the Los Angeles Times, and the Chicago Tribune not less than twenty-eight (28) days before the Objection Deadline.  In light of the size of these Chapter 11 Cases, such Publication Notice provides adequate notice of the Objection Deadline and the Confirmation Hearing to persons who will not otherwise receive notice by mail, and the Debtors request that the Court order that the scope and form of Publication Notice are adequate for such purpose.

**C.     Establishing Procedures and Deadlines for Filing Objections to Confirmation of the DCL Plan**

56.     Bankruptcy Rule 3020(b) provides that objections to confirmation of a proposed plan of reorganization must be filed with the bankruptcy court and served on the debtor, the trustee, any committee appointed under the Bankruptcy Code, and on any other entity designated by the bankruptcy court, within a time specified by the bankruptcy court.  Fed. R. Bankr. P. 3020(b).  The Debtors request that the Court fix a date approximately two (2) weeks before the date scheduled for the renewed commencement of the Confirmation Hearing as the last date for filing and serving any written objections to confirmation of the Plans (including any supporting memoranda) (the "Objection Deadline").  The Debtors request that the Court direct that objections to confirmation of the DCL Plan, if any, (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan; and (iv) be

33

filed with the Court, together with proof of service, and served so that they are received on or

before the Objection Deadline on counsel for each of the DCL Plan Proponents. The Debtors

further request that the Court fix a date approximately one (1) week before the date scheduled for

the commencement of the Confirmation Hearing as the deadline for the Debtors to file a reply to

any objections to confirmation of the DCL Plan that are filed in accordance with the procedures

set forth herein.

## V.   **Additional Implementing Relief**

### A.   **Media Ownership Certifications**

57.     The Court had previously established deadlines for receiving Media

Ownership Certifications from potential holders of more than 5% of the common stock of

Reorganized Tribune.[28] In connection with those prior deadlines, the Debtors received no

credible Media Ownership Certifications from any potential 5% holders not already known to the

Debtors.

58.     Based on the Debtors' prior interactions with likely potential 5% holders,

and given that in the prior solicitation processes no other credible potential 5% holders have

surfaced, the Debtors request that the Court not require a new deadline for the submission of

Media Ownership Certifications. In addition, the Debtors will work with known potential 5%

holders to ensure their certifications are complete, and the Debtors will additionally work with

any new potential 5% holders that become known to them and are credible to ensure that they

complete a Media Ownership Certification if reasonably necessary, in the Debtors' judgment, to

facilitate the Debtors' emergence from these chapter 11 cases. The Debtors accordingly request

---

[28] See First Solicitation Order at ¶ 46; Order (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries; (III) Establishing Deadlines for Return of Media Ownership Certifications; (IV) Scheduling Confirmation Hearing; (V) Establishing Notice and Objection Procedures in Respect of Confirmation of Amended Joint Plan of Reorganization; and (VI) Granting Related Relief at ¶ 42 [Docket No. 4707].

that the order approving this Motion not require the establishment of a new deadline for the

return of Media Ownership Certifications.

**B.      Filing of Amended Plan Supplement**

59.      On January 31, 2011, March 2, 2011, and March 7, 2011, the DCL Plan

Proponents filed various Exhibits to the DCL Plan with the Court [Docket Nos. 7701, 8231,

8283] (collectively, the "Plan Supplement").[29]  To the extent that any amendments to the Plan

Supplement are required in order to conform the terms of such Exhibits to the terms of the DCL

Plan, as amended, the Debtors will file such amendments (the "Amended Plan Supplement")

seven days prior to the Objection Deadline.

## NOTICE

60.      Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel for

the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the

administrative agent for the Debtors' post-petition loan facility; (v) counsel for the Noteholder

Plan Proponents; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.

In light of the nature of the relief requested herein, the Debtors submit that no other or further

notice is necessary.

---

[29] The Plan Supplement consists of the following Exhibits to the DCL Plan:  (i) Exhibit 1.1.122 (Terms of
Intercompany Claims Settlement Agreement); (ii) Exhibit 1.1.154 (Terms of New Warrant Agreement); (iii) Exhibit
1.1.192 (Individuals Excluded From Released Step Two Stockholder Parties); (iv) Exhibit 5.2 (Restructuring
Transactions); (v) Exhibit 5.3.1(1) (Certificate of Incorporation of Reorganized Tribune); (vi) Exhibit 5.3.1(2) (By-
Laws of Reorganized Tribune); (vii) Exhibit 5.3.1(3) (Registration Rights Agreement); (viii) Exhibit 5.3.2(1) (Initial
Officers of Reorganized Tribune); (ix) Exhibit 5.3.2(2) (Initial Directors of Reorganized Tribune); (x) Exhibit 5.3.3
(Initial Directors & Officers of Reorganized Debtors Other Than Reorganized Tribune); (xi) Exhibit 5.6 (Terms of
New Senior Secured Term Loan); (xii) Exhibit 5.10 (Terms of Exit Facility); (xiii) Exhibit 5.13 (Terms of Trusts'
Loan Agreement); (xiv) Exhibit 6.3 (Rejected Executory Contracts and Unexpired Leases); (xv) Exhibit 13.1
(Litigation Trust Agreement); and (xvi) Exhibit 14.1 (Creditors' Trust Agreement).

## <u>NO PRIOR REQUEST</u>

61.    No prior request for the relief sought herein has been made to this or to any other Court.

[Remainder of Page Intentionally Left Blank]

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached hereto:  (i) approving the Supplemental Disclosure Document respecting the DCL Plan; (ii) establishing the scope, forms, procedures, and deadlines for the resolicitation and tabulation of votes to accept or reject the Third Amended DCL Plan, including forms of Supplemental Ballots, Supplemental Beneficial Ballots, Supplemental Master Ballots, and related Instructions to be used by Holders of Claims in Revoting Classes in voting to accept or reject the DCL Plan and making elections thereon; (iii) authorizing the continued tabulation of votes and elections previously made on the DCL Plan by the Holders of Claims in impaired Classes other than the Revoting Classes for purposes of the Third Amended DCL Plan; (iv) scheduling the Confirmation Hearing and establishing notice and objection procedures and fixing necessary dates and deadlines in respect thereof; and (v) granting such other and further relief as the Court deems just and proper.

Dated: November 18, 2011

> SIDLEY AUSTIN LLP
> James F. Conlan
> Kevin T. Lantry
> Kenneth P. Kansa
> Jillian K. Ludwig
> One South Dearborn Street
> Chicago, IL  60603
> Telephone:  (312) 853-0199
>
> -and-
>
> COLE, SCHOTZ, MEISEL, FORMAN &
> LEONARD, P.A.
>
> By: _____
> Norman L. Pernick (No. 2290)
> J. Kate Stickles (No. 2917)
> Patrick J. Reilley (No. 4451)
> 500 Delaware Avenue, Suite 1410
> Wilmington, DE  19801
> Telephone:  (302) 652-3131
>
> Counsel for Debtors and Debtors in Possession