## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:** December 13, 2011 at 1:00 p.m. EDT<br>**Objection Deadline:** December 6, 2011 at 4:00 p.m. EDT |

### MOTION OF TRIBUNE COMPANY FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT AGREEMENT BETWEEN TRIBUNE COMPANY AND RANDY MICHAELS

Tribune Company (the "Company" or "Tribune"), one of the debtors and debtors

in possession herein (each a "Debtor" and, collectively, the "Debtors"), hereby moves this Court

(the "Motion") for entry of an order pursuant to section 363 of title 11 of the United States Code

(the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 9019 (the "Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); and WLVI Inc. (8074); WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Rules") authorizing Tribune to compromise and settle the disputed post-petition claims of Randy

Michaels, a/k/a Benjamin Homel ("Michaels") against Tribune, upon the terms and conditions

set forth in that certain Settlement Agreement and General Release (the "Settlement Agreement")

by and between Tribune and Michaels.  In support of this Motion, Tribune submits the

Declaration of Eddy Hartenstein (the "Hartenstein Declaration"), the President and Chief

Executive Officer of Tribune (the "CEO"), attached as Exhibit A hereto, and respectfully states

as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), each of the debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008,

the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes

only.  An additional Debtor, Tribune CNLBC, LLC,[2] voluntarily commenced a chapter 11 case

on October 12, 2009, and that case was procedurally consolidated with the other Debtors'

chapter 11 cases by an order of the Court entered October 14, 2009.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

Nos. 43, 2333.]

3.      The Debtors have continued in possession of their respective properties and

have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the "Creditors Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## RELEVANT BACKGROUND

6.      Beginning in December of 2009, Michaels was employed as the President and Chief Executive Officer of Tribune and also served as a member of the board of directors of Tribune (the "Board of Directors").[3]  On October 22, 2010, Michaels tendered his resignation to the Board of Directors.

7.      Following his resignation, Michaels alleged certain claims against Tribune principally including a claim for payment of a pro-rated bonus award allegedly due under Tribune's 2010 Management Incentive Plan (the "2010 MIP"), in which Michaels was a participant.  The 2010 MIP, which was approved by this Court on November 10, 2010, generally provides for the establishment of a bonus pool to the extent that certain consolidated operating cash flow goals approved by the Board of Directors and the requirements of the 2010 MIP are met.[4]  Once a bonus pool is established, management employee participants are eligible for awards determined in accordance with the terms of the 2010 MIP.

8.      Among other requirements, under the 2010 MIP, "[a] participant generally must be employed on the date of payment to receive a MIP award, except in cases of death

---

[3] Michaels began employment with Tribune in December of 2007 as Chief Operating Officer of Tribune's broadcasting and interactive operations.

[4] See Order Authorizing the Debtors to Implement a Management Incentive Plan for 2010 [Docket No. 6323].

disability, retirement or termination without cause, which would result in a pro-rated payment

based on length of service during the year."[5] Tribune understands Michaels' principal position

to be that his resignation was involuntary and equivalent to a termination without cause, and that

he resigned at the Board of Directors' alleged express or implied request because he understood

that his employment purportedly would otherwise be terminated.

9.    Based on Michaels' October 22, 2010 resignation date, if eligible to

receive a payment under the 2010 MIP for termination without cause, his pro-rated award would

equal approximately $900,000.

10.    Tribune believes that it has defenses to Michaels' claims. Nevertheless, to

avoid the risks, costs and burdens of litigation, Tribune and Michaels (represented by legal

counsel) negotiated and have agreed on the terms of a resolution of Michaels' disputed post-

petition claims. As discussed further below, the agreed-upon settlement payment is $675,000,

plus up to (and not exceeding) $50,000 to reimburse Michaels' documented actual and

reasonable attorneys' fees through the effective date of the Settlement Agreement (collectively,

the "Settlement Amount"). This Settlement Amount not only compromises and resolves

Michaels' claims for less than the asserted amount of his 2010 MIP payment, but also secures to

the Company various additional rights and benefits, including without limitation confidentiality

and intellectual property clauses, an employee non-solicitation restriction, and a

nondisparagement clause. Michaels is not currently a party to any employment, confidentiality

or other such agreement with the Company.

11.    This settlement is the culmination of extensive negotiations between

Tribune and Michaels. It also is the product of careful consideration by the Company and its

---

[5] The terms of the 2010 MIP are set forth in the Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan For 2010 [Docket No. 4620], as revised pursuant to the Debtors' Notice of Revision of 2010 Management Incentive Plan [Docket No. 5112].

