## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:

TRIBUNE COMPANY, et al.,

              Debtors.

------------------------------------------------------- x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Objections Due:  December 13, 2011
@ 4:00 p.m.(ET)
Hearing Date:  N/A

---

### THIRTY-FOURTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2011 THROUGH OCTOBER 31, 2011

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | October 1, 2011 through October 31, 2011 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $321,774.20      (80% of $402,217.75) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $62,868.51 |

This is a(n):    _x_ Monthly    ____ Interim    ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application.  Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
| --- | --- | --- | --- |
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### October 1, 2011 through October 31, 2011

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2011 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | 985 | 21.70 | 21,374.50 |
| Richard M. Leder (1998) | Tax | 1962 (NY) | 985 | 0.80 | 788.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 895 | 23.50 | 18,213.25 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 855 | 57.70 | 49,333.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 725 | 87.50 | 62,277.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 725 | 20.30 | 14,717.50 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 685 | 14.10 | 9,658.50 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 675 | 99.10 | 65,745.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 495 | 16.10 | 7,969.50 |
| | | | | | |
| **Associate:** | | | | | |
| Keith Levenberg | Litigation | 2003 (NY) | 645 | 34.40 | 22,188.00 |
| Alexandra K. Nellos | Litigation | 2004 (NY) | 645 | 4.40 | 2,838.00 |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 625 | 19.30 | 12,062.50 |
| Robert Kirby | Litigation | 2008 (NY) | 535 | 7.00 | 3,745.00 |
| Rachel Kurth | Employee Benefits | 2009 (NY) | 495 | 16.90 | 8,365.50 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2011 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 495 | 34.30 | 16,978.50 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 425 | 1.10 | 467.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 425 | 109.20 | 46,410.00 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 375 | 1.80 | 675.00 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 375 | 66.00 | 24,750.00 |
| | | | | | |
| **Paraprofessionals:** | | | | | |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 280 | 26.70 | 7,476.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 285 | 21.70 | 6,184.50 |
| | | | | | |
| **TOTAL:** | | | | **683.60** | **$402,217.75** |

BLENDED RATE:     $595.88

---

\* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ---------------------------------------------------------- x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: December 13, 2011<br>@ 4:00 p.m.(ET) |
| ---------------------------------------------------------- x | Hearing Date:  N/A | |

## THIRTY-FOURTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OCTOBER 1, 2011 THROUGH OCTOBER 31, 2011

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $402,217.75 (80% of which equals $321,774.20 and reimbursement of expenses incurred in the amount of $62,868.51 during the period commencing October 1, 2011 through and including October 31, 2011 (the "Application Period").  This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order").  In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for relief requested herein are Sections 105(a), 330, 331 and 1103(a) of the Bankruptcy Code.

## BACKGROUND

3.     On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     On December 18, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

6.     On February 20, 2009, the Bankruptcy Court authorized the employment and retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.     On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.      Plan confirmation hearings for both the DCL Plan and the Noteholders' Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011. The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholders' Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011. Closing confirmation arguments were held on June 27, 2011.

9.      On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholders' Plan. The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholders' Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm. See Section 1129(c). The Court stated that, given those options, it would select the DCL Plan.

10.     On November 18, 2011, the proponents of the DCL Plan filed their Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries.

### COMPENSATION PAID AND ITS SOURCES

11.     All services for which compensation is requested by Chadbourne were performed for or on behalf of the Committee.

12.     During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity

---

[1]     The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank. The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company.

whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.     The fee statement for the Application Period is attached hereto as Exhibit A. This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period. To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2 (the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Application Period total $402,217.75. The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

15.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.** **Bankruptcy General (Matter 002)**

Fees:  $18,054.50          Total Hours:   37.10

16.    During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17.    Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**    **Committee Meetings (Matter 003)**

    Fees:  $24,349.50          Total Hours:  39.10

    18.     Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to the key issues.  In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates on plan confirmation matters.

    19.     Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

    Fees:  $2,645.50          Total Hours:  4.70

    20.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.**     <u>**Business Operations (Matter 007)**</u>

     Fees:   $19,619.00      Total Hours:   31.80

     21.      During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group continued to review and address potential implications on plan confirmation as a result of the recent Third Circuit ruling in the *Prometheus Radio Project v. FCC ("Prometheus")* case. Chadbourne's CMT professionals participated in discussions with FCC counsel for the DCL Plan and the Noteholders' Plan to prepare, finalize and file a letter alerting the Court as to the impact of the *Prometheus* decision and its potential implications on a confirmed plan. In addition, Chadbourne's CMT professionals reviewed and commented on amendments to the Debtors' FCC exit applications and participated in discussions with the Debtors' FCC counsel regarding same.

