UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

FEE EXAMINER'S FINAL REPORT REGARDING THE
APPLICATION OF SNR DENTON US LLP FOR ALLOWANCE AND PAYMENT OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED AS
ORDINARY COURSE COUNSEL TO THE DEBTORS DURING THE PERIOD
FROM MAY 1, 2011 THROUGH JUNE 30, 2011

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Fee Application of SNR Denton US LLP for Allowance and Payment of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

*Compensation and Reimbursement of Expenses for Services Rendered as Ordinary Course Counsel to the Debtors During the Period from May 1, 2011 Through June 30, 2011* [Docket No. 9785] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $114,646.50 and reimbursement of expenses that total $1,778.94 for the period from May 1, 2011 through June 30, 2011, and further requests payment of unpaid amounts incurred for the period from May 1, 2011 through June 30, 2011, in the aggregate amount of $88,290.00 in fees and $1,757.52 in expenses.[2] SNR Denton US LLP ("**SNR**") serves as an ordinary course professional to the debtors and debtors in possession (collectively the "**Debtors**") in connection with certain First Amendment, litigation and outsourcing matters.

## Background

1. On December 8, 2008 (the "**Petition Date**"), the Debtors commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. Under this Court's *Order Directing Joint Administration Chapter 11 Cases* entered on December 10, 2009, these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules [Docket No. 43].

2. On December 26, 2008, the Debtors filed their *Motion for an Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code* [Docket No. 148] (the "**OCP Motion**"). In the OCP Motion, the Debtors sought approval from this Court to employ and retain Ordinary Course Professionals, including SNR, to provide services to the Debtors as necessary for the day-to-day operations of the Debtor's businesses on terms substantially similar to those in effect prior to the Petition Date. On January 15, 2009, this Court granted the OCP Motion and issued an order approving procedures for the employment, retention, and compensation of the Ordinary Course Professionals [Docket No. 227] (the "**OCP Order**").

---

[2] The unpaid fees in the amount of $88,290.00 and the unpaid expenses in the amount of $1,757.52 are both included in the $114,646.50 in fees and the $1,778.94 in expenses requested for approval.

3. Pursuant to the OCP Order, the Debtors are authorized to pay SNR for fees and expenses incurred, without prior Court approval, provided that the amount incurred (excluding expenses) do not exceed a Monthly Cap of $50,000.00 on average over the prior rolling three-month period, and further providing that SNR's fees do not exceed $50,000.00 per month on average over any consecutive two-month period.

4. The OCP Order provides that in the event the fees incurred and invoiced by any Ordinary Course Professional exceed the applicable Monthly Cap, such Ordinary Course Professional shall be required to seek the Court's approval of all fees invoiced for that month (including amounts below the Monthly Cap) in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and all applicable rules of the Court.

5. The Debtors informed SNR that it had exceeded its monthly cap of $50,000.00 in each of the months of May and June 2011 and, as such, SNR was required to obtain the Court's approval of the entire amounts billed in the May and June 2011 invoices.

6. In light of the facts and in accordance with the OCP Order, SNR submitted a Fee Application seeking the Court's approval of its May and June 2011 invoices, but requested a limited waiver of the otherwise applicable procedures for compensation and reimbursement of expenses for professionals and consideration of fee applications set forth in this Court's Interim Compensation Order [Docket No. 225] and the Fee Examiner Order.

7. On October 19, 2011, this Court denied SNR's request for limited waiver, and ordered SNR's May and June 2011 invoices be subject to the Interim Compensation Order and the Fee Examiner Order.

**Applicable Standards**

8. In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish

uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

9. The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

10. Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

11.  A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

12.  The Fee Examiner completed the preliminary evaluation of the Fee Application, the Motion and Order appointing Ordinary Course Professionals, and all related filings and provided a Preliminary Report for the firm's review and comment. The firm responded to the Fee Examiner with a written response to the Preliminary Report dated November 16, 2011. After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order* ¶5.

## DISCUSSION OF FINDINGS

### Technical Requirements

13.  **Reconciliation and Review of Fixed Fees.** The majority of SNR's fees were billed at hourly rates. However, SNR and the Debtors had agreed to several fixed fee arrangements for services relating to certain First Amendment access motions. The firm's May and June 2011 Fee Application contained invoices for services rendered on two fixed fee matters (Invoice Nos. 1303450 and 1302870). Pursuant to the arrangement between the Debtor and SNR, both invoices were for a fixed fee of $7,500.00. The Fee Application did, however, contain detailed billing entries itemizing the services rendered on the fixed fee matters. Each entry provided the identity of the timekeeper, the timekeeper's billing rate, the number of hours and fees billed, and a description of the activity performed.

