UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>) **Re: Docket Nos. 10226 & 10222**<br>)<br>) |

**EGI-TRB LLC'S OBJECTION TO [1] MOTION OF AURELIUS CAPITAL MANAGEMENT, LP FOR RECONSIDERATION OF THE COURT'S OCTOBER 31, 2011 DECISION AS IT PERTAINS TO THE APPLICATION OF PHONES NOTES SUBORDINATION; [2] JOINT MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERCIAS REQUESTING RECONSIDERATION OF THE COURT'S CONFIRMATION OPINION WITH RESPECT TO THE SUBORDINATION OF THE PHONES; AND [3] JOINDERS BY BRIGADE CAPITAL MANAGEMENT, LLC, DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC, AND DEUTSCHE BANK TRUST COMPANY AMERICAS**

EGI-TRB LLC ("EGI-TRB") respectfully submits this objection (the "Objection") to: [1] the Motion Of Aurelius Capital Management, LP For Reconsideration Of The Court's October 31, 2011 Decision As It Pertains To The Application Of PHONES Notes Subordination (Dkt. No. 10226, the "Aurelius Motion"); [2] the Joint Motion Of Law Debenture Trust Company Of New York and Deutsche Bank Trust Company Americas Requesting Reconsideration Of The Court's Confirmation Opinion With Respect To The Subordination Of The PHONES (Dkt. No. 10222, the "Senior Noteholders Motion" and, together with the Aurelius Motion the "Reconsideration Motions"); and [3] the joinders filed by Brigade Capital Management, LLC (Dkt. No. 10225), Davidson Kempner Capital Management LLC (Dkt. No. 10223), and Deutsche Bank Trust Company Americas (Dkt. No. 10238). The parties filing the above-referenced motions and joinders are identified as the "Reconsideration Movants." In support of this Objection, EGI-TRB states as follows.

**INTRODUCTION**

The Reconsideration Movants seek to revisit a now moot battle of the past. Although they agree with the Court's ultimate conclusion that the Second Amended DCL Plan should not have been confirmed, the Reconsideration Movants take issue with the Court's determination that the Second Amended DCL Plan improperly treated the PHONES Notes as subordinated for certain purposes. The Second Amended DCL Plan's treatment of the PHONES Notes, however, is a dead issue. The proponents of the Second Amended DCL Plan no longer are seeking confirmation of that plan. Instead, they have submitted a Third Amended Plan that specifically provides a dispute resolution protocol for the PHONES subordination issue and other allocation and subordination issues. The Reconsideration Movants will thus have a full and fair opportunity to present arguments about the appropriate scope of subordination in the context of the Third Amended DCL Plan. There is no reason to reconsider rulings that pertained to a plan that is no longer before the Court and no reason to predetermine the outcome of the new dispute resolution protocol before it unfolds. In fact, to do so would be to issue an improper advisory opinion.

If the Court nonetheless reconsiders the PHONES subordination, it should reaffirm its conclusion that recoveries from avoidance claims are not "assets of the company." The Court properly analyzed *Off'l Comm. Of Unsecured Creditors of Cybergenics Corp. v. Scott Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d Cir. 2000) and the Reconsideration Movants' attacks on the Court's reasoning are unfounded.

Additionally, if the Court reconsiders the subordination terms of the PHONES Notes, it should take caution to limit its analysis to the PHONES Notes only. The subordination agreement that applies to the EGI-TRB Notes (the "EGI-TRB Subordination Agreement"), the

effect of which is to be resolved as part of the allocation dispute resolution process proposed under the new DCL Plan, is a different contract, and contains none of the terms that the Reconsideration Movants now rely upon to support their arguments about the PHONES Notes. Regardless of the Court's decision with respect to the PHONES Notes, the Court should find, when the issue is later presented, that the EGI-TRB Subordination Agreement makes clear that the EGI-TRB Notes are not subordinated for purposes of avoidance recoveries.

