## SUBORDINATION AGREEMENT

This Subordination Agreement (this "Agreement"), dated as of December 20, 2007, is made by EGI-TRB, L.L.C., a Delaware limited liability company (the "Subordinating Creditor") in favor of the holders of Senior Obligations (as defined below).

### Recitals

A.    TRIBUNE COMPANY, a Delaware corporation (the "Company"), and the Subordinating Creditor have entered into the Subordinated Promissory Note, dated as of December 20, 2007 (the "Subordinated Note"), pursuant to which the Subordinating Creditor has loaned $225,000,000.00 to the Company.

B.    The Subordinated Note provides that the Company's obligations and liabilities thereunder shall be subject to an "Intercreditor Agreement" (as defined in the Subordinated Note).

C.    This Agreement is the "Intercreditor Agreement" referred to in the Subordinated Note.

ACCORDINGLY, in consideration of the foregoing, the parties hereby agree as follows:

1.    Definitions. Terms defined in the recitals shall have the meanings specified therein. In addition, the following terms shall have the following meanings for the purposes of this Agreement:

"Blockage Event" means the occurrence and continuance of any of the following: (i) any holder of Senior Obligations that is entitled to enforce remedies under any Senior Document commences judicial proceedings to enforce such remedies for the purpose of realizing on all or any part of the Senior Obligations and such judicial proceedings have not been dismissed, withdrawn or otherwise terminated, (ii) an unremedied or unwaived default in any payment (beyond any applicable grace or cure period with respect thereto) of any Senior Obligation that is due and payable or (iii) an Event of Default (as defined in the Subordinated Note) of the type described in Section 3(a)(ii) of the Subordinated Note.

"Senior Documents" means, collectively, those documents, instruments and agreements evidencing, securing or otherwise relating to any of the Senior Obligations.

"Senior Obligations" means all obligations, indebtedness and other liabilities of the Company other than (i) any such obligations, indebtedness or liabilities that by their express terms rank pari passu or junior to the Company's obligations under the Subordinated Note and (ii) trade payables and accrued expenses incurred in the ordinary course of business, in each case, whether incurred on or prior to the date hereof or hereafter incurred.

"Subordinated Obligations" means the collective reference to the unpaid principal of and interest on the Subordinated Note and all other obligations and liabilities of the Company to the Subordinating Creditor, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, in each case, arising under the Subordinated Note.

2. Subordination. The Subordinated Obligations are subordinate and junior in right of payment to all Senior Obligations to the extent provided in this Agreement. No part of the Subordinated Obligations shall have any claim to the assets of the Company on a parity with or prior to the claim of the Senior Obligations. Unless and until the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash, the Subordinating Creditor will not take, demand or receive from the Company, and the Company will not make, give or permit, directly or indirectly, by set-off, redemption, purchase or in any other manner, any payment of (of whatever kind or nature, whether in cash, property, securities or otherwise), whether in respect of principal, interest or otherwise, or security for the whole or any part of the Subordinated Obligations.

3. Capitalization of Interest; Permitted Payment. Notwithstanding any other provision of the Subordinated Note or this Agreement to the contrary, nothing herein or in the Subordinated Note shall prohibit (i) so long as no Blockage Event exists, the Company from making, and the Subordinating Creditor from receiving and retaining, payments under Section 1(b)(iii) of the Subordinated Note to the extent not prohibited by any Senior Documents, (ii) the capitalization of interest pursuant to Section 1(a)(ii) of the Subordinated Note and (iii) so long as no Blockage Event exists, the Company from making, and the Subordinating Creditor from demanding, enforcing, receiving and retaining, payments under Section 1(b)(ii) of the Subordinated Note. Subject to the payment restrictions set forth in Sections 2 and 3 hereof, the Company shall remain fully obligated to the Subordinating Creditor to make all payments and to perform all its obligations under the Subordinated Note.

4. Limitation on Enforcement. Unless and until the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash, at no time shall the Subordinating Creditor take or continue any action, or exercise any rights, remedies or powers under the terms of the Subordinated Note, or exercise or continue to exercise any other right or remedy at law or in equity that the Subordinating Creditor might otherwise possess, to collect any Subordinated Obligation, including, without limitation, the acceleration of the Subordinated Obligations, the commencement of any action to enforce payment or foreclosure on any lien or security interest, the filing of any petition in bankruptcy or the taking advantage of any other insolvency law of any jurisdiction. Notwithstanding the foregoing, the Subordinating Creditor may file a proof of claim in any bankruptcy or similar proceeding instituted by another entity and may vote such claim in a manner not inconsistent with the terms hereof. If the Subordinating Creditor shall attempt to enforce, collect or realize upon any of the Subordinated Obligations in violation of the terms hereof, any holder of Senior Obligations may, by virtue of the terms hereof, restrain any such enforcement, collection or realization, either in its own name or in the name of the Company.

