IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>                    Debtors. | Chapter 11<br><br>Case Nos. 08-13141 (KJC), *et seq.*<br>(Jointly Administered)<br><br>Hearing Date: December 14, 2011 at 3:00 p.m.<br>Ref. No. 10222, 10226, and 10227 |

### RESPONSE OF TM RETIREES TO MOTIONS FOR RECONSIDERATION OF PORTIONS OF THE OCTOBER 31, 2011 OPINION ON CONFIRMATION

Teitelbaum & Baskin, LLP and Hiller & Arban, LLC, as attorneys for approximately 200 former employees (and beneficiaries of such former employees) (the "**TM Retirees**")[1] of The Times Mirror Company ("**Times Mirror**"), who were receiving or entitled to receive payments under certain non-qualified retirement plans of one or more of the Debtors, for their response to the motions for reconsideration filed by (i) Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas, dated November 14, 2011 (Dkt. No. 10222) (the "**Law Debenture Motion**"), and (ii) Aurelius Capital Management, LP, dated November 14, 2011 (Dkt. No. 10226) (the "**Aurelius Motion**"), and (iii) the Noteholder Plan Proponents, dated November 14, 2011 (Dkt. No. 10227) (the "**Noteholder Motion**" and together with the Law Debenture Motion and the Aurelius Motion, the "**Reconsideration Motions**"), respectfully state:

---

[1] Among the TM Retirees supporting this statement is William Niese, a member of the Official Committee of Unsecured Creditors (the "**Committee**"). Teitelbaum & Baskin also represents Mr. Niese in his role as a member of the Committee and as plaintiff in various state law constructive fraud claim actions commenced pursuant to this Court's Order of April 25, 2011. This pleading is filed on behalf of the TM Retirees, including Mr. Niese, in their capacity as creditors and parties in interest and not in any manner as a representative of the Committee. The positions taken herein do not necessarily reflect the position of the Committee, and the Committee has not been consulted in connection with this pleading.

1.      The TM Retirees are plaintiffs in four state law constructive fraud claim actions commenced pursuant to this Court's Order dated April 25, 2011. In that capacity, the TM Retirees support the relief requested in the Noteholder Motion solely with respect to the issue of seeking a clarification that the Court did not rule upon the method for valuing the PHONES Notes in order to preserve the issue for a complete review and determination in connection with the state law constructive fraud claim actions. (Noteholder Motion at ¶41).

2.      For the reasons set forth below, the TM Retirees support the Aurelius Motion and the Law Debenture Motion with respect to this Court vacating that part of the Opinion which found that the Chapter 5 causes of action to be pursued in the Litigation Trust are not subject to the subordination provisions of the PHONES Notes.

3.      The TM Retirees are former employees of Times Mirror and/or Tribune Company who have asserted claims of approximately $113.6 million against Tribune Company based upon vested interests under four non-qualified plans referred to as the Deferred Compensation Plan, the Excess Pension Plan, the Supplemental Executive Retirement Plan and the Supplemental 401(k) Plan (collectively, the "**Plans**"), as well as various individualized retirement agreements ("**Supplemental Agreements**"). Each of these Plans and Supplemental Agreements constitute obligations to pay deferred compensation to the TM Retirees for services rendered to Times Mirror and/or Tribune Company, which obligations were either expressly assumed by Tribune Company pursuant to the March 13, 2000 Agreement and Plan of Merger between Tribune Company and The Times Mirror Company, or directly provided by Tribune Company.[2]

---

[2] Approximately 185 of the TM Retirees have claims against the Tribune Company parent, which were filed in the aggregate amount of approximately $108.4 million under one or more of the above described deferred compensation plans. These are the only claims potentially implicated by the various motions as the remaining 17 TM Retirees claims in the aggregate amount of approximately $5.2 million are asserted against one or more of the Debtor's operating entities and are to be paid in full under the DCL Plan. It is noted that these figures include approximately six additional TM Retirees who were not included in the original Retiree

