## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Hearing Date: December 13, 2011 at 1:00 p.m. (ET)<br>Reply Deadline: December 9, 2011 at 4:00 p.m. (ET) |

## MEMORANDUM OF THE DCL PLAN PROPONENTS REGARDING THE SCHEDULING OF FURTHER PROCEEDINGS

Consistent with the Court's November 29, 2011 directive, the debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), the Official

Committee of Unsecured Creditors (the "Creditors' Committee"), Oaktree Capital Management,

L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon") and JPMorgan Chase Bank,

N.A. ("JPMorgan", and together with the Debtors, the Creditors' Committee, Oaktree, and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Angelo Gordon, the "DCL Plan Proponents") submit this memorandum regarding the scheduling of further confirmation proceedings and resolution of intercreditor disputes.

     As the Court has previously noted, it is critical that the Debtors exit bankruptcy promptly. In re Tribune Co., 2011 Bankr. LEXIS 4128 at *215-*216 (Bankr. D. Del. Oct. 31, 2011). The dual track approach advocated by the DCL Plan Proponents achieves that result, while at the same time providing for the expeditious consideration and disposition of the Allocation Disputes.[2] By contrast, the Noteholder Plan Proponents'[3] single track approach would put consideration of the proposed Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Third Amended Plan")[4] on hold pending determination of the Allocation Disputes. As explained in greater detail below, there is no justification for the delay necessarily associated with the Noteholder Plan Proponents' proposed approach. Rather, it is essential that a dual track procedure be adopted.

     Further, with respect to the jurisdictional inquiry voiced by the Court at the November 22, 2011 status conference, the notice of appeal filed by the Noteholder Plan Proponents from this Court's October 31, 2011 Order Denying Confirmation of Competing Plans (the "Confirmation Order") [Docket No. 10134] presents no obstacle to confirmation of the Third Amended Plan (and any other issues related thereto) or adjudication of the Allocation Disputes. As demonstrated below, the notice of appeal is an ineffective nullity with respect to the Third

---

[2] Indeed, the DCL Plan Proponents have, with minor modifications, adopted the schedule for addressing the Allocation Disputes proposed by the Noteholder Plan Proponents.

[3] The "Noteholder Plan Proponents" are Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company.

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Third Amended Plan, filed on November 18, 2011 [Docket No. 10273].

Amended Plan that should have no effect on the confirmation process or the resolution of the

Allocation Disputes.

## I.     BACKGROUND

1.      On October 31, 2011, the Court issued its Opinion on Confirmation (the

"Confirmation Opinion") [Docket No. 10133] and entered its Confirmation Order denying

confirmation of both the Second Amended Plan and the competing plan proposed by the

Noteholder Plan Proponents (the "Noteholder Plan").  In the Confirmation Opinion, the Court

identified several issues with the Second Amended Plan that, if corrected, would lead to a

confirmable plan.  In re Tribune Co., 2011 Bankr. LEXIS 4128 at *211-*216.  At the same time,

the Court directed the Debtors to proceed with alacrity in developing and implementing a

strategy to exit from bankruptcy: "[T]he Court is of the determined view that the Debtors must

promptly find an exit door to this chapter 11 proceeding." Id. at *215-*216.

2.      Following that directive, the Debtors worked with the other DCL Plan

Proponents, and on November 18, 2011, the DCL Plan Proponents filed (a) the Third Amended

Plan, (b) a supplemental disclosure document relating to the Third Amended Plan (the

"Supplemental Disclosure Document") [Docket No. 10275], and (c) a motion for an order

approving the Supplemental Disclosure Document, approving procedures and deadlines for

resolicitation, scheduling a confirmation hearing, and establishing notice and objection

procedures with respect to confirmation (the "Solicitation Procedures Motion") [Docket No.

10274].  The Third Amended Plan contains specific modifications designed to address the issues

identified in the Confirmation Opinion.  In addition, the Third Amended Plan incorporates a

protocol for resolution of various Allocation Disputes arising among creditors from, among other

things, differing interpretations of the Confirmation Opinion.  That protocol enables the

Allocation Disputes to be addressed separately from confirmation of the Third Amended Plan –

either before, concurrently with, or after confirmation – and thus ensures that the pending intercreditor litigation does not bar the "exit door" for the Debtors. In the Solicitation Procedures Motion, the DCL Plan Proponents seek, among other things, the establishment of a timetable which would allow for the scheduling of a confirmation hearing on the Third Amended Plan as soon as practicable.

