**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

———————————————————— )
                                                          )
In re:                                                )        Chapter 11 Cases
                                                          )        Case No. 08-13141 (KJC)
TRIBUNE COMPANY, *et al.*,                )        (Jointly Administered)
                                                          )
Debtors.                                             )        **Related Docket  Nos. 10222, 10223, 10225, 10226**
———————————————————— )                **and 10238**

**WILMINGTON TRUST COMPANY'S OMNIBUS
OBJECTION TO MOTIONS FOR RECONSIDERATION
OF THIS COURT'S DECISION ON PHONES SUBORDINATION
AND THE PROCEEDS OF THE LITIGATION TRUST UNDER THE DCL PLAN**

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

and

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

*Counsel for Wilmington Trust Company, solely
in its capacity as successor Indenture Trustee
for the PHONES Notes*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

KEY INDENTURE PROVISIONS ..............................................................................................3

I.      The Subordination Provision. ...........................................................................................3

II.     Surrounding Language In The Contract. ...........................................................................4

III.    Governing Law. .................................................................................................................6

ARGUMENT ................................................................................................................................6

I.      The Reconsideration Motions Should Be Denied Because The Movants Cannot
        Satisfy The Standard For Reconsideration By Simply Disagreeing With The
        Court's Conclusion And Failing To Identify Any New Facts Or Law Warranting
        Judicial Review Of An Issue That Has Already Been Fully Litigated And Fairly
        Decided. .............................................................................................................................6

II.     The Reconsideration Motions Should Be Denied Because Chapter 5 Avoidance
        Claims Are Not "Assets Of The Company", And Only "Assets Of The Company"
        Are  Subject To The PHONES Indenture Subordination Provision. ...................................8

        A.      The Relief Requested Should Be Denied Because Chapter 5 Avoidance
                Claims Are Not "Assets Of The Company". ...........................................................8

        B.      The Relief Requested Should Be Denied Because Only "Assets Of The
                Company" Are  Subject To The PHONES Indenture Subordination
                Provision. ...............................................................................................................12

                1.      Section 510(a) Mandates An Indenture Reading Consistent With
                        Non-Bankruptcy Law, And Non-Bankruptcy Law Does Not
                        Support The Movants' Construction. ..........................................................12

                        a.      The Plain Language Compels A Reading Limiting
                                Subordination To Only Payments Or Distributions Of
                                "Assets Of The Company". .............................................................13

                        b.      Context Compels A Reading Limiting Subordination To
                                Only Payments Or Distributions Of "Assets Of The
                                Company". ......................................................................................15

                        c.      Common Sense Compels A Reading Limiting
                                Subordination To Only Payments Or Distributions Of
                                "Assets Of The Company". .............................................................17

2.  Movants' Arguments Predicated On The So-Called "Rule Of Last Antecedent" Should Be Rejected As Misapplied And Leading To Absurdity.................................................................................................18

3.  Movants' Arguments Based On Parol Evidence Should Be Rejected....................................................................................................20

CONCLUSION.............................................................................................................23

# TABLE OF AUTHORITIES

## Cases

Barnhart v. Thomas,
 540 U.S. 20 (2003)..................................................................................18, 19

Bell v. Bell,
 225 F.3d 203 (2d Cir. 2000).....................................................................8

Biggins v. Willey,
 No. 09-862, 2011 WL 2470472 (D. Del. June 21, 2011) ...................................7

Calyon N.Y. Branch v. Am. Home Mortg. Corp.,
 383 B.R. 585 (Bankr. D. Del. 2008) .................................................7

In re Catholic Diocese of Wilmington, Inc.,
 437 B.R. 488 (Bankr. D. Del. 2010) .................................................6

Coles–Moultrie Elec. Coop. v. City of Sullivan,
 709 N.E.2d 249 (Ill. App. Ct. 1999) ...............................................13

Dentsply Int'l, Inc., v. Kerr Mfg. Co.,
 42 F. Supp. 2d 385 (D. Del. 1999).....................................................7

E.I. du Pont de Nemours & Co. v. Green,
 411 A.2d 953 (Del. 1980) ...............................................................18

In re GenTek, Inc.,
 328 B.R. 423 (Bankr. D. Del. 2005) .................................................9

Granfinanciera, S.A. v. Nordberg,
 492 U.S. 33 (1989)........................................................................11

Harsco Corp. v. Zlotnicki,
 779 F.2d 906 (3d Cir. 1985)..........................................................7

Horwitz v. Bankers Life and Cas. Co.,
 745 N.E.2d 591 (Ill. App. Ct. 2001) ..........................................12-13

Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.,
 602 F.3d 237 (3d Cir. 2010)...........................................................21

JPMorgan Chase Bank N.A. v. The Baupost Group,
 380 B.R. 307 (S.D.N.Y. 2008).........................................................19

Karr v. Castle,
 768 F. Supp. 1087 (D. Del. 1991)...................................................7

Krueger Constr. Co., Inc. v. State of Ill.,
    28 Ill. Ct. Cl. 83, 1972 WL 16785 (Ill Ct. Cl. 1972) ........................................................14

Lotspiech v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago,
    45 N.E.2d 530 (Ill. App. Ct. 1942) ...................................................................................14

Main Bank of Chicago v. Baker,
    427 N.E.2d 94 (Ill. 1981) ..................................................................................................21

Martindell v. Lake Shore Nat'l Bank,
    154 N.E.2d 683 (Ill. 1958) ................................................................................................12

Miniat v. Ed Miniat, Inc.,
    315 F.3d 712 (7th Cir. 2002) ......................................................................................18, 20

Moyer v. ABN AMRO Mortg. Corp. (In re Feringa),
    376 B.R. 614 (Bankr. W.D. Mich. 2007)..........................................................................10

Nat'l Tax Credit Partners v. Havlik,
    20 F.3d 705 (7th Cir. 1994) ................................................................................................9

Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.),
    226 F.3d 237 (3d Cir. 2000)......................................................................................2, 9-10

O'Kane v. Apfel,
    224 F.3d 686 (7th Cir. 2000) ............................................................................................20

