## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In Re:

TRIBUNE COMPANY, et al.,

                        Debtors.

    :  Chapter 11

    :  Case No. 08-13141 (KJC)

    :  Jointly Administered

    :  Re: Docket No. 10227

    :  **Hearing Date: December 14, 2011 at 3:00 p.m. ET**
    :  **Reply Deadline: December 9, 2011 at 4:00 p.m. ET**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## OBJECTION OF THE DEBTOR/COMMITTEE/LENDER PLAN PROPONENTS TO THE MOTION OF THE NOTEHOLDER PLAN PROPONENTS FOR RECONSIDERATION AND CLARIFICATION OF THE COURT'S OCTOBER 31, 2011 OPINION

The DCL Plan Proponents,[1] by and through their undersigned counsel, respectfully

submit this Objection to the Motion of the Noteholder Plan Proponents for Reconsideration and

Clarification of the Court's October 31, 2011 Opinion (the "Motion"). In support of their

Objection, the DCL Plan Proponents respectfully submit as follows:

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Court's Opinion on Confirmation dated October 31, 2011 [D.I. 10133] (the "Opinion"). The parties' plan objections, confirmation briefs, and post-hearing briefs are referred to as follows: Amended Objection of the Noteholder Plan Proponents to Confirmation of the Debtor/Committee/Lender Plan of Reorganization (Part I) [D.I. 8013] (the "Noteholder Objection"); Post-Trial Brief of the Noteholder Plan Proponents (Part I) [D.I. 8932] (the "Noteholder Post-Trial Brief"); Memorandum of Law in Support of Confirmation and Omnibus Reply to Objections to Confirmation of Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [D.I. 8173] (the "DCL Confirmation Brief"); Post-Trial Brief in Support of Confirmation of Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [D.I. 8897] (the "DCL Post-Trial Brief"); and Post-Trial Reply Brief in Support of Confirmation of Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [D.I. 9021] (the "DCL Post-Trial Reply Brief").

## PRELIMINARY STATEMENT

The Noteholders' Motion raises no issue worthy of reconsideration by the Court. With respect to the Settlement's allocation of a portion of Litigation Trust recoveries to the Lenders, the Noteholders advance the exact same arguments and cite the very same cases as they did in the past – and those arguments are as misguided now as they were then. As to the Bar Order, the Noteholders for the first time advocate a method of judgment reduction – *pro tanto* – they never bothered to suggest before. More importantly, in advancing their new arguments, the Noteholders fail even to mention, let alone address, the Third Circuit's endorsement of the proportionate fault judgment formula as the "fairest method," or this Court's reliance on that controlling precedent. Whether the Noteholders' arguments have been waived, are wrong, or both, they have not presented any basis to reconsider any aspect of the Court's Opinion with respect to Lender participation in Litigation Trust recoveries or with respect to the Bar Order. The Motion should therefore be denied.[2]

## APPLICABLE STANDARD

A motion for reconsideration "is an extraordinary means of relief" that should be granted sparingly. *Calyon New York Branch v. Am. Home Mortgage Corp.*, 383 B.R. 585, 589 (Bankr. D. Del. 2008); *In re W.R. Grace & Co.*, 398 B.R. 368, 371 (D. Del. 2008) ("motions for . . . reconsideration should be granted sparingly . . . ."). The Court must deny the motion unless the movant shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe, by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *N. River Ins. Co. v. CIGNA Reinsurance*

---

[2] The DCL Plan Proponents take no position with respect to the Noteholders' request that the Court clarify that it has not ruled on the appropriate method for valuing the PHONES notes.

*Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Circumstances supporting the grant of a motion to reconsider are "seldom present." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990).

The Noteholders do not even suggest that their Motion should be granted based on an intervening change in the controlling law or the availability of new evidence that was not previously available. Instead, the Motion relies entirely on the notion that the Court either committed a clear error of law or that the Opinion would result in manifest injustice. As set forth below, the Noteholders do not come close to satisfying these exacting standards.

