# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: December 13, 2011 at 1:00 p.m. (ET)<br>Re: Docket Nos. 10364, 10369, 10370, 10374 |

## DCL PLAN PROPONENTS' OMNIBUS RESPONSE TO STATEMENTS REGARDING THE SCHEDULING OF FURTHER PROCEEDINGS

The debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), the Official Committee of Unsecured Creditors (the "Creditors'

Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P.

("Angelo Gordon") and JPMorgan Chase Bank, N.A. ("JPMorgan", and together with the

Debtors, the Creditors' Committee, Oaktree, and Angelo Gordon, the "DCL Plan Proponents")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-8131413v1

submit this response to (i) Statement of Aurelius Capital Management, LP in Support of its

Position Regarding Process of Resolution of the Allocation Disputes [Docket No. 10369] (the

"Aurelius Statement"), (ii) Wilmington Trust Company's Statement Concerning the Timing of

Consideration of the Debtors' Request to Commence Solicitation of the Third Amended Plan of

Reorganization and the Debtors' Proposal Concerning the Resolution of the Allocation Disputes,

as Defined Therein [Docket No. 10374] (the "WTC Statement"), and (iii) EGI-TRB LLC's

Statement of Position on Scheduling of the Allocation Dispute [Docket No. 10364] (the "EGI-

TRB Statement").

 As set forth in the Memorandum of the DCL Plan Proponents Regarding the Scheduling

of Further Proceedings [Docket No. 10370] (the "DCL Statement"),[2] the DCL Plan Proponents

propose a dual track approach to scheduling, providing for the confirmation process and hearing

to go forward expeditiously while allowing for an expedited, concurrent resolution of the

Allocation Disputes.  More specifically, the schedule proposed by the DCL Plan Proponents

contemplates that, after the Court issues a decision on the pending motions for reconsideration,[3]

the confirmation process will move forward with (i) the filing of an amended Supplemental

Disclosure Document for the Third Amended Plan (reflecting the results of the Court's decision

on the Motions for Reconsideration) on or before January 9, 2012, (ii) a hearing on the

Supplemental Disclosure Document and pending Solicitation Procedures Motion in the week of

January 23, 2012 and (iii) a confirmation hearing in the week of March 12, 2012.  With respect

to the Allocation Disputes, the schedule proposed by the DCL Plan Proponents calls for (i)

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the DCL Statement or the Third Amended Plan, as applicable.

[3] The pending motions for reconsideration of the Confirmation Opinion [Docket Nos. 10222, 10223, 10225, 10226, 10227, 10238] (the "Motions for Reconsideration") will be heard at the December 14, 2011 hearing.  At the hearing on November 29, the Court stated that it anticipated issuing a decision on such motions prior to December 31, 2011. See Hearing Transcript 11/29/11 at 39:23-40:7.

discovery to begin immediately, (ii) briefing to take place in mid-to-late January 2012 and (iii) a

hearing to be held the week of February 6, 2012.

For the reasons set forth in the DCL Statement and discussed below, the dual track

schedule proposed by the DCL Plan Proponents strikes a reasoned and reasonable balance

among all of the various considerations at play, including the desire of the Debtors to emerge

quickly from bankruptcy, the desire of creditors to receive distributions as soon as possible, the

requirements of the Bankruptcy Code and Rules, the practical realities of resolicitation of votes,

and the need for adequate time for judicial consideration and determination of the Allocation

Disputes and confirmation issues.  The same cannot be said about either the single track

procedure advocated by Aurelius Capital Management, LP ("Aurelius") and Wilmington Trust

Company ("WTC") or the deferral of all Allocation Disputes to the confirmation hearing urged

by EGI-TRB, LLC ("EGI-TRB").  Further, Aurelius' imagined "parade of horribles" with

respect to the dual track approach are exaggerated, unrealistic and, in some cases, outright false.

They provide no basis for Aurelius' demand that the Court put the entire plan process on hold

pending resolution of the Allocation Disputes.

I.      **The Arguments In Support Of Aurelius' And WTC's Positions Are Untenable.**

      A.      The Schedule Proposed By The Noteholders Is Unworkable And Unrealistic.

In contrast to the schedule proposed by the DCL Plan Proponents, the single track

schedule proposed by Aurelius – in which all Allocation Disputes must be resolved before the

disclosure, solicitation, and confirmation process can even begin – is simply unworkable.[4]  To

start, Aurelius assumes that the Allocation Disputes can be ready for hearing by the week of

---

[4] While WTC apparently supports the need for a single track procedure, it does not propose a specific timeline. Instead, it appears to be operating under the erroneous assumption that the DCL Plan Proponents propose to move forward with the Supplemental Disclosure Document prior to the Court's ruling on the Motions for Reconsideration. The DCL Statement makes clear that this is not the case.

