IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: December 13, 2011 at 1:00 p.m. ET** |
| | ) | |

**RESPONSE OF AURELIUS CAPITAL MANAGEMENT, LP TO (I) MEMORANDUM
OF THE DCL PLAN PROPONENTS REGARDING THE SCHEDULING OF
FURTHER PROCEEDINGS AND (II) EGI-TRB LLC'S STATEMENT OF
POSITION ON SCHEDULING OF THE ALLOCATION DISPUTE**

Aurelius Capital Management, LP, on behalf of itself and its managed entities

(collectively, "Aurelius"),[1] by and through its undersigned counsel, respectfully submits this

response (the "Response") to (i) the *Memorandum of the DCL Plan Proponents Regarding the

Scheduling of Further Proceedings*, dated December 6, 2011 [ECF No. 10370] (the "DCL

Statement") and (ii) *EGI-TRB LLC's Statement of Position on Scheduling of the Allocation

Dispute*, dated December 6, 2011 [ECF No. 10364] (the "EGI-TRB Statement") and respectfully

represents as follows:

**INTRODUCTION**

1.      As per the Court's direction, on December 6, 2011, Aurelius filed the *Statement of

Aurelius Capital Management, LP in Support of Its Position Regarding Process for Resolution of

the Allocation Disputes* [ECF No. 10369] (the "Aurelius Statement").[2]  On the same date, the

DCL Plan Proponents and EGI-TRB LLC ("EGI-TRB") filed the DCL Statement and the EGI-

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes.  Neither Aurelius
nor any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any
of its managed entities an insider of Tribune Company or any of its affiliates.
[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Aurelius Statement or the
DCL Plan (as defined in the Aurelius Statement), as applicable.

TRB Statement, respectively (collectively, the Aurelius Statement, the DCL Statement and the EGI-TRB Statement are referred to herein as the "Statements").[3] Each of the Statements presents a different view as to when the Allocation Disputes should be resolved. The DCL Plan Proponents have posited that the confirmation process and the resolution of the Allocation Disputes should proceed together along a dual track. EGI-TRB believes that the Allocation Disputes must be heard and considered in connection with objections to confirmation of the DCL Plan. For the reasons set forth below and in the Aurelius Statement, Aurelius continues to believe that resolution of the Allocation Disputes prior to the solicitation of votes on the DCL Plan is in the best interests of all non-LBO creditors of Tribune and will facilitate, not impede, the Debtors' near-term emergence from chapter 11. Accordingly, Aurelius respectfully submits that the Court should approve the proposed schedule attached as Exhibit A to the Aurelius Statement.

## ARGUMENT

I.    **DCL Statement**

      A.    Schedule for Resolution of the Allocation Disputes and Plan Confirmation

      2.    Set forth below are charts summarizing the schedules proposed by the DCL Plan Proponents and Aurelius with respect to the resolution of the Allocation Disputes and confirmation of the DCL Plan, respectively.

---

[3] Wilmington Trust Company ("WTC") also filed a statement concerning the timing of consideration of the DCL Plan solicitation process and the Allocation Disputes, which agreed in substance with Aurelius's Statement as it pertains to scheduling. *See Wilmington Trust Company's Statement Concerning the Timing of Consideration of the Debtors' Request to Commence Solicitation of the Third Amended Plan of Reorganization and the Debtors' Proposal Concerning the Resolution of the Allocation Disputes, as Defined Therein*, dated December 6, 2011 [ECF No. 10374].

| ALLOCATION DISPUTE RESOLUTION SCHEDULE | | |
|---|---|---|
| *Event* | *DCL Schedule*[4] | *Aurelius Schedule*[5] |
| Last Day to Serve Discovery Requests | *December 15, 2011* | *December 21, 2011* |
| Completion of Fact Discovery | *January 13, 2012* | *January 6, 2012* |
| Expert Reports on Unfair Discrimination Due | *January 19, 2012* | *N/A*[6] |
| Opening Briefs Due | *January 19, 2012* | *January 13, 2012* |
| Expert Depositions | Week of *January 23, 2012* | *N/A* |
| Response Briefs Due | *February 2, 2012* | *January 20, 2012* |
| Hearing on Allocation Disputes | Week of *February 6, 2012* | Week of *January 23, 2012* |

| CONFIRMATION SCHEDULE | | |
|---|---|---|
| *Event* | *DCL Schedule*[7] | *Aurelius Schedule*[8] |
| Amended Supplemental Disclosure Documents Filed | *January 9, 2012* | *February 13, 2012* |
| Objections to Supplemental Disclosure Documents | *January 17, 2012* | *February 27, 2012* |
| Replies to Supplemental Disclosure Document Objections | Later of *January 20, 2012* and three business days prior to hearing | *March 5, 2012* |
| Hearing on Supplemental Disclosure Documents | Week of *January 23, 2012* | *March 8, 2012* |
| Voting Deadline | *March 2, 2012* | *March 28, 2012* |
| Objections to DCL Plan | *March 2, 2012* | *March 28, 2012* |
| Briefs in Support of Confirmation and in response to Objections | Later of *March 7, 2012* and three days prior to hearing | *April 2, 2012* |
| Confirmation Hearing | Week of *March 12, 2012* | Week of *April 5, 2012* |

