IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) Case No. 08-13141 (KJC) <br> ) |
| TRIBUNE COMPANY, *et al.*, | ) Jointly Administered <br> ) |
| Debtors. | ) Hearing Date: December 14, 2011 at 1:30 p.m. ET <br> ) Objection Deadline: December 6, 2011 at 4:00 p.m. ET <br> **Related to ECF Nos. 10226, 10371 and 10365** |

**OMNIBUS REPLY IN SUPPORT OF MOTION OF
AURELIUS CAPITAL MANAGEMENT, LP
FOR RECONSIDERATION OF THE COURT'S
OCTOBER 31, 2011 DECISION AS IT PERTAINS TO
THE APPLICATION OF PHONES NOTES SUBORDINATION**

Aurelius Capital Management, LP, on behalf of itself and its managed entities (collectively, "Aurelius"),[1] by and through its undersigned counsel, hereby files this omnibus reply (the "Reply") in further support of the Motion Of Aurelius Capital Management, LP For Reconsideration Of The Court's October 31, 2011 Decision As It Pertains To The Application Of PHONES Notes[2] Subordination (the "Aurelius Motion") [ECF No. 10226], and in response to (1) Wilmington Trust Company's ("WTC") Omnibus Objection To Motions For Reconsideration Of This Court's Decision On PHONES Subordination And The Proceeds Of The Litigation Trust Under The DCL Plan [ECF No. 10371] (the "WTC Objection") and (2) EGI-TRB LLC's ("EGI") Objection To [1] Motion of Aurelius Capital Management, LP For Reconsideration Of The Court's October 31, 2011 Decision As It Pertains To The Application Of PHONES Notes

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes. Neither Aurelius nor any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any of its managed entities an insider of Tribune Company or any of its affiliates.

[2] Unless otherwise stated, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Aurelius Motion.

Subordination [ECF No. 10365] (the "EGI Objection"). In support of this Reply, Aurelius respectfully represents as follows:[3]

## PRELIMINARY STATEMENT

1. The Court's ruling that chapter 5 causes of action are not subject to the PHONES subordination provision is contrary to the plain language of the PHONES Indenture and should be reversed. WTC spends a great deal of its Objection arguing that, pursuant to *Official Comm. Of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 244-45 (3d Cir. 2000), chapter 5 causes of action are not assets of Tribune. Yet, although Aurelius questions whether *Cybergenics* should be read as having any impact on subordination provisions, that question need not be answered in order to resolve the dispute at hand.[4] Rather, *Cybergenics* and whether the proceeds of chapter 5 claims can be considered assets of the "Company" have no bearing on the issue of whether the PHONES Notes are subordinated with respect to chapter 5 causes of action, because the PHONES Indenture unambiguously states that the PHONES Noteholders should not receive any payment on account of the PHONES Notes from any source, until Senior Indebtedness is paid in full. To wit, the PHONES Indenture provides that:

- The PHONES Notes are "expressly made subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness," PHONES Indenture Section 14.01;

---

[3] EGI asserts in the EGI Objection that the question of EGI's subordination is not before the Court, and goes on to argue that EGI's claims should not be subordinated with respect to proceeds from avoidance actions. EGI Objection at 8-10. While Aurelius disputes that EGI may share in the proceeds of avoidance actions on a *pari passu* basis with Senior Indebtedness, Aurelius agrees that this issue is not yet before the Court. Aurelius will address this issue at the appropriate time, as directed by the Court.

[4] *Cybergenics* analyzed only whether fraudulent transfer actions under Bankruptcy Code section 544 were included in a postpetition sale of all assets of Cybergenics, under the terms and conditions of the specific purchase agreement at issue. The *Cybergenics* decision explicitly did not address any of the following: (i) whether the Third Circuit's analysis would have differed had it been considering fraudulent transfer actions under Bankruptcy Code section 548 (*see In re Cybergenics*, 226 F.2d at 243); (ii) whether the proceeds of fraudulent transfer actions themselves constitute (or should for certain purposes be deemed to constitute) property of the company; or (iii) whether contractual subordination provisions exempt the proceeds of fraudulent transfer actions from the scope of subordination.

