**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date: December 14, 2011 at 1:30 p.m. ET |
| | ) Objection Deadline: December 6, 2011 at 4:00 p.m. ET |

**OMNIBUS REPLY IN SUPPORT OF THE NOTEHOLDER PLAN PROPONENTS'**
**MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE**
**COURT'S OCTOBER 31, 2011 DECISION**

Aurelius Capital Management, LP, on behalf of itself and its managed entities (collectively "Aurelius")[1] and the other Noteholder Plan Proponents, by and through their undersigned counsel, respectfully submit this omnibus reply (the "Reply") in further support of their Motion for Reconsideration and Clarification of the Court's October 31, 2011 Decision (the "Motion"), and in reply to the Objections to the Motion filed the Debtor/Committee/Lender Plan Proponents (the "DCL Objection") [ECF 10373], EGI-TRB LLC (the "EGI Objection") [ECF 10368], and Certain Current and Former Directors and Officers (the "Directors and Officers") of Tribune (the "D&O Objection") [ECF 10376].[2] In support of the Reply, the Noteholder Plan Proponents respectfully submit as follows:

**PRELIMINARY STATEMENT**

1.  The Noteholder Plan Proponents' request for reconsideration and/or clarification of three discrete issues should be granted. Specifically, this Court should grant the Noteholder

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes. Neither Aurelius nor any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any of its managed entities an insider of Tribune Company or any of its affiliates.

[2] Unless otherwise noted, capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or the Decision.

Plan Proponents' request for: (i) reconsideration of this Court's apparent determination that the LBO Lenders are entitled to share in recoveries by the DCL Litigation Trust's pursuit of the Litigation Trust Causes of Action; (ii) reconsideration of this Court's determination approving proportionate judgment reduction in conjunction with the Bar Order in the DCL Plan; and (iii) clarification that this Court has not made any determination as to how the PHONES Notes should be valued for purposes of determining Tribune's solvency at the time of the LBO.  As discussed herein, the Noteholder Plan Proponents' request for reconsideration and/or clarification are proper and no objections have been raised that warrant denial of the Noteholders' request.

**I.      The LBO Lenders Should Not Be Permitted To Share In The DCL Litigation Trust Recoveries**

2.      To the extent that the Court ruled in the Decision that the LBO Lenders may share in the recoveries of the DCL Litigation Trust, such ruling constitutes clear error that results in manifest injustice, and should be reconsidered.  As the DCL Plan Proponents note, the Court explained in the Decision that:

> An additional source of consideration provided to Non-LBO Creditors under the DCL Plan Settlements is the agreement by the Senior Lenders and the Bridge Lenders to forgo *pro rata* participation in initial recoveries from the Litigation and Creditors Trusts.

DCL Objection at 3 (citing Decision at 33).

3.      This interpretation of the LBO Lenders' participation in the DCL Litigation Trust is premised on the faulty proposition, propounded by the DCL Plan Proponents during confirmation, that absent their agreement otherwise, the LBO Lenders would have been permitted to share in the DCL Litigation Trust proceeds on a *pro rata* basis.  This is wrong.  Well-settled law dictates that the LBO Lenders cannot benefit from the LBO to which they consented and in which they participated.  *See, e.g., In re Labelon Corp.*, No. 02-02-22582, 2006

WL 2516386, at *4 (Bankr. W.D.N.Y. Aug. 28, 2006); *Harris v. Huff (In re Huff)*, 160 B.R. 256, 261 (Bankr. M.D. Ga. 1993).

4.     The DCL Plan Proponents' efforts to distinguish these cases, by arguing that they rest "on a finding of wrongdoing," or "reliance on an affirmative representation" are unavailing. DCL Objection at 5-6.  For example, in *In re Labelon Corp.*, neither of these factors were present.  Rather, in denying a trustee's motion to amend a complaint to assert fraudulent conveyance actions, the court found that if the subject transaction "was in whole or in part a fraudulent conveyance," Congress, as a creditor who "knowingly and actively participated in and benefitted from that participation . . . should not be rewarded for it." 2006 WL 2516386, at *4. While the court went on to make an additional finding that the defendant to the proposed fraudulent conveyance action "should be entitled to rely on" Congress's consent to the transaction, given that Congress was a "sophisticated commercial entit[y]" that was aware of the debtors' "dire financial situation," these findings are unrelated to the court's earlier decision that Congress's consent to the transaction, alone, precluded it from benefitting from the transaction's avoidance.

