# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------x
In re:                                          :        Chapter 11 Cases
                                                :        Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                        :        (Jointly Administered)
                                                :
                          Debtors.              :
                                                :        Hearing Date:  December 14, 2011 @ 1:30 p.m.
----------------------------------------------------x    Related Dkt. Nos. 10133, 10134, 10222, 10365, 10371
```

## JOINT REPLY OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERICAS IN FURTHER SUPPORT OF THEIR REQUEST FOR RECONSIDERATION OF THE COURT'S CONFIRMATION OPINION WITH RESPECT TO THE SUBORDINATION OF THE PHONES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

REPLY ......................................................................................................................................... 3

I.    Legal Standard ................................................................................................................... 3

II.   The PHONES Indenture Does Not Limit The Scope Of The Subordination
      Provisions ......................................................................................................................... 5

      A.    Illinois Contract Interpretation Law Governs ...................................................... 5

      B.    This Court Should Reject Wilmington Trust's Contorted Interpretation of
            the Term "Company" Under the PHONES Indenture ........................................... 6

      C.    Contract Interpretation Rules Mandate That The Introductory Clause of
            Section 14.02 Be Read As Condition Precedent To Subordination ..................... 10

      D.    Sections 5.05 and 5.10 Do Not Provide A Basis For Limiting The Scope
            of the Subordination Provisions .......................................................................... 13

      E.    The PHONES Prospectus Is Properly Before This Court If the Court Finds
            the Indenture Ambiguous .................................................................................... 14

III.  The Movants' Motion For Reconsideration Regarding The Confirmation Opinion
      Is Properly Before This Court ......................................................................................... 16

IV.   EGI-TRB's Subordination Argument Is Subject To The Same Flaws As
      Wilmington Trust ............................................................................................................ 17

CONCLUSION ........................................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cellco P'ship v. Commc'n. Workers,*
    2003 U.S. Dist. LEXIS 26823 (D.N.J. Dec. 11, 2003) .........................................................15

*In re Krump,*
    89 B.R. 821 (Bankr. D.S.D. 1988) .....................................................................................16

*In re Res. Am. Secs. Litig.,*
    2000 U.S. Dist. LEXIS 10640 (E.D. Pa. July 26, 2000) .......................................................16

*In re Tamcke,*
    2010 Bankr. LEXIS 168 (Bankr. D. Mont. Jan. 14, 2010) ....................................................17

*In re Teixeira,*
    358 B.R 484 (Bankr. D.N.H. 2006) ....................................................................................16

*In re Tudor,*
    342 B.R. 540 (Bankr. S.D. Ohio 2005) ...............................................................................12

*In re Vincente,*
    257 B.R. 168 (Bankr. E.D. Pa. 2001) .................................................................................16

*In re Weiss,*
    251 B.R. 453 (Bankr. E.D. Pa. 2000) .................................................................................17

*In re Wilson,*
    2008 WL 483091 (Bankr. D. Mass. Oct. 28, 2008) .............................................................17

*Karr v. Castle,*
    768 F. Supp. 1087 (D. Del. 1991) .......................................................................................4

*Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros,*
    176 F.3d 669 (3d Cir. 1999) ...............................................................................................4

*Meserole v. Sony Corp. of Am.,*
    2009 WL 2001451 (S.D.N.Y. July 9, 2009) .......................................................................17

*Miniat v. Ed Miniat, Inc.,*
    315 F.3d 712 (7th Cir. 2002) .............................................................................................12

*O'Kane v. Apfel,*
    224 F.3d 686 (7th Cir. 2000) .............................................................................................12

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re*
    *Cybergenics Corp.),* 226 F.3d 237 (3d Cir. 2000) ..........................................................2, 5, 6

*Oran v. Stafford,*
    226 F.3d 275 (3d Cir. 2000) .............................................................................15

*Panichelli v. GE,*
    146 Fed. Appx. 572 (3d Cir. 2005) .......................................................................4

*Renfro v. Unisys Corp.,*
    2011 U.S. App. LEXIS 17208 (3d Cir. Aug. 19, 2011) ...........................................15

*Salvatore v. Gelburd,*
    565 N.E.2d 204 (Ill. App. Ct. 1st Dist. 1990) .......................................................11

*St. Louis v. Morris,*
    2006 U.S. Dist. LEXIS 69108 (D. Del. Sept. 22, 2006) ............................................4

*Szilagyi v. Chi. Am. Mfg., LLC (In re Lakewood Eng'g & Mfg. Co., Inc.),*
    2011 Bankr. LEXIS 3757 (Bankr. N.D. Ill. Sept. 29, 2011) .....................................15

*Thompson v. Gordon,*
    948 N.E.2d 39 (Ill. 2011) .......................................................................7, 15, 20

*Warner v. King,*
    107 N.E. 837 (Ill. 1915) ..................................................................................12

*Weaver v. Conrail, Inc.,*
    2010 U.S. Dist. LEXIS 69553 (E.D. Pa. July 12, 2010) ..........................................16

**STATUTES**

11 U.S.C. § 301 ..................................................................................................8

11 U.S.C. § 510(a) ..............................................................................................2

11 U.S.C. § 541 ...............................................................................................3, 8

11 U.S.C. § 1101 ................................................................................................8

