# **<u>Exhibit B</u>**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| EGI-TRB LLC; Tower CH, LLC; Tower DC, LLC; Tower DL, LLC; Tower EH, LLC; Tower PH, LLC; Tower HZ, LLC; Tower JB, LLC; Tower JS, LLC; Tower JK, LLC; Tower JP, LLC; Tower KS, LLC; Tower LZ, LLC; Tower LL, LLC; Tower LM, LLC; Tower MH, LLC; Tower MS, LLC; Tower MZ, LLC; Tower NL, LLC; Tower PT, LLC; Tower SF, LLC; Tower TT, LLC; Tower VC, LLC; Tower WP, LLC; Tower Greenspun DGSPT, LLC; Tower Greenspun JGGSTP, LLC; Tower Greenspun SGFFT, LLC; and Tower Greenspun, LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>Bank of America, N.A.; Citibank N.A.; J.P. Morgan Chase Bank N.A.; JP Morgan Chase Bank; Key Bank, N.A.; LaSalle Bank, N.A.; Mellon Trust of New England, National Association; PNC Bank N.A.; Raymond James Trust N.A.; State Street Bank & Trust Company; The Bank of New York Mellon Corporation; U.S. Bank, N.A.; Union Bank of California, N.A.; Wachovia Bank, N.A.; Wells Fargo Bank, N.A.; Ward L. Quaal; Ward L. Quaal Revocable Trust Dated 09/02/1993; Dorothy Quaal; Dorothy Quaal Revocable Trust Dated 09/02/1993; Kenneth Cahn; Lewis Taman; John Does 1 to 500,<br><br>Defendants. | 2011L013642<br>CALENDAR/ROOM V<br>TIME 00:00<br>Other Com Litigation<br><br><br>Case No. _____ |

## **COMPLAINT**

Plaintiffs (collectively, "EGI-TRB" and as further described below), by and through their counsel, Jenner & Block LLP, hereby complain against each of the Defendants and allege as follows.

## Nature of Action

1. The purpose of this action is to preserve any rights of recovery EGI-TRB may have against Defendants related to a 2007 leveraged buy-out transaction (the "LBO Transaction") of Tribune, Inc. ("Tribune"), including any claims based upon the October 31, 2011 opinion of the United States Bankruptcy Court for the District of Delaware in the bankruptcy proceedings of Tribune Company and related debtors. EGI-TRB and Plaintiffs are creditors of Tribune with claims in excess of $225 million. On information and belief, Defendants received payments from Tribune as part of the LBO Transaction and in connection with the sale of Tribune shares. Those payments are referred to herein as the "Selling Shareholder Payments."

2. Multiple other creditors of Tribune have asserted that the Selling Shareholder Payments represent fraudulent conveyances of Tribune's assets. Some creditors have initiated litigation seeking to prove that contention, while others have indicated that they will initiate such litigation in the future.

3. EGI-TRB invested in more than $300 million in Tribune because it believed that the LBO transaction would be successful. EGI-TRB did not believe that the Tribune was insolvent at any relevant time or that the LBO Transaction would render Tribune insolvent or inadequately capitalized.

4. EGI-TRB believes that litigation asserting fraudulent conveyance claims lack merit. Nonetheless, in the event that it is determined otherwise, EGI-TRB brings this lawsuit to preserve its rights to recovery. EGI-TRB intends to use any right to participate in a potential recovery to encourage the various creditors to resolve these claims without costly litigation.

5. If it is determined that the Selling Shareholder Payments represent fraudulent conveyances, EGI-TRB is entitled to recover from such transfers or conveyances in an amount in excess of $225 million.

6. EGI-TRB files this complaint solely as a protective measure and to preserve potential causes of action that parties might otherwise claim are subject to alleged statute of limitations defenses.

7. As discussed immediately below, the Court should stay proceedings on this complaint. As these issues as litigated in other courts, and as the Tribune bankruptcy proceeding progresses, it may develop that the pursuit of these claims is unnecessary.

