## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: January 11, 2012 at 11:00 a.m. (ET)**<br>**Obj. Deadline: January 4, 2012 at 4:00 p.m. (ET)** |

### FIFTH SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF ERNST & YOUNG LLP TO INCLUDE A UTILITY STUDY FOR SALES AND USE TAX PURPOSES PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107 *NUNC PRO TUNC* TO DECEMBER 1, 2011

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors") hereby submit this Fifth Supplemental

Application (the "Fifth Supplemental Application") for entry of an order, in the form submitted

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

herewith, modifying the scope of the Debtors' already-authorized employment of Ernst & Young

LLP ("E&Y") pursuant to sections 327(a) and 1107 of the title 11 of the United States Code (the

"Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), nunc pro tunc to December 1, 2011. The Debtors have requested that

E&Y provide professional services to the Debtors consisting of an electricity study for state sales

and use tax purposes for certain Debtor entities and the potential filing of refund claims

(collectively, the "Tax Services"), which are not within the scope of E&Y's existing retention by

the Debtors. In support of this Fifth Supplemental Application, the Debtors submit the Sixth

Supplemental Affidavit of Matthew Howley (the "Sixth Supplemental Howley Affidavit"), a

copy of which is attached as Exhibit A and is incorporated herein by reference. In further

support of this Fifth Supplemental Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.    On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008,

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for

procedural purposes only. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the

Debtors comprise 111 entities.

2.    The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket

Nos. 43, 2333].

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND TO THE FOURTH SUPPLEMENTAL APPLICATION

### A.      Scope of E&Y's Current Retention

6.      E&Y is currently retained by the Debtors to provide (i) valuation and business modeling services, (ii) market survey services, (iii) valuation services for certain FCC licenses held by the Debtors, (iv) valuation services related to the application of fresh start accounting, (v) advisory services relating to sales and use taxes and personal property taxes and (vi) valuation services related to Tribune Company's ("Tribune") equity interest in Television Food Network, G.P.  The terms of E&Y's existing retention by the Debtors are summarized in (a) the Debtors' Application for an Order Authorizing Debtors to Retain and Employ Ernst & Young LLP to provide (I) Valuation and Business Modeling Services and (II) Market Survey Services to the Debtors Pursuant to 11 U.S.C. §§ 327(a), *Nunc Pro Tunc* to May 31, 2009, which was filed on June 5, 2009 [Docket No. 1298] (the "Application") and subsequently approved by

an order of this Court on July 21, 2009 [Docket No. 1783] (the "Original Retention Order"); and

(b) each of the other Prior Applications, as approved by the Prior Retention Orders.[3]

7.    Additionally, the Debtors filed an application, pursuant to sections 105,

363 and 1107 of the Bankruptcy Code, for an order authorizing E&Y to perform services as the

"Accounting Firm" under the 2009 Formation Agreement concerning the formation of Chicago

Baseball Holdings, LLC, which was filed on June 2, 2011 [Docket No. 9041] (the "Cubs

Engagement Application") and subsequently approved by an order of this Court on June 24,

2011 [Docket No. 9348]. The Prior Applications and the Cubs Engagement are hereby

incorporated by reference.[4]

### B.    The Proposed Supplemental Retention

8.    The Debtors now desire to retain and employ E&Y to conduct an

electricity study (the "Utility Study") for state sales and use tax purposes for the following

---

[3] These include (a) The Debtors' Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to include continued performance of valuation services relating to FCC licenses, which was filed on February 22, 2010 [Docket No. 3516] (the "Supplemental Application") and subsequently approved by an order of this Court on March 22, 2010 [Docket No. 3804] (the "Supplemental Retention Order"); (b) the Debtors' Second Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to encompass certain valuation services related to the application of fresh start accounting and plan of reorganization adjustments upon the Debtors' emergence from bankruptcy, which was filed on May 24, 2010 [Docket No. 4594] (the "Second Supplemental Application") and subsequently approved by an order of this Court on June 14, 2010 [Docket No. 4779] (the "Second Supplemental Retention Order"); (c) the Debtors' Third Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to encompass certain advisory services related to sales and use taxes and personal property taxes, which was filed on March 4, 2011 [Docket No. 8277] (the "Third Supplemental Application") and subsequently approved by an order of this Court on March 21, 2011 [Docket No. 8459] (the "Third Supplemental Retention Order"); and (d) the Debtors' Fourth Supplemental Application for an Order Modifying the Scope of the Retention of Ernst & Young LLP to include valuation of certain Cooking Channel assets, which was filed on November 4, 2011 [Docket No. 10163] (the "Fourth Supplemental Application" and collectively with the Application, the Supplemental Application, Second Supplemental Application and the Third Supplemental Application, the "Prior Applications") and subsequently approved by an order of this Court on November 18, 2011 [Docket No. 10260] (the "Fourth Supplemental Retention Order" and collectively with the Original Retention Order, the Supplemental Retention Order, the Second Supplemental Retention Order and the Third Supplemental Retention Order, the "Prior Retention Orders").

