**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------- x    Chapter 11
In re:                                                     :
                                                           :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                                   :
                                                           :    Jointly Administered
            Debtors.                                       :
                                                           :    Objections Due:  January 17, 2012
                                                           :    @ 4:00 p.m.(ET)
--------------------------------------------------------- x    Hearing Date: N/A


**THIRTY-FIFTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS
CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
NOVEMBER 1, 2011 THROUGH NOVEMBER 30, 2011**


| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | November 1, 2011 through November 30, 2011 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $541,214.40   (80% of $676,518.00) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $  34,425.04 |


This is a(n):    _x__ Monthly        ____ Interim        ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application.  Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2011 | December 12, 2011 | $737,989.71 |

**TRIBUNE COMPANY, et al.**

**SUMMARY OF HOURS**

**November 1, 2011 through November 30, 2011**

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012** HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | 995 | 81.10 | 80,694.50 |
| Richard M. Leder (1998) | Tax | 1962 (NY) | 995 | 5.40 | 5,373.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 124.20 | 113,497.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 37.50 | 32,812.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 108.10 | 80,534.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 142.50 | 105,305.75 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 705 | 2.40 | 1,692.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 58.00 | 40,310.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 4.60 | 2,967.00 |
| | | | | | |
| **Associate:** | | | | | |
| Alexandra K. Nellos | Litigation | 2004 (NY) | 655 | 3.60 | 2,358.00 |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 655 | 7.80 | 5,109.00 |
| Robert Kirby | Litigation | 2008 (NY) | 595 | 1.80 | 1,071.00 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012** HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 33.70 | 19,040.50 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 40.50 | 20,047.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 164.10 | 79,026.75 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 36.60 | 15,921.00 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 127.60 | 55,506.00 |
|  |  |  |  |  |  |
| **Paraprofessionals:** |  |  |  |  |  |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 30.80 | 9,086.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 20.90 | 6,165.50 |
|  |  |  |  |  |  |
| **TOTAL:** |  |  |  | **1,031.20** | **$676,518.00** |

BLENDED RATE:      $600.36

---

\*  Includes year elected Partner at firm or joined firm as Partner.

\*\* Represents rate increase effective November 1, 2011.

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:

TRIBUNE COMPANY, et al.,

              Debtors.

---------------------------------------------------------- x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Objections Due: January 17, 2012
@ 4:00 p.m.(ET)
Hearing Date:  N/A

## THIRTY-FIFTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD NOVEMBER 1, 2011 THROUGH NOVEMBER 30, 2011

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $676,518.00 (80% of which equals $541,214.40 and reimbursement of expenses incurred in the amount of $34,425.04 during the period commencing November 1, 2011 through and including November 30, 2011 (the "Application Period").  This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order").  In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.    Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.    On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm.  See Section 1129(c).  The Court stated that, given those options, it would select the DCL Plan.

10.    On November 18, 2011, the proponents of the DCL Plan filed their Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (the "Third Amended DCL Plan").

## COMPENSATION PAID AND ITS SOURCES

11.    All services for which compensation is requested by Chadbourne were performed for or on behalf of the Committee.

---

[1]    The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the Noteholder Plan Proponents").

12.    During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.    The fee statement for the Application Period is attached hereto as Exhibit A.  This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2 (the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.    As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Application Period total $676,518.00.  The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

15.    The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

A.    **Bankruptcy General (Matter 002)**

Fees:  $12,852.00          Total Hours:  29.80

16.    During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17.    Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.     Committee Meetings (Matter 003)**

     Fees:  $109,885.50        Total Hours:  163.50

     18.     Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to the key issues.  In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

     19.     Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.     Creditor Communications (Matter 004)**

     Fees:  $4,639.50        Total Hours:  7.10

     20.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.**    **Business Operations (Matter 007)**

Fees:  $4,980.00            Total Hours:  7.00

21.    During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group reviewed and analyzed the Court's Opinion on Confirmation to address implications on the FCC exit applications.  The CMT Group also participated in discussions and with the Debtors' FCC counsel regarding these and other FCC-related matters.

**E.**    **Claims Administration/Bar Date (Matter 009)**

Fees:  $11,633.50            Total Hours:  22.70

22.    During the Application Period, Chadbourne continued to expend efforts in connection with the disposition of claims.  Efforts included reviewing the Debtors' forty-eighth and forty-ninth omnibus objection to claims.  Chadbourne reviewed and evaluated the relief requested in the motions as well as the bases and processes followed by the Debtors in pursuing the objections and summarized its review in a written report to the Committee.

23.    During the Application Period, Chadbourne expended further time in reviewing the Debtors' efforts to settle certain claims brought against the Debtors.  In particular, this work included review and analysis of proposed stipulations settling claims with (i) Northwestern Mutual Life Insurance Co. and (ii) Thrifty Oil Co.  Chadbourne reviewed and analyzed the terms of the proposed settlements and prepared a detailed report to the Committee summarizing its analysis and recommendation on same.

