# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 11 |
|---|---|
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## SUPPLEMENTAL AFFIDAVIT OF KPMG LLP AS ORDINARY COURSE PROFESSIONAL

STATE OF ILLINOIS )
: ss.:
COUNTY OF COOK )

I, Scott E. Moresco, being duly sworn, deposes and says:

1. I am a partner of KPMG LLP ("KPMG" or the "Firm"), which maintains offices at 303 E. Wacker Drive, Chicago, Illinois 60601-5255. KPMG is the United States member firm of KPMG International, a Swiss cooperative.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2. This Supplemental Affidavit is submitted in connection with an Order of the United States Bankruptcy Court for the District of Delaware, entered on or about December 26, 2008, authorizing the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), to employ and compensate certain professionals in the ordinary course of business during the pendency of these chapter 11 cases, in order to supplement the Affidavit of Ordinary Course Professional dated April 6, 2010 submitted by Violet Goodheart (the "Original Affidavit").

3. Pursuant to an engagement letter dated December 15, 2011 and attached hereto, the Debtors have requested, and the Firm has agreed, to provide additional tax consulting services to the Debtors during the course of these chapter 11 cases.

4. The majority of fees to be charged in this engagement reflect a reduction of approximately 70% from the Firm's normal and customary rates, depending on the types of services to be rendered:

| **Tax Consulting Services** | **Discounted Rate** |
|---|---|
| Partners | $680 |
| Senior Managers | $630 |
| Managers | $540 |
| Senior Associates | $400 |
| Associates | $245 |
| Para-Professionals | $155 |

5. In the normal course of its business, the Firm revises its billing rates on October 1st of each year and requests that, effective October 1st of each year, the aforementioned

rates be revised to the regular hourly rates which will be in effect at that time. The rates indicated above are the revised rates that will be in effect as of October 1, 2011.

6. To the best of my knowledge, the Firm neither holds nor represents an interest adverse to the Debtors' estates that would impair the Firm's ability to objectively perform professional services for the Debtors, in accordance with section 327 of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 4, 2012

Scott E. Moresco
Partner, KPMG LLP

Sworn to and subscribed before me
this _4th_ day of January, 2012

Notary Public

NOTARY PUBLIC OFFICIAL SEAL STATE OF ILLINOIS
LOUISE B KLERONOMOS
MY COMMISSION EXPIRES
APRIL 6, 2014



**KPMG LLP**
One Cleveland Center
Suite 2600
1375 East Ninth Street
Cleveland, OH 44114-1796

Telephone +1 216 696 9100
Fax +1 216 696 7792
Internet www.us.kpmg.com

December 15, 2011

PRIVATE

Mr. Patrick Shanahan
V.P. Tax
Tribune Company
435 N Michigan Ave
Chicago, IL 60611

Dear Patrick:

We are pleased you have engaged KPMG LLP (KPMG) to provide tax consulting services for Tribune Company ("Tribune" or "Client") with respect to Tribune and its wholly-owned subsidiaries. This letter confirms the scope and related terms of your engagement of KPMG.

**Scope of Services**

We will provide tax consulting services with respect to such matters that may arise for which you seek our advice, both written and oral, and that are not the subject of a separate engagement letter. However, we will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

The general tax consulting services included in this general tax consulting engagement letter pertain to: (1) routine tax advice concerning federal, state, local and foreign tax matters related to the preparation of the prior year's federal, state, local, and foreign tax returns; (2) routine tax advice concerning the federal, state, local, and foreign tax matters related to the computation of the client's taxable income for the current year or future years; and (3) routine dealings with a federal, state, local, or foreign tax authority (e.g., responding to automated interest and penalty notices, preparing tax computations based upon the taxpayer's concession or settlement of issues.

If matters exceed the scope of this engagement letter, we will issue a separate engagement letter to confirm the scope and related terms of any additional engagements. Furthermore, a separate engagement letter will be issued for each discrete tax consulting project not specified in this engagement letter (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation.

When, in the course of providing general tax consulting services, it is determined that the services would exceed the scope of this letter, preliminary engagement planning activities undertaken prior to the issuance of an engagement letter for the discrete tax consulting project are intended to be covered by this engagement letter.

To be of greatest assistance to Tribune, we should be advised **in advance** of proposed transactions.

KPMG LLP is a Delaware limited liability partnership, the U.S. member firm of KPMG International Cooperative ("KPMG International"), a Swiss entity.





We do not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 (Covered Opinion). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.

However, if our services will rise to the level of a Covered Opinion, we will issue a separate engagement letter.

