# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>                       Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: February 15, 2012 at 10:00 a.m. ET<br>Response Deadline: February 8, 2012 at 4:00 p.m. ET |

## DEBTORS' OBJECTION TO CLAIM NO. 3589 OF VINCE COMPARSI PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim No. 3589 filed against Los Angeles Times Communications LLC ("LATC") by claimant Vince Comparsi (the "Comparsi Claim"), a copy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-8210162v1

of which is attached hereto as Exhibit A, pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Objection, the Debtors submit the Declaration of Michael Bourgon, Vice President of Tribune Company (the "Bourgon Declaration"), a copy of which is attached hereto as Exhibit B. In further support of the Objection, the Debtors respectfully state as follows:

## INTRODUCTION

1. The Comparsi Claim should be disallowed in its entirety. Even assuming solely for sake of argument that all of the facts stated in the Comparsi Claim are true (although the Debtors categorically reject several of the assertions made therein),[2] neither LATC nor any of the other Debtors have any liability for the Comparsi Claim because such claim may be asserted only against the Tribune Company Cash Balance Pension Plan (the "Pension Plan"), which is not a Debtor in these chapter 11 cases. Indeed, the Comparsi Claim has been received and denied by the Tribune Company Employee Benefits Committee (the "Benefits Committee"), which has the exclusive authority to review benefits claims made against the Pension Plan and to make determinations regarding such claims, in accordance with the terms of the Pension Plan and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Mr. Comparsi retains all available remedies under the Pension Plan and ERISA to appeal that denial in the

---

[2] The Debtors reject Mr. Comparsi's assertions that he was ever or should ever have been classified as an employee of LATC or any other Debtor. There are many reasons for the Debtors' position, not least of which are the Distributor Agreement and sublease agreement submitted with the Comparsi Claim, which make clear that Mr. Comparsi was an independent contractor. The Court does not need to reach these questions, however, because the Comparsi Claim should be denied because it is improperly asserted against LATC, rather than against the Pension Plan. Neither LATC or any of the other Debtors waive any arguments concerning Mr. Comparsi's assertions that he was an employee of LATC or any other Debtor, or that he is otherwise entitled to receive pension benefits or any payments on account thereof. Furthermore, nothing in this Objection is intended to or shall be deemed to waive any rights of or determinations that may be made by the Pension Plan relating to Mr. Comparsi's eligibility for benefits thereunder or whether Mr. Comparsi has complied with the requirements of the Pension Plan and/or ERISA in asserting any claims against the Pension Plan.

appropriate non-bankruptcy forum, and will not be prejudiced by the entry of an order sustaining this Objection.

2.  The Comparsi Claim is asserted against LATC in an amount equal to the retirement benefits that Mr. Comparsi asserts would have been paid to him had LATC classified him as an employee, rather than an independent contractor. Under well-settled Federal law, any claim filed by a pension plan participant (or, in this case, a purported plan participant) to recover benefits or enforce rights under the terms of an ERISA plan may only be asserted in accordance with the provisions of ERISA. ERISA preempts law to the contrary, including where a participant or purported participant attempts to recover such benefits or enforce such rights against an entity other than the plan. In other words, to the extent Mr. Comparsi seeks to assert the Comparsi Claim against LATC or any of the other Debtors for the purpose of avoiding or bypassing the claims procedures set forth in the Pension Plan, by seeking to recover benefits from an entity other than the Pension Plan, such claim is preempted. Instead, ERISA provides that claims for pension benefits may only be recovered from the applicable pension plan, and that the remedies available to participants or purported participants are limited to those provided under ERISA. In short, as discussed in detail below, this Court should follow well-settled precedent and disallow the Comparsi Claim.

## STATUS OF THE CASE AND JURISDICTION

3.  On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

46429/0001-8210162v1

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

4. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (Docket Nos. 43, 2333).

5. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

## FACTUAL BACKGROUND CONCERNING THE OBJECTION

### A. Background Concerning The Comparsi Claim

8. The Comparsi Claim was received on June 5, 2009 and recorded as Claim No. 3589 on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent"). The Comparsi Claim is asserted against LATC in the amount of $1,560,043.00, which makes it among the highest-value individual claims presently asserted in the Debtors' chapter 11 cases. (See Comparsi Claim at 1.)

