IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: February 15, 2012 at 10:00 a.m. ET<br>Response Deadline: February 8, 2012 at 4:00 p.m. ET |

### DEBTORS' OBJECTION TO CLAIM NO. 5012 OF JACQUELYN OXENDINE PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim No. 5012 filed against Tribune Company ("Tribune") by claimant Jacquelyn Oxendine (the "Oxendine Claim"), a copy of which is attached hereto as Exhibit A, on the basis that the Debtors have no liability for such claim.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-8211420v1

This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging the Oxendine Claim in its entirety, as indicated in further detail below. In further support of the Objection, the Debtors respectfully state as follows:

## INTRODUCTION

1. The Oxendine Claim should be disallowed in its entirety, because Ms. Oxendine has failed to assert facts that would support a valid right to payment from any of the Debtors' estates under applicable non-bankruptcy law. Upon review of the Oxendine Claim and the operative facts and law, the Debtors have determined that they have no liability whatsoever to Ms. Oxendine, much less that Ms. Oxendine is entitled to the $10,000,000.00 she seeks. In summary, the Oxendine Claim appears to demand $10,000,000.00 in damages based solely on the Orlando Sentinel newspaper's publication of a press release and other information issued by The Florida Bar (the "Press Release") regarding the outcome of disciplinary proceedings of twenty-three Florida lawyers, including Ms. Oxendine. Ms. Oxendine appears to assert that the publication of that information rose to the level of defamation, an assertion that is not only unsupported in fact nor accompanied by any legal basis in the Oxendine Claim, but is demonstrably incorrect under black-letter Florida law, as described herein. The Debtors accordingly request that Ms. Oxendine's claim be disallowed and expunged from the claims register.

## STATUS OF THE CASE AND JURISDICTION

2. On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

3. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). (Docket Nos. 43, 2333).

4. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

## FACTUAL BACKGROUND CONCERNING THE OXENDINE CLAIM

7. The Oxendine Claim was received on June 12, 2009 and recorded as Claim No. 5012 on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent"). The Oxendine Claim is asserted against Tribune in the amount of $10,000,000.00, which makes it among the highest-value litigation-related claims presently asserted in the Debtors' chapter 11 cases.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

46429/0001-8211420v1

8. Ms. Oxendine's proof of claim asserts neither facts, arguments, nor documentation in support of her claim, and contains only the reference "Defamation/Libel 05-2009-CA-011218", which refers to a civil complaint (the "Complaint") filed by Ms. Oxendine pro se in Florida state court against the Sentinel in violation of the automatic stay in January 2009.[3] A copy of the Complaint and its attachments are attached hereto as Exhibit B.

9. The facts in the Complaint and the Oxendine Claim, in brief, are that Ms. Oxendine was an attorney in Florida (whose bar admission has since become inactive),[4] first admitted in 2003, who subsequently worked as a public defender in Orlando, Florida in 2004, and thereafter as a solo practitioner. In 2006, The Florida Bar, an agency of the Supreme Court of Florida,[5] commenced a bar disciplinary matter against Ms. Oxendine on the recommendation of a county court judge in Florida. As part of that bar disciplinary matter, The Florida Bar filed a Petition for Interim Probation (the "Petition") on or about November 20, 2006, requesting that Ms. Oxendine's admission to the bar be placed on probationary status. A copy of the Petition is attached hereto as Exhibit C. In the Petition, The Florida Bar stated that the basis for its request was that Ms. Oxendine "appears to be causing great public harm by behaving in a paranoid and

---

[3] The Complaint is unquestionably subject to the automatic stay, 11 U.S.C. § 362(a), given that the articles published by the Sentinel that allegedly gave rise to the defamation cause of action asserted in the Complaint were published in January 2007 and in June 2007. The Third Circuit has repeatedly held that actions taken in violation of the stay are void, whether or not the party taking such action is aware of the commencement of the bankruptcy case. See, e.g., In re Myers, 491 F.3d 120, 127 (3d Cir. 2007); In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994); Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1131 (3d Cir. 1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991). Although the Complaint itself is void as a matter of law, the Debtors have reviewed the Complaint in an effort to ascertain the basis of the Oxendine Claim. In addition, the sole Debtor named in the Complaint and in the Oxendine Claim, Tribune Company, does not publish the Sentinel. The Debtors reserve all rights to seek dismissal of the Complaint on the basis that it was filed in violation of the automatic stay and that it names the incorrect party and that there is no claim against Tribune for which Ms. Oxendine can recover.

[4] By court order dated May 22, 2008, following the publication by the Sentinel of the article that is the subject of the Oxendine Claim, but prior to when the Complaint was filed, the Florida Supreme Court placed Ms. Oxendine on inactive status for "incapacity not related to misconduct." See Fla. Sup. Ct. Case No. SC07-59.

[5] Article V, Section 15 of the Constitution of the State of Florida gives the Supreme Court of Florida exclusive and ultimate authority to regulate the admission of persons to the practice of law and the discipline of those persons who are admitted to practice. The Court performs those official functions through two separate arms: the Florida Board of Bar Examiners, which screens, tests, and certifies candidates for admission to the practice of law; and The Florida Bar, the investigative and prosecutorial authority in the lawyer regulatory process. See About The Bar, http://www.floridabar.org.

4

46429/0001-8211420v1

erratic manner indicating respondent may be suffering from severe mental health problems that are severely impacting her ability to competently practice law...." The Supreme Court of Florida unanimously approved the Petition by order dated December 1, 2006 (the "Probation Order"). A copy of the Probation Order is attached hereto as Exhibit D.

10. The Florida Bar issued the Press Release on January 12, 2007, which stated that Ms. Oxendine had been placed on probation by order of the Florida Supreme Court pursuant to the Probation Order and repeated verbatim the statement of The Florida Bar in support of the Petition, quoted above. A copy of the Press Release is attached hereto as Exhibit E. On January 26, 2007, the Sentinel published an article entitled "State's top court disciplines 8 lawyers," which stated that Ms. Oxendine had been placed on probation effective December 1, 2006, was ordered to undergo a psychiatric evaluation to evaluate her fitness to practice law, and stated that "[t]he court said that Oxendine may be causing 'great public harm' because of 'paranoid and erratic' behavior before Orange County Judge Faye Allen and other attorneys." The Sentinel repeated that statement in a list of disciplined attorneys, including Ms. Oxendine, that it published in July 2007. Copies of the foregoing articles are appended to the Complaint. (See Ex. B at 7-8, 14-15.)

11. In October 2008, Ms. Oxendine sent a letter to counsel for Tribune as required by Florida law prior to filing suit (the "Demand Letter").[6] A copy of the Demand Letter is attached hereto as Exhibit F.[7] In the Demand Letter, Ms. Oxendine states that "The writer refers to The Florida Supreme Court, this court has never made any assertion of fact or opinion of this nature whatsoever." (See Ex. F at 1.) Following a review of the Sentinel article, the Petition,

---

[6] Florida law requires that "Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory." Fla. Stat. § 770.01.

[7] Portions of the Demand Letter have been redacted to the extent certain statements therein could be construed as an offer of settlement.

the Probation Order, and the Press Release, counsel for Tribune responded by letter to Ms. Oxendine dated November 19, 2008 (See Ex. B at 13) and published a Correction and Clarification on November 29, 2008 (See Ex. B at 16). The Correction and Clarification acknowledged that as originally published, the article " misattributed a statement by The Florida Bar to the Florida Supreme Court." (Id.) The intent and effect of the Correction and Clarification was to properly attribute the statement "Oxendine may be causing 'great public harm' because of 'paranoid and erratic' behavior before Orange County Judge Faye Allen and other attorneys" to The Florida Bar, an agency of the Florida Supreme Court, rather than to the Florida Supreme Court itself.

12. Notwithstanding the publication of the Correction and Clarification, Ms. Oxendine filed the Complaint in January 2009. The Complaint alleges one count for defamation per se based on the Sentinel's original publication of the statement: "The *court said* Oxendine may be causing 'great public harm' because of 'paranoid and erratic' behavior before Orange County Judge Faye Allen and other attorneys." (Ex. B, Compl. ¶¶ 9-10.) (emphasis added) The Complaint further states that "the words themselves have caused [Ms. Oxendine] to be regarded with scorn, contempt, ridicule, an disrespect by the her friends, neighbors, business associates, and family and will continue to do so in the foreseeable future." (Id.) The Complaint describes the damages allegedly suffered by Ms. Oxendine "as a direct and proximate result of this false and libelous publication" to include "anguish, distress, and torment" and "pecuniary loss and lost business profits" among other harms. (Ex. B, Compl. at 3.) Tribune has not filed an answer or other dispositive pleading in respect of the Complaint, given that the Complaint was filed in violation of the automatic stay.

**RELIEF REQUESTED**

13. By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing

6

and expunging the Oxendine Claim in its entirety on the basis that the Oxendine Claim is facially without merit in that it fails state a claim for which relief can be granted under applicable non-bankruptcy law. The Debtors also seek an order authorizing the Claims Agent to expunge the Oxendine Claim from the Claims Register so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.

## APPLICABLE LAW

14. This Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)). A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004). In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code. See 11 U.S.C. § 558. Here, even being mindful of the pro se nature of the Oxendine Claim and making all reasonable

7

inferences in favor of Ms. Oxendine, there is no actionable "right to payment" that could be asserted against Tribune by either the Oxendine Claim or the underlying Complaint.

15. The Oxendine Claim is not an allowable claim because such claim is unenforceable against the Debtors under applicable non-bankruptcy law for failure to state a claim for which relief can be granted. The statement at issue in the Complaint is substantially true and not capable of defamatory meaning, and to the extent the statement was originally misattributed to the Florida Supreme Court rather than The Florida Bar (an official agency of the Florida Supreme Court), the Sentinel published a Correction and Clarification upon notification by Ms. Oxendine. The Sentinel plainly and correctly stated the basis of the Florida Supreme Court's decision to place Ms. Oxendine on probation. Moreover, the Oxendine Claim does not allege any particular harm or damages suffered as a result of the allegedly defamatory article that are attributable to the Debtors; rather, any harm suffered by Ms. Oxendine can only be attributed to the Probation Order and the Petition themselves.

16. It is apparent from the face of the Oxendine Claim that such claim could not survive a motion to dismiss for failure to state a claim upon which relief can be granted under Florida law, which governs the claim since the relevant article was published in Florida.[8] In considering a motion to dismiss, if the complaint does not state facts sufficient to constitute a cause of action, it is proper for the Court to enter an order of dismissal. Huet v. Mike Shad Ford, Inc., 915 So. 2d 723, 725 (Fla. 2005); see also Sobi v. Fairfield Resorts, Inc., 846 So. 2d 1204 (Fla. 2003). Moreover, pretrial disposition in First Amendment cases, such as those involving defamation claims, is especially appropriate "because of the chilling effect these cases have on freedom of speech." Stewart v. Sun Sentinel Co., 695 So. 2d 360, 363 (Fla. 4th DCA 1997).

---

[8] Given the procedural posture in the underlying state court action, where no answer or dispositive pleading has yet been filed, this Court is easily as well-situated as the state court to make a determination that the claim must be dismissed on this basis.

## A. The Allegedly Defamatory Statement is Substantially True and Attributing the Statement To The Florida Supreme Court Does Not Create A Defamatory Meaning

17. A statement is defamatory if "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Thomas v. Jacksonville Television, Inc., 699 So. 2d 800, 803 (Fla. 1st DCA 1997) (quoting the Restatement (Second) of Torts § 559). In deciding if a statement is defamatory or not, the language "should not be interpreted by extremes, but should be construed as the common mind would naturally understand it." McCormick v. Miami Herald Publ'g Co., 139 So. 2d 197, 200 (Fla. 2d DCA 1962); Wolfson v. Kirk, 273 So. 2d 774, 778 (Fla. 4th DCA 1973) (stating that it is proper for courts to grant motions to dismiss where the language at issue could not be reasonably construed as defamatory under the "common mind" test).

18. Defamation defendants are not liable if the allegedly defamatory statement is substantially true. See Hill v. Lakeland Ledger Pub. Corp., 231 So.2d 254 (Fla. 2d DCA 1970) (finding that the false implication in a newspaper article – that the state attorney general had concluded that the plaintiff had violated a criminal statute, when in fact the newspaper extrapolated that conclusion from an opinion issued by the attorney general in another case based on parallel facts – did not make article as a whole untrue); see also Masson v. New Yorker Magazine, 501 U.S. 496, 516 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting of the libelous charge be justified.'" (quoting Heuer v. Kee, 59 P.2d 1063, 1064 (Cal. Ct. App. 1936))). "A 'statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Smith v. Cuban Am. Nat'l Found., 731 So. 2d 702, 706 (Fla. 3d DCA 1999) (quoting McCormick v. Miami Herald Publ'g Co., 139 So. 2d 197, 200 (Fla. 2d DCA 1962). Therefore, mere technical inaccuracies will not overcome the defense of substantial truth. Smith, 731 So. 2d 706.

9

19. Ms. Oxendine asserts that it was false and defamatory for the <u>Sentinel</u> to attribute the statement about her professional capacity to the Florida Supreme Court when its agency, The Florida Bar, was the actual source. (See <u>Ex. B</u>, Compl. ¶¶ 9-10; <u>Ex. F</u> at 1.) Attributing the remarks of The Florida Bar – an agency of the Florida Supreme Court – to the Florida Supreme Court does not create a defamatory meaning.[9] Ms. Oxendine does not, and cannot, dispute that The Florida Bar, the Florida Supreme Court's disciplinary agency, made the statement in its Petition to the Court, which Petition was then approved by the Court in an official act. The <u>Sentinel</u> did not editorialize the Press Release or the disciplinary proceedings, but rather reproduced the statements in the Press Release verbatim.

20. The allegedly defamatory statement is substantially true because it accurately reports the statements of an agency of the Florida Supreme Court in a Petition that was approved by the Florida Supreme Court, and the attribution does not change the gist or sting of the story. Regardless of attribution between the Court or its agency, the reader would have the same understanding of the nature of the disciplinary proceedings at issue. Under these circumstances, using the "common mind" test, attributing the allegedly defamatory statements to the Florida Supreme Court instead of The Florida Bar does not harm Oxendine's reputation or lower her in the estimation of the community. Moreover, to the extent the attribution was a "minor inaccuracy," the <u>Sentinel</u> issued the Correction and Clarification after the issue was brought to the attention of counsel by Ms. Oxendine. As a result, the statement is not actionable as a matter of law.

---

[9] Indeed, Plaintiff herself attached to her complaint what she called "a responsible article" by the <u>Bradenton Herald</u> about the disciplinary actions taken against her by the Florida Supreme Court. The article specified that the Florida Bar is an "official agency of the Court." (See <u>Ex. B</u>, Compl. ¶10 and Internal Exhibit 3.)

**B.    The Oxendine Claim Should be Disallowed Because There is No Basis for the $10,000,000 Damages Sought**

21.     The Oxendine Claim also must be disallowed because Ms. Oxendine has not and cannot identify any particular pecuniary or reputational harm arising from the <u>Sentinel</u> article itself, as opposed to the Probation Order or the Petition and the subsequent decision of the Florida Supreme Court to place her admission to the bar on inactive status. There is simply nothing in the Complaint, and by extension in the Oxendine Claim, that explains how the attribution of The Florida Bar's statement to the Florida Supreme Court, since corrected, caused any damage to her, let alone $10,000,000 worth. Indeed, to allow a $10,000,000 claim, unsupported by facts or the law, would greatly prejudice the Debtors' other creditors and parties in interest.

22.     More particularly, although the Complaint provides a breakdown of the alleged damages into lost profits, reputational injury, and punitive damages, none are supportable by fact or law. The Oxendine Claim fails to address how lost profits may be attributable to the <u>Sentinel's</u> article, as opposed to the fact that she had been placed on probationary and then inactive status by the Florida Supreme Court. As to reputational harm, the <u>Sentinel</u> merely reproduced verbatim statements that were made by The Florida Bar respecting the Probationary Order and the Petition, which speak for themselves. Any reputational harm suffered by Ms. Oxendine is the consequence of her own actions and not the fact that the results of her disciplinary proceedings were reported on by the <u>Sentinel</u>. To subject the <u>Sentinel</u> to a potential $10,000,000 claim for fairly and accurately reporting on an issue of public concern in Florida—the disciplining of attorneys licensed to practice in that State by its highest court—would have a chilling effect that is simply impermissible under the First Amendment. Finally, any recovery of punitive damages is precluded by Florida law, because the <u>Sentinel</u> published the Correction and

11

Clarification upon receipt of the Demand Letter. <u>See</u> Fla. Stat. § 770.02 (limiting potential recovery to actual damages where newspaper publishes correction, apology, or retraction).

23.    Accordingly, for these cumulative reasons, the Oxendine Claim is not an allowable claim and is not entitled to any distribution in these chapter 11 cases. The Debtors request that the Oxendine Claim be disallowed in its entirety and expunged. The Debtors also request that the Court authorize the Claims Agent to expunge the Oxendine Claim from the Claims Register as sought by this Objection so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

## NOTICE

24.    Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Jacquelyn Oxendine; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

25.    No previous application for the relief sought herein has been made to this Court or to any other court.

46429/0001-8211420v1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Oxendine Claim; (ii) directing the Claims Agent to expunge the Oxendine Claim from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
January 13, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

13

46429/0001-8211420v1