# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al.,[1] | Jointly Administered |
| Debtors. | |

## DCL PLAN PROPONENTS' OBJECTION TO MOTION OF WILMINGTON TRUST COMPANY FOR LEAVE TO APPEAL BANKRUPTCY COURT'S DECISION ON SUBORDINATION

| | |
|---|---|
| SIDLEY AUSTIN LLP | COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A. |
| James F. Conlan | Norman L. Pernick (No. 2290) |
| Bryan Krakauer | J. Kate Stickles (No. 2917) |
| Kevin T. Lantry | Patrick J. Reilley (No. 4451) |
| Jessica C.K. Boelter | 500 Delaware Avenue, Suite 1410 |
| One South Dearborn Street | Wilmington, Delaware 19801 |
| Chicago, Illinois 60603 | Telecopier: (302) 652-3117 |
| Telecopier: (312) 853-7036 | |

*Counsel for Debtors and Debtors in Possession and Certain Non-Debtor Affiliates*

| | | |
|---|---|---|
| CHADBOURNE & PARKE LLP | LANDIS RATH & COBB LLP | ZUCKERMAN SPAEDER LLP |
| Howard Seife | Adam G. Landis (No. 3407) | Graeme W. Bush |
| David M. LeMay | 919 Market Street, Suite 1800 | James Sottile |
| 30 Rockefeller Plaza | Wilmington, Delaware 19801 | 1800 M Street, N.W., Suite 1000 |
| New York, New York 10112 | Telecopier: (302) 467-4450 | Washington, D.C. 20036 |
| Telecopier: (212) 541-5369 | | Telecopier: (202) 822-8106 |

*Counsel for the Official Committee of Unsecured Creditors*

| | |
|---|---|
| DEWEY & LEBOEUF LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Bruce Bennett | Robert S. Brady (No. 2847) |
| James O. Johnston | M. Blake Cleary (No. 3614) |
| Joshua M. Mester | The Brandywine Building – 17th Floor |
| 333 South Grand Avenue, Suite 2600 | 1000 West Street, Post Office Box 391 |
| Los Angeles, California 90071 | Wilmington, Delaware 19899 0391 |
| Telecopier: (213) 621-6100 | Telecopier: (302) 571-1253 |

*Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE & DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier: (212) 230-8888

*Co-Counsel for Angelo, Gordon & Co, L.P.*

| | |
|---|---|
| DAVIS POLK & WARDWELL LLP | RICHARDS LAYTON & FINGER, P.A. |
| Donald S. Bernstein | Mark D. Collins (No. 2981) |
| Damian S. Schaible | One Rodney Square |
| 450 Lexington Avenue | 920 North King Street |
| New York, New York 10017 | Wilmington, Delaware 19801 |
| Telecopier: (212) 701-5800 | Telecopier: (302) 651-7701 |

*Counsel for JPMorgan Chase Bank, N.A.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the next page.

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF RELEVANT FACTS.................................................................3

    A.    The Bankruptcy Court's Confirmation Decision..................................................3

    B.    The Third Amended DCL Plan And Its Proposed Allocation Dispute Protocol .....4

    C.    The Motions For Reconsideration .........................................................................5

    D.    The Bankruptcy Court's Ruling On The Reconsideration Motions .......................6

    E.    Subsequent Developments ....................................................................................7

I.    **WTC Has No Standing To Appeal The Confirmation and Reconsideration Orders**..7

II.    **The Confirmation And Reconsideration Orders Are Not Appealable As A Matter Of Right**........................................................................................................................8

    A.    The Orders Are Not "Final" Within The Meaning Of Section 158(a)(1)...............8

    B.    The Orders Are Not "Final" By Virtue Of The Collateral Order Doctrine ...........11

III.    **WTC Has Not Satisfied The Criteria For A Discretionary Appeal** ...........................12

    A.    The Orders Involve No Controlling Questions Of Law.........................................13

    B.    There Is No Substantial Ground For Difference Of Opinion On The Allegedly Controlling Questions of Law..............................................................................14

    C.    An Immediate Appeal Will Not Materially Advance The Litigation ....................17

CONCLUSION .......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ahrenholz v. Board of Trustees of University of Illinois,
219 F.3d 674 (7th Cir. 2000) ................................................................13, 17

Aristocrat Leisure Limited v. Deutsche Bank Trust Company,
426 F. Supp. 2d 125 (S.D.N.Y. 2005)..........................................................13

Bumgarner v. Blue Cross and Blue Shield of Kansas, Inc.,
716 F. Supp. 493 (D. Kan. 1988).................................................................15

Catskill Dev. L.L.C. v. Park Place Entm't Corp.,
206 F.R.D. 78 (S.D.N.Y. 2002) ..................................................................13

Chase Bank USA, N.A. v Hess,
2011 WL 4459604 (D. Del. 2011) ...............................................................13

EEOC v. Hora, Inc.,
2005 U.S. Dist. LEXIS 14855 (E.D. Pa. 2005) ...........................................13

First American Bank of New York v. Country Glove,
64 B.R. 958 (D. Del. 1986) ..........................................................................15

First American Corp. v. Al-Nahyan,
948 F. Supp. 1107 (D.D.C. 1996) ................................................................15

Hartsell v Source Media Inc.,
1999 WL 629645 (N.D. Tex. 1999)..............................................................15

Hurst v. City of Dover,
2006 U.S. Dist. LEXIS 57029 (D. Del. 2006) .............................................13

In re Advanced Marketing Services, Inc.,
2008 U.S. Dist. LEXIS 27582 (D. Del. 2008) .......................................13, 15

In re AE Liquidation, Inc.,
451 B.R. 343 (D. Del. 2011) ........................................................................12

In re Armstrong World Industries,
432 F.3d 507 (3d Cir. 2005) .....................................................................2, 9

In re Combustion Engineering, Inc.,
391 F.3d 190 (3d Cir. 2004) ..........................................................................8

In re Dardashti,
    2008 Bankr. LEXIS 4678 (B.A.P. 9th Cir. Feb. 12, 2008) .......................................6

In re Delaware & Hudson Ry. Co.,
    96 B.R. 469 (D. Del. 1989), aff'd, 884 F.2d 1383 (3d Cir. 1989) ...........................13

In re Edison Bros. Stores, Inc.,
    1996 WL 363806 (D. Del. 1996) .............................................................................17

In re Flor,
    79 F.3d 281 (2d Cir. 1996) ..............................................................................8, 15

In re Genesis Health Ventures, Inc.,
    2007 U.S. Dist. LEXIS 47346 (D. Del. 2007) .......................................................13

In re Gray,
    447 B.R. 524 (E.D. Mich. 2011) .............................................................................13

In re Kahihikolo,
    807 F.2d 1540 (11th Cir. 1987) ................................................................................6

In re Lievsay,
    118 F.3d 661 (9th Cir. 1997) ....................................................................................8

In re Magic Restaurants, Inc.,
    202 B.R. 24 (D. Del. 1996) .....................................................................................15

In re Mushroom Direct Purchaser Antitrust Litigation,
    655 F.3d 158 (3d Cir. 2011) ....................................................................................12

In re O'Brien,
    184 F.3d 140 (2d Cir. 1999) ......................................................................................7

In re Schering-Plough Corp.,
    2010 WL 2546054 (D. N.J. 2010) ..........................................................................15

In re SemCrude, L.P.,
    407 B.R. 553 (D. Del. 2009) ...................................................................................13

In re Shkolnikov,
    470 F.3d 22 (1st Cir. 2006) ........................................................................................7

In re Tribune Co.,
    2011 Bankr. LEXIS 4128 (Bankr. D. Del. Oct. 31, 2011) ..............................1, 4, 5

In re Tribune Co.,
    2011 Bankr. LEXIS 5018 (Bankr. D. Del. Dec. 29, 2011) ...................1, 5, 6, 7, 16

ii

In re Vitamins Antitrust Litigation,
    2000 WL 673936 (D.D.C. 2000) ........................................................................16

In re W.R. Grace & Co.,
    2007 U.S. Dist. LEXIS 21586 (D. Del. 2007) ...................................................15

In re Washington Mutual, Inc.,
    2011 WL 4090757 (Bankr. D. Del. Sept. 13, 2011) ......................................6, 11

In re Washington Mutual, Inc.,
    Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9251 (filed Dec. 23, 2011) ...........9

In re Washington Mutual, Inc.,
    Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9397 (filed Jan. 11, 2012) ...........11

In re Zahn,
    526 F.3d 1140 (8th Cir. 2008) ...........................................................................8

In re: Montgomery Ward & Co., Inc.,
    2006 U.S. Dist. LEXIS 75788 (D. Del. 2006) ..................................................13

IPSCO Steel (Ala.) Inc. v. Blaine Construction Corp.,
    371 F.3d 150 (3d Cir. 2004) ...............................................................................8

Johnson v. Washington Area Transit Authority,
    790 F. Supp. 1174 (D.D.C. 1991) ....................................................................15

Manitowoc Marine Group LLC v. Ameron International Corp.,
    2006 U.S. Dist. LEXIS 61678 (E. D. Wis. 2006) ............................................17

McFarlin v. Conseco Services, LLC,
    381 F.3d 1251 (11th Cir. 2004) ...................................................................13, 17

Mohawk Industries, Inc. v. Carpenter,
    ___ U.S. ___, 130 S.Ct. 599 (2009).............................................................11, 12

Nixon v. Fitzgerald,
    457 U.S. 731 (1982)..........................................................................................12

Passalacqua Builders, Inc. v. Resnick Developers South Inc.,
    611 F. Supp. 281 (S.D.N.Y. 1985).....................................................................17

Schnelling v. KPMG,
    2006 WL 1540815 (D. N.J. 2006) .....................................................................15

Simmons v. Akanno,
    2011 U.S. Dist. LEXIS 46658 (E.D. Cal. 2011)................................................16

The Clark Construction Group, Inc. v. Allglass Systems, Inc.,
    2005 U.S. Dist. LEXIS 5278 (D. Md. 2005) ........................................................13

WCI Steel Inc. v. Wilmington Trust Co.,
    338 B.R. 1 (N.D. Ohio 2005) ...................................................................9, 11

**STATUTES**

28 U.S.C. § 158(a)(1).............................................................................2, 6, 8

28 U.S.C. § 158(a)(3).............................................................................3, 12

28 U.S.C. § 1291 .........................................................................................9

28 U.S.C. § 1292(b) .................................................................................12

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPMorgan", and together with the Debtors, the Creditors' Committee, Oaktree, and Angelo Gordon, the "DCL Plan Proponents") submit this objection (the "Objection") to the Motion for Leave to Appeal Bankruptcy Court's Decision on Subordination filed by Wilmington Trust Company [Docket No. 10582] (the "Motion"). For the reasons set forth below, the DCL Plan Proponents respectfully submit that the Motion should be denied.

## PRELIMINARY STATEMENT

Wilmington Trust Company ("WTC"), as successor indenture trustee under the PHONES Notes Indenture,[2] requested and obtained an order from the Bankruptcy Court denying confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Second Amended DCL Plan"). See In re Tribune Co., 2011 Bankr. LEXIS 4128 at *216 (Bankr. D. Del. Oct. 31, 2011) ("Confirmation Decision"). Although the Bankruptcy Court later issued a decision reconsidering a portion of the Confirmation Decision involving an interpretation of the PHONES Notes Indenture, the Bankruptcy Court's order granting reconsideration merely struck the relevant portion of the Confirmation Decision while leaving in place the order denying confirmation of the Second Amended DCL Plan. See In re Tribune Co.,

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10273] (the "Third Amended DCL Plan").

2011 Bankr. LEXIS 5018 at *41-*44 (Bankr. D. Del. Dec. 29, 2011) ("Reconsideration Decision"). In other words, WTC prevailed below. As a consequence, WTC has no right or authority to pursue an appeal of the Bankruptcy Court's order granting the very relief it requested.

As an initial matter, WTC lacks standing to appeal the Confirmation Decision because WTC has not been injured, adversely affected, or aggrieved by it. To the contrary, WTC and the other opponents of the Second Amended DCL Plan *prevailed* because the Bankruptcy Court denied confirmation thereof. Similarly, WTC lacks standing to appeal the Reconsideration Decision because WTC will not be injured, adversely affected, or aggrieved by it unless and until the Bankruptcy Court confirms a plan actually embodying the interpretation of the PHONES Notes Indenture that WTC seeks to address on appeal.

Moreover, even if WTC theoretically had standing, the orders at issue are not "final" within the meaning of 28 U.S.C. § 158(a)(1). The Bankruptcy Court *denied* confirmation of the Second Amended DCL Plan and has not yet considered, much less confirmed, the Third Amended DCL Plan recently proposed by the DCL Plan Proponents. WTC's reliance on In re Armstrong World Industries, 432 F.3d 507, 511 (3d Cir. 2005), is unavailing. Unlike in Armstrong, the issues that WTC seeks to raise on appeal are not central to the DCL Plan (neither the Second Amended nor the Third Amended version) or the bankruptcy proceedings in general. Indeed, as part of the proceedings in connection with confirmation of the Third Amended DCL Plan, the Bankruptcy Court has set for hearing – but not yet heard or decided – certain "Allocation Disputes" that involve questions of contract interpretation that raise *nearly identical issues* to the question of contract interpretation that WTC wants to appeal separately now – including questions involving interpretation of the very same passages of the PHONES Notes Indenture raised by WTC in its appeal. Consequently, considerations of judicial economy

2

counsel strongly in favor of adhering to the normal appellate process with a single appeal upon an order actually confirming a plan of reorganization, so that all of the related contract interpretation questions and other issues can be decided in a coordinated and consistent fashion, rather than allowing a multiplicity of disjointed appeals.[3]

Finally, WTC has not come even close to establishing that it should be permitted to pursue a discretionary appeal under 28 U.S.C. § 158(a)(3). The two questions WTC seeks to present to this Court do not involve controlling "questions of law" – to the contrary, they involve the "application of settled law to fact." In addition, WTC has identified no "substantial grounds for difference of opinion" on those questions because it has not shown that the decisions of lower courts in this Circuit are either split on the issues or are so confused and in such disarray that the governing legal standard cannot be ascertained. Nor has WTC shown that allowing an immediate appeal would "materially advance the ultimate termination of the litigation." Indeed, because the DCL Plan Proponents have filed a Third Amended DCL Plan for which the Bankruptcy Court has scheduled a confirmation hearing in mid-May 2012, allowing an immediate appeal is likely to delay rather than speed up the ultimate resolution of the bankruptcy cases and thereby delay the ability of the Debtors to exit bankruptcy.

## STATEMENT OF RELEVANT FACTS

A.    The Bankruptcy Court's Confirmation Decision

The Bankruptcy Court issued its Confirmation Decision on October 31, 2011. In it, the Bankruptcy Court denied confirmation not only of the Second Amended DCL Plan but also of a competing plan ("Noteholder Plan") that had been proposed by WTC, Aurelius Capital

---

[3] WTC's unsupported back-up argument relating to its alleged right to appeal based on the collateral order doctrine is also meritless. As explained below, the doctrine does not apply for a host of reasons, including WTC's failure to demonstrate that the standard finality rule would imperil a substantive public interest or some particular value of a high order.

Management, L.P. ("Aurelius"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), and Law Debenture Trust Company of New York ("Law Debenture", and with Deutsche Bank, the "Senior Notes Indenture Trustees") (collectively "Noteholder Plan Proponents"). See Confirmation Decision, 2011 Bankr. LEXIS 4128 at *41-*44.

The Second Amended DCL Plan was based on proposed settlements of certain potential causes of action against Senior Lenders and Bridge Lenders arising out of the 2007 leveraged buy-out of Tribune (the "Leveraged ESOP Transactions") pursuant to which Tribune borrowed money and bought out its existing shareholders. Confirmation Decision, 2011 Bankr. LEXIS 4128 at *33. Over the objection of WTC and the other Noteholder Plan Proponents, the Bankruptcy Court determined that the proposed settlements were negotiated in good faith and were reasonable. Id. at *69-*120. The Bankruptcy Court also rejected the vast majority of other challenges lodged against the Second Amended DCL Plan by the Noteholder Plan Proponents and others. Id. at *120-*196. The Bankruptcy Court, however, identified a number of discrete issues that precluded confirmation of the Second Amended DCL Plan as then drafted. See id.

Recognizing that the parties might try to amend their respective plans in order to bring them into conformance with the Confirmation Decision, the Bankruptcy Court compared the relative merits of the two plans and concluded that, if the DCL Plan was amended to address the issues identified in the Confirmation Decision, the Court would favor the DCL Plan. Confirmation Decision, 2011 Bankr. LEXIS 4128 at *211-*216. At the end of its opinion, the Bankruptcy Court stressed that "the Court is of the determined view that the Debtors must promptly find an exit door to this chapter 11 proceeding." Id. at *216.

B.    The Third Amended DCL Plan And Its Proposed Allocation Dispute Protocol

In keeping with that admonition, the DCL Plan Proponents filed the Third Amended DCL Plan on November 18, 2011, along with a Supplemental Disclosure Document and Procedures

4

Motion relating to the plan and a Status Report.[4]  In the Status Report, the DCL Plan Proponents

explained that they had amended the Second Amended DCL Plan to conform to the

Confirmation Decision.  Status Report at 4.  Among other things, the DCL Plan Proponents

explained that the Confirmation Decision had given rise to certain "Allocation Disputes"

concerning the allocation of Tribune's assets among certain creditor classes under the DCL Plan,

including disputes related to the interpretation of the PHONES Notes subordination provisions

and a number of other matters.  Id. at 6-8.  To allow for the expeditious resolution of these

issues, the Third Amended DCL Plan contained an Allocation Dispute Protocol designed to

allow for briefing and decision on the Allocation Disputes under a schedule that would not delay

the approval of a disclosure statement and voting procedures for, and the holding of a

confirmation hearing on, the Third Amended DCL Plan.  Id.

C.       The Motions For Reconsideration

The Noteholder Plan Proponents chose not to file an amended plan in response to the

Confirmation Decision.  Instead, they filed a motion for reconsideration and clarification of the

Bankruptcy Court's opinion.  See Reconsideration Decision, 2011 Bankr. LEXIS 5018 at *3-*5.

In addition, the Noteholder Plan Proponents other than WTC, acting as representatives of Senior

Noteholders who purportedly benefited from subordination of the PHONES Notes, filed separate

motions seeking reconsideration of the Bankruptcy Court's ruling that the PHONES Indenture

---

[4] See Supplemental Disclosure Document Relating to Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10275]; Motion for an Order (I) Approving the Supplemental Disclosure Document; (II) Establishing Scope, Forms, Procedures, and Deadlines for Resolicitation of Votes to Accept or Reject the DCL Plan from Certain Classes; (III) Authorizing Tabulation of Prior Votes and Elections on DCL Plan Made by Holders of Claims in Non-Resolicited Classes; (IV) Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof; and (V) Granting Related Relief [Docket No. 10274]; and Status Report in Connection with the Filing of the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10272] (the "Status Report").

subordination provisions did not apply to future recoveries by a proposed Litigation Trust to be established under the Second Amended DCL Plan on account of fraudulent transfer claims. Id.[5]

    D.    <u>The Bankruptcy Court's Ruling On The Reconsideration Motions</u>

On December 29, the Bankruptcy Court issued a decision and order with respect to the motions for reconsideration and clarification. <u>Reconsideration Decision</u>, 2011 Bankr. LEXIS 5018 at *41-*44. Pertinent to WTC's pending Motion, the Bankruptcy Court granted the reconsideration motions regarding the applicability of the PHONES Notes subordination provisions to future Litigation Trust recoveries.

Specifically, the Bankruptcy Court found that the PHONES Notes in fact *are* subordinated with respect to such recoveries. The Bankruptcy Court concluded that reconsideration of its prior decision to the contrary was appropriate for two main reasons: (1) the Court had misapprehended the position of some parties on the issue in rendering its decision and (2) the Court had decided the issue without considering all relevant aspects of the PHONES Notes Indenture, as required by governing state law principles of contract interpretation. Id. at *13-*14. On the merits, the Court held that the overlooked provisions of the PHONES Notes Indenture, as well as the context and purpose of the Indenture as a whole, clearly evidenced an intention that the Indenture's subordination provisions would apply to recoveries obtained in respect of bankruptcy avoidance actions, including those to be pursued by the DCL Plan Litigation Trust if and when the DCL Plan was amended and ultimately confirmed. Id. at *14-

---

[5] On November 14, 2011, the Noteholder Plan Proponents also filed a notice of appeal from the Confirmation Decision. The notice of appeal alleged that the decision was a "final" decision for purposes of 28 U.S.C. § 158(a)(1) and thus appealable as a matter of right. In connection with the scheduling of further proceedings, the DCL Plan Proponents contended that the order was not "final" and that, even if it were, the filing of it, in the absence of a stay, did not divest the Bankruptcy Court of jurisdiction to enforce its order by confirming a plan of reorganization based on the legal rulings contained therein. See, e.g., In re Kahihikolo, 807 F.2d 1540, 1542-43 (11th Cir. 1987); In re Dardashti, 2008 Bankr. LEXIS 4678 at *6 (B.A.P. 9th Cir. Feb. 12, 2008); In re Washington Mutual, Inc., 2011 WL 4090757 at *8 (Bankr. D. Del. Sept. 13, 2011). On January 20, 2012, the Noteholder Plan Proponents filed a motion for voluntary dismissal of their appeal without prejudice to their right to file an appeal following entry of a final order confirming a plan [Docket No. 10663].

\*31.  To effectuate that decision, the Bankruptcy Court issued an order granting the pertinent

reconsideration motions and amending the Confirmation Decision to delete the section entitled

"Subordination Determination."  Id. at \*41-\*44.  Notably, the Bankruptcy Court was not asked to

and did not change the ultimate result of the Confirmation Decision – denial of confirmation of

the Second Amended DCL Plan.

      E.     Subsequent Developments

      After briefing and argument, the Bankruptcy Court scheduled hearings on the Allocation

Disputes for March 5 and 6, 2012, and scheduled hearings on confirmation of the Third

Amended DCL Plan for May 16 and 17, 2012.  During arguments regarding scheduling, WTC

warned that it "need[ed] to see how [WTC's] appeal proceeds" in the District Court in order to

take a position on whether the notice of appeal divested the Bankruptcy Court of jurisdiction or

otherwise impacted its power to go forward as scheduled.  January 11, 2012 Transcript at 50-51.

The DCL Plan Proponents strongly disagree with any assertion that WTC's baseless notice of

appeal has any effect whatsoever on the Bankruptcy Court's jurisdiction with respect to the

upcoming confirmation proceedings.  See id. at 33-34.

<strong>ARGUMENT</strong>

**I.**    **WTC Has No Standing To Appeal The Confirmation and Reconsideration Orders**

      WTC is not entitled to appeal from the Confirmation Decision or the Reconsideration

Decision as a matter of right or discretion because it lacks standing to appeal under Article III of

the Constitution and under the Bankruptcy Code.  Having succeeded in convincing the

Bankruptcy Court to deny confirmation of the Second Amended DCL Plan, WTC simply is not

injured, adversely affected, or aggrieved by the Confirmation Decision implementing its victory.

In re Shkolnikov, 470 F.3d 22, 24 (1st Cir. 2006) ("It is an abecedarian rule that a party cannot

prosecute an appeal from a judgment in its favor"); In re O'Brien, 184 F.3d 140, 142 (2d Cir.

7

1999) ("'a winner cannot appeal'") (quoting Abbs v Sullivan, 963 F.3d 918, 924 (7th Cir. 1992).
See also In re Combustion Engineering, Inc., 391 F.3d 190, 215 (3d Cir. 2004); IPSCO Steel
(Ala.) Inc. v. Blaine Construction Corp., 371 F.3d 150, 153-54 (3d Cir. 2004).

WTC also is not injured, adversely affected or aggrieved by the Reconsideration
Decision, which did nothing more than strike the "Subordination Determination" section from
the Confirmation Decision while leaving in place the order denying confirmation of the Second
Amended DCL Plan.  WTC's appeal of the Reconsideration Decision is nothing more than an
appeal of the reconstituted Confirmation Decision, which *granted* the relief that WTC sought
below.  As such, WTC cannot possibly be injured, adversely affected or aggrieved unless and
until the Bankruptcy Court enters an order confirming the Third Amended DCL Plan or some
other plan which applies the PHONES Notes Indenture subordination provisions in the manner
contemplated by the Reconsideration Decision to the economic detriment of the PHONES Notes
represented by WTC.

## II.    The Confirmation And Reconsideration Orders Are Not Appealable As A Matter Of Right

### A.    The Orders Are Not "Final" Within The Meaning Of Section 158(a)(1)

Even if WTC had standing, it cannot pursue this appeal because the Confirmation
Decision, as amended by the Reconsideration Decision, is not a final, appealable order.  28
U.S.C. § 158(a)(1) authorizes an appeal as a matter of right from "final" bankruptcy court orders,
judgments, and decrees.  Most courts hold that an order denying confirmation is not "final"
within the meaning of the statute because such an order does not terminate the case in which it is
issued.[6]  Indeed, counsel for WTC (Brown Rudnick LLP) recently conceded in papers filed in

---

[6] See In re Zahn, 526 F.3d 1140, 1143-44 (8th Cir. 2008) ("Under Eighth Circuit law, which is consistent with the views of other circuits, an order denying confirmation of a plan, which does not dismiss the case, is not a final order and cannot be appealed"); In re Lievsay, 118 F.3d 661, 662 (9th Cir. 1997) ("We hold that a bankruptcy court's decision denying confirmation of a Chapter 11 plan is interlocutory"); In re Flor, 79 F.3d 281, 283 (2d Cir. 1996)

the Washington Mutual case pending in this District before Bankruptcy Judge Walrath that "[a]n Order denying confirmation is not a final Order."[7]

WTC's contrary argument here (made by the same counsel) rests solely on a citation to the Third Circuit's decision in In re Armstrong World Industries, 432 F.3d 507 (3d Cir. 2005). There, the bankruptcy court approved a plan over objections that the plan violated the absolute priority rule. On appeal, the district court reversed and entered an order denying confirmation. The plan proponents then sought to appeal the district court decision to the Third Circuit, which held that, in the circumstances presented, the district court's order was "final" for purposes of 28 U.S.C. § 1291. Id. at 511. In doing so, the court pointed out that the question presented was "central" to the progress of the bankruptcy. Id. The court also noted that the potential application of the absolute priority rule presented "a discrete question of law that would have a preclusive effect on certain provisions of the Plan." In addition, the court further determined that "practical considerations in the interests of judicial economy require[d]" an immediate appeal. Id.

None of the considerations cited by the court in Armstrong is present here. First, the manner in which the PHONES Notes Indenture subordination provisions apply to Litigation Trust fraudulent transfer action recoveries is *not central* to the progress of these bankruptcy cases. Indeed, it is not necessary for the Bankruptcy Court to determine this issue in connection with confirmation of the DCL Plan. A determination of the issue may be left for such time as the

---

(an order denying confirmation of Debtors' proposed plan under Chapter 11 "is not a final decision unless it necessarily resolves all of the issues pertaining to a discrete claim" by "dismiss[ing] the petition or convert[ing] Debtors' petition to a Chapter 7 petition"); WCI Steel Inc. v. Wilmington Trust Co., 338 B.R. 1, 14 (N.D. Ohio 2005) ("where a bankruptcy court denies or withholds confirmation of a reorganization plan, without also dismissing the entire proceedings, the order is not final for purposes of appeal").

[7] See Motion of the Consortium of Trust Preferred Security Holders for Stay of Confirmation Proceedings Pending Appeal, In re Washington Mutual, Inc., Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9251 (filed Dec. 23, 2011) at 13 ("TPS Consortium Motion for Stay of Confirmation Proceedings") (citing many of the cases cited in note 6 above).

Litigation Trust makes distributions. Accordingly, the issue has significance only after the Third

Amended DCL Plan is confirmed by the Bankruptcy Court.

Second, the appellate court's decision *would not have a preclusive effect* on any provision

of the DCL Plan. The Third Amended DCL Plan expressly provides that the relevant

distributions are subject to resolution of the Allocation Disputes. Consequently, if the appeal

were allowed to proceed, the appellate court's decision one way or the other would not require

any modification to the Third Amended DCL Plan. Accordingly, the present appeal should be

deferred until a final disposition.

Third, considerations of *sound judicial administration counsel strongly against allowing*

*an immediate, piecemeal appeal.* As noted above, proceedings in the Bankruptcy Court are on a

fast track with hearings on the Allocation Disputes currently scheduled for March 5 and 6 and on

confirmation of the Third Amended DCL Plan for May 16 and 17. Moreover, several of the

remaining Allocation Disputes are nearly identical to the question of contract interpretation

which WTC asks this Court to decide separately now.[8]  Given the close relationship between the

issue WTC wants to appeal now and those that will shortly be decided by the Bankruptcy Court,

judicial economy is best served by adhering to normal appellate procedure so that all of those

closely related subordination issues can be considered together and resolved in a coordinated and

consistent fashion.

Finally, and significantly, twisting the law to allow the immediate appeal sought by the

PHONES will not expedite the resolution of the bankruptcy, but will only delay it in derogation

---

[8] For example, one remaining Allocation Dispute is the manner in which the PHONES Notes Indenture subordination provisions apply to Creditor Trust fraudulent transfer claim recoveries. See Scheduling Order at 3. Another is the manner in which the subordination provisions in the subordination agreement governing the EGI-TRB LLC Notes apply to Litigation Trust and Creditor Trust fraudulent transfer claim recoveries. Id. at 3-4. Still another is the manner in which the subordination provisions in the PHONES Notes Indenture and in the subordination agreement governing the EGI-TRB LLC Notes apply to the settlement proceeds to be paid and distributed pursuant to the settlements embedded in the Third Amended DCL Plan. Id.

of the wishes of the Bankruptcy Court. Any determination that portions of the orders at issue are

final and subject to immediate appeal will almost certainly be followed by a baseless claim by

WTC that the Bankruptcy Court therefore has been divested of jurisdiction, and/or by a motion

from WTC seeking to stay the bankruptcy proceedings until the appeal is briefed, argued, and

decided. Indeed, as described above, WTC recently indicated that it was considering just such

actions. And one need look no further than the Washington Mutual litigation before Judge

Walrath to see counsel for WTC taking precisely such steps, regardless of the impact they might

have on the countless other constituencies who are anxious to receive distributions and be done

with the bankruptcy cases.[9]

B.    The Orders Are Not "Final" By Virtue Of The Collateral Order Doctrine

In a footnote (Motion at 8, n. 4), WTC asserts that the Reconsideration Decision and

Confirmation Decision are final by virtue of the collateral order doctrine. This argument is

meritless. See WCI Steel, 338 B.R. at 26-31 (and cases cited therein) (orders denying

confirmation are not appealable under the collateral order doctrine). The collateral order

doctrine treats as final only a "small category" of orders "that are [1] conclusive, [2] that resolve

important questions separate from the merits, and [3] that are effectively unreviewable on appeal

from the final judgment in the underlying action." Mohawk Industries, Inc. v. Carpenter, ___

U.S. ___, 130 S.Ct. 599, 605 (2009) (citations omitted). In requiring that the question be

---

[9] In Washington Mutual, after Judge Walrath denied confirmation of a proposed Sixth Amended Plan, the sponsor of the plan amended it to conform to the order denying confirmation, and Judge Walrath scheduled a confirmation hearing on the Modified Sixth Amended Plan. Washington Mutual, Inc., 2011 WL 4090757 at *1-*2. In response, counsel for WTC argued on behalf of its client that an appeal previously taken from a decision issued in an adversary proceeding related to the bankruptcy acted to divest the Bankruptcy Court of jurisdiction to proceed with confirmation until the adversary proceeding appeal was resolved. Id. at *6-*7. Judge Walrath disagreed, and proceeded to consider but deny confirmation to the Modified Sixth Amended Plan. Id. at *7-*8; *56. Upon the filing of a Seventh Amended Plan, counsel for WTC responded by filing a motion to stay all confirmation proceedings pending the outcome of the adversary proceeding appeal, reiterating that the appeal had divested the Bankruptcy Court of jurisdiction. See TPS Motion for Stay of Confirmation Proceedings, supra n. 7, at 2-5, 12-28. Judge Walrath denied the motion. See Order Denying the Motion of the Consortium of Trust Preferred Security Holders for Stay of Confirmation Proceedings Pending Appeal, In re Washington Mutual, Inc., Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9397 (filed Jan. 11, 2012).

"important," the second element allows immediate review only of questions that are "serious and unsettled." Nixon v. Fitzgerald, 457 U.S. 731, 742 (1982); In re Mushroom Direct Purchaser Antitrust Litigation, 655 F.3d 158, 164 n.4 (3d Cir. 2011). To satisfy the third element, it is not enough to show that the ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final [lower] court judgment." Mohawk, 130 S.Ct. at 605 (citations omitted). Instead, the "decisive inquiry" is whether delaying review of "the entire category to which a claim belongs" would "imperil a substantive public interest or some particular value of a high order." Id. (citations and quotations omitted).

In this case, the second and third elements of the collateral order doctrine plainly are not satisfied. The second element is not present because the two questions WTC seeks to raise on appeal are no more important that any other issue litigated daily in bankruptcy or other courts across the country. The third element is not satisfied because WTC has not shown that delaying review until entry of final judgment (i.e., an order confirming the Third Amended DCL Plan) would imperil a substantive public interest or some particular value of a high order.

## III.    WTC Has Not Satisfied The Criteria For A Discretionary Appeal

Alternatively, WTC asserts that the District Court should allow it leave to file an appeal under 28 U.S.C. § 158(a)(3), which grants district courts the discretion to authorize interlocutory orders of bankruptcy courts. In determining whether to exercise their authority under section 158(a)(2), district courts look first to the standards of 28 U.S.C. § 1292(b), which permits appeal where "the order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation." See In re AE Liquidation, Inc., 451 B.R. 343, 346 (D.

Del. 2011) (Stark, J.).[10] Because an interlocutory appeal "represents a deviation from the basic judicial policy of deferring review until entry of a final judgment," Advanced Marketing, 2008 U.S. Dist. LEXIS 27582 at *2, interlocutory appeal of bankruptcy court orders is granted "sparingly" and only in "exceptional circumstances." Id.[11] As demonstrated below, WTC has not come close to satisfying these criteria. See Chase Bank USA, N.A. v Hess, 2011 WL 4459604 at *2 (D. Del. 2011) (Stark, J.).

    A.    The Orders Involve No Controlling Questions Of Law

    A controlling "question of law" suitable for interlocutory appeal is a "pure question of law" – namely, "something the [higher court] could decide quickly and cleanly without having to study the record." Ahrenholz v. Board of Trustees of University of Illinois, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.). Accord McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1258 (11th Cir. 2004); In re Gray, 447 B.R. 524, 533-34 (E.D. Mich. 2011); EEOC v. Hora, Inc., 2005 U.S. Dist. LEXIS 14855 at *8 (E.D. Pa. 2005). As a result, a pure question of law does not include the "application of settled law to fact,"[12] including in answering the "question of the meaning of a contract."[13] Ahrenholz, 219 F.3d at 676; Aristocrat Leisure Limited v. Deutsche

---

[10] Accord In re SemCrude, L.P., 407 B.R. 553, 556-57 (D. Del. 2009); In re Advanced Marketing Services, Inc., 2008 U.S. Dist. LEXIS 27582 at *2 (D. Del. 2008); In re Genesis Health Ventures, Inc., 2007 U.S. Dist. LEXIS 47346 at *6 (D. Del. 2007); In re: Montgomery Ward & Co., Inc., 2006 U.S. Dist. LEXIS 75788 at *3 (D. Del. 2006).

[11] In re Delaware & Hudson Ry. Co., 96 B.R. 469, 473 (D. Del. 1989), aff'd, 884 F.2d 1383 (3d Cir. 1989); Advanced Marketing, 2008 U.S. Dist. LEXIS 27582 at *2; Montgomery Ward, 2006 U.S. Dist. LEXIS 75788 at *3.

[12] Accord McFarlin, 381 F.3d at 1259 ("the antithesis of a proper [interlocutory] appeal is one that turns on … whether the [lower] court properly applied settled law to the facts or evidence of a particular case"); Hurst v. City of Dover, 2006 U.S. Dist. LEXIS 57029 at *6 (D. Del. 2006) (rejecting certification where the "gist of Hurst's argument is that I erred in the application of existing law to the facts of this case").

[13] Ahrenholz, 219 F.3d at 676-77 ("the meaning of a contract is not what the framers [of the statute] had in mind because "to decide a question of contract interpretation may require immersion in what may be a long, detailed and obscure contract"); Catskill Dev. L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of "controlling question of law" that normally gives rise to certification"); The Clark Construction Group, Inc. v. Allglass Systems, Inc., 2005 U.S. Dist. LEXIS 5278 at *8 (D. Md. 2005) ("the meaning of a contract" is not the sort of "pure question of law" required for certification).

Bank Trust Company, 426 F. Supp. 2d 125 (S.D.N.Y. 2005) (refusing to certify question of

whether lower court correctly interpreted the term "call" in a bond indenture).

      Applying these standards, it is obvious that neither of the two questions identified by

WTC constitute controlling "questions of law." WTC's first question is "[w]hether the

Bankruptcy Court erred in reconsidering the Confirmation Opinion and granting reconsideration

where the standard for reconsideration was not satisfied insofar as Movants simply disagreed

with a prior decision and offered no new facts or law justifying reconsideration." Motion at 7.

WTC's second question is "[w]hether the Bankruptcy Court erred in holding that the

subordination provisions under the PHONES Indenture apply to recoveries of Bankruptcy Code

Chapter 5 causes of action obtained by the Litigation Trust from third parties." Id.

      As the language of the questions makes clear, neither presents a pure question of law

resolvable without reference to the facts and record in this case. To the contrary, both questions

by their terms challenge the manner in which the Bankruptcy Court applied settled law to the

facts as disclosed in the record of this case. Indeed, WTC's argument on the second question

emphasizes the point by insisting that the Bankruptcy Court's determination of the intent of the

parties embodied in the PHONES Notes Indenture subordination provisions contravenes

"fundamental principles of contract law, the plain wording of the PHONES Indenture, and

context surrounding the subordination provision." Motion at 12.

    B.    There Is No Substantial Ground For Difference Of Opinion On The Allegedly
           Controlling Questions of Law

      Even if WTC somehow had identified a controlling question of law – which it has not –

WTC has not established that there is any substantial ground for difference of opinion with

respect to that question. In order to show a substantial ground for difference of opinion, a party

seeking interlocutory appeal must demonstrate either a split among the lower courts in the circuit

on the issue presented or, in the absence of a split, that the lower court decisions in the circuit on

14

the issue are so confused and in such disarray that the governing legal standard cannot be ascertained.[14]  WTC has not even attempted to make such a showing here.

Instead, WTC argues that substantial grounds for difference of opinion has been shown on the PHONES Notes Indenture subordination question because the issues presented are "novel" or "important" or have "not been squarely addressed by prior caselaw."  Motion at 11.  Even if true, this would not suffice because the case law makes clear that a "question of first impression, a lack of judicial authority on a legal question, or a party's disagreement with a court's decision do not demonstrate a substantial ground for difference of opinion."  Advanced Marketing Services, 2008 U.S. Dist. LEXIS 27582 at *4.[15]

In any event, WTC's claims of "novelty," "importance," and "first impression" are unfounded.  Whether the subordination provision in the PHONES Notes Indenture applies to Litigation Trust fraudulent transfer claim recoveries is a question of contract interpretation, no more or less "novel" or "important" than any of the many contract issues litigated in courts

---

[14] See Schnelling v. KPMG, 2006 WL 1540815 at *3(D. N.J. 2006) (a substantial ground exists when there is "conflicting precedent as to the correct legal standard" or where  the court below applied one standard and 'other courts have substantially differed in applying that standard"); In re Magic Restaurants, Inc., 202 B.R. 24, 25-26 (D. Del. 1996) ("a judicial conflict on the issue is required" for a substantial ground); Johnson v. Washington Area Transit Authority, 790 F. Supp. 1174, 1180 (D.D.C. 1991) (a substantial ground exists because "there is a possible intracircuit split on the issue" and "[e]ven absent this split the case law is confused"); First American Bank of New York v. Country Glove, 64 B.R. 958, 962 (D. Del. 1986) ("the direct conflict between the Westgate court and the Bankruptcy Court leads this Court to conclude that there is a substantial ground for difference of opinion").  See also In re Schering-Plough Corp., 2010 WL 2546054 at *n. 4 (D.N.J. 2010) ("Defendants do not cite any cases within this Circuit that suggest a substantial ground for difference of opinion"); Hartsell v Source Media Inc., 1999 WL 629645 at *2 (N.D. Tex. 1999) (no substantial ground where there is a conflict among the circuits but not within the circuit within which the court is sitting); Bumgarner v. Blue Cross and Blue Shield of Kansas, Inc., 716 F. Supp. 493, 505 (D. Kan. 1988) (no substantial ground where "the cases in this district reveal[] a distinct trend" in favor of the approach adopted by the lower court).

[15] See In re W.R. Grace & Co., 2007 U.S. Dist. LEXIS 21586 at *4 (D. Del. 2007) ("The problem with ZAI Claimant's argument is that they cannot point to any case that states" the opposite of what the Bankruptcy Court held); Magic Restaurants, 202 B.R. at 26 ("a scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal").  See also In re Flor, 79 F.3d 281, 284 (2d Cir. 1996); First American Corp. v. Al-Nahyan, 948 F. Supp. 1107, 1116-17 (D.D.C. 1996).  Recognizing the weight of this authority, WTC claims that the Bankruptcy Court's interpretation of the PHONES Notes Indenture is "contrary to well-established law" but fails to identify this "well-established law" or to cite a single case embodying it.  See Motion at 11.

throughout the United States every day.[16]  The Bankruptcy Court resolved the question not by

breaking new ground or making new law, but by applying basic and well-settled principles of

contract law, as well as guidance from a decision concerning the purpose of the subordination

provisions, to the facts of this case.  See Reconsideration Decision, 2011 Bankr. LEXIS 5018 at

*15-*16, *28-*30.  Moreover, to the extent that WTC claims that the question presented is one

of "first impression" because this is the first time a court has construed this particular contract

among the parties, the argument is misguided and sweeps too broadly.  Indeed, were the law

otherwise, every decision interpreting a contract between two parties for the first time would be

subject to interlocutory appeal.

Equally flawed is WTC's argument that a substantial ground for difference of opinion is

established by the fact that the Bankruptcy Court interpreted the PHONES Notes Indenture one

way in its Confirmation Decision and then interpreted it the opposite way in its Reconsideration

Decision.  Motion at 12.  The Bankruptcy Court explained that it granted reconsideration because

in reaching its original decision it had misapprehended the position of the parties and had not

considered all of the relevant provisions of the PHONES Notes Indenture in reaching its

decision.  See Reconsideration Decision, 2011 Bankr. LEXIS 5018 at *13-*14.  The

Reconsideration Decision reflects the action of a conscientious judge, not a basis for seeking an

immediate appeal.  And, again, if WTC's argument were valid, *every* ruling granting a

reconsideration motion would necessarily be subject to interlocutory appeal.[17]

---

[16] See Simmons v. Akanno, 2011 U.S. Dist. LEXIS 46658 at *7 (E.D. Cal. 2011) (interlocutory appeal is a "safety valve for 'serious legal questions taking the case out of the ordinary run'") (citations omitted).

[17] WTC makes no real effort to demonstrate the existence of substantial grounds for difference of opinion concerning the legal standards governing reconsideration motions.  See Motion at 12.  WTC merely asserts that the Bankruptcy Court "abused its discretion" in granting the motion because the moving parties "said nothing new in [the reconsideration] motions and provided the Bankruptcy Court with no valid basis to reconsider its prior decision."  Id.  This argument, however, reveals nothing more than a disagreement with the lower court's decision which, no matter how "vehement," does not suffice to establish the needed substantial grounds for difference of opinion.  In re Vitamins Antitrust Litigation, 2000 WL 673936 at *3 (D.D.C. 2000).

C.    <u>An Immediate Appeal Will Not Materially Advance The Litigation</u>

An immediate interlocutory appeal is only permissible in circumstances where it will "materially advance the ultimate termination of the litigation." This means that an immediate appeal "must promise to *speed up* the litigation" as a whole. <u>Ahrenholz</u>, 219 F.3d at 676 (emphasis in original). <u>See also</u> <u>McFarlin</u>, 381 F.3d at 1259 (an immediate appeal must "avoid a trial or otherwise substantially shorten the litigation"). An appeal that simply advances one party's interests or position is not enough. <u>In re Edison Bros. Stores, Inc.</u>, 1996 WL 363806 at *3 (D. Del. 1996).

Here, it is clear that an immediate appeal will not materially advance the ultimate termination of the bankruptcy. To the contrary, as noted above, the Bankruptcy Court has established a schedule designed to result in a hearing on the remaining Allocation Disputes on March 5 and 6, 2012 and the Confirmation Hearing on the Third Amended DCL Plan on May 16 and 17, 2012. Consequently, it is difficult to see how an immediate appeal could "speed things up." <u>See</u> <u>Manitowoc Marine Group LLC v. Ameron International Corp.</u>, 2006 U.S. Dist. LEXIS 61678 at *6 (E. D. Wis. 2006) (no likelihood of material advancement shown where the case had been pending for three years and is "set for trial next month"); <u>Passalacqua Builders, Inc. v. Resnick Developers South Inc.</u>, 611 F. Supp. 281, 284 (S.D.N.Y. 1985) (no likelihood of material advancement shown where the case has been pending for three years and "the case is almost ready for trial").

Moreover, the pendency of the remaining Allocation Disputes further demonstrates the wisdom of adhering to the normal appellate process. As explained above, several of the remaining Allocation Disputes are nearly identical to the contract interpretation issue that WTC seeks to immediately appeal. Sound judicial administration therefore counsels in favor of considering a single appeal in which all of these questions can be considered together. It makes

no sense to allow a piecemeal appeal of one aspect of the subordination issue now and then to revisit the subject of subordination in a later appeal.

Finally, allowing an immediate appeal now is likely to delay rather than expedite the ultimate resolution of the bankruptcy. As explained above, any decision granting interlocutory review is likely to be followed by either a claim that the Bankruptcy Court has thereby been divested of jurisdiction or by a motion to stay the bankruptcy proceedings until the appeal is briefed, argued, and decided. Either response can only slow the bankruptcy down even more.

## CONCLUSION

The instant motion for leave to appeal should be denied.

Dated: Wilmington, Delaware
January 24, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
James F. Bendernagel, Jr.
Kevin T. Lantry
Jessica C.K. Boelter
Allison Ross Stromberg
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

*/s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors in
Possession and Certain Non-Debtor
Affiliates

18

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier:  (212) 541-5369


-and-

LANDIS RATH & COBB LLP

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier:  (302) 467-4450


-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

Counsel for the Official Committee of
Unsecured Creditors


DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier:  (213) 621-6100

-and-

19

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ M. Blake Cleary*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telecopier: (302) 571-1253

Counsel For Oaktree Capital Management,
L.P. and Angelo, Gordon & Co., L.P.

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

Co-Counsel For Angelo, Gordon & Co, L.P.


DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

-and-

RICHARDS LAYTON & FINGER, P.A.

*/s/ Drew G. Sloan*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

Counsel For JPMorgan Chase Bank, N.A.