# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 4513, 4702, 5277, 5862, 6204, 6450, 7403, 7643, 7682, 9614, 9687 and 9699** |
| | Hearing Date:  February 15, 2012 at 10:00 a.m. ET<br>Objection Deadline:  February 8, 2012 at 4:00 p.m. ET<br>Class Objection Deadline:  November 21, 2011 |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 9019 AND 7023 AND RULE 23 (I) APPROVING THE SETTLEMENT AGREEMENT ON A FINAL BASIS; (II) REAFFIRMING CLASS CERTIFICATION, CLASS REPRESENTATIVES AND CLASS COUNSEL APPOINTMENTS, AND NOTICING PROCEDURES; AND (III) GRANTING OTHER RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

# Table of Contents

|  |  | Page |
|---|---|---|
| SUMMARY OF RELIEF REQUESTED | | 1 |
| BACKGROUND TO THE MOTION | | 3 |
| A. | State Court Wage Litigation Overview | 3 |
| B. | Proofs of Claim, Motion for Class Certification and Class Treatment | 4 |
| RELIEF REQUESTED | | 6 |
| A. | The Settlement Agreement Should Be Finally Approved As Fair, Reasonable and Adequate | 6 |
| B. | The Notice Procedures Are Fair, Adequate and Sufficient | 8 |
| BASIS FOR RELIEF REQUESTED | | 11 |
| A. | Class Certification Should Be Reaffirmed Pursuant to Rule 23 | 11 |
| | a) Numerosity | 12 |
| | b) Commonality | 12 |
| | c) Typicality | 12 |
| | d) Adequacy of Representation | 12 |
| B. | Settlement Agreement Meets Legal Standards for Final Approval | 14 |
| | (1)    Settlement Should Be Finally Approved Under Rule 23 | 14 |
| | (2)    Settlement Should Be Finally Approved Pursuant to Rule 9019 | 16 |
| C. | Class Counsel Should Be Reaffirmed and the Attorneys' Fees and Costs Granted Final Approval | 19 |
| D. | Final Approval Is in the Best Interests of the Debtors' Estates | 22 |
| NO PRIOR REQUEST | | 23 |
| NOTICE | | 23 |

46429/0001-8254147v1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Campos v. Goode,*
No. 10-0224, 2011 U.S. Dist. LEXIS 22959 (S.D.N.Y. Mar. 4, 2011) ...................................20

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010)..................................................................................................14

*Ellis v. Edward D. Jones & Co., L.P.,*
527 F. Supp. 2d 439, 444 (W.D. Pa. 2007) ...........................................................................10

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975)...................................................................................................15

*Gunter v. Ridgewood Energy Corp.,*
223 F.3d 190 (3d Cir. 2000)...................................................................................................22

*Hacienda Heating & Cooling, Inc. v. United Artists Theatre Co. (In re United Artists
Theatre Co.),*
410 B.R. 385 (Bankr. D. Del. 2009) ......................................................................................12

*Hall v. AT&T Mobility LLC,*
No. 07-5325, 2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) ...................................20

*In re Am. Family Enters.,*
256 B.R. 377 (D.N.J. 2000) ...................................................................................................14

*In re AremisSoft Corp. Secs. Litig.,*
210 F.R.D. 109 (D.N.J. 2002).........................................................................................13, 20, 21

*In re AT&T Corp. Secs. Litig.,*
455 F.3d 160 (3d Cir. 2006)...................................................................................................22

*In re Cendant Corp. PRIDES Litig.,*
243 F.3d 722 (3d Cir. 2001).............................................................................................20, 21, 22

*In re Coram Healthcare Corp.,*
315 B.R. 321 (Bankr. D. Del. 2004) ...................................................................................16, 18

*In re Delta Fin'l Corp.,* Adv. Proc. No. 08-50606
(CSS) (April 9, 2010).............................................................................................................20

*In re Exide Techs.,*
303 B.R. 48 (Bankr. D. Del. 2003) ........................................................................................18

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig. ("In re GM Truck"),*
  55 F.3d 768 (3d Cir. 1995)............................................................ passim

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. 2009)................................................................15

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.,*
  No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)..........7, 21, 22

*In re Kaiser Group Int'l, Inc.,*
  278 B.R. 58 (Bankr. D. Del. 2002) ...............................................11, 12

*In re Louise's, Inc.,*
  211 B.R. 798 (D. Del. 1997)...................................................16, 17

*In re Marvel Entm't Group, Inc.,*
  222 B.R. 243 (D. Del. 1998).........................................................17

*In re Nashaminy Office Bldg. Assocs.,*
  62 B.R. 798 (E.D. Pa. 1986)..................................................16, 17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (In re Prudential),*
  148 F.3d 283 (3d Cir. 1998)...............................................11, 14, 15

*In re Rite Aid Corp. Secs. Litig.,*
  396 F.3d 294 (3d Cir. 2005)....................................................21, 22

*In re TSIC, Inc.,*
  393 B.R. 71 (Bankr. D. Del. 2008) .........................................16, 17

*In re Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516 (3d Cir. 2004).........................................................14

*In re World Health Alternatives, Inc.,*
  344 B.R. 291 (Bankr D. Del. 2006) ..............................................18

*In re Worldcom, Inc.,*
  347 B.R. 123 (Bankr. S.D.N.Y. 2006) ..............................11, 13, 14

*Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.),*
  336 B.R. 87 (Bankr. D. Del. 2005) ...............................................16

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007).........................................................20

*Myers v. Martin (In re Martin),*
  91 F.3d 389 (3d Cir. 1996)...................................................16, 17, 18

iii

46429/0001-8254147v1

*Neuberger v. Shapiro,*
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ................................................................21

*Waters v. Intern. Precious Metals Corp.,*
    190 F.3d 1291 (11th Cir. 1999) ........................................................................20

*White v. Experian Info. Solutions, Inc.,*
    No. 05-1070, 2011 U.S. Dist. LEXIS 79126 (C.D. Cal. July 15, 2011) ...................10

*Will v. Northwestern Univ. (In re Nutraquest, Inc.),*
    434 F.3d 639 (3d Cir. 2006) ............................................................................17

*Williams v. MGM-Pathe Commc'ns Co.,*
    129 F.3d 1026 (9th Cir. 1997) .........................................................................20

*Willix v. Healthfirst, Inc.,*
    No. 07-1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ..................20

*Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),*
    104 B.R. 659 (Bankr. D.N.J. 1989) ...................................................................11

## STATUTES

28 U.S.C. §§ 157 and 1334 .................................................................................3

28 U.S.C. § 157(b)(2) .........................................................................................3

28 U.S.C. §§ 1408 and 1409 ...............................................................................3

Section 363 of the Bankruptcy Code ............................................................ passim

## OTHER AUTHORITIES

Bankruptcy Rule 7023 ................................................................................ passim

Bankruptcy Rule 9019 ................................................................................ passim

Federal Rule of Civil Procedure 23 ............................................................... passim

*Litigation Governance: Taking Accountability Seriously* by John C. Coffee, Jr.
    110 Colum. L. Rev. 288, 333 (2010) ................................................................10

Tribune Company ("Tribune") and Tribune New York Newspaper Holdings, LLC

("Tribune NY" each a "Debtor" and collectively, the "Debtors" or the "Tribune Defendants")

hereby move this Court (the "Motion") for entry of an order substantially conforming with the

form of order attached as Exhibit A (the "Final Approval Order") pursuant to section 363 of title

11 of the United States Code (the "Bankruptcy Code"), Rules 7023, 9014 and 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal

Rules of Civil Procedure ("Rule 23") (i) approving the Settlement Agreement on a final basis;

(ii) reaffirming class certification, class representatives and class counsel appointments, and

noticing procedures; and (iii) granting other related relief this Court may deem just and proper.

In further support of this Motion, the Debtors respectfully state as follows:

## SUMMARY OF RELIEF REQUESTED

1.      On August 24, 2011, the Court granted preliminary approval of the

Settlement Agreement and Release (the "Settlement Agreement"),[2] attached hereto as Exhibit B,

and related settlement class action relief.  *See* Order (I) Preliminarily Approving Settlement

Agreement; (II) Granting Class Certification, Appointing Class Representatives and Class

Counsel, and Approving Noticing Procedures; (III) Scheduling Final Fairness Hearing;

(IV) Finally Approving Settlement Agreement After Final Fairness Hearing; and (V) Granting

Other Related Relief (the "Preliminary Approval Order") [Docket No. 9699].[3]  No parties

opposed entry of the Preliminary Approval Order, which was entered on certification of no

objection [Docket No. 9687], and no members of the Settlement Class have objected to the

settlement terms.

---

[2]  Any capitalized terms not defined herein are defined in the Settlement Agreement.

[3]  The motion requesting preliminary approval of the Settlement Agreement and related class action relief is titled, Motion of the Debtors for an Order pursuant to Sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 9019 and 7023 and Rule 23 to (I) Approve Settlement Agreement, (II) Grant Class Certification, Appoint Class Representatives and Class Counsel, and Approve Noticing Procedures, (III) Schedule Final Fairness Hearing, and (V) Grant Other Related Relief (the "Preliminary Approval Motion") [Docket No. 9614].

2.      The Settlement Agreement fully and finally settles and releases all claims
under a minimum wage class action brought by the Plaintiffs (as defined below) on behalf of
individuals that promoted and/or distributed the *amNew York* newspaper from 2004 to 2007 on a
claims-made basis, pursuant to which the Defendants shall pay no more than a total gross
settlement amount of $325,000, of which $275,000 will be contributed by the Debtors and
$50,000 will be contributed by the Debtors' co-defendants.  The Settlement Agreement
compromises substantial potential liabilities if the Plaintiffs prevailed, as indicated by a $1.5
million class proof of claim and eighteen (18) individual proofs of claim, asserted in the amount
of $10,000 each.

3.      Following entry of the Preliminary Approval Order, the Court-appointed
claims administrator, Gilardi & Co., LLC (the "Claims Administrator" or "Gilardi"),
implemented the approved claims-made process and noticing procedures in full compliance with
that Order.  *See* Declaration of Andrew Morrison (the "Morrison Decl.") attached hereto as
Exhibit C.  The noticing procedures required Gilardi to validate current addresses and remail
notice packages to the extent possible given that current addresses were unavailable for many
Settlement Class members.  As a result of this comprehensive noticing effort, 479 Settlement
Class members filed valid and timely claims, without any objections and only one opt-out (filed
without explanation).  (Morrison Decl. ¶¶ 8-10.)  Pursuant to the Settlement Agreement, those
timely submitting valid claims stand to receive $52,050.94 in settlement payments.

4.      The Settlement Agreement is now ripe for final approval as a fair,
reasonable and adequate settlement—that is well within the range of reasonableness, under
Rule 23(e) and Bankruptcy Rules 7023 and 9019—as to the Settlement Class members, the
Debtors, their estates, creditors and all parties in interest.

## STATUS OF THE CASE AND JURISDICTION

5.      On December 8, 2008, the Debtors each filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code, except Tribune CNLBC, LLC, f/k/a Chicago National

League Ball Club, LLC, which filed on October 12, 2009 (each date, as applicable, the "Petition

Date"). The Debtors' chapter 11 cases are jointly administered for procedural purposes only.

6.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On December 18, 2008, the United States Trustee appointed the official

committee of unsecured creditors (the "Committee").

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief

sought herein are section 363 of the Bankruptcy Code, Bankruptcy Rules 7023, 9014, and 9019

and Rule 23.

## BACKGROUND TO THE MOTION

A.      **State Court Wage Litigation Overview**

9.      A description of the underlying state court wage litigation was provided in

the Preliminary Approval Motion and the Declaration of Michael D. Palmer, Class Counsel,

dated August 4, 2011 (the "Palmer Declaration"), attached thereto as Exhibit D, both of which

are incorporated by reference. In summary, the Settlement Agreement compromises a lawsuit

filed by Class Counsel, on behalf of the Plaintiffs, in the Supreme Court of New York, County of

New York against the Debtors and Mitchell's Subscription Service LLC d/b/a LBN Consulting,

LLC and Morning Newspaper Delivery, Inc. (collectively, the "Delivery Defendants" and

3

together with the Tribune Defendants, the "Defendants") alleging minimum wage claims under

New York Labor Law, captioned *James Allen, et al. v. Tribune New York Newspaper Holdings,*

*LLC, et al.*, Index No. 602801/2007 (the "State Court Case" and together with the class litigation

in this chapter 11 proceeding, the "Lawsuit").

> 10.    In the State Court Case, the Named Plaintiffs alleged that they and other

similarly situated individuals were entitled to minimum wage payments as "employees" for their

services as "hawkers" of *amNew York*, a free daily morning newspaper published by Debtor

Tribune NY, on the streets in the greater New York City area.  The Plaintiffs sought the

difference in value between what each class member could have earned on an hourly basis under

the prevailing New York minimum wage and the amount actually paid to each class member.

This litigation was stayed by the Debtors' bankruptcy filing.  The New York state court's denial

of the Plaintiffs' subsequent motion to sever their claims against the Debtors in order to proceed

against the Delivery Defendants in the State Court Case effectively ceased further litigation

without lifting the automatic stay or resolving the matter in the bankruptcy court.

**B.      Proofs of Claim, Motion for Class Certification and Class Treatment**

> 11.    On March 25, 2009, the Court entered the Order pursuant to Sections 501,

502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local

Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and

Manner of Notice Thereof (the "Bar Date Order") [Docket No. 813].  The Bar Date Order set a

general bar date of June 12, 2009 at 4:00 p.m. prevailing Eastern Time (the "Bar Date") by

which any person asserting a claim against the Debtors must properly and timely file a proof of

claim.

> 12.    On the Bar Date, the Plaintiffs, through Class Counsel, timely filed two

class proofs of claim [Claim Nos. 4938, 4939] (the "Class Claims") in the amount of

4

$1.5 million each against Tribune and Tribune NY, and individual proofs of claim in the amount of $10,000 each for the seven (7) Named Plaintiffs and eleven (11) additional claimants (the "Opt-In Claimants," and together with the Named Plaintiffs, the "Plaintiffs" or "Class Representatives") against Tribune and Tribune NY (the "Individual Claims").[4]  The Class Claims were filed on behalf of each Named Plaintiff in the State Court Case on behalf of themselves and all others similarly-situated, which they claimed were "current and former employees of the Debtor, each of whom was an employee of the Debtor and promoted and distributed *amNew York*."

13.     On May 20, 2010, the Plaintiffs through Class Counsel filed their Movants' Motion for Class Certification and Class Treatment of Movants' Class Proofs of Claim (the "Class Certification Motion") [Docket No. 4513].  The Debtors objected to the Class Certification Motion [Docket No. 6204], to which the Plaintiffs responded by filing a reply on January 6, 2011 [Docket No. 7403].  At the January 13, 2011 omnibus hearing on the matter, the Court directed the parties to mediation, and later entered an Order requiring mediation and setting forth the timetable for the mediation (the "Mediation Order") [Docket No. 7682]. Pursuant to the Mediation Order, on March 14, 2011, the Defendants and Class Counsel, on behalf of the Plaintiffs and all similarly-situated persons, conducted an intensive, arms'-length negotiation and mediation session with Ruth D. Raisfeld, Esq., an independent mediator, and reached a settlement agreement in principle.  The Debtors apprised the Court of the status of the settlement at the March 22, 2011 status conference.

---

[4] The Individual Claims filed by Class Counsel on behalf of the Named Plaintiffs are:  James Allen (Claim Nos. 4910, 4911), Charles Evans (Claim Nos. 4906, 4907), Pearl Evans (Claim Nos. 4904, 4905), Gary Grant (Claim Nos. 4912, 4913), Loretta Grant (Claim Nos. 4936, 4937), Bill McNair (Claim Nos. 4926, 4927), and Sean Serrao (Claim Nos. 4922, 4923).  The Individual Claims filed by Class Counsel on behalf of the Opt-In Claimants are:  Patrick Anderson (Claim Nos. 4908, 4909), Velma Barnhardt (Claim Nos. 4916, 4917), Victor Cruz (Claim Nos. 4914, 4915), Larry Fernandez (Claim Nos. 4902, 4903), John Haywood (Claim Nos. 4934, 4935), Mark Jackson (Claim Nos. 4932, 4933), Phil Johnson (Claim Nos. 4930, 4931), Victoria McLaughlin (Claim Nos. 4928, 4929), Damion Reid (Claim Nos. 4924, 4925), Jennifer Strange (Claim Nos. 4920, 4921), and Tenisha Walcott (Claim Nos. 4918, 4919).

5

14.     The parties submitted their Settlement Agreement to the Court for preliminary approval on August 4, 2011, which the Court approved on August 24, 2011. Following entry of the Preliminary Approval Order, the parties implemented the terms of the Order and completed the claims-made process as set forth therein and pursuant to the Settlement Agreement.

15.     The resolution of each of the Class Claims and Individual Claims is set forth in Exhibit A to the Settlement Agreement, which agreement is attached hereto as <u>Exhibit B</u>. Distributions on account of these claims will be exclusively made out of the Common Fund in accordance with the terms of the Settlement Agreement. This agreement resolves all of the Debtors' objections to the Class Claims and Individual Claims, and, upon final approval and subject to the terms of the Settlement Agreement, will also result in the Class Claims and Individual Claims being disallowed and expunged in the Debtors' bankruptcy cases.

## **RELIEF REQUESTED**

16.     By this Motion, the Debtors respectfully request that this Court enter the Proposed Order attached as <u>Exhibit A</u> hereto, (i) approving the Settlement Agreement on a final basis; (ii) reaffirming class certification, class representatives and class counsel appointments, and noticing procedures; and (iii) granting other related relief this Court may deem just and proper.

### A.     **The Settlement Agreement Should Be Finally Approved As Fair, Reasonable and Adequate**

17.     The Settlement Agreement resulted from an intensive, full-day mediation session among the Defendants and Class Counsel, and subsequent arms'-length negotiations, conducted in accordance with the Mediation Order. It resolves any and all claims asserted by Class Counsel, on behalf of Plaintiffs and other similarly-situated Settlement Class members, and

provides for a fair, reasonable and adequate outcome consistent with the requirements of

settlements in the class action and bankruptcy contexts.[5]

18.     The terms of the Settlement Agreement are set forth in <u>Exhibit B</u> hereto,

and were fully summarized in the Preliminary Approval Motion.  The Settlement Agreement

provides for a Common Fund in Total Gross Amount of $325,000, of which the Debtors will

contribute $275,000 and the Delivery Defendants will contribute $50,000 following the

Settlement Effective Date, which will occur after the Plan Effective Date.  Enhanced Service

Awards are to be paid to certain of the Plaintiffs that actively assisted Class Counsel with the

Lawsuit in a total gross amount of $18,000, for which individual distributions have been

determined by Class Counsel.[6]  After deduction of the Enhanced Service Awards and Attorneys'

Fees and Costs, the Common Fund will fund distributions to Qualified Claimants, as determined

by the claims-made process, and in accordance with the formula set forth in the Settlement

Agreement.  Qualified Claimants will receive no less than $15, and no greater than $1,500 under

the formula for distributions, an amount based on years of service, annual adjustments in the

New York State minimum wage, and fluctuations in the applicable pay scale.  The total

disbursement for Qualified Claimants' valid and timely filed claims under the Common Fund is

$52,050.94.[7]  (Morrison Decl. ¶ 8.)  After payment of the Claims Administration Expense of

$22,500, the amount of unclaimed funds in the Common Fund is estimated to total

approximately $110,000 (rounded estimate).  Pursuant to the Settlement Agreement, unclaimed

---

[5]  In the event the Settlement Agreement is not finally approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the parties reserve all of their rights.

[6]  For a breakdown of the Enhanced Service Awards along with an explanation of the basis for the requested distribution, see the Settlement Agreement, attached as <u>Exhibit B</u> hereto, and the Palmer Declaration, attached as Exhibit D to the Preliminary Approval Motion. *See also In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 U.S. Dist. LEXIS 60790, at *35 (E.D. Pa. July 16, 2009) ("Factors that courts consider in determining whether incentive awards are appropriate include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.").

[7]  Pursuant to the Settlement Agreement, the parties can stipulate to cure the twelve timely filed, but deficient, claims in this case, in the total aggregate amount of $313.43.  (Morrison Decl. ¶ 8.)

funds shall be returned to the Defendants, with 85% of that estimated amount, or over $90,000, returned to the Debtors.

19.    The Settlement Agreement provides for a full and general release of the Defendants of all disputes and claims between the Settlement Class and the Defendants relating to the alleged wage and hour claims, including in its effect all claims alleged in the Lawsuit. Following entry of the Final Approval Order, the parties shall execute a Stipulation of Discontinuance with Prejudice and file it with the State Court, to finally resolve the underlying State Court Case.

**B.    The Notice Procedures Are Fair, Adequate and Sufficient**

20.    The notice procedures and claims-made process set forth in the Settlement Agreement constitute fair, adequate and sufficient notice for purposes of informing all Settlement Class members of the settlement, and permitting such members to participate in the claims-made process, opt-out of the settlement, or object to the settlement, in compliance with Rule 23 and due process considerations.  The notice procedures were approved by the Preliminary Approval Order and implemented by the parties and the Claims Administrator in full compliance with the required noticing procedures.

21.    On September 1, 2011, Gilardi received from Delivery Defendants' counsel a spreadsheet containing the names and addresses of promoters and/or distributors of *amNew York* newspapers who are potential Settlement Class members in this matter.  (Morrison Decl. ¶ 2.)  Given the transient nature of the Settlement Class members and the reality that many hawkers performed work for brief periods of time between 2004 and 2007 (over five years ago), Gilardi attempted to validate current addresses and remail notice packages to the extent possible. The parties anticipated that a large number of addresses would be stale, and that reaching all Settlement Class members through actual notice would be extremely difficult.

8

22.     Gilardi formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service ("USPS").  After Gilardi processed the class list, the list contained data for 2,941 Settlement Class members.  (*Id.* ¶ 2.)

23.     On or before September 21, 2011, Gilardi established a toll-free telephone number that Settlement Class members could call to speak to a live operator.  (*Id.* ¶ 3.)

24.     On September 21, 2011, the notice mailing deadline, Gilardi caused the Notice of Pendency of Class Action Settlement and the Claim Form & Release (collectively, the "Notice Packet") to be printed and mailed to the 2,941 names on the class list.  (*Id.* ¶ 4.)  Gilardi delivered the Notice Packets to the United States Post Office located in San Rafael, California. A true and correct copy of the Notice Packet is provided as Exhibit A to the Morrison Declaration.  (*Id.*, Ex. A.)

25.     On September 21, 2011, Gilardi caused the court-ordered legal notice to be published in the *New York Post*.  An affidavit of publication from the *New York Post* and a tear sheet of the publication are attached as Exhibit B to the Morrison Declaration.  (*Id.* ¶ 5, Ex. B.)

26.     A large number of the Notice Packets mailed by Gilardi were returned with updated or undeliverable addresses.  This result was expected based on the high likelihood that most Settlement Class members, given their itinerant nature and temporary work situations, would have moved since 2004 through 2007, the main time period for the claims and the address information provided by the Delivery Defendants.  Since mailing the Notice Packets to the Settlement Class members, Gilardi received eighteen (18) Notice Packets returned by the USPS with an updated address.  Gilardi immediately remailed the Notice Packets to those updated

9

addresses. (*Id.* ¶ 6.) In addition, Gilardi received 1,318 (45% of the mailed Notice Packets)

Notice Packets returned by the USPS with undeliverable addresses, as was expected. Gilardi,

through a third party locator service, performed address searches for these Notice Packets and

found 564 updated addresses (43% of the undeliverable addresses), and remailed Notice Packets

to all 564 updated addresses. (*Id.* ¶ 7.)

      27.    The claims filing, opt-out and objection filing postmark deadline was

November 21, 2011. To date, Gilardi has received 491 timely claims and 13 late claims (late

claims are excluded from settlement distribution). The timely claims received by Gilardi

represent over 16% of the Settlement Class members and is consistent with the parties'

anticipated response rate. This is a good result generally and given the numerous impediments to

providing notice to this Settlement Class. *See White v. Experian Info. Solutions, Inc.*, No. 05-

1070, 2011 U.S. Dist. LEXIS 79126, at *35 (C.D. Cal. July 15, 2011) ("although a five percent

response rate to a settlement disseminated via direct notice is low, this underwhelming response

rate does not mean that the Settlement, on the whole, is not fair, reasonable and adequate."); *Ellis

v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 444 (W.D. Pa. 2007) ("The opt-in rate in a

FLSA collective action not backed by a union is generally between 15 and 30 percent."); John C.

Coffee, Jr., *Litigation Governance: Taking Accountability Seriously*, 110 Colum. L. Rev. 288,

333 (2010) (noting that a recent study of twenty-one FLSA cases found "the average opt-in rate

to be . . . 15.71% . . . .").

      28.    Of the 491 timely claims received to date, 12 claims remain deficient and

without cure as defined in paragraph 3(e) of the Settlement Agreement (all such claimants were

sent a Deficiency Notice on or before November 30, 2011). (*Id.* ¶ 8.) Gilardi has received only

one timely opt-out (without any information or reason for opting out from the class), no late opt-

outs, and no objections to the Settlement Agreement. (*Id.* ¶¶ 9-10.) The parties and their counsel also have not received any objections to the Settlement Agreement from the Settlement Class members.

29.    Pursuant to the Settlement Agreement, the 479 timely and valid claims are entitled to receive settlement payments in the aggregate total amount of $52,050.94. (*Id.* ¶ 8.)

**BASIS FOR RELIEF REQUESTED**

A.    **Class Certification Should Be Reaffirmed Pursuant to Rule 23[8]**

30.    The Debtors submit that the Court should reaffirm class certification and treatment. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig. ("In re GM Truck")*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart."). To reaffirm a preliminarily certified class for settlement purposes only, the Court must find that the proposed class meets the requirements of Rules 23(a) and 23(b). *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (In re Prudential)*, 148 F.3d 283, 308 (3d Cir. 1998); *In re GM Truck*, 55 F.3d at 778; *In re Worldcom, Inc.*, 347 B.R. 123, 141 (Bankr. S.D.N.Y. 2006). The Court has the authority to finally certify the settlement class in the context of bankruptcy. *See, e.g., In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002); *Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.)*, 104 B.R. 659, 662-63 (Bankr. D.N.J. 1989).

31.    Rule 23(a) requires a showing of (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[9] Fed. R. Civ. P. 23(a). The Class Certification

---

[8] The positions stated in this section of the Motion are intended to support final approval of the Settlement Agreement and class certification solely for settlement purposes. If the Settlement Agreement is not approved or does not become binding and effective for any reason, the positions of the parties would be restored to the same position they were in prior to the Settlement Agreement and the filing of this Motion, including the Defendants' objection to class certification and opposition to all claims asserted by the Plaintiffs and Class Counsel on their behalf. Likewise, Class Counsel would retain their right to prosecute the class and individual claims and the Lawsuit.

[9] The four elements of Rule 23(a) are:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

11

Motion provided the grounds for class certification, which are summarized below to support the

Court's findings of fact to reaffirm class certification for settlement purposes only.

> a) <u>Numerosity</u>. The potential number of Settlement Class members is approximately 2,950 hawkers based upon the Delivery Defendants' books and records—actual notice was attempted for 2,941 eligible claimants. The proposed settlement class is sufficiently large to make joinder of all individual class members impracticable. Class actions involving fewer class members have been approved in the Third Circuit. *See, e.g., Hacienda Heating & Cooling, Inc. v. United Artists Theatre Co. (In re United Artists Theatre Co.)*, 410 B.R. 385, 392 (Bankr. D. Del. 2009) (observing that numerosity is generally met when the class size exceeds 40); *In re Kaiser Group Int'l, Inc.*, 278 B.R. at 64 (certifying a class size of 47).

> b) <u>Commonality</u>. Common questions of law or fact are shared between the Plaintiffs and the Settlement Class relating to their common contract and services provided as hawkers of *amNew York* and prevailing New York minimum wage law during the class period. *See In re United Artists Theatre Co.*, 410 B.R. at 392.

> c) <u>Typicality</u>. The Plaintiffs possess claims that are typical of the class, which includes hawkers of *amNew York* during the class period. *See In re United Artists Theatre Co.*, 410 B.R. at 393. The Plaintiffs suffered the same alleged injury and possess the same interests as the prospective settlement class. *See In re Kaiser Group Int'l, Inc.*, 278 B.R. at 66.

> d) <u>Adequacy of Representation</u>. Plaintiffs may adequately serve as Class Representatives because they share common interests in maximizing recovery and have claims arising from the same facts and circumstances as the Settlement Class, and Class Counsel is experienced with class action litigation and capable of competently and vigorously prosecuting the action. The Debtors did not object to the adequacy of Class Counsel to represent the Settlement Class.

---

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

32.     Once the class action satisfies the four elements under Rule 23(a), the class action must also meet one of the three elements of Rule 23(b).  In this case, the Class Certification Motion requested class certification under Rule 23(b)(3):

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The final factor under 23(b)(3) does not apply to settlement classes as there is no trial.  *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. 109, 122 (D.N.J. 2002); *In re Worldcom, Inc.*, 347 B.R. at 141, 143.

33.     <u>Predominance</u>.  Common issues predominate over individual variances in unpaid wages based on the shared questions of the Plaintiffs' and Settlement Class members' status while promoting and/or distributing the *amNew York* newspaper as alleged in the Class Certification Motion and supported by the finding of commonality among Settlement Class members.

34.     <u>Superiority</u>.  Class certification and treatment of the Class Claim for purposes of settlement is in the interests of fairness and judicial economy and the settlement efficiently and fairly resolves the Class Claims, the Individual Claims, and all claims of Settlement Class members through the Settlement Agreement, thereby avoiding costly or

13

prohibitive attempts by class members to litigate their claims individually against the

Defendants, especially in light of the small dollar value of many of the claims.

**B.      Settlement Agreement Meets Legal Standards for Final Approval**

35.      Settlement of a class action in the context of bankruptcy should meet both

the standards for settlement under Rule 23(e) for federal class actions and under Bankruptcy

Rule 9019(a) for final approval. *In re Am. Family Enters.*, 256 B.R. 377, 429 (D.N.J. 2000)

(approving class action settlement pursuant to Rule 23 and Bankruptcy Rule 9019); *In re*

*Worldcom, Inc.*, 347 B.R. at 139-40 (applying both Rule 23 and Bankruptcy Rule 9019 to

approve a class action settlement).  In addition to meeting the requirements for class certification

under Rules 23(a) and (b), a separate inquiry under Rule 23(e) is required to establish that the

settlement is fair, reasonable and adequate. *In re Prudential*, 148 F.3d at 316.  A strong

presumption in favor of settlements exists in litigation, especially in the class action context.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("This presumption is especially

strong in 'class actions and other complex cases where substantial judicial resources can be

conserved by avoiding formal litigation'" (quoting *In re GM Truck*, 55 F.3d at 784)).

Settlements that are achieved through a procedurally fair arms'-length process—such as use of a

third-party mediator in this case—among other factors, are entitled to an initial presumption of

fairness. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In re*

*Worldcom, Inc.*, 347 B.R. at 143-44.  The benefits of settlement include judicial economy and

the avoidance of costs and risks in complex litigation such as this class action dispute. *Ehrheart*,

609 F.3d at 595.

**(1)      Settlement Should Be Finally Approved Under Rule 23**

36.      Class action settlements are usually approved in a two step process:

preliminary approval prior to notice to the class and final approval following a period during

14

which class members may object to the settlement. *In re GM Truck*, 55 F.3d at 785.  Settlements

that are "fair, reasonable, and adequate" should be finally approved by the bankruptcy court

pursuant to Rule 23(e).  Fed. R. Civ. P. 23(e)(2); *In re Prudential*, 148 F.3d at 316; *In re GM*

*Truck*, 55 F.3d at 785.  Rule 23(e) is made applicable to a class action settlement in bankruptcy

by Bankruptcy Rule 7023.  In determining the fairness of a class action settlement under

Rule 23(e), the bankruptcy court may consider a variety of factors, including:

> (i) the complexity, expense and likely duration of the litigation; (ii) the
> reaction of the class to the settlement; (iii) the stage of the proceedings and
> the amount of discovery completed; (iv) the risks of establishing liability;
> (v) the risks of establishing damages; (vi) the risks of maintaining the class
> action through the trial; (vii) the ability of the defendants to withstand a
> greater judgment; (viii) the range of reasonableness of the settlement fund
> in light of the best possible recovery; and (ix) the range of reasonableness
> of the settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009) (quoting *Girsh v.*

*Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)); *In re Prudential*, 148 F.3d at 317 (same); *In re GM*

*Truck*, 55 F.3d at 785 (same).

      37.    As set forth in the Preliminary Approval Motion, the proposed settlement

satisfies the *Girsh* factors among other factors for approval of a class action settlement in light of

the presumption of fairness inherent in an arms'-length negotiated settlement.  The Court

recognized the complexity and costs of continued litigation when it directed the parties to

mediation to negotiate a settlement prior to further litigation.  The significant costs and litigation

risks entailed in establishing liability and damages, and maintaining the Lawsuit strongly support

settlement of the Lawsuit.  The notice procedures require individual notice in addition to

publication notice to satisfy all due process concerns.  The settlement offers the best possible

recovery to the Settlement Class of a sum certain share of the settlement amount, especially for

46429/0001-8254147v1

those Settlement Class members otherwise barred from filing claims against the Debtors due to passing of the Debtors' Bar Date.

**(2)**      **Settlement Should Be Finally Approved Pursuant to Rule 9019**

38.      As a general policy, settlements and compromises are encouraged and favored by courts to efficiently resolve disputes in the bankruptcy context. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008). The bankruptcy court may approve a class action settlement pursuant to section 363 of the Bankruptcy Code. *See In re Martin*, 91 F.3d at 395 n.2. The procedure for approving a settlement in bankruptcy is similar to that under Rule 23(e) as set forth by Bankruptcy Rule 9019, which provides, in relevant part:

> On motion of the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). Approval of a settlement under Bankruptcy Rule 9019 is committed to the sound discretion of the bankruptcy court. *In re TSIC, Inc.*, 393 B.R. at 78; *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The Court, however, should defer to the debtor's business judgment when approving consensual settlements. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004). *See also In re Nashaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986) (providing that when approving a proposed settlement, the court "does not substitute its judgment for that of the trustee").

39.      Bankruptcy courts generally approve settlements that are "fair, reasonable, and in the best interests of the estate." *In re TSIC, Inc.*, 393 B.R. at 78 (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)). In determining whether to approve a settlement

16

pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a bankruptcy court

is required to "assess and balance the value of the claim that is being compromised against the

value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.

Bankruptcy courts consider four factors when deciding whether to approve a proposed

settlement: "(1) the probability of success in the litigation; (2) the likely difficulties in

collection;[10] (3) the complexity of the litigation involved, and the expense, inconvenience and

delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* (citing

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

424-25 (1968); *In re Nashaminy Office Bldg. Assocs.*, 62 B.R. at 803). *See also Will v.*

*Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (confirming the

*Martin* factors as a longstanding test for approval of settlements); *In re Marvel Entm't Group,*

*Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (relying on these four factors to determine fairness,

reasonableness, and adequacy of a settlement). "The court must also consider 'all other factors

relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re Marvel*

*Entm't Group, In*c., 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424). The

court may approve the settlement so long as it is "above the lowest point in the range of

reasonableness." *In re TSIC, Inc.*, 393 B.R. at 79 (quoting *Official Unsecured Creditors' Comm.*

*v. Pa. Truck Lines, Inc. (In re Pa. Truck Lines, Inc.)*, 150 B.R. 595, 598 (E.D. Pa. 1992)). In

alignment with the standard for approval under Rule 23(e), the ultimate inquiry is whether, in the

court's discretion, the compromise embodied in the settlement "is fair, reasonable, and in the

best interests of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

---

[10] This factor is less important in this case where the Debtors are defendants and potentially liable for the claims of the class members.

40.     The Court preliminarily approved the Settlement as fair, reasonable and adequate, and within the range of reasonableness. As explained in the Preliminary Approval Motion, the Settlement Agreement easily meets the requirements of the *Martin* factors. First, in evaluating the litigant's probability of success in litigation, "the Court's task . . . is to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Exide Techs.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003) (quoting *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803). The Court need not be convinced that the settlement is the best possible compromise, just that the settlement is within the range of litigation possibilities. *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr D. Del. 2006); *In re Coram Healthcare Corp.*, 315 B.R. at 330. The cost of litigating class actions is significant and the outcome is highly uncertain. Although both sides of this dispute believe their position to be meritorious, and Defendants deny any liability, the settlement represents a typical approach to resolve class claims and litigation without incurring significant litigation costs, and is well within the range of reasonableness.

41.     Second, class action litigation is notoriously complex, involving difficult legal and factual issues, requiring numerous inquiries into matters of class certification, adequacy of class counsel and class representatives, detailed claims administration procedures, and, finally, the actual merits of the underlying lawsuit. Recognizing the burden of class action litigation, the Court directed the parties to mediation in an attempt to reach a settlement prior to any further litigation of the Class Certification Motion.

42.     Last, the Settlement Agreement is in the paramount interests of the creditors. It resolves asserted Class Claims in the amount of $1.5 million and Individual Claims in the aggregate amount of $180,000 against two Debtors in exchange for the all-in Settlement

18

Amount of $325,000, of which $275,000 will be paid by the Debtors. The Settlement Agreement embodies full and final releases of all claims relating to or arising under the Lawsuit, in exchange for the consideration and obligations set forth in the Settlement Agreement. The Debtors further benefit from the release of the Plaintiffs' and Settlement Class members' disputes and claims as against the co-defendants based upon a contractual indemnification provision asserted by the co-defendants against the Debtors. Resolution and liquidation of these disputed litigation claims serves creditors' interests in preparing the Debtors for emergence. Following entry of the Final Approval Order, the underlying State Court Case will be dismissed with prejudice through a Stipulation of Discontinuance with Prejudice within five (5) business days.

**C.  Class Counsel Should Be Reaffirmed and the Attorneys' Fees and Costs Granted Final Approval**

43.  Class Counsel should be reaffirmed to represent the class in this case and to effectuate the settlement and resolution of the Class Claims and Individual Claims. The Court appointed Joseph, Herzfeld, Hester & Kirschenbaum LLP as class counsel ("Class Counsel") via the Preliminary Approval Order, finding that Class Counsel had proven that Class Counsel can fairly and adequately represent the interests of the Settlement Class. The Debtors also seek final approval of the preliminarily-approved Attorneys' Fees in the amount of 33% of the Total Gross Amount after deduction of Costs in the amount of $18,364 as fair and reasonable, considering the time and effort spent by Class Counsel in pursuing the Lawsuit and negotiating the Settlement Agreement on behalf of the Settlement Class, among other services. The factual support for the Attorneys' Fees and Costs under this settlement is provided in the Palmer Declaration (attached as Exhibit D to the Preliminary Approval Motion), as further supplemented by the Supplemental Declaration of Michael D. Palmer, attached hereto as Exhibit D.

19

44. Attorneys' Fees equal to 33% of the Total Gross Amount[11] after the deduction for reimbursed Costs is fair and reasonable—well-within the norm for similar wage and hour class actions and third circuit precedent—and should be awarded to Class Counsel pursuant to Rule 23(h) and New York law and practice. *See, e.g., Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 U.S. Dist. LEXIS 21102, at *17-19 (E.D.N.Y. Feb. 18, 2011) (ruling that "33 1/3% of the Fund [for attorneys' fee] is reasonable and consistent with the norms of class litigation in this circuit" and that "[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses"); *Campos v. Goode*, No. 10-0224, 2011 U.S. Dist. LEXIS 22959, at *20-22 (S.D.N.Y. Mar. 4, 2011) (same). A one-third contingency fee is presumptively valid in New York. *Id.* (citing *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 389 (S.D.N.Y. 2000)). The award of Attorneys' Fees is also consistent with third circuit guidance. *See, e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) (noting that fee awards vary by case, fee awards typically range "from nineteen percent to forty-five percent of the settlement fund"); *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. at 134 (observing that "[s]cores of cases exist where fees were awarded in the [range of] one-third to one-half of the settlement fund." (citations omitted)).

45. The Attorneys' Fees also meet the standards for approval in common fund cases in third circuit courts, which have repeatedly approved percentage-of-recovery fee awards in common fund cases. *See, e.g., In re Delta Fin'l Corp.*, Adv. Proc. No. 08-50606 (CSS) (April 9, 2010) (approving attorneys' fees of 33% the maximum gross settlement amount); *See*

---

[11] As "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class", it is proper to measure the attorneys' fee percentage "on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). *See also, e.g., Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355, at *60 (D.N.J. Oct. 13, 2010) (rejecting objection to class counsel's fees, finding that the objector "cites to no legal authority in support of his contention that attorneys' fees should, instead, be based on a percentage of claims actually paid out, nor is the Court aware of any such authority"); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1295-1296 (11th Cir. 1999) ("No case has held that a district court must consider only the actual payout in determining attorneys' fees."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (finding the district court abused its discretion in awarding attorneys' fees based upon a percentage of the amount of claims made on the fund rather than the entire class fund.).

20

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 734 (approving percentage-of-recovery fee award in similar case with a reverter); *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. at 133-34 (approving percentage-of-recovery fee award including 33-1/3% of the common stock to be distributed to the class).   A percentage-of-recovery fee award is preferred in common fund cases in the Third Circuit and is appropriate in class actions where Class Counsel has worked on a contingency fee basis. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) (reiterating that the percentage of common fund approach is the proper method of awarding attorneys' fees, but acknowledging lodestar as a cross-check); *In re AremisSoft Corp. Secs. Litig.*, 210 F.R.D. at 128 (citing *In re GM Truck*, 55 F.3d at 821-22).   Further, courts within the Third Circuit consistently approve the reimbursement of reasonable litigation expenses for attorneys who have created common funds. *See In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, at *49 ("Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.") (internal quotation omitted); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." (internal quotations omitted)).

46.     Third Circuit courts evaluate attorneys' fee awards in common fund settlement cases based on a non-exhaustive list of factors:

> (1) the size of the fund created and number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

46429/0001-8254147v1

*In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006) (quoting *In re Rite Aid Corp.*

*Secs. Litig.*, 396 F.3d at 301); *In re Cendant Corp. PRIDES Litig.*, 243 F. 3d at 733 (quoting

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

        47.    The Attorneys' Fees should be approved under *Gunter* and its progeny.

The Common Fund is sizeable and intended to serve approximately 2,950 potential Settlement

Class members.  The Plaintiffs have already agreed to the settlement and, after receiving notice

of the fee award, no Settlement Class members have objected to the fee award despite having an

opportunity to do so.  Further, as provided in the Preliminary Approval Motion and the Palmer

Declaration attached thereto, it is evident from a lodestar cross-check that the percentage-of-

recovery compensation requested by Class Counsel is reasonable.  *In re AT&T Corp. Secs. Litig.*,

455 F.3d at 164; *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d at 305-07; *In re Cendant Corp.*

*PRIDES Litig.*, 243 F.3d at 742; *In re GM Truck*, 55 F.3d at 821 & n.40.  Despite expending over

$218,000 in time—at their hourly billing rates—on the Lawsuit, Class Counsel is seeking only

$101,000 in attorneys' fees.  Accordingly, the requested attorneys' fees for Class Counsel

amount to less than half of their lodestar.  *See In re Janney Montgomery Scott LLC Fin.*

*Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, at *49 (finding that where the requested fee by

the percentage method was a fraction of the lodestar, it "clearly confirm[ed] the reasonableness

of the fee award").  For these reasons, the Attorneys' Fees should receive final approval by the

Court.

        **D.**      **Final Approval Is in the Best Interests of the Debtors' Estates**

        48.    The Settlement Agreement resolves a complex class action lawsuit and

avoids potentially costly class action litigation.  The Settlement Class benefits from the

settlement as individual lawsuits would be cost prohibitive and impractical for each class

member, especially considering the time bar against untimely filed claims in the Debtors'

22

bankruptcy cases, and the cash settlement provides a sum certain distribution on qualified claims. The Settlement Agreement was achieved through a good faith, arms'-length negotiation and meets all the requirements for final approval of a fair, reasonable and adequate class action settlement pursuant to Rule 23 and Bankruptcy Rule 9019.  The Total Gross Amount of the Settlement Agreement, and all payments and distributions derived therefrom, are fair and reasonable given the nature of the disputed claims and the pool of claimants, and provide a reasonable outcome for all parties involved in the settlement.

49.     The Debtors submit for all these reasons that ample justification exists for final approval of the Settlement Agreement.

## NO PRIOR REQUEST

50.     No prior request for the final approval of the Settlement Agreement and the related relief sought by this Motion has been made to this or to any other Court.

## NOTICE

51.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Class Counsel; (vi) counsel to the Delivery Defendants; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request this Court enter an Order, in substantially the form attached hereto as Exhibit A, (i) approving the Settlement Agreement on a final basis; (ii) reaffirming class certification, class representatives and class counsel appointments, and noticing procedures; and (iii) granting other related relief this Court may deem just and proper.

Dated: Wilmington, Delaware
       January 25, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Candice L. Kline
Michael T. Gustafson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

SEYFARTH SHAW LLP
Edward Cerasia II
Aaron Warshaw
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Telephone: (212) 218-5000

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION