## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: February 15, 2012 at 10:00 a.m. ET**<br>**Objection Deadline: February 8, 2011 at 4:00 p.m. ET** |

## MOTION OF DEBTORS FOR AN ORDER PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 9019(a) AND 6004(h) AUTHORIZING TRIBUNE BROADCASTING COMPANY TO ENTER INTO A LICENSE AGREEMENT WITH LOCAL TV, LLC

Debtor Tribune Broadcasting Company ("Tribune Broadcasting"), one of the

debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and

collectively, the "Debtors"), hereby submits this motion (the "Motion") for entry of an order

authorizing Tribune Broadcasting to enter into that certain License Agreement dated January 25,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2012, by and between Tribune Broadcasting and Local TV, LLC ("Local TV"), a copy of which is attached hereto as Exhibit A,[2] pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9019(a) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of the Motion, Tribune Broadcasting relies on the declaration of Nils Larsen, President and Chief Executive Officer of Tribune Broadcasting (the "Larsen Declaration"), attached hereto as Exhibit B.  In further support of the Motion, Tribune Broadcasting respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors comprise 111 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  (Docket Nos. 43, 2333).

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]  The License Agreement attached as Exhibit A contains proprietary, confidential, and commercially and competitively sensitive information of Tribune Broadcasting, including trade secrets.  A motion to file the License Agreement under seal is being filed contemporaneously with this Motion.  Pursuant to confidentiality agreements, the Debtors disclosed the terms of the License Agreement to counsel for the Committee (as defined below) and counsel for the Debtors' senior lenders prior to the filing of this Motion.

[3]  Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the "Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are section 363(b) of the Bankruptcy Code and Rules 9019(a) and 6004(h) of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

6.      Tribune is America's largest employee-owned media company and is the ultimate parent company of each of the other Debtors.  It reaches more than 80% of U.S. households through its newspapers and other publications, its television and radio broadcast stations and cable channels, and its other entertainment offerings.  The Debtors' operations are conducted through two primary business segments: (i) Publishing and (ii) Broadcasting.  Tribune Broadcasting is an indirect subsidiary of Tribune and is in turn the parent company of each of the entities that comprise the Broadcasting segment.

7.      The Broadcasting segment includes 23 television stations in 19 markets, including seven stations in the top 10 U.S. markets and the Chicago area's first and only 24-hour cable news channel, CLTV.  It also operates the cable "Superstation" WGN America and Chicago radio station WGN-AM.

8.      Local TV was founded in 2006 and owns 18 television stations in the United States.  Tribune Broadcasting (or its subsidiaries or parent) is a party to several agreements with Local TV or its affiliates that benefit Tribune Broadcasting's operations.  See Larsen Declaration at ¶ 4.  For example, pursuant to local marketing agreements ("LMA"s) between subsidiaries of Local TV and Tribune Broadcasting, Local TV provides programming

and related operational and programming services to two television stations that are owned by the Debtors: (i) KWGN-TV in Denver, Colorado; and (ii) KPLR-TV in St. Louis, Missouri.[4]  See id.  The LMAs enable the KWGN and KPLR stations to integrate operating facilities, production of local news, and certain programming functions.  This integration of facilities, use of combined news operations, and realization of certain programming efficiencies significantly reduces the Debtors' costs of operating these stations, streamlines operations, and enables the Debtors to deliver a better and higher-quality product to their customers and viewers.  Id.  In addition, pursuant to a Management Services Agreement between the companies, Tribune and certain of its subsidiaries, including Tribune Broadcasting, also provide certain management services to Local TV's television stations, including systems development.  Id.

      9.      Tribune Broadcasting has developed certain broadcasting systems and software, which are described in greater detail in the License Agreement (collectively, the "System").  See Larsen Declaration at ¶ 5.  Generally, the System is used or is intended to be used in the day-to-day operations of broadcast stations operated by Tribune Broadcasting.  Id. at ¶ 6.  Local TV reimbursed Tribune Broadcasting for approximately half of the development costs associated with the System and seeks to utilize the System in the operation of certain of its broadcast stations.  Id.  Because of Local TV's reimbursement of development costs associated with the System, Tribune Broadcasting and Local TV have engaged in negotiations regarding granting Local TV a license to the System and associated intellectual property rights in the System (the "System IP Rights").  Id.

      10.     As a result of those negotiations, Tribune Broadcasting and Local TV drafted and executed the License Agreement.  See Larsen Declaration at ¶ 7.  While the terms of

---

[4] For detailed descriptions of the KPLR and KWGN LMAs, see Docket Nos. 129 and 246.

the License Agreement are confidential, in general, the salient terms of the License Agreement are as follows:[5] (a) Tribune Broadcasting grants to Local TV and its affiliates a non-exclusive license to the System and to the System IP Rights; (b) exercise of the Licensed Rights by Local TV and its affiliates is restricted, and neither Local TV nor its affiliates have the right to transfer or assign the System or the licensed System IP Rights to any third party, except in connection with an enumerated list of transactions; (c) Tribune Broadcasting is the sole and exclusive owner of the System and System IP Rights; (d) Tribune Broadcasting, in its discretion, has the sole and exclusive right to commercialize the System and System IP Rights to third parties; and (e) the License Agreement is conditioned on Bankruptcy Court approval.  In addition to the foregoing, the parties have also agreed to certain other commercial terms, covenants, indemnification provisions, termination procedures, disclaimers, and confidentiality provisions.

11.    Tribune Broadcasting and Local TV have consensually negotiated the License Agreement.  To the extent there is a dispute between the parties, the parties agree to compromise their position as reflected in the License Agreement submitted herewith. Accordingly, out of an abundance of caution, Tribune Broadcasting seeks to obtain authorization, pursuant to Rule 9019, to enter into the License Agreement, to the extent it represents a compromise of estate claims related to the System and the System IP Rights.

## RELIEF REQUESTED

12.    By this Motion, Tribune Broadcasting seeks entry of an order authorizing it to enter into the License Agreement on the terms set forth therein, pursuant to section 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.  Tribune Broadcasting further

---

[5] The following summary of various terms of the License Agreement is provided for informational purposes. Nothing contained in this Motion is intended to alter any provision of the License Agreement.  In the event of a discrepancy between the description of the License Agreement in this Motion and its actual terms as reflected in the License Agreement, the terms of the License Agreement shall control.

requests a waiver of the fourteen-day stay provided for in Bankruptcy Rule 6004(h) so that the

License Agreement may become effective as soon as practicable after the entry of the order.

## BASIS FOR RELIEF REQUESTED

13.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1).  Courts generally apply the "business judgment"

standard in determining whether to approve a proposed transaction under section 363 of the

Bankruptcy Code.  See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996)

(under normal circumstances, courts defer to the debtor's judgment concerning the proposed use

of estate property under section 363(b) when there is a legitimate business justification); In re

Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co.,

124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business

judgment" standard for transactions under section 363).

14.    Under the business judgment standard, the debtor has the initial burden of

establishing that a valid business purpose exists for the use of estate property in a manner outside

of the debtor's ordinary course of business.  See Lionel, 722 F.2d at 1071.  Once the debtor

articulates a valid business justification for the proposed transaction, courts will generally

presume that the decision was made "on an informed basis, in good faith and in the honest belief

that the action was in the best interests of the company." In re Integrated Resources, Inc., 147

B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

15.    Thus, after the debtor satisfies its initial burden of establishing a valid

business justification, the business judgment rule shields the debtor's management from judicial

second-guessing and mandates that a court approve a debtor's business decision unless the

decision is a product of bad faith or constitutes a gross abuse of discretion.  See, e.g., In re

Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville

Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."). To impose more

exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and

undermining the "Bankruptcy Code's provisions for private control" of the estate's

administration. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir.

1986).

        16.    Courts typically consider the following four factors in determining

whether a proposed use, sale, or lease of estate property should be approved under section 363:

(i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and

reasonable consideration is provided; (iii) whether the transaction has been proposed and

negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. See In re

Delaware & Hudson Ry. Co., 124 B.R. at 176. The License Agreement proposed herein satisfies

each of these factors.

        17.    There are significant business justifications for Tribune Broadcasting to

enter into the License Agreement with Local TV on the terms set forth therein. Both Tribune

Broadcasting and Local TV desired to clarify their respective rights and obligations with respect

to the System and System IP Rights by formalizing them under a comprehensive licensing

arrangement. See Larsen Declaration at ¶ 7. The License Agreement is the product of good

faith, arms'-length negotiations among the parties that occurred over many months, in

furtherance of this objective. Id. Tribune Broadcasting has negotiated successfully with Local

TV, a party that paid for approximately half of the development costs associated with the

System, a License Agreement that provides a non-exclusive license in exchange for provisions conclusively resolving any questions with respect to Local TV's rights to use the System and System IP Rights and clarifying that, as between Local TV and Tribune Broadcasting, only Tribune Broadcasting, in its sole and absolute discretion, can commercially exploit or license the System and System IP Rights to third parties. See id. Accordingly, the License Agreement provides appropriate clarity allowing Tribune Broadcasting to continue to invest in and innovate with respect to the System and System IP Rights to the financial benefit of Tribune Broadcasting. Id. The consideration is reasonable under the circumstances. Additionally, due and adequate notice of the terms of the License Agreement is being provided to the Debtors' creditors and other parties in interest by way of this Motion, in compliance with section 363 of the Bankruptcy Code and all applicable Bankruptcy Rules and the local rules of this Court.

18.     Tribune Broadcasting also submits that relief from Bankruptcy Rule 6004(h) is appropriate under the circumstances. Bankruptcy Rule 6004(h) provides that an "order authorizing the use . . . of property . . . is stayed until expiration of 14 days after entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(h). The License Agreement, in turn, provides that the effectiveness of the License Agreement is conditioned on and strictly subject to a final order of this Court approving Tribune Broadcasting's entry into the License Agreement. Tribune Broadcasting has been in negotiations with Local TV for many months and has finally come to a consensual agreement on the terms of the License Agreement. Absent a waiver, Tribune Broadcasting will not be able to consummate the terms of the License Agreement, and risks losing—to the detriment of its estate—the opportunity to conclusively resolve Local TV's rights and obligations with respect to use of the System and licensed System IP Rights and to clarify, among other things, that Tribune Broadcasting controls, in its sole and

absolute discretion, commercial exploitation of the System fully and finally without further delay or costs.

## NOTICE

19.    Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agent for the Debtors' post-petition lenders; (iv) counsel to the administrative agents for Tribune Company's prepetition lenders; (v) counsel to Local TV; and (vi) all parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit no further notice need be given.

WHEREFORE, Tribune Broadcasting respectfully requests that the Court enter an order authorizing Tribune Broadcasting to enter into the License Agreement with Local TV and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
   January 25, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION