IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>, | Case No. 08-13141 (KJC), *et seq* |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date: February 2, 2012 at 2:30 p.m.** |
|  | **Ref. No. 10594, 10634, and 10635** |

### OBJECTION OF TM RETIREES TO MOTION TO LIFT THE STAY
### WITH RESPECT TO STATE LAW CONSTRUCTIVE FRAUD ACTIONS

Teitelbaum & Baskin, LLP and Hiller & Arban, LLC, as attorneys for approximately 200 former employees and/or directors (and beneficiaries of such former employees and/or directors) (the "**TM Retirees**")[1] of The Times Mirror Company ("**Times Mirror**"), who were receiving or entitled to receive payments under certain non-qualified retirement plans of one or more of the Debtors, for their objection to the motion (the "**Motion**") filed by Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee, Law Debenture Trust Company of New York and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes (collectively, the "**Movants**" and/or the "**Noteholder Plaintiffs**"), to vacate the stay imposed by order of this Court dated April 25, 2011 (the "**April**

---

[1] Among the TM Retirees supporting this statement is William Niese, a member of the Official Committee of Unsecured Creditors (the "**Committee**"). Teitelbaum & Baskin also represents Mr. Niese in his role as a member of the Committee and as plaintiff in various state law constructive fraud claim actions commenced pursuant to this Court's Order of April 25, 2011. This pleading is filed on behalf of the TM Retirees, including Mr. Niese, in their capacity as creditors and parties in interest and not in any manner as a representative of the Committee. The positions taken herein do not necessarily reflect the position of the Committee, and the Committee has not been consulted in connection with this pleading.

**25 Order**") with respect to the prosecution of state law constructive fraudulent conveyance actions ("**SLCFC Actions**") commenced pursuant to the April 25 Order, respectfully state:

**Argument**

1.       The Motion is another example of the divisiveness of this Bankruptcy Case.  After three years of contentious litigation, the next five or six months promise more of the same as this Court is asked to consider the Third Amended Joint Plan of Reorganization filed by the DCL Plan Proponents (the "**Third Amended Plan**").

2.       During this next round of litigation, the Noteholders, PHONES and EGI – TRB appear intent on litigating, among other issues, alleged unfair discrimination as it pertains to the ability of general unsecured creditors of the Tribune Company parent, including the TM Retirees, to share distributions under the Third Amended Plan.

3.       On top of this multi party complex, scorched earth litigation undertaken by well funded financial institutions and investors (most of whom purchased their claims for pennies on the dollar), the Movants, for their own tactical reasons and without regard for the impact upon the Bankruptcy Case and parties such as the TM Retirees, are bent on adding complexity, cost and possible delay to the Bankruptcy Case by contemporaneously seeking leave to proceed with the SLCFC Actions.

4.       Contrary to the claims in the Motion, the October 31, 2011 Opinion on Confirmation, issued by this Court (the "**Confirmation Opinion**") did not pave the way to lift the stay imposed by the April 25 Order.  The Motion mischaracterizes the purpose of the April 25 Order by claiming that the only reason for the imposition of the stay was for the determination of issues regarding standing, preemption and the applicability of Bankruptcy Code 546(e).  While it is correct that these issues were expressly reserved under the April 25 Order and addressed in the Confirmation Opinion at p. 98 - - to the extent that this Court has determined that it is appropriate to allow the trial courts to determine the issues-- it is not correct that there is no longer any need for the stay.  It is submitted that the fundamental purpose of the April 25

- 2 -

Order was not only to permit the commencement of the SLCFC Actions prior to the expiration of the applicable statute of limitations, but also to prevent the commencement of such actions from interfering in any manner with the confirmation process and these Bankruptcy Cases.

5.    The TM Retirees, most of whom are plaintiffs in the SLCFC Actions, oppose the Motion. For over three years the TM Retirees have been without their retirement benefits and have been funding legal fees out of their savings to try to preserve the minimal recovery for their retirement provided for under the Third Amended Plan.  The TM Retirees support the Third Amended Plan, including the proposed settlement dated May 18, 2010 between the TM Retirees and the Debtors (annexed to the DCL Plan (Dkt. No. 7136, filed December 2010, as amended from time to time) as Exhibit 5.15.4, as well as to the prior plans filed by the Debtors (Dkt. Nos.  4008, filed April 12, 2010; 4690, filed June 4, 2010; 4693, filed June 5 2010)) (the "**Retiree Settlement**"), which this Court considered in its Confirmation Opinion and found:

> "The Retiree Settlement is an important piece of the reorganization. In light of the settlement, I am satisfied that the release of the Retiree Claims is proper."

(Confirmation Opinion at p. 93).

6.    The TM Retirees submit that the stay is as important today as it was on April 25, 2011.  All efforts should be directed at addressing the issues for confirmation of the Third Amended Plan. Everything else is an unnecessary distraction.

7.    Judge Holwell, United States District Court Judge for the Southern District of New York, designated to preside over the MDL Proceeding (as defined below) which now includes the Retiree Actions (as defined below), apparently agrees.  On December 28, 2011, Judge Holwell issued an order staying the MDL Proceeding pending further order of this Court.

8.    The TM Retirees have not waivered or tried to renegotiate the Retiree Settlement. The critical issue for the TM Retirees, who had their retirement benefits cut off more than three years ago and have struggled to meet daily living expenses, is to obtain the benefits of

the Third Amended Plan as quickly as possible.

9.     The TM Retirees submit that granting the Motion will further complicate and delay the confirmation process and will present a significant economic and practical hardship on parties, such as the TM Retirees, who would be forced to litigate on multiple fronts without any resolution of their claims in the Bankruptcy Cases and to wait even longer before seeing the small distribution on their retirement savings.

10.     The TM Retirees object to the Motion, support maintaining the stay, and suggest that the Court establish a holding date for 90-120 days in the future to determine whether facts or circumstances have materially changed to merit lifting the stay.

## Background Facts

11.     The TM Retirees have asserted claims of approximately $113.6 million against Tribune Company based upon vested interests primarily under four non-qualified plans referred to as the Deferred Compensation Plan, the Excess Pension Plan, the Supplemental Executive Retirement Plan and the Supplemental 401(k) Plan (collectively, the "**Plans**"), as well as various individualized retirement agreements ("**Supplemental Agreements**"). Each of these Plans and Supplemental Agreements constitute obligations to pay deferred compensation to the TM Retirees for services rendered to Times Mirror and/or Tribune Company, which obligations were either expressly assumed by Tribune Company pursuant to the March 13, 2000 Agreement and Plan of Merger between Tribune Company and The Times Mirror Company, or directly provided by Tribune Company.[2]

---

[2] Approximately 185 of the TM Retirees have claims against the Tribune Company parent, which were filed in the aggregate amount of approximately $108.4 million under one or more of the above described deferred compensation plans. These are the only claims potentially implicated by the various motions as the remaining claims for 17 TM Retirees in the aggregate amount of approximately $5.2 million are asserted against one or more of the Debtor's operating entities and are to be paid in full under the Third Amended Plan. It is noted that these figures include approximately six additional TM Retirees who were not included in the original Retiree Settlement, but who have been added after review with the Debtors to ensure that their claims were being calculated in the manner required by the Retiree Settlement.

12.     The Retiree Settlement originally provided for three simple components. First, a compromise as to the amount of TM Retiree claims based upon, among other things, a review of the factual predicates for the claims, compromises as to interest rates and mortality tables and an agreed upon computation metric, pursuant to which the allowed claims were reduced by approximately 9% from $113.6 Million to approximately $104.6 Million (subject to adjustment for arithmetic issues).  Second, payment of cash to the TM Retirees of approximately 35% of their allowed claims as set forth in the Debtors' Plan of Reorganization filed on April 12, 2010 (Dkt. No. 4008), as may be amended from time to time, ***provided that such amendments are consistent with the treatment set forth in the April 12, 2010 plan, including the payment of approximately 35% of the allowed TM Retiree Claims***.  Third, releases, by the Debtors of all claims against the TM Retirees.  (Retiree Settlement ¶¶ 3, 6, 7 and 8).

13.     Pursuant to the authority granted by this Court in the April 25 Order, on June 2, 2011, approximately 187 of the TM Retirees, (the "**TM Retiree Plaintiffs**"), commenced four related and substantially identical actions, now pending in the United States District Court for the Southern District of New York pursuant to various transfer orders described below.  The four actions commenced by the TM Retiree Plaintiffs are identified as :

- *William A. Niese et al. vs. Chandler Trust No. 1 et al.* – Case No. 11-CV-7577 (PSG) (PLAx)(originally filed in California Superior Court, Los Angeles County and removed to the Central District of California on September 14, 2011 (the "**California Retiree Action**");

- *William A. Niese et al. vs. AllianceBernstein, L.P. et al.* – Case No. 11-CV-4538-RJH (originally filed in New York State Supreme Court, New York County and removed to the Southern District of New York on July 1,  2011) (the "**New York Retiree Action**");

- *William A. Niese et al. vs. A.G. Edwards Inc. et al.* – Case No. 11-CV-00583-GMS (originally filed in Delaware Superior Court, New Castle County and removed to the District of Delaware on July 1, 2011) (the "**Delaware Retiree Action**"); and

- *William A. Niese et al. v. ABN AMRO Clearing Chicago LLC. et al.* – Case No. 11-CV-05155-JHL (originally filed in Illinois Circuit Court of Cook County and removed to the Northern District of Illinois on July 28, 2011) (the "**Illinois Retiree Action**", and together with the New York Retiree Action, the Delaware Retiree Action, and the California Retiree Action the "**Retiree Actions**").

14.     Prior to the transfer of the Retiree Actions to the Southern District of New York in connection with the MDL Proceedings, the TM Retiree Plaintiffs had obtained stays in three of the Retiree Actions (Order of the California District Court on November 22, 2011; Order of the New York District Court on October 25, 2011; and Order of the Illinois District Court on November 1, 2011).[3]   In addition, in accordance with the April 25 Order, the TM Retiree Plaintiffs have entered into numerous stipulations with parties in each of the Retiree Actions to extend *sine die* the time for such parties to respond to the complaints filed by the TM Retiree Plaintiffs.

15.     The Motion identifies the SLCFC Actions commenced by the Movants (the "**Noteholder Actions**").

16.     As this Court is aware, each of the Retiree Actions and the Noteholder Actions arise from the identical transaction, the LBO, and seek recovery based upon the same legal predicate- - avoidance of constructively fraudulent transfers, pursuant to state law on the grounds that the transfers for the purchase or redemption of Tribune Company common stock

---

[3] A motion was filed with the Delaware District Court on October 10, 2011, but was *sub judice*, at the time of the transfer.

rendered Tribune Company insolvent or with unreasonably small capital and that such transfers for the purchase or redemption of Tribune Company's own common stock were not for reasonably equivalent value.

17.    On or around August 16, 2011, the Noteholder Plaintiffs filed a motion (the "**MDL Motion**") with the United States Judicial Panel on Multidistrict Litigation (the "**JPML**") to transfer their 44 related Noteholder Actions to the Southern District of New York for consolidated pretrial proceedings pursuant to 28 U.S.C. §1407.  On September 14, 2011, the TM Retiree Plaintiffs filed an Interested Party Response in support of the MDL Motion, seeking to have the Retiree Actions consolidated with the Noteholder Actions and transferred to the Southern District of New York, as "tag-along" actions pursuant to 28 U.S.C. §1407.  A hearing on the MDL motion was held before the JPML on December 1, 2011 in Savannah, Georgia, during which the TM Retiree Plaintiffs' counsel, Jay Teitelbaum, appeared and presented oral argument in favor of the consolidation and in support of the Retiree Actions being included as "tag-along" actions pursuant to Rule 7.1 of the Rules of Procedure of the JPML under 28 U.S.C. § 1407.

18.    Pursuant to that certain Transfer Order entered on December 19, 2011, the JPML transferred each of the related Noteholder Actions, to the United States District Court for the Southern District of New York in the proceeding, *In re Tribune Fraudulent Conveyance Litigation* – MDL No. 2296 (Holwell, J.) (the "**MDL Proceeding**") for coordinated and consolidated pre-trial proceedings.

19.    Pursuant to that certain Tag-Along Transfer Order, the Retiree Actions, among others, were transferred to the United States District Court for the Southern District of New York, Holwell, J., for the reasons stated in the Transfer Order.

20.    By Order dated December 28, 2011, Judge Holwell recognized that the MDL Proceeding relates to these Bankruptcy Cases and stayed the MDL Proceeding pending further order of this Court.

**WHEREFORE,** the TM Retirees request that the Court (i) deny or defer the Motion; (ii) establish a holding date 90-120 days in the future to determine whether facts or circumstances support granting the relief requested in the Motion; and (iii) grant such other and further relief as may be appropriate.

Dated: January 26, 2012
      Wilmington, Delaware

Respectfully submitted,

HILLER & ARBAN, LLC

 **/s/ Brian Arban**
Adam Hiller (DE No. 4105)
Brian Arban (DE No. 4511)
1500 North French Street, 2nd Floor
Wilmington, Delaware 19801
(302) 442-7676 telephone
barban@hillerarban.com

-and-

Jay Teitelbaum, Esq. (JT-4619)
TEITELBAUM & BASKIN, LLP
1 Barker Avenue
Third Floor
White Plains, New York 10601
(914) 437-7670
jteitelbaum@tblawl1p.com

*Attorneys for the TM Retirees*