## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | Chapter 11 |
| In re | ) | |
| | ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Hearing Date: February 2, 2012 at 2:30 p.m.** |
| | ) | **Related ECF No. 10635** |
| | ) | |

**OBJECTION OF AURELIUS CAPITAL MANAGEMENT LP, LAW DEBENTURE
TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY
AMERICAS TO THIRD MOTION OF THE OFFICIAL
<u>COMMITTEE OF UNSECURED CREDITORS TO EXTEND STAY</u>**

1.      Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), and Aurelius Capital Management, LP, on behalf of itself and its managed entities ("Aurelius" and, together with DBTCA and Law Debenture, the "Objectors"), by and through their undersigned counsel, respectfully submit this objection to the January 17, 2012 motion (the "UCC Stay Motion") of the Official Committee of Unsecured Creditors (the "Committee") to extend the stay of the adversary proceeding entitled *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. Dennin J. FitzSimons, et al.,* Adv. Proc. 10-54010 ("*FitzSimons*") provided in this Court's December 13, 2011 Order [D.I. 10429], from January 17, 2012 through and including March 19, 2012.[1]

2.      The Objectors do not oppose that portion of the UCC Stay Motion seeking to extend the stay of litigation of the *The Official Committee of Unsecured Creditors, et. al v. JPMorgan Chase Bank, N.A. et al.,* Adv. Proc. 10-53963 ("*JPMorgan*"),[2] nor do the Objectors object to a limited extension of the stay of *FitzSimons* pending its imminent transfer to the Southern District of New York for coordination or consolidation with *In re Tribune Company Fraudulent Conveyance Litigation* D.N. 11-MD-2296 (the "MDL"). However, the Objectors do oppose the Committee's request that this Court enter a stay that will persist even after *FitzSimons* has been transferred to the MDL, and after this Court has been divested of jurisdiction over that litigation. As discussed below, the MDL court already has entered a stay of its own that would by its terms be applicable to *FitzSimons* upon its transfer, and the judge

---

[1] The December 13, 2011 Order of this Court extended stays previously granted by this Court on March 21, 2010, October 27, 2010, November 29, 2010, June 16, 2011 and November 22, 2011.

[2] With one exception: The *JPMorgan* adversary proceeding contains claims against certain defendants that are not encompassed by the DCL Settlement and would not be released by the Third Amended Plan; these claims should not be stayed until July 2, 2012 but instead should be stayed for no longer than the *FitzSimons* action.

{00597452;v1}

presiding over the MDL should be the sole arbiter of scheduling matters concerning all cases consolidated before him.

## PRELIMINARY STATEMENT

3.      The Committee's bid to extend the stay of *FitzSimons* even after it is transferred to the MDL court for coordinated or consolidated pretrial proceedings before Judge Richard Holwell is wholly unnecessary, would improperly interfere with Judge Holwell's role as presiding judge in the MDL, and should be denied.    There is no dispute that the *FitzSimons* adversary proceeding should, and will, be transferred to the MDL.    The Judicial Panel on Multi-District Litigation ("JPML") entered an order dated December 28, 2011 transferring *FitzSimons* to the MDL, subject only to the parties' right to object.    In papers filed with the JPML on January 19, 2012 (copy annexed hereto as Exhibit A), the Committee explicitly supported consolidation of *FitzSimons* with the other related Tribune LBO cases, and asked only that such transfer be "deferred" until the Bankruptcy Court determines the instant motion to extend the stay of *FitzSimons* through and including March 19, 2012.    Since no party has objected to consolidation, transfer is imminent, and the UCC Stay Motion should be denied.

4.      By design, the Committee's proposed extension of the stay would endure even after transfer of *FitzSimons* to Judge Holwell – an event that is now inevitable – and would represent an improper and unnecessary intrusion on the prerogatives of the MDL transferee court.    Indeed, the Objectors are aware of no case where a transferor court entered relief of the type sought by the Committee here in the face of conditional transfer order where consolidation is *uncontested*, and the Committee has offered no coherent basis for granting such relief.    The Committee asserts conclusorily that this Court must dictate the length of the *FitzSimons* stay to Judge Holwell to avoid disruption of the upcoming confirmation process in the Bankruptcy

3

{00597452;v1}

Court, but does not explain *how* Judge Holwell's management of his own docket could possibly conflict with the confirmation process. In fact, Judge Holwell already has entered a comprehensive stay of his own in the MDL that will apply equally to *FitzSimons* upon transfer. Moreover, even were that stay not in place, commencement of substantive litigation activities in the MDL within sixty days – the length of the extension sought by the Committee – would be unlikely in the extreme. In short, the MDL presents no danger of interfering with confirmation proceedings whatever.

5.      In contrast, the order sought by the Committee undoubtedly would interfere with Judge Holwell's management of the MDL, and is directly contrary to this Court's clear statement at the July 15, 2011 hearing and elsewhere that it does not wish to "micromanage litigation that's occurring in other courts." July 15, 2011 Hr'g Tr. at 6 (relevant excerpt attached hereto as Exhibit B). Indeed, since Judge Holwell already has stayed the MDL, the only conceivable purpose for the Committee's motion is to substitute this Court's judgment for Judge Holwell's regarding post-transfer scheduling of *FitzSimons*.

6.      Not only would such interference be contrary to the goals of consolidation, it could lead to confusion and disorder in the MDL court, especially after the stay sought by the Committee expires. Based on concerns of comity, Judge Holwell would be unlikely to ignore or unilaterally overrule this Court's stay, and when the time came to decide whether it should be extended, Judge Holwell would be left to guess at all of the factors that may have led this Court to impose the stay in the first place, the degree to which those factors may persist (or not), and whether this Court somehow wishes to remain actively involved in scheduling *FitzSimons* even after its jurisdiction has been divested by transfer. It can safely be predicted that different parties to the MDL would offer to Judge Holwell differing interpretations of this Court's

4

intentions with respect to *FitzSimons* were it to enter the stay requested by the Committee, which could only lead to further disruption of the MDL proceedings.   The Objectors respectfully submit that these perils can and should be avoided simply by denying the Committee's motion, and instead relying on Judge Holwell's reasoned discretion to manage *FitzSimons* and all of the other cases consolidated before him in a just and sensible manner.

## BACKGROUND

7.       The claims asserted in the LBO related litigation arise out of the ill-fated leveraged buy-out (the "LBO") that was consummated by Tribune Company ("Tribune") in 2007.   In connection with the LBO, Tribune shareholders received approximately $8.3 billion in cash in exchange for their shares of common stock in Tribune.

8.       On December 8, 2008, Tribune and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.   An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC), commenced a voluntary chapter 11 case on October 12, 2009.

9.       In paragraphs 3 through 6 of the UCC Stay Motion, the Committee describes this Court's (i) grant of standing to the Committee to file the *FitzSimons* and *JPMorgan* adversary proceedings, (ii) original stay of those proceedings, and (iii) extensions of those stays by orders dated between March 21, 2010 and December 13, 2011.   Those paragraphs of the UCC Stay Motion are incorporated herein by reference.

10.      By order dated April 25, 2011,[3] the Court, among other things, ordered that the commencement of actions alleging state law constructive fraudulent conveyance claims to recover stock redemption payments made to step one shareholders and step two shareholders (the

---

[3] D. I. 8740.

{00597452;v1}

"SLCFC Actions") was not barred by the automatic stay applicable to Tribune's chapter 11 case. On June 2 and 3, 2011, the indenture trustees for the Senior and PHONES notes (the "Trustees") commenced the SLCFC Actions by filing complaints in three state courts—New York, Delaware and California -- and twenty federal district courts across the country including Arizona, California, Colorado, Connecticut, the District of Columbia, Florida, Illinois, Indiana, Massachusetts, Maryland, Minnesota, North Carolina, New Jersey, Ohio, Pennsylvania, Texas, Virginia, Vermont, Washington and Wisconsin.   Thereafter, in accordance with the April 25 Order, the Trustees moved to stay the SLCFC Actions pending further order lifting the stays, and successfully obtained such stays in nearly all of the SLCFC Actions.[4]   The Trustees subsequently filed additional (or re-filed) SLCFC Actions in Colorado, Texas and New York district courts. Various defendants removed to federal court all of the SLCFC Actions that were originally filed by the Trustees in state court, save one.[5]

11.    Consistent with this Court's June 28, 2011 order,[6] the Trustees filed a petition (the "MDL Motion") with the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"), pursuant to 28 U.S.C. § 1407, seeking to transfer the SLCFC Actions pending in district courts outside of New York to the Honorable Richard J. Holwell in the United Stated District Court for the Southern District of New York (the "SDNY") (the Trustees' New York SLCFC Actions were already pending before Judge Holwell).[7]

12.    On December 19, 2011, the MDL Panel granted the MDL Motion, ordering the SLCFC Actions pending in federal courts outside of New York as of the date of the MDL

---

[4] The April 25 Order did not stay, *inter alia*, motions to amend.   In certain of the SLCFC Actions, Plaintiffs to the SLCFC Actions filed, or sought to file, first, second and/or third amended complaints.

[5] The SLCFC Action filed in California state court (the "California Action") was not removed and remains pending in state court.

[6] D.I. 9380.

[7] Plaintiffs' Motion for Transfer for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, *In re Tribune Fraudulent Conveyance Litigation*, MDL No. 2296 (Aug. 16, 2011) (No. 1).

{00597452;v1}

Motion transferred to Judge Holwell in the SDNY.    Transfer Order, *In Re Tribune Company Fraudulent Conveyance Litig.*, MDL No. 2296 (Dec. 19, 2011) (No. 947) (copy attached as Exhibit C).    The MDL Panel specifically rejected arguments that consolidation should "await the bankruptcy court's confirmation of Tribune's plan of reorganization," holding that immediate consolidation would "streamline coordination between these 44 actions and the Delaware bankruptcy proceedings."    *Id.*

13.    Shortly thereafter, on December 28, 2011, the MDL Panel *sua sponte* ordered the *FitzSimons* adversary proceeding transferred to the SDNY pursuant to MDL Rule 7.1 "for the reasons stated in the [JPML] order of December 19, 2011, and, with the consent of" the SDNY. Conditional Transfer Order (copy attached as Exhibit D).    Seven days later, the Committee filed a placeholder notice of objection to the transfer of *FitzSimons* to the SDNY.    MDL ECF No. 959 (copy attached as Exhibit E).[8]    Pursuant to MDL Rule 7.4(d), the Committee was then required to move to vacate the conditional transfer order by January 19, 2012, or the *FitzSimons* adversary proceeding would be subject be transfer to the SDNY.

14.    The Committee did not oppose transfer of *FitzSimons* by the relevant deadline, or ever.    While the Committee filed a document styled as a "Limited Motion to Vacate or Modify Conditional Transfer Order," the Committee asked only that "transfer of *FitzSimons* to the Tribune MDL *be deferred*" until after this Court determines the instant motion.    MDL ECF No. 969, at 1 (emphasis added) (copy attached as Exhibit F).    Indeed, in its submission to the JPML the Committee stated flatly that it "does not oppose transfer of *FitzSimons* to the Tribune MDL," and believes that such transfer will "serve the values of judicial economy, avoid inconsistent rulings, and preserve the parties' resources."    *Id.* at 5.    In short, there is no dispute that the

---

[8] Two other entities filed preliminary notices of objection to the transfer order, MDL ECF No. 959, but subsequently filed formal withdrawals of their respective objections.    MDL ECF No. 967.

{00597452;v1}

*FitzSimons* adversary proceeding both should, and will, be transferred for coordinated or consolidated pretrial proceedings before Judge Holwell.

15.     On December 28, 2011, Judge Holwell issued an order staying all of the Tribune-related cases consolidated before him pending further order of the SDNY or this Court (the "Master Stay Order," copy attached hereto as Exhibit G).   Judge Holwell's Master Stay Order specifically applies to "these consolidated cases, *as well as any future cases consolidated under this docket number.*"   Hence, the Master Stay Order will automatically apply to the *FitzSimons* adversary proceeding as soon as its transfer to the SDNY is complete.   Judge Holwell's stay order provides that

> The times stayed include, but are not limited to, any deadline for a
> defendant to respond to a complaint or to commence motion
> practice, and any period for objection or reply to a filed motion.

16.     The Objectors have no quarrel with this Court extending the stay of *FitzSimons* until such time as *FitzSimons* is transferred to the MDL, but upon such transfer, Judge Holwell should have the unfettered discretion to manage all of the cases consolidated before him, including *FitzSimons*.   The Committee, in contrast, asks this Court to enter an order that would stay the *FitzSimons* adversary proceeding until March 19, 2012 even if *FitzSimons* is transferred to Judge Holwell immediately.   The Committee's motion should be denied as an unnecessary and improper intrusion on the prerogatives of the MDL court.

## ARGUMENT

17.     Despite conceding that the *FitzSimons* adversary proceeding should and will be transferred to Judge Holwell, the Committee now asks this Court to preemptively extend its stay of the *FitzSimons* adversary proceeding, and thus interfere with one of the principle prerogatives of an MDL transferee court:   the power to control its own docket and to "coordinate" the schedules of all transferred cases.   *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab.*

8

{00597452;v1}

*Litig.*, 460 F. 3d 1217, 1331-32 (9th Cir. 2006) ("A district judge charged with the responsibility of 'just and efficient conduct' of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task."); *Matter of Orthopedic Bone Screw Products Liability Litigation*, 79 F.3d 46, 48 (7th Cir. 1996) ("A principal purpose of § 1407 is to allow one judge to take control of complex proceedings. . . ."). The UCC Stay Motion also flies in the face of this Court's unmistakable intention to avoid "interfer[ing] with the prerogative of any other Court, State or Federal," presiding over LBO related fraudulent conveyance claims. June 28, 2011 Hr'g Tr. at 22 (relevant excerpt attached as Exhibit H). The Objectors respectfully submit that *FitzSimons* and all of the other MDL matters should proceed in a manner, and on a schedule, to be determined by Judge Holwell, upon his due consideration of all of the relevant circumstances and positions of the parties.

18.     The Committee's arguments to the contrary are not persuasive. First, the Committee contends that allowing Judge Holwell to manage *FitzSimons* and the other cases transferred to him as he deems appropriate has the potential to disrupt "ongoing confirmation efforts." UCC Stay Motion 7, ¶ 15. However, the Committee nowhere tries to identify *how* the integrity of the confirmation process before this Court could possibly be threatened by the orderly prosecution of the *FitzSimons* adversary proceeding or by Judge Holwell's control of his own docket.

19.     No such threat exists. As noted, Judge Holwell already has entered a stay in the MDL that will apply equally to the *FitzSimons* adversary proceeding when its transfer is complete. Master Stay Order at 1, ¶ 2. Further, the *FitzSimons* adversary proceeding and SLCFC Actions are in the early stages of litigation. The MDL court and parties will have to identify, negotiate and resolve multiple preliminary and procedural issues in order for the cases

9

to move forward.   Such issues may include, among many others, establishing liaison counsel, lead counsel and steering committees for coordination between and among the thousands of named defendants, the Plaintiffs and the Court, addressing procedural motions that were outstanding in transferor courts at the time of transfer and other preliminary motions, establishing notice and service protocols, and considering numerous other thorny logistical and timing matters that will inevitably arise in a proceeding of size and complexity of the Tribune MDL.   While crucial to the orderly management of the MDL, it is simply inconceivable that resolution of such issues could possibly undermine the upcoming confirmation proceedings. Moreover, the Committee will have ample opportunity before Judge Holwell to be fully heard on any concerns it may have or that may arise respecting scheduling.   Finally, the Committee has identified no way in which the confirmation process would be disrupted even in the event that the Tribune MDL proceeds to motion practice on the merits or other substantive litigation.

20.    The Committee's alternative argument, that it needs an additional stay from this Court in order to have "a reasonable opportunity to prepare for active litigation," is even less compelling.   Establishing and controlling the parties' "preparations for active litigation" is the essence of the transferee court's role in managing multi-district litigation, and it would defeat the purpose of 28 U.S.C. § 1407 for a transferor court to enter an order affecting pretrial scheduling that is intended to survive transfer.   Judge Holwell is more than competent to address any requests for additional "preparation" time the Committee may have, and can and should do so in coordination with the other consolidated cases.[9]

---

[9] The Committee's desire to complete service of the *FitzSimons* complaint is likewise irrelevant to its request to extend the stay.   *Compare* UCC Motion ¶ 16.   This Court already has extended the Committee's deadline for completion of service of the complaint pursuant to FRCP 4(m) and 15(c) through and including July 2, 2012 – long after the two month extension requested by the Committee in this motion will have expired – and Judge Holwell will be empowered to extend or otherwise modify that period (as well as the FRCP 4(m) and 15(c) periods applicable in the other transferred cases) as justice may require.

10

{00597452;v1}

21.    Significantly, the relief sought by the Committee in the UCC Stay Motion appears to be unprecedented where, as here, all parties support transfer, and the case is subject to an *uncontested* conditional transfer order.    Nevertheless, the Committee asks the Court to enter an order that is expressly designed to substitute this Court's judgment for Judge Holwell's concerning when and how the *FitzSimons* adversary proceeding should proceed after it is consolidated.    Indeed, since Judge Holwell already has entered a stay of indefinite duration in the MDL case, the only conceivable basis for seeking a further stay from the Bankruptcy Court is to effectively augment the Master Stay Order already entered.    Only Judge Holwell should decide whether his stay order should be augmented or otherwise modified.

22.    Moreover, the Bankruptcy Court order sought by the Committee would leave Judge Holwell in a difficult and awkward position following transfer.    Given the comity judges routinely extend to orders issued by other courts, Judge Holwell would be unlikely to simply disregard or override this Court's order during its original term.    Indeed, Judge Holwell could elect to honor or even continue the order based on a mistaken understanding of the Bankruptcy Court's purpose in entering the order, the factors that led the Bankruptcy Court to enter the order in the first place, and the degree to which those factors continue to prevail (or not).    The transferee court might even conclude erroneously that the Bankruptcy Court desires to remain actively involved in managing *FitzSimons* despite its consolidation with the MDL court, at least for some undefined period of time.    While the Objectors believe the Bankruptcy Court has no such interest, Judge Holwell could be forgiven for being confused based on the unusual and vague language of the order sought by the Committee.

23.    Indeed, at a hearing on June 28, 2011, this Court anticipated precisely the types of concerns at issue here:

{00597452;v1}

> I see as the potentially most awkward part of what may be yet to come and that is any particular Court or Courts viewing either of my orders as [impinging] on their own prerogatives. And I will tell you, it's not my intention to interfere with the prerogative of any other Court, State or Federal, with respect to conduct of litigation before it. I mean, I've said what I've said, and I -- beyond that, in my view, Courts are free to take their own conduct and manage their own dockets.

June 28, 2011 Hr'g Tr. at 22.

24.     While the Court's June 28 comments related to the SLCFC Actions, surely they apply with at least equal force to Judge Holwell's management of *FitzSimons* once it is transferred to his courtroom for consolidation with the SLCFC Actions.    Moreover, the Committee argues that the schedules for all of the SLCFC Actions "should be coordinated with the stay of the *FitzSimons* Action."    *See* UCC Stay Motion at 7, n.3.    Apparently the Committee intends to try to bootstrap any order the Bankruptcy Court may enter regarding *FitzSimons* into an effective stay of all of the other SLCFC Actions before Judge Holwell. While the Objectors believe any such effort by the Committee should and would fail before Judge Holwell, entry of the order sought by the Committee could confuse the issue unnecessarily.    The Objectors submit that the Court can and should eliminate entirely the risk of any unintended influence over the MDL proceedings or other "awkwardness" by simply denying the Committee's motion, and relying on Judge Holwell's ability to manage the MDL cases without the overhang of an intrusive and ambiguous order from this Court.

12

{00597452;v1}

## CONCLUSION

For all the foregoing reasons, the Objectors respectfully request that the Court enter an

order denying the UCC Stay Motion and granting such other and further relief as it may deem

just and proper.

Dated: January 26, 2012

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
One Bryant Park
New York, NY    10036
(212) 872-1000


*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.

*/s/ Amanda M. Winfree*
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
Leigh-Anne M. Raport (I.D. No. 5055)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE    19899
(302) 654-1888


McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP

*/s/ James J. Freebery*
James J. Freebery (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*


KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, NY 10019
212-506-1700

BIFFERATO GENTILOTTI LLC

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302- 429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

13

{00597452;v1}