## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) | Case No. 08-13141 (KJC) |
|  | ) | Jointly Administered |
| TRIBUNE COMPANY, *et al.*, | ) |  |
|  | ) | Hearing Date:    February 2, 2012, at 2:30 p.m. |
|  | ) | **Related to ECF Nos. 10594, 10718, 10723,** |
| Debtors. | ) | **10724, 10725, 10726, 10727, 10728, 10729,** |
|  | ) | **10730, 10731, and 10732** |

## REPLY (I) IN FURTHER SUPPORT OF MOTION FOR ORDER LIFTING STAYS OF STATE LAW CONSTRUCTIVE FRAUDULENT CONVEYANCE SUITS AND (II) IN RESPONSE TO THE OBJECTIONS AND RESPONSES OF THE DEBTORS AND VARIOUS OTHER PARTIES TO THE THIRD MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO AMEND DEFINITION OF "TERMINATION EVENT" IN STANDING ORDERS

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800
*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

McCARTER & ENGLISH, LLP
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre, 405 N. King Street
Wilmington, DE 19801
302-984-6300

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
1633 Broadway,
New York, New York 10019
212-506-1700
*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302- 429-1900

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square, New York, NY 10036
212-209-4800
*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for certain series of exchangeable subordinated debentures referred to as the PHONES Notes*

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market St., Suite 1300, Wilmington, DE 19801
302-428-8191

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
Mitchell P. Hurley
One Bryant Park, New York, NY 10036
(212) 872-1000
*Counsel for Aurelius Capital Management, LP*

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899
(302) 654-1888

{00598325;v1}

Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for a certain series of Senior Notes ("DBTCA"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for a certain series of Senior Notes ("Law Debenture"), Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes ("Wilmington Trust"), and Aurelius Capital Management, LP, on behalf of itself and its managed entities ("Aurelius", together with DBTCA, Law Debenture, and Wilmington Trust, the "Movants")[1], by and through their undersigned counsel, hereby file this reply (i) in further support of their Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits (the "Lift Stay Motion"), and (ii) in response to the objections and responses of the Debtors and various other parties to the Third Motion of the Official Committee of Unsecured Creditors to Amend Definition of "Termination Event" in Standing Orders (the "UCC Stay Motion," together with the Lift Stay Motion, the "Motions").[2]

## PRELIMINARY STATEMENT

1.        The time has come for this Court to cede control over the prosecution of the remaining LBO related claims to the courts presiding over those cases.   The SLCFC Actions originally filed in, or removed to, federal courts all have been transferred to the Southern District of New York for coordinated or consolidated pretrial proceedings (the "MDL") before Judge Richard Holwell.[3]   This Court has expressly ruled that alleged defenses to the SLCFC Actions, based on standing, 11 U.S.C. § 546(e), or otherwise, should be determined by the judge(s)

---

[1] Aurelius joined in the Lift Stay Motion filed by DBTCA, Law Debenture and Wilmington Trust on January 26, 2012.   *See* Joinder of Aurelius Capital Management, LP to Motion for Order Lifitng Stays of State Law Constructive Fraudulent Conveyance Suits.   [ECF No. 10722].

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Lift Stay Motion [ECF No. 10594].

[3] Certain of the Movants have also asserted state law fraudulent conveyance claims in an action in the Superior Court of California.   *See Deutsche Bank Trust Co. Americas, et al. v. Cal. Pub. Emps. Ret. Sys.et al.*, No. RG11578761 (Cal. Super. Ct.).   This action was not removed to federal court and remains pending in California state court.

{00598325;v1}

presiding over such cases.    Further, this Court has previously stated that it does not intend to dictate the schedule of the SLCFC Actions or otherwise interfere with the ability of the judge(s) presiding over those cases to manage their dockets.    Accordingly, the stay embodied in the April 25 Order (the "April 25 Stay") no longer is justified and should be lifted, and Judge Holwell should be permitted to manage the cases before him on a schedule and in a manner as he may deem appropriate.

2.    The Lift Stay Motion elicited objections from numerous parties in interest to these chapter 11 cases, but most of those parties merely expressed the concern that scheduling and pretrial preparations for the *FitzSimons* adversary proceeding will be out of sync with the SLCFC Actions and other cases transferred to the MDL if the April 25 Stay is lifted.    Their concern is unfounded.    *FitzSimons* is the subject of an uncontested conditional transfer order, and therefore will be transferred to the MDL Court for coordinated or consolidated pretrial proceedings alongside the SLCFC Actions and the other transferred cases as soon as the Court rules on the UCC Stay Motion.    The stay currently in place in the MDL will apply equally to *FitzSimons* as soon as it is transferred, and Judge Holwell thereafter will determine an appropriate schedule on which the coordinated matters will move forward.    In short, the Movants' request that the Court issue the "further order" allowing the SLCFC Actions to proceed poses no risk of dissonance between such cases and the soon-to-be-transferred *FitzSimons* adversary proceeding.    Indeed, any potential for differing schedules was first presented when the Committee filed its motion seeking a 60-day stay of *FitzSimons* after Movants had filed their Lift Stay Motion seeking to terminate this Court's stay of the SLCFC Actions.

3.    Thus, by (i) granting the Lift Stay Motion, (ii) granting the UCC Stay Motion only to the extent of staying *FitzSimons* until it is transferred, and (iii) expressly disclaiming any

further role in scheduling and pre-trial issues, this Court will ensure precisely the full measure of coordination between all of these actions that the objectors desire.

4.    Additional objections offered by the Debtors and a distinct minority of others to lifting the stay are simply not compelling.    Without noticing a cross-motion, these parties ask the Court to stay the SLCFC Actions and *FitzSimons* indefinitely pending a decision on the confirmability of the Debtors' proposed DCL Plan, claiming incorrectly that the parties and the Court agreed all along that the April 25 Stay was to persist until a plan was confirmed.    The relief sought by these parties flies in the face of the Court's prior statements that it does not intend to "interfere with the prerogative of any other Court, State or Federal," presiding over LBO related fraudulent conveyance claims, or to "micromanage litigation that's occurring in other courts."    *See infra* ¶ 20.    In fact, the stay of the SLCFC Actions was intended only to ensure that the parties-in-interest to the then-pending confirmation litigation – including former Tribune shareholders the Robert R. McCormick Tribune Foundation and the Cantigny Foundation (the "McCormick and Cantigny Parties") – would have a full and fair opportunity to present objections to the competing plans based on arguments that Bankruptcy Code section 546(e), and theories of federal preemption and standing, precluded Tribune creditors from pursuing the SLCFC Actions.[4]    Now that this Court has ruled that these issues should be determined by the court(s) presiding over the SLCFC Actions, even the McCormick and Cantigny parties do not oppose the Movants' Lift Stay Motion, or seek to obtain a longer stay of the *FitzSimons* case.    Clearly, the McCormick and Cantigny Parties – defendants in both the SLCFC Actions and the FitzSimons adversary proceeding that are being sued for more than a billion dollars – are ready to litigate.    The original justifications for the stay of the SLCFC

---

[4] *See* March 22, 2011 Hr'g Tr. at 100:16-101:5.

Cases (and *FitzSimons*) thus no longer exist.

5.      The concerns of the Debtors and certain other objectors that Judge Holwell's management of the MDL cases somehow will conflict with the ongoing chapter 11 cases are similarly misguided.    While a confirmation hearing is scheduled for May, it will not involve litigation of standing, section 546(e), or other preliminary issues that may arise in the MDL Proceedings.    Moreover, even if the MDL Court was to embark immediately on the myriad preliminary tasks necessary to the orderly management of the consolidated cases, the chances that substantial MDL litigation would occur before the May confirmation hearing are very small. To the extent there is such overlap, there is no reason to believe it would unduly burden the Debtors, disrupt the confirmation process or otherwise prejudice any party-in-interest to the Tribune chapter 11 cases.    In contrast, extending the stay of the LBO litigation surely would prejudice Tribune's unsecured creditors.    Indeed, in support of the DCL settlement, the Debtors' repeatedly stressed that significant additional recoveries would likely be available as a result of the non-settled LBO claims.    The only chance for Tribune's non-LBO creditors to be made whole lies in a successful prosecution of these claims, and these actions should now get underway.

6.      Finally, certain retirees of the Times Mirror Company (the "Retirees") object to lifting the stay and permitting the Movants (and the 2000-plus defendants named in the Movants' SLCFC Actions) to begin litigating these cases because the Retirees will be "forced to litigate" the four SLCFC Actions that they voluntarily elected to bring.    This argument must be rejected. The Retirees cannot seriously expect this Court to hold nearly 50 actions in abeyance simply because the Retirees are now unprepared or unwilling to prosecute their own actions, and – in any event – should not expect this Court to continue to dictate the schedule of their SLCFC

Actions after they purposefully sought to have their cases consolidated before Judge Holwell in the MDL.[5]    The Lift Stay Motion should be granted, and the stay of *FitzSimons* extended only until that case is transferred to Judge Holwell.

## ARGUMENT

### I.    Lifting the Stay Will Facilitate, not Interfere with, Coordination of *FitzSimons*

7.    Most of the parties who filed objections to the Lift Stay Motion object based solely on a misguided concern that lifting the stay will preclude coordination between *FitzSimons* and the other state law actions transferred, or to be transferred to the MDL, when just the opposite is true.    These objectors include:

- The Official Committee of Unsecured Creditors (*see* Response to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10723]);

- Morgan Stanley & Co. LLC (*see* Objection to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10724]);

- Merrill Lynch (*see* Statement Regarding the Motion for Order Lifting Stay of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10725]);

- Artis Capital Management, L.P., the President and Fellows of Harvard College, and Marcia Tingley (*see* Limited Objection to (I) Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits, and (II) Third Motion of The Official Committee of Unsecured Creditors to Amend Definition of "Termination Event" in Standing Orders [ECF No. 10727]);

- Certain Tribune Directors and Officers (*see* Objection to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10726]); and

- Crane Kenney *(see* Joinder to Objection of Certain Directors and Officers to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10731]).

---

[5]    *See* Objection of TM Retirees to Motion to Lift the Stay with Respect to State Law Constructive Fraud Actions [ECF No. 10718] at 7 (noting that the Retirees "filed an Interested Party Response in support of the MDL Motion, seeking to have the Retiree Actions consolidated with the Noteholder Actions and transferred to the Southern District of New York").

{00598325;v1}

8.      Contrary to the position of these objectors, lifting the stay and otherwise ceding control of pretrial matters associated with the state law actions to the MDL Court would *facilitate*, not impede, coordination of *FitzSimons* with the other state law cases.    All of the state law cases that originally were filed in, or removed to, federal district courts have been transferred to the MDL already,[6] and *FitzSimons* shortly will be consolidated or coordinated with those cases as well.[7]    Thus, at this point, this Court should cede control of these cases to allow Judge Holwell to determine the schedule on which those actions should proceed and the manner in which they should be coordinated.    Granting such relief would be consistent with the fundamental purpose of MDL consolidation, as well as with the Court's prior statements regarding its intent not to micromanage the SLCFC Actions.    *See infra* ¶ 20.

9.      Granting the Lift Stay Motion and extending the stay of *FitzSimons* only until that case is transferred to Judge Holwell would best (i) honor the spirit of the JPML transfer orders, and (ii) ensure *FitzSimons* and the other transferred cases move forward together in an orderly and coordinated fashion.    Indeed, the "principal purpose" of MDL consolidation is to allow "one judge" – the transferee judge – to "take control of complex proceedings."    *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996).    In order to fulfill this purpose, the transferee judge "must have discretion" to control his own docket and to coordinate the schedules of all transferred cases.    *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F. 3d 1217, 1331-32 (9th Cir. 2006).    Vesting full control over scheduling matters in the transferee court is so crucial to the MDL scheme that transferor courts are actually divested of all power over the consolidated or coordinated matter immediately upon

---

[6] *See* Objection of Aurelius, Duetsche Bank and Law Debenture to Committee Motion to Extend Stay dated January 26, 2011 (ECF No. 10735) ("Objection to UCC Stay Motion") ¶¶ 10-12.

[7] *See* Objection to UCC Stay Motion ¶¶ 13-14 (discussing entry of conditional transfer order of *FitzSimons* and fact that Committee actively supports, and no party opposes, transfer of *FitzSimons* to the MDL).

{00598325;v1}

transfer, and lack jurisdiction over the transferred case until it is returned to the original court for

purposes of trial.    *See, e.g., In re UpJohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d

114, 118 (6th Cir. 1981) (The "power of the Panel on Multidistrict Litigation under 28 U.S.C.

Sec. 1407 to transfer district court proceedings from one court to another should divest the

transferor court of any further authority"); *General Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th

Cir. 1979) ("[A]ny action taken by the transferor court after transfer would be ineffective . . . .").

10.    Thus, if anything, the current stay of the SLCFC Actions (and request by the

Committee to extend the *FitzSimons* stay by 60 days) actually threatens to derail coordination

between *FitzSimons* and the other transferred cases.    Judge Holwell faces a complex and

time-consuming task in overseeing the MDL cases, and may wish to begin preliminary

scheduling and other activities relating to procedure and coordination in the near term, at least

with respect to the cases originally filed in or removed to federal district courts.    While Judge

Holwell has the power to proceed with respect to all cases transferred to him notwithstanding

any orders that may be entered by this Court, comity and other concerns presumably would lead

Judge Holwell to honor this Court's stay with respect to the *FitzSimons* adversary proceeding,

while moving forward with the cases transferred to him from other federal district courts.    If, on

the other hand, this Court clearly disclaims any continuing control over pretrial scheduling

matters relating to the SLCFC Actions and the *FitzSimons* adversary proceeding upon its

transfer, those consolidated or coordinated cases almost certainly will proceed in harmony with

one another, at whatever pace Judge Holwell deems appropriate.[8]

11.    The Movants' objective in seeking to lift this Court's stay is precisely *to* allow the

MDL court to manage its docket in a coordinated manner.    Given the inevitable consolidation

---

[8] The Movants have no objection to a brief continuation of the stay of *FitzSimons* as long as such extended stay terminates upon finalization of the transfer of *FitzSimons* to the MDL.

{00598325;v1}

of the SLCFC Actions and *Fitzsimons*, there is simply no "significant risk that the SLCFC

Actions and *FitzSimons* Action will proceed in an uncoordinated manner" if the Court grants the

Lift Stay Motion.[9]   Hence, the concerns of these objectors simply do not justify their

opposition, and the Lift Stay Motion should be granted.

### II.   There is No Justification to Extend the Stay Pending Completion of the Plan Confirmation Process

12.     JPMorgan and the Debtors have not made any formal motion before this Court

but nevertheless seek relief which goes well beyond the relief sought by either the Movants or

the Committee -- an *indefinite* stay by order of the Court of all of the SLCFC Actions and the

*FitzSimons* adversary proceeding until the confirmability of the next DCL Plan has been

determined.[10]   According to JPMorgan and the Debtors, an indefinite stay of the SLCFC

Actions and *FitzSimons* is necessary to avoid distracting the Debtors from confirmation, and is

consistent with this Court's order implementing the stay in the first place.[11]   They are wrong on

both counts.   Further, they seek relief which completely inconsistent with the Court's

---

[9] *See, e.g.*, Objection of Morgan Stanley & Co. LLC to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10724], at 3.

[10] The Henry Francis Dupont Winterthur Museum, Inc. also asks that this Court leave the stay in place until a Plan is confirmed and goes effective.   *See* Objection of the Henry Francis Dupont Winterthur Museum, Inc. to the Motion for Order Lifting Stay of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10729] at 4. But this objection appears to be based in the erroneous beliefs that "Plaintiffs have proposed a competing plan or reorganization," and that if the Court lifts the April 25 Stay now, "defendants like Winterthur would be forced to seek relief from stay, distracting Debtors from their confirmation battle" and resulting in "a burden on this Court." *Id.* at 3-4.   These concerns are not justified.   As the Court is aware, the Movants have not resubmitted any competing plan or reorganization.   In addition, as described herein, if this Court lifts the April 25 Stay, any future decisions regarding the stay of the SLCFC Actions or *FitzSimons* Action, or the schedule on which those actions will proceed, will be made not by this Court, but by the MDL court.

[11] JPMorgan and the Debtors also apparently advocate an extension of the stay of *FitzSimons* through completion of the plan process even if the Court lifts the stay applicable to the other cases transferred to the MDL, a position that is directly at odds with their argument – and that of the Primary Objectors – that *FitzSimons* should be coordinated with the other cases in the MDL.   *See* Debtors' (1) Response to Third Motion of the Official Committee of Unsecured Creditors to Amend Definition of "Termination Event" in Standing Orders and (2) Objection to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10728], at 4-5; Joinder of JPMorgan Chase Bank, N.A. to Debtors' (1) Response to Third Motion of the Official Committee of Unsecured Creditors to Amend Definition of "Termination Event" in Standing Orders and (2) Objection to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10730].

unambiguous prior statements indicating that the Court does not intend to manage the SLCFC Actions.

13.     The Debtors will not be unduly distracted if the stay is lifted now.    The Debtors are not even parties to the *FitzSimons* adversary proceeding or any of the other actions before Judge Holwell.    Moreover, Judge Holwell has stayed the MDL for the time being, and no discovery or other requests of any kind have issued from parties to the MDL to each other, much less to the Debtors or other third parties.    The MDL parties have yet to negotiate and resolve any of the numerous preliminary and procedural issues that surely will arise at the outset of that proceeding, and merits-related discovery in the MDL would therefore almost surely be months off, even were Judge Holwell to lift his stay immediately.    In asking for a continued stay notwithstanding these facts, the Debtors and JPMorgan are essentially arguing for a rule that adversary proceedings or cases between non-debtors should *never* go forward until a plan is confirmed.    That is obviously not the law.    *See infra* ¶ 15.

14.     Even after the commencement of merits-related discovery in the MDL, the parties will be able to obtain many of the relevant documents directly from sources other than the Debtors, including the Movants, who received (and have retained) much of this information in connection with the prior plan litigation.[12]    In the unlikely event that the Debtors are served burdensome discovery, like any other third-party they will be entitled to seek relief from Judge Holwell in order to protect their interests.[13]

---

[12] In addition, any discovery that may be sought from the Debtors will in all likelihood be sought in the form of a single or small number of consolidated requests on behalf of the MDL parties.    Indeed, one of the primary objectives of MDL consolidation is too allow for discovery to be coordinated and to lessen the burdens of discovery on third parties.    *See, e.g., In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 844 F. Supp. 1553, 1534 (J.P.M.L. 1994) (transfer necessary in order to fulfill MDL goal of eliminating duplicative discovery); *In re Litig. Arising from Termination of Ret. Plan for Emps. of Fireman's Fund Ins. Co.*, 422 F. Supp. 287, 290 (J.P.M.L. 1976) (same).

[13] It is worth noting that the Debtors are represented by a large international law firm that surely has the resources to handle any discovery sought in connection with the MDL.

{00598325;v1}

15.     Whatever limited burden the Debtors may assume in the event that they are served with MDL discovery requests in the coming months will not necessarily be "undue." Debtors and other constituents in bankruptcy cases routinely are required to respond to substantial discovery requests made by parties to bankruptcy related litigation, despite the pendency of confirmation and other plan-related proceedings.   *See, e.g., Chord Assocs. LLC v. Protech 2003-D, LLC*, No. 07-5138, 2010 WL 1257874, slip op. at *7 (E.D.N.Y. Mar. 25, 2010) (refusing to stay litigation against debtors' subsidiaries based on debtors' unsubstantiated argument that debtors "will be distracted from their responsibilities to work on a plan of reorganization while simultaneously having to defend this litigation"); *DeSouza v. PlusFunds Group, Inc.*, No. 05 Civ. 5990, 2006 WL 2168478, at *2 (S.D.N.Y. Aug. 1, 2006) (refusing to extend automatic stay to protect debtor's officer from litigation based on "vague indications of potential distraction" and rejecting argument that requiring officer "to defend himself against plaintiff's claims will prevent him from focusing on [debtor's] wind-down, thereby harming its reorganization efforts"); *In re Riverbend Leasing LLC*, 458 B.R. 520, 527 (Bankr. S.D. Iowa 2011) (refusing to enjoin litigation against debtors' members and principals based on debtors' generalized argument that "distractions related to litigation" would be "detrimental to reorganization efforts").    Neither the Debtors nor JPMorgan have cited any cases to the contrary.    If substantial MDL discovery is required of the Debtors prior to the Debtors confirming a plan – and that is a big "if" – the Debtors will be expected to respond appropriately, just as have many other similarly situated debtors in the past.

16.     Notably, the Debtors exalt their speculative concerns about prejudice that *might* be suffered by their officers and employees if the stay is lifted, over the certain prejudice that will accrue to Tribune's non-LBO creditors – persons to whom the Debtors owe fiduciary duties

– if the stay remains in place.    Under the plan of reorganization supported by the Debtors, the

holders of the PHONES Notes will receive nothing at all on account of their claims, and

Tribune's other unsecured creditors will never be paid more than a fraction of their claims.    The

stayed SLCFC Actions and *FitzSimons* therefore represent these creditors' only chance to be

made whole on the debt owed them by Tribune.    Indeed, the Debtors themselves relied heavily

during the competing plan litigation on the significant additional recoveries associated with the

non-settled LBO claims as a basis for advocating settlement of the estates' claims against the

LBO lenders.[14]

17.    In addition, maintenance of the stay as advocated by the Debtors is contrary to the

interests of at least some, and probably many, defendants in the SLCFC Actions and *FitzSimons*

who would prefer that the MDL get underway as soon as is reasonably practicable.    Indeed,

although all but a handful of the SLCFC Actions were stayed almost immediately by the courts

in which they originally were filed, dozens of defendants still managed to file, or sought to file,

pre-transfer motions to dismiss, and complained bitterly that the interim stays and MDL

consolidation would delay dispositive motion practice unfairly.[15]    An order staying indefinitely

the state law cases now that they have been transferred to the MDL surely will not be welcomed

by these defendants, particularly where the order is entered by a court that is not even

temporarily presiding over the cases to which such defendants are parties.

18.    Significantly, the McCormick and Cantigny Parties who made the original

---

[14] *See, e.g.*, Post-Trial Brief in Support of Confirmation of Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified April 26, 2011) [ECF No. 8897], at 2, 7-8, 27-29.

[15] *See, e.g.*, Exhibit A hereto (Opposition to Motion to Stay, *Deutsche Bank Trust Co. Americas, et al. v. American Electric Power, et al.*, Case No. 1:11-cv-09592-RJH [ECF No. 19], at 3 ("[Defendant] has every reason to desire a prompt, efficient evaluation of this action against him with the least amount of burden and expense the Federal Civil Rules contemplate.")).    *See also* Exhibit B hereto (Memorandum in Opposition to Stay, *Deutsche Bank Trust Co. Americas, et al. v. Huntington Nat'l Bank, et al.*, Case No. 1:11-cv-09589-RJH [ECF No. 46], at 4 ("Defendants have a right to determination of its liabilities without undue delay.").

{00598325;v1}

standing and section 546(e) objections in this Court that resulted in entry of the April 25 Stay

(and who are the largest defendants in both the SLCFC Actions and *FitzSimons*) have not

opposed the Lift Stay Motion and have not requested a longer stay of *FitzSimons*, presumably

because they too wish to see the cases advance in an orderly fashion.    Other parties-in-interest

to the Tribune bankruptcy evidently agree.[16]    The parties to these actions should not be

precluded from moving forward with the litigation simply because the Debtors speculate about

"potential disruption" that is unlikely to ever occur.

19.    In addition, far from seeking a "short delay in the start-up of litigation," the

Debtors appear to be seeking a stay of the SLCFC Actions that may last many months or longer,

particularly if the Court issues an order denying confirmation of the next version of the DCL

Plan.    Although the Debtors state that they are currently seeking to extend the stay until entry of

an order "granting or denying confirmation of the Third Amended DCL Plan," the Debtors'

Objection makes clear that what they are really seeking is an extension of the stay until the

Debtors emerge from bankruptcy entirely.[17]    While the Debtors are on track for their mid-May

confirmation hearing, it is impossible to predict at this time if and when the Debtors will

ultimately emerge from bankruptcy, and the parties to the SLCFC Actions and *FitzSimons* should

not be forced to wait until such time to prosecute and defend against the claims asserted in those

actions.

20.    Staying the SLCFC Actions and the *FitzSimons* adversary proceeding by order of

---

[16] *See, e.g.*, Sam Zell's Limited Objection to the Third Motion of the Official Committee of Unsecured Creditors to Amend Definition of "Termination Event" in Standing Orders [ECF No. 10732], at 1 ("Mr. Zell objects to the Committee's Motion to the extent that it would delay his right to file appropriate motions in response to the purported claims asserted against him. . . .").

[17] *See* Debtors' (1) Response to Third Motion of the Official Committee of Unsecured Creditors to Amend Definition of "Termination Event" in Standing Orders and (2) Objection to Motion for Order Lifting Stays of State Law Constructive Fraudulent Conveyance Suits [ECF No. 10728] ("Debtors' Objection"), at 3 (arguing that it is "potentially disruptive" to lift the stay while there is a "clear need for the Company to exit bankruptcy" and that lifting the stay is "premature" because "there is still much ground to cover before the Debtors are able to pass through 'an exit door to this chapter 11 proceeding.'").

{00598325;v1}

this Court pending confirmation of a plan is also entirely inconsistent with the Court's prior statements on the issue.    On two separate occasions this Court has emphasized that it does not intend to interfere with the prerogative of other courts to manage the SLCFC Actions.    First, on June 28, 2011, this Court made clear that "it's not [the Court's] intention to interfere with the prerogative of any other Court, State or Federal, with respect to conduct of litigation before it. . . . Courts are free to take their own conduct and manage their own dockets."    June 28, 2011 Hr'g Tr. at 22:7-13; *see also id* at 21:21-22:1 ("[W]hen somebody tells me they wanted to be rid of the Bankruptcy Court and I give them the exit, I generally like to consider that a one-way door. I am not interested in having the parties return on a periodic basis to figure out how to solve the next problem.").    The Court reiterated these points on July 15, 2011, stating – unequivocally – that the Court does "not want to continue on any basis to micromanage litigation that's occurring in other Courts."    July 15, 2011 Hr'g Tr. at 6:17-20; *see also id.* at 7:12-15 (emphasizing that the Court does "not want to interfere with the prerogative of any other Court"); *id* at7:19-20 ("And I'll again repeat, I do not want to micromanage this litigation.").    Despite these clear statements, the Debtors and JPMorgan now ask that this Court continue, indefinitely, to effectively manage the schedule and coordination of cases which are not before it.    The Court should reject these requests and signal, in no uncertain terms, that the pretrial progress of the MDL cases must be determined in the sole and sound discretion of Judge Holwell.

21.    Finally, the Debtors misleadingly suggest that counsel for the Movants agreed to a stay of the SLCFC actions until the Debtors are able to confirm a plan during a March 22, 2011 hearing before this Court.[18]    Counsel for the Movants did not agree to any such stay, nor was such an indefinite stay proposed by the Debtors or contemplated by the Court's April 25 Order.[19]

---

[18] *See* Debtors' Objection, at 5.
[19] The April 25 Order simply provides that the SLCFC Action be stayed pending "further order of this
{00598325;v1}

Indeed, it has always been the Movants' position that the McCormick and Cantigny objections

which led to the April 25 Stay in the first place were not issues "for this Court to decide," and

that these issues should instead be decided by the courts where the SLCFC Actions would be

pending.[20]   Further, in their papers and at the March 22, 2011 hearing, the Movants indicated

that they would agree to stay the SLCFC Actions pending completion of the "competing plan

process" in which the objections raised by the McCormick and Cantigny parties were at issue.[21]

Now, not only is there no longer a competing plan process, but there is no longer any reason for

this Court to extend the stay of either the SLCFC Actions of *FitzSimons* pending a resolution of

the current plan process because the Court properly has disposed of the objection raised by the

McCormick and Cantigny parties as "best left for determination by the courts hearing those

claims."[22]

### III.   The Retirees' Objection is Unwarranted

22.     The Retirees, most of whom are plaintiffs in four of the SLCFC Actions currently

before the MDL Court, argue that granting the Lift Stay Motion will present a "significant

economic and practical hardship" on them because they will be "forced to litigate" the SLCFC

Actions.[23]   Perhaps the Retirees should have considered the burden associating with litigating

their claims *before* they voluntarily chose to commence four separate lawsuits against hundreds

of defendants.   The Retirees cannot expect this Court or any other to hold numerous other

actions in abeyance simply because they are now unprepared or unwilling to prosecute claims

---

Court."  April 25 Order at 5.   The Debtors did not submit any proposed order providing otherwise, and certainly
never suggested at the time that they expected the SLCFC Actions to be stayed until the confirmation process was
complete.

[20] Mar. 22 Tr. at 47:23-48:3; *see also id.* at 54:2-6.

[21] Mar. 22 Tr. at 48:19-49:7.

[22] Confirmation Opinion [ECF No. 10133], at 98.

[23] *See* Objection of TM Retirees to Motion to Lift the Stay with Respect to State Law Constructive Fraud
Actions [ECF No. 10718].

{00598325;v1}

that they chose to bring, particularly after they themselves sought to consolidate their actions

with nearly 50 others with which they were previously uninvolved.    In any event, prosecuting

their SLCFC Actions will require the Retirees to expend substantial time and money whether

they proceed to litigation now or at some undefined date in the future.    The Retirees' "burden"

objection is thus irrelevant to the motion now before the Court, which seeks only to confirm that

the schedule for all of the transferred actions – including the Retirees' SLCFC Actions – will be

determined by the transferee court.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court enter an order lifting the

stay of the SLCFC Actions directed by the April 25 Order and extending the stay of *FitzSimons*

only until such time as it is transferred to the MDL, and granting such other and further relief as

the Court may deem just and proper.

Dated:    January 30, 2012

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP

/s/ Katherine L. Mayer
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner
1633 Broadway
New York, New York 10019
212-506-1700

BIFFERATO GENTILOTTI LLC

/s/ Garvan F. McDaniel
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302- 429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

{00598325;v1}

BROWN RUDNICK LLP
Robert J. Stark
Martin S. Siegel
Gordon Z. Novod
Seven Times Square
New York, NY 10036
212-209-4800

SULLIVAN HAZELTINE ALLINSON LLC

/s/ William D. Sullivan
William D. Sullivan (I.D. No. 2820)
Elihu E. Allinson, III (I.D. No. 3476)
901 N. Market St., Suite 1300
Wilmington, DE 19801
302-428-8191

*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES Notes*

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
Mitchell P. Hurley
One Bryant Park
New York, NY 10036
(212) 872-1000

ASHBY & GEDDES, P.A.

/s/ Leigh-Anne M. Raport
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
Leigh-Anne M. Raport (I.D. No. 5055)
500 Delaware Avenue
P.O. Box 1150, Wilmington, DE 19899
(302) 654-1888

*Counsel for Aurelius Capital Management, LP*

{00598325;v1}