## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x   Chapter 11
In re:                                             :
                                                   :   Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                           :
                                                   :   Jointly Administered
        Debtors.                                   :
                                                   :   Objections Due: February 21, 2012
                                                   :   @ 4:00 p.m.(ET)
-------------------------------------------------- x   Hearing Date: N/A
```

### THIRTY-SIXTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD DECEMBER 1, 2011 THROUGH DECEMBER 31, 2011

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | December 1, 2011 through December 31, 2011 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $362,255.80    (80% of $452,819.75) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $  38,756.34 |

This is a(n):    _x_ Monthly        ____ Interim        ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application. Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2011 | December 12, 2011 | $737,989.71 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### December 1, 2011 through December 31, 2011

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | 995 | 57.80 | $57,511.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 69.40 | 62,807.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 40.50 | 35,437.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 74.00 | 53,249.00 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 74.40 | 54,273.25 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 76.70 | 53,306.50 |
| Francisco Vazquez | Bankruptcy and Financial Restructuring | 1995 (NJ) 1996 (NY) | 665 | 1.20 | 798.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 7.90 | 5,095.50 |
| | | | | | |
| **Associate:** | | | | | |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 655 | 9.10 | 5,960.50 |
| Robert Kirby | Litigation | 2008 (NY) | 595 | 7.80 | 4,641.00 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 42.30 | 23,899.50 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 0.50 | 247.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 103.30 | 51,133.50 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 20.20 | 8,787.00 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 44.40 | 19,270.50 |
| | | | | | |
| **Paraprofessionals:** | | | | | |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 30.40 | 8,968.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 25.20 | 7,434.00 |
| | | | | | |
| **TOTAL:** | | | | **685.00** | **$452,819.75** |

BLENDED RATE:      $667.50

---

\* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------ x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: February 21, 2012 |
| | | @ 4:00 p.m.(ET) |
| ------------------------------------------------------ x | : | Hearing Date: N/A |

**THIRTY-SIXTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD DECEMBER 1, 2011 THROUGH DECEMBER 31, 2011**

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $452,819.75 (80% of which equals $362,255.80) and reimbursement of expenses incurred in the amount of $38,756.34 during the period commencing December 1, 2011 through and including December 31, 2011 (the "Application Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.     Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.     On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm.  See Section 1129(c).  The Court stated that, given those options, it would select the DCL Plan.

10.     On November 18, 2011, the proponents of the DCL Plan filed their Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (the "Third Amended DCL Plan").  A hearing on confirmation of the Third Amended DCL Plan is scheduled for May 2012.

## COMPENSATION PAID AND ITS SOURCES

11.     All services for which compensation is requested by Chadbourne were performed for or on behalf of the Committee.

---

[1]     The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the Noteholder Plan Proponents").

12.     During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.     The fee statement for the Application Period is attached hereto as Exhibit A.  This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2 (the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Application Period total $452,819.75.  The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

15.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.**     **Bankruptcy General (Matter 002)**

Fees:  $16,350.50          Total Hours:  36.10

16.     During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

5

**B.**    **Committee Meetings (Matter 003)**

Fees:  $44,132.00          Total Hours:  64.20

18.      Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to the key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

19.      Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

Fees:  $2,735.00          Total Hours:  4.40

20.      Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

6

**D.   Business Operations (Matter 007)**

  Fees:  $13,238.00        Total Hours:  18.40

21.     During the Application Period, professionals from Chadbourne's
Communications Media and Technology ("CMT") Group were further engaged in reviewing
and addressing issues with the FCC exit application process.  In particular, CMT attorneys
reviewed, commented and performed research on FCC foreign ownership issues and
participated in discussions with the Debtors' FCC counsel regarding same.

22.     During the Application Period, Chadbourne attorneys continued to review and
monitor issues involving the Debtors' day-to-day business operations.  Efforts included review
and discussions with the Committee's financial advisors regarding their analysis of the Debtors'
possible entry into several new business transactions and review and discussion regarding
certain cash usage issues.  Chadbourne also reviewed weekly operations and financial reports
prepared by the Committee's financial advisors.

**E.   Claims Administration/Bar Date (Matter 009)**

  Fees:  $782.50        Total Hours:  1.30

23.     During the Application Period, Chadbourne continued to expend efforts in
connection with the disposition of claims.  Efforts included finalizing its analyses on the
Debtors' forty-eighth and forty-ninth omnibus objections to claims in a report to the Committee.
In addition, Chadbourne reviewed and commented on the Debtors' responses to certain claim
issues.

7

**F.**     **Fee/Retention Applications (Matter 010)**

    Fees:   $18,582.50          Total Hours:  43.10

24.     Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparation and filing of Chadbourne's thirty-fourth monthly fee application.  In addition, Chadbourne reviewed and analyzed quarterly fee applications for the eleventh interim fee period for all case professionals in these Chapter 11 cases and revised and finalized a summary analysis for review by the Committee.

25.     During the Application Period, Chadbourne continued to expend time in connection with professional retention/employment matters.   Efforts include review and analysis of (i) Debtors' application to convert the existing retention of SNR Denton as ordinary course professional to a non-ordinary course professional; and (ii) Debtors' application to expand the scope of the retention of Ernst & Young.  Chadbourne summarized its analyses and recommendations in written reports to the Committee.

26.     In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**G.**     **Avoidance Issues (Matter 013)**

    Fees:   $5,381.50          Total Hours:  11.10

27.     During the Application Period, Chadbourne attorneys continued to review and address various issues in connection with the potential preference actions asserted against

8

current and former Tribune insiders and certain other entities (the "Preference Actions").
Specifically, Chadbourne expended time reviewing and researching issues in connection with
the Debtors' request that the Committee dismiss a Preference Action against a former senior
executive of Tribune.

28.    In addition, during this time, Chadbourne was engaged with follow-up related to
the Committee's pending stayed Preference Actions against the Debtors' professionals and
certain officers and directors of the Debtors.  Efforts included review of expiring tolling
agreements with certain of the Debtors' professionals and conferences with the Committee's co-
counsel and Debtors' counsel to coordinate efforts to obtain extensions of those tolling
agreements.

H.    **Employee Issues (Matter 014)**

   Fees:  $1,943.50             Total Hours:  2.90

29.    During the Application Period, professionals from Chadbourne's Employee
Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters.
Efforts included review and analysis of the terms of severance agreements with two additional
departing seniors executive of Tribune.  In connection therewith, Chadbourne reviewed and
analyzed the economic terms and business rationale of the departures and consulted with the
Committee's financial advisors about their analysis of the departure arrangements.  Chadbourne
summarized its analysis and recommendations in memoranda to the Committee.

I.      **General Litigation (Matter 017)**

      Fees:   $1,415.50        Total Hours:   2.70

      30.     During the Application Period, individual defendants (the "D&O Defendants") named in the Committee's complaint against shareholders and other third parties in connection with the LBO/ESOP transaction (the "*FitzSimons* Action") and the Preference Actions submitted their second report to the Committee of fees and costs submitted for payment to the Debtors' D&O liability insurance providers (the "D&O Insurance Providers"). These reports were required by the Court's March 29, 2011 Order modifying the automatic stay to allow the D&O Defendants payment and advancement of defense costs, fees, and expenses by the D&O Insurance Providers. Chadbourne reviewed the report and provided a summary analysis to the Committee.

      31.     During the Application Period, Chadbourne attorneys continued to monitor and review the various adversary proceedings pending in connection with the Debtors' Chapter 11 cases.

J.      **Travel (Matter 018)**

      Fees:   $4,423.25        Total Hours:   13.70

      32.     During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend omnibus hearings at the Bankruptcy Court. A Chadbourne attorney also travelled from Savannah, Georgia after attending the hearing before the Judicial Panel on the multi-district litigation issue. The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

### K.    Shareholder Claims (Matter 020)

Fees:    $58,571.00                    Total Hours:    87.20

33.    During the Application Period, Chadbourne attorneys continued to review and analyze case activity in connection with the various lawsuits filed by the Retirees[2] and the Noteholders[3] asserting state law constructive fraudulent conveyance claims ("SLCFC Claims") against Tribune's former stockholders in connection with the 2007 leveraged buyout of Tribune Company in order to keep the Committee apprised of the status of the proceedings and any potential implications on the Debtors' Chapter 11 cases.    On December 1, 2011, Chadbourne attended the hearing before the Judicial Panel for Multidistrict Litigation (the "Judicial Panel") in Savannah, Georgia to consider the Noteholders' motion to transfer the 44 pending SLCFC Claims actions to the Southern District of New York for consolidated proceedings.    On December 19, 2011, the Judicial Panel granted the Noteholders' motion.

34.    During this time, certain defendants filed a request to transfer the *FitzSimons* Action as a "tag-along" to the Noteholders' actions.    In addition, EGI-TRB filed two complaints in Illinois state court asserting SLCFC Claims against former stockholders of Tribune. Chadbourne reviewed and analyzed the lawsuits and participated in numerous discussions with the Committee's co-counsel to address possible implications on the pending *FitzSimons* Action

---

[2]    The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110 affiliates or subsidiaries of Tribune Company.

[3]    The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

and to consider options on the MDL "tag-along" request.  The options were presented to the Committee.

35.    During the Application Period, Chadbourne participated in discussions with the Committee's co-counsel on discovery efforts in the *FitzSimons* Action and the possible establishment of a threshold amount below which LBO recipients would not be pursued. Chadbourne reviewed and commented on a memorandum to the Committee which analyzed relevant related issues including a cost/benefit review of the time and expense involved in serving so many defendants and the likely success rate for collecting from defendants sued for smaller dollar amounts.

L.    **Plan Litigation (Matter 021)**

Fees:  $285,264.50          Total Hours:  399.90

36.    During the Application Period, Chadbourne bankruptcy and litigation professionals continued to be substantially engaged, on behalf of the Committee, in analyzing, addressing and responding to a variety of issues related to efforts to move the Debtors' Chapter 11 cases toward plan confirmation as expeditiously as possible.

37.    During the Application Period, Chadbourne attorneys expended time reviewing and responding to the Noteholders' allegation that the Court's findings with respect to the DCL Plan's application of the PHONES Notes subordination provisions is unfairly discriminatory. In evaluating the Noteholders' assertions, Chadbourne analyzed the effect of the subordination provisions under the DCL Plan on creditors' recoveries and performed extensive related legal research.  Further, Chadbourne's litigation team reviewed evidentiary issues and determined an appropriate course of action on same.

12

38.     During the Application Period, Chadbourne attorneys continued to be engaged in
reviewing and analyzing the three motions for reconsideration of the Court's Opinion on
Confirmation.  Chadbourne presented its analysis to the Committee of the three matters brought
forth for reconsideration:  (i) the right of the Senior Lenders to share in Litigation Trust
proceeds; (ii) the DCL Plan Bar Order; and (iii) clarification that the Court made no ruling with
regard to the amount of the PHONES notes outstanding.  Ultimately, the Committee supported
the filing of a joint response with the DCL Plan Proponents with regard to the first two issues.
In connection therewith, Chadbourne, on behalf of the Committee, collaborated with the DCL
Plan Proponents on the drafting, revising and filing of that joint objection.  Further, Chadbourne
reviewed responses filed by other parties to the three motions for reconsideration as well as the
Noteholder Plan Proponents' further reply brief in support of its reconsideration motion.
Chadbourne participated at the December 14, 2011 hearing where the parties presented
arguments.  At the conclusion of the hearing, the Court took the motions under advisement.

39.     During this time, proponents of both plans continued to meet and confer in an
attempt to reach agreement on scheduling of the allocation dispute issues as well as procedures
for disclosure/resolicitation/confirmation of the Third Amended DCL Plan.  The meetings
resulted in the resolution of a number of disputes among the DCL Plan Proponents and the
Noteholder Plan Proponents and other constituents but certain disputes with regard to
confirmation scheduling remained unresolved.  As a result, Chadbourne, on behalf of the
Committee, consulted with the Committee's financial advisors regarding its analysis of the
allocation issues and worked with the DCL Plan Proponents on drafting, revising and filing the
*DCL Plan Proponents' Proposed Schedules for Resolution of Allocation Disputes and*

*Disclosure/Confirmation of Third Amended Plan.*  In connection therewith, Chadbourne

reviewed and analyzed scheduling briefs filed by the Noteholder Plan Proponents and the other

opposing parties and worked with the DCL Plan Proponents on preparation of a related

response.  Chadbourne participated at the December 13, 2011 hearing where the parties

presented arguments on these scheduling issues.  At the conclusion of the hearing, the Court

announced that it would defer ruling on scheduling until the motions for reconsideration were

resolved.

40.     On December 29, 2011, the Court issued an *Order Regarding Motions for*

*Reconsideration of the Confirmation Opinion and Order* which granted the Aurelius and Law

Debenture/Deutsche Bank subordination-related reconsideration motions, thereby amending the

Confirmation Opinion to strike the PHONES subordination determination.  The Court denied

the Noteholder Plan Proponents' requests for reconsideration of (i) the LBO Lenders' right to

share in Litigation Trust proceeds, and (ii) the proportionate judgment reduction provision in

the DCL Plan's Bar Order.  Further, with respect to scheduling, the Court scheduled a status

hearing for January 11, 2012 and directed the parties to confer again in an attempt to reach

agreement on scheduling with respect to the allocation disputes and disclosure/confirmation

scheduling.

## ACTUAL AND NECESSARY EXPENSES

41.     A summary of the actual and necessary expenses and daily logs of expenses

incurred by Chadbourne during the Application Period in the amount of $38,756.34 is attached

hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For

14

purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.

Chadbourne customarily charges its clients $1.25/per page for out-going facsimile

transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

42.    Due to the national nature of the Debtors' business and the Committee's

participation in weekly meetings by telephone, long distance telephone and conference call

services have been required.  In accordance with the Guidelines, in seeking reimbursement for

long distance telephone charges, Chadbourne currently charges clients its approximate actual

cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call

services and requests reimbursement only for the amount billed to Chadbourne by the third-

party vendors.

43.    With respect to legal research expenses, Chadbourne has entered into flat-fee

contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order

to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis

and Westlaw are allocated among those clients based on the actual number and scope of

searches conducted on behalf of those clients.

44.    In connection with the LBO/ESOP transaction investigation Chadbourne entered

into a contract for electronic data discovery services with Complete Document Source Inc.

("CDS").  Chadbourne continues to use the CDS services in connection with the plan

confirmation process in reviewing and analyzing the various trial exhibits and documents

presented at the confirmation hearing for potential admission on the trial record.  In addition,

Chadbourne is reviewing and analyzing certain documents regarding issues raised in recent

caselaw that may have implications on confirmation of the DCL Plan.  The CDS charges

15

incurred during the Application Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

45.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

46.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

47.    Attorneys and paraprofessionals of Chadbourne have expended a total of 685.00 hours in connection with the matter during the Application Period. The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto. These are Chadbourne's normal hourly rates for work of this character. The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $452,819.75.

48.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

16

49.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period December 1, 2011 through December 31, 2011:  (a) authorizing compensation in the amount of $452,819.75 (80% of which equals $362,255.80) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $38,756.34, for a total of $491,576.09; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   January 31, 2012
         New York, New York

                              CHADBOURNE & PARKE LLP

                              By: _____
                                 Douglas E. Deutsch
                                 (A Member of the Firm)

                              Chadbourne & Parke LLP
                              30 Rockefeller Plaza
                              New York, New York  10112
                              (212) 408-5100

                              Co-Counsel to The Official Committee of
                              Unsecured Tribune Company, et al.

## VERIFICATION

STATE OF NEW YORK   :
                         :  ss:
COUNTY OF NEW YORK  :

      Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

      (a)     I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

      (b)     I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

      (c)     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

                                                 _____
                                               Douglas E. Deutsch

Sworn to before me this
31st day of January 2012

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4407655.1