# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 10472** |

## DEBTORS' LIMITED OBJECTION TO THE MOTION OF ANTHONY CONTE FOR (I) RELIEF FROM THE AUTOMATIC STAY AS TO MEDIA LIABILITY INSURANCE POLICY AND (II) MODIFICATION OF TRIBUNE COMPANY'S SCHEDULES OF ASSETS AND LIABILITIES

Tribune Company ("Tribune") and most of its wholly-owned subsidiaries, each of

which is a debtor and debtor in possession in the above-captioned chapter 11 cases (each a

"Debtor" and collectively, the "Debtors"), and its non-Debtor subsidiary Tribune ND, Inc.

("Tribune ND"), hereby file this limited objection (the "Limited Objection") to the pro se motion

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (9479); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

of Anthony Conte (Docket No. 10472) (the "<u>Motion</u>"), which Motion seeks entry of an order (i) granting relief from the automatic stay to permit the payment of proceeds from the media liability insurance policy that covers the claims asserted in the pending civil action commenced by Mr. Conte against non-Debtor Tribune ND in the United States District Court for the Eastern District of New York styled <u>Conte v. Newsday, Inc., et al.</u>, No. 06-Civ-4859 (JFB) (ETB) (the "<u>Conte Litigation</u>") and (ii) directing the Debtors to modify the schedules of assets and liabilities filed by Tribune to strike any references to Mr. Conte.  In support of this Limited Objection, the Debtors and Tribune ND rely on the attached Declaration of Jillian K. Ludwig (the "<u>Ludwig Declaration</u>").  In further support of this Limited Objection, the Debtors respectfully state as follows:

<u>PRELIMINARY STATEMENT</u>[2]

1.    The Debtors do not object to Mr. Conte's request for relief from the automatic stay, but do object to Mr. Conte's request that the Court direct Tribune to strike his name from its Schedules.  For the reasons set forth herein, Tribune ND does not believe that the Conte Litigation will implicate the media liability insurance coverage provided by the Policy.  However, given that Mr. Conte has raised the existence of the automatic stay as an impediment to resolving the Conte Litigation, the Debtors have not opposed lifting the automatic stay as to the Policy.  By contrast, there is no basis to require Tribune to strike Mr. Conte's name from its Schedules.  Mr. Conte has repeatedly sought to assert claims against Tribune in the Conte Litigation, and Tribune is entitled to receive a discharge of any such claims.  Tribune's discharge does not impair Mr. Conte's ability to pursue the Conte Litigation against Tribune ND, a non-Debtor.  Accordingly, the Debtors have attached a proposed form of order granting relief from

---

[2] Capitalized terms used but not defined in the Preliminary Statement are defined in the text below.

the automatic stay as to the Policy on the terms set forth therein, and denying all other relief sought by Mr. Conte.

**B.      Background to the Conte Litigation in the District Court**

2.      In his Third Amended Complaint, Mr. Conte has alleged that he owned a print advertising business that operated in the same markets as Newsday, a publication previously published by Tribune ND (which was formerly known as Newsday, Inc.). After Mr. Conte's business faltered, Mr. Conte commenced the Conte Litigation against Tribune ND and thirty-five (35) other defendants, pro se, on September 7, 2006. The Conte Litigation seeks damages in excess of $6.25 billion for defamation, tortious interference, and false advertising in violation of the Lanham Act. See Third Am. Compl., Conte v. Newsday, Inc., et al., No. 06-Civ-4859, Doc. No. 204 (E.D.N.Y. April 2, 2009). Mr. Conte's complaint alleges that Tribune ND and certain of the other defendants engaged in a series of "anti-competitive acts and unfair trade practices in an effort to harm him and put his publications out of business," including but not limited to reporting on a pending fraud action by certain route distributors against Mr. Conte. Id. The complaint further alleges that Tribune ND misappropriated trade secrets and trade dress, and engaged in other activities to prevent competition by Mr. Conte's business for print and advertising sales in the markets in which Newsday was published. Id.

3.      Tribune ND denies the allegations made in the Conte Litigation, including that Mr. Conte's business failure was attributable in any way to actions of Tribune ND, and disputes that Mr. Conte is entitled to any damages from Tribune ND. On March 25, 2010, the District Court granted, in part, Tribune ND's motion to dismiss the Conte Litigation as to claims raised by Mr. Conte for violations of the Racketeer Influenced and Corrupt Organizations Act, violations of the Sherman Act, violations of the Electronic Communications Privacy Act, slander, and injurious falsehoods. See Conte v. Newsday, Inc., et al., No. 06-Civ-4859

3

(E.D.N.Y. Mar. 25, 2010).  Discovery commenced thereafter and was certified complete on April

12, 2011, subject to the resolution of certain outstanding discovery disputes.  By order of the

District Court and on consent of the parties, Mr. Conte was permitted to amend the complaint to

add a cause of action for tortious interference with prospective economic advantage. See id. at

Doc. No. 413 (E.D.N.Y. Sept. 13, 2011).

    4.  As described below, Mr. Conte has been sent numerous notices regarding

the commencement of the Debtors' chapter 11 cases.  Notwithstanding such notices,

commencing in December 2010, Mr. Conte filed twelve separate letter motions with the District

Court, seeking to amend his complaint in the Conte Litigation to name Tribune as a defendant.

See Conte v. Newsday, Inc., et al., No. 06-Civ-4859, Doc. Nos. 271, 281, 289, 294, 297, 301,

303, 310, 348, 401, 403, 404 (E.D.N.Y.).  Tribune ND opposed these efforts on the merits, i.e.,

that there was no basis in law or fact to support a claim against Tribune.  Oral arguments on Mr.

Conte's motions to amend were held on September 13, 2011.  The District Court denied Mr.

Conte's motions for leave to amend the complaint to name Tribune as a defendant by minute

order.  See id. at Doc. No. 413 (E.D.N.Y. Sept. 13, 2011).  Mr. Conte promptly filed a motion for

reconsideration, see id. at Doc. No. 414 (E.D.N.Y. Sept. 14, 2011), and subsequently renewed

his request to amend by letter motions, see id. at Doc. Nos. 453, 459.  At a hearing held on

February 1, 2012, the District Court denied, by oral ruling, an appeal brought by Mr. Conte of

certain discovery rulings and Mr. Conte then withdrew his outstanding requests to add Tribune

as a defendant.  See id. at Doc. Nos. 470, 471 (E.D.N.Y. Feb. 7, 2012).  At that same hearing, the

District Court scheduled proceedings on summary judgment.  Opening briefs on motions for

summary judgment are due on March 16, 2012 and arguments thereon are scheduled to occur in

September 2012.  Tribune ND and the remaining defendants intend to seek summary judgment

on all remaining counts in the Conte Litigation in accordance with the District Court's schedule.

**C.**      **The Debtors Do Not Oppose Granting Relief From the Automatic Stay as to Insurance Covering the Conte Litigation Against Non-Debtor Tribune ND**

5.      Mr. Conte seeks relief from the automatic stay as to the media liability

insurance policy number 8171-0293 (the "Policy") issued to Tribune, on behalf of itself and its

subsidiaries, by Executive Risk Indemnity Inc. (the "Insurer"), which is applicable to the Conte

Litigation.  (See Motion at 2.)  The Policy covers media liability claims against the publication

and broadcasting businesses operated by the Debtors and their non-Debtor affiliates, including

Tribune ND.[3]  Because the Policy was issued to Tribune and covers numerous Debtor entities as

insureds, the Debtors and Tribune ND do not dispute that the automatic stay, 11 U.S.C. § 362(a),

may apply to the Policy as a technical matter.  For the reasons that follow, the Debtors do not

oppose lifting the automatic stay as to the Policy.[4]

6.      As stated on the face of the Policy, any loss covered by the Policy is

subject to a $1 million self-insured retention.  (See Motion, Ex. E.)  The self-insured retention

does not include Tribune ND's costs of defending the Conte Litigation.  In other words, Tribune

ND must expend $1 million in actual payments on account of settlement or judgment of the

Conte Litigation (excluding any costs incurred in defense) before any obligation on the part of

the Insurer is triggered to pay a covered claim.

---

[3] The media liability coverage provided by the Policy is a separate line of coverage from the Debtors' general liability insurance policies or other insurance policies, such as the directors and officers liability policies and the fiduciary liability policies.

[4] Neither the Debtors nor Tribune ND believe that the Conte Litigation raises the possibility of exhaustion of the media liability coverage applicable to the Debtors and their non-Debtor affiliates or that lifting the automatic stay in this instance will affect or impair the Debtors' ability to satisfy media liability claims asserted against them in their bankruptcy proceedings.

46429/0001-8290202v1

7.     Based on its analysis of the third amended complaint filed in the Conte Litigation, the factual circumstances of the case, and the discovery completed in the case, Tribune ND does not value the Conte Litigation in an amount that would approach its $1 million self-insured retention for purposes of either settlement or likely resolution at trial.  For that reason, Tribune ND does not believe the Policy coverage will be triggered by the Conte Litigation.  Tribune ND understands that Mr. Conte values the Conte Litigation at substantially higher than $1 million and that Mr. Conte believes that the automatic stay poses an impediment to a final and timely resolution of the Conte Litigation.

8.     Therefore, while the automatic stay would appear to have no impact on the Conte Litigation in the District Court, the Debtors do not oppose granting Mr. Conte relief from the automatic stay as to the Policy, to the extent it may apply, so that there is no perceived impediment to resolving the ongoing litigation imposed by Tribune's bankruptcy filing.  To that end, prior to the hearing on the Motion and this Limited Objection, the Debtors offered to Mr. Conte to submit an agreed form of order to the Court to provide for such relief.  (See Ludwig Declaration at ¶ 5.)  As of the date of this Limited Objection, Mr. Conte has refused to agree to the submission of an agreed order to the Bankruptcy Court on this issue.  (Id.)[5]

**D.     The Debtors Oppose Striking the Schedules To Exclude Mr. Conte.**

9.     Mr. Conte, in addition to requesting relief from the automatic stay, also requests that this Court direct the Debtors to strike any references to Mr. Conte in Tribune's

---

[5] The Debtors' consent in regard to lifting the automatic stay is not, and should not be construed as, an admission that they believe the Policy coverage will be triggered by the Conte Litigation.  In addition, in anticipation that the Insurer will request that any order of this Court modifying the automatic stay as to the Policy shall not modify any of the terms of the Policy, consistent with the Insurer's customary practice, the Debtors have incorporated such a provision in the proposed form of order attached hereto.  See, e.g., Docket No. 2077 (Order Modifying the Automatic Stay to Allow Payment and Advancement Under Fiduciary Liability Insurance Policies); Docket No. 8515 (Order Modifying the Automatic Stay to Allow Payment and Advancement of Defense Costs, Fees, and Expenses Under Directors and Officers Insurance Policies).

46429/0001-8290202v1

schedules of liabilities. (See Motion at 1.) Although the Federal Rules of Bankruptcy Procedure authorize the Bankruptcy Court, after notice and hearing, to order a debtor's schedules to be amended, see Fed. R. Bankr. P. 1009(a), Mr. Conte has offered no colorable grounds to do so, and more importantly, Mr. Conte's actions provide compelling grounds not to do so. For the reasons that follow, the request to strike Tribune's schedules should be denied.

> **(i)       Tribune Intentionally Listed Mr. Conte on the Schedules, in Good Faith**

10.       On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket Nos. 567-789), which were subsequently amended on April 13, 2009 (Docket Nos. 894-957), June 12, 2009 (Docket Nos. 1343-1453), March 2, 2010 (Docket Nos. 3548-3599), May 14, 2010 (Docket Nos. 4388), and January 28, 2011 (Docket Nos. 7661-7671) (collectively, the "Schedules"). Although Tribune had not been named as a defendant in the Conte Litigation when the Schedules were first filed on March 23, 2009, Tribune listed Mr. Conte on the Schedules as a potential creditor with a contingent, unliquidated, and disputed claim.[6]

11.       In preparing the Schedules, Tribune's professionals, advisors, and personnel engaged in a deliberative process to identify all pending litigation against Tribune and its subsidiaries, and determine the relative risks, based on the posture of that litigation and other circumstances, that a claimant might seek to assert a claim against any of the Debtors on account of that litigation. Based on the foregoing analysis, Tribune listed numerous entities on its own Schedules, including Mr. Conte, that had asserted claims against its operating subsidiaries.

---

[6] The effect of listing a potential creditor with a contingent, unliquidated, and disputed claim is to place the onus on such potential creditor to file a proof of claim and prove liability. See Fed. R. Bankr. P. 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest . . . ; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.")

Tribune's decision to list Mr. Conte on the Schedules was not an admission of any liability on the part of Tribune.[7] Thus, Tribune's Schedules listed Mr. Conte on the one hand to identify all potential claims and thereby maximize Tribune's discharge, and on the other hand so that Mr. Conte would be provided with notice, due process, and an opportunity to appear and file a claim in Tribune's bankruptcy proceeding in the event that he believed that there was a basis for any liability on the part of Tribune with respect to the Conte Litigation.

12.    To that end, Mr. Conte was served with the notice of commencement of the Debtors' chapter 11 cases and notice of the bar date established by this Court for the filing of proofs of claim against the Debtors.  (See Affidavits of Service at Docket Nos. 154 and 1073, respectively.)  Mr. Conte has additionally been served with at least seven (7) other notices concerning Tribune's bankruptcy case since its commencement, as reflected on this Court's docket.  (See, e.g., Affidavits of Service at Docket Nos. 4305, 4999, 5243, 5372, 6288, 7813, 7890).[8]  Mr. Conte did not file a proof of claim against Tribune or any of the Debtors nor has he sought any other relief in the Debtors' bankruptcy proceedings prior to filing the Motion.

**(ii)    Striking The Schedules Will Have No Impact On Tribune's Discharge**

13.    Mr. Conte states in the Motion that he believes that "Tribune Company is fraudulently attempting to discharge my claims that are pending solely against its non-filing subsidiary Tribune ND . . . ."  (Motion at 1.)  This reveals Mr. Conte's misunderstanding of basic bankruptcy law.  As Mr. Conte acknowledges, Mr. Conte's claims are solely against Tribune

---

[7] The Debtors advised all of their creditors that listing a claim on the schedules did not constitute an admission of liability as to such claim by the Debtors.  (See Docket No. 577, Global Notes to Tribune Company Schedules at 7 ("Listing a claim does not constitute an admission of liability by the Debtors.")

[8] Each of these additional notices relate to the proceedings on confirmation of a plan of reorganization for the Debtors, including notices of hearings on the disclosure statement and confirmation, and notices concerning the filing of amendments to the plans of reorganizations proposed for the Debtors.

46429/0001-8290202v1

ND, a non-Debtor.  It is axiomatic that the discharge of a debtor cannot impact the liability of a

non-debtor.  As the Third Circuit stated in First Fidelity Bank v. McAteer:

> While it is true that the bankruptcy court's confirmation of the
> amended plan binds the debtor and all creditors vis-a-vis the
> debtor, it does not follow that a discharge in bankruptcy alters the
> right of the creditor to collect from third parties. Section 524(e) [of
> the Bankruptcy Code] specifically limits the effect of a discharge.
> It provides that ". . . discharge of a debt of the debtor does not
> affect the liability of any other entity on, or the property of any
> other entity for, such debt." This section assures creditors that the
> discharge of a debtor will not preclude them from collecting the
> full amount of a debt from co-debtors or other liable parties.

985 F.2d 114 (3d Cir. 1993)at 118 (quoting 11 U.S.C. § 524(e)) (emphasis added).  Thus, listing

Mr. Conte's claims on the Schedules will not prejudice Mr. Conte's claims against Tribune ND

in any way, because Tribune's discharge has no impact on Mr. Conte's ability to pursue his

claims against Tribune ND.  Debtors' counsel has, on multiple occasions, tried through telephone

calls and emails to explain this fact to Mr. Conte in an effort to consensually resolve the Motion.

(See Ludwig Declaration at ¶ 4.)  By contrast, Tribune has no liability on account of the Conte

Litigation and is entitled to receive a discharge of any potential claims that Mr. Conte may have

sought to assert against Tribune.

> ### (iii)    Maintaining the Schedules is Necessary Because Mr. Conte has Repeatedly Attempted to Name Tribune as a Defendant in the Conte Litigation

14.    Mr. Conte's repeated attempts to draw Tribune into the Conte Litigation

only underscores Tribune's prudence in listing him on the Schedules and the necessity of

maintaining Tribune's Schedules as originally filed.

15.    In an effort to consensually resolve this portion of the Motion, Tribune has

offered to amend the Schedules to delete Mr. Conte's name in return for Mr. Conte granting a

written unconditional waiver and release of any claims he may have against Tribune.  (See

9

Ludwig Declaration at ¶ 5.)  However, Mr. Conte has refused to accept this offer to resolve the Motion.  (Id.)  Given that Mr. Conte has persistently pursued relief in the District Court to assert his claim against Tribune, and Mr. Conte's recent refusal to release any claims he might have against Tribune, Tribune has a legitimate reason for opposing Mr. Conte's request to strike his name from Tribune's Schedules.  Tribune is entitled to secure a discharge of all actual and potential prepetition claims identified on the Schedules, including any claims Mr. Conte might seek to assert against Tribune in this or any other forum.  Striking Mr. Conte's name from the Schedules could potentially add to Mr. Conte's confusion and misunderstanding, as a pro se litigant, regarding the impact of the bankruptcy proceedings in discharging his claims against Tribune and might only invite Mr. Conte to renew his attempts in the District Court to assert meritless claims against Tribune.

## CONCLUSION

16.    For the foregoing reasons, the Debtors request that the Court (a) grant relief from the automatic stay as to the Policy, to the extent it applies, and (b) deny Mr. Conte's request to have the Debtors modify Tribune's Schedules, on the terms set forth in the proposed order submitted herewith.

46429/0001-8290202v1

Dated: Wilmington, Delaware
      February 8, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: */s/ J. Kate Stickles*_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

CH1 6416721v.5
46429/0001-8290202v1