# EXHIBIT C

# PPI Contract

FULLY EXECUTED

## AGREEMENT
### between
### KTLA INC. AND PERSISTENCE PAYS, INC.

THIS AGREEMENT is entered into as of October 14, 2007 between KTLA INC. ("KTLA"), a California corporation, 5800 Sunset Boulevard, Los Angeles, California 90028 and PERSISTENCE PAYS, INC. ("Company"), 4158 Farmdale Avenue, Studio City, California 91604.

1. **SERVICES:**

   (a) Company agrees to furnish the services of **Marta Waller** as a reporter, staff newsperson, commentator, correspondent, analyst, and in any like capacity, including anchoring on a fill-in basis as needed, on such programs as KTLA may determine in the field of news and public affairs programming, for broadcast over television, cable television, radio, the Internet and other media as designated by KTLA. As of the inception of the Term, Artist will be assigned primarily as a special projects reporter, i.e., preparing series, features and non-"hard news" stories. Artist also may be assigned general assignment reporting duties from time to time, but not on a regular basis. Artist's base of operation will be in Los Angeles County; however, Artist may be assigned to report on news events that take place outside Los Angeles County. Company agrees that Artist will complete and perform all of the services and will comply with the terms and conditions of this Agreement.

   (b) Company agrees that Artist will render services during the Term as, when, where and in the manner specified and required by KTLA, including prompt compliance with all instructions, policies, directions and requests from time to time given by KTLA to the full extent of Artist's ability, in a conscientious manner. Company agrees that Artist will consult with KTLA's News Director, and give reasonable consideration to KTLA's views, prior to making any major changes in Artist's on-air appearance. Artist's normal work schedule will be an eight-hour shift on five consecutive days a week. In unusual cases of breaking news or other unexpected staffing demands, Artist may be required to perform services outside her normal shift, or on a sixth or seventh day in a workweek. Company agrees that Artist will observe all rules of conduct established by KTLA from time to time in the conduct of its business.

   (c) Company agrees that Artist will cooperate, at KTLA's request, in activities to promote the programs in which she appears under this Agreement, including program material, in-shift newsbreaks, promotional announcements,

KTLA 11/27/07

on-air interviews and, subject to Artist's reasonable availability, other guest or promotional appearances, all without additional compensation.

## 2. TERM:

The term of this Agreement ("Term") will begin as of October 18, 2007 and will continue until October 17, 2008.

## 3. PAYMENT:

(a) In full consideration for Artist's services under this Agreement, including the use of Artist's services in the media described in 1(a) above, and as consideration for the materials and rights granted to KTLA and for the representations and warranties made by Company and Artist herein, KTLA will, upon the condition that Company and Artist fully keep and perform all of the covenants, conditions and obligations to be kept or performed by them hereunder, pay to Company and Company will accept payment at the annualized rate of $200,000.

(b) The payments set forth above shall be made in installments every other week (in accordance with KTLA's standard payroll and accounting procedures), less any withholdings required by law.

(c) The payments set forth above cover all of Artist's services during a five-day, forty-hour workweek, including holidays. Artist may be required to work more than eight hours in a day during such five-day workweek and/or Artist may be required to work a sixth and/or seventh day in any workweek. If Artist is required to work more than 40 hours in any workweek (other than on a sixth or seventh day), then KTLA will pay Company at the overtime rate of $96.15 for each hour worked by Artist beyond 40 in such week, or the minimum overtime compensation required pursuant to the KTLA/AFTRA Staff Newspersons Agreement, if greater. For each sixth or seventh day worked in any workweek, Artist will receive a compensatory day off, in lieu of the above amounts, to be scheduled by mutual agreement of Artist and KTLA.

## 4. TIME OFF AND CLOTHING ALLOWANCE:

(a) Company will not be required to furnish Artist's services for four weeks during the Term, or on holidays in accordance with applicable provisions

of the then-current KTLA/AFTRA Staff Newspersons Agreement. Scheduling of these dates must be approved in writing by the News Director.

(b) KTLA will pay Company $3,000 for the purchase of clothing to be worn during Artist's appearances on KTLA and at private or public appearances required or requested of Artist by KTLA. KTLA will have the right to approve selection of clothing for appearances by Artist.

## 5. TRAVEL EXPENSES:

KTLA will reimburse Company for reasonable and authorized out-of-pocket expenses actually and necessarily incurred in the performance of Artist's assigned duties in accordance with KTLA's expense reimbursement policy and procedures.

## 6. MATERIAL FURNISHED:

Material furnished by Company and Artist must comply with KTLA's rules and policies and those of the Federal Communications Commission, will be subject to KTLA's prior approval, and shall not violate the civil or proprietary rights of others.

## 7. NAME, LIKENESS, ETC.:

Artist's name, sobriquet, biography, picture, portrait, caricature, voice and likeness may be used in advertising and publicizing KTLA and the programs in which Artist appears hereunder, but not as an endorsement or testimonial.

## 8. EXCLUSIVITY:

The services of Artist will be exclusive to KTLA during the Term, except with the prior written approval of the KTLA's General Manager. Except as provided in the preceding sentence, Company agrees that Artist shall not perform services in any capacity for any radio or television (as defined in paragraph 23 below) entity whose programs are received within the Los Angeles Designated Market Area ("DMA," as defined by Nielsen Media Research, Inc.) or for any other medium of news, information or entertainment. It is understood and agreed that Artist's services for KTLA shall, at all times, be first priority, and that KTLA may withhold approval if KTLA believes Artist's rendering services for any proposed

third party would be detrimental to, competitive with or interfere with the satisfactory performance of Artist's services for KTLA.

9. **UNION AGREEMENTS AND COMPLIANCE:**

(a) This Agreement is subject to the applicable terms of the KTLA/AFTRA Staff Newspersons Agreement. KTLA will be entitled to all of the rights, privileges and benefits conferred upon KTLA or which KTLA is not prohibited from acquiring thereunder, including, without being limited to, the right to apply that portion of the amounts payable to Company in excess of union minimum scale (or a multiple of scale, as the case may be) against any and all sums that might otherwise be payable for Artist's services and because of rights exercised by KTLA.

(b) Artist must remain a member in good standing of AFTRA, it being understood that Artist's failure to be a member of AFTRA in good standing will be grounds for termination of this Agreement and Artist's services. If KTLA terminates this Agreement as a result of Artist's failure to be a member of AFTRA in good standing, KTLA will have no liability of any kind to Company or Artist, other than KTLA's obligation to pay Company as provided herein, for services rendered up to and including the termination date.

10. **RIGHTS:**

(a) As between KTLA, Company and Artist, KTLA will become and will be the exclusive, perpetual and unencumbered owner forever of:

(i) all results and proceeds of Artist's services hereunder and of any material furnished by Company and Artist hereunder and of all rights with respect thereto; and,

(ii) the programs for which Artist's services and material are furnished and all recordings thereof and all rights with respect thereto for any and all purposes whatsoever.

Materials written, prepared or performed by Artist under this Agreement will be considered, for purposes of copyright law, "works made for hire" for KTLA. Without limiting the foregoing, Company and Artist irrevocably assign to KTLA all rights, including the copyright, in such materials, effective upon their creation.

(b) Without limiting the foregoing, as between KTLA, Company and

4

Artist, KTLA will have the unlimited right (including common law, statutory, treaty and moral rights) perpetually throughout the world in any manner and by any method or means and in any and all media (whether now known or contemplated or hereafter discovered, invented or used), to exploit the programs, recordings and material or any portion or portions thereof. Exploitation may include unlimited uses in all forms of reproduction, transmission, exhibition, display and presentation, including television, theaters, rental libraries, devices marketed for the home (disc, tape, cartridges, cassettes, etc.), books, periodicals, on-line and internet uses and all other types of exploitation now existing or hereafter devised.

(c) KTLA may at any time and from time to time in connection with such exploitation cut, edit, add to, subtract from, arrange, rearrange, or otherwise modify the program or programs, recordings or material or take excerpts therefrom or combine all or any portion thereof with material of others, and Company and Artist waive all rights to approve or object thereto. Anything herein to the contrary notwithstanding, KTLA will have no obligation actually to broadcast or otherwise exhibit any programs in which Artist appears or otherwise renders services, it being understood that KTLA's obligations will be fully satisfied by payment (subject to all of the terms, conditions and exceptions set forth in this Agreement) to Company of the sums set forth in this Agreement.

## 11. TERMINATION:

(a) In addition to KTLA's other rights of termination, KTLA will have the right to terminate this Agreement for just cause. "Just cause" will include, without being limited to, material breach of this Agreement, insubordination, dishonesty, intoxication, resignation, failure to remain a member in good standing of AFTRA, or Artist's failure, refusal, or neglect to perform her services at the times and places and in the manner required or to fulfill her other obligations under this Agreement.

(b) In addition to KTLA's other rights of termination, if Artist fails to conduct herself with due regard to social conventions or public morals or decency, or if Artist commits any act which degrades Artist or brings Artist into public disrepute, contempt, scandal or ridicule, or if Artist has previously so conducted herself and information in regard thereto becomes public or comes to the attention of KTLA, KTLA may terminate this Agreement without liability.

(c) Any termination of this Agreement under any of the terms or provisions hereof, or by reason of any legal right on the part of either party, will not diminish, impair or otherwise affect any of the rights granted to KTLA in this Agreement with respect to the results and proceeds of the performance of Artist's

services prior to such termination, and the use of Artist's name, voice and likeness in connection therewith. KTLA will continue to own all such rights, including advertising and incidental rights in connection therewith.

(d) KTLA's use of Artist's services after termination or expiration of this Agreement will not be deemed a reinstatement or renewal of this Agreement without the written agreement of all parties.

## 12. NO OBLIGATION TO PRODUCE, ETC.:

KTLA does not agree, and Company and Artist acknowledge that KTLA undertakes no obligation to produce, complete, release, distribute, advertise, or exploit any program, or to utilize Company's or Artist's services or material in any program produced by KTLA. Company and Artist release KTLA from any liability for any loss or damage of any nature whatsoever that Company or Artist may suffer by reason of KTLA's failure to produce, complete, release, distribute, advertise or exploit any such program, or to use the services of Artist in the programs produced.

## 13. INCAPACITY OF ARTIST:

(a) KTLA need not make payments under this Agreement during or with respect to any period that Artist is incapacitated, by illness or otherwise, from performing the required services under this contract, except as provided in the then-current KTLA/AFTRA Staff Newspersons Agreement with respect to sick days and short-term disability, or as otherwise required by law. Artist will be deemed to be "incapacitated, by illness or otherwise" if any one or more of the following occurs:

    (i) Artist is prevented by accident, illness or other cause from properly performing her essential services at the times and places and in the manner required hereunder.

    (ii) Artist suffers impairment of voice or of locomotive or mental capabilities affecting adversely her ability to perform properly her essential services at the times and places in the manner required hereunder.

In such an event, and in addition to any other remedies of any kind or nature: (1) KTLA may suspend the operation of this contract during such period of

non-performance and the Term will be extended accordingly; and/or (2) KTLA may terminate this Agreement as to all further services by giving Company notice to such effect; *provided*, that KTLA may exercise its right to terminate under clause (2) only if the occurrence described in (i) or (ii) above continues for at least 45 days. This Agreement will terminate automatically in the event of Artist's death. Upon termination of this Agreement by KTLA under this or any other paragraph of this Agreement, KTLA will have no further payment obligations to Company or Artist except with respect to services rendered prior to the effective date of termination.

(b) Artist will not have the right to, and Company and Artist agree that Artist will not, render services elsewhere in or in connection with the field of news, sports or entertainment, either for or on behalf of herself or any other person, during any time that Artist fails, refuses, neglects or is unable to perform hereunder.

## 14. HEALTH & RETIREMENT FUNDS:

KTLA will contribute to the AFTRA health and retirement funds a sum equal to the minimum amount required to be paid by KTLA pursuant to applicable provisions of the KTLA/AFTRA Staff Newspersons Agreement.

## 15. FORCE MAJEURE:

If, due to labor disputes, government regulations, failure of broadcasting facilities due to war or other calamity or other conditions beyond KTLA's control of a similar or dissimilar nature (all collectively referred to as "force majeure"), KTLA in good faith believes it is unable fully to utilize Artist's services, KTLA will have the right, upon 24 hours' prior notice to Company, to suspend Artist's services for the duration of the force majeure or for any part thereof, and no payments will be made or will accrue to Company during the suspension period; *provided*, that the suspension will end as soon as the force majeure terminates. Should any suspension under this paragraph exceed four weeks, KTLA may terminate this Agreement by written notice to Company.

## 16. "PLUGOLA" & "PAYOLA":

Company and Artist understand that it is a federal offense, unless disclosed to KTLA prior to broadcast, to accept or agree to accept anything of value, other

than the amounts payable to Company under this Agreement, to promote any product, service or venture on the air. The attached Affidavit is made an essential part of this Agreement.

## 17. INSURANCE:

KTLA may, during the Term, apply in its own name or otherwise, but at its own expense, for life, health, accident or other insurance covering Artist. KTLA may take out such insurance for any sum which KTLA may deem necessary to protect its interest under this Agreement. Company and Artist will have no right, title or interest in or to such insurance, but Artist will nevertheless assist KTLA in procuring and maintaining it by submitting from time to time to customary medical, physical and other examinations and by giving such information and signing such applications, statements and other instruments as reasonably may be required by the insurance company or companies.

## 18. INDEMNITY:

(a) KTLA will defend, indemnify and hold Company and Artist harmless against claims, loss or liability, including attorneys' fees, resulting from programming furnished by KTLA, its employees and third parties.

(b) Except when KTLA's indemnity of Artist is applicable, Company and Artist will jointly and severally indemnify and hold KTLA harmless against claims, loss or liability, including attorneys' fees, resulting from material prepared or furnished by Company or Artist. KTLA's broadcast of material furnished by Company or Artist will not constitute a waiver of KTLA's right to indemnification.

(c) Upon notice to an indemnified party of a claim, demand or action, the indemnified party will promptly notify the indemnifying party, and if the indemnified party requests, the indemnifying party will assume the defense of the claim, demand or action against the indemnified party and will, upon the request by the indemnified party, and at any time, allow the indemnified party to participate in the defense of the claim, demand or action at her or its own expense, subject to a duty at all times to cooperate in the defense or settlement of the claim, demand or action. If the indemnified party settles any claim, demand or action without the prior written consent of the indemnifying party, the indemnifying party will be released from all liability under the indemnity.

(d) The termination or expiration of this Agreement will not affect the continuing obligations of the parties as set forth in this paragraph.

## 19. UNIQUE SERVICES:

KTLA, Company and Artist agree that the services and material to be furnished by Artist and the rights granted by Artist under this Agreement are of a special, unique, unusual, extraordinary and intellectual character which gives them a peculiar value, the loss of which cannot be adequately or reasonably compensated by damages and that Artist's failure to perform Artist's obligations as provided in this Agreement will cause KTLA irreparable injury and damage. In addition to any other right or remedy given to KTLA in this Agreement, KTLA will be entitled to injunctive or equitable relief against Company and Artist to prevent Company's or Artist's failing to perform hereunder, or to prevent Company's or Artist's performing for others or granting such rights to others. Resort by KTLA to equitable relief will not be construed as a waiver of any other rights KTLA may have against Company or Artist for damages or otherwise. KTLA's rights under this Agreement are cumulative, and the exercise of one right will not be deemed to preclude the exercise of any other rights.

## 20. FREEDOM TO CONTRACT:

Company and Artist represent and warrant that they have the right to enter into this Agreement and to grant the rights herein granted, that Company and Artist have not made and will not make any contract or other commitment that would conflict with the performance of Artist's obligations under, or KTLA's full enjoyment of the rights granted in, this Agreement. Company and Artist will not do any acts or enter into commitments in derogation of the rights granted in this Agreement. Company and Artist indemnify KTLA against any claim for fees or commissions by any agent or representative of Company or Artist or by any other person or entity with respect to this Agreement. Company represents and warrants to KTLA that it is, and throughout the Term will be, a corporation in good standing in the State of California.

## 21. INDEPENDENT CONTRACTORS:

KTLA and Company are entering into this agreement as independent contractors, rather than as employer and employee. Company will be responsible for all obligations imposed by law on employers, including filing federal and state

tax returns on the basis of its status as an independent contractor, since neither Company nor Artist will be treated as KTLA's employee for federal, state or local income or employment tax purposes. Company agrees to reimburse KTLA if KTLA becomes liable for payment of any such amounts; alternatively, KTLA will have the right to deduct them from future payments due to Company or Artist.

## 22. ASSIGNMENT:

Company and Artist recognize that Artist's services and the material to be furnished to KTLA are of a unique, extraordinary, intellectual and personal character which gives them a peculiar value, and therefore agrees that this Agreement may not be assigned by Company or Artist. Company and Artist agree, however, that KTLA may assign this Agreement to a successor in interest to KTLA's FCC license, or to a parent, subsidiary or affiliated company.

## 23. DEFINITION — "TELEVISION":

As used in this Agreement, "television" will include, without limitation, all present and future forms of transmission of live or recorded sounds and images through the air or by wire, satellite, digital transmission or any other method intended for any type of reception (including, without limitation, broadcast, cable, microwave, satellite, digital, open video system and similar or different systems with or without fee) in any place whatsoever, whether for reception free or by subscription or other charge, or for reception at places where admission is charged, and will include recordings and transmissions of images prepared for sale, rental and other modes of distribution to the public.

## 24. FIRST NEGOTIATION AND FIRST REFUSAL:

(a) At KTLA's request at any time during the Term, and prior to commencing negotiations or entering into any agreement with any third party, Company and Artist will negotiate in good faith with KTLA with respect to the terms and conditions for Artist's rendering services on behalf of KTLA subsequent to the Term.

(b) If, upon the expiration of the Term, Company, Artist and KTLA have not agreed with respect to Artist's services subsequent to the Term, then for a period of six months from the expiration date of the Term or six months from Artist's last day of work for KTLA, if later, Company and Artist shall not furnish

or agree to furnish Artist's services in television to any third party in the Los Angeles DMA without giving KTLA the opportunity to enter into an agreement with Company and/or Artist for Artist's services on terms and conditions at least as favorable to KTLA as those offered to Company and/or Artist by any such third party (which Company and/or Artist is willing to accept) or offered by Company and/or Artist to such third party (which he, she, they or it is willing to accept).

(c) KTLA will have ten (10) days from the date of receipt of written notice from Company of any such offer (containing full details in regard thereto, including the identity of the third party and all material terms) in which to accept or reject the offer. If KTLA accepts the offer, KTLA will not be required to meet any provisions as to employee benefits, title or position, time or day of broadcast, place of performance or sponsor, or which contravenes KTLA's legal responsibilities. If KTLA rejects the offer or fails to accept it within the specified time, Company and Artist will be free to furnish or agree to furnish Artist's services to the third party. If Company and Artist do not accept the offer, the terms of this paragraph will apply to any subsequent offer received by or made to Company or Artist. KTLA's failure to accept will not constitute a waiver of its first refusal rights as to subsequent offers.

## 25. NOTICE:

Any notice given under this Agreement must be in writing and must be given in person or by postpaid mail, facsimile transmission or overnight delivery service, sent to the address on page 1 of this Agreement or to such other address as either party may specify in writing. Company must keep KTLA apprised of Artist's current home address throughout the Term. Notices will be deemed given on the date of mailing, transmission by facsimile or delivery to an overnight service.

## 26. WAIVER:

The waiver of any term of this Agreement or of any breach by any party will not constitute a waiver of any other term of this Agreement or of any preceding or subsequent breach of this Agreement.

## 27. ENTIRE AGREEMENT:

This Agreement constitutes the entire agreement between KTLA, on the one hand, and Company and Artist, on the other. It may not be changed, modified,

renewed or extended, and no covenant or provision may be waived, except by an agreement signed by both parties. If any provision of this Agreement is deemed unenforceable by operation of law or otherwise, then this Agreement will be deemed modified to the extent, but only to the extent, necessary to bring it into compliance with applicable laws, rules and regulations. Paragraph headings as used in this Agreement are for convenience only and are not a part of this Agreement and may not be used in any manner to interpret or otherwise modify any provision of this Agreement. This Agreement will be construed in accordance with the laws of the State of California applicable to contracts to be fully performed within the state.

KTLA INC.

By _____
Vincent A. Malcolm
Vice President/General Manager

Agreed:

PERSISTENCE PAYS, INC.

By _____

## AFFIDAVIT

1. I understand it is the policy of KTLA Inc. to prohibit all employees and other on-air talent from accepting any money, service or other valuable consideration from anyone (other than the company) for the broadcast of any material over KTLA.

2. I understand it is the policy of KTLA Inc. to prohibit all employees and other on-air talent from (a) engaging in any outside business or other economic activity that would create a conflict of interest in the selection of broadcast matter; (b) accepting any favors, loans, payment, extraordinary entertainment or other consideration from persons seeking the airing of any broadcast matter; and (c) promoting or causing to be promoted over the air (except in a commercial announcement recorded as such in the station log) any activity or matter in which they have a direct or indirect financial interest.

3. **Please circle the appropriate response to the next three items.** If the answer to any items is in the affirmative, please explain the details on a separate attachment.

   a. I [DO] [DO NOT] have any direct or indirect financial interests that involve a possible conflict of interest in the selection of broadcast material on KTLA.

   b. I [HAVE] [HAVE NOT] promoted or caused to be promoted over the air (other than by means of a commercial announcement recorded as such in the station log) any activity or matter in which I have a direct or indirect financial interest.

   c. I [HAVE] [HAVE NOT] accepted, directly or indirectly, any favors, loans, payment, extraordinary entertainment or other consideration from any person seeking the airing of any broadcast matter.

4. I agree to comply with the policies set forth in items 1 and 2 above, and will immediately notify the News Director in writing of any future matters referred to in item 3 above.

_____
Marta Waller

12/06/07
Date signed

# MARTA WALLER

October 14, 2007

KTLA Inc.
5800 Sunset Boulevard
Los Angeles, California 90028

Gentlemen:

I have read, am familiar with, and approve the foregoing agreement, dated October 14, 2007, between Persistence Pays, Inc. and KTLA Inc. (the "Agreement").

In order to induce you to enter into the Agreement, and in consideration of your doing so, I agree to perform the services of the "Artist" as provided in the Agreement, and will grant such rights and observe such restrictions as may be necessary to enable Persistence Pays, Inc. to comply with the provisions of the Agreement. I agree to be personally bound by the provisions of the Agreement that apply to me, or that impose obligations or warranties on Persistence Pays, Inc.

Very truly yours,

*/s/ Marta Waller*

Marta Waller