IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re: : Chapter 11 Cases
: Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al., : (Jointly Administered)
:
Debtors. : **Re: Docket No. 10949**
---------------------------------------------------------x

### OBJECTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK TO MOTION OF THE RETIREES TO CLARIFY OR MODIFY ALLOCATION DISPUTES SCHEDULING ORDER TO PERMIT TM RETIREES TO CALL AN EXPERT WITNESS AT THE HEARING ON THE ALLOCATION DISPUTES

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company ("Tribune" and with its debtor subsidiaries, the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A., by and through its undersigned counsel, hereby oppose the *Motion of the Retirees to Clarify or Modify Allocation Disputes Scheduling Order to Permit TM Retirees to Call an Expert Witness at the Hearing on the Allocation Disputes* [Dkt. No. 10949] (the "Motion"), and respectfully represent as follows:[1]

### OBJECTION

The current untimely request by the TM Retirees (the "Retirees") to call an expert witness at the Allocation Disputes Hearing – in which the Retirees bear the burden of proof – violates the heavily negotiated Allocation Disputes Order, in which the Retirees actively participated, and prejudices Law Debenture. Moreover, the permission to call the untimely expert witness, first identified fifteen days after such disclosure was due, threatens to disrupt and

---

[1] Capitalized terms have the meanings in the Motion or the *Order Establishing Scheduling For (1) Resolution Of The Allocation Disputes And (2) Consideration Of DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion And Plan*, dated January 24, 2012 [Dkt. No. 10692] (the "Allocation Disputes Order") unless defined otherwise.

delay the carefully orchestrated scheduling procedures that allow for adjudication of the Allocation Disputes prior to the Solicitation/SDD Hearing, the Voting Deadline and the Confirmation Hearing.  And, inasmuch as the demand is for an expert witness, it should involve an expert report,[2] disclosure of expert reliance, further deposition, and likely one or more expert rebuttal witnesses, with the same burdens.

The Retirees seek to call an expert witness in support of the crux of their case-in-chief – that they are entitled to benefit from the subordination provisions of the PHONES Indenture and the EGI Subordination Agreement.  They argue that the need for an expert witness was not apparent to them until after the Preliminary Statements were filed and they reviewed the documents produced in discovery:

> [u]pon review and analysis of the Preliminary Statements and the documents produced by the Parties in discovery, the Retirees determined that the testimony of a certified public accountant would be necessary and appropriate to address accounting terminology in the EGI Agreement and the PHONES Indenture and accounting treatment in publicly filed financial statements of Times Mirror and Tribune with respect to the treatment of TM Retiree claims under the non-qualified benefit plans and the determination of the Allocation Disputes.

Motion, at ¶ 8.  The Retirees, however, do not – because they cannot – identify a single statement in the Preliminary Statements or a single document produced in discovery that revealed to them the need to hire an expert.  The so-called "accounting terminology" has been in the subordination agreements since they were written and has been at issue for months.  The Retirees merely state that they *now* realized a need for an expert to:

> (i)  address[] the meaning of the specific accounting terms "trade payables and accrued expenses" found in the definition of "Senior Obligations" in the EGI Agreement; and (ii) the accounting treatment by Times Mirror and Tribune of the TM Retiree claims under the non-qualified benefit plans as such treatment relates

---

[2]  As addressed below, the Retirees remarkably call a late expert and then state that they will provide no expert report.

> to the definition of Senior Indebtedness in the PHONES Indenture and the definition of Senior Obligations in the EGI Agreement.

Motion, at ¶ 12.  The Retirees' recent "discovery" of so-called accounting terms is as implausible as it is irrelevant.  Indeed, the Retirees were involved in this case during the first confirmation hearing when the Allocation Disputes were initially addressed, they were involved in negotiating the terms of the Allocation Disputes Order, they contended in their Preliminary Statement that the Retiree Claims constitute Senior Indebtedness under the PHONES Indenture and Senior Obligations under the EGI Agreement, and they produced the PHONES Indenture and EGI Subordination Agreement in their initial document production.  There is no reason that the Retirees could not have disclosed their intent to produce an expert witness (even if they had yet to retain a specific expert) in their Preliminary Statement.  Instead of not being aware of the issue or their desire to hire an expert, the Retirees simply chose to ignore it until two days before the discovery cutoff date.

And why did the Retirees wait until February 14 to retain an accountant and February 15 to inform counsel of the need for an expert witness?  The Preliminary Statements were filed on January 31 and the initial round of document production was completed no later than February 6.  *See* Allocation Disputes Order, at ¶¶ 7,8, 10, 13.  The disclosure of the need for an expert witness on February 15 was hardly prompt and the Retirees provide no reason for the additional delay other than Mr. Teitelbaum's representation that it took him awhile to find one.  Instead, the Retirees should have disclosed their desire to retain an expert as soon as their search began.  Otherwise, imagine the burden that would be imposed on those seeking to rebut an expert without a report and only a brief describing the so-called expert testimony on which to go.

The Retirees' reservation of rights argument does not help. In Law Debenture's Preliminary Statement (to which the Retirees misleadingly refer), Law Debenture simply reserved its right to call rebuttal witnesses; it never reserved the right to call a witness in its case in chief.  Yet, this is what the Retirees seek to accomplish.  Law Debenture, in fact, is not objecting to EGI-TRB LLC's identification of two witnesses on February 16, because EGI represents that both witnesses are rebuttal witnesses that may be called to refute the content of documents that Wilmington Trust Company may seek to introduce.  In contrast, here, the Retirees learned nothing new from discovery prompting a rebuttal witness.  They just decided that they want an expert to shoehorn their claims into two definitions to extract senior priority status; definitions known quite literally for years.  The Retirees lamentation of a short time period for the Allocation Disputes works against them.  First, they negotiated the time periods.  Second, a short time period requires that all parties adhere to schedules as a matter of fundamental fairness.  Deviation from that schedule magnifies the prejudice to Law Debenture.

And, assuming that they meant what they wrote, the Retirees will not even produce an expert report.  Instead, they simply aim "to include Mr. Belsky's findings in their opening brief such that parties would have ample opportunity to conduct discovery and include any response in their Response Briefs." Motion, at ¶ 13.  This means that Law Debenture is left wondering as to the Retirees expert testimony when it files its opening brief and then is left with only one week to respond to all other briefs, while having to take an expert deposition after the close of discovery and the filing of opening briefs.  And, if Law Debenture should decide it needs an expert to rebut Mr. Belsky's opinions, once it learns what they are, it will be left with no time to do so.  This is neither "ample" nor fair and must be allieviated.  The Retirees accuse Law Debenture of

litigation gamesmanship.  Gamesmanship?  Law Debenture thinks the reverse is the case.  If permitted, the Retirees proposal constitutes unfair litigation tactics.

Accordingly, the Retirees have not established that they have acted reasonably or diligently, nor have they demonstrated any cause (let alone good cause) to modify the Allocation Disputes Order.  The Court should deny the motion.  However, if the Court were to permit the witness, the Court should require an expert report be produced immediately to allow the parties the ability to address Mr. Belsky's opinions in their opening briefs, prepare for the deposition and to determine whether a potential rebuttal witness is needed.  And, if permitted, Law Debenture reserves its right to object to the relevance and admissibility of testimony as well as the competency of the so-called expert witness on the matters at issue.

## CONCLUSION

WHEREFORE, for the reasons stated above, Law Debenture respectfully requests that the Court (a) deny the Motion; alternatively, (b) (i) compel delivery of an expert report no later than Thursday, February 23 at noon, (ii) produce David Belsky for a deposition on or prior to Tuesday, February 28, and (iii) permit Law Debenture to call a rebuttal expert witness; and (c) grant such other and further relief as is just and proper.

Dated:  February 21, 2012            Respectfully submitted,
       Wilmington, Delaware

BIFFERATO GENTILOTTI LLC

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302-429-1900

-and

2420474v3
2/21/2012

5

KASOWITZ, BENSON, TORRES &
 FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
212-506-1700

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*