## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------- | X | |
| In re: | : | **Chapter 11 Cases** |
| | : | **Case No. 08-13141 (KJC)** |
| **TRIBUNE COMPANY, et al.,** | : | **(Jointly Administered)** |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| ------------------------------------------------------- | X | |

### EGI-TRB, LLC'S OPENING BRIEF IN SUPPORT OF ITS POSITION ON ALLOCATION DISPUTES IDENTIFIED IN ITS PRELIMINARY STATEMENT

Dated: February 24, 2012

**BLANK ROME LLP**
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice*)
Catherine L. Steege (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

*Counsel for EGI-TRB, LLC*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................2

I.      The EGI-TRB Notes Are Not Subordinated With Respect To Avoidance
        Recoveries. ..................................................................................................2

        A.      Chapter 5 Avoidance Recoveries Are Not Assets Of Tribune. ..................2

        B.      The EGI-TRB Subordination Agreement Does Not Reach Chapter
                5 Avoidance Recoveries. ..........................................................................4

                1.      The EGI-TRB Subordination Provisions Are Expressly
                        Limited To "Assets of the Company." ...........................................4

                2.      The EGI-TRB Subordination Agreement Contains None Of
                        The Terms That Caused The Court To Reconsider Its
                        Ruling On The PHONES Notes. .....................................................7

                3.      The Remedies Provision In The EGI-TRB Allocation
                        Agreement Does Not Expand The Limited Scope Of
                        Subordination. ..............................................................................9

                4.      Interpreting The EGI-TRB Subordination Terms To
                        Exclude Avoidance Action Recoveries Is Consistent With
                        The Overall Context Of The EGI-TRB Notes. .............................12

II.     The EGI-TRB Allocation Issues Should be Resolved By Allocating to
        EGI-TRB Its Ratable Share Of Avoidance Recoveries. .......................................14

        A.      The Article III Distributions Must Be Adjusted Because The
                Settlement Proceeds Are Not Subject To The Subordination
                Agreement Governing The EGI-TRB Notes. .............................................14

        B.      The Distributions From The Creditors' And Litigation Trusts Must
                Be Adjusted Because The Avoidance Actions Recoveries Are Not
                Subject to The Subordination Agreement Governing The EGI-TRB
                Notes. ......................................................................................................17

        C.      The Article III Distributions And Distributions From The
                Creditors' And Litigation Trusts Must Be Adjusted Because
                Avoidance Recoveries And Settlement Proceeds Are Not Subject
                To The Subordination Agreement Governing The EGI-TRB Notes. ........18

D.    The Beneficiaries Of EGI-TRB's Subordination Agreement Are Not Entitled To Receive Post-Petition Interest Before EGI-TRB Receives Payments On Its Claims. ...........................................................19

E.    The EGI-TRB LLC Notes Are Senior Indebtedness Under The PHONES Notes With Respect To Avoidance Recoveries. .......................21

III.   The PHONES Subordination Issues Should Be Resolved On Terms That Recognize That EGI-TRB Is Entitled To Its *Pro Rata* Share Af Avoidance Recoveries And PHONES Subordination Payments. ...........................................26

A.    The Article III Distributions Do Not Need To Be Adjusted On Account Of The PHONES Notes, Except To Pay EGI-TRB Its *Pro Rata* Share, Because The PHONES Notes Are Subordinated As To The Settlement Proceeds. ...........................................................................26

B.    The Distributions From Creditors' Trust Do Not Need To Be Adjusted On Account Of The PHONES Notes, Except To Pay EGI-TRB Its *Pro Rata* Share, Because The PHONES Notes Are Subordinated As To All Distributions. .....................................................27

C.    The Article III Distributions And Distributions From The Creditors' And Litigation Trusts Need Not Be Adjusted, Except To Pay EGI-TRB Its *Pro Rata* Share, Because The PHONES Notes Are Not Subordinated To The Trade Claims And Retiree Claims. ...........27

D.    The EGI-TRB LLC Notes Are Senior In Right Of Payment To The PHONES Notes. ........................................................................................28

IV.   The Amount Of Avoidance Recoveries And Proceeds Due To EGI-TRB Are Not Disputed. ...............................................................................................28

CONCLUSION ...................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Blue Ridge Investors, II L.P. v. Wachovia Bank, N.A. (In re Aerosol Packaging, LLC),*
362 B.R. 43 (Bankr. D. Ga. 2006) ........................................................................11

*Chemical Bank v. First Trust of N.Y. (In re Southeast Banking Corp.),*
179 F.3d 1307 (11th Cir. 1999) ...........................................................................20

*Conley v. Dan-Webforming International A/S (Ltd.),*
Civ. A. No. 91-401 MMS, 1992 WL 401628 (D. Del. Dec. 29, 1992) ...................10

*Dzikowski v. Northern Trust Bank of Florida, N.A. (In re Prudential of Florida Leasing, Inc.),*
478 F.3d 1291 (11th Cir. 2007) .......................................................................15, 16

*Eichenholtz v. Brennan,*
52 F.3d 478 (3d Cir. 1995)....................................................................................16

*Goldstein v. Eby-Brown, Inc. (In re Universal Marketing, Inc.),*
459 B.R. 573 (Bankr. E.D. Pa. 2011) .....................................................................3

*Guarantee Bank v. Magness Construction Co.,*
462 A.2d 405 (Del. 1983) .......................................................................................6

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.,*
995 F.2d 425 (3d Cir. 1993)............................................................................15, 16

*Guttman v. Fabian (In re Fabian),*
458 B.R. 235 (Bankr. D. Md. 2011) ........................................................................3

*In re Curtis Center Limited Partnership,*
192 B.R. 648 (Bankr. E.D. Pa. 1996) ...................................................................11

*In re Inter Urban Broadcasting of Cincinnati, Inc.,*
Civ. A. No. 94–2382, 1994 WL 646176 (E.D. La. Nov. 16, 1994).........................11

*In re Walnut Equipment Leasing Co.,*
No. 97-19699 DWS, 1999 WL 1068448 (Bankr. E.D. Pa. Nov. 23, 1999)............20

*In re Washington Mutual, Inc.,*
461 B.R. 200 (Bankr. D. Del. 2011) ...................................................................6, 20

*Jahn v. Genesis Merchant Partners, LP (In re U.S. Insurance Group, LLC),*
451 B.R. 437 (Bankr. E.D. Tenn. 2011) ..................................................................4

*Kurak v. Dura Automotive Systems, Inc. (In re Dura Automotive Systems, Inc.),*
379 B.R. 257 (Bankr. D. Del. 2007) ................................................................12

*Masten Lumber & Supply Co. v. Suburban Builders, Inc.,*
269 A.2d 252 (Del. Super. Ct. 1970) ................................................................6

*MBIA Insurance Corp. v. Royal Indemnity Co.,*
426 F.3d 204 (3d Cir. 2005)................................................................6

*Menotte v. United States (In re Custom Contractors, LLC),*
462 B.R. 901 (Bankr. S.D. Fla. 2011) ................................................................3

*New Zealand Kiwifruit Marketing Board v. City of Wilmington,*
825 F. Supp. 1180 (D. Del 1993)................................................................10

*Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.),*
226 F.3d 237 (3d Cir. 2000)................................................................2

*Sims v. DeArmond (In re Lendvest Mortgage, Inc.),*
42 F.3d 1181 (9th Cir. 1994) ................................................................15, 16

*Tibble v. Wells Fargo Bank, N.A. (In re Hudson),*
455 B.R. 648 (Bankr. W.D. Mich. 2011)................................................................3

## STATUTES AND OTHER AUTHORITIES

Fed. R. Bankr. P. 9019................................................................16

11 U.S.C. § 544................................................................3

11 U.S.C. § 547................................................................3

11 U.S.C. § 548................................................................3

EGI-TRB LLC ("EGI-TRB") respectfully submits this brief pursuant to the Court's January 24, 2012 Order establishing a schedule for the resolution of the allocation disputes between the parties (D.I. 10692).

## INTRODUCTION

The Court's January 24, 2012 Order identifies several disputes between the parties concerning the allocation of distributions in light of the terms of the EGI-TRB Notes,[1] the PHONES Notes, and the subordination terms applicable to each instrument. Most of those disputes can be resolved by reference to two simple principles:

1. As the Court has already held, "causes of action that the Debtors' estate may assert under Chapter 5 of the Bankruptcy Code are not 'assets of the Company'" (Oct. 31, 2011 Op. at 113); and

2. The subordination terms applicable to the EGI-TRB Notes are unambiguous and narrowly drawn to subordinate EGI-TRB's right to payment *only* with respect to "assets of the Company" or payments "from the Company." (Ex. 1, EGI-TRB Subordination Agreement at ¶ 2.)

As a result, EGI-TRB is entitled to receive distributions based upon Chapter 5 avoidance recoveries – including those made pursuant to Article III of the Plan and from the Creditors' and Litigation Trusts – on a par with other unsecured creditors. Any plan that provides otherwise would unfairly discriminate against the holders of the EGI-TRB Notes and cannot be confirmed. In addition, EGI-TRB has a right to receive its *pro rata* share of all distributions and avoidance recoveries that, absent the subordination provisions of the PHONES Notes, would go to the holders of the PHONES Notes.

This brief addresses EGI-TRB's position on the allocation disputes in three parts. First, we demonstrate that the EGI-TRB Notes are not subordinated with respect to

---

[1] In this Memorandum, reference to the "EGI-TRB Notes" refers to the notes Tribune issued in the principal amount of $225 million to EGI-TRB at Step Two and does not include the note Tribune issued to EGI-TRB at Step One.

Chapter 5 avoidance recoveries, a conclusion that rests on this Court's prior reading of *Cybergenics* and the unambiguous terms of the EGI-TRB subordination provisions. Second, we show that both *Cybergenics* and the plain language of the EGI-TRB subordination provisions found in the EGI-TRB Subordination Agreement and PHONES Indenture dictate that each of the EGI-TRB allocation issues be resolved in favor of EGI-TRB, including that EGI-TRB is Senior Indebtedness under the PHONES Indenture. Third, we address questions related to the PHONES Indenture that bear on the amount that should be distributed to EGI-TRB on account of EGI-TRB's non-subordinated right to share in avoidance recoveries and other distributions under the PHONES Subordination provisions.

## ARGUMENT

## I.    THE EGI-TRB NOTES ARE NOT SUBORDINATED WITH RESPECT TO AVOIDANCE RECOVERIES.

### A.    Chapter 5 Avoidance Recoveries Are Not Assets Of Tribune.

The Court has already correctly held that, under controlling Third Circuit precedent, Chapter 5 avoidance recoveries are not "assets of the debtor," but instead belong to the bankruptcy estate.  In *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d Cir. 2000), the Third Circuit squarely held that fraudulent transfer claims "were *never* assets of [the debtor]."  *Id.* at 245 (emphasis added).  Likewise, the "avoidance power itself" is "not an asset of [the debtor]."  *Id.*

Relying upon *Cybergenics*, in its October 31, 2011 Opinion, the Court correctly held that causes of action "under Chapter 5 of the Bankruptcy Code are not 'assets of the Company'" subject to subordination terms that are limited to the Company's assets.

2

(Oct. 31, 2011 Op. at 112-13.)   Several parties challenged that conclusion through motions for reconsideration, and, while the Court reconsidered the PHONES specific contractual subordination terms, the Court expressly declined to "reconsider[] the legal principle, as decided by the Third Circuit in *Cybergenics*, that fraudulent transfer claims are not assets of the debtor." (Dec. 29, 2011 Op. at 7 n.11.)  That holding is settled law.

Moreover, as the Court recognized, the Third Circuit's holding in *Cybergenics* and this Court's prior rulings apply to all "Chapter 5 causes of action," which includes actions under Sections 544, 547, and 548.  (Oct. 31, 2011 Op. at 113 n.84.)  None of those causes of action (nor their proceeds) are "assets of the Company" because the Debtors never owned these claims; each was created only by virtue of the Bankruptcy Code and did not exist pre-petition.  For example, "[a]lthough § 544 incorporates state law to provide the 'rules of decision,' the claim still arises under § 544 which is a federal bankruptcy cause of action stemming from the bankruptcy itself." *Menotte v. United States (In re Custom Contractors, LLC)*, 462 B.R. 901, 907 (Bankr. S.D. Fla. 2011); *accord Goldstein v. Eby-Brown, Inc. (In re Universal Mktg., Inc.)*, 459 B.R. 573, 576 (Bankr. E.D. Pa. 2011) ("Even though § 544 incorporates state law to provide the 'rules of decision,' a § 544 claim is a federal bankruptcy cause of action."); *Tibble v. Wells Fargo Bank, N.A. (In re Hudson)*, 455 B.R. 648, 657 (Bankr. W.D. Mich. 2011) ("Regardless of the state law issues, this adversary proceeding 'arises under' § 544(a)(3) of the Bankruptcy Code.").[2]

---

[2] Although the trustee or debtor-in-possession has authority to bring claims under Sections 544, 547, and 548, they can do so only for the estate's benefit. *See Guttman v. Fabian (In re Fabian)*, 458 B.R. 235, 259 (Bankr. D. Md. 2011) ("The purpose of vesting in the trustee responsibility for actions to set aside fraudulent transfers is to prevent a multiplicity of piecemeal litigation by creditors, thus insuring a more equitable

Accordingly, this Court has correctly held, as a matter of law, that the Chapter 5 causes of action at issue in these allocation disputes are not assets of Tribune or the Debtors.

**B.      The EGI-TRB Subordination Agreement Does Not Reach Chapter 5 Avoidance Recoveries.**

Resolving this EGI-TRB allocation issues is therefore a simple matter of contract interpretation under Delaware law.  The primary question before the Court in connection with the EGI-TRB Notes is whether the EGI-TRB Subordination Agreement subordinates the holders of  EGI-TRB Notes to the claims of senior creditors with respect to avoidance action recoveries and/or funds paid by the PHONES pursuant to their subordination provisions where, as a matter of law, avoidance actions and third-party contractual payments are not assets of Tribune.  The answer, under the EGI-TRB Subordination Agreement's plain and unambiguous provisions, is no.  The EGI-TRB subordination terms were narrowly drawn and do not apply to avoidance action recoveries or third-party contractual payments.

**1.      The EGI-TRB Subordination Provisions Are Expressly Limited To "Assets of the Company."**

The terms of the EGI-TRB Subordination Agreement, unlike the terms found in the PHONES Indenture, expressly limit the subordination of EGI-TRB's claims to "assets of the Company [Tribune]," or payments from Tribune, and thus do *not* subordinate

---

distribution of the estate.").  Further demonstrating that avoidance actions are not an asset of the debtor is the long-standing rule that a secured lender's pre-petition lien on all of a debtor's assets does not extend to avoidance actions or their proceeds.  *See, e.g., Jahn v. Genesis Merchant Partners, LP (In re U.S. Ins. Group, LLC)*, 451 B.R. 437, 443 (Bankr. E.D. Tenn. 2011) ("Although the defendant claims a security interest in the proceeds of the avoidance action, a pre-petition security interest cannot attach to collateral that does not come into being until a bankruptcy petition is filed by or against the debtor.").

proceeds from avoidance claims against third-parties.    The EGI-TRB Subordination

Agreement repeats this plain limitation throughout its key terms:

> 2.    <u>Subordination.</u>    The Subordinated Obligations [the EGI-TRB Notes] are subordinate and junior in right of payment to all Senior Obligations to the extent provided in this Agreement.    No part of the Subordinated Obligations shall have any ***claim to the assets of the Company*** on a parity with or prior to the claim of the Senior Obligations. Unless and until the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash, the Subordinating Creditor will not take, demand or receive ***from the Company***, and ***the Company*** will not make, give or permit, directly or indirectly, by set-off, redemption, purchase or in any other manner, any payment of (of whatever kind or nature, whether in cash, property, securities or otherwise), whether in respect of principal, interest or otherwise, or security for the whole or any part of the Subordinated Obligations.

> \* \* \*

> 6.    <u>Payments Received By Subordinated Creditor.</u>    Except as to payments or distributions which the Company is permitted to pay to Subordinating Creditor or which Subordinating Creditor is permitted to accept and retain pursuant to this Agreement, all payments or distributions upon or with respect to any Subordinated Obligation ***which are made by or on behalf of the Company*** or received by or on behalf of the Subordinating Creditor in violation of or contrary to the provisions of this Agreement shall be received in trust for the benefit of the holders of Senior obligations and shall be paid over upon demand to such holders for application to the Senior Obligations until the Senior Obligations shall have been paid in full in cash.

(Ex. 1, EGI-TRB Subordination Agreement ¶¶ 2, 6 (emphasis added).)

As is plain, paragraphs 2 and 6 of the agreement provide that the holders of the

EGI-TRB Notes are subordinate to senior debt only with respect to claims on "assets of

the Company" and payments "from the Company."    (*Id.* ¶ 2.)    Further, the EGI-TRB

noteholders are obligated to pay-over to senior creditors only those payments that they

receive that were "made by or on behalf of the Company."    (*Id.* ¶ 6.)

5

Under Delaware law (selected in ¶ 13(a) of the Subordination Agreement), those unambiguous terms must be enforced as they are written. Delaware law provides that subordination provisions are to be strictly construed according to their terms. *Guarantee Bank v. Magness Constr. Co.*, 462 A.2d 405, 408-09 (Del. 1983) ("In construing the terms of a subordination clause . . . Delaware law requires such agreement to be strictly construed where their terms are unambiguous"); *Masten Lumber & Supply Co. v. Suburban Builders, Inc.*, 269 A.2d 252, 254 (Del. Super. Ct. 1970) (stating that a subordination agreement "must be strictly construed" because under a "liberal construction . . . a judicial decision would almost always be required to establish priority . . . as factual situations vary and lending institutions . . . would be in an intolerable position"); *see also MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir. 2005) (stating that under Delaware law, "[u]nambiguous written agreements should be enforced according to their terms").

This bedrock principle of Delaware law, that subordination agreements are to be strictly construed, also is consistent with the "Rule of Explicitness," under which bankruptcy courts enforce subordination agreements only to the extent that they clearly and explicitly alert subordinated noteholders of the full extent of the alleged subordination. *See In re Washington Mut., Inc.*, 461 B.R. 200, 249 (Bankr. D. Del. 2011) (confirming that the Rule of Explicitness continues to govern subordination agreements when it is consistent with applicable state law).

Sophisticated parties bargained for and drafted the EGI-TRB subordination terms and stipulated to the application of Delaware law. They chose to draw those terms narrowly, in a very simple four-page agreement. They expressly limited the scope of

subordination to claims on "assets of the Company" and payments "from the Company."

There is no basis to rewrite those plain terms here.

> **2.      The EGI-TRB Subordination Agreement Contains None Of The Terms That Caused The Court To Reconsider Its Ruling On The PHONES Notes.**

EGI-TRB's Subordination Agreement also does not contain any of the terms that led this Court to conclude that the PHONES Notes are subordinated with respect to avoidance recoveries.  The Court's reconsideration decision concerning the PHONES Notes hinged on four contractual terms, each of which stands in sharp contrast to the terms of the EGI-TRB Subordination Agreement:

The Court first focused on PHONES Section 14.02(A), which provides that senior creditors "shall be entitled to receive payment in full . . . *before the Holders of the [PHONES Securities] are entitled to receive <u>any payment</u>* on account of the principal amount, interest or other such amounts . . . in respect of the PHONES Notes."  (Dec. 29, 2011 Op. at 11 (emphasis added).)  The Court held that the broad reference to "any payment" established that the PHONES subordination obligation was "*unqualified.*"  (*Id.* (emphasis added).)  In contrast, the EGI-TRB Subordination Agreement does not contain any similar "unqualified" reference to the receipt of "any payment."   Rather, the subordination provisions in the EGI-TRB agreement are limited in every important instance by reference to claims on "assets of the Company" or payments "made by" the Company.  (*E.g.*, Ex. 1 ¶¶ 2, 6.)

Next, the Court examined PHONES Section 14.02(B), which "identifie[d] the source of any payments or distributions that must be turned over to the holders of Senior Indebtedness."  (Dec. 29, 2011 Op. at 11.)  That provision referred to "*any payment or distribution of assets of the Company. . . .*"  Applying the "rule of the last antecedent,"

the Court concluded that the phrase "assets of the Company" only modified the phrase "distribution of assets." (*Id.*) Because the term "any payment" was not limited to payments derived from "assets of the Company" and was broadly written to include payments from any source including avoidance recoveries, the Court concluded that the PHONES Notes were subordinated with respect to avoidance recoveries. (*Id.* at 13.) Again, the EGI-TRB subordination terms contain no such unrestricted reference to "*any payment*" – each key term is instead limited to "assets of the Company" or payments "made by" the Company. (*E.g.*, Ex. 1 ¶¶ 2, 6.) For example, the primary subordinating term states that holders of the EGI-TRB Notes shall not "have any claim **to the assets of the Company** on a parity with or prior to the claim of the Senior Obligations." (*Id.* ¶ 2 (emphasis added).)

The Court then reviewed the PHONES "pay-over" provision, which applied to "any payment . . . of any kind or character," including payments made by a "liquidating trustee." (Dec. 29, 2011 Op. at 13.) The Court concluded that this provision underscored "the parties' intent to apply the subordination provisions to a broad array of payments." (*Id.* at 14.) Again, the EGI-TRB terms do not contain such unrestricted language. Instead, the EGI-TRB pay-over provision is expressly limited to "payments or distributions . . . *which are made by or on behalf of the Company*[.]" (Ex. 1 ¶ 6 (emphasis added).)

Finally, applying Illinois law (which governs the PHONES Indenture), the Court relied on the "overall purpose" of the PHONES subordination terms, and, in particular, Section 14.01, which contained a blanket subordination provision specifying that the PHONES Notes "are hereby expressly made subordinate and subject in right of payment

to the prior payment in full of all Senior Indebtedness[.]"  That unqualified statement of subordination supported the Court's conclusion that the PHONES subordination terms were intended to apply without limitation.  (Dec. 29, 2011 Op. at 15-16.)  Once more, the EGI-TRB Subordination Agreement, which is governed by Delaware law, does not contain such a blanket term.  To the contrary, the parties made clear that the EGI-TRB subordination is limited, and that the EGI-TRB Notes would be subordinated only "*to the extent provided in this Agreement*."  (Ex. 1 ¶ 2.)  As shown above, the "extent provided in this Agreement" is limited in each instance to claims on "assets of the Company" or payments "from the Company" – which, under *Cybergenics* and this Court's prior rulings, do not include third-party avoidance recoveries.

> **3.     The Remedies Provision In The EGI-TRB Allocation Agreement Does Not Expand The Limited Scope Of Subordination.**

In prior briefing, some parties have argued that the limitation on remedies in paragraph 4 of the EGI-TRB Subordination Agreement expands the scope of subordination beyond the limited scope expressly provided for by paragraph 2 of the agreement.  That strained construction should be rejected for the three reasons below.  Additionally, under any reading, this remedy provision does not prevent EGI-TRB from accepting monies that the PHONES are contractually obligated to pay EGI-TRB because EGI-TRB is a "Senior Obligation" under the PHONES Indenture, discussed in Parts II and III, below.

First, the remedies provision in paragraph 4 only precludes EGI-TRB, until "Senior Obligations" are paid in full, from exercising rights and remedies "to collect any Subordinated Obligation."  (*Id.* ¶ 4.)  "Subordinated Obligations" is a defined term that refers only to "the unpaid principal of and interest on the Subordinated Note and all other

obligations and liabilities *of the Company* to the Subordinating Creditor. . . ."  (*Id.* ¶ 1 (emphasis added).)  Accepting the proceeds from an avoidance recovery from a third party or collecting contractual payments from the PHONES is not the same thing as collecting principal or interest on the Note from Tribune, or collecting another obligation "of the Company."  By its terms, nothing in the remedies section prohibits EGI-TRB from accepting avoidance recoveries or contractual payments from third parties.[3]

Second, the scope of subordination is expressly stated in paragraph 2 of the Subordination Agreement and provides only that "[n]o part of the Subordinated Obligations shall have any claim *to the assets of the Company* on a parity with or prior to the claim of the Senior Obligations."  (Ex. 1 ¶ 2.)  There is no basis to expand the expressly bargained-for scope of subordination beyond the agreement's express terms. As the court explained in *New Zealand Kiwifruit Marketing Board v. City of Wilmington*, 825 F. Supp. 1180, 1195 (D. Del. 1993), under Delaware law, the "absence of a [] provision is . . . assumed to be clearly intended."  *Accord Conley v. Dan-Webforming Int'l A/S (Ltd.)*, Civ. A. No. 91-401 MMS, 1992 WL 401628, at *14 (D. Del. Dec. 29, 1992) (applying Delaware law and refusing to "supply an omission in [contractual] provisions").

Third, paragraph 4 of the Subordination Agreement confirms that EGI-TRB is not subordinated as to avoidance recoveries because it expressly permits EGI-TRB to "file a proof of claim in any bankruptcy or similar proceeding instituted by another entity and

---

[3] By way of analogy, if a third party X fraudulently induced a lender L to make a subordinated loan to borrower B, on the same subordination terms as the EGI-TRB Notes, recoveries on L's claim against X would not be subject to contractual subordination to other creditors of B.  It would not constitute an action to collect the debt from B.

may vote such claim. . . ."  (Ex. 1 ¶ 4.)  When a creditor is subordinated as to recoveries

from all sources, including third-party payments, the subordination agreement often

provides that the subordinated creditor cannot file a proof of claim without a senior

creditor's consent and gives the senior creditor the right to file and vote that claim in

bankruptcy.  *See, e.g., Blue Ridge Investors, II L.P. v. Wachovia Bank, N.A. (In re*

*Aerosol Packaging, LLC)*, 362 B.R. 43, 46-47 (Bankr. D. Ga. 2006); *In re Curtis Ctr.*

*Ltd. P'ship*, 192 B.R. 648, 659-60 (Bankr. E.D. Pa. 1996); *In re Inter Urban Broad. of*

*Cincin., Inc.*, Civ. A. No. 94-2382, 1994 WL 646176, at *2 (E.D. La. Nov. 16, 1994) (all

enforcing senior creditor's contractual right to file and vote a subordinated creditor's

claim).  Here, by contrast, paragraph 4 of the Subordination Agreement allows EGI-TRB

to file and vote its claim and thus to participate in distributions without any senior

creditor's consent.[4]

Fourth, in all events and under any construction, the remedies provision in the

EGI-TRB Subordination Agreement, by its terms, does not preclude EGI-TRB from

receiving a contractually-mandated turnover of monies from other third-party creditors,

including monies due from the PHONES to EGI-TRB on account of the PHONES

contractual subordination obligations to EGI-TRB.  The remedy provision does not

preclude enforcement of contractual obligations of third parties, including the PHONES.

By collecting what the PHONES promised to pay EGI-TRB, EGI-TRB is at most

accepting the benefits of an independent contractual obligation of the PHONES.

---

[4] Of course, if it receives distributions that are payments from "assets of the Company,"
EGI-TRB may have an obligation to pay those monies over to the Senior Noteholders.
On that issue, the Court has recognized that "causes of action that are based on *direct
claims* owned by the Debtors (for example, a claim for breach of a fiduciary duty by an
officer or director) would be an asset of the Company and subject to the PHONES Notes
subordination provision."  (Oct. 31, 2011 Op. at 113 (emphasis added).)

4.    **Interpreting The EGI-TRB Subordination Terms To Exclude Avoidance Action Recoveries Is Consistent With The Overall Context Of The EGI-TRB Notes.**

As explained above, under Delaware law which controls here, this Court should enforce the provisions of the EGI-TRB Subordination Agreement strictly as written.  But even if the Court applies the standard set forth in *Kurak v. Dura Automotive Systems, Inc. (In re Dura Automotive Systems, Inc.)*, 379 B.R. 257, 268 (Bankr. D. Del. 2007), a case this Court decided under New York law, and reads the contract "as a whole" and "within context" of the Tribune's 2007 "Step Two" transaction, it should still conclude that the parties narrowly drafted the subordination terms in a manner that does not reach Chapter 5 avoidance recoveries or third-party contractual payments.

As shown above, reading the EGI-TRB subordination terms "as a whole" only underscores that the parties used qualifiers throughout the key provisions to limit the effect of subordination to claims on "assets of the Company" or payments "from the Company."  (*E.g.*, Ex. 1 ¶¶ 2, 6.)  In stark contrast, the subordination terms in *Dura Automotive* were broad and unqualified – much like the PHONES subordination terms – providing, for example, that the noteholders were not entitled to "receive *any payment* with respect to their Notes" before senior creditors were paid in full.  379 B.R. at 261 (emphasis added).  Thus, reading the PHONES subordination terms as a whole revealed an intent "to assure payment in full of the Senior Notes before permitting payment (*in whatever form*) to the Subordinated Noteholders."  *Id.* at 268 (emphasis added).  No such intention can be found with respect to the EGI-TRB Subordination Agreement.

Further, the parties' narrow drafting of the EGI-TRB subordination terms is perfectly consistent with the overall context of the 2007 "Step Two" transaction in which the EGI-TRB Notes were issued.  In connection with the 2007 transaction, the senior

lenders, with whom EGI-TRB was negotiating, were necessarily concerned with ensuring that Tribune – to whom they were loaning money – did not distribute its assets to subordinated lenders before senior lenders were paid in full.  EGI-TRB thus agreed to subordinate its claim on "assets of the Company" or payments "from the Company."  The Senior Lenders further protected themselves in this respect by securing guaranties from Tribune's subsidiaries, that were not provided to EGI-TRB.  By way of analogy, if the loans had been secured, the collateral would have been limited to the assets of Tribune and would not include avoidance recoveries.

There is no suggestion in the terms of the EGI-TRB Subordination Agreement or otherwise that the negotiating parties contemplated that the "Step Two" transaction *itself* would become the subject of avoidance actions, or that, if the senior lenders' funding rendered Tribune insolvent, the senior lenders (or the PHONES) would have a superior right to avoidance recoveries over EGI-TRB.  Indeed, the closing of the 2007 transaction was conditioned on Tribune representing that the transaction would *not* render it insolvent.[5]  There is no basis to speculate that EGI-TRB and the senior lenders nonetheless negotiated a waterfall for the distribution of avoidance recoveries.  *Nothing* in the Subordination Agreement indicates that EGI-TRB agreed to subordinate its potential state law remedies or its right to share in Chapter 5 avoidance recoveries if the 2007 transaction failed and Tribune ended up in bankruptcy.  Nor is there evidence that the senior lenders negotiated for EGI-TRB to pay over any monies it received on account of third-party contractual obligations.  Therefore, EGI-TRB has the right to share in the

---

[5] Section 6.2(e) of the Merger Agreement conditioned the closing upon Tribune obtaining an opinion "reasonably satisfactory to the Company in form and substance" and from a "nationally recognized firm" "as to the solvency of the Company after giving effect to the transactions contemplated by this Agreement (including any financing. . . .").

avoidance recoveries and payments from the PHONES on a parity with other general unsecured creditors.[6]

\* \* \*

For each reason, the EGI-TRB Subordination Agreement does not subordinate EGI-TRB's right to collect Chapter 5 avoidance recoveries or payments from the PHONES.

## II.    THE EGI-TRB ALLOCATION ISSUES SHOULD BE RESOLVED BY ALLOCATING TO EGI-TRB ITS RATABLE SHARE OF AVOIDANCE RECOVERIES AND PHONES SUBORDINATION PAYMENTS.

The above analysis and the plain terms of the EGI-TRB Subordination Agreement provide the answer to each of the EGI-TRB allocation disputes identified in the Court's January 24, 2012 Order.  This Section II discusses the allocation disputes directly related to the EGI-TRB Notes.   Section III discusses the allocation disputes related to the PHONES Indenture.

### A.    The Article III Distributions Must Be Adjusted Because The Settlement Proceeds Are Not Subject To The Subordination Agreement Governing The EGI-TRB Notes.

The first disputed issue related to the EGI-TRB Notes is:

[W]hether and to what extent the Article III Distributions must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any portion of the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the Settlement are or are not subject to the subordination agreement governing the EGI-TRB LLC Notes.  (Jan. 24, 2012 Order ¶ 2(b)(i).)

---

[6] The Examiner found no evidence that EGI-TRB engaged in anything other than good faith arms-length bargaining and found no reasonable basis to subordinate or avoid its rights to recovery under the EGI-TRB Initial Note and/or EGI-TRB Exchangeable Note. *See, e.g.*, Examiner's Report, Vol. II, at 338.

The answer is that the Article III distributions must be adjusted to distribute a *pro rata* and unsubordinated share of Settlement Proceeds to EGI-TRB.  The Settlement Proceeds that make up the Article III distributions are not "assets of the Company" subject to the EGI-TRB subordination terms as described above.  Rather, the Settlement Proceeds consist of $120 million of disgorgement proceeds and $400 million of distributions that senior lenders would otherwise be entitled to receive but have agreed to forego in exchange for a release of avoidance claims related to Steps One and Two of the LBO.  (*E.g.*, D.I. 5936, Second Mediator's Report at its Ex. A.)  These amounts are necessarily funds that the senior lenders are paying to be released from Chapter 5 avoidance claims because this Court (and the Examiner) found that the *only* claims against the Settling Parties that had a reasonable possibility of success were the Chapter 5 avoidance claims against them.  (Oct. 31, 2011 Op. at 41-65.)[7]

When, as here, a settlement resolves multiple claims and parties, courts allocate the proceeds based on the expected value of each claim.  *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 436 (3d Cir. 1993); *Dzikowski v. N. Trust Bank of Fla., N.A. (In re Prudential of Fla. Leasing, Inc.)*, 478 F.3d 1291, 1301-03 (11th Cir. 2007); *Sims v. DeArmond (In re Lendvest Mortg., Inc.)*, 42 F.3d 1181, 1184 (9th Cir. 1994).  For example, the Eleventh Circuit has concluded that, "[w]hen the amount for which a cause of action has been settled is unclear because the settlement involved multiple injuries, claims, and parties," bankruptcy courts must "arrive at an equitable

---

[7] It is only equitable that EGI-TRB, as a creditor, participate *pro rata* in the settlement proceeds.  To the extent that any conduct of the Settling Parties in conjunction with funding the 2007 transaction caused Tribune to become insolvent and caused EGI-TRB to lose $225 million, the Settlement release foregoes that claim.  There is no basis to subordinate EGI-TRB's participation in the settlement proceeds that are the consideration for a release of potential claims that EGI-TRB could otherwise bring.

valuation of that cause of action as a percentage of the total settlement amount." *Prudential*, 478 F.3d at 1302. Similar to evaluating a proposed settlement under Fed. R. Bankr. P. 9019, this valuation process requires a court to consider (1) the probability of success for each claim, (2) the difficulties to be encountered in litigation, and (3) the complexity, expense, inconvenience, and delay involved in litigation. (*Id.* (internal citation omitted); *accord In re Lendvest*, 42 F.3d at 1184 ("[I]t is apparent that any court approving an allocation of a settlement must delve into the strength of the claims. The merit of the claims and the ability to pay are the primary determinants of settlement value."). A court need not decide the actual merits of the claims, only the probability of success and likely amount of any recoveries. *Prudential*, 478 F.3d at 1302; *Lendvest*, 42 F.3d at 1184.[8]

In its Confirmation Opinion, the Court held that the fraudulent transfer claims are the only claims against the Settling Parties that the Examiner found reasonably likely to prevail. (*See* Oct. 31, 2011 Op. at 41-65.) For instance, the Court determined that "WEAR" theories of recovery – waiver, equitable estoppel, and assumption of the risk – did not appear to have merit. An equitable estoppel claim requires that the defendant made some sort of representation, but here "[t]he Examiner found no representation by Senior Lenders to the Non-LBO Creditors" and "[t]he record before [the Court] reflects

---

[8] This approach is consistent with this Court's opinion regarding the DCL Plan's Bar Order, which required a proportionate judgment reduction based upon a settling defendant's proportionate liability for any claims brought against non-settling defendants. (*See* Oct. 31, 2011 Op. at 71-78 (citing *Eichenholtz v. Brennan*, 52 F.3d 478, 487 (3d Cir. 1995)).) *See also Gulfstream*, 995 F.2d at 436 ("where a plaintiff executes a general settlement instrument which settles multiples claims with a defendant," a plaintiff must be permitted "to prove that . . . the settlement or part thereof did not represent damages arising under the same theory of liability as those forming the basis for the [subsequent] award").

none." (*Id.* at 63-64 n.55.)  The Court therefore determined that equitable estoppel and equitable subordination are "uncertain theories." (*Id*. at 65.)  Moreover, the WEAR and similar theories may depend upon establishing a basis for substantive consolidation, but the Court noted that the record did not support several of the necessary preconditions for substantive consolidation.  (*Id*.)  The record thus "d[id] not support a conclusion that the Noteholders are likely to prevail on a WEAR theory. . . ." (*Id*.)

Because the Settlement Proceeds were paid to resolve Chapter 5 avoidance claims against the Senior Lenders which the Examiner found had reasonable merit, and the Court (and Examiner) found no other claims against the Settling Parties had reasonable merit, all or virtually all of the Settlement Proceeds must be treated as avoidance recoveries.  Thus, EGI-TRB's Subordination Agreement does not apply to all or virtually all of the consideration given in respect of the Settlement and EGI-TRB should share in the Settlement Proceeds at least on a parity with other unsecured parent company creditors (other than the PHONES which are subordinated as to these proceeds).  Further, as discussed in Section II.E, EGI-TRB is also entitled to a *pro rata* share of the monies that PHONES receive from Settlement Proceeds but are required to pay over to the Senior Indebtedness under its Indenture.

### B.    The Distributions From The Creditors' And Litigation Trusts Must Be Adjusted Because The Avoidance Actions Recoveries Are Not Subject To The Subordination Agreement Governing The EGI-TRB Notes.

The second disputed issue related to the EGI-TRB Notes is:

[W]hether and to what extent the priority of the distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any distributions from the Creditors' Trust and/or Litigation Trust are or are not subject to the subordination agreement governing the EGI-TRB LLC Notes.  (Jan. 24, 2012 Order ¶ 2(b)(ii).)

The answer is that EGI-TRB should receive a *pro rata* and unsubordinated share of recoveries from avoidance actions brought by the Litigation Trust or the Creditors' Trust. As discussed above, such recoveries are not assets of Tribune. For example, the state law claims for fraudulent conveyance that may go into the Creditors' Trust have been brought pursuant to a determination by this Court that Tribune's *creditors* could bring those claims. (Apr. 25, 2011 Order ¶ 2.) Those claims are avoidance claims which, under *Cybergenics* and this Court's prior Orders, are not assets of the Company. Nor will any recoveries belong to the Company.

EGI-TRB's Subordination Agreement does not apply to (a) the Litigation Trust's recoveries on account of Chapter 5 avoidance actions assigned to it by the Debtors' estates, (b) the Creditors' Trust's recoveries on account of state law fraudulent transfer actions assigned to it by the Debtors' creditors, or (c) any recoveries by the Trusts on account of other claims that are not "assets of the Company." EGI-TRB should share in these recoveries on a parity with other unsecured parent company creditors (other than the PHONES, which the Court has determined is subordinated as to these proceeds). Further, as discussed in Section II.E, EGI-TRB is also entitled to a *pro rata* share of the monies that PHONES receive from Settlement Proceeds but are required to pay over to the Senior Indebtedness under its Indenture.

**C.    The Article III Distributions And Distributions From The Creditors' And Litigation Trusts Must Be Adjusted Because Avoidance Recoveries And Settlement Proceeds Are Not Subject To The Subordination Agreement Governing The EGI-TRB Notes.**

The third disputed issue related to the EGI-TRB LLC Notes is:

[W]hether and to what extent the Article III Distributions or the priority of distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with

assertions that any category of Other Parent Claims (*i.e.*, the Swap Claim, the Retiree Claims or general unsecured trade claims against Tribune) does or does not constitute 'Senior Obligations,' as defined by the subordination agreement governing the EGI-TRB LLC Notes.  (Jan. 24, 2012 Order ¶ 2(b)(iii).)

The answer is that the Trade Claims, Swap Claims, and Retiree Claims are not entitled to benefit from the EGI-TRB Subordination Agreement with respect to avoidance recoveries and Settlement Proceeds because those recoveries are not subject to the Subordination Agreement, as set forth above.

Further, paragraph 1 of the EGI-TRB Subordination Agreement expressly provides that "trade payables and accrued expenses incurred in the ordinary course of business" are *not* included in the definition of "Senior Obligations" under the Agreement. Accordingly, even if EGI-TRB's Subordination Agreement applied to avoidance recoveries, which it does not, the Trade Claims are expressly carved out of the Agreement's definition of Senior Obligations (Ex. 1 ¶ 1) and the Retiree Claims likewise fall outside of the definition of Senior Obligations because these claims are based on liabilities incurred in the ordinary course of business. (*Id.*)

> D.     **The Beneficiaries Of EGI-TRB's Subordination Agreement Are Not Entitled To Receive Post-Petition Interest Before EGI-TRB Receives Payments On Its Claims.**

The fourth disputed issue related to the EGI-TRB Notes is:

[W]hether and to what extent the beneficiaries of the subordination agreement governing the EGI-TRB LLC Notes (as determined by the Bankruptcy Court, if applicable) are entitled to receive post-petition interest prior to the Holders of EGI-TRB LLC Notes Claims receiving payment on their claims." (Jan. 24, 2012 Order ¶ 2(b)(iv).)

The answer is that the beneficiaries of the EGI-TRB Subordination Agreement (the "Beneficiaries") are not entitled to receive post-petition interest prior to EGI-TRB receiving payment on account of its claims for at least two reasons.  First, nothing in

EGI-TRB's Subordination Agreement subordinates EGI-TRB's claims to the payment of post-petition interest. As noted, the Rule of Explicitness "requires a subordinated debenture to specifically state that its subordination extends to payment of interest that would not be available to the senior creditor in bankruptcy." *In re Walnut Equip. Leasing Co.*, No. 97-19699 DWS, 1999 WL 1068448, at *4 n.14 (Bankr. E.D. Pa. Nov. 23, 1999). Because post-petition interest is generally not available in bankruptcy cases, courts will not subordinate a creditor's claim to a senior creditor's right to receive post-petition interest unless post-petition interest is "clearly, explicitly, precisely, and unambiguously provided for in the indentures." *Chem. Bank v. First Trust of N.Y. (In re Southeast Banking Corp.)*, 179 F.3d 1307, 1310 (11th Cir. 1999) (internal citation omitted). The Rule of Explicitness is thus satisfied when a contract provides that the creditor is subordinated to "interest (including all interest accruing subsequent to the commencement of any bankruptcy or similar proceeding, whether or not a claim for post-petition interest is allowable as a claim in any such proceeding)," *Washington Mut.*, 461 B.R. at 250, but it is not satisfied by indentures that "make no specific mention of the issue of post-petition interest," *Southeast Banking*, 179 F.3d at 1308, 1310.

Here, the EGI-TRB Subordination Agreement makes no mention of post-petition interest, let alone clearly or explicitly subordinating EGI-TRB's claims to the Beneficiaries' recovery of post-petition interest. Accordingly, the Beneficiaries are not entitled to recover post-petition interest before EGI-TRB receives payment on account of its claims. *See Southeast Banking*, 179 F.3d at 1310.

<u>Second</u>, as reviewed above, EGI-TRB is entitled to share in the proceeds from avoidance actions and other claims that are not "assets of the Company" – including

distributions from the Creditors' Trust, Litigation Trust, and Settlement Proceeds – on a parity with other unsecured parent creditors (other than the PHONES, as determined by the Court).  Because EGI-TRB has a right to recover from such proceeds on a parity with other unsecured creditors, there is no basis to subordinate its recovery of those proceeds until senior creditors are paid post-petition interest.

> **E.**    **The EGI-TRB Notes Are Senior Indebtedness Under The PHONES Notes.**

The fifth disputed issue related to the EGI-TRB Notes is "whether the EGI-TRB LLC Notes are senior in right of payment to the PHONES Notes."  (Jan. 24, 2012 Order ¶ 2(b)(v).)  The answer is that the EGI-TRB Notes are senior in right of payment to the PHONES Notes, for at least two reasons.

First, this Court already has held that the PHONES Notes are subordinated as to *all* distributions, whether the distributions consist of "assets of the Company" or are derived from another source.  (Dec. 29, 2011 Op. at 5-16.)  In contrast, and as shown above, the EGI-TRB Notes are not subordinated with respect to avoidance recoveries or other claims that are not assets of the Company.  That distinction entitles EGI-TRB to a *pro rata* share of at least three types of proceeds as to which the PHONES Notes are subordinated.  EGI-TRB is entitled to share on a parity with other unsubordinated unsecured creditors as to:  (1) the Settlement Proceeds, which are attributable to avoidance actions and as to which the PHONES are subordinated; (2) the Litigation and Creditors' Trusts' recoveries on account of avoidance actions or other claims that are not "assets of the Company," while the PHONES Notes are subordinated as to such recoveries; and (3) the monies that the holders of the PHONES Notes must "pay over" to EGI-TRB pursuant to the subordination provisions of the PHONES Indenture, because

such payments or reallocations of funds from the PHONES to other creditors are not "assets of the Company."

As to the monies that EGI-TRB is entitled to receive from the PHONES on account of the PHONES subordination provisions, EGI-TRB has no obligation to pay those funds to other creditors because:  (a) the funds that the PHONES are required to pay-over to EGI-TRB as Senior Indebtedness under the PHONES Indenture are not "assets of the Company" or otherwise subject to the EGI-TRB Subordination Agreement; and (b) EGI-TRB's right to receive monies on account of the PHONES Subordination Agreement is EGI-TRB's asset, not an "asset of the Company."

Second, EGI-TRB is "Senior Indebtedness" under the PHONES Indenture as to *all* payments, including distributions of "assets of the Company."  The PHONES Indenture states that the PHONES are "subordinated to Senior Indebtedness. . . ."  The PHONES Indenture broadly defines Senior Indebtedness as *any* obligation of Tribune with four exceptions.  None of the exceptions applies to the EGI-TRB Notes.  For example, under the first exception, the PHONES Notes are subordinated to a debt of Tribune unless the underlying debt instrument itself "expressly provided that [the debt] shall be subordinated to or pari passu with [the PHONES Securities]."  (Ex. 2 PHONES Indenture at 62.)  The EGI-TRB Notes and EGI-TRB Subordination Agreement do not expressly state that the EGI-TRB Notes are subordinate to the PHONES Notes, nor do they expressly make the EGI-TRB Notes *pari passu* with the PHONES Notes.

In addition, the PHONES Indenture was drafted in a way that contemplated that the PHONES Notes would be subordinated to Tribune's future debt.  Specifically, the PHONES Notes states that Senior Indebtedness includes all debts of Tribune "incurred,

assumed or guaranteed by [Tribune], whether outstanding on the date of [the PHONES Indenture] *or hereafter incurred. . . .*"  (Ex. 2, PHONES Indenture at 62 (emphasis added).)  Given that the PHONES Indenture broadly subordinates the PHONES Notes even to debt that had not yet been incurred, it is not surprising that the PHONES Indenture presumes that the PHONES Notes are subordinate unless the other debt instrument expressly states otherwise.

Thus, when the EGI-TRB Note and Subordination Agreement were drafted, the PHONES Notes, by their terms, were subordinate to the EGI-TRB Note unless the EGI-TRB Note expressly "provided that [the EGI-TRB Note] shall be subordinated to or pari passu with [the PHONES]."  (Ex. 2, PHONES Indenture at 62.)  If the negotiating senior creditors had bargained for EGI-TRB to subordinate its claims to the PHONES, then it was incumbent upon them to include a term in the Subordination Agreement that expressly provided for that outcome.  They did not.

Instead, the EGI-TRB Subordination Agreement was carefully negotiated so as to carve out from subordination all debt that by its terms "rank *pari passu* or junior to the Company's obligations under the Subordinated Note."  By carving out debt that "ranked" subordinate or *pari passu* to the EGI-TRB Notes, the EGI-TRB Subordination Agreement necessarily carved out the PHONES Notes which, by their own terms, ranked below all debt that did not provide otherwise.

The PHONES apparently intend to ask this Court to consider parol evidence that they argue shows that in March 2007, in connection with EGI-TRB's "Step One Note," certain lenders contemplated that EGI-TRB would be subordinated to the PHONES with respect to assets of Tribune.  But neither the "Step One Note" (which is not at issue here)

nor the "Step Two" EGI-TRB Note (which is at issue) reflect this alleged agreement.  In the first instance, the EGI-TRB Step Two Note and Subordination Agreement are not ambiguous, and thus under Delaware law, this Court should not consider parol evidence. *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288-89 (Del. 2001) (when interpreting an unambiguous contract under Delaware law, courts confine themselves to the contract's four corners).   Nonetheless, if the PHONES open the door to parol evidence, EGI-TRB will submit compelling parol evidence demonstrating that it is senior to the PHONES for all purposes including:

- The final Step One Confidential Information Memorandum agreed to by all of the lending banks which represented to the market in April 2007 that the EGI-TRB Step Two Note would be subordinated only to new LBO Debt (and thus not to the PHONES);

- The  Bridge Lenders Confidential Information Memorandum which made the same representations to the market;

- Tribune's April 2007 Form 8-K which identified even the EGI-TRB Step One Note as subordinated only to the Senior Obligations;

- The testimony of Tribune Director and EGI-TRB Vice President, William C. Pate, that as the lead deal person for EGI-TRB, he understood during the events at issue and consistently thereafter, that the final subordination agreements made EGI-TRB senior to the PHONES;

- EGI-TRB's prompt communication to Tribune in June 2009, before the Allocation Dispute arose, that it was senior to the PHONES.

By contrast, the PHONES parol evidence, as they have identified it to date, consists of various draft term sheets and emails from March 2007, related primarily to the Step One Note, and written at a time when it was contemplated that the EGI-TRB Step Two Note would include an equity component in the form of a warrant.  Mr. Pate established at his deposition that this deal structure was abandoned after March 2007 and that for tax reasons, it was important that the EGI-TRB Step Two Note be senior to the PHONES Notes.  The subordination of the Step One Note was of no consequence because:  (a) if Step Two did not close, the Step One Note was to be converted to equity; and (b) if Step Two did close, the Steop One Note was to be repaid and a new non-convertible (Step Two) Note purchased.

Finally, even if the Court finds both that (i) the PHONES are a Senior Obligation under the EGI-TRB Subordination Agreement and (ii) EGI-TRB is Senior Indebtedness under the PHONES Indenture, EGI-TRB would be entitled to receive and retain its *pro rata* share of all monies from all sources paid from the PHONES to Senior Indebtedness. EGI-TRB would be entitled to those monies as Senior Indebtedness under the PHONES Indenture.  EGI-TRB would not be obligated to pay those monies over to any other holders of other Senior Obligations – including back to the PHONES (even if they were Senior Obligations) – because monies paid by one subordinated creditor to another, pursuant to a subordination agreement, are not "assets of the Company" or otherwise subject to EGI-TRB's subordination obligations.  That is particularly so where those monies are derived from avoidance recoveries which were not assets of the Company.

In short, the only reasonable interpretation of the relevant agreements establishes that the PHONES claims to avoidance recoveries are subordinated and EGI-TRB's

claims to avoidance recoveries are not. Additionally, the rights of the holders of the PHONES Notes to *any* payment is subordinate in full to the EGI-TRB Notes. As a consequence, EGI-TRB is entitled to receive and retain its *pro rata* share of both avoidance recoveries and natural recoveries that would have been retained by the PHONES but for their subordination provisions.

### III. THE PHONES SUBORDINATION ISSUES SHOULD BE RESOLVED ON TERMS THAT RECOGNIZE THAT EGI-TRB IS ENTITLED TO ITS *PRO RATA* SHARE OF AVOIDANCE RECOVERIES AND PHONES SUBORDINATION PAYMENTS.

EGI-TRB has an interest in the resolution of certain of the PHONES allocation issues, as set forth below.

### A. The Article III Distributions Do Not Need To Be Adjusted On Account Of The PHONES Notes, Except To Pay EGI-TRB Its *Pro Rata* Share, Because The PHONES Notes Are Subordinated As To The Settlement Proceeds.

The first disputed issue related to the PHONES Notes is:

[W]hether and to what extent the Article III Distributions must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any portion of the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the Settlement are or are not subject to the subordination provisions of the PHONES Notes Indenture. (Jan. 24, 2012 Order ¶ 2(a)(i).)

The Article III Distributions do not need to be modified with respect to the PHONES Notes except that EGI-TRB is entitled to receive its *pro rata* share of monies from Settlement Proceeds and Litigation Trust recoveries that are subject to the PHONES subordination provisions. The Court has already held that the PHONES Notes are subordinated as to any and all distributions, not solely distributions of "assets of the Company." (Dec. 29, 2011 Op. at 5-16.) EGI-TRB is not subordinated as to those distributions.

26

**B.**     **The Distributions From Creditors' Trust Do Not Need To Be Adjusted On Account Of The PHONES Notes, Except To Pay EGI-TRB Its *Pro Rata* Share, Because The PHONES Notes Are Subordinated As To All Distributions.**

The second disputed issue related to the PHONES Notes is:

[W]hether and to what extent the priority of the distributions from the Creditors' Trust must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any distributions from the Creditors' Trust are or are not subject to the subordination.  (Jan. 24, 2012 Order ¶ 2(a)(ii).)

The Article III Distributions do not need to be modified with respect to the PHONES Notes except that EGI-TRB is entitled to receive its *pro rata* share of monies from the Creditors' Trust recoveries that are the subject of the PHONES subordination provision.  The Court has already held that the PHONES Notes are subordinated as to any and all distributions, not solely those distributions of "assets of the Company."  (Dec. 29, 2011 Op. at 5-16.)  EGI-TRB is not subordinated as to those recoveries.

**C.**     **The Article III Distributions And Distributions From The Creditors' And Litigation Trusts Need Not Be Adjusted, Except To Pay EGI-TRB Its *Pro Rata* Share, Because The PHONES Notes Are Not Subordinated To The Trade Claims And Retiree Claims.**

The third disputed issue related to the PHONES Notes is:

[W]hether and to what extent the Article III Distributions or the priority of distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that any category of Other Parent Claims (*i.e.*, the Swap Claim, the Retiree Claims or general unsecured trade claims against Tribune) does or does not constitute 'Senior Indebtedness,' as defined by the PHONES Notes Indenture (including, without limitation, because any category of Other Parent Claims does or does not constitute 'Indebtedness,' as that term is defined in the PHONES Notes Indenture and used in the PHONES Note Indenture's definition of 'Senior Indebtedness.').  (Jan. 24, 2012 Order ¶ 2(a)(iii).)

The PHONES Notes are not subordinated to the Trade Claims because the PHONES Indenture expressly carves out from Senior Obligations "any Indebtedness of the Company constituting trade accounts payable arising in the ordinary course of business," which includes the Trade Claims.    The PHONES Notes also are not subordinated to the Retiree Claims because these claims do not represent "indebtedness" within the PHONES Indenture's definition.    Therefore, distributions subordinated under the PHONES Subordination Agreement should not be paid over to the Retirees or Trade. They should, however, be paid over on a *pro rata* basis to EGI-TRB.

> **D.**    **The EGI-TRB LLC Notes Are Senior In Right Of Payment To The PHONES Notes.**

The sixth disputed issue in the Court's Order related to the PHONES Notes is "whether the PHONES Notes are senior in right of payment to the EGI-TRB LLC Notes."  (Jan. 24, 2012 Order ¶ 2(a)(vi).)  This issue is addressed in Section II.E above, which is incorporated herein.

> **IV.**    **The Amount Of Avoidance Recoveries And Proceeds Due To EGI-TRB Are Not Disputed.**

The Debtor has calculated the distributions due each creditor under certain potential recovery scenarios, and these amounts are not in dispute.  The amounts of Settlement Proceeds due to EGI-TRB under certain of the different scenarios addressed in this submission are set forth in Appendix A, which is incorporated by reference.  Because of the multiple permutations that are possible, not all calculations are submitted with this brief.[9]  EGI-TRB will, of course, supply any additional calculations warranted by the Court's decision or that the Court requests.

---

[9] For example, Appendix A only addresses potential scenarios considered in the Recovery Analysis prepared by Alvarez & Marsal related to the Settlement Proceeds.  It

## CONCLUSION

The holders of the EGI-TRB Notes are entitled to their *pro rata* share of Settlement Proceeds, Litigation Trust proceeds from avoidance recoveries and Creditor Trust proceeds from avoidance recoveries, together with monies owed by the PHONES to EGI-TRB under the PHONES subordination provision.

Dated: February 24, 2012          Respectfully submitted,

**BLANK ROME LLP**

By:  /s/ *David W. Carickhoff*
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

and

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice*)
Catherine L. Steege (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

*Counsel for EGI-TRB, LLC*

---

does not consider or present potential recoveries EGI-TRB may have as Senior Indebtedness under the PHONES Indenture with respect to natural recoveries.