## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>                  Debtors. | ) Chapter 11<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>)<br>) **Response Deadline: March 2, 2012 at 12:00 p.m. (ET)**<br>) **Hearing Date: March 5, 2012 at 10:00 a.m. (ET)**<br>)<br>) |

### BRIEF OF AURELIUS CAPITAL MANAGEMENT, LP IN SUPPORT OF ITS POSITIONS REGARDING THE ALLOCATION DISPUTES

Aurelius Capital Management, LP, on behalf of itself and its managed entities (collectively, "Aurelius"),[1] by and through its undersigned counsel, respectfully submits this brief in support of its positions regarding certain of the Allocation Disputes, as that term is defined in the Court's scheduling order dated January 24, 2012 [ECF No. 10692] (the "Scheduling Order"). Specifically, this brief pertains to the Allocation Disputes regarding (i) "whether and to what extent beneficiaries of the subordination provisions of the PHONES Notes Indenture (as determined by the Bankruptcy Court, if applicable) are entitled to receive post-petition interest prior to the Holders of PHONES Notes Claims receiving payment on their Claims," and (ii) "the Allowed amount of the PHONES Notes Claims." Scheduling Order 2.a(iv), (v). With respect to other Allocation Disputes on which Aurelius took a position in its Preliminary Statement dated January 31, 2012 [ECF No. 10789], Aurelius reserves the right to join in the pleadings submitted by other parties. In support of its positions regarding the Allocation Disputes addressed in this brief, Aurelius respectfully submits as follows:

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes. Neither Aurelius nor any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any of its managed entities an insider of Tribune Company or any of its affiliates.

### ARGUMENT[2]

I.  **The PHONES Subordination Does Not Apply To Post-Petition Interest On Senior Indebtedness Unless And Until All Allowed Non-LBO Claims Against Tribune (Excluding Post-Petition Interest) Are Paid In Full**

1. Pursuant to the plain language of the subordination provisions (the "<u>PHONES Subordination</u>") of the indenture governing the PHONES Notes (the "<u>PHONES Indenture</u>"), the holders of Senior Indebtedness,[3] as that term is defined in the PHONES Indenture and as limited by the Proposed DCL Plan and the Settlement, are not entitled to receive from the recoveries otherwise allocable to the holders of PHONES Notes the payment of post-petition interest on their Claims, unless and until such holders' Claims for post-petition interest are allowed against Tribune.  In determining whether the subordination provisions of a subordination agreement operate to provide a senior creditor with the right to receive from a contractually subordinated creditor amounts equivalent to post-petition interest before the subordinated creditor is entitled to retain any portion of its distribution, some courts have applied the common law principle of the "Rule of Explicitness."  The Rule of Explicitness provides that "[i]f a creditor desires to establish a right to post-petition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "<u>Proposed DCL Plan</u>").

[3] Pursuant to the terms of the Proposed DCL Plan, the Senior Lenders and Bridge Lenders have waived their right to be treated as "Senior Indebtedness" under PHONES Indenture with respect to Settlement consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees, and Litigation and Creditors' Trust recoveries.  Only the Senior Noteholders, and other Claims (if any) determined by the Court to constitute Senior Indebtedness (if any), benefit from the PHONES Subordination with respect to these distributions and recoveries. *See* Subordination Allocation Index, attached as Ex. A to DCL Supplemental Disclosure Document, dated February 20, 2012 [ECF No. 10959], at 7, n.13; DCL Responsive Statement, dated December 10, 2010 [ECF No. 7141]; DCL Specific Disclosure Statement, dated December 8, 2010 [ECF No. 7135], at 19.  As such, "Senior Indebtedness," as used herein, does not include the Senior Lenders and Bridge Lenders.

stops on the date of the filing of the petition is to be suspended, at least *vis-a-vis* these

parties." *In re Time Sales Fin. Corp.*, 491 F.2d 841, 844 (3d Cir. 1974) (declining to

enforce a subordination agreement that "did not appropriately apprise the [subordinated]

debenture note holders that their claims against the bankrupt would be subordinated to

[the senior creditor's] demand for post-petition interest"); *see, e.g., First Fid. Bank, N.A.*

*v. Midlantic Nat'l Bank. (In re Ionosphere Clubs, Inc.)*, 134 B.R. 528, 535-536 (Bankr.

S.D.N.Y. 1991) (applying the Rule of Explicitness and finding that a mere reference to

post-petition interest in the controlling subordination provision was insufficient to merit

the award of post-petition interest to senior creditors).

      2. More recent decisions have held that following the promulgation of

Bankruptcy Code section 510(a), courts must look to state law governing the

subordination agreement at issue to determine if its subordination provisions apply to

post-petition interest. *See* 11 U.S.C. § 510(a); *HSBC Bank USA v. Branch (In re Bank of*

*New England Corp.)*, 364 F.3d 355, 364-66, 68 (1st Cir. 2004) (finding that the Rule of

Explicitness is no longer germane following enactment of section 510(a)); *Chem. Bank*

*v. First Trust of N.Y. (In re Southeast Banking Corp.)*, 156 F.3d 1114, 1124 (11th Cir.

1998) (finding that "Congress, by enacting section 510(a) of the Bankruptcy Code,

abrogated the pre-Code Rule of Explicitness" and, accordingly, that the question of

whether contract language was sufficiently explicit to merit the award of post-petition

interest was a question of state law);[4] *see also In re Washington Mutual*, 461 B.R. 200,

249 (Bankr. D. Del. 2011).

---

[4] The indenture at issue in *Southeast Banking Corp.* was governed by New York law. *See In re Southeast Banking Corp.*, 156 F.3d at 1121. Upon certification from the Eleventh Circuit as to what language had to be included in a subordination agreement to alert junior debenture holders that their claims were subordinated to senior debenture holders' claims for interest, the New York State Court of Appeals held that "New York law would require

3. Bankruptcy Code section 510(a) provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).  The applicable nonbankruptcy law governing the PHONES Indenture is that of the State of Illinois.  *See* PHONES Indenture § 1.12.  Pursuant to Illinois law, "in the absence of ambiguity, the terms of subordination agreements are to be construed according to their plain language." *In re 203 North LaSalle Street P'ship*, 246 B.R. 325, 328-30 (Bankr. N.D. Ill. 2000).

4. An examination of the PHONES Indenture demonstrates that, regardless of whether the Court applies the Rule of Explicitness or the law of Illinois, the holders of Senior Indebtedness are not entitled to receive post-petition interest on their Claims from recoveries otherwise allocable to the holders of the PHONES Notes, unless and until such post-petition interest is allowed against Tribune (which can only happen if all non-LBO Claims against Tribune, including those of the PHONES Noteholders, are paid in full).  The PHONES Indenture unambiguously and explicitly states that *unless a claim for post-petition interest is allowed or permitted* against the debtor, the PHONES Noteholders are *not* required to turn over to the holders of "Senior Indebtedness" amounts the PHONES Noteholders receive, in order to satisfy post-petition interest on Senior Indebtedness.  Specifically, the PHONES Indenture provides that holders of the PHONES Notes (the "PHONES Noteholders") may not receive any payment or distribution in respect of the PHONES Notes until "Senior Indebtedness" is paid in full.  "Senior Indebtedness" is defined to include post petition interest, however, *"only to the extent"* such post petition interest is *"allowed or permitted to the holder of [Senior]*

specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of allowing the payment of a senior creditor's postpetition interest demand." *In re Southeast Banking Corp.*, 93 N.Y.2d 178, 186 (1999).

***Indebtedness of the Company against the bankruptcy or any other insolvency estate of***
***the Company in such proceeding***)." PHONES Indenture § 14.01(2) (emphasis
supplied).[5]

5.    Generally, post-petition interest on an unsecured creditor's claim is allowed

against a debtor only in the event that the debtor proves to be solvent. *See, e.g.*, 11

U.S.C. § 502(b)(2) (providing that claims for unmatured interest shall not be allowed); §

726(a)(4) (providing that once all allowed claims have been paid in full, the debtor shall

pay interest on such claims at the legal rate from the date of the filing of the petition); *In*

*re Washington Mutual, Inc.*, 461 B.R. at 241 (holding that there is an "exception" to

"[t]he general rule . . . that unsecured creditors are not entitled to recover post-petition

interest" when "the debtor is solvent."). In the instant case, pursuant to the terms of the

Proposed DCL Plan and the Settlement, post-petition interest may be paid on non-LBO

Claims once all such non-LBO Claims have been paid in full. *See* Proposed DCL Plan §

1.1.233.

6.    There is no dispute, however, that there is currently insufficient value in

Tribune's estate to pay non-LBO Claims in full. Thus, the only way holders of Senior

---

[5] The full text of Section 14.01(2) of the PHONES Indenture states as follows:
"Senior Indebtedness" means the principal of (and premium, if any) and interest on (including
interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal
bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or
permitted to the holder of such Indebtedness of the Company against the bankruptcy or any other
insolvency estate of the Company in such proceeding) and other amounts due on or in connection
with any Indebtedness of the Company incurred, assumed or guaranteed by the Company,
whether outstanding on the date of this Indenture or hereafter incurred, assumed or guaranteed and
all renewals, extensions and refundings of any such Indebtedness of the Company; provided,
however, that the following will not constitute Senior Indebtedness: (A) any Indebtedness of the
Company as to which, in the instrument creating the same or evidencing the same or pursuant to
which the same is outstanding, it is expressly provided that such Indebtedness of the Company
shall be subordinated to or pari passu with the Securities; (B) Indebtedness of the Company in
respect of the Securities; (C) any Indebtedness of the Company constituting trade accounts
payable arising in the ordinary course of business; and (D) any Indebtedness of the Company to
any Subsidiary of the Company.
PHONES Indenture § 14.02.

Indebtedness will be entitled to a turnover from the PHONES Noteholders on account of post-petition interest is if the Litigation Trust is successful in recovering value that, together with other distributions made from Tribune's estate, is sufficient to pay all allowed non-LBO Claims against Tribune, including the PHONES Notes Claims, in full.[6]  In that circumstance, value recovered by the Litigation Trust that is allocable to non-LBO Claims in excess of the allowed amount of such Claims (excluding post-petition interest) will be distributed to the holders of non-LBO Claims in respect of post-petition interest on such Claims.  If such post-petition interest is distributed, the PHONES Noteholders would be required to turn over the post-petition interest they receive on their Claims to the holders of Senior Indebtedness pursuant to the PHONES Subordination, to satisfy post-petition interest on such Senior Indebtedness.  However, if the Litigation Trust does not realize value sufficient to satisfy all non-LBO Claims against Tribune in full, once the holders of Senior Indebtedness are paid in full (less post-petition interest), the PHONES Noteholders will be permitted to receive and retain distributions in respect of the PHONES Notes, until such Claims are paid in full (excluding post-petition interest).

## II.    The Claims Held By The Tendering PHONES Noteholders Should Be Limited To The Amount Of The Exchange Payments, And Therefore The Court Should Allow the PHONES Notes Claims In The Low PHONES Amount

7. Prior to Tribune's bankruptcy filing, the PHONES Noteholders were entitled, at their option and at any time, to exchange their PHONES Notes for an amount of cash determined by

---

[6] Based on the Court's Memorandum On Reconsideration dated December 29, 2011 [Dkt. No. 10531], proceeds of the state law fraudulent conveyance actions that have been initiated by the indenture trustees for the Senior Notes and the PHONES Notes would be subject to the PHONES Subordination until such time as the holders of the Senior Notes have been paid in full.  However, to the extent that proceeds of these actions are sufficient to pay post-petition interest on the Senior Notes and PHONES Notes, such post-petition interest would not be subject to the PHONES Subordination because such post-petition interest would not be "allowed or permitted" against Tribune. Accordingly, the holders of the Senior Notes and the PHONES Notes would be entitled to receive and retain such post-petition interest on a *pari passu* basis.

a formula set forth in the form of global note governing the PHONES Note (the "Global Note"). *See* proposed Stipulation by and among the Debtors, Aurelius Capital Management, Wilmington Trust Company, as Successor Indenture Trustee for the PHONES, Barclays Bank PLC, And Waterstone Capital Management, L.P. on Certain Facts Relevant to the Allocation Disputes and the Determination of the Allowed Amount of the Phones Claim (the "PHONES Stip.")[7] ¶ 1; WTC0000105-8 (Global Note at R-4 - R-8). Under the terms of a form exchange notice (the "Exchange Notice") agreed to by Deutsche Bank Trust Company Americas ("DBTCA"), the former indenture trustee for the PHONES Notes, and Tribune, in order to exercise this option, the PHONES Noteholders were required to send the indenture trustee for the PHONES Notes a completed Exchange Notice, and submit the PHONES Notes to be exchanged through The Depository Trust Company Deposit/Withdrawal At Custodian System (the "DWAC System"). PHONES Stip. ¶¶ 9, 14.

8. The Global Note requires Tribune to deliver an officer's certificate with respect to any completed Exchange Notice it receives, specifying the exchange amount to be paid (the "Exchange Payment") and the date such amount would be paid (the "Exchange Payment Date"). *See* PHONES Stip. ¶ 4; WTC0000106 (Global Note at R-7). Pursuant to the Exchange Notice, Tribune agreed to "pay amounts owed to tendering Holder(s) on the Exchange Payment Date directly to the Holder(s)." WTC0000089; WTC0000091; PHONES Stip. ¶ 14.

9. During the period November 26, 2008 through and including December 8, 2008 (the "Exchange Period"), shortly before Tribune filed for bankruptcy protection on

---

[7] A true and correct copy of the PHONES Stipulation is attached hereto as Exhibit A. Aurelius understands that the PHONES Stipulation will be filed with the Court shortly.

December 8, 2008 (the "Petition Date"), holders of 3,093,941 PHONES Notes (the "Tendered

PHONES Notes") duly tendered their PHONES Notes for exchange in 17 separate exchanges.

*See* PHONES Stip. ¶ 24. Exchange Notices for each of these 17 exchanges were delivered by

DBTCA to Tribune. PHONES Stip. ¶ 25. According to DBTCA's records, with the exception

of the exchanges for which the Exchange Payments could not be calculated until after the

Petition Date, Tribune delivered officer's certificates relating to each of these exchanges to the

PHONES Notes Trustee prior to the Petition Date. WTC0000115. Tribune breached its

obligation to the Tendering PHONES Noteholders by failing to make any of the Exchange

Payments owed in connection with the Tendered PHONES Notes. PHONES Stip. ¶ 24.

      10.    The Claims held by the holders of the Tendered PHONES Notes (the "Tendering

PHONES Noteholders") should be allowed in the amount of the Exchange Payments that

Tribune was obligated to pay in exchange for the Tendered PHONES Notes, which results in

the allowed amount of the PHONES Notes Claims equaling $759,252,932.01[8] (the "Low

PHONES Amount").[9] "Creditors' entitlements in bankruptcy arise in the first instance from the

underlying substantive law creating the debtor's obligation, subject to any qualifying or

contrary provisions of the Bankruptcy Code." *See In re Orange Cnty. Nursery, Inc.*, 439 B.R.

144, 150 (C. D. Cal. 2010) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)). A

creditors' right against a debtor is fixed as of the petition date. *See, e.g., Nantahala Cap.*

*Partners v. Washington Mutual Inc. (In re Washington Mutual)*, Adv. Pro. No. 10-50911,

---

[8] The parties taking a position on this Allocation Dispute have stipulated that if the Court rules that the PHONES Notes Claims should include the Exchange Payments due on all of the Tendered PHONES Notes, rather than the principal and interest that would have been due if the Tendered PHONES Notes had not been tendered for exchange (or if the tender may be rescinded), then the Amount of the PHONES Notes Claims should be $759,252,932.01 (excluding unpaid interest that may have accrued prior to the Petition Date).

[9] Consistent with the Court's Opinion on Confirmation dated October 31, 2011 (the "Opinion"), the Tendering PHONES Noteholders' Claims arise out of a claim for moneys owed under the Global Note and Indenture, and thus rank *pari passu* to the Claims held by the non-Tendering PHONES Noteholders. *See* Opinion at 107-108.

Bankr. No. 08-12229, 2012 WL 10189, at *9 (Bankr. D. Del. Jan. 3, 2012); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 522 (5th Cir. 2004); *Duel Glass v. Search Fin. Serv., Inc. Search Fin. Serv. Acceptance Corp.)*, Nos. 39832129RCM11, Civ.A. 399CV0421G, 256889, at *3 (N.D. Tex. Mar. 7, 2000).

11.Here, pursuant to the "underlying substantive law," Tribune's obligation to Tendering PHONES Noteholders as of the Petition Date was to pay the Exchange Payments.  As of the Petition Date, all of the Tendering PHONES Noteholders had completed the steps necessary to accept Tribune's offer to exchange their PHONES Notes. *See* PHONES Stip. ¶ 24.  Under well-settled principles of contract law, such acceptance irrevocably bound the PHONES Noteholders to their decision to exchange their notes, and irrevocably obligated Tribune to make the Exchange Payments. *See* WILLISTON ON CONTRACTS § 5:18 ("When the optionee decides to exercise his option, he must act unconditionally and according to the terms of the option, and as soon as the acceptance is so made, the optionor becomes bound."); *Gaskins v. Walz*, 97 N.E.2d 798, 801, 409 Ill. 40, 44 (Ill. 1951) (holding that acceptance of an option is "final and irrevocable"); *Macy v. Brown*, 326 Ill. 556, 563, 158 N.E. 216 (Ill. 1927) ("Where the party holding an option signifies his acceptance within the time limited and upon the terms stated, the obligation of the contract becomes mutual and capable of enforcement at the instance of either party."); *Indus. Steel Constr., Inc. v. Mooncotch*, 264 Ill. App. 3d 507, 511-12 (Ill. App. Ct. 1994) (finding that once lessee exercised option to purchase land, the landlord was bound and therefore not entitled to rent property).[10]

---

[10] *See also Calvine Mills, Inc. v. L. A. Slesinger, Inc.*, 258 F.2d 228, 230 (2d Cir. 1958) ("Under the law of New York . . . Once the option has been exercised there is a contract mutually binding upon each of the parties. The optionee cannot withdraw from the contract with impunity any more than the optionor can do so.") (internal citations omitted); *Faucette v. Chantos*, 322 S.W.3d 901, 911 (Tex. Ct. App. 2010) (holding that under Texas law,

Indeed, this has been the law in Illinois for over one hundred years. *See O'Connor v. Harrison*, 132 Ill. App. 264, 271 (Ill. App. Ct. 1907) ("In our judgment, after appellee had thus in writing accepted every term of the option, and agreed to take a lease of the premises for the term named and at the rental proposed, the option had been accepted and both appellant and appellee were bound . . .").

12.     Moreover, Tribune's breach of its obligation to make the Exchange Payments entitles the Tendering PHONES Noteholders to damages in the amount of the Exchange Payments—not rescission of the binding agreement that was created when the Tendering PHONES Noteholders accepted the exchange option. The calculation of damages on a breach of contract claim is the "amount that the parties would have realized had the contract been performed according to expectations." *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 787, 341 Ill. App. 3d 589, 599 (Ill. App. Ct. 2003); *see Case Prestressing Corp. v. Chicago Coll. of Osteopathic Med.*, 455 N.E.2d 811, 816, 118 Ill. App. 3d 782, 788 (Ill. App. Ct. 1983) ("When a contract is breached the injured party is, insofar as it is possible to do so by a monetary award, entitled to be placed in the position he would have been in had the contract been performed."); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, MDL No. 2103, No. 1:09-7670, 2011 WL 5599129, at *7 (N.D. Ill. Nov. 16, 2011) ("The normal calculation of damages in a breach of contract suit is expectation damages."). Rescission of a contract is an equitable remedy that is generally not available when there is an adequate remedy at law. *See, e.g., Scott & Fetzer Co. v. Montgomery Ward & Co., Inc.*, 129 Ill. App. 3d 1011, 1022, 473 N.E.2d 421, 429 (Ill. App. Ct. 1984) ("The relief of rescission sought here by Wards is equitable in nature. It

"the acceptance of an option ascribes the contractual duties to the optionee in the same way that it does the optionor. By notifying [appellees] of their intent to exercise the option, [appellants] entered into a bilateral contract and became obligated to perform.").

is axiomatic that it is not error for the trial court to deny equitable relief when an adequate remedy at law exists.") (internal citations omitted).

13.      Here, the amount that the Tendering PHONES Noteholders would have realized if Tribune had performed its obligation to exchange the PHONES Notes is the Exchange Payments.  There is no equitable rationale for allowing the PHONES Noteholders to rescind the binding agreement they entered into prior to the Petition Date, in order to convert their claims for the Exchange Payments into greater Claims for principal and interest on the PHONES Notes that they tendered for exchange, and no proceeding for rescission has been instituted.  To the contrary, having decided to reduce their risk by demanding immediate payment from Tribune, the Tendering PHONES Noteholders should not now, with the benefit of hindsight, be able to escape the ramifications of that decision by joining those PHONES Noteholders who were willing to continue as creditors of the company.

14. The language of the PHONES Indenture also evidences that Claims arising from the Tendered PHONES Notes should be limited to the amount of the Exchange Payments.  The PHONES Indenture explicitly excludes from its definition of "Outstanding" PHONES Notes that were "delivered to the Trustee or any Authenticating Agent for cancellation."  WTC 0000012 (PHONES Indenture §1.01).  Although Wilmington Trust and certain of the Tendering PHONES Noteholders argue that the PHONES Notes should not have been cancelled until Tribune made the Exchange Payments, there is no dispute that the Tendered PHONES Notes were "delivered to the Trustee for cancellation."  As such, these notes were no longer Outstanding on the Petition Date within the terms of the governing PHONES Indenture, and principal and

11

interest that would have been due and owing on their account had they not been exchanged should not be included in the allowed amount of the PHONES Claims.

15.     Contrary to the assertions made by Wilmington Trust and certain of the Tendering PHONES Noteholders, the language in the Global Note and Exchange Notice providing that the Tendered PHONES Notes should not be cancelled until the Exchange Payments are made does not alter this result.  Under the theory propounded by Wilmington Trust and the Tendering PHONES Noteholders, a party who accepts an option is not bound by its acceptance, and may revoke such acceptance at any time, unless and until the other party to the contract fulfills its side of the bargain.  That is not the law.  *See* WILLISTON ON CONTRACTS § 5:18; *O'Connor v. Harrison*, 132 Ill. App. at 271.  Rather, the relevant inquiry in determining whether a party is bound by its acceptance of an option is whether the party unequivocally accepted the option.  *Id.* It is undisputed here that the Tendering PHONES Noteholders did so, by delivering their PHONES Notes for exchange and providing Exchange Notices to DBTCA.  *See* PHONES Stip. ¶ 24.  The assertion that the Tendered PHONES Notes should not have been cancelled, because the Exchange Payments were never made, is not relevant to this analysis.

16.     Wilmington Trust's argument that the Low PHONES Amount should be $818,808,727, rather than $759,252,932,[11] is also without merit.  *See* PHONES Stip. ¶¶ 36-38. This assertion is premised on the fact that 434,474 of the Tendered PHONES Notes were not accepted into the DWAC System.  *See id.*.  Again, however, the relevant inquiry in determining the rights of the Tendering PHONES Noteholders is whether they took the steps necessary to accept the exchange option.  The answer to that question with respect to all of the Tendering

---

[11] These numbers do not include unpaid interest that may have accrued prior to the Petition Date (*i.e.*, between November 15, 2008 and December 8, 2008).

PHONES Noteholders — including those holding the Tendered PHONES Notes that were not entered into the DWAC System — is yes.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Aurelius respectfully requests that this Court issue an order holding that (i) beneficiaries of the Subordination Provisions of the PHONES Notes Indenture are not entitled to receive post-petition interest prior to the holders of PHONES Notes Claims receiving payment in full in respect of their allowed pre-petition Claims, and (ii) the Claims of the Tendering PHONES Noteholders shall be allowed in the amount of the Exchange Payments, which results in the PHONES Notes Claims being allowed in the Low PHONES Amount.

Dated:  February 24, 2012

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
Deborah Newman
One Bryant Park
New York, NY  10036
212-872-1000

ASHBY & GEDDES, P.A.

*/s/ Amanda M. Winfree*
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE  19899
302- 654-1888

*Counsel for Aurelius Capital Management, LP*