# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

_____

|                                      |     |                          |
|--------------------------------------|-----|--------------------------|
| In re:                               | )   | Chapter 11 Cases         |
|                                      | )   | Case No. 08-13141 (KJC)  |
| TRIBUNE COMPANY, et al.,             | )   | (Jointly Administered)   |
|                                      | )   |                          |
| Debtors.                             | )   |                          |

_____ )

**STIPULATION BY AND AMONG THE DEBTORS, AURELIUS CAPITAL MANAGEMENT, WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES, BARCLAYS BANK PLC, AND WATERSTONE CAPITAL MANAGEMENT, L.P. ON CERTAIN FACTS RELEVANT TO THE ALLOCATION DISPUTES AND THE DETERMINATION OF THE ALLOWED <u>AMOUNT OF THE PHONES CLAIM</u>.**

Tribune Company ("<u>Tribune</u>"), on its own behalf and on behalf of each jointly administered debtor (collectively, the "<u>Debtors</u>"), Aurelius Capital Management, and Wilmington Trust Company, as successor Indenture Trustee for the PHONES Notes ("<u>Wilmington Trust</u>"), by and through their respective attorneys, HEREBY STIPULATE and AGREE to the following facts (the "<u>Stipulated Facts</u>"), solely in connection with the Allocation Dispute, as defined in the Court's scheduling order (the "<u>Scheduling Order</u>") dated January 24, 2012 [Docket No. 10692], regarding the determination of the allowed amount of the PHONES Notes Claims, to be resolved at the Allocation Disputes hearing scheduled for March 5 and 6, 2012.  All parties' objections regarding the relevance and weight of the Stipulated Facts to the Allocation Disputes are hereby expressly preserved.

WHEREAS the Scheduling Order establishes a procedure for the litigation of certain Allocation Disputes defined therein;

WHEREAS paragraph 2.a of the Scheduling Order describes the "The Allowed amount of the PHONES Notes Claims" as PHONES Notes Disputes #4 (the "PHONES Claim Amount");

IT IS HEREBY STIPULATED AND AGREED by the Parties hereto, by their undersigned counsel, as follows:

### The PHONES Exchange Procedures

1)      The terms of the form of global note (the "Global Note") [WTC0000094–WTC0000114] provide that the holder of each PHONES (each, a "Holder") has a right, at any time and from time to time, to exchange (the "Exchange Right") each PHONES for an amount of cash based on the value of certain reference stock, as further set forth in the Global Note.  See WTC0000105 (Global Note at p. R-6).

2)      Pursuant to the Global Note, with respect to any PHONES held through the Depository Trust Company ("DTC"), the Holders may exercise their Exchange Right through the relevant direct participant in DTC through the DTC ATOP System by "delivering an agent's message and delivering the PHONES of such Holder to the Trustee's DTC participant account." WTC0000106 (See Global Note at p. R-7).  If the PHONES are held in certificated form, the Holder may exercise the Exchange Right by (i) completing and manually signing an Exchange Notice in the form available from the Trustee and delivering such Exchange Notice to the Trustee, (ii) surrendering such PHONES to the Trustee, and (iii) if required, furnishing appropriate endorsement and transfer documents, and (iv) if required, pay all transfer and similar taxes.  WTC0000106 (See Global Note at p. R-7).

3)      Upon delivery of a notice from any Holder (each, an "Exchange Notice") to the Indenture Trustee, Tribune is obligated to pay  "the amount due upon exchange as soon as

reasonably practicable" but in no event "later than ten Trading Days after the date of such Exchange Notice." WTC0000106 (See Global Note at p. R-7). The date that an Exchange Notice is delivered to the Indenture Trustee is the "Exchange Date" with respect to such Exchange Notice. A "Trading Day" is any day during which the reference shares are not suspended from trading on any national or regional exchange and have traded at least once on their primary market exchange.

4)       Pursuant to the Global Note, Tribune is required to deliver an officer's certificate with respect to any received Exchange Notice specifying the exchange amount to be paid and the date such amount would be paid (the "Exchange Payment Date"). See WTC0000106 (Global Note at p. R-7). On the Exchange Payment Date, Tribune is required to deposit with the Indenture Trustee the due exchange amount and the Indenture Trustee was required to pay DTC as soon as practicable. See WTC0000107 (Global Note at p. R-8). The date on which all the foregoing requirements were satisfied was defined as the "Redemption Date" with respect to the PHONES delivered for exchange. See WTC0000107 (Global Note at p. R-8).

5)       The Indenture governing the PHONES (the "PHONES Indenture") excludes from the definition of "Outstanding" PHONES Notes that were "delivered to the Trustee or any Authenticating Agent for cancellation." WTC0000012.

6)       Section 3.06 of the PHONES Indenture, entitled "Mutilated, Destroyed, Lost and Stolen Securities," provides  "[i]f there shall be delivered to the Company and the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any [PHONES Notes] . . . , then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and upon the Company's request the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new

4

Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding. . . . The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities." WTC0000030-WTC0000031.

7)    Section 3.09 of the PHONES Indenture, entitled "Cancellation," provides that "[a]ll securities surrendered for . . . exchange . . . shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee, and shall be promptly cancelled by it." WTC0000032.

8)    In September 2008, Tribune and DBTCA determined that the "mechanism outlined in the [global] note is obsolete and will not work (DTC's ATOP system no longer works for these types of trades)." TRB0573164. See also WTC0000092 ("The DTC delivery procedures in the PHONES is no longer workable.").

9)    "Accordingly, Tribune and DBTCA agreed on a revised form of exchange notice (the "Revised Exchange Notice") [WTC0000089–WTC0000091] and revised PHONES exchange instructions for DBTCA [WTC0000092–WTC0000093].

10)    Pursuant to the Revised Exchange Notice, a tendering PHONES Holder, DBTCA and Tribune agreed to certain modifications to the standard exchange procedures outlined in the Global Note. WTC0000089–WTC0000091.

11)    Pursuant to the Revised Exchange Notice, the "Exchange Procedures," attached to the Revised Exchange Notice (WTC0000091), "to the extent such Exchange Procedures modify the procedures contained in the PHONES, shall supersede and replace the procedures set forth in the [Global Note for the PHONES]." WTC0000089.

12)    Pursuant to the Revised Exchange Notice, the tendering PHONES Holders agreed that DBTCA is "authorized to withdraw the PHONES listed [on the Revised Exchange Notice]

pending exchange of such PHONES and [DBTCA, as trustee] is hereby instructed to cancel the PHONES [offered for exchange] upon consummation of the Exchange." WTC0000089.

13)    "Exchange" is defined in the Revised Exchange Notice as the "exchange of the number of PHONES provided [in the Revised Exchange Notice] for an amount of cash equal to the percentage of the exchange market value of the reference shares attributable to the PHONES." WTC0000089.

14)    The Exchange Procedures attached to the Revised Exchange Notice provide as follows:

--    "Holder will send [DBTCA] an Exchange Notice and submit the PHONES to be exchanged through the DWAC System for withdrawal by [DBTCA]; [DBTCA] will accept DWAC and take possession of the PHONES tendered for Exchange (such date, the "Exchange Date")." Exchange Procedures, WTC0000091.

--    "[DBTCA] will notify [Tribune] of Exchange by delivering the Exchange Notice and acknowledging that [DBTCA] has taken possession of the PHONES tendered for Exchange by 12:00 pm on the Business Day following the Exchange Date." Id.

--    "[Tribune] will pay amounts owed to tendering Holder(s) on the Exchange Payment Date directly to the Holder(s)."

15)    In addition, the Exchange Procedures attached to the Revised Exchange Notice referenced certain of the exchange procedures originally set forth in the Global Note, including as follows:

--    "If Exchange Notices relating to more than 500,000 PHONES have been delivered on any Exchange Date, the Trustee shall notify the Company by 6:00 pm New York City time on the Exchange Date and the Company will give notice of such fact by

issuing a press release prior to 9:00 am New York City time on the next Trading Day, to be provided to DTC for dissemination and by providing such notice to the Trustee." Exchange Procedures, WTC0000091.

--      "[Tribune] will deliver an Officer's Certificate to [DCBTA] no later than 1 Business Day after the Trading Day following the Exchange Date; provided, however if Exchange Notices relating to more than 500,000 PHONES have been delivered on any Exchange Date, the [Tribune] will deliver an Officer's Certificate no later than 1 Business Day after the 5th Trading Day following the Exchange Date.   Exchange Procedures, WTC0000091.

--      "The Officers' Certificate shall set forth the amount to be paid to the tendering Holder(s) and the Exchange Payment Date.  Id.

--      "Based on the Officers' Certificate, [DCBTA] will provide the Exchange Payment Date and amount to the Holder(s)." Id.

16)      The Exchange Procedures attached to the Revised Exchange Notice further stated: "On the Exchange Payment Date (no later than 10 Trading Days following the Exchange Date): [DBTCA] will cancel the PHONES in [DBTCA's] possession."   Exchange Procedures, WTC0000091; Internal Exchange Procedures, WTC0000093 ("On the Exchange Payment Date . . . Trustee will cancel the tendered PHONES in the Trustee's possession").

17)       "DWAC" stands for Deposit/Withdrawal At Custodian, which is the automated system for deposits and withdrawals of securities run by the Depository Trust Company.

18)      In an email dated September 17, 2008, from David Contino, Vice President, Deutsche Bank National Trust Company to James Langdon, outside counsel for Tribune, Mr. Contino stated: "When [DBTCA] accept[s] the DWAC it means that we match with the

7

instructions the holder has put up.  Accepting the DWAC will remove the bonds from DTC's records and move them to ours."  TRB0573513.

19)      In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: "Once the DWAC has been accepted, DBTCA's policy would be to enter the exchange information into its own internal bond record keeping software.  The  positions on DBTCA's internal bond keeping system are required to match the positions on DTC's books and records."   DBTCA Response to Interrogatory No. 4.

20)      In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: DBTCA maintains "a listing of all of the exchanges for which DBTCA received an Exchange Notice" (the "Listing").  DBTCA Response to Interrogatory No. 1.

21)      In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: "Among other things, the Listing Identifies: (a) the exchange date, (b) the holder, (c) the number of shares that have been tendered for exchange, (d) whether the proposed exchange has been DWAC approved, (e) whether an Officer's Certificate has been received, (f) the payment date, (g) the payment amount and (h) whether the holder had been paid."  DBTCA Response to Interrogatory No. 1.

22)      Neither the PHONES Indenture, the Global Note nor the Revised Exchange Notices address whether or not an election to tender is revocable or contain any provisions as whether or not a tender is revocable.   See WTC0000001-WTC0000077; WTC0000089–WTC0000091; WTC0000094–WTC0000114.

### The PHONES Tendered for Exchange

23)    Prior to November 26, 2008, holders of 386,649 PHONES tendered their PHONES for exchange and received payment from Tribune Company totaling $6,059,934.21. See WTC0000116, WTC0000496-WTC0000498,  DBTCA Response to Interrogatory No. 1.

24)    In the period from November 26, 2008 through and including December 8, 2008 (the "Exchange Period"), holders of 3,093,941 PHONES in 17 different exchanges tendered their PHONES for exchange, but did not receive payment from Tribune.   See WTC0000116, WTC0000496–WTC0000498; WTC0000118–WTC0000157; TRB0585353; DBTCA Response to Interrogatory No. 1.

25)    Notices for each of the 17 exchanges given during the Exchange Period were delivered by DBTCA to Tribune.   See WTC0000116;  WTC0000496–WTC0000498; WTC0000118–WTC0000157; TRB0585353.

26)    According to DBTCA's records, 14 exchanges were accepted into DWAC and 3 exchanges were not.  See WTC0000115; TRB0619555; DBTCA Response to Interrogatory Nos. 1, 5 and 6.

27)    In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: that two separate proposed exchanges of 197,237 PHONES by Goldman Sachs on 12/3/2008 and 12/8/2008 (the "Goldman Proposed Exchanges") "to our knowledge, was not accompanied by a DWAC that had been initiated by the broker and accepted by DBTCA.  After a reasonable inquiry of its own files, DBTCA is unable to determine whether these exchanges were duplicates or what the circumstance and/or reasons why the Goldman Proposed Exchanges were not approved into the DWAC system.  Because a DWAC instruction was not approved, it is our understanding that DTC did not reduce the amount of the PHONES

Notes on its bookkeeping system."  See WTC0000115; TRB0619555; DBTCA Response to Interrogatory Nos. 1, 5, and 6.

28)    In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: that the proposed exchange of 40,000 PHONES by Citigroup Global Markets on 12/2/2008 (the "Citigroup Proposed Exchange") "to our knowledge, was not accompanied by a DWAC that had been initiated by the broker and accepted by DBTCA.  After a reasonable inquiry of its own files, DBTCA is unable to determine whether these exchanges were duplicates or what the circumstance and/or reasons why the Citigroup Proposed Exchanges were not approved into the DWAC system.  Because a DWAC instruction was not approved, it is our understanding that DTC did not reduce the amount of the PHONES Notes on its bookkeeping system."  See WTC0000115; TRB0619555; DBTCA Response to Interrogatory Nos. 1, 5, and 6.

29)    The current outstanding balance of PHONES on DTC's system is **4,953,884.**  See TRB0586617 (email from David Contino of Deutsche Bank National Trust Company stating that "The current outstanding balance for Cusip # 896047305 (PHONES) is 4,953,884."); WTC0000524 (email from Jennifer Anderson of Wilmington Trust reporting the current outstanding balance for Cusip # 896047305 (PHONES) of 4,953,884 as of February 9, 2012).

**The Post-Petition Withdrawal Request**

30)    By letter dated December 30, 2008, DBTCA advised Tribune that it had "received a number of requests from PHONES holders seeking to withdraw their election to exercise the Exchange Option. . . [and] requests that [Tribune] advise the Trustee and WTC as to whether it will honor the [w]ithdrawal [r]equests."  WTC0000078; DBTCA Response to Interrogatory No. 3.

31)    By letter dated January 14, 2009, Tribune advised DBTCA that "the Company considers each election to exercise the Exchange Right pursuant to an Exchange Notice submitted by a holder of PHONES to be irrevocable. Accordingly, the Company is not prepared to honor any [w]ithdrawal [r]equest."   WTC0000086; DBTCA Response to Interrogatory No. 3.

### Calculation of the PHONES Claim Amount

32)    The original amount of PHONES was 8,000,000.    See WTC0000100; WTC0000115; TRB0619555.

### The Debtors' Calculation of the "Low" PHONES Claim Amount

33)    Should the Court determine that the "low" PHONES Claim Amount is the correct amount, the Debtors' believe that the "Low" PHONES Claim Amount is **$759,252,932.01**  (plus unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)).

34)    This claim amount is based off of 4,519,410 PHONES outstanding, reached as follows: 8,000,000 in PHONES initially issued (i) less 386,649 PHONES tendered for exchange and received payment from Tribune prior to November 26, 2008, (ii) less 3,093,941 PHONES tendered for exchange, but did not receive payment from Tribune during the Exchange Period.

35)    The **$759,252,932.01** "low" PHONES Claim Amount is calculated as follows:

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| **Subtotal** | **7,613,351** | **$1,183,833,767** |
| Less Exchanges subject to determination (tendered during the Exchange Period, including the Rejected DWAC Tenders) | (3,093,941) | ($481,090,630) |
| **Subtotal** | **4,519,410** | $702,743,137 |
| Add Exchange Value of Accepted DWAC Tenders (including Rejected DWAC Tenders) | - | $56,509,795 |
| **Total** | **4,519,410** | **$759,252,932** |

### Wilmington Trust's Calculation of the "Low" PHONES Claim Amount

36)    Should the Court determine that the "low" PHONES Claim Amount is the correct amount, Wilmington Trust believes that the "low" PHONES Claim Amount should be **$818,808,727** (plus unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)).

37)    This claim amount is based off of 4,953,884 PHONES outstanding on DTC's books and records, reached as follows: 8,000,000 in PHONES initially issued (i) less 386,649 PHONES tendered for exchange and received payment from Tribune prior to November 26, 2008, (ii) less 3,093,941 PHONES tendered for exchange, but did not receive payment from Tribune during the Exchange Period, (iii) plus 434,474 PHONES tendered for exchange (in the

Goldman Proposed Exchanges and the Citigroup Proposed Exchange) that were not accepted into DWAC.

38)    The **$818,808,727** "low" PHONES Claim Amount is calculated as follows:

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| **Subtotal** | **7,613,351** | **$1,183,833,767** |
| Less Exchanges subject to determination (tendered during the Exchange Period, including the Rejected DWAC Tenders) | (3,093,941) | ($481,090,630) |
| Add Rejected DWAC Tenders | 434,474 | $67,558,292 |
| **Subtotal** | **4,953,884** | **$770,301,429** |
| Add Exchange Value of Accepted DWAC Tenders (excluding Rejected DWAC Tenders) | - | $48,507,298 |
| **Total** | **4,953,884** | **$818,808,727** |

## The Calculation of the "High" PHONES Claim Amount

39)    Should the Court determine that the "high" PHONES Claim Amount is the correct amount, the "high PHONES Claim Amount should be **$1,183,833,767** (plus unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)).

40)    This claim amount is based off of 7,613,351 PHONES, reached as follows: 8,000,000 in PHONES initially issued (i) less 386,649 PHONES tendered for exchange and received payment from Tribune prior to November 26, 2008.

41)     The **$1,183,833,767** "high" PHONES Claim Amount is calculated as follows:

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $1,243,955,537 |
| <u>Less</u> Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| **Total** | **7,613,351** | **$1,183,833,767** |

42)     The calculations in the charts in paragraphs 35, 38 and 41 assume and accept solely for the purpose of this stipulation that the principal amount of each PHONES outstanding is $155.4944 (excluding unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)) and not $157 (the initial principal amount for each PHONES.  The Debtors records indicate the principal amount of each PHONES outstanding is $155.4944 and this amount is used in the calculations in chart in paragraphs 35, 38 and 41.  <u>See</u> TRB2000122- TRB2000125.

43)     The calculations in the charts in paragraphs 35, 38 and 41 assume and accept for this limited purpose that the cash value of the exchanges that were accepted into the DWAC system, but not paid, is (i) the number of PHONES tendered * (ii) TWX Settlement Price * (iii) 2 * (iv) 0.95.  <u>See</u> WTC0000105–WTC0000106.  The TWX Settlement Price is determined based on closing price the day after the exchange, however if 500,000 or more exchange on one day, the settlement price is a five trading day average, commencing the first trading day after the exchange.  <u>See</u> WTC0000106.

44)    The calculations in the charts in paragraphs 35, 38 and 41 incorporate calculations based on trading information gathered and performed by Tribune.    See WTC0000116–WTC0000117; WTC0000496–WTC0000498.

45)    The following documents may be treated for evidentiary purposes as records of a Regular Conducted Activity as that phrase is used in Federal Rules of Evidence Rule 803(6) and that they may be treated as records of Regular Conducted Activity without the need for the testimony of the custodian or another qualified witness, or by a certification that complies with Federal Rules of Evidence Rule 902(11) for the purposes of the Allocation Disputes and the determination of the allowed amount of the PHONES Claim.

A.  TRB0573164;
B.  TRB0573277;
C.  TRB0573339;
D.  TRB0573513–TRB0573516;
E.  TRB0585353–TRB0585354;
F.  TRB0586604–TRB0586607;
G.  TRB0586616–TRB0586619;
H.  TRB0619555–TRB0619556;
I.   TRB2000122- TRB2000125
J.  WTC0000001–WTC0000079;
K.  WTC0000086;
L.  WTC0000089–WTC0000157;
M. WTC0000496–WTC0000498; and
N.  WTC0000524.

46)    In addition, DBTCA's Responses to Interrogatory Nos. 1, 2, 3, 4, 5, 6, and 7 may be treated for evidentiary purposes as if it was the testimony of DBTCA pursuant to Federal Rules of Evidence Rule 804(b)(1).

47)    Copies of the documents listed in paragraph 45 of this Stipulation and DBTCA's Response Interrogatory Nos. 1, 2, 3, 4, 5, 6, and 7 are attached to this Stipulation.  DTC participant numbers, taxpayer identification numbers and medallion certification information have been redacted from the individual Revised Exchange Notes [WTC0000118-157].

IN WITNESS WHEREOF and in agreement herewith, by and through their counsel, the

Parties have executed and delivered this Stipulation as of the date first set forth below.

| | |
|---|---|
| Dated:  February __, 2012<br>          Wilmington, Delaware | **SULLIVAN HAZELTINE ALLINSON LLC**<br><br><br>By:_____<br>William D. Sullivan (I.D. No. 2820)<br>Elihu E. Allinson, III (I.D. No. 3476)<br>901 N. Market St., Suite 1300<br>Wilmington, DE 19801<br>302-428-8191<br><br>-and-<br><br>BROWN RUDNICK LLP<br>Robert J. Stark<br>Martin S. Siegel<br>Gordon Z. Novod<br>Seven Times Square<br>New York, NY 10036<br>212-209-4800<br><br>*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES* |

Dated:  February __, 2012
Wilmington, Delaware

**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**


By:_____
Norman L. Pernick (I.D. No. 2290)
J. Kate Stickles (I.D. No. 2917)
Patrick J. Reilley (I.D. No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-652-3131

-and-

SIDLEY AUSTIN LLP
James F. Conlan
One South Dearborn Street
Chicago, IL 60603
312-853-7000

James F. Bendernagel, Jr.
1501 K St., N.W.
Washington, DC 20005
202-736-8000

*Counsel for Debtors and Debtors-In-Possession*

Dated:  February __, 2012
      Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

By:_____
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
Leigh-Anne M. Raport (I.D. No. 5055)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
302-654-1888

-and-

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Phil Dublin
Deborah Newman
One Bryant Park
New York, NY 10036
212-872-1000

*Counsel for Aurelius Capital Management, LP*

| | |
|---|---|
| Dated:  February __, 2012<br>　　　Wilmington, Delaware | **LATHAM & WATKINS LLP**<br><br><br>By:_____<br>Robert J. Rosenberg<br>David A. Hammerman<br>885 Third Avenue<br>New York, New York 10022<br>(212) 906-1200<br><br>*Counsel for Barclays Bank PLC and*<br>*Waterstone Capital Management, L.P.* |

So Ordered:

_____

United States Bankruptcy Judge