## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------- x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due:  March 19, 2012 @ 4:00 p.m.(ET) |
| ------------------------------------------------------- x | | Hearing Date: N/A |

## THIRTY-SEVENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JANUARY 1, 2012 THROUGH JANUARY 31, 2012

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | January 1, 2012 through January 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $437,683.20    (80% of $547,104.00) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $   9,615.03 |

This is a(n):    _x_ Monthly        _____ Interim        _____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
|---|---|---|---|---|---|---|
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 - 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application. Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### January 1, 2012 through January 31, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|------|-----------|-------------------|------------------|-------------|-------|
| **Partner\*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 79.10 | 78,704.50 |
| Richard M. Leder (1998) | Tax | 1962 (NY) | 995 | 0.40 | 398.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 58.90 | 53,187.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 43.20 | 37,800.00 |
| Marc Alpert (1995) | Corporate | 1987 (NY) | 855 | 3.50 | 2,992.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 98.10 | 73,084.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 83.50 | 61,276.25 |
| Scott Berson (2004) | Corporate | 1996 (NY) | 745 | 1.10 | 819.50 |
| David Gallai (2000) | Employee Benefits | 2000 (NY) | 705 | 3.90 | 2,749.50 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 86.60 | 60,187.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 50.20 | 32,379.00 |
| | | | | | |
| **Associate:** | | | | | |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 655 | 10.90 | 7,139.50 |
| Robert Kirby | Litigation | 2008 (NY) | 595 | 22.00 | 13,090.00 |
| Alison Kronstadt | Corporate | 2009 (NY) | 565 | 2.00 | 1,130.00 |
| Rachel Kurth Santangelo | Employee Benefits | 2009 (NY) | 565 | 6.40 | 3,616.00 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 1.20 | 678.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 5.60 | 2,772.00 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 123.70 | 60,612.75 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 1.90 | 826.50 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 84.50 | 36,757.50 |
| | | | | | |
| **Paraprofessionals:** | | | | | |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 32.90 | 9,705.50 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 24.40 | 7,198.00 |
| | | | | | |
| **TOTAL:** | | | | **824.00** | **$547,104.00** |

BLENDED RATE:     $667.40

---

\* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------- x | Chapter 11 |
| In re: | : |
| | : Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : |
| | : Jointly Administered |
| Debtors. | : |
| | : Objections Due: March 19, 2012 |
| | : @ 4:00 p.m.(ET) |
| ------------------------------------------------------- x | Hearing Date: N/A |

### THIRTY-SEVENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JANUARY 1, 2012 THROUGH JANUARY 31, 2012

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $547,104.00 (80% of which equals $437,683.20) and reimbursement of expenses incurred in the amount of $9,615.03 during the period commencing January 1, 2012 through and including January 31, 2012 (the "Application Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and 1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.    On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.    Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.    On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm.  See Section 1129(c).  The Court stated that, given those options, it would select the DCL Plan.

10.    On November 18, 2011, the proponents of the DCL Plan filed their Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (the "Third Amended DCL Plan").  A hearing on confirmation of the Third Amended DCL Plan is scheduled to begin May 16, 2012.

---

[1]    The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the Noteholder Plan Proponents").

## COMPENSATION PAID AND ITS SOURCES

11.    All services for which compensation is requested by Chadbourne were performed for or on behalf of the Committee.

12.    During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.    The fee statement for the Application Period is attached hereto as Exhibit A. This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period. To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2 (the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.    As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Application Period total $547,104.00. The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

4

15. The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.    Bankruptcy General (Matter 002)**

Fees: $20,122.00          Total Hours:    42.60

16. During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17. Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

5

**B.**    **Committee Meetings (Matter 003)**

  Fees:  $64,375.00          Total Hours:  95.20

18.    Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to the key issues.  In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

19.    Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

  Fees: $2,973.00          Total Hours:  4.60

20.    Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.    DIP Financing (Matter 005)**

Fees: $3,752.00                Total Hours:  7.20

21.    During the Application Period, Chadbourne reviewed the Debtors' motion to enter

into an amended letter of credit facility (the "L/C Facility").  Chadbourne analyzed the relief

requested and the proposed amendments to the L/C Facility and provided its analysis and

recommendations to the Committee.

**E.    Business Operations (Matter 007)**

Fees:  $54,059.00                Total Hours:  80.60

22.    During the Application Period, professionals from Chadbourne's

Communications Media and Technology ("CMT") Group were engaged in reviewing and

addressing issues with the FCC exit application process.  In particular, CMT attorneys reviewed

the FCC Notice of Proposed Rulemaking regarding newspaper/broadcasting cross-ownership

regulations and considered the Debtors' revised FCC exit applications.  Chadbourne performed

related legal research and reviewed media studies regarding newspaper/broadcasting cross-

ownership.  In connection therewith, Chadbourne participated in various conferences with the

Debtors' FCC counsel regarding related FCC exit matters.

23.    During the Application Period, Chadbourne attorneys continued to review and

monitor issues involving the Debtors' business operations.  Efforts included review and

discussions with the Committee's financial advisors regarding their analysis of the Debtors'

possible entry into several new business transactions.  In connection therewith, Chadbourne's

corporate attorneys reviewed and commented on proposed transaction documents related to two

such business transactions. Chadbourne provided detailed analyses of the proposed deals for the Committee's review. Chadbourne also reviewed weekly operations and financial reports prepared by the Committee's financial advisors.

**F.    Claims Administration/Bar Date (Matter 009)**

   Fees:  $7,634.50        Total Hours:  14.70

24.     During the Application Period, Chadbourne continued to expend efforts in connection with the disposition of claims. Efforts included review and analysis of the Debtors' fiftieth omnibus objection to claims as well as objections to claims filed by individuals relating to civil actions and employee benefits. Chadbourne reviewed and evaluated the relief requested in the motions, the related underlying documents and reviewed and evaluated the bases and processes followed by the Debtors in pursuing the objections. Chadbourne summarized its analyses and recommendations in a written report to the Committee. The Committee ultimately filed joinders to several of the objections filed by the Debtors.

**G.    Fee/Retention Applications (Matter 010)**

   Fees:  $14,252.00       Total Hours:  36.00

25.     Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases. Efforts included preparation and filing of Chadbourne's thirty-sixth monthly fee application and twelfth interim fee application.

26.     In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals. These efforts included the review and analysis of

filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**H.**   **Avoidance Issues (Matter 013)**

Fees:  $2,084.50          Total Hours:  4.50

27.    During the Application Period, Chadbourne attorneys continued to review and address various issues in connection with the potential preference actions asserted against current and former Tribune insiders and certain other entities (each a "Preference Action"). Specifically, Chadbourne continued to review and research issues in connection with the Debtors' request that the Committee dismiss a Preference Action against a former employee of Tribune.  Chadbourne finalized its analysis and recommendations in a written report to the Committee.

**I.**   **Employee Issues (Matter 014)**

Fees:  $13,843.50          Total Hours:  23.50

28.    During the Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters. Efforts included review and analysis of the terms of severance agreements with several additional departing seniors executive of Tribune.  In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departures and consulted with the Committee's financial advisors about their analysis of the departure arrangements.  Chadbourne summarized its analysis and recommendations in memoranda to the Committee.

29.    During this time, Chadbourne professionals reviewed and researched legal implications in connection with a pending civil lawsuit involving the pension plan of a former employee of the Debtors.

**J.    General Litigation (Matter 017)**

     Fees:    $1,067.00         Total Hours:    1.60

30.    During the Application Period, Chadbourne attorneys continued to monitor and review the various adversary proceedings and other litigation pending in connection with the Debtors' Chapter 11 cases.

**K.    Travel (Matter 018)**

     Fees:    $2,845.00         Total Hours:    7.80

31.    During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend an omnibus hearing at the Bankruptcy Court.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**L.    Shareholder Claims (Matter 020)**

     Fees:    $114,029.00         Total Hours:    156.20

32.    During the Application Period, Chadbourne attorneys continued to review, analyze and respond to case proceedings in connection with the various lawsuits filed by the Retirees[2] and the Noteholders[3] asserting state law constructive fraudulent conveyance claims

---

[2]    The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110 affiliates or subsidiaries of Tribune Company.

("SLCFC Actions") against Tribune's former stockholders in connection with the 2007 leveraged buyout of Tribune Company in order to keep the Committee apprised of the status of the proceedings and any potential implications on the Debtors' Chapter 11 cases.

33.     The Noteholders' successfully petitioned the Multidistrict Litigation Panel (the "MDL") to transfer the 44 pending SLCFC Actions for consolidated proceedings to the MDL Court in the Southern District of New York . In response to the MDL's conditional transfer order directing the *FitzSimons* Action be transferred to the MDL Court, the Committee filed a notice of objection which allowed the Committee the time to analyze the appropriateness of consolidating the *FitzSimons* Action.  During this time, Chadbourne and the Committee's co-counsel researched and analyzed the law and facts regarding the Committee's options and presented its recommendations to the Committee.  Ultimately, the Committee filed a limited objection to the request to transfer the *FitzSimons* Action to the MDL Court.

34.     During the Application Period, the Noteholders filed a motion seeking entry of an order lifting the stays of the SLCFC Actions.   Chadbourne performed related legal research and participated in frequent discussions with the Committee's co-counsel and the other DCL Plan Proponents regarding options and preparation of an appropriate response.  Consistent with the Committee's motion to extend the stay of the *FitzSimons* Action, the Committee prepared and filed a response to the Noteholders' motion requesting that the Bankruptcy Court coordinate the

---

(Cont'd from preceding page)

3     The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

stay of the SLCFC Actions with the stay of the *FitzSimons* Action. A hearing on the Noteholder's motion was scheduled for early February. Judge Carey took the request under advisement.

35.    During the Application Period, Chadbourne and the Committee's co-counsel continued discussions with the Committee on the rationale for dismissing claims against defendant shareholders in connection with the *FitzSimons* Action that fell under a certain threshold amount. Ultimately, the Committee voted to dismiss certain claims and Chadbourne worked with the Committee's co-counsel in the preparation of a related motion. Additionally, Chadbourne and the Committee's co-counsel began discussing the dismissal with various case parties in order to resolve related issues before the dismissal motion is filed.

**M.    Plan Litigation (Matter 021)**

    Fees: $246,067.50          Total Hours: 349.50

36.    During the Application Period, Chadbourne's bankruptcy and litigation professionals continued to be substantially engaged, on behalf of the Committee, in analyzing, addressing and responding to a variety of issues related to efforts to move the Debtors' Chapter 11 cases toward plan confirmation as expeditiously as possible.

37.    During the Application Period, Chadbourne attorneys continued preparation of a brief in response to the Noteholders' allegation that the Court's findings with respect to the DCL Plan's application of the PHONES Notes subordination provisions is unfairly discriminatory. In evaluating the Noteholders' assertions, Chadbourne analyzed the effect of the subordination provisions under the DCL Plan on creditors' recoveries and performed extensive related legal

12

research.  Chadbourne also prepared a related summary analysis of the research for the Committee's review.

38.     During the Application Period, proponents of both plans continued to meet and confer in an attempt to reach agreement on scheduling of the allocation dispute issues as well as procedures for disclosure/resolicitation/confirmation of the Third Amended DCL Plan.   The meetings resulted in the resolution of a number of disputes among the DCL Plan Proponents and the Noteholder Plan Proponents and other constituents but certain disputes with regard to confirmation scheduling remained unresolved.  Chadbourne participated in the January 11, 2012 status hearing where the Court set hearing dates for the allocation disputes, the supplemental disclosure documents and plan confirmation.  During a recess in the hearings, the parties met in an effort to reach consensus on the other relevant dates and deadlines. Ultimately, the majority of the scheduling issues were resolved.  Subsequently, the parties participated in further discussions to review, revise and finalize the *Order Establishing Scheduling for (i) Resolution of the Allocation Disputes and (ii) Consideration of DCL Plan Proponents' Supplemental Disclosure Statement, Solicitation Procedures Motion and Plan* (the "Scheduling Order") which the Court approved on January 24, 2012.

39.     In accordance with the protocol set forth in the Scheduling Order, Chadbourne attorneys were substantially engaged in reviewing, addressing and responding to various allocation dispute issues.  Efforts included review and analysis of the subordination provisions on initial distributions under the plan and preparation of recovery charts setting forth the effect of the subordination provisions on creditor recoveries.  In connection therewith, Chadbourne consulted with the Committee's financial advisors on their analysis of the issues and

13

participated in discussions with all parties regarding their comments to the recovery charts.  In

accordance with the Scheduling Order, Chadbourne prepared and filed the *Preliminary*

*Statement of the Official Committee of Unsecured Creditors in Connection with Resolution of*

*the Allocation Disputes* identifying the Committee's position with respect to the allocation

disputes.  Consistent with Committee's previous deliberations and position on this matter, the

preliminary statement provides that the Committee's advocacy at the allocation dispute hearing

(scheduled for March 5 and 6, 2012) will be related to the assertion that the receipt by the

holders of Other Parent Claims of initial percentage distributions that are equal to or higher than

those received by the Senior Noteholders does not result in impermissible unfair discrimination

against the Senior Noteholders.

      40.     Further to the timeline in the Scheduling Order and procedures governing

discovery conducted on allocation disputes, Wilmington Trust served interrogatories on the

Debtors and Deutsche Bank and requests for production of documents on the Debtors, the

Committee, Deutsche Bank, EGI-TRB, Oaktree Capital Management, and the TM Retirees.

Chadbourne, working with the other Committee professionals, reviewed the various discovery

requests and provided a related analysis and recommendation to the Committee.

      41.     Finally, during the Application Period, Wilmington Trust filed a *Motion for Leave*

*to Appeal the Court's Decision on PHONES Subordination.*  Chadbourne attorneys reviewed

and analyzed the requested relief and performed related legal research.  Chadbourne

participated in frequent discussions with the other proponents of the DCL Plan to discuss

strategies including the affect of the appeal on the remaining allocation disputes and plan

confirmation. Ultimately, Chadbourne collaborated with the DCL Plan Proponents on preparation and filing of a joint response.

## ACTUAL AND NECESSARY EXPENSES

42.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $9,615.03 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

43.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

44.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

45.    With respect to outside copy services, Chadbourne utilized the services of an outside vendor (GLC Business Services) for copying of various relevant documents in preparation for the hearing on the motions for reconsideration.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

46.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

47.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

48.    Attorneys and paraprofessionals of Chadbourne have expended a total of 824.00 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $547,104.00.

49.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

50.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period January 1, 2012 through January 31, 2012:  (a) authorizing compensation in the amount of $547,104.00 (80% of which equals $437,683.20) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $9,615.03, for a total of $556,719.03; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   February 27, 2012
         New York, New York

**CHADBOURNE & PARKE LLP**

By: _____
     Douglas E. Deutsch
     (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

18

## **VERIFICATION**

STATE OF NEW YORK    :

                                :   ss:

COUNTY OF NEW YORK   :

        Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

        (a)      I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

        (b)      I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

        (c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

                                               Douglas E. Deutsch

Sworn to before me this
27th day of February 2012

Francisco Vazquez
Notary Public, State of New York
No. 31-6018920
Qualified in New York County
Commission Expires December 27, 2014