# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**STIPULATION BY AND AMONG THE DEBTORS, AURELIUS CAPITAL
MANAGEMENT, WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE
TRUSTEE FOR THE PHONES, BARCLAYS BANK PLC, AND WATERSTONE
CAPITAL MANAGEMENT, L.P. ON CERTAIN FACTS RELEVANT TO THE
ALLOCATION DISPUTES AND THE DETERMINATION OF THE ALLOWED
AMOUNT OF THE PHONES CLAIM.**

Tribune Company ("Tribune"), on its own behalf and on behalf of each jointly

administered debtor (collectively, the "Debtors"), Aurelius Capital Management, and

Wilmington Trust Company, as successor Indenture Trustee for the PHONES Notes

("Wilmington Trust"), by and through their respective attorneys, HEREBY STIPULATE and

AGREE to the following facts (the "Stipulated Facts"), solely in connection with the Allocation

Dispute, as defined in the Court's scheduling order (the "Scheduling Order") dated January 24,

2012 [Docket No. 10692], regarding the determination of the allowed amount of the PHONES

Notes Claims, to be resolved at the Allocation Disputes hearing scheduled for March 5 and 6,

2012. All parties' objections regarding the relevance and weight of the Stipulated Facts to the

Allocation Disputes are hereby expressly preserved.

WHEREAS the Scheduling Order establishes a procedure for the litigation of certain

Allocation Disputes defined therein;

WHEREAS paragraph 2.a of the Scheduling Order describes the "The Allowed amount of the PHONES Notes Claims" as PHONES Notes Disputes #4 (the "PHONES Claim Amount");

IT IS HEREBY STIPULATED AND AGREED by the Parties hereto, by their undersigned counsel, as follows:

## The PHONES Exchange Procedures

1)      The terms of the form of global note (the "Global Note") [WTC0000094–WTC0000114] provide that the holder of each PHONES (each, a "Holder") has a right, at any time and from time to time, to exchange (the "Exchange Right") each PHONES for an amount of cash based on the value of certain reference stock, as further set forth in the Global Note. See WTC0000105 (Global Note at p. R-6).

2)      Pursuant to the Global Note, with respect to any PHONES held through the Depository Trust Company ("DTC"), the Holders may exercise their Exchange Right through the relevant direct participant in DTC through the DTC ATOP System by "delivering an agent's message and delivering the PHONES of such Holder to the Trustee's DTC participant account." WTC0000106 (See Global Note at p. R-7). If the PHONES are held in certificated form, the Holder may exercise the Exchange Right by (i) completing and manually signing an Exchange Notice in the form available from the Trustee and delivering such Exchange Notice to the Trustee, (ii) surrendering such PHONES to the Trustee, and (iii) if required, furnishing appropriate endorsement and transfer documents, and (iv) if required, pay all transfer and similar taxes. WTC0000106 (See Global Note at p. R-7).

3)      Upon delivery of a notice from any Holder (each, an "Exchange Notice") to the Indenture Trustee, Tribune is obligated to pay "the amount due upon exchange as soon as

2

reasonably practicable" but in no event "later than ten Trading Days after the date of such Exchange Notice." WTC0000106 (See Global Note at p. R-7). The date that an Exchange Notice is delivered to the Indenture Trustee is the "Exchange Date" with respect to such Exchange Notice. A "Trading Day" is any day during which the reference shares are not suspended from trading on any national or regional exchange and have traded at least once on their primary market exchange.

4)      Pursuant to the Global Note, Tribune is required to deliver an officer's certificate with respect to any received Exchange Notice specifying the exchange amount to be paid and the date such amount would be paid (the "Exchange Payment Date"). See WTC0000106 (Global Note at p. R-7). On the Exchange Payment Date, Tribune is required to deposit with the Indenture Trustee the due exchange amount and the Indenture Trustee was required to pay DTC as soon as practicable. See WTC0000107 (Global Note at p. R-8). The date on which all the foregoing requirements were satisfied was defined as the "Redemption Date" with respect to the PHONES delivered for exchange. See WTC0000107 (Global Note at p. R-8).

5)      The Indenture governing the PHONES (the "PHONES Indenture") excludes from the definition of "Outstanding" PHONES Notes that were "delivered to the Trustee or any Authenticating Agent for cancellation." WTC0000012.

6)      Section 3.06 of the PHONES Indenture, entitled "Mutilated, Destroyed, Lost and Stolen Securities," provides "[i]f there shall be delivered to the Company and the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any [PHONES Notes] . . . , then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and upon the Company's request the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new

3

Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding. . . . The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities." WTC0000030-WTC0000031.

7)    Section 3.09 of the PHONES Indenture, entitled "Cancellation," provides that "[a]ll securities surrendered for . . . exchange . . . shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee, and shall be promptly cancelled by it." WTC0000032.

8)    In September 2008, Tribune and DBTCA determined that the "mechanism outlined in the [global] note is obsolete and will not work (DTC's ATOP system no longer works for these types of trades)." TRB0573164. See also WTC0000092 ("The DTC delivery procedures in the PHONES is no longer workable.").

9)    "Accordingly, Tribune and DBTCA agreed on a revised form of exchange notice (the "Revised Exchange Notice") [WTC0000089–WTC0000091] and revised PHONES exchange instructions for DBTCA [WTC0000092–WTC0000093].

10)    Pursuant to the Revised Exchange Notice, a tendering PHONES Holder, DBTCA and Tribune agreed to certain modifications to the standard exchange procedures outlined in the Global Note. WTC0000089–WTC0000091.

11)    Pursuant to the Revised Exchange Notice, the "Exchange Procedures," attached to the Revised Exchange Notice (WTC0000091), "to the extent such Exchange Procedures modify the procedures contained in the PHONES, shall supersede and replace the procedures set forth in the [Global Note for the PHONES]." WTC0000089.

12)    Pursuant to the Revised Exchange Notice, the tendering PHONES Holders agreed that DBTCA is "authorized to withdraw the PHONES listed [on the Revised Exchange Notice]

4

pending exchange of such PHONES and [DBTCA, as trustee] is hereby instructed to cancel the PHONES [offered for exchange] upon consummation of the Exchange." WTC0000089.

13)    "Exchange" is defined in the Revised Exchange Notice as the "exchange of the number of PHONES provided [in the Revised Exchange Notice] for an amount of cash equal to the percentage of the exchange market value of the reference shares attributable to the PHONES." WTC0000089.

14)    The Exchange Procedures attached to the Revised Exchange Notice provide as follows:

--    "Holder will send [DBTCA] an Exchange Notice and submit the PHONES to be exchanged through the DWAC System for withdrawal by [DBTCA]; [DBTCA] will accept DWAC and take possession of the PHONES tendered for Exchange (such date, the "Exchange Date")." Exchange Procedures, WTC0000091.

--    "[DBTCA] will notify [Tribune] of Exchange by delivering the Exchange Notice and acknowledging that [DBTCA] has taken possession of the PHONES tendered for Exchange by 12:00 pm on the Business Day following the Exchange Date." Id.

--    "[Tribune] will pay amounts owed to tendering Holder(s) on the Exchange Payment Date directly to the Holder(s)."

15)    In addition, the Exchange Procedures attached to the Revised Exchange Notice referenced certain of the exchange procedures originally set forth in the Global Note, including as follows:

--    "If Exchange Notices relating to more than 500,000 PHONES have been delivered on any Exchange Date, the Trustee shall notify the Company by 6:00 pm New York City time on the Exchange Date and the Company will give notice of such fact by

5

issuing a press release prior to 9:00 am New York City time on the next Trading Day, to be provided to DTC for dissemination and by providing such notice to the Trustee." Exchange Procedures, WTC0000091.

--      "[Tribune] will deliver an Officer's Certificate to [DCBTA] no later than 1 Business Day after the Trading Day following the Exchange Date; provided, however if Exchange Notices relating to more than 500,000 PHONES have been delivered on any Exchange Date, the [Tribune] will deliver an Officer's Certificate no later than 1 Business Day after the 5th Trading Day following the Exchange Date.   Exchange Procedures, WTC0000091.

--      "The Officers' Certificate shall set forth the amount to be paid to the tendering Holder(s) and the Exchange Payment Date. Id.

--      "Based on the Officers' Certificate, [DCBTA] will provide the Exchange Payment Date and amount to the Holder(s)." Id.

16)     The Exchange Procedures attached to the Revised Exchange Notice further stated: "On the Exchange Payment Date (no later than 10 Trading Days following the Exchange Date): [DBTCA] will cancel the PHONES in [DBTCA's] possession."   Exchange Procedures, WTC0000091; Internal Exchange Procedures, WTC0000093 ("On the Exchange Payment Date . . . Trustee will cancel the tendered PHONES in the Trustee's possession").

17)     "DWAC" stands for Deposit/Withdrawal At Custodian, which is the automated system for deposits and withdrawals of securities run by the Depository Trust Company.

18)     In an email dated September 17, 2008, from David Contino, Vice President, Deutsche Bank National Trust Company to James Langdon, outside counsel for Tribune, Mr. Contino stated: "When [DBTCA] accept[s] the DWAC it means that we match with the

6

instructions the holder has put up.  Accepting the DWAC will remove the bonds from DTC's records and move them to ours."  TRB0573513.

19)    In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: "Once the DWAC has been accepted, DBTCA's policy would be to enter the exchange information into its own internal bond record keeping software.  The positions on DBTCA's internal bond keeping system are required to match the positions on DTC's books and records."  DBTCA Response to Interrogatory No. 4.

20)    In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: DBTCA maintains "a listing of all of the exchanges for which DBTCA received an Exchange Notice" (the "Listing").  DBTCA Response to Interrogatory No. 1.

21)    In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: "Among other things, the Listing Identifies: (a) the exchange date, (b) the holder, (c) the number of shares that have been tendered for exchange, (d) whether the proposed exchange has been DWAC approved, (e) whether an Officer's Certificate has been received, (f) the payment date, (g) the payment amount and (h) whether the holder had been paid."  DBTCA Response to Interrogatory No. 1.

22)    Neither the PHONES Indenture, the Global Note nor the Revised Exchange Notices address whether or not an election to tender is revocable or contain any provisions as whether or not a tender is revocable.   See WTC0000001-WTC0000077; WTC0000089–WTC0000091; WTC0000094–WTC0000114.

## The PHONES Tendered for Exchange

23)     Prior to November 26, 2008, holders of 386,649 PHONES tendered their
PHONES for exchange and received payment from Tribune Company totaling $6,059,934.21.
See WTC0000116, WTC0000496-WTC0000498, DBTCA Response to Interrogatory No. 1.

24)     In the period from November 26, 2008 through and including December 8, 2008
(the "Exchange Period"), holders of 3,093,941 PHONES in 17 different exchanges tendered their
PHONES for exchange, but did not receive payment from Tribune.   See WTC0000116,
WTC0000496–WTC0000498; WTC0000118–WTC0000157; TRB0585353; DBTCA Response
to Interrogatory No. 1.

25)     Notices for each of the 17 exchanges given during the Exchange Period were
delivered by DBTCA to Tribune.     See WTC0000116; WTC0000496–WTC0000498;
WTC0000118–WTC0000157; TRB0585353.

26)     According to DBTCA's records, 14 exchanges were accepted into DWAC and 3
exchanges were not. See WTC0000115; TRB0619555; DBTCA Response to Interrogatory Nos.
1, 5 and 6.

27)     In its Responses and Objections to Interrogatories served by Wilmington Trust,
DBTCA states, in part: that two separate proposed exchanges of 197,237 PHONES by Goldman
Sachs on 12/3/2008 and 12/8/2008 (the "Goldman Proposed Exchanges") "to our knowledge,
was not accompanied by a DWAC that had been initiated by the broker and accepted by
DBTCA. After a reasonable inquiry of its own files, DBTCA is unable to determine whether
these exchanges were duplicates or what the circumstance and/or reasons why the Goldman
Proposed Exchanges were not approved into the DWAC system. Because a DWAC instruction
was not approved, it is our understanding that DTC did not reduce the amount of the PHONES

8

Notes on its bookkeeping system." See WTC0000115; TRB0619555; DBTCA Response to Interrogatory Nos. 1, 5, and 6.

28)    In its Responses and Objections to Interrogatories served by Wilmington Trust, DBTCA states, in part: that the proposed exchange of 40,000 PHONES by Citigroup Global Markets on 12/2/2008 (the "Citigroup Proposed Exchange") "to our knowledge, was not accompanied by a DWAC that had been initiated by the broker and accepted by DBTCA. After a reasonable inquiry of its own files, DBTCA is unable to determine whether these exchanges were duplicates or what the circumstance and/or reasons why the Citigroup Proposed Exchanges were not approved into the DWAC system. Because a DWAC instruction was not approved, it is our understanding that DTC did not reduce the amount of the PHONES Notes on its bookkeeping system." See WTC0000115; TRB0619555; DBTCA Response to Interrogatory Nos. 1, 5, and 6.

29)    The current outstanding balance of PHONES on DTC's system is **4,953,884.** See TRB0586617 (email from David Contino of Deutsche Bank National Trust Company stating that "The current outstanding balance for Cusip # 896047305 (PHONES) is 4,953,884."); WTC0000524 (email from Jennifer Anderson of Wilmington Trust reporting the current outstanding balance for Cusip # 896047305 (PHONES) of 4,953,884 as of February 9, 2012).

## The Post-Petition Withdrawal Request

30)    By letter dated December 30, 2008, DBTCA advised Tribune that it had "received a number of requests from PHONES holders seeking to withdraw their election to exercise the Exchange Option. . . [and] requests that [Tribune] advise the Trustee and WTC as to whether it will honor the [w]ithdrawal [r]equests." WTC0000078; DBTCA Response to Interrogatory No. 3.

9

31)     By letter dated January 14, 2009, Tribune advised DBTCA that "the Company considers each election to exercise the Exchange Right pursuant to an Exchange Notice submitted by a holder of PHONES to be irrevocable. Accordingly, the Company is not prepared to honor any [w]ithdrawal [r]equest." WTC0000086; DBTCA Response to Interrogatory No. 3.

### Calculation of the PHONES Claim Amount

32)     The original amount of PHONES was 8,000,000.    See WTC0000100; WTC0000115; TRB0619555.

### The Debtors' Calculation of the "Low" PHONES Claim Amount

33)     Should the Court determine that the "low" PHONES Claim Amount is the correct amount, the Debtors' believe that the "Low" PHONES Claim Amount is **$759,252,932.01** (plus unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)).

34)     This claim amount is based off of 4,519,410 PHONES outstanding, reached as follows: 8,000,000 in PHONES initially issued (i) less 386,649 PHONES tendered for exchange and received payment from Tribune prior to November 26, 2008, (ii) less 3,093,941 PHONES tendered for exchange, but did not receive payment from Tribune during the Exchange Period.

35)    The **$759,252,932.01** "low" PHONES Claim Amount is calculated as follows:

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| **Subtotal** | **7,613,351** | **$1,183,833,767** |
| Less Exchanges subject to determination (tendered during the Exchange Period, including the Rejected DWAC Tenders) | (3,093,941) | ($481,090,630) |
| **Subtotal** | **4,519,410** | **$702,743,137** |
| Add Exchange Value of Accepted DWAC Tenders (including Rejected DWAC Tenders) | - | $56,509,795 |
| **Total** | **4,519,410** | **$759,252,932** |

## Wilmington Trust's Calculation of the "Low" PHONES Claim Amount

36)    Should the Court determine that the "low" PHONES Claim Amount is the correct amount, Wilmington Trust believes that the "low" PHONES Claim Amount should be **$818,808,727** (plus unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)).

37)    This claim amount is based off of 4,953,884 PHONES outstanding on DTC's books and records, reached as follows: 8,000,000 in PHONES initially issued (i) less 386,649 PHONES tendered for exchange and received payment from Tribune prior to November 26, 2008, (ii) less 3,093,941 PHONES tendered for exchange, but did not receive payment from Tribune during the Exchange Period, (iii) plus 434,474 PHONES tendered for exchange (in the

11

Goldman Proposed Exchanges and the Citigroup Proposed Exchange) that were not accepted into DWAC.

38)    The **$818,808,727** "low" PHONES Claim Amount is calculated as follows:

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $1,243,955,537 |
| <u>Less</u> Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| Subtotal | 7,613,351 | $1,183,833,767 |
| <u>Less</u> Exchanges subject to determination (tendered during the Exchange Period, including the Rejected DWAC Tenders) | (3,093,941) | ($481,090,630) |
| <u>Add</u> Rejected DWAC Tenders | 434,474 | $67,558,292 |
| Subtotal | 4,953,884 | $770,301,429 |
| <u>Add</u> Exchange Value of Accepted DWAC Tenders (excluding Rejected DWAC Tenders) | - | $48,507,298 |
| Total | 4,953,884 | $818,808,727 |

### The Calculation of the "High" PHONES Claim Amount

39)    Should the Court determine that the "high" PHONES Claim Amount is the correct amount, the "high PHONES Claim Amount should be **$1,183,833,767** (plus unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)).

40)    This claim amount is based off of 7,613,351 PHONES, reached as follows: 8,000,000 in PHONES initially issued (i) <u>less</u> 386,649 PHONES tendered for exchange and received payment from Tribune prior to November 26, 2008.

41)    The **$1,183,833,767** "high" PHONES Claim Amount is calculated as follows:

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| Total | 7,613,351 | $1,183,833,767 |

42)    The calculations in the charts in paragraphs 35, 38 and 41 assume and accept solely for the purpose of this stipulation that the principal amount of each PHONES outstanding is $155.4944 (excluding unpaid interest that accrued prior to the petition date (i.e., between November 15, 2008 and December 8, 2008)) and not $157 (the initial principal amount for each PHONES). The Debtors records indicate the principal amount of each PHONES outstanding is $155.4944 and this amount is used in the calculations in chart in paragraphs 35, 38 and 41. See TRB2000122- TRB2000125.

43)    The calculations in the charts in paragraphs 35, 38 and 41 assume and accept for this limited purpose that the cash value of the exchanges that were accepted into the DWAC system, but not paid, is (i) the number of PHONES tendered * (ii) TWX Settlement Price * (iii) 2 * (iv) 0.95. See WTC0000105–WTC0000106. The TWX Settlement Price is determined based on closing price the day after the exchange, however if 500,000 or more exchange on one day, the settlement price is a five trading day average, commencing the first trading day after the exchange. See WTC0000106.

13

44)     The calculations in the charts in paragraphs 35, 38 and 41 incorporate calculations based on trading information gathered and performed by Tribune.    See WTC0000116–WTC0000117; WTC0000496–WTC0000498.

45)     The following documents may be treated for evidentiary purposes as records of a Regular Conducted Activity as that phrase is used in Federal Rules of Evidence Rule 803(6) and that they may be treated as records of Regular Conducted Activity without the need for the testimony of the custodian or another qualified witness, or by a certification that complies with Federal Rules of Evidence Rule 902(11) for the purposes of the Allocation Disputes and the determination of the allowed amount of the PHONES Claim.

A. TRB0573164;
B. TRB0573277;
C. TRB0573339;
D. TRB0573513–TRB0573516;
E. TRB0585353–TRB0585354;
F. TRB0586604–TRB0586607;
G. TRB0586616–TRB0586619;
H. TRB0619555–TRB0619556;
I. TRB2000122- TRB2000125
J. WTC0000001–WTC0000079;
K. WTC0000086;
L. WTC0000089–WTC0000157;
M. WTC0000496–WTC0000498; and
N. WTC0000524.

46)     In addition, DBTCA's Responses to Interrogatory Nos. 1, 2, 3, 4, 5, 6, and 7 may be treated for evidentiary purposes as if it was the testimony of DBTCA pursuant to Federal Rules of Evidence Rule 804(b)(1).

14

47)    Copies of the documents listed in paragraph 45 of this Stipulation and DBTCA's Response Interrogatory Nos. 1, 2, 3, 4, 5, 6, and 7 are attached to this Stipulation.    DTC participant numbers, taxpayer identification numbers and medallion certification information have been redacted from the individual Revised Exchange Notices [WTC0000118-157].

IN WITNESS WHEREOF and in agreement herewith, by and through their counsel, the

Parties have executed and delivered this Stipulation as of the date first set forth below.

| Dated:  February 24, 2012<br>         Wilmington, Delaware | **SULLIVAN HAZELTINE ALLINSON LLC**<br><br><br>By:  ___/s/ William D. Sullivan_____.<br>William D. Sullivan (I.D. No. 2820)<br>Elihu E. Allinson, III (I.D. No. 3476)<br>901 N. Market St., Suite 1300<br>Wilmington, DE 19801<br>302-428-8191<br><br>-and-<br><br>BROWN RUDNICK LLP<br>Robert J. Stark<br>Martin S. Siegel<br>Gordon Z. Novod<br>Seven Times Square<br>New York, NY 10036<br>212-209-4800<br><br>*Counsel for Wilmington Trust Company, solely in its capacity as successor Indenture Trustee for the PHONES* |
| | |

16

Dated: February 24, 2012
       Wilmington, Delaware

**COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.**

By:  */s/ J. Kate Stickles*                           .
Norman L. Pernick (I.D. No. 2290)
J. Kate Stickles (I.D. No. 2917)
Patrick J. Reilley (I.D. No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-652-3131

-and-

SIDLEY AUSTIN LLP
James F. Conlan
One South Dearborn Street
Chicago, IL 60603
312-853-7000

James F. Bendernagel, Jr.
1501 K St., N.W.
Washington, DC 20005
202-736-8000

*Counsel for Debtors and Debtors-In-Possession*

| | |
|---|---|
| Dated:  February 24, 2012<br>　　　Wilmington, Delaware | **ASHBY & GEDDES, P.A.**<br><br><br>By:___ */s/ William P. Bowden*　　　.<br>William P. Bowden (I.D. No. 2553)<br>Amanda M. Winfree (I.D. No. 4615)<br>Leigh-Anne M. Raport (I.D. No. 5055)<br>500 Delaware Avenue, P.O. Box 1150<br>Wilmington, DE 19899<br>302-654-1888<br><br>-and-<br><br>AKIN GUMP STRAUSS HAUER & FELD<br>LLP<br>Daniel H. Golden<br>David M. Zensky<br>Phil Dublin<br>Deborah Newman<br>One Bryant Park<br>New York, NY 10036<br>212-872-1000<br><br>*Counsel for Aurelius Capital Management, LP* |

| | |
|---|---|
| Dated: February 24, 2012<br>Wilmington, Delaware | **LATHAM & WATKINS LLP**<br><br>By: ___*/s/ David A. Hammerman*___ .<br>Robert J. Rosenberg<br>David A. Hammerman<br>885 Third Avenue<br>New York, New York 10022<br>(212) 906-1200<br><br>*Counsel for Barclays Bank PLC and*<br>*Waterstone Capital Management, L.P.* |

So Ordered:

_____

United States Bankruptcy Judge

20

# Paragraph 45 – A. TRB0573164

| From: | Rodden, Jack |
|---|---|
| Sent: | Friday, September 12, 2008 6:15 PM (GMT) |
| To: | Bigelow, Chandler <CBigelow@tribune.com>; Eldersveld, David <DEldersveld@Tribune.com> |
| Cc: | Shanahan, Patrick <PShanahan@tribune.com>; Caridine, Bruno <BCaridine@tribune.com> |
| Subject: | FW: PHONES - Exchangeable Notes |

Suggested exchange mechanism/requirements.   The mechanism outlined in the note is obsolete and will not work (DTC's ATOP system no longer works for these types of trades).

**From:** David Contino [mailto:david.contino@db.com]
**Sent:** Friday, September 12, 2008 10:34 AM
**To:** Rodden, Jack
**Subject:** PHONES - Exchangeable Notes

Jack,

Here is how we see the process for exchanges working

- Holder will send Trustee an Exchange Notice (Exchange Date)
- Trustee will inform Company of the exchange by 12:00 pm on the business day following receipt of notice
- Company will deliver Officer Certificate to Trustee 1 business day after the trading day following the Exchange Date. (after the 5th trading day if the position is above 500,000)
- Based on the OC, Trustee will provide the Exchange Payment Date and amount to the holder

On the exchange payment date  (no later than 10 trading days following exchange date):

- Holder will submit their position through DTC's DWAC system
- Trustee will accept DWAC and cancel notes
- Company will pay the holder

We may want to create a form Exchange Notice whereby this method of exchange through DTC is referenced. The custodian can use that form to notify us of an exchange and acknowledge the exchange process at the same time.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH:  (908) 608-3183
Fax: (732) 578-4635
E-mail:   david.contino@db.com
http://www.tss.db.com
---

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Paragraph 45 – B. TRB0573277

**Deutsche Bank** ⧄

Deutsche Bank Securities Services NJ , Inc.
Harborside Financial Center
100 Plaza One, 2nd Floor
Jersey City, NJ 07311-3988
(201) 593-2567

9/12/08

Deutsche Bank National Trust Company
ATTN David Contino

RE: Tribune Co Exchangeable Sub Deb 2 % Cusip 896047305

Deutsche Bank Securities ▮▮▮▮▮▮▮▮▮▮ would like to submit 10
PFD shares for a cash payment .These shares are held at ▮▮▮▮▮▮
▮▮▮ .Please advise when you are prepared to receive a DWAC .

Deutsche Bank Securities -- Payment Instructions

Thank You

Jeffrey Szczyradlowski

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0573277

# Paragraph 45 – C. TRB0573339

*MORGAN STANLEY*

ONE NEW YORK PLAZA
NEW YORK, NEW YORK 11201
(212) 276-4500

# EXCHANGE NOTICE

September 12, 2008

Attn: David Contino
Deutsche Bank
Tel#:  (908) 608-3183
Fax#: (732) 578-4635

Re: Tribune Co (PHONES) Exch Sub Deb Due 2029
Cusip: 896047305

Dear David:

Please accept this letter as authorization to exchange as per the terms of the note for the account of Morgan Stanley, ██████████ 10 shares of the above issue for the equivalent in cash.

We have put up our withdrawal DWAC.



Please call or e-mail me if you have any questions.

Regards,

Lilith Hedrington
Reorg. Dept.
Tel : (212) 276-0640
Fax : 718  233-0741
*Lilith.Hedrington@morganstanley.com*

*Tribune Co (PHONES) Exch Sub Deb Due 2029*

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Paragraph 45 – D. TRB0573513–TRB0573516

| From: | David Contino <david.contino@db.com> |
|---|---|
| Sent: | Wednesday, September 17, 2008 5:39 PM (GMT) |
| To: | jlangdon@Sidley.com |
| Cc: | Eldersveld, David <DEldersveld@Tribune.com>; Rodden, Jack <JRodden@tribune.com>; Blatchford, Kevin F. <kblatchford@sidley.com> |
| Subject: | RE: FW: PHONES: Exchange Notice; Exchange Instructions |

James,

When we accept the DWAC it means that we match with the instructions the holder has put up. Accepting the DWAC will remove the bonds from DTC's records and move them to ours. The way the language currently reads is accurate.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH: (908) 608-3183
Fax: (732) 578-4635
E-mail:   david.contino@db.com
http://www.tss.db.com

"Langdon, James" <jlangdon@Sidley.com>

09/17/2008 12:27 PM

To David Contino/db/dbcom@DBAmericas, <JRodden@tribune.com>
cc "Eldersveld, David" <DEldersveld@Tribune.com>, "Blatchford, Kevin F." <kblatchford@sidley.com>
Subject RE: FW: PHONES:  Exchange Notice; Exchange Instructions

All -

Attached are clean and marked revised drafts of the exchange notice and exchange instructions to clarify the payment procedure.

David - please note the bracketed/footnoted item in both documents. We need some additional clarity on what "accept DWAC" means in order to complete the forms.

Thanks,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

*email:* jlangdon@sidley.com

**From:** David Contino [mailto:david.contino@db.com]
**Sent:** Wednesday, September 17, 2008 10:19 AM
**To:** JRodden@tribune.com
**Cc:** Eldersveld, David; Langdon, James
**Subject:** Re: FW: PHONES: Exchange Notice; Exchange Instructions

Jack,

I have one comment to the procedure. On the day of the exchange payment date Tribune should send payment to the holders directly. The original language states that the company will deposit funds with the trustee. However that procedure coincides with the use of DTC's ATOP system. We can't make payments to the holders under the DWAC system.

Jack and I discussed this and we are in agreement that Tribune will send payments directly to the holders.

I'm available this afternoon to discuss this further.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH: (908) 608-3183
Fax: (732) 578-4635
E-mail: david.contino@db.com
http://www.tss.db.com

"Rodden, Jack" <JRodden@tribune.com>

09/16/2008 06:55 PM

To David Contino/db/dbcom@DBAmericas

cc "Langdon, James" <jlangdon@Sidley.com>, "Eldersveld, David" <DEldersveld@Tribune.com>
Subject FW: PHONES: Exchange Notice; Exchange Instructions

David,
Please see the draft exchange notice and instructions. Please let me know your availability tomorrow for a call to discuss.
Thanks again,

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

Jack

---

**From:** Langdon, James [mailto:jlangdon@Sidley.com]
**Sent:** Tuesday, September 16, 2008 4:49 PM
**To:** Rodden, Jack
**Cc:** Bigelow, Chandler; Eldersveld, David; Blatchford, Kevin F.
**Subject:** PHONES: Exchange Notice; Exchange Instructions

Jack -

Please find attached a revised form of exchange notice and separate PHONES exchange instructions for Deutsche Bank to review and for discussion in advance of the call to be scheduled with Deutsche Bank.

<<PHONES: Form of Exchange Noticev2.DOC>> <<PHONES EXCHANGE.DOC>>

Best,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036
*email:* jlangdon@sidley.com

---------------------------------------------------------------------------------

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.
****************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential.

If you are not the intended recipient, please delete the e-mail and any attachments and notify us

immediately.
****************************************************************************************
[attachment "PHONES_ Form of Exchange Noticev2.DOC" deleted by David Contino/db/dbcom]

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

[attachment "PHONES EXCHANGE (2).DOC" deleted by David Contino/db/dbcom]

---

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.[attachment "PHONES_ Form of Exchange Noticev2 (2).DOC" deleted by David
Contino/db/dbcom] [attachment "Exchange Notice - Redline.doc" deleted by David Contino/db/dbcom] [attachment
"PHONES EXCHANGE (3).DOC" deleted by David Contino/db/dbcom] [attachment "Redline - Exchange Instructions.doc"
deleted by David Contino/db/dbcom]

---

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Paragraph 45 – E. TRB0585353–TRB0585354

# EXCHANGE NOTICE

Deutsche Bank Trust Company Americas
60 Wall Street, 27th Floor, Mailstop: NYC 60-2710
New York, New York 10005
Attention: Trust and Securities Services

> Re:  <u>Tribune Company – Exchangeable Subordinated Debentures due 2029 (the "PHONES") CUSIP:  896047305</u>

Ladies and Gentleman:

1. By delivering this Exchange Notice the undersigned hereby acknowledges and agrees that the undersigned has read the Exchange Procedures attached hereto which, to the extent such Exchange Procedures modify the procedures contained in the PHONES, shall supersede and replace the procedures set forth in the PHONES.

2. Please accept this letter as authorization to exchange the number of PHONES provided below for an amount of cash equal to the percentage of the exchange market value of the reference shares attributable to the PHONES (the "Exchange"). Complete information related to the PHONES to be exchanged is provided below.

Number of PHONES to be Exchanged:  *5,000*

Brokerage Firm:

Broker Name:  *Credit Suisse (USA) LLC*

DTC Participant Number:  ███████

Wire Instructions:
*Please include your name & ph #
under ALL FBC ATTN:
and under the REF: indicate
the security name & cusip number*

Tax ID Number  ███████

3. A withdrawal has been submitted to The Depository Trust Company Deposit/Withdrawal At Custodian System (the "DWAC System") and Deutsche Bank Trust Company Americas, as trustee under the indenture relating to the PHONES (the "Trustee"), is hereby authorized to withdraw the PHONES listed above as of the date hereof pending exchange of such PHONES and the Trustee is hereby instructed to cancel the PHONES listed above upon consummation of the Exchange.

CHI 4407722v.3

**Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only**

Regards,

[Name]   Justin Pannullo
         AVP, Credit Suisse

2

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Paragraph 45 – F. TRB0586604–TRB0586607

SECTION 1.06.    Notice to Holders; Waiver.

Where this Indenture or any Security provides for notice to Holders of any event, such notice shall be deemed sufficiently given (unless otherwise herein or in such Security expressly provided) if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at his address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice provided, however, that, in any case, any notice to Holders of Floating Rate Securities regarding the determination of a periodic rate of interest, if such notice is required pursuant to Section 3.01, shall be sufficiently given if given in the manner specified pursuant to Section 3.01. In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders or the validity of the proceedings to which such notice relates. Where this Indenture or any Security provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

SECTION 1.07.    Conflict with Trust Indenture Act.

If any provision hereof limits, qualifies or conflicts with the duties imposed by operation of Section 318(c) of the Trust Indenture Act, the imposed duties shall control. If any provision of this Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the latter provisions shall be deemed to apply to this Indenture as so modified or excluded, as the case may be.

SECTION 1.08.    Effect of Headings and Table of Contents.

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

SECTION 1.09.    Successors and Assigns.

All covenants and agreements in this Indenture by the Company shall bind its successors and assigns, whether so expressed or not.

WTC 0000018

SECTION 1.10.    Separability Clause.

In case any provision in this Indenture or in the Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 1.11.    Benefits of Indenture.

Except as expressly provided in Article Fourteen with respect to holders of Senior Indebtedness, nothing in this Indenture or in the Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

SECTION 1.12.    Governing Law.

This Indenture and the Securities shall be governed by and construed in accordance with the laws of the State of Illinois except as may be otherwise required by mandatory provisions of law.

SECTION 1.13.    Legal Holidays.

Unless otherwise specified pursuant to Section 3.01, in any case where the due date of interest on or principal of any Security or the date fixed for redemption of any Security shall not be a Business Day then (notwithstanding any other provision of this Indenture or of the Securities) payment of interest or principal (and premium, if any) need not be made on such date, but may be made on the next succeeding Business Day or on such other date specified pursuant to Section 3.01 with the same force and effect as if made on such due date or Redemption Date and no interest shall accrue for the period from and after such prior date; provided, however that if the next succeeding Business Day is in the next calendar year, such payment shall be made on the preceding Business Day or on such other date specified pursuant to Section 3.01.

SECTION 1.14.    Incorporators, Stockholders, Officers and Directors Exempt from Individual Liability.

No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any incorporator, as such, or against any past, present or future stockholder, officer or director, as such, of the Company or of any successor, either directly or through the Company or any successor, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders thereof and as part of the consideration for the issue of the Securities.

-11-

WTC 0000019

# ARTICLE II

## SECURITY FORMS

SECTION 2.01.     Forms Generally.

The Securities of each series shall be in substantially the form or forms as shall be established by or pursuant to a Board Resolution or in one or more indentures supplemental hereto, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with any rules of any securities exchange or all as may, consistently herewith, be determined by the officers executing such Securities to be necessary or appropriate, as evidenced by their execution of the Securities.  If the form of Securities of any series is established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action together with a true and correct copy of the form of the Securities of such series approved by or pursuant to such Board Resolution shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Company Order contemplated by Section 3.03 for the authentication and delivery of such Securities.

The definitive Securities shall be printed, lithographed or engraved on steel engraved borders or may be produced in any other manner, all as determined by the officers executing such Securities, as evidenced by their execution of such Securities.

SECTION 2.02.     Form of Trustee's Certificate of Authentication.

The Trustee's certificate of authentication on all Securities shall be in substantially the following form:

-12-

WTC 0000020

This is one of the Securities of the series designated pursuant to the within-mentioned Indenture.

By:_____
　　　As Trustee

OR

By:_____
　　　As Authenticating Agent

By: _____
　　　Authorized Officer

SECTION 2.03.　　Securities Issuable in the Form of a Global Security.

(a)　　If the Company shall establish pursuant to Section 3.01 that the Securities of a particular series are to be issued in whole or in part in the form of one or more Global Securities, then the Company shall execute and the Trustee shall, in accordance with Section 3.03 and the Company Order delivered to the Trustee thereunder, authenticate and make available for delivery, such Global Security or Securities, which (i) shall represent, and shall be denominated in an amount equal to the aggregate principal amount of, the Outstanding Securities of such series to be represented by such Global Security or Securities, (ii) shall be registered in the name of the Depository for such Global Security or Securities or its nominee, (iii) shall make available for delivery by the Trustee to the Depository or pursuant to the Depository's instruction and (iv) shall bear a legend substantially to the following effect: "THIS GLOBAL SECURITY MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY OR ANOTHER NOMINEE OF THE DEPOSITORY OR BY THE DEPOSITORY OR ANY SUCH NOMINEE TO A SUCCESSOR OF THE DEPOSITORY OR A NOMINEE OF SUCH SUCCESSOR DEPOSITORY."

(b)　　Notwithstanding any other provision of this Section 2.03 or of Section 3.05, unless otherwise provided in the Global Security, a Global Security may be transferred, in whole but not in part and in the manner provided in Section 3.05, only to the Depository or another nominee of the Depository for such Global Security, or to a successor Depository for such Global Security selected or approved by the Company or to a nominee of such successor Depository. Except as provided below, owners solely of beneficial interests in a Global Security shall not be entitled to receive physical delivery of the Securities represented by such Global Security and will not be considered the Holders thereof for any purpose under the Indenture.

-13-

WTC 0000021

(c)     If at any time the Depository for a Global Security notifies the Company that it is unwilling or unable to continue as Depository for such Global Security or if at any time the Depository for the Securities for such series shall no longer be eligible or in good standing under the Securities Exchange Act of 1934, as amended, or other applicable statute or regulation, the Company shall appoint a successor Depository with respect to such Global Security.  If a successor Depository for such Global Security is not appointed by the Company within 90 days after the Company receives such notice or becomes aware of such ineligibility, the Company's election pursuant to Section 3.01(18) shall no longer be effective with respect to such Global Security and the Company will execute, and the Trustee, upon receipt of a Company Order for the authentication and delivery of individual Securities of such series in exchange for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in definitive form in an aggregate principal amount equal to the principal amount of the Global Security in exchange for such Global Security.

(d)     The Company may at any time and in its sole discretion determine that the Securities of any series issued or issuable in the form of one or more Global Securities shall no longer be represented by such Global Security or Securities.  In such event the Company will execute, and the Trustee, upon receipt of a Company Order for the authentication and delivery of individual Securities of such series in exchange in whole or in part for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in definitive form in an aggregate principal amount equal to the principal amount of such Global Security or Securities representing such series in exchange for such Global Securities or Securities.

(e)     A Global Security will also be exchangeable if there shall have occurred and is continuing an Event of Default or an event which, with the giving of notice or lapse of time or both, would constitute an Event of Default with respect to the Securities of such series represented by such Global Security.  In such event the Company will execute, and the Trustee, upon receipt of a Company Order for the authentication and delivery of individual Securities of such series in exchange in whole or in part for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in definitive form in an aggregate principal amount equal to the principal amount of such Global Security or Securities representing such series in exchange for such Global Securities or Securities.

(f)     If specified by the Company pursuant to Section 3.01 with respect to Securities issued or issuable in the form of a Global Security, the Depository for such Global Security may surrender such Global Security in exchange in whole or in part for individual Securities of such series of like tenor and terms in definitive form on such terms as are acceptable to the Company and such Depository.  Thereupon the Company shall execute, and the Trustee shall authenticate and deliver, without service charge, (1) to each Person specified by such Depository a new Security or Securities of the same series of like tenor and terms and of any authorized denominations as requested by such Person or the Depository in aggregate principal amount equal to and in exchange for such Person's beneficial interest in the Global Security; and (2) to such Depository a new Global Security of like tenor and terms and in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of Securities delivered to Holders thereof.

-14-

WTC 0000022

(g)    Upon issuance, all Securities with identical terms and held by the Depository on behalf of its participants will be represented by one or more Global Security and be deposited with the Depository and registered in the name of a nominee of the Depository. The Company may request the Trustee at any time to consolidate two or more outstanding Global Securities having identical terms and for which interest has been paid to the same date.

(h)    In any exchange provided for in any of the preceding five paragraphs, the Company will execute and the Trustee will authenticate and deliver individual fully registered Securities in authorized denominations, provided that the definitive Securities so issued in exchange for a Global Security shall be in denominations of $100,000 and any aggregate principal amount and tenor as the portion of such Global Security to be exchanged, and provided further that, unless the Company agrees otherwise, Securities in certificated registered form will be issued in exchange for a Global Security, or any portion thereof, only if such Securities in certificated registered form were requested by written notice to the Trustee or the Securities Registrar by or on behalf of a person who is beneficial owner of an interest thereof given through the Holder hereof. Except as provided above, owners of beneficial interest in a Global Security will not be entitled to receive physical delivery of Securities in certificated registered form and will not be considered the Holders thereof for any purpose under the Indenture. No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. Upon the exchange of a Global Security for individual Securities, such Global Security shall be cancelled by the Trustee. Securities issued in exchange for a Global Security pursuant to this Section 2.03 shall be registered in such names and in such authorized denominations as the Depository for such Global Security, pursuant to the instructions from its direct or indirect participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Securities to the persons in whose names such Securities are so registered.

(i)    Members in and participants of the Depository shall have no rights under the Indenture with respect to any Global Security held on their behalf by a Depository, and such Depository may be treated by the Company, the Trustee and any agent of the Company or the Trustee as the owner of such Global Security for all purposes whatsoever.

(j)    Any Company Order delivered pursuant to Section 3.03 by the Company with respect to the authentication, exchange, endorsement or delivery or redelivery of a Global Security shall be in writing, signed by any one of the officers enumerated under the definition of "Company Order" contained in Section 1.01 or by any officer authorized by a previously delivered Company Order, but need not comply with Section 1.02 and need not be accompanied by an Opinion of Counsel.

SECTION 2.04.    CUSIP Number

The Company in issuing Securities of any series may use a "CUSIP" number, and if so, the Trustee may use the CUSIP number in notices of redemption or exchange as a convenience to Holders of such series; provided, that any such notice may state that no representation is made as to the correctness or accuracy of the CUSIP number printed on the

-15-

WTC 0000023

notice or on the Securities of such series, and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Company will promptly notify the Trustee of any change in the CUSIP number of any series of Securities.

ARTICLE III

THE SECURITIES

SECTION 3.01.    Amount Unlimited; Issuable in Series.

The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. There shall be established in or pursuant to a Board Resolution, and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the initial issuance of Securities of any series:

(1)    the title of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2)    any limit upon the aggregate principal amount of the Securities of the series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Sections 2.03, 3.04, 3.05, 3.06, 9.06 or 11.07);

(3)    the formula, if any, by which the principal amount of Securities of the series outstanding may be determined from time to time;

(4)    the date or dates on which or periods during which the Securities of the series may be issued and the date or dates on which or the range of dates within which the principal of (and premium, if any, on) the Securities of the series are or may be payable or the method of determination thereof;

(5)    the rate or rates or the methods of determination thereof at which the Securities of the series shall bear interest, if any, the date or dates from which such interest shall accrue and the dates on which such interest shall be payable and the record date for the interest payable on any such interest date;

(6)    the place or places, if any, in addition to The City of New York, where the principal of (and premium, if any) and interest on Securities of the series shall be payable and the method of payment therefor;

-16-

WTC 0000024

(7)    the period or periods within which or the dates on which, the price or prices at which and the terms and conditions upon which Securities of the series may be redeemed, in whole or in part, at the option of the Company and/or the method by which such period or periods, dates, price or prices and terms and conditions shall be determined;

(8)    the obligation, if any, of the Company to redeem, purchase, convert, exchange or repay Securities of the series pursuant to any sinking fund or analogous provisions or otherwise or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series shall be redeemed, purchased, converted, exchanged or repaid, in whole or in part, pursuant to such obligation and/or the method by which such period or periods, price or prices or terms and conditions shall be determined;

(9)    provisions, if any, for the defeasance of Securities of the series;

(10)    if other than denominations of $1,000 and any integral multiple thereof, the denominations in which Securities of the series shall be issuable;

(11)    if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof pursuant to Section 5.02 or the method by which such portion shall be determined;

(12)    if other than Dollars, the Foreign Currency in which Securities of the series shall be denominated, or in which payment of the principal of (and premium, if any) and interest on the Securities of the series may be made or the method by which such Foreign Currency shall be determined;

(13)    if the principal of (and premium, if any) or interest on Securities of the series are to be payable, at the election of the Company or a Holder thereof, in a Currency other than that in which the Securities are denominated or stated to be payable without such election, the periods within which and the terms and conditions upon which, such election may be made and the time and the manner of determining the exchange rate between the Currency in which the Securities are denominated or payable without such election and the Currency in which the Securities are to be paid if such election is made;

(14)    if the amount of payments of principal (and premium, if any) or interest on the Securities of the series may be determined with reference to one or more securities issued by the Company or another company or to an index including, but not limited to, an index based on a Currency or Currencies other than that in which the Securities are payable, or any other type of index, the manner in which such amounts shall be determined;

-17-

WTC 0000025

(15)    if the Securities of the series are denominated or payable in a Foreign Currency, any other terms concerning the payment of principal of (premium, if any) or any interest on such Securities (including the Currency or Currencies of payment thereof);

(16)    the right of the Company, if any, to extend or defer interest payment periods and the duration of such extension or deferral, the dates on which such payment of interest shall be payable and whether and under what circumstances additional interest on amounts deferred shall be payable;

(17)    any additional Events of Default or covenants provided for with respect to Securities of the series or any Events of Default or covenants herein specified which shall not be applicable to the Securities of the series;

(18)    whether the Securities of the series shall be issued in whole or in part in the form of a Global Security or Securities; the terms and conditions, if any, upon which such Global Security or Securities may be exchanged in whole or in part for other individual Securities or for other Global Securities; and the Depository for such Global Security or Securities;

(19)    whether the Securities of the series are to be issuable in definitive form (whether upon original issuance or upon exchange of a temporary Security of the series) only upon receipt of certain certificates or other documents or satisfaction of other conditions, and, if so, the form and terms of such certificates, documents or conditions; and

(20)    any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

All Securities of any one series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in any such indenture supplemental hereto. All Securities of any series need not be issued at the same time and may be issued from time to time, consistent with the terms of this Indenture, if so provided by or pursuant to such Board Resolution and set forth in such Officer's Certificate or in any such indenture supplemental hereto.

At the option of the Company, interest on the Securities of any series that bears interest may be paid by mailing a check to the address of the person entitled thereto as such address shall appear in the Security Register.

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth, or providing the manner for determining, the terms of the series.

-18-

SECTION 3.02.    Denominations.

The Securities of each series shall be issuable in registered form without coupons in such denominations as shall be specified as contemplated by Section 3.01. In the absence of any such provisions with respect to the Securities of any series, the Securities of such series shall be issuable in denominations of $1,000 and any integral multiple thereof and shall be payable only in Dollars.

SECTION 3.03.    Execution, Authentication, Delivery and Dating.

The Securities shall be executed on behalf of the Company by its Chairman of the Board, its President, or one of its Vice Presidents, under its corporate seal reproduced thereon attested by its Secretary or one of its Assistant Secretaries. The signature of any of these officers on the Securities may be manual or facsimile. The seal of the Company may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities. Typographical and other minor errors or defects in any such reproduction of the seal or any such signature shall not affect the validity or enforceability of any Security that has been duly authenticated and delivered by the Trustee.

Securities bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the date of such Securities.

At any time and from time to time after the execution and delivery of this Indenture, the Company may deliver Securities of any series executed by the Company to the Trustee for authentication, together with a Company Order for the authentication and delivery of such Securities, and the Trustee in accordance with the Company Order and subject to the provisions hereof shall authenticate and make such Securities available for delivery. If the form or terms of the Securities of the series have been established in or pursuant to one or more Board Resolutions as permitted by Sections 2.01 and 3.01, in authenticating such Securities, and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 6.01) shall be fully protected in relying upon, an Opinion of Counsel stating that:

(1)    all instruments furnished by the Company to the Trustee in connection with the authentication and delivery of such Securities conform to the requirements of this Indenture and constitute sufficient authority hereunder for the Trustee to authenticate and deliver such Securities;

(2)    the form of such Securities has been established in conformity with the provisions of this Indenture;

-19-

WTC 0000027

(3)    the terms of such Securities have been established in conformity with the provisions of this Indenture;

(4)    in the event that the form or terms of such Securities have been established in a supplemental indenture, the execution and delivery of such supplemental indenture have been duly authorized by all necessary corporate action of the Company, such supplemental indenture has been duly executed and delivered by the Company and, assuming due authorization, execution and delivery by the Trustee, is a valid and binding obligation enforceable against the Company in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law);

(5)    the execution and delivery of such Securities have been duly authorized by all necessary corporate action of the Company and such Securities have been duly executed by the Company and, assuming due authentication by the Trustee and delivery by the Company, are the valid and binding obligations of the Company enforceable against the Company in accordance with their terms, entitled to the benefit of the Indenture, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law); and

(6)    the amount of Outstanding Securities of such series, together with the amount of such Securities, does not exceed any limit established under the terms of this Indenture on the amount of Securities of such series that may be authenticated and delivered.

In the event that all Securities of a series are not issued at the same time, the Trustee shall authenticate and deliver the Securities of such series executed and delivered by the Company for original issuance upon receipt of an order of the Company (which need not comply with Section 1.02 hereof), signed by an officer or employee of the Company identified to the Trustee in an Officers' Certificate, if the Trustee has previously received the Company Order and Opinion of Counsel referred to in the third paragraph of this Section 3.03 with respect to the issuance of any Securities of such series.

The Trustee shall not be required to authenticate such Securities if the issue of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and this Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Each Security shall be dated the date of its authentication.

-20-

WTC 0000028

No Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture.

SECTION 3.04.    Temporary Securities.

Pending the preparation of definitive Securities of any series, the Company may execute, and upon Company Order the Trustee shall authenticate and make available for delivery, temporary Securities which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Securities in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Securities may determine, as evidenced by their execution of such Securities.

If temporary Securities of any series are issued, the Company will cause definitive Securities of that series to be prepared without unreasonable delay. After the preparation of definitive Securities of such series, the temporary Securities of such series shall be exchangeable for definitive Securities of such series upon surrender of the temporary Securities of such series at the office or agency of the Company for that series, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Securities of any series the Company shall execute and the Trustee shall authenticate and make available for delivery in exchange therefor a like principal amount of definitive Securities of the same series of authorized denominations. Until so exchanged the temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of such series.

SECTION 3.05.    Registration, Registration of Transfer and Exchange.

The Company or the Trustee shall keep a register (the "Security Register") in which, subject to such reasonable regulations as the Company or the Trustee may prescribe, the Company or the Trustee shall provide for the registration of Securities and of transfers of Securities.

Upon surrender for registration of transfer of any Security of any series at the office or agency designated by the Company for that series, the Company shall execute, and the Trustee shall authenticate and make available for delivery, in the name of the designated transferee or transferees, one or more new Securities of the same series, of any authorized denominations and of a like aggregate principal amount.

At the option of the Holder, subject to Section 2.03, Securities of any series may be exchanged for other Securities of the same series, of any authorized denominations and of a like aggregate principal amount, upon surrender of the Securities to be exchanged at such office or agency. Whenever any Securities are so surrendered for exchange, the Company shall execute,

-21-

WTC 0000029

and the Trustee shall authenticate and make available for delivery, the Securities which the Holder making the exchange is entitled to receive.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Company or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Company or any registrar with respect to such series of Securities, duly executed by the Holder thereof or his attorney duly authorized in writing.

No service charge shall be made for any registration of transfer or exchange of Securities, but the Company or the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Section 3.04, 9.06 or 11.07 not involving any transfer.

The Company shall not be required (i) to issue, register the transfer of or exchange Securities of any series during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of Securities of that series selected for redemption under Section 11.03 and ending at the close of business on the day of such mailing, or (ii) to register the transfer of or exchange any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

None of the Company, the Trustee, any Paying Agent or the Securities Registrar will have any responsibility or liability for any aspect of the Depository's records relating to or payment made on account of beneficial ownership interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

SECTION 3.06.    Mutilated, Destroyed, Lost and Stolen Securities.

If any mutilated Security is surrendered to the Company or to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any Security and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and upon the Company's request the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new Security of

-22-

WTC 0000030

the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of that series duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

SECTION 3.07.    Payment of Interest; Interest Rights Preserved.

Interest on any Security which is payable, and is punctually paid or duly provided for, on any interest payment date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the record date (as hereinafter defined) for such interest notwithstanding the cancellation of such Security upon the registration of transfer or exchange subsequent to the record date and prior to such interest payment date; provided, however, that if and to the extent that the Company shall default in the payment of the interest due on such interest payment date, such defaulted interest shall be paid to the Persons in whose names outstanding Securities are registered at the close of business on a subsequent record date established by notice given by mail by and on behalf of the Company to the Holders of Securities not less than fifteen days preceding such subsequent record date, such record date to be not less than ten days preceding the date of payment of such defaulted interest. The term "record date" as used in this Section 3.07 with respect to any regular interest payment date shall mean such day preceding such interest payment date as may have been established as the record date with respect to an interest payment date for Securities of such series in a Board Resolution in accordance with Section 3.01 hereof. The Company may also make payment of any defaulted interest in any other lawful manner not inconsistent with the requirements of any securities exchange in which the Securities may be listed, and upon such notice as may be required by such exchange if, after notice given by the Company to the Trustee of the proposed payment pursuant to this sentence, such manner of payment shall be deemed practicable by the Trustee.

-23-

WTC 0000031

SECTION 3.08.    Persons Deemed Owners.

Prior to due presentment of a Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name such Security is registered as the owner of such Security for the purpose of receiving payment of principal of (and premium, if any) and (subject to Section 3.07) interest on such Security and for all other purposes whatsoever, whether or not such Security be overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be affected by notice to the contrary.

SECTION 3.09.    Cancellation.

All Securities surrendered for payment, redemption, registration of transfer or exchange or for credit against any sinking fund payment shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it; provided, however, that if surrendered to any Authenticating Agent, such Securities shall be promptly cancelled by such Authenticating Agent and forwarded to the Trustee. The Company may at any time deliver to the Trustee for cancellation any Securities previously authenticated and delivered hereunder which the Company may have acquired in any manner whatsoever, and all Securities so delivered shall be promptly cancelled by the Trustee. No Securities shall be authenticated in lieu of or in exchange for any Securities cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Securities held by the Trustee shall be disposed of as directed by a Company Order; provided that the Trustee shall not be required to dispose of securities in a manner deemed impracticable by the Trustee.

SECTION 3.10.    Computation of Interest.

Except as otherwise specified as contemplated by Section 3.01 for Securities of any series, interest on the Securities of each series shall be computed on the basis of a year of twelve 30-day months.

SECTION 3.11.    Currency of Payments in Respect of Securities.

(a)    Except as otherwise specified pursuant to Section 3.01, payment of the principal of (and premium, if any) and interest on Securities of any series will be made in Dollars.

(b)    For purposes of any provision of the indenture where the Holders of Outstanding Securities may perform an Act which requires that a specified percentage of the Outstanding Securities of all series perform such Act and for purposes of any decision or determination by the Trustee of amounts due and unpaid for the principal (and premium, if any) and interest on the Securities of all series in respect of which moneys are to be disbursed ratably, the principal of (and premium, if any) and interest on the Outstanding Securities denominated in a Foreign Currency will be the amount in Dollars based upon exchange rates determined as specified pursuant to Section 3.01 for Securities of such series, as of the date for determining

-24-

WTC 0000032

whether the Holders entitled to perform such Act have performed it, or as of the date of such decision or determination by the Trustee, as the case may be.

(c)     Any decision or determination to be made by the Trustee regarding exchange rates may be made instead by an agent appointed by the Trustee and acceptable to the Company; provided that such agent shall accept such appointment in writing and the terms of such appointment shall be acceptable to the Company and shall, in the opinion of the Company and the Trustee at the time of such appointment, require such agent to make such determination by a method consistent with the method provided pursuant to Section 3.01 for the making of such decision or determination. All decisions and determinations of the Trustee or the agent regarding exchange rates shall be in its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Company and all Holders of the Securities.

SECTION 3.12.     Judgments.

The Company may provide pursuant to Section 3.01 for Securities of any series that the obligation, if any, of the Company to pay the principal of (and premium, if any) and interest on the Securities of any series in a Foreign Currency or Dollars (the "Designated Currency") as may be specified pursuant to Section 3.01 is of the essence and thereby agree that, to the fullest extent possible under applicable law, judgments in respect of such Securities shall be given in the Designated Currency. In such event, the obligation of the Company to make payments in the Designated Currency of the principal of (and premium, if any) and interest on such Securities shall, notwithstanding any payment in any other Currency (whether pursuant to a judgment or otherwise), be discharged only to the extent of the amount of the Designated Currency that the Holder receiving such payment may, in accordance with normal banking procedures, purchase with the sum paid in such other Currency (after any premiums and cost of exchange) on the Business Day in the country of issue of the Designated Currency immediately following the day on which such Holder receives such payment. If the amount in the Designated Currency that may be so purchased for any reason falls short of the amount originally due, the Company shall pay such additional amounts as may be necessary to compensate for such shortfall, and any obligation of the Company not discharged by such payment shall be due as a separate and independent obligation and, until discharged as provided herein, shall continue in full force and effect.

# ARTICLE IV

## SATISFACTION AND DISCHARGE

SECTION 4.01.     Satisfaction and Discharge of Indenture.

This Indenture, with respect to the Securities of any series (if all series issued under this Indenture are not to be affected), shall upon Company Request cease to be of further effect (except as to any surviving rights of registration of transfer or exchange of Securities herein

-25-

WTC 0000033

| | |
|---|---|
| **From:** | Langdon, James <jlangdon@Sidley.com> |
| **Sent:** | Wednesday, December 24, 2008 5:43 PM (GMT) |
| **To:** | Eldersveld, David <DEldersveld@Tribune.com> |
| **Cc:** | Liebentritt, Don <dliebentritt@Tribune.com>; Bigelow, Chandler <CBigelow@tribune.com>; Rodden, Jack <JRodden@tribune.com> |
| **Subject:** | RE: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance |

Dave -

Redacted

Best,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036
*email:* jlangdon@sidley.com

> **From:** Eldersveld, David [mailto:DEldersveld@Tribune.com]
> **Sent:** Tuesday, December 23, 2008 8:07 PM
> **To:** Langdon, James
> **Cc:** Liebentritt, Don; Bigelow, Chandler; Rodden, Jack
> **Subject:** RE: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance

Redacted

> **From:** Langdon, James [mailto:jlangdon@Sidley.com]
> **Sent:** Tuesday, December 23, 2008 7:28 PM
> **To:** Eldersveld, David
> **Subject:** FW: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance

Dave -



Redacted

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**



Redacted

Best,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036
*email:* jlangdon@sidley.com

---

**From:** Scantling, James [mailto:jScantling@McCarter.com]
**Sent:** Tuesday, December 23, 2008 2:48 PM
**To:** Langdon, James
**Subject:** FW: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance


-----Original Message-----
**From:** David Contino [mailto:david.contino@db.com]
**Sent:** Tuesday, December 16, 2008 12:00 PM
**To:** Rodney Gaughan
**Cc:** Adler, David; Beardsley, Ellen; Scantling, James; Stan Burg
**Subject:** Re: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance


Rodney,

The current outstanding balance for Cusip # 896047305 (PHONES) is 4,953,884 units.   Please see the revised list
of exchanges below.



Interest has been paid through November 15, 2008.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH:  (908) 608-3183
Fax: (732) 578-4635
E-mail:   david.contino@db.com
http://www.tss.db.com


**Rodney Gaughan/db/dbcom**                                    To  "Scantling, James" <jScantling@McCarter.com>@DEUBAINT

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

12/18/2008 10:14 AM

cc "Adler, David" <dadler@mccarter.com>, David Contino/db/dbcom@DBAmerica
"Beardsley, Ellen" <ebeardsley@mccarter.com>, Stan Burg/db/dbcom@DBAn

Subject Re: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment
AcceptanceLink

Hi Jim,

Attached is a marked version.

David Contino will need to confirm the outstanding amount and the date interest has been paid through.

Jim, I'll give you a call shortly.

[attachment "Deutsche Bank_Instrument of Resignation  Appointment and Acceptance (2).DOC" deleted by David Contino/db/dbcom]

Best regards,

Rodney Gaughan, CCTS
Vice President
Deutsche Bank Trust Company Americas
Trust & Securities Services
MS NYC60-2720
60 Wall Street
New York, NY 10005-2858

Phone: 212 250-2935
Email:  rodney.gaughan@db.com

---

"Scantling, James" <jScantling@McCarter.com>

To Stan Burg/db/dbcom@DBAmericas, Rodney Gaughan/db/dbcom@DBAmerica
David Contino/db/dbcom@DBAmericas, "Adler, David" <dadler@mccarter.com

12/15/2008 04:30 PM

cc "Beardsley, Ellen" <ebeardsley@mccarter.com>

Subject DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and
Acceptance

Attached is a draft of the above-referenced Instrument for the PHONES.  It is based on the Instrument used in the DBTCA/WTC HRP Myrtle Beach succession. Please note that, for an unknown reason, we have had some formatting issues in the printed version of this document; if you experience a problem, please let us know.

---

**James G. Scantling  |  Partner  |  McCarter & English, LLP**
**CityPlace I, 185 Asylum Street  |  Hartford  |  Connecticut  06103**
**t: 860-275-6766  |  f: 860-724-3397  |  c: 860-690-2077  |  jscantling@McCarter.com**

Boston | Hartford | New York | Newark | Philadelphia| Stamford | Wilmington

---

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. [attachment "Blank Bkgrd.gif" deleted by Rodney Gaughan/db/dbcom] [attachment "Deutsche Bank_Instrument of Resignation  Appointment and Acceptance (2).DOC" deleted by Rodney Gaughan/db/dbcom]

---

This communication may contain confidential and/or privileged information.
If you are not the intended recipient (or have received this communication
in error) please notify the sender immediately and destroy this
communication. Any unauthorized copying, disclosure or distribution of the
material in this communication is strictly forbidden.

Deutsche Bank does not render legal or tax advice, and the information
contained in this communication should not be regarded as such.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*********************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or c
If you are not the intended recipient, please delete the e-mail and any attachments a
immediately.

*********************************************************************************

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**Paragraph 45 – G. TRB0586616–TRB0586619**