| From: | Langdon, James <jlangdon@Sidley.com> |
| Sent: | Wednesday, December 24, 2008 5:43 PM (GMT) |
| To: | Eldersveld, David <DEldersveld@Tribune.com> |
| Cc: | Liebentritt, Don <dliebentritt@Tribune.com>; Bigelow, Chandler <CBigelow@tribune.com>; Rodden, Jack <JRodden@tribune.com> |
| Subject: | RE: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance |

Dave -

Redacted

Best,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036
*email:* jlangdon@sidley.com

> **From:** Eldersveld, David [mailto:DEldersveld@Tribune.com]
> **Sent:** Tuesday, December 23, 2008 8:07 PM
> **To:** Langdon, James
> **Cc:** Liebentritt, Don; Bigelow, Chandler; Rodden, Jack
> **Subject:** RE: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance

Redacted

**From:** Langdon, James [mailto:jlangdon@Sidley.com]
**Sent:** Tuesday, December 23, 2008 7:28 PM
**To:** Eldersveld, David
**Subject:** FW: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance

Dave -



Redacted

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

Redacted

Best,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036
*email:* jlangdon@sidley.com

**From:** Scantling, James [mailto:jScantling@McCarter.com]
**Sent:** Tuesday, December 23, 2008 2:48 PM
**To:** Langdon, James
**Subject:** FW: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance

-----Original Message-----
**From:** David Contino [mailto:david.contino@db.com]
**Sent:** Tuesday, December 16, 2008 12:00 PM
**To:** Rodney Gaughan
**Cc:** Adler, David; Beardsley, Ellen; Scantling, James; Stan Burg
**Subject:** Re: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and Acceptance

Rodney,

The current outstanding balance for Cusip # 896047305 (PHONES) is 4,953,884 units.   Please see the revised list of exchanges below.

Interest has been paid through November 15, 2008.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH:  (908) 608-3183
Fax: (732) 578-4635
E-mail:   david.contino@db.com
http://www.tss.db.com

Rodney Gaughan/db/dbcom                              To  "Scantling, James" <jScantling@McCarter.com>@DEUBAINT

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

12/16/2008 10:14 AM

cc "Adler, David" <dadler@mccarter.com>, David Contino/db/dbcom@DBAmerica
"Beardsley, Ellen" <ebeardsley@mccarter.com>, Stan Burg/db/dbcom@DBAn
Subject Re: DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment
Acceptance Link

Hi Jim,

Attached is a marked version.

David Contino will need to confirm the outstanding amount and the date interest has been paid through.

Jim, I'll give you a call shortly.

[attachment "Deutsche Bank_Instrument of Resignation Appointment and Acceptance (2).DOC" deleted by David Contino/db/dbcom]

Best regards,

Rodney Gaughan, CCTS
Vice President
Deutsche Bank Trust Company Americas
Trust & Securities Services
MS NYC60-2720
60 Wall Street
New York, NY 10005-2858

Phone: 212 250-2935
Email:  rodney.gaughan@db.com

"Scantling, James" <jScantling@McCarter.com>

12/15/2008 04:30 PM

To Stan Burg/db/dbcom@DBAmericas, Rodney Gaughan/db/dbcom@DBAmerica
David Contino/db/dbcom@DBAmericas, "Adler, David" <dadler@mccarter.con>

cc "Beardsley, Ellen" <ebeardsley@mccarter.com>

Subject DBTCA/Wilmington Trust/Tribune Instrument of Resignation, Appointment and
Acceptance

Attached is a draft of the above-referenced Instrument for the PHONES.  It is based on the Instrument used in the DBTCA/WTC HRP Myrtle Beach succession. Please note that, for an unknown reason, we have had some formatting issues in the printed version of this document; if you experience a problem, please let us know.

---

**James G. Scantling  |  Partner  |  McCarter & English, LLP**
**CityPlace I, 185 Asylum Street  |  Hartford  |  Connecticut 06103**
**t: 860-275-6766  |  f: 860-724-3397  |  c: 860-690-2077  |  jscantling@McCarter.com**

Boston | Hartford | New York | Newark | Philadelphia| Stamford | Wilmington

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. [attachment "Blank Bkgrd.gif" deleted by Rodney Gaughan/db/dbcom] [attachment "Deutsche Bank_Instrument of Resignation Appointment and Acceptance (2).DOC" deleted by Rodney Gaughan/db/dbcom]

---

This communication may contain confidential and/or privileged information. If you are not the intended recipient (or have received this communication in error) please notify the sender immediately and destroy this communication. Any unauthorized copying, disclosure or distribution of the material in this communication is strictly forbidden.

Deutsche Bank does not render legal or tax advice, and the information contained in this communication should not be regarded as such.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This e-mail is sent by a law firm and may contain information that is privileged or c
If you are not the intended recipient, please delete the e-mail and any attachments a
immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Paragraph 45 – H. TRB0619555–TRB0619556

TRB0619555

TRB0619555

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

Tribune Company
Indenture dated April 1, 1999
(PHONES) - Exchge Sub. Deb due 2029

| # | Exchange Date | Holder | Number of Shares | DWAC Approved | Received Officers Certificate | Payment Date | Payment Amount |
|---|---|---|---|---|---|---|---|
| 1 | 9/12/2008 | Morgan Stanley | 10 | Yes | | | |
| 2 | 9/12/2008 | DB Securities | 10 | Yes | | | |
| 3 | 11/12/2008 | Goldman Sachs | 100 | Yes | Yes | 11/26/2008 | $1,738.50 |
| 4 | 11/14/2008 | Goldman Sachs | 75,700 | Yes | Yes | 12/1/2008 | $1,248,444.40 |
| 5 | 11/17/2008 | Goldman Sachs | 5,000 | Yes | Yes | 12/2/2008 | $79,800 |
| 6 | 11/18/2008 | DB Securities | 305,839 | Yes | Yes | 12/3/2008 | $4,728,951.31 |
| 7 | 11/26/2008 | Credit Suisse | 5,000 | Yes | Yes | 12/11/2008 | $85,975 |
| 8 | 12/1/2008 | Citadel | 80,000 | Yes | Yes | 12/15/2008 | $1,368,000 |
| 9 | 12/1/2008 | Goldman Sachs | 40,000 | Yes | Yes | 12/15/2008 | $684,000 |
| 10 | 12/1/2008 | Credit Suisse | 167,340 | Yes | Yes | 12/15/2008 | $2,861,514 |
| 11 | 12/2/2008 | Citadel | 1,200,000 | Yes | N/A - due on 12/10 | N/A | N/A |
| 12 | 12/2/2008 | DB Securities | 45,000 | Yes | N/A - due on 12/10 | N/A | N/A |
| 13 | 12/2/2008 | Citigroup | 40,000 | No | N/A - due on 12/10 | N/A | N/A |
| 14 | 12/3/2008 | Goldman Sachs | 197,237 | No | Yes | 12/17/2008 | $3,552,632.84 |
| 15 | 12/3/2008 | Citigroup | 29,750 | Yes | Yes | 12/17/2008 | $535,857 |
| 16 | 12/3/2008 | Citigroup | 18,175 | Yes | Yes | 12/17/2008 | $327,368.10 |
| 17 | 12/3/2008 | Citigroup | 92,954 | Yes | Yes | 12/17/2008 | $1,859,877.85 |
| 18 | 12/3/2008 | Citigroup | 36,868 | Yes | Yes | 12/17/2008 | $664,066.42 |
| 19 | 12/3/2008 | Citigroup | 12,600 | Yes | Yes | 12/17/2008 | $226,951.20 |
| 20 | 12/8/2008 | DB Securities | 627,090 | Yes | N/A - due on 12/16 | N/A | N/A |
| 21 | 12/8/2008 | Goldman Sachs | 197,237 | No | N/A - due on 12/16 | N/A | N/A |
| 22 | 12/8/2008 | Banc Of America | 75,000 | Yes | N/A - due on 12/16 | N/A | N/A |
| 23 | 12/8/2008 | UBS | 229,690 | Yes | N/A - due on 12/16 | N/A | N/A |
| | | | 3,046,116.00 | | | | |
| | | Original Units | 8,000,000.00 | | | | |
| | | Less Exchanges | 3,046,116.00 | | | | |
| | | Current Balance | 4,953,884.00 | | | | |

TRB0619556

TRB0619556

| | Holder Paid |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | Yes |
| 11 | Yes |
| 12 | Yes |
| 13 | Yes |
| 14 | N/A |
| 15 | N/A |
| 16 | N/A |
| 17 | N/A |
| 18 | N/A |
| 19 | N/A |
| 20 | N/A |
| 21 | N/A |
| 22 | N/A |
| 23 | N/A |
| 24 | N/A |
| 25 | N/A |
| 26 | N/A |
| 27 | N/A |
| 28 | N/A |
| 29 | N/A |
| 30 | N/A |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | |
| 38 | |
| 39 | |

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

# Paragraph 45 – I. TRB2000122- TRB2000125

## WIRE TRANSFER REQUEST FORM

Subsidiary /Department: TRIBUNE COMPANY

Project/Purpose of Wire Transfer:    QUARTERLY INTEREST PAYMENT - 2% PHONES 5/15/29, AND DIVIDEND TO

PHONES HOLDERS

| WIRE TRANSFER AMOUNT | WIRE TRANSFER DATE |
|---|---|
| $7,279,981.80 | 11/17/08 |

**WIRE TO:**

| | |
|---|---|
| Account Number | ▮ |
| Account Name | Deutsche Bank National Trust Company |
| Transit Routing Number | ▮ |
| Bank Name | NYLTD Funds Control New York |
| Bank City, State, Country | Summit, New Jersey |
| Special Instructions | QUARTERLY INTEREST PAYMENT - 2% PHONES 5/15/29, AND DIVIDEND TO |
| | PHONES HOLDERS       Cusip # 896047305 |
| Notify | Debt Service Unit |

**AUTHORIZATION:**

Approval/Date        _J. Rodda_        11/17/08

Approval/Date

Approval/Date

Corporate

| For Accounting Use |
|---|
| ▮ |
| Account/Center |

cc:  Margie Fabro (Corporate Accounting)

Highly Confidential - Attorneys' Eyes Only
TRB2000122

## OFFICERS' CERTIFICATE
## OF
## TRIBUNE COMPANY
### November 7, 2008

The undersigned, Jack Rodden, certifies that he is the duly elected, qualified and acting Vice President and Treasurer of Tribune Company, a Delaware corporation (the "Company"), and David P. Eldersveld, certifies that he is the duly elected, qualified and acting Secretary of the Company; and pursuant to (i) Section 1.02 of the Indenture, dated as of April 1, 1999, between the Company and Deutsche Bank Trust Company Americas, a New York banking corporation (as successor to Citibank, N.A.) (the "Trustee"), relating to the Company's Exchangeable Subordinated Debentures due 2029 (the "PHONES") and (ii) the terms of the PHONES, each of the undersigned does hereby certify that:

1.  This Officers' Certificate is being delivered to the Trustee in connection with the payment of Quarterly Interest to the holders of the PHONES on November 15, 2008 (the "Interest Payment Date").

2.  The amount of Fixed Interest payable on the Interest Payment Date is $0.785 per PHONES and $6,279,984.30 in the aggregate on all PHONES Outstanding on the relevant Regular Record Date.

3.  The amount of Variable Interest payable on the Interest Payment Date is $0.125 per PHONES and $999,997.50 in the aggregate on all PHONES Outstanding on the relevant Regular Record Date.

4.  The total Quarterly Interest payable on the Interest Payment Date on all PHONES Outstanding on the relevant Regular Record Date is $7,279,981.80.

5.  I have read the conditions precedent, if any, and the definitions relating thereto, provided for in the Indenture relating to the payment of Quarterly Interest.

6.  In connection with furnishing this Certificate, I have examined the records of the Company relating to the payment of Quarterly Interest and such other records and documents as I have deemed necessary or appropriate as a basis for the opinion expressed below in paragraph 7.

7.  In my opinion, I have made such examination or investigation as is necessary to enable me to express an informed opinion as to whether the conditions precedent, if any, and the definitions relating thereto, provided for in the Indenture with respect to the payment of Quarterly Interest have been complied with.

8.  In my opinion, such conditions have been complied with.

All capitalized terms used herein and not defined herein shall have the meanings ascribed to them in the PHONES.

CH1 4472685v.1

Highly Confidential - Attorneys' Eyes Only
TRB2000123

IN WITNESS WHEREOF, the undersigned has executed this Officers' Certificate as of date first above written.

By: _____
Name:  Jack Rodden
Title:   Vice President and Treasurer


By: _____
Name:  David P. Eldersveld
Title:   Vice President/Deputy General Counsel and
          Secretary

*Officers' Certificate*
*PHONES Quarterly Interest Payment*
*November 15, 2008*

Highly Confidential - Attorneys' Eyes Only
TRB2000124

**JPMorganChase** 🜚

October 25. 2008 through November 21. 2008
Account Number: ████████

## _ECTRONIC WITHDRAWALS│ *(continued)*

DATE    DESCRIPTION                                              AMOUNT

11/17   ████████████████████████████████          7,279,981.80

Highly Confidential - Attorneys' Eyes Only

# Paragraph 45 – J. WTC0000001–WTC0000079

**TRIBUNE COMPANY,**

**Issuer**

**and**

**BANK OF MONTREAL TRUST COMPANY,**

**Trustee**

---

**INDENTURE**

**Dated as of April 1, 1999**

---

**SUBORDINATED DEBT SECURITIES**

Reconciliation and tie between Trust Indenture Act of 1939 and Indenture dated as of April 1, 1999 between Tribune Company and Bank of Montreal Trust Company

| Trust Indenture Act Section | | Indenture Section |
|---|---|---|
| § 310 (a)(1) | . . . . . . . . . . . . . . . . . . . . . . . | 6.09 |
| (a)(2) | . . . . . . . . . . . . . . . . . . . . . . . | 6.09 |
| (a)(3) | . . . . . . . . . . . . . . . . . . . . . . . | Not Applicable |
| (a)(4) | . . . . . . . . . . . . . . . . . . . . . . . | Not Applicable |
| (a)(5) | . . . . . . . . . . . . . . . . . . . . . . . | 6.09 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | 6.08, 6.10 |
| § 311 (a) | . . . . . . . . . . . . . . . . . . . . . . . | 6.13 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | 6.13 |
| (b)(2) | . . . . . . . . . . . . . . . . . . . . . . . | 7.03(a), 7.03(b) |
| § 312 (a) | . . . . . . . . . . . . . . . . . . . . . . . | 7.01, 7.02(a) |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | 7.02(b) |
| (c) | . . . . . . . . . . . . . . . . . . . . . . . | 7.02(c) |
| § 313 (a) | . . . . . . . . . . . . . . . . . . . . . . . | 7.03(a) |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | 7.03(b) |
| (c) | . . . . . . . . . . . . . . . . . . . . . . . | 7.03(a), 7.03(b) |
| (d) | . . . . . . . . . . . . . . . . . . . . . . . | 7.03(b) |
| § 314 (a) | . . . . . . . . . . . . . . . . . . . . . . . | 7.04 |
| (a)(4) | . . . . . . . . . . . . . . . . . . . . . . . | 10.07 |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | Not Applicable |
| (c)(1) | . . . . . . . . . . . . . . . . . . . . . . . | 1.02 |
| (c)(2) | . . . . . . . . . . . . . . . . . . . . . . . | 1.02 |
| (c)(3) | . . . . . . . . . . . . . . . . . . . . . . . | Not Applicable |
| (d) | . . . . . . . . . . . . . . . . . . . . . . . | Not Applicable |
| (e) | . . . . . . . . . . . . . . . . . . . . . . . | 1.02 |
| § 315 (a) | . . . . . . . . . . . . . . . . . . . . . . . | 6.01(a) |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | 6.02, 7.03(a) |
| (c) | . . . . . . . . . . . . . . . . . . . . . . . | 6.01(b) |
| (d) | . . . . . . . . . . . . . . . . . . . . . . . | 6.01(c) |
| (d)(1) | . . . . . . . . . . . . . . . . . . . . . . . | 6.01(a), 601(c)(1) |
| (d)(2) | . . . . . . . . . . . . . . . . . . . . . . . | 6.01(c)(2) |
| (d)(3) | . . . . . . . . . . . . . . . . . . . . . . . | 6.01(c)(3) |
| (e) | . . . . . . . . . . . . . . . . . . . . . . . | 5.14 |
| § 316 (a) | . . . . . . . . . . . . . . . . . . . . . . . | 1.01 |
| (a)(1)(A) | . . . . . . . . . . . . . . . . . . . . . . . | 5.02, 5.12 |
| (a)(1)(B) | . . . . . . . . . . . . . . . . . . . . . . . | 5.02, 5.13 |
| (a)(2) | . . . . . . . . . . . . . . . . . . . . . . . | Not Applicable |
| (b) | . . . . . . . . . . . . . . . . . . . . . . . | 5.08 |
| (c) | . . . . . . . . . . . . . . . . . . . . . . . | 1.04(d) |
| § 317 (a)(1) | . . . . . . . . . . . . . . . . . . . . . . . | 5.03 |
| (a)(2) | . . . . . . . . . . . . . . . . . . . . . . . | 5.04 |

-i-

WTC 0000002

| (b) | . . . . . . . . . . . . . . . . . . . , . . . . | 10.03 |
| § 318 (a) | . . . . . . . . . . . . . . . . . . . . . . | 1.07 |

NOTE:   This reconciliation and tie shall not, for any purpose, deemed to be a part of the Indenture.

-ii-

WTC 0000003

# TABLE OF CONTENTS

Page

RECITALS OF THE COMPANY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## ARTICLE I
DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION . . . . . 1

SECTION 1.01.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
 "Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Affiliate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Authenticating Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Board of Directors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Board Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Business Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Commission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 "Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Company Request" or "Company Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Corporate Trust Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Currency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Depository . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . , , 3
 "Discharged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Dollar" or "$ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Event of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Fixed Rate Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Floating Rate Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Foreign Currency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Global Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 "Holder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 "Indenture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 "Officers' Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 "Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 "Original Issue Discount Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 "Outstanding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 "Paying Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 "Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 "Predecessor Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 "Redemption Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Redemption Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Responsible Officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Security Register . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Significant Subsidiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Subsidiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 "Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

-iii-

WTC 0000004

Page

"Trust Indenture Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
"Vice President . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
"United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
"U.S. Government Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SECTION 1.02. Compliance Certificates and Opinions . . . . . . . . . . . . . . . . . . . . . . . . 7
SECTION 1.03. Form of Documents Delivered to Trustee . . . . . . . . . . . . . . . . . . . . . . 7
SECTION 1.04. Acts of Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
SECTION 1.05. Notices, Etc., to Trustee and Company . . . . . . . . . . . . . . . . . . . . . . . 9
SECTION 1.06. Notice to Holders; Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
SECTION 1.07. Conflict with Trust Indenture Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
SECTION 1.08. Effect of Headings and Table of Contents . . . . . . . . . . . . . . . . . . . . . 10
SECTION 1.09. Successors and Assigns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
SECTION 1.10. Separability Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 1.11. Benefits of Indenture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 1.12. Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 1.13. Legal Holidays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
SECTION 1.14. Incorporators, Stockholders, Officers and Directors Exempt from
                Individual Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


ARTICLE II
SECURITY FORMS . . . . . . . . . . . . . . . . . . . . . . . . 12

SECTION 2.01. Forms Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
SECTION 2.02. Form of Trustee's Certificate of Authentication . . . . . . . . . . . . . . . . . 12
SECTION 2.03. Securities Issuable in the Form of a Global Security . . . . . . . . . . . . . . 13
SECTION 2.04. CUSIP Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


ARTICLE III
THE SECURITIES . . . . . . . . . . . . . . . . . . . . . . . . . 16

SECTION 3.01. Amount Unlimited; Issuable in Series . . . . . . . . . . . . . . . . . . . . . . . . 16
SECTION 3.02. Denominations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
SECTION 3.03. Execution, Authentication, Delivery and Dating . . . . . . . . . . . . . . . . . 19
SECTION 3.04. Temporary Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
SECTION 3.05. Registration, Registration of Transfer and Exchange . . . . . . . . . . . . . . 21
SECTION 3.06. Mutilated, Destroyed, Lost and Stolen Securities . . . . . . . . . . . . . . . . 22
SECTION 3.07. Payment of Interest; Interest Rights Preserved . . . . . . . . . . . . . . . . . . 23
SECTION 3.08. Persons Deemed Owners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
SECTION 3.09. Cancellation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
SECTION 3.10. Computation of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
SECTION 3.11. Currency of Payments in Respect of Securities . . . . . . . . . . . . . . . . . . 24
SECTION 3.12. Judgments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

WTC 0000005

ARTICLE IV
SATISFACTION AND DISCHARGE . . . . . . . . . . . . . . . . . . . . 25

SECTION 4.01.  Satisfaction and Discharge of Indenture . . . . . . . . . . . . . . . . . . . . . . . . . 25
SECTION 4.02.  Application of Trust Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ARTICLE V
REMEDIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

SECTION 5.01.  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
SECTION 5.02.  Acceleration of Maturity; Rescission and Annulment . . . . . . . . . . . . . . . . . 29
SECTION 5.03.  Collection of Indebtedness and Suits for Enforcement by Trustee . . . . . . . . 30
SECTION 5.04.  Trustee May File Proofs of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
SECTION 5.05.  Trustee May Enforce Claims Without Possession of Securities . . . . . . . . . . 32
SECTION 5.06.  Application of Money Collected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SECTION 5.07.  Limitation on Suits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
SECTION 5.08.  Unconditional Right of Holders to Receive Principal, Premium and Interest . 33
SECTION 5.09.  Restoration of Rights and Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
SECTION 5.10.  Rights and Remedies Cumulative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
SECTION 5.11.  Delay or Omission Not Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
SECTION 5.12.  Control by Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
SECTION 5.13.  Waiver of Past Defaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
SECTION 5.14.  Undertaking for Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
SECTION 5.15.  Waiver of Stay or Extension Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
SECTION 5.16.  Duty to Accelerate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ARTICLE VI
THE TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

SECTION 6.01.  Certain Duties and Responsibilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
SECTION 6.02.  Notice of Defaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
SECTION 6.03.  Certain Rights of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
SECTION 6.04.  Not Responsible for Recitals or Issuance of Securities . . . . . . . . . . . . . . . . 39
SECTION 6.05.  May Hold Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
SECTION 6.06.  Money Held in Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
SECTION 6.07.  Compensation and Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
SECTION 6.08.  Disqualification; Conflicting Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
SECTION 6.09.  Corporate Trustee Required; Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . 40
SECTION 6.10.  Resignation and Removal; Appointment of Successor . . . . . . . . . . . . . . . . 40
SECTION 6.11.  Acceptance of Appointment by Successor . . . . . . . . . . . . . . . . . . . . . . . . 42
SECTION 6.12.  Merger, Conversion, Consolidation or Succession to Business . . . . . . . . . . 43
SECTION 6.13.  Preferential Collection of Claims Against Company . . . . . . . . . . . . . . . . . 43
SECTION 6.14.  Appointment of Authenticating Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

WTC 0000006

ARTICLE VII
HOLDERS' LISTS AND REPORTS BY TRUSTEE AND COMPANY  . . . . . . . 45

SECTION 7.01.  Company to Furnish Trustee Names and Addresses of Holders . . . . . . . . . . 45
SECTION 7.02.  Preservation of Information; Communications to Holders . . . . . . . . . . . . . . 45
SECTION 7.03.  Reports by Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
SECTION 7.04.  Reports by Company  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

ARTICLE VIII
CONSOLIDATION, MERGER, CONVEYANCE, TRANSFER OR LEASE  . . . . . 48

SECTION 8.01.  Company May Consolidate, Etc., Only on Certain Terms . . . . . . . . . . . . . . 48
SECTION 8.02.  Successor Corporation Substituted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

ARTICLE IX
SUPPLEMENTAL INDENTURES  . . . . . . . . . . . . . . . . . . . . . 49

SECTION 9.01.  Supplemental Indentures without Consent of Holders . . . . . . . . . . . . . . . . 49
SECTION 9.02.  Supplemental Indentures with Consent of Holders  . . . . . . . . . . . . . . . . . . 50
SECTION 9.03.  Execution of Supplemental Indentures  . . . . . . . . . . . . . . . . . . . . . . . . . . 51
SECTION 9.04.  Effect of Supplemental Indentures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
SECTION 9.05.  Conformity with Trust Indenture Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
SECTION 9.06.  Reference in Securities to Supplemental Indentures  . . . . . . . . . . . . . . . . . . 51

ARTICLE X
COVENANTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

SECTION 10.01.  Payment of Principal, Premium and Interest  . . . . . . . . . . . . . . . . . . . . . 52
SECTION 10.02.  Maintenance of Office or Agency  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
SECTION 10.03.  Money for Securities Payments To Be Held in Trust . . . . . . . . . . . . . . . . . 52
SECTION 10.04.  Corporate Existence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
SECTION 10.05.  Maintenance of Properties  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
SECTION 10.06.  Payment of Taxes and Other Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
SECTION 10.07.  Statement as to Compliance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
SECTION 10.08.  Waiver of Certain Covenants  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
SECTION 10.09.  Payment of Additional Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

ARTICLE XI
REDEMPTION OF SECURITIES  . . . . . . . . . . . . . . . . . . . . . 55

SECTION 11.01.  Applicability of Article  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
SECTION 11.02.  Election to Redeem; Notice to Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . 55
SECTION 11.03.  Selection by Trustee of Securities to Be Redeemed . . . . . . . . . . . . . . . . . . 56
SECTION 11.04.  Notice of Redemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

WTC 0000007

Page

SECTION 11.05. Deposit of Redemption Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
SECTION 11.06. Securities Payable on Redemption Date . . . . . . . . . . . . . . . . . . . . . . . 57
SECTION 11.07. Securities Redeemed in Part . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

ARTICLE XII
SINKING FUNDS . . . . . . . . . . . . . . . . . . . . . . . 58

SECTION 12.01. Applicability of Article . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
SECTION 12.02. Satisfaction of Sinking Fund Payments with Securities . . . . . . . . . . . . . . 58
SECTION 12.03. Redemption of Securities for Sinking Fund . . . . . . . . . . . . . . . . . . . . . . 58

ARTICLE XIII
DEFEASANCE . . . . . . . . . . . . . . . . . . . . . . . 59

SECTION 13.01. Applicability of Article . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
SECTION 13.02. Defeasance upon Deposit of Moneys or U.S. Government Obligations . . . . 59
SECTION 13.03. Deposited Moneys and U.S. Government Obligations to Be Held in Trust . 61
SECTION 13.04. Repayment to Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

ARTICLE XIV
SUBORDINATION . . . . . . . . . . . . . . . . . . . . . . . 61

SECTION 14.01. Securities Subordinate to Senior Indebtedness . . . . . . . . . . . . . . . . . . . 61
SECTION 14.02. Payment Over of Proceeds upon Dissolution, Etc. . . . . . . . . . . . . . . . . . 62
SECTION 14.03. Prior Payment to Senior Indebtedness upon Acceleration of Securities . . . . 64
SECTION 14.04. Default in Senior Indebtedness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
SECTION 14.05. Payment Permitted if No Default . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
SECTION 14.06. Subrogation Rights of Holders of Senior Indebtedness . . . . . . . . . . . . . . 65
SECTION 14.07. Provision Solely to Define Relative Rights . . . . . . . . . . . . . . . . . . . . . . 66
SECTION 14.08. Trustee to Effectuate Subordination . . . . . . . . . . . . . . . . . . . . . . . . . . 66
SECTION 14.09. No Waiver of Subordination Provisions . . . . . . . . . . . . . . . . . . . . . . . 66
SECTION 14.10. Notice to Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
SECTION 14.11. Reliance on Judicial Order or Certificate of Liquidating Agent . . . . . . . . . 68
SECTION 14.12. Trustee Not Fiduciary for Holders of Senior Indebtedness . . . . . . . . . . . 68
SECTION 14.13. Rights of Trustee as Holder of Senior Indebtedness; Preservation of
                Trustee's Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
SECTION 14.14. Article XIV Applicable to Paying Agents . . . . . . . . . . . . . . . . . . . . . . . 69

NOTE:        This table of contents shall not, for any purpose, deemed to be a part of the
             Indenture.

WTC 0000008

INDENTURE, dated as of April 1, 1999 between Tribune Company, a corporation duly organized and existing under the laws of the State of Delaware (herein called the "Company"), having its principal office at 435 North Michigan Avenue, Chicago, Illinois 60611, and Bank of Montreal Trust Company, a trust company duly organized and existing under the laws of the State of New York, as Trustee (herein called the "Trustee").

## RECITALS OF THE COMPANY

The Company has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its unsecured debentures, notes or other evidences of indebtedness (herein called the "Securities"), to be issued in one or more series as in this Indenture provided.

All things necessary to make this Indenture a valid agreement of the Company, in accordance with its terms, have been done.

## NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Securities or of any series thereof, as follows:

## ARTICLE I

## DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 1.01.      Definitions.

For all purposes of this Indenture and any indenture supplemental hereto, except as otherwise expressly provided or unless the context otherwise requires:

(1)      the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(2)      all other terms used herein which are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein as of the date of this Indenture;

(3)      all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or

-1-

WTC 0000009

permitted hereunder shall mean such accounting principles as are generally accepted at the date of such computation;

(4)     the word "including" (and with correlative meaning "include") means including, without limiting the generality of, any description preceding such term; and

(5)     the words "herein," "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

Certain terms, used principally in Article Six, are defined in that Article.

"Act," when used with respect to any Holder, has the meaning specified in Section 1.04(a).

"Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Authenticating Agent" means, with respect to the Securities of any series, any Person authorized by the Trustee to act on behalf of the Trustee to authenticate the Securities of such series.

"Board of Directors" means either the board of directors of the Company or a duly authorized committee of such board.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"Business Day" means each Monday, Tuesday, Wednesday, Thursday and Friday which is not a day on which banking institutions in the City of Chicago, State of Illinois or The City of New York, State of New York or any city in which the Trustee's Corporate Trust Office is located, are authorized or obligated by law or regulation to close.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, as amended, or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

-2-

WTC 0000010

"Company" means the Person named as the "Company" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Company" shall mean such successor corporation.

"Company Request" or "Company Order" means a written request or order signed in the name of the Company by its Chairman of the Board, its President and Chief Executive Officer, or a Vice President, and by its Treasurer, an Assistant Treasurer, its Controller, an Assistant Controller, its Secretary or an Assistant Secretary, and delivered to the Trustee.

"Corporate Trust Office" means the principal office of the Trustee in The City of New York, New York, at which at any particular time its corporate trust business shall be principally administered, which office at the date of execution of this Indenture is located at Wall Street Plaza, 88 Pine Street, 19th Floor, New York, New York 10005.

"Corporation" includes corporations, associations, companies, business trusts and limited partnerships.

"Currency" means Dollars or Foreign Currency.

"Depository" means unless otherwise specified by the Company pursuant to either Sections 2.03 or 3.01, with respect to Securities of any series issuable or issued as a Global Security, The Depository Trust Company, New York, New York, or any successor thereto registered under the Securities and Exchange Act of 1934, as amended, or other applicable statute or regulation.

"Discharged" has the meaning specified in Section 13.02.

"Dollar" or "$" means the currency of the United States that at the time of payment is legal tender for the payment of public and private debts.

"Event of Default" has the meaning specified in Section 5.01.

"Fixed Rate Security" means a Security which provides for the payment of interest at a fixed rate.

"Floating Rate Security" means a Security which provides for the payment of interest at a variable rate determined periodically by reference to any security issued by the Company or another company or to an index or otherwise as specified pursuant to Section 3.01.

"Foreign Currency" means a currency issued by the government of any country other than the United States or a composite currency the value of which is determined by reference to the values of the currencies of any group of countries.

"Global Security" means a Security issued to evidence all or a part of any series of Securities which is executed by the Company and authenticated and delivered by the Trustee to

-3-

WTC 0000011

the Depository or pursuant to the Depository's instruction, all in accordance with this Indenture and pursuant to a Company Order, which shall be registered as to principal and interest in the name of the Depository or its nominee.

"Holder" means the Person or Persons in whose name or names a particular Security is registered in the Security Register.

"Indebtedness" has the meaning specified in Section 14.01.

"Indenture" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and shall include the terms of particular series of Securities established as contemplated by Section 3.01.

"Net Worth" means the aggregate amount of stockholders' investment as determined in accordance with generally accepted accounting principles.

"Officers' Certificate" means a certificate signed by the Chairman of the Board, the President, or a Vice President, and by the Treasurer, an Assistant Treasurer, the Controller, an Assistant Controller, the Secretary or an Assistant Secretary, of the Company, and delivered to the Trustee.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for the Company, and who shall be reasonably acceptable to the Trustee.

"Original Issue Discount Security" means any Security which provides for an amount less than the principal amount thereof to be due and payable upon the declaration of acceleration of the maturity thereof pursuant to Section 5.02.

"Outstanding", when used with respect to Securities or any series of Securities, means, as of the date of determination, all Securities or all Securities of such series, as the case may be, theretofore authenticated and delivered under this Indenture, except:

    (1)    Securities theretofore cancelled by the Trustee or any Authenticating Agent or delivered to the Trustee or any Authenticating Agent for cancellation;

    (2)    Securities, or portions thereof, for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the Company) in trust or set aside and segregated in trust by the Company (if the Company shall act as its own Paying Agent) for the Holders of such Securities; provided that, if such Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made;

-4-

WTC 0000012

(3)    Securities which have been paid pursuant to Section 3.06 or in exchange for or in lieu of which other Securities have been authenticated and delivered pursuant to this Indenture, other than any such Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Securities are held by a bona fide purchaser in whose hands such Securities are valid obligations of the Company; and

(4)    Securities which have been Discharged pursuant to Section 13.02;

provided, however, that in determining whether the Holders of the requisite principal amount of the Outstanding Securities have given any request, demand, authorization, direction, notice, consent or waiver hereunder, (i) the principal amount of an Original Issue Discount Security which shall be deemed to be Outstanding for such purposes shall be the portion of the principal amount thereof that could be declared to be due and payable upon the occurrence of an Event of Default and the continuation thereof pursuant to the terms of such Original Issue Discount Security as of such time and (ii) Securities owned by the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Securities which the Trustee knows to be so owned shall be so disregarded. Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledgee is not the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor.

"Paying Agent" means any Person authorized by the Company to pay the principal of (and premium, if any), interest or other amounts on any Securities on behalf of the Company.

"Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Predecessor Security" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security, and, for the purposes of this definition, any Security authenticated and delivered under Section 3.06 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed to evidence the same debt as the mutilated, destroyed, lost or stolen Security.

"principal" of a Security on any day and for any purpose means the amount (including without limitation, in the case of an Original Issue Discount Security, any accrued original issue discount, but excluding interest) that is payable with respect to such Security as of such date and for such purpose (including without limitation, in connection with any sinking fund, upon any redemption at the option of the Company upon any purchase or exchange at the option of the Company or the holder of such Security and upon the acceleration of the maturity of such Security).

-5-

WTC 0000013

"Redemption Date", when used with respect to any Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

"Redemption Price", when used with respect to any Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

"Responsible Officer", when used with respect to the Trustee, means the chairman or any vice chairman of the board of directors, the chairman or any vice chairman of the executive committee of the board of directors, the chairman of the trust committee, the president, any vice president, any assistant vice president, the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

"Securities" has the meaning stated in the first recital of this Indenture and more particularly means any Securities authenticated and delivered under this Indenture.

"Security Register" has the meaning specified in Section 3.05.

"Senior Indebtedness" has the meaning specified in Section 14.01.

"Significant Subsidiary" has the meaning specified in Section 5.01.

"Subsidiary" means a corporation more than 50% of the outstanding voting stock of which is owned, directly or indirectly, by the Company or by one or more other Subsidiaries, or by the Company and one or more other Subsidiaries. For the purposes of this definition, "voting stock" means stock which ordinarily has voting power for the election of directors, whether at all times or only so long as no senior class of stock has such voting power by reason of any contingency.

"Trustee" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such with respect to one or more series of Securities pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean and include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" shall mean and include each such Person, and "Trustee," as used with respect to the Securities of any series, shall mean the Trustee with respect to Securities of that series.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended, as in force at the date as of which this instrument was executed, except as provided in Section 9.05; provided, however, that in the event that such act is amended after such date, "Trust Indenture Act" means, to the extent required by such amendment, the Trust Indenture Act of 1939, as amended.

-6-

WTC 0000014

"Vice President", when used with respect to the Company or the Trustee, means any vice president, whether or not designated by a number or a word or words added before or after the title "vice president".

"United States" means the United States of America (including the District of Columbia), its territories, its possessions and other areas subject to its jurisdiction.

"U.S. Government Obligations" has the meaning specified in Section 13.02.

SECTION 1.02.    Compliance Certificates and Opinions.

Upon any application or request by the Company to the Trustee to take any action under any provision of this Indenture, the Company shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or request, no additional certificate or opinion need be furnished.

Every certificate (other than any Officers' Certificate delivered pursuant to Section 10.07) or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)    a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(2)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)    a statement that, in the opinion of each such individual, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(4)    a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 1.03.    Form of Documents Delivered to Trustee.

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters

-7-

WTC 0000015

and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an officer of the Company may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate or opinion may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Company stating that the information with respect to such factual matters is in the possession of the Company, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Any certificate or opinion of an officer or opinion of counsel may be based, insofar as it relates to any accounting matters, upon a certificate or opinion of, or representations by, an accountant or firm of accountants in the employ of the Company, unless such officer or counsel, as the case may be, knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such accounting matters are erroneous. Any certificate or opinion of any independent firm of public accountants filed with and directed to the Trustee shall contain a statement that such firm is independent.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

SECTION 1.04.    Acts of Holders.

(a)    Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by a specified percentage of Holders of one or more series then Outstanding may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such specified percentage of Holders in person or by an agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are or are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01) conclusive in favor of the Trustee and the Company, if made in the manner provided in this Section.

(b)    The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity other than his individual capacity, such

-8-

WTC 0000016

certificate or affidavit shall also constitute sufficient proof of his authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any other manner which the Trustee deems sufficient.

(c)     The ownership of Securities shall be proved by the Security Register.

(d)     The Company may fix a record date for the purpose of determining the identity of the Holders entitled to participate in any Act authorized or permitted under this Indenture, which record date shall be the later of (i) 10 days prior to the first solicitation of the written instruments required for such Act or (ii) the date of the most recent list of Holders furnished to the Trustee prior to such solicitation pursuant to Section 7.01. If such a record date is fixed, the Persons who were the Holders of the Securities of the affected series at the close of business on such record date (or their duly authorized proxies) shall be the only Persons entitled to execute written instruments with respect to such Act, or to revoke any written instrument previously delivered, whether or not such Persons shall continue to be Holders of the Securities of such series after such record date. No such written instrument shall be valid or effective for more than 150 days after such record date.

(e)     Any request, demand, authorization, direction, notice, consent, waiver or other Act of the Holder of any Security shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Security.

SECTION 1.05.    Notices, Etc., to Trustee and Company.

Any request, demand, authorization, direction, notice, consent, waiver or other Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with,

(1)     the Trustee by any Holder or by the Company shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, or

(2)     the Company by the Trustee or by any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to the Company addressed to the attention of its Secretary at 435 North Michigan Avenue, Chicago, Illinois 60611, or at any other address previously furnished in writing to the Trustee by the Company.

Any such Act or other document shall be in the English language.

-9-

WTC 0000017

expressly provided for), and the Trustee, at the expense of the Company, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture, when

    (1)   either

    (A)   all Securities theretofore authenticated and delivered (other than (i) Securities which have been destroyed, lost or stolen and which have been replaced or paid as provided in Section 3.06 and (ii) Securities for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust, as provided in Section 10.03) have been delivered to the Trustee for cancellation; or

    (B)   all such Securities not theretofore delivered to the Trustee for cancellation

    (i)  have become due and payable, or

    (ii)  will become due and payable at their stated maturity within one year, or

    (iii)  if the Securities of such series are denominated and payable only in Dollars (except as provided pursuant to Section 3.01) and such Securities are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Company,

and the Company, in the case of (i), (ii) or (iii) above, has deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount in Dollars sufficient to pay and discharge the entire indebtedness on such Securities not theretofore delivered to the Trustee for cancellation, for principal (and premium, if any) and interest to the date of such deposit (in the case of Securities which have become due and payable) or to the stated maturity or Redemption Date, as the case may be;

    (2)   the Company has paid or caused to be paid all other sums payable hereunder by the Company; and

    (3)   the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

WTC 0000034

In the event there are Securities of two or more series hereunder, the Trustee shall be required to execute an instrument acknowledging satisfaction and discharge of this Indenture only if requested to do so with respect to Securities of all series as to which it is Trustee and if the other conditions thereto are met. In the event there are two or more Trustees hereunder, then the effectiveness of any such instrument shall be conditioned upon receipt of such instruments from all Trustees hereunder.

Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Company to the Trustee under Section 6.07, the obligations of the Trustee to any Authenticating Agent under Section 6.14 and, if money shall have been deposited with the Trustee pursuant to subclause (B) of clause (1) of this Section, the obligations of the Trustee under Section 4.02 and the last paragraph of Section 10.03 shall survive.

SECTION 4.02.    Application of Trust Money.

Subject to the provisions of the last paragraph of Section 10.03, all money deposited with the Trustee pursuant to Section 4.01 shall be held in trust and applied by it, in accordance with the provisions of the Securities and this Indenture, to the payment, either directly or through any Paying Agent (including the Company acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.


## ARTICLE V

## REMEDIES

SECTION 5.01.    Events of Default.

"Event of Default," wherever used herein with respect to Securities of any series, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body which has occurred and is continuing):

(1)    default in the payment of any interest upon any Security of that series when it becomes due and payable, and continuance of such default for a period of 30 days (subject to the Company's right, if any, to defer any payment or extent any due date in accordance with the terms of the Securities of such series); or

(2)    default in the payment of the principal of (or premium, if any, on) any Security of that series when due and payable as therein or herein provided whether at its maturity or upon acceleration, redemption or otherwise; or

-27-

WTC 0000035

(3)     default in the deposit of any sinking fund payment, when and as due by the terms of a Security of that series; or

(4)     default in the performance, or breach, of any covenant or warranty of the Company in this Indenture (other than a covenant or warranty a default in whose performance or whose breach is elsewhere in this Section 5.01 specifically dealt with or which has expressly been included in this Indenture solely for the benefit of series of Securities other than that series), and continuance of such default or breach for a period of 60 days after there has been given, by registered or certified mail, to the Company by the Trustee or to the Company and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of that series a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(5)     the entry by a court having jurisdiction in the premises of (A) a decree or order for relief in respect of the Company or any Significant Subsidiary in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law now or hereafter in effect or (B) a decree or order adjudging the Company or any Significant Subsidiary a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Company or any Significant Subsidiary under any applicable Federal or State law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Company or a Significant Subsidiary or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and the continuance of any such decree or order for relief or any such other decree or order unstayed and in effect for a period of 60 consecutive days; or

(6)     the commencement by the Company or any Significant Subsidiary of a voluntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law now or hereafter in effect or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by the Company or any Significant Subsidiary to the entry of a decree or order for relief in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law now or hereafter in effect or to the commencement of any bankruptcy or insolvency case or proceeding against the Company or any Significant Subsidiary, or the filing by the Company or any Significant Subsidiary of a petition or answer or consent seeking reorganization or relief under any applicable Federal or State law now or hereafter in effect, or the consent by the Company or any Significant Subsidiary to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or similar official of the Company or any Significant Subsidiary or of any substantial part of the property of the Company or any Significant Subsidiary, or the making by the

-28-

WTC 0000036

Company or any Significant Subsidiary of an assignment for the benefit of creditors, or the Company or any Significant Subsidiary shall fail generally to pay its debts as they become due, or the taking of corporate action by the Company or any Significant Subsidiary in furtherance of any such action; or

(7)    any other Event of Default provided with respect to Securities of that series.

For purposes of this Section 5.01 the term "Significant Subsidiary" shall mean any Subsidiary (i) which, as of the close of the fiscal year of the Company immediately preceding the date of any determination hereunder, contributed more than 7% of the consolidated gross operating revenues of the Company and its Subsidiaries, or (ii) the Net Worth of which (determined in a manner consistent with the manner of determining consolidated Net Worth of the Company and its Subsidiaries) as of the close of such immediately preceding fiscal year exceeded 7% of the consolidated Net Worth of the Company and its Subsidiaries.

SECTION 5.02.    Acceleration of Maturity; Rescission and Annulment.

If an Event of Default with respect to Securities of any series at the time Outstanding, occurs and is continuing, then in every such case, unless the principal of all of the Securities of such series shall have already become due and payable, the Trustee or the Holders of not less than 25% in principal amount of the Outstanding Securities of that series may declare the principal amount (or, in the case of certain Securities which provide for less than the entire principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof pursuant to this Section 5.02, such portion of the principal amount as may be specified in the terms of that series of Securities) and the interest accrued thereon of all of the Securities of that series to be due and payable immediately, by a notice in writing to the Company (and to the Trustee if given by Holders), and upon any such declaration such principal amount (or specified amount) and interest accrued thereon shall become immediately due and payable.

At any time after such a declaration of acceleration with respect to Securities of any series has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter in this Article provided, the Holders of a majority in principal amount of the Outstanding Securities of that series, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if

(1)    the Company has paid or deposited with the Trustee a sum in the Currency in which such Securities are denominated (except as otherwise provided pursuant to Section 3.01) sufficient to pay

(A)    all overdue interest on all Securities of that series,

(B)    the principal of (and premium, if any, on) any Securities of that series which have become due otherwise than by such declaration of

-29-

WTC 0000037

acceleration and interest thereon at the rate or rates prescribed therefor in such Securities,

(C)    to the extent that payment of such interest is lawful, interest upon overdue interest at the rate or rates prescribed therefor in such Securities, and

(D)    all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel;

and

(2)    all Events of Default with respect to Securities of that series, other than the nonpayment of the principal of Securities of that series which have become due solely by such declaration of acceleration, have been cured or waived as provided in Section 5.13.

No such rescission shall affect any subsequent default or impair any right consequent thereon.

For all purposes under this Indenture, if a portion of the principal of any Original Issue Discount Securities shall have been accelerated and declared due and payable pursuant to the provisions hereof, then, from and after such declaration, unless such declaration shall have been rescinded and annulled, the principal amount of such Original Issue Discount Securities shall be deemed, for all purposes hereunder, to be such portion of the principal thereof as shall be due and payable as a result of such declaration; and payment of the portion of the principal thereof as shall have become due and payable as a result of such declaration, together with interest, if any, thereon and all other amounts owing thereunder, shall constitute payment in full of such Original Issue Discount Securities.

SECTION 5.03.    Collection of Indebtedness and Suits for Enforcement by Trustee.

The Company covenants that if

(1)    default is made in the payment of any interest on any Security when such interest becomes due and payable (subject to the Company's right, if any, to extend or defer an interest payment date in accordance with the terms of such Security) and such default continues for a period of 30 days; or

(2)    default is made in the payment of the principal of (or premium, if any, on) any Security when due and payable whether at its maturity or upon acceleration, redemption or otherwise;

(3)    default is made in the deposit of any sinking fund payment when and as due by the terms of any Security,

-30-

WTC 0000038

the Company will, upon demand of the Trustee, pay to it, for the benefit of the Holders of such Securities, the whole amount then due and payable on such Securities for principal (and premium, if any) and interest, interest on any overdue principal (and premium, if any) and, to the extent that payment of such interest shall be legally enforceable, interest on any overdue interest, at the rate or rates prescribed therefor in such Securities, and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel.

If the Company fails to pay such amounts forthwith upon such demand, the Trustee, in its own name as trustee of an express trust, may institute a judicial proceeding for the collection of the sums so due and unpaid, may prosecute such proceeding to judgment or final decree and may enforce the same against the Company or any other obligor upon such Securities and collect the moneys adjudged or decreed to be payable in the manner provided by law out of the property of the Company or any other obligor upon such Securities, wherever situated.

If an Event of Default with respect to Securities of any series occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Holders of Securities of such series by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy.

SECTION 5.04.    Trustee May File Proofs of Claim.

In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other similar judicial proceeding relative to the Company, or any other obligor upon the Securities or the property of the Company, or of such other obligor or their creditors, the Trustee (irrespective of whether the principal of the Securities shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand on the Company for the payment of overdue principal or interest) shall be entitled and empowered, by intervention in such proceeding or otherwise:

(1)    to file and prove a claim for the whole amount of principal (and premium, if any) and interest owing and unpaid in respect of the Securities and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and of the Holders allowed in such judicial proceeding, and

(2)    to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the

-31-

WTC 0000039

Trustee, and in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under Section 6.07.

Subject to the provisions of Article Eight of this Indenture, nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Securities or the rights of any Holder thereof or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

SECTION 5.05.    Trustee May Enforce Claims Without Possession of Securities.

All rights of action and claims under this Indenture or the Securities may be prosecuted and enforced by the Trustee without the possession of any of the Securities or the production thereof in any proceeding relating thereto, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders of the Securities in respect of which such judgment has been recovered.

In any proceeding brought by the Trustee (and also in any proceeding involving the interpretation of any provision of this Indenture to which the Trustee shall be a party), the Trustee shall be held to represent all the Holders of the Securities in respect to which action was taken, and it shall not be necessary to make any Holders of such Securities parties to any such proceedings.

SECTION 5.06.    Application of Money Collected.

Any money collected by the Trustee pursuant to this Article in respect of Securities of any series shall be applied in the following order, at the date or dates fixed by the Trustee and, in case of the distribution of such money on account of principal (or premium, if any) or interest, upon presentation of the Securities in respect of which moneys have been collected and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

FIRST: To the payment of all amounts due the Trustee under Section 6.07 applicable to such series;

SECOND: To the payment of the amounts then due and unpaid for principal of (and premium, if any) and interest on the Securities of such series in respect of which or for the benefit of which such money has been collected, ratably, without preference or priority of any kind, according to the amounts due and payable on such Securities of such series for principal (and premium, if any) and interest, respectively; and

-32-

THIRD:  To the Company.

SECTION 5.07.      Limitation on Suits

No Holder of any Security of any series shall have any right to institute any proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a custodian, liquidator, assignee, sequestrator, receiver, trustee, or other similar official, or for any other remedy hereunder, unless:

(1)      such Holder has previously given written notice to the Trustee of a continuing Event of Default with respect to the Securities of that series;

(2)      the Holders of not less than 25% in principal amount of the Outstanding Securities of that series shall have made written request to the Trustee to institute proceedings in respect of such Event of Default in its own name as Trustee hereunder;

(3)      such Holder or Holders have offered to the Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request;

(4)      the Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute any such proceeding; and

(5)      no direction inconsistent with such written request has been given to the Trustee during such 60-day period by the Holders of a majority in principal amount of the Outstanding Securities of that series;

it being understood and intended that no one or more of Holders of Securities of any series shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other such Holder or Holders of any other series, or to obtain or to seek to obtain priority or preference over any other such Holders or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all Holders of Securities of the affected series.

SECTION 5.08.      Unconditional Right of Holders to Receive Principal, Premium and Interest.

Notwithstanding any other provision in this Indenture, the Holder of any Security shall have the right, which is absolute and unconditional, to receive payment of the principal of (and premium, if any) and (subject to Section 3.07) interest on such Security on the due dates (subject to any right of the Company, if any, to defer any payment or extend any due date in accordance with the terms of the Security) expressed in such Security (or, in the case of redemption, on the Redemption Date) and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder.

-33-

WTC 0000041

SECTION 5.09.    Restoration of Rights and Remedies.

If the Trustee or any Holder has instituted any proceeding to enforce any right or remedy under this Indenture and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Holder, then and in every such case, subject to any determination in such proceeding, the Company, the Trustee and the Holders shall be restored severally and respectively to their former positions hereunder and thereafter all rights and remedies of the Trustee and the Holders shall continue as though no such proceeding had been instituted.

SECTION 5.10.    Rights and Remedies Cumulative.

Except as otherwise provided with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities in the last paragraph of Section 3.06, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

SECTION 5.11.    Delay or Omission Not Waiver.

No delay or omission of the Trustee or of any Holder of any Securities to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

SECTION 5.12.    Control by Holders.

The Holders of a majority in principal amount of the Outstanding Securities of any series shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred on the Trustee, with respect to the Securities of such series, provided that

(1)    such direction shall not be in conflict with any rule of law or with this Indenture,

(2)    the Trustee shall have determined that the action so directed would not be unjustly prejudicial to the Holders of any Securities of any series with respect to which the Trustee is the Trustee not taking part in such direction,

-34-

WTC 0000042

(3)    the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction, and

(4)    the Trustee shall be indemnified as hereinafter provided.

SECTION 5.13.    Waiver of Past Defaults.

Subject to Section 5.02, the Holders of not less than a majority in principal amount of the Outstanding Securities of any series may by written notice to the Trustee on behalf of the Holders of all the Securities of such series waive any past default or Event of Default hereunder with respect to such series and its consequences, except a default or Event of Default

(1)    in respect of the payment of the principal of (or premium, if any) or interest on any Security of such series, or

(2)    in respect of a covenant or provision hereof which under Article Nine cannot be modified or amended without the consent of the Holder of each Outstanding Security of such series affected.

Upon any such waiver, such default or Event of Default shall cease to exist and shall be deemed to have been cured, for every purpose of this Indenture and the Securities of such series; but no such waiver shall extend to any subsequent or other default or Event of Default or impair any right consequent thereon.

SECTION 5.14.    Undertaking for Costs.

All parties to this Indenture agree, and each Holder of any Security by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to any suit instituted by the Trustee, to any suit instituted by any Holder, or group of Holders, holding in the aggregate more than 10% in principal amount of the Outstanding Securities of any series, or to any suit instituted by any Holder for the enforcement of the payment of the principal of (or premium, if any) or interest on any Security on or after the due dates expressed in such Security (or, in the case of redemption, on or after the Redemption Date).

SECTION 5.15.    Waiver of Stay or Extension Laws.

The Company covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may

-35-

WTC 0000043

affect the covenants or the performance of this Indenture; and the Company (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law and covenants that it will not hinder, delay or impede the exercise of any power herein granted to the Trustee, but will suffer and permit the exercise of every such power as though no such law had been enacted.

SECTION 5.16.    Duty to Accelerate.

The Trustee shall be under no duty to accelerate the debt hereunder or to institute any proceedings unless it knows or in the exercise of reasonable diligence should have known of the existence of an Event of Default hereunder.

ARTICLE VI

THE TRUSTEE

SECTION 6.01.    Certain Duties and Responsibilities.

(a)    Except during the continuance of an Event of Default with respect to Securities of any series, the Trustee's duties and responsibilities with respect to Securities of such series under this Indenture shall be governed by Section 315(a) of the Trust Indenture Act.

(b)    In case an Event of Default with respect to Securities of any series has occurred and is continuing, the Trustee shall exercise, with respect to Securities of such series, such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(c)    No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that

(1)    this Subsection shall not be construed to limit the effect of Subsection (a) of this Section;

(2)    the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(3)    the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in principal amount of the Outstanding Securities of any series pursuant to the provisions of Section 5.12 relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or

-36-

WTC 0000044

exercising any trust or power conferred upon the Trustee, under this Indenture with respect to the Securities of such series; and

(4)     no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)     Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section.

SECTION 6.02.     Notice of Defaults.

Within 90 days after the occurrence of any default hereunder with respect to the Securities of any series, the Trustee shall transmit by mail to all Holders of Securities of such series, as their names and addresses appear in the Security Register, notice of such default hereunder known to the Trustee, unless such default shall have been cured or waived; provided, however, that, except in the case of a default in the payment of the principal of (or premium, if any) or interest on any Security of such series or in the payment of any sinking fund installment with respect to Securities of such series, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee or a trust committee of directors or Responsible Officers of the Trustee in good faith determine that the withholding of such notice is in the interest of the Holders of Securities of such series; and provided, further, that in the case of any default of the character specified in Section 5.01(4) with respect to the Securities of such series, no such notice to Holders shall be given until at least 30 days after the occurrence thereof. For the purpose of this Section, the term "default" means any event which is, or after notice or passage of time or both would become, an Event of Default with respect to Securities of such series.

SECTION 6.03.     Certain Rights of Trustee.

Subject to the provisions of Section 6.01 and the Trust Indenture Act:

(1)     the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(2)     any request or direction of the Company mentioned herein shall be sufficiently evidenced by a Company Request or Company Order and any resolution of the Board of Directors shall be sufficiently evidenced by a Board Resolution;

-37-

WTC 0000045

(3)   whenever in the administration of this Indenture the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, rely upon an Officers' Certificate;

(4)   before the Trustee acts or refrains from acting, the Trustee may consult with counsel and the written advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(5)   the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any of the Holders pursuant to this Indenture, unless such Holders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction;

(6)   the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such matters of fact as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Company, personally or by agent or attorney;

(7)   the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder; and

(8)   except for (i) a default under Sections 5.01 (1), (2) or (3) hereof or (ii) any other event of which the Trustee has "actual knowledge" and which event, with the giving of notice or the passage of time or both, would constitute an Event of Default under this Indenture, the Trustee shall not be deemed to have notice of any default or Event of Default with respect to Securities of any series at the time Outstanding unless specifically notified in writing of such event by the Company or the Holders of not less than 25% in principal amount of the Outstanding Securities of that series; as used herein, the term "actual knowledge" means the actual fact or state of knowing, without any duty to make any investigation with regard thereto.

-38-

WTC 0000046

SECTION 6.04.    Not Responsible for Recitals or Issuance of Securities.

The recitals contained herein and in the Securities, except the Trustee's certificate of authentication, shall be taken as the statements of the Company, and neither the Trustee nor any Authenticating Agent assumes any responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities. Neither the Trustee nor any Authenticating Agent shall be accountable for the use or application by the Company of Securities or the proceeds thereof.

SECTION 6.05.    May Hold Securities.

The Trustee, any Authenticating Agent, any Paying Agent or any other agent of the Company, in its individual or any other capacity, may become the owner or pledgee of Securities and, subject to Sections 6.08 and 6.13, may otherwise deal with the Company with the same rights it would have if it were not Trustee, Authenticating Agent, Paying Agent or such agent.

SECTION 6.06.    Money Held in Trust.

Money held by the Trustee in trust hereunder need not be segregated from other funds except to the extent required by law and except as otherwise provided herein. The Trustee shall be under no liability for interest on any money received by it hereunder except as otherwise agreed with the Company.

SECTION 6.07.    Compensation and Reimbursement.

The Company agrees:

(1)    to pay to the Trustee from time to time reasonable compensation in Dollars for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);

(2)    except as otherwise expressly provided herein, to reimburse the Trustee in Dollars upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its negligence or bad faith; and

(3)    to indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending itself against any

-39-

WTC 0000047

claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

SECTION 6.08.    Disqualification; Conflicting Interests.

The Trustee shall be disqualified only where such disqualification is required by Section 310(b) of the Trust Indenture Act. Nothing shall prevent the Trustee from filing with the Commission the application referred to in the second to last paragraph of Section 310(b) of the Trust Indenture Act.

SECTION 6.09.    Corporate Trustee Required; Eligibility.

There shall at all times be a trustee hereunder which shall be eligible to act as Trustee under Section 310(a)(1) of the Trust Indenture Act having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by Federal or State authority. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of said supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. Neither the Company nor any Person directly or indirectly controlling, controlled by, or under common control with the Company may serve as Trustee. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Article Six.

SECTION 6.10.    Resignation and Removal; Appointment of Successor.

(a)    No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee in accordance with the applicable requirements of Section 6.11.

(b)    The Trustee may resign at any time with respect to the Securities of one or more series by giving written notice thereof to the Company. If the instrument of acceptance by a successor Trustee required by Section 6.11 shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

(c)    The Trustee may be removed at any time with respect to the Securities of any series by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series, delivered to the Trustee and to the Company.

(d)    If at any time:

-40-

WTC 0000048

(1)    the Trustee shall fail to comply with Section 310(b) of the Trust Indenture Act after written request therefor by the Company or by any Holder who has been a bona fide Holder of a Security of the series as to which the Trustee has a conflicting interest for at least six months; or

(2)    the Trustee shall cease to be eligible under Section 6.09 and shall fail to resign after written request therefor by the Company or by any such Holder; or

(3)    the Trustee shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation;

then, in any such case, (i) the Company by a Board Resolution may remove the Trustee with respect to all Securities, or (ii) subject to Section 5.14, any Holder who has been a bona fide Holder of a Security for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee with respect to all Securities and the appointment of a successor Trustee or Trustees.

(e)    If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause, with respect to the Securities of one or more series, the Company, by a Board Resolution, shall promptly appoint a successor Trustee or Trustees with respect to the Securities of that or those series (it being understood that any such successor Trustee may be appointed with respect to the Securities of one or more or all of such series and that at any time there shall be only one Trustee with respect to the Securities of any particular series) and shall comply with the applicable requirements of Section 6.11. If, within one year after such resignation, removal or incapacity, or the occurrence of such vacancy, a successor Trustee with respect to the Securities of any series shall be appointed by Act of the Holders of a majority in principal amount of the Outstanding Securities of such series delivered to the Company and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment in accordance with the applicable requirements of Section 6.11, become the successor Trustee with respect to the Securities of such series and to that extent supersede the successor Trustee appointed by the Company with respect to such Securities. If no successor Trustee with respect to the Securities of any series shall have been so appointed by the Company or the Holders of Securities of such series and accepted appointment in the manner required by Section 6.11, any Holder who has been a bona fide Holder of a Security of such series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Securities of such series.

(f)    The Company shall give notice of each resignation and each removal of the Trustee with respect to the Securities of any series and each appointment of a successor Trustee with respect to the Securities of any series by mailing written notice of such event by first-class mail, postage prepaid, to all Holders of Securities of such series as their names and addresses

-41-

WTC 0000049

appear in the Security Register. Each notice shall include the name of the successor Trustee with respect to the Securities of such series and the address of its Corporate Trust Office.

SECTION 6.11.    Acceptance of Appointment by Successor.

(a)    In case of the appointment hereunder of a successor Trustee with respect to all Securities, every such successor Trustee so appointed shall execute, acknowledge and deliver to the Company and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee; but, on the request of the Company or the successor Trustee, such retiring Trustee shall, upon payment of its charges, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder.

(b)    In case of the appointment hereunder of a successor Trustee with respect to the Securities of one or more (but not all) series, the Company, the retiring Trustee and each successor Trustee with respect to the Securities of one or more series shall execute and deliver an indenture supplemental hereto wherein each successor Trustee shall accept such appointment and which (1) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor Trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor Trustee relates, (2) if the retiring Trustee is not retiring with respect to all Securities, shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee, and (3) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust, that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee and that no Trustee shall be responsible for any act or failure to act on the part of any other Trustee hereunder; and upon the execution and delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein, such retiring Trustee shall with respect to the Securities of that or those series to which the appointment of such successor Trustee relates have no further responsibility for the exercise of rights and powers or for the performance of the duties and obligations vested in the Trustee under this Indenture, and each such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Securities of that or those series to which the appointment of such successor Trustee relates; but, on request of the Company or any successor Trustee, such retiring Trustee shall duly assign, transfer and deliver to such Successor Trustee, to the extent contemplated by such supplemental indenture, the property and money held by such retiring Trustee hereunder

-42-

WTC 0000050

with respect to the Securities of that or those series to which the appointment of such successor Trustee relates.

(c)    Upon request of any such successor Trustee, the Company shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts referred to in paragraph (a) or (b) of this Section, as the case may be.

(d)    No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article Six.

SECTION 6.12.    Merger, Conversion, Consolidation or Succession to Business.

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, provided such corporation shall be otherwise qualified and eligible under this Article, without the execution or filing of any paper or any further act on the part of any of the parties hereto.  In case any Securities shall have been authenticated, but not delivered, by the Trustee then in office, any successor (by merger, conversion, consolidation or otherwise permitted hereunder) to such authenticating Trustee may adopt such authentication and deliver the Securities so authenticated with the same effect as if such successor Trustee had itself authenticated such Securities.

SECTION 6.13.    Preferential Collection of Claims Against Company.

The Trustee shall comply with Section 311(a) of the Trust Indenture Act, excluding any creditor relationship listed in Section 311(b) of the Trust Indenture Act.  A Trustee who has resigned or been removed shall be subject to Section 311(a) of the Trust Indenture Act to the extent indicated therein.

SECTION 6.14.    Appointment of Authenticating Agent.

At any time when any of the Securities remain Outstanding the Trustee may appoint an Authenticating Agent or Agents with respect to one or more series of Securities which shall be authorized to act on behalf of the Trustee to authenticate Securities of such series issued upon exchange, registration of transfer or partial redemption thereof or pursuant to Section 3.06 and Securities so authenticated shall be entitled to the benefits of this Indenture and shall be valid and obligatory for all purposes as if authenticated by the Trustee hereunder.  Wherever reference is made in this Indenture to the authentication and delivery of Securities by the Trustee or the Trustee's certificate of authentication, such reference shall be deemed to include authentication and delivery by an Authenticating Agent and a certificate of authentication executed by an Authenticating Agent.  Each Authenticating Agent shall be acceptable to the Company and shall at all times be a corporation organized and doing business under the laws of the United States of

-43-

WTC 0000051

America, any State thereof or the District of Columbia, authorized under such laws to act as Authenticating Agent, having a combined capital and surplus of not less than $50,000,000 and subject to supervision or examination by Federal or State authority. If such Authenticating Agent publishes reports of condition at least annually, pursuant to law or to the requirements of said supervising or examining authority, then for the purposes of this Section 6.14, the combined capital and surplus of such Authenticating Agent shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time an Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section 6.14, such Authenticating Agent shall resign immediately in the manner and with the effect specified in this Section 6.14.

Any corporation into which an Authenticating Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which such Authenticating Agent shall be a party, or any corporation succeeding to the corporate agency or corporate trust business of an Authenticating Agent, shall continue to be an Authenticating Agent, provided such corporation shall be otherwise eligible under this Section 6.14, without the execution or filing of any paper or any further act on the part of the Trustee or the Authenticating Agent.

An Authenticating Agent may resign at any time by giving written notice thereof to the Trustee and to the Company. The Trustee may at any time terminate the agency of an Authenticating Agent by giving written notice thereof to such Authenticating Agent and to the Company. Upon receiving such a notice of resignation or upon such a termination, or in case at any time such Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section, the Trustee may appoint a successor Authenticating Agent which shall be acceptable to the Company and shall mail written notice of such appointment by first-class mail, postage prepaid, to all Holders of Securities of the series with respect to which such Authenticating Agent will serve, as their names and addresses appear in the Security Register. Any successor Authenticating Agent upon acceptance of its appointment hereunder shall become vested with all rights, powers and duties of its predecessor hereunder, with like effect as if originally named as an Authenticating Agent. No successor Authenticating Agent shall be appointed unless eligible under the provisions of this Section 6.14.

The Trustee agrees to pay to each Authenticating Agent from time to time reasonable compensation for its services under this Section 6.14, and the Trustee shall be entitled to be reimbursed for such payments.

The provisions of Sections 3.08, 6.04 and 6.05 shall be applicable to each Authenticating Agent.

Pursuant to each appointment made under this Section 6.14, the Securities of each series covered by such appointment may have endorsed thereon, in addition to the Trustee's certificate of authentication, an alternate certificate of authentication in the following form:

-44-

WTC 0000052

This is one of the Securities of the series designated herein referred to in the within-mentioned Indenture.

_____
As Authenticating Agent

By: _____
Authorized Signature

## ARTICLE VII

## HOLDERS' LISTS AND REPORTS BY TRUSTEE AND COMPANY

SECTION 7.01.        Company to Furnish Trustee Names and Addresses of Holders.

The Company will furnish or cause to be furnished to the Trustee

(1)        semi-annually, not more than 15 days after each record date with respect to a regular interest payment date for each series of Securities, a list, in such form as the Trustee may reasonably require, containing all the information in the possession and control of the Company or of its paying agents regarding the names and addresses of the Holders of such series as of such record date; provided, however, that if Securities of any series shall have more than two regular interest payment dates in each calendar year or shall not bear interest, then such list with respect to such series of Securities will be furnished to the Trustee semi-annually on such dates as may be agreeable to the Trustee; and

(2)        at such other times as the Trustee may request in writing, within 30 days after the receipt by the Company of any such request, a list of similar form and content as of a date not more than 15 days prior to the time such list is furnished;

except that if the Trustee is the sole registrar with respect to any series of Securities, no such list need be furnished with respect to such series.

SECTION 7.02.        Preservation of Information: Communications to Holders.

(a)        The Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of Holders contained in the most recent list furnished to the Trustee as provided in Section 7.01 and the names and addresses of Holders received by the

-45-

WTC 0000053

Trustee in its capacity as sole Security Registrar, if so acting. The Trustee may destroy any list furnished to it as provided in Section 7.01 upon receipt of a new list so furnished.

(b)    If three or more Holders (herein referred to as "applicants") apply in writing to the Trustee, and furnish to the Trustee reasonable proof that each such applicant has owned a Security for a period of at least six months preceding the date of such application, and such application states that the applicants desire to communicate with other Holders with respect to their rights under this Indenture or under the Securities and is accompanied by a copy of the form of proxy or other communication which such applicants propose to transmit, then the Trustee shall, within five Business Days after the receipt of such application, at its election, either

(1)    afford such applicants access to the information preserved at the time by the Trustee in accordance with Section 7.02(a), or

(2)    inform such applicants as to the approximate number of Holders whose names and addresses appear in the information preserved at the time by the Trustee in accordance with Section 7.02(a), and as to the approximate cost of mailing to such Holders the form of proxy or other communication, if any, specified in such application.

If the Trustee shall elect not to afford such applicants access to such information, the Trustee shall, upon the written request of such applicants, mail to each Holder whose name and address appears in the information preserved at the time by the Trustee in accordance with Section 7.02(a) a copy of the form of proxy or other communication which is specified in such request, with reasonable promptness after a tender to the Trustee of the material to be mailed and of payment, or provision for the payment, of the reasonable expenses of mailing, unless within five days after such tender the Trustee shall mail to such applicants and file with the Commission, together with a copy of the material to be mailed, a written statement to the effect that, in the opinion of the Trustee, such mailing would be contrary to the best interest of the Holders or would be in violation of applicable law. Such written statement shall specify the basis of such opinion. If the Commission, after opportunity for a hearing upon the objections specified in the written statement so filed, shall enter an order refusing to sustain any of such objections or if, after the entry of an order sustaining one or more of such objections, the Commission shall find, after notice and opportunity for hearing, that all the objections so sustained have been met and shall enter an order so declaring, the Trustee shall mail copies of such material to all such Holders with reasonable promptness after the entry of such order and the renewal of such tender; otherwise the Trustee shall be relieved of any obligation or duty to such applicants respecting their application.

(c)    Every Holder of Securities, by receiving and holding the same, agrees with the Company and the Trustee that neither the Company nor the Trustee nor any agent of either of them shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Holders in accordance with Section 7.02(b), regardless of the source from which such information was derived, and that the Trustee shall not be held accountable by reason of mailing any material pursuant to a request made under Section 7.02(b).

-46-

WTC 0000054

SECTION 7.03.    Reports by Trustee.

(a)    Within 60 days after May 15 of each year commencing with the year 2000, the Trustee shall transmit by mail to all Holders as provided in Section 313(c) of the Trust Indenture Act, a brief report dated as of such May 15, if required by and in compliance with Section 313(a) of the Trust Indenture Act. The Trustee shall also comply with Section 313(b) of the Trust Indenture Act.

(b)    A copy of each such report shall, at the time of such transmission to Holders, be filed by the Trustee with each stock exchange upon which any Securities are listed, with the Commission and with the Company. The Company will notify the Trustee when any Securities are listed on any stock exchange.

SECTION 7.04.    Reports by Company.

The Company shall:

(1)    file with the Trustee, within 15 days after the Company is required to file the same with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) which the Company may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"); or, if the Company is not required to file information, documents or reports pursuant to either of said Sections, then it shall file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports which may be required pursuant to Section 13 of the Exchange Act in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

(2)    file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional information, documents and reports with respect to compliance by the Company with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(3)    transmit by mail to all Holders, as their names and addresses appear in the Security Register, within 30 days after the filing thereof with the Trustee, such summaries of any information, documents and reports required to be filed by the Company pursuant to paragraphs (1) and (2) of this Section as may be required by rules and regulations prescribed from time to time by the Commission.

-47-

WTC 0000055