## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:  March 22, 2012 at 2:30 p.m. (ET)**<br>**Objection Deadline: March 15, 2012 at 4:00 p.m. (ET)** |

## MOTION OF DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO AND PERFORMANCE OF OBLIGATIONS UNDER SETTLEMENT AGREEMENT WITH THE MARYLAND COMPTROLLER OF THE TREASURY

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors"), hereby submit this motion (the "Motion")

seeking entry of an order pursuant to section 363 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); JuliusAir Company, LLC; The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Code") and rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") authorizing two of the Debtors – The Baltimore Sun Company ("Baltimore

Sun") and Los Angeles Times International, Ltd. ("LATI" and, together with Baltimore Sun, the

"Taxpayers") – to enter into and perform their obligations under that certain settlement

agreement with the Maryland Comptroller of the Treasury (the "Comptroller"), a copy of which

is attached hereto as Exhibit A (the "Settlement Agreement"). Pursuant to the Settlement

Agreement, the Debtors seek to settle the disputed prepetition liability of the Taxpayers for

corporate income taxes for the periods ending December 2000 through December 2007 (the

"2000-2007 Tax Years") owed to the Comptroller. In accordance with the proposed settlement,

the Taxpayers and the Comptroller agree that Baltimore Sun owes the Comptroller a total of

$6,355,300 for the 2000-2007 Tax Years, and that LATI has no liability to the Comptroller for

the 2000-2007 Tax Years. In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

      1.     On December 8, 2008 (the "Petition Date"), Tribune Company and certain

of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111

entities.

      2.     The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy

Rules.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

3.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Creditors' Committee").

5.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELEVANT BACKGROUND

6.     The Settlement Agreement resolves disputes between the Taxpayers and the Comptroller concerning corporate income taxes of the Taxpayers that the Comptroller asserts the Taxpayers owe for the 2000-2007 Tax Years. Prior to the Petition Date, Baltimore Sun filed timely tax returns for each of the 2000-2007 Tax Years. The Comptroller began an audit of the Baltimore Sun's liability for the 2004 and 2005 tax years on September 28, 2006 and ultimately assessed additional taxes for such tax years in the amount of $4,357,676 (plus interest and penalty) to Baltimore Sun on July 19, 2007 (the "Baltimore Sun Assessment"). In addition to the audit of Baltimore Sun, the Comptroller began an audit of LATI for the tax years 2000 through 2003 on March 29, 2004 and ultimately assessed taxes against LATI for such tax years in the amount of $9,280,676 (plus interest and penalty) on July 19, 2007 (the "LATI Assessment" and, together with the Baltimore Sun Assessment, the "Assessments").[3] The Comptroller has not

---

[3] LATI did not file tax returns with Maryland for the tax years at issue, because it is LATI's position that Maryland lacked sufficient jurisdiction over LATI to impose a tax on its income and therefore LATI did not believe any tax

audited the Taxpayers' liability for the 2006 or 2007 tax years, and has not issued any assessments against the Taxpayers for such tax years.

7.     The audits of Baltimore Sun and LATI for Maryland corporate income taxes began the appeals process in Maryland of determining the Taxpayers' ultimate liability. Upon conclusion of an audit in Maryland, the auditor provides a taxpayer with audit work papers and issues a Notice of Assessment. If the taxpayer decides to protest the proposed assessment set forth in that notice, the taxpayer must file a protest and request an informal conference with the Comptroller. The taxpayer may then have the merits of the protest resolved through an administrative process. If the taxpayer is unsuccessful at the administrative level, the Comptroller will issue a "Notice of Final Determination." A taxpayer may then seek a *de novo* review of the Comptroller's decision by filing a petition in the Maryland Tax Court.

8.     The Taxpayers timely submitted protests to the Comptroller in response to the Assessments (the "Protests") on or about August 17, 2007. The Protests raised the following issues: (i) whether Baltimore Sun was entitled to deduct interest paid on loans from affiliates; and (ii) whether Maryland had sufficient jurisdiction over LATI to impose a tax on its income.

9.     In an attempt to further a consensual resolution of the disputed tax liabilities set forth in the Assessments, on November 30, 2007, the Taxpayers met with representatives of the Comptroller's office. The meeting did not result in a resolution of all the disputed tax matters; however, as a result of the meeting, the Comptroller withdrew the LATI Assessment for the 2000 tax year and the period January 2001 through June 2001. This withdrawal reduced LATI's disputed tax liability to $6,489,404, plus interest and penalty.

---

was owed to Maryland. During the course of the Comptroller's audit of Baltimore Sun, the Comptroller took the position that Maryland did have sufficient jurisdiction over LATI, and commenced the audit of LATI to determine LATI's tax liability to Maryland.

46429/0001-8345659v1

10.    Following the filing of the Taxpayers' chapter 11 cases in December 2008, the Comptroller filed a proof of claim (the "Bankruptcy Claim") against "Patuxent Publishing Company T/A: Baltimore Sun Co." on April 24, 2009, which was assigned claim number 2257 by the Court-appointed claims agent. The Court-appointed claims agent has classified the Bankruptcy Claim as a claim against Tribune Company notwithstanding the entities named on the face of the claim, given that the Comptroller utilized the Tribune Company case number in filing its claim. The Bankruptcy Claim asserted a claim based on the Comptroller's records and audits of Baltimore Sun's tax liabilities for "various periods".[4] The Bankruptcy Claim asserted a priority tax claim under section 507(a)(8) of the Bankruptcy Code in the amount of $6,355,300 and a general unsecured claim in the amount of $402,528, for a total of $6,757,828. The Comptroller did not file a claim against LATI relating to the LATI Assessment (or any other proof of claim regarding LATI), but has asserted that it will continue to pursue such assessment in Maryland Tax Court and would seek leave to file a late claim given the Debtors' assertion that the Comptroller's failure to file a proof of claim against LATI barred the assertion of its claim against that entity.

11.    On March 15, 2010, the Comptroller issued a Notice of Final Determination (the "Final Notices") to the Taxpayers, which assessed taxes against Baltimore Sun in the amount of $4,357,676 plus interest and penalty for tax years 2004 and 2005 and assessed taxes against LATI in the amount of $6,489,404 plus interest and penalty for tax years 2001 through 2003. Any effort by the Comptroller to enforce its prepetition claims continued to be subject to the automatic stay under section 362(a) of the Bankruptcy Code; however, in order to preserve the Taxpayers' full range of options to contest the Comptroller's claims, and without

---

[4] The Debtors have confirmed with the Comptroller that the Bankruptcy Claim was intended to be asserted against Baltimore Sun, and that the tax liability of Patuxent Publishing Company is not at issue in the Assessments or the Bankruptcy Claim.

waiving the applicability of the automatic stay, the Taxpayers timely filed petitions of appeal in the Maryland Tax Court challenging the Final Notices on April 14, 2010.

12.    After a series of discussions that began in July 2010, and a meeting with representatives of the Comptroller's office and the Maryland Attorney General's office, the Taxpayers and the Comptroller reached a resolution of the disputed tax liability on January 24, 2012.

13.    In the Settlement Agreement, a copy of which is attached hereto as Exhibit A, the Comptroller and the Taxpayers have agreed that Baltimore Sun owes Maryland corporate income taxes for the 2004 and 2005 tax years in the amount of $4,356,143, plus prepetition interest of $1,999,157, for a total payment of $6,355,300 (the "Tax Liability"). See Settlement Agreement at ¶ 2(a). The Taxpayers and the Comptroller further agree that the Comptroller will have an allowed claim pursuant to section 507(a)(8) of the Bankruptcy Code against Baltimore Sun in the amount of the Tax Liability, which shall be paid as an allowed priority tax claim under Baltimore Sun's plan of reorganization. Id. at ¶ 2(b). In addition, the Comptroller has agreed that LATI has no liability for Maryland corporate income taxes for the 2000-2007 Tax Years. Id. at ¶¶ 2(a), 3, 6. The Comptroller will withdraw the Final Notice against LATI in its entirety and abate any remaining portion of the Final Notice against Baltimore Sun. Id. at ¶ 3. The Comptroller further agrees in the Settlement Agreement that (s)he will not seek to assert a late claim against LATI or any other Debtors in these chapter 11 cases on account of such amounts. Id. at. ¶ 2(b). In addition, the Settlement Agreement resolves any and all claims of the Comptroller with respect to the Taxpayers' potential tax liability for the 2006 and 2007 tax years, and the Comptroller agrees that it will not enter any assessments of corporate income tax, interest or penalty against the Taxpayers for such tax years. Id. at ¶¶ 6, 8. As a result, the Settlement

6

Agreement resolves the Taxpayers' liability to the Comptroller for the 2000-2007 Tax Years in full. <u>Id.</u>

## RELIEF REQUESTED

14.     By this Motion, the Debtors respectfully request that the Court enter an order authorizing the Taxpayers to enter into and perform all of their obligations under the Settlement Agreement.  The Settlement Agreement settles the disputed assessments and claims asserted by the Comptroller relating to the Taxpayers' corporate income tax liabilities for the 2000 through 2005 tax years, and precludes the Comptroller from asserting additional assessments of corporate income tax liabilities against the Taxpayers for the 2006 and 2007 tax years.  The settlement of the Taxpayers' tax liabilities for the specified taxable periods is final and conclusive with respect to all tax, penalties, and interest owed by the Taxpayers for such taxable periods, except for one limited exception set forth in the Settlement Agreement.[5]  The Debtors also request that the Court authorize the Court-appointed claims agent to modify the Debtors' claims register to reflect that the Bankruptcy Claim is asserted in the proper amount against Baltimore Sun in accordance with the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

15.     Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

---

[5] Specifically, the Settlement Agreement is a final and complete resolution of the Taxpayers' tax liabilities for the 2000-2007 Tax Years, except for further adjustments that may be made to Taxpayers' Maryland tax liability, which were not at issue in the Settlement Agreement or included in the settlement amount, due to any final federal determination(s). (Settlement Agreement at ¶ 9.)

Fed. R. Bankr. P. 9019(a).  The Third Circuit has stated that section 363 of the Bankruptcy Code

is the substantive provision requiring a hearing and court approval of settlements, while

Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured.  See

Myers v. Martin (In re Martin), 91 F.3d 389, 395 n. 2 (3d Cir. 1996) (distinguishing the

substance of section 363 from the procedural effect of Bankruptcy Rule 9019).

      16.     In determining whether to approve a settlement pursuant to section 363 of

the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy

court is required to "assess and balance the value of the claim that is being compromised against

the value to the estate of the acceptance of the compromise proposal." Id. at 393.  In making this

determination, a court should consider four criteria: "(1) the probability of success in the

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay...; and (4) the paramount interest of the creditors." Id.

(referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,

390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D.

Del. 1998) (listing the Anderson factors as controlling whether a settlement should be approved).

The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the

estate.  See In re Louise's, Inc., 221 B.R. 798, 801 (D. Del. 1997).

      17.     The terms of the Settlement Agreement are fair and reasonable and in the

best interests of the Debtors and the Taxpayers' estates.  The Settlement Agreement is the

product of arm's-length negotiations between the Taxpayers and the Comptroller that took place

over a eighteen-month period beginning in July 2010 through January 2012, which were in

furtherance of discussions between the Taxpayers and the Comptroller dating back to 2007.

During the course of the negotiations, the Taxpayers and the Comptroller exchanged views as to

46429/0001-8345659v1

the merits of their respective positions regarding the disputed Final Notices, the Bankruptcy

Claim, the potential late-filed claim against LATI, and the petition for appeal pending at the

Maryland Tax Court.  As a result of these negotiations, the Comptroller and the Taxpayers

agreed that the amounts of taxes and interest set forth in the Settlement Agreement represent an

accurate amount of tax liability owed to the Comptroller for the 2000-2007 Tax Years.

18.    As a result of the negotiations and Settlement Agreement, the

Comptroller's assessed liability for taxes for the six (6) tax years ending between

December 2000 through December 2005, inclusive, will be reduced by over $6.4 million from

the amounts the Comptroller asserted it was owed in the Final Notices, a reduction of over 59%

of the tax amounts assessed by the Comptroller in the Final Notices.  Further, as a result of the

Settlement Agreement, the Comptroller will not assess any additional tax liability against the

Taxpayers for the 2006 and 2007 tax years.  The Settlement Agreement thus constitutes a

significant reduction of the Taxpayers' potential liability to the Comptroller, and provides a

corresponding benefit to the Debtors' estates.

19.    Furthermore, the dispute between the Taxpayers and the Comptroller has

been on-going for over four years and, and absent the resolution afforded by the Settlement

Agreement, the Comptroller and the Taxpayers would be forced to continue to litigate the merits

of the Comptroller's claims before this Court or in the Maryland Tax Court.  In addition, the

Comptroller likely would have attempted to file a late claim against LATI in its chapter 11 case,

an effort that would have been objected to by the Debtors and possibly others of the Debtors'

stakeholders.  Continuing to litigate the claims and their related issues would be costly, time-

consuming, and disruptive to the Debtors, while providing an uncertain outcome that is unlikely

to reduce further by a material amount the Taxpayers' tax liability for the 2000-2007 Tax Years.

46429/0001-8345659v1

In order to secure the benefits of the proposed settlement while avoiding the cost and uncertainty of litigation, the Debtors seek approval of the Settlement Agreement.  The Taxpayers assessed the merits of each party's position, the risks, the likelihood of success, and the costs of continuing to litigate the issues related to the Comptroller's claims for 2000-2007 Tax Years and determined that the settlement described in the Settlement Agreement is fair, reasonable, and beneficial to the Debtors' estates.

## NOTICE

20.    Notice of this Motion has been provided to:  (i) the Office of the United States Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel to the administrative agents for Tribune's prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' post-petition loan facility; (v) counsel to the Comptroller; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

21.    No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Taxpayers to enter into and perform their obligations under the Settlement Agreement, (ii) authorizing the claims agent to modify the claims register in the Debtors' chapter 11 cases to reflect the modifications to the Comptroller's claims provided by the Settlement Agreement, and (iii) granting such other and further relief as the Court may deem just and proper.

10

Dated: Wilmington, Delaware
      March 1, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Allison Ross Stromberg
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

    -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

11