## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- X
In re:                                          :          Chapter 11 Cases
                                                :          Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                         :          (Jointly Administered)
                                                :
        Debtors.                                 :
                                                :
                                                :
-------------------------------------------------- X
```

## EGI-TRB, LLC'S RESPONSE BRIEF
## RELATED TO ALLOCATION DISPUTES

Dated:  March 2, 2012

**BLANK ROME LLP**
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice*)
Catherine L. Steege (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

*Counsel for EGI-TRB, LLC*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................................1

I.    THERE IS NO BASIS FOR THIS COURT TO RECONSIDER ITS
      RULING THAT CHAPTER 5 AVOIDANCE RECOVERIES ARE NOT
      ASSETS OF THE COMPANY. ...........................................................................2

      A.    Avoidance Actions Are Not Assets Of The Company. ...............................3

      B.    Avoidance Recoveries Are Not Assets Of The Company. ..........................7

II.   THE EGI-TRB SUBORDINATION AGREEMENT DOES NOT
      EXTEND TO AVOIDANCE RECOVERIES. .....................................................10

      A.    The Definition Of "Subordinated Obligations" And Section 2 Of
            The Subordination Agreement Expressly Limit Subordination To
            Assets Of The Company And Payments By Or On Behalf Of The
            Company. ................................................................................................11

      B.    Section 4 Does Not Prohibit EGI-TRB From Receiving Fraudulent
            Transfer Claims Or From Fraudulent Transfer Recoveries. .....................16

      C.    Section 6 Requires Pay-Over Of Funds To Senior Obligations
            Only If They Were Paid In Violation Of This Agreement. .......................18

      D.    The "Public Policy" Arguments Against Enforcing The EGI-TRB
            Subordination Agreement According To Its Terms Are Unfounded.........19

III.  EGI-TRB IS SENIOR INDEBTEDNESS UNDER THE PHONES
      INDENTURE, AND THE PHONES ARE NOT ENTITLED TO A PAY-
      OVER OF EGI-TRB'S SHARE OF AVOIDANCE RECOVERIES...................22

      A.    The PHONES Effectively Admit That EGI-TRB Is Senior Under
            The PHONES Indenture And EGI-TRB Is Entitled To Receive
            And Retain Its Pro Rata Share of PHONES' Avoidance
            Recoveries. ..............................................................................................23

      B.    The PHONES Are Not Entitled To Payment Of Avoidance
            Recoveries Received By EGI-TRB Regardless Whether They Are
            A Senior Obligation Under The EGI-TRB Subordination
            Agreement. ..............................................................................................25

      C.    The PHONES Are Not Senior Obligations Under The EGI-TRB
            Subordination Agreement. .......................................................................25

            1.    The EGI-TRB Terms Make The PHONES Junior. .......................25

i

2.      Because The EGI-TRB Subordination Agreement Is Plain And
        Unambiguous, Parol Evidence Cannot Be Considered..................27

3.      If Parol Evidence Is Considered, Any Admissible Parol Evidence
        Favors EGI-TRB. ..........................................................................28

        a.      EGI's Parol Evidence Includes Tribune's Public
                Filings And Testimony From EGI-TRB's Lead
                Negotiator. ........................................................................28

        b.      The PHONES' Parol Is Irrelevant And
                Inadmissible. ....................................................................31

IV.     ISSUES OF EQUITABLE SUBORDINATION ARE OUTSIDE THE
        SCOPE OF THIS PROCEEDING. .........................................................34

V.      EGI-TRB DID NOT AGREE TO BE SUBORDINATED TO THE
        SENIOR NOTEHOLDERS' RECOVERY OF POST-PETITION
        INTEREST. ............................................................................................35

VI.     EGI-TRB IS NOT SUBORDINATED TO THE TRADE CLAIMS,
        SWAP CLAIMS, AND RETIREE CLAIMS. .......................................37

CONCLUSION..............................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006).....................................................................................7

*Begier v. I.R.S.*,
    496 U.S. 53 (1990)..................................................................................................................7

*Chem. Bank v. First Trust of N.Y. (In re Southeast Banking Corp.)*,
    93 N.Y.2d 178 (N.Y. 1999) ...................................................................................................36

*CLC Creditors' Grantor Tr. v. Sonnenschein Nath & Rosenthal LLP (In re*
    *Commercial Loan Corp.)*,
    363 B.R. 559 (Bankr. N.D. Ill. 2007) ...............................................................................9, 10

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
    702 A.2d 1228 (Del. 1997) ....................................................................................................27

*Gandy v. Gandy (In re Gandy)*,
    299 F.3d 489 (5th Cir. 2002) .............................................................................................4, 7

*Guarantee Bank v. Magness Constr. Co.*,
    462 A.2d 405 (Del. 1983) ........................................................................................13, 21, 36

*Guttman v. Fabian (In re Fabian)*,
    458 B.R. 235 (Bankr. D. Md. 2011) .................................................................................5, 6, 7

*Holywell Corp. v. Smith*,
    503 U.S. 47 (1992).................................................................................................................9

*In re Estate of Cappetta*,
    315 Ill. App. 3d 414 (2d Dist. 2000)....................................................................................5,9

*In re 266 Wash. Assoc.*,
    141 B.R. 275 (Bankr. E.D.N.Y.1992)....................................................................................26

*In re Jones*,
    768 F.2d 923 (7th Cir. 1985) .................................................................................................6

*In re Railworks Corp.*,
    325 B.R. 709 (Bankr. D. Md. 2005) .......................................................................................6

*In re Time Sale Finance Corp.*,
    491 F.2d 841 (3d Cir. 1974)..................................................................................................35

*In re Wash. Mut., Inc.,*
    461 B.R. 200 (Bankr. D. Del. 2011) ....................................................................36

*Interim Healthcare, Inc. v. Spherion Corp.,*
    884 A.2d 513 (Del. Super. Ct. 2005) ...................................................................27

*Masten Lumber & Supply Co. v. Suburban Builders, Inc.,*
    269 A.2d 252 (Del. Super. Ct. 1970) ...................................................................36

*Maxwell Comm'n Corp. plc v. Societe General, plc (In re Maxwell Comm'n Corp.
    plc),*
    186 B.R. 807 (S.D.N.Y. 1995) ...............................................................................9

*MBIA Ins. Corp. v. Royal Indem. Co.,* 519 F. Supp. 2d 455 (D. Del. 2007), *aff'd*
    321 Fed. App'x 146 (3d Cir. 2009) ......................................................................25

*MBIA Ins. Corp. v. Royal Indem. Co.,*
    426 F.3d 204 (3d Cir. 2005) .................................................................................27

*McAdams v. United States,*
    297 Fed. App'x 183 (3d Cir. 2008) ......................................................................33

*Moyer v. ABN Amro Mortg. Grp. Inc. (In re Feringa),*
    376 B.R. 614 (Bankr. W.D. Mich. 2007) ...............................................................6

*Murrietta v. Fehrs (In re Fehrs),*
    391 B.R. 53 (Bankr. D. Idaho 2008) ......................................................................8

*New York Stock Exchange v. Pickard & Co.,*
    296 A.2d 143 (Del. Ch. 1972) ..............................................................................35

*Nichols v. Bennett Detective & Protective Agency, Inc.,*
    245 Fed. App'x 224 (3d Cir. 2007) ......................................................................33

*Official Committee of Unsecured Creditors of ABC-NACO, Inc., v. Bank of
    America, N.A. (In re ABC-NACO, Inc.),*
    331 B.R. 773 (Bankr. N.D. Ill. 2005) ....................................................................8

*Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In
    re Cybergenics Corp.),*
    226 F.3d 237 (3d Cir. 2000) .......................................................................... passim

*Robison v. First Financial Capital Management Corp. (In re Sweetwater),*
    55 B.R. 724 (D. Utah 1985), *rev'd on other grounds*, 884 F.2d 1323 (10th Cir.
    1989) .......................................................................................................................6

*Stern v. Marshall*,
131 S. Ct. 2594 (2011)............................................................................................4

*Supermex Trading Co., Ltd. v. Strategic Solutions Group, Inc.*,
Civ. A. No. 16183, 1998 Del. Ch. LEXIS 66 (Del. Ch. Apr. 23, 1998)............................28, 30

*Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*,
72 F.3d 1171 (3d Cir. 1996)......................................................................................5

*U.S. v. Hayes*,
555 U.S. 415 (2009).................................................................................................15

*United Rentals, Inc. v. RAM Holdings, Inc.*,
937 A.2d 810 (Del. Ch. 2007)....................................................................................28

*Wagner v. Christian Bank & Trust Co. (In re Wagner)*,
353 B.R. 106 (Bankr. W.D. Pa. 2006) ........................................................................8

*Wood v. Wood (In re Wood)*,
825 F.2d 90 (5th Cir. 1987) ......................................................................................5

## STATUTES

11 U.S.C. § 510.............................................................................................34, 35

11 U.S.C. § 541.............................................................................................. passim

11 U.S.C. § 544.............................................................................................. passim

11 U.S.C. § 546...............................................................................................8, 10

11 U.S.C. § 547.............................................................................................. passim

11 U.S.C. § 548.............................................................................................. passim

11 U.S.C. § 550...............................................................................................4, 8

## OTHER AUTHORITIES

American Bar Foundation, *Commentaries on Model Debenture Indenture
Provisions* 559 (1971)............................................................................................26

Federal Rule of Evidence 801(d)(2)(D) ......................................................................33

Michael R. Cedillos, "*Categorizing Categories: Property of the Estate and
Fraudulent Transfers in Bankruptcy*," 106 Mich. L. Rev. 1405, 1416-17 (May
2008) .......................................................................................................................9

v

## INTRODUCTION

EGI-TRB, LLC ("EGI-TRB") respectfully submits this response brief concerning the allocation issues before the Court.  This brief proceeds in three primary sections:

In Section I, we explain that there is no basis for the Court to reconsider its ruling that Chapter 5 avoidance recoveries are not assets of the Tribune.  In this section, we respond to the arguments by Oaktree Capital Management, L.P. ("Oaktree") at pages 19-20 of its opening brief and by Law Debenture Trust Company of New York ("Law Debenture") at pages 13-14 of its opening brief.

In Section II, we demonstrate that the EGI-TRB Subordination Agreement does not subordinate EGI-TRB's right to participate in Chapter 5 avoidance recoveries, addressing the EGI-TRB LLC Note Disputes, issues (i) and  (ii).  We respond to the arguments by Oaktree at pages 20-24 of its opening brief, Law Debenture at pages 16-21 of its opening brief, and the Retirees at pages 22-26 of their opening brief.

In Section III, we show that the EGI-TRB Note is senior to the PHONES with respect to avoidance recoveries and that EGI-TRB is not required to pay over to the Senior Obligations its *pro rata* share of the PHONES' avoidance recoveries.  Here we address EGI-TRB Notes Dispute issue (v) and PHONES Notes Disputes issue (vi) and respond to the PHONES' arguments at pages 29-40 of their opening brief.

In the remainder of the brief, we establish that: "equitable subordination"-type arguments are outside the scope of the allocation hearing (Section IV), responding to arguments made by the Retirees at 13-14 and 22 of their opening brief and Law Debenture at 3 of its opening brief; and that EGI-TRB is not subordinated to senior noteholders' recovery of post-petition interest (Section V), addressing EGI-TRB Notes Dispute issue (iv) and responding to arguments made by Oaktree at 24-27 of its opening

brief and Law Debenture at 35-38 of its opening brief.  We rest on our prior briefing as to why the various Other Parent claims are not Senior Indebtedness under the PHONES indenture nor Senior Obligations under the EGI-TRB Notes, which addresses PHONES Notes Dispute issue (iii) and EGI-TRB Notes Dispute issue (iii).

## I.    THERE IS NO BASIS FOR THIS COURT TO RECONSIDER ITS RULING THAT CHAPTER 5 AVOIDANCE RECOVERIES ARE NOT ASSETS OF THE COMPANY.

Two parties – Oaktree and Law Debenture – ask this Court to reconsider its decision that avoidance recoveries are not assets of the Company or limit its decision to claims arising under Section 544.  (D.I. 11010, LDT Br. at 13-14; D.I. 11003, Oaktree Br. at 20 n.16.)  This Court was right when it ruled that all Chapter 5 avoidance recoveries "are not 'assets of the Company'" and right again when it refused to reconsider that ruling.  (Oct. 31, 2011 Op. at 112-13; Dec. 29, 2011 Op. at 7 n.11.)[1]  Chapter 5 avoidance actions, whether brought under sections 544, 547, or 548, could not be "assets of the Company" because a debtor has no pre-petition interest in these bankruptcy-specific claims, which only a trustee or debtor in possession can assert.  Similarly, as of the petition date, a debtor has no legal or equitable interest in the funds it transferred pre-petition, so those funds could not be among a debtor's assets.  At most, avoidance actions and their proceeds are *property of the bankruptcy estate* – not "assets of the Company" – and therefore fall outside the narrowly drafted scope of the EGI-TRB Subordination Agreement.  *See Off'l Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*

---

[1] Although the Court struck its "Subordination Determination" from the Confirmation Opinion, the Court expressly refused to reconsider its interpretation of *Cybergenics*' underlying "legal principle . . . that fraudulent transfer claims are not assets of the debtor," suggesting that the legal principles set forth in its Confirmation Opinion continue to be the law of this case and control here.  (Dec. 29, 2011 Op. at 7 n.11.)

*(In re Cybergenics Corp.)*, 226 F.3d 237, 246 (3d Cir. 2000) (explaining the importance of the distinction between a debtor and a bankruptcy estate).

### A.    Avoidance Actions Are Not Assets Of The Company.

Most parties have accepted as settled law of the case this Court's determination that, under *Cybergenics*, Chapter 5 avoidance actions are not "assets of the Company." Oaktree, however, contends that *Cybergenics*' holding is limited to section 544 claims and therefore not applicable to avoidance actions brought under sections 547 or 548. (Oaktree Br. at 20 n.16.)  According to Oaktree, because a trustee does not have to prove the existence of a "Prometheus creditor" to make a claim under sections 547 or 548, this somehow means that these claims could be the debtor's property.  (*Id.*)  Oaktree does not explain *why* the Prometheus creditor requirement should make a difference to this analysis, and, as explained herein, there is no credible basis for the distinction that Oaktree asks the Court to draw between section 544 claims on the one hand, and section 547 and 548 claims on the other.[2]

In fact, *Cybergenics* itself rebuts Oaktree's argument.  There, the Third Circuit noted that to fulfill their duty to act on behalf of a bankruptcy estate, "trustees and

---

[2] The unstated (and incorrect) basis for Oaktree's argument could be the following: prior to the petition date, creditors could bring fraudulent transfer claims based upon state law that a trustee or debtor-in-possession can assert post-bankruptcy through 11 U.S.C. § 544, whereas creditors could not bring claims based upon 11 U.S.C. § 547 or 548 claims before a debtor files for bankruptcy.  This (presumably) leads Oaktree to conclude that the section 547 and 548 claims must have belonged to the pre-petition Tribune, while the section 544 claims do not.  To the extent Oaktree is making this argument, it represents a fundamental misunderstanding of avoidance actions.  As explained below, the pre-petition Tribune also could not have brought section 547 or 548 claims before Tribune's bankruptcy filing because these claims did not exist prior to the petition date.  In fact, the same holds true for section 544 claims, which are federal law claims that arise post-petition even if state law provides the "rules of decision" for such claims.  (*See* D.I. 11001, EGI-TRB Op. Br. at 2-4.)

debtors in possession have a variety of statutorily created powers, known as avoidance

powers, which enable them to recover property on behalf of the bankruptcy estate." 226

F.3d at 243.  The Court carefully distinguished these statutorily created avoidance actions

from "the separate authority of a trustee or debtor in possession to pursue the prepetition

debtor's causes of action that become property of the estate upon the filing of the

bankruptcy petition." *Id.*  Emphasizing that distinction, the Third Circuit explained that a

trustee's or debtor in possession's right to bring avoidance actions on behalf of the estate

does not mean that those claims belonged to the pre-petition debtor or were "assets of the

debtor":

> [Our] conclusion is not altered by the fact that a debtor in possession is
> empowered to pursue those fraudulent transfer claims for the benefit of all
> creditors.  *The avoidance power itself*, which we have analogized to the
> power of a public official to carry out various responsibilities in a
> representative capacity, *was likewise not an asset of Cybergenics*, just as
> this authority would not have been a personal asset of a trustee, had one
> been appointed.

*Id*. at 245 (emphasis added).

Thus, *Cybergenics*' rationale is equally applicable to all Chapter 5 avoidance

actions.  Whether brought under section 544 or 548, a trustee's or debtor in possession's

claims to avoid fraudulent transfers are "causes of action that derive entirely from the

federal rights conferred by the Bankruptcy Code. . . . These claims are created by the

Bankruptcy Code and are not – outside of bankruptcy – available to Debtor."  *Gandy v.*

*Gandy (In re Gandy)*, 299 F.3d 489, 495-96 (5th Cir. 2002) (holding that section 544,

548, and 550 claims are core proceedings because they could arise only in the context of

a bankruptcy case).[3]  Even under state law, the transferor or its successor cannot pursue

---

[3] EGI-TRB acknowledges that in light of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), some
courts have questioned whether claims arising under sections 544 and 548 remain core

UFTA claims – those are reserved for creditors. *See e.g., In re Estate of Cappetta*, 315 Ill. App. 3d 414 (2d Dist. 2000). In *Cappetta*, the court found "that, under the provisions of the Uniform Fraudulent Transfer Act, only creditors may maintain actions to set aside fraudulent transfers." *Id*. at 427 (citing 740 ILCS 160/8 (West 1998)). The Court concluded, "we believe that the appropriate rule of law is that an administrator [acting on behalf of the transferor] is without the authority to attack those conveyances made by the [transferor] himself; only creditors may seek to set aside such transfer." *Id*.[4]

Section 547 preference claims are similarly created by the Bankruptcy Code. Indeed, there is no comparable claim that anyone – including a pre-petition debtor or creditor – could bring outside of a bankruptcy case. *Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3d Cir. 1996) ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)). Thus, as *Cybergenics* recognized, a trustee's or debtor in possession's ability to assert these avoidance actions on behalf of the bankruptcy estate does *not* mean that these bankruptcy-specific claims were ever the debtor's property. 226 F.3d at 245; *see also Guttman v. Fabian (In re Fabian)*, 458 B.R. 235, 259 (Bankr. D. Md. 2011) ("A bankruptcy trustee's causes of action to recover fraudulent conveyances and preferential transfers, are independent of, and separate from, prepetition causes of

---

proceedings in which a bankruptcy court can enter final judgments. But the answer to that question does not undermine the relevance of the cited decisions to the question before this Court. The above-cited cases are relevant because they recognize that the Bankruptcy Code creates the claims a trustee or debtor in possession can assert under sections 544, 547 and 548, and that such claims do not exist outside of a bankruptcy case and therefore cannot be assets of the Company.

[4] The law is the same in Delaware (Del. Code Ann. titl. 6, § 1307 (2012)) and New York (N.Y. CLS Dr & Cr §§ 278, 279 (2011)).

action possessed by the debtor outside of bankruptcy").  Accordingly, section 544, 547, and 548 claims could not be "assets of the Company."

In fact, most courts have held that not only are section 544, 547, and 548 claims not assets of the debtor, they are *not even assets of the bankruptcy estate*.  *See, e.g., In re Railworks Corp.*, 325 B.R. 709, 721 (Bankr. D. Md. 2005).  This is because section 541(a) defines property of the estate to include "all legal or equitable interest of the debtor in property as of the commencement of the case," but a debtor has no legal or equitable interest in avoidance actions as of the petition date.  *Id.*  Rather, avoidance actions "are rights that the trustee and a debtor in possession are given in a bankruptcy case."  *Id.*; *see also Moyer v. ABN Amro Mortg. Grp. Inc. (In re Feringa)*, 376 B.R. 614, 624 (Bankr. W.D. Mich. 2007) ("[N]otably absent from [section 541's definition of estate property] is any avoidance action that the trustee might have or any anticipated recovery that the trustee might realize."); *Robison v. First Fin. Capital Mgmt. Corp. (In re Sweetwater)*, 55 B.R. 724, 731 (D. Utah 1985) ("The avoiding powers are not 'property' but a statutorily created power to recover property."), *rev'd on other grounds*, 884 F.2d 1323 (10th Cir. 1989).  The Third Circuit appeared to endorse this view in *Cybergenics*, stating that "[s]ubject to a few specifically enumerated exceptions, the bankruptcy estate contains only the interest of the debtor in property as of the time of the bankruptcy filing, 'no more, no less.'"  226 F.3d at 247 n.16 (quoting *In re Jones*, 768 F.2d 923, 927 (7th Cir. 1985)).

In any event, whether a Chapter 5 avoidance action is property of the estate or a merely a statutory right given to a trustee or debtor in possession, one thing is absolutely clear: the Chapter 5 avoidance actions at issue here are not, and never were, assets of

6

Tribune.  *Cybergenics*, 226 F.3d at 243-46; *Gandy*, 299 F.3d at 495-96; *Fabian*, 458 B.R. at 259.

### B.    Avoidance Recoveries Are Not Assets Of The Company.

Law Debenture nonetheless argues that even if the avoidance actions themselves are not assets of the debtor, the *proceeds* from such claims supposedly represent assets of the debtor.  (LDT Br. at 13-14.)  Law Debenture is incorrect.  It relies entirely on *Begier v. I.R.S.*, 496 U.S. 53 (1990), in which the Supreme Court stated that the "'property of the debtor' *subject to the preferential transfer provision* is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."  496 U.S. at 58 (emphasis added).  As the emphasized language indicates, however, *Begier* only held that a transfer is subject to avoidance as a preference if it was a transfer of the debtor's property; *Begier* did not hold that a debtor retains an interest in the property once it has been transferred or in the cause of action to recover such property.  Indeed, the Court's statement that "property of the debtor" for purposes of section 547 includes property that "*would have been* part of the estate" indicates that the property, once transferred, is *not* an asset of the debtor and does not become property of the estate upon the filing of a bankruptcy petition.  496 U.S. at 58; *see also* 11 U.S.C. § 541(a)(1) (providing that "property of the estate" includes "all legal or equitable interests of the debtor in property *as of* the commencement of the case") (emphasis added).

Consistent with the Supreme Court's statement in *Begier*, most courts have held that debtors *do not* retain an interest in property that was fraudulently conveyed pre-petition.  *See, e.g., Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*, 347 B.R. 708, 717-19 (Bankr. C.D. Cal. 2006) (stating that this view has been adopted by "the

majority of the courts").  In *Midland*, for example, the bankruptcy court flatly rejected a trustee's argument – similar to Law Debenture's argument here – that the debtor's estate included property that had been transferred to a third party in a transaction subject to avoidance.  *Id.* at 719.  As the court explained, if debtors retained a legal or equitable interest in property fraudulently conveyed prior to the bankruptcy, then that property would automatically become property of the estate pursuant to section 541(a)(1).  Such a holding "ignores the language in § 541(a)(1) and (a)(3) that the debtor must have an interest in the property 'as of the commencement of the case' and that property of the estate includes any interest in property that the trustee *recovers* under section . . . 550 . . . of this title.'" *Id.* (quoting 11 U.S.C. § 541(a)(1), (3)) (emphasis in original).  *Id.*[5]  That result would also violate the rule that "[w]hen the plain meaning of the language of the statute is clear, the courts need only enforce it." *Id.*  The court concluded that "[t]his statute seems very clear to any ordinary reader: property that has been fraudulently transferred only becomes property of the estate when the transfer has been set aside." *Id.*  Accordingly, a debtor has no legal or equitable interest in property that it fraudulently conveyed prior to the petition date.  *Id.*  The vast majority of courts concur.[6]

---

[5] Further, if a debtor did in fact retain an interest in property fraudulently conveyed prepetition, that property would become property of the estate pursuant to section 541(a)(1) and a trustee could demand its turnover through section 542, thereby avoiding all of the statutory limitations and defenses set forth in sections 546, 547, 548, and 550. Obviously, section 542 is not a short-cut around the elements of a claim under sections 546-550 and thus, fraudulently transferred property cannot be property of the estate under section 541.

[6] *See, e.g.*, *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R. 53, 71-72 (Bankr. D. Idaho 2008) (holding that debtor did not have an interest in real property that he fraudulently conveyed to a third party prior to the bankruptcy); *Wagner v. Christian Bank & Trust Co. (In re Wagner)*, 353 B.R. 106, 113 (Bankr. W.D. Pa. 2006) ("Transferred property subject to recovery in an avoidance action is not property of the estate until it is actually recovered by the bankruptcy trustee."); *Off'l Comm. of Unsecured Creditors of ABC-*

The same rule applies outside of bankruptcy – the transferor has no interest in a fraudulent transfer claim.  Thus, the a transferor cannot pursue UFTA claims – those are reserved for creditors.  *Estate of Cappetta*, 315 Ill. App. 3d at 427; 740 ILCS 160/8 (West 1988).

It is true that, once a trustee or debtor-in-possession actually recovers fraudulently transferred property, such property becomes property of the bankruptcy *estate*, but that principle does not help Law Debenture here.  As this Court already correctly recognized, property of the *estate* is not the same as an asset of the *debtor*.  (*See* Oct. 31, 2011 Op. at 113 n.84 (citing *Cybergenics*, 226 F.3d at 246 n.15, for the proposition that "'property of the debtor' and 'property of the estate' have different meanings, as evidenced by numerous provisions in the Bankruptcy Code that distinguish between the concepts, or refer to one and not the other").)  Moreover, any Litigation and Creditors' Trusts recoveries will be the property of *those* entities, not the estate, and will occur long after the bankruptcy estate has ceased to exist.  *E.g.*, *Holywell Corp. v. Smith*, 503 U.S. 47, 55 (1992) (noting that the chapter 11 plan at issue had transferred all estate property to trust that was "separate and distinct" from the bankruptcy estate or debtor); *CLC Creditors' Grantor Tr. v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363

---

*NACO, Inc., v. Bank of Am., N.A. (In re ABC-NACO, Inc.)*, 331 B.R. 773, 780 (Bankr. N.D. Ill. 2005) ("A bankruptcy estate does not possess a property interest in transferred property, even though the transfer is subject to avoidance. . . ."); *Maxwell Comm'n Corp. plc v. Societe General, plc (In re Maxwell Comm'n Corp. plc)*, 186 B.R. 807, 820 (S.D.N.Y. 1995) ("§ 541 by its terms only applies to property which is property of the estate . . . .  Preferential transfers do not become property of the estate until recovered. . . ."); *see also* Michael R. Cedillos, "*Categorizing Categories:  Property of the Estate and Fraudulent Transfers in Bankruptcy*," 106 Mich. L. Rev. 1405, 1416-17 (May 2008) (stating that debtors do not retain legal title or an equitable interest in property fraudulently conveyed prepetition, and that "[n]o equitable grounds exist for considering the debtor as retaining an equitable interest in purportedly fraudulently transferred property").

B.R. 559, 566 (Bankr. N.D. Ill. 2007) (noting that because all estate property vested in a post-confirmation trust, creditors' claims would be paid from trust assets, not from estate property).[7]

The Court's prior analysis of *Cybergenics* and its implications for the subordination issues that are now before the Court was thus correct. The "assets of the Company" simply do not include avoidance actions held by creditors, property that was fraudulently transferred prepetition, or recoveries made by the estate or the future Creditors' or Litigation Trusts on account of these claims.

## II.    THE EGI-TRB SUBORDINATION AGREEMENT DOES NOT EXTEND TO AVOIDANCE RECOVERIES.

EGI-TRB established in its opening brief that the EGI-TRB Subordination Agreement does not subordinate EGI-TRB's rights with respect to Chapter 5 avoidance actions and recoveries. The only parties who argue otherwise in their opening briefs are Oaktree, the Retirees, and Law Debenture – none of whom was a party to the EGI-TRB Subordination Agreement or were involved in negotiating it.[8]

By its terms, the Subordination Agreement does not apply to Chapter 5 avoidance actions or recoveries because, as shown above, they were not an "asset of the Company"

---

[7] The Creditors' Trust is premised on the argument that the causes of action it will pursue are not Bankruptcy Code based-avoidance actions to which 11 U.S.C. § 546(e) applies, but rather are state law claims belonging to creditors willing to assign those claims to a Creditor Trust. If the bankruptcy estate has nothing to do with those claims, such that section 546(e) does not apply to them, the same claims cannot be "assets of the Company."

[8] The PHONES devote one paragraph (¶ 82) to this issue offering unsupported conjecture about the "intent" of the parties. With respect to the PHONES priority issue, unrefuted parol evidence shows that there was no discussion of avoidance recoveries during the negotiation of the EGI-TRB Subordination Agreement and therefore no meeting of the minds that EGI-TRB would be subordinated with respect to these actions and recoveries. (*See* § III.C.3, below.)

prior to bankruptcy nor an asset of the Debtor after bankruptcy.  The contrary arguments of the non-party, non-negotiators are incorrect.

A.    **The Definition Of "Subordinated Obligations" And Section 2 Of The Subordination Agreement Expressly Limit Subordination To Assets Of The Company And Payments By Or On Behalf Of The Company.**

The parties agree for purposes of this dispute that the relevant provisions of the Subordination Agreement are the agreement's definitions of the terms "Subordinated Obligations," and "Company," and paragraphs 2, 4, and 6.  When read together, each confirms that the scope of subordination (paragraph 2) is narrowly drawn to claims on "assets of the Company" or payments "from the Company" and the related limitation on enforcement (paragraph 4) and pay-over provision (paragraph 6) only apply to actions to collect the EGI-TRB Note, enforce the terms of the Note, and the receipt of payments from the Company, including payment of the Note itself.

The definition of "Subordinated Obligations" is limited to the EGI-TRB Note and obligations of the Company to EGI-TRB "arising under the Subordinated Note."  The definition provides:

> "Subordinated Obligations" means the collective reference to the unpaid principal of and interest on the **Subordinated Note and all other obligations and liabilities of the Company** to the Subordinating Creditor, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, in each case, arising under the Subordinated Note.

(ADH 8, EGI-TRB Subordination Agreement at ¶ 1, emphasis added.)[9]

The obligations, if any, of a third-party fraudulent transferee to pay monies to creditors is not a Subordinated Obligation.  Moreover, unlike the PHONES Indenture, there is no reference in the EGI-TRB Subordination Agreement to the subordination of

---

[9] Citations to "ADH ___" refer, for identification purposes, to the exhibit designations on the Allocations Disputes Hearing master exhibit list.

payments made by liquidating trustees, receivers, trustees in bankruptcy, or persons other than "the Company."  (*Compare* ADH 2, PHONES § 14.02.)

The definition of the term "Company," reinforces the point that the only subordinated obligations are those of pre-petition Tribune.  "Company" is defined as "TRIBUNE COMPANY, a Delaware corporation (the 'Company'). . . ."  (ADH 8, EGI-TRB Subordination Agreement ¶ A.)

In contrast to the PHONES Indenture, the definition of "Company" does not include "successors and assigns" and thus, does not include the debtor-in-possession or persons or entities who have received fraudulently-conveyed assets.  (*Compare* ADH 2, PHONES at WTC 0000011.)

In light of those definitions, paragraph 2 limits subordination to claims to the assets of Tribune and payments from or on behalf of Tribune itself.  Paragraph 2 is the only substantive term that defines the scope of subordination.  It provides:

> 2.    Subordination.    The Subordinated Obligations [the EGI-TRB Notes] are subordinate and junior in right of payment to all Senior Obligations **to the extent provided in this Agreement**.  No part of the Subordinated Obligations shall have any ***claim to the assets of the Company*** on a parity with or prior to the claim of the Senior Obligations. Unless and until the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash, the Subordinating Creditor will not take, demand or receive ***from the Company***, and **the Company** will not make, give or permit, directly or indirectly, by set-off, redemption, purchase or in any other manner, any payment of (of whatever kind or nature, whether in cash, property, securities or otherwise), whether in respect of principal, interest or otherwise, or security **for the whole or any part of the Subordinated Obligations**.

(ADH 8, EGI-TRB Subordination Agreement at ¶ 2, emphasis added.)  Under those plain terms, Chapter 5 avoidance actions and recoveries are not included within the narrowly drawn scope of subordination, for they are not "assets of the Company" or payments

12

"from the Company," nor is the obligation to pay them a "Subordinated Obligation."  The Court must strictly enforce those unambiguous terms.  *Guarantee Bank v. Magness Constr. Co.*, 462 A.2d 405, 408-09 (Del. 1983) ("In construing the terms of a subordination clause . . . Delaware law requires such agreement to be strictly construed where their terms are unambiguous").

In response, Law Debenture, Oaktree, and the Retirees make four arguments attempting to stretch paragraph 2 beyond its terms to reach avoidance recoveries, but each argument fails.

First, Law Debenture argues with respect to paragraph 2 that EGI-TRB's reading of the word "Company" in the phrase "assets of the Company" to refer only to the Tribune and not the bankruptcy estate is supposedly "contrary to the Court's reasoning in the Reconsideration Memorandum . . . and results in a limitation on subordination in the event of a Tribune bankruptcy[.]"  (LDT Br. at 18.)   The Court, however, did not construe the EGI-TRB Subordination Agreement or its definition of "Company" in its Reconsideration Opinion.[10]  Nor did the Court's Reconsideration Memorandum hinge on the definition of "Company" – rather, the decision rested on the PHONES several "unqualified" subordination terms, which are nowhere present in the EGI-TRB Subordination Agreement.  Further, Law Debenture's exaggerated claim that if EGI-TRB is correct, its Subordination Agreement would have *no* effect in bankruptcy should be rejected out of hand.  As discussed below, EGI-TRB is limited by paragraph 4 from attempting to collect on its Note, whether in bankruptcy or otherwise, from "assets of the

---

[10] Rather, the Court construed the PHONES Indenture that, by its terms, applied not only to payments by the Company but also to payments made by trustees, liquidating agents, receivers and other persons.  (Dec. 29, 2011 Op. at 13.)  The EGI-TRB Agreement does not mention payments from any person other than the Company.

Company."  With respect to avoidance recoveries, however, EGI-TRB is not so limited because whether in bankruptcy or not, fraudulent transfer claims are not "assets of the Company."

Second, Oaktree argues that paragraph 2 does not provide "limitations on the scope of subordination" but instead represents an "unequivocal subordination."  (Oaktree Br. at 21.)  The plain text of paragraph 2 demonstrates otherwise – at every important juncture, the scope of paragraph 2 is expressly *qualified*, not unequivocal: EGI-TRB is subordinate only "to the extent provided in this Agreement"; EGI-TRB is limited only in claims on "the assets of the Company"; and EGI-TRB is prohibited only from taking payment "from the Company," and only with respect to "Subordinated Obligations" which are limited to the "obligations and liabilities of the Company."  (ADH 8, EGI-TRB Subordination Agreement ¶¶ 1, 2.)  Indeed, Oaktree itself proves EGI-TRB's point, arguing that paragraph 2 "ensur[es] that EGI cannot make any claim to assets *of Tribune*, and that *Tribune* will not make any payment to EGI, unless and until all Senior Obligations are 'paid in full in cash.'"  (Oaktree Br. at 21, emphasis added.)  Exactly right.

Third, the Retirees argue that paragraph 2 provides the Subordinated Obligations are "'junior in right of payment.'"  (D.I. 10994, Retirees Br. at 24.)  This is mere selective editing.  The relevant clause of paragraph 2 says only that the Subordinated Notes are "junior in right of payment to all Senior Obligations *to the extent provided by this Agreement*."  (ADH 8, EGI-TRB Subordination Agreement ¶ 2, emphasis added.)  Thus, the EGI-TRB Note is not "junior" for all purposes; it is junior only "to the extent provided by" the Subordination Agreement.  The scope of that subordination is then

14

stated in the next sentence:  the Note is subordinated only with respect to "any claim to the assets of the Company."  (*Id.*)

Fourth, the Retirees next pluck from paragraph 2 the phrase "take, demand or receive from the Company . . . any payment of . . . the Subordinated Obligations," and argue that, under the rule of the last antecedent, the phrase "from the Company" modifies only "receive" and not "take" or "demand."  This reading fails.  In the first place, the entire sentence that the Retirees have excerpted (including *every* antecedent) applies only to payments "for the whole or any part of the *Subordinated Obligations*."  (ADH 8, EGI-TRB Subordination Agreement ¶ 2, emphasis added.)  As shown above, "Subordinated Obligations" is a defined term that refers to the EGI-TRB Note and "obligations and liabilities *of the Company*" – it does not include obligations of third-party fraudulent transferees to creditors.  (*Id.* at ¶ 1, emphasis added.)[11]

For each reason, the terms of paragraph 2 and the Subordination Agreement as a whole reflect that no agreement was reached to subordinate avoidance recoveries.  This Court should resist the request of parties who did not participate in negotiating the EGI-TRB Subordination Agreement to rewrite it.

---

[11] Moreover, as the Court has recognized, the "rule of the last antecedent . . . is not an absolute and can assuredly be overcome by other indicia of meaning."  *U.S. v. Hayes*, 555 U.S. 415, 425 (2009).  (Dec. 29, 2011 Op. at 12.)  Here, the first sentence of paragraph 2 makes clear that EGI-TRB's subordination is limited to claims on "assets of the Company," and the second sentence sets up a parallel limitation in which EGI-TRB will not "take, demand, or receive" payments "*from the Company*" and "*the Company*" will not "make, give or permit" those payments.  The parties' intent is clear.

**B.    Section 4 Does Not Prohibit EGI-TRB From Receiving Fraudulent Transfer Claims Or From Fraudulent Transfer Recoveries.**

The parties opposing EGI-TRB also look to paragraph 4 of the EGI-TRB Subordination Agreement for support, but that provision does not expand the narrowly drawn scope of subordination.  Paragraph 4 provides:

> 4.    <u>Limitation on Enforcement</u>.  Unless and until the obligations to extend credit to the Company under the Senior Documents shall have been irrevocably terminated and the Senior Obligations have been paid in full in cash, at no time shall the Subordinating Creditor take or continue any action, or exercise any rights, remedies or powers **under the terms of the Subordinated Note**, or exercise or continue to exercise any other right or remedy at law or in equity that the Subordinating Creditor might otherwise possess, ***to collect any Subordinated Obligation***, including, without limitation, the acceleration of the Subordinated Obligations, the commencement of any action to enforce payment or foreclosure on any lien or security interest, the filing of any petition in bankruptcy or the taking advantage of any other insolvency law of any jurisdiction. Notwithstanding the foregoing, the Subordinating Creditor may file a proof of claim in any bankruptcy or similar proceeding instituted by another entity and may vote such claim in a manner not inconsistent with the terms hereof.  If the Subordinating Creditor shall attempt to enforce, collect or realize upon any of the Subordinated Obligations in violation of the terms hereof, any holder of Senior Obligations may, by virtue of the terms hereof, restrain any such enforcement, collection or realization, either in its own name or in the name of the Company.

(ADH 8, EGI-TRB Subordination Agreement ¶ 4, emphasis added.)

As Law Debenture acknowledges, this provision merely provides that "until the 'Senior Obligations have been paid in full in cash,' EGI[-TRB] may not 'collect any Subordinated Obligation.'"  (LDT Br. at 17.)  As discussed, "Subordinated Obligations" is a defined term limited to the Subordinated Note and the other "obligations and liabilities *of the Company* to the Subordinating Creditor."    (ADH 8, EGI-TRB Subordination Agreement at ¶ 1, emphasis added.)  Because an avoidance claim is not a "Subordinated Obligation," there is no prohibition in  paragraph 4 on EGI-TRB asserting an avoidance claim.  The obligation of fraudulent transferees to pay those monies to

16

creditors is not an obligation of the Company.   The arguments of Oaktree, Law Debenture, and the Retirees based on paragraph 4 only confirm that this section is consistent with the limited scope of subordination provided by paragraph 2:

<u>First</u>, Law Debenture argues that because paragraph 4 allows EGI-TRB to file a proof of claim, it prohibits EGI-TRB from taking any other actions against third parties in the event Tribune files bankruptcy.  This argument is absurd.  The proof of claim carve-out is an exception to the prohibition on EGI-TRB taking actions *to recover Subordinated Obligations (which are limited to the obligations of Tribune), on the Note or other obligations of Tribune from Tribune's assets* before the Senior Obligations are paid in full.  It in no way implies that EGI-TRB cannot sue third parties, receive money from litigation or creditor trusts, or accept contractual payments from other creditors.  None of those actions is a right or remedy under the terms of the Note, nor involves a payment by or on behalf of the Company.   None of those actions violates the Subordination Agreement.

<u>Second</u>, Oaktree argues that paragraph 4 prohibits EGI-TRB from "exercising 'any rights, remedies or powers' under the EGI[-TRB] Subordinated Note."  (Oaktree Br. at 22.)  In fact, what Section 4 says is that EGI-TRB is prohibited from exercising any "rights, remedies or powers *under the terms* of the EGI-TRB Subordinated Note."  (ADH 8, EGI-TRB Subordination Agreement ¶ 4, emphasis added.)   Pursuing a fraudulent transfer claim is not an exercise of any "right, remedy or power under the terms of" the Note – it is an exercise of a right, remedy and power granted by statute.  Nor is accepting a fraudulent transfer recovery the "taking advantage of an insolvency law" to "*collect* a

Subordinated Obligation" – because, among other reasons, recovery of a fraudulent transfer recovery is not the collection of a Subordinated Obligation.

These non-negotiating creditors effectively contend that, in the event of a bankruptcy, the Subordination Agreement extends to all payments and distributions from any source.  But, unlike the PHONES Indenture, which contains express subordination terms specifically applicable to a "bankruptcy case" and to payments from a "trustee in bankruptcy, receiver, liquidating trustee," etc., that type of provision is conspicuously absent from the EGI-TRB agreement.  In fact, Law Debenture admits that the provision allowing EGI-TRB to file proofs of claims is the "*only* provision of the EGI[-TRB] Subordination Agreement that expressly addresses a bankruptcy proceeding[.]"  (LDT Br. at 18, emphasis added.)  Thus, Section 4 does not extend the scope of subordination to avoidance recoveries.

### C.    Section 6 Requires Pay-Over Of Funds To Senior Obligations Only If They Were Paid In Violation Of This Agreement.

Finally, Section 6 of the Subordination Agreement provides:

> 6.    <u>Payments Received By Subordinated Creditor.</u>  Except as to payments or distributions which the Company is permitted to pay to Subordinating Creditor or which Subordinating Creditor is permitted to accept and retain pursuant to this Agreement, all payments or distributions upon or with respect to any Subordinated Obligation ***which are made by or on behalf of the Company*** or received by or on behalf of the Subordinating Creditor in violation of or contrary to the provisions of this Agreement shall be received in trust for the benefit of the holders of Senior Obligations and shall be paid over upon demand to such holders for application to the Senior Obligations until the Senior Obligations shall have been paid in full in cash.

(ADH 8, EGI-TRB Subordination Agreement ¶ 6, emphasis added.)

Consistent with the narrowly drawn scope of EGI-TRB's subordination, this pay-over provision is very limited, requiring EGI-TRB to pay over funds to the Senior

Obligations *only* if the payments were:  (a) "made by or on behalf of the Company"; or (b) received "in violation of" the Agreement.  Thus, this section only reinforces the limited scope of subordination – EGI-TRB cannot retain monies paid by the Company or otherwise collected in violation of the other provisions of the Agreement, until the Senior Obligations are paid in full.  Monies EGI-TRB receives on account of avoidance recoveries are not payments made "by or on behalf of the Company" and are not received "in violation of the Agreement."  As a consequence, they are not subject to the pay-over provision.

The only contrary argument relies upon a misleading quote of only a snippet of paragraph 6.  Oaktree asserts that the turnover obligation in paragraph 6 applies to all payments "which are [1] made by or on behalf of the Company or [2] received by or on behalf of the Subordinating Creditor."  (Oaktree Br. at 23.)  But Oaktree's "clause [2]" does not exist – the actual sentence applies to payments:  "received by or on behalf of the Subordinating Creditor *in violation of or contrary to the provisions of this Agreement. . . .*"  It is beyond disingenuous for Oaktree not to have quoted this critical qualification and not even to have used ellipsis or any other indication that the quotation was incomplete.  For each reason, accepting an avoidance recovery is not a violation of the Agreement and thus there is no pay-over obligation with respect to that recovery.

### D.     The "Public Policy" Arguments Against Enforcing The EGI-TRB Subordination Agreement According To Its Terms Are Unfounded.

Unable to twist the clear language of the EGI-TRB Subordination Agreement to include subordination of avoidance recoveries, some parties opposing EGI-TRB resort to arguing that enforcing the express bargain of sophisticated parties would violate public

policy by "eviscerat[ing] the purpose of the subordination" and would lead to "frankly bizarre results." (*E.g.*, Oaktree Br. at 23.)

To support this argument, Oaktree imagines $1 billion in Tribune assets and argues that EGI-TRB's reading of the Subordination Agreement means that EGI-TRB's claim on those assets would be subordinated if there was no fraudulent transfer of those assets, but EGI-TRB's ability to seek recovery against a fraudulent transferee would not be subordinated if Tribune fraudulently transferred the assets and went bankrupt. (Oaktree Br. at 23.) Oaktree is right, but there is nothing absurd about this outcome. In the first place, the scope of the EGI-TRB Subordination Agreement does not turn on whether there has been a bankruptcy – fraudulent transfer claims and recoveries are not "assets of the Company" whether there has been a bankruptcy or not. The parties chose to qualify the scope of subordination in that manner.

It also is not "bizarre" that sophisticated parties reached such a bargain. Senior creditors could reasonably have seen little benefit in preventing EGI-TRB from pursuing third-party fraudulent transfer claims, whereas EGI-TRB could reasonably have seen substantial harm in giving up that right. If a subordinated creditor is barred from bringing such a claim until senior creditors are paid in full, the junior creditor may forfeit valuable claims to a limitation bar. The senior creditors receive no benefit from the junior creditor losing its claim.

Not requiring pay-over of a subordinated creditor's avoidance recovery is a reasonable business agreement for other reasons. First, any avoidance recoveries by a subordinated creditor do not reduce by one penny the primary source that Senior Creditors would look to in order to be made whole – Tribune's assets. Second, a

subordinated creditor's decision to pursue third-party avoidance recoveries may benefit a senior creditor by establishing findings that would entitle the senior creditor to participate in those sources of additional recovery.  Third, it is in the interest of all creditors that any person who receives the benefit of a fraudulent transfer knows that it is exposed to claims from any and all creditors.  Fourth, in the case of EGI-TRB, which represented less than 2% of the capital structure of the enterprise, there was little threat to the ability of senior lenders to recover from fraudulent transferees if EGI-TRB could also recover from those sources.

The argument that it would be contrary to expectations for a subordination agreement not to subordinate avoidance recoveries also is belied by the Examiner's Report.  Although the Examiner did not address the effect of EGI-TRB's subordination provisions, he found "a court is reasonably likely to conclude that the PHONES Subordination does not extend to avoided debt."  (D.I. 5248, Examiner Vol. II at 306.)  As the Examiner explained, it is consistent with the Rule of Explicitness, which he would expect the Third Circuit to apply, to require "explicit language" addressing avoided debt to "alert the holders [of the subordinated debt] that Senior Indebtedness includes debt that is avoided in a bankruptcy proceeding."  (*Id.* at 306-07.)[12]  Although this Court found that there was such explicit language in the PHONES' indentures, because it subordinated "any payment" in the event of a bankruptcy, that explicit language is conspicuously absent from the EGI-TRB Subordination Agreement.  (*See also* § V below, discussing the application of the Rule of Explicitness in the Third Circuit.)  In all

---

[12] Under applicable non-bankruptcy law, Delaware courts apply an analogous rule by strictly construing subordination agreements.  *See Guarantee Bank*, 462 A.2d at 408-09.

events, as the Examiner's analysis reflects, there should be no presumption that parties intended to subordinate avoided debt.

During their negotiations with EGI-TRB, the senior lenders did not obtain an agreement to prohibit EGI-TRB from recovering from avoidance claims or requiring EGI-TRB to pay over avoidance recoveries.  There is no basis for this Court to rewrite their contract for them.

III.    **EGI-TRB IS SENIOR INDEBTEDNESS UNDER THE PHONES INDENTURE, AND THE PHONES ARE NOT ENTITLED TO A PAY-OVER OF EGI-TRB'S SHARE OF AVOIDANCE RECOVERIES.**

All this Court needs to decide about the relative priority of the PHONES and EGI-TRB Notes is that the EGI-TRB Notes are not subordinated as to avoidance recoveries and, as this Court has held, the PHONES are subordinated as to those recoveries.  As the Court has determined, the PHONES agreed that, in the event of a bankruptcy, the PHONES would pay over to the Senior Indebtedness under their Indenture any and all distributions and payments that they received.  By contrast, EGI-TRB has agreed to pay over to Senior Obligations under its Subordination Agreement only payments it receives from the Company and payments received in violation of its Subordination Agreement.

Because EGI-TRB is Senior Indebtedness under the PHONES Indenture, it is entitled to its *pro rata* share of any avoidance recoveries that the PHONES receive. Those pay-over payments from the PHONES are (a) not payments from the Company, and (b) not prohibited by the Subordination Agreement; therefore, EGI-TRB has no obligation to pay over those payments from the PHONES to the Senior Obligations under its Subordination Agreement.

The PHONES make a series of convoluted arguments in an attempt to require EGI-TRB to treat the PHONES as Senior Obligations under the EGI-TRB Agreement but

that issue is irrelevant.  Even if the PHONES were Senior Obligations under the EGI-TRB Subordination Agreement, they would not be entitled to avoidance recoveries because, as shown above, those recoveries are outside the scope of the pay-over provisions of the EGI-TRB Subordination Agreement.  In all events, both the terms of the EGI-TRB Subordination Agreement and parol evidence related to that agreement demonstrate that the PHONES are not Senior Obligations under the EGI-TRB Subordination Agreement.

> **A.    The PHONES Effectively Admit That EGI-TRB Is Senior Under The PHONES Indenture And EGI-TRB Is Entitled To Receive And Retain Its Pro Rata Share of PHONES' Avoidance Recoveries.**

The PHONES effectively admit that the EGI-TRB Note is "Senior Indebtedness" under the PHONES Indenture, to which the PHONES are subordinate.  The PHONES Indenture defines "Senior Indebtedness" to include all debt, including future debt (debt "hereafter incurred"), unless one of four exceptions applies.  (ADH 2, PHONES Indenture § 14.01(2).)  The sole arguable exception applies only if, in the "instrument creating" or "evidencing" the other debt, "it is expressly provided that such Indebtedness of the Company shall be subordinated to or pari passu with the [PHONES] Securities." (*Id.* § 14.01(2)(A).)  Of course, the EGI-TRB Subordination Agreement does not "expressly provide[]" that the EGI-TRB Notes are subordinated or *pari passu* to the PHONES.  In a candid but fatal admission, the PHONES acknowledge, "The EGI[-TRB] Subordination Agreement does not have that express language as it relates to the PHONES."  (D.I. 10999, PHONES Br. at 32 ¶ 67.)

If the negotiating creditors intended to deny EGI-TRB the status of Senior Indebtedness under the PHONES Indenture, they simply had to provide expressly in the EGI-TRB Subordination Agreement that the EGI-TRB Notes were *pari passu* or

subordinate to the PHONES.   As the PHONES are forced to admit – the EGI-TRB Subordination Agreement did not do so.  The PHONES seize on the fact that the EGI-TRB Subordination Agreement does not specify by name that the EGI-TRB Notes are senior to the PHONES – but it was not necessary for EGI-TRB to do so.   EGI-TRB qualified as Senior Indebtedness under the PHONES Indenture, unless EGI-TRB explicitly stated in its Indenture that it was *pari passu* or subordinate to the PHONES and – indisputably – EGI-TRB did not do so.

EGI-TRB is entitled to retain these "pay-over" payments from the PHONES because both avoidance recoveries and "pay-over" payments are outside the scope of its Subordination Agreement.  By contrast, the PHONES specifically agreed to subordinate "pay-over" payments.  The PHONES Indenture provides in Section 14.02 that in the event PHONES Holder receives any payment "which may be payable or deliverable by reason of the payment of any other Indebtedness of the Company being subordinated to the payment of [the PHONES]," it must pay such money over to the Senior Indebtedness. (ADH 2, PHONES Indenture at WTC 0000071.)   Tribune and the Senior Obligations could observe this and other provisions in the PHONES Indenture that made the PHONES subordinate with respect to all payments, including pay-over payments, and made a decision not to include such provisions in the EGI-TRB Subordination Agreement.

Thus, EGI-TRB is entitled to its *pro rata* share of the avoidance recoveries that the PHONES must pay to Senior Obligations under its Indenture and is not obligated to pay over that money to Senior Obligations.

**B.** **The PHONES Are Not Entitled To Payment Of Avoidance Recoveries Received By EGI-TRB Regardless Whether They Are A Senior Obligation Under The EGI-TRB Subordination Agreement.**

Unable to persuasively contend that EGI-TRB is not Senior Indebtedness under the PHONES' own Indenture, the PHONES spend most of their brief arguing that the PHONES are Senior Obligations under the EGI-TRB Subordination Agreement. That contention is both irrelevant and wrong. It is irrelevant because, as shown above, the EGI-TRB Subordination Agreement does not subordinate EGI-TRB's rights with respect to avoidance recoveries or third-party contractual payments. Thus, even if the PHONES were Senior Obligations under the EGI-TRB Subordination Agreement, which they are not, they would not be entitled to any of the avoidance recoveries received by EGI-TRB or pay-over payments from the PHONES. The Court need go no further in order to resolve the issue of the relative priority of EGI-TRB and the PHONES as to avoidance recoveries.

**C.** **The PHONES Are Not Senior Obligations Under The EGI-TRB Subordination Agreement.**

**1.** **The EGI-TRB Terms Make The PHONES Junior.**

In all events, the PHONES do not meet the definition of "Senior Obligations" under the EGI-TRB Subordination Agreement.[13] Additionally, as discussed in Section III.C.3 below, if there were any ambiguity in the EGI-TRB Subordination Agreement, the admissible parol evidence further demonstrates that the EGI-TRB Notes are senior to the PHONES.

---

[13] The PHONES bear the burden of demonstrating that they are third-party beneficiaries of the EGI-TRB Subordination Agreement. *MBIA Ins. Corp. v. Royal Indem. Co.*, 519 F. Supp. 2d 455 (D. Del. 2007), *aff'd* 321 Fed. App'x 146 (3d Cir. 2009). They have not met that burden.

The EGI-TRB Subordination Agreement uses a different definition of "Senior Obligations" than the definition of "Senior Indebtedness" under the PHONES Indenture. Under the EGI-TRB Subordination Agreement, debts that "by their express terms *rank pari passu* or junior to the Company's obligations under the Subordinated [EGI-TRB] Note" are not "Senior Obligations." (ADH 8, EGI-TRB Subordination Agreement at 1, emphasis added.) Thus, under the EGI-TRB Subordination Agreement, the *rankings* provided by the PHONES Indenture are controlling as to whether the PHONES are a Senior Obligation. The express terms of the PHONES Indenture make clear that EGI-TRB ranks senior to the PHONES because, as set forth in Section III.A above and as the PHONES effectively admit, the PHONES Indenture treats the EGI-TRB Notes as Senior Indebtedness.

Additionally, by expressly providing that the PHONES Notes are subordinated notes, the PHONES Indenture's express terms necessarily rank the PHONES Notes, at most, as *pari passu* to all other subordinated debt, including such debt "hereafter incurred." By additionally providing that the PHONES Notes are subordinated to all other debt that does not provide otherwise, the PHONES by their express terms rank junior to the EGI-TRB Notes. Under either ranking – *pari passu* or junior – the PHONES do not qualify as Senior Obligations under the EGI-TRB Notes.[14]

---

[14] In fact, all unsecured claims are ranked *pari passu*, regardless whether they are subordinated or not. *See In re 266 Wash. Assoc.*, 141 B.R. 275, 282 (Bankr. E.D.N.Y. 1992) ("Generally, unsecured creditors hold substantially similar claims; *they are claimants of equal legal rank entitled to share pro rata* in values remaining after payment of secured and priority claims. It has accordingly been observed that unsecured claims will, generally speaking, comprise one class, whether trade, tort, publicly held debt or a deficiency of a secured creditor.") (emphasis added); American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions* 559 (1971) ("[T]he court directive that payment of dividends on the subordinated debt be paid over to the holders

###### 2.    Because The EGI-TRB Subordination Agreement Is Plain And Unambiguous, Parol Evidence Cannot Be Considered.

The PHONES admit, at least initially, that this Court must interpret the EGI-TRB Subordination Agreement by strictly construing its "plain language," pursuant to controlling Delaware contract law.  (*See* PHONES Br. ¶¶ 60, 62 & 65, including repeated references to the "plain language" of the EGI-TRB Subordination Agreement.)  Under Delaware law (selected in ¶ 13(a) of the Subordination Agreement), "[u]nambiguous written agreements should be enforced according to their terms, without using extrinsic evidence 'to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.'"  *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 210 (3d Cir. 2005) (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del. 1997).)

Paragraph 15's merger clause further reinforces that the parol evidence rule applies to the EGI-TRB Subordination Agreement.  Delaware courts have explained the parol evidence rule provides that "antecedent understandings and negotiations will not be admitted for the purposes of varying or contradicting" and integrated writing.  *Interim Healthcare, Inc. v. Spherion Corp., 884 A.2d 513, 546 (Del. Super. Ct. 2005).*

The Court should therefore reject the PHONES' invitation to search outside of the plain language of the agreement for its meaning.  Should it accept that invitation, however, it will find that the parol evidence confirms that the PHONES are not a Senior Obligation under the EGI-TRB Subordination Agreement.

---

of senior debt is made not on the basis of different ranking of claims but on the basis of the recognition of contractual obligations, or equitable liens or assignments, in the disposition of proceeds of claims of equal statutory rank. In other words, the subordinated debt, like all other unsecured debt, is proved on a parity with the unsecured senior debt.").

3.      **If Parol Evidence Is Considered, Any Admissible Parol Evidence Favors EGI-TRB.**

If the Court decides to consider parol evidence, it will find that the balance of any admissible parol evidence favors EGI-TRB.  Most of the parol evidence relied on by the PHONES is irrelevant or inadmissible, while the evidence that EGI-TRB relies upon is backstopped with Tribune's own securities filings.

a.      **EGI's Parol Evidence Includes Tribune's Public Filings And Testimony From EGI-TRB's Lead Negotiator.**

Tribune made three public filings with the SEC between April and July 2007 – including a definitive proxy statement – that expressly described the EGI-TRB Note as only "subordinated to the senior obligations of the Company."  (ADH 137 at 7, ADH 139 at 2, ADH 145 at 114.)  The PHONES, of course, are not "senior obligations" of Tribune.  And although the SEC filings addressed the Step One EGI-TRB Note, the PHONES themselves argue that the subordination language applicable to the Step One Note and the Step Two Note is virtually identical.  (PHONES Br. ¶¶ 75-77.)

The Tribune's public statements to shareholders were consistent with EGI-TRB's own understanding that the PHONES would be subordinated to the EGI-TRB Note.  EGI-TRB's understanding is admissible parol evidence under Delaware's "forthright negotiator" principle, which provides that, as an aid to contract construction, a court can consider "evidence of what one party *subjectively* believed the obligation to be, coupled with evidence that the other party knew or should have known of such belief."  *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 835-36 (Del. Ch. 2007) (emphasis in original).  Public documents, specifically including SEC filings, can be used as evidence of what one party should have known about the other's subjective intent.  *Supermex*

*Trading Co., Ltd. v. Strategic Solutions Grp., Inc.*, Civ. A. No. 16183, 1998 Del. Ch.

LEXIS 66, at *10 (Del. Ch. Apr. 23, 1998).[15]

EGI-TRB has offered precisely such evidence:  the deposition testimony of its

lead negotiator, Mr. William Pate, together with the public SEC filings of the Tribune,

EGI-TRB's counterparty in the transaction.  Mr. Pate is the Vice President of EGI-

TRB;[16] he led the EGI-TRB team that negotiated the business terms of the EGI-TRB

Note and Subordination Agreement.  (ADH 156, Pate Dep. at 8:24-9:15; 10:24-11:12;

12:11-21.)  Mr. Pate, as the lead negotiator for EGI-TRB, understood the business terms

of the deal.

As to the priority of the EGI-TRB Note at Step Two relative to the PHONES,

Mr. Pate testified:

> Q. Generally when the deal closed in roughly December 2007, did you
> have a personal opinion or understanding of what you believed to be the
> relative priority of the EGI-TRB second-step note on the one hand and the
> PHONE security or note on the other?
>
> MR. SIEGEL:  Objection to the form and foundation.
>
> A. My recollection of the relative priority was that ***the second-step note
> was senior to the PHONES.***

(ADH 156, Pate Dep. 17:2-12, emphasis added.)

Mr. Pate explained that this understanding was consistent with the fact that the

PHONES Notes were convertible to equity and the EGI-TRB Note was not and that, in

his experience, "convertible subordinated securities [are] subordinated in context to – to

another note that's not convertible."  (*Id.* at 26:24-27:3.)  It was also consistent with his

---

[15] The PHONES argue that EGI-TRB's subjective beliefs cannot come into evidence
(PHONES Br. at 38), but the forthright negotiator rule is an exception to that rule.

[16] Mr. Pate has also been a director of Tribune since approximately December 2007, but
testified exclusively in his EGI-TRB capacity.

understanding that it was "important" from a tax perspective that the EGI-TRB Note "have relative priority so that there was substance to the $225 million that was paid for the Step 2 notes in the aggregate." (*Id*. at 17:25-18:6.)

Mr. Pate also testified that during negotiations on the Subordination Agreement, no participant suggested at any time that the EGI-TRB Notes at Step Two should be subordinated to the PHONES, or to anyone else with respect to avoidance recoveries:

Q. Generally do you have an understanding of avoidance recoveries?

MR. SIEGEL:  Objection.

A. Yes.

Q. During 2007, do you recall anybody in the course of negotiating this deal raising the topic of avoidance recoveries?

A. No.

Q. ***Do you recall anybody asking EGI-TRB to subordinate its rights to payments with respect to subordinate – to avoidance recoveries?***

A***. No.***

Q. ***Do you recall EGI-TRB agreeing to subordinate its right of recovery with respect to avoidance recoveries?***

MR. SIEGEL:  Objection.

A. ***No.***

(*Id.* at 30:2-19, emphasis added.)

Mr. Pate's unrebutted testimony is admissible under the forthright negotiator rule because Tribune "knew or had reason to know" of EGI-TRB's understanding of these issues – an understanding that was reflected in Tribune's own public filings.  *Supermex Trading*, 1998 Del. Ch. LEXIS 66, at *10.  Significantly, the PHONES offer no contrary

testimony from any other party who participated in the negotiations, nor from Tribune, the only other party to the EGI-TRB Subordination Agreement.

Thus, should it be necessary to decide the issue, both the terms of the EGI-TRB Note and the parol evidence establish that EGI-TRB is senior to the PHONES.

### b.    The PHONES' Parol Is Irrelevant And Inadmissible.

The PHONES, rather than adducing evidence from the actual participants in the negotiation, primarily rely on irrelevant materials concerning an early version of the EGI-TRB Note transaction that did not occur.    Though the EGI-TRB Subordination Agreement was executed on December 20, 2007, most of the parol evidence offered by the PHONES relates to months-earlier communications leading up to a March 29, 2007 preliminary rating assessment letter from Moody's.    That preliminary assessment letter described the PHONES as "senior subordinated" and the EGI-TRB Step One Note as "junior subordinated" (ADH 125), but the letter addressed only an early version of the transaction that the parties later discarded.

As Mr. Pate, EGI-TRB's lead negotiator, testified, the version of the transaction addressed in the Moody's letter anticipated that the EGI-TRB Note would include an equity warrant.  (ADH 156, Pate Dep. at 104:2-105:13.)  In the final agreement, however, the parties used a different structure that separated the Note and the equity warrant, making the Note "hard" and "independent" for tax reasons.  (*Id.* at 17:20-18:6.)  After the equity component was separated, Mr. Pate testified, EGI-TRB's understanding was that the EGI-TRB Note would be senior to the PHONES, which was important for tax purposes and also consistent with Mr. Pate's experience that convertible debt is typically subordinate.  (*Id.* at 17:25-18:6, 26:24-27:3.)

More specifically, Mr. Pate testified that the deal structure described in the PHONES parol materials from March 2007 (including the March 23, 2007 Indicative Term Sheet and the March 29, 2007 Moody's letter) was "discarded" before the transaction closed:

> Q. Does that assumption [in the Moody's letter] have any bearing upon whether you believe the reference in this [Moody's letter] to a $225 million subordinated promissory note is a reference to the Step 2 note?
>
> * * *
>
> A. Well, the assumption here clearly states a kind of ***prior structure that was discussed and discarded*** prior to the signing of the documents because it assumes that we made an investment in conjunction with the purchase of a note and a warrant.  And we ultimately broke apart the note and the warrant as part of the transaction.
>
> * * *
>
> Q. And just because there's been objections to the form of my question, could you state in your own words what you believe happened through the course of the negotiation of these notes, starting in March and moving on to the final deal?
>
> A. It – It appears to me ***this Moody's rating assessment was provided with respect to a structure that we ultimately discarded*** in the course of the negotiations**.**  The structure upon which they were assuming was – involved a combined note and warrant and single amount of consideration for the two instruments.  It also involved the cancellation of the note in conjunction with the exercise of the warrant.  With our counsel, we ended up changing the structure so that the warrant and the note were separated. . . .
>
> * * *
>
> Q. And based on all the documents you've seen today, do you believe those indicative term sheets as of March 23, 2007, subject to modification, were written before or after the deal structure at that time was discarded?
>
> MR. SIEGEL:  Objection.
>
> A.  **Those term sheets were written prior to discarding that structure. . . .**

32

(ADH 156, Pate Dep. 103:16-109:14, emphasis added.)

Not only does the PHONES' March 2007 parol relate to a "discarded" deal, it also contains incurable hearsay. The PHONES will apparently rely on a March 27, 2007 email from Mr. Sonne of JPMorgan attributing a statement to a junior analyst at EGI named Chris Hochschild. (ADH 128.) Mr. Hochschild was not copied on the email and has no recollection of ever making the hearsay statements attributed to him. (ADH 157, Hochschild Dep. at 53:5-10.) The email is double hearsay and is not admissible.[17]

Tellingly, nearly all of the PHONES' parol evidence pre-dates the Tribune's SEC filings which represented both to the SEC and investing public that the Step One Note was only subordinated to "senior obligations." Indeed, the only parol evidence offered by the PHONES that post-dates the Tribune's initial April 5, 2007 filing with the SEC is inadmissible or has little weight:

- Drafts of the subordination agreement which, as a matter of law, merged into the final agreement (ADH 140-43, 146-49);

---

[17] The PHONES argument that the Sonne email is admissible as a party admission under Federal Rule of Evidence 801(d)(2)(D) (PHONES Br. at 34, n.7) is wrong because the PHONES have failed to establish a foundation that it was within Mr. Hochschild's role and responsibilities to speak to or that he had knowledge on the priority of the Notes. *See, e.g.*, *McAdams v. United States*, 297 Fed. App'x 183, 186 (3d Cir. 2008) (affirming lower court's exclusion of statement by VA medical center x-ray technician who was not responsible for the condition or maintenance of the VA medical center floors regarding which he had made a statement as non excepted hearsay under Rule 801(d)(2)(D)); *see also Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 Fed. App'x 224, 228 (3d Cir. 2007). *See, e.g.*, ADH 156, Pate Dep. 56:14-57:2, where Mr. Pate explains he would have been surprised if Mr. Hochschild would have made such a statement because doing so would have been outside the scope of his role as analyst working under Mr. Pate. *See also* ADH 157, Hochschild Dep. 10:23-11:2, Mr. Hochschild's testimony explaining that in 2007 at the time of the Tribune transaction he was employed at EGI but was not aware of holding any title and considered himself just an "analyst." Mr. Hochschild further testified that he was a relatively new analyst for EGI and he did not recall making such a statement. (*Id.* at 55:5-10, 11:22-12:4.)

- A handwritten comment on a May 22 draft agreement asking that the subordination agreement use the language from the "junior capital note" (a reference to the Step One Note) (ADH 141), which Mr. Pate addressed, explaining that a "junior capital note" simply refers to a subordinated note and not to junior subordinated debt.) (ADH 156, Pate Dep. 100:8-102:15);

- A June 29, 2007 list of Tribune's debt that separately breaks out the EGI-TRB Step One Note (ADH 144), which Mr. Hochschild explained is consistent with the fact that the Note was to be repaid on the closing of Step Two.  (ADH 157, Hochschild Dep. at 84:15-85:22.)

And *none* of the PHONES' evidence post-dates the Tribune's July 13, 2007 definitive proxy statement (ADH 156), which again reiterated that the EGI-TRB Note was subordinate only to "senior obligations."

In sum, the parol evidence only confirms that the EGI-TRB Note was intended to be senior to the PHONES.

## IV.    ISSUES OF EQUITABLE SUBORDINATION ARE OUTSIDE THE SCOPE OF THIS PROCEEDING.

The Order scheduling this hearing expressly provides that issues of equitable subordination, which are the subject of allegations made in the *Fitzsimons* litigation, are outside the scope of this hearing.  (D.I. 10692 at n.5, "Allocation Disputes do not include issues raised in . . . *FitzSimons*.")  Count 22 of *FitzSimons* asserts a claim for equitable subordination against EGI-TRB related to the Second Step Note.

Certain parties nonetheless take "pot shots" at EGI-TRB, claiming that it has "chutzpah" for asserting its rights as a creditor and that this Court should hold it responsible for the demise of Tribune and equitably subordinate the Step Two Note. (Retirees Br. at 14; LDT Br. at 3.)  These arguments are both irrelevant and unfounded. The Examiner found:

**Examiner's Conclusions**:  A court is reasonably unlikely to exercise its equitable discretion to subordinate the EGI claims in the Chapter 11 Cases pursuant to Bankruptcy Code section 510(c).

**Explanation of Examiner's Conclusions**:

The Examiner did not find any plausible basis in the record to justify equitable subordination of the EGI-TRB Notes, which is contractually subordinated to most indebtedness in any event. . . .

(Examiner Report Vol. II, p. 338.)

The Retirees and Law Debenture should either respect the bounds of this proceeding *or* agree that this Court may resolve any equitable subordination claims – a process EGI-TRB would welcome.

## V.    EGI-TRB DID NOT AGREE TO BE SUBORDINATED TO THE SENIOR NOTEHOLDERS' RECOVERY OF POST-PETITION INTEREST.

Oaktree and Law Debenture contend that the beneficiaries of the EGI-TRB Subordination Agreement are entitled to receive post-petition interest before EGI-TRB may recover anything under the Plan.  (Oaktree Br. at 24-27; LDT Br. at 35-39.)  Both argue that 11 U.S.C. § 510 abrogated the Third Circuit's "Rule of Explicitness," and that it is now a matter of state law as to whether the Rule applies to subordination agreements. Although no Delaware state court has yet addressed the Rule of Explicitness, Oaktree and Law Debenture assume that the Delaware courts would not apply the Rule.[18]

With respect to distributions of Company assets, this Court should find that the Rule of Explicitness continues to apply.  Although Delaware courts have not yet

---

[18] Oaktree relies on *New York Stock Exchange v. Pickard & Co.*, 296 A.2d 143 (Del. Ch. 1972) to argue that the Rule of Explicitness could be contrary to Delaware law.  *Pickard* is of no relevance to the issues before this Court because it does not address interest at all, let alone post-petition interest, and it pre-dates *In re Time Sale Finance Corp.*, 491 F.2d 841 (3d Cir. 1974), in which the Third Circuit adopted the Rule of Explicitness.  (*See also* D.I. 5248, Examiner's Report, Vol. II at 307, n.845 (noting Third Circuit followed the Rule of Explicitness).)

addressed whether the Rule survived enactment of the Bankruptcy Code, the only state court to do so confirmed that the Rule of Explicitness survived intact. *See Chem. Bank v. First Trust of N.Y. (In re Southeast Banking Corp.)*, 93 N.Y.2d 178, 186 (N.Y. 1999); *see also In re Wash. Mut., Inc.*, 461 B.R. 200, 249 (Bankr. D. Del. 2011) (discussing the continued application of the Rule).  As the New York Court of Appeals recognized, "the Rule of Explicitness safeguards reliance by parties on the . . . general rule that creditors are not entitled to post-petition interest in bankruptcy proceedings absent express language to that effect in subordination agreements ordering priorities among the contracting parties."  93 N.Y. 2d at 187.  Additionally, as noted, Delaware courts strictly construe subordination agreements.  *Guarantee Bank*, 462 A.2d at 408-09 ("In construing the terms of a subordination clause . . . Delaware law requires such agreement to be strictly construed where their terms are unambiguous"); *Masten Lumber & Supply Co. v. Suburban Builders, Inc.*, 269 A.2d 252, 254 (Del. Super. Ct. 1970) (stating that a subordination agreement "must be strictly construed" because under a "liberal construction . . . a judicial decision would almost always be required to establish priority . . . as factual situations vary and lending institutions . . . would be in an intolerable position").

Eliminating the Rule of Explicitness now after decades of its uninterrupted application also would be contrary to the parties' reasonable commercial expectations. Indeed, because of the Rule of Explicitness, the Revised Model Simplified Indenture includes post-petition interest within the definition of "debt" and the Comments to this model form advise that "most indentures now include such post-petition interest expressly (if at all) in the definition of debt or Senior Debt."  Ad Hoc Committee for

Revision of the 1983 Model Simplified Indenture, 55 Bus. La. 1115, 1221 & Comment No. 3 to § 11.01 (2000).

Because, contrary to recommended industry practice, the parties here did not include post-petition interest within the definition of Senior Obligations or make any explicit mention of senior creditors' rights to receive post-petition interest, this Court should conclude that the parties did not intend to subordinate EGI-TRB's claims to the senior creditors recovery of post-petition interest.

## VI.    EGI-TRB IS NOT SUBORDINATED TO THE TRADE CLAIMS, SWAP CLAIMS, AND RETIREE CLAIMS.

As set forth more fully in EGI-TRB's opening brief, the Trade Claims, Swap Claims, and Retiree Claims are not entitled to benefit from the EGI-TRB Subordination Agreement (a) with respect to avoidance recoveries or Settlement Proceeds because those recoveries are not subject to the Subordination Agreement, and (b) because "trade payables and accrued expenses incurred in the ordinary course of business" are excluded from the definition of Senior Obligations under the Agreement.  (*See* EGI-TRB Op. Br. at 18-19.)

## CONCLUSION

The holders of the EGI-TRB Notes are entitled to their *pro rata* share of Settlement Proceeds, Litigation Trust proceeds from avoidance recoveries and Creditor Trust proceeds from avoidance recoveries, together with monies owed by the PHONES to EGI-TRB under the PHONES subordination provision.

Dated: March 2, 2012                    Respectfully submitted,

**BLANK ROME LLP**

By:   /s/ *David W. Carickhoff*
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

        and

**JENNER & BLOCK LLP**
David J. Bradford (admitted *pro hac vice*)
Catherine L. Steege (admitted *pro hac vice*)
Andrew W. Vail (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350

*Counsel for EGI-TRB, LLC*