## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DEBTORS' RESPONSE BRIEF REGARDING ALLOCATION DISPUTES

Pursuant to ¶ 15 of the Order Establishing Scheduling for (1) Resolution of the

Allocation Disputes and (2) Consideration of DCL Plan Proponents' Supplemental Disclosure

Document, Solicitation Procedures Motion and Plan [Docket No. 10692] (the "Allocation

Disputes Order"), the debtors and debtors in possession in the above-captioned chapter 11 cases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com Corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(collectively, the "Debtors") hereby submit this Response Brief Regarding Allocation Disputes (the "Response Brief").

The Debtors file this Response Brief to address three issues raised by Wilmington Trust Company ("Wilmington Trust") in the Opening Brief of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES Notes, on the Allocation Disputes (the "WTC Brief") [D.I. 10999] and to reply to the opening briefs of several parties with regard to the disputes regarding whether the Claims under Non-Qualified Former Employee Benefit Plans[2] (the "Retiree Claims") and Other Parent Claims other than the Swap Claim and the Retiree Claims constitute "Senior Indebtedness" under the PHONES Notes Indenture or "Senior Obligations" under the subordination agreement governing the EGI-TRB LLC Notes (the "EGI-TRB Subordination Agreement").

(a) The Effect of Wilmington Trust's Notice of, and Motion for Leave to, Appeal. Notwithstanding the divestiture rule cited by Wilmington Trust (WTC Brief at 10-13), this Court has jurisdiction to hear and resolve the Allocation Disputes as well as to move forward with and to enter an order granting or denying confirmation of the Third Amended Plan. Other parties to the Allocation Disputes agree that this Court retains jurisdiction to resolve Allocation Disputes. *See* Joint Opening Brief of Law Debenture Trust Company of New York ("Law Debenture") and Deutsche Bank Trust Company Americas ("DBTCA", and with Law Debenture, the "Noteholders") (the "Noteholder Brief") at 14-16; Opening Brief of Oaktree Capital Management, L.P. at 17 n.11.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Third Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries Proposed By the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Third Amended Plan") [D.I. 10958].

46429/0001-8351970v1

As Judge Walrath recently held in *In re Washington Mutual, Inc.*, 2011 Bankr. LEXIS 3361 at *20 - 29 (Bankr. D. Del. Sept. 13, 2011), after canvassing the same cases relied upon by Wilmington Trust, "[t]he correct statement of the Divestiture Rule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it," including by "considering" and "approving" a plan of reorganization based upon it. *Id.* at *29. Judge Walrath's view of the law was affirmed by the District Court for the District of Delaware and the Third Circuit. On January 19, 2012, Chief Judge Sleet denied a writ of mandamus seeking to stay the Washington Mutual confirmation proceedings pending resolution of the appeal on the grounds that "the lower court may take all actions necessary to implement or enforce the order from which an appeal is taken", including by "consider[ing] confirmation of the plan" and "by approving the plan." Order at nn.3 & 4, *In re Washington Mutual, Inc.*, Civil Action No. 11-124 (GMS) (D. Del. Jan. 19, 2012). Less than one month later, the Third Circuit denied a request for a writ of mandamus seeking to stay the confirmation proceedings, holding that the Bankruptcy Court had the power to "continue [confirmation] proceedings pending appeal." Order at 2 n.1, *In re Washington Mutual, Inc.*, No. 12-1263 (3d Cir. Feb. 6, 2012).

Wilmington Trust does not even cite the foregoing binding authority. Instead, Wilmington Trust "requests that Plan distributions on account of Settlement Proceeds should be reserved pending final adjudication of Wilmington Trust's appeal." WTC Brief at 12-13. The Debtors believe, however, that it is, at best, premature to address the structure of distributions at this point. The validity of Wilmington Trust's notice of appeal has been challenged, Wilmington Trust's motion for leave to appeal has been opposed, and there has been no voting or confirmation hearing held on the Third Amended Plan. Wilmington Trust would thus ask the

3

Court to hold back millions of dollars in consideration on the bare fact that it has filed a notice of appeal, even an allegedly illegitimate appeal.

Moreover, Wilmington Trust's request to establish a reserve is an inappropriate attempt to obtain a stay pending appeal (leave for which has not been granted) and injunctive relief, without establishing or even attempting to establish any of the requisite showings. *See In re Chemtura*, 2010 Bankr. LEXIS 3988 (Bankr. S.D.N.Y. 2010) (denying creditor's request for stay of distributions and creation of reserve during pendency of an appeal under both a four-part "traditional" injunction analysis and a mandatory injunction analysis). Accordingly, Wilmington Trust's request for a reserve should be denied.

(b)    Subordination of PHONES Notes With Respect to the Creditor Trust. In its opening brief, Wilmington Trust argues that the issue of the proper application of the subordination provisions in the PHONES Notes Indenture to distributions by the Creditors' Trust is moot because "Wilmington Trust is not aware of any holder of PHONES who elected to contribute their claims to the Creditors' Trust." WTC Brief at 13. Wilmington Trust's argument rests upon an inaccurate factual predicate.

The Third Amended Plan provides that certain Holders of Claims against Tribune Company, including Holders of PHONES Notes Claims, will be deemed to transfer any Disclaimed State Law Avoidance Claims that they may have to the Creditors' Trust, unless such Person expressly elects to "opt-out" of such assignment. Third Amended Plan, § 14.3.1.[3] Pursuant to the proposed solicitation and election procedures concerning the Third Amended

---

[3] In the Opinion on Confirmation, this Court approved the "opt-out" election for the Creditors' Trust provided for in the Second Amended Plan, stating that "I…conclude that the Plan's establishment of the Creditors' Trust and procedure for assignment of creditors' claims is not inconsistent with *Caplin*. The Plan's claim assignment procedure is voluntary because it allows creditors to 'opt-out'." *In re Tribune Co.*, 2011 WL 5142420 at *49 (Bankr. D.Del. October 31, 2011).

Plan, Holders of PHONES Notes Claims will have an opportunity to elect to "opt-out" of assigning their Disclaimed State Law Avoidance Claims to the Creditors' Trust established under the Third Amended Plan in connection with the limited resolicitation of votes to accept or reject the Third Amended Plan.[4] It is not possible to determine the number of Holders of PHONES Notes Claims that will elect not to transfer their claims to the Creditors' Trust and the number of Holders of PHONES Notes Claims that will transfer their claims to the Creditors' Trust until this resolicitation has been completed.

By way of example, however, under the Court-approved solicitation procedures with respect to the Second Amended Plan, there were approximately 167 Holders of PHONES Notes Claims in Class 1J, and only 29 of such Holders elected not to transfer their Disclaimed State Law Avoidance Claims to the Creditors' Trust established under the Second Amended Plan. *See* Amended Declaration (Fourth Supplemental) of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC [Docket No. 10090, Ex. A.]. While Wilmington Trust may be correct that Holders of a large amount of PHONES Notes Claims elected to opt-out of the Creditors' Trust in connection with the Second Amended Plan, approximately 138 Holders of PHONES Notes Claims would have contributed their Disclaimed State Law Avoidance Claims to a Creditors' Trust established under the Second Amended Plan.

---

[4] *See* Motion for an Order (I) Approving the Supplemental Disclosure Document; (II) Establishing Scope, Forms, Procedures, and Deadlines for Resolicitation of Votes to Accept or Reject the DCL Plan from Certain Classes; (III) Authorizing Tabulation of Prior Votes and Elections on DCL Plan Made by Holders of Claims in Non-Resolicited Classes; (IV) Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof; and (V) Granting Related Relief (the "Solicitation Procedures Motion") [Docket No. 10274] at ¶¶ 26-27, 35. The Bankruptcy Court approved similar procedures for electing to opt-out of the Creditors' Trust in connection with the Second Amended Plan. *See* Solicitation Order, Exhibit F. However, pursuant to the relief requested in the Solicitation Procedures Motion, any Creditors' Trust elections made by Holders of PHONES Notes Claims in connection with the Second Amended Plan will be rendered void. *See* Solicitation Procedures Motion at ¶¶ 26-27, 35.

46429/0001-8351970v1

In addition, the Third Amended Plan provides that even if a Holder of a Claim initially elects not to transfer its Disclaimed State Law Avoidance Claim to the Creditors' Trust, such Holder may elect to assign such claim to the Creditors' Trust at a later date. Third Amended Plan, § 14.3.1. As a result, it is possible that Holders of PHONES Notes Claims that elect not to transfer their claims to the Creditors' Trust will subsequently decide to transfer such claims and participate in the Creditors' Trust. The application of the subordination provisions in the PHONES Notes Indenture to distributions by the Creditors' Trust is accordingly not moot as suggested by Wilmington Trust.

(c) Retiree Claims. In their opening briefs, the Holders of Retiree Claims represented by Teitelbaum & Baskin, LLP (the "TM Retirees"), the Noteholders, Wilmington Trust and EGI-TRB, LLC ("EGI-TRB") have argued the merits of disputes described in ¶¶ 2(a)(iii) and (b)(iii) of the Allocation Disputes Order; specifically, whether the Retiree Claims constitute "Senior Indebtedness" under the PHONES Notes Indenture and/or "Senior Obligations" under the EGI-TRB Subordination Agreement. As previously indicated, the Debtors take no position on the merits of these disputes.

As described in their opening brief, the Debtors have produced in discovery certain factual material which the Debtors believe may assist the Court in resolving these disputes, including a list of each Holder of a Retiree Claim, not represented by Teitelbaum & Baskin, LLP (the "Non-Teitelbaum Retirees"), identifying the claim number, the name of the claimant, the amount claimed and the nature of the supporting documents (TRB2000102). A slightly revised version of the chart produced in discovery is attached hereto as Exhibit A.[5] Exhibit A reflects

---

[5] As reflected in footnote 8 of the chart produced in discovery listing Non-Teitelbaum Retirees (TRB2000102), six of the claimants have, subsequent to the execution of the Retiree Claim Settlement, become clients of Teitelbaum & Baskin. These six claimants and their associated amounts are included in the numbers used in the TM Retiree Brief

46429/0001-8351970v1

that, of the 38 Non-Teitelbaum Retirees, 27 are covered by four of the same retirement plans identified in the TM Retirees' opening brief (pp. 19-21) as the basis for the claims of many of the TM Retirees. In addition, ten of the Non-Teitelbaum Retirees are covered by letter agreements of a similar nature to those letter agreements that provide the basis for the claims of numerous TM Retirees. Finally, one Non-Teitelbaum Retiree is covered by a Tribune plan similar to the Times Mirror Board of Directors plan. Exhibit A sets forth these comparisons.

However the merits of the contract subordination disputes are resolved, the Debtors submit that those Non-Teitelbaum Retirees whose rights and claims are similar to the various categories of TM Retirees should be subject to the same determinations as to whether they were or were not (i) "Senior Indebtedness" under the PHONES Notes Indenture, (ii) "Senior Obligations" under the EGI-TRB Subordination Agreement, or, if neither of the above, (iii) be treated in a way that is similar to the treatment of the TM Retirees. The Third Amended Plan is designed to permit retirees who are not parties to the Retiree Settlement Agreement to have their claims allowed in the same quantifiable way as the TM Retirees who are parties to the Retiree Settlement Agreement, and if they do so, obtain the same limited releases available to the TM Retirees under the Settlement Agreement. Third Amended Plan, §§1.1.176, 3.2.6. Also, the Third Amended Plan provides for the same treatment and treatment elections for all Holders of Retiree Claims, regardless of whether they are Teitelbaum clients or not.

(d) <u>Other Parent Claims (other than the Swap Claim and Retiree Claims)</u>. In their opening briefs, the Noteholders, Wilmington Trust and EGI-TRB have argued the merits of disputes described in ¶¶ 2(a)(iii) and (b)(iii) of the Allocation Disputes Order; specifically, whether the non-Swap, non-Retiree Other Parent Claims, constitute "Senior Indebtedness" under

and referenced in footnote 3 to Exhibit A to the Bell Declaration in support of the TM Retiree Brief. Therefore on the attached Exhibit A, the Debtors have separately listed these six individuals at the bottom of the exhibit.

7

46429/0001-8351970v1

the PHONES Notes Indenture and/or "Senior Obligations" under the EGI-TRB Subordination

Agreement.  As previously indicated, the Debtors take no position on the merits of these

disputes.

As described in their opening brief, the Debtors have produced in discovery certain

factual material which the Debtors believe may assist the Court in resolving these disputes,

including a list of the non-Swap, non-Retiree Other Parent Claims identifying the claim number,

the name of the claimant, the amount claimed and the nature of the claim.  Exhibit B filed

herewith summarizes the categories into which these Other Parent Claims fall.  Specifically, the

non-Swap, non-Retiree Other Parent Claims include various insurance-related claims, employee

claims, former shareholder claims, indemnification claims, litigation claims, non-priority tax

claims, trade claims, and other miscellaneous categories of Other Parent Claims.  Consequently,

the Noteholders' characterization of these Other Parent Claims as being solely "trade claims"

(Noteholder Brief at 3) is incorrect.[6]  The Debtors submit the information on Exhibit B to assist

the Court in determining whether any of the non-Swap, non-Retiree Other Parent Claims

constitute "Senior Indebtedness" under the PHONES Notes Indenture and/or "Senior

Obligations" under the EGI-TRB Subordination Agreement.

The Debtors further note that, as reflected on Exhibit B, the face amount of the non-

Swap, non-Retiree Other Parent Claims totals $116,209,498 (which includes WTC's $19 million

---

[6] The Noteholders also misleadingly quote Mr. Whittman 's expert report in the first confirmation hearing: "[t]he settlements in the Plan also provide the benefit of the subordination [of the PHONES] to the remaining Other Parent Claims for simplicity of plan construction" rather than because they were entitled to the benefits of subordination." Noteholder Brief at 20.  Mr. Whittman's report actually states that under the Plan the PHONES subordination benefits the Retiree Claims and Swap Claims (combined, approximately 97% of the Other Parent Claims) and that given the immateriality of the *remaining* Other Parent Claims, the Plan, for simplicity of plan construction, affords them identical treatment.  (DCL Ex. 1110 at 16 & n.33).

46429/0001-8351970v1

fee claim discussed in Section (e) below), plus certain unliquidated amounts.[7] Since the

production of discovery noted above, certain of the non-Swap, non-Retiree Other Parent Claims

included in that number have already been disallowed or allowed in reduced amounts by orders

of the Court, or are the subject of pending settlements.[8] Certain others of the non-Swap, non-

Retiree Other Parent Claims will be resolved under the Third Amended Plan and Confirmation

Order, such as the $29,494,266 (in face amount) claim of Zurich American Insurance Company,

which accounts for more than one-fourth of the aggregate face amount of all non-Swap, non-

Retiree Other Parent Claims by itself. Third Amended Plan, § 6.9. The Debtors are continuing

to pursue settlements of a number of other non-Swap, non-Retiree Other Parent Claims that the

Debtors expect will result in a significant reduction in the face amount of those claims. Beyond

proposed and potential consensual resolutions, the Debtors dispute many other non-Swap, non-

Retiree Other Parent Claims, and have filed or intend to file objections to such claims.[9]

---

[7] For purposes of calculating recoveries under the Third Amended Plan (as reflected in the Recovery Charts), including the division of the Settlement consideration between the Senior Noteholder Claims and the Other Parent Claims, the Debtors assumed an amount of non-Swap, non-Retiree Other Parent Claims of approximately $8,794,000, which was based upon the Debtors' best estimate at the time the recoveries were initially calculated. To the extent the allowed amount of non-Swap, non-Retiree Other Parent Claims exceeds $8,794,000, the Senior Lenders will fund the incremental consideration necessary to provide such additional Holders of Other Parent Claims their plan distributions, so long as the aggregate allowed amount of all Other Parent Claims does not exceed $400 million, subject to certain exceptions. *See* Third Amended Plan § 10.1.1(n) (establishing a waivable condition precedent). Thus, if this category of Other Parent Claims (or any subset thereof) exceeds $8,794,000, the Senior Lenders will fund the distributions to such claimants (as modified based on the outcome of the Court's order if applicable).

[8] *See, e.g.*, Order (Final) (I) Approving the Settlement Agreement on Final Basis; (II) Reaffirming Class Certification, Class Representative and Class Counsel Appointments, and Noticing Procedures; and (III) Granting Related Relief [Docket No. 10917; dated Feb. 14, 2012] (resolving 19 of 43 litigation-related non-Swap, non-Retiree Other Parent Claims with an aggregate face amount of $1,680,000); Motion of Debtors for an Order Pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 9019(a) Authorizing Entry Into and Performance of Obligations Under Settlement Agreement with the Maryland Comptroller of the Treasury [Docket No. 11055; dated Mar. 1, 2012] (consensually eliminating $402,580 unsecured non-priority tax claim).

[9] *See, e.g.*, Debtors' Objection to Claim Nos. 263 and 4411 of Marta Waller, Pursuant to Sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1 [D.I. 10963; dated February 21, 2012] (objection seeking disallowance of $10,000,000 in face amount of non-Swap, non-Retiree Other Parent Claims).

(e) <u>Wilmington Trust Fee Claim</u>.  Wilmington Trust asserts in its opening brief that its claim for fees and expenses incurred in connection with the Debtors' chapter 11 cases is the only Other Parent Claim that is "Senior Indebtedness" under the PHONES Indenture.  WTC Brief at 20.  The Debtors note two points respecting this assertion.

First, Wilmington Trust asserts as evidence for its conclusion the temporary allowance of its fee claim for voting purposes on the Second Amended Plan pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure. *See id.*  This assertion is refuted by the plain language of the order to which Wilmington Trust cites, which states that pursuant to Rule 3018(a), "Wilmington Trust's claim is temporarily allowed *only for purposes of voting on the Debtor/Committee/ Lender Plan as a Class 1F Other Parent Claim...*" Order Temporarily Allowing Claims of Wilmington Trust Company Pursuant to Bankruptcy Rule 3018(a) [D.I. 7626] (emphasis added).  Nothing in this Court's order provided or could reasonably be construed that Wilmington Trust's fee claim was being allowed for any purpose other than voting, and Wilmington Trust's claim to the contrary is erroneous.

Second, Wilmington Trust has declined to provide any support to the Debtors for the amount of its asserted claim.  Wilmington Trust has advised the Debtors that it believes it has a $19 million claim that is properly classified and treated as an Other Parent Claim, an increase from the $14.16 million claim referenced in its opening brief.  WTC Brief at 20.  As Wilmington Trust has provided no support for that claim, and has indeed declined to provide that support after multiple requests by the Debtors, the Court should properly decline to accept any assertions by Wilmington Trust respecting the amount of such claim, as they are, at this point, entirely without factual basis before the Court.

46429/0001-8351970v1

Dated: Wilmington, Delaware
         March 2, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP

James F. Conlan
Kevin T. Lantry
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

James F. Bendernagel, Jr.
Ronald S. Flagg
1501 K St., N.W.
Washington, D.C. 20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711

            -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

11