IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRIBUNE COMPANY, et al., | ) |
| | ) Case No. 08-13141 (KJC) |
| Debtors. | ) Jointly Administered |
| | ) Hearing date: March 5, 2012, at 10:00 a.m. |

## OAKTREE CAPITAL MANAGEMENT, L.P.'s
## RESPONSE BRIEF REGARDING ALLOCATION DISPUTES

Robert S. Brady (Bar No. 2847)
M. Blake Cleary (Bar No. 3614)
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone (302) 571-6600
Facsimile (302) 571-1253

- and -

Bruce Bennett
James O. Johnston
Joshua M. Mester
DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-1530
Telephone (213) 621-6000

*Attorneys for Oaktree Capital Management, L.P.*

01: 11832728.1

# TABLE OF CONTENTS

**Page**

I. THE SWAP CLAIM IS SENIOR TO THE PHONES NOTES AND THE EGI SUBORDINATED NOTE. ..................................................................................................1

    A. Oaktree Does Not Have The "Evidentiary Burden." ..............................................1

    B. The Swap Claim Is A Senior Obligation Under The EGI Subordination Agreement. ..............................................................................................................2

    C. The Swap Claim Is Senior Indebtedness Under The PHONES Indenture. ..............3

    D. The Plan Does Not "Unfairly" Discriminate With Respect To The Swap Claim. ......................................................................................................................6

II. THE SUBORDINATION PROVISIONS INCLUDE DISTRIBUTIONS OF SETTLEMENT CONSIDERATION. ..................................................................................7

    A. The PHONES Indenture Provides For Subordination Of The Settlement Consideration. ..........................................................................................................7

    B. The EGI Subordination Agreement Provides For Subordination Of The Settlement Consideration. ......................................................................................7

III. THE CONTRACTUALLY-SENIOR SWAP CLAIM IS ENTITLED TO POSTPETITION INTEREST ............................................................................................11

IV. CONCLUSION ..................................................................................................................12

01: 11832728.1

- ii -

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Enron Creditors Recovery Corp.*,
    370 B.R. 64 (Bankr. S.D.N.Y. 2007)..................................................................................1

*New York Stock Exchange v. Pickard & Co., Inc.*,
    296 A.2d 143 (Del. Ch. 1972) ...........................................................................................11

Oaktree Capital Management, L.P., on behalf of certain investment funds and accounts it manages (collectively, "Oaktree"), as holder of the Swap Claim, submits this Response Brief in accordance with the Order Establishing Scheduling For (1) Resolution Of The Allocation Disputes And (2) Consideration Of DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion and Plan [docket no. 10692] (the "Allocation Disputes Order").[1]

## I. THE SWAP CLAIM IS SENIOR TO THE PHONES NOTES AND THE EGI SUBORDINATED NOTE.

### A. Oaktree Does Not Have The "Evidentiary Burden."

Both Law Debenture and Wilmington Trust assert that Oaktree has some sort of "evidentiary" or other burden of establishing seniority under the applicable subordination agreements. Law Debenture Br. at 19; Wilmington Trust Br. at 14.

The authority cited in this respect requires the opposite conclusion. Where, as here, "there are no facts in dispute and the Court makes its determination [of seniority] as a matter of law based on contract interpretation, the burden of proof is not implicated." *In re Enron Creditors Recovery Corp.*, 370 B.R. 64, 71 n.1 (Bankr. S.D.N.Y. 2007), *rev'd on other grounds*, 380 B.R. 307 (S.D.N.Y. 2008).

The subordination agreements here are plain on their face and the facts are not in dispute. As a consequence, "the burden of proof is not implicated" and no party bears an "evidentiary" or other burden in this respect.

---

[1] Terms not otherwise defined in this Brief have the meanings ascribed to them in Oaktree's Opening Brief Regarding Allocation Disputes [docket no. 1103]. References to other parties' opening briefs are to "[party name] Br.," with references to "Law Debenture Br." being to the brief jointly filed by Law Debenture and Deutsche Bank Trust Company Americas.

**B.     The Swap Claim Is A Senior Obligation Under The EGI Subordination Agreement.**

In its Opening Brief, as in its previously-filed Position Statement, EGI makes no allegation that the Swap Claim is not entitled to the benefits of seniority under the EGI Subordination Agreement. This implicit concession by the actual holder of the EGI Subordinated Note is dispositive.

Yet, notwithstanding that concession, Law Debenture – a total outsider to the EGI Subordination Agreement – argues that the Swap Claim does not qualify for seniority vis-à-vis the EGI Subordinated Note. Law Debenture Br. at 28. That argument is frivolous.[2] Law Debenture contends that the Swap Claim constitutes "[1] an accrued expense [2] incurred in the ordinary course of business" that is excluded from the definition of Senior Obligations under the EGI Subordination Agreement. *Id.* Both components of that assertion are wrong. *First*, as shown in Oaktree's Opening Brief, Tribune's financial statements accounted for obligations under the Swap Documents as either short-term or long-term debt and not as "accrued expenses." *See* Oaktree Appendix Exhibits L-O. *Second*, the Swap Claim was not incurred in the "ordinary course of business." It was incurred in connection with the financing of the LBO transactions – the very transactions that Law Debenture has claimed to be the basis for billions of dollars of fraudulent conveyance causes of action.

Taken to its logical conclusion, Law Debenture's construction would exclude from the scope of the EGI Subordination Agreement the interest accrued on any Tribune indebtedness whatsoever, even including the interest accrued on the Senior Notes for which Law Debenture

---

[2] If there were any non-frivolous argument to be made in respect of the Swap Claim's alleged lack of seniority under the EGI Subordination Agreement, EGI assuredly would have made it.

01: 11832728.1

serves as indenture trustee and the interest on the Senior Loans for which the Swap Documents served to hedge Tribune's interest rate exposure. Not even Law Debenture could make that argument with a straight face.

As a consequence, particularly given the lack of any argument by EGI itself, Law Debenture's assertion that the Swap Claim is not a Senior Obligation under the EGI Subordination Agreement cannot stand.

### C.     The Swap Claim Is Senior Indebtedness Under The PHONES Indenture.

In its Opening Brief, Oaktree established that the Swap Claim qualifies as Senior Indebtedness under the PHONES Indenture in *two* ways. *First*, because it represents an amount "due on or in connection with Indebtedness of [Tribune]" – namely the Senior Loans. Oaktree Br. at 10-12. *Second*, because it constitutes qualifying "Indebtedness" under the PHONES Indenture. *Id.* at 12-15.

Law Debenture and Wilmington Trust completely ignore the first point. In fact, both concede the dispositive fact that the Swap Documents were incurred in connection with the Senior Loans issued under the Credit Agreement, and neither disputes the fact that those Senior Loans constitute "Indebtedness" that qualifies for seniority under the PHONES Indenture. Law Debenture Br. at 28 ("Tribune's entry into the Swap Agreement was a required condition of the credit agreements that Tribune entered into in 2007 as part of the LBO."); Remarks of D. Golden on behalf of Noteholder Plan Proponents, April 14, 2011 Hearing Transcript at 109-110 (attached as Exhibit J to Oaktree's previously-filed Appendix) (same).

Wilmington Trust's implied assertion that a claim must first constitute "Indebtedness" before it can constitute "Senior Indebtedness" defies the plain meaning of the PHONES Indenture. *See* Wilmington Trust Br. at 15 ("Oaktree's Swap Claim is not 'Indebtedness' *and therefore* cannot qualify as 'Senior Indebtedness' under the PHONES Indenture.") (emphasis

- 3 -

01: 11832728.1

added). Rather, Senior Indebtedness plainly is defined to include not just "Indebtedness" but also all "amounts due on or in connection with any Indebtedness." PHONES Indenture § 14.01(2) (OCMS-936).

This language – particularly the reference to amounts due "in connection with" Indebtedness – would be meaningless if interpreted to include only "amounts" that independently constitute "Indebtedness" in their own right. Indeed, if Wilmington Trust were right, wide swaths of text could be eliminated from the definition of Senior Indebtedness with no change whatsoever to its meaning. Specifically, using Wilmington Trust's reasoning, the following "strike through" language could be removed without any effect:

> (2) "Senior Indebtedness" means ~~the principal of (and premium, if any) and interest on (including interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or permitted to the holder of such Indebtedness of the Company in such proceeding) and other amounts due on or in connection with any Indebtedness of the Company incurred, assumed or guaranteed and all renewals, extensions and refundings of any such~~ Indebtedness of the Company; provided, however, that the following will not constitute Senior Indebtedness: [exceptions not relevant to the Swap Claim]

PHONES Indenture § 14.01(2) (OCMS-936). This would do violence to the fundamental principal – endorsed by Wilmington Trust itself – that all "contracts must be interpreted as a whole, with meaning given to all provisions, in order to effect the intent of the parties." Wilmington Trust Br. at 15.

Moreover, it is clear that the "in connection with" language was purposeful and material. Without it, Tribune's obligations in respect of, among other things, administrative agent fees, collateral agent fees, and legal fees and expenses due "in connection with" Indebtedness would not qualify for seniority because they do not independently constitute "indebtedness for borrowed money" or "obligations represented by notes, bonds, debentures or similar evidences

- 4 -

of indebtedness" and there are not included within the definition of "Indebtedness." Yet, no one disputes that such amounts due in connection with, for example, the Senior Loans and the Senior Notes in fact constitute Senior Indebtedness and are senior to the PHONES Notes.

Law Debenture and Wilmington Trust also are wrong in the argument they explicitly do make – that the Swap Claim itself does not constitute "Indebtedness." *See* Law Debenture Br. at 21-23; Wilmington Trust Br. at 15-16. As shown in Oaktree's Opening Brief, the Swap Claim has all of the hallmarks of "evidences of indebtedness" similar to those "represented by notes, bonds, [and] debentures" and of "indebtedness for borrowed money." Among other things, (1) the Swap Claim bears interest and gives rise to contractual rights of set off; (2) Tribune expressly accounted for its obligations under the Swap Documents as long-term and short-term debt; and (3) Tribune's other credit agreements treated those obligations as "debt for borrowed money." Oaktree Br. at 12-16

Law Debenture ignores all of this and baldly asserts that the Swap Claim does not evidence indebtedness similar to that represented by notes, bonds and debentures because a note, bond, or indenture "has a fixed principal amount from the outset." Law Debenture Br. at 22. Notably, Law Debenture provides no support for this gross generalization, which is clearly wrong. As explained in Oaktree's Opening Brief, the Swap Claim is a substitute for the interest due on a fixed portion of the principal amount of the Senior Loans. Oaktree Br. at 11-12. Moreover, many notes, bonds, and debentures have principal amounts that are not fixed at the outset but rather are contingent, variable, and/or subject to adjustment. One need look no further than the PHONES Notes themselves, which provide for payment of a "Contingent Principal Amount" that "shall be reduced on a quarterly basis to the extent necessary such that the yield to

- 5 -

the date of computation . . . does not exceed a yield of 2.0% per annum." Wilmington Trust Br. Ex. B at WTC-104.

Finally, both Law Debenture and Wilmington Trust resort to claiming that Oaktree previously conceded the point by arguing that the Swap Claim was not properly classified with the Senior Loan Claims under the Plan. Law Debenture Br. at 23; Wilmington Trust Br. at 15-16. As explained in Oaktree's Opening Brief, this is simply not so. *See* Oaktree Br. at 15-16 n.10. Oaktree previously asserted that the Swap Claim "is not for money loaned." That is true. But that does not mean that the Swap Claim is not due "in connection with" money loaned (it is) or that the Swap Claim is not an obligation represented by "evidences of indebtedness" similar to "notes, bonds, [and] debentures" (it is) or that, as evidenced by its treatment in Tribune's financial statements and credit agreements, the Swap Claim effectively is "indebtedness for borrowed money" even though the Swap Documents themselves did not involve any advance of funds to Tribune (it is).

For all of these reasons, the Court should enforce the plain language of the PHONES Indenture and find that the Swap Claim is Senior Indebtedness.

### D. The Plan Does Not "Unfairly" Discriminate With Respect To The Swap Claim.

As shown in Oaktree's Opening Brief, even if the Court concludes that the Swap Claim does not constitute Senior Indebtedness under the PHONES Indenture, the treatment of the Swap Claim under the Plan is not unfairly discriminatory because, among other things, such treatment has only a minimal impact on the Senior Notes (reducing initial distributions by less than two percentage points in even the "worst case" scenario). Oaktree Br. at 16-17.

As shown in the Reply Brief filed by the Committee, in which Oaktree joins, Law Debenture has failed to identify any relevant authority to suggest that this "discrimination" is

- 6 -

material or otherwise "unfair" within the governing caselaw. Accordingly, the Plan's treatment of the Swap Claim is appropriate under the circumstances, even if the Court concludes that the Swap Claim is not entitled to seniority vis-à-vis the PHONES Notes.

## II.  THE SUBORDINATION PROVISIONS INCLUDE DISTRIBUTIONS OF SETTLEMENT CONSIDERATION.

Wilmington Trust and EGI continue to assert that the proceeds of the Settlement included in the Plan are not subject to the subordination provisions of the PHONES Indenture and the EGI Subordination Agreement. As demonstrated below, both are wrong.

### A.  The PHONES Indenture Provides For Subordination Of The Settlement Consideration.

By arguing that its notice of appeal of the Reconsideration Decision has divested this Court of jurisdiction over the question of whether the Settlement proceeds are subject to the PHONES Indenture, Wilmington Trust effectively concedes that the Court previously has decided the issue. Wilmington Trust Brief at 10-11.

Oaktree agrees that the Reconsideration Decision is dispositive on the point, but disagrees that the Court somehow has been divested of jurisdiction or otherwise should delay, stay or alter any part of the Plan as a consequence of Wilmington Trust's unauthorized interlocutory appeal. To avoid unnecessary duplication on this point, Oaktree joins in and incorporates by reference the arguments advanced by the Debtors in this regard in their Reply Brief.

### B.  The EGI Subordination Agreement Provides For Subordination Of The Settlement Consideration.

Despite a mangled reading of the EGI Subordination Agreement, EGI also is unable to escape the logic and import of the Reconsideration Decision or otherwise show that the EGI Subordinated Note is not subordinated in respect of distributions of Settlement consideration.

To start, however, a point of agreement. Oaktree agrees that resolution of this issue is "a simple matter of contract interpretation." EGI Br. at 4. The problem for EGI is that nothing in the EGI Subordination Agreement remotely limits EGI's broad subordination to "assets of the Company" as EGI asserts.

First, EGI's entire argument is premised on the assertion that the subordination provision of Section 2 of the EGI Subordination Agreement is limited to distributions of "assets of the Company." EGI Br. at 10. In so arguing, EGI ignores the unambiguous language of that provision providing that "[t]he Subordinated Obligations are subordinate and junior in right of payment to all Senior Obligations to the extent provided in this Agreement." EGI Subordination Agreement at § 2 (OCMS 1427). The subsequent references in Section 2 to "assets of the Company" and payments from the "Company" provide a means of *enforcing* that far-reaching agreement to subordinate, not some sort of backward, awkwardly-written limitation on the subordination itself. If the parties had intended the subordination to be limited to distributions of "assets of the Company", they clearly could have (and would have) said so. That they did not say so is compelling evidence that there was no intent to limit the subordination or otherwise alter the plain meaning of the agreement.

Sections 4 and 6 of the EGI Subordination Agreement confirm this fact. Section 6 of the EGI Subordination Agreement, for example, provides for EGI to turn over to senior creditors not only payments "made by or on behalf of the Company" but *also* payments "received by or on behalf of the Subordinating Creditor." EGI Subordination Agreement § 6 (OCMS-1428). EGI understandably ignores the second clause of that provision, as it is fatal to EGI's contorted arguments. If subordination were limited solely to payments made by Tribune, as EGI asserts, the second clause would be superfluous. Moreover, even if Settlement proceeds are not "assets

- 8 -

of the Company" (for the reasons explained in the Opening Brief, Oaktree submits that they are), distributions under the Plan clearly are payments "made by or on behalf of the Company".

The turnover of payments received by EGI from any source is consistent with the prohibition on EGI's remedies set forth in Section 4 of the EGI Subordination Agreement, which provides that "at no time shall the Subordinating Creditor take or continue *any action*, or exercise *any rights, remedies or powers* under the terms of the Subordinated Note, or exercise or continue to exercise *any other right or remedy at law or in equity* that the Subordinating Creditor might otherwise possess, to collect any Subordinated Obligations." EGI Subordination Agreement § 4 (OCMS-1427) (emphasis added). When Section 4 is read together with Section 6, it is clear not only that the "Subordinated Creditor" (EGI) is prohibited from receiving payment on its "Subordinated Obligations" from any source (including from property that is not "assets of the Company"), but also that EGI is prohibited from taking any action to obtain payment from any source. Like the PHONES Indenture, the entire purpose of the EGI Subordination Agreement is to subordinate the EGI Subordinated Note to Senior Obligations until those Senior Obligations are paid in full in cash.[3]

Here again, EGI has no colorable response. EGI attempts to refute the plain language of Section 4 only by arguing that the pursuit of an avoidance action is different from an action against Tribune to collect principal and interest. EGI Br. at 10. But each results in payment on

---

[3] EGI also argues that the EGI Subordinated Note is senior to the PHONES Notes and that, as a consequence, EGI is entitled to "receive its *pro rata* share of all distributions and avoidance action recoveries that, absent the subordination provisions of the PHONES Notes, would go to holders of the PHONES Notes." EGI Br. at 1 and 21-22. While Oaktree has not taken a position on the relative priorities of the EGI Subordinated Note and the PHONES Notes, Section 4 clearly requires EGI to pay over any such amounts received from the PHONES Notes to the holders of Senior Obligations, including the Swap Claim.

EGI's "Subordinated Obligations", and Section 4 plainly prohibits EGI from exercising "*any rights, remedies or powers*" in an effort to collect (*i.e.*, receive payment on) the EGI Subordinated Note. It strains credibility to suggest that pursuit of an avoidance action – or receipt of avoidance action proceeds under the Plan – by EGI is somehow not the exercise of such a right.[4]

Finally, EGI's assertion that it never agreed to subordinate in the event that "the senior lenders' funding rendered Tribune insolvent" is frankly laughable. EGI Br. at 13. EGI concedes that, at the time of negotiation of the EGI Subordination Agreement, the Senior Lenders "were necessarily concerned with ensuring that Tribune – to whom they were lending money – did not distribute its assets to subordinated lenders [including EGI] before the senior lenders were paid in full." *Id.* It would make no sense for those very same Senior Lenders to forego subordination upon Tribune's insolvency, the very time it would be needed most. EGI's assertion to the contrary is incomprehensible.

Accordingly, just as the Court held in the Reconsideration Decision with respect to the PHONES Notes, the EGI Subordinated Note is fully subordinated in respect of all Settlement

---

[4] EGI strangely argues that because Section 4 gives EGI the right to file a proof of claim and vote a claim, the parties did not intend to subordinate the EGI Subordinated Note to recoveries from all sources. EGI Br. at 10-11. Here again, EGI's reading of the agreement is selective, as EGI neglects to mention that Section 4 only permits EGI to file a proof of claim and to vote a claim "in a manner not inconsistent with terms hereof." EGI Subordination Agreement § 4 (OCMS 1427). In fact, after authorizing the filing of a proof of claim, Section 4 goes on to provide that, "[i]f the Subordinating Creditor shall attempt to enforce, collect or realize upon any of the Subordinated Obligations in violation of the terms hereof, any holder of Senior Obligations may, by virtue of the terms hereof, restrain such enforcement, collection or realization, either in its own name or in the name of the Company." *Id.* The express ability to restrain EGI contradicts the argument that the filing of a proof of claim somehow empowers EGI to pursue and retain proceeds of avoidance actions.

consideration provided under the Plan and all future distributions from the Litigation Trust to be formed under the Plan.

### III. THE CONTRACTUALLY-SENIOR SWAP CLAIM IS ENTITLED TO POSTPETITION INTEREST.

EGI contends that under the Rule of Explicitness, the beneficiaries of the EGI Subordination Agreement are not entitled to postpetition interest because the EGI Subordination Agreement makes no mention of postpetition interest. EGI Br. at 20. However, as explained in Oaktree's Opening Brief, Delaware law requires the enforcement of unambiguous provisions in a contract, including subordination agreements, and EGI fails to cite any authority that the judge-made, equity-driven Rule of Explicitness applies under Delaware law. *See New York Stock Exchange v. Pickard & Co., Inc.*, 296 A.2d 143, 147 (Del. Ch. 1972). Because the EGI Subordination Agreement requires that Senior Obligations be "paid in full in cash," and there is no reasonable interpretation of "paid in full" that would exclude postpetition interest, the holders of Senior Obligations under the EGI Subordination Agreement (including the Swap Claim) are entitled to postpetition interest before EGI can receive or retain any payment on account of the EGI Subordinated Note.

With respect to the PHONES Indenture, no party has disputed that the plain language of the PHONES Indenture should be enforced – namely, that the subordination applies to all "interest on (including interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or permitted to the holder of such [Senior] Indebtedness of the Company in such proceeding)." PHONES Indenture § 14.01(2) (OCMS-936). Because it is too early to determine whether holders of Senior Indebtedness will have claims for postpetition interest allowed in these cases, Oaktree agrees with Law Debenture that the question of whether

- 11 -

postpetition interest will be allowable for the beneficiaries of the subordination provisions of the PHONES Indenture is a question that is properly addressed at a later date.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should conclude that (a) the Swap Claim is entitled to the benefit of the subordination provisions of both the PHONES Indenture and the EGI Subordination Agreement; and (b) those subordination provisions encompass distributions of all Settlement consideration under the Plan and postpetition interest on the Swap Claim.

Dated: Wilmington, Delaware
       March 2, 2012

*/s/ Blake Cleary*

Robert S. Brady (Bar No. 2847)
M. Blake Cleary (Bar No. 3614)
YOUNG CONAWAY STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone (302) 571-6600
Facsimile (302) 571-1253

-and-

Bruce Bennett
James O. Johnston
Joshua M. Mester
DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-1530
Telephone (213) 621-6000

*Attorneys for Oaktree Capital Management, L.P.*

01: 11832728.1