**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>Debtors. | ) Chapter 11<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>)<br>) **Hearing Date: March 5, 2012 at 10:00 a.m. (ET)**<br>) **Re: ECF Nos. 10999, 11003, 11007, 11010**<br>) |

**RESPONSE BRIEF OF AURELIUS CAPITAL MANAGEMENT, LP IN
FURTHER SUPPORT OF ITS POSITIONS REGARDING THE
<u>ALLOCATION DISPUTES</u>**

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE  19899
302- 654-1888

- and -

AKIN GUMP STRAUSS HAUER &
FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
Deborah Newman
One Bryant Park
New York, NY  10036
212-872-1000

*Counsel for Aurelius Capital
Management, LP*

Dated:  March 2, 2012

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................1

I.     The PHONES Subordination Does Not Apply To Post-Petition Interest On Senior Indebtedness Unless And Until All Allowed Non-LBO Claims Against Tribune (Excluding Post-Petition Interest) Are Paid In Full ......................1

II.    The Claims Held By The Tendering PHONES Noteholders Should Be Limited To The Amount Of The Exchange Payments, Resulting In Allowance Of The PHONES Note Claims In The Low PHONES Amount ............6

III.   The Low PHONES Amount Should Be $759,252,932 ...........................................13

CONCLUSION ...............................................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Labs. v. Gardner*,
 387 U.S. 136 (1967) ...................................................................................................3

*Bucciarelli-Tieger v. Victory Records, Inc.*,
 488 F. Supp. 2d 702 (N.D. Ill. 2007) .....................................................................10

*Guy v. Duff & Phelps, Inc.*,
 628 F. Supp. 252 (N.D. Ill. 1985) .............................................................................9

*Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*,
 394 B.R. 765 (Bankr. D. Del. 2008) ........................................................................4

*Henderson v. Stein & Day Inc. (In re Stein & Day Inc.)*,
 80 B.R. 297 (Bankr. S.D.N.Y. 1987) .....................................................................10

*In re Henry*,
 No. 11-60118-13, 2011 WL 1402767 (Bankr. D. Mont. Apr. 13, 2011) .................10

*Lichter v. Goss*,
 232 F.2d 715 (7th Cir. 1956) .................................................................................10

*L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs. Inc.)*,
 209 F.3d 291 (3d Cir. 2000) .....................................................................................3

*In re Lynn-Weaver*,
 462 B.R. 310 (Bankr. D. Mass. 2011) ......................................................................5

*Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. U.S. Dep't of the
 Treas. (In re Motors Liquidation Co.)*,
 460 B.R. 603 (Bankr. S.D.N.Y. 2011) .....................................................................4

*Schoenbrod v. Rosenthal*,
 183 N.E.2d 188 (Ill. App. Ct. 1962) ......................................................................10

*Schwartz v. Schaub*,
 826 F. Supp. 274 (N.D. Ill. 1993) ..........................................................................10

*SEC v. Credit Bancorp, Ltd.*,
 138 F. Supp. 2d 512 (S.D.N.Y. 2001) ......................................................................4

*YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*,
 933 N.E.2d 860 (Ill. App. Ct. 2010) ....................................................................9, 10

{00609961;v1 }

**STATUTES**

810 Ill. Comp. Stat 5/8-405..........................................................................................................11, 12

{00609961;v1 }

Aurelius Capital Management, LP, on behalf of itself and its managed entities

(collectively, "Aurelius"),[1] by and through its undersigned counsel, respectfully submits this

response brief in further support of its positions on the Allocation Disputes regarding (i)

"whether and to what extent beneficiaries of the subordination provisions of the PHONES Notes

Indenture (as determined by the Bankruptcy Court, if applicable) are entitled to receive post-

petition interest prior to the Holders of PHONES Notes Claims receiving payment on their

Claims," and (ii) "the Allowed amount of the PHONES Notes Claims."  Scheduling Order

2.a(iv), (v).  In further support of these positions, Aurelius respectfully submits as follows:

## ARGUMENT[2]

I.    **The PHONES Subordination Does Not Apply To Post-Petition Interest On Senior Indebtedness Unless And Until All Allowed Non-LBO Claims Against Tribune (Excluding Post-Petition Interest) Are Paid In Full**

1.    As set forth in the Aurelius Opening Brief, pursuant to the PHONES

Subordination, the PHONES Noteholders are not subordinated to post-petition interest on Senior

Indebtedness,[3] unless and until Claims for post-petition interest on such Senior Indebtedness are

allowed or permitted against Tribune (which, as a matter of law, cannot happen unless all

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes.  Neither Aurelius nor any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any of its managed entities an insider of Tribune Company or any of its affiliates.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in Aurelius's Opening Brief in Support of its Positions Regarding the Allocations Disputes dated February 24, 2012 [ECF No. 11007] (the "Aurelius Opening Brief").

[3] As set forth in the Aurelius Opening Brief, pursuant to the terms of the Proposed DCL Plan, the Senior Lenders and Bridge Lenders have waived their right to be treated as "Senior Indebtedness" under the PHONES Indenture with respect to Settlement consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees, and Litigation and Creditors' Trust recoveries.  Only the Senior Noteholders, and Other Parent Claims to the extent determined by the Court to constitute Senior Indebtedness, benefit from the PHONES Subordination with respect to these distributions and recoveries.  *See* Subordination Allocation Index, attached as Ex. A to DCL Supplemental Disclosure Document, dated February 20, 2012 [ECF No. 10959], at 7, n. 13; DCL Responsive Statement, dated December 10, 2010 [ECF No. 7141]; DCL Specific Disclosure Statement, dated December 8, 2010 [ECF No. 7135], at 19.  As such, "Senior Indebtedness," as used herein, does not include the Senior Lenders and Bridge Lenders.

1

allowed non-LBO Claims against Tribune, including the PHONES Notes Claims, are

paid in full (excluding post-petition interest)).[4]  The PHONES Subordination explicitly

addresses the question of whether post-petition interest on Senior Indebtedness is entitled

to senior priority, stating expressly that such post-petition interest constitutes "Senior

Indebtedness" "*only to the extent*" it is "***allowed or permitted to the holder of [Senior]***

***Indebtedness of the Company against the bankruptcy or any other insolvency estate of***

***the Company in such proceeding.***"  PHONES Indenture § 14.01(2) (emphasis supplied).[5]

2.      The argument made by Law Debenture Trust Company of New York and

Deutsche Bank Trust Company of Americas (collectively, the "Senior Note Trustees")

issue is not ripe for adjudication, because it is not yet known whether the holders of

Senior Indebtedness will receive payment in full so as to trigger the question of the

priority of post-petition interest, is without merit.  As the Senior Note Trustees concede,

---

[4] Based on the Court's Memorandum On Reconsideration dated December 29, 2011 [ECF No. 10531], proceeds of the state law fraudulent conveyance actions that have been initiated by the indenture trustees for the Senior Notes and the PHONES Notes would be subject to the PHONES Subordination until such time as the holders of the Senior Notes have been paid in full.  However, to the extent that proceeds of these actions are sufficient to pay post-petition interest on the Senior Notes and PHONES Notes, such post-petition interest would not be subject to the PHONES Subordination, because such post-petition interest would not be "allowed or permitted" against Tribune. Accordingly, the holders of the Senior Notes and the PHONES Notes would be entitled to receive and retain such post-petition interest on a *pari passu* basis.

[5] True and correct copies of the relevant pages of the PHONES Indenture are attached hereto as Exhibit A. The full text of Section 14.01(2) of the PHONES Indenture states as follows:

"Senior Indebtedness" means the principal of (and premium, if any) and interest on (including *interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or permitted to the holder of such Indebtedness of the Company against the bankruptcy or any other insolvency estate of the Company in such proceeding*) and other amounts due on or in connection with any Indebtedness of the Company incurred, assumed or guaranteed by the Company, whether outstanding on the date of this Indenture or hereafter incurred, assumed or guaranteed and all renewals, extensions and refundings of any such Indebtedness of the Company; provided, however, that the following will not constitute Senior Indebtedness: (A) any Indebtedness of the Company as to which, in the instrument creating the same or evidencing the same or pursuant to which the same is outstanding, it is expressly provided that such Indebtedness of the Company shall be subordinated to or pari passu with the Securities; (B) Indebtedness of the Company in respect of the Securities; (C) any Indebtedness of the Company constituting trade accounts payable arising in the ordinary course of business; and (D) any Indebtedness of the Company to any Subsidiary of the Company.

PHONES Indenture § 14.02.

{00609961;v1 }

"'[w]hether an issue is ripe for review depends on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *See* Opening Brief of Senior Indenture Trustees with respect to Allocation Disputes ("Sr. Ind. Br.") at 36 (citing *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs. Inc.)*, 209 F.3d 291, 307 (3d Cir. 2000) (internal citations omitted)).  Courts also consider whether an "actual dispute" exists.  *In re Rickel Home Ctrs. Inc.*, 209 F.3d at 307.  All of these factors weigh in favor of determining the priority of post-petition interest on Senior Indebtedness under the PHONES Subordination in connection with the resolution of the other Allocation Disputes.

3.      First, with respect to whether an issue is fit for review, the Supreme Court has held that where "the issue tendered is purely a legal one," the issue is "appropriate for judicial resolution." *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  Here, it is undisputed that the question of whether the PHONES Subordination requires the PHONES Noteholders to turn over payments from Tribune's estate to the holders of Senior Indebtedness in respect of post-petition interest is "purely a legal one" that turns solely on the language of the PHONES Subordination and applicable bankruptcy law.  Whether the Litigation Trust will be able to recover sufficient value to pay Senior Indebtedness in full, such that the priority of post-petition interest becomes an issue, has no bearing whatsoever on the question of whether the payment of such post-petition interest ranks senior in priority to the payment of pre-petition principal and pre-petition accrued interest on the PHONES Notes.

4.      Second, the parties, including the Senior Note Trustees, have already stipulated, and the Court has ordered, that this issue is an Allocation Dispute that will be briefed and argued in connection with the Allocation Disputes Hearing (as defined in the Scheduling Order). *See* Allocation Disputes Scheduling Order 2.a(v).  Issue has been joined and the parties have taken

{00609961;v1 }

concrete, adverse positions. Thus, there is no question that there is an "actual dispute."

Moreover, adjudicating this issue now will avoid potential hardship to the parties down

the road, and further judicial economy, by alleviating the need for this issue to be

litigated more than once, and enabling the parties and the Court to resolve and determine

all issues arising from the PHONES Subordination in one proceeding. Adjudication of

this issue in connection with the Allocation Disputes Hearing will also provide greater

certainty to the beneficiaries of the Litigation Trust with respect to the recoveries to

which they are entitled, and inform any settlement negotiations of the Litigation Trust's

claims that may occur.

     5.     Third, in similar circumstances, courts have consistently rejected the

argument that the determination of the priority of entitlement to proceeds was not ripe for

adjudication because it was not yet known whether such proceeds would actually be

recovered. *See Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. U.S.*

*Dep't of the Treas. (In re Motors Liquidation Co.)*, 460 B.R. 603, 617-618 (Bankr.

S.D.N.Y. 2011) (holding that the issue of whether the debtors' DIP lenders were entitled

to proceeds that might result from an adversary proceeding being pursued by the

creditors' committee was ripe for adjudication); *Henderson v. Powermate Holding Corp.*

*(In re Powermate Holding Corp.)*, 394 B.R. 765, 770 (Bankr. D. Del. 2008) (holding that

the issue of whether damages that were being pursued by a discharged employee would

be entitled to administrative expense status was ripe for review, notwithstanding that it

was not yet known whether the employee was entitled to damages); *SEC v. Credit*

*Bancorp, Ltd.*, 138 F. Supp. 2d 512, 515, 529, 530 (S.D.N.Y. 2001) (rev'd on other

grounds by *SEC v. Credit Bancorp, Ltd.*, 297 F.3d 127 (2d Cir. 2002)) (holding that the

{00609961;v1 }

issue of whether the defrauded customers of a defunct investment vehicle were senior in entitlement to the IRS with respect to recoveries being pursued by a receiver was ripe for review with respect to the assets for which the determination of priority was "primarily legal in nature"); *In re Lynn-Weaver*, 462 B.R. 310, 314 (Bankr. D. Mass. 2011) (holding that the issue of whether the debtor's creditors were entitled to proceeds that might be recovered from an adversary proceeding being pursued by the debtor was ripe for adjudication). Under the holdings of the applicable case law, the Allocation Dispute regarding the priority of post-petition interest on Senior Indebtedness under the PHONES Indenture is certainly ripe for adjudication.

6.      The Senior Note Trustees' argument on the merits of the issue, that the PHONES Indenture provides for the subordination of the PHONES Notes to the payment of post-petition interest on Senior Indebtedness, must also be rejected.[6] The Senior Note Trustees do not dispute that the issue turns on the language of the PHONES Indenture, or that post-petition interest on unsecured claims cannot be allowed against a debtor unless the debtor is solvent. Instead, without citing the language of the PHONES Subordination, the Senior Note Trustees argue that (i) the PHONES Subordination defines "Senior Indebtedness" to "mean *all* obligations, indebtedness and other indebtedness," (ii) "[p]ost-petition interest is as much an 'obligation,' 'indebtedness,' or 'other liability' as is any other debt," and (iii) "the fact that such a claim for post-petition interest may not be allowed as a claim against the estate" has no bearing on whether it "remains an obligation of Tribune." Sr. Ind. Br. at 37-38. Citing *Bank of New England* and

---

[6] Oaktree Capital Management, L.P. ("Oaktree"), as the holder of the Swap Claim, also took a position in its Opening Brief Regarding Allocation Disputes ("Oaktree Op. Br.") on the merits of the Allocation Dispute regarding the priority of post-petition interest on Senior Indebtedness under the PHONES Indenture. Yet Oaktree simply cites the language of Section 14.01(2) of the PHONES Indenture, that the "PHONES Notes are subordinated to all postpetition interest on the Swap Claim 'to the extent allowed or permitted to the holder of such Indebtedness' in these bankruptcy cases." Oaktree Op. Br. at 27. Oaktree does not articulate how this language affords post-petition interest on Senior Indebtedness priority under the PHONES Subordination. To the extent Oaktree interprets the PHONES Subordination to command a result other than as set forth in this Section I, Aurelius disputes such assertion on the grounds detailed herein.

5

*Southeast Banking*, the Senior Note Trustees assert further that because the Rule of Explicitness likely applies only to the extent that it is incorporated by operation of state law, "it is irrelevant that [the PHONES Subordination does not] explicitly provide for post-petition interest in the current scenario." Sr. Ind. Br. at 38.

7.       The Senior Note Trustees ignore, however, that the PHONES Indenture *does* explicitly address the circumstances under which post-petition interest on Senior Indebtedness will be afforded senior status.  Specifically, the PHONES Indenture defines "Senior Indebtedness" to include post petition interest thereon *"only to the extent"* such post petition interest is ***"allowed or permitted to the holder of [Senior] Indebtedness of the Company against the bankruptcy or any other insolvency estate of the Company in such proceeding*)." PHONES Indenture § 14.01(2) (emphasis supplied).  Thus, as set forth in greater detail in Aurelius's Opening Brief, pursuant to the plain and explicit language of the PHONES Indenture, the holders of Senior Indebtedness are not entitled to receive post-petition interest on their Claims from recoveries otherwise allocable to the PHONES Noteholders, unless and until such post-petition interest is allowed or permitted against Tribune (which, as a matter of law, can happen only if all non-LBO Claims against Tribune, including those of the PHONES Noteholders, are paid in full (exclusive of post-petition interest)).  The Senior Note Trustees' argument to the contrary is directly at odds with the explicit and unambiguous language of the PHONES Subordination.

**II.       The Claims Held By The Tendering PHONES Noteholders Should Be Limited To The Amount Of The Exchange Payments, Resulting In Allowance Of The PHONES Note Claims In The Low PHONES Amount**

8.       The Claims held by the Tendering PHONES Noteholders should be limited to the amount of the Exchange Payments, and the Court should therefore allow

6

the PHONES Notes Claims only in the Low PHONES Amount ($759,252,932).[7] The arguments made by Wilmington Trust Company, in its capacity as the successor indenture trustee for the PHONES Notes ("Wilmington Trust"), that the Claims of the Tendering PHONES Noteholders should be allowed as if the Tendered PHONES Notes were never tendered for exchange, which results in allowance of the PHONES Notes Claims in the High PHONES Amount ($1,183,833,767), are unavailing. *See* Opening Brief of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES Notes, on the Allocation Disputes ("WTC Br.") ¶¶ 42-53.

9.      Wilmington Trust premises its argument primarily on its assertions that (i) DTC "mistakenly" reduced the balance of the outstanding PHONES Notes by the amount of the Tendered PHONES Notes prior to Tribune's payment of the Exchange Payments, and (ii) as a result, DBTCA "could not fulfill its contractual obligation to . . . cancel the PHONES [Notes] only upon the Exchange Payment Date." WTC Op. Br. ¶ 43. These assertions miss the mark.

10.     To begin with, the question of whether the Tendered PHONES Notes continued to be outstanding following their undisputed tender is determined by the language of the governing documents — not whether DTC did or did not reduce the outstanding balance of the PHONES Notes in its records. The PHONES Indenture is clear that the outstanding balance of the PHONES Notes was reduced by the amount of the Tendered PHONES Notes once the Tendered PHONES Notes were delivered to DBTCA for exchange and ultimate cancellation. Specifically, the PHONES Indenture expressly carves out from its definition of "Outstanding" PHONES Notes that are "delivered to the Trustee or any Authenticating Agent for cancellation." WTC 0000012 (PHONES Indenture §1.01). While Wilmington Trust argues that the Tendered

---

[7] The amounts listed in this section do not include unpaid interest that may have accrued prior to the Petition Date.

PHONES Notes should not have been cancelled prior to payment of the Exchange

Payments, there is no dispute that the Tendered PHONES Notes were "delivered to the

Trustee for cancellation." *See* PHONES Stip. ¶¶ 24-26. Thus, Wilmington Trust's

repeated assertions that the Tendered PHONES Notes should have continued to be

outstanding until Tribune made the Exchange Payments (*see* WTC Br. ¶¶ 47, 52) is

explicitly belied by the language of the PHONES Indenture.

11.    Additionally, DTC's reduction of the outstanding PHONES Notes in its

records is entirely consistent with the governing documents. Specifically, the Exchange

Procedures set forth in the Exchange Notice provide that once a PHONES Noteholder

accepts the exchange offer set forth in the Global Note (the "Exchange Offer") by

"send[ing] [the] Trustee an Exchange Notice and submit[ting] the PHONES to be

exchanged through the DWAC System for withdrawal by the Trustee," the Trustee "will

accept [the] DWAC and take possession of the PHONES tendered for Exchange . . .".

WTC000091.[8] All of these actions were set to occur on the same day, denominated as the

"Exchange Date" in the Exchange Notice. *See id.* In an email from counsel for Tribune to

DBTCA that was sent prior to those parties' agreement to the form of the Exchange

Notice, counsel for Tribune requested "additional clarity on what 'accept DWAC' means

in order to complete the form." DBTCA responded that:

> [w]hen we accept the DWAC it means that we match with the instructions the
> holder has put up. Accepting the DWAC will remove the bonds from DTC's
> records and move them to ours. The way the language currently reads is accurate.

TRB0573513 (Email chain between J. Langdon of Sidley Austin and D. Contino of

DBTCA, *et al.* dated September 17, 2008).[9]

---

[8] A true and correct copy of the form Exchange Notice is attached hereto as Exhibit B.

[9] A true and correct copy of this email chain is attached hereto as Exhibit C.

{00609961;v1 }

12.     Thus, Wilmington Trust's assertion that "there was an unauthorized and mistaken reduction in the balance of PHONES that were outstanding on the books and records of DTC while exchange was pending — in direct contravention of the terms of the Revised Exchange Notice" is without merit. WTC Op. Br. ¶ 43. To the contrary — DTC's removal of the Tendered PHONES Notes from its records was in complete accord with the Exchange Notice's requirement that the Trustee "accept the DWAC" on the Exchange Date, and the parties' understanding of the way in which such acceptance would work.

13.     Moreover, the fact that the Exchange Notice and Global Note provide that the PHONES Notes delivered for exchange should not be "cancelled" until the Exchange Payments are made (without delineating how such "cancellation" of the uncertificated PHONES Notes is to be effected), has no bearing on how the Claims of the Tendering PHONES Noteholders should be calculated. Rather, as set forth in the Aurelius Opening Brief, the relevant inquiry is the amount that the Tendering PHONES Noteholders were entitled to as of the Petition Date. *See* Aur. Op. Br. ¶ 10 (citing cases standing for the proposition that a creditors' rights against a debtor are fixed as of the petition date). Here, as of the Petition Date, the Tendering PHONES Noteholders had completed all of the steps necessary to accept the Exchange Offer. Thus, both the Tendering PHONES Noteholders and Tribune were contractually bound to exchange the Tendered PHONES Notes, and the Tendering PHONES Noteholders were contractually entitled to receive from Tribune the amount of the Exchange Payments. *See* Aur. Op. Br. ¶¶ 10-11 (citing cases standing for the proposition that the acceptance of an option binds both the optionee and the optionor).

14.     Any effort by Wilmington Trust to unwind the binding agreements that were created when the Tendering PHONES Noteholders accepted the Exchange Offer should be

rejected.  The remedy of rescission is available only when a party acts promptly to

institute a proceeding seeking rescission.  *See Guy v. Duff & Phelps, Inc.*, 628 F. Supp.

252, 261-62 (N.D. Ill. 1985) (finding plaintiff waived right to rescission by waiting over

one year to bring action); *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 933

N.E.2d 860, 864  (Ill. App. Ct. 2010) ("The right to rescind a contract must be exercised

promptly on discovery of facts that confer the right to rescind, otherwise the right is

waived."); *Schwartz v. Schaub*, 826 F. Supp. 274, 278 (N.D. Ill. 1993) ("[I]t is not

enough under Illinois law simply to say that you are ready to bring suit for rescission—

instead you must act on that kind of statement and do it promptly"); *Schoenbrod v.

Rosenthal*, 183 N.E.2d 188, 192-93 (Ill. App. Ct. 1962); *Lichter v. Goss*, 232 F.2d 715

(7th Cir. 1956).  Neither Wilmington Trust nor any of the Tendering PHONES

Noteholders have instituted an action seeking to rescind their agreement to tender the

PHONES Notes during the more than three years that this case has been pending.

15.     Nor would such an action have been successful.  Under Illinois law, a

party is entitled to rescission only upon a showing of fraud, impossibility, mutual mistake

or material breach.  *See Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702,

712 (N.D. Ill. 2007); *see also YPI 180 N. LaSalle Owner, LLC*, 933 N.E.2d 860.  Because

the imposition of the automatic stay prohibits a debtor from making payments on its pre-

petition obligations and freezes a creditor's rights as of the petition date, courts look to

the state of the contract prior to the date on which the debtor filed for bankruptcy when

assessing whether these elements exist.  *See Henderson v. Stein & Day Inc. (In re Stein &

Day Inc.)*, 80 B.R. 297, 300 n.1 (Bankr. S.D.N.Y. 1987); *see also In re Henry*, No. 11-

60118-13, 2011 WL 1402767, at *9 (Bankr. D. Mont. Apr. 13, 2011).  None of the

{00609961;v1 }

factors warranting rescission are present here, and neither Wilmington Trust nor the Tendering

PHONES Noteholders have alleged to the contrary.  Indeed, Tribune did not breach any of its

obligations to make the Exchange Payments prior to the Petition Date, as all of the Exchange

Payments came due subsequent to December 8, 2008.  *See* WTC0000115.[10]

16.     Thus, any argument for rescission or revocation would have to be based solely on

non-payment of the Exchange Payments by virtue of Tribune's bankruptcy petition.  With

limited exceptions expressly provided for by the Bankruptcy Code that are not applicable here,

however, the mere filing of a bankruptcy petition does not grant creditors rights to unwind their

contracts with a debtor that the creditors did not possess pre-petition.  *See, e.g.,* 11 U.S.C. §

546(c).  Such a result would wreak havoc on the bankruptcy process, which is designed to afford

equality among creditors of the same priority, and protections to debtors to foster their

rehabilitation and emergence from bankruptcy as a going concern.

17.     Wilmington Trust's reliance on Section 3.06 of the PHONES Indenture, and a

similar provision in the Illinois Uniform Commercial Code (the "Illinois UCC"), is misplaced.

WTC Op. Br. ¶¶ 46-48.  Section 3.06 of the PHONES Indenture provides, in relevant part, that

"if any mutilated [PHONES Note] is surrendered to [Tribune] or to the Trustee," or "[i]f there

shall be delivered to [Tribune] and the Trustee . . . evidence to their satisfaction of the

destruction, loss or theft of any [PHONES Note]," then such PHONES Note should be replaced

with a new security "of the same series and of like tenor and principal amount." *See*

---

[10] WTC0000115 is a listing prepared by DBTCA showing, for each of the exchanges made during the
period 9/12/2008 through 12/8/2008, (i) the date on which the tender was made, (ii) the holder making the tender,
(iii) the number of shares tendered, (iv) whether the shares were approved by the DWAC System, (v) whether an
officer's certificate was issued, (vi) the Exchange Payment Date, (vii) the amount of the Exchange Payments, and
(viii) whether the holder was paid. *See* PHONES Stip. ¶¶ 20-21.  A true and correct copy of WTC0000115 is
attached hereto as Exhibit D.

{00609961;v1 }

WTC0000030 (PHONES Indenture §3.06).[11]   Article 8-405 of the Illinois UCC provides

for similar treatment with respect to a "Lost, Destroyed, or Wrongfully Taken Security

Certificate." 810 Ill. Comp. Stat. 5/8-405.[12]   By its plain language, Section 3.06, which

contemplates the "surrender" of a mutilated PHONES Note, and the "deliver[y]" of a

replacement PHONES Note, appears to address instances in which a *certificated*

PHONES Note is "lost, destroyed or wrongfully taken." WTC0000030 (PHONES

Indenture §3.06).  And Article 8-405 of the Illinois UCC provides expressly that it

---

[11] The full text of Section 3.06 states as follows:

If any mutilated Security is surrendered to the Company or to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any Security and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and upon the Company's request the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of that series duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

[12] The full text of Article 8-405 of the Illinois UCC states as follows:

Sec. 8-405. Replacement of lost, destroyed, or wrongfully taken security certificate.

(a) If an owner of a certificated security, whether in registered or bearer form, claims that the certificate has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner:

(1) so requests before the issuer has notice that the certificate has been acquired by a protected purchaser;

(2) files with the issuer a sufficient indemnity bond; and

(3) satisfies other reasonable requirements imposed by the issuer.

(b) If, after the issue of a new security certificate, a protected purchaser of the original certificate presents it for registration of transfer, the issuer shall register the transfer unless an overissue would result. In that case, the issuer's liability is governed by Section 8-210. In addition to any rights on the indemnity bond, an issuer may recover the new certificate from a person to whom it was issued or any person taking under that person, except a protected purchaser.

applies only to a "*certificated* security." 810 Ill. Comp. Stat. 5/8-405 ("If an owner of a

*certificated* security, whether in registered or bearer form, claims that the certificate has been

been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner . .

owner . . .") (emphasis supplied).  Wilmington Trust cites no legal precedent suggesting that

that these provisions apply here, where the amount of outstanding PHONES Notes listed in

in DTC's records was reduced by virtue of the Tendering PHONES Noteholders' election to

to accept the Exchange Offer.

18.    Finally, Wilmington Trust's assertion that "Tribune's other creditors, including

Aurelius . . . would be unjustly enriched if the amount of the PHONES Notes Claim was allowed

at the Low Amount" (WTC Op. Br. ¶ 49) is equally specious.  Once again, Wilmington Trust

fails to cite any cases showing the elements of unjust enrichment, or how such elements would

be satisfied here if the PHONES Notes Claims were allowed in the Low PHONES Amount.

This is not surprising, as there is nothing "unjust" about affording the Tendering PHONES

Noteholders the treatment that they sought of their own accord pre-petition.  To the contrary, the

Tendering PHONES Noteholders assumed the risk that Tribune would file for bankruptcy when

they attempted to mitigate that risk by tendering their subordinated PHONES Notes for cash.

Pursuant to the PHONES Indenture and applicable law, and consistent with principles of equity,

the Tendering PHONES Noteholders are bound by that decision.

### III.    The Low PHONES Amount Should Be $759,252,932[13]

19.    Wilmington Trust's assertion that the Low PHONES Amount should be

$818,808,727, rather than $759,252,932, should also be rejected.  Wilmington Trust arrives at

---

[13] The amounts listed in this section do not include unpaid interest that may have accrued prior to the
Petition Date.

13

this amount by excluding from its calculation of the Tendered PHONES Notes 434,474

PHONES Notes that were apparently rejected from the DWAC System, and thus were

included in the amount by which DTC reduced the number of outstanding PHONES

records.  WTC Op. Br. ¶ 53.  Yet, like the other Tendered PHONES Notes, these

Tendered PHONES Notes were the subject of completed Exchange Notices that were

delivered to DBTCA, and were submitted for exchange through the DWAC System.

PHONES Stip. ¶¶ 24-26.  Accordingly, the holders of these Tendered PHONES Notes

completed all of the steps necessary to accept the Exchange Offer and, pursuant to the

PHONES Indenture and applicable law, are bound by that acceptance in the same manner

as the other Tendering PHONES Noteholders.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons and those set forth in the

Aurelius Opening Brief, Aurelius respectfully requests that this Court issue an order

holding that: (i) the PHONES Noteholders are not subordinated to post-petition interest

on Senior Indebtedness unless and until Claims for post-petition interest on such Senior

Indebtedness are allowed or permitted against Tribune (which, as a matter of law, cannot

happen unless all allowed non-LBO Claims against Tribune, including the PHONES

Notes Claims, are paid in full (excluding post-petition interest)); (ii) the Claims of the

Tendering PHONES Noteholders shall be allowed in the amount of the Exchange

Payments, which results in the PHONES Notes Claims being allowed in the Low

PHONES Amount; and (iii) the Low PHONES Amount is $759,252,932.

{00609961;v1 }

Dated:  March 2, 2012

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
David M. Zensky
Philip C. Dublin
Deborah Newman
One Bryant Park
New York, NY  10036
212-872-1000

ASHBY & GEDDES, P.A.

*/s/ William P. Bowden*
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE  19899
302- 654-1888

*Counsel for Aurelius Capital Management, LP*

15