# Exhibit A

**TRIBUNE COMPANY,**

Issuer

and

**BANK OF MONTREAL TRUST COMPANY,**

Trustee

---

**INDENTURE**

Dated as of April 1, 1999

---

**SUBORDINATED DEBT SECURITIES**

WTC 0000001

Highly Confidential

# ADH Exhibit 2

the Depository or pursuant to the Depository's instruction, all in accordance with this Indenture and pursuant to a Company Order, which shall be registered as to principal and interest in the name of the Depository or its nominee.

"Holder" means the Person or Persons in whose name or names a particular Security is registered in the Security Register.

"Indebtedness" has the meaning specified in Section 14.01.

"Indenture" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and shall include the terms of particular series of Securities established as contemplated by Section 3.01.

"Net Worth" means the aggregate amount of stockholders' investment as determined in accordance with generally accepted accounting principles.

"Officers' Certificate" means a certificate signed by the Chairman of the Board, the President, or a Vice President, and by the Treasurer, an Assistant Treasurer, the Controller, an Assistant Controller, the Secretary or an Assistant Secretary, of the Company, and delivered to the Trustee.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for the Company, and who shall be reasonably acceptable to the Trustee.

"Original Issue Discount Security" means any Security which provides for an amount less than the principal amount thereof to be due and payable upon the declaration of acceleration of the maturity thereof pursuant to Section 5.02.

"Outstanding", when used with respect to Securities or any series of Securities, means, as of the date of determination, all Securities or all Securities of such series, as the case may be, theretofore authenticated and delivered under this Indenture, except:

(1)     Securities theretofore cancelled by the Trustee or any Authenticating Agent or delivered to the Trustee or any Authenticating Agent for cancellation;

(2)     Securities, or portions thereof, for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the Company) in trust or set aside and segregated in trust by the Company (if the Company shall act as its own Paying Agent) for the Holders of such Securities; provided that, if such Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made;

-4-

**WTC 0000012**

**Highly Confidential**

(3)    Securities which have been paid pursuant to Section 3.06 or in exchange for or in lieu of which other Securities have been authenticated and delivered pursuant to this Indenture, other than any such Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Securities are held by a bona fide purchaser in whose hands such Securities are valid obligations of the Company; and

(4)    Securities which have been Discharged pursuant to Section 13.02;

provided, however, that in determining whether the Holders of the requisite principal amount of the Outstanding Securities have given any request, demand, authorization, direction, notice, consent or waiver hereunder, (i) the principal amount of an Original Issue Discount Security which shall be deemed to be Outstanding for such purposes shall be the portion of the principal amount thereof that could be declared to be due and payable upon the occurrence of an Event of Default and the continuation thereof pursuant to the terms of such Original Issue Discount Security as of such time and (ii) Securities owned by the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Securities which the Trustee knows to be so owned shall be so disregarded. Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledgee is not the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor.

"Paying Agent" means any Person authorized by the Company to pay the principal of (and premium, if any), interest or other amounts on any Securities on behalf of the Company.

"Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Predecessor Security" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security, and, for the purposes of this definition, any Security authenticated and delivered under Section 3.06 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed to evidence the same debt as the mutilated, destroyed, lost or stolen Security.

"principal" of a Security on any day and for any purpose means the amount (including without limitation, in the case of an Original Issue Discount Security, any accrued original issue discount, but excluding interest) that is payable with respect to such Security as of such date and for such purpose (including without limitation, in connection with any sinking fund, upon any redemption at the option of the Company upon any purchase or exchange at the option of the Company or the holder of such Security and upon the acceleration of the maturity of such Security).

**WTC 0000013**

**Highly Confidential**

and the Trustee shall authenticate and make available for delivery, the Securities which the Holder making the exchange is entitled to receive.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Company or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Company or any registrar with respect to such series of Securities, duly executed by the Holder thereof or his attorney duly authorized in writing.

No service charge shall be made for any registration of transfer or exchange of Securities, but the Company or the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Section 3.04, 9.06 or 11.07 not involving any transfer.

The Company shall not be required (i) to issue, register the transfer of or exchange Securities of any series during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of Securities of that series selected for redemption under Section 11.03 and ending at the close of business on the day of such mailing, or (ii) to register the transfer of or exchange any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

None of the Company, the Trustee, any Paying Agent or the Securities Registrar will have any responsibility or liability for any aspect of the Depository's records relating to or payment made on account of beneficial ownership interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

SECTION 3.06.    Mutilated, Destroyed, Lost and Stolen Securities.

If any mutilated Security is surrendered to the Company or to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any Security and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and upon the Company's request the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new Security of

-22-

WTC 0000030

Highly Confidential

the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of that series duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

SECTION 3.07.    Payment of Interest; Interest Rights Preserved.

Interest on any Security which is payable, and is punctually paid or duly provided for, on any interest payment date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the record date (as hereinafter defined) for such interest notwithstanding the cancellation of such Security upon the registration of transfer or exchange subsequent to the record date and prior to such interest payment date; provided, however, that if and to the extent that the Company shall default in the payment of the interest due on such interest payment date, such defaulted interest shall be paid to the Persons in whose names outstanding Securities are registered at the close of business on a subsequent record date established by notice given by mail by and on behalf of the Company to the Holders of Securities not less than fifteen days preceding such subsequent record date, such record date to be not less than ten days preceding the date of payment of such defaulted interest. The term "record date" as used in this Section 3.07 with respect to any regular interest payment date shall mean such day preceding such interest payment date as may have been established as the record date with respect to an interest payment date for Securities of such series in a Board Resolution in accordance with Section 3.01 hereof. The Company may also make payment of any defaulted interest in any other lawful manner not inconsistent with the requirements of any securities exchange in which the Securities may be listed, and upon such notice as may be required by such exchange if, after notice given by the Company to the Trustee of the proposed payment pursuant to this sentence, such manner of payment shall be deemed practicable by the Trustee.

-23-

WTC 0000031

Highly Confidential

SECTION 13.03.        Deposited Moneys and U.S. Government Obligations to Be Held in Trust.

All moneys and U.S. Government Obligations deposited with the Trustee pursuant to Section 13.02 in respect of Securities of a series shall be held in trust and applied by it, in accordance with the provisions of such Securities and this Indenture, to the payment, either directly or through any Paying Agent (including the Company acting as its own Paying Agent) as the Trustee may determine, to the Holders of such Securities, of all sums due and to become due thereon for principal (premium, if any) and interest, if any, but such money need not be segregated from other funds except to the extent required by law.

SECTION 13.04.      Repayment to Company.

The Trustee and any Paying Agent shall promptly pay or return to the Company upon Company Request any money or U.S. Government Obligations held by them at any time that are not required for the payment of the principal of (premium, if any) and interest on the Securities of any series for which money or U.S. Government Obligations have been deposited pursuant to Section 13.02.

The provisions of the last paragraph of Section 10.03 shall apply to any money held by the Trustee or any Paying Agent under this Article that remains unclaimed for one year after the maturity of any series of Securities for which money or U.S. Government obligations have been deposited pursuant to Section 13.02.

ARTICLE XIV

SUBORDINATION

SECTION 14.01.      Securities Subordinate to Senior Indebtedness.

The Securities shall be subordinated to Senior Indebtedness as set forth in this Article Fourteen. The Company covenants and agrees, and each Holder of a Security of any series by such Holder's acceptance thereof likewise covenants and agrees, that, to the extent and in the manner hereinafter set forth in this Article Fourteen, the indebtedness represented by the Securities of such series and the payment of the principal amount, interest and such other amounts as provided for in Section 3.01, if any, in respect of each and all of the Securities of such series are hereby expressly made subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness; provided, however, that no provision of this Article Fourteen shall prevent the occurrence of any default or Event of Default hereunder.

For purposes of this Article Fourteen, the following terms shall have the following meanings:

-61-

**WTC 0000069**

**Highly Confidential**

(1)    "Indebtedness," as applied to a Person, means, as of the date on which Indebtedness is to be determined and without duplication (i) all obligations represented by notes, bonds, debentures or similar evidences of indebtedness; (ii) all indebtedness for borrowed money or for the deferred purchase price of property or services other than, in the case of any such deferred purchase price, on normal trade terms; (iii) all rental obligations as lessee under leases which shall have been or should be, in accordance with generally accepted accounting principles, recorded as capital leases; and (iv) all Indebtedness of others for the payment of which such Person is responsible or liable as obligor or guarantor.

(2)    "Senior Indebtedness" means the principal of (and premium, if any) and interest on (including interest accruing after the filing of a petition initiating any proceeding pursuant to any Federal bankruptcy law or any other applicable Federal or State law, but only to the extent allowed or permitted to the holder of such Indebtedness of the Company against the bankruptcy or any other insolvency estate of the Company in such proceeding) and other amounts due on or in connection with any Indebtedness of the Company incurred, assumed or guaranteed by the Company, whether outstanding on the date of this Indenture or hereafter incurred, assumed or guaranteed and all renewals, extensions and refundings of any such Indebtedness of the Company; provided, however, that the following will not constitute Senior Indebtedness:

(A)    any Indebtedness of the Company as to which, in the instrument creating the same or evidencing the same or pursuant to which the same is outstanding, it is expressly provided that such Indebtedness of the Company shall be subordinated to or pari passu with the Securities;

(B)    Indebtedness of the Company in respect of the Securities;

(C)    any Indebtedness of the Company constituting trade accounts payable arising in the ordinary course of business; and

(D)    any Indebtedness of the Company to any Subsidiary of the Company.

SECTION 14.02.    Payment Over of Proceeds upon Dissolution, Etc.

Upon any distribution of assets of the Company in the event of:

(1)    any insolvency or bankruptcy case or proceeding, or any receivership, liquidation, reorganization or other similar case or proceeding in connection therewith, relative to the Company or to its creditors, as such, or to its assets; or

(2)    any liquidation, dissolution or other winding up of the Company, whether voluntary or involuntary and whether or not involving insolvency or bankruptcy; or

-62-

Highly Confidential

WTC 0000070

# Exhibit B

## EXCHANGE NOTICE

Deutsche Bank Trust Company Americas
60 Wall Street, 27th Floor, Mailstop: NYC 60-2710
New York, New York 10005
Attention: Trust and Securities Services

      Re:   Tribune Company – Exchangeable Subordinated Debentures due 2029 (the
          "PHONES") CUSIP: 896047305

Ladies and Gentleman:

      1. By delivering this Exchange Notice the undersigned hereby acknowledges and agrees
that the undersigned has read the Exchange Procedures attached hereto which, to the extent such
Exchange Procedures modify the procedures contained in the PHONES, shall supersede and
replace the procedures set forth in the PHONES.

      2. Please accept this letter as authorization to exchange the number of PHONES
provided below for an amount of cash equal to the percentage of the exchange market value of
the reference shares attributable to the PHONES (the "Exchange"). Complete information
related to the PHONES to be exchanged is provided below.

Number of PHONES to be Exchanged:             _____

Brokerage Firm:                          _____

Broker Name:                            _____

DTC Participant Number:              _____

Wire Instructions:                      _____

                                       _____

                                       _____

                                       _____

                                       _____

Tax ID Number                            _____

      3. A withdrawal has been submitted to The Depository Trust Company
Deposit/Withdrawal At Custodian System (the "DWAC System") and Deutsche Bank Trust
Company Americas, as trustee under the indenture relating to the PHONES (the "Trustee"), is
hereby authorized to withdraw the PHONES listed above as of the date hereof pending exchange
of such PHONES and the Trustee is hereby instructed to cancel the PHONES listed above upon
consummation of the Exchange.

CHI 4407722v.3

WTC0000089

**ADH Exhibit 94**

**WTC0000090**

Regards,

[Name]

2

**WTC0000091**

## EXCHANGE PROCEDURES

Duetsche Bank Trust Company Americas, the Company and each holder of PHONES tendering PHONES for exchange pursuant to an Exchange Notice have agreed to the following modifications to the exchange procedures set forth in the PHONES (capitalized terms used and not defined herein shall have the meanings assigned thereto in the PHONES):

- Holder will send Trustee an Exchange Notice and submit the PHONES to be exchanged through the DWAC System for withdrawal by the Trustee; Trustee will accept DWAC and take possession of the PHONES tendered for Exchange (such date, the "Exchange Date")

- Trustee will notify the Company of Exchange by delivering the Exchange Notice and acknowledging that the Trustee has taken possession of the PHONES tendered for Exchange by 12:00 pm on the Business Day following the Exchange Date

- Company will pay amounts owed to tendering Holder(s) on the Exchange Payment Date directly to the Holder(s)

The following exchange procedures are as set forth in the PHONES and are included herein for ease of reference:

- If Exchange Notices relating to more than 500,000 PHONES have been delivered on any Exchange Date, the Trustee shall notify the Company by 6:00 pm New York City time on the Exchange Date and the Company will give notice of such fact by issuing a press release prior to 9:00 am New York City time on the next Trading Day, to be provided to DTC for dissemination and by providing such notice to the Trustee

- Company will deliver an Officers' Certificate to Trustee no later than 1 Business Day after the Trading Day following the Exchange Date; provided, however, if Exchange Notices relating to more than 500,000 PHONES have been delivered on any Exchange Date, the Company will deliver an Officers' Certificate no later than 1 Business Day after the 5th Trading Day following the Exchange Date

- The Officers' Certificate shall set forth the amount to be paid to the tendering Holder(s) and the Exchange Payment Date

- Based on the Officers' Certificate, Trustee will provide the Exchange Payment Date and amount to the Holder(s)

On the Exchange Payment Date (no later than 10 Trading Days following Exchange Date):

- Trustee will cancel the tendered PHONES in the Trustee's possession

3

WTC0000091

# Exhibit C

| | |
|---|---|
| **From:** | David Contino <david.contino@db.com> |
| **Sent:** | Wednesday, September 17, 2008 5:39 PM (GMT) |
| **To:** | jlangdon@Sidley.com |
| **Cc:** | Eldersveld, David <DEldersveld@Tribune.com>; Rodden, Jack <JRodden@tribune.com>; Blatchford, Kevin F. <kblatchford@sidley.com> |
| **Subject:** | RE: FW: PHONES: Exchange Notice; Exchange Instructions |

James,

When we accept the DWAC it means that we match with the instructions the holder has put up.  Accepting the DWAC will remove the bonds from DTC's records and move them to ours.  The way the language currently reads is accurate.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH:  (908) 608-3183
Fax: (732) 578-4635
E-mail:   david.contino@db.com
http://www.tss.db.com

"Langdon, James" <jlangdon@Sidley.com>

09/17/2008 12:27 PM

To David Contino/db/dbcom@DBAmericas, <JRodden@tribune.com>
cc "Eldersveld, David" <DEldersveld@Tribune.com>, "Blatchford, Kevin F." <kblatchford@sidley.com>
Subject RE: FW: PHONES:  Exchange Notice; Exchange Instructions

All -

Attached are clean and marked revised drafts of the exchange notice and exchange instructions to clarify the payment procedure.

David - please note the bracketed/footnoted item in both documents.  We need some additional clarity on what "accept DWAC" means in order to complete the forms.

Thanks,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0573513

# ADH Exhibit 98

*email:* jlangdon@sidley.com

---

**From:** David Contino [mailto:david.contino@db.com]
**Sent:** Wednesday, September 17, 2008 10:19 AM
**To:** JRodden@tribune.com
**Cc:** Eldersveld, David; Langdon, James
**Subject:** Re: FW: PHONES: Exchange Notice; Exchange Instructions

Jack,

I have one comment to the procedure.  On the day of the exchange payment date Tribune should send payment to the holders directly.  The original language states that the company will deposit funds with the trustee.  However that procedure coincides with the use of DTC's ATOP system.  We can't make payments to the holders under the DWAC system.

Jack and I discussed this and we are in agreement that Tribune will send payments directly to the holders.

I'm available this afternoon to discuss this further.

Regards,

David Contino, CCTS
Vice President

Deutsche Bank National Trust Company
Global Transaction Banking
Trust & Securities Services
25 DeForest Avenue
Mail Stop: SUM01-0105
Summit, New Jersey 07901

PH:  (908) 608-3183
Fax: (732) 578-4635
E-mail:   david.contino@db.com
http://www.tss.db.com

"Rodden, Jack" <JRodden@tribune.com>

09/16/2008 06:55 PM

To David Contino/db/dbcom@DBAmericas

cc "Langdon, James" <jlangdon@Sidley.com>, "Eldersveld, David" <DEldersveld@Tribune.com>

Subject FW: PHONES: Exchange Notice; Exchange Instructions

David,
Please see the draft exchange notice and instructions.   Please let me know your availability tomorrow for a call to discuss.
Thanks again,

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0573514

Jack

---

**From:** Langdon, James [mailto:jlangdon@Sidley.com]
**Sent:** Tuesday, September 16, 2008 4:49 PM
**To:** Rodden, Jack
**Cc:** Bigelow, Chandler; Eldersveld, David; Blatchford, Kevin F.
**Subject:** PHONES: Exchange Notice; Exchange Instructions

Jack -

Please find attached a revised form of exchange notice and separate PHONES exchange instructions for Deutsche Bank to review and for discussion in advance of the call to be scheduled with Deutsche Bank.

<<PHONES: Form of Exchange Noticev2.DOC>> <<PHONES EXCHANGE.DOC>>

Best,
**James P. Langdon**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
*Tel:* 312.853.7401
*Fax:* 312.853.7036
*email:* jlangdon@sidley.com


-------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.
*****************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or
confidential.

If you are not the intended recipient, please delete the e-mail and any attachments and
notify us

immediately.
*****************************************************************************************
[attachment "PHONES_ Form of Exchange Noticev2.DOC" deleted by David Contino/db/dbcom]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only                                    TRB0573515

[attachment "PHONES EXCHANGE (2).DOC" deleted by David Contino/db/dbcom]

---

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.[attachment "PHONES_ Form of Exchange Noticev2 (2).DOC" deleted by David
Contino/db/dbcom] [attachment "Exchange Notice - Redline.doc" deleted by David Contino/db/dbcom] [attachment
"PHONES EXCHANGE (3).DOC" deleted by David Contino/db/dbcom] [attachment "Redline - Exchange Instructions.doc"
deleted by David Contino/db/dbcom]

---

This e-mail may contain confidential and/or privileged information. If you
are not the intended recipient (or have received this e-mail in error)
please notify the sender immediately and destroy this e-mail. Any
unauthorized copying, disclosure or distribution of the material in this
e-mail is strictly forbidden.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

# Exhibit D

Tribune Company
Indenture dated April 1, 1999
(PHONES) - Exchge Sub. Deb due 2029

| # | Exchange Date | Holder | Number of Shares | DWAC Approved | Received Officers Certificate | Payment Date | Payment Amount | Holder Paid |
|---|---|---|---|---|---|---|---|---|
| 1 | 9/12/2008 | Morgan Stanley | 10 | Yes | | | | |
| 2 | 9/12/2008 | DB Securities | 10 | Yes | | | | |
| 3 | 11/12/2008 | Goldman Sachs | 100 | Yes | Yes | 11/28/2008 | $1,738.50 | Yes |
| 4 | 11/14/2008 | Goldman Sachs | 75,700 | Yes | Yes | 12/1/2008 | $1,248,444.40 | Yes |
| 5 | 11/17/2008 | Goldman Sachs | 5,000 | Yes | Yes | 12/2/2008 | $79,800 | Yes |
| 6 | 11/18/2008 | DB Securities | 305,829 | Yes | Yes | 12/3/2008 | $4,729,951.31 | Yes |
| 7 | 11/26/2008 | Credit Suisse | 5,000 | Yes | Yes | 12/11/2008 | $85,975 | N/A |
| 8 | 12/1/2008 | Citadel | 80,000 | Yes | Yes | 12/15/2008 | $1,368,000 | N/A |
| 9 | 12/1/2008 | Goldman Sachs | 40,000 | Yes | Yes | 12/15/2008 | $684,000 | N/A |
| 10 | 12/1/2008 | Credit Suisse | 167,340 | Yes | Yes | 12/15/2008 | $2,861,514 | N/A |
| 11 | 12/2/2008 | Citadel | 1,200,000 | Yes | N/A - due on 12/10 | N/A | N/A | N/A |
| 12 | 12/2/2008 | DB Securities | 45,000 | Yes | N/A - due on 12/10 | N/A | N/A | N/A |
| 13 | 12/2/2008 | Citigroup | 40,000 | No | N/A - due on 12/10 | N/A | N/A | N/A |
| 14 | 12/3/2008 | Goldman Sachs | 197,237 | No | Yes | 12/17/2008 | $3,552,632.84 | N/A |
| 15 | 12/3/2008 | Citigroup | 29,750 | Yes | Yes | 12/17/2008 | $535,857 | N/A |
| 16 | 12/3/2008 | Citigroup | 18,175 | Yes | Yes | 12/17/2008 | $327,368.10 | N/A |
| 17 | 12/3/2008 | Citigroup | 92,954 | Yes | Yes | 12/17/2008 | $1,659,877.85 | N/A |
| 18 | 12/3/2008 | Citigroup | 36,868 | Yes | Yes | 12/17/2008 | $664,066.42 | N/A |
| 19 | 12/3/2008 | Citigroup | 12,600 | Yes | Yes | 12/17/2008 | $226,951.20 | N/A |
| 20 | 12/8/2008 | DB Securities | 627,090 | Yes | N/A - due on 12/16 | N/A | N/A | N/A |
| 21 | 12/8/2008 | Goldman Sachs | 197,237 | No | N/A - due on 12/16 | N/A | N/A | N/A |
| 22 | 12/8/2008 | Banc Of America | 75,000 | Yes | N/A - due on 12/16 | N/A | N/A | N/A |
| 23 | 12/8/2008 | UBS | 229,590 | Yes | N/A - due on 12/16 | N/A | N/A | N/A |

3,046,116.00

| | |
|---|---|
| Original Units | 8,000,000.00 |
| Less Exchanges | 3,046,116.00 |
| Current Balance | 4,953,884.00 |

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

WTC 0000115

Highly Confidential

ADH Exhibit 91