## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:  March 23, 2012 at 10:00 a.m. ET**<br>**Obj. Deadline: March 16, 2012 at 4:00 p.m. ET** |

## MOTION OF THE DEBTORS FOR AN ORDER ESTABLISHING PROCEDURES FOR COMPLIANCE WITH FEDERAL COMMUNICATIONS COMMISSION FOREIGN OWNERSHIP REQUIREMENTS

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors") hereby move this Court (the "Motion") for

entry of an order, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy

Code"), establishing procedures to comply with foreign ownership requirements of the Federal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Communications Commission (the "FCC"), including establishing deadlines by which the

Certifying Equity Eligible Holders (as defined below) that do not wish to be considered entirely

foreign-owned and foreign-controlled for purposes of allocation of New Common Stock and

New Warrants under the DCL Plan (as defined below) must submit Foreign Ownership

Certifications (as defined below) to Epiq Bankruptcy Solutions, LLC (the "Certification Agent").

The Debtors are proposing that the procedures described herein run parallel with the process for

the limited resolicitation of votes and elections on the DCL Plan (as defined below).  In support

of this Motion, the Debtors respectfully represent as follows:

## STATUS OF CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors, with one

exception, each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  An

additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code on October 12, 2009.  In all, 111 entities are currently Debtors in these

chapter 11 cases.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) (the

"Chapter 11 Cases").  [Docket Nos. 43 and 2333].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee appointed

an official committee of unsecured creditors (the "Creditors' Committee").  No trustee has been

appointed.

5.      On October 31, 2011, the Bankruptcy Court issued a decision (the "Confirmation Decision") denying confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (the "Second Amended Plan") and a competing plan of reorganization filed by Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York, and Wilmington Trust Company [Docket No. 10133]. On December 29, 2011, the Bankruptcy Court issued a decision reconsidering and vacating a portion of the Confirmation Decision [Docket No. 10531].

6.      On November 18, 2011, the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (collectively, the "DCL Plan Proponents") filed the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A., which was amended on February 20, 2012 (as may be further amended, supplemented, or modified, the "DCL Plan") [Docket No. 10958].

7.      On January 24, 2012, the Bankruptcy Court entered a scheduling order regarding confirmation of the Third Amended Plan, pursuant to which, among other things, the Bankruptcy Court set hearings on (1) March 23, 2012, for consideration of (a) the supplemental disclosure document relating to the DCL Plan (the "Supplemental Disclosure Document") and (b) the motion for an order establishing procedures for solicitation of votes on the DCL Plan (the "Solicitation Procedures Motion"), and (2) May 16-17, 2012, for consideration of confirmation

3

of the DCL Plan.[2]  The Scheduling Order also established April 30, 2012, as the Supplemental

Voting Deadline (as defined in the Solicitation Procedures Motion).

        8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought

herein is section 105 of the Bankruptcy Code.

## BACKGROUND

        9.      The Debtors' operations are divided into two primary industry segments,

publishing and broadcasting.  In connection with their broadcasting operations, the Tribune

Entities[3] hold licenses issued by the FCC for 24 full-service radio and television broadcast

stations as well as other satellite and auxiliary broadcast and non-broadcast licenses used in the

business of the Debtors (the "FCC Licenses").  Television and radio broadcast stations may not

operate in the United States without authorization from the FCC, and thus the Debtors' FCC

Licenses are necessary to their successful reorganization.  Without their broadcast licenses, the

Debtors' television and radio broadcasting segments would have to cease operations, causing a

tremendous devaluation of the Debtors' estates.

        10.      The Communications Act grants authority to the FCC to oversee the

issuance, renewal, transfer and assignment of station operating licenses.[4]  Following the Petition

Date, the Debtors filed a series of applications with the FCC to assign their FCC Licenses held

by certain subsidiaries to those same subsidiaries operating as debtors in possession and to reflect

---

[2] See Order Establishing Scheduling for (1) Resolution of the Allocation Disputes and (2) Consideration of the DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion and Plan [Docket No. 10692] (the "Scheduling Order").

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan.

[4] See Communications Act, sections 301 (requirement for license), 307 (renewal of license), 308 and 309 (issuance of licenses) and 310(d) (assignment and transfer of control of licenses).

control of those subsidiaries by Tribune Company ("Tribune") as debtor in possession.[5]  In order

to transfer their FCC Licenses to the Reorganized Debtors on the Effective Date, the Debtors are

required to obtain similar consents from the FCC.  To obtain such consents, on April 28, 2010,

the Debtors filed numerous applications (the "FCC Applications") for consent to assign the FCC

Licenses held by the Debtors to the Reorganized Debtors ("FCC Approval").[6]

11.     On May 13, 2010, the FCC's Media Bureau issued a public notice

announcing that the FCC had accepted all of the FCC Applications for filing upon initial review.

The Debtors anticipate that the FCC will not formally approve the FCC Applications until this

Court confirms a plan of reorganization and authorizes the transactions proposed by the plan,

although the Debtors cannot be certain of when they will receive FCC Approval.  In the FCC

Applications, Tribune has committed to implement procedures that will ensure compliance with

the FCC's foreign ownership requirements.

12.     The Communications Act and FCC policies generally prohibit the grant of

a broadcast license to any corporation directly or indirectly controlled by any other corporation

---

[5] The FCC granted consent for the assignment of the Debtors' FCC licenses from the Debtors to the Debtors as "debtors-in-possession" under chapter 11 of the Bankruptcy Code on January 8, 2009.

[6] The Debtors anticipate filing certain amendments to the FCC Applications in late April or early May following the filing of Exhibit 5.2 to the DCL Plan (which describes the Restructuring Transactions the Debtors may enter into or undertake pursuant to Section 5.2 of the DCL Plan).

46429/0001-8358904v1

of which more than twenty-five percent (25%)[7] of the capital stock is owned or voted by non-U.S. persons or entities.[8]

       13.     Under the terms of the DCL Plan, the following creditors will be entitled to receive New Common Stock in Reorganized Tribune: (i) Holders of Senior Loan Claims and Holders of Senior Guaranty Claims, (ii) Holders of Senior Noteholder Claims that elect to receive the alternative treatment set forth in Section 3.2.5(c)(i) of the DCL Plan (the "Electing Holders of Senior Noteholder Claims"), and (iii) Holders of Other Parent Claims that elect to receive one of the alternative treatments set forth in Sections 3.2.6(c)(ii) and (iii) of the DCL Plan (the "Electing Holders of Other Parent Claims", and together with the Holders of Senior Loan Claims, Holders of Senior Guaranty Claims, and Electing Holders of Senior Noteholder Claims, the "Equity Eligible Holders").

       14.     The DCL Plan requires that each Equity Eligible Holder other than Holders of Other Parent Claims (each a "Certifying Equity Eligible Holder") submit a form certifying the extent of the relevant Holder's direct and indirect ownership or control by non-U.S. persons or entities (the "Foreign Ownership Certification") and report any changes in foreign ownership percentages between the submission of the Foreign Ownership Certification

---

[7] Section 310(b)(4) of the Communications Act limits the aggregate percentage of direct and indirect foreign ownership in Tribune to 25%. To avoid the risk of noncompliance with FCC regulations, the Debtors may allocate New Common Stock and New Warrants to produce a target foreign ownership percentage for Tribune lower than the maximum permitted ceiling.

[8] Section 310(b) of the Communications Act provides that "[n]o broadcast or common carrier or aeronautical en route or aeronautical fixed radio station license shall be granted to or held by--

    (1) any alien or the representative of any alien;
    (2) any corporation organized under the laws of any foreign government;
    (3) any corporation of which more than one-fifth of the capital stock is owned of record or voted by aliens or their representatives or by a foreign government or representative thereof or by any corporation organized under the laws of a foreign country;
(4) any corporation directly or indirectly controlled by any other corporation of which more than one-fourth of the capital stock is owned of record or voted by aliens, their representatives, or by a foreign government or representative thereof, or by any corporation organized under the laws of a foreign country, if the Commission finds that the public interest will be served by the refusal or revocation of such license."

and the Effective Date by providing an amended Foreign Ownership Certification and, upon

request, confirming the absence of any changes.[9]  Under Section 5.4.2(c) of the DCL Plan, the

Reorganized Debtors will issue (i) New Warrants in lieu of New Common Stock, (ii) New

Common Stock only, or (iii) a combination of New Warrants and New Common Stock (in lieu of

only New Common Stock or only New Warrants) to any Certifying Equity Eligible Holder that,

based on such Holder's Foreign Ownership Certification (or failure to provide the Foreign

Ownership Certification or otherwise comply with Section 5.4.2(a)), is (or is deemed to be,

pursuant to Section 5.4.2(a) of the DCL Plan) more than twenty-five percent (25%) foreign-

owned, on an equity basis, or more than twenty-five percent (25%) foreign-controlled, on a

voting basis, as determined pursuant to section 310(b) of the Communications Act as needed to

ensure compliance with section 310(b) of the Communications Act.  The issuance of New

Warrants, New Common Stock, or a combination of New Warrants and New Common Stock

will be pursuant to an allocation mechanism determined by Reorganized Tribune and the other

DCL Proponents that, based on the aggregated results of the Foreign Ownership Certifications,

ensures compliance with section 310(b) of the Communications Act.

## RELIEF REQUESTED

15.    By this Motion, the Debtors respectfully request entry of an order, in

substantially the form attached hereto (the "FCC Procedures Order"), (i) establishing procedures

to enable the Debtors to comply with the foreign ownership requirements of the FCC (the

"Foreign Ownership Procedures"), including establishing deadlines by which the Holders of

Senior Loan Claims and/or Senior Guaranty Claims and Electing Holders of Senior Noteholder

Claims that do not wish to be considered entirely foreign-owned and foreign-controlled will be

---

[9] The DCL Plan Proponents intend to amend Section 5.4.2 of the DCL Plan to the extent necessary in order to clarify that the Electing Holders of Other Parent Claims are not required to submit Foreign Ownership Certifications.

required to submit Foreign Ownership Certifications to the Certification Agent; and (ii) authorizing Epiq Bankruptcy Solutions, LLC to serve as Certification Agent and to perform all services related to the certification process described herein.  The Debtors further request that the Court approve the forms of Foreign Ownership Certification and descriptions of the foreign ownership certification procedures to be provided to the Holders of Senior Loan Claims and/or Senior Guaranty Claims and Electing Holders of Senior Noteholder Claims, provided that the Debtors be authorized to make any non-substantive and/or immaterial changes to such forms without further order of the Court.[10]

## I.      Proposed Procedures for Compliance With FCC Foreign Ownership Restrictions

16.      Pursuant to the proposed Foreign Ownership Procedures, the Debtors will request foreign ownership information for Certifying Equity Eligible Holders.[11]  The Debtors have determined that it is not necessary to request foreign ownership information from Electing Holders of Other Parent Claims at this time given the small percentage of New Common Stock such Holders will receive.  These Holders will be deemed entirely foreign-owned solely for purposes of calculating Reorganized Tribune's foreign ownership percentage, but will all receive

---

[10] As explained herein, the Debtors are also requesting that the Foreign Ownership Procedures run parallel with the process for the limited resolicitation of votes and elections on the DCL Plan so that the Foreign Ownership Certification forms can be efficiently and expeditiously distributed and processed by the Certification Agent.

[11] Pursuant to Section 7.2.3 of the DCL Plan, Equity Eligible Holders have an opportunity to designate an affiliate or other party to receive all or a portion of their distributions of New Common Stock or New Warrants under the DCL Plan (the "Alternative Recipient Designation").  Electing Holders of Other Parent Claims and Electing Holders of Senior Noteholder Claims will be able to make the Alternative Recipient Designation on the applicable Supplemental Ballot or Supplemental Election Form (each as defined in the Solicitation Supplement (defined below)), and Holders of Senior Loan Claims and/or Senior Guaranty Claims will be able to make the Alternative Recipient Designation on the Foreign Ownership Certification.  As with the Foreign Ownership Certification form generally, the designation information set forth on the Foreign Ownership Certification may be amended at any time at or prior to the date on which amended Foreign Ownership Certifications must be submitted pursuant to the Final Certification Notice (as defined below).  To the extent Certifying Equity Eligible Holders make an Alternative Recipient Designation, such Holders will be required to provide foreign ownership information respecting their designees, as set forth in the Foreign Ownership Certification.

8

New Common Stock under the DCL Plan.[12]   Due to the unique characteristics of the Holders of

Senior Loan Claims and/or Senior Guaranty Claims and Electing Holders of Senior Noteholder

Claims, the Debtors are hereby proposing two sets of procedures.

17.    The Debtors are proposing that both sets of procedures run parallel with

the process for the limited resolicitation of votes and elections on the DCL Plan.  For example,

the Foreign Ownership Procedures described herein contemplate that the Certification Record

Date (as defined below) will be the same as the Supplemental Voting Record Date (as defined in

the Solicitation Procedures Motion) and that the Certification Deadline (as defined below) will

be the same as the Supplemental Voting Deadline.  In addition, the Foreign Ownership

Procedures described herein propose that the Foreign Ownership Certification materials will be

included in the resolicitation packages distributed to Holders of Senior Noteholder Claims (or

distributed contemporaneously therewith), and that Electing Holders of Senior Noteholder

Claims be required to return their Foreign Ownership Certifications with their supplemental

treatment election forms.  The Debtors submit that disbursing and collecting Foreign Ownership

Certifications simultaneously with resolicitation will simplify and reduce the cost of the Foreign

Ownership Procedures.

---

[12] Based upon elections made in connection with the Second Amended Plan, it is estimated that the Electing Holders of Other Parent Claims will receive a *de minimis* amount of Reorganized Tribune's New Common Stock and, thus, the effect on Reorganized Tribune's foreign ownership percentage would likely be inconsequential.  More specifically, in connection with solicitation of treatment elections for the Second Amended Plan, eight Holders of Other Parent Claims holding approximately $1,503,282.95 in such Claims elected to receive the alternative treatment under Sections 3.2.6(c)(ii) or (iii) of the Second Amended Plan, which would result in such electing Holders receiving approximately 0.008% of the New Common Stock.  See Amended Fourth Supplemental Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Joint Plans of Reorganization Proposed for Tribune Company and its Subsidiaries, Ex. B-1 [Docket No. 10090].  Pursuant to the Solicitation Procedures Motion, Holders of Other Parent Claims will be permitted to make new treatment elections with respect to the DCL Plan; however, the Debtors do not expect the outcome of the treatment elections to vary significantly.  In any event, the Holders of Other Parent Claims will collectively receive no more than 1.4% of the New Common Stock.

46429/0001-8358904v1

A.    *Holders of Senior Loan Claims and Senior Guaranty Claims*

      18.    The Debtors request that the Court approve the following procedures for submission of Foreign Ownership Certifications by Holders of Senior Loan Claims and/or Senior Guaranty Claims:

    a) Following entry of the FCC Procedures Order, the Certification Agent will provide to each Holder of a Senior Loan Claim and/or Senior Guaranty Claim a Foreign Ownership Certification (which includes instructions for completing the Foreign Ownership Certification), substantially in the form attached hereto as Exhibit A-1, and a description, substantially in the form attached hereto as Exhibit B-1, of the foreign ownership certification procedures (collectively, the "Foreign Ownership Package").

    b) For purposes of distributing the Foreign Ownership Package, March 22, 2012 will serve as the record date (the "Certification Record Date"), which is the same date that has been proposed as the Supplemental Voting Record Date.[13] The Senior Loan Agent will provide the Certification Agent with a list of Holders of Senior Loan Claims and/or Senior Guaranty Claims as of the Certification Record Date no later than two (2) business days after entry of the FCC Procedures Order.

    c) Each Holder of a Senior Loan Claim and/or a Senior Guaranty Claim that does not want to be considered entirely foreign-owned and foreign-controlled must complete and submit an original Foreign Ownership Certification to the Certification Agent on or before April 30, 2012 (the "Certification Deadline"), which is the same date that has been established in the Scheduling Order as the Supplemental Voting Deadline.

    d) Holders of Senior Loan Claims and/or Senior Guaranty Claims that do not submit a Foreign Ownership Certification or that do not submit a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on or prior to the Certification Deadline will be deemed entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan.

    e) After the Certification Record Date, any Person who wishes to acquire a Senior Loan Claim and/or a Senior Guaranty Claim will not have the transfer of such Claim recognized by the Debtor or Senior Loan Agent

---

[13] See Supplement to Motion of Debtors For Order (I) Approving Supplemental Disclosure Document; (II) Establishing Scope, Forms, Procedures, and Deadlines for Resolicitation and Tabulation of Votes to Accept or Reject DCL Plan From Certain Classes; (III) Authorizing Tabulation of Prior Votes and Elections on DCL Plan Made By Holders of Claim in Non-Resolicited Classes; (IV) Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof; and (V) Granting Related Relief [Docket No. 10960] (the "Solicitation Supplement"), at ¶ 2.

46429/0001-8358904v1

unless such Person certifies to the Senior Loan Agent that it (a) has submitted to the Certification Agent either (i) a Foreign Ownership Certification or (ii) an alternative document in a form satisfactory to the Certification Agent that memorializes such Person's agreement to be treated as entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan; (b) was already a Holder of Senior Loan Claims of record as of the Certification Record Date or otherwise has already submitted a Foreign Ownership Certification; or (c) is a market maker acquiring Senior Loan Claims and/or Senior Guaranty Claims not for its own account.

f)  After a Foreign Ownership Certification is submitted, if the Holder of a Senior Loan Claim and/or Senior Guaranty Claim experiences a change in foreign ownership, or if any other change occurs that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), such Holder of a Senior Loan Claim and/or Senior Guaranty Claim must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days after the Distribution Record Date (as defined below).

g)  Within one (1) business day after the release of an order by the FCC granting the FCC Approval, the Certification Agent will distribute a notice of such approval (the "Final Certification Notice") to the Senior Loan Agent and to the Holders of Senior Loan Claims and/or Senior Guaranty Claims.[14]

h)  The Final Certification Notice will notify Holders of Senior Loan Claims and/or Senior Guaranty Claims that (i) the date of such notice will be the "Distribution Record Date" for purposes of distributions to such Holders, (ii) in accordance with Section 7.7 of the DCL Plan, trades of such Claims after the Distribution Record Date will not be recognized by the Debtors or the Disbursing Agent unless a notice re-setting the Distribution Record Date shall be filed on the Court's docket by the DCL Plan Proponents and, therefore, the Holders of Senior Loan Claims and/or Senior Guaranty Claims of record on the Distribution Record Date will receive the distributions of New Common Stock and/or New Warrants (as well as Distributable Cash and New Senior Secured Term Loan), and (iii) if such Holders have experienced any change in foreign ownership, or any other change that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), since such Holders last submitted a Foreign Ownership Certification, such Holders will be

---

[14] The Final Certification Notice will also be filed on the Bankruptcy Court's docket for these chapter 11 cases, and the Senior Loan Agent will provide the Final Certification Notice to Holders of Senior Loan Claims and/or Senior Guaranty Claims via Intralinks.

required to submit a final updated Foreign Ownership Certification within two (2) business days after the Distribution Record Date, in accordance with paragraph 18(f) above.

    i)    The Senior Loan Agent will provide the Certification Agent with a list of Holders of Senior Loan Claims and/or Senior Guaranty Claims as of the Distribution Record Date no later than two (2) business days after receipt of written notice from the Debtors of the release of an order by the FCC granting the FCC Approval.

B.    *Electing Holders of Senior Noteholder Claims*

19.    The Debtors propose that the following procedures apply to the submission of Foreign Ownership Certifications by Electing Holders of Senior Noteholder Claims:[15]

    a)    Following entry of the FCC Procedures Order, the Certification Agent will provide to each Holder of a Senior Noteholder Claim as of the Supplemental Voting Record Date, via transmission to the record holders, including, without limitation, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees (collectively, the "Certification Nominees"), a Foreign Ownership Certification, substantially in the form attached hereto as Exhibit A-2, and a description of the foreign ownership certification procedures, substantially in the form attached hereto as Exhibit B-2, with the Supplemental Election Form included in the solicitation packages distributed pursuant to the relief requested in the Solicitation Procedures Motion.[16]

    b)    Each Electing Holder of a Senior Noteholder Claim that does not want to be considered entirely foreign-owned and foreign-controlled will complete and submit, through its Certification Nominee, an original Foreign

---

[15] As set forth in the Solicitation Procedures Motion, when a Holder of a Senior Noteholder Claim elects to receive the alternate treatment under Section 3.2.5(c)(i) of the DCL Plan, such Holder will be required to tender their outstanding Senior Notes via their Certification Nominees (defined below) into the Automated Tender Offer Program ("ATOP") system of The Depository Trust Company ("DTC"). The Electing Holders of Senior Noteholder Claims' positions will be segregated through ATOP and such Electing Holders will thereafter be unable to trade their Senior Noteholder Claims.

[16] As described in the Solicitation Procedures Motion, in connection with solicitation on the DCL Plan, Holders of Senior Noteholder Claims will receive a "Supplemental Election Form" that, among other things, will allow such Holders to elect to receive a "strip" of consideration that includes equity in Reorganized Tribune. If a Holder of a Senior Noteholder Claim elects this treatment on the Supplemental Election Form, such Holder will be directed to complete and submit the Foreign Ownership Certification included in the solicitation materials, in addition to being directed to tender their outstanding Senior Notes via their Certification Nominees into the ATOP system of the DTC.

Ownership Certification so that it is received by the Certification Agent on or prior to the Certification Deadline (*i.e.*, April 30, 2012, which is the date established as the Supplemental Voting Deadline in the Scheduling Order). The Foreign Ownership Certification must be submitted via Certification Nominee to the Certification Agent with the Electing Holder's Supplemental Election Form.

c) Electing Holders of Senior Noteholder Claims that do not submit a Foreign Ownership Certification or that do not submit a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on or prior to the Certification Deadline will be deemed entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan.

d) After a Foreign Ownership Certification is submitted, if an Electing Holder of a Senior Noteholder Claim experiences a change in foreign ownership, or if any other change occurs that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), such Electing Holder of a Senior Noteholder Claim must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days after the Distribution Record Date (as defined below).

e) Within one (1) business day after the release of an order by the FCC granting the FCC Approval, the Certification Agent will distribute the Final Certification Notice via electronic mail to Electing Holders of Senior Noteholder Claims.[17]

f) The Final Certification Notice will notify Electing Holders of Senior Noteholder Claims that (i) the date of such notice will be the "Distribution Record Date" for purposes of distributions to such Holders and (ii) if such Holders have experienced any change in foreign ownership, or any other change that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), since such Holders last submitted a Foreign Ownership Certification, such Holders will be required to submit a final updated Foreign Ownership Certification within two (2) business days after the Distribution Record Date, in accordance with paragraph 19(d) above.

---

[17] The Foreign Ownership Certification provided to the Holders of Senior Noteholder Claims with the Supplemental Election Form will require each Electing Holder of Senior Noteholder Claims to provide an e-mail address for such electronic service.

II.     **Retention of Epiq Bankruptcy Solutions, LLC, as Certification Agent**

20.     Pursuant to an order of this Court entered on December 10, 2008, the

Debtors retained Epiq Bankruptcy Solutions, LLC ("Epiq") as the Debtors' claims, noticing, and

balloting agent.[18]  Epiq previously acted as voting agent with respect to the solicitation and

tabulation of votes to accept or reject the Second Amended Plan, and will continue to act as

voting agent with respect to the DCL Plan as set forth in the Solicitation Procedures Motion.

21.     The Debtors have confirmed with Epiq that Epiq, as Certification Agent,

is willing to perform all services relating to the certification process as described herein pursuant

to the terms set forth in the Epiq Retention Application.  Given Epiq's three-year involvement

with the Debtors' chapter 11 cases as claims, noticing and voting agent, the Debtors submit that

Epiq should be retained as Certification Agent.

**BASIS FOR RELIEF REQUESTED**

22.     As explained above, obtaining FCC Approval is necessary for the

Debtors' reorganization, and is a condition to the DCL Plan's Effective Date.  The Debtors have

certified to the FCC in the FCC Applications that twenty-five percent (25%) or less of Tribune

Company's capital stock will be owned or voted by non-U.S. persons or entities.  The Foreign

Ownership Procedures described in this Motion will allow the Debtors to determine the

allocation of New Common Stock and New Warrants under the DCL Plan so that the Debtors

can comply with the FCC's requirements as of the DCL Plan's Effective Date.

23.     In addition, the Debtors submit that implementing the Foreign Ownership

Procedures alongside the solicitation procedures is an efficient means to distribute and process

---

[18] See Order Authorizing the Debtors and Debtors in Possession to Retain and Employ Epiq Bankruptcy Solutions, LLC as Claims, Noticing, and Balloting Agent Pursuant to 28 U.S.C. § 156(c), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(f) as of the Petition Date. [Docket No. 44]; see also Solicitation Order [Docket 7215] (expanding scope of Epiq's retention).

46429/0001-8358904v1

the Foreign Ownership Certifications.  Starting the foreign ownership certification process at this time will provide Holders of Senior Loan Claims and/or Senior Guaranty Claims and Electing Holders of Senior Noteholder Claims more than adequate time to review, evaluate and complete the Foreign Ownership Certification, while permitting the Certification Agent and the Debtors sufficient time to tabulate and analyze the Foreign Ownership Certifications.  As a result, the Debtors believe that they should be well-positioned to emerge from these Chapter 11 Cases in compliance with the FCC's requirements as expeditiously as possible after confirmation of the DCL Plan and obtaining FCC Approval.

24.    The Court has authority to enter the FCC Procedures Order pursuant to section 105(a) of the Bankruptcy Code.  Specifically, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The broad grant of authority under section 105(a) is intended to enable courts to issue orders to ensure the prompt administration of the estate and equitable distribution of the assets.  See In re Resorts Int'l, Inc., 199 B.R. 113, 118 (Bankr. D.N.J. 1996), aff'd 372 F.3d 154, 167 (3d Cir. 2004).  The FCC Procedures Order will help facilitate the prompt administration of the estate by enabling the Debtors to obtain FCC Approval and to make distributions to creditors as soon as possible after FCC Approval.

25.    The DCL Plan specifically provides that Certifying Equity Eligible Holders will be required to provide a Foreign Ownership Certification and to report any changes in foreign ownership percentages between the submission of the Foreign Ownership Certification and the Effective Date, or be deemed to be foreign-owned and foreign-controlled for purposes of determining the allocation of New Common Stock and New Warrants in order to ensure

15

compliance with section 310(b) of the Communications Act. DCL Plan, § 5.4.2(a). Specifically, the DCL Plan states:

> Each Holder of a Claim that is eligible to receive a distribution of New Common Stock pursuant to this Plan will be required (1) to provide the Foreign Ownership Certification by the deadline established by the Bankruptcy Court and (2) to report any changes in foreign ownership percentages between the submission of the Foreign Ownership Certification and the Effective Date or such other deadline established by the Bankruptcy Court by providing an amended Foreign Ownership Certification and, upon request of the Proponents, confirm the absence of any changes.

DCL Plan, § 5.4.2(a). Thus, the DCL Plan expressly contemplates that the Court will establish certain procedures relating to the submission of Foreign Ownership Certifications to implement the DCL Plan and facilitate compliance with the Communications Act and FCC regulations.

26.    Consistent with Section 5.4.2(a) of the DCL Plan, and in order to comply with the Communications Act and FCC regulations, the Debtors submit that it is necessary (i) to require Certifying Equity Eligible Holders to submit a Foreign Ownership Certification in accordance with the procedures set forth in this Motion and (ii) for any Certifying Equity Eligible Holder that fails to provide an original Foreign Ownership Certification in accordance with the procedures set forth herein or that does not provide a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on or prior to the Certification Deadline to be deemed to be an entity that is entirely foreign-owned and foreign-controlled for purposes of determining the allocation of New Common Stock and New Warrants under the DCL Plan. Further, to ensure that the Debtors are aware of any changes in the foreign ownership of Certifying Equity Eligible Holders prior to the Effective Date so that the Debtors can ensure compliance with section 310(b) of the Communications Act on the Effective Date, it is also necessary to require Holders of Senior Loan Claims and/or Senior Guaranty Claims and Electing Holders of Senior Noteholder Claims that do not want to be treated as entirely foreign-owned

16

and foreign-controlled to provide updated information with respect to the Foreign Ownership Certification and to prevent such Holders from trading their positions after the Distribution Record Date.

27.     Thus, the Court has authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code because such relief will facilitate the FCC Approval process, ensure that the Debtors comply with section 310(b) of the Communication Act, and will be necessary to implement the DCL Plan in the event the Court confirms the DCL Plan.

## NO PRIOR REQUEST

28.     The Debtors have not previously sought the relief requested herein from this Court or any other court.

## NOTICE

29.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel to the Loan Agents for Tribune Company's pre-petition loan facilities; (iv) counsel to the administrative agent for the Debtors' post-petition financing facility; and (v) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

46429/0001-8358904v1

WHEREFORE, the Debtors respectfully request that this Court enter an order granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: Wilmington, Delaware
       March 5, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C.K. Boelter
Allison Ross Stromberg
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 507-0199
Facsimile: (312) 853-7036

       -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION