# AKIN GUMP
## STRAUSS HAUER & FELD LLP
Attorneys at Law

**DAVID M. ZENSKY**
212.872.1075/fax:
1.212.872.1002
dzensky@akingump.com

March 9, 2012

<u>VIA ELECTRONIC FILING AND HAND DELIVERY</u>

Honorable Kevin J. Carey
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, Fifth Floor
Wilmington, Delaware 19801

      Re:   *In re Tribune Company, Case No. 08-13141 (KJC)*

Dear Judge Carey:

    As you are aware, we represent Aurelius Capital Management, LP in the above-referenced matter. In accordance with the Court's direction, we write to present rebuttal points in support of two of the positions that Aurelius has taken on the Allocation Disputes: (i) that, pursuant to the Subordination Agreement governing the EGI Notes (the "<u>EGI Subordination</u>"), the holders of the EGI Notes (the "<u>EGI Noteholders</u>") may not receive any payments under a plan of reorganization unless and until "Senior Obligations" have been paid in full, and (ii) that the PHONES Notes Claims should be allowed in the Low PHONES Amount. Our two-page submission is enclosed.

Respectfully submitted,

David M. Zensky

cc: All counsel of record

One Bryant Park / New York, NY 10036 / 212.872.1000 / fax: 212.872.1002 / www.akingump.com

**EGI Subordination**

Although the four-page EGI Subordination is not as detailed as the PHONES Subordination, the language of the EGI Subordination nevertheless leaves no doubt that the parties to that agreement intended to subordinate *any payment* made in respect of the EGI Notes, *regardless of the source*, to the full payment in cash of the Senior Obligations. Specifically, paragraph 2 of the EGI Subordination provides that "*[u]nless and until . . . the Senior Obligations have been paid in full in cash, . . . the Company will not make, give or permit, directly or indirectly, by set-off, redemption, purchase or in any other manner, any payment of (of whatever kind or nature, whether in cash, property, securities or otherwise), whether in respect of principal, interest or otherwise, or security for the whole or any part of the Subordinated Obligations*." ADH Exhibit 8 at TRB0524216. Clearly, the Debtors may not propose or support a plan of reorganization that provides for *any payment* to EGI without running afoul of this provision.

Similarly, paragraph 4 of the EGI Subordination provides that "*[u]nless and until . . . the Senior Obligations have been paid in full in cash*" the EGI Noteholders shall not "*take or continue any action, or exercise any rights, remedies or powers under the terms of the Subordinated Note, or exercise or continue to exercise any other right or remedy at law or in equity that the Subordinating Creditor might otherwise possess, to collect any Subordinated Obligation, including, without limitation . . . the taking advantage of any other insolvency law of any jurisdiction*." *Id.* Pursuant to this language, the EGI Noteholders may not exercise any right to receive a turnover of distributions from the PHONES Noteholders (in the unlikely event such a right exists), or to share in any proceeds of Chapter 5 causes of action (via Settlement consideration or through the Litigation or Creditors' Trusts), before Senior Obligations are paid in full in cash. EGI's assertion that such an exercise of rights is not the "collect[ion] of any Subordinated Obligation," because "Subordinated Obligations" are defined as "unpaid principal of and interest on the Subordinated Note and all other obligations and liabilities of the Company," *see, e.g.,* 3/5/12 Hrg. Tr. at 55:10-56:10 (Bradford), is not credible. Distributions arising from chapter 5 recoveries, and payments resulting from the turnover provisions of a subordination agreement, clearly are made on account of unpaid principal and interest owed to the EGI Noteholders by Tribune. Indeed, the EGI Noteholders would have no entitlement to such payments and distributions were it not for unpaid principal and interest on the EGI Notes.

Finally, paragraph 6 of the EGI Subordination Agreement provides that "*all payments or distributions upon or with respect to any Subordinated Obligation which are made by or on behalf of the Company or received by or on behalf of the Subordinating Creditor in violation of or contrary to the provisions of this Agreement shall be received in trust for the benefit of holders of Senior Obligations and shall be paid over upon demand to such holders . . . .*" *Id.* at TRB0524217. If, as EGI contends, the EGI Subordination requires turnover only of "payments made by or on behalf of the Company," the words "*or received by or on behalf of the Subordinating Creditor in violation of or contrary to the provisions of this agreement*" would be pure surplusage. Such an interpretation is contrary to paragraphs 2 and 4, and defeats the well-settled maxim that "a court interpreting any contractual provision . . . must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument." *Alta Berkeley VI C.V. v. Omneon, Inc.*, No. 442, 2011, 2012 WL 694762, at *3 (Del. Mar. 5, 2012) (rejecting interpretation that rendered words "superfluous").

1

**The Allowed Amount of the PHONES Notes Claims**

Wilmington Trust concedes that the Tendering PHONES Noteholders are not entitled to rescission, and does not contest that a creditor's rights against a debtor are fixed as of the Petition Date. Instead, Wilmington Trust's argument on this issue appears to be that (i) neither the Tendering PHONES Noteholders nor Tribune were bound to consummate the PHONES exchange until Tribune actually made the Exchange Payments, and (ii) the Tendering PHONES Noteholders were entitled to receive the full amount of unpaid principal and interest on the Tendered PHONES Notes, rather than the Exchange Payments, as of the Petition Date. 3/6/12 Hrg. Tr. 99:12-23 (Stark). Under this theory, the PHONES exchange was an option for Tribune that it could accept or decline, and no PHONES Noteholder could ever have an enforceable right to exchange their PHONES Notes, because no binding agreement is created until the Exchange Payments are actually made.

The documents are crystal clear, however, that: (i) the PHONES Noteholders had the "right, at any time and from time to time, to exchange (an "Exchange Right") each PHONES," and (ii) upon receipt of an Exchange Notice, Tribune was required to "pay the Holder of each PHONES the amount due upon exchange . . . in no event . . . later than ten (10) Trading Days after the date of such Exchange Notice." ADH Exhibit 3 at WTC0000105-106. Under black letter law, once Tribune was so bound, the Tendering PHONES Noteholders were bound as well. *See Gaskins v. Walz*, 97 N.E.2d 798, 801 (Ill. 1951) (acceptance of an option is "final and irrevocable"); *Macy v. Brown*, 158 N.E. 216, 218 (Ill. 1927) ("Where the party holding an option signifies his acceptance within the time limited and upon the terms stated, the obligation of the contract becomes mutual and capable of enforcement at the instance of either party."); *O'Connor v. Harrison*, 132 Ill. App. 264, 271 (Ill. App. Ct. 1907) ("the option had been accepted and both appellant and appellee were bound . . ."). Thus, as of the Petition Date, the Tendering PHONES Noteholders were entitled to receive, and Tribune was obligated to pay, the Exchange Payments, and these rights and obligations were fixed on the Petition Date. *See, e.g.*, *Nantahala Cap. Partners v. Washington Mut. Inc. (In re Washington Mut.)*, Adv. Pro. No. 10-50911, Bankr. No. 08-12229, 2012 WL 10189, at *9 (Bankr. D. Del. Jan. 3, 2012); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 522 (5th Cir. 2004). The fact that the Exchange Payments were not due, and thus the Tendered PHONES Notes were not set to be cancelled, until after the Petition Date, does not alter these rights and obligations.

Wilmington Trust's assertion that the rights and obligations provided for under the PHONES Note were "replaced" by the Revised Exchange Notice is incorrect and misleading. 3/6/12 Hrg. Tr. 95:19-20 (Stark). The Revised Exchange Notice was strictly procedural and merely designed to address the fact that "[t]he mechanism outlined in the note is obsolete and will not work ([because] DTC's ATOP system no longer works for these types of trades)." ADH Exhibit 95 (email from J. Rodden of DBTCA to C. Bigelow of Tribune, *et al.* dated 9/12/08) at TRB0573164. Nothing in the Revised Exchange Notice modified the substantive contractual right of a PHONES Noteholder to accept the Exchange Offer and thereby bind Tribune to make an Exchange Payment. ADH Exhibit 94. Indeed, the Revised Exchange Notice provides that Tribune will make the Exchange Payments "no later than 10 Trading Days following [the] Exchange Date)." ADH Exhibit 94 at WTC0000091. Wilmington Trust's contention that the Tendering PHONES Noteholders could reject the Exchange Payment in favor of unpaid principal and interest at their election must be rejected.