# Dewey & LeBoeuf

Dewey & LeBoeuf LLP
333 South Grand Avenue
Suite 2600
Los Angeles, CA 90071-1530

T  (213) 621-6000
F  (213) 621-6100

March 9, 2012

The Honorable Kevin J. Carey
United States Bankruptcy Court
   for the District of Delaware
824 Market Street, 5th Floor
Wilmington, DE 19801

Re:  *In re Tribune Company, et al.*, Case No. 08-013141 (KJC)

Dear Judge Carey:

On behalf of Oaktree Capital Management, L.P., we note the following in respect of arguments made at the Allocation Disputes Hearing (the "Hearing"):

1. <u>There Is No Burden of Proof on Undisputed Facts</u>.

Law Debenture, Wilmington Trust, and EGI argued that "Oaktree loses" because it failed to meet an alleged "burden of proof" in establishing contractual seniority. However, where "the facts are not in dispute and the Court makes its determination [of seniority] as a matter of law based on contract interpretation, the burden of proof is not implicated." *In re Enron Creditors Recovery Corp.*, 370 B.R. 64, 71 n.1 (Bankr. S.D.N.Y. 2007), *rev'd on other grounds*, 380 B.R. 307 (S.D.N.Y. 2008). In any event, to the extent the Court considers evidence beyond the plain language of the subordination agreements, the record of extrinsic evidence clearly establishes that the Swap Claim is senior to both the PHONES Notes and the EGI Subordinated Note. *See* Op. at 11-15; Rpy. at 2; ADH Exs. 9-12, 14-17; Tr.1 at 73-75, 78.[1]

2. <u>The Swap Claim Is Contractually Senior</u>.

*As to the EGI Subordinated Note.* EGI – the party that actually negotiated the EGI Subordination Agreement – never argued that the Swap Claim was not a "Senior Obligation." Law Debenture's effort to shoehorn the Swap Claim into the exception for "accrued expense[s] incurred in the ordinary course of business" fails because Tribune's swap liability is neither an accrued expense nor incurred in the ordinary course. *See* Rpy. at 2-3; ADH Exs. 14-17; Tr.1 at 81-82.

EGI's assertion that it need not turn over amounts received from holders of the PHONES Notes (in the event determined to be junior) is contradicted by the EGI Subordination Agreement, which plainly requires turnover to holders of Senior Obligations (like the Swap Claim) of all payments on "Subordinated Obligations" (the EGI Subordinated Note). As

---

[1]  "Op." and "Rpy." refer to Oaktree's opening and response briefs in the Allocation Disputes. "Tr.1" and "Tr.2" refer to the first and second day transcripts of the Hearing.

The Honorable Kevin J. Carey
March 9, 2012
Page 2

amounts turned over to a senior creditor by a junior creditor obviously are payments on the senior creditor's claim against the debtor, any and all amounts received by EGI in respect of its alleged senior claim vis-à-vis the PHONES are subject to turnover. Rpy. at 9 n.3; Tr.2 at 168-70.

*As to the PHONES Notes.* The Swap Claim is "Senior Indebtedness" under the PHONES Indenture because (a) it represents a Tribune liability "due on or in connection with" the Credit Agreement (which all agree is "Indebtedness" under the PHONES Indenture"), *see* Op. at 10-12; Rpy. at 3-5; ADH Exs. 9-12; Tr.1 at 73-77; and (b) as "evidence of indebtedness" similar to a note, bond, or debenture, it independently constitutes "Indebtedness" and thus qualifies for seniority, *see* Op. at 12-15; Rpy. at 5; ADH Exs. 14-17; Tr.1 at 77-78.

Most notably, Law Debenture and Wilmington Trust could not "disconnect" the Swap Claim from the Credit Agreement, given the undisputed facts that (a) the Credit Agreement required Tribune to enter into the interest rate swaps, (b) the swaps effectively replaced a portion of Tribune's exposure under the Credit Agreement, and (c) Tribune's subsidiaries guaranteed the Swap Claim and the Credit Agreement in the same document and on equal terms.

3.   The EGI Subordination Agreement Extends To Settlement Consideration.

The plain language of the EGI Subordination Agreement refutes EGI's assertion that its subordination extends only to "assets of the Company." In particular, Sections 4 and 6 apply to *all* payments on the EGI Subordinated Note, no matter the identity of the payor or the nature of the payment. *See* Op. at 19-24; Rpy. at 7-10; Tr.1 at 44-46.

At the hearing, EGI was reduced to an absurdity[2] in its effort to avoid that plain language, arguing that the "Company" (*i.e.*, Tribune) does not include the bankruptcy estate. Tr.1 at 62 ("We stand to receive distributions from the estate itself. None of that is receiving money from the company."). Under that interpretation, EGI would not be subordinated to *anyone*, as *all* payments in the bankruptcy cases (whether of "natural recoveries" or Settlement consideration) will be made by Tribune's estate. That interpretation would make a mockery of section 510(a).

Finally, EGI mischaracterized the Examiner's Report in asserting that the Examiner found avoidance recoveries not subject to subordination under the PHONES Indenture. Tr.1 at 65. False. The Examiner only noted that it was reasonably likely that PHONES subordination would not apply as to *avoided* Credit Agreement debt. Examiner's Rep. Vol. II at 303-04. The Examiner said nothing about PHONES subordination vis-à-vis *allowed* claims, other than to assume that the Swap Claim was senior in respect of all distributions from the estates.

Respectfully,

/s/ James Johnston

James Johnston

---

[2] In addition to the basic absurdity of subjecting petition date assets to subordination while exempting those same assets if fraudulently conveyed the day before bankruptcy. Op. at 23.