## TEITELBAUM & BASKIN, LLP
*Counselors at Law*

———————————

March 9, 2012

The Honorable Kevin J. Carey
United States Bankruptcy Judge
824 North Market Street, 5th Floor
Wilmington, DE  19801

Re: *In re Tribune Co. 08-13141* Related to D.I. 10692, 10787, 10994, and 11064

Dear Judge Carey:

As permitted by the Court at the March 5 hearing on the Allocation Disputes, the TM Retirees respectfully submit this post-hearing letter in support of their status as Senior Indebtedness under the PHONES Indenture and Senior Obligations under the EGI Subordination Agreement.[1]

### *Senior Indebtedness Under the PHONES Indenture:*

- *In re Payless Cashways*, 215 B.R. at 412-417, applying a similar, but materially more limited clause in a subordination agreement, held that obligations due for deferred compensation were not for the "deferred purchase price for services" because there was no proof that such services were "under conditional sale or other title retention agreements," the limiting adjectival modifiers.[2] There is no such limiting clause in the PHONES Indenture.

- Pursuant to the express terms of the TM Retiree Plans, the TM Retiree Claims constitute unpaid obligations for deferred compensation for ***services*** rendered.[3]

- The TM Retiree Claims were a (lower case) "i" "indebtedness" of Tribune as of the commencement of the Bankruptcy Cases.[4]

- The common meaning of "***services***" is not limited to "trade vendors" and applies to anyone who provides work or labor to another, such as employees, trade vendors and independent contractors.[5] Services is not otherwise defined in the PHONES Indenture.

- "***Purchase price***" is the "price agreed upon as a consideration for purchase of property or goods"[6] and thus cannot be reasonably read to limit or define "***services***".

- The TM Retiree Claims were incurred by Times Mirror in the ordinary course of its business, but were assumed by Tribune as part of an extraordinary merger transaction in 2000.[7]

- "***Normal trade terms***" are terms agreed upon with trade vendors; and are a subset of "***ordinary course of business***," which refers to all day to day activities of a business. The two phrases are not interchangeable.[8]

- Contrary to the incomplete record submitted by Law Debenture, the entire stipulation of counsel for the TM Retirees specifically preserves the difference between "***normal trade terms***" and "***ordinary course of business***"[9]; both of which are used separately in §14.01.[10]

- The TM Retirees are not trade vendors; thus, the terms of their compensation and benefits were in the "***ordinary course of business***", but not pursuant to "***normal trade terms***."[11]

- $21.7 million of the TM Retiree Claims for account balance plans also constitute "indebtedness for borrowed money" under §14.01 (1)(ii), since the salary, bonuses and/or directors' fees to be paid in cash were deferred and provided additional cash to finance general operations; and pursuant to agreements, such deferrals were to be repaid at a specific interest rate pursuant to a repayment schedule (*i.e.* a loan). [12]

*Senior Obligations Under the EGI Subordination Agreement:*

- Senior Obligations include all lower case "i" indebtedness or obligations **other than** for "**trade payables**" and "**accrued expenses** incurred in the ordinary course of business." [13]

- None of the $100 million of TM Retiree Claims are "**trade payables**." [14]

- Brian Whittman has confirmed the validity of the $100 million TM Retiree claims. [15]

- Tribune recorded the TM Retiree Claims as non-current liabilities ("Deferred compensation and benefits"), other than $5.899 million currently due to the TM Retirees recorded as a current liability ("Employee compensation and benefits"). [16]

- The TM Retiree obligations assumed in the merger were recorded as a non-current liability -- not an expense. [17]

- "**Accrued Expenses**" appears only as a current liability on the Tribune financial statements. [18]

- "**Accrued Expenses**" are "expenses incurred at the end of the reporting period but not yet paid; also called accrued liabilities." [19] Accrued expenses are current liabilities on the balance sheet; and do not appear on the income statement. Law Debenture ignores the distinction with a misleading citation to a textbook. [20] As noted on March 5, the misleading reference to "accrued liabilities" fails to disclose that it relates solely to current liabilities. The relevant page from the text is attached hereto.

- FAS 87 ¶ 36 requires that the employer "classify the liability for an underfunded plan as a current liability, a noncurrent liability, or a combination of both. The current portion . . . is the amount by which the actuarial present value of benefits included in the benefit obligation payable in the next 12 months . . . exceeds the fair value of the plan assets." [21] The excerpted additional page to Exh. 66 offered by Law Debenture on March 5 is not relevant.

- To the extent that any portion of the obligations to the TM Retirees could be characterized as an accrued expense, it is only the $5.899 million current liability identified by Tribune.

- The assumption of the obligations by Tribune in the merger is not an obligation incurred in the ordinary course of business.

Accordingly, the TM Retiree Claims are Senior Indebtedness and Senior Obligations.

Respectfully submitted,

| | |
|---|---|
| **HILLER & ARBAN, LLC** | **TEITELBAUM & BASKIN, LLP** |
| /s/ Brian Arban | Jay Teitelbaum, Esq. |
| Adam Hiller (DE No. 4105) | 1 Barker Avenue |
| Brian Arban (DE No. 4511) | Third Floor |
| 1500 North French Street, 2nd Floor | White Plains, New York 10601 |
| Wilmington, Delaware 19801 | (914) 437-7670 |
| (302) 442-7676 telephone | jteitelbaum@tblawllp.com |
| barban@hillerarban.com | |

---

[1] References to "TR at p.\_" are to the transcript of the testimony of Brian Whitman at the March 5 hearing; and references to "Exh.\_\_" are to exhibits introduced into evidence on March 5 and 6.

[2] Retiree Brief (D.I. 10994 at pp. 27-28).

[3] Exh. 24, 27-31, 38, 41-46, 48-49, 52-55, 57-59, and 62; *Neil v. Zell,* 767 F. Supp. 2d 933, 943 (N.D. Ill 2011); FAS 87 at ¶¶ 12 and 79 (quoted at Retiree Brief (D.I. 10994) at p. 30); Bell Declaration (D.I. 10998) at ¶¶ 17-36 (admitted into evidence March 5).

[4] BLACK'S LAW DICTIONARY (6th ed. 1991) (indebtedness is "any amount due and owing"); Retiree Brief (D.I. 10994) at p.32.

[5] Retiree Brief (D.I. 10994) at p. 29; Retiree Reply (D.I. 11064) at pp. 13-14.

[6] BLACK'S (6th ed. 1991); Retiree Brief (D.I. 10994) at p. 28; Law Debenture Reply (D.I. 11069) at p. 12.

[7] Exh. 34, 74- 78; Retiree Brief (D.I. 10994) at pp. 42-43; Retiree Reply (D.I. 11064) at pp. 18-19; TR. at p. 4415.

[8] Retiree Reply (D.I. 11064) at pp. 15-20.

[9] Exh. 26 at pp. 41-43.

[10] Exh. 2 at 14.01(1) (ii) and (2) (C); Retiree Reply (D.I. 11064) at p.18.

[11] Retiree Brief (D.I. 10994) at p. 18; Bell Declaration (D. I. 10998) at ¶ 12; Wilmington Trust Reply (D.I. 11073) at p. 3.

[12] Exh. 24, Col. 5; Bell Declaration (D.I. 10998) at ¶¶ 21, 22, 29-34; Exh. 30 & 31; *In re America Capital Corp.,* 425 B.R. at 720-21; Retiree Brief (D.I. 10994) at pp. 32-33.

[13] Exh. 8.

[14] TR. at pp. 4407-08; Exh. 82; Wilmington Trust Reply (D.I. 11073) at p. 3.

[15] TR. at pp. 4391-92, 4408-09; Exh. 81.

[16] TR. at pp. 4395, 4397-98, 4401-02, 4406, 4413; Exh. 79 at p. 83; Exh. 80 at p. 3; Exh. 82 at p.1 of 1 and pp. 2 and 3 of 7.

[17] TR. at p. 4415; Exh. 34 at p. 51.

[18] TR. at pp. 4406-07; Exhibit 80 at p. 3.

[19] Retiree Reply (D.I. 11064) at p. 22 and Exhibit H thereto.

[20] Law Debenture Reply (D.I. 11069) at pp. 19-20.

[21] Retiree Brief (D.I. 10994) at pp. 40-41.