

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>1501 K STREET, N.W.<br>WASHINGTON, D.C. 20005<br>(202) 736 8000<br>(202) 736 8711 FAX | BEIJING<br>BRUSSELS<br>CHICAGO<br>DALLAS<br>FRANKFURT<br>GENEVA<br>HONG KONG<br>HOUSTON<br>LONDON | LOS ANGELES<br>NEW YORK<br>PALO ALTO<br>SAN FRANCISCO<br>SHANGHAI<br>SINGAPORE<br>SYDNEY<br>TOKYO<br>WASHINGTON, D.C. |
| jbendernagel@sidley.com<br>(202) 736 8136 | FOUNDED 1866 | |

March 9, 2012

**By Hand**

Judge Kevin J. Carey
U.S. Bankruptcy Court for the District of
Delaware
824 North Market Street
Wilmington, DE 19801

       Re:    <u>In re Tribune Co., Case No. 08-13141 (KJC)</u>

Dear Judge Carey:

      On behalf of the Debtors, we submit this rebuttal letter to address certain arguments advanced by counsel for Wilmington Trust Company ("<u>Wilmington Trust</u>") and Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas (together, the "<u>Senior Noteholders</u>"), regarding Allocation Dispute No. 6, the "unfair discrimination" issue.[1]

      Wilmington Trust and the Senior Noteholders argue that the distributions made to the Other Parent Claimants under the DCL Plan violate the Bankruptcy Code by depriving the Senior Noteholders of their purported legal "entitlement" to 100% of the settlement proceeds that would be distributed to holders of the PHONES and EGI-TRB Notes but for the contractual subordination of that debt. *See, e.g.,* Tr. 3/6 at 59:7-19. *See also id.* at 65:18-66:5.

      These arguments are founded on a false premise. The Senior Noteholders do *not* have a legal, nonbankrutpcy entitlement to 100% of the subordinated creditors' portion of the settlement proceeds even if the Court concludes that none of the Other Parent Claims are entitled to seniority. To the contrary, the PHONES and EGI-TRB Notes are subordinated not only to the Senior Noteholders but also to the Senior Lenders and Bridge Lenders (collectively, the "<u>LBO Lenders</u>"). As the Examiner's Report (at pages 303-304) recognized, even if some portion of the LBO Lenders' claims are avoided, "the LBO Lenders will be entitled to … enforce their rights [in respect of the non-avoided LBO Lender debt] under the PHONES Subordination at the Tribune level regarding distributions from the Tribune estate." In other words, as senior

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Memorandum of Law of the Official Committee of Unsecured Creditors (the "<u>Committee</u>") on Unfair Discrimination Allocation Dispute [Docket No. 11000] (the "<u>Committee Brief</u>").

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

DC1 2393886v.1


SIDLEY AUSTIN LLP

March 9, 2012
Page 2

creditors, the LBO Lenders would share in amounts turned over by holders of the subordinated PHONES and EGI-TRB Notes.

Under the settlement underlying the DCL Plan, the LBO Lenders have provided at least $445.6 million in settlement consideration (at the parent company level) of which $174.5 million[2] would be distributed to holders of the PHONES and EGI-TRB Notes but for the subordination of such obligations. The Senior Noteholders argue that they have a "legal entitlement" to 100% of this sum based on their contractual rights. That is simply not the case. As the Examiner concluded, the LBO Lenders would be entitled to share in the turnover of those distributions on account of the non-avoided portion of the LBO Lender debt.

In order to enhance the settlement under the Plan, the LBO Lenders agreed to forego their contractual entitlements to such distributions to provide more settlement proceeds to parent creditors other than the LBO Lenders. That voluntary concession does not mean that the Senior Noteholders have a legal entitlement to the proceeds relinquished by the LBO Lenders. To the contrary, the LBO Lenders' waiver of their rights to seniority provide the Senior Noteholders with far more than their legal entitlements.

As a consequence, in considering whether the Plan's distribution of settlement consideration unfairly discriminates against the Senior Noteholders, the Court can and should consider the LBO Lenders' agreement to bypass their contractual subordination rights, which has the effect of enabling the Senior Noteholders to receive distributions far greater than those that would be made in accordance with strict application of senior creditors' rights under the subordination agreements. In this settlement context, in which the Senior Lenders are bypassing their contractual subordination rights, the Court can appropriately rely on Section 1129(b), which sets aside a strict application of Section 510(a), in determining whether or not this settlement unfairly discriminates.

Very truly yours,

James F. Bendernagel, Jr. /TER
James F. Bendernagel, Jr.

JFB:moo

---

[2] This assumes that the "low" PHONES Notes amount is the correct amount. If the "high" PHONES amount were the correct amount, the number would increase to approximately $214.1 million.

DC1 2393886v.1