# CHADBOURNE
# & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

**David LeMay**
direct tel (212) 408-5112
dlemay@chadbourne.com

March 9, 2012

The Honorable Kevin J. Carey
United States Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, DE  19801

### Re: In re Tribune Company, et al., Debtors (Case No. 08-13141)

Dear Judge Carey:

This letter responds to certain arguments first raised by Wilmington Trust at the March 6th hearing on whether the DCL Plan "misallocates" distributions or discriminates unfairly.

Wilmington Trust did not mention these issues at all in its opening brief (Docket No. 10999), and devoted only two very vague paragraphs to them in its response brief (Docket No. 11073). Rather, it first articulated these arguments at the hearing. These new arguments can be readily dealt with in this letter.

Wilmington Trust suggests that giving effect to the plain meaning of the phrase "notwithstanding section 510(a)" in section 1129(b) of the Bankruptcy Code would "eviscerate" contractual subordination, upset the capital markets, and violate the Supreme Court's decision in *Butner v. United States*, 440 U.S. 48 (1979). *See* Tr. 3/6/12 at 65:13-17, 68:5-14, 70:18-24, 75:10-15. This apocalyptic rhetoric does not hold up to even a brief analysis.

The plain meaning of "notwithstanding section 510(a)" was determined in *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 141 (Bankr. D.N.J. 2010), an opinion that follows directly and faithfully from the Third Circuit's controlling guidance on the meaning of "notwithstanding" in the Bankruptcy Code. *See In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 817 (3d Cir. 2010).[1] Section 1129(b)(1) permits a plan to be confirmed *in spite of* the terms of a

---

[1] Wilmington Trust suggests that the holding in *TCI 2* is limited to the facts of that case. *See* Tr. 3/6/12 at 76:4-17. To the contrary, the court in *TCI 2* explicitly stated that the facts of the case were not relevant in determining whether section 510(a) was violated in the context of cram down:

> Given the context in which the issue is presented, i.e., the confirmability of the [plan] under section 1129(b)(1), I need not . . . determine whether the [subordination] agreement was breached . . . . The phrase '[n]otwithstanding section 510(a) of this title' removes section 510(a) from the scope of 1129(a)(1), which requires compliance with 'the applicable provisions of this title.' . . . [E]ven if such a violation occurred, it would not impede the confirmation of the [plan] as proposed.

*In re TCI 2 Holdings, LLC*, 428 B.R. at 141.



CHADBOURNE
& PARKE LLP

| | | |
|---|---|---|
| The Honorable Kevin J. Carey | -2- | March 9, 2012 |

subordination agreement, so long as the plan passes section 1129(b)'s stringent "checkpoints". The "fair and equitable" test prevents subordination agreements from being subverted for the benefit of the subordinated classes. The "unfair discrimination" test's materiality element ensures basic "horizontal" fairness as between the Senior Noteholders and the Other Parent Claims.

In an attempt to refute the plain meaning of section 1129(b), Wilmington Trust quoted a 1979 article by Professor Klee, *see* Kenneth N. Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 AM. BANKR. L.J. 133, 142 n.70 (1979). See Tr. 3/6/12 at 69:18-70:24. But Professor Klee himself agrees that the Committee's statutory interpretation is accurate. In a subsequent 1995 article proposing amendments to the Bankruptcy Code, he notes:

> § 1129(b), by virtue of its reference to § 510(a) in cram down, appears to have the anomalous result of overriding § 510(a) and eliminating the enforcement of subordination agreements in cases in which the class rejects the plan. The Commission should recommend to Congress that the reference to § 510(a) in § 1129(b)(1) of the Bankruptcy Code be deleted.

Kenneth N. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 AM. BANKR. L.J. 551, 561 (1995). As the *TCI 2* court recognized 15 years after Mr. Klee suggested that deletion, "Congress has . . . no[t] deleted the reference to § 510(a) in § 1129(b)(1). ***The phrase must be given meaning.***" *In re TCI 2 Holdings*, 428 B.R. at 141 (emphasis added). In any case, Mr. Klee's concern—that section 1129(b) might wholesale eliminate the enforcement of subordination agreements in cram down—is not remotely a danger here.

Wilmington Trust's argument that *Butner* makes subordination agreements especially sacrosanct in bankruptcy is equally unfounded. In that case involving property rights and not contractual issues under Chapter XI of the Bankruptcy Act, the Supreme Court held, "***Unless some federal interest requires a different result***, there is no reason why [state law property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner*, 440 U.S. at 55 (emphasis added). The decision of Congress to include the phrase "notwithstanding section 510(a)" in section 1129(b)(1) of the Bankruptcy Code is exactly the type of "federal interest requir[ing] a different result" that the Supreme Court had in mind. Allowing a plan to have flexibility in the treatment of different classes—so long as it is "fair and equitable" to, and does not "discriminate unfairly" against, dissenting classes—is entirely consistent with the terms of Section 1129(b) and the fundamental purposes of Chapter 11, as discussed by the Supreme Court in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 525-27 (1984).

Respectfully submitted,

David LeMay