KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

(212) 506-1700

FACSIMILE: (212) 506-1800

(212) 506-1726

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY

March 9, 2012

Honorable Kevin J. Carey
United States Bankruptcy Court
District of Delaware
824 North Market Street
Wilmington, Delaware 19801

      Re:   *In re Tribune Company, et al.*, Case No. 08-13141 (KJC)

Dear Judge Carey:

      We submit this letter on behalf of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas to clarify certain discrete issues that arose during the Allocation Disputes Hearing.

      **EGI Must Turn Over *Any Payment* On Its Note (AD 2)**: (1) The EGI Subordination Agreement limits EGI from exercising "any rights, remedies or powers under the terms of the Subordinated Note, or exercise or continue to exercise any other right or remedy at law or in equity that the Subordinating Creditor might otherwise possess, to collect any Subordinated Obligation." ¶ 4. This provision is without limitation; all amounts collected by EGI must be on account of its Subordinated Obligation. (2) The Agreement also requires EGI to turn over to holders of Senior Obligations (*i.e.*, the Senior Notes) all amounts that it receives on the Subordinated Obligations. ¶ 6 ("all payments or distributions upon or with respect to any Subordinated Obligation which are . . . received by or on behalf the Subordinating Creditor in violation of or contrary to the provisions of this Agreement shall be received in trust for the benefit of the holders of Senior Obligations and shall be paid over upon demand to such holders . . ."). (3) EGI maintains that ¶¶ 4, 6 nevertheless allows EGI to receive, to keep, and not to turn over avoidance proceeds and any amounts received from third parties. However, any amounts that it receives by definition are amounts it has "collected" in violation of ¶ 4, which are therefore amounts "received" in violation of the Subordination Agreement and must be "paid over" to holders of Senior Obligations.

      **TM Retirees Are Not Senior Obligations Under the EGI Subordinated Agreement (AD 3)**: Brian Whittman testified that neither the Financial Accounting Standards nor GAAP distinguishes between expenses accrued as current liabilities and expenses accrued as non-current liabilities to define an accrued expense. Therefore, there is no basis for this distinction made by the TM Retirees. Their claims are accrued expenses excepted from the definition of Senior Obligations under the EGI Subordination Agreement.

**The PHONES Trustee's Fee Claim Is Not Senior Indebtedness (AD 3)**: The PHONES Trustee's reliance on section 14.13 of the PHONES Indenture is wrong. The first paragraph of that section excepts from subordination only actual Senior Indebtedness held by the Trustee in its "individual" capacity rather than as Trustee. This means holdings for proprietary trading, if any, but not holdings of a global note or otherwise in a representative capacity. The second paragraph of section 14.13 makes clear that the Trustee's fee claims (those under section 6.07) are not Senior Indebtedness because they are excepted in their entirety from Article 14. It is that Article of the Indenture that defines Senior Indebtedness. Thus, the Indenture expressly excepts the Trustee's fees from being Senior Indebtedness.

**Plan Mis-Allocation (Unfair Discrimination) (AD 5)**: The Committee admits on page 8 of its opening brief that the proper unfair discrimination analysis (as supported by all of the cases it cites) requires a comparison of the preferred class's recovery to the recovery of the dissenting class. Section 1129(b) provides that the Court must determine whether the plan unfairly discriminates "notwithstanding section 510(a)." Here, in assuming that the Senior Noteholders are receiving 33.6 percent of their claim as part of the unfair discrimination, the Committee incorporates the benefit that Senior Noteholders receive from the subordination agreements (i.e. *withstanding* section 510(a)). Instead, the proper analysis must compare the distributions without factoring in ("in spite of") subordination. This analysis is firmly supported by Bruce Markell in his article heavily relied upon by the Committtee. There, Judge Markell stated that "[e]state assets may not be equally available to all creditors. . . . If the different resources existed prebankruptcy, or are created by acts of nonplan proponents, *then the risk and expectations of the dissenting class cannot be frustrated by the plan's allocation.*" Bruce A. Markell, "A New Perspective on Unfair Discrimination in Chapter 11," 72 Am. Bankr. L.J. 227, 261 (1998). The Committee also ignores the *only* unfair discrimination example given in the legislative history. As a result, here, the DCL Plan is not only depriving the Senior Noteholders of the full benefit of the subordination provisions and discriminating against them by no less than 53% (an amount that increases with increased Litigation Trust recoveries), but is also diverting such recovery to other classes. The Committee is able to point to no case that authorizes this misallocation of assets and complete disregard of the impact of subordination.

EGI's expected argument that the position here is inconsistent with the position that EGI is subordinated as to avoidance action recoveries is wrong. Here, Law Debenture simply says that the Plan must treat all claims of equal rank (senior, unsubordinated, subordinated) equally for unfair discrimination purposes as to all treatment (direct recovery, Settlement proceeds, Disgorgement proceeds, and avoidance action recoveries) and then apply subordination. There is no conflict in these positions.

Accordingly, for the reasons set forth herein and in its opening and responsive briefs, Law Debenture respectfully requests that the Court grant the relief sought therein.

Respectfully,

/David S. Rosner/
David S. Rosner

/MrS S/

cc:    Counsel listed on attached service list