**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>　　　　Debtors. | Chapter 11<br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>**Related Docket Nos. 10958, 10960, 11106**<br>Hearing Date: March 23, 2012<br>Objection Deadline: March 9, 2012 |

**LIMITED OBJECTION OF AURELIUS CAPITAL MANAGEMENT, LP**
**TO THE DCL PLAN PROPONENTS' SUPPLEMENTAL DISCLOSURE**
**DOCUMENT RELATING TO THIRD AMENDED JOINT PLAN**
**OF REORGANIZATION (AS MODIFIED FEBRUARY 20, 2012)**

Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius")[1] by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection")[2] to the approval of the *Supplemental Disclosure Document Relating to Third Amended Joint Plan of Reorganization* (the "DCL Plan") *for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors* (the "Creditors' Committee"), *Oaktree Capital Management, L.P.* ("Oaktree"), *Angelo, Gordon & Co., L.P.* ("Angelo Gordon"), *and JPMorgan Chase Bank, N.A.* ("JPMorgan" and, together with the Debtors, the Creditors' Committee, Oaktree and Angelo Gordon, the "DCL Plan Proponents"), dated March 7, 2012 [ECF No. 11106] (the "DCL Supplemental Disclosure Document").

In support of this Limited Objection, Aurelius respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.　　Aurelius files this Limited Objection to the DCL Supplemental Disclosure Document because the information contained therein and the recent modifications made to the

---

[1] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes. Neither Aurelius nor any of its managed entities owe any fiduciary duties to any party in interest in these cases, nor is Aurelius or any of its managed entities an insider of Tribune Company or any of its affiliates.
[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan or DCL Supplemental Disclosure Document.

DCL Plan to address, among other things, the Court's *Opinion on Confirmation*, dated October 31, 2011 [ECF No. 10133] and the pending Allocation Disputes[3] are, in certain respects, lacking in sufficient detail in order to allow creditors to (a) obtain a comprehensive understanding of the provisions of the DCL Plan and (b) make informed elections under the DCL Plan.

2.  A disclosure statement is required to provide "adequate information," which is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Here, the DCL Supplemental Disclosure Document omits or fails to adequately address a number of issues critical to creditors' ability to establish a fully informed view of the DCL Plan and the treatment and other elections such creditors are entitled to make under the DCL Plan.

3.  Specifically, the DCL Supplemental Disclosure Document and DCL Plan fail to provide, among other things, sufficient disclosure regarding:

- the updated valuation of the Debtors' estates;

- the entitlement of the Senior Lenders and the Bridge Lenders to benefit from the Subordination Provisions (as defined below) with respect to proceeds of the Litigation Trust and the Creditors' Trust (together, the "<u>Trusts</u>") and Settlement consideration;

- the legal basis for the Debtors' agreement to pay the fees and expenses of professionals for non-estate fiduciaries and Creditors' Committee members and the best current estimate of such fees and expenses; and

---

[3] The DCL Supplemental Disclosure Document and the DCL Plan assume that all Allocation Disputes relevant to distributions will be resolved prior to the Effective Date. Indeed, during the hearing held on January 11, 2012, the Court stated as follows: "Well I'll tell you what I intend to do. I intend to do the same thing I did with the reconsideration opinion. And that is decide, in fairly short order, [the Allocation Disputes] . . . before solicitation commences. . . . Well, I intend to address those which I think need to be addressed." Jan. 11, 2012 Hr'g Tr. 37:12-16, 38:4-5). Nevertheless, the DCL Supplemental Disclosure Document and the DCL Plan should be modified to provide that appropriate reserves will be established in the event that all Allocation Disputes are not resolved by such time.

2

- documents proposed to be filed as part of the Plan Supplement, including agreements governing the operation of the Trusts.

4. Aurelius respectfully submits that the DCL Supplemental Disclosure Document should be modified to provide additional disclosure regarding the foregoing issues. Indeed, Aurelius believes that additional disclosure regarding these matters may resolve issues that would otherwise be contested in connection with the Confirmation Hearing, thereby obviating certain objections to confirmation of the DCL Plan.

### **OBJECTION**

5. The DCL Supplemental Disclosure Document should not be approved in its current form because it does not contain adequate information as is required by Bankruptcy Code section 1125. In determining whether a plan proponent has provided "adequate information" to creditors and parties in interest, a court should not consider whether the failure to disclose information would harm creditors, but whether "hypothetical reasonable investors receive such information as will enable them to evaluate for <u>themselves</u> what impact the information might have on their claims and on the outcome of the case, and to decide for themselves what course of action to take." *In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991) (emphasis in original).

6. The DCL Supplemental Disclosure Document, as currently proposed, is deficient and does not satisfy the "adequate information" requirement of Bankruptcy Code section 1125. Accordingly, the Court should require further modification of the DCL Supplemental Disclosure Document, prior to the approval thereof, to address the following issues.

**A.    <u>Updated Valuation</u>**

7.     On March 7, 2012, two days prior to the deadline to object to the DCL Supplemental Disclosure Document, the Debtors filed an updated valuation of their estates. Pursuant to the update, the Debtors have stated that "as of February 16, 2012, the Reorganized Debtors' Distributable Value is estimated at a range of $6.917 billion to $7.826 billion with an approximate mid-point of $7.372 billion. The increase in value from the Bankruptcy Court-approved valuation of $7.019 billion is principally attributable to the Debtors' continuing accrual of Distributable Cash." DCL Supplemental Disclosure Document at 20.

8.     In the prior version of the DCL Supplemental Disclosure Document filed on February 20, 2012, the Debtors stated that they were in the process of updating the valuation analysis performed by Lazard in January 2011 to account for, among other things, updated financial data and current market conditions. *See* February 20 DCL Supplemental Disclosure Document at 19-20. The updated valuation, however, does not contain any information regarding updated financial data or market conditions. Indeed, in connection with their new valuation analysis, the Debtors have not included updated projections, disclosed the amount of projected Cash on hand or provided any analysis with respect to their most valuable assets. Without this information, it is impossible to determine how the updated valuation was determined or for any creditor to perform its own check on the Debtors' new Distributable Enterprise Value.

9.     As the Court is aware, the DCL Plan provides Senior Noteholders with the option to select their form of consideration (a strip consisting of Cash, New Common Stock and New Senior Secured Term Loan or all Cash). Based on the information provided in the updated valuation, Senior Noteholders cannot make informed decisions on which form of consideration

to elect.  The provision of additional financial information is imperative to test the assertion in the DCL Supplemental Disclosure Document that if Senior Noteholders elect the strip option, they will receive a recovery 3% higher than if they elect the all Cash option (the Cash option is still based on a valuation of $6.75 billion).  Indeed, during the hearing held on March 5, 2012, counsel for the Debtors acknowledged the importance of an updated valuation, stating

> we are updating the valuation based on [the methodology approved by the Court], because people have to make elections in connection with their selection of a strip versus cash.  And what the [D]ebtors have done is taken the approach that [the Court] approved and essentially updated it with new financial data and the like . . . .  but we did feel, for purposes of allowing people to make selections, that taking the methodology that [the Court] utilized and updating it to show where we are now as opposed to before, would be something that was appropriate to do, and that's what we are prepared to do.

March 5, 2012 Hr'g Tr. at 219:21-220:1, 220:9-13.  Accordingly, the Debtors should be required to include in the DCL Supplemental Disclosure Document information that will enable Senior Noteholders to make an informed decision on which form of consideration to elect.  Specifically, the DCL Plan Proponents should provide the same form and level of disclosure as was contained in the *Joint Disclosure Statement*, dated December 15, 2010 [ECF No. 7232] (the "General Disclosure Statement"), including, but not limited to: updated financial projections by segment (including TVFood), a discussion of the valuation analyses done and methodologies used, allocations of value among their core businesses (*i.e.*, publishing, FoodNetwork, etc.), and a discussion of how DEV is split between New Common Stock, New Senior Secured Term Loan and Cash.  *See* General Disclosure Statement, Exs. E & F.

      **B.**     **Inadequate Disclosure Regarding Application of the Subordination Provisions to Senior and Bridge Lender Recoveries Under the DCL Plan**

      10.     The DCL Plan and the DCL Supplemental Disclosure Document do not contain an adequate description of the application of the subordination provisions of the PHONES Notes Indenture and the EGI-TRB LLC Note and corresponding subordination agreement (collectively,

the "Subordination Provisions") with respect to recoveries for Holders of Senior Loan Claims and Bridge Loan Claims under the DCL Plan.  Specifically, the DCL Plan provides that Holders of Class 1C (Senior Loan) Claims and Holders of Class 1D (Bridge Loan) Claims shall receive Litigation Trust Interests.  *See* DCL Plan §§ 1.1.38 (defining Class 1C Litigation Trust Interests), 1.1.40 (defining Class 1D Litigation Trust Interests).[4]  The Litigation Trust Interests entitle Holders of Senior Loan Claims and Holders of Bridge Loan Claims to a Pro Rata share of the Senior Loan Claims Net Litigation Trust Proceeds, defined as 35% of the net proceeds of the Litigation Trust Assets after accounting for the Parent GUC Trust Preference and the Trusts' Loan Preference.  *See* DCL Plan § 1.1.233.  Although the *Debtors' Responsive Statement*, dated December 10, 2010 [ECF No. 7141] includes language confirming that Holders of Class 1C (Senior Loan Claims) and 1D (Bridge Loan Claims) Litigation Trust Interests will *not* receive the benefit of contractual subordination with respect to distributions made on account of such Trust Interests, no such clarifying language is included in the DCL Plan or the DCL Supplemental Disclosure Document.  *See* Debtors' Responsive Statement at 3.  The DCL Plan and the DCL Supplemental Disclosure Document should, therefore, be modified to contain language similar to the language included in the Debtors' Responsive Statement to make it clear that Holders of Senior Loan Claims and Bridge Loan Claims are only entitled to the aforementioned 35% of the

---

[4] *See also* DCL Plan §§ 3.2.3(c) (entitling Holders of Senior Loan Claims to receive, among other things, a Pro Rata share of the Class 1C Litigation Trust Interest), 3.2.4(c) (entitling Holders of Bridge Loan Claims to receive, among other things, a Pro Rata share of the Class 1D Litigation Trust Interests), 7.15 (providing that "[t]he distributions and treatments provided to Claims and Interests under this Plan or the Allocation Dispute Protocol take into account and/or conform to the relative priority and rights of such Claims and Interests under any applicable subordination and turnover provisions," and further that, "nothing in this Plan shall be deemed to impair, diminish, eliminate or otherwise adversely affect the rights or remedies of beneficiaries . . . of any such contractual turnover and subordination provisions").

net proceeds of the Litigation Trust Assets and cannot otherwise benefit from the Subordination Provisions with respect to the remaining net recoveries from the Litigation Trust.[5]

11. Specifically, Aurelius submits that the DCL Plan should be amended to provide that:

> As part of the settlements embodied in the Debtor/Committee/Lender Plan, the Senior Lenders . . . [will] relinquish a portion of their entitlement to the proceeds of the Trusts for the benefit of Holders of Non-LBO Lender Claims against Tribune. As a result, the beneficial interests granted to Holders of Allowed Senior Noteholder Claims, PHONES Notes Claims, EGI-TRB LLC Notes Claims and electing Holders of Other Parent Claims will provide such Holders with their Pro Rata share (subject to the contractual subordination of the PHONES Notes and EGI-TRB Notes enforced only within such group) of (i) the first $90 million realized from the Trusts (with the exception of amounts allocable to the Step Two Litigation Trust Preference), and, thereafter and after repayment of the Trusts' Loan, (ii) sixty-five percent (65%) of the proceeds realized from the Trusts until payment in full of all of the foregoing claims. The remaining thirty-five percent (35%) of the Trusts' recoveries will be provided to Holders of Allowed Senior Loan Claims and Bridge Loan Claims.

*See* Debtors' Responsive Statement at 3.

12. Similarly, the DCL Plan and DCL Supplemental Disclosure Document should also be amended to clarify that Holders of Senior Loan Claims and Bridge Loan Claims are not entitled (as beneficiaries of the Subordination Provisions) to receive or retain any portion of the Settlement consideration initially distributed to Holders of PHONES Notes Claims and EGI-TRB LLC Notes Claims upon application of the Subordination Provisions to such distributions of Settlement consideration. Specifically, the DCL Plan should be amended to provide that all Settlement consideration will flow through the recovery waterfall at Tribune to non-LBO creditors, upon which Settlement amounts initially allocated to Holders of PHONES Notes

---

[5] This argument applies with equal force to the entitlement of Holders of Senior Loan Claims and Bridge Loan Claims to share in the proceeds of Creditors' Trust Assets. Specifically, the DCL Plan and DCL Supplemental Disclosure Document should be modified to clarify that Holders of Senior Loan Claims and Bridge Loan Claims are only entitled to 35% of the net proceeds of the Creditors' Trust Assets (after accounting for the Parent GUC Trust Preference and the Trusts' Loan Preference) and cannot otherwise benefit from the Subordination Provisions with respect to such remaining net recoveries from the Creditors' Trust.

Claims and EGI-TRB LLC Notes Claims will be reallocated to the beneficiaries of the Subordination Provisions (as determined by the Court in connection with resolution of the Allocation Disputes) *provided, however,* that the Holders of Senior Loan Claims and Bridge Loan Claims shall not be entitled to benefit from the Subordination Provisions as applied to Settlement consideration, and shall not be entitled to receive or retain Settlement consideration from any source. *See* DCL Plan §§ 3.2.3(c) (treatment of Senior Loan Claims), 3.3.4(c) (treatment of Bridge Loan Claims), 7.15 (Subordination).

### C. Information Regarding the Payment of Certain Fee and Expense Claims

13. The DCL Plan provides for the payment of the Fee/Expense Claims of the Senior Lenders, the Bridge Lenders and members of the Creditors' Committee. *See* DCL Plan §§ 9.1.1 (providing for the payment of Senior Lender Fee/Expense Claims), 9.1.2 (providing for the payment of Bridge Lender Fee/Expense Claims up to the aggregate amount of $7 million), 9.1.3 (providing for the payment of Creditors' Committee Fee/Expense Claims up to the aggregate amount of "$6,000,000, plus reasonable amounts incurred in connection with discovery (including deposition testimony) sought from members of the Creditors' Committee in connection with litigation related to confirmation of this Plan"). The DCL Plan Proponents should be required to disclose a concrete estimate of the amount proposed to be paid to the Senior Lenders, the Bridge Lenders and members of Creditors' Committee on account of the Fee/Expense Claims and the legal bases upon which the DCL Plan Proponents propose to pay such amounts as administrative expenses absent a showing that each such party has made a "substantial contribution," as is required by Bankruptcy Code section 503(b). Further, the procedures set forth in sections 9.1.1, 9.1.2 and 9.1.3 of the DCL Plan permit only Reorganized Tribune, the United States Trustee and the Creditors' Committee (where applicable) to object to

the payment of such Fee/Expense Claims. The DCL Plan should also be amended to provide all other parties in interest with an opportunity to review and, if appropriate, object to such fees and expenses.[6]

### D. Inappropriate Timing with Respect to Filing of the Plan Supplement

14. Aurelius respectfully submits that the DCL Plan Proponents fail to provide creditors with sufficient time to review essential exhibits to the DCL Plan that the DCL Plan Proponents state will be filed as part of the Plan Supplement, including, but not limited to, the New Senior Secured Term Loan Agreement, the Exit Facility, Litigation and Creditors' Trust Agreements and the Trusts' Loan Agreement. Pursuant to the DCL Plan, the modified Plan Supplement will be filed just seven calendar days prior to the deadline established for objecting to confirmation of the DCL Plan. *See id.* In contrast, pursuant to the *Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., and JPMorgan Chase Bank, N.A.(as Modified April 26, 2011)*, dated April 26, 2011 [ECF No. 8769] (the "Second Amended DCL Plan"), the Plan Supplement documents were to be filed fifteen calendar days prior to the deadline established for objecting to confirmation. The fifteen-day deadline should be restored such that the revised Plan Supplement will be filed no later than

---

[6] Aurelius also questions whether providing for the payment of the Senior Lenders' fees and expenses will have the effect of improperly superseding and mooting the *Motion of Law Debenture Trust Company of New York to Terminate Debtor Affiliates' Undisclosed Payment of LBO Lenders' Fees and Expenses, for an Accounting, and for Disgorgement of Past Payments*, dated October 23, 2009 [ECF No 2407] (the "Senior Lender Fees Motion"). By the Senior Lender Fees Motion, Law Debenture sought entry of an order "compelling and directing (i) "the Debtors to cause any non-debtor affiliate or subsidiary to terminate the undisclosed and unauthorized payments (the "Unauthorized Fee Payments") of professional fees and expenses to the . . . LBO Lenders and (ii) the Senior Lenders to provide an accounting of all Unauthorized Fee Payments; and (iii) the Senior Lenders to disgorge the Unauthorized Fee Payments." Senior Lender Fees Motion at 1. To date, the Court has not ruled on the Senior Lender Fees Motion. The Court heard initial arguments regarding the Senior Lender Fees Motion on December 1, 2009. The Court heard further argument on March 26, 2010, but declined to rule on the Senior Lender Fees Motion. *See* Transcript of March 26, 2010 Hearing 76:17-21. The DCL Plan should, therefore, be further modified to provide that any payment of the Senior Lenders' fees is subject, in all respects, to the resolution of the Senior Lender Fees Motion pursuant to an order of this Court.

April 13, 2012 (the "Plan Supplement Filing Deadline").[7] The additional period will ensure that parties in interest have sufficient time to review and, if appropriate, object to the documents and information filed as part of the Plan Supplement.

15.     Some of the most crucial documents to be filed in connection with the Plan Supplement are certain agreements governing the operation of the Trusts, including the Litigation Trust Agreement, the Creditors' Trust Agreement, the LT Confidentiality and Common Interest Agreement, the CT Confidentiality and Common Interest Agreement and the Trusts' Loan Agreement.[8] These documents will govern, among other things, the operation and oversight of the Litigation Trust and Creditors' Trust and, accordingly, parties in interest must be afforded ample opportunity to review and, if appropriate, request modification to such documents to ensure that their interests are adequately protected.

16.     An issue of particular concern with respect to the Trusts is the imposition of joint and several liability with respect to the Trusts' Loan Agreement. Specifically, the DCL Plan provides that, "[o]n the Effective Date, Reorganized Tribune, as lender, and the Litigation Trust and the Creditors' Trust, as borrowers, shall become parties to the Trusts' Loan Agreement, both jointly and severally liable for the full repayment of the Trusts' Loan." DCL Plan § 5.13; *see also* DCL Plan § 1.1.258 (defining the Trusts' Loan). The imposition of joint and several liability on the Trusts is inappropriate. The universe of Litigation Trust Beneficiaries is likely to be far broader than, and distinct from, the universe of Creditors' Trust Beneficiaries, if any. Indeed, upon information and belief, many beneficiaries of the Litigation Trust (including all or substantially all of the Senior Noteholders and Holders of PHONES Notes Claims) intend to opt

---

[7] April 15, 2012, the date that is fifteen days prior to the deadline for confirmation objections, is a Sunday. Accordingly, the proposed Plan Supplement Filing Deadline is April 13, 2012.
[8] *See* DCL Plan §§ 1.1.141 (defining Litigation Trust Agreement), 1.1.152 (defining the LT Confidentiality and Common Interest Agreement), 1.1.63 (defining Creditors' Trust Agreement), 1.1.69 (defining the CT Confidentiality and Common Interest Agreement), 1.1.259 (defining Trusts' Loan Agreement).

out of the Creditors' Trust. Accordingly, the Litigation Trust Beneficiaries should not bear the burden of reduced recoveries in respect of costs incurred by the Creditors' Trust (which the Litigation Trust could then be obligated to repay). Accordingly, the DCL Plan and Trusts' Loan Agreement should be modified to provide that each Trust is responsible solely for the actual costs and expenses incurred by such Trust. Absent such modification, the DCL Plan Proponents should disclose the justification for the joint and several liability.

17. While the DCL Supplemental Disclosure Document provides that all agreements pertaining to the operation of the Trusts will be filed by the Plan Supplement Filing Deadline, Aurelius is concerned, as discussed above, that such filings may not occur timely. Indeed, in connection with the Second Amended DCL Plan, the DCL Plan Proponents had committed to filing all of the foregoing documents with the Plan Supplement, but only certain of such documents were actually filed. Accordingly, to ensure that creditors have sufficient time to review and, to the extent necessary, object to the terms contained in the foregoing Trust governance documents, including the imposition of joint and several liability with respect to the Trusts Loan Agreement, Aurelius requests that any order approving the DCL Plan Proponents' solicitation documents should require that all of the Plan Supplement documents must be filed by the Plan Supplement Filing Deadline (which, as stated above, should be set no later than April 13, 2012).

## RESERVATION OF RIGHTS

18. Aurelius continues to analyze and review the DCL Plan and the related DCL Supplemental Disclosure Document. As such, this Limited Objection is submitted without prejudice to, and with a full reservation of, Aurelius's rights to supplement this Limited Objection in advance of or in connection with the hearing to consider the DCL Supplemental Disclosure Document. In addition, Aurelius reserves its rights to object to confirmation of the

DCL Plan or any other plan of reorganization proposed in these cases on any and all grounds including, without limitation, by incorporating by reference prior objections to the approval of the Settlement embodied in the DCL Plan.

**CONCLUSION**

**WHEREFORE**, for the foregoing reasons, Aurelius requests that the Court (i) condition approval of the DCL Supplemental Disclosure Document on modifications to address the issues raised herein and (ii) grant Aurelius such other and further relief as the Bankruptcy Court may deem just, proper and equitable.

Dated: March 9, 2012                                        Respectfully submitted,

| AKIN GUMP STRAUSS HAUER & FELD LLP | ASHBY & GEDDES, P.A. |
|---|---|
| Daniel H. Golden | |
| David M. Zensky | */s/  William P. Bowden* |
| Philip C. Dublin | William P. Bowden (I.D. No. 2553) |
| One Bryant Park | Amanda M. Winfree (I.D. No. 4615) |
| New York, NY  10036 | Leigh-Anne M. Raport (I.D. No. 5055) |
| (212) 872-1000 | 500 Delaware Avenue, P.O. Box 1150 |
| | Wilmington, DE  19899 |
| | (302) 654-1888 |

*Counsel for Aurelius Capital Management, LP*