```
                   IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE

IN RE:                          )   Case No. 08-13141 (KJC)
                                )   (Jointly Administered)
                                )
TRIBUNE COMPANY, et al.,        )   Chapter 11

                                )   Courtroom 5
                                )   824 Market Street
            Debtors.            )   Wilmington, Delaware
                                )
                                )   March 6, 2012
                                )   9:30 a.m.


                   TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:
For Debtors:               Sidley Austin, LLP
                           BY: JAMES BENDERNAGEL, ESQ.
                           One South Dearborn
                           Chicago, IL  60603
                           (312) 853-7000

                           BY: RONALD S. FLAGG, ESQ.
                           1501 K Street, NW
                           Washington, DC  20005
                           (202) 736-8000

                           BY: KEVIN T. LANTRY, ESQ.
                           555 West Fifth Street
                           Los Angeles, CA  90013
                           (213) 896-6000

                           Cole, Schotz, Meisel, Forman
                           & Leonard, P.A.
                           BY: NORMAN PERNICK, ESQ.
                           500 Delaware Avenue, Suite 410
                           Wilmington, DE  19801
                           (302) 652-3131

ECRO:                      AL LUGANO

Transcription Service:     DIAZ DATA SERVICES
                           331 Schuylkill Street
                           Harrisburg, Pennsylvania 17110
                           (717) 233-6664
                           www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
APPEARANCES:
(Continued)

For Wilmington Trust:        Brown Rudnick
                             BY: MARTIN S. SIEGEL, ESQ.
                             BY: ROBERT STARK, ESQ.
                             BY: GARY NOVOD, ESQ.
                             7 Times Square #47
                             New York, NY  10036-6536
                             (212) 209-4800

For Aurelius Capital
Management:                  Akin Gump Strauss Hauer & Feld, LLP
                             BY: DAVID ZENSKY, ESQ.
                             BY: DANIEL GOLDEN, ESQ.
                             One Bryant Park
                             New York, NY  10036-6745
                             (212) 872-1000

For JP Morgan:               Richards Layton & Finger
                             BY: DREW SLOAN, ESQ.
                             One Rodney Square
                             920 North King Street
                             Wilmington, DE  19801
                             (302) 651-7700

                             Davis Polk & WARDWELL,
                             BY: ELI VONNEGUT, ESQ.
                             450 Lexington Avenue
                             New York, NY  10017
                             (212) 450-4331

For Merrill Lynch:           Potter Anderson Corroon, LLP
                             BY: STEPHEN MCNEILL, ESQ.
                             BY: LAURIE SELBER SILVERSTEIN, ESQ.
                             Hercules Plaza
                             1313 North Market Street, 6$^{th}$ Floor
                             Wilmington, DE  19801
                             (302) 984-6033

For DBTCA:                   McCarter & English
                             BY: KATHARINE MAYER, ESQ.
                             BY: DAVID ADLER, ESQ.
                             405 North King Street, 8$^{th}$ Floor
                             Wilmington, DE  19801
```

```
1    APPEARANCES:
2    (Continued)
3
4    For Credit Agreement
5    Lenders:                    Young Conaway Stargatt & Taylor
6                                BY: M. BLAKE CLEARY, ESQ.
7                                Rodney Square
8                                1000 North King Street
9                                Wilmington, DE  19801
10                               (302) 571-3287
11
12                               Dewey & Lebeouf
13                               BY: JAMES JOHNSTON, ESQ.
14                               BY: JOSHUA MESTER, ESQ.
15                               333 South Grand Ave., Ste. 2600
16                               Los Angeles, CA  90071-1530
17                               (213) 621-6030
18
19   For TM Retirees:            Teitelbaum & Baskin, LLP
20                               BY: JAY TEITELBAUM, ESQ.
21                               3 Barker Avenue, Third Floor
22                               White Plains, NY 10601
23                               (914) 437-7670
24
25                               Hiller & Arban, LLC
26                               BY: BRIAN ARBAN, ESQ.
27                               1500 North French St., 2nd Floor
28                               Wilmington, DE  19801'
29                               (302) 442-7676
30
31   For EGI-TRB:                Jenner & Block
32                               BY: DAVID BRADFORD, ESQ.
33                               BY: DAVID HIXSON, ESQ.
34                               353 N. Clark Street
35                               Chicago, IL  60654-3456
36                               (312) 923-2975
37   TELEPHONIC APPEARANCES:
38
39   For Former Directors
40   And Officers:               Grippo & Elden, LLC
41                               BY: GEORGE R. DOUGHERTY, ESQ.
42                                (312) 704-7700
43
44   For Davidson Kempner:       Schulte Roth & Zabel, LLP
45                               BY: KAREN S. PARK, ESQ.
46                               (212) 756-2036
47
48
49
50
```

```
 1   TELEPHONIC APPEARANCES:
 2   (Continued)
 3
 4   For Official Committee
 5   of Unsecured Creditors:   Chadbourne & Parke, LLP
 6                             BY: DOUGLAS DEUTSCH, ESQ.
 7                             BY: HOWARD SEIFE, ESQ.
 8                             BY: MARC ASHLEY, ESQ.
 9                             BY: DAVID LEMAY, ESQ.
10                             BY: THOMAS MCCORMACK, ESQ.
11                             BY: MARC ROITMAN, ESQ.
12                             (212) 408-5100
13
14                             Zuckerman Spaeder, LLP
15                             BY: GRAEME BUSH, ESQ.
16                             BY: ANDREW CARIDAS, ESQ.
17                             BY: ANDREW GOLDFARB, ESQ.
18                             BY: JAMES SOTTILE, ESQ.
19                             (202) 778-1800
20
21   For Debtor, Tribune:      Sidley Austin
22                             BY: KERRIANN MILLS, ESQ.
23                             BY: JILLIAN LUDWIG, ESQ.
24                             BY: BRYAN KRAKAUER, ESQ.
25                             BY: DAVID MILES, ESQ.
26                             BY: BRETT MYRICK, ESQ.
27                             BY: JEFFREY STEEN ESQ.
28                             (312) 853-7030
29
30                             Tribune
31                             BY: DAVE ELDERSVELD
32                             (312) 222-4707
33                             BY: GARY WEITMAN
34                             (312) 222-3394
35
36   For Bank of America:      Bank of America
37                             BY: ESTER CHUNG, ESQ.
38                             (646) 855-6705
39
40   For The Seaport Group:    Seaport Group
41                             BY: KENNETH SMALLEY, ESQ.
42                             (212) 616-7763
43
44   For SuttonBrook
45   Capital Management:       SuttonBrook Capital Management LP
46                             BY: CAROL L. BALE
47                             (212) 588-6640
48
49
```

```
1   TELEPHONIC APPEARANCES:
2   (Continued)
3
4   For Royal Bank of
5   Scotland:                    Royal Bank of Scotland
6                                BY: COURTNEY ROGERS
7                                (203) 897-4815
8
9                                Cadwalder Wickersham & Taft
10                               BY: MICHELLE MAMAN, ESQ.
11                               (212) 504-6000
12
13  For Special Committee
14  Of the Board of
15  Directors:                   Jones Day
16                               BY: BRAD ERENS, ESQ.
17                               (312) 269-4050
18
19  For EGI-TRB:                 Jenner & Block, LLP
20                               BY: ANDREW VAIL, ESQ.
21                               (312) 840-8688
22                               BY: CATHERINE STEEGE, ESQ.
23                               (312) 923-2952
24
25  For Aurelius Capital
26  Management:                  Aurelius Capital Management, LP
27                               BY: MATTHEW A. ZLOTO, ESQ.
28                               (646) 445-6518
29
30  For Matthew Frank:           Alvarez & Marsal, LLC
31                               BY: MATTHEW FRANK, ESQ.
32                               (312) 371-9955
33
34  For Angelo Gordon:           Wilmer Cutler Pickering Hale & Dorr
35                               BY: ANDREW N. GOLDMAN, ESQ.
36                               (212) 230-8836
37
38  For Barclays:                Barclays Capital, Inc.
39                               BY: OLIVIA MAURO, ESQ.
40                               (212) 412-6773
41
42                               Latham & Watkins
43                               BY: DAVID HAMMERMAN, ESQ.
44                               (212) 906-1398
45
46  For Law Debenture:           Kasowitz Benson Torres & Friedman
47                               BY: CHRISTINE MONTENEGRO, ESQ.
48                               (212) 506-1715
49
```

```
1  TELEPHONIC APPEARANCES:
2  (Continued)
3
4  For Merrill Lynch:          Kaye Scholer, LLP
5                              BY: JANE PARVER, ESQ.
6                              (212) 836-8510
7                              BY: MADLYN G. PRIMOFF, ESQ.
8                              (212) 836-7042
9
10
11 For Citigroup:             Paul Weiss Rifkind Wharton &
12                             Garrison
13                             BY: SHANNON PENNOCK, ESQ.
14                             (212) 373-3000
15
16
17 For Eric Bilmes:           HBK Capital Management
18                             BY: ERIC BILMES
19                             (212) 588-5115
20 For Onex Credit
21 Partners:                  Onex Credit Partners
22                             BY: STUART KOVENSKY
23                             (201) 541-2121
24
25 For JP Morgan Chase:       Davis Polk & Wardwell, LLP
26                             BY: ANGELA LIBBY, ESQ.
27                             (212) 450-4433
28
29 For Davidson & Kempner:    DK Partners
30                             BY: EPHRAIM DIAMOND
31                             (646) 282-5841
32
33 For Deustche Bank:         McCarter & English
34                             BY: RODNEY GEOGHAN, ESQ.
35                             (973) 639-7908
36
37 For Chicago Fundamental
38 Investment Partners:       Chicago Fundamental Investment
39                             Partners
40                             BY: PETER GRUSZKA
41                             (312) 416-4215
42
43 For Wilmington Trust:      Brown Rudnick, LLP
44                             BY; ELNAZ ZARRINI, ESQ.
45                             (212) 209-4929
46
47
48
49
50
```

1  WILMINGTON, DELAWARE, WEDNESDAY, MARCH 6, 2012 9:39 A.M.

2              THE COURT:  Good morning everyone.

3              COUNSEL:  Good morning, Your Honor.

4              MR. BENDERNAGEL:  Good morning, Your Honor, Jim

5  Bendernagel for the debtors.  Before we start, there's at

6  least one procedural matter that I wanted to address, Your

7  Honor, if I could?

8              THE COURT:  All right.  Go ahead.

9              MR. BENDERNAGEL:  Yesterday in marking the

10  exhibits and entering them into evidence, I failed to note

11  with respect to a handful of documents relating to the non-

12  Teitelbaum Retirees that those documents, and this is

13  denoted on the exhibit list, were offered under seal because

14  they contain personal information.  The debtor took that

15  precaution simply because we didn't know what else to do

16  with respect to those documents in the sense that those

17  individuals are not here.  And rather than just publish

18  them, we put them under seal.  It's Exhibits 46, 47, 50, 51,

19  56 --

20              THE COURT:  Mr. Bendernagel, start again and --

21              MR. BENDERNAGEL:  Okay.

22              THE COURT:  -- go slowly if you would.

23              MR. BENDERNAGEL:  The exhibit numbers are 46, 47,

24  50, 51, 56, 60, 61, 63, and 64.  They're noted that way on

25  the exhibit list, and nobody's objected to that treatment,

1  but I wanted to just make a note on the record in that

2  regard and explain why we did it that way.

3             THE COURT:  Okay.  Well, let me ask for the

4  record if anyone has any objection to the Court accepting

5  those exhibits under seal.

6                      (No audible response)

7             THE COURT:  I hear no objection.  I'll order from

8  the bench that they are accepted on the condition that they

9  are under seal and shall remain so until further Order of

10  the Court.  Okay.

11  (Exhibits 46, 47, 50, 51, 56, 60, 63 and 64 are admitted

12  into evidence under seal.)

13             MR. BENDERNAGEL:  All right.  Unless there's

14  something else that the Court wants to discuss, we're ready

15  to move on to the next issue.

16             THE COURT:  No, I'll just say if you have a clean

17  copy of the proposed confirmation schedule Order, I'm happy

18  to sign it.

19             MR. BENDERNAGEL:  All right.  We'll get that to

20  you at the next --

21             THE COURT:  All right.

22             MR. BENDERNAGEL:  Do we have one?  We'll give

23  that to you at the break, Your Honor.

24             THE COURT:  Okay.

25             MR. BENDERNAGEL:  The next issue is the one we

1    took -- are taking out of order.  It's the unfair

2    discrimination issue; called other things by other people,

3    but it's issue number six.  The binder that is relevant to

4    this particular issue is binder six.  Binder six contains

5    Exhibits 84 to 90, and it's my understanding that there are

6    no objections to these coming into evidence and, as a

7    consequence, I'd offer 84 to 90 at this point in time.

8              THE COURT:  Is there any objection to the

9    admission of Exhibits 84 through 90?

10                    (No audible response)

11             THE COURT:  I hear none.  They're admitted

12   without objection.

13   (Exhibits 84 through 90 are admitted into evidence.)

14             MR. BENDERNAGEL:  With that, Your Honor, Mr.

15   LeMay, I think, is the first person to speak on this issue.

16             THE COURT:  All right.

17             MR. LEMAY:  Your Honor, good morning.  David

18   LeMay from Chadbourne & Parke in New York City, for the

19   Official Committee of Unsecured Creditors, and for the

20   purpose of this argument, since it relates directly to the

21   Third Amended Debtor/Creditor Lender Plan, also for the

22   Proponents of that Plan.  Your Honor, after a full day

23   yesterday of contract interpretation, we are here now to

24   talk about two issues that arise under the Bankruptcy Code

25   itself, and in particular, arise under the confirmation

1  standards of the Bankruptcy Code.

2          The first issue, I think, can be articulated as

3  follows:  The Senior Noteholders contend that there -- that

4  Sections 510(a) and the confirmation standards of Section

5  1129 preclude the current DCL Plan from being confirmed

6  because it interferes with their contractual rights, which

7  they would say are protected in a special way under Section

8  510(a) and that, in effect, Subordination Agreements are

9  special.

10          The second argument is the unfair discrimination

11 argument, and so I believe Mr. Rosner to be right in that

12 there are two different questions at issue, one of which is

13 the unfair discrimination issue, the other -- the first one

14 that I touched upon.  I think I will begin as a preacher

15 would begin by expounding the section of the Bankruptcy Code

16 that is at issue here, not only because it is the governing

17 statutory law, but because I believe it will demolish and

18 explode the first argument forever and put it to bed, and

19 will also give the Court an intellectual and analytical

20 framework, later developed by the case law that I'll talk

21 about a bit for evaluating unfair discrimination.  And so if

22 you'll indulge me, Your Honor, let me read Section

23 1129(b)(1).  I do think it's important.  We probably all

24 know it, but it's good to start.  So Section 1129(b)(1) of

25 the Bankruptcy Code tells us that, "notwithstanding Section

1   510(a) of this Title, if all of the applicable requirements

2   of subsection (a) of this section, other than paragraph

3   eight, are met with respect to a Plan, the Court, on

4   request of the Proponent of the Plan, shall confirm the

5   Plan, notwithstanding the requirements of such paragraph if

6   the Plan does not discriminate unfairly and is fair and

7   equitable with respect to each class of claims or interests

8   that is impaired under and has not accepted the Plan", and

9   that's the end of the quote.  I think there are two things

10  that I'd like to stress about the statutory language.  One,

11  the introductory clause, "notwithstanding Section 510(a)";

12  and second, the word "unfairly" that modifies and bounds the

13  discrimination requirement.

14          Now, Wilmington Trust and the Senior Noteholder

15  Trustees argue that Section 510(a), on its face, precludes

16  our Plan from being confirmed because Section 510(a)

17  requires that Subordination Agreements be respected.  Law

18  Debenture, in its paper, says that Section 510(a) "does not

19  permit part of the turnover to be diverted or gifted to

20  claims that do not qualify."  So they say Section 510(a) is

21  an impediment.  Wilmington Trust says that Section 1129(a)

22  must be complied with.  The Plan must comply with Section

23  1129(a)(1) and therefore, because Section 1129(a)(1) imports

24  Section 510, there is a problem because Section 510 makes

25  subordination rights special.  And I think I want to show

1   Your Honor that, indeed, Subordination Agreements are

2   special in 1129(b) jurisprudence.  And they are not special

3   because they are specially protected.  They are special

4   because Congress specifically wrote in a notwithstanding

5   clause that specifically permits the Plan to be confirmed

6   notwithstanding those Subordination Agreements.  By

7   including the phrase "notwithstanding Section 510(a)" at the

8   start of the section, Congress specifically authorized

9   confirmation of Plans of reorganization in a cram-down

10  setting that deviate from Subordination Agreements as long

11  as they are fair and equitable and don't discriminate

12  unfairly.  I'll note that the fair and equitable standard

13  isn't in front of us today.  We will come to unfair

14  discrimination.  So what that means is that a Court, on

15  cram-down, can specifically -- has a specific statutory

16  authority to confirm a Plan, notwithstanding its deviation

17  from a Subordination Agreement.  And how do I know that?  I

18  know that because a case called *In Re: TCI Holdings -- TCI 2*

19  *Holdings* out of the District of New Jersey, specifically so

20  holds -- it's a directly on-point holding.  Again, I'm going

21  to read a little bit, and I promise I'll stop plodding, but

22  I think these are important building blocks.  So the Court

23  in that case says, and I'm quoting, "the term

24  notwithstanding is one of the most frequently used and

25  misunderstood words in the legal vocabulary."  The only

1  logical reading of the term notwithstanding in Section

2  1129(b)(1) seems to be, even though Section 510(a) requires

3  the enforceability of Subordination -- of a Subordination

4  Agreement in a bankruptcy case, to the same extent that that

5  agreement is enforceable under non-bankruptcy law, if a non-

6  consensual Plan meets all the -- all of the Section 1129(a)

7  and (b) requirements, the Court "shall confirm the Plan."

8  The phrase "notwithstanding Section 510(a) of this Title,"

9  removes Section 510(a) from the scope of 1129(a)(1), which

10  requires compliance with the applicable provisions of this

11  Title.

12         There's also a case called -- cited in our paper

13  called *Croatan*.  The rationale is exactly the same.  It is

14  dicta.  It is not, unlike *TCI 2*, an on-point holding.  But

15  it says, a Court, and I'm quoting now, "A Court can confirm

16  a Plan" -- or may confirm a -- "can confirm a Plan", sorry,

17  "which is inconsistent with the terms of a Subordination

18  Agreement as long as it is fair and equitable and does not

19  discriminate unfairly."  We found one case in -- we

20  mentioned it in our papers, that goes the other way.  We

21  think it's wrongly decided.  It certainly contains no

22  analysis.  Our opposition must not think that is a

23  worthwhile case either because they didn't put it in their

24  papers.  So they must not be relying on it.  So the nutshell

25  of it is that Section -- in the 1129(b) cram-down context,

1  you no longer need to think of Section 510(a) and its

2  protection of Subordination Agreements as a "applicable

3  provision" that stands in the way of confirmation.

4        Now, the argument on this from the other side

5  really first gelled in the replies.  The initial papers sort

6  of adumbrated a contractual objection, but the sort of 510

7  nexus finally kind of gelled when we got the reply papers on

8  Friday.  And so after the replies came in, we did a little

9  bit of further digging and that led us to a chain of cases.

10 First, from Judge Sontchi's Court here in the District of

11 Delaware, later affirmed at the District Court level and

12 then affirmed, indeed, again by a unanimous panel of the

13 Third Circuit.  That case is called *Goody's Family Clothing,*

14 and since it's not mentioned in the papers, I'd like to give

15 the cites.  The -- sorry.  The Bankruptcy Court decision by

16 Judge Sontchi is reported at 392 Bankruptcy Reporter 604.

17 The jump site is at 606.  It's from 2008 from the Bankruptcy

18 Court here in Delaware.  It was affirmed at 401 Bankruptcy

19 Reporter 656, and then affirmed again at 610 Fed.3d 812 in

20 2010 by the Third Circuit.  That was a case involving

21 interplay between Section 365(d)(3) and Section 503(b).  So

22 it was not a case of a cram-down.

23        THE COURT:  It was a stub rent case.

24        MR. LEMAY:  It is a stub rent case and it's a

25 case about what the word notwithstanding means.  That was

1  the play in that case, or a big part of the play on this

2  issue.

3           Judge Sontchi, at the Bankruptcy Court level,

4  said that what notwithstanding means is, put another way,

5  Section 365(d)(3) effectively reads forget what Section

6  503(b) says.  That was the statutory construction there.

7  Section 365(d)(3) says notwithstanding Section 503(b).  And

8  so what Judge Sontchi wrote was that notwithstanding -- and

9  that's always been my understanding of the term, says for

10 these purposes, you don't think about that other statute.

11 The District Judge said that Judge Sontchi's decision was

12 thoughtful, and that was adopted by the District Court and

13 affirmed by the Third Circuit Court of Appeals.  Judge

14 Ambro, writing for a unanimous panel, and here's what he had

15 to say about the word notwithstanding.  "The key word here

16 is notwithstanding.  It means in spite of or without

17 prevention or obstruction from or by.  In this context,

18 Section 365(d)(3) is best understood as an exception to the

19 general procedures of Section 503(b)(1) that ordinarily

20 apply."  So that's the case about Section 365; not a case

21 about Section 1129, but the key word, notwithstanding, is

22 the same.  And applying the Third Circuit's holding and its

23 reasoning and its construction of notwithstanding, I think

24 the only clear reading that we can take away, or the only

25 reading we can take away of Section 1129(b) when it says

1  notwithstanding Section 510(a), is that, for these purposes,

2  Section 510(a) doesn't count.  That case has to be given

3  meaning.  It's in the statute.  Again, the Third Circuit, in

4  the *Philadelphia Newspapers*, makes the point that a specific

5  piece of the statute always governs over more, a more

6  general one.  Wilmington Trust has said in its papers that

7  Section 510(a) and Section 1129(a) preclude confirmation.

8  But I think that the notwithstanding language in 1129(b)

9  clearly has to be read in that regard.

10         THE COURT:  Well, let's see what the Supreme

11 Court has to say about the issue in *Philadelphia Newspapers*.

12         MR. LEMAY:  We will see what the Supreme Court

13 has to say, and that is not a case about notwithstanding,

14 which I think is now, at least in this Circuit, you know,

15 finally disposed of, and indeed, everything I'm saying is,

16 in my view, entirely consistent with the plain grammatical

17 reading of the statute.  I don't find anything tremendously

18 unusual about what the Courts have to say there, not that

19 it's my place to sit in judgment of the Courts.

20         THE COURT:  Well, nor am I to sit in judgment of

21 the Supreme Court.  As I view that fight on one level, it's

22 just a battle of statutory -- rules of statutory

23 construction, but we'll see --

24         MR. LEMAY:  You're talking about *Philadelphia*

25 *Newspapers*?

1          THE COURT:  Let's see how it's --

2          MR. LEMAY:  Right.

3          THE COURT:  well, and the case that was

4  actually --

5          MR. LEMAY:  Right.

6          THE COURT:  -- actually gets there.  We'll see

7  how the Supreme Court frames that.  It should be

8  interesting.

9          MR. LEMAY:  Absolutely, and I don't think it's

10 really relevant for my argument today except for the pretty

11 non-controversial position about specific clauses and

12 general clauses and their interrelationship.

13         THE COURT:  Yes.

14         MR. LEMAY:  So in a nutshell, we have to give

15 effect to every piece of the statute.  And the reading

16 that's advocated by the other side of Section 510(a) can't

17 be right because it would take the "notwithstanding Section

18 510(a)" language and make it entirely meaningless.  So I

19 think I've established that that notwithstanding language

20 clearly allows the Court to confirm the Plan even though it

21 deviates in some way from a subordination provision.  But

22 what kind of deviation could we be talking about here?  What

23 kind of deviation did Congress have in mind?  Would it be a

24 deviation permitting value to flow to, for example, the

25 junior creditors?  The subordinated creditors?  No, that

1    can't be right.  The fair and equitable rule stops that one

2    right there.  The fair and equitable rule, by importing the

3    absolute priority rule in a cram-down setting, tells us that

4    not a dime can go to the subordinated creditors.  So if the

5    notwithstanding Section 510(a) section allows deviation from

6    Subordination Agreements, but if it does not allow deviation

7    from Subordination Agreements in favor of subordinated

8    creditors, who then could it be allowing that deviation in

9    favor of?  And by process of elimination, I reach the

10   conclusion that the only group, the only constituency that

11   could be the beneficiary of that statutory language are

12   unsubordinated creditors who do not themselves have the

13   benefit of subordination.  I don't find that that conclusion

14   is inequitable.  It certainly doesn't feel wrong, to use the

15   term that Wilmington Trust said in its reply brief, because

16   there's a checkpoint, and that is the Bankruptcy Code only

17   allows this kind of confirmation if it's found to be not

18   unfairly discriminatory, and I'll talk a little bit about

19   unfair discrimination.

20              Before I do that, I think the -- the other thing

21   I want to mention is that it's advocated in the opposing

22   papers that Section 510(a) also supports and establishes the

23   methodology for establishing the amount of the alleged

24   unfair discrimination.  They say that notwithstanding 510(a)

25   means that the Court should evaluate the amount of

1 discrimination; and now I'm going to quote just for a line

2 from the Senior Noteholders' brief, "Even before giving

3 effect to contractual subordination rights", but we've just

4 seen notwithstanding doesn't mean even before; it means in

5 spite of.  And, for that reason, we think that the statute

6 completely disposes the argument that Section 510(a) makes

7 Subordination Agreements untouchable in bankruptcy.  And it

8 also will inform; and I'll get to this in a moment, our

9 conversation about unfair discrimination.

10         Let me move now to unfair discrimination.  We've

11 both written a lot of briefs on that.  The first thing I

12 guess that I would point out to the Court is that you heard

13 a lot of argument yesterday on whether various parties are

14 or are not contractually entitled to the benefit of the

15 subordination provisions in the PHONES Indenture.  It goes

16 without saying that, to the extent that either of those

17 parties prevails on their argument, either of the parties

18 seeking Senior creditor status, to the extent either of them

19 prevails on that argument, the amount of supposed

20 discrimination, if we can call it that, will go down dollar

21 for dollar.  And that's because if Mr. Johnston is correct

22 in his assertions, every dollar in his -- of his Swap claim

23 is Senior indebtedness and is perfectly entitled by right to

24 be treated as Senior indebtedness.  Likewise, if Mr.

25 Teitelbaum is right in his arguments, every dollar of his

1   client's claim is entitled by right to be treated as Senior

2   indebtedness and there cannot be any even conversation about

3   the unfairness of that.  Now, we don't know the answer to

4   that.  Your Honor has heard arguments.  What I'm going to

5   set out to show is that, no matter what happens with respect

6   to those disputed issues and no matter what happens with

7   respect to the other sort of variable here, which is whether

8   you allow the PHONES in the high or low amount, that no

9   matter what happens on any of those, the level of

10  discrimination, if it be called discrimination at all, is

11  minor, immaterial, and does not rise to the level of unfair

12  discrimination.  But if Your Honor really wanted to sort of

13  resolve this based on actual numbers, as opposed to a series

14  of possible hypotheticals, what you could do, of course, is

15  basically wait and, once you've resolved in your own mind

16  the issues you heard yesterday, then you will be able to

17  know exactly what the financial impact of that is.  And I've

18  got a demonstrative that will enable us to walk through that

19  a little bit.

20           Section 1129(b) requires that a Plan not

21  discriminate unfairly.  Congress could have said that a Plan

22  not discriminate at all.  It didn't say that.  It added the

23  word unfairly.  Congress absolutely knew how to write an

24  absolute rule when it wanted to.  The absolute priority rule

25  is an absolute rule.  The absolute priority rule doesn't say

1  that you can let value pass to junior creditors on cram-down

2  as long as it's fair or not unfair.  It just says you can't

3  do it.  Likewise, the best interest of creditor's test

4  doesn't say that you can give somebody an outcome worse than

5  Chapter 7 liquidation as long as it's fair.  It just says

6  you can't do that at all.

7          THE COURT:  Although as it turns out, the best

8  interest test is a little more absolute than the absolute

9  priority rule perhaps given the judicially developed

10  corollary which gets, you know, considered from time to

11  time.

12          MR. LEMAY:  Fair enough.  But both of them are a

13  lot more absolute than the unfair discrimination rule which,

14  on its face, builds in this concept of unfairness and, thus,

15  puts in front of Your Honor the exercise of judicial -- the

16  judicial function of finding out whether a particular

17  discrimination, if it be discrimination, is fair or unfair.

18  Now, the Noteholders have advocated a very mechanical

19  approach that would require a finding of unfair

20  discrimination any time a Plan treats two classes equally

21  and one class is entitled to the benefit of contractual

22  subordination and the other isn't.  That approach simply

23  reads the word unfairly out of the Code, and it's there for

24  a reason.  The confirmation opinion made -- I think Your

25  Honor made this point for us.  You told us that minor or

1   immaterial differences in Plan treatment do not rise to the

2   level of unfair discrimination and, in fact, the opinion

3   actually emphasized the word unfair.  Cases, including a

4   case called *Aztech*, which I think is cited by both parties,

5   certainly by us, have criticized the mechanical approach

6   because it -- the *Aztech* case notes that it would take the

7   word unfair and extract it from the statute.  And that's why

8   Courts and commentators have looked at cases, the couple of

9   cases that have applied that mechanical approach, and said

10  that they're wrong.

11          So what's the response from the Senior

12  Noteholders?  The response from the Senior Noteholders is

13  well, the legislative history is to the contrary.  And they

14  tell us that the legislative history of Section 1129

15  absolutely demonstrates that we can't do what we want to do.

16  And in their briefs, they say that Congress stated that or

17  Congress compared that, but Congress didn't do anything.

18  Legislative history isn't the law.  We all know this.  We've

19  cited, in our cases, a couple of opinions from the Supreme

20  Court.  I'm not going to give you the long quote from the

21  *Exxon Mobile v. Allapattah* case, which is Justice Kennedy

22  writing for the Court, basically making the point that

23  legislative history isn't subject to the checks and balances

24  under Article I of the Constitution that a law is and is

25  susceptible to manipulation.  Justice Scalia is probably the

1   most famous anti-legislative history Judge on the -- Justice

2   on the current Supreme Court.  We chose the *Exxon Mobile*

3   case because it emanates and was written by Justice Kennedy.

4   So I don't think it would be characterized as a

5   idiosyncratic view of that particular Justice.  And, in any

6   event, we've also cited a couple of Third Circuit cases that

7   show that legislative history is really not a reliable

8   guide, in general, to an outcome.

9           This particular legislative history is even

10  worse.  This legislative history really is of not much value

11  at all I think and has been characterized by such.  Then

12  Professor, now Bankruptcy Judge Markell, referred to this

13  bit of legislative history; that being the one that's cited

14  in the papers and was also argued I guess at the original

15  confirmation hearing.  Professor Markell called it

16  roundabout, almost otiose, or alternatively pronounced

17  otiose, O-T-I-O-S-E.  I had no idea what that word meant,

18  and my colleagues and I went off and spent some time on

19  Sunday evening researching its meaning and also its

20  pronunciation.  And what it means is not of any practical

21  help, not useful.  Professor Markell calls the legislative

22  history in question -- also he refers to it as "more

23  confusing than eliminating."  The Court, in *Armstrong*, noted

24  that the legislative history does not provide any guidance

25  to the interpretation of 1129.  So I think, both at the

1    general and the specific level, the legislative history that

2    forms the sole centerpiece of the other side's argument,

3    because they don't cite any cases that support their

4    proposition, is very, very suspect.  But nevertheless, being

5    analytically minded, let's run through the example in the

6    legislative history that they cite and see what happens on a

7    kind of numerical basis and what maybe we can draw from

8    that.  So if you'd actually apply the legislative history of

9    Section 1129 and the example that's cited in that history,

10   you get an interesting result.  In the long block quote that

11   the Senior Noteholders included in their opening brief, they

12   gave an example of unfair discrimination, which they cited

13   was a virtual mirror of this Plan, and they say that in that

14   example and this is what the House report says.  The Senior

15   debt receives 25 and the trade debt receives 15.  There was

16   also a class of subordinated debt.  The House report stated

17   that unfair discrimination arises in that example; and I'm

18   going to quote a moment, "from the fact that the Senior debt

19   is entitled to share on a two to one basis with the trade

20   debt."  In other words, the House report concluded that

21   unfair discrimination arose because the Senior debt was

22   getting 25 but should have gotten 30.  In our reply briefs,

23   both the Committee and the Senior Noteholders calculated the

24   percentage discrimination effect of this illustration, and

25   shockingly, we agreed.  We both came out with the conclusion

1   that the percentage harm to the Senior debt was 20 percent.

2   So we reached the same formulation of -- or quantification

3   of harm in that example and the House report concluded that

4   that level of discrimination would be unfair.  Now, at a 20

5   percent harm threshold; and I'll talk in a moment about how

6   we calculate that harm, that admittedly is a more stringent

7   harm threshold than, for example, the *Great Bay* case would

8   suggest.  *Great Bay* said that cases of unfair discrimination

9   generally involve a gross disparity of more than 50 percent.

10  The 20 percent example cited in the legislative history is

11  clearly more stringent than the 50 percent threshold in

12  *Great Bay*, and we think that *Great Bay* is right.  But even

13  if it isn't, that 20 percent harm is still more than twice

14  the harm of 8.5 percent, the maximum harm of 8.5 percent,

15  that would occur here if all the disputed variables are

16  resolved entirely in the Senior Noteholders' favor.  I'll

17  have a demonstrative in a minute that walks through that.

18  But as we're walking through that demonstrative, what I

19  would like the Court to keep in mind is that the harm in the

20  House report's illustration actually is about twice as bad,

21  or more than twice as bad as any conceivable outcome that

22  could happen here.

23          The legislative history doesn't end with the long

24  block quote that the Senior Noteholders quoted.  It ends

25  with the proposition or the statement; and I'm quoting again

1  from the House report, "that the criterion of unfair

2  discrimination is not derived from the fair and equitable

3  rule or from the best interest of creditors test; rather, it

4  preserves just treatment of a dissenting class from the

5  class' own perspective."  I think our analysis is entirely

6  consistent with the approach of the legislative history that

7  you look at it from the class' own perspective and I'd like

8  to talk about that a little bit with a little bit more

9  detail.

10          Mr. Bendernagel has moved into evidence, and

11  there now is in evidence an exhibit entitled ADH Exhibit 89.

12  We have a demonstrative that simply highlights a feature of

13  that document in evidence.  We are going to do it the old-

14  fashioned way; we'd like to hand it around.  If I may

15  approach, I'd like to hand a copy to you and to your Clerk,

16  Your Honor.

17          THE COURT:  You may.  Thank you.

18          MR. LEMAY:  So the demonstrative that I have, as

19  I say, is Exhibit 89 in evidence with the only change being

20  a horizontal row on each page toward the bottom highlighted

21  in gold, and I'd like to just talk about this chart a little

22  bit.  It looks extremely busy and extremely complicated.  It

23  actually is a lot simpler than you might give it credit for.

24  First, at the very end of the chart, you'll see a series of

25  eight footnotes.  Those footnotes were heavily negotiated

1  among all the parties and were essentially the caveats and

2  reservations that were necessary to get everybody to agree

3  that Exhibit 89 in evidence could indeed come in.  And so,

4  although I don't think these footnotes are necessarily

5  completely relevant to what I'm going to talk about, I

6  commend them to the Court's reading, of course, and I would

7  hope that individual parties don't feel the need to come up

8  and recite their favorite footnote for Your Honor, but if

9  they do, they will.

10             What this chart shows is, essentially, it looks

11  at what would happen in various settings if allocation of

12  proceeds were given purely in accordance with contractual

13  seniority and it compares those to what would happen under

14  the Plan that's before you.  So starting from the left, the

15  first vertical column is entitled Plan, and that basically

16  shows the outcome under the Plan as it's put in front of

17  you.  And then there are a number of shaded, toward the

18  right, a number of shaded double sets of columns.  The first

19  one, entitled Only Senior Noteholders Benefit illustrates

20  what happens in -- only the Senior Noteholders were to be

21  given the benefit of these disputed allocations; in other

22  words, if Mr. Rosner prevails on all of the arguments that

23  happened yesterday.  That's also set forth in both a low and

24  high PHONES scenario; the left vertical column being the low

25  and the right vertical column being the high.  And again,

1    that way, since we don't know how Your Honor is going to

2    come out on the low/high PHONES dispute, you can see which

3    outcome would prevail, depending on how that is resolved.

4    The next block of type in green shows what happens if Mr.

5    Teitelbaum prevails on his argument that he is entitled to

6    contractual seniority.  That is what happens if he wins and

7    Mr. Johnston loses.  The next column shows what happens if

8    Mr. Johnston prevails on his claim that the Swap is entitled

9    to seniority, what happens if he wins and Mr. Teitelbaum

10   loses.  And in each case, it is shown as low and high

11   PHONES.  The final column in gray shows what happens if both

12   Messrs. Teitelbaum and Johnston have convinced Your Honor

13   that they are contractually Senior.  And so what this does

14   is it allows Your Honor, based on initial distributions

15   under the Plan, to fix, with numerical precision agreed by

16   the parties, what the dollar and percentage outcomes would

17   be.  The following three tables do the same analysis at

18   various assumed levels of Litigation Trust recoveries.  The

19   first page deals only with the initial distributions under

20   the Plan.  So if you were to assume 250 million of net

21   Litigation Trust recoveries, you would go to page two and

22   the same analysis would be repeated.  Page three would show

23   the same analysis at 500 million of net Litigation Trust

24   proceeds, and the page four at 750.  It is the same analysis

25   in each case.  And then I guess the only thing -- other

1  thing I noticed before -- note before I launch into

2  specifics is, if you want to see the outcome in dollars, you

3  would go to the second last set of horizontal columns

4  entitled Adjusted Total Recovery with a dollar sign.  If, on

5  the other hand you want to see it in terms of cents on the

6  dollar, recovery on the claim, you would go to the last set

7  of horizontal columns entitled Adjusted Total Recovery and

8  then percentage.  And so this is a pretty handy tool because

9  it allows you to look at outcomes, really factoring in all

10  of the allocation disputes that are before you and deciding

11  how it comes out both on a dollars basis and a percentage

12  basis.  I think this will be helpful to the Court.  This

13  paper, although not the highlighted version, Exhibit 89, was

14  annex to both parties' opening briefs so I don't believe

15  it's contentious.  I know we -- all parties sowed a bit of

16  confusion at the original hearing with sort of a lot of

17  numbers all over the place that we couldn't agree on.  I'm

18  happy that we've made some progress on that and I think

19  these numbers basically set forth what everybody agrees are

20  the computational outcomes.  So that's the general

21  background of the chart and I apologize for the time I took

22  with it but it is important.

23          Let's apply that here.  So let's talk about the

24  disputed allocation that's in issue here.  The Senior

25  Noteholders get, under this chart, an initial distribution

1    of 431 million.  That's comprised of three elements; their

2    natural recovery, the direct proceeds that they get from the

3    settlement, and then third, the turnover from the PHONES and

4    EGI.  The first two columns are reflected in the chart --

5    the first two components are reflected in the chart in the

6    columns labeled "Plan Prior to PHONES EGI Subordination" and

7    the Senior Noteholders receive 249 million in the actual

8    recoveries, plus direct proceeds of the settlement.  The

9    third component you have to do by subtraction.  You take the

10   431 million, which is the total recovery, subtract that 249

11   million that I just talked about and you get 182 million of

12   turnover proceeds.  Now, that 182 million is 83 percent of

13   the total possible economic benefit of turnover from the

14   PHONES and EGI.  Or putting it a different way, of the total

15   amount that could possibly be turned over by the PHONES and

16   EGI, under any circumstances, the Senior Noteholders will

17   get 83 percent of that.  So it's not an argument about what

18   happens to the total corpus of turnover; it's an argument

19   about what happens to 17 percent of the turnover and turn

20   back amounts.  That difference, or what we've called the

21   disputed allocation in our paper, amounts to about 37

22   million.

23            So you've seen in the briefs a kind of startling

24   just of position of our side saying well, this shows that

25   the maximum discrepancy is 8.5 percent and the other side's

1   showing -- or attempting to show that there is a much more

2   massive discrepancy which they calculate well over 50

3   percent.  And the way they get there is they say, in their

4   reply, that comparison of the distribution received from the

5   estate under the Plan by the two classes of the Parent

6   claims and Senior Notes prior to giving effect to the

7   Subordination Agreements is the test.  So they would say

8   that before you look at subordination agreements at all, you

9   have to look at -- compare what they would get from the

10  estate.  So they compare the recovery, not counting

11  subordination, to the total recovery that the allegedly

12  preferred class is going to get because their recovery is

13  purportedly entirely on account of their estate direct

14  distribution.  What they're really saying is that you should

15  measure the unfair discrimination not by the amount of harm

16  to the complainant class, but by the amount of benefit that

17  the supposedly favored class got.  They don't cite any cases

18  for that proposition.  I don't believe there are any.  And

19  indeed, just as a sort of natural matter, it just seems a

20  little bit churlish to focus on whether the other guy got

21  too much, as opposed to whether you got too little.  And so

22  just as a sort of start, that one doesn't feel right and I

23  don't think it is right.  But let's take a couple of

24  illustrations.  Let's take an illustration of a Plan that

25  had two classes; one class with a $3 claim; the other one

1  with a $3 million claim.  And in that illustration, let's

2  say the smaller class was given a total distribution of $3

3  instead of its $1 waterfall entitlement.  Under the Senior

4  Noteholders' formulation, that Plan would be unfairly

5  discriminatory because the discrimination would be measured

6  at 300 percent even though the total swing of the dial was

7  $2.  That can't possibly be right.  It's an absurd result.

8  I'd like to use another example from this case itself.

9  Suppose the Court were to determine that the Swap claim and

10  the Retiree claims were entitled to the benefit of the

11  contractual subordination.  Just sticking with that as a

12  hypothetical, the first number in their test would stay the

13  same.  The Senior Noteholders would still get their 19.4

14  percent recovery pre-subordination.  But now you've got the

15  Retirees and the Swap claims are in the same boat with them

16  because in this hypothetical they've won on seniority.  They

17  all get a 19.4 percent distribution before applying

18  subordination.  The second part of their test also stays the

19  same.  It's still a 33.6 recovery at the end except, in this

20  scenario, the only preferred class, the only class that

21  could have been preferred, the so-called other Parent

22  claims, the group that Mr. Bendernagel was talking about

23  yesterday.  So in that illustration, the disputed amount has

24  gone from 37 million to less than a million, but the amount

25  of discrimination, the percentage discrimination, using

1  their formula remains exactly the same.  We'd submit that

2  can't possibly be right.

3         Obviously what's happening here is, we think, the

4  selective preparation and use of a test not supported by the

5  case law that is designed to magnify the harm.  Our approach

6  to that is found in the case law.  Your Honor has read our

7  briefs.  You know that we have put a lot of weight on the

8  *Armstrong* case from the District of Delaware which applied

9  the presumptive three-part test first set forth in then

10 Professor Markell's article.  I won't recite it at length,

11 but you know that basically, the fulcrum of that is that if

12 there is a class that's dissenting of the same priority and

13 a material difference in the treatment of the two classes,

14 then a presumption of unfair discrimination arises and that

15 presumption can be rebutted.  But there are a few take-aways

16 from the *Armstrong* test.  One, if the difference is not

17 material, the issue never arises.  And two, materiality is

18 assessed from the prospective of the dissenting class, not

19 the beneficiary class.  The materiality requirement we

20 believe is very important.  It is the place where the

21 flexibility policy of the Bankruptcy Code comes into place.

22 It's important for Plan Proponents to have flexibility.

23 There's a ton of law to that effect.  That flexibility is

24 not boundless.  The way in which the need for flexibility is

25 balanced with fundamental fairness to the dissenting

1  creditor is the materiality requirement.  And, therefore, we

2  would suggest that the materiality requirement is where the

3  flex in the joints comes that would permit Plan formulators

4  to have the necessary flexibility that they need.

5          Now, I know Your Honor has mentioned to me last

6  time we argued this that the Markell test you discussed but

7  did not adopted in the *Exxon* case, and that's true.

8  Obviously, the *Armstrong* decision has intervened and a

9  number of other decisions in -- from Courts in this Circuit

10 and elsewhere have intervened.  And we think that, over

11 time, the test invited in *Armstrong* has gotten traction and

12 is a very good way to measure harm.  It can be applied with

13 logical results under any possible resolution.  And I think

14 this is where I'm just going to spend a moment on the chart,

15 and I realize I've been up here a little bit longer maybe

16 than I should be, so I'm going to try and go fast.  But

17 we've looked at our -- we've looked -- sorry.  We've cited

18 in our papers how this formulation words.  And to

19 illustrate, if a Plan provides -- let's talk about how we

20 would compute percentage harm.  If a Plan provides a class

21 with a 20 percent recovery but that in class -- but the

22 class asserts that it's entitled to $22 -- I'm sorry.  Let

23 me do that again.  If a Plan provides a class with a $20

24 recovery but the class asserts that it's entitled to 22, we

25 would call that a 10 percent percentage impact.  In other

1  words, you gross up the low number by 10 percent to get to

2  the higher number that's claimed, and in our papers, we

3  refer to that as the percentage impact.  So looking at the

4  chart, you find a few things that I think just jump off.  If

5  the Senior Noteholders and the Retirees and the Swap were

6  all entitled to the benefits of contractual subordination,

7  the Senior Noteholders' recovery would be 33.67 percent, as

8  opposed to the 33.6 percent recovery that they get under the

9  Plan.  That calculates to a .2 percent percentage impact.

10 That's the gray column.  If, on the other hand, only the

11 Swap prevails on the seniority arguments, why then the

12 Senior Noteholders would get a recovery of 34.7 percent.

13 That calculates to a 3.3 percent percentage impact.  And if

14 the Retirees prevail, but the Swap doesn't, again, the

15 Senior Noteholders would get 35.2 percent recovery and the

16 percentage impact calculates out at 4.8 percent.  And if

17 only the Senior Noteholders benefit, and this is their best

18 case, the recovery would be 36.5, or a percentage impact of

19 8.5 percent.  And that's how I get to our formulation that

20 the supposed harm to them never gets worse than 8.5 percent.

21          For time reasons, I'm not going to carry these

22 illustrations through all the Litigation Trust recoveries.

23 What you will note in doing the numbers though at the

24 Litigation -- with the Litigation Trust recoveries, at

25 various indicative levels, is that, as Litigation Trust

1   recoveries arise or increase, the alleged discrimination

2   percentage impact goes down.  The gross dollars might go up,

3   but the cases teach us that gross dollars are not important.

4   At one point in their brief, Law Debenture said that $30

5   million is, by definition, important.  That's simply a

6   meaningless statement.  It's a classic example, I would

7   submit, of question-begging.  You can't say that an amount

8   is material -- to give the quote its correct formulation, I

9   think what they said is $30 million is, by definition,

10  material.  Comparative terms, like material, can't be

11  analyzed in the abstract.  They obviously imply a context.

12  And so we believe that this percentage impact structure

13  provides the context and that the maximum amount of harm

14  measured in that way, under any scenario that could ever be

15  said to exist, is 8.5 percent.  So is 8.5 percent material?

16  I think that's the question that the Court has to answer and

17  -- because if it's not, there's no unfair discrimination.

18  To things to note I guess.  The first is that the case law

19  talks in terms of a grossly disparate treatment.  I've

20  spoken already about *Great Bay*.  *Great Bay* suggests that a

21  disparity of 50 percent or more is a hallmark of gross

22  disparity.  But even if you adopted a lower standard, say 20

23  percent, the one that comes out in the House report, which

24  we don't think is very valid to begin with, that's still a

25  lot more than anything that's going on here.  There's also a

1  case called *Unbreakable Nation* out of the Eastern District

2  of Pennsylvania.  It is not mentioned in either round of

3  briefing by the other side.  It is mentioned in both rounds

4  of briefing by us, and that's obviously because it's a

5  favorable case for us; not a very favorable one for them,

6  and I think *Unbreakable Nation* does support the proposition

7  that *Armstrong* is totally applicable and can be applied to a

8  case that proposes equal treatment of classes with unequal

9  rights.  I've been up here a long time and I don't think I'm

10 going to walk through all the facts of *Unbreakable Nation*.

11 I will commend it to Your Honor's attention it is a case

12 that clearly shows that you can apply these concepts of

13 materiality from *Armstrong,* just as we suggest, even in a

14 case where people are saying that equal distribution to

15 unequally situated types of claims can't happen.

16          The second key factor I guess I point out is that

17 we presented the 8.5 percent number as the metric for harm

18 in our first brief.  There's been no argument that that is

19 not harm -- there's been no argument that that's not the

20 harm to the dissenting class.  Instead, the argument that's

21 been made is you have to measure the benefit to the favored

22 class.  As I say, I don't find any legal basis for that and,

23 if there is one, we just haven't found it.  So for all those

24 reasons, we think that materiality can easily be decided

25 whether you adopt *Great Bay's* 50 percent threshold, in which

1    case I think our side prevails handily, or whether you adopt

2    the 20 percent figure that was indicated by the otiose

3    legislative history.  We're still talking about an amount

4    well less than that.

5            A final point, Your Honor.  Even if the

6    presumption of unfair harm were to arise, it can be

7    rebutted.  And one of the ways you can show or rebut that

8    presumption, which we don't think you're ever going to have

9    to -- we're ever going to have to do; sorry, because I don't

10   think the presumption ever arises, is by showing a

11   contribution to the settlement or to the Plan.  Here, the

12   treatment of the Retiree claims is supported by the Retiree

13   settlement.  That constitutes a contribution to the debtors'

14   reorganization.  It provides a logical and rationale basis

15   for the distribution structure.  There was a full record on

16   that.  The confirmation opinion alluded to it.  It was

17   mentioned yesterday from the podium that the Court did not

18   specifically "approve" the Retiree settlement.  I suppose

19   that's true.  The Court really wasn't asked to.  The Court

20   was asked to confirm a Plan.  And for various reasons having

21   absolutely nothing to do with the Retiree settlement, the

22   Court couldn't confirm the Plan that was in front of it at

23   that point.  But the Retiree's settlement will be approved

24   if as and when the Court confirms this Plan.  I think the

25   record on the Retiree's settlement and the Court's

1   observations remain.  And the notion that that's all just a

2   dead letter and we're going to have to start from scratch, I

3   think flies in the face of the entire way in which this

4   confirmation proceeding has been conducted.  I don't think

5   it's the case that each and every issue that Your Honor

6   thought about and wrote about is jump ball up for grabs.

7           So for all of those reasons, I think that it can

8   be shown that the Retiree settlement, being an important

9   building block of the Plan, provides the necessary, in

10  effect, support of value that would be needed even if there

11  were to be a presumption of discrimination.  And, as I say,

12  I think we're not even close to that presumption in the

13  first place.  I'm trying to skip pages here because I know

14  I've been up for a bit.

15          So the last thing I was going to mention is that,

16  on reply, we saw for the first time cited by the other side

17  a case called *Century*.  And they say that that shows that

18  the Retiree's contribution to the reorganization can't

19  suffice to rebut the presumption.  A couple things about

20  that *Century* case since it came up on reply.  That was a

21  case in which the favored class was going to get 100 percent

22  payout and the unfavored class was going to get a one

23  percent payment.  So I'd suggest, right out of the box, that

24  the difference between a case like that and a case where

25  we're talking about a maximum of 8.5 percent -- percentage

1  impact, and possibly much less, is really simply -- it's not

2  a good basis for comparison.  *Century* does not demonstrate

3  the insufficiency of anybody's contribution.  It simply says

4  that if you're trying to convince a Court to approve

5  discrimination between 100 percent payout and a one percent

6  payout, you've got a high hurdle to meet and I don't think

7  we dispute that.  Certainly, the kind of contribution that

8  is talked about here would be, in our view, sufficient to

9  rebut and overcome any presumption that might possibly arise

10 from the very minor degree of difference in Plan treatment.

11          One last point before I sit down.  The Senior

12 Noteholders, once again, couldn't resist the urge to rubbish

13 the Committee in its motivations.  There are allegations in

14 the papers of bad faith.  There is also an allegation that

15 the Committee has gone to improper lengths to intervene in

16 the creditor dispute.  The Committee, Your Honor, has

17 intervened here because the attack is an attack on the basic

18 architecture of the Plan that we are a Co-Proponent of.  We

19 brought this Plan to Your Honor; we believe it to be a fair

20 Plan; and we're prepared to defend that.  I think, as to the

21 attacks on motivation, maybe they're irresistible even at

22 this late stage in the case, but we've come a long way and

23 the Court's considered a lot, and issues of good faith and

24 fairness, again, are issues that I think the Court has

25 crossed.  And so, on those issues, unfortunately, I guess

1   we're still talking about them.  But I really would invite

2   our adversaries on that to sort of stop rummaging around in

3   the bushes and the grassy knoll and just admit that this is

4   a case where people, in good faith and with deep conviction,

5   simply disagree dramatically about the outcome.  And if Your

6   Honor has any questions, I'd be happy to take them.

7             THE COURT:  I do not.  Thank you, Mr. LeMay.

8             MR. JOHNSTON:  Good morning, Your Honor, Jim

9   Johnston, Dewey & LeBoeuf, on behalf of Oaktree Capital

10  Management.  As we did in our briefs, we join in the

11  argument made by the Committee.  I just want to make two

12  brief points specific to the Swap claim.  First, for all the

13  reasons we talked about yesterday, we don't believe there is

14  any discrimination whatsoever as between treatment of the

15  Swap claim and treatment of the Senior Notes.  In fact, if

16  you look at the demonstrative that Mr. LeMay handed up to

17  you, you'll see that in scenarios where the Swap claim is

18  entitled to contractual seniority, it actually does a little

19  worse under the Plan than it would under the natural

20  recoveries.  Secondly, and we've made this point briefly in

21  our brief and I'll just highlight it again, if you isolate

22  out the Swap claims treatment and you look at the Swap claim

23  and you make the assumption, contrary to what I argued

24  yesterday that the Swap claim isn't Senior, you'll see that

25  that does not have a material and, hence, an unfairly

1  discriminatory impact on the Senior Notes.  The chart here

2  shows, in the best case high PHONES scenario, that the

3  Senior Notes do 1.8 percentage points less or worse off,

4  treating the Swap claim as if it's Senior when it may not

5  be.  And in the low PHONES scenario it's 1.4 percentage

6  points.  For all the reasons Mr. LeMay suggested, we don't

7  think that that is unfairly discriminatory treatment.

8  That's all I have.

9           THE COURT:  Thank you.

10          MR. JOHNSTON:  Thank you.

11          MR. TEITELBAUM:  Good morning, Your Honor, Jay

12  Teitelbaum, Teitelbaum & Baskin, for the Retirees.

13  Similarly, as we did in our reply brief, we'd join in the

14  Committee's position.  Just very quickly, a couple of notes.

15  We actually put our joinder and support at point five of our

16  brief at page 23.  We actually thought it should be point

17  one because, frankly, if this Court were to agree with the

18  analysis, and even in the worst case scenario, 8.5 percent,

19  determined that is not unfair discrimination, I don't want

20  to say we wasted our time yesterday, but we could have

21  avoided some of the quality time we all spent together

22  yesterday.  If the Court --

23          THE COURT:  Oh, it all sounds so warm and fuzzy,

24  Mr. Teitelbaum.

25          MR. TEITELBAUM:  But we might have alleviated

1  some of that yesterday and some of the effort in getting

2  there because we do believe that if the Court were to,

3  irrespective of the order of presentation, consider this

4  point first and considering a total win for this side of the

5  room, it doesn't matter.  It's not unfair discrimination.

6  We would further submit, Your Honor, that it is the correct

7  analysis to look at how does this impact a discriminated

8  party?  We were a little bit more flip in our reply and we

9  didn't realize so much on law as sort of what we've all

10  heard from time to time, whether it be from our parents or

11  grandparents.  Look at what's on your plate.  Don't worry

12  about what other people are getting.  And that's really what

13  Mr. LeMay had said and that, we believe, is the appropriate

14  analysis.  And if the Court agrees with Mr. Johnston's point

15  with respect to the impact of his -- the 150 million or so

16  Swap, I remind the Court our claim is smaller than that and

17  the impact to us -- to the Law Debenture and the Senior debt

18  is less by virtue of that.

19          Finally, Your Honor, with respect to the TM

20  Retiree's settlement issue, I know Mr. Rosner said it's

21  gone; it's of no moment, but I do agree with the comments

22  made by Mr. LeMay that this Court did take time to review

23  and analyze that, and at page 93 of the confirmation

24  opinion, did make a finding that the releases for the

25  Retirees were supported by the consideration that they were

1  given as part of that settlement.  And Your Honor, that's

2  material and that supports the proposition that there is a

3  material value being given here by the Retirees monetarily,

4  and dare I say not so monetarily.  I think in the three

5  years plus of this case, this is the first time we've been

6  an active litigant in this case.  We've been trying to be

7  supportive of the process, and not just one point or another

8  point of the process; whether it's our role on the

9  Creditor's Committee or otherwise.  So if you think about

10  the monetary contribution and the non-monetary contribution

11  that we've made in this case, Your Honor, we believe that

12  more than amply supports the treatment that we would receive

13  under the Plan.  Thank you.

14          THE COURT:  Thank you.

15          MR. ROSNER:  Good morning, Your Honor, David

16  Rosner, Kasowitz Benson Torres & Friedman, on behalf of Law

17  Debenture, and for these purposes, also on behalf of

18  Deutsche Bank.  I will confess I stand before you.  I feel

19  neither demolished nor exploded and I'm prepared to go

20  forward.

21          THE COURT:  Well, it will save Housekeeping a lot

22  of trouble.

23                    (Laughter)

24          MR. ROSNER:  Can we put up -- do you have -- can

25  we put up slide number two?  I just have a few slides.  This

1   is the one that we started off with yesterday where we

2   talked about what normal subordination would look like in a

3   hypothetical case where you've got debtor assets of $99 and

4   you've got equal claims; kind of similar to what the

5   legislative history here talks about.  The recovery from the

6   debtor would be $33 each.  And then after subordination, the

7   subordinated debt would spin up its recovery to the Senior

8   debt yielding 66; and the everything else, and we're hoping

9   after yesterday, the everything else is going to include all

10  of the other Parent claims, would get $.33 under what would

11  be a normal subordination.  Can you turn to the next slide,

12  please?  In the context of an abnormal subordination, which

13  is the one that you find under the DCL Plan, you have the

14  Senior Noteholders; and here we're using approximate numbers

15  drawn from the same chart that was submitted as evidence and

16  was used by Mr. LeMay, you've got the Senior Noteholders'

17  claims, you've got the subordinated claims, and you've got

18  the other Parent claims.  The recovery after subordination

19  should be the middle column where you would have a complete

20  spin up and the other Parent claims would remain the same.

21  However, what you have here under the debtors' plan is an

22  actual material reduction and you've got the other Parent

23  claims making, you know, moving up to 92.  The thing to

24  focus on here, of course, is that there's a misallocation of

25  Plan proceeds in application of a Subordination Agreement of

1    about 36.8, or approximately $40 million, which is actually

2    the number that we use.  So looking at the slide, you can

3    see that the other Parent claims should be getting

4    materially less than the Senior debt.  But more importantly,

5    the Seniors should be getting materially more than what the

6    other Parent claims are getting and that's not what's

7    happening under the DCL Plan.  The DCL Plan proposes to give

8    equal treatment to the Senior debt and the other Parent

9    claims.  But that fundamentally violates the Bankruptcy Code

10   and it misallocates the Plan consideration before we talk

11   about unfair discrimination.  So -- and I will talk about

12   unfair discrimination, but just thinking about the

13   misallocation here, it's not -- this is not a Plan where

14   additional consideration is being provided through by the

15   estate to a class; let's say a class of trade creditors that

16   are going to be doing business with the debtor going

17   forward, and we've all seen Plans like that.  This is a Plan

18   that actually takes the consideration from the so-called

19   settled class, the settlement pie, that's supposed to go

20   over the dissent of the Senior Noteholders, and takes that

21   consideration and provides it to a class that should have

22   equal priority against the debtor but would not have equal

23   distribution by virtue of the Subordination Agreement.  So

24   the gain to the other Parent claims is not where we are

25   actually focusing, Your Honor.  It's the misallocation of

1  the Plan consideration.  It's treating the other Parent

2  claims as Senior for purposes of subordination at the

3  expense of the Senior claims.  That's the issue.  And

4  there's a shorthand kind of fix in the Third -- in the DCL

5  Third Plan that talks about other Parent claims if there's

6  other Parent claims that get treated as Senior claims and,

7  in order to elevate their recovery, as far as I understand

8  it, there's kind of a true-up, "true-up", mechanism where

9  the Seniors will put in a few more dollars for those other

10  claims.  But that doesn't actually work because the money

11  would have to flow through the actual waterfall and the

12  actual true-up would be -- would cost hundreds of millions

13  of dollars because you would have to elevate all of the

14  claims, not just, you know, those new claims because the new

15  money would need to run through the recovery waterfall.  So

16  that doesn't work and that's going to be a problem when we

17  get to the confirmation hearing.

18            In order to do the first slide, normal

19  subordination, and not to do abnormal subordination, is what

20  Your Honor should do in order to comply with the parties'

21  legal rights and their reasonable expectations.  Otherwise,

22  the DCL Plan does fail to apply Section 510(a), and I want

23  to talk about that for a minute, and by virtue of failing to

24  comply with Section 510(a), which we all know I don't think

25  we read that section in, but it says the Court shall enforce

1  Subordination Agreements to the same extent as non-

2  bankruptcy law, which most Courts look at as state law.

3        THE COURT:  Well, what does notwithstanding mean?

4        MR. ROSNER:  Well, I'll tell you what

5  notwithstanding means.  And I think we may be in agreement

6  as to what notwithstanding means based upon as at least what

7  I heard Mr. LeMay saying.  As I read Section 1129(b), it

8  actually speaks exactly to what we're talking about.  It's

9  saying notwithstanding the application of the Subordination

10 Agreement, the plan cannot treat a class unfairly,

11 notwithstanding that application.

12       So it looks to the recoveries from the debtor as

13 to each of the classes of equal priority.  Which is

14 basically what Professor Markell said -- or then Professor,

15 now Judge, says that you have to start off with the

16 proposition that everybody is of equal priority as to the

17 debtor.  And that's the essence of our argument.  And we

18 think that's the actual correct reading of the

19 notwithstanding 510(a).

20       I think -- I'm trying to think of the quotes

21 here.  On the stub rent case that was identified as the

22 *Goody's* case, the notwithstanding, I think the quote that

23 was made up here said forget about it.  And that's right.

24 We say forget about subordination for determining whether

25 this plan unfairly discriminates against these classes,

1  because everybody is supposed to have equal priority.  And

2  then you apply the Subordination Agreement.  And when you

3  apply the Subordination Agreement, one class should be going

4  up and the other one should be staying the same.  Otherwise,

5  you are unfairly discriminated because then you do apply the

6  Subordination Agreement.

7        So when you're looking at it, when you're looking

8  at the plan itself, you have to look at it notwithstanding

9  the Subordination Agreement and look at whether the plan

10  from the perspective of the debtor.  And we're going to get

11  to the chart in a minute where we show you what everybody's

12  recovery is under the plan from the debtor and what it

13  should be after you apply the Subordination Agreement.

14        Now Mr. LeMay also said, for these purposes,

15  510(a) doesn't count.  And that's what we're saying.  It

16  doesn't count when you're trying to figure out whether

17  everybody's getting the same distribution from the debtor.

18  That is what the issue is in 1129(b), it's from the debtor.

19  Mr. LeMay says even before does not mean in spite of.

20  That's exactly what it means.  In spite of the Subordination

21  Agreement is everybody getting the same recovery from the

22  debtor.  And if they are, then you're okay.

23        But then you -- then when you then apply the

24  Subordination Agreement to people and you say, well, wait a

25  second.  You're now applying it to the non-subordinated

1  creditors.  Well now you've blown the test.  Now you have --

2  now you're supposed to apply 510(a) because now we're

3  looking at what rights creditors have vis-à-vis other

4  creditors, not from the debtor.

5       So I think for these purposes and, you know, the

6  *TCI 2 Holdings* case, I think is what it was called, says

7  that's the most logical reading.  I think this is the most

8  logical reading.  And I think they're actually not really

9  inconsistent readings, they're just telling you what you're

10  supposed to look at.

11       Can we turn to Slide 38?  This is the same chart,

12  I believe, except that all of our -- all the footnotes were

13  not on a separate page.  We've got them all at the bottom.

14  But this is the chart that was admitted into evidence.  I

15  think it's 88.  89, okay, so that's the same chart that Mr.

16  LeMay showed.

17       Now can we go to 39?  So we've blown up the

18  section of adjusted total recoveries -- let me keep this one

19  out -- which is the one at the bottom, the section at the

20  bottom of the chart.  I guess that's better.  And you see

21  that under the plan, you've got the senior noteholders at

22  33.6.  You've got the retirees at 33.6.  And the other trade

23  at 33.6.

24       The column I don't think that was pointed out to

25  Your Honor before, but I'd like to point is what the plan

1  would be prior to subordination.  That's the following

2  column.  And you see here, there's two columns because

3  there's the high PHONES and the low PHONES which you're

4  going to have the pleasure of hearing lots about in a little

5  while.  But you see here that the -- that everybody should

6  be getting 21.9, 21.9, 21.9, and on the low PHONES side,

7  19.4, 19.4, and 19.4.  That's before you apply

8  subordination.  That's the straight case.  That's not

9  withstanding Section 510(a).

10          And then withstanding 510(a) where we have only

11  the senior noteholders benefitting which is the outcome that

12  we're arguing for, and it's my assumption, you see that

13  there should be 35.9, 36.5 to the seniors, as opposed to

14  21.9, 21.9, and 19.4, and 19.4.  But instead of that 21.9

15  and 19.4, the plan provides 33.6.  And that 14 cents comes

16  from us.  And I will tell you that if you put -- if you

17  divide those numbers, the actual calculation to be made is

18  the 14 cents versus the amount that they are getting which

19  is -- I'm sorry, that we are getting, which would yield a 53

20  percent change, greater than the *Great Bay* analysis of gross

21  discrimination of 50 percent.  And on the high PHONES

22  amount, it's 73 percent.  So that's the proper analysis we

23  would contend.

24          Now, Your Honor, in terms of unfair

25  discrimination, just to come to back to it.  We all agree.

1  Nobody's disagreeing that *Armstrong* adopted the four-prong

2  test.  And other Courts have looked at if there's a rational

3  purpose for the discrimination.  And that discrimination

4  needs to be unfair.  It's written in the Code.  We

5  understand that.

6          We will tell you that there needs to be four

7  factors met.  There needs to be a dissenting class.  We're a

8  dissenting class.  The senior notes are a dissenting class.

9  There needs to be another class of equal priority.  As to

10  the debtors, there are two other classes of equal priority.

11  There is the Swaps and the -- or let's just call one class

12  of other parent claims.  They are of equal priority vis-à-

13  vis the debtor.

14          There is a difference in plan treatment.  There's

15  an absolute difference in plan treatment because they're

16  recovering almost double from the debtor and we're not.  So

17  they're recovering an additional 14 cents.

18          And is there a material lower payout to the

19  dissenting class?  Sure there is.  But because we're not

20  getting that additional 14 cent recovery from the debtor,

21  only the other parent claims are.  Ours comes from our

22  intercreditor rights that we get form subordination.  We're

23  supposed to have them anyway, notwithstanding our

24  Subordination Agreement.  We're supposed to not be unfairly

25  discriminated against.  But here, the other parent claims

1  are picking up and extra 14 cents and the senior noteholders

2  are not getting that 14 cents from the debtors.  And then

3  you would apply the Subordination Agreement.

4          So we're only getting our intercreditor rights,

5  right?  Whereas, they're getting a recovery from the debtor

6  that is either 53 percent or runs up to 73 percent to our

7  detriment.  And then to add a little insult to injury, we

8  get to pay that.  It comes right from the consideration that

9  should come from us.

10          You know, people like to use phrases like no

11  brainers or what, you know, grossly disproportionate.  I'll

12  use that phrase since that was the phrase that was actually

13  used by a Judge as opposed to no brainer which is the one I

14  wrote down here.  Fifty-three percent to 73 percent is a

15  grossly disproportionate discrimination and it has to be

16  unfair.

17          Obviously, each plan proponent of the DCL plan

18  would argue the opposite and support each other.  The

19  argument that the like is that they -- the argument that

20  they like is that they get to take into account third party

21  recoveries to the senior notes.  So they like to say

22  withstanding Section 510(a), then you would look at unfair

23  discrimination.  And they like to say the comparison that

24  you make is that which the senior notes would have gotten

1   which is the 36.5 versus the 33.6.  Again, that's

2   withstanding Section 510(a).

3           Then they're doing the analysis of unfair

4   discrimination.  And, therefore, they say it's not a big

5   deal.  Mr. LeMay did say what's $30 million or so.  It's

6   actually $40 million or so, but you did say, you know, what

7   is it.  I can tell you firsthand that it was less than that

8   amount that killed the plan in April of 2010, two years ago.

9           Our position, and we do base it upon the

10  legislative history as *OD Yost* as Professor Markell may have

11  found it and the case law.  But also on common sense, Your

12  Honor, is that the proper measurement is what the classes

13  recover vis-à-vis the debtor, vis-à-vis the estate.  That's

14  what we're talking about.  And that's before applying third

15  party recoveries.  That's notwithstanding Section 510(a).

16  Before contractual rights as to which the debtors

17  contribute, nothing.

18          As Judge Markell says "in the unfair

19  discrimination context, however, the presumption is that all

20  similarly situated creditors should share the same

21  priority."  And then in analyzing the legislative history,

22  it says if the plan pays $15 each to the unsubordinated

23  creditors, that would here be the other parent creditors and

24  to the senior debt.  The senior debt is unfairly

25  discriminated against.

1          Just to repeat.  If they get $15 and we get $15,

2    that means that we are unfairly discriminated against

3    because it says if we got 7 ½ from the debtor's estate.  The

4    other 7 ½ came from a spin up from the subordinated class

5    and that doesn't count.  What counts for unfair

6    discrimination is what we get from the estate.

7          And that's exactly what's happening here, Your

8    Honor.  That's what you would call violating the horizontal

9    unfair discrimination by comparing the distribution to

10   claims of equal ranks.  And that's the issue, the half

11   recovery.  Not whether there is a great loss due on

12   valuation with which we disagree anyway.  It's that the

13   additional 14.2 percent recovery that the other class --

14   that we are not receiving.  Not just that the other class is

15   getting, it's what that we are not receiving from these

16   estates.

17         So again, these claims are of equal, you know,

18   priority against the debtors.  Yesterday, we were arguing

19   sub and senior issues vis-à-vis third parties.  We weren't

20   talking about them as to the debtors.  There's no dispute of

21   equal priority versus the debtors.  The third party spin up

22   can't be taken into account to determine discrimination.

23   Otherwise, we're not analyzing treatment rights versus the

24   debtors or its estate, but we're taking into account third

25   party recovery rights.

1          So I'd ask you, would the Court count a

2    guarantor's -- a possibility of a recovery against a

3    guarantor to determine whether there is unfair

4    discrimination?  Would the Court literally have a hearing,

5    assess the creditworthiness of a guarantor, and then

6    allocate some payment from the guarantor to determine that

7    the plan is fair because these other guys are getting the

8    same amount and you've got a claim against a guarantor and

9    we're going to look at the creditworthiness of that

10   guarantor.  And --

11          THE COURT:  Oh, estimation of guarantee value is

12   the proper exercise in a number of different contexts.

13          MR. ROSNER:  But not in the context of unfair

14   discrimination, Your Honor.  In unfair discrimination, what

15   we look at from the plan's perspective is whether vis-à-vis

16   the debtors' estate, these claims are being treated equally.

17   That is what unfair discrimination means in the context of a

18   cram-down situation where the dissenting class is the one

19   who's being harmed by not realizing the 14 percent.  Here,

20   the 14 percent under the legislative history, the 7 ½

21   percent, when that is only being counted by virtue of the

22   third party recovery as opposed to what it's getting from

23   the estate.  Remember, it's notwithstanding Section 510(a).

24          So the plan is always -- and this plan is

25   discriminatory.  The plan is always discriminatory when

1   assessed properly based on the distributions from the

2   debtor.  And that's the only constant way to assess the

3   damage.  As Professor Markell says, the priority used as the

4   basis of comparison is priority under the Bankruptcy Code,

5   not non-bankruptcy priority.  And he goes on to make it

6   clear that the discrimination that exists is where, as here,

7   creditors have a secondary non-debtor fund from which to

8   receive payments.  But that's not -- but that is not only

9   being frustrated, but is being shared with those who have

10  only one such fund.  And that's precisely what's happening

11  here.

12          He says it clearly earlier in the same article,

13  the DCL Plan is that the Senior notes were being paid

14  roughly half, which I've said, and actually not half, 14/33.

15  And that's the proper comparison.  But as I said, Your

16  Honor, it gets even worse because that distribution is being

17  taken from us.  And as Professor Markell said, when that --

18  when two funds are being accessed by somebody who only has

19  one fund, that is definitionally unfair discrimination.

20          So it can't be acceptable discrimination where

21  there is a greater than 50 percent is what Mr. LeMay said

22  when he cited the *Great Bay* case.

23          Can we put up Slide 40, please?  So here, what we

24  have is basically taking the numbers from the same chart is

25  saying what is a -- what is the discrimination against the

1  senior notes?  And on the low PHONES amount, this is where

2  you have the 53 percent as shown.  You have the top line

3  which I think Mr. LeMay and I agreed that you have 20

4  percent, is the example that's given under the legislative

5  history.  And the 20 percent as he said, he finds that not

6  to be unfair discrimination.  Whoever wrote the legislative

7  history did.  I certainly would find it to be

8  discrimination, but at least we all agree that above 50

9  percent is grossly disproportionate.

10         The DCL plan with no litigation recoveries, the

11  senior notes are getting 21.9 percent, the other parent

12  claims are getting 33.6 percent.  Again, this recovery is

13  the one from the debtor without the subordination rights,

14  notwithstanding Section 510(a).  And that yields 53.1

15  percent discrimination against the senior notes.

16         As you move north with the litigation trust

17  recoveries, and these are illustrative recoveries.  And we

18  hope that they're going to be much, much higher than these.

19  These are just simply for illustrative purposes,

20  illustrative purposes.  You can see that the discrimination

21  that works against the senior notes increases as the

22  litigation trust recoveries go up.  And that's in this

23  column.  And this is the low PHONES amount which you're

24  going to be deciding, or at least hearing about and deciding

25  later.

1            On the next slide, and I don't need to talk about

2    it, really.  It's just the right-hand column.  You see where

3    I was talking about the 73.3 percent discrimination.  And

4    then how it runs the same -- directionally the same way

5    against the senior notes as you realize litigation trust

6    recoveries.

7            So we can all call it what we like.  I call it

8    plan misallocation.  I also call it a forced diversion of

9    funds because the settlement was supposed to be a settlement

10   that was made between people on your left-hand side of the

11   courtroom and disagreed with by the people on the right-hand

12   side, but Your Honor found it fair.  And the people on your

13   right-hand side of the Court are living with it, but a piece

14   of it is being taken away to somebody that doesn't have the

15   subordination rights.  It is the debtors' burden to confirm

16   the plan.  It's the debtors' burden to show that it doesn't

17   unfairly discriminate, and that it doesn't misallocate plan

18   value, and it doesn't divert funds from where those funds

19   should be.

20           Now I have a few more comments to make directly

21   to some of the things.  I don't want to say directly, a

22   couple of points.  The committee castigates us for not

23   citing to the *Unbreakable Nation* case.  He mentioned it from

24   the podium.  He put it in his -- they put it in their reply

1    brief.  And that's from the Bankruptcy Court in the Eastern

2    District of Pennsylvania.

3          Well, here, in my opinion, is the most telling

4    sentence in that opinion.  And that is "There is no

5    evidence, indeed, the objectors have offered none, that the

6    plan should be rejected because it fails the 'unfair

7    discrimination' clause of Section 1129(b)(1)."  And on the

8    basis of there being no evidence, the Judge approved $50,000

9    going to a class of claims that that Court said "was likely

10   to be subordinated anyway" under Section 510(b), being

11   shareholder damage claims as they were, and another $50,000

12   going to class of allowed claims that was not going to be

13   subordinated under 510(b).

14         And the claimant who, without more, complained of

15   unfair discrimination, had no allowed claim, and had only

16   asserted that it had a much larger claim, $4 million versus

17   $2.8 million of the classes whose claim was allowed.  And

18   even if it had that claim, and even if it was $4 million, it

19   was a $17,000 difference.  And, you know, and I think it's

20   an unreliable case on the basis of the fact that there was

21   actually no demonstration of unfair discrimination in that

22   case.

23         The committee is also very upset at us for

24   looking to the legislative history as an interpretive guide.

25   And Your Honor's going to decide the value of that.  I will

1  tell you that the only example given for unfair

2  discrimination is this one.  The only one is the one that

3  talks about the instance of a Subordination Agreement.  So

4  it's pretty hard not to look at that or to say that there

5  was a bunch of different people who had different say in all

6  of this because this is the only example that's there.  We

7  commend it to Your Honor and you'll decide what you want to

8  do with it.

9           They say we don't like *Armstrong*, but we do and

10 we apply it.  They even say marrying the two together that

11 they can harmonize *Armstrong* and the legislative history,

12 which they did, and we did in coming up with the 20 percent

13 unfair discrimination.  But this is the best.  They quote

14 the legislative history to show that where the senior was

15 supposed to get 30, but got 25, because it voluntarily gave

16 up 5 to the sub-debt which is, that's the example given,

17 that that was unfair discrimination because the seniors

18 should have gotten 30.  And doing the arithmetic, the 5

19 percent was the -- came up with the 20 percent.

20           But that's not what it says.  It says, the trade

21 -- or here it would be the other parent claims, that they

22 can't complain of unfair discrimination, because they are of

23 equal rank with the seniors and with the sub-debt and so

24 they have no problem because they're getting their $15.  So

25 they can't complain if the seniors gave it to the subs.

1   That was their right to do.  Okay.  But then it says,

2   "However, in this latter case, the senior debt would have

3   been unfairly discriminated against because the trade debt

4   was being unfairly overcompensated."  And that's what we're

5   talking about, except we're talking about it from the

6   perspective of the loss on our side of the column from the

7   distributions that come from the estate.

8           Now the committee tells us that we should never

9   do a comparison of what a favorite class is getting and what

10  the dissenting class is getting in terms of determining what

11  is or what is not unfair discrimination.  But this is Page 8

12  of their opening brief.  And Page 8 of their opening brief

13  defines unfair discrimination and it cites the cases.  And

14  I'd commend, Your Honor, specifically to Page 8.  I'm sure

15  you've -- I know you've read all of it, but specifically to

16  Page 8.  And they determine unfair discrimination with the

17  columns the dissenting class recovery and the preferred

18  classes' recovery, which is exactly what they told you

19  you're not supposed to do.  And we're telling you to take a

20  look at that and look at it from our prospective as the

21  dissenting class who's not getting the additional 14 percent

22  recovery from the estate.

23          The last point I will make, Your Honor, is this

24  idea of a justification.  If there is a presumption of

25  unfair discrimination, then I would argue and say that it's

1   clear and should be logically found that it's not even just

2   a presumption here, it's actual.  But if you want to look at

3   it as a rebuttable presumption, there's absolutely no

4   justification here to rebut that presumption.  None has

5   seriously been offered and none seriously can be offered.

6   The retirees voted in favor of a plan in which they got an

7   additional 14 percent recovery at the expense of the senior

8   notes.  That's it.  If that standing alone is justification

9   because you can then put people in a class and guarantee

10  yourself an excepting class on a plan, then everybody would

11  be able to be unfairly discriminated against because that

12  happens all the time.

13          And let's remember, one of the things I mentioned

14  yesterday and I'd like to mention it again, that what -- the

15  retirees got something for their settlement.  It wasn't just

16  that -- it doesn't justify unfair discrimination.  They

17  received a very serious consideration under that settlement,

18  besides the fact that they got the jumped up 14 percent.

19  They got releases under that Settlement Agreement.  And they

20  got their claims only reduced by 8 percent when the debtor

21  said that they should have been reduced by $30 million.  So

22  that's a pretty good settlement.  And it stands on its own

23  two legs and it's certainly not a justification for unfair

24  discrimination.

1            And on the Swap claim, nothing's been offered on

2   the Swap claim that could possibly justify unfair

3   discrimination.  And I think, and I'll have one of my

4   colleagues correct me if I'm wrong.  The reason that there

5   is a slight moving upward, downward in the recovery on the

6   Swap claim as litigation recoveries come in, the point that

7   Mr. Johnston made is because they recover at the subsidiary

8   level, too.  So they get 100 cents on the dollar.  And so

9   they reach a point where they can't get anymore.  And so you

10  just -- you have to zero out after you get 100 cents on the

11  dollar, except perhaps against the EGI and the PHONES notes

12  if you get post-petition interest which is what we argued

13  yesterday.

14            I don't have anything further, Your Honor.  Do

15  you have any questions for me?

16            THE COURT:  I do not, thank you.

17            MR. ROSNER:  Thank you, Your Honor.

18            MR. STARK:  Your Honor, may I bring a bottle of

19  water up?  Thanks.  I'm fighting off a bug, so thank you.

20  Good morning.  Robert Stark from Brown Rudnick, appearing on

21  behalf of Wilmington Trust.

22            I'm going to try not to be repetitive.  And I

23  think I was mostly successful yesterday and I'll try to

24  continue.  Maybe I wasn't, but I'll do better, if I find

25  myself veering into territories Mr. Rosner already covered.

1  But I have to pause, Your Honor, and say, now we're onto

2  something really interesting.

3                    (Laughter)

4            MR. STARK:  Now we're onto something that

5  actually has some pretty broad precedential importance,

6  okay?  It's pretty cool.

7            THE COURT:  Funny, I just had that same thought

8  myself, Mr. Stark.

9                    (Laughter)

10           MR. STARK:  Good.  Well then let's see if we can

11  talk it through.  And on that same path, I'd like to start

12  in a different direction than others have and that's with

13  the fundamental bankruptcy principle.  Bankruptcy doesn't

14  create new claim entitlements.  It simply deals with the

15  entitlements that parties have when they showed up at Court

16  on the first day of the case.  That's the *Butner* principle.

17  It's pretty important in bankruptcy.

18           It is very unsettling whether you're involved in

19  the case or observing objectively what's going on in these

20  arguments today academically.  It's very upsetting if you

21  believe in the *Butner* principle, to hear somebody take the

22  argument and advance it to the Court, to this Court, that we

23  can take somebody's contractual subordination rights, pre-

24  bankruptcy negotiated, documented, people traded

25  understanding those rights, and allocate them to somebody

1  who under the contract has no entitlement at all.  That

2  somebody is getting something that they did not have when

3  they came to the case on the petition date.  They didn't

4  bargain for it and is taking it from somebody who did.  That

5  seems to be facial violation of the *Butner* principle.  But

6  let's dig deeper than that.

7           When focusing on each word of 1129(b) and a lot's

8  been done to parse through the language, we can't really

9  lose sight -- forest for the trees problem.  We can't really

10 lose sight of what 1129(b) was actually intended to do

11 holistically.  We have here, just as 1129(b), we have here a

12 class of creditors who don't like this plan.  They voted it

13 down.  And we're about to do something violent to them.

14 We're going to force them to accept this plan, accept the

15 deal that they don't like.  That they in this democratic

16 construct that we created for bankruptcy have said, please

17 don't do it to us.  We're going to give them less than or

18 give them currency other than their due.  Under the

19 contract, we're paying them less than full.  And we're going

20 to cram it down their throats to use the bankruptcy

21 vernacular, fully fleshed out.

22           THE COURT:  Okay.  So far, you've mentioned

23 nothing that's unusual about a Chapter 11 plan.

24           MR. STARK:  True.

1          THE COURT:  I'm waiting for that other shoe, Mr.

2   Stark.

3          MR. STARK:  And it's coming.

4          THE COURT:  Okay.

5                    (Laughter)

6          MR. STARK:  When we're about to do this, 1129(b)

7   says, Your Honor, please pause, take a breath, and walk

8   around in the shoes of the creditor class that otherwise is

9   about to have this violent act done to them.  And ask from

10  their perspective is it fair, is it equitable, are they

11  treated appropriately, will justice be delivered?  And this

12  is a moment when the Court dons its equity hat, the fair and

13  equitable -- the request says, you're acting now not as a

14  Court of law, but as a Court of equity, and saying is it

15  fair and equitable, in gentle way, to those who violence is

16  about to be done.  And Your Honor has to get comfortable

17  with it.

18          From that vantage point, it is remarkably

19  controversial, at least from my perspective, to read the one

20  section.  The very section in the entire Bankruptcy Code

21  designed specifically to ensure that fairness and equity is

22  being delivered to the dissenting class, and finding in the

23  language that's there, a cloaked mechanic to really stick it

24  to them.  To stick it to them good in ways that they didn't

25  think about when the pre-bankruptcy deals were negotiated

1  and when they showed up at the petition date saying here's

2  what my rights are as negotiated pre-bankruptcy via *Butner*.

3  In this more gentle section, we're going to cloak a mechanic

4  that does that.

5         Now everyone, Your Honor, in the capital markets

6  knows that contractual subordination isn't forced in

7  bankruptcy.  I would presume we have trillions of dollars of

8  debt that's lent in corporate America reliant upon that

9  structure.  And everyone knows that there's cram-down in

10 bankruptcy.  That people can receive less than over their

11 dissenting vote.  But I would venture to guess, that no one

12 thinks that you can strip someone of their bargained for,

13 pre-bankruptcy contractual subordination rights, being a

14 cram-down mechanic.

15        And what a terrible change to the rules that

16 would be.  An aggressive debtor can now present a Hobson's

17 choice to a potentially dissenting class.  You either accept

18 a crummy deal that we put before you, or we're going to

19 reallocate away from you, your pre-bankruptcy bargained for

20 contractual subordination rights.  That's a terrible

21 dynamic.  That is not the leverage allocation that was

22 otherwise anticipated by the Bankruptcy Code.

23        And let's make it really clear here.  If they can

24 theoretically take just a little bit of somebody's 510(b)

25 rights and allocate them to somebody who they think it would

1   be a swell idea to get some of it, then they're going to

2   take a whole lot of it in the next case.  And a whole lot of

3   it on a percentage-wide basis in great big case like this,

4   the grand theater of the Tribune case, where on a

5   percentage-wide basis, it just don't seem significant enough

6   in the grand scheme of things.  That feels wrong, Your

7   Honor, because it is wrong.  Creditors don't lose

8   contractual subordination rights just because they say so.

9   The Supreme Court made that very clear, a very long time

10  ago.

11          So we would posit, Your Honor, that this whole

12  argument does embrace something that really is wrong.  Now

13  Mr. LeMay is correct in pointing to our brief and saying we

14  didn't really explain away the notwithstanding language and

15  Your Honor posited to Mr. Rosner.  So I'd like to take my

16  spin on that, if I can, please.  Well, let me say not my

17  spin, Ken Klee's spin.

18          Before writing the Bankruptcy Code or

19  participating in the writing of the Bankruptcy Code,

20  Professor Klee wrote a famous law review article -- or just

21  after, excuse me -- famous law review article.  It's

22  entitled "All You Ever Wanted to Know About Cram-down Under

23  the New Bankruptcy Code".  It can be found at 53 American

24  Bankruptcy Law Journal.  It's Page 133.  It's 1979.  And

25  there's a lengthy footnote.  It's Footnote 70.  And

1  Professor Klee tells us how to read the notwithstanding

2  language.  And I'd like to quote it for Your Honor, please.

3  "As a general proposition, a Subordination Agreement is

4  enforceable in a reorganization case to the same extent it

5  is enforceable under non-bankruptcy law.  However, the

6  confirmation standard of 11 USC Section 1129(b)(1) applies

7  'notwithstanding Section 510(a)'."

8          This means that to the extent a class of senior

9  claims chooses not to enforce the Subordination Agreement,

10 the minority in the class will be bound not withstanding

11 Section 510(a).  On the other hand, if the senior class

12 insists on its rights by dissenting to the plan, then the

13 Subordination Agreement will be enforced to the fair and

14 equitable test.  The additional requirement that the plan

15 not discriminate unfairly, protects the senior class, the

16 subordinated class, and the classes not involved in the

17 Subordination Agreement from being treated unfairly."

18         In other words, the notwithstanding language was

19 never intended to be cloaked device to deprive a dissenting

20 class of the benefits of their bargain via contractual

21 subordination.  The language was never intended to mean that

22 1129(b) trumps and eviscerates 1129(a) and 510(a) in this

23 particular context in a way to deprive the dissenting class

24 of what they bargained for pre-petition.

1          So what was it intended to mean?  It was intended

2   to facilitate deal making.  Intercreditor Agreements and

3   Subordination Agreements often times do more than just say

4   you take whatever distribution they choose to give me and

5   hand it over to somebody else.  They deprive parties of the

6   abilities to appear and oppose.  They say that not only must

7   you give me a certain currence -- not only must you -- must

8   I turn over, but I must get a certain currency.  I must be

9   paid in cash.  And I must turn that over to somebody.

10         In other words, you can have strictures in an

11  Intercreditor Agreement and a Subordination Agreement that

12  really hamper the ability to make deals.  And, in fact, in

13  today's marketplace, we see that all the time.

14  Intercreditor Agreements or second lien creditors can do

15  nothing unless the senior creditor says it's okay for them

16  to do something.  It's a matter that's being litigated every

17  day in today's cases before these Courts because those

18  agreements are, in fact, hampering of the ability to conduct

19  business and facilitate deal making.

20         So if we have a senior creditor who says you know

21  what, I have contractual subordination rights, and it says I

22  have to get paid in cash, and I'm going to give it up. I'm

23  going to get debt instead.  Then the junior creditor can't

24  sit on its rights and say no, no, no, the senior creditor,

1   even though they accept the plan I -- it violates 510(a),

2   and therefore, can't be crammed on me.

3          Similarly, if the senior creditor wants -- if the

4   junior creditor says -- excuse me -- if the senior creditor

5   says, I have contractual subordination rights, but I choose

6   to give them to somebody else, the junior creditor can't get

7   up and say, well that violates 510(a) and so the plan fails.

8          In neither of those circumstances would the

9   junior creditor really have much of an argument vis-à-vis

10  1129(b) in a gentler eye towards the violence about to be

11  done to them, because they never had the entitlement to

12  receive the benefits of the contractual subordination to

13  begin with.  And those who did chose for it to go elsewhere

14  or chose to receive their distribution in different forms.

15         And let's go to the other example where the

16  senior creditor chooses not to -- wants to rely upon 510(a)

17  and say I want to get paid in cash, in full, before anybody

18  below me can receive anything.  Well that will be -- that's

19  directly opposed to the cram-down mechanics that say you can

20  be paid your secured claim via indubitable equivalence.

21  That secured creditor is getting 100 percent of its secured

22  claim.  And if it stands up and says no, I want to be paid

23  in full in cash before the junior creditor can receive

24  stock, that wouldn't be fair and appropriate.  You're

25  getting 100 percent of your claim under the indubitable

1    equivalence standard.  You're just simply relying upon your

2    rights to deprive others from sharing.  That's not fair.

3              And so 510(a) strictly construed in that scenario

4    would be hampering of the deal making.  This notwithstanding

5    language is all about deal making, but not to deprive what

6    somebody bargained for and give it to somebody else.  It

7    just makes it more flexible and jives with the other

8    provisions.

9              THE COURT:  Do you have a copy of the Code handy,

10   Mr. Stark?

11             MR. STARK:  I'm sorry, I couldn't hear you.

12             THE COURT:  Do you have a copy of the Code,

13   handy?

14             MR. STARK:  I do.

15             THE COURT:  I'd ask you to take a look at

16   1129(a)(9) just to pick an example.

17             MR. STARK:  Yes.

18             THE COURT:  What you'd like the Court to do, it

19   strikes me, is interpret (b)(1) to say for notwithstanding

20   to mean the following, as I gather.  And that is except to

21   the extent that a holder of rights under a Subordination

22   Agreement, which would be otherwise enforceable under

23   510(a), the debtor has to do whatever the rest of (b)(1)

24   says.  And Congress actually used that language in (a)(9),

25   but not in (b)(1).  Why not, do you suppose?

1          MR. STARK:  Well, I wish I had a little more time

2    to answer the question, Your Honor.  And I wish I was a

3    little more facile about the decision making that congress

4    was under when it was drafting the Bankruptcy Code.

5          THE COURT:  Well, if you ever understand it, you

6    may be the first.

7          MR. STARK:  And perhaps, perhaps, Your Honor.

8    All I can tell you, Your Honor, is there's a lot of

9    provisions in 1129 -- I know it's not a satisfactory answer,

10   and forgive me for on the spot, but there's a lot of

11   provisions of 1129(a) that go through the iterations of

12   things that Congress thought were important in every single

13   plan.

14          1129(b) is intended in the cram-down scenario to

15   assist the creditor, who violence is about to done with, and

16   said treat them fairly, treat them equitably.  Don't

17   discriminate unfairly, and try to give the benefits to the

18   bargain.  There are certain specific iterations under

19   1129(b)(1) about how things ought to be.  How the world

20   ought to be accomplished.  The secured creditor gets

21   indubitable equivalence.  There's no specification about

22   what indubitable equivalence should be.  Just like there's

23   no specification in the Bankruptcy Code about what kind of

24   post-petition financing is or is not sufficient or adequate

25   protection is or is not.  There are certain areas where

1  flexibility is necessary so that deals can be constructed.

2         Absolute priority rule, as Your Honor quite

3  rightly pointed out before, into itself is subject to

4  interpretation to facilitate deal making, but not in way

5  that divests the people of the bargained for rights

6  inconsistent with *Butner*.  It may -- Your Honor, not only

7  does Mr. Klee, I think give a very good framework for

8  interpreting what that notwithstanding language is, but it's

9  utterly and completely consistent with the legislative

10 history.  It's hard to adopt the argument that's been

11 advanced by the committee, by the plan proponents, that

12 notwithstanding eviscerates and enables them to selectively

13 choose who is entitled to receive the contractual

14 subordination rights.  Even if they're not beneficiaries

15 under the contract itself, it's facially inconsistent with

16 the legislative history.  Professor Klee gave an explanation

17 as to why.  We'd suggest, Your Honor, that's a place to go.

18         The only authority that's supported by the plan

19 proponents, is a whopping two cases.  And there are a

20 whopping two cases at the Trial Court level, not from this

21 district, there's the *Trump* case, the *TCI* case, there's the

22 *Croatan* case.  And I -- and Your Honor, I'd ask you, please,

23 if you're going to go back and take a look at those cases,

24 please do so with a view towards what I'm contending now is

25 the proper reading.  Because if, Your Honor, at least

1 intellectually is interested in my particular argument, I

2 think you might interpret those particular cases differently

3 than they've been presented to Your Honor.

4          In the *TCI* case, they do not stand for the

5 proposition that you can take somebody's contractual

6 subordination entitlements and give them to somebody else.

7 What it says is that as I mentioned before, if the secured

8 creditor sits there and says, I want to be paid in full, in

9 cash, before anybody junior to me receives anything,

10 valuation notwithstanding, feasibility notwithstanding, and

11 you otherwise have a plan that provides the "indubitable

12 equivalence" of your secured claim, the Court said under

13 that scenario, it's not appropriate to enforce the 510(a).

14 The notwithstanding language would be utilized because you

15 are being treated fairly and appropriately.  You're getting

16 100 percent of your secured claim.  Allow the system to

17 share more.  That's all that *TCI* stands for.

18          C*roatan* is even less helpful.  What Croatan says

19 and I'll quote it, you can deviate from contractual

20 subordination "as long as it is fair and equitable and does

21 not discriminate unfairly".  That's all it says.  And we

22 agree with that.

23          I respectfully posit, Your Honor, in the -- with

24 the scant amount of authority that's been proposed in

25 support of this *Butner* contrary proposition.  This Court

1   would stand alone, would stand alone.  It would be precedent

2   that will be thought of and considered, and it would stand

3   alone because in effect, you would be taking away somebody's

4   rights and giving them to somebody who's not entitled to

5   under the contract.  And I don't see that in these other

6   cases, I really don't, Your Honor.

7           I want to close with two last points unless Your

8   Honor has questions for me.  The two last points are this.

9   This really does matter to us.  $40 million to a

10  constituency right now that is hopeful that litigation will

11  yield is meaningful.  Every dollar that's paid to those who

12  are true secured creditors gets us closer to being in the

13  money.  And as we've quoted in our papers, we have

14  subrogation rights that arise for every dollar that's paid

15  to the senior creditors.  That's 14.06 of our indenture.

16          If we take a dollar and we pay the senior

17  noteholders, we subrogate to the dollar of the claim.  If

18  you take a dollar and you give it to the retirees and they

19  are not a senior creditor, then I don't necessarily

20  subrogate to that claim.  It's an issue for another day, but

21  it certainly isn't as clear anymore.

22          So this does impact.  And remember, there are two

23  different sources of recovery for the PHONES holders.  There

24  is the estate litigation, there is the private litigation.

1  This is meaningful to us.  And $40 million to us is an awful

2  lot of money.

3         The last point is by effectively underscoring Mr.

4  Teitelbaum's presentation, which I know joinders tend not to

5  sort of evoke, but that one did in two respects.  I think

6  Mr. Teitelbaum is about a dead on as can be.  Why have we

7  gone through this entire exercise?  Why have we litigated

8  and presented now going onto two days an extensive amount of

9  argument and evidence mapping out who's entitled to what,

10  only for it not to matter because the rules allow a fudging

11  in any event.  Your Honor, I respectfully submit that we

12  have been doing this mapping exercise to get it right and we

13  should live by what is right.

14         The second point of Mr. Teitelbaum's presentation

15  that I really appreciated was his grandma admonition.  Don't

16  look to eat from someone else's plate.  We agree

17  wholeheartedly.  Any questions for me, Your Honor?

18         THE COURT:  No, thank you, Mr. Stark.

19         MR. LEMAY:  Your Honor, I know you had a no

20  rebuttal rule, but if you would indulge me -- oh, Mr.

21  Bradford wanted to go.  I was going to say if you give me

22  probably a minute and a half after Mr. Bradford finishes, it

23  might save a letter.  Your call, Your Honor.

24         THE COURT:  I intend to enforce the rule.

25         MR. LEMAY:  Yes, Your Honor.

1              THE COURT:  Mr. Bradford?

2              MR. BRADFORD:  Thank you, Your Honor.  David

3    Bradford, Jenner & Block, on behalf of EGI-TRB.  I will be

4    brief, Your Honor.

5              I want to simply note that the distinction that

6    Law Debenture is arguing for, which we think is a valid

7    distinction, between that which is available from the debtor

8    at the time of filing and those assets that are later made

9    available to a creditor through an Intercreditor Agreement

10   is a distinction that should be recognized and is precisely

11   the distinction that was recognized in our Subordination

12   Agreement where we agreed to be subordinate as to that which

13   was a debtors' asset at the time of filing.  But to the

14   extent that moneys came in through Intercreditor Agreements

15   or came in through recoveries to the estate after the

16   filings which are not the assets of the debtor, those would

17   not be subject to subordination.

18              And I know in *Exide* you dealt with this issue of

19   unfair discrimination in the context of Intercreditor

20   Agreements where there was an agreement that anything

21   received in a bankruptcy would be paid over.  That we think

22   presents different unfair discrimination issues than the

23   issues that are presented if, in fact, the parties have

24   protected themselves in their contract by treating

1   separately and outside the scope of subordination that which

2   is an intercreditor payment.

3           And so I suggest, Your Honor, the answer to this

4   question of how do you treat intercreditor receipts may be a

5   function of what the party itself bargained for in its

6   intercreditor agreement.  And whether, in fact, it

7   effectively agreed to treat those recoveries as part of the

8   pot that's going to get reallocated or whether it protected

9   itself against reallocation of those proceeds by not

10  subordinating them.  Thank you, Your Honor.

11          MR. BENDERNAGEL:  Your Honor, I think that

12  concludes that issue with one statement that the debtor

13  would like to make.  I just want to remind the Court that

14  the debtor did join in the committees' position.  Mr. Rosner

15  seemed to imply that we hadn't.  We didn't have anything to

16  add to what was being said, but I just want to make that

17  clear on the record.

18          THE COURT:  Okay.

19          MR. BENDERNAGEL:  At this juncture, Your Honor,

20  we can either go onto the next issue or we can take a break

21  or -- it's up to you as to what you want to do.  You had

22  indicated you had a call at a certain point in time.

23          THE COURT:  It's scheduled for 12:15 today.

24  Let's take a ten-minute break and then consume whatever time

25  we can before the conference call.  Yes, Mr. Zensky?

1          MR. ZENSKY:  Yes.  I was about to say, Your

2   Honor, I'm involved in the next issue and I'm confident we

3   can get it in before your call as long as we stick to the

4   break you've suggested.

5          THE COURT:  I'm delighted.  Stand in recess.

6          (Recess from 11:28 a.m. to 11:39 a.m.)

7          THE CLERK:  All rise.  Be seated, please.

8          MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

9   the debtor.

10          The next issue is the high/low PHONES issue and

11   what's the proper allowed amount.  The relevant documents

12   are in Binder No. 7.  They encompass Exhibits 91 through

13   115.  And I don't think there's any objections to any of

14   those exhibits.  So then I'd offer Exhibits 91 to 115 into

15   evidence.

16          THE COURT:  Does anyone have any objection to the

17   admission of Exhibits 91 through 115?

18                (No audible response.)

19          THE COURT:  I hear no response.  They're admitted

20   without objection.

21   (Exhbitis 91 through 115 are admitted into evidence.)

22          MR. BENDERNAGEL:  And before I hand over the

23   podium to Mr. --

24          THE COURT:  Zensky.

25          MR. BENDERNAGEL:  I'm sorry?  Who's first?

1              THE COURT:  Mr. Zensky.

2              MR. BENDERNAGEL:  I just can't -- Mr. Zensky.

3    I'd just point you to Exhibit 115 which is sort of at the

4    end, but probably should be at the beginning.  That is the

5    stipulation that the parties worked on and it's been agreed

6    to, and I think the Court has already sort of certified or

7    approved, which lays out the factual predicate for these

8    arguments.  And I don't think there are any factual disputes

9    relating to this that I'm aware of.  And with that, I'll

10   hand the podium over to Mr. Zensky.

11             THE COURT:  All right, thank you.

12             MR. ZENSKY:  Good morning, Your Honor.  For the

13   record, David Zensky, Akin, Gump, Strauss, Hauer & Feld, for

14   Aurelius Capital Management.

15             I lost about 45 seconds and now I'm not sure if

16   we'll finish by 12:15.  One just point of note.  In this

17   binder, there were four exhibits 108 through 111 which

18   actually relate to yesterday's issues and I think they got

19   numbered out of order, but everything else in this binder is

20   relevant to the issue we're going to discuss now, the low

21   versus high PHONES issue.

22             In addition, Your Honor, the note itself, the

23   global note that represents the PHONES interest and the

24   PHONES indenture is back in Binder 1.  And I'm going to be

1   referring to the note which is Exhibit 3, so I don't know if

2   Your Honor still has that binder available or --

3            THE COURT:  I do.

4            MR. ZENSKY:  -- would like one handed up.

5            THE COURT:  I have.

6            MR. ZENSKY:  Okay.  Your Honor, we believe that

7   the holders of PHONES interest that tendered and requested

8   exchange payments in the weeks leading up to the debtors'

9   petition date are entitled to an allowed claim in the amount

10  of the exchange payment that they were promised, but did not

11  receive, and are not entitled to have their claim allowed in

12  the full amount of the notes that they tendered for

13  exchange.

14            Your Honor confronted two issues regarding the

15  PHONES notes during the course of the last confirmation

16  hearing and resolved one of them.  The Court determined that

17  whatever the proper amount of the claim, that it's not

18  subordinated.  And that the holders of these interests will

19  recover on the same basis as the holder of PHONES notes --

20  holders of PHONES notes that were not tendered.

21            The Court determined that the record was not

22  fully developed enough, however, to answer the second

23  question, which is what is the proper amount.  As Mr.

24  Bendernagel referred a few moments ago, the parties have now

25  developed the record to that point and put before you the

1    relevant documents and facts through the stipulation.  I

2    should add that the stipulation provides that the documents

3    can be treated as business records and therefore used for

4    hearsay purposes.  And those documents include the dates of

5    the -- the dates the tenders were made and the dates the

6    payments were due which is specifically one of the points

7    the Court pointed out it did not feel it had clarity on the

8    first time around.

9              THE COURT:  All right.  But that having been

10   said, is it necessary that I make this decision?  And it

11   seems to me the answer to that question is dependent, at

12   least in part, on how I decide issues we've already argued.

13             For example, if I decide that the retirees and

14   the Swap claim are entitled to the treatment that the plan

15   provides and have senior status, the distribution -- there

16   isn't a distribution, it seems to me, under the present

17   valuation that reaches the PHONES.  Am I right about that?

18             MR. ZENSKY:  Right, no.  But the -- because the

19   PHONES turnover and they get pari passu collection from

20   Tribune and then turnover, whether it's the low or high

21   amount effects how much initially gets allocated to the

22   PHONES and then spun up to whoever the Courts determine is

23   senior indebtedness.  So while I believe, under one

24   potential combination of events it doesn't make a

25   difference, on every other combination of events, it does

1  make a difference, whether it's a low PHONES or high PHONES.

2  And I think if you go back to look at the chart, that was

3  used in a prior argument, you'll see that.

4                THE COURT:  Okay.

5                MR. ZENSKY:  And I think at this point, the

6  parties in interest do have an interest in getting this

7  issue resolved, Your Honor.

8                THE COURT:  I know.  As I've said, I've received

9  lots of invitations, but I don't accept them all.

10                          (Laughter)

11                MR. ZENSKY:  Okay.  Understood.  And I believe

12  that the record is developed and Your Honor will be well

13  positioned to make this decision.

14                Your Honor, the -- as I said, that we believe

15  it's the low PHONES amount and that the parties who tendered

16  have a claim for the exchange payment.  If you look at

17  Paragraph 35 of the stipulation, that provides the agreed to

18  calculation as to how many PHONES notes will be deemed

19  outstanding in the event you would agree with our position

20  and that is 4,519,910 units.

21                Your Honor, we believe the party asserting the

22  high PHONES amount has the burden on this issue.  That this

23  is essentially claims objection procedure.  And in your

24  confirmation opinion, you said -- you anticipated that

25  that's how it would arise.  The debtors scheduled the low

1    PHONES amount, Wilmington as the indenture trustee, to

2    preserve the rights of everyone, put in a proof of claim for

3    the higher amount.  That's been objected to and the burden

4    should flip to the party who is now asserting the claim that

5    they're entitled to recover the full amount of the notes

6    that they tendered.

7          We believe the issue should be decided as one of

8    contract, Your Honor.  And to borrow from Mr. Stark's

9    presentation a few moments ago under the *Butner* principle,

10   what rights did the parties bring to the table on the

11   petition date?  The issue is not one of ministerial

12   recordkeeping as to when the bonds were deleted from the BTC

13   records and what Deutsche Bank did or didn't do when the

14   notes were transferred to them.  It's what rights did these

15   holders have against the debtors on the petition date?  And

16   what they had was a right to the exchange payments, $58

17   million.  They did not have a right to get their notes back.

18   And they did not have the rights to a claim for $481

19   million, the face amount of the notes that had been

20   tendered.

21         Why do I say that?  Pre-petition, Your Honor, all

22   steps were taken to form a binding bilateral contract under

23   which the holders of these notes had tendered back to

24   Tribune for payment and cancellation.  And in exchange, they

25   were to be paid an amount dictated by the terms of the note.

1  The debtors had no discretion to accept the tender or not.

2  The note provided that each party was bound from the moment

3  that the PHONES were tendered.  And if you look back at the

4  global note, Your Honor, this is Exhibit 3 in Binder 1.

5              THE COURT:  I have it.

6              MR. ZENSKY:  Okay.  And you turn to Page R-6,

7  this lays out the point that I'm making and it's very clear

8  to see.  The exchange option begins on the bottom of Page R-

9  6.  And it says that the holder of each PHONES shall have a

10  right at any time and from time to time, to exchange each

11  PHONES.  And then it goes on to provide what the formula is.

12  The formula is not at issue on today's motion.

13              If you carryover to the top of R-7, the next

14  sentence begins that the company shall pay the holder of

15  each PHONES the amount due upon exchange as soon as

16  reasonably practicable after such holder delivers notice --

17  they call that the exchange notice -- to the trustee, but in

18  no event, earlier than three trading days after the date of

19  exchange notice or later than ten trading days after the

20  date of such exchange notice.

21              THE COURT:  So it's your position that regardless

22  of the process which is supposed to occur after giving of

23  the notice, it doesn't matter?

24              MR. ZENSKY:  Once the notice is given, the

25  parties are locked into the exchange.  And what happened

1   here, Your Honor, the timing of this, everything that needed

2   to be done was done prior to the petition date.  And if you

3   look at Exhibit 91 and 92 -- 91 for example, this provides

4   the Court with the dates that the PHONES at issue were

5   tendered to the company.  And that was between November 26

6   and December 8, right up to the petition date.  And it also

7   has the dates that payment was due to be made, all of which

8   fell after the petition date running from December 11 to

9   December 17 or later.  The petition date intervened and the

10  payments were not made.  Now that was an unfortunate event

11  for many parties, not just the holders who tendered.  There

12  are lots of parties who are not getting their bargained for

13  exchanged from the debtors and these holders are no

14  different.  They come to the table with the rights they had

15  as of the petition date.

16          Now after the petition date, as the Court may

17  recall, some of the holders through the indenture trustee,

18  made a request to get their notes back, their PHONES back.

19  And the debtors said no, that the tender was irrevocable and

20  we agree with that.  And that's the position that I think

21  I've just laid out.  And that exchange of correspondence, if

22  the Court is interested, is at Exhibit 103 and 104.  103 is

23  the request and 104 is the response of the debtors.

24          And one thing that's important about Exhibit 104

25  which I'll come back to in a minute is that the debtors'

1    position that the tender was irrevocable, had nothing to do

2    with recordkeeping or administerial issues about when the

3    notes were deleted from the DTC system or who had possession

4    of them, it was that the exchange was set in motion, the

5    parties rights were locked in, and it was irrevocable.

6    There's nothing about these other issues in Exhibit 104.

7            The arguments for the high PHONES amount,

8    initially, or the first argument that's laid out is well,

9    the contract, the note, or the indenture, it doesn't specify

10   that the tender is irrevocable so, therefore, they should

11   win.  I mean, that's right.  The note doesn't say that the

12   tender is irrevocable using those words, but I believe the

13   provisions I just pointed Your Honor to, make it clear that

14   a binding obligation and duty is fixed from the moment that

15   the note is tendered and --

16           THE COURT:  And that in your view would have been

17   true whether the bankruptcy intervened or not.

18           MR. ZENSKY:  That's correct.  Now, if the

19   bankruptcy had not intervened, what rights -- and the

20   debtors had still refused to pay and the holders brought a

21   lawsuit, what rights they would have been entitled to, what

22   they would have been entitled to recover, rescission or not

23   is not the point.  The point is the bankruptcy intervened

24   and the rights were fixed on that date.  Now I don't believe

25   that they would have been entitled to get their notes back.

1    No law has been set forth that lays that out.  But again,

2    that wouldn't turn on whether the notes were listed or not

3    listed at any point time.  It would turn on contract law.

4    And that's why it doesn't matter whether the note says that

5    the tender is irrevocable.  Contract law offer acceptance,

6    definiteness, and consideration tell us when parties are

7    bound.

8            Now Wilmington also suggests that the Court

9    should find evidence, needs to find evidence of an intent

10   that if they didn't get paid and the company went into

11   bankruptcy, that they would only have the claim for the

12   exchange payment.  The -- no note would ever say that.  And

13   no party ever enters a contract intending to do business

14   with a company that ultimately files and get in a line with

15   everyone else.  That is not the test for whether the parties

16   were bound as of the petition date.

17           Now while the Wilmington Trust brief does not

18   express it or justify an award of rescission, that is

19   essentially what they are looking for.  And as far as we can

20   see, the only basis to restore these holders to their

21   original position, essentially to unwind the transaction as

22   if it had never happened.  But we don't see how the Code

23   sanctions that result, Your Honor.  There's not a provision

24   that's been cited to the Court that allows a party who

25   transacts with a company pre-petition, to unwind the deal

1   entirely after the petition date because they did not

2   receive the bargained for exchange as of the petition date.

3   And that's the case whether there was full performance still

4   owing from the debtor to that party or partial performance.

5   There is no exception for this type of exchange.

6           There is a narrow exception that we found in the

7   Code under -- in 546 for the sale of certain goods that a

8   party is entitled to reclaim them if they haven't been paid

9   if they are sold to the debtor within 45 days of the

10  petition date.  But there is no broad exception that would

11  allow rescission for this type of transaction.

12          Even if you could harmonize the concept of

13  rescission with the Code and allowing a party to unwind

14  history so to speak, we don't believe that Wilmington has

15  made out any case under Illinois Law which we think would

16  govern this issue as the indenture is governed by Illinois

17  Law.  We cited the *Scott* case to Your Honor from the

18  Illinois Appellate Courts which denied rescission in a

19  contract case, left the party to its legal remedy.  It's

20  money damage remedy, even though rescission would have

21  resulted in a far better result, that's not the test.

22          And finally, Your Honor, I think that the concept

23  of whether they would or the tendering holders would or

24  would not be entitled to rescission is moot in the sense

25  that no one has demanded it at this point.  No holder of

1  those instruments has ever filed an adversary or a proof of

2  claim seeking to rescind the tender.  And really talking

3  about it is not enough under State Law, if the Court were to

4  determine that that governed here.

5          So finally, Your Honor, let me turn to the issue

6  that Wilmington, I think posits as the main issue which is

7  whether these bonds were properly deleted or delisted from

8  the depository trust company system.  And if so, that

9  somehow we can unwind the transaction.

10          I think it's important to be clear that there's

11  two levels of recordkeeping at issue here.  There's the

12  recordkeeping in the DTC system through which the PHONES

13  were tendered for exchange.  And then there's the

14  recordkeeping kept by then indenture trustee, Deutsch Bank.

15  And Wilmington is arguing that it's the first level.  That

16  DTC should not have removed these notes from its system and

17  if it hadn't, then all would be well.

18          Again, we don't think that that's at all the

19  issue here.  And again, the debtors did not think that was

20  the issue at the time they were asked to give the notes

21  back.  But were the Court to consider that an important

22  aspect of its analysis, the fact is that DTC did exactly

23  what was contemplated.  It did remove these bonds from its

24  system at the time they were presented for exchange.  And if

25  you look at the stipulation in Paragraph 14, it starts to

1  talk about the procedures that are set in motion upon the

2  tender.

3        And then if you look at, let me find the exhibit

4  number, Your Honor, Exhibit 98 which again has been

5  stipulated to be a business record.  That's an exchange

6  between Deutsche Bank and the debtors about the exchange

7  procedures that specifies that at the moment and time at

8  which a tendering holder submits it to DTC through what they

9  call the DEWAC system, that is the point in time at which it

10  gets eliminated from DTC's records and transferred over to

11  Deutsche Bank.  Well that's exactly what happened here.

12        So again, the point of Wilmington that something

13  went wrong here in terms of recordkeeping, we don't think is

14  well founded.  In any event, if we get back to first

15  principles, we don't think that's the issue that should

16  control, the issue is what rights did these parties have on

17  the petition date.  And it wouldn't matter to our position

18  if they were still listed in DTC or not listed in DTC

19  because the rights that these holders had was to the

20  exchange payment, nothing more and nothing less.

21        And it's for that reason, Your Honor, on this

22  last issue that the parties have briefed, why we take the

23  same position with respect to the three tenders which

24  apparently were not successfully absorbed into the DTC

25  system.  So they still show up, apparently.  It's the same

1   issue.  Those parties did initiate all these steps.  The

2   parties being the parties who held those three parcels of

3   notes.  They took the steps necessary to invoke the exchange

4   right.  They were due the exchange payment as of the

5   petition date and should get an allowed claim in that

6   amount.  That's all I have, Your Honor.

7            THE COURT:  Thank you.

8            MR. STARK:  I'm going to try to talk quickly to

9   get it from the time allotted.  Robert Stark from Brown

10  Rudnick on behalf of Wilmington Trust.

11           Just to set the stage very briefly and augment a

12  little bit more of what Mr. Zensky just said.  Initially, we

13  presented the issue to Your Honor as effectively an

14  interpleader.  Wilmington Trust took no position and said we

15  just simply need to understand where the answer lies.  And

16  we tendered the issue to those who had put in an exchange

17  notice and those who had not.  And those -- and left it to

18  those sides to argue it.  Unfortunately, that contested

19  matter didn't yield sufficient evidence and analysis

20  apparently, to enable the Court to reach a conclusion on

21  October 31.

22           And so we read Your Honor's opinion on this

23  particular issue as an invitation.  Perhaps that's too

24  strong of a word, for us to jump into the breach and provide

25  a little more information and guidance.  And we did that.

1  We reached out to Deutsche Bank and the company and Aurelius

2  and others and said let's put all the information in the

3  stipulation so we have it in one place.  We now know the

4  whole story.  We have that before Your Honor.  We have also

5  all the other pieces of information as well, including, I

6  think, importantly, the prospectus for the PHONES indenture

7  and the global note and that's all in front of you.

8          But I think what I hope would be a little bit

9  more persuasive is the fact that we've actually decided to

10  take a position.  After taking a look at all that evidence,

11  we've decided that the high PHONES number is the right

12  number, after having taken the interpleader position before

13  and hopefully that's of some use to the Court.

14          Just to run through the facts very quickly, and I

15  do think it's important.  The indenture and global note

16  enabled the exchange of the PHONES for a cash price based

17  upon the trading value at that point of Time Warner stock.

18  But the exchange procedures didn't work.  They were

19  predicated in an antiquated system.  So the pages that Mr.

20  Zensky pointed Your Honor to were, in fact, replaced.

21          Tribune and Deutsche Bank, Deutsche Bank was our

22  predecessor indenture trustee, reached a determination that

23  there should be new exchange procedures.  And they had the

24  right to impose -- to agree amongst themselves without going

25  out to the noteholders and actually agreeing upon those

1    procedures because in the indenture of Section 9.018, it

2    says that for procedural issues that are non-substantive,

3    the indenture trustee and the company could reach agreement

4    about exchange procedures.  And so those are the procedures

5    that are applicable and express the intent of the parties

6    and that should be binding here or not and what was

7    otherwise in the global note.

8            And here one of the procedures in sum and

9    substance, a holder that wanted to exchange the PHONES for

10   cash, would have his or her broker fill out a particular

11   piece of paper.  Your Honor's been provided with it.  It's

12   an exchange notice.  He would then fax it to Deutsche Bank

13   and then would initiate what's referred to as a DEWAC.  A

14   DEWAC stands for a deposit withdraw at custodian.  It's an

15   automated system for depositions withdraws where DTC is the

16   bookkeeper of record for the PHONES or any particular

17   security.

18           Deutsche Bank would then have the ability to

19   accept the DWAC.  And it would from the exchange notice,

20   "Take possession of the PHONES tendered for exchange".  In

21   other words, Deutsche Bank was intended to become a

22   custodian for those PHONES, a trustee for the PHONES,

23   effectively taking ownership of them, pending the ultimate

24   exchange of cash for PHONES and a later point in time.

1           When the DEWAC was initiated, DTC would then

2   debit the book anticipating the cancellation of the PHONES

3   but -- and that would be reflected on the books and records.

4   But according to the exchange notice and the expressed

5   intent of the parties, those PHONES were not intended to be

6   cancelled by the DTC notation, Deutsche was supposed to be

7   holding them in custody.

8           You have to again realize this is an automated

9   system that the DEWAC debit wasn't intended by the parties

10  in any of the agreements to have any legal significance,

11  it's a bookkeeping function.  And the theory was and you'll

12  see this in Deutsche Bank's response to interrogatories,

13  that if it failed, they were still the owner effectively of

14  the PHONES and it would just simply be a bookkeeping

15  function to reverse that DEWAC, the DEWAC debit, excuse me.

16          When Deutsche Bank would receive the exchange

17  notice, it would then hand it over to Tribune and then

18  Tribune would calculate the cash payment that was due and an

19  officer certificate would be generated and handed over by

20  Tribune to Deutsche Bank saying this is the amount of cash

21  that you're going to receive.  And then some days

22  thereafter, there would be a closing.  That would be the

23  exchange payment date, defined term.  And at that closing,

24  there would be -- Tribune would hand the cash over to the

25  holder and then thereafter Deutsche Bank would actually and

1  I'll quote the words, at that moment, Deutsche Bank "Will

2  cancel the tendered PHONES in the trustees' possession."

3        Before the bankruptcy, holders of $2.6 million,

4  PHONES tendered their exchange notices pursuant to these

5  procedures.  Those holders initiated the DEWAC.  The DEWAC

6  was accepted by Deutsche Bank.  The understanding as

7  expressed in the agreements was that Deutsche Bank was then

8  holding them as custodian, pending the closing.  And DTC

9  automatically in an automated system, debited the PHONES,

10  but that was not the intent of either Deutsche Bank or the

11  holders.

12        Before the bankruptcy, there's an incremental

13  237,000 PHONES and change that were tendered, but were not

14  "DEWAC'd".  They -- there was no DEWAC initiated.  They just

15  simply filled out the exchange notice or Deutsche Bank

16  didn't accept the DEWAC and DTC did not, in fact, debit

17  those particular PHONES.  So those are the facts in sum and

18  substance.

19        We interpret Aurelius' position this way.

20  There's effectively been a novation of the agreements.  The

21  PHONES indenture, the global note as they've both been now

22  supplemented, modified, per the indenture terms through

23  these new exchange notice procedures, that's now been

24  replaced according to Aurelius' position with essentially a

25  Purchase Agreement to the company.  And that the Purchase

1  Agreement has not been tendered.  And so, therefore, the

2  cash the amount is -- the amount due is reduced down to what

3  that Purchase Agreement -- that Sale Agreement, excuse me,

4  that Sale Agreement by the PHONES holder to the company and

5  it should be reduced down to that particular quantum.

6          Their other argument and you heard the word

7  rescission and awful lot, is that essentially Aurelius is

8  arguing that the holder gets to rescind that Sale Agreement,

9  not the PHONES indenture.  So it is essentially a novation

10 argument that they're making, Your Honor.  And we disagree

11 with that for four reasons.

12         The first is that the parties expressed intent

13 was that there's no novation here.  And that there was not

14 to be a cancellation of the PHONES absent cash payment.  The

15 exchange notice is about as clear on its face.  I quoted

16 some of the language for Your Honor.  That Deutsche Bank was

17 to be holding these securities in custody, pending an

18 exchange event that would be subsequent.  And that only when

19 the cash was received, then Deutsche Bank would, and I

20 quoted the language for Your Honor, then would cancel the

21 PHONES.  So that's not necessarily reflecting a novation,

22 that's reflecting a condition precedent. Get the cash, we

23 then cancel.

24         And this is otherwise reflected in and we think

25 from an intent perspective, in indenture Section 3.06 which

1  says that if the PHONES are mistakenly destroyed, lost or

2  stolen, then Tribune will have to replace them.  Because

3  that helps inform the modified indenture per the exchange

4  notices.  Certainly that's what happened here.  DTC had

5  debited the books and records, but that was not the intent

6  of the parties, so 3.06 seems to apply.

7          The second is -- the second reason why we don't

8  agree with Aurelius' position is that you can't do a

9  rescission.  Your Honor, if this is a rescission of a Sale

10 Agreement of a security, that would be 510(b) claim.  Your

11 Honor has already dealt with that.  I gather law of the case

12 doctrine's been thrown around a lot, but we've dealt with

13 that issue, it doesn't feel right.  It's not a 510(b) claim,

14 it's not a rescission claim.

15         The third basis for our disagreement with

16 Aurelius' position is that DTC was not given any real agency

17 power.  DTC is essentially a computer.  Absent cancellation

18 at Deutsche Bank's specific request for the exchange notice,

19 the indenture doesn't treat DTC actions as intending to have

20 any legal importance and there's no statutory basis to

21 otherwise draw the conclusion that they are the agent, well

22 as sort of a sub-agent for Deutsch Bank at the time.  In

23 fact, UCC Article 8 which deals with the exchanges of

24 securities, as well as, Foundational Agency Law that we've

25 cited in our brief, would suggest that, I think specifically

1   states that, the DTC -- gives the principle that DTC

2   automated debits that were not intended by the parties to

3   have legal importance does not.

4           Frankly, and related to that particular point is

5   if the claim is, in fact, reduced, somebody ought to be

6   responsible for that.  And I think it speaks --

7           THE COURT:  Well, actually, that's a good point,

8   I think.  And it seems to me, one way to look at it, on a --

9   I guess, a simplified level is Aurelius says what happens

10  after the giving of the notice doesn't matter.  Rates are

11  fixed, at that point.  You say, well, that's not right.

12  What happens after is not only important; it's necessary, in

13  accordance with the parties' agreement.  And if somebody

14  breaches that agreement, isn't the person that breaches it

15  the one responsible for what damage might ensue from that?

16          MR. STARK:  Well, I think that's right, Your

17  Honor.  Unless --

18          THE COURT:  Okay.  Was that the debtor here?

19          MR. STARK:  Well, that's exactly what I was

20  getting at.  I can't really see anything that Deutsche Bank

21  did wrong or DTC did wrong, and so the question then is what

22  did Tribune do wrong, inconsistent with the terms of the

23  agreement?  They didn't pay -- and again, I think the

24  contract is clear.  They did reach the agreement.  They

25  didn't come forward with cash, but under the agreement

1   terms, if that doesn't happen, we, then, don't have a

2   reduction of PHONES; the PHONES never ceased to be.  The

3   PHONES remain extant, in their previous form, intended by

4   the parties to be held in custody by Deutsche Bank, to be

5   returned by Deutsche Bank to those particular holders.

6            You know, on a level, Your Honor, and this just

7   sort of my last point on this, I -- the argument sort of

8   feels kind of cute.  The PHONES were issued with a

9   prospectus, and that prospectus disclosed how these exchange

10  -- what the exchange was supposed to do.  Nowhere -- while

11  the procedures changed, the disclosure and the expectations

12  of the parties, as otherwise laid out in the -- as laid out

13  in the prospectus, didn't change.  And nowhere in that

14  prospectus did [indiscernible] disclose the risk that pre-

15  bankruptcy it might not honor the exchange request.  Well,

16  that's on there.  But the next implication is then post-

17  bankruptcy, you could say that your claim has been

18  evaporated if you're somehow stuck in this gap period.  And

19  it feels like that would be something that ought to have

20  been disclosed at the time if that, in fact, was a real

21  risk.

22           There is a point in the brief, and I'll mention

23  it briefly that Aurelius says wait a second.  We were

24  supposed -- we were only supposed to consider the

25  quote/unquote outstanding PHONES at the time, and they rely

1  heavily upon, at least in the brief anyway, the word

2  outstanding as defined in 1.01.  Actually, I think that

3  actually helps support our argument.  Outstanding is defined

4  as all PHONES, except PHONES canceled by the trustee or any

5  authenticating agent or delivered to the trustee or any

6  authenticating agent for cancelation.  There's nothing in

7  the evidence that indicates that Deutsche ever intended to

8  or did cancel these PHONES.  By the contrary, they thought

9  -- and the interrogatories reflect this -- that they are

10  still holding them.

11        And then, there's nothing in the record

12  indicating that DTC was ever given the role of

13  authenticating agent.  An authenticating agent is defined on

14  page two of the indenture as any person authorized by the

15  trustee to act on behalf of the trustee to authenticate the

16  securities.  There's nothing in the record to support that.

17  Rather, the record says that Deutsche Bank would, after

18  receiving the cash, cancel them itself.  So in fact, it's

19  the contra of an agency delivery to DTC.

20        Also, I point out to section 3.09, which governs

21  cancellation that says that if anyone instructs somebody

22  other than the trustee to cancel PHONES, then that other

23  person must turn those PHONES over to the trustee for

24  cancelation.  And it also says that the cancelation, when

25  received by the trustee, need not be automatic -- is not

1  automatic, and it need not be immediate.  Rather, it says

2  that Deutsche Bank had sort of a condition subsequent, that

3  it had to promptly thereafter cancel the certificates, and

4  none of that happened.  Deutsche Bank did nothing to

5  terminate and cancel these certificates.

6           So, Your Honor, based upon that, we think the

7  contract is clear.  There hasn't been innovation.  There

8  hasn't been a -- this isn't a rescission arguments.  The

9  contract seems facially clear.  There was a condition

10 precedent before the cancelation of the PHONES.  They had to

11 be -- we have to receive cash.  And so therefore, it should

12 be the high PHONES amount.

13          Breaking it down, though, just to sort of wrap --

14 make sure I've touched all bases, if Your Honor draws some

15 conclusion that de-WACC'ing -- I'm -- I think I'm coining a

16 phrase there -- actually has legal import here, such that

17 the 2.6 million PHONES that were tendered in the de-WACC

18 was accepted by Deutsche Bank, such that they then took the

19 ownership of it.  That says nothing about the 327-plus-

20 thousand PHONES, where all that was done was an exchange

21 notice, but nothing was actually -- there was no actual de-

22 WACC initiated or accepted, and we would think those should,

23 at the very least, be found to still be in the possession of

24 those holders.  That would bring the claim to $819 million,

25 give or take.

1          Any questions for me, Your Honor?

2          THE COURT:  I do not have any.  Thank you.

3          MR. ROSNER:  Your Honor, David Rosner of Kasowitz

4   Benson Torres & Friedman.  For this point, I'm only speaking

5   for Law Debenture and not for Deutsche Bank, and I just want

6   to place on the record that we support and join in

7   Wilmington Trust Company's position as to the high notes --

8   as to the high PHONES notes.  Thank you, Your Honor.

9          THE COURT:  Okay.  Thank you.  All right.  We're

10  left with one issue.  Do we have a time estimate on that?

11         MR. BENDERNAGEL:  Probably about an hour-and-a-

12  half.

13         THE COURT:  Okay.  We'll recess now, and

14  reconvene at 1:30.  The Court will stand in recess.

15  (Recess at 12:11 p.m. to 1:34 p.m.)

16         THE CLERK:  All rise.

17         THE COURT:  Good afternoon.

18         MR. BENDERNAGEL:  Good afternoon, Your Honor.

19  Jim Bendernagel for the debtor, Your Honor.

20         Before we start the last episode, I have copies

21  of the -- a clean copy of the confirmation scheduling order

22  I'd like to hand up --

23         THE COURT:  All right.

24         MR. BENDERNAGEL:  -- for signature.

25         THE COURT:  Yes.  Thank you.  No changes from

1   yesterday's draft except the insertion of the pre-trial

2   date?

3           MR. BENDERNAGEL:  That's correct.  And we also

4   dated the thing at the end and put the word "Judge" after

5   "United States Bankruptcy" and your title --

6           THE COURT:  All right.

7           MR. BENDERNAGEL:  -- but other than that, it's

8   the same.

9           THE COURT:  The order's been signed.

10          MR. BENDERNAGEL:  Thank you.  Your Honor, the

11  final episode is the issue of who has priority, EGI-TRB or

12  the PHONES.  This is the last issue, and it's binder 8 of

13  the exhibits.  It has Exhibits 116 through 157.  As there

14  are a number of evidentiary issues that relate to these

15  exhibits, I can summarize them quickly, and we can decide

16  how to move forward.

17          Exhibits 116 through 136 are agreed business

18  records, but there's two objections.  With respect to all of

19  those, there's an objection by EGI-TRB as to relevance.  I

20  think this is the parole evidence argument.  And then,

21  specifically, with respect to Exhibit 128 is an internal

22  hearsay objection with respect to the comments that a person

23  from JPMorgan attributes to one of the EGI employees.

24          The next group of documents are essentially

25  drafts of the EGI-TRB subordination agreement, and those are

1   Exhibits 138, 140 to 144, 146 to 149.  I think the only

2   objection there is relevance, again on parole evidence.

3            I think the next set of documents are -- can

4   probably come in as not objected to.  They're SEC filings.

5   That's Exhibits 137, 139, and 145, and I'd offer those in

6   evidence at this juncture.

7            THE COURT:  137, 139, and 145?

8            MR. BENDERNAGEL:  That's correct.

9            THE COURT:  Is there any objection to the

10  admission of those exhibits?

11  (No audible response)

12           THE COURT:  They're admitted without objection.

13  (Exhibits 137, 139, and 145 are admitted into evidence.)

14           MR. BENDERNAGEL:  The next exhibit is Exhibit

15  151, which is the examiner's -- excerpts from the examiner's

16  report.  Nobody's indicated that they have objections to

17  that, so I'll offer that and see if anybody objects.

18           THE COURT:  Any objections to the admission of

19  excerpts from the examiner's report?

20           MR. ZENSKY:  Your Honor.

21           THE COURT:  Yes.

22           MR. ZENSKY:  I'd just ask for a clarification.

23  Is it just being offered for use with respect to the issue

24  that's being discussed now, because there was some

25  discussion yesterday about the examiner's report?

1        MR. BENDERNAGEL:  No, I think it's just for

2   purposes of this particular issue.

3        MR. ZENSKY:  Then I have no objection.

4        THE COURT:  All right.  It's admitted.

5   (Exhibit 151 is admitted into evidence.)

6        MR. BENDERNAGEL:  The next one, Your Honor, is

7   Exhibit 152, and I don't believe there's any objection to

8   this.  It's the actual model that was used to generate the

9   recovery charts that you entered earlier in the day.  I'd

10  offer 152.

11       THE COURT:  Any objection?

12  (No audible response)

13       THE COURT:  I hear no response.  It's admitted

14  without objection.

15  (Exhibit 152 is admitted into evidence.)

16       MR. BENDERNAGEL:  The next set of exhibits is

17  153, 154, 155.  These are documents -- well, two of them are

18  orders -- or one's a stipulation.  That's 155.  154 is an

19  order, regarding the stipulation.  And then, 153 is a letter

20  brief.  I'm not exactly sure why they're being offered, but

21  I don't think there's any objection to those, so I'd offer

22  them.

23       THE COURT:  Any objection to 153, 154, 155?

24  (No audible response)

25       THE COURT:  I hear none.  They're admitted.

1   (Exhibits 153, 154, and 155 are admitted into evidence.)

2              MR. BENDERNAGEL:  Now, the other documents that

3   are on here that need to be addressed are -- if you look at

4   Exhibit 150, this is a letter from a lawyer for EGI-TRB in

5   2009, Mr. Krakauer at my firm, and that document has been

6   objected to, on numerous grounds, by Wilmington Trust.  It's

7   also a fact that Wilmington Trust has objected to Exhibits

8   156 and 157, which are excerpts from the depositions that

9   took place last week.

10             So to summarize, I think what you have is a

11  series of objections.  With respect to the business records

12  and the drafts, you have a relevancy objection that EGI has

13  made on parole evidence grounds.  You have this hearsay

14  objection with respect to 128.  And then, you have

15  objections to Exhibits 150 and 156 to 157, and I'm not sure

16  how you want to handle that.

17             THE COURT:  Well, I'm wondering if I should hear

18  argument first and then deal with the evidentiary

19  objections.

20             MR. BENDERNAGEL:  That had been suggested by the

21  parties, Your Honor, as a way of dealing with this, and I

22  think some of these evidentiary arguments are in the

23  briefing as well, and it's conceivable you could take some

24  of these exhibits into evidence on a conditional basis,

25  subject to your willingness to the parole evidence issues.

1            THE COURT:  Mr. Siegel [ph]?

2            MR. SIEGEL:  One, we were not objecting to Mr.

3    Hoschild's [ph] deposition, which is 157.  I think both

4    parties have made designations to his deposition, and we'll

5    be submitting that, if not before today's hearing ends, at

6    the end of the day or tomorrow morning, at the latest.

7            Your Honor, I think that at least one of the

8    objections should be heard now, and that is our objections

9    to Mr. Pate's videotape deposition, and one of the reasons I

10   say that is I know that Mr. Bradford intends to play part of

11   the -- that deposition during his oral argument, and if he

12   plays that, then I have to play some, and it really deals

13   with whether his testimony is admissible at all.  There's no

14   dispute that Mr. Pate was the "lead negotiator for EGI-TRB"

15   during the LBO, but with respect to the subordination

16   agreement, you see the statements quoted from him in the

17   brief.  He testified to what his belief was as to

18   subordination.  And when I asked him if he spoke to anybody

19   at Tribune about that, he said no.  These -- his

20   conversations were internal.  He spoke to the people at EGI.

21   He spoke to his lawyers, and -- but he does not -- did not

22   speak nor negotiate the terms of the EGI subordination with

23   Tribune.  So we objected to his testimony at all, that his

24   subjective intent is irrelevant.  And if you want to get

25   into the argument more, I'll give you the cases.  We've

1    cited them in our brief.

2            They've come back and said, well, under the

3    forthright negotiator rule, his testimony is allowed,

4    because he may have had this subjective intent, but because

5    there are documents that show that Tribune had -- knew or

6    should have known of his understanding, his testimony comes

7    in -- his subjective intent, even though he never discussed

8    it with anybody, and we just don't think that that's the

9    rule.

10           THE COURT:  Well, it's a --

11           MR. SIEGEL:  And we think that --

12           THE COURT:  -- rule with -- that I've never had

13    to address before.

14           MR. SIEGEL:  I know.  It's an interesting issue,

15    Your Honor.

16           THE COURT:  Oh, well, just one of many here.

17    (Laughter)

18           MR. SIEGEL:  And I just think that if we deal

19    with that first as a matter of evidence, that will eliminate

20    the need to play videos and that that should be dealt with

21    separately.

22           THE COURT:  Mr. Bradford?

23           MR. BRADFORD:  Your Honor, I'm happy to take up

24    all the evidentiary issues now, but I don't think it makes

25    sense to compartmentalize only Mr. Pate, because for me to

1   respond to Mr. Pate, I need to walk through most of their

2   parole evidence, which he addresses in the course of the

3   deposition.

4         The issue of his forthright negotiator testimony

5   is a small portion of the totality of his testimony.  We

6   intended to offer Mr. Pate as a witness at this hearing.  He

7   is unavailable today.  We established, in the deposition,

8   that he is out of the country, more than 100 miles.  We

9   think we've satisfied the standards for availability, so I'm

10  happy to address this further in detail.  What we intend to

11  present at the hearing is less than five minutes of video,

12  which I think will be helpful to the Court in understanding

13  what we're describing here.  It's about 4 minutes and

14  something seconds.  We've really timed it down.

15        What we have separately is we have marked up the

16  transcripts of both Mr. Hoschild and Mr. Pate.  With all the

17  testimony we'd like Your Honor to consider, we've

18  highlighted ours in one color.  We've highlighted what the

19  PHONES would like you to consider in another.  We thought,

20  at the conclusion of the hearing, we would tender that to

21  the Court, and the Court can decide whether it wants to

22  review all that or not.  And so I would suggest that we

23  proceed with the argument, because I think these are

24  relevance, and the role of parole here will make more sense

25  in that context, and we'd take those issues up at the

1  conclusion of the argument.  But again, I'm happy to do it

2  in whatever order the Court prefers, as long as we have a

3  chance to comprehensively explain why all this evidence

4  should either be excluded or admitted.

5          THE COURT:  I'd like to hear argument first.

6          MR. BRADFORD:  Sure.  If I might begin, then,

7  Your Honor.  We began with the premise that it is not

8  necessary to admit parole evidence here at all, that there's

9  two --

10         THE COURT:  And tell me specifically which

11 documents you don't -- you do not want in.

12         MR. BRADFORD:  I think every document that is in

13 dispute, with the exception of Mr. Pate's testimony, if and

14 only if parole evidence is admitted, are documents that we

15 would object to.  There is the one letter from Goldberg

16 Cohen, and if you could give me the exhibit number.

17         UNKNOWN:  128.

18         MR. BRADFORD:  128 is something we're offering,

19 but again, only if parole is admitted.  So if Your Honor

20 will recall, we had this dispute in the context of

21 discovery, where we took the position it was not necessary

22 to get into this.  And one part I want to stress about the

23 nature of the parole, it concerns only one of the two

24 agreements that you need potentially to construe.  All of

25 the parole here relates to the EGI-TRB subordination

1  agreement.  None of it relates to the PHONES agreement.  We

2  believe, and I'll get into this in the substance of the

3  argument, that it will not be necessary for you to construe

4  the EGI-TRB subordination agreement in order to resolve this

5  issue.  Obviously, Your Honor will make that determination.

6  But all of this becomes relevant in the first instance only

7  if you decide you need to construe the EGI-TRB subordination

8  agreement, and then second, if you decide that that

9  agreement is ambiguous and you need to consider parole

10 evidence.

11         So let's assume that both of those are now

12 satisfied.  The nature of the parole evidence, even if

13 parole evidence was permitted here, being offered by the

14 PHONES, is completely irrelevant to what the ultimate deal

15 of the parties is, and that's part of what Mr. Pate explains

16 at greater length in his deposition.

17         I can summarize the parole evidence that they're

18 offering in a couple of buckets.  There is a whole series of

19 e-mails that concern the submission to Moody's [ph] in March

20 of 2007.  And it is true, in the context of this initial

21 submission to Moody's, there is a discussion of whether the

22 first step EGI-TRB note should be subordinated to the PHONES

23 or senior to the PHONES.  And there are statements made by

24 various individuals that it should be subordinated to the

25 PHONES, and that's, in fact, discussed in Moody's letter of

1   March 29, 2007.

2            That same Moody's letter reflects that the deal,

3   at that point, was that EGI-TRB was essentially going to be

4   making an equity investment, that if step two investment,

5   instead of being a hard note, was an investment that had, as

6   a component of it, both some debt but also a warrant.  So

7   the whole 225 million had two parts to it, part equity in

8   the form of a warrant, part note.  And it was at that point

9   that it was expected that there -- or discussed that there

10  could be subordination completely of an instrument that had

11  an equity-like component.

12           Mr. Pate then testifies that that deal was

13  completely discarded.  And the reason it was discarded was

14  because it became clear that, from a tax standpoint, you

15  could not allow that note ever to be characterized as

16  equity.  You would have multiple holders of equity, and the

17  subchapter S status would be destroyed.  And it was at that

18  point, after the Moody's letter, that the deal changed.  And

19  the deal changed, as we all concede today, such that there

20  is an independent note as one investment -- that's the 225

21  million -- and then separately a warrant, which was the $90

22  million investment, and that at the time the deal changed,

23  it became important to all concerned that the note be what

24  he called a hard note, that priority as to that note

25  mattered.  And from his understanding, at that point

1  forward, the deal was that the note would not be

2  subordinated to the PHONES.  In fact, it would be senior to

3  the PHONES.

4           And in fact, all of the parole evidence pre-dates

5  that change in the terms of the deal, with a couple of

6  exceptions that I can come to that I think just aren't at

7  all probative, but virtually everything that we're fighting

8  about pre-dates Mr. Pate explaining that the deal changed

9  thereafter.  One of the objection indicators that the deal

10 changed is the April 5 SEC filing, which has just been

11 admitted into evidence, and that goes to what Tribune told

12 the SEC the deal was, even with respect to the first step

13 note.  And what Tribune explained to the SEC was EGI-TRB's

14 note would be subordinated to "senior obligations".  And

15 that was with a lower S and a lower O.  Nobody would mistake

16 the PHONES for senior obligations.  Didn't say it was

17 subordinated to all debt; said subordinated to senior

18 obligations.  That's what was represented to the investing

19 public; that's what was represented by Tribune to the

20 Securities and Exchange Commission.  That representation was

21 made again later in June, and it was made again in July,

22 well after the last piece of parole evidence that the PHONES

23 want you to consider.  So what they've got is a lot of noise

24 and back-and-forth about an obviously earlier version of the

25 deal, which is completely irrelevant, even if parole

1  evidence comes in.

2        There's a couple straggler pieces of evidence,

3  where now they want you to look at the drafts, the second

4  step subordination agreement, and I think the only item of

5  potential relevance there is one of the banks writes a

6  handwritten note that says use the terms of the junior

7  capital note in drafting the subordination agreement.  Well,

8  the junior capital note refers to the step one note, which

9  was, in turn, described in the SEC filings as junior only to

10  senior obligations.

11        So that's evidence they want to bring in.  We

12  think it's good for us.  Mr. Pate explains what's meant by a

13  junior capital note in that context and that he understands

14  it to refer to the hard note that's not subordinated to the

15  PHONES.

16        I think there's one other document in June, where

17  there's a list of debt provided by Tribune, and it lists all

18  the debt, including the PHONES, and it draws a total, and

19  then it adds, after that, the EGI debt.  And they'd like to

20  argue, well, that shows the EGI debt because it was listed

21  below the PHONES as somehow junior to the PHONES.  But of

22  course, this is the EGI step one note, which, under any

23  circumstance, is going to go away on the balance sheet.  If

24  the deal closes, there's going to be a new note that

25  replaces it.  If the deal doesn't close, it gets converted

1  into equity.

2          So that's the totality of all these documents

3  that they would like you to see.  And if, in fact, you're

4  going to admit all those documents, in fairness, you should

5  hear Mr. Pate's testimony about how the deal changed after

6  those documents were drafted, and that's precisely what he

7  speaks to.  We took his deposition, because they opened the

8  door to try to give the Court the impression that these

9  March documents somehow reflected the deal as it was agreed

10  upon in December.

11          And we did, in addition to those questions about

12  the specific documents, ask Mr. Pate his understanding of

13  what the deal was, and that partially informed his

14  understanding of the various documents that he was

15  addressing in the deposition.  Mr. Pate, by way of

16  background, was the lead business negotiator for EGI-TRB.

17  He is a lawyer of -- by training, but he was here as the

18  businessperson, not the guy who drafted the documents.  And

19  it is true he didn't sit at the table to draft these

20  documents.  He was clear that most of the communicating here

21  was done through lawyers.  EGI-TRB's lawyers was talking to

22  the bank's lawyers, so much of his communication was his

23  articulating to his team what the deal was supposed to be,

24  what he understood the deal to be.

25          And under the forthright negotiator rule, which

1    we have described, and there's the *Ram* [ph] Decision in

2    Delaware that follows this, if and only if the Court decides

3    that parole evidence is admissible, one form of parole

4    evidence is that you can hear from the people involved in

5    the deal.  And every now and then, people, although it may

6    be self-interested, come in and get under oath and tell the

7    truth, and that's what Mr. Pate did.  And he explains not

8    only that he did, in fact, understand, throughout the time

9    that the deal changed to the end of it, that this was senior

10   to the PHONES, and he explains the reasons why he had that

11   belief.

12          In addition to that, his belief -- and he gives

13   that explanation as to why he understood that that was the

14   deal, and in fact, that was the deal, as he understood it.

15   That evidence is corroborated, as I indicated, by the SEC

16   filing.  And that's the other piece of the forthright

17   negotiator rule.

18          So if you have one party to the negotiations who

19   said this is my understanding of the deal, of course, the

20   PHONES were free to call anybody on the other side of the

21   deal and say, did you have a different understanding?  We

22   have no evidence to suggest a different understanding by

23   anybody involved in the negotiations here.  In fact, the

24   parties to the negotiations did not include the PHONES.

25   They didn't include anybody who's taken an adverse position

1  on this issue.  The only person who's submitting evidence to

2  this Court on this issue is Mr. Pate, who has testified that

3  this was his clear understanding of the deal.  And that's

4  confirmed by the other party to the deal, because the other

5  party to the deal is Tribune, and Tribune indicated in its

6  SEC filings what its understanding was.  And the forthright

7  negotiator rule says that if one party testifies this is

8  their understanding and you have any way to corroborate that

9  that could have been the understanding of the other side,

10  that's admissible.  Your Honor can decide what weight to

11  give it, but it's not, per se, inadmissible.

12          And we have cited, in addition to the *Ram* case,

13  another Delaware case, indicating that when a party files an

14  SEC filing, that can be construed as indicating the evidence

15  of its intent, and this -- so this gives the evidence of

16  Tribune's intention here.

17          THE COURT:  Okay.  And the EGI agreement is

18  governed by Delaware law.

19          MR. BRADFORD:  That's correct, Your Honor.

20          THE COURT:  And Delaware law is that I consider

21  parole evidence only if I find an ambiguity in the

22  agreement?

23          MR. BRADFORD:  That's correct, Your Honor.

24          THE COURT:  All right.  Well, I think Mr.

25  Bendernagel's suggestion initially was a good one: that I

1  take everything in conditionally.  And if I need to get to

2  it, then I'll have to go, one by one, through the exhibits

3  and determine whether they're admissible.  And between the

4  briefing and the argument today ought to be enough.  If I

5  find I need further argument on it, if I get that far, I'll

6  advise the parties.  I don't think I'll get that far in

7  terms of needing additional argument, I mean -- but let's

8  just proceed on that basis.

9           MR. BRADFORD:  I think that makes a good deal of

10  sense, Your Honor.

11           THE COURT:  All right.

12           MR. BRADFORD:  So I think I've been -- on the

13  coin flip, I'm going first on this issue, so if I can just

14  grab my notes, I'll --

15           THE COURT:  That's correct.

16           MR. BRADFORD:  -- be ready.

17           THE COURT:  Go ahead.

18           MR. SIEGEL:  Your Honor, do you want me to save,

19  until I get to the argument on the agreement, my responses

20  on why these documents are not admissible --

21           THE COURT:  Yes.

22           MR. SIEGEL:  -- or why they are admissible?

23           THE COURT:  Yes.

24           MR. SIEGEL:  Okay.

25           MR. BRADFORD:  Your Honor, we do have some

1   demonstratives related to this argument, and if I might

2   approach, Your Honor, and the clerk can hand those out?

3           THE COURT:  Certainly.

4           MR. BRADFORD:  Thank you, Your Honor.

5           THE COURT:  Thank you.

6           MR. BRADFORD:  All right.  We thought it would be

7   helpful, at the outset, to put into context what issues we

8   think the Court really needs to decide here and what issues

9   the Court does not need to decide and what the potential

10  impact of those issues are.

11          So, what we have before you, Your Honor, is

12  Exhibit 90, which has been admitted into evidence.  And what

13  this represents is some selected recovery scenarios that

14  pertain to EGI-TRB only.  They come from the larger recovery

15  chart.  They've been agreed to by everybody.  And I use this

16  just to illustrate the potential impact of some of the

17  issues that are being raised in the context of this

18  particular dispute, and that is there are at least three

19  different types of outcomes that could occur here in which

20  EGI-TRB would receive some monies by way of allocation or

21  distribution.

22          And the first of those is represented in scenario

23  one, where there would be a determination that EGI-TRB was

24  not subordinated as to settlement proceeds -- that's the

25  issue that we argued yesterday -- but that in addition, that

1    EGI-TRB qualifies as senior indebtedness under the PHONES

2    indenture, and which of that it would be entitled to its pro

3    rata share of the distribution from the PHONES of their

4    settlement proceeds.  So in the context of that potential

5    outcome, it will be necessary.  We've asked the Court to

6    decide that EGI-TRB is, in fact, senior indebtedness under

7    the PHONES indenture.  That concerns the PHONES indenture.

8           The second possible outcome is the Court decides

9    that EGI-TRB is not senior indebtedness under the PHONES

10   indenture but it is not subordinated as it pertains to

11   avoidance recoveries, as was argued yesterday.  That's

12   scenario two, in which event EGI-TRB would receive its *pro*

13   *rata* share of the settlement proceeds directly, but it would

14   not receive a share that's being reallocated from the

15   PHONES.

16          The third possibility, of course, is that Your

17   Honor finds that we are subordinated, as it pertains to

18   settlement proceeds, but  nonetheless, EGI-TRB is senior

19   indebtedness under the PHONES indenture, and as a

20   consequence, the PHONES -- or our pro rata share of the

21   PHONES portion of the settlement recovery would be

22   reallocated to EGI-TRB.  And as I argued yesterday, we would

23   then contend that that's an inter-creditor payment, and

24   under the unique terms of our indenture, which prohibit us

25   from receiving money only from the debtor or money on

1  account of assets of the company, that that would not be

2  subject to further reallocation.  That, in a sense, takes us

3  back to yesterday's issues.  But in any event, it would be

4  necessary, with respect to that scenario, for the Court also

5  to determine are we senior indebtedness under the PHONES

6  indenture.

7           We don't believe it matters, to any of these

8  outcomes, whether the PHONES are senior obligations under

9  the EGI-TRB subordination agreement, because the Court has

10  already determined, with respect to avoidance recoveries,

11  that the PHONES are subordinated with respect to those

12  recoveries.  So in all events, those monies, if we are

13  subordinated as well, would be paid over to the senior

14  obligations.

15           The only way that it could matter whether we are

16  senior under their -- or I'm sorry, whether they're senior

17  under our indenture is if we ever got distributions of

18  assets of the company, all right, because in that

19  circumstance, if everybody's paid off, then we'll be arguing

20  about who goes first on the assets of the company, between

21  us.  But that, obviously, is not a circumstance before us

22  today.  What we're really arguing about now is just what

23  happens with the avoidance recoveries in the settlement

24  proceeds, and you've already determined that they are

25  subordinated as to those.  We've asked yesterday that you

1  determine that we're not subordinated to those, but that --

2  the resolution of that issue, we think, should drive the

3  outcome of who's senior as between us and the PHONES without

4  further necessity to resolve the question of whether the

5  PHONES are senior under the EGI-TRB agreement.  Okay?

6          But -- I think Your Honor has a question.

7          THE COURT:  I do.  And again, it's a -- if I

8  decide that, in resolution of the other issues -- allocation

9  issues that have been raised, that to put it simply, neither

10  you nor the PHONES are able to grab any of the distributions

11  that others are trying to keep from you, and that whatever

12  distributions are made can only pass through you and/or the

13  PHONES, do I need to decide this issue?

14          MR. BRADFORD:  I -- that's what we're saying is

15  that you would not -- under that circumstance, I don't think

16  you would need to reach this issue now.  This issue may

17  become a real issue if, in fact, assets of the debtor become

18  available for distribution.  We, obviously, do think it

19  would matter if we are senior indebtedness under the PHONES

20  indenture, for purposes of our rights of pay-over in the

21  first instance from the PHONES, and then Your Honor has a

22  further determination to make as to whether, in fact, even

23  if we get money from the PHONES, those, in turn, have to be

24  paid over to the senior obligations under our particular

25  agreement or not.  And I think we've argued those issues

1  yesterday and noted the absence of a pay-over clause in our

2  agreement.

3        So having framed the issues that way, and I won't

4  spend long on this, we would argue that if the Court is

5  reaching the issue of who is senior as to avoidance

6  recoveries, if we could look at the next slide here briefly,

7  we noted yesterday that we are not subordinated as to

8  anything other than claims to the assets of the company and

9  that, therefore, we are not subordinated as to avoidance

10 recoveries.  The PHONES are; therefore, we are senior as to

11 those.  End of analysis.  We don't think the Court has to

12 spend further time dealing with this issue of priority, even

13 as it relates to avoidance recoveries.

14        And similarly, if we look briefly at six, we

15 think the same result pertains, by reason of -- to paragraph

16 six of our agreement, which speaks to what we, in turn, have

17 to pay over to others.  And I won't re-argue that, but it's

18 our view that, under this provision, we would not have to

19 pay over anything to the seniors if we were to receive

20 monies from a co-subordinated creditor who's below us.  In

21 order to determine whether this applies, however, it is

22 necessary for the Court to determine are we a senior

23 obligation under the PHONES -- or senior indebtedness, I

24 should say, under the PHONES indenture.  Because if we are,

25 we receive money, and then the Court needs to determine,

1 under paragraph six of our indenture, do we have to pay that

2 over?  Is that the kind of money that comes from the company

3 or otherwise is subject to pay-over, under our indenture?

4 And we would say it is not, because it's a contractual right

5 we have under the PHONES agreement, not some claim to the

6 assets of the company.

7         So I'm going to turn, then, to the PHONES

8 indenture, which describes what is a senior indebtedness

9 under their indenture.  And that's defined very clearly.  We

10 heard about that yesterday as well.  Basically, what the

11 PHONES say is any debt.  And there's no dispute that the EGI

12 note is -- EGI-TRB note is debt.  Any debt is a senior

13 indebtedness under the PHONES indenture, except for the

14 following, and the only exception that's arguably applicable

15 here for the PHONES is A, which says indebtedness, which, in

16 the instrument creating or evidencing the same, it is

17 expressly provided that such indebtedness of the company

18 shall be subordinated, or pari passu, with the securities.

19         So the PHONES, itself, say we are subordinated to you

20 unless you specifically say, in your indebtedness, that you

21 are subordinated, or pari passu, to us, and of course, the

22 EGI-TRB subordination nowhere says we are subordinated to,

23 or pari passu, with the PHONES.  And in fact, the PHONES, in

24 making an argument about their status under our agreement,

25 actually admit that point in their brief.  And if we look at

1  their brief, at paragraph 67, this is their opening brief,

2  they quote the very language that I just read from their

3  indenture, the so-called exception for indebtedness that

4  expressly provides that it's subordinated to, or pari passu,

5  with the PHONES.  And they acknowledge the EGI-TRB

6  subordination agreement does not have that express language

7  as it relates to the PHONES, and that's because we don't.

8  We never agreed to be subordinated to the PHONES.  We never

9  agreed to be pari passu to the PHONES.

10          The PHONES say, well, you came later.  You

11  should've spelled out that you were senior.  But we didn't

12  need to spell out anything.  As long as we didn't enter into

13  an agreement to be subordinate to them, or pari passu, then

14  by their terms, we were necessarily senior indebtedness

15  under their indenture.  That's how it worked.  It wasn't

16  necessary to say anything more.  And that answers the

17  question, under their indenture, of are we senior

18  indebtedness, and as a result of that, we're entitled to our

19  pro rata share of pay-over from the PHONES.

20          The PHONES, in turn, want to argue about whether

21  they are senior under our indenture.  And as I've indicated,

22  I don't think that question really matters, but I'll address

23  it, because they believe the Court should reach that issue.

24  And I want to stress again that all the parole evidence that

25  we're talking about here goes only to the issue I'm about to

1    turn to.  In other words, it did not pertain to how to

2    construe the PHONES indenture.  It's just parole about what

3    the EGI-TRB indenture had to say, so none of that parole

4    evidence bears on whether we are senior indebtedness under

5    their indenture, because the parole pertains only to our

6    EGI-TRB subordination agreement.  And under our

7    subordination agreement, which the Court has seen, it simply

8    speaks to all obligations and liabilities of being

9    subordinated, unless, by their express terms, they rank

10   subordinated to, or pari passu, to EGI-TRB.

11            So ours, in terms of its carve-out, is a little

12   different than the PHONES, because the PHONES require an

13   express statement that you are subordinate to, or that you

14   are pari passu, to the PHONES.  The EGI-TRB carve-out just

15   says that your terms need to make you subordinate, or pari

16   passu.  And for the reasons I've just demonstrated -- I'm

17   sorry.  Your terms need to make you pari passu or senior.

18   But for the reasons I've just demonstrated, our terms do

19   make the PHONES subordinate to EGI-TRB, because we are

20   senior indebtedness under their indenture.  So by those

21   terms, we are senior to the PHONES.  We rank in all events

22   at least pari passu as fellow subordinated debt, and there's

23   nothing in our indenture that would say that we rank in a

24   way that would be subordinated to the PHONES.  There's just

25   no evidence of an intention to agree to that.

1          That really takes us, Your Honor, to the parole

2  evidence.  I think, again, the contracts are clear.  I would

3  make one more note, because I think there's a little bit of

4  a suggestion here that the two agreements essentially create

5  a round-tripping of money that is clear we're senior

6  indebtedness under their indenture.  They want to say

7  they're senior obligations under ours.  What would happen if

8  we were both right and the monies essentially would be owed

9  to the other?  And here again, I think paragraph six of our

10 indenture makes it clear again that we are senior, because

11 paragraph six of our indenture does not require us to pay

12 back over, to another co-creditor, monies that we receive on

13 account of subordination.  Your Honor will recall, when I

14 put it up yesterday, that in 1402 of the PHONES indenture,

15 it says twice, very specifically, that the PHONES will pay

16 over to their senior indebtedness any monies that they

17 receive on account of the subordination of some other

18 indebtedness.  So they specifically said if they receive

19 something by way of indebtedness, and that would include

20 from us, they then have to pay that back over to their

21 senior indebtedness: that would be EGI-TRB.  We, in turn,

22 don't have any such pay-over provision.  Again, our pay-over

23 is limited to what we receive from the company or what we

24 receive in violation of our agreement.  And if we're senior

25 indebtedness under the PHONES, receiving those monies from

1  the PHONES is certainly not a violation of our agreement for

2  us to receive a payment that the PHONES contracted to pay

3  us.

4           So we would not have a pay-over obligation to

5  them; they would have a pay-over obligation to us.  And so,

6  at the end of the day, that's another reason that we are

7  structurally senior to them.  That was accomplished through

8  the difference between pay-over provisions as well as

9  through the other provisions that I've just mentioned.

10          At this point, I would turn to the parole

11  evidence, Your Honor, and I think, frankly, I've covered

12  much of that in the preliminary discussion about the

13  evidence.  As I've indicated, we have three SEC filings,

14  where the Tribune itself, the party to our agreement, says,

15  in describing what we're subordinated to, that we're

16  subordinated to senior obligations.  That can't reasonably

17  be construed as including a subordinated note like the

18  PHONES.  It did not say subordinated to all debt.

19          We have Mr. Pate's testimony, and I would like to

20  present just a few moments of that testimony, to give the

21  Court a flavor, and the Court can decide if it wants to hear

22  the full extent of that testimony, explaining his

23  understanding of this agreement.  And he explains, in

24  greater detail in the deposition, if the Court wants to get

25  into it, some of the other reasons he understood that EGI-

1  TRB was structurally senior to the PHONES.  And one of those

2  was that the PHONES, as we heard, was convertible into Time

3  Warner stock.  And so, there was a convertible feature to

4  that note, and his understanding generally was that when you

5  have subordinated convertible and subordinated non-

6  convertible, that generally the subordinated non-convertible

7  would be senior to the subordinated convertible.  And of

8  course, EGI-TRB could not be convertible because of the

9  subchapter S consequences.  Converting into Time Warner

10 stock would not have any tax consequences for Tribune, but

11 it did make the PHONES functionally equivalent to a form of

12 equity, because their value is determined by the Time Warner

13 stock; whereas, EGI-TRB had what was a hard note and truly

14 debt, and that that also informed his understanding.

15         Just by way of further background, and this is in

16 the deposition, Your Honor, Mr. Pate, who was the lead

17 negotiator, is a graduate of Harvard College and University

18 of Chicago Law School.  He was the lead deal person on this

19 deal.  He has been, I should note, a Tribune director since

20 2007, but he is testifying exclusively in his capacity as an

21 EGI-TRB representative and negotiator.  And he did make

22 clear that this is his personal understanding that he

23 discussed with his deal team.  It is not what he is saying

24 was discussed as between the parties, because those

25 negotiations were principally between lawyers and not

1  between the businesspeople.  So this is the businessperson's

2  understanding being offered pursuant to the forthright

3  negotiator rule.  And if we could have just four minutes of

4  that testimony, I'd like to comment on it, and then I think

5  I can conclude, Your Honor.  Thank you.

6          MR. BENDERNAGEL:  Just a point of clarification.

7  Mr. Pate did not become a director of Tribune until after

8  the LBO closed in December, so when all these negotiations

9  were taking place, he wasn't --

10          MR. BRADFORD:  And I appreciate that

11  clarification.  Thank you.

12  (Playback, Video Deposition of MR. PATE:)

13      Q    And when you say it was a convertible

14      security, in the context of the PHONES indenture,

15      what do you mean by that?

16      A    Yeah, the PHONES are a little unusual, but

17      effectively, the -- I viewed the PHONES as being

18      convertible, in the sense that there was a block

19      of stock that Tribune Company held of Time Warner

20      stock, and these PHONES  had, on a derivative

21      basis, the value of them was tied to the Time

22      Warner stock.

23      Q    Generally, when the deal closed in roughly

24      December of 2007, did you have a personal opinion

25      or understanding of what you believed to be the

1    relative priority of the EGI-TRB second step note

2    on one hand and the PHONES security or --

3        UNKNOWN:  Objection to the form and

4    foundation.

5    A    I -- my recollection of the relative

6    priority was that the second step note was senior

7    to the PHONES.

8    Q    Okay.  And do you recall any of the reasons

9    why you had that general understanding?

10        UNKNOWN:  Again, I'm going to object to --

11    you're asking about his personal thought process.

12    Lack of foundation --

13    A    So --

14        UNKNOWN:  -- and to the form.

15    Q    You can answer.

16    A    My thoughts, I -- the way the deal was

17    structured, the note that we purchased in the

18    second step had to -- for tax purposes, had to be

19    a hard note.  And so a key element there, given

20    the terms of the note, was priority.  And unlike,

21    for example, the convertible note that was the

22    bridge note at the beginning, it was important

23    that it have relative priority so that there was

24    substance to the $225 million that was paid for

25    the step two notes in the aggregate.

1    Q      Did the fact that the PHONES note was

2    convertible and the EGI-TRB step two note was not

3    convertible have any effect on your understanding

4    as to whether EGI-TRB was senior to the PHONES --

5         UNKNOWN:  Objection.

6    Q      -- as you testified to it?

7    A      As I stated earlier, I tend to look at

8    convertible subordinated securities as being

9    subordinated in context to another note that's

10   not convertible.

11   Q      And was that consistent with your

12   understanding of the relationship between the

13   EGI-TRB step two note and the PHONES --

14        UNKNOWN:  Objection.  Same objection.

15   Q      Generally, do you have an understanding of

16   avoidance recoveries?

17        UNKNOWN:  Objection.

18   A      Yes.

19   Q      Okay.  During 2007, do you recall anybody,

20   in the course of negotiating this deal, raising

21   the topic of avoidance recoveries?

22   A      No.

23   Q      Do you recall anybody asking EGI-TRB to

24   subordinate its rights to payments with respect

25   to subordinate -- to avoidance recoveries?

1    A    No.

2    Q    Do you recall EGI-TRB agreeing to

3    subordinate its right of recovery with respect to

4    avoidance --

5        UNKNOWN:  Objection.

6    Q    -- recoveries?

7    A    No.

8        UNKNOWN:  Did you ever communicate that

9    during 2007 to anyone outside of -- did you ever

10    communicate that to anybody, first of all, we'll

11    deal with -- or as --

12    Q    During 2007.

13        UNKNOWN:  During 2007.

14    A    As I said, my general recollection and --

15    was that we discussed internally and viewed our

16    note as senior to the PHONES note.

17        UNKNOWN:  That wasn't my question.  My

18    question was not about the PHONES note.  It was

19    about whether you were subordinated to avoidance

20    --

21    A    Oh.

22        UNKNOWN:  -- action recoveries.

23    A    We -- I don't think we ever -- we never had

24    a conversation with anyone regarding avoidance

25    actions at that point in time.

1              UNKNOWN:  All right.

2      A      Even inside.

3              UNKNOWN:  Did you -- I'm sorry?

4      A      Even inside the organization.

5              UNKNOWN:  So --

6      A      I just don't recall any conversations

7      regarding avoidance actions.

8              UNKNOWN:  So that wasn't just something

9      that you discussed -- or you didn't even discuss

10     it internally within EGI-TRB?

11     A      I don't recall any conversations regarding

12     avoidance actions.

13  (Playback concludes.)

14             MR. BRADFORD:  Thank you.  So, Your Honor, to put

15  that into context who EGI-TRB was negotiating with on the

16  subordination agreement was the LBO lenders and Tribune.

17  None of them have offered testimony to the contrary to

18  suggest that they negotiated for a subordination of EGI-TRB

19  to the PHONES.  And in fact, none of them would have any

20  reason to demand that or seek that in the course of

21  negotiations, just as they had no reason to seek other

22  concessions from EGI-TRB.  And I would ask the Court to take

23  note, even in the context of this dispute, that the only

24  parties to this proceeding who have taken any issue with any

25  of the interpretations of the EGI-TRB subordination

1  agreement that we have offered are parties who did not

2  participate in those negotiations, who were not parties to

3  that agreement.  We've heard from Law Debenture, the Swap

4  and the PHONES and the retirees about what that agreement

5  meant, but in fact,  Mr. Pate is the one witness who was

6  involved in that negotiation.  I think the Court can see

7  that he is, in fact, an honest person and that that

8  testimony should be credited.  It is consistent with all of

9  the objective evidence from that period of time and, we

10 submit, fairly represents what the agreement itself

11 establishes in terms of the limited scope of its

12 subordination and the fact that the PHONES were not made

13 senior.  Thank you, Your Honor.

14             THE COURT:  Thank you.

15             MR. SIEGEL:  Good morning, Your Honor.  Martin

16 Siegel from Brown Rudnick on behalf of Wilmington Trust,

17 indenture trustee for the PHONES.

18             Two, preliminary matters, Your Honor.  Obviously,

19 I did not stand up and repeat my objections to Mr. Pate's

20 testimony.  The individual questions, forgetting the whole

21 subject of whether that line of questioning is admissible,

22 since Your Honor said you were going to at least hear it,

23 but all of those objections are still relevant, we think.

24 Regardless of how you rule generally as to whether his

25 testimony is admissible, the individual objections are still

1  there and need to be resolved, at some point.

2         THE COURT:  And I'll tell you what -- while this

3  group's been with me long enough, they've probably heard me

4  say this before, but despite the every instinct of an

5  advocate, I will tell you, it really is pretty easy to

6  ignore things, even after you've heard them, so fear not

7  about that, Mr. Siegel.

8         MR. SIEGEL:  Thank you.  A second preliminary

9  matter, Your Honor, is something that Mr. -- that was just

10  said, and I think we need to correct it.  Mr. Bradford said

11  that you've already decided that the PHONES subordination,

12  with respect to avoidance recoveries.  And we don't think

13  that your reconsideration opinion dealt with who we are

14  subordinated to, with respect to avoidance recoveries.  And

15  should you decide, as we believe you will, that we are

16  senior obligations under the EGI-TRB subordination

17  agreement, we think that the reconsideration opinion will

18  not apply at all to that issue.

19         The third preliminary matter, you did  not ask me

20  the same question that you asked Mr. Bradford, but we think

21  it is important that you decide it -- the issue now, because

22  earlier, you heard about having to model and send out notes

23  -- send out notices to parties.  We're going to have a

24  hearing, and if you don't decide this issue, it will affect

25  some of those modelings, because -- you know, for the

1    reasons that were said earlier, so unfortunately, we think

2    you can't just kick this issue, because the models will

3    change, and so it's something that you do need to decide.

4              With that, Your Honor, on a -- on an -- it's the

5    last issue of the day and of the hearing, and I wish -- in

6    my view, you can decide it very easily.  Unfortunately,

7    based on Mr. Bradford's argument, it's not quite as easy,

8    but let me start with --

9              THE COURT:  But you got to speak last anyway.

10             MR. SIEGEL:  That's right.

11             THE COURT:  You ended up at the place you wanted

12   to be.

13                        (Laughter)

14             MR. SIEGEL:  That's correct, Your Honor.  And

15   that is, if you look at the EGI-TRB subordination agreement,

16   you'll recall that the step -- at step two, there was a

17   separate note and a separate subordination agreement.  I

18   think we're all in agreement that it's the subordination

19   agreement that counts.  At step one, to the extent I'll talk

20   about that, the -- there was one document that was both the

21   step one note and the subordination agreement was in the

22   same document.

23             And Kasowitz is going to help us, to at least put

24   up what we think is the key language, which is the

25   definition of subordinated obligations.  And when you look

1    at the definition of subordinated obligations in the EGI-TRB

2    subordination agreement, it's fairly clear.  Nice and

3    simple.  They are subordinated to, and I quote, to all

4    obligations and indebtedness and other liabilities of

5    Tribune, other than, one, any such obligations,

6    indebtedness, or liabilities that, by their express terms,

7    rank pari passu or junior to the company's obligations.

8    There's a case under the --

9                UNKNOWN:  It's the wrong one.

10               MR. BRADFORD:  I think -- I'm sorry.  I think

11   you're reading the wrong one.  I think you're reading the

12   PHONES.

13               UNKNOWN:  Yeah.

14               MR. SIEGEL:  Nope, I am reading --

15               UNKNOWN:  No.

16               MR. SIEGEL:  I'm reading from yours.

17               UNKNOWN:  He's reading it.  His one on the screen

18   is incorrect.  We need to fix the screen.

19               UNKNOWN:  Oh, I'm sorry.

20               MR. BRADFORD:  That's subordinate obligations.

21   I'm -- it should be senior obligations.

22               UNKNOWN:  Senior obligations.

23               MR. SIEGEL:  Yeah, senior obligations.  What's on

24   the screen is wrong, but I was reading this.

25               MR. BRADFORD:  Okay.

1          MR. SIEGEL:  I was reading from my notes.  All

2    right.  This is the definition of senior obligations, not

3    the definition of subordinated obligations.  And in plain,

4    simple English, which is unusual for this case, the EGI

5    subordination agreement says that the EGI notes are

6    subordinated to, "all obligations, indebtedness, and other

7    liabilities of Tribune" -- I substitute -- "other than, one,

8    any such obligations, indebtedness, or liabilities that, by

9    their express terms, rank pari passu or junior to the

10   company's obligation under that note."  Now, there's another

11   exception for trade payables and accounts payables, but I

12   don't think anybody thinks that that applies to us.

13         That's about as simple as it can get.  That was

14   drafted in 2007, when everybody clearly knew that the PHONES

15   existed, knew all about the capital structure.  Obviously,

16   you've heard lots of testimony on that.  And now, we look at

17   the PHONES notes, and the PHONES notes -- the PHONES

18   indenture clearly does not contain that language.  It does

19   not say that, by express, or any other terms, that it's

20   either pari passu or subordinated to the EGI notes.  And we

21   think that should be the end of the story.  I'm not going to

22   go into the rules of construction in Delaware, but that's

23   about as clear and unambiguous as you can get.

24         Now, it's true that the PHONES notes -- the

25   PHONES indenture was drafted in 1999 and the EGI

1  subordination agreement was drafted in 2007, but that

2  doesn't matter.  People knew about the PHONES notes, knew

3  what the indenture said.  And so clearly, we think if you're

4  looking at the EGI subordination agreement, there should be

5  no question that, under its express terms, we are senior

6  obligations.

7          Now, I'm going to skip for a moment, just while

8  you have that in mind, just to briefly mention the

9  discussions about the SEC filings.  And you recall what was

10 said.  They say in April and, I think, June or July, so both

11 at the time of step one and thereafter, that's the word that

12 they use, that EGI is subordinated to senior obligations,

13 and that's what we were.  So when he refers you to those

14 obligations, if you look at their note, which is what was

15 being discussed in those SEC filings, it's clear that their

16 note refers to this definition and not some other

17 definition, and the PHONES clearly are senior under that

18 definition.

19         It's true that the PHONES have a somewhat similar

20 provision.  In -- and it was drafted in 1999.  And it's true

21 that there is not an express -- using the word the PHONES,

22 the PHONES aren't mentioned, but it's taking our argument

23 out of context to say that we've conceded that, under

24 PHONES indenture, they are not senior obligations.  And the

25 reason for that is look at the language.  The PHONES is in

1  existence.  It has a somewhat parallel provision.  And then,

2  in 2007, what do they say?  That the EGI notes are

3  subordinated to "all obligations and indebtedness and other

4  liabilities of Tribune".  We submit that that is a

5  sufficient statement that shows that they are subordinated

6  to us, even if you look at the PHONES indenture, because you

7  wouldn't use the word all if you intended it to mean all but

8  the PHONES.

9           And if you -- I'll get into this in -- a little

10 later when we talk about the drafting, if you're going to

11 consider extrinsic evidence, but when the draft started, it

12 sort of had that language.  And then, they added some

13 exceptions.  They added the exception for trade payables,

14 and they added the exception for accounts payable.  So we

15 submit, Your Honor, that if you look at it in the overall

16 context of the drafting of these agreements, there's a

17 clear, unambiguous, unequivocal statement in the EGI

18 subordination agreement that it covers everything unless it

19 says that it's not -- PHONES did not say that.  And even if

20 you look at the parallel provision there, with knowledge of

21 what the PHONES -- that they were in existence, with or

22 without Mr. Pate's explanations nowadays of what he thought,

23 if they wanted the PHONES, if they believed the PHONES were

24 subordinated, it would've been very easy to not say that

25 they're subordinated, so all -- they would have said the

1  same exceptions that they have.

2          Now, I recognize that we've submitted some parole

3  evidence.  They've submitted some parole evidence.  And if

4  you find these two agreements to be unambiguous, you won't

5  consider it.  But if you do find it ambiguous or you find

6  the fact that there are two agreements with possibly

7  conflicting thoughts, that, by itself, may give rise to a

8  latent ambiguity, and warrant your examining parole

9  evidence.  I'd like to just cite you to a case that may help

10  you decide that, called *Patton Street Corp.* [ph], the *NAVS*

11  *Adenture*, the 2002 West Law 31682118.  It's a Texas

12  Appellate Court case.  But there, they had -- the Court had

13  to reconcile three different liens on the same piece of

14  property.  The first two liens contained future advance

15  provisions, but the third lien contained a subordination

16  clause.  And the Court said that the subordination clause,

17  "gave rise to a latent ambiguity in interpreting the future

18  advance clause in the first lien because of this latent

19  ambiguity" patrol -- "parole evidence is admissible".  And

20  that's at page star 7.  And without going into it, it's

21  clear under Delaware law, latent ambiguities is one of the

22  things that gives rise to the use of extrinsic evidence.  I

23  would cite the *Bell Atlantic* case, 1995 West Law 707916,

24  which also says latent ambiguities are one of the reasons

25  for examining parole evidence.

1          If I can have the same dispensation as Mr. Stark

2     and have a water bottle, please?

3          So now, let's look at the parole evidence.  We

4     cited most of it in our brief, but I do need to walk you

5     through it.  So first, let me tell you why it is that you

6     should consider the evidence of what the parties intended at

7     step one before I tell you what it is, so that at least

8     you'll have a context for it.

9          The evidence is clear that the parties discussed

10    who is going to be senior at step one, and all of the parole

11    evidence says EGI was subordinated; the PHONES were senior.

12    After step one was concluded, the parties started drafting

13    the step two documents.  And that's where we think the tie-

14    in comes in.  There is an e-mail chain from -- I guess it's

15    JPMorgan's attorney to, among other things, EGI's attorney

16    and others, that says that you'd use the same subordination

17    provisions as in step one.  And that's what the parties

18    proceeded to do.  Now, there's no dispute that some of the

19    business terms change.  Yes, they had a hard note instead of

20    a note that was tied to a warrant, but with regard to what's

21    relevant here, what did the parties intend by the language

22    used in the step two subordination agreement?  That's the

23    issue before Your Honor.  And I submit, if you look at the

24    subordination -- if you look at the drafting of the

25    subordination agreement and that language, you have to

1    conclude that the parties intended that the step two

2    subordination provisions were the same as the step one

3    subordination provisions, notwithstanding any other changes

4    that may have been had in the deal.

5         So, if you look at that document -- I have

6    glasses here somewhere.  Just one second, Your Honor.  It's

7    Exhibit 141 at TRB 1169521, and that's exactly what they

8    said: let's use the same subordination language.  And then,

9    you go and look at the drafts.  You'll see that that's what

10   they did.  Starting in November, when the deal was now being

11   negotiated, the language that had been in the prior draft,

12   the first draft of the step two subordination agreement,

13   changed.  And it changed to be almost word to word -- word

14   for word to the language that was in the step one

15   subordination agreement.

16        Now, EGI had said, you shouldn't consider drafts.

17   Well, that's not true when you're considering extrinsic

18   evidence.  You shouldn't consider drafts that try to change

19   a final, signed agreement.  That's a principle of contract

20   law no one disputes.  But if you're trying to determine what

21   did the parties mean at the step two note, I think you have

22   to look at the drafts.  And like you see, it's -- it starts

23   at Exhibit 146, which is the first of those documents, and

24   then continues at Exhibit 147, 148, and 149.  Those are the

25   drafts of the step two note.  There are some earlier ones

1  that precede the note from JPMorgan, but those were then

2  discarded.  So if you look at the drafts, what do you see?

3  You see a clear intent by the parties drafting -- involved

4  in the negotiating and drafting of the document, to use the

5  same language in step two that they used in step one.  And

6  we think that that, again, makes all the parole evidence at

7  step one not only crucial but very, very relevant to what

8  the parties intended, because they intended to use the same

9  subordination provision.

10          And what I'd like to do, Your Honor, is -- we're

11  not quite as high-tech as everybody, but I have prepared a

12  chart, which I think will make this point clear.  May I

13  approach, Your Honor?

14          THE COURT:  You may.  Thank you.  Did you receive

15  one?

16          COURT CLERK:  Thank you.

17          THE COURT:  It's over there.  That's good, thank

18  you.

19          MR. SIEGEL:  And it's not quite as fancy as some

20  of the charts, and I don't have too much highlighting, but

21  hopefully it'll get our point across.

22          THE COURT:  Well it's a nice, large, clear print.

23  That'll do.

24          MR. SIEGEL:  Well I had to be able to read it, so

25  -- and what you will see when you compare the subordination

1    language of the step one note with the step two EGI

2    subordination agreement, is that the subordination language

3    is virtually identical; a couple of grammatical things, but

4    nothing that changes the substance of it, with one

5    exception.  And that is the step two subordination agreement

6    adds a second exception for trade payables and accrued

7    expenses.  And that's significant, because clearly they

8    thought about what changes, if any, should we make to the

9    step one note.  And they made two changes, or one change

10   containing two exceptions.  But they didn't put the PHONES

11   in.  And again, with all the evidence you've heard about the

12   parties intent, and how heavily negotiated these things

13   were, their understanding of the capital structure, looking

14   at the drafting of the relevant document, the clear intent

15   of the parties drafting the document -- and I use those

16   words because the person who didn't draft the document,

17   wasn't involved in its drafting, was Mr. Pate, whatever his

18   subjective understanding was.  So the intent of the people

19   who drafted the documents was to use the same language in

20   step two, as in step one.  And that's what makes relevant

21   all of their discussions at step one.  So now let's look, go

22   back in time a little bit, and look at a few of those

23   documents.  They've been submitted to Your Honor, so I'm not

24   going to walk through all of them, but I'm going to tell you

25   about the highlights so that you have an -- so that what

1    you're reading will make some sense.

2           It's rare in these kinds of cases that when

3    people talk about documents we're always saying, oh, well if

4    you look at that, inferentially that applies here.  This is

5    one of the few cases that I've seen in a long time where we

6    actually have the exact question being framed.  In March, in

7    connection with responding to Moody's attempts to rate the

8    LBO, Chandler Bigelow of Tribune asked the LBO Banks who

9    were structuring the deal -- I'm not quite quoting, but it's

10   basically.  Who is senior, the PHONES or EGI?  That was his

11   question.  That's what's reflected in the documents.  And in

12   response, J.P. Morgan and Citi, and you've heard more than

13   enough about their role so I won't go into, you know their

14   -- how important they were in structuring a deal.

15   Responded, "the Zell note should be junior to the PHONES for

16   sure".  "Zell junior."  "Zell sub-note will be most junior

17   in a capital structure."  "The Zell note is Junior to the

18   PHONES."  And that's all found at Exhibits 127, 122, 135,

19   121 and 132.  Mr. Bigelow, whose name's been mentioned at a

20   lot of times  -- at that time I think he was Treasurer, and

21   he's CFO, but still somebody intimately involved with the

22   deal and what the parties intended, informed Moody's, "I

23   have confirmed that the Zell would be subordinated to the

24   PHONES."  And that's at Exhibit 130.  Moody sent a letter,

25   which was referred to earlier, on March 29th.  Which said,

1  225 million subordinated promissory note, which turned out

2  to be the step two note, issued to Zell, "as junior

3  subordinated debt."  And the PHONES, they then described as,

4  "senior subordinated obligations."  And just so it's clear

5  that EGI was involved in some of these discussions, Nils

6  Larsen of EGI confirmed that term sheets, indicative term

7  sheets as to step one and step two were given to him.  And

8  he sent back a response that said they're fine with me.  And

9  those terms sheets said, fully subordinate for both, fully

10  subordinated in all rights and remedies at both step one and

11  step two.  Now you'll hear Mr. Pate, if you listen to his

12  entire testimony, say that, well those indicative term

13  sheets don't mean anything because the terms changed.  And

14  again, I'm not disputing that some of the terms didn't

15  change.  But what didn't change was the subordination

16  provision.

17        And lastly, one of the particular objections that

18  you've had by EGI is an email at -- contained in Exhibit

19  128, from a Mr. Sone [ph] of J.P. Morgan to his superior

20  about this same issue.  And he says that he spoke to Chris

21  Hochschild of EGI and he, "confirmed they're -- that they

22  see their security as the most junior in the capital

23  structure, and junior to the PHONES."  Now they've objected

24  to that document because it's double hearsay.  I don't

25  dispute as to double hearsay.  The first hearsay comes in

1  because it's a business record, as stipulated in Exhibit

2  155.  And we think the second hearsay comes in because it's

3  an admission.  In their reply, EGI says, well it can't be an

4  admission, because Mr. Sone was only an analyst.  And they

5  cite you to two cases that say if the person who makes the

6  admission isn't authorized to do so, you should ignore it,

7  it doesn't count.  One of those, *McAdams*, that a statement

8  by a medical center x-ray technician about the medical

9  center was not authorized, because he was a technician.  The

10  other one in *Nichols*, didn't allow a statement by an

11  employee regarding -- that were outside the scope of his

12  employment because his only task was to track hours.  Mr.

13  Hochschild, whether an analyst or otherwise, was part of the

14  deal team.  He was a CPA, he's worked for EGI.  And there's

15  no dispute that he was involved in these very conversations.

16  It's totally wrong to try to equate it to the guy who waxes

17  the floor, or the guy who keeps hours.  He was part of the

18  deal team, and we submit that his statement does come in as

19  an admission.  So that's the step one intent, and then the

20  evidence clearly reflects that that intent was carried over

21  to the step two subordination agreement.  Now in response,

22  the only evidence that EGI offers, I think that was

23  characterized, Mr. Bradford characterized it as extensive

24  evidence.  Well it's Mr. Pate's subjective testimony, which

25  I'll get into in a minute, and some step one notes, some SEC

1   filings that contain general language, and do not refer to

2   the PHONES.  So let's talk about why Mr. Pate's testimony is

3   not admissible.  And notwithstanding the video you saw

4   earlier, and the video and transcripts that will be

5   submitted to chambers, and we think that you won't have to

6   read the rest of it.  In a moment I'm going to play a few

7   clips of my own, which show that Mr. Pate clearly says, I

8   was not the negotiator of these terms.  He didn't negotiate

9   step one terms.  He didn't negotiate the step two terms.

10  And although he says he had some thoughts that he discussed

11  with his staff, how the change to a hard note affected

12  subordination, he only discussed those internally with

13  either his business people or his lawyers.  But he has no

14  knowledge as to whether any of them communicated those

15  thoughts to the other side.  And that's why -- I'll tell you

16  what I think the law is, and then we'll play a few clips to

17  show why we say you shouldn't consider this.  There is a

18  body of law called the Negotiator Rule.  But it doesn't

19  apply here.  And instead of the two cases that they cited to

20  you, one is *SuperMix Saving*, which is a Delaware case that

21  they cited -- in fact that doesn't even talk about a

22  negotiator.  It deals with whether you can look when you

23  find, in order to determine whether a document is ambiguous,

24  whether you can look at SEC filings, it deals with that.

25  And those SEC filings, while they may be admissible

1  extrinsic evidence, have to refer to the topic in question.

2  And here, as I said, the statement that they quoted could be

3  read any which way, and that's actually what's been

4  submitted to you.  It clearly is not an indication that

5  Tribune had the same understanding that Mr. Pate did.  And

6  *United Rentals*, which is the other case that they cited,

7  which starts with saying the private -- this is from their

8  case, which is cited at 937 A.2d 810, at pages 835, 836.

9  And what's interesting is, and I quote, "as I recently

10 explained to counsel in this case, the private, subjective

11 feelings of the negotiators are irrelevant, and unhelpful to

12 the Court's consideration of a contract's meaning."  And

13 then it does go on to say, because the meaning of a properly

14 formed contract must be shared or common, and that is not to

15 say however that a party's subjective understanding is never

16 instructive.  On the contrary, in cases where an examination

17 of the extrinsic evidence does not lead to an obvious,

18 objectively reasonable conclusion, the Court may apply the

19 Forthright Negotiator Principle.  Under this principle, the

20 Court considers the evidence of what one party subjectively

21 believed the obligation to be, coupled with evidence that

22 the other party knew or should have known of such belief.

23 That case however does not say any more about what the

24 Forthright Negotiator Principle stands for.  So I'd like to

25 refer the Court to a case called *Sodano v. American Stock*

1  *Exchange*.  I have copies if the Court would like, I'll give

2  you the citation.  And it is also a Delaware Chancery Court

3  case, like the others, and it's found at 2008 West Law

4  2738583.  And at page star 12, note 69, we finally have some

5  explanation of the Forthright Negotiator Rule.  And I'm

6  quoting that from footnote 69.  Sodano argues that his

7  conversation with Glauber triggers the forthright negotiator

8  principle.  And then they cite the *United Rentals Case* I

9  just cited.  The forthright negotiator principle applies

10 with the most force when a negotiator drafts particular

11 contractual language, clearly expresses to the other side

12 what she believes the language accomplishes, and the other

13 side accepts the language into the contract without

14 contradicting the drafter's meaning.  And again, they cite

15 the same case, *United Rentals*.  Here, Sodano and Glauber

16 were distant from the key scrivening of the NASD settlement,

17 and agreement and release.  It may be that Sodano asked

18 Glauber to ensure as a general matter -- and that goes on,

19 he asked him to ensure some things and had a discussion.

20 But Mr. Sodano was not involved in the actual drafting or

21 negotiation of the language in the contract.  And it didn't

22 contain what he thought it should have.  And the Court said,

23 that doesn't come under the Forthright Negotiator Rule.

24 When you talk to somebody who's not involved in the

25 drafting, or you have a subjective intent but you're not

1  involved in the drafting, the Forthright Negotiator Rule

2  does not apply.  And we submit to you Your Honor, if you

3  look Sodano and sort of what the rule says -- in fact, it's

4  sort of obvious, the forthright negotiator, it sounds like

5  you have to be the negotiator.  Not the guy who's in charge

6  telling other people what to get into an agreement, and

7  doesn't know whether they actually expressed his views to

8  anybody.  Because the whole idea is you have to express your

9  views, and then perhaps the principle is there.  Here there

10  is no evidence whatsoever that the subjective intent that

11  Mr. Pate testifies about was ever conveyed to the other

12  side.  So if we -- with that can we play some clips?  Maybe?

13

14  [Video playback]

15          UNKNOWN MALE:  -- at a time of whether there

16  were  subordination provisions in the PHONES security

17      indenture.

18          MR. SIEGEL:  Do you think, or do you know if

19  his,  whether --

20          UNKNOWN MALE:  He had to know.

21          MR. SIEGEL:  -- he and Chris, they had an

22      understanding?

23          UNKNOWN MALE:  That's correct.

24          MR. PATE:  Yes, I personally had a

25      understanding.  My view of the PHONES was that

1    they were a convertible subordinating security.

2    I wouldn't say I had a specific understanding,

3    but I had seen other convertible subordinated

4    securities, and assumed that they were similarly

5    subordinated.

6    BY MR. SIEGEL:

7    Q    Could you flip back to PHONES Exhibit 7,

8    which is the executed step one subordinated

9    exchange of the promissory note?

10   A    Um-hum.

11   Q    And if you'd -- directing your attention to

12   page two, paragraph two.  What involvement, if

13   any, did you have in the drafting of the language

14   in this proprietor of legal subordination?

15   A    I had no involvement of the drafting of the

16   language.

17   Q    What involvement did you have in the drafting

18   of the step two note and the step two

19   subordination agreement?

20   A    I was not involved in the drafting of the

21   note and the subordination agreement.

22        MR. SIEGEL:  Who on behalf of EGI was

23   negotiating the terms of the subordination

24   agreement?

25        UNKNOWN MALE:  Objection, vague.

1          MR. SIEGEL:  For the step two.  The step two.

2          UNKNOWN MALE:  Still vague, you can answer.

3          MR. PATE:  I believe it was John Gallucci

4     [ph].

5          MR. SIEGEL:  Was there any business person

6     involved?

7          MR. PATE:  For the --

8          UNKNOWN MALE:  Objection, vague.

9          MR. PATE:  As I mentioned earlier, Nils and I

10    were both involved in dialogues regarding general

11    business terms of the note, the step two note,

12    and that would've included subordination

13    provisions.

14         MR. SIEGEL:  I asked you about what business

15     person was involved, if anyone, in negotiation of

16     the terms of the subordination in connection with

17     the step two note.

18         UNKNOWN MALE:  Been asked and answered at

19    this point.

20         MR. PATE:  Answer the question?

21         MR. SIEGEL:  Should I ask it again?

22         UNKNOWN MALE: It's been asked and answered.

23    BY MR. SIEGEL:

24    Q    Okay, well that doesn't take into account

25     that it's -- this go quicker if he answers it

1      again.

2      A    Nils Larsen and I were involved in

3      discussions regarding the general business terms

4      of the note.

5      Q    All right.  Does that include the

6      subordination provisions?

7      A    Yeah, the summation agreement.  Yes.

8      Q    Summation agreement?  Okay.

9      A    Yeah.

10     Q    And with whom did you have discussions on the

11     business terms of the subordination agreement?

12     A    My conversations were generally with Nils,

13     so --

14     Q    Okay.  Did you have any conversations with

15     anyone at Tribune?

16     A    I don't recall.  I don't recall.  I don't

17     recall having, myself having any conversation

18     with anybody.

19     Q    And are you aware of what conversation -- did

20     Mr. Larsen report to you when he had

21     conversations with other people on the business

22     terms of the subordination agreement?

23     A    I don't really --

24          UNKNOWN MALE:  Objection to --

25     BY MR. SIEGEL:

1    Q    Were you informed of any communications between

2    EGI-- whether they were oral or in writing, between

3    EGI, TRB and Tribune, with regard to the subordination

4    provisions in the, this would be for

5    A    What?

6    Q    -- the step two note.

7    A    I don't recall any specific conversations.

8    Generally speaking, we had conversations regarding

9    ensuring that the note was -- had substantial, you

10   know, had the hard note so to speak.  And a lot of

11   those conversations revolved around our counsel and

12   our tax counsel.

13   Q    Did you discuss the subordination element with

14   anyone other than your internal or your tax counsel?

15   Your counsel.

16   A    I don't think.  I don't know.

17   Q    Did you and counsel agree --

18   A    I don't know.

19   Q    Again, you cannot tell --

20   A    I just --

21   QJust sitting here, you cannot say that you discussed

22   that with Tribune, or any attorneys on the other side?

23   Or anybody on the other side of the transaction, isn't

24   that correct?

25   A    What's your question?

1    Q    As you sit here today, can you testify whether

2    you ever discussed the fact that an element of this

3    hard note in your mind, was that the PHONES should be

4    subordinate?  Did you ever discuss that with anyone

5    other than --

6    A    I don't think so.  I don't -- if your question is

7    did I ever discuss that with Tribune, I think the

8    answer is -- the answer is, I don't think so.  I may

9    have, doubt it.

10   Q    Through the closing of the step, through when the

11   step two note was signed, did you personally ever read

12   the PHONES Subordination Agreement for the --

13   A    No.

14   Q    -- disclosing indenture that contained a

15   subordination provision?

16   A    I did not read the indenture.

17   Q    Okay.  So through the closing of the transaction,

18   you never compare -- did anybody report to you on any

19   comparison of the claims indenture provision to the

20   EGI --

21   A    Yes.

22   Q    -- to the subordination provision?

23   A    I don't believe so.

24  [End of Video Playback.]

25            MR. SIEGEL:  I think that's the last one, Your

1  Honor.  And again, if you look at the *Sodano Case*, even the

2  *United Rentals Case*, I think these few clips show you that

3  he was not the negotiator, forthright or otherwise, of the

4  provisions that are at issue, and therefore the Forthright

5  Negotiator Rule does not apply, and cannot be used to get

6  around the fact that his -- he's testified to what his

7  subjective internal intent was.  It needs to be a shared

8  understanding.  In that *SuperMix Case*, which they cited,

9  certainly a Delaware case, it certainly goes into what you

10  need is a shared intent.  And whatever his internal intent

11  was, his internal thought process was not shared with the

12  other side.  You just don't get to the Forthright Negotiator

13  Rule.  And I said this earlier, but just to repeat, and you

14  cannot use the SEC filings as a basis to say, well, Tribune

15  had the same understanding, well that's a confirmation of

16  his understanding.  Because as I said, the issue here is --

17  was the PHONES senior obligation under that note.  So the

18  SEC filing doesn't answer that question on what Tribune had

19  in mind.  Certainly it doesn't conform -- confirm Mr. Pate's

20  subjective understanding.  And we've cited just some cases,

21  I'm not going to go into them in too deeply given the hour.

22  But when somebody has a subjective intent and tries to

23  testify to it, the few Courts that have allowed it at all

24  basically have said, well I'll take it into evidence but I'm

25  not going to give it any weight.  And I cite you to *United*

1  *States v. U.S. Gypsum*, 333 U.S. 396, *Sheppard* case, at 2007

2  West Law 5160383, those are all in our briefs.  So is

3  *Montgomery Coca-Cola Bottling Company*, 615 Fed.2d at 1327.

4  All stand for that proposition, even if you admit it for

5  whatever purpose, and we don't think you should admit it for

6  any purpose, it's just not worth very much.  And certainly

7  is not enough to overcome the extrinsic evidence that we've

8  presented to you about the clear intent at step one, and the

9  fact that the parties intended that the same language would

10  then be used to state step two.  So all, we submit, that all

11  of the admissible extrinsic evidence demonstrated that the

12  people who drafted the step two subordination agreement

13  intended for the PHONES to be senior.

14           My last point and then hopefully I'll be able to

15  stop, is the letter we objected to, exhibit -- I think it's

16  150, which is a 2009, June, 2009, letter from Debtor's

17  Counsel to Tribune, setting forth their position with

18  respect to PHONES subordination.  That letter's not

19  admissible, Your Honor.  First of all, it came a year and a

20  half after the fact.  It's not a contemporaneous document.

21  And you know, we think it's pretty settled that lawyers'

22  arguments generally, as smart as we all think they are, it's

23  just not evidence.  And you know, if that letter's evidence,

24  then might as well put in evidence all the briefs, where

25  it's the same thing.  And we refer you for example to *In Re:*

1   *Wood*, 582 Fed.2d at 642, *Bannow DeBorak* [ph], at 346 Fed

2   Appeals at 412, as just some of the cases that we cited in

3   our brief.  But one case in particular is directly in point,

4   and it's *In Re: Hah* [ph], 2003 at 310 BR 717 is the jump

5   site also we cited in our brief.  But it's directly in

6   point.  In *Hah*, a party attempted to introduce a letter from

7   its counsel written one year after a D and O policy was

8   issued to argue about the ambiguous terms from that policy.

9   The Court concluded that the letter was irrelevant, stating,

10  "extrinsic evidence is inadmissible unless the contract is

11  ambiguous, and even then the extrinsic evidence must reflect

12  the parties' intent before or at the time of the execution

13  of the contract.  The letter in question was written both

14  after the negotiation of the contract, and by someone who

15  was not involved in drafting it.  The letter, thus, does not

16  shed any light on the intent of the drafters when the

17  contract was executed."  And so clearly the Goldberg letter

18  we think is not admissible.  Certainly it's not an objective

19  letter of the parties' intent.  It's not objective and it

20  was written after the fact.  There is one thing though if

21  you look at the letter, even though it's not in evidence.

22  You don't have to have something in evidence to go to

23  credibility, or things of that nature.  And what's

24  interesting about the Goldberg letter that they seek to put

25  in evidence, is it's written a year and a half after the

1  fact, after the negotiation of the contract.  But it does

2  what Mr. Pate said he didn't do, and that is compare the

3  PHONES indenture to the EGI subordination agreement.  It

4  goes through the language, almost a reverse -- almost the

5  same argument that you got today, that the PHONES doesn't

6  have this provision.  You know, that same kind of argument.

7  What it doesn't do is talk about Mr. Pate's theory.  It

8  doesn't say anything, well we have a hard note, and you're

9  subordinated, or you're convertible.  So you know, one could

10 infer from the letter that not only didn't Mr. Pate tell

11 anybody on the other side of the negotiations about his

12 theory in 2007.  Without getting into attorney, client

13 issues and why something's not -- that letter should at

14 least contain Mr. Pate's theory, if it was in fact a real

15 theory back then.  But the first time his lawyers get on

16 board and give a reason why the PHONES are subordinated, his

17 theory's nowhere to be found.  So we think that letter can

18 be used for the sole -- not as evidence, but solely for the

19 purpose of impeaching Mr. Pate's testimony.

20          Any my last point, Your Honor, is to the extent

21 that you consider this at all, his testimony was -- the

22 first clip I played said, I assumed, that was the exact

23 words he used, that the PHONES were a convertible security

24 and since you couldn't have a -- you know, very clearly no

25 longer a convertible security, it was an assumption on his

1    part.  And that's the words he used.  And that assumption

2    was just wrong, leaving aside all the other parts.  The

3    PHONES were debt at all times.  A convertible security,

4    without speaking in my wearing a securities hat, is

5    something convertible into the stock of the -- the stock of

6    Tribune.  And you couldn't have a convertible security here

7    for the same reason that the EGI note could not be

8    convertible into Tribune stocks, because that would have

9    affected the tax consequences.  The PHONES notes couldn't be

10   convertible.  It was exchangeable into the stock or cash of

11   another company.  That's not a convertible security.  So

12   even the assumption that he made that caused this whole

13   theory of his, was just based on a false premise.  You have

14   in front of you, in evidence, the prospectus, the

15   supplement, prospectus supplement, those are in evidence.

16   And if there's any need for the Court to read them, it

17   clearly reflects that the PHONES are not a convertible

18   security, convertible into Tribune stock.  They were debt,

19   they were always debt.  And his assumption was just wrong.

20              So to add all this up, Judge, we think that the

21   EGI subordination agreement is clear and unambiguous on its

22   face.  We are a senior security, senior obligation under

23   that.  That should end the story, but if you're going to go

24   back and forth and try to compare the different indentures,

25   all of the admissible extrinsic evidence demonstrates that

1    the PHONES are senior.  Thank you, Your Honor.

2              THE COURT:  All right.  Mr. Siegel, stay there if

3    you would.  And, Mr. Bradford, I'd ask you to join him.  No,

4    I'm not going to marry you two.

5              MR. SIEGEL:  We've spent enough time to together

6    recently.

7              MR. BRADFORD:  We get along pretty well, but not

8    that well.

9              THE COURT:  Just wanted to pin down post-hearing

10   filings on designations and, or just with the video deps, on

11   how --

12             MR. SIEGEL:  I believe they're going to come in

13   this afternoon.  We have a set.

14             MR. BRADFORD:  We don't have enough for

15   everybody.  We can distribute them to others later.  But we

16   do have for the Court and the clerk, colored copies that are

17   highlighted.  And I think the Court will quickly determine

18   which color is which party.  If it evens matters, I might --

19             MR. JOHNSTON:  The yellow is us.

20             MR. SIEGEL:  Okay.  We've approved that, Your

21   Honor, just we need to supplement with one piece of paper,

22   and that is the exhibits.

23             THE COURT:  Okay.  Well if you can just leave

24   them before you go, that would be fine.

25             MR. SIEGEL:  Okay, sure.  There's one thing you

1  should know, Your Honor, is what we have is a translation of

2  the deposition exhibit number, with telling you what the --

3  rather than giving you those papers, we gave you a code to

4  show you what the documents before you are.

5                THE COURT:  Okay.

6                MR. SIEGEL:  So that you can translate it --

7                THE COURT:  That would be helpful, thank you.

8                MR. SIEGEL:  -- translate the exhibits.  Thank

9  you.

10                MR. BRADFORD:  Thank you, Your Honor.

11                MR. JOHNSTON:  Before they leave -- well I

12  apologize, Your Honor, I have 60 seconds of remarks on this

13  issue.

14                THE COURT:  Oh, I'm sorry.

15                MR. JOHNSTON:  That's okay.  I --

16                THE COURT:  You weren't on the agenda.

17                MR. JOHNSTON:  Jim Johnston for Oaktree Capital.

18  And we didn't weigh in on the PHONES versus EGI seniority

19  because we believe we're senior to both.  I did, after

20  trying to bite my tongue, have to rise, because Mr. Bradford

21  made an argument several times that is directly relevant to

22  the Swap.  And that is the argument that should he be right,

23  and should EGI be determined to be senior to the PHONES and

24  get a distribution paid over from the PHONES to EGI, that

25  EGI would then be able to keep it.  Even thought they are

1  senior obligations under the EGI subordination agreement,

2  including the Swap.  And you can see that argument imbedded

3  in his recovery chart on the first page, where there's an

4  assumption, both in scenario one and scenario three, item

5  two, romanette two, where the assumption is that EGI would

6  have, "no obligation to turn such pro rata share over to

7  holders of senior obligations under the EGI-TRB

8  subordination agreement."  And the basis for that, you heard

9  Mr. Bradford say, is the absence of a pay over clause in the

10  EGI subordination agreement.  And he directed you to the --

11  to section 6 of his subordination agreement, which is on

12  page 3 of his handout.  And I just wanted to walk through

13  this, because there's some mischief in the highlighting

14  here.  And in fact, you can find the pay over clause in the

15  language, all the language that isn't highlighted.  Starting

16  on the third line near the end where it says, all payments,

17  not highlighted, the turnover clause is found in this

18  language.  All payments or distributions upon or with

19  respect to any subordinated obligation -- you can omit the

20  highlighted language -- received by or on behalf of the

21  subordinating creditor -- omit the highlighted language --

22  shall be received in trust for the benefit of the holders of

23  senior obligations and shall be paid over upon demand of

24  such holders.  I think that's a pretty clear turnover

25  obligation.  If EGI gets something from the PHONES, it's

1   clearly in respect of the EGI note, which is a subordinated

2   obligation, and it would have to be paid over in accordance

3   with section six.

4              THE COURT:  Thank you.

5              MR. JOHNSTON:  Thank you.

6              MR. BENDERNAGEL:  Your Honor, I think that

7   completes this issue.  I just have a point of clarification

8   as to the last comment that you had from Mr. Bradford and

9   Mr. Siegel up here.  In the exhibit list right now, excerpts

10  from Mr. Pate's deposition is marked as Exhibit 156.  And

11  excerpts from Mr. Hochschild's deposition is 157.  Is it the

12  intention of the parties to substitute what's in your

13  binders with something new, or are they going to mark an

14  additional exhibit?  That just wasn't clear to me, and just

15  for the record it would be helpful to know whether it should

16  -- because there are materials up in front of you that are

17  excerpts from the deposition.  And the question is today

18  substituting something new for that, or what.

19             MR. BRADFORD:  I could be wrong, but I thought

20  the exhibits were the entirety of the depositions

21  transcripts, not just excerpts.  And then what we are doing

22  is as to the exhibits that are in, simply drawing the

23  Judge's attention to what we as the parties think it would

24  be most helpful for the Court to look at.  But the idea was

25  to submit the entirety of the depositions as the exhibits.

1    And then the submissions being made this afternoon would

2    just highlight what's already admitted in the form of the

3    existing exhibit.

4    　　　　　MR. BENDERNAGEL:  So they would be sort of like a

5    demonstrative?

6    　　　　　MR. BRADFORD:  Correct.

7    　　　　　MR. BENDERNAGEL:  Okay, that's all.

8    　　　　　THE COURT:  Okay.  Speaking of demonstratives, to

9    the -- are there any demonstratives which are not also

10   exhibits that have been introduced?

11   　　　　　MR. BENDERNAGEL:  I think most of the

12   demonstratives are not exhibits, Your Honor.

13   　　　　　THE COURT:  I'd like a set of those.

14   　　　　　MR. BENDERNAGEL:  Okay, we'll take -- we'll

15   endeavor to collect them.

16   　　　　　THE COURT:  Okay.  Now let's talk about the --

17   　　　　　MR. BENDERNAGEL:  Your Honor, one other thing.

18   We will circulate to the Court and to the parties our

19   recording of what documents are in and what documents

20   aren't.  I think there are only two documents that you

21   explicitly, that are explicitly out.  And there are a bunch

22   that are conditionally admitted, pursuant to your rule.

23   　　　　　THE COURT:  That would be helpful.  Okay, now

24   while we're on post-hearing activity, let me follow up on

25   the can of worms I opened up by suggesting then a substitute

1  for rebuttals.  I allow short letter submissions.  I

2  originally thought by party, and Mr. Bendernagel suggested

3  really it might be better by issue.  But tell me, tell me

4  exactly how that would work and what that would mean in

5  terms of the number of submissions I would be getting.

6            MR. BENDERNAGEL:  Well it would obviously create

7  a greater potential for more submissions.

8            THE COURT:  I would say.

9            MR. BENDERNAGEL:  And you know, we're --

10           THE COURT:  By factors, yeah.

11           MR. BENDERNAGEL:  Yeah, and it may be better to

12  just say instead of, you know, you can submit on the issues.

13  Instead of just two pages, just tell people they can have

14  five pages to say whatever they want, that's it.

15           THE COURT:  How does that strike the rest of the

16  parties?

17           MR. ROSNER:  Your Honor, I personally think it's

18  three pages too much.  I think your two-page suggestion was,

19  was well received.  Obviously, you know, doing it on an

20  issue-by-issue basis I think is the wrong thing.  I think

21  you've got hundreds and hundreds of pages of briefing in

22  front of you on these issues, so the shorter the better.

23  The shorter the better from our perspective.

24           THE COURT:  Okay.  Anyone else wish --

25           MR. ROSNER:  And we're okay to live within two

1    pages.

2              THE COURT:  Okay.  Anyone else?  I mean you don't

3    have to do five, Mr. Rosner.  Does anyone else wish to weigh

4    in on the --

5              MR.  SOTTILE:  Your Honor, Jim Sottile for the

6    Committee.  We would actually agree with Mr. Rosner on this

7    point, two pages per party should be ample for the parties

8    to address whatever issues remain on rebuttal.

9              MR. BRADFORD:  Your Honor, Oaktree concurs with

10   that.  I think two pages would be plenty.

11             THE COURT:  Let's do two pages.  Okay, now talk

12   about when.  Today's Tuesday, how about by the end of the

13   week?

14             MR. BENDERNAGEL:  That's fine.

15             THE COURT:  Say noon on Friday, Eastern Standard

16   Time.  Well yeah, it'll still be Standard Time at that

17   point.

18             MR. BENDERNAGEL:  Well, okay.  That's what we'll

19   do.

20             THE COURT:  Okay.  Anything else we need to talk

21   about?

22             MR. BENDERNAGEL:  There may be things that we

23   need to talk about, but we -- not that I'm aware of, Your

24   Honor.

25             THE COURT:  Okay.  That will conclude this

1   hearing then.  Please remain seated for a moment, but Court

2   will stand adjourned.  Let me know when we're off the

3   record, Al.  I guess some of you may have noticed that --

4        (Whereupon, at 3:15 p.m., the hearing was adjourned.)

5                            CERTIFICATION

6        I certify that the foregoing is a correct

7   transcript from the electronic sound recording of the

8   proceedings in the above-entitled matter.

9

10
11   _____        7 March 2012
12   Tammy Kelly, Transcriber                    Date

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **1129(a)(1(**3) 11:23  11:23  13:9 | | **activity(**1) 171:24 | | **against(**17) 46:22  48:25  52:25  54:25  55:2 | | **allocation(**7) 27:11  29:10  29:24  30:21 | |
| **1129(a)(9(**1) 73:16 | | **actual(**11) 20:13  30:7  45:22  47:11  47:12 | | 55:18  56:2  56:8  57:25  58:15  58:21  59:5 | | 68:21  122:20  125:8 | |
| **1129(b)(1(**5) 10:23  10:24  13:2  70:6  74:19 | | 48:18  51:17  63:2  104:21  108:8  155:20 | | 62:3  63:11  64:11  80:9  86:15 | | | |
| **1129(b)(1)(**1) 60:7 | | | | | | **allocations(**1) 27:21 | |
| **327-plus(**1) 104:19 | | **actually(**36) 17:4  17:6  22:3  24:8  25:20 | | **agency(**3) 100:16  100:24  103:19 | | **allotted(**1) 94:9 | |
| **365(a)(3(**4) 14:21  15:5  15:7  15:18 | | 26:23  41:18  42:15  42:16  46:1  46:18  46:25 | | **agenda(**1) 168:16 | | **allow(**8) 18:6  20:8  76:16  78:10  91:11 | |
| **503(b(**1(1) 15:19 | | 47:10  48:8  50:8  53:12  54:6  57:14  60:21 | | **agent(**5) 100:21  103:5  103:6  103:13  103:13 | | 115:15  152:10  172:1 | |
| **510(a).".(**1) 70:7 | | 65:5  66:10  73:24  82:18  95:9  95:25  97:25 | | **aggregate(**1) 134:25 | | | |
| **510(a)"(**3) 11:11  12:7  17:18 | | 101:7  103:2  103:3  104:16  104:21  127:25 | | **aggressive(**1) 68:16 | | **allowed(**9) 60:12  60:15  60:17  81:11  83:9 | |
| **a)(9(**1) 73:24 | | 150:6  154:3  156:7  173:6 | | **ago(**4) 54:8  69:10  83:24  86:9 | | 83:11  94:5  111:3  162:23 | |
| **a.2d(**1) 154:8 | | | | **agree(**15) 27:2  29:17  42:17  43:21  51:25 | | | |
| **a.m(**4) 1:14  7:1  81:6  81:6 | | **add(**4) 53:7  80:16  84:2  166:20 | | 58:8  76:22  78:16  85:19  88:20  95:24  100:8 | | **allowing(**2) 18:8  91:13 | |
| **abilities(**1) 71:6 | | **added(**4) 20:22  144:12  144:13  144:14 | | 129:25  160:17  173:6 | | **allows(**6) 17:20  18:5  18:17  28:14  29:9 | |
| **ability(**3) 71:12  71:18  96:18 | | **addition(**5) 82:22  118:11  119:12  120:12 | | | | 90:24 | |
| **able(**6) 20:16  63:11  125:10  148:24  163:14 | | 122:25 | | **agreed(**12) 24:25  28:15  58:3  79:12  80:7 | | | |
| 168:25 | | | | 82:5  85:17  106:17  118:9  122:15  128:8 | | **alluded(**1) 38:16 | |
| | | **additional(**9) 46:14  52:17  52:20  55:13 | | 128:9 | | **almost(**5) 23:16  52:16  147:13  165:4  165:4 | |
| **abnormal(**2) 45:12  47:19 | | 62:21  63:7  70:14  121:7  170:14 | | **agreeing(**2) 95:25  136:2 | | **alone(**4) 63:8  77:1  77:1  77:3 | |
| **about(**141) 9:24  10:21  11:10  14:25  15:10 | | | | **agreement(**112) 3:4  12:17  13:4  13:5  13:18 | | **along(**1) 167:7 | |
| 15:15  15:20  16:8  16:11  16:13  16:18 | | **address(**5) 7:6  111:13  112:10  118:22  173:8 | | 45:25  46:23  48:5  48:10  49:2  49:3  49:6 | | **already(**9) 36:20  64:25  82:6  84:12  100:11 | |
| 16:24  17:11  17:22  18:18  19:9  20:2  25:5 | | **addressed(**1) 109:3 | | 49:9  49:13  49:21  49:24  52:24  53:3  61:3 | | 124:10  124:24  139:11  171:2 | |
| 25:20  26:8  26:21  27:5  29:23  30:11  30:17 | | **addresses(**1) 112:2 | | 63:19  70:3  70:9  70:13  70:17  71:11  71:11 | | | |
| 30:19  30:21  32:22  34:19  36:20  38:3  39:6 | | **addressing(**1) 118:15 | | 73:22  79:9  79:12  79:20  80:6  96:3  98:25 | | **also(**33) 9:21  10:19  13:12  18:22  19:8  23:6 | |
| 39:6  39:19  39:25  40:8  41:1  41:5  41:13 | | **adds(**2) 117:19  149:6 | | 99:1  99:3  99:3  99:4  99:8  100:10  101:3 | | 23:14  23:19  23:22  24:16  27:23  32:18 | |
| 43:12  44:9  45:2  45:5  46:1  46:11  46:11 | | **adenture(**1) 145:11 | | 101:14  101:23  101:24  101:25  106:25 | | 36:25  40:14  44:17  49:14  54:11  59:8  60:23 | |
| 46:12  47:5  47:23  48:8  48:23  48:24  51:4 | | **adequate(**1) 74:24 | | 110:16  114:1  114:1  114:4  114:8  114:9 | | 88:6  90:8  95:4  103:20  103:24  106:3  109:7 | |
| 54:14  55:20  58:24  59:1  59:3  61:3  62:5 | | **adh(**1) 26:11 | | 117:4  117:7  120:17  120:22  121:19  124:9 | | 115:6  124:4  132:14  145:24  155:2  164:5 | |
| 62:5  66:13  66:23  67:6  67:9  67:16  67:25 | | **adjourned(**2) 174:2  174:4 | | 125:5  125:25  126:2  126:16  127:5  127:24 | | 171:9 | |
| 69:22  72:10  73:5  74:3  74:15  74:19  74:21 | | **adjusted(**3) 29:4  29:7  50:18 | | 128:6  128:13  129:6  129:7  130:24  131:1 | | | |
| 74:23  78:6  81:1  82:15  84:17  88:24  89:2 | | **adler(**1) 2:43 | | 131:14  131:23  137:16  138:1  138:3  138:4 | | **alternatively(**1) 23:16 | |
| 89:6  92:3  93:1  93:6  96:4  99:15  104:19 | | **administered(**1) 1:5 | | 138:10  139:17  140:15  140:17  140:18 | | **although(**5) 21:7  27:4  29:13  119:5  153:10 | |
| 105:11  107:25  110:19  112:13  113:22  116:8 | | **administerial(**1) 89:2 | | 140:19  140:21  141:2  142:5  143:1  143:4 | | **alvarez(**1) 5:35 | |
| 116:24  118:5  118:11  124:20  124:22 | | **admissible(**14) 110:13  119:3  120:10  121:3 | | 144:18  146:22  146:25  147:12  147:15 | | **always(**6) 15:9  16:5  56:24  56:25  150:3 | |
| 127:10  127:24  128:20  128:25  128:25  129:2 | | 121:20  121:22  138:21  138:25  153:3  153:25 | | 147:19  149:2  149:5  152:21  155:17  156:6 | | 166:19 | |
| 131:12  134:11  136:18  136:19  138:4  139:7 | | 163:11  163:19  164:18  166:25 | | 157:9  157:21  157:24  159:7  159:8  159:11 | | | |
| 139:22  140:20  142:13  142:15  142:23  143:2 | | | | 159:22  161:12  163:12  163:5  166:21  169:1 | | **ambiguities(**2) 145:21  145:24 | |
| 143:9  144:10  149:8  149:11  149:25  150:3 | | **admissible"(**1) 145:19 | | 169:8  169:10  169:11 | | **ambiguity(**3) 120:21  145:8  145:17 | |
| 150:13  151:20  152:8  153:2  153:21  154:23 | | **admission(**9) 9:9  81:17  107:10  107:18 | | | | **ambiguity"(**1) 145:19 | |
| 156:11  158:14  163:8  164:8  164:24  165:7 | | 152:3  154:4  152:6  152:19 | | **agreements(**26) 10:8  11:17  12:1  12:6 | | **ambiguous(**5) 114:9  145:5  153:23  164:8 | |
| 165:11  171:16  172:12  173:12  173:21 | | | | 12:10  14:2  18:6  18:7  19:7  31:7  31:8  48:1 | | 164:11 | |
| 173:23 | | **admit(**6) 41:3  113:8  118:4  127:25  163:4 | | 71:2  71:3  71:14  71:18  79:14  79:20  97:10 | | | |
| | | 163:5 | | 98:7  98:20  113:24  130:4  144:16  145:4 | | **ambro(**1) 15:14 | |
| **above(**1) 58:8 | | | | 145:6 | | **amended(**1) 9:21 | |
| **aboveentitled  (**1) 174:8 | | **admitted(**21) 8:11  9:11  9:13  50:14  81:19 | | | | **america(**3) 4:36  4:36  68:8 | |
| **absence(**2) 126:1  169:9 | | 81:21  107:12  107:13  108:4  108:5  108:13 | | **agrees(**2) 29:19  43:14 | | **american(**2) 69:23  154:25 | |
| **absent(**2) 99:14  100:17 | | 108:15  108:25  109:1  113:4  113:14  113:19 | | **ahead(**2) 7:8  121:17 | | **among(**2) 27:1  146:15 | |
| **absolute(**10) 18:3  20:24  20:24  20:25  20:25 | | 116:11  122:12  171:2  171:22 | | **akin(**2) 2:13  82:13 | | **amongst(**1) 95:24 | |
| 21:8  21:13  52:15  75:2 | | | | **all(**143) 7:8  8:13  8:9  8:21  9:16  10:23 | | **amount(**40) 18:23  18:25  19:19  20:8  30:15 | |
| | | **admittedly(**1) 25:6 | | 11:1  13:6  13:6  20:10  20:22  21:6  22:18 | | 31:15  31:16  32:23  32:24  36:7  36:13  38:3 | |
| **absolutely(**5) 17:9  20:23  22:15  38:21  63:3 | | **admonition(**1) 78:15 | | 23:11  25:15  27:1  27:22  29:9  29:15  29:7 | | 51:18  51:22  54:8  56:8  58:1  58:23  76:24 | |
| **absorbed(**1) 93:24 | | **adopt(**3) 37:25  38:1  75:10 | | 31:8  32:17  35:6  35:22  37:10  37:23  39:1 | | 78:8  81:11  83:9  83:12  83:17  83:23  84:21 | |
| **abstract(**1) 36:11 | | **adopted(**4) 15:12  34:7  36:22  52:1 | | 39:7  41:12  42:6  42:8  42:21  42:23  43:9 | | 85:15  85:22  86:1  86:3  86:5  86:19  86:25 | |
| **absurd(**1) 32:7 | | **adumbrated(**1) 14:6 | | 45:9  46:17  47:13  47:24  50:12  50:12  50:13 | | 87:15  89:7  94:6  97:20  99:2  99:2  104:12 | |
| **academically(**1) 65:20 | | **advance(**3) 65:22  145:14  145:18 | | 51:25  54:19  58:8  59:7  61:5  62:15  63:12 | | | |
| **accept(**8) 64:16  66:14  68:17  72:1  85:9 | | **advanced(**1) 75:11 | | 66:1  69:22  71:13  73:5  74:8  76:17  76:21 | | **amounts(**2) 30:20  30:21 | |
| 87:1  96:19  98:16 | | **adversaries(**1) 41:2 | | 81:7  82:11  84:9  85:9  86:21  88:7  92:17 | | **ample(**1) 173:7 | |
| | | **adversary(**1) 92:1 | | 92:18  94:1  94:6  95:2  95:5  95:7  95:10 | | **amply(**1) 44:12 | |
| **acceptable(**1) 57:20 | | **adverse(**1) 119:25 | | 103:4  104:14  104:20  105:9  105:16  105:23 | | **analysis(**15) 13:22  26:5  28:17  28:22  28:23 | |
| **acceptance(**1) 90:5 | | **advise(**1) 121:6 | | 106:6  106:18  108:4  110:13  110:23  111:24 | | 28:24  42:18  43:7  43:14  51:20  51:22  54:3 | |
| **accepted(**5) 8:8  11:8  98:6  104:18  104:22 | | **advocate(**1) 139:5 | | 112:16  112:22  113:3  113:8  113:24  114:6 | | 92:22  94:19  126:11 | |
| **accepting(**1) 8:4 | | **advocated(**3) 17:16  18:21  21:18 | | 115:19  115:23  116:4  116:17  116:17  117:17 | | | |
| **accepts(**1) 155:13 | | **affect(**1) 139:24 | | 118:2  118:4  120:24  121:11  122:6  124:12 | | **analyst(**2) 152:4  152:13 | |
| **accessed(**1) 57:18 | | **affected(**2) 153:11  166:9 | | 124:18  128:24  129:8  129:21  131:18  133:8 | | **analytical(**1) 10:19 | |
| **accomplished(**2) 74:20  131:7 | | **affirmed(**5) 14:11  14:12  14:18  14:19  15:13 | | 136:10  137:1  138:8  138:23  139:18  140:18 | | **analytically(**1) 24:5 | |
| **accomplishes(**1) 155:12 | | 64:10  69:21  78:22  79:15  87:16  87:18 | | 141:3  142:1  142:15  144:7  144:7  144:25 | | **analyze(**1) 43:23 | |
| **accordance(**2) 97:12  101:13  170:2 | | 87:19  87:22  88:8  88:16  91:1  95:10  95:12 | | 146:10  148:6  149:11  149:21  149:24  150:18 | | **analyzed(**1) 36:11 | |
| **according(**2) 97:4  98:24 | | 101:10  101:12  103:17  106:4  115:18  116:22 | | 151:10  159:5  162:23  163:2  163:4  163:10 | | **analyzing(**2) 54:21  55:23 | |
| **account(**8) 31:13  53:20  55:22  55:24  124:1 | | 117:19  118:5  133:7  139:6  146:12  163:20 | | 163:10  163:19  163:22  163:24  165:21  166:2 | | | |
| 130:13  130:17  158:24 | | 164:7  164:14  164:20  164:25  165:1  168:19 | | 166:3  166:20  166:25  167:2  169:15  169:16 | | | |
| | | | | 169:18  171:7 | | | |
| **accounts(**2) 142:11  144:14 | | **afternoon(**4) 105:17  105:18  167:13  171:1 | | | | | |
| **accrued(**1) 149:6 | | **again(**43) 7:20  12:20  14:12  14:19  16:3 | | **allapattah(**1) 22:21 | | | |
| **acknowledge(**1) 128:5 | | 25:25  27:25  34:23  35:14  40:24  40:24 | | **allegation(**1) 40:14 | | | |
| **across(**1) 148:21 | | 41:21  54:1  55:17  58:12  63:14  90:1  92:18 | | **allegations(**1) 40:13 | | | |
| **act(**2) 67:9  103:15 | | 92:19  93:4  93:12  97:8  101:23  107:2  113:1 | | **alleged(**2) 18:23  36:1 | | | |
| **acting(**1) 67:13 | | 113:19  116:21  116:21  125:7  128:24  130:2 | | **allegedly(**1) 31:11 | | | |
| **action(**1) 136:22 | | 130:9  130:10  130:22  134:10  148:6  149:11 | | **alleviated(**1) 42:25 | | | |
| **actions(**4) 100:19  136:25  137:7  137:12 | | 151:14  155:14  158:21  159:1  160:19  162:1 | | **allocate(**3) 56:6  65:25  68:25 | | | |
| **active(**1) 44:6 | | | | **allocated(**1) 84:21 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) | 3:41 7:10 7:12 7:17 7:20 7:24 7:25 8:2 8:9 8:11 9:5 9:6 9:19 9:25 10:4 10:8 10:11 10:17 10:18 10:18 10:19 10:21 11:6 11:6 11:8 11:8 11:12 11:12 11:14 11:23 11:25 12:2 12:11 12:11 12:12 12:17 12:21 12:23 12:24 13:7 13:15 13:18 13:18 14:1 14:8 14:9 14:11 14:11 14:14 14:19 14:21 14:24 15:7 15:8 15:12 15:12 15:14 15:22 15:23 16:7 16:13 16:15 17:3 17:9 17:11 17:12 17:15 17:18 18:1 18:2 18:9 18:16 18:18 18:22 19:1 19:5 19:7 19:8 19:21 19:23 20:2 20:6 20:11 20:15 20:17 21:14 21:21 21:22 21:23 22:2 22:7 22:7 22:8 22:9 22:13 22:16 22:23 22:24 23:3 23:5 23:11 23:14 23:18 23:18 23:18 23:19 23:20 24:1 24:6 24:7 24:9 24:13 24:14 24:15 24:17 24:23 24:24 25:3 25:5 25:12 25:25 26:2 26:7 26:10 26:15 26:21 26:22 27:1 27:1 27:3 27:6 27:8 27:13 27:15 27:17 27:23 27:25 27:25 28:6 28:9 28:10 28:10 28:12 28:13 28:16 28:21 28:24 28:25 29:7 29:8 29:11 29:18 29:21 30:3 30:3 30:6 30:11 30:14 30:15 30:19 30:25 31:3 31:6 31:18 31:21 31:22 32:1 32:9 32:15 33:4 33:12 33:14 33:17 34:1 34:7 34:8 34:10 34:10 34:11 34:13 34:15 34:16 34:18 35:2 35:5 35:5 35:13 35:15 35:16 35:17 35:19 36:12 36:13 36:16 37:4 37:6 37:7 37:9 37:22 38:7 38:14 38:20 38:24 38:25 39:1 39:2 39:5 39:6 39:11 39:17 39:22 39:24 40:1 40:5 40:6 40:9 40:20 40:22 40:23 40:23 40:25 41:3 41:3 41:4 41:5 41:15 41:20 41:21 41:22 41:23 41:25 42:5 42:12 42:18 42:23 43:1 43:4 43:8 43:12 43:13 43:14 43:16 43:17 43:23 43:23 44:1 44:2 44:4 44:7 44:10 44:17 44:19 45:3 45:6 45:8 45:8 45:14 45:15 45:17 45:20 45:22 46:6 46:8 46:10 46:11 46:17 46:20 46:21 47:3 47:6 47:11 47:16 47:19 47:21 47:22 47:23 48:5 48:17 48:17 48:23 49:1 49:2 49:4 49:9 49:10 49:12 49:15 49:22 49:24 50:5 50:8 50:20 50:22 51:2 51:3 51:6 51:7 51:10 51:12 51:14 | **and**(301) | 51:14 51:15 51:15 51:16 51:21 52:2 52:3 52:11 52:16 52:18 53:1 53:1 53:2 53:7 53:15 53:18 53:23 54:4 54:9 54:11 54:14 54:21 54:23 55:1 55:5 55:7 55:10 55:19 56:5 56:8 56:8 56:10 56:24 57:2 57:5 57:10 57:14 57:15 57:17 58:1 58:3 58:5 58:14 58:17 58:17 58:22 58:23 58:24 59:1 59:3 59:11 59:12 59:17 60:1 60:4 60:7 60:11 60:14 60:15 60:17 60:18 60:19 60:19 60:25 61:7 61:9 61:11 61:12 61:18 61:23 61:23 62:4 62:9 62:12 62:13 62:13 62:16 62:17 62:19 62:20 62:25 63:1 63:5 63:9 63:13 63:14 63:19 64:1 64:3 64:3 64:8 64:9 64:11 64:22 64:23 65:1 65:11 65:12 65:22 65:25 66:4 66:7 66:13 66:19 67:3 67:7 67:9 67:11 67:12 67:14 67:15 67:16 67:21 68:2 68:8 68:15 68:23 68:25 69:2 69:13 69:14 69:24 69:25 70:2 70:13 70:16 70:22 70:22 71:2 71:4 71:6 71:9 71:11 71:12 71:19 71:21 71:22 72:2 72:7 72:7 72:13 72:15 72:17 72:22 72:22 72:24 73:3 73:6 73:7 73:20 73:24 74:2 74:7 74:10 74:15 74:17 75:9 75:12 75:19 75:22 75:23 76:6 76:10 76:15 76:19 76:20 76:20 76:21 77:2 77:4 77:5 77:13 77:16 77:18 77:18 77:22 78:1 78:8 78:9 78:12 78:22 79:8 79:10 79:18 80:3 80:6 80:24 81:2 81:10 81:13 81:22 82:5 82:6 82:8 82:9 82:15 82:18 82:23 82:24 83:7 83:11 83:16 83:18 83:25 84:1 84:3 84:4 84:5 84:10 84:13 84:15 84:9 84:20 84:22 85:2 85:5 85:11 85:12 85:15 85:20 85:23 86:3 86:8 86:8 86:13 86:15 86:18 86:24 86:24 87:3 87:6 87:7 87:9 87:10 87:11 87:25 88:2 88:3 88:5 88:6 88:6 88:9 88:13 88:14 88:19 88:20 88:21 88:22 88:23 88:24 89:5 89:14 89:15 89:16 89:19 89:20 89:24 90:6 90:10 90:12 90:14 90:19 91:3 91:13 91:22 92:2 92:8 92:13 92:15 92:16 92:19 92:24 93:3 93:6 93:7 93:10 93:17 93:20 93:21 94:5 94:11 94:14 94:15 94:17 94:17 94:19 94:22 94:24 94:25 95:1 | **and**(301) | 95:1 95:2 95:2 95:7 95:7 95:13 95:14 95:15 95:21 95:23 95:25 96:3 96:4 96:5 96:6 96:6 96:8 96:8 96:13 96:19 96:24 97:3 97:3 97:4 97:11 97:11 97:14 97:17 97:18 97:19 97:21 97:23 97:25 97:25 98:8 98:13 98:16 98:17 98:25 99:1 99:4 99:6 99:7 99:10 99:10 99:18 99:19 99:24 99:24 100:5 100:20 101:4 101:6 101:8 101:13 101:21 101:23 102:6 102:9 102:11 102:13 102:18 102:22 102:25 103:9 103:11 103:24 104:1 104:3 104:5 104:11 104:22 105:5 105:5 105:6 105:13 106:3 106:4 106:5 106:12 106:15 106:20 106:25 107:5 107:5 107:7 107:13 107:17 108:7 108:19 109:1 109:5 109:8 109:12 109:14 109:15 109:15 109:18 109:21 109:23 110:4 110:8 110:9 110:11 110:12 110:18 110:21 110:24 111:2 111:8 111:11 111:18 111:20 112:13 112:16 112:21 112:22 112:24 112:25 113:10 113:13 113:16 113:22 114:8 114:9 114:15 114:20 114:23 114:25 115:8 115:15 115:25 116:4 116:16 116:13 116:14 116:15 116:20 116:24 117:4 117:13 117:17 117:18 117:19 118:3 118:6 118:11 118:13 118:18 118:25 119:1 119:2 119:5 119:6 119:6 119:7 119:7 119:10 119:12 119:14 119:16 119:21 120:3 120:5 120:6 120:8 120:12 120:15 120:17 120:20 121:1 121:3 121:3 121:4 122:1 122:2 122:8 122:9 122:12 122:15 122:18 122:22 123:2 123:19 123:22 123:23 123:24 125:3 125:7 125:11 125:21 125:25 126:1 126:3 126:8 126:14 126:17 126:25 127:4 127:11 127:11 127:14 127:21 127:23 127:25 128:5 128:7 128:16 128:18 128:21 128:24 129:6 129:8 129:16 129:22 130:8 130:9 130:19 130:24 131:15 131:11 131:19 131:21 131:23 132:1 132:3 132:4 132:5 132:7 132:13 132:14 132:25 132:17 132:21 132:21 132:25 133:3 133:4 133:10 133:13 133:20 134:2 134:3 134:8 134:14 134:19 134:20 135:2 135:11 135:13 136:14 136:15 137:16 137:19 137:24 138:4 138:4 138:7 138:8 138:12 138:19 139:1 139:2 139:10 139:12 139:14 139:22 139:24 140:3 140:5 140:5 140:14 140:17 140:21 140:23 140:25 141:2 141:3 141:4 141:4 142:3 142:6 142:11 142:16 142:17 142:20 142:23 142:25 143:3 143:9 143:10 143:11 | **and**(195) | 143:13 143:16 143:17 143:20 143:20 143:24 144:1 144:3 144:3 144:9 144:12 144:14 144:19 145:3 145:8 145:16 145:19 145:20 146:2 146:10 146:13 146:16 146:17 146:23 146:25 147:7 147:8 147:9 147:13 147:22 147:23 147:24 148:4 148:5 148:10 148:19 148:20 148:25 149:5 149:6 149:7 149:9 149:11 149:12 149:15 149:20 149:22 150:11 150:12 150:12 150:18 150:19 150:20 150:22 150:24 151:3 151:4 151:7 151:7 151:8 151:10 151:10 151:13 151:17 151:20 151:21 151:23 152:2 152:4 152:14 152:18 152:19 152:25 153:1 153:3 153:4 153:4 153:5 153:10 153:15 153:16 153:19 153:25 154:2 154:3 154:5 154:9 154:9 154:11 154:12 154:14 155:2 155:3 155:4 155:5 155:8 155:12 155:14 155:15 155:17 155:17 155:18 155:19 155:21 155:22 156:2 156:3 156:6 156:9 156:21 157:4 157:11 157:18 157:21 158:9 158:12 158:18 158:22 159:2 159:10 159:19 160:3 160:10 160:11 160:17 162:1 162:4 162:5 162:10 162:13 162:13 162:20 162:22 162:25 163:5 163:6 163:8 163:14 163:19 163:21 163:23 163:25 164:4 164:7 164:11 164:14 164:17 164:19 164:23 164:25 165:2 165:8 165:13 165:16 165:24 166:1 166:1 166:6 166:16 166:19 166:21 166:24 166:24 167:3 167:10 167:16 167:17 167:22 168:18 168:22 168:23 168:23 169:2 169:4 169:8 169:10 169:12 169:14 169:23 170:2 170:8 170:10 170:14 170:17 170:21 171:1 171:18 171:19 171:21 172:2 172:4 172:9 172:11 172:21 172:25 |

**and/or**(1) 125:12
**anderson**(1) 2:33
**andrew**(4) 4:16 4:17 5:25 5:40
**angela**(1) 6:28
**angeles**(2) 1:34 3:16
**angelo**(1) 5:39
**annex**(1) 29:14
**another**(13) 15:4 32:8 44:7 52:9 60:1 77:20 112:19 120:13 130:12 131:6 135:9 142:10 166:11

**answer**(14) 20:3 36:16 74:2 74:9 80:3 83:22 84:11 94:15 134:15 158:2 158:20 161:8 161:9 162:18

**answered**(2) 158:18 158:22
**answers**(2) 128:16 158:25
**anti-legislative**(1) 23:1
**anticipated**(2) 68:22 85:24
**anticipating**(1) 97:2
**antiquated**(1) 95:19
**any**(86) 8:4 9:8 20:2 20:9 21:20 23:5 23:20 23:24 24:3 25:21 30:16 31:17 31:18 34:13 36:14 37:22 40:9 41:6 41:14 64:15 78:11 78:17 81:13 81:13 81:16 82:8 87:10 90:3 91:15 93:14 96:16 97:10 97:10 100:16 100:20 103:4 103:5 103:14 105:1 105:2 107:9 107:18 108:7 108:11 108:21 108:23 117:22 120:8 124:3 124:7 125:10 127:11 127:12 130:16 130:22 132:10 134:8 135:3 137:6 137:11 137:19 137:24 137:24 141:5 142:8 142:9 147:3 149:8 153:14 154:3 154:23 157:13 158:5 158:5 159:14 159:17 160:1 160:7 160:22 161:18 162:25 163:6 164:16 165:20 166:16 169:19 171:9

**anybody**(17) 72:17 76:9 107:17 110:18 111:8 119:20 119:23 119:25 135:19 135:23 136:10 142:12 156:8 159:18 160:23 161:18 165:11

**anybody's**(1) 40:3
**anymore**(2) 64:9 77:21
**anyone**(12) 8:4 81:16 103:21 136:9 136:24 158:15 159:15 160:14 161:4 172:24 173:2 173:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**anything**(16) 16:17 22:17 36:25 64:14 72:18 76:9 79:20 80:15 101:20 126:8 126:19 128:12 128:16 151:13 165:8 173:20

**anyway**(5) 52:23 55:12 60:10 103:1 140:9

**apologize**(2) 29:21 168:12

**apparently**(3) 93:24 93:25 94:20

**appeals**(2) 151:3 164:2

**appear**(1) 71:6

**appearances**(4) 3:38 4:1 5:1 6:1

**appearing**(1) 64:20

**appellate**(2) 91:18 145:12

**applicable**(5) 11:1 13:10 37:7 96:5 127:14

**application**(3) 45:25 48:9 48:11

**applied**(4) 22:9 33:8 34:12 37:7

**applies**(5) 70:6 126:21 142:12 150:4 155:9

**apply**(19) 24:8 29:23 37:12 47:22 49:2 49:3 49:5 49:13 49:23 50:2 51:7 53:3 61:10 100:6 139:18 153:19 154:18 156:2 162:5

**apply."**(1) 15:20

**applying**(4) 15:22 32:17 49:25 54:14

**appreciate**(1) 133:10

**appreciated**(1) 78:15

**approach**(9) 21:19 21:22 22:5 22:9 26:6 26:15 33:5 122:2 148:13

**appropriate**(3) 43:13 72:24 76:13

**appropriately**(2) 67:11 76:15

**approve**(1) 40:4

**approved**(4) 38:23 60:8 82:7 167:20

**approximate**(1) 45:14

**approximately**(1) 46:1

**april**(3) 54:8 116:10 143:10

**arban**(2) 3:25 3:26

**architecture**(1) 40:18

**are**(201) 7:17 7:23 8:8 8:9 8:11 9:1 9:5 9:13 9:23 10:7 10:8 10:12 11:3 11:9 12:1 12:2 12:3 12:3 12:11 12:22 18:11 19:13 19:14 21:12 25:15 26:13 27:4 27:17 28:13 29:10 29:19 30:4 30:5 31:18 32:15 33:15 36:3 37:14 40:13 40:18 40:24 43:12 46:6 46:16 46:24 49:5 49:22 51:18 51:19 52:8 52:10 52:12 52:21 53:1 53:2 53:2 55:14 55:15 55:17 56:7 56:16 57:18 58:11 58:12 58:17 58:19 59:13 61:22 67:10 68:2 71:18 74:18 74:25 75:19 76:15 77:8 77:12 77:22 79:16 79:23 81:12 81:21 82:8 83:9 83:11 84:14 87:25 88:12 88:12 88:13 90:6 90:19 91:9 93:1 96:2 96:4 96:5 98:17 100:1 100:21 101:10 103:9 106:14 106:17 106:24 106:25 107:3 107:13 108:17 108:17 109:1 109:3 109:3 109:8 109:22 111:5 112:23 113:14 114:11 114:23 121:20 121:22 122:10 122:17 122:18 123:17 124:5 124:8 124:11 124:12 124:15 124:24 125:5 125:10 125:11 125:12 125:19 126:7 126:9 126:10 126:10 126:22 126:24 127:19 127:21 127:22 128:17 128:21 129:4 129:13 129:14 129:19 129:21 130:2 130:10 131:6 133:16 138:1 138:23 138:25 139:13 139:15 141:3 142:5 143:5 143:17 143:24 144:2 144:5 145:6 145:24 147:24 147:25 154:11 159:19 162:4 163:2 163:22 165:16 166:15 166:17 166:22 167:1 167:16 168:4 168:25 170:13 170:16 170:16 170:21 170:22 171:9 171:9 171:12 171:19 171:20 171:21 171:21 171:22

**areas**(1) 74:25

**aren't**(1) 171:20

**aren't**(2) 116:6 143:22

**arguably**(1) 127:14

**argue**(8) 11:15 53:18 62:25 94:18 117:20 126:4 128:20 164:8

**argued**(9) 23:14 34:6 41:23 64:12 84:12 122:25 123:11 123:22 125:25

**argues**(1) 155:6

**arguing**(7) 51:12 55:18 79:6 92:15 99:8 124:19 124:22

**argument**(54) 9:20 10:10 10:11 10:18 14:4 17:10 19:6 19:13 19:17 19:24 24:2 28:5 30:17 30:18 37:18 37:19 37:20 41:11 48:17 53:19 53:19 65:22 69:12 72:9 75:10 76:1 78:9 85:3 89:8 99:6 99:10 102:7 103:3 106:20 109:18 110:11 110:25 112:23 113:1 113:5 114:3 121:4 121:5 121:7 121:19 122:1 127:24 140:7 143:22 165:5 165:6 168:21 168:22 169:2

**arguments**(10) 19:25 20:4 27:22 35:11 65:20 82:8 89:7 104:8 109:22 163:22

**arise**(7) 9:24 9:25 36:1 38:6 40:9 77:14 85:25

**arises**(4) 24:17 33:14 33:17 38:10

**arithmetic**(1) 61:18

**armstrong**(10) 23:23 33:8 33:16 34:8 34:11 37:7 37:13 52:1 61:9 61:11

**arose**(1) 24:21

**around**(7) 26:14 41:2 67:8 84:8 100:12 160:11 162:6

**article**(6) 22:24 33:10 57:12 69:20 69:21 100:23

**articulated**(1) 10:2

**articulating**(1) 118:23

**ashley**(1) 4:8

**aside**(1) 166:2

**ask**(11) 8:3 56:1 67:9 73:15 75:22 107:22 118:12 137:22 139:19 158:21 167:3

**asked**(13) 38:19 38:20 92:20 110:18 123:5 124:25 139:20 150:8 155:17 155:19 158:14 158:18 158:22

**asking**(2) 134:11 135:23

**aspect**(1) 92:22

**asserted**(1) 60:16

**asserting**(2) 85:21 86:4

**assertions**(1) 19:22

**asserts**(3) 34:22 34:24 34:24

**assess**(2) 56:5 57:2

**assessed**(2) 33:18 57:1

**asset**(1) 79:13

**assets**(9) 45:3 79:8 79:16 124:1 124:18 124:20 125:17 126:8 127:6

**assist**(1) 74:15

**assume**(2) 28:20 114:11

**assumed**(3) 28:18 157:4 165:22

**assumption**(8) 41:23 51:12 165:25 166:1 166:12 166:19 169:4 169:5

**atlantic**(1) 145:23

**attack**(2) 40:17 40:17

**attacks**(1) 40:21

**attempted**(1) 164:6

**attempting**(1) 31:1

**attempts**(1) 150:7

**attention**(3) 37:11 157:11 170:23

**attorney**(3) 146:15 146:15 165:12

**attorneys**(1) 160:22

**attributes**(1) 106:23

**audible**(6) 8:6 9:10 81:18 107:11 108:12 108:24

**augment**(1) 94:11

**aurelius**(12) 2:12 5:30 5:31 82:14 95:1 98:19 98:24 99:7 100:8 100:16 101:9 102:23

**austin**(2) 1:21 4:21

**authenticate**(1) 103:15

**authenticating**(4) 103:5 103:6 103:13 103:13

**authority**(3) 12:16 75:18 76:24

**authorized**(4) 12:8 103:14 152:6 152:9

**automated**(4) 96:15 97:8 98:9 101:2

**automatic**(2) 103:25 104:1

**automatically**(1) 98:9

**availability**(1) 112:9

**available**(4) 79:7 79:9 83:2 125:18

**ave**(1) 3:15

**avenue**(3) 1:40 2:29 3:21

**avoidance**(16) 123:11 124:10 124:23 126:5 126:9 126:13 135:16 135:21 135:25 136:4 136:19 136:24 137:7 137:12 139:12 139:14

**avoided**(1) 42:21

**award**(1) 90:18

**aware**(3) 82:9 159:19 173:23

**away**(7) 15:24 15:25 59:14 68:19 69:14 77:3 117:23

**awful**(2) 78:1 99:7

**aztech**(2) 22:4 22:6

**b)1**(3) 73:19 73:23 73:25

**back**(23) 30:20 51:25 75:23 82:24 85:2 86:17 86:23 87:3 88:18 88:18 88:25 89:25 92:21 93:14 111:2 124:3 130:12 130:20 149:22 151:8 157:7 165:15 166:24

**back-and-forth**(1) 116:24

**background**(3) 29:21 118:16 132:15

**bad**(5) 25:20 25:21 40:14

**balance**(1) 117:23

**balanced**(1) 33:25

**balances**(1) 22:23

**ball**(1) 4:46

**ball**(1) 39:6

**bank**(35) 4:36 4:36 5:4 5:5 6:35 44:18 86:13 92:14 93:6 93:11 95:1 95:21 95:21 96:12 96:18 96:21 97:16 97:20 97:25 98:1 98:6 98:7 98:10 98:15 99:16 99:19 100:22 101:20 102:4 102:5 103:17 104:2 104:4 104:18 105:5

**bank's**(2) 97:12 100:18

**bankruptcy**(45) 1:1 1:18 9:24 10:1 10:15 10:25 13:4 14:15 14:16 14:17 14:18 15:3 18:16 19:7 23:12 33:21 46:9 48:2 57:4 60:1 65:13 65:13 65:17 65:24 66:16 66:20 67:20 68:7 68:10 68:22 69:18 69:19 69:23 69:24 74:4 74:23 79:21 89:17 89:19 89:23 90:11 98:3 98:12 102:15 102:17

**bankruptcy"**(1) 106:5

**banks**(2) 117:5 150:18

**bank's**(1) 118:22

**bannow**(1) 164:1

**barclays**(2) 5:43 5:43

**bargain**(3) 66:4 70:20 74:18

**bargained**(8) 68:12 68:19 70:24 73:6 75:5 80:5 88:12 91:2

**barker**(1) 3:21

**base**(1) 54:9

**based**(8) 20:13 28:14 48:6 57:1 95:16 104:6 140:7 166:13

**bases**(1) 104:14

**basic**(1) 40:17

**basically**(10) 20:15 22:22 27:15 29:19 33:11 48:14 57:24 127:10 150:10 162:24

**basis**(22) 24:7 24:19 29:11 29:12 37:22 38:14 40:2 57:4 60:8 60:20 69:3 69:5 83:19 90:20 100:15 100:20 109:24 121:8 133:21 162:14 169:8 172:20

**baskin**(2) 3:19 42:12

**battle**(1) 16:22

**bay**(8) 25:7 25:8 25:12 25:12 36:20 36:20 51:20 57:22

**bay's**(1) 37:25

**bears**(1) 129:4

**became**(2) 115:14 115:23

**because**(112) 7:13 7:15 10:6 10:16 10:17 11:16 11:23 11:24 12:3 12:4 12:18 13:23 17:17 18:15 19:21 22:6 23:3 24:3 24:21 29:8 31:12 32:5 32:16 34:7 37:4 38:9 39:13 40:17 42:17 43:2 47:10 47:13 47:14 49:1 49:5 50:2 51:2 52:15 52:19 55:3 56:7 57:16 59:9 60:6 61:6 61:15 61:17 61:22 61:24 62:3 63:9 63:11 64:7 69:7 69:8 71:17 72:11 75:25 76:14 77:3 78:10 84:18 91:1 93:19 96:1 100:2 107:24 111:4 111:4 111:25 112:23 115:14 117:20 118:7 120:4 124:9 124:18 126:24 127:4 128:7 128:23 129:5 129:12 129:19 130:3 130:10 132:8 132:12 132:24 139:21 139:25 140:2 144:6 145:18 148:8 149:7 149:16 151:13 151:24 152:1 152:2 152:4 152:9 152:12 154:13 156:8 162:16 166:8 168:19 168:20 169:13 170:16

**become**(4) 96:21 125:17 125:17 133:7

**becomes**(1) 114:6

**bed**(1) 10:18

**been**(65) 15:9 23:11 32:21 34:15 37:9 37:18 37:19 37:21 39:4 39:14 44:5 44:6 62:3 63:5 63:21 64:1 66:8 75:10 76:3 76:24 78:12 82:5 84:9 86:3 86:19 89:16 89:21 89:22 89:25 90:1 90:24 91:8 93:4 96:11 98:20 98:21 98:23 99:1 100:2 102:17 102:20 104:7 104:8 106:9 109:5 109:20 116:10 120:9 121:12 122:12 122:15 125:9 132:19 133:9 144:24 147:11 149:23 150:19 154:3 158:18 158:22 171:10

**before**(48) 1:17 7:5 18:20 19:2 19:4 27:14 29:1 29:1 29:10 31:8 32:17 40:11 44:18 46:10 49:19 50:25 51:7 54:14 54:16 68:18 69:18 71:17 72:17 72:23 75:3 76:7 76:9 80:25 81:3 81:22 83:25 95:4 95:12 98:3 98:12 104:10 105:20 110:5 111:13 122:11 124:21 139:4 146:7 146:23 164:12 167:24 168:4 168:11

**began**(1) 113:7

**begin**(5) 10:14 10:15 36:24 72:13 113:6

**beginning**(2) 82:4 134:22

**begins**(2) 87:8 87:14

**behalf**(10) 41:9 44:16 44:17 64:21 79:3 94:10 103:15 138:16 157:22 169:20

**being**(45) 10:5 11:16 23:13 24:4 26:19 27:24 27:25 39:8 44:3 46:14 56:16 56:19 56:21 57:9 57:9 57:13 57:16 57:18 59:14 60:8 60:10 62:4 67:22 68:13 70:17 71:16 76:15 77:12 80:16 94:2 107:23 107:24 108:20 114:13 115:5 122:17 123:14 129:8 133:2 133:17 135:8 143:15 147:10 150:6 171:1

**belief**(4) 110:17 119:11 119:12 154:22

**believe**(31) 10:11 10:17 29:14 31:18 33:20 36:12 40:19 41:13 43:2 43:13 44:11 50:12 62:15 83:6 84:23 85:11 85:14 85:21 86:7 89:12 89:24 91:14 108:7 114:2 124:7 128:23 139:15 158:3 161:23 167:12 168:19

**believed**(3) 133:25 144:23 154:21

**believes**(1) 155:12

**bell**(1) 145:23

**below**(3) 72:18 117:21 126:20

**bench**(1) 8:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **bendernagel**(50) 1:22 7:4 7:5 7:9 7:20 7:21 7:23 8:13 8:19 8:22 8:25 9:14 26:10 32:22 80:11 80:19 81:8 81:8 81:22 81:25 82:2 83:24 105:11 105:18 105:19 105:24 106:3 106:7 106:10 107:8 107:14 108:1 108:6 108:16 109:2 109:20 133:6 170:6 171:4 171:7 171:11 171:14 171:17 172:2 172:6 172:9 172:11 173:14 173:18 173:22 | | **bradford's**(1) 140:7 **brainer**(1) 53:13 **brainers**(1) 53:11 **breach**(1) 94:24 **breaches**(2) 101:14 101:14 **break**(4) 8:23 80:20 80:24 81:4 **breaking**(1) 104:13 **breath**(1) 67:7 **brett**(1) 4:26 **brian**(1) 3:26 **bridge**(1) 134:22 **brief**(27) 18:15 19:2 24:11 36:4 37:18 41:12 41:21 42:13 42:16 60:1 62:12 62:12 69:13 79:4 90:17 100:25 102:22 103:1 108:20 110:17 111:1 127:25 128:1 128:1 146:4 164:3 164:5 | | **but**(195) 8:1 9:3 10:17 10:24 12:21 13:14 14:6 15:21 16:8 16:23 17:21 18:6 19:3 20:12 21:12 22:17 24:4 24:22 25:12 25:18 27:8 29:22 31:16 31:23 32:14 32:24 33:11 33:15 34:6 34:16 34:21 34:21 34:24 35:14 36:3 36:22 38:23 40:22 41:1 42:20 42:25 43:21 46:4 46:9 46:12 46:22 47:10 47:25 49:23 50:14 50:25 51:5 51:14 52:19 52:25 54:6 54:11 55:24 56:13 57:8 57:8 57:9 57:15 58:8 59:12 59:13 61:9 61:13 61:15 61:20 62:1 62:11 62:15 63:2 64:24 65:1 66:5 67:14 68:11 71:8 72:5 73:5 73:25 74:10 75:4 75:8 77:20 78:5 78:20 79:13 80:16 82:4 82:19 83:10 84:9 84:18 85:9 87:17 89:12 90:1 90:22 91:10 92:21 95:8 95:18 97:3 97:4 98:10 98:13 100:5 100:12 101:25 102:16 104:21 106:7 106:18 108:20 110:15 110:21 111:4 111:24 113:1 113:19 114:6 115:6 116:7 117:21 118:17 120:11 121:7 122:25 123:10 123:13 123:18 124:3 124:21 125:1 125:6 126:17 128:11 128:22 129:18 132:10 132:20 133:16 138:5 138:23 139:4 139:20 140:8 140:9 141:24 142:11 142:22 143:1 143:22 144:7 144:11 145:5 145:12 145:15 146:4 146:20 147:20 148:1 148:7 148:11 148:20 149:3 149:10 149:24 150:9 150:21 151:15 153:13 153:18 155:20 155:25 157:3 162:13 162:22 162:24 164:3 164:5 165:1 165:15 165:18 166:23 167:7 167:15 170:19 170:24 172:3 173:23 174:1 | | **cannot**(6) 20:2 48:10 160:19 160:21 162:5 162:14 |
| **bendernagel's**(1) 120:25 **beneficiaries**(1) 75:14 **beneficiary**(2) 18:11 33:19 **benefit**(11) 18:13 19:14 21:21 27:19 27:21 30:13 31:16 32:10 35:17 37:21 169:22 **benefits**(4) 35:6 70:20 72:12 74:17 **benefitting**(1) 51:11 **benson**(3) 5:51 44:16 105:4 **besides**(1) 63:18 **best**(7) 15:18 21:3 21:7 26:3 35:17 42:2 61:13 **better**(7) 50:20 64:24 91:21 172:3 172:1 172:22 172:23 | | **briefed**(1) 93:22 **briefing**(5) 37:3 37:4 109:23 121:4 172:21 **briefly**(6) 41:20 94:11 102:23 126:6 126:14 143:8 **briefs**(9) 19:11 22:16 24:22 29:14 30:23 33:7 41:10 163:2 163:24 **bring**(4) 64:18 86:10 104:24 117:11 **broad**(2) 65:5 91:10 **broker**(1) 96:10 **brought**(2) 40:19 89:20 **brown**(5) 2:4 6:45 64:20 94:9 138:16 **bryan**(1) 4:24 **bryant**(1) 2:16 **btc**(1) 86:12 **buckets**(1) 114:18 **bug**(1) 64:19 **building**(2) 12:22 39:9 **builds**(1) 21:14 **bunch**(2) 61:5 171:21 **burden**(4) 59:15 59:16 85:22 86:3 **bush**(1) 4:15 **bushes**(1) 41:3 **business**(17) 46:16 71:19 84:3 90:13 93:5 106:17 109:11 118:16 146:19 152:1 153:13 158:5 158:11 158:14 159:3 159:11 159:21 **businesspeople**(1) 133:1 **businessperson**(1) 118:18 **businessperson's**(1) 133:1 **busy**(1) 26:22 | | **can't**(14) 17:16 18:1 21:2 21:6 22:15 32:7 33:2 36:7 36:10 37:15 39:18 101:20 131:16 140:2 **capacity**(1) 132:20 **capital**(18) 2:12 4:45 4:45 5:30 5:31 5:43 6:17 41:9 68:5 82:14 117:7 117:8 117:13 142:15 149:13 150:17 151:22 168:17 **carey**(1) 1:17 **caridas**(1) 4:16 **carol**(1) 4:46 **carried**(1) 152:20 **carry**(1) 35:21 **carryover**(1) 87:13 **carve-out**(2) 129:11 129:14 **case**(102) 1:4 10:20 12:18 12:23 13:4 13:12 13:19 13:23 14:13 14:20 14:22 14:23 14:24 14:25 15:1 15:20 15:20 16:2 16:13 17:3 22:4 22:6 22:21 23:3 25:7 28:10 28:25 32:8 33:5 33:6 33:8 34:7 35:18 36:18 37:1 37:5 37:8 37:11 37:14 38:1 39:5 39:17 39:20 39:21 39:24 39:24 40:22 41:4 42:2 42:18 44:5 44:6 44:11 45:3 48:21 48:22 50:6 51:8 54:11 57:22 59:23 60:20 60:22 62:2 65:16 65:19 66:3 69:2 69:3 69:4 70:4 75:21 75:21 75:22 76:4 91:3 91:15 91:17 91:19 100:11 120:12 120:13 141:8 142:4 145:9 145:12 145:23 153:20 154:6 154:8 154:10 154:23 154:25 155:3 155:8 155:15 161:1 162:2 162:8 162:3 163:1 164:3 | | |
| **between**(18) 14:21 39:24 40:5 41:14 59:10 79:7 88:5 93:6 121:3 124:20 125:3 131:8 132:24 132:25 133:1 135:12 160:1 160:2 **big**(3) 15:1 54:4 69:3 **bigelow**(2) 150:8 150:19 **bilateral**(1) 86:22 **bilmes**(2) 6:17 6:18 **binder**(10) 9:3 9:4 9:4 81:12 82:17 82:19 82:24 83:2 87:4 106:12 **binders**(1) 170:13 **binding**(3) 86:22 89:14 96:6 **bit**(19) 10:21 12:21 14:9 18:18 20:19 23:13 26:8 26:8 26:22 29:15 31:20 34:15 39:14 43:8 68:24 94:12 95:8 130:3 149:22 **bite**(1) 168:20 **blake**(1) 3:6 **block**(8) 3:31 5:24 24:10 25:24 28:4 3:9 79:3 133:18 **blocks**(1) 12:22 **blown**(2) 50:1 50:17 **board**(2) 5:19 165:16 **boat**(1) 52:10 **body**(1) 153:18 **bonds**(3) 86:12 92:7 92:23 **book**(1) 97:2 **bookkeeper**(1) 96:16 **bookkeeping**(2) 97:11 97:14 **books**(2) 97:3 100:5 **borrow**(1) 86:8 **both**(25) 19:11 21:12 22:4 23:25 24:23 24:25 27:23 28:11 29:11 29:14 37:3 98:21 110:3 112:16 114:11 115:6 130:8 140:20 143:10 151:9 151:10 158:10 164:13 168:19 169:4 **bottle**(2) 64:18 146:2 **bottling**(1) 163:3 **bottom**(5) 26:20 50:13 50:19 50:20 87:8 **bound**(4) 70:10 87:2 90:7 90:16 **boundless**(1) 33:24 **bounds**(1) 11:12 **box**(1) 39:23 **brad**(1) 5:21 **bradford**(39) 3:32 78:21 78:22 79:1 79:2 79:3 110:10 111:22 111:23 113:6 113:12 113:18 120:19 120:23 121:9 121:12 121:21 121:25 122:4 122:6 124:14 133:10 137:14 139:10 139:20 141:10 141:20 141:25 152:23 167:3 167:7 167:14 168:10 168:20 169:9 170:8 170:19 171:6 173:9 | | | | **can't**(13) 55:22 57:20 61:22 61:25 64:9 66:8 66:9 71:23 72:2 72:6 82:2 100:8 152:3 **cancel**(8) 98:2 99:20 99:23 103:8 103:18 103:22 104:3 104:5 **cancelation**(4) 103:6 103:24 103:24 104:10 **canceled**(1) 103:4 **cancellation**(5) 86:24 97:2 99:14 100:17 103:21 **cancelled**(1) 97:6 | | **cases**(25) 14:9 22:3 22:8 22:9 22:19 23:6 24:3 23:8 31:17 36:3 62:13 71:17 75:19 75:20 75:23 76:2 77:6 110:25 150:2 150:5 152:5 153:19 154:16 162:20 164:2 **cash**(19) 71:9 71:22 72:17 72:23 76:9 95:16 96:16 96:24 97:18 97:20 97:24 99:2 99:14 99:19 99:22 101:25 103:18 104:11 106:10 **castigates**(1) 59:22 **catherine**(1) 5:27 **caused**(1) 166:12 **caveats**(1) 27:1 **ceased**(1) 102:2 **cent**(1) 52:10 **center**(2) 152:8 152:9 **centerpiece**(1) 24:2 **cents**(8) 29:5 51:15 51:18 52:17 53:1 53:2 64:8 64:10 **century**(3) 39:17 39:20 40:2 **certain**(6) 71:7 71:8 74:18 74:25 80:22 **certainly**(15) 13:21 18:14 20:25 40:7 58:7 63:23 77:21 100:4 122:3 131:1 162:9 162:9 162:19 163:6 164:18 **certificate**(1) 97:19 **certificates**(2) 104:3 104:5 **certification**(1) 174:5 **certified**(1) 82:6 **certify**(1) 174:6 **cfo**(1) 150:21 **chadbourne**(2) 4:5 9:18 **chain**(2) 14:9 146:14 **chambers**(1) 153:5 **chance**(1) 113:3 **chancery**(1) 155:2 **chandler**(1) 150:8 **change**(13) 26:19 51:20 68:15 98:13 102:13 116:5 140:3 146:19 147:18 149:9 151:15 151:15 153:11 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| changed(11) 102:11 115:18 115:19 115:22 116:8 116:10 118:5 119:9 147:13 147:13 151:13 | | class(58) 11:7 21:21 24:16 26:4 31:12 31:16 31:17 31:25 32:2 32:20 32:20 33:12 33:18 33:19 34:20 34:21 34:22 34:23 46:15 46:16 46:21 48:10 49:3 52:7 52:8 52:8 52:9 52:11 52:19 55:4 55:13 55:14 56:18 60:9 60:12 62:9 62:10 62:17 62:21 63:9 63:10 66:12 67:8 67:22 68:17 70:8 70:10 70:11 70:15 70:16 70:20 70:23 | | comes(13) 29:11 33:21 34:3 36:23 51:15 52:21 53:8 111:6 117:1 127:2 146:14 151:25 152:2 | | conduct(1) 71:18 conducted(1) 39:4 conference(1) 80:25 confess(1) 44:18 confident(1) 81:2 |
| changes(5) 105:25 147:3 149:4 149:8 149:9 | | | | comfortable(1) 67:16 coming(3) 9:6 61:12 67:3 commend(4) 27:6 37:11 61:7 62:14 comment(2) 133:4 170:8 commentators(1) 22:8 comments(3) 43:21 59:20 106:22 commission(1) 116:20 | | confirm(11) 11:4 12:16 13:7 13:15 13:16 13:16 17:20 38:20 38:22 59:15 162:19 |
| chapter(3) 1:7 21:5 66:23 characterized(5) 23:4 23:11 115:15 152:23 152:23 | | | | | | confirmation(18) 8:17 9:25 10:4 12:9 14:3 16:7 18:17 21:24 23:15 38:16 39:4 43:23 47:17 70:6 83:15 85:24 105:21 162:15 |
| charge(1) 156:5 chart(21) 26:21 26:24 27:10 29:21 29:25 30:4 30:5 34:14 35:4 42:1 45:15 49:11 50:11 50:14 50:15 50:20 57:24 85:2 122:15 148:12 169:3 | | classes(11) 21:20 31:5 31:25 33:13 33:18 48:13 48:25 52:10 54:12 60:17 70:16 | | committee(14) 4:4 5:18 9:19 24:23 40:13 40:15 40:16 41:11 44:9 59:22 60:23 62:8 75:11 173:6 | | confirmed(7) 10:5 11:16 12:5 120:4 150:23 151:6 151:21 confirms(1) 38:24 |
| | | classes'(1) 62:18 classic(1) 36:6 class'(2) 26:5 26:7 | | committees(1) 80:14 committee's(1) 42:14 common(2) 54:11 154:14 communicate(2) 136:8 136:10 communicated(1) 153:14 communicating(1) 118:20 | | conflicting(1) 145:7 conform(1) 162:19 confronted(1) 83:14 confusing(1) 23:23 confusion(1) 29:16 |
| charts(2) 108:9 148:20 chase(1) 6:27 checkpoint(1) 18:16 checks(1) 22:23 chicago(5) 1:24 3:35 6:39 6:40 132:18 | | clause(10) 11:11 12:5 60:7 126:1 145:16 145:16 145:18 169:9 169:14 169:17 | | communication(1) 118:22 communications(1) 160:1 company(22) 1:7 87:14 88:5 90:10 90:14 90:25 92:8 95:1 96:3 98:25 99:4 124:1 | | congress(11) 12:4 12:8 17:23 20:21 20:23 22:16 22:17 22:17 73:24 74:3 74:12 |
| choice(1) 68:17 choose(3) 71:4 72:5 75:13 chooses(2) 70:9 72:16 chose(3) 23:2 72:13 72:14 chris(2) 156:21 | | clauses(2) 17:11 17:12 clean(2) 8:16 105:21 clear(56) 15:24 57:6 63:1 68:23 69:9 77:21 80:17 87:7 89:13 92:10 99:15 | | 124:18 124:20 126:8 127:2 127:6 127:17 130:23 133:19 143:5 163:1 166:11 company's(3) 105:7 141:7 142:10 comparative(1) 36:10 | | connection(3) 150:7 158:16 consensual(1) 13:6 consequence(2) 9:7 123:20 consequences(3) 132:9 132:10 166:9 consider(15) 43:3 92:21 102:24 112:17 |
| christine(1) 5:52 chung(1) 4:37 churlish(1) 31:20 | | 101:24 104:7 104:9 115:14 118:20 120:3 130:2 130:5 130:10 132:22 141:2 142:23 143:15 144:17 145:21 146:9 148:3 148:12 148:22 149:14 151:4 163:8 166:21 169:24 170:14 | | compare(6) 31:9 31:10 148:25 161:18 165:2 166:24 | | 112:19 114:9 116:23 120:20 144:11 145:5 146:6 147:16 147:18 153:17 165:21 |
| circuit(7) 14:13 14:20 15:13 16:3 16:14 23:6 34:9 | | | | compared(1) 22:17 compares(1) 27:13 comparing(1) 55:9 comparison(7) 31:4 40:2 53:23 57:4 57:15 62:9 161:19 | | consideration(10) 43:25 46:10 46:14 46:18 46:21 47:1 53:8 63:17 90:6 154:12 considered(3) 21:10 40:23 77:2 |
| circuit's(1) 15:22 circulate(1) 171:18 | | clearly(19) 16:9 17:20 25:11 37:12 57:12 127:9 142:14 142:18 143:3 143:17 149:7 152:20 153:7 154:4 155:11 164:17 165:24 166:17 170:1 | | comparison(7) 31:4 40:2 53:23 57:4 57:15 62:9 161:19 | | considering(2) 43:4 147:17 considers(1) 154:20 consistent(5) 16:16 26:6 75:9 135:11 138:8 constant(1) 57:2 |
| circumstance(4) 117:23 124:19 124:21 125:15 | | | | compartmentalize(1) 111:25 complain(2) 61:22 61:25 complainant(1) 31:16 complained(1) 60:14 complete(1) 45:19 | | constituency(2) 18:10 77:10 constitutes(1) 38:13 constitution(1) 22:24 construct(1) 66:16 |
| circumstances(2) 30:16 72:8 citation(1) 155:2 cite(9) 24:3 24:6 31:17 145:9 145:23 152:5 155:8 155:14 162:25 | | cleary(1) 3:6 clerk(6) 26:15 81:7 105:16 122:2 148:16 167:16 | | completely(7) 19:6 27:5 75:9 114:14 115:10 115:13 116:25 | | constructed(1) 75:1 construction(4) 15:6 15:23 16:23 142:22 construe(4) 113:24 114:3 114:7 129:2 |
| cited(26) 13:12 22:4 22:19 23:6 23:13 24:9 24:12 25:10 34:17 39:16 57:22 90:24 91:17 100:25 111:1 120:12 146:4 153:19 153:21 154:6 154:8 155:9 162:8 162:20 164:2 164:5 | | client(1) 165:12 client's(1) 20:1 clip(1) 165:22 clips(4) 153:7 153:16 156:12 162:2 cloak(1) 68:3 | | completes(1) 170:7 compliance(1) 113:10 complicated(1) 26:22 complied(1) 11:22 comply(3) 11:22 47:20 47:24 component(3) 30:9 115:6 115:11 | | construed(3) 73:3 120:14 131:17 consume(1) 80:24 contain(5) 7:14 142:18 153:1 155:22 contained(4) 145:14 145:15 151:18 161:14 |
| cites(2) 14:15 62:13 citi(1) 150:12 citigroup(1) 6:11 citing(1) 59:23 city(1) 9:18 | | cloaked(2) 67:23 70:19 close(3) 39:12 77:7 117:25 closed(2) 133:8 133:23 closer(1) 77:12 closes(1) 117:24 | | components(1) 30:5 comprehensively(1) 113:3 comprised(1) 30:1 computational(1) 29:20 compute(1) 34:20 | | containing(1) 149:10 contains(2) 9:4 13:21 contemplated(1) 92:23 contemporaneous(1) 163:20 contend(3) 10:3 51:23 123:23 |
| claim(48) 19:22 20:1 28:8 29:6 31:25 32:1 32:9 41:12 41:15 41:17 41:22 41:24 42:24 43:16 56:8 60:15 60:16 60:17 60:18 64:1 64:2 64:6 65:14 72:20 72:22 72:25 76:12 76:16 77:17 77:20 83:9 83:11 83:17 84:14 85:16 86:2 86:4 86:18 90:11 92:2 94:5 100:10 100:13 100:14 101:5 102:17 104:24 127:5 | | closing(5) 97:22 97:23 98:8 161:10 161:17 clothing(1) 14:13 co-creditor(1) 130:12 co-proponent(1) 40:18 co-subordinated(1) 126:20 coca-cola(1) 163:3 | | computer(1) 100:17 conaway(1) 3:5 concede(1) 115:19 conceded(1) 143:23 conceivable(2) 25:21 109:23 concept(3) 21:14 91:12 91:22 concepts(1) 37:12 concern(1) 114:19 concerned(1) 115:23 concerns(2) 113:23 123:7 | | contending(1) 75:24 contentious(1) 29:15 contested(1) 94:18 context(24) 13:25 15:17 36:11 36:13 45:12 54:19 56:13 56:17 70:23 79:19 112:25 113:20 114:20 117:13 122:7 122:17 123:4 133:14 135:9 137:15 137:23 143:23 144:16 146:8 |
| claimant(1) 60:14 claimed(1) 35:2 claims(44) 11:7 11:20 31:6 32:10 32:15 32:22 37:15 38:12 41:22 45:4 45:10 45:17 45:17 45:18 45:20 45:23 46:3 46:6 46:9 46:24 47:2 47:3 47:5 47:6 47:6 47:10 47:14 47:14 52:12 52:21 52:25 55:10 55:17 56:16 58:12 60:9 60:11 60:12 61:21 63:20 70:9 85:23 126:8 161:19 | | cohen(1) 113:16 coin(1) 121:13 coining(1) 104:15 cole(1) 1:37 colleagues(2) 23:18 64:4 collect(1) 171:15 collection(1) 84:19 college(1) 132:17 color(2) 112:18 167:18 column(12) 27:15 27:24 27:25 28:7 28:11 35:10 45:19 50:24 51:2 58:23 59:2 62:6 | | concessions(1) 137:22 concluded(4) 24:20 25:3 146:12 164:9 concludes(2) 80:12 137:13 conclusion(9) 18:10 18:13 24:25 94:20 100:21 104:15 112:20 113:1 154:18 | | contexts(1) 56:12 continue(1) 64:24 continued(5) 2:2 3:2 4:2 5:2 6:2 continues(1) 147:24 contra(1) 103:19 contract(25) 9:23 66:1 66:19 75:15 77:5 79:24 86:8 86:22 89:9 90:3 90:5 90:13 91:19 101:24 104:7 104:9 147:19 154:14 155:13 155:21 164:10 164:13 164:14 164:17 165:1 |
| clarification(4) 107:22 133:6 133:11 170:7 clarity(1) 84:7 clark(1) 3:34 | | columns(7) 27:18 29:3 29:7 30:4 30:6 51:2 62:17 combination(2) 84:24 84:25 come(20) 12:13 27:3 27:7 28:2 40:22 51:25 53:9 62:7 64:6 88:14 88:25 101:25 107:4 111:2 116:6 119:6 122:14 152:18 155:23 167:12 | | concurs(1) 173:9 condition(4) 8:8 99:22 104:2 104:9 conditional(1) 109:24 conditionally(2) 121:1 171:22 | | contract's(1) 154:12 contracted(1) 131:2 contracts(1) 130:2 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

contractual(24) 10:6 14:6 19:3 21:21 27:12 28:6 32:11 35:6 41:18 54:16 65:23 68:6 68:13 68:20 69:8 70:20 71:21 72:5 72:12 75:13 76:5 76:19 127:4 155:11

contractually(2) 19:14 28:13

contradicting(1) 155:14

contrary(6) 22:13 41:23 76:25 103:8 137:17 154:16

contribute(1) 54:17

contribution(7) 38:11 38:13 39:18 40:3 40:7 44:10 44:10

control(1) 93:16

controversial(1) 67:19

conversation(6) 19:9 20:2 136:24 155:7 159:17 159:19

conversations(10) 110:20 137:6 137:11 152:15 159:12 159:14 159:21 160:7 160:8 160:11

converted(1) 117:25

convertible(26) 132:2 132:3 132:5 132:6 132:7 132:8 133:13 133:13 133:18 134:21 135:2 135:3 135:8 135:10 157:1 157:3 165:9 165:23 165:25 166:3 166:5 166:6 166:8 166:10 166:11 166:17 166:18

converting(1) 132:9

conveyed(1) 156:11

conviction(1) 41:4

convince(1) 40:4

convinced(1) 28:12

cool(1) 65:6

copies(3) 105:20 155:1 167:16

copy(5) 8:17 26:15 73:9 73:12 105:21

corollary(1) 21:10

corp(1) 145:10

corporate(1) 68:8

corpus(1) 30:18

correct(18) 19:21 36:8 43:6 48:18 64:4 69:13 89:18 106:3 107:8 120:19 120:23 121:15 139:10 140:14 156:23 160:24 171:6 174:6

correspondence(1) 88:21

corroborate(1) 120:8

corroborated(1) 119:15

corroon(1) 2:33

cost(1) 47:12

could(31) 7:7 17:22 18:8 18:11 20:14 20:21 25:22 27:3 30:15 32:21 36:14 42:20 64:2 91:12 96:3 102:17 109:23 113:16 115:10 115:15 120:9 122:19 124:15 126:6 132:8 133:3 154:2 157:7 165:9 166:7 170:19

couldn't(2) 73:11 166:9

couldn't(3) 39:17 38:22 40:12 165:24

counsel(9) 7:3 154:10 160:11 160:12 160:14 160:15 160:17 163:17 164:7

count(6) 16:2 49:15 49:16 55:5 56:1 152:7

counted(1) 56:21

counting(1) 31:10

country(1) 112:6

counts(2) 55:5 140:19

couple(14) 22:8 22:19 23:6 31:23 39:19 42:14 59:22 114:18 116:5 117:2 149:3

coupled(1) 154:21

course(6) 20:14 27:6 45:24 83:15 112:2 117:22 119:19 123:16 127:21 132:8 135:20 137:20

court(244) 1:1 7:2 7:8 7:20 7:22 8:3 8:4 8:7 8:10 8:14 8:16 8:21 8:24 9:8 9:11 9:16 10:19 11:3 12:14 12:22 13:7 13:15 13:15 14:10 14:11 14:15 14:22 14:23 15:3 15:12 15:13 16:10 16:11 16:12 16:20 16:21 17:1 17:3 17:6 17:7 17:13 17:20 18:25 19:12 21:7 22:20 22:22 23:2 23:23 25:19 26:17 29:12 32:9 36:16 38:17 38:19 38:19 38:22 38:24 40:4 40:24 41:7 42:9 42:17 42:22 42:23 43:2 43:4 43:16 43:19 44:14 44:21 47:25 48:3 56:1 56:4 56:11 59:13 60:1 60:9 64:16 65:7 65:15 65:22 65:22 66:22 67:1 67:4 67:12 67:14 67:14 69:9 73:9 73:12 73:15 73:18 73:18 74:5 75:20 76:12 76:25 78:18 78:24 79:1 80:13 80:18 80:23 81:5 81:16 81:19 81:24 82:1 82:6 82:11 83:3 83:5 83:16 83:23 84:7 84:9 85:4 85:8 87:5 87:21 88:4 88:16 88:22 89:16 90:8 90:24 92:3 92:21 94:7 94:20 95:13 101:7 101:18 105:2 105:9 105:13 105:14 105:17 105:23 105:25 106:6 106:9 107:7 107:9 107:12 107:18 107:21 108:4 108:11 108:13 108:23 108:25 109:17 110:1 111:10 111:12 111:16 111:22 112:13 112:21 112:21 112:3 113:5 113:10 118:8 119:2 120:2 120:17 120:20 120:24 121:11 121:15 121:17 121:21 121:23 122:3 122:5 122:8 122:9 123:5 123:8 124:4 124:9 125:7 126:4 126:11 126:22 126:25 128:23 129:7 131:21 131:21 131:24 137:22 138:6 138:14 139:2 140:9 140:11 145:12 145:12 145:16 148:14 148:16 148:17 148:22 154:18 154:20 154:25 155:1 155:2 155:22 164:9 166:16 167:2 167:9 167:16 167:17 167:23 168:5 168:7 168:14 168:16 170:4 170:24 171:8 171:13 171:16 171:18 171:23 172:8 172:10 172:15 172:24 173:2 173:13 173:15 173:20 173:25 174:1

court's(1) 154:12

courtney(1) 5:6

courtroom(1) 1:9 59:11

courts(10) 16:18 16:19 22:8 34:9 48:2 52:2 71:17 84:2 91:18 162:23

court's(3) 27:6 38:25 40:23

covered(2) 64:25 131:11

covers(1) 144:18

cpa(1) 152:14

cram(1) 66:20

cram-down(12) 12:9 12:15 13:25 14:22 18:3 21:1 56:18 68:9 68:14 69:22 72:19 74:14

crammed(1) 72:2

create(3) 65:14 130:4 172:6

created(1) 66:16

creating(1) 127:16

credibility(1) 164:23

credit(4) 3:4 6:22 6:23 26:23

credited(1) 138:8

creditor(23) 19:18 34:1 40:16 67:8 71:15 71:20 71:23 71:24 72:3 72:4 72:4 72:6 72:9 72:16 72:21 72:22 73:15 74:20 76:8 77:19 79:9 126:20 169:21

creditors(22) 4:5 9:19 17:25 17:25 18:4 18:8 18:12 21:1 26:3 46:15 50:1 50:3 50:4 54:20 54:23 54:23 57:7 66:12 69:7 71:14 77:12 77:15

creditor's(2) 21:3 44:9

creditworthiness(2) 56:5 56:9

criterion(1) 26:1

criticized(1) 40:25

croatan(4) 13:13 75:22 76:18 76:18

crossed(1) 40:25

crucial(1) 148:7

crummy(1) 68:18

currence(1) 71:7

currency(2) 66:18 71:8

current(2) 10:5 23:2

custodian(2) 96:14 96:22 98:8

custody(3) 97:7 99:17 102:4

cute(1) 102:8

cutler(1) 5:39

damage(4) 57:3 60:11 91:20 101:15

daniel(1) 2:15

dare(1) 44:4

data(1) 1:46

date(25) 64:5 68:1 83:9 86:11 86:15 87:18 87:20 88:2 88:6 88:8 88:9 88:15 88:16 89:24 90:16 91:1 91:2 91:10 93:17 94:5 97:23 106:2

dated(1) 106:4

dates(5) 84:4 84:5 84:5 88:4 88:7

dave(1) 4:31

david(12) 2:14 2:43 3:32 3:33 4:9 4:25 5:48 9:17 44:15 79:2 82:13 105:3

davidson(2) 3:45 6:31

day(9) 5:20 9:22 65:16 71:17 77:20 108:9 110:6 131:16 140:5

days(5) 78:8 87:18 87:19 91:9 97:21

dbtca(1) 2:41

dcl(9) 10:5 45:13 46:7 46:7 47:4 47:22 53:17 57:13 58:10

de-wacc(1) 104:17

de-wacc'ing(1) 104:15

dead(1) 39:2 78:6

deal(54) 54:5 66:15 68:18 71:2 71:19 73:4 73:5 75:4 90:25 109:18 111:18 114:14 115:2 115:12 115:18 115:19 115:22 116:1 116:5 116:8 116:9 116:12 116:25 117:24 117:25 118:5 118:9 118:13 118:23 118:24 119:5 119:19 119:14 119:14 119:19 119:21 120:3 120:4 120:5 121:9 132:18 132:19 132:23 133:23 134:16 135:20 136:11 147:10 150:9 150:14 150:22 152:14 152:18

dealing(2) 109:21 126:12

deals(9) 28:19 65:14 67:25 71:12 75:1 100:23 110:12 153:22 153:24

dealt(5) 79:18 100:11 100:12 111:20

dearborn(1) 1:23

debenture(8) 5:51 11:18 36:4 43:17 44:17 79:6 105:5 138:3

debit(4) 97:2 97:9 97:15 98:16

debited(2) 98:9 100:5

debits(1) 101:2

deborak(1) 164:1

debt(33) 24:15 24:15 24:16 24:18 24:21 25:1 43:17 45:7 45:8 46:4 46:8 54:24 54:24 62:2 62:3 68:8 71:23 115:6 116:17 117:17 117:18 117:19 117:20 127:11 127:12 127:12 129:22 131:18 132:14 151:3 166:3 166:18 166:19

debt."(1) 24:20

debtor(35) 4:21 7:14 45:3 45:6 46:16 46:22 48:12 48:17 49:10 49:12 49:17 49:18 49:22 50:4 52:13 52:16 52:20 53:5 54:13 57:2 58:13 63:20 68:16 73:23 79:7 79:16 80:12 80:14 91:4 91:9 101:18 105:19 123:25 125:17

debtor's(2) 55:3 163:16

debtor/creditor(1) 9:21

debtors(25) 1:11 1:21 7:5 52:10 53:2 54:16 55:18 55:20 55:21 55:24 56:16 59:15 59:16 79:13 83:8 85:25 86:15 87:1 88:13 88:19 88:23 88:25 89:20 92:19 93:6

debtors'(3) 38:13 45:21

december(6) 88:6 88:8 88:9 118:10 133:8 133:24

decide(21) 60:25 61:7 84:12 84:13 106:15 112:21 114:7 114:8 120:10 122:8 122:9 123:6 125:8 125:13 131:21 139:15 139:21 139:24 140:3 140:6 145:10

decided(6) 13:21 37:24 86:7 95:9 95:11 139:11

decides(2) 119:2 123:8

deciding(3) 29:10 58:24 58:24

decision(7) 14:15 15:11 34:8 74:3 84:10 85:13 119:1

decisions(1) 34:9

deemed(1) 85:18

deep(1) 41:4

deeper(1) 66:6

deeply(1) 162:21

defend(1) 40:20

defined(5) 97:23 103:2 103:3 103:13 127:9

defines(1) 62:13

definiteness(1) 90:6

definition(9) 36:5 36:9 140:25 141:1 142:2 142:3 143:16 143:17 143:18

definitionally(1) 57:19

degree(1) 40:10

delaware(16) 1:2 1:11 1:40 7:1 14:11 14:18 33:8 119:2 120:13 120:18 120:20 142:22 145:21 153:20 155:2 162:9

deleted(3) 86:12 89:3 92:7

delighted(1) 81:5

delisted(1) 92:7

delivered(3) 67:11 67:22 103:5

delivers(1) 87:16

delivery(1) 103:19

demand(2) 137:20 169:23

demanded(1) 91:25

democratic(1) 66:15

demolish(1) 10:17

demolished(1) 44:19

demonstrate(1) 40:2

demonstrated(3) 129:16 129:18 163:11

demonstrates(2) 22:15 166:25

demonstration(1) 60:21

demonstrative(7) 20:18 25:17 25:18 26:12 26:18 41:16 171:5

demonstratives(4) 122:1 171:8 171:9

denied(1) 91:18

denoted(1) 7:13

dependent(1) 84:11

depending(1) 28:3

deposit(1) 96:14

deposition(16) 110:3 110:4 110:9 110:11 112:3 112:7 114:16 118:7 118:15 131:24 132:16 133:12 168:2 170:10 170:11 170:17

depositions(4) 96:15 109:8 170:20 170:25

depository(1) 92:8

deprive(5) 70:19 70:23 71:5 73:2 73:5

deps(1) 167:10

derivative(1) 133:20

derived(1) 26:2

described(3) 117:9 119:1 151:3

describes(1) 127:8

describing(2) 112:13 131:15

designations(2) 140:4 167:10

designed(2) 33:5 67:21

despite(1) 139:4

destroyed(2) 100:1 115:17

detail(3) 26:9 112:10 131:24

determination(4) 95:22 114:5 122:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **determine**(16) 32:9 55:22 56:3 56:6 62:16 84:22 92:4 121:3 124:5 125:1 126:21 126:22 126:25 147:20 153:23 167:17 | | **disagree**(3) 41:5 55:12 99:10 | | **diversion**(1) 59:8 | | **drafted**(8) 118:6 118:18 142:14 142:25 143:1 143:20 149:19 163:12 | |
| | | **disagreed**(1) 59:11 | | **divert**(1) 59:18 | | | |
| **determined**(7) 42:19 83:16 83:21 124:10 124:24 132:12 168:23 | | **disagreeing**(1) 52:1 | | **diverted**(1) 11:19 | | **drafter's**(1) 155:14 | |
| | | **disagreement**(1) 100:15 | | **divests**(1) 75:5 | | **drafters**(1) 164:16 | |
| **determining**(2) 48:24 62:10 | | **discarded**(3) 115:13 115:13 148:2 | | **divide**(1) 51:17 | | **drafting**(19) 74:4 117:7 144:10 144:16 146:12 146:24 148:3 148:4 149:14 149:15 149:17 155:20 155:25 156:1 157:13 157:15 157:17 157:20 164:15 | |
| **detriment**(1) 53:7 | | **disclose**(1) 102:14 | | **doctrine's**(1) 100:12 | | | |
| **deutsche**(1) 6:35 | | **disclosed**(2) 102:9 102:20 | | **document**(14) 26:13 109:5 113:12 117:16 140:20 140:22 147:5 148:4 149:14 149:15 149:16 151:24 153:23 163:20 | | | |
| **deutsch**(3) 4:6 92:14 100:22 | | **disclosing**(1) 161:14 | | | | | |
| **deutsche**(32) 44:18 86:13 93:6 93:11 95:1 95:21 95:21 96:12 96:18 96:21 97:6 97:12 97:16 97:20 97:25 98:1 98:6 98:7 98:10 98:15 99:16 99:19 100:18 101:20 102:4 102:5 103:7 103:17 104:2 104:4 104:18 105:5 | | **disclosure**(1) 102:11 | | **documented**(1) 65:24 | | **drafts**(10) 106:25 109:12 117:3 147:9 147:16 147:18 147:22 147:25 148:2 155:10 | |
| | | **discovery**(1) 113:21 | | **documents**(33) 7:11 7:12 7:16 81:11 84:1 84:2 84:4 106:24 107:3 108:17 109:2 111:5 113:11 113:14 118:2 118:4 118:6 118:9 118:12 118:14 118:18 118:20 121:20 146:13 147:23 149:19 149:23 150:3 150:11 168:4 171:19 171:17 171:20 | | | |
| | | **discrepancy**(2) 30:25 31:2 | | | | **dramatically**(1) 41:5 | |
| **developed**(5) 10:20 21:9 83:22 83:25 85:12 | | **discretion**(1) 87:1 | | | | **draw**(2) 24:7 100:21 | |
| **deviate**(2) 12:10 76:19 | | **discriminate**(9) 11:6 12:11 13:19 20:21 20:22 59:17 70:15 74:17 76:21 | | | | **drawing**(1) 170:22 | |
| **deviates**(1) 17:21 | | | | | | **drawn**(1) 45:15 | |
| **deviation**(7) 12:16 17:22 17:23 17:24 18:5 18:6 18:8 | | **discriminated**(7) 43:7 49:5 52:25 54:25 55:2 62:3 63:11 | | **does**(41) 11:6 13:18 18:6 20:11 23:24 28:13 37:6 40:2 41:18 41:25 43:7 47:22 48:3 49:19 68:4 69:12 75:7 76:20 77:9 77:22 81:16 84:25 90:17 101:3 110:20 122:9 128:6 130:11 142:18 142:18 152:18 154:13 154:17 154:23 156:2 159:5 162:5 164:15 165:1 172:15 173:3 | | **drew**(1) 2:21 | |
| **device**(1) 70:19 | | **discriminates**(1) 48:25 | | | | **drive**(1) 125:2 | |
| **dewac**(11) 93:5 93:9 96:13 96:14 97:1 97:9 97:15 97:15 98:5 98:5 98:14 98:16 | | **discrimination**(80) 9:2 10:10 10:13 10:21 11:13 12:14 18:19 18:24 19:1 19:9 19:10 19:20 20:10 20:10 20:12 21:13 21:17 21:17 21:20 22:2 24:12 24:17 24:21 24:24 25:4 25:8 26:2 31:15 32:5 32:25 32:25 33:14 36:1 36:17 39:11 40:5 41:14 42:19 43:5 46:11 46:12 51:21 51:25 52:3 52:3 53:15 53:23 54:4 54:19 55:6 55:9 55:22 56:4 56:14 56:14 56:17 57:6 57:19 57:20 57:25 58:6 58:8 58:15 58:20 59:3 60:15 60:21 61:2 61:13 61:17 61:22 62:11 62:13 62:16 62:25 63:16 63:24 64:3 79:19 79:22 | | | | **dtc**(22) 89:3 92:12 92:16 92:22 93:8 93:18 93:18 93:24 96:15 97:1 97:6 98:8 98:16 100:4 100:16 100:17 100:19 101:1 101:1 101:21 103:12 103:19 | |
| | | | | **doesn't**(25) 49:15 49:16 55:5 59:14 59:16 59:17 59:18 63:16 65:13 84:24 87:23 89:9 89:11 90:4 100:13 100:19 152:7 153:18 152:21 155:23 156:7 162:18 162:19 165:5 165:7 | | | |
| **dewac'd**(1) 98:14 | | | | | | **dtc's**(1) 93:10 | |
| **dewey**(2) 3:12 41:9 | | | | | | **due**(8) 55:11 66:18 84:6 87:15 88:7 94:4 97:18 99:2 | |
| **dial**(1) 32:6 | | | | | | | |
| **dialogues**(1) 158:10 | | **discrimination'**(1) 60:7 | | **doesn't**(17) 16:2 18:14 19:4 20:25 21:4 25:23 31:22 35:14 43:5 47:10 47:16 101:10 102:1 117:25 143:2 158:24 165:8 | | **during**(7) 83:15 110:11 110:15 135:19 136:9 136:12 136:13 | |
| **diamond**(1) 6:32 | | **discriminatory**(6) 18:18 32:5 42:1 42:7 56:25 56:25 | | | | | |
| **diaz**(1) 1:46 | | | | | | **duty**(1) 89:14 | |
| **dicta**(1) 13:14 | | | | **doing**(7) 35:23 46:16 54:3 61:18 78:12 170:21 172:19 | | **dwac**(1) 96:19 | |
| **dictated**(1) 86:25 | | | | | | **dynamic**(1) 68:21 | |
| **did**(79) 8:2 14:8 17:23 34:7 38:17 41:10 42:13 43:22 43:24 54:5 54:6 58:7 61:12 61:12 66:2 66:4 72:13 78:5 80:14 83:10 84:7 86:10 86:13 86:14 86:17 88:16 91:1 92:19 92:22 92:23 93:16 94:1 94:25 98:16 101:21 101:21 101:22 101:24 102:14 103:8 104:4 110:21 118:11 119:7 119:8 119:21 119:24 129:1 131:18 132:11 132:21 133:7 133:24 135:1 136:8 136:9 137:3 138:1 138:19 139:19 144:19 146:21 147:10 147:21 148:14 154:5 157:13 157:17 159:16 159:14 159:19 160:13 160:17 161:4 161:7 161:11 161:16 161:18 168:19 | | **discuss**(6) 8:14 82:20 137:9 160:13 161:4 161:7 | | **dollar**(14) 19:20 19:21 19:22 19:25 28:16 29:4 29:6 64:8 64:11 77:11 77:14 77:16 77:17 77:18 | | **e-mail**(1) 146:14 | |
| | | | | | | **e-mails**(1) 114:19 | |
| | | **discussed**(15) 34:6 107:24 111:7 114:25 115:9 132:23 132:24 136:15 137:9 143:15 146:9 153:10 153:12 160:21 161:2 | | | | **each**(15) 11:7 26:20 28:10 28:25 39:5 45:6 48:13 53:17 53:18 54:22 66:7 87:2 87:9 87:10 87:15 | |
| | | | | **dollars**(7) 29:2 29:11 36:2 36:3 47:9 47:13 68:7 | | | |
| | | **discussion**(4) 107:25 114:21 131:12 155:19 | | | | **earlier**(12) 57:12 87:18 108:9 116:24 135:7 139:22 140:1 147:25 150:25 153:4 158:9 162:13 | |
| **didn't**(20) 66:3 67:24 69:14 80:15 86:13 90:10 94:19 95:18 98:16 149:10 149:16 151:14 151:15 152:10 153:8 153:9 155:21 165:2 165:10 168:18 | | **discussions**(5) 143:9 149:21 151:5 159:3 159:10 | | **don't**(45) 50:24 59:1 59:21 61:9 64:14 66:12 66:15 66:17 69:5 69:7 74:16 77:5 77:6 77:19 78:15 81:13 82:8 83:1 85:9 89:24 90:22 91:14 92:18 93:13 93:15 100:7 148:20 151:13 151:24 159:16 159:16 159:23 160:7 160:16 160:16 160:18 161:6 161:6 161:8 161:23 162:12 163:5 164:22 167:14 173:2 | | **easily**(2) 37:24 140:6 | |
| | | | | | | **eastern**(3) 37:1 60:1 173:15 | |
| | | **disparate**(1) 36:19 | | | | **easy**(3) 139:5 140:7 144:24 | |
| | | **disparity**(3) 25:9 36:21 36:22 | | | | **eat**(1) 78:16 | |
| **didn't**(14) 7:15 13:23 20:22 22:17 43:9 101:23 101:25 102:13 116:16 118:19 119:25 128:11 128:12 137:9 | | **dispensation**(1) 146:1 | | | | **economic**(1) 30:13 | |
| | | **dispensed**(1) 16:15 | | | | **ecro**(1) 1:44 | |
| | | **disposes**(1) 19:6 | | **done**(9) 66:8 67:9 67:16 72:11 74:15 88:2 88:2 104:20 118:21 | | **effect**(9) 10:8 17:15 19:3 24:24 31:6 33:23 39:10 77:3 135:3 | |
| **difference**(11) 30:20 33:13 33:16 39:24 40:10 52:14 52:15 60:19 84:25 85:1 131:8 | | **disproportionate**(3) 53:11 53:15 58:9 | | | | | |
| | | **dispute**(13) 28:2 40:7 40:16 55:20 110:14 113:13 113:20 122:18 127:11 137:23 146:18 151:25 152:15 | | **dons**(1) 67:12 | | **effectively**(8) 15:5 78:3 80:7 94:13 96:23 97:13 98:20 133:17 | |
| **differences**(1) 22:1 | | | | | | | |
| **different**(16) 10:12 30:14 56:12 61:5 61:5 65:12 72:14 77:23 79:22 88:14 119:21 119:22 122:19 129:12 145:13 166:24 | | **disputed**(6) 20:6 25:15 27:21 29:24 30:21 32:23 | | **door**(1) 118:8 | | **effects**(1) 84:21 | |
| | | | | **dorr**(1) 5:39 | | **effort**(1) 43:1 | |
| | | **disputes**(3) 29:10 82:8 147:20 | | **double**(4) 27:18 52:16 151:24 151:25 | | **egi**(50) 30:4 30:6 30:14 30:16 64:11 106:23 109:12 110:20 110:22 117:19 117:20 117:22 120:17 127:11 131:25 142:4 142:5 142:20 142:25 143:4 143:12 144:2 144:17 146:11 147:16 149:1 150:10 151:5 151:6 151:18 151:21 152:3 152:14 152:22 157:22 160:2 160:3 161:20 165:3 166:7 166:21 168:18 168:23 168:24 168:24 168:25 169:1 169:5 169:10 169:25 170:1 | |
| **differently**(1) 76:2 | | **disputing**(1) 151:14 | | **doubt**(1) 161:9 | | | |
| **dig**(1) 66:6 | | **dissent**(1) 46:20 | | **dougherty**(1) 3:42 | | | |
| **digging**(1) 14:9 | | **dissenting**(19) 26:4 33:12 33:18 33:25 37:20 52:7 52:8 52:8 52:19 56:18 62:10 62:17 62:21 67:22 68:11 68:17 70:12 70:19 70:23 | | **douglas**(1) 4:4 | | | |
| **dime**(1) 18:4 | | | | **down**(11) 19:20 36:2 40:11 53:14 66:13 66:20 99:2 99:5 104:13 112:14 167:9 | | | |
| **direct**(3) 30:2 30:8 31:13 | | | | | | | |
| **directed**(1) 169:10 | | | | **downward**(1) 64:5 | | | |
| **directing**(1) 157:11 | | **distant**(1) 155:16 | | | | | |
| **direction**(1) 65:12 | | **distinction**(4) 79:5 79:7 79:10 79:11 | | **draft**(6) 106:1 118:19 144:11 147:11 147:12 149:16 | | | |
| **directionally**(1) 59:4 | | **distribute**(1) 167:15 | | | | | |
| **directly**(9) 9:20 12:20 59:20 59:21 72:19 123:13 164:3 164:5 168:21 | | **distribution**(19) 29:25 31:4 31:14 32:2 32:17 37:14 38:15 46:23 49:17 55:9 57:16 71:4 72:14 84:15 84:16 122:21 123:3 125:18 168:24 | | | | **egi-trb**(51) 3:31 5:24 79:3 106:11 106:19 106:25 109:4 113:25 114:4 114:7 114:22 115:3 118:16 122:14 122:20 122:23 123:1 123:6 123:9 123:12 123:18 123:22 124:9 125:5 127:12 127:22 128:5 129:3 129:6 129:10 129:14 129:19 130:21 132:8 132:18 132:21 134:1 135:2 135:4 135:13 135:23 136:2 137:10 137:15 137:18 137:22 137:25 139:16 140:15 141:1 169:7 | |
| **director**(2) 132:19 133:7 | | **distributions**(8) 28:14 28:19 57:1 62:7 124:17 125:10 125:12 169:18 | | | | | |
| **directors**(2) 3:40 5:20 | | **district**(10) 1:2 12:19 14:10 14:11 15:11 15:12 33:8 37:1 60:2 75:21 | | | | **egi-trb's**(2) 116:13 118:21 | |
| | | | | | | **egi-trb"**(1) 110:14 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

egi's(1) 146:15

eight(2) 11:3 26:25

either(12) 13:23 19:16 19:17 19:18 37:2 53:6 68:17 80:20 98:10 113:4 142:20 153:13

elden(1) 3:41

eldersveld(1) 4:31

electronic(2) 1:52 174:7

element(3) 134:19 160:13 161:2

elements(1) 30:1

elevate(2) 47:7 47:13

eli(1) 2:28

eliminate(1) 111:19

eliminated(1) 93:10

eliminating."(1) 23:23

elimination(1) 18:9

elnaz(1) 6:46

else(14) 7:15 8:14 45:8 45:9 71:5 72:6 73:6 76:6 82:19 90:15 172:24 173:2 173:3 173:20

else's(1) 78:16

elsewhere(2) 34:10 72:13

email(1) 151:18

emanates(1) 23:3

embrace(1) 69:12

emphasized(1) 22:3

employee(1) 152:11

employees(1) 106:23

employment(1) 152:12

enable(2) 20:18 94:20

enabled(1) 95:16

enables(1) 75:12

encompass(1) 81:12

end(15) 11:9 25:23 26:24 32:19 82:4 106:4 110:6 119:9 126:11 131:6 142:21 161:24 166:23 169:16 173:12

endeavor(1) 171:15

ended(1) 140:11

ends(2) 25:24 110:5

enforce(4) 47:25 70:9 76:13 78:24

enforceability(1) 13:3

enforceable(4) 13:5 70:4 70:5 73:22

enforced(1) 70:13

english(3) 2:41 6:35 142:4

enough(10) 21:12 69:5 83:22 92:3 121:4 139:3 150:13 163:7 167:5 167:14

ensue(1) 101:15

ensure(3) 67:21 155:18 155:19

ensuring(1) 160:9

enter(1) 128:12

entered(1) 108:9

entering(1) 7:10

enters(1) 90:13

entire(4) 39:3 67:20 78:7 151:12

entirely(6) 16:16 17:18 25:16 26:5 31:13 91:1

entirety(2) 170:20 170:25

entitled(32) 19:14 19:23 20:1 21:21 24:19 26:11 27:15 27:19 28:5 28:8 29:4 29:7 32:10 34:22 34:24 35:6 41:18 69:22 75:13 77:4 78:9 83:9 83:11 84:14 86:5 89:7 89:22 89:25 91:8 91:24 123:2 128:18

entitlement(2) 32:3 66:1 72:11

entitlements(3) 65:14 65:15 76:6

ephraim(1) 6:32

episode(2) 105:20 106:11

equal(16) 37:8 37:14 45:4 46:8 46:22 46:22 48:13 48:16 49:1 52:9 52:10 52:12 55:10 55:17 55:21 61:23

equally(2) 21:20 56:16

equate(1) 152:16

equitable(12) 11:7 12:11 12:12 13:18 18:1 18:2 26:2 67:10 67:13 67:15 70:14 76:20

equitably(1) 74:16

equity(9) 67:12 67:14 67:21 115:4 115:7 115:16 115:16 118:1 132:12

equity-like(1) 115:11

equivalence(5) 72:20 73:1 74:21 74:22 76:12

equivalent(1) 132:11

erens(1) 5:21

eric(2) 6:17 6:18

esq(58) 1:22 1:27 1:32 1:39 2:5 2:6 2:7 2:14 2:15 2:21 2:28 2:34 2:35 2:42 2:43 3:6 3:13 3:14 3:20 3:26 3:32 3:33 3:42 3:46 4:6 4:7 4:8 4:9 4:10 4:11 4:15 4:16 4:17 4:18 4:22 4:23 4:24 4:25 4:37 4:37 4:37 4:41 5:10 5:21 5:25 5:27 5:32 5:36 5:40 5:44 5:48 5:52 6:5 6:7 6:13 6:28 6:36 6:46

essence(1) 48:17

essentially(13) 27:1 27:10 85:23 90:19 90:21 98:24 99:7 99:9 100:17 106:24 115:3 130:4 130:8

established(2) 17:19 112:7

establishes(2) 18:22 138:11

establishing(1) 18:23

estate(14) 31:5 31:10 31:13 46:15 54:13 55:3 55:6 55:24 56:16 56:23 62:7 62:22 77:24 79:15

estates(1) 55:16

ester(1) 4:37

estimate(1) 105:10

estimation(1) 56:11

evaluate(1) 18:25

evaluating(1) 10:21

evaporated(1) 102:18

even(45) 13:2 17:20 19:4 20:2 23:9 25:12 32:6 36:22 37:13 38:5 39:10 39:12 40:21 42:18 49:19 57:16 60:18 60:18 61:10 63:1 72:1 75:14 76:18 91:12 91:20 111:7 114:12 116:12 116:25 125:22 126:12 137:2 137:4 137:9 137:23 139:6 144:6 144:19 153:21 162:1 163:4 164:11 164:21 166:12 168:25

evening(1) 23:19

evens(1) 167:18

event(5) 23:6 78:11 85:19 87:18 88:10 93:14 99:18 123:12 124:3

events(4) 84:24 84:25 124:12 129:21

ever(21) 36:14 38:8 38:8 38:9 38:10 69:22 74:5 90:12 90:12 92:1 103:7 103:12 115:15 124:17 136:8 136:9 136:23 156:11 161:2 161:4 161:7 161:11

every(12) 17:15 19:22 19:25 39:5 71:16 74:12 77:11 77:14 84:25 113:12 119:5 139:4

everybody(11) 27:2 29:19 48:16 49:1 49:21 51:5 63:10 122:15 142:14 148:11 167:15

everybody's(2) 49:11 49:17

everybody's(1) 124:19

everyone(5) 7:2 68:5 68:9 86:2 90:15

everything(8) 16:15 45:8 45:9 82:19 88:1 116:7 121:1 144:18

evidence(99) 7:10 8:12 9:6 9:13 26:10 26:11 26:13 26:19 27:3 45:15 50:14 60:5 60:8 78:9 81:15 81:21 90:9 90:9 94:19 95:10 103:7 106:20 107:2 107:6 107:13 108:5 108:15 109:1 109:13 109:24 109:25 111:19 112:2 113:3 113:8 113:14 114:10 114:12 114:13 114:17 116:4 116:11 116:22 117:1 117:2 117:11 119:3 119:4 119:15 119:22 120:1 120:14 120:15 120:21 122:12 128:24 129:4 129:25 130:2 131:11 131:13 138:9 144:11 145:3 145:3 145:9 145:19 145:22 145:25 146:3 146:6 146:9 146:11 147:18 148:6 149:11 152:20 152:22 152:24 154:1 154:17 154:20 154:21 156:10 162:24 163:7 163:11 163:23 163:23 163:24 164:10 164:11 164:22 164:25 165:18 166:14 166:15 166:25

evidencing(1) 127:16

evidentiary(4) 106:14 109:18 109:22

eviscerates(2) 70:22 75:12

evoke(1) 78:5

exact(2) 150:6 165:22

exactly(11) 13:13 20:17 33:1 48:8 49:20 55:7 62:18 92:22 93:11 101:19 108:20 147:7 172:4

examination(1) 154:16

examiner's(4) 107:15 107:15 107:19

examining(2) 145:8 145:25

example(21) 17:24 24:5 24:9 24:12 24:14 24:17 25:3 25:7 25:10 32:8 36:6 58:4 61:1 61:6 61:16 72:15 73:16 84:13 88:3 134:21 163:25

except(9) 17:10 32:19 50:12 62:5 64:11 73:20 103:4 106:1 127:13

excepting(1) 63:10

exception(12) 15:18 91:5 91:6 91:10 113:13 127:14 128:3 142:11 144:13 144:14 149:5 149:6

exceptions(4) 116:6 144:13 145:1 149:10

excerpts(7) 107:15 107:19 109:8 170:9 170:11 170:17 170:21

exchange(52) 83:8 83:10 83:13 85:16 86:16 86:24 87:8 87:10 87:15 87:17 87:19 87:20 87:25 88:21 89:4 90:12 91:2 91:5 92:13 92:24 93:5 93:6 93:20 94:3 94:4 94:16 95:16 95:18 95:23 96:4 96:9 96:12 96:19 96:20 96:24 97:4 97:16 97:23 98:4 98:15 98:23 99:15 99:18 100:3 100:18 102:9 102:10 102:15 104:20 116:20 155:1 157:9

exchangeable(1) 166:10

exchanged(1) 88:13

exchanges(1) 100:23

excluded(1) 113:4

exclusively(1) 132:20

excuse(4) 69:21 72:4 97:15 99:3

executed(2) 157:8 164:17

execution(1) 164:12

exercise(4) 21:15 56:12 78:7 78:12

exhbits(1) 81:21

exhibit(39) 7:13 7:23 7:25 26:11 26:11 26:19 27:3 29:13 82:3 83:1 87:4 88:3 88:22 88:24 89:6 93:3 93:4 106:21 107:14 107:14 108:5 108:7 108:15 109:4 113:16 122:12 147:7 147:23 147:24 150:24 151:18 152:1 157:7 163:15 168:2 170:9 170:10 170:14 171:3

exhibits(34) 7:10 7:18 8:5 8:11 9:5 9:9 9:13 81:12 81:14 81:14 81:17 82:17 106:13 106:13 106:15 106:17 107:1 107:5 107:10 107:13 108:16 109:1 109:7 109:15 109:24 121:2 150:18 167:22 168:8 170:20 170:22 170:25 171:10 171:12

exide(1) 79:18

exist(1) 36:15

existed(1) 142:15

existence(2) 144:1 144:21

existing(1) 171:3

exists(1) 57:6

expectations(2) 47:21 102:11

expected(1) 115:9

expense(2) 47:3 63:7

expenses(1) 149:7

explain(3) 8:2 69:14 113:3

explained(2) 116:13 154:10

explaining(2) 116:8 131:22

explains(5) 114:15 117:12 119:7 119:10 131:23

explanation(3) 75:16 119:13 155:5

explanations(1) 144:22

explicitly(2) 171:21 171:21

explode(1) 10:18

exploded(1) 44:19

expounding(1) 10:15

express(11) 90:18 96:5 128:6 129:9 129:13 141:6 142:9 142:19 143:5 143:21 156:8

expressed(4) 97:4 98:7 99:12 156:7

expresses(1) 155:11

expressly(2) 127:17 128:4

extant(1) 102:3

extensive(2) 78:8 152:23

extent(11) 13:4 19:16 19:18 48:1 70:4 70:8 73:21 79:14 131:22 140:19 165:20

extra(1) 53:1

extract(1) 22:7

extremely(2) 26:22 26:22

extrinsic(10) 144:11 145:22 147:17 154:1 154:17 163:7 163:11 164:10 164:11 166:25

exxon(3) 22:21 23:2 34:7

eye(1) 72:10

face(6) 11:15 21:14 39:3 86:19 99:15 166:22

facial(1) 66:5

facially(2) 75:15 104:9

facile(1) 74:3

facilitate(3) 71:2 71:19 75:4

fact(45) 22:2 24:18 41:15 60:20 63:18 71:12 71:18 79:23 80:6 92:22 95:9 95:20 98:16 100:23 101:5 102:20 103:18 109:7 114:25 116:2 116:4 118:3 119:8 119:14 119:23 123:6 125:17 125:22 127:23 135:1 137:19 138:5 138:7 138:12 145:6 153:21 156:3 161:22 162:6 163:9 163:20 164:20 165:1 165:14 169:14

factor(1) 37:16

factoring(1) 29:9

factors(2) 52:7 172:10

facts(4) 37:10 84:1 95:14 98:17

factual(2) 82:7 82:8

fail(1) 47:22

failed(2) 7:10 97:13

failing(1) 47:23

fails(2) 60:6 72:7

fair(21) 11:6 12:11 12:12 13:18 18:1 18:2 21:2 21:5 21:12 21:17 26:2 40:19 56:7 59:12 67:10 67:12 67:15 70:13 72:24 73:2 76:20

fairly(4) 74:16 76:15 138:10 141:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**fairness**(4) 33:25 40:24 67:21 118:4

**faith**(3) 40:14 40:23 41:4

**false**(1) 166:13

**family**(1) 14:13

**famous**(3) 23:1 69:20 69:21

**fancy**(1) 148:19

**far**(6) 47:7 66:22 90:19 91:21 121:5 121:6

**fashioned**(1) 26:14

**fast**(1) 34:16

**favor**(4) 18:7 18:9 25:16 63:6

**favorable**(2) 37:5 37:5

**favored**(3) 31:17 37:21 39:21

**favorite**(2) 77:8 62:9

**fax**(1) 96:12

**fear**(1) 139:6

**feasibility**(1) 76:10

**feature**(2) 26:12 132:3

**fed**(1) 164:1

**fed.2d**(2) 163:3 164:1

**fed.3d**(1) 14:19

**feel**(6) 18:14 27:7 31:22 44:18 84:7 100:13

**feelings**(1) 154:11

**feels**(3) 69:6 102:8 102:19

**feld**(2) 2:13 82:13

**fell**(1) 88:8

**fellow**(1) 129:22

**few**(4) 33:15 35:4 44:25 47:9 59:20 83:24 86:9 131:20 149:22 150:5 153:6 153:16 162:2 162:23

**fifth**(1) 1:33

**fifty-three**(1) 53:14

**fight**(1) 16:21

**fighting**(2) 64:19 116:7

**figure**(2) 38:2 49:16

**filed**(1) 92:1

**files**(2) 90:14 120:13

**filing**(6) 79:8 79:13 116:10 119:16 120:14 162:18

**filings**(12) 79:16 107:4 117:9 120:6 131:13 143:9 143:15 153:1 153:24 153:25 162:14 167:10

**fill**(1) 96:10

**filled**(1) 98:15

**final**(4) 28:11 38:5 106:11 147:19

**finally**(6) 14:7 16:15 43:19 91:22 92:5 155:4

**financial**(1) 20:17

**financing**(1) 74:24

**find**(16) 16:17 18:13 35:4 37:22 45:13 58:7 64:24 90:9 90:9 93:3 120:21 121:5 145:4 145:5 145:5 153:23 169:14

**finding**(4) 21:16 21:19 43:24 67:22

**finds**(2) 58:5 123:17

**fine**(3) 151:8 167:24 173:14

**finger**(1) 2:20

**finish**(1) 82:16

**finishes**(1) 78:22

**firm**(1) 109:5

**first**(52) 9:15 10:2 10:13 10:18 14:5 14:10 19:11 26:24 27:15 27:18 28:19 30:4 30:5 32:12 33:9 36:18 37:18 39:13 39:16 41:12 43:4 44:5 47:18 65:16 74:6 81:25 84:8 89:8 92:15 93:14 99:12 109:18 111:19 113:5 114:6 114:22 116:12 121:13 122:22 124:20 125:21 136:10 145:14 145:18 146:5 147:12 147:23 151:25 163:19 165:15 165:22 169:3

**firsthand**(1) 54:7

**five**(4) 42:15 112:11 172:14 173:3

**fix**(3) 28:15 47:4 141:18

**fixed**(3) 89:14 89:24 101:11

**flagg**(1) 1:27

**flavor**(1) 131:21

**fleshed**(1) 66:21

**flex**(1) 34:3

**flexibility**(6) 33:21 33:22 33:23 33:24 34:4 75:1

**flexible**(1) 73:7

**flies**(1) 39:3

**flip**(4) 43:8 86:4 121:13 157:7

**floor**(5) 2:37 2:44 3:21 3:27 152:17

**flow**(2) 17:24 47:11

**focus**(2) 31:20 45:24

**focusing**(2) 46:25 66:7

**follow**(1) 171:24

**following**(4) 28:17 51:1 73:20 127:14

**follows**(2) 10:3 119:2

**footnote**(4) 27:8 69:25 69:25 155:6

**footnotes**(4) 26:25 26:25 27:4 50:12

**for**(242) 1:22 1:21 2:4 2:12 2:20 2:33 2:41 3:4 3:19 3:31 3:40 3:45 4:4 4:21 4:36 4:40 4:44 5:4 5:18 5:24 5:30 5:35 5:39 5:43 5:51 6:4 6:11 6:17 6:22 6:27 6:31 6:35 6:39 6:45 7:5 8:3 9:18 9:19 9:21 10:21 15:9 15:14 16:1 17:10 17:10 17:24 18:23 19:1 19:5 19:21 21:23 21:25 22:22 25:7 26:23 27:8 29:21 31:18 33:22 33:24 35:21 37:5 37:5 37:17 37:22 37:22 38:15 38:20 39:6 39:7 39:14 39:16 40:2 41:12 42:6 42:12 43:4 43:24 44:17 47:2 47:9 47:23 48:24 49:14 50:5 51:12 52:3 55:5 58:19 59:22 60:23 61:1 63:15 63:23 64:15 66:4 66:9 66:16 67:1 68:12 68:19 70:2 70:24 71:15 72:13 73:6 73:19 74:10 75:5 75:7 76:4 76:17 77:8 77:14 77:20 77:23 78:10 78:17 79:6 80:5 80:23 81:8 82:7 82:12 82:13 83:12 84:3 84:13 85:16 86:2 86:18 86:24 88:3 88:11 88:12 89:7 90:11 90:15 90:19 91:2 91:5 91:7 91:11 92:13 92:24 93:21 94:24 95:6 95:16 96:2 96:9 96:14 96:15 96:16 96:20 96:22 96:22 96:24 99:11 99:16 99:20 100:15 100:18 100:22 101:6 101:15 103:6 103:23 105:1 105:4 105:5 105:5 105:19 105:24 107:22 107:23 108:1 109:4 110:14 111:25 112:9 114:3 116:16 117:12 118:16 124:4 125:18 125:20 126:22 127:13 127:15 128:3 129:16 129:18 131:1 132:10 134:18 134:21 134:24 137:18 138:17 139:24 142:4 142:11 143:7 143:25 144:13 144:14 145:25 146:8 147:14 149:6 150:15 151:9 152:14 154:24 158:1 158:7 160:4 161:12 163:4 163:4 163:5 163:13 163:25 165:18 165:18 166:7 166:16 167:14 167:16 168:17 169:8 169:22 170:15 170:18 170:24 172:1 172:7 173:5 173:7 174:1

**force**(2) 66:14 155:10

**forced**(2) 59:8 68:6

**foregoing**(1) 174:6

**forest**(1) 66:9

**forever**(1) 10:18

**forget**(3) 15:5 48:23 48:24

**forgetting**(1) 138:20

**forgive**(1) 74:10

**form**(9) 52:22 86:2 102:3 115:8 119:3 132:11 134:3 134:14 171:2

**forman**(1) 1:37

**formed**(1) 154:14

**former**(1) 3:40

**forms**(2) 24:2 72:14

**formula**(3) 33:1 87:11 87:12

**formulation**(5) 25:2 32:4 34:18 35:19 36:8

**formulators**(1) 34:3

**forth**(6) 27:23 29:19 33:9 90:1 163:17 166:24

**forthright**(17) 111:3 112:4 118:25 119:16 120:6 133:2 154:19 154:24 155:5 155:7 155:9 155:23 156:1 156:4 162:3 162:4 162:12

**forward**(5) 44:20 46:17 101:25 106:16 116:1

**found**(14) 13:19 18:17 33:6 37:23 54:11 59:12 63:1 69:23 91:6 104:23 150:18 155:3 165:17 169:17

**foundation**(2) 134:4 134:12

**foundational**(1) 100:24

**founded**(1) 93:14

**four**(5) 28:24 52:6 82:17 99:11 133:3

**four-prong**(1) 52:1

**framed**(2) 126:3 150:6

**frames**(1) 17:7

**framework**(2) 10:20 75:7

**frank**(2) 5:35 5:36

**frankly**(3) 42:17 101:4 131:11

**free**(1) 119:20

**french**(1) 3:27

**frequently**(1) 12:24

**friday**(2) 14:8 173:15

**friedman**(3) 5:51 44:16 105:4

**from**(168) 8:7 9:18 10:5 11:16 12:10 12:17 13:9 14:4 14:10 14:17 14:17 15:17 17:21 18:5 18:7 19:2 21:10 22:7 22:11 22:12 22:19 22:20 24:7 26:1 26:2 26:3 26:4 26:7 27:14 30:2 30:3 30:13 31:4 31:9 32:8 32:24 33:8 33:16 33:18 34:9 37:13 38:17 39:2 40:10 43:10 43:10 45:5 45:15 46:18 48:12 49:10 49:12 49:17 49:18 49:21 50:4 51:16 52:16 52:20 52:21 53:2 53:5 53:5 55:3 55:4 55:4 55:6 55:15 56:6 56:15 56:24 57:1 57:7 57:17 57:24 58:13 59:18 59:23 60:1 62:5 62:6 62:7 62:20 62:22 64:20 66:4 67:9 67:18 67:19 68:19 70:17 73:2 75:20 76:19 78:16 78:19 81:6 84:19 86:8 86:12 87:2 87:10 88:8 88:13 89:3 89:14 91:4 91:17 92:7 92:16 92:23 93:10 94:9 94:9 96:9 99:25 101:15 105:25 106:23 107:15 107:19 109:4 109:8 110:16 113:5 115:14 115:25 119:4 121:1 125:21 125:23 126:20 127:2 128:2 128:19 130:20 130:23 130:25 137:22 138:3 138:9 138:16 141:16 142:1 146:14 148:1 151:9 154:7 155:6 155:16 163:16 164:6 164:8 165:10 168:24 169:25 170:8 170:10 170:11 170:17 172:23 174:7

**front**(8) 12:13 21:15 27:16 38:22 95:7 166:14 170:16 172:22

**frustrated**(1) 57:9

**fudging**(1) 78:10

**fulcrum**(1) 33:11

**full**(10) 9:22 38:15 66:19 72:17 72:23 76:8 83:12 86:5 91:3 131:22

**fully**(4) 66:21 83:22 151:9 151:9

**function**(4) 21:16 80:5 97:11 97:15

**functionally**(1) 132:11

**fund**(3) 57:7 57:10 57:19

**fundamental**(4) 6:39 6:40 33:25 65:13

**fundamentally**(1) 46:9

**funds**(4) 57:18 59:9 59:18 58:18

**funny**(1) 65:7

**further**(11) 8:9 14:9 43:6 64:14 112:10 121:5 124:2 125:4 125:22 126:12 132:15

**future**(2) 145:14 145:17

**fuzzy**(1) 42:23

**gain**(1) 46:24

**gallucci**(1) 158:3

**gap**(1) 102:18

**garrison**(1) 6:12

**gary**(2) 2:7 4:33

**gather**(2) 73:20 100:11

**gave**(5) 24:12 61:15 61:25 75:16 168:3

**gelled**(2) 14:5 14:7

**general**(13) 15:19 16:6 17:12 23:8 24:1 29:20 70:3 134:9 136:14 153:1 155:18 158:10 159:3

**generally**(9) 25:9 132:4 132:6 133:23 135:15 138:24 159:12 160:8 163:22

**generate**(1) 108:8

**generated**(1) 97:19

**gentle**(2) 67:15 68:3

**gentler**(1) 72:10

**geohan**(1) 6:36

**george**(1) 3:42

**get**(76) 8:19 19:8 24:10 27:2 29:25 30:2 30:11 30:17 31:3 31:9 31:12 32:13 32:17 35:1 35:8 35:12 35:15 35:19 39:21 39:22 45:10 47:6 47:17 49:10 52:22 53:8 53:20 55:1 55:1 55:6 61:15 64:8 64:9 64:10 64:12 67:16 69:1 71:8 71:22 71:23 72:6 72:17 78:12 80:8 81:3 84:19 86:17 88:18 89:25 90:10 90:14 93:14 94:5 94:9 99:22 110:24 113:22 114:2 119:6 121:1 121:5 121:9 125:23 131:24 142:13 142:23 144:9 148:21 152:25 156:6 162:5 162:12 165:17 167:17 168:24

**gets**(11) 17:6 21:10 35:20 57:16 74:20 77:12 84:21 93:10 99:8 117:25 169:25

**getting**(33) 24:22 43:1 43:12 46:3 46:5 46:6 49:17 49:21 51:16 51:19 52:20 53:2 53:4 53:5 55:15 56:7 56:22 58:11 58:12 61:24 62:9 62:10 62:21 66:2 72:21 72:25 76:15 85:6 88:12 101:20 165:12 172:5

**gifted**(1) 11:19

**give**(3) 8:22 10:19 14:14 17:14 21:4 22:20 26:23 36:8 46:7 66:17 66:18 71:4 71:7 71:22 72:6 73:6 74:17 75:7 76:6 77:18 78:21 92:20 104:25 110:25 113:16 118:8 120:11 131:20 145:7 155:1 162:25 165:16

**given**(16) 16:2 21:9 27:12 27:21 32:2 44:1 44:3 58:4 61:1 61:16 87:24 100:16 103:12 134:19 151:7 162:21

**gives**(4) 101:1 119:12 120:15 145:22

**giving**(7) 19:2 31:6 77:4 87:22 101:10 168:3

**glasses**(1) 147:6

**glauber**(3) 155:7 155:15 155:18

**global**(6) 82:23 87:4 95:7 95:15 96:7 98:21 116:11 124:20 128:25 155:18 162:9 165:4

**goes**(11) 13:20 19:15 36:2 57:5 87:11 116:1 124:20 128:25 155:18 162:9 165:4

**going**(77) 12:20 19:1 20:4 22:20 24:18 26:13 27:5 28:1 31:12 34:14 34:16 35:1 36:25 37:10 38:8 38:9 39:2 39:15 39:21 39:22 45:9 46:16 46:16 47:16 49:3 49:10 51:4 56:9 58:18 58:24 60:9 60:12 60:12 60:25 64:22 65:19 66:14 66:17 66:19 68:3 68:18 69:1 71:12 71:23 75:23 78:8 78:21 80:8 82:20 82:24 94:8 95:24 97:21 115:3 117:23 117:24 118:4 121:13 127:7 134:10 138:22 139:23 140:23 142:21 143:7 144:10 145:20 146:10 149:24 149:24 153:6 162:21 162:25 166:23 167:4 167:12 170:13

**gold**(1) 26:21

**goldberg**(3) 133:15 164:17 164:24

**golden**(1) 2:15

**goldfarb**(1) 4:17

**goldman**(1) 5:40

**gone**(3) 32:4 40:15 43:21 78:7

**good**(26) 7:2 7:3 7:4 9:17 10:24 34:12 40:2 40:23 41:4 41:8 42:11 44:15 43:22 64:20 65:10 67:24 75:7 82:12 101:7 105:17 105:18 117:12 120:25 121:9 138:15 148:17

| Word | Page:Line |
|---|---|
| goods(1) 91:7 |  |
| goody's(1) 48:22 |  |
| goody's(1) 14:13 |  |
| gordon(1) 5:39 |  |
| got(30) 14:7 20:18 31:17 31:20 31:21 32:14 40:6 45:3 45:4 45:16 45:17 45:17 45:22 50:13 50:21 50:22 55:3 56:8 61:15 63:6 63:15 63:18 63:19 82:3 82:20 82:18 116:23 124:17 140:9 165:5 172:21 |  |
| gotten(4) 24:22 34:11 53:24 61:18 |  |
| govern(1) 91:16 |  |
| governed(3) 91:16 92:4 120:18 |  |
| governing(1) 10:16 |  |
| governs(2) 16:5 103:20 |  |
| grab(2) 121:14 125:10 |  |
| grabs(1) 39:6 |  |
| graduate(1) 132:17 |  |
| graeme(1) 4:15 |  |
| grammatical(2) 16:16 149:3 |  |
| grand(3) 3:15 69:4 69:6 |  |
| grandma(1) 78:15 |  |
| grandparents(1) 43:11 |  |
| grassy(1) 41:3 |  |
| gray(2) 28:11 35:10 |  |
| great(11) 25:7 25:8 25:12 25:12 36:20 36:20 37:25 51:20 55:11 57:22 69:3 |  |
| greater(5) 51:20 57:21 114:16 131:24 |  |
| green(1) 28:4 |  |
| grippo(1) 3:41 |  |
| gross(6) 25:9 35:1 36:2 36:3 36:21 51:20 |  |
| grossly(4) 36:19 53:11 53:15 58:9 |  |
| grounds(2) 109:6 109:13 |  |
| group(5) 4:40 4:40 18:10 32:22 106:24 |  |
| group's(1) 139:3 |  |
| gruszka(1) 6:42 |  |
| guarantee(2) 56:11 63:9 |  |
| guarantor(5) 56:3 56:5 56:6 56:8 56:10 |  |
| guarantor's(1) 56:2 |  |
| guess(11) 19:12 23:14 28:25 36:18 37:16 40:25 50:20 68:11 101:9 146:14 174:3 |  |
| guidance(2) 23:24 94:25 |  |
| guide(2) 23:8 60:24 |  |
| gump(2) 2:13 82:13 |  |
| guy(5) 31:20 118:18 152:16 152:17 156:5 |  |
| guys(1) 56:7 |  |
| gypsum(1) 163:1 |  |
| had(76) 15:14 23:17 31:25 43:13 60:15 50:5 60:16 60:18 61:5 65:7 72:11 74:1 78:19 80:21 80:22 84:7 86:16 86:19 86:23 87:1 88:14 89:1 89:3 89:19 89:20 90:22 93:19 94:16 94:17 95:23 100:4 104:2 104:3 104:10 109:20 114:4 115:5 111:12 113:20 115:5 115:7 115:10 119:10 129:3 132:13 133:20 134:9 134:18 134:18 136:23 137:21 144:12 145:12 145:12 146:19 147:4 147:11 147:16 148:24 151:18 153:10 154:5 155:19 156:20 156:21 156:24 157:2 157:3 157:15 159:20 160:8 160:9 160:10 162:15 162:18 170:8 |  |
| hadn't(2) 80:15 92:17 |  |
| hah(2) 164:4 164:6 |  |
| hale(1) 5:39 |  |
| half(5) 55:10 57:14 57:14 78:22 105:12 163:20 164:25 |  |
| hallmark(1) 36:21 |  |
| hammerman(1) 5:48 |  |
| hamper(1) 71:12 |  |
| hampering(2) 71:18 73:4 |  |
| hand(13) 26:14 26:15 29:5 35:10 70:11 71:5 81:22 82:10 97:17 97:24 105:22 122:2 134:2 |  |
| handed(3) 41:16 83:4 97:19 |  |
| handful(1) 7:11 |  |
| handily(1) 38:1 |  |

| Word | Page:Line |
|---|---|
| handle(1) 109:16 |  |
| handout(1) 169:12 |  |
| handwritten(1) 117:6 |  |
| handy(3) 29:8 73:9 73:13 |  |
| happen(6) 25:22 27:11 27:13 37:15 102:1 130:7 |  |
| happened(6) 27:23 87:25 90:22 93:11 100:4 104:4 |  |
| happening(4) 33:3 46:7 55:7 57:10 |  |
| happens(16) 20:5 20:6 20:9 24:6 27:20 28:4 28:6 28:7 28:9 28:11 30:18 30:19 63:12 101:9 101:12 124:23 |  |
| happy(6) 8:17 29:18 41:6 111:23 112:10 113:1 |  |
| hard(12) 61:4 75:10 115:5 115:24 117:14 132:13 134:19 146:19 153:11 160:10 161:3 165:8 |  |
| harm(19) 25:1 25:3 25:5 25:6 25:7 25:13 25:14 25:14 25:19 31:15 33:5 34:12 34:20 35:20 36:13 37:17 37:19 37:20 38:6 |  |
| harmed(1) 56:19 |  |
| harmonize(2) 61:11 91:12 |  |
| harrisburg(1) 1:48 |  |
| harvard(1) 132:17 |  |
| has(60) 8:4 11:8 12:15 16:2 16:6 16:9 16:11 16:13 20:4 23:11 26:10 32:23 33:6 34:5 34:8 34:11 36:16 39:4 40:15 40:16 40:24 41:6 53:15 57:18 63:4 65:5 66:1 67:16 73:23 77:8 82:6 83:2 85:22 88:7 90:1 91:14 91:25 92:1 93:4 99:1 100:11 102:17 104:16 106:11 106:13 109:5 109:7 109:12 116:10 120:2 122:12 124:9 125:6 125:21 126:11 129:7 132:19 144:1 153:13 162:22 |  |
| hasn't(2) 104:7 104:8 |  |
| hat(2) 67:12 166:4 |  |
| hauer(2) 2:13 82:13 |  |
| have(233) 8:16 8:22 16:18 17:14 17:23 18:12 20:21 21:18 22:5 22:8 22:9 24:2 25:17 26:12 26:18 28:12 30:9 31:9 32:21 33:7 33:22 34:4 34:10 37:21 38:8 38:9 39:2 41:25 42:8 42:20 42:25 44:24 44:25 45:13 45:19 45:21 46:21 46:22 47:11 47:13 48:15 49:1 49:8 50:1 50:3 51:4 51:10 52:2 52:23 53:24 54:10 56:4 57:7 57:9 57:24 58:2 58:3 59:14 59:20 60:5 61:18 61:24 62:2 63:21 64:3 64:10 64:14 64:15 65:1 65:12 65:15 66:2 66:11 66:11 66:16 67:9 68:7 71:10 71:20 71:21 71:22 72:5 72:9 73:9 73:12 76:11 77:13 78:6 78:7 78:12 79:23 80:15 81:16 83:5 83:11 83:24 84:15 85:6 85:16 86:15 86:17 86:18 87:5 87:9 89:16 89:21 89:24 89:25 90:11 91:20 92:16 93:16 93:22 94:6 95:3 95:4 95:4 96:10 96:18 97:8 97:10 100:2 100:9 101:3 102:1 102:19 104:11 105:2 105:10 105:20 107:16 108:3 109:10 109:12 109:13 109:14 110:2 110:12 111:4 111:6 112:15 112:15 113:16 119:11 119:18 119:21 119:24 120:8 120:9 120:12 121:2 121:25 122:11 125:9 125:23 126:16 126:18 127:1 127:5 128:6 130:20 130:22 131:4 131:15 131:13 131:19 131:22 132:10 133:3 133:24 134:23 135:3 135:15 135:17 137:17 137:19 137:24 138:1 139:23 143:8 144:25 145:1 146:1 146:2 146:8 146:25 147:4 147:5 147:21 148:11 148:20 149:25 150:6 150:23 153:5 154:1 154:2 155:1 155:4 155:22 155:25 156:5 156:9 157:13 157:17 159:10 159:14 161:9 162:3 162:24 164:22 164:22 165:6 165:8 165:24 166:6 166:8 166:13 167:13 167:14 167:16 168:1 168:12 168:20 169:6 170:2 170:7 171:10 172:13 173:3 174:3 |  |

| Word | Page:Line |
|---|---|
| haven't(1) 91:8 |  |
| haven't(1) 37:23 |  |
| having(7) 38:20 84:9 95:12 126:3 139:22 159:17 159:17 |  |
| hbk(1) 6:17 |  |
| he's(3) 150:21 152:14 162:6 |  |
| hear(14) 8:7 9:11 65:21 73:11 81:19 108:13 108:25 109:17 113:5 118:5 119:4 131:21 138:22 151:11 |  |
| heard(17) 19:12 20:4 20:16 43:10 48:7 99:6 110:18 127:10 132:2 138:3 139:3 139:6 139:22 142:16 149:11 150:12 169:8 |  |
| hearing(15) 23:15 29:16 47:17 51:4 56:4 58:24 83:16 110:5 112:6 112:11 112:20 139:24 140:5 174:1 174:4 |  |
| hearsay(7) 84:4 106:22 109:13 151:24 151:25 151:25 152:2 |  |
| heavily(3) 26:25 103:1 149:12 |  |
| held(3) 94:2 102:4 133:19 |  |
| help(3) 23:21 140:23 145:9 |  |
| helpful(8) 29:12 76:18 112:12 122:7 168:7 170:15 170:24 171:23 |  |
| helps(2) 100:3 103:3 |  |
| hence(1) 41:25 |  |
| her(1) 96:10 |  |
| hercules(1) 2:36 |  |
| here(89) 7:17 9:23 10:16 14:10 14:18 15:15 17:22 20:7 25:15 25:22 29:23 29:24 33:3 34:15 36:25 37:9 38:11 39:13 40:8 40:17 42:1 44:3 45:5 45:14 45:21 45:24 46:13 48:21 48:23 51:2 51:5 52:25 53:14 54:23 55:7 56:19 57:6 57:11 57:23 60:3 61:11 63:2 63:4 66:11 66:11 68:23 88:1 92:4 92:11 92:19 93:11 93:13 96:4 96:8 99:13 100:4 101:18 104:16 109:3 111:16 112:13 112:24 113:8 113:25 114:13 118:17 118:20 119:23 120:16 122:8 122:19 126:6 127:15 128:25 130:4 130:9 146:21 147:6 150:4 153:19 154:2 155:15 156:9 160:21 161:1 162:16 166:6 169:14 170:9 |  |
| here's(1) 68:1 |  |
| here's(1) 15:14 |  |
| he's(1) 141:17 |  |
| high(17) 20:8 27:24 27:25 28:10 40:6 42:2 51:3 51:21 82:21 84:20 85:1 85:22 89:7 95:11 104:12 105:7 105:8 |  |
| high-tech(1) 148:11 |  |
| high/low(1) 81:10 |  |
| higher(3) 35:2 58:18 86:3 |  |
| highlight(4) 41:21 171:2 |  |
| highlighted(9) 26:20 29:13 112:18 112:18 116:9 169:17 169:20 169:21 |  |
| highlighting(2) 148:20 169:13 |  |
| highlights(2) 26:12 149:25 |  |
| hiller(1) 3:25 |  |
| him(5) 110:18 110:18 151:7 155:19 167:3 |  |
| his(72) 19:22 19:22 19:22 19:25 19:25 28:5 28:8 43:15 59:24 78:15 96:10 110:4 110:11 110:13 110:17 110:19 110:21 110:23 110:23 111:3 111:6 116:1 116:7 112:4 112:5 114:16 115:25 118:7 118:12 118:13 118:22 118:22 118:22 120:3 122:3 122:4 132:4 132:14 132:20 132:22 132:23 134:11 138:24 141:17 149:17 150:10 151:11 151:19 152:11 152:12 152:18 153:11 153:13 153:13 155:6 156:7 156:19 162:6 162:6 162:10 162:11 162:16 165:11 165:15 165:16 165:21 165:25 166:13 166:19 169:3 169:11 169:12 |  |

| Word | Page:Line |
|---|---|
| history(31) 22:13 22:14 22:18 22:23 23:1 23:7 23:9 23:10 23:13 23:22 23:24 24:1 24:6 24:8 24:9 25:10 25:23 26:6 38:3 45:5 54:10 54:21 56:20 58:5 58:7 60:24 62:11 61:14 75:10 75:16 91:14 |  |
| hixson(1) 3:33 |  |
| hobson's(1) 68:16 |  |
| hochschild(2) 151:21 152:13 |  |
| hochschild's(1) 170:17 |  |
| holder(11) 73:21 83:19 87:9 87:14 87:16 91:25 93:8 96:9 97:25 99:4 99:8 |  |
| holders(22) 77:23 83:7 83:18 83:20 86:15 86:23 88:11 88:13 88:17 89:20 90:20 91:23 93:19 98:3 98:5 98:11 102:5 104:24 115:16 169:7 169:22 169:24 |  |
| holding(7) 12:20 13:14 15:22 97:7 98:8 99:17 103:10 |  |
| holdings(3) 12:18 12:19 50:6 |  |
| holds(1) 1:22 |  |
| holistically(1) 66:11 |  |
| honest(1) 138:7 |  |
| honor(177) 7:3 7:4 7:7 8:23 9:14 9:17 9:22 10:22 12:1 20:4 20:12 21:15 21:25 26:16 27:8 28:1 28:12 28:14 33:6 34:5 38:5 39:5 40:16 40:19 41:6 41:8 42:11 43:6 43:19 44:1 44:11 44:15 46:25 47:20 50:25 51:24 54:12 55:8 56:14 57:16 59:12 61:7 62:14 62:23 64:14 64:17 64:18 65:1 67:7 67:16 68:5 69:7 69:11 69:15 70:2 74:2 74:7 74:8 75:2 75:6 75:17 75:22 75:25 76:3 76:23 77:6 77:8 78:11 78:17 78:19 78:23 78:25 79:2 79:4 80:3 80:10 80:11 80:19 81:2 81:8 82:12 82:22 83:7 83:6 83:14 85:7 85:12 85:14 85:21 86:6 86:21 87:4 88:1 89:13 90:23 91:17 91:22 92:5 93:4 93:21 94:6 94:13 94:6 95:20 99:10 99:16 99:20 100:9 100:11 101:17 102:6 102:15 104:6 104:14 105:1 105:3 105:8 105:18 105:19 106:10 107:20 108:6 109:21 110:7 111:15 111:23 112:17 113:19 114:5 120:10 120:19 123:2 121:10 121:18 121:25 122:2 122:4 122:11 123:17 125:6 125:21 130:1 130:13 131:11 132:16 133:5 137:14 138:13 138:15 138:18 138:22 139:9 140:4 140:14 144:15 146:22 147:6 148:10 148:13 149:23 156:2 162:1 163:19 165:20 167:1 167:21 168:1 168:10 168:12 170:6 171:11 171:17 172:17 173:5 173:9 173:24 |  |
| honor's(3) 60:25 94:22 96:11 |  |
| honorable(1) 1:17 |  |
| honor's(1) 37:11 |  |
| hope(3) 27:7 58:18 95:8 |  |
| hopeful(1) 77:10 |  |
| hopefully(3) 95:13 148:21 163:14 |  |
| hoping(1) 45:8 |  |
| horizontal(4) 26:20 29:3 29:7 55:8 |  |
| hoschild(1) 112:16 |  |
| hoschild's(1) 110:3 |  |
| hour(1) 162:21 |  |
| hour-and-a(1) 105:11 |  |
| hours(2) 152:12 152:17 |  |
| house(7) 24:14 24:16 24:20 25:3 25:20 26:1 36:23 |  |
| housekeeping(1) 44:21 |  |
| how(36) 12:17 17:1 17:7 20:23 25:5 28:1 28:3 29:11 34:18 34:19 35:19 43:7 59:4 70:1 74:19 74:19 80:4 84:12 84:21 85:18 85:25 90:22 102:9 106:16 109:16 118:5 118:5 129:1 138:24 149:12 150:14 153:11 167:11 174:4 172:15 173:12 |  |
| howard(1) 4:7 |  |

| Word | Page:Line |
| --- | --- |
| **however**(8) 45:21 54:19 62:2 70:5 83:22 126:21 154:15 154:23 | |
| **hundreds**(3) 47:12 172:21 172:21 | |
| **hurdle**(1) 40:6 | |
| **hypothetical**(3) 32:12 32:16 45:3 | |
| **hypotheticals**(1) 20:14 | |
| **i'd**(14) 50:25 56:1 62:14 63:14 65:11 69:15 70:2 73:15 75:22 81:14 82:3 154:24 167:3 171:13 | |
| **i'll**(13) 48:4 53:11 64:3 64:23 64:24 76:19 82:9 88:25 98:1 152:25 153:15 162:24 163:14 | |
| **i'm**(31) 48:20 51:19 62:14 64:4 64:19 64:22 67:1 71:22 71:22 73:11 75:24 81:2 81:2 81:5 81:25 82:9 82:15 82:24 87:7 94:8 149:23 149:24 150:9 151:14 153:6 155:5 162:21 162:24 167:4 168:14 173:23 | |
| **i've**(5) 57:14 85:8 85:8 88:21 150:5 | |
| **idea**(5) 23:17 62:24 69:1 156:8 170:24 | |
| **identical**(1) 149:3 | |
| **identified**(1) 48:21 | |
| **idiosyncratic**(1) 23:5 | |
| **ignore**(2) 139:6 152:6 | |
| **illinois**(3) 91:15 91:16 91:18 | |
| **illustrate**(3) 34:19 122:16 | |
| **illustrates**(1) 27:19 | |
| **illustration**(5) 24:24 25:20 31:24 32:1 | |
| **illustrations**(2) 31:24 35:22 | |
| **illustrative**(3) 58:17 58:19 58:20 | |
| **imbedded**(1) 169:2 | |
| **immaterial**(2) 20:11 22:1 | |
| **immediate**(1) 104:1 | |
| **impact**(17) 20:17 34:25 35:3 35:9 35:13 35:16 35:18 36:2 36:12 40:1 42:1 43:7 43:15 43:17 77:22 122:10 122:16 | |
| **impaired**(1) 11:8 | |
| **impeaching**(1) 165:19 | |
| **impediment**(1) 11:21 | |
| **implication**(1) 102:16 | |
| **imply**(2) 36:11 80:15 | |
| **import**(1) 104:16 | |
| **importance**(3) 65:5 100:20 101:3 | |
| **important**(19) 10:23 12:22 29:2 33:20 33:22 36:3 36:5 39:8 65:17 74:12 88:24 92:10 92:21 95:15 101:12 115:23 134:22 139:21 150:14 | |
| **importantly**(2) 46:4 95:6 | |
| **importing**(1) 18:2 | |
| **imports**(1) 11:23 | |
| **impose**(1) 95:24 | |
| **impression**(1) 118:8 | |
| **improper**(1) 40:15 | |
| **inadmissible**(2) 120:11 164:10 | |
| **inc**(1) 5:43 | |
| **include**(6) 45:9 84:4 119:24 119:25 130:19 159:5 | |
| **included**(2) 24:11 158:12 | |
| **including**(6) 12:7 22:3 95:5 117:18 131:17 169:2 | |
| **inconsistent**(5) 13:17 50:9 75:6 75:15 101:22 | |
| **incorrect**(1) 141:18 | |
| **increase**(1) 36:1 | |
| **increases**(1) 58:21 | |
| **incremental**(1) 98:12 | |

| Word | Page:Line |
| --- | --- |
| **indebtedness**(32) 19:23 19:24 20:2 84:23 123:1 123:6 123:9 123:19 123:19 124:5 125:19 126:23 127:8 127:13 127:15 127:17 127:20 128:3 128:14 128:18 129:4 129:20 130:6 130:16 130:18 130:19 130:21 130:25 141:4 141:6 142:6 142:8 144:3 | |
| **indeed**(6) 12:1 14:12 16:15 27:3 31:19 | |
| **indenture**(60) 19:15 77:15 82:24 86:1 88:17 89:9 91:16 92:14 95:6 95:15 95:22 96:1 96:3 98:21 98:22 99:9 99:25 100:3 100:19 103:14 123:2 123:7 123:7 123:10 123:19 123:24 124:6 124:17 125:20 126:24 127:1 127:3 127:8 127:9 127:13 128:3 128:15 128:17 128:21 129:2 129:3 129:5 129:20 129:23 130:6 130:10 130:11 130:14 133:14 138:17 142:18 142:25 143:3 143:24 144:6 156:17 161:14 161:16 161:19 165:3 | |
| **indentures**(1) 166:24 | |
| **independent**(1) 115:20 | |
| **indicated**(7) 38:2 80:22 107:16 119:15 120:5 128:21 131:13 | |
| **indicates**(1) 103:7 | |
| **indicating**(3) 103:12 120:13 120:14 | |
| **indication**(1) 154:4 | |
| **indicative**(3) 35:25 151:6 151:12 | |
| **indicators**(1) 116:9 | |
| **indiscernible**(1) 102:14 | |
| **individual**(3) 27:7 138:20 138:25 | |
| **individuals**(2) 7:17 114:24 | |
| **indubitable**(5) 72:20 72:25 74:21 74:22 76:11 | |
| **indulge**(1) 10:22 78:20 | |
| **inequitable**(1) 18:14 | |
| **infer**(1) 165:10 | |
| **inferentially**(1) 150:4 | |
| **inform**(2) 19:8 100:3 | |
| **information**(7) 7:14 94:25 95:2 95:5 | |
| **informed**(4) 118:13 132:14 150:22 160:1 | |
| **initial**(5) 14:5 28:14 28:19 29:25 114:20 | |
| **initially**(4) 84:21 89:8 94:12 120:25 | |
| **initiate**(2) 94:1 96:13 | |
| **initiated**(4) 97:1 98:5 98:14 104:22 | |
| **injury**(1) 53:7 | |
| **innovation**(1) 104:7 | |
| **insertion**(1) 106:1 | |
| **inside**(2) 137:2 137:4 | |
| **insists**(1) 70:12 | |
| **instance**(6) 61:3 114:6 125:21 | |
| **instead**(9) 32:3 37:20 51:14 71:23 115:5 146:19 153:19 172:12 172:13 | |
| **instinct**(1) 139:4 | |
| **instructive**(1) 154:16 | |
| **instructs**(1) 103:21 | |
| **instrument**(2) 115:10 127:16 | |
| **instruments**(1) 92:1 | |
| **insufficiency**(1) 40:3 | |
| **insult**(1) 53:7 | |
| **intellectual**(1) 10:19 | |
| **intellectually**(1) 76:1 | |
| **intend**(3) 78:24 112:10 146:21 | |
| **intended**(21) 66:10 70:19 70:21 71:1 71:1 74:14 96:21 97:5 97:9 101:2 102:3 103:7 112:6 144:7 146:6 147:1 148:8 148:8 150:22 163:9 163:13 | |
| **intending**(2) 90:13 100:19 | |
| **intends**(1) 110:10 | |
| **intent**(27) 90:9 96:5 97:5 98:10 99:12 99:25 100:5 110:24 111:4 111:7 120:15 148:3 149:12 149:14 149:18 152:19 152:20 155:25 156:10 162:7 162:10 162:10 162:22 163:8 164:12 164:16 164:19 | |

| Word | Page:Line |
| --- | --- |
| **intention**(3) 120:16 129:25 170:12 | |
| **inter-creditor**(1) 123:23 | |
| **intercreditor**(11) 52:22 53:4 71:2 71:11 71:14 79:9 79:14 79:19 80:2 80:4 80:6 | |
| **interest**(8) 21:3 21:8 26:3 64:12 82:23 83:7 85:6 85:6 | |
| **interested**(2) 76:1 88:22 | |
| **interesting**(6) 17:8 24:10 65:2 111:14 154:9 164:24 | |
| **interests**(2) 11:7 83:18 | |
| **interferes**(1) 10:6 | |
| **internal**(6) 106:21 110:20 160:14 162:7 162:10 162:11 | |
| **internally**(3) 136:15 137:10 153:12 | |
| **interplay**(1) 14:21 | |
| **interpleader**(2) 94:14 95:12 | |
| **interpret**(3) 73:19 76:2 98:19 | |
| **interpretation**(3) 9:23 23:25 75:4 | |
| **interpretations**(1) 137:25 | |
| **interpreting**(1) 75:8 145:17 | |
| **interpretive**(1) 60:24 | |
| **interrelationship**(1) 17:12 | |
| **interrogatories**(2) 97:12 103:9 | |
| **intervene**(1) 40:15 | |
| **intervened**(7) 34:8 34:10 40:17 88:9 89:17 89:19 89:23 | |
| **intimately**(1) 150:21 | |
| **into**(52) 7:10 8:12 9:6 9:13 26:10 29:1 33:21 50:14 53:20 55:22 55:24 64:25 75:3 81:14 81:21 87:25 90:10 93:24 94:24 107:13 108:5 108:15 109:1 109:24 110:25 113:22 114:2 116:11 118:1 122:7 122:12 128:12 131:25 132:2 132:9 137:15 142:22 144:9 145:20 150:13 152:25 155:13 156:6 158:24 162:9 162:21 162:24 165:12 166:6 166:6 166:10 166:18 | |
| **introduce**(1) 164:6 | |
| **introduced**(1) 171:10 | |
| **introductory**(1) 11:11 | |
| **investing**(1) 116:18 | |
| **investment**(7) 6:40 6:40 115:4 115:4 115:5 115:20 115:22 | |
| **invitation**(1) 94:23 | |
| **invitations**(1) 85:9 | |
| **invite**(1) 41:1 | |
| **invited**(1) 34:11 | |
| **invoke**(1) 94:3 | |
| **involve**(1) 25:9 | |
| **involved**(20) 65:18 70:16 81:2 119:4 119:23 138:6 148:3 149:17 150:21 151:5 152:15 155:20 155:24 156:1 157:20 158:6 158:10 158:15 159:2 164:15 | |
| **involvement**(3) 157:12 157:15 157:17 | |
| **involving**(1) 14:20 | |
| **irrelevant**(5) 110:24 114:14 116:25 154:11 164:9 | |
| **irresistible**(1) 40:21 | |
| **irrespective**(1) 43:3 | |
| **irrevocable**(6) 88:19 89:1 89:5 89:10 89:12 90:5 | |
| **isn't**(6) 68:6 77:21 84:16 152:6 160:23 169:15 | |
| **isn't**(6) 12:13 21:22 22:18 22:23 25:13 41:24 101:14 104:8 | |
| **isolate**(1) 41:21 | |

| Word | Page:Line |
| --- | --- |
| **issue**(82) 8:15 8:25 9:2 9:3 9:4 9:15 10:2 10:12 10:13 10:16 15:2 16:11 29:24 33:17 39:5 43:20 47:3 49:18 55:10 77:20 79:18 80:12 80:20 81:2 81:10 81:10 82:20 82:21 85:7 85:22 86:7 86:11 87:12 88:4 91:16 92:5 92:6 92:11 92:19 92:20 93:15 93:16 93:22 94:1 94:13 94:16 94:23 100:13 105:10 106:11 106:12 107:23 108:2 111:14 112:4 114:5 120:1 120:2 121:13 122:25 125:2 125:13 125:16 125:16 125:17 126:5 126:12 128:23 128:25 137:24 139:18 139:21 139:24 140:2 140:5 146:23 151:20 162:4 162:16 168:13 170:7 172:3 | |
| **issue-by-issue**(1) 172:20 | |
| **issued**(3) 102:8 151:2 164:8 | |
| **issues**(32) 9:24 20:6 20:16 40:23 40:24 40:25 55:19 79:22 79:23 82:18 83:14 84:12 89:2 89:6 96:2 106:14 109:25 111:24 112:25 122:7 122:8 122:10 122:17 124:3 125:18 125:9 125:25 126:3 165:13 172:12 172:22 173:8 | |
| **it'll**(2) 148:21 173:16 | |
| **it's**(86) 48:8 49:18 50:15 51:12 51:22 52:4 54:4 54:5 55:12 55:15 56:12 56:23 59:2 59:16 60:19 61:4 62:25 63:1 63:2 63:23 65:6 65:17 65:20 67:3 69:21 69:24 69:24 69:25 71:15 71:16 74:9 75:8 75:10 75:15 76:13 77:20 80:21 80:23 82:5 83:17 84:20 85:1 85:15 86:14 87:7 87:21 91:19 92:10 92:15 93:21 93:25 95:15 96:11 96:14 97:11 100:13 100:14 148:17 148:19 148:22 150:2 150:9 151:4 151:24 152:1 152:2 152:16 152:24 153:3 156:3 158:22 158:25 163:6 163:15 163:20 163:21 163:22 163:25 164:4 164:5 164:18 164:19 164:21 164:25 169:25 172:17 | |
| **item**(2) 117:4 169:4 | |
| **iterations**(2) 74:11 74:18 | |
| **its**(40) 11:15 11:18 12:16 14:1 15:22 15:23 16:6 18:15 21:14 23:19 23:19 32:3 36:8 40:13 45:7 55:24 63:22 67:12 70:12 71:24 72:21 80:5 91:19 92:16 92:22 92:23 99:15 120:5 120:6 120:15 123:2 123:12 129:11 135:24 136:3 138:11 143:5 149:17 164:7 166:21 | |
| **itself**(13) 9:25 32:8 49:8 75:3 75:15 80:5 80:9 82:22 103:18 127:19 131:14 138:10 145:7 | |
| **it's**(82) 7:18 9:1 9:3 9:5 10:23 10:24 12:20 13:21 14:14 14:17 14:24 16:3 16:19 16:21 17:1 17:9 18:17 18:21 21:2 21:5 21:23 27:16 29:15 30:17 30:18 32:7 32:19 33:22 34:22 34:24 36:6 36:17 37:4 39:5 40:1 42:4 42:5 43:5 43:20 43:21 44:8 46:13 46:25 47:1 101:12 103:18 106:7 106:12 108:1 108:4 108:8 108:13 109:6 109:23 111:10 111:14 112:13 117:12 120:11 125:7 126:17 127:4 128:4 129:2 140:3 140:4 140:7 140:18 141:2 141:9 142:19 142:24 143:15 143:19 143:20 143:22 144:19 145:11 145:20 146:14 147:6 147:22 | |
| **i'd**(18) 9:7 11:10 14:14 26:7 26:15 26:21 32:8 39:23 41:6 105:22 107:5 107:22 108:9 108:21 113:5 133:4 145:9 148:10 | |
| **i'll**(23) 8:7 8:16 10:20 12:12 12:21 18:18 19:8 25:5 25:16 41:21 102:22 107:17 110:25 114:2 121:2 121:5 121:6 121:14 128:22 139:2 140:19 144:9 155:1 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| i'm(41) 8:17 12:20 12:23 13:15 16:15 19:1 20:4 22:20 24:17 25:25 27:5 29:17 34:14 34:16 34:22 35:21 37:9 39:13 44:19 104:15 104:15 105:4 108:20 109:15 109:17 111:23 112:9 113:1 121:13 124:16 127:7 128:25 129:16 134:10 137:3 141:10 141:16 141:19 141:21 142:21 143:7 | justification(4) 62:24 63:4 63:8 63:23 justify(3) 63:16 64:2 90:18 karen(1) 3:46 kasowitz(4) 5:51 44:16 105:3 140:23 katharine(1) 2:42 kaye(1) 6:4 keep(4) 25:19 50:18 125:11 168:25 keeps(1) 152:17 kempner(2) 3:45 6:31 | laughter(7) 44:23 65:3 65:9 67:5 85:10 111:17 140:13 | level(13) 14:11 15:3 16:21 20:9 20:11 22:2 24:1 25:4 64:8 75:20 92:15 101:9 102:6 levels(3) 28:18 35:25 92:11 leverage(1) 68:21 |
| | | | | launch(1) 29:1 laurie(1) 2:35 law(45) 5:51 10:17 10:20 11:17 13:5 22:18 22:24 33:5 33:6 33:23 36:4 36:18 43:9 43:17 44:16 48:2 48:25 54:11 67:14 69:20 69:21 69:24 70:5 79:6 90:1 90:3 90:5 91:15 91:17 92:3 100:11 100:24 105:5 120:18 120:20 132:18 138:3 145:11 145:21 145:23 147:20 153:16 153:18 155:3 163:2 | lexington(1) 2:29 liabilities(6) 129:8 141:4 141:6 142:7 142:8 144:4 libby(1) 6:28 lien(3) 71:14 145:15 145:18 liens(2) 145:13 145:14 lies(1) 94:15 light(1) 164:16 |
| i've(15) 17:19 20:17 34:15 36:19 37:9 39:14 104:14 111:12 121:12 128:21 129:16 129:18 131:9 131:11 131:13 | ken(1) 69:17 kennedy(2) 22:21 23:3 kenneth(1) 4:41 kept(1) 92:14 kerriann(1) 4:22 kevin(2) 1:17 1:32 | | like(51) 11:10 14:14 25:19 26:7 26:14 26:15 26:21 32:8 36:10 39:24 45:2 46:17 50:25 53:10 53:10 53:19 53:20 53:21 53:23 59:7 61:9 63:14 65:11 66:12 66:15 69:3 69:15 70:2 73:18 74:22 80:13 83:4 |
| j.p(2) 150:12 151:19 james(3) 1:22 3:13 4:18 jane(1) 6:5 jay(3) 3:20 42:11 jeffrey(1) 4:27 | key(6) 15:15 15:21 37:16 134:19 140:24 155:16 | lawsuit(1) 89:21 lawyer(2) 109:4 118:17 lawyers(8) 110:21 118:21 118:21 118:22 132:25 153:13 163:21 165:15 | 102:19 105:22 112:17 112:19 113:5 117:19 118:3 131:17 131:19 133:4 145:9 147:22 148:10 154:24 155:1 155:3 156:4 171:4 171:13 likely(1) 60:9 |
| jenner(3) 3:31 5:24 79:3 jersey(1) 5:14 jim(6) 7:4 41:8 81:8 105:19 168:17 173:5 jives(1) 73:7 john(1) 158:3 | kick(1) 140:2 killed(1) 54:8 kind(14) 14:7 17:22 17:23 18:17 24:7 30:23 40:7 45:4 47:4 47:4 47:8 74:23 102:8 127:2 165:6 kinds(1) 150:2 | lays(2) 82:7 87:7 90:1 layton(1) 2:20 lbo(5) 110:15 133:8 137:16 150:8 150:8 lead(4) 118:16 132:16 132:18 154:17 | likewise(2) 19:24 21:3 limited(2) 130:23 138:11 line(5) 19:1 58:2 90:14 138:21 169:16 line's(1) 21:5 liquidation(2) 71:16 78:7 list(4) 7:13 7:25 117:17 170:9 listed(5) 90:2 90:3 93:18 93:18 117:20 |
| johnston(15) 3:13 19:21 28:7 28:8 28:12 41:8 41:9 42:10 64:7 167:19 168:11 168:15 168:17 168:17 170:5 | king(3) 2:23 2:44 3:8 kjc(1) 1:4 klee(4) 69:20 70:1 75:7 75:16 klee's(1) 69:17 | leading(1) 83:8 least(17) 7:6 16:14 48:6 58:8 58:24 67:19 75:25 84:12 103:1 104:23 110:7 122:18 129:22 138:22 140:23 146:7 165:14 | listen(1) 151:11 lists(1) 117:17 literally(1) 56:4 litigant(1) 44:6 litigated(2) 71:16 78:7 |
| johnston's(1) 43:14 join(5) 41:10 42:13 80:14 105:6 167:3 joinder(1) 42:15 joinders(1) 78:4 | knew(7) 20:23 111:5 142:14 142:15 143:2 143:2 154:22 | leave(2) 167:23 168:11 leaving(1) 166:2 lebeouf(1) 41:33 leboeuf(1) 41:9 | litigation(15) 28:18 28:21 28:23 35:22 35:24 35:24 55:25 58:10 58:16 58:22 59:5 64:6 77:10 77:24 77:24 little(26) 12:21 14:8 18:18 20:19 21:8 |
| jointly(1) 1:5 joints(1) 34:3 jones(1) 5:20 joshua(1) 3:14 journal(1) 69:24 jpmorgan(2) 106:23 148:1 jpmorgan's(1) 146:15 | knoll(1) 41:3 know(57) 7:15 15:24 12:17 12:18 16:14 20:3 20:17 21:10 22:18 28:1 29:15 33:7 33:11 34:5 39:13 43:20 45:23 47:14 47:24 50:5 53:10 53:11 54:6 55:17 60:19 62:15 69:22 71:20 74:8 78:4 78:19 79:18 83:1 85:8 95:3 102:6 110:10 111:14 139:25 | led(1) 114:9 legal(9) 25:12 37:22 47:21 91:19 97:10 100:20 101:3 104:16 157:14 legislative(28) 22:13 22:14 22:18 22:23 23:7 23:9 23:10 23:13 23:21 23:24 24:1 24:6 24:8 25:10 25:23 26:6 38:3 45:5 54:10 54:21 56:20 58:4 58:6 60:24 61:11 61:14 75:9 75:16 | 26:8 26:8 26:21 34:21 36:11 34:15 41:18 43:8 51:4 53:7 68:24 74:1 74:3 94:12 94:25 95:8 129:11 130:3 133:16 144:9 149:22 live(2) 78:13 172:25 living(1) 59:13 llc(3) 3:25 3:41 5:35 |
| judge(16) 1:17 1:18 14:10 14:16 15:3 15:8 15:11 15:11 15:13 23:1 23:12 48:15 53:13 54:18 60:8 166:20 | knowledge(2) 144:20 153:14 known(2) 111:6 154:22 knows(2) 68:6 68:9 kovensky(1) 6:24 krakauer(2) 4:24 109:5 | | llp(11) 1:21 2:13 2:33 3:19 3:45 4:5 4:14 5:24 6:4 6:27 6:45 |
| judge's(1) 170:23 judgment(2) 16:19 16:20 judicial(2) 21:15 21:16 judicially(1) 21:9 | labeled(1) 30:6 lack(1) 134:12 laid(4) 88:21 89:8 102:12 102:12 | legs(1) 63:23 lemay(29) 4:9 9:15 9:17 9:18 14:24 16:12 16:24 17:2 17:5 17:9 17:14 21:12 26:18 41:7 41:16 42:6 43:13 43:22 45:16 48:7 49:14 49:19 50:16 54:5 57:21 58:3 69:13 78:19 78:25 | locked(2) 87:25 89:5 logical(5) 13:1 34:13 38:14 50:7 50:8 logically(1) 63:1 long(17) 12:10 13:18 21:2 21:5 22:20 24:10 25:23 37:9 40:22 69:9 76:20 81:3 113:2 126:4 128:2 133:2 139:2 150:5 |
| july(2) 116:21 143:10 jump(5) 14:17 35:4 39:6 94:24 164:4 jumped(1) 81:8 juncture(2) 80:19 107:6 june(4) 116:21 117:16 143:10 163:16 junior(21) 17:25 21:11 71:23 72:4 72:6 72:9 72:23 76:9 117:6 117:8 117:9 117:13 117:21 141:7 142:9 150:15 150:16 150:17 151:2 151:22 151:23 | language(46) 11:10 16:8 17:18 17:19 18:11 66:8 67:23 69:14 70:2 70:18 70:21 73:5 73:24 75:8 76:14 99:16 99:20 128:2 128:6 140:24 142:18 143:25 144:12 146:23 146:25 147:8 147:11 147:14 148:5 149:1 149:2 149:19 153:1 155:11 155:12 155:13 155:21 157:13 157:16 163:9 165:4 169:15 169:15 169:18 169:20 169:21 | lender(1) 9:21 lenders(2) 3:5 137:16 length(2) 33:10 114:16 lengths(1) 40:15 lengthy(1) 68:8 lent(1) 68:8 leonard(1) 1:38 | longer(3) 14:1 34:15 165:25 look(26) 26:7 29:9 31:8 31:9 41:16 41:22 43:7 43:11 45:2 48:2 49:8 49:9 50:10 53:22 56:9 56:15 61:4 62:20 62:20 63:2 73:15 75:23 78:16 85:2 85:16 87:3 88:3 92:25 93:3 95:10 101:8 109:3 117:3 126:6 126:14 127:25 135:7 140:15 140:25 142:16 143:14 143:25 144:6 144:15 144:20 144:3 144:23 146:24 147:5 147:9 147:22 148:2 149:21 149:22 150:4 153:22 153:24 156:3 162:1 164:21 170:24 |
| junior."(1) 150:16 jurisprudence(1) 12:2 just(124) 7:17 8:1 8:16 16:22 19:1 19:3 21:2 21:5 26:4 26:21 30:11 30:24 31:19 31:19 31:22 32:11 34:14 35:4 37:13 37:23 39:1 41:3 41:11 41:21 42:14 44:7 44:25 46:12 47:14 50:9 51:25 52:11 55:1 55:14 58:19 59:2 63:1 63:15 64:10 65:7 66:11 68:24 69:5 69:8 69:20 71:3 73:1 73:7 73:16 74:22 80:13 80:16 82:2 82:3 82:16 88:11 88:21 89:13 94:11 94:12 94:15 95:14 97:14 98:14 102:6 104:13 105:5 107:22 107:23 108:1 111:8 111:16 111:18 116:6 116:10 121:8 121:13 122:16 124:22 128:2 129:2 129:14 129:16 129:18 129:24 131:9 131:20 132:15 133:3 133:6 137:6 137:8 137:21 139:9 140:2 143:7 143:8 145:9 147:6 151:4 151:9 155:9 160:20 162:12 162:13 162:20 163:6 163:23 164:2 166:2 166:13 166:19 167:10 167:21 169:12 170:7 170:14 170:14 170:21 171:2 172:12 172:13 172:13 | lantry(1) 1:32 large(1) 148:22 larger(2) 60:16 122:14 larsen(3) 151:6 159:2 159:20 last(22) 29:3 29:6 34:5 39:15 40:11 62:23 77:7 77:8 78:15 93:22 102:7 105:20 106:12 109:9 116:22 140:5 140:9 161:25 163:14 165:20 170:8 lastly(1) 151:17 late(1) 40:22 latent(5) 145:8 145:17 145:18 145:21 145:24 | let(13) 8:3 10:22 19:10 21:1 34:22 50:18 69:16 92:5 93:3 140:8 146:5 171:24 174:2 let's(12) 52:11 63:13 65:10 66:6 68:23 72:15 80:24 95:2 149:21 153:2 171:16 173:11 letter(23) 39:2 78:23 108:19 109:4 113:5 114:25 115:2 115:18 150:24 163:15 163:16 164:6 164:9 164:13 164:15 164:17 164:19 164:21 164:24 165:10 165:13 165:17 172:1 | looked(2) 28:17 34:17 34:17 52:2 looking(9) 35:3 46:2 49:7 49:7 50:3 60:24 90:19 143:4 149:13 looks(3) 26:22 27:10 48:12 los(2) 1:34 3:16 lose(3) 66:9 66:10 69:7 loses(2) 28:7 28:10 loss(2) 55:11 62:6 lost(2) 82:15 100:1 |
| | later(11) 10:20 14:11 58:25 79:8 87:19 88:9 96:24 116:21 128:10 144:10 167:15 latest(1) 110:6 latham(1) 5:47 latter(1) 62:2 | letter's(2) 163:18 163:23 let's(14) 16:10 17:1 24:5 29:23 29:23 31:23 31:24 32:1 34:19 46:15 114:11 121:7 144:3 147:8 | |
| justice(6) 22:21 22:25 23:1 23:3 23:5 | | | |

TRIBUNE 3.6.12.DOC

| Word | Page:Line |
|------|-----------|

lot(19) 19:11 19:13 21:13 26:23 29:16 33:7 36:25 40:23 44:21 69:2 69:2 74:8 74:10 78:2 99:7 100:12 116:23 150:20 160:10

lot's(1) 66:7

lots(1) 51:4 85:9 88:12 142:16

low(15) 20:8 27:23 27:24 28:10 35:1 42:5 51:3 51:6 58:1 58:23 82:20 84:20 85:1 85:15 85:25

low/high(1) 28:2

lower(4) 36:22 52:18 116:15 116:15

ludwig(1) 4:23

lugano(1) 1:44

lynch(2) 2:33 6:4

made(30) 21:24 21:25 29:18 37:21 41:11 41:20 43:22 44:11 48:23 51:17 59:10 64:7 69:20 79:8 84:5 88:7 88:10 88:18 91:15 109:13 110:4 114:23 116:21 116:21 125:12 138:12 149:9 166:12 168:21 171:1

madlyn(1) 6:7

magnify(1) 33:5

main(1) 92:6

make(31) 8:1 17:18 41:11 41:23 43:24 53:24 57:5 59:20 62:23 68:23 71:12 80:13 80:16 84:10 84:24 85:1 85:13 89:13 104:14 112:24 114:5 125:22 129:15 129:17 129:19 130:3 132:11 132:21 148:12 149:8 150:1

makes(10) 11:24 16:4 19:6 73:7 111:24 121:9 130:10 146:8 149:20 152:5

making(12) 22:22 45:23 71:2 71:19 73:4 73:5 74:3 75:4 87:7 99:10 115:4 127:24

male(9) 156:15 156:20 156:23 157:25 158:2 158:8 158:18 158:22 159:24

maman(1) 5:10

management(8) 2:13 4:45 4:45 5:31 5:31 6:17 41:10 82:14

manipulation(1) 22:25

many(3) 85:18 88:11 111:16

mapping(2) 78:9 78:12

marc(2) 4:8 4:11

march(8) 1:13 7:1 114:19 115:1 118:9 150:6 150:25 174:11

mark(1) 170:13

marked(2) 112:15 170:10

markell(9) 23:12 23:15 23:21 34:6 48:14 54:10 54:18 57:3 57:17

markell's(1) 33:10

market(1) 1:10 2:37

marketplace(1) 71:13

markets(1) 68:5

marking(1) 7:9

marry(1) 167:4

marrying(1) 61:10

marsal(1) 5:35

martin(2) 2:5 138:15

massive(1) 31:2

material(11) 33:13 33:17 36:8 36:10 36:10 36:15 41:25 44:2 44:3 45:22 52:18

materiality(6) 33:17 33:19 34:1 34:2 37:13 37:24

materially(2) 46:4 46:5

materials(1) 170:16

matter(22) 7:6 20:5 20:6 20:9 31:19 43:5 71:16 77:9 78:10 87:23 90:4 93:17 94:19 101:10 111:19 124:15 125:19 139:9 139:19 143:2 155:18 174:8

mattered(1) 115:25

matters(4) 124:7 128:22 138:18 167:18

matthew(3) 5:32 5:35 5:36

mauro(1) 5:44

maximum(4) 25:14 30:25 36:13 39:25

may(26) 13:16 26:14 26:17 42:4 48:5 54:10 64:18 74:6 75:6 80:4 88:16 111:4 119:5 125:16 145:7 145:9 147:4 148:12 148:14 153:25 154:18 155:17 161:8 172:11 173:22 174:3

maybe(5) 24:7 34:15 40:21 64:24 156:12

mayer(1) 2:42

mcadams(1) 152:7

mccarter(2) 2:41 6:35

mccormack(1) 4:10

mcneill(1) 2:34

mean(14) 19:4 48:3 49:19 70:21 71:1 73:20 89:11 121:7 133:15 144:7 147:21 151:13 172:4 173:2

meaning(4) 16:3 23:19 154:13 155:14

meaning."(1) 154:12

meaningful(2) 77:11 78:1

meaningless(2) 17:18 36:6

means(15) 12:14 14:25 15:4 15:16 18:25 19:4 23:20 48:5 48:6 49:20 55:2 56:2 76:8

meant(3) 23:17 117:12 138:5

measure(3) 31:15 34:12 37:21

measured(2) 32:5 36:14

measurement(1) 54:12

mechanic(3) 67:23 68:3 68:14

mechanical(3) 21:18 22:5 22:9

mechanics(1) 72:19

mechanism(1) 47:8

medical(2) 152:8 152:8

meet(1) 40:6

meets(1) 13:6

meisel(1) 1:37

mention(5) 18:21 39:15 63:14 102:22

mentioned(14) 13:20 14:14 34:5 37:2 37:3 38:17 59:23 63:13 66:22 76:7 131:9 143:22 150:19 158:9

merrill(2) 2:33 6:4

messrs(1) 28:12

mester(1) 3:14

met(2) 11:3 52:7

methodology(1) 18:23

metric(1) 37:17

michelle(1) 5:10

middle(1) 45:19

might(13) 26:23 36:2 40:9 42:25 76:2 78:23 101:15 102:15 113:6 122:1 163:24 167:18 172:3

miles(2) 4:25 112:8

million(34) 28:20 28:23 30:1 30:7 30:10 30:11 30:11 30:12 30:22 32:1 32:24 32:24 36:5 36:9 43:15 46:1 54:5 54:6 60:16 60:17 60:18 63:21 77:9 78:1 86:17 86:19 98:3 104:17 104:24 115:7 115:21 115:22 134:24 151:1

millions(1) 47:12

mills(1) 4:22

mind(6) 17:23 20:15 25:19 143:8 161:3 162:19

minded(1) 24:5

ministerial(1) 86:11

minor(3) 20:11 21:25 40:10

minority(1) 70:10

minute(6) 25:17 47:23 49:11 78:22 88:25 152:25

minutes(3) 112:11 112:13 133:3

mirror(1) 24:13

misallocate(1) 59:17

misallocates(1) 46:10

misallocation(4) 45:24 46:13 46:25 59:8

mischief(1) 169:13

mistake(1) 116:15

mistakenly(1) 100:1

misunderstood(1) 12:25

mobile(2) 22:21 23:2

model(2) 108:8 139:22

modelings(1) 139:25

models(1) 140:2

modified(2) 98:22 100:3

modifies(1) 11:12

moment(13) 19:8 24:18 25:5 34:14 43:21 67:12 87:2 89:14 93:7 98:1 143:7 153:6 174:1

moments(3) 83:24 86:9 131:20

monetarily(2) 44:3 44:4

monetary(1) 44:10

money(11) 47:10 47:15 77:13 78:2 91:20 123:25 123:25 125:23 126:25 127:2 130:5

moneys(1) 79:14

monies(7) 122:20 124:12 126:20 130:8 130:12 130:16 130:25

montenegro(1) 5:52

montgomery(1) 163:3

moody(1) 150:24

moody's(2) 150:7 150:22

moody's(5) 114:19 114:21 114:25 115:2 115:18

moot(1) 91:24

more(38) 16:5 16:5 21:8 21:13 25:6 25:9 25:11 25:13 25:21 26:8 31:1 36:21 36:25 43:8 44:12 46:4 46:5 47:9 59:20 60:14 68:3 71:3 73:7 74:1 74:3 76:17 93:20 94:12 94:25 95:9 110:25 112:8 112:24 128:16 130:3 150:12 154:23 172:7

morgan(4) 2:20 6:27 150:12 151:19

morning(11) 7:2 7:3 7:4 9:17 41:8 42:11 44:15 64:20 82:12 110:6 138:15

most(14) 12:24 23:1 48:2 50:7 50:7 60:3 112:1 118:20 146:4 150:16 151:22 155:10 170:24 171:11

mostly(1) 64:23

motion(3) 87:12 89:4 93:1

motivation(1) 40:21

motivations(1) 40:13

move(4) 8:15 19:10 58:16 106:16

moved(1) 26:10

moving(2) 45:23 64:5

much(15) 23:10 31:1 31:21 40:1 43:9 58:18 58:18 60:16 72:9 84:21 118:22 131:12 148:20 163:6 172:18

multiple(1) 115:16

must(13) 11:22 11:22 13:22 13:24 71:6 71:7 71:7 71:8 71:8 71:9 103:23 154:14 164:11

myrick(1) 4:26

myself(3) 64:25 65:8 159:17

name's(1) 150:19

narrow(1) 91:6

nasd(1) 155:16

nation(4) 37:1 37:6 37:10 59:23

natural(3) 30:2 31:19 41:19

nature(3) 113:23 114:12 164:23

navs(1) 145:10

near(1) 169:16

necessarily(4) 27:4 77:19 99:21 128:14

necessary(14) 27:2 34:4 39:9 75:1 84:10 94:3 101:12 113:8 113:21 114:3 123:5 124:4 126:22 128:14

necessity(1) 125:4

misallocation(4) 45:24 46:13 46:25 59:8

need(33) 14:1 27:7 33:24 34:4 47:15 59:1 94:15 103:25 104:1 109:3 111:20 112:1 113:24 114:7 114:9 121:1 121:5 122:9 125:13 125:16 128:12 129:15 129:17 139:1 139:10 140:3 141:18 146:4 162:10 166:16 167:21 173:20 173:23

needed(2) 39:10 88:1

needing(1) 121:7

needs(8) 52:4 52:6 52:7 52:9 90:9 122:8 126:25 162:7

negotiate(3) 110:22 153:8 153:9

negotiated(7) 26:25 65:24 67:25 68:2 77:18 147:11 149:12

negotiating(4) 135:20 137:15 148:4 157:23

negotiation(5) 138:6 155:21 158:15 164:14 165:1

negotiations(3) 119:18 119:23 119:24 132:25 133:8 137:21 138:2 165:11

negotiator(26) 110:14 111:3 112:4 118:16 118:25 119:17 120:7 132:17 132:21 133:3 153:8 153:18 153:22 154:19 154:24 155:5 155:7 155:9 155:10 155:23 156:1 156:4 156:5 162:3 162:5 162:12

negotiators(1) 154:11

neither(3) 44:19 72:8 125:9

net(2) 28:20 28:23

never(15) 33:17 35:20 62:8 70:19 70:21 72:11 90:22 102:2 111:7 111:12 128:8 128:8 136:23 154:15 161:18

nevertheless(1) 24:4

new(14) 2:9 2:17 2:30 9:18 12:19 47:14 47:14 65:14 69:23 95:23 98:23 117:24 170:13 170:18

newspapers(3) 16:4 16:11 16:25

next(19) 8:15 8:20 8:25 28:4 28:7 45:11 106:24 107:3 107:14 108:6 108:16 126:6

nexus(1) 14:7

nice(2) 141:2 148:22

nichols(1) 152:10

nils(4) 151:5 158:9 159:2 159:12

nobody(1) 116:15

nobody's(1) 52:1

nobody's(2) 7:25 107:16

noise(1) 116:23

non(4) 7:11 13:5 48:1 132:5

non-bankruptcy(3) 13:5 57:5 70:5

non-controversial(1) 17:11

non-convertible(1) 132:6

non-debtor(1) 57:7

non-monetary(1) 44:10

non-subordinated(1) 49:25

non-substantive(1) 96:2

none(10) 9:11 60:5 63:4 63:5 104:4 108:25 114:1 129:3 137:17 137:19

nonetheless(1) 123:18

noon(1) 173:15

nope(1) 141:14

nor(4) 16:20 44:19 110:22 125:10

normal(3) 45:2 45:11 47:18

norman(1) 1:39

north(6) 2:23 2:37 2:44 3:8 3:27 58:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **not**(301) | | **notes**(49) | | **obligation**(12) | | **only**(67) | |

**not**(301) 7:17 10:16 11:6 11:8 11:18 11:20 12:2 13:14 13:18 13:22 13:24 14:14 14:22 15:20 16:13 16:18 18:4 18:6 18:12 18:17 19:14 20:11 20:20 20:22 21:2 21:22 22:20 23:7 23:10 23:20 23:21 23:24 26:2 29:13 30:17 31:10 31:15 33:4 33:16 33:18 33:24 34:7 35:21 36:3 36:17 37:2 37:5 37:19 37:19 38:17 39:12 40:1 40:2 41:7 41:25 42:4 42:19 43:5 44:4 44:7 46:6 46:13 46:13 46:22 46:24 47:14 47:19 49:19 50:4 50:8 50:13 51:8 52:16 52:19 52:24 53:2 54:4 55:11 55:14 55:14 55:15 55:23 56:3 56:19 57:5 57:8 57:18 58:4 58:5 59:22 60:12 61:14 61:20 62:11 62:19 62:21 63:1 63:23 64:16 64:22 66:2 67:13 68:21 69:16 70:9 70:10 70:15 70:16 71:6 71:17 72:16 73:2 73:5 73:25 73:25 74:9 74:24 74:25 75:4 75:6 75:14 75:20 76:4 76:13 76:21 77:4 77:19 78:4 78:10 79:16 79:17 80:9 82:15 83:10 83:11 83:17 83:20 83:21 84:7 86:11 86:17 86:18 87:1 87:12 88:10 88:11 88:12 89:17 89:19 89:22 89:23 90:2 90:15 90:17 90:23 91:1 91:21 91:24 92:3 92:16 92:19 93:18 93:24 94:17 96:6 97:5 98:10 98:13 98:16 99:1 99:9 99:13 99:21 100:5 100:13 100:14 100:16 101:2 101:3 101:11 101:12 102:15 103:25 103:25 104:1 105:2 105:5 107:4 108:20 109:15 110:2 110:5 110:21 110:21 112:22 113:7 113:11 113:21 114:3 115:15 116:1 117:14 118:18 119:7 119:24 120:11 121:20 122:9 122:24 123:9 123:10 123:14 124:1 124:21 125:1 125:15 125:25 126:7 126:9 126:18 127:4 127:5 128:6 129:1 130:11 131:1 131:4 131:18 132:8 132:10 132:23 132:25 133:7 135:2 135:10 136:18 138:1 138:22 138:12 138:19 139:6 139:18 139:19 140:7 142:2 142:18 142:19 142:21 143:16 143:21 143:24 144:19 144:19 144:24 147:17 148:7 148:11 148:19 149:23 150:9 151:14 152:9 153:1 153:3 153:8 154:4 154:14 154:17 154:23 155:20 155:24 155:25 156:2 156:5 157:20 161:16 162:3 162:5 162:11 162:21 162:25 163:6 163:7 163:18 163:20 163:23 164:15 164:15 164:18 164:18 164:19 164:21 165:10 165:13 166:15 166:7 166:11 166:17 167:4 167:7 169:17

**not**(4) 170:21 171:9 171:12 173:23

**notation**(1) 97:6

**note**(97) 7:10 8:1 12:12 29:1 35:23 36:18 79:5 82:16 82:22 82:23 83:1 86:25 87:2 87:4 89:9 89:11 89:15 90:4 90:12 95:7 95:15 96:7 98:21 114:22 115:5 115:8 115:15 115:20 115:23 115:24 115:24 116:1 116:13 116:14 117:6 117:7 117:8 117:8 117:13 117:14 117:22 117:24 127:12 127:12 130:3 131:17 132:4 132:13 132:19 134:1 134:6 134:17 134:19 134:20 134:21 134:22 135:1 135:2 135:9 135:13 136:16 136:16 136:18 137:23 140:17 140:21 143:14 143:16 146:19 146:20 147:21 147:25 148:1 149:1 149:9 150:15 150:17 151:1 151:2 153:11 155:4 157:9 157:18 157:21 158:11 158:11 158:17 159:4 160:6 160:9 160:10 161:3 161:11 162:17 165:8 166:7 170:1

**note.**(1) 142:10

**noted**(4) 7:24 23:23 126:1 126:7

**noteholder**(1) 11:14

**noteholders**(25) 10:3 21:18 22:12 22:12 24:11 24:23 25:24 27:19 27:20 29:25 30:7 30:16 32:13 35:5 35:12 35:15 35:17 40:12 45:14 46:20 50:21 51:11 53:1 77:17 95:25

**noteholders'**(5) 19:2 25:16 32:4 35:7 45:15

**notes**(49) 22:6 31:6 41:15 42:1 42:3 42:14 52:8 53:21 53:24 57:13 58:1 58:11 58:15 58:21 59:5 63:8 64:11 83:12 83:15 83:19 83:20 85:18 86:5 86:14 86:17 86:19 86:23 88:18 89:3 89:25 90:2 92:16 92:20 94:3 105:7 105:8 121:14 134:25 139:22 142:1 142:5 142:17 142:17 142:20 142:24 143:2 144:2 152:25 166:9

**nothing**(16) 38:21 54:17 66:23 71:15 89:1 89:6 93:20 93:20 103:6 103:11 103:16 104:4 104:19 104:21 129:23 149:4

**nothing's**(1) 64:1

**notice**(17) 87:16 87:17 87:19 87:20 87:23 87:24 94:17 96:12 96:19 97:4 97:17 98:15 98:23 99:15 100:18 101:10 104:21

**noticed**(2) 29:1 174:3

**notices**(3) 98:4 100:4 139:23

**notion**(1) 39:1

**notwithstanding**(45) 11:5 12:4 12:6 12:16 12:24 13:1 14:25 15:4 15:7 15:8 15:15 15:16 15:21 15:23 16:1 16:8 16:13 17:19 18:5 18:24 19:4 48:3 48:5 48:6 48:9 48:11 48:19 48:22 49:8 52:2 54:15 56:23 58:14 69:14 70:1 70:18 73:4 73:19 75:8 75:22 76:10 76:10 76:14 147:3 153:3

**novation**(4) 98:20 99:9 99:13 99:21

**november**(2) 88:5 147:10

**novod**(1) 2:7

**now**(76) 9:23 11:14 13:15 14:4 16:14 19:1 19:10 20:3 21:18 23:12 25:4 26:11 30:12 32:14 34:5 48:15 49:14 49:25 50:1 50:1 50:2 50:5 50:17 51:24 59:20 62:8 65:1 65:4 67:13 68:5 68:16 69:12 75:24 77:10 78:8 82:15 82:20 83:24 86:4 88:10 88:16 89:18 89:24 90:8 90:17 95:3 98:21 98:23 105:13 107:24 109:2 110:8 111:24 114:11 117:3 119:15 124:22 133:6 139:21 142:10 142:16 142:24 143:7 145:2 146:3 146:18 147:10 147:16 149:21 151:11 151:23 152:21 170:9 171:16 171:23 173:11

**nowadays**(1) 144:22

**nowhere**(4) 102:10 102:13 127:22 165:17 35:1 35:2 37:17 44:25 46:2 56:12 93:4 95:11 95:12 106:14 113:16 168:2 172:5

**numbered**(1) 82:19

**numbers**(8) 7:23 20:13 29:17 29:19 35:23 45:14 51:17 57:24

**numerical**(2) 24:7 28:15

**numerous**(1) 109:6

**nutshell**(3) 13:24 17:14

**o-t-i-o-s-e**(1) 23:17

**oaktree**(3) 41:9 168:17 173:9

**oath**(1) 119:6

**object**(2) 113:15 134:10

**objected**(8) 7:25 86:3 107:4 109:6 109:7 110:23 151:23 163:15

**objecting**(1) 110:2

**objection**(31) 8:4 8:7 9:8 9:12 14:6 81:16 81:20 85:23 106:19 106:22 107:2 107:9 107:12 108:3 108:7 108:11 108:14 108:21 108:23 109:12 109:14 116:9 134:3 135:5 135:14 135:14 135:17 136:5 157:25 158:8 159:24

**objections**(14) 9:6 81:13 106:18 107:16 107:18 109:11 109:15 109:19 110:8 138:19 138:23 138:25 151:17

**objective**(3) 138:9 164:18 164:19

**objectively**(2) 65:19 154:18

**objectors**(1) 60:5

**objects**(1) 107:17

**obligation**(12) 89:14 126:23 131:4 131:5 142:10 154:21 162:17 166:22 169:6 169:19 169:25 170:2

**obligations**(32) 116:16 116:18 117:10 124:8 124:14 125:24 129:8 130:7 131:16 139:16 140:25 141:1 141:4 141:5 141:7 141:20 141:21 141:22 141:23 142:2 142:3 142:6 142:8 143:6 143:12 143:14 143:24 144:3 151:14 169:1 169:7 169:23

**obligations"**(1) 116:14

**observations**(1) 39:1

**observing**(1) 65:19

**obstruction**(1) 15:17

**obvious**(2) 154:17 156:4

**obviously**(13) 33:3 34:8 36:11 37:4 53:17 114:5 116:24 124:21 125:18 138:18 142:15 172:6 172:19

**occur**(3) 25:15 87:22 122:19

**october**(1) 94:21

**off**(8) 23:18 35:4 42:3 45:1 48:15 64:19 124:19 174:2

**offer**(8) 9:7 81:14 90:5 107:5 107:17 108:10 108:21 112:2

**offered**(11) 7:13 60:5 63:5 63:5 64:1 107:23 108:20 114:13 133:2 137:17 138:1

**offering**(2) 113:18 114:18

**offers**(1) 152:22

**officer**(1) 97:19

**officers**(1) 3:41

**official**(2) 4:4 9:19

**often**(1) 71:3

**okay**(46) 7:21 8:3 8:10 8:24 49:22 50:15 62:1 65:6 66:22 67:4 71:15 80:18 83:6 85:4 85:11 87:6 101:18 105:9 105:13 120:17 121:24 125:5 134:8 135:19 141:25 158:24 159:8 159:14 161:17 167:20 167:23 167:25 168:5 168:15 171:7 171:8 171:14 171:16 171:23 172:24 172:25 173:2 173:11 173:18 173:20 173:25

**old**(1) 26:13

**olivia**(1) 5:44

**omit**(2) 169:19 169:21

**on-point**(2) 12:20 13:14

**once**(3) 20:15 40:12 87:24

**one**(144) 1:23 2:16 2:22 7:6 8:22 8:25 10:12 10:13 11:10 12:24 13:19 16:6 16:21 18:1 21:21 23:13 24:19 27:19 31:22 31:25 31:25 33:16 36:4 36:23 37:3 37:8 38:7 39:22 40:5 40:11 42:17 44:7 45:1 45:13 49:3 49:4 50:18 50:19 52:11 53:16 57:10 57:19 58:13 61:2 61:2 61:2 63:13 64:3 67:19 68:11 78:5 80:12 82:16 83:4 83:16 84:6 84:23 86:7 86:11 88:24 91:25 95:3 96:8 101:8 101:15 105:10 106:23 108:6 110:2 110:7 110:9 111:16 112:18 113:15 113:22 113:23 115:20 116:9 117:5 117:8 117:16 117:22 119:3 119:18 120:7 120:25 121:2 121:22 122:23 130:3 132:1 134:2 138:5 140:19 140:20 140:21 141:5 143:9 141:11 141:17 142:7 143:11 145:21 145:24 146:7 146:10 146:12 146:17 147:2 147:6 147:14 147:20 148:5 148:7 148:15 149:1 149:4 149:9 149:9 149:20 149:21 152:10 151:17 151:10 151:17 152:2 152:10 152:12 152:25 153:9 153:20 154:20 157:8 161:25 163:8 164:3 164:7 164:20 165:9 167:21 167:25 169:4 171:17

**ones**(1) 147:25

**onex**(2) 6:22 6:23

**one's**(1) 108:18

**only**(67) 10:16 12:25 15:24 15:24 18:10 18:10 18:16 26:19 27:19 27:20 28:19 28:25 32:20 32:20 35:10 35:17 51:10 52:21 53:4 56:21 57:2 57:8 57:10 57:10 57:18 60:15 61:1 61:2 61:6 63:20 71:6 71:7 75:6 75:18 78:10 90:11 90:20 99:18 101:12 102:24 105:4 107:1 111:25 113:14 113:19 113:23 114:6 117:4 117:9 119:2 119:8 120:1 120:21 122:14 123:25 124:15 125:12 127:14 128:25 129:5 137:23 148:7 152:4 152:12 152:22 153:12 165:10 171:20

**onto**(4) 65:1 65:4 78:8 80:20

**opened**(2) 118:7 171:25

**opening**(5) 24:11 29:14 62:12 62:12 128:1

**opinion**(11) 21:24 22:2 38:16 43:24 60:3 60:4 85:24 94:22 133:24 139:13 139:17

**opinions**(1) 22:19

**oppose**(1) 71:6

**opposed**(7) 20:13 31:21 35:8 51:13 53:13 56:22 72:19

**opposing**(1) 18:21

**opposite**(1) 53:18

**opposition**(1) 13:22

**option**(1) 87:8

**oral**(2) 110:11 160:2

**order**(15) 8:7 8:9 8:17 9:1 43:3 47:7 47:18 47:20 82:19 105:21 108:19 113:2 114:4 126:21 153:23

**orders**(1) 108:18

**order's**(1) 106:9

**ordinarily**(1) 15:19

**organization**(1) 137:4

**original**(3) 23:14 29:16 90:21

**originally**(1) 172:2

**other**(111) 9:2 9:2 10:13 11:2 13:20 14:4 15:10 17:16 18:20 20:7 21:22 24:2 24:20 27:21 28:25 29:5 30:25 31:20 31:25 32:21 34:9 34:25 35:10 37:3 39:16 43:12 45:10 45:18 45:20 45:22 46:3 46:6 46:8 46:24 47:1 47:5 47:6 47:9 49:4 50:3 50:22 52:2 52:10 52:12 52:21 52:25 53:18 54:23 55:4 55:13 55:14 56:7 58:11 61:21 66:18 67:1 70:11 70:18 71:10 72:15 73:7 77:5 84:25 89:6 95:5 96:21 99:6 103:22 103:22 106:7 109:2 117:16 119:16 119:20 120:4 120:4 120:9 125:18 126:8 129:1 130:9 130:17 131:9 131:25 137:21 141:4 141:6 142:19 143:16 144:3 146:15 147:3 152:10 153:15 154:6 154:22 155:11 156:2 156:6 156:11 157:3 159:21 160:14 160:22 160:23 161:5 162:12 165:11 166:2 171:17

**others**(8) 65:12 73:2 95:2 125:11 126:17 146:16 155:3 167:15

**otherwise**(15) 44:9 47:21 49:4 55:23 67:8 68:22 73:22 76:11 96:7 99:24 100:21 102:12 127:3 152:13 162:3

**otiose**(3) 23:16 23:17 38:2

**ought**(5) 74:19 74:20 101:5 102:19 121:4

**our**(85) 11:16 13:12 13:20 13:22 19:8 22:19 24:22 26:5 30:21 30:24 33:5 33:6 34:17 34:18 35:2 35:19 37:18 38:1 40:8 41:2 41:10 41:21 42:13 42:15 42:15 42:20 43:8 43:10 43:16 44:8 48:17 50:12 52:21 52:23 53:4 53:6 54:9 62:6 62:20 69:13 77:13 77:15 79:11 85:19 93:17 95:21 100:15 100:25 103:3 110:8 111:1 123:20 123:24 124:17 125:20 125:24 126:1 126:16 126:18 127:1 127:3 127:24 128:18 128:21 129:5 129:6 129:18 129:23 130:9 130:11 130:22 130:24 131:1 131:14 131:16 132:14 146:4 148:21 160:11 160:12 163:2 164:3 164:5 171:18 172:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

ours(4) 52:21 112:18 129:11 130:7

out(47) 9:1 12:19 19:12 20:5 21:7 21:16 21:23 24:25 28:2 29:11 35:16 36:23 37:1 37:16 39:23 41:22 49:16 50:19 50:24 64:10 66:21 75:3 78:9 82:7 82:19 84:7 87:7 88:21 89:8 90:1 91:15 95:1 95:25 96:10 98:15 102:12 102:12 103:20 112:8 122:2 128:11 128:12 139:22 139:23 143:23 151:1 171:21

outcome(11) 21:4 23:8 25:21 27:16 28:3 29:2 41:5 51:11 123:5 123:8 125:3

outcomes(5) 28:16 29:9 29:20 122:19

outset(1) 122:7

outside(3) 80:1 136:9 152:11

outstanding(4) 85:19 102:25 103:2 103:3

over(34) 16:5 29:17 30:15 31:2 34:10 46:20 68:10 71:5 71:8 71:9 79:21 81:22 82:10 93:10 97:17 97:19 97:24 103:23 124:13 125:24 126:17 126:19 127:2 130:12 130:16 130:20 148:17 152:20 168:24 169:6 169:9 169:14 169:23 170:2

overall(1) 144:15

overcome(2) 40:9 163:7

overcompensated(1) 62:4

owed(1) 130:8

owing(1) 91:4

own(5) 20:15 26:5 26:7 63:22 153:7

owner(1) 97:13

ownership(2) 96:23 104:19

p.a(1) 1:38

p.m(3) 105:15 105:15 174:4

page(21) 26:20 28:19 28:21 28:22 28:24 42:16 43:23 50:13 62:11 62:12 62:14 62:16 69:24 87:6 87:8 103:14 145:20 155:4 157:12 169:3 169:12

pages(11) 39:13 95:19 154:8 172:13 172:14 172:18 172:21 173:1 173:7 173:10 173:11

paid(20) 57:13 71:9 71:22 72:17 72:20 72:22 76:8 77:11 77:14 79:21 86:25 90:10 91:8 124:13 124:19 125:24 134:24 168:24 169:23 170:2

panel(2) 14:12 15:14

paper(6) 11:18 13:12 29:13 30:21 96:11 167:21

papers(13) 13:20 13:24 14:5 14:7 14:14 16:6 18:22 23:14 34:18 35:2 40:14 77:13 168:3

paragraph(10) 11:2 11:5 85:17 92:25 126:15 127:1 128:1 130:9 130:11 157:12

parallel(2) 144:1 144:20

parcels(1) 94:2

parent(19) 31:5 32:21 45:10 45:18 45:20 45:22 46:3 46:6 46:8 46:24 47:1 47:5 47:6 52:12 52:21 52:25 54:23 58:11 61:21

parents(1) 43:10

pari(15) 84:19 127:18 127:21 127:23 128:4 128:9 128:13 129:10 129:14 129:15 129:17 129:22 141:7 142:9 142:20

park(2) 2:16 3:46

parke(2) 4:5 9:18

parole(34) 106:20 107:2 109:13 109:25 112:2 112:24 113:8 113:14 113:19 113:23 113:25 114:9 114:12 114:13 114:17 116:4 116:22 116:25 119:3 119:3 120:21 128:24 129:2 129:3 129:5 130:1 131:10 145:2 145:3 145:8 145:25 146:3 146:10 148:6

parse(1) 66:8

part(14) 11:19 15:1 32:18 44:1 80:7 84:12 110:10 113:22 114:15 115:7 115:8 152:13 152:17 166:1

partial(1) 91:4

partially(1) 118:13

participate(1) 138:2

participating(1) 69:19

particular(21) 9:4 9:25 21:16 23:5 23:9 70:23 76:1 76:2 94:23 96:10 96:16 98:17 99:5 101:4 102:5 108:2 122:18 125:24 151:17 155:10 164:3

parties(66) 11:3 19:17 19:17 22:4 27:1 27:7 28:16 29:15 55:19 65:15 71:5 79:23 82:5 83:24 85:6 85:15 86:10 87:25 88:11 88:12 89:5 90:6 90:15 93:16 93:22 94:1 94:2 94:2 96:5 97:5 97:9 99:12 100:6 101:2 102:4 102:12 109:21 110:4 114:15 119:24 121:6 132:24 137:24 138:1 138:2 139:23 146:6 146:9 146:12 146:17 146:21 147:1 147:21 148:3 148:8 149:12 149:15 150:22 163:9 164:12 164:19 170:12 170:23 171:18 172:16 173:7

parties'(3) 29:14 47:20 101:13

partners(5) 6:23 6:23 6:31 6:40 6:41

parts(2) 115:7 166:2

party(28) 43:8 53:20 54:15 55:21 55:25 56:22 80:5 85:21 86:4 87:2 90:13 90:24 91:4 91:8 91:13 91:19 118:18 120:4 120:5 120:7 120:13 131:14 154:20 154:22 164:6 167:18 172:2 173:7

party's(1) 154:15

parver(1) 6:5

pass(2) 21:1 125:12

passu(15) 84:19 127:18 127:21 127:23 128:4 128:9 128:13 129:10 129:14 129:16 129:17 129:22 141:7 142:9 142:20

pate(29) 110:14 111:25 112:1 112:6 112:16 114:15 115:12 116:8 117:12 118:12 118:15 119:7 120:2 132:16 133:7 133:12 138:5 149:17 151:11 152:7 154:5 154:11 156:24 158:3 158:7 158:9 158:20 165:2 165:10

pate's(7) 152:24 153:2 162:19 165:7 165:14 165:19 170:10

pate's(6) 110:9 113:13 118:5 131:19 138:19 144:22

path(1) 65:11

patrol(1) 145:19

patton(1) 145:10

paul(1) 6:11

pause(2) 65:1 67:7

pay(14) 53:8 77:16 87:14 89:20 101:23 126:17 126:19 127:1 130:11 130:15 130:20 131:2 169:9 169:14

pay-over(9) 125:20 126:1 127:3 128:19 130:22 130:22 131:4 131:5 131:8

payable(1) 144:14

payables(4) 142:11 142:11 144:13 149:6

paying(1) 66:19

payment(15) 39:23 56:6 80:2 83:10 85:16 86:24 88:7 90:12 93:20 94:4 97:18 97:23 99:14 123:23 131:2

payments(8) 57:8 83:8 84:6 86:16 88:10 135:24 169:16 169:18

payout(4) 39:22 40:5 40:6 52:18

pays(1) 54:22

pending(3) 96:23 98:8 99:17

pennock(1) 6:13

pennsylvania(3) 1:48 37:2 60:2

people(25) 9:2 37:14 41:4 43:12 49:24 53:10 59:10 59:11 59:12 61:5 63:9 65:24 68:10 75:5 110:20 119:4 119:5 143:2 149:18 150:3 153:13 156:6 159:21 163:12 172:13

per(4) 98:22 100:3 120:11 173:7

percent(71) 22:5 25:5 25:9 25:10 25:11 25:13 25:14 25:14 30:12 30:17 30:19 30:25 31:3 32:6 32:14 32:17 34:21 34:25 35:1 35:7 35:8 35:9 35:12 35:13 35:15 35:16 35:19 35:20 36:15 36:15 36:21 36:23 37:17 37:25 38:2 39:21 39:23 39:25 40:5 40:5 42:18 51:20 51:21 51:22 53:6 53:6 53:14 53:14 55:13 56:19 56:20 56:21 57:21 58:2 58:4 58:5 58:9 58:11 58:12 58:15 59:3 61:12 61:19 61:19 62:21 63:7 63:18 63:20 72:21 72:25 76:16

percentage(18) 24:24 25:1 28:16 29:8 29:11 32:25 34:20 34:25 35:3 35:9 35:13 35:16 35:18 36:2 36:12 39:25 42:3 42:5

percentage-wide(2) 69:3 69:5

perfectly(1) 19:23

performance(2) 91:3 91:4

perhaps(6) 21:9 64:11 74:7 74:7 94:23 156:9

period(2) 102:18 138:9

permit(2) 11:19 34:3

permits(1) 12:5

permitted(1) 114:13

permitting(1) 17:24

pernick(1) 1:39

person(12) 9:15 101:14 103:14 103:23 106:22 120:1 132:18 138:7 149:16 152:5 158:5 158:15

personal(4) 7:14 132:22 133:24 134:11

personally(3) 156:24 161:11 172:17

perspective(8) 26:7 49:10 56:15 62:6 67:10 67:19 99:25 172:23

perspective."(1) 26:5

persuasive(1) 95:9

pertain(2) 122:14 129:1

pertains(2) 123:10 123:17 126:15 129:5

peter(1) 6:42

petition(17) 66:3 68:1 83:9 86:11 86:15 88:2 88:6 88:8 88:9 88:15 88:16 90:16 91:1 91:2 91:10 93:17 94:5

philadelphia(3) 16:4 16:11 16:24

phones(216) 19:15 20:8 27:24 28:2 28:11 30:3 30:6 30:14 30:15 42:2 42:5 51:3 51:3 51:6 51:21 58:1 58:23 64:11 77:23 81:10 82:21 82:23 82:24 83:7 83:15 83:19 83:20 84:17 84:19 84:22 85:1 85:1 85:15 85:18 85:22 86:1 87:3 87:9 87:11 87:15 88:4 88:18 89:7 92:12 95:6 95:11 95:16 96:9 96:16 96:22 96:22 96:24 97:2 97:5 97:14 98:2 98:4 98:9 98:13 98:17 98:21 99:4 99:9 99:14 99:21 100:1 100:2 102:2 102:3 102:8 102:25 103:4 103:4 103:8 103:22 103:23 104:10 104:12 104:17 104:20 105:8 106:12 112:19 114:1 114:14 114:22 114:23 114:25 116:2 116:3 116:16 116:22 117:15 117:18 117:21 117:21 119:10 119:20 119:24 123:1 123:3 123:7 123:7 123:9 123:15 123:19 123:20 123:21 124:5 124:8 124:11 125:3 125:5 125:10 125:13 125:19 125:21 125:23 126:10 126:23 126:24 127:5 127:7 127:11 127:13 127:15 127:19 127:23 127:23 128:5 128:7 128:8 128:9 128:10 128:19 128:20 129:2 129:12 129:12 129:14 129:19 129:21 129:24 130:14 130:15 130:25 131:1 131:2 131:18 132:1 132:2 132:11 133:14 133:16 133:17 133:20 134:2 134:7 135:1 135:4 135:13 136:16 136:18 137:19 138:4 138:12 138:17 139:11 141:12 142:14 142:17 142:17 142:17 142:24 142:25 143:2 143:17 143:19 143:21 143:22 143:24 143:25 144:6 144:8 144:19 144:21 144:23 144:23 146:11 149:10 150:10 150:15 151:3 151:23 153:2 156:16 156:25 157:7 161:3 161:12 162:17 163:13 163:18 165:3 165:5 165:16 165:23 166:3 166:9 166:17 167:1 168:18 168:23 168:24 169:25

phones."(2) 150:18 150:24

phrase(5) 12:7 13:8 53:12 53:12 104:16

phrases(1) 53:10

pick(1) 73:16

pickering(1) 5:39

picking(1) 53:1

pie(1) 46:19

piece(8) 16:5 17:15 59:13 96:11 116:22 119:16 145:13 167:21

pieces(2) 95:5 117:2

pin(1) 167:9

place(11) 16:19 29:17 33:20 33:21 39:13 75:17 95:3 105:6 109:9 133:9 140:11

plain(2) 16:16 142:3

plains(1) 3:22

plan(92) 9:21 9:22 10:5 11:3 11:4 11:5 11:6 11:16 11:22 12:5 12:16 13:6 17:20 20:20 20:21 21:20 22:1 24:13 27:14 27:15 27:16 28:15 28:20 31:5 31:24 32:4 33:22 34:3 34:19 34:20 34:23 35:9 38:11 38:20 38:22 38:24 39:9 40:10 40:18 40:19 40:20 41:19 44:13 45:13 45:21 45:25 46:7 46:7 46:10 46:13 46:17 47:1 47:5 47:22 48:10 48:25 49:8 49:9 49:12 50:21 50:25 51:15 52:14 52:15 53:17 53:17 54:8 54:22 56:7 56:24 56:24 56:25 57:13 58:10 59:8 59:16 59:17 60:6 63:6 63:10 66:12 66:14 66:23 70:12 70:14 72:1 72:7 74:13 75:11 75:18 76:11 84:14

plan's(1) 56:15

plan."(1) 13:7

plans(2) 12:9 46:17

plan"(3) 11:8 13:16 13:16

plate(2) 43:11 78:16

play(8) 15:1 15:1 110:10 110:12 111:20 153:6 153:16 156:12

playback(4) 133:12 137:13 156:14 161:24

played(1) 165:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **plays**(1) 110:12 | | **preparation**(1) 33:4 | | **property**(1) 145:14 | | **r-6**(1) 87:6 | |
| **plaza**(1) 2:36 | | **prepared**(3) 40:20 44:19 148:11 | | **proponent**(2) 11:4 53:17 | | **r-7**(1) 87:13 | |
| **please**(11) 45:12 57:23 66:16 67:7 69:16 | | **present**(4) 68:16 84:16 112:11 131:20 | | **proponents**(4) 9:22 33:22 75:11 75:19 | | **raised**(2) 122:17 125:9 | |
| 70:2 75:22 75:24 81:7 146:2 174:1 | | **presentation**(4) 43:3 78:4 78:14 86:9 | | **proposed**(2) 8:17 76:24 | | **raising**(1) 135:20 | |
| **pleasure**(1) 51:4 | | **presented**(7) 37:17 76:3 78:8 79:23 92:24 | | **proposes**(2) 37:8 46:7 | | **ram**(2) 119:1 120:12 | |
| **plenty**(1) 173:10 | | 94:13 163:8 | | **proposition**(10) 24:4 25:25 31:18 37:6 | | **rank**(6) 61:23 129:9 129:21 129:23 141:7 | |
| **plodding**(1) 12:21 | | | | 44:2 48:16 70:3 76:5 76:25 163:4 | | 142:9 | |
| **plus**(2) 30:8 44:5 | | **presents**(1) 79:22 | | **proprietor**(1) 157:14 | | **ranks**(1) 55:10 | |
| **podium**(4) 38:17 59:24 81:23 82:10 | | **preserve**(1) 86:2 | | **prospective**(2) 33:18 62:20 | | **rare**(1) 150:2 | |
| **point**(64) 9:7 16:4 19:12 21:25 22:22 36:4 | | **preserves**(1) 26:4 | | **prospectus**(7) 95:6 102:9 102:9 102:13 | | **rata**(5) 123:3 123:13 123:20 128:19 169:6 | |
| 37:16 38:5 38:23 40:11 41:20 42:15 42:16 | | **presume**(1) 68:7 | | 102:14 166:14 166:15 | | **rate**(1) 150:7 | |
| 43:4 43:14 44:7 44:8 50:25 62:23 64:6 | | **presumption**(14) 33:14 33:15 38:6 38:8 | | | | **rates**(1) 101:10 | |
| 64:9 67:18 78:3 78:14 80:22 82:3 82:16 | | 38:10 39:11 39:12 39:19 40:9 54:19 62:24 | | **protected**(4) 10:7 12:3 79:24 80:8 | | **rather**(5) 7:17 26:3 103:17 104:1 168:3 | |
| 83:25 85:5 87:7 89:23 89:23 90:3 91:25 | | 63:2 63:3 63:4 | | **protection**(2) 14:2 74:25 | | **rational**(1) 52:2 | |
| 93:9 93:12 95:17 96:24 101:4 101:7 | | | | **protects**(1) 70:15 | | **rationale**(2) 13:13 38:14 | |
| 101:11 102:7 102:22 103:20 105:4 115:3 | | **presumptive**(1) 33:9 | | **provide**(3) 23:24 87:11 94:24 | | **re-argue**(1) 126:17 | |
| 115:8 115:18 115:25 127:25 131:10 133:6 | | **pretty**(11) 17:10 29:8 61:4 63:22 65:5 | | **provided**(5) 46:14 87:2 96:11 117:17 | | **reach**(7) 18:9 64:9 94:20 96:3 101:24 | |
| 136:25 139:1 148:12 148:21 158:19 163:14 | | 65:6 65:17 139:5 163:21 167:7 169:24 | | **provides**(14) 34:19 34:20 34:23 36:13 | | 125:16 128:23 | |
| 164:3 164:6 165:20 170:7 173:7 173:17 | | | | 38:14 39:9 46:21 51:15 76:11 84:2 84:15 | | | |
| | | **prevail**(2) 28:3 35:14 | | 85:17 88:3 128:4 | | **reached**(3) 25:2 95:1 95:22 | |
| **pointed**(5) 50:24 75:3 84:7 89:13 95:20 | | **prevails**(7) 19:17 19:19 27:22 28:5 28:8 | | | | **reaches**(1) 84:17 | |
| **pointing**(1) 69:13 | | 35:11 38:1 | | **provision**(13) 17:21 90:23 126:18 130:22 | | **reaching**(1) 126:5 | |
| **points**(7) 41:12 42:3 42:6 59:22 77:7 77:8 | | | | 143:20 144:1 144:20 148:9 151:16 161:15 | | **read**(17) 10:22 12:21 16:9 33:6 47:25 | |
| 84:6 | | **prevention**(1) 15:17 | | 161:19 161:22 165:6 | | 48:7 62:15 67:19 70:1 94:22 128:2 148:24 | |
| | | **previous**(1) 102:3 | | | | 153:6 154:3 161:11 161:16 166:16 | |
| **policy**(3) 33:21 164:7 164:8 | | **price**(1) 95:16 | | **provisions**(17) 13:10 19:15 73:8 74:9 | | | |
| **polk**(2) 2:27 6:27 | | **primoff**(1) 6:7 | | 74:11 89:13 131:8 131:9 145:15 146:17 | | **reading**(18) 13:1 15:24 15:25 16:17 17:15 | |
| **portion**(2) 112:5 123:21 | | **principally**(1) 132:25 | | 147:2 147:3 156:16 158:13 159:6 160:4 | | 27:6 48:18 50:7 50:8 75:25 141:11 141:11 | |
| **posit**(2) 69:11 76:23 | | **principle**(13) 65:13 65:16 65:21 66:5 86:9 | | 162:4 | | 141:14 141:16 141:17 141:24 142:1 150:1 | |
| **posited**(1) 69:15 | | 101:1 147:19 154:19 154:19 154:24 155:8 | | **provision"**(1) 14:3 | | | |
| **position**(23) 17:11 30:24 42:14 54:9 80:14 | | 155:9 156:9 | | **public**(1) 116:19 | | **readings**(1) 50:9 | |
| 85:19 87:21 88:20 89:1 90:21 93:17 93:23 | | | | **publish**(1) 7:17 | | **reads**(2) 15:5 21:23 | |
| 94:14 95:10 95:12 98:19 98:24 100:8 | | **principles**(1) 93:15 | | **purchase**(2) 98:25 99:3 | | **ready**(2) 8:14 121:16 | |
| 100:16 105:7 113:21 119:25 163:17 | | **print**(1) 148:22 | | **purchased**(1) 134:17 | | **real**(4) 100:16 102:20 125:17 165:14 | |
| | | **prior**(6) 30:6 31:6 51:1 85:3 88:2 147:11 | | **purely**(1) 27:12 | | **realize**(4) 34:15 43:9 59:5 97:8 | |
| **positioned**(1) 85:13 | | **priority**(26) 18:3 20:24 20:25 21:9 33:12 | | **purportedly**(1) 31:13 | | **realizing**(1) 56:19 | |
| **posits**(1) 92:6 | | 46:22 48:13 48:16 49:1 52:9 52:10 52:12 | | **purpose**(5) 9:20 52:3 163:5 163:6 165:19 | | **reallocate**(1) 68:19 | |
| **possession**(4) 89:3 96:20 98:2 104:23 | | 54:21 55:18 55:21 57:3 57:4 57:5 75:2 | | **purposes**(12) 15:10 16:1 44:17 47:2 49:14 | | **reallocated**(3) 80:8 123:14 123:22 | |
| **possibility**(2) 56:2 123:16 | | 106:11 115:24 126:12 134:1 134:6 134:20 | | 50:5 58:19 58:20 84:4 108:2 125:20 | | **reallocation**(2) 80:9 124:2 | |
| **possible**(4) 20:14 30:13 34:13 123:8 | | 134:23 | | 134:18 | | **really**(36) 14:5 17:10 20:12 23:7 23:10 | |
| **possibly**(5) 30:15 32:7 33:2 40:1 40:9 | | **private**(1) 154:7 154:10 | | **pursuant**(3) 98:4 133:2 171:22 | | 29:9 31:14 38:19 40:1 41:1 43:12 50:8 | |
| 64:2 145:6 | | **pro**(5) 123:2 123:12 123:20 128:19 169:6 | | **put**(29) 7:18 10:18 13:23 15:4 27:16 33:7 | | 59:2 65:2 66:8 66:9 67:23 68:23 69:12 | |
| | | **probably**(7) 10:23 22:25 78:22 82:4 | | 42:15 44:24 44:25 47:9 51:16 57:23 59:24 | | 69:14 71:12 72:9 77:6 77:9 78:15 92:2 | |
| **post**(1) 102:16 | | 105:11 107:4 139:3 | | 59:24 63:9 68:18 83:25 86:2 94:16 95:2 | | 101:20 110:12 112:14 122:8 124:22 128:22 | |
| **post-hearing**(2) 167:9 171:24 | | | | 106:4 122:7 125:9 130:14 137:14 140:23 | | 130:1 139:5 159:23 172:3 | |
| **post-petition**(2) 64:12 74:24 | | **probative**(1) 116:7 | | 149:10 163:24 164:24 | | | |
| **pot**(1) 80:8 | | **problem**(4) 11:24 47:16 61:24 66:9 | | | | **reason**(13) 19:5 21:24 64:4 93:21 100:7 | |
| **potential**(6) 84:24 117:5 122:9 122:16 | | **procedural**(2) 7:6 96:2 | | **puts**(1) 21:15 | | 115:13 126:15 131:6 131:6 137:20 137:21 143:25 | |
| 123:4 172:7 | | **procedure**(1) 85:23 | | **putting**(1) 30:14 | | 165:16 166:7 | |
| | | **procedures**(12) 15:19 91:3 93:7 95:18 | | **qjust**(1) 160:21 | | | |
| **potentially**(2) 68:17 113:24 | | 95:23 96:1 96:4 96:4 96:8 98:5 98:23 | | **qualifies**(1) 123:1 | | **reasonable**(2) 47:21 154:18 | |
| **potter**(1) 2:33 | | 102:11 | | **qualify."**(1) 11:20 | | **reasonably**(2) 87:16 131:16 | |
| **power**(1) 100:17 | | **proceed**(2) 112:23 121:8 | | **quality**(1) 42:21 | | **reasoning**(1) 5:23 | |
| **ppearances**(3) 1:20 2:1 3:1 | | **proceeded**(1) 146:18 | | **quantification**(1) 25:2 | | **reasons**(15) 35:21 37:24 38:20 39:7 41:13 | |
| **practicable**(1) 87:16 | | **proceeding**(2) 39:4 137:24 | | **quantum**(1) 99:11 | | 42:6 99:11 110:9 119:10 129:16 129:18 | |
| **practical**(1) 23:20 | | **proceedings**(3) 1:16 1:52 174:8 | | **question**(24) 23:22 36:16 74:2 80:4 83:23 | | 131:25 134:8 140:1 145:24 | |
| **pre**(2) 65:23 102:14 | | **proceeds**(12) 27:12 28:24 30:2 30:8 30:12 | | 84:11 101:21 125:4 125:6 128:17 128:22 | | | |
| **pre-bankruptcy**(4) 67:25 68:2 68:13 68:19 | | 45:25 80:9 122:24 123:4 123:13 123:18 | | 136:17 136:18 139:20 143:5 150:6 150:11 | | **rebut**(4) 38:7 39:19 40:9 63:4 | |
| **pre-dates**(2) 116:4 116:8 | | 124:24 | | 154:1 158:20 160:25 161:6 162:18 164:13 | | **rebuttable**(1) 63:3 | |
| **pre-petition**(3) 70:24 86:21 90:25 | | | | 170:17 | | **rebuttal**(2) 78:20 173:8 | |
| **pre-subordination**(1) 32:14 | | **process**(6) 18:9 44:7 44:8 87:22 134:11 | | | | **rebuttals**(1) 172:1 | |
| **pre-trial**(1) 106:1 | | 162:11 | | **question-begging**(1) 36:7 | | **rebutted**(2) 33:15 38:7 | |
| **preacher**(1) 10:14 | | | | **questioning**(1) 138:21 | | **recall**(15) 88:17 113:20 130:13 134:8 | |
| **precaution**(1) 7:15 | | **produced**(1) 1:53 | | **questions**(8) 10:12 41:6 64:15 77:8 78:17 | | 135:19 135:23 136:2 137:6 137:11 140:16 | |
| **precede**(1) 148:1 | | **professor**(12) 23:2 23:15 23:21 33:10 | | 105:1 118:11 138:20 | | 143:9 159:16 159:16 159:17 160:7 | |
| **precedent**(3) 77:1 99:22 104:10 | | 48:14 48:14 54:10 57:3 57:17 69:20 70:1 | | | | | |
| **precedential**(1) 65:5 | | 75:16 | | **quicker**(1) 158:25 | | **receipts**(1) 30:7 | |
| **precisely**(3) 57:10 79:10 118:6 | | **progress**(1) 29:18 | | **quickly**(5) 42:14 94:8 95:14 106:15 167:17 | | **receive**(26) 30:7 44:12 57:8 68:10 72:12 | |
| **precision**(1) 28:15 | | **prohibit**(1) 123:24 | | **quiet**(1) 12:21 | | 72:14 72:18 72:23 75:13 83:11 91:2 97:16 | |
| **preclude**(2) 10:5 16:7 | | **promise**(1) 12:21 | | **quite**(5) 75:2 140:7 148:11 148:19 150:9 | | 97:21 104:11 122:20 123:12 123:14 126:19 | |
| **precludes**(1) 11:15 | | **promised**(1) 83:10 | | **quote**(15) 11:9 19:1 22:20 24:10 24:18 | | 126:25 130:12 130:17 130:18 130:23 | |
| **predecessor**(1) 95:22 | | **promissory**(2) 151:1 157:9 | | 25:24 36:8 48:22 61:13 70:2 76:19 98:1 | | 130:24 131:2 148:14 | |
| **predicate**(1) 82:7 | | **promptly**(1) 104:3 | | 128:2 141:3 154:9 | | | |
| **predicated**(1) 95:19 | | **pronounced**(1) 23:16 | | | | **received**(9) 31:4 63:17 79:21 85:8 99:19 | |
| **preferred**(4) 31:12 32:20 32:21 62:17 | | **pronunciation**(1) 23:20 | | **quote/unquote**(1) 102:25 | | 103:25 169:20 169:22 172:19 | |
| **prefers**(1) 113:2 | | **proof**(2) 86:2 92:1 | | **quoted**(6) 25:24 77:13 99:15 99:20 110:16 | | | |
| **preliminary**(4) 131:12 138:18 139:8 139:19 | | **proper**(8) 51:22 54:12 56:12 57:15 75:25 | | 154:2 | | **receives**(3) 24:15 24:15 76:2 | |
| **premise**(2) 113:7 166:13 | | 81:11 83:17 83:23 | | **quotes**(1) 48:20 | | | |
| | | **properly**(3) 57:1 92:7 154:13 | | **quoting**(5) 12:23 13:15 25:25 150:9 155:6 | | | |

TRIBUNE

| Word | Page:Line |
| --- | --- |

receiving(5) 55:14 55:15 103:18 123:25 130:25

recently(2) 154:9 167:6
recess(5) 81:5 81:6 105:13 105:14 105:15
recite(2) 27:8 33:10
reclaim(1) 91:8
recognize(1) 145:2
recognized(2) 79:10 79:11
recollection(2) 134:5 136:14
reconcile(1) 145:13
reconsideration(2) 139:13 139:17
reconvene(1) 105:14
record(18) 8:1 8:4 38:15 38:25 80:17 82:13 83:21 83:25 85:12 93:5 96:16 103:11 103:16 103:17 105:6 152:1 170:15 174:3
recorded(1) 1:52
recording(3) 1:52 171:19 174:7
recordkeeping(6) 86:12 89:2 92:11 92:12 92:14 93:13
records(7) 84:3 86:13 93:10 97:3 100:5 106:18 109:11

recover(5) 54:13 64:7 83:19 86:5 89:22
recoveries(33) 28:18 28:21 30:8 35:2 35:24 36:1 41:20 48:12 50:18 53:21 54:15 58:10 58:17 58:17 58:22 59:6 64:6 79:15 80:7 123:11 124:10 124:12 124:23 126:6 126:10 126:13 135:16 135:21 135:25 136:6 136:22 139:12 139:14

recovering(2) 52:16 52:17
recovery(44) 29:4 29:6 29:7 30:2 30:10 31:10 31:11 31:12 32:14 32:19 34:21 34:24 35:7 35:8 35:12 35:15 35:18 45:5 45:7 45:18 47:7 47:15 49:12 49:21 52:20 53:5 55:11 55:13 55:25 56:2 56:22 58:12 62:17 62:18 62:22 63:7 64:5 77:23 108:9 122:13 122:14 123:21 136:3 169:3

reduced(5) 63:20 63:21 99:2 99:5 101:5
reduction(2) 45:22 102:2

refer(6) 35:3 117:14 153:1 154:1 154:25 163:25

referred(4) 23:12 83:24 96:13 150:25
referring(1) 83:1
refers(3) 23:22 117:8 143:13 143:16
reflect(2) 103:9 164:11
reflected(5) 30:4 30:5 97:3 99:24 118:9 150:11

reflecting(2) 99:21 99:22
reflects(3) 115:2 152:20 166:17
refused(1) 89:20
regard(4) 8:2 16:9 146:20 160:3
regarding(9) 83:14 108:19 136:24 137:7 137:11 152:11 158:10 159:3 160:8

regardless(2) 87:21 138:24
rejected(1) 60:6
relate(2) 82:18 106:14
related(2) 101:4 122:1
relates(5) 9:20 113:25 114:1 126:13 128:7
relating(2) 7:11 82:9
relationship(1) 135:12
relative(3) 134:1 134:5 134:23
release(1) 155:17
releases(2) 43:24 63:19
relevance(4) 106:19 107:2 112:24 117:5
relevancy(1) 109:12
relevant(13) 9:3 17:10 27:5 81:11 82:20 84:1 114:6 138:23 146:21 148:7 149:14 149:20 168:21

reliable(1) 23:7
reliant(1) 68:8

rely(2) 72:16 102:25
relying(2) 13:24 73:1
remain(6) 8:9 39:1 45:20 102:3 173:8
remains(1) 33:1
remarkably(1) 67:18
remarks(1) 168:12
remedies(1) 151:10
remedy(2) 91:19 91:20
remember(3) 56:23 63:13 77:22
remind(2) 43:16 80:13
remove(1) 92:23
removed(1) 92:16
removes(1) 13:9
rent(3) 14:23 14:24 48:21
rentals(4) 154:6 155:8 155:15 162:2
reorganization(4) 12:9 38:14 39:18 70:4
repeat(3) 55:1 138:19 162:13
repeated(1) 28:22
repetitive(1) 64:22
replace(1) 100:2
replaced(2) 95:20 98:24
replaces(1) 117:25
replies(2) 14:5 14:8
reply(10) 14:7 18:15 24:22 31:4 39:16 39:20 42:13 43:8 59:24 152:3

report(11) 24:14 24:16 24:20 25:3 26:1 36:23 107:16 107:19 107:25 159:20 161:18

reported(1) 14:16
reporter(2) 14:16 14:19
report's(1) 25:20
representation(1) 116:20
representative(1) 132:21
represented(3) 116:18 116:19 122:22
represents(3) 82:23 122:13 138:10
request(6) 11:4 67:13 88:18 88:23 100:18 102:15

requested(1) 83:7
require(3) 21:19 129:12 130:11
requirement(5) 11:13 33:19 34:1 34:2
requirements(3) 11:1 11:5 13:7
requires(4) 11:17 13:2 13:10 20:20
rescind(1) 92:2
rescission(12) 89:22 90:18 91:11 91:13 91:18 91:20 91:24 99:7 100:9 100:9 100:14 104:8

researching(1) 23:19
reservations(1) 27:2
resist(1) 40:12
resolution(3) 34:13 125:2 125:8
resolve(3) 20:13 114:4 125:4
resolved(6) 20:15 25:16 28:3 83:16 85:7 139:1

respect(27) 7:11 7:16 11:3 11:7 20:5 20:7 43:15 43:19 93:23 106:18 106:21 106:22 107:23 109:11 109:14 110:15 116:12 124:4 124:10 124:11 135:24 136:3 139:12 139:14 163:18 169:19 170:11

respected(1) 11:17
respectfully(2) 76:23 78:11
respects(1) 78:5
respond(1) 112:1
responded(1) 150:15
responding(1) 150:3
response(15) 8:6 9:10 22:11 22:12 81:18 81:19 88:23 97:12 107:11 108:12 108:13 108:24 150:12 151:8 152:21

responses(1) 121:19
responsible(2) 101:6 101:15
rest(3) 73:23 153:6 172:15
restore(1) 90:20
result(6) 24:10 32:7 90:23 91:21 126:15 128:18

resulted(1) 91:21
results(1) 34:13
retiree(6) 32:10 38:12 38:12 38:18 38:21 39:8

retirees(14) 3:19 7:12 32:15 35:5 35:14 42:12 43:25 44:3 50:22 63:6 63:15 77:18 84:13 138:4

retiree's(4) 38:23 38:25 39:18 43:20
returned(1) 102:5
reverse(2) 97:15 165:4
review(4) 43:22 69:20 69:21 112:22
revolved(1) 160:11
richards(1) 2:20
rifkind(1) 6:11
right(62) 7:8 8:13 8:19 8:21 9:16 10:11 17:2 17:5 17:17 18:1 18:2 19:23 19:25 20:1 25:12 27:18 27:25 31:22 31:23 32:7 33:2 39:23 48:23 53:5 53:8 62:1 77:10 78:12 78:13 82:11 84:9 84:17 84:18 86:16 86:17 87:10 88:6 89:11 94:4 95:11 95:24 100:13 101:11 101:16 105:9 105:23 106:6 108:4 120:24 121:11 122:6 124:18 127:4 130:8 136:3 137:1 140:10 142:2 159:5 167:2 168:22 170:9

right-hand(3) 59:2 59:11 59:13
rightly(1) 75:3
rights(43) 10:6 11:25 37:9 47:21 50:3 52:22 53:4 54:16 55:23 55:25 58:13 59:15 65:23 65:25 68:2 68:13 68:20 68:25 69:8 70:12 71:21 71:24 72:5 73:2 73:21 75:5 75:14 77:4 77:14 86:2 86:10 86:14 86:18 88:14 89:5 89:19 89:21 89:24 93:16 93:19 125:20 135:24 151:10

rights"(1) 19:3
rise(8) 20:11 22:1 81:7 105:16 145:7 145:17 145:22 168:20

risk(2) 102:14 102:21
robert(3) 2:6 64:20 94:9
rodney(3) 2:22 3:7 6:36
rogers(1) 5:6
roitman(1) 4:11
role(4) 44:8 103:12 112:24 150:13
romanette(1) 169:5
ronald(1) 1:27
room(1) 43:5
rosner(18) 10:11 27:22 43:20 44:15 44:16 44:24 48:4 56:13 64:17 64:25 69:15 80:14 105:3 105:3 172:17 172:25 173:3 173:6

roth(1) 3:45
roughly(2) 57:14 133:23
round(1) 37:2
round-tripping(1) 130:5
roundabout(1) 23:16
rounds(1) 37:3
row(1) 26:20
royal(2) 5:4 5:5
rubbish(1) 40:12
rudnick(5) 2:4 6:45 64:20 94:10 138:16
rule(29) 18:1 18:2 18:3 20:24 20:24 20:25 20:25 21:9 21:13 26:3 75:2 78:20 78:24 111:3 111:9 111:12 118:25 119:17 120:7 133:3 138:24 153:18 155:5 155:23 156:1 156:3 162:5 162:13 171:22

rules(4) 16:22 68:15 78:10 142:22
rummaging(1) 41:2
run(3) 24:5 47:15 95:14
running(1) 88:8
runs(2) 53:6 59:4

said(60) 15:4 15:11 16:6 18:15 20:21 22:9 25:8 36:4 36:9 36:15 43:13 43:20 48:14 48:23 49:14 57:14 57:15 57:17 57:21 58:5 60:9 63:21 66:10 74:16 76:12 80:16 84:10 85:8 85:14 85:24 88:19 94:12 94:14 95:2 110:9 111:2 116:17 119:19 130:18 136:14 138:22 139:10 139:10 140:1 143:3 143:10 144:25 145:16 147:8 147:16 150:25 151:8 151:9 154:2 155:22 162:13 162:16 162:24 165:2 165:22

sale(5) 91:7 99:3 99:4 99:8 100:9
same(58) 13:4 13:13 15:22 25:2 28:17 28:22 28:23 28:24 32:13 32:15 32:19 33:1 33:12 45:15 45:20 48:1 49:4 49:17 49:21 50:11 50:15 54:20 56:8 57:12 57:24 59:4 59:4 65:7 65:11 70:4 83:19 93:23 93:25 106:8 115:2 126:15 127:16 135:14 139:20 140:22 145:1 145:13 146:1 146:16 147:2 147:8 148:5 148:8 149:19 151:20 154:5 155:15 162:15 163:9 163:25 165:5 165:6 166:7

sanctions(1) 90:23
satisfactory(1) 74:9
satisfied(2) 112:9 114:12
save(3) 44:21 78:23 121:18
saving(1) 153:20
saw(2) 39:16 153:3
say(92) 8:16 10:7 11:20 15:15 16:11 16:13 16:18 18:24 20:22 20:25 21:4 22:16 24:13 26:19 31:3 31:7 32:2 36:7 36:22 37:22 39:11 39:17 42:20 44:4 46:15 48:24 49:24 53:21 53:23 54:4 54:5 54:6 59:21 61:4 61:5 61:9 61:10 62:25 65:1 69:8 69:16 71:3 71:6 71:24 72:7 72:17 72:19 73:19 73:21 86:1 86:21 89:11 90:12 101:11 102:17 110:10 116:16 119:21 126:24 127:4 127:11 127:19 127:20 128:10 128:16 129:3 129:23 130:6 131:18 133:13 139:4 142:19 143:10 143:23 144:2 144:19 144:24 151:12 152:5 153:17 154:13 154:23 154:23 157:2 160:21 162:14 165:8 169:9 172:8 172:12 173:14 173:15

saying(17) 16:15 19:16 30:24 31:14 37:14 48:7 48:9 49:15 57:25 67:14 68:1 69:13 97:20 125:14 132:23 150:3 154:7

says(66) 11:18 11:21 12:23 13:15 15:6 15:7 15:9 15:25 21:2 21:5 24:14 40:3 47:25 48:15 49:19 50:6 54:18 54:22 55:3 57:3 57:12 61:20 61:20 62:1 67:7 67:13 71:15 71:20 71:21 72:4 72:5 72:22 73:24 76:7 76:8 76:18 76:21 87:9 90:4 96:2 100:1 101:9 102:23 103:17 103:21 103:24 104:1 104:19 117:6 120:7 127:15 127:22 129:15 130:15 131:14 142:5 144:19 145:24 146:11 146:16 151:20 152:3 153:7 153:10 156:3 169:16

scalia(1) 22:25
scant(1) 76:24
scenario(14) 27:24 32:20 36:14 42:2 42:5 42:18 73:3 74:14 76:13 122:22 123:12 124:4 169:4 169:4

scenarios(2) 41:12 122:13
schedule(1) 8:17
scheduled(2) 80:23 85:25
scheduling(1) 105:21
scheme(1) 69:6
scholer(1) 6:4
school(1) 132:18
schotz(1) 1:37
schulte(1) 3:45
schuylkill(1) 1:47
scope(4) 13:9 80:1 138:11 152:11
scotland(2) 5:5 5:5
scott(1) 91:17
scratch(1) 39:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| screen(3) 141:17 141:18 141:24 | | senior(149) 10:3 11:14 19:2 19:18 19:23 19:24 20:1 22:11 22:12 24:11 24:14 24:18 24:21 24:23 25:1 25:16 25:24 27:19 27:20 28:13 29:24 30:7 30:16 31:6 32:3 32:13 35:5 35:7 35:12 35:15 35:17 40:11 41:15 45:16 46:4 46:8 46:20 47:2 47:3 47:6 50:21 51:11 52:8 53:1 53:21 53:24 54:24 54:24 55:19 57:13 58:1 58:11 58:15 58:21 59:5 61:14 62:2 63:7 70:8 70:11 70:15 71:15 71:20 71:24 72:3 72:4 72:16 77:15 77:16 77:19 84:15 84:23 114:23 116:2 116:16 116:17 117:10 119:9 123:1 123:6 123:9 123:18 124:5 124:8 124:13 124:16 124:16 125:3 125:5 125:19 125:24 126:5 126:10 126:22 126:23 127:8 127:12 128:11 128:14 128:17 128:21 129:14 129:17 129:20 129:21 130:5 130:7 130:10 130:16 130:21 130:24 131:7 131:16 132:1 132:7 134:6 135:4 136:16 138:13 139:16 141:21 141:22 141:23 142:2 143:5 143:12 143:17 143:24 146:10 146:11 150:10 151:4 162:17 163:13 166:22 166:22 167:1 168:19 168:23 169:1 169:7 169:23 | | should(74) 17:7 18:25 24:22 31:14 34:16 42:16 45:19 46:3 46:5 46:5 46:21 47:20 49:3 49:4 49:13 51:5 51:13 53:9 54:20 59:19 60:6 61:18 62:8 63:1 63:21 74:22 78:13 79:10 82:4 84:2 86:4 86:7 89:10 90:9 92:16 93:15 94:5 95:23 96:6 99:5 104:11 104:22 109:17 110:8 111:6 111:20 113:4 114:22 114:24 118:4 125:2 126:24 128:23 132:19 138:8 139:15 141:21 142:21 143:4 146:6 149:8 150:15 152:6 154:22 155:22 158:21 161:3 163:5 165:13 166:23 168:1 168:22 168:23 170:15 173:7 | | small(1) 112:5 |
| scrivening(1) 155:16 | | | | | | smaller(2) 32:2 43:16 |
| seal(5) 7:13 7:18 8:5 8:9 8:12 | | | | | | smalley(1) 4:41 |
| seaport(2) 4:40 4:40 | | | | | | smart(1) 163:22 |
| seated(2) 81:7 174:1 | | | | | | so-called(3) 32:21 46:18 128:3 |
| sec(16) 107:4 116:10 116:12 116:13 117:9 119:15 120:6 120:14 131:13 143:9 143:15 152:25 153:24 153:25 162:14 162:18 | | | | | | sodano(7) 154:25 155:6 155:15 155:17 155:20 156:3 162:1 |
| | | | | | | sold(1) 91:9 |
| second(22) 10:10 11:12 29:3 32:18 37:16 49:25 71:14 78:14 83:22 100:7 100:7 102:23 114:8 117:3 123:8 134:1 134:6 134:18 139:8 147:6 149:6 152:2 | | | | shouldn't(1) 153:17 | | sole(2) 24:2 165:18 |
| | | | | shouldn't(2) 147:16 147:18 | | solely(1) 165:18 |
| | | | | should've(1) 128:11 | | some(49) 17:21 23:18 29:18 42:21 43:1 43:1 56:6 59:21 65:5 69:1 88:17 95:13 97:21 99:16 104:14 107:24 109:22 109:23 110:12 115:6 121:25 122:13 122:16 122:20 127:5 130:17 131:25 139:1 139:25 143:16 144:12 145:3 145:3 146:18 147:25 148:19 150:1 151:5 151:14 152:25 152:25 153:10 155:4 155:19 156:12 162:20 164:2 169:13 174:3 |
| secondary(1) 57:7 | | | | show(15) 11:25 20:5 23:7 28:22 31:1 38:7 49:11 59:16 61:14 93:25 111:5 153:7 153:17 162:2 168:4 | | |
| secondly(1) 57:7 | | | | | | |
| seconds(3) 82:15 112:14 168:12 | | | | showed(3) 50:16 65:15 68:1 | | |
| section(75) 10:4 10:7 10:15 10:22 10:24 10:25 11:2 11:11 11:15 11:16 11:18 11:21 11:21 11:22 11:23 11:24 11:24 12:7 12:8 13:1 13:2 13:6 13:8 13:9 13:25 14:1 14:21 14:21 15:1 15:5 15:5 15:7 15:7 15:18 15:19 15:20 15:21 15:25 16:1 16:2 16:7 16:7 17:16 17:17 17:17 18:5 18:5 18:22 19:6 20:20 22:14 24:9 47:22 47:24 47:25 48:7 58:14 60:7 60:10 67:20 67:20 68:3 70:6 70:7 70:11 96:1 99:25 103:20 169:11 170:3 | | | | showing(2) 31:1 38:10 | | somebody(21) 21:4 57:18 59:14 65:21 65:25 66:2 66:4 68:25 71:5 71:9 72:6 73:6 73:6 76:6 77:4 101:5 101:13 103:21 150:21 155:24 162:22 |
| | | | | shown(3) 28:10 39:8 58:2 | | |
| | | | | shows(11) 27:10 27:16 28:4 28:7 28:11 30:24 37:12 39:17 42:2 117:20 144:5 | | |
| | | | | | | somebody's(4) 65:23 68:24 76:5 77:3 |
| | | | seniority(7) 27:13 28:6 28:9 32:16 35:11 41:18 168:18 | | | | somehow(4) 92:9 102:18 117:21 118:9 |
| | | | | side(22) 14:4 17:16 30:24 37:3 38:1 39:16 43:4 51:6 59:10 59:12 59:13 62:6 119:20 120:9 153:15 155:11 155:13 156:12 160:22 160:23 162:12 165:11 | | someone(3) 68:12 78:16 164:14 |
| sections(1) 10:4 | | | | | | something(21) 8:14 63:15 65:2 65:4 66:2 66:13 69:12 71:16 93:12 102:19 112:14 113:18 130:19 137:8 139:9 140:3 164:22 166:5 169:25 170:13 170:18 |
| | | seniors(7) 46:5 47:9 51:13 61:17 61:23 61:25 126:19 | | | | |
| secured(7) 72:20 72:21 72:21 74:20 76:7 76:12 76:16 77:12 | | | | | | |
| | | sense(9) 7:16 54:11 91:24 111:25 112:24 121:10 124:2 133:18 150:1 | | sides(1) 94:18 | | something's(1) 165:13 |
| | | | | side's(2) 24:2 30:25 | | somewhat(2) 143:19 144:1 |
| securities(8) 99:17 100:24 103:16 116:20 127:18 135:8 157:4 166:4 | | | | sidley(1) 1:21 4:21 | | somewhere(1) 147:6 |
| | | sent(2) 150:24 151:8 | | siegel(40) 2:5 110:1 110:2 111:11 111:14 111:18 121:18 121:22 121:24 138:15 138:16 139:7 139:8 140:10 140:14 141:14 141:16 141:23 142:1 148:19 148:24 156:18 156:21 157:6 157:22 158:1 158:5 158:14 158:21 158:23 159:25 161:25 167:2 167:5 167:12 167:20 167:25 168:6 168:8 170:9 | | sone(2) 151:19 154:2 |
| security(14) 96:17 100:10 133:14 134:2 151:22 156:16 157:1 165:23 165:25 166:3 166:6 166:11 166:18 166:22 | | sentence(2) 60:4 87:14 | | | | sontchi(3) 14:16 15:3 15:8 |
| | | separate(3) 50:13 140:17 140:17 | | | | sontchi's(2) 14:10 15:11 |
| | | separately(4) 80:1 111:21 112:15 115:21 | | | | soon(1) 87:15 |
| see(39) 16:10 16:12 16:23 17:1 17:6 24:6 26:24 28:2 29:2 29:5 41:17 41:24 46:3 50:20 51:12 51:5 51:12 58:20 59:22 65:10 71:13 77:5 85:3 87:8 90:20 90:22 97:12 101:20 107:17 110:16 118:3 138:6 147:9 147:22 148:2 148:3 148:25 151:22 169:2 | | series(4) 20:13 26:24 109:11 114:18 | | | | sorry(14) 13:16 14:15 34:17 34:22 38:9 51:19 73:11 81:25 124:16 129:17 137:3 141:10 141:19 168:14 |
| | | serious(1) 63:17 | | sight(2) 66:9 66:10 | | |
| | | seriously(2) 63:5 63:5 | | sign(2) 8:18 29:4 | | |
| | | service(1) 1:46 1:53 | | signature(1) 105:24 | | sort(21) 14:5 14:6 20:7 20:12 29:16 31:19 31:22 41:2 43:9 78:5 82:3 82:6 100:22 102:7 102:7 104:2 104:13 144:12 156:3 156:4 171:4 |
| | | services(1) 1:46 | | signed(3) 106:9 147:19 161:11 | | |
| seek(3) 137:20 137:21 164:24 | | set(14) 20:5 27:23 29:3 29:6 29:19 33:9 89:4 90:1 93:1 94:11 107:3 108:16 167:13 171:13 | | significance(1) 97:10 | | |
| seeking(2) 19:18 92:2 | | | | significant(2) 69:5 149:7 | | sottile(3) 4:18 173:5 173:5 |
| seem(1) 69:5 | | | | silverstein(1) 2:35 | | sound(2) 1:52 174:7 |
| seemed(1) 80:15 | | sets(1) 27:18 | | similar(2) 45:4 143:19 | | sounds(2) 42:23 156:4 |
| seems(8) 13:2 31:19 66:5 84:11 84:16 100:6 101:8 104:9 | | setting(3) 12:10 18:3 163:17 | | similarly(5) 42:13 54:20 72:3 126:14 157:4 | | sources(1) 77:23 |
| | | settings(1) 27:11 | | simple(3) 141:3 142:4 142:13 | | south(2) 1:23 3:15 |
| | | settled(2) 46:19 163:21 | | simpler(1) 26:23 | | sowed(1) 29:15 |
| seen(6) 19:4 30:23 46:1 129:7 150:5 | | settlement(25) 30:3 30:8 38:11 38:13 38:18 38:21 38:23 38:25 39:8 43:20 44:1 46:19 59:9 59:9 63:15 63:17 63:19 63:22 122:24 123:4 123:13 123:18 123:21 124:23 155:16 | | simplified(1) 101:9 | | spaeder(1) 4:14 |
| seife(1) 4:7 | | | | simply(17) 7:15 21:22 26:12 36:5 40:1 40:3 41:5 58:19 65:14 73:1 79:5 94:15 97:14 98:15 125:9 129:7 170:22 | | speak(5) 9:15 91:14 110:22 140:9 160:10 |
| selber(1) 2:35 | | | | | | speaking(4) 105:4 168:8 168:9 168:9 |
| selected(1) 122:13 | | | | since(8) 9:20 14:14 28:1 39:20 53:12 132:19 138:22 165:24 | | speaks(5) 48:8 101:6 118:7 126:16 129:8 |
| selective(1) 33:4 | | | | | | special(7) 5:18 10:7 10:9 11:25 12:2 12:2 12:3 |
| selectively(1) 75:12 | | several(1) 168:21 | | | | |
| self-interested(1) 119:6 | | shaded(2) 27:17 27:18 | | single(1) 74:12 | | |
| send(2) 139:22 139:23 | | shall(8) 8:9 11:4 47:25 87:9 87:14 127:18 169:22 169:23 | | sit(6) 16:19 16:20 40:11 71:24 118:19 | | specially(1) 12:3 |
| | | | | site(2) 14:17 164:5 | | specific(10) 12:15 16:4 17:11 24:1 41:12 74:18 100:18 118:12 157:2 160:7 |
| | | shannon(1) 6:13 | | sits(1) 76:8 | | |
| | | share(9) 24:19 54:20 76:17 123:3 123:13 123:14 123:20 128:19 169:6 | | sitting(1) 160:21 | | |
| | | | | situated(1) 56:18 | | specification(2) 74:21 74:23 |
| | | | | situation(1) 56:18 | | specifics(1) 29:2 |
| | | shared(5) 57:9 154:14 162:7 162:10 162:21 | | six(9) 9:3 9:4 9:4 126:14 126:16 127:1 130:9 130:11 170:3 | | specifies(1) 93:7 |
| | | shareholder(1) 60:11 | | | | specify(1) 89:9 |
| | | sharing(1) 73:2 | | | | spell(1) 128:12 |
| | | she(1) 155:12 | | skip(2) 39:13 143:7 | | spelled(1) 128:11 |
| | | shed(1) 164:16 | | slide(8) 44:25 45:11 46:2 47:18 50:11 57:23 59:1 126:6 | | spend(3) 34:14 126:4 126:12 |
| | | sheet(1) 117:23 | | | | spent(3) 23:18 42:21 167:5 |
| | | sheets(4) 151:6 151:7 151:9 151:13 | | | | |
| | | sheppard(1) 163:1 | | slides(1) 44:25 | | |
| | | shockingly(1) 24:25 | | slight(1) 64:5 | | |
| | | shoe(1) 67:1 | | sloan(1) 2:21 | | |
| | | shoes(1) 67:8 | | slowly(1) 7:22 | | |
| | | short(1) 172:1 | | | | |
| | | shorter(2) 172:22 172:23 | | | | |
| | | shorthand(1) 47:4 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**spin**(7) 45:7 45:20 55:4 55:21 69:16 69:17 69:17

**spite**(4) 15:16 19:5 49:19 49:20

**spoke**(4) 110:18 110:20 110:21 151:20

**spoken**(1) 36:20

**spot**(1) 74:10

**spun**(1) 84:22

**square**(3) 2:8 2:22 3:7

**staff**(1) 153:11

**stage**(2) 40:22 94:11

**stand**(10) 44:18 76:4 77:1 77:1 77:2 81:5 105:14 138:19 163:4 174:2

**standard**(6) 12:12 36:22 70:6 73:1 173:15 173:16

**standards**(3) 10:1 10:4 112:9

**standing**(1) 63:8

**standpoint**(1) 115:14

**stands**(6) 14:3 63:22 72:22 76:17 96:14 154:24

**star**(2) 145:20 155:4

**stargatt**(1) 3:5

**stark**(22) 2:6 64:18 64:20 65:4 65:8 65:10 66:24 67:2 67:3 67:6 73:10 73:11 73:14 73:17 74:1 74:7 78:18 94:8 94:9 101:16 101:19 146:1

**stark's**(1) 86:8

**start**(10) 7:5 7:20 10:24 12:8 31:22 39:2 48:15 65:11 105:20 140:8

**started**(3) 45:1 144:11 146:12

**starting**(3) 27:14 147:10 169:15

**startling**(1) 30:23

**starts**(3) 92:25 147:22 154:7

**state**(3) 48:2 92:3 163:10

**stated**(2) 22:16 24:16 135:7

**statement**(10) 25:25 36:6 80:12 129:13 144:5 144:17 152:7 152:10 152:18 154:2

**statements**(2) 110:16 114:23

**states**(5) 1:1 1:18 101:1 106:5 163:1

**stating**(1) 164:9

**status**(4) 19:18 84:15 115:17 127:24

**statute**(7) 15:7 15:10 16:3 16:5 16:17 17:15 19:5 22:7

**statutory**(8) 10:17 11:10 12:15 15:6 16:22 16:22 18:11 100:20

**stay**(3) 32:12 167:2

**staying**(1) 49:4

**stays**(1) 32:18

**ste**(1) 3:15

**steege**(1) 5:27

**steen**(1) 4:27

**step**(62) 114:22 115:4 116:12 117:4 117:18 117:22 134:1 134:6 134:18 134:25 135:2 135:13 140:16 140:16 140:19 140:21 143:11 146:7 146:10 146:12 146:13 146:17 146:22 147:1 147:2 147:12 147:14 147:21 147:25 148:5 148:5 148:7 149:1 149:1 149:5 149:9 149:20 149:20 149:21 151:2 151:7 151:7 151:10 151:11 152:19 152:25 152:25 153:9 153:9 157:8 157:18 158:1 158:1 158:11 158:17 160:6 161:10 161:11 163:8 163:10 163:12

**stephen**(1) 2:34

**steps**(3) 86:22 94:1 94:3

**stick**(3) 67:23 67:24 81:3

**sticking**(1) 32:11

**still**(19) 12:13 32:19 32:19 36:24 38:3 41:1 83:2 89:20 91:3 93:18 93:25 97:13 103:10 104:23 138:23 138:25 150:21 158:2 173:16

**stipulated**(2) 93:5 152:1

**stipulation**(8) 82:5 84:1 84:2 85:17 92:25 95:3 108:18 108:19

**stock**(13) 72:24 95:17 132:3 132:10 132:13 133:19 133:20 133:22 154:25 166:5 166:5 166:10 166:18

**stocks**(1) 166:8

**stolen**(1) 100:2

**stop**(3) 12:21 41:2 163:15

**stops**(1) 18:1

**story**(3) 95:4 142:21 166:23

**straggler**(1) 117:2

**straight**(1) 51:8

**strauss**(2) 2:13 82:13

**street**(10) 1:10 1:28 1:33 1:47 2:23 2:37 2:44 3:8 3:34 145:10

**stress**(3) 11:10 113:22 128:24

**strictly**(1) 73:3

**strictures**(1) 71:10

**strike**(1) 172:15

**strikes**(1) 73:19

**stringent**(2) 25:6 25:11

**strip**(1) 68:12

**strong**(1) 94:24

**structurally**(2) 131:7 132:1

**structure**(6) 36:12 38:15 68:9 142:15 149:13 151:23

**structure."**(1) 150:17

**structured**(1) 134:17

**structuring**(2) 150:9 150:14

**stuart**(1) 6:24

**stub**(3) 14:23 14:24 48:21

**stuck**(1) 102:18

**sub**(1) 55:19

**sub-agent**(1) 100:22

**sub-debt**(2) 61:16 61:23

**sub-note**(1) 150:16

**subchapter**(2) 115:17 132:9

**subject**(7) 22:23 75:3 79:17 109:25 124:2 127:3 138:21

**subjective**(12) 110:24 111:4 111:7 149:18 152:24 154:10 154:15 155:25 156:10 162:7 162:20 162:22

**subjectively**(1) 154:20

**submission**(2) 114:19 114:21

**submissions**(4) 171:1 172:1 172:5 172:7

**submit**(13) 33:1 36:7 43:6 78:11 138:10 144:4 144:15 146:23 152:18 156:2 163:10 170:25 172:12

**submits**(1) 93:8

**submitted**(6) 45:15 145:2 145:3 149:23 153:5 154:4

**submitting**(2) 110:5 120:1

**subordinate**(11) 79:12 128:13 129:13 129:15 129:19 135:24 135:25 136:3 141:20 151:9 161:4

**subordinated**(73) 17:25 18:4 18:7 24:16 45:7 45:11 55:4 60:10 60:13 70:16 83:18 114:22 114:24 116:2 116:14 116:17 116:17 117:14 122:24 123:10 123:17 124:11 124:13 124:25 125:1 126:7 126:9 127:18 127:19 127:21 127:22 128:4 128:8 129:9 129:10 129:22 129:24 131:15 131:16 131:17 131:18 132:5 132:5 132:6 132:7 135:8 135:9 136:19 139:14 140:25 141:1 141:3 142:3 142:6 142:20 143:12 143:3 144:5 144:24 144:25 146:11 150:23 151:1 151:3 151:4 151:10 157:3 157:5 157:8 165:9 165:16 169:19 170:1

**subordinating**(3) 80:10 157:1 169:21

**subordination**(149) 10:8 11:17 11:25 12:1 12:6 12:10 12:17 13:3 13:3 13:17 14:2 17:21 18:6 18:7 18:13 19:3 19:7 19:15 21:22 31:7 31:8 31:11 32:1 32:18 35:6 45:2 45:6 45:11 45:12 45:18 45:25 46:23 47:2 47:19 47:19 48:1 48:9 48:24 49:2 49:3 49:6 49:9 49:13 49:20 49:24 51:1 51:8 52:22 52:24 53:3 58:13 59:15 61:3 65:23 68:6 68:13 68:20 69:8 70:3 70:9 70:13 70:17 70:21 71:3 71:11 71:21 72:5 72:12 73:21 75:14 76:6 76:20 79:11 79:17 80:1 106:25 110:15 110:18 110:22 113:25 114:4 114:7 115:10 117:4 117:7 124:9 127:22 128:6 129:6 129:7 130:13 130:17 137:16 137:18 137:25 138:12 139:11 139:16 140:15 140:17 140:18 140:21 141:2 142:5 143:1 143:4 144:18 145:15 145:16 146:16 146:22 146:24 146:25 147:2 147:3 147:8 147:12 147:15 148:9 148:25 149:2 149:2 149:5 151:15 152:21 153:12 156:16 157:14 157:19 157:21 157:23 158:12 158:16 159:6 159:11 159:22 160:3 160:13 161:12 161:15 161:22 163:12 163:18 165:3 166:21 169:1 169:8 169:10 169:11

**subordination"**(1) 30:6

**subrogate**(2) 77:17 77:20

**subrogation**(1) 77:14

**subs**(1) 61:25

**subsection**(1) 11:2

**subsequent**(2) 99:18 104:2

**subsidiary**(1) 64:7

**substance**(5) 96:9 98:18 114:2 134:24

**substantial**(1) 160:9

**substitute**(3) 142:7 170:12 171:25

**substituting**(1) 170:18

**subtract**(1) 30:10

**subtraction**(1) 30:9

**successful**(1) 64:23

**successfully**(1) 93:24

**such**(15) 11:5 23:11 57:10 87:16 87:20 104:16 104:18 115:19 127:17 130:22 141:5 142:8 154:22 169:6 169:24

**suffice**(1) 39:19

**sufficient**(4) 40:8 74:24 94:19 144:5

**suggest**(10) 25:8 34:2 37:13 39:23 75:17 80:3 100:25 112:22 119:22 137:18

**suggested**(4) 42:6 81:4 109:20 172:2

**suggesting**(1) 171:25

**suggestion**(3) 120:25 130:4 172:18

**suggests**(2) 36:20 90:8

**suite**(1) 1:40

**sum**(2) 96:8 98:17

**summarize**(3) 106:15 109:10 114:17

**summation**(2) 159:7 159:8

**sunday**(1) 23:19

**superior**(1) 151:19

**supermix**(2) 153:20 162:8

**supplement**(3) 166:15 166:15 167:21

**supplemented**(1) 98:22

**support**(9) 24:3 37:6 39:10 42:15 53:18 76:25 103:3 103:16 105:6

**supported**(4) 33:4 38:12 43:25 75:18

**supportive**(1) 44:7

**supports**(3) 18:22 44:2 44:12

**suppose**(3) 32:9 38:18 73:25

**supposed**(17) 19:19 35:20 46:19 49:1 50:2 50:10 52:23 52:24 59:9 61:15 62:19 87:22 97:6 102:10 102:24 102:24 118:23

**supposedly**(1) 31:17

**supreme**(7) 16:10 16:12 16:21 17:7 22:19 23:2 69:9

**sure**(8) 52:19 62:14 82:15 104:14 108:20 109:15 113:6 167:25

**sure"**(1) 150:16

**susceptible**(1) 22:25

**suspect**(1) 24:4

**suttonbrook**(2) 4:44 4:45

**swap**(22) 19:22 28:8 32:9 32:15 35:5 35:11 35:14 41:12 41:15 41:17 41:22 41:22 41:24 42:4 43:16 64:1 64:2 64:6 84:14 138:3 168:22 169:2

**swaps**(1) 52:11

**swell**(1) 69:1

**swing**(1) 32:6

**system**(12) 76:16 89:3 92:8 92:12 92:16 92:24 93:9 93:25 95:19 96:15 97:9 98:9

**table**(3) 86:10 88:14 118:19

**tables**(1) 28:17

**taft**(1) 5:9

**take**(37) 15:24 15:25 17:17 22:6 30:9 31:23 31:24 41:6 43:22 53:20 62:19 65:21 65:23 67:7 68:24 69:2 69:15 71:4 73:15 75:23 76:5 77:16 77:18 80:20 80:24 93:22 95:10 96:20 104:25 109:23 111:23 112:25 121:1 137:22 158:24 162:24 171:14

**take-aways**(1) 33:15

**taken**(7) 55:22 57:17 59:14 86:22 95:12 119:25 137:24

**takes**(4) 46:18 46:20 124:2 130:1

**taking**(9) 1:9 55:24 57:24 66:4 77:3 95:10 96:23 133:9 143:22

**talk**(27) 9:24 10:20 18:18 25:5 26:8 26:21 27:5 29:23 34:19 46:10 46:11 47:23 59:1 65:11 93:1 94:8 140:19 144:10 150:3 153:2 153:21 155:24 165:7 171:16 173:11 173:20 173:23

**talked**(6) 30:11 40:8 41:13 45:2

**talking**(15) 16:24 17:22 32:22 38:3 39:25 41:1 48:8 54:14 55:20 59:3 62:5 62:5 92:2 118:21 128:25

**talks**(4) 36:19 45:5 47:5 61:3

**task**(1) 152:12

**tax**(6) 115:14 132:10 134:18 160:12 160:14 166:9

**taylor**(1) 3:5

**tci**(7) 12:18 12:18 13:14 50:6 75:21 76:4 76:17

**teach**(1) 36:3

**team**(4) 118:23 132:23 152:14 152:18

**technician**(2) 152:8 152:9

**teitelbaum**(13) 3:19 3:20 7:12 19:25 28:5 28:9 28:12 42:11 42:12 42:12 42:24 42:25 78:6

**teitelbaum's**(2) 78:4 78:14

**telephonic**(4) 3:38 4:1 5:1 6:1

**tell**(21) 22:14 48:4 51:16 52:6 54:7 61:1 74:8 90:6 113:10 119:6 139:2 139:5 146:5 146:7 149:24 153:15 160:19 165:10 172:3 172:3 172:13

**telling**(5) 50:9 60:3 62:19 156:6 168:2

**tells**(4) 10:25 18:3 62:8 70:1

**ten**(1) 87:19

**ten-minute**(1) 80:24

**tend**(2) 78:4 135:7

**tender**(9) 87:1 88:19 89:1 89:10 89:12 90:5 92:2 93:2 112:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **tendered**(19) 83:7 83:12 83:20 85:15 86:6 86:20 86:23 87:3 88:5 88:11 89:15 92:13 94:16 96:20 98:2 98:4 98:13 99:1 104:17 | | **that**(301) 7:6 7:12 7:14 7:16 7:24 7:25 8:1 8:2 8:8 8:8 8:14 8:19 8:23 9:3 9:5 9:14 9:22 9:24 10:3 10:3 10:8 10:11 10:14 10:16 10:20 10:25 11:8 11:10 11:12 11:15 11:17 11:18 11:20 11:21 12:1 12:5 12:10 12:12 12:14 12:14 12:17 12:18 12:23 13:4 13:4 13:20 13:22 13:25 14:3 14:9 14:13 14:20 14:25 15:1 15:4 15:6 15:8 15:10 15:11 15:12 15:19 15:24 16:1 16:2 16:4 16:6 16:8 16:9 16:13 16:18 16:21 17:3 17:7 17:19 17:19 17:25 18:1 18:3 18:8 18:10 18:10 18:11 18:13 18:13 18:15 18:16 18:20 18:21 18:22 18:24 18:25 19:5 19:5 19:6 19:11 19:12 19:12 19:16 19:16 19:19 19:20 20:3 20:4 20:5 20:8 20:17 20:18 20:18 20:20 20:21 20:22 21:1 21:4 21:6 21:19 21:22 21:25 22:6 22:9 22:9 22:10 22:14 22:15 22:16 22:16 22:17 22:22 22:24 23:5 23:6 23:7 23:13 23:17 23:24 24:1 24:3 24:6 24:8 24:9 24:10 24:13 24:13 24:17 24:17 24:18 24:20 25:1 25:3 25:3 25:4 25:6 25:6 25:8 25:12 25:13 25:15 25:17 25:17 25:18 25:19 25:21 25:24 26:6 26:8 26:12 26:13 26:18 27:2 27:3 27:7 27:15 27:22 28:1 28:3 28:5 28:6 28:8 28:13 29:10 29:17 29:18 29:18 29:23 30:2 30:10 30:11 30:12 30:15 30:17 30:20 30:24 31:1 31:4 31:8 31:11 31:14 31:16 31:18 31:22 31:24 32:1 32:4 32:7 32:9 32:11 32:20 32:22 32:23 33:1 33:5 33:6 33:7 33:11 33:11 33:11 33:14 33:23 33:23 34:2 34:3 34:4 34:6 34:10 34:21 34:22 34:23 34:24 34:25 35:3 35:4 36:7 36:12 36:13 36:14 36:14 36:16 36:18 36:20 36:23 37:7 37:8 37:12 37:12 37:14 37:16 37:18 37:18 37:19 37:22 37:24 38:2 38:4 38:7 38:13 38:16 38:17 38:22 38:23 39:1 39:5 39:5 39:7 39:8 39:10 39:12 39:15 39:17 39:17 39:17 39:20 39:23 39:24 40:4 40:7 40:7 40:9 40:14 40:18 40:20 40:24 41:2 41:3 41:16 41:17 41:24 41:24 41:25 42:2 42:7 42:7 42:19 43:1 43:2 | | **that**(301) 43:6 43:13 43:16 43:18 43:22 43:23 43:24 43:25 44:1 44:2 44:2 44:11 44:11 44:12 45:1 45:13 45:15 45:24 46:2 46:3 46:9 46:15 46:17 46:18 46:20 46:21 47:5 47:6 47:10 47:16 47:23 47:25 48:11 48:15 48:16 48:21 48:22 49:18 50:12 50:14 50:15 50:21 50:24 51:5 51:5 51:11 51:12 51:14 51:15 51:16 51:18 51:19 52:1 52:3 52:5 52:6 52:20 52:22 53:2 53:6 53:8 53:8 53:12 53:12 53:12 53:19 53:19 53:19 53:20 53:23 53:24 54:7 54:7 54:8 54:12 54:19 54:23 55:2 55:2 55:5 55:12 55:13 55:14 55:14 55:15 56:6 56:9 56:17 56:21 57:6 57:6 57:8 57:13 57:16 57:17 57:19 58:3 58:5 58:8 58:14 58:18 58:20 60:5 60:9 60:9 60:12 60:16 60:18 60:20 60:21 60:25 61:1 61:2 61:4 61:4 61:10 61:14 61:17 61:17 61:21 62:1 62:7 62:8 62:20 62:25 63:1 63:4 63:8 63:11 63:14 63:16 63:17 63:18 63:19 63:21 64:2 64:4 64:6 65:4 65:7 65:11 65:15 65:22 66:1 66:2 66:4 66:6 66:15 66:16 67:1 67:8 67:18 67:21 67:24 68:4 68:4 68:6 68:8 68:9 68:10 68:11 68:12 68:15 68:18 68:21 68:21 69:6 69:9 69:9 69:11 69:12 69:16 70:8 70:14 70:21 71:6 71:9 71:11 71:13 72:7 72:18 72:19 72:21 72:24 73:3 73:20 73:21 73:24 74:3 74:11 74:12 75:1 75:5 75:8 75:11 76:5 76:7 76:11 76:13 76:17 76:22 77:2 77:5 77:10 77:10 77:14 77:20 78:5 78:11 78:15 79:5 79:5 79:7 79:8 79:10 79:11 79:12 79:14 79:20 79:21 79:23 80:1 80:11 80:12 80:12 80:13 80:15 80:16 82:4 82:5 82:9 82:9 82:23 83:2 83:6 83:7 83:10 83:12 83:16 83:17 83:18 83:20 83:21 83:25 84:2 84:2 84:9 84:10 84:11 84:13 84:14 84:17 84:17 85:2 85:3 85:12 85:14 85:15 85:17 85:20 85:22 86:6 86:9 86:16 86:21 87:2 87:3 87:7 87:9 87:14 87:17 87:21 88:1 88:4 88:5 88:7 88:10 88:19 88:20 88:21 88:25 89:1 89:4 89:10 89:11 89:13 89:14 89:16 89:24 89:25 90:1 90:1 | | **that**(301) 90:2 90:4 90:8 90:10 90:11 90:12 90:14 90:15 90:18 90:23 90:24 91:4 91:6 91:7 91:10 91:14 91:22 91:25 92:4 92:4 92:6 92:8 92:10 92:15 92:15 92:18 92:19 92:21 92:22 93:1 93:7 93:7 93:9 93:12 93:15 93:19 93:21 93:22 94:5 94:18 94:25 95:4 95:9 95:10 95:11 95:17 95:19 95:22 96:2 96:2 96:5 96:6 96:9 97:3 97:9 97:13 97:15 97:18 97:21 97:22 97:23 98:1 98:7 98:10 98:13 98:25 99:3 99:3 99:4 99:5 99:7 99:8 99:8 99:10 99:11 99:12 99:13 99:13 99:16 99:18 99:18 100:1 100:3 100:5 100:8 100:10 100:11 100:13 100:16 100:21 100:24 100:25 101:1 101:1 101:2 101:4 101:6 101:11 101:14 101:14 101:15 101:18 101:20 102:1 102:9 102:13 102:14 102:17 102:19 102:19 102:20 102:23 103:2 103:7 103:7 103:9 103:12 103:16 103:19 103:21 103:21 103:22 103:24 104:2 104:2 104:4 104:6 104:15 104:16 104:17 104:18 104:19 104:20 104:24 105:6 105:10 106:7 106:14 106:22 107:16 107:17 107:17 108:8 108:9 109:2 109:3 109:5 109:7 109:8 109:12 109:16 109:20 110:5 110:7 110:8 110:10 110:10 110:11 110:12 110:14 110:19 110:23 111:5 111:5 111:8 111:11 111:12 111:18 111:19 111:19 111:20 111:20 112:8 112:22 112:22 112:25 113:7 113:8 113:12 113:14 113:24 114:3 114:5 114:8 114:8 114:11 114:17 114:19 114:24 115:2 115:2 115:3 115:3 115:4 115:5 115:8 115:9 115:9 115:9 115:10 115:12 115:12 115:14 115:15 115:17 115:18 115:19 115:22 115:23 115:24 115:24 115:25 116:1 116:5 116:6 116:6 116:7 116:8 116:9 116:11 116:15 116:20 116:22 117:6 117:13 117:13 117:19 117:20 117:24 118:3 118:8 118:13 118:14 118:20 119:2 119:3 119:4 119:8 119:9 119:9 119:10 119:12 119:13 119:13 119:13 119:14 119:15 120:2 120:7 120:8 120:9 120:13 120:14 120:20 120:25 121:5 121:6 121:8 121:9 122:13 122:17 122:18 122:19 122:23 122:25 122:25 122:25 123:2 123:4 123:6 123:7 123:9 123:16 123:17 123:23 124:1 124:1 124:2 124:4 124:11 124:15 124:18 124:21 124:24 124:25 125:1 125:1 125:2 125:8 125:9 125:9 125:11 125:11 125:15 125:15 126:3 126:4 126:7 126:9 126:17 |
| **tendering**(2) 91:23 93:8 | | | | | | | |
| **tenders**(2) 84:5 93:23 | | | | | | | |
| **term**(8) 12:23 13:1 15:9 18:15 97:23 151:6 151:6 151:12 | | | | | | | |
| **terminate**(1) 104:5 | | | | | | | |
| **territories**(1) 64:25 | | | | | | | |
| **test**(16) 21:3 21:8 26:3 31:7 32:12 32:18 33:4 33:9 33:16 34:6 34:11 50:1 52:2 70:14 90:15 91:21 | | | | | | | |
| **testified**(4) 110:17 120:2 135:6 162:6 | | | | | | | |
| **testifies**(3) 115:12 120:7 156:11 | | | | | | | |
| **testify**(2) 161:1 162:23 | | | | | | | |
| **testifying**(1) 132:20 | | | | | | | |
| **testimony**(23) 110:13 110:23 111:3 111:6 112:4 112:5 112:17 113:13 118:5 131:19 131:20 131:22 133:4 137:17 138:8 138:20 138:25 142:16 151:12 152:24 153:2 165:19 165:21 | | | | | | | |
| **texas**(1) 145:11 | | | | | | | |
| **than**(49) 7:17 11:2 21:4 21:8 21:13 23:23 25:7 25:9 25:11 25:13 25:21 26:23 32:24 34:16 35:20 36:25 38:4 41:19 43:16 44:12 46:4 46:5 51:20 54:7 57:21 58:18 65:12 66:6 66:17 66:18 66:19 68:10 71:3 76:3 79:22 87:18 87:19 103:22 106:7 112:8 112:11 126:8 129:12 141:5 142:7 150:12 160:14 161:5 168:3 | | | | | | | |
| **thank**(36) 26:17 41:7 42:9 42:10 44:13 44:14 64:16 64:17 64:19 78:18 79:2 80:10 82:11 94:7 105:2 105:8 105:9 105:25 106:10 122:4 122:5 133:5 133:11 137:14 138:13 138:14 139:8 148:14 148:16 148:17 167:1 168:7 168:8 168:10 170:4 170:5 | | | | | | | |
| **thanks**(1) 64:19 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**that**(301) 126:18 127:1 127:2 127:2 127:10 127:11 127:17 127:20 127:25 128:22 128:3 128:4 128:6 128:11 128:16 128:18 128:22 128:23 128:24 128:24 129:3 129:13 129:13 129:15 129:23 129:23 129:24 129:25 130:1 130:4 130:5 130:10 130:12 130:14 130:15 130:16 130:19 130:20 130:21 131:2 131:6 131:7 131:9 131:12 131:15 131:16 131:20 131:22 131:25 132:2 132:4 132:4 132:6 132:14 132:14 132:22 132:22 133:4 133:10 133:15 133:18 133:19 134:6 134:9 134:17 134:21 134:23 134:23 134:24 135:1 135:11 136:8 136:10 136:15 136:17 136:25 137:8 137:9 137:15 137:18 137:20 137:20 137:23 138:1 138:3 138:4 138:6 138:7 138:7 138:7 138:9 138:12 138:21 139:7 139:9 139:9 139:11 139:11 139:13 139:15 139:17 139:18 139:20 139:21 140:1 140:3 140:4 140:15 140:16 140:18 140:19 140:20 140:20 141:6 142:5 142:8 142:10 142:12 142:12 142:13 142:14 142:16 142:18 142:19 142:19 142:21 142:24 143:1 143:5 143:8 143:11 143:12 143:15 143:17 143:19 143:21 143:23 143:23 143:25 144:2 144:4 144:4 144:5 144:5 144:12 144:15 144:18 144:19 144:19 144:21 144:24 145:1 145:2 145:6 145:7 145:9 145:10 145:16 145:22 146:5 146:7 146:9 146:16 146:16 146:18 146:20 146:25 147:1 147:1 147:4 147:5 147:9 147:11 147:14 147:18 148:1 148:5 148:6 148:6 149:2 149:4 149:5 149:25 149:25 150:2 150:4 150:4 150:5 150:10 150:20 150:23 151:5 151:6 151:8 151:12 151:14 151:17 151:20 151:21 151:24 152:5 152:7 152:11 152:15 152:18 152:20 152:20 152:22 152:22 153:1 153:4 153:5 153:7 153:10 153:19 153:20 153:21 153:24 154:2 154:4 154:5 154:6 154:14 154:15 154:21 154:23 155:6 155:6 155:17 155:18 155:23 156:10 156:10 156:12 156:25 157:4 158:12 158:24 158:25 159:5 160:9 160:21 160:22 160:24 161:2 161:3 161:4 161:7 161:14 162:2 162:4 162:6 162:8 162:17 162:18 162:23 163:4 163:7 163:9 163:9 163:10 163:11 163:18 163:21 163:23 164:2 164:8 164:9 164:23 164:24 165:2 165:5 165:5 165:6 165:10 165:13 165:17 165:21 165:22 165:23 166:1 166:7 166:8 166:12 166:12 166:17 166:20 166:23 166:23 166:25 167:8 167:16 167:20 167:22 167:24 168:6 168:7 168:21 168:22 168:22 168:24

**that**(25) 169:2 169:5 169:8 169:15 170:6 170:8 170:14 170:16 170:18 170:22 171:10 171:20 171:21 171:22 171:23 172:4 172:4 172:15 173:10 173:16 173:22 173:23 173:25 174:3 174:6

**that'll**(1) 148:23

**that's**(95) 48:17 48:18 48:23 49:15 49:20 50:7 50:15 50:20 51:1 51:7 51:8 51:8 51:22 54:1 54:13 54:14 54:15 55:7 55:8 55:10 57:2 57:8 57:10 57:15 58:4 58:22 60:1 61:6 61:16 61:20 62:4 63:8 63:22 65:12 65:16 66:23 67:23 68:8 68:20 71:16 72:18 73:2 75:10 75:17 75:18 76:17 76:21 76:24 77:11 77:14 77:15 80:8 85:25 86:3 88:20 88:24 89:8 89:11 89:18 90:4 90:24 91:3 91:21 92:18 93:5 93:11 93:15 94:6 94:23 95:7 95:13 98:23 99:21 99:22 100:4 148:17 149:7 149:20 150:11 150:18 150:24 152:19 153:15 154:3 156:23 161:25 162:15 166:1 166:11 168:15 169:24 171:7 172:14 173:14 173:18

**that's**(87) 11:9 15:9 15:20 17:16 19:21 22:7 23:13 24:9 27:14 27:23 29:20 29:24 30:1 33:12 34:7 35:2 35:10 35:19 36:5 36:16 36:24 36:25 37:4 37:19 37:20 38:19 39:1 42:8 43:12 44:1 46:6 46:19 47:3 47:16 101:7 101:11 101:16 101:19 102:16 106:3 107:5 107:8 107:24 108:18 111:8 114:15 114:25 115:20 116:18 116:19 117:11 117:14 118:2 118:6 119:7 119:16 120:3 120:10 120:19 120:23 121:15 122:24 123:11 123:14 123:23 125:14 127:9 127:14 128:7 128:15 131:6 135:9 140:10 140:14 141:20 142:13 142:22 143:11 147:6 147:17 147:19

**the**(301) 1:1 1:2 1:17 4:40 5:19 7:2 7:5 7:8 7:9 7:11 7:13 7:14 7:16 7:20 7:22 7:23 7:25 8:1 8:3 8:3 8:4 8:7 8:8 8:8 8:10 8:14 8:15 8:16 8:17 8:20 8:21 8:23 8:24 8:25 8:25 9:1 9:3 9:8 9:9 9:11 9:15 9:16 9:18 9:19 9:20 9:21 9:24 9:25 10:1 10:2 10:3 10:4 10:5 10:10 10:10 10:13 10:13 10:13 10:15 10:15 10:16 10:18 10:19 10:20 10:25 11:1 11:3 11:4 11:4 11:4 11:5 11:6 11:8 11:9 11:9 11:10 11:11 11:12 11:12 11:14 11:19 11:22 12:5 12:7 12:7 12:8 12:12 12:19 12:22 12:24 12:25 12:25 13:1 13:3 13:4 13:6 13:6 13:7 13:7 13:8 13:9 13:10 13:13 13:13 13:17 13:20 13:24 13:25 14:3 14:4 14:4 14:5 14:5 14:6 14:7 14:8 14:10 14:11 14:12 14:14 14:15 14:15 14:15 14:17 14:17 14:20 14:23 14:25 15:1 15:1 15:3 15:6 15:9 15:11 15:12 15:13 15:15 15:18 15:20 15:21 15:22 15:22 15:24 15:24 16:3 16:3 16:4 16:4 16:5 16:8 16:10 16:10 16:11 16:16 16:17 16:18 16:18 16:19 16:20 16:21 17:1 17:3 17:3 17:6 17:7 17:10 17:13 17:15 17:15 17:16 17:17 17:20 17:20 17:24 17:25 18:1 18:2 18:2 18:4 18:4 18:9 18:10 18:10 18:11 18:12 18:14 18:16 18:20 18:20 18:21 18:22 18:23 18:23 18:25 18:25 19:2 19:5 19:6 19:11 19:12 19:14 19:14 19:15 19:16 19:17 19:18 19:19 20:3 20:3 20:7 20:8 20:8 20:9 20:11 20:16 20:17 20:22 20:24 20:25 21:3 21:7 21:7 21:8 21:9 21:13 21:15 21:15 21:18 21:21 21:22 21:23 21:23 21:24 22:2 22:2 22:3 22:5 22:6 22:9 22:13 22:8 22:11 22:11 22:12 22:12 22:13 22:13 22:14 22:18 22:19 22:20 22:20 22:22 22:22 22:23 22:24 22:25 23:1 23:2 23:2 23:13 23:14 23:21 23:21 23:23 23:24 23:25 23:25 24:1 24:1 24:2 24:5 24:5 24:8 24:9 24:10 24:14 24:14 24:15 24:16 24:18 24:18 24:19 24:20 24:21 24:23 24:23 24:23 24:25 25:1 25:1 25:2 25:3 25:7 25:10 25:10 25:11 25:14 25:14

**the**(301) 25:15 25:16 25:19 25:19 25:19 25:23 25:23 25:24 25:25 25:25 26:1 26:1 26:2 26:3 26:4 26:6 26:6 26:7 26:13 26:17 26:18 26:19 26:20 26:24 26:24 27:1 27:1 27:6 27:7 27:14 27:14 27:14 27:16 27:16 27:17 27:18 27:20 27:21 27:22 27:24 27:24 27:25 27:25 28:2 28:4 28:7 28:8 28:11 28:15 28:16 28:16 28:17 28:17 28:18 28:19 28:20 28:22 28:23 28:24 28:24 28:25 29:2 29:3 29:5 29:5 29:6 29:6 29:10 29:12 29:13 29:16 29:17 29:20 29:20 29:21 29:21 29:23 29:24 30:2 30:2 30:3 30:3 30:4 30:4 30:5 30:5 30:7 30:7 30:8 30:8 30:9 30:10 30:13 30:13 30:14 30:15 30:16 30:18 30:19 30:20 31:3 31:5 31:6 31:7 31:9 31:10 31:11 31:11 31:15 31:16 31:16 31:17 31:20 31:25 32:2 32:3 32:5 32:6 32:6 32:9 32:9 32:10 32:10 32:10 32:12 32:12 32:13 32:14 32:15 32:15 32:18 32:18 32:19 32:20 32:20 32:21 32:22 32:23 32:24 32:25 33:1 33:3 33:4 33:5 33:6 33:7 33:8 33:9 33:11 33:12 33:13 33:13 33:16 33:16 33:17 33:18 33:18 33:19 33:19 33:20 33:20 33:21 33:23 33:24 33:24 33:25 34:1 34:2 34:2 34:3 34:4 34:6 34:7 34:8 34:11 34:14 34:21 34:24 35:1 35:2 35:3 35:3 35:5 35:5 35:5 35:6 35:7 35:8 35:8 35:10 35:10 35:11 35:11 35:14 35:14 35:15 35:17 35:18 35:20 35:22 35:23 35:23 35:24 36:1 36:2 36:3 36:8 36:11 36:13 36:13 36:16 36:16 36:18 36:18 36:23 36:23 37:1 37:3 37:6 37:10 37:16 37:17 37:17 37:19 37:20 37:20 37:21 37:21 38:2 38:2 38:5 38:7 38:10 38:11 38:11 38:11 38:12 38:12 38:13 38:15 38:16 38:17 38:17 38:18 38:19 38:19 38:21 38:21 38:22 38:23 38:24 38:24 38:25 38:25 39:1 39:3 39:3 39:5 39:8 39:9 39:9 39:12 39:15 39:16 39:16 39:18 39:18 39:19 39:21 39:22 39:23 39:24 40:3 40:7 40:10 40:11 40:12 40:13 40:14 40:15 40:16 40:16 40:17 40:17 40:18 40:20 40:22 40:23 40:24 41:3 41:3

**the**(301) 41:5 41:7 41:10 41:11 41:12 41:12 41:14 41:15 41:16 41:17 41:19 41:19 41:22 41:22 41:23 41:24 42:1 42:1 42:2 42:2 42:4 42:5 42:6 42:9 42:12 42:13 42:17 42:18 42:21 42:22 42:23 43:1 43:2 43:3 43:4 43:6 43:13 43:14 43:15 43:15 43:16 43:17 43:17 43:19 43:21 43:23 43:24 43:25 44:2 44:3 44:4 44:5 44:7 44:8 44:8 44:10 44:10 44:12 44:13 44:14 44:21 45:1 45:4 45:5 45:5 45:6 45:7 45:8 45:9 45:10 45:11 45:12 45:13 45:13 45:13 45:15 45:16 45:17 45:18 45:18 45:19 45:20 45:20 45:21 45:22 45:23 46:2 46:2 46:3 46:4 46:5 46:5 46:7 46:7 46:8 46:9 46:10 46:12 46:14 46:16 46:18 46:18 46:19 46:20 46:20 46:22 46:23 46:24 46:24 46:25 47:1 47:1 47:2 47:3 47:3 47:4 47:4 47:9 47:10 47:11 47:11 47:13 47:14 47:15 47:17 47:18 47:20 47:22 47:25 48:1 48:3 48:16 48:17 48:18 48:18 48:20 48:21 48:21 48:22 48:22 49:2 49:3 49:4 49:4 49:5 49:8 49:9 49:9 49:10 49:10 49:11 49:12 49:12 49:13 49:17 49:17 49:18 49:18 49:20 49:21 49:21 49:23 49:25 50:1 50:4 50:5 50:7 50:7 50:11 50:12 50:13 50:14 50:15 50:17 50:19 50:19 50:19 50:19 50:20 50:21 50:22 50:22 50:24 50:25 51:1 51:3 51:4 51:5 51:6 51:8 51:11 51:11 51:13 51:15 51:17 51:18 51:18 51:20 51:21 51:22 52:1 52:3 52:4 52:8 52:10 52:11 52:11 52:13 52:16 52:18 52:20 52:21 52:25 53:1 53:2 53:3 53:5 53:8 53:12 53:13 53:17 53:18 53:18 53:19 53:19 53:21 53:23 53:24 54:1 54:1 54:3 54:8 54:9 54:11 54:12 54:12 54:13 54:13 54:16 54:18 54:19 54:20 54:21 54:22 54:22 54:23 54:24 54:24 55:3 55:3 55:4 55:6 55:8 55:9 55:10 55:10 55:12 55:13 55:14 55:18 55:20 55:21 55:21 55:23 56:1 56:4 56:5 56:6 56:7 56:7 56:9 56:11 56:13 56:15 56:16 56:17 56:18 56:19 56:20 56:20 56:21 56:23 56:24 56:25 57:1 57:1

**the**(301) 7:8 7:9 7:11 7:13 7:14 7:16 7:20 7:22 7:23 7:25 8:1 8:3 8:3 8:4 8:7 8:8 8:8 8:10 8:14 8:15 8:16 8:17 8:20 8:21 8:23 8:24 8:25 8:25 9:1 9:3 9:8 9:9 9:11 9:15 9:16 9:18 9:19 9:20 9:21 9:24 9:25 10:1 10:2 10:3 10:4 10:5 10:10 10:10 10:13 10:13 10:13 10:15 10:15 10:16 10:18 10:19 10:20 11:1 11:3 11:4 11:4 11:5 11:6 11:8 11:9 11:10 11:11 11:12 11:12 11:14 11:19 11:22 12:5 12:7 12:7 12:8 12:12 12:19 12:22 12:24 12:25 12:25 13:1 13:3 13:4 13:6 13:6 13:7 13:7 13:8 13:9 13:10 13:13 13:13 13:17 13:20 13:24 13:25 14:3 14:4 14:4 14:5 14:5 14:6 14:7 14:8 14:10 14:11 14:12 14:14 14:15 14:15 14:15 14:17 14:17 14:20 14:23 14:25 15:1 15:1 15:3 15:6 15:9 15:11 15:12 15:13 15:15 15:18 15:20 15:21 15:22 15:22 15:24 15:24 16:3 16:3 16:4 16:4 16:5 16:8 16:10 16:10 16:11 16:16 16:17 16:17 16:20 16:21 17:1 17:3 17:3 17:6 17:7 17:10 17:13 17:15 17:15 17:16 17:17 17:20 17:20 17:24 17:25 18:1 18:2 18:2 18:4 18:4 18:9 18:10 18:10 18:11 18:12 18:14 18:16 18:20 18:20 18:21 18:22 18:23 18:23 18:25 18:25 19:2 19:5 19:6 19:11 19:12 19:14 19:14 19:15 19:16 19:17 19:18 19:19 20:3 20:3 20:7 20:8 20:8 20:9 20:11 20:16 20:17 20:22 20:24 20:25 21:3 21:7 21:7 21:8 21:9 21:13 21:15 21:15 21:18 21:21 21:22 21:23 21:23 22:8 22:11 22:11 22:12 22:12 22:13 22:13 22:14 22:18 22:19 22:20 22:20 22:22 22:22 22:23 22:24 22:25 23:1 23:2 23:2 23:13 23:14 23:21 23:21 23:23 23:24 23:25 23:25 24:1 24:1 24:2 24:5 24:5 24:8 24:9 24:10 24:14 24:14 24:15 24:16 24:18 24:18 24:19 24:20 24:21 24:23 24:23 24:23 24:25 25:1 25:1 25:2 25:3 25:7 25:10 25:10 25:11 25:14 25:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 57:2 57:2 57:3 57:3 57:4 57:6 57:12 57:13 57:13 57:15 57:22 57:24 57:24 57:25 57:25 58:1 58:2 58:2 58:4 58:4 58:5 58:6 58:10 58:10 58:11 58:13 58:13 58:13 58:15 58:16 58:20 58:21 58:21 58:23 59:1 59:2 59:3 59:4 59:4 59:5 59:9 59:10 59:11 59:11 59:12 59:13 59:14 59:15 59:16 59:16 59:21 59:22 59:23 59:24 60:1 60:1 60:3 60:5 60:5 60:6 60:7 60:8 60:14 60:17 60:20 60:20 60:23 60:24 60:25 61:1 61:2 61:2 61:3 61:6 61:10 61:11 61:12 61:13 61:14 61:14 61:16 61:16 61:17 61:18 61:18 61:19 61:19 61:20 61:21 61:23 61:23 61:25 61:25 62:2 62:3 62:5 62:6 62:6 62:6 62:7 62:8 62:10 62:13 62:16 62:17 62:17 62:20 62:21 62:22 62:23 63:6 63:7 63:7 63:12 63:13 63:14 63:18 63:18 63:20 64:1 64:2 64:4 64:5 64:5 64:6 64:7 64:8 64:10 64:11 64:11 64:16 65:7 65:13 65:14 65:16 65:16 65:16 65:19 65:21 65:21 65:22 66:1 66:3 66:3 66:5 66:8 66:9 66:14 66:18 66:20 66:22 67:1 67:4 67:8 67:8 67:12 67:12 67:13 67:19 67:20 67:20 67:22 67:22 67:25 68:1 68:5 68:15 68:21 68:22 69:2 69:4 69:4 69:6 69:9 69:14 69:18 69:19 69:19 69:23 70:1 70:4 70:5 70:8 70:9 70:10 70:10 70:11 70:11 70:12 70:12 70:13 70:14 70:15 70:15 70:16 70:16 70:18 70:20 70:21 70:23 71:5 71:12 71:13 71:15 71:18 71:23 71:24 72:1 72:3 72:3 72:6 72:7 72:8 72:10 72:12 72:12 72:12 72:15 72:15 72:19 72:23 72:25 73:4 73:7 73:9 73:9 73:12 73:12 73:15 73:18 73:18 73:20 73:21 73:23 73:23 74:2 74:3 74:4 74:5 74:6 74:10 74:11 74:14 74:15 74:17 74:17 74:19 74:20 74:23 75:5 75:5 75:9 75:15 75:25 75:11 75:13 75:15 75:16 75:18 75:18 75:20 75:21 75:21 75:21 75:25 76:4 76:4 76:7 76:11 76:12 76:13 76:14 76:16 76:23 76:24 77:5 77:8 77:12 77:15 77:16 77:17 77:17 77:18 77:23 77:24 77:24 78:3 78:10 78:14 78:18 78:24 78:24 79:1 79:5 79:7 79:8 79:11 79:13 79:13 | | **the**(301) 79:15 79:15 79:16 79:16 79:19 79:22 79:23 80:1 80:3 80:5 80:7 80:12 80:13 80:14 80:14 80:17 80:18 80:20 80:23 80:25 81:2 81:3 81:5 81:7 81:9 81:10 81:10 81:11 81:11 81:16 81:16 81:19 81:22 81:24 82:1 82:3 82:4 82:4 82:5 82:6 82:7 82:10 82:11 82:12 82:20 82:20 82:22 82:22 82:23 82:23 83:1 83:3 83:5 83:7 83:8 83:8 83:9 83:10 83:12 83:12 83:14 83:15 83:15 83:16 83:17 83:17 83:18 83:19 83:19 83:21 83:21 83:22 83:23 83:24 83:25 83:25 84:1 84:2 84:2 84:4 84:5 84:5 84:5 84:5 84:5 84:6 84:7 84:7 84:9 84:11 84:13 84:14 84:14 84:14 84:15 84:16 84:17 84:18 84:18 84:20 84:21 84:21 84:22 85:2 85:4 85:5 85:8 85:12 85:14 85:15 85:15 85:15 85:16 85:17 85:17 85:19 85:21 85:21 85:22 85:25 85:25 86:1 86:2 86:3 86:3 86:4 86:4 86:5 86:7 86:9 86:10 86:10 86:10 86:11 86:12 86:12 86:13 86:15 86:15 86:16 86:18 86:19 86:19 86:23 86:25 86:25 87:1 87:1 87:2 87:2 87:3 87:5 87:7 87:8 87:8 87:9 87:11 87:12 87:13 87:13 87:14 87:14 87:15 87:17 87:17 87:18 87:19 87:21 87:22 87:23 87:24 87:24 87:25 88:1 88:2 88:4 88:4 88:4 88:5 88:6 88:7 88:8 88:9 88:9 88:11 88:13 88:14 88:14 88:15 88:16 88:16 88:17 88:17 88:19 88:19 88:20 88:22 88:23 88:23 88:25 89:1 89:2 89:3 89:4 89:4 89:7 89:7 89:8 89:9 89:9 89:9 89:10 89:11 89:11 89:12 89:14 89:15 89:16 89:17 89:18 89:19 89:20 90:16 90:17 90:20 90:21 90:22 90:24 90:25 91:1 91:2 91:2 91:2 91:3 91:4 91:6 91:7 91:9 91:9 91:12 91:13 91:16 91:17 91:17 91:19 91:21 91:22 91:23 91:24 92:2 92:3 92:5 92:6 92:8 92:9 92:11 92:12 92:12 92:13 92:15 92:18 92:19 92:20 92:20 92:22 92:22 92:24 92:25 93:1 93:1 93:3 93:6 93:6 93:7 93:9 93:9 93:12 93:15 93:16 93:17 93:19 93:19 93:22 93:22 93:23 93:24 | | **the**(301) 93:25 94:1 94:2 94:3 94:3 94:4 94:4 94:7 94:9 94:11 94:13 94:15 94:16 94:20 94:24 95:1 95:2 95:2 95:3 95:5 95:6 95:6 95:7 95:9 95:11 95:11 95:12 95:13 95:14 95:15 95:16 95:16 95:17 95:18 95:19 95:23 95:25 96:1 96:3 96:3 96:4 96:5 96:5 96:7 96:8 96:9 96:15 96:16 96:18 96:19 96:19 96:20 96:22 96:23 97:1 97:2 97:2 97:2 97:3 97:4 97:4 97:5 97:6 97:9 97:9 97:10 97:11 97:13 97:14 97:15 97:16 97:18 97:20 97:22 97:24 97:24 98:1 98:2 98:2 98:3 98:5 98:5 98:6 98:7 98:8 98:9 98:10 98:10 98:12 98:15 98:16 98:17 98:20 98:20 98:21 98:22 98:25 98:25 99:1 99:2 99:2 99:4 99:4 99:6 99:8 99:9 99:12 99:12 99:14 99:14 99:16 99:19 99:19 99:20 99:20 99:22 100:1 100:3 100:3 100:5 100:5 100:6 100:7 100:7 100:11 100:15 100:18 100:19 100:21 100:21 100:22 100:23 101:1 101:1 101:2 101:5 101:7 101:10 101:10 101:13 101:14 101:15 101:18 101:18 101:21 101:22 101:22 101:23 101:24 101:25 102:2 102:2 102:4 102:7 102:8 102:10 102:11 102:11 102:11 102:12 102:12 102:13 102:14 102:15 102:16 102:20 102:22 102:24 102:25 103:1 103:1 103:4 103:5 103:7 103:8 103:9 103:11 103:12 103:14 103:14 103:15 103:15 103:16 103:17 103:18 103:19 103:22 103:23 103:24 103:25 104:3 104:6 104:8 104:10 104:10 104:12 104:17 104:17 104:18 104:19 104:23 104:23 104:24 105:2 105:6 105:7 105:8 105:9 105:13 105:14 105:16 105:17 105:19 105:20 105:21 105:21 105:23 105:25 106:1 106:1 106:4 106:4 106:4 106:6 106:8 106:9 106:9 106:10 106:11 106:12 106:12 106:13 106:20 106:22 106:23 106:24 106:25 107:1 107:3 107:7 107:9 107:9 107:12 107:14 107:15 107:15 107:18 107:18 107:19 107:20 107:23 107:25 108:4 108:6 108:8 108:8 108:9 108:11 108:13 108:16 108:19 108:23 108:25 109:2 109:8 109:11 109:12 109:17 109:18 109:20 109:22 109:25 110:1 110:6 110:6 110:6 110:7 110:9 110:11 110:14 110:15 110:15 110:16 110:16 110:20 110:22 110:22 110:25 110:25 111:2 111:8 111:10 111:12 111:16 111:20 111:22 111:24 112:2 112:2 112:4 112:5 112:7 | | **the**(301) 112:8 112:9 112:11 112:12 112:15 112:16 112:18 112:20 112:20 112:21 112:21 112:23 112:24 112:25 113:1 113:2 113:5 113:7 113:10 113:13 113:15 113:16 113:20 113:21 113:22 113:23 113:23 113:25 113:25 114:1 114:2 114:2 114:4 114:6 114:7 114:12 114:12 114:13 114:14 114:15 114:17 114:19 114:20 114:21 114:22 114:23 114:24 115:2 115:7 115:8 115:13 115:16 115:18 115:18 115:19 115:20 115:21 115:22 115:22 115:23 116:1 116:1 116:2 116:3 116:4 116:5 116:5 116:8 116:9 116:9 116:10 116:12 116:12 116:12 116:13 116:16 116:18 116:19 116:22 116:22 116:24 117:3 117:3 117:4 117:5 117:6 117:6 117:7 117:8 117:8 117:9 117:14 117:14 117:18 117:18 117:19 117:20 117:21 117:21 117:22 117:23 117:24 117:25 118:2 118:5 118:7 118:8 118:8 118:9 118:12 118:13 118:14 118:15 118:16 118:17 118:18 118:18 118:19 118:20 118:22 118:23 118:24 118:25 119:1 119:2 119:4 119:5 119:6 119:8 119:9 119:9 119:10 119:10 119:13 119:14 119:15 119:16 119:16 119:18 119:19 119:19 119:20 119:20 119:23 119:23 119:24 119:24 120:1 120:3 120:4 120:4 120:5 120:6 120:9 120:9 120:12 120:14 120:15 120:17 120:17 120:20 120:21 120:24 121:2 121:3 121:4 121:6 121:11 121:12 121:15 121:17 121:19 121:19 121:21 121:23 122:2 122:3 122:5 122:7 122:8 122:9 122:9 122:14 122:16 122:16 122:17 122:22 122:24 123:1 123:3 123:3 123:4 123:5 123:7 123:7 123:8 123:8 123:9 123:13 123:14 123:16 123:19 123:20 123:20 123:21 123:24 123:25 124:1 124:4 124:5 124:8 124:9 124:9 124:11 124:13 124:15 124:18 124:20 124:20 124:23 124:23 125:2 125:2 125:3 125:4 125:5 125:7 125:7 125:8 125:10 125:10 125:12 125:17 125:19 125:20 125:21 125:23 125:24 126:1 126:3 126:4 126:5 126:6 126:8 126:8 126:10 126:11 126:15 126:19 126:22 126:23 126:24 126:25 127:2 127:2 127:5 127:5 127:6 127:7 127:10 127:11 127:13 127:13 127:14 127:15 127:16 127:16 127:17 127:18 127:19 127:21 127:23 127:23 128:2 128:3 128:5 128:5 128:7 128:8 128:9 128:10 128:16 128:19 128:20 128:23 128:24 128:25 129:2 129:3 129:5 129:7 129:12 129:12 129:14 129:14 129:16 129:18 129:19 129:21 129:24 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 130:1 130:2 130:4 130:8 130:9 130:14 130:15 130:17 130:23 130:25 131:1 131:2 131:6 131:6 131:8 131:9 131:10 131:12 131:12 131:14 131:14 131:17 131:20 131:21 131:22 131:24 131:24 131:25 132:1 132:2 132:6 132:7 132:8 132:11 132:12 132:16 132:16 132:18 132:24 133:1 133:1 133:2 133:8 133:14 133:14 133:16 133:17 133:17 133:18 133:21 133:21 133:23 133:25 134:1 134:2 134:3 134:5 134:6 134:7 134:8 134:14 134:16 134:16 134:17 134:17 134:20 134:20 134:21 134:21 134:22 134:24 134:25 134:25 135:1 135:1 135:2 135:4 135:12 135:12 135:13 135:20 135:21 136:16 136:18 137:4 137:15 137:16 137:17 137:19 137:20 137:22 137:23 137:23 137:25 137:25 138:3 138:4 138:4 138:5 138:6 138:9 138:10 138:11 138:12 138:12 138:14 138:17 138:20 138:20 138:25 139:2 139:4 139:11 139:16 139:17 139:19 139:20 139:21 139:25 140:2 140:4 140:5 140:5 140:9 140:11 140:11 140:15 140:16 140:18 140:19 140:20 140:20 140:21 140:21 140:24 140:24 141:1 141:1 141:7 141:8 141:9 141:11 141:11 141:17 141:18 141:24 142:2 142:3 142:4 142:5 142:9 142:14 142:15 142:17 142:17 142:17 142:20 142:21 142:22 142:24 142:24 142:25 143:2 143:3 143:4 143:8 143:9 143:11 143:11 143:17 143:19 143:21 143:21 143:22 143:23 143:24 143:25 143:25 144:2 144:6 144:7 144:8 144:10 144:11 144:13 144:14 144:15 144:16 144:17 144:20 144:21 144:23 144:23 144:25 145:6 145:10 145:11 145:12 145:13 145:14 145:15 145:16 145:16 145:17 145:18 145:21 145:22 145:23 145:24 146:1 146:3 146:6 146:6 146:9 146:9 146:10 146:11 146:12 146:13 146:13 146:16 146:17 146:18 146:21 146:21 146:22 146:22 146:23 146:24 146:24 146:24 147:1 147:1 147:2 147:2 147:4 147:8 147:9 147:10 147:11 147:11 147:12 147:12 147:14 147:14 147:21 147:21 147:22 147:23 147:24 147:25 148:1 148:2 148:3 148:4 148:4 148:4 148:6 148:8 148:8 148:14 148:17 148:20 148:22 148:25 149:1 149:1 149:2 149:4 149:5 149:8 149:10 149:11 149:11 149:13 149:14 149:14 149:14 149:15 149:15 149:16 149:16 149:18 149:18 149:19 149:19 149:25 150:5 150:6 150:7 150:8 150:9 150:10 150:11 150:15 150:15 150:17 150:21 150:22 150:23 150:23

**the(301)** 151:2 151:3 151:13 151:14 151:15 151:17 151:22 151:22 151:23 151:25 152:2 152:5 152:5 152:8 152:9 152:11 152:13 152:16 152:17 152:17 152:17 152:17 152:19 152:21 152:22 152:23 153:3 153:4 153:6 153:8 153:9 153:11 153:15 153:16 153:18 153:19 154:1 154:2 154:5 154:6 154:7 154:10 154:11 154:12 154:13 154:16 154:17 154:18 154:18 154:19 154:20 154:21 154:23 154:25 155:1 155:2 155:3 155:5 155:7 155:8 155:9 155:10 155:11 155:12 155:12 155:13 155:13 155:14 155:15 155:16 155:16 155:20 155:21 155:21 155:22 155:23 155:24 156:1 156:1 156:3 156:4 155:6 156:5 156:8 156:9 156:10 156:11 156:16 156:25 157:8 157:9 157:13 157:13 157:15 157:15 157:17 157:18 157:18 157:20 157:20 157:21 157:23 157:23 158:1 158:7 158:11 158:11 158:16 158:16 158:17 158:20 159:3 159:4 159:5 159:7 159:10 159:11 159:21 159:22 160:3 160:4 160:6 160:9 160:10 160:13 160:22 160:23 160:23 161:2 161:3 161:7 161:8 161:10 161:10 161:10 161:12 161:12 161:16 161:17 161:17 161:19 161:19 161:22 161:25 162:1 162:1 162:3 162:3 162:4 162:6 162:11 162:12 162:14 162:15 162:16 162:17 162:17 162:21 162:23 163:7 163:8 163:13 163:15 163:20 163:24 163:25 164:2 164:4 164:8 164:9 164:9 164:10 164:11 164:12 164:12 164:12 164:13 164:14 164:14 164:14 164:15 164:16 164:16 164:16 164:17 164:19 164:20 164:21 165:4 165:4 165:5 165:10 165:11 165:11 165:15 165:15 165:16 165:18 165:20 165:21 165:22 165:23 166:1 166:2 166:2 166:5 166:5 166:5 166:7 166:7 166:9 166:9 166:10 166:12 166:14 166:14 166:25 166:17 166:20 166:23 166:24 166:25 167:1 167:2 167:9 167:10 167:16 167:16 167:17 167:17 167:19 167:22 167:23 168:2 168:2 168:4 168:5 168:7 168:8 168:14 168:16 168:16 168:18 168:22 168:22 168:23 168:24 169:1 169:2 169:3 169:5 169:7 169:8 169:9 169:9 169:10 169:13 169:14 169:14 169:15 169:16 169:16 169:17 169:19 169:20 169:21 169:22 169:25 170:1 170:4 170:8 170:9 170:11 170:12 170:15 170:17 170:17 170:20 170:20 170:22 170:22 170:23 170:24 170:24 170:25 170:25

**the(43)** 170:25 171:1 171:2 171:2 171:8 171:9 171:11 171:13 171:16 171:16 171:19 171:18 171:23 171:25 172:5 172:8 172:10 172:12 172:15 172:15 172:15 172:20 172:22 172:22 172:23 172:23 172:24 173:2 173:4 173:5 173:7 173:11 173:12 173:12 173:15 173:20 173:25 174:2 174:4 174:6 174:7 174:7 174:8

**theater(1)** 69:4
**their(77)** 10:6 13:23 17:12 19:17 22:16 24:3 24:11 27:8 30:1 31:3 31:12 31:13 32:12 32:13 32:18 33:1 35:17 36:4 47:7 47:21 59:24 61:24 62:1 62:12 62:12 63:15 63:20 66:18 66:20 67:10 68:10 68:12 70:20 72:14 79:24 83:11 86:7 88:12 88:18 88:18 89:25 90:20 98:4 99:6 102:3 112:1 120:8 123:3 124:16 127:24 127:25 128:1 128:1 128:2 128:14 128:15 128:17 129:5 129:9 129:20 130:6 130:16 130:20 132:12 141:6 142:9 143:14 143:15 149:13 149:21 150:13 150:13 151:22 152:3 154:7 163:17

**them(62)** 7:10 7:18 7:18 19:18 21:12 27:6 32:15 35:20 37:5 41:1 41:6 50:13 52:23 55:20 65:25 66:13 66:14 66:17 66:18 66:19 67:9 67:24 67:24 68:25 71:15 72:6 72:11 74:16 74:16 75:12 76:6 77:4 80:10 83:16 85:9 86:14 89:4 91:8 96:23 97:7 98:8 100:2 103:10 103:18 106:15 108:17 108:22 111:14 128:13 131:7 133:21 137:17 137:19 139:6 149:24 153:14 162:21 166:16 167:15 167:24 171:15

**themselves(3)** 18:12 79:24 95:24
**then(107)** 14:12 14:19 18:8 20:16 23:11 27:17 28:25 29:8 30:3 33:9 33:14 35:11 45:6 48:14 49:2 49:5 49:22 49:23 49:23 49:25 52:10 53:4 53:7 53:22 54:3 54:21 56:5 59:4 62:1 62:25 63:9 63:10 65:10 69:1 70:12 71:23 77:19 80:24 81:14 84:20 84:22 87:11 92:13 92:14 92:17 93:3 96:12 96:13 96:18 97:1 97:17 97:17 97:21 97:25 98:7 99:19 99:20 99:23 100:2 101:21 102:1 102:16 103:11 103:22 104:18 106:20 108:3 108:19 109:14 109:18 110:12 113:6 114:8 115:12 115:21 117:19 119:5 121:2 123:23 124:19 125:21 126:25 127:7 128:13 130:20 133:4 144:1 144:12 147:8 147:24 148:1 151:3 152:19 153:16 154:13 155:8 156:9 163:13 163:14 163:24 164:1 165:15 168:25 170:21 171:1 171:21 171:25 174:1

**theoretically(1)** 68:24
**theory(6)** 97:11 165:7 165:12 165:14 165:15 166:13

**theory's(1)** 165:17
**there(118)** 9:5 9:8 10:3 10:12 11:9 11:24 15:6 16:18 17:6 18:2 20:2 21:23 24:15 26:11 27:17 31:1 31:3 31:18 33:12 33:15 37:23 38:15 39:10 40:13 40:14 41:13 43:2 44:2 51:13 52:6 52:7 52:9 52:10 52:11 52:14 52:18 52:19 55:11 56:3 57:21 60:4 60:8 60:20 61:4 61:6 62:24 64:4 67:23 74:18 74:25 75:19 76:8 77:22 77:23 77:24 79:20 82:8 82:17 84:15 88:11 91:3 91:5 91:6 91:10 95:23 97:22 97:24 98:14 99:13 102:16 102:22 104:7 104:7 104:9 104:16 104:21 106:13 107:2 107:9 107:24 111:5 113:15 114:18 114:21 114:23 115:9 115:19 117:5 122:18 122:23 132:3 133:18 134:19 134:23 139:1 140:16 140:20 143:4 143:21 144:20 145:6 145:14 146:14 147:25 148:17 153:17 156:9 156:9 156:15 158:5 164:20 167:2 170:16 171:9 171:20 171:21 173:22

**there's(29)** 51:2 51:3 52:2 52:14 55:20 63:3 68:9 69:25 74:8 74:10 74:21 74:22 75:21 75:21 81:13 89:6 90:23 92:10 92:11 92:13 98:12 98:20 99:13 100:20 152:14 166:16 167:25 169:3 169:13

**thereafter(5)** 97:22 97:25 104:3 116:9 143:11

**therefore(11)** 11:23 34:1 54:4 72:2 84:3 89:10 99:1 104:11 126:9 126:10 162:4

**there's(35)** 7:5 8:13 13:12 18:16 33:23 36:17 36:25 37:18 37:19 45:24 47:4 47:5 47:8 103:6 103:11 103:16 106:18 106:19 108:7 108:21 110:13 113:8 117:2 117:16 117:17 117:24 119:1 127:11 129:22 129:24 130:3 141:8 142:10 144:16 146:18

**these(64)** 9:6 12:22 15:10 16:1 27:4 27:21 29:19 35:21 37:12 44:17 48:25 49:14 50:5 55:15 55:17 56:7 56:16 58:17 58:18 58:19 65:19 71:17 77:5 82:7 83:18 86:14 86:23 88:13 89:6 90:20 92:7 92:16 92:23 93:16 93:19 94:1 98:4 98:23 99:17 102:9 103:8 104:5 106:14 108:17 109:22 109:24 110:19 112:23 118:2 118:8 118:19 121:20 124:7 133:8 133:20 144:16 145:4 149:12 150:2 151:5 152:15 153:8 162:2 172:22

**they(208)** 7:14 8:8 8:8 10:7 11:20 12:2 12:3 12:3 12:11 13:23 13:24 22:13 22:16 24:3 24:6 24:11 24:12 24:13 27:9 27:9 28:13 30:2 31:2 31:3 31:3 31:7 31:9 31:10 31:17 32:16 34:4 35:8 36:9 36:11 39:17 43:25 49:22 51:18 52:12 53:19 53:20 53:20 53:23 53:23 54:4 55:1 59:24 60:11 61:9 61:10 61:11 61:12 61:13 61:21 61:22 61:24 61:25 62:16 62:18 63:6 63:16 63:18 63:19 63:19 63:21 64:7 64:8 64:9 64:9 65:15 66:2 66:3 66:3 66:12 66:15 66:15 67:10 67:24 68:1 68:23 68:25 69:8 70:24 71:4 71:5 71:6 72:1 72:11 76:4 77:18 81:12 82:18 83:10 83:12 84:19 86:6 86:16 86:17 86:18 86:24 87:17 88:14 88:14 89:10 89:21 89:22 89:25 90:10 90:11 90:19 91:1 91:8 91:9 91:23 92:20 92:24 93:3 93:18 93:25 94:3 94:4 95:18 95:23 97:13 98:14 98:14 100:21 101:23 101:24 101:24 102:25 103:8 103:9 104:10 104:18 107:16 117:3 117:11 118:3 118:7 119:25 121:22 122:14 124:24 128:2 128:5 128:21 128:23 129:9 130:6 130:16 130:18 130:18 130:20 131:5 137:18 137:21 141:3 143:10 143:12 143:24 144:2 144:23 144:23 144:25 145:1 145:12 146:19 147:7 147:10 148:5 148:8 149:7 149:9 149:10 150:14 151:3 151:21 152:3 153:19 153:21 153:25 154:2 154:6 155:8 155:14 156:7 156:21 157:1 157:4 160:2 162:8 163:22 164:24 166:18 166:19 168:11 168:25 170:13 171:4 172:13 172:14

**they're(15)** 50:8 50:9 52:17 53:5 54:3 58:18 61:24 69:1 75:14 81:19 86:5 99:10 151:8 151:21 167:12

**they've(4)** 76:3 98:21 149:23 151:23
**they'd(1)** 117:19
**they're(15)** 7:24 9:11 22:10 31:14 40:21 52:15 107:4 107:12 108:20 108:25 114:17 121:3 124:16 130:7 144:25

**they've(6)** 32:16 111:2 116:23 122:15 139:3 145:3

**thing(13)** 18:20 19:11 28:25 29:1 39:15 45:23 88:24 106:4 163:25 164:20 167:25 171:17 172:20

**things(18)** 9:2 11:9 35:4 36:18 39:19 59:21 63:13 69:6 74:12 74:19 139:6 145:22 146:15 149:3 149:12 155:19 164:23 173:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **think**(195) 9:15 10:2 10:14 10:23 11:9 11:25 12:22 13:21 13:22 14:1 15:10 15:23 16:8 16:14 17:9 17:19 18:20 19:16 22:4 23:4 23:11 23:25 25:12 26:5 27:4 29:12 29:18 31:23 33:3 34:10 34:13 35:4 36:9 36:16 36:24 37:6 37:9 37:24 38:1 38:8 38:10 38:24 39:3 39:4 39:7 39:12 40:6 40:20 40:24 42:7 44:4 44:9 47:24 48:5 48:18 48:20 48:20 48:22 50:5 50:6 50:7 50:8 50:15 50:24 58:3 60:19 64:3 64:23 67:25 68:25 75:7 76:2 78:5 79:6 79:21 80:11 81:13 82:6 82:8 82:18 85:2 85:5 88:20 91:15 91:22 92:6 92:10 92:18 92:19 93:13 93:15 95:6 95:8 95:15 99:24 100:25 101:6 101:8 101:16 101:23 103:2 104:6 104:15 104:22 106:20 107:1 107:3 108:1 108:21 109:10 109:22 110:3 110:7 111:8 111:11 111:18 111:24 112:4 112:12 112:23 113:12 116:6 117:4 117:12 117:16 120:24 121:6 121:9 121:12 122:8 125:2 125:6 125:15 125:18 125:25 126:11 126:15 128:22 130:2 130:3 130:9 131:11 133:4 136:23 138:6 138:23 139:10 139:12 139:20 140:1 140:18 140:24 141:10 141:10 141:11 141:12 142:21 143:3 143:10 146:13 147:21 148:6 148:12 150:20 152:2 152:22 153:5 153:16 156:18 160:16 161:6 161:7 161:8 161:25 162:2 163:5 163:15 163:21 163:22 164:18 165:17 166:20 167:17 169:24 170:6 170:23 171:11 171:20 172:17 172:18 172:20 172:20 173:10 | **those**(96) 7:12 7:16 7:16 8:5 12:6 19:16 20:6 20:9 26:25 27:13 37:23 39:7 40:25 47:9 47:14 51:17 57:9 59:18 65:25 67:15 71:17 72:8 72:13 75:23 76:2 77:11 79:8 79:16 80:7 80:9 81:14 84:4 89:12 92:1 94:1 94:2 94:16 94:17 94:17 94:18 95:25 96:4 96:22 97:5 98:5 98:17 98:17 102:5 103:23 104:22 104:24 106:19 106:25 107:5 107:10 108:21 112:25 114:11 118:4 118:6 118:11 122:2 122:10 122:22 124:11 124:12 124:25 125:1 125:23 125:25 126:11 129:20 130:25 132:1 132:24 138:2 138:23 139:25 143:13 143:15 147:23 147:24 148:1 149:15 149:22 151:9 151:12 152:7 153:12 153:14 153:25 160:11 163:2 166:15 168:3 171:13 | **topic**(2) 135:21 154:1 | | **trying**(8) 39:13 40:4 44:6 48:20 49:16 125:11 147:20 168:20 | |
| | | **torres**(3) 5:51 44:16 105:4 | | **tuesday**(1) 173:12 | |
| | | **total**(12) 24:9 29:7 30:10 30:13 30:14 30:18 31:11 32:2 32:6 43:4 50:18 117:18 | | **turn**(19) 30:19 45:11 50:11 71:8 71:9 87:6 90:2 90:3 92:5 103:23 117:9 125:23 126:16 127:7 128:20 129:1 130:21 131:10 169:6 | |
| | | **totality**(2) 112:5 118:2 | | **turned**(2) 30:15 151:1 | |
| | | **totally**(2) 37:7 152:16 | | **turnover**(10) 11:19 30:3 30:12 30:13 30:18 30:19 84:19 84:20 169:17 169:24 | |
| | | **touched**(2) 10:14 104:14 | | | |
| | | **toward**(2) 26:20 27:17 | | **turns**(1) 21:7 | |
| | | **towards**(2) 72:10 75:24 | | **twice**(4) 25:13 25:20 25:21 130:15 | |
| | | **track**(1) 152:12 | | **two**(86) 9:24 10:12 11:9 21:20 24:19 28:21 30:4 30:5 31:5 31:25 33:13 33:17 41:11 44:25 51:2 52:10 54:8 57:18 61:10 63:23 75:19 75:20 77:7 77:8 77:22 78:5 78:8 83:14 92:11 103:14 106:18 108:17 113:9 113:23 115:4 115:7 123:12 130:4 134:25 135:2 135:13 138:18 140:16 145:4 145:6 145:14 146:13 146:22 147:1 147:12 147:21 147:25 148:5 149:1 149:5 149:9 149:10 149:20 151:2 151:7 151:11 152:5 152:21 153:9 153:19 157:12 157:12 157:18 157:18 158:1 158:1 158:11 158:17 160:6 161:11 163:10 163:12 167:4 169:5 169:5 171:20 172:13 172:25 173:7 173:10 173:11 | |
| | | **traction**(1) 34:11 | | | |
| | | **trade**(9) 24:15 24:19 46:15 50:22 61:20 62:3 142:11 144:13 149:6 | | | |
| | | **traded**(1) 65:24 | | | |
| **thinking**(1) 46:12 | | **trading**(3) 87:18 87:19 95:17 | | | |
| **thinks**(2) 68:12 142:12 | | **training**(1) 118:17 | | | |
| | | **transaction**(5) 90:21 91:11 92:9 160:23 161:17 | | **two-page**(1) 172:18 | |
| **third**(3) 3:21 9:21 14:13 14:20 15:13 15:22 16:3 23:6 30:3 30:9 47:4 47:5 53:20 54:14 55:19 55:21 55:24 56:22 100:15 123:16 139:19 145:15 169:16 | | | | **type**(3) 28:4 91:5 91:11 | |
| | | **transacts**(1) 90:25 | | **types**(3) 37:15 122:19 | |
| | | **transcript**(3) 1:16 1:53 174:7 | | **u.s**(2) 163:1 163:1 | |
| | | **transcription**(1) 1:46 1:53 | | **ucc**(1) 100:23 | |
| | | **transcripts**(3) 112:16 153:4 170:21 | | **ultimate**(2) 96:23 114:14 | |
| **this**(219) 7:12 9:4 9:7 9:15 9:20 11:1 11:2 13:8 13:10 14:4 15:1 15:17 16:14 18:17 19:8 20:13 21:14 21:25 22:18 23:9 23:10 23:12 24:13 24:14 24:24 26:21 27:10 28:13 29:8 29:12 29:12 29:25 30:24 32:8 32:16 32:19 34:6 34:9 34:14 34:18 35:17 36:12 38:24 39:3 40:19 40:22 41:3 41:20 42:17 43:3 43:4 43:7 43:22 44:5 44:5 44:6 44:11 44:25 46:13 46:17 48:25 50:7 50:11 50:14 50:18 56:24 58:1 58:12 58:22 58:23 61:2 61:6 61:6 61:13 62:2 62:11 62:23 65:22 66:12 66:14 66:15 67:6 67:9 67:11 68:3 69:3 69:11 70:8 70:22 73:4 75:20 76:25 76:25 77:8 77:9 77:22 78:1 78:7 78:12 79:18 80:3 80:19 82:9 82:16 82:19 84:10 85:5 85:6 85:13 85:22 85:22 87:4 87:7 88:1 88:3 91:1 91:11 91:16 91:25 93:21 94:22 97:8 97:12 97:20 98:19 99:24 100:9 102:6 102:7 102:18 103:9 104:8 105:16 106:12 106:20 107:16 108:8 109:4 109:13 109:21 111:4 112:6 112:10 113:3 113:20 113:22 114:2 114:6 114:20 117:22 119:2 119:9 119:19 120:1 120:22 120:2 120:3 120:7 120:15 120:15 121:3 122:1 122:13 122:15 123:15 125:13 125:16 125:16 126:4 126:12 126:18 126:21 128:1 131:10 131:23 132:15 132:18 132:22 133:1 135:20 137:23 137:24 139:2 139:4 139:24 140:2 141:24 142:2 142:4 143:16 144:9 145:18 148:12 150:4 151:20 153:17 154:7 154:10 154:19 157:14 158:19 158:25 160:4 161:2 162:13 165:6 165:21 166:12 166:20 167:13 168:12 169:13 169:17 170:7 171:1 173:6 173:25 | | **transcript**(3) 1:16 1:53 174:7 | | **ultimately**(1) 90:14 | |
| | | | | **um-hum**(1) 157:10 | |
| | | **transaction**(5) 90:21 91:11 92:9 160:23 161:17 | | **unambiguous**(4) 142:23 144:17 145:4 166:21 | |
| | | **transferred**(2) 86:14 93:10 | | | |
| | | **translate**(2) 168:6 168:8 | | **unanimous**(2) 14:12 15:14 | |
| | | **translation**(1) 168:1 | | **unavailable**(1) 112:7 | |
| | | **trb**(3) 132:1 147:7 160:3 | | **unbreakable**(4) 37:1 37:6 37:10 59:23 | |
| | | **treasurer**(1) 150:20 | | **under**(106) 7:13 7:18 8:5 8:9 8:12 9:24 9:25 10:7 11:8 13:5 22:24 27:13 27:16 28:15 28:19 29:25 30:16 31:5 33:2 34:13 35:8 36:14 41:9 41:19 44:13 45:10 45:13 45:21 46:7 49:12 50:21 56:20 57:4 58:4 60:10 60:13 63:17 63:19 66:1 66:18 69:22 70:5 72:25 73:21 73:22 74:4 74:18 75:15 76:12 77:5 84:16 84:23 86:9 86:22 91:7 91:15 92:3 101:25 111:2 117:22 118:25 119:6 123:1 123:6 123:9 123:19 123:24 124:5 124:8 124:16 124:17 125:5 125:15 125:19 125:24 126:18 126:23 126:24 127:1 127:3 127:5 127:9 127:13 127:24 128:15 128:17 128:21 129:4 129:6 129:20 130:6 130:7 130:25 139:16 141:8 142:10 143:5 143:17 143:23 145:21 154:19 155:23 162:17 166:22 166:1 169:7 | |
| | | **treat**(6) 48:10 74:16 74:16 80:4 80:7 | | | |
| | | **treated**(8) 19:24 20:1 47:6 56:16 67:17 70:17 76:15 84:3 | | | |
| | | **treating**(3) 42:4 47:1 79:24 | | | |
| | | **treatment**(18) 7:25 22:1 26:4 33:13 36:19 37:8 38:12 40:10 41:14 41:15 41:22 42:7 44:12 46:8 52:4 52:15 55:23 84:14 | | | |
| | | **treats**(1) 21:20 | | | |
| | | **trees**(1) 16:8 | | **underscoring**(1) 78:3 | |
| | | **tremendously**(1) 16:17 | | **understand**(5) 47:7 52:5 74:5 94:15 119:8 | |
| | | **trial**(1) 75:20 | | **understanding**(37) 9:5 15:9 65:25 98:6 111:6 112:12 115:25 118:12 118:14 119:19 119:21 119:22 120:3 120:6 120:8 120:9 131:23 132:4 132:14 132:22 133:2 133:25 134:9 135:3 135:12 135:15 149:13 149:18 154:5 154:15 156:22 156:25 157:2 162:8 162:15 162:16 162:20 | |
| | | **tribune**(41) 1:7 4:21 4:30 69:4 84:20 86:24 95:21 97:17 97:18 97:20 97:24 100:2 101:22 110:19 110:23 111:5 116:11 116:13 116:19 117:17 120:5 120:5 131:14 132:10 132:19 133:7 133:19 137:16 141:5 150:8 154:5 159:15 160:3 160:22 161:7 162:14 162:18 163:17 166:6 166:8 166:18 | | | |
| **throughout**(1) 119:8 | | **tribune's**(1) 120:16 | | **understands**(1) 117:13 | |
| **thrown**(1) 100:12 | | **tribune"**(2) 142:7 144:4 | | **understood**(6) 15:18 85:11 118:24 119:13 119:14 131:25 | |
| **thus**(2) 21:14 164:15 | | | | | |
| **tie**(1) 146:13 | | **tries**(1) 162:22 | | **unequal**(1) 37:8 | |
| **tied**(2) 133:21 146:20 | | **triggers**(1) 155:7 | | **unequally**(1) 37:15 | |
| **time**(61) 9:7 21:10 21:11 21:20 23:18 29:21 34:6 34:11 35:21 37:9 39:16 42:20 42:21 43:10 43:10 43:22 44:5 63:12 69:9 71:13 74:1 79:8 79:13 80:22 80:24 84:8 87:10 87:10 87:10 90:3 92:20 93:4 93:7 94:9 95:17 96:24 100:22 102:20 102:25 105:10 115:22 119:8 126:12 132:2 132:9 132:12 133:19 133:21 136:25 138:9 143:11 149:22 150:5 150:20 156:15 164:12 165:15 167:5 173:16 173:16 | | **trillions**(1) 68:7 | | **unequivocal**(1) 144:17 | |
| | | **trouble**(1) 44:22 | | | |
| | | **true**(11) 34:7 38:19 66:24 77:12 89:17 114:20 118:19 142:24 143:19 143:20 147:17 | | | |
| **timed**(1) 112:14 | | **true-up**(2) 47:8 47:12 | | | |
| **times**(5) 2:8 71:3 150:20 166:3 168:21 | | **truly**(1) 132:13 | | | |
| **timing**(1) 88:1 | | **trump**(1) 75:21 | | | |
| **title**(3) 11:1 13:11 106:5 | | **trumps**(1) 70:22 | | | |
| **title,"**(1) 13:8 | | **trust**(25) 2:4 6:45 11:14 11:21 16:6 18:15 28:18 28:21 28:23 35:2 35:24 35:25 58:16 58:22 59:5 64:21 90:17 92:8 94:10 94:14 105:7 109:6 109:7 138:16 169:22 | | | |
| **today**(11) 12:13 17:10 65:20 80:23 112:7 115:19 121:4 124:22 161:1 165:5 170:17 | | **trustee**(15) 86:1 87:17 88:17 92:14 95:22 96:3 96:22 103:4 103:5 103:15 103:15 103:22 103:23 103:25 138:17 | | | |
| **today's**(4) 71:13 71:17 87:12 173:12 | | | | | |
| **today's**(1) 110:5 | | | | | |
| **together**(3) 42:21 61:10 167:5 | | **trustees**(2) 11:15 98:2 | | | |
| **told**(3) 21:25 62:18 116:11 | | **truth**(1) 119:7 | | | |
| **tomorrow**(1) 110:6 | | **try**(9) 34:16 64:22 64:23 74:17 94:8 118:8 147:18 152:16 166:24 | | | |
| **ton**(1) 33:23 | | | | | |
| **tongue**(1) 168:20 | | | | | |
| **too**(7) 31:21 31:21 64:8 94:23 148:20 162:21 172:18 | | | | | |
| **tool**(1) 29:8 | | | | | |
| **top**(2) 58:2 87:13 | | | | | |
| **thomas**(1) 4:10 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **unfair**(60) 9:1  10:10  10:13  10:21  12:13 18:19  18:24  19:9  19:10  20:11  21:2  21:13 21:17  21:19  22:2  22:3  22:7  24:12  24:17 24:21  25:4  25:8  31:5  31:15  33:14  36:17 38:6  42:19  43:5  46:11  46:12  51:24  52:4 53:16  53:22  54:3  54:18  55:5  55:9  56:3 56:13  56:14  56:17  57:19  58:6  60:15  60:21 61:1  61:13  61:17  62:12  62:21  62:13  62:16 62:25  63:16  63:23  64:2  79:19  79:22 | | **various**(7) 19:13  27:11  28:18  35:25  38:20 114:24  118:14 | | **was**(264) 14:18  14:20  14:22  14:23  14:25 15:6  15:8  15:11  15:12  17:3  23:3  23:14 24:13  24:15  24:21  25:1  29:13  32:2  32:6 32:22  38:2  38:15  38:16  38:20  38:22  39:15 39:20  39:21  39:22  45:15  45:16  48:21 48:23  50:6  50:14  50:24  53:12  53:12  54:7 59:3  59:9  59:10  60:9  60:12  60:17  60:18 60:19  60:20  61:5  61:14  61:17  61:19  62:1 62:4  64:23  66:10  68:21  70:18  70:21  71:1 71:1  74:2  74:4  74:4  78:15  78:21  79:11 79:13  79:20  80:16  81:1  83:21  85:2  86:16 87:2  88:2  88:5  88:7  88:10  88:19  89:1 89:4  89:4  89:5  91:3  92:19  92:23  93:19 95:21  96:6  96:21  97:1  97:6  97:11  97:18 98:8  98:7  98:7  98:10  98:14  99:13  99:13 99:16  99:19  100:5  100:16  101:18  101:19 102:10  102:20  103:12  104:9  104:18  104:20 104:20  104:21  104:21  107:24  108:8 110:14  110:17  113:21  114:13  115:3  115:3 115:5  115:8  115:9  115:12  115:13  115:13 115:17  115:21  116:1  116:12  116:13  116:15 116:16  116:18  116:19  116:20  116:21  117:9 117:20  118:9  118:13  118:14  118:16  118:17 118:20  118:21  118:21  118:22  118:23  119:9 119:13  119:14  120:3  120:6  120:25  122:23 123:11  131:7  132:1  132:2  132:2  132:3 132:4  132:13  132:16  132:18  132:24  133:13 133:18  133:21  134:6  134:6  134:16  134:20 134:21  134:22  134:23  134:24  135:1  135:2 135:4  135:11  136:15  136:18  136:18  137:15 137:16  138:5  139:9  140:16  140:20  140:20 140:21  141:24  142:1  142:13  142:25  143:1 143:9  143:14  143:20  146:11  146:12  146:20 147:10  147:14  149:17  149:18  149:19 150:10  150:20  150:25  151:5  151:15  152:4 152:9  152:9  152:12  152:13  152:14  152:15 152:17  152:20  152:22  153:8  155:20  156:11 156:25  157:20  157:22  158:3  158:5  158:15 160:9  161:3  161:11  162:3  162:7  162:11 162:11  162:17  164:7  164:9  164:13  164:15 164:17  164:20  165:14  165:21  165:22 165:25  166:2  166:10  166:13  166:19  170:24 172:18  172:19  174:4 | | **well**(68) 8:3  16:10  16:20  17:3  22:13  30:24 31:2  38:4  44:21  48:3  48:4  49:24  50:1 60:3  65:10  69:16  72:7  72:18  74:1  74:5 85:12  89:8  92:17  93:11  93:14  95:5  100:21 100:24  101:7  101:11  101:16  101:19  102:15 108:17  109:17  109:23  111:2  111:10  111:16 116:22  117:7  117:20  120:24  124:13 127:10  128:10  131:8  147:17  148:22  148:24 150:3  151:12  152:3  152:24  158:24  162:14 162:15  162:24  163:24  165:8  167:7  167:8 167:23  168:11  172:6  172:19  173:16  173:18 |
| **unfairly**(23) 11:6  12:12  18:18  20:21  20:23 21:23  32:4  41:23  42:7  48:10  48:25  49:5 52:24  54:24  55:2  59:17  62:3  62:4  63:11 70:15  70:17  74:17  76:21 | | **veering**(1) 64:25 | | | | |
| | | **venture**(1) 68:11 | | | | **went**(3) 23:18  90:10  93:13 |
| **unfairly.**"(1) 13:19 | | **vernacular**(1) 66:21 | | | | **were**(100) 7:13  26:25  27:1  27:2  27:12 |
| **unfairness**(2) 20:3  21:14 | | **version**(2) 29:13  116:24 | | | | 27:20  28:20  32:9  32:10  35:8  36:9  39:11 |
| **unfavored**(1) 39:22 | | **versus**(7) 51:18  54:1  55:21  55:23  60:16 | | | | 42:17  43:2  43:8  43:25  43:25  50:12  55:18 |
| **unfortunate**(1) 88:10 | | 82:21  168:18 | | | | 57:13  60:11  67:25  74:12  82:17  83:10 |
| **unfortunately**(4) 40:25  94:18  140:1  140:6 | | | | | | 83:20  84:5  84:6  86:12  86:14  86:22  86:25 |
| **unhelpful**(1) 154:11 | | **vertical**(3) 27:15  27:24  27:25 | | | | 87:3  88:4  88:10  89:3  89:5  89:24  90:2 |
| **unique**(1) 123:24 | | **very**(32) 21:18  24:4  24:4  26:4  33:20 | | | | 90:16  92:3  92:7  92:13  92:20  92:21  92:24 |
| **united**(7) 1:1  1:18  154:6  155:8  155:15 | | 34:12  36:24  37:5  40:10  42:14  60:23  63:17 | | | | 93:18  93:24  94:4  95:18  95:20  97:5  97:13 |
| 162:2  162:25 | | 65:18  65:20  67:20  69:9  69:9  75:7  87:7 | | | | 98:13  98:13  101:2  102:8  102:23  102:24 |
| | | 94:11  95:14  104:23  127:9  128:2  130:15 | | | | 104:17  110:2  110:20  118:9  119:20  126:19 |
| **units**(1) 85:20 | | 140:6  144:24  148:7  148:7  152:15  163:6 | | | | 128:11  128:14  130:8  132:25  133:9  136:19 |
| **university**(1) 132:17 | | 165:24 | | | | 138:2  138:12  138:22  140:1  143:13  144:21 |
| **unknown**(31) 113:17  134:3  134:10  134:14 | | | | | | 144:23  146:11  147:2  148:1  149:13  150:9 |
| 135:5  135:14  135:17  136:5  136:8  136:13 | | **video**(7) 112:11  133:12  153:3  153:4 | | **viewed**(2) 133:17  136:15 | | 150:14  151:7  152:11  155:16  156:16  157:1 |
| 136:17  136:22  137:1  137:3  137:5  137:8 | | 156:14  161:24  167:10 | | **views**(2) 156:7  156:9 | | 157:4  158:10  159:2  159:12  160:1  160:2 |
| 141:9  141:13  141:15  141:17  141:19  141:22 | | | | **violates**(3) 46:9  72:1  72:7 | | 165:23  166:3  166:18  166:19  170:20 |
| 156:15  156:20  156:23  157:25  158:2  158:8 | | **videos**(1) 111:20 | | **violating**(1) 55:8 | | |
| 158:18  158:22  159:9 | | **videotape**(1) 110:9 | | **violation**(3) 66:5  130:24  131:1 | | **weren't**(2) 55:19  168:16 |
| | | **view**(9) 16:16  16:21  23:5  40:8  75:24 | | **violence**(2) 67:15  72:10  74:15 | | **west**(5) 1:33  145:11  145:23  155:3  163:2 |
| **unless**(8) 8:13  71:15  77:7  101:17  127:20 | | 89:16  126:18  140:6  156:25 | | **violent**(2) 66:13  67:9 | | **we'd**(6) 26:14  33:1  42:13  75:17  112:17 |
| 129:9  144:18  164:10 | | | | **virtual**(1) 24:13 | | 112:25 |
| | | | | **virtually**(2) 116:7  149:3 | | |
| **unlike**(2) 13:14  134:20 | | | | **virtue**(4) 43:18  46:23  47:23  56:21 | | **we'll**(8) 8:19  8:22  16:23  17:6  105:13 |
| **unreliable**(1) 60:20 | | | | **vis**(1) 52:13 | | 110:4  124:19  136:10 |
| **unsecured**(2) 4:5  9:19 | | | | **vis-à**(1) 52:12 | | |
| **unsettling**(1) 65:18 | | | | **vis-à-vis**(6) 50:3  54:13  54:13  55:19  56:15 | | **we're**(27) 8:14  25:18  38:3  38:9  39:2 |
| **unsubordinated**(2) 18:12  54:22 | | | | 72:9 | | 39:12  39:25  40:20  41:1  45:8  45:14  105:9 |
| **until**(3) 8:9  121:19  133:7 | | | | | | 112:13  113:18  116:7  124:22  125:1  125:14 |
| **untouchable**(1) 19:7 | | **vocabulary.**"(1) 12:25 | | | | 128:18  128:25  130:5  130:24  131:15  131:15 |
| **unusual**(4) 16:18  66:23  133:16  142:4 | | **voluntarily**(1) 61:15 | | | | 139:23  140:18  148:10 |
| **unwind**(4) 90:21  90:25  91:13  92:9 | | **vonnegut**(1) 2:28 | | | | |
| **upon**(15) 10:14  48:6  54:9  68:8  72:16  73:1 | | **vote**(1) 68:11 | | | | **we've**(27) 19:3  19:10  22:18  23:6  29:18 |
| 87:15  93:1  95:17  95:25  103:1  104:6 | | **voted**(2) 63:6  66:12 | | **washington**(1) 1:29 | | 30:20  34:17  34:17  34:17  40:22  41:20  43:9 |
| 118:10  169:18  169:23 | | **wacc**(1) 104:22 | | **wasn't**(5) 63:15  64:24  97:9  149:17  170:14 | | 44:5  44:6  44:11  46:17  110:25  112:9 |
| | | **wait**(3) 20:15  49:24  102:23 | | **wasn't**(5) 38:19  128:15  133:9  136:17  137:8 | | 112:14  112:17  112:18  123:5  124:25  125:25 |
| **upset**(1) 60:23 | | **waiting**(1) 67:1 | | **wasted**(1) 42:20 | | 138:3  143:23  145:2 |
| **upsetting**(1) 65:20 | | **walk**(7) 20:18  37:10  67:7  112:1  146:4 | | **water**(2) 64:19  146:22 | | |
| **upward**(1) 64:5 | | 149:24  169:12 | | **waterfall**(3) 32:3  47:11  47:15 | | **wharton**(1) 6:11 |
| **urge**(1) 40:12 | | | | **watkins**(1) 5:47 | | |
| **usc**(1) 70:6 | | **walking**(1) 25:18 | | **waxes**(1) 152:16 | | |
| **use**(21) 18:14  32:8  33:4  46:2  53:10  53:12 | | **walks**(1) 25:17 | | **way**(34) 7:24  8:2  10:7  13:20  14:3  15:4 | | |
| 66:20  95:13  107:23  117:6  122:15  143:12 | | **want**(32) 11:25  18:21  22:15  29:2  29:5 | | 17:21  26:14  28:1  30:14  31:3  33:24  34:12 | | |
| 144:7  145:22  146:16  147:8  148:4  148:8 | | 41:11  42:19  47:22  59:21  61:7  63:2  72:17 | | 36:14  39:3  40:22  57:2  59:4  67:15  70:23 | | |
| 149:15  149:19  162:14 | | 72:22  76:8  77:7  79:5  80:13  80:16  80:21 | | 75:4  98:19  101:8  109:21  118:15  120:8 | | |
| | | 105:5  109:16  110:24  113:1  113:22  116:23 | | 122:20  124:15  126:3  129:24  130:19  132:15 | | |
| **used**(15) 12:24  45:16  53:13  57:3  73:24 | | 117:3  117:11  121:18  128:20  128:24  130:6 | | 134:16  154:3 | | |
| 84:3  85:3  108:8  146:22  148:5  162:5 | | 172:14 | | | | |
| 163:10  165:18  165:23  166:1 | | | | **ways**(2) 38:7  67:24 | | |
| | | **wanted**(11) 7:6  8:1  20:12  20:24  69:22 | | **we'll**(5) 82:16  153:16  171:14  171:14 | | |
| **useful**(1) 23:21 | | 78:21  96:9  140:11  144:23  167:9  169:12 | | **we're**(35) 48:8  49:10  49:15  50:2  51:12 | | |
| **using**(4) 32:25  45:14  89:12  143:21 | | | | 52:7  52:16  52:19  52:22  52:24  53:4  54:14 | | |
| **utilized**(1) 76:14 | | **wants**(6) 8:14  72:3  72:16  112:21  131:21 | | 55:23  55:24  56:9  62:4  62:5  62:19  65:1 | | |
| **utterly**(1) 75:9 | | 131:24 | | 65:4  66:13  66:14  66:17  66:19  66:19  67:6 | | |
| **vague**(3) 157:25  158:2  158:8 | | | | 68:3  68:18  82:20  150:3  168:19  171:24 | | |
| **vail**(1) 5:25 | | **wardwell**(2) 2:27  6:27 | | 172:9  172:25  174:2 | | |
| **valid**(2) 36:24  79:6 | | **warm**(1) 42:23 | | | | |
| **valuation**(3) 55:12  76:10  84:17 | | **warner**(6) 95:17  132:3  132:9  132:12 | | **we've**(12) 50:13  50:17  77:13  84:12  95:9 | | |
| **value**(11) 17:24  21:1  23:10  39:10  44:3 | | 133:19  133:22 | | 95:11  100:12  100:24  162:20  163:7  167:5 | | |
| 56:11  59:18  60:25  95:17  132:12  133:21 | | | | 167:20 | | |
| | | **warrant**(5) 115:6  115:8  115:21  145:8 | | | | |
| **vantage**(1) 67:18 | | 146:20 | | **wearing**(1) 166:4 | | |
| **variable**(1) 20:7 | | | | **wednesday**(1) 7:1 | | |
| **variables**(1) 25:15 | | | | **week**(2) 109:9  173:13 | | |
| | | | | **weeks**(1) 83:8 | | |
| | | | | **weigh**(2) 168:18  173:3 | | |
| | | | | **weight**(3) 33:7  120:10  162:25 | | |
| | | | | **weiss**(1) 6:11 | | |
| | | | | **weitman**(1) 4:33 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **what**(236) 7:15 12:14 14:25 15:4 15:5 15:8 15:14 16:10 16:12 16:18 17:22 17:22 20:4 20:5 20:6 20:9 20:14 20:17 22:15 23:17 23:20 24:6 24:7 24:14 25:18 27:5 27:10 27:11 27:13 27:20 28:4 28:6 28:7 28:9 28:11 28:13 28:16 29:19 30:17 30:19 30:20 31:9 31:14 35:23 36:9 41:23 43:9 43:12 43:12 45:2 45:4 45:10 45:21 46:5 47:19 48:3 48:4 48:6 48:6 48:8 48:14 49:11 49:12 49:15 49:18 49:20 50:3 50:6 50:9 50:25 53:11 54:6 54:12 54:14 55:5 55:6 55:8 55:15 56:14 56:17 56:22 57:21 57:23 57:25 57:25 59:7 61:7 61:20 62:4 62:9 62:9 62:10 62:11 62:18 63:14 64:12 66:10 68:2 68:15 70:24 71:1 71:21 73:5 73:18 74:22 74:23 75:8 75:24 76:7 76:18 78:9 78:13 80:5 80:16 80:21 83:23 86:10 86:13 86:14 86:16 87:11 87:25 89:19 89:21 89:21 90:19 92:23 93:8 93:11 93:16 94:12 95:8 96:6 99:2 100:4 101:9 101:12 101:15 101:19 101:21 102:10 109:10 110:17 112:10 112:13 112:15 112:18 114:14 114:15 115:23 116:11 116:13 116:18 116:19 116:23 118:6 118:13 118:23 118:24 119:7 120:6 120:10 122:7 122:8 122:9 122:11 122:12 124:22 124:22 125:14 126:16 127:8 127:10 129:2 130:7 130:23 130:23 131:15 132:13 132:23 133:15 133:25 138:4 138:10 139:2 140:24 143:3 143:9 143:13 143:14 144:2 144:21 144:22 146:6 146:7 146:17 146:21 147:7 147:9 147:20 148:2 148:7 148:10 148:25 149:8 149:20 149:25 150:22 151:15 153:16 154:20 154:23 155:12 155:22 156:3 156:6 157:12 157:17 158:14 159:19 160:5 162:6 162:9 162:18 165:2 165:7 168:1 168:2 168:4 170:18 170:21 170:23 171:19 171:19 172:4 173:18 | | **which**(118) 10:6 10:12 13:9 16:14 20:7 21:10 21:13 22:4 22:21 24:12 28:2 30:10 31:2 33:8 33:24 36:23 37:25 38:8 39:3 39:21 45:12 46:1 47:24 48:2 48:13 50:19 51:3 51:11 51:18 51:19 53:13 53:24 54:1 54:16 55:12 57:7 57:14 58:3 58:23 61:12 61:16 62:18 63:6 64:12 73:22 78:4 79:6 79:7 79:12 79:16 80:1 82:3 82:7 82:17 83:1 83:23 84:6 86:23 87:22 88:7 88:25 91:15 91:18 92:6 92:12 93:4 93:8 93:9 93:23 99:25 100:23 103:20 107:15 109:8 110:3 112:2 112:12 113:10 115:21 116:10 116:25 117:8 117:22 118:25 122:12 122:19 123:2 123:12 123:24 126:16 127:8 127:15 127:15 129:7 140:24 142:4 143:14 145:24 147:23 148:12 150:25 150:25 151:1 152:24 153:7 153:20 154:3 154:6 154:7 154:8 157:8 162:8 163:16 167:18 167:18 169:11 170:1 171:9 | | **with**(185) 7:11 7:16 9:14 10:6 11:3 11:7 11:22 11:22 13:10 13:17 16:16 20:5 20:6 24:19 24:25 25:23 25:25 26:16 26:8 26:19 27:12 28:15 28:19 29:24 29:16 29:22 31:25 32:1 32:11 32:15 33:25 34:12 34:21 34:23 35:24 36:24 37:8 38:21 41:4 42:17 43:14 43:15 43:19 43:21 45:1 46:16 47:20 47:24 48:15 55:12 57:9 58:10 58:16 59:11 59:13 61:8 61:12 61:19 61:23 61:23 62:16 65:12 65:14 67:17 72:13 73:7 74:15 75:6 75:9 75:15 75:24 76:22 76:23 77:7 79:18 80:12 82:9 85:19 88:4 88:14 88:20 89:2 90:14 90:14 90:25 91:13 93:23 96:11 98:24 99:11 100:8 100:11 100:12 100:15 100:2 101:13 101:22 101:25 102:8 105:10 106:18 106:21 106:22 107:23 109:11 109:14 109:18 109:21 110:13 110:15 110:22 111:8 111:12 111:19 111:20 112:16 112:23 113:7 113:13 116:5 116:12 116:15 124:4 124:10 124:11 124:23 126:12 127:18 127:23 128:5 132:23 135:11 135:24 136:3 136:11 136:24 137:15 137:24 138:8 139:3 139:12 139:13 139:14 140:4 140:8 144:20 144:21 145:6 146:20 149:1 149:4 149:11 150:7 150:21 151:8 153:11 153:12 153:22 153:24 154:7 154:21 155:7 155:10 156:12 158:16 159:10 159:12 159:14 159:18 159:21 160:3 160:13 160:22 161:4 161:7 162:11 163:17 167:10 167:21 168:2 169:18 170:13 173:6 173:9 | | **would**(203) 7:22 10:7 10:15 17:17 17:23 19:12 21:19 22:6 23:4 25:4 25:7 25:15 25:19 27:6 27:11 27:13 28:3 28:16 28:21 28:22 28:22 29:3 29:6 31:7 31:9 32:4 32:5 32:12 32:13 34:2 34:5 34:20 34:25 35:7 35:12 35:15 35:18 36:6 39:10 40:8 41:1 41:19 43:6 44:12 45:2 45:6 45:7 45:10 45:10 45:19 45:20 46:22 47:11 47:12 47:12 47:13 47:15 51:1 51:19 51:23 53:3 53:18 53:22 53:24 54:23 55:8 56:1 56:4 58:7 61:21 62:2 62:25 63:10 68:7 68:11 68:16 68:25 69:11 72:8 73:4 73:22 76:14 77:1 77:1 77:1 77:2 77:3 78:20 79:16 79:21 80:13 83:4 85:19 85:25 89:16 89:1 89:22 89:25 90:5 90:11 90:12 91:10 91:15 91:20 91:23 91:23 91:24 92:17 95:8 96:10 96:12 96:13 96:18 96:19 97:1 97:3 97:14 97:16 97:17 97:18 97:19 97:22 97:22 97:24 97:24 97:25 99:18 99:19 99:20 100:10 100:25 102:19 103:17 104:22 104:24 112:19 112:20 112:22 113:15 115:16 115:17 116:1 116:2 116:14 116:15 118:3 122:6 122:20 122:23 123:2 123:12 123:13 123:21 123:22 124:1 124:3 124:13 125:15 125:16 125:19 126:4 126:18 127:4 129:23 129:24 130:2 130:7 130:8 130:19 130:21 131:4 131:5 131:10 131:19 132:7 132:10 137:19 137:22 144:25 145:23 150:23 155:1 160:4 163:9 166:8 167:3 167:24 168:7 168:25 169:5 170:2 170:15 170:23 171:1 171:4 171:23 172:4 172:4 172:5 172:6 172:8 173:6 173:10 |
| **what's**(13) 54:5 55:7 57:10 65:19 81:11 96:13 150:11 154:3 154:9 160:25 164:23 170:12 171:2 | | **while**(8) 51:5 84:23 90:17 102:10 139:2 143:7 153:25 171:24 | | **withdraw**(1) 96:14 | | **would've**(1) 158:12 |
| | | | | **withdraws**(1) 96:15 | | **wouldn't**(3) 72:24 90:2 93:17 |
| **whatever**(11) 71:4 73:23 80:24 83:17 113:2 125:11 149:17 162:10 163:5 172:14 173:8 | | **white**(1) 3:22 | | **within**(3) 91:9 137:10 172:25 | | **wouldn't**(2) 144:7 157:2 |
| | | **who**(49) 18:8 18:12 57:9 57:18 60:14 61:5 66:1 66:4 66:12 67:15 68:25 71:20 72:13 74:15 75:13 77:11 85:15 86:4 88:11 88:12 89:3 90:24 94:2 94:16 94:17 106:11 118:18 119:18 120:2 124:20 126:5 132:16 137:15 137:24 138:1 138:2 138:5 139:13 146:10 149:16 149:19 150:8 150:10 152:5 152:16 152:17 157:22 163:12 164:14 | | **without**(15) 9:12 15:16 19:16 58:13 60:14 81:20 95:24 107:12 108:14 125:3 144:22 145:20 155:13 165:12 166:4 | | **would've**(1) 144:24 |
| **whatsoever**(2) 41:14 156:10 | | | | | | **wrap**(1) 104:13 |
| **what's**(7) 22:11 33:3 43:11 46:6 117:12 141:23 146:20 | | | | **withstanding**(5) 51:9 51:10 53:22 54:2 70:10 | | **write**(1) 20:23 |
| | | | | | | **writes**(1) 117:5 |
| **when**(58) 14:7 15:25 20:24 38:24 42:4 47:16 49:2 49:7 49:7 49:16 49:23 56:21 56:25 57:17 57:18 57:22 63:20 65:15 66:2 66:7 67:6 67:12 67:25 68:1 74:4 86:12 86:13 89:2 90:6 97:1 97:16 99:18 103:24 110:18 120:13 130:13 132:4 133:8 133:13 133:23 140:25 142:14 143:13 144:10 144:11 147:10 147:17 148:25 150:2 153:22 155:10 155:24 159:20 161:10 162:22 164:16 173:12 174:2 | | **who's**(7) 56:19 62:21 77:4 78:9 81:25 155:24 156:5 | | **witness**(2) 112:6 138:5 | | **writing**(5) 15:14 22:22 69:18 69:19 160:2 164:20 164:25 |
| | | **whoever**(2) 58:6 84:22 | | **won**(1) 32:16 | | **written**(7) 19:11 23:3 52:4 164:7 164:13 164:20 164:25 |
| | | **whole**(9) 69:2 69:2 69:11 95:4 114:18 115:7 138:20 156:8 166:12 | | **won't**(2) 150:13 153:5 | | |
| | | | | **wondering**(1) 109:17 | | **wrong**(18) 18:14 22:10 64:4 69:6 69:7 69:12 93:13 101:21 101:21 101:22 141:9 141:11 141:24 152:16 166:2 166:19 170:19 172:20 |
| **where**(43) 33:20 34:2 34:14 37:14 39:24 41:4 41:17 45:1 45:3 45:19 46:13 46:24 47:8 49:11 51:10 56:18 57:6 57:20 58:1 59:2 59:18 61:14 64:9 69:4 72:15 74:25 79:12 79:20 94:15 96:15 104:20 113:21 117:3 117:16 122:23 131:14 146:13 150:5 154:16 163:24 169:3 169:5 169:16 | | **wholeheartedly**(1) 78:17 | | **won't**(4) 33:10 126:3 126:17 145:4 | | |
| | | **whom**(1) 159:10 | | **wood**(1) 164:1 | | **wrongly**(1) 13:21 |
| | | **whopping**(2) 75:19 75:20 | | **word**(22) 11:12 14:25 15:15 15:15 15:21 20:23 21:23 22:3 22:7 23:17 66:7 94:24 99:6 103:1 106:4 143:11 143:21 144:7 147:13 147:13 147:13 147:14 | | **wrote**(6) 12:4 15:8 39:6 53:14 58:6 69:20 www.diazdata.com(1) 1:50 |
| | | **whose**(2) 60:17 150:19 | | | | **x-ray**(1) 152:8 |
| **whereas**(2) 53:5 132:13 | | **who's**(4) 119:25 120:1 125:3 126:20 | | **words**(14) 12:25 24:20 27:22 34:18 35:1 70:18 71:10 89:12 96:21 98:1 129:1 149:16 165:23 166:1 | | **yeah**(8) 133:16 141:13 141:23 159:7 159:9 172:10 172:11 173:16 |
| **whereupon**(1) 174:4 | | **why**(24) 8:2 22:7 35:11 73:25 75:17 78:6 78:7 86:21 90:4 93:22 100:7 108:20 113:3 119:10 119:13 121:20 121:22 134:9 146:5 153:2 153:15 153:17 165:13 165:16 | | | | |
| **whether**(54) 19:13 20:7 21:16 31:20 31:21 37:25 38:1 43:10 44:8 48:8 48:24 49:9 49:16 55:11 56:3 56:15 65:18 80:6 80:8 84:20 85:1 89:17 90:2 90:4 90:15 91:3 91:23 92:7 110:13 112:21 114:21 121:3 124:8 124:15 124:16 125:4 125:22 126:21 128:20 129:4 135:4 136:19 138:21 138:24 152:13 153:14 153:23 153:23 153:24 156:7 156:15 156:19 160:2 161:1 170:15 | | **wickersham**(1) 5:9 | | **work**(4) 47:10 47:16 95:18 172:4 | | **year**(3) 163:19 164:7 164:25 |
| | | **will**(59) 10:14 10:17 10:19 12:13 16:12 19:8 19:20 20:16 20:18 27:9 29:12 30:16 35:23 37:11 38:23 44:18 44:21 46:11 47:9 51:16 52:6 60:25 62:23 67:11 70:10 70:13 72:18 77:2 77:10 79:3 83:18 85:12 85:18 98:1 100:2 105:14 111:19 112:12 112:24 113:20 114:3 114:5 123:5 130:13 130:15 139:5 139:15 139:17 139:24 140:2 148:12 148:25 150:1 150:16 153:4 167:17 171:18 173:25 174:2 | | **worked**(3) 82:5 128:15 152:14 | | **years**(2) 44:5 54:8 |
| | | | | **works**(1) 58:21 | | **yellow**(1) 167:19 |
| | | | | **world**(1) 74:19 | | **yes**(14) 17:13 73:17 78:25 80:25 81:1 105:25 107:21 121:21 121:23 135:18 146:19 156:24 159:7 161:21 |
| | | **willingness**(1) 109:25 | | **worms**(1) 171:25 | | |
| | | **wilmer**(1) 5:39 | | **worry**(1) 43:15 | | **yesterday**(27) 7:9 9:23 19:13 20:16 27:23 32:23 38:17 41:13 41:24 42:20 42:22 43:1 45:1 45:9 55:18 63:14 64:13 64:23 107:25 122:25 123:11 123:22 124:25 126:1 126:7 127:10 130:14 |
| | | **wilmington**(28) 1:11 1:41 2:4 2:24 2:38 2:45 3:9 3:28 6:45 7:1 11:14 11:21 16:6 18:15 64:21 86:1 90:8 90:17 91:14 92:6 92:15 93:12 94:10 94:14 105:7 109:6 109:7 138:16 | | **worse**(6) 21:4 23:10 35:20 41:19 42:3 | | |
| | | | | **worst**(1) 42:18 | | |
| | | | | **worth**(1) 163:6 | | **yesterday's**(1) 82:18 |
| | | **win**(2) 43:4 89:11 | | **worthwhile**(1) 13:23 | | **yesterday's**(2) 106:1 124:3 |
| | | **wins**(2) 28:6 28:9 | | | | **yield**(3) 51:19 77:11 94:19 |
| | | **wish**(5) 74:1 74:2 140:5 172:24 173:3 | | | | **yielding**(1) 45:8 |
| | | | | | | **yields**(1) 58:14 |
| | | | | | | **york**(4) 2:9 2:17 2:30 9:18 |
| | | | | | | **yost**(1) 54:10 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|
| **you**(301) 7:22 8:16 8:20 8:23 14:1 15:10 16:14 19:12 20:8 20:14 20:16 20:16 21:1 21:2 21:4 21:6 21:10 21:25 22:20 24:10 26:7 26:15 26:17 26:17 26:23 27:14 27:17 28:2 28:20 28:21 29:2 29:2 29:5 29:6 29:9 29:10 30:9 30:9 30:11 31:8 31:8 31:14 31:21 33:7 33:11 34:6 35:1 35:4 35:23 36:7 36:22 37:12 37:21 37:25 38:1 38:7 41:7 41:16 41:17 41:21 41:22 41:23 42:9 42:10 44:9 44:13 44:14 44:18 44:24 45:11 45:13 45:13 45:19 45:21 45:23 46:2 47:13 47:14 48:4 48:15 49:2 49:2 49:5 49:5 49:8 49:11 49:13 49:23 49:23 49:24 50:1 50:5 50:9 50:20 51:2 51:5 51:7 51:12 51:16 51:16 51:16 52:6 53:3 53:10 53:11 53:22 53:24 54:6 54:6 54:7 55:8 55:17 56:1 58:2 58:2 58:3 58:16 58:20 59:2 59:5 60:19 61:1 61:7 62:18 62:19 63:2 63:9 64:9 64:10 64:10 64:12 64:15 64:16 64:17 64:19 65:20 68:12 68:17 68:18 68:19 69:22 71:4 71:7 71:7 71:10 71:20 72:19 73:9 73:11 73:12 73:15 73:25 74:5 74:5 74:8 75:22 76:2 76:5 76:11 76:14 76:19 77:3 77:18 77:18 78:18 78:19 78:20 78:21 79:2 79:18 80:4 80:10 80:21 80:21 80:21 80:22 82:3 82:11 83:25 85:2 85:16 85:19 85:24 85:24 87:3 87:6 87:13 88:2 91:12 92:25 93:3 94:7 95:7 97:8 99:6 100:8 101:11 102:6 102:17 105:2 105:8 105:9 105:25 106:10 108:9 109:3 109:10 109:12 109:13 109:14 109:16 109:23 110:16 110:24 110:25 112:19 113:11 113:11 113:16 113:24 114:3 114:7 114:7 114:8 114:9 115:14 115:16 116:23 117:3 118:3 118:4 119:4 119:18 119:21 120:8 121:18 122:4 122:5 122:11 124:25 125:10 125:11 125:12 125:15 125:16 127:19 127:20 127:20 128:10 128:10 128:11 129:13 129:13 129:15 129:17 132:4 133:5 133:11 133:13 133:15 133:24 133:25 134:8 134:9 134:15 135:6 135:15 135:19 135:23 136:2 136:8 136:9 136:19 137:3 137:9 137:9 137:14 138:13 138:14 138:22 138:24 139:2 139:5 139:8 139:15 139:15 139:19 139:20 139:21 139:22 139:24 139:25 140:2 140:3 140:6 140:9 140:11 140:11 140:15 140:25 142:23 | | **you've**(12) 50:1 50:21 50:22 56:8 62:15 62:15 66:22 81:4 149:11 150:12 151:18 172:21 | | **\*other**(1) 142:7 |
| | | **young**(1) 3:5 | | **\*parole**(1) 145:19 |
| | | **your**(217) 7:3 7:4 7:6 8:23 9:14 9:17 9:22 10:22 12:1 20:4 20:12 20:15 21:15 21:24 26:15 26:16 27:8 28:1 28:12 28:14 33:6 34:5 37:11 38:5 39:5 40:16 40:19 41:5 41:8 42:11 43:6 43:11 43:19 44:1 44:11 44:15 46:25 47:20 50:25 51:24 54:11 55:7 56:14 57:15 59:10 59:12 59:12 60:25 61:7 62:14 62:23 64:14 64:17 64:18 65:1 67:7 67:16 68:5 68:19 69:6 69:11 69:15 70:2 72:20 72:25 73:1 74:2 74:7 74:8 75:2 75:6 75:17 75:22 75:25 76:3 76:12 76:16 76:23 77:7 78:11 78:17 78:19 78:23 78:23 78:25 79:2 79:4 80:3 80:10 80:11 80:19 81:1 81:3 81:8 82:12 82:22 83:2 83:6 83:14 85:7 85:12 85:14 85:21 85:23 86:8 86:21 87:4 87:21 88:1 89:13 89:16 90:23 91:17 91:22 92:5 93:4 93:21 94:6 94:13 94:22 95:4 95:20 96:11 99:10 99:16 99:20 100:9 100:10 101:16 102:6 102:17 104:6 104:14 105:1 105:3 105:8 105:18 105:19 106:5 106:10 107:20 108:6 109:21 109:25 110:7 111:15 111:23 112:17 113:7 113:19 114:5 120:10 120:19 120:23 121:10 121:18 121:25 122:2 122:4 122:11 123:16 125:6 125:21 127:20 129:15 129:17 130:1 130:13 131:11 132:16 133:5 135:3 135:11 137:14 138:13 138:15 138:18 138:22 139:9 139:13 140:4 140:14 144:25 145:6 146:23 147:6 148:10 148:13 149:23 156:2 156:8 157:11 160:14 160:14 160:15 160:25 161:3 161:6 161:25 163:19 165:20 167:1 167:20 168:1 168:10 168:12 170:6 170:12 171:12 171:17 171:22 172:17 172:18 173:5 173:9 173:23 | | **\*plan**(1) 30:6 |
| | | | | **\*senior**(1) 116:14 |
| | | | | **\*shall**(1) 13:7 |
| | | | | **\*that**(1) 26:1 |
| | | | | **\*the**(3) 12:23 15:15 150:17 |
| | | | | **\*true-up**(1) 47:8 |
| | | | | **\*unfairly"**(1) 11:12 |
| | | | | **\*united**(1) 106:5 |
| | | | | **\*which**(1) 13:17 |
| | | | | **\*zell**(2) 150:16 150:16 |
| | | **yours**(1) 141:16 | | |
| | | **yourself**(1) 63:10 | | |
| | | **you'd**(2) 24:8 146:16 | | |
| | | **you'll**(7) 10:22 26:24 41:17 41:24 140:16 146:8 147:9 | | |
| | | **you're**(12) 16:24 38:8 40:4 102:18 118:3 134:11 141:11 141:11 143:3 144:10 147:17 147:20 | | |
| | | **you've**(14) 20:15 30:23 32:14 40:6 45:3 45:4 45:16 45:17 45:17 45:22 124:24 139:6 139:11 142:16 | | |
| **you**(144) 143:8 143:9 143:13 143:14 144:6 144:6 144:7 144:9 144:15 144:20 145:4 145:4 145:5 145:5 145:9 145:10 146:4 146:5 146:5 146:7 146:23 146:24 146:25 147:5 147:9 147:16 147:18 147:21 147:22 148:2 148:2 148:3 148:14 148:14 148:14 148:16 148:18 148:25 148:25 149:24 149:25 150:4 150:13 151:11 152:5 152:6 153:3 153:5 153:15 153:17 153:20 153:22 153:22 153:24 154:4 155:2 155:24 155:25 156:2 156:2 156:5 156:8 156:18 156:18 157:7 157:13 157:17 158:2 158:14 159:10 159:14 159:19 159:20 160:1 160:9 160:13 160:17 160:19 160:21 160:21 161:1 161:1 161:2 161:4 161:11 161:18 161:18 162:1 162:2 162:9 162:12 162:13 162:25 163:4 163:5 163:8 163:21 163:23 163:25 164:21 164:22 165:5 165:6 165:9 165:21 165:24 165:24 166:6 166:13 166:14 167:1 167:3 167:3 167:4 167:23 167:24 167:25 168:2 168:3 168:3 168:4 168:4 168:6 168:7 168:9 168:10 168:16 169:2 169:8 169:10 169:14 169:19 170:4 170:5 170:8 170:16 171:20 172:9 172:12 172:12 172:19 172:22 173:2 174:3 | | **zabel**(1) 3:45 | | |
| | | **zarrini**(1) 6:46 | | |
| | | **zell**(4) 150:15 150:17 150:23 151:2 | | |
| | | **zensky**(22) 2:14 80:25 81:1 81:24 82:1 82:2 82:10 82:12 82:13 83:4 83:6 84:18 85:5 85:11 87:6 87:24 89:18 94:12 95:20 107:20 107:22 108:3 | | |
| | | **zero**(1) 64:10 | | |
| | | **zloto**(1) 5:32 | | |
| | | **zuckerman**(1) 4:14 | | |
| | | **"notwithstanding**(1) 70:7 | | |
| | | **"unfair**(1) 60:6 | | |
| | | **"all**(2) 142:6 144:3 | | |
| | | **"applicable**(1) 14:2 | | |
| | | **"approve"**(1) 38:18 | | |
| | | **"can**(1) 13:16 | | |
| | | **"does**(1) 11:18 | | |
| **you'd**(2) 73:18 157:11 | | **"even**(1) 19:2 | | |
| **you'll**(4) 61:7 85:3 97:11 151:11 | | **"from**(1) 24:18 | | |
| **you're**(22) 49:7 49:7 49:16 49:22 49:25 50:2 50:9 51:3 58:23 62:19 65:18 67:13 72:24 73:1 75:23 76:15 97:21 150:1 155:25 165:8 165:9 166:23 | | **"gave**(1) 145:17 | | |
| | | **"judge"**(1) 106:4 | | |
| | | **"lead**(1) 110:14 | | |
| | | **"more**(1) 23:22 | | |
| | | **"notwithstanding**(5) 10:25 11:11 12:7 13:8 17:17 | | |