```
                IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE

IN RE:                        )   Case No. 08-13141 (KJC)
                              )   (Jointly Administered)
                              )
TRIBUNE COMPANY, et al.,      )   Chapter 11

                              )   Courtroom 5
                              )   824 Market Street
              Debtors.        )   Wilmington, Delaware
                              )
                              )   March 5, 2012
                              )   10:00 a.m.

                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                 UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:
For Debtors:              Sidley Austin, LLP
                          BY: JAMES BENDERNAGEL, ESQ.
                          One South Dearborn
                          Chicago, IL  60603
                          (312) 853-7000

                          BY: RONALD S. FLAGG, ESQ.
                          1501 K Street, NW
                          Washington, DC  20005
                          (202) 736-8000

                          BY: KEVIN T. LANTRY, ESQ.
                          555 West Fifth Street
                          Los Angeles, CA  90013
                          (213) 896-6000

                          Cole, Schotz, Meisel, Forman
                          & Leonard, P.A.
                          BY: NORMAN PERNICK, ESQ.
                          500 Delaware Avenue, Suite 410
                          Wilmington, DE  19801
                          (302) 652-3131

ECRO:                     AL LUGANO

Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
 1   APPEARANCES:
 2   (Continued)
 3
 4   For Wilmington Trust:      Sullivan Hazeltine Allinson, LLC
 5                              BY:  WILLIAM D. SULLIVAN, ESQ.
 6                              901 North Market Street, Ste. 1300
 7                              Wilmington, DE  19801
 8                              (302) 428-8195
 9
10   For Official Committee     Landis, Rath & Cobb
11   of Unsecured Creditors:    BY: DAN RATH, ESQ.
12                              BY: ADAM LANDIS, ESQ.
13                              919 Market Street, Suite 1800
14                              Wilmington, DE 19801
15                              (302) 467-4400
16
17                              Chadbourne & Parke, LLP
18                              BY: DAVID LEMAY, ESQ.
19                              BY: MARC ROITMAN, ESQ.
20                              BY: ANDREW ROSENBLATT, ESQ.
21                              BY: THOMAS MCCORMACK
22                              30 Rockefeller Plaza
23                              New York, NY 10112
24                              (212) 408-5100
25
26                              Zuckerman Spaeder, LLP
27                              BY: JAMES SOTTILE, ESQ.
28                              1800 M Street, NW
29                              Suite 1000
30                              Washington, DC 20036-5807
31                              (202) 778-1800
32
33   For Aurelius Capital
34   Management:                Akin Gump Strauss Hauer & Feld, LLP
35                              BY: DAVID ZENSKY, ESQ.
36                              BY: DANIEL GOLDEN, ESQ.
37                              BY: DEBORAH NEWMAN, ESQ.
38                              One Bryant Park
39                              New York, NY  10036-6745
40                              (212) 872-1000
41
42   For JP Morgan:             Richards Layton & Finger
43                              BY: DREW SLOAN, ESQ.
44                              One Rodney Square
45                              920 North King Street
46                              Wilmington, DE  19801
47                              (302) 651-7700
48
49                              Davis Polk & WARDWELL,
50                              BY: ELI VONNEGUT, ESQ.
51                              450 Lexington Avenue
52                              New York, NY  10017
53                              (212) 450-4331
```

```
1   APPEARANCES:
2   (Continued)
3
4   For Merrill Lynch:        Potter Anderson Corroon, LLP
5                             BY: STEPHEN MCNEILL, ESQ.
6                             BY: LAURIE SELBER SILVERSTEIN, ESQ.
7                             Hercules Plaza
8                             1313 North Market Street, 6th Floor
9                             Wilmington, DE  19801
10                            (302) 984-6033
11
12  For Credit Agreement
13  Lenders:                  Young Conaway Stargatt & Taylor
14                            BY: M. BLAKE CLEARY, ESQ.
15                            Rodney Square
16                            1000 North King Street
17                            Wilmington, DE  19801
18                            (302) 571-3287
19
20                            Dewey & Lebeouf
21                            BY: JAMES JOHNSTON, ESQ.
22                            BY: JOSHUA MESTER, ESQ.
23                            333 South Grand Ave., Ste. 2600
24                            Los Angeles, CA  90071-1530
25                            (213) 621-6030
26
27  For WTC:                  Brown Rudnick
28                            BY: MARTIN S. SIEGEL, ESQ.
29                            BY: ROBERT STARK, ESQ.
30                            BY: GARY NOVOD, ESQ.
31                            BY: JAMILA WILLIS, ESQ.
32                            7 Times Square #47
33                            New York, NY  10036-6536
34                            (212) 209-4800
35
36  For DBTCA:                McCarter & English
37                            BY: KATHARINE MAYER, ESQ.
38                            BY: DAVID ADLER, ESQ.
39                            405 North King Street, 8th Floor
40                            Wilmington, DE  19801
41
42                            (302) 984-6312
43  For Aurelius:             Ashby & Geddes, PA
44                            BY: AMANDA M. WINFREE, ESQ.
45                            500 Delaware Avenue
46                            Wilmington, DE  19899
47                            (302) 654-1888
48
49
50
```

```
 1  APPEARANCES:
 2  (Continued)
 3
 4  For Law Debenture:        Kasowitz Benson Torres & Friedman
 5                            BY: DAVID ROSNER, ESQ.
 6                            BY: MATTHEW STEIN, ESQ.
 7                            BY: SHERON KORPUS, ESQ.
 8                            1633 Broadway
 9                            New York, NY  10019
10                            (212) 506-1800
11
12                            Bifferato Gentilotti
13                            BY: GARVAN MCDANIEL, ESQ.
14                            800 North King St. Plaza Level
15                            Wilmington, DE 19801
16                            (302) 429-1900
17
18  For TM Retirees:          Teitelbaum & Baskin, LLP
19                            BY: JAY TEITELBAUM, ESQ.
20                            3 Barker Avenue, Third Floor
21                            White Plains, NY 10601
22                            (914) 437-7670
23
24                            Hiller & Arban, LLC
25                            BY: BRIAN ARBAN, ESQ.
26                            1500 North French St., 2nd Floor
27                            Wilmington, DE  19801'
28                            (302) 442-7676
29
30  For EGI-TRB:              Jenner & Block
31                            BY: DAVID BRADFORD, ESQ.
32                            BY: DAVID HIXSON, ESQ.
33                            353 N. Clark Street
34                            Chicago, IL  60654-3456
35                            (312) 923-2975
36
37                            Blank Rome
38                            BY: DAVID CARICKHOFF, ESQ.
39                            1201 Market Street
40                            Suite 800
41                            Wilmington, DE 19801
42                            (302) 425-6434
43
44  TELEPHONIC APPEARANCES:
45
46  For Former Directors
47  And Officers:             Grippo & Elden, LLC
48                            BY: GEORGE R. DOUGHERTY, ESQ.
49                             (312) 704-7700
50
```

```
 1  TELEPHONIC APPEARANCES:
 2  (Continued)
 3
 4  For Official Committee
 5  of Unsecured Creditors:    Chadbourne & Parke, LLP
 6                             BY: DOUGLAS DEUTSCH, ESQ.
 7                             BY: HOWARD SEIFE, ESQ.
 8                             BY: MARC ASHLEY, ESQ.
 9                             (212) 408-5100
10
11                             Zuckerman Spaeder, LLP
12                             BY: GRAEME BUSH, ESQ.
13                             BY: ANDREW CARIDAS, ESQ.
14                             BY: ANDREW GOLDFARB, ESQ.
15                             (202) 778-1800
16
17  For Davidson Kempner:      Schulte Roth & Zabel, LLP
18                             BY: KAREN S. PARK, ESQ.
19                             (212) 756-2036
20
21  For Defendants, Employees
22  Compensation Defendant's
23  Group:                     Frank Gecker, LLP
24                             BY: JOSEPH FRANK, ESQ.
25                             BY: REED HEILIGMAN, ESQ.
26                             (312) 276-1400, EXT. 1432
27
28  For Debtor, Tribune:       Sidley Austin
29                             BY: KERRIANN MILLS, ESQ.
30                             BY: JILLIAN LUDWIG, ESQ.
31                             BY: BRYAN KRAKAUER, ESQ.
32                             BY: DAVID MILES, ESQ.
33                             BY: BRETT MYRICK, ESQ.
34                             BY: JEFFREY STEEN ESQ.
35                             (312) 853-7030
36
37                             Tribune
38                             BY: DAVE ELDERSVELD
39                             (312) 222-4707
40                             BY: GARY WEITMAN
41                             (312) 222-3394
42
43  For Bank of America:       Bank of America
44                             BY: ESTER CHUNG, ESQ.
45                             (646) 855-6705
46
47  For Bigalow:               Sperling & Slater
48                             BY: GWEN NOLAN, ESQ.
49                             (312) 641-3200
50
```

```
1   TELEPHONIC APPEARANCES:
2   (Continued)
3
4   For The Seaport Group:    Seaport Group
5                             BY: KENNETH SMALLEY, ESQ.
6                             (212) 616-7763
7
8
9   For Royal Bank of
10  Scotland:                 Cadwalder Wickersham and Taft
11                            BY: MICHELLE MAMAN, ESQ.
12                            (212) 504-6000
13
14                            Royal Bank of Scotland
15                            BY: COURTNEY ROGERS
16                            (203) 897-4815
17
18  For SuttonBrook
19  Capital Management:       SuttonBrook Capital Management LP
20                            BY: CAROL L. BALE
21                            (212) 588-6640
22
23  For EGI-TRB:              Jenner & Block, LLP
24                            BY: ANDREW VAIL, ESQ.
25                            (312) 840-8688
26                            BY: CATHERINE STEEGE, ESQ.
27                            (312) 923-2952
28
29  For Amalgamated Bank:     Millbank Tweed Hadley & McCloy
30                            BY: ALAN STONE, ESQ.
31                            (212) 530-5285
32
33  For Aurelius Capital
34  Management:               Aurelius Capital Management, LP
35                            BY: MATTHEW A. ZLOTO, ESQ.
36                            (646) 445-6518
37
38  For Matthew Frank:        Alvarez & Marsal, LLC
39                            BY: MATTHEW FRANK, ESQ.
40                            (312) 371-9955
41
42  For Arrowgrass:           Arrowgrass Capital Partners, US LP
43                            BY: DAVID DUNN, ESQ.
44                            (212) 584-5946
45
46  For Special Committee
47  Of the Board of
48  Directors:               Jones Day
49                            BY: BRAD ERENS, ESQ.
50                            (312) 269-4050
```

```
 1  TELEPHONIC APPEARANCES:
 2  (Continued)
 3
 4  For Angelo Gordon:          Wilmer Cutler Pickering Hale & Dorr
 5                              BY: ANDREW N. GOLDMAN, ESQ.
 6                              (212) 230-8836
 7
 8
 9  For Barclays:               Barclays Capital, Inc.
10                              BY: OLIVIA MAURO, ESQ.
11                              (212) 412-6773
12
13  For Anna Kalenchits:        BY: ANNA KALENCHITS
14                              (212) 723-1808
15
16  For Law Debenture:          Kasowitz Benson Torres & Friedman
17                              BY: CHRISTINE MONTENEGRO, ESQ.
18                              (212) 506-1715
19
20  For Merrill Lynch:          Kaye Scholer, LLP
21                              BY: PAUL MIGNANO, ESQ.
22                              (212) 836-8525
23                              BY: JANE PARVER, ESQ.
24                              (212) 836-8510
25                              BY: MADLYN G. PRIMOFF, ESQ.
26                              (212) 836-7042
27
28  For Citigroup:              Paul Weiss Rifkind Wharton &
29                              Garrison
30                              BY: SHANNON PENNOCK, ESQ.
31                              (212) 373-3000
32
33  For Eric Bilmes:            HBK Capital Management
34                              BY: ERIC BILMES
35                              (212) 588-5115
36
37  For Kramer Levin
38  Naftalis & Frankel:         Kramer Levin Naftalis & Frankel LLP
39                              BY: DAVID E. BLABEY, JR.
40                              (212) 715-9100
41
42  For Goldman Sachs:          Goldman Sachs & Company
43                              BY: SCOTT BYNUM
44                              (212) 902-8060
45                              BY: LEXI FALLON
46                              (212) 902-0791
47
48  For Richard Corbi:          Proskauer Rose, LLP
49                              BY: RICHARD CORBI, ESQ.
50                              (212) 969-3000
```

```
1  TELEPHONIC APPEARANCES:
2  (Continued)
3
4  For Michael D'Agostino:   Bingham McCutchen, LLP
5                            BY: MICHAEL D'AGOSTINO, ESQ.
6                            (860) 240-2731
7
8
9  For Silver Point:         Silver Point Capital
10                           BY: MATTHEW EHMER
11                           (203) 542-4219
12
13 For Wells Fargo:          White & Case
14                           BY: SCOTT GREISSMAN, ESQ.
15                           (212) 819-8567
16
17 For UBS Securities:       UBS Securities, LLC
18                           BY: CARRAS HOLMSTEAD
19                           (203) 719-1425
20
21 For Monarch Alternative
22 Capital:                  Monarch Alternative Capital, LP
23                           BY: MICHAEL J. KELLY
24                           (212) 554-1760
25
26 For Onex Credit
27 Partners:                 Onex Credit Partners
28                           BY: STUART KOVENSKY
29                           (201) 541-2121
30
31 For Laser and Local 103:  Lowenstein Sandler, PC
32                           BY: IRA LEVEE, ESQ.
33                           (973) 597-2480
34
35 For JP Morgan Chase:      Davis Polk & Wardwell, LLP
36                           BY: ANGELA LIBBY, ESQ.
37                           (212) 450-4433
38
39 For Timothy Knight:       Hannafan & Hannafan, Ltd.
40                           BY: JAMES A. MCGUINNESS, ESQ.
41                           (312) 527-0055
42
43 For Nomura Securities:    Nomura Securities
44                           BY: ARTHUR ROULAC
45                           (212) 667-2073
46
47 For Eos Partners:         Eos Partners
48                           BY: MIKE J. SCHOTT
49                           (212) 593-4046
50
```

```
1   TELEPHONIC APPEARANCES:
2   (Continued)
3
4   For Canyon Partners:        Canyon Partners
5                               BY: CHANEY M. SHEFFIELD
6                               (310) 272-1062
7
8   For Citi:                   Citi
9                               BY: REBECCA SONG
10                              (212) 559-9933
11  For GMP Securities:         GMP Securities, LLC
12                              BY: ANDREW M. THAU
13                              (212) 692-5178
14
15
16
17
```

1  WILMINGTON, DELAWARE, WEDNESDAY, MARCH 5, 2012 10:05 A.M.

2          THE COURT:  Good morning everyone.

3          COUNSEL:  Good morning, Your Honor.

4          THE COURT:  Here I am again with dozens of my

5  closest personal friends.

6                    (Laughter)

7          THE COURT:  If we ever get through this, I may

8  have to seek counseling for separation anxiety.

9                    (Laughter)

10          THE COURT:  Mr. Bendernagel?

11          MR. BENDERNAGEL:  Good news is that's not going

12  to happen today.

13                    (Laughter)

14          THE COURT:  What a relief.

15          MR. BENDERNAGEL:  Your Honor, there are a few

16  procedural matters that we'd like to handle beforehand,

17  before getting going.  First, I think that we sent up to you

18  over the weekend both a consolidated exhibit list that lists

19  all the exhibits and eight or nine binders that have all of

20  the exhibits in them.  And my understanding is that that's

21  all the exhibits that are going to be presented to you.

22  There may be some demonstratives presented, but the exhibits

23  of all parties are in those exhibits, and we wanted to just

24  make sure you had that material and that you were prepared

25  to move forward on that basis.

1          THE COURT:  Have -- do there remain any disputes

2  about admissibility of some of them?

3          MR. BENDERNAGEL:  Yes there are, Your Honor, and

4  I think the best way to handle this; and I've talked to some

5  of the parties about this, is that as we get to each issue,

6  the first thing we ought to deal with with respect to that

7  issue is evidentiary questions.  And then if there are

8  witnesses that need to be presented on a particular issue,

9  present them at that juncture in connection with that issue.

10  I think the only place that's going to occur is in

11  connection with the claims relating to the Retirees; in

12  other words, putting forward witnesses.  And I also think

13  that's probably the first issue where there are going to be

14  any evidentiary questions, and it may be the only issue

15  about which there's a lot of evidentiary questions, although

16  I think that the EGI, PHONES issue in terms of priority may

17  also have some evidentiary issues associated with it.

18          The final procedural point, over the weekend, I

19  had circulated another proposed order of presentation that

20  did a little bit of -- it didn't change the order of the

21  issues, but it tried to rationalize, based on what was said

22  last week, the order of presentation within an issue, and I

23  circulated it over the weekend.  I don't think that there's

24  any real disputes about this order of presentation.  I think

25  people have taken to heart your statement from last week

1  that you really don't care whether people go first or

2  second; that you'll listen to all of them when they speak,

3  and that the order of presentation isn't all that important.

4  But just in terms of keeping the trains moving, we thought

5  it would be a good idea to have some type of order.

6          THE COURT:  And I think that's right, and, in

7  thinking about that particular issue, I thought I'd offer an

8  additional, well, incentive in terms of the parties agreeing

9  to that.  And that is that, when we get to argument on any

10  given issue, I would like to hear just once orally from each

11  party.  My offer would be that I'd give the parties, to the

12  extent they were just dying to correct some misimpression

13  that somebody had left with me, a brief opportunity to

14  submit letters maybe within 48 hours of the conclusion of

15  tomorrow's hearing, very limited, like a couple-page kind of

16  thing, to assuage any anxiety over not being able to offer

17  rebuttal.

18          MR. BENDERNAGEL:  Well that may put a damper on

19  the festivities but --

20                  (Laughter)

21          MR. BENDERNAGEL:  -- let me hand up, Your Honor,

22  this revised order.

23          THE COURT:  All right.  Thank you.  Okay.  Let me

24  ask at this point is anybody not on board with the proposed

25  order of presentation?

1                    (No audible response)

2              THE COURT:  I don't hear any response.  That's a

3    good thing.

4              MR. BENDERNAGEL:  Your Honor, if there aren't any

5    other procedural issues, we might as well get started with

6    issue number one and --

7              THE COURT:  I had some preliminary questions.

8    Except with respect to possible foundation or relevance of

9    the introduction of documentary evidence, had anyone

10   intended to offer a live witness today?  I saw that Brian

11   Whittman had been ruminated about by one or more parties.

12   Tell me what's intended here?

13             MR. BENDERNAGEL:  I'll let Mr. Teitelbaum and Mr.

14   Korpus speak to that, and maybe I'll have some comments

15   about Mr. Whittman, depending on what they say.

16             THE COURT:  Okay.

17             MR. TEITELBAUM:  Good morning, Your Honor, Jay

18   Teitelbaum, Teitelbaum & Baskin, for the Retirees.  In

19   response to your question, I don't know if it's going to be

20   today, tomorrow, this afternoon, but yes, we had intended to

21   call Ms. Bell, Susan Bell, who's in the courtroom, and Mr.

22   Whittman, who's in the courtroom.

23             THE COURT:  All right.  Thank you.  Anyone else?

24             MR. KORPUS:  Good morning, Your Honor, Sheron

25   Korpus of Kasowitz Benson Torres & Friedman for Law

1    Debenture.  With respect to Ms. Bell testifying, Your Honor,

2    we had suggested to Mr. Teitelbaum that we could advance

3    matters because paragraphs 1 to 36 of her declaration are

4    foundational and attach the Plans and other documents not

5    really a dispute.  We suggested there's not really any need

6    to call her with except to those paragraphs of the

7    declaration.  That just leaves the remaining paragraphs that

8    have to do with the accounting issue that's subject to a

9    Motion in Limine, and depending how Your Honor rules on

10   that, we have to deal with that issue.  Mr. Teitelbaum has

11   not accepted our proposal.  But it seems to me that's one

12   good way to shorten the proceeding.

13          If Your Honor rules that Ms. Bell can testify in

14   the accounting matters, and I can address that motion when

15   the time comes, we do have a rebuttal witness on accounting

16   issues that we would like to call.  He's an expert.  His

17   name is Mr. Showman [phonetic].  He's a CPA.

18          THE COURT:  All right.  Thank you.  Anyone else?

19          MR. TEITELBAUM:  Your Honor, to break your no

20   rebuttal rule first thing in the morning, just very quickly.

21   I'm assuming we'll take this up later as far as the rebuttal

22   and an expert.  I just want to be very clear on something.

23   We did have a proposal for the -- for Mr. -- for the

24   Kasowitz firm, frankly, to deal with paragraphs 17 through

25   36 of Ms. Bell's declaration, which frankly deal with all of

1    the underlying TM Retiree claims.  We had proposed that they

2    be admitted into evidence; that we not have to lay a

3    foundation.  Frankly, we didn't reach agreement on that, and

4    we had proposed that.  I had made a similar proposal, Your

5    Honor, with respect to the SEC filings that were annexed to

6    my declaration, and the response that we got back is we'll

7    deal with that with the Judge in the morning.  So we're

8    perfectly happy to do away with the process and procedures

9    of having all of the TM Retiree agreements, foundation, all

10   of those fun things that we can go through for a period of

11   time, done away with and accepted by the Court as far as

12   foundation.  If people want to fight about relevance or

13   other admissibility issues, we have no problem with that.  I

14   just want to be very clear on that.

15             THE COURT:  Well, maybe you can talk further when

16   we have a break.

17             MR. BENDERNAGEL:  Your Honor, just on the

18   question of Mr. Whittman.  Mr. Whittman, as I understand it,

19   is potentially testifying about three possible issues.  One

20   is the non-Teitelbaum Retirees, who they are, and what their

21   claims are.  Most of that's been stipulated to, but if he's

22   going to testify, I'd put him on for that purpose.

23             THE COURT:  Well, I know the debtor had proffered

24   information concerning that.  Is there any dispute about

25   that so far as you know?

1          MR. BENDERNAGEL:  I am not sure because what we

2    proffered was the original chart, and in our reply, we

3    submitted an additional chart that had some additional

4    information.  I haven't heard anybody objecting to it.  But

5    to the extent they are, he's here and can answer questions

6    about it.

7          THE COURT:  Okay.

8          MR. BENDERNAGEL:  The second issue is the whole

9    question of the trial balances and my intention would be to

10   put him on myself and then let people cross-examine him

11   rather than have him put on by one of the two parties,

12   because they've both spoken to him and I'm quite sure that

13   they both intend to ask him questions.  So I think that

14   would be the more orderly way of doing it.

15          And finally, there is a chart with respect to the

16   non-SWAP, non-Retiree claims that, again, it has been

17   proffered.  It's also been adjusted.  I don't know that

18   there are objections to the chart, but there may be

19   questions about that issue but we can come to that when we

20   get to that issue.  I don't think it's going to take a lot

21   of time, and it's just a basic question as to how much

22   evidence the Court really needs on that issue because on

23   that issue, there is nobody here advocating explicitly that

24   those claims are Senior indebtedness under the PHONES

25   Subordination Agreement or Senior obligation.  But there's a

1  request for you to determine that they're not, and there's a

2  lot of people saying they're not.  There's really nobody

3  saying there is.  Mr. Whittman's testimony, or what we've

4  submitted, is just to tell you who the people are and what

5  the nature of it is so that you have some context to make a

6  decision.  But on the other hand, if people wanted to make

7  arguments in that regard, they could have showed up and they

8  haven't so.

9            THE COURT:  All right.

10            MR. BENDERNAGEL:  With that, Your Honor --

11            THE COURT:  I'm sorry, I have more.  I have more.

12            MR. BENDERNAGEL:  Okay.

13            THE COURT:  As best as you're able to estimate,

14  in terms of the proposed order of presentation, any notion

15  of what the parties expect to accomplish today; how far down

16  the list we're going to get?

17            MR. BENDERNAGEL:  Nobody's really ventured that

18  -- our hope in looking at this was that we'd certainly get

19  through the Retirees, and possibly the discrimination claim,

20  which would only leave the post-petition interest, the

21  allowed amount of the PHONES, and the priority issue for

22  tomorrow, I think the -- you know, I think that the

23  discussion of the Retirees is going to take some time.

24  That's my guess.

25            THE COURT:  All right.  Since everyone's I guess

1   in town or readily accessible, I thought maybe we would

2   start at 9:30 tomorrow.  Does that cause any heartburn for

3   anybody?

4                    (No audible response)

5              THE COURT:  Okay, 9:30 tomorrow morning.

6              MR. BENDERNAGEL:  Okay.

7              THE COURT:  All right.  With that, I think I'll

8   -- I'm going to try to fit in a conference call on another

9   matter at noon tomorrow, just to give you a heads-up on

10  that.

11             MR. BENDERNAGEL:  One last issue on a procedural

12  nature.  We had circulated over the weekend a draft of a

13  scheduling order for the confirmation hearing that sort of

14  flush out some additional procedural dates between now and

15  the confirmation hearing.  We talked about this a little

16  last week.  My sense is we have agreement on that.  The

17  parties were going to go back and check with their clients.

18  But, at some point in the next day or two, it's our hope to

19  present that to you for signature.

20             THE COURT:  Okay.  Wonderful.  Thank you.

21             MR. BENDERNAGEL:  Are you ready to start, Your

22  Honor?

23             THE COURT:  I'm ready.

24             MR. BENDERNAGEL:  The first issue is the issue

25  regarding the PHONES Notes and whether they're subordinated

1  with respect to the settlement amounts and the Creditor's

2  trust proceeds.  Under the Order, the debtors go first.  And

3  the reason we're going first is not because we're taking a

4  position on merits, but there are some procedural issues

5  that we thought would be helpful to just clear out ahead of

6  time, and I've talked to Mr. Stark about this and let me go

7  through those issues and the like.

8            First, there is a suggestion in the Wilmington

9  Trust filing that the Court take note of the fact that it

10  might be divested by the fact that Wilmington Trust had

11  filed an appeal, an appeal that's been contested by a number

12  of different parties, and has not been acted on by the

13  District Court.  I've talked to Mr. Stark as to whether, in

14  fact, he -- it's his intention to press that issue here.

15  It's obviously the debtors' position, and I think it's the

16  position of a number of other parties, is you're not

17  divested.  But it's my understanding from Mr. Stark that he

18  doesn't intend to press that issue at this hearing; that he

19  wanted to make that point to preserve the point, which is

20  not inconsistent with the way it's written; that he's just

21  noting that he has that potential claim at some point.  But

22  he's not stating that, at this juncture, you can't go

23  forward.

24            THE COURT:  I'm not sure what that means.

25            MR. BENDERNAGEL:  Well, neither do we, but maybe

1  you should ask Mr. Stark that question.  We can do that now

2  or when he gets up here.

3         THE COURT:  We'll do it when he gets up.

4         MR. BENDERNAGEL:  Okay.  The second issue,

5  essentially, is the -- there's a request in the Wilmington

6  Trust filing that basically says they're asking the Court to

7  essentially reserve distribution of the proceeds, the

8  settlement amounts that are impacted by -- in light of the

9  Wilmington Trust appeal.  As we note in our reply brief, we

10  think that issue is premature.  We think that issue is

11  better raised at a later point in time and, quite frankly,

12  either in connection with the Plan, or if they're seeking a

13  stay by motion of a stay of whatever confirmation order does

14  come out.  I've talked to Mr. Stark about that and I think

15  there is agreement that that issue can -- is not an

16  allocation dispute issue; that it ought to be determined at

17  a later point in time, and we're agreeable to proceeding in

18  that regard.

19         The final procedural issue has to do with the

20  Creditor Trust.  Mr. Stark and Wilmington Trust argue that

21  the Creditor Trust issue is moot so that you need not decide

22  it.  We disagree with that issue.  The Creditor Plan

23  provides that people can opt in or the PHONES Claimants can

24  opt in or opt out.  Mr. Stark makes the point that they may

25  not have that right under the Indenture Trustee.  That may

1   or may not be correct.  But the fact of the matter is nobody

2   has opted in or opted out at this juncture.  And further,

3   the Plan provides the people that opt out can opt back in.

4   So I think the issue is a live issue and in order to move

5   forward.  Those are our comments.  We do not believe that

6   you've been divested and we think that this proceeding ought

7   to move forward, and I'll turn the -- unless you have

8   questions for me, I'll turn the issues over to Law

9   Debenture.

10          THE COURT:  I do not.  Thank you.

11          MR. STARK:  Your Honor?

12          THE COURT:  Yes?

13          UNKNOWN:  He said he was turning it over to Law

14   Debenture.

15          MR. STARK:  And I'm happy to sit back down, but

16   it seems as though Mr. Bendernagel wants us to -- perhaps I

17   should try to streamline.  I'm happy to do that or we can

18   throw the argument away; whatever's easiest for the Court.

19          THE COURT:  I'll hear you when you come up.

20   Thank you.

21          MR. BENDERNAGEL:  One further thing, Your Honor,

22   just -- now that we're getting into the substance, and I

23   should have done this at the beginning.  Binder number one

24   of the exhibits is the document that contains what I believe

25   are the exhibits that relate to this particular issue, and

1  there are four operative documents.  I do not believe any of

2  those documents are subject to any kind of evidentiary

3  dispute.  They can be admitted.  If somebody disagrees with

4  that, they probably ought to speak up.  But I think Exhibits

5  1 to 4 should be admitted into evidence at this juncture.

6           THE COURT:  Okay.  Is there any objections to the

7  admission of 1 to 4?

8           UNKNOWN:  No, Your Honor.

9           THE COURT:  I hear no response.  They're admitted

10 without objection.

11 [Exhibits 1 through 4 (Binder 1) were admitted into

12 evidence.]

13           MR. ROSNER:  Good morning, Your Honor, David

14 Rosner of Kasowitz Benson Torres & Friedman for Law

15 Debenture; also speaking for Deutsche Bank for the

16 allocation disputes, together with Deutsche Bank, we're the

17 Indenture Trustees for 100 percent of Tribune's Senior debt.

18 That Senior debt amounts to approximately $1.3 billion.

19 You've heard about it during the course of the case.  The

20 Court has seven allocation disputes before it today.  Law

21 Debenture has an interest in the first five.  Generally,

22 Your Honor, in the context of funded debt for large

23 operating companies, subordination is very simple and very

24 straightforward.  There is funded Senior debt; there's

25 funded subordinated debt; and then there's what I'd call

1  everything else, and that's usually unfunded liabilities

2  like pension costs, SWAP termination costs, employee costs,

3  insurance costs, litigation claims, tax claims, all ordinary

4  course of business stuff.  Each liability is of equal

5  priority as to the debtor.  But the funded subordinated debt

6  is subordinate to the Senior debt but not to the everything

7  else, and that's our view and we hope that's the view of the

8  Court.  The funded Senior debt -- I'm sorry.  The funded

9  subordinated debt spins up its recovery to the Senior debt

10  until the Senior debt is paid in full.  The funded

11  subordinated debt does not spin up to anything else.  So we

12  have a very simple schematic that explains how this works in

13  the ordinary course.  It's very simple.  You've got assets

14  of 99 equal claims.  Everybody gets $33.  The sub debt spins

15  it up to the Senior debt and the other debt stays the same,

16  and that's the way that the outcome should be and that's the

17  way the outcome should be here, and that's it, Your Honor.

18  Despite hundreds of pages of briefing, that's all there is.

19  That's all you have today.  Your Honor -- hang on a second.

20  I jumped to EGI.

21       On the jurisdictional question, I also didn't

22  really understand what the give-and-take was, and I think

23  Mr. Stark will speak for himself.  I do think Your Honor

24  needs to make that decision that it does have jurisdiction

25  to decide this and I think Your Honor is the master of its

1  own jurisdiction, and I think it's clear here when there is

2  a Notice of Appeal, which is probably an arrantly filed

3  Notice of Appeal, or a Motion for Leave to Appeal which

4  hasn't been granted.  Even if it were granted, we're dealing

5  with a different issue here and Your Honor does have

6  jurisdiction and I hope it will make that determination as

7  to the allocation dispute.

8          THE COURT:  Actually, the -- I think it's the

9  debtor in their submission, on issue, say actually, because

10  it's the same issue, I retain jurisdiction because I'm

11  enforcing an Order that I've already entered.

12          MR. ROSNER:  Well, there's no question that

13  you've got a law of the case issue in front of you today.

14  And when I say that it's a different issue; and you're

15  right, thank you for correcting me.  What I mean is that

16  it's a different issue in terms of application of your

17  existing Order to another little piece of the pie here of

18  the DCL Plan.  But it is an application of your existing

19  Order.  And I think that when the Court does have the

20  ability to apply its existing Order to an existing matter,

21  that it has not been divested of jurisdiction.

22          On the question of mootness, there's -- there

23  really shouldn't be any issue that this matter is moot for

24  the very reasons that Mr. Bendernagel said; and I'm not

25  going to repeat them, only to say that, under the prior

1    Plan, I believe there were PHONES that were in the Creditor

2    Trust, and there's likely to be PHONES in the Creditor Trust

3    here, and the issue is ripe before Your Honor today.

4                Your Honor, the PHONES are subordinated to the

5    Senior debt as to any payment from any source, including the

6    settlement proceeds, the disgorgement proceeds, the

7    Litigation Trust proceeds, and the Creditor Trust proceeds.

8    You actually spoke to this almost directly in excide when

9    you said specifically that payments from the debtor or from

10   a re-allocation of the estate, when the payment is

11   prohibited, is subject to subordination.  This is law of the

12   case at this point, Your Honor.  Your Honor has already

13   decided the issue.  It's true you didn't decide it

14   specifically in the context of the Creditor Trust.  But you

15   did decide that the PHONES must turn over Chapter 5

16   avoidance action proceeds.  This Court held, among other

17   things; and I quote, "The language in the subordination

18   provision of Section 14.02(a) is unqualified.  Reading the

19   introductory language as limiting the unqualified

20   subordination language in 14.02(a) fails to give effect to

21   the provision as a whole."  You also ruled that the rule of

22   the last antecedent should likewise be applied in

23   interpretation of Section 14.02.  Construing the word

24   payment broadly, and not limited by the phrase assets of the

25   estate, is -- "is sensible and consistent with the entirety

1  of Section 14.02."  Again referring to 14.02, Your Honor,

2  you said that it demonstrates the parties' intent to apply

3  the subordination provisions to a broad array of payments.

4          Finally, the overall purpose of Article 14, and

5  in general, and Section 14.02 in particular, is to ensure

6  that the PHONES Notes are subordinated to the Senior debt --

7  Senior indebtedness.  This is now law of the case.  There's

8  no distinction between the Court's earlier ruling and its

9  application to the settlement proceeds and recoveries and

10 distributions from the Creditor Trust.  Any payment, Your

11 Honor, means any payment, and that's what you've decided.

12 So under the PHONES Indenture, there is no limitation to

13 assets of the company.  Even if that distinction were

14 relevant, which it's not, it wouldn't apply here based upon

15 your earlier ruling, and based upon the text of the

16 Subordination Agreement in question.

17         Now, Your Honor, I've only spoken for a few

18 minutes on this, and I don't think that I need to speak any

19 further on this, and I'm going to leave that up to you. I

20 can go through the arguments from the Reconsideration Motion

21 that had been made before you or I can adopt them in full

22 and I can sit down and let Wilmington Trust speak.

23         THE COURT:  I do that enough in the middle of the

24 night.  Thank you.

25         MR. JOHNSTON:  Good morning, Your Honor, Jim

1  Johnston, of Dewey & LeBoeuf, on behalf of Oaktree Capital

2  Management.  I rise basically because I'm next in the order

3  of presentation.  We did not make substantive argument on

4  these points.  We joined in the debtors' argument that Your

5  Honor is not divested from determining the issue and we note

6  and agree with Mr. Rosner on this particular point that we

7  believe that your Reconsideration Opinion is dispositive on

8  the subject of whether or not the PHONES Notes subordination

9  applies to the settlement consideration.

10             THE COURT:  Thank you.

11             MR. JOHNSTON:  Thanks.

12             MR. TEITELBAUM:  Your Honor, Jay Teitelbaum,

13  Teitelbaum & Baskin.  We will also rest on the pleadings

14  that we have filed and we will support the arguments made by

15  Mr. Rosner with respect to the PHONES, but we specifically

16  don't agree with his general characterizations about the

17  indenture and how it relates to other claims.  It's

18  specifically related to the PHONES issue, Your Honor.

19             THE COURT:  All right.  Thank you.

20             MR. BRADFORD:  Good morning, Your Honor, David

21  Bradford, Jenner & Block, on behalf of EGI-TRB.  Your Honor,

22  we have a few comments as to how the language in the PHONES

23  Indenture is very different than the language in our

24  Indenture in terms of the scope, but I think those are best

25  addressed when we address our Indenture.  And with that, I

1  have nothing further, Your Honor.

2         THE COURT:  All right.  Thank you.

3         MR. STARK:  Good morning, Your Honor, Robert

4  Stark, from Brown Rudnick, on behalf of Wilmington Trust;

5  and I apologize.  I didn't mean to jump the gun.  I

6  literally was trying to streamline and make things a whole

7  lot more efficient.  And in the interest of time and

8  efficiency, let me start with this, and I think it does help

9  a lot.  If the Court was right in the Reconsideration

10  Opinion, and our Indenture does, in fact, compel a Chapter 5

11  turnover, then we must turn over not only the Litigation

12  Trust recoveries, but also the settlement pool, the pot.

13  I'll concede it.  Our position in our papers was call it a

14  preservation of rights.  Your Honor's Opinion has been

15  appealed.  It's a contested appeal.

16         THE COURT:  Who has that appeal by the way, Mr.

17  Stark?

18         MR. STARK:  I'm sorry?

19         THE COURT:  Who has that appeal?

20         MR. STARK:  Judge Sleet.  That we've --

21         THE COURT:  Wow.  You hit the jackpot *WaMu* and

22  *Tribune*.

23         MR. STARK:  Oh, he sure did, didn't he?  And

24  fortunately, he's seeing a lot of me of late.  But we did

25  file that appeal and we did -- and I appreciate that it is a

1    contested appeal.  It's a controversial thing to say it's a

2    Final Order, and people have said it is not.  And we have

3    asked, as a secondary matter, for a discretionary appeal,

4    and it's fully briefed, I believe, and we're waiting for

5    Judge Sleet to tell us if we're going to have oral argument

6    or he's going to decide on the papers.  But these issues got

7    presented in sort of a procedural context whereby we're

8    iterating out all of the allocation disputes.  This is one

9    of them.  We had to respond.  We responded in three

10   paragraphs, give or take, saying we have issues with Your

11   Honor's Reconsideration Opinion.  It's now before Judge

12   Sleet.  We do not yet know how procedurally that will avail

13   itself between now and the confirmation hearing.  If, in

14   fact, our appeal is of right, that it is a Final Order or a

15   discretionary appeal is granted, then at that moment in time

16   we would then advance to Your Honor, and say okay, we have

17   an interesting divesture argument.

18            THE COURT:  So do you think what happened in *WaMu*

19   might give you any indication of how Judge Sleet might go?

20            MR. STARK:  I don't, Your Honor.  In part,

21   because I think that there's a little bit of a difference --

22   well, there's an awful lot of differences between Tribune

23   and *WaMu*.  We can spend hours having a very interesting

24   conversation about the differences and similarities.  But

25   suffice it --

1          THE COURT:   That's for over drinks later maybe,

2    Mr. Stark.

3          MR. STARK:   Perhaps.   And I'll buy.   But with

4    respect to what happened with -- in that it was a Stay

5    Motion that was placed before Judge Walrath, she denied it.

6    She articulated her views on divesture in a prior opinion

7    and we asked essentially for her to re-visit those issues.

8    She declined to do so, and then it was taken, as I must

9    procedurally, by way of mandamus.   And that's a very

10   different standard than how one articulates a divestiture

11   rule.   So it is a different procedural context.   I don't

12   know how Judge Sleet would review our appeal of the

13   Reconsideration Opinion today, and how that might have a

14   divestiture impact on this particular case.   But again, as

15   Mr. Bendernagel quite aptly said, we're not there yet.   I

16   just, knowing the litigants in this particular case, could

17   not afford not to put the issue out there and say when and

18   if we find ourselves in this situation between now and the

19   confirmation hearing, with a live appeal, and an issue about

20   divestiture, somebody might have claimed that I slept on my

21   rights and so we put them out there.   But again, as I

22   started the presentation, Your Honor, if Your Honor's

23   Reconsideration Opinion is upheld or our appeal is not

24   appropriately taken at this time, then it has binding impact

25   across the board; I can see the point.

1          With respect to the Creditor Trust proceeds, I

2     actually think we're in a very different procedural and

3     substantive place, Your Honor.  And we are, again, a little

4     bit scrambled up procedurally.  So if Your Honor will allow

5     me, these issues got presented.  We filed a brief.  Some

6     stays thereafter a new Plan was filed.  When we filed our

7     brief we were operating under the vote in the opt-out, opt-

8     in mechanic that was in existence at the time, and I guess

9     we have a new one now.  So I guess we're a little bit

10     scrambled procedurally, and so I have to deal with it

11     effectively, whereas when we filed the original brief, it

12     was moot.  Now it may not be.  Okay.  But let me back up

13     just a little bit to try to get to a substantive level.  On

14     October 11th of 2011, last year, the Court entered an Order

15     giving creditors the rights to bring constructive fraudulent

16     conveyance claims in their own name under UFTA.

17          THE COURT:  Well, I didn't say they had the

18     right.

19          MR. STARK:  Understood.  I appreciate the

20     clarification.

21          THE COURT:  Okay.

22          MR. STARK:  But to the extent that the automatic

23     stay otherwise might have been interpreted as to prevent us

24     from bringing that action, Your Honor gave us clarification

25     on that particular point, and in fact, those lawsuits were

1  filed.   As Your Honor knows, pending before Judge Pauley in

2  the Southern District of New York is a very large and

3  complicated MDL proceeding in which Wilmington Trust is a

4  plaintiff with Law Debenture and Deutsche Bank suing more

5  than 30,000 former shareholders.   That is -- we keep asking

6  Your Honor for a little more leash to be able to prosecute

7  that aggressively, and if you're a PHONES holder today,

8  you're primarily looking at that litigation as your primary

9  recovery source; one would hope, one would think perhaps the

10  estate litigation will yield as well.   But those fraudulent

11  conveyance claims are your primary ticket to recovery.   And

12  it made sense that Wilmington Trust and Deutsche Bank and

13  Law Debenture brought those actions and no other PHONES

14  holder or Senior Noteholder brought that, and that's been

15  briefed for Your Honor and is -- that's pretty well known.

16  In every indenture, including the indentures here, there's

17  the limitations on suit -- limitation on suits provision.

18  In the PHONES Indentures, that's 5.07 of the Indenture.

19  Only the Indenture Trustee can bring avoidance actions on

20  behalf of the holders.   That's what we've done.   There's no

21  other creditor that we're aware of; there's no other PHONES

22  holder that I'm aware of that could assert an avoidance

23  action under applicable state law in accordance with that

24  provision and none have to date, and we've been at this for

25  a little while now.

1          So now we're in a situation where okay, we filed

2   a brief, filed a new Plan, they said it's not moot anymore

3   and it's still an issue because, perhaps, a majority of the

4   PHONES holders might direct Wilmington Trust to stop the MDL

5   process, hand over the claims to the Creditor Trust, give up

6   35 percent of the recoveries to the LBO banks, lose control

7   over the litigation, perhaps have to start all over again,

8   and lose governance altogether on where we are and where

9   we're headed to.  I think Your Honor can probably look at

10  the case circumstances as informing how important this issue

11  is right now because the likelihood that the PHONES holders,

12  a majority of the PHONES holders, are going to direct us to

13  transfer the litigation as actively prosecuting, and has

14  been for a year, into a Creditor's Trust with a substantial

15  dilution of their economic interests and complete loss of

16  control of it is nil, or slightly above nil.  So it may not

17  be moot anymore but it's pretty close to moot.

18          And lastly, Your Honor, again, since I find

19  myself now having to scramble after seeing the rebuttal

20  briefs on Friday, I'll posit this.  The issue, with respect

21  to Creditor Trust proceeds, really boils down to this.  Do

22  the PHONES holders have to turn over their recoveries that

23  they get from non-debtor defendants to creditors, non-

24  debtors?  That doesn't feel to me to be an issue that arises

25  under or arises in a bankruptcy case.  In agreeing to the

1    allocation of issues before Your Honor, again, we thought we

2    were dealing under the old Plan.  We certainly did not

3    consent to the jurisdiction of this Court to make a

4    determination as to whether or not turnover of our proceeds

5    from third parties to third parties is an issue that fits

6    within this Court's subject matter jurisdiction.  So I think

7    under *Marathon*, we have an issue that on Friday became a new

8    issue, and I don't think it's an issue on a substantive

9    basis, but I don't think it's an issue as a matter of law.

10   Does Your Honor have any questions for me?

11              THE COURT:  I do not.

12              MR. STARK:  Thank you.

13              THE COURT:  Okay.

14              MR. BENDERNAGEL:  Your Honor, I think we're

15   moving on to the next issue under the schedule.

16              THE COURT:  But --

17              MR. BENDERNAGEL:  Just as a procedural matter,

18   the book that relates to this is Exhibit 2.  It's -- in the

19   exhibits that are in there are Exhibits 5 through 8.

20              THE COURT:  Okay.

21              MR. BENDERNAGEL:  And it's not my understanding

22   that there are any objections to these documents.  I think

23   these are the operative EGI documents and I'd offer them in

24   evidence at this juncture.

25              THE COURT:  Is there any objection to the

1  admission of Exhibits 5 through 8?

2              (No audible response)

3          THE COURT:  I hear no response.  They're admitted

4  without objection.

5  [Exhibits 5 through 8 are admitted without objection.]

6          MR. BENDERNAGEL:  I'll turn the podium over to

7  Mr. Rosner.

8          THE COURT:  Thank you.

9          MR. ROSNER:  For the record, David Rosner,

10 Kasowitz Benson Torres & Friedman, for Law Debenture, and

11 for today's purposes, also for Deutsche Bank.  Allocation

12 dispute number two, dealing with the subordination of EGI.

13 EGI is junior to all payments, no different than the PHONES,

14 and it's payments from any source.  Your Honor, EGI is

15 junior in right of payment to the Senior debt as to any and

16 all payments that they receive on their debt, which is a

17 subordinated obligation received from any source whatsoever.

18 Now, I just have to ask you procedurally, if there's

19 something that we put up there, do you have it?  Is it --

20 does it show up on your screen?

21         THE COURT:  Well, I can make it show up, which

22 I've done.

23         MR. ROSNER:  Oh, okay.  You're better at that --

24 I can't do that, actually.

25         THE COURT:  Well, it took a little training, but

1   I managed to learn how to push a button.

2           MR. ROSNER:  So this is just to show that we're

3   referring to this Subordination Agreement, which is one of

4   the exhibits.  The sources of payment that are to be

5   received by the Senior debt from a spin-up from EGI include,

6   as they do for the PHONES, the settlement proceeds, the

7   disgorgement proceeds, the Litigation Trust proceeds, and

8   the Creditor Trust proceeds.  Now, I will say to Your Honor

9   that the Reconsideration Memorandum Opinion, Opinion and

10  Order, is not law of the case in this instance.  But I do

11  believe it's persuasive authority as to how this

12  Subordination Agreement is and should be interpreted by this

13  Court.  Here, applying the rule of the last antecedent as

14  you did in the Reconsideration Order, broadly reading the

15  term, "any payment", understanding the structuring of

16  contractual and legal relationship with the purpose of the

17  agreement at hand, and not allowing the purpose to be

18  eviscerated to the detriment of legitimate commercial

19  expectations, which is the way that you articulated it in

20  the *Dura* case.  Now, this agreement is governed by Delaware

21  law, and like Illinois law which governs the PHONES,

22  Delaware asked this Court to read the contract, as written,

23  to discern the parties' intent.  This Subordination

24  Agreement, we contend, Your Honor, is clear, like the

25  PHONES, that EGI is subordinated to any payment, and may not

1    -- it actually goes a little bit further -- it may not even

2    seek any payment and can be restrained from seeking any

3    payment based upon your Court's ruling.  So I want to turn

4    to some of the provisions of the Subordination Agreement.

5            This is paragraph two of the Subordination

6    Agreement that's up on the slide right now.  And EGI relies

7    heavily on paragraph two, but as Your Honor can see,

8    paragraph two restricts EGI from taking or even demanding

9    any payment of any kind unless and until the Senior

10   obligations have been paid in full in cash.  It starts off

11   with the sentence unless and until, period.  The company --

12   in fact, the next sentence says that the company cannot even

13   do it directly or indirectly, perhaps like through the

14   proposal of a Plan.  Not even indirectly can they enable

15   there to be any payment on the subordinated obligations.

16           Let's turn to paragraph four.  Now, EGI similarly

17   tries to skirt paragraph four, but again, from our

18   perspective, and I think viewing it as you did the PHONES

19   Indenture, paragraph four could not be more crystal clear.

20   Once again, until the Senior Notes are paid in full in cash,

21   EGI may exercise no right, remedy, or power, specifically

22   identifying that EGI cannot sue in order to collect on its

23   debts, and it's right there in paragraph four and we think

24   it's a critical paragraph for Your Honor to look at to take

25   a view as to what was the broad purpose of the Subordination

1  Agreement.  And I know, as I had mentioned a moment ago,

2  that the Senior debt actually has the right under this

3  agreement to enjoin EGI from moving to collect its debt

4  anywhere.  And as Your Honor I think was alerted at either

5  the last hearing or the one before, was independently aware

6  EGI has actually filed suit itself to recover payments.  And

7  assuming and hoping that Your Honor is going to rule on the

8  Subordination Agreement in the way that we intend, I would

9  expect very quickly that there will be an action to restrain

10  that action from going forward.  But paragraph four, in our

11  opinion, demonstrates without a doubt both the completeness,

12  but the breath, of EGI's subordination again as to any

13  payment.  Then the specific reference in there to taking

14  advantage of any insolvency law of any other state we think

15  speaks specifically to the Creditor Trust issue that it

16  basically is referring to state fraudulent conveyance law,

17  and we think that that basically ends EGI's case.

18           I would like to take a look at paragraph six.

19  And here, again, we think EGI tries to get around paragraph

20  six, which makes it, again, crystal clear that EGI must turn

21  over to the Senior Notes any payment that EGI receives that

22  are contrary to EGI's Subordination Agreement.  And EGI's

23  Subordination Agreement disallows it from taking any payment

24  from any source on its debt.  So it cannot actually receive

25  any of the proceeds that it is trying to grab either under

1   the Plan or out of the trust from the Plan.  Those need to

2   be turned over to the Senior debt, and there's no question

3   who the Senior debt is in this instance.  There's a question

4   later on we're going to get to as to whether there's an

5   expansive group of what Senior debt is, but there's no

6   question that the Senior debt is the Senior debt.  So EGI

7   must turn it over, because it's completely subordinate to

8   the Senior Notes, any and all payments from any source, and

9   as I identified, there's four sources in this case.  So like

10  with the PHONES here, Your Honor, there's no meaningful

11  distinction between assets of the company and assets of the

12  estate or assets of a debtor in possession and EGI is trying

13  to make much to do about that.  But *Cybergenics* really is

14  not -- has nothing really to do with the dispute at hand and

15  I think that the holding in *Cybergenics* is not very

16  controversial.  But you see that any time assets of the

17  company are used there is actually an expressed prohibition

18  that is separate from assets of the company as to where EGI

19  is subordinate.  So we don't believe that the term company

20  in the EGI Subordination Agreement has any relevance and we

21  think that it's actually natural for the Court to view

22  Tribune as debtor in possession as being the natural

23  successor to the company for the purposes of enforcing the

24  Subordination Agreement as the Court is required to do under

25  Section 510(a) of the Bankruptcy Code in Tribune's

1  bankruptcy.  It would actually be silly in a way for the

2  Subordination Agreement not to be enforced as to the debtor

3  in possession in a bankruptcy, which is the most likely, if

4  not only time, it's going to come into effect by its terms.

5          THE COURT:  Well, I wouldn't want to violate the

6  anti-silly rule, Mr. Rosner.

7          MR. ROSNER:  Yes.  I appreciate that, Your Honor,

8  and I don't think you are.  I think it's the arguments

9  against it, perhaps, that are.  Although I'll say that

10  Tribune is -- the debtor in possession is the natural

11  successor to the company.  I would just note that the

12  Creditor Trust is not, as we all understand.  Those are

13  creditor claims, and not Tribune claims.  We do agree that

14  the EGI Note is a Tribune obligation and EGI makes much ado

15  about the fact that it is a Tribune obligation, and I don't

16  think anybody would dispute that.

17          Can you turn over to the next one, please?

18  That's the definition of subordinated obligation that you

19  find, I think, in paragraph one, and EGI is kind of hung up

20  on this definition of subordination obligation, believing

21  incongruously that avoidance action recoveries are not

22  payments on principal and interest on its debt.  The Note,

23  in any event -- you know, the Note, anyway, the principal

24  and interest refers to in this agreement to the debt, is not

25  to the company's obligation for the debt anyway.  It's to

1   principal and interest on the Note.  So if they're not

2   payments on that Note, what would they be?  I mean EGI is

3   not entitled to receive, under any circumstances, more than

4   the amount on its Note; more than principal and interest on

5   its Note.  So certainly, any payments it would get from the

6   settlement proceeds, the disgorgement proceeds, Litigation

7   Trust proceeds, or the Creditor Trust proceeds would be

8   payment on its subordinated obligation.

9           The one note I will make about *Cybergenics*, just

10  because I think we have talked about it and I just want to

11  make this known; I don't think it governs really anything

12  but, you know, *Cybergenics* was a post-petition agreement

13  that was done.  It was a post-petition sale, in which case

14  there can be an issue as to how somebody identified where

15  different assets came from as to whether they came from an

16  estate; whether they came from the debtor or whatever,

17  because that was something that was right before a

18  Bankruptcy Court and those issues were present.  The

19  purchaser was not a party to the *Cybergenics* dispute.  They

20  never maintained that they had purchased avoidance action.

21  *Cybergenics* was never a party to it.  Here, we're dealing

22  with a pre-petition contract.  This contract is written as

23  any debt agreement would be written in terms of the company

24  as the obligor and the subordinated creditor being EGI.  And

25  as I said, the bankruptcy estate would be the natural

1  successor.  As Your Honor said in *Dura*, a Subordination

2  Agreement cannot be read, nor applied, in a manner that

3  would eviscerate its purpose.  Number one, it must make

4  sense in the context in which it's been written and the

5  purpose that it serves which was here to be the lowest point

6  in the capital structure, the only "investment" that the LBO

7  sponsor made into this entity, a subordinated obligation.

8  It must be read as a whole, not to depart from its direct

9  and dominant meaning and purpose.  It's the context of the

10 entire agreement that is more reflective of the parties'

11 intents than pulling out isolated words and saying ah ha, I

12 see by the company here, and I'm going to point to the

13 company as being Tribune, and therefore, I'm going to get a

14 get out of jail free card.  That's not going to work here

15 because we have to look at the dominant purpose and the

16 parties' intent as reflected in the entirety of the

17 agreement.  There's complete subordination here, and as Your

18 Honor did say in *Exide*, reallocation, assets from the

19 company, are the same thing in the context of subordination.

20 That's all I have, Your Honor.

21           THE COURT:  Thank you.

22           MR. JOHNSTON:  Good morning again, Your Honor,

23 Jim Johnston on behalf of Oaktree Capital.  Your Honor, we

24 agree largely with Mr. Rosner's arguments.  I won't

25 duplicate them, but I do want to make a few observations.

1   Sometimes, Your Honor, a reality check is in order, and I'd

2   say no more so than on this particular issue and this

3   particular subject.  I certainly agree with Mr. Rosner that

4   Subordination Agreements of this sort need to be read as a

5   whole and in context.  The idea here, Your Honor, that Sam

6   Zell, the architect of the LBO transactions, somehow could

7   share in settlements of avoidance actions brought to undo

8   those very transactions, doesn't feel right.  And it doesn't

9   feel right because it's not right.  Mr. Zell was the equity

10  sponsor.  He would have owned the company if things had

11  worked out.  The only reason he didn't take an equity stake

12  originally, and wound up with a subordinated Note instead of

13  equity, is because the ESOP structure prohibited anybody

14  other than the ESOP from owning the company.  So Mr. Zell,

15  through EGI, got a Subordinated Note instead.  In that Note,

16  he didn't negotiate the share and recoveries or settlements

17  of actions to avoid the LBO.  The lenders financing the LBO

18  transactions, the ones whose debt would be the target of

19  those actions, frankly would have laughed at that request.

20  And there's nothing whatsoever in the document that remotely

21  suggests that anyone ever contemplated that EGI's

22  subordination somehow would not apply to avoidance action

23  recoveries or settlements.  I'll note, Your Honor, that EGI

24  never even suggested this until your confirmation decision

25  came out.  I'd suggest that this is opportunism, plain and

1  simple.  And given your Reconsideration Opinion, we really

2  shouldn't have to waste a minute of anybody's time on it,

3  but we're here.

4          Turning to the text of the Subordination

5  Agreement, and Mr. Rosner covered most of the points.  I'd

6  like to elaborate on just a few, and we do have *World's*

7  action.  We do have pieces of paper.  If I may approach --

8          THE COURT:  You may.

9          MR. JOHNSTON:  -- I'll give you some excerpts

10  from that agreement.

11          THE COURT:  Thank you.  Do you have a copy for my

12  law clerk too, Mr. Johnston?  Thank you.

13          MR. JOHNSTON:  Okay.  So I'll start with section

14  two, as did Mr. Rosner, a subordination to all "senior"

15  obligations.  The subordination is enforced via prohibition

16  on Tribune for making "any payment" on the EGI subordinated

17  Notes unless and until the senior obligations are paid in

18  full.  I'd pause here to note, what are distributions under

19  the Plan if they're not payments from Tribune, any payments

20  from Tribune?  EGI makes much of the language in the same

21  sense about the subordination making no claim to assets of

22  the company.  As we said in our papers, Your Honor, that's a

23  means of enforcing the subordination.  It's a prohibition on

24  EGI.  It's not a limitation on the subordination itself, and

25  this is made clear by both sections four and section six.

1    We've blown up section four on the third page of the

2    handout.  Here, you see that EGI is prohibited from taking

3    any action, from exercising any rights, remedies, or powers

4    under the subordinated Note, and from exercising any other

5    right or remedy at law, or in equity, to collect on the

6    Note.  EGI wants to say, essentially, that section four is

7    meaningless in this context because an avoidance action is

8    not an action under the subordinated Note.  It's not an

9    action to collect on the note.  But that's simply wrong.

10   Note first that section four's prohibition applies to more

11   than just an action under the Note.  The prohibition refers

12   to any action to collect and any other right, remedy, or

13   remedy at law, or in equity, to collect on the Note.  That

14   language specifically envisions actions not taken under the

15   terms of the Note to collect, and that's what an avoidance

16   action is.  Every avoidance action, which is clearly an

17   action -- which is clearly a right or remedy at law, or in

18   equity, to use the terms of section four, is an action to

19   collect on a Note.  Any recovery by EGI in an avoidance

20   action would reduce the amount of the Note and EGI could

21   never recover more than what's due on the Note.  And you

22   need look no further, ironically, than *Cybergenics*, which

23   stands for that very proposition that, in an avoidance

24   action, a creditor cannot recover more than the underlying

25   amount of the debt.  So an avoidance action is not some

1  freestanding action untethered to the underlying debt

2  instrument.  It's an action to collect on the Note and falls

3  squarely within section four.

4          We drive this point home by looking at section

5  six, which is on the next and last slide.  Section six

6  enhances section four.  It says if notwithstanding all of

7  the prohibitions in section four EGI receives any payment or

8  distribution upon or with respect to the subordinated Note,

9  it has to turn those payments over to Senior Creditors, no

10  exceptions.  The payments could come from anybody.  They

11  need not come from Tribune or the company.  But they could,

12  for example, come from an avoidance action against a third

13  party.  They could come under a plan of reorganization.

14  They could come in a liquidating trust.  Your Honor, I'd

15  submit that section four and section six, read in context

16  with section two and read in the context of the agreement,

17  is straightforward and compelling.  There's no plausible

18  reading of the agreement that would enable or entitle EGI to

19  keep distributions of settlement consideration in respective

20  avoidance actions, whether under a Plan or otherwise,

21  especially in a case like this where the distributions are

22  made directly by Tribune in its Plan.  That's all I have.

23          THE COURT:  Thank you.

24          MR. JOHNSTON:  Thank you.

25          MR. TEITELAUM:  Your Honor, Jay Teitelbaum,

1  Teitelbaum & Baskin for the Retirees.  We join in the

2  comments and argument of Law Debenture, and particularly

3  Oaktree, which resonate with the Retirees.  Your Honor, I'm

4  not going to -- and we'll rest on the arguments we made in

5  our brief.  But again, just to point out the situation that

6  the Court is faced with, particularly with the Retirees,

7  where the architect of why we're all here today, now seeks

8  to seek some recovery where you have people who, for

9  example, the Retirees, gave 20, 30 years of their lives and

10 are looking at 65 percent or more, potentially, dilution,

11 loss of their retirement benefits.  A lot of people are

12 saying it just doesn't feel right; doesn't seem right.

13 We've cited in our brief some dictionaries and some sources

14 which are the subject dispute, probably one thing at least

15 the folks from New York won't dispute, is Judge Duberstein

16 and his dictionary on Yiddish terms for bankruptcy, and the

17 one that comes to mind is chutzpah, and that's where we are,

18 Your Honor.  It's not right.  It doesn't feel right.  They

19 shouldn't be permitted to be recovering on something which

20 they orchestrated, Your Honor.  And for all of the obviously

21 good legal reasons that were put forth in our brief and in

22 the other briefs, and consistent with the Rules of

23 Construction, the Court should not permit this.  And the

24 last piece is, Your Honor, unlike the PHONES Indenture, and

25 unlike the Tribune TM Retiree Agreements, this Indenture was

1  drafted with eyes wide open.  This Indenture was drafted in

2  2007 when at least, arguably, certain people could have seen

3  what was coming down the pike.  And it was drafted in such a

4  way that, to the extent there is an ambiguity, that

5  shouldn't be the problem of all the other victims in this

6  case.  It should be the problem of the drafts person.  Thank

7  you, Your Honor.

8            THE COURT:  Thank you.

9            MR. BRADFORD:  Good morning, Your Honor, David

10  Bradford, Jenner & Block, for EGI-TRB.  Your Honor, I too

11  have a demonstrative, and with the Court's permission, would

12  like to enter that to the Court.  We're stipulating to the

13  parties.

14            THE COURT:  Certainly.

15            MR. BRADFORD:  Thank you, Your Honor.

16            THE COURT:  Copy for my law clerk too, Mr.

17  Bradford?

18            MR. BRADFORD:  Your Honor, and I'll --

19            THE COURT:  Copies for my law clerk, Mr.

20  Bradford?

21            MR. BRADFORD:  I'm sorry.  I apologize, Your

22  Honor.

23            THE COURT:  That's all right.  Thank you.  Well

24  and I see that, since you're in the Courtroom, you must have

25  removed your black hat.

1          MR. BRADFORD:  We're trying, Your Honor.

2          THE COURT:  Yes.

3          MR. BRAFORD:  And I would note that issues of

4    equitable subordination have been reserved for the

5    *FitzSimons* litigation so we're here on issues of contractual

6    litigation.  Briefly, Your Honor, I want to address the

7    *Cybergenics* issues that have been alluded to, and explain

8    that, under Delaware Rules of Construction, which apply

9    here, Subordination Agreements are to be strictly construed,

10   and then explain why the terms of this agreement, very

11   different from the PHONES Agreement, do not provide for

12   avoidance of -- or subordination of avoidance recoveries and

13   also don't provide -- doesn't provide for subordination of

14   monies that EGI-TRB is entitled to receive from the PHONES

15   by reason of their subordination.  So there are two

16   different components here.  One is what we receive directly

17   from the Litigation Trust or the settlement.  Additionally,

18   under the PHONES subordination, EGI-TRB is entitled to its

19   pro-rata share of that subordination.  And I will explain

20   why that payment from one creditor to another creditor,

21   assuming we satisfy you that we are a Senior indebtedness

22   under the PHONES Indenture, doesn't, in turn, get re-

23   subordinated and paid over.

24          This Court was correct in its reading of

25   *Cybergenics*.  *Cybergenics* specifically held that the

1  avoidance power does not belong to the company.  This Court

2  indicated it would not reconsider the legal principle

3  decided by the Third Circuit that fraudulent transfer claims

4  are not assets of the company.  There's been some effort in

5  the briefing to limit Your Honor's ruling to a 544(b) claim

6  based on this prometheus creditor requirement in 554(b).

7  But *Cybergenics*, in the language that this Court quoted, was

8  unequivocal in saying that the avoidance power itself was

9  not an asset of *Cybergenics*.  And it similarly explained

10 that, as a consequence of that, if there were recoveries on

11 avoidance actions, they would be property of the estate but

12 they would not be property of the debtor and the same rule

13 would apply under state law.  And the reason for that, of

14 course, is that the debtor doesn't have the right to bring a

15 fraudulent transfer action.  That action belongs to the

16 creditors.  It doesn't matter whether we're in bankruptcy or

17 outside of bankruptcy.  If it's a state law fraudulent

18 transfer action, the debtor itself doesn't have a right to

19 bring that action, and any recovery belongs to the

20 creditors, not to the debtor, and not to the company.

21 That's, we believe, settled law.  So when *Cybergenics* said

22 we are selling the assets of the company, it was clear that

23 that did not include either avoidance claims or avoidance

24 recoveries.  What we said here, and I'll get to the language

25 of our Indenture, is we're subordinating ourselves as it

1    pertains to the assets of the company.  So whether the act

2    is an act of sale or an act of subordination, if the scope

3    of your sale or the scope of your subordination is the

4    assets of the company, the results should be one in the same

5    as in *Cybergenics*, which is the avoidance power and the

6    avoidance recoveries aren't part of the scope of those

7    assets.  Absent explicit language, there should be no

8    subordination.  And we agree on the rules of contract

9    construction here; that this needs to make commercial sense.

10   There's been some suggestion, Your Honor, that it would make

11   no commercial sense to limit subordination to the assets of

12   the company.  But that's what the creditors were concerned

13   about here.  Let's not deplete the assets of Tribune.  When

14   they negotiated the PHONES Indenture, the PHONES were like

15   30 or 40 percent of the capital structure.  There was a

16   concern, obviously, that if you had fraudulent transfer

17   claims, that you're not competing with 30 to 40 percent of

18   your capital structure in pursing that claim.  So what did

19   they do?  They used language that said any payment is

20   subordinated.  In the first page here, we have the language

21   from the PHONES Indenture which Your Honor addressed, which

22   specifically said any payment -- in the event of a

23   bankruptcy, any payment is subordinated and it gets paid

24   over.  We don't have that language.  You've seen some

25   language put up on the screen that has ellipses in it, but

1  there's no language in our Indenture that, like the PHONES

2  Indenture, says, in the event of a bankruptcy, here's what

3  happens.  Every payment is subordinated.  In fact, the

4  absence of that language is very critical because the

5  parties had the PHONE Indentures and chose not to include

6  it.  The PHONES said here's what happens in the event of a

7  bankruptcy.  Every payment gets paid over.  We expressly

8  excluded that language from our Subordination Agreement.  We

9  also excluded from our Subordination Agreement the language

10  I've highlighted on the first page of the demonstrative

11  which comes from the PHONES Indenture that says that the

12  subordination includes, "any payment or distribution that

13  might be payable or deliverable by reason of the payment of

14  any other indebtedness being subordinated."  So here was an

15  explicit provision that says if there's some debt even below

16  you and they're subordinated, and they have to pay over to

17  you, you, in turn, have to pay over to us as a Senior.  That

18  language was excluded.  The any payment language was

19  excluded.  And what this reflects, Your Honor, consistent

20  with the Rules of Construction, is that here, EGI-TRB was

21  negotiating with the new LBO debt for this Subordination

22  Agreement.  It wasn't negotiating with the PHONES; it wasn't

23  negotiating with the pre-LBO debt.  And it was going to be

24  two percent of the capital structure of this company.  The

25  parties it was negotiating with, the Senior Lenders, had

1    access to guarantees that EGI-TRB did not have this is the

2    subsidiary guarantees.  And what the contract evidences is,

3    that the parties were concerned that if the assets of

4    Tribune are going to be distributed, that the Seniors get

5    first crack and they get all the assets of Tribune until

6    they are paid in full and EGI-TRB can't get a penny.

7            I'm not suggesting that the agreement evidences

8    an intent where the parties sat around the table and said

9    well, what are we going to do with avoidance recoveries?

10   Tell you what, EGI-TRB, we're going to carve those out from

11   the agreement.  What I am suggesting that the agreement

12   reflects is all they were focused on were money from the

13   company, and that's what they said here.  All they were

14   focused on and all the agreement reflects is a scope of

15   objective intent is to address what happens with assets of

16   the company because if the money comes out of the company,

17   it depletes the sources of recovery available to the Senior

18   debt.  But to say that the Senior debt necessarily would be

19   crazy to worry -- not worry about competing with EGI-TRB two

20   percent of the capital structure with respect to recoveries

21   for avoidance actions, that simply was not on the radar as

22   far as this agreement goes.  And there's nothing in the

23   agreement that reflects an intent to subordinate those or to

24   address that issue.  And this goes back to a fundamental

25   Rule of Construction with Subordination Agreements, which, I

1   think we agree, is covered by Delaware law.  We found two

2   cases in Delaware dealing with Subordination Agreements.

3   They've both come up in a different factual context, but

4   both of them say Subordination Agreements should be strictly

5   construed.  In both of those cases, a party tried to extend

6   the Subordination Agreement beyond what the clear language

7   provided and the Court said no, we're going to strictly

8   construe it and not expansively apply it to situations that

9   were not contemplated expressly and unambiguously by the

10  parties.  And so the question is do we have that clear and

11  unambiguous intent to wrap Subordination Agreements -- or

12  wrap avoidance recoveries into the subordination here, and I

13  submit we do not.  The only thing we have broad language

14  that might inadvertently pull them in when there was no

15  express contemplation of doing so.  What we do have is a

16  phrase or two that might get plucked from the agreement to

17  try to suggest that, and I'll turn to those phrases.  But

18  when you look at the totality of the agreement, as everybody

19  says we should, and say what intention, what business

20  purpose, does it evince, it evidences an intent to

21  subordinate as to the assets of Tribune, no more and no

22  less, and that is understood as monies that deplete the

23  available existing assets of Tribune and make them

24  unavailable for other creditors.  It does not extend to a

25  payment by one creditor to another creditor which does not

1  deplete the assets of Tribune or make that pot a penny less

2  valuable to the Senior Lenders.  They did not speak to

3  inter-creditor payments.  And that's what we have here with

4  the pay over from the PHONES, and that's what we have with

5  these avoidance recoveries.  These are really inter-creditor

6  distributions.  What gets allocated to EGI-TRB gets taken

7  away from some other creditor.  It doesn't get taken away

8  from the debtor or Tribune's assets, and that's the critical

9  distinction that's reflected in this agreement.

10          So let's look at the language of the agreement,

11  and I would start, Your Honor, with the definition of

12  subordinated obligation which we'll put up on the screen

13  here.  It's the very first I think critical paragraph of the

14  agreement.  And I think the analysis, in many respects,

15  begins and ends here because those obligations that are

16  subordinated are very limited in scope.  The only

17  obligations that are subordinated are the unpaid principal

18  and interest on the Note itself.  Well, who's obligated to

19  pay the principal and interest on the Note?  It's Tribune.

20  That's the only obligor that speaks of a subordinated

21  obligation.  It's the obligation of the obligor on the Note

22  to pay principal and interest, and it says and all other

23  obligations and liabilities of the company.  So it's

24  referring to the Note as an example of an obligation of the

25  company, the liabilities of the company; not liabilities of

1  third parties; not a liability of a fraudulent transferee to

2  pay money over to creditors.  That's a different obligation.

3  It arises under a different statute; it doesn't arise under

4  the Note, and that's a different obligation than the

5  obligations that are subordinated.  The only obligations

6  that are subordinated are the obligations of the company.

7  And the payments, the obligations of creditors to pay over,

8  the obligations of fraudulent transferees to pay over, are

9  not subordinated obligations.  We submit, for all practical

10  purposes, the analysis begins and ends with that definition.

11  We don't have here what we had in the PHONES, a provision

12  that says and any payment from another creditor gets paid

13  over.  We don't have the any payment language.

14          So then we go to the next paragraph, which is

15  two, that defines the scope of subordination, and this could

16  not be more clear, Your Honor.  The very first sentence says

17  the subordinated obligations are subordinate in junior and

18  right of payment to all Senior obligations to the extent

19  provided in this agreement.  So they're not junior for all

20  purposes.  They're not subordinated for all purposes.  Only

21  to the extent provided in this agreement, and what does the

22  agreement provide?  The very next sentence is the sentence

23  that says what they're junior and subordinated as to.  No

24  part of the subordinated obligations shall have any claim to

25  the assets of the company on a party with or prior to the

1  claim of the Senior obligations.  Full stop, Your Honor.

2  That's the scope of subordination.  That's the one sentence

3  in the agreement that says what we're subordinate as to.

4  And it says very specifically we're subordinate as to the

5  assets of the company; nothing more; nothing less.  That's

6  the extent of the subordination and the assets of the

7  company, as *Cybergenics* recognized, does not include the

8  avoidance recoveries.  If you said we're going to sell you

9  the assets of the company, it wouldn't include the avoidance

10  recovery.  If you're saying you're subordinate as to the

11  assets of the company, it doesn't mean you're subordinate as

12  to the avoidance recoveries.  And it goes on from there to

13  say, again, that the agreement is only concerned with

14  payments from the company because if you look at the very

15  next sentence, it says until the Seniors are paid in full,

16  and the agreement -- the debt of the Seniors has been

17  terminated, "the subordinated creditor will not take,

18  demand, or receive from the company."  It doesn't say from a

19  fraudulent transferee, doesn't say from a co-creditor.  We

20  can't take, demand, or receive from the company, and the

21  company cannot make, give, or permit payment for the whole

22  or any part of the subordinated obligation.  So, once again,

23  there's a real point in this agreement to limit it to

24  payments from the company and payments made by the company.

25  That's the entire scope of subordination.  That is

1  exclusive, again, of co-creditor payments or payments by

2  fraudulent transferees.

3        Now, a couple of arguments have been made about

4  section two, which "portions" of section two, the Retirees

5  point to the first sentence that says well, you said you're

6  going to be junior in right of payment, but the first

7  sentence says we'll be junior in right of payment only to

8  the extent provided by this agreement, and then it says

9  we'll be junior only as to the assets of the company.

10  There's been a suggestion that you should apply the rule of

11  last antecedent and disaggregate the phrase take, demand, or

12  receive from the company and apply the term from the company

13  only to receive, and I want to flag that argument, Your

14  Honor because I think if Your Honor accepts that

15  interpretation, we win under section six.  Because if the

16  only receiving that's prohibited here is receiving from the

17  company, we'll see on section six that the only money we

18  have to turn over is money that we've received from the

19  company or received in violation of the agreement.  And the

20  only place the agreement prohibits any receiving by EGI-TRB

21  is right here where it says we can't receive payment from

22  the company until the Seniors are paid in full.  That's the

23  only prohibited receiving.  And when we get to the pay over

24  provisions, the pay over is limited to violations of the

25  agreement or monies received from the company.  And again,

1   nothing's prohibited by way of receiving other than receipt

2   of money from the company.  And again, the entire sentence

3   here is limited to for the whole or any part of the

4   subordinated obligations, which again are the obligations of

5   Tribune as previously defined.

6             So now we get to paragraph four, which is the

7   paragraph that others like to focus on, but paragraph four

8   is simply a limitation on enforcement.  It doesn't provide

9   the scope of subordination and it has no provisions for pay

10  over of money.  The subordination issue is what do we have

11  to pay over to others?  That's deal with in paragraph six.

12  So paragraph four says that there's a couple of things that

13  we can't do until the Seniors are paid in full.  And both of

14  these relate to actions pertaining to the obligations of the

15  company, not obligations of third parties.  If you look at

16  the first sentence here, it says we can't exercise rights,

17  remedies, or powers under the terms of the subordinated

18  Note.  Well, we are not invoking any terms of the

19  subordinated Note by invoking fraudulent transfer laws.

20  Those -- that's a different set of obligations.  Nor are we

21  trying to collect on the subordinated obligations, which are

22  obligations of the company, by receiving fraudulent transfer

23  proceeds from a co-creditor or from the estate which is held

24  for the benefit of creditors.  The subordinated obligations,

25  again, are obligations of Tribune.  The obligation of a

1  fraudulent transferee to repay money is a distinct

2  obligation.  And just in common parlance, Your Honor, and

3  that's how, in part, this agreement should be interpreted in

4  the ordinary sense, if you went up to somebody and said you

5  can't collect on that Note, what that suggests is you can't

6  go to the person who owes you the money on the Note and say

7  pay me on the Note.  It doesn't suggest to the ordinary

8  sense that if you have a fraudulent transfer claim against

9  somebody, you can't assert that claim.  And again, the law

10 requires clear and unambiguous language subordinating

11 avoidance recoveries.  We have a scope of Subordination

12 Agreement that doesn't include them.  We have a scope of

13 subordinated obligations that doesn't include them.  And to

14 say that where that clear and unambiguous intent is found is

15 in language saying that you can't enforce a Note of

16 Tribune's, an obligation of Tribune, that that somehow

17 eviscerates paragraph two, eviscerates the limits of

18 subordinated obligation and re-writes those paragraphs to

19 also prohibit you and require you to pay over avoidance

20 recoveries, is beyond a stretch of that language.  The

21 prohibitions in four are prohibitions on collecting against

22 the obligations of Tribune, collecting on the Note itself,

23 which is an obligation of Tribune, or invoking the terms of

24 the Note itself, which we have not done in any actions we've

25 taken.  We have filed a Proof of Claim, which is permitted.

1  We are going to receive monies from the PHONES.  There's

2  nothing in this agreement that prohibits us from doing that.

3  We would receive money from the estate.  There's nothing in

4  here that prohibits us from doing that because that's not

5  the pursuit of assets of Tribune.  And if there's any doubt

6  about this, Your Honor, when we get to paragraph six, which

7  is the provision that discusses what has to be paid over,

8  there's a very limited requirement as to what has to be paid

9  over.  And here again, it's two things; all payments and

10 distributions upon or with respect to any subordination

11 which are made by or on behalf of the company.  So somebody

12 wanted to tell you that this said any payments had to be

13 paid over, but they stopped reading when it said which are

14 made by or on behalf of the company.  It doesn't, anywhere

15 in our agreement, say what the PHONES said, which is any

16 payment has to be paid over.  This says any payment which is

17 made by or on behalf of the company.  And, of course, the

18 estate is not the company and a co-creditor is not the

19 company.  So this pay over is consistent with two, which

20 simply says you can't take money from the company until the

21 Seniors are paid in full.  It doesn't say anything about

22 taking or receiving money from co-creditors or from the

23 estate.  It also says or monies that are received in

24 violation or contrary to the provisions of this agreement.

25 Meaning, for example, once the Seniors are paid in full, we

1  can obviously take money of any kind.  But if they're not

2  paid in full, the one place that we're prohibited from

3  receiving monies in this agreement; and that's what this

4  next phrase refers to.  So it says or received in violation

5  or contrary to the provisions of this agreement.  So let's

6  go back through the agreement and say where are we

7  prohibited from receiving money?  The only place that the

8  prohibition on receiving money appears is in paragraph two,

9  what I was showing before.  And there it says you can't

10 receive money from the company.  Again, we're not receiving

11 anything from the company.  So I don't believe we have

12 violated this agreement as I stand before you today, Your

13 Honor.  We filed a Proof of Claim, which is permitted by the

14 agreement.  We stand to receive money from a co-creditor

15 who's subordinated to us, the PHONES.  We stand to receive

16 distributions from the estate itself.  None of that is

17 receiving money from the company.  None of that is a

18 violation of anything in this agreement.  And, therefore,

19 none of that money should have to be paid over.  And all of

20 this intent is then reaffirmed by the acknowledgment, the

21 ultimate obligation of Tribune, which is the one obligation

22 that Tribune assumes under this agreement.  If we look at

23 what Tribune agrees to, on the very last page of the

24 agreement, it says the company -- and by the way, there's no

25 successor or assign of the company in this agreement.  The

1  PHONES agreement speaks to successors and assigns, but

2  interestingly, this agreement does not provide that

3  Tribune's successors or assigns are a party to the

4  agreement.  There's a provision that says EGI-TRB's

5  successors and assigns are a party.  There's a provision

6  that says the Senior Lenders successors and assigns are a

7  party, but Tribune does not.  Its successors and assigns are

8  not a party to this agreement.  So Tribune, the company,

9  hereby acknowledges receipt and agrees to the terms, and

10  agrees too with the holders of the Senior obligations that

11  1) it will make no payment on the subordinated obligations.

12  That's Tribune can't make any payment; that the

13  subordinating creditor would not be entitled to receive

14  under the provisions of this agreement.  Well, what are we

15  prohibited from receiving under the terms of this agreement?

16  We're prohibited from receiving payments from Tribune.

17  That's the sole restriction on our ability to receive, and

18  that's consistent with the definition of subordinated

19  obligations.  We can't get paid on the Note.  That's an

20  obligation of Tribune.  We can't get paid on other

21  obligations of Tribune because that money would come from

22  Tribune.  We can't get paid from or by Tribune until the

23  Seniors are paid in full.  That's the consistent focus and

24  intent of this agreement.  It's very easy to say if there's

25  a bankruptcy, anything that comes in the door goes to the

1  Seniors.   That was done in the PHONES Indenture when they

2  said in the event of a bankruptcy, any payment shall be

3  subordinated.   We don't have anything that resembles that

4  language.   The parties negotiating this agreement had the

5  benefit of the PHONES Indenture when they were negotiating.

6  They did not put anything resembling that language in the

7  agreement nor did they put anything that addressed

8  specifically a pay over from one creditor to another

9  creditor as was done in the PHONES agreement.   If that was

10 the intent, it would have been very simple to include that

11 any payment in the event of a bankruptcy language.   Instead,

12 great pain was taken to say the scope of subordination is as

13 to the assets of the company.   That's the only way we're

14 subordinated and, again, great pain was taken to say that

15 the scope of what's prohibited is the receipt of money from

16 the company or the collecting on the Note, which is an

17 obligation of Tribune.   And so further read, Your Honor, I

18 believe this really evidences an intention to subordinate us

19 as to the assets of Tribune but reflects that nobody tried

20 to include in this agreement, or spoke to in this agreement,

21 recoveries from co-creditors or recoveries on account of

22 avoidance reaction -- avoidance recoveries.   And absent

23 express language to that effect, this Court should not read

24 into this agreement such a requirement.   And I want to speak

25 to just one final point here, which is there's some

1  suggestion being made here that any time you have a

2  Subordination Agreement, what that means, and everybody

3  understands the word Subordination Agreement means one

4  thing, which is if anything comes in the door, it's got to

5  get paid over until the Seniors are paid in full.  But

6  that's really contrary to the rule of explicitness and it's

7  contrary to how Delaware law interprets Subordination

8  Agreements.  It's not things that you don't spell out in the

9  agreement are also subordinated.  You're subordinated as to

10  what your agreement says you're subordinated to.  And is it

11  reasonable not to include avoidance recoveries?  You bet

12  it's reasonable.  If you go to the examiner's report, when

13  the examiner looked at the PHONES Indenture in the first

14  instance, the examiner predicted that avoidance recoveries

15  would not be subject to subordination.  And the examiner

16  said he would expect that, under state law, the rule of

17  explicitness would be followed by way of analogy here, even

18  though this doesn't deal with the issue of post-petition

19  interest, that if you want something subordinated, the

20  holders of the subordinated Note are entitled to clear

21  notice as to what's being subordinated.  So he predicted

22  that, in fact, the reasonable interpretation even of the

23  PHONES Indenture, which had the any payment, would be

24  there'd be no subordination of avoided debt.  That's clearly

25  a reasonable type of agreement or the examiner wouldn't have

1  come to that conclusion.  Your Honor, before some of the any

2  payment language was more fully brought to your attention,

3  also concluded the PHONES could reasonably be interpreted

4  that way.  That's certainly one reasonable way to approach a

5  Subordination Agreement; subordinate as to the assets of the

6  company but not address the issue of avoidance recoveries.

7  There's nothing that involves chutzpah or craziness or

8  anything with what the examiner found to be a reasonable

9  outcome and what this Court initially found to be a

10  reasonable outcome absent the any payment language.  And we,

11  conspicuously, don't have that any payment language.

12          Finally, Your Honor, I did note that the issue of

13  equitable subordination is not before this Court.  If people

14  believe that there's something that EGI-TRB did or that its

15  place in the history of this agreement justifies equitable

16  subordination, that's expressly reserved for *FitzSimons*.

17  All Your Honor is doing at this juncture is construing the

18  contract.  But I would note that EGI-TRB committed to its

19  investment in April, 2007.  Under all the evidence we've

20  seen, nobody's suggested that storm clouds even were on the

21  horizon until May, and there's no suggestion that any kind

22  of new projections should have been done until even later.

23  So EGI-TRB is among those who lost a good sum of money in

24  this investment.  EGI-TRB stands here as a representative

25  for many parties.  EGI-TRB is not synonymous with Mr. Zell,

1   as some would like to say.  Everybody wants to call it EGI.

2   But it's here in a representative capacity on behalf of a

3   number of investors; some associated with Mr. Zell, some

4   not.  If there are issues of equitable subordination, those

5   should be addressed in the context of *FitzSimons* where, as

6   the examiner suggested they would be; I believe they'll be

7   defeated, but they're not appropriate argument before the

8   Court this morning.  Unless the Court has questions, I have

9   nothing further.

10          THE COURT:  Thank you, Mr. Bradford.

11          MR. BRADFORD:  Thank you, Your Honor.

12          MR. ZENSKY:  Good morning, Your Honor, David

13  Zensky, Akin Gump Strauss Hauer & Feld, for Aurelius Capital

14  Management.  Although I'm not listed, the understanding was

15  the parties would have an opportunity to speak if something

16  came up, and I have to take issue, strong issue, with Mr.

17  Bradford's closing comments that the storm clouds were not

18  on the horizon until May of 2007.  I think we had a 2 ½ week

19  trial about when the storm clouds started and there was a

20  ton of evidence that they pre-dated that.

21          Second, Mr. Bradford made reference at length to

22  the examiner report, and I'm not aware of any stipulation

23  for this proceeding that permits reference to or use of the

24  examiner report for any substantive purpose.  There was such

25  an agreement for the confirmation trial that we had that I

1  do not believe applies and that those -- that reference

2  should not be of any moment to the Court at this juncture.

3  Thank you.

4           THE COURT:  Thank you.

5           MR. SIEGEL:  Your Honor, Martin Siegel from Brown

6  Rudnick, for Wilmington Trust Indenture Trustee for the

7  PHONES.  We also are not listed on this issue.  I just want

8  to reserve our right.  Mr. Bradford made certain comments

9  regarding the priority between the EGI-TRB Notes and the

10 PHONES.  I'm not sure that that was supposed to be part of

11 this subject matter, but we reserve our right to respond to

12 those arguments when we get to that issue.

13          THE COURT:  Very well.

14          MR. BENDERNAGEL:  Your Honor, that wraps up issue

15 number two.  We could either take a break or move on to

16 issue number three.  It's up to you.

17          THE COURT:  Mr. Johnston?

18          MR. JOHNSTON:  Your Honor, I was going to request

19 if we could take a quick restroom break.

20          THE COURT:  We'll take a 10-minute recess.

21          MR. JOHNSTON:  Thank you.

22          (Recess from 11:29 a.m. to 11:39 a.m.)

23          MR. BENDERNAGEL:  Your Honor, Jim Bendernagel on

24 behalf of the debtor.  It brings us to issue number three

25 relating to the SWAP.  There's -- the binder that relates to

1    that is binder number three, Your Honor, and binder number

2    three contains Exhibits 9 to 22.  This material I do not

3    believe is objected to by anybody and I'd offer it in

4    evidence at this juncture.

5            THE COURT:  Does anyone have any objection to the

6    admission of Exhibits 9 through 22?

7                    (No audible response)

8            THE COURT:  I hear no response.  They're admitted

9    without objection.

10            MR. BENDERNAGEL:  Your Honor, I'll turn the

11    podium over to Mr. Johnston.

12            THE COURT:  All right.  Thank you.

13            MR. JOHNSTON:  We do have another set of

14    demonstratives, Your Honor.  May I approach?

15            THE COURT:  You may.

16            MR. JOHNSTON:  Okay.  Thank you.

17            THE COURT:  Thank you.

18            MR. JOHNSTON:  First, thanks for the break, Your

19    Honor.  The issue here is whether or not the SWAP claim is

20    Senior indebtedness or a Senior obligation under the PHONES

21    Indenture and the EGI Subordination Agreement.  I'll spend

22    the majority of my time discussing the SWAP's claimed

23    seniority under the PHONES Indenture and then we'll turn

24    briefly to seniority under the EGI Subordination Agreement.

25            With respect to the PHONES, the question is

1   whether the SWAP claim is "senior indebtedness" as that term

2   is defined in the PHONES Indenture.  And I'll submit, Your

3   Honor, that the answer to the question is yes.  The SWAP

4   claim is Senior indebtedness and it's, therefore, entitled

5   to seniority over the PHONES Notes.  This is a question that

6   can and should be answered with reference to the plain

7   language and common sense meaning of the Indenture.

8   Although, as we'll discuss, should Your Honor find the

9   agreement ambiguous in any way, the available extrinsic

10  evidence, all of which is undisputed and now in evidence,

11  amply confirms the plain meaning and common sense

12  interpretation of the agreement.

13          Before going to the PHONES Indenture though,

14  let's start with the SWAP claim.  The claim is a claim

15  against Tribune Company for roughly $151 million.  The

16  amount of the claim and Tribune's liability for it are

17  undisputed.  The SWAP claim is for payment due upon

18  termination of three interest rate swaps that Tribune

19  executed in order to hedge $2.5 billion of its borrowings

20  under the Credit Agreement and the one that was executed as

21  part of the LBO transactions that are at the center of

22  controversy in these cases.  In those swaps, Tribune

23  effectively converted the variable interest rate on the 2.5

24  billion in borrowings into a fixed interest rate.

25  Essentially, Tribune agreed to pay a fixed interest rate to

1  the SWAP counter-party and, in return, the SWAP counter-

2  party agreed to make payments to Tribune equal to the

3  interest payments due under the variable rates of the Credit

4  Agreement from time to time.  A few points to note here.

5  One, the Credit Agreement specifically required Tribune to

6  do this.  Section 5.01(k) of the Credit Agreement obligated

7  Tribune to hedge at least 35 percent of its debt per

8  borrowed money for at least two years after consummation of

9  the Credit Agreement.  Two, various Tribune subsidiaries

10 guaranteed Tribune's obligations under the SWAP.  Your Honor

11 will recall that various Tribune subsidiaries also

12 guaranteed Tribune's obligations under the Credit Agreement

13 itself.  The guarantee of the SWAPs is by those same

14 subsidiaries and on an equal basis, and it's accomplished by

15 the very same agreement.  And if you'll turn to the first

16 demonstrative that we have, the first slide, we've blown up

17 some language here that ties through the Credit Agreement

18 and the Guarantee Agreement.  You'll see that the Guarantee

19 Agreement uses one term, Guarantee Agreement, to refer to

20 Tribune's liability under both the Credit Agreement and the

21 SWAPS.  And you get there by looking at the Credit Agreement

22 definition of Hedge Agreements, which includes any interest

23 rate SWAP.  Secured Hedging Agreements includes Hedge

24 Agreements with lenders under the Credit Agreement, which

25 the original SWAP counter-party was, and then you get to the

1  guarantee which includes secured hedging obligations as

2  guaranteed obligations.  I'll return to the significance of

3  these two points in a moment.  For now, there's two take-

4  aways.  First, the Credit Agreement required Tribune to

5  hedge a portion of the interest rate exposure under the

6  Credit Agreement.  And two, the SWAPS are part in parcel of

7  the guaranteed obligations that Tribune subsidiaries

8  guaranteed at the time of the Credit Agreement financing.

9  So now we can turn to the PHONES Indenture, which functions

10  as an agreement by holders of the PHONES Notes to

11  subordinate their claims to the Senior indebtedness.  You

12  start with Section 14.01, which provides that the PHONES

13  Notes are "subordinate and subject in right of payment to

14  prior payment in full of all Senior indebtedness."  It's

15  very straightforward.  Then you turn to Section 14.01(2),

16  which defines Senior indebtedness.  Here, the language is a

17  bit dense so we've pulled it out and blew it up on the

18  second slide that you have before you.  Looking at this,

19  what's the take-away?  With four exceptions that don't

20  apply, and they're in subparagraphs (a) through (d), which

21  we've bracketed out, Senior indebtedness is defined to mean:

22  1) principal and interest on any Indebtedness of Tribune;

23  and 2) any other amounts due on or in connection with any

24  indebtedness of Tribune.  Okay.  So what's indebtedness?

25  Turn to the next slide.  Section 14.01(1) gives you the

1  definition of what Indebtedness is.  There's four subparts

2  to the definition but we only need to focus on the first

3  two.  I.  It includes all obligations represented by Notes,

4  bonds, debentures, and -- or similar evidences of

5  indebtedness.  And then II, it includes all indebtedness for

6  borrowed money.  So we can stop there and put the SWAP claim

7  up against that backdrop.  When you apply the plain language

8  of the PHONES Indenture that I just walked through, the SWAP

9  claim qualifies as Senior indebtedness for two reasons.

10  First, because it represents "other amounts due on or in

11  connection with Tribune's Credit Agreement obligations,"

12  which everyone agrees qualifies as Indebtedness of Tribune

13  within the meaning of the Indenture.  Second, and

14  independently, the SWAP claim represents Indebtedness under

15  the PHONES Indenture because it's an obligation represented

16  by Notes, bonds, debentures, or similar evidences of

17  indebtedness, and also because it's in the nature of

18  indebtedness for borrowed money.

19          Let's look at the first point.  Point one first.

20  The SWAP claim being an amount due on or in connection with

21  the Credit Agreement.  I submit, Your Honor, the connection

22  between the SWAP claim and the Credit Agreement is

23  inescapable.  Most importantly, the Credit Agreement

24  specifically spoke to the subject.  It specifically required

25  Tribune to enter into interest rate swaps like the

1   agreements that gave rise to the SWAP claim.  Under the

2   natural plain meaning of the phrase, an obligation that's

3   mandated by the Credit Agreement, is an obligation that

4   rises in connection with the Credit Agreement.  Also, when

5   you think about what it is, the SWAP claim liability

6   basically is a substitute for a portion of Tribune's

7   liability under the Credit Agreement.  Again, under the

8   natural plain meaning of the term, something that's a

9   replacement, a part of the Credit Agreement that is an

10  obligation that is due on, or at least in connection with

11  the Credit Agreement.  And the inter-connectedness of the

12  SWAP claim and the Credit Agreement is also demonstrated by

13  a Guarantee Agreement.  As I mentioned, that single

14  agreement serves to guarantee Tribune's liabilities under

15  both the Credit Agreement and the SWAP documents.  Not only

16  that, the agreements encompassed in -- or the agreements in

17  the guarantee, both sets of liabilities, are encompassed in

18  one agreement through one term guaranteed obligations on an

19  equal basis.  I submit that all of that is an irrefutable

20  connection to the Credit Agreement.

21          So what have our adversaries said on this

22  particular point?  Well, neither Wilmington Trust nor the

23  Senior Indenture Trustees disputes the basic point that an

24  obligation does not have to be Indebtedness to qualify as

25  Senior indebtedness so long as the obligation that's one due

1  on or in connection with Indebtedness.  What they argue is

2  that the SWAP claim isn't connected enough to the Credit

3  Agreement; that it's not enough for the Credit Agreement to

4  ever require Tribune to enter into SWAP agreements and for

5  the SWAP effectively to be a portion -- to effectively

6  substitute for a portion of Credit Agreement debt.

7  Wilmington Trust, in its brief at page five, that the in

8  connection with language requires, "something particularly

9  special, something deal-specific that joins the SWAP claim

10  to the Credit Agreement."  You can look hard for that gloss

11  and not find it in the plain language of the PHONES

12  Indenture.  It's not there.  But even if it was, I don't

13  know how you get more deal-specific than having the

14  obligations of the SWAP claim specifically included in the

15  guarantee of the Credit Agreement itself on equal terms by

16  the same guarantors.  That's a deal-specific connection, not

17  to mention the basic fact that the SWAPS hedged a portion of

18  the Credit Agreement obligations themselves and the Credit

19  Agreement specifically required Tribune to enter into those

20  hedges.  Those are rock-solid connections, more than is

21  required under the Indenture we'd submit.  And they serve to

22  distinguish the SWAP claim from the other obligations that

23  Wilmington Trust and the Trustees throw out to say that the

24  same connection with argument leads to absurd results.  They

25  point to covenants by Tribune to pay taxes and to procure

1   insurance and pay workers' compensation premiums.  Those are

2   all things Tribune would have done in any event, and

3   certainly absent a covenant in the Credit Agreement.  In

4   contrast, Tribune would not -- could not have hedged enter

5   into the SWAP Agreements in respective Credit Agreement debt

6   that didn't exist if there wasn't a Credit Agreement.  Taxes

7   and insurance and workers' compensation don't involve the

8   Credit Agreement liabilities.  There are things over which

9   the Credit Agreement agent has no right of approval, unlike

10  the SWAP Agreements.  I'd submit that they're quantitatively

11  different and actually serve to prove our point that the

12  SWAP claim here is something that's in connection with the

13  Credit Agreement.

14          The Indenture Trustees also argued in their reply

15  that the in connection with language has to be limited to

16  things like bank fees and attorneys' fees arising under the

17  Credit Agreement.  I submit, Your Honor, that that proves

18  too  much because those fees and expenses due under the

19  Credit Agreement already are included within the definition

20  of Indebtedness under the Indenture.  Their obligation is

21  represented by Notes, and so they didn't need to be picked

22  up by the in connection with language.  This in connection

23  with language has to mean something else or it would be

24  totally superfluous.  And the agreement is contradicted by

25  the plain language of the PHONES Indenture, which includes

1  as Senior indebtedness, not just the amounts due on

2  indebtedness, but the amounts due in connection with

3  indebtedness.  The language uses an "or".  It's disjunctive.

4  The Indenture Trustee's interpretation, which only includes

5  amounts due on the Credit Agreement, would read in

6  connection with right and under the language.  So the bottom

7  line, Your Honor, is that we submit that the SWAP claim is

8  intimately connected to the Credit Agreement, and because it

9  is, it independently qualifies as Senior indebtedness under

10 the PHONES Indenture.

11        Secondly, setting all that aside, there's an

12 independent reason why the SWAP claim qualifies for

13 seniority, and that's because the SWAP claim itself is

14 Indebtedness, as defined in the Indenture, for two

15 independent reasons.  It's an obligation represented by

16 Notes, bonds, debentures, or similar evidences of

17 indebtedness, and being a hedge for a part of the Credit

18 Agreement liability it's in the nature of indebtedness for

19 borrowed money.  Either is sufficient to qualify under the

20 term indebtedness.

21        On the first point, most fundamentally, consider

22 that the SWAP claim arises under documents that provide for

23 the payments of interest and create explicit rights of set-

24 offs, things that you would find in any Note, bond,

25 debenture, or similar evidence of indebtedness.

1          Responding to one point that was made in the

2   briefing by the Indenture Trustees, yes, the SWAP claim has

3   no fixed principal amount.  But that's not a disqualifying

4   event or fact.  There's no requirement that a Note or a bond

5   have a fixed principal amount.  You don't have to look any

6   further than the PHONES Notes themselves, which had variable

7   amounts due at maturity.  They could go up or down.  Also,

8   consider how Tribune accounted for its obligations under the

9   SWAP.  It didn't treat them as a trade payable or as

10  insurance or anything like that.  But the evidence shows

11  that Tribune's financials described the SWAP claim liability

12  as long-term debt, and in one case as short-term debt.

13  Consider also that all of Tribune's relevant Credit

14  Agreements, including ones that existed before the time of

15  the SWAP transactions, include liabilities like the SWAP

16  claim liability as within the defined terms, debt for

17  borrowed money.  That's what people recognized it to be.

18  And stepping back, I'd submit, Your Honor, that it just

19  doesn't make sense to conclude that, on one hand, Credit

20  Agreement indebtedness qualifies as Senior indebtedness

21  under the PHONES Indenture.  While on the other hand,

22  liabilities arising from a hedge of that very indebtedness,

23  something that effectively substituted a portion of

24  Tribune's obligations under the Credit Agreement, isn't

25  Senior indebtedness under the PHONES Indenture.  There's a

1    disconnect there.

2               Finally on this point, let me address the

3    argument made by both of the adversaries that we should be

4    estopped from claiming that the SWAP claim is Senior

5    indebtedness because we previously argued that the SWAP

6    claim need not be classified with the Credit Agreement

7    claims for purposes of the Plan.  What we said before, what

8    I said before when I was standing up here previously, was

9    that separate classification at the Tribune level of the

10   SWAP claim was not -- or was appropriate because the SWAP

11   claim isn't for money loaned, and because there was no

12   colorable argument, that the SWAP claim could be subject to

13   fraudulent conveyance avoidance like the claims that were

14   made in respect to the Credit Agreement itself.  Those were

15   two statements.  They're still two statements, and they're

16   not inconsistent with my argument today that 1) the SWAP

17   claim arises in connection with the Credit Agreement; that's

18   perfectly consistent; or 2) that the SWAP claim is

19   represented by a Note, a bond, a debenture, or similar

20   evidence of indebtedness; that's consistent; or 3) that the

21   SWAP claim is a substitute for a part of Tribune's

22   indebtedness for borrowed money under the Credit Agreement.

23   That's consistent.  That's perfectly aligned with the point

24   previously made.  And remember that we classified the SWAP

25   claim guarantee, a guarantee of the SWAP claim, together

1   with the guarantee of the Credit Agreement claims at the

2   subsidiary levels.  No one objected to that classification,

3   and I'd submit that that proves the connectedness or it

4   shows, again, the connectedness of the guarantee with the

5   Credit Agreement.  I'll also note that, in all this talk

6   about estoppel, Wilmington Trust and the Indenture Trustees

7   don't mention what we think is actually a much more relevant

8   and compelling conflicting position taken at the time of the

9   Plan confirmation.  And there, we pointed this out in our

10  brief, is the concession made by the Noteholder Plan

11  Proponents in the course of the confirmation proceedings

12  that the SWAP claim was Senior to the PHONES Indenture when

13  they ran their recovery scenarios in their objection to

14  confirmation of the DCL Plan.

15          THE COURT:  Well, they said they did so under a

16  completely different set of considerations and

17  circumstances.

18          MR. JOHNSTON:  Well, sure.  It was in the context

19  of objecting to confirmation of the DCL Plan.  But we just

20  find it notable -- I'm not suggesting that that is estoppel

21  or that it's binding in this context.  I do suggest that

22  it's notable that what are clearly highly sophisticated

23  parties who are making every colorable argument in

24  opposition to the DCL Plan simply assumed that the SWAP

25  claim, in fact, was Senior for those purposes, and I think

1 that's telling.

2          THE COURT:  Well, there is some risk to using

3 every arrow in the quiver is there not?

4          MR. JOHNSTON:  And, Your Honor, I'd submit that

5 they had it right the first time, and ask you to conclude

6 that under the plain language of the PHONES, or to the

7 extent you consider the extrinsic evidence, there's -- it

8 compels you to the conclusion that the SWAP claim is Senior

9 under the PHONES Indenture.

10          Unless you have any questions about the PHONES,

11 I'll touch briefly on the EGI Subordination Agreement.

12          THE COURT:  I do not.

13          MR. JOHNSTON:  Okay.  To start, let's note here

14 again another concession.  EGI concedes that under the terms

15 of the documents, the SWAP claim is senior.  Or at least it

16 certainly doesn't argue that the SWAP claim is not senior.

17 And when we got the position statements, we thought that

18 that would be the end of the story because really, it would

19 be hard to argue otherwise.  As talked about earlier, the

20 EGI Subordination Agreement specifically includes within the

21 defined term senior obligations "all obligations,

22 indebtedness, and other liabilities of the company other

23 than obligations that rank pari passu or junior to the EGI

24 subordinated note."  That's not the SWAP claim.  "Or trade

25 payables and accrued expenses incurred in the ordinary

1  course of business."  The SWAP claim is obviously not a

2  trade payable.  But even though EGI never argued this, we

3  saw in the briefing that the indenture trustees have argued

4  that the SWAP claim isn't a senior obligation because it's

5  an accrued expense incurred in the ordinary course of

6  business.  There is no citation, no authority to support

7  that proposition, just the assertion.  And we think that

8  assertion is wrong for two reasons.

9       First, the SWAP claim is not an accrued expense.

10 Here again, you need look no further than Tribune's

11 financial statements which properly reflect the SWAP

12 liability as short- and long-term debt.  Not any other kind

13 of an accrued expense.  And it could be no other way, given

14 what the SWAP claim is.  It's a hedging of an obligation

15 under the Credit Agreement.  Credit Agreement debt is debt,

16 not an accrued expense.

17      Second, the SWAP Agreements weren't executed in

18 the ordinary course of business.  They were executed under a

19 mandate in the Credit Agreement as part of the financing for

20 the LBO transactions.  They involved two and a half billion

21 of debt.  Nothing about them is ordinary course in any way.

22 And frankly, I don't know what else to say on the point.

23 There's simply no evidence that the SWAP claim is an accrued

24 expense or was in the ordinary course of business.  We think

25 that the claim clearly qualifies as a senior obligation

1  under the EGI Subordination Agreement.

2              THE COURT:  Thank you.

3              MR. JOHNSTON:  That's all I have, thank you.

4              MR. ROSNER:  Your Honor, David Rosner again for

5  Law Debenture, and for today's purposes, for Deutsche Bank

6  as well.

7              One thing that Mr. Johnston didn't mention, but

8  was mentioned in the papers or at least was argued in the

9  papers, and we certainly argued it as to each of the claims

10 that are at issue under this Allocation Dispute No. 3, and

11 that is the burden of proof or the burden of persuasion, but

12 certainly the burden of proof.  And we believe and we've

13 briefed the issue that Oaktree is seeking senior status and

14 is seeking the benefits of both the PHONES indenture.  And

15 in that case, it's an indenture that was made between

16 Tribune and the PHONES indenture trustee, and certainly not

17 with Oaktree or not with Barclays, its predecessor in

18 interest.

19             In EGI's case, they're seeking to take the

20 benefit of an agreement made by EGI in favor of senior

21 creditors who are not signatories and acknowledged by -- not

22 really agreed to by Tribune, but acknowledged by Tribune.

23 To which that makes Oaktree a third party beneficiary to

24 those agreements.  And it's Black Letter Law that a third

25 party beneficiary must prove its entitlement to the benefit

1   of that agreement, particularly when not mentioned.  The

2   *Payless* case that I think a bunch of people referred to

3   makes that point directly.

4          Oaktree has not met that burden, and you know,

5   has not -- I think in its papers says that in the face of a

6   clear indenture, that there's no reason that they need to

7   make that, meet that burden.  I would say the relevant part

8   of that sentence is that they concede that the indenture is

9   clear on its face and we agree with that.

10         There's one other thing that Mr. Johnston said

11  earlier that I think is particularly appropriate as to this

12  issue as to the SWAP claim.  And Mr. Johnston said that

13  sometimes we need to step back and have a reality check.

14  And I think he said that in the context of the EGI

15  Subordination Agreement.  I think the reality check that we

16  would need to apply to this instance is that for a creditor,

17  particularly a plan proponent creditor who has devised a

18  plan to pay itself 100 cents on the dollar on this claim by

19  the nature of its classification the way that it's being

20  treated, for -- to argue and to fit within the definition of

21  indebtedness or senior indebtedness under the PHONEs or

22  senior obligation, it would need to be for money loaned to

23  the company.  It would actually need to be for debt for

24  money funded to the company, an actual loan, and actual

25  debt.  Not something that arose as a claim by virtue of a

1  termination of an agreement, but actually indebtedness,

2  actually senior indebtedness, something loaned to the

3  company.

4         And those are the definitions that are before

5  Your Honor.  I'm actually going to -- if you don't mind,

6  step away from the podium for a second and grab hold of the

7  slides that Mr. Johnston gave you.  So, you know, we would

8  contend, Your Honor, that for debt to be senior

9  indebtedness, it certainly has to start out as being

10 indebtedness.  And that would be for money loaned to the

11 company.

12        Now the SWAP quite clearly here was a required

13 interest hedge that in essence is a bet on interest rate

14 fluctuations.  It involves no loan.  It involves no funding.

15 It involves no indebtedness.  It's simply a general,

16 unsecured, non-senior damage claim that arises by virtue of

17 the termination of a SWAP.  It is not a note.  It is not a

18 bond.  It is not a debenture.  When you refer to the

19 indebtedness, and I think this is on Page 4 of Mr.

20 Johnston's -- the sheets that Mr. Johnston gave you.  It's

21 sort of a demonstrative, for No. 4 of his demonstratives.

22 You see that it's -- that under No. 1, its obligations

23 represented by notes, bonds, debentures, or similar

24 evidences of indebtedness.

25        Now we've cited the Latin phrase ejusdem generis

1  and the *Enron* case to say what that last phrase needs to do,

2  it needs to be like the ones before it.  It doesn't mean

3  that it has to give rise to a claim.  Lots of things give

4  rise to claims in bankruptcy.  That doesn't make them be

5  notes, bonds, or debentures.  A rejection claim under a

6  lease is not a note, bond, or a debenture, but there is a

7  lease and you can look at the lease and say well, it was

8  rejected and, therefore, it's created an indebtedness.  No,

9  it's created a claim and that's what we have here is we have

10  a claim.

11          So this was a bet on interest rate fluctuations

12  with no money, no notional amount.  The notional amount is

13  set forth in what the hedge is, but it doesn't change hands.

14  And it turns out that Tribune lost the bet and Barclays

15  ended up in the money for $151 million SWAP termination

16  claim.  And then Oaktree bought that claim.  It devised the

17  plan that paid 100 cents.  And it won separate

18  classification on the very basis that the SWAP was not for

19  money loaned and it was not part of the credit agreement.

20          Now that to me, Your Honor, and I agree with you.

21  I understand that there are different circumstances in which

22  different claims are made and different arguments are made,

23  but that one went to the classification under its plan.  And

24  under the existing plan, that provided for it to receive 100

25  cents on the dollar, essentially 100 cents on the dollar, I

1  don't think I'm misspeaking on that point.  I think it is

2  100 cents on the dollar.  And they gained that

3  classification making the very opposite argument that

4  they're making today.  The Court agreed with them on that

5  classification.  I would say that that determination is law

6  of the case here as to whether the SWAP claim is

7  sufficiently related to the Credit Agreement or is, in fact,

8  part of the Credit Agreement, or is in fact, money loaned to

9  the company which it's not.  As it being no debt and as it

10 being no indebtedness and certainly no senior indebtedness,

11 it cannot benefit from the subordination.

12            I would note that a bunch of documents were given

13 to Your Honor.  They're documents that people weren't

14 contesting as to whether they were the SWAP claim, whether

15 they were the Credit Agreement, all of the extrinsic

16 evidence.  But you have the PHONES indenture which is clear

17 on its face.  And that -- and you don't need any of that

18 extrinsic evidence.  Mr. Johnston and Oaktree has conceded

19 that it is clear on its face.  I think everybody's conceded

20 that it's clear on its face, the indenture.  And Your Honor

21 found that in its Reconsideration Motion.

22            Use of terms in other agreements, whether you

23 stack the claim into a limitation under a Credit Agreement,

24 we want to add up at any time that you are not in the money

25 on a SWAP termination.  We have valued the collateral you

1   need to post on a SWAP -- on an interest rate hedge and

2   lumping that in, in a Credit Agreement, to determine what

3   limitations there can be as to other provisions of the

4   Credit Agreement, putting a label on it, does not turn it

5   into indebtedness.  It does not turn it into senior

6   indebtedness.  Looking at those documents entered into,

7   completely separate from the PHONES indenture or the EGI

8   Agreement, does not turn it into indebtedness or senior

9   obligations under those agreements.  All it does is it puts

10  it into a category and it counts it up.

11            Now the in connection with agreement, I think is

12  an interesting one.  For one, for the point that I made

13  earlier that, you know, they divorced themselves from that

14  agreement as much as they could for the classification.  But

15  essentially, what they're saying is that anything under the

16  agreement is in connection with that agreement, is in

17  connection with indebtedness.  And for the "in connection

18  with", I think that's in the slide number three, going back

19  a page, where they say other amounts due to in connection

20  with any indebtedness of the company.

21            Now under an interpretation that there's an

22  affirmative obligation under a Credit Agreement to hedge

23  certain amounts of your interest rate exposure would,

24  therefore, make the termination fee, the termination payment

25  that you need to make if you turn out to be out of the money

1  in connected with the Credit Agreement, I think we argue

2  pretty completely in our papers and joined by other parties,

3  that that really would make any of the other affirmative

4  obligations.

5          Whether Tribune would do them or whether they

6  wouldn't, they would still be connected with the agreement

7  if they were -- if Mr. Johnston's argument were accepted.

8  Meaning, the lending parties put all these obligations into

9  the agreement.  This is one of the obligations.  This is one

10  of the affirmative covenants.  And he's saying, well, ours

11  is a really, really, really affirmative covenant because you

12  don't have interest rates if you're paying your taxes.  Well

13  I don't know what Tribune did with paying it's taxes.  But I

14  can tell that if this argument would be accepted, then

15  anybody that has any kind of claim against this company, by

16  virtue of an obligation under the Credit Agreement, can make

17  the same argument that they fall within senior indebtedness

18  and can jump up in priority.  And you don't see any of those

19  people here today.  You don't see the debtor taking that

20  position.  And because that position is untenable in terms

21  of what the agreement is actually intended to mean, the

22  clear agreement is intended to mean.

23          The fact that they are defined in a guarantee, as

24  Mr. Johnston points out, I think that was on the first page

25  of his demonstratives, or second page of the demonstrative.

1  The fact that they're defined again doesn't mean anything

2  more than that it's a claim.  Tribune similarly is obligated

3  on the secured hedging obligations.  It has to pay it if

4  they turned out to be out of the money.  And they did turn

5  out to be out of the money.  So they -- they're liable.

6  Maybe the guarantors are liable.  Or as he claims, the

7  guarantors are liable.  But again, that does not turn it

8  into indebtedness within the meaning of this agreement.

9        He also says that in essence, hedging your

10  interest rate is really a substitute for an obligation.  No,

11  it's not.  You have an obligation under this agreement to

12  pay the principal and interest.  One way that you've hedged

13  your exposure is you've hedged it without paying any of the

14  notional -- you could be in the money.  It would have been

15  great if Trib was in the money -- Tribune was in the money

16  under this obligation.  Then we wouldn't be here talking

17  about Oaktree's purchase of $151 million claim.  What we'd

18  be talking about is an asset of this estate because they

19  ended up being in the money and they were able to terminate

20  it and it was an asset of this company.  So under no

21  circumstances is it a substitute for an obligation.  It just

22  turned out to be a claim.

23        On the point of what obligations there could be

24  under the Credit Agreement, the Credit Agreement requires

25  consummation of all of the first step transactions, all of

1  the second step transactions, but nobody's arguing that all

2  liabilities, everything, I mean, we've all been here as

3  you've said at the outset, a few dozen of your friends have

4  been here quite a bit in front of you for several years

5  talking about this Credit Agreement.  I mean, does that

6  render everybody's fees, you know, in connection with the

7  Credit Agreement and, therefore, we're all, you know, senior

8  debt?  No, it does not.  That is not the answer to that

9  question.

10                    (Laughter)

11           MR. ROSNER:  And in terms of the so called

12  admission against interest that was made by the noteholders

13  that Mr. Johnston pointed out, and I really think he's

14  pointing that out in response to the fact that they did --

15  there's a difference between relying on an argument and

16  having the Court accept that argument and getting your

17  separate classification and getting your 100 cents on the

18  dollar versus somebody in a hearing taking the position that

19  it was actually senior debt.

20           As you said Your Honor, and you're correct, those

21  were under different circumstances, and you know, as you see

22  today, there's shifting circumstances in terms of different

23  issues.  But one thing you saw in this case that you don't

24  often see from attorneys is that there was an admission that

25  that argument was a mistake.  And that admission has been

1  made several times.  So it was, you know, every -- people

2  are human.  People make a mistake in an argument and then

3  they admit it to the Court.  That's the end of that issue as

4  far as I'm concerned.  And, I mean, I hope as far as you're

5  concerned as well.

6                    (Laughter)

7            MR. ROSNER:  Because whether I'm concerned or not

8  is not that relevant --

9            THE COURT:  Well, it always matters to me, Mr.

10 Rosner.

11                    (Laughter)

12           MR. ROSNER:  Thank you, Your Honor.  Under the

13 EGI Agreement, we look at this very simply.  I agree with

14 Mr. Johnston that it's not a long definition and it does --

15 and clearly they're not pari passu or junior to EGI.  But

16 whether they're an accrued expense incurred in the ordinary

17 course of business is where we take issue.  Certainly, it's

18 whether incurred on or prior to the date hereof so if this

19 claim, you know, arose afterwards, so certainly, the fact

20 that it's hereafter incurred fits within the definition.

21           We look at it as saying if you have the liability

22 for a claim, you also have on the flip side of the journal

23 entry, an accrued expense.  We say here, just like Mr.

24 Johnston said that they would always pay their taxes.  They

25 would always maintain insurance.  They would always do all

1   of these affirmative obligations.  That company's like

2   Tribune and Tribune would always enter into hedging

3   obligations to hedge certain risks, particularly interest

4   rate fluctuations.  So we look at this as an accrued expense

5   that they did incur in the ordinary course as being the

6   opposite side of the journal entry on the creation of the

7   short-term and the long-term liability.

8           I think EGI's position on this is irrelevant as

9   to whether they want to concede or not concede what

10  something is or is not senior in terms of the SWAP claim.

11  It matters to the senior debt much more than it matters to

12  EGI as to which debt gets spun up.  Which dollars under the

13  settlement and under the creditors' trust and the litigation

14  trust gets spun up to the senior debt.  Because based upon

15  Your Honor's prior ruling, that's where this recovery is

16  coming from and EGI's not part of that.

17          So that's what I have as to the SWAP claim.  And

18  unless Your Honor has any questions for me.

19          THE COURT:  I do not.

20          MR. ROSNER:  Thank you, Your Honor.

21          MR. STARK:  Thank you, Your Honor.  Robert Stark

22  from Brown Rudnick on behalf of Wilmington Trust.

23          Mr. Rosner covered the watershed very well and so

24  I'm not going to belabor the record or Your Honor's time.

25  There's a couple of points that I wanted to underscore and

1   perhaps supplement his argument with some data points that

2   might be helpful.

3           First and foremost, I think it really is critical

4   that we establish,, and tamp it down firmly, who has the

5   burdens of proof. It's clear under the Bankruptcy Law.  It's

6   clear under applicable State Law.  We're talking about

7   Illinois State Law because the PHONES indenture is governed

8   by Illinois State Law, that any party asserting rights as a

9   third party beneficiary wanting to get the turnover benefits

10  of contractual subordination bears the burden of proof.  The

11  cases we cited, and Law Debenture cited, and Deutsche Bank

12  in their brief, I think established that as firm as firm can

13  be.

14          Mr. Johnston stated in his briefs kind of limply,

15  well, if the contract's clear, then we don't really have to

16  get into burdens of proof.  Your Honor, I would posit it is

17  clear, but it's not clear in the way that you would say.

18  But if we do have to get into it, then burdens of proof are

19  applicable.  And I do think it's important.  He kind of said

20  it very quickly.  Well we now have some evidence on the

21  record.  He didn't really tell you what that evidence was

22  giving that intent, but he mentions it briefly in his brief.

23  The evidence is some 10(q)s and a 10(k).  And what he

24  specifically says in the brief is that for GAAP purposes,

25  the SWAP exposure on that given reporting date is listed as

1   debts, little "d", debt, and that's it.  Obviously, at

2   little D debt for purposes of GAAP, generally accepting

3   accounting principles, has little relevance necessarily to

4   the definition of capitalized "I" Indebtedness under Article

5   14 of the PHONES indenture.  Some debt is not indebtedness.

6   We all can say that.

7           So, whereas, we've briefed the issue.  And I

8   think you'll hear a little later with respect to the, excuse

9   me, the retirees as to whether or not usage of terms that

10  are not specifically relevant to the contract bears it all

11  with respect to the interpretation of that contract, I think

12  it's equally applicable here.  But I think it's particularly

13  important to look at that or the scant amount of evidence

14  that has been put into the record in light of who is making

15  the argument.  And this is after all, Oaktree who's making

16  the argument.

17          And, Your Honor, I'd respectfully draw Your

18  Honor's attention to Exhibit 87, which is the plan that they

19  just filed.  And, in fact, like this plan like most plans

20  before you get into the definitions, has a precursor series

21  of paragraphs of an introduction.  Three lines in, it

22  introduces who are the plan proponents and one of them is

23  Oaktree.  Not as a SWAP claimant, but as a holder, a sort of

24  duly deputized holder of the bank debt.  Well who better now

25  to come forward and give us all the evidence about what was

1    intended when the bank debt was negotiated, than the duly

2    deputized representative of the bank debt to tell us how in

3    connected his SWAP claim is the bank debt.  And what do we

4    have?  We have 10(q)'s and a 10(k).  I think the absence of

5    evidence by the primary party who could deliver that

6    evidence speaks volumes about how tenuous the argument

7    ultimately is.

8            I'm not going to reiterate the whole point about

9    it's not a note, it's not a bond, it's not a debenture.  We

10   all -- and it wasn't anything until the date that the SWAP

11   ended as of the petition date.  I think Mr. Rosner covered

12   that very well.  But I do think one thing that he didn't do

13   and I'd like to do it, if Your Honor will allow me.  Is just

14   to quote a little bit of what Mr. Johnston's presentation

15   was on April 14.  And that's the hearing transcript Pages

16   3754 to 3756.

17           It may not be judicial estoppel, Your Honor,

18   notwithstanding the fact Your Honor ruled quite clearly with

19   respect to the nature of the SWAP claim.  It certainly

20   delivers a factual concession that is relevant for purposes

21   of today's inquiry.  "The liability on the SWAP claim

22   doesn't arise from a loan.  It arises basically from

23   Tribune's hedging of the risk negotiated with the variable

24   interest rate called for in the Credit Agreement."  And, in

25   fact, Your Honor, unlike a loan, where there is principal

1   outstanding, you loan principal and then you have a claim

2   for the principal.  Had interest rates moved in other ways

3   in 2008, Tribune could have had little to no liability under

4   the SWAP Agreement.  It had to do with interest rate

5   hedging.  The nature of the claims is different.

6            Later, he says "the SWAP claim arises under a

7   completely different agreement than the Credit Agreement".

8   It's the Master Agreement and the confirmations.  It is an

9   agreement with different parties than the parties to the

10  Credit Agreement.  And it was executed almost a month after

11  the Credit Agreement.

12           It is somewhat convenient for him to take the

13  position of showing the differences between the agreement

14  when classification as another parent claim economically

15  benefits the SWAP participant and it's now inconvenient for

16  him to draw those -- unless he can draw those connections

17  today.  It may not be judicial estoppel, but it's certainly

18  a factual concession.

19           And I think, if we're trying to figure out what

20  "in connection with" means, let's go back and read the words

21  again in totality.  Senior indebtedness means the principal

22  of and premium, if any, and interest on, and other amounts

23  due on or in connection with any indebtedness of the company

24  incurred.  It is an add-on to principal and interest

25  connected to debt.

1          Well again, I think Mr. Rosner was quite right

2  and I think the brief lays this out that everything and

3  anything in this hundred odd page Credit Agreement related

4  to the business and maintaining collateral and preserving

5  the credit is effectively a claim that's in connected to on

6  some level.

7          So what is "in connected to" and a part of an

8  iteration of principal and interest and other sorts of fees

9  that are associated with the Bank Credit Agreement?  An

10  unpaid Davis Polk invoice, the costs of a lien search at the

11  United States Patent and Trademark Office, UCC-1 filing

12  fees, going to Kinko's and getting copies of financial

13  statements to deliver to a syndicate, paying for the

14  teleconference service that pulls the syndicate together for

15  the agent to deliver a presentation to the syndicate

16  members.  Those are things that seem to be connected to and

17  otherwise arising out of and part of the Credit Agreement,

18  not the SWAP agreement which is another agreement just like

19  insurance is another agreement.  Just like paying taxes is

20  another obligation.  Just like doing anything and everything

21  to keep the business afloat.  That doesn't connect to the

22  Bank Agreement.  It changes the color dramatically.

23          Your Honor, just to close where I began.  If

24  there's an ambiguity here, if there's something that we're

25  unsure of, it beheld Oaktree to supplement the contextual

1  argument with evidence to reflect to us that, in fact, "in

2  connection with" somehow means the SWAP.  That's a burden

3  they utterly fail to carry.  Does Your Honor have any

4  questions for me?

5          THE COURT:  I do not.  Thank you, Mr. Stark.

6          MR. STARK:  Thank you.

7          MR. GOLDEN:  Good morning, Your Honor.  Daniel

8  Golden, Akin, Gump, Strauss, Hauer & Feld, on behalf of

9  Aurelius Capital.

10         Your Honor, I rise not to argue on this

11 particular issue, although Aurelius does concur with the

12 positions advocated by both Law Debenture, and Deutsche

13 Bank, and Wilmington Trust.  I do just want to, in an

14 otherwise somewhat confusing record, just straighten one

15 point out.  It's a point that Mr. Johnston made reference to

16 and that Your Honor commented on.

17         It is true that in connection with a pretrial

18 confirmation pleading, Akin Gump, on behalf of Aurelius and

19 the other indenture trustees, made an assertion that the

20 SWAP claim constituted senior indebtedness under the PHONES

21 indenture.  We corrected that explicitly and quite clearly

22 on the confirmation record.  I think anybody who was in

23 attendance at that hearing understood that we were

24 acknowledging we made a mistake.  We didn't rely on that

25 mistake.  We didn't argue it for one purpose and now change

1  our mind and try and use it for another purpose.  It wasn't

2  an attempt, in Your Honor's words, to use one of the arrows

3  in our quiver in one context and then change in a different

4  context.  We simply made a mistake and we acknowledge that

5  we've made a mistake.  And I just wanted to clear that up.

6             I think it's a little bit unfortunate that Mr.

7  Johnston would try to use that acknowledged mistake as an

8  estoppel argument, but I did want to clear it up that we

9  never intended to convince the Court of one thing and then

10  change our mind with respect to a different issue.  Thank

11  you.

12             THE COURT:  By the way, that comment was meant to

13  apply to both sides.

14             MR. GOLDEN:  Thank you, Your Honor.

15             THE COURT:  Mr. Bradford?

16             MR. BRADFORD:  Thank you, Your Honor.  I'll be

17  very brief in the interest of getting us to lunch.  Again,

18  David Bradford, Jenner & Block, on behalf of EGI-TRB.

19             Your Honor, because we believe that avoidance

20  recoveries and intercreditor payments are not subject to

21  subordination under our agreement, and hope that the Court

22  will agree with us, it should not be necessary to resolve

23  the issue of whether the SWAP is a senior obligation under

24  our agreement for purposes of those recoveries because they

25  would not be paid over in any event.  Having said that, we

1  do agree that third parties, particularly non-parties to

2  these agreements, bear the burden of proof and persuasion

3  and that burden has not been met by the SWAP either with

4  respect to the PHONES indenture or the EGI-TRB indenture.

5  Thank you, Your Honor.

6          THE COURT:  Thank you.

7          MR. BENDERNAGEL:  Your Honor, Jim Bendernagel on

8  behalf of the debtor.

9          Just one comment.  We did not take a position on

10  this issue.  And I want to reiterate that statement that we

11  did not take a position on the issue.  Mr. Rosner seemed to

12  suggest because we weren't hoping up and saying something,

13  that you could draw an inference from that and you can.  We

14  haven't taken a position on the issue, nothing more or

15  nothing less.  The fact that others have not come into the

16  courtroom that aren't here today and taken a position, could

17  mean a lot of different things, like they have good

18  judgment, but that's for your to determine.

19          With that, I think we're done with the SWAP.  The

20  question is do you want to move on to the retiree issue or

21  do you want to take lunch?

22          THE COURT:  I would say let's take a break and

23  reconvene at 1:30.

24          MR. BENDERNAGEL:  Thank you, Your Honor.

25          THE COURT:  Court will stand in recess.

1          (Recess from 12:27 p.m. to 1:32 p.m.)

2          THE CLERK:  All rise.  Be seated, please.

3          MR. BENDERNAGEL:  Good afternoon, Your Honor.

4          THE COURT:  Good afternoon.

5          MR. BENDERNAGEL:  Jim Bendernagel for the

6  debtors.  I think we're now on the retiree issue.  And the

7  binder that's relevant to this is Binder No. 4, which

8  contains Exhibits 23 through 82, Your Honor.

9          Over the break, we've been able to make some

10 progress on the issues that are actually disputed with

11 respect to the exhibits.  And I think we can cut this down

12 significantly.  With the exception of a handful of exhibits,

13 I think there's agreement as to their admissibility.  Let me

14 identify the ones that I do not think are being objected to.

15 And that's the vast majority of them and we can deal with

16 the others.

17         23A -- 23, 23A, and 24 are charts that I do not

18 believe are being objected to.  Exhibit 25 is the support

19 for Exhibit 24.  I think it was only being offered if

20 Exhibit 24 was being objected to.  So I think Exhibit 25 is

21 effectively withdrawn because Exhibit 24 is coming into

22 evidence.

23         Exhibits 26 to 64 are essentially the operative

24 -- well, Exhibit 26 is a stipulation from the deposition. It

25 was missing a page in the various materials that have handed

1   out.  We've agreed to add that page.  And with that

2   addition, there's no objection to 26.

3        27 to 64 are the operative documents relating to

4   all these retiree claims, both Mr. Teitelbaum's clients, as

5   well as, anyone else that's in this retiree category.  And

6   those are not being objected to.  So 26 to 64 can come in.

7        69 to 79 are various SEC filings by the company

8   at various points in time.  They're excerpts.  They're not

9   being objected to.  So 69 to 79 can come in.

10        80 is the Retiree Settlement Agreement.  That's

11   not being objected to.

12        MR. KORPUS:  81.

13        MR. BENDERNAGEL:  81, I'm sorry.

14        MR. KORPUS:  80 is fine.

15        MR. BENDERNAGEL:  80 is fine as well?

16        Okay.  So the only documents that are sort of

17   being objected to, Your Honor, at this juncture is 65 to 68,

18   and Exhibit 81 which is -- 82 which is the trial balances.

19   So I'd offer 23 to 24, 26 to 64, 69 to 81 in evidence, Your

20   Honor.

21        THE COURT:  Any objection to the admission of

22   those documents?

23                  (No audible response.)

24        THE COURT:  They're admitted without objection.

25   (Exhibits 23 through 24, 26 through 64 and 69 through 81

1  were into evidence.)

2          MR. BENDERNAGEL:  That leaves the documents 65 to

3  68, which as I understand it, are various excerpts from

4  either IRS or FASB guidelines or textbooks.  And then

5  Exhibit 82 which is the trial balances that we're putting

6  Mr. Whittman on for.  So I'd ask Mr. Teitelbaum to tell you

7  what he wants to do with respect to 65 and 68 at this

8  juncture.

9          THE COURT:  All right.

10          MR. TEITELBAUM:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          MR. TEITELBAUM:  Jay Teitelbaum, Teitelbaum and

13  Baskin for the TM Retirees.

14          With respect to the Exhibits 65 through 68, Your

15  Honor, actually they were next to our pleading and we

16  identified them as exhibits potentially and depending upon

17  how this matter went.  We actually appended them to our

18  pleadings in compliance with the local rules of the District

19  Court and this Court, that documents that are referred to

20  which were not readily accessible or available on Westlaw or

21  Lexis should be appended.  And we relied upon those as

22  citation authority, Your Honor.

23          In addition, we do believe -- and so frankly, we

24  would cite to them to the extent that they provided

25  information to the Court concerning the definitions of

1   certain accounting terms which are used primarily in the EGI

2   Subordination Agreement.  Those terms are the definitions of

3   "accrued expenses" and "trade accounts payable".

4            And, Your Honor, so we have -- our position is

5   that the Court can certainly take judicial notice under

6   Federal Rule of Evidence 201 of Financial Accounting

7   Standards 87 as referred to in our brief.  Your Honor, the

8   authority for that, and we have case authority for that,

9   Your Honor, is *In RE:  Scottish Wray,* and that's in our

10  reply brief, Southern District New York, *Anchor Savings*

11  *Bank,* which both describe the Financial Accounting Standards

12  Board as an entity designated by the SEC to promulgate

13  rules, regulations which the SEC determines are GAAP.  The

14  SEC is the entity that actually says what is and isn't GAAP.

15  And they leave it a bit to FASB to put that into words and

16  if the SEC agrees with it, then it's GAAP.

17            So, Your Honor, under that case authority, we

18  would submit to you that under Federal Rule of Evidence 201

19  and actually under 807, the residual exception to hearsay,

20  Your Honor, can admit into evidence the citations to the

21  FAS.  And I would also note that Law Debenture in their

22  reply briefs cite to various other sections of the FAS.  So

23  it seems to me that issue may have gone away at this point.

24            With respect to the other issues, I'll leave the

25  textbook for last, Your Honor.  The 67 and 68 are documents

1  which were obtained from the website of the Internal Revenue

2  Service and they set forth Internal Revenue Guidelines.

3  Well, they set forth Internal Revenue statements of position

4  with respect to a very discreet issue within our brief.  And

5  the issue that they address, Your Honor, is whether the type

6  of benefits that the TM Retirees have in this case, deferred

7  compensation benefits, constitute compensation, part of the

8  compensation and wage package.

9       And, Your Honor, we would submit two things.  One

10  is under the applicable authority that we set forth in our

11  reply brief, those documents are the equivalent of a public

12  document which meet the exception under 803.  I'll just get

13  the right section, 803(8), and that, Your Honor, we cite

14  *U.S. v. Childress*, a Fourth Circuit case, for that

15  proposition.

16       Moreover, Your Honor, in our reply brief, I

17  believe that this, the citation to these two authorities

18  becomes a bit redundant in light of a decision by the

19  Northern District of Illinois in of all things, *Neil v. Zell*

20  which was the spinoff ESOP litigation.  Where the District

21  Court specifically held that the type of benefits that we

22  are asserting in this case, constitute compensation wages.

23  They're not something else.  They're not gifts.  They're not

24  something like that.  They're part of the employee

25  compensation and wages.  And in point of fact, Your Honor,

1    in the briefs filed by Law Debenture, they cite a Seventh

2    Circuit case as well.  I -- actually, in my -- I know I

3    didn't get up here quickly, but in my haste to get up here,

4    I left it back at the table, for the very same proposition.

5            So, Your Honor, we would frankly, to the extent

6    that the Court had any trouble or difficulty addressing the

7    issue of admissibility of those two points, we'd direct the

8    Court to our brief for the proposition that the type of

9    deferred compensation benefits that we have here are

10   specifically wages, compensation for services rendered.  And

11   if I could be excused for one second, could I just grab

12   that?  Thank you.

13           THE COURT:  Certainly.

14           MR. TEITELBAUM:  Your Honor, the case that we

15   cite is *Neil v. Zell*.  And in that case, the District Court

16   specifically held the ESOP assets which were put in there as

17   part of a deferred comp program, were part of the overall

18   benefits and compensation package offered to employees who

19   participated in the plan.  The employee benefits are not a

20   mere gratuity, but a form of deferred wages.  And, Your

21   Honor, the Court cited *Valley National* and we cited other

22   cases.  And it comes up in the context of challenges and

23   whether employees have been harmed, if you will, if the ESOP

24   or the benefits vanish.  And the argument and the Courts

25   finding is yes, they are because they are actually dollars

1  which these folks earned and had a right to and they were

2  part of their wages and comp, not just something that was a

3  future promise.

4          So, Your Honor, with respect to the evidentiary

5  issues on these two points, we think they're amply addressed

6  in our brief.

7          Your Honor, with respect to, I guess it's the

8  last issue, which is the textbook that we cite, which is for

9  the fundamentals.  It's actually intermediate accounting.

10 Not beginner, not advanced, we're in the middle here, we're

11 intermediate accounting.  And we put that forth for a

12 proposition, Your Honor.  And, you know, frankly, in light

13 of some of the colloquy, and I won't even call it evidence

14 that was presented this morning, if the Court is comfortable

15 with counsel standing up here and telling you what they

16 think accrued expenses means, I'm okay with that.  And we

17 can cite to this authority.  We also cite to another

18 authority, which is, excuse me, in our reply brief.  And

19 it's the Barron's Dictionary which was cited by the Court in

20 *Emerald Coast*.  The Court turned to that dictionary, Your

21 Honor, when there was an issue about what is accounts

22 receivable?  Is it a contingency?  Is it not a contingency?

23          And we know that you have equal access to the

24 internet and you can search these terms.  So we offer these

25 things to provide the Court with the meaning of accounting

1  terms which are not defined.  We believe this is all

2  relevant.  And I know that Law Debenture is going to jump up

3  and down and they said, you know, you can't refer to these

4  extrinsic things.  These arise in the EGI Agreement.

5          But I'll note, specifically, on Page 1 of the

6  PHONES indenture, there is a specific statement that says

7  "accounting terms not otherwise defined herein shall have

8  the meaning in GAAP."  There is a specific intent by the

9  parties to that agreement to look to outside sources to

10  define otherwise undefined accounting terms.  Accrued

11  expense is an accounting term. It's not just a term we

12  lawyers can just throw around.  Similarly, accounts payable

13  is an accounting term that we lawyers shouldn't throw

14  around.  Which is why, Your Honor, we have as attached to

15  our reply as Exhibit H, the Barron's Dictionary which

16  defines accrued expenses.

17          And we also Exhibit 65, similarly has excerpted

18  and we attached that to our brief so that the Court would

19  have ready access to it because otherwise, you'd probably

20  have to do what I did which is go spend 200 bucks and

21  actually buy the actual hard book.  We attached that so you

22  can see it.  So you can see the entire text of what's quoted

23  as opposed to what Law Debenture and others have done which

24  is just quoted snippets from certain texts and certain

25  books.

1              So, Your Honor, we think that under 807, Rule of

2    Evidence 807, this textbook, as was relied upon by the Court

3    -- it's a different textbook than was relied by the Court,

4    but in *Emerald Coast* as cited in our brief, but a similar

5    textbook has the appropriate indicia of trustworthiness, of

6    reliability, that this Court can accept.  Now that only goes

7    obviously, to the admissibility, the underlying foundation.

8    Whether it's relevant, not relevant, I'm not sure whether

9    the Court wants me to get into it right now, but I'm

10   thinking what we're sort of talking about right now is the

11   foundation for these documents.  And I would submit to Your

12   Honor that the foundation is there for this recognized

13   textbook.

14             And in point of fact, the Law Debenture reply

15   brief cites a book by the exact same publisher for a

16   slightly different proposition, but they recite, they cite

17   to a brief.  Now, they're going to say, well, we're not

18   offering it into evidence.  Well, if the Court wants to

19   refer to it without being in evidence, that's okay.  I'm

20   suggesting to the Court that under Rule 807, that that book

21   is reasonably -- it presents a reasonable representation

22   that the Court can rely upon that is authentic, that is

23   accurate, and that is a statement of what the terms therein

24   mean.  And what we rely upon that on -- for, Your Honor is

25   accrued expenses and accounts payable.

1          And we -- and, Your Honor, so I think that

2   addresses the four items that I needed to address.

3          THE COURT:  Well, I think the -- okay, yes.

4          MR. TEITELBAUM:  Okay.  If Your Honor has any

5   questions for me, I'll try to answer them.

6          THE COURT:  No.  I'd like to hear what objections

7   there are.

8          MR. TEITELBAUM:  Thank you.

9          MR. KORPUS:  Thank you, Your Honor.  Sheron

10  Korpus, Kasowitz, Benson, Torres & Friedman, for Law

11  Debenture.

12          Your Honor, this is really a question of hearing

13  management, if you like, and how is this testimony coming

14  in, and how are the documents coming in?  Now Mr. Teitelbaum

15  went for the kitchen sink approach.  He put in a declaration

16  by himself attaching a whole bunch of documents.  Put in a

17  declaration by Ms. Bell attaching a whole bunch of

18  documents.  He now wants to put in --

19          THE COURT:  Well, hold on, hold one minute.

20          MR. KORPUS:  Yeah.

21          THE COURT:  The declarations have not been

22  admitted into evidence.  Is that correct?

23          MR. KORPUS:  They have not been admitted into

24  evidence.

25          THE COURT:  Okay.  Then there's -- they're not

1  in.

2          MR. KORPUS:  Okay.  Well that resolves one of my

3  objections.

4          THE COURT:  Just filing something doesn't get it

5  in to evidence.

6          MR. KORPUS:  I agree with that, Your Honor.

7          THE COURT:  Okay.

8          MR. KORPUS:  So now he's taken the exhibits and

9  added them to this binder, proposing to submit them into

10  evidence.  And this is all really tied in with our Motion in

11  Limine and the question of accounting treatment and what

12  does the Court really want for the purpose of an evidentiary

13  foundation for the decision that you're going to make today?

14          Now Ms. Bell, as far as we can see, now that

15  we've agreed to all of the operative documents and the plans

16  and every -- or the retirees' letter agreements, it doesn't

17  really add much, but if you want to hear from her, that's

18  fine and we'll cross examine her.  But where we do take

19  heart is that we had our Motion to Exclude the witness, the

20  lay accounting witness designated by Mr. Teitelbaum so it

21  was actually his motion which you denied.  And then we

22  thought the accounting issues were done.  And then they

23  filed the declarations where Ms. Bell testified in her

24  deposition that she's not an accountant is purporting to

25  testify to the accounting treatment of these plans in the

1  books of Times Mirror even, not in the books of Tribune

2  which seems to me to be the operating question on the

3  definition of the indenture, given it said the petition

4  date.  And we don't really see what that's got to do with

5  anything here.

6           But if Your Honor wants to hear the testimony, if

7  you think it's going to be helpful to you, that's fine and

8  we will deal with weight and we will listen to the -- we

9  will let the textbook go in subject to I can cross examine

10 on it, subject to what we believe should be our right to

11 call a rebuttal witness an actually qualified accountant.

12 Because if we're going to have accrued expenses not from the

13 podium, but by a witness who has testified that she's not an

14 accountant and she's going to refer to treated account --

15 intermediate accountant treatises when she's not even a

16 beginner accountant, I think the Court might benefit from a

17 rebuttal witness who actually is an accountant and can

18 testify on what these terms mean.

19          THE COURT:  Well, let me ask you this.  Well,

20 obviously, the relationship between the documents and what

21 apparently the TM Retirees want to put on in the way of live

22 witnesses, or witness are related.  I don't know that if I

23 admit the documents, that means testimony must follow.  But

24 you apparently think so.  Tell me why.

25          MR. KORPUS:  Well, I think because I think it's

1  all tied to the question or relevance.  But if you're asking

2  me about specifically these four exhibits, Your Honor --

3          THE COURT:  Well that's what's being offered.

4          MR. KORPUS:  If you want to talk specifically

5  about these four exhibits, then the two text -- I've lost my

6  page, but the two text treatises, what were the numbers of

7  those?

8          THE COURT:  65 for intermediate accounting.

9          MR. KORPUS:  Well 65 only to one side.  66, 67,

10 68 that's fine, they can come in folder.  65, I have a

11 problem with a treatise just being offered without an expert

12 who can testify on the treatises and present the treatises.

13 That's how usually you do it.  But if Your Honor wants to

14 take it in subject to all objections, I'll deal with it by

15 cross examination.

16          THE COURT:  That would be my inclination.

17          MR. KORPUS:  That's fine, Your Honor.

18          THE COURT:  Okay.  Are there any other

19 objections?

20          MR. SEIGEL:  Martin Siegel from Brown Rudnick,

21 for Wilmington Trust, Your Honor.

22          Obviously, we agree with Law Debenture's

23 position.  But so that it's a relevancy objection to some of

24 the documents even that there's no objection to foundation,

25 and to all of these other documents coming in, whether it's

1   as evidence or even to the intent it's authority.

2            THE COURT:  Well we're talking about all of these

3   other documents.

4            MR. SEIGEL:  The four documents in question.

5            THE COURT:  In the four.

6            MR. SEIGEL:  65 through 69.

7            THE COURT:  Yeah, yeah.

8            MR. SEIGEL:  And what I'd like to do, Your Honor,

9   is cite you to a case that the TM Retirees themselves cite

10  in, I think, their opening brief, when they say there's a

11  dearth of authority interpreting the particular section

12  that's involved here which says deferred purchase price for

13  services -- goods or services not in the ordinary -- I'm

14  sorry, not on trade, normal trade terms.  And there's one

15  case that they cited, the *Payless* case, which we agree has

16  that language.  It's not directly on point because there's

17  some other language and it's found at 215 BR 409 in the

18  Western District of Missouri, 1997.

19           And what's interesting about -- to put it in

20  context, the type of evidence that they want to put in which

21  is citing to accounting records, IRS forms, things that may

22  use some of these words in an entirely different context,

23  none of that should be considered by the Court.  And let me

24  just read you what the Judge in trying -- after he goes

25  through the documents, he then says, "if however, either the

1  language is ambiguous or there are ambiguities in

2  circumstances in surrounding its execution, extrinsic

3  evidence may be offered, but the evidence to be considered

4  is limited to the following:  One, conversations,

5  negotiations, and agreements made prior to or

6  contemporaneous with the contract in question relating to

7  the subject matter of the contract.  Two, the purpose or

8  object of a specific provision of the contract.  And three,

9  industry custom and usage."  That's it.  In fact, in that

10  case, he rejected testimony as to the definition of

11  indebtedness in this indenture by trying to refer to other

12  indentures.

13          And if that's the law and we think it is, there's

14  plenty of other cases that cite that.  And I would refer you

15  to *Diane vs. McDonald's Corporation* which is an Illinois

16  case cited at 125 Illinois App 3rd 972 at Page 968 when the

17  Court -- an Illinois Court, citing other Illinois

18  authorities, rejected even a course of dealing in other

19  contracts by the same party as being not relevant to the

20  intent of the parties to this contract.

21          Taking those together, Your Honor, whether you

22  admit it in evidence or that he's trying to cite it, looking

23  at how these words may be used in an entirely different

24  context, IRS rulings, dictionaries, are not relevant to the

25  issue that's before you, what are the terms -- what does the

1  PHONES indenture, what was the intent to the parties, either

2  from the four corners, or certain limited types of extrinsic

3  evidence.  And so I would submit that all of this evidence

4  that he's trying to put in or even referring to it as

5  authorities to try to get you to use those definitions in

6  this context is just inappropriate and inadmissible.  And

7  that's why we object.

8          THE COURT:  Thank you.  Are there any other

9  objections?

10               (No audible response.)

11          THE COURT:  I hear no further response.

12          MR. ROSNER:  Your Honor, may I just respond to

13  one quick point?

14          THE COURT:  No need to.

15          MR. ROSNER:  Thank you.

16          THE COURT:  66 through 68 are admitted.

17  (Exhibits 66 through 68 are admitted into evidence.)

18          With respect to 65, while it doesn't seem to me

19  that as a matter of admissibility, it needs to be

20  accompanied by expert testimony, it normally would be.  And

21  it would normally give other parties the opportunity to

22  cross examine experts about what was said in the text.

23  Usually, it's the authors, but not always.  But I wonder in

24  the absence of that and frankly doubt that it will be of

25  much help to the Court, so I'll sustain the objection to 65.

1          Let's address 82.

2          MR. BENDERNAGEL:  Before you -- Your Honor, may I

3    ask a question --

4          THE COURT:  Yes.

5          MR. BENDERNAGEL:  -- on this issue?  Because the

6    thing that puzzles me about this is both sides have

7    identified various definitions in their writings, some of

8    which have been offered in evidence, some of which haven't,

9    I guess the question is what is the status of those other

10   definitions to the extent people cited to things in their

11   briefs, but didn't offer them in evidence.

12         THE COURT:  Um-hum.

13         MR. BENDERNAGEL:  It seems to me that the stuff

14   ought to be treated the same one way or the other.

15         THE COURT:  Well and that would be customary, I

16   suppose you could say.  But I don't know, I just look at 65

17   a little bit differently.  I don't know what the others have

18   all cited and whether there are other texts or so called

19   learned treatises cited.

20         MR. BENDERNAGEL:  Well, no, I think sometimes

21   these are just cites to definitions of these things that

22   appear on the internet.  And it seems to me, you have to

23   give that whatever weight that you accord it to.  I wonder

24   if these issues go more to weight than admissibility.

25   That's the only point I'm making.

1         THE COURT:  Well, probably, but I've already

2   admitted 66, 67 and 68, but 65, I just don't think will be

3   helpful to me.  Now let's deal with 82.

4         MR. BENDERNAGEL:  Your Honor, the way to deal

5   with 82 is to put Mr. Whittman on the stand.  And we'd call

6   Mr. Whittman at this juncture.

7         THE COURT:  Okay.

8         BRIAN WHITTMAN, DEBTORS' WITNESS, SWORN

9         MR. BENDERNAGEL:  May I proceed, Your Honor?

10        THE COURT:  You may.

11                    DIRECT EXAMINATION

12  BY MR. BENDERNAGEL:

13  Q    Mr. Whittman, by whom are you currently employed?

14  A    Alvarez & Marsal.

15  Q    And what is your position with Alvarez & Marsal?

16  A    I'm a managing director with the firm.

17  Q    And what is the business of Alvarez & Marsal?

18  A    We are a consulting firm.  The particular area I work

19  in is restructuring advisory working with companies going

20  through bankruptcy or restructuring outside of Court.

21  Q    Now has Alvarez & Marsal been retained in this case by

22  Tribune?

23  A    We have.

24  Q    And what is the nature of the work that they've been

25  retained to do?

1   A    We've assisted the company with everything from

2   preparing for the bankruptcy filing to working on statements

3   and schedules, claims reconciliations.  I testified before

4   this Court at the confirmation hearing last year on a number

5   of subjects including intercompany accounting and allocation

6   of value.

7   Q    I take it from your answer, that you've been involved

8   in the retention, working on the retention. Is that correct?

9   A    Yes.

10  Q    And what has specifically been your role in terms of

11  supervising or running that retention?

12  A    Since sometime in -- I have been involved in the case

13  since the very beginning, and since the middle of 2009, I

14  have been the lead managing director on the engagement.

15  Q    Now, as a result of the work that you have done at

16  Alvarez & Marsal in this matter, you become familiar with

17  the claims that have been asserted in the case?

18  A    I have.

19  Q    And why is it that you've become familiar in that

20  regard?

21  A    We -- people under my direction have been responsible

22  for reconciling all the claims filed against the books and

23  records of the company.  I've also been involved in various

24  of the claims disputes in terms of determining the company's

25  position on those claims.

1  Q     Now, as a result of your work for Alvarez & Marsal in

2  this matter, have you become familiar with the books and

3  records of the company?

4  A     I have.

5  Q     And can you explain how it is that you've become

6  familiar with those, beyond what you just said about the

7  claims?

8  A     Through a combination of the work on the statements

9  and schedules, which involved understanding the assets and

10  liabilities of the company, helping the company to prepare

11  its monthly operating reports for the United States Trustee.

12  I've been involved with some of the footnotes around the

13  audit, in terms of describing the bankruptcy.  And we've

14  also been involved in the accounts payable and other

15  functions, in terms of ensuring a cutoff for the bankruptcy.

16  Q     Now, if you could take a look at -- if you could pull

17  binder four, which I think is behind you, hopefully.  And if

18  you could turn to tab 82, there is a document there that I'd

19  like to ask you about.

20  A     Okay.

21  Q     I take it you recognize this document, is that

22  correct?

23  A     I do.

24  Q     Now, this document consists of two, separate

25  documents, is that correct?

1    A       Correct.

2    Q       And the first page -- the first document starts and

3    ends on the first page, and then the rest of the document

4    starts on the second page and runs to the end, is that

5    correct?

6    A       That's correct.

7    Q       Just focusing on the first page of the document, it's

8    entitled Trial Balance, Deferred Compensation and Benefits,

9    was this -- who prepared this document?

10   A       This is a direct output of the company's accounting

11   system that I had requested be generated.

12   Q       And was the document -- is the information set forth

13   on this document maintained in the ordinary course?

14   A       It is.

15   Q       And it's -- is it the ordinary course of the company

16   to maintain this type of information?

17   A       Yes, it is.

18   Q       And can you explain, first of all, what a trial

19   balance is?

20   A       A trial balance is a listing of the balances at a

21   point in time of the accounts that make up the company's

22   general ledger, its accounting system.

23   Q       And this particular trial balance is called deferred

24   compensation and benefits.  Do you see that?

25   A       Yes.

1   Q    And is that a line item that appears in the company's

2   balance sheet?

3   A    That is a line item that appears on the company's

4   quarterly and annual balance sheets.

5   Q    If you could take a look at Exhibit 79.

6   A    Okay.

7   Q    Do you recognize this document?

8   A    This is the company's 10(k) for the year 2007, or at

9   least an excerpt thereof.

10  Q    And you could turn to page 83.

11  A    Okay.

12  Q    And pages 82 and 83 make up the company's balance

13  sheet, is that correct, consolidated balance sheet?

14  A    That is correct.

15  Q    And if you take a look on page 83, at the top of the

16  page is the liabilities section of the balance sheet, is

17  that right?

18  A    That's correct.

19  Q    Could you locate, for the Court, where the deferred

20  compensation and benefits line item is?

21  A    Yes, about midway through the page, under the title

22  other noncurrent liabilities, the third line down is

23  deferred compensation and benefits.

24  Q    And what is the amount that's listed for year-end 2007

25  as set forth on that document?

1  A       $264,480,000.

2  Q       And can you explain how that relates to what's on page

3  one of Exhibit 82?

4  A       That is the total of all of the individual general

5  ledger accounts that make up the deferred compensation and

6  benefits.

7  Q       And for the record, can you identify which of the two

8  columns, period 9 or -- of 2008 or period 12 of 2007 relates

9  to the 2000 10(k)

10 A       Period 12 of 2007.

11 Q       And with respect to the items that are set forth on

12 page one of Exhibit 282 that make up that $264 million

13 number, have you had an opportunity to determine which ones

14 of those individual accounts might be relevant to the

15 retiree accounts that are at issue today?

16 A       I have.

17 Q       And can you just identify which of those accounts are

18 relevant in that regard?

19 A       Yes.  Going from the top, the third -- starting with

20 the third line down, deferred directors fees total, and then

21 continuing along the deferred comp, McGinnis settlements,

22 deferred comp executive bonuses/salary, the -- let's see --

23 the bonus deferral plan, the deferred director stock award

24 total.  Then, skipping another line and then the deferred

25 supplemental 401(k) total, and then skipping down to the

1    deferred company sponsored pension plan total.  Those would

2    be the relevant line items.

3    Q    All right.  Now, there's another line item here,

4    period 9, 2008.  Did -- what -- I take it that relates to

5    the end of September 2008, is that correct?

6    A    That's correct.

7    Q    If you could take a look at Exhibit 80 for a moment.

8    Do you recognize Exhibit 80?

9    A    I do.  This is an excerpt from the company's form

10   10(q) for the third quarter, ended September 2008.

11   Q    If you'd take a look at page three of that document,

12   it's the -- actually, it's the second page of the document,

13   but it's denominated page three at the bottom of the page.

14   A    Yeah, this is the liability section of the balance

15   sheet.

16   Q    And can you find the deferred compensation and

17   benefits line item here, for the Court?

18   A    Yes.  About two-thirds of the way down the page, under

19   other noncurrent liabilities, the third line in, deferred

20   compensation and benefits.

21   Q    Now, are other -- and the number there is 241,359,000,

22   is that correct?

23   A    That's correct.

24   Q    And how does that relate to what's on page one of

25   Exhibit 82?

1   A     That is the total of the first column, labeled period

2   9, 2008.

3   Q     Okay.  And would it be fair to say that these are the

4   trial balances that make up that account?

5   A     Yes.

6   Q     Is deferred compensation benefits -- deferred

7   compensation and benefits a long -- reported as a long-term

8   or a short-term liability -- or a current liability?  I'm

9   sorry.

10  A     A long-term liability.

11  Q     And that's how it's reported by the balance sheet, is

12  that correct?

13  A     That's correct.

14  Q     Now, if you turn to page two of Exhibit 82, I think

15  earlier you indicated this was a seven-page document.  At

16  the very top, it says Trial Balance Accounts Payable,

17  Accrued Liabilities, and Other Current Liabilities.  Do you

18  see that?

19  A     Yes.

20  Q     Can you explain to the Court what these trial balances

21  relate to?

22  A     This is another excerpt from the trial balance that

23  covers, in the case of the 10(k), for period 12, 2007, three

24  line items on the balance sheet --

25  Q     And what --

1  A     -- and in the case of period 9, 2008, one line item on

2  the balance sheet.

3  Q     Well, if you have Exhibit 80, which is the 10(q),

4  open, can you identify where the -- that line item that

5  relates to these trial balances is?

6  A     Yes, so it is the line item in the current liabilities

7  section, about six down, accounts payable, accrued expenses,

8  and other current liabilities, totaling $605,935,000.

9  Q     And how does that relate to the total that is footed

10 on the last page of the exhibit, with respect to the period

11 9, 2008 column?

12 A     That matches the total.

13 Q     And would you characterize this as a current or a

14 long-term liability?

15 A     This is a current liability.

16 Q     Okay.  Now, turning to the 10(k), can you identify

17 which of the three items on the 10(k) balance sheet, which

18 is on page 83 of the excerpt, relate to the trial balances

19 on Exhibit 82?

20 A     Yes.  It is the -- in the top section current

21 liabilities, it would be the line items labeled accounts

22 payable, employee compensation and benefits, and other.

23 Q     And I take it if you were to total up those three,

24 they'd match what is on the last page with respect to the

25 period 12, 2007, number, is that correct?

1    A      That is correct.

2    Q      Now, which of the accounts in the trial balances that

3    relate to the current liabilities are relevant, in your

4    view, to -- or relate to the retiree accounts that are at

5    issue here?

6    A      There are two in particular.  On page two of seven,

7    there is a section accrued other compensation.

8    Q      Just so it's clear, what's the account number?

9    A      That is 213040.  That section has been broken out into

10   multiple line items.  The line item of particular relevance

11   here is the line item with $103,750.

12   Q      Okay.

13   A      And then, the other account of particular relevance is

14   on page three of seven, account 213300, accrued company

15   sponsored pension plan total for $5,899,000.

16   Q      And what do the other accounts relate to in this trial

17   balance?

18   A      A combination of the components of accounts payable,

19   other accrued compensation, such as accrued salaries,

20   accrued vacation, sick time, et cetera, as well as various

21   accrued state taxes, sales taxes, unemployment taxes, and

22   other types of accrued expenses.

23   Q      One last set of questions.  If you could turn to page

24   -- back to Exhibit 79 and find page 124 -- 123 and 124,

25   which is -- sets forth note 15 pension and other post-

1  retirement benefits.

2  A     I'm there.

3  Q     Can you just explain what this footnote generally

4  relates to?

5  A     This is a note that explains the company's accounting

6  for its -- both its qualified pension plans as well as its

7  nonqualified pension plans and other post-retirement

8  benefits, such as medical and life insurance and essentially

9  how those benefits have been accounted for, how the

10 actuarial determinations have been made around the liability

11 numbers on the balance sheet.

12 Q     Now, if you turn to the chart at the very bottom of

13 page 124, you'll see two line items, employee compensation

14 and benefits and deferred compensation and benefits.  Do you

15 see that?

16 A     I do.

17 Q     Is -- are those numbers that are reflected there set

18 forth on the trial balances?

19 A     They are.  In particular, we had just referred to the

20 employee compensation and benefits line, the $5,899,000 as

21 of December 30, 2007.  And in going through the deferred

22 compensation and benefits section of the trial balance, we'd

23 refer to the 53,366,000.

24            MR. BENDERNAGEL:  Okay.  I don't have anything

25 further, Your Honor.

1          THE COURT:  All right.  Does anyone wish to

2   cross-examine this witness?

3          MR. TEITELBAUM:  Your Honor, I'm not sure if it's

4   cross, but it's potentially further direct, since we were

5   going to call the witness.

6          THE COURT:  Well, I ask that way, because it will

7   determine the form of the questions that you may ask.

8          MR. TEITELBAUM:  I appreciate that.

9          THE COURT:  All right.  Go ahead.  And understood

10  -- well, put it this way.  Based on our colloquy we had at

11  the outset of the hearing, I would expect that anyone that

12  has any questions for this witness would ask them all now,

13  so there'd be no need to bring him back.

14         MR. KORPUS:  You mean only with respect to the

15  retirees issue, though, Your Honor, right?

16         THE COURT:  Well --

17         MR. KORPUS:  Because I think Mr. Bendernagel is

18  planning to call him again in connection with another issue.

19         MR. BENDERNAGEL:  Why don't we get through this,

20  Your Honor?  I had been talking to Mr. Rosner as to whether

21  that's going to be necessary or not, so we'll cross that

22  bridge in the next couple minutes.

23         THE COURT:  All right.

24         MR. TEITELBAUM:  Excuse me one second, Your

25  Honor.  Thank you.  Your Honor, I think this will be brief.

1   After someone like Mr. Bendernagel gets finished with a

2   witness, there's not a lot, which is a good thing for me.

3                         CROSS-EXAMINATION

4   BY MR. TEITELBAUM:

5   Q    I do have a few follow-up questions, Mr. Whittman.

6   Hello.  My name's Jay Teitelbaum.  I represent the retirees.

7   You identified the long-term or noncurrent liability,

8   deferred compensation and benefits.

9   A    Yes.

10  Q    Okay.  Is that reflected on the Tribune books and

11  records as an accrued expense?

12              MR. KORPUS:  Objection, Your Honor.

13              THE COURT:  What's the objection?

14              MR. KORPUS:  Hasn't been established that Mr.

15  Whittman knows what an accrued expense is, is qualified to

16  testify an accrued -- what an accrued expense is.  It means

17  different things to different people.  He's being offered as

18  an expert.  I don't know --

19              THE COURT:  Well, all the question --

20              MR. BENDERNAGEL:  Your Honor, could I --

21              THE COURT:  -- if I --

22              MR. BENDERNAGEL:  -- comment as well?  I don't

23  mean to --

24              THE COURT:  But --

25              MR. BENDERNAGEL:  -- interrupt you, but it's

1  going exactly where you're going.  We did not offer Mr.

2  Whittman as an expert, haven't qualified him as an expert.

3  You know, we've been pretty careful in trying to be neutral

4  in this whole matter, and what I was trying to do is explain

5  what this document showed and what it didn't show.  And as a

6  consequence, he's being tendered as a fact witness, not an

7  expert one.

8           THE COURT:  I -- given the limitation of the

9  question, I'm not sure it calls for an expert response.

10  It's just what did the books and reflect?  If it calls for

11  an interpretation, that's a different issue, but I didn't

12  gather that it necessarily did, so you may answer, sir, if

13  you can.

14           THE WITNESS:  Okay.  Could you repeat the

15  question?

16  BY MR. TEITELBAUM:

17  Q    The question is whether the line item that you

18  referred to on page 83 of Exhibit 79, deferred compensation

19  and benefits, as a noncurrent liability, is recorded as an

20  accrued expense.

21  A    It's recorded as a noncurrent -- other noncurrent

22  liability.

23  Q    And do you know where the accrued expense would

24  appear?

25  A    The company has -- well, I guess on the -- let's see.

1  On the 10(k), nothing is actually titled as accrued expense,

2  although, if you go back -- if we go back to the 10(q) --

3  Q      Um-hum.

4  A      -- or forward, rather, to the 10(q), in Exhibit 80,

5  then there is a line item with the title accrued expense,

6  and that is within the current liability section, titled

7  accounts payable, accrued expenses, and other current

8  liabilities.  As I mentioned on the 10(k), that is broken up

9  into three, separate line items -- accounts payable,

10 employee compensation and benefits, and other, all within

11 the current liabilities section.

12 Q      And so on the 10(q) that you were just referring to,

13 is there, in the noncurrent section, a line item for accrued

14 expenses?

15 A      There is not.

16 Q      Okay.  Directing your attention to Exhibit 82, which

17 is the trial balance, and directing your attention to page

18 one of seven, and I just want to make sure I understood the

19 full scope of your testimony.  Mr. Bendernagel asked you to

20 identify the accounts where you believe there was a

21 relevance to the TM Retirees.  Do you recall that?

22 A      I do.

23 Q      And you identified certain accounts, I believe on page

24 two and three of that exhibit.

25 A      Correct.

1  Q      What -- are those the only accounts that are relevant

2  for the TM Retirees in that trial balance?

3  A      Those are the only two accounts that are relevant for

4  the TM Retirees on the trial balance, yes.

5  Q      So the account on page one, 211600, trade payable,

6  does not include anything for the TM Retirees?

7  A      No, it does not.

8  Q      Okay.  How about on that same page, 211000, accounts

9  payable total, anything there for the TM Retirees?

10 A      Not to my knowledge.

11 Q      Okay.  Mr. Whittman, can I direct your attention,

12 please, to Exhibit 81?

13 A      Okay.  I'm there.

14 Q      Do you recognize this document?

15 A      Yes, it's the retiree claim settlement.

16 Q      Okay.  And did you have any involvement working on

17 this document?

18 A      I did.

19 Q      And what was your involvement?

20 A      I led the process from the company's standpoint, in

21 terms of reviewing the claims that had been filed by your

22 firm for your clients, comparing those to the books and

23 records of the company, and understanding, together with the

24 company's actuaries, the relative merits of the claims

25 versus the company's books and records in helping to

1  determine whether we should enter into the settlement.

2  Q     And so, if I just can direct your attention to the

3  first -- there's a Schedule A.  You see that?  Page one of

4  six?  It's about eight -- I guess seven or eight pages in.

5  A     Okay.

6  Q     Okay.  Do you recognize this particular schedule?

7  A     I do.

8  Q     And what does this schedule reflect?

9  A     This schedule lists -- starts off by listing off each

10 of the retiree claimants represented by your firm, the claim

11 number that they filed their claim on the docket, the debtor

12 in which their claim resides, whether it be Tribune Company

13 or one of the subsidiaries, and then it goes into the

14 components of the claim, both the amounts that was claimed

15 as well as the agreed upon amount for this settlement.

16 Q     Okay.  And so the total agreed upon amount reflects an

17 amount that the debtors and my firm reached as a compromise

18 and settlement on each individual claim that's identified on

19 this chart, right?

20 A     Yeah, that's correct.

21 Q     Now, the chart sort of in the middle, the fourth

22 column, you see it says annuity claims?

23 A     I do.

24 Q     And then, there's a claim -- a column next to that,

25 deferred compensation claims and then there's a column

1   other.  Do you see those three?

2   A     I do.

3   Q     Okay.  Can you just please, for the Court, describe

4   what claims went into, from the TM Retirees, the annuity

5   column?

6   A     The annuity column represents -- generically, it

7   represents claims that are for an either ongoing or future

8   benefit of a fixed dollar amount for a -- typically for the

9   person's life or perhaps their life as well as a spousal

10  survivorship.  So for example, you might have somebody

11  getting $1,000 per month for the rest of their life.

12  Q     And is it your understanding that the TM Retirees,

13  under various agreements with Times Mirror, actually that

14  were assumed by Tribune -- I don't believe there's a dispute

15  as to the assumption -- those type of annuity claims are

16  reflected in this annuity column?

17  A     That's correct.

18  Q     Now, if I can direct your attention to the Exhibit 79,

19  which is the 10(k), just if -- and I hate to do this to you.

20  It's a little difficult with the binder, but keep the

21  exhibit open, 81.  And directing your attention to Exhibit

22  79, at page 124.  And down at the bottom, Mr. Bendernagel

23  referred you to that chart, where you identified deferred

24  compensation and benefits claims, aggregating approximately

25  59 million.  Do you see those two numbers?

1    A    Yes, the employee compensation and benefits and the

2    deferred compensation and benefits, aggregating to about 59

3    million.

4    Q    Does that 59 million translate, not dollar for dollar,

5    because I recognize there's a settlement, but does that

6    translate to the type of claims on the chart that's Exhibit

7    81?

8    A    It does.

9    Q    Where does it -- where does -- again, not the precise

10    dollar amount, because I -- we have to recognize that the

11    dollar amounts on the chart reflects compromises, and this

12    reflects dollar amounts as recorded on the books of the

13    company.  But where do the claims that comprise this 59

14    million appear on the chart?

15    A    They would appear in the set of columns labeled

16    annuity claims, as well as other claims of a similar nature

17    not represented by your firm would also be in that number.

18    Q    Okay.  Now, turning to Exhibit 81, the next column,

19    deferred compensation claims, do you see that?

20    A    Yes, uh-huh.

21    Q    What is -- what are the types of claims that are

22    reflected in that column?

23    A    These would be claims where an individual deferred a

24    portion of a bonus, an annual bonus or some other payment,

25    such that there is a set amount due.  They would defer

1   $10,000, for example.  That amount would be paid at some

2   point in the future, with interest.

3   Q    Okay.  Now, if you can just go to, I guess, the total

4   column for the deferred compensation claims, so that's on

5   page six of six of Schedule A.  Is it correct that the

6   claimed amount is about 22.4 million and the settled amount

7   agreed upon is 21.576 million?

8   A    That's correct.

9   Q    Now, if you'd turn your attention back to Exhibit 79,

10  which is the 10(k), does that -- do the claims that comprise

11  the deferred compensation claims that fit under that column

12  on your chart appear anywhere in the financial statement,

13  which has been marked as Exhibit 79?

14  A    They would be included on the balance sheets into the

15  -- under the section other noncurrent liabilities, under the

16  line item deferred compensation and benefits.  It would be

17  part of the $264 million, as of December 30, 2007.

18  Q    So it would be in the long-term liability section?

19  A    That's correct.

20  Q    And does that translate to anything on the trial

21  balance at Exhibit 82?  I would direct your attention, I

22  guess, to the first page of that trial balance.

23  A    The majority of these items would have been accounted

24  for under two of the line items here: the fourth item down,

25  295032, deferred compensation McGinnis settlement; and then

1  the next line item 25 -- sorry, 295034, deferred comp exec

2  Bonuses/salary total, the first one being 1.5 million and

3  the second one being $27.3 million.  That would be the

4  primary two accounts --

5  Q    Right.  And --

6  A    -- counting those.

7  Q    And translating that over to the 10(k) we're looking

8  at, which was the 2007, it would be the column just to the

9  right of what you read, correct?

10  A    Oh, yes, I'm sorry.  That was -- those were the

11  numbers for period 9, 2008, so for the 10(k), for period 12

12  of 2007, it would be $1.8 million on the first line item and

13  29.8 on the second line item.

14  Q    Mr. Whittman, you're aware that in 2000 -- in the year

15  2000, Tribune acquired, by merger, Times Mirror, are you

16  not?

17  A    Yes.

18  Q    And you're aware that, as part of that acquisition or

19  merger, Tribune assumed the obligations, among others, of

20  the -- of Times Mirror to its retirees?

21  A    Yes, I am.

22  Q    Okay.  Are you aware of how Tribune recorded the

23  assumption of that obligation on its books?

24  A    Tribune, as part of the purchase accounting that

25  occurred at the time -- purchase accounting can be rather

1   complicated, but ultimately, you would have debited Goodwill

2   and credited the appropriate account on the balance sheet

3   where the liability resides, as it does at the end of 2007.

4   Q      Would it have recorded an expense for the assumption

5   of those liabilities?

6   A      No, it would not.

7   Q      Your Honor, if you'll just give me one minute, I'll --

8   I think I'm done.  Oh, I'm sorry.  Just a follow-up, the --

9   Exhibit 81 -- I'm sorry, 81, which is the settlement

10  agreement --

11  A      Um-hum.

12  Q      -- did you work with anyone from my side of the table

13  in coming up with the numbers?

14  A      Yes, I did.

15  Q      Who'd you work with?

16  A      Well, I was in communication with Ms. Bell, in terms

17  of the back-and-forth on confirming various facts around the

18  dollar amounts in --

19  Q      And --

20  A      -- question.

21  Q      And based upon your conversations with Ms. Bell, what

22  was it that she was providing to you?

23  A      Ms. Bell provided us some information in terms of what

24  specific plans certain of the claimants were covered under.

25  She had access to certain information related to some of the

1  calculations related to what they might have been entitled

2  to under some of the access plans, based on calculations

3  that would've occurred back at that time.  And generally,

4  other information in terms of some of the actuarial

5  statistics, provided some corrections on dates of birth, in

6  some cases dates of deaths, marital status, et cetera.

7  Q    So details on the underlying claims?

8  A    Yes.

9  Q    Okay.  I think one last question.  The financial

10  statements that we were referring to, do you have an

11  understanding of whether those documents were actually

12  audited financials?

13  A    The 2007 financial statements represented by the 10(k)

14  were audited by Tribune's outside auditors.

15  Q    And were those prepared in accordance with GAAP, to

16  your understanding?

17  A    To my understanding, they were.

18         MR. TEITELBAUM:  Thank you.  Your Honor, thank

19  you.

20         THE COURT:  Does anyone else wish to examine this

21  witness?

22         MR. KORPUS:  Sheron Korpus with Kasowitz Benson

23  Torres & Friedman, for Law Debenture.  Good afternoon.

24         THE WITNESS:  Good afternoon.

25  BY MR. KORPUS:

1  Q     Just to summarize what you've testified to as to the

2  trial balances Exhibit 82, fair to say that a portion of the

3  liabilities shown under current liabilities and a portion

4  under noncurrent liabilities, is that right?

5  A     That is correct.

6  Q     I'm talking about the liabilities relating to the

7  retiree claims.

8  A     The -- as we pointed out -- as I pointed out in

9  Exhibit 82, the first page related to items that are

10  reflected under long-term liabilities, and the next seven

11  pages really just -- in particular, the two line items

12  within the next seven pages I pointed out go to short-term

13  liabilities.

14  Q     Right.  And you're familiar with the general entry in

15  each case that Tribune had to implement in order to make

16  these -- record these liabilities?

17  A     The -- I have general familiarity.

18  Q     Right.  And generally, the way you would do it is you

19  would debit expense and then credit either long-term

20  liability -- or either current liability or noncurrent

21  liability.  Is that the way you would generally do it?

22  A     In terms of those items that were recorded by Tribune

23  post-2000, that would generally be the way you would do it.

24  In terms of year-end 2000, as I just mentioned with the

25  purchase accounting, that would've been a debit to Goodwill

1  and a credit to the liability account.

2  Q     Right.  Let's put aside the merger.  Let's just talk

3  about recording the benefits as they are accrued by the

4  employee.  You expense, you know, on the income statement as

5  a debit and then you credit on the balance sheet either in

6  current or noncurrent liabilities, right?

7  A     That is how Tribune accounted for the liabilities.  I

8  do not have visibility into what Times Mirror did.

9  Q     But you have no reason to believe that Time Mirror did

10 it any differently, right?

11 A     I do not.

12 Q     And another term for where you expense and then put in

13 the balance sheet is to accrue the expense, right?  That's a

14 common usage of the term?

15 A     That is a usage that some people would make.

16 Q     Right.  And you're familiar with GAAP, right?  You

17 testified that the accounts were procured in accordance with

18 GAAP, right?

19 A     I'm generally familiar with GAAP.  I rely upon the

20 fact that they're audited, and the auditor confirmed they

21 were prepared in accordance with GAAP in that prior

22 statement.

23 Q     Sure.  And you're a CPA yourself, right?

24 A     I am.

25 Q     And you know GAAP stands for generally accepted

1  accounting principles, right?

2  A     Correct.

3  Q     And you're familiar with financial accounting

4  standards?  You know what those are?

5  A     Generally.

6  Q     You'd agree with me that there is nothing in the

7  financial accounting standards that distinguishes between

8  expenses accrued as current liabilities and expenses accrued

9  as noncurrent liabilities in terms of defining what's an

10 accrued expense, right?

11 A     To the best of my knowledge, GAAP does not define the

12 term accrued expense.

13 Q     GAAP does not say accrued expenses should only be

14 expenses that are accrued as noncurrent -- as current

15 liabilities but should not be expenses accrued as noncurrent

16 liabilities?  That does not appear in GAAP, right?

17 A     I'm not aware of anything that appears in that regard.

18 Q     All it says there is that accrued expense is one where

19 an expense is recognized before cash is paid, right?

20 A     That sounds like a typical definition.  I don't know

21 if that is the official definition within a FASB

22 pronouncement.

23           MR. KORPUS:  Thank you.  I have no further

24 questions, Your Honor.

25           THE COURT:  Okay.  Any further examination?

1           MR. BENDERNAGEL:  Your Honor, we don't have any

2    redirect.  We'd offer Exhibit 82 in evidence.

3           THE COURT:  Is there any --

4           MR. KORPUS:  No objection, Your Honor.

5           UNKNOWN:  No objection.

6           MR. BENDERNAGEL:  That completes Mr. Whittman's

7    testimony, Your Honor.

8           THE COURT:  You may step down, sir.  Thank you.

9           THE WITNESS:  Thank you.

10          MR. BENDERNAGEL:  I think the next issue to deal

11   with, Your Honor, before we get to the legal argument on the

12   retirees issue is Ms. Bell's testimony, and I'll cede the

13   platform to Mr. Teitelbaum.

14          THE COURT:  All right.

15          MR. TEITELBAUM:  Good afternoon, Your Honor.  Jay

16   Teitelbaum, Teitelbaum & Baskin, for the retirees.

17          Your Honor, perhaps to streamline this a bit,

18   hopefully -- it's been going smoothly, and I don't want to

19   be the stumbling block, but if need be, we'll put Ms. Bell's

20   -- Bell on the stand to establish, Your Honor, that her

21   testimony will be fact witness.  Her testimony would be she

22   was an employee of Times Mirror for 22 years.  She

23   personally had familiarity with how the books and records

24   that we've been -- that have been admitted into evidence is

25   going to public financial statements, recorded and reflected

1   the TM obligations.

2       And Your Honor may ask, you know, as has been

3 suggested, why is that relevant?  It's relevant for a few

4 reasons, unless the parties can stipulate to these facts.

5       THE COURT:  Well, I was going to say, is there a

6 dispute about the facts --

7       MR. TEITELBAUM:  Well, that --

8       THE COURT:  -- to which she is going to testify?

9       MR. TEITELBAUM:  Not clear.  It's unclear to me,

10 because I -- we tried to get those answers.  The basic

11 agreements in underlying documents -- you've heard this

12 morning that there was no issue as to the authenticity of

13 those, and they're in for whatever they're in.  People are

14 reserving their rights.  The issues that flow from that,

15 though, seem to still be in dispute.  And one of the issues

16 that I've tried to get clarity on this morning was whether

17 there's a dispute that the claims arising from those

18 agreements are, in fact, claims for compensation for

19 services rendered, as opposed to something else.  And as of

20 before the lunch break, we couldn't get that stipulation, so

21 I think I need to put Ms. Bell on for that point, to

22 establish, based upon her personal knowledge and the

23 documents that she worked on, she knew whether or not these

24 claims that are derived from these agreements constitute

25 claims for compensation for services rendered.  And that,

1 Your Honor, becomes particularly relevant in the context of

2 the PHONES indenture, when we're dealing with the deferred

3 purchase -- indebtedness for the deferred purchase price for

4 services, other than services occurred on normal trade

5 terms.

6         THE COURT:  And how is she qualified to offer

7 that testimony?

8         MR. TEITELBAUM:  As to whether or not these are

9 compensation for services?  Your Honor, her -- the way she

10 is qualified is, as a fact witness, she will testify what

11 these agreements -- what they actually say and what, based

12 upon her experience and head, as head of human -- of

13 executive benefits and compensation at Times Mirror, from

14 about '95 through 2000.  She spent her whole career there

15 from '78 to 2000.  She would testify, Your Honor, as to

16 whether or not this was part of the compensation package,

17 which she, worked with the board of directors and others,

18 put together for the executives of Times Mirror.  She will

19 be able to testify yes this was or no this wasn't part of

20 their compensation package, as opposed to being something

21 else.  She's a fact witness as to whether it is or isn't.

22         Similarly, Your Honor, it's been stated that Ms.

23 Bell testified at her deposition: I'm not an accountant; I'm

24 not an expert.  She's not being offered as an expert.  She's

25 not being offered as an accountant.  Her answer to the

1  question, at page 57 of her deposition, was in response to a

2  question about how Tribune accounted for the TM obligations,

3  the Times Mirror obligations.  Mr. Rosner specifically asked

4  Ms. Bell, do you know, looking at the Tribune financials,

5  how they accounted for it?  And to that, she said, I'm not

6  an expert.  She's being offered here today that -- as a fact

7  witness, to testify in her -- part of her duties, her

8  responsibilities, she was required to know and to understand

9  how, in fact, Times Mirror recorded these obligations.

10          Now, why is that relevant?  Well, it's relevant

11  because --

12          THE COURT:  Is there any dispute about how Times

13  Mirror, in fact, recorded these obligations?

14          MR. TEITELBAUM:  Your Honor, I believe that there

15  is.  I believe the dispute is what flows from that.  And

16  what I'm referring to is, Your Honor, on the one hand law

17  debenture mostly, to a lesser extent Wilmington Trust, argue

18  Tribune stands in the shoes of Times Mirror and therefore,

19  if these obligations were incurred as trade debt in normal

20  terms at Times Mirror, then they're trade debt at Tribune.

21  We disagree with that, but to the extent Your Honor may find

22  that's the right legal analysis, Ms. Bell will be able to

23  testify as to where these items showed up on the financials

24  and whether or not they were reflected as trade debt, just

25  based on her factual knowledge, not her expert opinion and

1   not her views of the world.  Though I do recognize that, as

2   a layperson with factual knowledge and 22 years of

3   experience she could give an opinion, certainly, but she's

4   not being offered for that.  She's being offered for a fact

5   witness.

6           Your Honor, those are the areas that we would be

7   offering Ms. Bell, as -- purely as a fact witness, and not

8   to -- and to address a separate point, not to interpret,

9   contradict, vary any of the terms of any of the documents:

10  the indenture or the subordination agreement.  We're not

11  offering it for that.  The question that she's going to

12  answer, as a factual issue, is we've got buckets.  All

13  right.  We've got trade payables.  We've got long-term

14  liabilities.  We've got current liabilities.  And we've got

15  accrued expenses.  As a fact witness, she will testify where

16  these claims fell into what bucket.  We're not trying to

17  vary the terms of it.  The terms will be what they are.

18  There's, obviously, some disagreement as to what an accrued

19  expense means, and the Court has before it, I think, various

20  sources that it can look to as to whether it means a current

21  liability or something that shows up on the balance sheet.

22  We think it -- I'm sorry.  Current liability or something

23  that shows up on the income statement.  We think it's the

24  former and not the latter, and we've cited that authority,

25  and parties would have the Court think otherwise.

1          So, Your Honor, we can do all that without expert

2   testimony, and we can do that, and we have to do that,

3   through Ms. Bell, as a fact witness, because we have not

4   been able to stipulate to certain important facts.

5          THE COURT:  Like what, for example?

6          MR. TEITELBAUM:  Well, the first fact, as I said,

7   is whether the claims arise from compensation for services

8   rendered.  We don't have agreement on that.

9          THE COURT:  But see, that's a conclusion that

10  you're going to ask the witness to draw.

11         MR. TEITELBAUM:  Well, no.  You're --

12         THE COURT:  What the -- it seems to me that she'd

13  be competent, assuming what you tell me is true, to testify

14  about what the books and records said or how things were put

15  on the books and records but  not why and what follows from

16  that.  And that's -- it's really -- what follows from that

17  is what you'd like me to hear.

18         MR. TEITELBAUM:  Well, Your Honor --

19         THE COURT:  So you know, the argument that you're

20  trying to bring the witness in the back door that you

21  couldn't bring in the front door, you know, is gaining a

22  little purchase with me here.

23         MR. TEITELBAUM:  You -- respectfully, Your Honor,

24  Ms. Bell was responsible for designing these programs as to

25  the compensation program for its executives, and she can

1   testify what the components were of those compensation

2   packages.

3            THE COURT:  See, you're -- that is -- you're

4   making the other side's argument.

5            MR. TEITELBAUM:  Well --

6            THE COURT:  All right.  Anything you'd like to

7   add before I hear from others?

8            MR. TEITELBAUM:  That's it, Your Honor.

9            THE COURT:  All right.  Thank you.

10            MR. KORPUS:  Your Honor, Sheron Korpus, Kasowitz

11   Benson Torres & Friedman for Law Debenture.

12            Your Honor, you hit it right on the head.  We are

13   not contesting that these are deferred compensation

14   benefits, but we are not going to agree that they are -- you

15   know, Mr. Teitelbaum want us to agree that they fit the

16   definition in the PHONES.  They're saying deferred

17   compensation benefits for services rendered.  That's the

18   ultimate question.  That's a question for Your Honor, based

19   on the reading of the indenture, and there's no point having

20   a witness out there who is going to parrot that phrase so

21   that you -- to feed it into Your Honor.  That's not the

22   purpose of testimony.  That's not helpful to anybody.  But

23   we have stipulated to all of the documents that show the

24   plans, the ledger agreements, the claim chart that she

25   prepared.  We're okay with all that.  That's all --

1            THE COURT:  Are the -- any of the individual

2   agreements included among the documents?

3            MR. KORPUS:  Yes, they are.  So we see -- we

4   don't see the point of that.

5            So then you're left with the tax treatment, and -

6   - I'm sorry, the accounting treatment by Times Mirror, and

7   there, Your Honor, again, we heard this issue at least with

8   Mr. Bowski [ph], the witness you originally wanted to

9   testify over there, I would have got his deposition, and we

10  would have somebody qualified.  Now, it's going to be a fact

11  witness, who testified -- who will testify that she knows

12  how Times Mirror did it, even though she's not an accountant

13  herself.

14            And I just want to show Your Honor what she said

15  in her deposition, because it is critical.  Mr. Rosner

16  asked, "In its records, how does Tribune account for

17  deferred compensation plan costs?"  There's an objection.

18  Then, she says, "I am not an accountant, so I think I can

19  tell you where I see these costs reflected [indiscernible]

20  they are reflected on the income statement.  The balance

21  sheet has changed over time, because there are different

22  standards that apply to pension accounting, but I'm not

23  qualified to answer that question."  She didn't say I can do

24  it for Times Mirror but not for Tribune.  She said she's not

25  an accountant and she's not qualified to answer the

1  question.  And then, Mr. Rosner asked her, "Well, I wasn't

2  asking you as an expert.  I just asked you if you knew."

3  And she says, "I believe this stuff," which is the technical

4  term apparently, "that's the balance sheet as long-term debt

5  in long-term" --

6          THE COURT:  Well, it's not the first time that

7  term's been used.

8          MR. KORPUS:  Right.

9                 (Laughter)

10         MR. KORPUS:  It's the good stuff.  "I don't know

11 what the term is, but I think this stuff is on the balance

12 sheet."  So we went from her saying I'm not an accountant,

13 I'm not qualified, and I only know about this stuff, to her

14 submitting a declaration, which refers to FASB and

15 accounting treatises and all the rest.  Come on, Your Honor.

16 I don't see how that's helpful to the Court.  If Your Honor

17 thinks it is and you want to hear from her, like I said,

18 I'll cross her, but I would like to call my witness in

19 rebuttal.

20         THE COURT:  Does anyone else wish to be heard on

21 this issue?

22                (No audible response)

23         THE COURT:  All right.  Mr. Teitelbaum, I -- I'm

24 not sure, as an initial matter, that the testimony would be

25 helpful.  But really, beyond that, based on my experience,

1   it's more likely than not that the question is going to leak

2   into areas, which just are not a permitted area of

3   exploration for this proposed witness.  And I think that

4   will just unnecessarily delay and prolong these proceedings

5   without a concomitant benefit to the Court in the decision

6   that has to be rendered here, so I'm not going to permit you

7   to call her as a witness.

8           MR. TEITELBAUM:  Thank you, Your Honor.  Your

9   Honor, if I can ask the question, the exhibits that this

10   Court has accepted into evidence at this point, are we going

11   to address their admissibility and whether the Court can, in

12   fact -- will, in fact, rely upon those?

13           THE COURT:  Well, I didn't -- let me ask this.

14           MR. TEITELBAUM:  They're into evidence.  I know

15   they're in.  There have been no objections --

16           THE COURT:  Well, then they're in.

17           MR. TEITELBAUM:  -- so they're in.

18           THE COURT:  Right.

19           MR. TEITELBAUM:  That's fine.  Thank you, Your

20   Honor.

21           THE COURT:  Okay.  Okay.  So does that conclude

22   the evidentiary portion of the retiree claim issue?

23           MR. BENDERNAGEL:  Yes, it does, Your Honor.

24           THE COURT:  Okay.  So now, we proceed with

25   argument by the principle parties in interest.

1          MR. BENDERNAGEL:  Yeah, and the first party that

2  was going to argue is Mr. Teitelbaum, so he can come back up

3  here.

4          THE COURT:  All right.

5                    (Laughter)

6          MR. TEITELBAUM:  Your Honor, could we take a two-

7  minute break?

8          UNKNOWN:  The [indiscernible] rule.

9          THE COURT:  Well, I --

10                   (Laughter)

11         THE COURT:  Only if I'd have to run.  We'll

12  recess and reconvene at 3:00.  That's nine minutes.  How's

13  that?

14         UNKNOWN:  Thank you.

15         THE COURT:  All right.

16  (Recess at 2:51 p.m. to 3:02 p.m.)

17         THE CLERK:  All rise.  Be seated, please.

18         THE COURT:  All right.  Mr. Teitelbaum, are you

19  ready?

20         MR. TEITELBAUM:  Yes, sir.  Your Honor, Jay

21  Teitelbaum, Teitelbaum & Baskin, for TM Retirees.

22  (Recess from 2:51 to 3:00 p.m.)

23         THE COURT:  Mr. Teitelbaum, are you ready?

24         MR. TEITELBAUM:  Yes, sir.  Your Honor, Jay

25  Teitelbaum, Teitelbaum, Baskin, for the TM Retirees.  Your

1  Honor, before you you have exhibits that were presented into

2  evidence and accepted into evidence.  I'm not going to spend

3  the time, Your Honor, or this Court's time, frankly, going

4  through each one, but there are one or two exhibits I would

5  like to call Your Honor's attention to so that when you're

6  looking at this, you know what you're looking at.

7         The first is, Your Honor, Exhibit 24, and this is

8  in binder four.  I apologize.

9         THE COURT:  I have it.

10        MR. TEITELBAUM:  Okay.  Thank you, Your Honor.

11 This document, which has been admitted into evidence as

12 Exhibit 24, was a document prepared by Ms. Bell, testified

13 to by Ms. Bell at her deposition, and just so Your Honor is

14 aware of what this document represents and where it came

15 from, this document came from the Retiree Settlement

16 Agreement that we were referring to earlier.  I believe

17 that's Exhibit 81.  And what Ms. Bell was asked to do in --

18 actually by Law Debenture and the PHONES, was to try to take

19 the two columns or the three columns that we talked about

20 with Mr. Whittman, the annuity column, the deferred comp

21 column and the other column and break them down into their

22 component parts.  In other words, what agreement, what

23 actual underlying agreement they fall under, and that's what

24 Ms. Bell did.  So the column to your left is the name of all

25 the folks.  The column to the right, there are some

1    footnotes about certain details.  And the next column is the

2    source, and that refers to the actual underlying agreements

3    which have been admitted into evidence before Your Honor.

4    And then your next column is the proof of claim number, and

5    then essentially columns five through nine break out the

6    individual's claims by whether they fall under the deferred

7    compensation plan or the -- that's the plan that fit under

8    the column, deferred compensation, on the settlement chart,

9    or a SOAC [ph] or any of the others, the excess plan, the

10   individual or the supplemental.  Those are all annuity

11   plans, so essentially column five falls under the deferred

12   compensation plan from the settlement agreement and the rest

13   of the columns fall under either the other column to a small

14   extent or to the annuity column.  So this was prepared, Your

15   Honor, so that the parties could see -- break down a bit

16   further and in more detail what was in the settlement

17   agreement.  And then what's behind these -- this chart, Your

18   Honor, just by way of example, and we'd just call your

19   attention it, and similar language was in the other

20   documents.  I'm not going to take the Court's time.  If you

21   would please, if you look at Exhibit 28, tab 28 in the same

22   binder, and it's the second full paragraph.  "It is intended

23   that this supplemental plan be a plan maintained primarily

24   for the purpose of providing deferred compensation for a

25   select group of management or highly compensated employees

1   as set forth", and I won't read the rest.  Your Honor, the

2   point I'm just making is the similar language evidencing the

3   intent of these plans is in each of the documents, and I'd

4   just call that to Your Honor's attention, as we did have

5   some discussion as to, you would be the person ultimately

6   making the decision if these are or not compensation plans

7   or if they're something else.  So we would offer that

8   guidance that, in the first paragraph or so of each of these

9   documents you have that comparable language, and while it's

10  not in evidence, paragraphs 17 through 36 of Ms. Bell's

11  deposition, which I don't believe are controverted, actually

12  describe each of these documents.  They don't draw any

13  conclusions, which are at the back end of her declaration,

14  but if the Court wanted sort of a road map to each of the

15  documents, you could find that at paragraphs 17 through 36

16  of Ms. Bell's declaration.  And I don't believe there's an

17  objection to those paragraphs.

18              UNIDENTIFIED:  No objection.

19              THE COURT:  So you're moving the admission of

20  paragraphs -- say them again.

21              MR. TEITELBAUM:  It's 17 through 36, and

22  paragraph 36 has about 17 subparts because it deals with

23  individual letter agreements, and so each person's letter

24  agreement is broken down into that paragraph.  And that's

25  the road map for these agreements, Your Honor.

1  (Exhibit 28 was identified for the record.)

2          THE COURT:  All right.  Is there any objection to

3  the admission of paragraphs 17 through 36 of the Bell

4  declaration?

5          MR. KORPUS:  No, Your Honor, now that she's not

6  testifying, I think that's fine.

7          THE COURT:  Okay.  It's admitted without

8  objection.

9  (Exhibit 28 was admitted into evidence.)

10          THE COURT:  Now just for the record where might I

11  most easily find that?

12          MR. TEITELBAUM:  Your Honor, that is -- that was

13  part of our opening brief.  It was an appendix to our

14  opening brief.  I will -- I don't have the docket number in

15  front of me, but I'll get that for you.

16          THE COURT:  Okay.  Thank you.  All right.

17          MR. TEITELBAUM:  So Your Honor, and then to lay

18  the other factual groundwork for the legal argument, you --

19  I'm sorry?  Oh, Your Honor, if you'd like a copy, it's been

20  handed -- I don't know if that was the offer, but it's

21  docket 10998.

22          THE COURT:  All right.  That's good enough.

23          MR. TEITELBAUM:  And it was filed on the 24th.

24          THE COURT:  That's good.

25          MR. TEITELBAUM:  Thank you.  Your Honor, you've

1  heard the testimony today of Mr. Whittman.  Mr. Whittman

2  testified to what he believed to be the accounting treatment

3  of these obligations at Times Mirror, which frankly I do

4  agree is the relevant piece of what we should be focusing on

5  today because, frankly, it's the subordination agreement,

6  came to life as a result of the default and the bankruptcy,

7  and we should be looking at in the context of how were these

8  claims at the time of the bankruptcy and the subordination

9  taking effect.

10          Your Honor, you heard Mr. Whittman testify that

11  the majority of this other than $6 million, $5.899 million,

12  was carried as a non-current liability in a deferred

13  compensation and benefits line item on the balance sheet.

14  You did hear him testify that essentially every year the

15  long-term -- a long-term portion -- I'm sorry.  The short-

16  term portion, in other words the portion that's going to be

17  paid within the next accounting cycle, gets moved up into

18  the current liability and then gets expensed out to pay the

19  actual obligation, and that number, based upon the records

20  that have been presented to the Court is just shy of $6

21  million.  We can -- and we're not going to -- perhaps

22  disagree that that full $6 million is attributable to the TM

23  Retirees.  You'll note that this is a consolidated -- that

24  piece is a consolidated.  We think most of it is probably

25  about $5 million, maybe a little north.  So it doesn't pay

1  to spend the time trying to figure out precisely what the

2  number is.  You know, we would concede that that $5.8

3  million number is the current portion that's paid to the TM

4  -- was being paid to the TM Retirees, but the lion's share,

5  the other, you saw, $53 million plus the approximately $20

6  million under the deferred comp is in the non-current

7  liability section of the balance sheet.  You also heard Mr.

8  Whittman testify that when these -- acquired these

9  obligations these were not expenses.  They were picked up as

10  liabilities because, frankly, at that point, these were --

11  all expenses had been expensed by Times Mirror when they

12  incurred them to their employees and they were just a

13  liability on the TM books that were assumed by Tribune.  And

14  that's consistent with purchase accounting and that's

15  consistent with what Mr. Whittman said.

16          So what does that all mean?  Well, when it brings

17  us to the PHONES indenture, and there was some discussion

18  this morning about burdens of proof, who has the burdens of

19  proof.  It's, to state the obvious, we're not a party to the

20  PHONES indenture.  The PHONES indenture was between the

21  parties to that indenture and Tribune in 1999.  2000 is when

22  the merger occurred.  So the question then becomes, what can

23  we offer in the way of evidence to address whether we are a

24  beneficiary of that indenture.  We're not offering things to

25  the intent of the parties.  What we are offering, Your

1    Honor, and we believe this does not run afoul in any manner,

2    shape or form of parole evidence rule, is that even when

3    agreements are claimed to be unambiguous, which frankly, I

4    guess everybody that stood up today, and written papers

5    claims these agreements are clear on the face.  But no one

6    can seem to agree what some of the words mean.  So maybe

7    we're all wrong.

8              THE COURT:  Well, there's at least one Judge who

9    said, and I only repeated it, that when the lawyers say that

10   agreement is not ambiguous, but disagree about what it

11   means, they're simply allowing the Court to make up its own

12   mind about the ambiguity.

13             MR. TEITELBAUM:  And that's pretty much exactly

14   right, and the quest then really becomes, Your Honor, is how

15   do you do that, and what do you look to.  And what we've

16   submitted to Your Honor as part of our briefing of the

17   things we think are reasonable and appropriate, because

18   frankly, if the agreement is "unambiguous", the Court isn't

19   substituting terms.  It's not taking away terms.  It's going

20   to sort of try to apply what is the common meaning.  What's

21   the common sense meaning of these words over which the

22   parties have a disagreement?  And that's, Your Honor, what

23   we've set forth in our brief, and I'm not going to repeat

24   what's in the briefing, but it is clear to the extent that

25   you're going to hear argument to the contrary, that because

1    there is clearly a dispute amongst the parties to what

2    certain very important words, both in the PHONES indenture

3    and the EGI agreement, mean.  The Court has the unfortunate

4    burden and duty to look to certain sources to determine what

5    do these words mean.  So in the context of the phones

6    indenture with respect to the TM Retirees, we've made

7    several arguments.  I want to focus on the argument I

8    believe that the Court will be focusing on.  And I'm -- I

9    guess everyone's going to sort of use Oaktree's

10   demonstrative, which is helpful.  I'm looking at page four

11   where there's a quote for indebtedness and the definition of

12   indebtedness, and where in -- on page four there, and we're

13   on sub two.  And we've argued, Your Honor, in our papers

14   that we would fall under the category of all indebtedness

15   for borrowed money or -- and I'm going to focus on the

16   second part after the or, "for the deferred purchase price

17   of property or services other than in the case of any such

18   deferred purchase price on normal trade terms."

19          Your Honor, our papers lay out, and I believe the

20   evidence that you now have before you, sets forth, as well

21   as what's in our brief, the *Neil v. Zell* case, which I

22   discussed earlier this morning, that these types of deferred

23   benefit plans are compensation for services rendered.  It's

24   also consistent, Your Honor, with FAS 87, paragraph 36,

25   which appears in our brief, which clearly states that these

1  plans are compensation for services rendered.

2       So Your Honor, we take clause two and we look at

3  it and we say we are indebtedness for the deferred purchase

4  price for services rendered.  Indebtedness, in this clause,

5  is a lower case "i".  It's not a defined capital "I"

6  indebtedness.  Indebtedness, the general meaning is a sum of

7  money owed, any amount due and owing.  And that's in Black's

8  Law Dictionary.  It's not a defined capital "I" indebtedness

9  in this clause.  So clearly this was a liability at the

10  time.  It was assumed.  It was an obligation of Times

11  Mirror.  It's a lower case "i", indebtedness.  It's a sum of

12  money that Times Mirror -- Tribune assumed and agreed to

13  pay.  And in fact for seven plus years did pay to retirees,

14  and was paying up until the point of the bankruptcy in 2008.

15  So there was clearly an obligation there.  There's clearly

16  indebtedness recognized by Times Mirror.

17       The next piece of this, and here's where this

18  clause becomes interesting, if you will, "is the purchase

19  price of property or services".  Your Honor, Law Debenture

20  and our firm cited to the same provision in Black's

21  Dictionary for the definition of purchase price.  One would

22  think you pretty much understand what it is, but it's

23  defined as the consideration agreed upon for property or

24  goods.  No reference at all to services.  Both -- we've

25  cited it.  They've cited it.  Same thing.  So the point

1    becomes how does that term relate to the word services?

2    We've taken one of two positions that I think make equal

3    sense.  Purchase price would be viewed more broadly as a

4    payment, a form of compensation, wages, fees, rather than

5    limited to purchase price because if it's purchase price, it

6    can only relate to the word property, as defined in Black's.

7    If it's more broadly defined, it's payment for services, and

8    then other than services incurred on normal trade terms.

9    And that's the thrust of the retiree's argument, that we

10   fall under -- and in lower case "i" -- an obligation to pay

11   for services.  That's the genesis of this claim that was

12   assumed by Tribune.

13          To address this point and to sort of get around

14   it, if you will, there's an argument that, but there's a

15   carve out, except for services or purchase price or payment

16   on normal trade terms.  And that's the exact phrase, "normal

17   trade terms".  And that's important, Your Honor because the

18   people who drafted the PHONES indenture knew how to use

19   other words, and in sub two, paragraph c of the PHONES

20   indenture, 1401(2), they use the words, "any" -- capital "I"

21   -- "Indebtedness of the company including trade, accounts

22   payable arising in the ordinary course of business".  So

23   where we're working here is they use the words "normal trade

24   terms".  So what we're now dealing with is another

25   disagreement as to what some words mean.  The argument is,

1    by Law Debenture and Wilmington Trust, I believe, that

2    normal trade terms and ordinary course of business are the

3    same thing.  And we have in our reply, Your Honor, and in

4    our opening brief, addressed that issue.  We've addressed it

5    a couple of ways.  What is the ordinary meaning of normal

6    trade terms?  Normal -- the ordinary meaning would be terms

7    to a trade vendor, to a trade creditor.  Even Wilmington

8    Trust, in its reply, recognized and admitted at page three

9    of their reply, "employees are not widgets".  Good.

10   "Employee wages are not account trade payable, and employees

11   are not third-party vendors."  Your Honor, in pleadings

12   filed before this very Court in the wage motion, in the

13   critical vendor motion, services are described in both so

14   it's clear.  Trade vendors provide services.  Employees can

15   provide services, but when describing what the terms are

16   under which those obligations are incurred, the words

17   "normal trade terms" only appears in one of those motions,

18   in the critical vendor motion, dealing with vendors, third

19   parties, not in the wages motion.  And if, you know,

20   reliving some of the pleadings in this case, there's enough.

21   We referred the Court to the *Durer* case where the same thing

22   happened, and if that weren't enough, Your Honor, just by

23   way of example, in *Kodak*, in the Southern District of New

24   York, exactly the same thing.  And those things are, for the

25   Court's convenience, affixed to our reply at Exhibits B

1  through H.  So applying the ordinary meaning and recognizing

2  that the drafts people of this document knew how to use

3  "ordinary course of business" and knew how to use "normal

4  trade terms", the obligations for services to employees,

5  former employees are not normal trade terms because they're

6  not to third-party vendors.

7          To address that point, Law Debenture argues,

8  well, we trade that.  You're a trade payable.  We heard from

9  Mr. Whittman, and I asked him the question, are we in trade

10 payables?  He said no.  Employees are not trade.  They may

11 be a lot of things, but it's clear they're not trade

12 payables, and services can apply to both.  What Law

13 Debenture is trying to do is take the word "services" and

14 narrow it down to only -- it can only be one thing.  It can

15 only be trade vendors, and there's nothing in the document,

16 Your Honor, that suggests that that's such a narrow

17 construction of that word, or limitation, is it reasonable

18 or appropriate, or in the ordinary meaning of the word

19 "services".

20          Your Honor, the argument, as well, that we

21 posited for the Court is, there is an argument at least with

22 respect to the approximately $20 million of the account

23 balance plan, and the way that plan worked, and it's laid

24 out in Ms. Bell's declaration, people earned a salary and a

25 bonus, and they said, okay, I'm going to give this amount of

1    my bonus or salary back to the company, and I recognize the

2    company can use this for its working capital and whatever

3    they want to do, based upon an obligation and promise to

4    repay.  This is evidenced by the deferred compensation

5    agreement that's in evidence.  This document, this

6    agreement, reflected an amount that the employee agreed to

7    give back to the company so the company could utilize.

8    There was a repayment term.  There was an interest rate, and

9    in point of fact, in the merger agreement, that interest

10   rate was fixed at nine percent.  As part of our settlement,

11   we actually reduced that amount by half to compromise the

12   claims.  But there was an interest component.  There was a

13   repayment and there was a lending.  There were all the

14   indicia of a borrowing.  And Your Honor, we would submit to

15   the Court that at least the $21 million, under the deferred

16   comp plan, it would also fit under that category, and we

17   recognize it's not the traditional borrower/lender

18   relationship.  But if you look at the document, 1401, in

19   point of fact, the drafts people thought of that.

20   Subcategory one deals with all the traditional types of

21   borrowers, notes, bonds, indentures, and the like.  And then

22   in category two deals with "other" types.  It's not limited.

23   It's not -- it doesn't say "similar to" the type in point

24   one.  It's a general statement, and based upon the Florida

25   cases and the cases referenced this morning, to the extent

1    that the Court can glean from the documents and from the

2    obligations that this was a form of a borrowing, we would

3    submit to the court that at least $21 million is set forth

4    in the -- Ms. Bell's chart under the deferred compensation

5    plan and under the settlement document, they would be a form

6    of a borrowing there.

7           Your Honor, with respect to the -- and I believe

8    frankly, that deals with, and that's what takes a lot of

9    briefing from a lot of parties, and boils it down to the

10   very basic issue of why are we indebtedness for services,

11   the deferred purchase price for services.  The whole

12   hullaballoo about accounting terms actually derives from the

13   EGI document because in that document there is -- it's a bit

14   different than this the way it's crafted.  It says, "senior

15   obligations are all -- lower case "i" -- indebtedness", and

16   other obligations except for certain things.  Now recall,

17   Your Honor, that this document was drafted in 2007 or

18   thereabout.  The merger occurred in 2000.  The people who

19   were drafting it knew what debts were out there.  They knew

20   what obligations were out there.  The way they drafted that

21   document is they carved out two exceptions.  The two

22   exceptions were trade accounts payable and accrued expenses

23   incurred in the ordinary course of business.  Those are the

24   two exceptions.  EGI sort of -- I think it was three lines

25   in their first brief and a couple of lines in their back

1   brief -- said, yep, the retirees, you guys are trade

2   payables or you're accrued expenses, and that was it.  Law

3   Debenture, Wilmington Trust spent a bit more time on the

4   issue and again summarily argue we're trade payables.  I

5   think the -- and accrued expenses, and I'll get to the

6   accrued expenses.  With respect to trade payables, the Court

7   has the evidence before it.  It has the financial statements

8   which reflect these obligations were not recorded or

9   reflected as trade payables.  In the ordinary parlance, in

10  the ordinary understanding of trade payables, they were not.

11  They were long-term liabilities.  And Your Honor, we cite

12  to, in our brief, the textbook, which is not in evidence,

13  but if the Court chose to refer to it, if the Court chose,

14  as a citation for what it's worth.  It's a citation to an

15  authority not much different than the citation to the -- a

16  similar treatise by Law Debenture.  All of these treatises

17  define accounts payable, trades payable, as current

18  liabilities.  So what are we talking about, $6 million.  $6

19  million on an annual basis of the TM Retiree obligations is

20  in the current liability section but we heard testimony

21  that's not even a trade payable, but what does that lead me

22  to?  It could lead us to is it an accrued expense, and we

23  submit to Your Honor that it is not.  And the reason that we

24  submit that, Your Honor, is contrary to the definition, and

25  we take issue with this in our reply brief, attached or

1  referenced in the Law Debenture brief wherein they say, "an

2  accrued expense is any expense incurred but not yet paid."

3  They leave out part of the definition from that quote, which

4  we'd point out, and -- because their quote specifically

5  said, comma, "interest and notes."  The definition of an

6  accrued expense, Your Honor, that we've submitted to the

7  Court from textbook, from the Barron's dictionary on

8  accounting, which we've cited to because other courts have

9  relied upon it and found it to be a viable, valuable source

10 of information is that an accrued expense is nothing more

11 than an adjusting entry on the balance sheet, not on the

12 income statement.  It's on the balance sheet.  It's an

13 expense incurred at the end of a reporting period, but not

14 yet paid, also called accrued liability.  The accrued

15 liability is shown under current liabilities in the balance

16 sheet, which is why I asked Mr. Whittman, and I tried to

17 press on the issue, where do we fall?  Where are we?  Are we

18 in the current?  Are we in the long-term?  We're in, for the

19 most part, other than that $6 million, we are not in the

20 current section, Your Honor, and we can't be an accrued

21 expense.  We were not expensed when the obligations were

22 incurred by Tribune, and to the extent there was an ongoing

23 payout every year, we would submit to Your Honor that was

24 not an accrued expense.  It was just simply an expense.

25 What they did was they took the long-term liability.  They

1  moved the current piece up to the current liability and it

2  was not reflected as accrued expense, but you know, worst

3  case scenario, it's $6 million out of roughly $100 million

4  worth of claims.

5         Your Honor the next piece that we submit to you

6  to discern the meaning of, because it's been confounded by

7  Law Debenture, is normal trade terms, ordinary course of

8  business.  We've submitted that these are very different and

9  distinct terms, and they're different, and we've cited,

10 among other cases, *Drexel* cases and some other cases, which

11 have come to define "ordinary course of business" as the

12 activities that a business undertakes in its day-to-day

13 operations.  This indebtedness, this $100 million was

14 assumed by Tribune in 2000 as part of an $8.3 billion

15 merger, which was then reported on two 8(k)s in March and

16 June of 2000, which the Court has in evidence, as

17 significant, extraordinary events, and then in the 10(k) for

18 the end of the year 2000, as a significant event.  This

19 assumption of this debt in no manner, shape or form was in

20 the ordinary course of business of Tribune.  It may have

21 bought and sold some small segment businesses, but this was

22 the first and last multi-billion dollar merger of this

23 entity, and even under Delaware law, and this is also part

24 of the record before Your Honor, proxy statements were sent

25 out to the shareholders of both Tribune and Times Mirror, as

1    required, to vote on this extraordinary event.  There is

2    absolutely no argument that these indebtedness, this

3    obligation was incurred in the ordinary course of business.

4    The real point, I guess, Your Honor, is normal trade terms

5    can be entered into in the ordinary course of business, but

6    not all transactions in the ordinary course of business are

7    on normal trade terms.  Trade terms is simply a subset with

8    a particular type of creditor, a trade creditor, which we

9    are not.

10           Your Honor, that really boils it down to where we

11   are.  We've taken issue, Your Honor, with the citations and

12   authorities, and the one authority that I just would like to

13   point out to Your Honor because it was included in the reply

14   brief, and you know, we, obviously, under the way the

15   scheduling order worked, didn't have a chance to respond to

16   that.  In the reply brief of Law Debenture, they cite to

17   this Wiley on Finance text, and they cite it for the

18   proposition, an accrual is an accrual.  If it's an accrued

19   liability, there's nothing that means it's long-term.

20   There's nothing that limits it to short-term or long-term.

21   There are two points to make here, Your Honor.  In our brief

22   we cite to FAS 87.  FAS 87 paragraph 36, denotes

23   specifically deal with this issue and say these types of

24   pension or benefit obligations are reflected either as a

25   long-term obligation on the books of the company or to the

1  extent of the current piece, a current liability, but that's

2  really not the problem with the citation that the Court was

3  directed to.  The Court was directed to this book and the

4  quote in the brief is, "accrued liabilities are expenses,

5  such as salaries that have been incurred by a company but

6  not yet paid", and then they say accrued is accrued.  It

7  says it right here.  It doesn't matter where it is.  Without

8  the page, Your Honor, you wouldn't know that this falls

9  under a heading, in black, in bold, in text, "accrued

10 liabilities and other current liabilities".  This very

11 definition upon which they relied in this text deals only

12 with current liabilities.  We can hand up -- we made a

13 couple of copies of that page if the Court wouldn't have

14 access to the book, and we can certainly make that

15 available, but because of the briefing schedule, we didn't

16 have a chance to address it, and we thought it was a bit

17 misleading to have that kind of a citation in the brief

18 without a response, and which is why, Your Honor, under the

19 local rule, we did affix and append to our briefs the full

20 pages.

21        The last point I would like to make, Your Honor,

22 I'm not going to read the entire stipulation.  It actually

23 appears at page 18 of our reply brief.  There is a statement

24 or two statements in the arguments that at the deposition of

25 Ms. Bell, we stipulated, we agreed, "ordinary course of

1  business" same as trade terms, no different.  Your Honor, I

2  will direct you to the full quote in the brief.  I believe,

3  frankly, that once Mr. Bendernagel puts the last page of the

4  missing page of the transcript, you'll actually have the

5  full quote.  It wasn't -- and he was being polite -- an

6  oversight.  The document that was provided as an exhibit was

7  precisely the line and page number referred to by the

8  parties.  What that didn't do, Your Honor, was include the

9  second half of the stipulation.  The stipulation, we agree

10  that Times Mirror entered into these agreements with its

11  employees and retirees in the ordinary course of business.

12  We are in no way this means normal trade terms or that the

13  obligation was assumed by Tribune in the ordinary course of

14  business.  It was that back half that was left out.  So

15  we've quoted the whole thing.  It speaks for itself, but I

16  wanted to call it to your attention because I'm not going to

17  have an opportunity to get back up to speak and I didn't

18  want to have to address it in a letter.

19          Thank you, Your Honor.

20          THE COURT:  Thank you.

21          MR. BENDERNAGEL:  Your Honor, Jim Bendernagel for

22  the debtor.  I'll be brief.  As an initial matter, the page

23  that Mr. Teitelbaum just referred to was added to your

24  binder at lunchtime.  It's in Exhibit 26.

25          THE COURT:  I have it.

1          MR. BENDERNAGEL:  The second reason I stand is to

2    address two exhibits which  appear in Exhibit -- I mean,

3    binder number four, and that's Exhibits 23 and 23A.  Let me

4    explain to you what these are and why we put them forward as

5    a preface.  The debtor is not taking a position as to how

6    you ought to resolve the issue that is before you.  What our

7    position basically is, is however you resolve it, it should

8    ply with equal force to the non-Teitelbaum retirees.  And

9    Exhibit 23, which was attached to our reply brief -- I mean

10   our initial brief, lays out who are not -- who are -- the

11   retiree claims that are not part of the Teitelbaum -- the

12   retirement settlement that's been referred to, and is marked

13   as Exhibit 81.  And the schedule simply shows the name of

14   the claimant, the claim number, the amount claimed, and then

15   the documents pursuant to which the claim was made, and we

16   [indiscernible] the operative documents and those are in

17   evidence.  Exhibit 23A takes that a little bit further and

18   simply breaks that list on 23 into two categories.  Top

19   category of people that are still not represented by Mr.

20   Teitelbaum.  At the bottom, there are six new -- I think

21   it's six -- new Teitelbaum clients who are not technically

22   part of the retirement settlement, but they are now

23   represented by Mr. Teitelbaum, and I think it's his

24   intention to bring them within that.  We wanted to put out

25   what that information was.  Just as a help to the Court, we

1  added a column that relates these individuals to the

2  specific plans that Mr. Teitelbaum has identified as being

3  in issue in the case, and the long and the short of it is

4  our position is that whatever you decide with respect to Mr.

5  Teitelbaum's clients, you ought to decide with respect to

6  the rest of the people that have put forward retiree claims,

7  and that's why we stand.  Nothing further. I haven't heard

8  anybody oppose it.

9          THE COURT:  Does anyone oppose that so far as you

10  know?

11          MR. BENDERNAGEL:  I haven't heard anybody oppose.

12          THE COURT:  I haven't either.  Okay.  Law

13  Debenture.

14          MR. ROSNER:  Good afternoon again, Your Honor,

15  David Rosner of Kasowitz Benson for Law Debenture, and for

16  today's purposes, for Deutsche Bank as well.  As is clear,

17  we don't find the Retirees to be Senior debt within either

18  of the Indentures, whether as Senior indebtedness or

19  indebtedness, frankly, under the PHONES Indenture, and I'm

20  going to -- or as Senior obligations under EGI.  I'm going

21  to separate the two in discussing them.  So we can deal with

22  the PHONES first and then EGI and we don't mix up terms

23  because there are -- some of the terms that were referenced

24  by Mr. Teitelbaum are actually not found in one -- they're

25  in different ones.  Normal trade terms, for example, is the

1   one -- is the phrase that's used in the PHONES Indenture,

2   and ordinary course of business is the one that's used in

3   the EGI, and I think it's important to keep those separate,

4   even if, conceptually, there are some connections between

5   the terms.

6          At the outset, I will say that they cannot and

7   have not; they being the Retirees, the TM Retirees, have not

8   sustained their burden that they are indebtedness or Senior

9   indebtedness under the PHONES Indenture, and it is their

10  burden and I think that we've both cited a case, the *Payless*

11  case which I referred to earlier, for setting forth that

12  burden as to everybody asserting the Senior status.  It's

13  interesting that that's the case that says it because that's

14  also a case that says that deferred compensation is not the

15  deferred purchase price for services rendered.  And there's

16  arguments in the brief as to how Mr. Teitelbaum

17  distinguishes that case, and why we rely on that case, but

18  that case actually addresses one of the points that he was

19  making just a few minutes ago.

20         The Retirees must fit their claims within the

21  straightforward language of the Indentures to be entitled to

22  Senior status.  Can we just put the definition up on number

23  15 as that's the one that we have that I think has the

24  definition of indebtedness?  Now, I'm addressing the PHONES

25  at this point, Your Honor.  I'm going to -- and I'll advise

1    when I'm switching over to the EGI Subordination Agreement.

2    This is not a deferred purchase price for services analysis

3    that the Court should engage in to fit within the definition

4    of indebtedness sub (2).  I told you the *Payless* Court has

5    said that it's not -- and, in fact, the Retirees themselves

6    say that it does not -- purchase price, the phrase purchase

7    price, does not really fit the idea of compensation.  I

8    think if you -- I would refer Your Honor to their opening

9    brief at page 28, carried over to 29, where the quote is

10   "Since purchase price does not clearly translate to

11   compensation for services, the complete phrase, all

12   indebtedness for borrowed money or the deferred purchase

13   price of property or services, ellipses, should be broken

14   down at each disjunctive."  And then what they do, and this

15   is important because of the way we read proper grammar, the

16   way we read this, is they attempt to separate the property

17   or services from the concept or the phrase deferred purchase

18   price.  And just reading the document, it says the deferred

19   purchase price of property or services and then it has the

20   exclusion and again, when it says -- when it's excluding out

21   a deferred purchase price, it says in the case of any such

22   deferred purchase price; again, not making any distinction

23   between the goods or services.  And so the way that they

24   actually distinguish or try to open up the phrase doesn't

25   actually work.  I will also point out, in terms of their

1    reply brief; and again, these are just how we talk about

2    these phrases and whether they actually fit within the

3    definition of indebtedness, they cite with two quotations,

4    and this is at page 15 of their reply brief, and this gets

5    into the nature of a trade creditor and they say that a

6    trade creditor is somebody that -- as to whom -- those to

7    whom a debt is owed for the provision of goods, or perhaps

8    goods or services used in the conduct of one's business.

9    I'm going to refer to that again in a moment.  The Retirees

10   can't really have it both ways because what they'd like to

11   argue here, and let's just give them the benefit of the

12   doubt just for a moment that deferred purchase price of

13   services does, in some way, relate to the Deferred

14   Compensation Plans.  Then the phrase, if you follow it all

15   the way through; and this is important, that it says in the

16   case of such -- of any such deferred purchase price on

17   normal terms.  That is what is excluded from the definition

18   of this indebtedness.  And Mr. Teitelbaum likes to -- has

19   spent quite a bit of time talking about what's normal trade

20   terms and that it doesn't apply because they are not trade

21   creditors.  I would submit that they can't have it both

22   ways.  They can't say that they're a deferred purchase price

23   for services, and then say that their purchase is not the

24   very trade that's identified in the very next clause.

25   You're either in this provision or you're out of this

1    provision.  But you can't distinguish between the goods or

2    services and say well, the exclusion here for other than in

3    the case of such deferred purchase price, which does apply

4    to services on normal trade terms.  You have now defined

5    yourself as being that trade.  And so long as the terms are

6    normal; and I'm going to get to Mr. Teitelbaum's stipulation

7    in a moment, and in that stipulation, he certainly says that

8    the Deferred Compensation Plans were drawn up in accordance

9    with industry norms, and I don't want to misquote.  I'll

10   quote it exactly as it is because we have a couple of slides

11   that shows exactly what it is.  Since they've conceded that

12   the terms of their payment were made in the ordinary course

13   in accordance with ordinary business practice and on

14   ordinary business terms, that's got to mean normal trade

15   terms when you've defined yourself as services that fits

16   within deferred purchase price.  So you can't rely on

17   disconnected accounting tests, IRS rules, to describe

18   themselves, call themselves, and the definition of an

19   Indenture in which these accounting journals aren't

20   referenced.  And it does not say trade terms.  It does not

21   say trade payables.  What it says is normal trade terms in

22   relation to deferred purchase price.  The Indenture here is,

23   in our view, unambiguously connecting the two when you've

24   define yourself as services, and that takes them straight

25   out of the definition.

1          Now, the next argument that they make -- they say

2    is that they -- or I would say in response is that they are

3    not indebtedness for money borrowed.  They're retired

4    executives, Your Honor.  This is like the SWAP claim.

5    They've loaned no money to Tribune or to Times Mirror.

6    They've set up deferred payment plans for themselves.

7    That's all.  There's no delivery of money.  There's no

8    repayment.  There's no indebtedness.  There's just a claim,

9    like everybody else, every non-Senior general unsecured

10   claim.  No priority.  Even their own documents, and you'll

11   see when you look through the Plans themselves, they are

12   nothing but general unsecured claims of Times Mirror and now

13   adopted by Tribune.  So they're not indebtedness under

14   14.01(1), subpart (2) -- subpart (1).  They are not

15   guaranteed debt.  They've made the argument that they are

16   guaranteed debt or that there's a co-obligor because Tribune

17   took over the indebtedness when it merged with Time Mirror.

18   I think, once again, they misunderstand the provision.  The

19   idea is that if Tribune is a guarantor or a co-obligor of

20   another entity who's contemporaneously liable, then it could

21   fall within the definition of indebtedness.  Times Mirror is

22   no longer liable because in the merger, it ceased to exist

23   or it became part of Tribune; Tribune took over the

24   obligation.  There's no principal obligor or a co-obligor

25   with which Tribune shares liability.  There's no

1    indebtedness under 14.01 for within which the Retirees can

2    find their claim.  So now, since they can't be under

3    indebtedness for the reasons I just said, then we have to

4    see if they can be Senior indebtedness and they can't be a

5    trade account arising in the ordinary course of business.

6    They've already stipulated -- I'm sorry.  I think at this

7    point I should probably turn off to the stipulation because

8    I don't think -- during the evidentiary part, Your Honor, I

9    don't know if the stipulation was specifically given to Your

10   -- I mean it was given to you as an exhibit but I don't know

11   if it was specifically put in front of Your Honor.  It's

12   Exhibit 26, Your Honor, and you now -- he now has the full

13   copy, correct?  We've highlighted the relevant sections, the

14   sections that we find relevant and you now have the full

15   document in front of you.  And, as you can see, Mr.

16   Teitelbaum says he's prepared on behalf of the Retirees only

17   to stipulate that, with respect to such Plans, Times Mirror

18   formulated and entered into these Plans in the ordinary

19   course of its business and maintained those Plans in the

20   ordinary course of its business.  We are further prepared to

21   stipulate that, at the time that these Plans were entered

22   into, maintained by Times Mirror; so up to approximately

23   2000, at that time of the merger, these Plans were

24   consistent with industry practice.

25           Now, to be Senior indebtedness, they can't be a

1  trade account arising in the ordinary course of business.

2  Your Honor is going to ultimately decide whether this is a

3  trade account, and based upon their own arguments on

4  services, the references that they cite to in their reply

5  brief, the trade creditors are those who have provided goods

6  and services or that indebtedness is made to trade creditors

7  which are suppliers of goods and services.  You're going to

8  make the ultimate issue determination as to whether, for

9  these purposes, and for the purposes that they're asserting

10  themselves as one who provides -- one who is seeking

11  deferred compensation, deferred purchase price for services

12  rendered, whether that's a trade account.  But it's one that

13  arose in the ordinary course of business.  And since they've

14  already stipulated that it arose in the ordinary course of

15  business, and we think, by the way, Your Honor, on this

16  issue about the merger and the assumption of the debt, to

17  the extent that Your Honor finds it to be relevant, this is

18  the way that we see it and we think it's the only way you

19  can see how an obligation is incurred.  The determination as

20  to whether it's in the ordinary course would be tested and

21  would be measured at the time that the obligation arose.

22  And the obligation to the Retirees, as they've said and as I

23  think everybody recognizes, was back in the Time Mirror

24  days, and that's when you would look at what's in the

25  ordinary course; whether there's a successor to that

1    obligation; whether there is somebody who assumes that

2    obligation.  The assumption of the obligation doesn't change

3    its nature as an ordinary course obligation or whether it

4    was adopted in the ordinary course; whether it was an

5    ordinary business practice of the company; or, in fact,

6    whether the Plan itself was subject to normal industry

7    custom and terms.  You couldn't make that determination

8    later.  You'd have to make that determination at the time

9    the obligation was incurred.

10            Now, I think -- well, I don't think I'm going to

11   -- I think the normal trade terms issue, although I will

12   agree with Mr. Teitelbaum that, in his stipulation, he does

13   not use the expression normal trade terms.  But what he does

14   give to me, at least, and we hope to the Court and what

15   we've argued, are the component parts of what normal means.

16   And what normal would mean and what the Court should

17   understand normal to mean is, to me, is ordinary, ordinary,

18   ordinary, ordinary, and ordinary.  And if everything is

19   ordinary; and particularly if it's ordinary and consistent

20   with industry practices, those would be normal trade terms.

21   That's what I have on the PHONES, Your Honor.  So I'd like

22   to switch gears and turn to EGI.

23            THE COURT:  All right.

24            MR. ROSNER:  We've had a whole lot going back and

25   forth about expenses, accrued expenses.  I understand

1    expenses to be on an income statement.  I don't understand

2    them to be on a balance sheet.  But there's been even some

3    discussion on that point.  Under EGI, it's a very simple

4    definition of Senior obligations, and can we pull that one

5    up, please?  I'm not sure which one that is.  I think it's

6    18.  There it is.  It takes out trade payables and accrued

7    expenses incurred in the ordinary course of business.  So

8    okay, I think we've dealt with whether these obligations

9    were incurred in the ordinary course of business.  That's

10   been stipulated to.  Certainly, the issue would be whether

11   they're trade payables or they're accrued expenses.

12   Critical here it's whether incurred on or prior to the date

13   hereof; so before the execution of this agreement, or

14   hereafter incurred.  So even if something moves from a non-

15   current and gets pushed up into a current and becomes

16   expensed at that time, it would be one -- it would be an

17   expense that was accrued and then hereafter incurred.  So I

18   think that is a distinction without meaning in terms of

19   whether the expense is accrued.  But it's also a distinction

20   without meaning because there's really no difference between

21   accruing and expense for long-term or -- I'm sorry, for

22   current or non-current liabilities.  Nobody has drawn that

23   distinction that there is a GAP -- in fact, I think Mr.

24   Whittman testified that GAP does not distinguish between

25   short-term and -- or between current and non-current

1    liabilities for the purposes of expenses.  He did say that

2    the term accrued expenses is not a GAP term to the extent he

3    knows, but expenses certainly is.  And he also testified

4    that the debit side of the credit for current liabilities or

5    non-current liabilities is the expense side.  So then the

6    question is, were these expenses accrued and are these

7    expenses accrued or do they continue to get accrued as they

8    become due and payable?  The answer is that these expenses

9    have to be accrued because they've been earned, as Mr.

10   Teitelbaum has told us they've been earned, and they haven't

11   yet been paid.  And that's perhaps the most important thing

12   that we've learned about the idea of accrued expenses right

13   now for the purposes of this Indenture is that they are

14   obligations that are owed and they have not yet been paid.

15           Now, I've been asked, Your Honor, to fill out one

16   of the documents, which is Exhibit 66, and that's an exhibit

17   that's been submitted, and a piece of that exhibit was

18   submitted to Your Honor and then there was some discussion

19   from Counsel that the accruals that people are talking about

20   relate to taxes and interest and things like that, but they

21   don't relate to the deferred compensation.  I would like to,

22   since that is a partial exhibit, add one other piece to it

23   from the same document, the full document of Exhibit 66,

24   which is FAS-87.  It's the FASB Statement of Standards and

25   it's FAS #87.  And I'm just going to read this portion and

1 we can supplement by adding this page in at a later time.

2 What it says is recognition of a measure of at least the

3 minimum pension obligation as a liability is not a new idea.

4 Accounting Research Bulletin No. 47, Accounting for Costs of

5 Pension Plans published in 1956 stated that, "As a minimum,

6 the accounts and financial statements should reflect

7 accruals which equal the present worth actuarially

8 calculated of pension commitments to employees to the extent

9 that pension rights have vested in the employees reduced in

10 the case of the balance sheet by any accumulated trusteed

11 funds or annuity contracts purchased."  Opinion 8 required

12 that, "If the company has a legal obligation for pension

13 costs in excess of amounts paid or accrued, the excess

14 should be shown in the balance sheet as both a liability and

15 a deferred charge."  I'm fairly certain that that indicates

16 that these types of deferred compensation are accrued as

17 expenses for the purpose of the meaning within the

18 Subordination Agreement which I think pretty much just lays

19 out the term accrued expenses.  On the trade payables piece,

20 Your Honor, I think you can't -- again, I have to go back to

21 the point that the Retirees; and this is jumping back a

22 little bit back to the PHONES, you can't make the argument

23 that you are a deferred purchase for services under one

24 document and then say that you're not really a trade

25 payable.  You're either in that bucket or you're not.  And,

1  you know, I would contend that they are not under -- that

2  they don't fit within the PHONES and they don't fit within

3  the EGI as an accrued expense.

4           There was reference in the paper, and this is

5  really the only reason that I'm going to just raise this

6  point.  It wasn't argued today but it was just referenced in

7  the papers.  And that is the Retirees, at some point; I

8  think it was in their opening brief, they relied heavily on

9  their Settlement Agreement and said that Your Honor approved

10  their Settlement Agreement, which I don't think Your Honor

11  actually approved their Settlement Agreement.  I think, Your

12  Honor, in the Confirmation Opinion, in denying confirmation

13  by the way of the Plans in front of it, said that it was an

14  important part of the DCL Plan.  But the Settlement

15  Agreement offers them no help in this regard in terms of

16  whether they are Senior debt at all.  There's no doubt there

17  was an agreement with the debtors and an agreement with the

18  Committee on which the Retirees sat, but that agreement is a

19  nullity at this point.  That was a Rule 9019.  It required

20  that the Court make a Rule 9019 finding and it be -- and it

21  was required that it be subject to confirmation of a Plan,

22  which we all know has not occurred.  And the agreement

23  simply said that the Retirees would support a Plan that paid

24  them under the arithmetic as if they were Senior

25  indebtedness and that they must be classified and treated as

1    they were.  We can all draw our own conclusions as to why

2    they would be classified and would be treated as if they

3    were Senior indebtedness and, you know, separate from the

4    Senior debt, and I don't want to state, you know, what my

5    own personal view is as to that, but I can say that that

6    settlement is not at issue today and it is a nullity at this

7    point.  That settlement though also gave them substantial

8    consideration in and of itself.  And that settlement gave

9    them limited releases.  It allowed their claims as Mr.

10   Teitelbaum said.  But I will note that it allowed their

11   claims at only an eight percent reduction from the total

12   amount that they asserted their claims.  Now, the debtors'

13   objection was -- the debtors objected to about $30 million

14   worth of the claims and, ultimately, agreed to just a $10

15   million reduction.  So basically, they got, you know, the

16   better of that objection.  They got two-thirds of what was

17   in dispute.  The debtors got a third.  So there's no

18   justification for treating them as Senior just because there

19   was a Settlement Agreement that provided to give them

20   arithmetically the same amount that the Senior debt is

21   entitled to.  And when we get to the discussion about the

22   Plan misallocation, which I think is the next topic for the

23   next allocation dispute, you know, we're going to discuss,

24   you know, why that arithmetic technique for treating them

25   under the Plan actually is something that renders the Plan

1  unconfirmable.  But for today, for this allocation dispute,

2  I would say that the Settlement Agreement gives them no

3  rights as Senior debt, any rights that they cannot prove

4  that they have within the four corners of the documents.

5  They have not proved it. They don't fit within any of the

6  definitions under indebtedness, Senior indebtedness, or

7  Senior obligations and we would expect Your Honor to treat

8  them as general unsecured creditors like the SWAP claim.

9            THE COURT:  Thank you.

10            MR. ROSNER:  Thank you.

11            MR. STARK:  Good afternoon, Your Honor, Robert

12  Stark from Brown Rudnick on behalf of Wilmington Trust.  I

13  would suspect by about now, Your Honor has heard probably

14  about enough about this issue as you care to or you probably

15  know it all pretty well.  So I'm not going to guild the

16  lily.  If Your Honor has any questions for me; otherwise,

17  I'd just rest on what Mr. Rosner sent in on the papers.

18            THE COURT:  I do not, and God bless you, Mr.

19  Stark.

20                    (Laughter)

21            MR. BRADFORD:  David Bradford on behalf of EGI-

22  TRB.  I'm going to try to match that as well, Your Honor.

23  And I think I can go one step further which is to tell the

24  Court that we don't believe you even need to decide the

25  issue of whether the Retirees are Senior obligations under

1  our Subordination Agreement if you agree with us that

2  avoidance recoveries are not subject to that issue.

3              (Laughter)

4         MR. BRADFORD:  And otherwise, we will rely upon

5  the arguments that had been made previously as to why they

6  are not Senior obligations.  Thank you, Your Honor.

7         THE COURT:  Thank you, Mr. Bradford.  Okay.  So

8  let's talk about what we want to try to do with the

9  remainder of the day.  Mr. Bendernagel, any time estimates

10 or suggestions?

11        MR. BENDERNAGEL:  Well, the next item, which is

12 not the discrimination issue, the unfair discrimination

13 issue, but this other class is of the same nature of what

14 we've been talking about.  I think we can get through that

15 fairly quickly.  So I don't think there's any doubt we'll be

16 done with that today.  You know, and that leaves us with

17 essentially four issues, which I think everybody concedes

18 we'll get through tomorrow.  So, you know, we can either --

19 we could get into the discrimination issue.  The

20 discrimination issue is a fairly important question here

21 and, you know, it might be better to do that when people are

22 awake as opposed to --

23        THE COURT:  Including the Judge you mean?

24        MR. BENDERNAGEL:  Well --

25        THE COURT:  Yes, it's okay.

1                        (Laughter)

2            THE COURT:  Well, are you -- what's your

3    confidence level on a scale of one to 10 that if we leave

4    the remaining four, we'll get through them tomorrow?

5            MR. BENDERNAGEL:  Oh, we'll get through them

6    tomorrow.

7            THE COURT:  Well, that sounds pretty high.  All

8    right.  Well, let's proceed with the next issue now.

9            MR. BENDERNAGEL:  All right.  The next issue,

10   Your Honor, is the status under the Subordination Agreement

11   with respect to the non-SWAP, non-Retiree, other Parent

12   claims, this -- there are two exhibits that relate to this.

13   They're in binder five.  It's Exhibits 83 and 83-A.  They

14   were both presented by the debtor.  I do not believe there

15   are any objections, and I'd offer 83 and 83-A into evidence

16   at this juncture.

17           THE COURT:  Is there any objection?

18                   (No audible response)

19           THE COURT:  I hear none.  83 and 83-A are

20   admitted without objection.

21           MR. BENDERNAGEL:  Your Honor, that precludes the

22   evidentiary portion of this presentation.

23                       (Laughter)

24           MR. BENDERNAGEL:  Moving on to the argument,

25   which hopefully will be almost as short, the debtors go

1    first, and let me reiterate that we are not taking a

2    position and let me explain why this item is on this list.

3    Wilmington Trust quite properly asked us who are these

4    people.  And, you know, we provided an Interrogatory answer

5    that essentially provided the information that's in these

6    two exhibits.  And we also thought we should give notice of

7    this proceeding to the people that were on this list, and we

8    did that shortly after you published the scheduling order in

9    this regard and we indicated in that notice that information

10   about this would be on the Epiq website and information

11   about this has been on the Epiq website.  These two

12   exhibits, 83, 83 is simply a long list of who -- what

13   potential claimants are in this class, listing the claim

14   number, the claimant's name, the claim type, and the claim

15   amount as claimed.  Now, it is not -- and on this particular

16   exhibit, that number totals up to $111 million or

17   thereabouts.  It's not the debtors' position that there are

18   $111 million.  That's not the number that's been used to

19   compute recoveries, but this is the claim amount.  A lot of

20   these are subject to dispute.  Some of them are unliquidated

21   as you can see.  But we thought it was a good idea if the

22   Court at least knew who these claimants were if they were

23   being asked -- if the Court was being asked to determine

24   whether they were either Senior indebtedness or Senior

25   obligations.  The Exhibit 83-A is identical to 83 with two

1    exceptions.  The first is there's a summary sheet on page

2    one that tries to take the 19 pages and reduce the

3    information into categories that would make it easier for

4    the Judge to understand what's going on and some descriptive

5    information.  The other difference is that Wilmington Trust,

6    between the first schedule and the second schedule,

7    indicated that their fees had gone up from 14 million to 19

8    million.  Now, I'm quite sure that didn't happen in that

9    two-week period, but -- and I'm quite sure they're higher

10   now, but we wanted to get that information in front of the

11   Court.  We were prepared to present Mr. Whittman if the

12   Court had questions about who are these guys and what is the

13   nature of these claims.  But I think there's a fundamental

14   question in the sense that no one, despite our efforts, has

15   shown up and said hey, I want to be heard and I want to be

16   considered to be Senior indebtedness or Senior obligation

17   with one exception, Wilmington Trust, and I'm quite sure

18   they can speak for themselves.  The real question is how

19   much the Court needs to hear additional argument or

20   information regarding the people other than Wilmington Trust

21   with respect to this issue.  And if the Court has questions,

22   we'd be prepared to make Mr. Whittman available to answer

23   those questions.  If he doesn't, we'll rest.

24           THE COURT:  I do not presently.

25           MR. BENDERNAGEL:  Thank you, Your Honor.

1          THE COURT:  On my list, it's Law Debenture first.

2          MR. ROSNER:  David Rosner, Kasowitz Benson Torres

3 & Friedman for Law Debenture, and for today's purposes, for

4 Deutsche Bank.  Just before I respond, this will be

5 extremely quick on the other Parent claims.  I just want to

6 make a suggestion for utilization of time that the Court

7 might consider.  The -- I agree that the next -- in the

8 order, the next issue will take more time.  But the one

9 after that, the post-petition interest allocation dispute, I

10 don't think is going to take a huge amount of time.  So we

11 might be able to run out of order and use the remainder of

12 the day to knock that one out and then switch back to the

13 Plan misallocation as we like to refer to it, or unfair

14 discrimination as other people like to refer to it.  So

15 that's just a consideration for all the parties that are

16 going to speak on that.  But I'm certainly agreeable to

17 switching those out of -- you know, putting that out of

18 order.

19          THE COURT:  All right.  Thank you.

20          MR. ROSNER:  On the other Parent claims, we agree

21 nobody has asserted their Senior status.  We don't think

22 that they've been able, therefore, to carry any burden and

23 we think that having looking through all of the claims, and

24 we have said, you know, bring the schedule in; we've looked

25 through them all; we don't see anything on there that would

1  even remotely appear to fit within any of the definitions

2  that would render them Senior.  So our position, as laid out

3  in the papers, is that there are no other non -- you know,

4  the other Parent claims that fit within the Indentures.  The

5  only reason I wanted to say anything is because Wilmington

6  Trust has asserted that its fee claim, which I think now is

7  approaching $20 million is a Senior claim that would fall --

8  is separate from -- they are separating it from their

9  Subordinated Agreement, their PHONES Indenture, and saying

10  that their fee claim is Senior.  Your Honor, we say Article

11  14, which is -- which contains the entire Subordination

12  Agreement in the PHONES Indenture has a provision which is

13  14 -- Section 14.13.  And Section 14.13 excludes from the

14  entire operation of Article 14 the fee claim of Wilmington

15  Trust.  So, by definition, it can't be Senior debt.  It

16  can't be indebtedness such that it would get the benefit of

17  its own Indenture because it's been excluded from the

18  agreement itself, the Subordination Agreement itself, and

19  nothing else would entitle it to Senior status.  Again, I

20  believe the burden is on them of proving their case and I

21  don't believe they can prove their case.

22          Under EGI, I will not belabor the record on what

23  we think an accrued expense is, but we certainly think that

24  their obligations for payment under the Indenture would be

25  an expense that would be accrued by Tribune.  Thank you,

1    Your Honor.

2                 THE COURT:  Thank you.

3                 MR. STARK:  I'm troubled, Your Honor, because I

4    think I just found out that I'm dealing with a scorpion and

5    not a fox, but I'm not sure yet.  Robert Stark from Brown

6    Rudnick on behalf of Wilmington Trust.

7                 THE COURT:  Well, if you both drown, does it

8    really matter?

9                          (Laughter)

10                MR. STARK:  It probably doesn't, Your Honor.

11   Your Honor, I'm not going to belabor it.  I mean we've been

12   through the language of 14.01, (1) and (2), so many times it

13   doesn't make a whole lot of sense to do it again.  But if

14   one can semantically summarize what those sections talk

15   about, those claims that are supposed to fit within

16   contractual subordination rights and get the benefit of

17   subordination, they really need to be a loan or a

18   capitalized sale or lease of goods or services, and it can't

19   be anything resembling a trade claim.  That seems to be the

20   theme of that section.  It's really getting a funded debt

21   for the most part.  There is close to 900 items on this

22   Exhibit 83 and 83-A.  That's an awful lot of line items.  We

23   haven't diligenced all of them.  You've got Retirees.  We

24   haven't diligenced any of them actually.  Retirees, former

25   shareholders, indemnification, litigation, tax, trade

1   payables, lots of different kinds of claims; we didn't

2   diligence them because again, Your Honor, we don't have to

3   and I think it's important, yet again, to remind everyone,

4   and the Court here as well that, hereto, the burden of proof

5   falls on the party that seeks to want to become a third-

6   party beneficiary under the Indenture.  So it behooved

7   anybody who's within that list of close to 900 to come

8   forward and say I am one of these types of claims that fits

9   within the definition of indebtedness or Senior indebtedness

10  and none has, and so I don't think I need to stab at

11  shadows.  But I do think I need to respond to Mr. Rosner's

12  comments because I think he misstated the import of our

13  Indenture 14.13, which is the section that he was referring

14  to.  That has -- it's on page 68 of our Indenture and it has

15  two paragraphs.  And the first paragraph says the Trustee,

16  in its individual capacity, shall be entitled to all the

17  rights set forth in this Article 14 with respect to any

18  Senior indebtedness which may at any time be held by it.

19  Okay?  And then it went on to say nothing in this Article 14

20  shall apply to claims of or payments to the Trustee under or

21  pursuant to Section 6.07, which is the fee claim.  I would

22  respectfully posit, Your Honor, that the first paragraph is

23  intended to bestow upon the Indenture Trustee, which sort of

24  makes sense, that their claims for their fees, being the

25  Trustee for the Bonds and their Counsel, would be Senior

1    indebtedness because you want Indenture Trustees to actually

2    take on the job of being an Indenture Trustee and that the

3    second paragraph that says nothing in Article 14 shall apply

4    to the claims of their fees, is essentially saying we don't

5    have to turn over our fee entitlements to somebody else who

6    is Senior indebtedness.  So I do believe Mr. Rosner has

7    misinterpreted that section.  Does Your Honor have any

8    questions for me?

9              THE COURT:  I do not.  Thank you.

10             MR. STARK:  Thank you.

11             MR. BRADFORD:  Your Honor, David Bradford, Jenner

12   & Block on behalf of EGI-TRB.  Your Honor, this is yet

13   another issue you need not reach by properly construing our

14   EGI-TRB Subordination Agreement.  Thank you, Your Honor.

15   THE COURT:  Thank you.

16             MR. BENDERNAGEL:  That brings us to the

17   proverbial fork in the road, Your Honor, in terms of whether

18   we go forward with issue six, jump to seven, or just leave.

19             THE COURT:  Well --

20             MR. BENDERNAGEL:  It's your choice.

21             THE COURT:  Well, I'll tell you what.  Let me

22   take a five-minute break.  The parties can talk about it,

23   and if all are in agreement and you know -- what do you

24   think?  About an hour or so?

25             MR. BENDERNAGEL:  Oh, I -- my guess is that

1   argument isn't going to take an hour.

2           THE COURT:  Then I think we'll have time for it,

3   but --

4           MR. BENDERNAGEL:  Okay.

5           THE COURT:  -- I'll take a five-minute recess,

6   and if someone wants to squawk about that --

7           MR. BENDERNAGEL:  Just so that I -- what I was

8   referring to is issue seven.

9           THE COURT:  Yes.

10          MR. BENDERNAGEL:  Yeah.

11          THE COURT:  We'll stand in recess.

12          MR. BENDERNAGEL:  Thank you.

13  (Recess at 4:13 p.m. to 4:22 p.m.)

14          THE CLERK:  All rise.  Please be seated.

15          MR. ZENSKY:  Good afternoon, Your Honor.  David

16  Zensky, Akin Gump Strauss Hauer & Feld for Aurelius Capital

17  Management.  The parties conferred, and with the Court's

18  permission, we agreed to proceed to issue seven, and I

19  anticipate it will be briefer than Mr. Bendernagel said, but

20  he was being careful.

21          THE COURT:  As he should.

22          MR. ZENSKY:  So, Your Honor, this is the issue of

23  what the plan and what the litigation trust should say about

24  who gets the next dollar after the senior noteholders, and

25  should the Court determine that there are any other parties

1  who are entitled to be classified to senior indebtedness,

2  after those parties have gotten their pre-petition claim

3  paid in full, what happens next, who gets the next dollar.

4          And I can't make you happy as Mr. Stark did by

5  saying I adopt Mr. Rosner's comments, because I'm the first

6  up on this issue, but what I can tell you is that while

7  there have been no shortage of complex and interesting

8  issues in this case, this is not one of them.  This is a no-

9  brainer, Your Honor, about the outcome, and the outcome is

10 that once senior indebtedness is paid in full, as pre-

11 petition claim, that the PHONES, at that point, can begin to

12 receive and retain distributions from litigation trust or

13 other consideration.

14         If I may, Your Honor, not to be left out, I do

15 have my own slide.  It's one page.  May I hand it up?

16         THE COURT:  Certainly.  Thank you.

17         MR. ZENSKY:  Now, I begin with a comment or

18 observation that I think is common ground among the parties

19 at this point that a party claiming the benefit of a

20 subordination agreement has the burden, so in this case, the

21 senior indenture trustees, who are saying that the

22 subordination extends all the way through to post-petition

23 interest and that the senior notes or senior indebtedness is

24 entitled to subordinate the PHONES holders as the post-

25 petition interest have the burden on this issue.  And if you

1  look at the text of 1402, Your Honor -- or 1401, sub 2,

2  which is in front of you, neither Mr. Rosner nor any of your

3  three dozen friends in the courtroom could carry that burden

4  on this issue, Your Honor, because the PHONES indenture is

5  not remotely ambiguous on this issue, and it speaks directly

6  to the outcome, and that is that the PHONES holders agreed

7  to be subordinated only to senior indebtedness and that

8  senior indebtedness can only include interest which accrues

9  after the petition date, only to the extent that it is

10  allowed or permitted to the holder of that indebtedness

11  against a bankruptcy or other insolvency estate.  And unless

12  I've missed the development in this case, Your Honor, post-

13  petition interest has not been allowed to any senior

14  indebtedness at this point, and therefore, the PHONES

15  holders are not subordinated to the collection of post-

16  petition interest by senior noteholders or any other

17  category of creditors the Court determines to be senior

18  indebtedness.  The language in front of you leads to no

19  other conclusion, Your Honor.

20          We also know from the code that -- in section 726

21  that post-petition interest cannot be distributed until all

22  the other allowed claims have been paid.  So it's very clear

23  that the PHONES, whatever the ultimate allowed amount is of

24  the PHONES claims, must be paid in full before post-petition

25  interest can begin to be paid to the senior noteholders.

1          In their brief, Law Debenture says that post-

2    petition interest is an obligation, and -- that's true, and

3    that may make post-petition interest an obligation of the

4    company, but that only makes it indebtedness.  It doesn't

5    make it senior indebtedness, and the PHONES are only

6    subordinated to senior indebtedness, as Your Honor knows,

7    from having seen the indenture many times now.

8          The only other issue to address is the suggestion

9    in the Law Debenture brief that this issue is premature or

10   not right for decision at this point, because we don't know

11   whether there will be enough dollars to begin paying the

12   PHONES at -- the PHONES holders at that point in time.

13         The brief first cites the -- talks about the two

14   decisions that determine that the rule of explicitness had

15   been abrogated by code section 510, and those were both

16   chapter 7 cases.  And while it is true that, in those cases,

17   the issue came up at the point in time at which there were

18   distributions available, neither case discusses the issue of

19   rightness, and there's no evidence that there was any

20   earlier stage of those cases, where the parties sought to

21   litigate that issue and were robust.  It just happens in

22   those two cases that the issue came up at the time that --

23   where proceeds were available but in no way stand for the

24   proposition that the issue is unripe until that point in

25   time.

1          The brief then cites the line of cases that all

2   devolve from the Supreme Court's Decision in *Abbott Labs*,

3   and that was a case and set up a test designed to determine

4   whether it's premature for a Court to enjoin an agency from

5   enforcing a regulation and talks about the policy reasons

6   for keeping courts from being entangled in agency business

7   and deciding hypothetical disputes that go into areas of

8   federal policy and regulation.  And it's not clear at all

9   why that line and that concern should apply to the

10  development of a plan.  Plan of reorganization frequently

11  deals with issues that are contingent and may only rise in

12  the future, including as to how to distribute litigation

13  trust proceeds, availability of insurance, for example.

14  There's lots of unknowns at the time a plan.  It's

15  frequently negotiated and put forward for Court approval

16  where there are things that may or may not happen in the

17  future.  And I don't think it makes sense for us to now open

18  up a line of defense for the party on the losing end of the

19  argument to come in and say, well, we're not quite sure

20  whether that will or won't happen, so let's kick that one

21  down the road.  I don't think that would lead to a sensible

22  way of proceeding with proposed plans of reorganization.

23          But even if that test does apply here, Your

24  Honor, the -- this issue, whether the PHONES are entitled to

25  receive and retain distributions before senior indebtedness

1  gets post-petition interest, even if it applies to that

2  issue, it's completely satisfied here.  First, it's a pure

3  question of law.  There's no question about it.  There's no

4  argument about disputed facts or needing other evidence in

5  the record.  you've got the indenture in front of you, and

6  no one has suggested that anything matters to the outcome of

7  this case, other than a -- this issue, other than legal

8  interpretation of the PHONES indenture.

9          Second, we have a real concrete and adverse

10 dispute of the parties, and that dispute is capable of a

11 specific decree.  In other words, the Court can direct that

12 the plans say X on this issue or it can say Y.  It is

13 capable of judicial resolution.

14         And finally, while again we don't know whether

15 the proceeds will or won't be sufficient to get us to that

16 point in time, nothing else will develop or change that

17 would make this issue any easier to decide or more concrete

18 at a future point in time.  The only issue is will the

19 proceeds be available.  And we've cited cases in our reply

20 brief, Your Honor, that have determined that the mere

21 contingency about whether proceeds will be available in a

22 bankruptcy proceeding does not prevent the Court from

23 determining whether the plan accords that particular issue

24 appropriate classification, appropriate subordination, or

25 appropriate treatment.

1          And finally, it would be useful for the parties

2    to know the answer to this question, and the litigation

3    trustee or ultimate litigation advisory board may well wish

4    to know about the [indiscernible] distributions if and when

5    we get to that point.

6          So that's all I have on this issue, unless the

7    Court has questions.

8          THE COURT:  I don't.  Thank you.

9          MR. JOHNSTON:  Your Honor, Jim Johnston on behalf

10   of Oaktree Capital again.

11         We didn't say much on this issue in our briefs,

12   and I'll say even less this afternoon.  Just as a backdrop,

13   with respect to post-petition interest, we do believe, as we

14   cited in our brief, that the pre-code rule that explicitness

15   has been abrogated, that's the holding of the 1st Circuit in

16   *Bank of New York* and the 11th Circuit in *Southeast Banking*.

17   Both those cases interpret section 510a of the bankruptcy

18   code as being a straightforward direction to the Court to

19   apply applicable non-bankruptcy law, i.e. state law, to the

20   interpretation of a subordination agreement.  The equity-

21   driven, judge-made rule of explicitness they hold is no

22   longer in force unless it's applicable under state law.  As

23   an aside, Southeast Banking then went to the New York

24   Courts.  The New York Court said, under New York law, yes,

25   there is a rule of explicitness.  Neither of our contracts

1  here apply New York law.

2          We have two contracts, two different sets of law,

3  and two different provisions.  The EGI contract applies

4  Delaware law, and it provides for subordination to senior

5  obligations until "paid in full in cash".  There's no

6  mention whatsoever about post-petition interest.  The

7  document's silent.  We submit that the plain meaning of the

8  term "paid in full in cash" means that an obligation has to

9  be paid in full, including all interest accrued on the

10 obligation until the date of payment.  That is the import of

11 the direction under Delaware law that you enforce

12 subordination agreements according to their plain terms and

13 as they're written.  So we submit that post-petition

14 interest, to the extent we ever get to that point, would be

15 payable to the beneficiaries of the EGI subordination

16 agreement.

17         The PHONES' agreement, as you heard Mr. Zensky

18 say, is different.  It applies Illinois law, but more

19 importantly, it is crystal clear in what it says with

20 respect to post-petition interest.  It says that a senior

21 creditor is entitled to post-petition interest, to the

22 extent allowed in the bankruptcy case.  Well, period; end of

23 story.  I think those words are plain and simple.

24         The question is, when do you make the solvency

25 determination necessary to enable you to decide whether a

1  post-petition interest claim is allowed or not allowed in

2  the case.  I'd submit, Your Honor, that the right time to

3  make that determination is at the time of payment, at the

4  time a distribution from the litigation trust might be made.

5  If, in fact, assets are available to create a solvency

6  situation, a claim for post-petition interest can be allowed

7  at that point in time, and there would be subordination.  So

8  that's all that we have to say on the point.

9           THE COURT:  Thank you.

10          MR. JOHNSTON:  Thank you.

11          MR. ROSNER:  David Rosner, Kasowitz Benson Torres

12  & Friedman for Law Debenture, for today's purposes, for

13  Deutsche Bank.

14          On the post-petition interest question, this

15  question once again implicates contracts between as to which

16  the benefits and the burdens flow between third parties.  We

17  have argued for deferral of the matter, because there is no

18  actual case or controversy before Your Honor.  It's not a

19  pure legal issue.  It involves contract interpretation,

20  determination of a measure of the litigation trust and

21  creditors trust proceeds until such time as an issue would

22  be right before Your Honor.

23          I will -- to offer myself, just for a moment, as

24  a percipient witness, I can tell you that both -- in both

25  *Southeast Bank* and *Bank of New England*, the issue did not

1  arise until the seniors were paid in full.  I had the

2  pleasure of arguing both of those cases, and so I know when

3  the seniors were paid in full, and it -- that was when the

4  issue became ripe in those cases.  I didn't take the stand,

5  but I swear that that's true.

6          So the fact that we've agreed that this is an

7  allocation dispute does not confer constitutional authority

8  on this Court for gestatiability [ph] or standing to go

9  forward with the determination.

10          Having said all that, knowing that Your Honor

11  wanted to make -- wants to make decisions on these things,

12  I'd like to just briefly talk to the merits of the issue.  I

13  agree with my colleague, Mr. Johnston, on this and only this

14  and -- as to that this is -- now is an issue of matter of

15  law.  And I will tell you, in *Southeast Bank* and *Bank of New*

16  *England*, both which were construing New York indentures,

17  actually went in opposite directions on an actual key point

18  for Your Honor, because these indentures are not New York

19  indentures or Illinois, and they're -- and they are

20  Delaware, and you'll need to make this determination.

21          *Southeast Banking* certified the question to New

22  York, and New York Court of Appeals adopted a bankruptcy-

23  specific rule as a rule of contract interpretation under New

24  York law, which is a pretty unusual thing for -- you know,

25  usually an appellate court or court of appeals will always

1   defer to the highest court of a state as to what that state

2   thinks its state law is.  Except in that instance, they

3   actually adopted something that only applied in the context

4   of bankruptcy as opposed to something that would be

5   generally applicable to all contracts in New York, and

6   that's what the *Bank of New England* case took issue with and

7   said, no, no, no; at this point, we don't defer to the court

8   of appeals in New York on this, because it's actually

9   unconstitutional for them to have done so, because it

10  violates the supremacy clause, because bankruptcy is

11  supposed to be uniform throughout several states.

12          So there you have it, Your Honor, that you're now

13  going to be looking at an indenture under Illinois law and

14  an indenture under Delaware law, and you're going to be

15  making your own determination as to whether you're going to

16  adopt a bankruptcy-specific rule that I would tell you is

17  not within your constitutional authority to do so, as they

18  said in *Bank of New England*, as to the EGI subordination

19  agreement.

20          EGI's governed by Delaware law.  Delaware law

21  applies contracts as written.  As Mr. Johnston said, payment

22  in full in cash means payment in full, in cash.  That means

23  interest to the date of payment under any circumstances of

24  which I'm aware, and there should be no application of a

25  rule of explicitness there.

1          I will concede that the PHONES indenture is

2   somewhat more difficult, Your Honor, speaking to the issue

3   as it says, and the only point that I would make is, unlike

4   what Mr. Johnston said is -- where he said that it says only

5   when interest is allowed to a senior debtholder, it's

6   actually written in the disjunctive, and it says where

7   interest may be allowed or permitted to a holder of senior

8   indebtedness.  And in the instance of when a bankruptcy

9   court could permit interest to a senior debtholder, one

10  instance would be in the context of unimpairment.  To give a

11  creditor its full, legal, contractual, and equitable rights,

12  that creditor would have to be paid post-petition interest,

13  notwithstanding the solvency of the estate.

14          Pulling it back, Your Honor, I think that we are

15  not in a position at this point, and the Court's not in a

16  position right now to have an actual case or controversy,

17  and we would request that you defer the issue until a later

18  date, as we well hope that the senior debt is paid in full.

19  Thank you, Your Honor.

20          THE COURT:  Thank you.

21          MR. STARK:  Your Honor, Robert Stark from Brown

22  Rudnick on behalf of Wilmington Trust.  I'm -- we're

23  actually a little out of order.  I actually probably

24  should've followed Mr. Zensky, because his views, as he's

25  articulated them to the Court, are pretty much the same as

1    ours and not the other side that's spoken since.

2              I'm not going to go over the language.  It's

3    clear.  Everybody concedes it.  There's nobody who can

4    figure out an argument to get around the language.  It is

5    what it is.  502 applies.  As long as we're insolvent, there

6    is no post-petition turnover.  I think everyone concedes

7    that.

8              So the only question is the ripeness argument,

9    and I would contend, Your Honor, that it is not an

10   appropriate consideration at this time, for two reasons: one

11   is procedural and the other is substantive.

12             The procedural is the fact that we all stipulated

13   to deal with this issue now.  We're all here.  We all agreed

14   to be here.  We all agreed to deal with this issue here.  So

15   it is ripe by consent of the parties procedurally.  It's

16   ripe --

17             THE COURT:  I never consented to that, though.

18             MR. STARK:  I appreciate that, Your Honor.

19             THE COURT:  And that was clear in the order, I

20   think.

21             MR. STARK:  Well, but the parties themselves may

22   have consented to or conceded the point.  Whether Your Honor

23   had ruled that way, the concession still should be binding,

24   from an estoppel perspective.

25             But let's move onto the substantive levels, okay?

1    I think it's ripe, as a matter of law.  I wish it was

2    different.  I'm a guy who spends a lot of time dealing with

3    valuation issues, and I wish the law was such that we don't

4    have to take our debtor as we find them when we get to the

5    end of the case, that chapter 11 is not an event-driven

6    process, and that when we have trials at the end of cases,

7    that we have to pick the solvency or insolvency evaluation

8    of the enterprise at that particular point in time.

9            But that's not our law.  Our law is chapter 11 is

10    event-driven.  When you have a plan of reorganization or

11    liquidation presented at a particular point in time, then

12    you must then choose and present what your valuation thesis

13    is and present it to the Court with expert testimony and

14    other evidence.  That's the law.  And I'll add to that.

15    Courts don't rewrite plans that are before them simply

16    because some objector to the plan suggests an alternative

17    mechanic that might otherwise be more value accretive or

18    advancing.  Again, I wish that was the way the law worked,

19    certainly when I represent people at the bottom of the

20    capital structure.

21            But ripeness is a doctrine that's no more

22    available to those who are objecting to the actual import of

23    the words today than it is available in so many cases where

24    a subordinated creditor or a stockholder opposes a plan and

25    says -- and that plan will equitize debt but won't give

1  anything to stockholders and argue, well, why don't we wait

2  and see whether or not the debtors', the management's

3  projections as they're converted into a DCF valuation -- why

4  don't we wait and see whether or not that's too

5  conservative?  Why don't we wait a little while?  That

6  stockholder cannot rely upon that argument in any other case

7  no more so than Law Debenture and Oaktree can come before

8  this Court today and say, gee, why don't we just wait and

9  see whether or not the valuation is greater than what the

10 evidence otherwise suggests today, at the point in time

11 procedurally where we all agreed we'd show up with evidence

12 and render resolutions of these issues?

13          So I would suggest that Your Honor, on a

14 substantive basis, the way the law is supposed to work is

15 Law Debenture and Oaktree are supposed to come forward today

16 with evidence.  And we know how to do that with respect to

17 estate causes of action.  Judge Posner told us very specific

18 in *In Re: Polis* [ph] how one is supposed to present evidence

19 before a bankruptcy court in a confirmation hearing, valuing

20 an estate cause of action.  They could've done that.  We've

21 had lots of evidence today.  The idea that, well, we'll just

22 wait and see is not the mechanic that's before the Court, is

23 not the procedure that was ultimately put by stipulation of

24 the parties before the Court, and has not been proven.  The

25 issue is ripe.  The evidence fails.  That's determinative.

1          Any questions for me, Your Honor?

2          THE COURT:  No, thank you.

3          MR. BRADFORD:  Thank you, Your Honor.  David

4   Bradford, Jenner & Block on behalf of EGI-TRB.

5          Briefly, Your Honor, our subordination agreement

6   is governed by Delaware law.  The Delaware cases that we

7   have been able to find are consistent with the role of

8   explicitness.  They strictly construe subordination

9   agreements, and they reflect what is really a time-honored

10  rule through the application of the rule of explicitness

11  that holders of subordinated debt should not be surprised in

12  their expectations by results that are accomplished through

13  the application of the bankruptcy law that would be

14  inconsistent with expectations unless spelled out.  It would

15  be the expectation that post-petition interest is not

16  something that's going to be paid ahead of us unless, in

17  fact, the agreement spells that out.  Our agreement did not

18  spell that out.  It did not spell out.  It spoke of

19  subordination.  Beyond that stated, and that was limited, as

20  I spoke earlier, to the assets of the company under certain

21  circumstances.  So the expectations, we think, are clear and

22  should be enforced under either the rule of explicitness or

23  Delaware law.

24          Thank you, Your Honor.

25          THE COURT:  Thank you.

1          MR. BENDERNAGEL:  Your Honor, that concludes the

2    issue, which was described as a no-brainer.  Good luck on

3    that one.

4    (Laughter)

5          MR. BENDERNAGEL:  There are two procedural

6    matters that might be good to discuss.  One is I'm going to

7    hand up to Your Honor the scheduling order that the parties

8    have agreed to, with respect to the confirmation hearing.  I

9    can go over it now, or I can give it to you and you can read

10   it tonight, and we can go over it in the morning, but the

11   parties, I think, have essentially agreed.  And I can walk

12   you through it at either point in time.

13         THE COURT:  Let's take a look at it now, if

14   that's all right.  Thank you.

15         MR. BENDERNAGEL:  Your Honor, this document is

16   modeled on the same schedule that we have put together in

17   connection with the hearing last March and April, except for

18   it's a little bit more streamlined, simply because there was

19   not as big a need to get into more detail.

20         The -- if you take a look at page two of the

21   document, you'll see, starting in paragraph three, there's a

22   section on fact discovery that goes over to paragraph 12.

23   It essentially recites in paragraph three that initial

24   discovery requests, written requests will be March 9, which

25   is the end of this week, and then discovery -- fact

1  discovery will close on April 30.  The next few paragraphs

2  talk about, you know, request for admissions,

3  interrogatories, and how people are to respond to document

4  requests.  There's nothing exceptional there, and

5  everybody's in agreement.  March 30, there's a date to

6  identify witnesses for the hearing, and depositions may

7  commence on April 4.  and to facilitate people's ability to

8  assess what these depositions are about, the party that's

9  seeking a deposition of a witness who hasn't been identified

10 as somebody that's going to testify at the hearing has to

11 explain why they want the witness, so that that party can

12 determine whether, in fact, they should object, and that's

13 been agreed to.  The rest of the paragraphs in this section

14 are unexceptional.

15       The -- starting on paragraph 13, there's a

16 description of expert discovery, which is to close on April

17 30, which is consistent with your January 24 order.  The

18 next two paragraphs identify when the expert witnesses will

19 be identified.  The DCL plan proponents have agreed that

20 they'll identify on the 26th.  Everybody else is the end of

21 the week, on the 30th.  The initial reports, with one

22 exception I'll come to, are due on April 6.  Rebuttal

23 reports are due on April 20.

24       And then, this paragraph 17 I think is designed

25 to address the situation that occurred the last time, with

1  respect to valuation, where there was never a complete

2  closure in the expert reports, and the idea here is that

3  parties that want to talk about valuation, other than the

4  DCL plan proponents don't have to submit their initial

5  report until a little bit later.  They don't even have to

6  identify their witness until April 12, and their report's

7  due April 16.  And then a rebuttal report by the DCL plan

8  proponents would be on April 23.  That's been negotiated and

9  agreed to.  The expert depositions commence on the 23rd, and

10  obviously, they have to be finished by April 30.

11          It's really unclear, at this juncture, whether

12  there's -- that there's going to be -- there are more

13  procedures than there are going to be witnesses in this

14  regard, but you know, we're prepared for that.

15          THE COURT:  Well, I hope so.  And I guess up

16  until now, I haven't gotten the impression that anyone was

17  going to ask for a new decision by the Court on enterprise

18  value.

19          MR. BENDERNAGEL:  Well, if you take a look at

20  what we filed last week in terms of this, we are not asking

21  you to essentially relook at the valuation issue, but we are

22  updating the valuation based on that methodology, because

23  people have to make elections in connection with their

24  selection of a strip versus cash.  And what the debtors have

25  done is taken the approach that you approved and essentially

1    updated it with new financial data and the like, and that is

2    in the disclosure statement that was filed the other day,

3    the indication we were doing that.  And I presume that

4    people might take issue with that.  Whether, in fact, people

5    are going to go further and say that, oh, no, no; it has to

6    be more than an update.  We need a new valuation.  We would

7    certainly oppose that.  That's not our view.  We think that

8    that -- well, the case is what the valuation was determined,

9    but we did feel, for purposes of allowing people to make

10   selections, that taking the methodology that you utilized

11   and updating it to show where we are now as opposed to

12   before would be something that was appropriate to do, and

13   that's what we're prepared to do.  But that's how that came

14   about.

15          The section that begins in paragraph 20 is really

16   related to briefs.  The only thing that's new in that

17   section is paragraph 22, which basically says that people

18   can preserve the arguments they've previously made, not by

19   rewriting them, but by just referring to the fact that

20   they've previously made those arguments.  And I think

21   there's agreement on that.

22          And there's some pre-trial submission

23   information, starting on paragraph 23, with respect to

24   deposition excerpts and exhibits, Motions in Limine, and the

25   like.  We've asked for a pre-trial hearing on May 15, at a

1    time to be determined.  Obviously, before the order gets

2    signed, that ought to be filled in or eliminated, whichever

3    you want to do.

4              THE COURT:  Well --

5              MR. BENDERNAGEL:  I think there's a desire to do

6    it on the 15th, because people are traveling, and they'd

7    rather just come in the day before.

8              THE COURT:  I have time on the 15th, say 2:00 in

9    the afternoon?

10             MR. BENDERNAGEL:  So 2:00 p.m. is what we would

11   put in there, Your Honor?

12             THE COURT:  Yes.

13             MR. BENDERNAGEL:  Okay.  And then the

14   miscellaneous, there's nothing particularly unusual there

15   except for paragraph 30.  You know, one does indicate that

16   parties can come back in if they come to some conclusion

17   that something needs to be adjusted and the like, and that's

18   standard procedure we had the last time around.

19             Your Honor, I'll stand aside, if others want to

20   comment, but we'd ask that this be -- if it -- if you find

21   it right, you'd -- you sign it, so that we can move forward

22   on that basis.

23             THE COURT:  All right.  Does anyone else wish to

24   be heard with respect to the supplemental -- proposed

25   supplemental scheduling order?

1          MR. ZENSKY:  Yes, very briefly, Your Honor.

2   David Zensky, Akin Gump Strauss Hauer & Feld, for Aurelius

3   Capital Management.

4          Just quickly, Mr. Bendernagel directed your

5   attention to paragraph nine of the proposed order, which

6   references the process of providing a short statement of the

7   topics that you might want to discuss with a witness if you

8   notice a deposition and it's someone who's not on the list

9   of presumptive trial witnesses.

10         We also have, in paragraph 12, Your Honor,

11  incorporated the procedure for resolving discovery disputes

12  in an expedited manner.  That was in the January 24 order.

13  And Your Honor may remember that that order provides that

14  the party seeking the discovery writes to you first.  I rise

15  only to say that the inclusion of these provisions is not

16  intended to make a substantive alteration in the law

17  governing discovery.  It's not intended to provide any

18  greater or lesser burden on any party in justifying

19  discovery or opposing discovery than background law would

20  apply.  This is simply for sake of good process.

21         THE COURT:  Thank you.  Does anyone else wish to

22  be heard?

23              (No audible response)

24         THE COURT:  I hear no further response.  Mr.

25  Bendernagel?

1          MR. BENDERNAGEL:  We ask that you sign the order,

2   Your Honor, if that'd be appropriate.

3          THE COURT:  Did you say there were two procedural

4   issues that you would talk about?

5          MR. BENDERNAGEL:  Yeah, the second procedural

6   issue is the following.  There were some people that asked

7   me if it would be helpful for you, either today or tomorrow,

8   to elaborate a little bit more on the statements you made

9   this morning in terms of what you had in mind in terms of

10  supplemental briefing, and I think they wanted to know when

11  the 48 hours starts.  I assume that meant when the hearing

12  ends.  And --

13         THE COURT:  That's correct.

14         MR. BENDERNAGEL:  -- secondly, they wondered if

15  you were going to impose a page limit and by their tone --

16         THE COURT:  Absolutely, I'm going to impose --

17         MR. BENDERNAGEL:  -- I think they wanted you to

18  do that, so --

19         THE COURT:  Yeah.

20         MR. BENDERNAGEL:  -- they were wondering what

21  that page limit would be.  And they -- the suggestion was it

22  should be on an issue basis rather than a party basis, but

23  there's certainly a consensus that there ought to be a page

24  limit, for fear that you'd just open the floodgates.

25         THE COURT:  No, it's -- I thought I mentioned

1  maybe two pages, and I wasn't kidding, but certainly a

2  number of pages that I could count on one hand.

3          MR. BENDERNAGEL:  Is that in total or just for an

4  issue or -- and I'm not advocating a position.  I'm simply

5  asking, because you know, obviously, some parties have --

6  are sort of one-issue parties, whereas others are on

7  multiple issues, and --

8          THE COURT:  Well --

9          MR. BENDERNAGEL:  -- it wouldn't be fair to have

10 one real --

11         THE COURT:  I was thinking by party, but let me

12 think about it overnight.

13         MR. BENDERNAGEL:  Thank you, Your Honor.  That's

14 all we have.

15         THE COURT:  All right.  Thank you all very much.

16 That concludes our session today.  Court will stand

17 adjourned.

18   (Whereupon, at 4:54 p.m., the hearing was adjourned.)

19                    CERTIFICATION

20         I certify that the foregoing is a correct

21 transcript from the electronic sound recording of the

22 proceedings in the above-entitled matter.

23

24 _____          6 March 2012
25 Shelley M. Kohr, Transcriber                  Date
26

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**10(q)'s**(1) 96:4
**10(q)s**(1) 94:23
**10-minute**(1) 68:20
**8(k)s**(1) 172:15
**a.m**(4) 1:14 10:2 68:22 68:22
**abbott**(1) 205:2
**ability**(3) 24:20 63:17 218:7
**able**(11) 12:16 17:13 32:6 90:19 102:9
147:19 148:22 150:4 196:11 196:22 216:7

**about**(111) 11:2 11:5 11:15 11:24 12:7
13:11 13:15 15:12 15:19 15:24 16:6 16:19
18:15 19:6 20:14 22:19 27:16 29:24 30:19
39:13 40:15 41:9 41:10 44:21 51:13 53:19
58:3 61:6 61:21 67:19 74:5 80:6 81:10
81:19 82:21 90:17 90:18 91:5 94:6 95:25
96:6 96:8 108:21 110:10 114:2 114:5
115:2 115:19 117:22 118:6 121:6 121:19
123:21 125:18 127:7 134:8 135:4 137:2
138:6 142:6 143:3 146:6 147:14 148:2
148:12 150:14 153:13 156:20 157:1 158:22
160:25 161:19 162:10 162:12 169:12
170:18 180:1 182:19 184:16 185:25 187:12
187:19 190:13 190:21 191:13 191:14
191:14 192:8 192:14 194:10 194:11 195:12
198:15 200:22 200:24 201:6 201:23 202:9
204:13 205:5 206:3 206:4 206:21 207:4
208:6 218:2 218:8 219:3 220:14 223:4
224:12

**above**(1) 33:16
**above-entitled**(1) 224:22
**abrogated**(2) 204:15 207:15
**absence**(3) 52:4 96:4 117:24
**absent**(4) 51:7 64:22 66:10 76:3
**absolutely**(2) 173:2 223:16
**absurd**(1) 75:24
**accept**(2) 91:16 110:6
**accepted**(7) 14:11 15:11 89:7 89:14
143:25 154:10 156:2

**accepting**(1) 95:2
**accepts**(1) 58:14
**access**(6) 53:1 108:23 109:19 140:25 141:2
174:14

**accessible**(2) 18:1 104:20
**accompanied**(1) 117:20
**accomplish**(1) 17:15
**accomplished**(2) 71:14 216:12
**accord**(1) 118:23
**accordance**(6) 32:23 141:15 143:17 143:21
181:8 181:13

**according**(1) 208:12
**accords**(1) 206:23
**account**(16) 64:21 113:14 126:4 128:8
128:13 128:14 134:5 140:2 143:1 152:16
166:10 167:22 183:5 184:1 184:3 184:12

**accountant**(12) 112:24 113:11 113:14
113:15 113:16 113:17 147:23 147:25
152:12 152:18 152:25 153:12

**accounted**(6) 78:8 129:9 138:23 143:7
148:2 148:5

**accounting**(41) 14:8 14:14 14:15 95:3
105:1 105:6 105:11 108:9 108:11 108:25
109:10 109:11 109:13 112:11 112:20
112:22 112:25 114:8 115:21 120:5 122:10
122:22 129:5 139:24 139:25 142:25 144:1
144:3 144:7 152:6 152:22 153:15 160:2
160:17 161:15 169:12 171:8 181:17 181:19
188:4 188:4

**accounts**(30) 105:3 108:21 109:12 110:25
121:14 122:21 124:5 124:14 124:15 124:17
126:16 127:7 127:21 128:2 128:4 128:16
128:18 133:7 133:9 133:20 133:23 134:1
134:3 134:8 139:4 143:17 165:21 169:22
170:17 188:6

**accretive**(1) 214:17
**accrual**(2) 173:18 173:18
**accruals**(2) 187:19 188:7
**accrue**(1) 143:13
**accrued**(78) 81:25 82:5 82:9 82:13 82:16
82:23 92:16 92:23 93:4 108:16 109:10
109:16 110:25 113:12 126:17 127:7 128:7
128:14 128:19 128:19 128:20 128:21
128:22 131:11 131:15 131:16 131:16
132:20 132:23 133:1 133:5 133:7 133:13
143:3 144:8 144:8 144:10 144:12 144:13
144:14 144:15 144:18 149:15 149:18
169:22 170:2 170:5 170:6 170:22 171:2
171:6 171:10 171:14 171:14 171:20 171:24
172:2 173:18 174:6 174:6 185:25 186:6
186:11 186:17 186:19 187:2 187:6 187:7
187:7 187:9 187:12 188:13 188:16 188:19
189:3 197:23 197:25 208:9

**accrues**(1) 203:8
**accruing**(1) 186:21
**accumulated**(1) 188:10
**accurate**(1) 110:23
**acknowledge**(1) 100:4
**acknowledged**(3) 83:21 83:22 100:7
**acknowledges**(1) 63:9
**acknowledging**(1) 99:24
**acknowledgment**(1) 62:20
**acquired**(2) 139:15 161:9
**acquisition**(1) 139:18
**across**(1) 30:25
**act**(3) 51:1 51:2 51:2
**acted**(1) 19:12
**action**(31) 25:16 31:24 32:23 38:9 38:10
40:21 41:20 43:22 44:7 45:3 45:7 45:8
45:9 45:11 45:12 45:16 45:16 45:17 45:18
45:20 45:24 45:25 46:1 46:2 46:12 50:15
50:15 50:18 50:19 215:17 215:20

**actions**(11) 32:13 32:19 43:7 43:17 43:19
45:14 46:20 50:11 53:21 59:14 60:24

**actively**(1) 33:13
**activities**(1) 17:12
**actual**(10) 84:24 84:24 109:21 156:24
157:2 160:19 209:18 210:17 212:16 214:22

**actually**(58) 24:8 24:9 25:8 31:2 35:24
37:1 38:2 38:6 38:24 39:17 39:21 40:1
76:11 80:7 84:23 85:1 85:2 85:5 89:21
91:19 102:10 104:15 104:17 105:14 105:19
107:2 107:25 108:9 109:21 112:21 113:11
113:17 125:12 133:1 136:13 141:11 147:11
156:19 158:11 168:11 169:12 174:22
175:4 177:24 178:18 179:24 179:25 180:2
189:11 190:25 198:24 200:1 210:17 211:3
211:8 212:6 212:23 212:23

**actuarial**(2) 129:10 141:4
**actuarially**(1) 188:7
**actuaries**(1) 134:24
**adam**(1) 2:12
**add**(6) 87:24 103:1 112:17 151:7 187:22
214:14

**add-on**(1) 97:24
**added**(3) 112:9 175:23 177:1
**adding**(1) 188:1
**addition**(2) 103:2 104:23
**additional**(5) 12:8 16:3 16:3 18:14 195:19
**additionally**(1) 49:17

**address**(20) 14:14 27:25 49:6 53:15 53:24
66:6 79:2 106:5 111:2 118:1 149:8 154:11
161:24 165:13 167:7 174:16 175:18 176:2
204:8 218:25

**addressed**(7) 27:25 51:21 64:7 67:5 108:5
166:4 166:4

**addresses**(2) 111:2 178:18
**addressing**(2) 107:6 178:24
**adjourned**(2) 224:17 224:18
**adjudicated**(2) 16:17 221:17
**adjusting**(1) 171:11
**adler**(1) 3:8
**administered**(1) 1:5
**admissibility**(8) 11:2 15:13 102:13 107:7
110:7 117:19 118:24 154:11

**admission**(9) 22:7 35:1 69:6 91:12 91:24
91:25 103:21 158:19 159:3

**admissions**(1) 218:2
**admit**(4) 92:3 105:20 113:23 116:22
**admitted**(21) 15:2 22:3 22:5 22:9 22:11
35:3 35:5 69:8 103:24 111:22 111:23
117:16 117:17 119:2 145:24 156:12 157:3
159:7 159:9 166:8 193:20

**ado**(1) 40:14
**adopt**(3) 26:21 202:5 211:16
**adopted**(4) 182:13 185:4 210:22 211:3
**advance**(2) 14:2 29:16
**advanced**(1) 108:10
**advancing**(1) 214:18
**advantage**(1) 38:14
**adversaries**(2) 74:21 79:3
**adverse**(1) 206:9
**advise**(1) 178:25
**advisory**(2) 119:19 207:3
**advocated**(1) 99:12
**advocating**(2) 16:23 224:4
**affirmative**(5) 88:22 89:3 89:10 89:11 93:1
**affix**(1) 174:19
**affixed**(1) 166:25
**afford**(1) 30:17
**afloat**(1) 98:21
**afoul**(1) 162:1
**after**(12) 33:19 71:8 95:15 97:10 115:24
131:1 163:16 194:8 196:9 201:24 202:2
203:9

**afternoon**(13) 13:20 102:3 102:4 104:10
104:11 141:23 141:24 145:15 177:14
191:11 201:15 207:12 221:9

**afterwards**(1) 92:19
**again**(57) 10:6 16:16 26:1 30:14 30:21
31:3 33:7 33:18 34:1 37:17 37:20 38:12
38:19 38:20 42:22 47:5 57:13 57:22 58:1
58:25 59:2 59:4 59:25 60:9 61:9 62:10
64:14 74:7 80:4 81:14 82:20 83:4 90:1
90:7 97:21 98:1 100:17 130:18 137:9
152:7 158:20 170:14 177:14 179:20 179:22
180:1 180:9 182:18 188:20 197:19 198:13
199:2 199:3 206:14 207:10 209:15 214:18

**against**(10) 40:9 46:12 60:8 60:21 70:15
73:7 89:15 91:12 120:22 203:11

**agency**(2) 205:4 205:6
**agent**(2) 76:9 98:15
**aggregating**(2) 136:24 137:2
**aggressively**(1) 32:7
**ago**(2) 38:1 178:19
**agree**(26) 27:6 27:16 40:13 42:24 43:3
51:8 54:1 84:9 86:20 92:13 100:22 101:1
112:6 114:22 115:15 144:6 151:14 151:15
160:4 162:6 175:9 185:12 192:1 196:7
196:20 210:13

**agreeable**(2) 20:17 196:16

**agreed**(25) 70:25 71:2 83:22 87:4 103:1
112:15 135:15 135:16 138:7 164:2 164:23
168:6 174:25 190:14 201:18 203:6 210:6
213:13 213:14 215:11 217:8 217:11 218:13
218:19 219:9

**agreeing**(2) 12:8 33:25
**agreement**(262) 3:12 15:3 16:25 18:16
20:15 26:16 36:3 36:12 36:17 36:20 36:24
37:4 37:6 38:1 38:3 38:8 38:22 38:23
39:20 39:24 40:2 40:24 41:12 41:23 42:2
42:10 42:17 44:5 44:10 46:16 46:18 49:10
49:11 52:8 52:9 52:22 53:7 53:11 53:11
53:14 53:22 53:23 54:6 54:16 54:18 55:9
55:10 55:14 56:19 56:21 56:22 57:3 57:13
57:16 57:23 58:8 58:19 58:20 58:25 60:3
60:12 61:2 61:15 61:24 62:3 62:5 62:6
62:12 62:14 62:18 62:22 62:24 62:25 63:1
63:2 63:4 63:8 63:14 63:15 63:24 64:4
64:7 64:9 64:20 64:20 64:24 65:2 65:3
65:9 65:10 65:25 66:5 66:15 67:25 69:21
69:24 70:9 70:12 70:20 71:4 71:5 71:6
71:9 71:12 71:15 71:17 71:18 71:19 71:19
71:20 71:21 71:24 72:4 72:6 72:8 72:10
73:11 73:21 73:22 73:23 74:3 74:4 74:7
74:9 74:11 74:12 74:13 74:14 74:15 74:18
74:20 75:3 75:6 75:9 75:11 75:15 75:18 75:19
76:3 76:5 76:6 76:8 76:9 76:13 76:17
76:19 76:24 77:5 77:8 77:18 78:20 78:24
79:6 79:14 79:17 79:22 80:1 80:5 81:11
81:20 82:15 82:15 82:19 83:1 83:20 84:1
84:15 85:1 86:19 87:7 87:8 87:15 87:23
88:2 88:8 88:8 88:11 88:14 88:16 88:16
88:22 89:1 89:6 89:9 89:16 89:21 89:22
90:8 90:11 90:24 90:24 91:5 91:7 92:13
96:24 97:4 97:7 97:8 97:9 97:10 97:11
97:13 98:3 98:9 98:17 98:18 98:18 98:19
98:22 100:21 100:24 102:13 103:10 105:2
109:4 109:9 140:10 149:10 150:8 156:17
156:23 156:24 157:12 157:17 158:24 160:5
162:10 162:18 163:3 168:5 168:6 168:9
179:1 186:13 188:18 189:9 189:10 189:11
189:15 189:17 189:17 189:18 189:22
190:19 191:2 192:1 193:10 197:9 197:12
197:18 197:18 200:14 200:23 202:20
207:20 208:16 208:17 211:19 216:5 216:17
216:17 218:5 220:21

**agreement."**(1) 75:10
**agreements**(41) 15:9 43:4 47:25 49:9
53:25 54:2 54:4 54:11 65:8 71:22 71:23
71:24 74:1 74:16 74:16 75:4 76:5 76:10
78:14 82:17 83:24 87:22 88:9 101:2
112:16 116:5 136:13 146:11 146:18 146:24
147:11 151:24 152:2 157:2 158:23 158:25
162:3 162:5 175:10 208:12 216:9

**agreement"**(1) 97:7
**agrees**(5) 62:23 63:9 63:10 73:12 105:16
**ahead**(3) 19:5 130:9 216:16
**akin**(6) 2:3 34 67:13 99:8 99:18 201:16
**alan**(1) 6:30
**alerted**(1) 38:4
**aligned**(1) 79:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **all**(163) 10:21  10:21  10:23  10:25  12:2 12:3  12:23  13:23  14:18  14:25  15:9  15:9 17:9  17:25  18:7  23:3  23:18  23:19  27:19 28:2  29:8  33:7  35:13  35:16  39:8  40:12 42:20  44:14  46:6  46:22  47:7  47:20  48:5 48:23  53:5  53:12  53:13  53:14  55:22  56:9 56:18  56:19  56:20  61:9  62:19  66:17  66:19 69:12  70:10  72:14  73:3  73:5  74:19  76:2 77:11  78:13  80:5  81:21  83:3  87:15  88:9 89:8  90:25  90:25  91:1  91:2  91:7  92:25 95:6  95:10  95:15  95:25  96:10  102:2  103:4 104:9  106:19  109:1  112:10  112:15  114:1 114:14  114:25  115:2  117:3  118:18  120:22 122:18  124:4  125:3  130:1  130:9  130:12 130:23  131:19  133:10  144:18  145:14 149:12  150:1  151:6  151:9  151:23  151:25 151:25  153:13  153:23  155:4  155:15  155:17 155:18  156:25  157:10  159:2  159:16 159:22  161:11  161:17  162:7  163:14  164:24 168:13  168:20  169:15  170:16  173:6 179:11  180:14  182:7  185:23  189:16  189:22 190:1  191:15  193:7  193:9  196:15  196:19 196:23  196:25  198:23  199:16  200:23 201:14  202:22  203:21  205:1  205:8  207:6 208:9  209:8  210:10  211:5  213:12  213:13 213:13  213:14  215:11  217:14  221:23 224:14  224:15  224:15<br><br>**allinson**(1) 2:4<br>**allocated**(1) 55:6<br>**allocation**(13) 20:16  22:16  22:20  24:7  29:8 34:1  35:11  83:10  120:5  190:23  191:1 196:9  210:7<br><br>**allow**(2) 31:4  96:13<br>**allowed**(13) 17:21  190:9  190:10  203:10 203:13  203:22  203:23  208:22  209:1  209:1 209:6  212:5  212:7<br><br>**allowing**(3) 16:17  162:11  220:9<br>**alluded**(1) 49:7<br>**almost**(3) 25:8  97:10  193:25<br>**along**(1) 124:21<br>**already**(6) 24:11  25:12  76:19  119:1  183:6 184:14<br><br>**also**(45) 11:12  11:17  16:17  22:15  23:21 25:21  27:13  28:12  35:11  49:13  52:9  60:19 61:23  65:9  66:3  68:7  71:11  73:17  74:4 74:12  76:14  78:7  78:13  80:5  90:9  92:22 105:21  108:17  109:17  120:23  121:14 137:17  161:8  163:24  168:16  171:14  172:23 178:14  179:25  186:19  187:3  190:7  194:6 203:20  222:10<br><br>**alteration**(1) 222:16<br>**alternative**(3) 8:22  8:23  214:16<br>**although**(7) 11:15  40:9  67:14  70:8  99:11 133:2  185:11<br><br>**altogether**(1) 33:8<br>**alvarez**(7) 6:38  119:14  119:15  119:17 119:21  120:16  121:1<br><br>**always**(7) 92:9  92:24  92:25  92:25  93:2 117:23  210:25<br><br>**amalgamated**(1) 6:29<br>**amanda**(1) 3:44<br>**ambiguities**(1) 116:1<br>**ambiguity**(3) 48:4  98:24  162:12<br>**ambiguous**(4) 70:9  116:1  162:10  203:5<br>**america**(2) 5:43  5:43<br>**among**(6) 25:16  66:23  139:19  152:2 172:10  202:18<br><br>**amongst**(1) 163:1 | | **amount**(32) 17:21  41:4  45:20  45:25  70:16 73:20  78:3  78:5  86:12  86:12  95:13  123:24 135:15  135:16  135:17  136:8  137:10  137:25 138:1  138:6  138:6  164:7  167:25  168:6 168:11  176:14  190:12  190:20  194:15 194:19  196:10  203:23<br><br>**amounts**(17) 19:1  20:8  22:18  72:23  73:10 77:1  77:2  77:5  78:7  88:19  88:23  97:22 135:14  137:11  137:12  140:18  188:13<br><br>**amply**(2) 70:11  108:5<br>**analogy**(1) 65:17<br>**analysis**(4) 55:14  56:10  148:22  179:2<br>**anchor**(1) 105:10<br>**and**(301) 4:47  6:10  8:32  10:21  10:22 10:25  10:26  11:3  11:4  11:7  11:12  11:14 11:22  12:3  12:6  12:6  12:9  13:6  13:13 13:14  13:21  14:4  14:4  14:9  14:14  14:22 15:3  15:6  15:8  15:11  15:20  16:2  16:5  16:9 16:10  16:12  16:15  16:21  17:1  17:4  17:7 17:19  17:21  18:14  18:17  18:25  19:1  19:2 19:6  19:6  19:7  19:12  19:15  20:1  20:14 20:17  20:20  21:2  21:4  21:6  21:7  21:15 21:22  21:25  22:23  22:25  23:1  23:7  23:7 23:15  23:16  23:16  23:17  23:22  23:25  24:1 24:5  24:6  24:14  24:14  24:19  24:24  25:2 25:3  25:7  25:17  25:24  25:25  26:4  26:5 26:8  26:9  26:9  26:11  26:15  26:18  26:19 26:22  26:22  27:5  27:6  27:14  27:17  27:25 28:5  28:6  28:7  28:7  28:8  28:10  28:21 28:23  28:25  28:25  29:2  29:2  29:4  29:4 29:13  29:16  29:23  29:24  30:3  30:7  30:8 30:9  30:13  30:17  30:17  30:18  30:19  30:21 31:2  31:3  31:8  31:10  31:25  32:2  32:4 32:12  32:11  32:12  32:12  32:13  32:14  32:15 32:24  32:24  33:3  33:8  33:8  33:13  33:15 33:18  34:8  34:21  34:23  35:10  35:14  35:15 36:7  36:9  36:12  36:16  36:17  36:21  36:25 37:2  37:6  37:9  37:11  37:18  37:23  37:23 38:1  38:4  38:6  38:17  38:19  38:22 39:2  39:8  39:8  39:11  39:12  39:14  39:20 40:8  40:13  40:14  40:15  40:19  40:22  40:24 41:1  41:4  41:10  41:18  41:24  41:24  42:4 42:9  42:9  42:11  42:12  42:13  42:15  42:17 43:1  43:2  43:5  43:8  43:12  43:16  43:20 43:25  44:1  44:5  44:6  44:17  44:24  44:25 45:4  45:12  45:15  45:20  45:21  46:2  46:5 46:15  46:16  46:17  47:2  47:2  47:4  47:9 47:13  47:16  47:16  47:17  47:20  47:21 47:22  47:23  47:24  48:3  48:11  48:18  48:24 49:3  49:7  49:10  49:12  49:19  50:2  50:9 50:12  50:13  50:19  50:20  50:24  51:5  51:8 51:23  52:5  52:16  52:16  52:19  52:23  53:2 53:5  53:6  53:8  53:13  53:14  53:22  53:24 54:7  54:8  54:9  54:10  54:10  54:12  54:17 54:19  54:21  54:22  54:23  55:3  55:4  55:8 55:11  55:14  55:15  55:18  55:19  55:22 55:22  55:22  55:23 | | **and**(301) 56:4  56:7  56:10  56:12  56:15 56:17  56:21  57:4  57:4  57:6  57:12  57:16 57:20  57:24  58:8  58:11  58:12  58:13  58:19 58:23  58:25  59:2  59:9  59:13  60:2  60:2 60:4  60:6  60:9  60:10  60:13  60:14  60:18 60:19  61:5  61:9  61:9  61:17  61:18  62:3 62:6  62:9  62:18  62:19  62:24  63:1  63:5 63:6  63:7  63:9  63:9  63:17  63:23  64:14 64:17  64:22  64:24  65:2  65:6  65:10  65:15 66:9  66:10  66:21  67:16  67:19  67:22  68:1 68:9  69:1  69:3  69:21  69:23  70:2  70:4 70:6  70:7  70:10  70:11  70:16  70:20  71:1 71:14  71:14  71:15  71:18  71:20  71:21 71:25  72:6  72:13  72:17  72:20  72:22  72:23 73:4  73:5  73:6  73:13  73:17  73:22  74:11 74:12  74:15  75:4  75:11  75:18  75:21  75:23 75:25  76:1  76:2  76:7  76:7  76:11  76:16 76:18  76:21  76:24  77:6  77:8  77:13  77:17 77:23  78:12  78:18  79:11  79:15  79:24  80:3 80:6  80:8  80:9  80:16  80:25  81:4  81:5 81:17  81:22  81:25  82:7  82:12  82:13  82:20 82:22  83:5  83:9  83:10  83:12  83:12  83:13 83:23  83:16  83:16  83:21  83:24  84:4  84:9 84:12  84:13  84:14  84:20  84:24  85:4  85:6 85:10  85:19  86:1  86:7  86:7  86:8  86:9 86:14  86:14  86:16  86:17  86:19  86:20 86:22  86:23  87:2  87:9  87:10  87:17  87:17 87:18  87:20  88:1  88:10  88:17  89:2  89:10 89:18  89:18  89:20  90:4  90:12  90:19  90:20 91:7  91:11  91:13  91:15  91:16  91:17  91:20 91:21  91:25  92:2  92:4  92:14  92:15  93:2 93:7  93:13  93:13  93:16  93:17  93:23  93:25 94:3  94:4  94:11  94:11  94:19  94:23  94:23 95:1  95:7  95:15  95:17  95:19  95:25  96:3 96:3  96:4  96:10  96:13  96:15  96:24  97:1 97:8  97:10  97:15  97:17  97:19  97:22  97:22 97:22  97:24  98:2  98:2  98:4  98:4  98:7 98:8  98:8  98:11  98:12  98:16  98:17  98:20 99:12  99:13  99:16  99:18  99:21  99:25 100:1  100:1  100:3  100:4  100:5  100:9 100:20  100:21  101:2  101:3  101:10  101:12 101:13  101:16  102:2  102:6  102:11  102:15 102:15  102:17  103:1  103:5  103:18  103:25 104:4  104:7  104:12  104:15  104:16  104:19 104:21  104:23  105:3 | | **and**(301) 105:4  105:8  105:9  105:14  105:15 105:15  105:19  105:21  105:25  106:2  106:4 106:8  106:9  106:13  106:25  106:25  107:10 107:15  107:18  107:20  107:21  107:22 107:22  107:24  107:24  108:1  108:1  108:2 108:11  108:12  108:13  108:15  108:16 108:18  108:23  108:24  109:2  109:3  109:3 109:17  109:18  109:20  109:23  109:24 110:11  110:14  110:23  110:24  110:25  111:1 111:1  111:13  111:14  112:8  112:10  112:11 112:11  112:15  112:16  112:18  112:21 112:22  113:4  113:7  113:8  113:14  113:17 113:20  114:12  114:25  115:8  115:14  115:17 115:19  115:23  116:5  116:8  116:9  116:16 116:13  116:14  117:3  117:6  117:6  117:20 117:24  118:15  118:18  118:22  119:2  119:5 119:15  119:17  119:24  120:3  120:5  120:10 120:13  120:19  120:22  121:2  121:5  121:9 121:9  121:13  121:14  121:17  122:2  122:2 122:3  122:4  122:8  122:12  122:15  122:18 122:23  122:24  123:1  123:4  123:10  123:12 123:12  123:15  123:20  123:23  123:24  124:2 124:5  124:7  124:11  124:17  124:20  124:24 124:25  125:16  125:16  125:20  125:21 125:24  126:3  126:7  126:11  126:17  126:25 127:1  127:8  127:9  127:13  127:22  127:22 127:23  128:13  128:16  128:21  128:24 128:24  128:25  129:7  129:8  129:8  129:14 129:14  129:14  129:20  129:21  129:22  130:9 131:8  131:10  132:4  132:5  132:5  132:10 132:19  132:23  133:6  133:7  133:10  133:10 133:12  133:17  133:18  133:23  133:24 134:16  134:19  134:22  134:23  134:25  135:2 135:8  135:13  135:16  135:17  135:18 135:24  135:25  136:12  136:19  136:21 136:22  136:24  137:1  137:1  137:2  137:11 138:6  138:16  138:20  138:25  139:2  139:5 139:7  139:12  139:18  140:2  140:19  140:21 141:3  141:15  142:3  142:10  142:14  142:18 142:19  143:1  143:5  143:12  143:12  143:16 143:20  143:23  143:25  144:3  144:8  145:12 145:18  145:23  145:25  146:2  146:14  146:15 146:19  146:22  146:25  147:6  147:11 147:12  147:13  147:17  148:5  148:8  148:15 148:18  148:24  148:25  149:2  149:7  149:8 149:14  149:19  149:24  149:24  149:25  150:2 150:2  150:14  150:15  150:15  150:16 150:25  151:19  152:5  152:6  152:9  152:14 152:25  153:1  153:3  153:13  153:14  153:15 153:17  154:3  154:4  154:11  155:1  155:12 156:2  156:8  156:14  156:15  156:18  156:19 156:22  156:22  156:24  157:1  157:2  157:4 157:4 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 157:12 157:16 157:17 157:18 157:19 157:22 158:1 158:3 158:9 158:16 158:21 158:23 158:24 159:17 159:23 160:6 160:7 160:8 160:13 160:18 160:19 160:21 161:13 161:14 161:15 161:18 161:22 162:1 162:4 162:9 162:13 162:14 162:15 162:15 162:17 162:22 162:23 163:3 163:4 163:8 163:11 163:12 163:12 163:13 163:15 163:19 164:2 164:3 164:7 164:7 164:12 164:13 164:14 164:17 164:20 165:7 165:9 165:10 165:13 165:16 165:17 165:19 166:1 166:2 166:3 166:3 166:8 166:10 166:19 166:22 166:24 167:1 167:3 167:9 167:12 167:13 167:15 167:23 167:23 167:24 167:25 168:1 168:2 168:3 168:8 168:13 168:14 168:16 168:21 168:21 168:24 168:25 169:1 169:5 169:7 169:8 169:9 169:15 169:22 169:25 170:2 170:4 170:5 170:5 170:11 170:22 170:23 170:24 171:4 171:5 171:9 171:16 171:20 171:22 172:1 172:8 172:9 172:9 172:10 172:15 172:17 172:21 172:22 172:23 172:23 172:25 173:11 173:12 173:14 173:17 173:23 174:3 174:6 174:10 174:14 174:16 174:18 174:19 175:5 175:7 175:11 175:17 176:3 176:3 176:4 176:8 176:12 176:13 176:14 176:15 176:16 176:17 176:23 177:3 177:3 177:7 177:15 177:19 177:22 177:22 178:2 178:3 178:6 178:9 178:10 178:15 178:17 178:25 179:5 179:14 179:14 179:14 180:1 180:2 180:4 180:4 180:5 180:11 180:15 180:18 180:20 180:23 181:2 181:5 181:6 181:7 181:9 181:13 181:18 181:20 181:24 182:10 182:12 183:4 183:12 183:14 183:15 183:18 183:19 184:3 184:6 184:7 184:9 184:13 184:15 184:16 184:18 184:20 184:22 184:22 184:24 185:7 185:14 185:14 185:16 185:18 185:18 185:19 185:19 185:22 185:24 186:4 186:6 186:15 186:15 186:17 186:21 186:25 186:25 187:3 187:6 187:8 187:10 187:11 187:14 187:16 187:17 187:18 187:20 187:20 187:24 187:25 187:25 188:6 188:14 188:21 188:24 188:25 189:2 189:4 189:7 189:9 189:17 189:20 189:20 189:22 189:25 189:25 190:2 190:3 190:4 190:6 190:8 190:9 190:14 190:21 191:7 191:18 191:23 192:4 192:16 192:21 193:13 193:15 193:15 193:19 194:1 194:2 194:4 194:6 194:7 194:9 194:10 194:14 194:15 195:2 195:4 195:6 195:9 195:12 195:15 195:15 195:17 195:21 196:3 196:11 196:12 | **and**(165) 196:22 196:23 197:9 197:13 197:18 197:20 198:4 198:12 198:16 198:18 198:22 199:3 199:4 199:8 199:10 199:10 199:14 199:15 199:19 199:25 200:2 200:23 200:23 201:6 201:17 201:18 201:23 201:24 202:4 202:7 202:9 202:12 202:23 202:25 203:3 203:6 203:7 203:11 203:14 204:2 204:2 204:5 204:15 204:16 204:19 204:21 205:3 205:3 205:5 205:7 205:8 205:8 205:9 205:11 205:15 205:17 205:19 205:25 206:5 206:9 206:10 206:14 206:19 207:1 207:2 207:4 207:12 207:16 208:3 208:4 208:12 208:23 209:7 209:16 209:20 209:25 210:2 210:3 210:13 210:14 210:15 210:15 210:19 210:19 210:20 210:22 211:5 211:6 211:13 211:14 211:24 212:3 212:6 212:8 212:11 212:15 212:17 213:1 213:9 213:11 213:19 214:3 214:6 214:12 214:13 214:13 214:14 214:24 214:25 215:1 215:2 215:4 215:7 215:8 215:8 215:12 215:15 215:16 215:22 215:24 216:9 216:19 216:21 217:9 217:10 217:11 217:17 217:25 218:3 218:4 218:6 218:7 218:12 218:24 219:2 219:6 219:7 219:8 219:15 219:25 220:1 220:3 220:5 220:11 220:12 220:20 220:22 220:24 220:24 221:6 221:13 221:17 221:17 222:8 222:13 223:10 223:12 223:15 223:21 224:1 224:4 224:7 | **any**(163) 11:1 11:14 11:24 12:9 12:16 13:2 13:4 14:5 15:24 17:14 18:22 22:1 22:2 22:6 24:23 25:5 25:5 26:10 26:11 26:18 29:19 34:10 34:22 34:25 35:14 35:15 35:17 36:25 37:2 37:9 37:9 37:15 38:12 38:14 38:14 38:21 38:23 38:24 38:25 39:8 39:8 39:16 39:20 40:23 41:3 41:5 41:23 44:19 45:3 45:3 45:4 45:12 45:12 45:19 46:7 50:19 51:19 51:22 51:23 52:14 52:18 56:12 56:13 56:24 57:22 58:20 59:3 59:18 60:24 61:5 61:10 61:12 61:15 61:16 62:1 63:12 64:2 64:11 65:1 65:23 66:1 66:10 66:11 66:21 67:22 67:24 68:2 69:5 70:9 71:22 72:22 72:23 72:23 76:2 77:24 78:5 81:10 82:12 82:21 87:17 87:24 88:20 89:3 89:15 89:18 90:13 93:18 94:8 97:22 97:23 99:3 100:25 103:21 107:6 111:4 114:18 117:8 130:12 134:16 143:10 144:25 145:1 145:3 148:12 149:9 149:9 152:1 157:9 158:12 159:2 162:1 163:17 164:7 171:2 179:21 179:22 180:16 180:10 191:3 191:5 191:16 194:22 192:15 193:15 193:17 196:22 197:1 198:24 199:17 199:18 200:7 201:25 203:2 203:13 203:16 204:19 206:17 211:23 215:6 216:1 222:17 222:18 | **apply**(25) 24:20 26:2 26:14 43:22 49:8 50:13 54:8 58:10 58:12 72:20 73:7 84:16 100:13 152:22 162:20 167:12 180:20 181:3 199:20 200:3 205:9 205:23 207:19 208:1 222:20 |
| | | | | **anybody**(13) 12:24 16:4 18:3 40:16 43:13 46:10 69:3 89:15 99:22 151:22 177:8 177:11 199:7 | **applying**(2) 36:13 167:1 |
| | | **anderson**(1) 3:4 | | | | **appreciate**(5) 28:25 31:19 40:7 130:8 213:18 |
| | | **andrew**(6) 2:20 5:13 5:14 6:24 7:6 9:12 | | | | |
| | | **angela**(1) 8:37 | | **anybody's**(1) 44:2 | | **approach**(5) 44:7 66:4 69:14 111:15 |
| | | **angeles**(2) 1:34 3:24 | | **anymore**(2) 33:2 33:17 | | **approaching**(1) 197:7 |
| | | **angelo**(1) 7:5 | | **anyone**(15) 13:9 13:23 14:18 43:21 69:5 | | **appropriate**(13) 67:7 79:10 84:11 110:5 140:2 162:17 167:18 206:24 206:24 206:25 213:10 220:12 223:2 |
| | | **anna**(2) 7:14 7:14 | | 103:5 130:1 130:11 140:12 141:20 153:20 | | |
| | | **annexed**(1) 15:5 | | 177:9 219:16 221:23 222:21 | | |
| | | **annual**(3) 123:4 137:24 170:19 | | | | **appropriately**(1) 30:24 |
| | | **annuity**(10) 135:22 136:4 136:6 136:15 | | **anything**(29) 23:11 41:11 61:21 62:11 | | **approval**(2) 76:9 205:15 |
| | | 136:16 137:16 156:21 157:10 157:14 188:11 | | 62:18 63:25 64:3 64:6 64:7 65:4 66:8 | | **approved**(3) 189:9 189:11 219:25 |
| | | | | 78:10 88:15 90:1 96:10 98:3 98:20 113:5 | | **approximately**(5) 22:18 136:24 161:6 167:22 183:22 |
| | | **another**(23) 11:19 18:8 24:17 49:20 54:25 | | 129:24 134:6 134:9 138:20 144:17 151:6 | | |
| | | 56:12 64:8 69:13 81:14 97:14 98:18 98:19 | | 196:25 197:5 198:19 206:6 215:1 | | |
| | | 98:20 100:1 108:17 124:24 125:3 126:22 | | | | **april**(12) 66:19 96:15 217:17 218:1 218:7 |
| | | 130:18 143:12 165:24 182:20 200:13 | | **anyway**(2) 40:23 40:25 | | 218:16 218:22 218:23 219:6 219:7 219:8 |
| | | | | **anywhere**(3) 38:4 61:14 138:12 | | 219:10 |
| | | **answer**(14) 16:5 70:3 91:8 111:5 120:7 | | **apologize**(3) 28:5 48:21 156:9 | | **aptly**(1) 30:15 |
| | | 132:12 147:25 149:12 152:23 152:25 187:3 | | **app**(1) 116:16 | | **arban**(2) 4:24 4:25 |
| | | 194:4 195:22 207:2 | | **apparently**(3) 113:21 113:24 153:4 | | **architect**(2) 43:6 47:7 |
| | | | | **appeal**(17) 19:11 19:11 20:9 24:2 24:3 | | **are**(301) 10:17 10:23 10:25 11:3 11:7 |
| | | **answered**(1) 70:6 | | 24:3 28:15 28:16 28:19 28:25 29:1 29:3 | | 11:13 14:3 15:20 15:21 16:5 16:18 16:24 |
| | | **answers**(1) 146:10 | | 29:14 29:15 30:12 30:19 30:23 | | 17:4 18:21 19:4 20:8 21:5 21:25 22:1 |
| | | **antecedent**(3) 25:22 36:13 58:11 | | | | 22:2 25:4 26:6 27:24 31:3 32:11 33:8 |
| | | **anti-silly**(1) 40:6 | | **appealed**(1) 28:15 | | 33:12 34:19 34:19 34:22 34:23 35:5 36:4 |
| | | **anticipate**(1) 201:19 | | **appeals**(3) 210:22 210:25 211:8 | | 37:20 38:22 39:17 40:8 40:9 40:12 40:21 |
| | | **anxiety**(2) 10:10 12:16 | | **appear**(8) 118:22 132:24 137:14 137:15 | | 42:19 44:17 44:9 46:21 47:10 47:11 |
| | | | | 138:12 144:16 176:2 197:1 | | 47:14 47:17 49:9 49:15 49:21 50:4 50:22 |
| | | | | | | 53:4 53:6 53:9 55:5 55:15 55:16 55:17 |
| | | | | **appearances**(6) 4:44 5:1 6:1 7:1 8:1 9:1 | | 55:17 56:5 56:6 56:6 56:8 56:17 57:15 |
| | | | | **appears**(7) 62:8 123:1 123:3 144:17 | | 58:22 59:4 59:13 59:18 59:20 59:21 59:25 |
| | | | | 163:25 166:17 174:23 | | 60:21 61:1 61:11 61:13 61:21 61:23 61:25 |
| | | | | | | 62:6 63:3 63:5 63:6 63:7 63:14 63:23 |
| | | | | **appellate**(1) 210:25 | | 65:5 65:9 65:20 67:9 67:10 70:16 70:21 |
| | | | | **append**(1) 174:19 | | 72:6 72:13 74:17 75:20 76:1 76:8 76:19 |
| | | | | **appended**(2) 104:17 104:21 | | 80:22 80:23 83:10 83:21 85:4 85:4 86:21 |
| | | | | **appendix**(1) 159:13 | | 86:22 86:22 87:24 89:23 90:6 90:7 92:2 |
| | | | | **applicable**(8) 32:23 94:6 94:19 95:12 | | 94:18 95:10 95:22 98:9 98:16 100:20 |
| | | | | 106:10 207:19 207:22 211:5 | | 102:10 102:14 102:17 102:18 102:23 103:3 |
| | | | | | | 103:6 103:7 103:16 104:3 104:19 105:1 |
| | | | | **application**(6) 24:16 24:18 26:9 211:24 | | 105:2 105:13 105:25 106:11 106:22 107:9 |
| | | | | 216:10 216:13 | | 107:19 107:25 107:25 109:1 111:7 111:14 |
| | | | | | | 113:22 114:18 116:1 116:24 116:25 117:8 |
| | | | | **applied**(3) 25:22 42:2 211:3 | | 117:16 117:17 118:18 118:21 119:13 |
| | | | | **applies**(8) 27:9 45:10 68:1 206:1 208:3 | | 119:18 124:11 124:15 124:17 125:21 126:3 |
| | | | | 208:18 211:21 213:5 | | 128:3 128:4 128:6 129:17 129:17 129:19 |
| | | | | | | 134:1 134:1 134:3 134:3 136:7 136:15 |
| | | | | | | 137:21 137:21 139:15 139:22 142:9 143:3 |
| | | | | | | 144:4 144:14 146:13 146:18 146:24 147:8 |
| | | | | | | 149:6 149:17 151:12 151:13 151:14 151:14 |
| | | | | | | 152:1 152:3 152:20 152:21 154:2 154:10 |
| | | | | | | 155:18 155:37 156:4 156:26 157:10 158:6 |
| | | | | | | 158:11 158:13 161:24 161:26 162:3 162:5 |
| | | | | | | 162:17 163:23 164:1 164:3 166:2 166:9 |
| | | | | | | 166:10 166:11 166:13 166:15 166:16 |
| | | | | | | 166:24 167:5 167:9 167:10 169:10 169:15 |
| | | | | | | 169:23 170:1 170:18 171:7 171:7 171:17 171:18 |
| | | | | | | 171:19 172:8 173:6 173:9 173:11 173:21 |
| | | | | | | 173:24 174:4 175:12 176:4 176:10 176:10 |
| | | | | | | 176:11 176:16 176:19 176:20 176:21 |
| | | | | | | 176:22 177:23 177:24 178:4 178:8 180:1 |
| | | | | | | 180:20 181:5 182:2 182:11 182:14 182:15 |
| | | | | | | 183:20 184:5 184:7 185:15 187:6 187:13 |
| | | | | | | 187:14 187:19 188:16 188:23 189:1 189:16 |
| | | | | | | 191:25 192:2 192:6 192:21 193:2 193:12 |
| | | | | | | 193:15 193:19 194:1 194:3 194:13 194:17 |
| | | | | | | 194:20 194:20 195:12 196:15 197:3 197:8 |
| | | | | | | 198:15 200:23 201:25 202:1 202:21 203:15 |
| | | | | | | 204:5 205:11 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**are**(29) 205:16 205:24 208:23 209:5 210:18 210:19 212:14 212:25 214:15 214:22 215:15 216:7 216:12 216:21 217:5 218:3 218:8 218:14 218:22 218:23 219:12 219:13 219:20 219:21 220:5 220:11 221:6 224:6 224:6

**area**(2) 119:18 154:2
**areas**(3) 149:6 154:2 205:7
**aren't**(1) 101:16
**aren't**(3) 13:4 51:6 181:19
**arguably**(1) 48:2
**argue**(13) 20:20 75:1 81:16 81:19 84:20 89:1 99:10 99:25 148:17 155:2 170:4 180:11 215:1

**argued**(10) 76:14 79:5 82:2 82:3 83:8 83:9 163:13 185:15 189:6 209:17

**argues**(1) 167:7
**arguing**(2) 91:1 210:2
**argument**(53) 12:9 21:18 27:3 27:4 29:5 29:17 47:2 58:13 67:7 75:24 79:3 79:12 79:16 80:23 87:3 89:7 89:14 89:17 91:15 91:16 91:25 92:2 94:1 95:15 95:16 96:6 99:1 100:8 107:24 145:11 150:19 151:4 154:25 159:18 162:25 163:7 165:9 165:14 165:25 167:20 167:21 173:2 182:1 182:15 188:22 193:24 195:19 201:1 205:19 206:4 213:4 213:8 215:6

**arguments**(16) 17:7 26:20 27:14 40:8 42:24 47:4 58:3 68:12 86:22 163:7 174:24 178:16 184:3 192:5 220:18 220:20

**arise**(5) 56:3 96:22 109:4 150:7 210:1
**arises**(8) 33:24 33:25 56:3 77:22 79:17 85:16 96:22 97:6

**arising**(7) 76:16 78:22 98:17 146:17 165:22 183:5 184:1

**arithmetic**(2) 189:24 190:24
**arithmetically**(1) 190:20
**arose**(5) 84:25 92:19 184:13 184:14 184:21
**around**(10) 38:19 53:8 109:12 109:14 121:12 129:10 140:17 165:13 213:4 221:18

**arrantly**(1) 24:2
**array**(1) 26:3
**arrow**(1) 81:3
**arrowgrass**(2) 6:42 6:42
**arrows**(1) 100:2
**arthur**(1) 8:45
**article**(7) 26:4 95:4 197:10 197:14 199:17 199:19 200:3

**articulated**(3) 30:6 36:19 212:25
**articulates**(1) 30:10
**ashby**(1) 3:43
**ashley**(1) 5:8
**aside**(4) 77:11 143:2 207:23 221:19
**ask**(19) 12:24 16:13 20:1 35:18 81:5 104:6 113:19 118:3 121:19 130:6 130:7 130:12 146:2 150:10 154:9 154:13 219:17 221:20 223:1
**asked**(17) 29:3 30:7 36:22 133:19 148:3 152:16 153:1 153:15 156:18 167:9 171:16 187:15 194:3 194:23 194:23 220:25 223:6

**asking**(6) 20:6 32:5 114:1 153:2 219:20 224:5

**assert**(2) 32:22 60:9
**asserted**(4) 120:17 190:12 196:21 197:6
**asserting**(4) 94:8 106:22 178:12 184:9
**assertion**(3) 82:7 82:8 99:19
**assess**(1) 218:8
**asset**(5) 50:9 90:18 90:20

**assets**(39) 23:13 25:24 26:13 39:11 39:11 39:12 39:16 39:18 41:15 42:18 44:21 50:4 50:22 51:1 51:4 51:7 51:11 51:13 53:3 53:5 53:15 54:21 54:23 55:1 55:8 56:25 57:5 57:6 57:9 57:11 58:9 61:5 64:13 64:19 66:5 107:16 121:9 209:5 216:20

**assign**(1) 62:25
**assigns**(5) 63:1 63:3 63:5 63:6 63:7
**assisted**(1) 120:1
**associated**(3) 11:17 67:3 98:9
**assuage**(1) 12:16
**assume**(1) 223:11
**assumed**(9) 80:24 136:14 139:19 161:14 164:10 164:12 165:12 172:14 175:13

**assumes**(2) 62:22 185:1
**assuming**(4) 14:21 38:7 49:21 150:13
**assumption**(6) 136:15 139:23 140:4 172:19 184:16 185:2

**attach**(1) 14:4
**attached**(5) 109:14 109:18 109:21 170:25 176:9

**attaching**(2) 111:16 111:17
**attempt**(2) 100:2 179:16
**attendance**(1) 99:23
**attention**(15) 66:2 95:18 133:16 133:17 134:11 135:2 136:18 136:21 138:9 138:21 156:5 157:19 158:4 175:16 222:5

**attorneys**(1) 91:24
**attorneys'**(1) 76:16
**attributable**(1) 160:22
**audible**(9) 13:1 18:4 35:2 69:7 103:23 117:10 153:22 193:18 222:23

**audit**(1) 121:13
**audited**(3) 141:12 141:14 143:20
**auditor**(1) 143:20
**auditors**(1) 141:14
**aurelius**(10) 2:33 3:43 6:33 6:34 67:13 99:9 99:11 99:18 201:16 222:2

**austin**(2) 1:21 5:28
**authentic**(1) 110:22
**authenticity**(1) 146:12
**authorities**(4) 106:17 116:18 117:5 173:12
**authority**(16) 36:11 82:6 104:22 105:8 105:8 105:17 106:10 108:17 108:18 115:1 115:11 149:24 170:15 173:12 210:7 211:17

**authors**(1) 117:23
**automatic**(1) 31:22
**avail**(1) 29:12
**availability**(1) 205:13
**available**(13) 53:17 54:23 70:9 104:20 174:15 195:22 204:18 204:23 206:19 206:21 209:5 214:22 214:23

**ave**(1) 3:23
**avenue**(4) 1:40 2:51 3:45 4:20
**avoid**(1) 43:17
**avoidance**(41) 25:16 32:19 32:22 40:21 41:20 43:7 43:22 45:7 45:15 45:16 45:19 45:23 45:25 46:12 46:20 49:12 49:12 50:1 50:8 50:11 50:23 50:23 51:5 51:6 53:9 53:21 54:12 55:5 57:8 57:9 57:12 60:11 60:19 64:22 64:22 65:11 65:14 66:6 79:13 100:19 192:2

**avoided**(1) 65:24
**awake**(1) 192:22
**award**(1) 124:23
**aware**(10) 32:21 32:22 38:5 67:22 139:14 139:18 139:22 144:17 156:15 211:24

**away**(8) 15:8 15:11 21:18 55:7 55:7 85:6 105:23 162:19

**aways**(1) 72:4
**awful**(2) 29:22 198:22
**back**(34) 15:6 18:17 21:3 21:15 31:12 53:24 62:6 78:18 84:13 88:18 97:20 107:4 128:24 130:13 133:2 133:2 138:9 141:3 150:20 155:2 158:13 168:1 168:7 169:25 175:14 175:17 184:23 185:24 188:20 188:21 188:22 196:12 212:14 221:16

**back-and-forth**(1) 140:17
**backdrop**(2) 73:7 207:12
**background**(1) 222:19
**balance**(41) 122:8 122:19 122:20 122:23 123:2 123:4 123:12 123:13 123:16 125:14 126:11 126:16 126:22 126:24 127:2 127:17 128:17 129:11 129:22 133:17 134:2 134:4 138:14 138:21 138:22 140:2 143:5 143:13 149:21 152:20 153:4 153:11 160:13 161:8 167:23 171:11 171:12 171:15 186:2 188:10 188:14

**balances**(11) 16:9 103:18 104:5 122:20 126:4 126:20 127:5 127:18 128:2 129:18 142:2
**bale**(1) 6:20
**bank**(31) 5:43 5:43 6:9 6:14 6:29 22:15 22:16 32:4 32:12 35:11 76:16 83:5 94:11 95:24 96:1 96:2 96:3 98:9 98:22 99:13 105:11 177:16 196:4 207:16 209:13 209:25 209:25 210:15 210:15 211:6 211:18

**banking**(3) 207:16 207:23 210:21
**bankruptcy**(36) 1:1 1:18 33:25 39:25 40:1 40:3 41:18 41:25 47:16 50:16 50:17 51:23 52:2 52:7 63:25 64:2 64:11 86:4 94:5 119:20 120:2 121:13 121:15 160:6 160:8 164:14 203:11 206:22 207:17 208:22 210:22 211:4 211:10 212:8 215:19 216:13

**bankruptcy-specific**(1) 211:16
**banks**(1) 33:6
**barclays**(4) 7:10 7:10 83:17 86:14
**barker**(1) 4:20
**barron's**(2) 108:19 109:15
**barron's**(1) 171:7
**based**(19) 11:21 26:14 26:15 37:3 50:6 93:14 130:10 140:21 141:2 146:22 147:11 148:25 151:18 153:25 160:19 168:3 168:24 184:3 219:22

**basic**(5) 16:21 74:23 75:17 146:10 169:10
**basically**(9) 20:6 27:2 38:16 38:17 74:6 96:22 176:7 190:15 220:17

**basis**(10) 10:27 34:9 71:14 74:19 86:18 170:19 215:14 221:22 223:22 223:22

**baskin**(8) 4:18 13:18 27:13 47:1 104:13 145:16 155:21 155:39

**bear**(1) 101:2
**bears**(2) 94:10 95:10
**became**(3) 34:7 182:23 210:4

**because**(109) 14:3 16:1 16:12 16:22 19:3 24:9 24:10 27:2 29:21 33:3 33:11 39:7 41:10 41:17 42:15 43:9 43:13 45:7 52:4 53:16 55:15 57:6 58:14 58:15 61:4 63:21 73:10 73:15 73:17 76:18 77:8 77:13 79:5 79:10 79:11 81:18 82:4 89:11 89:20 90:18 92:7 93:14 94:7 100:19 100:24 101:12 102:21 107:25 109:19 113:12 113:25 115:16 118:5 130:6 130:17 137:5 137:10 146:10 148:11 150:3 152:15 152:21 158:22 160:5 161:10 162:17 162:25 165:5 165:17 167:5 169:13 171:4 171:18 172:6 173:13 174:15 175:16 177:23 178:13 179:15 180:10 180:20 181:10 182:16 182:22 183:7 186:20 187:9 190:18 197:5 197:17 198:3 199:2 199:12 200:1 202:5 203:4 204:10 209:17 210:18 211:8 211:9 211:10 212:24 214:16 217:18 219:22 221:6 224:5

**become**(6) 120:16 120:19 121:2 121:5 187:8 199:5

**becomes**(7) 106:18 147:1 161:23 162:14 164:18 165:1 186:15

**been**(100) 13:11 15:21 16:16 16:17 19:11 19:12 21:6 24:4 24:21 26:21 28:14 31:23 32:14 32:24 33:14 37:10 42:4 49:4 49:7 50:4 51:10 57:16 58:3 58:10 64:10 66:22 90:14 91:2 91:4 91:25 95:14 102:9 107:23 111:21 111:23 118:8 119:21 119:24 120:7 120:10 120:12 120:14 120:17 120:21 120:23 121:12 121:14 128:9 129:19 130:20 131:14 132:3 134:21 138:13 138:23 141:1 142:25 145:18 145:24 145:24 146:2 147:22 150:4 153:7 154:15 156:12 157:3 159:19 160:20 161:11 172:6 174:5 176:12 186:2 186:10 187:9 187:10 187:11 187:14 187:15 187:17 192:5 192:14 194:11 194:18 196:22 197:17 198:11 202:7 203:13 203:22 204:15 207:15 215:24 216:7 218:9 218:13 219:8

**before**(53) 1:17 10:19 22:20 25:3 26:21 29:11 30:5 32:1 34:1 38:5 41:17 62:9 62:12 66:1 66:13 67:7 70:13 72:18 78:14 79:7 79:8 85:4 86:2 95:20 116:25 118:2 120:3 144:19 145:11 146:20 149:19 151:7 156:1 157:3 163:20 166:12 170:7 172:24 176:6 186:13 196:4 203:24 205:25 209:18 209:22 214:15 215:7 215:19 215:22 215:24 220:12 221:1 221:7

**beforehand**(1) 10:18
**began**(1) 98:23
**begin**(4) 202:11 202:17 203:25 204:11
**beginner**(2) 108:10 113:16
**beginning**(2) 21:23 120:13
**begins**(3) 55:15 56:10 220:15
**behalf**(23) 27:1 27:21 28:4 32:20 42:23 61:11 61:14 61:17 67:2 68:24 93:22 99:8 99:18 100:18 101:8 183:16 191:12 191:21 198:6 200:12 207:9 212:22 216:4

**beheld**(1) 98:25
**behind**(2) 121:17 157:17
**behooved**(1) 199:6
**being**(49) 12:16 39:22 41:24 42:13 52:14 65:1 65:21 73:20 77:17 84:19 85:9 87:9 87:10 90:19 93:5 102:14 102:18 102:19 102:20 103:6 103:9 103:11 103:17 110:19 114:3 114:11 116:19 131:17 132:6 139:2 139:3 147:20 147:24 147:25 148:6 149:4 149:4 161:4 175:5 177:2 178:7 181:5 194:23 194:23 199:24 200:2 201:20 205:6 207:18

**belabor**(3) 93:24 197:22 198:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**believe**(44) 21:5 21:24 22:1 25:1 27:7 29:4 36:11 39:19 50:21 62:11 64:18 66:14 67:6 68:1 69:3 83:12 100:19 102:18 104:23 106:17 109:1 113:10 133:20 133:23 136:14 143:9 148:14 148:15 153:3 156:17 158:11 158:16 162:1 163:8 163:19 166:1 169:7 175:2 191:24 193:14 197:20 197:21 200:6 207:13

**believed**(1) 160:2

**believing**(1) 40:20

**bell**(24) 13:21 13:21 14:1 14:13 111:17 112:14 112:23 140:16 140:21 140:23 145:20 146:21 147:23 148:4 148:22 149:7 150:3 150:24 156:13 156:14 156:18 156:25 159:3 174:25

**bell's**(7) 14:25 145:12 145:19 158:10 158:16 167:24 169:4

**belong**(1) 50:1
**belongs**(2) 50:15 50:19
**below**(1) 52:15

**bendernagel**(101) 1:22 10:12 10:13 10:17 11:3 12:18 12:21 13:4 13:13 15:17 16:1 16:8 17:10 17:12 17:17 18:6 18:11 18:21 18:24 19:25 20:4 21:16 21:21 24:24 30:15 34:14 34:17 34:21 35:6 68:14 68:23 68:23 69:10 101:7 101:7 101:24 102:3 102:5 102:5 103:13 103:15 104:2 118:2 118:5 118:13 118:20 119:4 119:9 119:12 129:24 130:17 130:19 131:1 131:20 131:22 131:25 133:19 136:22 145:1 145:6 145:10 154:23 155:1 175:3 175:21 175:21 176:1 177:11 192:9 192:11 192:24 193:5 193:9 193:21 193:24 195:25 200:16 200:20 200:25 201:4 201:7 201:10 201:12 201:19 217:1 217:5 217:15 219:19 221:5 221:10 221:13 222:4 222:25 223:1 223:5 223:14 223:17 223:20 224:3 224:9 224:13

**beneficiaries**(1) 208:15
**beneficiary**(5) 83:23 83:25 94:9 161:25 199:6

**benefit**(14) 59:24 64:5 83:20 83:25 87:11 113:16 136:8 154:5 163:23 173:24 180:11 197:16 198:16 202:19

**benefits**(41) 47:11 83:14 94:9 97:15 106:6 106:7 106:21 107:9 107:18 107:19 107:24 122:8 122:24 123:20 123:23 124:6 125:17 125:20 126:6 126:7 127:22 129:1 129:8 129:9 129:14 129:14 129:20 129:22 131:8 132:19 133:10 136:24 137:1 137:2 138:16 143:3 147:13 151:14 151:17 160:13 209:16

**benson**(11) 4:4 7:17 13:25 22:14 35:10 111:10 141:22 151:11 177:15 196:2 209:11

**best**(4) 11:4 17:13 27:24 144:11
**bestow**(1) 199:23
**bet**(4) 65:11 85:13 86:11 86:14
**better**(5) 20:11 35:23 95:24 190:16 192:21
**between**(23) 18:14 26:8 29:13 29:22 30:18 39:11 68:9 73:22 83:15 91:15 97:13 113:20 144:7 161:21 178:4 179:23 181:1 186:20 186:24 186:25 195:6 209:15 209:19

**beyond**(5) 54:6 60:20 121:6 153:25 216:19
**bifferato**(1) 4:12
**big**(1) 217:19
**bigalow**(1) 5:47
**billion**(5) 22:18 70:19 70:24 82:20 172:14
**bilmes**(2) 7:34 7:35
**binder**(15) 21:23 22:11 68:25 69:1 69:1 102:7 102:7 112:9 121:17 136:20 156:9 157:22 175:24 176:3 193:13

**binders**(1) 10:21

**binding**(3) 30:24 80:21 213:23
**bingham**(1) 8:5
**birth**(1) 141:5
**bit**(24) 11:20 29:21 31:4 31:9 31:13 37:1 92:17 91:4 96:14 100:6 105:15 106:18 118:17 145:17 157:15 169:13 170:3 174:16 176:17 180:19 188:22 217:18 219:5 223:8

**blabey**(1) 7:40
**black**(3) 48:25 83:24 174:9
**black's**(3) 164:7 164:20 165:6
**blake**(1) 3:14
**blank**(1) 4:37
**bless**(1) 191:18
**blew**(1) 72:17
**block**(6) 4:30 6:23 27:21 48:10 100:18 145:19 200:12 216:4

**blown**(2) 45:1 71:16
**board**(6) 6:47 12:24 30:25 105:12 147:17 207:3

**boils**(3) 33:21 169:9 173:10
**bold**(1) 174:9
**bond**(6) 77:24 78:4 79:19 85:18 86:6 96:9
**bonds**(7) 73:4 73:16 77:16 85:23 86:5 168:21 199:25

**bonus**(5) 124:23 137:24 137:24 167:25 168:1

**bonuses/salary**(2) 124:22 139:2
**book**(6) 34:18 109:21 110:15 110:20 174:14

**books**(16) 109:25 113:1 113:1 120:22 121:2 131:10 132:10 134:22 134:25 137:12 139:23 145:23 150:14 150:15 161:13 173:25

**borrowed**(9) 71:8 73:6 73:18 77:19 78:17 79:22 163:15 179:12 182:3

**borrower/lender**(1) 168:17
**borrowers**(1) 168:21
**borrowing**(3) 168:14 169:2 169:6
**borrowings**(2) 70:19 70:24
**both**(38) 10:20 16:12 16:13 38:11 44:25 54:3 54:4 54:5 59:13 71:20 74:15 74:17 79:3 83:14 99:12 100:13 103:4 105:11 116:8 129:6 135:14 163:2 164:24 166:13 167:12 172:25 178:10 180:10 180:21 188:14 193:14 198:7 204:15 207:17 209:24 209:24 210:2 210:16

**bottom**(6) 77:6 125:13 129:12 136:22 176:20 214:19

**bought**(2) 86:16 172:21
**bowski**(1) 152:8
**bracketed**(1) 72:21
**brad**(1) 6:49
**bradford**(26) 4:31 27:20 27:21 48:9 48:10 48:15 48:17 48:18 48:20 48:21 49:1 67:10 67:11 67:21 68:8 100:15 100:16 100:18 191:21 191:21 192:4 192:7 200:11 200:11 216:3 216:4

**bradford's**(1) 67:17
**braford**(1) 49:3
**brainer**(1) 202:9
**break**(13) 14:19 15:16 68:15 68:19 91:18 101:22 102:9 146:20 155:7 156:22 157:5 157:15 200:22

**breaks**(1) 176:18
**breath**(1) 38:12
**brett**(1) 5:33
**brian**(3) 4:25 13:10 119:8
**bridge**(1) 130:22

**brief**(63) 12:13 20:9 31:5 31:7 31:11 33:2 47:5 47:13 47:21 75:7 80:10 94:12 94:22 94:24 98:2 100:17 105:7 105:10 106:4 106:11 106:16 107:8 108:6 108:18 109:18 110:4 110:15 110:17 115:10 130:25 159:13 159:14 162:23 163:21 163:25 166:4 169:25 170:1 170:12 170:25 171:1 173:14 173:16 173:21 174:4 174:17 174:23 175:2 175:22 175:22 176:9 176:10 178:16 179:9 180:1 180:4 184:5 189:8 204:1 204:9 204:13 205:1 206:20 207:14

**briefed**(4) 29:4 32:15 83:13 95:7
**briefer**(1) 201:19
**briefing**(9) 23:18 50:5 78:2 82:3 162:16 162:24 169:9 174:15 223:10

**briefly**(7) 49:6 69:24 81:11 94:22 210:12 216:5 222:1

**briefs**(9) 33:20 47:22 94:14 105:22 107:1 118:11 174:19 207:11 220:16

**bring**(9) 31:15 32:19 50:14 50:19 130:13 150:20 150:21 176:24 196:24

**bringing**(1) 31:24
**brings**(3) 68:24 161:17 200:16
**broad**(3) 26:3 37:25 54:13
**broadly**(4) 25:24 36:14 165:3 165:7
**broadway**(1) 4:8
**broken**(4) 128:9 133:8 158:24 179:13
**brought**(4) 32:13 32:14 43:7 66:2
**brown**(8) 3:27 28:4 68:5 93:22 114:20 191:12 198:5 212:21

**bryan**(1) 5:31
**bryant**(1) 2:38
**bucket**(2) 149:16 188:25
**buckets**(1) 149:12
**bucks**(1) 109:20
**bulletin**(1) 188:4
**bunch**(4) 84:2 87:12 111:16 111:17
**burden**(20) 83:11 83:11 83:12 84:4 84:7 94:10 99:2 101:2 101:3 163:4 178:8 178:10 178:12 196:22 197:20 199:4 202:20 202:25 203:3 222:18

**burdens**(6) 94:5 94:16 94:18 161:19 161:19 209:16

**bush**(1) 5:12
**business**(33) 23:4 54:19 82:6 82:18 82:24 92:17 98:4 98:21 119:17 166:2 169:23 172:8 172:12 172:20 173:3 173:5 173:6 175:11 175:14 178:2 180:8 181:13 181:14 183:5 183:19 183:20 184:1 184:13 184:15 185:5 186:7 186:9 205:6

**business."**(1) 82:1
**businesses**(1) 172:21
**business"**(4) 165:22 167:3 172:11 175:1

**but**(228) 10:24 11:21 12:4 12:19 13:20 14:11 15:21 16:4 16:18 16:19 16:25 17:6 18:18 19:4 19:17 19:21 19:25 21:1 21:15 22:4 23:5 23:6 24:18 25:14 27:15 27:24 28:12 28:24 29:6 29:24 30:3 30:14 30:21 31:12 31:22 32:10 33:17 34:9 34:16 35:25 36:10 37:7 37:17 38:10 38:12 39:5 39:13 39:16 41:12 42:25 44:3 45:9 46:11 47:5 50:7 50:11 51:12 51:25 53:18 54:3 54:17 58:6 59:7 61:13 62:1 63:1 63:7 64:19 65:5 66:6 66:18 67:2 67:7 68:11 73:2 75:12 77:2 78:3 78:10 80:19 82:2 83:7 83:11 83:22 85:1 86:6 86:13 86:23 87:16 88:14 89:13 90:7 91:1 91:23 92:15 94:17 94:18 94:22 95:12 95:23 96:12 97:17 100:8 101:18 107:3 107:20 109:5 110:4 110:4 110:9 110:16 112:17 112:18 113:6 113:13 113:23 114:1 114:6 114:13 114:23 116:3 117:23 117:23 118:11 118:16 119:1 119:2 125:13 130:4 131:24 131:25 132:11 136:20 137:5 137:13 140:1 143:9 144:15 145:19 148:21 149:3 150:9 150:15 151:14 151:22 152:22 152:24 153:11 153:18 153:25 156:4 158:14 159:15 159:20 161:5 162:5 162:10 162:24 164:22 165:14 166:15 167:11 168:12 168:18 170:13 170:20 170:21 171:2 171:13 172:2 172:21 173:5 174:1 174:5 174:15 175:15 176:22 178:17 181:1 182:12 183:10 184:12 185:13 186:2 186:19 187:3 187:20 189:6 189:14 189:18 190:5 190:10 191:1 192:13 194:19 194:21 195:9 195:10 195:13 196:8 196:16 197:23 198:5 198:13 199:11 201:3 201:19 202:6 204:4 204:23 205:23 208:18 210:5 213:21 213:25 214:9 214:21 214:25 217:10 219:14 219:21 220:9 220:13 220:19 221:20 223:22 224:1 224:11

**button**(1) 36:1
**buy**(2) 30:3 109:21
**bynum**(1) 7:44
**cadwalder**(1) 6:10
**calculated**(1) 188:8
**calculations**(2) 141:1 141:2
**call**(19) 13:21 14:6 14:16 18:8 22:25 28:13 67:1 108:13 113:11 119:5 130:5 130:18 153:18 154:7 156:5 157:18 158:4 175:16 181:18

**called**(5) 91:11 96:24 118:18 122:23
**calls**(2) 132:9 132:10
**came**(11) 41:15 41:15 41:16 43:25 67:16 151:15 156:16 160:6 204:17 204:22 220:13

**can**(135) 14:13 14:14 15:10 15:15 16:5 16:19 20:1 20:15 20:23 20:23 21:3 21:17 22:3 26:20 26:21 26:22 29:23 30:25 32:19 33:9 35:21 37:2 37:7 37:14 40:17 41:14 62:1 70:6 72:9 73:6 75:10 86:7 88:3 89:14 89:16 89:18 94:12 95:6 97:16 101:13 102:11 102:15 103:6 103:9 105:5 105:20 108:17 108:24 109:12 109:22 109:22 110:6 110:22 112:14 113:9 113:17 114:10 114:12 121:5 122:18 124:2 124:7 124:17 125:16 126:20 127:4 127:16 129:3 132:13 134:11 135:2 136:3 136:18 138:3 139:25 146:4 149:20 150:1 150:2 150:25 152:18 152:23 154:9 154:11 155:2 160:21 161:23 162:6 165:6 166:14 167:12 167:14 167:14 168:2 169:1 173:5 174:12 174:14 177:21 178:22 183:1 183:4 183:15 184:19 186:4 188:1 190:1 190:5 191:23 192:14 192:18 194:21 195:18 197:21 198:14 200:22 202:6 202:11 203:8 203:25 206:11 206:12 209:6 209:24 213:3 215:7 217:9 217:9 217:9 217:10 217:11 218:11 220:18 221:16 221:21

**can't**(1) 109:3
**cannot**(11) 37:12 37:22 38:24 42:2 45:24 57:21 87:11 178:6 191:3 203:21 215:6

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**canyon**(2) 9:4 9:4
**can't**(32) 19:22 35:24 53:6 57:20 58:21 59:13 59:16 60:5 60:5 60:9 60:15 61:20 62:9 63:12 63:19 63:20 63:22 171:20 180:10 180:21 180:22 181:1 181:16 183:2 183:4 183:25 188:20 188:22 197:15 197:16 198:18 202:4

**capable**(2) 206:10 206:13
**capacity**(2) 67:2 199:16
**capital**(28) 2:33 6:19 6:19 6:33 6:34 6:42 7:10 7:34 8:10 8:23 8:23 27:1 42:6 42:23 51:15 51:18 52:24 53:20 67:13 99:9 164:5 164:8 165:20 168:2 201:16 207:10 214:20 222:3

**capitalized**(1) 95:4 198:18
**card**(1) 42:14
**care**(2) 12:1 191:14
**career**(1) 147:14
**careful**(2) 132:3 201:20
**carey**(1) 1:17
**carickhoff**(1) 4:38
**caridas**(1) 5:13
**carol**(1) 6:20
**carras**(1) 8:19
**carried**(2) 160:12 179:9
**carry**(3) 99:3 196:22 203:3
**carve**(2) 53:10 165:15
**carved**(1) 169:21
**case**(80) 1:4 8:14 22:19 24:13 25:12 26:7 30:14 30:16 33:10 33:25 36:10 36:20 38:17 39:9 41:13 78:4 48:16 78:12 83:15 83:19 84:2 86:1 87:6 91:23 105:8 105:17 106:6 106:14 106:22 107:2 107:14 107:15 115:9 115:15 115:15 116:10 116:16 119:21 120:12 120:17 126:23 127:1 142:15 163:17 163:21 164:5 164:11 165:10 166:20 166:21 169:15 172:3 177:3 178:10 178:11 178:13 178:14 178:17 178:18 179:21 180:16 181:3 188:10 197:20 197:21 202:8 202:20 203:12 204:18 205:3 206:7 208:22 209:2 209:18 211:6 212:16 214:5 215:6 220:8

**cases**(24) 54:2 54:5 70:22 94:11 107:22 116:14 141:6 168:25 168:25 172:10 172:10 172:10 204:16 204:16 204:20 204:22 205:1 206:19 207:17 210:2 210:4 214:6 214:23 216:6

**cash**(6) 37:10 37:20 144:19 211:22 211:22 219:24

**cash"**(2) 208:5 208:8
**categories**(2) 176:18 195:3
**category**(7) 88:10 103:5 163:14 168:16 168:22 176:19 203:17

**catherine**(1) 6:26
**cause**(2) 18:2 215:20
**causes**(1) 215:17
**ceased**(1) 182:22
**cede**(1) 145:12
**center**(1) 70:21
**cents**(6) 84:18 86:17 86:25 86:25 87:2 91:17

**certain**(18) 48:2 68:8 88:23 93:3 105:1 109:24 109:24 117:2 133:23 140:24 140:25 150:4 157:1 163:2 163:4 169:16 188:15 216:20

**certainly**(31) 17:18 34:2 41:5 43:3 48:14 66:4 76:3 81:16 83:9 83:12 83:25 85:9 87:10 92:17 92:19 96:19 97:17 105:5 107:13 149:3 174:14 181:7 186:10 187:3 196:16 197:23 202:16 214:19 220:7 223:23 224:1

**certification**(1) 224:19
**certified**(1) 210:21
**certify**(1) 224:20
**cetera**(2) 128:20 141:6
**chadbourne**(2) 2:17 5:5
**challenges**(1) 107:22
**chance**(2) 173:15 174:16
**chaney**(1) 9:5
**change**(7) 11:20 86:13 99:25 100:3 100:10 185:2 206:16

**changed**(1) 152:21
**changes**(1) 98:22
**chapter**(6) 1:7 25:15 28:10 204:16 214:5 214:9

**characterizations**(1) 27:16
**characterize**(1) 127:13
**charge."**(1) 188:15
**chart**(16) 16:2 16:3 16:15 16:18 129:12 135:19 135:21 136:23 137:6 137:11 137:14 138:12 151:24 157:8 157:17 169:4

**charts**(1) 102:17
**chase**(1) 8:36
**check**(4) 31:17 43:1 84:13 84:15
**chicago**(2) 1:24 4:34
**childress**(1) 106:14
**choice**(1) 200:20
**choose**(1) 214:12
**chose**(3) 52:5 170:13 170:13
**christine**(1) 7:18
**chuly**(1) 5:44
**chutzpah**(2) 47:17 66:7
**circuit**(5) 50:3 106:14 107:2 207:15 207:16
**circumstances**(10) 33:10 41:3 80:17 86:21 90:21 91:21 91:22 116:2 211:23 216:21

**citation**(8) 82:6 104:22 106:17 170:14 170:14 170:15 174:2 174:17

**citations**(2) 105:20 173:11
**cite**(19) 104:24 105:22 106:13 107:1 107:15 108:8 108:17 108:17 110:16 115:9 115:9 116:14 116:22 170:11 173:16 173:17 173:22 180:3 184:4

**cited**(22) 47:13 85:25 94:11 94:11 107:21 107:21 108:19 110:4 115:15 116:16 118:10 118:18 118:19 149:24 164:20 164:25 164:25 171:8 172:9 178:10 206:19 207:14

**cites**(4) 110:15 118:21 204:13 205:1
**citi**(2) 9:8 9:8
**citigroup**(1) 7:29
**citing**(2) 115:21 116:17
**claim**(122) 17:19 19:21 44:21 50:5 51:18 56:24 57:1 60:8 60:9 60:25 62:13 69:19 70:1 70:3 70:14 70:14 70:14 70:16 70:17 73:6 73:9 73:14 73:20 73:22 74:1 74:5 74:12 75:2 75:9 75:14 75:22 76:12 77:7 77:12 77:13 77:22 78:2 78:11 78:16 79:4 79:6 79:10 79:11 79:12 79:17 79:18 79:21 79:25 79:25 80:12 80:25 81:8 81:15 81:16 81:24 82:1 82:4 82:9 82:14 82:23 82:25 84:12 84:18 84:25 85:16 86:3 86:5 86:9 86:10 86:16 86:16 87:6 87:14 87:23 89:15 90:2 90:17 90:22 92:19 92:22 93:10 93:17 96:19 96:21 97:1 97:6 97:14 98:5 99:20 134:15 135:10 135:11 135:12 135:14 135:18 135:24 154:22 157:4 165:11 176:14 176:15 182:4 182:8 182:10 183:2 191:8 194:13 194:14 194:14 194:19 197:6 197:7 197:10 197:14 198:19 199:21 202:2 202:11 209:1 209:6

**claimant**(2) 95:23 176:14

**claimants**(5) 20:23 135:10 140:24 194:13 194:22

**claimant's**(1) 194:14
**claimed**(7) 30:20 69:22 135:14 138:6 162:3 176:14 194:15

**claiming**(2) 79:4 202:19
**claims**(86) 11:11 15:1 15:21 16:16 16:24 23:3 23:3 23:14 27:17 31:16 32:11 33:5 40:13 40:13 50:3 50:23 51:17 72:11 79:7 79:13 80:1 83:9 86:4 88:22 90:6 97:5 103:4 120:3 120:17 120:22 120:24 120:25 121:7 134:21 134:24 135:22 135:25 136:4 136:7 136:15 136:24 137:6 137:13 137:16 137:16 137:19 137:21 137:23 138:4 138:10 138:11 141:7 142:7 146:17 146:18 146:24 146:25 149:16 150:7 157:6 160:8 162:5 168:12 172:4 176:11 177:6 178:20 182:12 190:9 190:11 190:12 190:14 193:12 195:5 196:5 196:20 196:23 197:4 198:15 199:1 199:8 199:20 199:24 200:4 203:22 203:24

**clarification**(2) 31:20 31:24
**clarity**(1) 146:16
**clark**(1) 4:33
**class**(2) 192:13 194:13
**classification**(11) 79:9 80:2 84:19 86:18 86:23 87:3 87:5 88:14 91:17 97:14 206:24

**classified**(5) 79:6 79:24 189:25 190:2 202:1
**clause**(6) 164:2 164:4 164:9 164:18 180:24 211:10

**clear**(41) 14:22 15:14 19:5 24:1 36:24 37:19 38:20 44:25 50:22 54:6 54:10 56:16 60:10 60:14 65:20 84:6 84:9 87:16 87:19 87:20 89:22 94:5 94:6 94:15 94:17 94:17 100:5 100:8 128:8 146:9 162:5 162:24 166:14 167:11 177:16 203:22 205:8 208:19 213:3 213:19 216:21

**clearly**(15) 45:16 45:17 65:24 80:22 82:25 85:12 92:15 96:18 99:21 163:1 163:25 164:9 164:15 164:15 179:10

**cleary**(1) 3:14
**clerk**(4) 44:12 48:16 48:19 102:2 155:17 201:14

**clients**(5) 18:17 103:4 134:22 176:21 177:5
**close**(6) 33:17 98:23 198:21 199:7 218:1 218:11

**closest**(1) 10:7
**closing**(1) 67:17
**closure**(1) 219:2
**clouds**(3) 66:20 67:17 67:19
**co-creditor**(5) 57:19 58:1 59:23 61:18
**co-creditors**(2) 61:22 64:21
**co-obligor**(3) 182:16 182:19 182:24
**coast**(2) 210:20 110:4
**cobb**(1) 2:10
**code**(4) 39:25 203:20 204:15 207:18
**cole**(1) 1:37
**collateral**(2) 87:25 98:4
**colleague**(1) 210:13
**collect**(11) 37:22 38:3 45:5 45:9 45:12 45:13 45:15 45:19 46:2 59:21 60:5

**collecting**(3) 60:21 60:22 64:16
**collection**(1) 203:15
**colloquy**(2) 108:13 130:10
**color**(1) 98:22
**colorable**(2) 79:12 80:23

**column**(25) 126:1 127:11 135:22 135:24 135:25 136:5 136:6 136:16 137:18 137:22 138:4 138:11 139:8 156:21 156:22 156:22 156:25 156:26 157:1 157:4 157:8 157:11 157:13 157:14 177:1

**columns**(6) 124:8 137:15 156:20 156:20 157:5 157:13

**combination**(2) 121:8 128:18
**come**(28) 16:19 20:14 21:19 40:4 46:10 46:11 46:12 46:13 46:14 54:3 63:21 66:1 95:25 101:15 103:6 103:9 114:10 153:15 155:2 172:11 199:7 205:19 215:7 215:15 218:22 221:7 221:16 221:16

**comes**(7) 14:15 47:17 52:11 53:16 63:25 65:4 107:22

**comfortable**(1) 108:14
**coming**(7) 48:3 93:16 102:21 111:13 111:14 114:25 140:13

**comma**(1) 171:5
**commence**(2) 218:7 219:9
**comment**(5) 100:12 101:9 131:22 202:17 221:20

**commented**(1) 99:16
**comments**(8) 13:14 21:5 27:22 47:2 67:17 68:8 199:12 202:5

**commercial**(3) 36:18 51:9 51:11
**commitments**(1) 188:8
**committed**(1) 66:18
**committee**(4) 2:10 5:4 6:46 189:18
**common**(7) 60:2 70:7 70:11 143:14 162:20 162:21 202:18

**communication**(1) 140:16
**comp**(8) 107:17 108:2 124:21 124:22 139:1 156:21 161:7 168:16

**companies**(2) 22:23 119:19
**company**(104) 1:7 7:43 26:13 37:11 37:12 39:11 39:17 39:18 39:19 39:23 40:11 41:23 42:12 42:13 42:19 43:10 43:14 44:22 46:11 50:1 50:4 50:20 50:22 51:1 51:4 51:12 52:24 53:13 53:16 55:23 55:25 55:25 56:6 56:25 57:5 57:7 57:9 57:11 57:14 57:20 57:21 57:24 57:24 58:9 58:12 58:12 58:17 58:19 58:22 58:25 59:2 59:15 59:22 61:11 61:14 61:17 61:18 61:19 61:20 62:10 62:11 62:17 62:24 62:25 63:8 64:13 64:16 66:6 70:15 81:22 84:23 84:24 85:3 85:11 87:9 88:20 89:15 90:20 97:23 103:7 120:1 120:23 121:3 121:10 121:10 122:15 125:1 128:14 132:25 134:23 135:12 137:13 165:21 168:1 168:7 168:7 173:25 174:5 185:5 188:12 204:4 216:20

**company's**(1) 93:1
**company."**(1) 57:18
**company's**(13) 40:25 120:24 122:10 122:21 123:1 123:3 123:8 123:12 125:9 129:5 134:20 134:24 134:25

**comparable**(1) 158:9
**comparing**(1) 134:22
**compel**(1) 28:10
**compelling**(2) 46:17 80:8
**compels**(1) 81:8
**compensated**(1) 157:25

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **compensation**(70) 5:22 76:1 76:7 106:7 106:7 106:8 106:22 106:25 107:9 107:10 107:18 122:8 122:24 123:20 123:23 124:5 125:16 125:20 126:6 126:7 127:22 128:7 128:19 129:13 129:14 129:20 129:22 131:8 132:18 133:10 135:25 136:24 137:1 137:2 137:19 138:4 138:11 138:16 138:25 146:18 146:25 147:9 147:13 147:16 147:20 150:7 150:25 151:1 151:13 151:17 152:17 157:7 157:8 157:12 157:24 158:6 160:13 163:23 164:1 165:4 168:4 169:4 178:14 179:7 179:11 180:14 181:8 184:11 187:21 188:16 | | **connecting**(1) 181:23 **connection**(34) 11:9 11:11 20:12 72:23 73:11 73:20 73:21 74:4 74:10 74:20 75:1 75:8 75:16 75:24 76:12 76:15 76:22 76:22 77:2 77:6 79:17 88:11 88:16 88:17 88:17 88:19 91:6 97:20 97:23 99:2 99:17 130:18 217:17 219:23 | | **controversial**(2) 29:1 39:16 **controversy**(3) 70:22 209:18 212:16 **controverted**(1) 158:11 **convenience**(1) 166:25 **convenient**(1) 97:12 **conversation**(1) 29:24 **conversations**(2) 116:4 140:21 **converted**(2) 70:23 215:3 **conveyance**(4) 31:16 32:11 38:16 79:13 **convince**(1) 100:9 **copies**(3) 48:19 98:12 174:13 **copy**(4) 44:11 48:16 159:19 183:13 **corbi**(2) 7:49 7:50 **corners**(2) 117:2 191:4 **corporation**(1) 116:15 | | **court**(301) 1:1 10:4 10:6 10:9 10:12 10:16 11:1 12:6 12:23 13:2 13:7 13:16 13:23 14:18 15:11 15:15 15:23 16:7 16:22 17:9 17:11 17:13 17:25 18:5 18:7 18:20 18:23 19:9 19:13 19:24 20:3 20:6 21:10 21:12 21:18 21:19 22:6 22:9 22:20 23:8 24:8 24:19 25:16 26:23 27:10 27:19 28:2 28:9 28:16 28:19 28:21 29:18 30:1 31:14 31:17 31:21 34:3 34:11 34:13 34:16 34:20 34:25 35:3 35:8 35:21 35:25 36:13 36:22 39:21 39:24 40:5 41:18 42:21 44:8 44:11 46:23 47:6 47:23 48:8 48:12 48:14 48:16 48:19 48:23 49:2 49:24 50:1 50:7 54:7 64:23 66:9 66:13 67:8 67:8 67:10 68:2 68:4 68:13 68:17 68:20 69:5 69:8 69:12 69:15 69:17 80:15 81:2 81:12 83:2 87:4 91:16 92:3 92:9 93:19 99:5 100:9 100:12 100:15 100:21 101:6 101:22 101:25 102:5 102:4 103:21 103:24 104:9 104:11 104:19 104:19 104:25 105:5 106:21 107:6 107:8 107:13 107:15 107:21 108:14 108:19 108:20 108:25 109:18 110:2 110:3 110:6 110:9 110:18 110:20 110:22 111:3 111:6 111:19 111:21 111:25 112:4 112:7 112:12 113:16 113:19 114:3 114:8 114:16 114:18 115:2 115:5 115:7 115:23 116:17 116:17 117:8 117:11 117:14 117:16 117:25 118:4 118:12 118:15 119:1 119:7 119:10 119:20 120:4 123:19 125:17 126:20 130:1 130:6 130:9 130:16 130:23 131:13 131:19 131:21 131:24 132:8 136:3 141:20 144:25 145:3 145:8 145:14 146:5 146:8 147:6 148:12 149:19 149:25 150:5 150:9 150:12 150:19 151:3 151:6 151:9 152:1 153:6 153:16 153:20 153:23 154:5 154:10 154:11 154:13 154:16 154:18 154:21 154:24 154:25 155:11 155:15 155:18 155:37 156:10 158:14 158:19 159:2 159:7 159:10 159:16 159:22 159:24 160:20 162:8 162:11 162:18 163:3 163:8 166:12 166:21 167:21 168:15 169:1 169:3 170:6 170:13 170:13 171:7 172:16 174:2 174:3 174:13 175:20 175:25 176:25 177:9 177:12 179:3 179:4 185:14 185:16 185:23 189:20 191:9 191:18 191:24 192:7 192:23 192:25 193:2 193:7 193:17 193:19 194:22 194:23 195:11 195:12 195:19 195:21 195:24 196:1 196:6 196:19 198:2 198:7 199:4 200:9 200:15 200:19 200:21 |
| **competent**(1) 150:13 **competing**(2) 51:17 53:19 **complete**(4) 33:15 42:17 179:11 219:1 **completely**(6) 39:7 80:16 88:7 89:2 97:7 206:2 | | **connections**(3) 75:20 97:16 178:4 **consensus**(1) 223:23 **consent**(2) 34:3 213:15 **consented**(2) 213:17 213:22 **consequence**(2) 50:10 132:6 | | **corrected**(1) 99:21 **correcting**(1) 24:15 **correction**(1) 141:5 **corroon**(1) 3:4 **costs**(8) 23:2 23:2 23:2 23:3 98:10 152:19 188:4 188:13 | | |
| **completeness**(1) 38:11 **completes**(1) 145:6 **complex**(1) 202:7 **compliance**(1) 104:18 **complicated**(2) 32:3 140:1 **component**(3) 156:23 168:12 185:15 **components**(4) 49:16 128:18 135:14 151:1 **comprise**(2) 137:13 138:10 **compromise**(2) 135:17 168:11 **compromises**(1) 137:11 **compute**(1) 194:19 | | **conservative**(1) 215:5 **consider**(5) 77:21 78:8 78:13 81:7 196:7 **consideration**(7) 27:9 46:19 164:23 190:8 196:15 202:13 213:10 | | **costs?"**(1) 152:17 **could**(51) 14:2 17:7 30:16 32:22 37:19 43:6 45:20 46:10 46:11 46:13 46:14 48:2 56:15 66:3 68:15 68:19 76:4 78:7 79:12 82:13 88:14 90:14 90:23 96:5 97:3 101:13 101:16 107:11 107:11 118:16 121:16 121:16 121:18 123:5 123:10 123:19 125:7 128:23 131:20 132:14 149:3 155:6 157:15 158:15 168:7 170:22 182:20 192:19 203:3 212:9 224:2 | | |
| **conaway**(1) 3:13 **concede**(6) 28:13 84:8 93:9 93:9 161:2 212:1 | | **considerations**(1) 80:16 **considered**(3) 115:23 116:3 195:16 **consistent**(16) 25:25 47:22 52:19 61:19 63:18 63:23 79:18 79:20 79:23 161:14 161:15 163:24 183:24 185:19 216:7 218:17 | | **couldn't**(3) 146:20 150:21 185:7 **could've**(1) 215:20 **counsel**(4) 10:5 108:15 187:19 199:25 **counseling**(1) 10:10 **count**(1) 224:2 | | |
| **conceded**(4) 87:18 87:19 181:11 213:22 **concedes**(4) 81:14 192:17 213:3 213:6 **concept**(1) 179:17 **conceptually**(1) 178:4 **concern**(2) 51:16 205:9 **concerned**(6) 51:12 53:3 57:13 92:4 92:5 92:7 | | **consists**(1) 121:24 **consolidated**(4) 10:20 123:13 160:24 **conspicuously**(1) 66:11 **constitute**(3) 106:7 106:22 146:24 **constituted**(1) 99:20 | | **counter**(1) 71:1 **counter-party**(2) 71:1 71:25 **counting**(1) 139:6 **couple**(1) 88:10 **couple**(8) 58:3 59:12 93:25 130:22 166:5 169:25 174:13 181:10 | | |
| **concerning**(2) 15:24 104:25 **concession**(5) 80:10 81:14 96:20 97:18 213:23 | | **constitutional**(2) 210:7 211:17 **construction**(6) 47:23 49:8 51:9 52:20 53:25 167:17 | | **couple-page**(1) 12:15 **course**(43) 22:19 23:4 23:13 50:14 61:17 80:11 82:1 82:5 82:18 82:21 82:24 92:17 93:5 116:18 122:13 122:15 165:22 166:2 167:3 169:23 172:7 172:11 172:20 173:3 173:5 173:6 174:25 175:11 175:13 178:2 181:12 183:5 183:19 183:20 184:1 184:13 184:14 184:20 184:25 185:3 185:4 186:7 186:9 | | **court**(53) 201:2 201:5 201:9 201:11 201:21 201:25 202:16 203:17 205:4 205:15 206:11 206:22 207:7 207:8 207:18 207:24 209:9 210:8 210:22 210:25 210:25 211:1 211:7 212:9 212:20 212:25 213:17 213:19 214:13 215:8 215:19 215:22 215:24 216:2 216:25 217:13 219:15 219:17 221:4 221:8 221:12 221:23 222:21 222:24 223:3 223:13 223:16 223:19 223:25 224:8 224:11 224:15 224:16 |
| **conclude**(3) 78:19 81:5 154:21 **concluded**(1) 66:3 **concludes**(2) 217:1 224:16 **conclusion**(6) 12:14 66:1 81:8 150:9 203:19 221:16 | | **constructive**(1) 31:15 **construe**(2) 54:8 216:8 **construed**(2) 49:9 54:5 **construing**(4) 25:23 66:17 200:13 210:16 **consulting**(1) 119:18 **consummation**(2) 71:8 90:25 **contains**(4) 21:24 69:2 102:8 197:11 | | | | |
| **conclusions**(2) 158:13 190:1 **concomitant**(1) 154:5 **concrete**(2) 206:9 206:17 **concur**(1) 99:11 **conduct**(1) 180:8 **confer**(1) 210:7 **conference**(1) 18:8 **conferred**(1) 201:17 **confidence**(1) 193:3 **confirmation**(19) 18:13 18:15 20:13 29:13 30:19 43:24 67:25 80:9 80:11 80:14 80:19 99:18 99:22 120:4 189:12 189:12 189:21 215:19 217:8 | | **contemplated**(2) 43:21 54:9 **contemplation**(1) 54:15 **contemporaneous**(1) 116:6 **contemporaneously**(1) 182:20 **contend**(4) 36:24 85:8 189:1 213:9 **contested**(3) 19:11 28:15 29:1 **contesting**(2) 147:8 151:13 **context**(29) 17:5 22:22 25:14 29:7 30:11 42:4 42:9 42:19 43:5 45:7 46:15 46:16 54:3 67:5 80:18 80:21 84:14 100:3 100:4 107:22 115:20 115:22 116:24 117:6 147:1 160:7 163:5 211:3 212:10 | | **courtney**(1) 6:15 **courtroom**(6) 1:9 13:21 13:22 48:24 101:16 203:3 | | |
| **confirmations**(1) 97:8 **confirmed**(1) 143:20 **confirming**(1) 140:17 **confirms**(1) 70:11 **conflicting**(1) 80:8 **confounded**(1) 172:6 **confusing**(1) 99:14 **connect**(1) 98:21 **connected**(5) 75:2 77:8 89:1 89:6 96:3 97:25 98:5 98:7 98:16 | | **contextual**(1) 98:25 **contingency**(3) 108:22 108:22 206:21 **contingent**(1) 205:11 **continue**(1) 187:7 **continued**(8) 2:2 3:2 4:2 5:2 6:2 7:2 8:2 9:2 | | | | **courts**(5) 107:24 171:8 205:6 207:24 **court's**(10) 26:8 34:6 37:3 48:11 156:3 157:20 166:25 201:17 205:2 212:15 |
| **connectedness**(2) 80:3 80:4 | | **continuing**(1) 124:21 **contract**(15) 36:22 41:22 41:22 51:8 53:2 66:18 95:10 95:11 116:6 116:7 116:8 116:20 208:3 209:19 210:23 | | | | **covenant**(2) 76:3 89:11 **covenants**(2) 75:25 89:10 **covered**(5) 44:5 54:1 93:23 96:11 140:24 **covers**(1) 126:23 **cpa**(2) 14:17 143:23 **crack**(1) 53:5 **crafted**(1) 169:14 **craziness**(1) 66:7 **crazy**(1) 53:19 **create**(2) 77:23 209:5 **created**(2) 86:8 86:9 **creation**(1) 93:6 |
| | | **contract's**(1) 94:15 **contracts**(7) 116:19 188:11 207:25 208:2 209:15 211:5 211:21 | | | | |
| | | **contractual**(5) 36:16 49:5 94:10 198:16 212:11 | | | | |
| | | **contradict**(1) 149:7 **contradicted**(1) 76:24 **contrary**(7) 38:22 61:24 62:5 65:6 65:7 162:25 170:24 | | | | |
| | | **contrast**(1) 76:4 **control**(2) 33:6 33:16 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**credit**(84) 3:12 8:27 8:28 70:20 71:3 71:5 71:6 71:9 71:12 71:17 71:20 71:21 71:24 72:4 72:6 72:8 73:11 73:21 73:22 73:23 74:3 74:4 74:7 74:9 74:11 74:12 74:15 74:20 75:2 75:3 75:6 75:10 75:15 75:18 75:18 76:3 76:5 76:6 76:8 76:9 76:13 76:17 76:19 77:5 77:8 77:17 78:13 78:19 78:24 79:6 79:14 79:17 79:22 80:7 80:5 82:15 82:15 82:19 86:19 87:7 87:8 87:15 87:23 88:2 88:4 88:22 89:1 89:16 90:24 90:24 91:5 91:7 96:24 97:7 97:10 97:11 98:3 98:5 98:9 98:17 142:19 143:1 143:5 187:4

**credited**(1) 140:2

**creditor**(41) 20:20 20:21 20:22 25:1 25:2 25:7 25:14 26:10 33:2 33:21 33:5 33:21 36:8 38:15 40:12 40:13 41:7 41:24 45:24 49:20 49:20 50:6 54:25 54:25 55:7 56:12 57:17 63:13 64:8 64:9 84:16 84:17 166:7 173:8 173:8 180:5 180:6 208:21 212:11 212:12 214:24

**creditors**(20) 2:11 5:5 31:15 33:23 46:9 50:16 50:20 51:12 54:24 56:2 56:7 59:24 83:21 93:13 180:21 184:5 184:6 191:8 203:17 209:21

**creditor's**(2) 19:1 33:14

**critical**(9) 37:24 52:4 55:8 55:13 94:3 152:15 166:13 166:18 186:12

**cross**(7) 112:18 113:9 114:15 117:22 130:4 130:21 153:18

**cross-examination**(1) 131:3
**cross-examine**(2) 116:10 130:2
**crystal**(3) 37:19 38:20 208:19
**current**(37) 126:8 126:17 127:6 127:8 127:13 127:15 127:20 128:3 133:6 133:7 133:11 142:3 142:20 143:6 144:8 144:14 149:14 149:20 149:22 160:18 161:3 170:17 170:20 171:5 171:18 171:20 172:1 172:1 174:1 174:1 174:10 174:12 186:15 186:15 186:22 186:25 187:4

**currently**(1) 119:13
**custom**(2) 116:9 185:7
**customary**(1) 118:15
**cut**(1) 102:11
**cutler**(1) 7:5
**cutoff**(1) 121:15
**cybergenics**(15) 39:13 39:15 41:9 41:12 41:19 41:21 45:22 49:7 49:25 50:7 50:9 50:21 51:5 57:7

**cycle**(1) 160:17
**damage**(1) 85:16
**damper**(1) 12:18
**dan**(1) 2:11
**daniel**(2) 2:36 99:7
**data**(3) 1:46 94:1 220:1
**date**(13) 32:24 92:18 94:25 96:10 96:11 113:4 186:12 203:9 208:10 211:23 212:18 218:5 224:25

**dates**(3) 18:14 141:5 141:6
**dave**(1) 5:38
**david**(25) 2:18 2:35 3:38 4:5 4:31 4:32 4:38 5:32 6:43 7:40 22:13 27:20 35:9 48:9 67:12 83:4 100:18 177:15 191:21 196:2 200:11 201:15 209:11 216:3 222:2

**davidson**(1) 5:17
**davis**(3) 2:49 8:36 98:10
**day**(6) 6:48 18:18 192:9 196:12 220:2
**day-to-day**(1) 172:12
**days**(1) 184:24
**dbtca**(1) 3:36
**dcf**(1) 215:3

**dcl**(8) 24:18 80:14 80:19 80:24 189:14 218:19 219:4 219:7

**deal**(18) 11:6 14:10 14:24 14:25 15:7 31:10 59:11 65:18 102:15 113:8 114:14 119:3 119:4 145:10 173:23 177:21 213:13 213:14

**deal-specific**(3) 75:13 75:16

**dealing**(11) 24:4 34:2 35:12 41:21 54:2 116:18 147:2 165:24 166:18 198:4 214:2

**deals**(6) 158:22 168:20 168:22 169:8 174:11 205:11

**dealt**(1) 186:8
**dearborn**(1) 1:23
**dearth**(1) 115:11
**deaths**(1) 141:6
**debenture**(47) 4:4 7:17 14:1 21:9 21:14 22:15 22:21 32:4 32:13 35:10 47:2 77:25 79:19 83:5 85:18 86:6 94:11 96:9 99:12 105:21 107:1 109:2 109:23 110:14 111:11 141:23 148:17 151:11 156:19 164:19 166:1 167:7 167:13 170:3 170:16 171:1 172:7 173:16 177:13 177:15 196:1 196:3 204:1 204:9 209:12 215:7 215:15

**debenture's**(1) 114:22
**debentures**(5) 73:4 73:16 77:16 85:23 86:5
**debit**(4) 142:19 142:25 143:5 187:4
**debited**(1) 140:1
**deborah**(1) 2:37
**debt**(88) 22:17 22:18 22:22 22:24 22:25 23:5 23:6 23:8 23:9 23:9 23:10 23:11 23:14 23:15 23:15 25:5 26:6 35:15 35:16 36:5 38:2 38:3 38:24 39:2 39:3 39:5 39:6 39:6 40:22 40:24 40:25 41:23 43:18 45:25 46:1 52:15 52:21 52:23 53:18 53:18 57:16 65:24 71:7 75:6 76:5 78:12 78:12 78:16 82:12 82:15 82:15 82:21 84:25 85:8 87:9 91:8 91:19 93:11 93:12 93:14 95:1 95:2 95:5 95:24 96:1 96:2 96:3 97:25 148:19 148:20 148:24 153:4 172:19 177:17 180:7 182:15 182:16 184:16 189:16 190:4 190:20 191:3 197:15 198:20 212:18 214:25 216:11

**debtholder**(2) 212:5 212:9
**debtor**(23) 5:28 15:23 23:5 24:9 25:9 39:12 39:22 40:22 40:10 41:16 50:12 50:14 50:18 50:20 55:8 68:24 89:19 101:8 135:11 175:22 176:5 193:14 214:4

**debtors**(11) 1:11 1:21 19:2 33:24 102:6 135:17 189:17 190:13 190:17 193:25 219:24

**debtors'**(6) 19:15 27:4 119:8 190:12 194:17 215:2

**debts**(3) 37:23 95:1 169:19
**december**(2) 129:21 138:17
**decide**(11) 20:21 23:25 25:13 25:15 29:6 177:4 177:5 184:2 191:24 206:17 208:25

**decided**(3) 25:13 26:11 50:3
**deciding**(1) 205:7
**decision**(10) 17:6 23:24 43:24 106:18 112:13 154:5 158:6 204:10 205:2 219:17

**decisions**(2) 204:14 210:11
**declaration**(11) 14:3 14:7 14:25 15:6 111:15 111:17 153:14 158:13 158:16 159:4 167:24

**declarations**(2) 111:21 112:23
**declined**(1) 30:8
**decree**(1) 206:11
**default**(1) 160:6
**defeated**(1) 67:7
**defendant's**(1) 5:22
**defendants**(2) 5:21 33:23

**defense**(1) 205:18
**defer**(4) 137:25 211:1 211:7 212:17
**deferral**(2) 124:23 209:17
**deferred**(77) 106:6 107:9 107:17 107:20 115:12 122:8 122:23 123:19 123:23 124:5 124:20 124:21 124:22 124:23 124:24 125:1 125:16 125:19 126:6 126:6 129:14 129:21 131:8 132:18 135:25 136:23 137:2 137:19 137:23 138:4 138:11 138:16 138:25 139:1 147:2 147:3 151:13 151:16 152:17 156:21 157:6 157:8 157:11 157:24 160:12 161:7 163:16 163:18 163:22 164:3 168:4 168:15 169:4 169:11 178:14 178:15 179:2 179:12 179:17 179:18 179:21 179:22 180:12 180:13 180:16 180:22 181:3 181:8 181:16 181:22 182:6 184:11 184:11 187:21 188:15 188:16 188:23

**define**(5) 109:10 144:11 170:17 172:11 181:24

**defined**(17) 59:5 70:2 72:21 77:14 78:16 81:21 89:23 90:1 109:1 109:7 164:5 164:8 164:23 165:6 165:7 181:4 181:15

**defines**(3) 56:15 72:16 109:16
**defining**(1) 144:9
**definition**(35) 40:18 40:20 55:11 56:10 63:18 71:22 73:1 73:2 76:19 84:20 92:14 92:20 95:4 113:3 116:10 144:20 144:21 151:16 163:11 164:21 170:24 171:3 171:5 174:12 178:22 178:24 179:3 180:3 180:17 181:18 181:25 182:21 186:4 197:15 199:9

**definitions**(10) 85:4 95:20 104:25 105:2 117:5 118:7 118:10 118:21 191:6 197:1

**delaware**(21) 1:2 1:11 1:40 3:45 10:2 36:20 36:22 49:8 54:1 54:2 65:7 172:23 208:4 208:11 210:20 211:1 211:20 211:20 216:6 216:6 216:23

**delay**(1) 154:4
**deliver**(3) 96:5 98:13 98:15
**deliverable**(1) 52:13
**delivers**(1) 96:20
**delivery**(1) 96:5
**demand**(3) 57:18 57:20 58:11
**demanding**(1) 37:8
**demonstrated**(1) 74:12
**demonstrates**(2) 26:2 38:11
**demonstrative**(4) 48:11 52:10 71:16 85:21 89:25 163:10

**demonstratives**(4) 10:24 69:14 85:21 89:25
**denied**(2) 30:5 112:21
**denominated**(1) 125:13
**denotes**(1) 173:22
**dense**(1) 72:17
**denying**(1) 189:12
**depart**(1) 42:8
**depending**(3) 13:15 14:9 104:16
**deplete**(3) 51:13 54:22 55:1
**depletes**(1) 53:17
**deposition**(12) 102:24 112:24 147:23 148:1 152:9 152:15 156:14 158:11 174:24 218:9 220:24 222:8

**depositions**(3) 218:6 218:8 219:9
**deputized**(2) 95:24 96:2
**derived**(1) 146:24
**derives**(1) 169:12
**describe**(4) 105:11 136:3 158:12 181:17
**described**(3) 78:11 166:13 217:2
**describing**(2) 121:13 166:15
**description**(1) 195:4
**descriptive**(1) 195:4
**designated**(2) 105:12 112:20
**designed**(2) 205:3 218:22
**designing**(1) 150:24

**desire**(1) 221:5
**despite**(2) 23:18 195:14
**detail**(2) 157:16 217:19
**details**(2) 141:7 157:1
**determination**(13) 24:6 34:4 87:5 184:8 184:19 185:7 185:8 208:25 209:3 209:20 210:9 210:20 211:15

**determinations**(1) 129:10
**determinative**(1) 215:25
**determine**(12) 17:1 88:2 101:18 124:13 130:7 135:1 163:4 194:23 201:25 204:14 205:3 218:12

**determined**(4) 20:16 206:20 220:8 221:1
**determines**(2) 105:13 203:17
**determining**(3) 27:5 120:24 206:23
**detriment**(1) 36:18
**deutsch**(1) 5:6
**deutsche**(11) 22:15 22:16 32:4 32:12 35:11 83:5 94:11 99:12 177:16 196:4 209:13

**develop**(1) 206:16
**development**(2) 203:12 205:10
**devised**(2) 84:17 86:16
**devolve**(1) 205:2
**dewey**(2) 3:20 27:1
**diane**(1) 116:15
**diaz**(1) 1:46
**dictionaries**(2) 47:13 116:24
**dictionary**(7) 47:16 108:19 108:20 109:15 164:8 164:21 171:7

**did**(54) 11:20 14:23 25:15 27:3 28:23 28:24 28:25 34:2 36:14 37:18 42:18 44:14 50:23 51:18 53:1 55:2 64:6 64:7 66:12 66:14 80:15 89:13 90:4 91:14 93:5 100:8 101:9 101:11 109:20 125:4 132:1 132:10 132:12 134:16 134:18 140:12 140:14 143:8 143:9 152:12 156:25 158:5 160:14 164:13 171:25 174:19 187:1 194:8 202:4 209:25 216:17 216:18 220:9 223:3

**didn't**(7) 83:7 94:21 96:12 99:24 99:25 107:3 118:10

**didn't**(24) 11:20 15:3 23:21 25:13 28:5 28:23 31:17 43:11 43:16 76:6 76:21 78:9 132:5 132:11 152:23 154:13 173:15 174:15 175:8 175:17 195:8 199:1 207:11 210:4

**difference**(4) 29:21 91:15 186:20 195:5
**differences**(3) 29:22 29:24 97:13
**different**(49) 19:12 24:5 24:14 24:16 27:23 30:10 30:11 31:2 35:13 41:15 49:11 49:16 54:3 56:2 56:3 56:24 59:20 76:11 80:16 86:21 86:22 86:22 91:21 91:22 97:5 97:7 97:9 100:3 100:10 101:17 110:3 110:16 115:22 116:23 131:17 131:17 132:11 152:21 169:14 170:15 172:8 172:9 175:1 177:25 199:1 208:2 208:3 208:18 214:2

**differently**(2) 118:17 143:10
**difficult**(2) 136:20 212:2
**difficulty**(1) 107:6
**diligence**(1) 199:2
**diligenced**(2) 198:23 198:24
**dilution**(2) 33:15 47:10
**direct**(13) 33:4 33:12 42:8 107:7 119:11 122:10 130:4 134:11 135:2 136:18 138:21 175:2 206:11

**directed**(3) 174:3 174:3 222:4
**directing**(3) 133:16 133:17 136:21
**direction**(3) 120:21 207:18 208:11
**directions**(1) 210:17
**directly**(7) 25:8 37:13 46:22 49:16 84:3 115:16 203:5

**director**(3) 119:16 120:14 124:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **directors**(4) 4:46 6:48 124:20 147:17 | | **documents**(48) 14:4 22:1 22:2 34:22 34:23 74:15 77:22 81:15 87:12 87:13 88:6 103:3 103:16 103:22 104:2 104:19 105:25 106:11 110:11 111:14 111:16 111:18 112:15 113:20 113:23 114:24 114:25 115:3 115:4 115:25 121:25 141:11 146:11 146:23 149:9 151:23 152:2 157:20 158:3 158:9 158:12 158:15 169:1 176:15 176:16 182:10 187:16 191:4 | | **dozen**(2) 91:3 203:3 | | **egi's**(6) 38:12 38:17 38:22 38:22 43:21 211:20 |
| **disaggregate**(1) 58:11 | | | | **dozens**(1) 10:6 | | |
| **disagree**(4) 20:22 148:21 160:22 162:10 | | | | **draft**(1) 18:12 | | **ehmer**(1) 8:11 |
| **disagreement**(3) 149:18 162:22 165:25 | | | | **drafted**(6) 48:1 48:1 48:3 165:18 169:17 169:20 | | **eight**(4) 10:21 135:4 135:4 190:11 |
| **disagrees**(1) 22:3 | | | | | | **either**(25) 20:12 38:4 38:25 50:23 68:15 77:19 101:3 104:4 115:25 117:1 136:7 142:19 142:20 143:5 157:13 173:24 177:12 177:17 180:25 188:25 192:18 194:24 216:22 217:12 223:7 |
| **disallows**(1) 38:23 | | | | **drafting**(1) 169:19 | | |
| **discern**(2) 36:23 172:6 | | **document's**(1) 208:7 | | **drafts**(3) 48:6 167:2 168:19 | | |
| **disclosure**(1) 220:2 | | | | **dramatically**(1) 98:22 | | |
| **disconnect**(1) 79:1 | | **does**(77) 18:22 20:13 23:11 23:24 24:5 24:19 28:8 28:10 34:10 35:20 50:1 54:20 54:24 54:25 56:21 57:7 63:2 63:7 69:5 74:24 88:4 88:5 88:8 88:9 90:7 91:5 91:8 92:14 99:3 99:11 112:12 116:25 125:24 127:9 130:1 134:6 134:7 135:8 137:4 137:5 137:8 137:9 137:9 138:10 138:20 140:3 141:20 144:11 144:13 144:16 152:16 153:20 154:21 154:23 161:17 162:1 165:17 170:21 177:9 179:6 179:7 179:10 180:13 181:3 181:20 181:20 185:12 185:13 186:24 198:7 200:7 205:23 206:22 210:7 221:15 221:23 222:21 | | **draw**(7) 95:17 97:16 97:16 101:13 150:10 158:12 190:1 | | **ejusdem**(1) 85:25 |
| **disconnected**(1) 181:17 | | | | | | **elaborate**(2) 44:6 223:8 |
| **discovery**(10) 217:22 217:24 217:25 218:1 218:16 222:11 222:14 222:17 222:19 222:19 | | | | **drawn**(2) 181:8 186:22 | | **elden**(1) 4:47 |
| | | | | **drew**(1) 2:43 | | **eldersveld**(1) 5:38 |
| | | | | **drexel**(1) 172:10 | | **elections**(1) 219:23 |
| **discreet**(1) 106:4 | | | | **drinks**(1) 30:1 | | **electronic**(2) 1:52 224:21 |
| **discretionary**(2) 29:3 29:15 | | | | **drive**(1) 46:4 | | **eli**(1) 2:50 |
| **discrimination**(6) 17:19 192:12 192:12 192:19 192:20 196:14 | | | | **driven**(1) 207:21 | | **eliminated**(1) 221:2 |
| | | | | **drown**(1) 198:7 | | **ellipses**(2) 51:25 179:13 |
| **discuss**(4) 70:8 190:23 217:6 222:7 | | | | **due**(21) 45:21 70:17 71:3 72:23 73:10 73:20 74:10 74:25 76:18 77:1 77:2 77:5 78:7 88:19 97:23 137:25 164:7 187:8 218:22 218:23 219:7 | | **else**(21) 13:23 14:18 23:1 23:7 23:11 76:23 82:22 103:5 106:23 141:20 146:19 147:21 153:20 158:7 182:9 197:19 200:5 206:16 218:20 221:23 222:21 |
| **discussed**(1) 163:22 | | | | | | |
| **discusses**(2) 61:7 204:18 | | | | | | |
| **discussing**(2) 69:22 177:21 | | | | | | |
| **discussion**(6) 17:23 158:5 161:18 186:3 187:18 190:21 | | **doesn't**(10) 81:16 86:2 86:4 86:13 90:1 96:22 98:21 112:4 112:16 117:18 | | **duly**(2) 95:24 96:1 | | **emerald**(2) 108:20 110:4 |
| | | | | **dunn**(1) 6:43 | | **employed**(1) 119:13 |
| | | | | **duplicate**(1) 42:25 | | **employee**(11) 23:2 106:24 107:19 127:22 129:13 129:20 133:10 137:1 143:4 145:22 168:6 |
| **disgorgement**(3) 25:6 36:7 41:6 | | | | **dura**(2) 36:20 42:1 | | |
| **disjunctive**(2) 77:3 212:6 | | | | **durer**(1) 166:21 | | |
| **disjunctive."**(1) 179:14 | | **doesn't**(34) 19:18 33:24 43:8 43:8 47:12 47:12 47:18 49:13 49:22 50:14 50:16 50:18 55:7 56:3 57:11 57:18 57:19 59:8 60:7 60:12 60:13 61:14 61:21 65:18 78:19 168:23 174:7 179:24 180:20 185:2 195:23 198:10 198:13 204:4 | | **during**(2) 22:19 183:8 | | **employees**(13) 5:21 107:18 107:23 157:25 161:13 166:10 166:14 167:4 167:5 167:10 175:11 188:8 188:9 |
| **dispositive**(1) 27:7 | | | | **duties**(1) 148:7 | | |
| **dispute**(27) 14:5 15:24 20:16 22:3 24:7 35:12 39:14 40:16 41:19 47:14 47:15 83:10 136:14 146:6 146:15 146:17 148:12 148:15 163:1 190:17 190:23 191:1 194:20 196:9 206:10 206:10 210:7 | | | | **duty**(1) 163:4 | | |
| | | | | **dying**(1) 12:12 | | **enable**(3) 37:14 46:18 208:25 |
| | | | | **d'agostino**(2) 8:5 8:6 | | **encompassed**(2) 74:16 74:17 |
| | | **doing**(7) 16:14 54:15 61:2 61:4 66:17 98:20 220:3 | | | | **end**(14) 81:18 92:3 122:4 125:5 140:3 158:13 171:13 172:18 205:18 208:22 214:5 214:6 217:25 218:20 |
| **disputed**(2) 102:10 206:4 | | | | **each**(14) 11:5 12:10 23:4 83:9 135:9 135:18 142:15 156:4 158:3 158:8 158:12 158:14 158:23 179:14 | | |
| **disputes**(9) 11:1 11:24 22:16 22:20 29:8 74:23 120:24 205:7 222:11 | | | | | | |
| | | **dollar**(15) 84:18 86:25 86:25 87:2 91:18 136:8 137:4 137:4 137:10 137:11 137:12 140:18 172:22 201:24 202:3 | | **earlier**(11) 26:8 26:15 81:19 84:11 88:13 126:15 156:17 163:22 178:11 204:20 216:20 | | **ended**(4) 86:15 90:19 96:11 125:10 |
| **disqualifying**(1) 78:3 | | | | | | **ends**(5) 38:17 55:15 56:10 122:3 223:12 |
| **distinct**(2) 60:1 172:9 | | | | | | **enforce**(2) 60:15 208:11 |
| **distinction**(8) 26:8 26:13 39:11 55:9 179:22 186:18 186:19 186:23 | | **dollars**(3) 93:12 107:25 204:11 | | **earned**(4) 108:1 167:24 187:9 187:10 | | **enforced**(3) 40:2 44:15 216:22 |
| | | **dominant**(2) 42:9 42:15 | | **easier**(2) 195:3 206:17 | | **enforcement**(1) 79:8 |
| | | **don't**(15) 82:22 85:5 87:1 87:17 89:12 89:13 89:18 89:19 91:23 94:15 113:4 113:22 118:16 118:17 119:2 | | **easiest**(1) 21:18 | | **enforcing**(4) 24:11 39:23 44:23 205:5 |
| **distinguish**(4) 75:22 179:24 181:1 186:24 | | | | **easily**(1) 159:11 | | **engage**(1) 179:3 |
| **distinguishes**(2) 144:7 178:17 | | | | **easy**(1) 63:24 | | **engagement**(1) 120:14 |
| **distribute**(1) 205:12 | | | | **economic**(1) 33:15 | | **england**(4) 209:25 210:16 211:6 211:18 |
| **distributed**(2) 53:4 203:21 | | **done**(19) 15:11 21:23 32:20 35:22 41:13 60:24 64:1 64:9 66:22 76:2 101:19 109:23 112:22 120:15 140:8 192:16 211:9 215:20 219:25 | | **economically**(1) 97:14 | | **english**(1) 3:36 |
| **distribution**(4) 20:7 46:8 52:12 209:4 | | | | **ecro**(1) 1:44 | | **enhances**(1) 46:6 |
| **distributions**(11) 26:10 44:18 46:19 46:21 55:6 61:10 62:16 202:12 204:18 205:25 207:4 | | | | **effect**(4) 25:20 40:4 64:23 160:9 | | **enjoin**(2) 38:3 205:4 |
| | | | | **effectively**(7) 31:11 70:23 75:5 75:5 78:23 98:5 102:21 | | **enough**(8) 26:23 75:2 75:3 159:22 166:20 166:22 191:14 204:11 |
| **district**(10) 1:2 19:13 32:2 104:18 105:10 106:19 106:20 107:15 115:18 166:23 | | **don't**(83) 11:23 12:1 13:2 13:19 16:17 16:20 26:18 27:16 29:20 30:11 34:8 34:9 39:19 40:8 40:15 41:11 49:13 51:24 56:11 56:13 62:11 64:3 65:8 66:11 72:19 75:12 76:7 78:5 80:7 129:24 130:19 131:18 131:22 136:14 144:20 145:1 145:18 150:8 152:4 153:10 153:16 158:11 158:12 158:16 159:14 159:20 177:17 177:22 181:9 183:8 183:9 183:10 185:10 186:1 187:21 189:2 189:2 189:10 190:4 191:5 191:24 192:5 196:10 196:21 196:25 197:21 199:2 199:10 200:4 200:25 205:21 206:14 207:8 211:7 214:3 214:15 215:1 215:4 215:5 215:8 219:4 219:5 | | | | |
| **divested**(5) 19:10 19:17 21:6 24:21 27:5 | | | | **efficiency**(1) 28:8 | | **enron**(1) 86:1 |
| **divestiture**(3) 30:10 30:14 30:20 | | | | **efficient**(1) 28:7 | | **ensure**(1) 26:5 |
| **divesture**(2) 29:17 30:6 | | | | **effort**(1) 50:4 | | **ensuring**(1) 121:15 |
| **divorced**(1) 88:13 | | | | **efforts**(1) 195:14 | | **entangled**(1) 205:6 |
| **docket**(3) 135:11 159:14 159:21 | | | | **egi**(70) 11:16 23:20 34:23 35:12 35:13 35:14 36:5 36:25 37:6 37:8 37:16 37:21 37:22 38:3 38:6 38:19 38:20 38:21 39:6 39:12 39:18 39:20 40:14 40:14 40:19 41:24 43:15 43:23 44:16 44:20 44:24 45:2 45:6 45:19 45:20 46:7 46:18 67:1 69:24 83:11 81:14 81:20 81:23 82:2 83:1 83:20 84:14 88:7 92:13 92:15 93:12 105:1 109:4 163:3 169:13 169:24 177:20 177:22 178:3 179:1 185:22 186:3 189:3 191:21 197:22 208:3 208:15 211:18 | | **enter**(7) 48:12 73:25 75:4 75:19 76:4 93:2 135:1 |
| **doctrine**(1) 214:21 | | | | | | |
| **document**(42) 21:24 43:24 43:20 106:12 121:18 121:21 121:24 122:2 122:3 122:7 122:9 122:12 122:13 123:7 123:25 125:11 125:12 126:15 132:5 134:14 134:17 156:12 156:13 156:15 156:16 167:2 167:15 168:5 168:18 169:5 169:13 169:13 169:17 169:21 175:6 179:18 183:15 187:23 187:23 188:24 217:15 217:21 218:3 | | | | | | **entered**(7) 24:11 31:14 88:6 173:5 175:10 183:18 183:21 |
| | | | | | | **enterprise**(2) 214:8 219:17 |
| | | | | | | **entire**(7) 42:10 57:25 59:2 109:22 174:22 197:11 197:14 |
| | | **door**(4) 63:25 65:4 150:20 150:21 | | | | |
| | | **dorr**(1) 7:5 | | | | **entirely**(2) 115:22 116:23 |
| | | **doubt**(6) 38:11 61:5 117:24 180:12 189:16 192:15 | | **egi's**(3) 83:19 93:8 93:16 | | **entirety**(2) 25:25 42:16 |
| | | | | **egi-trb**(24) 4:30 6:23 27:21 48:10 49:14 49:18 52:20 53:1 53:6 53:10 53:19 55:6 58:20 66:14 66:18 66:23 66:24 66:25 68:9 100:18 101:4 200:12 200:14 216:4 | | **entitle**(2) 46:18 197:19 |
| **documentary**(1) 13:9 | | | | | | **entitled**(15) 41:3 49:4 49:18 63:13 65:20 70:4 122:8 141:1 178:21 190:21 199:16 202:1 202:24 205:24 208:21 |
| | | **dougherty**(1) 4:48 | | | | |
| | | **douglas**(1) 5:6 | | | | |
| | | **down**(25) 17:15 21:15 26:22 33:21 48:3 78:7 94:4 102:11 109:3 123:22 124:20 124:25 125:18 127:7 136:22 138:24 145:8 156:22 157:15 158:24 167:14 169:9 173:10 179:14 205:21 | | **egi-trb's**(1) 63:4 | | **entitlement**(1) 83:25 |
| | | | | | | **entitlements**(1) 200:5 |
| | | | | | | **entity**(5) 42:7 105:12 105:14 172:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **entry**(4) 92:23 93:6 142:14 171:11 | | **evidence**(78) 13:9 15:2 16:22 22:5 22:12 34:24 66:19 67:20 69:4 70:10 70:10 77:25 78:10 79:20 81:7 82:23 87:16 87:18 94:20 94:21 94:23 95:13 95:25 96:5 96:6 99:1 102:22 103:19 104:1 105:6 105:18 105:20 108:13 110:2 110:18 110:19 111:22 111:24 112:5 112:10 115:1 115:20 116:3 116:3 116:22 117:3 117:3 117:17 118:8 118:11 145:2 145:24 154:10 154:14 156:2 156:2 156:12 157:3 158:10 159:9 161:24 162:2 163:20 168:5 170:7 170:12 172:16 176:17 193:15 204:19 206:4 214:14 215:10 215:11 215:16 215:18 215:21 215:25 | | **exhibit**(63) 10:20 34:18 95:18 102:18 102:19 102:20 102:20 102:21 102:24 103:18 104:5 109:15 109:17 123:5 124:3 124:12 125:7 125:8 125:25 126:14 127:3 127:10 127:19 128:24 132:18 133:4 133:16 133:24 134:12 136:18 136:21 136:21 137:6 137:18 138:9 138:13 138:21 140:9 142:2 142:9 145:2 156:8 156:13 156:18 157:21 159:1 159:9 175:6 175:24 176:2 176:9 176:13 176:17 183:10 183:12 187:16 187:16 187:17 187:22 187:23 194:16 194:25 198:22 | | **extent**(25) 12:12 16:5 31:22 48:4 56:18 56:21 57:6 58:8 81:7 104:24 107:5 118:10 148:17 148:21 157:14 162:24 168:25 171:22 174:1 184:17 187:2 188:8 203:9 208:14 208:22 | |
| **envisions**(1) 45:14 | | | | | | | |
| **eos**(2) 8:48 8:48 | | | | | | **extraordinary**(2) 172:17 173:1 | |
| **epiq**(2) 194:10 194:11 | | | | | | **extremely**(1) 196:5 | |
| **equal**(10) 23:4 23:14 71:2 71:14 74:19 75:15 108:23 165:2 176:8 188:7 | | | | | | **extrinsic**(7) 70:9 81:7 87:15 87:18 109:4 116:2 117:2 | |
| | | | | | | | |
| **equally**(1) 106:11 | | | | **exhibits**(38) 10:21 10:22 10:23 10:24 10:25 21:24 21:25 22:4 22:11 34:19 34:19 35:1 35:5 36:4 69:2 69:6 102:8 102:11 102:12 102:23 103:25 104:14 104:16 112:8 114:2 114:5 117:17 154:9 156:1 156:5 166:25 176:2 176:3 193:12 193:13 194:6 194:12 220:24 | | **eyes**(1) 48:1 | |
| **erens**(1) 6:49 | | | | | | **face**(6) 84:5 84:9 87:17 87:19 87:20 162:5 | |
| **eric**(7) 7:34 7:35 | | **evidenced**(1) 168:4 | | | | **faced**(1) 47:6 | |
| **esop**(5) 43:13 43:14 106:20 107:16 107:23 | | **evidences**(8) 53:2 53:7 54:20 64:18 73:4 73:16 77:16 85:24 | | | | **facilitate**(1) 218:7 | |
| **especially**(1) 46:21 | | | | | | **fact**(60) 19:9 19:10 19:14 21:1 28:10 29:14 31:25 37:12 40:15 52:3 65:22 75:17 78:4 80:25 87:7 87:8 89:23 90:1 91:14 92:19 95:19 96:18 96:25 99:1 101:15 106:25 110:14 116:9 132:6 143:20 145:21 146:18 147:10 147:21 148:6 148:9 148:13 149:4 149:7 149:15 150:3 150:6 152:10 154:12 154:12 161:13 168:9 168:19 179:5 185:5 186:23 209:5 210:6 213:12 216:17 217:22 217:25 218:12 220:4 228:7 | |
| **esq**(17) 1:22 1:27 1:32 1:39 2:5 2:11 2:12 2:18 2:19 2:20 2:27 2:35 2:36 2:37 2:43 2:50 3:5 3:6 3:14 3:21 3:22 3:28 3:29 3:30 3:31 3:37 3:38 3:44 4:5 4:6 4:7 4:13 4:19 4:25 4:31 4:32 4:38 4:48 5:6 5:7 5:8 5:12 5:13 5:14 5:18 5:24 5:25 5:29 5:30 5:31 5:32 5:33 5:34 5:44 5:48 6:5 6:11 6:24 6:26 6:30 6:35 6:39 6:43 6:49 7:6 7:11 7:18 7:22 7:24 7:26 7:31 7:50 8:6 8:15 8:33 8:37 8:41 | | **evidencing**(1) 158:2 | | | | | |
| | | **evidentiary**(10) 11:7 11:14 11:15 11:17 22:2 108:4 112:12 154:22 183:8 193:22 | | **exide**(1) 42:18 | | | |
| | | | | **exist**(2) 76:6 182:22 | | | |
| | | **evince**(1) 54:20 | | **existed**(1) 78:14 | | | |
| | | **eviscerate**(1) 42:3 | | **existence**(1) 31:8 | | | |
| **essence**(2) 85:13 90:9 | | **eviscerated**(1) 36:18 | | **existing**(6) 24:17 24:18 24:20 24:20 54:23 86:24 | | **facts**(5) 140:17 146:4 146:6 150:4 206:4 | |
| **essentially**(19) 20:5 20:7 30:7 45:6 70:25 86:25 88:15 102:23 129:8 157:5 157:11 160:14 192:17 194:5 200:4 217:11 217:23 219:21 219:25 | | **eviscerates**(2) 60:17 60:17 | | | | **factual**(7) 54:3 96:20 97:18 148:25 149:2 149:12 159:18 | |
| | | **exact**(2) 110:15 165:16 | | **expansive**(1) 39:5 | | | |
| | | **exactly**(5) 132:1 162:13 166:24 181:10 181:11 | | **expansively**(1) 54:8 | | | |
| | | | | **expect**(5) 17:15 38:9 65:16 130:11 191:7 | | **fail**(1) 99:3 | |
| **establish**(3) 94:4 145:20 146:22 | | **examination**(3) 114:15 119:11 144:25 | | **expectation**(1) 216:15 | | **fails**(2) 25:20 215:25 | |
| **established**(2) 94:12 131:14 | | **examine**(4) 112:18 113:9 117:22 141:20 | | **expectations**(4) 36:19 216:12 216:14 | | **fair**(3) 126:3 142:2 224:9 | |
| **estate**(17) 25:10 25:25 32:10 39:12 41:16 41:25 50:11 59:23 61:3 61:18 61:23 62:16 90:18 203:11 212:13 215:17 215:20 | | **examiner**(8) 65:13 65:14 65:15 65:25 66:8 67:6 67:22 67:24 | | **expedited**(1) 222:12 | | **fairly**(3) 188:15 192:15 192:20 | |
| | | | | **expense**(42) 82:5 82:9 82:13 82:16 82:24 92:16 92:23 93:4 109:11 131:11 131:15 131:16 132:20 132:23 133:1 133:5 140:4 142:19 143:4 143:12 143:13 144:10 144:12 144:18 144:19 149:19 170:22 171:2 171:2 171:6 171:10 171:13 171:21 171:24 171:24 172:2 186:17 186:19 186:21 187:5 189:3 197:23 197:25 | | **fall**(9) 89:17 156:24 157:6 157:13 163:14 165:10 171:17 182:21 197:7 | |
| | | **examiner's**(1) 65:12 | | | | | |
| **ester**(1) 5:44 | | **example**(1) 46:12 47:9 55:24 61:25 136:10 138:1 150:5 157:18 166:23 177:25 205:13 | | | | **fallon**(1) 7:46 | |
| **estimate**(1) 17:13 | | | | | | **falls**(4) 46:2 157:11 174:8 199:5 | |
| **estimates**(1) 192:9 | | | | | | **familiar**(8) 120:16 120:19 121:2 121:6 142:14 143:16 143:19 144:3 | |
| **estopped**(1) 79:4 | | **except**(7) 13:8 14:6 165:15 169:16 211:2 217:17 221:15 | | | | | |
| **estoppel**(6) 80:6 80:20 96:17 97:17 100:8 213:24 | | | | | | **familiarity**(2) 142:17 145:23 | |
| | | **exception**(5) 102:12 105:19 106:12 195:17 218:22 | | **expensed**(4) 160:18 161:12 171:21 186:16 | | **far**(9) 14:21 15:11 15:25 17:15 53:22 92:4 92:4 112:14 177:9 | |
| **evaluation**(1) 214:7 | | | | **expenses**(37) 76:18 81:25 108:16 109:16 110:25 113:12 127:7 128:22 133:7 133:14 144:8 144:8 144:13 144:14 144:15 149:15 161:10 161:11 169:2 170:2 170:5 170:6 174:4 185:25 185:25 186:1 186:7 186:11 187:1 187:2 187:3 187:6 187:7 188:8 187:12 188:17 188:19 | | | |
| **even**(36) 24:4 26:13 37:1 37:8 37:12 37:14 43:24 52:15 65:17 65:22 66:20 66:22 75:12 82:2 108:13 113:1 113:15 114:24 115:1 116:18 117:8 122:12 162:2 166:7 170:21 172:23 178:4 182:10 186:2 186:14 191:24 197:1 205:23 206:1 207:12 219:5 | | **exceptional**(1) 218:4 | | | | **fargo**(1) 8:14 | |
| | | **exceptions**(6) 46:10 72:19 169:21 169:22 169:24 195:1 | | | | **fas**(6) 105:21 105:22 163:24 173:22 173:22 187:25 | |
| | | | | | | | |
| | | **excerpt**(4) 123:9 125:9 126:22 127:18 | | | | **fas-87**(1) 187:24 | |
| **event**(11) 40:23 51:22 52:2 52:6 64:2 64:11 76:2 78:4 100:25 172:18 173:1 | | **excerpted**(1) 109:17 | | **expenses"**(1) 105:3 | | **fasb**(5) 104:4 105:15 144:21 153:14 187:24 | |
| | | **excerpts**(4) 44:9 103:8 104:3 220:24 | | **experience**(3) 147:12 149:3 153:25 | | **favor**(1) 83:20 | |
| | | **excess**(3) 157:9 188:13 188:13 | | **expert**(20) 14:16 14:22 114:11 117:20 131:18 132:2 132:2 132:7 132:9 147:24 147:24 148:6 148:25 150:1 153:2 214:13 218:16 218:18 219:2 219:9 | | **fear**(1) 223:24 | |
| **ever**(4) 10:9 43:21 75:4 208:14 | | **excide**(1) 25:8 | | | | **federal**(3) 105:6 105:18 205:8 | |
| **every**(11) 32:16 45:16 52:3 52:7 80:23 81:3 92:1 112:16 160:14 171:23 182:9 | | **exclude**(1) 112:19 | | | | **fee**(6) 88:24 197:6 197:10 197:14 199:21 200:5 | |
| | | **excluded**(6) 52:8 52:9 52:18 52:19 180:17 197:17 | | | | | |
| **everybody**(11) 23:14 54:18 65:2 67:1 162:4 178:12 182:9 184:23 192:17 213:3 218:20 | | | | **experts**(1) 117:22 | | **feed**(1) 151:21 | |
| | | **excludes**(1) 197:13 | | **explain**(12) 49:7 49:10 49:19 121:5 122:18 124:2 126:20 129:3 132:4 176:4 194:2 218:11 | | **feel**(6) 33:24 43:8 43:9 47:12 47:18 220:9 | |
| **everybody's**(2) 87:19 91:6 | | **excluding**(1) 179:20 | | | | **fees**(11) 76:16 76:16 76:18 91:6 98:12 124:20 165:4 195:7 199:24 200:4 | |
| **everybody's**(1) 218:5 | | **exclusion**(2) 179:20 181:2 | | **explained**(1) 50:9 | | | |
| **everyone**(4) 10:4 73:12 199:3 213:6 | | **exclusive**(1) 58:1 | | **explains**(2) 23:12 129:5 | | **feld**(5) 2:34 67:13 99:8 201:16 222:2 | |
| **everyone's**(1) 163:9 | | **excuse**(3) 95:8 108:18 130:24 | | **explicit**(3) 51:7 52:15 77:23 | | **fell**(1) 149:16 | |
| **everything**(7) 23:1 23:6 91:2 98:2 98:20 120:1 185:18 | | **excused**(1) 107:11 | | **explicitly**(2) 16:23 99:21 | | **festivities**(1) 12:19 | |
| | | **exec**(1) 139:1 | | **explicitness**(10) 65:6 65:17 204:14 207:14 207:21 207:25 211:25 216:8 216:10 216:22 | | **few**(11) 10:17 26:17 27:22 42:25 44:6 71:4 91:3 131:5 146:3 178:19 218:1 | |
| | | **executed**(5) 70:19 70:20 82:17 82:18 97:10 | | | | | |
| | | **execution**(2) 116:2 186:13 | | **exploration**(1) 154:3 | | **fifth**(1) 1:33 | |
| | | **executive**(2) 124:22 147:13 | | **exposure**(4) 72:5 88:23 90:13 94:25 | | **fight**(1) 15:12 | |
| | | **executives**(3) 147:18 150:25 182:4 | | **express**(2) 54:15 64:23 | | **figure**(3) 97:19 161:1 213:4 | |
| | | **exercise**(2) 37:21 59:16 | | **expressed**(1) 39:17 | | **file**(1) 28:25 | |
| | | **exercising**(2) 45:3 45:4 | | **expression**(1) 185:13 | | **filed**(23) 19:11 24:2 27:14 31:5 31:6 31:6 31:11 32:1 33:1 33:2 38:6 60:25 62:13 95:19 107:1 112:23 120:22 134:21 135:11 159:23 166:12 219:20 220:2 | |
| | | | | **expressly**(3) 52:7 54:9 66:16 | | | |
| | | | | **ext**(1) 5:26 | | | |
| | | | | **extend**(2) 54:5 54:24 | | | |
| | | | | **extends**(1) 202:22 | | | |
| | | | | | | **filing**(5) 19:9 20:6 98:11 112:4 120:2 | |
| | | | | | | **filings**(2) 15:5 103:7 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**fill**(1) 187:15

**filled**(1) 221:2

**final**(5) 11:18 20:19 29:2 29:14 64:25

**finally**(6) 16:15 26:4 66:12 79:2 206:14 207:1

**finance**(1) 173:17

**financial**(13) 82:11 98:12 105:6 105:11 138:12 141:9 141:13 144:3 144:7 145:25 170:7 188:6 220:1

**financials**(4) 78:11 141:12 148:4 148:23

**financing**(3) 43:17 72:8 82:19

**find**(18) 30:18 33:18 40:19 70:8 75:11 77:24 80:20 125:16 128:24 148:21 158:15 159:11 177:17 183:2 183:14 214:4 216:7 221:20

**finding**(2) 107:25 189:20

**fine**(1) 184:17

**fine**(8) 103:14 103:15 112:18 113:7 114:10 114:17 154:19 159:6

**finger**(1) 2:42

**finished**(2) 131:1 219:10

**firm**(16) 14:24 94:12 94:12 119:16 119:18 134:22 135:10 135:17 137:17 164:20

**firmly**(1) 94:4

**first**(63) 10:19 11:6 11:13 12:1 14:20 18:24 19:2 19:3 19:8 22:21 45:10 51:20 52:10 53:5 55:13 56:16 58:5 58:6 59:16 65:13 69:18 71:15 71:16 72:4 73:2 73:10 73:19 73:19 77:21 81:5 82:9 89:24 90:25 94:3 122:2 122:2 122:3 122:7 122:18 126:1 135:3 138:22 139:2 139:12 142:9 150:6 153:6 155:1 156:8 158:8 169:25 172:22 177:22 194:1 195:1 195:6 196:1 199:15 199:22 202:5 204:13 206:2 222:14

**fit**(16) 18:8 84:20 138:11 151:15 157:7 168:16 178:20 179:3 179:7 180:2 189:2 189:2 191:5 197:1 197:4 198:15

**fits**(4) 34:5 92:20 181:15 199:8

**fitzsimons**(3) 49:5 66:16 67:5

**five**(5) 22:21 75:7 155:7 157:11 193:13

**five-minute**(2) 200:22 201:5

**fixed**(6) 70:24 70:25 78:3 78:5 136:8 168:10

**flag**(1) 58:13

**flagg**(1) 1:27

**flip**(1) 92:22

**floodgates**(1) 223:24

**floor**(4) 3:8 3:39 4:20 4:26

**florida**(1) 168:24

**flow**(2) 146:14 209:16

**flows**(1) 148:15

**fluctuations**(3) 85:14 86:11 93:4

**flush**(1) 18:14

**focus**(5) 59:7 63:23 73:2 163:7 163:15

**focused**(2) 53:12 53:14

**focusing**(3) 122:7 160:4 163:8

**folder**(1) 114:10

**folks**(3) 47:15 108:1 156:26

**follow**(2) 113:23 180:14

**follow-up**(2) 131:5 140:8

**followed**(2) 65:17 212:24

**following**(1) 116:4 223:6

**follows**(2) 150:15 150:16

**footed**(1) 127:9

**footnote**(1) 129:3

**footnotes**(2) 121:12 157:1

**for**(301) 1:2 1:21 2:4 2:10 2:33 2:42 3:4 3:12 3:27 3:36 3:43 4:4 4:18 4:30 4:46 5:4 5:17 5:21 5:28 5:43 5:47 6:4 6:9 6:18 6:23 6:29 6:33 6:38 6:42 6:46 7:5 7:10 7:14 7:17 7:21 7:29 7:34 7:38 7:43 7:49 8:5 8:10 8:14 8:18 8:22 8:27 8:32 8:36 8:40 8:44 8:48 9:4 9:8 9:11 10:10 13:18 13:25 14:23 14:23 14:23 15:10 15:22 17:1 17:21 18:2 18:13 18:19 21:8 21:18 22:14 22:15 22:15 22:17 22:22 23:23 24:3 24:15 24:23 26:17 29:3 29:4 30:1 30:7 32:6 32:15 32:24 33:14 34:10 35:9 35:10 35:11 35:11 36:6 37:24 39:21 39:23 40:1 40:25 44:11 44:16 45:23 46:12 47:1 47:8 47:16 47:20 48:10 48:16 48:19 49:4 49:11 49:13 50:13 52:21 53:21 54:24 56:9 56:19 56:20 57:21 59:3 59:9 59:24 61:25 66:16 66:25 67:13 67:23 67:24 67:25 68:6 68:6 69:18 70:15 70:16 70:17 71:8 72:3 73:5 73:9 73:18 74:6 75:3 75:4 75:6 75:10 77:12 77:14 77:17 77:18 77:22 78:8 78:16 79:7 79:11 79:21 79:22 80:25 82:8 82:19 83:4 83:5 83:5 84:16 84:20 84:22 84:23 84:23 85:6 85:8 85:10 85:21 86:15 86:18 86:24 88:12 88:12 88:14 88:17 90:10 90:21 91:4 92:22 93:18 94:24 95:2 96:20 96:24 97:12 97:12 97:15 98:13 98:14 99:4 99:25 100:1 100:24 101:18 102:5 102:19 104:6 104:13 105:8 105:8 105:25 106:14 107:4 107:8 107:10 107:11 108:8 108:11 110:11 110:12 110:15 110:24 111:5 111:10 111:15 112:15 112:13 114:8 114:21 115:12 120:2 120:22 121:1 121:11 121:15 123:8 123:19 123:24 124:5 124:25 125:10 125:17 126:23 128:15 129:6 129:9 130:12 131:2 132:9 132:10 133:13 134:2 134:3 134:6 134:9 134:22 135:15 136:3 136:7 136:8 136:8 136:10 136:11 137:4 138:1 138:4 138:24 139:11 139:11 139:11 140:4 141:23 143:7 143:12 143:25 145:16 145:22 146:3 146:13 146:18 146:18 146:21 146:25 146:25 147:3 147:3 147:9 147:18 148:2 148:5 149:4 149:4 149:11 150:5 150:7 150:24 150:25 151:11 151:17 151:18 152:16 152:24 152:24 153:3 155:21 155:39 157:24

**for**(116) 157:24 158:25 159:1 159:10 159:15 159:18 163:11 163:15 163:23 164:1 164:3 164:4 164:13 164:21 164:23 165:7 165:11 165:15 166:24 167:4 167:21 168:2 169:10 169:11 169:16 170:14 171:18 172:17 173:17 175:15 175:21 177:15 177:15 177:16 177:25 178:11 178:15 179:2 179:11 179:12 180:7 180:12 182:20 181:2 182:3 182:6 183:1 183:3 184:8 184:9 184:11 186:21 186:21 187:17 187:13 188:4 188:12 188:17 188:23 190:18 190:22 190:24 191:1 191:1 191:16 195:3 195:18 196:3 196:3 196:3 196:16 196:15 197:24 198:21 199:24 199:25 200:8 201:2 201:16 204:10 204:23 205:4 205:13 205:15 205:17 205:18 207:1 208:4 209:6 209:12 209:12 209:12 209:17 209:23 210:8 210:18 210:24 211:9 213:10 216:1 217:17 218:2 218:6 219:14 219:17 220:9 220:25 221:5 222:2 222:11 222:20 223:7 223:24 224:3

**force**(2) 176:8 207:22

**foregoing**(1) 224:20

**foremost**(1) 94:3

**fork**(1) 200:17

**form**(8) 107:20 125:9 130:7 162:2 165:4 169:2 169:15 172:19

**forman**(1) 1:37

**former**(5) 4:46 32:5 149:24 167:5 198:24

**forms**(1) 115:21

**formulated**(1) 183:18

**forth**(17) 47:21 86:13 106:2 106:3 106:10 108:11 122:12 123:25 124:11 128:25 129:18 162:23 163:20 169:3 178:11 185:25 199:17

**forth"**(1) 158:1

**fortunately**(1) 28:24

**forward**(16) 10:7 11:12 19:23 21:5 21:7 38:10 95:25 133:4 176:4 177:6 199:8 200:18 205:15 210:9 215:15 221:21

**found**(9) 54:1 60:14 66:8 66:9 87:21 115:17 171:9 177:24 198:4

**foundation**(9) 13:8 15:3 15:9 15:12 110:7 110:11 110:12 112:13 114:24

**foundational**(1) 14:4

**four**(35) 22:1 37:16 37:17 37:19 37:23 38:10 39:9 44:25 45:1 45:6 45:8 46:3 46:6 46:7 46:15 59:6 59:7 59:12 60:21 72:19 73:1 111:2 114:2 114:5 115:4 115:5 117:2 121:17 156:9 163:10 163:12 176:3 191:4 192:17 193:4

**fourth**(3) 106:14 135:21 138:24

**fox's**(1) 45:10

**fox**(1) 198:5

**frank**(4) 5:23 5:24 6:38 6:39

**frankel**(2) 7:39 7:39

**frankly**(19) 14:24 14:25 15:3 20:11 43:19 82:22 104:25 108:12 117:24 156:4 160:3 160:5 161:11 162:3 162:18 169:8 175:3 177:19

**fraudulent**(16) 31:15 32:10 38:16 50:3 50:15 50:17 51:16 56:1 56:8 57:19 58:2 59:19 59:22 60:1 60:8 79:13

**free**(1) 42:14

**freestanding**(1) 46:1

**french**(1) 4:26

**frequently**(2) 205:10 205:15

**friday**(2) 33:20 34:7

**friedman**(10) 4:4 7:17 13:25 22:14 35:10 111:10 141:23 151:11 196:3 209:12

**friends**(3) 10:7 91:3 203:3

**from**(180) 11:25 12:10 19:17 25:5 25:9 25:9 26:10 26:20 27:5 28:4 31:24 33:23 34:5 35:14 35:17 36:5 36:5 37:2 37:8 37:17 38:3 38:10 38:23 38:24 39:1 39:8 39:18 41:5 41:5 41:15 41:15 41:6 42:8 42:18 43:14 44:10 44:19 44:20 45:2 45:3 45:4 46:10 46:11 46:12 47:15 49:11 49:14 49:17 49:20 51:21 52:8 52:9 52:11 53:10 53:12 54:16 55:4 55:7 55:8 56:12 57:12 57:14 57:18 57:18 57:19 57:20 57:24 58:12 58:12 58:16 58:18 58:21 58:25 59:2 59:23 59:23 61:1 61:2 61:3 61:4 61:20 61:22 61:22 62:2 62:7 62:10 62:11 62:14 62:16 62:17 63:15 63:16 63:16 63:21 63:22 64:8 64:15 64:25 68:5 68:22 71:4 75:22 78:22 79:4 85:6 87:11 88:7 88:13 91:24 93:16 93:22 96:22 96:22 100:13 102:1 102:24 104:3 106:1 109:24 112:17 113:12 113:16 114:20 117:2 120:1 120:7 124:19 125:9 126:22 134:20 136:4 140:12 146:14 146:17 146:24 147:13 147:15 148:15 150:7 150:15 150:16 151:7 153:12 153:17 155:22 156:16 156:16 157:12 167:8 169:1 169:1 169:9 169:12 171:3 171:7 171:7 179:17 180:17 186:14 187:19 187:23 190:3 190:11 191:12 195:7 197:8 197:8 197:13 197:17 198:5 202:12 203:20 204:7 205:2 205:4 205:6 206:22 209:4 212:21 213:24 224:21

**front**(11) 24:13 91:4 150:21 159:15 183:11 183:15 189:13 195:10 203:2 203:18 206:5

**full**(37) 23:10 26:21 37:10 37:20 44:18 53:6 57:1 57:15 58:22 59:13 61:21 61:25 62:2 63:23 65:5 72:14 133:19 157:22 160:22 174:19 175:2 175:5 183:12 183:14 187:23 202:3 202:10 203:24 208:5 208:8 208:9 210:1 210:3 211:22 211:22 212:11 212:18

**fully**(2) 29:4 66:2

**fun**(1) 15:10

**functions**(2) 72:9 121:15

**fundamental**(2) 53:24 195:13

**fundamentally**(1) 77:21

**fundamentals**(1) 108:9

**funded**(9) 22:22 22:24 22:25 23:5 23:8 23:8 23:10 84:24 198:20

**funding**(1) 85:14

**funds**(1) 188:11

**further**(23) 15:15 21:2 21:21 26:19 28:1 37:1 45:22 64:17 67:9 78:6 82:10 117:11 129:25 130:4 144:23 144:25 157:16 176:17 177:7 183:20 191:23 220:5 222:24

**future**(6) 108:3 136:7 138:2 205:12 205:17 206:18

**gaap**(14) 94:24 95:2 105:13 105:14 105:16 141:15 143:16 143:18 143:19 143:21 143:25 144:11 144:13 144:16

**gaap."**(1) 109:8

**gained**(1) 87:2

**gaining**(1) 150:21

**gap**(3) 186:23 186:24 187:2

**garrison**(1) 7:30

**garvan**(1) 4:13

**gary**(2) 3:30 5:40

**gather**(1) 132:12

**gave**(7) 31:24 47:9 74:1 85:7 85:20 190:7 190:8

**gears**(1) 185:22

**gecker**(1) 5:23

**geddes**(1) 3:43

**gee**(1) 215:8

**general**(12) 26:5 27:16 85:15 122:22 124:1 142:14 142:17 164:6 168:24 182:9 182:12 191:8

**generally**(11) 22:21 95:2 129:3 141:3 142:18 142:21 142:23 143:19 143:25 144:5 211:5

**generated**(1) 122:11

**generically**(1) 136:6

**generis**(1) 85:25

**genesis**(1) 165:11

**gentilotti**(1) 4:12

**george**(1) 4:48

**gestatiability**(1) 210:8

**get**(68) 10:9 11:5 12:9 13:5 16:20 17:16 17:18 31:13 33:23 38:19 39:4 41:5 42:13 42:14 49:22 50:24 53:4 53:5 53:6 54:16 55:7 58:23 59:6 61:6 63:19 63:20 63:22 65:5 68:12 71:21 71:25 75:13 94:9 94:16 94:18 95:20 106:12 107:3 107:3 110:9 112:4 117:5 130:19 145:11 146:10 146:16 146:20 159:15 165:13 170:5 175:17 181:6 187:7 190:21 192:14 192:18 192:19 193:4 193:5 195:10 197:16 198:16 206:15 207:5 208:14 213:4 214:4 217:19

**gets**(19) 20:2 20:3 23:14 51:23 52:7 55:6 55:6 56:12 93:12 93:14 131:1 160:17 160:18 180:4 186:15 201:24 202:3 206:1 221:1

**getting**(8) 10:19 21:22 91:16 91:17 98:12 100:17 136:11 198:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**gifts**(1) 106:23

**give**(24) 12:11 18:9 25:20 29:10 29:19 33:5 44:9 57:21 86:3 86:3 95:25 117:21 118:23 140:7 149:3 167:25 168:7 180:11 185:14 190:19 194:6 212:10 214:25 217:9

**give-and-take**(1) 23:22
**given**(9) 12:10 44:1 82:13 87:12 94:25 113:3 132:8 183:9 183:10

**gives**(2) 72:25 191:2
**giving**(2) 31:15 94:22
**glean**(1) 169:1
**gloss**(1) 75:10
**gmp**(2) 9:11 9:11
**god**(1) 191:18
**goes**(9) 37:1 53:22 53:24 57:12 63:25 110:6 115:24 135:13 217:22

**going**(112) 10:13 10:19 10:23 11:10 11:13 13:19 15:22 16:20 17:16 17:23 18:8 18:17 19:3 24:25 26:19 29:5 29:6 33:12 38:7 38:10 39:4 40:4 42:12 42:13 42:14 47:4 52:23 53:4 53:9 53:10 54:7 57:8 58:6 61:1 68:18 70:13 85:5 88:18 93:24 96:8 98:12 109:2 110:17 112:13 113:7 113:12 113:14 119:19 124:19 129:21 130:5 130:21 132:1 132:1 145:18 145:25 146:5 146:8 149:11 150:10 151:14 151:20 152:10 154:1 154:6 154:10 155:2 156:3 156:4 157:20 160:16 160:21 162:19 162:23 162:25 163:9 163:15 167:25 174:22 175:16 177:20 177:20 178:25 180:9 181:6 184:2 184:7 185:10 185:24 187:25 189:5 190:23 191:15 191:22 195:4 196:10 196:16 198:10 201:11 211:13 211:14 211:15 213:2 216:16 217:6 218:10 219:12 219:13 219:17 220:5 223:15 223:16

**golden**(4) 2:36 99:7 99:8 100:14
**goldfarb**(1) 5:14
**goldman**(3) 7:6 7:43 7:43
**gone**(2) 105:23 195:7
**good**(38) 10:4 10:5 10:13 12:5 13:3 13:17 13:24 14:12 22:13 26:25 27:20 28:3 42:2 47:21 48:9 66:23 67:12 99:7 101:17 102:3 102:4 104:10 104:11 131:2 141:23 141:24 145:15 153:10 159:22 159:24 166:9 177:14 191:11 194:21 201:15 217:2 217:6 222:20

**goods**(9) 115:13 164:24 179:23 180:7 180:8 181:1 184:5 184:7 198:18
**goodwill**(2) 140:1 142:25
**gordon**(1) 7:5
**got**(21) 15:6 23:13 24:13 29:6 31:5 43:15 65:4 81:17 113:4 149:12 149:13 149:13 149:14 149:14 152:9 181:14 190:15 190:16 190:17 198:23 206:5

**gotten**(2) 202:2 219:16
**governance**(1) 33:8
**governed**(4) 36:20 94:7 211:20 216:6
**governing**(1) 222:17
**governs**(2) 36:21 41:11
**grab**(3) 38:25 85:6 107:11
**graeme**(1) 5:12
**grammar**(1) 179:15
**grand**(1) 3:23
**granted**(3) 24:4 24:4 29:15
**gratuity**(1) 107:20
**great**(3) 64:12 64:14 90:15
**greater**(2) 215:9 222:18
**greissman**(1) 8:15
**grippo**(1) 4:47
**ground**(1) 202:18
** groundwork**(1) 159:18
**group**(5) 5:23 6:4 6:4 39:5 157:25

**guarantee**(14) 71:13 71:18 71:18 71:19 72:1 74:13 74:14 74:17 75:15 79:25 79:25 80:1 80:4 89:23

**guaranteed**(8) 71:10 71:12 72:2 72:7 72:8 74:18 182:15 182:16

**guarantees**(2) 53:1 53:2
**guarantor**(1) 182:19
**guarantors**(3) 75:16 90:6 90:7
**guess**(15) 17:24 17:25 31:8 31:9 108:7 118:9 132:25 135:4 138:3 138:22 162:4 163:9 173:4 200:25 219:15

**guidance**(1) 158:8
**guidelines**(2) 104:4 106:2
**guild**(1) 191:15
**gump**(6) 2:34 67:13 99:8 99:18 201:16 222:2

**gun**(1) 28:5
**guy**(1) 214:2
**guys**(2) 170:1 195:12
**gwen**(1) 5:48
**had**(58) 10:26 11:19 12:13 13:7 13:9 13:11 13:20 14:2 15:1 15:4 15:4 15:23 16:3 18:12 19:10 26:21 29:9 31:17 38:1 41:20 43:10 51:16 52:5 52:25 56:11 61:12 64:4 65:23 67:18 67:25 78:6 81:5 97:2 97:3 97:4 107:6 108:1 112:19 122:11 124:13 129:19 130:10 130:20 134:21 140:25 142:15 145:23 161:11 185:24 192:5 195:7 195:12 204:14 210:1 213:23 215:21 221:18 223:9

**hadley**(1) 6:29
**hale**(1) 7:5
**half**(4) 82:20 168:11 175:9 175:14
**hand**(12) 12:21 17:6 33:5 36:17 39:14 78:19 78:21 148:16 174:12 202:15 217:7 224:2

**handed**(2) 102:25 159:20
**handful**(1) 102:12
**handle**(2) 10:18 11:4
**handout**(1) 45:2
**hands**(1) 86:13
**hang**(1) 23:19
**hannafan**(2) 8:40 8:40
**happen**(4) 10:14 195:8 205:16 205:20
**happened**(3) 29:18 30:4 166:22
**happens**(5) 52:3 52:6 53:15 202:3 204:21
**happy**(4) 15:8 21:15 21:17 202:4
**hard**(3) 75:10 81:19 109:21
**harmed**(1) 107:23
**harrisburg**(1) 1:48
**has**(100) 14:10 16:16 19:12 19:21 20:19 21:2 22:20 22:21 24:21 25:12 28:14 28:16 28:19 30:24 33:13 38:2 38:6 39:14 39:20 46:9 51:25 57:16 59:9 61:7 61:8 61:16 67:8 76:9 76:15 76:23 78:2 84:4 84:5 84:17 85:9 86:3 87:18 89:15 90:3 91:25 93:18 94:4 95:3 95:14 95:20 101:3 109:17 110:5 111:4 113:13 115:15 119:21 120:10 128:9 130:12 132:25 138:13 146:2 149:19 152:21 154:6 154:10 156:12 158:22 161:19 163:3 170:7 170:7 172:16 177:2 178:23 179:14 179:18 179:16 191:16 194:11 195:14 195:21 196:22 197:12 199:10 199:14 199:14 200:6 202:20 203:13 206:6 207:7 207:15 208:8 215:24 218:10 220:5

**hasn't**(3) 24:4 131:14 218:9
**haste**(1) 107:3
**hat**(1) 48:25
**hate**(1) 136:19
**hauer**(5) 2:34 67:13 99:8 201:16 222:2

**have**(275) 10:10 10:21 11:1 11:17 11:25 12:5 13:14 14:8 14:10 14:15 14:23 15:2 15:13 15:16 16:11 17:5 17:7 17:11 17:11 18:16 20:25 21:7 21:23 23:12 23:19 23:24 24:5 24:19 27:14 27:22 28:1 29:2 29:2 29:5 29:10 29:16 30:13 30:20 31:9 31:10 31:23 32:24 33:7 33:22 34:7 34:10 35:18 35:19 37:10 41:10 42:15 42:20 43:10 43:19 44:2 44:6 44:7 44:11 46:22 47:8 48:2 48:11 48:24 49:4 49:7 50:14 50:18 51:20 51:24 52:16 52:17 53:1 54:10 54:13 54:15 55:3 55:4 56:11 56:24 58:3 58:18 59:10 60:8 60:11 60:12 60:24 60:25 62:11 62:19 64:3 64:10 65:1 65:25 66:11 66:22 67:8 67:15 67:16 69:5 69:13 71:16 72:18 74:21 74:24 76:2 76:4 78:5 78:6 81:10 82:3 83:3 84:13 86:9 86:9 87:16 87:25 89:12 90:11 90:14 91:3 92:21 92:22 93:17 94:15 94:18 94:20 96:4 96:4 97:1 97:3 99:3 99:13 101:17 102:25 105:4 105:8 105:23 106:6 107:9 107:23 108:23 109:7 109:14 109:19 109:20 109:23 111:21 111:23 113:12 114:10 118:6 118:8 118:17 118:22 119:23 120:12 120:14 120:15 120:17 120:18 120:21 121:2 121:4 124:13 124:16 127:3 129:9 129:10 129:24 131:5 134:16 136:10 137:10 138:23 140:1 140:4 141:1 141:10 142:17 143:8 143:9 144:23 145:1 145:24 149:25 150:2 150:3 150:8 151:23 152:9 152:10 154:15 155:11 156:1 156:10 157:3 158:4 158:9 159:14 160:20 162:22 163:20 166:3 171:8 172:11 172:20 173:15 174:5 174:13 174:16 174:17 175:4 175:17 175:18 175:25 176:7 178:7 178:7 178:23 180:10 180:21 181:4 181:10 183:3 183:14 184:5 185:8 185:21 187:9 187:14 188:9 188:20 191:4 191:5 196:24 199:2 200:5 200:7 201:2 202:2 202:7 202:15 202:25 203:22 206:9 206:20 207:6 208:2 209:8 209:17 211:9 211:12 212:12 212:16 213:22 214:4 214:6 214:7 214:10 216:7 217:8 217:11 217:16 218:19 219:4 219:5 219:10 219:23 219:24 221:8 222:10 224:5 224:9 224:14

**haven't**(2) 101:14 118:8
**haven't**(10) 16:4 17:8 132:2 177:7 177:11 177:12 187:10 198:23 198:24 219:16

**having**(10) 15:9 29:23 33:19 75:13 91:16 100:25 151:19 196:23 204:7 210:10

**hazeltine**(1) 2:4
**hbk**(1) 7:34
**he's**(4) 89:10 91:13 112:8 117:4
**head**(3) 147:12 147:12 151:12
**headed**(1) 33:9
**heading**(1) 174:9
**heads-up**(1) 18:9
**hear**(19) 12:3 21:19 22:9 35:3 69:8 95:8 111:6 112:17 113:6 117:11 150:17 151:7 153:17 160:14 162:25 193:19 195:19 222:24

**heard**(17) 16:4 22:19 146:11 152:7 153:20 160:1 160:10 161:8 167:8 170:20 177:7 177:11 191:13 195:15 218:20 221:24 222:22

**hearing**(2) 12:15 18:13 18:15 19:18 29:13 30:19 38:5 91:18 96:15 99:23 111:12 120:4 130:11 215:19 217:8 217:17 218:6 218:10 220:25 223:11 224:18

**hearsay**(1) 105:19
**heart**(1) 11:25 112:19
**heartburn**(1) 18:2
**heavily**(2) 37:7 189:8
**hedge**(12) 70:19 71:7 71:22 71:23 72:5 77:17 78:22 85:13 86:13 88:1 88:22 93:3

**hedged**(4) 75:17 76:4 90:12 90:13

**hedges**(1) 75:20
**hedging**(8) 71:23 72:1 82:14 90:3 90:9 93:2 96:23 97:5

**heiligman**(1) 5:25
**held**(6) 25:16 49:25 59:23 106:21 107:16 199:18

**hello**(1) 131:6
**help**(4) 28:8 117:25 176:25 189:15
**helpful**(9) 19:5 94:2 113:7 119:3 151:22 153:16 153:25 163:10 223:7

**helping**(2) 121:10 134:25
**her**(31) 14:3 14:6 30:6 30:7 112:17 112:18 112:23 145:20 145:21 146:22 147:9 147:12 147:14 147:23 147:25 148:1 148:7 148:7 148:7 148:25 148:25 149:1 152:15 153:1 153:12 153:13 153:17 153:18 154:7 156:14 158:13

**hercules**(1) 3:7
**here**(103) 10:6 13:12 16:5 16:23 19:14 20:2 23:17 24:1 24:5 24:17 25:3 26:14 32:16 36:13 38:19 39:10 41:21 42:5 42:12 42:14 42:17 43:5 44:3 44:18 45:2 47:7 49:5 49:9 49:16 50:24 51:9 51:13 51:20 52:14 52:20 53:3 54:12 55:3 55:13 55:15 56:11 58:16 58:21 59:3 59:16 61:4 61:9 64:25 65:1 65:17 66:24 67:2 69:19 71:4 71:17 72:16 76:12 79:8 81:13 82:10 85:12 86:9 87:6 89:19 90:16 91:2 91:4 92:23 95:12 98:24 101:16 107:3 107:3 107:9 108:10 108:15 113:5 115:12 125:3 125:17 128:5 128:11 138:24 148:6 150:22 154:6 155:3 165:23 173:21 174:7 180:11 181:2 181:22 186:12 192:20 199:4 205:23 206:2 208:1 213:13 213:14 213:14 219:2

**hereafter**(3) 92:20 186:14 186:17
**hereby**(1) 63:9
**herein**(1) 109:7
**hereof**(2) 92:18 186:13
**hereto**(1) 199:4
**here's**(3) 52:2 52:6 164:17
**herself**(1) 152:13
**he'll**(1) 195:15
**he's**(13) 14:16 14:17 15:21 16:5 19:20 19:22 28:24 29:6 116:22 131:17 132:6 183:16 212:24

**high**(1) 193:7
**higher**(1) 195:9
**highest**(1) 211:1
**highlighted**(2) 52:10 183:13
**highly**(2) 80:22 157:25
**hiller**(1) 4:24
**him**(13) 15:22 16:10 16:10 16:11 16:12 16:13 97:12 97:16 130:13 130:18 132:2 160:14 167:9

**himself**(2) 23:23 111:16
**his**(15) 14:16 19:14 27:16 47:16 85:21 89:25 94:1 94:14 94:22 96:3 112:21 152:9 176:23 185:12 212:24

**history**(1) 66:15
**hit**(2) 28:21 151:12
**hixson**(1) 4:32
**hold**(4) 85:6 111:19 111:19 207:21
**holder**(7) 32:7 32:14 32:22 95:23 95:24 203:10 212:7

**holders**(13) 32:20 33:4 33:11 33:12 33:22 63:10 65:20 72:10 202:24 203:6 203:15 204:12 216:11

**holding**(2) 39:15 207:15
**holmstead**(1) 8:19
**home**(1) 46:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **honor**(301) 10:5 10:17 11:3 12:21 13:4 13:17 13:24 14:1 14:9 14:13 14:19 15:5 15:17 17:10 18:22 21:11 21:21 22:8 22:13 22:22 23:17 23:19 23:23 23:25 24:5 25:3 25:4 25:12 25:12 26:1 26:11 26:17 26:25 27:5 27:12 27:18 27:20 27:21 28:1 28:3 29:16 29:20 30:22 31:3 31:4 31:24 32:1 32:6 32:15 33:9 33:18 34:1 34:10 34:14 35:14 36:8 36:24 37:7 37:24 38:4 38:7 39:10 40:7 42:1 42:18 42:20 42:22 42:23 43:1 43:5 43:23 44:22 46:14 46:25 47:3 47:18 47:20 47:24 48:7 48:9 48:10 48:15 48:18 48:22 49:1 49:6 51:10 51:21 52:19 55:11 56:16 57:1 58:14 58:14 60:2 61:6 62:13 64:17 66:1 66:12 66:17 67:11 67:12 68:5 68:14 68:18 68:23 69:1 69:10 69:14 69:19 70:3 70:8 71:10 73:21 76:17 77:7 78:18 81:4 83:4 85:5 85:8 86:20 87:13 87:20 91:20 92:12 93:18 93:20 93:21 94:16 95:17 96:13 96:17 96:18 96:25 98:23 99:3 99:7 99:10 99:16 100:14 100:16 100:19 101:5 101:7 101:24 102:3 102:8 103:17 103:20 104:10 104:15 104:22 105:4 105:7 105:9 105:17 105:20 105:25 106:5 106:9 106:13 106:16 106:25 107:5 107:14 107:21 108:4 108:7 108:12 108:21 109:14 110:1 110:12 110:24 111:1 111:4 111:9 111:12 112:6 113:6 114:2 114:13 114:17 114:21 115:8 116:21 117:12 118:2 119:4 119:9 129:25 130:3 130:15 130:20 130:25 130:25 131:12 131:20 140:7 141:18 144:24 145:1 145:4 145:7 145:11 145:15 145:17 145:20 146:2 147:1 147:9 147:15 147:22 148:14 148:16 148:21 149:6 150:1 150:18 150:23 151:8 151:10 151:12 151:18 151:21 152:7 152:14 153:15 153:16 154:8 154:9 154:20 154:23 155:6 155:20 155:38 156:1 156:3 156:8 156:11 156:14 157:3 157:15 157:18 158:1 158:25 159:5 159:12 159:17 159:19 159:25 160:10 162:1 162:14 162:16 162:22 163:13 163:19 163:24 164:2 164:19 165:17 166:3 166:11 166:22 167:16 167:20 168:14 169:7 169:17 170:1 170:23 170:24 171:6 171:20 171:23 172:5 172:24 173:4 173:10 173:11 173:13 173:21 174:8 174:18 174:21 175:1 175:8 175:19 175:21 177:14 178:25 179:8 182:4 183:15 183:11 183:12 184:2 184:15 | | **how**(62) 14:9 16:21 17:15 23:12 27:17 27:22 29:12 29:19 30:10 30:12 30:13 33:10 36:1 36:11 41:14 60:3 65:7 75:13 78:8 96:2 96:6 104:17 111:13 111:14 114:13 116:23 121:5 124:2 125:24 126:11 127:9 129:9 129:9 134:8 139:22 143:7 145:23 147:6 148:2 148:5 148:9 148:12 150:14 152:12 152:16 153:16 160:7 162:14 165:1 165:18 167:2 167:3 176:5 178:16 180:1 184:19 195:18 205:12 215:16 215:18 218:3 220:13<br><br>**howard**(1) 5:7<br>**however**(2) 115:25 176:7<br>**how's**(1) 155:12<br>**huge**(1) 196:10<br>**hullaballoo**(1) 169:12<br>**human**(2) 92:2 147:12<br>**hundred**(1) 98:3<br>**hundreds**(1) 23:18<br>**hung**(1) 40:19<br>**hypothetical**(1) 205:7<br>**i'd**(6) 95:17 96:13 103:19 104:6 111:6 115:8<br><br>**i'll**(8) 81:11 100:16 105:24 106:12 109:5 111:5 114:14 117:25<br><br>**i'm**(14) 85:5 87:1 92:4 92:7 93:24 96:8 103:13 108:16 110:8 110:9 110:19 115:13 118:25 119:16<br><br>**i've**(2) 114:5 119:1<br>**i.e**(1) 207:19<br>**idea**(9) 12:5 43:5 179:7 182:19 187:12 188:3 194:21 215:21 219:2<br><br>**identical**(1) 194:25<br>**identified**(13) 39:9 41:14 104:16 118:7 131:7 133:23 135:18 136:23 159:1 177:2 180:24 218:9 218:19<br><br>**identify**(10) 102:14 124:7 124:17 127:4 127:16 133:20 218:6 218:18 218:20 219:6<br><br>**identifying**(1) 37:22<br>**illinois**(11) 36:21 94:7 94:8 106:19 116:15 116:16 116:17 116:17 208:18 210:19 211:13<br><br>**impact**(2) 30:14 30:24<br>**impacted**(1) 20:8<br>**implement**(1) 142:15<br>**implicates**(1) 209:15<br>**import**(3) 199:12 208:10 214:22<br>**important**(14) 12:3 33:10 94:19 95:13 150:4 163:2 165:17 178:3 179:15 180:15 187:11 189:14 192:20 199:3<br><br>**importantly**(2) 73:23 208:19<br>**impose**(2) 223:15 223:16<br>**impression**(1) 219:16<br>**inadmissible**(1) 117:6<br>**inadvertently**(1) 54:14<br>**inappropriate**(1) 117:6<br>**inc**(1) 7:10<br>**incentive**(1) 12:8<br>**inclination**(1) 114:16<br>**include**(14) 36:5 50:23 52:5 57:7 57:9 60:12 60:13 64:10 64:20 65:11 78:15 134:6 175:8 203:8<br><br>**included**(5) 75:14 76:19 138:14 152:2 173:13<br><br>**includes**(9) 52:12 71:22 71:23 72:1 73:3 73:5 76:25 77:4 81:20<br><br>**including**(8) 25:5 32:16 78:14 120:5 165:21 192:23 205:12 208:9 | **inclusion**(1) 222:15<br>**income**(5) 143:4 149:23 152:20 171:12 186:1<br><br>**incongruously**(1) 40:21<br>**inconsistent**(3) 19:20 79:16 216:14<br>**inconvenient**(1) 97:15<br>**incorporated**(1) 222:11<br>**incur**(1) 93:5<br>**incurred**(23) 81:25 82:5 92:16 92:18 92:20 97:24 148:19 161:12 165:8 166:16 169:23 171:2 171:13 171:22 173:3 174:5 184:19 185:9 186:7 186:9 186:12 186:14 186:17<br><br>**indebtedness**(124) 16:24 26:7 49:21 52:14 69:20 70:4 72:11 72:16 72:21 72:22 72:24 72:24 73:1 73:5 73:5 73:9 73:12 73:14 73:17 73:18 74:24 74:25 75:1 76:20 77:1 77:2 77:3 77:9 77:14 77:17 77:18 77:20 77:25 78:20 78:20 78:22 78:25 79:5 79:20 79:22 81:22 84:21 84:21 85:1 85:2 85:9 85:10 85:15 85:19 85:24 86:8 87:10 87:10 88:5 88:6 88:8 88:17 88:20 89:17 90:8 95:4 95:5 97:21 97:23 99:20 116:11 147:3 163:11 163:12 163:14 163:4 164:1 164:6 164:6 164:8 164:11 164:16 169:10 172:13 172:2 177:18 177:19 178:8 178:9 178:24 179:4 179:12 180:3 180:18 182:3 182:8 182:13 182:17 182:21 183:1 183:3 183:4 183:25 184:6 189:25 190:3 191:6 191:6 194:24 195:16 197:16 199:9 199:9 199:18 200:1 200:6 202:1 202:10 202:23 203:7 203:8 203:10 203:14 203:18 204:4 204:5 204:6 205:25 212:8<br><br>**indebtedness."**(1) 72:14<br>**indebtedness"**(2) 70:1 169:15<br>**indemnification**(1) 198:25<br>**indenture**(106) 20:25 22:17 26:12 27:17 27:23 27:24 27:25 28:10 32:16 32:18 32:19 37:19 47:24 47:25 48:1 49:22 50:25 51:14 51:21 52:1 52:2 52:11 64:1 64:5 65:13 65:23 68:6 69:21 69:23 70:2 70:7 70:13 72:9 73:8 73:13 73:15 74:23 75:12 75:21 76:14 76:20 76:25 77:4 77:10 77:14 78:2 78:21 78:25 80:6 80:12 81:9 82:3 83:14 83:15 83:16 84:6 84:8 87:16 87:20 88:7 94:7 95:5 99:19 99:21 101:4 101:4 109:6 113:3 116:11 117:1 147:2 149:10 151:19 161:18 161:21 161:21 161:22 161:25 163:2 163:6 165:18 165:20 177:19 178:1 178:9 181:19 181:22 187:13 197:9 197:12 197:17 197:24 199:6 199:13 199:14 199:23 200:1 200:2 202:21 203:4 204:7 206:5 206:8 211:13 211:14 212:1<br><br>**indentures**(11) 32:16 32:18 52:5 116:12 168:21 177:18 178:21 197:4 210:16 210:18 210:19<br><br>**independent**(2) 77:12 77:15<br>**independently**(3) 38:5 73:14 77:9<br>**indicate**(1) 221:15<br>**indicated**(4) 50:2 126:15 194:9 195:7<br>**indicates**(1) 188:15<br>**indication**(2) 29:19 220:3<br>**indicia**(2) 110:5 168:14<br>**indirectly**(2) 37:13 37:14<br>**indiscernible**(4) 152:19 155:8 176:16 207:4<br>**individual**(8) 124:4 124:14 135:18 137:23 152:1 157:10 158:23 199:16<br><br>**individuals**(1) 177:1<br>**individual's**(1) 157:6<br>**industry**(5) 116:9 181:9 183:24 185:6 185:20<br><br>**inescapable**(1) 73:23<br>**inference**(1) 101:13 | **information**(18) 15:24 16:4 104:25 122:12 122:16 140:23 140:25 141:4 171:10 176:25 194:5 194:9 194:10 195:3 195:5 195:10 195:20 220:23<br><br>**informing**(1) 33:10<br>**initial**(6) 153:24 175:22 176:10 217:23 218:21 219:4<br><br>**initially**(1) 66:9<br>**inquiry**(1) 96:21<br>**insolvency**(3) 38:14 203:11 214:7<br>**insolvent**(1) 213:5<br>**instance**(7) 36:10 39:3 65:14 84:16 211:2 212:8 212:10<br><br>**instead**(3) 43:12 43:15 64:11<br>**instrument**(1) 46:2<br>**insurance**(8) 23:23 76:1 76:7 78:10 92:25 98:19 129:8 205:13<br><br>**intend**(3) 16:13 19:18 38:8<br>**intended**(11) 13:10 13:12 13:20 89:21 89:22 96:1 100:9 157:22 199:23 222:16 222:17<br><br>**intent**(19) 26:2 36:23 42:16 53:8 53:15 53:23 54:11 54:20 60:14 62:20 63:24 64:10 94:22 100:8 115:1 116:20 117:1 158:3 161:26<br><br>**intention**(5) 16:9 19:14 54:19 64:18 176:24<br>**intents**(1) 42:11<br>**inter-connectedness**(1) 74:11<br>**inter-creditor**(2) 55:3 55:5<br>**intercompany**(1) 120:5<br>**intercreditor**(1) 100:20<br>**interest**(71) 17:20 22:17 24:7 40:22 40:24 41:1 41:4 55:18 55:19 55:22 65:19 70:18 70:23 70:24 70:25 71:3 71:22 72:5 72:22 73:25 77:23 83:18 85:13 85:13 86:11 88:1 88:23 89:12 90:10 90:12 91:12 93:3 96:24 97:2 97:4 97:22 97:24 98:8 100:17 138:2 154:25 168:8 168:9 168:12 187:20 196:9 202:23 202:25 203:8 203:13 203:16 203:21 203:25 204:2 204:3 206:1 207:13 208:6 208:9 208:14 208:20 208:21 209:1 209:6 209:14 211:23 212:5 212:7 212:9 212:12 216:15<br><br>**interesting**(7) 29:17 29:23 88:12 115:19 164:18 178:13 202:7<br><br>**interestingly**(1) 63:2<br>**interests**(1) 33:15<br>**intermediate**(4) 108:9 108:11 113:15 114:8<br>**internal**(3) 106:1 106:2 106:3<br>**internet**(2) 108:24 118:22<br>**interpret**(2) 149:8 207:17<br>**interpretation**(12) 25:23 58:15 65:22 70:12 77:4 82:21 95:11 132:11 206:8 207:20 209:19 210:23<br><br>**interpreted**(4) 31:23 36:12 60:3 66:3<br>**interpreting**(1) 115:11<br>**interprets**(1) 65:7<br>**interrogatories**(1) 218:3<br>**interrogatory**(1) 194:4<br>**interrupt**(1) 131:25<br>**intimately**(1) 77:8 |
| **honor**(69) 184:17 185:21 187:15 187:18 188:20 189:9 189:10 189:12 191:7 191:11 191:13 191:16 191:22 192:6 193:10 193:21 195:25 197:10 198:1 198:3 198:10 198:11 199:2 199:22 200:7 200:11 200:12 200:14 200:17 201:15 201:22 202:9 202:14 203:1 203:4 203:12 203:19 204:6 205:24 206:20 207:9 209:2 209:18 209:22 210:14 210:18 211:12 212:2 212:14 212:19 212:21 213:9 213:18 213:22 215:13 216:1 216:3 216:5 216:24 217:1 217:7 217:15 221:11 221:19 222:1 222:10 222:13 223:2 224:13<br><br>**honor's**(4) 93:15 93:24 95:18 100:2<br>**honorable**(1) 1:17<br>**honor's**(6) 28:14 29:11 30:22 50:5 156:5 158:4<br><br>**hope**(10) 17:18 18:18 23:7 24:6 32:9 92:4 100:21 185:14 212:18 219:15<br><br>**hopefully**(3) 121:17 145:18 193:25<br>**hoping**(2) 38:7 101:12<br>**horizon**(2) 66:21 67:18<br>**hour**(2) 200:24 201:1<br>**hours**(3) 12:14 29:23 223:11 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **into**(72) 15:2 21:22 22:5 22:11 33:14 40:4 42:7 54:12 64:24 70:24 73:25 75:4 75:19 76:5 87:3 88:5 88:5 88:6 88:8 88:8 88:10 89:8 90:8 93:2 94:16 94:18 95:14 95:20 101:15 102:21 104:1 105:15 105:20 110:9 110:18 111:22 111:23 112:9 117:17 128:7 133:9 135:1 135:13 136:4 138:14 143:8 145:24 149:16 151:21 154:2 154:10 154:14 156:2 156:2 156:12 156:22 157:3 158:24 159:9 160:17 173:5 175:10 176:18 180:5 183:18 183:22 186:15 192:19 193:15 195:3 205:7 215:3 217:19 | | **it's**(46) 82:4 82:14 83:15 83:24 84:19 85:15 85:20 85:22 86:8 86:9 87:9 87:20 89:13 90:2 90:11 92:14 92:17 92:20 94:5 94:5 94:17 94:19 95:12 95:12 96:9 96:9 96:9 97:8 97:15 97:17 99:15 100:6 105:16 108:7 108:9 108:19 109:11 110:3 110:8 113:7 113:25 114:23 114:25 115:16 115:17 117:23 | | **i'm**(92) 14:21 16:12 17:11 18:8 18:23 19:24 21:15 21:17 23:8 24:10 24:24 26:19 27:2 28:18 32:22 42:12 42:13 47:3 48:21 53:7 67:14 67:22 68:10 80:20 126:8 129:2 130:3 132:9 134:13 139:10 140:8 140:8 140:9 142:6 143:19 144:17 147:23 147:23 148:5 148:16 149:22 152:6 152:22 153:12 153:13 153:23 154:6 156:3 157:20 158:2 159:19 160:15 162:23 163:8 163:10 163:15 167:25 174:22 175:16 177:19 177:20 178:24 178:25 179:1 180:9 181:6 183:6 185:10 186:5 186:21 187:25 188:15 189:5 191:15 191:22 195:8 195:9 195:17 196:16 198:3 198:4 198:5 198:11 202:5 211:24 212:22 213:2 214:2 217:6 223:16 224:4 | | **just**(131) 10:25 12:4 12:10 12:12 14:7 14:20 14:22 15:14 15:17 16:21 17:4 18:9 19:5 19:20 21:22 30:16 31:13 34:17 35:18 36:2 40:11 41:9 41:10 44:6 45:11 47:5 47:12 60:2 64:25 68:7 73:8 77:1 78:18 80:19 82:7 90:21 92:23 95:19 96:13 98:18 98:19 98:20 98:23 99:13 99:14 100:5 101:9 106:12 107:11 108:2 109:10 109:12 109:24 112:4 114:11 115:24 117:6 117:12 118:16 118:21 119:2 121:6 122:7 124:17 128:8 129:3 129:19 132:10 133:12 133:18 135:2 136:3 136:19 138:3 139:8 140:7 140:8 142:1 142:11 142:24 143:2 148:24 152:14 153:2 154:2 154:4 156:14 157:18 157:18 158:2 158:4 159:10 160:20 161:13 166:22 171:24 173:12 175:23 176:25 178:19 178:22 179:18 180:1 180:11 180:12 182:8 183:3 187:25 188:18 189:5 189:6 190:14 190:18 191:17 196:4 196:5 196:15 198:4 200:18 201:7 204:21 207:12 209:23 210:12 215:6 215:21 220:19 221:7 222:4 223:24 224:3 |
| **introduces**(1) 95:22 | | | | | | | |
| **introduction**(2) 13:9 95:21 | | | | | | | |
| **introductory**(1) 25:19 | | **item**(21) 123:1 123:3 123:20 125:3 125:17 127:1 127:4 127:6 128:10 128:11 132:17 133:5 133:13 138:16 138:24 139:1 139:12 139:13 160:13 192:11 194:2 | | | | | |
| **investment**(2) 66:19 66:24 | | | | | | | |
| **investors**(1) 67:3 | | | | **i've**(13) 11:4 19:6 19:13 20:14 24:11 26:17 35:22 52:10 120:23 121:12 146:16 187:15 203:12 | | | |
| **invoice**(1) 98:10 | | **items**(17) 111:2 124:11 125:2 126:24 127:17 127:21 128:10 129:13 133:9 138:23 138:24 142:9 142:11 142:22 148:23 198:21 198:22 | | **jackpot**(1) 28:21 | | **justification**(1) 190:18 |
| **invoking**(3) 59:18 59:19 60:23 | | | | **jail**(1) 42:14 | | **justifies**(1) 66:15 |
| **involve**(1) 76:7 | | | | **james**(4) 1:22 2:27 3:21 8:41 | | **justifying**(1) 222:18 |
| **involved**(8) 82:20 115:12 120:7 120:12 120:23 121:9 121:12 121:14 | | | | **jamila**(1) 3:31 | | **kalenchits**(2) 7:14 7:14 |
| | | **iterating**(1) 29:8 | | **january**(2) 218:17 222:12 | | **karen**(1) 5:18 |
| **involvement**(2) 134:16 134:19 | | **iteration**(1) 98:8 | | **jane**(1) 7:24 | | **kasowitz**(4) 4:4 7:17 13:25 14:24 22:14 |
| **involves**(5) 66:7 85:14 85:14 85:15 209:19 | | **its**(58) 23:9 23:25 24:20 26:8 37:22 38:3 38:24 40:4 40:22 41:4 41:5 41:8 42:3 42:8 46:22 49:18 49:24 63:7 66:14 68:5 70:19 71:7 75:7 78:8 83:17 83:25 84:5 84:9 84:19 85:22 86:23 87:17 87:19 87:20 87:21 116:2 121:11 122:22 129:6 129:6 129:6 139:20 139:23 150:25 152:16 162:11 166:8 168:2 172:12 175:10 183:19 183:20 185:3 197:6 197:17 199:16 211:2 212:11 | | **jay**(9) 4:19 13:17 27:12 46:25 104:12 131:6 145:15 155:20 155:38 | | 35:10 111:10 141:22 151:10 177:15 196:2 209:11 |
| **ira**(1) 8:33 | | | | | | **katharine**(1) 3:37 |
| **ironically**(1) 45:22 | | | | | | **kaye**(1) 7:21 |
| **irrefutable**(1) 74:19 | | | | **jeffrey**(1) 5:34 | | |
| **irrelevant**(1) 93:8 | | | | **jenner**(7) 4:30 6:23 27:21 48:10 100:18 200:11 216:4 | | **keep**(5) 32:5 46:19 98:21 136:20 178:3 |
| **irs**(4) 104:4 115:21 116:24 181:17 | | **itself**(19) 29:13 38:6 44:24 50:8 50:18 55:18 60:22 60:24 62:16 71:13 75:15 77:13 79:14 84:18 175:15 185:6 190:8 197:18 197:18 | | | | **keeping**(2) 12:4 205:6 |
| **isn't**(2) 82:4 105:14 | | | | **jillian**(1) 5:30 | | **kelly**(1) 8:24 |
| **isn't**(7) 12:3 75:2 78:24 79:11 147:21 162:18 201:1 | | | | **jim**(7) 26:25 42:23 68:23 101:7 102:5 175:21 207:9 | | **kempner**(1) 5:17 |
| | | | | | | **kenneth**(1) 6:5 |
| **isolated**(1) 42:11 | | **it's**(182) 13:19 16:17 16:20 16:21 18:18 19:14 19:15 19:15 19:17 19:20 23:13 24:1 24:8 24:10 24:14 24:16 25:13 26:14 27:17 28:15 29:1 29:1 29:4 29:11 33:2 33:3 33:17 34:8 34:9 34:18 34:21 35:14 36:11 37:23 37:24 39:7 39:21 40:4 40:8 40:25 42:17 48:18 50:17 55:13 55:19 55:21 55:23 61:9 63:24 65:4 65:6 65:8 65:12 67:2 68:16 70:4 71:14 72:14 73:15 73:17 75:3 75:12 77:3 77:15 77:18 80:21 80:22 115:1 122:7 122:15 125:12 125:13 126:11 128:8 130:3 130:4 131:25 132:10 132:21 134:15 135:4 136:20 145:18 146:3 146:9 147:22 154:1 157:22 158:9 158:21 159:7 159:19 164:5 164:8 164:11 164:11 164:22 165:5 165:7 165:14 166:14 167:11 167:23 168:17 168:22 168:23 168:24 169:13 169:14 170:14 170:14 171:12 171:12 172:3 172:6 178:12 179:5 179:20 183:11 184:12 184:18 184:20 185:19 186:3 186:5 186:12 186:19 187:24 187:25 192:25 193:13 194:17 196:1 197:17 198:20 199:3 199:14 200:15 203:22 205:4 205:8 205:14 206:2 206:2 207:22 209:18 211:8 212:5 213:2 213:15 214:1 217:18 219:11 222:8 222:17 223:25 | | **job**(1) 200:2 | | **kerriann**(1) 5:29 |
| **issue**(176) 11:5 11:7 11:8 11:9 11:13 11:14 11:16 11:22 12:7 12:10 13:6 14:8 14:10 16:8 16:19 16:20 16:22 16:23 17:21 18:11 18:24 18:24 19:14 19:18 20:4 20:10 20:10 20:15 20:16 20:19 20:21 20:22 21:4 21:7 21:25 24:5 24:9 24:10 24:13 24:14 24:16 24:23 25:3 25:13 27:5 27:18 30:17 30:19 33:1 33:10 33:20 33:24 34:5 34:7 34:8 34:8 34:9 34:15 38:15 41:14 43:2 53:24 59:10 65:18 66:6 66:12 67:16 67:16 68:7 68:12 68:14 69:6 69:11 69:19 83:10 83:13 84:12 92:3 92:17 95:7 99:11 100:10 100:23 101:10 101:11 101:14 101:20 102:6 105:23 106:4 106:5 107:7 108:8 108:21 116:25 118:5 124:15 128:5 130:15 130:18 132:11 145:10 145:12 146:12 149:12 152:7 153:21 154:22 166:4 170:14 170:25 171:17 173:11 173:23 176:6 177:3 184:8 184:16 185:11 186:10 190:16 191:14 191:25 192:2 192:12 192:13 192:19 192:20 193:8 193:9 195:21 196:8 200:13 200:18 201:8 201:18 201:22 202:6 202:25 203:4 203:5 204:8 204:9 204:17 204:18 204:21 204:22 204:24 205:24 206:2 206:7 206:12 206:17 206:18 206:23 207:6 207:11 209:19 209:21 209:25 210:4 210:12 210:14 211:6 212:2 212:17 213:13 214:3 215:25 217:2 219:21 220:4 223:6 223:22 224:7 | | **johnston**(40) 3:21 26:25 27:1 27:11 42:22 42:23 44:9 44:12 44:13 46:24 68:17 68:18 68:21 69:11 69:13 69:16 69:18 80:18 81:4 81:13 83:3 83:7 84:10 84:12 85:7 85:20 87:18 89:24 91:13 92:14 92:24 94:14 99:15 100:7 207:9 207:9 209:10 210:13 211:21 212:4 | | **kick**(1) 205:20 |
| | | | | | | **kidding**(1) 224:1 |
| | | | | **johnston's**(4) 85:20 89:7 96:14 | | **kind**(11) 12:15 22:2 37:9 40:19 62:1 66:21 82:12 89:15 94:14 94:19 174:17 |
| | | | | **join**(1) 47:1 | | |
| | | | | **joined**(2) 27:4 89:2 | | **kinds**(1) 199:1 |
| | | | | **joins**(1) 75:9 | | **king**(4) 2:45 3:16 3:39 4:14 |
| | | | | **jointly**(1) 1:5 | | **kinko's**(1) 98:12 |
| | | | | **jones**(1) 6:48 | | **kitchen**(1) 111:15 |
| | | | | **joseph**(1) 5:24 | | **kjc**(1) 1:4 |
| | | | | **joshua**(1) 3:22 | | **knew**(7) 146:23 165:18 167:2 167:3 169:19 169:19 194:22 |
| | | | | **journal**(2) 92:22 93:6 | | |
| | | | | **journals**(1) 181:19 | | **knew."**(1) 153:2 |
| | | | | **judge**(16) 1:17 1:18 15:7 28:20 29:5 29:11 192:23 195:4 215:17 | | **knight**(1) 8:40 |
| | | | | | | **knock**(1) 196:12 |
| | | | | **judge-made**(1) 207:21 | | **know**(84) 13:19 15:23 15:25 16:17 17:22 29:12 30:12 38:1 40:23 41:12 75:13 82:22 84:4 85:7 88:13 89:13 91:6 91:7 91:21 92:1 92:19 107:2 108:12 108:23 109:2 109:3 113:22 118:16 118:17 131:18 132:3 132:23 143:4 143:25 144:4 146:20 146:2 148:4 148:8 150:19 150:21 151:15 153:10 153:13 154:14 156:6 159:20 161:2 166:19 172:2 173:14 174:8 177:10 183:9 183:10 189:1 189:22 190:3 190:4 190:15 190:23 190:24 191:15 192:16 192:18 192:21 194:4 196:17 196:24 197:3 200:23 203:20 204:10 206:14 207:2 207:4 210:2 210:24 215:16 218:2 219:14 221:15 223:10 224:5 |
| | | | | **judgment**(1) 101:18 | | |
| | | | | **judicial**(4) 96:17 97:17 105:5 206:13 | | |
| | | | | **jump**(4) 28:5 89:18 109:2 200:18 | | |
| | | | | **jumped**(1) 23:20 | | |
| **issues**(34) 11:17 11:21 13:5 14:16 15:13 15:19 19:4 19:7 21:8 29:6 29:10 30:7 31:5 34:1 41:18 49:3 49:5 49:7 67:4 91:23 102:10 105:24 108:5 112:22 118:24 146:14 146:15 192:17 202:8 205:11 214:3 215:12 223:4 224:7 | | **i'd**(23) 12:7 12:11 15:22 22:25 34:23 43:1 43:25 44:5 44:18 46:14 69:3 76:10 78:18 80:3 81:4 121:18 155:11 158:3 185:21 191:17 193:15 209:2 210:12 | | **jumping**(1) 188:21 | | **knowing**(2) 30:16 210:10 |
| | | | | **juncture**(13) 11:9 19:22 21:2 22:5 34:24 66:17 68:2 69:4 103:17 104:8 119:6 193:16 219:11 | | **knowledge**(5) 134:10 144:11 146:22 148:25 149:2 |
| | | **i'll**(36) 13:13 13:14 18:7 21:7 21:8 21:19 43:30 35:6 40:9 43:23 44:9 44:13 48:18 50:24 54:17 69:10 69:21 70:2 72:2 80:5 140:7 145:12 153:18 159:15 170:5 175:22 178:25 181:9 200:21 201:5 207:12 214:14 218:22 221:19 | | | | |
| | | | | **june**(1) 172:16 | | **known**(2) 32:15 41:11 |
| | | | | **junior**(3) 31:3 35:15 56:17 56:19 56:23 58:6 58:7 58:9 81:23 92:15 | | **knows**(5) 32:1 131:15 152:11 187:3 204:6 |
| | | | | | | **kodak**(1) 166:23 |
| | | | | **jurisdiction**(7) 23:24 24:1 24:6 24:10 24:21 34:3 34:6 | | **kohr**(1) 224:25 |
| | | | | | | |
| | | | | **jurisdictional**(1) 23:21 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **korpus**(32) 4:7 13:14 13:24 13:25 103:12 103:14 111:9 111:10 111:20 111:23 112:2 112:6 112:8 113:25 114:4 114:9 114:17 130:14 130:17 131:12 131:14 141:22 141:22 141:25 144:23 145:4 151:10 151:10 152:3 153:8 153:10 159:5 | | **learned**(2) 118:19 187:12 **lease**(4) 86:6 86:7 86:7 198:18 **leash**(1) 32:6 **least**(16) 47:14 48:2 71:7 71:8 74:10 81:15 83:8 123:9 152:7 162:8 167:21 168:15 169:3 185:14 188:2 194:22 | | **like**(63) 10:18 12:10 12:15 14:16 19:7 23:2 36:21 36:24 37:13 38:18 39:9 44:6 46:21 48:12 51:14 52:1 59:7 67:1 73:25 76:16 78:10 78:15 79:13 86:2 92:23 93:1 95:19 95:19 96:13 98:18 98:19 98:20 101:17 106:24 111:6 111:13 115:8 121:19 131:1 144:20 150:5 150:17 151:6 153:17 153:18 156:5 159:19 168:21 173:12 174:1 180:10 182:4 182:9 185:21 187:20 187:21 191:8 196:13 196:14 210:12 220:1 220:25 221:17 | | **long**(7) 74:25 92:14 126:7 177:3 181:5 194:12 213:5 |
| **kovensky**(1) 8:29 **krakauer**(1) 5:31 **kramer**(2) 7:38 7:39 | | **leave**(8) 17:20 24:3 26:19 105:15 105:24 171:3 193:3 200:18 | | | | **long-term**(21) 78:12 82:12 93:7 126:7 126:10 127:14 131:7 138:18 142:10 142:19 149:13 153:4 160:15 160:15 170:11 171:18 171:25 173:19 173:19 173:20 173:25 186:21 |
| **label**(1) 88:4 **labeled**(3) 126:1 127:21 137:15 **labs**(1) 205:2 **laid**(2) 167:23 197:2 **landis**(2) 2:10 2:12 | | **leaves**(3) 14:7 104:2 192:16 **lebeouf**(1) 3:20 **leboeuf**(1) 27:1 **led**(1) 134:20 | | **likelihood**(1) 33:11 **likely**(3) 25:2 40:3 154:1 **likes**(1) 180:18 **likewise**(1) 15:22 **lily**(1) 191:16 **limine**(1) 14:9 112:11 220:24 | | **long-term"**(1) 153:5 **longer**(2) 182:22 207:22 **look**(38) 33:9 37:24 38:18 42:15 45:22 54:18 55:10 57:14 59:15 62:22 73:19 75:10 78:5 82:10 86:7 92:13 92:21 93:4 95:13 109:9 118:16 121:16 123:5 123:15 125:7 125:11 149:20 157:21 162:15 163:4 164:2 168:18 182:11 184:24 203:1 217:13 217:20 219:19 |
| **language**(58) 25:17 25:19 25:20 27:22 27:23 44:20 45:14 50:7 50:24 51:7 51:19 51:20 51:24 51:25 52:1 52:4 52:8 52:9 52:18 52:18 54:6 54:13 55:10 56:13 60:15 60:15 60:20 64:4 64:6 64:11 64:23 66:2 66:10 66:11 70:7 71:17 72:16 71:9 75:18 75:11 76:15 76:22 76:23 76:25 77:3 77:6 81:6 115:16 115:17 116:1 157:19 158:2 158:9 178:21 198:12 203:18 213:2 213:4 | | **legal**(10) 36:16 47:21 50:2 145:11 148:22 159:18 188:12 206:7 209:19 212:11 **legitimate**(1) 36:18 **lemay**(1) 2:18 **lenders**(6) 3:13 43:17 52:25 55:2 63:6 71:24 | | **limit**(6) 50:5 51:11 57:23 223:15 223:21 223:24 **limitation**(7) 26:12 32:17 44:24 59:8 87:23 132:8 167:17 **limitations**(2) 32:17 88:3 **limited**(13) 12:15 25:24 55:16 58:24 59:3 61:8 76:15 116:4 117:2 165:5 168:22 190:9 216:19 | | **looked**(2) 65:13 196:24 **looking**(16) 17:18 32:8 46:4 47:10 71:21 72:18 88:6 116:22 139:7 148:4 156:6 156:7 160:7 163:10 196:23 211:13 **los**(2) 1:34 3:24 **lose**(2) 33:6 33:8 **losing**(1) 205:18 **loss**(2) 33:15 47:11 **lost**(3) 66:23 86:14 114:5 |
| **lantry**(1) 1:32 **large**(2) 22:22 32:2 **largely**(1) 42:24 **laser**(1) 8:32 **last**(27) 11:22 11:25 18:11 18:16 25:22 31:14 36:13 38:5 46:5 47:24 58:11 62:23 86:1 105:25 108:8 120:4 127:10 127:24 128:23 141:9 172:22 174:21 175:3 217:17 218:25 219:20 221:18 | | **lending**(2) 89:8 168:13 **length**(1) 67:21 **leonard**(1) 1:38 **less**(5) 54:22 55:1 57:5 101:15 207:12 **lesser**(2) 148:17 222:18 **let**(19) 12:21 12:23 13:13 16:10 19:6 26:22 28:8 31:12 79:2 102:13 113:9 113:19 115:23 154:13 176:3 194:1 194:2 200:21 224:11 | | **limiting**(1) 25:19 **limits**(2) 60:17 173:20 **limply**(1) 94:14 **line**(37) 77:7 123:1 123:3 123:20 123:22 124:20 124:24 125:2 125:3 125:17 125:19 126:24 127:1 127:4 127:6 127:21 128:10 128:10 128:11 129:13 129:20 132:17 133:5 133:9 133:13 138:16 138:24 139:1 139:12 139:13 142:11 160:13 175:7 198:22 205:1 205:9 205:18 | | **lot**(18) 11:15 16:20 17:2 28:7 28:9 28:24 29:22 47:11 101:17 131:2 167:11 169:8 169:9 185:24 194:19 198:13 198:22 214:2 **lots**(4) 86:3 199:1 205:14 215:21 **lowenstein**(1) 8:32 **lower**(4) 164:5 164:11 165:10 169:15 **lowest**(1) 42:5 **ltd**(1) 8:40 **luck**(1) 217:2 |
| **lastly**(1) 33:18 **late**(1) 28:24 **later**(12) 14:21 20:11 20:17 30:1 39:4 66:22 95:8 97:6 185:8 188:1 212:17 219:5 | | **let's**(5) 81:13 97:20 101:22 118:1 119:3 **letter**(5) 83:24 112:16 158:23 158:23 **letters**(1) 12:14 **let's**(16) 37:16 51:13 55:10 62:5 70:14 73:19 124:22 132:25 143:2 143:2 180:11 192:8 193:8 205:20 213:25 217:13 | | **lines**(3) 95:21 169:24 169:25 **lion's**(1) 161:5 **liquidating**(1) 46:14 **liquidation**(1) 214:11 **list**(9) 10:20 17:16 176:18 194:2 194:7 194:12 196:1 199:7 222:8 | | **ludwig**(1) 5:30 **lugano**(1) 1:44 **lumping**(1) 88:2 **lunch**(3) 100:17 101:21 146:20 **lunchtime**(1) 175:24 **lynch**(2) 3:4 7:21 |
| **latin**(1) 85:25 **latter**(1) 149:24 **laughed**(1) 43:19 **laughter**(16) 10:8 10:11 10:15 12:20 91:10 92:6 92:11 153:9 155:5 155:10 191:20 192:3 193:1 193:23 198:9 217:4 | | **levee**(1) 8:33 **level**(5) 4:14 31:13 79:9 98:6 193:3 **levels**(2) 80:2 213:25 **levin**(2) 7:38 7:39 **lexi**(1) 7:46 | | **listed**(4) 67:14 68:7 94:25 123:24 **listen**(2) 12:2 113:8 **listing**(3) 122:20 135:9 194:13 **lists**(2) 10:20 135:9 **literally**(1) 28:6 | | **made**(46) 15:4 26:21 27:14 32:12 42:7 44:25 46:22 47:4 57:24 58:12 61:11 61:14 61:17 65:1 67:21 68:8 78:1 79:3 79:14 79:24 80:10 83:15 83:20 86:22 86:22 88:12 91:12 92:1 99:15 99:19 99:24 100:4 100:5 116:5 129:10 163:7 174:12 176:15 181:12 182:15 184:6 192:5 209:4 220:18 220:20 223:8 |
| **laurie**(1) 3:6 **law**(104) 4:4 7:17 13:25 21:8 21:13 22:14 22:20 24:13 25:11 26:7 32:4 32:13 32:23 34:9 35:10 36:10 36:21 36:21 38:14 38:16 44:12 45:5 45:13 45:17 47:2 48:16 48:19 50:13 50:17 50:21 54:1 60:9 65:7 65:16 83:5 83:24 85:7 94:5 94:6 94:7 94:8 94:11 99:12 105:21 107:1 109:2 109:23 110:14 111:10 114:22 116:13 141:23 148:16 151:11 156:19 164:8 164:19 166:1 167:7 167:12 170:2 170:16 171:1 172:7 172:23 173:16 177:12 177:15 196:1 196:3 204:1 204:9 206:3 207:19 207:19 207:22 207:24 208:1 208:2 208:4 208:11 208:18 209:12 210:15 210:24 211:2 211:13 211:14 211:20 211:20 214:1 214:3 214:9 214:9 214:14 214:18 215:7 215:14 215:15 216:6 216:23 222:16 222:19 | | **liabilities**(51) 23:1 55:23 55:25 55:25 74:14 74:17 76:8 78:15 78:22 81:22 91:2 121:10 123:16 123:22 125:19 126:17 126:17 127:6 127:8 127:21 128:3 133:8 133:11 138:15 140:5 142:3 142:3 142:4 142:6 142:10 142:13 142:16 142:16 143:6 143:7 144:8 144:9 144:15 144:16 149:14 149:14 161:10 170:11 170:18 171:15 171:21 174:12 186:22 187:1 187:4 187:5 | | **little**(29) 11:20 18:15 24:17 29:21 31:3 31:9 31:13 32:6 32:25 35:25 37:1 95:1 95:2 95:3 95:8 96:14 97:3 100:6 118:17 136:20 150:22 160:25 176:17 188:22 212:23 215:5 217:18 219:5 223:8 **live**(4) 13:10 21:4 30:19 113:21 **lives**(1) 47:9 **llc**(6) 2:4 4:4 4:47 6:38 8:18 9:11 **llp**(16) 1:21 2:17 2:26 2:34 3:4 4:18 5:5 5:11 5:17 5:23 6:23 7:21 7:39 7:49 8:5 8:36 **loan**(6) 84:24 85:14 96:22 96:25 97:1 198:17 | | **madlyn**(1) 7:26 **maintain**(2) 92:25 122:16 **maintained**(5) 41:20 122:13 157:23 183:19 183:22 **maintaining**(1) 98:4 **majority**(6) 33:3 33:12 69:22 102:15 138:23 160:11 **make**(69) 10:26 17:5 17:6 19:19 23:24 24:6 27:3 28:6 34:3 35:21 39:13 41:9 41:11 42:3 42:25 51:9 51:10 54:23 55:1 57:21 63:11 63:12 71:2 78:19 84:7 86:4 88:24 88:25 89:3 89:16 92:2 102:9 112:13 122:21 122:12 124:5 124:12 126:4 133:18 142:15 143:15 162:11 165:2 173:21 174:14 174:21 182:1 184:8 185:7 185:8 188:22 189:20 195:3 195:22 196:16 198:13 202:4 204:3 204:5 206:17 208:24 209:3 210:11 210:11 210:20 212:3 219:23 220:9 222:16 |
| **laws**(1) 59:19 **lawsuits**(1) 31:25 **lawyers**(3) 109:12 109:13 162:9 **lay**(4) 15:2 112:20 159:17 163:19 **layperson**(1) 149:2 **lays**(1) 98:2 176:10 188:18 **layton**(1) 2:42 **lbo**(8) 33:6 42:6 43:6 43:17 43:17 52:21 70:21 82:20 | | **liabilities"**(1) 174:10 **liability**(48) 23:4 56:1 70:16 71:20 74:5 74:7 77:18 78:11 78:16 82:12 92:21 93:7 96:21 97:3 125:14 126:8 126:8 126:10 127:14 127:15 129:10 131:7 132:19 132:22 143:1 149:21 149:22 160:12 160:18 161:7 161:13 164:9 170:20 171:14 171:15 171:25 172:1 173:19 174:1 182:25 188:3 188:14 **liable**(5) 90:5 90:6 90:7 182:20 182:22 **libby**(1) 8:37 **lien**(1) 98:10 **life**(5) 129:8 136:9 136:9 136:11 160:6 **light**(4) 20:8 95:14 106:18 108:12 | | **loaned**(7) 79:11 84:22 85:2 85:10 86:19 87:8 182:5 **local**(3) 8:32 104:18 174:19 **locate**(1) 123:19 | | **makes**(9) 20:24 38:20 40:14 44:20 83:23 84:3 199:24 204:4 205:17 |
| **lead**(4) 120:14 170:21 170:22 205:21 **leads**(2) 75:24 203:18 **leak**(1) 154:1 **learn**(1) 36:1 | | | | | | | |

| Word | Page:Line |
|---|---|

**making**(14) 44:16 44:21 80:23 87:3 87:4 95:14 95:15 118:25 151:4 158:2 158:6 178:19 179:22 211:15

**maman**(1) 6:11
**managed**(1) 36:1
**management**(12) 2:34 6:19 6:19 6:34 6:34 7:34 27:2 67:14 111:13 157:25 201:17 222:3
**management's**(1) 215:2
**managing**(2) 119:16 120:14
**mandamus**(1) 30:9
**mandate**(1) 82:19
**mandated**(1) 74:3
**manner**(4) 42:2 162:1 172:19 222:12
**many**(5) 55:14 66:25 198:12 204:7 214:23
**map**(2) 158:14 158:25
**marathon**(1) 34:7
**marc**(2) 2:19 5:8
**march**(7) 1:13 10:2 172:15 217:17 217:24 218:5 218:24
**marital**(1) 141:6
**marked**(2) 138:13 176:12
**market**(5) 1:10 2:6 2:13 3:8 4:39
**marsal**(6) 6:38 119:14 119:15 119:17 119:21 120:16 121:1
**martin**(3) 3:28 68:5 114:20
**master**(2) 23:25 97:8
**match**(2) 127:24 191:22
**matches**(1) 127:12
**material**(2) 10:26 69:2
**materials**(1) 102:25
**matter**(24) 18:9 21:1 24:20 24:23 29:3 34:6 34:9 34:17 50:16 68:11 104:17 116:7 117:19 120:16 121:2 132:4 153:24 174:7 175:22 198:8 209:17 210:14 214:1 224:22
**matters**(8) 10:18 14:3 14:14 92:9 93:11 93:11 206:6 217:6
**matthew**(5) 4:6 6:35 6:38 6:39 8:11
**maturity**(1) 78:7
**mauro**(1) 7:11
**may**(50) 10:9 10:24 11:14 11:16 12:18 16:18 20:24 20:25 21:1 31:12 33:16 36:25 37:1 37:21 44:7 44:8 66:21 67:18 69:14 69:15 96:17 97:17 105:23 115:21 116:3 116:23 117:12 118:2 119:9 119:10 130:7 132:12 145:8 146:2 148:21 167:10 172:20 199:18 202:14 202:15 204:3 205:11 205:16 205:16 207:3 212:7 213:21 218:6 220:25 222:13
**maybe**(10) 12:14 13:14 15:15 18:1 19:25 30:1 90:6 160:25 162:6 224:1
**mayer**(1) 3:37
**mccarter**(1) 3:36
**mccloy**(1) 6:29
**mccormack**(1) 2:21
**mccutchen**(1) 8:5
**mcdaniel**(1) 4:13
**mcdonald's**(1) 116:15
**mcginnis**(2) 124:21 138:25
**mcguinness**(1) 8:41
**mcneill**(1) 3:5
**mdl**(2) 32:3 33:4
**mean**(31) 24:15 28:5 41:2 57:11 72:21 76:23 86:2 89:21 89:22 90:1 91:2 91:5 92:4 101:17 110:24 113:18 130:14 131:23 161:17 162:6 163:3 163:5 165:25 176:2 176:9 181:14 183:10 185:16 185:17 192:23 198:11
**meaning**(23) 42:9 61:25 70:7 70:11 73:13 74:2 74:8 89:8 90:8 108:25 109:8 162:20 164:6 166:5 166:6 167:1 167:18 172:6 186:18 186:20 188:17 208:7

**meaningful**(1) 39:10
**meaningless**(1) 45:7
**means**(20) 19:24 26:11 44:23 65:2 65:3 97:20 97:21 99:2 108:16 113:23 131:16 149:19 149:20 162:11 173:19 175:12 185:15 208:8 211:22 211:22
**meant**(2) 102:12 223:11
**measure**(2) 188:2 209:20
**measured**(1) 184:21
**mechanic**(3) 31:8 214:17 215:22
**medical**(1) 129:8
**meet**(2) 84:7 106:12
**meisel**(1) 1:37
**members**(1) 98:16
**memorandum**(1) 36:9
**mention**(4) 75:17 80:7 83:7 208:6
**mentioned**(7) 38:1 74:13 83:8 84:1 133:8 142:24 223:25
**mentions**(1) 94:22
**mere**(2) 107:20 206:20
**merged**(1) 182:17
**merger**(11) 139:15 139:19 143:2 161:23 168:9 169:18 172:15 172:22 182:22 183:23 184:16
**merits**(3) 19:4 134:24 210:12
**merrill**(2) 3:4 7:21
**mester**(1) 3:22
**met**(2) 84:4 101:3
**methodology**(2) 219:22 220:10
**michael**(3) 8:5 8:6 8:24
**michelle**(1) 6:11
**middle**(4) 26:23 108:10 120:13 135:21
**midway**(1) 123:21
**might**(25) 13:5 19:10 29:19 29:19 30:13 30:20 31:23 33:4 52:13 54:14 54:16 94:2 113:16 124:14 136:10 141:1 159:10 192:21 196:7 196:11 209:4 214:17 217:6 220:4 222:7
**mignano**(1) 7:22
**mike**(1) 8:49
**miles**(1) 5:32
**millbank**(1) 6:29
**million**(38) 70:15 86:15 90:17 124:12 136:25 137:3 137:4 137:14 138:6 138:7 138:17 139:2 139:3 139:12 160:11 160:11 160:21 160:22 160:25 161:3 161:6 161:6 167:22 168:15 169:3 170:18 170:19 171:15 172:3 172:3 172:13 190:13 190:15 194:16 194:18 195:7 195:8 197:7
**mills**(1) 5:29
**mind**(6) 47:17 85:5 100:1 100:10 162:12 223:9
**minimum**(2) 188:3 188:5
**minute**(4) 44:2 111:19 140:7 155:7
**minutes**(4) 26:18 130:22 155:12 178:19
**mirror**(3) 113:1 136:13 139:15 139:20
**misallocation**(2) 190:22 196:13
**miscellaneous**(1) 221:14
**misimpression**(1) 12:12
**misinterpreted**(1) 200:7
**misleading**(1) 174:17
**misquote**(1) 181:9
**missed**(1) 203:12
**missing**(2) 102:25 175:4
**missouri**(1) 115:18
**misspeaking**(1) 87:1
**misstated**(1) 199:12

**mistake**(7) 91:25 92:2 99:24 99:25 100:4 100:5 100:7
**misunderstand**(1) 182:18
**mix**(1) 177:22
**modeled**(1) 217:16
**moment**(9) 29:15 38:1 68:2 72:3 125:7 180:9 180:12 181:7 209:23
**monarch**(2) 8:22 8:23
**money**(51) 53:12 53:16 56:2 58:17 58:18 59:2 59:10 60:1 60:6 61:3 61:20 61:22 62:1 62:7 62:8 62:10 62:14 62:17 62:19 63:21 64:15 66:23 71:8 73:6 73:18 77:19 78:17 79:11 79:22 84:22 84:24 85:10 86:12 86:15 86:19 87:8 87:24 88:25 90:4 90:5 90:14 90:15 90:15 90:19 163:15 164:7 164:12 179:12 182:3 182:5 182:7
**monies**(6) 49:14 54:22 58:25 61:1 61:23 62:3
**montenegro**(1) 7:18
**month**(2) 97:10 136:11
**monthly**(1) 121:11
**moot**(6) 20:21 24:23 31:12 33:2 33:17 33:17
**mootness**(1) 24:22
**more**(45) 13:11 16:14 17:11 17:11 28:7 32:4 32:6 37:19 41:3 41:4 42:10 43:2 45:10 45:21 45:24 47:10 54:21 56:16 57:5 66:2 75:13 75:20 80:7 90:2 93:11 101:14 118:24 154:1 157:16 165:3 165:7 170:3 171:10 196:8 206:17 208:18 212:2 214:17 214:21 215:7 217:18 217:19 219:12 220:6 223:8
**moreover**(1) 106:16
**morgan**(2) 2:42 8:36
**morning**(24) 10:4 10:5 13:17 13:24 14:20 15:7 18:5 22:13 26:25 27:20 28:3 42:22 48:9 67:8 67:12 99:7 108:14 146:12 146:16 161:19 163:22 168:25 217:10 223:9
**most**(11) 15:21 40:3 44:5 73:23 77:21 95:19 159:11 160:24 171:19 187:11 198:21
**mostly**(1) 148:17
**motion**(14) 14:9 14:14 20:13 24:3 26:20 30:5 87:21 112:10 112:19 112:21 166:12 166:13 166:18 166:19
**motions**(2) 166:17 220:24
**move**(7) 10:27 21:4 21:7 68:15 101:20 213:25 221:21
**moved**(3) 97:2 160:17 172:1
**moves**(1) 186:14
**moving**(5) 12:4 34:15 38:3 158:19 193:24
**much**(18) 16:21 39:13 40:14 44:20 76:18 80:7 88:14 93:11 112:17 117:25 162:13 164:22 170:15 188:18 195:19 207:11 212:25 224:15
**multi-billion**(1) 172:22
**multiple**(2) 128:10 224:7
**must**(14) 25:15 28:11 30:8 38:20 39:7 42:3 42:8 48:24 83:25 113:23 178:20 189:25 203:24 214:12
**myrick**(1) 5:33
**myself**(3) 16:10 33:19 209:23
**naftalis**(2) 7:39 7:39
**name**(5) 14:17 31:16 156:25 176:13 194:14
**name's**(1) 131:6
**narrow**(2) 167:14 167:16
**national**(1) 107:21
**natural**(6) 39:21 39:22 40:10 41:25 74:2 74:8

**nature**(13) 17:5 18:12 73:17 77:18 84:19 96:19 97:5 119:24 137:16 180:5 185:3 192:13 195:13
**necessarily**(3) 53:18 95:3 132:12
**necessary**(3) 100:22 130:21 208:25
**need**(32) 11:8 14:5 20:21 26:18 39:1 43:4 45:22 46:11 73:2 76:21 79:6 82:10 84:6 84:13 84:16 84:22 84:23 87:17 88:1 88:25 117:14 130:13 145:19 146:21 191:24 198:17 199:10 199:11 200:13 210:20 217:19 220:6
**needed**(1) 111:2
**needing**(1) 206:4
**needs**(8) 16:22 23:24 51:9 86:1 86:2 117:19 195:19 221:17
**negotiate**(1) 43:16
**negotiated**(5) 51:14 96:1 96:23 205:15 219:8
**negotiating**(6) 52:21 52:22 52:23 52:25 64:4 64:5
**negotiations**(1) 116:5
**neil**(3) 106:19 107:15 163:21
**neither**(3) 19:25 74:22 203:2 204:18
**neutral**(1) 132:3
**never**(8) 41:20 41:21 43:24 45:21 82:2 100:9 213:17 219:1
**new**(38) 2:23 2:39 2:52 3:33 4:9 31:6 31:9 32:2 33:2 34:7 47:15 52:21 66:22 105:10 166:23 176:20 176:21 188:3 207:16 207:23 207:24 207:24 208:1 209:25 210:15 210:16 210:18 210:21 210:22 210:23 211:5 211:6 211:18 211:18 219:17 220:1 220:6 220:16
**newman**(1) 2:37
**news**(1) 10:13
**next**(38) 18:18 27:2 34:15 37:12 40:17 46:5 56:14 56:22 57:15 62:4 72:25 104:15 130:22 135:24 137:18 139:1 142:10 142:12 145:10 157:1 157:4 160:17 164:17 172:5 180:24 182:1 190:22 190:23 192:11 193:8 193:9 196:7 196:8 201:24 202:3 202:3 218:1 218:18
**night**(1) 26:24
**nil**(2) 33:16 33:16
**nine**(5) 10:21 155:12 157:5 168:10 222:5
**no-brainer**(1) 217:2
**nobody**(7) 16:23 17:2 21:1 64:19 186:22 196:21 213:3
**nobody's**(1) 91:1
**nobody's**(2) 17:17 66:20
**nolan**(1) 5:48
**nomura**(2) 8:44 8:44
**non**(3) 33:23 186:14 197:3
**non-bankruptcy**(1) 207:19
**non-current**(5) 160:12 161:7 186:22 186:25 187:5
**non-debtor**(1) 33:23
**non-parties**(1) 101:1
**non-retiree**(2) 16:16 193:11
**non-senior**(2) 85:16 182:9
**non-swap**(2) 16:16 193:11
**non-teitelbaum**(1) 125:10 176:8
**noncurrent**(14) 123:22 125:19 131:7 132:19 132:21 132:21 133:13 138:15 142:4 142:20 143:6 144:9 144:14 144:15
**none**(7) 32:24 62:16 62:17 62:19 115:23 193:19 199:10
**nonqualified**(1) 129:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**noon**(1) 18:9

**nor**(5) 42:2 59:20 64:7 74:22 203:2

**normal**(28) 115:14 147:4 148:19 163:18 165:8 165:16 166:2 166:5 166:6 167:5 172:7 173:4 173:7 175:12 177:25 180:17 180:19 181:4 181:6 181:14 181:21 185:6 185:11 185:13 185:15 185:16 185:17 185:20

**normally**(2) 117:20 117:21

**norman**(1) 1:39

**norms**(1) 181:9

**north**(8) 2:6 2:45 3:8 3:16 3:39 4:14 4:26 160:25

**northern**(1) 106:19

**not**(301) 10:13 12:16 12:24 14:4 14:5 14:11 15:2 16:1 17:1 17:2 19:3 19:12 19:16 19:20 19:22 19:24 20:15 20:21 20:25 21:1 21:5 21:10 22:1 23:6 23:11 24:21 24:24 25:24 26:14 27:3 27:5 27:8 28:11 29:2 29:12 30:15 30:17 30:17 30:23 31:12 33:2 33:16 34:2 34:4 34:11 34:21 36:10 36:17 36:25 37:1 37:14 37:19 39:14 39:15 40:2 40:4 40:12 40:13 40:21 40:24 41:1 41:3 41:19 42:8 42:14 43:9 43:22 44:19 44:24 45:8 45:14 45:25 46:11 47:4 47:18 47:23 49:11 50:1 50:2 50:4 50:9 50:12 50:20 50:24 51:13 51:17 52:5 53:1 53:7 53:19 53:21 54:8 54:9 54:13 54:24 54:25 55:2 55:25 56:1 56:9 56:16 56:19 56:20 57:7 57:17 59:15 59:18 60:24 61:4 61:18 61:18 62:1 62:10 63:2 63:7 63:8 63:13 64:6 64:23 65:8 65:11 65:15 66:6 66:13 66:25 67:4 67:7 67:14 67:17 67:22 68:1 68:2 68:7 68:10 69:2 69:19 74:15 74:24 75:3 75:11 75:12 75:16 76:4 76:4 77:1 78:3 79:6 79:10 79:16 80:20 81:3 81:12 81:16 81:24 82:1 82:9 82:12 82:16 83:16 83:17 83:21 83:21 84:1 84:4 84:5 84:25 85:17 85:17 85:18 86:6 86:18 86:19 87:9 87:24 88:4 88:5 88:8 90:7 90:11 91:9 91:18 92:7 92:8 92:14 92:15 93:9 93:10 93:16 93:19 93:24 94:17 95:5 95:9 95:10 95:23 96:8 96:9 96:9 96:9 96:17 97:17 98:18 99:5 99:10 100:10 100:22 100:25 101:3 101:9 101:11 101:15 102:14 102:17 103:6 103:8 103:11 104:20 106:23 106:23 106:23 107:19 108:2 108:10 108:10 108:22 109:1 109:7 109:11 110:8 110:8 110:17 111:21 111:23 111:25 112:24 113:1 113:12 113:13 113:15 115:13 115:14 115:16 116:19 116:24 117:23 130:3 130:21 131:2 132:1 132:6 132:9 133:15 134:6 134:7 134:10 137:4 137:9 137:17 139:16 140:6 143:8 143:11 144:11 144:13 144:15 144:16 144:17 146:9 146:23 147:8 147:16 147:23 147:24 147:24 147:25 148:5 148:24 148:25 149:1 149:4 149:7 149:8 149:10 149:16 149:24 150:3 150:15 151:13 151:14 151:21 151:22 152:12 152:18 152:22 152:24 152:24 152:25 153:6 153:12

**not**(142) 153:13 153:24 154:1 154:2 154:6 156:3 157:20 158:6 158:10 159:5 160:21 161:9 161:20 161:25 162:1 162:10 162:19 162:23 164:5 164:8 166:9 166:10 166:11 166:19 167:5 167:6 167:10 167:11 168:17 168:22 168:23 170:8 170:10 170:12 170:15 170:21 170:23 171:2 171:11 171:13 171:19 171:21 171:24 172:2 173:6 173:9 174:2 174:6 174:22 175:16 176:5 176:10 176:11 176:19 176:21 177:24 178:7 178:7 178:14 179:2 179:5 179:6 179:7 179:10 179:22 180:20 180:23 181:20 181:20 182:22 182:13 182:14 185:13 186:5 186:24 187:2 187:14 188:3 188:24 188:25 189:1 189:22 190:6 191:5 191:15 191:18 192:2 192:6 192:12 193:14 194:1 194:15 194:17 194:18 195:24 197:22 198:5 198:5 198:11 200:9 200:13 202:8 202:14 203:13 203:15 204:10 205:8 205:16 205:19 206:22 209:1 209:18 209:25 210:7 210:18 211:17 212:15 212:15 213:1 213:2 213:9 214:5 214:9 215:2 215:4 215:9 215:22 215:23 215:24 216:11 216:15 216:17 216:18 217:19 219:20 220:7 220:18 222:8 222:15 222:17 224:4

**notable**(2) 80:20 80:22

**note**(66) 19:9 20:9 27:5 40:11 40:14 40:22 40:23 41:1 41:2 41:4 41:5 41:9 43:12 43:15 43:15 43:23 44:18 45:4 45:6 45:8 45:9 45:10 45:11 45:13 45:15 45:19 45:20 45:21 46:2 46:8 49:3 55:18 55:19 55:21 55:24 56:4 59:18 59:19 60:5 60:6 60:7 60:15 60:22 60:24 63:19 64:16 65:20 66:12 66:18 71:4 77:24 78:4 79:19 80:5 81:13 81:24 85:17 86:6 87:12 96:9 105:21 109:5 128:25 129:5 160:23 190:10

**noteholder**(2) 32:14 80:10

**noteholders**(4) 91:12 201:24 203:16 203:25

**notes**(20) 18:25 26:6 27:8 37:20 38:21 39:8 44:17 68:9 70:5 72:10 72:13 73:3 73:16 76:21 77:16 78:6 85:23 86:5 168:21 202:23

**notes."**(1) 171:5

**nothing**(27) 28:1 39:14 43:20 53:22 57:5 57:5 61:2 61:3 66:7 67:9 82:21 101:14 101:15 133:1 144:6 167:15 171:10 173:19 173:20 177:7 182:12 197:19 199:19 200:3 206:16 218:4 221:14

**nothing's**(1) 59:1

**notice**(7) 24:2 24:3 65:21 105:5 194:6 194:9 222:8

**noting**(1) 19:21

**notion**(1) 17:14

**notional**(3) 86:12 86:12 90:14

**notwithstanding**(3) 46:6 96:18 212:13

**novod**(1) 3:30

**now**(101) 18:14 20:1 21:22 26:7 26:17 29:11 29:13 30:18 31:9 31:12 32:25 33:1 33:11 33:19 35:18 36:8 36:20 37:6 37:16 47:7 58:3 59:6 70:10 72:3 72:9 85:12 85:25 86:20 88:11 88:21 94:20 95:24 97:15 99:25 102:6 110:6 110:9 110:10 110:17 111:14 111:18 112:8 112:14 112:14 119:3 119:21 120:15 121:1 121:16 121:24 125:3 125:21 126:14 127:16 128:2 129:12 130:12 135:21 136:18 137:18 138:3 138:9 148:10 152:10 154:24 159:5 159:10 163:20 165:24 169:16 176:22 178:24 181:4 182:1 182:12 183:2 183:12 183:12 183:14 183:25 185:10 187:13 187:15 190:12 191:13 193:8 194:15 195:8 195:10 197:6 202:17 204:7 205:17 210:14 211:12 212:16 213:13 217:9 217:13 219:16 220:11

**nullity**(2) 189:19 190:6

**number**(33) 13:6 19:11 19:16 21:23 35:12 42:3 67:3 68:15 68:16 68:24 69:1 69:1 88:18 120:4 124:13 125:21 127:25 128:8 135:11 137:17 157:4 159:14 160:19 161:2 161:3 175:7 176:3 176:14 178:22 194:14 194:16 194:18 224:2

**numbers**(6) 114:6 129:11 129:17 136:25 139:11 140:13

**oaktree**(15) 27:1 42:23 47:3 83:13 83:17 83:23 84:4 86:16 87:18 95:15 95:23 98:25 207:10 215:7 215:15

**oaktree's**(1) 90:17

**oaktree's**(1) 163:9

**object**(3) 116:8 117:7 218:12

**objected**(10) 69:3 80:2 102:14 102:18 102:20 103:6 103:9 103:11 103:17 190:13

**objecting**(3) 16:4 80:19 214:22

**objection**(26) 22:10 34:25 35:4 35:5 69:5 69:9 80:13 103:2 103:21 103:24 114:23 114:24 117:25 131:12 131:13 145:4 145:5 152:17 158:17 158:18 159:2 159:8 190:13 190:16 193:17 193:20

**objections**(10) 16:18 22:6 34:22 111:6 112:3 114:14 114:17 119:7 154:15 193:15

**objective**(1) 53:15

**objector**(1) 214:16

**obligated**(3) 51:18 71:6 90:2

**obligation**(71) 16:25 35:17 40:14 40:15 40:18 40:20 40:25 41:4 41:22 55:21 55:21 55:24 56:2 56:4 57:22 59:25 60:2 60:16 60:18 60:23 62:21 62:21 63:20 64:17 69:20 73:15 74:2 74:3 74:10 74:24 74:25 76:20 77:15 82:4 82:14 82:25 84:22 88:22 89:16 90:10 90:11 90:16 90:21 98:20 100:23 139:23 160:19 164:10 166:15 165:10 168:3 173:3 173:25 175:13 182:24 184:19 184:21 184:22 185:1 185:2 185:2 185:3 185:9 188:3 188:12 195:16 204:2 204:3 208:8 208:10

**obligations**(85) 37:10 37:15 44:15 44:17 55:15 55:17 55:23 56:5 56:5 56:6 56:7 56:9 56:9 56:17 56:18 56:24 57:1 59:4 59:4 59:14 59:15 59:20 59:21 59:22 59:24 59:25 60:13 60:22 63:10 63:11 63:19 63:21 71:10 71:12 72:1 72:7 73:3 74:18 75:14 75:18 75:22 78:8 78:24 81:21 81:21 81:23 85:22 88:9 89:4 89:8 89:9 90:3 90:23 93:1 93:3 139:19 146:1 148:7 148:3 148:9 148:13 148:19 160:3 161:9 166:16 167:4 169:2 169:15 169:16 169:20 170:8 170:19 171:21 173:24 177:20 186:4 186:8 187:14 191:7 191:25 192:6 194:25 197:24 208:5

**obligations,"**(1) 73:11

**obligor**(4) 41:24 55:20 55:21 182:24

**observation**(1) 202:18

**observations**(1) 42:25

**obtained**(1) 106:1

**obvious**(1) 161:20

**obviously**(14) 19:15 47:20 51:16 62:1 82:1 95:1 110:7 113:20 114:22 149:18 173:14 219:10 221:1 224:5

**occur**(1) 11:10

**occurred**(7) 139:25 141:3 147:4 161:23 169:18 189:22 218:25

**october**(1) 31:14

**odd**(1) 98:3

**off**(4) 37:10 135:9 135:9 183:7

**offer**(17) 12:7 12:11 12:16 13:10 34:23 69:3 103:19 108:24 118:11 132:1 145:2 147:6 158:7 159:20 161:24 193:15 209:23

**offered**(12) 102:19 107:18 114:3 114:11 116:3 118:8 131:17 147:24 147:25 148:6 149:4 149:4

**offering**(5) 110:18 149:7 149:11 161:25 161:26

**offers**(1) 189:15

**office**(1) 98:11

**officers**(1) 4:47

**official**(3) 2:10 5:4 144:21

**offs**(1) 77:24

**often**(1) 91:24

**okay**(69) 12:23 13:16 16:7 17:12 18:5 18:6 18:20 20:4 22:6 29:16 31:12 31:21 33:1 34:13 34:20 35:23 44:13 69:16 72:24 81:13 103:16 108:16 110:19 111:3 111:4 111:25 112:2 112:7 114:18 119:7 121:20 123:6 123:11 126:3 127:16 128:12 129:24 131:10 132:14 133:16 134:8 134:11 134:13 134:16 135:5 135:6 135:16 136:3 137:18 138:3 139:22 141:9 144:25 151:25 154:21 154:21 154:24 156:11 159:7 159:16 167:25 177:12 186:8 192:7 192:25 199:19 201:4 213:25 221:13

**old**(1) 34:2

**olivia**(1) 7:11

**once**(8) 12:10 37:20 57:22 61:25 175:3 182:18 202:10 209:15

**one**(137) 1:23 2:38 2:44 13:6 13:11 14:11 15:19 16:11 18:11 21:21 21:23 29:8 30:10 31:9 32:9 32:9 36:3 38:5 40:17 40:19 41:9 42:3 47:14 47:17 49:16 49:20 51:4 54:25 57:2 62:2 62:21 64:8 64:25 65:3 66:4 70:20 71:5 71:19 73:19 74:18 74:18 74:25 78:1 78:12 78:19 80:2 83:7 84:10 86:23 88:12 88:12 89:9 89:9 90:12 91:23 95:22 96:12 99:14 99:25 100:2 100:3 100:9 101:9 106:9 107:11 111:19 112:2 114:9 115:14 116:4 117:13 118:14 124:3 124:12 125:24 127:1 128:23 130:24 132:7 133:18 134:5 135:3 135:13 139:3 140:7 141:19 144:18 146:15 148:16 156:4 156:4 162:5 162:8 164:21 165:2 166:17 167:14 168:20 168:24 173:12 177:24 178:1 178:2 178:18 178:23 184:10 184:10 184:12 186:4 186:5 186:16 187:15 187:22 188:23 191:23 193:3 195:2 195:14 195:17 196:8 196:12 198:14 199:8 202:8 202:15 205:20 206:6 212:9 213:10 215:18 217:3 217:6 218:21 221:15 224:2 224:10

**one-issue**(1) 224:6

**ones**(6) 43:18 78:14 86:2 102:14 124:13 177:25

**onex**(2) 8:27 8:28

**one's**(1) 180:8

**ongoing**(2) 136:7 171:22

**only**(66) 11:10 11:14 17:20 24:25 26:17 28:11 32:19 40:4 42:6 43:11 54:13 55:16 55:20 56:5 56:20 57:13 58:7 58:9 58:13 58:16 58:17 58:20 58:23 62:7 64:13 73:2 74:15 77:4 102:19 103:16 110:6 114:9 118:25 130:14 134:1 134:3 144:13 153:13 155:11 162:9 165:6 166:17 167:14 167:14 167:15 174:11 183:16 184:18 189:5 190:11 197:5 203:7 203:8 203:9 204:4 204:5 204:8 205:11 206:18 210:13 211:3 212:3 212:4 213:8 220:16 222:15

**onto**(1) 213:25

**open**(6) 48:1 127:4 136:21 179:24 205:17 223:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**opening**(6) 115:10 159:13 159:14 166:4 179:8 189:8

**operating**(4) 22:23 31:7 113:2 121:11

**operation**(1) 197:14
**operations**(1) 172:13
**operative**(6) 22:1 34:23 102:23 103:3 112:15 176:16

**opinion**(15) 27:7 28:10 28:14 29:11 30:6 30:13 30:23 36:9 36:9 38:11 44:1 148:25 149:3 188:11 189:12

**opportunism**(1) 43:25
**opportunity**(5) 12:13 67:15 117:21 124:13 175:17

**oppose**(4) 177:8 177:9 177:11 220:7
**opposed**(6) 109:23 146:19 147:20 192:22 211:4 220:11

**opposes**(1) 214:24
**opposing**(1) 222:19
**opposite**(3) 87:3 93:6 210:17
**opposition**(1) 80:24
**opt**(6) 20:23 20:24 20:24 21:3 21:3 31:7
**opt-out**(1) 31:7
**opted**(2) 21:2 21:2
**oral**(1) 29:5
**orally**(1) 12:10
**orchestrated**(1) 47:20

**order**(42) 11:19 11:20 11:22 11:24 12:3 12:5 12:22 12:25 17:14 18:13 19:2 20:13 21:4 24:11 24:17 24:19 24:20 27:2 29:2 29:14 31:14 36:10 36:14 37:22 43:1 70:19 142:15 173:15 194:8 196:8 196:11 196:18 212:23 213:19 217:7 218:17 221:1 221:25 222:5 222:12 222:13 223:1

**orderly**(1) 16:14
**ordinary**(54) 23:3 23:13 60:4 60:7 81:25 82:5 82:18 82:21 82:24 92:16 93:5 115:13 122:13 122:15 165:22 166:2 166:5 166:6 167:1 167:18 169:23 170:9 170:10 172:7 172:20 173:3 173:5 173:6 175:11 175:13 178:2 181:12 181:13 181:14 183:5 183:18 183:20 184:1 184:13 184:14 184:20 184:25 185:3 185:4 185:15 185:17 185:17 185:18 185:18 185:18 185:19 185:19 186:7 186:9

**original**(3) 16:2 31:11 71:25
**originally**(2) 43:12 152:8
**other**(126) 11:12 13:5 14:4 15:13 17:6 19:16 23:15 25:16 27:17 32:13 32:21 32:21 38:14 43:14 45:4 45:12 47:22 48:5 52:14 54:24 55:7 55:22 59:1 63:20 72:23 75:22 78:21 81:22 81:22 82:12 82:13 84:10 87:22 88:3 88:19 89:2 89:3 97:2 97:22 98:8 99:19 105:22 105:24 107:21 114:18 114:25 115:3 115:17 116:11 116:14 116:17 116:18 117:8 117:21 118:9 118:14 118:18 121:14 123:22 125:19 125:21 126:17 127:8 127:22 128:7 128:13 128:16 128:19 128:22 128:25 129:7 132:21 133:7 133:10 136:1 137:16 137:24 138:15 141:4 147:4 151:4 156:22 156:23 157:13 157:19 159:18 160:11 160:16 161:5 163:17 165:8 165:19 169:16 171:8 171:19 172:10 172:10 174:10 181:2 187:22 192:13 193:11 195:5 195:20 196:5 196:14 196:20 197:3 197:4 201:25 202:13 203:11 203:16 203:19 203:22 204:8 206:4 206:7 206:11 213:1 213:11 214:14 215:6 219:3 220:2

**others**(12) 59:7 59:11 101:15 102:16 109:23 118:17 139:19 147:17 151:7 157:9 221:19 224:6

**otherwise**(13) 31:23 46:20 81:19 98:17 99:14 109:7 109:10 109:19 149:25 191:16 192:4 214:17 215:10

**ought**(9) 11:6 20:16 21:6 22:4 118:14 176:6 177:5 221:2 223:23

**our**(100) 14:11 16:2 17:18 18:18 20:9 21:5 23:7 27:23 27:25 28:10 28:13 28:13 29:14 30:12 30:23 31:6 34:4 37:3 38:20 44:22 47:5 47:13 47:21 50:25 52:1 52:8 52:9 61:15 63:17 68:8 68:11 74:21 76:11 80:9 89:2 100:1 100:3 100:10 100:21 100:24 104:15 104:17 105:4 105:7 105:9 106:4 106:10 106:16 107:8 108:6 108:18 109:15 109:18 110:4 112:10 112:19 113:10 130:10 159:13 159:13 162:16 162:23 163:13 163:19 163:21 163:25 164:20 166:3 166:4 166:25 168:10 170:12 170:25 173:21 174:19 174:23 174:23 176:9 177:4 181:23 190:1 192:1 195:14 197:2 199:12 199:14 200:5 200:13 206:19 207:11 207:14 207:25 214:4 214:9 214:9 216:5 216:17 220:7 224:16

**ours**(2) 89:10 213:1
**ourselves**(2) 30:18 50:25
**out**(81) 18:14 19:5 20:14 20:24 21:2 21:3 29:8 30:17 30:21 39:1 42:11 42:14 43:11 43:25 47:5 53:10 53:16 65:8 72:17 72:21 75:23 80:9 85:9 86:14 88:25 88:25 89:24 90:4 90:4 90:5 90:5 90:22 91:13 91:14 97:19 98:2 98:17 99:15 103:1 128:9 142:8 142:18 142:12 151:20 157:5 160:18 161:1 163:19 165:15 167:24 169:19 169:20 169:21 171:1 171:4 172:3 172:25 173:13 175:14 176:10 176:24 179:20 179:25 180:25 181:25 186:6 187:15 188:19 196:1 196:12 196:17 196:17 197:2 198:4 202:14 212:23 213:4 216:14 216:17 216:18 216:18

**outcome**(8) 23:16 23:17 66:9 66:10 202:9 202:9 203:6 206:6

**output**(1) 122:10
**outset**(3) 91:3 130:11 178:6
**outside**(4) 50:17 109:9 119:20 141:14
**outstanding**(1) 97:1
**over**(62) 10:20 11:18 11:23 12:16 18:12 21:8 21:13 25:15 28:11 30:1 33:5 33:7 33:7 33:22 35:6 38:21 39:2 39:7 40:17 46:9 49:23 51:24 52:7 52:16 52:17 55:4 56:2 56:7 56:13 58:18 58:23 58:24 59:10 59:11 60:19 61:7 61:9 61:13 61:16 61:19 62:19 64:8 65:5 69:11 70:5 76:8 100:25 102:9 139:7 152:9 152:21 162:21 179:1 179:9 182:17 182:23 200:5 213:2 217:9 217:10 217:22

**overall**(2) 26:4 107:17
**overnight**(1) 224:12
**oversight**(1) 175:6
**owed**(3) 164:7 180:7 187:14
**owes**(1) 60:6
**owing**(1) 164:7
**own**(10) 24:1 31:16 162:11 182:10 184:3 190:1 190:5 197:17 202:15 211:15

**owned**(1) 43:10
**owning**(1) 43:14
**p.a**(1) 1:38
**p.m**(9) 102:1 102:1 155:16 155:16 155:22 201:13 201:13 221:10 224:18

**package**(4) 106:8 107:18 147:16 147:20
**packages**(1) 151:2

**page**(71) 45:1 51:20 52:10 62:23 75:7 85:19 88:19 89:24 89:25 98:3 102:25 103:1 109:5 114:6 116:16 122:2 122:3 122:4 122:7 123:10 123:15 123:16 123:21 125:18 125:24 126:14 127:10 127:18 127:24 128:6 128:14 128:23 128:24 129:13 132:18 133:17 133:23 134:5 134:8 135:3 136:22 138:5 138:22 142:9 148:1 163:10 163:12 166:8 174:7 174:23 175:3 175:4 175:7 175:22 179:9 180:4 188:1 195:1 199:14 202:15 217:20 223:15 223:21 223:23

**pages**(10) 23:18 96:15 123:12 135:4 142:11 142:12 174:20 195:2 224:1 224:2

**paid**(49) 23:10 37:10 37:20 44:17 49:23 51:23 52:7 53:6 56:12 57:15 58:22 59:13 61:7 61:8 61:13 61:16 61:21 62:13 62:2 62:19 63:19 63:20 63:22 63:23 65:5 65:5 86:17 100:25 138:1 144:19 160:17 161:4 161:4 171:14 187:11 187:14 188:13 189:23 202:3 202:10 203:24 203:25 208:9 210:1 210:3 212:12 212:18 216:16

**paid."**(1) 171:2
**paid"**(1) 174:6
**pain**(2) 64:12 64:14
**paper**(2) 44:7 189:4
**papers**(3) 28:13 29:6 44:22 83:8 83:9 84:5 89:2 162:4 163:13 163:19 189:7 191:17 197:3

**paragraph**(43) 37:5 37:7 37:8 37:16 37:17 37:19 37:23 37:24 38:10 38:18 38:19 40:19 55:13 56:14 59:6 59:7 59:7 59:11 59:12 60:17 61:6 62:8 157:22 158:8 158:22 158:24 163:24 165:19 173:22 199:15 199:22 200:3 217:21 217:22 217:23 218:15 218:24 220:15 220:17 220:23 221:15 222:5 222:10

**paragraphs**(16) 14:3 14:6 14:7 14:24 29:10 60:18 95:21 158:10 158:15 158:17 158:20 159:3 199:15 218:1 218:13 218:18

**parcel**(1) 72:6
**parent**(5) 97:14 193:11 196:5 196:20 197:4
**pari**(2) 81:23 92:15
**park**(2) 2:38 5:18
**parke**(2) 2:17 5:5
**parlance**(2) 60:2 170:9
**parole**(1) 162:2
**parrot**(1) 151:20
**part**(44) 29:20 51:6 56:24 57:22 59:3 60:3 68:10 70:21 72:6 74:9 77:17 79:21 82:19 84:7 86:19 87:8 93:16 98:7 98:17 106:7 106:24 107:17 107:17 108:2 138:17 139:18 139:24 147:16 147:19 148:7 159:13 162:16 163:16 168:10 171:3 171:19 172:14 172:23 176:21 176:22 182:23 183:8 189:14 198:21

**partial**(1) 187:22
**participant**(1) 97:15
**participated**(1) 107:19
**particular**(26) 11:8 12:7 21:25 26:5 27:6 30:14 30:16 31:25 43:2 43:3 74:22 99:11 115:11 119:18 122:23 128:6 128:10 128:18 129:19 135:6 142:11 173:8 194:15 206:23 214:8 214:11

**particularly**(12) 47:2 47:6 75:8 84:1 84:11 84:17 93:3 95:12 101:1 147:1 185:19 221:14

**parties**(63) 10:25 11:5 12:8 12:11 13:11 16:11 17:15 18:17 19:12 19:16 34:5 34:5 48:13 52:5 52:25 53:3 53:8 54:10 56:1 59:15 64:4 66:25 67:15 80:23 89:2 89:8 97:9 97:9 101:1 109:9 116:20 117:1 117:21 146:4 149:25 154:25 157:15 161:22 161:26 162:22 163:1 166:19 169:9 175:8 196:15 200:22 201:17 201:25 202:2 202:18 204:20 206:10 207:1 209:16 213:15 213:21 215:24 217:7 217:11 219:3 221:16 224:5 224:6

**parties'**(4) 26:2 36:23 42:10 42:16
**partners**(7) 6:42 8:28 8:28 8:48 8:48 9:4 9:4

**parts**(2) 156:23 185:15
**party**(29) 12:11 41:19 41:21 46:13 54:5 56:25 63:3 63:5 63:7 63:8 71:2 83:23 83:25 94:8 94:9 96:5 116:19 155:1 161:20 199:5 199:6 202:19 205:18 218:8 218:11 222:14 222:18 223:22 224:11

**parver**(1) 7:24
**passu**(2) 81:23 92:15
**patent**(1) 98:11
**paul**(2) 7:22 7:29
**pauley**(1) 32:1
**pause**(1) 44:18
**pay**(27) 52:16 52:17 55:4 55:19 55:22 56:2 56:7 56:8 58:23 58:24 59:9 59:11 60:7 60:19 61:19 64:8 70:25 75:25 76:1 84:18 90:3 90:12 92:24 160:18 164:13 164:13 165:10

**payable**(24) 52:13 78:9 82:2 109:12 110:25 121:14 126:16 127:7 127:22 128:18 133:7 133:9 134:5 134:9 165:22 166:10 167:8 169:22 170:17 170:17 170:21 187:8 188:25 208:15

**payables**(14) 81:25 149:13 167:10 167:12 170:2 170:4 170:6 170:9 170:10 181:21 186:6 186:11 188:19 199:1

**payable"**(1) 105:3
**paying**(7) 89:12 89:13 90:13 98:13 98:19 164:14 204:11

**payless**(4) 84:2 115:15 178:10 179:4
**payment**(60) 25:5 25:10 25:24 26:10 26:11 35:15 36:4 36:25 37:2 37:3 37:9 37:15 38:13 38:21 38:23 41:8 46:7 49:20 51:19 51:22 51:23 52:3 52:7 52:12 52:13 52:18 54:25 56:12 56:13 56:18 57:21 58:6 58:7 58:21 61:16 61:16 63:11 63:12 64:2 64:11 65:23 66:2 66:10 66:11 70:17 72:13 72:14 88:24 137:24 165:4 165:7 165:15 181:12 182:6 197:24 208:10 209:3 211:21 211:22 211:23

**payments**(29) 25:9 26:3 35:13 35:14 35:16 38:6 39:8 40:22 41:2 41:5 44:19 44:19 46:9 46:10 55:3 56:7 57:14 57:24 57:24 58:1 58:1 61:9 61:12 63:16 71:2 71:3 77:23 100:20 199:20

**payment"**(2) 36:15 44:16
**payout**(1) 171:23
**pending**(1) 32:1
**pennock**(1) 7:31
**pennsylvania**(1) 1:48
**penny**(2) 53:6 55:1
**pension**(13) 23:2 125:1 128:15 128:25 129:6 129:7 152:22 173:24 188:3 188:5 188:8 188:9 188:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **people**(47) | 11:25 12:1 15:12 16:10 17:2 17:4 17:6 20:23 21:3 29:2 47:8 47:11 48:2 66:13 78:17 84:2 87:13 89:19 92:1 92:2 118:10 120:21 131:17 143:15 146:13 165:18 167:2 167:24 168:19 169:18 176:19 177:6 187:19 192:21 194:4 194:7 195:20 196:14 214:19 218:3 219:23 220:4 220:4 220:9 220:17 221:6 223:6 | **place**(6) | 11:10 31:3 58:20 62:2 62:7 66:15 | **positions**(2) | 99:12 165:2 | **price**(29) | 115:12 147:3 163:16 163:18 164:4 164:19 164:21 165:3 165:5 165:5 165:15 169:11 178:15 179:2 179:6 179:7 179:10 179:13 179:18 179:19 179:21 179:22 180:12 180:16 180:22 181:3 181:16 181:22 184:11 |
| | | **placed**(1) | 30:5 | **posner**(1) | 215:17 | | |
| | | **plain**(12) | 43:25 70:6 70:11 73:7 74:2 74:8 75:11 76:25 81:6 208:7 208:12 208:23 | **possession**(4) | 39:12 39:22 40:3 40:10 | | |
| | | | | **possible**(2) | 13:8 15:19 | | |
| | | | | **possibly**(1) | 17:19 | | |
| | | **plains**(1) | 4:21 | **post**(6) | 88:1 128:25 202:24 203:12 203:15 204:1 | | |
| | | **plaintiff**(1) | 32:4 | | | **primarily**(1) | 32:8 105:1 157:23 |
| **people's**(1) | 218:7 | **plan**(64) | 20:12 20:22 21:3 24:18 25:1 31:6 33:2 34:2 37:14 39:1 39:1 44:19 46:13 46:20 46:22 79:7 80:9 80:10 80:14 80:19 80:24 84:17 84:18 86:17 86:23 86:24 95:18 95:19 95:22 107:19 124:23 125:1 128:15 152:17 157:7 157:7 157:9 157:12 157:23 157:23 167:23 167:23 168:16 169:5 185:6 189:14 189:21 189:23 190:22 190:25 190:25 196:13 201:23 205:10 205:10 205:14 206:23 214:10 214:16 214:24 214:25 218:19 219:4 219:7 | | | **primary**(4) | 32:8 32:11 96:5 139:4 |
| **per**(2) | 71:7 136:11 | | | **post-2000**(1) | 142:23 | **primoff**(1) | 7:26 |
| **percent**(10) | 22:17 33:6 47:10 51:15 51:17 52:24 53:20 71:7 168:10 190:11 | | | **post-petition**(21) | 17:20 41:12 41:13 65:18 196:9 202:22 203:21 203:24 204:3 206:1 207:13 208:6 208:13 208:20 208:21 209:1 209:6 209:14 212:12 213:6 216:15 | **principal**(18) | 40:22 40:23 41:1 41:4 55:17 55:19 55:22 72:22 78:3 78:5 90:12 96:25 97:1 97:2 97:21 97:24 98:8 182:24 |
| **recipient**(1) | 209:24 | | | | | | |
| **perfectly**(1) | 15:8 79:18 79:23 | | | | | **principle**(2) | 50:2 154:25 |
| **perhaps**(13) | 21:16 30:3 32:9 33:3 33:7 37:13 40:9 94:1 136:9 145:17 160:21 180:7 187:11 | **planning**(1) | 130:18 | **post-retirement**(1) | 129:7 | **principles**(2) | 95:3 144:1 |
| | | **plans**(29) | 14:4 95:19 112:15 112:25 129:6 129:7 140:24 141:2 151:24 157:11 158:3 158:6 163:23 164:1 177:2 180:14 181:8 182:6 182:11 183:17 183:18 183:19 183:21 183:23 188:5 189:13 205:22 206:12 214:15 | **pot**(2) | 28:12 55:1 | **prior**(5) | 24:25 30:6 56:25 72:14 92:18 93:15 116:5 143:21 186:12 |
| | | | | **potential**(2) | 19:21 194:13 | | |
| | | | | **potentially**(4) | 15:19 47:10 104:16 130:4 | **priority**(6) | 11:16 17:21 23:5 68:9 89:18 182:10 |
| **period**(16) | 15:10 37:11 124:8 124:8 124:10 125:4 126:1 126:23 127:1 127:10 127:25 139:11 139:11 171:13 195:9 208:22 | | | **potter**(1) | 3:4 | | |
| | | | | **power**(4) | 37:21 50:1 50:8 51:5 | **pro-rata**(1) | 49:19 |
| | | | | **powers**(2) | 45:3 59:17 | **probably**(13) | 11:13 22:4 24:2 33:9 47:14 109:19 119:1 160:25 183:7 191:13 191:14 198:10 212:23 |
| **permission**(2) | 48:11 201:18 | **platform**(1) | 145:13 | **ppearances**(4) | 1:20 2:1 3:1 4:1 | | |
| **permit**(4) | 47:23 57:21 154:6 212:9 | **plausible**(1) | 46:17 | **practical**(1) | 56:9 | | |
| **permits**(1) | 67:23 | **plaza**(3) | 2:22 3:7 4:14 | **practice**(3) | 181:13 183:24 185:5 | | |
| **permitted**(6) | 47:19 60:25 62:13 154:2 203:10 212:7 | **pleading**(2) | 99:18 104:15 | **practices**(1) | 185:20 | **problem**(5) | 15:13 48:5 48:6 114:11 174:2 |
| | | **pleadings**(4) | 27:13 104:18 166:11 166:20 | **pre**(1) | 202:10 | **procedural**(16) | 10:18 11:18 15:8 18:11 18:14 19:4 20:19 29:7 30:11 31:2 34:17 213:11 213:12 217:5 223:3 223:5 |
| **pernick**(1) | 1:39 | **please**(8) | 40:17 102:2 134:12 136:3 155:17 157:21 186:5 201:14 | **pre-code**(1) | 207:14 | | |
| **person**(3) | 48:6 60:6 158:5 | | | **pre-dated**(1) | 67:20 | | |
| **personal**(3) | 10:7 146:22 190:5 | | | **pre-lbo**(1) | 52:23 | | |
| **personally**(1) | 145:23 | | | **pre-petition**(2) | 41:22 202:2 | **procedurally**(7) | 29:12 30:9 31:4 31:10 35:18 213:15 215:11 |
| **person's**(2) | 136:9 158:23 | **pleasure**(1) | 210:2 | **pre-trial**(2) | 220:22 220:25 | | |
| **perspective**(2) | 37:18 213:24 | **plenty**(1) | 116:14 | **precise**(1) | 137:9 | **procedure**(3) | 215:23 221:18 222:11 |
| **persuasion**(2) | 83:11 101:2 | **plucked**(1) | 54:16 | **precisely**(2) | 161:2 175:7 | **procedures**(2) | 15:8 219:13 |
| **persuasive**(1) | 36:11 | **plus**(2) | 161:6 164:13 | **precludes**(1) | 193:21 | **proceed**(4) | 119:9 154:24 193:8 201:18 |
| **pertaining**(1) | 59:14 | **ply**(1) | 176:8 | **precursor**(1) | 95:20 | **proceeding**(8) | 14:12 20:17 21:6 32:3 67:23 194:7 205:22 206:22 |
| **pertains**(1) | 51:1 | **podium**(4) | 35:6 69:11 85:6 113:13 | **predecessor**(1) | 83:17 | | |
| **petition**(8) | 96:11 113:3 202:11 202:25 203:9 203:13 203:16 204:2 | **point**(97) | 8:10 8:10 11:18 12:24 18:18 19:19 19:19 19:21 20:11 20:17 20:24 25:12 27:6 30:25 31:25 42:5 42:12 46:4 47:5 57:23 58:5 64:25 73:19 73:19 74:22 74:23 75:25 76:11 77:21 78:1 79:2 79:23 82:22 84:3 87:1 88:12 90:23 96:8 99:15 99:15 105:23 106:25 110:14 115:16 117:13 118:25 122:21 138:2 146:21 149:8 151:19 152:4 154:10 158:2 161:11 164:14 164:25 165:13 167:7 168:9 168:19 168:23 171:4 173:4 173:13 174:21 178:25 179:25 183:7 186:3 188:21 189:6 189:7 189:19 190:7 202:11 202:19 203:14 204:10 204:12 204:17 204:24 206:16 206:18 207:5 208:14 209:7 209:8 210:17 211:7 212:3 212:15 213:22 214:8 214:11 215:10 217:12 | **predicted**(2) | 65:14 65:21 | **proceeds**(27) | 19:2 20:7 25:6 25:6 25:7 25:7 25:16 26:9 31:1 33:21 34:4 36:6 36:7 36:7 36:8 38:25 41:6 41:6 41:7 41:7 59:23 204:23 205:13 206:15 206:19 206:21 209:21 |
| | | | | **preface**(1) | 176:5 | | |
| | | | | **preliminary**(1) | 13:7 | | |
| | | | | **premature**(3) | 20:10 204:9 205:4 | | |
| | | | | **premium**(1) | 97:22 | | |
| | | | | **premiums**(1) | 76:1 | | |
| **phone**(1) | 52:5 | | | **prepare**(1) | 121:10 | | |
| **phones**(120) | 11:16 16:24 17:21 18:25 20:23 25:1 25:2 25:4 25:15 26:6 26:12 27:8 27:15 27:18 27:22 32:7 32:13 32:18 32:21 33:4 33:11 33:12 33:20 33:25 33:6 36:21 36:25 37:18 39:10 47:24 49:11 49:14 49:18 49:22 51:14 51:14 51:21 52:1 52:6 52:11 52:22 55:4 56:11 61:1 61:5 62:15 63:1 64:1 64:5 64:9 65:13 65:23 66:3 68:7 68:10 69:20 69:23 69:25 70:2 70:5 70:13 72:10 72:12 73:8 73:15 75:11 76:25 77:10 78:6 78:21 78:25 80:12 81:6 81:9 81:10 83:14 83:16 84:21 87:16 88:7 94:7 95:5 99:20 101:4 109:6 117:1 147:2 151:16 156:19 161:18 161:21 161:21 163:2 163:5 165:18 165:19 177:19 177:22 178:1 178:9 178:24 185:21 188:22 189:2 197:9 197:12 202:11 202:24 203:4 203:6 203:14 203:23 203:24 204:5 204:12 204:12 205:24 206:8 212:1 | | | **prepared**(13) | 10:26 122:9 141:15 143:21 151:25 156:13 157:14 183:16 183:20 195:11 195:22 219:14 220:13 | | |
| | | | | | | **process**(6) | 15:8 33:5 134:20 214:6 222:6 222:20 |
| | | | | **preparing**(1) | 120:2 | | |
| | | | | **present**(9) | 11:9 18:19 41:18 114:12 188:7 195:11 214:12 214:13 215:18 | | |
| | | | | | | **procure**(1) | 75:25 |
| | | | | **presentation**(11) | 11:19 11:22 11:24 12:3 12:25 17:14 27:3 30:22 96:14 98:15 193:22 | **procured**(1) | 143:17 |
| | | | | | | **produced**(1) | 1:53 |
| | | | | | | **proffered**(3) | 15:23 16:2 16:17 |
| | | **pointed**(5) | 80:9 91:13 142:8 142:8 142:12 | **presented**(10) | 10:23 10:24 11:8 29:7 31:5 108:14 156:2 160:20 193:14 214:11 | **program**(2) | 107:17 150:25 |
| | | **pointing**(1) | 91:14 | | | **programs**(1) | 150:24 |
| **phones'**(1) | 208:17 | **points**(12) | 27:4 44:5 71:4 72:3 89:24 93:25 94:1 103:8 107:7 108:5 173:21 178:18 | | | **progress**(1) | 102:10 |
| **phonetic**(1) | 14:17 | | | **presently**(1) | 195:24 | **prohibit**(1) | 60:19 |
| **phrase**(15) | 25:24 54:16 58:11 62:4 74:2 85:25 86:1 151:20 165:16 178:1 179:6 179:11 179:17 179:24 180:14 | | | **presents**(1) | 110:21 | **prohibited**(7) | 25:11 43:13 45:2 58:16 58:23 59:1 62:2 62:7 63:15 63:16 64:15 |
| | | | | **preservation**(1) | 28:14 | | |
| | | **policy**(2) | 205:5 205:8 | **preserve**(2) | 19:19 220:18 | | |
| | | **polis**(1) | 215:18 | **preserving**(1) | 98:4 | | |
| | | **polite**(1) | 175:5 | **press**(3) | 19:14 19:18 171:17 | | |
| **phrases**(2) | 54:17 180:2 | **polk**(3) | 2:49 8:36 98:10 | **presume**(1) | 220:3 | **prohibition**(6) | 39:17 44:15 44:23 45:10 45:11 62:8 |
| **pick**(1) | 214:7 | **pool**(1) | 28:12 | **presumptive**(1) | 222:9 | | |
| **picked**(2) | 76:21 161:10 | **portion**(16) | 72:5 74:6 75:5 75:6 75:17 78:23 137:24 142:2 142:3 154:22 160:15 160:16 160:16 161:3 187:25 193:22 | **pretrial**(1) | 99:17 | | |
| **pickering**(1) | 7:5 | | | **pretty**(11) | 32:15 33:17 89:2 132:3 162:13 164:22 188:18 191:15 193:7 210:24 212:25 | **prohibitions**(3) | 46:7 60:21 60:21 |
| **pie**(1) | 24:17 | | | | | **prohibits**(3) | 58:20 61:2 61:4 |
| **piece**(11) | 24:17 47:24 160:4 160:24 164:17 172:1 172:5 174:1 187:17 187:22 188:19 | | | **prevent**(2) | 31:23 206:22 | **projections**(2) | 66:22 215:3 |
| | | **posit**(3) | 33:20 94:16 199:22 | **previously**(7) | 59:5 79:5 79:8 79:24 192:5 220:18 220:20 | **prolong**(1) | 154:4 |
| | | **posited**(1) | 167:21 | | | **prometheus**(1) | 50:6 |
| | | **position**(29) | 19:4 19:15 19:16 28:13 80:8 81:17 89:20 89:20 91:18 93:8 97:13 101:9 101:11 101:14 101:16 105:4 106:3 114:23 119:15 120:25 176:5 176:7 177:4 194:2 194:17 197:2 212:15 212:16 224:4 | | | **promise**(2) | 108:3 168:3 |
| **pieces**(1) | 44:7 | | | | | **promulgate**(1) | 105:12 |
| **pike**(1) | 48:3 | | | | | **pronouncement**(1) | 144:22 |
| | | | | | | **proof**(13) | 60:25 62:13 83:11 83:12 94:5 94:10 94:16 94:18 101:2 157:4 161:19 161:20 199:4 |
| | | | | | | **proper**(1) | 179:15 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **properly**(3) 82:11 194:3 200:13 | | **put**(42) 12:18 15:22 16:10 16:11 30:17 30:21 35:19 47:21 51:25 55:12 64:6 64:7 73:6 89:8 95:14 105:15 107:16 108:11 111:15 111:16 111:18 113:21 115:19 115:20 117:4 119:5 130:10 143:2 143:12 145:19 146:21 147:18 150:14 176:4 176:24 177:6 178:22 183:11 205:15 215:23 217:16 221:11 | | **reading**(7) 25:18 36:14 46:18 49:24 61:13 151:19 178:18 | | **records**(11) 115:21 120:23 121:3 131:11 134:23 134:25 145:23 150:14 150:15 152:16 160:19 |
| **property**(9) 50:11 50:12 163:17 164:19 164:23 165:6 179:13 179:16 179:19 | | | | **ready**(5) 18:21 18:23 109:19 155:19 | | |
| | | | | **reaffirmed**(1) 62:20 | | **recover**(3) 38:6 45:21 45:24 |
| **proponent**(1) 84:17 | | | | **real**(6) 11:24 57:23 173:4 195:18 206:9 224:10 | | **recoveries**(29) 26:9 28:12 33:6 33:22 40:21 43:16 43:23 49:12 50:10 50:24 51:6 53:9 53:20 54:21 56:5 57:8 57:12 60:11 60:20 64:21 64:21 64:22 65:11 65:14 66:6 100:20 100:24 192:2 194:19 |
| **proponents**(5) 80:11 95:22 218:19 219:4 219:8 | | **puts**(2) 88:9 175:3 | | | | |
| | | **putting**(4) 11:12 88:4 104:5 196:17 | | **reality**(3) 43:1 84:13 84:15 | | |
| **proposal**(4) 14:11 14:23 15:4 37:14 | | **puzzles**(1) 118:6 | | **reallocation**(1) 42:12 | | **recovering**(1) 47:19 |
| **proposed**(9) 11:19 12:24 15:1 15:4 17:14 154:3 205:22 221:24 222:5 | | **qualified**(10) 113:11 129:6 131:15 132:2 147:6 147:10 152:10 152:23 152:25 153:13 | | **really**(49) 12:1 14:5 14:5 16:22 17:2 17:17 23:22 24:23 33:21 39:13 39:14 41:11 44:1 55:5 64:18 65:6 81:18 83:22 89:3 89:11 89:11 89:11 90:10 91:13 94:3 94:15 94:21 111:12 112:10 112:12 112:17 113:4 142:11 150:16 153:25 162:14 173:10 174:2 179:7 180:10 186:20 188:24 189:5 198:8 198:17 198:20 216:9 219:11 220:15 | | **recovery**(10) 23:9 32:9 32:11 45:19 47:8 50:19 53:17 57:10 80:13 93:15 |
| | | | | | | **redirect**(1) 145:2 |
| **proposing**(1) 112:9 | | **qualifies**(6) 73:9 73:12 77:9 77:12 78:20 82:25 | | | | **reduce**(2) 45:20 195:2 |
| **proposition**(9) 45:23 82:7 106:15 107:4 107:8 108:12 110:16 173:18 204:24 | | | | | | **reduced**(2) 168:11 188:9 |
| | | | | | | **reduction**(2) 190:11 190:15 |
| **prosecute**(1) 32:6 | | **qualify**(2) 74:24 77:19 | | | | **redundant**(1) 106:18 |
| **prosecuting**(1) 33:13 | | **quantitatively**(1) 76:10 | | **reason**(12) 19:3 43:11 49:15 50:13 52:13 77:12 84:6 143:9 170:23 176:1 189:5 197:5 | | **reed**(1) 5:25 |
| **proskauer**(1) 7:49 | | **quarter**(1) 125:10 | | | | **refer**(3) 71:19 85:18 109:3 110:19 113:14 116:11 116:14 129:23 170:13 179:8 180:9 196:13 196:14 |
| **prove**(4) 76:11 83:25 191:3 197:21 | | **quarterly**(1) 123:4 | | | | |
| **proved**(1) 191:5 | | **quest**(1) 162:14 | | **reasonable**(10) 65:11 65:12 65:22 65:25 66:4 66:8 66:10 110:21 162:17 167:17 | | |
| **proven**(1) 215:24 | | **question**(54) 13:19 15:18 16:9 16:21 20:1 23:21 24:12 24:22 26:16 39:2 39:3 39:6 54:10 69:25 70:3 70:5 91:9 101:20 111:12 112:11 113:2 114:1 115:4 116:6 118:3 118:9 131:19 132:9 132:15 132:17 140:20 141:9 148:1 148:2 149:11 151:8 151:18 153:1 154:1 154:9 161:23 167:9 187:6 192:20 195:14 195:18 206:3 206:3 207:2 208:24 209:14 209:15 210:21 213:8 | | | | **reference**(8) 38:13 67:21 67:23 68:1 70:6 99:15 164:24 189:4 |
| **proverbial**(1) 200:17 | | | | **reasonably**(2) 66:3 110:21 | | |
| **proves**(2) 76:17 80:3 | | | | **reasons**(9) 24:24 47:21 73:9 77:15 82:8 146:4 183:3 205:5 213:10 | | |
| **provide**(11) 49:11 49:13 49:13 49:13 56:22 59:8 63:2 77:22 108:25 166:14 166:15 222:17 | | | | | | **referenced**(5) 168:25 171:1 177:23 181:20 189:6 |
| | | | | **rebecca**(1) 9:9 | | |
| **provided**(13) 54:7 56:19 56:21 58:8 86:24 104:24 140:23 141:5 175:6 184:5 190:19 194:4 195:5 | | | | **rebuttal**(9) 10:12 17:14 14:15 14:20 14:21 33:19 113:11 113:17 153:19 218:22 219:7 | | **references**(2) 184:4 222:6 |
| | | **question."**(1) 152:23 | | | | **referred**(11) 84:2 104:19 105:7 129:19 132:18 136:23 166:21 175:7 175:23 176:12 178:11 |
| **provides**(6) 20:23 21:3 72:12 184:10 208:4 222:13 | | **questions**(26) 11:7 11:14 11:15 13:7 16:5 16:13 16:19 21:4 34:10 67:8 81:10 93:18 99:4 111:5 128:23 130:7 130:12 131:5 144:24 191:16 195:12 195:21 195:23 200:3 207:7 216:1 | | **recall**(3) 71:11 133:21 169:16 | | |
| | | | | **receipt**(3) 59:1 63:9 64:15 | | |
| **providing**(3) 140:22 157:24 222:6 | | | | **receivable**(1) 108:22 | | **referring**(12) 26:1 36:3 38:16 55:24 117:4 133:12 141:10 148:16 156:17 199:13 201:8 220:19 |
| **proving**(1) 197:20 | | **quick**(2) 68:19 117:13 196:5 | | **receive**(20) 35:16 38:24 41:3 49:14 49:16 57:18 57:20 58:12 58:13 58:21 61:1 61:3 62:10 62:14 62:15 63:13 63:17 86:24 202:12 205:25 | | |
| **provision**(16) 25:18 25:21 32:17 32:24 52:15 61:1 61:7 63:4 63:5 116:8 164:20 180:7 180:25 181:1 182:18 197:12 | | **quickly**(6) 14:20 38:9 94:20 107:3 192:15 222:4 | | | | |
| | | | | | | **refers**(5) 40:24 45:11 62:4 153:14 157:2 |
| | | **quiver**(2) 81:3 100:3 | | **received**(7) 35:17 36:5 58:18 58:19 58:25 61:23 62:4 | | **reflect**(7) 82:11 99:1 132:10 135:8 170:8 188:6 216:9 |
| **provisions**(10) 26:3 37:14 58:24 59:9 61:24 62:5 63:14 88:3 208:3 222:15 | | **quotations**(1) 180:3 | | | | |
| | | **quote**(10) 25:17 96:14 163:11 171:3 171:4 174:4 175:2 175:5 179:9 181:10 | | **receives**(2) 38:21 46:7 | | |
| **proxy**(1) 172:24 | | | | **receiving**(14) 58:16 58:16 58:20 58:23 59:1 59:22 61:22 62:3 62:7 62:8 62:10 62:17 63:15 63:16 | | **reflected**(15) 42:16 55:9 129:17 131:10 136:16 137:22 142:10 145:25 148:24 152:19 152:20 168:6 170:9 172:2 173:24 |
| **public**(2) 106:11 145:25 | | | | | | |
| **published**(2) 188:5 194:8 | | | | | | **reflective**(1) 42:10 |
| **publisher**(1) 110:15 | | **quoted**(4) 50:7 109:22 109:24 175:15 | | | | **reflects**(8) 52:19 53:12 53:14 53:23 64:19 135:16 137:11 137:12 |
| **pull**(3) 54:14 121:16 186:4 | | | | **recess**(10) 68:20 68:22 101:25 102:1 155:12 155:16 155:22 201:5 201:11 201:13 | | |
| **pulled**(1) 72:17 | | **radar**(1) 53:21 | | | | |
| **pulling**(2) 42:11 212:14 | | **raise**(1) 189:5 | | **recite**(1) 110:16 | | **regard**(8) 17:7 20:18 120:20 124:18 144:17 189:15 194:9 219:14 |
| **pulls**(1) 98:14 | | **raised**(1) 20:11 | | **recites**(1) 217:23 | | |
| | | **ran**(1) 80:13 | | **recognition**(1) 188:2 | | |
| **purchase**(38) 90:17 115:12 139:24 139:25 142:25 147:3 147:3 150:22 163:11 163:16 163:18 164:3 164:18 164:21 165:3 165:5 165:5 165:15 169:11 178:15 179:2 179:6 179:6 179:10 179:12 179:17 179:17 179:19 179:22 180:12 180:16 180:22 180:23 181:3 181:16 181:22 184:11 188:23 | | **rank**(1) 81:23 | | **recognize**(10) 121:21 123:7 125:8 134:14 135:6 137:5 137:10 149:1 168:1 168:17 | | **regarding**(3) 18:25 68:9 195:20 |
| | | | | | | **regulation**(2) 205:5 205:8 |
| | | | | **recognized**(6) 57:7 78:17 110:12 144:19 164:16 166:8 | | **regulations**(1) 105:13 |
| | | **rate**(17) 70:18 70:23 70:24 70:25 71:23 72:5 73:25 85:13 86:11 88:1 88:23 90:10 93:4 96:24 97:4 168:8 168:10 | | | | **reiterate**(3) 96:8 101:10 194:1 |
| | | | | **recognizes**(1) 184:23 | | **rejected**(3) 86:8 116:10 116:18 |
| **purchased**(1) 41:20 | | | | **recognizing**(1) 167:1 | | **rejection**(1) 86:5 |
| **purchased."**(1) 188:11 | | | | **reconciliations**(1) 120:3 | | **relate**(15) 21:25 59:14 125:24 126:21 127:9 127:18 128:3 128:4 128:16 165:1 165:6 180:13 187:20 187:21 193:12 |
| **pure**(1) 41:19 | | **rates**(3) 71:3 89:12 97:2 | | **reconciling**(1) 120:22 | | |
| **purer**(2) 206:2 209:19 | | **rath**(2) 2:10 2:11 | | **reconsider**(1) 50:2 | | |
| **purely**(1) 149:7 | | **rather**(6) 6:11 11:24 133:4 139:25 165:4 221:7 223:22 | | **reconsideration**(10) 26:20 27:7 28:9 29:11 30:13 30:23 36:9 36:14 44:1 87:21 | | |
| **purporting**(1) 112:24 | | | | | | **related**(8) 27:18 87:7 98:3 113:22 140:25 141:1 142:9 220:16 |
| **purpose**(18) 15:22 26:4 36:16 36:17 37:25 42:3 42:5 42:9 42:15 54:20 67:24 99:25 100:1 112:12 116:7 151:22 157:24 188:17 | | **rationalize**(1) 11:21 | | **reconvene**(2) 101:23 155:12 | | |
| | | **re-allocation**(1) 25:10 | | **record**(13) 35:9 93:24 94:21 95:14 99:14 99:22 124:7 142:16 159:1 159:10 172:24 197:22 206:5 | | |
| | | **re-visit**(1) 30:7 | | | | **relates**(9) 27:17 34:18 68:25 124:2 124:8 125:4 127:5 129:4 177:1 |
| | | **re-writes**(1) 60:18 | | | | |
| **purposes**(20) 35:11 39:23 56:10 56:20 56:20 79:7 80:25 83:5 94:24 95:2 96:20 100:24 177:16 184:9 184:9 187:1 187:13 196:3 209:12 220:9 | | **reach**(2) 15:3 200:13 | | | | |
| | | **reached**(1) 135:17 | | **recorded**(11) 1:52 132:19 132:21 137:12 139:22 140:4 142:22 145:25 148:9 148:13 170:8 | | **relating**(5) 11:11 68:25 103:3 116:6 142:6 |
| | | **reaction**(1) 64:22 | | | | **relation**(1) 181:22 |
| | | **read**(18) 36:22 42:2 42:8 43:4 46:15 46:16 64:11 64:23 77:5 97:20 115:24 139:9 158:1 174:22 179:15 179:16 187:25 217:9 | | | | **relationship**(3) 36:16 113:20 168:18 |
| **pursing**(1) 51:18 | | | | **recording**(3) 1:52 143:3 224:21 | | **relative**(1) 134:24 |
| **pursuant**(2) 176:15 199:21 | | | | | | **releases**(1) 190:9 |
| **pursuit**(1) 61:5 | | | | | | **relevance**(3) 13:8 15:12 39:20 95:3 114:1 128:10 128:13 133:21 |
| **push**(1) 36:1 | | | | | | |
| **pushed**(1) 186:15 | | **readily**(2) 18:1 104:20 | | | | **relevancy**(1) 114:23 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **relevant**(28) 26:14 78:13 80:7 84:7 92:8 95:10 96:20 102:7 109:2 110:8 110:8 116:19 116:24 124:14 124:18 125:2 128:3 134:1 134:3 146:3 146:3 147:1 148:10 148:10 160:4 183:13 183:14 184:17 | | **resolutions**(1) 215:12 **resolve**(3) 100:22 176:6 176:7 **resolves**(1) 112:2 **resolving**(1) 222:11 **resonate**(1) 47:3 **respect**(8) 11:6 13:8 14:1 15:5 16:15 19:1 27:15 30:4 31:1 33:20 46:8 53:20 61:10 69:25 79:14 95:8 95:11 96:19 100:10 101:4 102:11 104:7 104:14 105:24 106:4 108:4 108:7 117:18 124:11 127:10 127:24 130:14 163:6 167:22 169:7 170:6 177:4 177:5 183:17 193:11 195:21 199:17 207:13 208:20 215:16 217:8 219:1 220:23 221:24 **respectfully**(3) 95:17 150:23 199:22 **respective**(2) 46:19 76:5 **respects**(1) 55:14 **respond**(7) 29:9 68:11 117:12 173:15 196:4 199:11 218:3 | | **right**(107) 12:6 12:23 13:23 14:18 17:9 17:25 18:7 20:25 24:15 27:19 28:2 28:9 29:14 31:18 33:11 35:15 37:6 37:21 37:23 38:2 41:17 43:8 43:9 43:9 45:5 45:12 45:17 47:12 47:12 47:18 47:18 48:23 50:14 50:18 56:18 58:6 58:7 58:8 68:11 69:12 72:13 76:9 77:6 81:5 98:1 104:9 106:13 108:1 109:10 110:10 113:10 123:17 125:3 130:1 130:9 130:15 130:23 135:19 139:5 139:9 142:4 142:14 142:18 143:2 143:6 143:10 143:13 143:16 143:16 143:18 143:23 144:1 144:10 144:16 144:19 145:14 148:22 149:13 151:6 151:9 151:12 153:8 153:23 154:18 155:4 155:15 155:18 156:26 159:2 159:16 159:22 162:14 174:7 185:23 187:12 193:8 193:9 196:19 204:10 209:2 209:22 212:16 217:14 221:21 221:23 224:15 | | **running**(1) 120:11 **runs**(1) 122:4 **sachs**(2) 7:43 7:43 **said**(82) 11:21 21:13 24:24 25:9 26:2 29:2 30:15 33:2 41:25 42:1 44:22 50:21 50:24 51:19 51:22 52:6 53:8 53:13 54:7 57:8 58:5 60:4 61:12 61:13 61:15 64:2 65:16 74:21 79:7 79:8 80:15 84:10 84:12 84:14 91:3 91:20 92:24 94:19 100:25 109:3 113:3 117:22 121:6 148:5 150:6 150:14 167:25 170:1 171:5 179:5 183:2 184:22 189:9 189:13 189:23 190:10 195:15 196:24 201:19 207:24 210:10 211:7 211:18 211:21 212:4 212:4 |
| **reliability**(1) 110:6 **relied**(6) 104:21 110:2 110:3 171:9 174:11 189:8 **relief**(1) 10:16 **relies**(1) 37:6 **reliving**(1) 166:20 **relook**(1) 219:21 **rely**(9) 99:24 110:22 110:24 143:19 154:12 178:17 181:16 192:4 215:6 **relying**(1) 91:15 **remain**(1) 11:1 **remainder**(2) 192:9 196:11 **remaining**(2) 14:7 193:4 | | **responded**(1) 29:9 **responding**(1) 78:1 **response**(22) 13:1 13:2 13:19 15:6 18:4 22:9 35:2 35:3 69:7 69:8 91:14 103:23 117:10 117:11 132:9 148:1 153:22 174:18 182:2 193:18 222:23 222:24 **responsibilities**(1) 148:8 **responsibility**(2) 120:21 150:24 **responsible**(2) 120:21 150:24 **rest**(11) 27:13 47:4 122:3 136:11 153:15 157:12 158:1 177:6 191:17 195:23 218:13 | | **rightness**(1) 204:19 **rights**(14) 28:14 30:21 31:15 45:3 59:16 77:23 94:8 146:14 188:9 191:3 191:3 198:16 199:17 212:11 **ripe**(6) 25:3 210:4 213:15 213:16 214:1 215:25 **ripeness**(2) 213:8 214:21 **rise**(10) 27:2 74:1 86:3 86:4 99:10 102:2 155:17 201:14 205:11 222:14 **rises**(1) 74:4 **risk**(2) 81:2 96:23 **risks**(1) 93:3 | | **sake**(1) 222:20 **salaries**(2) 128:19 174:5 **salary**(2) 167:24 168:1 **sale**(4) 41:13 51:2 51:3 198:18 **sales**(1) 128:21 **sam**(1) 43:5 **same**(28) 23:15 24:10 42:19 44:20 50:12 51:4 71:13 71:15 75:16 75:24 89:17 107:4 110:15 116:19 118:14 134:8 157:21 164:20 164:25 166:3 166:21 166:24 175:1 187:23 190:20 192:13 212:25 217:16 |
| **remedies**(2) 45:3 59:17 **remedy**(5) 37:21 45:5 45:12 45:13 45:17 **remember**(2) 79:24 222:13 **remind**(1) 199:3 **remotely**(3) 43:20 197:1 203:5 **removed**(1) 48:25 **render**(3) 91:6 197:2 215:12 **rendered**(1) 107:10 146:19 146:25 150:8 151:17 154:6 163:23 164:1 164:4 178:15 184:12 **renders**(1) 190:25 **reorganization**(4) 46:13 205:10 205:22 214:10 | | **restrain**(1) 38:9 **restrained**(1) 37:2 **restriction**(1) 63:17 **restricts**(1) 37:8 **restroom**(1) 68:19 **restructuring**(2) 119:19 119:20 **result**(3) 120:15 121:1 160:6 **results**(3) 51:4 75:24 216:12 **retain**(3) 24:10 202:12 205:25 **retained**(2) 119:21 119:25 **retention**(3) 120:8 120:8 120:11 **retired**(1) 182:3 | | **road**(4) 158:14 158:25 200:17 205:21 **robert**(6) 3:29 28:3 93:21 191:11 198:5 212:21 **robust**(1) 204:21 **rock-solid**(1) 75:20 **rockefeller**(1) 2:22 **rodney**(2) 2:44 3:15 **rogers**(1) 6:15 **roitman**(1) 2:19 **role**(2) 120:10 216:7 **rome**(1) 4:37 **ronald**(1) 1:27 **rose**(1) 7:49 **rosenblatt**(1) 2:20 | | **sandler**(1) 8:32 **sat**(2) 53:8 189:18 **satisfied**(1) 206:2 **satisfy**(1) 49:21 **savings**(1) 105:10 **saw**(4) 13:10 82:3 91:23 161:5 **say**(86) 13:15 24:9 24:14 25:5 29:1 29:16 31:17 36:8 40:9 42:18 43:2 45:6 53:18 54:4 54:19 57:13 57:18 57:19 60:6 60:14 61:15 61:21 62:6 63:24 64:12 64:14 67:1 75:23 82:22 84:7 86:1 86:7 87:5 88:19 92:23 94:17 95:6 101:22 110:17 115:10 118:16 126:3 142:2 144:13 146:5 147:11 152:23 158:20 162:9 164:3 168:23 171:1 173:23 174:6 178:6 179:6 180:5 180:22 180:23 181:2 181:20 181:21 181:21 182:2 187:1 188:24 190:5 191:2 197:5 197:10 199:8 199:19 201:23 205:19 206:12 206:12 207:11 207:12 208:18 209:8 215:8 220:5 221:8 222:15 223:3 |
| **repay**(2) 60:1 168:4 **repayment**(3) 168:8 168:13 182:8 **repeat**(3) 24:25 132:14 162:23 **repeated**(1) 162:9 **replacement**(1) 74:9 **reply**(25) 16:2 20:9 76:14 105:10 105:22 106:11 106:16 108:18 109:15 110:14 166:3 166:8 166:9 166:25 170:25 173:13 173:16 174:23 176:9 180:1 180:4 184:4 206:19 **report**(5) 65:12 67:22 67:24 219:5 219:7 **reported**(3) 126:7 126:11 172:15 **reporting**(2) 94:25 171:13 **reports**(4) 121:11 218:21 218:23 219:2 **report's**(1) 219:6 **represent**(2) 131:6 214:19 **representation**(1) 110:21 **representative**(3) 66:24 67:2 96:2 **represented**(11) 73:3 73:15 76:21 77:15 79:19 85:23 135:10 137:17 141:13 176:9 176:23 **represents**(5) 73:10 73:14 136:6 136:7 156:15 **request**(6) 17:1 20:5 43:19 68:18 212:17 218:2 **requested**(1) 122:11 **requests**(3) 217:24 217:24 218:4 **require**(2) 60:19 75:4 **required**(12) 39:24 71:5 72:4 73:24 75:19 75:21 85:12 148:8 173:1 188:11 189:19 189:21 **requirement**(4) 50:6 61:8 64:24 78:4 **requires**(3) 60:10 75:8 90:24 **research**(1) 188:4 **resembles**(1) 64:3 **resembling**(2) 64:6 198:19 **reserve**(3) 20:7 68:8 68:11 **reserved**(2) 49:4 66:16 **reserving**(1) 146:14 **resides**(2) 135:12 140:3 **residual**(1) 105:19 **resolution**(1) 206:13 | | **retiree**(18) 15:1 15:9 47:25 101:20 102:6 103:4 103:5 103:10 124:15 128:4 134:15 135:10 142:7 154:22 156:16 170:19 176:11 177:6 **retirees**(53) 4:18 11:11 13:18 15:20 17:19 17:23 47:1 47:3 47:6 47:9 58:4 99:5 104:13 106:6 112:16 113:21 115:9 130:15 131:6 133:21 134:2 134:4 134:6 134:9 136:4 136:12 139:20 145:12 145:16 155:21 160:23 161:5 163:6 164:13 170:1 175:11 176:8 177:17 178:7 178:7 178:20 179:5 180:9 183:1 183:16 184:22 188:21 189:7 189:18 189:23 191:25 198:23 198:24 **retiree's**(1) 165:9 **retirement**(4) 47:11 129:1 176:12 176:22 **return**(2) 71:1 72:2 **revenue**(3) 106:1 106:2 106:3 **review**(1) 30:12 **reviewing**(1) 134:21 **revised**(1) 12:22 **rewrite**(1) 214:15 **rewriting**(1) 220:19 **richard**(2) 7:49 7:50 **richards**(1) 2:42 **rifkind**(1) 7:29 | | **roughly**(2) 70:15 172:3 **roulac**(1) 8:45 **royal**(2) 6:9 6:14 **rudnick**(8) 3:27 28:4 68:6 93:22 114:20 191:12 198:6 212:22 **rule**(31) 14:20 25:21 30:11 36:13 38:7 40:6 50:12 53:25 58:10 65:6 65:16 105:6 105:18 110:1 110:20 155:8 162:2 174:19 189:19 189:20 204:14 207:14 207:21 207:25 210:23 210:23 211:16 211:25 216:10 216:10 216:22 **ruled**(3) 25:21 96:18 213:23 **rules**(9) 14:9 14:13 47:22 49:8 51:8 52:20 104:18 105:13 181:17 **ruling**(5) 26:8 26:15 37:3 50:5 93:15 **rulings**(1) 116:24 **ruminated**(1) 13:11 **run**(3) 155:11 162:1 196:11 | | **saying**(18) 17:2 17:3 29:10 42:11 47:12 50:8 57:10 60:15 88:15 89:10 92:21 101:12 151:16 153:12 197:9 200:4 202:5 202:21 **says**(40) 20:6 37:12 46:6 52:2 52:11 52:15 54:19 55:22 56:12 56:16 56:23 57:3 57:4 57:15 58:5 58:7 58:8 58:21 59:12 59:16 61:16 61:20 61:23 62:2 62:24 63:4 63:5 65:10 84:5 90:9 94:24 97:6 105:14 109:6 115:12 115:25 126:16 135:22 144:18 152:18 153:3 169:14 174:7 178:13 178:14 179:18 179:20 179:21 180:15 181:7 181:21 183:16 188:2 199:15 200:3 204:1 208:19 208:20 212:3 212:4 212:6 214:25 220:17 **scale**(1) 193:3 **scant**(1) 95:13 **scenario**(1) 172:3 **scenarios**(1) 80:13 **schedule**(12) 34:15 135:3 135:6 135:8 135:9 138:5 174:15 176:13 195:6 195:6 196:24 217:16 **schedules**(2) 120:3 121:9 **scheduling**(5) 18:13 173:15 194:8 217:7 221:25 **schematic**(1) 23:12 **scholer**(1) 7:21 **schott**(1) 8:49 **schotz**(1) 1:37 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| schulte(1) 5:17 | | senior(134) 16:24 16:25 22:17 22:18 22:24 | | shadows(1) 199:11 | | significantly(1) 102:12 | |

**schulte**(1) 5:17
**schuylkill**(1) 1:47
**scope**(15) 27:24 51:2 51:3 51:6 53:14 55:16 56:15 57:2 57:25 59:9 60:11 60:12 64:12 64:15 133:19

**scorpion**(1) 198:4
**scotland**(2) 6:10 6:14
**scott**(2) 7:44 8:15
**scottish**(1) 105:9
**scramble**(1) 33:19
**scrambled**(2) 31:4 31:10
**screen**(3) 35:20 51:25 55:12
**seaport**(2) 6:4 6:4
**search**(2) 98:10 108:24
**seated**(3) 102:2 155:17 201:14
**sec**(6) 15:5 103:7 105:12 105:13 105:14 105:16

**second**(25) 12:2 16:8 20:4 23:19 67:21 72:18 73:13 82:17 85:6 89:25 91:1 107:11 122:4 125:12 130:24 139:3 139:13 157:22 163:16 175:9 176:1 195:6 200:3 206:9 223:5
**secondary**(1) 29:3
**secondly**(2) 77:11 223:14
**section**(57) 25:18 25:23 26:1 26:5 39:25 44:13 44:25 45:1 45:6 45:10 45:18 46:3 46:4 46:5 46:6 46:7 46:15 46:15 46:16 58:4 58:4 58:15 58:17 71:6 72:12 72:15 72:25 106:13 115:11 123:16 125:14 127:7 127:20 128:7 128:9 129:22 133:6 133:11 133:13 138:15 138:18 138:18 141:7 170:20 171:20 197:13 197:13 198:20 199:13 199:21 200:7 203:20 204:15 207:17 217:22 218:13 220:15 220:17

**sections**(5) 44:25 105:22 183:13 183:14 198:14

**secured**(3) 71:23 72:1 90:3
**securities**(6) 8:18 8:18 8:44 8:44 9:11 9:11
**see**(47) 30:25 37:7 39:16 42:12 45:2 48:24 58:17 71:18 85:22 89:18 89:19 91:21 91:24 109:22 109:22 112:14 113:4 122:24 124:22 126:18 129:13 129:15 132:25 135:3 135:22 136:1 136:25 137:19 150:9 151:3 152:3 152:4 152:19 153:16 157:15 182:11 183:4 183:15 184:18 184:19 194:21 196:25 215:2 215:4 215:9 215:22 217:21

**seeing**(2) 28:24 33:19
**seek**(3) 10:10 37:2 47:8
**seeking**(8) 20:12 37:2 83:13 83:14 83:19 184:10 218:9 222:14

**seeks**(2) 47:7 199:5
**seem**(5) 47:12 98:16 117:18 146:15 162:6
**seemed**(1) 101:11
**seems**(8) 14:11 21:16 105:23 113:2 118:13 118:22 150:12 198:19

**seen**(4) 48:2 51:24 66:20 204:7
**segment**(1) 172:21
**seife**(1) 5:7
**seigel**(4) 114:20 115:4 115:6 115:8
**selber**(1) 3:6
**select**(1) 157:25
**selection**(1) 219:24
**selections**(1) 220:10
**sell**(1) 57:8
**selling**(1) 50:22
**semantically**(1) 198:14

**senior**(134) 16:24 16:25 22:17 22:18 22:24 23:6 23:8 23:9 23:10 23:15 25:5 26:6 26:7 32:14 35:15 36:5 37:9 37:20 38:2 38:2 44:17 46:9 49:21 52:17 52:25 53:17 53:18 55:2 56:18 57:1 63:6 63:10 69:20 69:20 70:4 72:11 72:14 72:16 72:21 73:9 74:23 74:25 77:1 77:9 78:20 78:25 79:4 80:12 80:25 81:8 81:15 81:16 81:21 82:4 82:25 83:13 83:20 84:21 84:22 85:2 85:8 87:10 88:5 88:8 89:17 91:7 91:19 93:10 93:11 93:14 97:21 99:20 100:23 177:17 177:18 177:20 178:8 178:12 178:22 183:4 183:25 186:4 189:16 189:24 190:3 190:4 190:18 190:20 191:3 191:6 191:7 191:25 192:6 194:24 194:24 195:16 195:16 196:21 197:2 197:7 197:10 197:15 197:19 199:9 199:18 199:25 200:6 201:24 202:1 202:10 202:21 202:23 202:23 203:7 203:8 203:13 203:16 203:17 203:25 204:5 204:6 205:25 208:4 208:20 212:5 212:7 212:9 212:18

**seniority**(4) 69:23 69:24 70:5 77:13
**seniors**(12) 53:4 57:15 57:16 58:22 59:13 61:21 61:25 63:23 64:1 65:5 210:1 210:3

**sense**(17) 18:16 32:12 42:4 44:21 51:9 51:11 60:4 60:8 70:7 70:11 78:19 162:21 165:3 195:14 198:13 199:24 205:17

**sensible**(2) 25:25 205:21
**separate**(13) 39:18 79:9 86:17 88:7 91:17 121:24 133:9 149:8 177:21 178:3 179:16 190:3 197:8

**separating**(1) 197:8
**separation**(1) 10:10
**september**(2) 125:5 125:10
**series**(1) 95:20
**serve**(2) 75:21 76:11
**service**(4) 1:46 1:53 98:14 106:2
**services**(48) 1:46 107:10 115:13 115:13 146:19 146:25 147:4 147:4 147:9 150:7 151:17 163:17 163:23 164:1 164:4 164:24 165:1 165:7 165:8 165:11 165:15 166:13 166:14 166:15 167:4 167:12 169:10 169:11 178:15 179:2 179:11 179:19 179:17 179:19 179:23 180:8 180:13 180:23 181:2 181:4 181:15 181:24 184:4 184:6 184:7 184:11 188:23 198:18

**services"**(1) 164:19
**session**(1) 224:16
**set**(21) 59:20 69:13 77:23 80:16 86:13 106:2 106:3 106:10 122:12 122:25 124:11 128:23 129:17 137:15 137:25 158:1 162:23 169:3 182:6 199:17 205:3

**sets**(4) 74:17 128:25 163:20 208:2
**setting**(2) 77:11 178:11
**settled**(2) 50:21 138:6
**settlement**(36) 19:1 20:8 25:6 26:9 27:9 28:12 36:6 41:6 46:19 49:17 93:13 103:10 134:15 135:1 135:18 137:5 138:25 140:9 156:16 157:8 157:12 157:16 168:10 169:5 176:12 176:22 189:9 189:10 189:11 189:14 190:6 190:7 190:8 190:19 191:2

**settlements**(4) 43:7 43:16 43:23 124:21
**seven**(11) 22:20 128:6 128:14 133:18 135:4 142:10 142:12 164:13 200:18 201:18
**seven-page**(1) 126:15
**seventh**(1) 107:1
**several**(4) 91:4 92:1 163:7 211:11

**shadows**(1) 199:11
**shall**(6) 56:24 64:2 109:7 199:16 199:20 200:3

**shannon**(1) 7:31
**shape**(2) 162:2 172:19
**share**(4) 43:7 43:16 49:19 161:5
**shareholders**(3) 32:5 172:25 198:25
**shares**(1) 182:25
**she**(29) 30:5 30:6 30:8 140:22 140:25 145:21 145:22 146:8 146:23 146:23 147:6 147:9 147:10 147:14 147:15 147:17 147:18 148:5 148:8 149:3 149:15 150:25 151:24 152:11 152:14 152:18 152:23 152:24 153:3

**she's**(4) 112:24 113:13 113:14 113:15
**sheet**(25) 123:2 123:13 123:13 123:16 125:15 126:11 126:24 127:2 127:17 129:11 140:2 143:5 143:13 149:21 152:21 153:4 160:13 161:8 171:11 171:12 171:16 186:2 188:10 188:14 195:1

**sheet."**(1) 153:12
**sheets**(3) 85:20 123:4 138:14
**sheffield**(1) 9:5
**shelley**(1) 224:25
**sheron**(5) 4:7 13:24 111:9 141:22 151:10
**she'd**(1) 150:12
**she's**(11) 147:21 147:24 147:24 148:6 149:3 149:4 149:11 152:12 152:24 152:25 159:5
**shifting**(1) 91:22
**shoes**(1) 148:18
**short**(5) 82:12 160:15 177:3 193:25 222:6
**short-term**(6) 78:12 93:7 126:8 142:12 173:20 186:25

**shortage**(1) 202:7
**shorten**(1) 14:12
**shortly**(1) 194:8
**should**(51) 20:1 21:17 21:23 22:5 23:16 23:17 25:22 36:12 47:23 48:6 51:4 51:7 54:4 54:19 58:10 60:3 62:19 64:23 66:22 67:5 68:2 70:6 70:8 79:3 100:22 104:21 113:10 115:23 135:1 144:13 144:15 160:4 160:7 176:7 179:3 179:13 183:7 185:16 188:8 188:14 194:6 201:21 201:23 201:25 205:9 211:24 213:23 216:11 216:22 218:12 223:22

**shouldn't**(1) 109:13
**shouldn't**(4) 24:23 44:2 47:19 48:5
**should've**(1) 212:24
**show**(8) 35:20 35:21 36:2 132:5 151:23 152:14 215:11 220:11

**showed**(3) 17:7 132:5 148:23
**showing**(2) 62:9 97:13
**showman**(1) 14:17
**shown**(4) 142:3 171:15 188:14 195:15
**shows**(6) 78:10 80:4 149:21 149:23 176:13 181:11

**shy**(1) 160:20
**sick**(1) 128:20
**side**(7) 92:22 93:6 114:9 140:12 187:4 187:5 213:1

**sides**(2) 100:13 118:6
**side's**(1) 151:4
**sidley**(2) 1:21 5:28
**siegel**(4) 3:28 68:5 68:5 114:20
**sign**(2) 221:21 222:1
**signatories**(1) 83:21
**signature**(1) 18:19
**signed**(1) 221:2
**significance**(1) 72:2
**significant**(2) 172:17 172:18

**significantly**(1) 102:12
**silent**(1) 208:7
**silly**(1) 40:1
**silver**(2) 8:10 8:10
**silverstein**(1) 3:6
**similar**(12) 15:4 73:4 73:16 77:16 77:25 79:19 85:23 110:4 137:16 157:19 158:2 170:16

**similarities**(1) 29:24
**similarly**(6) 37:16 50:9 90:2 109:12 109:17 147:22

**simple**(7) 22:23 23:12 23:13 44:1 64:10 186:3 208:23

**simply**(20) 45:9 53:21 59:8 61:20 80:24 82:23 85:15 92:13 100:4 162:11 171:24 173:7 176:13 176:18 189:23 194:12 214:15 217:18 222:20 224:4

**since**(12) 17:25 33:18 48:24 120:12 120:13 120:13 130:4 181:11 183:2 184:13 187:22 213:1

**single**(1) 74:13
**sink**(1) 111:15
**sir**(4) 132:12 145:8 155:20 155:38
**sit**(2) 21:15 26:22
**situation**(5) 30:18 33:1 47:5 209:6 218:25
**situations**(1) 54:8
**six**(17) 38:18 38:20 44:25 46:5 46:15 58:15 58:17 59:11 61:6 127:7 135:4 138:5 138:5 176:20 176:21 200:18

**skipping**(2) 124:24 124:25
**skirt**(1) 37:17
**slater**(1) 5:47
**sleet**(5) 28:20 29:5 29:12 29:19 30:12
**slept**(1) 30:20
**slide**(7) 37:6 46:5 71:16 72:18 72:25 88:18 202:15

**slides**(2) 85:7 181:10
**slightly**(2) 33:16 110:16
**sloan**(1) 2:43
**small**(2) 157:13 172:21
**smalley**(1) 6:5
**smoothly**(1) 145:18
**snippets**(1) 109:24
**soac**(1) 157:9
**sold**(1) 63:17
**sole**(1) 63:17

**solvency**(4) 208:24 209:5 212:13 214:7
**some**(78) 10:24 11:2 11:4 11:17 12:5 12:12 13:7 13:14 16:3 17:5 17:23 18:14 18:18 19:4 19:21 31:5 37:4 44:9 45:25 47:8 47:13 47:13 50:4 51:10 51:24 52:15 55:7 64:25 66:1 67:1 67:3 67:3 71:17 81:2 94:1 94:20 94:23 95:5 98:6 102:9 108:13 114:23 115:17 115:22 118:7 118:8 121:12 137:24 138:1 140:23 140:25 141:2 141:4 141:5 141:6 143:15 149:18 156:26 158:5 161:18 162:6 165:25 166:20 172:10 172:21 177:23 178:4 180:13 186:2 187:18 189:7 194:20 195:4 214:16 220:22 221:16 223:6 224:5

**somebody**(14) 12:13 22:3 30:20 41:14 60:4 60:9 61:11 91:18 136:10 152:10 180:6 185:1 200:5 218:10

**somehow**(4) 43:6 43:22 60:16 99:2
**someone**(3) 131:1 201:6 222:8
**something**(33) 14:22 35:19 41:17 47:19 65:19 66:14 67:15 74:8 75:9 76:12 76:23 78:23 84:25 85:2 93:10 98:24 101:12 106:23 106:24 108:2 112:4 140:7 142:20 149:21 149:22 158:7 186:14 190:25 211:3 211:4 216:16 220:12 221:17

**sometime**(1) 120:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| sometimes(3) 43:1 84:13 118:20 | | standpoint(1) 134:20 | | stretch(1) 60:20 | | substituted(1) 78:23 | |
| somewhat(3) 97:12 99:14 212:2 | | stands(4) 45:23 66:24 143:25 148:18 | | strictly(4) 49:9 54:4 54:7 216:8 | | substituting(1) 162:19 | |
| song(1) 9:9 | | stargatt(1) 3:13 | | strip(1) 219:24 | | successor(5) 39:23 40:11 42:1 62:25 | |
| sophisticated(1) 80:22 | | stark(39) 3:29 19:6 19:13 19:17 20:1 | | strong(1) 67:16 | | successors(5) 63:1 63:3 63:5 63:6 63:7 | |
| sorry(17) 17:11 23:8 28:18 48:21 103:13 | | 20:14 20:20 20:24 21:11 21:15 23:23 28:3 | | structure(7) 42:6 43:13 51:15 51:18 52:24 | | such(17) 48:3 64:24 67:24 128:19 129:8 | |
| 115:14 126:9 139:1 139:10 140:8 140:9 | | 28:4 28:17 28:18 28:20 28:23 29:20 30:2 | | 53:20 214:20 | | 137:25 163:17 167:16 174:5 179:21 180:16 | |
| 149:22 152:6 159:19 160:15 183:6 184:5 | | 30:3 31:19 31:22 34:12 93:21 93:21 99:5 | | | | 180:16 181:3 183:17 197:16 209:21 214:3 | |
| | | 99:6 191:11 191:12 191:19 198:3 198:5 | | structuring(1) 36:15 | | | |
| sort(15) 18:13 29:7 43:4 85:21 95:23 | | 198:10 200:10 202:4 212:21 212:21 213:18 | | stuart(1) 8:29 | | sue(1) 37:22 | |
| 103:16 110:10 135:21 158:14 162:20 163:9 | | 213:21 | | stuff(5) 23:4 118:13 153:10 153:11 153:13 | | suffice(1) 29:25 | |
| 165:13 169:24 199:23 224:6 | | start(10) 18:2 18:21 28:8 33:7 44:13 | | stuff,"(1) 153:3 | | sufficient(2) 77:19 206:15 | |
| | | 55:11 70:14 72:12 81:13 85:9 | | stumbling(1) 145:19 | | sufficiently(1) 87:7 | |
| sorts(1) 98:8 | | | | sub(5) 23:14 163:13 165:19 179:4 203:1 | | suggest(6) 43:25 54:17 60:7 80:21 101:12 | |
| sottile(1) 2:27 | | started(3) 13:5 30:22 67:19 | | subcategory(1) 168:20 | | 215:13 | |
| sought(1) 204:20 | | starting(4) 124:19 217:21 218:15 220:23 | | subject(21) 14:8 22:2 25:11 27:8 34:6 | | | |
| sound(2) 1:52 224:21 | | starts(5) 37:10 122:2 122:4 135:9 223:11 | | 43:3 47:14 65:15 68:11 72:13 73:24 79:12 | | suggested(7) 14:2 14:5 43:24 66:20 67:6 | |
| sounds(2) 144:20 193:7 | | state(17) 32:23 38:14 38:16 50:13 50:17 | | 100:20 113:9 113:10 114:14 116:7 185:6 | | 146:3 206:6 | |
| source(8) 25:5 32:9 35:14 35:17 38:24 | | 65:16 94:6 94:7 94:8 128:21 161:20 190:4 | | 189:21 192:2 194:20 | | | |
| 39:8 157:2 171:9 | | 207:19 207:22 211:1 211:1 211:2 | | | | suggesting(4) 53:7 53:11 80:20 110:20 | |
| | | | | subjects(1) 120:5 | | suggestion(8) 19:18 51:10 58:10 65:1 66:21 | |
| sources(7) 36:4 39:9 47:13 53:17 109:9 | | stated(4) 94:14 147:22 188:5 216:19 | | submission(2) 24:9 220:22 | | 196:6 204:8 223:21 | |
| 149:20 163:4 | | statement(16) 11:25 101:10 109:6 110:23 | | submit(30) 12:14 46:15 54:13 56:9 70:2 | | | |
| | | 138:12 143:4 143:22 149:23 152:20 168:24 | | 73:21 74:19 75:21 76:10 76:17 77:7 78:18 | | suggestions(1) 192:10 | |
| south(2) 1:23 3:23 | | 171:12 174:23 186:1 187:24 220:2 222:6 | | 80:3 81:4 105:18 106:9 110:11 112:9 | | suggests(5) 43:21 60:5 167:16 214:16 | |
| southeast(5) 207:16 207:23 209:25 210:15 | | | | 117:3 168:14 169:3 170:23 170:24 171:23 | | 215:10 | |
| 210:21 | | statements(16) 79:15 79:15 81:17 82:11 | | 172:5 180:21 208:7 208:13 209:2 219:4 | | | |
| | | 98:13 106:3 120:2 121:8 141:10 141:13 | | | | suing(1) 32:4 | |
| southern(3) 32:2 105:10 166:23 | | 145:25 170:7 172:24 174:24 188:6 223:8 | | submitted(7) 16:3 17:4 162:16 171:6 | | suit(2) 32:17 38:6 | |
| spaeder(2) 2:26 5:11 | | | | 172:8 187:17 187:18 | | suite(4) 1:40 2:13 2:29 4:40 | |
| speak(12) 12:2 13:14 22:4 23:23 26:18 | | states(6) 1:1 1:18 98:11 121:11 163:25 | | | | suits(1) 32:17 | |
| 26:22 55:2 64:24 67:15 175:17 195:18 | | 211:11 | | submitting(1) 153:14 | | sullivan(2) 2:4 2:5 | |
| 196:16 | | | | subordinate(14) 23:6 39:7 39:19 53:23 | | sum(6) 66:23 164:6 164:11 | |
| speaking(2) 22:15 212:2 | | stating(1) 19:22 | | 54:21 56:17 57:3 57:4 57:10 57:11 64:18 | | summarily(1) 170:4 | |
| speaks(6) 38:15 55:20 63:1 96:6 175:15 | | statistics(1) 141:5 | | 66:5 72:11 202:24 | | summarize(2) 142:1 198:14 | |
| 203:5 | | status(8) 83:13 118:9 141:6 178:12 178:22 | | | | summary(1) 195:1 | |
| | | 193:10 196:21 197:19 | | subordinated(63) 18:25 22:25 23:5 23:9 | | superfluous(1) 76:24 | |
| special(2) 6:46 75:9 | | | | 23:11 25:4 26:6 35:17 36:25 37:15 40:18 | | supervising(1) 120:11 | |
| specific(9) 38:13 109:6 109:8 116:8 140:24 | | statute(1) 56:3 | | 41:8 41:24 42:7 43:12 43:15 44:16 45:4 | | supplement(3) 94:1 98:25 188:1 | |
| 177:2 206:11 210:23 215:17 | | stay(4) 20:13 20:13 30:4 31:23 | | 45:8 46:8 49:23 51:20 51:23 52:3 52:16 | | supplemental(6) 124:25 157:10 157:23 | |
| | | stays(2) 23:15 31:6 | | 55:12 55:16 55:17 55:20 56:5 56:6 56:9 | | 221:24 221:25 223:10 | |
| specifically(31) 25:9 25:14 27:15 27:18 | | ste(2) 2:6 3:23 | | 56:17 56:20 56:23 56:24 57:17 57:22 59:4 | | | |
| 37:21 38:15 45:14 49:25 51:22 57:4 64:8 | | steege(1) 6:26 | | 59:17 59:19 59:21 59:24 60:13 60:18 | | suppliers(1) 184:7 | |
| 71:5 73:24 73:24 75:14 75:19 81:20 94:24 | | steen(1) 5:34 | | 62:15 63:11 63:18 64:3 64:14 65:9 65:9 | | support(4) 27:14 82:6 102:18 189:23 | |
| 95:10 106:21 107:10 107:16 109:5 114:2 | | stein(1) 4:6 | | 65:10 65:19 65:20 65:21 81:24 197:9 | | suppose(1) 118:16 | |
| 114:4 120:10 148:3 171:4 173:23 183:9 | | step(6) 84:13 85:6 90:25 91:1 145:8 | | 203:7 203:15 204:6 214:24 216:11 | | supposed(6) 68:10 198:15 211:11 215:14 | |
| 183:11 | | stephen(1) 3:5 | | | | 215:15 215:18 | |
| spell(3) 65:8 216:18 216:18 | | stepping(1) 78:18 | | subordinated."(1) 52:14 | | | |
| spelled(1) 216:14 | | still(6) 33:3 79:15 89:6 146:15 176:19 | | subordinating(3) 50:25 60:10 63:13 | | supremacy(1) 211:10 | |
| spells(1) 216:17 | | 213:23 | | subordination(107) 16:25 22:23 25:11 | | supreme(1) 205:2 | |
| spend(5) 29:23 69:21 109:20 156:3 161:1 | | | | 25:17 25:20 26:3 26:16 27:8 35:12 36:3 | | sure(19) 10:26 16:1 16:12 19:24 28:23 | |
| spends(1) 214:2 | | stipulate(4) 146:4 150:4 183:17 183:21 | | 36:12 36:23 37:4 37:5 37:25 38:8 38:12 | | 68:10 80:18 110:8 130:3 132:9 133:18 | |
| spent(3) 147:14 170:3 180:19 | | stipulated(7) 15:21 151:23 174:25 183:6 | | 38:22 38:23 39:20 39:24 40:2 40:20 42:1 | | 143:23 153:24 186:5 195:8 195:9 195:17 | |
| sperling(1) 5:47 | | 184:14 186:10 213:12 | | 42:17 42:19 43:4 43:22 44:8 44:14 44:15 | | 198:5 205:19 | |
| spin(1) 23:11 | | | | 44:21 44:23 44:24 49:4 49:9 49:12 49:13 | | | |
| spin-up(1) 36:5 | | stipulating(1) 48:12 | | 49:15 49:18 49:19 51:2 51:3 51:8 51:11 | | surprised(1) 216:11 | |
| spinoff(1) 106:20 | | stipulation(12) 67:22 102:24 146:20 | | 52:8 52:9 52:12 52:21 53:25 54:2 54:4 | | surrounding(1) 116:2 | |
| spins(2) 23:9 23:14 | | 174:22 175:9 175:9 181:6 181:7 183:7 | | 54:6 54:11 54:12 56:15 57:2 57:6 57:25 | | survivorship(1) 136:10 | |
| spoke(5) 25:8 64:20 73:24 216:18 216:20 | | 183:9 185:12 215:23 | | 59:9 59:10 60:11 61:10 64:12 65:2 65:3 | | susan(1) 13:21 | |
| spoken(3) 16:12 26:17 213:1 | | | | 65:7 65:15 65:24 66:5 66:13 66:16 67:4 | | suspect(1) 191:13 | |
| sponsor(2) 42:7 43:10 | | stock(1) 124:23 | | 69:21 69:24 81:11 81:20 83:1 84:15 87:11 | | sustain(1) 117:25 | |
| sponsored(2) 125:1 128:15 | | stockholder(2) 214:24 215:6 | | 94:10 100:21 105:2 149:10 160:5 160:8 | | sustained(1) 178:8 | |
| spousal(1) 136:9 | | stockholders(1) 215:1 | | 179:1 188:18 192:1 193:10 197:11 197:18 | | suttonbrook(2) 6:18 6:19 | |
| spun(2) 93:12 93:14 | | stone(1) 6:30 | | 198:16 198:17 200:14 202:20 202:22 | | swap(90) 23:2 68:25 69:19 70:1 70:3 | |
| square(3) 2:44 3:15 3:32 | | stood(1) 162:4 | | 206:24 207:20 208:4 208:12 208:15 209:7 | | 70:14 70:17 71:1 71:10 71:12 71:23 71:25 | |
| squarely(1) 46:3 | | stop(3) 33:4 57:1 73:6 | | 211:18 216:5 216:8 216:19 | | 73:6 73:8 73:14 73:20 73:22 74:1 74:5 | |
| squawk(1) 201:6 | | stopped(1) 61:13 | | | | 74:12 74:15 75:2 75:4 75:9 75:14 | |
| stab(1) 199:10 | | storm(3) 66:20 67:17 67:19 | | subparagraphs(1) 72:20 | | 75:22 76:5 76:10 76:12 77:7 77:12 77:13 | |
| stack(1) 87:23 | | story(2) 81:18 208:23 | | subpart(2) 182:14 182:14 | | 77:22 78:2 78:9 78:11 78:15 78:15 79:4 | |
| stage(1) 204:20 | | straight(1) 181:24 | | subparts(2) 73:1 158:22 | | 79:5 79:10 79:10 79:12 79:16 79:18 79:21 | |
| stake(1) 43:11 | | straighten(1) 99:14 | | subset(1) 173:7 | | 79:24 79:25 80:12 80:24 81:8 81:15 81:16 | |
| stand(13) 62:12 62:14 62:15 101:25 119:5 | | straightforward(5) 22:24 46:17 72:15 | | subsidiaries(5) 71:9 71:11 71:14 72:7 | | 81:24 82:1 82:4 82:9 82:11 82:14 82:17 | |
| 145:20 176:1 177:7 201:11 204:23 210:4 | | 178:21 207:18 | | 135:13 | | 82:23 84:12 85:12 85:17 86:15 86:18 87:6 | |
| 221:19 224:16 | | | | | | 87:14 87:25 88:1 93:10 93:17 94:25 95:23 | |
| | | strauss(5) 2:34 67:13 99:8 201:16 222:1 | | subsidiary(2) 53:2 80:2 | | 96:3 96:10 96:16 96:21 97:4 97:6 97:15 | |
| standard(2) 30:10 221:18 | | streamline(3) 21:17 28:6 145:17 | | substance(1) 21:22 | | 98:18 99:2 99:20 100:23 101:3 101:19 | |
| standards(6) 105:7 105:11 144:4 144:7 | | streamlined(1) 217:18 | | substantial(2) 33:14 190:7 | | 182:4 191:8 | |
| 152:22 187:24 | | street(13) 1:10 1:28 1:33 1:47 2:6 2:13 | | substantive(9) 27:3 31:3 31:13 34:8 67:24 | | | |
| | | 2:28 2:45 3:8 3:16 3:39 4:33 4:39 | | 213:11 213:25 216:14 222:16 | | swaps(7) 70:18 70:22 71:13 71:21 72:6 | |
| standing(3) 79:8 108:15 210:8 | | | | | | 73:25 75:17 | |
| | | | | substitute(5) 74:6 75:6 79:21 90:10 90:21 | | | |

| Word | Page:Line |
| --- | --- |

swap's(1) 69:22
swear(1) 210:5
switch(2) 185:22 196:12
switching(2) 179:1 196:17
sworn(1) 119:8
syndicate(3) 98:13 98:14 98:15
synonymous(1) 66:25
system(2) 122:11 122:22
tab(2) 121:18 157:21
table(3) 53:8 107:4 140:12
taft(1) 6:10
take(56) 14:21 16:20 17:23 19:9 29:10 37:24 38:18 43:11 57:17 57:20 58:11 61:20 62:1 67:16 68:15 68:19 68:20 72:3 83:19 92:17 97:12 101:9 101:11 101:21 101:22 105:5 112:18 114:14 120:7 121:16 121:21 123:5 123:15 125:4 125:7 125:11 127:23 155:6 156:19 157:20 164:2 167:13 170:25 195:2 196:8 196:10 200:2 200:22 201:1 201:5 210:4 214:4 217:13 217:20 219:19 220:4
take-away(1) 72:19
taken(16) 11:25 30:8 30:24 45:14 55:6 55:7 60:25 64:12 64:14 80:8 101:14 101:16 112:8 165:2 173:11 219:25
takes(4) 169:8 176:17 181:24 186:6
taking(14) 19:3 37:8 38:13 38:23 45:2 61:22 89:19 91:18 116:21 160:9 162:19 176:5 194:1 220:10
talk(12) 15:15 80:5 114:4 143:2 180:1 192:8 198:14 200:22 210:12 218:2 219:3 223:4
talked(8) 11:4 18:15 19:6 19:13 20:14 41:10 81:19 156:20
talking(12) 90:16 90:18 91:5 94:6 110:10 115:2 130:20 142:6 170:18 180:19 187:19 192:14
talks(2) 204:13 205:5
tamp(1) 94:4
target(1) 43:18
tax(3) 23:3 152:5 198:25
taxes(10) 75:25 76:6 89:12 89:13 92:24 98:19 128:21 128:21 128:21 187:20
taylor(1) 3:13
technical(1) 153:3
technically(1) 176:21
technique(1) 190:24
teitelaum(1) 46:25
teitelbaum(81) 4:18 4:19 13:13 13:17 13:18 13:18 14:2 14:10 14:19 27:12 27:12 27:13 46:25 47:1 104:16 104:10 104:12 104:12 104:12 107:14 111:4 111:8 111:14 112:20 130:3 130:8 130:24 131:4 131:6 132:16 141:18 145:13 145:15 145:16 145:16 146:7 146:9 147:8 148:14 150:6 150:10 150:18 150:23 151:5 151:8 151:15 153:23 154:8 154:14 154:17 154:19 155:2 155:6 155:18 155:20 155:21 155:21 155:37 155:38 155:39 155:39 156:11 158:21 159:12 159:17 159:23 159:25 162:13 175:23 176:11 176:20 176:21 176:23 177:2 177:24 178:16 180:18 183:16 185:12 187:10 190:10
teitelbaum's(1) 103:4
teitelbaum's(2) 177:5 181:6
teleconference(1) 98:14
telephonic(6) 4:44 5:1 6:1 7:1 8:1 9:1
tell(18) 13:12 17:4 29:5 53:10 61:12 89:14 94:21 96:2 104:6 113:24 150:13 152:19 191:23 200:21 202:6 209:24 210:15 211:16
telling(2) 81:1 108:15
tendered(1) 132:6
tenuous(1) 96:6

term(24) 36:15 39:19 58:12 70:1 71:19 74:8 74:18 77:20 81:21 109:11 109:11 109:13 143:12 143:14 144:12 153:4 153:11 160:16 165:1 168:8 187:2 187:2 188:19 208:8
terminate(1) 90:19
terminated(1) 57:17
termination(8) 23:2 70:18 85:1 85:17 86:15 87:25 88:24 88:24
terms(94) 11:16 12:4 12:8 17:14 24:16 27:24 40:4 41:23 45:15 45:18 47:16 49:10 59:17 59:18 60:23 63:9 63:15 75:15 78:16 81:14 87:22 89:20 91:11 91:22 93:10 95:9 105:1 105:2 108:24 109:1 109:7 109:10 120:24 121:13 121:15 134:21 140:16 140:23 141:4 142:22 142:24 144:9 147:5 148:20 149:9 149:17 149:17 162:19 162:19 165:8 165:16 166:2 166:6 166:6 166:15 167:5 169:12 172:7 172:9 173:4 173:7 173:7 175:1 175:12 177:22 177:23 177:25 178:5 179:25 180:17 180:20 181:4 181:5 181:12 181:14 181:15 181:20 181:21 185:7 185:11 185:13 185:20 186:18 189:15 200:17 208:12 219:20 223:9 223:9
terms."(1) 163:18
terms"(4) 165:17 165:24 166:17 167:4
term's(1) 153:7
test(2) 205:3 205:23
tested(1) 184:20
testified(11) 112:23 113:13 120:3 142:1 143:17 147:23 152:11 156:13 160:2 186:24 187:3
testify(21) 14:13 15:22 112:25 113:18 114:12 131:16 146:8 147:10 147:15 147:19 148:7 148:23 149:15 150:13 151:1 152:9 152:11 160:10 161:16 161:18 218:10
testifying(3) 14:1 15:19 159:6
testimony(18) 17:3 111:13 113:6 113:23 116:10 117:20 133:19 145:7 145:12 145:21 145:21 147:7 150:2 151:22 153:24 160:1 170:20 214:13
tests(1) 181:17
text(10) 26:15 44:4 109:22 114:5 114:6 117:22 173:17 174:9 174:11 203:1
textbook(9) 105:25 108:8 110:2 110:3 110:5 110:13 113:9 170:12 171:7
textbooks(1) 104:4
texts(2) 109:24 118:18
than(51) 16:11 27:23 30:10 32:5 35:13 41:3 41:4 42:11 43:2 43:14 45:11 45:21 45:22 45:24 56:4 59:1 75:13 75:20 78:6 81:23 82:10 90:2 93:11 96:1 97:7 97:9 110:3 118:24 147:4 154:1 160:11 163:17 165:4 165:8 169:14 170:15 171:11 171:19 181:2 195:20 201:19 206:7 206:7 214:23 215:7 215:9 219:3 219:13 220:6 222:19 223:22

thank(90) 12:23 13:23 14:18 18:20 21:10 21:20 24:15 26:24 27:10 27:19 28:2 34:12 35:8 42:21 44:11 44:12 46:23 46:24 48:6 48:8 48:15 48:23 67:10 67:11 68:3 68:4 68:21 69:12 69:16 69:17 83:3 83:2 92:12 93:20 93:21 99:5 99:6 100:10 100:14 100:16 101:5 101:6 101:24 107:12 111:8 111:9 117:8 117:15 130:25 141:18 141:18 144:23 145:8 145:9 151:9 154:8 154:19 155:14 156:19 159:16 159:25 175:19 175:20 191:9 191:10 192:6 192:7 195:25 196:19 197:25 198:2 200:9 200:10 200:14 200:15 201:12 202:16 207:8 209:9 209:10 212:19 212:20 216:2 216:3 216:24 216:25 217:14 222:21 224:13 224:15
thanks(2) 27:11 69:18
that(301) 10:18 10:19 10:20 10:21 10:22 10:23 10:26 10:26 10:27 11:5 11:6 11:8 11:9 11:9 11:16 11:19 11:23 12:1 12:2 12:3 12:3 12:7 12:9 12:9 12:9 12:11 12:13 12:18 13:10 13:14 14:2 14:7 14:7 14:10 14:10 14:13 14:14 14:16 15:1 15:2 15:3 15:4 15:5 15:6 15:7 15:10 15:13 15:14 15:22 15:24 15:25 16:3 16:12 16:13 16:16 16:17 16:19 16:19 16:20 16:22 16:23 16:23 17:1 17:5 17:7 17:10 17:17 17:18 17:22 18:2 18:7 18:10 18:13 18:16 18:18 19:5 19:9 19:9 19:10 19:14 19:17 19:18 19:18 19:19 19:20 19:21 19:21 19:22 19:24 20:1 20:1 20:6 20:8 20:10 20:10 20:14 20:15 20:15 20:16 20:18 20:20 20:21 20:22 20:23 20:24 20:25 21:3 21:5 21:6 21:17 21:22 21:24 21:25 22:4 22:18 23:12 23:16 23:24 23:24 24:6 24:11 24:12 24:14 24:15 24:19 24:21 24:24 24:24 24:25 25:1 25:9 25:15 25:21 26:2 26:6 26:13 26:18 26:19 26:21 26:23 27:4 27:6 27:7 27:14 27:25 28:16 28:19 28:20 28:25 28:25 29:12 29:14 29:15 29:21 30:4 30:5 30:13 30:20 31:8 31:22 31:24 31:25 32:5 32:7 32:8 32:12 32:14 32:21 32:22 32:22 32:23 33:11 33:22 33:24 33:24 34:5 34:7 34:18 34:19 34:22 35:16 35:19 35:23 35:24 36:2 36:4 36:9 36:19 36:25 37:12 37:22 38:2 38:7 38:8 38:9 38:10 38:15 38:17 38:17 38:20 38:21 38:21 38:25 39:6 39:13 39:15 39:16 39:18 39:19 39:21 40:7 40:9 40:9 40:11 40:13 40:15 40:16 40:18 40:21 41:2 41:13 41:17 41:17 41:20 42:2 42:5 42:6 42:10 43:3 43:23 43:25 43:19 43:20 43:21 43:21 43:23 43:25 44:10 46:7 45:6 45:10 45:13 45:23 45:23 46:15 46:18 47:5 47:17 47:21 48:4 48:4 48:12 48:24 49:3 49:7 49:8 49:14 49:19 49:20 49:21 49:25 50:3 50:7 50:8 50:10 50:10 50:13 50:14 50:15 50:19 50:22 50:23 51:9 51:10 51:16 51:17 51:18 51:19 51:24 51:25 52:1 52:4 52:8 52:11 52:11 52:12 52:15 52:17 52:20 53:1 53:3 53:3 53:4 53:7 53:11 53:18 53:21 53:23 53:24 54:8
that(301) 54:10 54:14 54:16 54:17 54:22 54:22 55:1 55:5 55:17 55:20 56:5 56:6 56:10 56:12 56:15 56:23 57:3 57:13 57:25 58:5 58:10 58:13 58:14 58:17 58:18 59:7 59:12 59:12 60:5 60:5 60:8 60:9 60:12 60:13 60:14 60:14 60:15 60:16 60:16 60:20 61:2 61:2 61:4 61:4 61:7 61:12 61:23 62:2 62:7 62:16 62:17 62:19 62:22 63:2 63:4 63:6 63:10 63:12 63:21 63:25 64:1 64:3 64:3 64:6 64:7 64:9 64:10 64:14 64:19 64:23 65:1 65:2 65:8 65:14 65:16 65:19 65:22 66:1 66:4 66:7 66:1 66:12 66:14 66:14 66:16 66:18 66:20 66:21 67:17 67:20 67:20 67:23 67:25 67:25 68:1 68:1 68:10 68:10 68:12 68:14 68:25 69:1 70:1 70:3 70:5 70:18 70:20 70:21 71:11 71:16 71:17 71:18 72:7 72:12 72:18 72:19 73:7 73:8 74:1 74:3 74:9 74:10 74:13 74:16 74:19 74:19 74:23 75:2 75:3 75:7 75:9 75:10 75:17 75:22 75:23 76:6 76:10 76:11 76:15 76:17 76:17 77:7 77:7 77:11 77:22 77:22 77:24 78:1 78:4 78:10 78:11 78:13 78:14 78:18 78:19 78:22 78:23 79:3 79:4 79:5 79:9 79:12 79:13 79:16 79:18 79:20 79:24 80:2 80:3 80:3 80:5 80:12 80:20 80:20 80:21 80:21 80:22 80:24 81:4 81:6 81:8 81:14 81:16 81:17 81:18 81:23 82:3 82:4 82:7 82:7 82:23 82:25 83:7 83:10 83:11 83:13 83:15 83:15 83:23 83:24 84:1 84:2 84:3 84:4 84:5 84:6 84:6 84:7 84:7 84:8 84:8 84:8 84:9 84:10 84:11 84:12 84:14 84:16 84:19 84:25 84:5 85:7 85:8 85:10 85:13 85:16 85:20 85:22 85:22 86:1 86:3 86:4 86:14 86:16 86:17 86:18 86:20 86:21 86:23 86:24 87:1 87:2 87:3 87:4 87:5 87:5 87:12 87:13 87:17 87:17 87:19 87:20 87:21 87:24 88:2 88:12 88:13 88:15 88:16 88:21 88:25 89:3 89:3 89:14 89:15 89:17 89:19 89:20 89:23 89:24 90:1 90:2 90:7 90:9 90:12 91:1 91:5 91:8 91:8 91:12 91:13 91:14 91:14 91:16 91:18 91:23 91:24 91:24 91:25 91:25 92:3 92:8 92:14 92:20 92:24 93:1 93:5 93:16 93:25

| | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) 94:1  94:4  94:8  94:12  94:17 94:21  94:22  94:24  94:25  95:6  95:9  95:11 95:13  95:14  95:18  96:5  96:10  96:12  96:12 96:20  98:2  98:9  98:14  98:16  98:21  98:24 99:1  99:15  99:16  99:17  99:19  99:21  99:23 99:23  99:24  100:4  100:5  100:6  100:7 100:8  100:12  100:19  100:21  100:25  101:1 101:3  101:10  101:10  101:13  101:13  101:15 101:16  101:19  102:10  102:14  102:17 102:25  103:1  103:1  103:16  104:2  104:5 104:19  104:19  104:24  105:5  105:8  105:8 105:14  105:15  105:17  105:18  105:21 105:23  106:5  106:6  106:10  106:13  106:14 106:17  106:21  106:21  106:24  107:6  107:8 107:9  107:12  107:14  107:15  108:2  108:8 108:11  108:14  108:16  108:20  108:23  109:2 109:6  109:9  109:13  109:18  109:18  109:21 110:1  110:6  110:6  110:12  110:20  110:20 110:20  110:22  110:22  110:22  110:23 110:24  111:1  111:2  111:22  112:2  112:6 112:13  112:14  112:19  112:24  113:13 113:22  113:23  114:16  114:23  114:24  115:9 115:15  115:16  115:20  115:21  115:23  116:9 116:14  116:14  116:22  117:3  117:4  117:19 117:24  117:24  118:6  118:13  118:15  118:21 118:23  118:23  119:24  120:7  120:8  120:11 120:15  120:17  120:19  120:19  121:5  121:18 121:21  121:25  122:4  122:11  122:21 122:24  123:1  123:1  123:3  123:3  123:13 123:14  123:17  123:25  124:2  124:4  124:5 124:11  124:12  124:12  124:15  124:18  125:4 125:5  125:11  125:22  125:24  126:1  126:3 126:4  126:4  126:12  126:18  126:22  127:4 127:4  127:9  127:9  127:12  127:25  128:1 128:2  128:4  128:9  128:9  129:5  129:15 129:17  130:6  130:7  130:8  130:11  130:11 130:21  131:10  131:14  132:12  132:17  133:6 133:8  133:12  133:21  133:24  134:1  134:2 134:3  134:8  134:21  135:3  135:11  135:14 135:17  135:24  136:7  136:12  136:13  136:23 137:4  137:5  137:10  137:13  137:17  137:19 137:21  137:22  137:25  138:1  138:5  138:10 138:10  138:11  138:11  138:20  138:22  139:3 139:7  139:10  139:14  139:18  139:18 139:23  139:24  140:22  141:3  141:3  141:10 142:2  142:4  142:5  142:9  142:15  142:21 142:22  142:23  142:25  143:7  143:9  143:15 143:15  143:17  143:20  143:21  144:6  144:7 144:14  144:16  144:17  144:17  144:18 144:20  144:21  145:6  145:20  145:24  145:24 146:3  146:7  146:12  146:14  146:14 | | **that**(301) 146:16  146:17  146:20  146:21 146:23  146:24  146:25  147:7  147:22  148:5 148:6  148:10  148:14  148:15  148:21  149:1 149:4  149:6  149:11  149:11  149:20  149:21 149:23  149:24  150:1  150:2  150:2  150:8 150:9  150:12  150:16  150:16  150:19  150:20 151:3  151:13  151:14  151:15  151:20 151:21  151:23  151:24  151:25  152:4  152:11 152:22  152:23  153:6  153:24  153:25  154:1 154:3  154:6  154:9  154:21  155:1  155:13 156:1  156:6  156:17  156:20  157:2  157:7 157:15  157:23  158:4  158:7  158:8  158:9 158:15  158:24  159:5  159:11  159:12  159:12 159:15  159:20  160:10  160:14  160:19 160:20  160:22  160:22  160:23  160:24  161:3 161:3  161:8  161:11  161:14  161:17  161:22 161:25  162:2  162:4  162:9  162:9  162:15 162:24  162:25  163:8  163:14  163:20  163:22 163:25  164:12  165:1  165:2  165:9  165:11 165:14  166:1  166:4  166:22  167:2  167:7 167:8  167:16  167:16  167:17  167:20  167:23 167:68  168:9  168:11  168:15  168:16  168:19 169:1  169:2  169:3  169:8  169:13  169:17 169:20  170:2  170:21  170:23  170:23  170:24 171:3  171:6  171:10  171:19  171:23  172:5 172:8  172:12  173:2  173:10  173:12  173:16 173:19  173:20  174:2  174:5  174:8  174:13 174:14  174:17  174:24  175:3  175:6  175:8 175:10  175:12  175:14  175:14  175:23  176:6 176:11  176:17  176:18  176:19  176:24 176:25  177:1  177:2  177:4  177:6  177:9 177:23  178:6  178:8  178:10  178:11  178:13 178:13  178:14  178:14  178:17  178:17 178:18  178:18  178:23  178:23  179:3  179:5 179:6  179:23  180:5  180:6  180:9  180:12 180:15  180:17  180:20  180:21  180:22 180:23  181:5  181:7  181:7  181:11  181:11 181:15  181:24  182:1  182:2  182:2  182:15 182:16  182:19  183:14  183:17  183:21 183:21  183:23  184:4  184:6  184:9  184:12 184:14  184:17  184:18  184:21  184:25  185:1 185:7  185:8  185:12  186:3  186:4  186:5 186:16  186:17  186:18  186:22  186:23 186:24  187:1  187:4  187:8  187:12  187:13 187:14  187:17  187:19  187:19  187:20 187:22  188:5  188:9  188:12  188:15  188:15 188:16  188:21  188:23  188:24  188:25  189:1 189:1  189:5  189:7  189:9  189:13  189:18 189:19  189:20  189:21  189:23  189:23 189:25  190:5  190:5  190:5  190:7  190:8 190:10  190:12  190:16  190:19  190:20 190:24  190:25  191:2  191:3  191:4  191:22 191:24 | | **that**(246) 192:1  192:2  192:5  192:14 192:16  192:16  192:21  192:3  193:7  193:12 193:21  194:1  194:5  194:7  194:8  194:9 194:9  194:16  194:17  195:2  195:3  195:5 195:7  195:8  195:8  195:10  195:14  196:6 196:7  196:9  196:12  196:15  196:16  196:17 196:22  196:23  196:25  197:2  197:3  197:4 197:6  197:7  197:10  197:16  197:23  197:25 198:4  198:15  198:19  198:20  199:4  199:5 199:7  199:8  199:13  199:14  199:22  199:24 200:2  200:3  200:7  200:16  200:25  201:6 201:7  201:25  202:6  202:10  202:11  202:11 202:18  202:19  202:21  202:23  203:3  203:6 203:6  203:7  203:9  203:10  203:20  203:21 203:23  204:1  204:3  204:4  204:9  204:12 204:14  204:14  204:16  204:19  204:21 204:22  204:22  204:24  204:24  205:1  205:3 205:7  205:9  205:9  205:11  205:16  205:20 205:20  205:21  205:23  206:1  206:6  206:10 206:11  206:15  206:16  206:20  206:20 206:23  207:5  207:14  207:14  208:7  208:8 208:10  208:11  208:13  208:14  208:20  209:2 209:3  209:7  209:8  209:24  210:3  210:5 210:6  210:6  210:10  210:10  210:14  211:1 211:2  211:3  211:4  211:12  211:16  211:22 212:1  212:3  212:4  212:11  212:14  212:17 212:18  213:7  213:9  213:12  213:17  213:18 213:19  213:23  214:3  214:5  214:6  214:7 214:8  214:14  214:15  214:17  214:18  214:25 215:5  215:6  215:13  215:16  215:20  215:21 215:23  216:6  216:11  216:12  216:13  216:15 216:17  216:18  216:19  216:19  217:1  217:3 217:6  217:7  217:16  217:22  217:23  218:11 218:11  218:19  218:25  219:2  219:3  219:12 219:14  219:16  219:22  219:25  220:1  220:2 220:3  220:3  220:4  220:5  220:7  220:7 220:8  220:10  220:10  220:12  220:13  220:15 220:16  220:17  220:19  220:21  221:2 221:15  221:17  221:20  221:21  221:22  222:7 222:12  222:13  222:13  222:15  222:15 223:1  223:4  223:6  223:11  223:18  223:21 223:23  223:24  224:2  224:3  224:16  224:20 | | **that's**(181) 10:13  10:22  11:10  11:13  12:6 13:2  14:8  14:11  15:21  17:24  19:11  23:1 23:7  23:7  23:16  23:16  23:17  23:18  23:19 26:11  30:1  30:9  32:14  32:15  32:18  32:20 37:6  40:18  42:14  42:20  44:22  45:9  45:15 46:22  47:17  48:23  50:21  51:12  53:13  55:3 55:4  55:8  55:9  55:20  56:2  56:4  57:2  57:2 57:5  57:25  58:16  58:22  59:11  59:20  60:3 61:4  62:3  63:12  63:17  63:18  63:19  63:23 64:13  65:6  65:24  66:4  66:16  74:2  74:8 74:25  75:16  76:12  77:13  78:3  78:17  79:17 79:20  79:23  79:23  81:1  122:6  123:18 123:24  125:6  125:23  126:11  126:13  130:21 132:11  135:18  135:20  136:17  137:6  138:4 138:8  138:19  143:13  148:22  150:9  150:16 151:8  151:17  151:18  151:21  151:22  151:25 153:16  154:19  155:12  156:18  156:24 157:7  158:24  159:6  159:22  159:24  160:16 161:3  161:14  161:15  162:13  162:22  164:7 165:9  165:11  165:16  165:17  167:16  168:5 169:8  170:21  174:1  176:3  176:12  177:7 178:1  178:2  178:13  178:13  178:23  180:24 181:14  182:7  184:12  184:24  185:21  186:9 187:11  187:16  187:17  194:5  194:18  194:18 196:15  198:22  204:2  207:6  207:15  209:8 210:5  211:6  213:1  214:9  214:14  214:21 215:4  215:22  215:25  216:16  217:14  218:8 218:10  218:12  219:8  220:7  220:13  220:13 220:16  221:17  223:13  224:13 |
| | | | | | | **thau**(1) 9:12 |
| | | | | **that's**(31) 81:24  83:3  86:9  88:18  92:3 93:15  93:17  95:1  96:15  98:5  99:2  101:18 102:7  102:15  103:5  103:10  105:9  110:19 112:17  113:4  113:7  114:3  114:10  114:13 114:17  115:12  116:9  116:13  116:25  117:7 118:25 | | **the**(301) 1:1  1:2  1:17  6:4  6:47  10:4  10:6 10:9  10:12  10:16  10:20  10:21  10:22  10:23 10:24  11:1  11:4  11:5  11:6  11:10  11:11 11:11  11:13  11:14  11:16  11:18  11:18  11:20 11:20  11:22  11:23  12:3  12:4  12:6  12:8 12:11  12:11  12:14  12:19  12:23  12:24  13:2 13:7  13:9  13:16  13:18  13:21  13:22  13:23 14:4  14:6  14:7  14:8  14:12  14:14  14:15 14:18  14:20  14:21  14:23  14:23  15:1  15:5 15:6  15:7  15:7  15:8  15:9  15:11  15:15 15:17  15:20  15:23  15:23  16:2  16:5  16:7 16:8  16:8  16:9  16:11  16:15  16:15  16:18 16:22  16:24  17:4  17:5  17:6  17:9  17:11 17:13  17:14  17:15  17:16  17:19  17:19 17:20  17:20  17:21  17:21  17:22  17:22 17:23  17:25  18:5  18:7  18:12  18:13  18:15 18:16  18:18  18:20  18:23  18:24  18:24 18:25  19:1  19:1  19:2  19:2  19:3  19:7  19:8 19:9  19:9  19:10  19:12  19:15  19:15  19:19 19:20  19:24  20:3  20:4  20:5  20:5  20:6 20:7  20:7  20:8  20:12  20:19  20:19  20:21 20:22  20:23  20:24  21:1  21:1  21:1  21:3 21:3  21:4  21:7  21:8  21:10  21:12  21:18 21:18  21:19  21:22  21:23  21:24  21:24 21:25  22:6  22:6  22:9  22:15  22:16  22:19 22:19  22:19  22:21  22:22  23:5  23:5  23:6 23:6  23:7  23:7  23:8  23:8  23:9  23:10 23:10  23:13  23:14  23:15  23:15  23:15 23:16  23:16  23:16  23:17  23:21  23:22 23:25  24:7  24:8  24:8  24:8  24:10  24:13 24:17  24:18  24:19  24:19  24:22  24:24 24:25  25:1  25:2  25:3  25:4  25:4  25:5  25:6 25:6  25:7  25:9  25:10  25:10  25:11  25:13 25:14  25:14  25:15  25:17  25:18  25:19 25:21  25:21  25:22  25:23  25:24  25:24 25:25  26:2  26:3  26:4  26:6  26:6  26:7  26:8 26:9  26:10  26:12  26:13  26:15  26:15  26:20 26:20  26:23  26:23  27:2  27:4  27:4  27:5 27:8  27:8  27:9  27:10  27:13  27:14  27:15 27:16  27:18  27:19  27:22  27:22  27:23 27:24  28:2  28:5  28:7  28:9  28:9  28:11 28:12  28:12  28:16  28:18  28:19  28:21 28:21  29:6  29:8  29:13  29:18  29:24  30:1 30:12  30:16  30:17  30:18  30:22  30:25 30:25  31:1 |
| | | | | **that'd**(1) 223:2 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 31:7 31:7 31:8 31:11 31:14 31:15 31:17 31:17 31:19 31:21 31:22 31:22 32:2 32:9 32:16 32:17 32:18 32:18 32:19 32:20 33:3 33:4 33:5 33:5 33:6 33:6 33:7 33:10 33:11 33:11 33:12 33:13 33:19 33:20 33:22 33:25 34:2 34:3 34:11 34:13 34:15 34:15 34:16 34:18 34:18 34:20 34:23 34:25 34:25 35:3 35:6 35:8 35:9 35:12 35:13 35:15 35:21 35:26 36:4 36:4 36:5 36:6 36:6 36:6 36:7 36:8 36:9 36:10 36:13 36:13 36:14 36:14 36:15 36:16 36:16 36:17 36:18 36:19 36:20 36:21 36:22 36:23 36:24 37:4 37:4 37:5 37:6 37:9 37:11 37:11 37:12 37:12 37:13 37:15 37:18 37:20 37:25 37:25 38:2 38:2 38:5 38:5 38:7 38:8 38:11 38:12 38:13 38:15 38:21 38:25 39:1 39:1 39:1 39:2 39:3 39:6 39:6 39:8 39:10 39:11 39:11 39:14 39:15 39:16 39:18 39:19 39:20 39:21 39:22 39:23 39:23 39:23 39:24 39:25 40:1 40:2 40:3 40:5 40:5 40:8 40:10 40:10 40:11 40:11 40:14 40:15 40:17 40:18 40:22 40:23 40:23 40:24 40:25 40:25 41:1 41:4 41:5 41:6 41:7 41:9 41:16 41:18 41:19 41:23 41:24 41:24 41:25 41:25 42:4 42:4 42:5 42:6 42:6 42:6 42:9 42:9 42:10 42:12 42:12 42:15 42:15 42:16 42:16 42:18 42:19 42:19 42:21 43:5 43:6 43:6 43:9 43:10 43:11 43:13 43:14 43:14 43:16 43:17 43:17 43:17 43:18 43:18 43:20 44:4 44:4 44:5 44:8 44:11 44:15 44:16 44:17 44:19 44:20 44:20 44:21 44:22 44:23 44:24 45:1 45:1 45:4 45:5 45:8 45:9 45:11 45:11 45:13 45:14 45:15 45:18 45:20 45:20 45:21 45:24 45:25 46:1 46:2 46:5 46:7 46:8 46:10 46:11 46:16 46:16 46:18 46:21 46:23 47:1 47:1 47:3 47:4 47:5 47:6 47:6 47:7 47:9 47:14 47:15 47:16 47:20 47:22 47:22 47:23 47:23 47:24 47:25 48:3 48:4 48:5 48:5 48:6 48:6 48:8 48:11 48:12 48:12 48:14 48:16 48:19 48:23 48:24 49:2 49:4 49:6 49:10 49:11 49:14 49:17 49:17 49:19 49:22 49:25 50:1 50:2 50:3 50:4 50:5 50:7 50:8 50:11 50:12

**the**(301) 50:12 50:13 50:14 50:14 50:15 50:18 50:19 50:20 50:20 50:22 50:22 50:24 51:1 51:1 51:1 51:2 51:3 51:3 51:4 51:4 51:4 51:5 51:5 51:6 51:8 51:11 51:12 51:12 51:13 51:14 51:14 51:15 51:20 51:20 51:21 51:22 51:25 52:1 52:2 52:3 52:4 52:5 52:6 52:6 52:9 52:10 52:10 52:11 52:11 52:13 52:18 52:20 52:21 52:22 52:23 52:24 52:24 52:25 53:1 53:2 53:3 53:3 53:4 53:5 53:7 53:8 53:8 53:11 53:11 53:12 53:14 53:16 53:16 53:16 53:17 53:17 53:18 53:20 53:21 53:22 54:6 54:6 54:7 54:9 54:10 54:12 54:13 54:16 54:18 54:18 54:21 54:22 55:1 55:2 55:4 55:4 55:8 55:8 55:10 55:10 55:11 55:12 55:13 55:13 55:14 55:16 55:17 55:18 55:19 55:19 55:20 55:21 55:21 55:21 55:23 55:24 55:24 55:25 55:25 56:4 56:4 56:5 56:6 56:6 56:7 56:7 56:8 56:10 56:11 56:13 56:14 56:15 56:16 56:17 56:18 56:21 56:21 56:22 56:22 56:24 56:25 56:25 56:25 57:1 57:2 57:2 57:3 57:4 57:5 57:6 57:6 57:6 57:6 57:7 57:9 57:9 57:9 57:10 57:11 57:12 57:13 57:14 57:14 57:15 57:16 57:16 57:16 57:18 57:20 57:20 57:21 57:22 57:24 57:24 57:25 58:4 58:5 58:6 58:8 58:9 58:9 58:10 58:11 58:12 58:12 58:12 58:15 58:16 58:17 58:18 58:19 58:19 58:20 58:22 58:22 58:22 58:23 58:24 58:24 58:25 59:2 59:2 59:3 59:3 59:4 59:6 59:9 59:10 59:13 59:14 59:14 59:16 59:17 59:17 59:18 59:21 59:22 59:23 59:24 59:24 59:25 60:4 60:6 60:6 60:6 60:7 60:7 60:9 60:17 60:20 60:22 60:22 60:23 60:24 61:1 61:3 61:18 61:18 61:20 61:20 61:22 61:24 61:25 62:2 62:5 62:6 62:7 62:7 62:10 62:11 62:13 62:15 62:16 62:17 62:20 62:22 62:23 62:23 63:3 63:6 63:8 63:10 63:10 63:11 63:12 63:14 63:15 63:17 63:18 63:19 63:22 63:23 63:25 63:25 64:1 64:2 64:4 64:4 64:5 64:6 64:9 64:10 64:11 64:12 64:13 64:13 64:13 64:15

**the**(301) 64:15 64:16 64:16 64:16 64:19 65:3 65:4 65:5 65:6 65:8 65:12 65:13 65:13 65:13 65:14 65:15 65:16 65:18 65:19 65:20 65:22 65:22 65:23 65:25 66:1 66:3 66:5 66:5 66:6 66:8 66:10 66:12 66:15 66:17 66:19 66:20 67:5 67:6 67:7 67:8 67:10 67:14 67:15 67:17 67:18 67:19 67:22 67:23 67:25 68:2 68:4 68:6 68:9 68:9 68:9 68:13 68:17 68:20 68:24 68:25 68:25 69:5 69:5 69:8 69:10 69:12 69:15 69:17 69:18 69:19 69:19 69:20 69:21 69:22 69:22 69:23 69:24 69:25 69:25 70:1 70:2 70:3 70:3 70:3 70:5 70:6 70:7 70:8 70:9 70:11 70:12 70:13 70:14 70:14 70:15 70:16 70:17 70:20 70:20 70:21 70:21 70:23 70:23 71:1 71:1 71:2 71:3 71:3 71:5 71:6 71:9 71:10 71:12 71:13 71:13 71:15 71:15 71:16 71:17 71:18 71:18 71:20 71:20 71:21 71:24 71:25 71:25 72:2 72:4 72:5 72:5 72:6 72:7 72:8 72:8 72:9 72:10 72:11 72:12 72:16 72:17 72:19 72:25 72:25 73:2 73:2 73:6 73:7 73:8 73:8 73:13 73:13 73:14 73:15 73:17 73:19 73:20 73:21 73:21 73:22 73:22 73:23 73:24 73:25 74:1 74:1 74:2 74:3 74:4 74:5 74:7 74:7 74:8 74:9 74:11 74:11 74:11 74:12 74:15 74:15 74:16 74:16 74:17 74:20 74:24 74:25 75:2 75:2 75:3 75:5 75:7 75:9 75:10 75:11 75:11 75:13 75:14 75:14 75:15 75:16 75:17 75:17 75:18 75:18 75:21 75:22 75:22 75:23 75:23 76:3 76:5 76:7 76:9 76:10 76:11 76:12 76:14 76:15 76:16 76:18 76:19 76:20 76:22 76:24 76:25 76:25 77:1 77:2 77:3 77:4 77:5 77:6 77:6 77:7 77:8 77:10 77:12 77:13 77:14 77:17 77:18 77:19 77:21 77:22 77:23 78:1 78:2 78:2 78:6 78:8 78:10 78:11 78:14 78:15 78:15 78:16 78:21 78:21 78:24 78:25 79:2 79:3 79:4 79:5 79:6 79:7 79:9 79:9 79:10 79:12 79:13 79:14 79:16 79:17 79:18 79:22 79:23 79:23 79:24 79:25 80:1 80:1 80:1 80:3 80:4 80:4 80:4 80:6 80:8 80:8 80:10 80:10 80:11 80:11 80:12 80:12 80:14 80:15 80:18 80:19

**the**(301) 80:24 80:24 81:2 81:3 81:5 81:6 81:6 81:6 81:7 81:8 81:8 81:9 81:10 81:11 81:12 81:14 81:15 81:15 81:16 81:17 81:18 81:18 81:19 81:20 81:22 81:23 81:24 81:25 82:1 82:3 82:3 82:4 82:5 82:7 82:9 82:11 82:14 82:15 82:17 82:18 82:19 82:19 82:20 82:22 82:23 82:24 82:25 83:1 83:2 83:8 83:8 83:9 83:11 83:11 83:12 83:13 83:14 83:14 83:16 83:19 83:25 84:1 84:5 84:7 84:8 84:12 84:14 84:14 84:15 84:18 84:19 84:19 84:20 84:21 84:23 84:24 85:2 85:4 85:6 85:6 85:10 85:12 85:17 85:18 85:20 85:25 86:1 86:2 86:7 86:12 86:13 86:14 86:15 86:16 86:18 86:18 86:19 86:23 86:24 86:25 86:25 87:2 87:3 87:4 87:6 87:6 87:7 87:8 87:9 87:11 87:14 87:15 87:15 87:16 87:20 87:23 87:24 87:25 88:3 88:7 88:7 88:11 88:12 88:14 88:15 88:17 88:18 88:20 88:24 88:24 88:25 89:1 89:3 89:6 89:8 89:9 89:9 89:10 89:16 89:17 89:19 89:21 89:21 89:23 89:24 89:25 90:1 90:3 90:4 90:5 90:6 90:6 90:8 90:12 90:13 90:14 90:15 90:15 90:19 90:23 90:24 90:24 90:25 91:1 91:3 91:6 91:8 91:11 91:12 91:14 91:16 91:17 91:18 92:3 92:3 92:9 92:12 92:16 92:18 92:19 92:20 92:21 92:22 92:22 93:5 93:5 93:6 93:6 93:6 93:7 93:10 93:11 93:12 93:13 93:13 93:14 93:17 93:19 93:23 93:24 94:4 94:5 94:7 94:9 94:10 94:10 94:15 94:17 94:20 94:23 94:24 94:25 95:4 95:5 95:7 95:8 95:9 95:10 95:11 95:13 95:14 95:14 95:15 95:16 95:18 95:20 95:22 95:24 95:25 96:1 96:1 96:2 96:3 96:4 96:5 96:6 96:8 96:10 96:10 96:11 96:15 96:18 96:19 96:19 96:21 96:21 96:23 96:23 96:24 97:2 97:4 97:5 97:5 97:7 97:8 97:8 97:9 97:9 97:11 97:12 97:13 97:13 97:15 97:20 97:21 97:23 98:2 98:4 98:5 98:9 98:10 98:18 98:13 98:14 98:15 98:15 98:17 98:18 98:21 98:21 98:22 98:25 99:2 99:5 99:11 99:19 99:19 99:20 99:22 100:2 100:9 100:12 100:12 100:15 100:17 100:21 100:23 100:23 101:2 101:3 101:4 101:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | 101:6 101:8 101:11 101:14 | **the**(301) | 122:13 122:15 122:15 122:20 | **the**(301) | 144:6 144:11 144:11 144:21 | **the**(301) | 164:25 165:1 165:6 165:9 165:9 |

101:15 101:15 101:19 101:19 101:20
101:22 101:25 102:2 102:4 102:5 102:6
102:6 102:9 102:10 102:11 102:12 102:14
102:15 102:16 102:18 102:23 102:24
102:25 103:3 103:7 103:10 103:16 103:18
103:21 103:21 103:24 104:2 104:5 104:9
104:11 104:13 104:14 104:18 104:18
104:24 104:25 104:25 105:1 105:2 105:5
105:7 105:11 105:12 105:13 105:13 105:14
105:16 105:19 105:20 105:20 105:22
105:24 105:24 105:25 106:1 106:1 106:5
106:5 106:6 106:7 106:10 106:11 106:12
106:13 106:17 106:18 106:20 106:20
106:21 106:24 107:1 107:4 107:4 107:5
107:6 107:6 107:7 107:8 107:8 107:13
107:14 107:15 107:16 107:17 107:19
107:19 107:21 107:22 107:23 107:24
107:24 107:24 108:4 108:7 108:8 108:9
108:10 108:13 108:14 108:18 108:19
108:20 108:23 108:25 108:25 109:4 109:5
109:8 109:8 109:15 109:18 109:21 109:22
110:2 110:3 110:5 110:7 110:7 110:9
110:10 110:12 110:14 110:15 110:18
110:20 110:22 110:23 111:2 111:3 111:3
111:6 111:14 111:15 111:19 111:21 111:21
111:25 112:4 112:7 112:8 112:11 112:12
112:12 112:13 112:15 112:15 112:16
112:19 112:19 112:22 112:23 112:25
112:25 113:1 113:2 113:2 113:3 113:3
113:6 113:8 113:9 113:12 113:16 113:19
113:20 113:20 113:21 113:21 113:23 114:1
114:3 114:5 114:6 114:6 114:8 114:12
114:12 114:16 114:18 114:24 115:1 115:2
115:4 115:5 115:5 115:7 115:9 115:11
115:13 115:15 115:17 115:20 115:23
115:24 115:25 115:25 116:3 116:4 116:6
116:7 116:7 116:7 116:8 116:10 116:13
116:16 116:19 116:19 116:20 116:24
116:25 116:25 117:1 117:1 117:2 117:8
117:11 117:14 117:16 117:21 117:22
117:23 117:24 117:25 117:25 118:4 118:5
118:9 118:9 118:10 118:12 118:13 118:14
118:14 118:15 118:17 118:22 118:25 119:1
119:4 119:5 119:7 119:10 119:16 119:17
119:18 119:24 119:24 120:1 120:2 120:4
120:8 120:8 120:12 120:13 120:13 120:14
120:14 120:15 120:17 120:17 120:22
120:22 120:23 120:24 120:24 121:2 121:3
121:6 121:8 121:8 121:9 121:10 121:10
121:11 121:12 121:12 121:13 121:14
121:15 122:2 122:2 122:3 122:3 122:3
122:4 122:4 122:7 122:7 122:10 122:12
122:12

122:21 122:21 123:1 123:3 123:8 123:8
123:12 123:15 123:15 123:16 123:16
123:19 123:19 123:21 123:21 123:22
123:24 124:4 124:4 124:5 124:7 124:7
124:9 124:11 124:14 124:19 124:19 124:20
124:21 124:22 124:23 124:23 124:24
124:25 125:2 125:5 125:9 125:10 125:12
125:12 125:12 125:13 125:13 125:14
125:14 125:16 125:17 125:18 125:18
125:19 125:21 126:1 126:1 126:3 126:11
126:16 126:20 126:22 126:23 126:23
126:24 127:1 127:2 127:3 127:4 127:6
127:6 127:9 127:10 127:10 127:10 127:12
127:16 127:17 127:17 127:18 127:18
127:20 127:20 127:21 127:24 127:24 128:2
128:2 128:3 128:4 128:8 128:10 128:11
128:13 128:16 128:18 129:5 129:9 129:10
129:11 129:12 129:12 129:18 129:19
129:20 129:21 129:22 129:23 130:1 130:5
130:6 130:7 130:7 130:9 130:11 130:11
130:14 130:16 130:22 130:23 131:6 131:7
131:10 131:13 131:13 131:19 131:19
131:21 131:24 132:8 132:8 132:8 132:10
132:14 132:14 132:17 132:17 132:23
132:25 132:25 133:1 133:2 133:4 133:5
133:6 133:8 133:11 133:12 133:13 133:17
133:18 133:20 133:21 134:1 134:6 134:7
134:4 134:4 134:5 134:6 134:9 134:15
134:20 134:20 134:21 134:22 134:23
134:23 134:24 134:24 134:25 135:1 135:2
135:10 135:10 135:11 135:11 135:13
135:13 135:14 135:14 135:15 135:16
135:17 135:21 135:21 135:21 136:3 136:4
136:4 136:6 136:8 136:11 136:12 136:15
136:16 136:16 136:20 136:22 136:22 137:1
137:1 137:6 137:6 137:9 137:10 137:11
137:12 137:12 137:13 137:14 137:15
137:18 137:21 138:2 138:3 138:4 138:5
138:6 138:10 138:10 138:11 138:12 138:14
138:14 138:15 138:15 138:17 138:18
138:20 138:22 138:23 138:24 139:1 139:1
139:8 139:10 139:11 139:12 139:13 139:14
139:2 139:3 139:3 139:7 139:8 139:8
139:19 139:20 139:22 139:24 139:25
140:2 140:2 140:3 140:3 140:4 140:8
140:9 140:12 140:13 140:17 140:17 140:24
140:25 141:2 141:4 141:7 141:9 141:13
141:13 141:20 141:24 142:1 142:2 142:6
142:6 142:8 142:9 142:10 142:11 142:12
142:14 142:17 142:18 142:21 142:23
142:24 143:1 143:2 143:3 143:3 143:4
143:5 143:7 143:13 143:13 143:14 143:17
143:19 143:20

145:4 145:3 145:8 145:9 145:10 145:11
145:11 145:12 145:14 145:16 145:19
145:20 145:23 146:1 146:4 146:5 146:6
146:8 146:10 146:12 146:14 146:15 146:17
146:20 146:22 147:1 147:2 147:2 147:3
147:6 147:9 147:16 147:17 147:18 147:25
148:2 148:3 148:4 148:12 148:15 148:16
148:18 148:21 148:22 148:23 149:1 149:6
149:9 149:9 149:10 149:10 149:11 149:17
149:17 149:19 149:21 149:23 149:23
149:24 149:25 150:5 150:6 150:7 150:9
150:10 150:12 150:12 150:14 150:15
150:19 150:19 150:20 150:20 150:21
150:25 151:1 151:3 151:4 151:6 151:9
151:12 151:15 151:16 151:17 151:19
151:19 151:21 151:23 151:23 151:24
151:24 152:1 152:1 152:1 152:2 152:4
152:5 152:6 152:8 152:20 152:20 152:25
153:3 153:4 153:6 153:6 153:10 153:11
153:11 153:15 153:16 153:20 153:23
153:24 154:1 154:5 154:5 154:9 154:9
154:11 154:13 154:16 154:18 154:21
154:22 154:22 154:24 154:25 155:1 155:4
155:8 155:9 155:11 155:15 155:17 155:18
155:37 155:39 156:3 156:8 156:10 156:16
156:19 156:20 156:20 156:21 156:21
156:22 156:25 156:25 156:26 156:26
156:26 157:1 157:1 157:2 157:4 157:5
157:6 157:7 157:7 157:8 157:8 157:9
157:9 157:9 157:10 157:11 157:12 157:12
157:13 157:13 157:14 157:15 157:16
157:19 157:20 157:21 157:22 157:24 158:1
158:1 158:2 158:2 158:3 158:5 158:6
158:8 158:13 158:14 158:14 158:19 158:19
158:25 159:1 159:2 159:3 159:3 159:7
159:10 159:10 159:14 159:16 159:18
159:18 159:20 159:22 159:23 159:24 160:1
160:2 160:4 160:5 160:6 160:6 160:7
160:8 160:8 160:8 160:11 160:13 160:14
160:15 160:16 160:17 160:18 160:18
160:19 160:20 160:22 161:1 161:2 161:3
161:4 161:4 161:5 161:5 161:6 161:6
161:7 161:7 161:13 161:18 161:19 161:20
161:20 161:21 161:21 161:23 161:23
161:24 161:26 161:26 162:5 162:6 162:8
162:9 162:11 162:12 162:14 162:16 162:18
162:18 162:20 162:21 162:22 162:24
162:24 162:25 163:1 163:2 163:3 163:3
163:11 163:14 163:15 163:16 163:16
163:17 163:19 163:21 164:3 164:6 164:9
164:14 164:14 164:17 164:18 164:20
164:21 164:23

165:11 165:16 165:17 165:18 165:19
165:20 165:21 165:22 165:23 165:25 166:2
166:5 166:6 166:12 166:12 166:15 166:16
166:18 166:19 166:20 166:21 166:21
166:21 166:23 166:24 166:24 167:1 167:2
167:4 167:9 167:13 167:15 167:18 167:18
167:20 167:21 167:22 167:22 167:23 168:1
168:1 168:4 168:6 168:7 168:7 168:9
168:11 168:13 168:15 168:15 168:15
168:17 168:18 168:19 168:20 168:21
168:23 168:24 168:25 168:25 169:1 169:1
169:1 169:3 169:4 169:4 169:5 169:7
169:9 169:11 169:11 169:12 169:14 169:18
169:18 169:20 169:21 169:23 169:23
170:1 170:3 170:5 170:5 170:6 170:7
170:7 170:9 170:10 170:12 170:13 170:13
170:15 170:15 170:19 170:20 170:23
170:24 171:1 171:3 171:5 171:6 171:7
171:11 171:11 171:12 171:13 171:14
171:15 171:17 171:18 171:18 171:18
171:19 171:21 171:22 171:25 172:1 172:1
172:5 172:6 172:11 172:16 172:17 172:18
172:18 172:20 172:22 172:24 172:25 173:3
173:4 173:5 173:6 173:11 173:12 173:13
173:14 173:14 173:16 173:17 173:25
173:25 173:25 174:1 174:2 174:2 174:2
174:3 174:3 174:4 174:8 174:13 174:14
174:15 174:17 174:18 174:19 174:21
174:22 174:24 174:24 175:2 175:2 175:3
175:3 175:4 175:4 175:6 175:7 175:7
175:8 175:9 175:9 175:11 175:12 175:13
175:15 175:20 175:22 175:22 175:25 176:1
176:5 176:6 176:8 176:10 176:11 176:11
176:13 176:13 176:14 176:14 176:14
176:15 176:15 176:16 176:20 176:22
176:25 177:1 177:3 177:3 177:3 177:6
177:6 177:9 177:12 177:17 177:18 177:19
177:21 177:22 177:23 177:25 178:1 178:1
178:2 178:3 178:5 178:6 178:7 178:7
178:9 178:10 178:12 178:13 178:14 178:16
178:18 178:20 178:20 178:21 178:22
178:23 178:23 178:24 179:1 179:3 179:3
179:4 179:5 179:6 179:7 179:9 179:11
179:12 179:15 179:15 179:16 179:17
179:17 179:18 179:18 179:19 179:21
179:23 179:23 179:24 180:2 180:5 180:7
180:8 180:9 180:11 180:11 180:13 180:14
180:15 180:15 180:17 180:23 180:24 181:1
181:2 181:3 181:5 181:8 181:12 181:12
181:18 181:22 181:23 181:25 182:1 182:4
182:11 182:15 182:17 182:18 182:18
182:21 182:22 182:23 183:1 183:3 183:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the**(301) 183:7 183:8 183:9 183:12 183:13 183:13 183:14 183:16 183:18 183:19 183:21 183:23 184:1 184:4 184:5 184:8 184:9 184:13 184:14 184:15 184:16 184:16 184:16 184:17 184:18 184:18 184:19 184:20 184:21 184:21 184:22 184:22 184:23 184:24 185:2 185:2 185:4 185:5 185:6 185:8 185:9 185:11 185:13 185:14 185:15 185:16 185:21 185:23 186:7 186:9 186:10 186:12 186:13 186:19 187:1 187:2 187:2 187:4 187:4 187:5 187:5 187:8 187:11 187:12 187:13 187:16 187:19 187:21 187:23 187:23 187:24 188:2 188:6 188:7 188:8 188:9 188:10 188:10 188:12 188:13 188:14 188:17 188:17 188:17 188:19 188:19 188:21 188:21 188:22 188:22 189:2 189:3 189:4 189:5 189:7 189:7 189:12 189:13 189:13 189:14 189:14 189:17 189:17 189:18 189:20 189:22 189:23 189:24 190:3 190:11 190:12 190:13 190:14 190:15 190:17 190:20 190:20 190:21 190:21 190:22 190:22 190:25 190:25 191:2 191:4 191:4 191:5 191:8 191:9 191:15 191:17 191:18 191:23 191:24 191:25 192:5 192:7 192:8 192:9 192:11 192:12 192:12 192:13 192:19 192:19 192:23 192:23 192:25 193:2 193:4 193:7 193:8 193:9 193:10 193:10 193:11 193:14 193:17 193:19 193:21 193:24 193:25 194:5 194:7 194:8 194:10 194:11 194:13 194:14 194:14 194:14 194:17 194:18 194:19 194:21 194:23 194:25 195:1 195:2 195:2 195:4 195:5 195:6 195:6 195:10 195:11 195:12 195:14 195:18 195:19 195:20 195:21 195:24 196:1 196:5 196:6 196:7 196:7 196:7 196:8 196:8 196:9 196:11 196:12 196:12 196:15 196:19 196:20 196:23 196:24 197:1 197:3 197:4 197:4 197:4 197:11 197:12 197:13 197:14 197:16 197:17 197:18 197:20 197:22 197:24 198:2 198:7 198:12 198:16 198:19 198:21 199:4 199:4 199:5 199:6 199:9 199:12 199:13 199:15 199:15 199:16 199:20 199:21 199:22 199:23 199:24 199:25 200:2 200:2 200:4 200:9 200:15 200:16 200:17 200:19 200:21 200:22 201:2 201:5 201:9 201:11 201:14 201:17 201:17 201:21 201:22 201:23 201:23 201:24 201:24 201:25 202:3 202:5 202:9 202:9 202:11 202:16 202:18 202:19 202:20 202:20 202:21 202:22 202:23 202:24 202:24 202:25 203:1 203:3 203:4 203:6 203:6 203:9 203:9 203:10 203:12 203:14 203:15 203:17 203:18 203:20

**the**(289) 203:22 203:23 203:23 203:24 203:25 204:3 204:5 204:7 204:8 204:8 204:9 204:11 204:12 204:13 204:13 204:13 204:14 204:17 204:17 204:18 204:20 204:22 204:22 204:23 204:24 205:1 205:1 205:2 205:5 205:9 205:12 205:14 205:16 205:18 205:18 205:18 205:21 205:24 205:24 206:5 206:5 206:6 206:8 206:10 206:11 206:12 206:15 206:16 206:18 206:20 206:22 206:23 207:1 207:2 207:2 207:4 207:6 207:8 207:14 207:15 207:15 207:16 207:17 207:18 207:19 207:20 207:23 207:24 208:3 208:6 208:7 208:7 208:9 208:10 208:10 208:11 208:14 208:15 208:15 208:17 208:21 208:22 208:24 208:24 209:2 209:2 209:3 209:3 209:4 209:8 209:9 209:14 209:16 209:16 209:17 209:20 209:25 210:1 210:1 210:3 210:3 210:4 210:6 210:9 210:12 210:12 210:21 211:1 211:3 211:6 211:7 211:10 211:18 211:23 212:1 212:2 212:3 212:6 212:8 212:10 212:13 212:15 212:17 212:18 212:20 212:25 212:25 213:1 213:2 213:4 213:8 213:8 213:11 213:12 213:12 213:13 213:17 213:19 213:19 213:21 213:22 213:23 213:25 214:3 214:4 214:4 214:7 214:8 214:13 214:14 214:16 214:16 214:18 214:19 214:19 214:22 214:23 215:2 215:2 215:9 215:9 215:10 215:14 215:14 215:21 215:22 215:22 215:23 215:24 215:24 215:25 216:2 216:6 216:7 216:10 216:10 216:13 216:13 216:15 216:17 216:20 216:20 216:21 216:22 216:25 217:1 217:7 217:7 217:8 217:10 217:10 217:13 217:16 217:17 217:20 217:20 217:25 218:1 218:6 218:8 218:10 218:11 218:13 218:13 218:15 218:17 218:18 218:19 218:20 218:20 218:21 218:21 218:21 218:24 218:25 218:25 219:2 219:2 219:3 219:7 219:9 219:9 219:15 219:16 219:17 219:21 219:21 219:24 219:25 220:1 220:2 220:2 220:3 220:8 220:8 220:10 220:15 220:16 220:18 220:19 220:24 221:1 221:4 221:6 221:7 221:8 221:8 221:9 221:12 221:13 221:17 221:18 221:23 221:24 222:5 222:6 222:6 222:8 222:11 222:12 222:14 222:14 222:15 222:16 222:21 222:24 223:1 223:3 223:5 223:6 223:8 223:11 223:11 223:13 223:16 223:19 223:21 223:24 223:25 224:8 224:11 224:15 224:18 224:20 224:21 224:21 224:22

**their**(76) 15:20 18:17 24:9 31:16 33:15 33:22 35:16 47:9 47:11 49:15 72:11 76:14 76:20 80:13 80:13 92:24 94:12 102:13 105:21 108:2 115:10 118:7 118:10 135:11 135:12 136:9 136:11 146:14 147:20 154:11 156:22 161:12 166:9 169:25 169:25 171:4 178:8 178:9 178:20 179:8 179:25 180:4 180:23 181:12 182:10 183:2 184:3 184:4 189:8 189:9 189:10 189:11 190:9 190:10 190:12 195:7 196:21 197:8 197:9 197:10 197:20 197:21 197:24 199:24 199:24 199:25 200:4 202:2 204:1 208:12 216:12 219:4 219:6 219:23 223:15

**them**(63) 10:22 11:2 11:9 12:2 24:25 26:21 29:9 30:21 34:23 42:25 54:4 54:14 54:23 60:12 60:13 78:9 82:21 86:4 87:4 89:5 95:22 102:15 104:16 104:17 104:24 111:5 112:9 112:9 118:11 130:12 156:22 158:20 161:12 176:4 176:24 177:21 180:11 181:24 186:2 189:15 189:24 190:7 190:9 190:18 190:19 190:24 191:2 191:8 193:4 193:5 194:20 196:25 197:2 197:20 198:23 198:24 199:2 202:8 211:9 214:8 214:15 220:19

**theme**(1) 198:20

**themselves**(12) 75:18 78:6 88:13 115:9 179:5 181:18 181:18 182:6 182:11 184:10 195:18 213:21

**then**(87) 11:7 16:10 22:25 28:11 29:15 29:16 30:8 30:24 38:13 49:10 56:14 58:8 62:20 69:23 71:25 72:15 73:5 86:16 89:14 90:16 92:2 94:15 94:18 97:1 100:3 100:9 104:4 105:16 111:25 112:21 112:22 114:5 115:25 122:3 124:20 124:24 124:24 124:25 128:13 133:5 135:13 135:24 135:25 138:25 142:19 143:5 143:12 148:20 152:5 152:18 153:1 154:16 157:4 157:5 157:17 159:17 160:18 161:23 162:14 165:8 168:21 172:15 172:17 174:6 176:14 177:22 179:14 179:19 180:14 180:23 182:20 183:3 186:17 187:5 187:18 188:24 196:12 199:19 201:2 205:7 207:23 214:11 214:12 217:25 218:24 219:7 221:13

**there**(166) 10:17 10:24 11:1 11:3 11:7 11:13 13:4 15:24 16:15 16:18 16:18 16:23 17:3 19:4 19:8 20:15 22:1 22:6 22:24 23:18 24:1 24:22 25:1 26:12 30:15 30:17 30:21 34:19 34:22 34:25 35:19 37:15 37:23 38:9 38:13 39:17 41:14 48:4 49:15 50:10 51:7 51:15 54:14 57:12 62:9 67:4 67:19 67:24 71:21 73:6 75:12 76:6 76:8 79:1 79:11 80:9 81:2 81:3 82:6 86:6 86:21 88:3 90:23 91:24 96:25 107:16 108:21 109:6 109:8 110:12 111:7 114:18 116:1 117:8 118:18 121:18 121:18 125:21 128:8 128:7 129:2 129:17 133:5 133:13 133:15 133:20 134:9 134:13 137:25 144:6 144:18 145:3 146:5 146:12 147:14 148:12 148:14 151:20 152:7 152:9 152:21 154:15 156:4 156:26 159:2 161:18 163:1 163:12 164:15 164:15 167:21 168:8 168:8 168:12 168:12 168:13 168:13 169:6 169:13 169:19 169:20 171:22 173:1 173:21 174:23 176:20 177:23 178:4 185:1 186:6 186:23 187:18 189:4 189:16 190:18 193:12 193:14 193:17 194:17 196:25 197:3 198:21 201:25 202:7 204:11 204:17 204:19 205:16 207:25 209:7 209:17 211:12 211:24 211:25 213:5 217:5 217:18 218:4 219:3 219:13 221:11 221:14 223:3 223:6 223:23

**there's**(17) 82:23 84:6 84:10 88:21 91:15 91:22 93:25 98:24 98:24 102:13 103:2 111:25 114:24 115:10 115:14 115:16 116:13

**thereabout**(1) 169:18

**thereabouts**(1) 194:17

**thereafter**(1) 31:6

**therefore**(9) 42:13 62:18 70:4 86:8 88:24 91:7 148:18 196:22 203:14

**therein**(1) 110:23

**thereof**(1) 123:9

**there'd**(2) 65:24 130:13

**there's**(109) 11:15 11:23 14:5 16:25 17:1 17:2 20:5 22:24 22:25 24:12 24:22 25:2 26:7 29:21 29:22 32:16 32:20 32:21 35:18 39:2 39:3 39:4 39:5 39:9 39:10 42:17 43:20 46:17 50:4 51:10 52:1 52:15 53:22 57:23 58:10 59:12 61:1 61:3 61:5 61:8 62:24 63:4 63:5 63:24 64:25 66:7 66:14 66:21 68:25 72:3 73:1 77:11 78:4 78:25 81:7 125:3 131:2 135:3 135:24 135:25 136:14 137:5 146:17 149:18 151:19 152:17 158:16 162:8 163:11 164:15 165:14 165:14 166:20 167:15 173:19 173:20 178:15 182:7 182:7 182:8 182:8 182:18 182:24 182:25 184:25 186:2 186:20 189:16 190:17 192:15 195:1 195:13 204:19 205:14 206:3 206:3 208:5 213:3 217:21 218:4 218:5 218:15 219:12 219:12 220:21 220:22 221:5 221:14 223:23

**these**(104) 27:4 29:6 31:5 34:22 34:23 55:5 55:5 59:14 70:22 72:3 89:8 93:1 101:2 103:4 106:17 108:1 108:5 108:24 108:24 109:3 109:4 110:11 112:25 113:18 114:2 114:5 114:25 115:2 115:22 116:23 118:21 118:21 118:24 126:3 126:20 127:5 137:23 138:23 142:16 142:16 146:4 146:23 146:24 147:8 147:11 148:9 148:13 148:19 148:23 149:16 150:24 151:13 152:19 154:4 157:17 158:3 158:6 158:8 158:12 158:25 160:3 160:7 161:9 161:9 161:9 161:11 162:5 162:21 163:5 163:22 163:25 170:8 170:16 172:8 173:2 173:23 175:10 176:4 177:1 180:1 180:2 181:19 183:18 183:21 183:23 184:9 186:8 187:6 187:6 187:8 188:16 194:3 194:5 194:11 194:20 194:22 195:12 195:13 199:8 210:11 210:18 215:12 218:8 222:15

**thesis**(1) 214:12

**they**(225) 12:2 12:12 13:15 15:1 15:20 16:5 16:13 17:7 17:7 20:24 22:3 22:4 31:17 33:2 33:23 35:16 36:6 37:14 41:2 41:15 41:16 41:19 41:20 46:10 46:11 46:13 46:14 47:18 47:20 50:11 50:12 51:14 51:19 51:19 52:16 53:5 53:6 53:12 53:13 53:13 55:2 61:13 64:1 64:5 64:6 64:7 67:6 67:20 75:1 75:21 75:24 76:21 78:7 80:13 80:15 80:15 81:5 82:18 82:20 84:6 84:8 87:2 87:8 87:13 88:13 88:14 88:19 89:5 89:6 89:7 89:17 89:23 90:4 90:4 90:5 90:18 90:19 91:14 92:3 92:24 92:24 92:25 93:5 93:9 95:18 99:3 100:24 101:17 104:15 104:24 105:15 106:2 106:3 106:5 107:1 107:25 107:25 108:1 108:15 109:3 110:16 110:16 111:23 112:22 114:10 115:10 115:15 115:20 129:19 135:11 137:15 137:25 138:14 141:1 141:17 143:3 143:20 147:11 148:5 148:24 149:17 151:14 151:15 152:3 152:20 156:24 157:6 158:12 161:10 161:12 161:13 165:20 165:23 167:10 167:25 168:3 169:5 169:19 169:20 169:21 170:10 170:11 171:1 171:3 171:25 171:25 171:25 173:16 173:17 174:6 174:11 176:22 178:6 178:7 178:8 179:14 179:16 179:23 180:2 180:3 180:5 180:20 180:21 180:22 182:1 182:1 182:2 182:2 182:11 182:14 182:15 182:18 183:2 183:4 183:4 183:25 184:4 187:7 187:7 187:10 187:13 187:14 187:20 189:1 189:2 189:2 189:8 189:16 189:24 189:25 190:1 190:2 190:2 190:12 190:15 190:16 191:3 191:4 191:5 191:5 192:5 193:13 194:22 194:24 195:18 197:8 197:21 198:17 207:21 210:19 211:2 211:17 215:20 216:8 216:9 218:11 218:12 219:5 219:10 221:16 223:10 223:14 223:17 223:20 223:21

**they're**(18) 83:19 87:4 87:13 88:15 90:1 90:5 92:15 92:16 103:8 103:8 103:24 106:23 106:23 106:24 106:24 108:5 110:17 111:25

**they've**(1) 119:24

**they'd**(3) 127:24 180:10 221:6

**they'll**(2) 67:6 218:20

**they're**(46) 17:1 17:2 18:25 20:6 20:12 22:9 35:3 41:1 44:19 52:16 56:19 56:20 56:23 62:1 67:7 69:8 72:20 76:10 79:15 79:15 143:20 146:13 146:13 148:20 151:16 154:14 154:15 154:16 154:17 158:7 162:11 167:5 167:11 172:9 177:24 180:22 182:3 182:13 184:9 186:11 186:11 193:13 195:9 208:13 210:19 215:3

**they've**(15) 16:12 54:3 164:25 181:11 182:5 182:6 182:15 183:6 184:13 184:22 187:9 187:10 196:22 220:18 220:20

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **thing**(26) 11:6 12:16 13:3 14:20 21:21 29:1 42:19 47:14 54:13 65:4 83:7 84:10 91:23 96:12 100:9 118:6 131:2 164:25 166:3 166:21 166:24 167:14 175:15 187:11 210:24 220:16 | | **this**(301) 10:9 11:4 11:5 11:24 12:22 12:24 13:20 14:21 17:18 18:15 19:6 19:18 19:22 21:2 21:6 21:23 21:25 22:5 23:12 23:25 24:23 25:8 25:11 25:12 25:16 26:7 26:18 26:19 27:6 28:8 29:8 30:14 30:16 30:18 30:24 32:24 33:10 33:20 33:21 34:3 34:6 34:18 34:24 36:2 36:3 36:10 36:11 36:12 36:20 36:22 36:23 37:5 38:2 39:3 39:9 40:20 40:24 41:11 41:22 42:7 43:2 43:2 43:4 43:24 43:25 44:25 45:7 46:4 46:21 47:23 47:25 48:1 48:5 49:10 49:24 50:1 50:6 50:7 51:9 52:19 52:21 52:24 53:1 53:22 53:24 55:9 56:15 56:19 56:21 57:23 58:8 60:3 61:2 61:6 61:12 61:16 61:19 61:24 62:3 62:5 62:12 62:18 62:20 62:22 62:25 63:2 63:8 63:14 63:15 63:24 64:4 64:18 64:20 64:20 64:23 64:24 65:18 66:9 66:15 66:17 66:24 67:8 67:23 68:2 68:7 68:11 69:2 69:4 70:5 71:6 72:18 74:21 76:22 79:2 80:5 80:9 80:21 82:2 83:10 84:11 84:16 84:18 85:19 86:11 90:8 90:9 90:14 89:15 90:8 90:11 90:16 90:18 90:20 91:5 91:23 92:13 92:18 93:4 93:8 93:15 95:15 95:19 98:2 98:3 99:10 101:10 102:7 102:11 103:5 103:17 104:7 104:17 104:19 105:23 106:6 106:17 106:22 108:14 108:17 109:1 110:2 110:6 110:12 111:12 111:13 112:9 112:13 113:19 116:11 116:20 117:3 117:6 118:5 118:6 119:6 119:21 120:4 120:16 121:2 121:21 121:24 122:9 122:12 122:10 122:13 122:16 122:23 123:7 123:8 125:9 125:14 126:15 126:22 127:13 127:15 128:16 129:3 129:5 130:2 130:10 130:12 130:19 130:25 132:4 132:5 134:14 134:17 135:6 135:8 135:9 135:15 135:19 136:16 136:19 137:11 137:13 141:20 145:17 146:11 146:16 147:16 147:19 147:19 152:7 153:3 153:11 153:13 153:21 154:3 154:9 154:10 154:13 156:3 156:6 156:8 156:12 156:15 156:16 157:14 157:17 157:23 160:11 160:23 161:19 162:1 162:22 164:4 164:9 164:9 164:17 164:17 165:11 165:13 166:12 166:20 167:2 167:25 168:2 168:4 168:5 168:5 168:25 169:2 169:14 169:17 170:25 172:13 172:13 172:18 172:19 172:21 172:22 172:23 173:1 173:2 173:17 173:23 174:3 174:8 | | **those**(112) 10:25 14:6 15:10 16:24 19:7 21:5 22:2 27:24 30:7 31:25 32:10 32:13 39:1 40:12 41:18 43:8 43:19 46:9 51:6 53:10 53:23 54:5 54:17 55:15 59:20 60:18 66:23 67:4 68:1 68:12 70:22 71:13 75:19 75:20 76:1 76:18 79:14 80:25 83:24 85:4 86:8 88:9 89:18 91:20 97:16 97:16 98:16 100:24 103:6 103:22 104:21 105:2 106:11 107:7 114:7 116:21 117:5 118:9 120:25 121:6 124:14 124:17 125:1 127:23 129:9 129:17 134:1 134:3 134:2 136:1 136:15 136:25 139:6 139:10 140:5 141:11 141:15 142:22 144:4 146:10 146:13 146:17 149:6 151:1 154:12 157:10 158:17 166:16 166:17 166:24 169:23 176:16 178:3 180:6 183:19 184:5 185:20 195:23 196:17 198:14 198:15 202:2 204:15 204:16 204:20 204:22 207:17 208:23 210:2 210:4 214:22 220:20 | | **today's**(2) 83:5 96:21 **today's**(4) 35:11 177:16 196:3 209:12 **together**(7) 22:16 79:25 98:14 116:21 134:23 147:18 217:16 **told**(3) 179:4 187:10 215:17 **tomorrow**(9) 13:20 17:22 18:2 18:5 18:9 192:18 193:4 193:6 223:7 **tomorrow's**(1) 12:15 **ton**(1) 67:20 **tone**(1) 223:15 **tonight**(1) 217:10 **too**(6) 44:12 48:10 48:16 63:10 76:18 **took**(5) 35:25 171:25 182:17 182:23 211:6 **top**(5) 123:15 124:19 126:16 127:20 176:18 **topic**(1) 190:22 **topics**(1) 222:7 **torres**(10) 4:4 7:17 13:25 22:14 35:10 111:10 141:23 151:11 196:2 209:11 **total**(16) 124:4 124:20 124:24 124:25 125:1 126:1 127:9 127:12 127:23 128:15 134:9 135:16 138:3 139:2 190:11 224:3 **totaling**(1) 127:8 **totality**(2) 54:18 97:21 **totally**(1) 76:24 **totals**(1) 194:16 **touch**(1) 81:11 **town**(1) 18:1 **to"**(2) 98:7 168:23 **trade**(73) 78:9 81:24 82:2 115:14 115:14 134:5 147:4 148:19 148:20 148:24 149:13 163:18 165:8 165:16 165:17 165:21 165:23 166:2 166:6 166:7 166:7 166:10 166:14 166:17 167:4 167:5 167:8 167:8 167:9 167:10 167:11 167:15 169:22 170:1 170:4 170:6 170:9 170:10 170:21 172:7 173:4 173:7 173:7 173:8 175:1 175:12 177:25 180:5 180:6 180:9 180:20 180:24 181:4 181:5 181:14 181:20 181:21 181:21 183:5 184:1 184:3 184:5 184:6 184:12 185:11 185:13 185:20 186:6 186:11 188:19 188:24 198:19 198:25 |
| **things**(31) 15:10 25:17 28:6 43:10 59:12 61:9 65:8 76:2 76:8 76:16 77:24 86:3 98:16 101:17 106:9 106:19 108:25 109:4 115:21 118:10 118:21 131:17 150:14 161:25 162:17 166:24 167:11 169:16 187:20 205:16 210:11 | | | | | | | |
| **think**(195) 10:19 11:4 11:10 11:12 11:16 11:23 11:24 12:6 12:13 16:20 17:22 17:22 18:7 19:15 20:10 20:10 20:14 21:4 21:6 22:4 23:22 23:23 23:25 24:1 24:8 24:19 26:18 27:24 28:8 29:18 29:21 31:2 32:9 33:9 34:6 34:8 34:9 34:14 34:22 37:18 37:23 38:14 38:17 38:19 39:15 39:21 40:8 40:8 40:16 40:19 41:10 41:11 54:1 55:13 55:14 58:14 67:18 74:5 80:7 80:25 82:7 82:24 84:2 84:5 84:11 84:14 84:15 85:19 87:1 87:1 87:19 88:11 88:18 89:1 89:24 91:13 93:8 94:3 94:12 94:19 95:8 95:11 95:12 96:4 96:11 96:12 97:19 98:1 98:2 99:22 100:6 101:19 102:6 102:11 102:13 102:14 102:19 102:20 108:18 110:1 110:1 111:1 111:3 113:7 113:16 113:24 113:25 115:10 115:10 116:13 118:20 119:2 121:17 126:14 130:17 130:25 140:8 141:9 145:10 146:21 149:19 149:22 149:23 149:25 152:18 153:11 154:3 159:6 160:24 162:17 164:22 165:2 169:24 170:5 176:20 176:23 178:3 178:10 178:23 179:8 182:18 183:6 183:8 184:15 184:18 184:23 185:10 185:10 185:11 186:5 186:8 186:18 186:23 188:18 188:20 189:8 189:10 189:11 190:22 191:23 192:14 192:15 192:17 195:13 196:10 196:21 196:23 197:6 197:23 197:23 198:4 199:3 199:10 199:11 199:12 200:24 201:2 202:18 205:17 205:21 208:23 212:14 213:6 213:20 214:1 216:21 217:11 218:24 220:7 220:20 221:5 223:10 223:17 224:12 | | | | | | | |
| **thinking**(3) 12:7 110:10 224:11 | | | | **though**(10) 21:16 65:18 70:13 82:2 130:15 146:15 149:1 152:12 190:7 213:17 | | | |
| **thinks**(2) 153:17 211:2 | | | | **thought**(12) 12:4 12:7 18:1 19:5 34:1 81:17 112:22 168:19 174:16 194:6 194:21 223:25 | | | |
| **third**(21) 4:20 34:5 34:5 34:5 45:1 46:12 50:3 56:1 59:15 83:23 83:24 94:9 101:1 123:22 124:19 124:20 125:10 125:19 166:18 190:17 199:5 209:16 | | | | **three**(25) 15:19 29:9 68:16 68:24 69:1 69:2 70:18 88:18 95:21 116:8 125:11 125:13 126:23 127:17 127:23 128:14 133:9 133:24 136:1 156:20 166:8 169:24 203:3 217:21 217:23 | | | |
| **third-party**(2) 166:11 167:6 | | **this**(98) 174:10 174:11 175:12 178:25 179:2 179:14 179:16 180:4 180:4 180:15 180:18 180:25 180:25 182:4 183:6 184:2 184:15 184:17 186:13 187:13 187:25 188:7 188:21 189:4 189:5 189:15 189:19 190:6 191:1 191:14 192:13 193:12 193:12 193:16 193:22 194:2 194:2 194:7 194:7 194:9 194:10 194:11 194:13 194:15 194:19 195:21 196:4 198:21 199:7 199:19 199:20 201:22 202:6 202:8 202:8 202:8 202:19 202:20 202:25 203:4 203:5 203:12 203:14 204:9 204:10 205:24 206:7 206:7 206:12 206:17 207:2 207:6 207:11 207:12 209:14 210:6 210:8 210:13 210:13 210:14 210:20 211:7 211:8 212:15 213:10 213:13 213:14 215:8 217:15 217:25 218:13 218:24 219:11 219:13 219:20 221:20 222:20 223:9 | | **through**(54) 10:9 14:24 15:10 17:19 19:7 21:26 34:19 35:1 35:5 37:13 43:15 62:6 69:6 71:17 72:20 73:8 74:18 102:8 103:25 103:25 103:25 104:14 115:6 115:25 117:16 117:17 119:20 121:8 123:21 129:21 130:19 147:14 150:3 156:4 157:5 158:10 158:15 158:21 159:3 167:1 180:15 182:11 192:14 192:18 193:4 193:5 196:23 196:25 198:12 202:22 216:10 216:12 217:12 | | | |
| | | | | **throughout**(1) 211:11 | | | |
| | | | | **throw**(4) 21:18 75:23 109:12 109:13 | | | |
| | | | | **thrust**(1) 165:9 | | | |
| | | | | **ticket**(1) 32:11 | | **trademark**(1) 98:11 | |
| | | | | **tied**(2) 112:10 114:1 | | **trades**(1) 170:17 | |
| | | | | **ties**(1) 71:17 | | **traditional**(2) 168:17 168:20 | |
| | | | | **time**(76) 14:15 15:11 16:21 17:23 19:6 20:11 20:17 28:7 29:15 30:24 31:8 39:16 40:4 44:2 65:1 69:22 71:4 71:4 72:8 78:14 80:8 81:5 87:24 93:24 103:3 128:20 139:25 141:3 143:9 152:21 153:6 156:3 156:4 157:20 160:8 161:1 164:10 170:3 180:19 182:17 183:21 183:23 184:21 184:23 185:8 186:16 188:1 192:9 196:6 196:8 196:10 199:18 201:2 204:12 204:17 204:24 205:14 206:16 206:18 209:22 209:3 209:4 209:7 209:21 213:10 214:2 214:8 214:11 215:10 217:12 218:25 221:1 221:8 221:18 | | **training**(1) 35:25 | |
| | | | | | | **trains**(1) 12:4 | |
| | | | | | | **transactions**(9) 43:6 43:8 43:18 70:21 78:15 82:20 90:25 91:1 173:6 | |
| | | | | | | **transcriber**(1) 224:25 | |
| | | | | | | **transcript**(5) 1:16 1:53 96:15 175:4 224:21 | |
| | | | | | | **transcription**(2) 1:46 1:53 | |
| | | | | | | **transfer**(8) 33:13 50:3 50:15 50:18 51:16 59:19 59:22 60:8 | |
| | | | | **time-honored**(1) 216:9 | | **transferee**(3) 56:1 57:19 60:1 | |
| | | | | | | **transferees**(2) 56:8 58:2 | |
| | | | | **times**(32) 3:32 92:1 113:1 136:13 139:15 139:20 143:8 145:22 147:13 147:18 148:3 148:9 148:12 148:18 148:20 152:6 152:12 152:24 160:3 161:12 164:10 164:12 164:16 172:25 175:10 180:22 182:12 182:21 183:17 183:22 198:12 204:7 | | **translate**(4) 137:4 137:6 138:20 179:10 | |
| | | | | | | **translating**(1) 139:7 | |
| | | | | | | **traveling**(1) 221:6 | |
| | | | | | | **trb**(1) 191:22 | |
| | | | | | | **treat**(2) 78:9 191:7 | |
| | | | | | | **treated**(5) 84:20 113:14 118:14 189:25 190:2 | |
| | | | | **timothy**(1) 8:40 | | **treating**(2) 190:18 190:24 | |
| | | | | **title**(2) 123:21 133:5 | | **treatise**(2) 114:11 170:16 | |
| | | | | **titled**(2) 133:1 133:6 | | **treatises**(7) 113:15 114:6 114:12 114:12 118:19 153:15 170:16 | |
| | | | | **today**(35) 10:14 13:10 13:20 17:15 22:20 23:19 24:13 25:3 30:13 32:7 47:7 62:12 79:16 87:4 89:19 91:22 97:17 101:16 112:13 124:15 148:6 160:1 160:5 162:4 189:6 190:6 191:1 192:16 214:23 215:8 215:10 215:15 215:17 223:7 224:16 | | **treatment**(6) 112:11 112:25 152:5 152:5 160:2 206:25 | |
| | | | | **thomas**(1) 2:21 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| trial(26) 16:9 67:19 67:25 103:18 104:5 122:8 122:18 122:20 123:23 126:4 126:16 126:20 126:22 127:5 127:18 128:2 128:16 129:18 129:22 133:17 134:2 134:4 138:20 138:22 142:2 222:9 | | two(87) 16:11 18:18 35:12 37:5 37:7 37:8 44:14 46:16 49:15 52:24 53:19 54:1 54:16 56:15 58:4 58:4 60:17 61:9 61:19 62:8 68:15 71:8 71:9 72:3 72:3 72:6 73:3 73:9 77:14 79:15 79:15 82:8 82:20 106:9 106:17 107:7 108:5 114:5 114:6 116:7 121:24 124:7 126:14 128:6 128:6 129:13 133:24 134:3 136:25 138:24 139:4 142:11 155:6 156:5 156:20 163:13 164:2 165:2 165:19 168:22 169:21 169:21 169:24 172:15 173:21 174:24 176:2 176:18 177:21 180:3 181:23 193:12 194:6 194:11 194:25 199:15 204:13 204:22 208:2 208:2 208:3 213:10 217:5 217:20 218:18 223:3 224:1 | | understanding(12) 10:22 19:17 34:21 36:15 67:14 121:9 134:23 136:12 141:11 141:16 141:17 170:10 | | valuation(10) 214:3 214:12 215:3 215:9 219:1 219:3 219:21 219:22 220:6 220:8 | |
| | | | | understands(1) 65:3 | | value(3) 120:6 214:17 219:18 | |
| | | | | understood(5) 31:19 54:22 99:23 130:9 133:18 | | valued(1) 87:25 | |
| | | | | | | valuing(1) 215:19 | |
| trials(1) 214:6 | | | | | | vanish(1) 107:24 | |
| trib(1) 90:15 | | | | undertakes(1) 172:12 | | variable(4) 70:23 71:3 78:6 96:23 | |
| tribune(111) 1:7 5:28 5:37 28:22 29:22 39:22 40:10 40:13 40:14 40:15 44:12 44:16 44:19 44:20 46:11 46:22 47:25 51:13 53:4 53:5 54:21 54:23 55:1 55:19 59:5 59:25 60:16 60:22 60:23 61:5 62:21 62:22 62:23 63:7 63:8 63:12 63:6 63:20 63:21 63:22 63:22 64:17 64:19 70:15 70:18 70:22 70:25 71:2 71:5 71:7 71:9 71:11 72:4 72:7 72:22 72:24 73:12 73:25 75:4 75:19 75:25 76:2 76:4 78:8 79:9 83:16 83:22 83:22 86:14 89:5 89:13 90:2 90:15 93:2 93:2 97:3 113:1 119:22 131:10 135:12 136:14 139:15 139:19 139:22 139:24 142:15 142:22 143:7 148:2 148:4 148:18 148:20 152:16 152:24 161:14 161:22 164:12 165:12 171:22 172:14 172:20 172:25 175:13 182:5 182:13 182:16 182:19 182:23 182:23 182:25 197:25 | | two-thirds(2) 125:18 190:16 two-week(1) 195:9 type(12) 12:5 65:25 106:5 106:21 107:8 115:20 122:16 136:15 137:6 168:23 173:8 188:16 types(9) 117:2 128:22 137:21 163:22 168:20 168:22 173:23 188:16 199:8 typical(1) 144:20 typically(1) 136:8 u.s(1) 106:14 ubs(2) 8:18 8:18 ucc-1(1) 98:11 ufta(1) 31:16 uh-huh(1) 137:20 ultimate(5) 62:21 151:18 184:8 203:23 207:3 ultimately(6) 96:7 140:1 158:5 184:2 190:14 215:23 um-hum(3) 118:12 133:3 140:11 unambiguous(4) 54:11 60:10 60:14 162:3 unambiguously(2) 54:9 181:23 unavailable(1) 54:24 unclear(2) 146:9 219:11 unconfirmable(1) 191:1 unconstitutional(1) 211:9 undefined(1) 109:10 under(165) 16:24 19:2 20:25 24:25 26:12 31:7 31:16 32:23 33:25 34:2 34:7 34:15 38:2 38:25 39:24 41:3 44:18 45:4 45:8 45:11 45:14 46:13 46:20 49:8 49:18 49:22 50:13 56:3 56:3 58:15 59:17 62:22 63:14 63:15 65:16 66:19 69:20 69:23 69:24 70:20 71:3 71:10 71:12 71:20 71:24 72:5 73:14 74:1 74:7 74:7 74:14 75:21 76:16 76:18 76:20 77:6 77:9 77:17 78:12 78:24 78:21 78:24 78:25 79:22 80:15 81:6 81:9 81:14 82:15 82:18 83:1 83:10 84:21 85:22 86:5 86:23 86:24 87:23 88:9 88:15 88:21 89:21 90:11 90:16 90:20 90:24 91:21 92:12 93:12 93:13 94:5 94:6 95:4 97:3 97:6 99:20 100:21 100:23 105:5 105:17 105:18 105:19 106:10 106:12 110:1 110:20 120:21 123:21 125:18 136:13 138:11 138:15 138:15 138:24 140:24 141:2 142:3 142:4 142:10 156:24 157:6 157:7 157:11 157:13 161:6 163:14 165:10 166:16 168:15 168:16 169:4 169:5 171:15 172:23 173:14 174:9 174:18 177:19 177:20 178:9 182:13 183:1 183:2 186:3 188:23 189:1 189:24 190:25 191:6 191:25 193:10 197:22 197:24 199:6 199:20 207:22 207:24 208:11 210:23 211:13 211:14 211:23 216:20 216:22 | | undisputed(2) 70:10 70:17 undo(1) 43:7 unemployment(1) 128:21 unequivocal(1) 50:8 unexceptional(1) 218:14 unfair(2) 192:12 196:13 unfortunate(2) 100:6 163:3 unfunded(1) 23:1 unidentified(1) 158:18 uniform(1) 211:11 unimpairment(1) 212:10 united(4) 1:1 1:18 98:11 121:11 unknown(5) 21:13 22:18 145:5 155:8 unknowns(1) 205:14 unless(14) 21:7 37:9 37:11 44:17 67:8 81:10 93:18 97:16 146:4 203:11 207:6 207:22 216:14 216:16 unlike(5) 47:24 47:25 76:9 96:25 212:3 unliquidated(1) 194:20 unnecessarily(1) 154:4 unpaid(2) 55:17 98:10 unqualified(2) 25:18 25:19 unripe(1) 204:24 unsecured(6) 2:11 5:5 85:16 182:9 182:12 191:8 unsure(1) 98:25 untenable(1) 89:20 untethered(1) 46:1 until(28) 23:10 37:9 37:11 37:20 43:24 44:17 53:5 57:15 58:22 59:13 61:20 63:22 65:5 66:21 66:22 67:18 96:10 164:14 203:21 204:24 208:5 208:10 209:21 210:1 212:17 219:5 219:16 219:16 unusual(2) 210:24 221:14 update(1) 220:6 updated(1) 220:1 updating(2) 219:22 220:11 upheld(1) 30:23 upon(30) 26:14 26:15 37:3 46:8 61:10 70:17 93:14 104:16 104:21 110:2 110:22 110:24 135:15 135:16 138:7 140:21 143:19 146:22 147:12 154:12 160:19 164:23 168:3 168:24 171:9 174:11 184:3 192:4 199:23 215:6 usage(3) 95:9 143:14 143:15 usage."(1) 116:9 use(17) 45:18 67:23 87:22 100:1 100:2 100:7 115:22 117:5 163:9 165:18 165:20 165:23 167:2 167:3 168:2 185:13 196:11 used(9) 39:17 51:19 100:5 116:23 153:7 178:1 178:2 180:8 194:18 useful(1) 207:1 uses(2) 71:19 77:3 using(1) 81:2 usually(4) 23:1 114:13 117:23 210:25 utilization(1) 196:6 utilize(1) 168:7 utilized(1) 220:10 utterly(1) 99:3 vacation(1) 128:20 vail(1) 6:24 valley(1) 107:21 valuable(2) 55:2 171:9 | | various(13) 71:9 71:11 102:25 103:7 103:8 104:3 105:22 118:7 120:23 128:20 136:13 140:17 149:19 vary(2) 149:9 149:17 vast(1) 102:15 vendor(3) 166:7 166:13 166:18 vendors(4) 166:14 166:18 167:6 167:15 vendors."(1) 166:11 ventured(1) 17:17 versus(3) 91:18 134:25 219:24 very(58) 12:15 14:20 14:22 15:14 22:23 22:23 23:12 23:13 24:24 27:23 29:23 30:9 31:2 32:2 38:9 39:15 43:8 45:23 49:10 52:4 55:13 55:16 56:16 56:22 57:4 57:14 61:8 62:23 63:24 64:10 68:13 71:15 72:15 78:22 86:18 87:3 92:13 93:23 94:20 96:12 100:17 106:4 107:4 120:13 126:16 129:12 163:2 166:12 169:10 172:8 174:10 180:24 180:24 186:3 203:22 215:17 222:1 224:15 vested(1) 188:9 via(1) 44:15 viable(1) 171:9 victims(1) 48:5 view(8) 23:7 23:7 37:25 39:21 128:4 181:23 190:5 220:7 viewed(1) 165:3 viewing(1) 37:18 views(3) 30:6 149:1 212:24 violate(1) 40:5 violated(1) 62:12 violates(1) 211:10 violation(4) 58:19 61:24 62:4 62:18 violations(1) 58:24 virtue(3) 84:25 85:16 89:16 visibility(1) 143:8 volumes(1) 96:6 vonnegut(1) 2:50 vote(2) 31:7 173:1 wage(2) 106:8 166:12 wages(8) 106:22 106:25 107:10 107:20 108:2 165:4 166:10 166:19 wait(5) 215:1 215:4 215:5 215:8 215:22 waiting(1) 29:4 walk(1) 217:11 walked(1) 73:8 walrath(1) 30:5 wamu(3) 28:21 29:18 29:23 want(45) 14:22 15:12 15:14 37:3 40:5 41:10 42:25 49:6 58:13 64:24 65:19 68:7 87:24 93:9 99:13 100:8 101:10 101:20 101:21 112:12 112:17 113:21 114:4 115:20 133:18 145:18 151:15 152:14 153:17 163:7 168:3 175:18 181:9 190:4 192:8 195:15 195:15 196:5 199:5 200:1 218:11 219:3 221:3 221:19 222:7 wanted(15) 10:25 17:6 19:19 61:12 93:25 100:5 152:8 158:14 175:16 176:24 195:10 197:5 210:11 223:10 223:17 wanting(1) 94:9 wants(11) 21:16 45:6 67:1 104:7 110:9 110:18 111:18 113:6 114:13 201:6 210:11 wardwell(2) 2:49 8:36 | |
| tribune's(2) 82:10 96:23 tribune's(17) 22:17 39:25 55:8 60:16 63:3 70:16 71:10 71:12 71:20 73:11 74:6 74:14 78:11 78:13 78:24 79:21 141:14 | | | | | | | |
| tried(6) 11:21 54:5 64:19 146:10 146:16 171:16 tries(3) 37:17 38:19 195:2 trouble(1) 107:6 troubled(1) 198:3 true(6) 25:13 99:17 150:13 204:2 204:16 210:5 trust(63) 2:4 19:2 19:9 19:10 20:6 20:9 20:20 20:20 20:21 25:2 25:2 25:7 25:7 25:14 26:10 26:22 28:4 28:12 31:1 32:3 32:12 33:4 33:5 33:14 36:7 36:7 36:8 38:15 39:1 40:12 41:7 41:7 46:14 49:17 68:6 74:22 75:7 75:23 80:6 93:13 93:14 93:22 99:13 114:21 148:17 166:1 166:8 170:3 191:12 194:3 195:5 195:17 195:20 197:6 197:15 198:6 201:23 202:12 205:13 209:4 209:20 209:21 212:22 trustee(11) 20:25 32:19 68:6 83:16 121:11 199:15 199:20 199:23 199:25 200:2 207:3 trusteed(1) 188:10 trustees(10) 22:17 74:23 75:23 76:14 78:2 80:6 82:3 99:19 200:1 202:21 trustee's(1) 77:4 trustworthiness(1) 110:5 try(13) 18:8 21:17 31:13 54:17 100:1 100:7 111:5 117:5 156:19 162:20 179:24 191:22 192:8 trying(16) 28:6 38:25 39:12 49:1 59:21 97:19 115:24 116:11 116:22 117:4 132:3 132:4 149:16 150:20 161:1 167:13 turn(37) 21:7 21:8 25:11 33:22 35:6 37:3 37:16 38:20 39:7 40:17 46:9 49:22 52:17 54:17 58:18 60:9 64:23 71:15 72:9 72:15 72:25 88:4 88:5 88:8 88:25 90:4 90:7 121:18 123:10 126:14 128:23 129:12 138:9 183:7 185:22 200:5 turned(4) 39:2 90:4 90:22 108:20 turning(4) 21:13 44:4 127:16 137:18 turnover(4) 28:11 34:4 94:9 213:6 turns(1) 86:14 tweed(1) 6:29 | | underlying(8) 15:1 45:24 46:1 110:7 141:7 146:11 156:24 157:2 underscore(1) 93:25 understand(11) 15:18 23:22 40:12 86:21 104:3 148:8 164:22 185:17 185:25 186:1 195:4 | | | | | |

| Word | Page:Line |
|---|---|

**was(232)** 11:21 16:2 17:18 21:13 23:22 28:6 28:9 28:13 30:4 30:5 30:8 31:6 31:8 31:12 37:25 38:4 38:5 41:12 41:13 41:13 41:17 41:17 41:19 41:21 42:5 43:9 47:25 48:1 48:3 48:3 49:24 50:7 50:8 50:22 51:15 52:14 52:18 52:18 52:20 52:23 52:25 53:21 54:14 62:9 64:1 64:9 64:9 64:12 64:14 66:2 67:14 67:19 67:24 68:10 68:18 70:20 71:25 75:12 78:1 79:8 79:8 79:10 79:10 79:11 80:12 80:18 80:25 82:24 83:8 83:8 83:15 85:12 86:7 86:11 86:18 86:19 89:24 90:15 90:15 90:20 91:12 91:19 91:24 91:25 92:1 94:21 95:25 96:1 96:15 97:10 98:1 99:22 100:12 102:19 102:20 102:25 106:20 108:2 108:14 108:19 108:21 110:2 110:3 112:21 117:1 117:22 122:9 122:12 126:15 132:4 133:20 134:19 135:14 139:8 139:10 140:16 140:22 140:22 145:22 146:5 146:12 146:16 147:16 147:19 148:1 148:8 150:24 155:2 156:13 156:18 156:19 157:14 157:16 157:19 159:1 159:9 159:12 159:13 159:20 159:23 160:12 161:4 161:18 161:21 164:9 164:10 164:10 164:14 164:15 165:11 168:8 168:8 168:10 168:12 168:12 168:13 169:2 169:17 169:24 170:2 171:22 171:23 171:24 171:25 172:2 172:13 172:15 172:19 172:21 173:3 173:13 174:2 174:3 174:16 175:5 175:6 175:6 175:8 175:13 175:14 175:14 175:23 176:9 176:15 176:25 178:18 183:9 183:10 183:11 184:23 185:4 185:4 185:6 185:9 186:17 187:17 187:18 189:4 189:6 189:8 189:13 189:17 189:19 189:21 190:13 190:16 190:19 194:21 194:23 199:13 201:7 201:20 204:19 205:3 210:3 213:19 214:1 214:3 214:18 215:23 216:19 217:2 217:18 219:11 219:16 220:2 220:8 220:12 222:12 223:21 224:11 224:18

**washington(2)** 1:29 2:30
**wasn't(2)** 96:10 100:1
**wasn't(8)** 52:22 52:22 76:6 147:19 153:1 175:5 189:6 224:1

**waste(1)** 44:2
**watershed(1)** 93:23
**way(58)** 11:4 14:12 16:14 19:20 23:16 23:17 28:16 30:9 36:19 38:8 40:1 48:4 59:1 62:24 64:13 65:17 66:4 66:4 70:9 82:13 82:21 84:19 90:12 94:17 100:12 113:21 118:14 119:4 125:18 130:6 130:10 142:18 142:21 142:23 147:9 157:18 161:24 166:23 167:23 169:14 169:20 173:14 175:12 179:15 179:16 179:23 180:13 180:15 184:15 184:18 184:18 189:13 202:22 204:23 205:22 213:23 214:18 215:14
**ways(4)** 97:2 166:5 180:10 180:22
**we'd(3)** 90:17 107:7 119:5
**we'll(1)** 112:18
**we're(13)** 91:7 94:6 97:19 98:24 101:19 102:6 104:5 108:10 108:10 110:10 110:17 113:12 115:2
**we've(9)** 83:12 85:25 91:2 95:7 100:5 102:9 103:1 112:15 120:1

**website(3)** 106:1 194:10 194:11
**wednesday(1)** 10:2
**week(7)** 11:22 11:25 18:16 67:18 217:25 218:21 219:20

**weekend(4)** 10:20 11:18 11:23 18:12
**weight(3)** 113:8 118:23 118:24
**weiss(1)** 7:29
**weitman(1)** 5:40

**well(111)** 12:8 12:18 13:5 15:15 15:23 19:25 24:12 29:22 31:17 32:10 32:15 35:21 35:25 40:5 48:23 53:9 55:18 58:5 59:18 63:14 68:13 74:22 80:15 80:18 81:2 83:6 86:7 89:10 89:12 92:5 92:9 93:23 94:15 94:20 95:24 96:12 98:1 102:24 103:5 103:15 106:3 107:2 110:17 110:18 113:3 111:19 112:2 113:19 113:19 113:25 114:3 114:9 115:2 118:15 118:20 119:1 127:3 128:20 129:6 130:6 130:10 130:16 131:19 131:22 132:25 135:15 136:9 137:16 140:16 146:5 146:7 148:10 150:6 150:17 150:18 151:15 153:6 154:13 154:16 155:9 161:17 162:8 163:20 167:8 167:20 177:16 181:2 185:10 191:15 191:22 192:11 192:24 193:2 193:7 193:8 198:7 199:4 200:19 200:21 205:19 207:3 208:22 212:18 213:21 215:1 215:21 219:15 219:19 220:8 221:4 224:8

**wells(1)** 8:14
**went(9)** 60:4 86:23 104:17 111:15 136:4 153:12 199:19 207:23 210:17

**were(110)** 10:26 12:12 15:5 18:17 22:11 24:4 25:1 25:1 26:13 31:7 31:25 34:2 41:18 47:21 50:10 51:12 51:14 53:3 53:12 53:12 53:13 54:9 64:5 66:20 67:17 79:13 79:14 82:18 87:12 87:14 87:15 89:7 89:7 90:19 91:21 99:23 104:1 104:15 104:20 106:1 107:16 107:17 108:1 112:22 114:6 127:23 130:4 133:12 136:14 139:10 140:24 141:10 141:11 141:14 141:15 141:17 142:22 143:17 143:21 148:19 148:24 150:14 151:1 156:2 156:17 160:7 161:9 161:10 161:11 161:13 161:14 168:13 169:19 169:19 169:20 169:22 170:8 170:10 170:11 171:21 171:21 172:24 177:23 181:8 181:12 183:21 183:23 186:9 187:6 189:24 190:1 190:3 193:14 194:7 194:22 194:22 194:24 195:11 204:15 204:17 204:21 204:23 210:1 210:3 210:16 220:3 223:3 223:6 223:15 223:20

**weren't(3)** 82:17 87:13 101:12
**weren't(1)** 166:22
**west(1)** 1:33
**western(1)** 115:18
**westlaw(1)** 104:20
**we'd(10)** 10:18 17:18 75:21 129:22 145:2 157:18 171:4 199:22 215:11 221:20
**we'll(22)** 14:21 15:6 20:3 47:4 55:12 58:7 58:9 58:17 68:20 69:23 70:8 130:21 145:19 155:11 192:15 192:18 193:4 193:5 195:23 201:2 201:11 215:21

**we're(58)** 15:7 17:16 19:3 19:3 20:17 21:22 22:16 24:4 29:4 29:5 29:7 30:15 31:2 31:9 32:21 33:1 33:9 34:14 36:2 39:4 41:21 44:3 47:7 48:12 49:1 49:5 50:16 50:25 53:10 54:7 57:3 57:4 57:8 62:2 62:10 63:16 64:13 139:7 147:2 149:10 149:16 151:25 160:21 161:20 161:25 162:7 163:12 165:23 165:24 170:4 171:18 190:23 205:19 212:22 213:5 213:13 219:14 220:13

**we've(47)** 17:3 28:20 32:20 32:24 45:1 47:13 58:18 60:24 66:19 71:16 72:17 72:21 121:13 132:3 145:24 149:12 149:13 149:19 149:14 149:14 149:24 162:15 162:23 163:6 163:13 164:24 165:2 166:4 171:6 171:8 172:8 172:9 173:11 175:15 178:10 183:13 185:15 185:24 186:8 187:12 192:14 196:24 198:11 206:19 210:6 215:20 220:25

**wharton(1)** 7:29

**what(246)** 10:16 11:21 13:15 15:20 16:1 17:3 17:4 17:15 19:24 21:24 22:25 23:22 24:15 26:11 29:18 30:4 32:20 37:25 39:5 41:2 44:18 45:15 48:3 49:16 50:24 51:12 51:18 52:2 52:6 52:19 53:2 53:9 53:10 53:11 53:13 53:15 54:6 54:15 54:19 54:19 55:3 55:4 55:6 56:11 56:21 56:23 57:3 59:10 60:5 61:7 61:8 61:15 62:3 62:9 62:23 63:14 65:2 65:10 66:8 66:9 73:1 74:5 74:21 75:1 78:17 79:7 79:7 80:7 80:22 82:4 82:22 86:1 86:9 86:13 88:2 88:15 89:13 89:21 90:17 90:23 93:9 93:17 94:21 94:23 95:25 96:3 96:14 97:19 98:7 104:7 105:14 108:15 108:21 109:20 109:23 110:10 110:23 110:24 111:6 112:11 113:4 113:10 113:18 113:20 114:6 115:8 115:24 116:25 116:25 117:1 117:22 118:9 118:17 119:15 119:17 119:24 120:10 121:6 122:18 123:24 125:4 126:20 126:25 127:24 128:16 129:3 131:15 131:16 132:4 132:5 132:5 132:10 134:1 134:19 135:8 136:4 137:21 137:21 139:9 140:21 140:23 141:1 142:1 143:8 144:4 147:10 147:11 147:11 148:15 148:16 149:16 149:17 149:18 150:5 150:12 150:13 150:14 150:15 150:16 150:17 151:1 152:14 153:11 156:6 156:15 156:18 156:23 156:23 156:24 157:16 160:2 160:4 161:2 161:16 161:17 161:23 161:26 162:6 162:10 162:15 162:15 162:20 162:22 163:1 163:4 164:22 165:24 165:25 166:5 166:15 167:12 169:8 169:19 169:20 170:14 170:18 170:21 171:25 175:8 176:4 176:6 176:25 179:14 180:10 180:17 181:11 181:21 181:25 185:13 185:14 185:15 185:16 185:16 185:21 188:2 190:4 190:16 191:17 192:8 192:13 194:12 195:12 197:22 198:14 200:21 200:23 201:7 201:23 201:23 202:3 202:6 208:19 211:1 211:6 212:4 213:5 212:14 215:9 216:9 218:8 219:20 219:24 220:8 220:13 221:10 223:9 223:20

**what's(3)** 109:22 114:3 115:19
**whatever(7)** 20:13 41:16 118:23 146:13 168:2 177:4 203:23

**whatever's(1)** 21:18
**whatsoever(3)** 35:17 43:20 208:6
**what's(19)** 13:12 45:21 64:15 65:21 72:19 72:24 124:2 125:24 128:8 131:13 144:9 157:17 162:20 162:24 163:21 180:19 184:24 193:2 195:4

**when(76)** 12:2 12:9 14:14 15:15 16:19 20:2 20:3 21:19 24:1 24:14 24:19 25:8 25:10 27:25 30:17 31:6 31:11 48:2 50:21 51:13 54:14 54:18 58:23 61:6 61:13 64:1 64:5 65:12 67:19 68:12 73:7 74:4 79:8 80:12 81:17 84:1 85:18 96:1 97:14 108:21 113:15 115:10 116:16 147:2 156:6 161:9 161:12 161:17 161:22 162:2 162:9 166:15 171:21 179:1 179:20 179:20 181:15 181:23 182:11 182:17 184:24 190:21 192:21 207:4 208:24 210:2 210:3 212:5 212:8 214:4 214:6 214:10 214:19 218:18 223:10 223:11

**where(60)** 11:13 33:1 33:8 33:8 39:18 41:14 46:21 47:7 47:8 47:17 53:8 58:21 60:14 62:6 67:5 89:19 92:17 93:15 96:25 98:23 106:20 112:18 112:23 123:19 127:4 137:13 137:23 140:3 143:12 144:18 148:23 149:15 152:19 156:15 159:10 163:11 163:12 164:17 165:23 166:21 171:17 171:17 171:10 174:7 179:9 204:20 204:23 205:16 212:4 212:6 214:23 215:11 219:1 220:11

**whereas(3)** 31:11 95:7 224:6
**whereby(1)** 29:7

**wherein(1)** 171:1
**whereupon(1)** 224:18
**whether(83)** 12:1 18:25 19:13 27:8 34:4 39:4 41:15 41:16 46:20 50:16 51:1 69:19 70:1 87:6 87:14 87:14 87:22 89:5 89:5 92:7 92:16 92:18 93:9 95:9 100:23 106:5 107:23 110:8 110:8 114:25 116:21 118:18 130:20 132:17 135:1 135:12 141:11 146:16 146:23 147:8 147:16 147:21 148:24 149:20 150:7 154:11 157:6 161:24 177:18 180:2 184:2 184:8 184:12 184:20 184:25 185:1 185:3 185:4 185:6 186:8 186:10 186:12 186:19 189:16 191:25 194:24 200:17 204:1 205:4 205:20 205:24 206:14 206:21 206:23 208:25 211:15 213:22 215:2 215:4 215:9 215:9 218:12 219:11 220:4

**which(196)** 11:15 14:25 17:20 19:19 24:2 24:3 26:14 32:3 35:16 35:21 36:3 36:19 36:21 38:20 40:3 41:13 42:4 42:5 45:16 45:17 45:22 46:5 47:3 47:14 47:19 49:8 51:5 51:21 51:21 52:11 53:25 54:25 55:12 56:14 58:4 59:4 59:6 59:21 59:23 60:23 60:24 60:25 61:6 61:11 61:13 61:15 61:16 61:19 62:13 62:21 64:16 64:25 65:4 65:23 70:10 71:22 71:24 72:7 72:9 72:12 72:16 72:20 73:12 76:8 76:25 77:4 78:6 82:11 83:23 86:21 87:9 87:16 93:12 93:12 95:18 98:18 102:7 103:18 103:18 104:3 104:5 104:20 105:1 105:11 105:13 106:1 106:12 106:20 107:16 108:1 108:8 108:8 108:18 108:19 109:1 109:14 109:15 109:20 109:23 112:21 113:2 115:12 115:15 115:20 116:15 118:8 118:8 121:9 121:17 124:7 124:13 124:17 127:3 127:17 127:17 128:2 128:25 131:2 133:16 135:13 136:19 138:10 138:13 139:8 140:9 146:8 147:17 153:3 153:14 154:2 156:12 157:3 158:11 158:13 160:3 162:3 162:21 163:10 163:21 163:25 163:25 166:16 170:8 170:12 171:3 171:8 171:16 172:10 172:15 172:16 173:8 174:11 174:18 176:2 176:9 176:15 178:11 181:3 181:19 182:25 183:1 184:7 186:5 187:16 187:24 188:7 188:18 189:10 189:18 189:22 190:22 191:23 192:12 192:17 193:5 197:6 197:11 197:11 197:12 199:13 199:18 199:21 199:23 203:2 203:8 204:17 209:15 210:16 210:24 211:24 217:2 217:24 218:16 218:17 220:17 222:5

**whichever(1)** 221:2
**while(8)** 32:25 78:21 117:18 158:9 202:6 204:16 206:14 215:5

**white(2)** 4:21 8:14
**whittman(26)** 13:11 13:15 13:22 15:18 15:18 104:6 119:5 119:6 119:8 119:13 131:5 131:15 132:2 134:11 139:14 156:21 160:1 160:1 160:10 161:8 161:16 167:9 171:16 186:24 195:11 195:22

**whittman's(2)** 17:3 145:6
**who(49)** 15:20 17:4 28:16 28:19 39:3 47:8 60:6 66:23 80:23 83:21 84:17 94:4 95:14 95:22 95:24 96:5 99:22 107:18 113:13 113:17 114:12 122:9 151:20 152:11 152:11 161:19 162:8 165:18 169:18 176:10 176:10 176:21 184:5 184:10 184:10 185:1 194:3 194:12 194:22 195:12 200:5 201:8 202:1 202:3 202:21 203:3 214:22 218:9

**who's(1)** 95:15
**whole(15)** 16:8 28:6 42:8 43:5 57:21 59:3 96:8 111:6 111:17 132:4 147:14 169:11 175:15 185:24 198:13

**whole."(1)** 25:21
**whom(3)** 119:13 180:6 180:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**whose**(1) 43:18
**who'd**(1) 140:15
**who's**(7) 13:21 13:22 55:18 62:15 182:20 199:7 222:8

**why**(28) 47:7 49:10 49:20 77:12 109:14 113:24 117:7 120:19 130:19 146:3 148:10 150:15 169:10 171:16 174:18 176:4 177:7 178:17 190:1 190:24 192:5 194:2 205:9 215:1 215:3 215:5 215:8 218:11

**wickersham**(1) 6:10
**wide**(1) 48:1
**widgets"**(1) 166:9
**wiley**(1) 173:17
**will**(64) 23:23 24:6 27:13 27:14 29:12 31:4 32:10 36:8 38:9 41:9 49:19 57:17 63:11 71:11 96:13 100:22 101:25 107:23 113:8 113:8 113:9 117:24 119:2 130:6 130:25 145:21 147:10 147:18 148:22 149:15 149:17 152:11 154:4 154:12 159:14 163:8 164:18 165:14 175:2 178:6 179:25 185:11 190:10 192:4 193:25 196:4 196:8 197:22 201:19 204:11 205:20 206:15 206:16 206:18 206:21 209:23 210:15 210:25 212:1 214:25 217:24 218:1 218:18 224:16
**william**(1) 2:5
**willis**(1) 3:31
**wilmer**(1) 7:5
**wilmington**(45) 1:11 1:41 2:4 2:7 2:14 2:46 3:9 3:17 3:40 3:46 4:15 4:27 4:41 10:2 19:8 19:10 20:5 20:9 20:20 26:22 28:4 32:3 32:12 33:4 68:6 74:22 75:7 75:23 80:6 93:22 99:13 114:21 148:17 166:1 166:7 170:3 191:12 194:3 195:5 195:17 195:20 197:5 197:14 198:6 212:22

**win**(1) 58:15
**winfree**(1) 3:44
**wish**(9) 130:1 141:20 153:20 207:3 214:1 214:3 214:18 221:23 222:21

**with**(301) 10:6 11:6 11:6 11:9 11:11 11:17 12:13 12:24 13:5 13:8 14:1 14:6 14:8 14:10 14:24 14:25 15:5 15:7 15:7 15:8 15:11 15:13 16:15 17:10 18:7 18:17 19:1 19:20 20:12 20:19 20:22 22:3 22:16 24:5 25:25 27:6 27:15 27:16 27:25 28:8 29:10 30:3 30:4 30:19 31:1 31:10 32:4 32:23 33:14 33:20 35:12 36:16 37:11 39:10 39:14 41:22 42:24 43:3 43:12 44:13 46:8 46:16 47:3 47:6 47:6 47:22 48:1 48:11 51:17 52:20 52:21 52:22 52:23 52:25 53:9 53:15 53:19 53:20 53:25 54:2 55:3 55:4 55:11 56:10 56:25 57:13 59:11 61:10 61:19 63:10 63:18 65:18 66:8 66:25 67:3 67:16 69:25 70:6 70:14 71:24 72:12 72:19 72:23 73:11 73:20 74:4 74:10 75:1 75:8 75:24 76:12 76:15 76:22 76:23 77:2 77:6 79:6 79:16 79:17 79:23 80:1 80:4 83:17 83:17 84:9 86:12 86:20 87:4 88:11 88:16 88:17 88:20 89:1 89:6 89:13 91:6 92:13 94:1 95:8 95:11 96:18 96:23 97:4 97:9 97:23 98:9 99:1 99:11 99:17 100:10 100:22 101:3 101:19 101:19 102:10 102:12 102:15 103:1 104:7 104:14 104:18 105:16 105:24 106:4 108:4 108:7 108:15 108:16 108:25 112:6 112:10 113:4 113:8 114:11 114:14 114:22 116:6 117:18 119:3 119:5 119:15 119:16 119:19 120:1 120:16 121:2 121:6 121:12 124:11 124:19 127:10 127:24 128:11 130:14 130:18 131:1 133:5 134:23 136:13 136:20 138:2 140:12 140:13 140:15 140:16 140:21 141:15 141:22 142:14 142:24 143:16 143:17 143:19 143:21 144:3 144:6 145:11 145:23 147:2 147:17 148:21 149:2 150:22 151:25 152:5 152:7 154:24 156:21 158:22 161:14 161:15 163:6 163:24 165:24 166:18 167:21 168:20 168:22 169:7 169:8 170:6 170:25 173:7 173:11 173:23 174:2 174:12 175:10 176:8 177:4 177:5 177:21 180:3 181:9 181:13 182:17 182:25 183:17 183:24 185:12 185:20 186:8 189:17 189:17 192:1 192:8 192:16 192:16 193:8 193:11 194:25 195:17 195:21 198:4 199:17 200:18 201:17 202:17 205:11 205:22 207:13 208:19 210:9 210:13 211:6 213:13 213:14 214:2 214:13 215:11 215:16 215:16 216:7 216:14 217:8 217:17 218:17 218:21 218:25 219:23 220:1

**withdrawn**(1) 102:21
**within**(37) 11:22 12:14 34:6 46:3 73:13 76:19 78:16 81:20 84:20 89:17 90:8 92:20 106:4 133:6 133:10 142:12 144:21 160:17 176:24 177:17 178:20 179:3 180:2 181:16 182:21 183:1 188:17 189:2 189:2 191:4 191:5 197:1 197:4 198:15 199:7 199:9 211:17
**without**(17) 22:10 35:4 35:5 38:11 69:9 90:13 103:24 110:19 114:11 150:1 154:5 159:7 174:7 174:18 186:18 186:20 193:20

**with"**(3) 88:18 97:20 99:2
**witness**(39) 13:10 14:15 112:19 112:20 113:11 113:13 113:17 113:22 119:8 130:2 130:5 130:12 131:2 132:6 132:14 141:21 141:24 145:9 145:21 147:10 147:21 148:7 149:5 149:7 149:15 150:3 150:10 150:20 151:20 152:8 152:11 153:18 154:3 154:7 209:24 218:9 218:11 219:6 222:7

**witnesses**(7) 11:8 11:12 113:22 218:6 218:18 219:13 222:9

**won**(1) 86:17
**won't**(1) 108:13
**wonder**(2) 117:23 118:23
**wondered**(1) 223:14
**wonderful**(1) 18:20
**wondering**(1) 223:20

**won't**(6) 42:24 47:15 158:1 205:20 206:15 214:25

**word**(7) 25:23 65:3 165:1 165:6 167:13 167:17 167:18

**words**(21) 11:12 42:11 97:20 100:2 105:15 115:22 116:23 156:23 160:16 162:6 162:21 163:2 163:5 165:19 165:20 165:23 165:25 166:16 206:11 208:23 214:23

**work**(10) 42:14 119:18 119:24 120:15 121:1 121:8 140:12 140:15 179:25 215:14

**worked**(6) 43:11 146:23 147:17 167:23 173:15 214:18

**workers**(2) 76:1 76:7
**working**(6) 119:19 120:2 120:8 134:16 165:23 168:2

**works**(1) 23:12
**world**(1) 149:1
**world's**(1) 44:6
**worry**(2) 53:19 53:19
**worst**(1) 172:2
**worth**(4) 170:14 172:4 188:7 190:14
**would**(201) 12:5 12:10 12:11 14:16 16:9 16:14 17:20 18:1 19:5 29:16 30:12 32:9 32:9 38:8 38:18 40:1 40:11 40:16 41:2 41:5 41:7 41:23 41:25 42:3 43:10 43:18 43:19 43:22 45:20 46:18 48:11 49:3 50:2 50:11 50:12 50:13 51:10 53:18 55:11 61:3 63:13 63:21 64:10 65:15 65:16 65:17 65:23 66:18 67:1 67:6 67:15 76:2 76:4 76:23 77:5 77:24 81:18 81:18 84:7 84:16 84:22 84:23 85:7 85:10 87:5 87:12 88:23 89:3 89:5 89:6 89:14 90:14 92:24 92:25 92:25 93:2 94:16 94:17 100:7 100:25 101:22 104:24 105:18 105:21 106:9 107:5 109:18 110:11 114:16 116:14 117:3 117:20 117:21 118:15 125:1 126:3 127:13 127:21 130:11 130:12 132:23 137:15 137:17 137:23 137:25 138:1 138:14 138:16 138:18 138:21 138:23 139:2 139:12 140:1 140:4 140:6 142:18 142:19 142:21 142:23 142:23 143:15 145:21 147:15 149:6 149:25 152:9 152:10 153:18 153:24 156:5 157:21 158:5 158:7 161:2 163:4 164:21 165:3 166:6 168:14 168:16 169:2 169:5 171:23 173:12 174:21 179:8 180:21 182:2 184:20 184:21 184:24 185:16 185:20 186:10 186:16 186:16 187:21 189:1 189:23 190:2 190:2 191:2 191:7 191:13 194:10 195:3 196:25 197:2 197:16 197:19 197:24 197:25 199:21 199:25 205:21 206:17 207:1 208:14 209:7 209:21 211:4 211:16 212:3 212:10 212:12 212:17 213:9 215:13 216:13 216:20 220:12 221:10 222:19 223:4 223:7 223:21

**wouldn't**(2) 89:6 90:16
**wouldn't**(7) 26:14 40:5 57:9 65:25 174:8 174:13 224:9

**would've**(2) 141:3 142:25
**wound**(1) 43:12
**wow**(1) 28:21
**wrap**(2) 54:11 54:12
**wraps**(1) 68:14
**wray**(1) 105:9
**writes**(1) 222:14
**writings**(1) 118:7
**written**(10) 19:20 36:22 41:22 41:23 42:4 162:4 208:13 211:21 212:6 217:24

**wrong**(3) 45:9 82:8 162:7
**wtc**(1) 3:27
**www.diazdata.com**(1) 1:50

**yeah**(9) 111:20 115:7 115:7 125:14 135:20 155:1 201:10 223:5 223:19

**year**(8) 31:14 33:14 120:4 123:8 139:14 160:14 171:23 172:18

**year-end**(2) 123:24 142:24
**years**(6) 47:9 71:8 91:4 145:22 149:2 164:13

**yep**(1) 170:1
**yes**(40) 11:3 13:20 21:12 40:7 49:2 70:3 78:2 107:25 111:3 118:4 120:9 122:17 122:25 123:21 124:19 125:18 126:5 126:19 127:6 127:20 131:9 134:4 134:15 137:1 137:20 139:10 139:17 139:21 140:14 141:8 147:19 152:3 154:23 155:20 155:38 192:25 201:9 207:24 221:12 222:1

**yet**(10) 29:12 30:15 171:2 171:14 174:6 187:11 187:14 198:5 199:3 200:12

**yiddish**(1) 47:16
**yield**(1) 32:10
**york**(21) 2:23 2:39 2:52 3:33 4:9 32:2 47:15 105:10 166:24 207:16 207:23 207:24 207:24 208:1 210:16 210:18 210:22 210:22 210:24 211:5 211:8

**you**(301) 10:19 10:23 10:26 10:26 12:1 12:23 13:23 14:18 15:15 15:25 17:1 17:4 17:5 17:22 18:9 18:19 18:20 18:21 19:22 20:1 20:21 21:7 21:10 21:19 21:19 21:20 23:19 24:13 24:15 25:8 25:9 25:13 25:14 25:21 26:2 26:19 26:21 26:24 27:10 27:19 28:2 28:21 29:18 29:19 34:12 35:8 35:18 35:19 36:14 36:19 37:18 39:16 40:8 40:17 40:18 40:23 41:12 42:21 44:8 44:9 44:11 44:11 44:12 45:2 45:21 46:23 46:24 47:8 48:7 48:8 48:15 48:23 48:24 49:21 51:16 52:16 52:17 52:17 53:10 54:18 57:8 57:8 57:14 58:5 58:10 59:15 60:4 60:4 60:5 60:6 60:8 60:9 60:15 60:19 60:19 61:12 65:19 67:10 67:11 68:3 68:4 68:16 68:21 69:12 69:15 69:16 69:17 71:21 71:25 72:11 72:11 72:18 72:25 73:7 74:5 75:10 75:13 77:24 78:5 81:5 81:7 81:8 81:10 82:10 83:2 83:3 84:4 85:5 85:7 85:7 85:18 85:20 85:22 86:7 86:20 87:16 87:17 87:22 87:24 87:25 88:13 88:25 88:25 89:11 89:18 89:19 90:11 90:14 91:4 91:6 91:7 91:20 91:21 91:21 91:23 91:23 92:1 92:12 92:19 92:21 92:22 93:20 93:21 94:17 94:21 95:20 97:1 97:1 99:5 99:6 100:11 100:14 100:16 101:5 101:6 101:13 101:13 101:20 101:21 101:24 104:6 105:18 107:12 107:23 108:12 108:15 108:23 108:24 109:3 109:3 109:21 109:22 111:8 111:9 111:13 112:17 112:21 113:7 113:7 113:19 113:24 114:4 114:13 115:9 115:24 116:14 116:21 116:25 117:5 117:8 117:15 118:2 118:16 118:22 118:23 119:10 119:13 120:15 120:16 121:2 121:5 121:6 121:16 121:16 121:17 121:18 121:19 121:21 122:18 122:24 123:5 123:7 123:10 123:15 123:19 124:2 124:7 124:13 124:17 125:7 125:8 125:16 126:14 126:15 126:17 126:20 127:3 127:4 127:13 127:16 127:23 128:23 129:3 129:12 129:14 130:7 130:14 130:25 131:7 131:15 132:3 132:12 132:13 132:14 132:17 132:23 133:2 133:12 133:19 133:20 133:21 133:23 134:14 134:16 135:3 135:6 135:22 136:1 136:3 136:10 136:19 136:23 136:23 136:25 137:19 138:3 139:9 139:15 139:22 140:1 140:12 140:15 140:22

| Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|
| **you**(201) 141:10 141:18 141:19 142:18 | | **your**(301) 10:5 10:17 11:3 11:25 12:21 | | **you'll**(10) 12:2 71:15 71:18 129:13 140:7 | |

**you**(201) 141:10 141:18 141:19 142:18
142:18 142:21 142:23 143:4 143:4 143:5
143:9 143:12 143:16 143:25 144:4 144:23
145:8 145:8 145:9 146:2 148:4 150:13
150:19 150:20 150:21 150:23 151:9 151:12
151:14 151:21 152:8 152:19 153:2 153:2
153:2 153:17 154:6 154:8 154:19 155:14
155:18 155:37 156:1 156:1 156:6 156:11
157:20 157:21 158:5 158:9 158:15 159:15
159:16 159:18 159:25 160:10 160:14 161:2
161:5 161:8 162:15 162:15 163:20 163:20
164:18 164:22 165:14 166:19 168:18 170:13
172:2 172:5 173:14 174:8 175:2 175:19
175:20 176:4 176:6 176:6 176:7 177:4
177:5 177:9 179:4 179:8 180:14 181:1
181:4 181:16 182:11 183:10 183:12 183:14
183:15 183:15 184:18 184:24 185:7
188:20 188:22 188:23 189:1 190:3 190:4
190:15 190:23 190:24 191:9 191:10 191:14
191:14 191:18 191:24 192:1 192:6 192:7
192:16 192:18 192:21 192:23 193:2 194:4
194:8 194:21 195:25 196:17 196:19 196:24
197:3 197:25 198:2 198:7 200:1 200:9
200:10 200:13 200:14 200:15 200:21
200:23 200:23 201:12 202:4 202:6 202:16
202:25 203:2 203:18 206:5 207:8 208:11
208:17 208:24 208:25 209:9 209:10 209:24
210:15 210:24 211:12 211:16 212:17
212:19 212:20 214:10 214:12 216:2 216:3
216:24 216:25 217:9 217:9 217:12 217:14
217:20 218:2 219:14 219:19 219:21 219:25
220:10 221:3 221:15 221:20 221:21 222:7
222:7 222:14 222:21 223:1 223:3 223:4
223:7 223:8 223:9 223:15 223:17 224:5
224:13 224:15

**you'd**(1) 109:19
**you'll**(1) 95:8
**you're**(5) 89:12 91:20 92:4 112:13 114:1
**you've**(4) 90:12 90:13 91:3 120:7
**young**(1) 3:13

**your**(301) 10:5 10:17 11:3 11:25 12:21
13:4 13:17 13:19 13:24 14:1 14:9 14:13
14:19 14:19 15:4 15:17 17:10 18:21 21:11
21:21 22:8 22:13 22:22 23:17 23:19 23:23
23:25 24:5 24:16 24:18 25:3 25:4 25:12
25:12 26:1 26:10 26:15 26:17 26:25 27:4
27:7 27:12 27:18 27:20 27:21 28:1 28:3
28:14 29:10 29:16 29:20 30:22 30:22 31:3
31:4 31:24 32:1 32:6 32:8 32:11 32:15
33:9 33:18 34:1 34:10 34:14 35:14 35:20
36:8 36:24 37:3 37:7 37:24 38:4 38:7
39:10 40:7 42:1 42:17 42:20 42:22 42:23
43:1 43:5 43:23 43:24 44:1 44:22 46:14
46:25 47:3 47:18 47:20 47:24 48:7 48:9
48:10 48:15 48:18 48:21 48:25 49:1 49:6
50:5 51:3 51:3 51:10 51:18 51:21 52:19
55:11 56:16 57:1 58:13 58:14 60:2 61:6
62:12 64:17 65:10 66:1 66:2 66:12 66:17
67:11 67:12 68:5 68:14 68:18 68:23 69:1
69:10 69:14 69:18 70:2 70:8 71:10 73:21
76:17 77:7 78:18 81:4 83:4 85:5 85:8
86:20 87:13 87:20 88:23 89:12 90:9 90:13
91:3 91:16 91:17 91:20 92:12 93:15 93:18
93:20 93:21 93:24 94:16 95:17 95:17
96:13 96:17 96:18 96:25 98:23 99:3 99:7
99:10 99:16 100:2 100:14 100:16 100:19
101:5 101:7 101:18 101:24 102:3 102:8
103:17 103:19 104:10 104:14 104:22 105:4
105:7 105:9 105:17 105:20 105:25 106:5
106:9 106:13 106:16 106:25 107:5 107:14
107:20 108:4 108:7 108:12 108:20 109:14
110:1 110:11 110:24 111:1 111:4 111:9
111:12 112:6 113:6 114:2 114:13 114:17
114:21 115:8 116:21 117:12 118:2 119:4
119:9 119:15 120:7 120:10 121:1 128:3
129:25 130:13 130:15 130:20 130:24 130:25
131:12 131:20 133:16 133:17 133:19
134:11 134:19 134:21 134:22 135:2 135:10
136:12 136:18 136:21 137:17 138:9
138:12 138:21 140:7 140:21 141:16 141:18
144:24 145:1 145:4 145:7 145:11 145:15
145:17 145:20 146:2 147:1 147:9 147:15
147:22 148:14 148:16 148:21 149:6 150:1
150:18 150:23 151:8 151:10 151:12 151:18
151:21 152:7 152:14 153:15 153:16 154:8
154:8 154:19 154:23 155:6 155:20 155:38
156:3 156:5 156:8 156:11 156:14

**your**(142) 156:25 157:3 157:4 157:14
157:17 157:18 158:1 158:4 158:25 159:5
159:12 159:17 159:19 159:25 160:10
161:26 162:14 162:16 162:22 163:13
163:19 163:24 164:2 164:19 165:17 166:3
166:11 166:22 167:16 167:20 168:14 169:7
169:17 170:11 170:23 170:24 171:6
171:20 171:23 172:5 172:24 173:4 173:10
173:11 173:13 173:21 174:8 174:18 174:21
175:1 175:8 175:16 175:19 175:21 175:23
177:14 178:25 179:8 182:4 183:8 183:9
183:11 183:12 184:2 184:15 184:17 185:21
187:15 187:18 188:20 189:9 189:10
189:11 191:7 191:11 191:13 191:16 191:22
192:6 193:2 193:10 193:21 195:25 197:10
198:1 198:3 198:10 198:11 199:2 199:22
200:7 200:11 200:12 200:14 200:17 200:20
201:15 201:22 202:9 202:14 203:1 203:2
203:4 203:12 203:19 204:6 205:23 206:20
207:9 209:2 209:18 209:22 210:10 210:18
211:12 211:15 211:17 212:2 212:14 212:19
212:21 213:9 213:18 213:22 214:12
215:13 216:1 216:3 216:5 216:24 217:1
217:7 217:15 218:17 221:11 221:19 222:1
222:4 222:10 222:13 223:2 224:13

**yourself**(4) 143:23 181:5 181:15 181:24
**you'd**(9) 125:11 138:9 144:6 150:17 151:6
159:19 185:8 221:21 223:24

**you'll**(10) 12:2 71:15 71:18 129:13 140:7
160:23 175:4 182:10 210:20 217:21

**you're**(42) 17:13 19:16 24:14 32:7 32:8
35:23 48:24 51:17 57:10 57:10 57:11 58:5
65:9 65:10 132:1 139:14 139:18 142:14
143:16 143:23 144:3 150:10 150:11 150:19
151:3 151:3 152:5 156:6 156:6 158:19
162:25 167:8 170:2 180:25 180:25 184:7
188:24 188:25 188:25 211:12 211:14
211:15

**you've**(15) 21:6 22:19 23:13 24:13 26:11
51:24 120:19 121:5 142:1 146:11 159:25
181:15 181:23 198:23 206:5

**zabel**(1) 5:17
**zell**(8) 43:6 43:9 43:14 66:25 67:3 106:19
107:15 163:21

**zensky**(11) 2:35 67:12 67:13 201:15
201:16 201:22 202:17 208:17 212:24 222:1
222:2
**zloto**(1) 6:35
**zuckerman**(2) 2:26 5:11
**"accounting**(1) 109:7
**"accrued**(3) 105:3 174:4 174:9
**"any**(3) 36:15 44:16 52:12
**"any"**(1) 165:20
**"employee**(1) 166:10
**"employees**(1) 165:21
**"for**(1) 163:16
**"indebtedness**(1) 165:21
**"interest**(1) 171:5
**"investment"**(1) 42:6
**"normal**(4) 165:16 165:23 166:17 167:3
**"ordinary**(3) 167:3 172:11 174:25
**"or**(1) 77:3
**"other**(1) 73:10
**"other"**(1) 168:22
**"paid**(2) 208:5 208:8
**"portions"**(1) 58:4
**"senior**(2) 70:1 169:14
**"senior"**(1) 44:14
**"services"**(2) 167:13 167:19
**"similar**(1) 168:23
**"since**(1) 179:10
**"something**(1) 75:8
**"subordinate**(1) 72:13
**"that's**(1) 153:4
**"the**(3) 25:17 57:17 97:6
**"trade**(1) 105:3
**"unambiguous"**(1) 162:18
**"well**(1) 153:1