IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**DCL PLAN PROPONENTS' REPLY TO OBJECTIONS TO SUPPLEMENTAL DISCLOSURE DOCUMENT RELATING TO THIRD AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon") and JPMorgan Chase Bank, N.A. ("JPMorgan", and together with the Debtors, the Creditors' Committee, Oaktree, and Angelo Gordon, the "DCL Plan Proponents") hereby submit this reply (the "Reply") in support of the adequacy of the information set forth in

---

[1] Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

the Supplemental Disclosure Document Relating to Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Change Bank N.A. (As Modified March 16, 2012) (as may be further amended, modified or supplemented, the "Supplemental Disclosure Document")[2] and in response to (i) the Limited Objection of Aurelius Capital Management, LP to the DCL Plan Proponents' Supplemental Disclosure Document Relating to Third Amended Joint Plan of Reorganization (As Modified February 20, 2012) (the "Aurelius Objection") [Docket No. 11134][3] and (ii) certain plan and disclosure issues informally raised by counsel to Wilmington Trust Company, as Successor Indenture Trustee for the PHONES Notes ("Wilmington Trust"), in a letter to the DCL Plan Proponents dated March 9, 2012 (the "WTC Letter").

For the reasons set forth below, the DCL Plan Proponents respectfully request that the Court approve the Supplemental Disclosure Document as modified, overrule any remaining objections to the Supplemental Disclosure Document, and enter the Supplemental Solicitation Order as it pertains to the Supplemental Disclosure Document.

## INTRODUCTION

The DCL Plan Proponents believe that the Third Amended Plan – to which the Supplemental Disclosure Document relates – represents the "exit door to this chapter 11 proceeding." In its opinion denying confirmation of the Second Amended Plan, this Court found

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Supplemental Disclosure Document or the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Change Bank N.A. (as amended on February 20, 2012) [Docket No. 10958] (as may be further amended, modified, or supplemented, the "Third Amended Plan"), as applicable.

[3] Law Debenture Trust Company of New York joined in the Aurelius Objection. *See* Joinder of Law Debenture Trust Company of New York to Limited Objection of Aurelius Capital Management, LP to the DCL Plan Proponents' Supplemental Disclosure Document Relating to Third Amended Joint Plan of Reorganization (As Modified February 20, 2012) [Docket No. 11135].

2

46429/0001-8390687V1

that the Settlement forming the basis of the Second Amended Plan was "achieved as a result of arms-length, good faith negotiations" and was "fair, reasonable, and in the best interest of the Debtors' estates." (Confirmation Opinion at 35-39, 79). However, the Court concluded that the Second Amended Plan was inconsistent with the requirements for confirmation under section 1129 of the Bankruptcy Code in certain specific ways. The Third Amended Plan contains Modifications that the DCL Plan Proponents believe address each of the issues identified by the Bankruptcy Court in the Amended Confirmation Opinion and a limited number of additional issues raised by parties in interest. The Third Amended Plan otherwise preserves substantially all of the other terms of the Second Amended Plan, including the Settlement.

The Supplemental Disclosure Document focuses upon the conforming Modifications incorporated into the Third Amended Plan and the voting and election procedures thereunder and is intended as a supplement to the prior disclosure documents previously approved by the Court.[4] The Supplemental Disclosure Document provides the Holders of Claims in the Revoting Classes with the targeted, additional information that will enable such Holders to cast an informed vote to accept or reject the Third Amended Plan, and to make the treatment elections offered in the Third Amended Plan. The DCL Plan Proponents respectfully submit that the Supplemental Disclosure Document contains "adequate information" under section 1125 of the Bankruptcy Code, particularly when considered in light of the General Disclosure Statement, Specific Disclosure Statement, and Explanatory Statement previously approved by this Court.

In order to narrow the scope of objections and to make confirmation of the Third Amended Plan at the hearings set for May 16 and 17, 2012 as simple and efficient as possible,

---

[4] The Supplemental Disclosure Document is intended to supplement and update, as applicable, the disclosures set forth in the previously-approved General Disclosure Statement [Docket No. 7232] (approved on December 9, 2010 [Docket Nos. 7126, 7215]), Specific Disclosure Statement [Docket No. 7135] (approved on December 9, 2010 [Docket No. 7126]), and Explanatory Statement [Docket No. 8911, Ex. 1-H] (approved on May 17, 2011 [Docket No. 8926]).

the DCL Plan Proponents have considered the requests for plan and disclosure modifications raised in the Aurelius Objection, the WTC Letter, the recent hearings on the Allocation Disputes, and by other parties in interest.  Accordingly, the DCL Plan Proponents have made certain limited modifications to the Third Amended Plan and have included additional disclosure in the revised Supplemental Disclosure Document filed concurrently with this Reply in an effort to fairly and efficiently resolve the issues raised by Aurelius and Wilmington Trust.

In addition, the revised Supplemental Disclosure Document reflects certain revisions made to the Third Amended Plan that resolve plan confirmation issues recently raised by Aurelius and Wilmington Trust in advance of the Confirmation Hearing.  For example, the Third Amended Plan eliminates the Creditors' Trust previously contemplated by Article XIV of the Second Amended Plan and earlier versions of the Third Amended Plan.  As discussed in more detail in the Supplemental Disclosure Document, in light of the decisions of various parties to pursue their own Disclaimed State Law Avoidance Claims before the expiration of certain statutes of limitations, as well as the objections to the usefulness of the Creditors' Trust raised by certain Senior Noteholders and Wilmington Trust, it does not appear that the Tribune Company parent creditors that the Creditors' Trust was designed to benefit are interested in establishing the Creditors' Trust.[5]  *See* Supplemental Disclosure Document at pp. 20-21.

The DCL Plan Proponents believe that these recent revisions to the Third Amended Plan and Supplemental Disclosure Document resolve all of the disclosure issues raised informally by Wilmington Trust and substantially all of the issues raised in the Aurelius Objection.  The remaining issues raised by Aurelius either seek information that goes well beyond the scope of

---

[5] The elimination of the Creditors' Trust requires several minor revisions to the proposed solicitation materials and causes the DCL Plan Proponents to propose resoliciting votes to accept or reject the Third Amended Plan from Holders of Senior Loan Claims/Senior Guaranty Claims and Bridge Loan Claims, but the DCL Plan Proponents believe the elimination of the Creditors' Trust will be noncontroversial and will ultimately simplify the plan confirmation process.

4

"adequate information" required by section 1125 or otherwise constitute substantive plan confirmation issues that should be deferred until the plan confirmation hearings scheduled to commence on May 16, 2012. As addressed in further detail below, each of these objections, to the extent not resolved by the revisions filed contemporaneously herewith, is without merit and should be overruled. As an aid to the Court and to parties in interest, Exhibit A attached hereto contains a summary chart of key objections raised by Aurelius and informally by Wilmington Trust and corresponding revisions to the Third Amended Plan or Supplemental Disclosure Document that address such objections (or, where appropriate, an explanation why no further disclosure is necessary).

## ARGUMENT

### I. Reply to Aurelius Objection

Aurelius raises four primary objections to the Supplemental Disclosure Document. Specifically, Aurelius asserts that the Supplemental Disclosure Document lacks sufficient disclosure regarding (a) the updated valuation of the Debtors' estates, (b) the application of the "Subordination Provisions" to recoveries of Senior Lenders and Bridge Lenders, (c) the payment of certain fees and expenses incurred by professionals for Senior Lenders, Bridge Lenders, and members of the Creditors' Committee, and (d) the filing of the Plan Supplement. Each of these objections, and the DCL Plan Proponents' responses thereto, are addressed below.[6]

---

[6] In a footnote, Aurelius also contends that the Supplemental Disclosure Document and the Third Amended Plan must be modified to provide for distribution reserves in the event that all Allocation Disputes are not resolved prior to the Effective Date (Aurelius Objection ¶1, fn. 3), even though Aurelius previously complained that a prior version of the Third Amended Plan contained such distribution reserves. See Statement of Aurelius Capital Management, LP in Support of Its Position Regarding Process for Resolution of the Allocation Disputes [Docket No. 10369]. In any event, as Aurelius admits, the Court has already noted that it will address the necessary Allocation Disputes in advance of the Effective Date. In particular, the Court has indicated that it may determine that certain Allocation Disputes do not need to be decided, in which case a reserve is clearly unnecessary, and/or it will decide the relevant Allocation Disputes prior to or in conjunction with confirmation. See February 28, 2012 Hr'g. Tr. at 35:6-11 ("...I agree that I would hear these disputes, but with the caveat that I may decide they don't need to be decided, or that I might decide them at or directly in conjunction with confirmation."). Given the Court's statements regarding the timing of the adjudication of the Allocation Disputes, the DCL Plan Proponents respectfully submit that it is

5

46429/0001-8390687V1

### A. Updated Valuation

The Supplemental Disclosure Document filed on March 7, 2012 explained that the Debtors have updated the Court-approved valuation of $7.019 billion to reflect the impact on value of developments since completion of the January 2011 Reorganized Value Analysis and that, based on such update, the Reorganized Debtors' Distributable Value is estimated at a range of approximately $6.917 to $7.826 billion, with an approximate mid-point of $7.372 billion. In its objection, Aurelius requested that the Supplemental Disclosure Document provide additional information regarding the Debtors' financial projections and the updated valuation analysis in order to enable Senior Noteholders to make informed decisions on which form of consideration to elect pursuant to the treatment election in Section 3.2.5(c) of the Third Amended Plan (pursuant to which Holders of Senior Noteholder Claims can elect to receive, in lieu of an all-cash distribution, a "strip" of consideration consisting of a portion of Distributable Cash, New Senior Secured Term Loan and New Common Stock). (Aurelius Objection ¶¶ 8-9).

In response to this objection, the DCL Plan Proponents have provided significant additional disclosure regarding the updated valuation analysis and financial projections. Specifically, the DCL Plan Proponents have added Exhibit C to the Supplemental Disclosure Document, which provides additional information regarding the methodology and assumptions used to develop the updated valuation as well as specific estimates of the value of each of the principal components of the Reorganized Debtors' Distributable Value. In addition, the DCL Plan Proponents have added Exhibit D to the Supplemental Disclosure Document, which provides additional information regarding the Debtors' updated financial projections used to

---

unnecessary to modify the Third Amended Plan or the Supplemental Disclosure Document to provide for a reserve in connection with the Allocation Disputes.

6

develop the updated valuation and the key assumptions underlying such projections.[7] The DCL Plan Proponents believe that these additions to the Supplemental Disclosure Document resolve Aurelius's valuation-based objection to the Supplemental Disclosure Document, particularly when considered in the stated context of that objection – to facilitate the ability of the Holders of Senior Noteholder Claims to determine whether or not it is in their best interests to exercise the "strip" election in the Third Amended Plan to receive (in part) the stock of the Reorganized Company or all cash. The DCL Plan Proponents submit that the Supplemental Disclosure Document now provides Holders of Claims in Revoting Classes with more than adequate information regarding the updated valuation.

### B.   Application of Subordination Provisions

Aurelius also argues that the Supplemental Disclosure Document does not adequately describe the application of the subordination provisions of the PHONES Notes Indenture and the subordination agreement governing the EGI-TRB LLC Note (collectively, the "Subordination Provisions") with respect to recoveries for Holders of Senior Loan Claims and Bridge Loan Claims. Specifically, Aurelius argues that the Supplemental Disclosure Document lacks clarifying language confirming that Holders of Senior Loan Claims and Bridge Loan Claims will not receive the benefit of contractual subordination with respect to distributions of DCL Plan Settlement consideration and distributions made on account of Litigation Trust Interests. (Aurelius Objection ¶¶ 10, 12). For the avoidance of doubt, the DCL Plan Proponents have modified the Supplemental Disclosure Document to clearly provide that:

> "…pursuant to the terms of the Third Amended Plan, the Holders of Senior Loan Claims and Bridge Loan Claims will not be entitled to turnover of any of the DCL Plan Settlement consideration or distributions from the Litigation Trust allocated

---

[7] The DCL Plan Proponents also revised Section VI of the Supplemental Disclosure Document to provide additional information regarding the reorganized value update and the updated financial projections. *See* Supplemental Disclosure Document at pp. 21-22.

7

to Holders of PHONES Notes Claims and EGI-TRB Notes Claims on account of the contractual subordination of the PHONES Notes and EGI-TRB Notes."

*See* Supplemental Disclosure Document at p. 21.

Aurelius also requests that the Third Amended Plan be amended to include similar clarifying language. (Aurelius Objection ¶¶ 10-12). The DCL Plan Proponents submit that the Third Amended Plan is clear with respect to the Senior Lenders' and Bridge Lenders' inability to receive the benefit of the Subordination Provisions with respect to distributions made on account of the Settlement consideration or Litigation Trust Interests under the terms of the Third Amended Plan. However, for the avoidance of doubt, the DCL Plan Proponents have modified Section 7.15 of the Third Amended Plan to clarify this issue.[8]

### C. Payment of Certain Fee and Expense Claims

The Third Amended Plan provides for the payment of certain fees and expenses of the Senior Lenders, the Bridge Lenders and members of the Creditors' Committee (the "Professionals' Fees and Expenses"). *See* Third Amended Plan §§ 9.1.1, 9.1.2 and 9.1.3. The Aurelius Objection raises several objections with respect to these provisions.

Aurelius first requests that the DCL Plan Proponents disclose a concrete estimate of the Professionals' Fees and Expenses to be paid. (Aurelius Objection ¶ 13). In order to clarify this issue and provide further disclosure, the DCL Plan Proponents have amended the Supplemental Disclosure Document to provide a good faith estimate (which will not be binding on parties in interest or final) of the aggregate fees estimated to be paid.

---

[8] Specifically, the Third Amended Plan now provides that "[p]ursuant to the Settlement, no distributions allocable to PHONES Notes Claims or EGI-TRB Notes Claims shall be subject to turnover to Holders of Senior Loan Claims or Bridge Loan Claims. The distributions and treatments provided to Claims and Interests under this Plan or the Allocation Dispute Protocol otherwise take into account and/or conform to the relative priority and rights of such Claims and Interests under any applicable subordination and turnover provisions in any applicable contracts, and nothing in this Plan shall be deemed to impair, diminish, eliminate or otherwise adversely affect the rights or remedies of beneficiaries (including, for the avoidance of doubt, their respective Indenture Trustees and Agents, as applicable) of any such contractual subordination and turnover provisions." Third Amended Plan, § 7.15.

8

Aurelius next requests that the DCL Plan Proponents disclose the legal bases upon which they propose to pay the Professionals' Fees and Expenses as administrative expenses. (Aurelius Objection ¶ 13). Payment of the Professionals' Fees and Expenses is and always has been a component of the Settlement embodied in the DCL Plan – a Settlement that the Court found was within the range of reasonableness. *See* Opinion on Confirmation [Docket 10133]. As a consequence, it is a permissible and appropriate part of the Third Amended Plan. *See, e.g., In re Adelphia Commc'ns Corp.*, 441 B.R. 6, 22 (Bankr. S.D.N.Y. 2010) ("The Court determines that under the Code and caselaw, reasonable fees may be paid where, as here, the provision for fees is an element of a chapter 11 reorganization plan."); *id.* at 19 ("the Court rules that to the extent that the requested fees are reasonable, and the requirements of section 1129(a)(4) likewise are complied with, Section 6.2(d) of the Plan is permissible, and the Code permits the Applicants' reasonable fees to be recovered under that provision without showing compliance with sections 503(b)(3) or (4)"); *id.* at 14 n.23 (considering, but not deciding, whether fees also may be paid as part of a settlement approved pursuant to section 1123(b)(3) of the Code).

Notably, the Third Amended Plan contains exactly the same provision for the payment of the Professionals' Fees and Expenses as did the Second Amended Plan. All parties, including Aurelius, had the opportunity to object to Section 9.1 prior to the confirmation hearing on that plan. Aurelius did not object, and in fact the Noteholder Plan[9] also provided for payment of the fees of its proponents. *See* Noteholder Plan § 9.1. One objection to Section 9.1 of the Second Amended Plan was filed at the time, by the U.S. Trustee, and that objection was resolved by agreement. Specifically, in response to the U.S. Trustee's argument that the fees and expenses to

---

[9] Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, LP, on Behalf of its Managed Entities, Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, Law Debenture Trust Company of New York, In its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes, and Wilmington Trust Company, in its Capacity as Successor Indenture Trustee for the PHONES Notes [Docket No. 8755].

46429/0001-8390687V1

be paid must be subject to review and approval for reasonableness,[10] Sections 9.1.1, 9.1.2 and 9.1.3 were amended to provide Reorganized Tribune, the Creditors' Committee and the U.S. Trustee with the opportunity to review and object to the payment of the Professionals' Fees and Expenses, including the right to seek review of any disputed amounts by the Bankruptcy Court. The DCL Plan Proponents therefore submit that all arguments concerning the payment of Professionals' Fees and Expenses have been heard (or should have been raised) and decided in the context of the Court's approval of the Settlement under the Second Amended Plan. The payment of the Professionals' Fees and Expenses under the Third Amended Plan, as a component of the Settlement approved by the Court, satisfies the requirements of sections 1129(a)(4) and 1123(b)(3) of the Bankruptcy Code.

Finally, in a footnote, Aurelius argues (again for the first time, notwithstanding that the provision has not changed) that providing for the payment of the Senior Lenders' fees and expenses "may improperly moot" a motion filed by Law Debenture that sought to prevent the Senior Lenders' fees from being paid by certain non-Debtor subsidiaries and to disgorge past payments (the "Fee Motion"). (Aurelius Objection ¶ 13 fn.6). This assertion is entirely inconsistent with the Court's approval of the Settlement, which provides for payment of such fees as an element of the compromise and indeed does moot the Fee Motion.[11]

---

[10] See United States Trustee's Objection to Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 7980] ¶ 23.

[11] Far from being "improper," resolution of the Fee Motion in connection with the Third Amended Plan is consistent with prior statements made by the Court. At a hearing held on December 1, 2009, the Court asked the U.S. Trustee why it did not object to the payment of fees by non-Debtors and the U.S. Trustee responded, inter alia, that he felt the issue of the Senior Lenders' claims could be revisited in connection with confirmation of a plan. See December 1, 2009 Hr'g Tr. at 78:10-17. Later in the hearing, the Court stated: "I think [the U.S. Trustee] put his finger on it that ultimately maybe the resolution of this issue comes in the context of a plan." Id. at 106:21-107:10. And, at a March 26, 2010 hearing, the Court expressed its belief that this issue was "certainly something that could be rolled into confirmation." March 26, 2010 Hr'g Tr. at 62:17-24.

The Settlement provides finality to settling Senior Lenders by resolving all estate claims against them in their capacity as such, including any challenges to the payment of the Senior Lender Fee/Expense Claims that might be brought.[12] To avoid any doubt on the matter, the DCL Plan Proponents have amended the Supplemental Disclosure Document to make clear that confirmation by the Court of the Third Amended Plan would resolve these issues and preclude all third parties from attempting to claw back payments made to the Senior Lenders or their professionals pursuant to the Third Amended Plan or otherwise.

### D. Timing of Filing Plan Supplement

Lastly, Aurelius argues that the DCL Plan Proponents fail to provide creditors with sufficient time to review the Plan Supplement because the Plan Supplement will be filed seven calendar days prior to the objection deadline for the Third Amended Plan rather than fifteen days as requested by Aurelius. (Aurelius Objection ¶ 14). In response to this objection, the DCL Plan Proponents have agreed to file the Plan Supplement documents fifteen days prior to the objection deadline (by April 13, 2012) and have modified the Third Amended Plan accordingly. *See* Third Amended Plan, § 1.1.171, filed on March 16, 2012 (providing that any modifications to the Plan Supplement will be filed no later than fifteen (15) calendar days prior to the objection deadline established for the Third Amended Plan).[13]

---

[12] In any event, the concerns raised by Law Debenture in the Fee Motion are not relevant to the payment of fees under the Third Amended Plan. The Fee Motion objected to the payment of the Senior Lenders' fees and expenses by certain non-Debtors that had guaranteed Tribune's obligation to pay those fees and expenses under the Senior Loan Agreement in exchange for the Senior Lenders' agreement to forbear from exercising remedies against those non-Debtor entities. Law Debenture argued that the payments had not been properly disclosed and that the payment of fees created a conflict of interest and was discriminatory to creditors. Law Debenture's arguments regarding disclosure are not relevant to the payment of fees under the Third Amended Plan. The latter two arguments were based on the underlying assumption that the Senior Lenders' Claims would be avoided as fraudulent transfers. Under the Settlement, the Senior Loan Claims are to be allowed, and the payment of the Senior Lender Fee/Expense Claims as a part of those allowed claims is a component of that global resolution.

[13] Aurelius also states in its objection that the DCL Plan Proponents must disclose the justification for imposing joint and several liability on the Litigation Trust and Creditors' Trust pursuant to the Trusts' Loan Agreement. (Aurelius Objection ¶ 16). As explained herein, the Creditors' Trust has been removed from the Third Amended Plan and thus that objection to the Supplemental Disclosure Document and Third Amended Plan is moot.

11

## II. Reply to WTC Letter

The WTC Letter outlines certain issues denominated by Wilmington Trust as "Disclosure Issues" and certain other issues denominated as "Plan Issues." The revisions to the Supplemental Disclosure Document filed concurrently with this Reply should resolve all of the "Disclosure Issues" raised by Wilmington Trust. In addition, the revisions reflected in the concurrently-filed Third Amended Plan address most of Wilmington Trust's purported "Plan Issues." For example, the Third Amended Plan no longer includes the Creditors' Trust that was contemplated by Article XIV of the Second Amended Plan and earlier versions of the Third Amended Plan. The elimination of the Creditors' Trust resolves several of Wilmington Trust's plan, disclosure and solicitation concerns. Exhibit A hereto summarizes certain other modifications to the Third Amended Plan that address other "Plan Issues" raised by Wilmington Trust.

## CONCLUSION

For the reasons stated in this Reply, the DCL Plan Proponents respectfully request that the Court approve the Supplemental Disclosure Document (including any and all exhibits and appendices attached thereto or filed in connection therewith), overrule any remaining objections to the Supplemental Disclosure Document, and enter the Supplemental Solicitation Order as it pertains to the Supplemental Disclosure Document.

Dated: Wilmington, Delaware
March 16, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Jeffrey C. Steen
Dennis M. Twomey
Kerriann S. Mills
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

*/s/ J. Kate Stickles*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors in Possession and Certain Non-Debtor Affiliates

46429/0001-8390687V1

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier: (212) 541-5369

-and-

LANDIS RATH & COBB LLP

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier: (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Telecopier: (202) 822-8106

Counsel for the Official Committee of
Unsecured Creditors

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier: (213) 621-6100

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ M. Blake Cleary*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telecopier: (302) 576-3187


Counsel For Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.

WILMER CUTLER PICKERING HALE & DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier: (212) 230-8888

Co-Counsel For Angelo, Gordon & Co, L.P.

46429/0001-8390687V1

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Damian S. Schaible
450 Lexington Avenue
New York, New York 10017
Telecopier: (212) 701 5800

-and-

RICHARDS LAYTON & FINGER

*/s/ Drew G. Sloan*
Mark Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

Counsel For JPMorgan Chase Bank, N.A.

46429/0001-8390687V1