# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 25, 2012 at 1:00 p.m. ET**<br>**Response Deadline: April 18, 2012 at 4:00 p.m. ET** |

## DEBTORS' FIFTY-THIRD OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1

### ("SUSAN AND PHILIP LEFEBVRE CLAIMS")

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel,

hereby file this fifty-third omnibus objection (the "Objection"), which Objection covers Claim

Nos. 267 and 1531 filed against Tribune Company ("Tribune") and Claim No. 3044 filed against

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

The Hartford Courant Company (the "Courant") by claimants Philip and Susan Lefebvre (collectively, the "Lefebvre Claims"), copies of which are attached hereto as Exhibit A, Exhibit B and Exhibit C, respectively, on the basis that neither Tribune nor the Courant have any liability for such claims and that such claims are substantive duplicates of each other.

This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging each of the Lefebvre Claims in its entirety, as indicated in further detail below. In support of the Objection, the Debtors respectfully state as follows:

## INTRODUCTION

1.    Upon review of the Lefebvre Claims and the operative facts and law, the Debtors have determined that they have no liability whatsoever to Philip or Susan Lefebvre. In summary, the Lefebvre Claims are each predicated on a Revised Complaint[2] dated September 7, 2008 (the "Revised Complaint") filed by Philip and Susan Lefebvre (husband and wife) against their neighbor, Joni Zarka, and the Courant, a subsidiary of Tribune that publishes the Hartford Courant newspaper, in the Hartford Superior Court, State of Connecticut. A copy of the Revised Complaint is attached to Claim Nos. 267 and 1531 and is attached hereto as Exhibit D. The Lefebvre Claims appear to demand damages based solely on the Courant's publication of a single article regarding the arrest of Philip Lefebvre and related civil litigation between the Lefebvres and Ms. Zarka. Although the article is based on publicly-available court records and interviews, the Revised Complaint asserts that the article invaded Susan Lefebvre's privacy, an

---

[2] The Lefebvre complaint was originally filed on July 15, 2008 (the "Complaint"). On August 28, 2008, the Courant filed a request to revise the Complaint under the Connecticut Practice Book. The Revised Complaint was filed in response to such request.

assertion that is not only unsupported in fact nor accompanied by any legal basis in the Revised

Complaint or the Lefebvre Claims, but is demonstrably incorrect under black-letter Connecticut

law as described herein.  Furthermore, Ms. Lefebvre's allegation that the Courant recklessly

disregarded a purported obligation to obtain a comment from her before publishing the story is

also without merit because the First Amendment to the U.S. Constitution does not permit the

imposition of such an obligation.

       2.      Of additional relevance to this Objection, Tribune is not named as a

defendant in the Revised Complaint and there is no allegation made in the Revised Complaint

regarding any alleged wrongful conduct by Tribune.  Nor is there any basis on the face of either

of the two claims filed against Tribune (being Claim Nos. 267 and 1531 and hereinafter, the

"Tribune Lefebvre Claims") for such claims to be asserted against Tribune by Susan Lefebvre,

who is listed as the sole creditor on such claims.  Accordingly, the Tribune Lefebvre Claims

should be disallowed and expunged because no basis for recovery from Tribune is stated or

supported by such claims, and further because they substantively duplicate the later-filed claim,

Claim No. 3044, which asserts a claim by Philip and Susan Lefebvre in the amount of

$100,000.00 against the Courant (hereinafter, the "Courant Lefebvre Claim").  The Debtors

accordingly request that this Court disallow and expunge each of the Lefebvre Claims from the

claims register to reflect that such claims have no cognizable basis on which to be asserted

against either Tribune or the Courant.

## STATUS OF THE CASE AND JURISDICTION

       3.      On December 8, 2008 (the "Petition Date"), Tribune and certain of its

subsidiaries, including the Courant, each filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors comprise 111 entities.

4.       The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  (Docket Nos. 43, 2333).

5.       The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.       On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

7.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

## FACTUAL BACKGROUND CONCERNING THE LEFEBVRE CLAIMS

8.       The Lefebvre Claims are summarized as follows:

1.       Claim No. 267, filed on January 13, 2009 by Susan Lefebvre against Tribune for an undetermined amount;

2.       Claim No. 1531, filed on April 23, 2009 by Susan Lefebvre against Tribune for "an amount greater than $45,000.00 plus interests and costs;" and

3.       Claim No. 3044, filed on May 22, 2009 by Susan and Philip Lefebvre, by and through counsel, against the Courant for $100,000.

(See Exhibits A-C.)

46429/0001-8412132v1

9.      Each of the Lefebvre Claims states as it sole basis "personal injury; Connecticut Docket # HHD-CV-8-5021363-S,"[4] which action is based on the Revised Complaint that is appended to Claim Nos. 267 and 1531. (See Exhibits A-C.) Of the five counts asserted in the Revised Complaint, only Count Five is against the Courant, and that count is brought solely by Susan Lefebvre. (See Exhibit D, Revised Complaint at 3-4.) The first four counts of the Revised Complaint assert claims by both Mr. and Ms. Lefebvre solely against their neighbor, Joni Zarka. (Id. at 1-3.)

10.     Count Five of the Revised Complaint alleges a cause of action for false-light invasion of privacy based on a Courant article published on April 6, 2008, entitled *Kids' Prank Opened Door to Court Saga* (the "Article"). A copy of the Article is attached hereto as Exhibit E. The Article reported an incident involving Philip Lefebvre's alleged assault of Zarka's minor niece and his subsequent arrest and the resulting civil litigation that he filed against Zarka and her niece after the arrest. In the Revised Complaint, Susan Lefebvre alleges that the Article was based on false statements published by the Courant. (See Exhibit D, Revised Complaint, Count One at ¶ 5; Count Five at ¶ 5.) Specifically, Ms. Lefebvre alleges "[o]n or about the first week of April, 2008, the defendant Zarka falsely and maliciously stated to [the Courant reporter] that [Mr. Lefebvre] had assaulted her young niece causing the child to become distraught and 'fall into my arms sobbing' after [Mr. Lefebvre] in the presence of the defendant Zarka had forcibly held the child's arm 'jacked against her back,' and further stated that [Ms. Lefebvre] had stood by passively assenting to such wrongdoing while it took place" (See Exhibit D, Revised Complaint at ¶ 4.) In Count Five of the Revised Complaint against the Courant, Ms. Lefebvre sole claim is that the Courant invaded Ms. Lefebvre's privacy by publishing the above statements made by Ms.

---

[4] The Connecticut state court case is styled Susan Lefebvre and Philip Lefebvre vs. Joni Zarka and The Hartford Courant Company, Case No. HHD-CV-8-5021363-S.

Zarka, "without ever communicating in any way with the plaintiff Susan Lefebvre or seeking her side of the story, and without making any attempt whatever to do so." (See Revised Complaint, Count 5 at ¶ 5.) On September 23, 2008, the Courant filed a motion to strike Count Five of the Revised Complaint on the ground that the allegations in the Revised Complaint failed to state a legally sufficient cause of action under Connecticut law.[5] No decision was rendered regarding the Courant's motion to strike prior to the Petition Date.

## RELIEF REQUESTED

11.     By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing and expunging all three of the Lefebvre Claims in their entirety on the basis that the Lefebvre Claims are facially without merit in that they fail to state a claim for which relief can be granted under applicable non-bankruptcy law.[6] The Debtors also seek an order authorizing the Court-appointed claims agent (the "Claims Agent") to expunge the three Lefebvre Claims from the official claims register maintained in these chapter 11 cases (the "Claims Register") so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.

## APPLICABLE LAW

12.     This Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—

---

[5] A motion to strike under Connecticut civil procedure is the equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Connecticut Practice Book, § 10-42.

[6] Although this Objection should be sustained on the grounds that the Lefebvre Claims fail to state a claim upon which relief can be granted and because two of the three Lefebvre Claims are substantive duplicate claims, the Debtors reserve the right to object to the Lefebvre Claims on other grounds.

> (1)     such claim is unenforceable against the debtor and
> property of the debtor, under any agreement or applicable
> law for a reason other than because such claim is
> contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code."  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007)

(citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy

estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be

enforceable against the debtor outside of bankruptcy."  In Re Combustion Eng'g, Inc., 391 F.3d

190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the

estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any

entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other

personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.  Here,

making all reasonable inferences in favor of the Lefebvres, there is no actionable "right to

payment" that could be asserted against Tribune by any of the Lefebvre Claims or the underlying

Revised Complaint.

### A.     Tribune Has No Liability for the Tribune Lefebvre Claims

13.     The Tribune Lefebvre Claims should also be disallowed and expunged

because there is no actionable "right to payment" that could be asserted against Tribune set forth

in either those Claims or in the underlying Revised Complaint.  Specifically, nothing on the face

of Claim Nos. 267 and 1531 and nothing in the Revised Complaint appended to such Claims

states any facts or allegations sufficient to constitute a cause of action against Tribune.  Tribune is

not a defendant in the Revised Complaint and there are no grounds under applicable Connecticut

law for Tribune to be held liable on account of the Revised Complaint.  Ms. Lefebvre has not

satisfied her prima facie burden to state a claim against Tribune on account of the Revised

Complaint or otherwise, and for those reasons the Tribune Lefebvre Claims should be disallowed

and expunged.

**B.**    **The Tribune Lefebvre Claims are Substantive Duplicate Claims**

14.    The Tribune Lefebvre Claims are substantive duplicative of the Courant

Lefebvre Claim.  The first two claims were filed by Ms. Lefebvre against Tribune in respect of

the same alleged liability and each duplicate the liability represented in the third, later-filed claim

that was filed by counsel on behalf of both Mr. and Ms. Lefebvre.  The Debtors should not be

required to pay a claimant multiple times on the same obligation or debt.  Moreover, elimination

of redundant claims will enable the Claims Register to reflect more accurately the claims

asserted against the Debtors.  Accordingly, the Debtors seek to disallow in full and expunge the

Tribune Lefebvre Claims on the grounds that they are substantive duplicative claims.

**C.**    **The Courant Has No Liability for the Courant Lefebvre Claim**

15.    The Courant Lefebvre Claim, as asserted by Mr. and Ms. Lefebvre, should

be disallowed in its entirety and expunged because neither Mr. nor Ms. Lefebvre have asserted

facts that would support a valid right to payment from the Courant or any of the other Debtors'

estates under applicable non-bankruptcy law.

**1.**    **Philip Lefebvre Has No Claim Against the Courant**

16.    As an initial matter, the Courant Lefebvre Claim should be disallowed in

its entirety as to Mr. Lefebvre, because the reference on the claim to "Connecticut docket #

HHD-CV-08-5021363-S," which is based on the Revised Complaint, does not assert any facts or

cause of action against the Courant by Mr. Lefebvre.  In fact, Counts Two and Four of the

Revised Complaint assert claims by Mr. Lefebvre against Ms. Zarka only, and Mr. Lefebvre

makes no claim whatsoever against the Courant in the Revised Complaint.  (See Exhibit D,

8

Revised Complaint.)  For this reason alone, the Courant Lefebvre Claim, as asserted by Mr. Lefebvre, is not supported by fact or law.  Accordingly, the Debtors request that the Courant Lefebvre Claim, with respect to Mr. Lefebvre, be disallowed and expunged from the claims register.

> **2.    Count Five of the Revised Complaint Fails to State a Legally Sufficient Cause of Action for Invasion of Privacy By False Light.**

17.    The Courant Lefebvre Claim, as asserted by Susan Lefebvre, is also not an allowable claim because such claim is unenforceable against the Courant under applicable non-bankruptcy law for failure to state a claim upon which relief can be granted.  The facts alleged by Ms. Lefebvre do not state a cognizable claim for invasion of privacy by false light under applicable black-letter Connecticut law.

18.    The Connecticut Supreme Court first recognized the tort of invasion of privacy by false light in Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107 (1982).  The court in Goodrich affirmed the judgment of the Superior Court, which had granted the defendant newspaper's motion for a directed verdict in an action by the plaintiff developer to recover damages for allegedly libelous statements made about him and his shopping center that were printed in the Waterbury Republican-American newspaper. Id. at 134.  Under Goodrich, to establish invasion of privacy by false light, a plaintiff must show "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Id. at 132; see also, Jonap v. Silver, 1 Conn. App. 550, 557-558 (Conn. App. Ct. 1984); Honan v. Dimyan, 52 Conn. App. 123, 132-133, (1999). The court in Goodrich further explained that the "essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major

9

misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." <u>Goodrich</u> at 132.

19.    Accordingly, for a plaintiff to assert a "claim for false light invasion of privacy [he] must allege, <u>inter alia</u>, that the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." <u>Goodrich</u>, 188 Conn. at 131; <u>see</u> <u>Brooks v. New Mass Media, Inc.</u>, No. CV92 029 67 36, 1993 Conn. Super. LEXIS 840, *11 (Conn. Super. Ct. Apr. 2, 1993) (Leheny, J.) (striking plaintiffs' claim for invasion of privacy by false light for their failure to allege the "essential element" that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed).

20.    Courts applying the principles outlined in <u>Goodrich</u> have consistently dismissed complaints for invasion of privacy by false light that fail to plead these essential elements. In <u>Herring v. Signs</u>, No. CV99-0427523, 2000 Conn. Super. LEXIS 285, *4-5 (Conn. Super. Ct. Feb. 9, 2000) (Alander, J.), the court dismissed the plaintiff's invasion of privacy false light claim because the plaintiff failed to allege reckless disregard for the falsity of the material. The court stated that "the standard governing the tort of false light invasion of privacy is similar to the standard governing the tort of defamation concerning a public official or public figure: that the publisher of the false statement knew that the statement was false or acted in reckless disregard of the falsity of the statement." <u>Id.</u> at *4. A finding of reckless disregard requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." <u>Id.</u> (citing <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968)). "Reckless disregard is said to exist…when there is a high degree of awareness of probable falseness of the statement, or there are serious doubts as to its truth." <u>Id.</u> at *5. Consequently, an insufficient attempt to determine the truth of a matter prior to

10

publishing was not dispositive of liability. Id. at *4-5; citing Woodcock v. Journal Publishing Co., 230 Conn. 525 (1994).

       21.    The court in Herring, struck plaintiff's claim for invasion of privacy by false light because the plaintiff failed to allege any facts that showed that the defendant knew that the published material concerning the plaintiff was false or that it published the material with reckless disregard for its falsity. Id. Moreover, there was no factual allegation that the defendant entertained any serious doubts as to the truth of the publication or had any reason to believe that the material was false in any respect. Id. The court in Herring further held that the defendant's failure to contact the plaintiff or to determine whether she authorized the use of her information may have been negligent, but it was insufficient to show a reckless disregard for the falsity of the material. Id. at *5-6.

       22.    In this case, Ms. Lefebvre alleges that the Courant published "lies" in the Article. (see Exhibit D, Revised Complaint, Count 5 at ¶ 5.) While the Revised Complaint alleges that Ms. Zarka stated to a Courant reporter that "Susan Lefebvre had stood by passively assenting to such wrongdoing while it took place" (see Exhibit D, Revised Complaint at ¶ 4), nowhere in the Article do those words appear (see Exhibit E). Moreover, nowhere in the Revised Complaint does it allege that the Courant published those words in the Article. Accordingly, the statements attributed to Ms. Zarka in Count One of the Revised Complaint could only potentially give rise to a cause of action for slander by Ms. Lefebvre against Ms. Zarka, and not a cause of action by Ms. Lefebvre against the Courant. As to the statements that did appear in the Article, Ms. Lefebvre does not allege that the Courant knew that any of such statements were false. Further, she has not alleged any facts that show that the Courant published the statements with reckless disregard for their alleged falsity. Nor has Ms. Lefebvre alleged that the Courant "entertained serious doubts as to the truth of [its] publication." Herring,

2000 Conn. Super. LEXIS 285 at *4-5.  Pursuant to the reasoning of Goodrich and Herring, and

the related authorities set forth above, Ms. Lefebvre's failure to plead an essential element of

false-light invasion of privacy is fatal to her claim.

23.     Ms. Lefebvre's failure to allege that the Courant had knowledge of or

acted in reckless disregard as to the alleged falsity of the publicized matter and the false light in

which Ms. Lefebvre would be placed - the "actual malice" element - is fatal to her claim.  As

stated in the Article, it is clear that the Article is based upon publicly available court records

concerning the arrest of Philip Lefebvre and the resulting malicious prosecution action that he

filed against Ms. Zarka and her minor niece.  Because the allegations contained in the Revised

Complaint are legally insufficient to support a cause of action for invasion of privacy by false

light under Connecticut law, the cause of action must be dismissed and the Lefebvre Claims must

be disallowed.

### 3.     The Courant's Failure to Obtain Ms. Lefebvre's "Side of the Story" Does not Breach any Legal Duty.

24.     Presumably in an attempt to excuse her failure to allege that the Courant

knew that it was publishing false statements or recklessly disregarded the falsity of the

statements, Ms. Lefebvre alleges that the Courant "intentionally or recklessly" failed to contact

Ms. Lefebvre to obtain a comment from her prior to publishing the Article.  (See Exhibit D,

Revised Complaint, Count Five at ¶ 5.)  Even accepting as true this allegation, the Revised

Complaint still fails to satisfy the "actual malice" standard.[7]  As the Connecticut Supreme Court

observed in Woodcock v. Journal Publishing Co., the failure to investigate is not a basis for a

finding of actual malice.  230 Conn. 525, 541 (1994) (citing St. Amant v. Thompson, 390 U.S.

---

[7] Moreover, Connecticut courts have held that, simply using the word reckless or recklessness "is not enough...[a] specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." Murray v. Krupa, 1995 Conn. Super. LEXIS 2791, *5.  In this case the alleged conduct, failure to seek Ms. Lefebvre's opinion, is not reckless or a basis for malice.

727, 731 (1968)).  See also Herring, at *5-6 (failure to contact plaintiff prior to publication insufficient to show reckless disregard for falsity of material).

25.    Nor can this allegation form the basis for any other actionable claim because the Courant had no legal duty to seek comment from Ms. Lefebvre prior to publishing the story.  Goodrich, 188 Conn. at 132, Woodcock, 230 Conn. at 541.  Indeed, the imposition of such a duty would ignore the First Amendment's admonition that courts should avoid "intruding too closely into questions of editorial judgment."  Woodcock, at 541.  Even if publishing comments from Ms. Lefebvre would have had the effect of "cast[ing] the plaintiff in a more favorable light," to require the publication of such comments would violate the Courant's right to exercise editorial control and judgment.  Goodrich, at 132 (quoting Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241, 258 (1974)).  The Courant's "mere failure to interview the plaintiff personally, in light of the articles [it] wrote, is not in itself such highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by reasonable publishers."  Goodrich, at 125.

26.    Inasmuch as the Courant owed Ms. Lefebvre no legal duty to "seek[] her side of the story," its failure to do so cannot rise to the level of an actionable offense, and this additional allegation cannot not save Ms. Lefebvre's claim.  Additionally, as discussed above, the Courant Lefebvre Claim fails to satisfy the "actual malice" standard because it does not assign to the Courant knowledge of the falsity of the statement.  Finally, as to reputational harm, little, if any aspect of the Article is actually about Ms. Lefebvre.  To subject the Courant to a potential $100,000.00 claim for fairly and accurately reporting on court proceedings involving two local families would have a chilling effect that is simply impermissible under the First Amendment.

27. Accordingly, for these reasons, all three of the Lefebvre Claims are not allowable claims and are not entitled to any distribution in these chapter 11 cases. The Debtors request that all three Lefebvre Claims be disallowed in their entirety and expunged. The Debtors also request that the Court authorize the Claims Agent to expunge the three Lefebvre Claims from the Claims Register as sought by this Objection so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

## NOTICE

28. Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Phillip and Susan Lefebvre through their attorney John R. Williams; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

29. No previous application for the relief sought herein has been made to this Court or to any other court.

14

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1, (i) disallowing in full and expunging the three Lefebvre Claims; (ii) directing the Claims Agent to expunge all three Lefebvre Claims from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
      March 26, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Dennis M. Twomey
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION