**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x    Chapter 11
In re:                                                      :
                                                            :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                                    :
                                                            :    Jointly Administered
            Debtors.                                        :
                                                            :    Objections Due:  April 16, 2012
                                                            :    @ 4:00 p.m.(ET)
---------------------------------------------------------- x    Hearing Date:  N/A


**THIRTY-EIGHTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP,**
**AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FEBRUARY 1, 2012 THROUGH FEBRUARY 29, 2012**


| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | February 1, 2012 through February 29, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $515,420.40   (80% of $644,275.50) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $   9,936.28 |


This is a(n):    _x_ Monthly        ____ Interim        ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
|---|---|---|---|---|---|---|
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 - 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |
| 2/27/12 | 11023 | 1/1/12 - 1/31/12 | $547,104.00 | $9,615.03 | $437,683.20 | $9,615.03 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application.  Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |

**TRIBUNE COMPANY, et al.**

**SUMMARY OF HOURS**

**February 1, 2012 through February 29, 2012**

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 61.20 | 60,894.00 |
| Richard M. Leder (1998) | Tax | 1962 (NY) | 995 | 1.20 | 1,194.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 113.50 | 104,987.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 39.60 | 34,650.00 |
| Marc Alpert (1995) | Corporate | 1987 (NY) | 855 | 5.80 | 4,959.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 113.60 | 82,508.75 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 95.30 | 70,998.50 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 69.40 | 47,433.75 |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 665 | 1.60 | 1,064.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 52.80 | 34,056.00 |
| | | | | | |
| **Associate:** | | | | | |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 655 | 7.60 | 4,978.00 |
| Alexandra Nellos | Litigation | 2004 (NY) | 655 | 15.20 | 9,956.00 |
| Paul J. Tanck | Intellectual Property | 2005 (NY) | 655 | 3.00 | 1,965.00 |
| Robert Kirby | Litigation | 2008 (NY) | 595 | 6.40 | 3,808.00 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Alison Kronstadt | Corporate | 2009 (NY) | 565 | 10.40 | 5,876.00 |
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 18.30 | 10,339.50 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 46.30 | 20,691.00 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 161.30 | 79,843.50 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 49.70 | 21,619.50 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 58.60 | 25,491.00 |
|  |  |  |  |  |  |
| **Paraprofessionals:** |  |  |  |  |  |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 39.50 | 11,652.50 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 18.00 | 5,310.00 |
|  |  |  |  |  |  |
| **TOTAL:** |  |  |  | **988.30** | **$644,275.50** |

BLENDED RATE:      $657.10

---

\*  Includes year elected Partner at firm or joined firm as Partner.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x   Chapter 11
In re:                                           :
                                                 :   Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                         :
                                                 :   Jointly Administered
            Debtors.                             :
                                                 :   Objections Due: April 16, 2012
                                                 :   @ 4:00 p.m.(ET)
------------------------------------------------ x   Hearing Date: N/A
```

**THIRTY-SEVENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 1, 2012 THROUGH FEBRUARY 29, 2012**

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $644,275.50 (80% of which equals $515,420.40) and reimbursement of expenses incurred in the amount of $9,936.28 during the period commencing February 1, 2012 through and including February 29, 2012 (the "Application Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.    Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.    On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm.  See Section 1129(c).  The Court stated that, given those options, it would select the DCL Plan.

10.    On November 18, 2011, the proponents of the DCL Plan filed their Third Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (the "Third Amended DCL Plan").  A hearing on confirmation of the Third Amended DCL Plan is scheduled to begin May 16, 2012.

## COMPENSATION PAID AND ITS SOURCES

11.    All services for which compensation is requested by Chadbourne were performed for or on behalf of the Committee.

---

[1]    The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the Noteholder Plan Proponents").

12.    During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.    The fee statement for the Application Period is attached hereto as Exhibit A. This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period. To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2 (the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.    As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Application Period total $644,275.50. The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

15.    The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

4

A.      **Bankruptcy General (Matter 002)**

Fees: $18,744.50          Total Hours:    41.90

16.      During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17.      Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**    **Committee Meetings (Matter 003)**

Fees:  $33,381.50          Total Hours:  50.30

18.    Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.  In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

19.    Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

Fees:  $1,490.00          Total Hours:  2.00

20.    Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.**    **Business Operations (Matter 007)**

   Fees:  $61,401.00            Total Hours:  90.60

   21.    During the Application Period, professionals from Chadbourne's
Communications Media and Technology ("CMT") Group were further engaged in reviewing
and addressing issues with the FCC exit application process.  In particular, Chadbourne's CMT
attorneys reviewed and commented on the Debtors' revised FCC exit applications as well as
supporting documents and exhibits.  In addition, Chadbourne's CMT attorneys reviewed and
performed research on the FCC's Notice of Proposed Rulemaking in connection with the
newspaper/broadcasting cross-ownership rule and drafted a response on behalf of the
Committee.   Throughout this process, Chadbourne participated in various conferences with the
Debtors' FCC counsel regarding FCC matters.

   22.    During the Application Period, Chadbourne attorneys continued to review and
monitor issues involving the Debtors' business operations.  Chadbourne's corporate and tax
attorneys continued to review and comment on the proposed transaction documents related to
the sale of a Debtor subsidiary.  In addition, Chadbourne participated in discussions with the
Committee's financial advisors regarding preparation of an analysis of the Debtors' 2012
business plan for the Committee's review.   Chadbourne also continued to review weekly
operations and financial reports prepared by the Committee's financial advisors.

**E.**    **Claims Administration/Bar Date (Matter 009)**

Fees:  $19,367.50          Total Hours:  37.70

23.     During the Application Period, Chadbourne attorneys continued to expend efforts in connection with the disposition of claims.  This work included review and analysis of a proposed stipulation between Los Angeles Times Communications LLC and ASM Capital, L.P. modifying certain claims.  Chadbourne attorneys preformed a review of the facts and details of the proposed settlement and consulted with the Committee's financial advisors regarding their analysis of the settlement.  Chadbourne then summarized its analyses and recommendations in a memorandum to the Committee.  In addition, Chadbourne reviewed information on certain additional claims that may be asserted by retirees and participated in discussions with Debtors' counsel regarding the treatment of those claims.  In connection therewith, Chadbourne performed related legal research.

24.     During this time, Chadbourne performed a review and analysis of the Debtors' fifty-first and fifty-second omnibus objections to claims as well as an objection to a claim filed by a former employee relating to a contract dispute.  Chadbourne reviewed and evaluated the relief requested in the motions, the related underlying documents and reviewed and evaluated the bases and processes followed by the Debtors in pursuing the objections.  Chadbourne summarized its analyses and recommendations in a written report to the Committee.

8

**F.**    **Fee/Retention Applications (Matter 010)**

Fees:  $13,059.00          Total Hours:  31.40

25.    Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparation and filing of Chadbourne's thirty-seventh monthly fee application.  In addition, Chadbourne reviewed and analyzed quarterly fee applications for the twelfth interim fee period for all case professionals in these Chapter 11 cases and prepared a summary analysis for review by the Committee.

26.    In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

**G.**    **Avoidance Issues (Matter 013)**

Fees:  $11,279.50          Total Hours:  18.30

27.    During the Application Period, Chadbourne attorneys continued to review and address various issues in connection with the potential preference actions asserted against current and former Tribune insiders and certain other entities (each a "Preference Action").  Among other things, Chadbourne reviewed and analyzed issues in connection with the Debtors' request that the Committee dismiss a Preference Action against a former employee of Tribune and began discussions with various case parties to effectuate same.

28.     During this time, Chadbourne was also engaged with follow-up related to the Committee's pending stayed Preference Actions against the Debtors' professionals and certain officers and directors of the Debtors.  Efforts included review of expiring tolling agreements with certain of the Debtors' professionals and conferences with the Committee's co-counsel and Debtors' counsel to coordinate efforts to obtain extensions of those tolling agreements.  In connection therewith, Chadbourne collaborated with the Committee's co-counsel on preparation of a further motion to extend time to effect service.

## H.     Employee Issues (Matter 014)

Fees:  $559.00          Total Hours:  1.00

29.     During the Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters. Efforts included review and analysis of the terms of a severance agreement with an additional departing senior executive of Tribune.  In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departures and consulted with the Committee's financial advisors about their analysis of the departure arrangements.

## I.     General Litigation (Matter 017)

Fees:  $1,191.50          Total Hours:   1.70

30.     During the Application Period, Chadbourne attorneys continued to monitor and review the various adversary proceedings and other litigation pending in connection with the Debtors' Chapter 11 cases.

**J.**     **Travel (Matter 018)**

    Fees:   $5,150.00          Total Hours:   17.00

    31.     During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend omnibus hearings at the Bankruptcy Court.  In addition, a Chadbourne attorney travelled to Chicago, Illinois to attend depositions in connection with the allocation disputes.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**K.**     **Shareholder Claims (Matter 020)**

    Fees:   $42,393.50          Total Hours:   64.90

    32.     During the Application Period, Chadbourne attorneys continued to be engaged in reviewing and responding to developments in the multidistrict litigation which consolidated and transferred the state law constructive fraudulent conveyance lawsuits filed by the Retirees[2] and the Noteholders[3] to the Southern District of New York (*In re Tribune Company Fraudulent Conveyance Litigation*), Master Case No. 12-2296 (S.D.N.Y) (the "MDL Actions").

---

[2]    The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110 affiliates or subsidiaries of Tribune Company.

[3]    The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

33.     Chadbourne, on behalf of the Committee, participated in the February 2, 2012 hearing on (i) the Noteholders' motion to lift the stays of the state law constructive fraudulent conveyance actions and (ii) the Committee's motion to extend the stay of the *FitzSimons* action to mid-March 2012.  Ultimately, Judge Carey deferred ruling on the matter until he had the opportunity to speak with Judge Holwell (the judge presiding over the MDL Actions). Contemporaneously with the events described above, certain parties requested that the *FitzSimons* action be transferred to the Southern District of New York as a tag-along action with the MDL.  The Committee filed a limited objection to this request, asserting that the transfer should be deferred until Judge Carey ruled on the Committee's pending motion to extend the *FitzSimons* litigation stay.

34.     On February 7, 2012, Judge Holwell announced his retirement.  As a result, the MDL Actions were transferred to Judge Pauley.  During this time, Judge Pauley issued his Master Class Order establishing certain scheduling and organizational procedures for the purpose of moving the MDL Actions forward in an orderly manner.  In response to the Master Case Order, certain of the Noteholders submitted a letter to Judge Carey requesting that the litigation stay be lifted to allow the *FitzSimons* parties to participate in the preliminary organizational activities ordered the Master Case Order.  Chadbourne participated in the February 28, 2012 status conference where Judge Carey, having spoken to Judge Pauley on the issue, addressed this matter.  Ultimately, Judge Carey decided that the *FitzSimons* litigation stay should be lifted to the extent necessary for the parties to that action to participate in the pretrial coordination of the MDL Actions.  Throughout this process, Chadbourne prepared detailed analyses for the Committee of the MDL Actions.

35.     During the Application Period, Chadbourne attorneys continued to collaborate with the Committee's co-counsel on preparation of the Committee's motion to dismiss certain claims against defendant shareholders in connection with the *FitzSimons*.  In addition, as the effort continues to identify further potential parties to the Committee's complaint against various lenders and financial advisors for LBO-related causes of action (the "Lender Action"), Chadbourne worked with the Committee's co-counsel on preparation of a motion to further extend time to July 2, 2012 to effectuate service on those parties not yet identified and unable to serve.

L.      **Plan Litigation (Matter 021)**

        Fees:  $436,258.50          Total Hours:  631.50

36.     During the Application Period, Chadbourne's bankruptcy and litigation professionals continued to be significantly engaged, on behalf of the Committee, in efforts to move the Debtors' Chapter 11 cases toward plan confirmation as expeditiously as possible.

37.     During the Application Period, and in accordance with the *Order Establishing Scheduling for (i) Resolution of the Allocation Disputes and (ii) Consideration of DCL Plan Proponents' Supplemental Disclosure Statement, Solicitation Procedures Motion and Plan* (the "Scheduling Order"), Chadbourne attorneys were substantially engaged in reviewing, addressing and responding to various issues in preparation for the hearing on allocation disputes scheduled for March 5 and 6, 2012.  Chadbourne attorneys continued the research, preparation and filing of the Committee's brief on allocation disputes supporting its position that the treatment afforded to senior Noteholders under the DCL Plan is proper.   In further support of the Committee's position on allocation disputes, Chadbourne attorneys continued their review

13

and analysis of subordination provisions on initial distributions under the plan and prepared a recovery chart of various scenarios setting forth projected creditor recoveries. In connection therewith, Chadbourne consulted with the Committee's financial advisors on their analysis of the issues and participated in discussions with all parties regarding their comments to the recovery analyses.

38.    In accordance with the timeline in the Scheduling Order and procedures governing discovery conducted on allocation disputes, Chadbourne's litigation professionals reviewed and responded to discovery requests, reviewed materials produced by the various parties to the discovery and discussed litigation strategies for the upcoming hearing. Further, Chadbourne prepared for and attend several depositions (Susan Bell, Chris Hochschild and William Pate) and prepared summaries for the Committee's review. Also, Chadbourne attended several Court status conferences to address allocation dispute discovery issues.

39.    During the time, Chadbourne attorneys expended time reviewing, analyzing and summarizing the various opening briefs and related joinders submitted by interested parties in support of their positions on the allocation disputes. In connection therewith, Chadbourne performed related legal research on issues raised in the filings and began preparation of a reply brief on behalf of the Committee.

40.    Further, Chadbourne participated in discussions with all parties to discuss the contours of the allocation dispute hearing including the review and coordination of exhibits to be used by the parties and related stipulations. Chadbourne attended the February 28, 2012 status conference where the Court addressed a number of evidentiary and procedural questions

14

with respect to the hearing on the allocation disputes.   The parties agreed on the substance and order of the allocation topics to be argued at the hearing.

41.     Finally, Chadbourne attorneys were engaged in collaborations with the other DCL Plan Proponents in reviewing and providing comments on the modified third amended DCL Plan as well as the various supporting documents including the amended allocation dispute protocol, the supplemental disclosure statement and the supplement to the solicitation procedures motion.

## ACTUAL AND NECESSARY EXPENSES

42.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $9,936.28 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

43.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

15

44.    With respect to court reporter fees, Chadbourne utilized the services of an outside vendor (Veritext New York Reporting Co.) for court reporting/transcript services in connection with the allocation disputes discovery process.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

45.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

46.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

47.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## **VALUATION OF SERVICES**

48.     Attorneys and paraprofessionals of Chadbourne have expended a total of 988.30 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $644,275.50.

49.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

50.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period February 1, 2012 through February 29, 2012:  (a) authorizing compensation in the amount of $644,275.50 (80% of which equals $515,420.40 for professional services rendered), and reimbursement of expenses incurred in connection therewith in the amount of $9,936.28 for a total of $654,211.78; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:    March 27, 2012
          New York, New York

                                        **CHADBOURNE & PARKE LLP**

                                        By: _____
                                            Douglas E. Deutsch
                                            (A Member of the Firm)

                                        Chadbourne & Parke LLP
                                        30 Rockefeller Plaza
                                        New York, New York  10112
                                        (212) 408-5100

                                        Co-Counsel to The Official Committee of
                                        Unsecured Tribune Company, et al.

18

## VERIFICATION

STATE OF NEW YORK       :
                          : ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)      I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

(b)      I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
27th day of March 2012

_____
Francisco Vazquez
Notary Public, State of New York
No. 81-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4560832.2