## EXHIBIT 2

Black-Line of Revised FCC Procedures Order

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Ref. Docket No. ⎯⎯⎯⎯⎯ 11089 |

## ORDER ESTABLISHING PROCEDURES FOR COMPLIANCE WITH FEDERAL COMMUNICATIONS COMMISSION FOREIGN OWNERSHIP REQUIREMENTS

Upon the Motion,[2] dated March 5, 2012, of the Debtors, for entry of an order, pursuant to

section 105 of the Bankruptcy Code, establishing procedures to comply with the foreign

ownership requirements of the FCC, including establishing deadlines by which Certifying Equity

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the ~~DCL Plan~~Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 11354] (as may be amended, supplemented, or modified, the "DCL Plan") or the Motion, as applicable.

Eligible Holders that do not wish to be considered entirely foreign-owned and foreign-controlled

be required to submit Foreign Ownership Certifications to the Certification Agent; and the Court

finding that (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§

157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) proper and

adequate notice of the Motion and the hearing thereon has been given and that no other or further

notice is necessary; and the Court finding that the relief requested in the Motion is in the best

interests of the Debtors, their estates, and creditors; and after due deliberation, and good and

sufficient cause appearing therefor, it is hereby;

ORDERED, that the Motion is granted; and it is further

ORDERED, that the following procedures shall apply to the submission of Foreign

Ownership Certifications by Holders of Senior Loan Claims and/or Senior Guaranty Claims:

    a) Following entry of this Order, the Certification Agent will provide to each Holder of a Senior Loan Claim and/or Senior Guaranty Claim a Foreign Ownership Certification (which includes instructions for completing the Foreign Ownership Certification), substantially in the form attached ~~to the Motion~~hereto as Exhibit A-1, and a description, substantially in the form attached ~~to the Motion~~hereto as Exhibit B-1, of the foreign ownership certification procedures (collectively, the "Foreign Ownership Package").

    b) For purposes of distributing the Foreign Ownership Package, ~~March 22,~~April 13, 2012 will serve as the record date (the "Certification Record Date"). The Senior Loan Agent will provide the Certification Agent with a list of Holders of Senior Loan Claims and/or Senior Guaranty Claims as of the Certification Record Date no later than two (2) business days after entry of this Order.

    c) Each Holder of a Senior Loan Claim and/or a Senior Guaranty Claim that does not want to be considered entirely foreign-owned and foreign-controlled must complete and submit an original Foreign Ownership Certification to the Certification Agent on or before ~~April 30,~~May 21, 2012 (the "Certification Deadline").

    d) Holders of Senior Loan Claims and/or Senior Guaranty Claims that do not submit a Foreign Ownership Certification or that do not submit a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on

or prior to the Certification Deadline will be deemed entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan.

e) After the Certification Record Date, any Person who wishes to acquire a Senior Loan Claim and/or a Senior Guaranty Claim will not have the transfer of such Claim recognized by the Debtor or Senior Loan Agent unless such Person certifies to the Senior Loan Agent that it (a) has submitted to the Certification Agent either (i) a Foreign Ownership Certification or (ii) an alternative document in a form satisfactory to the Certification Agent that memorializes such Person's agreement to be treated as entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan; (b) was already a Holder of Senior Loan Claims of record as of the Certification Record Date or otherwise has already submitted a Foreign Ownership Certification; or (c) is a market maker acquiring Senior Loan Claims and/or Senior Guaranty Claims not for its own account.

f) After a Foreign Ownership Certification is submitted, if the Holder of a Senior Loan Claim and/or Senior Guaranty Claim experiences a change in foreign ownership, or if any other change occurs that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), such Holder of a Senior Loan Claim and/or Senior Guaranty Claim must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days after the Distribution Record Date (as defined below).

g) Within one (1) day after the release of an order by the FCC granting the FCC Approval, the Certification Agent will distribute a notice of such approval (the "<u>Final Certification Notice</u>") to the Senior Loan Agent and to the Holders of Senior Loan Claims and/or Senior Guaranty Claims.

h) The Final Certification Notice will notify Holders of Senior Loan Claims and/or Senior Guaranty Claims that (i) the date of such notice will be the "Distribution Record Date" for purposes of distributions to such Holders, (ii) in accordance with Section 7.7 of the DCL Plan, trades of such Claims after the Distribution Record Date will not be recognized by the Debtors or the Disbursing Agent unless a notice re-setting the Distribution Record Date shall be filed on the Court's docket by the DCL Plan Proponents and, therefore, the Holders of Senior Loan Claims and/or Senior Guaranty Claims of record on the Distribution Record Date will receive the distributions of New Common Stock and/or New Warrants (as well as Distributable Cash and New Senior Secured Term Loan), and (iii) if such Holders have experienced any change in foreign ownership, or any other

3

change that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), since such Holders last submitted a Foreign Ownership Certification, such Holders will be required to submit a final updated Foreign Ownership Certification within two (2) business days after the Distribution Record Date.

i)   The Senior Loan Agent will provide the Certification Agent with a list of Holders of Senior Loan Claims and/or Senior Guaranty Claims as of the Distribution Record Date no later than two (2) business days after receipt of written notice from the Debtors of the release of an order by the FCC granting the FCC Approval.

and it is further

ORDERED, that the following procedures shall apply for the submission of Foreign Ownership Certifications by Electing Holders of Senior Noteholder Claims:

a)   Following entry of this Order, the Certification Agent will provide to each Holder of a Senior Noteholder Claim as of the ~~Supplemental Voting~~Certification Record Date, via transmission to the record holders, including, without limitation, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees (collectively, the "Certification Nominees"), a Foreign Ownership Certification, substantially in the form attached ~~to the Motion~~hereto as Exhibit A-2, and a description of the foreign ownership certification procedures, substantially in the form attached ~~to the Motion~~hereto as Exhibit B-2, with the Supplemental Election Form included in the solicitation packages distributed pursuant to the relief requested in the Solicitation Procedures Motion.

b)   Each Electing Holder of a Senior Noteholder Claim that does not want to be considered entirely foreign-owned and foreign-controlled will complete and submit, through its Certification Nominee, an original Foreign Ownership Certification so that it is received by the Certification Agent on or prior to the Certification Deadline.  The Foreign Ownership Certification must be submitted via Certification Nominee to the Certification Agent with the Electing Holder's Supplemental Election Form.

c)   Electing Holders of Senior Noteholder Claims that do not submit a Foreign Ownership Certification or that do not submit a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on or prior to the Certification Deadline will be deemed entirely foreign-

4

owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan.

d)  After a Foreign Ownership Certification is submitted, if an Electing Holder of a Senior Noteholder Claim experiences a change in foreign ownership, or if any other change occurs that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), such Electing Holder of a Senior Noteholder Claim must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days after the Distribution Record Date (as defined below).

e)  Within one (1) business day after the release of an order by the FCC granting the FCC Approval, the Certification Agent will distribute the Final Certification Notice via electronic mail to Electing Holders of Senior Noteholder Claims.

f)  The Final Certification Notice will notify Electing Holders of Senior Noteholder Claims that (i) the date of such notice will be the "Distribution Record Date" for purposes of distributions to such Holders and (ii) if such Holders have experienced any change in foreign ownership, or any other change that such Holder believes warrants amendment (including changes reated to any Alternative Recipient Designation), since such Holders last submitted a Foreign Ownership Certification, such Holders will be required to submit a final updated Foreign Ownership Certification within two (2) business days after the Distribution Record Date.

and it is further

ORDERED, that the Debtors may treat Electing Holders of Other Parent Claims as entirely foreign-owned and foreign-controlled for purposes of calculating compliance with the FCC foreign ownership requirements; however, in such event such parties shall be entitled to receive equity distributions, if any, under the DCL Plan in the form of New Common Stock; and it is further

ORDERED, that Epiq Bankruptcy Solutions, LLC is authorized to serve as Certification Agent and perform all services related to the certification process as described in the Motion; and it is further

ORDERED, that the forms of Foreign Ownership Certification, and descriptions of the foreign ownership certification procedures are hereby approved, and the Debtors are authorized to make any non-substantive and/or immaterial changes to the Foreign Ownership Certification and the descriptions of the foreign ownership certification procedures without further order of this Court, including, without limitation, changes to correct typographical, grammatical, and/or formatting errors or omissions; and it is further

ORDERED, that the Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: Wilmington, Delaware
       _____, 2012

                                        _____
                                        The Honorable Kevin J. Carey
                                        United States Bankruptcy Judge

6

**<u>EXHIBIT A-1</u>**

## SECTION 5.4.2(a) FOREIGN OWNERSHIP CERTIFICATION

### To Be Completed by

### Holders of Senior Loan Claims and/or Senior Guaranty Claims or Third Parties ~~Affiliated with and~~ Designated by Such Holders to Receive Distributions on Account of Such Claims

### PURSUANT TO THE ~~THIRD~~FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES ("TRIBUNE") PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A. (the "DCL PLAN")

### INTRODUCTION

In accordance with the Order of the Bankruptcy Court of [●] and pursuant to Section 5.4.2(a) of the DCL Plan, you as a Holder of Senior Loan Claim and/or Senior Guaranty Claim (a "Senior Claim Holder") are required to submit a Foreign Ownership Certification Form. This Certification is necessary in order to enable the Tribune Company and certain of its subsidiaries ("Tribune") to ensure compliance with the foreign ownership limitations set forth in the Communications Act of 1934, as amended (the "Communications Act"), and the rules and regulations of the Federal Communications Commission ("FCC"). If you fail to submit a Foreign Ownership Certification Form, you may be deemed to be an entity that is entirely foreign-owned and foreign-controlled. As a result, you may receive New Warrants in lieu of all or part of your distribution of New Common Stock. Below is a detailed explanation regarding the information that must be supplied, as well as the deadlines and procedures for submitting the Foreign Ownership Certification Form.

### DETAILED INSTRUCTIONS

#### Section I: Preliminary Information

Section I requests information that is necessary to allow Tribune to make appropriate distributions based on the information supplied in Section II (Foreign Ownership) and to ensure compliance with the FCC's rules and regulations. Specifically, Section I requests information concerning the extent to which a Senior Claim Holder is under common ownership or control, or otherwise affiliated, with any other entity that will receive New Common Stock in Tribune such that the interests of such entities would need to be aggregated pursuant to the FCC's broadcast attribution rules and policies. You are encouraged to refer to the FCC rules and policies governing attribution of ownership, including 47 C.F.R. § 73.3555 and its associated Notes, and/or to consult with your own advisors concerning the completion of this aspect of Section I of this Form.

In addition, Section I requests information concerning the identity of Senior Claim Holder(s) and the amount(s) of claims, as well as the extent to which Senior Claim Holders wish to designate ~~a~~an affiliate (or affiliates) of such Holder or other third party (or parties) ~~affiliated with the applicable Senior Claim Holder~~ to receive all or a portion of its New Common Stock and/or New Warrants (hereinafter "Designee(s)"). To the extent that a Senior Claim Holder identifies one or more Designees in Section I, the information supplied in Section II should be supplied on behalf of the Designee(s) rather than the Senior Claim Holder(s), unless a Senior Claim Holder will still receive some portion of the distribution to which it is entitled, in which case information regarding both the Designee(s) and the Senior Claim Holder must be supplied.

**Failure to Complete Section I:** If you fail to complete and submit Section I to the reasonable satisfaction of Tribune or if you fail to comply with the applicable deadlines or procedures established by the Bankruptcy Court, then you will receive distributions as provided in the DCL Plan and based on information that is readily ascertainable from records kept by Tribune and/or the Senior Loan Agent.

#### Section II: Foreign Ownership

Pursuant to Section 5.4.2(a) of the DCL Plan, Section II requests information necessary to allow Tribune to demonstrate compliance with the foreign ownership limitations set forth in Section 310(b) of the Communications Act upon emergence from bankruptcy, consistent with Tribune's representations to the FCC in the applications for FCC consent to assign the Tribune FCC licenses, and to take certain other actions

necessary to implement the DCL Plan. The foreign ownership limits apply to both voting and non-voting equity interests. Accordingly, the DCL Plan provides for the issuance of New Warrants instead of New Common Stock as may be required to ensure Tribune's compliance with applicable foreign ownership limitations. The information supplied in the Foreign Ownership Certification is necessary to allow Tribune to determine the extent to which it must issue New Warrants to certain Senior Claim Holders in order to ensure its compliance with these limitations.

Each individual Senior Claim Holder receiving this Form (and/or their Designee(s)) must submit a Foreign Ownership Certification (an "Individual Foreign Ownership Certification"). However, if multiple Senior Claim Holders (and/or Designees) are controlled by the same parent entity or affiliated investment manager and the parent entity or affiliated investment manager makes the additional certifications required in Section II, such Senior Claim Holders (and/or Designees) may combine their information on one certification form (a "Consolidated Foreign Ownership Certification").

You are encouraged to refer to the DCL Plan for more information concerning the distribution of New Warrants in lieu of New Common Stock and the Foreign Ownership Certification process, as well as the attached "Memorandum Concerning the FCC's Foreign Ownership Restrictions and Methods for Foreign Ownership Calculations." Given the complexities of the FCC's foreign ownership restrictions and policies, you are also encouraged to consult your own advisors concerning the completion of Section II of this Form.

**Failure to Complete Section II:** If you fail to complete and submit Section II to the reasonable satisfaction of Tribune or if you fail to comply with the applicable deadlines or procedures established by the Bankruptcy Court, then, under Section 5.4.2 of the DCL Plan, you may be deemed to be an entity that is entirely foreign-owned and foreign-controlled. As a result, you may receive New Warrants in lieu of all or part of your distribution of New Common Stock.

## DEADLINES AND PROCEDURES FOR SUBMISSION

Senior Claim Holders (and/or their Designee(s)) must submit their executed Foreign Ownership Certification Form to Epiq Bankruptcy Solutions, LLC (the "Certification Agent") by ~~April 30, 2012.~~[•].

Any entity that does not currently hold a Senior Loan Claim and/or Senior Guaranty Claim but acquires such claim after the ~~April 30, 2012~~[•] deadline for submission, except for market makers acquiring Senior Loan Claims not for their own account, must submit an executed Foreign Ownership Certification Form to the Certification Agent and certify to the Senior Loan Agent that it has done so in order to have its trade cleared.

**If, following the submission of this Foreign Ownership Certification, the Senior Claim Holder(s) (and/or their Designee(s)) experience a change in foreign ownership, or if any other change occurs that the Senior Claim Holders(s) (and/or their Designee(s)) believe warrants amendment, the Senior Claim Holder(s) (and/or their Designee(s)) must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification Form so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective or (ii) two (2) business days after the Certification Agent distributes a notice to Senior Claim Holders notifying such Holders that the FCC released an order granting the necessary FCC Approval.**

# FOREIGN OWNERSHIP CERTIFICATION FORM

**:CTION I:  PRELIMINARY INFORMATION**

1.　　Include in the table below the name(s) and contact information for the Senior Claim Holder(s) on whose behalf this Foreign Ownership Certification Form is being completed.  List multiple Senior Claim Holders below <u>only if</u> they will be covered by a <u>Consolidated</u> Foreign Ownership Certification. (Information concerning other Claim Holders whose interests must be aggregated pursuant to the FCC's attribution rules and policies and for which <u>separate</u> Foreign Ownership Certification Form(s) are being submitted should be provided in response to Item 3, below.)

| | Senior Claim Holder 1 | Senior Claim Holder 2 (if any) | Senior Claim Holder 3 (if any) |
|---|---|---|---|
| Name | | | |
| Amount of Claim | | | |
| Mailing Address / City, State, Zip Code | | | |
| Contact Person | | | |
| Telephone Number | | | |
| Email | | | |

**PLEASE REPORT ANY ADDITIONAL ENTITIES FOR WHICH A CONSOLIDATED FOREIGN OWNERSHIP CERTIFICATION FORM(S) IS BEING SUBMITTED ON A SEPARATE ATTACHMENT.**

2.   **Indicate below whether the Senior Claim Holder(s) for which this form is being submitted intend(s) to designate one or more ~~affiliated~~ third parties ("Designee(s)") to receive all or a portion of the New Common Stock and/or New Warrants to which it/they may be entitled.  If so, list the names of the Designee(s) and the amount or percentage of the claim(s) which should be distributed to each Designee.**

☐    **No Designation**

☐    **Designation**

The Senior Claim Holder(s) designate(s) the following ~~affiliated~~ entity or entities to receive New Common Stock and/or New Warrants based on the amounts[1] or percentages[2] of its claim as set forth below.

| | Name | Mailing Address / City, State, Zip Code | Telephone Number / Email | Amount ($) OR Percentage (%) of Senior Claim to be Distributed |
|---|---|---|---|---|
| Senior Claim Holder 1 | | | | |
| Designee 1 | | | | |
| Designee 2 (if any) | | | | |
| Designee 3 (if any) | | | | |
| Total | N/A | N/A | N/A | $ _____ OR 100% |
| Senior Claim Holder 2 (if any) | | | | |
| Designee 1 (if any) | | | | |
| Designee 3 (if any) | | | | |
| Designee 3 (if any) | | | | |
| Total | N/A | N/A | N/A | $ _____ OR 100% |
| Senior Claim Holder 3 (if any) | | | | |
| Designee 1 (if any) | | | | |
| Designee 3 (if any) | | | | |
| Designee 3 (if any) | | | | |
| Total | N/A | N/A | N/A | $ _____ OR 100% |

---

[1] The Claim amounts reflected in the records of the Senior Loan Agent shall control for all purposes.  If a Claim Holder designates an ~~affiliated~~ entity or entities in the table below to receive New Common Stock and/or New Warrants based on a Claim amount that is in aggregate in excess of the Claim reflected for such Claim Holder in the records of the Senior Loan Agent, distributions shall be made to such ~~affiliated~~ entity based on 100% of the lower Claim amount reflected for such Claim Holder in the records of the Senior Loan Agent, with the reduction applied ratably to the designated entities as necessary.

[2] For each individual Senior Claim Holder making designations on the basis of percentages of its claim, the total of the percentage allocations in the table below must equal 100%.

**PLEASE REPORT THE DESIGNEES OF ANY ADDITIONAL SENIOR CLAIM HOLDERS ON A SEPARATE ATTACHMENT.**

3.    **Indicate below whether the Senior Claim Holder(s) listed in response to item 1 and/or any Designee(s) listed in response to item 2 above are affiliated with any <u>other</u> Claim Holder(s) and/or Designee(s) entitled to receive New Common Stock, including other such entities under common ownership or control, such that their interests are required to be aggregated pursuant to the FCC's broadcast attribution rules and policies, including 47 C.F.R. § 73.3555 and associated Notes.  If an entity is listed in response to item 1 above, it should <u>not</u> be listed again below.**

   **Check one of the following boxes and complete:**

☐    **No Other Entities With Interests Subject to Aggregation:**  The Senior Claim Holder and/or its Designee(s) are not affiliated with any other entity that is entitled to receive New Common Stock in Tribune that would need to have its interest aggregated pursuant to the FCC's broadcast attribution rules.

☐    **Other Entities With Interests Subject to Aggregation:**  The Senior Claim Holder and/or its Designee(s) are affiliated with the following other entities that are also entitled to receive New Common Stock in Tribune and whose interests must be aggregated pursuant to the FCC's broadcast attribution rules:

   a.    _____

   b.    _____

   c.    _____

   d.    _____

   e.    _____

   f.    _____

   g.    _____

   h.    _____

   i.    _____

   j.    _____

**PLEASE REPORT ANY ADDITIONAL ENTITIES WITH INTERESTS SUBJECT TO AGGREGATION ON A SEPARATE ATTACHMENT.**

**SECTION II:  FOREIGN OWNERSHIP**

**\*\*ALL SENIOR CLAIM HOLDERS (AND/OR THEIR DESIGNEES) MUST COMPLETE EITHER QUESTION 1 OR QUESTION 2 OF THIS SECTION.**

1.      **Individual Foreign Ownership Certification**

This Foreign Ownership Certification is being made pursuant to the DCL Plan on behalf of _____, the holder of a Senior Loan Claim and/or Senior Guaranty Claim, and/or the following ~~affiliated~~ Designee(s) of such Holder _____ ("Senior Claim Holder/Designee").

a.      **If in Section I (Preliminary Information), Question 2, above, the Senior Claim Holder has (i) not specified any Designee, or (ii) has specified only one Designee to receive all of the distribution to which it is entitled, complete the following, providing information for the Senior Claim Holder (in the event that no Designee has been specified) or the Designee, as applicable:**

i.      **State or Country of Incorporation/Organization** – The Senior Claim Holder/Designee is organized under the laws of:

☐      State or territory of the United States: _____.

☐      Other: _____.

*If your answer is "Other," you may skip the remainder of this question, because entities organized under the laws of a country other than the United States will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.*

ii.      **Foreign Equity and Voting Percentages** – Complete one of the following:

☐      Foreign entities or foreign individuals hold, in the aggregate, the percentages of equity and voting interests in the Senior Claim Holder/Designee reported below.

Foreign Equity Percentage: _____%

Foreign Voting Percentage: _____%.

☐      I am unable to certify the exact percentage of the foreign equity interest and/or the foreign voting interest in the Senior Claim Holder/Designee; however, I hereby certify that the aggregate percentage(s) of such foreign interests are no higher than the maximum percentage(s) reported below:

Maximum Foreign Equity Percentage: _____%

Maximum Foreign Voting Percentage: _____%.

☐      I am unable to certify\*\* the percentage of the foreign equity interest and/or foreign voting interest in the Senior Claim Holder/Designee.

\*\*If a Senior Claim Holder/Designee is unable to certify its foreign equity and foreign voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the Senior Claim Holder/Designee will receive upon Tribune's emergence from bankruptcy.

*If you have completed subsection a. of this Question 1, you should not complete subsection b. or Question 2 of this section, and should proceed to Section III (Certification).*

b.      If in Section I (Preliminary Information), Question 2, above, the Senior Claim Holder has (i) specified a single Designee but such Designee will receive less than the total distribution to which the Senior Claim Holder is entitled (*i.e.*, the Senior Claim Holder itself will receive some portion of such distribution notwithstanding the designation), or (ii) specified multiple Designees to receive distributions, complete the table below.  Information for the Senior Claim Holder must be supplied **only** if the Senior Claim Holder itself will receive some portion of the distribution notwithstanding its designation.

| | Senior Claim Holder (if receiving partial distribution) | Designee 1 | Designee 2 (if any) | Designee 3 (if any) |
|---|---|---|---|---|
| Name | | | | |
| State or Country of Incorporation/Organization** | | | | |
| Foreign Equity Percentage | | | | |
| Foreign Voting Percentage | | | | |
| OR | | | | |
| Maximum Foreign Equity Percentage | | | | |
| Maximum Foreign Voting Percentage | | | | |
| Unable to Certify*** | | | | |

**If an entity is organized under the laws of a country other than the United States, you need not supply foreign equity or voting percentages, because such entities will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.

*** If a Senior Claim Holder/Designee is unable to certify its foreign equity and foreign voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the Senior Claim Holder/Designee will receive upon Tribune's emergence from bankruptcy.

2.      **Consolidated Foreign Ownership Certification**

This Foreign Ownership Certification is being made pursuant to the DCL Plan on behalf of (a) the following Holder(s) of Senior Loan Claims and/or Senior Guaranty Claims and/or their Designee(s) ("Senior Claim Holders/Designee(s)"):

_____

_____

_____

_____

and (b) the following parent entity or affiliated investment manager of each of the above-listed Senior Claim Holders/Designees ("Certifying Parent"):

_____

Certifying Parent certifies that (a) Certifying Parent directly or indirectly controls each of the Senior Claim Holders/Designee(s); (b) for purposes of the assessment of Tribune's compliance with Section 310(b) of the Communications Act, the consolidated information provided below has been aggregated in accordance with the rules and policies of the FCC; and (c) Certifying Parent will ensure that New Common Stock and New Warrants will be held directly or indirectly by Senior Claim Holders/Designee(s) indicated on this certification in accordance with their respective claims and that the distribution of New Common Stock and New Warrants among the members of the consolidated certification group will not cause the aggregate foreign ownership and foreign voting rights of the consolidated certification group to exceed the aggregate foreign ownership and voting percentages certified below for the consolidated certification group.

☐   Foreign entities or foreign individuals hold, in the aggregate, the percentages of equity and voting interests in the consolidated certification group reported below.

       Foreign Equity Percentage: _____%

       Foreign Voting Percentage: _____%.

☐   I am unable to certify the exact percentage of the foreign equity interest and/or the foreign voting interest in the consolidated certification group; however, I hereby certify that the aggregate percentage(s) of such foreign interests are no higher than the maximum percentage(s) reported below:

       Maximum Foreign Equity Percentage: _____%

       Maximum Foreign Voting Percentage: _____%.

☐   I am unable to certify** the percentage of the foreign equity interest and/or foreign voting interest in the consolidated certification group.

       **If a consolidated certification group is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the members of the group will receive upon Tribune's emergence from bankruptcy.

*The Foreign Equity Percentages and Foreign Voting Percentages for each individual member of the consolidated certification group must be set forth in subsections a. and/or b. below.*

    **a.**   **If in Section I (Preliminary Information), Question 2, above, a Senior Claim Holder covered by this consolidated certification (i) has not specified any Designee, or (ii) has specified only one Designee to receive all of the distribution to which it is entitled, complete the following, providing information for each Senior Claim Holder (in the event that no Designee has been specified) or Designee, as applicable:**

| | Senior Claim Holder (or Designee) 1 | Senior Claim Holder (or Designee) 2 | Senior Claim Holder (or Designee) 3 |
|---|---|---|---|
| **Name** | | | |
| **State or Country of Incorporation/Organization**** | | | |
| **Foreign Equity Percentage** | | | |
| **Foreign Voting Percentage** | | | |
| OR | | | |
| **Maximum Foreign Equity Percentage** | | | |
| **Maximum Foreign Voting Percentage** | | | |
| **Unable to Certify**** | | | |

       **If an entity is organized under the laws of a country other than the United States, you need not supply foreign equity or voting percentages, because such entities will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.

       *** If a Senior Claim Holder/Designee is unable to certify its foreign equity and foreign voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the Senior Claim Holder/Designee will receive upon Tribune's emergence from bankruptcy.

       *If you have completed subsection a. of this Question 2 you should complete subsection b. only if one or more Senior Claim Holders covered by this consolidated certification has (i) specified a single Designee but such Designee will receive less than the total distribution to which the Senior Claim Holder(s) is/are entitled, or (ii) specified multiple Designees to receive distributions. If you are not completing subsection b., you should proceed to the next section of this form.*

**PLEASE REPORT ANY ADDITIONAL SENIOR CLAIM HOLDERS OR DESIGNEES ON A SEPARATE ATTACHMENT.**

b.    If in Section I (Preliminary Information), Question 2, above, one or more Senior Claim Holders covered by this consolidated certification has (i) specified a single Designee but such Designee will receive less than the total  distribution to which the Senior Claim Holder(s) is/are entitled (*i.e.*, a  Claim Holder will receive some portion of such distribution notwithstanding the designation), or (ii) specified multiple Designees to receive distributions, complete the table below.  Information for Senior Claim Holder(s) must be supplied <u>only if</u> a Senior Claim Holder itself will receive some portion of the distribution notwithstanding its designation.

| | Senior Claim Holder 1 (if receiving partial distribution) | Senior Claim Holder 2 (if receiving partial distribution) | Senior Claim Holder 3 (if receiving partial distribution) | Designee 1 | Designee 2 (if any) | Designee 3 (if any) |
|---|---|---|---|---|---|---|
| **Name** | | | | | | |
| **Senior Claim Holder 1 Name:** | N/A | N/A | N/A | | | |
| **Senior Claim Holder 2 (if any) Name:** | N/A | N/A | N/A | | | |
| **Senior Claim Holder 3 (if any) Name:** | N/A | N/A | N/A | | | |
| **State or Country of Incorporation/Organization**\*\* | | | | | | |
| **Foreign Equity Percentage** | | | | | | |
| **Foreign Voting Percentage** | | | | | | |
| OR | | | | | | |
| **Maximum Foreign Equity Percentage** | | | | | | |
| **Maximum Foreign Voting Percentage** | | | | | | |
| **Unable to Certify**\*\*\* | | | | | | |

\*\*If an entity is organized under the laws of a country other than the United States, you need not supply foreign equity or voting percentages, because such entities will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.

\*\*\* If a Senior Claim Holder/Designee is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the Senior Claim Holder/Designee will receive upon Tribune's emergence from bankruptcy.

**PLEASE REPORT ANY ADDITIONAL SENIOR CLAIM HOLDERS OR DESIGNEES ON A SEPARATE ATTACHMENT.**

`

## SECTION III:  CERTIFICATION

**ALL SENIOR CLAIM HOLDERS RECEIVING THIS FORM MUST COMPLETE THIS SECTION.**

By the signature below, the undersigned (a) certifies that he/she is authorized by the Senior Claim Holder(s) and/or their Designee(s) to submit this Foreign Ownership Certification Form, and (b) certifies individually and on behalf of the Senior Claim Holder(s) and/or their Designee(s) and any Certifying Parent identified herein that the information provided herein is accurate and complete to the best of his or her knowledge and that all relevant determinations were made in compliance with the FCC's rules, regulations and policies.

Signed _____

Name/Title: _____

Senior Claim Holder: _____

Address: _____

Name of Parent Company or Controlling Entity (if any):

_____

Address: _____

Date:_____

THIS FORM MUST BE COMPLETED AND RETURNED TO THE CERTIFICATION AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE CERTIFICATION AGENT BY ~~APRIL 30, 2012.~~[•].

THE INFORMATION PROVIDED HEREIN MUST BE UPDATED PURSUANT TO THE PROCEDURES AND BY THE APPLICABLE DEADLINES ESTABLISHED BY THE BANKRUPTCY COURT.

## ATTACHMENT A
## FCC FOREIGN OWNERSHIP BACKGROUND MATERIALS

THE ATTACHED FOREIGN OWNERSHIP MEMORANDUM MAY BE USEFUL TO
PARTIES IN MAKING THE FOREIGN OWNERSHIP CERTIFICATION REQUIRED
FOR EACH CLAIM HOLDER ELIGIBLE TO RECEIVE NEW COMMON STOCK
PURSUANT TO THE ~~THIRD~~FOURTH AMENDED JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED
BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND
JPMORGAN CHASE BANK, N.A.  GIVEN THE COMPLEXITIES OF THE FCC'S
FOREIGN OWNERSHIP RESTRICTIONS AND POLICIES, INDIVIDUAL CLAIM
HOLDERS AND CERTIFYING PARENTS ARE ENCOURAGED TO CONSULT THEIR
OWN ADVISORS CONCERNING THE COMPLETION OF THE FOREIGN
OWNERSHIP CERTIFICATION.

## MEMORANDUM CONCERNING THE FCC'S FOREIGN OWNERSHIP RESTRICTIONS AND METHODS FOR FOREIGN OWNERSHIP CALCULATIONS

**The following information concerning the foreign ownership restrictions administered by the Federal Communications Commission ("FCC") is provided to assist each Holder of a Senior Loan Claim and/or Senior Guaranty Claim or Senior Noteholder Claim eligible to receive New Common Stock in Tribune pursuant to the DCL Plan (a "Claim Holder") and each Certifying Parent, as applicable, in preparing its "Foreign Ownership Certification" as required pursuant to the ~~Third~~Fourth Amended Joint Plan of Reorganization for Tribune Company ("Tribune") and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. This memorandum provides a general explanation of the FCC's foreign ownership restrictions and policies as well as the methods the agency uses to calculate foreign ownership levels in broadcast companies. Foreign ownership issues vary from case to case and are often fact-dependent. Accordingly, as the FCC expressly has stated, no set of guidelines will provide specific answers to every foreign ownership scenario. Given the complexities of the FCC's foreign ownership restrictions and policies, individual Claim Holders and Certifying Parents are encouraged to consult their own advisors concerning the completion of the Certification.**

### The Foreign Ownership Restrictions

- Section 310 of the Communications Act of 1934, as amended (the "Act"), restricts foreign ownership of any entity licensed by the FCC to provide broadcast and certain other services. 47 U.S.C. § 310. Among other prohibitions, foreign individuals and foreign companies generally may not have direct or indirect ownership or voting rights totaling more than 25% in a corporation that controls the licensee of a television or radio broadcast station.

- Under the Act, Tribune's deemed percentages of foreign ownership and foreign voting rights will depend on the citizenship of its individual stockholders and upon the percentage of direct and indirect foreign ownership and voting rights in those Tribune stockholders that are entities.

- The Act gives the FCC some flexibility to waive the 25% foreign ownership cap, but the agency has done so very rarely with respect to broadcast licenses. Accordingly, Tribune intends to remain in compliance with the 25% cap upon its emergence from bankruptcy.

### Calculating Foreign Ownership

**Non-U.S. Entities:**

- All entities organized outside of the United States, including without limitation foreign corporations, limited liability companies, limited partnerships, and foreign banks, are considered 100% foreign, even if they have U.S. investors. By way of example, the interest held by a company organized under the laws of the Cayman Islands will be considered as 100% foreign in equity and in voting, even if it is owned by a U.S. entity and has U.S. individuals as officers and directors.

**Holding Companies/Subsidiaries:**

- The FCC will take into account both direct and indirect ownership interests. A foreign individual or company cannot avoid the statutory limits simply by using a U.S. entity as the vehicle for holding an interest in a broadcast licensee.

- Similarly, the interest of a U.S. entity that invests in an FCC licensee through a foreign subsidiary (directly or indirectly) will be considered foreign.

**Interests Considered:**

- To assess compliance, the FCC examines both voting and equity interests.

- Although the statutory language applies the 25% limitation to "corporations," the statute defines "corporation" to include any form of business organization, and the FCC has adopted policies to apply those limitations to interests held in or through other entities, such as limited partnerships and LLCs.

**Equity and Voting Calculated Separately:**

- Determining compliance requires a two-pronged analysis, one pertaining to foreign *equity* interests and one to foreign *voting* interests.

- Equity and voting interests must be calculated separately, and both must comply with the statutory cap.

- Ownership and voting interests that cannot be identified should be treated as foreign interests.

**Aggregation of Interests:**

- The holdings of all foreign investors, whether direct or indirect, are aggregated to determine whether the sum of the interests in the FCC licensee exceeds the statutory benchmarks.

**Indirect Interests/Use of Multiplier:**

- To calculate the level of foreign equity ownership held through intervening U.S. entities, a "multiplier" may be used.  For example, a U.S. corporation that has 10% foreign ownership and that, in turn, owns 20% of a broadcast licensee, would be deemed to contribute 2% (10% x 20%) to the aggregate foreign ownership of the broadcast licensee.

- When determining the level of indirect foreign *voting* interests, however, an investor holding in excess of 50% of the vote in an intervening entity is not given the benefit of the multiplier to dilute the percentage of its voting power.  Instead, the voting interest of the entity it controls flows, in whole, to the next tier.

- When calculating indirect *equity* interests, the multiplier generally may be used regardless of the amount of equity an investor holds.

**Partnerships and LLCs:**

- The FCC examines both general and limited partnership interests (and both managing and non-managing LLC interests).

- The FCC calculates compliance with foreign equity ownership limitations based on capital contributions of the partners for their partnership interests (or LLC members for LLC membership interests).

- The calculation for foreign voting rights in limited partnerships and LLCs differs based on whether a member or limited partner is "insulated" under FCC criteria.  For purposes of this response, a limited partner or LLC member is considered to be "insulated" if the organizational documents of the limited partnership or LLC provide that the limited partner or LLC member will *not*:

- directly or through its directors, officers, or partners, act as an employee of the LLC/limited partnership if such functions, directly or indirectly, relate to the media enterprises of the LLC/limited partnership;

- serve in any material capacity as an independent contractor or agent with respect to the LLC/limited partnership's media enterprises;

- communicate with the LLC/limited partnership or the LLC/limited partnership's managing board on matters pertaining to the day-to-day operations of the LLC/limited partnership's business;

- vote to admit new members of the LLC/limited partnership, unless the admission can be vetoed by the general partner(s) of the limited partnership or the managing board or managing member of the LLC;

- participate in any vote on the removal of any member of the LLC or any general partner of the limited partnership, unless such LLC member or general partner is (i) subject to bankruptcy proceedings, (ii) is adjudicated incompetent by a court of competent jurisdiction, or (iii) is removed for cause, as determined by an independent party;

- perform any services for the LLC/limited partnership that materially relate to its media activities; or

- become actively involved in the management or operation of the LLC/limited partnership's media businesses.

- For a limited partnership with insulated limited partners, the percentage of foreign voting rights for the limited partnership generally will be the percentage of foreign voting rights in the general partner(s). If the limited partnership has non-insulated limited partners in which foreign parties hold voting rights, those foreign voting rights also need to be included in the computation if they would increase the foreign voting percentage.

- For an LLC with non-insulated members, the percentage of foreign voting rights for the LLC generally will be the percentage of foreign voting rights for the member(s) that have voting rights under the LLC operating agreement (and, consequently, are not "insulated"). If the LLC has non-insulated LLC members in which foreign parties hold voting rights, those foreign voting rights also need to be included in the computation if they would increase the foreign voting percentage.

- The following partnerships and LLCs should be reported as having 100% foreign voting rights:

  - Any general partnership in which any partner is a foreign person or entity or a U.S. entity that is controlled, directly or indirectly, by one or more foreign persons or entities;

  - Any limited partnership or LLC that is directly or indirectly controlled by one or more foreign persons or entities (including an entity organized under foreign law, even if that foreign entity is controlled by U.S. persons); and

  - Any limited partnership or LLC in which a general partner, any non-insulated limited partner or any non-insulated LLC member is a non-U.S. citizen, a foreign government, a corporation or partnership organized under the laws of a foreign country, or the representative of any of the foregoing (including any entity controlled by one of the foregoing).

**Multiple Classes of Stock:**

- In situations involving multiple classes of corporate stock or partnership/LLC interests, the FCC will take into account the relative value of each class to calculate foreign equity ownership.

- In the corporate context, the FCC has permitted calculations based on the capital contributions from the sale of shares for each class as well as the current trading value of each class in determining the respective weight to be given to various classes.

**Public Corporations:**

- The FCC has acknowledged the difficulties inherent in determining the percentage of foreign ownership represented by foreign shareholders in publicly traded companies. Nevertheless, the FCC requires that public corporations must ascertain their foreign ownership by a reasonable method and must be able to certify their compliance with the foreign ownership cap.

- The FCC has permitted corporations and other licensees with widely held securities to use random surveys to collect citizenship information from stockholders to demonstrate compliance with the 25% ceilings for foreign equity ownership and foreign voting rights, if the applicant did not have a simpler means to make the determination.

**Consolidated Certifications:**

- A parent company that controls multiple Claim Holders and elects to make a Consolidated Certification certifies that it has computed foreign ownership and foreign voting percentages for the Claim Holders covered by the certification in accordance with FCC's rules and policies, that it has aggregated the data in compliance with those rules and policies, that it will ensure that New Common Stock and New Warrants will be held by individual Claim Holders in accordance with their respective claims, and that the cumulative effect of New Common Stock and New Warrants holdings by the individual Claim Holders upon the aggregate foreign ownership and voting percentages of Reorganized Tribune will be no greater than that reflected in the aggregate foreign ownership and voting percentages in the Consolidated Certification.

- In aggregating the data of commonly controlled Claim Holders for a Consolidated Certification, the Certifying Parent will need to treat any included Claim Holder with more than 50% foreign voting rights as being entirely foreign controlled – that is, as having 100% foreign voting rights.

- In computing the "Maximum Foreign Equity Percentage" and "Maximum Foreign Voting Percentage," where applicable, the certifying parent will need to treat as foreign any included investor whose citizenship is unknown.

- Computations for a Consolidated Certification will need to take into account the relative amount of the Claim of each of the Claim Holders for which the Consolidated Certification is supplied.

Additional information on determining foreign ownership and foreign voting rights percentages may be found in the instructions to FCC Form 314 ("Applications for Consent to Assignment of Broadcast Station Construction Permit or License"), Section III, Subpart G ("Item 9: Alien Ownership and Control"), page 9, which may be accessed at:http://www.fcc.gov/Forms/Form314/314.pdf.

## EXHIBIT A-2

## SECTION 5.4.2(a) FOREIGN OWNERSHIP CERTIFICATION

### To Be Completed by

### Certain Holders of Senior Noteholder Claims or Third Parties ~~Affiliated with and~~ Designated by Such Holders to Receive Distributions on Account of Such Claims

### PURSUANT TO THE ~~THIRD~~FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES ("TRIBUNE") PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A. (the "DCL PLAN")

### INTRODUCTION

This Certification is necessary in order to enable the Tribune Company and certain of its subsidiaries ("Tribune") to ensure compliance with the foreign ownership limitations set forth in the Communications Act of 1934, as amended (the "Communications Act"), and the rules and regulations of the Federal Communications Commission ("FCC").

If you are a Holder of a Senior Noteholder Claim and you elected to receive the Senior Noteholder Alternative Treatment specified in Section 3.2.5(c)(i) of the DCL Plan in the Supplemental Election Form included with these materials, then you are an "Electing Senior Noteholder." In accordance with the Order of the Bankruptcy Court of [●], you and/or the ~~affiliated~~ third party (or parties) (hereinafter "Designee(s)") that you designated in such Supplemental Election Form to receive all or a portion of your New Common Stock and/or New Warrants (the "Alternative Recipient Designation") are required to complete and return this Foreign Ownership Certification as required by Section 5.4.2 of the DCL Plan for all recipients of New Common Stock in Reorganized Tribune Company. If you are an Electing Senior Noteholder and fail to submit a Foreign Ownership Certification Form, you may be deemed to be an entity that is entirely foreign-owned and foreign-controlled. As a result, you may receive New Warrants in lieu of all or part of your distribution of New Common Stock.

If you are a Holder of a Senior Noteholder Claim and you did not elect to receive the Senior Noteholder Alternative Treatment in the Supplemental Election Form, then you will receive the principally-Cash treatment specified in Section 3.2.5(c)(ii) of the DCL Plan, you are not an "Electing Senior Noteholder," and you do not need to complete and return this Foreign Ownership Certification as this form is only required for recipients of New Common Stock in Reorganized Tribune Company.

Below is a detailed explanation regarding the information that must be supplied by all Electing Senior Noteholders, as well as the deadlines and procedures for submitting the Foreign Ownership Certification Form.

### DETAILED INSTRUCTIONS

#### Section I: Preliminary Information

Section I requests information that is necessary to allow Tribune to make appropriate distributions based on the information supplied in Section II (Foreign Ownership) and to ensure compliance with the FCC's rules and regulations. Specifically, Section I requests information concerning the extent to which an Electing Senior Noteholder is under common ownership or control, or otherwise affiliated, with any other entity that will receive New Common Stock in Tribune such that the interests of such entities would need to be aggregated pursuant to the FCC's broadcast attribution rules and policies. You are encouraged to refer to the FCC rules and policies governing attribution of ownership, including 47 C.F.R. § 73.3555 and its associated Notes, and/or to consult with your own advisors concerning the completion of this aspect of Section I of this Form.

In addition, Section I requests information concerning the identity of Electing Senior Noteholder(s) and the amount(s) of claims, as well information concerning any Designee(s) identified in an Electing Senior Noteholder's Supplemental Election Form. To the extent that an Electing Senior Noteholder identified one

or more Designees in its applicable Supplemental Election Form, the information supplied in Section II should be supplied on behalf of the Designee(s) rather than the Electing Senior Noteholder(s), unless an Electing Senior Noteholder will still receive some portion of the distribution to which it is entitled, in which case information regarding both the Designee(s) and the Electing Senior Noteholder must be supplied.

**Failure to Complete Section I:** If you are an Electing Senior Noteholder and fail to complete and submit Section I to the reasonable satisfaction of Tribune or if you fail to comply with the applicable deadlines or procedures established by the Bankruptcy Court, then you will receive distributions as provided in the DCL Plan and based on information that is readily ascertainable from records kept by Tribune.

## Section II:  Foreign Ownership

Pursuant to Section 5.4.2(a) of the DCL Plan, Section II requests information necessary to allow Tribune to demonstrate compliance with the foreign ownership limitations set forth in Section 310(b) of the Communications Act upon emergence from bankruptcy, consistent with Tribune's representations to the FCC in the applications for FCC consent to assign the Tribune FCC licenses, and to take certain other actions necessary to implement the DCL Plan.  The foreign ownership limits apply to both voting and non-voting equity interests.  Accordingly, the DCL Plan provides for the issuance of New Warrants instead of New Common Stock as may be required to ensure Tribune's compliance with applicable foreign ownership limitations.  The information supplied in the Foreign Ownership Certification is necessary to allow Tribune to determine the extent to which it must issue New Warrants to certain Claim Holders in order to ensure its compliance with these limitations.

Each individual Electing Senior Noteholder (and/or their Designee(s)) must submit a Foreign Ownership Certification (an "Individual Foreign Ownership Certification").  However, if multiple Electing Senior Noteholders (and/or Designees) are controlled by the same parent entity or affiliated investment manager and the parent entity or affiliated investment manager makes the additional certifications required in Section II, such Electing Senior Noteholders (and/or Designees) may combine their information on one certification form (a "Consolidated Foreign Ownership Certification").

You are encouraged to refer to the DCL Plan for more information concerning the distribution of New Warrants in lieu of New Common Stock and the Foreign Ownership Certification process, as well as the attached "Memorandum Concerning the FCC's Foreign Ownership Restrictions and Methods for Foreign Ownership Calculations."  Given the complexities of the FCC's foreign ownership restrictions and policies, you are also encouraged to consult your own advisors concerning the completion of Section II of this Form.

**Failure to Complete Section II:** If you are an Electing Senior Noteholder and fail to complete and submit Section II to the reasonable satisfaction of Tribune or if you fail to comply with the applicable deadlines or procedures established by the Bankruptcy Court, then, under Section 5.4.2 of the DCL Plan, you may be deemed to be an entity that is entirely foreign-owned and foreign-controlled.  As a result, you may receive New Warrants in lieu of all or part of your distribution of New Common Stock.

## Section III: Certification

All Electing Senior Noteholders must complete the certification and the form must bear an original signature.

## DEADLINES AND PROCEDURES FOR SUBMISSION

Electing Senior Noteholders (and/or their Designee(s)) must submit their executed Foreign Ownership Certification Form to the applicable record holder of their Senior Noteholder Claims (the "Voting Nominee") with their Supplemental Election Form so that it is actually received by the Certification Agent no later than ~~April 30, 2012.~~[●].

If, following the submission of this Foreign Ownership Certification, the Electing Senior Noteholder(s) (and/or their Designee(s)) experience a change in foreign ownership, or if any other change occurs that the Electing Senior Noteholder(s) (and/or their Designee(s)) believe warrants amendment (including changes related to any Alternative Recipient Designation), the Electing Senior Noteholder(s) (and/or their Designee(s)) must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification Form so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective or (ii) two (2) business days after the Certification Agent distributes a notice to Electing Senior Noteholders notifying such Holders that the FCC released an order granting the necessary FCC Approval.

# FOREIGN OWNERSHIP CERTIFICATION FORM

## CTION I:  PRELIMINARY INFORMATION

1.   Include in the table below the name(s) and contact information for the Electing Senior Noteholder(s) on whose behalf this Foreign Ownership Certification Form is being completed.  List multiple Electing Senior Noteholders below <u>only if</u> they will be covered by a <u>Consolidated</u> Foreign Ownership Certification.  (Information concerning other Claim Holders whose interests must be aggregated pursuant to the FCC's attribution rules and policies and for which <u>separate</u> Foreign Ownership Certification Form(s) are being submitted should be provided in response to Item 3, below.)

|  | Electing Senior Noteholder 1 | Electing Senior Noteholder 2 (if any) | Electing Senior Noteholder 3 (if any) |
|---|---|---|---|
| Name |  |  |  |
| Amount of Claim |  |  |  |
| Mailing Address / City, State, Zip Code |  |  |  |
| Contact Person |  |  |  |
| Telephone Number |  |  |  |
| Email[1] |  |  |  |

**PLEASE REPORT ANY ADDITIONAL ENTITIES FOR WHICH A CONSOLIDATED FOREIGN OWNERSHIP CERTIFICATION FORM(S) IS BEING SUBMITTED ON A SEPARATE ATTACHMENT.**

2.   Indicate below whether the Electing Senior Noteholder(s) for which this form is being submitted designated one or more ~~affiliated~~ third parties ("Designee(s)") to receive all or a portion of the New Common Stock and/or New Warrants to which it/they may be entitled on such Electing Senior Noteholder's Supplemental Election Form.  If so, list the names of the Designee(s) and the percentage of the claim(s) which should be distributed to each Designee.

In the initial Foreign Ownership Certification to be returned with the Electing Senior Noteholder's Supplemental Election Form, please provide the exact same Designee information as provided on such Supplemental Election Form.  If the Designee information provided on the Electing Senior Noteholder's Supplemental Election Form differs from that set forth in response to this question or any other question on the initial Foreign Ownership Certification, the information set forth in the Supplemental Election Form will be deemed controlling and any Designee for which foreign ownership information is not supplied herein will be deemed 100% foreign, which may result in its receipt of New Warrants in lieu of all or part of its distribution of New Common Stock.

After an initial Foreign Ownership Certification is submitted with the Electing Senior Noteholder's Supplemental Election Form, the Electing Senior Noteholder may change its Alternative Recipient Designation by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days Certification Agent distributes a notice to Electing Senior Noteholders notifying such Holders that the FCC released an order granting the necessary FCC Approval.

---

[1] Electing Senior Noteholders <u>must</u> provide an email address in order to receive electronic service of notices from the Certification Agent, including the notice of the release of an order by the FCC granting the FCC Approval.

13415156.1

☐     **No Designation**

☐     **Designation**

a.     The Electing Senior Noteholder(s) designate(s) the following ~~affiliated~~ entity or entities to receive New Common Stock and/or New Warrants based on the percentages of its claim as set forth below (information provided in the initial Foreign Ownership Certification to be returned with the Electing Senior Noteholder's Supplemental Election Form should be identical to that provided on such Supplemental Election Form).

**ELECTING SENIOR NOTEHOLDER 1:** _____

| Name of Beneficial Owner or Designee(s) of Electing Senior Noteholder 1 | Mailing Address / City, State, Zip Code | Telephone Number / Email | % of Senior Noteholder Claim Designated |
|---|---|---|---|
| 1. | | | ____% |
| 2. | | | ____% |
| 3. | | | ____% |
| 4. | | | ____% |

Total of all percentage allocations listed above for Senior Noteholder 1 must equal 100%.

**ELECTING SENIOR NOTEHOLDER 2 (if any):** _____

| Name of Beneficial Owner or Designee(s) of Electing Senior Noteholder 2 (if any) | Mailing Address / City, State, Zip Code | Telephone Number / Email | % of Senior Noteholder Claim Designated |
|---|---|---|---|
| 1. | | | ____% |
| 2. | | | ____% |
| 3. | | | ____% |
| 4. | | | ____% |

Total of all percentage allocations listed above for Senior Noteholder 2 (if any) must equal 100%.

**PLEASE REPORT THE DESIGNEES OF ANY ADDITIONAL ELECTING SENIOR NOTEHOLDERS ON A SEPARATE ATTACHMENT.**

3.    Indicate below whether the Electing Senior Noteholder(s) listed in response to item 1 and/or any Designee(s) listed on the Electing Senior Noteholder's Supplemental Election Form and listed in response to item 2 above are affiliated with any <u>other</u> Claim Holder(s) (including any other Electing Senior Noteholder(s)) and/or Designee(s) entitled to receive New Common Stock, including other such entities under common ownership or control, such that their interests are required to be aggregated pursuant to the FCC's broadcast attribution rules and policies, including 47 C.F.R. § 73.3555 and associated Notes.  If an entity is listed in response to item 1 above, it should <u>not</u> be listed again below.

Check one of the following boxes and complete:

☐    **No Other Entities With Interests Subject to Aggregation:**  The Electing Senior Noteholder and/or its Designee(s) are not affiliated with any other entity that is entitled to receive New Common Stock in Tribune that would need to have its interest aggregated pursuant to the FCC's broadcast attribution rules.

☐    **Other Entities With Interests Subject to Aggregation:**  The Electing Senior Noteholder and/or its Designee(s) are affiliated with the following other entities that are also entitled to receive New Common Stock in Tribune and whose interests must be aggregated pursuant to the FCC's broadcast attribution rules:

a.    _____

b.    _____

c.    _____

d.    _____

e.    _____

f.    _____

g.    _____

h.    _____

i.    _____

j.    _____

**PLEASE REPORT ANY ADDITIONAL ENTITIES WITH INTERESTS SUBJECT TO AGGREGATION ON A SEPARATE ATTACHMENT.**

## SECTION II:  FOREIGN OWNERSHIP

**\*\*ALL ELECTING SENIOR NOTEHOLDERS (AND/OR THEIR DESIGNEES) MUST COMPLETE <u>EITHER</u> QUESTION 1 OR QUESTION 2 OF THIS SECTION, <u>AND</u> MUST COMPLETE QUESTION 3.**

1.  **Individual Foreign Ownership Certification**

This Foreign Ownership Certification is being made pursuant to the DCL Plan on behalf of _____, the holder of a  Senior Noteholder Claim, and/or the following ~~affiliated~~ Designee(s) of such Holder

_____ ("Senior Noteholder/Designee").

**a.    If the Electing Senior Noteholder has (i) not specified any Designee, or (ii) has specified only one Designee to receive all of the distribution to which it is entitled in its Supplemental Election Form and in Section I (Preliminary Information), Question 2, above, complete the following, providing information for the Electing Senior Noteholder (in the event that no Designee has been specified) or the Designee, as applicable:**

      **i.    State or Country of Incorporation/Organization** – The Senior Noteholder/Designee is organized under the laws of:

☐   State or territory of the United States: _____.

☐   Other: _____.

*If your answer is "Other," you may skip the remainder of this question, because entities organized under the laws of a country other than the United States will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.*

      **ii.    Foreign Equity and Voting Percentages** – Complete one of the following:

☐   Foreign entities or foreign individuals hold, in the aggregate, the percentages of equity and voting interests in the Senior Noteholder/Designee reported below.

      Foreign Equity Percentage: _____%

      Foreign Voting Percentage: _____%.

☐   I am unable to certify the exact percentage of the foreign equity interest and/or the foreign voting interest in the Senior Noteholder/Designee; however, I hereby certify that the aggregate percentage(s) of such foreign interests are no higher than the maximum percentage(s) reported below:

      Maximum Foreign Equity Percentage: _____%

      Maximum Foreign Voting Percentage: _____%.

☐   I am unable to certify the percentage of the foreign equity interest and/or foreign voting interest in the Senior Noteholder/Designee.

**\*\*If an Electing Senior Noteholder/Designee is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the Electing Senior Noteholder/Designee will receive upon Tribune's emergence from bankruptcy.**

*If you have completed subsection a. of this Question 1, you should not complete subsection b. or Question 2 of this section, and should proceed to Question 3.*

**b.    If the Electing Senior Noteholder has (i) specified a single Designee but such Designee will receive less than the total distribution to which the Electing Senior Noteholder is entitled (*i.e.*, the**

Electing Senior Noteholder itself will receive some portion of such distribution notwithstanding the designation), or (ii) specified multiple Designees to receive distributions in its Supplemental Election Form and in Section I (Preliminary Information), Question 2, above, complete the table below. Information for the Electing Senior Noteholder must be supplied only if the Electing Senior Noteholder itself will receive some portion of the distribution notwithstanding its designation.

| | Electing Senior Noteholder (if receiving partial distribution) | Designee 1 | Designee 2 (if any) | Designee 3 (if any) |
|---|---|---|---|---|
| Name | | | | |
| State or Country of Incorporation/Organization** | | | | |
| Foreign Equity Percentage | | | | |
| Foreign Voting Percentage | | | | |
| OR | | | | |
| Maximum Foreign Equity Percentage | | | | |
| Maximum Foreign Voting Percentage | | | | |
| Unable to Certify*** | | | | |

**If an entity is organized under the laws of a country other than the United States, you need not supply foreign equity or voting percentages, because such entities will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.

***If an Electing Senior Noteholder/Designee is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the Electing Senior Noteholder/Designee will receive upon Tribune's emergence from bankruptcy.

2.    **Consolidated Foreign Ownership Certification**

This Foreign Ownership Certification is being made pursuant to the DCL Plan on behalf of (a) the following Electing Senior Noteholders and/or their Designee(s) ("Senior Noteholders/Designee(s)"):

_____
_____
_____
_____
_____
_____

and (b) the following parent entity or affiliated investment manager of each of the above-listed Senior Noteholders/Designee(s) ("Certifying Parent"):

_____.

Certifying Parent certifies that (a) Certifying Parent directly or indirectly controls each of the Senior Noteholders/Designee(s); (b) for purposes of the assessment of Tribune's compliance with Section 310(b) of the Communications Act, the consolidated information provided below has been aggregated in accordance with the rules and policies of the FCC; and (c) Certifying Parent will ensure that New Common Stock and New Warrants will be held directly or indirectly by Senior Noteholders/Designee(s) indicated on this certification in accordance with their respective claims and that the distribution of New Common Stock and New Warrants among the members of the consolidated certification group will not cause the aggregate

foreign ownership and foreign voting rights of the consolidated certification group to exceed the aggregate foreign ownership and voting percentages certified below for the consolidated certification group.

☐     Foreign entities or foreign individuals hold, in the aggregate, the percentages of equity and voting interests in the consolidated certification group reported below.

        Foreign Equity Percentage: _____%

        Foreign Voting Percentage: _____%.

☐     I am unable to certify the exact percentage of the foreign equity interest and/or the foreign voting interest in the consolidated certification group; however, I hereby certify that the aggregate percentage(s) of such foreign interests are no higher than the maximum percentage(s) reported below:

        Maximum Foreign Equity Percentage: _____%

        Maximum Foreign Voting Percentage: _____%.

☐     I am unable to certify** the percentage of the foreign equity interest and/or foreign voting interest in the consolidated certification group.

**If a consolidated certification group is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New Common Stock and New Warrants that the members of the group will receive upon Tribune's emergence from bankruptcy.

*The Foreign Equity Percentages and Foreign Voting Percentages for each individual member of the consolidated certification group must be set forth in subsections a. and/or b. below.*

    **a.**     **If an Electing Senior Noteholder covered by this consolidated certification (i) has not specified any Designee, or (ii) has specified only one Designee to receive all of the distribution to which it is entitled in its Supplemental Election Form and in Section I (Preliminary Information), Question 2, above, complete the following, providing information for each Electing Senior Noteholder (in the event that no Designee has been specified) or Designee, as applicable:**

| | Electing Senior Noteholder (or Designee) 1 | Electing Senior Noteholder (or Designee) 2 | Electing Senior Noteholder (or Designee) 3 |
|---|---|---|---|
| Name | | | |
| State or Country of Incorporation/Organization** | | | |
| Foreign Equity Percentage | | | |
| Foreign Voting Percentage | | | |
| OR | | | |
| Maximum Foreign Equity Percentage | | | |
| Maximum Foreign Voting Percentage | | | |
| Unable to Certify*** | | | |

**If an entity is organized under the laws of a country other than the United States, you need not supply foreign equity or voting percentages, because such entities will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.

***If an Electing Senior Noteholder/Designee is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New

Common Stock and New Warrants that the Electing Senior Noteholder/Designee will receive upon Tribune's emergence from bankruptcy.

*If you have completed subsection a. of this Question 2 you should complete subsection b. only if one or more Electing Senior Noteholders covered by this consolidated certification has (i) specified a single Designee but such Designee will receive less than the total distribution to which the Electing Senior Noteholder(s) is/are entitled, or (ii) specified multiple Designees to receive distributions. If you are not completing subsection b., you should proceed to Question 3.*

**PLEASE REPORT ANY ADDITIONAL ELECTING SENIOR NOTEHOLDERS OR DESIGNEES ON A SEPARATE ATTACHMENT.**

**b.** **If one or more Electing Senior Noteholders covered by this consolidated certification has (i) specified a single Designee but such Designee will receive less than the total   distribution to which the Electing Senior Noteholder(s) is/are entitled (*i.e.*, an Electing Senior Noteholder will receive some portion of such distribution notwithstanding the designation), or (ii) specified multiple Designees to receive distributions in its Supplemental Election Form and in Section I (Preliminary Information), Question 2, above, complete the table below.  Information for Electing Senior Noteholders(s) must be supplied only if an Electing Senior Noteholder itself will receive some portion of the distribution notwithstanding its designation.**

|  | Electing Senior Noteholder 1 (if receiving partial distribution) | Electing Senior Noteholder 2 (if receiving partial distribution) | Electing Senior Noteholder 3 (if receiving partial distribution) | Designee 1 | Designee 2 (if any) | Designee 3 (if any) |
|---|---|---|---|---|---|---|
| **Name** |  |  |  |  |  |  |
| **Electing Senior Noteholder 1 Name:** | N/A | N/A | N/A |  |  |  |
| **Electing Senior Noteholder 2 (if any) Name:** | N/A | N/A | N/A |  |  |  |
| **Electing Senior Noteholder 3 (if any) Name:** | N/A | N/A | N/A |  |  |  |
| **State or Country of Incorporation/Organization**\*\* |  |  |  |  |  |  |
| **Foreign Equity Percentage** |  |  |  |  |  |  |
| **Foreign Voting Percentage** |  |  |  |  |  |  |
| OR |  |  |  |  |  |  |
| **Maximum Foreign Equity Percentage** |  |  |  |  |  |  |
| **Maximum Foreign Voting Percentage** |  |  |  |  |  |  |
| **Unable to Certify**\*\*\* |  |  |  |  |  |  |

\*\*If an entity is organized under the laws of a country other than the United States, you need not supply foreign equity or voting percentages, because such entities will be deemed to be 100% foreign for purposes of the FCC's foreign ownership limitations.

\*\*\* If an Electing Senior Noteholder/Designee is unable to certify its foreign equity or voting interests, such interests will be deemed to be 100% foreign for purposes of determining the number of shares of New

Common Stock and New Warrants that the Electing Senior Noteholders/Designee(s) will receive upon Tribune's emergence from bankruptcy.

**PLEASE REPORT ANY ADDITIONAL ELECTING SENIOR NOTEHOLDERS OR DESIGNEES ON A SEPARATE ATTACHMENT.**

**SECTION III:  CERTIFICATION**

**ALL ELECTING SENIOR NOTEHOLDERS MUST COMPLETE THIS SECTION.**

By the signature below, the undersigned (a) certifies that he/she is authorized by the Electing Senior Noteholder(s) and/or their Designee(s) to submit this Foreign Ownership Certification Form, and (b) certifies individually and on behalf of the Electing Senior Noteholder(s) and/or their Designee(s) and any Certifying Parent identified herein that the information provided herein is accurate and complete to the best of his or her knowledge and that all relevant determinations were made in compliance with the FCC's rules, regulations and policies.

Signed _____

Name/Title: _____

Electing Senior Noteholder: _____

Address: _____

Phone Number: _____

Email: _____

Name of Parent Company or Controlling Entity (if any):

_____

Address: _____

Phone Number: _____

Email: _____

Date:_____

THIS FORM MUST BE COMPLETED AND RETURNED TO YOUR VOTING NOMINEE WITH YOUR SUPPLEMENTAL ELECTION FORM SO THAT IT IS ACTUALLY RECEIVED BY THE CERTIFICATION AGENT BY ~~APRIL 30, 2012.~~[●].

THE INFORMATION PROVIDED HEREIN MUST BE UPDATED PURSUANT TO THE PROCEDURES AND BY THE APPLICABLE DEADLINES ESTABLISHED BY THE BANKRUPTCY COURT.

## IF YOU ARE COMPLETING SEPARATE ATTACHMENTS TO PROVIDE ADDITIONAL INFORMATION OR FOR ANY OTHER PURPOSE, SUCH ATTACHMENTS MUST BE RETURNED TOGETHER WITH THIS BOOKLET

**ATTACHMENT A**

**FCC FOREIGN OWNERSHIP BACKGROUND MATERIALS**

THE ATTACHED FOREIGN OWNERSHIP MEMORANDUM MAY BE USEFUL TO
PARTIES IN MAKING THE FOREIGN OWNERSHIP CERTIFICATION REQUIRED
FOR EACH CLAIM HOLDER ELIGIBLE TO RECEIVE NEW COMMON STOCK
PURSUANT TO THE ~~THIRD~~FOURTH AMENDED JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON &
CO., L.P., AND JPMORGAN CHASE BANK, N.A.  GIVEN THE COMPLEXITIES OF
THE FCC'S FOREIGN OWNERSHIP RESTRICTIONS AND POLICIES, INDIVIDUAL
CLAIM HOLDERS AND CERTIFYING PARENTS ARE ENCOURAGED TO
CONSULT THEIR OWN ADVISORS CONCERNING THE COMPLETION OF THE
FOREIGN OWNERSHIP CERTIFICATION.

## MEMORANDUM CONCERNING THE FCC'S FOREIGN OWNERSHIP RESTRICTIONS AND METHODS FOR FOREIGN OWNERSHIP CALCULATIONS

**The following information concerning the foreign ownership restrictions administered by the Federal Communications Commission ("FCC") is provided to assist each Holder of a Senior Loan Claim and related Senior Guaranty Claim and each Holder of a Senior Noteholder Claim eligible to receive New Common Stock in Tribune pursuant to the DCL Plan (a "Claim Holder") and each Certifying Parent, as applicable, in preparing its "Foreign Ownership Certification" as required pursuant to the ~~Third~~Fourth Amended Joint Plan of Reorganization for Tribune Company ("Tribune") and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. This memorandum provides a general explanation of the FCC's foreign ownership restrictions and policies as well as the methods the agency uses to calculate foreign ownership levels in broadcast companies. Foreign ownership issues vary from case to case and are often fact-dependent. Accordingly, as the FCC expressly has stated, no set of guidelines will provide specific answers to every foreign ownership scenario. Given the complexities of the FCC's foreign ownership restrictions and policies, individual Claim Holders and Certifying Parents are encouraged to consult their own advisors concerning the completion of the Certification.**

### The Foreign Ownership Restrictions

- Section 310 of the Communications Act of 1934, as amended (the "Act"), restricts foreign ownership of any entity licensed by the FCC to provide broadcast and certain other services. 47 U.S.C. § 310. Among other prohibitions, foreign individuals and foreign companies generally may not have direct or indirect ownership or voting rights totaling more than 25% in a corporation that controls the licensee of a television or radio broadcast station.

- Under the Act, Tribune's deemed percentages of foreign ownership and foreign voting rights will depend on the citizenship of its individual stockholders and upon the percentage of direct and indirect foreign ownership and voting rights in those Tribune stockholders that are entities.

- The Act gives the FCC some flexibility to waive the 25% foreign ownership cap, but the agency has done so very rarely with respect to broadcast licenses. Accordingly, Tribune intends to remain in compliance with the 25% cap upon its emergence from bankruptcy.

### Calculating Foreign Ownership

**Non-U.S. Entities:**

- <u>All</u> entities organized outside of the United States, including without limitation foreign corporations, limited liability companies, limited partnerships, and foreign banks, are considered 100% foreign, even if they have U.S. investors. By way of example, the interest held by a company organized under the laws of the Cayman Islands will be considered as 100% foreign in equity and in voting, even if it is owned by a U.S. entity and has U.S. individuals as officers and directors.

**Holding Companies/Subsidiaries:**

- The FCC will take into account both direct and indirect ownership interests. A foreign individual or company cannot avoid the statutory limits simply by using a U.S. entity as the vehicle for holding an interest in a broadcast licensee.

- Similarly, the interest of a U.S. entity that invests in an FCC licensee through a foreign subsidiary (directly or indirectly) will be considered foreign.

**Interests Considered:**

- To assess compliance, the FCC examines both voting and equity interests.

- Although the statutory language applies the 25% limitation to "corporations," the statute defines "corporation" to include any form of business organization, and the FCC has adopted policies to apply those limitations to interests held in or through other entities, such as limited partnerships and LLCs.

**Equity and Voting Calculated Separately:**

- Determining compliance requires a two-pronged analysis, one pertaining to foreign *equity* interests and one to foreign *voting* interests.

- Equity and voting interests must be calculated separately, and both must comply with the statutory cap.

- Ownership and voting interests that cannot be identified should be treated as foreign interests.

**Aggregation of Interests:**

- The holdings of all foreign investors, whether direct or indirect, are aggregated to determine whether the sum of the interests in the FCC licensee exceeds the statutory benchmarks.

**Indirect Interests/Use of Multiplier:**

- To calculate the level of foreign equity ownership held through intervening U.S. entities, a "multiplier" may be used. For example, a U.S. corporation that has 10% foreign ownership and that, in turn, owns 20% of a broadcast licensee, would be deemed to contribute 2% (10% x 20%) to the aggregate foreign ownership of the broadcast licensee.

- When determining the level of indirect foreign *voting* interests, however, an investor holding in excess of 50% of the vote in an intervening entity is not given the benefit of the multiplier to dilute the percentage of its voting power. Instead, the voting interest of the entity it controls flows, in whole, to the next tier.

- When calculating indirect *equity* interests, the multiplier generally may be used regardless of the amount of equity an investor holds.

**Partnerships and LLCs:**

- The FCC examines both general and limited partnership interests (and both managing and non-managing LLC interests).

- The FCC calculates compliance with foreign equity ownership limitations based on capital contributions of the partners for their partnership interests (or LLC members for LLC membership interests).

- The calculation for foreign voting rights in limited partnerships and LLCs differs based on whether a member or limited partner is "insulated" under FCC criteria. For purposes of this response, a limited partner or LLC member is considered to be "insulated" if the organizational documents of the limited partnership or LLC provide that the limited partner or LLC member will *not*:

    - directly or through its directors, officers, or partners, act as an employee of the LLC/limited partnership if such functions, directly or indirectly, relate to the media enterprises of the LLC/limited partnership;

    - serve in any material capacity as an independent contractor or agent with respect to the LLC/limited partnership's media enterprises;

    - communicate with the LLC/limited partnership or the LLC/limited partnership's managing board on matters pertaining to the day-to-day operations of the LLC/limited partnership's business;

    - vote to admit new members of the LLC/limited partnership, unless the admission can be vetoed by the general partner(s) of the limited partnership or the managing board or managing member of the LLC;

    - participate in any vote on the removal of any member of the LLC or any general partner of the limited partnership, unless such LLC member or general partner is (i) subject to bankruptcy proceedings, (ii) is adjudicated incompetent by a court of competent jurisdiction, or (iii) is removed for cause, as determined by an independent party;

    - perform any services for the LLC/limited partnership that materially relate to its media activities; or

    - become actively involved in the management or operation of the LLC/limited partnership's media businesses.

- For a limited partnership with insulated limited partners, the percentage of foreign voting rights for the limited partnership generally will be the percentage of foreign voting rights in the general partner(s). If the limited partnership has non-insulated limited partners in which foreign parties hold voting rights, those foreign voting rights also need to be included in the computation if they would increase the foreign voting percentage.

- For an LLC with non-insulated members, the percentage of foreign voting rights for the LLC generally will be the percentage of foreign voting rights for the member(s) that have voting rights under the LLC operating agreement (and, consequently, are not "insulated"). If the LLC has non-insulated LLC members in which foreign parties hold voting rights, those foreign voting rights also need to be included in the computation if they would increase the foreign voting percentage.

- The following partnerships and LLCs should be reported as having 100% foreign voting rights:

    - Any general partnership in which any partner is a foreign person or entity or a U.S. entity that is controlled, directly or indirectly, by one or more foreign persons or entities;

- Any limited partnership or LLC that is directly or indirectly controlled by one or more foreign persons or entities (including an entity organized under foreign law, even if that foreign entity is controlled by U.S. persons); and

- Any limited partnership or LLC in which a general partner, any non-insulated limited partner or any non-insulated LLC member is a non-U.S. citizen, a foreign government, a corporation or partnership organized under the laws of a foreign country, or the representative of any of the foregoing (including any entity controlled by one of the foregoing).

**Multiple Classes of Stock:**

- In situations involving multiple classes of corporate stock or partnership/LLC interests, the FCC will take into account the relative value of each class to calculate foreign equity ownership.

- In the corporate context, the FCC has permitted calculations based on the capital contributions from the sale of shares for each class as well as the current trading value of each class in determining the respective weight to be given to various classes.

**Public Corporations:**

- The FCC has acknowledged the difficulties inherent in determining the percentage of foreign ownership represented by foreign shareholders in publicly traded companies. Nevertheless, the FCC requires that public corporations must ascertain their foreign ownership by a reasonable method and must be able to certify their compliance with the foreign ownership cap.

- The FCC has permitted corporations and other licensees with widely held securities to use random surveys to collect citizenship information from stockholders to demonstrate compliance with the 25% ceilings for foreign equity ownership and foreign voting rights, if the applicant did not have a simpler means to make the determination.

**Consolidated Certifications:**

- A parent company that controls multiple Claim Holders and elects to make a Consolidated Certification certifies that it has computed foreign ownership and foreign voting percentages for the Claim Holders covered by the certification in accordance with FCC's rules and policies, that it has aggregated the data in compliance with those rules and policies, that it will ensure that New Common Stock and New Warrants will be held by individual Claim Holders in accordance with their respective claims, and that the cumulative effect of New Common Stock and New Warrants holdings by the individual Claim Holders upon the aggregate foreign ownership and voting percentages of Reorganized Tribune will be no greater than that reflected in the aggregate foreign ownership and voting percentages in the Consolidated Certification.

- In aggregating the data of commonly controlled Claim Holders for a Consolidated Certification, the Certifying Parent will need to treat any included Claim Holder with more than 50% foreign voting rights as being entirely foreign controlled – that is, as having 100% foreign voting rights.

- In computing the "Maximum Foreign Equity Percentage" and "Maximum Foreign Voting Percentage," where applicable, the certifying parent will need to treat as foreign any included investor whose citizenship is unknown.

- Computations for a Consolidated Certification will need to take into account the relative amount of the Claim of each of the Claim Holders for which the Consolidated Certification is supplied.

Additional information on determining foreign ownership and foreign voting rights percentages may be found in the instructions to FCC Form 314 ("Applications for Consent to Assignment of Broadcast Station Construction Permit or License"), Section III, Subpart G ("Item 9: Alien Ownership and Control"), page 9, which may be accessed at:http://www.fcc.gov/Forms/Form314/314.pdf.

**<u>EXHIBIT B-1</u>**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FOREIGN OWNERSHIP CERTIFICATION PROCEDURES FOR HOLDERS OF SENIOR LOAN CLAIMS AND/OR SENIOR GUARANTY CLAIMS

On ~~February 20, 2012,~~[●], the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (collectively, the "DCL Plan Proponents") filed the ~~Third~~Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as may be amended, supplemented, or modified, the "DCL Plan")[2] [Docket No. ~~10958~~●].  The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has set a hearing to consider confirmation of the DCL Plan

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (9480); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the DCL Plan.

1

on May 16, 2012.[3]  The DCL Plan requires that creditors entitled to receive New Common Stock in Reorganized Tribune (the "Equity Eligible Holders") submit a form certifying the extent of the relevant Holders' direct and indirect ownership or control by non-U.S. persons or entities (the "Foreign Ownership Certification") and report any changes in foreign ownership percentages between the submission of the Foreign Ownership Certification and the Effective Date by providing an amended Foreign Ownership Certification and, upon request, confirm the absence of any changes.  The submission of the Foreign Ownership Certifications is necessary for the Debtors to demonstrate compliance with foreign-ownership requirements imposed by the Federal Communications Commission ("FCC") and obtain FCC approval of the assignment of the Debtors' FCC licenses to the Reorganized Debtors upon emergence from chapter 11.

In addition, in accordance with Section 7.2.3 of the DCL Plan, Equity Eligible Holders have an opportunity to designate an affiliate or other party to receive all or a portion of their distributions of New Common Stock or new Warrants under the DCL Plan (the "Alternative Recipient Designation").  Holders of Senior Loan Claims and/or Senior Guaranty Claims will be able to make the Alternative Recipient Designation on the Foreign Ownership Certification.  As with the Foreign Ownership Certification form generally, the designation information set forth on the Foreign Ownership Certification may be amended at any time on or prior to the date on which amended Foreign Ownership Certifications must be submitted in accordance with the procedures set forth below.  To the extent Holders of Senior Loan Claims and/or Senior Guaranty Claims make an Alternative Recipient Designation, such Holders will be required to provide foreign ownership information respecting their designees, as set forth in the Foreign Ownership Certification.

On [●], the Bankruptcy Court entered the Order Establishing Procedures for Compliance with Federal Communications Commission Foreign Ownership Requirements [Docket No. ●] (the "FCC Procedures Order"), which established procedures for submission of Foreign Ownership Certifications by Equity Eligible Holders.  This notice (the "Notice") provides a description of the foreign ownership certification procedures that apply to Holders of Senior Loan Claims and/or Senior Guaranty Claims.

*Foreign Ownership Certification Procedures for Holders of Senior Loan Claims and/or Senior Guaranty Claims*

You have received this Notice because you are listed as a Holder of a Senior Loan Claim and/or Senior Guaranty Claim as of March 22, 2012[●] (the "Certification Record Date").  Accompanying this Notice, you should have received a Foreign Ownership Certification and instructions for completing the Foreign Ownership Certification.  If your Foreign Ownership Certification is lost or misplaced, you may contact Epiq Bankruptcy Solutions, LLC (the "Certification Agent") at 888-287-7568 to obtain another one.

**Each Holder of a Senior Loan Claim and/or Senior Guaranty Claim that does not want to be considered entirely foreign-owned and foreign-controlled must complete and**

---

[3] See Order Establishing Scheduling for (1) Resolution of the Allocation Disputes and (2) Consideration of the DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion and Plan [Docket No. 10692].

**submit an original Foreign Ownership Certification so that it is received by the Certification Agent on or before** ~~April 30, 2012~~[●] (the "Certification Deadline").

An original Foreign Ownership Certifications must be returned to the Certification Agent at the following address:  Tribune Company Ballot Processing Center, c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, Third Floor, New York, NY 10017.

Holders of Senior Loan Claims and/or Senior Guaranty Claims that do not submit a Foreign Ownership Certification or that do not submit a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on or prior to the Certification Deadline will be deemed entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan.

After the Certification Record Date, any Person who wishes to acquire a Senior Loan Claim and/or a Senior Guaranty Claim will not have the transfer of such Claim recognized by the Debtor or Senior Loan Agent unless such Person certifies to the Senior Loan Agent that it (a) has submitted to the Certification Agent either (i) a Foreign Ownership Certification or (ii) an alternative document in a form satisfactory to the Certification Agent that memorializes such Person's agreement to be treated as entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan; (b) was already a Holder of Senior Loan Claims of record as of the Certification Record Date or otherwise has already submitted a Foreign Ownership Certification; or (c) is a market maker acquiring Senior Loan Claims and/or Senior Guaranty Claims not for its own account.

After a Foreign Ownership Certification is submitted, if the Holder of a Senior Loan Claim and/or Senior Guaranty Claim experiences a change in foreign ownership, or if any other change occurs that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), such Holder of a Senior Loan Claim and/or Senior Guaranty Claim must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by the Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days after the Distribution Record Date (as defined below).

Within one (1) business day after the release of an order by the FCC granting the FCC Approval, the Certification Agent will distribute a notice of such approval (the "Final Certification Notice") to the Senior Loan Agent and to the Holders of Senior Loan Claims and/or Senior Guaranty Claims.  The Final Certification Notice will also be filed on the Bankruptcy Court's docket for these chapter 11 cases, and the Senior Loan Agent will provide the Final Certification Notice to Holders of Senior Loan Claims and/or Senior Guaranty Claims via Intralinks.

The Final Certification Notice will notify Holders of Senior Loan Claims and/or Senior Guaranty Claims that (i) the date of such notice will be the "Distribution Record Date" for purposes of distributions to such Holders, (ii) in accordance with Section 7.7 of the DCL Plan, trades of such Claims after the Distribution Record Date will not be recognized by the Debtors or the Disbursing Agent unless a notice re-setting the Distribution Record Date shall be filed on the

3

Bankruptcy Court's docket by the DCL Plan Proponents and, therefore, the Holders of Senior Loan Claims and/or Senior Guaranty Claims of record on the Distribution Record Date will receive the distributions of New Common Stock and/or New Warrants (as well as Distributable Cash and New Senior Secured Term Loan), and (iii) if such Holders have experienced any change in foreign ownership, or if any other changes that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), since such Holders last submitted a Foreign Ownership Certification, such Holders will be required to submit a final updated Foreign Ownership Certification within two business days after the Distribution Record Date.

**For additional information regarding the FCC foreign ownership requirements and the related DCL Plan provisions, please see Section II.G.3 of the Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "DCL Specific Disclosure Statement") and Sections 5.4.2(a) and 5.4.2(c) of the DCL Plan.**

**Copies of the DCL Plan and DCL Specific Disclosure Statement may be obtained from the Debtors' restructuring website at: http://chapter 11.epiqsystems.com/tribune**

If you have any questions regarding the Foreign Ownership Certification or the foreign ownership certification procedures, please contact the Certification Agent at 888-287-7568.

**EXHIBIT B-2**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FOREIGN OWNERSHIP CERTIFICATION PROCEDURES FOR ELECTING HOLDERS OF SENIOR NOTEHOLDER CLAIMS

On ~~February 20, 2012,~~[●], the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (collectively, the "DCL Plan Proponents") filed the ~~Third~~Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as may be amended, supplemented, or modified, the "DCL Plan")[2] [Docket No. ~~10958~~●]. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has set a hearing to consider confirmation of the DCL Plan

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the DCL Plan.

1

on May 16, 2012.[3] The DCL Plan requires that creditors entitled to receive New Common Stock in Reorganized Tribune (the "Equity Eligible Holders") submit a form certifying the extent of the relevant Holders' direct and indirect ownership or control by non-U.S. persons or entities (the "Foreign Ownership Certification") and report any changes in foreign ownership percentages between the submission of the Foreign Ownership Certification and the Effective Date by providing an amended Foreign Ownership Certification and, upon request, confirm the absence of any changes. The submission of the Foreign Ownership Certifications is necessary for the Debtors to demonstrate compliance with foreign-ownership requirements imposed by the Federal Communications Commission ("FCC") and obtain FCC approval of the assignment of the Debtors' FCC licenses to the Reorganized Debtors upon emergence from chapter 11.

In addition, in accordance with Section 7.2.3 of the DCL Plan, Equity Eligible Holders have an opportunity to designate an affiliate or other party to receive all or a portion of their distributions of New Common Stock or new Warrants under the DCL Plan (the "Alternative Recipient Designation"). Holders of Senior Noteholder Claims who elected to receive the alternative treatment under Section 3.2.5(c)(i) of the DCL Plan and are thereby eligible to receive New Common Stock (the "Electing Holders of Senior Noteholder Claims") will be able to make the Alternative Recipient Designation on the Supplemental Election Form included in the solicitation packages distributed pursuant to the relief requested in the Solicitation Procedures Motion.[4] To the extent Electing Holders of Senior Noteholder Claims make an Alternative Recipient Designation, such Holders will be required to provide foreign ownership information respecting their designees, as set forth in the Foreign Ownership Certification.

On [●], the Bankruptcy Court entered the Order Establishing Procedures for Compliance with Federal Communications Commission Foreign Ownership Requirements [Docket No. ●] (the "FCC Procedures Order"), which established procedures for submission of Foreign Ownership Certifications by Equity Eligible Holders. This notice (the "Notice") provides a description of the foreign ownership certification procedures that apply to the Electing Senior Noteholders.

*Foreign Ownership Certification Procedures for Electing Holders of Senior Noteholder Claims*

You have received this Notice because you are listed as a Holder of a Senior Noteholder Claim as of ~~March 22, 2012~~[●] (the "Certification Record Date"). However, you only need to complete, execute and submit a Foreign Ownership Certification if you elected to receive the alternative treatment set forth in Section 3.2.5(c)(i) of the DCL Plan. Accompanying this Notice, you should have received a Foreign Ownership Certification and instructions for completing the Foreign Ownership Certification, along with a Supplemental Election Form and instructions for

---

[3] See Order Establishing Scheduling for (1) Resolution of the Allocation Disputes and (2) Consideration of the DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion and Plan [Docket No. 10692].

[4] See Motion for an Order (I) Approving the Supplemental Disclosure Document; (II) Establishing Scope, Forms, Procedures, and Deadlines for Resolicitation of Votes to Accept or Reject the DCL Plan from Certain Classes; (III) Authorizing Tabulation of Prior Votes and Elections on DCL Plan Made by Holders of Claims in Non-Resolicited Classes; (IV) Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof; and (V) Granting Related Relief (the "Solicitation Procedures Motion") [Docket No. 10274, as supplemented by Docket No. 10960].

2

completing the Supplemental Election Form.  If your Foreign Ownership Certification (or Supplemental Election Form) is lost or misplaced, you may contact Epiq Bankruptcy Solutions, LLC (the "Certification Agent") at 888-287-7568 to obtain another one.

**Each Electing Holder of a Senior Noteholder Claim that does not want to be entirely foreign-owned and foreign-controlled must complete and submit, through its applicable record holder, including, without limitation, representative such as broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee (a "Certification Nominee"), an original Foreign Ownership Certification so that it is received by the Certification Agent on or before ~~April 30, 2012.~~[●]. The Foreign Ownership Certification must be submitted via Certification Nominee to the Certification Agent with the Electing Holder~~'~~'s Supplemental Election Form.**

Electing Holders of Senior Noteholder Claims that do not submit a Foreign Ownership Certification or that do not submit a Foreign Ownership Certification that is reasonably satisfactory to the Debtors on or prior to the Certification Deadline will be deemed entirely foreign-owned and foreign-controlled for purposes of distributing New Common Stock and New Warrants under the DCL Plan.

After a Foreign Ownership Certification is submitted, if an Electing Holder of a Senior Noteholder Claim experiences a change in foreign ownership, or if any other change occurs that such Holder believes warrants amendment (including changes related to any Alternative Recipient Designation), such Electing Holder of a Senior Noteholder Claim must report such change by submitting to the Certification Agent an amended Foreign Ownership Certification so that it is received by Certification Agent within the earlier of (i) seven (7) calendar days after such change is effective and (ii) two (2) business days after the Distribution Record Date (as defined below).

Within one (1) business day after release of an order by the FCC granting the FCC Approval, the Certification Agent will distribute a notice of such approval (the "Final Certification Notice") via electronic mail to Electing Holders of Senior Noteholder Claims.

The Final Certification Notice will notify Electing Holders of Senior Noteholder Claims that (i) the date of such notice will be the "Distribution Record Date" for the purposes of distributions to such Holders and (ii) if such Holders have experienced any change in foreign ownership, or any other change that such Holder beliefs warrants amendment (including changes related to any Alternative Recipient Designation), since such Holders last submitted a Foreign Ownership Certification, such Holders will be required to submit a final updated Foreign Ownership Certification within two (2) business days after the Distribution Record Date.

**For additional information regarding the FCC foreign ownership requirements and the related DCL Plan provisions, please see Section II.G.3 of the Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan**

3

Chase Bank, N.A. (the "<u>DCL Specific Disclosure Statement</u>") and Sections 5.4.2(a) and 5.4.2(c) of the DCL Plan.

      Copies of the DCL Plan and DCL Specific Disclosure Statement may be obtained from the Debtors' restructuring website at: http://chapter 11.epiqsystems.com/tribune

      If you have any questions regarding the Foreign Ownership Certification or the Foreign Ownership Certification Procedures, please contact the Certification Agent at 888-287-7568.

4