## EXHIBIT 1

**Supplemental Disclosure Document**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DISCLOSURE DOCUMENT RELATING TO**
**FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS**
**SUBSIDIARIES  PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P.,**
**AND JPMORGAN CHASE BANK, N.A.**

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Jeffrey C. Steen
Dennis M. Twomey
Kerriann S. Mills
One South Dearborn Street
Chicago, IL  60603
Telecopier:  (312) 853-7036

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telecopier:  (302) 652-3117

*Counsel For Debtors and Debtors In Possession and Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier: (212) 541-5369

LANDIS RATH & COBB LLP
Adam G. Landis
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier:  (302) 467-4450

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

*Counsel For the Official Committee of Unsecured Creditors*

DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier:  (213) 621-6100

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Rodney Square; 1000 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 571-1253

*Counsel For Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

*Co-Counsel For Angelo, Gordon & Co, L.P.*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Damian S. Schaible
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

RICHARDS LAYTON & FINGER
Mark Collins
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier:  (302) 651-7701

*Counsel For JPMorgan Chase Bank, N.A.*

**DATED:  April 17, 2012**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the next page.

Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................... 1

    A.  Voting Procedures, Ballots and Supplemental Voting Deadline ....................................... 3

        1.  Supplemental Voting Deadline ................................................................................ 3

        2.  Voting Procedures ..................................................................................................... 3

    B.  Confirmation Hearing and Deadline for Objections to Confirmation ............................... 4

II.  THE SECOND AMENDED PLAN AND RELATED CONFIRMATION OPINION ................... 5

III.  RULE 59 MOTIONS .......................................................................................................... 8

IV.  OVERVIEW OF THE CONFORMING MODIFICATIONS IN THE FOURTH AMENDED
      PLAN ................................................................................................................................ 9

    A.  1129(a)(10) Finding ....................................................................................................... 9

    B.  Release Finding ............................................................................................................. 10

    C.  Exculpation Finding ..................................................................................................... 11

    D.  Bar Order Finding ........................................................................................................ 12

    E.  Other Parent Claim Allocation Matter ......................................................................... 12

V.  ALLOCATION DISPUTES ................................................................................................ 12

    A.  Overview of the Allocation Disputes ............................................................................ 12

    B.  Adjudication of the Allocation Disputes ....................................................................... 14

    C.  Allocation Disputes Ruling ........................................................................................... 14

        1.  PHONES/Allowance Dispute .................................................................................. 15

        2.  PHONES/OPC Dispute and EGI-TRB/OPC Dispute ............................................. 15

        3.  PHONES/EGI-TRB Priority Dispute ..................................................................... 15

        4.  PHONES/PPI Dispute ............................................................................................. 15

        5.  EGI-TRB/Settlement Dispute and EGI-TRB/LT Dispute ...................................... 16

        6.  EGI-TRB/PPI Dispute ............................................................................................ 16

    D.  Impact of the Adjudication of the Allocation Disputes on Distributions to Holders of
        Claims in Revoting Classes under the Fourth Amended Plan ......................................... 16

VI.  OTHER MISCELLANEOUS PROVISIONS OF THE FOURTH AMENDED PLAN .............. 17

    A.  Distributions to MSCS .................................................................................................. 17

    B.  Subrogation Rights ....................................................................................................... 17

    C.  Payment of Indenture Trustee Fees ............................................................................... 18

    D.  Participation in the Step Two/Disgorgement Settlement ................................................ 18

    E.  Distribution of New Common Stock and New Warrants ................................................. 18

    F.  Calculation of Step Two/Disgorgement Settlement Participants' Distributions ............... 18

    G.  Bar Order ...................................................................................................................... 18

H.      Litigation Trust Valuation Expert ..................................................................... 19

I.      Litigation Trust Advisory Board ....................................................................... 19

J.      Elimination of Creditors' Trust ......................................................................... 20

K.      Application of the EGI-TRB and PHONES Subordination Provisions to Recoveries of Holders of Senior Loan Claims and Bridge Loan Claims ................................. 20

L.      Payment of Professionals' Fees and Expenses ................................................. 21

VII.    REORGANIZED VALUE UPDATE AND UPDATED FINANCIAL PROJECTIONS ............ 21

VIII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE FOURTH AMENDED PLAN ................................................................................................................ 22

A.      Federal Tax Consequences to the Debtors ........................................................ 23

B.      Federal Income Tax Consequences to Certain U.S. Holders of Claims in Revoting Classes ............................................................................................................. 23

        1.      U.S. Holders of Senior Noteholder Claims ............................................ 23

        2.      U.S. Holders of Other Parent Claims (not including the Swap Claim and Claims against Tribune arising from a Non-Qualified Former Employee Benefit Plan). 24

        3.      U.S. Holders of Claims arising from a Non-Qualified Former Employee Benefit Plan. ..................................................................................................... 24

        4.      U.S. Holders of EGI-TRB LLC and PHONES Notes Claims. ............. 25

C.      Federal Income Tax Treatment of the MSCS/Senior Noteholder Reserve ...... 25

IX.     CONCLUSION AND RECOMMENDATION ............................................................ 26

## INDEX OF EXHIBITS

Exhibit A      -      Fourth Amended Plan

Exhibit B      -      Estimated Recovery Appendix

Exhibit C      -      Summary of 2012 Valuation Update

Exhibit D      -      Summary of Updated Financial Projections

## I.      INTRODUCTION

On November 18, 2011, (i) the Debtors; (ii) the official committee of unsecured creditors appointed by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code (the "Creditors' Committee"); (iii) certain investment funds and accounts managed by Oaktree Capital Management, L.P. and/or its affiliates ("Oaktree") and Angelo, Gordon & Co., L.P. and/or certain of its affiliates ("Angelo Gordon"), each in its capacity as Holders of Senior Loan Claims, or as a general partner or manager of an entity that is a Holder of Senior Loan Claims; and (iv) JPMorgan Chase Bank, N.A. and certain of its affiliates ("JPMorgan"), as the Senior Loan Agent and as a Holder of Senior Loan Claims (collectively, the "DCL Proponents") filed the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10273] (the "Third Amended Plan" and as the same has been amended from time to time, the "Fourth Amended Plan") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2]  A copy of the Fourth Amended Plan, without exhibits, is attached hereto as Exhibit A.[3]

The Fourth Amended Plan was filed because, as described below, on October 31, 2011, the Bankruptcy Court denied confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified April 26, 2011) (the "Second Amended Plan") [Docket No. 8769].[4]  In its opinion [Docket No. 10133] (the "Confirmation Opinion"),[5] however, the Bankruptcy Court found that each of the LBO Settlement and the Step Two Disgorgement Settlement (each as defined below) – the core components of the Second Amended Plan – was "achieved as a result of arms-length, good faith negotiations" and was "fair, reasonable, and in the best interest of the Debtors' estates" (Confirmation Opinion at 35-39, 79). However, the Bankruptcy Court concluded that the Second Amended Plan, which was overwhelmingly accepted by creditors across the capital structure of the Debtors, did not satisfy several requirements for confirmation under section 1129 of the Bankruptcy Code.

The Confirmation Opinion identified certain discrete components of the Second Amended Plan that would need to be revised in order to achieve confirmation.  In addition, on December 29, 2011, the Bankruptcy Court issued an opinion [Docket No. 10531] (the "Reconsideration Opinion") and related order [Docket No. 10532] (the "Reconsideration Order" and, together with the Reconsideration Opinion, the "Reconsideration Decision") which, among other things, modified and clarified certain aspects of the Confirmation Opinion.  Specifically, as further discussed in Article III herein, in the Reconsideration

---

[2]    Capitalized terms used but not defined in this supplemental disclosure document (the "Supplement") shall have the meanings ascribed to such terms in the Fourth Amended Plan.

[3]    Exhibits to the Fourth Amended Plan are available via the Debtors' reorganization website at http://chapter11.epiqsystems.com/tribune, under the "Key Documents" tab.

[4]    The Bankruptcy Court also denied confirmation of a competing plan of reorganization jointly proposed by, *inter alia*, certain Holders of Senior Notes and PHONES Notes (the "Noteholder Plan").  The Bankruptcy Court explained that, "assuming that both sets of plan proponents addressed only the flaws in their respective plans and both returned confirmable plans containing terms otherwise similar to those presently proposed, with similar voting results, the [Second Amended] Plan would survive the crucible of § 1129(c)" of the Bankruptcy Code, which provides that if the requirements of confirmation are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

[5]    You may obtain a copy of the Confirmation Opinion from the Debtors' reorganization website at http://chapter11.epiqsystems.com/tribune, under the "Key Documents" tab or under the "Docket" tab at Docket No. 10133.

Decision, the Bankruptcy Court vacated its Subordination Finding (as defined herein) in the Confirmation Opinion (the "Subordination Reconsideration Ruling").  In addition, in the Reconsideration Decision, the Bankruptcy Court clarified that the Confirmation Opinion did not address the amount of indebtedness of the PHONES Notes and denied a request by the proponents of the Noteholder Plan (the "Noteholder Proponents") to reconsider certain other aspects of the Confirmation Opinion.

As described in greater detail below, on April 9, 2012, the Bankruptcy Court also issued an opinion [Docket No. 11337] (the "Allocation Disputes Opinion") and entered a related order [Docket No. 11338] (the "Allocation Disputes Order" and, together with the Allocation Disputes Opinion, the "Allocation Disputes Ruling") resolving certain Allocation Disputes (as defined herein) that were raised by certain parties in interest following entry of the Confirmation Opinion.  Those disputes primarily involved which categories of plan distributions are subject to the subordination provisions of the PHONES Notes Indenture (the "PHONES Subordination Provisions") and the subordination agreement governing the EGI-TRB LLC Notes (the "EGI-TRB Subordination Provisions") and which Holders of Senior Noteholder Claims (Class 1E) and Other Parent Claims (Class 1F) are entitled to the benefit of the PHONES Subordination Provisions and the EGI-TRB Subordination Provisions with respect to various distributions contemplated by the Fourth Amended Plan.

The Fourth Amended Plan reflects targeted conforming modifications to the Second Amended Plan (the "Modifications") that are primarily intended to address, among other things, (i) the limited issues identified in the Confirmation Opinion, as modified by the Reconsideration Decision (the "Amended Confirmation Opinion") and (ii) the determinations made by the Bankruptcy Court in the Allocation Disputes Ruling.  As discussed in greater detail below, consistent with the Allocation Disputes Ruling, other than distributions related to the Creditors' Trust (which has been eliminated from the Fourth Amended Plan), the initial distributions contemplated by the Fourth Amended Plan are the same as those provided under the Second Amended Plan.

The principal purpose of this Supplement is to provide supplementary information concerning the Modifications to the Holders of:

- (i) Senior Loan Claims (Class 1C); (ii) Bridge Loan Claims (Class 1D); (iii) Senior Noteholder Claims (Class 1E), (iv) Other Parent Claims (Class 1F), (v) EGI-TRB LLC Notes Claims (Class 1I), and (vi) PHONES Notes Claims (Class 1J) against Tribune; and

- (i) Senior Guaranty Claims (Classes 50C through 111C) against the relevant Guarantor Debtors and (ii) General Unsecured Claims against certain Filed Subsidiary Debtors (Classes 2E, 4E through 7E, 10E, 12E through 15E, 18E through 20E, 22E through 29E, 31E through 38E, 40E, 42E, 43E, and 46E through 49E) where no Holders of General Unsecured Claims previously voted on the Second Amended Plan.

The above are the only Classes from which votes and elections are being resolicited (collectively, the "Revoting Classes"), because there are no other Classes with Claims (or Interests) that may be materially adversely affected by the Modifications.

As a result of the Modifications, the Holders of Claims in the Revoting Classes are being afforded the opportunity to (a) vote on the Fourth Amended Plan (whether or not such Holders voted on the Second Amended Plan) and (b) submit treatment and release elections under the Fourth Amended Plan. **If no Holders of Claims in a particular Revoting Class vote to accept or reject the Fourth Amended Plan, then such Class of Claims shall be deemed to accept the Fourth Amended Plan.  Holders of Claims in Classes other than the Revoting Classes (the "Non-Voting Holders") are not entitled to vote anew on the Fourth Amended Plan because the treatment of such Non-Voting Holders' Claims**

**is not materially adversely affected by the Modifications.  Whether or not the Fourth Amended Plan is accepted by the Non-Voting Holders will be determined according to the votes cast by such Non-Voting Holders on the Second Amended Plan.  Further, all release elections submitted by the Non-Voting Holders in connection with the Second Amended Plan shall be deemed to be elections made in connection with the Fourth Amended Plan.**

This Supplement is intended to supplement certain prior disclosure documents previously approved by the Bankruptcy Court and addresses only issues related to the modifications incorporated into the Fourth Amended Plan and the voting and election procedures thereunder.  In particular, the DCL Proponents expressly direct your attention to, and hereby incorporate herein by reference, each of the following disclosure documents: (i) the General Disclosure Statement dated December 15, 2010 [Docket No. 7232] (the "General Disclosure Statement"), which contains a general description of (among other things) the Debtors, their respective businesses and their reorganization proceedings, and was approved by the Bankruptcy Court on December 9, 2010 [Docket Nos. 7126, 7215]; (ii) the Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 7135] (the "Specific Disclosure Statement"), which contains a detailed description of (among other things) the provisions of the Second Amended Plan, including those provisions that are retained in the Fourth Amended Plan, and was approved by the Bankruptcy Court on December 9, 2010 [Docket No. 7126]; and (iii) the Explanatory Statement Relating to Modified Elections Under Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified April 26, 2011) [Docket No. 8911, Ex. 1-H] (the "Explanatory Statement"), which contains a description of (among other things) certain elections offered under the Second Amended Plan, and was approved by the Bankruptcy Court on May 17, 2011 [Docket No. 8926]. If you did not receive or no longer have a copy of the General Disclosure Statement, the Specific Disclosure Statement, or the Explanatory Statement, you may obtain a copy from the Debtors' reorganization website at http://chapter11.epiqsystems.com/tribune.  You may also obtain a hard copy of the General Disclosure Statement, the Specific Disclosure Statement, and the Explanatory Statement free of charge by contacting the Voting Agent at (888) 287-7568 or at tribunevote@epiqsystems.com.

**A.      Voting Procedures, Ballots and Supplemental Voting Deadline**.

1.   Supplemental Voting Deadline.

On April 5, 2011, the Bankruptcy Court entered an order which, among other things, establishes **May 21, 2012 at 4:00 p.m., prevailing Eastern time** (the "Supplemental Voting Deadline") as the date and time by which Holders of Claims in Revoting Classes must return a Ballot to vote to accept or reject the Fourth Amended Plan.[6]

2.   Voting Procedures.

If you are a Holder of a Claim in a Revoting Class, you should carefully review the terms of the Fourth Amended Plan, the General Disclosure Statement, the Specific Disclosure Statement, the Explanatory Statement, and this Supplement.  After such review, please indicate (a) your acceptance or rejection of the Fourth Amended Plan by voting to accept or reject the Fourth Amended Plan on the Ballot

---

[6]    See Second Supplemental Scheduling Order Relating to Plan Confirmation [Docket No. 11326].

and (b) your treatment and release elections by checking the applicable boxes on the Ballot or relevant election form.[7]

For all Holders of Claims in Revoting Classes other than beneficial holders of Senior Noteholder Claims and PHONES Notes Claims (except PHONES Notes Exchange Claims), Ballots must be returned to Epiq Bankruptcy Systems, LLC (the "Voting Agent") by no later than the Supplemental Voting Deadline. Only original signatures will be accepted. You may use the pre-paid return envelope provided with your Ballot, or you may return your Ballot by personal delivery, overnight courier, or first class mail to the Voting Agent at the following address:

| If By Mail: | If By Personal Delivery or Overnight Courier: |
|---|---|
| Tribune Company Ballot Processing Center | Tribune Company Ballot Processing Center |
| c/o Epiq Bankruptcy Solutions, LLC | c/o Epiq Bankruptcy Solutions |
| FDR Station, P.O. Box 5014 | 757 Third Avenue, Third Floor |
| New York, NY 10150-5014 | New York, NY 10017 |

If you are a beneficial holder of a Senior Noteholder Claim or PHONES Notes Claim (other than a PHONES Notes Exchange Claim) who has received a Ballot from a broker, bank, commercial bank, trust company, dealer, or other agent or nominee (each, a "Voting Nominee"), you must return the Ballot and any election form provided therewith to such Voting Nominee, at the address provided by such Voting Nominee. In order for your vote to be counted, your Ballot must be completed in accordance with the voting instructions on the Ballot and received by the Voting Nominee in enough time for the Voting Nominee to transmit the information in the Ballot to the Voting Agent so that it is received no later than the Supplemental Voting Deadline.

**Any Ballot received after the Supplemental Voting Deadline will be counted at the sole discretion of the DCL Proponents. Any executed Ballot that does not indicate either an acceptance or rejection of the Fourth Amended Plan or indicates both an acceptance and rejection of the Fourth Amended Plan will not be counted as a vote either to accept or reject the Fourth Amended Plan.**

If you have any questions about the procedure for voting your Claim, the packet of materials that you have received, the amount of your Claim, or if you wish to obtain an additional copy of this Supplement, please contact the Voting Agent.

**B.      Confirmation Hearing and Deadline for Objections to Confirmation.**

The Confirmation Hearing with respect to the Fourth Amended Plan is scheduled to commence on **June 7, 2012 at 3:00 p.m. (prevailing Eastern Time)**, before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Fifth Floor, Courtroom No. 5, Wilmington, Delaware 19801. If necessary, the Confirmation Hearing shall continue on June 8, 2012 at 10:00 a.m. (prevailing Eastern Time) and June 11, 2012 at 1:00 p.m. (prevailing Eastern Time). The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of adjournment at the Confirmation Hearing, or at any subsequent adjourned Confirmation Hearing.

---

[7]    If you are a Holder of a Claim in a Revoting Class and did not receive a Ballot or lost your Ballot, please call the Voting Agent at (646) 282-2400 or toll-free at (800) 622-1125.

Any objections to confirmation of the Fourth Amended Plan must (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Third Amended  Plan; and (iv) be filed with the Bankruptcy Court, together with proof of service, and served so that they are received **on or before May 21, 2012 at 11:59 p.m. (prevailing Eastern Time)** by the following parties:

**Counsel to the DCL Proponents:**

Counsel to the Debtors:

| | |
|---|---|
| Sidley Austin LLP | Cole Schotz Meisel Forman & Leonard, P.A. |
| One South Dearborn Street | 500 Delaware Avenue, Suite 1410 |
| Chicago, Illinois 60603 | Wilmington, Delaware 19801 |
| Facsimile:  (312) 853-7036 | Facsimile:  (302) 652-3117 |
| Attn: Jessica C.K. Boelter | Attn: Norman L. Pernick |

Counsel to the Official Committee of Unsecured Creditors:

| | |
|---|---|
| Chadbourne & Parke LLP | Landis Rath & Cobb LLP |
| 30 Rockefeller Plaza | 919 Market Street, Suite 1800 |
| New York, New York 10112 | Wilmington, Delaware 19801 |
| Fax (212) 541-5369 | Fax (302) 467-4450 |
| Attn:  David M. LeMay | Attn: Adam G. Landis |

Counsel to Oaktree and Angelo Gordon:

| | |
|---|---|
| Dewey & LeBoeuf LLP | Young Conaway Stargatt & Taylor, LLP |
| 333 South Grand Avenue, Suite 2600 | Rodney Square; 1000 North King Street |
| Los Angeles, California 90071 | Wilmington, Delaware 19801 |
| Telecopier:  (213) 621-6100 | Telecopier: (302) 571-1253 |
| Attn:  Bruce Bennett | Attn:  Robert S. Brady |

Co-Counsel to Angelo Gordon:

Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888
Attn:  Andrew Goldman

Counsel to JPMorgan:

| | |
|---|---|
| Davis Polk & Wardwell LLP | Richards Layton & Finger |
| 450 Lexington Avenue | One Rodney Square |
| New York, New York 10017 | 920 North King Street |
| Telecopier:  (212) 701-5800 | Wilmington, Delaware 19801 |
| Attn:  Damian S. Schaible | Telecopier: (302) 651-7701 |
| | Attn: Mark Collins |

**The U.S. Trustee**:

U.S. Trustee
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lock Box #35
Wilmington, Delaware 19899
Facsimile: (302) 573-6497
Attn:  David Klauder

## II.    THE SECOND AMENDED PLAN AND RELATED CONFIRMATION OPINION

The Second Amended Plan had two primary components.  First, as described in greater detail in the Specific Disclosure Statement, the Second Amended Plan provided for (a) certain settlements of LBO-Related Causes of Action held by the Debtors' estates against current and former Senior Lenders, the Senior Loan Agent and the Senior Loan Arrangers, and participating current and former Bridge Lenders and Bridge Loan Arrangers (the "LBO Settlement", as defined in the Confirmation Opinion) and (b) a settlement of claims for the disgorgement of prepetition payments made by Tribune in respect of the Step Two Financing against parties who elected to participate in the settlement, with a backstop feature designed to ensure that the Debtors' estates would receive $120 million of consideration in settlement of such claims (the "Step Two Disgorgement Settlement", as defined in the Confirmation Opinion and, together with the LBO Settlement, the "DCL Plan Settlement").  Second, and also as described in the Specific Disclosure Statement, the Second Amended Plan provided for the preservation of virtually all of the Estates' remaining LBO-Related Causes of Action for the benefit of Tribune's creditors, which causes of action were to be assigned under the Second Amended Plan to a Litigation Trust and a Creditors' Trust[8] formed to prosecute individual creditor's claims to the extent such creditor elected to transfer them to the Creditors' Trust.[9]

The Second Amended Plan was sent for voting in December 2010.  All 128 Classes that were entitled to vote and had one or more creditors that actually cast Ballots – other than the Classes consisting of the Senior Noteholder Claims, EGI-TRB LLC Notes Claims, and PHONES Notes Claims – voted to accept the Second Amended Plan.  Hearings to consider confirmation of the Second Amended Plan and the Noteholder Plan were held on March 7-11, March 14-18, April 12-14, and June 27, 2011 (the "Prior Confirmation Hearing").

On October 31, 2011, the Bankruptcy Court entered the Confirmation Opinion and Order Denying Confirmation of Competing Plans [Docket No. 10134].  In the Confirmation Opinion, the Bankruptcy Court denied confirmation of both the Second Amended Plan and the Noteholder Plan. However, after weighing all of the relevant evidence and the credibility of the witnesses, the Bankruptcy Court concluded that most of the provisions of the Second Amended Plan satisfied the requirements for confirmation under the Bankruptcy Code.  In particular, the Bankruptcy Court approved the DCL Settlement as "fair, reasonable, and in the best interest of the Debtors' estates" (Confirmation Opinion at 71), and further found that the DCL Settlement was "achieved as a result of arms-length, good faith negotiations" and was "properly part of the [Second Amended] Plan pursuant to Bankruptcy Code §1123(b)(3)(A)" (Id.).  The Bankruptcy Court also approved the following aspects of the Second Amended Plan:

- the inclusion of the Bar Order in the Second Amended Plan (subject to a limited modification) (Confirmation Opinion at 76-77);

- the feasibility of the Second Amended Plan (Confirmation Opinion at 125);

---

[8]    As further explained in Section VI.J hereof, the Fourth Amended Plan eliminates the Creditors' Trust provided under the Second Amended Plan.

[9]    Subsequent to the filing of the LBO Avoidance Adversaries (as defined in the General Disclosure Statement), in June of 2011, (a) the indenture trustees on behalf of Holders of Senior Notes and PHONES Notes and (b) certain retirees of The Times Mirror Company, Tribune Company, and various other affiliates or subsidiaries of Tribune Company filed approximately 51 separate lawsuits in various jurisdictions asserting state law constructive fraudulent conveyance claims against certain former stockholders of Tribune.  A consolidated multidistrict action with respect to approximately 53 such lawsuits (including certain lawsuits commenced after June of 2011) is currently pending before the United States District Court for the Southern District of New York.

- the Litigation Trust established under the Second Amended Plan (as an appropriate structure for pursuit of estate claims) (Confirmation Opinion at 101);

- the Retiree Settlement (as an important piece of the Debtors' reorganization) (Confirmation Opinion at 93);

- the classification of the Swap Claim in Class 1F under the Second Amended Plan (Confirmation Opinion at 103-104); and

- the treatment of prepetition indemnification and reimbursement claims under the Second Amended Plan (Confirmation Opinion at 95-96).

The Bankruptcy Court also found that the Debtors had a Total Distributable Value of $7.019 billion as of January 19, 2011 (Confirmation Opinion at 21, 29), which was within the range of the DCL Proponents' valuation of the Debtors.  In addition, in accordance with section 1129(c) of the Bankruptcy Code, the Bankruptcy Court examined the preferences of creditors respecting the Second Amended Plan and the Noteholder Plan and found that "creditors overwhelmingly prefer the [Second Amended] Plan over the Noteholder Plan."  (Confirmation Opinion at 124).  In light of this clearly manifested creditor preference, the Bankruptcy Court concluded that, as between a modified Second Amended Plan and a modified Noteholder Plan that addressed their respective confirmation issues and had similar voting results, the modified Second Amended Plan would be confirmed instead of the modified Noteholder Plan, because, as the Bankruptcy Court observed, the modified Second Amended Plan would "survive the crucible of [section] 1129(c)."  (Confirmation Opinion at 125).

As noted, notwithstanding these otherwise favorable rulings, the Bankruptcy Court also concluded that the Second Amended Plan was inconsistent with the requirements for confirmation under section 1129 of the Bankruptcy Code in the following targeted ways:

- The Second Amended Plan was not affirmatively accepted by at least one Impaired Class for certain Filed Subsidiary Debtors where no creditors cast ballots on the Second Amended Plan, and thus failed to satisfy section 1129(a)(10) of the Bankruptcy Code with respect to those Debtors (Confirmation Opinion at 83-84) (the "1129(a)(10) Finding");

- With respect to the release provisions of Section 11.2.1 of the Second Amended Plan, (a) the parties granting the release should be limited to the Debtors and should not include the Litigation Trustee, the Creditors' Trustee, or the Subsidiary Non-Debtors; and (b) the following persons were not entitled to the release because the record did not establish that they had provided a substantial contribution to the Estates or that the release was necessary for the Debtors' reorganization:  the Debtors' Related Persons, Current Employees (as defined in the Confirmation Opinion), and 401(k) Shareholders (as defined in the Confirmation Opinion) (Confirmation Opinion at 91, 93) ((a) and (b) collectively, the "Release Finding");[10]

---

[10]    The Bankruptcy Court also held that the DCL Proponents should prove that the proposed releases of Guarantor Non-Debtors by Senior Lenders who voted against the Second Amended Plan satisfy the "Genesis test", which requires an evaluation of whether (i) such release is necessary to the success of the reorganization, (ii) the released parties have provided a critical financial contribution to the plan, (iii) the released parties' financial contribution is necessary to make the plan feasible, and (iv) such release is fair to the non-consenting creditors, including whether the non-consenting creditors received reasonable compensation in exchange for such release. (Confirmation Opinion at 118, n.89; In re Genesis Health Ventures, Inc., 266 B.R. 591, 607-08 (Bankr. D. Del. 2001)).  The DCL Proponents intend to make that showing at the Confirmation Hearing.

- The Bar Order provisions in Section 11.3 of the Second Amended Plan should be clarified to enjoin and restrain each Plaintiff from seeking relief or collecting judgments against any Non-Settling Defendants in any manner that fails to conform to the terms of the Bar Order, including, without limitation, the proportionate judgment reduction provision set forth therein (Confirmation Opinion at 77) (the "Bar Order Finding");

- The exculpation provision in Section 11.5 of the Second Amended Plan should be limited to estate fiduciaries (Confirmation Opinion at 94) (the "Exculpation Finding");

- The Second Amended Plan did not comply with sections 510(a) and 1129(b) of the Bankruptcy Code because it improperly applied certain subordination provisions of the PHONES Notes Indenture to the distribution of proceeds of causes of action that may be asserted under Chapter 5 of the Bankruptcy Code by the Litigation Trust (the "Subordination Finding") (Confirmation Opinion at 112-113). In addition, the Bankruptcy Court determined that, because the record was unclear, the Court "[could not] conclude that the [Second Amended] Plan's treatment is fair or appropriately enforces the terms of the subordination agreements in accordance with Bankruptcy Code §510(a)" with respect to distributions to Holders of Other Parent Claims (Confirmation Opinion at 111) (the "Other Parent Claim Allocation Matter"); and

- There was an insufficient record to permit the Bankruptcy Court to resolve disputes regarding the proper Allowed amount of the PHONES Notes Claims (Confirmation Opinion at 106).

## III.    RULE 59 MOTIONS

On November 14, 2011, (i) Aurelius Capital Management, LP ("Aurelius") and (ii) Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas, joined by Davidson Kempner Capital Management LLC and Brigade Capital Management, LLC, filed motions (the "Motions to Reconsider") for reconsideration of the portion of the Confirmation Opinion that held that "causes of action that the Debtors' estate may assert under Chapter 5 of the Bankruptcy Code are not 'assets of the Company' subject to the PHONES Notes' subordination provision." (Confirmation Opinion at 112-113, n.84; Docket Nos. 10222, 10223, 10225, 10226, 10238). Also on November 14, 2011, the Noteholder Proponents filed a motion for reconsideration and/or clarification of the Confirmation Opinion with respect to the following three issues: (i) reconsideration of the Bankruptcy Court's determination that the Senior Lenders and Bridge Lenders are entitled to share in recoveries by the Litigation Trust, (ii) reconsideration of the Bankruptcy Court's approval of the proportionate judgment reduction included in Section 11.3 of the Second Amended Plan, and application of a *pro tanto* judgment reduction instead of the proportionate judgment reduction, and (iii) clarification that the Bankruptcy Court did not make a determination as to how the PHONES Notes should be valued for purposes of determining Tribune's solvency at the time of the leveraged buy-out (the "Motion to Reconsider/Clarify" and, together with the Motions to Reconsider, the "Rule 59 Motions"). (Docket No. 10227). On December 6, 2011, objections were filed to the Rule 59 Motions [Docket Nos. 10363, 10365, 10366, 10371, 10373, 10376] and, on December 9, 2011, the movants filed replies to such objections [Docket Nos. 10396, 10398, 10399, 10401]. Arguments on the Rule 59 Motions were heard by the Bankruptcy Court at a hearing on December 14, 2011.

On December 29, 2011, the Bankruptcy Court issued its Reconsideration Decision granting the Motions to Reconsider and denying (subject to one clarification) the Motion to Reconsider/Clarify. In its Subordination Reconsideration Ruling, the Bankruptcy Court amended the Confirmation Opinion to strike the Subordination Finding, thereby holding that the PHONES Subordination Provisions apply to the

proceeds of, from, or relating to any and all causes of action asserted by the Litigation Trust.[11]   In its Reconsideration Decision, the Bankruptcy Court also denied the Motion to Reconsider/Clarify with respect to the Litigation Trust waterfall and Bar Order judgment reduction issues raised in such Motion, but granted the Motion in part by clarifying that the Bankruptcy Court did not make any determination regarding the amount of indebtedness of the PHONES Notes in the Confirmation Opinion.

## IV.    OVERVIEW OF THE CONFORMING MODIFICATIONS IN THE FOURTH AMENDED PLAN

In order to comply with the Amended Confirmation Opinion, the Fourth Amended Plan contains Modifications that the DCL Proponents believe address each of the issues identified by the Bankruptcy Court but otherwise preserve substantially all of the other terms of the Second Amended Plan, including the DCL Plan Settlement.  Specifically, the Fourth Amended Plan includes Modifications (i) providing that, subject to the conditions set forth in the Fourth Amended Plan, any Revoting Class in which no creditors return any valid and timely Ballots shall be deemed to have accepted the Fourth Amended Plan, (ii) limiting the parties granting a release pursuant to Section 11.2.1 of the Fourth Amended Plan to the Debtors and narrowing the scope of the parties so released to exclude the Debtors' Related Persons, Current Employees, and 401(k) Shareholders, (iii) limiting the parties exculpated pursuant to Section 11.5 of the Fourth Amended Plan to estate fiduciaries, and (iv) clarifying the Bar Order under Section 11.3 of the Fourth Amended Plan to enjoin and restrain each Plaintiff from seeking relief or collecting judgments against any Non-Settling Defendants in any manner that fails to conform to the terms of the Bar Order, including, without limitation, the proportionate judgment reduction provision set forth therein.  The DCL Proponents believe that the foregoing Modifications are appropriate and in keeping with the Amended Confirmation Opinion and the narrow impediments to confirmation identified therein.

An overview of certain Modifications incorporated into the Fourth Amended Plan follows.  The following summary is a general overview only, which is qualified in its entirety by, and should be read in conjunction with, the information appearing elsewhere in this Supplement and the Fourth Amended Plan. **In the event of any inconsistency between this Supplement and the Fourth Amended Plan, the Fourth Amended Plan will control**.  The Debtors and the DCL Proponents reserve the right to modify the Fourth Amended Plan consistent with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

### A.    1129(a)(10) Finding.

In connection with the 1129(a)(10) Finding, the Bankruptcy Court noted that "'deemed acceptance' by a non-voting impaired class, in the absence of objection," may "constitute the necessary 'consent' to a proposed 'per plan' scheme." (Confirmation Opinion at 84)  Accordingly, the DCL Proponents have modified Section 4.2 of the Fourth Amended Plan to provide that if the Holders of Claims in a particular Impaired Class are (a) given the opportunity to vote to accept or reject the Fourth Amended Plan and (b) notified that a failure of any Holders of Claims in such Class to vote to accept or reject the Fourth Amended Plan would result in such Class being deemed to have accepted the Plan, to the

---

[11]    On January 10, 2012, Wilmington Trust Company, solely in its capacity as successor Indenture Trustee pursuant to the PHONES Notes Indenture ("Wilmington Trust"), filed a notice of appeal of the Reconsideration Decision and the Confirmation Opinion.  On that same day, Wilmington Trust filed a motion seeking leave to appeal the Reconsideration Decision [Docket No. 10582] (the "Reconsideration Appeal Motion").  The DCL Plan Proponents, Law Debenture Trust Company of New York, Deutsche Bank Trust Company Americas, and Aurelius Capital Management, L.P. objected to the Reconsideration Appeal Motion on January 24, 2012 [Docket Nos. 10690, 10702, and 10703].  The Reconsideration Appeal Motion is currently pending in the United States District Court for the District of Delaware.  See Case No. 1:12-mc-00029-GMS (D. Del. 2012).

extent no votes to accept or reject the Fourth Amended Plan are cast within such Class, the Class shall be deemed to have accepted the Fourth Amended Plan unless otherwise determined by the Bankruptcy Court.  The additional language incorporated into Section 4.2 of the Fourth Amended Plan is shown in the following blacklined text:

---

4.2    Acceptance by an Impaired Class of Claims.

4.2.1    Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if, after excluding any Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the Holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan, and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

4.2.2    Except for Holders of Claims in Classes that are deemed or presumed to have accepted or rejected this Plan pursuant to the terms of this Plan other than this Section 4.2.2, if Holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject this Plan and notified that a failure of any Holders of Claims in such Impaired Class of Claims to vote to accept or reject this Plan would result in such Impaired Class of Claims being deemed to have accepted this Plan, but no Holders of Claims in such Impaired Class of Claims voted to accept or reject this Plan (or the Second Amended Plan if such Holders' votes on the Second Amended Plan are deemed to be votes on this Plan), then such Class of Claims shall be deemed to have accepted this Plan.

---

Moreover, the Fourth Amended Plan also provides that if (i) the Plan fails to be accepted by the requisite number and amount of Claims voting with respect to any particular Debtor, or (ii) the Bankruptcy Court, for any reason, denies confirmation of the Plan with respect to such Debtor, the DCL Proponents may withdraw the Plan as to such Debtor.  Further, if the DCL Proponents withdraw the Fourth Amended Plan as to any particular Debtor, then pursuant to Section 4.6.3 of the Fourth Amended Plan, at the option of such Debtor, (a) such Debtor's Chapter 11 Case may be dismissed or (b) such Debtor's assets may be sold to a Debtor that is a proponent of the Fourth Amended Plan, with such sale to be effective at or prior to the Effective Date of the Fourth Amended Plan for such proponent.  The sale price shall be paid to the seller in Cash and shall be in an amount equal to the fair value of such assets as proposed by Tribune and approved by the Court.

    **B.    Release Finding.**

    To address the Release Finding, the Fourth Amended Plan revises the releases granted under Section 11.2.1 of the Second Amended Plan so that the Debtors and the Reorganized Debtors are the only parties granting the releases.  The effect of the releases under the Fourth Amended Plan is to preclude third parties (including, without limitation, the Creditors' Committee, any other estate representative and individual creditors that are not deemed to have given a release under Section 11.2 of the Fourth Amended Plan) from asserting, on behalf of the Debtors' Estates or otherwise, any Released Claims.  The Modifications incorporated into Section 11.2.1 of the Fourth Amended Plan are shown in the following blacklined text:

---

11.2.1    Releases by Debtors and Estates.  Except for the Preserved Causes of Action, on the Effective Date and effective simultaneously with the effectiveness of this Plan, the Debtors and the Reorganized Debtors on their own behalf and as representatives of their respective Estates and any Person seeking to exercise the rights of the Debtors' Estates (including, without limitation, any successor to the Debtors, the Litigation Trustee on behalf of the Litigation Trust or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code), and the Creditors' Trustee on behalf of the Creditors' Trust, release unconditionally and hereby cause the Subsidiary Non-Debtors to release unconditionally, release unconditionally and are hereby deemed to release unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without

---

limitation, the Released LBO-Related Causes of Action and those arising under the Bankruptcy Code, including any avoidance claims), whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or prior to the Effective Date that are in connection with the Debtors or any of them, or their respective assets, property and Estates, the Chapter 11 Cases or the Plan, the Disclosure Statement or the Restructuring Transactions, in each case excluding any claims against Chase Bank USA, N.A. or JPMorgan Chase Bank, N.A. for disgorgement of payments made in the ninety days prior to the Petition Date solely to the extent they were made by Tribune Company pursuant to its obligations under the First USA Commercial Card Master Agreement dated as of October 18, 1999, as amended, which for the avoidance of doubt shall be Ordinary Litigation Claims (the "Debtor Released Claims"), provided, however, that, with the exception of the Released LBO-Related Causes of Action, nothing in this Section shall be construed to release any party from liability for actions or omissions constituting willful misconduct or gross negligence as determined by a Final Order; provided further, that nothing in this Section shall be construed to release any Released Party from a Related Person Preference Action.  Except as the Debtors may otherwise provide prior to the Confirmation Date, the releases contained in this Section shall not apply to or otherwise affect the obligations of any of the Debtors' officers or directors to repay loans or advances of money or other property contractually owed to the Debtors or their Estates or with respect to loans or advances of money that the Debtors guaranteed on behalf of such officers or directors.  Furthermore, notwithstanding the foregoing, such release, waiver and discharge shall not operate as a release, waiver or discharge of any express contractual commercial obligations arising in the ordinary course of any Person to the Debtors not directly related to the Released LBO-Related Causes of Action.  On the Effective Date, each Guarantor Non-Debtor will provide each Holder of a Loan Guaranty Claim against the Guarantor Non-Debtors, the Senior Loan Agent, the Former Bridge Loan Agent, the Bridge Loan Agent, the Settling Step Two Payees and the other Released Parties a release of scope equivalent to the release provided by the Debtors hereunder in consideration for the Guarantor Non-Debtor Release contemplated hereby.  For the avoidance of doubt, the Debtor Released Claims do not include any Disclaimed State Law Avoidance Claims.

In addition, the Fourth Amended Plan narrows the scope of the parties so released to exclude the Debtors' Related Persons (e.g., the Debtors' current and former officers, directors, employees, advisors, and professionals, among others), Current Employees, and 401(k) Shareholders.  Accordingly – with the exception of the Released Stockholder Parties – the Debtors' Related Persons, Current Employees, and 401(k) Shareholders shall no longer receive the benefit of the releases set forth in Sections 11.2.1 and 11.2.2 of the Fourth Amended Plan.

### C.    Exculpation Finding.

To address the Exculpation Finding, the Fourth Amended Plan modifies Section 11.5 by providing an exculpation from liability arising from any act or omission taken during or in connection with the Chapter 11 Cases solely in favor of the following estate fiduciaries: (i) the Debtors (including, without limitation, the Special Committee of the Board of Directors of Tribune formed during the Chapter 11 Cases), the Creditors' Committee, and the Related Persons of the Debtors and the Creditors' Committee and (ii) the current and former members of the Creditors' Committee (in their capacities as such) and their Related Persons.  The corresponding Modifications incorporated into Section 11.5 of the Fourth Amended Plan are shown in the following blacklined text:

11.5    To the fullest extent permitted under applicable law, (a) none of the ~~Proponents~~Debtors (including without limitation the Special Committee of the Board of Directors of Tribune formed during the Chapter 11 Cases)~~,~~ or the Creditors' Committee, (b) none of the current and former members of the Creditors' Committee (in their capacities as such), and (c) none of the Related Persons to the ~~Proponents~~parties in (a) and (b) to the extent a claim arises from actions taken by such Related Person in its capacity as a Related Person of one of ~~the Proponents~~such parties, shall have or incur any liability to any person or entity for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, negotiation of any plans of reorganization, including this Plan, pursuit of confirmation of any plans of reorganization, including this Plan, the administration, consummation and implementation of the Plan or the property to be distributed under the Plan, the Disclosure ~~Statement~~Documents, the Restructuring Transactions, the Plan Supplement, the releases and injunctions, or the management or operation of the Debtors

(except for any liability that results from willful misconduct or gross negligence as determined by a Final Order or from any act or omission occurring before the Petition Date). Any of the ~~Proponents~~Debtors (including without limitation the Special Committee of the Board of Directors of Tribune formed during the Chapter 11 Cases) ~~and~~, the Creditors' Committee, the members of the Creditors' Committee and the Related Persons to each of the foregoing (with respect to actions taken by such Related Person in its capacity as a Related Person of one of such parties) shall be entitled to rely upon the advice of counsel and financial advisors with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and the administration thereof.

### D.    Bar Order Finding.

To address the Bar Order Finding, the DCL Proponents have added corresponding language to Section 11.3 of the Fourth Amended Plan expressly providing that "each Plaintiff is hereby enjoined and restrained from seeking relief or collecting judgments against any Non-Settling Defendants in any manner that fails to conform to the terms of this Bar Order, including, without limitation, the proportionate judgment reduction provision set forth herein." The additional language incorporated in the new paragraph of Section 11.3 of the Fourth Amended Plan is shown in the following blacklined text:

ORDERED that each Plaintiff is hereby enjoined and restrained from seeking relief or collecting judgments against any Non-Settling Defendants in any manner that fails to conform to the terms of this Bar Order, including, without limitation, the proportionate judgment reduction provision set forth herein; and it is further

### E.    Other Parent Claim Allocation Matter.

The Bankruptcy Court considered the Other Parent Claim Allocation Matter in connection with the Allocation Dispute hearings that occurred on March 5-6, 2012. The Bankruptcy Court's resolution of the Other Parent Allocation Matter is summarized in Section V.C.2 hereof.

## V.    ALLOCATION DISPUTES.

The Second Amended Plan generally provided for distributions premised on (i) distributions of DCL Plan Settlement consideration being subject to both the PHONES Subordination Provisions and the EGI-TRB Subordination Provisions (such that neither the Holders of the PHONES Notes Claims nor the Holders of the EGI-TRB LLC Notes Claims shared in such distributions) and (ii) Holders of Other Parent Claims benefitting from the PHONES Subordination Provisions and the EGI-TRB Subordination Provisions.[12] As further discussed below, consistent with the Allocation Disputes Ruling, the Fourth Amended Plan does not modify these treatment provisions.[13]

### A.    Overview of the Allocation Disputes.

In the wake of the Amended Confirmation Opinion, certain "Allocation Disputes" arose regarding the allocation of distributions among the Holders of Senior Noteholder Claims, Other Parent Claims, EGI-TRB LLC Claims and PHONES Notes Claims. Pursuant to the order (the "<u>Scheduling</u>

---

[12]    The relevant subordination provisions of the EGI-TRB LLC Notes are set forth in the Subordination Agreement, dated as of December 20, 2007, by EGI-TRB, L.L.C., a Delaware limited liability company, in favor of Senior Obligations (as defined therein) (the "<u>EGI-TRB Subordination Agreement</u>").

[13]    The Fourth Amended Plan contains certain targeted modifications to Sections 1.1.39 and 1.1.40 thereof reflecting the impact upon the waterfall of potential recoveries under the Litigation Trust that the Bankruptcy Court's determinations respecting post-petition interest in the Allocation Disputes Ruling may have.

Order") entered by the Bankruptcy Court on January 24, 2012 "),[14] the Bankruptcy Court established a protocol to adjudicate the Allocation Disputes.[15]

The issues defined in the Scheduling Order as the "Allocation Disputes" (which definition is incorporated herein by reference, other than as noted below) included the following:[16]

- whether and to what extent the distributions under Article III of the Fourth Amended Plan (the "Article III Distributions") must be adjusted in order for such distributions to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any portion of the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the DCL Plan Settlement are or are not subject to the EGI-TRB LLC Subordination Provisions (the "EGI-TRB/Settlement Dispute");

- whether and to what extent the priority of distributions from the Litigation Trust must be adjusted in order for the distributions under the Fourth Amended Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any distributions from the Litigation Trust are or are not subject to the EGI-TRB Subordination Provisions (the "EGI-TRB/LT Dispute");

- whether and to what extent the Article III Distributions or the priority of distributions from the Litigation Trust must be adjusted in order for such distributions to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that any category of Other Parent Claims (i.e., the Swap Claim; the Retiree Claims; or other General Unsecured Claims against Tribune (the "Other OP Claims")) does or does not constitute (a) "Senior Indebtedness", as defined by the PHONES Notes Indenture (including, without limitation, because any category of Other Parent Claims does or does not constitute "Indebtedness" as that term is defined in the PHONES Notes Indenture and used in the PHONES Notes Indenture's definition of "Senior Indebtedness") (the "PHONES/OPC Dispute") and (b) "Senior Obligations," as defined by the EGI-TRB Subordination Provisions (the "EGI-TRB/OPC Dispute");

---

[14]    See Docket No. 10692.

[15]    The Allocation Dispute protocol was not contemplated to and did not address the issues raised in the lawsuit titled *Official Committee of Unsecured Creditors of the Tribune Company v. FitzSimons, et al. (In re Tribune Co.)*, Adv. Proc. No. 10-54010 (Bankr. D. Del.) (KJC).

[16]    As defined in the Scheduling Order, the term "Allocation Disputes" included certain disputes regarding (i) the allocation of distributions from the Creditors' Trust provided under the Second Amended Plan and (ii) whether and to what extent all or any portion of the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the DCL Plan Settlement is or is not subject to the PHONES Subordination Provisions (the "PHONES/Settlement Dispute"). As further explained in Section VI.J hereof, the Fourth Amended Plan eliminates the Creditors' Trust. Accordingly, as used herein, the term "Allocation Disputes" does not include any disputes regarding the allocation of distributions from the Creditors' Trust. In addition, during the Allocation Dispute hearing that occurred on March 5, 2012, counsel for Wilmington Trust Company acknowledged that, in light of the Reconsideration Decision, Wilmington Trust Company was no longer prosecuting the PHONES/Settlement Dispute in connection with the Allocation Dispute hearings before the Bankruptcy Court, but is instead reserving its rights for appeal. Nevertheless, in the Allocation Disputes Opinion, the Bankruptcy Court concluded that, for the reasons set forth in the Reconsideration Decision, the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the DCL Plan Settlement is subject to the PHONES Subordination Provisions. As used herein, the term "Allocation Disputes" also does not include the PHONES/Settlement Dispute.

- the Allowed amount of the PHONES Notes Claims (the "PHONES/Allowance Dispute");

- whether and to what extent (a) the beneficiaries of the PHONES Subordination Provisions (as determined by the Bankruptcy Court, if applicable) are entitled to receive post-petition interest prior to the Holders of PHONES Notes Claims receiving any payment on account of their Claims (the "PHONES/PPI Dispute") and (b) the beneficiaries of the EGI-TRB Subordination Provisions (as determined by the Bankruptcy Court, if applicable) are entitled to receive post-petition interest prior to the Holders of EGI-TRB LLC Notes Claims receiving any payment on account of their Claims (the "EGI-TRB/PPI Dispute"); and

- the relative priority of the PHONES Notes and the EGI-TRB LLC Notes (the "PHONES/EGI-TRB Priority Dispute").

**B.      Adjudication of the Allocation Disputes.**

Pursuant to the Scheduling Order,  relevant parties in interest engaged in discovery, filed legal briefs and participated in the Allocation Dispute Hearings that were conducted before the Bankruptcy Court on March 5 and 6, 2012.  For example, each party taking a position on any of the Allocation Disputes filed a preliminary statement  (collectively, the "Preliminary Statements") setting forth the Allocation Dispute(s) on which such party intended to take a position and a brief statement of such position with respect to each such Allocation Dispute.  Additionally, consistent with the Scheduling Order, opening briefs (collectively, the "Opening Briefs") containing detailed arguments in respect of the positions asserted in the Preliminary Statements were filed by the parties on February 24, 2012 and response briefs (collectively, the "Response Briefs") addressing certain positions in the opening briefs were filed by the parties on March 2, 2012.[17,18]

**C.      Allocation Disputes Ruling.**

On April 9, 2012, the Bankruptcy Court entered the Allocation Disputes Ruling, which adjudicated each of the Allocation Disputes with one exception noted below.[19]  Specifically, in the Allocation Disputes Ruling, the Bankruptcy Court decided the following Allocation Disputes: (i) the PHONES/Allowance Dispute, (ii) the PHONES/OPC Dispute, (iii) the EGI-TRB/OPC Dispute, (iv) PHONES/EGI-TRB Priority Dispute, (v) the PHONES/PPI Dispute, (vi) the EGI-TRB/Settlement Dispute, and (vii) the EGI-TRB/LT Dispute.  However, the Bankruptcy Court decided that the EGI-TRB/PPI Dispute is not yet ripe for determination.

The Bankruptcy Court expressly stated that the Allocation Dispute Ruling is "subject to, conditioned upon, and for the purpose of obtaining confirmation of a chapter 11 plan substantially in the

---

[17]    Following the Allocation Dispute hearings, rebuttal letters were filed by certain parties addressing certain positions asserted during the Allocation Dispute hearings.

[18]    For a full understanding of the parties' respective positions with respect to the Allocation Disputes, reference should be made to the Preliminary Statements, Opening Briefs, Response Briefs, and rebuttal letters on file with the Bankruptcy Court and available on the Debtors' reorganization website, at http://chapter11.epiqsystems.com/tribune, under the "Key Documents" tab.

[19]    You may obtain a copy of the Allocation Disputes Ruling from the Debtors' reorganization website at http://chapter11.epiqsystems.com/tribune, under the "Key Documents" tab or under the "Docket" tab at Docket Nos. 11337 and 11338.

form of the Third Amended Plan."[20]  A brief summary of the key components of the Bankruptcy Court's Allocation Disputes Ruling follows (consistent with the ordering of allocation issues set forth in such ruling).[21]

### 1.    PHONES/Allowance Dispute.

The Bankruptcy Court determined that "[t]he claim amount for the [Holders of] PHONES [Notes Claims] should be $759,252,932 (known as the 'low PHONES Amount')."[22,23]

### 2.    PHONES/OPC Dispute and EGI-TRB/OPC Dispute.

With respect to the PHONES/OPC Dispute and EGI-TRB/OPC Dispute, the Bankruptcy Court ruled that "[t]he Third Amended Plan's equal treatment of the Senior [Noteholder Claims] and the Other Parent Claims does not amount to unfair discrimination under Bankruptcy Code §1129(b)."[24]  In connection with this determination, the Bankruptcy Court also concluded that the Swap Claim constitutes both "Senior Indebtedness," as defined by the PHONES Notes Indenture, and "Senior Obligations," as defined by the EGI-TRB Subordination Provisions.  However, based upon its unfair discrimination ruling, the Bankruptcy Court concluded that it need not decide whether the Retiree Claims or any other category of Other Parent Claims falls within the foregoing definitions of "Senior Indebtedness" and "Senior Obligations."  Accordingly, in light of the Bankruptcy Court's ruling, the classification and treatment of the Holders of the Other Parent Claims under the Fourth Amended Plan need not be adjusted in order to satisfy the applicable requirements of the Bankruptcy Code.

### 3.    PHONES/EGI-TRB Priority Dispute.

The Bankruptcy Court determined that "[t]he [EGI-TRB LLC] Notes are junior in priority to the PHONES Notes."[25]

### 4.    PHONES/PPI Dispute.

---

[20]    See Allocation Disputes Order.

[21]    In addition to the allocation rulings set forth in this Section V.C., in the Allocation Disputes Order, the Bankruptcy Court also determined that "[t]he subordination provisions in the PHONES Indenture are applicable to distributions of the Settlement Proceeds and the Creditors' Trust proceeds." See Allocation Disputes Order. As noted above, because the Fourth Amended Plan eliminates the Creditors' Trust, the Allocation Disputes discussed in this Supplement do not include any disputes regarding the allocation of distributions from the Creditors' Trust. See supra note 16. In addition, and also as noted above, because Wilmington Trust Company did not prosecute the PHONES/Settlement Dispute in connection with the Allocation Disputes hearings before the Bankruptcy Court, the Allocation Disputes discussed in this Supplement do not include the PHONES/Settlement Dispute. Id.

[22]    See Allocation Disputes Order.

[23]    Consistent with the Allocation Disputes Ruling and the Stipulation by and among the Debtors, Aurelius Capital Management, Wilmington Trust Company, as Successor Indenture Trustee for the PHONES, Barclays Bank PLC, and Waterstone Capital Management, L.P. on Certain Facts Relevant to the Allocation Disputes and the Determination of the Allowed Amount of the PHONES Claim [Docket No. 11016], under the Fourth Amended Plan, the PHONES Notes Claims shall together be deemed Allowed in the amount of $759,252,932.01 plus unpaid interest that accrued prior to the Petition Date (i.e., between November 15, 2008 and December 8, 2008).

[24]    Id.

[25]    Id.

With respect to the PHONES/PPI Dispute, the Bankruptcy Court ruled that "the beneficiaries of the [PHONES Subordination Provisions] are not entitled to receive post-petition interest prior to the [Holders of] PHONES [Notes Claims] receiving payment of their claims,"[26] provided that this determination "is without prejudice to allow the parties to revisit the issue in a court of competent jurisdiction" if the net amount of potential Litigation Trust recoveries substantially exceeds the hypothetical recoveries set forth in the Estimated Recovery Appendix attached hereto as Exhibit B.[27]

### 5. EGI-TRB/Settlement Dispute and EGI-TRB/LT Dispute.

The Bankruptcy Court determined that the EGI-TRB Subordination Provisions "are applicable to. . . a distribution of Settlement Proceeds under the Third Amended Plan . . . [and] a distribution of Litigation Trust proceeds. . .".[28] Accordingly, neither the Article III Distributions nor the priority of the distributions from the Litigation Trust under the Fourth Amended Plan need to be adjusted in order for such distributions to satisfy the applicable requirements of the Bankruptcy Code in connection with the EGI-TRB/LT Dispute.

### 6. EGI-TRB/PPI Dispute.

The Bankruptcy Court concluded that, under the circumstances, the EGI-TRB/PPI Dispute is not currently ripe for determination. Accordingly, such issue need not be resolved at this time in order to determine that the distributions under the Fourth Amended Plan satisfy the applicable requirements of the Bankruptcy Code.

### D. Impact of the Adjudication of the Allocation Disputes on Distributions to Holders of Claims in Revoting Classes under the Fourth Amended Plan.

Consistent with the Allocation Disputes Ruling, the Fourth Amended Plan provides for the Holders of Allowed Claims under the Fourth Amended Plan, including the Holders of Senior Noteholder Claims and Other Parent Claims, to receive the same estimated initial recoveries[29] as those provided under the Second Amended Plan, as follows:[30,31,32]

---

[26]    Id.

[27]    See Allocation Disputes Opinion at pp. 41-42.

[28]    See Allocation Disputes Order.

[29]    As was the case with the Second Amended Plan, the Holders of PHONES Notes Claims and EGI-TRB LLC Notes Claims will not receive an initial recovery under the Fourth Amended Plan.

[30]    Certain key factors and assumptions utilized in determining the estimated recovery percentages under the Fourth Amended Plan are set forth in Section C of the Estimated Recovery Appendix attached hereto as Exhibit B.

[31]    Information regarding the potential impact that certain hypothetical Litigation Trust recoveries may have on the distributions under the Fourth Amended Plan to the Holders of Allowed Senior Noteholder Claims and Other Parent Claims is set forth in the Estimated Recovery Appendix attached hereto as Exhibit B.

[32]    In light of the Bankruptcy Court's holding in its Reconsideration Decision, and consistent with the acknowledgment made by counsel for Wilmington Trust Company at the Allocation Dispute hearing that occurred on March 5, 2012, the estimated recovery percentages set forth in this Supplement and the Estimated Recovery Appendix attached hereto as Exhibit B are consistent with, among other things, the Bankruptcy Court's decisions to date and do not take into account any potential disposition of any existing or subsequent appeals.

- the estimated recovery percentage of the Holders of Senior Noteholder Claims shall remain at approximately 33.6%, plus interests in the Litigation Trust, under the Fourth Amended Plan; and

- the estimated recovery percentage of the Holders of the Other Parent Claims (the Swap Claim, the Retiree Claims, and the Other OP Claims) shall remain at approximately 36% with no interests in the Litigation Trust – or 33.6% with interests in the Litigation Trust – under the Fourth Amended Plan.[33]

Also as noted above, the Bankruptcy Court did not issue a ruling with respect to the EGI-TRB/PPI Dispute in the Allocation Disputes Ruling. As set forth in greater detail in the Estimated Recovery Appendix attached hereto as Exhibit B, the adjudication or resolution of such issue will not impact the initial recoveries of the Holders of Allowed Claims under the Fourth Amended Plan, and should not have an effect upon the distribution of Litigation Trust recoveries to the Holders of Senior Noteholder Claims, Other Parent Claims, PHONES Notes Claims, and EGI-TRB LLC Notes Claims under the Fourth Amended Plan unless the net amount of such potential Litigation Trust recoveries substantially exceeds the hypothetical recoveries denoted in the Estimated Recovery Appendix attached hereto as Exhibit B.

## VI.    OTHER MISCELLANEOUS PROVISIONS OF THE FOURTH AMENDED PLAN

In addition to modifications incorporated into the Fourth Amended Plan to address the Amended Confirmation Opinion and the Allocation Disputes Ruling, the Fourth Amended Plan contains certain amendments which, among other things, modify or clarify the implementation of certain provisions of the Fourth Amended Plan and address objections raised by certain parties in interest. Certain of these amendments, as well as certain other miscellaneous provisions of the Fourth Amended Plan, are described below.

### A.    Distributions to MSCS.

Section 3.2.5(c) of the Fourth Amended Plan clarifies that, with respect to distributions to be made to Holders of Senior Noteholder Claims pursuant to section 3.2.5 of the Fourth Amended Plan, Reorganized Tribune shall (a) withhold the amount of any consideration allocable to the Senior Noteholder Claims held by Morgan Stanley Capital Services Inc. and its Affiliates and Related Persons of such entities, including, without limitation, Morgan Stanley & Co., Inc (collectively, "MSCS") and (b) hold such amount in a reserve pending a determination of the allowance of  MSCS' s Senior Noteholder Claims and MSCS's entitlement to such distributions. If the Senior Noteholder Claims held by MSCS are disallowed or MSCS is otherwise found not to be entitled to such distribution, then the consideration that would otherwise be distributed to MSCS on account of its Senior Noteholder Claims shall instead be distributed to the other Holders of Allowed Senior Noteholder Claims as set forth in Section 3.2.5(c) of the Fourth Amended Plan.

### B.    Subrogation Rights.

---

[33]    Under the Second Amended Plan, Holders of Senior Noteholder Claims and Other Parent Claims were to receive approximately 32.73% of their Allowed Claims, plus a pro rata share of proceeds resulting from the settlement with Bridge Lenders, as well as Litigation Trust Interests and Creditors' Trust Interests. Holders of Other Parent Claims, however, also had the option of receiving 35.18% of their Allowed Claims, plus a pro rata share of proceeds resulting from the settlement with Bridge Lenders, if they elected to forego receiving Litigation Trust Interests and Creditors' Trust Interests. (Second Amended Plan, § 3.2.6(c).)

Section 5.8.2 of the Fourth Amended Plan has been modified to clarify that the PHONES Notes Indenture shall continue in effect to the extent necessary to allow the Holders of PHONES Notes to assert any subrogation rights that such Holders may have under section 14.06 of the PHONES Notes Indenture.

### C.    Payment of Indenture Trustee Fees.

Section 5.8.2 of the Fourth Amended Plan has been modified to provide that, if any applicable Indenture Trustee timely asserts a Claim for fees, costs, or expenses in the Chapter 11 Cases and such Claim becomes an Allowed Claim, such Allowed Claim shall receive the treatment specified for the applicable Class of Claims pursuant to the Fourth Amended Plan.

### D.    Participation in the Step Two/Disgorgement Settlement.

For the avoidance of doubt, Section 5.15.1 of the Fourth Amended Plan provides that any of the Step Two Arrangers and current or former Senior Lenders or Bridge Lenders that received any principal, interest or fees under the Bridge Loan Agreement or under the Senior Loan Agreement in respect of the Incremental Senior Loans prior to the Petition Date (each, a "Potential Step Two Disgorgement Defendant") that elected to participate in the Step Two/Disgorgement Settlement in accordance with the procedures set forth in the form of Exhibit 5.15.1(2) attached to the Second Amended Plan shall be deemed to have elected to participate in the Step Two/Disgorgement Settlement in connection with the Fourth Amended Plan except to the extent that any such party shall have delivered to the Debtors a notice revoking such election on or before the first day of the Confirmation Hearing.  Any Potential Step Two Disgorgement Defendant that did not elect to participate in the Step Two/Disgorgement Settlement in connection with the Second Amended Plan may elect to participate in the Step Two/Disgorgement Settlement in connection with the Fourth Amended Plan in accordance with the procedures set forth in Exhibit 5.15.1(2) attached to the Fourth Amended Plan at any time on or before the first day of the Confirmation Hearing or such later date as may be agreed to by the Step Two Arrangers.

### E.    Distribution of New Common Stock and New Warrants.

Section 7.2.3 of the Fourth Amended Plan has been modified to provide that in the event that a Holder of an Allowed Claim entitled to receive a distribution of New Common Stock or New Warrants under the Third Amended  Plan shall advise the Voting Agent in writing prior to the deadline established by the Bankruptcy Court that all or part of such distribution of New Common Stock or New Warrants should be made to one or more affiliates of such Holder or other parties as such Holder shall have designated in the written notice provided to such Voting Agent, the Disbursing Agent shall make such distribution to the party designated in the written notice, which distribution shall satisfy any and all obligations of the Disbursing Agent to distribute New Common Stock or New Warrants on account of the relevant Holder's Allowed Claim under the Fourth Amended Plan.

### F.    Calculation of Step Two/Disgorgement Settlement Participants' Distributions.

Section 10.1.1(l) of the Fourth Amended Plan has been modified to clarify that as a condition precedent to the Effective Date, the Disbursing Agent, in accordance with the terms of Exhibit 5.15.1(2) to the Fourth Amended Plan, shall have calculated amounts that will be offset from Step Two/Disgorgement Settlement participants' distributions pursuant to Article III of the Fourth Amended Plan that, together with any payments received from the Step Two/Disgorgement Settlement participants, shall be an amount that is equal to the aggregate Step Two/Disgorgement Settlement Proceeds.

### G.    Bar Order.

The Bar Order was approved by the Bankruptcy Court over the objection of Aurelius in the Confirmation Opinion, subject to inclusion of language that enjoins directly any actions by potential plaintiffs that do not conform to the terms of the Bar Order (Confirmation Opinion at 78). Aurelius again objected to the Bar Order in its motion for reconsideration, which the Bankruptcy Court denied. Thereafter, the DCL Proponents filed the Third Amended Plan, which included the additional language requested by the Bankruptcy Court. Following the filing of the Third Amended Plan, Aurelius requested that certain clarifying language be added to the Bar Order. Although the DCL Plan Proponents do not believe the changes are necessary given the Bankruptcy Court's prior approval of the Bar Order, the Fourth Amended Plan includes such changes as an accommodation to Aurelius. Accordingly, the Bar Order has been amended to clarify that (1) the judgment reduction formula should reflect the fault of all jointly and severally liable parties, not just those sued in a particular case by the Litigation Trust or the Indenture Trustees; and (2) the single satisfaction provision is triggered only if the Litigation Trust or Indenture Trustees collect in full on any judgment they are able to obtain.

### H.    Litigation Trust Valuation Expert.

Section 13.2.2 of the Fourth Amended Plan contains certain modifications regarding the calculation of the initial estimated fair market value of the Litigation Trust Assets to be transferred to the Litigation Trust. Specifically, Section 13.2.2 of the Fourth Amended Plan has been modified to clarify that the Debtors shall retain a valuation expert (the "Valuation Expert"), which Valuation Expert shall be acceptable to the other DCL Proponents. Prior to the Effective Date, the Valuation Expert shall determine and provide to the Debtors an initial estimated fair market value of all Litigation Trust Assets to be transferred to the Litigation Trust. Promptly after the Effective Date, the Valuation Expert shall determine and file with the Bankruptcy Court the final fair market value as of the Effective Date of all Litigation Trust Assets transferred to the Litigation Trust, giving due regard to the initial estimated valuation of such Litigation Trust Assets. The Valuation Expert's final determination of the fair market value as of the Effective Date of all Litigation Trust Assets transferred to the Litigation Trust shall be used consistently by the Litigation Trust, the Litigation Trustee, and the Litigation Trust Beneficiaries for all U.S. federal income tax purposes, including for purposes of determining tax basis and gain or loss.

### I.    Litigation Trust Advisory Board.

Section 13.3.1 of the Fourth Amended Plan has been modified to provide that the Litigation Trustee will be identified as soon after the Plan Supplement filing date as a majority of the parties who will be the initial members of the Litigation Trust Advisory Board inform the DCL Proponents of their selection of the Litigation Trustee; provided, however, the Litigation Trustee shall (a) have no standing, and shall not appear or be heard, in the Chapter 11 Cases or any pending actions related to the Committee Complaints or the Disclaimed State Law Avoidance Claims prior to the Effective Date and (b) not be entitled to receive any reimbursement for its costs or expenses of any kind from the Debtors or Reorganized Debtors. There shall be no more than three members of the Litigation Trust Advisory Board, consisting of (i) Wilmington Trust, (ii) Deutsche Bank and (iii) a member of the Creditors' Committee that will be a beneficiary of Litigation Trust Interests, but excluding the Senior Loan Agent. Wilmington Trust and Deutsche Bank (or either of their successors as Indenture Trustee) shall each have the right to name a party to serve as its designee on the Litigation Trust Advisory Board; provided, however, that if such designee ceases for any reason to be a member of the Litigation Trust Advisory Board, then, so long as Wilmington Trust or Deutsche Bank, as applicable, continue to serve as Indenture Trustee, it shall have the right to appoint a successor member of the Litigation Trust Advisory Board to replace its previous designee. Each member of the Litigation Trust Advisory Board, including any designee, will be identified in the Plan Supplement.

Section 13.3.1 of the Fourth Amended Plan has also been modified to provide that the members of the Litigation Trust Advisory Board shall be compensated as set forth in a filing to be made by the DCL Proponents with the Plan Supplement.

**J.      Elimination of Creditors' Trust**.

In response to the objections of certain creditors, the Fourth Amended Plan eliminates the Creditors' Trust previously contemplated by Article XIV of the Second Amended Plan.   As a result of this modification, on the Effective Date, all Holders of Senior Loan Claims, Bridge Loan Claims, Senior Noteholder Claims, Other Parent Claims, EGI-TRB LLC Notes Claims, and PHONES Notes Claims shall retain any Disclaimed State Law Avoidance Claims that they may have under applicable law (i.e., such claims shall not be transferred to the Creditors' Trust).

The Creditors' Trust was originally conceived to provide a mechanism for pursuit of Disclaimed State Law Avoidance Claims after the Effective Date (via a trust to benefit individual creditors who voluntarily contributed their claims).  Following the expiration on December 8, 2010 of the Bankruptcy Code's statute of limitations for an estate representative to commence chapter 5 avoidance actions, on April 25, 2011, the Bankruptcy Court entered an order ruling that individual creditors had regained the right, if any, to prosecute Disclaimed State Law Avoidance Claims.  [Docket No. 8740].  Subsequently, on May 4, 2011, the Committee disseminated a notice (the "SLCFC Notice") to all of the Debtors' creditors informing them that individual creditors could pursue Disclaimed State Law Avoidance Claims and that the statute of limitations may expire as early as June 4, 2011.

In light of the SLCFC Notice and the decisions of various parties to pursue their own actions before the expiration of certain statutes of limitations, as well as the objections to the usefulness of the Creditors' Trust raised by the noteholders, it does not appear that the Tribune Company parent creditors that the Creditors' Trust was designed to benefit are interested in establishing the Creditors' Trust.  If any such creditor does exist, it can still independently pursue Disclaimed State Law Avoidance Claims to the extent not time-barred, and the SLCFC Notice alerted them to the possible existence of these claims and statute of limitations issues.  Because the Creditors' Trust no longer appears to serve the purpose for which it was initially conceived, the DCL Proponents agreed to eliminate it from the Fourth Amended Plan.

The elimination of the Creditors' Trust is not intended, and should not be construed, to suggest, that pursuit by individual creditors of Disclaimed State Law Avoidance Claims would interfere in any way with the consummation of the Fourth Amended Plan or the Litigation Trust's pursuit of the Preserved Causes of Action.

**K.      Application of the EGI-TRB and PHONES Subordination Provisions to Recoveries of Holders of Senior Loan Claims and Bridge Loan Claims**.

As was the case with the Second Amended Plan, pursuant to the terms of the Fourth Amended Plan, no (i) distributions under the Fourth Amended Plan allocable or otherwise payable to PHONES Notes Claims or EGI-TRB LLC Notes Claims (including, without limitation, proceeds from the pursuit or settlement of Preserved Causes of Action) or (ii) amounts allocable or otherwise payable to PHONES Notes Claims or EGI-TRB LLC Notes Claims resulting from the pursuit or settlement of Disclaimed State Law Avoidance Claims shall be subject to turnover to the Holders of Senior Loan Claims, Senior Loan Guaranty Claims, Bridge Loan Claims or Bridge Loan Guaranty Claims in respect of such Senior Loan Claims, Senior Loan Guaranty Claims, Bridge Loan Claims or Bridge Loan Guaranty Claims.  See Fourth Amended Plan § 7.15.

L.    **Payment of Professionals' Fees and Expenses**.

The Fourth Amended Plan contains the same provision as did the Second Amended Plan for the payment of certain fees and expenses of the Senior Lenders, the Bridge Lenders and members of the Creditors' Committee (the "Professionals' Fees and Expenses").  The current estimate of the aggregate Professionals' Fees and Expenses that would be paid pursuant to the Fourth Amended Plan assuming an Effective Date of June 30, 2012, which shall not be binding, is approximately $72.3 million.  Payment of the Professionals' Fees and Expenses is and has been a key component of the DCL Plan Settlement embodied in the Fourth Amended Plan – a settlement that the Bankruptcy Court found was within the range of reasonableness.  See Confirmation Opinion.  Approval of the DCL Plan Settlement and confirmation of the Fourth Amended Plan, including its releases and the payment of Senior Lender fees and expenses,  would preclude all third parties from attempting to claw back payments made to the Senior Lenders or their professionals pursuant to the Fourth Amended Plan or otherwise.

## VII.    REORGANIZED VALUE UPDATE AND UPDATED FINANCIAL PROJECTIONS

In connection with the Second Amended Plan, the Debtors' investment banker and financial adviser, Lazard, undertook a valuation analysis to determine the value available for distribution to holders of Allowed Claims (the "Initial Reorganized Value Analysis").  Lazard's Initial Reorganized Value Analysis, which it prepared in October 2010, was attached as Exhibit F to the General Disclosure Statement and estimated a range of Distributable Value for the Reorganized Debtors from $6.3 billion to $7.1 billion with an approximate mid-point of $6.75 billion, as of a December 27, 2010 assumed Effective Date.  Lazard subsequently updated its Initial Reorganized Value Analysis in January 2011 (as updated, the "January 2011 Reorganized Value Analysis"), at which time it estimated a range of Distributable Value for the Reorganized Debtors from $6.6 billion to $7.4 billion with an approximate mid-point of $7.019 billion, as of a June 30, 2011 assumed Effective Date.

In the Confirmation Opinion, the Bankruptcy Court found persuasive Lazard's January 2011 Reorganized Value Analysis and concluded that "the Debtors' Total Distributable Value is … $7.019 billion."  Confirmation Opinion at 29.  The Bankruptcy Court's discussion of "Valuation" is set forth on pages 20-29 of the Confirmation  Opinion.  Testimony and other evidence supporting the Debtors' valuation reports is set forth in the March 11, 2011 transcript of the Confirmation Hearing at pages 14 to 137 (Mandava testimony) and pages 140 to 214 (Chachas testimony).  See also DCL Exs. 1092, 1104, 1485, 1494.

As did the Second Amended Plan, the Fourth Amended Plan permits the Senior Noteholders and Holders of Other Parent Claims to elect to receive either an all-cash distribution or a "strip" of consideration consisting of a portion of Distributable Cash, New Senior Secured Term Loan, and New Common Stock (a "Strip").  See Fourth Amended Plan, Sections 3.2.5(c), 3.2.6(c).  The ultimate recovery percentages of creditors who elect a Strip distribution may potentially be higher or lower than the recovery percentages of creditors who elect an all-cash distribution due to, for example, potential variations in the Debtors' Distributable Value.  See Section C of Exhibit B to this Supplement for further explanation.

To provide further information that may be useful in connection with the exercise of the foregoing elections, the Debtors have updated the Bankruptcy Court-approved valuation of $7.019 billion to reflect the impact on value of developments since completion of the January 2011 Reorganized Value Analysis.  As explained in greater detail in Exhibit C, that update uses the same methodology that was used in the January 2011 Reorganized Value Analysis but computes value based on the Debtors' most

current financial data as well as multiples that are updated to reflect current market performance.  Details relating to the Debtors' updated financial projections are set forth in <u>Exhibit D</u>. [34]

Based on the update, as of February 16, 2012, the Reorganized Debtors' Distributable Value is estimated at a range of $6.917 billion to $7.826 billion with an approximate mid-point of $7.372 billion. As discussed in <u>Exhibit C</u>, the overall increase in value from the Bankruptcy Court-approved valuation of $7.019 billion is principally attributable to the Debtors' continuing accrual of Distributable Cash.  The value of the Debtors' publishing business has declined by approximately $300 million; the value of the Debtors' broadcasting business has increased by approximately $350 million; and the value of the Debtors' Other Assets, comprised principally of the Debtors' minority equity investments, has increased by approximately $38 million on an aggregate basis.

The foregoing updated estimate of the Distributable Value of the Reorganized Debtors is subject to various assumptions and qualifications, including those stated in the January 2011 Reorganized Value Analysis, and is solely for purposes of determining the value available for distribution pursuant to a plan of reorganization.  Further, the update does not account for certain potential tax and related liabilities for which the Debtors may be liable.  As a result of those potential liabilities, the actual Distributable Value of the Reorganized Debtors could be lower than that set forth above.

## VIII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE FOURTH AMENDED PLAN

The following discussion is a summary of certain U.S. federal income tax aspects of the Fourth Amended Plan, is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Fourth Amended Plan with respect to a particular holder of a Voting Claim.  This discussion does not purport to be a complete analysis or listing of all potential tax considerations.

This discussion is based on existing provisions of the Internal Revenue Code of 1986, as amended (the "<u>IRC</u>"), existing and proposed Treasury Regulations promulgated thereunder, and current administrative rulings and court decisions.  Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the U.S. federal income tax consequences of the Fourth Amended Plan.  Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences of the Fourth Amended Plan.  No representations or assurances are being made to the U.S. Holders of Claims in Revoting Classes with respect to the U.S. federal income tax consequences described in the Fourth Amended Plan.

*Except as otherwise noted below, the following discussion serves only to supplement Article VI of the Specific Disclosure Statement ("Certain Federal Income Tax Consequences of the Debtor/Committee/Lender Plan").*

\*        \*        \*        \*

Any discussion of U.S. federal tax issues set forth in this Supplement was written solely in connection with the confirmation of the Fourth Amended Plan to which the transactions described in this Supplement are ancillary.  Such discussion is not intended or written to be legal or tax advice to any person and is not intended or written to be used, and cannot be used, by any person for the purpose of

---

[34]  The Debtors' updated financial projections are based upon, and are subject to, various assumptions, qualifications and disclaimers set forth in greater detail in <u>Exhibit D</u> hereto.

avoiding any U.S. federal tax penalties that may be imposed on such person.  Each holder of a Voting Claim should seek advice based on its particular circumstances from an independent tax advisor.

*        *        *        *

**A.      Federal Tax Consequences to the Debtors**.

This Supplement incorporates by reference the disclosure of tax-related consequences and risks associated with the Second Amended Plan, as set forth in Sections XII.B.15 of the General Disclosure Statement and Sections V.C.2 and VI of the Specific Disclosure Statement.  In addition, the Debtors are still evaluating the tax consequences, if any, of certain transactions contemplated by the Fourth Amended Plan, including the Step Two/Disgorgement Settlement and the establishment of the Litigation Trust.

**B.      Federal Income Tax Consequences to Certain U.S. Holders of Claims in Revoting Classes**.

*The following discussions of certain U.S. federal income tax consequences to U.S. Holders of Claims in Revoting Classes supersedes the discussions of U.S. federal income tax consequences to such Holders contained in Article VI of the Specific Disclosure Statement*.

1.      U.S. Holders of Senior Noteholder Claims.

U.S. Holders of Allowed Senior Noteholder Claims will receive Trust Interests and Cash, and may elect to receive interests in the New Senior Secured Term Loan and New Common Stock (and where applicable, New Warrants) in exchange for their Claims.  The treatment of a U.S. Holder of an Allowed Senior Noteholder Claim will depend on such U.S. Holder's election.

If a U.S. Holder of an Allowed Senior Noteholder Claim elects to exchange its Claim for Trust Interests and Cash, such Holder should generally recognize gain or loss in an amount equal to the difference between the Holder's adjusted tax basis in its Claim surrendered in the exchange, determined immediately prior to the Effective Date, and the sum of (i) the fair market value of the Holder's share of Trust Assets, and (ii) the amount of Cash received.

If, however, a U.S. Holder of an Allowed Senior Noteholder Claim elects to exchange its Claim for interests in the New Senior Secured Term Loan, New Common Stock (and where applicable, New Warrants), Trust Interests and Cash, the exchange of such Claim will likely be treated as a recapitalization for U.S. federal income tax purposes.   Such Holder will realize gain or loss in an amount equal to the difference between the Holder's adjusted tax basis in its Claim surrendered in the exchange, determined immediately prior to the Effective Date, and the sum of (i) the fair market value of the Holder's share of Trust Assets, (ii) the issue price of the Holder's interest in the New Senior Secured Term Loan, (iii) the fair market value of the New Common Stock (and where applicable New Warrants), and (iv) the amount of Cash received.

The tax consequences of a recapitalization to a U.S. Holder of such Claim will depend, in part, upon whether the New Senior Secured Term Loan constitutes a "security" for U.S. federal income tax purposes.  Although not free from doubt, the New Senior Secured Term Loan will likely not constitute a security for U.S. federal income tax purposes.  See "Definition of 'Security'," in Article VI of the Specific Disclosure Statement.  U.S. Holders are encouraged to consult with their tax advisors in connection with the determination of whether the New Senior Secured Term Loan constitutes a security for U.S. federal income tax purposes.  The remainder of this discussion assumes that the New Senior Secured Term Loan will not constitute a security for U.S. federal income tax purposes.

23

In the case of a recapitalization, a U.S. Holder of such Claim who realizes a loss on the exchange will not be permitted to recognize such loss, except to the extent of any loss attributable to accrued but unpaid interest with respect to such Claim. A U.S. Holder of such Claim who realizes gain on the exchange will be required to recognize the lesser of (i) the amount of gain realized on the exchange and (ii) the sum of (a) the issue price of the Holder's interest in the New Senior Secured Term Loan, (b) the fair market value of the Holder's share of Trust Assets, if any, and (c) the amount of Cash received as part of the exchange. A U.S. Holder's tax basis in the New Common Stock and any New Warrants received in exchange for its Claim will equal its adjusted tax basis in its Claim, increased by the amount of gain recognized on the exchange, if any, and reduced by the sum of (i) the fair market value of the U.S. Holder's interest in the New Senior Secured Term Loan, (ii) the fair market value of the Holder's share of Trust Assets, if any, and (iii) the amount of Cash received as part of the exchange. If a U.S. Holder receives both New Common Stock and New Warrants in exchange for its Claim, such basis will be allocated between the New Common Stock and the New Warrants in proportion to their relative fair market values on the date received. A U.S. Holder's holding period in the New Common Stock and any New Warrants will include the holding period in its Claim surrendered. A U.S. Holder's tax basis in its share of Trust Assets, if any, will equal the fair market value of such assets on the date received. A U.S. Holder's holding period in its share of Trust Assets, if any, will commence on the day after the date received. A U.S. Holder's tax basis in its interest in the New Senior Secured Term Loan will equal the issue price of the Holder's interest in the New Senior Secured Term Loan. A U.S. Holder's holding period in its interest in the New Senior Secured Term Loan will commence on the day after the date received.

See "Federal Income Tax Treatment of New Senior Secured Term Loan," in Article VI of the Specific Disclosure Statement, for a discussion related to the determination of the issue price of, as well as the tax considerations of holding an interest in, the New Senior Secured Term Loan.

      2.      U.S. Holders of Other Parent Claims (not including the Swap Claim and Claims against Tribune arising from a Non-Qualified Former Employee Benefit Plan).

U.S. Holders of Allowed Other Parent Claims will receive Cash and may elect to receive Trust Interests, interests in the New Senior Secured Term Loan and/or New Common Stock (and where applicable, New Warrants) in exchange for their Claims. Accordingly, a U.S. Holder of an Allowed Other Parent Claim should generally recognize income or loss in an amount equal to the difference between the adjusted tax basis in its Claim surrendered in the exchange, determined immediately prior to the Effective Date, and the sum of (i) the amount of Cash received, (ii) the fair market value of the U.S. Holder's share of Trust Assets, if any, (iii) the issue price of the U.S. Holder's interest in the New Senior Secured Term Loan, if received and (iv) the fair market value of the New Common Stock (and where applicable, New Warrants), if received.

A U.S. Holder's tax basis in its share of Trust Assets, if any, and any New Common Stock (and where applicable, New Warrants) received in the exchange, will equal the fair market value of such assets on the date received. A U.S. Holder's tax basis in its interest in the New Senior Secured Term Loan, if received, will equal the issue price of the Holder's interest in the New Senior Secured Term Loan. A U.S. Holder's holding period in such assets will commence on the day after the date received.

See "Federal Income Tax Treatment of New Senior Secured Term Loan," in Article VI of the Specific Disclosure Statement, for a discussion related to the determination of the issue price of, as well as the tax considerations of holding an interest in, the New Senior Secured Term Loan.

      3.      U.S. Holders of Claims arising from a Non-Qualified Former Employee Benefit

Plan.

U.S. Holders of Allowed Claims arising from a Non-Qualified Former Employee Benefit Plan will receive Cash and may elect to receive Trust Interests, interests in the New Senior Secured Term Loan and/or New Common Stock (and where applicable, New Warrants) in exchange for their Claims. Accordingly, a U.S. Holder of such a Claim will likely recognize compensation income in an amount equal to the sum of the following, determined immediately prior to the Effective Date: (i) the amount of Cash received as part of the exchange, (ii) the fair market value of the U.S. Holder's share of Trust Assets, if any, (iii) the issue price of the Holder's interest in the New Senior Secured Term Loan, if received, and (iv) the fair market value of the New Common Stock (and where applicable, New Warrants), if received. Under Treasury Regulations promulgated under Section 409A of the IRC, such a payment may be treated as an acceleration of deferred compensation, and, if so, would be subject to an additional twenty percent (20%) tax, and interest would be due at the federal underpayment rate plus one percent (1%) on the underpayments of income tax on the amount of such deferred compensation had it been included in income in the first year it was no longer subject to a substantial risk of forfeiture.

A U.S. Holder's tax basis in its share of Trust Assets, if any, and any New Common Stock (and where applicable, New Warrants) received in the exchange, will equal the fair market value of such assets on the date received. A U.S. Holder's tax basis in its interest in the New Senior Secured Term Loan, if received, will equal the issue price of the Holder's interest in the New Senior Secured Term Loan. A U.S. Holder's holding period in such assets will commence on the day after the date received.

See "Federal Income Tax Treatment of New Senior Secured Term Loan," in Article VI of the Specific Disclosure Statement, for a discussion related to the determination of the issue price of, as well as the tax considerations of holding an interest in, the New Senior Secured Term Loan.

4.    U.S. Holders of EGI-TRB LLC and PHONES Notes Claims.

U.S. Holders of Allowed EGI-TRB LLC Notes Claims and U.S. Holders of Allowed PHONES Notes Claims will receive Trust Interests in exchange for their Claims. A U.S. Holder of an Allowed EGI-TRB LLC Notes Claim or PHONES Notes Claim that receives Trust Interests in exchange for its Claim should generally recognize gain or loss in an amount equal to the difference between the Holder's adjusted tax basis in its Claim surrendered in the exchange, determined immediately prior to the Effective Date, and the fair market value of the Holder's share of Trust Assets.

**C.    Federal Income Tax Treatment of the MSCS/Senior Noteholder Reserve**.

Pursuant to the Fourth Amended Plan, Reorganized Tribune shall establish a reserve (the "Reserve") for purposes of holding any consideration that may be allocable to the Senior Noteholder Claims held by MSCS in the event MSCS's Senior Noteholder Claims become Allowed Claims. Distributions from the Reserve shall be made to MSCS in the event its Senior Noteholder Claims are subsequently Allowed, and to Holders of Allowed Senior Noteholder Claims (whether such Claims were Allowed on or after the Effective Date) in the event the Senior Noteholder Claims held by MSCS are subsequently disallowed.

The Reserve may be structured in a manner intended to cause it to be subject to a separate entity-level tax on its income. Therefore, distributions from the Reserve may be reduced to satisfy any taxes payable by the Reserve.

Holders of Senior Noteholder Claims should note that the tax treatment of the Reserve is unclear and should consult their own tax advisors.

25

IX.     **CONCLUSION AND RECOMMENDATION**

The DCL Proponents believe that confirmation of the Fourth Amended Plan is in the best interests of the Debtors, the Debtors' Estates and creditors.  Further, the DCL Proponents believe that the limited Modifications incorporated in the Fourth Amended Plan conform to and cure each of the limited legal issues identified by the Bankruptcy Court in the Amended Confirmation Opinion.  The DCL Proponents further believe that, to the extent a modified Noteholder Plan is proposed, the Fourth Amended Plan will, consistent with the Bankruptcy Court's finding that a modified Second Amended Plan would "survive the crucible of [section] 1129(c) [of the Bankruptcy Code]," be the preferred Plan that would "provid[e] the Debtors with more certainty regarding preservation of estate value and a better foundation for revitalizing business operations." (Confirmation Opinion at 125.)

**Accordingly, the DCL Proponents urge the Holders of Claims in Revoting Classes to vote to <u>accept</u> the Fourth Amended Plan and to evidence such acceptance by returning their Ballot to the Voting Agent so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on May 21, 2012.**

Dated: April 17, 2012

TRIBUNE COMPANY (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession, and the Guarantor Non-Debtors and Non-Guarantor Non-Debtors)

/s/   Donald J. Liebentritt
By:  Donald J. Liebentritt
Title:  Chief Restructuring Officer, Tribune

Date:  April 16, 2012

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TRIBUNE COMPANY, ET AL.
Warner Bros., solely in its capacity as Co-Chair of
the Creditors' Committee and not in its individual
capacity

By:    Wayne M. Smith
Title: Vice President, Senior Litigation & Chief
Patent Counsel

Date:  April 17, 2012

OAKTREE CAPITAL MANAGEMENT, L.P.
on behalf of certain funds and accounts it manages


 /s/   Ken Liang
By:  Mr. Ken Liang
Title: Managing Director

 /s/   Edgar Lee
By:  Mr. Edgar Lee
Title: Senior Vice President

Date:  April 17, 2012

ANGELO, GORDON & CO., L.P.
on behalf of certain funds and managed accounts


 /s/   Thomas M. Fuller
By:  Thomas M. Fuller
Title:  Authorized Signatory

Date:  April 17, 2012

JPMORGAN CHASE BANK, N.A.

 /s/   Marina S. Levin
By:  Marina S. Levin
Title:  Executive Director