**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>**TRIBUNE COMPANY, et al.,**<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date and Time: TBD<br>Objection Deadline: TBD |

**MOTION OF CITADEL EQUITY FUND LTD. AND CAMDEN ASSET
MANAGEMENT FOR RECONSIDERATION AND/OR
CLARIFICATION OF THE COURT'S APRIL 9, 2012
MEMORANDUM AND ORDER REGARDING ALLOCATION DISPUTES**

TO:　　THE HONORABLE KEVIN J. CAREY
　　　　UNITED STATES BANKRUPTCY JUDGE

　　　　Citadel Equity Fund Ltd., a Cayman Islands company, and Camden Asset Management (referred to herein as the "Tendering Noteholders"), by their undersigned counsel, for their Motion for Reconsideration and/or Clarification (the "Motion") of the Court's April 9, 2012 Memorandum Regarding Allocation Disputes [Docket No. 11337] (the "Memorandum") and accompanying Order Regarding Allocation Disputes [Docket No. 11338] (the "Order" and, together with the Memorandum, the "Decision") pursuant to Rule 59 of the Federal Rules of Civil Procedure ("FRCP"), made applicable herein pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[1] respectfully represent:

**INTRODUCTION AND PRELIMINARY STATEMENT**

　　　　1.　　The Tendering Noteholders, in the aggregate, hold approximately $222 million initial principal amount of PHONES. Based on this Court's ruling in the Decision, the claims held by the Tendering Noteholders aggregate approximately $26 million. Wilmington Trust Co.,

---

[1] Capitalized terms not defined herein shall, expect as otherwise indicated, have the meanings ascribed to them in the Decision.

as successor indenture trustee, on behalf of the PHONES, participated in the proceedings that gave rise to the Decision.

2. Pursuant to Rule 59 of the FRCP, the Tendering Noteholders respectfully seek clarification of the following two discrete issues raised by the Decision:

A. Did this Court, in its Decision, intend in any way to affect the rights and remedies of Tendering Noteholders in the state law fraudulent conveyance litigation captioned *In re: Tribune Company Fraudulent Conveyance Litigation,* 11-MD-02296 (WHP) (S.D.N.Y.) (the "MDL")) (or, alternatively, were all such matters relating to the MDL entirely reserved for disposition by the MDL Court)?

B. Did this Court, in its Decision, intend in any way, to fix or establish the classification of the claims of Tendering Noteholders in any Chapter 11 Plan for the Debtors (or, alternatively, was that issue reserved for determination in connection with Plan confirmation)?

3. Although the relief requested herein is governed by FRCP 59(e), made applicable pursuant to Bankruptcy Rule 9023, this Motion seeks this Court's clarification, as well as reconsideration, of its prior ruling in the Decision. The Decision is silent with respect to the issues set forth above. The Decision could, however, arguably be construed to constitute rulings that (i) affect, or have a substantive impact on, the existing "state claim" fraudulent conveyance or transfer litigation pending in the MDL Court and/or (ii) establish the classification of the Tendering Noteholders' claims under any Chapter 11 Plan for the Debtors in these cases, including the Plan proposal set for consideration later this year.

4. If this Court did not intend for its Decision to (i) affect the rights and remedies of the Tendering Noteholders in the MDL and/or (ii) fix or establish the classification of the Tendering Noteholders' claims under any chapter 11 plan for the Debtors, the undersigned respectfully request that this Court confirm or clarify that through a supplemental or similar ruling. If this Court did, however, intend to affect the Tendering Noteholders' rights under the MDL and establish the classification of the Tendering Noteholders' claims, the undersigned

2

respectfully request that this Court reconsider and/or clarify its conclusions for the reasons set forth herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are FRCP 59 and Bankruptcy Rule 9023.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

**A.    PHONES**

6. The PHONES were issued in April 1999 pursuant to an Indenture, dated as of April 1, 1999 (the "PHONES Indenture"). The PHONES provide that each holder thereof has the right, at any time, to exchange all or a portion of its PHONES for an amount of cash per PHONE equal to 95% of the market value of two shares of common stock of Time Warner, Inc., as successor by merger to America Online Inc. (the "Exchange Option"). To exercise the Exchange Option, a holder of PHONES must send an exchange notice and surrender the PHONES for cancellation. Once the notice is sent and Tribune acknowledges that it has taken possession of the PHONES tendered for exchange, Tribune is required to make the appropriate cash payment to the tendering PHONES holder.

7. Article XIV of the PHONES Indenture governs the subordination provisions relating to the PHONES. Section 14.02 of the PHONES Indenture provides, in pertinent part:

> Upon any distribution of assets of the Company in the event of … any … bankruptcy case or proceeding, … then and in such event
>
> (A) the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness, or provision shall be made for

>   such payment in cash, before the *Holders of the Securities* of any series are entitled to receive any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series…

(Emphasis added.)  Section 14.02 makes clear that the subordination provisions of the PHONES Indenture only apply with respect to payments to be made to holders of PHONES.

8.    Immediately prior to the Petition Date, numerous holders of PHONES, including the Tendering Noteholders who bring the present Motion, attempted to exercise the Exchange Option by delivering exchange notices (the "Exchange Notices"). Tribune acknowledged receipt and/or notice of the Exchange Notices but failed to make the requisite cash payment prior to the Petition Date.  After the Petition Date, a number of the PHONES holders that had exercised the Exchange Option sent requests seeking to withdraw their Exchange Notices.  By letter, dated January 14, 2009, Tribune informed the then-trustee for the PHONES that it would not honor such requests for withdrawal and that Tribune considered the election made by the Tendering Noteholders to be final and irrevocable.

9.    The Debtors have contended throughout these cases that the aggregate claim amount of the PHONES holders that exercised the Exchange Option is approximately $56 million - - a cash amount equal to ninety-five percent (95%) of the computed market value of two shares of Time Warner, Inc. common stock for each tendered PHONE. Wilmington Trust Co., as successor Indenture trustee for, and at that time on behalf of, the holders of PHONES that exercised the Exchange Option and never received the cash payment, has contended before this Court that the aggregate value of their claim is approximately $481 million (i.e., the same claim amount, per-PHONE, as those PHONES holders that did not exercise the Exchange Option).

4

**B.      October 31, 2011 Confirmation Opinion**

10.     On October 31, 2011, this Court entered its opinion denying confirmation of two competing plans of reorganization for the Debtors [Docket No. 10133] (the "Confirmation Opinion").  In the Confirmation Opinion, this Court briefly addressed the dispute relating to the amount of the claims of the prior holders of PHONES that exercised the Exchange Option. The Court determined that it did not have a sufficiently developed record to resolve the issue at that time.  The Court did, however, expressly hold that the claims of such holders could not, under Section 510(b) of the Bankruptcy Code, be subordinated to the claims of holders of PHONES that did not exercise the Exchange Option.

**C.      April 9, 2012 Allocation Decision**

11.     On April 9, 2012, the Court issued the Decision.  After reviewing additional evidence (including a stipulation among the parties participating in that litigation), this Court made a ruling with respect to the amount of the claims of the holders of PHONES that exercised the Exchange Option.  This Court did not expressly make any ruling with respect to the classification of the Tendering Noteholders' claims.

12.     In the Decision, the Court held that, as of the Petition Date, because the Tendering Noteholders surrendered their PHONES for cancellation, such PHONES were no longer "outstanding."  As a result, the Court concluded that Tribune was obligated, as of the date such PHONES were tendered, to pay such holders a cash amount equal to the applicable exchange rate.  Based on the foregoing, the Court concluded that the Tendering Noteholders held a claim against Tribune for the cash amount that Tribune was obligated to pay to such holders on the Petition Date - - approximately $18.26 per PHONE previously held by such holder.

13. This Court's Decision, however, is unclear as to whether (i) the Tendering Noteholders (and other PHONES holders that exchanged their PHONES) hold "PHONES claims," albeit in a significantly reduced amount (approximately twelve percent (12%) of the Original PHONES), or (ii) the Tendering Noteholders hold general unsecured claims equal to the cash amount that Tribune is obligated to pay such holders as a result of their tender of their PHONES. The Memorandum contains the following chart (the "Allocation Chart"):

|  | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $ 1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| subtotal | 7,613,351 | $ 1,183,833,767 |
| Less Exchanges subject to determination (tendered during the Exchange Period, including the rejected DWAC tenders) | (3,093,941) | ($ 481,090,630) |
| subtotal | 4,519,410 | $ 702,743,137 |
| Add Exchange Value of Accepted DWAC Tenders (including Rejected DWAC tenders) |  | $ 56,509,795 |
| Total | 4,519,410 | $759,252,932 |

14. In the Allocation Chart, this Court reduced the total "Number of PHONES" outstanding from 7,613,351 to 4,519,410 by subtracting the number of PHONES that were delivered for cancellation by the PHONES holders that exercised the Exchange Option. This would support the conclusion that this Court determined that such holders no longer hold "PHONES claims," but rather, hold general unsecured claims for the cash exchange amount payable by Tribune. At the same time, however, in the Allocation Chart, this Court also included

in the total "PHONES Claim Amount" the approximate $56 million cash amount that Tribune is obligated to pay the holders of PHONES that exercised the Exchange Option. Accordingly, it is unclear what this Court's determination was (if any) with respect to the "type" or "class" of claims the Tendering Noteholders (and other PHONES holders that exercised the Exchange Option) have.

15.    Similarly, as discussed below, it is unclear whether this Court intended that its Decision would have any effect on the state law fraudulent conveyance claims asserted in the MDL by purporting to reduce the amount of the PHONES included in the Plaintiff "class." As discussed below, the Decision should have no effect on the MDL, particularly given that the claims asserted therein arose at the time of the "LBO" transactions, as opposed to the Petition Date. For the reasons discussed below, the Tendering Noteholders seek clarification and reconsideration on such issue.

**BASIS FOR RELIEF**

16.    To the extent that the Decision, in fact, made rulings with respect to the issues addressed herein, the basis for relief requested in this Motion is FRCP 59(e), made applicable here pursuant to Bankruptcy Rule 9023. Bankruptcy Rule 9023 allows parties to file motions for reconsideration or amendment of judgment. *See In re Vision Metals, Inc.*, 327 B.R. 719, 721 (Bankr. D. Del. 2005) ("A motion for reconsideration… generally fall[s] within the parameters of Rule 59(e) . . ."). The standards governing a motion for reconsideration seek to balance the importance of finality in judicial decisions with a recognition that courts sometimes err. *Kerr v. Castle*, 768 F. Supp 1087, 1093 (D.Del. 1991), *aff'd*, 22 F.3d 303 (3d Cir. 1994) (citing *Brambles U.S.A., Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990)). Indeed, while finality of judgments is an important consideration, the goal of finality must yield, in appropriate

circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Karr*, F. Supp at 1093 (internal citations omitted).

## ARGUMENT

A. **The Tendering Noteholders Seek Clarification that the Decision Does Not Constitute Rulings with Respect to the Matters Raised Herein.**

17. The Decision makes no specific reference to either of the issues raised for reconsideration and/or clarification herein. The Decision could, however, be construed as constituting rulings with respect to such matters. This Motion's primary purpose is to seek clarification, and confirmation, from this Court that the Decision does not address, or constitute rulings on, such issues. If, however, this Court intended to affect the Tendering Noteholders' rights under the MDL and establish the classification of the Tendering Noteholders' claims, the undersigned respectfully request that this Court reconsider and/or clarify its conclusions for the reasons set forth herein.

B. **The Decision Should Not in Any Way Affect the Rights and Remedies of Tendering Noteholders in the MDL.**

18. The amount of the Tendering Noteholders claims in these chapter 11 cases or, more specifically, under a chapter 11 plan for the Debtors, is a separate and distinct issue from the amount of the Tendering Noteholders' claims with respect to state law fraudulent conveyance in the MDL. Claims in bankruptcy accrue or are fixed on the Petition Date (and any disputes concerning the nature and amount of such claims are determined by the bankruptcy court as of such date). On the other hand, the state law fraudulent conveyance claims asserted in the MDL accrued when the actions or transaction complained of occurred - - that is, at the time of the "LBO" transactions.

19. This Court has made very clear that it has not adjudicated, and does not intend to adjudicate, matters specifically relating to the MDL and that disputes with respect to such state law fraudulent conveyance claims should be determined by the MDL Court and not by this Court. For example, at a hearing held on March 22, 2011, this Court stated that it was "*not disposing of substantive rights*. I'm not making a determination of what happens to state law fraudulent conveyance claims upon the expiration of the estate's ability to pursue them, but without standing in the way of such actions." March 22, 2011 Hearing Tr., 102:22-103:1 (Emphasis added.); *see also Order Granting (I) Relief from the Automatic Stay to the Extent the Automatic Stay bars Commencement by Creditors of State Law Constructive Fraudulent Conveyance Claims to Recover Stock Redemption Payments made to Step One Shareholders and Step Two Shareholders and (II) Leave from the mediation Order to Permit Commencement of Litigation on Account of Such Claims* [Docket No. 8740] (Bankr. D. Del. April 25, 2011), p. 4 ("[f]or the avoidance of doubt, by this Order, this Court makes no finding and issues no ruling determining the standing of the Original Plaintiff's Group (or any creditor) to assert the Creditor SLCFC Claims or whether such claims are preempted or otherwise impacted by 11 U.S.C. § 546(e).").

20. Notwithstanding the Court's ruling in the Decision that the PHONES holders who tendered their PHONES no longer "hold" PHONES but, rather, hold a right to receive approximately $18.26 per PHONE previously held by them, such holders (including the Tendering Noteholders) continue to have the right to be plaintiffs for the full amount of the PHONES held by each of them on the date the causes of action asserted in the MDL accrued.

21. Wilmington Trust Co., as successor Indenture Trustee under the PHONES Indenture, sued for approximately $1.24 billion in the MDL. Although Wilmington Trust Co. no

9

longer represents the Tendering Noteholders in these chapter 11 cases because the Tendering Noteholders no longer hold PHONES - - but instead the right to receive $18.26 per PHONE formerly held by them - - the full amount of the PHONES extant when the cause of action in the MDL accrued are still part of the plaintiffs' claims in the MDL. Nothing in the Decision changes such fact, nor should the Decision in any way be used in the MDL for the proposition that the PHONES plaintiffs' claims in the MDL litigation only aggregate approximately $759 million rather than approximately $1.24 billion.

C. **The Decision and Order Should Not Fix the Classification of the Claims Of Tendering Noteholders - - If So, Such Claims Constitute General Unsecured Claims That Are Not Subordinated to the Debtors' Senior Indebtedness.**

22. In its Decision, this Court held that the Tendering Noteholders irrevocably exercised their right to exchange the PHONES by delivering them for cancellation. As a result, the PHONES that were tendered for exchange were no longer "outstanding" (and, by extension, the Tendering Noteholders no longer "held" such PHONES). The Court further held that, because the Tendering Noteholders had exchanged their PHONES, and Tribune had not complied with its payment obligations in connection with such exchange, the Tendering Noteholders hold a claim against the Debtors in an amount equal to the cash amount Tribune was obligated to pay the Tendering Noteholders as of the Petition Date. Such cash amount is, on a per-PHONE basis, significantly less than - - indeed, approximately twelve percent (12%) of - - the amount of the claim that PHONES holders that did not exercise the Exchange Option have against the Debtors.

23. This Court did not, in the Decision, specifically address what "category" or "class" of claim the PHONES holders that exercised the Exchange Option have against the Debtors. The Decision, however, can be construed as making a ruling on this matter. To the extent a ruling was indeed intended to be made by this Court, it is unclear what ruling was in fact

made. As noted above, the Allocation Chart included on page 19 of the Memorandum has certain inconsistencies. On the one hand, the Allocation Chart provides that PHONES that were tendered for exchange are no longer included in the aggregate total number of PHONES outstanding. This would suggest that such holders hold general unsecured "non-PHONES claims" against the Debtors. On the other hand, the Allocation Chart includes in the aggregate "PHONES Claim Amount" the cash amount payable to the holders that exchanged their PHONES. This would suggest the odd conclusion that the holders that exchanged their PHONES hold a form of hybrid "lesser PHONES claim" equal to twelve percent (12%) of the Original PHONES claim but that is otherwise identical to the Original PHONES claim.

24.     If this Court intended to rule with respect to classification of the tendered PHONES claims, notwithstanding that no record existed before the Court for any such determination, the undersigned respectfully asserts that such claims should be general unsecured "non-PHONES" claims against the Debtors. As stated above, under Section 14.02 of the PHONES Indenture, the subordination provisions of the PHONES Indenture only apply to payments to be made to "Holders of the [PHONES]." As set forth in the Decision, the PHONES that were tendered for exchange are no longer "outstanding." If the tendered PHONES are no longer outstanding, then the Tendering Noteholders cannot, by definition, be "holders" of such PHONES. Accordingly, by the clear terms of the PHONES Indenture, the payments to be made with respect to the claims of the Tendering Noteholders are not subject to the subordination provisions of the PHONES Indenture.

25.     Moreover, this Court's Decision would be odd if it were construed as creating a form of hybrid "lesser PHONES Claim" that was identical to the Original PHONES claim in all respects other than that it has a greatly reduced claim amount. Either the PHONES were not

11

exchanged (and the holders thereof retain an Original PHONES Claim that has the same claim amount as the other PHONES holders) or the PHONES were exchanged (and the holders thereof do not have a "PHONES Claim" at all). There is no legal basis or authority for concluding that the holders that exchanged their PHONES for a cash payment should, at the same time, receive a drastically reduced claim amount and also be "lumped" together with the claims of holders that still retain their PHONES claims. At the risk of putting it too simply, it must be one or the other -- either the holders hold PHONES Claims (with all of their characteristics, including full face amount) or they do not.

26.     The Tendering Noteholders seek assurance that the Decision did not determine, and cannot be construed as determining, that the Tendering Noteholders are in the same Plan class for purposes of Section 1122 of the Bankruptcy Code as the PHONES holders that still hold PHONES.  Accordingly, by this Motion, the Tendering Noteholders seek reconsideration and/or clarification of such issue.

## **RESERVATION OF RIGHTS AS TO APPEALABLE ISSUES**

27.     The Tendering Noteholders expressly reserve all rights with respect to (i) to amendment and/or supplement of this Motion and (ii) appeals with respect to the issues raised in the Decision including, without limitation, the determination of the Tendering Noteholders' claim amount.

## **NO PRIOR REQUEST**

28.     No previous request for the relief requested herein has been made to this Court or any other court.

## **NOTICE**

29. Notice of the Motion has been provided to: (a) the Office of the United States Trustee; (b) counsel to the Debtors; (c) counsel to the Creditors Committee; (d) counsel to the administrative agent for the Debtors' postpetition financing facility; and (e) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Tendering Noteholders submit that no other or further notice is necessary.

WHEREFORE, for all of the foregoing reasons, the Tendering Noteholders respectfully request that the Court: (i) either (A) enter a supplemental ruling clarifying that the Decision did not constitute rulings with respect to the MDL or classification of the Tendering Noteholders' claims, or (B) if the Decision did constitute rulings with respect to such matters, reconsider and/or clarify its Decision for the reasons set forth herein; and (ii) grant such other and further relief as is just, proper and equitable.

Dated:  April 23, 2012
        Wilmington, Delaware

ANDREWS KURTH LLP

By: <u>Paul N. Silverstein</u>
Paul N. Silverstein (NYS Bar - PS 5098)
Jeremy B. Reckmeyer (NYS Bar - JR 7536)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone:  (212) 850-2800
Facsimile:  (212) 850-2929

*Counsel to Citadel Equity Fund Ltd.
and Camden Asset Management*