# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x   Chapter 11

In re:      :

     :   Case No. 08-13141 (KJC)

TRIBUNE COMPANY, et al.,      :

     :   Jointly Administered

Debtors.      :

     :   Objections Due: May 16, 2012

     :   @ 4:00 p.m.(ET)

---------------------------------------------------------- x   Hearing Date: N/A

**THIRTY-NINTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 1, 2012 THROUGH MARCH 31, 2012**

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | March 1, 2012 through March 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $473,719.00   (80% of $592,148.75) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $ 28,148.76 |

This is a(n):    _x_ Monthly      ____ Interim      ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/28/2011 | 9840 | 8/1/11 – 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 – 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 – 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 – 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 – 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |
| 2/27/12 | 11023 | 1/1/12 – 1/31/12 | $547,104.00 | $9,615.03 | $437,683.20 | $9,615.03 |
| 3/27/12 | 11240 | 2/1/12 – 2/29/12 | $644,199.25 | $9,936.28 | $515,420.40 | $9,936.28 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application. Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |
| 8 | September 1, 2010 through November 30, 2010 | April 24, 2012 | $1,024,183.85 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### March 1, 2012 through March 31, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner\*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 46.30 | 46,068.50 |
| Richard M. Leder (1998) | Tax | 1962 (NY) | 995 | 3.50 | 3,482.50 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 113.50 | 104,062.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 50.40 | 43,006.25 |
| Marc Alpert (1995) | Corporate | 1987 (NY) | 855 | 15.50 | 13,252.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 96.30 | 71,743.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 81.60 | 59,674.50 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 705 | 6.00 | 4,230.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 42.70 | 29,676.50 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 80.00 | 51,600.00 |
| | | | | | |
| **Associate:** | | | | | |
| Alexandra Nellos | Litigation | 2004 (NY) | 655 | 1.00 | 655.00 |
| Robert Kirby | Litigation | 2008 (NY) | 595 | 0.80 | 476.00 |
| Meghan Towers | Bankruptcy & Financial Restructuring | 2008 (NY) | 595 | 2.30 | 1,368.50 |
| Alison Kronstadt | Corporate | 2009 (NY) | 565 | 1.20 | 678.00 |
| Rachel Kurth Santangelo | Employee Benefits | 2009 (NY) | 565 | 4.00 | 2,260.00 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 7.00 | 3,955.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 6.50 | 3,217.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 131.10 | 63,162.00 |
| Nicholas Scannavino | Corporate | 2010 (NY) | 495 | 33.90 | 16,780.50 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 72.60 | 31,581.00 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 56.10 | 24,403.50 |
|  |  |  |  |  |  |
| **Paraprofessionals:** |  |  |  |  |  |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 31.50 | 9,292.50 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 25.50 | 7,522.50 |
|  |  |  |  |  |  |
| **TOTAL:** |  |  |  | **909.30** | **$592,148.75** |

BLENDED RATE:    $656.57

---

\* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x
In re:

TRIBUNE COMPANY, et al.,

　　　　　　　　Debtors.

-----------------------------------------------------------  x

: Chapter 11
:
: Case No. 08-13141 (KJC)
:
: Jointly Administered
:
: Objections Due: May 16, 2012
: @ 4:00 p.m.(ET)
: Hearing Date:  N/A

## THIRTY-NINTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 1, 2012 THROUGH MARCH 31, 2012

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $592,148.75 (80% of which equals $473,719.00) and reimbursement of expenses incurred in the amount of $28,148.76 during the period commencing March 1, 2012 through and including March 31, 2012 (the "Application Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.    The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.    On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.    The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.    On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.    On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.    On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.     Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011.  The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011.  Closing confirmation arguments were held on June 27, 2011.

9.     On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan.  The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm.  See Section 1129(c).  The Court stated that, given those options, it would select the DCL Plan.

10.     On April 17, 2012, the proponents of the DCL Plan filed their Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Fourth Amended DCL Plan").  A hearing on confirmation of the Fourth Amended DCL Plan is scheduled to begin June 7, 2012.

---

[1]     The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents").  The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the "Noteholder Plan Proponents").

## COMPENSATION PAID AND ITS SOURCES

11.     All services for which compensation is requested by Chadbourne were performed

for or on behalf of the Committee.

12.     During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.     The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2

(the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $592,148.75.  The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and

the total compensation sought for each category.

4

15.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.     Bankruptcy General (Matter 002)**

Fees: $22,026.00          Total Hours:    45.60

16.     During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

5

**B.**   **Committee Meetings (Matter 003)**

Fees: $44,408.50          Total Hours:   68.30

18.     Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

19.     Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.   Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.   Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**   **Creditor Communications (Matter 004)**

Fees: $1,564.50          Total Hours:   2.10

20.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors.

**D.**    **Business Operations (Matter 007)**

      Fees:  $108,891.00        Total Hours:  167.40

      21.     During the Application Period, professionals from Chadbourne's

Communications Media and Technology ("CMT") Group were further engaged in reviewing

and addressing issues with the FCC exit application process.  Chadbourne's CMT attorneys

continued to review, research and comment on the Debtors' revised FCC exit applications as

well as supporting documents and exhibits.  In addition, Chadbourne's CMT attorneys reviewed

and performed research on the FCC's Notice of Proposed Rulemaking in connection with the

newspaper/broadcasting cross-ownership rule and prepared a related response on behalf of the

Committee which was ultimately filed with the FCC.  Chadbourne attorneys also reviewed

issues regarding a contract dispute that arose between the Debtors and DirectTV at the end of

this period and considered the potential impact of that dispute on the FCC exit process.

Throughout this time, Chadbourne participated in various conferences with the Debtors' FCC

counsel and FCC staff regarding various issues in connection with the FCC exit application

process.

      22.     During the Application Period, Chadbourne attorneys continued to review and

monitor issues involving the Debtors' business operations.  Among other matters, Chadbourne's

corporate and tax attorneys reviewed and commented on proposed transaction documents

related to the sale of a Debtor subsidiary.  Chadbourne consulted with the Committee's financial

advisors regarding their economic analysis of the potential sale and prepared a written report to

the Committee setting forth details and recommendations regarding the transaction.  In addition,

7

Chadbourne also continued to review weekly operations and financial reports prepared by the Committee's financial advisors.

**E.    Claims Administration/Bar Date (Matter 009)**

Fees:  $15,473.50          Total Hours:  29.50

23.    During the Application Period, Chadbourne attorneys expended further time in reviewing the Debtors' efforts to settle certain claims brought against the Debtors.  In particular, this work included review and analysis of (i) a proposed settlement agreement with the Maryland Comptroller of the Treasury to address certain tax claims; (ii) a proposed stipulation with Comcast Cable Communications to address certain advertising-related claims; and (iii) a proposed settlement agreement with T-Mobile USA to address certain mobile telephone and telecommunications service claims.  In addition, Chadbourne reviewed the Debtors proposed process for resolving certain advertising claims with intermediary advertising firms and third-party radio and television stations.  Chadbourne attorneys preformed a review of the facts and participated in discussions with Debtors' counsel regarding details of the proposed settlements discussions.  Following consultation with the Committee's financial advisors regarding their analysis of the settlements, Chadbourne summarized its analyses and recommendations in memoranda to the Committee.

**F.    Fee/Retention Applications (Matter 010)**

Fees:  $13,954.00          Total Hours:  33.80

24.    Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparation and

8

filing of Chadbourne's thirty-eighth monthly fee application. In addition, Chadbourne reviewed the Fee Examiner's initial report concerning Chadbourne's ninth interim fee application and began related research to address concerns raised in the report.

25.    During the Application Period, Chadbourne reviewed the legal bases for payment of Committee members' counsel fees under the DCL Plan and participated in discussions with Committee members regarding such fees. In continuance of an ongoing process, Chadbourne also expended time on the treatment of ordinary course professionals. These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

**G.    Avoidance Issues (Matter 013)**

Fees:  $826.00          Total Hours:  1.40

26.    During the Application Period, Chadbourne attorneys continued to review and address various issues in connection with the potential preference actions asserted against current and former Tribune insiders and certain other entities (each a "Preference Action"). Among other things, Chadbourne reviewed and analyzed issues in connection with the Debtors' request that the Committee dismiss a Preference Action against a former employee of Tribune and participated in discussions with various case parties to effectuate same.

**H.    Employee Issues (Matter 014)**

Fees:  $26,289.00       Total Hours:  41.20

27.    During the Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters.

9

Efforts included review and analysis of the terms of severance agreements with two additional departing senior executives of Tribune. In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departures and consulted with the Committee's financial advisors about their analysis of the departure arrangements. Chadbourne summarized its analysis and recommendations in memoranda to the Committee.

28.    During the Application Period, Chadbourne attorneys were engaged in reviewing and analyzing issues raised in the Debtors' proposed Management Incentive Plan for 2012 (the "2012 MIP") and related motion. In connection therewith , Chadbourne participated in discussions with Committee members regarding an appropriate approach to address concerns raised by the 2012 MIP. Further, Chadbourne participated in discussions with the Committee's financial advisors regarding their analysis of the 2012 MIP and preparation of a related presentation of same for the Committee.

I.    **General Litigation (Matter 017)**

Fees:   $1,922.00          Total Hours:   3.20

29.    During the Application Period, individual defendants (the "D&O Defendants") named in the Committee's complaint against shareholders and other third parties in connection with the LBO/ESOP transaction ("*FitzSimons* ") and the Preference Actions submitted their quarterly report to the Committee of fees and costs submitted for payment to the Debtors' D&O liability insurance providers (the "D&O Insurance Providers"). These reports were required by the Court's March 29, 2011 Order modifying the automatic stay to allow the D&O Defendants payment and advancement of defense costs, fees, and expenses by the D&O Insurance

Providers.  Chadbourne reviewed the report and provided a summary analysis to the

Committee.

**J.**   **Travel (Matter 018)**

    Fees:   $4,868.75          Total Hours:   14.50

30.      During the Application Period, Chadbourne travelled to Wilmington, Delaware to

attend hearings at the Bankruptcy Court.  The hours reflect non-working travel time and the

fees requested are at 50% of Chadbourne's normal hourly rates.

**K.**   **Shareholder Claims (Matter 020)**

    Fees:   $29,437.00          Total Hours:   42.80

31.      During the Application Period, Chadbourne attorneys continued to be engaged in

reviewing and responding to developments in the multidistrict litigation which consolidated and

transferred the state law constructive fraudulent conveyance lawsuits filed by the Retirees[2] and

the Noteholders[3] to the Southern District of New York (*In re Tribune Company Fraudulent

Conveyance Litigation*), Master Case No. 12-2296 (S.D.N.Y) (the "MDL Actions").

32.      Chadbourne attorneys continued to review and address related pending issues in

connection with the *FitzSimons* action.  Chadbourne participated in discussions with the

---

[2]   The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110
affiliates or subsidiaries of Tribune Company.

[3]   The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor
indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity
as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity
as successor indenture trustee for the PHONES Notes.

Committee's co-counsel regarding other parties' positions on establishing an appropriate threshold amount below which claims might be dismissed.  Chadbourne and the Committee's co-counsel continued preparation of a related motion. .

33.    During the Application Period, Chadbourne attorneys reviewed strategies with the Committee's co-counsel to determine next steps with regard to various Committee complaints. Ultimately, the Committee prepared and filed a motion seeking to sever certain advisor claims from the main Committee complaint so that they can be transferred to the MDL Court and remain on the same timeline as the litigation of the other LBO-related causes of action – including the *FitzSimons* action.  On March 22, 2012, the Bankruptcy Court granted the Committee' motion.

L.    **Plan Litigation (Matter 021)**

Fees:  $322,488.50          Total Hours:  459.50

34.    During the Application Period, Chadbourne's bankruptcy and litigation professionals continued to be significantly engaged, on behalf of the Committee, in efforts to move the Debtors' Chapter 11 cases toward plan confirmation as expeditiously as possible.

35.    During the Application Period, Chadbourne attorneys expended time preparing for the hearing on the allocation disputes.  Efforts included the research, preparation and filing of a responsive brief in further support of the Committee's position on the allocation disputes. Chadbourne, on behalf of the Committee, also prepared and filed a joinder to the Debtors' responsive brief.  Further, Chadbourne reviewed and summarized for the Committee the various reply briefs and related joinders which were submitted by various interested parties.

Chadbourne's litigation attorneys participated in discussions with the parties to discuss hearing

protocols including coordination of exhibits to be used by the parties and expert issues.

36.    Chadbourne participated in the two-day hearing on allocation disputes where

various issues were presented to the Court. Chadbourne presented argument on behalf of the

Committee with respect to the unfair discrimination issue -- whether distributions under the

DCL Plan discriminate unfairly against the Senior Noteholders. Certain of the Noteholders

presented their arguments on the issue. Consistent with the Court's instructions at the

conclusion of the hearing, Chadbourne prepared and filed a rebuttal letter responding to certain

issues raised during oral argument.   In addition, Chadbourne prepared an analysis of the

allocation disputes as well a confirmation process timeline for discussion with the Committee.

37.    Throughout this period, Chadbourne attorneys continued to review and comment

on various iterations of the modified third amended DCL Plan and various supporting

documents including the supplemental disclosure document and its exhibits, the summary of

2012 valuation update, and the reply and second supplement to the resolicitation motion.

Particular time was devoted to review and research to address issues raised in the Noteholders'

objection to the supplemental disclosure document. Chadbourne participated in discussions

with the DCL Plan Proponents to address issues raised in the objection and amendments to the

DCL Plan to resolve those issues.   Chadbourne prepared a detailed report for the Committee

setting forth an analysis of the objection and a proposal to amend the DCL Plan. During this

time, Chadbourne worked with the DCL Plan proponents on preparation of a response to the

Noteholders' objection.   Following the filing of the modified third amended DCL Plan and

supporting documents, Chadbourne participated in two status conferences held during the

13

Application Period in which the Court addressed confirmation scheduling. Ultimately, the confirmation hearing was rescheduled to begin on June 7, 2012.

## ACTUAL AND NECESSARY EXPENSES

38.    A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $28,148.76 is attached hereto as Exhibit B. Chadbourne's standard charge for photocopies is $0.20/per page. For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions. For purposes of these cases, the firm has reduced this charge to $1.00/per page.

39.    Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required. In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers. Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

40.    With respect to outside copy services, Chadbourne utilized the services of an outside vendor (Perfect Imaging & Document Management) for copying of various relevant documents in preparation for the two-day hearing on allocation disputes. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

14

41.     Because of the numerous documents that continue to be shared with the Committee and analyzed by Chadbourne and other Committee professionals, it is necessary to maintain the Intralinks workspace.  The amount requested for reimbursement reflects a six-month extension fee.   Again, Chadbourne believes that Intralinks is an invaluable tool that allows the Committee members to easily access all background information in these Chapter 11 cases and allows Chadbourne to carefully control access to that data when conflicts or other issues arise.  In seeking reimbursement for this service, Chadbourne requests reimbursement for the actual costs incurred.

42.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

43.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

44.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

15

## VALUATION OF SERVICES

45.     Attorneys and paraprofessionals of Chadbourne have expended a total of 909.30 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $592,148.75

46.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

47.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period March 1, 2012 through March 31, 2012: (a) authorizing compensation in the amount of $592,148.75 (80% of which equals $473,719.00) for professional services rendered), and reimbursement of expenses incurred in connection therewith in the amount of $28,148.76 for a total of $620,297.51; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:    April 26, 2012
          New York, New York

                              CHADBOURNE & PARKE LLP

                              By: _____
                                  Douglas E. Deutsch
                                  (A Member of the Firm)

                              Chadbourne & Parke LLP
                              30 Rockefeller Plaza
                              New York, New York  10112
                              (212) 408-5100

                              Co-Counsel to The Official Committee of
                              Unsecured Tribune Company, et al.

17

## VERIFICATION

STATE OF NEW YORK       :
                        : ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)     I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been

admitted to the bar of the State of New York since 1997.

(b)     I am familiar with the work performed on behalf of the Committee by the lawyers

in the firm.

(c)     I have reviewed the foregoing Application and the facts set forth therein are true

and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed

Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
26th day of April 2012

David M. Bava
Notary Public, State of New York
No. 01-6175197
Qualified in New York County
Commission Expires October 9, 2015

CPAM: 4602783.2