46429/0001-8036585v1

Board of Directors, following an investigation of the applicable facts and a review of the applicable law. The Company has also reviewed and discussed the proposed settlement terms and the justification for the settlement with the Creditors Committee and the United States Trustee. The Creditors Committee independently considered these issues and provided material input, particularly as to the negotiated Settlement Amount. Ultimately, the Board of Directors as well as senior Company management determined in their respective considered judgment that resolving Michaels' claims through this negotiated settlement, rather than through protracted litigation, is in the best interests of the Company and its estate and creditors.

12.    The Creditors Committee and the United States Trustee do not object to the relief requested in this Motion. Furthermore, Tribune has provided information regarding the principal settlement terms to, and discussed the background thereto with, counsel for JPMorgan Chase Bank, N.A. ("JPM"), counsel for Oaktree Capital Management, L.P. ("Oaktree") and Angelo, Gordon & Co., L.P. ("Angelo Gordon" and, together with JPM and Oaktree, the "Principal Senior Lenders"), and counsel for Aurelius Capital Management, LP ("Aurelius").

## THE SETTLEMENT AGREEMENT

13.    The terms of the parties' negotiated settlement are set forth in the Settlement Agreement, which has been executed by the parties, subject to this Court's approval.[6] The Settlement Agreement resolves any claims of Michaels against Tribune, including without limitation any claims arising in connection with Michaels' former employment with Tribune. A summary of the salient terms of the Settlement Agreement is set forth below:[7]

---

[6] Consistent with the negotiated confidentiality provisions of the Settlement Agreement, the Debtors will provide a copy of the Settlement Agreement to the Court upon request should the Court wish to see a copy.

[7] In the event of any discrepancy between this summary and the Settlement Agreement, the language of the Settlement Agreement shall govern.

- Settlement Amount.  In consideration for the settlement of Michaels' disputed claim for a pro-rated 2010 MIP award, his settlement and release of any other claims, and the additional covenants contained in the Settlement Agreement (described below), within five (5) business days following the revocation period set forth in the Settlement Agreement,[8] but in no event later than December 31, 2011 (provided that the Court approves the Settlement Agreement by that time and the foregoing revocation period has passed), Tribune shall pay Michaels the Settlement Amount, which as noted consists of $675,000, less any authorized withholdings deductions, and reimbursement of Michaels' documented actual and reasonable attorneys' fees through the effective date of the Settlement Agreement, up to (and not exceeding) $50,000.

- Participation in Incentive/Release Plans.  Michaels shall not participate in or receive payment under any current or future incentive or severance program(s) that the Company or any of its affiliates may implement.

- Michaels' Release of Claims.  Michaels releases the Company and the other Released Parties set forth in the Settlement Agreement from all claims that Michaels now has or has ever had against the Company or any of the other Released Parties[9] set forth in the Settlement Agreement arising from or related to any act, omission, or thing occurring or existing at any time prior to or on the date on which Michaels signs the Settlement Agreement.  The claims waived, relinquished and released by Michaels under the Settlement Agreement include his disputed claim for a 2010 MIP award, and further include, but are not limited to:

  (a) all claims arising out of or related in any way to Michaels' employment, compensation, other terms and conditions of employment, or termination from employment with the Company or any of the other Released Parties, including without limitation all claims for any compensation payments, bonus, severance pay, equity, or any other compensation or benefit;

  (b) all claims that were or could have been asserted by Michaels or on Michaels' behalf:  (i) in any federal, state, or local court, commission, or agency; (ii) under any common law theory; or (iii) under any services, employment,

---

[8] Because Michaels is over age 40 and thus covered by the federal Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq., the Settlement Agreement includes a release of claims under the ADEA.  The ADEA provides that an agreement waiving claims thereunder must, among other things, permit the releasing party to revoke the agreement within seven days after signing it. Id. § 626(f)(2)(G).

[9] The term "Released Parties" (and, when used singularly, the term "Released Party") as used in the Settlement Agreement includes: (a) the Company and its past, present, and future parents, divisions, subsidiaries, partnerships, other affiliates, and other related entities (whether or not they are wholly owned); and (b) the past, present, and future owners, trustees, shareholders, directors, officers, partners, members, employees, agents and representatives of each entity listed in subpart (a) above (in each case, in all capacities in which such persons served the Company or any of the other entities listed in subpart (a) above); and (c) the predecessors, successors, and assigns of each person and entity listed in subparts (a) and (b) above.

46429/0001-8036585v1

contract, tort, federal, state, or local law, regulation, ordinance, constitutional provision, or executive order; and

(c) all claims that were or could have been asserted by Michaels or on Michaels' behalf arising under any of the following laws, as amended from time to time: the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Lilly Ledbetter Fair Pay Act of 2009, the Employee Retirement Income Security Act, the Family and Medical Leave Act, the Illinois Human Rights Act, the Illinois Wage Payment and Collection Act, and the Chicago and Cook County Human Rights Ordinances;

provided that if a Released Party subsequently asserts any claims against Michaels relating to his employment, compensation, other terms and conditions of employment or separation, he can assert claims and defenses against that Released Party solely to offset any damages award against him (he may not seek or receive any affirmative recovery). The Company and the other Released Parties are not releasing any claims against Michaels in the Settlement Agreement.

- <u>Exempted Claims</u>. The Settlement Agreement does not waive or release: (a) any claim that cannot be waived or released by law; (b) any claim to enforce the Settlement Agreement; (c) any claim for any vested benefits to which Michaels is otherwise entitled pursuant to the terms and conditions of any of applicable benefit plans (other than any incentive or severance plans, if any); (d) any claim for workers' compensation or unemployment insurance benefits; or (e) any claim, if any, to indemnification under any applicable law, any Company by-laws, or any director and officer insurance.

- <u>Confidential Information and Communications</u>. Except as required by law or as expressly authorized in writing by the CEO of Tribune, Michaels shall not directly or indirectly use, disclose, or take any action which may result in the use or disclosure of, any Confidential Information.[10] During the Company's chapter 11 proceedings, Michaels also is not to communicate with any employee or representative (if involved in the bankruptcy) of any lender, creditor or a

---

[10] As used in the Settlement Agreement, the term "Confidential Information" includes all competitive, pricing, marketing, proprietary and other information or materials relating or belonging to the Company or any of its affiliates (whether or not reduced to writing), including without limitation all confidential or proprietary information furnished or disclosed to or otherwise obtained by Michaels in the course of his employment, and further includes without limitation: computer programs; patented or unpatented inventions, discoveries and improvements; marketing, organizational, operating and business plans and processes; strategies; research and development; policies and manuals; sales forecasts; personnel information (including without limitation the identity of Company employees, their responsibilities, competence and abilities, and compensation); medical information about employees; pricing and nonpublic financial information; current and prospective customer lists and information on customers or their employees; information concerning planned or pending acquisitions, investments or divestitures; and information concerning purchases of major equipment or property. "Confidential Information" does not include information that lawfully is or becomes generally and publicly known outside of the Company and its affiliates other than through Michaels' breach of the Settlement Agreement or breach by any person of some other obligation.

46429/0001-8036585v1

constituency thereof, regarding bankruptcy-related matters absent a Company request or legal requirement.

- Intellectual Property.  Michaels acknowledges and agrees that the Company owns the sole and exclusive right, title and interest in and to, among other things, any and all copyrights, trademarks, service marks, trade names, slogans, inventions (whether patentable or not), patents, invention disclosures, ideas, designs, trade secrets, concepts and other intellectual property created during Michaels' employment, on Company time, using Company property or information, and/or relating to any Company business, research and development, information or his work for the Company.

- Employee Nonsolicit:  For six months after the Settlement Agreement becomes effective, Michaels cannot (himself or through anyone else) solicit any executive- or officer-level employee of the Company or an affiliate to depart.

- Nondisparagement:  The Settlement Agreement contains a mutual three-year nondisparagement clause (which, in the Company's case, applies to intentional statements by directors and senior executive officers made on its behalf); however, either party may respond truthfully and in good faith to any statements in any article or report concerning such party by the other party, and may so respond to any such response by the other party.

- Condition Precedent to Effectiveness.  The Settlement Agreement and the effectiveness thereof are expressly subject to and conditioned upon court approval.

## RELIEF REQUESTED

14.    As stated, Tribune's Board of Directors and its current senior management, in the exercise of their respective sound business judgment, have determined that it is in the best interests of Tribune and its estate and creditors to enter into and satisfy its obligations under the Settlement Agreement.  In doing so, the Company investigated both the facts surrounding Michaels' allegations as well as the applicable law.  The disputed claims that will be resolved by the Settlement Agreement are post-petition claims relating to Tribune's ordinary business operations, principally including for payment of a 2010 MIP award already authorized by the Court.  Accordingly, Tribune believes that its entry into and performance of its

obligations under the Settlement Agreement are within the ordinary course of business for purposes of section 363 of the Bankruptcy Code, and therefore do not require Court approval.

15.    Nevertheless, Tribune has determined out of an abundance of caution to seek Court authorization to enter into the Settlement Agreement. By this Motion, Tribune respectfully requests that the Court enter an order, in the form attached hereto as Exhibit B, approving the Settlement Agreement in all respects and authorizing Tribune to enter into and carry out the terms of the Settlement Agreement.

**BASIS FOR RELIEF REQUESTED**

**A.    The Settlement Agreement is Fair, Reasonable, and in the Best Interests of Tribune's Estate, and Satisfies the Requirements of Bankruptcy Rule 9019**

16.    Section 363 of the Bankruptcy Code requires a hearing and court approval of a settlement between a debtor and an adverse party involving post-petition claims that might be deemed outside the ordinary course of business, and Federal Rule of Bankruptcy Procedure 9019 establishes the procedure by which a debtor may secure such approval. See Myers v. Martin (Martin), 91 F.3d 389, 395 n.2 (3d Cir. 1996). Federal Rule of Bankruptcy Procedure 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

17.    The decision to approve a settlement "is within the discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 291, 296 (Bankr. D. Del. 2006); see also In re Spansion, Inc., Case No. 09-10690, 2009 Bankr. LEXIS 1283, *12 (Bankr. D. Del. June 2, 2009) ("approval of a settlement pursuant to Bankruptcy Rule 9019 is committed to the discretion of the court"). In determining whether to approve a settlement pursuant to

9

section 363 of the Bankruptcy Code and Rule 9019, a court must "assess and balance the value

of the claim that is being compromised against the value to the estate of the acceptance of the

compromise proposal." Martin, 91 F.3d at 393.  The court need not decide the numerous

questions of law or fact raised by potential litigation, but rather, should canvass the issues to see

whether the settlement falls below the lowest point in the range of reasonableness.  In re Exide

Technologies, 303 B.R. 48, 68 (Bankr. D. Del. 2003) (citing In re Neshaminy Office Bldg.

Assoc., 62 B.R. 798, 803 (E.D.Pa. 1986)).  "The court must also consider 'all other factors

relevant to a full and fair assessment of the wisdom of the proposed compromise.'"  In re Marvel

Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (citing Protective Comm. for Indep.

Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  The ultimate

inquiry is whether, in the court's discretion, the compromise embodied in the settlement is fair,

reasonable, and in the best interest of the estate.  In re Louise's, Inc., 211 B.R. 798, 801 (D. Del.

1997).

      18.     The Third Circuit Court of Appeals has adopted a four-factor balancing

test for considering whether a settlement should be approved: "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors." Martin, 91 F.3d at 393; see also Will v. Northwestern Univ. (In re Nutraquest,

Inc.), 434 F.3d 639, 644 (3d Cir. 2006).  Tribune respectfully submits that, as further discussed

below, the Settlement Agreement meets and exceeds the applicable Martin factors, and should be

approved.

(a)    The Probability of Success in Litigation

19.    Absent entry into the Settlement Agreement, Tribune would be faced with the inherent uncertainties of litigation with Michaels. Litigation of employment-related claims such as those resolved by the Settlement Agreement typically is fact-specific. As noted, in considering the proposed settlement, the Company reviewed both the applicable facts and the applicable law. With respect to Michaels' claim for a pro-rated award under the 2010 MIP, courts have recognized the concept of "forced resignation" or "constructive discharge," whereby a resignation can be deemed an involuntary termination for certain purposes under the law depending on the facts surrounding the purported resignation. See, e.g., Hinthorn v. Roland's of Bloomington, Inc., 519 N.E.2d 909, 912 (Ill. 1988) (stating in retaliatory discharge case: "There are no magic words required to discharge an employee: an employer cannot escape responsibility for an improper discharge simply because he never uttered the words 'you're fired.' So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes."); Spaulding v. Abbott Laboratories, 2010 WL 4822894, at *4 (N.D. Ill. Nov. 22, 2010) (applying Hinthorn standard to contractual compensation dispute).

20.    As stated, Tribune believes that it has defenses to Michaels' claim for a pro-rated 2010 MIP award, even if Michaels could demonstrate as a factual matter that he was given a choice of resignation or termination. See, e.g., Cigan v. Chippewa Falls School Dist., 388 F.3d 331, 333 (7th Cir. 2004) (employee cannot resign and claim constructive discharge due to belief that there is a prospect or even likelihood of discharge); cf. Cullen v. City of West Allis, 2007 WL 2984709, at *10 (E.D. Wis. Oct. 10, 2007) ("The fact that the employee was given a

choice between unpleasant alternatives -- submitting a resignation to avoid termination for cause – does not itself demonstrate involuntariness").

21.     Again, to approve the proposed settlement, this Court need not decide these issues on the merits and need only make a determination that a sufficient possibility of success on Michaels' 2010 MIP claim exists to make the proposed settlement a valid business judgment. See In re Exide Technologies, 303 B.R. at 68.

22.     Notwithstanding each party's position, it is impossible, as with any litigation, to determine the potential outcome of any litigation of such claims with certainty. Tribune recognizes that there are inherent risks associated with litigation, and that it could potentially face liability if Michaels were to prevail.  Litigation also would involve operational burdens including time commitments for potential witnesses and other Company personnel.  The Settlement Agreement eliminates the uncertainty and burdens of such potential litigation.  Under the terms of the Settlement Agreement, subject only to the narrow exceptions set forth above, Michaels grants a full and complete release of all actual and potential claims against the Released Parties set forth in the Settlement Agreement, thereby alleviating Tribune from future litigation risks and related legal expenses.  Accordingly, Tribune submits that the first Martin factor weighs in favor of approving the Settlement Agreement.

(b)     The Likely Difficulties in Collection.

23.     The Settlement Agreement does not present any issues regarding collection.  Therefore, the second Martin factor weighs neither in favor nor against approval of the Settlement Agreement.

(c)    <u>The Complexity of the Litigation Involved, and Related Expense, Inconvenience and Delay.</u>

24.     The litigation resolved by the Settlement Agreement would be complex, time-consuming, inconvenient and expensive. Such litigation could continue for several years and would likely require burdensome discovery and legal fees.[11] A trial of Michaels' claim for a pro-rated payment under the 2010 MIP would involve litigation regarding the circumstances surrounding Michaels' departure. The Company respectfully submits that litigation in a public forum over such matters (as with any litigation against a former chief executive over separation-related issues) would be inherently distracting, burdensome to the Company and its personnel who would be involved in discovery, and, in the considered judgment of the Company's Board of Directors and its current senior management, contrary to the best interests of the Debtors and their estates and creditors.

25.     Such litigation also would expose Tribune to unnecessary defense costs and expenses, as well as the prospect of an adverse judgment on the merits, that could materially exceed the proposed Settlement Amount. Indeed, if Michaels were to seek to recover the disputed 2010 MIP payment under the Illinois Wage Payment and Collection Act ("IWPCA"), he could also request "damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid,"[12] plus "costs and all reasonable attorneys' fees." 820 ILCS 115/14(a).[13] Litigation of Michaels' $900,000

---

[11] See 2009 Annual Report of the Administrative Office of Illinois Court, available at http://www.state.il.us/court/ SupremeCourt/AnnReport.asp (reflecting a 37.7 month average time-lapse between the date of case filing and the date of entry of jury verdicts in Cook County, Illinois.)

[12] 2010 MIP awards were paid to participants in February 2011.

[13] The IWPCA creates, among other things, a statutory claim for recovery of "earned bonuses." See 820 ILCS 115/2, 4, 5, 14; see also 56 Ill. Admin. Code 300.500 ("A claim for an earned bonus [under the IWPCA] arises when an employee performs the requirements for a bonus set forth in a contract or an agreement between the parties.").

13

2010 MIP claim could, therefore, potentially expose Tribune not only to payment of the disputed claim, but also to potentially escalating damages of approximately $18,000 for each month the claim remains unresolved, and to payment of Michaels' costs and reasonable attorneys' fees (in addition to those of the Company).

26.    The Settlement Agreement, on the other hand, avoids the complexity, inconvenience, burdens and uncertainty of litigation, and represents a resolution of Michaels' 2010 MIP claim and any other potential claims against Tribune and the other Released Parties, with no further potential liability, costs or attorneys' fees being incurred by Tribune.

27.    Furthermore, the Settlement Agreement resolves the dispute and potential litigation and secures for the Company the additional rights described above for an aggregate Settlement Amount – $675,000 plus reimbursement of Michaels' documented actual and reasonable attorneys' fees through the effective date of the Settlement Agreement up to (and not exceeding) $50,000 – that is substantially less than the amount of Michaels' 2010 MIP claim alone (approximately $900,000).

28.    Accordingly, Tribune submits that the third Martin factor weighs in favor of approving the Settlement Agreement.

(d)    The paramount interest of the creditors.

29.    The Settlement Agreement is in the best interests of Tribune's estate and its creditors. As discussed above, the Creditors Committee independently considered and provided material input regarding the settlement, including with respect to the Settlement Amount that it found acceptable. The Company also provided information regarding the Settlement Agreement and background to the United States Trustee. The Creditors Committee and the United States Trustee do not object to the relief requested in this Motion. Furthermore,

14

the Company has provided the principal settlement terms and discussed the bases therefor with
counsel for the Principal Senior Lenders and Aurelius.

       30.    By eliminating Tribune's potential liability with respect to Michaels' 2010
MIP claim and any other potential claims and related defense costs and expenses, the Settlement
Agreement conserves Tribune's resources for the benefit of its estate and creditors.  Furthermore,
after evaluating the anticipated cost of litigating Michaels' 2010 MIP claim, the potential for
Michaels to assert additional claims in any such litigation, the inherent risk of an adverse ruling
in any litigation, and the benefits accruing to the Debtors from the additional covenants
contained in the Settlement Agreement, Tribune's Board of Directors and current senior
management determined that the value to its estate from the acceptance of the Settlement
Agreement significantly outweighs the Settlement Amount.  Accordingly, Tribune submits that
the fourth <u>Martin</u> factor weighs in favor of approving the Settlement Agreement.

      (e)    <u>Summary</u>

       31.    The Settlement Agreement resolves contested matters between Tribune
and Michaels as well as other potential claims, represents a substantial cost savings, and secures
additional valuable contractual rights and benefits for the Company.  Furthermore, the Settlement
Agreement is the product of extensive, arms-length negotiations between the parties and their
respective legal counsel, during which each party put forth facts and assertions in support of its
position which were contrary to the other party's position.  The end result of the negotiations is a
compromise that is materially below Michaels' demand, and that was carefully considered by the
Company's Board of Directors and its current senior management after due investigation of the
relevant facts and legal principles as well as material input by the Creditors Committee.  As
stated, the Creditors Committee and the United States Trustee do not object to the relief

requested in this Motion, and the Company's other principal creditor constituencies also have been apprised of the settlement terms. Tribune therefore believes that the Settlement Agreement is fair and reasonable and respectfully submits that it should be approved by the Court.

**B.    Payment of the Settlement Amount Satisfies the Requirements of Section 363(b) of the Bankruptcy Code, if Applicable**

32.    While Tribune believes that payment of the Settlement Amount falls within the ordinary course of business under section 363(c) of the Bankruptcy Code, out of an abundance of caution, Tribune submits that the proposed payment also satisfies the requirements of section 363(b) of the Bankruptcy Code, to the extent applicable. Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

33.    In this Circuit, courts have repeatedly approved the use of a debtor's assets outside of the ordinary course of business if the debtor can propose a sound business justification. See, e.g., Martin, 91 F.3d at 395 (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same). Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In other words, the business judgment rule essentially shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or gross abuse of discretion. See In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville Corp., 60 B.R. 612, 616

(Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

34.     For the reasons articulated above, Tribune's satisfaction of its obligations under the Settlement Agreement falls directly within the scope of the Company's valid business judgment.  Tribune believes that the terms of the Settlement Agreement are fair and reasonable, and that, by circumventing litigation with Michaels and the related costs and expenses, the Settlement Agreement maximizes the value of Tribune's estate for the benefit of all creditors. Accordingly, Tribune's entry into and satisfaction of its obligations under the Settlement Agreement is a sound business decision.

## NO PRIOR REQUEST

35.     No previous request for the relief requested in this Motion has been made in this or any court.

## NOTICE

36.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Creditors Committee; (iii) the administrative agents for Tribune's prepetition loan facilities; (iv) the administrative agent for the Debtors' post-petition loan facility; (v) counsel for Michaels; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

46429/0001-8036585v1

WHEREFORE, Tribune respectfully requests that the Court enter an order in the form attached hereto as <u>Exhibit B</u> approving the Settlement Agreement and granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
        November 22, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jonathan D. Lotsoff
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

      -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

46429/0001-8036585v1