**E.**     <u>**Claims Administration/Bar Date (Matter 009)**</u>

     Fees:   $17,897.00      Total Hours:   32.80

     22.      During the Application Period, Chadbourne expended further time in reviewing the Debtors' efforts to settle certain claims brought against the Debtors. In particular, this work included review and analysis of a proposed settlement agreement with the Franchise Tax Board of the State of California regarding a disputed prepetition liability for corporate income taxes. Chadbourne attorneys preformed a review of the facts and details of the proposed settlement and consulted with the Committee's financial advisors regarding their analysis of the settlement. Chadbourne then summarized its analyses and recommendations in memoranda to the Committee.

23.     During the Application Period, Chadbourne attorneys continued to review and address requests of certain additional current and former officers of the Debtors (the "D&O Claimants") to submit late-filed claims.  Following the Court's approval of the Debtors' and Committee's joint motion establishing procedures for late-filed claims and related bar date motion, Chadbourne reviewed and participated in discussions with Debtors' counsel and counsel to certain D&O Claimants in efforts to prepare and negotiate subsequent stipulations for late-filed claims.

**F.**     **Fee/Retention Applications (Matter 010)**

Fees:   $15,112.50          Total Hours:  36.70

24.     Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparation and filing of Chadbourne's thirty-third monthly fee application and eleventh interim fee application. In addition, Chadbourne reviewed and analyzed quarterly fee applications for the tenth interim fee period for all case professionals in these Chapter 11 cases and revised and finalized a summary analysis for review by the Committee.  During this time, Chadbourne reviewed and addressed issues raised in the Fee Examiner's initial report on the Committee members' seventeenth and eighteenth monthly applications for reimbursement of expenses and finalized and submitted its response in connection therewith.

25.     In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**G.    Avoidance Issues (Matter 013)**

Fees:  $6,440.00          Total Hours:  9.60

26.    During the Application Period, Chadbourne attorneys continued to review and address various issues in connection with the potential preference actions asserted against current and former Tribune insiders and certain other entities (the "Preference Actions"). Chadbourne participated in discussions with the Committee's co-counsel about the need to seek a further extension of the stay on the Preference Actions to accommodate the on-going plan confirmation process.  In connection therewith, Chadbourne reviewed and commented on the appropriate court papers seeking the requested relief.  The stay was further extended to December 13, 2011 by Court Order dated October 31, 2011.

27.    During this time, Chadbourne continued to work with the Committee's co-counsel on preparing and filing the necessary counsel certification and proposed order in preparation for the hearing on the Committee's motion seeking dismissal of certain identified Preference Actions against current employees that fell under an established threshold amount.  The Court granted the Committee's motion by Order dated October 17, 2011.

**H.    Employee Issues (Matter 014)**

Fees:  $10,474.00          Total Hours:    15.60

28.    During the Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters. Chadbourne participated in discussions with Debtors' counsel to review strategies in preparation for the hearing on Debtors' proposed Management Incentive Plan for 2011 (the "2011 MIP").

Chadbourne attended and participated in the October 4, 2011 hearing on the 2011 MIP. No objections were raised and the Court approved the 2011 MIP.

29.     Further efforts included review and analysis of the departure terms reached for two senior executives of Tribune. In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departures and consulted with the Committee's financial advisors about their analysis of the departure arrangements. Chadbourne summarized its analysis and recommendations in memoranda to the Committee.

## I.     General Litigation (Matter 017)

Fees:   $196,588.50        Total Hours:   329.10

30.     During the Application Period, attorneys from Chadbourne's bankruptcy, tax and employee benefits groups continued to be engaged in reviewing and addressing various issues in connection with the Debtors' proposed settlement with the IRS to resolve tax issues related to the Tribune Employee Stock Ownership Plan (the "ESOP") (the "IRS Settlement"). If approved by the Bankruptcy Court, the IRS Settlement, together with the pending settlement with the plaintiffs in the *Neil* class action litigation, GreatBanc (trustee of the ESOP), the Department of Labor on behalf of ESOP participants, and the Debtors' fiduciary insurance providers for claims related to alleged ERISA violations by Tribune (the "ERISA Settlement"), would resolve the various ESOP-related claims that have been asserted against Tribune. In connection therewith, Chadbourne attorneys participated in discussions with Debtors' counsel regarding their negotiations with the IRS and reviewed and commented on various drafts of a proposed settlement agreement and related motion. Chadbourne prepared a comprehensive analysis of

the IRS Settlement for the Committee's review.  Ultimately, the IRS Settlement and the ERISA

Settlement were approved by the Court by Order dated October 19, 2011.

31.     During the Application Period, Chadbourne attorneys continued to review and

analyze certain issues raised in several recent decisions that could impact (both Tribune directly

and indirectly), including the *In re Washington Mutual* decision.  Counsel prepared a

memorandum to the Committee analyzing the issues and potential implications in the Tribune

cases.  In addition, Chadbourne reviewed and analyzed relevant documents in connection

therewith.

32.     Finally, Chadbourne attorneys continued to monitor and review the various

adversary proceedings pending in connection with the Debtors' Chapter 11 cases.

**J.      Travel (Matter 018)**

    Fees:    $5,126.75          Total Hours:    12.90

33.     During the Application Period, Chadbourne travelled to Wilmington, Delaware to

attend omnibus hearings at the Bankruptcy Court.  The hours reflect non-working travel time

and the fees requested are at 50% of Chadbourne's normal hourly rates.

**K.      Shareholder Claims (Matter 020)**

    Fees:    $22,120.00          Total Hours:    38.90

34.     During the Application Period, Chadbourne attorneys continued to review and

analyze case activity in connection with the various lawsuits filed by the Retirees[2] and the

---

[2]     The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110
affiliates or subsidiaries of Tribune Company.

Noteholders[3] seeking state law constructive fraudulent conveyance claims ("SLCFC Claims") against Tribune's former stockholders in connection with the 2007 leveraged buyout of Tribune Company. Chadbourne examined various issues raised in court filings and the related multidistrict litigation proceedings in order to keep the Committee apprised of the status of the proceedings and any potential implications on the Debtors' Chapter 11 cases.

35.     During the Application Period, Chadbourne attorneys continued to be engaged in discovery issues with respect to advancing the Committee's complaint against shareholders and other third parties in connection with the LBO transaction (the "Third Party Complaint"). Chadbourne worked with the Committee's co-counsel on preparing and filing a motion seeking authorization to compel discovery of certain parties for necessary shareholder information. The Committee was eager to facilitate this process in order to obtain the information in advance of the March 2012 deadline for identifying and serving defendants. The Court granted the Committee's request by Order dated November 4, 2011.

36.     Further, attorneys from Chadbourne's litigation group were engaged in reviewing and analyzing issues in connection with the potential settlement of a certain preference claim and collaborated with the Committee's co-counsel regarding same.

---

[3]   The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

**L.**     **Plan Litigation (Matter 21)**

Fees:  $63,790.50          Total Hours:  95.30

37.     During the Application Period, Chadbourne's team of bankruptcy and litigation professionals continued to be substantially engaged, on behalf of the Committee, in analyzing and addressing a variety of issues concerning confirmation of the DCL Plan.  Those matters included, at the request of the Committee, a review and analysis of the various legal issues relating to the bankruptcy appellate process as well as certain jurisdictional and other discrete issues and that may have implications on confirmation of the DCL Plan.

38.     On October 31, 2011, the Court entered its Opinion on Confirmation denying both DCL Plan and the Noteholders' Plan.  Chadbourne attorneys began work on a comprehensive review and analysis of the issues raised in the Court's opinion.

39.     Finally, in efforts to complete the record of the plan confirmation proceedings, Chadbourne litigation professionals continued to review confidentiality issues with respect to the Debtors' request for final corrections to the trial transcripts and public release of certain trial exhibits and deposition designations.   Chadbourne prepared for and attended the October 4, 2011 hearing where the Court granted the Debtors' request on same.

40.     **ACTUAL AND NECESSARY EXPENSES**

41.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $62,868.51 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.

Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions. For purposes of these cases, the firm has reduced this charge to $1.00/per page.

42.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required. In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers. Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

43.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services. In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

44.     In connection with the LBO/ESOP transaction investigation Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS"). Chadbourne continues to use the CDS services in connection with the plan confirmation process in reviewing and analyzing the various trial exhibits and documents presented at the confirmation hearing for potential admission on the trial record. In addition, Chadbourne is reviewing and analyzing certain documents regarding issues raised in recent caselaw that may have implications on confirmation of the DCL Plan. The CDS charges incurred during the Application Period represent a monthly hosting fee as well as processing

14

fees for loading data and/or converting data to a searchable format. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

45.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

46.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

47.     Attorneys and paraprofessionals of Chadbourne have expended a total of 683.60 hours in connection with the matter during the Application Period. The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto. These are Chadbourne's normal hourly rates for work of this character. The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $402,217.75.

48.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

49.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period October 1, 2011 through October 31, 2011:  (a) authorizing compensation in the amount of $402,217.75 (80% of which equals $321,774.20) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $62,868.61 for a total of $465,086.36; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:  November 22, 2011
        New York, New York

CHADBOURNE & PARKE LLP

By: _____
        Douglas E. Deutsch
        (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

16

## **VERIFICATION**

STATE OF NEW YORK   :
                       : ss:

COUNTY OF NEW YORK  :

       Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

       (a)     I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

       (b)     I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

       (c)     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

                                               _____
                                             Douglas E. Deutsch

Sworn to before me this
22nd day of November 2011

Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4304123.1