Since the parties agreed to a fixed fee arrangement regarding these two matters, the Fee Examiner's review of the detail provided was limited but, nonetheless, was performed. The Fee Examiner did not identify any glaring technical billing discrepancies and abuses or any excessive, redundant or otherwise unnecessary hours billed. Additionally, the fees expended by SNR on both matters exceeded, to the benefit of the Debtors, the agreed fixed fee.

14. **Reconciliation of Hourly Fees and Expenses.** The Fee Examiner compared the total amount of hourly fees ($99,646.50) and expenses ($1,778.94) requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**"). The Fee Examiner determined that the Fees Requested exceed the Fees Computed by $172.50, resulting in an apparent overcharge. The discrepancy is the result of task hours within two entries that do not equal the time billed for the entries as a whole, as displayed in **Exhibit A**. In its response, SNR stated a minor computing error had occurred, and agreed that its fee request should be reduced by $172.50.

The Fee Examiner further determined there was no discrepancy between the Expenses Requested and the Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

15. **Block Billing.**[3] The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or

---

[3] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[4] The Fee Examiner identified block billed time entries totaling 14.60 hours with associated fees of $7,194.50, as displayed in **Exhibit B** to the Preliminary Report.[5] The Fee Examiner requested that in future fee applications the firm segregate time spent preparing for conferences/events from the time spent in attendance at such events; given the concern over potential duplication between SNR timekeepers and other case professionals, it is important for the Fee Examiner and the Court to have an accurate accounting of the time spent preparing for meetings/events and the actual time in attendance. The Fee Examiner invited comment from SNR regarding the blocked time.

In response, SNR provided a lengthy statement regarding the fact that the SNR professionals were "ordinary course" non-bankruptcy professionals who are not accustomed to the bankruptcy time-keeping mechanics and, as ordinary course professionals, they did not contemplate they would be filing fee applications in bankruptcy court. SNR further stated that since its fee application was filed, all timekeepers have been informed of the UST Guidelines and will be making a concerted effort going forward not to block bill time entries. The firm also noted the comparatively small amount of blocked entries when viewed in light of the total time expended. The Fee Examiner will look for and expect a reduction or cessation in block billing in SNR's future fee applications. No recommendation for a fee reduction is made at this time, and Exhibit B is omitted from this report.

16.    **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an

---

[4] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[5] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

hour." *UST Guidelines ¶(b)(4)(v)*. The Fee Examiner confirmed that the firm recorded time entries in one-tenth hour time increments.

17. **Redacted Fee Entries.** The Fee Examiner identified 24 billing entries that contained descriptions that were partially or completely redacted. These entries totaled 9.45 hours and $4,807.00 in associated fees. While the redaction of entries may be appropriate, the reason or necessity of redactions should be included in the narrative of the Fee Application. Neither the monthly statements nor the Fee Application provided an explanation for the necessity of the redactions. Given the initial condition of the data provided, many of the tasks were rendered vague by virtue of the redactions. To avoid a recommendation for a reduction in the fees resulting from these billing entries, the Fee Examiner requested SNR resubmit these entries without the redactions, or provide an explanation for the purpose of the redactions, which were displayed in **Exhibit C** to the Preliminary Report. In response, SNR provided sufficient information and material to answer the Fee Examiner's questions. Thus, the Fee Examiner will not make a recommendation for a fee reduction and Exhibit C is omitted from this report.

### Review of Fees

18. **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names, positions, and hourly rates of the nine SNR timekeepers who billed to this matter, consisting of six partners, one counsel, and two associates. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit D**.[6]

---

[6] This Preliminary Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks

The firm invoiced a total of 192.80 hours with associated fees of $99,474.00[7] for the hourly services. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 131.30 | 68% | $74,624.00 | 75% |
| Counsel | 18.50 | 10% | 9,620.00 | 10% |
| Associate | 43.00 | 22% | 15,230.00 | 15% |
| TOTAL | 192.80 | 100% | $99,474.00 | 100% |

The blended hourly rate for the SNR professionals is $515.94.

19. **Hourly Rate Increases.** SNR did not increase the hourly rates of timekeepers during the period covered by this Fee Application.

20. **Timekeepers' Roles.** A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*. With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts. On the whole, each SNR timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals. However, the Fee Examiner requests additional information regarding the fees invoiced by three case professionals. The Fee Examiner requested additional information from SNR to determine whether or not the activities engaged in by these timekeepers were necessary and added value to the work performed on behalf of the Debtors. The questioned entries were displayed in **Exhibit E**. In response, SNR provided additional detail regarding each timekeeper and fee entry in question. After review and evaluation of the supplemental information, the Fee Examiner makes no recommendation for a fee reduction. Exhibit E is omitted from this report.

---

within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[7] This amount reflects the Fees Computed (hourly fees).

21.  **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more SNR timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 6.30 hours with $3,468.00 in associated fees, were displayed in **Exhibit F**, to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, we identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the attorney leading rather than observing a conference). The potentially duplicative and unnecessary timekeepers' entries total 1.90 hours with $938.00 in associated fees, and are highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, SNR provided a detailed explanation of the roles played by its professionals in the questioned time entries, and the need for more than one individual to attend a variety of meetings, conferences, and events. Through the detailed explanation provided, SNR substantially complied with the Local Rules and UST Guidelines and accordingly the Fee Examiner makes no recommendation for a fee reduction. Exhibit F is omitted from this report.

22. **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified billing activities by SNR timekeepers describing intraoffice conferences totaling 6.50 hours with $3,235.50 in associated fees, or approximately 3% of the total Fees Computed, which were displayed in **Exhibit G** to the Preliminary Report. The Fee Examiner observed that in certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel totaled 1.10 hours with $488.50 in associated fees and are highlighted in bold and marked with an ampersand [&] in the exhibit. In the Preliminary Report, the Fee Examiner requested SNR strive to eliminate unnecessary intraoffice conferencing, and further requested the firm provide an explanation for the necessity of more than one participant billing for the same intraoffice conferences identified in the exhibit.

SNR first responded by stating it would strive to eliminate any unnecessary intraoffice conferencing. SNR also provided additional information to support its position that more than one SNR attorney was required in each questioned situation in order to most effectively and efficiently provide counsel to the Debtors. Based upon the explanation and detailed information provided by SNR, the Fee Examiner makes no recommendation for a fee reduction, and Exhibit G is omitted from this report. The Fee Examiner will, however, continue to monitor the level of intraoffice conferencing in future fee applications.

23. **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing

and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

      a.    **Vague Communications.** The Fee Examiner identified entries totaling 20.40 hours with $11,421.50 in associated fees in which a conference or other communication was not described with sufficient detail. This lack of detail hinders a reviewer's ability to determine the reasonableness and necessity of the activity, and is in clear violation of the applicable guidelines. The entries were displayed in **Exhibit H** to the Preliminary Report. The Fee Examiner invited comment from SNR.

      b.    **Other Vague Tasks.** The Fee Examiner reviewed the substantive detail of each billing entry and identified 7.55 hours with $3,348.00 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper. The entries were displayed in **Exhibit I** to the Preliminary Report. As reflected in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[8] The Fee Examiner requested the firm provide sufficient detail for the entries in question.

      SNR responded to the issues of vague communications and vague tasks by providing the additional detail for each time entry questioned by the Fee Examiner. The supplemental information brings the fee entries into accord with the Local Rules and UST Guidelines, and after reviewing the supplemental information the Fee Examiner makes no recommendation for a fee reduction. Exhibits H and I are omitted from this report.

---

[8] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented. *E.g.*, *In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997). Entries for legal research must identify the issue and explain the research need. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

24. **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any fee entries describing administrative activities.

25. **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel[9] or support task for which the firm charged greater than market rate. The Fee Examiner did not identify any time entries describing clerical activities.

26. **Travel.** Local Rule 2016-2 (d)(viii) provides that nonworking travel time "may be billed at no more than 50% of regular hourly rates." The Fee Examiner identified what appeared to be a billing entry describing nonworking travel, which was billed at the timekeeper's regular hourly rate. The entry invoiced at more than 50% of the biller's regularly hourly rate totals 1.90 hours and $636.50 in associated fees and was displayed in **Exhibit J** to the Preliminary Report. The Fee Examiner invited comment from SNR. In its response, SNR provided sufficient detail to establish that the entry was actually working travel time and, as such, the Fee Examiner makes no recommendation for a fee reduction. Exhibit J is omitted from this report.

27. **SNR Retention/Compensation.** The Fee Examiner did not identify any time entries describing activities relating to the preparation and filing of SNR's retention documents and applications for compensation.

Review of Expenses

28. **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense

---

[9] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

within each category, including the date the expense was incurred, the charge and the individual incurring the charge, if available." *Local Rule 2016-2(e)(i-ii)*. The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*. SNR provided an itemization for the firm expenses that included the category, the date, the description, and the amount. The Fee Examiner found no questionable expense items.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $114,474.00 ($114,646.50 minus $172.50) and approval of expenses in the amount of $1,778.94 for the period from May 1, 2011 through June 30, 2011. The findings are summarized in the attached Appendix A.

Respectfully submitted,

STUART MAUE

By: _____
John F. Thell, Esq.
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

# APPENDIX A

**SNR DENTON US LLP**

## SUMMARY OF FINDINGS

### Application (Ordinary Course Professional - May 1, 2011 through June 30, 2011)

#### A. Amounts Requested and Computed

| | | |
|---|---:|---:|
| Fees Requested: | | |
| Fixed Fee Services | $ 15,000.00 | |
| Hourly Services | 99,646.50 | |
| Expenses Requested | 1,778.94 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $116,425.44 |
| | | |
| Fixed Fee Services | $ 15,000.00 | |
| Hourly Fees Computed | 99,474.00 | |
| Expenses Computed | 1,778.94 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $116,252.94 |
| | | |
| Discrepancy in Fees | $ 172.50 | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | $ 172.50 |

#### B. Recommended Fee Allowance and Expense Reimbursement

| | | | |
|---|---:|---:|---:|
| Fees Requested (Fixed Fee Services) | $15,000.00 | | |
| Fees Requested (Hourly Services) | $99,646.50 | | |
| *Agreed Reduction for Discrepancy* | | *($172.50)* | |
| Subtotal | | *($172.50)* | |
| | | | |
| RECOMMENDED FEE ALLOWANCE | | | $114,474.00 |
| | | | |
| Expenses Requested | $1,778.94 | | |
| | | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 1,778.94 |
| | | | |
| TOTAL RECOMMENDED HOURLY FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $116,252.94 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 29th day of November, 2011.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Ms. Stefanie L. Wowchuk
SNR Denton US LLP
233 South Wacker Drive, Suite 7800
Chicago, IL  60606-6306

_____
John F. Theil, Esq.

## EXHIBIT A
## DISCREPANCY SCHEDULE
## SNR Denton US LLP

| Invoice Number | Entry Number | Matter | Timekeeper Name | Entry Date | Rate | Hours Billed | Hours Computed | Fees Billed | Fees Computed | Hour Difference | Fee Difference |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1310494 | 4 | Kevin McAndrew Subpoena | Spears | 06/07/11 | $575.00 | 0.80 | 0.60 | $ 460.00 | $ 345.00 | 0.20 | $ 115.00 |
| 1310510 | 5 | University of Illinois - FOIA Matter | Spears | 06/09/11 | $575.00 | 0.50 | 0.40 | 287.50 | 230.00 | 0.10 | 57.50 |
| | | | | | | | | **Total Discrepancy (Overcharge)** | | **0.30** | **$ 172.50** |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**
**COMPUTED AT STANDARD RATES**
**SNR Denton US LLP**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| NSPE | Spears, Natalie | PARTNER | $575.00 | $575.00 | 38.40 | $22,080.00 |
| MPET | Petry, Mark | PARTNER | $550.00 | $550.00 | 38.40 | $21,120.00 |
| RGUL | Gullikson, Rosemary | PARTNER | $575.00 | $605.00 | 36.30 | $20,911.50 |
| CBEE | Been, Carol Anne | PARTNER | $575.00 | $575.00 | 17.40 | $10,005.00 |
| SFIF | Fifer, Sam | PARTNER | $625.00 | $625.00 | 0.50 | $312.50 |
| JKLE | Klenk, James | PARTNER | $650.00 | $650.00 | 0.30 | $195.00 |
| | No. of Billers for Position: 6 | Blended Rate for Position: | $568.35 | | 131.30 | $74,624.00 |
| | | | | % of Total: | 68.10% | % of Total: 75.02% |
| GNAR | Naron, Greg | COUNSEL | $520.00 | $520.00 | 18.50 | $9,620.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $520.00 | | 18.50 | $9,620.00 |
| | | | | % of Total: | 9.60% | % of Total: 9.67% |
| KROD | Rodriguez, Kristin | ASSOCIATE | $335.00 | $335.00 | 38.00 | $12,730.00 |
| KBUC | Buckley, Kate | ASSOCIATE | $500.00 | $500.00 | 5.00 | $2,500.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $354.19 | | 43.00 | $15,230.00 |
| | | | | % of Total: | 22.30% | % of Total: 15.31% |
| | Total No. of Billers: 9 | Blended Rate for Report: | $515.94 | | 192.80 | $99,474.00 |