## ARGUMENT

**I.    The Court Should Not Reconsider Issues Mooted By The Third Amended DCL Plan.**

The Reconsideration Movants improperly ask the Court to reconsider a moot issue. The Court opined on the PHONES subordination only in the context of objections made to the Second Amended DCL Plan. (*See* Confirmation Order at 108-14.) But the Second Amended DCL Plan and the objections to it are no longer before the Court. The filing of the Third Amended DCL Plan has superseded them. The filing of an amended plan moots an objection to a prior plan, leaving "no justiciable matter before the Court" concerning the objection. *In re Wilson*, 2008 WL 4833091, *2 (Bankr. D. Mass. Oct. 28, 2008). Even if "the identical issue . . . may arise in the future in the context of [the amended plan] . . . it is improper for the Court to issue an advisory opinion." *Id.*; *cf. Meserole v. Sony Corp. of Am.*, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009) ("By filing a Second Amended Complaint, Plaintiffs have supplanted the Complaint, thereby rendering any motion for reconsideration [regarding the first Complaint] advisory").

Nor may this issue be raised in Aurelius's appeal. Aurelius opposed the Second Amended DCL plan and prevailed; it may not now attack one alternative basis for the Court's rejection of a plan that it opposed and defeated. *E.g.*, *Christopher v. Nestlerode*, 240 Fed. App'x 481, 486 (3d Cir. 2007) ("When a prevailing party seeks to appeal an adverse ruling collateral to

the judgment in its favor, it may not do so if the collateral ruling was not necessary to the judgment").

Instead, the Reconsideration Movants should raise their arguments concerning subordination in the context of the Third Amended DCL Plan itself. Indeed, Rule 7001(8) *requires* the Court to decide subordination issues either pursuant to an adversary complaint or when ruling on plan confirmation. *See, e.g.*, *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (vacating judgment obtained by motion because Rule 7001 imposed mandatory requirement to seek relief through an adversary proceeding); *In re Washington Mut., Inc.*, ___ B.R. ___, Case No. 08-12229 (MFW), 2011 WL 4090757, at *44 (Bankr. D. Del. Sept. 13, 2011) ("Claims for equitable subordination must be brought as a separate adversary proceeding pursuant to Rule 7001(8)") (quoting *Protarga v. Webb (In re Protarga)*, Adv. No. 04-53374, 2004 WL 1906145, at *3 (Bankr. D. Del. Aug. 25, 2004)).

The Court should decline to reconsider a moot ruling, and should instead decide these subordination issues in due course in the context of the Third Amended DCL Plan.

**II.    The Court's Analysis Of The Scope Of Estate Assets Was Correct And Should Not Be Disturbed.**

If the Court nonetheless reconsiders, it should reconfirm its determinations that fraudulent transfer claims like the chapter 5 causes of action that the proposed Litigation Trust may pursue are *not* assets of the debtor, but instead belong to creditors of the estate. *In re Cybergenics Corp.*, 226 F.3d at 245. For that reason, the Third Circuit held that a sale of "all of the assets" of Cybergenics did not include fraudulent transfer claims arising from the leveraged buy-out of that company. *Id.* at 239-40. Likewise, here, avoidance claims and settlement proceeds from the settlement of chapter 5 claims, including claims that the Litigation Trust and Creditor Trust may prosecute, do not represent assets of Tribune and thus are not subordinated

by provisions that subordinate only distributions of "assets of the Company." The Reconsideration Movants provide no grounds for this Court to reverse itself.

The Third Circuit could not have been clearer in *Cybergenics* that fraudulent transfer claims "were never assets of [the debtor]." 226 F.3d at 245. Likewise, the "avoidance power itself" is "not an asset of [the debtor]." *Id.* Therefore, where subordination terms are drafted to apply to "assets of the Company," *Cybergenics* compels the conclusion that those subordination terms do not apply to fraudulent transfer claims, which are simply not assets of the debtor. EGI-TRB defers to the PHONES Noteholders for more detailed discussion of their contractual subordination provisions. As described in the next section, the EGI-TRB Subordination Agreement contains none of the language that the Reconsideration Movants contend warrants subordination of the PHONES Notes.

The Reconsideration Movants concede that the avoidance actions are not assets of the debtor under *Cybergenics* (*see* Senior Noteholders Motion at 16), but they nonetheless argue that the Court erred because the *proceeds* from such claims supposedly represent assets of the debtor. (Aurelius Motion at 17-18; Senior Noteholders Motion 16-17.) The Reconsideration Movants are incorrect. They rely entirely on *Begier v. I.R.S.*, 496 U.S. 53 (1990), in which the Supreme Court stated that the "'property of the debtor' *subject to the preferential transfer provision* is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." 496 U.S. at 58 (emphasis added). As the emphasized language indicates, however, *Begier* only held that a transfer is subject to avoidance as a preference if it was a transfer of the debtor's property; *Begier* did not hold that a debtor retains an interest in the property once it has been transferred or in the cause of action to recover such property. Indeed, the Court's statement that "property of the debtor" for purposes

of Section 547 includes property that "*would have been* part of the estate" indicates that the property, once transferred, is *not* an asset of the debtor and does not become an asset of the estate upon the filing of a bankruptcy petition. 496 U.S. at 58; *see* 11 U.S.C. § 541(a)(1) (providing that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case").

Consistent with the Supreme Court's statement in *Begier*, most courts have held that debtors *do not* retain an interest in property that was fraudulently conveyed prepetition. *See, e.g., FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992); *Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*, 347 B.R. 708, 717-18 (Bankr. C.D. Cal. 2006) (stating that this view has been adopted by "the majority of the courts"). In *Colonial Realty*, for example, the Second Circuit flatly rejected a trustee's argument – similar to Movants' argument here – that the debtor's estate included property that had been transferred to a third party in a transaction subject to avoidance. *Id*. at 131. As the Second Circuit explained, if debtors retained a legal or equitable interest in property fraudulently conveyed prior to the bankruptcy, then that property would automatically become property of the estate pursuant to Section 541(a)(1). Such a holding would "render[] meaningless" Section 541(a)(3), which provides that property of the bankruptcy estate includes "[a]ny interest in property that the trustee recovers" under certain Code provisions, including Section 550. *Id*.[1] Accordingly, a debtor has no legal or equitable

---

[1] Further, as several courts have noted, if a debtor did in fact retain an interest in property fraudulently conveyed prepetition, that property would become property of the estate pursuant to Section 541(a)(1) and a trustee could demand its turnover through Section 542, thereby avoiding all of the statutory limitations and defenses set forth in Sections 546, 547, 548, and 550. *See, e.g., Saunders*, 101 B.R. at 304-06. Obviously, Section 542 is not a short-cut around the elements of a claim under Sections 546-550 and thus, fraudulently transferred property cannot be property of the estate under Section 541.

6

interest in property that it fraudulently conveyed prior to the petition date. *Id.* Scores of authorities have concurred.[2]

It is true that, once fraudulently transferred property is actually recovered by the trustee or the debtor-in-possession, it becomes the property of the *estate*, but that principle does not help the Reconsideration Movants here. As this Court already correctly held, property of the *estate* is not the same as an asset of the *debtor*. (*See* Confirmation Order at 113 n.84 (citing *Cybergenics*, 226 F.3d at 246 n.15, for the proposition that "'property of the debtor' and 'property of the estate' have different meanings, as evidenced by numerous provisions in the Bankruptcy Code that distinguish between the concepts, or refer to one and not the other.")). Moreover, recoveries by the Litigation and Creditors' Trusts will be the property of *those* entities, not the estate, and will occur long after the estate has ceased to exist. *E.g.*, *Holywell Corp. v. Smith*, 503 U.S. 47, 55 (1992) (noting that the chapter 11 plan at issue had transferred all estate property to trust that was "separate and distinct" from the bankruptcy estate or debtor); *CLC Creditors' Grantor Tr. v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559, (Bankr.

---

[2] *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 71–72 (Bankr. D. Idaho 2008) (adopting *Colonial Realty* and holding that debtor did not have an interest in real property that he fraudulently conveyed to a third party prior to the bankruptcy); *Off'l Comm. of Unsecured Creditors of ABC–NACO, Inc., v. Bank of Am., N.A. (In re ABC–NACO, Inc.)*, 331 B.R. 773, 780 (Bankr. N.D. Ill. 2005) ("A bankruptcy estate does not possess a property interest in transferred property, even though the transfer is subject to avoidance. . . ."); *In re Saunders*, 101 B.R. 303, 304–06 (Bankr. N.D. Fla. 1989) ("[A]llowing the debtor to retain an interest, legal or equitable, in fraudulently transferred property conceivably places a cloud on the title of any property transferred by the debtor until there is a judicial determination that the transfer is not avoidable. This result was clearly not contemplated by Congress."); *In re Henss*, 1994 WL 16807327, at *2 (Bankr. S.D. Iowa Feb. 9, 1994) (stating that assets fraudulently conveyed prior to the bankruptcy proceeding did not become estate property because the debtor retained no interest in the assets); *see also* Michael R. Cedillos, "Categorizing Categories: Property of the Estate and Fraudulent Transfers in Bankruptcy," 106 Mich. L. Rev. 1405, 1416-17 (May 2008) (stating that debtors do not retain legal title or an equitable interest in property fraudulently conveyed prepetition, and that "[n]o equitable grounds exist for considering the debtor as retaining an equitable interest in purportedly fraudulently transferred property").

N.D. Ill. 2007) (noting that because all estate property vested in a post-confirmation trust, creditors' claims would be paid from trust assets, not from estate property).

The Court's analysis of *Cybergenics* and its implications for these subordination issues was thus correct. The "assets of the Company" simply do not include avoidance actions held by creditors, property that was fraudulently transferred prepetition, or recoveries made by the estate or the future Creditors' or Litigation Trusts.[3]

### III. If The Court Reconsiders, It Should Not Address The EGI-TRB Subordination Agreement, Which Contains Distinct Contractual Terms.

In all events, the Court should make clear in any ruling concerning the PHONES Notes that it is not addressing the subordination agreement pertaining to the EGI-TRB Notes. The Reconsideration Movants will likely seek to paint with a broad brush and argue that if the Court concludes that the PHONES Notes are subordinate to the claims of the other creditors in chapter 5 recoveries, that this ruling will dispose entirely of the subordination issues and simplify the hearing on the Third Amended DCL Plan. But that will not be the case. The EGI-TRB Subordination Agreement is markedly different from the PHONES Notes; the arguments that the Reconsideration Movants make with respect to the subordination terms of the PHONES Notes do not apply to the EGI-TRB Subordination Agreement.

Moreover, the instant Motions for Reconsideration are not a proper procedural vehicle to address for the first time how EGI-TRB's very different contract should be read in light of the provisions of the now defunct Second Amended DCL Plan. Instead, resolution of the

---

[3] That is particularly true with respect to the Creditor Trust. The Creditor Trust is premised on the argument that the causes of action it will pursue are not Bankruptcy Code based-avoidance actions to which 11 U.S.C. § 546(e) applies, but rather are state law claims belonging to creditors willing to assign those claims to a Creditor Trust. If the bankruptcy estate has nothing to do with those claims, such that Section 546(e) does not apply to them, the same claims cannot be "assets of the Company."

subordination issues that may arise under the EGI-TRB Subordination Agreement must await the Court's review of the Third Amended DCL Plan.

Nonetheless, so that the Court has an understanding of why EGI-TRB is in a different position from the holders of the PHONES Notes, EGI-TRB identifies below the key differences between the EGI-TRB Subordination Agreement and the provisions of the PHONES Indenture that are the subject of the Motions to Reconsider. This discussion is necessarily abbreviated because the EGI-TRB Subordination Agreement is not yet before the Court and is included only so that if any of the Reconsideration Movants push for a procedurally improper overbroad ruling, the Court has a basis for understanding why such a ruling would be inappropriate.[4]

In summary, the EGI-TRB Subordination Agreement make clear that there is no basis to subordinate EGI-TRB's right to participate in avoidance recoveries, regardless of the Court's interpretation of the PHONES' Indenture. The EGI-TRB Subordination Agreement contains two principal terms. Both make clear that the EGI-TRB Notes are subordinated only with respect to claims "to the assets of the Company" or payments "from the Company," *not* proceeds from creditors' avoidance claims:

> 2. <u>Subordination.</u> The Subordinated Obligations [the EGI-TRB Notes] are subordinate and junior in right of payment to all Senior Obligations to the extent provided in this Agreement. No part of the Subordinated Obligations shall have any claim ***to the assets of the Company*** on a parity with or prior to the claim of the Senior Obligations. Unless and until the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash, the Subordinating Creditor will not take, demand or receive ***from the Company***, and ***the Company*** will not make, give or permit, directly or indirectly, by set-off, redemption, purchase or in any other manner, any payment of (of whatever kind or nature, whether in cash, property, securities or otherwise), whether in respect of principal, interest or otherwise, or security for the whole or any part of the Subordinated Obligations.

* * *

---

[4] At the appropriate time in connection with the Third Amended DCL Plan, EGI-TRB will provide a more complete legal analysis of its Subordination Agreement.

> 6. <u>Payments Received By Subordinated Creditor.</u>  Except as to payments or distributions which the Company is permitted to pay to Subordinating Creditor or which Subordinating Creditor is permitted to accept and retain pursuant to this Agreement, all payments or distributions upon or with respect to any Subordinated Obligation ***which are made by or on behalf of the Company*** or received by or on behalf of the Subordinating Creditor in violation of or contrary to the provisions of this Agreement shall be received in trust for the benefit of the holders of Senior obligations and shall be paid over upon demand to such holders for application to the Senior Obligations until the Senior Obligations shall have been paid in full in cash.

(Ex. A, EGI-TRB Notes Subordination Agreement ¶¶ 2, 6.)

As is plain, those terms provide that the rights to collect on the EGI-TRB Notes are subordinate to senior debt only in respect to "assets of the Company" and payments "from the Company." (*Id.* ¶ 2.)  Further, the EGI-TRB noteholders are obligated to pay-over to senior creditors only payments received that were "made by or on behalf of the Company," (*Id.* ¶ 6.) Under Delaware law (selected in ¶ 13(b) of the Subordination Agreement), those unambiguous terms must be enforced as they are written. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir. 2005) (under Delaware law, "[u]nambiguous written agreements should be enforced according to their terms").

Equally important to what is in the EGI-TRB Subordination Agreement is what is *not* in that agreement.  The EGI-TRB Subordination Agreement does not contain any terms like the ones that the Reconsideration Movants now point to in the PHONES Indenture. (*Compare* PHONES Notes Indenture § 14.02 *with* Ex. A, EGI-TRB Subordination Agreement ¶¶ 2, 6.)

EGI-TRB negotiated narrower subordination terms that must be construed on their own merits.  The Court, if it reconsiders the PHONES Notes subordination terms, should make clear that it does not prejudge the EGI-TRB agreement.

**CONCLUSION**

For all of the foregoing reasons, the motions for reconsideration should be denied.

Dated: December 6, 2011

                              Respectfully submitted

                              BLANK ROME LLP

By:    /s/ *David W. Carickhoff*
        David W. Carickhoff (DE No. 3715)
        1201 Market Street, Suite 80
        Wilmington, DE 19801
        Telephone: (302) 425-6400
        Facsimile: (302) 425-6464

                              and

        David J. Bradford (admitted *pro hac vice)*
        Catherine L. Steege (admitted *pro hac vice*)
        Andrew W. Vail (admitted *pro hac vice*)
        JENNER & BLOCK LLP
        353 N. Clark St.
        Chicago, IL 60654
        Telephone: (312) 222-9350
        Facsimile: (312) 527-04844

*Counsel for EGI-TRB, LLC*