5. Subordinated Obligations Unsecured. The Subordinating Creditor agrees that the Subordinated Obligations are unsecured and that Subordinating Creditor shall not take any liens

or security interests in any assets or property of the Company, any of its subsidiaries or otherwise to secure the Subordinated Obligations

6. **Payments Received by Subordinating Creditor.** Except as to payments or distributions which the Company is permitted to pay to Subordinating Creditor or which Subordinating Creditor is permitted to accept and retain pursuant to this Agreement, all payments or distributions upon or with respect to any Subordinated Obligation which are made by or on behalf of the Company or received by or on behalf of the Subordinating Creditor in violation of or contrary to the provisions of this Agreement shall be received in trust for the benefit of the holders of Senior Obligations and shall be paid over upon demand to such holders for application to the Senior Obligations until the Senior Obligations shall have been paid in full in cash.

7. **Reinstatement of Agreement.** The provisions of this Agreement shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Senior Obligations is rescinded or must otherwise be returned by any holder of Senior Obligations for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of the Company or any of its subsidiaries) all as though such payments had not been made.

8. **Term.** This Agreement shall constitute a continuing agreement by the Subordinating Creditor for the benefit of the holders of Senior Obligations, and the holders of Senior Obligations may continue, without notice to the Subordinating Creditor, to lend monies, extend credit and make other accommodations pursuant to the Senior Documents to or for the account of the Company on the faith hereof. This Agreement shall not be revocable by Subordinating Creditor until, and shall automatically terminate without any action by any person or entity on, the earliest of (i) the date on which the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash and (ii) the date on which the Subordinated Obligations shall have been paid and fully satisfied in a manner consistent with the provisions of this Agreement.

9. **Additional Agreement of the Company.** The holders of Senior Obligations shall be entitled to rely upon, and shall be intended beneficiaries of the subordination provisions contained in this Agreement, and such holders shall be entitled to enforce the same. The holders of all or any portion of the Senior Obligations may, at any time, in their discretion, enter into such agreements with the Company as they may deem proper, extending the time of payments of or renewing or otherwise altering the terms of all or any of the Senior Obligations or affecting the security underlying any or all of the Senior Obligations, and may exchange, sell, release, surrender or otherwise deal with any such security without in any way impairing or affecting the subordination provisions of this Agreement. The Subordinating Creditor covenants and agrees that it will not, at any time, contest the validity, perfection, priority or enforceability of the subordination provisions of this Agreement, the Senior Obligations, the Senior Documents or the security interests or liens granted pursuant thereto.

10. **Waivers of Parties.** No waiver shall be deemed to be made by any party of any of its rights hereunder, unless the same shall herein be, or be in another writing, signed on behalf of such party and each waiver, if any, shall be a waiver only with respect to the specific other parties and not in any other respect or at any other time.

11. _Parties_. This Agreement shall be binding upon, and inure to the benefit of, the Subordinating Creditor and the holders of Senior Obligations and their respective permitted successors and assigns.

12. _Section Titles_. The section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

13. _Governing Law; Consent to Jurisdictions_

(a) This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without giving effect to any laws or principles of conflicts of laws that would cause the laws of any other jurisdiction to apply.

(b) THE PARTIES HERETO IRREVOCABLY SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR DELAWARE STATE COURT IN CONNECTION WITH ALL MATTERS RELATING HERETO AND WAIVE ANY OBJECTION TO THE LAYING OF VENUE IN, AND ANY CLAIM OF INCONVENIENT FORUM WITH RESPECT TO, THESE COURTS.

14. _Acknowledgement and Agreement of the Company_. The Company by its acknowledgement hereof agrees that (a) it will not pay any of the Subordinated Obligations in violation of this Agreement and (b) it will be bound by all provisions of this Agreement.

15. _Entire Agreement_. This Agreement sets forth the entire agreement and understanding among the parties as to the subject matter of this Agreement and merges and supersedes all prior discussions, agreements and undertakings of every kind and nature among them with respect to the subject matter of this Agreement.

16. _Counterparts_. This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.

{Signature Page Follows}

IN WITNESS WHEREOF, the Subordinating Creditor has executed this Agreement as of the day and year first above-written.

Subordinating Creditor:

EGI-TRB, L.L.C.

By: _____
Name: PHILIP G. TINKLER
Title: VICE PRESIDENT

*Subordination Agreement*

## ACKNOWLEDGMENT BY COMPANY

The undersigned, being the Company referred to in the foregoing agreement, hereby acknowledges receipt of a copy thereof and agrees to all of the terms and provisions thereof, and agrees to and with the holders of Senior Obligations that it shall make no payment on the Subordinated Obligations that the Subordinating Creditor would not be entitled to receive under the provisions of such agreement.

TRIBUNE COMPANY
By: *[signature]*
Name: _____
Title: _____

*Subordination Agreement*