4. In the October 31, 2011 Opinion on Confirmation (the "**Opinion**") this Court addressed the many settlements and compromises included in the DCL Plan (Dkt. No. 7136 as amended). Importantly to the TM Retirees, this Court considered the settlement agreement dated May 18, 2010 between the TM Retirees and the Debtors (the "**Retiree Settlement**") which was annexed to the DCL Plan (Dkt. No. 7136, filed December 2010, as amended from time to time) as Exhibit 5.15.4, as well as to the prior plans filed by the Debtors (Dkt. Nos. 4008, filed April 12, 2010; 4690, filed June 4, 2010; 4693, filed June 5 2010). Specifically, this Court found:

> "The Retiree Settlement is an important piece of the reorganization. In light of the settlement, I am satisfied that the release of the Retiree Claims is proper."

(Opinion at p. 93).

5. The Retiree Settlement originally provided for three simple components. First, a compromise as to the amount of TM Retiree claims based upon, among other things, a review of the factual predicates for the claims, compromises as to interest rates and mortality tables and an agreed upon computation metric, pursuant to which the allowed claims were reduced by approximately 9% from $113.6 Million to approximately $104.6 Million (subject to adjustment for arithmetic issues). Second, payment of cash to the TM Retirees of 35% of their allowed claims as set forth in the Debtors' Plan of Reorganization filed on April 12, 2010 (Dkt. No. 4008), as may be amended from time to time, ***provided that such amendments are consistent with the treatment set forth in the April 12, 2010 plan, including the payment of approximately 35% of the allowed TM Retiree Claims***. Third, releases, by the Debtors of all claims against the TM Retirees. (Retiree Settlement ¶¶ 3, 6, 7 and 8).

6. On April 12, 2010 the TM Retirees filed a pleading specifically addressing the Retiree Settlement and supporting confirmation of the Debtors' plan. (Dkt. No. 4010).

---

Settlement, but who have been added after review with the Debtors to ensure that their claims were being calculated in the manner required by the Retiree Settlement.

7. Subsequently, in or around December 2010, the Retiree Settlement was embodied in the DCL Plan (Dkt. No. 7136, as amended from time to time) as Exhibit 5.15.4, with the sole substantive modification to the Retiree Settlement being to reduce the scope of the release as set forth in Section 1.1.192 of the DCL Plan. The DCL Plan continued to provide for the same claim allowance and treatment (i.e. offering TM Retirees the opportunity to select between approximately 32-35% cash distributions on allowed claims and to participate in the Litigation Trust) of the TM Retiree Claims.

8. On May 11, 2011 the TM Retirees supported the DCL Plan based upon the treatment of the TM Retirees as embodied in the Retiree Settlement as modified with respect to the releases. The TM Retirees did not seek any additional compensation for the effect of the modified release provision. (Dkt. No. 8895).

9. The TM Retirees have not waivered or tried to renegotiate the Retiree Settlement. The critical issue for the TM Retirees, who had their retirement benefits cut off more than three years ago and have struggle to meet daily living expenses, is to obtain the benefits of the cash settlement on their allowed claims and the negotiated releases as set forth in the Retiree Settlement and the DCL Plan.

10. The TM Retirees are continuing to support the now Third Amended DCL Plan (Dkt. No. 10273) predicated upon the incorporation of the Retiree Settlement; this Court's approval of the releases in favor of the TM Retirees as part of the Retiree Settlement; and the belief that the DCL Plan proponents continue to support the Retiree Settlement as an important part of the reorganization.

11. While the Reconsideration Motions do not directly address the Retiree Settlement, depending upon the resolution of the Aurelius and Law Debenture Motions, there may be varying degrees of litigation with respect to the Third Amended DCL Plan and the treatment of

the TM Retirees under the Retiree Settlement. Thus, the TM Retirees find themselves, much like in the Survivor "reality show", with shifting alliances to avoid getting thrown off the island.

12. The TM Retirees support the Third Amended DCL Plan and the DCL Plan proponents. The TM Retirees submit that this Court has considered the Retiree Settlement as a whole and found that the settlements, compromises, releases and treatment of the allowed TM Retiree claims are reasonable and appropriate. There have been no challenges to the findings of this Court with respect to the treatment of the TM Retirees under the Retiree Settlement. As a result, it is submitted that (i) the Retiree Settlement is **_not_** one of the many issues to be resolved as part of the Third Amended DCL Plan; and (ii) assuming that the Third Amended DCL Plan is confirmed, the Retiree Settlement, including distributions of between approximately 32 and 35%, as provided in the DCL Plan and the Third Amended DCL Plan, and the releases identified in the DCL Plan in favor of the TM Retirees which this Court has found to be reasonable, should be implemented.

13. The TM Retirees also have an interest in the resolution of the Aurelius and Law Debenture Reconsideration Motions with respect to the issue of vacating that portion of the Opinion which determined that the PHONES Subordination did not apply to the Litigation Trust. First, it is submitted that granting the relief requested in the Aurelius and Law Debenture motions is legally correct for the reasons set forth in those motions. In addition, it is submitted that the unintended effect of the Opinion with respect to this issue will be to permit the PHONES to undermine the entire Senior Lender settlement which was supported by parent company general unsecured creditors, including the TM Retirees.

14. This Court determined that the proceeds of the Litigation Trust under the DCL Plan did not comply with Bankruptcy Code §510 by unfairly applying the subordination provisions to the proceeds of the Litigation Trust. If this ruling should be sustained, it is expected

that the PHONES will assert a right to a pro rata share of some or all of the distributions of proceeds of the Senior Lender settlement to parent company unsecured creditors. Again, if the PHONES are permitted such treatment with respect to the TM Retirees, the effect would be to vitiate the consideration for the Retiree Settlement by diluting the treatment of Retiree Claims by up to 50%.

15. To the extent that the Court does not grant the relief requested in the Aurelius and Law Debenture Motions and vacate the Opinion with respect to this issue, it is respectfully requested that, consistent with the Opinion at pages 93 and 111-113, the Court clarify its ruling to limit the effect of the PHONES pro rata participation ***only*** to the proceeds of the Litigation Trust. Even though such a decision will still have a dilutive effect upon the treatment of the TM Retiree claims to the extent of potential future recoveries from the Litigation Trust, the TM Retirees would agree that the overall treatment of their claims in the Third Amended DCL Plan is consistent with the Retiree Settlement.

## CONCLUSION

16. The TM Retirees respectfully submit that the Retiree Settlement has been a cornerstone of each plan proposed by the Debtors, the Committee and the Senior Lenders. This Court has recognized the importance and propriety of the Retiree Settlement. The Third Amended DCL Plan continues to incorporate the Retiree Settlement. The Retiree Settlement should not be a part of any further litigation involving the Third Amended DCL Plan. The TM Retirees support the Third Amended DCL Plan which implements the Retiree Settlement. The TM Retirees submit that the path to confirmation includes addressing the issue of the PHONES subordination as set forth in the Third Amended DCL Plan and as requested in the Aurelius and Law Debenture Motions.

**WHEREFORE,** the TM Retirees request that the Court (i) grant the relief requested in the Noteholder Motion solely with respect to the issue of seeking a clarification that the Court did not rule upon the method for valuing the PHONES Notes in order to preserve the issue for a complete review and determination in connection with the state law constructive fraud claim actions; (ii) grant the relief requested in the Aurelius Motion and the Law Debenture Motion with respect to vacating that part of the Opinion which found that the Chapter 5 causes of action to be pursued in the Litigation Trust are not subject to the subordination provisions of the PHONES Notes; (iii) to the extent necessary, clarify that any ruling with respect to the permitting the PHONES to share pro rata in Chapter 5 recoveries is limited to the proceeds of the Litigation Trust; and (iv) grant such other and further relief as may be appropriate.

Dated: December 6, 2011
Wilmington, Delaware

Respectfully submitted,

HILLER & ARBAN, LLC

 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
Brian Arban (DE No. 4511)
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 442-7676 telephone
ahiller@hillerarban.com

-and-

Jay Teitelbaum, Esq. (JT-4619)
TEITELBAUM & BASKIN, LLP
1 Barker Avenue
Third Floor
White Plains, New York 10601
(914) 437-7670
jteitelbaum@tblawl1p.com

*Attorneys for the TM Retirees*