3.　　At the November 22, 2011, status conference, the Court directed the parties to meet and confer in an effort to establish a consensual timetable for consideration and resolution of the Allocation Disputes. Although significant progress was made, the parties were not able to reach full agreement. On November 29, 2011, the parties reported their efforts and the Court directed the submission of written memoranda on the scheduling issues. The DCL Plan Proponents submit this memorandum in accordance with that request.

## II.　CONFIRMATION OF THE THIRD AMENDED PLAN SHOULD PROCEED ON A SEPARATE AND INDEPENDENT PATH FROM THE ALLOCATION DISPUTES

4.　　**Plan Scheduling.** In order to allow for expeditious consideration of the Third Amended Plan, the DCL Plan Proponents propose the following schedule for further proceedings on the Third Amended Plan:

| Date | Event |
|---|---|
| Jan. 9 | DCL Plan Proponents file amended Supplemental Disclosure Document ("SDD")[5] |
| Jan. 17 | Objection Deadline for SDD and Solicitation Procedures Motion |
| Later of Jan. 20 and 3 business days prior to hearing | Reply Deadline for SDD and Solicitation Procedures Motion |
| Jan. 23 (week of) | Hearing on SDD and Solicitation Procedures Motion |
| Mar. 2 | Voting/Plan Objection Deadline |
| Later of Mar. 7 and 3 business days prior to hearing | Briefs in Support of Confirmation/Plan Objection Reply Deadline |
| Mar. 12 (week of) | Confirmation Hearing |

A copy of a proposed form of order setting the schedule relating to consideration of the Supplemental Disclosure Document and Solicitation Procedures Motion is attached hereto as Exhibit A. On or before the scheduled hearing on the Solicitation Procedures Motion, the DCL Plan Proponents will file an amended proposed form of order approving the Supplemental Disclosure Document and establishing the schedule for matters relating to confirmation of the Third Amended Plan consistent with the dates set forth above.

     5.      **Allocation Dispute Scheduling.** The DCL Plan Proponents further propose the following schedule for resolution of the Allocation Disputes:

---

[5] Consistent with the Court's comments at the November 22 status conference, this proposed schedule assumes that the Court will have issued a decision on the pending motions for reconsideration of the Confirmation Opinion on or before December 31, 2011.

| Date | Event |
|------|-------|
| Dec. 15 | Last Day to Serve Discovery Requests |
| Jan. 13 | Completion of Fact Discovery |
| Jan. 19 | Expert Reports on Unfair Discrimination Due |
| Jan. 19 | Opening Briefs Due |
| Jan. 23 (week of) | Expert Depositions |
| Feb. 2 | Response Briefs Due |
| Feb. 6 (week of) | Hearing on Allocation Disputes |

A copy of the proposed scheduling order, based upon the scheduling order proposed by the Noteholder Plan Proponents,[6] is attached as Exhibit B hereto.

6.    **Basis For A Dual Track Schedule.**  The dual track schedule outlined above is necessary and appropriate for several reasons.  First, as the Court recognized in its Confirmation Opinion, the Debtors have been in bankruptcy too long and must promptly exit.  In re Tribune Co., 2011 Bankr. LEXIS 4128 at *215-*216.  Indeed, the overwhelming and undisputed evidence demonstrates that there are numerous business reasons why it is critical for the Debtors, especially given the state of the publishing and broadcasting industries, to emerge quickly from bankruptcy.  See Trial Transcript 3/14/11 at 110-117 (Hartenstein).  Failure to do so jeopardizes the Debtors' economic health and value.

7.    Second, enabling the confirmation process to proceed without delay will expedite distributions, and therefore is in the best interest of the Debtors' creditors.  Under the dual track approach proposed by the DCL Plan Proponents, the remaining Allocation Disputes would be ready for hearing by early February 2012, while the confirmation hearing would be scheduled for early March.  The Court would thus be in a position to begin considering the Allocation Disputes

---

[6] Prior to the November 29, 2011 hearing, counsel to Aurelius Capital Management, LP circulated a proposed form of order regarding scheduling of the Allocation Disputes.  The DCL Plan Proponents have utilized that proposed form of order, with minor modifications, and incorporated the above-noted dates and deadlines.

Case 08-13141-BLS    Doc 10370    Filed 12/06/11    Page 7 of 15

approximately a month in advance of its consideration of confirmation issues.  Furthermore,

given the need to secure FCC approvals and waivers before emergence – a process that

effectively cannot begin until a plan is confirmed – the Court would have additional time, if

needed, to consider and resolve the remaining Allocation Disputes issues prior to the Effective

Date.

8.      By contrast, the "single track" approach advocated by the Noteholder Plan

Proponents is simply not consistent with the Court's directive to "promptly find an exit door to

this chapter 11 proceeding." In re Tribune Co., 2011 Bankr. LEXIS 4128 at *215-16.  Even in

the most efficient and streamlined circumstances, it is likely that the Court will need some time

to decide the Allocation Disputes and enter an order.  Moreover, resolution of the Allocation

Disputes could be further delayed by motions for reconsideration and related proceedings.  And

even if the Court were immediately to hear all of the Allocation Disputes on the schedule

proposed by the Noteholder Plan Proponents, issue rulings on all such disputes from the bench,

and no party sought reconsideration of any of those rulings, the Court still would not be able to

hold a confirmation hearing on the Third Amended Plan until mid-May 2012 – at the earliest – in

the event the confirmation process was placed on hold pending resolution of the Allocation

Disputes.  There is no logical reason for such a delay.

9.      Third, in the unlikely event that resolution of the Allocation Disputes is delayed

beyond the date of emergence, no party in interest would be unfairly prejudiced.  The Third

Amended Plan includes a reserve mechanism by which funds subject to the Allocation Disputes

will be held and then disbursed upon resolution of the Allocation Disputes, and the Supplemental

Disclosure Document will inform all parties of the amount by which their distributions may

7

change depending on differing potential outcomes of the Allocation Disputes.[7]  Moreover, as the parties litigating resolution of these issues, the Noteholder Plan Proponents and other creditors are well positioned to evaluate the likelihood of the various potential outcomes when deciding how to cast their vote.

10.     Finally, the Noteholder Plan Proponents' argument that all of the Allocation Disputes must be litigated and resolved before the Court can even consider the adequacy of disclosure and authorize dissemination of the Third Amended Plan, rings particularly hollow.  As noted in the Supplemental Disclosure Document, the maximum size of the reserve that would be required if none of the Allocation Disputes (including the disputes subject to the pending motions for reconsideration of the Confirmation Opinion) are resolved prior to the Effective Date would be approximately $215 million, which is less than 3.2% of the value available for distribution.  By contrast, the Noteholder Plan contemplated reserves that potentially totaled billions of dollars and constituted as much as 54.8% of the funds available for distribution, a reserve that the Noteholder Plan Proponents argued was perfectly reasonable and appropriate. See Docket No. 8757, ¶ 19.[8]

---

[7] As will be demonstrated at the hearing on the Solicitation Procedures Motion, the Supplemental Disclosure Document provides more than adequate information regarding the nature of the Allocation Disputes and the effect each Allocation Dispute may have on distributions to creditors. The DCL Plan Proponents believe that disclosure of ranges of potential recovery – and the factors that will lead to differing levels of recovery – is sufficient to meet the "adequate information" standard. Indeed, the specific disclosure statement for the Noteholder Plan, approved by the Court on December 9, 2010 [Docket No. 7128] as providing adequate information, similarly disclosed the Noteholder Plan's enormously wide range of potential recoveries to creditors depending on the outcome of subsequent litigation. (Noteholder Specific Disclosure Statement, pp. 31-32). In any event, to the extent parties in interest have concerns as to the adequacy of that disclosure, such concerns properly can be addressed in the context of the Solicitation Procedures Motion.

[8] At the November 29 hearing, the Noteholder Plan Proponents also asserted that the classification of Other Parent Claims somehow may be affected by the outcome of certain of the Allocation Disputes, such that the DCL Plan Proponents should not be permitted to solicit votes on the Third Amended Plan until the Allocation Disputes are resolved. This is a confirmation argument. The DCL Plan Proponents will demonstrate at the confirmation hearing that the classification scheme provided in the Third Amended Plan satisfies the requirements of section 1122(a) of the Bankruptcy Code regardless of the outcome of the Allocation Disputes. The Noteholder Plan Proponents have also suggested that confirmation of the Third Amended Plan cannot move forward while the Allocation Disputes remain unresolved due to the elections certain creditors are entitled to make under the Third Amended Plan. To the

11.    Simply put, the Court should not permit the Debtors and their creditors to be

harmed by the potential delay associated with resolution of the intercreditor Allocation Disputes.

Further, given the high likelihood that all Allocation Disputes will be resolved prior to the date

of emergence, the Noteholder Plan Proponents' alleged concerns provide no basis for delaying

the Debtors' exit from bankruptcy.  Moreover, even if all of the Allocation Disputes have not

been resolved prior to emergence, courts regularly confirm plans that provide creditors with

distributions based upon the outcome of future and uncertain litigation.[9]  The dual track

procedure proposed by the DCL Plan Proponents should therefore be adopted.

## III.    THE NOTEHOLDER PLAN PROPONENTS' NOTICE OF APPEAL SHOULD BE DISREGARDED

12.    At the November 22 status conference, the Court inquired about the effect of the

notice of appeal filed by the Noteholder Plan Proponents from the Confirmation Order.  See

Hearing Transcript 11/22/11 at 41:4-9; 41:25-42:3.  Although the Noteholder Plan Proponents

sidestepped the Court's questions, it is clear that the notice of appeal does not divest the Court of

jurisdiction and, consequently, can be disregarded in considering the scheduling of further

proceedings in these cases.

13.    First, to the extent the notice of appeal purports to challenge the Confirmation

Order's denial of confirmation of the Second Amended Plan, the Noteholder Plan Proponents

have no standing because they are not injured, aggrieved or adversely affected by that aspect of

---

extent the Noteholder Plan Proponents have objections about the timing of such elections, they can and should raise
their concerns in connection with the Solicitation Procedures Motion at the appropriate time.  The DCL Plan
Proponents will show that the timing of creditor elections is not an issue that requires that the entire confirmation
process be held in abeyance pending conclusion of the Allocation Disputes.

[9] See, e.g., In re Meridian Automotive Systems – Composites Operations Inc., Case No. 05-11168 (MFW), Docket
No. 1769 (Bankr. D. Del. Dec. 6, 2006) (approving plan that provided for distributions to creditors based, in part, on
the outcome of future litigation); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW), Docket No. 2345 (Bankr.
D. Del. Apr. 17, 2009) (same); In re Freedom Communications Holdings, Inc., Case No. 09-13046 (BLS), Docket
No. 1147 (Bankr. D. Del. Mar. 9, 2010) (same).

the Confirmation Order. Indeed, as to that aspect of the Confirmation Order, the Noteholder

Plan Proponents received the very relief they requested. It is therefore clear that they lack

standing under the Bankruptcy Code and Article III of the Constitution to appeal that part of the

Confirmation Order.[10]

14.    Second, to the extent the notice of appeal purports to challenge the part of the

Confirmation Order denying confirmation to the Noteholder Plan, there is no statutory basis for

an appeal. Although Congress provided for appeal as a matter of right from "final" bankruptcy

court orders, judgments and decrees through 28 U.S.C. § 158(a)(1), most courts have held that

orders denying confirmation are interlocutory in nature and thus not "final" within the meaning

of the statute.[11] While the Third Circuit held in In re Armstrong World Industries that an order

denying confirmation was a "final decision" for purposes of 28 U.S.C. § 1291, it did so in factual

circumstances where an immediate appeal served the policy of "quickly resolv[ing] issues central

to a bankruptcy." 432 F.3d 507, 511 (3d Cir. 2005). Here, such a policy would not be served in

light of the Court's observation that a revised Second Amended Plan would be superior to the

Noteholder Plan even if all of the defects in the Noteholder Plan could be fixed. In re Tribune

---

[10] In re Shkolnikov, 470 F.3d 22, 24 (1st Cir. 2006), ("It is an abecedarian rule that a party cannot prosecute an appeal from a judgment in its favor"); In re O'Brien, 184 F.3d 140, 142 (2d Cir. 1999) ("'a winner cannot appeal'") (quoting Abbs v Sullivan, 963 F.3d 918, 924 (7th Cir. 1992). See also In re Combustion Engineering, Inc., 391 F.3d 190, 215 (3d Cir. 2004); IPSCO Steel (Ala.) Inc. v. Blaine Construction Corp., 371 F.3d 150, 153-54 (3d Cir. 2004).

[11] See In re Zahn, 526 F.3d 1140, 1143-44 (8th Cir. 2008) ("Under Eighth Circuit law, which is consistent with the views of other circuits, an order denying confirmation of a plan, which does not dismiss the case, is not a final order and cannot be appealed"); In re Lievsay, 118 F.3d 661, 662 (9th Cir. 1997) ("We hold that a bankruptcy court's decision denying confirmation of a Chapter 11 plan is interlocutory"); In re Flor, 79 F.3d 281, 283 (2d Cir. 1996) (an order denying confirmation of Debtors' proposed plan under Chapter 11 "is not a final decision unless it necessarily resolves all of the issues pertaining to a discrete claim" by "dismiss[ing] the petition or convert[ing] Debtors' petition to a Chapter 7 petition"); WCI Steel Inc. v. Wilmington Trust Co., 338 B.R. 1, 14 (N.D. Ohio 2005)("where a bankruptcy court denies or withholds confirmation of a reorganization plan, without also dismissing the entire proceedings, the order is not final for purposes of appeal").

Co., 2011 Bankr. LEXIS 4128 at *215.[12] In addition, although 28 U.S.C. § 158(a)(2) provides

for appeals of interlocutory orders with leave of court, the Noteholder Plan Proponents have

neither sought nor obtained the required leave and the unusual circumstances required to obtain

such leave are similarly not present here.[13] Indeed, in view of the Court's express determination

that a revised DCL Plan "would survive the crucible of [11 U.S.C.] § 1129(c)," an immediate

appeal would not present a simple controlling question of pure law and would delay, rather than

materially advance, the ultimate termination of these bankruptcy cases. Id.

15.     Third, even if there were some aspect of the Confirmation Order or Confirmation

Opinion which could be said to be appealable, the Noteholder Plan Proponents' notice of appeal

would not divest this Court of jurisdiction over proceedings to confirm the Third Amended Plan

or to resolve the Allocation Disputes. As Judge Walrath only recently explained, "where there is

no stay, the bankruptcy court retains jurisdiction to enforce an order that is on appeal," including

by considering confirmation of a modified plan which is based on and assumes the vitality of a

prior order that is on appeal. In re Washington Mutual, Inc., 2011 WL 4090757 at *8 (Bankr. D.

Del. Sept. 13, 2011) (citations omitted). This is because "in considering confirmation of the

---

[12] Nor is the collateral order doctrine of any assistance to the Noteholder Plan Proponents in establishing finality, since the doctrine does not encompass an order denying confirmation of a plan of reorganization. See WCI Steel, 338 B.R. at 26-31 (and cases cited therein).

[13] 28 U.S.C. § 158(a)(2) does not expressly specify the standards that courts should apply in allowing discretionary appeals from interlocutory bankruptcy court orders, but courts generally apply standards no more lenient than those that govern discretionary appeals from interlocutory district court orders in ordinary civil cases – namely, where "the order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation." See In re Amir, 436 B.R. 1, 8 (B.A.P. 6th Cir. 2010) ("The decision to grant leave to appeal is within the [court's] discretion and should be made by examining the standards found in 28 U.S.C. § 1292(b)"); In re Mach., Inc., 275 B.R. 303, 306 (B.A.P. 8th Cir. 2002) ("In deciding whether to grant a motion for leave to appeal, we typically apply the standards found in 28 U.S.C. § 1292(b)"); Sigmon v. Gregory, 2008 U.S. Dist. LEXIS 19058 at *4 (W.D.N.C. 2008) ("Most courts have analogized to the standards set forth in 28 U.S.C. § 1292(b)"); In re Genesis Health Ventures, Inc., 2007 U.S. Dist. LEXIS 47346 at *6 (D. Del. 2007) (citing Bowie Produce Co. v. Magic Am. Café, 202 B.R. 24, 26 (D. Del. 1996) ("courts faced with interlocutory appeals in a bankruptcy context have applied by analogy the standards set forth in 28 U.S.C. § 1292(b)"); see also In re Popkin & Stern, 226 B.R. 882, 885 (B.A.P. 8th Cir. 1998) (requiring in addition "exceptional circumstances" and a showing that "refusal would result in wasted litigation and expense").

Modified Plan, the Court is not being asked to modify the order that is on appeal [but rather] is being asked to enforce its order by approving the Modified Plan." <u>Id</u>.

16.     In sum, the Noteholder Plan Proponents' notice of appeal should be disregarded by the Court in determining the appropriate scheduling for these proceedings relating to confirmation of the Third Amended Plan or resolution of the Allocation Disputes.

## CONCLUSION

For all of the reasons set forth above, the Bankruptcy Court should schedule further proceedings in these cases in the manner set forth in this memorandum.

Dated: Wilmington, Delaware
December 6, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
James F. Bendernagel, Jr.
Kevin T. Lantry
Jessica C.K. Boelter
Allison Ross Stromberg
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

 /s/  J. Kate Stickles
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors in
Possession and Certain Non-Debtor
Affiliates

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier: (212) 541-5369

-and-

LANDIS RATH & COBB LLP

 */s/  Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier:  (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

Counsel for the Official Committee of
Unsecured Creditors


DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier:  (213) 621-6100

-and-

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

 */s/ Robert S. Brady*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telecopier: (302) 571-1253

Counsel For Oaktree Capital Management,
L.P. and Angelo, Gordon & Co., L.P.

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

Co-Counsel For Angelo, Gordon & Co, L.P.


DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

         -and-

RICHARDS LAYTON & FINGER

    /s/  Drew G. Soan
Mark Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

Counsel For JPMorgan Chase Bank, N.A.