Owens v. McDermott, Will & Emery,
    736 N.E.2d 145 (Ill. App. Ct. 2000) .................................................................................12

People v. Santiago,
    925 N.E.2d 1122 (Ill. 2010) ..............................................................................................14

Perez v. U.S.,
    378 F. Supp. 2d 150 (E.D.N.Y. 2005) ..............................................................................21

Premier Title Co. v. Donahue,
    765 N.E.2d 513 (Ill. App. Ct. 2002) .................................................................................12

Robinson v. Radian, Inc.,
    No. 07-10421, 2008 WL 2064552 (E.D. Mich. May 14, 2008) ........................................21

Salce v. Saracco,
    949 N.E.2d 284 (Ill. App. Ct. 2011) .................................................................................12

Salvatore v. Gelburd,
    565 N.E. 204, 206 (Ill. App. Ct. 1990) .............................................................................20

In re Saunders,
 101 B.R. 303 (Bankr. N.D. Fla. 1989) ............................................................................10

Sender v. Simon,
 84 F.3d 1299 (10th Cir. 1996) ......................................................................................10

Stanziale v. Nachtomi,
 No. 01-403, 2004 WL 1812705 (D. Del. Aug. 6, 2004) ......................................................7

Steffen v. Gray, Harris & Robinson, P.A.,
 283 F. Supp. 2d 1272 n.24 (M.D. Fla. 2003)
 aff'd, 138 F. App'x 297 (11th Cir. 2005) ........................................................................10

In re Tribune Co.,
 ___ B.R. ___, 2011 WL 5142420 (Bankr. D. Del. Oct. 31, 2011) .......................................3

In re Tudor,
 342 B.R. 540 (Bankr. S.D. Ohio 2005) ............................................................................20

Wagner v. Christiana Bank & Trust Co. (In re Wagner),
 353 B.R. 106 (Bankr. W.D. Pa. 2006) ............................................................................10

Warner v. King,
 107 N.E. 837 (Ill. 1915) ...............................................................................................20

Wellman v. Wellman (In re Wellman),
 933 F.2d 215 (4th Cir. 1991) ..........................................................................................9

Willison v. Econ. Fire & Cas. Co.,
 690 N.E.2d 1073 (Ill. App. Ct. 1998) ..............................................................................14

In re W.R. Grace & Co.,
 398 B.R. 368 (D. Del. 2008) ............................................................................................7

Zilkha Energy Co. v. Leighton,
 920 F.2d 1520 (10th Cir. 1990) .......................................................................................9

## Statutes

11 U.S.C. § 327(a) .........................................................................................................9

11 U.S.C. § 328 .............................................................................................................9

11 U.S.C. § 363(b) .........................................................................................................9

11 U.S.C. § 364 .............................................................................................................9

11 U.S.C. § 510(a) .....................................................................................................2, 12

11 U.S.C. § 541 .......................................................................................................................8, 10

11 U.S.C. § 544 ...........................................................................................................................9

11 U.S.C. § 550 .........................................................................................................................11

11 U.S.C. § 1103(c) .....................................................................................................................9

11 U.S.C. § 1129 ..........................................................................................................................9

11.U.S.C. § 1141 ..........................................................................................................................9

**Rules**

Fed. R. Civ. P. 59 .....................................................................................................................6, 8

Fed. R. Bankr. P. 9023 .................................................................................................................6

**Other Authorities**

5 Collier on Bankruptcy ¶ 510.03[2] .........................................................................................12

5 Collier on Bankruptcy, ¶ 541.07 .............................................................................................10

1-2 Lender Liability Law & Litig. § 2.03 (Matthew Bender 2011).............................................18

Wilmington Trust Company ("<u>Wilmington Trust</u>"), as successor Indenture Trustee for the PHONES Notes,[1] respectfully submits this Omnibus Objection to:

- *Motion of Aurelius Capital Management, LP for Reconsideration of the Court's October 31, 2011 Decision as it Pertains to the Application of PHONES Notes Subordination*, dated November 14, 2011 [Docket No. 10226];

- *Joint Motion of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas Requesting Reconsideration of the Court's confirmation Opinion with Respect to the Subordination of the PHONES*, dated November 14, 2011 [Docket No. 10222];

- *Joinder of Deutsche Bank Trust Company Americas to Motion of Aurelius Capital Management, LP for Reconsideration of the Courts October 13, 2011 Decision as it Pertains to the Application of PHONES Notes Subordination* dated November 16, 2011 [Docket No. 10238];

- *Joinder of Brigade Capital Management, LLC, in the Joint Motion of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas Requesting Reconsideration of the Court's confirmation Opinion with Respect to the Subordination of the PHONES*, dated November 14, 2011 [Docket No. 10225];

- *Joinder of Davidson Kempner Capital Management LLC, as Investment Advisor, to Joint Motion of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas Requesting Reconsideration of the Court's Confirmation Opinion with Respect to the Subordination of the PHONES*, dated November 14, 2011 [Docket No. 10223] (collectively, the "<u>Reconsideration Motions</u>").

In opposition to the Reconsideration Motions, Wilmington Trust respectfully represents as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      Blackletter legal principle: A pre-bankruptcy corporation and its post-filing bankruptcy estate are not the same legal entity.  The corporation and its bankruptcy estate each has a wholly different legal right of being; each is organized and governed by a different body of law; and each has different legal rights and obligations.  Thus, Tribune Company, as it existed prior to its bankruptcy filing, simply is not the same legal being as its Chapter 11 estate.

---

[1]    For the Court's convenience, a true and correct copy of the PHONES Indenture is attached hereto as <u>Exhibit A</u>.

2.     Second blackletter legal principle:  Neither a pre-bankruptcy corporation nor its bankruptcy estate has any ownership interest in Chapter 5 avoidance claims.   Chapter 5 avoidance claims either: (i) belong to creditors pre-petition; or (ii) are new rights afforded to the bankruptcy estate (not the underlying corporate entity) by the Bankruptcy Code.  And, as for the latter category, the Bankruptcy Code does not confer on the estate any vestiges of legal "ownership" in Chapter 5 avoidance claims.  As the Third Circuit stated in Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.), 226 F.3d 237, 244-45 (3d Cir. 2000), the bankruptcy estate is merely afforded standing to assert such claims, not for its own account, but in a representative capacity (like a steward or guardian) for unsecured creditors -- the true "owners" of Chapter 5 claims.  Thus, Tribune Company did not pre-petition, and its bankruptcy estate does not now post-petition, "own" any Chapter 5 avoidance claims or their proceeds.  Such claims were not then, are not now, and could never be "assets of the Company."

3.     Third blackletter legal principle: An indenture's subordination provision is enforceable in bankruptcy only "to the same extent that [it] is enforceable under nonbankruptcy applicable law."   11 U.S.C. § 510(a).   Such provisions are to be read in accordance with applicable state contract law, and are to be afforded their plain meaning, comporting with surrounding contract language and common sense.  The PHONES Indenture obligates turnover of payments or distributions of only "assets of the Company," with defined-term "Company" referring only to Tribune Company, as the pre-petition corporate entity.  Given that Chapter 5 claims are not and could never be "assets of the Company," the PHONES Indenture does not provide for turnover of their proceeds.  The construction advanced in the Reconsideration Motions runs afoul of fundamental principles of contract law, the plain wording of the PHONES

Indenture, and context surrounding the subordination provision.  It is also contrary to basic lending practice and common sense.

4.    In its October 31, 2011 *Opinion on Confirmation*, this Court correctly ruled: "[p]ursuant to *Cybergenics*, causes of action that the Debtors' estate may assert under Chapter 5 of the Bankruptcy Code are not 'assets of the Company' subject to the PHONES Notes' subordination provision." <u>In re Tribune Co.</u>, 2011 WL 5142420, at *57 (Bankr. D. Del. Oct. 31, 2011).  In so ruling, this Court applied blackletter legal principles.  The Reconsideration Motions offer nothing new; they simply rehash arguments previously advanced (and properly rejected) or that should have been advanced in prior submissions (and rejected then, as well).  The Movants have failed to carry their legal burden.  The relief requested should be denied.

**KEY INDENTURE PROVISIONS**

**I.    <u>The Subordination Provision</u>.**

5.    The key subordination provision is found in PHONES Indenture Section 14.02, which provides, in pertinent part, as follows:

> ***Upon any distribution of assets of the Company*** in the event of:
>
> (1)  any insolvency or bankruptcy case or proceeding, or any receivership, liquidation, reorganization or other similar case or proceeding in connection therewith, relative to the Company or to its creditors, as such, or to its assets; or
>
> (2)  any liquidation, dissolution or other winding up of the Company, whether voluntary or involuntary and whether or not involving insolvency or bankruptcy; or
>
> (3)  any assignment for the benefit of creditors or any other marshaling of assets and liabilities of the Company; then and in such event
>
> > (A)  the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness . . . before the Holders of the Securities of any series are entitled to receive ***any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01*** . . . and

3

> (B) *any payment or distribution of assets of the Company* of any kind or character, whether in cash, property or securities, by set-off or otherwise, to which the Holders or the Trustee would be entitled but for the provisions of this Article Fourteen, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, shall be paid by the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, directly to the holders of Senior Indebtedness or their representative or representatives ...

PHONES Indenture, § 14.02 (emphasis added).  The provision contemplates only subordination of payments from the borrower or distributions of assets of the borrower.  Nothing more.

6.      The two references to "assets of the Company" in Section 14.02 invoke the definition of "Company" found in the Indenture's Preamble (page 1), to wit: "Tribune Company, a corporation duly organized and existing under the laws of the State of Delaware."  Thus, the term "Company" refers to the corporation pre-existing the bankruptcy and, so, the Section 14.02 phrase "assets of the Company" refers exclusively to assets of the pre-petition corporate entity.  In other words, only (i) payments from the assets of the pre-petition corporate entity or (ii) distributions of assets of the pre-petition corporate entity are subject to contractual subordination.

## II.      <u>Surrounding Language In The Contract</u>.

7.      Of course, Section 14.02 does not sit in a Petri dish for isolated observation; its meaning is further informed by surrounding context and language.  Compare, for example: (i) Section 14.02's exclusive focus on "assets of the Company," with (ii) Section 14.01's definition of "Senior Indebtedness," which explicitly acknowledges the existence of a bankruptcy estate separate and apart from "the Company":

> "Senior Indebtedness" means the principal of (and premium, if any) and interest on (including interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or permitted to the holder of such Indebtedness of the Company against *the bankruptcy or any other insolvency estate of the Company in*

4

> ***such proceeding)*** and other amounts due on or in connection with any Indebtedness
> of the Company incurred, assumed or guaranteed by the Company,...

PHONES Indenture, § 14.01 (emphasis added).  Section 14.01 reveals that those negotiating and

drafting the PHONES Indenture: (1) recognized the legal distinction between the pre-bankruptcy

corporate entity and the post-petition estate; (2) knew how to – and did, in fact – draft in a

manner that acknowledged such legal distinction; (3) specifically constructed Section 14.02 to

exclude recoveries augmenting the bankruptcy estate; and (4) therefore, by drafting omission,

reflects intent to exclude Chapter 5 claims from contractual subordination contained in Section

14.02.

8.      This understanding is further supported by PHONES Indenture Sections 5.10 and

5.05.  These two Sections explicitly recognize the Indenture Trustee's right to pursue third-party

recoveries to satisfy PHONES indebtedness, such as fraudulent conveyance claims that morph

into Chapter 5 claims post-petition.  Section 5.10 provides as follows:

> Except as otherwise provided with respect to the replacement or payment of
> mutilated, destroyed, lost or stolen Securities…, no right or remedy herein conferred
> upon or reserved to the Trustee or to the Holders is intended to be exclusive of any
> other right or remedy, and every right and remedy shall, to the extent permitted by
> law, be cumulative and in addition to every other right and remedy given hereunder
> ***or now or hereafter existing at law or in equity or otherwise***. The assertion or
> employment of any right or remedy hereunder, or otherwise, shall not prevent the
> concurrent assertion or employment of any other appropriate right or remedy.

PHONES Indenture, § 5.10 (emphasis added).

9.      Section 5.05, in turn, provides:

> ***All rights of action and claims under this Indenture or the Securities may be***
> ***prosecuted and enforced by the Trustee*** without the possession of any of the
> Securities or the production thereof in any proceeding relating thereto, and any such
> proceeding instituted by the Trustee shall be brought in its own name as trustee of an
> express trust, ***and any recovery of judgment shall***, after provision for the payment of
> the reasonable compensation, expenses, disbursements and advances of the Trustee,
> its agents and counsel, ***be for the ratable benefit of the Holders of the Securities*** in
> respect of which such judgment has been recovered....

PHONES Indenture § 5.05 (emphasis added).  Importantly, Sections 14.02, 5.10 and 5.05 do not provide that third-party recoveries (before or after they become Chapter 5 actions) fall within the turnover obligations of Section 14.02.  There is no section integration language (as there is in numerous other provisions) indicating that the Indenture Trustee's rights under Sections 5.10 and 5.05 are subservient to Section 14.02. See, e.g., PHONES Indenture § 6.03 ("Subject to the provisions of Section 6.01…).

10.     Underscoring the point even further, Section 1.11 provides that holders of Senior Indebtedness are not third-party beneficiaries and have absolutely no rights arising under Sections 5.10 and 5.05.  Holders of Senior Indebtedness only have rights under the provisions of Indenture Article Fourteen.  Thus, only "assets of the Company" are to be turned over to holders of Senior Indebtedness; third-party recoveries contemplated by Sections 5.10 and 5.05 (before or after they become Chapter 5 recoveries) are not turned over to holders of Senior Indebtedness.

III.    **Governing Law.**

11.     Section 1.12 provides that the interpretation of the PHONES Indenture is governed by Illinois law.

## ARGUMENT

I.      **The Reconsideration Motions Should Be Denied Because The Movants Cannot Satisfy The Standard For Reconsideration By Simply Disagreeing With The Court's Conclusion And Failing To Identify Any New Facts Or Law Warranting Judicial Review Of An Issue That Has Already Been Fully Litigated And Fairly Decided.**

12.     Rule 59 of the Federal Rules of Civil Procedure, as made applicable here by Bankruptcy Rule 9023, governs motions for reconsideration.  See In re Catholic Diocese of Wilmington, Inc., 437 B.R. 488, 490 (Bankr. D. Del. 2010).  Reconsideration is warranted only where: (1) there has been an intervening change in the controlling law; (2) there is newly

discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice. In re W.R. Grace & Co., 398 B.R. 368, 372 (D. Del. 2008); see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

13.    Reconsideration is an "extraordinary" remedy, one that is not available simply to "reargue the facts of the case or its legal underpinnings." Calyon N.Y. Branch v. Am. Home Mortg. Corp., 383 B.R. 585, 589 (Bankr. D. Del. 2008). It is not available to "request that a court rethink a decision already made." Biggins v. Willey, No. 09-0862, 2011 WL 2470472, at *1 (D. Del. June 21, 2011). Put differently, a Court's opinions should not be treated as mere "first drafts," Karr v. Castle, 768 F. Supp. 1087, 1093 (D. Del. 1991), and reconsideration "should not be used to rehash arguments already briefed or to allow a 'never-ending polemic between the litigants and the Court,'" Dentsply Int'l, Inc. v. Kerr Mfg. Co., 42 F. Supp. 2d 385, 419 (D. Del. 1999). Further, Courts should exercise "vigilan[ce] that motions for [reconsideration] are not used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Stanziale v. Nachtomi, No. 01-403, 2004 WL 1812705, at *1 (D. Del. Aug. 6, 2004).

14.    The Movants have not carried their burden. The Reconsideration Motions offer nothing new, and anything that now may be charitably dubbed "new," should have been presented: (1) during the April 13, 2011 hearing, at which Wilmington Trust orally presented its closing argument; (2) in post-trial briefs filed by the Movants several weeks later (Docket Numbers 8932, 9022); and/or (3) during Movants' hours of closing argument held weeks after that, on June 27, 2011. Revisionist history notwithstanding, the Movants only limply responded to Wilmington Trust's subordination arguments when they were presented because such

7

arguments then advanced Movants' grander strategic goal: Scuttling the DCL Plan. Movants' litigation strategy assumed a calculated risk, one that the Court suggested (on several occasions) may prove unwise. Rule 59 does not now allow Movants to reset and select an alternative litigation strategy.

15.     At their core, the Reconsideration Motions are nothing more than an effort to rehash fully and fairly litigated issues because the Movants do not like the outcome of their selected litigation tactics. That is woefully insufficient under the law. The relief requested should be denied.

## II.     The Reconsideration Motions Should Be Denied Because Chapter 5 Avoidance Claims Are Not "Assets Of The Company" And Only "Assets Of The Company" Are Subject To The PHONES Indenture Subordination Provision.

### A.     The Relief Requested Should Be Denied Because Chapter 5 Avoidance Claims Are Not "Assets Of The Company".

16.     Bankruptcy Code Section 541 provides that, upon a bankruptcy filing, an estate is created and all assets of the pre-petition entity immediately and automatically become part of this new legal vessel. See 11 U.S.C. § 541(a). Thus, the pre-petition corporation and the post-petition estate are viewed by the law as being separate and distinct legal identities. See Bell v. Bell, 225 F.3d 203, 215 (2d Cir. 2000).

17.     The separation of the two entities is not mere procedural convenience; rather, it is pervasive and complete. Those distinct entities have different legal rights, obligations, responsibilities and purposes. For example, whereas the pre-petition corporation is privately chartered pursuant to state corporations statutes, the post-petition estate is automatically (and independently) brought into being by the Bankruptcy Code. See 11 U.S.C. § 541(a). Whereas the pre-petition corporation is privately governed by a board of directors operating without Court

8

oversight, the post-petition estate is supervised by the Bankruptcy Court and subsists under the close scrutiny of an Official Creditors' Committee and others. See, e.g., 11 U.S.C. §§ 327(a), 328, 363(b), 364, 1103(c). And, whereas corporate charters afford the enterprise wide latitude to conduct business and generally contemplate it doing so into perpetuity, the Bankruptcy Code contemplates that the post-petition estate has a limited purpose and life span, existing solely to facilitate and for the duration of the Chapter 11 process. See 11 U.S.C. §§ 1129, 1141.

18.      It is, therefore, not even a theoretical possibility that any form of Chapter 5 avoidance claim could be an asset of the pre-petition corporate entity. With the exception of state law fraudulent conveyance claims, all Chapter 5 avoidance claims come into existence only after the bankruptcy filing and, thereafter, are vested exclusively in the estate. Nat'l Tax Credit Partners v. Havlik, 20 F.3d 705, 708-09 (7th Cir. 1994). And, prior to bankruptcy, state law fraudulent conveyance claims belong exclusively to creditors, not the corporate borrower. In re GenTek, Inc., 328 B.R. 423, 429 (Bankr. D. Del. 2005).

19.      It likewise is not even a theoretical possibility that any Chapter 5 avoidance claim could be an asset of the post-petition bankruptcy estate. The estate no more "owns" Chapter 5 avoidance claims than did the pre-petition corporation. The estate acts merely as a claim steward or guardian, collecting for the creditors' account. See Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523 (10th Cir. 1990) (the debtor's assumption of creditor standing under the Section 544(a) is pure "legal fiction"); see also Wellman v. Wellman (In re Wellman), 933 F.2d 215, 218 (4th Cir. 1991) (estate may pursue Chapter 5 actions only if it will benefit creditors, as opposed to the underlying corporate entity). As the Third Circuit stated in Cybergenics:

> [W]e reach the inescapable conclusion that the fraudulent transfer claims, which state law provided to [the Debtor's] creditors, ***were never assets of [the Debtor]***, and this conclusion is not altered by the fact that a debtor in possession is

empowered to pursue those fraudulent transfer claims for the benefit of all creditors. The avoidance power itself, which we have analogized to the power of a public official to carry out various responsibilities in a representative capacity, *was likewise not an asset of [the Debtor],* just as this authority would not have been a personal asset of a trustee, had one been appointed.

226 F.3d at 245 (emphasis added); see also Sender v. Simon, 84 F.3d 1299, 1304 (10th Cir. 1996) ("Causes of action commenced by a trustee on behalf of a debtor estate fall into two broad categories: (1) actions brought by the trustee as successor to the debtor's interests included as property of the estate under 11 U.S.C. § 541, and (2) actions brought under one of the trustee's avoidance powers."); Steffen v. Gray, Harris & Robinson, P.A., 283 F. Supp. 2d 1272, 1284 n.24 (M.D. Fla. 2003) ("This Court concludes that [a fraudulent conveyance claim] is not property of the estate because to construe Section 541(a)(1) in such a manner would render Section 541(a)(3) superfluous."), aff'd, 138 F. App'x 297 (11th Cir. 2005); Moyer v. ABN AMRO Mortg. Corp. (In re Feringa), 376 B.R. 614, 624 (Bankr. W.D. Mich. 2007) ("[T]he avoidance action was not property of the estate to begin with."); Wagner v. Christiana Bank & Trust Co. (In re Wagner), 353 B.R. 106, 112 (Bankr. W.D. Pa. 2006) ("Here, based upon an examination of the plain language of Section 541, it is clear that a mere 'claim' held by the Chapter 7 Trustee for potential or prospective recovery pursuant to her strong-arm powers does not qualify as property of the Chapter 7 estate."); In re Saunders, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989) ("The fraudulent transfer cause of action itself is not considered property of the estate since the avoidance of such a transfer is not a cause of action assertable by the debtor. It can only be asserted by a creditor … or by a trustee in bankruptcy."); see also 5 Collier on Bankruptcy, ¶ 541.07 n.1 ("The avoiding powers of a debtor in possession granted in chapter 5 of the Code are not property of the estate but statutorily created powers to recover property.").

10

20.     Further, despite the Movants' assertions (without any citation support), a fraudulent conveyance claim for moneys transferred pre-petition cannot be recast as a claim in equity for the return of an asset (or res) of the pre-petition corporation.  The Supreme Court conclusively dispensed with that argument in Granfinanciera, S. A. v. Nordberg, holding that fraudulent conveyance suits for the return of money are "quintessentially suits at common law that more nearly resemble state law contract claims."  492 U.S. 33, 34-35 (1989).  In other words, a fraudulent conveyance claim for money transferred is simply a demand for an award of damages, to be paid by the defendant with property belonging to the defendant.  See id.  And, regardless, Section 550 only allows Chapter 5 recoveries that are "for the benefit of the estate," not the pre-petition corporation.  See 11 U.S.C. § 550.

21.     In sum: (1) it is not legally possible that Chapter 5 avoidance claims could be assets of the pre-petition corporation; (2) it is not legally possible that Chapter 5 avoidance claims or their proceeds could be assets of the post-petition bankruptcy estate; (3) it is not legally possible that Chapter 5 avoidance claims for money could be recast as the equitable return of assets of the pre-petition corporation; and (4) it is, therefore, not legally possible that Chapter 5 avoidance claims or their proceeds ever could be properly categorized in the subordination provisions of the PHONES Indenture as "assets of the Company."  The *Opinion on Confirmation* was correctly decided.

### B.    The Relief Requested Should Be Denied Because
Only "Assets Of The Company" Are Subject To
The PHONES Indenture Subordination Provision.

### 1.    Section 510(a) Mandates An Indenture Reading
Consistent With Non-Bankruptcy Law, And Non-
Bankruptcy Law Does Not Support The Movants' Construction.

22.    Bankruptcy Code Section 510(a) provides that "a subordination agreement is enforceable in a case under [Title 11] to the same extent that such agreement is enforceable under applicable nonbankruptcy law."   11 U.S.C. § 510(a).   "[A]s a general proposition, federal courts must look solely to applicable state contract law to determine the scope and enforceability of a subordination agreement without regard to federal law."   5 Collier on Bankruptcy ¶ 510.03[2].

23.    Under Illinois law, contracts must be interpreted as a whole, with meaning given to all provisions, thereby effecting the intent of the parties.  Salce v. Saracco, 949 N.E.2d 284, 288 (Ill. App. Ct. 2011) ("the primary goal of contract interpretation is to give effect to the intent of the parties"); Premier Title Co. v. Donahue, 765 N.E.2d 513 (Ill. App. Ct. 2002) ("When interpreting a contract, a court must consider the document as a whole, rather than focusing upon isolated portions"); Martindell v. Lake Shore Nat'l Bank, 154 N.E.2d 683, 689 (Ill. 1958) ("[A] contract [is] to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it will be presumed that everything in the contract was inserted deliberately and for a purpose").

24.    Words selected should be given their plain and ordinary meaning and, if a contract is clear and unambiguous, extrinsic evidence should not be considered.   Owens v. McDermott, Will & Emery, 736 N.E.2d 145, 150 (Ill. App. Ct. 2000).  Further, any interpretation that would render terms superfluous or meaningless should be avoided.  Horwitz v. Bankers Life

12

and Cas. Co., 745 N.E.2d 591, 607 (Ill. App. Ct. 2001) ("[N]o word in a contract is to be
considered as mere surplusage and thus meaningless"); see also Coles–Moultrie Elec. Co-op. v.
City of Sullivan, 709 N.E.2d 249, 253 (Ill. App. Ct. 1999) ("[I]n interpreting a contract, meaning
and effect must be given to every part of the contract including all its terms and provisions, so no
part is rendered meaningless or surplusage unless absolutely necessary").

> **a.     The Plain Language Compels A Reading
> Limiting Subordination To Only Payments
> Or Distributions Of "Assets Of The Company".**

25.     Section 14.02 is introduced by the clause: "***Upon any distribution of assets of the
Company***."   PHONES Indenture § 14.02 (emphasis added).   If and only if "assets of the
Company" are being paid over or distributed, such assets will be diverted to holders of "Senior
Indebtedness" under the terms of Section 14.02.   This introductory language, "Upon any
distribution of assets of the Company," conditions subordination's application; it is the condition
on which everything else depends.   Nothing that follows is applicable absent a "distribution of
assets of the Company," and only in connection with such distribution, are "assets of the
Company" re-directed to holders of Senior Indebtedness.

26.     The Movants seek to diminish the importance of this introductory clause by
arguing that it is only a "triggering or enabling clause that is meant to act as part of a condition
precedent to the application" of the PHONES subordination provisions.   The Movants then
develop arguments predicated on a most strained interpretation of Section 14.02(B).   This is
misguided advocacy and should be rejected.

27.     First, it is blackletter contract law that all of Section 14.02 must be read with the
introductory clause in mind, and considering the purpose of the section as a whole, which is to

re-direct "assets of the Company" to Senior Indebtedness only upon delivery of "assets of the Company."  Illinois law rejects contract constructions predicated on a disregard of a provision's introductory language.  See, e.g., Willison v. Econ. Fire & Cas. Co., 690 N.E.2d 1073, 1076 (Ill. App. Ct. 1998); see also Salce, 949 N.E.2d at 289 ("That paragraph must be read in harmony with the first paragraph. . . . Indeed, both paragraphs are listed under the same heading—future contributions.  Interpreting those paragraphs together…,") (citation omitted); Lotspiech v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago, 45 N.E.2d 530, 539 (Ill. App. Ct. 1942) ("We agree with plaintiff that each of these sub-paragraphs must be read in conjunction with the introductory clause."); Krueger Constr. Co., Inc. v. State of Ill., 28 Ill. Ct. Cl. 83, 1972 WL 16785, at *4 (Ill Ct. Cl. 1972) ("The [condition precedent] …cannot be lifted out of context for purposes of interpretation. It must be read as an integral part of the entire contract and in connection with other provisions thereof which state conditions precedent to the allowance of any additional compensation [under the disputed provision]."); accord People v. Santiago, 925 N.E.2d 1122, 1129 (Ill. 2010) (statutory or rule-based provisions must be "read together with the introductory clause").  In all circumstances, the purpose of a contractual or statutory provision must be considered and given effect in determining its intended application, as stated in the words used. See, e.g., Willison, 690 N.E.2d at 1076 ("When this introductory phrase is read in conjunction with the first clause of the provision, the intent of the provision becomes clear.").

28.    Second, among the countless places that the PHONES Indenture discusses the terms "payment" and "payments" or what is "payable" under the PHONES Indenture, none reference payments from sources other than "the Company."  See, e.g., PHONES Indenture, §§ 3.01, 10.01, 14.02, 14.03, 14.04, 14.05.  Stated differently, the word "payment" is easily read in a multitude of other places to mean "payment from the Company."  Only in Section 14.02, the

14

Movants ask for a remarkably different reading, one substantially at odds with the many other references to "payment" in the PHONES Indenture, to wit: here alone, "payment" means a delivery from any source whatsoever.  Nothing in the language of Section 14.02 (or anywhere else in the PHONES Indenture for that matter) supports such a dissonant reading.  Quite the contrary, Movants' reading confounds basic principles of contract construction.

29.    Third, the Movants' expansive interpretation of the term "payment," i.e., any payment from any source (including third-parties), would render superfluous and meaningless much of Section 14.02(B).  That is, were the term "payment" in Section 14.02(B) to mean any payment from any source whatsoever, "*whether in cash, property or securities*," there would be no need to reference "distributions" of assets of the Company, "*whether in cash, property or securities*," as any such distributions would be completely subsumed by and included within the more expansive term "payment."

30.    Accordingly, giving plain meaning to all the terms of the PHONES Indenture, the PHONES Indenture must be read only to subordinate the payments or distributions of assets of the Company.  Even if the term "payment" were different than a distribution of assets of the Company, then "payment" in Section 14.02 can only mean a *payment* of "cash, property or securities" coming *from the Company*.  The Movants' construction should be rejected.

**b.    Context Compels A Reading
Limiting Subordination To Only Payments
Or Distributions Of "Assets Of The Company".**

31.    PHONES Indenture Section 14.02 must be read in the context of the entire Article Fourteen.  Article Fourteen commences with the following:

> The Company covenants and agrees …the indebtedness represented by the [PHONES Notes] and the payment of the principal amount, interest and such

15

other amounts as provided for in Section 3.01…are hereby expressly made subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness.

PHONES Indenture § 14.01.  Section 14.01 also contains a single and purposeful reference to the

Company's bankruptcy estate.  Pursuant to Section 14.01:

> "Senior Indebtedness" means the principal of (and premium, if any) and interest on (including interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or permitted to the holder of such Indebtedness of the Company against *the bankruptcy or any other insolvency estate of the Company in such proceeding*) and other amounts due on or in connection with any Indebtedness of the Company incurred, assumed or guaranteed by the Company, . . .

PHONES Indenture § 14.01 (emphasis added).  That section highlights the fact that there is a

distinction in the PHONES Indenture between the bankruptcy estate and "the Company."  The

dual reference further supports an application of subordination only to "assets of the Company,"

to wit: the assets in the possession of Tribune Company on the petition date.

32.    Further, Article Fourteen also provides numerous examples of other instances

where PHONES subordination is applied to *the Company's* payment of principal, interest or

other amounts as provided in Section 3.01 of the PHONES Indenture.  See, e.g., PHONES

Indenture § 14.03 (prior payment by the Company of Senior Indebtedness upon acceleration of

the PHONES) and § 14.04 (default in Senior Indebtedness by the Company).

33.    In juxtaposition to the provisions of Article Fourteen, Sections 5.10 and 5.05

address circumstances in which Wilmington Trust may pursue and receive payments from

sources *other than the Company*, such as third-party fraudulent conveyance defendants.  See

PHONES Indenture § 5.10 (cumulative remedies reserved are not limited to any particular causes

of action and would include any claims arising outside the PHONES Indenture, including

Chapter 5 avoidance claims) and § 5.05 (the PHONES Indenture Trustee may pursue causes of

16

action for the benefit of the PHONES Noteholders and that "any recovery of judgment shall, ... be for the ratable benefit of the Holders of the Securities in respect of which such judgment has been recovered."). Section 5.05 explicitly provides that holders of the PHONES are entitled to keep third-party recoveries without turnover, and Section 1.11 provides that holders of Senior Notes have absolutely no entitlement to take claim to such recoveries. See PHONES Indenture, § 1.11 (Holders of Senior Indebtedness are beneficiaries of the PHONES Indenture only as provided in Article Fourteen).

34.     The PHONES Indenture as a whole supports a reading of Section 14.02, that limits its applicability only to "assets of the Company." Given that Chapter 5 claims and recoveries  may not be categorized as "assets of the Company," such claims and recoveries are not subject to contractual subordination. The relief requested should be denied.

### c.     Common Sense Compels A Reading Limiting Subordination To Only Payments Or Distributions Of "Assets Of The Company".

35.     When closely parsing contracts, the forest should not be lost for the trees. The PHONES Indenture is a credit-financing document: Holders of the PHONES extended a loan to Tribune Company. Like any other garden variety credit agreement, the PHONES Indenture provides the terms, conditions, means, and procedures for the borrower (Tribune Company) to service and repay the loan. It has no greater or lesser purpose. It is thus business logical and entirely consistent with lender and market expectations that Section 14.02 would be carefully tailored to the repayment of the loan by the borrower (Tribune Company) or the distribution of assets of the borrower (Tribune Company). Likewise, it would be bizarre and entirely inconsistent with traditional lending practice that this credit agreement would contemplate the

repayment of the loan by or the distribution of assets belonging to some unknown, unidentifiable third-party that is not an obligor or guarantor of the debt.  See, e.g., 1-2 Lender Liability Law & Litig. § 2.03 (Matthew Bender 2011) (financing agreements contemplate obligations only on parties to the agreement).  Credit agreements are just not drafted that way, and that is not the business expectation of the capital markets.    The Movants advance an absurd read of the PHONES Indenture.  The Reconsideration Motions should be denied.

> **2.    Movants' Arguments Predicated On The So-Called "Rule Of Last Antecedent" Should Be Rejected As Misapplied And Leading To Absurdity.**

36.    Advancing a most myopic and results-oriented reading of the PHONES Indenture, the Movants triumphantly present the so-called "Rule of Last Antecedent" as the means to contract reformation.  They contend that the "rule" enables this Court to: (i) isolate a word here and there in a contract; (ii) dispense with all surrounding contract language as irrelevant; (iii) place those words in a Petri dish for isolated examination; and (iv) then creatively arrive at a conclusion not otherwise supported by the entire agreement and/or its underlying purpose.  To be sure, this "rule" does not have that kind of force.

37.    Illinois law defines the last antecedent as the "last word, phrase or clause that can be made an antecedent *without impairing the meaning of the sentence*."  Miniat v. Ed Miniat, Inc., 315 F.3d 712, 715 (7th Cir. 2002) (emphasis in original); see also E.I. du Pont de Nemours & Co. v. Green, 411 A.2d 953, 956 (Del. 1980) (finding that the lower court gave "undue weight to the 'last antecedent' rule and to niceties of punctuation and sentence structure in reaching a result that [was] inconsistent with the remaining language of [the section]").

38.    Further, "[t]he rule is not an absolute and can assuredly be overcome by other indicia of meaning."  Barnhart v. Thomas, 540 U.S. 20, 26 (2003).

39.     Relying on the talismanic "rule," the Movants contend that the phrase "assets of the Company" used in Section 14.02(B) modifies only "distributions," and not "payments." Thus, the argument goes, subordination applies to "payments" from any source, regardless of Sections 5.10, 5.05, and 1.11.  This is nonsensical.

40.     As discussed above, Section 14.02(B) deals with the entities to whom subordinated payments are to be made (i.e., the holders of Senior Indebtedness or their representatives), assuming "assets of the Company" are being distributed.  In this situation, the "rule" has minimal, if any, significance.   Even if Section 14.02(B) were the definitional provision, establishing what was and was not subordinated, the introductory clause and context surrounding the phrase "payments or distributions of assets of the Company" makes clear that the referenced payments are only payments "of assets of the Company."

41.     The Movants rely principally on Barnhart and JPMorgan Chase Bank N.A. v. The Baupost Group, 380 B.R. 307 (In re Enron Creditors Recovery Corp.), 380 B.R. 307, 323 (S.D.N.Y. 2008).  Both cases are readily distinguishable.  In Barnhart, the Supreme Court was determining what qualified as a disability under the Social Security Act.  Although the "rule" was discussed, the Court's interpretation was dictated by the clear language of the statute and the context in which the words were used.  Although the Court  in Enron applied the "rule," it did so in support of a common sense reading of the contract.  In fact, the Movants have not cited to a single case where a Court has done what the Movants ask this Court to do, to wit: Apply the "rule" mechanically and reflexively to change the meaning of  provisions in a way demonstrably at odds with surrounding language.  To the contrary, the Court must give effect to the intent of the drafters as indicated by all of the words chosen.  Barhardt, 540 U.S. at 23-24, 29; In re Enron, 380 B.R. at 323.

42. In numerous instances (not discussed by the Movants), Courts in Illinois and elsewhere have found the "rule" unavailing after taking a broad view of the contract, as a whole. See, e.g., Miniat, 315 F.3d at 715; Salvatore v. Gelburd, 565 N.E.2d 204, 206 (Ill. App. Ct. 1990) (finding that intent of the parties trumped the Rule of Last Antecedent); see also Warner v. King, 107 N.E. 837, 839 (Ill. 1915) ("A relative word will not be read as representing the last antecedent exclusively, where the context and clear intention of the lawmakers require it to represent several or one more remote."). In each of these cases, the courts eschewed the kind of mechanical and strained application of the "rule" advocated by the Movants.

43. Moreover, the "rule" cannot be employed to absurd or incongruous results. See O'Kane v. Apfel, 224 F.3d 686, 690 (7th Cir. 2000) (Rule of Last Antecedent would not apply when it yielded nonsensical results); In re Tudor, 342 B.R. 540, 555-56 (Bankr. S.D. Ohio 2005) (noting that the Debtor's proposed construction of a statute under the last rule of antecedents was "not only based on a faulty grammatical premise, [but] also would produce an absurd result"). As discussed above, the construction attempted in the Reconsideration Motions recasts the PHONES Indenture as something other than a typical credit-financing agreement, between a borrower and a lender. It recasts Section 14.02 as calling for more than a lender's obligation to do with payments and asset distributions it receives from its borrower. It envelopes recoveries from nameless, faceless, unknown, unknowable third-parties. It is market incongruous. The relief requested should be denied.

### 3. Movants' Arguments Based On Parol Evidence Should Be Rejected.

44. Movants resort to constructing arguments predicated on the PHONES prospectus and supplemental prospectus (collectively, the "Prospectuses"). That is highly inappropriate.

45.     First, the evidentiary record on this matter was closed a very long time ago. Movants are now barred from introducing evidence that they failed to admit at trial.  See Robinson v. Radian, Inc., No. 07-10421, 2008 WL 2064552, at *1 (E.D. Mich. May 14, 2008) ("A motion for reconsideration is not an appropriate vehicle for raising new facts or arguments."); Perez v. U.S., 378 F. Supp. 2d 150, 156 (E.D.N.Y. 2005) ("[I]n a motion for reconsideration, the Court cannot consider new facts not previously presented to the Court."); accord Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 252 (3d Cir. 2010) ("'New evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available.").

46.     Second, as discussed at length above, the PHONES Indenture is not an ambiguous document.  And "[p]arole evidence…is inadmissible to vary or contradict the clear written provisions of an integrated contract."  Main Bank of Chicago v. Baker, 427 N.E.2d 94, 98-99 (Ill. 1981).  Thus, as a matter of law, extrinsic evidence is inadmissible to inform the interpretation of clear terms in the  PHONES Indenture.

47.     Furthermore, the Prospectus does not advance Movants' arguments even a half-step.  Prospectus describe the PHONES as subordinated as follows:

> The PHONES are unsecured and junior in right of payment to all senior indebtedness… This means that ***no payment on the PHONES*** may be made if: [i] any senior indebtedness is not paid when due…; or [ii] the maturity of any senior indebtedness has been accelerated because of an event of default….
>
> ***On any distribution of our assets to creditors***… all principal of, premium, if any, interest and any other amounts due or to become due on, all senior indebtedness must be paid in full before the holders of the PHONES are entitled receive or retain any payment.

21

Supp. Prospectus at S-16 – S-17 (emphasis added).  The word "payments" refers to "payments" that Tribune Company is obligated to make "on the PHONES" in connection with "any distribution of our assets to creditors."  <u>See, e.g.</u>, Supp. Prospectus at S-2 (defining the entity issuing the PHONES Notes as the "Tribune Company"); <u>id.</u> at S-9 (describing subordination provisions and noting that "[t]he subordination provisions in the subordinated indenture provide that *we [i.e., the Tribune Company] may not make payment on the PHONES upon the default in payment in respect of our indebtedness ranking senior to the PHONES*.") (emphasis added).

48.     In other words, the Prospectus does not even touch upon: (1) what third-parties are obligated to holders of the PHONES; (2) under what circumstances such claims may arise; or (3) whether holders of the PHONES are entitled to keep, or must turn over, such third-party distributions.  The Prospectus speaks to none of this.  It is irrelevant to the matter at hand.

49.     The Reconsideration Motions should be denied.

22

## CONCLUSION

**WHEREAS,** for the foregoing reasons, Wilmington Trust respectfully submits that the Reconsideration Motions should be denied and that Wilmington Trust should be afforded such other and further relief as is just and proper.

Dated: Wilmington, Delaware
       December 6, 2011

SULLIVAN HAZELTINE ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market Street, Suite 1300
Wilmington, DE 19801
302-428-8191

and

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

*Counsel for Wilmington Trust Company, as successor Indenture Trustee for the PHONES*