## ARGUMENT

## POINT I.

## THE COURT SHOULD AGAIN REJECT THE NOTEHOLDER PLAN PROPONENTS' OBJECTION TO THE LITIGATION TRUST

The Court observed in the Opinion that one important "additional source of consideration provided to Non-LBO Creditors under the DCL Plan Settlements" is the Lenders' agreement

> to forgo *pro rata* participation in initial recoveries from the Litigation and Creditors Trusts, so that the Non-LBO Parent Creditors will receive the first $90 million in net recoveries by the Trusts, and, thereafter, 65% of all net recoveries by the Trusts, after repayment of the $20 million loan received from Reorganized Tribune to fund the Trust Litigation.

Opinion at 33. This is in contrast to a straight *pro rata* distribution, in which the Lenders would be entitled to approximately 85% of every dollar of net Trust recoveries.

As they did in their pre-trial brief, during the confirmation hearing, and in post-trial briefing, the Noteholders ignore this material aspect of the Settlement and argue once again that the Lenders may not share in *any* recoveries from the Litigation Trust. In fact, the arguments raised in the Motion are identical to those repeatedly raised in the past – they even cite the very same cases. *Compare* Noteholders Objection ¶¶ 346-363; 4/14/2011 Trial Tr. 135:17-147:8;

Noteholders Post-Trial Brief, at 83-84 *with* Motion ¶¶ 7-18.  It is hornbook law that a litigant

may not use a motion for reconsideration as a means to simply rehash stale and rejected

arguments.  *In re W.R. Grace & Co.*, 398 B.R. at 371 (movant may not use a motion for

reconsideration to "rehash" arguments); *Calyon*, 383 B.R. at 589 ("a motion for reconsideration

is not granted unless the moving party can point to controlling decisions or data that the court

overlooked") (internal marks omitted); *St. Louis v. Morris*, 573 F. Supp. 2d 846, 854-55 (D. Del.

2008) (denying reconsideration where movant "is reasserting the same arguments considered and

rejected by the court").

In an effort to overcome this substantial hurdle, the Noteholders suggest that grounds for

this Court to revisit the Litigation Trust component of the Settlement exist because the Opinion

did not expressly reject this aspect of their objection to the DCL Plan.  The Noteholders,

however, ignore the fact that the Settlement is an integrated whole, that the allocation of

Litigation Trust recoveries between Lender and non-Lender parties was a key, bargained-for

component of the Settlement, and that the Court approved the Settlement as a whole.  Indeed, as

noted above, the Court clearly recognized and understood this aspect of the Settlement and the

value provided by the Lenders' agreement "to forgo *pro rata* participation" in Trust recoveries.

Further, as even the Noteholders concede, the Court was not required to enumerate in its

Opinion the basis for its rejection of each and every argument raised by the Noteholders or other

parties.  *See* Motion ¶ 8 (acknowledging that the Opinion "could be interpreted to imply that the

objection was overruled").  Nor do the Third Circuit's "Martin" factors require the Court to

undertake such an exercise.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

As the Court noted in its Opinion, "the Court's task is not to 'decide the numerous questions of

law and fact raised by the [objections] but rather to canvass the issues to see whether the

4

settlement fall[s] below the lowest point in the range of reasonableness.'" Opinion at 41

(quoting *In re Exide Techs.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003)) (brackets in original).[3]

To the extent the Noteholders are suggesting that the Court failed even to consider their

arguments regarding Lender participation in Litigation Trust recoveries, that suggestion is belied

by the extensive oral argument that took place on this topic, during which the Court actively

asked questions of counsel and plainly understood the arguments. *See, e.g.*, 4/14/11 Trial Tr.

141:13; 148:8-9; 151:23-24; 153:2-3; 153:21-22.  There is therefore no basis whatsoever for this

argument – one among dozens that were litigated during the confirmation hearing – to be

relitigated on a motion for reconsideration.

To the extent a response on the merits of the Noteholders' recycled arguments is

necessary, the DCL Plan Proponents respectfully refer the Court to the arguments and case law

set forth in their pre-trial brief (DCL Confirmation Brief at 142-44), the confirmation hearing

(4/14/11 Trial Tr. 147:21-154:11), their post-trial brief (DCL Post-Trial Brief at 27-28), and their

post-trial reply brief (DCL Post-Trial Reply Brief at 21-23), where these issues were fully

addressed.[4]  Briefly, for present purposes:

- The allocation of Litigation Trust recoveries is a significant component of the Settlement.  In fact, the issue was the subject of intense negotiation between the Creditors' Committee and the Lenders.  For its part, the Committee secured the Lenders' agreement to forgo a *pro rata* share of Trust distributions, providing an important "source of [settlement] consideration" to non-LBO creditors.  Opinion at 33.

- The various cases and theories underpinning the Noteholders' argument rest on a finding of wrongdoing by the Lenders.  *See* 4/14/11 Trial Tr. 152:11-19 ("All of the cases cited [by the Noteholders] are based upon variations of the same

---

[3] The Court noted further: "The purpose in addressing the first Martin factor is 'not to make findings of fact and conclusions of law, but to canvass the issues to assess the risks associated with prosecuting the [litigation].'" Opinion at 41 (quoting *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 950 (Bankr. S.D.N.Y. 1994)).

[4] Although not a subject of the Motion, the following arguments apply with equal force to ability of the Lenders to share in Creditors' Trust proceeds.

theme . . . . The cases discuss situations where a party has been adjudicated to be
wrong. They don't involve settlements of unproven allegations, and they aren't
applicable to this settlement."). No such finding has been made by this Court.
The Noteholders therefore invoke subordination of the Lenders' claims on the
basis of allegations alone.

- The Noteholders *in pari delicto* analysis relies on *Blixseth v. Kirschner (In re
  Yellowstone Mountain Club, LLC)*, 436 B.R. 598 (Bankr. D. Mont. 2010).
  However, that case involved an express finding that the creditor's actions
  "shock[ed] the conscience." *In re Yellowstone Mountain Club, LLC*, 436 B.R. at
  675-77. No such adjudication has been made here.

- The Noteholders rely on *Morin v. OYO Instruments, L.P. (In re Labelon Corp.)*
  for the proposition that the Lenders' participation in the LBO precludes their
  sharing in Trust recoveries. However, the *Labelon* court's analysis was expressly
  predicated on its finding that the creditor "knew that [the debtor] was in a dire
  financial situation" and that bankruptcy was "inevitable." *In re Labelon Corp.*,
  No. 02-22582, 2006 WL 2516386, at *5 (Bankr. W.D.N.Y. Aug. 28, 2006). By
  contrast, there has been no such adjudication here.

- There has been no finding of reliance on an affirmative representation made by
  the Lenders, as the cases cited by the Noteholders in support of their estoppel
  argument require. *See, e.g., Harris v. Huff (In re Huff)*, 160 B.R. 256, 261
  (Bankr. M.D. Ga. 1993) (applying estoppel where creditor represented that it
  would not challenge the transaction at issue); *Adelphia Recovery Trust v. HSBC
  Bank USA, N.A. (In re Adelphia Recovery Trust)*, 634 F.3d 678, 697-98 (2d. Cir.
  2011) (estoppel based on creditor's prior representation to court).[5]

- In sum, allocation of the Litigation Trust recoveries must be assessed in the
  context of the reasonableness of the Settlement. The Lenders' agreement to forgo
  their *pro rata* share of recoveries underscores the reasonableness of the
  Settlement.

Accordingly, reconsideration of the Litigation Trust issue must be denied as the

Noteholders cannot identify any aspect of the Opinion that was clearly erroneous or manifestly

unjust. In this respect, the Motion is simply the "classic attempt at a 'second bite at the apple'"

against which the Third Circuit has counseled. *Bhatnagar ex rel. Bhatnagar v. Surrendra*

---

[5] The Noteholders misleadingly cite to the district court's "ratification" analysis in *Adelphia*. Yet, the
Second Circuit noted on appeal that it "cannot agree with the district court's ratification analysis" and instead
applied estoppel based on affirmative representations. *In re Adelphia Recovery Trust*, 634 F.3d at 691, 693-94.

*Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (affirming denial of motion for

reconsideration).

## POINT II.

### RECONSIDERATION MUST BE DENIED BECAUSE THE COURT CORRECTLY APPROVED THE BAR ORDER'S PROPORTIONATE FAULT JUDGMENT REDUCTION PROVISION

The Noteholders move this Court to reconsider its approval of the proportionate judgment

reduction provision embodied in the DCL Plan's Bar Order and request – for the first time – that

the Court modify the judgment reduction formula so that it operates on a *pro tanto* basis.  The

Noteholders' new argument should be rejected.

As a threshold matter, prior to this Motion, not once during the seven months of active

litigation regarding the DCL Plan did the Noteholders even mention the *pro tanto* method of

judgment reduction.[6]  It is well settled that a party may not raise new arguments on a motion to

reconsider.  *See, e.g.*, *United States v. Dupree*, 617 F.3d 724, 733 (3d Cir. 2010) (rejecting

"belatedly articulated . . . alternative basis" in support of reconsideration motion); *In re W.R.*

*Grace & Co.*, 398 B.R. at 372 (those "who fail in their first attempt to persuade a court to adopt

its position may not use a motion for reconsideration either to attempt a new approach or correct

mistakes it made . . . or to argue new facts or issues that inexcusably were not presented to the

court"); *see also Federico v. Charterers Mut. Assurance Ass'n Ltd.*, 158 F. Supp. 2d 565, 577-78

(E.D. Pa. 2001) ("a motion for reconsideration is not an opportunity for a party to present . . .

new arguments").  The Court must therefore reject this attempt to use a motion for

---

[6] Indeed, no other party that objected to the Bar Order argued for a *pro tanto* method.

reconsideration to present arguments that the Noteholders had both the means and opportunity to raise earlier, but chose not to for one reason or another.[7]

Even if the Court finds against waiver, the Noteholders are wrong on the merits. Tellingly (and incredibly), the Noteholders fail to cite to the Third Circuit's clear pronouncement on this very issue – *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995). This failure is even more glaring given that the Court expressly relied on *Eichenholtz* in its Opinion when it endorsed the proportionate fault method of judgment reduction. As the Court correctly noted: "In *Eichenholtz*, the Third Circuit determined that proportionate judgment reduction was the fairest method to ensure that non-settling defendants were not prejudiced by a bar order . . . ." Opinion at 74 (citing *Eichenholtz*, 52 F.3d at 487). In fact, the Court went on to quote at length from the *Eichenholtz* opinion. *Id.* The Noteholders' failure even to cite – let alone address – the Third Circuit's endorsement of proportionate fault judgment reduction is fatal to their Motion.[8] By

---

[7] In a footnote, the Noteholders weakly suggest that they raised the *pro tanto* issue at oral argument (conceding, *sub silentio*, that they failed to raise the argument in briefing), but even this is false. At oral argument on April 13, 2011, counsel for Brigade Capital Management ("Brigade") argued its objection that the Bar Order should not provide for judgment reduction of claims that, according to Brigade, the estate neither owned nor could release. 4/13/2011 Trial Tr. 131:17-132:5. As a "fallback," Brigade noted that if the Court were going to include a judgment reduction provision at all, "it should be limited to what is already going to happen anyway by operation of law," which (it argued) is that fraudulent transfer plaintiffs cannot recover more than the transfer itself, effectively a dollar-for-dollar reduction. (*Id.* at 137:24-138:7.) Even if the Court interprets this sentence as an argument for *pro tanto* judgment reduction, which it is not, arguments made for the first time at oral argument should not be considered, especially arguments made by a party other than the party seeking reconsideration. *See, e.g., IRS v. Patriot Contracting Corp.*, No. 06-2133, 2007 U.S. Dist. LEXIS 8662 at *20 (D.N.J. Feb. 6, 2007) (finding issue "raised for the first time . . . during oral argument" "not adequately presented to the Bankruptcy Court"); *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 639-40 (3d Cir. 1982) (declining to consider issue raised for first time at oral argument); *United States v. Clay*, 627 F.3d 959, 966 n.2 (4th Cir. 2010) (holding government's "newly minted argument, made for the first time at oral argument," is waived).

[8] Further, the Noteholders similarly failed to cite or even address the Supreme Court's decision in *McDermott, Inc. v. AmClyde*, in which the Supreme Court determined that "the proportionate share approach [to judgment reduction] is superior" to a *pro tanto* approach. 511 U.S. 202, 217 (1994).

definition, it cannot be clearly erroneous or manifestly unjust for this Court to follow the clear and established precedent of this Circuit.[9]

Moreover, the Noteholders' fundamental complaint about proportionate fault judgment reduction lacks merit. The Noteholders acknowledge that the Court expressly held that proportionate judgment reduction was fair and reasonable because of its conclusion that the Settlement itself was fair and reasonable based on a canvassing of the relevant issues. *See* Opinion at 75. Inexplicably, however, the Noteholders argue that this Court needed to do far more to approve the Bar Order – which is merely a necessary by-product of the Settlement – than it needed to do to approve the Settlement itself. Specifically, they argue that the Court should have conducted a particularized "weighing of relative fault" among the numerous settling and non-settling parties before concluding that the proportionate fault formula was fair. *See* Motion ¶¶ 25-28.[10] Because the Court did not do so, the Noteholders argue, only a *pro tanto* formula is acceptable. This argument is pure artifice.

---

[9] The cases cited by the Noteholders do not hold otherwise and do not even support their arguments. First, *In re Jiffy Lube Securities Litigation*, an opinion outside this Circuit, does not hold that the *pro tanto* method must be used; it simply acknowledges a split between the Second and Ninth Circuits on the issue. 927 F.2d 155, 160-61 (4th Cir. 1991). There, the Fourth Circuit did not decide which method should be used, and remanded the case so that the district court could decide in the first instance which method to apply to the federal claims. *Id.* The Noteholders similarly mischaracterize the Eleventh Circuit's decision in *In re Munford, Inc.* In that case, the court expressly "decline[d] to adopt a per se method for offsetting settlement amounts" and limited its holding to the facts of that case. 97 F.3d 449, 456 (11th Cir. 1996). Finally, the bar order at issue in *In re SemCrude* similarly did not mandate that the *pro tanto* method be used, but rather left the determination of whether judgments were subject to any reduction, credit or setoff as a result of the settlement to "the court issuing such award or judgment based on applicable law." *Whyte v. Kivisto (In re SemCrude, L.P.)*, Adv. Pro. No. 09-50189, 2010 Bankr. LEXIS 4160 at *19-20 (Bankr. D. Del. Nov. 19, 2010). The issue of which method to apply was not before the *SemCrude* court. In sum, none of these cases come close to demonstrating that this Court committed a clear error resulting in manifest injustice in adopting the proportionate method of judgment reduction.

[10] Notably, the Noteholders failed to cite any authority in support of their argument that the Court was required to consider the relative fault of the settling and non-settling parties prior to making a determination that the proportionate judgment reduction was fair. Cases addressing the propriety of bar orders have not required the bankruptcy court to conduct such an analysis. Indeed, the Third Circuit in *Eichenholtz* noted that "under the proportionate judgment reduction method, *the jury*, in the non-settling defendants' trial, *will assess the relative culpability of both settling and non-settling defendants* . . . ." 52 F.3d at 487 (emphasis added). Here, of course, both the plaintiffs and Non-Settling Defendants will have an opportunity to do exactly that – present evidence and make their case about the relative fault of the parties in connection with any future litigation that implicates the Bar

9

First, the Noteholders' argument is little more than a backdoor attempt to relitigate the reasonableness of the Settlement as a whole. As the Court succinctly stated, "the Bar Order is fair because I have determined that the DCL Plan Settlement falls within the range of reasonableness." Opinion at 75. Therefore, proportionate judgment reduction based upon the liability attributable to the settling defendants is fair to the "plaintiffs" (i.e., the Noteholders and other pre-LBO creditors) because those same plaintiffs are entitled to the Settlement consideration under the DCL Plan. Although the Noteholders argued vigorously that the Settlement consideration was unreasonably low, they lost that argument. Because the Settlement itself is reasonable, a proportionate fault reduction is by definition reasonable to the Noteholders and any other "plaintiff" who derives the benefit of the Settlement. By arguing otherwise, the Noteholders are simply disagreeing with this Court's finding that the Settlement was reasonable – a patently insufficient basis for reconsideration.[11]

Second, while their embrace of the *pro tanto* method is new, the Noteholders have previously urged the Court to reject the Bar Order because it did not require the Court to make findings on the apportionment of fault among the parties. *See* NPP Post-Trial Brief at 80; *see also* Opinion at 75. The Court considered and properly rejected this argument, holding:

> parties in future litigation know that any judgment will be subject to the proportionate judgment reduction provision and can plan their trial strategies accordingly. The Senior Lenders are relieved from participation in the

---

Order. Under these circumstances, there is no showing of manifest unjustness or any other equitable standard that would justify reconsideration.

[11] Missing the point entirely, the Noteholders' arguments in favor of a *pro tanto* formula are premised on shifting the risk of a poor settlement from the "plaintiff" class that benefits from the Settlement (i.e., the Noteholders and the other pre-LBO creditors) to a third-party class that does not (i.e., the non-settling defendants). Not only does this fly in the face of basic dictates of common sense and fairness, it ignores the fact that many of the non-settling defendants may not have had a full opportunity to weigh in on the reasonableness of the Settlement. Consequently, rather than favor a *pro tanto* formula, the equities, to the extent relevant, support the Court's determination that a proportional reduction formula is the fairest method of ensuring that non-settling defendants are not prejudiced by the Bar Order.

apportionment litigation because they settled their claims. The Second Circuit decided that it was not error for a trial court to leave the determination of the actual amount of the judgment credit for calculation at trial.

Opinion at 75-76 (citing *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 305 (2d Cir. 2003)). The Noteholders do nothing to challenge the Court's conclusion in this regard.

Third, the Noteholders argue – again for the first time – that the Bar Order's proportionate fault formula is in conflict with certain states' own contribution bar statutes. This argument should be rejected out of hand. Courts approve bar orders specifying a judgment reduction method in negotiated settlements without regard to state law, even if the bar order applies to state-law claims. *See, e.g.*, *Gerber*, 329 F.3d at 303 (approving settlement of state and federal claims containing bar order specifying judgment reduction method without regard to method prescribed by state law); *see also In re Kendall Square Research Corp. Sec. Litig.*, 869 F. Supp. 53, 56 (D. Mass. 1994) (expressly selecting a proportionate fault judgment reduction formula over a *pro tanto* method in ordering a contribution bar with respect to claims arising under federal and Massachusetts law). As a result, it is irrelevant that the laws of Massachusetts, Illinois and New York may arguably provide an approach different than the Bar Order in a situation where, unlike here, there is no negotiated global resolution of certain claims.

Unsurprisingly, none of the cases cited by the Noteholders mandate that a court conform a bar order's judgment reduction provision to state contribution statutes.[12] To the contrary, in each case, courts applied state law because either (i) the bar order already specified that state statutes should be used, or (ii) the bar order was silent on the formula for judgment reduction, leaving the court to apply the statute as a default rule. *See In re SemCrude, L.P.*, 2010 Bankr.

---

[12] Indeed, four of the cases do not address bar orders at all, and have no bearing on whether this Court's approval of a proportionate judgment reduction method is appropriate. *See Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239 (S.D.N.Y. 2001); *Pasquale v. Speed Prods. Eng'g*, 654 N.E.2d 1365 (Ill. 1995); *In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597 (N.D. Ill. 1987); *First Fed. Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 631 F. Supp. 1029 (S.D.N.Y. 1986).

11

LEXIS 4160, at *20 (contribution bar incorporated "applicable law"); *In re Jiffy Lube*, 927 F.2d

at 160 (bar order specified state law governed judgment reduction of state law claims); *In re*

*Enron Corp. Sec. Derivative & ERISA Litig.*, MDL No. 1446, 2008 WL 2566867, at *9 (S.D.

Tex. Jun. 24, 2008) (construing bar order to apply state law to state claims "because the bar order

is silent"); *In re Atl. Fin. Mgmt., Inc. Sec. Litig.*, 718 F. Supp. 1012, 1014-15 (D. Mass. 1988)

(finding state law would apply to state claims where plaintiffs had failed to specify judgment

reduction method).   The fact that courts look to state law when either a bar order so requires or

when the bar order is silent does not mean that courts are required to do so if the bar order

provides otherwise.

Finally, as a fallback, the Noteholders request that the Court reconsider the proportionate

judgment reduction provision by modifying the Bar Order so that it does not apply to the State

Law Actions they have commenced.   That is, for these actions only, the Noteholders want this

Court to order that the contribution statutes of Massachusetts, Illinois and New York apply.   As

argued above, there is certainly no binding (or even persuasive) authority that requires the Court

to accede to the eleventh-hour demands of the Noteholders and carve out certain later-filed

actions from the proportionate judgment reduction methodology of the Bar Order.   Indeed, the

Bar Order, and others like it, is also *supposed* to apply prospectively to future litigation in order

to prevent parties from "commencing, prosecuting, or asserting" contribution and indemnity

claims against settling defendants, clearly capturing claims that have not yet been brought.  *See,*

*e.g., Eichenholtz*, 52 F.3d at 482 n.8.  This Court should not entertain requests to modify the Bar

Order every time a new action is filed.[13]

---

[13] As noted in *First Federal Savings & Loan Association of Pittsburgh*, "the value of having a uniform rule
of contribution govern all claims in a single case is substantial."   631 F. Supp. at 1036.  Applying a uniform method
of judgment reduction, as provided by the Bar Order, is appropriate and provides all parties with certainty as to the
judgment reduction method that will apply to their claims.

Accordingly, the Noteholders have failed to demonstrate that any aspect of the Court's Opinion with respect to the Bar Order was clearly erroneous or manifestly unjust.

## **CONCLUSION**

For all the foregoing reasons, the Noteholders' Motion with respect to the Litigation Trust and the Bar Order should be denied.

RLF1 5657147v. 1

Dated:  December 6, 2011
        Wilmington, Delaware

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD,
P.A.

_____*/s/ J. Kate Stickles*_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

*Counsel for Debtors and Debtors in Possession and
Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier:  (212) 541-5369

-and-

LANDIS RATH & COBB LLP

_____*/s/ Matthew B. McGuire*_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier:  (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

*Counsel for the Official Committee of Unsecured
Creditors*

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier:  (213) 621-6100

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ M. Blake Cleary_
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899-0391
Telecopier: (302) 571-1253

*Counsel For Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE & DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

*Co-Counsel For Angelo, Gordon & Co., L.P.*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701-5800

-and-

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19899
Telecopier: (302) 651-7701

*Counsel For JPMorgan Chase Bank, N.A.*

15