January 23, 2012. This is utterly unrealistic, in that it assumes that discovery will be concluded by January 6, 2012 (just over three weeks after the scheduling hearing), makes no provision for expert testimony or expert discovery, and calls for briefing (including reply briefs) to be submitted within a very compressed timeframe of *fourteen days* after the close of discovery.[5] Compounding matters, Aurelius then requires the Court to issue a decision on all of the Allocation Disputes within *two weeks* after the scheduled hearing (less if the hearing is set for a date later than Monday, January 23, 2012) and obligates the DCL Plan Proponents to amend the Third Amended Plan and Supplemental Disclosure Document to reflect the Court's decision within *seven days*.

Equally unrealistic is Aurelius' proposal with respect to resolicitation and confirmation following issuance of a decision on the Allocation Disputes, providing just *twenty days* between the entry of an order approving the Supplemental Disclosure Document and the voting deadline. As a threshold matter, the Voting Agent (as defined in the Solicitation Procedures Motion) requires at least seven days to prepare and mail the resolicitation packages, meaning that Aurelius' proposed schedule leaves a mere *thirteen days* for plan solicitation. To make matters worse, Holders of Senior Noteholder Claims and PHONES Notes Claims – each of which are among the classes to be resolicited in respect of the Third Amended Plan – generally vote through a securities intermediary, meaning that ballots must be transferred through one or more intermediaries before reaching the beneficial holder actually entitled to vote. Conservatively assuming that the retransmission process only takes six days, these constituents would have less than *seven days* to review the new disclosure materials and Third Amended Plan, cast their votes,

---

[5] By contrast, the DCL Plan Proponents' proposal provides for fact discovery to conclude on January 13, 2012, allows for expert testimony and discovery, and sets forth a more realistic briefing schedule within twenty days after the close of fact discovery.

and have their ballots retransmitted up the chain of intermediaries to the record holder. This is not remotely possible.

Aurelius also proposes that the *thirteen-day* period apply to the confirmation objection deadline – an unreasonably short deadline that is inconsistent with the Bankruptcy Rules.[6] Finally, Aurelius provides the Voting Agent with just *two days* to tabulate and produce a report on the balloting results – the Voting Agent will require at least seven calendar days for this process.

As explained in the DCL Statement, the single track schedule proposed by Aurelius, when properly computed, will result in a confirmation hearing in mid-May 2012 at the earliest. See DCL Statement ¶ 8. In contrast, the DCL Plan Proponents have proposed a schedule that provides adequate notice (thirty-eight calendar days between approval of the Supplemental Disclosure Document and the voting and confirmation objection deadline) while ensuring the rapid consideration of the Third Amended Plan consistent with the Court's directive to find a prompt exit from bankruptcy.

B.    Aurelius' Objections To The Dual Track Approach Lack Merit.

Aurelius has invented a handful of imagined harms – most of which are properly raised as disclosure or confirmation objections – in an effort to convince the Court that it should not adopt a dual track approach. None weigh in favor of Aurelius' desired single track schedule.

To start, it is important to note that Aurelius completely ignores three critical points in its effort to raise the specter of chaos. *First*, as suggested by the Court and incorporated into the DCL Plan Proponents' proposed timeline, the Court already will have ruled on the Motions for Reconsideration prior to the solicitation and confirmation process moving forward. Depending upon how the Court rules, certain of the most economically-significant Allocation Disputes may

---

[6] See Fed. R. Bankr. P. 2002(b) (requiring 28 days notice of objection deadline and confirmation hearing).

46429/0001-8131413v1

no longer be an issue. The DCL Plan Proponents fully intend to amend the Supplemental

Disclosure Document and, if necessary, the Third Amended Plan to take account of the Court's

reconsideration ruling, and those amendments could resolve many of Aurelius' disclosure and

confirmation objections. To the extent that any such objections remain, they are properly

considered at the disclosure and confirmation hearings.

*Second*, most of Aurelius' disclosure and confirmation objections are premised on the

alleged fear that, if the Allocation Disputes are not resolved prior to solicitation with respect to

the Third Amended Plan, the Allocation Dispute litigation will drag on past confirmation and the

Effective Date of the Third Amended Plan. This contradicts the very thesis of Aurelius' single

track proposal – that the Allocation Disputes can be resolved "expeditiously" in just over a

month. See Aurelius Statement ¶ 5. By Aurelius' own admission, it is unlikely that any of the

Allocation Disputes will remain unresolved as of the time the DCL Plan Proponents have

proposed for the voting deadline and plan confirmation, much less at the time of confirmation

and then effectiveness (which necessarily cannot occur until months after confirmation due to the

FCC waiver and approval process).

*Third*, if Aurelius has issues with the Supplemental Disclosure Document and Third

Amended Plan following the Court's decision on the Motions for Reconsideration, its objections

should be briefed and argued at the appropriate time – in connection with approval of the

Supplemental Disclosure Document or confirmation. The DCL Plan Proponents believe and will

demonstrate in connection with the disclosure hearing that the Supplemental Disclosure

Document satisfies section 1125 of the Bankruptcy Code and should be approved. The DCL

Plan Proponents further believe and will demonstrate in connection with confirmation that the

Third Amended Plan addresses the concerns that were articulated in the Confirmation Opinion

and is otherwise confirmable.

6

However, in the event the Court is inclined to consider any of Aurelius' premature

disclosure and confirmation issues at this time, the DCL Plan Proponents note the following:

- Disclosure Concerning Allocation of Settlement Consideration (Aurelius
  Statement ¶¶ 7-8). Aurelius suggests that, "[i]f the Allocation Disputes are not
  fully resolved prior to solicitation of the new DCL Plan, it will not be possible to
  determine which of the non-LBO creditors are entitled to receive the Settlement
  consideration [or] how the Settlement consideration will be allocated among those
  entitled to receive it…." Not true. The Supplemental Disclosure Document in
  fact provides extensive disclosure concerning the possible allocation of
  Settlement consideration to Holders of Senior Noteholder Claims, Other Parent
  Claims, PHONES Notes Claims and EGI-TRB LLC Notes Claims as a result of
  the Allocation Disputes. In addition to providing the best and worst case outcome
  for each of these constituencies, Exhibit A of the Supplemental Disclosure
  Document sets forth an explanation of how the Court's rulings on the Allocation
  Disputes may impact creditor recoveries and further provides percentage
  estimates of multiple permutations of the Court's possible rulings. As noted in
  the DCL Statement, Aurelius can hardly take issue with the adequacy of the DCL
  Plan Proponents' disclosure or the ability of creditors to vote based on that
  disclosure in light of the approved disclosure and solicitation that occurred in
  connection with the Noteholder Plan, which contemplated massive reserves and
  completely unknown creditor distributions contingent on the results of a myriad
  of future litigation. See DCL Statement ¶ 9 n.7.

- Estimation of Allocation Dispute Reserves/Treatment And Release Elections
  (Aurelius Statement ¶¶ 9-13). Aurelius complains that it will be "extremely
  complicated" to establish reserves in the event that the Allocation Disputes are not
  resolved by the time that the Third Amended Plan becomes effective (Aurelius
  Statement ¶ 9) and that, in any event, creditors must know the outcome of the
  Allocation Disputes in order not to be "disadvantaged" in making their elections
  pursuant to the Third Amended Plan (Aurelius Statement ¶ 13). These arguments
  ignore several fundamental tenets of the Third Amended Plan.

  o First, reserves will only be established if the Allocation Disputes are not
    resolved by the Effective Date. Aurelius' own timeline suggests that the
    Allocation Disputes can be resolved well before the confirmation hearing,
    much less the date of effectiveness of the Third Amended Plan.
    Consequently, this argument is likely much ado about nothing.

  o Second, the Third Amended Plan does not provide treatment elections to
    Holders of PHONES Notes Claims and EGI-TRB LLC Notes Claims. As
    a result, Aurelius' analysis relying on elections to be made by those
    holders is not consistent with the Third Amended Plan.

  o Third, the hypothetical respecting reserves postulated by Aurelius is
    clearly a worst-case scenario that assumes that Aurelius is unsuccessful on
    its motion for reconsideration, that the DCL Plan Proponents decide to

7

amend the Third Amended Plan to provide elections to all parties, *and* that the Allocation Disputes are not resolved as of the Effective Date. This is simply not realistic.

o   Fourth, the treatment elections under the Third Amended Plan are completely unrelated to the Allocation Disputes. Creditors are given the opportunity to elect to receive distributions in cash or in a "strip" of consideration. Any creditor that has doubts about the value or timing of the "strip" consideration can elect to receive cash and remove uncertainty.

o   Finally, the third party release elections in the Third Amended Plan also are completely unrelated to the Allocation Disputes. For one thing, the majority of Holders of Senior Noteholder Claims, Other Parent Claims, PHONES Notes Claims, and EGI-TRB LLC Claims are unaffected by the release elections because they are not Released Parties in their capacities as such.[7] Moreover, any party can simply decide not to grant a release if its decision to do so somehow would be contingent upon resolution of the Allocation Disputes. Further, all revoting creditors will have adequate information to make an informed choice regarding the benefits and risks of making the release elections.

- Operation of the Litigation Trust (Aurelius Statement ¶¶ 14-18). Aurelius asserts that resolution of the Allocation Disputes will affect the operation of the Litigation Trust, particularly the Parent GUC Trust Preference and the mechanics of the Litigation Trust Interests. Here again, if Aurelius is correct that the Allocation Disputes can be resolved expeditiously, any alleged confusion concerning the Parent GUC Trust Preference and distributions from the Litigation Trust will be resolved long before the Effective Date, much less the time when the Trust is formed, retains professionals, files lawsuits, receives recoveries, and is in a position to make a distribution. In any event, the Third Amended Plan anticipates distributional issues with the Litigation Trust and provides the Litigation Trustee with the flexibility to make distributions to the holders of Litigation Trust Interests depending upon the outcome of the Allocation Disputes. See Third Amended Plan § 13.2.3.

- Classification of Other Parent Claims (Aurelius Statement ¶¶ 19-20). Aurelius argues that the DCL Proponents cannot solicit votes to accept or reject the Third Amended Plan until the Allocation Disputes are resolved because such resolution will affect classification of Other Parent Claims under the Third Amended Plan. The Court already has held that classification of the Swap Claim within the class of Other Parent Claims is appropriate, see In re Tribune Co., 2011 Bankr. LEXIS 4128 at *177 (Bankr. D. Del. Oct. 31, 2011), and this holding is now law of the

---

[7] Under the Third Amended Plan, only parties that would otherwise fall within the definition of "Released Parties" are affected by an election not to grant the releases, as such parties will not be the beneficiary of a release unless they elect to grant the releases. See Third Amended Plan, § 11.2.3. Aurelius, as a Holder of Senior Noteholder Claims and PHONES Notes Claims, would not fall within the definition of "Released Parties" under the Third Amended Plan and thus would not suffer any harm by declining to grant the releases.

case.  Moreover, Aurelius' position is incorrect as a matter of law, and the DCL Plan Proponents will demonstrate at the confirmation hearing that the classification scheme in the Third Amended Plan is proper.  See, e.g., In re Union Fin. Servs. Group, 325 B.R. 816, 821 n.3 (Bankr. E.D. Mo. 2004) (stating that claims were properly classified together despite the subordination of creditor's claim to another creditor's claim in the same class because the priority in regard to the debtor was the same).

- Retiree Claimant Settlement Agreement (Aurelius Statement ¶¶ 21-22).  Aurelius argues that the Allocation Disputes will impact whether the Retiree Claimant Settlement is implemented pursuant to the Third Amended Plan.  Interestingly, this argument has not been made by the retirees themselves.  In any event, if the retirees believe that the Third Amended Plan, which provides that their distributions may be affected by the outcome of the Allocation Disputes, does not appropriately implement the Retiree Claimant Settlement Agreement, they are free to voice their concerns in context of confirmation.

- Creditor Support (Aurelius Statement ¶¶ 23-24).  Finally, Aurelius argues that the Allocation Disputes may cause creditors to change their votes to accept or reject the Third Amended Plan.  As previously noted, the Supplemental Disclosure Document provides creditors with ample information to assess the impact of the Allocation Disputes and cast their ballots.  Aurelius also claims that votes on the Third Amended Plan may prompt the Court to "reconsider the propriety of the Settlement."  Aurelius Statement ¶ 24.  Nonsense.  The Court already has approved the Settlement and nothing in the voting on the Third Amended Plan should have any impact on the Court's prior ruling.[8]  Moreover, this is purely a confirmation argument that provides no basis whatsoever for Aurelius' request for a total standstill of all confirmation proceedings while the intercreditor Allocation Disputes are resolved.

---

[8] In re Washington Mutual, Inc., 2011 Bankr. LEXIS 3361 at *35 (Bankr. D. Del. Sept. 13, 2011) (Bankruptcy Court's rulings in decision denying confirmation of Debtors' Sixth Amended Plan are law of the case in considering Debtors' Modified Sixth Amended Plan); In re Orfa Corp. of Philadelphia, 1191 Bankr. LEXIS 1952 at *7-*8 (Bankr. E.D. Pa. 1991) (Bankruptcy Court's rulings in decision denying confirmation of Debtors' Second Plan are law of the case in considering Debtors' Third Plan).

II.    **EGI-TRB's Arguments Are Similarly Unconvincing.**

At the other end of spectrum, EGI-TRB insists that resolution of the Allocation Disputes

should not be expedited in any way but instead should be take place only "when [the Court] rules

on confirmation of the Plan." See EGI-TRB Statement at 2. According to EGI-TRB, this is

necessary to avoid the improper issuance of an advisory opinion and to comply with Bankruptcy

Rule 7001. See id. at 2-3.

This argument is misguided. It ignores that the Allocation Dispute Protocol is a part of

the Third Amended Plan and that resolution of the Allocation Disputes in accordance with the

Protocol thus would take place in conjunction with the confirmation process. EGI-TRB has cited

no authority for the proposition that all issues relevant to the confirmability of a plan must be

decided together at a single confirmation hearing. This is not surprising, in that bankruptcy

courts plainly have the authority to separate and resolve issues relevant to the confirmability of a

plan in separate proceedings. Bankruptcy Rule 3020 directs that objections to confirmation be

resolved in accordance with the contested matter procedures set forth in Bankruptcy Rule 9014,

which in turn provides that Bankruptcy Rule 7042, and thereby Federal Rule of Civil Procedure

42, shall apply in contested matters. Federal Rule of Civil Procedure 42 for its part expressly

provides that, in order "to expedite and economize, the court may order a separate trial of one or

more separate issues." Fed. R. Civ. P. 42. The Court's power to proceed in accordance with the

Allocation Dispute Protocol could not be plainer.[9]

---

[9] See In re Kaiser Steel Corp., 110 B.R. 20, 24-25 (D. Colo. 1990) (upholding bankruptcy court order directing
separate proceedings on certain claims and counterclaims under Rule 42 where the outcome of the counterclaims
was contingent on the outcome of the claims); Malloy v. Transp. Alliance Bank, Inc. (In re Arrow Trucking Co.),
2011 Bankr. LEXIS 3313 at *2-*3 (Bankr. N. D. Okla. 2011) (relying on Rule 42 to order separate proceedings on
preference claims and on declaratory judgment claims relating to subordination); In re Lokotnicki, 232 B.R. 583,
584 (Bankr. W.D.N.Y. 1999) (relying on Rule 42 to order separate hearings in proceeding to determine non-
dischargeability of a debt under 11 U.S.C. 523(a)(2)(A) on misrepresentation, reliance and damage issues on the one
hand and issues of the defendant's knowledge and intent to deceive on the other).

EGI-TRB's argument that a ruling on the subordination issues in advance of the confirmation hearing would result in an improper advisory opinion – because the Court ultimately might deny confirmation of the Third Amended Plan at the confirmation hearing (see EGI-TRB Statement at 2) – is flawed for two fundamental reasons. First, it fails to take into account this Court's indication in the Confirmation Opinion that, should the DCL Plan Proponents cure the problems the Court identified with the Second Amended Plan, the Court would confirm the Second Amended Plan. In re Tribune Co., 2011 Bankr. LEXIS 4128 at *211-*216. Second, if issuing a ruling on the subordination issues *before* confirmation would be improper in the event the Court ultimately denies confirmation, then so would issuance of a subordination ruling *at the same time* that the Court were to deny confirmation of the Third Amended Plan. Yet, courts do this all the time, issuing opinions that reject some challenges to confirmation but then deny confirmation on the basis of others.[10] Indeed, the Court did just that in the lengthy Confirmation Opinion issued in October, in which the Court approved the Settlement embodied in the Second Amended Plan, rejected various challenges to the confirmability of the Second Amended Plan and the Noteholder Plan but then ultimately denied confirmation of both plans on the basis of other deficiencies. In re Tribune Co., 2011 Bankr. LEXIS 4128 at *53-*216.[11]

---

[10] See, e.g., In re VIP Motor Lodge, 133 B.R. 41 (Bankr. D. Del. 1991) (holding that plan was proposed in good faith and did not violate the absolute priority rule but denying confirmation because certain cramdown requirements of 11 U.S.C. 1129(b) were not met); In re Exide, 303 B.R. 48 (Bankr. D. Del. 2003)(concluding that plan did not violate several provisions of the Bankruptcy Code but denying confirmation because the releases granted under the plan were impermissibly broad); In re Washington Mutual, Inc., 442 B.R. 314, 344-45 (Bankr. D. Del. Jan. 7, 2011) (upon consideration of the Debtors' Sixth Amended Plan, the Court approved the settlement embodied in it but denied confirmation on the grounds that various aspects of the plan were inconsistent with the requirements of the Bankruptcy Code); In re Washington Mutual, Inc., 2011 Bankr. LEXIS 3661 at *30-*170 (upon consideration of Debtors' Modified Sixth Amended Plan, the Court reaffirmed its approval of the embedded settlement, rejected several challenges to confirmation (including lack of good faith, unfeasibility and improper implementation of contractual subordination agreements) but denied confirmation on grounds that various aspects of the plan were inconsistent with the requirements of the Bankruptcy Code).

[11] There also is no merit to the argument that the pending Motions for Reconsideration of certain aspects of the Confirmation Opinion have been rendered moot by the filing of the Third Amended Plan. See EGI-TRB LLC's

Finally, EGI-TRB has not shown that following the schedule proposed by the DCL Plan Proponents somehow would violate Bankruptcy Rule 7001. Most fundamentally, although some of the Allocation Disputes involve the interpretation of contracts containing clauses calling for subordination in certain circumstances, EGI-TRB has not even attempted to explain how or why the resolution of all the Allocation Disputes constitute a "proceeding to subordinate an allowed claim or interest" within the meaning of Rule 7001(8). Nor do the cases cited by EGI-TRB provide the answer, since none of them have anything to do with plans that apply or give effect to contractual subordination clauses.[12] In any event, even if EGI-TRB could make such a showing, Rule 7001(8) by its terms excludes from its scope situations where a "chapter 11 plan...provides for subordination", as the Third Amended Plan does here.

---

Objection to Motions For Reconsideration at 3-4. The Court's Confirmation Opinion is on the books, resolves important issues relating to the Second Amended Plan and is the law of the case with respect to the Third Amended Plan. In re Washington Mutual, Inc., 2011 Bankr. LEXIS 3361 at *35 (Bankruptcy Court's rulings in decision denying confirmation of Debtors' Sixth Amended Plan are law of the case in considering Debtors' Modified Sixth Amended Plan); In re Orfa Corp. of Philadelphia, 1191 Bankr. LEXIS 1952 at *7-*8 (Bankruptcy Court's rulings in decision denying confirmation of Debtors' Second Plan are law of the case in considering Debtors' Third Plan). As a result, it is appropriate for a party who disagrees with the Confirmation Opinion to file a motion for reconsideration. See, e.g., In re Yelverton, 2010 Bankr. LEXIS 3569 (Bankr. D.D.C. 2010) (entertaining motion for reconsideration of order denying confirmation but denying the motion on the grounds that the showing required for reconsideration had not been made); In re Schaeffer, 2008 Bankr. LEXIS 2758 (Bankr. M.D. Pa. 2008) (same). The two cases cited by EGI-TRB in support of its argument are neither on point nor to the contrary. See In re Wilson, 2008 WL 4833091 (Bankr. D. Mass. Oct. 28, 2008) (after court denied confirmation of plan based on issues raised in one objection, court dismissed another objection raising different issue as moot since no amended plan had been filed with the Court); Meserole v. Sony Corp. of Am., Inc., 2009 WL 2001451 (S.D.N.Y. July 9, 2009) (after dismissal of a consumer protection class action complaint and the filing of an amended complaint, the court declined to reconsider its dismissal of the original complaint since to do so could result in having two class action complaints simultaneously pending among the same litigants).

[12] See In re Perkins, 902 F.2d 1254 (7th Cir. 1990)(reversing district court order, entered without notice to third party, directing third party to turn over debtor's retirement account assets to the court on the grounds that the assets were "property of the estate"); In re Washington Mutual, 2011 Bankr. LEXIS 3361 at *144 (ruling upon application by equity committee for authority to prosecute an action to equitably subordinate or disallow the claims of certain creditors which the debtor refused to prosecute); In re Protarga, Inc., 2004 Bankr. LEXIS 1225 at *9-*11 (Bankr. D. Del. 2004) (dismissing third party complaint asserted by defendant in an adversary proceeding alleging misappropriation and breach of fiduciary duty by the debtor's president and seeking equitable subordination of the president's claim as a remedy on the grounds that the third party complaint was not proper under Federal Rule of Civil Procedure 14(a) because the liability asserted therein was not dependent on the outcome of the adversary proceeding and because a claim for equitable subordination must be brought as a separate adversary proceeding under Bankruptcy Rule 7001(8)).

46429/0001-8131413v1

In truth, the Allocation Disputes are simply arguments that the Third Amended Plan as drafted should not be confirmed because its distributions are inconsistent with contracts among various creditor groups. See In re Washington Mutual, Inc., 2011 WL 4090757 at *103 ("the Debtors can, through a plan of reorganization, effectuate the subordination agreements by diverting payments from subordinated creditors to senior creditors"); id. at *111-*120 (rejecting confirmation objections that the plan violated the Bankruptcy Code in certain ways because of its misapplication and misinterpretation of the subordination agreements). Bankruptcy Rule 3020 calls for objections to confirmation to be resolved within the framework of the "contested matter" procedures set forth in Bankruptcy Rule 9014, and that is precisely what the Allocation Dispute Protocol set forth in the Third Amended Plan does.[13]

### III.   The Schedule Proposed By The DCL Plan Proponents Provides The Balanced Approach Called For In These Cases.

The Court is not facing a binary choice of either hearing all of the Allocation Disputes immediately while suspending all consideration of the Third Amended Plan (the Aurelius proposal) or deferring consideration of the Allocation Disputes until the confirmation hearing (the EGI-TRB proposal). There is a reasoned and reasonable middle ground that balances the interests of all constituencies, as evidenced by the schedule proposed by the DCL Plan Proponents. This schedule allows for the resolution of the Motions for Reconsideration prior to resolicitation, the expedited adjudication of any remaining Allocation Disputes prior to confirmation, and a reasonable timetable for addressing confirmation of the Third Amended Plan. The only thing this schedule does not do is stay all further proceedings regarding the Third

---

[13] EGI-TRB's professed concern about the binding effect of the Court's resolution of the Allocation Disputes is misplaced because 11 U.S.C. § 1141(a) makes the terms of a confirmed plan binding on all parties, as EGI-TRB admits. See EGI-TRB Statement at 3-4. EGI-TRB has made no showing that there is any creditor with an interest in these cases that does not have or will not have notice of the various Motions for Reconsideration, Tribune's Solicitation Procedures Motion or the Order ultimately issued by the Court with respect to the scheduling of proceedings on any Allocation Disputes not disposed of by the Court's decision on the pending Motions for Reconsideration.

Amended Plan during the process of resolving the Allocation Disputes and thus allow the

Debtors' emergence from bankruptcy to be held hostage to whatever might occur in connection

with the resolution of the Allocation Disputes.

## CONCLUSION

For all of the reasons set forth above, the Court should schedule further proceedings in

these cases in the manner set forth in the DCL Statement.

Dated: Wilmington, Delaware
December 9, 2011

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
James F. Bendernagel, Jr.
Kevin T. Lantry
Jessica C.K. Boelter
Allison Ross Stromberg
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

*/s/ Patrick J. Reilley*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

Counsel for Debtors and Debtors in
Possession and Certain Non-Debtor
Affiliates

14

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier:  (212) 541-5369

-and-

LANDIS RATH & COBB LLP

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier:  (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

Counsel for the Official Committee of
Unsecured Creditors

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier:  (213) 621-6100

-and-

46429/0001-8131413v1

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ M. Blake Cleary*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

Counsel For Oaktree Capital Management,
L.P. and Angelo, Gordon & Co., L.P.

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

Co-Counsel For Angelo, Gordon & Co, L.P.

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

-and-

RICHARDS LAYTON & FINGER

*/s/ Drew G. Sloan*
Mark Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

Counsel For JPMorgan Chase Bank, N.A.

46429/0001-8131413v1