---

[4] The DCL Schedule assumes the Court will have issued a decision on the pending Reconsideration Motions on or before December 31, 2011.

[5] Aurelius's schedule assumes the Court will have issued one or more decisions resolving the pending Reconsideration Motions and the Allocation Disputes on or before February 6, 2012.

[6] Aurelius does not believe that expert reports or depositions will be necessary in connection with resolving the Allocation Disputes.

[7] *See supra* note 4.

[8] *See supra* note 5.

3.      As evidenced by the foregoing charts, Aurelius and the DCL Plan Proponents have proposed substantially similar timelines in respect of the resolution of the Allocation Disputes, with Aurelius's schedule providing for such disputes to be heard by this Court two weeks earlier than the DCL Plan Proponents' schedule. The most prominent difference in the schedules, however, is the timing of the commencement of the solicitation process with respect to the DCL Plan. For the reasons set forth in the Aurelius Statement, Aurelius has proposed a comprehensive schedule that would require that the Allocation Disputes be resolved prior to the Court's consideration of the Supplemental Disclosure Statement for the DCL Plan. The DCL Plan Proponents, on the other hand, seek authority to proceed with the confirmation process and resolution of the Allocation Disputes along a dual track.

4.      While the parties have diametrically different positions on whether the Allocation Disputes should be resolved prior to the solicitation process, it is noteworthy that the timelines proposed by the DCL Plan Proponents and Aurelius schedule the Confirmation Hearing on the DCL Plan within weeks of each other. Specifically, the DCL Plan Proponents ask this Court to schedule the confirmation hearing during the week of March 12, 2012, whereas Aurelius's proposed schedule contemplates that the confirmation hearing will begin on or about April 5, 2012. Thus, the schedules differ by only a matter of *weeks*—a very short time period considering that these cases have been pending for over three years—but the implementation of one over the other will have widespread ramifications for the non-LBO creditors of Tribune.

5.      The DCL Plan Proponents remain steadfast in arguing that confirmation should not be delayed—however minimally—by requiring the Allocation Disputes to be resolved prior to solicitation because: (i) "no party in interest would be unfairly prejudiced" by the DCL Plan Proponents' proposed schedule; (ii) the DCL Plan Proponents' schedule most accurately reflects

the Court's guidance in the Decision that the Debtors should emerge from bankruptcy as

expeditiously as possible; and (iii) Aurelius's views should be disregarded because Aurelius

(together with the other Noteholder Plan Proponents) proposed a plan that reserved for

recoveries on account of the LBO-Related Causes of Action.[9]  None of these arguments justifies

the DCL Plan Proponents' proposed course of action, or alters the fact that resolution of the

Allocation Disputes in advance of solicitation is the only appropriate, equitable and

fundamentally fair manner in which to proceed in bringing these cases to a conclusion.

6.      First, the DCL Plan Proponents maintain that their proposed schedule would

"expedite distributions" and would not unfairly prejudice any party in interest.[10]  The DCL Plan

Proponents are wrong on both accounts.  In the Aurelius Statement, Aurelius explains in detail

why the DCL Plan Proponents' proposed schedule would be "both prejudicial and not tenable."[11]

Certain of these concerns—including, among others, the unfairness that would be inflicted on

creditors entitled to make one or more elections under the DCL Plan when such creditors lack

sufficient information to make informed elections—were raised by counsel to Aurelius at the

telephonic conference held on November 29, 2011.[12]  In response, the DCL Plan Proponents state

that "such concern properly can be addressed in the context of the Solicitation Procedures

Motion."[13]  While the DCL Plan Proponents correctly state that parties in interest will have the

ability to object to the supplemental disclosure documents on any number of bases, many of

these objections, in addition to virtually all of the other issues identified in the Aurelius

Statement, will be avoided *in their entirety* if the schedule proposed by Aurelius is adopted by

the Court.  Indeed, the DCL Plan Proponents run the risk that one or more of the objections that

---

[9] *See* DCL Statement at 7.
[10] *See* DCL Statement at 6-7.
[11] *See* Aurelius Statement at 8.
[12] *See* 11/29/11 Telephonic Conf. Tr. 30:11-31:1.
[13] *See* DCL Statement at 8 n.7.

parties in interest will be required to interpose to the supplemental disclosure documents absent resolution of the Allocation Disputes will be sustained—requiring at best modifications to the supplemental disclosure documents and at worst additional delay in the DCL Plan Proponents' proposed schedule. Moreover, the DCL Plan Proponents' assertion that proceeding with confirmation before resolution of the Allocation Disputes would somehow "expedite distributions" is disingenuous. The only creditors who would have their distributions expedited would be the Senior Lenders and unsecured creditors at Tribune's subsidiaries who are to be paid in full. The creditors that are supposed to be benefitting from the Settlement of the causes of action against the Senior Lenders, however, would be required to wait an indeterminate period of time before receiving a substantial portion of their recoveries under the DCL Plan.

7.    Second, the DCL Plan Proponents stress the Court's statement that "the Debtors must promptly find an exit door to these chapter 11 proceedings."[14] Aurelius does not, however, interpret this statement to mean that the Court believes that the Debtors should accelerate their emergence from chapter 11 by a matter of weeks (pursuant to the DCL Plan Proponents' proposed schedule) if such acceleration would materially prejudice the Debtors' non-LBO creditors. Moreover, the Court has consistently emphasized the value of achieving consensus among admittedly disparate parties. In that regard, in the Decision, the Court stated that chapter 11 is an invitation to a negotiation that "the parties might reconsider" accepting.[15] Contrary to the Court's invitation to reach consensus, however, the DCL Plan Proponents' proposed schedule will create controversy where controversy *need not* exist. Specifically, resolving the Allocation Disputes prior to consideration of the supplemental disclosure documents and the DCL Plan will obviate the need for parties in interest to raise many of the potential objections identified in the

---

[14] Decision at 123.
[15] Decision at 123 n.93.

Aurelius Statement, and will thus minimize the chances that the confirmation process will be delayed indefinitely while the Court considers a myriad of plan and disclosure statement objections.

8.      Third, the DCL Plan Proponents assert that Aurelius's position "rings particularly hollow" in light of the Noteholder Plan championed by Aurelius, pursuant to which substantial value was to be held in reserve pending the outcome of the LBO-Related Causes of Action.[16] The DCL Plan Proponents argue that the reserves created pursuant to the Allocation Disputes Protocol would contain at most $215 million whereas, by contrast, "the Noteholder Plan contemplated reserves that potentially totaled billions of dollars…a reserve that the Noteholder Plan Proponents argued was perfectly reasonable and appropriate."[17]  The DCL Plan Proponents' attempted comparison between the reserve that would have been established under the Noteholder Plan and the reserve that the current DCL Plan contemplates is simply misguided. The Allocation Dispute Reserves are in no way comparable to the reserve mechanism contemplated by the Noteholder Plan, whereby billions of dollars of LBO-Related Causes of Action would have been prosecuted and proceeds would have been distributed among the trust's beneficiaries.  The Noteholder Plan required the establishment of substantial reserves in the distribution trust in order to enable the litigation trust under the Noteholder Plan to (i) prosecute the LBO-Related Causes of Action and (ii) adjudicate the ultimate allowance of the Senior Lenders' claims after confirmation to ensure that the Debtors' emergence from chapter 11 would not be unduly delayed by protracted, complex litigation.  The Allocation Disputes, by contrast, are primarily straight-forward legal issues that can be adjudicated quickly, as demonstrated by

---

[16] DCL Statement at 8.
[17] As explained in greater detail in the Aurelius Statement, the DCL Plan Proponents are not correct that the maximum amount required to be reserved under the Allocation Disputes Protocol would be $215 million. *See* Aurelius Statement at 8-13.  Indeed, the hypothetical set forth in the Aurelius Statement at page 11 would require the Debtors to reserve more than $380 million on account of the Allocation Disputes. *See* Aurelius Statement at 11.

Aurelius's proposed schedule. The Debtors' non-LBO creditors should not be further prejudiced by having more than half of the Settlement consideration tied up in a reserve when the Allocation Disputes can and should be resolved with minimal delay on the Debtors' emergence from chapter 11. Aurelius's prior support of the Noteholder Plan does not make its current views on the fair and appropriate process for resolution of the Allocation Disputes ring hollow.

        B.     <u>Notice of Appeal</u>

        9.     In connection with their proposed schedule, the DCL Plan Proponents also argue that the Court has not been divested of jurisdiction to consider confirmation of the amended DCL Plan and that the Noteholder Plan Proponents' notice of appeal "should be disregarded."[18] In support of this position, the DCL Plan Proponents maintain that the Decision is not a "final" order, and that the Noteholder Plan Proponents have not sought the necessary leave to pursue an appeal of what the DCL Plan Proponents consider to be an interlocutory order.[19] As Aurelius previously advised the Court, and as provided by Bankruptcy Rule 8006, the pendency of the Reconsideration Motions operates to defer the Noteholder Plan Proponents' time to take any further steps in support of their appeal. Nevertheless, certain events since the filing of the Noteholder Plan Proponents' notice of appeal, including the terms and conditions set forth in the new DCL Plan, indicate that any appeal of the Decision at this juncture would, in fact, be interlocutory and the Noteholder Plan Proponents do not presently intend to pursue a discretionary appeal on an interlocutory basis. Based on the foregoing and the DCL Plan Proponents' representation that all aspects of the Decision are interlocutory (including approval of the Settlement), the Noteholder Plan Proponents will not later be foreclosed from appealing

---

[18] DCL Statement at 9.

[19] *See* DCL Statement at 10-11 (stating that orders denying confirmation are typically considered interlocutory orders and that "the Noteholder Plan Proponents have neither sought nor obtained the required leave" to appeal from an interlocutory order).

the Decision as it pertains to any aspects of the amended DCL Plan including, without limitation, the propriety of the Settlement. Accordingly, the Noteholder Plan Proponents intend to withdraw the notice of appeal, without prejudice, in the near term.[20]

## II.   EGI-TRB Statement

10.    EGI-TRB contends that the Court must resolve the Allocation Disputes in tandem with its evaluation of the DCL Plan (*i.e.,* at confirmation) and, accordingly, proposes a schedule that contemplates briefing on the Allocation Disputes to be completed on the same schedule set for the filing of objections to the DCL Plan.[21]  In support of its position, EGI-TRB argues, among other things, that: (i) Rule 7001(8) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires the Court to resolve the Allocation Disputes either (a) pursuant to an adversary complaint or (b) when ruling on confirmation of the DCL Plan; and (ii) a ruling issued pursuant to a scheduling order, as opposed to a confirmation order, may not be binding on all creditors.  Both of EGI-TRB's arguments evidence a fundamental misunderstanding of the issues pending before this Court and rely on wholly inapposite precedent, as addressed in greater detail below.

11.    The primary argument on which EGI-TRB relies is that adjudicating the Allocation Disputes prior to confirmation is improper under Bankruptcy Rule 7001(8) *unless* such disputes are resolved in the context of an adversary proceeding.[22]  Specifically, EGI-TRB contends that Bankruptcy Rule 7001(8) "requires the Court to decide the subordination issues either pursuant to an adversary complaint or when ruling on plan confirmation."[23]  Contrary to EGI-TRB's assertions, Bankruptcy Rule 7001(8) does not preclude the Court's consideration of

---

[20] Aurelius has conferred with each of the other Noteholder Plan Proponents and has confirmed that the Noteholder Plan Proponents agree with the course of action outlined in this paragraph.

[21] EGI-TRB Statement at 2-5.

[22] EGI-TRB Statement at 3-4.

[23] EGI-TRB Statement at 3-4.

the Allocation Disputes prior to confirmation.  Indeed, Bankruptcy Rule 7001(8) expressly

excludes those instances in which "a chapter 11, chapter 12, or chapter 13 plan *provides for*

*subordination*" from its requirement that "a proceeding to subordinate any allowed claim or

interest" be treated as an adversary proceeding.[24]  In the instant case, the Allocation Disputes

have arisen as a *direct* result of the proposed terms of the new DCL Plan as well as the Court's

Decision on *confirmation* of the Second Amended DCL Plan and Noteholder Plan—specifically,

those findings in the Decision that address application of the Subordination Provisions to Other

Parent Claims and proceeds of chapter 5 causes of action.  Moreover, these findings were made

to address *confirmation* objections lodged by certain parties in interest, including the Noteholder

Plan Proponents and Wilmington Trust.[25]

    12.    The fact that the Allocation Disputes arise in connection with confirmation and

are indeed provided for under a plan is not refuted by the fact that the DCL Plan Proponents have

now filed a modified DCL Plan.  The modified DCL Plan is substantially similar to the Second

Amended DCL Plan in that it incorporates as its foundation the Settlement of certain LBO-

Related Causes of Action.  The DCL Plan does differ from the Second Amended DCL Plan,

however, in that it expressly provides for the Allocation Disputes to be heard by the Court before

the consideration implicated by the Allocation Disputes can be distributed to creditors.[26]  EGI-

TRB's efforts to draw an arbitrary distinction between, on the one hand, a bifurcated process

whereby the Allocation Disputes are resolved immediately prior to and in aid of the

commencement of the confirmation process and, on the other hand, a process in which the

---

[24] *See* Fed. R. Bankr. P. 7001(8) (emphasis added).
[25] *See* Decision at 108-113.
[26] *See* Status Report in Connection with the Filing of the Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., dated November 18, 2011 [ECF No. 10272] (the "Status Report") at 4-8.

Allocation Disputes are briefed just weeks later on the same schedule as confirmation objections should not be countenanced by this Court.[27]

13.    EGI-TRB's argument that parties may not be bound by a ruling on the Allocation Disputes rendered in connection with or pursuant to a scheduling order is similarly untenable.[28] First, the *Proposed Discovery and Scheduling Order for Resolution of the Allocation Disputes and Plan Confirmation* (the "Aurelius Proposed Order")[29] broadly defines the relevant "Parties" to include "any . . . party who identifies itself as wishing to take a position before the Court on any of the Allocation Disputes or a proposed plan of reorganization for Tribune and its Subsidiaries."[30] Accordingly, any party who wishes to participate in the resolution of the Allocation Disputes may do so under Aurelius's proposed schedule.  Further, as is required by applicable law, the Aurelius Statement (together with the Aurelius Proposed Order) was served on all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).[31] As noted by EGI-TRB, the law is well-settled that due process requires that parties in interest receive adequate notice to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[32]  To the extent such notice *is* provided,

---

[27] EGI-TRB's argument is further refuted by its own (wholly inaccurate) view that the Allocation Disputes "only arise because of the manner in which the [DCL] Plan proposes to distribute chapter 5 causes of action."  EGI-TRB Statement at 2.  Contrary to EGI-TRB's erroneous and self-defeating statement, the Allocation Disputes span, among other things, (i) the relative priority of PHONES Notes Claims vis-à-vis EGI-TRB LLC Notes Claims, (ii) whether Other Parent Claims are entitled to benefit from the Subordination Provisions and (iii) the allowed amount of the PHONES Notes Claims.  *See* DCL Plan, Ex. 5.18 § 1.3 (delineating the Allocation Disputes).

[28] EGI-TRB makes the related argument that the Court's resolution of the Allocation Disputes would be advisory in nature and, therefore, unenforceable.  In the Decision, however, the Court found reasonable the underlying economics of the Settlement which formed (and continues to form) the foundation of the DCL Plan.

[29] *See* Aurelius Statement, Ex A.

[30] Aurelius Statement, Ex. A at 2.

[31] *See* Aurelius Statement at 21.

[32] *In re CareMatrix Corp.*, 306 B.R. 478 (Bankr .D. Del. 2004) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.").

however, creditors are bound by the terms of a bankruptcy court order.[33]  Accordingly, the string

of cases cited by EGI-TRB that stand for the proposition that creditors cannot be bound by an

order approving a motion of which they received no notice are wholly inapposite, and EGI-

TRB's concerns are ill-founded.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Aurelius respectfully requests that the Court:

(i) enter the Aurelius Proposed Order in the form attached to the Aurelius Statement as Exhibit A,

setting forth a schedule with respect to (a) resolution of the Allocation Disputes and (b)

confirmation of a proposed plan of reorganization; and (ii) grant Aurelius such other and further

relief as is just, proper and equitable.

Dated:  December 9, 2011
        Wilmington, Delaware

AKIN GUMP STRAUSS HAUER & FELD LLP        ASHBY & GEDDES, P.A.


Daniel H. Golden                          William P. Bowden (I.D. No. 2553)
David M. Zensky                           Amanda M. Winfree (I.D. No. 4615)
Philip C. Dublin                          Leigh-Anne M. Raport (I.D. No. 5055)
One Bryant Park                           500 Delaware Avenue, P.O. Box 1150
New York, NY  10036                       Wilmington, DE  19899
(212) 872-1000                            (302) 654-1888

*Counsel for Aurelius Capital Management, LP*

---

[33] *See, e.g., In re Cone Mills Corp.*, 313 Fed. Appx. 538, 541 (3d Cir. 2009) (an unsecured creditor received sufficient notice of a sale hearing where the notice received by such creditor "referred to the motion to approve the sale, described the assets to be sold, stated the manner in which the APA could be obtained, stated the date and time of the sale hearing and the deadline to object to the sale" and, accordingly, was bound by the sale order and could not assert its claims against successor).