2

- PHONES Noteholders may not "receive any payment" on account of the PHONES Notes unless the holders of Senior Indebtedness have been paid in full, *Id.* at Section 14.02(3)(A); and

- "Any payment" by "the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise," to which the PHONES Noteholders would be entitled but for the PHONES subordination provisions, must be paid to the holders of Senior Indebtedness until such Senior Indebtedness is paid in full, *Id.* at Section 14.02(3)(B).

2.  In an effort to escape this language, WTC urges that additional language should be read into the applicable PHONES subordination provision to affect the interpretation that WTC prefers. Specifically, WTC argues:

- That the triggering introductory language of Section 14.02 should be read into, and narrow, the substantive provisions that follow it,

- That language found in other provisions of the PHONES Indenture not applicable here which limit the PHONES subordination to "payment by the Company" should be imposed upon Section 14.02, notwithstanding that Section 14.02 expressly states that the PHONES subordination applies to payments made "by the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise";

- And that the well-settled rule of the last antecedent should be should be disregarded, notwithstanding that the result it yields is entirely consistent with the other provisions of Section 14.02.

3.  Section 14.02 would have to be completely re-written in order to achieve this result. The rules of contract interpretation do not allow for such machinations. The language of the PHONES Indenture is clear – the PHONES Noteholders may not "receive any payment" from "the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise" on account of the PHONES Notes unless Senior Indebtedness is paid in full. Section 14.02(3)(A), (B). Aurelius thus respectfully requests that the Court reconsider and reverse its holding that causes of action

3

under chapter 5 of the Bankruptcy Code are not subject to the subordination provision in the PHONES Indenture.

## ARGUMENT

### I. Aurelius Has Adequately Stated A Basis For Reconsideration

4. Contrary to WTC's contention, Aurelius has adequately stated a basis for reconsideration. The law is well settled that a motion for reconsideration should be granted upon a showing of "the need to correct a clear error of law or fact or to prevent manifest injustice." *St. Louis v. Morris*, 2006 U.S. Dist. LEXIS 69108, at *2 (D. Del. Sept. 22, 2006); *see Nusbaum v. MBFG Ltd. P'ship*, 314 Fed. Appx. 516, 517 (3d Cir. 2009) (Reconsideration is "a device to relitigate the original issue decided by the District Court, and used to allege legal error.") (internal quotations omitted). Here, reconsideration is warranted because the portion of the Court's Decision relating to the PHONES subordination is predicated on a misunderstanding of (i) the parties' positions regarding application of the PHONES subordination, (ii) the terms of the Second Amended DCL Plan pertaining to the Creditors' Trust, and (iii) the operative subordination provisions themselves. These factual errors have resulted in an erroneous legal ruling, which will affect manifest injustice upon several parties in interest if it is permitted to stand.

### II. The PHONES Noteholders May Not Benefit From Avoidance Actions Until The Holders Of Senior Indebtedness Are Paid In Full

#### A. The Plain Language Of Article 14 Unambiguously Subordinates The PHONES Noteholders To Holders Of Senior Indebtedness With Respect To Any Payments From Any Source Made On Account Of The PHONES Notes

5. The plain language of Article 14 of the PHONES Indenture makes it abundantly clear that, in the event that Tribune's assets are distributed in a bankruptcy proceeding, Senior Indebtedness must be paid in full before the PHONES Noteholders can receive any payment on

account of their claims, and any payments or distributions of Company (as defined in the PHONES Indenture) assets to which the PHONES Noteholders would otherwise be entitled, regardless of their source, must be paid to the holders of Senior Indebtedness until they are paid in full. Given the many and differing submissions on this point, a step-by-step review of the relevant sections is warranted.

6. First, Section 14.01 of the PHONES Indenture provides that:

> to the extent and in the manner hereinafter set forth in this Article Fourteen, the indebtedness represented by the [PHONES Notes] and the payment of the principal amount, interest and such other amounts as provided for in Section 3.01, if any, in respect of each and all of the [PHONES Notes] *are hereby expressly made subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness.*

PHONES Indenture Section 14.01 (emphasis supplied).

7. Article 14 goes on to enumerate the "extent and manner" in which the superior right of payment of Senior Indebtedness applies. Specifically, Section 14.02 addresses the application of subordination in the event of: a "distribution of assets of the Company in the event of . . . any insolvency or bankruptcy case or proceeding, any receivership, liquidation, reorganization or other similar case or proceeding . . . any liquidation, dissolution or other winding up of the Company, or any assignment for the benefit of creditors or any other marshalling of assets and liabilities." Section 14.03 addresses subordination in the event that the PHONES Notes "are declared due and payable before their maturity . . . because of an Event of Default," except with respect to any payment controlled by Section 14.02. Section 14.04 addresses subordination in the event of any default by the Company in the payment of principal and interest due on Senior Indebtedness, or in the event that the maturity of Senior Indebtedness is accelerated because of a default.

8.     Given that this dispute arises in the context of a distribution of the Debtors' assets pursuant to a proposed plan of reorganization filed in the Debtors' chapter 11 cases, the relevant provision for determining the extent of the PHONES subordination is Section 14.02.

9.     Consistent with Section 14.01's mandate that the PHONES Notes are "expressly made subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness" Section 14.02(3)(A) states that the PHONES Noteholders may not receive any payment on account of the PHONES Notes unless the holders of Senior Indebtedness have been paid in full:

> ***the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness***, or provision shall be made for such payment in cash, ***before the Holders of the Securities of any series are entitled to receive any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series.***

Section 14.02(3)(A) (emphasis supplied).

10.     Section 14.02(3)(B) states that (i) payments, or (ii) distributions of Company assets, in each case, to which the PHONES Noteholders would otherwise be entitled, must be paid to the holders of Senior Indebtedness, until such Senior Indebtedness is paid in full:

> ***any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, by set-off or otherwise, to which the Holders or the Trustee would be entitled but for the provisions of this Article Fourteen***, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, ***shall be paid by the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, directly to the holders of Senior Indebtedness*** or their representative or representatives or to the trustee or trustees under any indenture under which any instruments evidencing any of such Senior Indebtedness may have been issued, ratably according to the aggregate amounts remaining unpaid on account of the principal of (and premium, if any) and interest on the Senior Indebtedness held or represented by each, ***to the extent necessary to make payment in full of all Senior Indebtedness remaining unpaid,*** after giving effect to any concurrent

payment of distribution to the holders of such Senior Indebtedness or provision therefor.

> *In the event that, notwithstanding the foregoing provisions of this Section 14.02, the Trustee or the Holder of any Security of any series shall receive any payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities*, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, *before all Senior Indebtedness is paid in full* or payment thereof provided for, and if such fact shall then have been made known to the Trustee as provided in Section 14.10, or, as the case may be, such Holder, *then and in such event such payment or distribution shall be paid over or delivered forthwith to the trustee in bankruptcy, receiver, liquidating trustee, custodian, assignee, agent or other person making payment or distribution of assets of the Company for application to the payment of all Senior Indebtedness remaining unpaid*, to the extent necessary to pay all Senior Indebtedness in full, after giving effect to any concurrent payment or distribution to or for the holders of Senior Indebtedness.

Section 14.02(3)(B) (emphasis supplied).

    **B.**    **WTC's Limited Interpretation Of The PHONES Subordination Is Contrary To The Plain Language Of The PHONES Indenture**

11.    WTC argues that the provisions of Article 14 operate to subordinate PHONES Noteholders to Senior Indebtedness only with respect to distributions of assets of the Company that are made by the Company, and that, as a result, the PHONES Noteholders are not subordinated with respect to chapter 5 causes of action, which belong to creditors rather than the Company. WTC Objection ¶¶ 16-49. In support of this assertion, WTC argues that (i) the introductory language of Section 14.02 should be read to limit application of the entire section only to "distributions of assets of the Company," *see, e.g.,* WTC Objection ¶¶ 25-27, (ii) subordination of the PHONES Notes applies only to "payment[s] from the Company," *see, e.g.,* WTC Objection 28, and (iii) Section 14.02(3)(B) limits subordination of the PHONES Notes to "distributions of assets of the Company," *see, e.g.,* WTC Objection ¶ 29. Each of these arguments is contradicted by the plain language of Section 14.02.

12. First, there is no basis to interpret the introductory language of Section 14.02 as limiting the subordination provisions set forth in the remainder of the Section. Rather, as the plain language of the provision makes clear, the introductory language, combined with Sections 14.02(1), (2) and (3), is intended to enumerate *when* the subordination provisions apply. This is evident from the use of the words "then and in such event," which follow the introductory language and Sections 14.02(1), (2) and (3); and precede the substantive subordination provisions in Sections 14.02(3)(A) and (B). WTC's assertion that the predicate language should be read into the substantive subordination provisions is wholly unsupported by the language of the provision.

13. Moreover, WTC's argument that Aurelius disregards the introductory language is unfounded. WTC Objection ¶ 27. Aurelius does not disregard the language, it simply affords the language the meaning that it logically demands. Such an interpretation is entirely consistent with the case law cited by WTC, which holds that introductory clauses must be read in conjunction with the provisions that follow them. *See* WTC Objection ¶ 27 (*citing Willison v. Econ. Fire & Cas. Co.*, 690 N.E.2d 1073, 1076 (Ill. App. Ct. 1998); *Salce v.* Saracco, 949 N.E.2d 284, 288 (Ill. App. Ct. 2011); *Lotspiech v. Cont'l Ill. Nat. Bank & Trust Co. of* Chicago, 45 N.E.2d 530, 539 (Ill. App. Ct. 1942); *Krueger Constr. Co., Inc. v. State of Ill.*, 28 Ill. Ct. Cl. 83, 1972 WL 16785, at *4 (Ill Ct. Cl. 1972); *People v. Santiago*, 925 N.E.2d 1122, 1129 (Ill. 2010). These cases do not hold, as WTC asserts, that introductory clauses should alter the plain language of the succeeding provisions.

14. Second, WTC's assertion that the term "payment" in Section 14.02(3)(B) should be limited to "payment from the Company" because the word "payment" is so limited in *other* sections of the PHONES Indenture is demonstrably erroneous, and only supports the opposite

8

conclusion. WTC Objection ¶ 28. It is true that certain of the PHONES Indenture's provisions are limited to "payment by the Company." For example, Section 14.03, which sets forth the terms of the PHONES subordination in the event of an acceleration of the PHONES Notes, limits that subordination provision to payment "by the Company." As does Section 14.04, which applies to subordination in the event of a default or acceleration of Senior Indebtedness. In sharp contrast, however, Section 14.02(3)(B) expressly contemplates that the "payment or distribution of assets of the Company" to which it applies will be paid by someone other than the Company, including a litigation trustee:

> ***any payment or distribution of assets of the Company*** of any kind or character, whether in cash, property or securities, by set-off or otherwise, to which the Holders or the Trustee would be entitled but for the provisions of this Article Fourteen, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the Securities of such series, ***shall be paid by the liquidating trustee or agent or other Person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise,*** directly to the holders of Senior Indebtedness or their representative or representatives or to the trustee or trustees under any indenture under which any instruments evidencing any of such Senior Indebtedness may have been issued, ratably according to the aggregate amounts remaining unpaid on account of the principal of (and premium, if any) and interest on the Senior Indebtedness held or represented by each, to the extent necessary to make payment in full of all Senior Indebtedness remaining unpaid, after giving effect to any concurrent payment of distribution to the holders of such Senior Indebtedness or provision therefor.
>
> In the event that, notwithstanding the foregoing provisions of this Section 14.02, the Trustee or the [PHONES Noteholders] shall receive payment or distribution of assets of the Company of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of the [PHONES Notes], before all Senior Indebtedness is paid in full or payment thereof provided for . . . ***then and in such event such payment or distribution shall be paid over or delivered forthwith to the trustee in bankruptcy, receiver, liquidating trustee, custodian, assignee, agent or other Person making payment or distribution of assets of the Company*** for application to the payment of all Senior Indebtedness remaining unpaid . . .

9

15.     A comparison of the turnover provisions of Sections 14.02(3)(B) and 14.03 further underscore that Section 14.02 is intended to apply to "any payment" to which the PHONES Noteholders would otherwise be entitled, and not just any payment made by the Company. While the turnover requirement in Section 14.02(3)(B) applies in the event that the PHONES Noteholders "receive any payment or distribution of assets of the Company," without qualifying in any way the payor, Section 14.03's narrower turnover provision applies if "the Company shall make any payment." Given the express language of Section 14.02(3)(B), WTC's assertion that the term "payment" therein should be limited to "payment from the Company" should be rejected out of hand. WTC Objection ¶ 28.

16.     WTC's suggestion that Section 14.02(3)(B)'s contemplation of payment by someone other than the Company yields an "absurd" and "bizarre" result that is "entirely inconsistent with traditional lending practice" should also be rejected. As noted in a leading treatise on indentures that has been cited with approval by this Court:

> the underlying concept of subordination can be stated quite simply: it is the agreement by the holder of certain debt (the "subordinated debt") that the holder of certain other specified indebtedness of the same debtor (the "senior debt") will receive prior payment in full of that Senior Debt. Put another way -- to illustrate the operation of subordinations – in the circumstances specified in the subordination provisions, payments or distributions on the subordinated debt are turned over to the holders of senior debt for application thereon until the senior debt is paid in full.

American Bar Foundation, Commentaries on Model Debenture Indenture Provisions 1965 - Model Debenture Indenture Provisions All Registered Issues 1967 and Certain Negotiable Provisions Which May Be Included in a Particular Incorporating Indenture 559 (1971) (the "Commentary"); In re Dura Auto. Sys., Inc., 379 B.R. 257, 265 (Bankr. D. Del. 2007). Notably, the model indenture provisions contained in the Commentary are remarkably similar to those in Section 14.02(3)(B). See Commentary at 561. Yet the Commentary is clear that those provisions are intended to impose absolute subordination, regardless of the source of the payment. This

10

Court has also recognized that subordination provisions are intended to impose unqualified subordination, stating in *Dura* that "[w]hen read as a whole, the Subordinated Note Indenture clearly manifests the intent to assure payment in full of the Senior Notes before permitting payment (in whatever form) to the Subordinated Noteholders." *In re Dura*, 379 B.R. at 268. The interpretation urged by WTC – that money held by the Company is subject to subordination, but money that is wrongfully diverted to third parties and subsequently recouped pursuant to chapter 5 of the Bankruptcy Code is not – is both illogical, and inconsistent with the notion that senior debt must be paid in full before subordinated debt may be paid. No drafter would write a subordination provision designed to achieve such a result.

17.  Third, Section 14.02(3)(B) does not limit the PHONES subordination to "distributions of assets of the Company." Rather, as set forth in the Aurelius Motion, subsection (3)(B) delineates two distinct types of consideration that must be paid directly to the holders of Senior Indebtedness until they are paid in full and that, if paid instead to the PHONES Noteholders or the PHONES Indenture Trustee, must be turned over to Senior Indebtedness: (i) any payment to which the PHONES Noteholders would otherwise be entitled, or (ii) any distribution of assets of the Company of any kind or character to which the PHONES Noteholders would otherwise be entitled. PHONES Indenture Section 14.02(3)(B). WTC's assertion that both "payments" and "distributions" should be modified by the words "assets of the Company" is contrary to the well-settled rule of the last antecedent, which holds that "a limiting clause or phrase…should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003).

18. WTC's contention that this rule of interpretation should be disregarded, because it results in a meaning that is "demonstrably at odds with surrounding language," and results in an "absurd or incongruous" interpretation of Section 14.02, cannot withstand scrutiny.

19. To begin with, Aurelius's interpretation of Section 14.02(3)(B) as applying to "any payment" to which the PHONES Noteholders would otherwise be entitled is entirely consistent with the language of both Section 14.01 and Section 14.02(3)(A), which state, respectively, that the PHONES Notes are "expressly made subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness," and that PHONES Noteholders may not "receive any payment" on account of the PHONES Notes unless the holders of Senior Indebtedness have been paid in full. PHONES Indenture Sections 14.01, 14.02(3)(A). Indeed, in the face of such broad language, the notion that Section 14.02(3)(B) would then limit the PHONES Noteholders' turnover obligation to "distributions of assets of the Company" makes little sense.

20. Moreover, contrary to WTC's assertion, "contemplate[ion]" of "repayment of the loan by or the distribution of assets belonging to some unknown, unidentifiable third-party that is not an obligor or guarantor of the debt" does not yield an "absurd result" WTC Objection at 17-18, 20. As noted, subordination provisions are traditionally used to subordinate junior debt to senior debt with respect to any payments made on account of the subordinated debt. *See* Commentary at 559. It is thus entirely logical that, in the event of a bankruptcy, payments made on account of the subordinated debt by third parties who received monies rightfully owed to the estate are subject to subordination.

21. Further, WTC's contention that Aurelius's interpretation of the term "payment" renders the words "distributions of assets of the Company, whether in cash, property or

securities" superfluous, because "payment" subsumes "distributions," is misguided. WTC Objection ¶ 29. In common parlance, the term "payment" is typically interpreted to refer to cash, while "distribution" commonly refers to other consideration paid to creditors in a bankruptcy. Indeed, the terms "payments" and "distributions" were employed in exactly this manner in the plan of reorganization that was jointly proposed by Aurelius, WTC and the Indenture Trustees for the Senior Notes. *See* Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Duetsche Bank Trust Company Americas, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, In Its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, In Its Capacity as Successor Indenture Trustee for the PHONES Notes [ECF No. 8755] at Section 3.3.3 ("each Holder of an Allowed Other Non-Guarantor Debtor Claim shall receive *payment* in Cash, in full, plus Postpetition Interest"); Section 5.12 ("Except as otherwise provided in the Noteholder Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make *payments* pursuant to the Noteholder Plan (other than Cash *payments* in respect of proceeds from the Litigation Trust Causes of Action and the State Law Avoidance Claims) may be obtained from existing Cash balances, the operations of the Debtors or the Reorganized Debtors, sales of assets or the Exit Facility"); Section 5.2.4(g) ("Holders of Distribution Trust Interests entitled to receive *distributions* from the Distribution Trust in the form of New Common Stock or New Warrants shall *elect the form of security* to be received in accordance with procedures to be set forth in the Distribution Trust Agreement").

22.    As such, the presence of the terms "payment" and "distribution of Company assets" in Section 14.02(3)(B) is not surprising. Conversely, in contravention of well-settled

principles of contractual construction, WTC's assertion that both "payment" and "distribution" are modified by the words "of assets of the Company" renders the two terms completely identical, and thus one or the other entirely superfluous. *See AGT Crunch Chicago, LLC v. 939 North Ave. Collection, LLC*, No. 07-C-2986, 2008 WL 753951, at *3 (N.D. Ill. Mar. 18, 2008) ("I 'must give effect to every word or term employed by the parties and reject none as meaningless or surplusage.'").

### C. Section 5 Of The PHONES Indenture Does Not Support WTC's Strained Reading Of Section 14.02

23. WTC's argument that Sections 5.05 and 5.10 of the PHONES Indenture support its strained interpretation of Section 14.02 is equally baseless. WTC Objection ¶ 33. Section 5.10, entitled "Rights and Remedies Cumulative," states that the PHONES Indenture does not prevent the PHONES Noteholders from asserting a "right or remedy . . . existing in law or equity or otherwise." Section 5.05, entitled "Trustee May Enforce Claims Without Possession of Securities," states that "any recovery of judgment" arising from "rights of action and claims under [the PHONES Indenture] or [the PHONES Notes]" that are brought by the PHONES Indenture Trustee "shall . . . be for the ratable benefit of the [PHONES Noteholders] in respect of which such judgment has been recovered." WTC argues that because neither of these provisions reference Article 14, they permit the PHONES Noteholders to collect judgments from third parties without giving effect to Article 14's subordination provisions

24. But this assertion is wrong. Under Illinois law, which governs the PHONES Indenture, each section of a contract should be read to harmonize with one another. *See e.g., BP Amoco Chem. Co. v. Flint Hills Resources, LLC*, 697 F. Supp. 2d 1001, 1026-27 (N.D. Ill. 2010) ("[I]t is long established that a construction should be adopted . . . [that] harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of

14

any other."); *AGT Crunch Chicago, LLC,* 2008 WL at *3 ("Under Illinois law . . . I should accept the interpretation that best harmonizes all provisions of the contract, rendering all terms consistent with one another.") (citations and quotations omitted). As such, Sections 5.05 and 5.10 should be read in conjunction with, and subject to, the subordination provisions of Article 14. Indeed, although WTC characterizes Sections 5.05 and 5.10 as "address[ing] circumstances in which WTC may pursue and receive payments from sources *other than the* Company," the rights and actions contemplated by Sections 5.05 and 5.10 also include rights and actions against "the Company." WTC Objection ¶ 33; PHONES Indenture 5.05, 5.10. And even WTC concedes that such rights and remedies are subject to subordination.

25. The fault in WTC's logic is further demonstrated by other provisions in Article 5. For example, Section 5.02, entitled "Acceleration of Maturity; Rescission and Annulment," provides that if an Event of Default occurs, all amounts due under the PHONES Notes may become immediately due and payable upon an appropriate declaration by the PHONES Indenture Trustee or PHONES Noteholders. Section 5.03, entitled "Collection of Indebtedness and Suits for Enforcement by Trustee," provides that, upon certain defaults, the Company shall, upon demand of the PHONES Indenture Trustee, pay to the PHONES Indenture Trustee, for the benefit of the PHONES Noteholders, all amounts due and owing under the PHONES Notes. Section 5.04, entitled "Trustee May File Proofs Of Claims," provides that, in the event of a bankruptcy, the PHONES Indenture Trustee may "file and prove a claim" for amounts owed on the PHONES Notes, and "collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same."

26. ***None of these provisions (or any of the provisions in Article 5) reference Article 14.*** Yet WTC does not suggest, nor could it, that moneys collected by the PHONES Indenture

Trustee from the Company, or on account of the proof of claim that it filed on behalf of the PHONES Noteholders in the Tribune's bankruptcy case, are not subject to the subordination provisions of Article 14. Such an argument would completely vitiate Article 14, and thus cannot be accepted. *See e.g., Lulich v. Sherwin-Williams Co.*, 799 F. Supp. 64, 67 (N.D. Ill. 1992) ("An interpretation of a contract that gives reasonable meaning to all its terms is preferred to an interpretation that leaves some terms to no effect."). Rather, consistent with well-settled rules of contractual interpretation and common sense, Article 5 of the PHONES Indenture, including Sections 5.05 and 5.10, are subject to the subordination provisions of Article 14. WTC's assertion that Sections 5.05 and 5.10 are exempt from subordination, and support WTC's limited interpretation of Section 14.02, is baseless.

**D.   WTC's Efforts To Portray The Prospectus As Consistent With Its Interpretation of Section 14.02 Fail**

27.   Finally, WTC's efforts to portray the Prospectus as consistent with its tortured interpretation of Section 14.02 fails. Like Section 14.02 itself, the Prospectus states that:

> ***On any distribution of our assets to creditors*** upon any dissolution, winding-up or liquidation whether voluntary or involuntary or ***in bankruptcy***, insolvency, receivership, reorganization or other similar proceedings, all principal of, premium, if any, interest and any other amounts due or to become due on, ***all senior indebtedness must be paid in full before the holders of the PHONES are entitled to receive or retain any payment.***

Prospectus at S-16, S-17 (emphasis supplied).

28.   Once again, however, WTC attempts to escape this plain language by asserting that the term "'payments' refers to 'payments' that Tribune Company is obligated to make 'on the PHONES' in connection with 'any distribution of our assets to creditors.'" WTC Objection at 22. This added language is made entirely of whole cloth, and is directly contrary to the plain language of the Prospectus. When read without WTC's editorial changes, both Section 14.02 and the Prospectus unambiguously provide that, in the event of a distribution of the Company's

16

assets in connection with a bankruptcy proceeding, the PHONES Noteholders may not retain "any payment" to which they would otherwise be entitled under the Indenture unless Senior Indebtedness has been paid in full.[5]

### III. The Aurelius Motion Is Not Moot

29. The Aurelius Motion is not moot, as EGI contends. EGI Objection at 3-4. EGI argues that because the filing of the Third Amended DCL Plan moots objections to the Second Amended DCL Plan, objections to the Court's Decision are also moot. Yet EGI ignores that the Decision made final rulings on many issues that certainly would be deemed law of the case and are not open for plenary relitigation (absent a recognized exception). *See, e.g., Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994); Third Amended DCL Plan § 1.1.49 (providing that the PHONES Notes are not subordinated with respect to distributions resulting from successful prosecution of Chapter 5 causes of action). EGI's position disregards the normal functioning of ongoing plan confirmation proceedings, and is clearly designed to delay the determination of all of the Allocation Disputes to advance its own parochial agenda.[6]

### CONCLUSION

**WHEREFORE**, for the foregoing reasons and those set forth in the Aurelius Motion, Aurelius respectfully requests that the Court: (i) enter an order substantially in the form attached as Exhibit C to the Aurelius Motion (a) reconsidering its Decision as it pertains to the application of the subordination provisions contained in the PHONES Indenture to recoveries to holders of

---

[5] WTC also argues that the Prospectus should be disregarded because it was not admitted into evidence during the trial, and because the PHONES Indenture is unambiguous. Aurelius agrees that the PHONES Indenture is unambiguous, and posits the Prospectus only in the event that the Court disagrees. Additionally, the Prospectus has been admitted into evidence, and is designated DCL Exhibit 669.

[6] EGI's reliance on *In re Wilson*, 2008 WL 4833091, *2 (Bankr. D. Mass. Oct. 28, 2008) is misplaced. (EGI Objection at 3.) In *In re Wilson*, the court deemed a pre-confirmation objection to a plan moot after it ordered the Debtor to file an amended plan. *Id. Wilson* does not address the question of whether portions of a decision denying confirmation of a plan may be subject to a motion for reconsideration.

Senior Notes and PHONES Notes and (b) determining that the PHONES Notes are subordinated to the Senior Notes in all respects from all sources, including as to the Litigation Trust and proceeds of avoidance actions; and (ii) grant Aurelius such other and further relief as is just, proper and equitable.

Dated: December 9, 2011
      Wilmington, Delaware

| AKIN GUMP STRAUSS HAUER & FELD LLP | ASHBY & GEDDES, P.A. |
|---|---|
| Daniel H. Golden | |
| David M. Zensky | /s/ William P. Bowden |
| Philip C. Dublin | William P. Bowden (I.D. No. 2553) |
| One Bryant Park | Amanda M. Winfree (I.D. No. 4615) |
| New York, NY 10036 | Leigh-Anne M. Raport (I.D. No. 5055) |
| (212) 872-1000 | 500 Delaware Avenue, P.O. Box 1150 |
| | Wilmington, DE 19899 |
| | (302) 654-1888 |

*Counsel for Aurelius Capital Management, LP*