5.     Moreover, these findings do not distinguish *Labelon* from the present case.  It cannot be reasonably disputed that the LBO Lenders are "sophisticated commercial entities," or that they were intimately aware of Tribune's financial condition when they consummated the LBO.  Nevertheless, such findings are not necessary to a holding that the LBO Lenders cannot benefit from causes of action arising from the LBO.

6.     Similarly, the courts in both *Harris v. Huff (In re Huff)*, 160 B.R. at 261  and *In re Adelphia Recovery Trust*, 634 F.3d 678, 695 (2d Cir. 2011) found that a creditor who had consented to a transaction was estopped from later benefitting from an action against a third

party seeking the transaction's avoidance, and neither case involved a finding of wrongdoing by the estopped creditor.

7. Finally, the cases cited by the DCL Plan Proponents in support of their position that, absent their agreement otherwise, the LBO Lenders would have been able to share in the DCL Litigation Trust on a *pro rata* basis are inapposite. DCL Confirmation Brief at 142-44 (citing *In re Best Prods. Co.*, 168 B.R. 35, 57-59 (Bankr. S.D.N.Y. 1994); *Buffum v. Peter Barceloux Co.*, 289 U.S. 227, 237 (1933); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 553, 560 (N.D. Ill. 1994)). None of these cases address the question of whether a creditor may benefit from actions arising from a transaction to which it consented, or whether a creditor who settles a fraudulent conveyance action for cents on the dollar may then benefit from similar actions brought against others. Rather, these cases stand for the propositions that, (i) absent a showing of wrongdoing, the claim of a creditor who was a recipient of a fraudulent transfer may be allowed, once the creditor has returned *in full* the fraudulently conveyed property, or its value, to the estate, and (ii) if the creditor's claim is allowed, the creditor may share in distributions arising from the returned value or property. *See Best Prods.*, 168 B.R. at 57-59; *Buffum*, 289 U.S. at 237; *Telesphere Commc'ns*, 179 B.R. at 553, 560. The Noteholder Plan Proponents do not dispute these tenets. They are not inconsistent, however, with the equally well-settled case law holding that where a creditor consented to a transaction, the creditor may not benefit from actions against third parties that arise from that transaction, even if the creditor's claim is otherwise allowed. *See, e.g., In re Labelon Corp.*, 2006 WL 2516386 at *4; *In re Huff*, 160 B.R. at 261.

8. In light of this case law, permitting the LBO Lenders to participate in the DCL Litigation Trust proceeds *in any manner* is unjust. Far from serving as additional consideration

for Non LBO Creditors, this participation scheme actually *confers a benefit* on the LBO Lenders, and *deprives* Non LBO Creditors of value to which they would otherwise be entitled.

9. Moreover, the LBO Lenders' participation in the DCL Litigation Trust could significantly dilute the trust distributions. As set forth in the Motion, it is a certainty that defendants to the *FitzSimons* Action will argue that the DCL Litigation Trust is legally precluded from asserting claims against them on behalf of the LBO Lenders, just as DCL Plan Proponent JPMorgan, in its capacity as a defendant to a fraudulent conveyance action brought against it by the Lyondell Chemical Company litigation trustee, argued with respect to the lenders who participated in the Lyondell LBO. *See* NPP 2520 (Lyondell Motion to Dismiss) at 44-47 (citing, *In re Refco, Inc. Sec. Litig.*, No. 07-MDL-1902, 2009 WL 7242548, *11 (S.D.N.Y. Nov. 13, 2009)). Such an argument, if successful, would limit the amount the DCL Litigation Trust could pursue—and recover—to the amounts owed to Tribune's Non-LBO Creditors, notwithstanding that the Decision could still require such Non-LBO Creditors to share those recoveries with the LBO Lenders. Such an incompatible and unjust result cannot stand. The Noteholder Plan Proponents thus respectfully request that, to the extent the Court intended to approve the LBO Lenders' participation in the DCL Litigation Trust, such approval be reconsidered and reversed.

**II.      The Court's Approval Of The Proportionate Judgment Reduction Method In The Bar Order Was Clear Error And Results In Manifest Injustice**

10. In the Motion, the Noteholder Plan Proponents requested that the Court reconsider its approval of the proportionate judgment reduction method in the Bar Order (assuming *arguendo* that any contribution or indemnification claims against one or more Released Parties even exists)[3] and hold that any judgment reduction should be on a *pro tanto* basis, or

---

[3] The issue of whether any or all of the non-settling defendants have any rights of contribution or non-contractual indemnification against the Released Parties was not before this Court and the Noteholder Plan Proponents do not in any way concede any such rights or claims exist by the arguments made in this Motion. The

5

alternatively, the judgment reduction methods in the applicable state law statutes in Massachusetts, Illinois, and New York should govern the State Law Actions.  As discussed herein, the objections filed by the DCL Plan Proponents,[4] Directors and Officers, and EGI-TRB as to this issue lack merit and fail to advance sound reasons as to why the Noteholder Plan Proponents' requested relief should not be granted.  Critically, none of the objectors directly address the Noteholders' principal argument—that the Court's rationale for finding the proportionate judgment reduction method to be fair as applied to the facts of this case—was flawed.  *See* Motion at 11, 12-16.  Rather, each of the objectors place undue emphasis on *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995), a case that does not require the proportionate judgment reduction method to be applied in all instances and is inapposite in so far as the non-settling plaintiffs in this case did not negotiate the Bar Order and have objected to the DCL Plan Settlement.

### A. The Fairness Of The Bar Order Is Not A New Issue, And There Is No Waiver By The Noteholder Plan Proponents In Respect To The Proper Judgment Reduction Method

11. The Noteholder Plan Proponents' Motion for this Court to reconsider its approval of the proportionate judgment reduction method contained in the Bar Order clearly meets the standard for reconsideration under Federal Rule of Civil Procedure 59(e).  *See* Motion at 3-4. The objectors contend that the judgment reduction method cannot be reconsidered because it is a "new" issue.  *See, e.g.,* DCL Objection at 7-8.  And while they have no choice but to admit that the Bar Order was "hotly debated before this Court" (D&O Objection at 2), they now complain

---

Bar Order itself explicitly states it is without prejudice to this issue, and case law cited by the DCL Plan Proponents establishes that no such rights exist.  *See* Motion at 11 n.7.

[4] The DCL Objection with respect to the judgment reduction method contemplated by the Bar Order and insistence that it remain proportionate is at odds with the DCL Plan Proponents' prior statement that they had no preference—or had "no dog in that fight"—as to which judgment reduction method applied.  *See* Motion at 15-16 (quoting 4/13/2011 Trial Tr. 143:23-144:6) (Moskowitz)).

that the Noteholder Plan Proponents raise the *pro tanto* judgment reduction method for the first time in this Motion. *See* DCL Objection at 7-8; D&O Objection at 3-4. This objection lacks merit for several reasons.

12. First, the fairness of the Bar Order and the proportionate judgment reduction method are *not* new issues from any perspective. Indeed, the Noteholder Plan Proponents have raised objections to the Bar Order's proportionate judgment method and its unfair consequences on the non-settling plaintiffs, as well as their preference for the *pro tanto* judgment method in connection with the Confirmation proceedings. *See* NPP Objection to Confirmation of the DCL Plan [ECF No. 8013] at 176 (the Bar Order "is highly unfair to the . . . Non-LBO Creditors."); NPP Post-Trial Brief [ECF No. 8898], at 77 ("the DCL Plan Proponents are asking this Court to prospectively . . . impose *proportionate* judgment reduction") (emphasis in original); *id.* at 78 ("Moreover, independent of the material affect it may have at trial, *proportionate judgment reduction* will hand the non-settling defendants an enormous weapon in settlement negotiations . . . .") (emphasis added); NPP Proposed Findings of Fact [ECF No. 9064], at 211 ("the Creditors' Committee had no incentive to oppose the Bar Order or push for a more favorable form of judgment reduction that would not adversely affect the recovery of Litigation Trust interests."); 4/13/2011 Trial Tr. 137:24-138:6 (Pachulski) and 139:1-8 (Golden) (adopting Bar Order arguments including the adoption of the *pro tanto* method made by counsel for Brigade Capital Management).[5]

13. Second, the Noteholder Plan Proponents' principal basis for their argument is that the *rationale* for the Court's Decision regarding the fairness of the DCL Settlement was

---

[5] In particular, contrary to assertions by the Directors and Officers, the comments made by counsel for Aurelius were clearly sufficient for the Noteholder Plan Proponents to adopt the arguments in favor of the *pro tanto* method made by counsel for Brigade Capital Management, particularly in light of the Court's encouragement to parties to avoid duplicative presentations.

7

insufficient to support a finding that the proportionate judgment reduction method was fair and reasonable to all parties—particularly as it relates to the non-settling plaintiffs.  *See* Motion at 12-16.  It is entirely proper to request a court to reconsider its decision when it appears that it may have overlooked a legal or factual matter that might alter the conclusion reached by the court, especially where, as here, the Noteholders respectfully submitted that the evidentiary record was insufficient for the Court to properly reach its conclusion.  *See* Motion at 3-4.  Given the lack of an adequate evidentiary foundation to impose proportionate judgment reduction, and given this Court's view that a bar order should be included (which was not challenged for purposes of this Motion), the Noteholder Plan Proponents simply argued for the *pro tanto* method as the method which was *more fair* under the facts and circumstances of this case, rather than that there should be no bar order altogether.[6]

14.     Accordingly, the Noteholder Plan Proponents are not foreclosed from pursuing relief respecting the Bar Order by way of reargument.

### B. The Objectors' Reliance On *Eichenholtz* Is Misplaced

15.     The objectors' characterization of *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) as the equivalent of a bright line rule in this Circuit requiring the application of the proportionate judgment reduction method in all cases is simply wrong.  *See* DCL Objection at 8-9 (referring to "the Third Circuit's clear pronouncement on this very issue"); D&O Objection at 5-6 ("*Eichenholtz*…states that the proportionate judgment reduction method is the 'fairest method' to use in connection with a bar order"); EGI Objection at 2-3 (same).  In fact, the Third Circuit did not hold in *Eichenholtz* that the proportionate judgment reduction method is the only

---

[6] The contention that the Noteholder Plan Proponents should have raised its alternative arguments regarding the application of the judgment reduction methods pursuant to the state statutes of Massachusetts, Illinois and New York in the State Law Actions even before such actions were commenced (*i.e.* before the applicable state law was invoked or even fully settled), should be rejected.  *See* D&O Objection at 5.

8

permissible method for judgment reduction in all cases imposing a bar order. In affirming the trial court's decision approving the proportionate judgment method in the context of a partial settlement in a securities litigation, the Court recognized in cases involving *federal* securities laws that a nationwide or uniform federal rule was preferable. *Eichenholtz*, 52 F.3d at 486-87. It further noted that neither of the other "commonly used setoff methods . . . the pro tanto method or the pro rata method," were at issue in the case, and therefore, were not addressed by the Third Circuit. *Id.* at 487 n.15.[7]

16. Moreover, the bar order in *Eichenholtz* did not impact in any way the rights of non-settling plaintiffs as it does here. The Court assumed that the plaintiff had negotiated and assented to the settlement and accompanying bar order and thus appropriately bore the risk of a "bad" settlement. 52 F.3d at 487 ("The risk of a 'bad' settlement falls on the plaintiffs, who have a financial incentive to make certain that each defendant bears its share of the damages.").[8] In contrast, under the circumstances of this case where the Noteholders have objected to the DCL Plan Settlement and had no say in the amount of the settlement or the terms of the Bar Order, the Court should factor into its analysis whether the judgment reduction method was fair to the non-settling plaintiffs. *See* Motion at 13-14; *see also* Decision at 75 ("the Noteholders (or other state court plaintiffs) did not negotiate or consent to the DCL Plan Settlement.").

17. For purposes of this Motion, the Noteholder Plan Proponents do not dispute that *Eichenholtz* and federal law express a preference for proportionate judgment reduction in respect

---

[7] *Eichenholtz,* which only had three non-settling defendants, is a far cry from the level of complexity presented here with pending State Law Actions involving more than a thousand non-settling defendants in dozens of jurisdictions, in addition to the other proceedings, that have been commenced. The procedural context, assuming *arguendo* that contribution and/or indemnification rights exist and judgment reduction methods were to apply, make this truly a case of first impression with respect to judgment reduction.

[8] For similar reasons, the Third Circuit in *Eichenholtz* found that the Supreme Court's rationale in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994) which arose in the federal admiralty context was applicable to its case. 52 F.3d 487 n.16. There, in addition to fashioning a uniform rule apportioning damages in the admirality context, the rights of non-settling plaintiffs also were not at issue.

of federal claims. Rather, the Noteholder Plan Proponents contend that no adequate showing was made in the record to substantiate the proportionate judgment reduction as being fair and reasonable for all claims against the non-settling defendants (assuming *arguendo* that any contribution or indemnification claims even exists, which the Noteholders contend they do not) and that the Court's rationale, as discussed below, for finding it to be fair and reasonable was flawed, thereby constituting clear error of law or resulting in manifest injustice. *See* Motion at 12-16.

### C. The Objectors Fail To Address The Noteholders' Principal Contention That The Court's Rationale For Finding The Proportionate Reduction Method As Fair And Reasonable Was Flawed

18. The DCL Plan Proponents misconstrue the Noteholder Plan Proponents' Motion seeking reconsideration of the Court's approval of the proportionate judgment reduction method as a "backdoor" attempt by the Noteholders to re-litigate the reasonableness of the DCL Plan Settlement as a whole. DCL Objection at 10. To the contrary, the Noteholders made clear in its Motion that it does not seek through the Motion to re-litigate the fairness of the settlement nor the validity of a Bar Order itself; rather the Noteholder Plan Proponents assert that the Court was required to engage in an analysis or a reasoned determination as to the fairness of the judgment reduction method based on the circumstances of this case, and that it could not merely rely on the fact that it approved the DCL Settlement. *See* Motion at 11, 12-16.

19. None of the three objectors address the merits of the Noteholders' principal contention that the Court's *rationale*—for approving the proportionate judgment reduction method as fair and reasonable—was flawed. However, as discussed in the Motion and herein, the Court should have made an independent finding regarding the reasonableness of the judgment reduction method—which it did not do in its Decision—rather than rely on its approval of the DCL Plan Settlement overall. *See* Motion at 12-16 (citing *Gillman v. Continental Airlines*,

10

203 F.3d 203 (3d Cir. 2000))[9]; *see also Atl. Richfield Co. v. Am. Airlines, Inc.*, 836 F. Supp. 763, 776 (N. D. Okla. 1993) ("It is important to note that the court's application of the proportionate or *pro tanto* approach is discretionary and is to be determined on a case by case basis.").

20. Contrary to what the DCL Plan Proponents suggest, the Court's canvassing exercise to determine whether a settlement falls within the lowest rung of reasonableness under applicable 9019 standards should not have controlled the Court's evaluation of the fairness of the judgment reduction method in the Bar Order to the non-settling plaintiffs. Significantly, with respect to the Court's 9019 analysis, Tribune's capital structure and the Court's assessment that the success of the WEAR remedies advocated by the Noteholder Plan Proponents were an "uphill battle"—which clearly factored into the Court's conclusion that the DCL Plan Settlement was reasonable—are entirely irrelevant to the reasonableness of the judgment reduction method in the Bar Order. *See* Motion at 14-15. To illustrate this point, as argued in the Motion, *if* contribution claims were asserted here against the settling defendants (and found to be valid as a matter of law), the settling defendants could not, in turn, invoke Tribune's capital structure—*i.e.*, the fact that the LBO debt had subsidiary guarantees while the Senior Notes and PHONES did not—to reduce their contribution liability, which the objectors fail in whole cloth to address. *Id.* at 15.

21. Under the circumstances of this case, where there are non-settling plaintiffs in addition to non-settling defendants, the Court's analysis of the Bar Order warranted a review of

---

[9] Although EGI-TRB acknowledges that the Court properly analyzed the fairness of the Bar Order pursuant to the standards in *Continental*, it misunderstands the nature of the analysis that *Continental* required by arguing that this Court need not do more than find the overall settlement consideration to the plaintiffs to be fair. *See* EGI Objection at 5-6. To the contrary, in the context of non-consensual releases, *Continental* required "specific factual findings" to support that releases of non-debtors from third party actions were fair, which the Third Circuit concluded was lacking in the evidentiary record before the bankruptcy and district courts. 203 F.3d at 214-17. Notably, relying on *Continental*, the Bankruptcy Court in *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), engaged in a painstaking review of non-consensual releases as they applied to a variety of claims and analyzed the fairness of those releases to the non-consenting creditors. *Id.* at 602-08.

whether the judgment reduction method was fair and reasonable to the non-settling plaintiffs, *e.g.*, the pre-LBO creditors. *See* Motion at 12-13. In doing so, that review should have included whether the settlement consideration contributed by the settling defendants was a reasonable approximation of their fault when compared to the non-settling defendants. *Id.*

### D. Applying Applicable State Law On Judgment Reduction (Assuming *Arguendo* A Contribution Right Exists) To The State Law Actions Is Appropriate And Warranted

22. Contrary to the contentions of EGI-TRB and the Directors and Officers, applying the judgment reduction method of the applicable state law contribution statutes to the State Law Actions would not result in a so-called "crazy quilt" of judgment reduction methods, but instead result in a workable and appropriate setoff provision in the Bar Order. *See* D&O Objection at 7; EGI Objection at 7-8. Only three state statutes could possibly apply: Illinois (where the LBO was negotiated and where Tribune is headquartered), Massachusetts (where the shares were tendered and from where the LBO payments were distributed to shareholder), or New York (where the majority of state law defendants and creditors who were injured by the LBO reside). *See* Motion at 17.

23. Courts routinely apply the state law contribution statutes to state law claims, even in cases pending in federal court and involving both state and federal claims. *See* Motion at 17-18 (citing *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL-1446, 2008 WL 2566867 (S.D. Tex. June 24, 2008)). The DCL Plan Proponents contend that this Court is not "required" to apply state law contribution statutes to the State Law Actions. DCL Objection at 11-12.[10] This is true, but misses the mark. It is entirely appropriate for this Court to determine

---

[10] Similarly, the cases cited by the DCL Plan Proponents also do *not* compel this Court to disregard applicable state law or to approve a uniform judgment method in the Bar Order. *See* DCL Objection at 11 (citing *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297 (2d Cir. 2003) and *In re Kendall Square Research Corp. Sec. Litig.*, 869 F. Supp. 53 (D. Mass. 1994)). *Gerber* and *Kendall* merely acknowledge the judge's discretion to approve

12

that the judgment reduction method specified in the applicable state law should apply to the State Law Actions, as other courts have done. *See* Motion at 17-18 (citing *Whyte v. Kivisto (In re SemCrude. L.P)*, No. 08-11525 (BLS), 2010 Bankr. LEXIS 4160 (Bankr. D. Del. Nov. 19, 2010)). Indeed, doing so as an alternative to a blanket imposition of the proportionate judgment method in all instances for federal and state law claims, is appropriate and addresses at least, in part, the particular inequities resulting from imposing the proportionate judgment reduction method on the non-settling plaintiffs, as discussed above.

24.     The Directors and Officers' objections to the application of state statutes to the state law claims are equally flawed. *See* D&O Objection at 7. They contend that the Noteholders fail to suggest how certain procedural safeguards in the applicable state laws such as that the settlement at issue be negotiated in good faith would work, which flies in the face of the Court's Decision regarding the reasonableness of the settlement, which, in turn, serves as the basis for the Bar Order being approved by the Court in the first place. *Id.* at 7 n.6. In addition, the notion that somehow aligning the judgment reduction method with the applicable state law results in forum shopping is illogical, because the State Law Actions have been commenced and already are pending. *Id.*

---

a bar order with a judgment reduction method that is not aligned with state law where federal claims, including securities claims, were at issue. On the other hand, a case cited by EGI-TRB *would obligate* this Court to apply the state law contribution statutes. EGI Objection at 7-8 (citing *Slaven v. BP Am., Inc.*, 958 F. Supp. 1472 (C.D. Cal. 1997)). In *Slaven*, the Central District of California held that "the case law is clear that state settlement provisions amount to substantive, rather than purely procedural, law," that a federal court is "bound to apply state substantive law", and that *were it not for an express conflict with substantive federal law, the court would be "**bound to apply the settlement procedures to state causes of action because they are outcome determinative**.*" 958 F. Supp. at 1477-78 (emphasis added). Indeed, the *only* reason that the court did not apply the state contribution law to the state law claims in that case, is because the case fell into the "limited situation[] where there is a significant conflict between some federal policy or interest and the use of state law"—in particular, the "federal interest in the uniform application of maritime law." *Id.* at 1478, 1479. This case does not involve the need for a uniform federal approach or compliance with a federal policy, and no such conflict exists here. In other words, there is no federal statute or policy that would be interfered with by the use of state law *pro tanto* judgment reduction. Thus, it is noteworthy that under *Slaven*'s rationale, this Court *would* be obligated to apply the state law contribution statutes to the State Law Actions.

13

25. Finally, that the judgment reduction provisions of the applicable state laws will govern with respect to the State Law Actions (again, to the extent any valid contribution claims are determined to exist) will not create more work for future courts. It may actually help simplify the judgment reduction process, rather than requiring multiple courts or juries to hear extensive evidence to determine the relative fault of scores of settling and non-settling defendants, which necessarily requires grappling with the complexities of Tribune's LBO. *See Atl. Richfield Co.*, 836 F. Supp. at 775 ("The proportionate rule makes partial settlements enormously difficult. No matter how many parties settle, it still contemplates a full blown trial, where the proportionate responsibility of every remaining and former party to the litigation is determined. The trial task becomes more difficult, and contested fact issues are multiplied, instead of reduced."). Relatedly, the proportionate judgment method will draw unwilling settling defendants back into the orbit of the Tribune related litigation because every court will have to determine their proportionate share of responsibility, whereas the *pro tanto* method truly severs their involvement because reduction is fixed by each defendant's share of the amount of the settlement payments.

26. Here, the *pro tanto* method would entitle all non-settling defendants found to have had a valid right of contribution or non-contractual indemnification against one or more of the non-settling defendants collectively to reduce their liability by the amount paid by such settling defendant(s) in settlement consideration.

27. At a minimum, in light of the conflict with the applicable state laws regarding the pending state law claims against the non-settling defendants, this Court should reconsider its Decision approving the application of the proportionate judgment reduction method in all

instances and apply instead the judgment reduction method in the applicable states' law—*i.e.,* Massachusetts, Illinois or New York—governing the State Law Actions.[11]

### III. The Court Should Clarify That It Has Not Ruled On The Appropriate Method For Valuing The PHONES Notes When Assessing Tribune's Balance Sheet Solvency

28. The Noteholder Plan Proponents sought clarification from this Court that it has *not* ruled on the appropriate method for valuing the PHONES Notes when assessing Tribune's balance sheet solvency because of the possibility that the defendants in the *FitzSimons* Action and the State Law Actions may argue that this Court in fact ruled that the accounting value, rather than face value, of the PHONES Notes should be used. *See* Motion at 19-21. Indeed, the only party that objected to the Noteholder Plan Proponents' request is a group of current and former Directors and Officers of Tribune, each of whom is a defendant to the *FitzSimons* Action. The Directors and Officers assert that "[t]his Court's Opinion is clear and says what it says," but take no position as to whether the Court has in fact ruled on the appropriate method for valuing the PHONES Notes. D&O Objection at 2. Moreover, the Directors and Officers posit that the "Noteholder Plan Proponents' proposal creates more issues than it resolves," but do not cite any examples of such supposed "issues." D&O Objection at 8. The Noteholder Plan Proponents respectfully submit that, given the complex nature of these bankruptcy cases and the litigation that they have given rise to, all parties will benefit from more certainty, rather than less. The Noteholder Plan Proponents thus respectfully reiterate their request that the Court clarify that it did not intend to rule upon the appropriate method for valuing the PHONES Notes when performing a balance sheet solvency analysis.

---

[11] As evidenced by the ongoing dispute between the parties regarding the fairness of the proportionate judgment method in the Bar Order, this issue is not now moot, notwithstanding EGI-TRB's arguments to the contrary. *See* EGI Objection at 1-2.

15

**CONCLUSION**

29.  WHEREFORE, for all of the foregoing reasons and those set forth in the Motion, the Noteholder Plan Proponents respectfully request that the Court: (i) enter an order substantially in the form attached to the Motion as <u>Exhibit A</u> (a) reconsidering its apparent determination that the LBO Lenders may share in recoveries arising from the Litigation Trust Causes of Action and holding that the LBO Lenders may not share in such recoveries, (b) reconsidering its approval of the proportionate judgment reduction provision in the Bar Order, and holding that any judgment reduction should be on a *pro tanto* basis, and (c) clarifying that the Court has not determined how the PHONES Notes should be valued for purposes of determining Tribune's balance sheet solvency; and (ii) grant the Noteholder Plan Proponents such other and further relief as is just, proper, and equitable.

Dated: December 9, 2011

| | |
|---|---|
| AKIN GUMP STRAUSS HAUER & FELD LLP | ASHBY & GEDDES, P.A. |
| Daniel H. Golden | |
| David M. Zensky | _____/s/ William P. Bowden_____ |
| Philip C. Dublin | William P. Bowden (I.D. No. 2553) |
| Mitchell P. Hurley | Amanda M. Winfree (I.D. No. 4615) |
| Deborah Newman | 500 Delaware Avenue, P.O. Box 1150 |
| One Bryant Park | Wilmington, DE 19899 |
| New York, NY 10036 | 302- 654-1888 |
| 212-872-1000 | |

*Counsel for Aurelius Capital Management, LP*

| | |
|---|---|
| McCARTER & ENGLISH, LLP | McCARTER & ENGLISH, LLP |
| David J. Adler | |
| 245 Park Avenue | _____/s/ Katharine L. Mayer_____ |
| New York, NY 10167 | Katharine L. Mayer (I.D. No. 3758) |
| 212-609-6800 | Renaissance Centre |
| | 405 N. King Street |
| | Wilmington, DE 19801 |
| | 302-984-6300 |

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

| | |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | BIFFERATO GENTILOTTI LLC |
| David S. Rosner | _____/s/Garvan F. McDaniel_____ |
| 1633 Broadway | Garvan F. McDaniel (I.D. No. 4167) |
| New York, New York 10019 | 800 N. King Street, Plaza Level |
| 212-506-1700 | Wilmington, Delaware 19801 |
| | 302- 429-1900 |

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

| | |
|---|---|
| BROWN RUDNICK LLP | SULLIVAN HAZELTINE ALLINSON LLC |
| Robert J. Stark | |
| Martin S. Siegel | _____/s/ Elihu E. Allinson, III_____ |
| Gordon Z. Novod | William D. Sullivan (I.D. No. 2820) |
| Seven Times Square | Elihu E. Allinson, III (I.D. No. 3476) |
| New York, NY 10036 | 901 N. Market St., Suite 1300 |
| 212-209-4800 | Wilmington, DE 19801 |
| | 302-428-8191 |

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*