**RULES**

Fed. R. Bankr. P. 9023 .........................................................................................3

Fed. R. Civ. P. 59 ...............................................................................................3

Fed. R. Evid. 201 .........................................................................................15, 16

**OTHER AUTHORITIES**

Illinois Jurisprudence, Commercial Law § 5:5 .............................................................10

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company ("Tribune" and with its debtor subsidiaries, the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A., and Deutsche Bank Trust Company Americas ("DBTCA" and together with Law Debenture, the "Movants"), successor trustee under (i) that certain indenture dated March 1, 1992, by and between Tribune and Continental Bank, N.A.; (ii) that certain indenture dated January 30, 1995, by and between Tribune and First Interstate Bank of California; and (iii) that certain indenture dated January 1, 1997, by and between Tribune and Bank of Montreal Trust Company (collectively, the "Senior Indentures" and the notes and holders of notes issued pursuant to the Senior Indentures, respectively, the "Senior Notes" and the "Senior Noteholders"), hereby file this reply (the "Reply") in support of their *Joint Motion Requesting Reconsideration Of The Court's Confirmation Opinion With Respect To The Subordination Of The PHONES* [Dkt. No. 10222] (the "Motion"), and respectfully represent as follows:

## PRELIMINARY STATEMENT[1]

The only interpretation of the term "Company" used in the PHONES Indenture that comports with the provisions of the Indenture as a whole and avoids nonsensical results is that "Company" includes Tribune and, following its bankruptcy filing, Tribune's bankruptcy estate as its successor entity for these purposes. Any contrary interpretation leads to a nonsensical result; namely, that once Tribune filed for bankruptcy, its assets and any proceeds received from selling those assets are not assets of the "Company" (because they all belong to the estate), and therefore, the subordination provision applies to nothing. In fact, if the arguments advanced by Wilmington Trust Company ("Wilmington Trust") and EGI-TRB LLP ("EGI-TRB") – that

---

[1]       Undefined capitalized terms used in this Reply have the same definitions as in the Motion.

subordination only applies to the distribution of assets of pre-petition Tribune – are taken to their logical conclusion, then not only is subordination limited to the distribution of assets of pre-petition Tribune, but the source of repayment of the PHONES Indenture and the EGI-TRB Note is also limited to the assets of pre-petition Tribune. This is because the pertinent language of both the PHONES Indenture and the EGI-TRB Note relating to repayment of the respective debts include the same or similar language upon which both parties rely on in their argument in support of limited subordination.

Inasmuch as *all* of the Debtor's assets and property have become property of the Debtor's estate post-petition, and none of those assets (or their proceeds) are any longer property of the pre-petition Debtor, there can be no payment other than from the Debtor's estate once a bankruptcy case is commenced. Thus, limiting the definition of "Company" to mean the pre-petition Debtor leads to a result that not even Wilmington Trust and EGI-TRB could seriously intend.

In support of their argument, Wilmington Trust and EGI-TRB improperly shift the focus from the application of state law contract principles to the applicable subordination provisions, to an irrelevant (in this context) distinction between property of the debtor versus property of the estate under *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d Cir. 2000). As stated in the Motion, that distinction is not dispositive for purposes of interpreting the relevant contract because the entire matter is one of Illinois state law contract application. *See* 11 U.S.C. § 510(a). *Cybergenics* has no relevance to the threshold issues of: (1) whether an unconditional prohibition that states that no "payment" can be made on account of principal or interest on the PHONES until Senior Indebtedness

receives "payment in full" means what it says, or (2) whether "Company" as used in the PHONES Indenture includes Tribune's successor bankruptcy estate.

As Movants previously argued, the plain, unambiguous language of § 14.02 of the PHONES Indenture provides that, upon Tribune's bankruptcy, Senior Indebtedness is to be paid in full prior to any payment on the PHONES.  Contrary to Wilmington Trust's arguments, selectively taking into account other provisions of the PHONES Indenture does not change that result.  Rather, considering the PHONES Indenture as a whole as the Court is required to do, mandates that result.  Reading all provisions in their totality it is plain, for example, that:  (1) the *absolute*, *unqualified* subordination provisions in PHONES Indenture § 14.02 do not condition the prohibition on "payment" on account of principal or interest on the PHONES until the prior "payment in full" of Senior Indebtedness on the "payment" being made from assets of the "Company" (if that term had any distinction here from the Debtor's estate) as opposed to other sources; (2) any payment out of Avoidance Action *recoveries* that the Trustee and the Holders may otherwise obtain under the PHONES Indenture must be for the benefit of, and subject to the subordination rights of, the Senior Indebtedness; and (3) the term "Company" broadly includes a "successor" such as the Debtor's bankruptcy estate (a successor being an entity to which all Debtor assets and property are conveyed, which they are under Bankruptcy Code § 541).

Thus, based upon a clear and plain reading of the PHONES Indenture, Movants respectfully request that the Court modify the Confirmation Opinion to provide that the Avoidance Action *recoveries* are subject to the PHONES subordination and turn over provisions.

## REPLY

**I.    Legal Standard**

1.    The Movants have satisfied their burden under Fed. R. Civ. P. 59, incorporated by reference in Fed. R. Bankr. P. 9023, to obtain the relief requested in their Motion.  As noted in

the Motion (*See* Motion, ¶ 13), reconsideration is appropriate when the moving party shows "the need to correct a clear error of law or fact or to prevent manifest injustice." *St. Louis v. Morris*, 2006 U.S. Dist. LEXIS 69108, at * 2 (D. Del. Sept. 22, 2006); *see also Panichelli v. GE*, 146 Fed. Appx. 572, 573 (3d Cir. 2005) ("A motion for reconsideration may be granted to prevent manifest injustice.").

2.    Wilmington Trust mischaracterizes the grounds upon which the Movants seek relief by claiming that the Movants may only obtain reconsideration through a showing of something "new." (*See* Wilmington Trust Company's Omnibus Objection To Motions For Reconsideration Of This Court's Decision On PHONES Subordination And The Proceeds Of The Litigation Trust Under the DCL Plan, dated December 6, 2011 [Dkt. No. 10371] ("WT Br."), ¶ 14). That is simply not the law; the introduction of "new" law or evidence is not the only predicate for reconsideration upon which a court may reconsider a prior ruling. *See Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (reversing the lower court's denial of reconsideration, stating "[i]n denying reconsideration ... on this issue, the District Court ruled that there was no intervening change in controlling law or newly discovered evidence; it failed to address the third issue:  whether holding [the appellant] in contempt resulted in a clear error of law or fact or resulted in a manifest injustice."). Here reconsideration is appropriate to correct the legal and factual errors in the Confirmation Opinion resulting from "facts and precedent" being overlooked that "might reasonably have altered the result." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991). (*See* Motion, ¶¶ 17, 18, 21, 22, 25, 30) (granting motion for reconsideration).  Moreover, given the "allocation issues" that have resulted from this Court's interpretation of the subordination provisions at issue here, it is important as a

4

matter of sound judicial administration to correct any error that may have occurred before those additional "allocation issues" are addressed.

## II.    The PHONES Indenture Does Not Limit
The Scope Of The Subordination Provisions

### A.    Illinois Contract Interpretation Law Governs

3.       As mandated by Section 510(a) of the Bankruptcy Code the contract interpretation at issue here is purely a matter of Illinois state law.  Any perceived distinction between the Debtor and the Debtor's estate in either the Bankruptcy Code or the case law simply is irrelevant to the interpretation of contract provisions that do not depend on that distinction. For example, because the term "payment" in the applicable subordination provision is never qualified by the phrase "assets of the Company," the Debtor/estate distinction is irrelevant to the issue of whether the PHONES can receive any "payment" from Tribune or its bankruptcy estate before Senior Indebtedness receives "payment in full."

4.       As more fully set forth in the Motion, the Third Circuit Court of Appeals in *Cybergenics was* neither asked to decide nor did decide whether payments made from Avoidance Action *recoveries* are subject to the contractual subordination provisions of an indenture.  (*See* Motion, ¶¶ 28-31).  Rather, the *Cybergenics* Court simply addressed whether fraudulent transfer claims were included in a sale of the debtor's assets. *See Cybergenics*, 226 F.3d at 244-46.  The Third Circuit held that "the fraudulent transfer *claims*, which state law provided to Cybergenics' creditors, were never assets of Cybergenics, and this conclusion is not altered by the fact that a debtor in possession is empowered to pursue those fraudulent transfer claims for the benefit of all creditors." *Id.* at 245 (emphasis added).  As part of its analysis, the Court relied upon the distinction between property of the debtor and property of the estate, along with "the fact that the sale order and sale agreement authorized the sale of all assets of Cybergenics, not all property of

Cybergenics' bankruptcy estate." *Id.* at 246.  Because the Court found "[i]ssues relating to property of the estate" were "not relevant to the inquiry into whether the fraudulent transfer claims in the Committee's complaint were assets of Cybergenics as debtor or debtor in possession," the Court never addressed whether the asset sale would have included *recoveries* from the avoidance action claims if those *recoveries* had been realized at the time of the sale.  *Id.* at 246.

5.      Here *Cybergenics* does not control.  Even if it did control, however, the issue in the instant dispute is purely contractual:  whether the PHONES Indenture limits subordination to payments made from a particular source.  The short answer is that it does not; the PHONES Indenture provides for a total subordination pending *payment* in full of the Senior Indentures. Whether proceeds of avoidance actions constitute property of the Debtor's estate, property of the Debtor, or both, is inconsequential.  Upon recovery they are used to make payment on the Senior Indebtedness.  Thus, this Court must be guided by Illinois contract law when finding the PHONES Indenture subordination provisions are not limited to distributions of the Debtor's pre-petition assets, which now, of course, are property of the Debtor's estate.

**B.      This Court Should Reject Wilmington Trust's Contorted Interpretation of the Term "Company" Under the PHONES Indenture**

6.      Wilmington Trust ignores the plain meaning of the PHONES Indenture and proffers its own self-serving interpretation of the PHONES Indenture that renders certain provisions of the PHONES Indenture meaningless and illogical.  Indeed, as more fully described below, Wilmington Trust's narrow interpretation of the "Company" as the "pre-petition corporate entity" renders other provisions of the PHONES Indenture, including §§ 4.01 and 14.02, nonsensical.  (*See* WT Br., ¶¶ 2, 16).  The narrow interpretation of "Company" as solely a pre-petition entity must be rejected because it runs afoul of basic contract interpretation, which

6

requires the court to construe the contract "as a whole, viewing each provision in light of the other provisions." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). (*See* Motion, ¶ 16).

7.      First, the subordination provisions in the PHONES Indenture clearly pertain to circumstances when the Company is in bankruptcy. For instance, the following provision in § 14.02 uses the term "Company" to mean a post-petition estate as it states:

> In the event that, notwithstanding the foregoing provisions of this Section 14.02, the Trustee or the Holder of any Security of any series shall receive any ***payment or*** distribution of assets of the Company of any kind or character, . . . , before all Senior Indebtedness is paid in full or payment thereof provided for, . . . , ***then and in such event such payment or distribution shall be paid over or delivered forthwith to the trustee in bankruptcy, receiver, liquidating trustee, custodian, assignee, agent or other Person making payment or distribution of assets of the Company for application to the payment of all Senior Indebtedness remaining unpaid, to the extent necessary to pay all Senior Indebtedness in full, after giving effect to any concurrent payment or distribution to or for the holders of Senior Indebtedness.***

PHONES Indenture, § 14.02 (emphasis added).

8.      By definition, the above provision's intent is to provide for circumstances in which a trustee in bankruptcy, receiver or liquidating trustee makes payments to the PHONES before all "Senior Indebtedness is paid in full." This is precisely the kind of payment at issue here.

9.      Second, another part of § 14.02 of the PHONES Indenture refers to the effect of subordination in the event of "any insolvency or bankruptcy case or proceeding." PHONES Indenture, § 14.02. In other words, the subordination provisions in the PHONES Indenture become operative when the Company is in bankruptcy. If "Company" was limited to only the pre-petition entity, this section would be reduced to a nullity. It is at least implausible – if not outright absurd – if the event that puts subordination into effect could also be the very event that eliminates subordination.

10.     Third, § 1.09 of the PHONES Indenture expressly provides that, "all consents and agreements in this Indenture by the Company shall bind its successors and assigns, whether expressed or not." Further, § 8.02 of the PHONES Indenture provides, in pertinent part, that "the successor corporation . . . to which such conveyance, transfer or lease is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor corporation had been names as the Company herein . . . ." PHONES Indenture, § 8.02.[2] Plainly, for these purposes of payments on Tribune's debts, Tribune's bankruptcy estate is the "successor" to Tribune. Upon Tribune's Chapter 11 bankruptcy filing – as Wilmington Trust concedes – "all assets of the pre-petition entity immediately and automatically become part of this new legal vessel." (WT Br., ¶ 16) *See* 11 U.S.C. §§ 301, 541, 1101. Thus, under this rubric, immediately upon Tribune's bankruptcy filing, the bankruptcy estate became the "successor" to Tribune and subject to all covenants to which Tribune was subject for purposes of interpreting the PHONES Indenture.

11.     Fourth, Wilmington Trust attempts a "common sense" argument that runs afoul of the plain meaning of the PHONES Indenture. Wilmington Trust claims that there is a "lender and market expectation that § 14.02 would be carefully tailored to the repayment of the loan by the borrower (Tribune Company) or the distribution of assets of the borrower (Tribune Company)." (*See* WT Br., ¶ 35). In fact, lenders and the market would probably be astonished to learn that the effects of what they likely believed was a full subordination of the PHONES to Senior Indebtedness in fact meant that holders of the PHONES would benefit at the expense of

---

[2]     To the extent that Wilmington Trust or EGI-TRB argue that the requirements of § 8.01 of the PHONES Indenture were not satisfied and in some manner restricted the transfer of Tribune's assets to its bankruptcy estate, that fails under Bankruptcy Code § 541(c)(1)(A) ("an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law — (A) that restricts or conditions transfers of such interest by the debtor.") .

the holders of Senior Indebtedness if the Debtor fraudulently conveyed its assets before

bankruptcy. Further, Wilmington Trust's purported "common sense" argument ignores the fact,

as discussed above, that the PHONES Indenture contemplates successors to Tribune as bound by

the obligations of the Company and that payments are coming from Tribune's successor, *i.e.*,

Tribune's estate.

12.     Also in terms of "common sense", what does a bankruptcy estate do when it

prosecutes avoidance actions and recovers proceeds during the course of the case? Are these

proceeds not subject to subordination? Is the debtor in possession obligated to create a special

account to earmark these recovered funds for *pari passu* distribution among seniors and juniors

unlike all other payments. Estate funds that would be subject to subordination are being used to

fund the prosecution of an avoidance action that will produce proceeds that assertedly would not

be subject to subordination. That does not make common sense. Consider a preference

payment. The day before bankruptcy a defaulted debtor had $1,000 to pay its creditors. That

payment would go to the seniors without argument. The day after bankruptcy the creditor

returns the preference, but now it goes to both the seniors and the juniors *pari passu*. Movants

suggest that that cannot be the correct outcome.

13.     Other incongruous results under the PHONES Indenture would also follow from

Wilmington Trust's nonsensical distinction that the subordination provisions of the PHONES

Indenture only apply with respect to those payments made by pre-petition Tribune rather than

those payments made by Tribune's estate. For instance, § 4.01 of the PHONES Indenture states

in relevant part, that satisfaction and discharge of the obligations under the PHONES Notes is

complete when: "the Company . . . has deposited or caused to be deposited with the Trustee as

trust funds in trust for the purpose an amount in Dollars sufficient to pay and discharge the entire

indebtedness on such Securities." PHONES Indenture, § 4.01. Under Wilmington Trust's narrow interpretation of the term "Company," the only payments that could count for purposes of § 4.01 would be those that came from pre-petition Tribune. Also, if Tribune's estate is not treated as a "successor" to Tribune's obligations for purposes of construing the PHONES Indenture, then, applying Wilmington Trust's illogical interpretation of § 14.02 to the PHONES Indenture as a whole would result in the PHONES Holders having no legal basis to collect repayment of their indebtedness from the Tribune's bankruptcy estate.

### C.    Contract Interpretation Rules Mandate That The Introductory Clause of Section 14.02 Be Read As Condition Precedent To Subordination

14.    Wilmington Trust further argues that the Movants are disregarding the introductory clause of § 14.02 – "*upon* any distribution of assets of the Company" (emphasis added) – in violation of contract interpretation rules by reading that introductory clause as part of a condition precedent to the application of the substantive subordination provisions contained in § 14.02 (A) and (B). (WT Br., ¶ 25-27). However, the word "upon" is itself a word of condition precedent. Moreover, as more fully set forth in the Motion, the "upon distribution of assets of the Company" clause is not disregarded but is read in conjunction with subparagraphs (1), (2), and (3) as part of the entire condition precedent. This introductory clause is part and parcel of the condition precedent signifying "when" subordination under § 14.02 applies. *See* Illinois Jurisprudence, Commercial Law § 5:5 ("A 'condition precedent' is a condition which must be performed before a contract becomes effective or before a party to an existing contract is obligated to perform."). In other words, under § 14.02 (A), *if assets of the Company are distributed* for the reasons set forth in § 14.02 (1), (2) or (3), *then and in such event* under subparagraph (A) the Senior Indebtedness will be paid in full. (Motion, ¶ 17).

15.     Notably, subparagraph (A) of § 14.02 contains no reference to "assets of the Company" or any other purported limitation.  It is an absolute subordination provision requiring payment in full of the Senior Indebtedness prior to any payment of the PHONES Notes.

16.     Contrary to Wilmington Trust's assertions, its interpretation of the introductory clause is not consistent with § 14.02 (B).  If the introductory clause referenced above dealt with the payments subject to subordination rather than part of a temporal condition precedent, the repetition of that same clause in subparagraph (B) would be superfluous.  Instead, the correct reading of § 14.02 (B) is that the section is intended to address a more specific scenario – where the PHONES Notes would be entitled to receive payment or distribution of assets of the Company but for the subordination provisions – to ensure that the PHONES Notes are completely subordinate to the Senior Indebtedness under every scenario.

17.     Additionally, as addressed in the Motion, subparagraph (B) of § 14.02 separately applies to (i) "any payment" and (ii) "distribution of assets of the Company."  PHONES Indenture, § 14.02.  Thus, the PHONES Indenture clearly differentiates between a "payment" and a "distribution."  If "payment" and "distribution" meant the same thing, then one of those terms would be superfluous; as the Wilmington Trust itself states, "[a]ny interpretation that would render words superfluous or meaningless should be avoided."  (WT Br., ¶ 24).  The phrase "assets of the Company" is never used to qualify the word "payment" when the word "payment" is used by itself, without reference to a "distribution."  *See, e.g.,* PHONES Indenture, §§ 14.02 (A), 14.05. This reinforces the presumptive application of the "rule of the last antecedent" to the phrase "payment or distribution of assets of the Company," because the qualifier "of assets of the Company" never follows the word "payment." [3]

---

[3]     Wilmington Trust attempts to obfuscate the issue by stating the obvious, that the rule of the last antecedent does not apply where it otherwise yields a reading that is absurd or inconsistent with the rest of the document. *See,*

18.     Faced with the inescapable fact that the phrase "assets of the Company" never follows or qualifies "payment," the Wilmington Trust tries to add words that are not thereby arguing that "payment" really means "payment from the Company." (WT Br., ¶ 28). The addition of these non-existent words to Article 14, however, makes no sense, given the context in which "payment" is used in § 14.02. The specific language employed, "any payment" is not followed by the word "by" such that the sentence could plausibly be read to say "any payment by . . . the Company . . . ." Rather it simply says "any payment." And that is what it means.

19.     Finally, similar to the argument addressed above with respect to the interpretation of "Company," if, as Wilmington Trust asserts, "payment" always means "payment from the Company," then in the context of a bankruptcy case, the subordination provision would not apply to any payments because all "payments" are made by the estate. Moreover, other provisions of the PHONES Indenture reinforce the point that the term "payment" does not simply mean "payment from the Company." For example, § 3.11 of the PHONES Indenture provides that, "except as otherwise specified pursuant to § 3.01, payment of the principal of (in premium, if any) and interest on Securities of any series will be made in Dollars." If, as the Wilmington Trust hypothesizes, the word "payment" means only "payment from the Company," then,

---

*e.g., Miniat v. Ed Miniat, Inc.*, 315 F.3d 712, 713 (7th Cir. 2002) (application of rule would undermine the express purpose of the agreement, to maintain control); *Salvatore v. Gelburd*, 565 N.E.2d 204, 206 (Ill. App. Ct. 1st Dist. 1990) (recognizing that antecedent rule provided a "technically literal construction" but its application flouted the overall theme of the agreement which gave "overriding powers of administration to the board"); *Warner v. King*, 107 N.E. 837, 840 (Ill. 1915) (application of the rule would have made the statute only "apply to deeds and wills that had been executed between 1867 and 1874," a ridiculous result); *O'Kane v. Apfel*, 224 F.3d 686, 690 (7th Cir. 2000) (application of rule resulted in a "sentence [] missing a verb"). In *In re Tudor*, 342 B.R. 540, 555-56 (Bankr. S.D. Ohio 2005), the court refused to apply the doctrine based on the "faulty grammatical premise" as Wilmington Trust misleadingly quoted, where the modifier was preceded by a comma, an inapplicable exception expressly recognized by Movants. (Motion, ¶ 19 n.4). Movants' interpretation of § 14.02 (B), on the other hand, is read to be *consistent* with § 14.02 (A), as discussed above. This reading does not "undermine the express purpose of" subordination, "flout the overall theme of" subordination, render subordination "ridiculous" or result in a "sentence missing a verb." It is just the opposite.

presumably, the requirement that payments be in dollars would not apply to a payment by a bankruptcy estate.

20.     Thus, reading the PHONES Indenture as a whole requires enforcement of the Movants' interpretation that § 14.02 (A) provides for Senior Indebtedness to be paid in full first, irrespective of the source of such payments.

**D.      Sections 5.05 and 5.10 Do Not Provide A Basis For
         Limiting The Scope Of The Subordination Provisions**

21.     Wilmington Trust's argument that because §§ 5.05 and 5.10 of the PHONES Indenture enable it to pursue remedies and payments from third-parties provides no support for its position for several reasons.

22.     First, §§ 5.05 and 5.10 do not carve out the application of the Article 14 subordination provisions to amounts that the Wilmington Trust collects under §§ 5.05 and 5.10. Second, when §§ 14.07 and 14.08 are read in conjunction with §§ 5.05 and 5.10, it is plain that the Avoidance Action recoveries are meant to benefit the Senior Indebtedness.  Section 14.07(3) specifically provides that the remedies recovered by the Trustee or the Holder are subject to the subordination provision under Article 14 by stating:

> Nothing contained in this Article Fourteen or elsewhere in this Indenture or in the Securities of any series is intended to or shall . . . prevent the Trustee or the Holder of any Security of such series from exercising all remedies otherwise permitted by applicable law upon default or an Event of Default under this Indenture, *subject to the rights, if any, under this Article Fourteen of the holders of Senior Indebtedness to receive cash, property or securities otherwise payable or deliverable to the Trustee or such Holder.*

PHONES Indenture, § 14.07(3) (emphasis added).

23.     Additionally, under § 14.08, the Holder gives the Trustee authority to take actions necessary for the benefit of the Senior Indebtedness, *i.e.*, enforce the subordination provisions:

> Each Holder of a Security by such Holder's acceptance thereof authorizes and directs the Trustee on such Holder's behalf to take such action as may be

necessary or appropriate to effectuate the subordination provided in this Article Fourteen and appoints the Trustee such Holder's attorney-in-fact for any and all such purposes.

PHONES Indenture, § 14.08 (emphasis added).

24.     Third, simply because § 1.11 gives the Trustee and Holder the unmitigated *power* to seek legal and equitable remedies, does not mean that their actions are not for the benefit of the Senior Indebtedness.  Indeed, § 1.11 explicitly recognizes that the Trustee's and Holder's legal and equitable rights under the PHONES Indenture must be consistent with the Senior Indebtedness' rights to subordination:

> *[e]xcept as expressly provided in Article Fourteen with respect to holders of Senior Indebtedness,* nothing in this Indenture or in the Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

PHONES Indenture, § 1.11 (emphasis added).

25.     If Wilmington Trust's advocated interpretation were accurate, it would result in all creditors, possessing third-party recovery claims, to race to the court free from any subordination or any other sharing or priority mechanism as the Senior Indentures also include provisions substantially similar to §§ 5.05 and 5.10.  Therefore, by no means is § 1.11, § 5.05, or § 5.10 meant to preclude the application of the subordination provisions to third-parties' recoveries.

E.     **The PHONES Prospectus Is Properly Before This Court If the Court Finds the Indenture Ambiguous**

26.     Movants posit that the PHONES Indenture is plain on its face and compels the PHONES subordination to payments from any source.  However, Wilmington Trust argues that the Movants improperly rely on the PHONES Prospectus in their motion for reconsideration because (i) parole evidence is inadmissible to inform the Court's interpretation of the PHONES

14

Indenture and (ii) new evidence cannot be considered on a motion for reconsideration.  (WT Br.,

¶ 44-48).  However, Wilmington Trust's arguments are misplaced because the Court may take

judicial notice of the PHONES Prospectus to the extent an ambiguity exists in the PHONES

Indenture requiring the examination of extrinsic evidence to determine the parties' intent.

27.    First, only if the Court finds the PHONES Indenture to be ambiguous, should it

consider the extrinsic evidence of the PHONES Prospectus to determine the parties' intent.  *See*

*Thompson*, 948 N.E.2d at 47 ( "If the contract language is ambiguous, a court can consider

extrinsic evidence to determine the parties' intent."); *Szilagyi v. Chi. Am. Mfg., LLC (In re*

*Lakewood Eng'g & Mfg. Co., Inc.)*, 2011 Bankr. LEXIS 3757, at *74-75 (Bankr. N.D. Ill. Sept.

29, 2011) ("Because the [contract] is ambiguous on this point, the court must consider extrinsic

evidence to determine whether it is in fact a 'requirements contract'" under Illinois contract law).

Here, the extrinsic evidence, including the PHONES Prospectus, clearly shows that the PHONES

subordination is absolute.  (Motion, ¶ 23).

28.    Second, the PHONES Prospectus is subject to judicial notice under Third Circuit

law.  *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (stating that a "number of our sister

circuits have held that this rule permits a court, ... for judgment, to take judicial notice of

properly-authenticated public disclosure documents filed with the SEC."); *see also Renfro v.*

*Unisys Corp.*, 2011 U.S. App. LEXIS 17208, at *6 (3d Cir. Aug. 19, 2011) (relying on lower

courts' judicial notice of the fees charged by various investment options as reported in

prospectus under Federal Rule of Evidence 201(b)); *Cellco P'ship v. Commc'n. Workers*, 2003

U.S. Dist. LEXIS 26823, at *19 n.4 (D.N.J. Dec. 11, 2003) ("Although the Prospectus is not a

part of the pleadings, we take judicial notice of it, pursuant to Evidence Rule 201").  In

particular, under Federal Rule of Evidence 201, a court may take judicial notice of a fact that

"can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b)(2).

29.     Moreover, because a court may take judicial notice of appropriate facts "at any stage of the proceeding," this Court may take judicial notice of the PHONES Prospectus on a motion for reconsideration.  *See* Fed. R. Evid. 201(d); *Weaver v. Conrail, Inc.*, 2010 U.S. Dist. LEXIS 69553, at *20 (E.D. Pa. July 12, 2010) (granting motion to reconsider based in part on court's original failure to consider documents subject to judicial notice); *In re Resource Am. Secs. Litig.*, 2000 U.S. Dist. LEXIS 10640, at *10-14 (E.D. Pa. July 26, 2000) (taking judicial notice of information contained in SEC filings on motion to reconsider).  Further, Rule 201 clearly states that a "court must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

**III.    The Movants' Motion For Reconsideration Regarding The
Confirmation Opinion Is Properly Before This Court**

30.     The Court may reconsider its legal findings regarding the PHONES Indenture's subordination provisions, which arose from the denial of confirmation of the Second Amended DCL Plan, because the issues in dispute are the same under the Third Amended DCL Plan and the Second Amended DCL Plan. *See In re Vincente*, 257 B.R. 168, 173 n.6 (Bankr. E.D. Pa. 2001) (holding where the "Amended Plan has not cured that defect" considering the issue was not mooted); *see also In re Teixeira*, 358 B.R 484, 485 n.2 (Bankr. D.N.H. 2006) ("On December 18, 2006, while the Court was preparing this memorandum opinion, the Debtor filed a third amended Chapter 13 plan in which the Debtor increased the monthly payments to $940. Because this figure is still less than the amount argued by the trustee, the Court does not consider the matters under advisement to be moot."); *In re Krump*, 89 B.R. 821, 823 (Bankr. D.S.D. 1988) ("Because the amendment does not specify the interest rate to be applied, and because it is

possible Brown County might qualify for post-petition, pre-confirmation interest, the objections

to the original plan are not considered moot.")

31.     Here, the Third Amended DCL Plan does not provide for the subordination of the

PHONES Notes with respect to the distributions from the Creditors' and Litigation Trusts.  *See*

Third Amended DCL Plan, Exhibit 5.18.  Only where the amended plan removes the

objectionable defect – which is not the case here – is the issue mooted.  *See In re Weiss*, 251 B.R.

453, 466 (Bankr. E.D. Pa. 2000) (noting that Debtor could opt to moot objection by curing defect

in the next plan); *see also In re Tamcke*, 2010 Bankr. LEXIS 168, at *30 (Bankr. D. Mont. Jan.

14, 2010) (Debtor's plan for a conservation easement was removed from Debtor's Second

Amended Chapter 12 Plan.  Thus, Debtor's objection on that point was moot).[4]

## IV.    EGI-TRB's Subordination Argument Is Subject To The Same Flaws As Wilmington Trust

32.     EGI-TRB's argument that the subordination provisions in the subordination

agreement that applies to the EGI-TRB Notes (the "EGI-TRB Subordination Agreement") do not

apply to any fraudulent conveyance recoveries by Tribune's bankruptcy estate, or in a fraudulent

conveyance suit brought by EGI-TRB itself outside of bankruptcy, even if the Senior Obligations

(as defined in the Subordination Agreement) have not been paid in full is similarly specious.  For

reasons similar to those addressed above with respect to the PHONES Indenture, EGI-TRB's

argument is without substantive merit because:  (i) it relies upon a selective reading of §§ 2 and 6

---

[4]     The opinions cited by EGI-TRB are not relevant here.  In the brief decision in *In re Wilson*, 2008 WL 483091, at *2 (Bankr. D. Mass. Oct. 28, 2008), the court found that the Trustee's objection to a Second Amended Post-Confirmation Plan was moot where the court had already sustained another party's objection to that Plan and ordered the Debtor to submit a new plan.  At the time of the Trustee's objection, however, the Debtor had not in fact filed the new plan – which may or may not have contained the same defect.  It would have been useless for the court to merely speculate on an issue that truly might have been mooted by the Third Amended Plan.  Here, on the other hand, the same defect is clearly present and any decision regarding that provision is not advisory.  Similarly, in *Meserole v. Sony Corp. of Am.*, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009), the court, in addressing a motion to dismiss, allowed plaintiff to file an amended complaint to address the defects in the original complaint. Moreover, in *Meserole*, unlike here, the plaintiff, who was moving to reconsider, was able to cure its own defects by filing such a complaint.

of the EGI-TRB Subordination Agreement that ignores completely the broad scope of the

limitation on enforcement provisions contained in § 4 (which EGI-TRB disingenuously does not

even bother to mention); and (ii) EGI-TRB's narrow reading of the term "Company" to mean

only pre-bankruptcy Tribune, and not Tribune's insolvency estate produces an absurd result, *i.e.*,

the EGI-TRB Subordination Agreement would be essentially meaningless in bankruptcy – which

is the primary situation in which it would be likely to have any import.

33.     Section 4 provides, in the broadest possible terms, that until the Senior

Obligations "have been paid in full in cash":

> at no time shall the Subordinating Creditor take or continue any action, or
> exercise any rights, remedies or powers under the terms of the Subordinated Note,
> *or exercise or continue to exercise any other right or remedy at law or in equity*
> *that the Subordinating Creditor might otherwise possess, to collect any*
> *Subordinated Obligation*, including, without limitation, . . . the commencement
> of any action to enforce payment. . . , the filing of any petition in bankruptcy or
> the taking advantage of any other insolvency law in any jurisdiction.

EGI-TRB Subordination Agreement, § 4 (emphasis added).

34.     The broad prohibition on exercising "any . . . right or remedy at law or in equity"

to collect any Subordinated Obligation until the Senior Obligations are paid in full flatly

prohibits EGI-TRB from even commencing a fraudulent conveyance action to collect on its

claim outside of bankruptcy until the Senior Obligations are paid in full – much less prosecuting

such an action to judgment to collect on the Subordinated Obligations.  EGI-TRB Subordination

Agreement, § 4.  Thus, EGI-TRB cannot benefit from any avoidance recovery (since it would be

prohibited even from seeking such a recovery) until the Senior Obligations are "paid in full."

35.     Moreover, § 4 broadly prohibits any action to collect or enforce the Subordinated

Obligations in bankruptcy until the Senior Obligations are paid in full.  This point is highlighted

by the narrow exception included in § 4: "[n]otwithstanding the foregoing, the Subordinating

Creditor may file a proof of claim in any bankruptcy or similar proceeding instituted by another

entity and may vote such claim in a manner not inconsistent with the terms hereof." EGI-TRB Subordination Agreement, § 4. Thus, absent this explicit exception, EGI-TRB cannot even file a proof of claim in Tribune's bankruptcy if the Senior Obligations were not paid in full. Any other interpretation would render the exception superfluous.

36.     Although EGI-TRB is narrowly permitted to file and vote a proof of claim, that is where the exception stops: there is no exception in § 4 that permits EGI-TRB to engage in the additional collection activity of demanding or receiving a distribution on that proof of claim if the Senior Obligations have not been paid in full. Thus, the only section of the Subordination Agreement that expressly addresses a bankruptcy – § 4 – flatly prohibits EGI-TRB from taking any collection action whatsoever with respect to the Subordinated Obligations other than (i) filing and (ii) voting the proof of claim, until the Senior Obligations are paid in full.

37.     Finally, EGI-TRB's reading of the term "Company" in § 2 of the EGI-TRB Subordination Agreement to refer only to Tribune outside of bankruptcy, and not to Tribune's estate in bankruptcy, produces the nonsensical result that the Subordination Agreement is essentially meaningless in bankruptcy. Section 2 provides, in pertinent part, that:

> Unless and until . . . the Senior Obligations have been paid in full in cash, the Subordinating Creditor will not take, demand or receive from the Company, and the Company will not make, give or permit, directly or indirectly by set-off redemption, purchase or in any other manner, any payment of (of whatever kind or nature, whether in cash, property, securities or otherwise) whether in respect of principal, interest or otherwise, or security for the whole or any part of the Subordinated Obligation.

EGI-TRB Subordination Agreement, § 2.

38.     Under EGI-TRB's narrow reading of § 2, the prohibitions contained therein extend only to the "Subordinating Creditor" taking or receiving payment from the "Company," defined to mean pre-bankruptcy Tribune, and only prevent the "Company," defined to mean pre-bankruptcy Tribune, from making a payment to the Subordinating Creditor. But, unless the term

"Company" is read to include the Company's bankruptcy estate, EGI-TRB's reading of § 2 leads to a bizarre result, *i.e.*, although the Subordinating Creditor cannot receive payment from pre-bankruptcy Tribune if the Senior Obligations are not paid in full, it is free to collect from Tribune's bankruptcy estate notwithstanding non-payment of Senior Obligations. It is axiomatic of course, that a contract should not be interpreted to produce an absurd result. *See Thompson*, 948 N.E.2d at 47 ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used."). However, if the term "Company" is read to avoid this absurd result by being interpreted to include Tribune's post-bankruptcy estate, then the subordination would apply to any "payment" by the Tribune estate, because nothing in the quoted language of § 2 restricting the "payment" in respect of a Subordinated Obligation limits the prohibition to "assets of the Company."

## CONCLUSION

WHEREFORE, for the reasons set forth above, Movants further respectfully request that the Court enter an order, upon reconsideration of the Confirmation Opinion (i) vacating that portion of the Confirmation Opinion providing that "causes of action that the Debtors' estates may assert under Chapter 5 of the Bankruptcy Code are not 'assets of the Company' subject to the PHONES' subordination provision"; (ii) amending the Confirmation Opinion to modify and supplement its conclusions of law to support the DCL Plan's subordinated treatment of the claims held by holders of the PHONES with respect to all payments from the Litigation Trust; and (iii) and granting such other further relief as may be required.

Dated: December 9, 2011
       Wilmington, Delaware

                                        Respectfully submitted,

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
212-506-1700

BIFFERATO GENTILOTTI LLC

___/s/ Garvan F. McDaniel_____
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302-429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor
Indenture Trustee for certain series of Senior Notes*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, New York 10167
212-609-6800

McCARTER & ENGLISH, LLP

_____/s/ James J. Freebery_____
James J. Freebery (I.D. No. 3498)
Renaissance Centre
405 N. King Street
Wilmington, Delaware 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor
Indenture Trustee for certain series of Senior Notes*