### Bankruptcy Stay Of This Action

8. Tribune and its subsidiaries are the subject of a Chapter 11 reorganization proceeding in the United States District Court for the District of Delaware (the "Bankruptcy Court") under the lead case caption *In re Tribune Company, et al.* (Case No. 08-13141-KJC) (the "Bankruptcy Proceedings").

9. The filing of this complaint has been authorized by an April 25, 2011 order of the Bankruptcy Court (the "Stay Order," which is attached as Exhibit A), which provides that creditors such as EGI-TRB may file claims like those asserted here, and that such claims shall be stayed in the courts in which they are filed. In particular, the Stay Order provides:

> Absent further order of this Court, litigation commenced by the filing of any complaint referenced in paragraphs 3 and 5 above shall automatically be stayed in the applicable state court(s) where such complaint(s) are filed, or if not automatically in such state court(s), then application for the stay in accordance with the provisions of this Order shall be made . . . .

Exhibit A at ¶ 6.

3

10. Pursuant to the Stay Order, this Court should immediately stay proceedings on this complaint.

## Parties

A. **Plaintiffs**

11. Each of the Plaintiffs hold a note issued by Tribune on or about December 20, 2007. The principal amount of each note is stated in proofs of claim that each Plaintiff filed in the Bankruptcy Proceedings and the total principal amount of their notes is $225 million.

12. Plaintiff **EGI-TRB, LLC** is a Delaware Limited Liability Company.

13. Plaintiff **Tower CH, LLC** is a Delaware Limited Liability Company.

14. Plaintiff **Tower DC, LLC** is a Delaware Limited Liability Company.

15. Plaintiff **Tower DL, LLC** is a Delaware Limited Liability Company.

16. Plaintiff **Tower EH, LLC** is a Delaware Limited Liability Company.

17. Plaintiff **Tower PH, LLC** is a Delaware Limited Liability Company.

18. Plaintiff **Tower HZ, LLC** is a Delaware Limited Liability Company.

19. Plaintiff **Tower JB, LLC** is a Delaware Limited Liability Company.

20. Plaintiff **Tower JS, LLC** is a Delaware Limited Liability Company.

21. Plaintiff **Tower JK, LLC** is a Delaware Limited Liability Company.

22. Plaintiff **Tower JP, LLC** is a Delaware Limited Liability Company.

23. Plaintiff **Tower KS, LLC** is a Delaware Limited Liability Company.

24. Plaintiff **Tower LZ, LLC** is a Delaware Limited Liability Company.

25. Plaintiff **Tower LL, LLC** is a Delaware Limited Liability Company.

26. Plaintiff **Tower LM, LLC** is a Delaware Limited Liability Company.

27. Plaintiff **Tower MH, LLC** is a Delaware Limited Liability Company.

28. Plaintiff **Tower MS, LLC** is a Delaware Limited Liability Company.

29. Plaintiff **Tower MZ, LLC** is a Delaware Limited Liability Company.

30. Plaintiff **Tower NL, LLC** is a Delaware Limited Liability Company.

31. Plaintiff **Tower PT, LLC** is a Delaware Limited Liability Company.

32. Plaintiff **Tower SF, LLC** is a Delaware Limited Liability Company.

33. Plaintiff **Tower TT, LLC** is a Delaware Limited Liability Company.

34. Plaintiff **Tower VC, LLC** is a Delaware Limited Liability Company.

35. Plaintiff **Tower WP, LLC** is a Delaware Limited Liability Company.

36. Plaintiff **Tower Greenspun DGSPT, LLC** is a Delaware Limited Liability Company.

37. Plaintiff **Tower Greenspun JGGSTP, LLC** is a Delaware Limited Liability Company.

38. Plaintiff **Tower Greenspun SGFFT, LLC** is a Delaware Limited Liability Company.

39. Plaintiff **Tower Greenspun, LLC** is a Delaware Limited Liability Company.

**B.   Defendants**

40. Each of the Defendants named in this action are entities or persons who, upon information and belief, sold at least $1 million in Tribune stock during the LBO Transactions. The allegations stated in the following paragraphs are based on information and belief and publicly-available materials.

41. Upon information and belief, **Defendant Bank of America, N.A.** is a national association, which has an address of 135 S. LaSalle St., Chicago, Illinois 60603-3499.

42. Upon information and belief, Defendant Bank of America, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $58,393,708.00 as payment for the common stock interests in Tribune owned by either (i) Bank of America, N.A., and/or (ii) other unknown persons or entities for whose benefit Bank of America, N.A. held, transferred or exchanged such stock interests.

43. Upon information and belief, **Defendant Raymond James Trust N.A.** is a nationally charted trust company, conducts business in the State of Illinois and has an executive office located at 8770 West Bryn Mawr Avenue, Suite 1300, Chicago, Illinois 60631. Raymond James Trust N.A. is a wholly owned subsidiary of Raymond James Financial, Inc. which is also authorized to do business in the State of Illinois and provides financial services to individuals, corporations and municipalities.

44. Upon information and belief, Defendant Raymond James Trust N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $10,272,386.00 as payment for the common stock interests in Tribune owned by either (i) Raymond James Trust N.A., and/or (ii) other unknown persons or entities for whose benefit the Raymond James Trust N.A. held, transferred or exchanged such stock interests.

45. Upon information and belief, **Defendant Citibank, N.A.** is a national association, which has an address of 100 S. Michigan Ave., Chicago, Illinois 60603.

46. Upon information and belief, Defendant Citibank, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $110,146,876.00 as payment for the common stock interests in Tribune owned by either (i) Citibank, N.A., and/or (ii) other unknown persons or entities for whose benefit Citibank, N.A. held, transferred or exchanged such stock interests.

47. Upon information and belief, **Defendant Key Bank, N.A.** is a national association, which does business in or can be found in Illinois.

48. Upon information and belief, Defendant Key Bank, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $1,178,814.00 as payment for the common stock interests in Tribune owned by either (i) Key Bank, N.A., and/or (ii) other unknown persons or entities for whose benefit Key Bank, N.A. held, transferred or exchanged such stock interests.

49. Upon information and belief, **Defendant LaSalle Bank, N.A.** is a national association, which has an address of 135 S. LaSalle St., Chicago, Illinois 60603.

50. Upon information and belief, Defendant LaSalle Bank, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $58,393,708.00 as payment for the common stock interests in Tribune owned by either (i) LaSalle Bank, N.A., and/or (ii) other unknown persons or entities for whose benefit LaSalle Bank, N.A. held, transferred or exchanged such stock interests.

51. Upon information and belief, **Defendant Mellon Trust of New England, N.A.** is a national association, which does business in or can be found in Illinois.

52. Upon information and belief, Defendant Mellon Trust of New England, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $279,021,170.00 as payment for the common stock interests in Tribune owned by either (i) Mellon Trust of New England, N.A., and/or (ii) other unknown persons or entities for whose benefit Mellon Trust of New England, N.A. held, transferred or exchanged such stock interests.

53. Upon information and belief, **Defendant State Street Bank & Trust Company** is a company, which has an address of 801 State Street, Quincy, Illinois 62301.

54. Upon information and belief, Defendant State Street Bank & Trust Company, received Step One and/or Step Two Transfers from Tribune in the amount of at least $1,338,403,098.00 as payment for the common stock interests in Tribune owned by either (i) State Street Bank & Trust Company, and/or (ii) other unknown persons or entities for whose benefit State Street Bank & Trust Company held, transferred or exchanged such stock interests.

55. Upon information and belief, **Defendant The Bank of New York Mellon Corporation** is a corporation, which has addresses of 1 N. Franklin St., Ste. 900, Chicago, Illinois 60606 and 2 N. LaSalle St., Ste. 1020, Chicago, Illinois 60602.

56. Upon information and belief, Defendant The Bank of New York Mellon Corporation, received Step One and/or Step Two Transfers from Tribune in the amount of at least $285,077,264.00 as payment for the common stock interests in Tribune owned by either (i) The Bank of New York Mellon Corporation, and/or (ii) other unknown persons or entities for whose benefit The Bank of New York Mellon Corporation held, transferred or exchanged such stock interests.

57. Upon information and belief, **Defendant U.S. Bank, N.A.** is a national association, which has an address of 25 E. Washington St., Chicago, Illinois 60602.

58. Upon information and belief, Defendant U.S. Bank, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $198,892,554.00 as payment for the common stock interests in Tribune owned by either (i) U.S. Bank, N.A., and/or (ii) other unknown persons or entities for whose benefit U.S. Bank, N.A. held, transferred or exchanged such stock interests.

59. Upon information and belief, **Defendant Union Bank of California, N.A.** is a national association, which does business in or can be found in Illinois.

60. Upon information and belief, Defendant Union Bank of California, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $5,296,758.00 as payment for the common stock interests in Tribune owned by either (i) Union Bank of California, N.A., and/or (ii) other unknown persons or entities for whose benefit Union Bank of California, N.A. held, transferred or exchanged such stock interests.

61. Upon information and belief, **Defendant Wachovia Bank, N.A.** is a national association, which has an address of 225 W. Wacker, Ste. 2550, Chicago, Illinois 60606.

62. Upon information and belief, Defendant Wachovia Bank, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $7,652,720.00 as payment for the common stock interests in Tribune owned by either (i) Wachovia Bank, N.A., and/or (ii) other unknown persons or entities for whose benefit Wachovia Bank, N.A. held, transferred or exchanged such stock interests.

63. Upon information and belief, **Defendant Wells Fargo Bank, N.A.** is a national association, which has an address of 225 W. Wacker, Ste. 2550, Chicago, Illinois 60606.

64. Upon information and belief, Defendant Wells Fargo Bank, N.A., received Step One and/or Step Two Transfers from Tribune in the amount of at least $13,849,288.00 as payment for the common stock interests in Tribune owned by either (i) Wells Fargo Bank, N.A., and/or (ii) other unknown persons or entities for whose benefit Wells Fargo Bank, N.A. held, transferred or exchanged such stock interests.

65. Upon information and belief, **Defendant J.P. Morgan Chase Bank N.A.** is a national association, which has an address of 10 S. Dearborn Street, Chicago, Illinois 60603.

66. Upon information and belief, Defendant J.P. Morgan Chase Bank N.A., received Step One and/or Step Two Transfers from Tribune as payment for the common stock interests in

Tribune owned by either (i) J.P. Morgan Chase Bank N.A., and/or (ii) other unknown persons or entities for whose benefit J.P. Morgan Chase Bank N.A. held, transferred or exchanged such stock interests.

67. Upon information and belief, **Defendant JP Morgan Chase Bank** is a company, which does business in or can be found in Illinois.

68. Upon information and belief, Defendant JP Morgan Chase Bank, received Step One and/or Step Two Transfers from Tribune as payment for the common stock interests in Tribune owned by either (i) JP Morgan Chase Bank, and/or (ii) other unknown persons or entities for whose benefit JP Morgan Chase Bank held, transferred or exchanged such stock interests.

69. Upon information and belief, **Defendant PNC Bank N.A.** is a national association, which has an address of 55 W. Monroe St., Suite 100B, Chicago, Illinois 60603.

70. Upon information and belief, Defendant PNC Bank N.A., received Step One and/or Step Two Transfers from Tribune as payment for the common stock interests in Tribune owned by either (i) PNC Bank N.A., and/or (ii) other unknown persons or entities for whose benefit PNC Bank N.A. held, transferred or exchanged such stock interests.

71. Upon information and belief, **Defendant Ward L. Quaal Revocable Trust dated 09/02/1993**, is a trust formed under the laws of the State of Illinois, and has an address of 711 Oak Street Apartment 202, Winnetka, Illinois 60093.

72. Upon information and belief, **Defendant Ward L. Quaal**, is an individual, who is a citizen and/or resident of the State of Illinois, having an address of 711 Oak Street Apartment 202, Winnetka, Illinois 60093.

73. Upon information and belief, either one or both of Defendants Ward L. Quaal Revocable Trust dated 09/02/1993 and/or Ward L. Quaal (collectively, the "Ward Quaal Defendants"), received Step One and/or Step Two Transfers from Tribune in the amount of at least $7,847,200.00 as payment for the common stock interests in Tribune owned by either (i) either one or both of the Ward Quaal Defendants, and/or (ii) other unknown persons or entities for whose benefit either one or both of the Ward Quaal Defendants held, transferred or exchanged such stock interests.

74. Upon information and belief, **Defendant Dorothy Quaal Revocable Trust dated 09/02/1993**, is a trust formed under the laws of the State of Illinois, which has an address of 711 Oak Street Apartment 202, Winnetka, Illinois 60093.

75. Upon information and belief, **Defendant Dorothy Quaal**, is an individual, who is a citizen and/or resident of the State of Illinois, having an address of 711 Oak Street Apartment 202, Winnetka, Illinois 60093.

76. Upon information and belief, either one or both of Defendants Dorothy Quaal Revocable Trust dated 09/02/1993 and/or Dorothy Quaal (collectively, the "Dorothy Quaal Defendants"), received Step One and/or Step Two Transfers from Tribune in the amount of at least $3,400,000.00 as payment for the common stock interests in Tribune owned by either (i) one or both of the Dorothy Quaal Defendants, and/or (ii) other unknown persons or entities for whose benefit either one or both of the Dorothy Quaal Defendants held, transferred or exchanged such stock interests.

77. Upon information and belief, **Defendant Kenneth Cahn** is an individual, who is a citizen and/or resident of the State of Illinois, having an address of 2531 Stonebridge Lane, Northbrook, Illinois 60062.

78. Upon information and belief, Defendant Kenneth Cahn, received Step One and/or Step Two Transfers from Tribune in the amount of at least $1,360,000.00 as payment for the common stock interests in Tribune owned by either (i) Kenneth Cahn, and/or (ii) other unknown persons or entities for whose benefit Kenneth Cahn held, transferred or exchanged such stock interests.

79. Upon information and belief, **Defendant Lewis Taman** is an individual, who is a citizen and/or resident of the State of Illinois, having an address of 221 North LaSalle Street, Unit No. 2016, Chicago, Illinois 60601.

80. Upon information and belief, Defendant Lewis Taman, received Step One and/or Step Two Transfers from Tribune in the amount of at least $2,308,192.00 as payment for the common stock interests in Tribune owned by either (i) Lewis Taman, and/or (ii) other unknown persons or entities for whose benefit Lewis Taman held, transferred or exchanged such stock interests.

**D.    John Doe Defendants.**

81. Plaintiffs have not been afforded ample time or discovery to ascertain the identity of all parties who received Selling Shareholder Payments. Further, upon information and belief, the stock of Tribune may have been held by various clearing or other brokerage houses for ultimate beneficiaries. Upon ascertaining the identity of the John Doe Defendants, Plaintiffs will amend this Complaint.

## Jurisdiction and Venue

82. Upon information and belief, each Defendant resides in this jurisdiction, has an office in this jurisdiction, does business in this jurisdiction, or is otherwise subject to the jurisdiction of this Court.

83.     Venue is proper based upon the residence, domicile or place of business of some or all of the parties. The amount at issue in this lawsuit exceeds $50,000.

## **Factual Background**

84.     On or about April 23, 2007, EGI-TRB invested $250 million in Tribune pursuant to a Securities Purchase Agreement (the "SPA") between EGI-TRB and Tribune dated April 1, 2007. In exchange for its investment, EGI-TRB obtained a note with a principal amount of $200 million and $50 million in Tribune shares.

85.     EGI-TRB believed that the LBO Transaction would be a success for Tribune and a good investment for EGI-TRB.

86.     Under the SPA, Tribune and EGI-TRB agreed that EGI-TRB would hold its $200 million note until the close of the LBO Transaction, at which time that note would be exchanged and EGI-TRB would be required to invest millions of more dollars into Tribune.

87.     Tribune insisted on undertaking the LBO Transaction in two steps in 2007. EGI-TRB was obligated at the outset to proceed with both steps. In the first step ("Step One"), Tribune commenced a cash tender offer in April 2007 that closed on June 4, 2007. In that tender offer, Tribune repurchased 126 million shares from Tribune stockholders for $34 per share. Tribune financed the tender offer with approximately $4.3 billion of proceeds from an $8 billion credit facility. EGI-TRB did not sell any shares and did not receive any payments for its Tribune shares in Step One.

88.     In the second step ("Step Two"), and on or about December 20, 2007, Tribune incurred additional debt of nearly $4 billion to, among other things, purchase, repurchase, redeem and/or cancel all remaining outstanding shares of its common stock for $34 per share.

89.     As a result of the Step Two transaction, each of the Defendants received Selling Shareholder Payments of $34 per share in cash for their Tribune shares. On information and

13

belief, Defendants collectively received more than $1 billion dollars in Selling Shareholder Payments.

90.   While the Defendants received cash payouts at Step Two, EGI-TRB invested more money in Tribune pursuant to the SPA, increasing its total investment from $250 million to $315 million. In connection with Step Two and as required under the SPA, EGI-TRB and the Plaintiffs identified in Paragraphs 13 to 39 loaned $225 million to Tribune through a promissory note ("EGI-TRB's Notes") and purchased a 15-year warrant for $90 million. Thus, unlike Tribune shareholders like the Defendants who made money on the LBO Transaction when their Tribune shares were redeemed for cash at $34 per share, EGI-TRB invested additional millions of dollars in Tribune on December 20, 2007.

91.   The Tribune Entities guaranteed the indebtedness incurred by Tribune in Step One and Step Two.

92.   Upon information and belief, all of the Selling Shareholder Payments were approved by Tribune in Illinois and originated in Illinois. Tribune's corporate headquarters are located at 435 North Michigan Avenue, Chicago, Illinois 60611.

### Count I

93.   Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-92 as though fully set forth herein.

94.   Each Defendant received Selling Shareholder Payments in connection with the LBO Transaction in the amount of at least $34 per share in the aggregate amounts set forth above as payment for each such Defendant's common stock interests in Tribune. On information and belief, each Defendant received more $1 million in proceeds through sales of Tribune stock in connection with the LBO Transactions.

15

95. Certain Tribune creditors have asserted that Tribune received less than reasonably equivalent value in exchange for the foregoing Selling Shareholder Payments. Certain Tribune creditors have also asserted that, at the time of the Selling Shareholder Payments, Tribune: (i) was insolvent or became insolvent; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which Tribune was left with unreasonably small assets or capital; and/or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts became due.

96. In the event it is determined in other litigation that the Selling Shareholder Payments represent fraudulent transfers or conveyances, that those payments should be avoided, and/or that creditors are entitled to recover those payments, EGI-TRB is entitled to recover an amount equal to its investment and interest from the Selling Shareholder Payments, including pursuant to 740 ILCS 160/5(a) and/or 740 ILCS 160/6(a).

## Prayer For Relief

WHEREFORE, by reason of the foregoing, Plaintiffs respectfully request that the Court enter all just and appropriate relief for Plaintiffs against Defendants.

Dated: December 19, 2011

Respectfully submitted on behalf of all Plaintiffs,

By: _____
One of Their Attorneys

David J. Bradford
Catherine L. Steege
Daniel J. Weiss
Andrew W. Vail
Douglas A. Sondgeroth
JENNER & BLOCK LLP
Attorney No. 05003
353 North Clark Street
Chicago, Illinois 60654
Telephone No: 312 222-9350
Facsimile No: 312 840 7517