[4] The Debtors incorporate herein by reference the Affidavit of Matthew Howley in Support of the Application, which was filed on June 5, 2009 [Docket No. 1298], the Supplemental Affidavit of Matthew Howley in Support of the Application, which was filed on July 13, 2009 [Docket No. 1712], Supplemental Affidavit of Ernst & Young LLP, which was filed on November 2, 2009 [Docket No. 2471], the Fourth Supplemental Affidavit of Ernst & Young LLP, which was filed on August 3, 2011 [Docket No. 9600] and the Fifth Supplemental Affidavit of Ernst & Young LLP, which was filed on November 7, 2011 [Docket No. 10167] (collectively, the "Prior Affidavits").

Debtor entities: (i) Sun-Sentinel Company; (ii) Gold Coast Publications, Inc.; (iii) Forum Publishing; and (iv) Orlando Sentinel Communications Company (collectively, the "Subject Debtors"). The Utility Study may form the basis for the filing of sale and/or use tax refund claims.

        9.     The Tax Services that are the subject of this Fifth Supplemental Application are subject to the terms and conditions set forth in the Statement of Work – Florida Sales Tax Utility Study (the "SOW"), a true and correct copy of which is attached hereto as Exhibit B. Assistance with the Tax Services was not among the services that E&Y or the Debtors contemplated under the existing engagement letters and statements of work that were the basis of the Prior Applications. Accordingly, the Debtors submit this Fifth Supplemental Application to encompass the Tax Services and obtain Court approval for the SOW. E&Y has agreed to provide the Tax Services, subject to the Court's approval of E&Y's retention in accordance with the terms and conditions of the SOW and the engagement letter dated May 15, 2009 between Tribune and E&Y (the "Original Engagement Letter"), as modified by the Original Retention Order, the scope of which are collectively as follows:[5]

- o E&Y will prepare the Utility Study for state sales and use tax purposes for the Subject Debtors.

    - o The Utility Study will analyze electricity consumption of the various pieces of equipment and devices consuming electricity and categorizing the consumption into taxable and non-taxable categories for Florida sales and use tax purposes. A taxability percentage is then developed typically on a separate meter basis.

    - o The deliverable for the Utility Study will consist of a detailed listing of machinery and equipment used at the facilities broken down by meter, along with comments supporting the electric consumption in taxable and non-taxable categories. The deliverable for the Utility Study will also include

---

[5] In the event of any conflict between the summary of the Tax Services provided herein and the terms of the SOW, the terms of the SOW shall govern.

providing the necessary supporting documentation for prospectively claiming the appropriate taxability percentage with current electricity vendors.

o    The results of the Utility Study will be used, if the opportunity exists, to file for a refund of the Florida sales and use tax overcharged on electricity billings for all periods open under the current statute.  E&Y will prepare, subject to Tribune's direction, other input and consent, on Tribune's behalf, all of the necessary documentation in order to file any refund claim with either the utility provider or directly with the State of Florida.

o    E&Y will address, on Tribune's behalf, any questions by the State of Florida or a utility vendor relating to the Utility Study and any refund claim(s) filed by E&Y at Tribune's direction pursuant to the SOW.

10.    The SOW states that if during the provision of the Tax Services, E&Y determines that any additional work is necessary, whether at Tribune's request or because the complexity of the project is other than as originally discussed, E&Y will promptly contact Tribune to discuss any adjustments to the scope of work or E&Y's fees and Tribune will obtain Court approval before proceeding.  The Tax Services contemplated in the SOW are not duplicative of those services provided by any other of the Debtors' professionals.

## RELIEF REQUESTED

11.    By this Fifth Supplemental Application, the Debtors seek authorization to employ and retain E&Y nunc pro tunc to December 1, 2011, to provide the Tax Services in accordance with the SOW.  At Tribune's request, E&Y began providing the Tax Services on or about that date, pending the filing of this Fifth Supplemental Application and Court approval hereof.

12.    Subject to the Court's approval, E&Y will charge the Debtors for its performance of the Tax Services on the basis described in the SOW, in accordance with the applicable orders of this Court concerning the compensation of professionals in the Debtors' chapter 11 cases.  The applicable fees that E&Y will charge the Debtors in connection with the

Tax Services are set forth in the SOW.  See Exhibit B.  Specifically, E&Y's fee for the Tax

Services will be computed at 25% of the Refunds (as described in the SOW) or Credits (as

defined in the SOW) identified and recovered in connection with the Tax Services.  The Debtors

will also pay E&Y's expenses and reimbursements in accordance with the terms of E&Y's

Original Engagement Letter, which has been previously approved by the Court.

### LEGAL AUTHORITY

13.    The Debtors' existing retention of E&Y, and the proposed modification of

that retention described herein, are pursuant to section 327(a) of the Bankruptcy Code, which

provides in relevant part that a debtor in possession, with the Court's approval, may employ

professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse

to the estate," and that are "disinterested persons."  11 U.S.C. §§ 327(a) and 1107; see also In re

BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R.

835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained under section 327(a), such

professional "must 'not hold or represent an interest adverse to the estate' and must be a

'disinterested person.').  A "disinterested person" is defined as one who does not have an interest

materially adverse to the interest of the estate, by reason of any direct or indirect relationship

with the debtor, or for any other reason.  See 11 U.S.C. § 101(14)(e).

14.    To the best of the Debtors' knowledge, information and belief, and based

on E&Y's representations in the Sixth Supplemental Howley Affidavit and the Prior Affidavits,

E&Y is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible

for retention and employment in these cases.

15.    In the instant case, modifying the scope of E&Y's representation to

include the Tax Services is in the best interests of the Debtors' estates, and satisfies all other

standards for retention under sections 327(a) and 1107 of the Bankruptcy Code. E&Y is best

positioned to perform the needed services efficiently and economically on behalf of the Debtors.

The partners, managers and staff of E&Y, through E&Y's prior work for the Debtors, are very

familiar with the Debtors, including the Subject Debtors, and their business operations.

Furthermore, as discussed above, E&Y has already been retained by the Debtors to perform

advisory services relating to sales and use taxes and personal property taxes. E&Y's current

provision of sales and use tax services to the Debtors, coupled with E&Y's experience in this

field, leads the Debtors to believe that retaining E&Y to provide the Utility Study and, if

necessary, file appropriate sales and use tax refund claims, is both efficient and sensible. The

Debtors therefore request this Court's authorization to approve the expansion of E&Y's retention

to include the Tax Services pursuant to the terms of the SOW, nunc pro tunc to December 1,

2011.

16.     The Debtors seek to retain E&Y nunc pro tunc to December 1, 2011, the

point at which E&Y first began providing the Tax Services to the Subject Debtors. It is well

established that a bankruptcy court has the power to grant retroactive approval of employment of

a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d

Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28, 2002). In

determining whether the court should exercise its discretion to grant retroactive approval the

bankruptcy court must find that it would have granted prior approval pursuant to the

requirements of section 327(a), and may consider additional factors such as (1) whether the

applicant was under time pressure to begin service without approval; (2) the amount of delay;

and (3) the extent to which compensation to the applicant will prejudice innocent third parties.

In re Arkansas Co., Inc., 798 F.2d at 650.

17.     In order for E&Y to conduct a fulsome study and to ensure the filing of any refund claims by any applicable deadlines, it was necessary for E&Y to begin the Tax Services on December 1, 2011.

18.     Importantly, per the terms of the SOW, E&Y will not be entitled to any payments for fees related to the Tax Services until, and unless, the Subject Debtors actually receive Refunds (as defined in the SOW) or Credits (as defined in the SOW) identified and recovered in connection with the Tax Services.  Accordingly, no prejudice to the Debtors' estates or to any interested parties will result on account of the nunc pro tunc retention because E&Y will actually receive payments for fees for the Tax Services to the extent the Subject Debtors actually receive Refunds (as defined in the SOW) or Credits (as defined in the SOW) identified and recovered in connection with the Tax Services.  The Debtors therefore request that the Court approve E&Y's retention on a nunc pro tunc basis.

**NOTICE**

19.     Notice of this Fifth Supplemental Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to E&Y; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

20.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors' Fifth Supplemental Application and retention of E&Y to perform the Tax Services in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code <u>nunc pro tunc</u> to December 1, 2011, pursuant to the terms of the SOW, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated:  December 22, 2011

TRIBUNE COMPANY
(for itself and on behalf of each Debtor)

Patrick Shanahan
Vice President, Tax

10