**F.**     **Fee/Retention Applications (Matter 010)**

Fees:    $10,480.00              Total Hours:  26.00

24.     Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparation and filing of Chadbourne's thirty-fourth monthly fee application.

25.     During the Application Period, further efforts were expended in reviewing and responding to professional retention/employment matters.   Specifically, Chadbourne reviewed the Debtors' application to convert the existing retention of SNR Denton as ordinary course professional to a non-ordinary course professional.  Chadbourne summarized its analysis and recommendation in a written report to the Committee.

26.     In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**G.**     **Avoidance Issues (Matter 013)**

Fees:    $8,047.00              Total Hours:  11.80

27.     During the Application Period, Chadbourne attorneys continued to review and address various issues in connection with the potential preference actions asserted against current and former Tribune insiders and certain other entities (the "Preference Actions").  In light of the Court's denial of the competing plans and upcoming December 13, 2011 deadline of the litigation stay on the Preference Actions, Chadbourne participated in discussions with the

Committee's co-counsel and reviewed and commented on the appropriate court papers seeking to maintain the stay pending resolution of the confirmation proceedings.

28.     In addition, during this time, Chadbourne was engaged with follow-up related to the Committee's pending stayed Preference Actions against the Debtors' professionals and certain officers and directors of the Debtors.  Efforts included review of expiring tolling agreements with certain of the Debtors' professionals and conferences with the Committee's co-counsel and Debtors' counsel to coordinate efforts to obtain extensions of the tolling agreements.

**H.     Employee Issues (Matter 014)**

    Fees:  $4,904.50          Total Hours:  8.50

29.     During the Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters. Efforts included review and analysis of the terms of a severance agreement with an additional departing senior executive of Tribune.  In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departures and consulted with the Committee's financial advisors about their analysis of the departure arrangements.  Chadbourne summarized its analysis and recommendations in memoranda to the Committee.

30.     During this time, the Debtors filed a motion seeking approval of a settlement with Randy Michaels.  Chadbourne attorneys reviewed and analyzed the proposed settlement to ensure that it was consistent with the settlement terms reached with the Committee.  The Debtors' motion was granted on December 13, 2011.

**I.**     **Tax Issues (Matter 016)**

    Fees:  $4,577.00          Total Hours:  4.60

    31.     During the Application Period, Chadbourne tax professionals reviewed and analyzed various tax issues arising from the Court's Opinion on Confirmation.  Chadbourne professionals also reviewed tax issues in the draft Third Amended DCL Plan and related disclosure documents.

**J.**     **General Litigation (Matter 017)**

    Fees:  $2,700.50          Total Hours:  3.90

    32.     During the Application Period, Chadbourne attorneys continued to monitor and review the various adversary proceedings pending in connection with the Debtors' Chapter 11 cases.

**K.**     **Travel (Matter 018)**

    Fees:  $4,447.00          Total Hours:  14.20

    33.     During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend omnibus hearings at the Bankruptcy Court.  A Chadbourne attorney also travelled to Savannah, Georgia to attend the hearing before the Judicial Panel on the multi-district litigation issue.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**L.    Shareholder Claims (Matter 020)**

Fees:   $19,232.00          Total Hours:   33.80

34.     During the Application Period, Chadbourne attorneys continued to review and analyze case activity in connection with the various lawsuits filed by the Retirees[2] and the Noteholders[3] seeking state law constructive fraudulent conveyance claims ("SLCFC Claims") against Tribune's former stockholders in connection with the 2007 leveraged buyout of Tribune Company.  Chadbourne examined various issues raised in court filings and the related multidistrict litigation proceedings in order to keep the Committee apprised of the status of the proceedings and any potential implications on the Debtors' Chapter 11 cases.

35.     During the Application Period, Chadbourne litigation professionals and the Committee's co-counsel were engaged in reviewing and addressing the recent demands of certain shareholders that the Committee dismiss specific claims brought by the Committee related to the LBO/ESOP transaction.  Efforts included review and analysis of their grounds for relief and collaboration with the Committee's co-counsel in preparing an appropriate response to the demands.

---

[2]   The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110 affiliates or subsidiaries of Tribune Company.

[3]   The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

**M.**   **Plan Litigation (Matter 021)**

Fees:  $478,139.50          Total Hours:  698.30

36.     On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  In efforts to move the Debtors' Chapter 11 cases toward plan confirmation as expeditiously as possible, Chadbourne professionals were substantially engaged, on behalf of the Committee, in analyzing, addressing and responding to a variety of issues raised as a result of the Court's decision.

37.     The Court's findings with respect to the DCL Plan's application of the PHONES Notes subordination provisions raised concerns with holders of claims in various unsecured creditor classes.  Certain parties asserted that a material portion of the DCL Plan settlement should not be subject to the contractual subordination provisions of the PHONES Notes or EGI-TRB LLC Notes.  Other parties took the opposite position.  In connection therewith, Chadbourne negotiated with attorneys for the DCL Plan Proponents to create a proposal for addressing disputes over distributions to certain unsecured creditor classes under the DCL Plan. Chadbourne attorneys also participated in discussions with Committee members to obtain their views.  Ultimately, the Committee endorsed the Allocation Dispute Protocol which was incorporated into the Third Amended DCL Plan.

38.     During the Application Period, three motions for reconsideration of the Court's Opinion on Confirmation were filed by Noteholder Plan Proponents -- two of which related to subordination and one of which identified three specific issues.  Chadbourne reviewed and analyzed the relief requested in the motions as well as the various objections, joinders and responses filed in connection therewith.  Chadbourne prepared a summary analysis of the issues

12

set forth in the motions for reconsideration which was presented to the Committee. In addition, on November 14, 2011 the Noteholder Plan Proponents filed a Notice of Appeal. Chadbourne attorneys continued their review and analysis of the various legal issues relating to the bankruptcy appellate process.

39.     During this time, Chadbourne bankruptcy professionals were also actively engaged in reviewing and finalizing the Third Amended DCL Plan and various disclosure documents. Efforts included numerous rounds of negotiating sessions with other DCL Plan Proponents to consider strategies that would resolve open issues. Chadbourne participated in discussions with the Committee to keep them informed regarding the progress of the plan amendments. On November 18, 2011, the DCL Plan Proponents filed the Third Amended DCL Plan. Other Third Amended DCL Plan-related documents -- including the supplemental disclosure statement, allocation dispute protocol exhibit, status report in connection with filing the Third Amended DCL Plan and the resolicitation motion were also filed that day.

40.     Chadbourne attended the November 22, 2011 status hearing where the Debtors presented a summary of the DCL Plan amendments and confirmation timetable. Chadbourne spoke on behalf of the Committee and stressed the importance of implementing the Court's decision, maintaining creditors' bargained-for expectations, and creating a viable structure for the Company's prompt emergence from bankruptcy. Because the Noteholders expressed concerns with the DCL Plan Proponents' proposed scheduling of confirmation-related proceedings and the process for resolution of the allocation disputes, the Court asked the parties to meet and confer to potentially obtain consensus on the process. The Court scheduled a further hearing for November 29, 2011.

13

41.     During this time, Chadbourne, on behalf of the Committee, participated in discussions with the various case parties to try to reach a consensus on the confirmation process.  Chadbourne attended the November 29, 2011 hearing where the Debtors informed the Court that, despite discussions on process, the parties, nevertheless, disagree on certain issues with respect to allocation disputes and disclosure/resolicitation timing.  Ultimately, the Court scheduled further hearings for mid December on the three reconsideration motions and on the scheduling request.

<u>**ACTUAL AND NECESSARY EXPENSES**</u>

42.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $34,425.04 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.  Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

43.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

44.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

45.    In connection with the LBO/ESOP transaction investigation Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS").  Chadbourne continues to use the CDS services in connection with the plan confirmation process in reviewing and analyzing the various trial exhibits and documents presented at the confirmation hearing for potential admission on the trial record.   In addition, Chadbourne is reviewing and analyzing certain documents regarding issues raised in recent caselaw that may have implications on confirmation of the DCL Plan.  The CDS charges incurred during the Application Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

46.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

47.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

48.    Attorneys and paraprofessionals of Chadbourne have expended a total of 1,031.20 hours in connection with the matter during the Application Period. The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto. These are Chadbourne's normal hourly rates for work of this character. The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $676,518.00.

49.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

50.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title. Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period November 1, 2011 through November 30, 2011:  (a) authorizing compensation in the amount of $676,518.00 (80% of which equals $541,214.40) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $34,425.04 for a total of $710,943.04; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   December 21, 2011
         New York, New York

                                        CHADBOURNE & PARKE LLP

                                        By: _____
                                            Douglas E. Deutsch
                                            (A Member of the Firm)

                                        Chadbourne & Parke LLP
                                        30 Rockefeller Plaza
                                        New York, New York  10112
                                        (212) 408-5100

                                        Co-Counsel to The Official Committee of
                                        Unsecured Tribune Company, et al.

# **VERIFICATION**

STATE OF NEW YORK      :
                                          :  ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)      I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been

admitted to the bar of the State of New York since 1997.

(b)      I am familiar with the work performed on behalf of the Committee by the lawyers

in the firm.

(c)      I have reviewed the foregoing Application and the facts set forth therein are true

and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed

Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

Douglas E. Deutsch

Sworn to before me this
21st day of December 2011

Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014