**Tax Advice Standards**

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. KPMG applies elevated standards in providing tax advice. In this regard, if a return position relates to a transaction that is a "principal purpose transaction," we must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by a tax authority) with respect to the position. If the position does not relate to a "principal purpose transaction," we must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by a tax authority). Stricter minimum tax return preparation standards will be applied to "Tax Shelters" (as defined in IRC §6662(d)(2)(C)(ii)). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. In determining whether a return position meets the appropriate standard, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

**Fees**

Our fee for this engagement will be based on the actual time incurred to complete the work at 70% of our standard hourly rates for the individuals involved in providing the services. Prior to assigning personnel to perform the services we will inform you of the applicable hourly rate and will provide information regarding the qualifications of such individuals upon request.

In addition, we will bill you for our reasonable out-of-pocket expenses (e.g., travel, lodging, meals, etc.) for trips approved in advance by Tribune.

We will endeavor to notify you if we encounter any circumstances that warrant additional time or expense. We will discuss and receive approval from Tribune for any additional fees prior to





proceeding with the work. If such matters exceed the scope of this engagement letter, we will issue an addendum or separate engagement letter to confirm the scope and related terms of any additional engagements.

We will render progress billings to Tribune as work is performed, including reasonable detail regarding the services performed and expenses incurred.

* * * * * * *

The attached Standard Terms and Conditions for Advisory and Tax Services (October 1, 2011 Release) ("Standard Terms") are made a part of this engagement letter, except with respect to the following agreed upon modifications to the Standard Terms, which modifications are incorporated therein and herein and made a part of this engagement letter:

<u>Paragraph 6 - Limitation on Damages.</u> The first sentence of Paragraph 6 is deleted and replaced with the following first sentence:

> "Except for the respective indemnification obligations of Client and KPMG set forth herein, and except for KPMG's willful misconduct or fraud, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or owing to KPMG under the Engagement Letter."
>
> <u>Paragraph 14(c) - Alternative Dispute Resolution.</u> The first sentence of Paragraph 14(c) is deleted and replaced with the following first sentence:"Arbitration shall take place in Chicago, Illinois."

In the event of any inconsistency between the terms of this engagement letter and the Standard Terms, the Standard Terms shall govern; provided, however that we shall provide prior notice to you and obtain your approval before we, pursuant to Paragraphs 15(a) and (b) of the Standard Terms, engage a subcontractor, agent and/or offshore resources to perform services under this engagement letter. KPMG shall be responsible for compliance by KPMG's employees, contractors and agents with KPMG's obligations, including the confidentiality obligations under the Standard Terms.

Please sign the enclosed copy of this engagement letter to confirm our agreement and return it to us as soon as possible so that we may begin work on this engagement.

Unless otherwise terminated, modified, or superseded in writing, this engagement letter is intended to apply for a period of 15 months from the date of signing by the client. In addition, effective as of the date of signing, this engagement letter supersedes any and all previously issued engagement letters pertaining to the services described above.





If you have any questions, please call me.

Very truly yours,

KPMG LLP

Mark E. Barrus
Partner

MEB:jm

Enclosure:
Standard Terms and Conditions for Advisory and Tax Services

ACCEPTED

Tribune Company

______________________
Authorized Signature

______________________
Title

______________________
Date



# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities.**

(a) References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"). Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." KPMG, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents are collectively referred to herein as the "KPMG Parties."

(b) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client.

(c) If KPMG audits the financial statements of Client or provides any other attestation services to Client, the rules of the American Institute of Certified Public Accountants ("AICPA") require Client to agree to the following provisions of this Paragraph 1(c). In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(d) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables.**

(a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, (i) concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software and (ii) the general elements of style, design, art work and graphics and content of general applicability included in KPMG's Deliverables (as defined below) or work product not specific to Client or the services under the engagement letter (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

(b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables. Client acknowledges and agrees that KPMG shall have the right to retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 11 below.

(c) Client acknowledges and agrees that any advice, recommendations, information, Deliverables or other work product provided to Client by KPMG in connection with the services under the Engagement Letter is intended for Client's sole benefit and KPMG does not authorize any other party to rely upon such advice, recommendations, information, Deliverables or other work product and any such reliance shall be at such party's sole risk. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Client may only make a Deliverable bearing the "KPMG" name or logo available to a third party in its entirety. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with AICPA and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the



## KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for the respective indemnification obligations of Client and KPMG set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or owing to KPMG under the Engagement Letter. In no event shall any of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, tort (including but not limited to negligence) or otherwise.

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (iii) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in clauses (i) or (ii) above, Client shall return the allegedly infringing item to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) KPMG agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the Client Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties. Client agrees to indemnify, hold harmless and defend the KPMG Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the KPMG Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

(b) In accordance with Paragraph 4(c), Client agrees to indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim to the extent resulting from such party's reliance upon KPMG's advice, recommendations, information, Deliverables or other work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute or tort (including without limitation negligence) by KPMG.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional details regarding KPMG's access to and use of personnel, facilities, equipment, data and information.

(b) The Engagement Letter may set forth additional obligations of Client in connection with the services under the Engagement Letter necessary for KPMG to perform its obligations under the Engagement Letter. Client acknowledges that its failure to satisfy these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(c) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the



# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material adverse effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) relates to information provided by KPMG relating to the tax treatment or tax structure of any transaction; (5) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction; or (6) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(b) The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. Except as otherwise set forth in this Paragraph 11 or Paragraph 15 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

(c) The KPMG Parties may aggregate Client information with information from other sources in connection with thought leadership projects, to improve the delivery of services to clients and to allow clients to evaluate various business transactions and opportunities. The KPMG Parties will only use this information without attribution to Client and under circumstances where Client will not be identified as the source of the information.

(d) KPMG may also use Client information and information relating to the services rendered under the Engagement Letter for the purpose of permitting the KPMG Parties to access and share knowledge and information solely among the KPMG Parties. The KPMG Parties receiving this information will be obligated to comply with confidentiality obligations with respect to such information in accordance with this Paragraph 11.

(e) Each party shall exercise the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(f) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law, provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event the Receiving Party is requested to testify or produce its documents relating to the services under the Engagement Letter pursuant to subpoena or other legal process in judicial or administrative proceedings to which it is not a party, or in connection with an informal inquiry or investigation with the consent of the Disclosing Party, the Disclosing Party shall reimburse the Receiving Party for its time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

12. **Assignment.** Subject to Paragraph 15 below, neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld.

13. **Governing Law; Severability.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-



# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**15 Use of Member Firms and Third Party Service Providers.**

(a) Client acknowledges and agrees that the services under the Engagement Letter, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of any other Member Firm.

(b) Client further acknowledges that in connection with the performance of services under the Engagement Letter, KPMG and Member Firms, in their discretion or at Client's direction, may utilize the services of third party service providers within and without the United States to complete the services under the Engagement Letter.

(c) KPMG uses third party service providers within and without the United States to provide at KPMG's direction administrative and clerical services to KPMG. These third party service providers may in the performance of such services have limited access to information, including but not limited to Confidential Information, received by KPMG from or at the request or direction of Client. KPMG represents to Client that each such third party service provider has agreed to conditions of confidentiality with respect to Client's information to the same or similar extent as KPMG has agreed to pursuant to Paragraph 11 above. KPMG has full responsibility to cause these third party service providers to comply with such conditions of confidentiality and KPMG shall be responsible for any consequences of their failure to comply.

(d) Accordingly, Client consents to KPMG's disclosure to a Member Firm or third party service provider and the use by such Member Firm and third party service provider of data and information, including but not limited to Confidential Information, received from or at the request or direction of Client for the purposes set forth in Paragraph 11 and this Paragraph 15.

(e) Any services performed by a Member Firm or third party service provider shall be performed in accordance with the terms of the Engagement Letter and these Standard Terms and Conditions, including Paragraph 11 (Confidentiality), but KPMG shall remain responsible to Client for the performance of such services. Client agrees that any claim relating to the services under the Engagement Letter may only be made against KPMG and not any other Member Firm or third party service provider referred to above.

**16. Miscellaneous.**

(a) **Sarbanes-Oxley.** Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) **Electronic Communications.** KPMG and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). Client agrees that the final hardcopy version of a document, including a Deliverable, or other written communication that KPMG transmits to Client shall supersede any previous versions transmitted electronically by KPMG to Client unless no such hard copy is transmitted.

(c) **California Accountancy Act.** For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) **Volume Rebates.** Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a



# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) **Use of Names and Logos.** Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

(f) **Privileged Communications.** Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to promptly notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(g) **Active Spreadsheets and Electronic Files.** KPMG may use models, electronic files and spreadsheets with embedded macros created by KPMG to assist KPMG in providing the services under the Engagement Letter. If Client requests a working copy of any such model, electronic file or spreadsheet, KPMG may, at its discretion, make such item available to Client for its internal use only and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

(h) **Non-Solicitation.** During the term of the Engagement Letter and for one year thereafter, neither party shall solicit for hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the services under the Engagement Letter, without such other party's express written consent. This prohibition shall not apply to any offers of employment which result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

17. **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representations, understandings or agreements relating thereto.

18. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(d) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.



**APPENDIX A**

**[FORM OF NOTICE AND ACKNOWLEDGEMENT]**

[Name of Third Party]
Address

The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and you are not authorized by KPMG to rely upon it and any such reliance by you or anyone else shall be at your or their own risk. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours,

[Name of Client]

By: ________________
Name:
Title:

**Accepted and Agreed to on this ___ day of ____, 20__ by:***

[Name of Third Party

By: ________________
Name:
Title:

*Remove in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) of the Standard Terms and Conditions in which case an acknowledgement is not required by the terms of Paragraph 4(c).