46429/0001-8210162v1

9. Appended to the Comparsi Claim is a "Rider" that sets forth the factual basis asserted in support of the Comparsi Claim.[4] (See Comparsi Claim at 2.) In the Rider, Mr. Comparsi states that he was a former distributor for the Los Angeles Times, a newspaper published by LATC. A copy of Mr. Comparsi's Distributor Agreement with LATC is appended to the Comparsi Claim. (See Comparsi Claim at 3-18.) A copy of a sublease agreement between Mr. Comparsi and LATC, for the sublease of space in LATC's distribution center, is also appended to the Comparsi Claim. (See Comparsi Claim at 19-30.) Mr. Comparsi states further that he is entitled to a claim in the amount of $1,560,043.00, which is the net present value of retirement benefits that Mr. Comparsi believes would have been payable to him if LATC had classified him as an employee of LATC, rather than as an independent contractor.[5] (See Comparsi Claim at 2.)

**B.   Background Concerning The Pension Plan**

10. The Pension Plan provides retirement benefits to eligible employees of LATC, in accordance with the terms of the Pension Plan and ERISA.[6] (See Bourgon Decl. at ¶ 4.) The Pension Plan is sponsored by Tribune and is the primary pension plan established for the benefit of the Debtors' eligible employees. (Id.)[7] The Pension Plan is a tax-qualified, noncontributory, defined benefit plan subject to ERISA, and is tax-qualified under the relevant

---

[4] The Debtors have not received any other submissions or documentation in support of the Comparsi Claim. The Comparsi Claim does not relate to any pending prepetition litigation involving LATC or the Pension Plan.

[5] The claim amount apparently represents the projected net present value of a stream of benefit payments of $111,200 per year (80% of $139,000, the second-highest annual income earned by Mr. Comparsi in his 36 years as a distributor for LATC), over 21 years, with a discount rate of 4%. (See Comparsi Claim at 2.)

[6] The Pension Plan was formerly known as the "Times Mirror Pension Plan." The Times Mirror Pension Plan and the Tribune Company Pension Plan merged effective December 23, 2002, and, effective January 1, 2008, the merged plan was amended, restated, and renamed the "Tribune Company Cash Balance Pension Plan." (See Tribune Company Cash Balance Plan Summary Plan Description dated January 1, 2008 ("SPD") at 1, a copy of which is appended to the Bourgon Declaration as Attachment 1.)

[7] The Debtors maintain four qualified single-employer defined benefit pension plans and participate in 16 multiemployer plans pursuant to certain of their collective bargaining agreements. A description of each of such plans appears in the General Disclosure Statement dated December 15, 2010 at 25-27 [Docket No. 7232].

5

provisions of the Internal Revenue Code.[8] (Id.) The Benefits Committee, appointed by Tribune's board of directors, has the responsibility to administer the Pension Plan in accordance with ERISA.[9] (Id. at ¶ 5.) The Pension Plan is funded by tax-deductible employer contributions, which are held in trust for the exclusive purpose of providing benefits to plan participants and their beneficiaries.[10] ERISA § 403, 29 U.S.C. § 1103; I.R.C. § 401(a).

### C. Prior Communications From The Pension Plan To Mr. Comparsi Concerning The Comparsi Claim

11. In connection with its review and reconciliation of the Comparsi Claim, LATC referred the Comparsi Claim to the Benefits Committee for consideration. In June 2011, the Benefit Committee, as administrator for the Pension Plan, sent Mr. Comparsi a letter regarding the Comparsi Claim (the "June 2011 Letter"), a copy of which is appended to the Bourgon Declaration as Attachment 2. (See Bourgon Decl. at ¶ 7.) In the June 2011 Letter, the Benefits Committee notified Mr. Comparsi of its determination that the Comparsi Claim is not properly asserted against LATC, but rather should be asserted against the Pension Plan directly, in accordance with the terms of the Pension Plan and ERISA. (Id.) The Benefits Committee requested that Mr. Comparsi withdraw the Comparsi Claim as against LATC and advised Mr. Comparsi that the Benefits Committee would accept Mr. Comparsi's filings (and any additional

---

[8] A pension plan is either a defined contribution plan or a defined benefit plan. *See* ERISA §§ 3(2)(A), (34) and (35), 29 U.S.C. § 1002(2)(A), (34) and (35).

[9] The Benefits Committee is designated as the Plan Administrator pursuant to ERISA. (See Bourgon Decl. at ¶ 5; SPD at 2.) The term "administrator" is defined in ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), to mean "(i) the person specifically so designated by the terms of the instrument under which the plan is operated: [or] (ii) if an administrator is not so designated, the plan sponsor . . . ." As Plan Administrator, the Benefits Committee has the full discretion and authority to control and manage the Pension Plan's administration, including but not limited to complete and absolute discretionary authority and power to administer, interpret and construe the terms of the Pension Plan and to make determinations as to the right of any person to a benefit under the Pension Plan. (See Bourgon Decl. at ¶ 5.)

[10] A prior version of the Pension Plan that was in effect during the time that Mr. Comparsi was an independent contractor for LATC contained a contributory component. At no time did Mr. Comparsi make any contributions to the Pension Plan. See Bourgon Decl. at ¶ 6.) Nor did LATC make any contributions to the Pension Plan on behalf of Mr. Comparsi at any time, consistent with the terms of the Distributor Agreement, which provided that Mr. Comparsi was an independent contractor, not an employee. (See id.)

46429/0001-8210162v1

submissions he wished to make) as a written administrative claim for benefits under the terms of the Pension Plan. (Id.) The Benefits Committee received no response from Mr. Comparsi to the June 2011 Letter. (Id.) The Benefits Committee conducted a review of the Comparsi Claim and issued its determination denying benefits to Mr. Comparsi on December 20, 2011 (the "December 20 Letter"), a copy of which is appended to the Bourgon Declaration as Attachment 3. (See Bourgon Decl. at ¶ 8.) As described in detail in the December 20 Letter, Mr. Comparsi retains the right to seek review of the Benefits Committee's determination, in accordance with the Pension Plan's claims procedures and ERISA, in the appropriate non-bankruptcy forum. (Id.) The Benefits Committee received no response from Mr. Comparsi to the December 20 Letter. (Id.)

## RELIEF REQUESTED

12. By this Objection, the Debtors seek entry of an order, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing and expunging the Comparsi Claim in its entirety on the basis that the Comparsi Claim fails to state a claim against LATC. The Debtors also seek an order directing the Claims Agent to expunge the Comparsi Claim from the Claims Register so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.

## BASIS FOR RELIEF REQUESTED

13. When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—i.e., a document providing proof of a "right to payment"—against the debtor's estate. See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007); 11 U.S.C. § 101(5) (A "claim" for bankruptcy purposes means a "right to payment", whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured). This Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1)  such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers, 549 U.S. at 450-51 (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)). A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004). In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code. See 11 U.S.C. § 558.

14. Here the Comparsi Claim contains no actionable "right to payment" that could be asserted against LATC under applicable non-bankruptcy law, because the Comparsi Claim may properly be asserted only against the Pension Plan. As discussed in greater detail below, the Comparsi Claim asserts a right to pension benefits under an ERISA-covered plan, or damages in an amount equal thereto. Those claims may be asserted only against the Pension

8

Plan, and any attempt to assert such claims against LATC or any of the Debtors is barred by the preemption provisions in section 502(a) of ERISA, 29 U.S.C. § 1132.

A.  **ERISA Governs All Claims Asserted By Pension Plan Participants For Benefits Due Under The Pension Plan, Including the Comparsi Claim**

15.  The civil enforcement provisions of ERISA § 502(a) set forth the remedies available to plan participants and beneficiaries as against an ERISA-covered pension plan. See ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (providing that a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"); ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (providing for certain equitable remedies to redress "any act or practice which violates any provision of this subchapter or the terms of the plan" or "to enforce any provisions of this subchapter or the terms of the plan").

   a.  **The Pension Plan, Not LATC, Is The Proper Party In Interest**

16.  ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity" and that any resulting money judgment "shall be enforceable *only against the plan.*" See ERISA § 502(d)(1)-(2); U.S.C. § 1132(d)(1)-(2) (emphasis added). See also Helfrich v. Carle Clinic Ass'n, P.C., 328 F.3d 915, 916 (7th Cir. 2003) (under ERISA, a plan is a separate trust, a legal entity distinct from the employer-sponsor). Accordingly, there can be no dispute that if Mr. Comparsi seeks to obtain benefits from the Pension Plan, Mr. Comparsi may commence an action against the Pension Plan, and he may recover on such suit only from the Pension Plan, not from any of the Debtors.

17.  Case law makes clear that ERISA-governed plans, and not the sponsors thereof, are the proper parties to be pursued in seeking pension benefits. Specifically, it is well established that a person who does not have the power to provide plan benefits in administration

of an ERISA plan is not a proper defendant in a claim seeking such benefits. See May v. Roadway Express, Inc., 813 F. Supp. 1280, 1286 (E.D. Mich. 1993) (dismissing claims against an employer where it was not shown that the employer was a plan administrator and holding "any judgment against a plan is enforceable against only the plan as an entity"); Garratt v. Knowles, 245 F.3d 941, 945 (7th Cir. 2001) (upholding district court's dismissal of a state law tortious interference lawsuit brought against the employer's Board of Directors, which had amended Plaintiffs' SERP, finding the claims were pre-empted by ERISA and brought against the wrong defendants).

    18. Here, the Benefits Committee, as administrator of the Pension Plan, makes all decisions concerning the benefits provided under the Pension Plan independent of control or influence of Tribune or any of its affiliates, including LATC. (See Bourgon Decl. at ¶ 5.) The Pension Plan is not a Debtor in these chapter 11 cases, and the benefits paid to participants and beneficiaries by the Pension Plan are paid through a tax-qualified trust that is not under the Debtors' control and whose assets are not assets of the Debtors' estates. See 11 U.S.C. § 541(b)(7) (contributions to ERISA-governed employee benefit plans excluded from property of the estate). Thus, eligible claims for pension benefits based on an employment relationship with LATC are paid by the Pension Plan, not by Tribune, LATC, or any of the other Debtors. The Comparsi Claim contains no allegation, much less evidence, that contradicts the fact that LATC does not administer the Pension Plan and has no control over how benefits are paid to participants. Accordingly, any claim that Mr. Comparsi may have for retirement benefits attributable to his relationship with LATC may only be asserted against the Pension Plan, pursuant to ERISA, and not against LATC.

10

### b. ERISA Preempts Any State Law Claims Against LATC That Fall Within the Scope Of ERISA's Civil Enforcement Provisions

19. ERISA reinforces the fact that Mr. Comparsi's sole remedies lie against the Pension Plan by preempting any action outside of ERISA's provisions, such as the Comparsi Claim. The Comparsi Claim seeks payment of an amount equal to what Mr. Comparsi claims is the present cash value of the benefits to which he asserts he is entitled under the Pension Plan. (See Comparsi Claim.) Although the Comparsi Claim does not explicitly state the legal theory on which the relief requested is predicated, to the extent the Comparsi Claim may be construed as sounding in contract or tort, i.e., on a theory that LATC is directly liable to Mr. Comparsi because it erred in classifying Mr. Comparsi as an independent contractor, thus depriving him of eligibility for retirement benefits, such state law causes of action are preempted by ERISA.[11] It is black-letter law that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004). Regardless of how Mr. Comparsi styles his claim or whether he denominates the present cash value under the Pension Plan as "benefits" or "damages," however, the Comparsi Claim remains "tied directly to the nature and existence of the Company's [ERISA] plan." Briscoe v. Fine, 444 F.3d 478, 499 (6th Cir. 2006). As such, the law is clear that the Comparsi Claim is preempted in its entirety by ERISA's civil enforcement remedies, which are

---

[11] In ruling on this Objection, the Court is not required to make and should not make a determination as to whether Mr. Comparsi was properly characterized as an independent contractor in order to determine that Mr. Comparsi has no claim against LATC. As relevant background to this Objection, however, the Distributor Agreement between LATC and Mr. Comparsi that is attached to the Comparsi Claim provides that "Distributor understands and agrees that Distributor *shall not be entitled to any benefits* under the employee benefit plans of the Los Angeles Times, *regardless of any characterization or recharacterization of Distributor's status* by any governmental agency or court." (See Comparsi Claim at 7, Distributor Agreement § 6(a) (emphasis added).)

11

the exclusive means by which Mr. Comparsi may pursue whatever claims he may be entitled to assert relating to the Pension Plan.

20.   Under the express preemption provision, ERISA preempts any state law that "relates to any employee benefit plan." See ERISA § 514(a), 29 U.S.C. § 1144(a).[12] ERISA's preemption clauses are "deliberately expansive" and are designed to "establish pension plan regulation as exclusively a federal concern." Alessi v. Raybetos-Manhattan, Inc., 451 U.S. 504, 523 (1981); see also Ingersoll-Rand Corp. v. McLendon, 498 U.S. 133 (1992) (reaffirming expansive definition of "relationship" to ERISA plans and broad scope of ERISA preemption). Courts uniformly hold that the civil enforcement provisions of ERISA § 502(a) are exclusive and preempt any other remedies. See, e.g., Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985) (ERISA does not create compensatory or punitive damage remedies where an administrator of a plan fails to provide benefits due under the plan); Ingersoll-Rand, 498 U.S. at 484-86 (holding that state law wrongful termination action against employer was preempted because cause of action fell within ambit of ERISA § 510); 1975 Salaried Retirement Plan For Eligible Employees of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992) (holding former employees' state law claims against employer for breach of contract based on alleged denial of pension benefits were preempted because such claims "related to" an ERISA-governed plan); Fitzgerald v. Codex Corp., 882 F.2d 586, 588 (1st Cir. 1989) (concluding that preemption extends to "causes of action within the scope of the civil enforcement provisions of ERISA").

21.   For example, the Supreme Court in Pilot Life found that a plaintiff's state law claim for tortious breach of contract arising from a denial of disability benefits under his employer's benefits plan "undoubtedly meets the criteria for preemption under § 514(a)." Pilot

---

[12] "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." ERISA § 514(c)(1), 29 U.S.C. § 1144(c)(1).

12

Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 (1987). Similarly, in Davila, the Supreme Court found that where plaintiffs "bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA," such claims are preempted. Davila, 542 U.S. at 214. See also Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44 (1st Cir. 2000) (holding that plaintiff's state law contract claim was preempted as seeking an alternative recovery to pension benefits claims under ERISA, based in part that plaintiff calculated the amount of his alleged damages by reference to the amount he expected to recover under the pension plan); Turner v. Fallon Community Health Plan, 127 F.3d 196 (1st Cir. 1997) (finding state common law claims for breach of contract for denial of benefits were preempted and declining to fashion a damages remedy not authorized by ERISA's remedial scheme);[13] Tomczyk v. Blue Cross & Blue Shield United of WI, 951 F.2d 771, 777 (7th Cir. 1991) ("because state law breach of contract and tortious interference with contract claims are preempted by ERISA, we affirm their dismissal") (citations omitted); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991) ("[V]irtually all state law claims relating to an employee benefit plan are preempted by ERISA."); Young v. Reconstructive Orthopaedic Assocs., II, P.C., 2005 U.S. Dist. Lexis 10377 (E.D. Pa. 2005) (holding that employee's state law claims premised on employer's failure to enroll in ERISA plan were preempted, based in part on fact that claims required reference to the plan and damages sought equaled benefits allegedly denied).

22.    Here, the Comparsi Claim is based on LATC's alleged "failure to classify [Mr. Comparsi] as an employee under the retirement plan" (See Comparsi Claim.). Mr.

---

[13] In Turner, the First Circuit held that although "absent preemption, any health benefit plan . . . could certainly be treated as a contract enforceable under state law and subject to the usual contractual remedies, including compensatory damages," ERISA's preemption clause "precludes state claims to enforce rights under an ERISA plan or to obtain damages for the wrongful withholding of those rights." Turner, 127 F.3d at 199.

46429/0001-8210162v1

Comparsi asserts that he has been harmed in an amount equal to the present value of prospective benefits he would have received from the Pension Plan had been an eligible participant. (Id.) The wrongful conduct alleged by Mr. Comparsi necessarily requires a determination of whether he is entitled to benefits under an ERISA-governed plan, and is therefore completely preempted.

### B. Mr. Comparsi Will Suffer No Prejudice If The Comparsi Claim Is Disallowed

23. The filing of bankruptcy by Tribune, LATC, and their affiliates does not impose any bar on Mr. Comparsi from asserting a pension benefits claim against the Pension Plan in accordance with the procedures prescribed by the Pension Plan and ERISA. Specifically, because the Pension Plan is not a Debtor, the automatic stay does not apply to the assertion of the Comparsi Claim against the Pension Plan. To that end, LATC submitted the Comparsi Claim to the Benefits Committee for review and the Benefits Committee agreed to treat the Comparsi Claim as a claim for benefits under the Pension Plan. (See Bourgon Decl. at ¶ 7.) Entry of an order sustaining this Objection and expunging the Comparsi Claim from the Claims Register will not prejudice Mr. Comparsi, because the applicable administrative and judicial remedies with respect to asserting a claim for benefits from the Pension Plan will remain available to him. (Id. at ¶ 8.)

24. Accordingly, for these cumulative reasons, the Comparsi Claim is not an allowable claim and is not entitled to any distribution in these chapter 11 cases. The Debtors request that the Comparsi Claim be disallowed in its entirety and expunged. The Debtors also request that the Court authorize the Claims Agent to expunge the Comparsi Claim from the Claims Register as sought by this Objection so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

46429/0001-8210162v1

## NOTICE

25. Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Vince Comparsi; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

26. No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Comparsi Claim; (ii) directing the Claims Agent to expunge the Comparsi Claim from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
January 13, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Dennis M. Twomey
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION