IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
In re:                              :        Chapter 11 Cases
                                    :        Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,            :        (Jointly Administered)
                                    :
                      Debtors.      :
                                    :
------------------------------------------------x
```

### DECLARATION OF MATTHEW B. STEIN IN SUPPORT OF OPPOSITION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERICAS TO WILMINGTON TRUST COMPANY'S MOTION FOR LEAVE TO APPEAL BANKRUPTCY COURT'S DECISION ON ALLOCATION DISPUTES

MATTHEW B. STEIN, hereby declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of his knowledge, information and belief:

1.      I am an associate in the law firm of Kasowitz, Benson, Torres & Friedman LLP, counsel for Law Debenture Trust Company of New York in the above-referenced bankruptcy case. I make this declaration to present the Court with the attached documents in connection with the *Opposition of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas To Wilmington Trust Company's Motion For Leave To Appeal Bankruptcy Court's Decision On Allocation Disputes*, filed contemporaneously herewith.

2.      Attached hereto as Exhibit A is a copy of the *DCL Plan Proponents Objection to Motion of Wilmington Trust Company for Leave to Appeal Bankruptcy Courts Decision on Subordination*, dated January 24, 2012 [Dkt. No. 10690].

3.      Attached hereto as Exhibit B is a copy of *Objection of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas to Wilmington Trust Companys Motion for Leave to Appeal Bankruptcy Courts Decision on Subordination*, dated January 24, 2012 [Dkt. No.

10702].

    4.      Attached hereto as Exhibit C is a copy of *Joinder of Aurelius Capital Management, LP to Opposition of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas to Wilmington Trust Companys Motion for Leave to Appeal Bankruptcy Courts Decision on Subordination*, dated January 24, 2012 [Dkt. No. 10703].

    I declare that the following is true and correct to the best of my knowledge, information, and belief.

Dated:  New York, New York
         May 7, 2012

                         MATTHEW B. STEIN

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al.,[1] | Jointly Administered |
| Debtors. | |

## DCL PLAN PROPONENTS' OBJECTION TO MOTION OF WILMINGTON TRUST COMPANY FOR LEAVE TO APPEAL BANKRUPTCY COURT'S DECISION ON SUBORDINATION

| | |
|---|---|
| SIDLEY AUSTIN LLP | COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A. |
| James F. Conlan | Norman L. Pernick (No. 2290) |
| Bryan Krakauer | J. Kate Stickles (No. 2917) |
| Kevin T. Lantry | Patrick J. Reilley (No. 4451) |
| Jessica C.K. Boelter | 500 Delaware Avenue, Suite 1410 |
| One South Dearborn Street | Wilmington, Delaware 19801 |
| Chicago, Illinois 60603 | Telecopier: (302) 652-3117 |
| Telecopier: (312) 853-7036 | |

*Counsel for Debtors and Debtors in Possession and Certain Non-Debtor Affiliates*

| | | |
|---|---|---|
| CHADBOURNE & PARKE LLP | LANDIS RATH & COBB LLP | ZUCKERMAN SPAEDER LLP |
| Howard Seife | Adam G. Landis (No. 3407) | Graeme W. Bush |
| David M. LeMay | 919 Market Street, Suite 1800 | James Sottile |
| 30 Rockefeller Plaza | Wilmington, Delaware 19801 | 1800 M Street, N.W., Suite 1000 |
| New York, New York 10112 | Telecopier: (302) 467-4450 | Washington, D.C. 20036 |
| Telecopier: (212) 541-5369 | | Telecopier: (202) 822-8106 |

*Counsel for the Official Committee of Unsecured Creditors*

| | |
|---|---|
| DEWEY & LEBOEUF LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Bruce Bennett | Robert S. Brady (No. 2847) |
| James O. Johnston | M. Blake Cleary (No. 3614) |
| Joshua M. Mester | The Brandywine Building – 17th Floor |
| 333 South Grand Avenue, Suite 2600 | 1000 West Street, Post Office Box 391 |
| Los Angeles, California 90071 | Wilmington, Delaware 19899 0391 |
| Telecopier: (213) 621-6100 | Telecopier: (302) 571-1253 |

*Counsel for Oaktree Capital Management, L.P. and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE & DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier: (212) 230-8888

*Co-Counsel for Angelo, Gordon & Co, L.P.*

| | |
|---|---|
| DAVIS POLK & WARDWELL LLP | RICHARDS LAYTON & FINGER, P.A. |
| Donald S. Bernstein | Mark D. Collins (No. 2981) |
| Damian S. Schaible | One Rodney Square |
| 450 Lexington Avenue | 920 North King Street |
| New York, New York 10017 | Wilmington, Delaware 19801 |
| Telecopier: (212) 701-5800 | Telecopier: (302) 651-7701 |

*Counsel for JPMorgan Chase Bank, N.A.*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the next page.

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF RELEVANT FACTS..............................................................3

    A.    The Bankruptcy Court's Confirmation Decision.......................................3

    B.    The Third Amended DCL Plan And Its Proposed Allocation Dispute Protocol .....4

    C.    The Motions For Reconsideration .........................................................5

    D.    The Bankruptcy Court's Ruling On The Reconsideration Motions ....................6

    E.    Subsequent Developments....................................................................7

I.    WTC Has No Standing To Appeal The Confirmation and Reconsideration Orders..7

II.    The Confirmation And Reconsideration Orders Are Not Appealable As A Matter Of Right.....................................................................................................8

    A.    The Orders Are Not "Final" Within The Meaning Of Section 158(a)(1)...............8

    B.    The Orders Are Not "Final" By Virtue Of The Collateral Order Doctrine ..........11

III.    WTC Has Not Satisfied The Criteria For A Discretionary Appeal ...........................12

    A.    The Orders Involve No Controlling Questions Of Law.........................................13

    B.    There Is No Substantial Ground For Difference Of Opinion On The Allegedly Controlling Questions of Law..................................................................14

    C.    An Immediate Appeal Will Not Materially Advance The Litigation ....................17

CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ahrenholz v. Board of Trustees of University of Illinois,
219 F.3d 674 (7th Cir. 2000) ................................................................................13, 17

Aristocrat Leisure Limited v. Deutsche Bank Trust Company,
426 F. Supp. 2d 125 (S.D.N.Y. 2005).................................................................13

Bumgarner v. Blue Cross and Blue Shield of Kansas, Inc.,
716 F. Supp. 493 (D. Kan. 1988).........................................................................15

Catskill Dev. L.L.C. v. Park Place Entm't Corp.,
206 F.R.D. 78 (S.D.N.Y. 2002) .............................................................................13

Chase Bank USA, N.A. v Hess,
2011 WL 4459604 (D. Del. 2011) ........................................................................13

EEOC v. Hora, Inc.,
2005 U.S. Dist. LEXIS 14855 (E.D. Pa. 2005) .................................................13

First American Bank of New York v. Country Glove,
64 B.R. 958 (D. Del. 1986) ...................................................................................15

First American Corp. v. Al-Nahyan,
948 F. Supp. 1107 (D.D.C. 1996).........................................................................15

Hartsell v Source Media Inc.,
1999 WL 629645 (N.D. Tex. 1999).......................................................................15

Hurst v. City of Dover,
2006 U.S. Dist. LEXIS 57029 (D. Del. 2006).....................................................13

In re Advanced Marketing Services, Inc.,
2008 U.S. Dist. LEXIS 27582 (D. Del. 2008) ...............................................13, 15

In re AE Liquidation, Inc.,
451 B.R. 343 (D. Del. 2011) .................................................................................12

In re Armstrong World Industries,
432 F.3d 507 (3d Cir. 2005) ...............................................................................2, 9

In re Combustion Engineering, Inc.,
391 F.3d 190 (3d Cir. 2004) ..................................................................................8

i

In re Dardashti,
    2008 Bankr. LEXIS 4678 (B.A.P. 9th Cir. Feb. 12, 2008) ......................................6

In re Delaware & Hudson Ry. Co.,
    96 B.R. 469 (D. Del. 1989), aff'd, 884 F.2d 1383 (3d Cir. 1989) ..........................13

In re Edison Bros. Stores, Inc.,
    1996 WL 363806 (D. Del. 1996) ...........................................................................17

In re Flor,
    79 F.3d 281 (2d Cir. 1996) ...............................................................................8, 15

In re Genesis Health Ventures, Inc.,
    2007 U.S. Dist. LEXIS 47346 (D. Del. 2007) .........................................................13

In re Gray,
    447 B.R. 524 (E.D. Mich. 2011)............................................................................13

In re Kahihikolo,
    807 F.2d 1540 (11th Cir. 1987) ............................................................................6

In re Lievsay,
    118 F.3d 661 (9th Cir. 1997) ................................................................................8

In re Magic Restaurants, Inc.,
    202 B.R. 24 (D. Del. 1996) .................................................................................15

In re Mushroom Direct Purchaser Antitrust Litigation,
    655 F.3d 158 (3d Cir. 2011) ...............................................................................12

In re O'Brien,
    184 F.3d 140 (2d Cir. 1999) ................................................................................7

In re Schering-Plough Corp.,
    2010 WL 2546054 (D. N.J. 2010) ........................................................................15

In re SemCrude, L.P.,
    407 B.R. 553 (D. Del. 2009).................................................................................13

In re Shkolnikov,
    470 F.3d 22 (1st Cir. 2006) ................................................................................7

In re Tribune Co.,
    2011 Bankr. LEXIS 4128 (Bankr. D. Del. Oct. 31, 2011) ...............................I, 4, 5

In re Tribune Co.,
    2011 Bankr. LEXIS 5018 (Bankr. D. Del. Dec. 29, 2011) ....................1, 5, 6, 7, 16

In re Vitamins Antitrust Litigation,
    2000 WL 673936 (D.D.C. 2000) ........................................................................16

In re W.R. Grace & Co.,
    2007 U.S. Dist. LEXIS 21586 (D. Del. 2007) ........................................................15

In re Washington Mutual, Inc.,
    2011 WL 4090757 (Bankr. D. Del. Sept. 13, 2011) ..........................................6, 11

In re Washington Mutual, Inc.,
    Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9251 (filed Dec. 23, 2011) ............9

In re Washington Mutual, Inc.,
    Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9397 (filed Jan. 11, 2012) ..........11

In re Zahn,
    526 F.3d 1140 (8th Cir. 2008) ..........................................................................8

In re: Montgomery Ward & Co., Inc.,
    2006 U.S. Dist. LEXIS 75788 (D. Del. 2006) ........................................................13

IPSCO Steel (Ala.) Inc. v. Blaine Construction Corp.,
    371 F.3d 150 (3d Cir. 2004) ..........................................................................8

Johnson v. Washington Area Transit Authority,
    790 F. Supp. 1174 (D.D.C. 1991) ....................................................................15

Manitowoc Marine Group LLC v. Ameron International Corp.,
    2006 U.S. Dist. LEXIS 61678 (E. D. Wis. 2006) ....................................................17

McFarlin v. Conseco Services, LLC,
    381 F.3d 1251 (11th Cir. 2004) ................................................................13, 17

Mohawk Industries, Inc. v. Carpenter,
    ___ U.S. ___, 130 S.Ct. 599 (2009) ..........................................................11, 12

Nixon v. Fitzgerald,
    457 U.S. 731 (1982) ....................................................................................12

Passalacqua Builders, Inc. v. Resnick Developers South Inc.,
    611 F. Supp. 281 (S.D.N.Y. 1985) ....................................................................17

Schnelling v. KPMG,
    2006 WL 1540815 (D. N.J. 2006) ....................................................................15

Simmons v. Akanno,
    2011 U.S. Dist. LEXIS 46658 (E.D. Cal. 2011) ....................................................16

iii

The Clark Construction Group, Inc. v. Allglass Systems, Inc.,
    2005 U.S. Dist. LEXIS 5278 (D. Md. 2005) ..............................................................................13

WCI Steel Inc. v. Wilmington Trust Co.,
    338 B.R. 1 (N.D. Ohio 2005) ..............................................................................9, 11

STATUTES

28 U.S.C. § 158(a)(1)..............................................................................2, 6, 8

28 U.S.C. § 158(a)(3)..............................................................................3, 12

28 U.S.C. § 1291..............................................................................9

28 U.S.C. § 1292(b) ..............................................................................12

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPMorgan", and together with the Debtors, the Creditors' Committee, Oaktree, and Angelo Gordon, the "DCL Plan Proponents") submit this objection (the "Objection") to the Motion for Leave to Appeal Bankruptcy Court's Decision on Subordination filed by Wilmington Trust Company [Docket No. 10582] (the "Motion"). For the reasons set forth below, the DCL Plan Proponents respectfully submit that the Motion should be denied.

## PRELIMINARY STATEMENT

Wilmington Trust Company ("WTC"), as successor indenture trustee under the PHONES Notes Indenture,[2] requested and obtained an order from the Bankruptcy Court denying confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Second Amended DCL Plan"). See In re Tribune Co., 2011 Bankr. LEXIS 4128 at *216 (Bankr. D. Del. Oct. 31, 2011) ("Confirmation Decision"). Although the Bankruptcy Court later issued a decision reconsidering a portion of the Confirmation Decision involving an interpretation of the PHONES Notes Indenture, the Bankruptcy Court's order granting reconsideration merely struck the relevant portion of the Confirmation Decision while leaving in place the order denying confirmation of the Second Amended DCL Plan. See In re Tribune Co.,

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10273] (the "Third Amended DCL Plan").

2011 Bankr. LEXIS 5018 at *41-*44 (Bankr. D. Del. Dec. 29, 2011) ("Reconsideration Decision"). In other words, WTC prevailed below. As a consequence, WTC has no right or authority to pursue an appeal of the Bankruptcy Court's order granting the very relief it requested.

As an initial matter, WTC lacks standing to appeal the Confirmation Decision because WTC has not been injured, adversely affected, or aggrieved by it. To the contrary, WTC and the other opponents of the Second Amended DCL Plan *prevailed* because the Bankruptcy Court denied confirmation thereof. Similarly, WTC lacks standing to appeal the Reconsideration Decision because WTC will not be injured, adversely affected, or aggrieved by it unless and until the Bankruptcy Court confirms a plan actually embodying the interpretation of the PHONES Notes Indenture that WTC seeks to address on appeal.

Moreover, even if WTC theoretically had standing, the orders at issue are not "final" within the meaning of 28 U.S.C. § 158(a)(1). The Bankruptcy Court *denied* confirmation of the Second Amended DCL Plan and has not yet considered, much less confirmed, the Third Amended DCL Plan recently proposed by the DCL Plan Proponents. WTC's reliance on In re Armstrong World Industries, 432 F.3d 507, 511 (3d Cir. 2005), is unavailing. Unlike in Armstrong, the issues that WTC seeks to raise on appeal are not central to the DCL Plan (neither the Second Amended nor the Third Amended version) or the bankruptcy proceedings in general. Indeed, as part of the proceedings in connection with confirmation of the Third Amended DCL Plan, the Bankruptcy Court has set for hearing – but not yet heard or decided – certain "Allocation Disputes" that involve questions of contract interpretation that raise *nearly identical issues* to the question of contract interpretation that WTC wants to appeal separately now – including questions involving interpretation of the very same passages of the PHONES Notes Indenture raised by WTC in its appeal. Consequently, considerations of judicial economy

2

counsel strongly in favor of adhering to the normal appellate process with a single appeal upon

an order actually confirming a plan of reorganization, so that all of the related contract

interpretation questions and other issues can be decided in a coordinated and consistent fashion,

rather than allowing a multiplicity of disjointed appeals.[3]

Finally, WTC has not come even close to establishing that it should be permitted to

pursue a discretionary appeal under 28 U.S.C. § 158(a)(3). The two questions WTC seeks to

present to this Court do not involve controlling "questions of law" – to the contrary, they involve

the "application of settled law to fact." In addition, WTC has identified no "substantial grounds

for difference of opinion" on those questions because it has not shown that the decisions of lower

courts in this Circuit are either split on the issues or are so confused and in such disarray that the

governing legal standard cannot be ascertained. Nor has WTC shown that allowing an

immediate appeal would "materially advance the ultimate termination of the litigation." Indeed,

because the DCL Plan Proponents have filed a Third Amended DCL Plan for which the

Bankruptcy Court has scheduled a confirmation hearing in mid-May 2012, allowing an

immediate appeal is likely to delay rather than speed up the ultimate resolution of the bankruptcy

cases and thereby delay the ability of the Debtors to exit bankruptcy.

## STATEMENT OF RELEVANT FACTS

A.    The Bankruptcy Court's Confirmation Decision

The Bankruptcy Court issued its Confirmation Decision on October 31, 2011. In it, the

Bankruptcy Court denied confirmation not only of the Second Amended DCL Plan but also of a

competing plan ("Noteholder Plan") that had been proposed by WTC, Aurelius Capital

---

[3] WTC's unsupported back-up argument relating to its alleged right to appeal based on the collateral order doctrine is also meritless. As explained below, the doctrine does not apply for a host of reasons, including WTC's failure to demonstrate that the standard finality rule would imperil a substantive public interest or some particular value of a high order.

Management, L.P. ("<u>Aurelius</u>"), Deutsche Bank Trust Company Americas ("<u>Deutsche Bank</u>"),

and Law Debenture Trust Company of New York ("<u>Law Debenture</u>", and with Deutsche Bank,

the "Senior Notes Indenture Trustees") (collectively "<u>Noteholder Plan Proponents</u>").  <u>See</u>

<u>Confirmation Decision</u>, 2011 Bankr. LEXIS 4128 at *41-*44.

      The Second Amended DCL Plan was based on proposed settlements of certain potential

causes of action against Senior Lenders and Bridge Lenders arising out of the 2007 leveraged

buy-out of Tribune (the "<u>Leveraged ESOP Transactions</u>") pursuant to which Tribune borrowed

money and bought out its existing shareholders.  <u>Confirmation Decision</u>, 2011 Bankr. LEXIS

4128 at *33.  Over the objection of WTC and the other Noteholder Plan Proponents, the

Bankruptcy Court determined that the proposed settlements were negotiated in good faith and

were reasonable.  <u>Id</u>. at *69-*120.  The Bankruptcy Court also rejected the vast majority of other

challenges lodged against the Second Amended DCL Plan by the Noteholder Plan Proponents

and others.  <u>Id</u>. at *120-*196.  The Bankruptcy Court, however, identified a number of discrete

issues that precluded confirmation of the Second Amended DCL Plan as then drafted.  <u>See id</u>.

      Recognizing that the parties might try to amend their respective plans in order to bring

them into conformance with the Confirmation Decision, the Bankruptcy Court compared the

relative merits of the two plans and concluded that, if the DCL Plan was amended to address the

issues identified in the Confirmation Decision, the Court would favor the DCL Plan.

<u>Confirmation Decision</u>, 2011 Bankr. LEXIS 4128 at *211-*216.  At the end of its opinion, the

Bankruptcy Court stressed that "the Court is of the determined view that the Debtors must

promptly find an exit door to this chapter 11 proceeding."  <u>Id.</u> at *216.

      B.    <u>The Third Amended DCL Plan And Its Proposed Allocation Dispute Protocol</u>

      In keeping with that admonition, the DCL Plan Proponents filed the Third Amended DCL

Plan on November 18, 2011, along with a Supplemental Disclosure Document and Procedures

4

Motion relating to the plan and a Status Report.[4] In the Status Report, the DCL Plan Proponents

explained that they had amended the Second Amended DCL Plan to conform to the

Confirmation Decision. Status Report at 4. Among other things, the DCL Plan Proponents

explained that the Confirmation Decision had given rise to certain "Allocation Disputes"

concerning the allocation of Tribune's assets among certain creditor classes under the DCL Plan,

including disputes related to the interpretation of the PHONES Notes subordination provisions

and a number of other matters. Id. at 6-8. To allow for the expeditious resolution of these

issues, the Third Amended DCL Plan contained an Allocation Dispute Protocol designed to

allow for briefing and decision on the Allocation Disputes under a schedule that would not delay

the approval of a disclosure statement and voting procedures for, and the holding of a

confirmation hearing on, the Third Amended DCL Plan. Id.

      C.     The Motions For Reconsideration

      The Noteholder Plan Proponents chose not to file an amended plan in response to the

Confirmation Decision. Instead, they filed a motion for reconsideration and clarification of the

Bankruptcy Court's opinion. See Reconsideration Decision, 2011 Bankr. LEXIS 5018 at *3-*5.

In addition, the Noteholder Plan Proponents other than WTC, acting as representatives of Senior

Noteholders who purportedly benefited from subordination of the PHONES Notes, filed separate

motions seeking reconsideration of the Bankruptcy Court's ruling that the PHONES Indenture

---

[4] See Supplemental Disclosure Document Relating to Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10275]; Motion for an Order (I) Approving the Supplemental Disclosure Document; (II) Establishing Scope, Forms, Procedures, and Deadlines for Resolicitation of Votes to Accept or Reject the DCL Plan from Certain Classes; (III) Authorizing Tabulation of Prior Votes and Elections on DCL Plan Made by Holders of Claims in Non-Resolicited Classes; (IV) Scheduling the Confirmation Hearing and Establishing Notice and Objection Procedures in Respect Thereof; and (V) Granting Related Relief [Docket No. 10274]; and Status Report in Connection with the Filing of the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 10272] (the "Status Report").

subordination provisions did not apply to future recoveries by a proposed Litigation Trust to be

established under the Second Amended DCL Plan on account of fraudulent transfer claims. Id.[5]

    D.    <u>The Bankruptcy Court's Ruling On The Reconsideration Motions</u>

On December 29, the Bankruptcy Court issued a decision and order with respect to the

motions for reconsideration and clarification. <u>Reconsideration Decision</u>, 2011 Bankr. LEXIS

5018 at *41-*44. Pertinent to WTC's pending Motion, the Bankruptcy Court granted the

reconsideration motions regarding the applicability of the PHONES Notes subordination

provisions to future Litigation Trust recoveries.

Specifically, the Bankruptcy Court found that the PHONES Notes in fact *are*

subordinated with respect to such recoveries. The Bankruptcy Court concluded that

reconsideration of its prior decision to the contrary was appropriate for two main reasons: (1) the

Court had misapprehended the position of some parties on the issue in rendering its decision and

(2) the Court had decided the issue without considering all relevant aspects of the PHONES

Notes Indenture, as required by governing state law principles of contract interpretation. Id. at

*13-*14. On the merits, the Court held that the overlooked provisions of the PHONES Notes

Indenture, as well as the context and purpose of the Indenture as a whole, clearly evidenced an

intention that the Indenture's subordination provisions would apply to recoveries obtained in

respect of bankruptcy avoidance actions, including those to be pursued by the DCL Plan

Litigation Trust if and when the DCL Plan was amended and ultimately confirmed. Id. at *14-

---

[5] On November 14, 2011, the Noteholder Plan Proponents also filed a notice of appeal from the Confirmation Decision. The notice of appeal alleged that the decision was a "final" decision for purposes of 28 U.S.C. § 158(a)(1) and thus appealable as a matter of right. In connection with the scheduling of further proceedings, the DCL Plan Proponents contended that the order was not "final" and that, even if it were, the filing of it, in the absence of a stay, did not divest the Bankruptcy Court of jurisdiction to enforce its order by confirming a plan of reorganization based on the legal rulings contained therein. See, e.g., In re Kahihikolo, 807 F.2d 1540, 1542-43 (11th Cir. 1987); In re Dardashti, 2008 Bankr. LEXIS 4678 at *6 (B.A.P. 9th Cir. Feb. 12, 2008); In re Washington Mutual, Inc., 2011 WL 4090757 at *8 (Bankr. D. Del. Sept. 13, 2011). On January 20, 2012, the Noteholder Plan Proponents filed a motion for voluntary dismissal of their appeal without prejudice to their right to file an appeal following entry of a final order confirming a plan [Docket No. 10663].

*31. To effectuate that decision, the Bankruptcy Court issued an order granting the pertinent reconsideration motions and amending the Confirmation Decision to delete the section entitled "Subordination Determination." Id. at *41-*44. Notably, the Bankruptcy Court was not asked to and did not change the ultimate result of the Confirmation Decision – denial of confirmation of the Second Amended DCL Plan.

       E.      <u>Subsequent Developments</u>

       After briefing and argument, the Bankruptcy Court scheduled hearings on the Allocation Disputes for March 5 and 6, 2012, and scheduled hearings on confirmation of the Third Amended DCL Plan for May 16 and 17, 2012. During arguments regarding scheduling, WTC warned that it "need[ed] to see how [WTC's] appeal proceeds" in the District Court in order to take a position on whether the notice of appeal divested the Bankruptcy Court of jurisdiction or otherwise impacted its power to go forward as scheduled. January 11, 2012 Transcript at 50-51. The DCL Plan Proponents strongly disagree with any assertion that WTC's baseless notice of appeal has any effect whatsoever on the Bankruptcy Court's jurisdiction with respect to the upcoming confirmation proceedings. <u>See</u> <u>id</u>. at 33-34.

<b>ARGUMENT</b>

I.      <u><b>WTC Has No Standing To Appeal The Confirmation and Reconsideration Orders</b></u>

       WTC is not entitled to appeal from the Confirmation Decision or the Reconsideration Decision as a matter of right or discretion because it lacks standing to appeal under Article III of the Constitution and under the Bankruptcy Code. Having succeeded in convincing the Bankruptcy Court to deny confirmation of the Second Amended DCL Plan, WTC simply is not injured, adversely affected, or aggrieved by the Confirmation Decision implementing its victory. <u>In re Shkolnikov</u>, 470 F.3d 22, 24 (1st Cir. 2006) ("It is an abecedarian rule that a party cannot prosecute an appeal from a judgment in its favor"); <u>In re O'Brien</u>, 184 F.3d 140, 142 (2d Cir.

7

1999) ("'a winner cannot appeal'") (quoting Abbs v Sullivan, 963 F.3d 918, 924 (7th Cir. 1992).

See also In re Combustion Engineering, Inc., 391 F.3d 190, 215 (3d Cir. 2004); IPSCO Steel

(Ala.) Inc. v. Blaine Construction Corp., 371 F.3d 150, 153-54 (3d Cir. 2004).

WTC also is not injured, adversely affected or aggrieved by the Reconsideration

Decision, which did nothing more than strike the "Subordination Determination" section from

the Confirmation Decision while leaving in place the order denying confirmation of the Second

Amended DCL Plan. WTC's appeal of the Reconsideration Decision is nothing more than an

appeal of the reconstituted Confirmation Decision, which *granted* the relief that WTC sought

below. As such, WTC cannot possibly be injured, adversely affected or aggrieved unless and

until the Bankruptcy Court enters an order confirming the Third Amended DCL Plan or some

other plan which applies the PHONES Notes Indenture subordination provisions in the manner

contemplated by the Reconsideration Decision to the economic detriment of the PHONES Notes

represented by WTC.

II.    **The Confirmation And Reconsideration Orders Are Not Appealable As A Matter Of Right**

A.    The Orders Are Not "Final" Within The Meaning Of Section 158(a)(1)

Even if WTC had standing, it cannot pursue this appeal because the Confirmation

Decision, as amended by the Reconsideration Decision, is not a final, appealable order. 28

U.S.C. § 158(a)(1) authorizes an appeal as a matter of right from "final" bankruptcy court orders,

judgments, and decrees. Most courts hold that an order denying confirmation is not "final"

within the meaning of the statute because such an order does not terminate the case in which it is

issued.[6] Indeed, counsel for WTC (Brown Rudnick LLP) recently conceded in papers filed in

---

[6] See In re Zahn, 526 F.3d 1140, 1143-44 (8th Cir. 2008) ("Under Eighth Circuit law, which is consistent with the views of other circuits, an order denying confirmation of a plan, which does not dismiss the case, is not a final order and cannot be appealed"); In re Lievsay, 118 F.3d 661, 662 (9th Cir. 1997) ("We hold that a bankruptcy court's decision denying confirmation of a Chapter 11 plan is interlocutory"); In re Flor, 79 F.3d 281, 283 (2d Cir. 1996)

8

the Washington Mutual case pending in this District before Bankruptcy Judge Walrath that "[a]n Order denying confirmation is not a final Order."[7]

WTC's contrary argument here (made by the same counsel) rests solely on a citation to the Third Circuit's decision in In re Armstrong World Industries, 432 F.3d 507 (3d Cir. 2005). There, the bankruptcy court approved a plan over objections that the plan violated the absolute priority rule. On appeal, the district court reversed and entered an order denying confirmation. The plan proponents then sought to appeal the district court decision to the Third Circuit, which held that, in the circumstances presented, the district court's order was "final" for purposes of 28 U.S.C. § 1291. Id. at 511. In doing so, the court pointed out that the question presented was "central" to the progress of the bankruptcy. Id. The court also noted that the potential application of the absolute priority rule presented "a discrete question of law that would have a preclusive effect on certain provisions of the Plan." In addition, the court further determined that "practical considerations in the interests of judicial economy require[d]" an immediate appeal. Id.

None of the considerations cited by the court in Armstrong is present here. First, the manner in which the PHONES Notes Indenture subordination provisions apply to Litigation Trust fraudulent transfer action recoveries is *not central* to the progress of these bankruptcy cases. Indeed, it is not necessary for the Bankruptcy Court to determine this issue in connection with confirmation of the DCL Plan. A determination of the issue may be left for such time as the

---

(an order denying confirmation of Debtors' proposed plan under Chapter 11 "is not a final decision unless it necessarily resolves all of the issues pertaining to a discrete claim" by "dismiss[ing] the petition or convert[ing] Debtors' petition to a Chapter 7 petition"); WCI Steel Inc. v. Wilmington Trust Co., 338 B.R. 1, 14 (N.D. Ohio 2005) ("where a bankruptcy court denies or withholds confirmation of a reorganization plan, without also dismissing the entire proceedings, the order is not final for purposes of appeal").

[7] See Motion of the Consortium of Trust Preferred Security Holders for Stay of Confirmation Proceedings Pending Appeal, In re Washington Mutual, Inc., Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9251 (filed Dec. 23, 2011) at 13 ("TPS Consortium Motion for Stay of Confirmation Proceedings") (citing many of the cases cited in note 6 above).

Litigation Trust makes distributions. Accordingly, the issue has significance only after the Third Amended DCL Plan is confirmed by the Bankruptcy Court.

Second, the appellate court's decision *would not have a preclusive effect* on any provision of the DCL Plan. The Third Amended DCL Plan expressly provides that the relevant distributions are subject to resolution of the Allocation Disputes. Consequently, if the appeal were allowed to proceed, the appellate court's decision one way or the other would not require any modification to the Third Amended DCL Plan. Accordingly, the present appeal should be deferred until a final disposition.

Third, considerations of *sound judicial administration counsel strongly against allowing an immediate, piecemeal appeal.* As noted above, proceedings in the Bankruptcy Court are on a fast track with hearings on the Allocation Disputes currently scheduled for March 5 and 6 and on confirmation of the Third Amended DCL Plan for May 16 and 17. Moreover, several of the remaining Allocation Disputes are nearly identical to the question of contract interpretation which WTC asks this Court to decide separately now.[8] Given the close relationship between the issue WTC wants to appeal now and those that will shortly be decided by the Bankruptcy Court, judicial economy is best served by adhering to normal appellate procedure so that all of those closely related subordination issues can be considered together and resolved in a coordinated and consistent fashion.

Finally, and significantly, twisting the law to allow the immediate appeal sought by the PHONES will not expedite the resolution of the bankruptcy, but will only delay it in derogation

---

[8] For example, one remaining Allocation Dispute is the manner in which the PHONES Notes Indenture subordination provisions apply to Creditor Trust fraudulent transfer claim recoveries. See Scheduling Order at 3. Another is the manner in which the subordination provisions in the subordination agreement governing the EGI-TRB LLC Notes apply to Litigation Trust and Creditor Trust fraudulent transfer claim recoveries. Id. at 3-4. Still another is the manner in which the subordination provisions in the PHONES Notes Indenture and in the subordination agreement governing the EGI-TRB LLC Notes apply to the settlement proceeds to be paid and distributed pursuant to the settlements embedded in the Third Amended DCL Plan. Id.

of the wishes of the Bankruptcy Court. Any determination that portions of the orders at issue are final and subject to immediate appeal will almost certainly be followed by a baseless claim by WTC that the Bankruptcy Court therefore has been divested of jurisdiction, and/or by a motion from WTC seeking to stay the bankruptcy proceedings until the appeal is briefed, argued, and decided. Indeed, as described above, WTC recently indicated that it was considering just such actions. And one need look no further than the Washington Mutual litigation before Judge Walrath to see counsel for WTC taking precisely such steps, regardless of the impact they might have on the countless other constituencies who are anxious to receive distributions and be done with the bankruptcy cases.[9]

B.    The Orders Are Not "Final" By Virtue Of The Collateral Order Doctrine

In a footnote (Motion at 8, n. 4), WTC asserts that the Reconsideration Decision and Confirmation Decision are final by virtue of the collateral order doctrine. This argument is meritless. See WCI Steel, 338 B.R. at 26-31 (and cases cited therein) (orders denying confirmation are not appealable under the collateral order doctrine). The collateral order doctrine treats as final only a "small category" of orders "that are [1] conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively unreviewable on appeal from the final judgment in the underlying action." Mohawk Industries, Inc. v. Carpenter, ___ U.S. ___, 130 S.Ct. 599, 605 (2009) (citations omitted). In requiring that the question be

---

[9] In Washington Mutual, after Judge Walrath denied confirmation of a proposed Sixth Amended Plan, the sponsor of the plan amended it to conform to the order denying confirmation, and Judge Walrath scheduled a confirmation hearing on the Modified Sixth Amended Plan. Washington Mutual, Inc., 2011 WL 4090757 at *1-*2. In response, counsel for WTC argued on behalf of its client that an appeal previously taken from a decision issued in an adversary proceeding related to the Bankruptcy Court acted to divest the Bankruptcy Court of jurisdiction to proceed with confirmation until the adversary proceeding appeal was resolved. Id. at *6-*7. Judge Walrath disagreed, and proceeded to consider but deny confirmation to the Modified Sixth Amended Plan. Id. at *7-*8; *56. Upon the filing of a Seventh Amended Plan, counsel for WTC responded by filing a motion to stay all confirmation proceedings pending the outcome of the adversary proceeding appeal, reiterating that the appeal had divested the Bankruptcy Court of jurisdiction. See TPS Motion for Stay of Confirmation Proceedings, supra n. 7, at 2-5, 12-28. Judge Walrath denied the motion. See Order Denying the Motion of the Consortium of Trust Preferred Security Holders for Stay of Confirmation Proceedings Pending Appeal, In re Washington Mutual, Inc., Case No. 08-12229 (MFW) (Bankr. D. Del.), Docket No. 9397 (filed Jan. 11, 2012).

"important," the second element allows immediate review only of questions that are "serious and unsettled." Nixon v. Fitzgerald, 457 U.S. 731, 742 (1982); In re Mushroom Direct Purchaser Antitrust Litigation, 655 F.3d 158, 164 n.4 (3d Cir. 2011). To satisfy the third element, it is not enough to show that the ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final [lower] court judgment." Mohawk, 130 S.Ct. at 605 (citations omitted). Instead, the "decisive inquiry" is whether delaying review of "the entire category to which a claim belongs" would "imperil a substantive public interest or some particular value of a high order." Id. (citations and quotations omitted).

In this case, the second and third elements of the collateral order doctrine plainly are not satisfied. The second element is not present because the two questions WTC seeks to raise on appeal are no more important that any other issue litigated daily in bankruptcy or other courts across the country. The third element is not satisfied because WTC has not shown that delaying review until entry of final judgment (*i.e.*, an order confirming the Third Amended DCL Plan) would imperil a substantive public interest or some particular value of a high order.

III.    **WTC Has Not Satisfied The Criteria For A Discretionary Appeal**

Alternatively, WTC asserts that the District Court should allow it leave to file an appeal under 28 U.S.C. § 158(a)(3), which grants district courts the discretion to authorize interlocutory orders of bankruptcy courts. In determining whether to exercise their authority under section 158(a)(2), district courts look first to the standards of 28 U.S.C. § 1292(b), which permits appeal where "the order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation." See In re AE Liquidation, Inc., 451 B.R. 343, 346 (D.

Del. 2011) (Stark, J.).[10] Because an interlocutory appeal "represents a deviation from the basic judicial policy of deferring review until entry of a final judgment," Advanced Marketing, 2008 U.S. Dist. LEXIS 27582 at *2, interlocutory appeal of bankruptcy court orders is granted "sparingly" and only in "exceptional circumstances." Id.[11] As demonstrated below, WTC has not come close to satisfying these criteria. See Chase Bank USA, N.A. v Hess, 2011 WL 4459604 at *2 (D. Del. 2011) (Stark, J.).

A.    The Orders Involve No Controlling Questions Of Law

A controlling "question of law" suitable for interlocutory appeal is a "pure question of law" – namely, "something the [higher court] could decide quickly and cleanly without having to study the record." Ahrenholz v. Board of Trustees of University of Illinois, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.). Accord McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1258 (11th Cir. 2004); In re Gray, 447 B.R. 524, 533-34 (E.D. Mich. 2011); EEOC v. Hora, Inc., 2005 U.S. Dist. LEXIS 14855 at *8 (E.D. Pa. 2005). As a result, a pure question of law does not include the "application of settled law to fact,"[12] including in answering the "question of the meaning of a contract."[13] Ahrenholz, 219 F.3d at 676; Aristocrat Leisure Limited v. Deutsche

---

[10] Accord In re SemCrude, L.P., 407 B.R. 553, 556-57 (D. Del. 2009); In re Advanced Marketing Services, Inc., 2008 U.S. Dist. LEXIS 27582 at *2 (D. Del. 2008); In re Genesis Health Ventures, Inc., 2007 U.S. Dist. LEXIS 47346 at *6 (D. Del. 2007); In re: Montgomery Ward & Co., Inc., 2006 U.S. Dist. LEXIS 75788 at *3 (D. Del. 2006).

[11] In re Delaware & Hudson Ry. Co., 96 B.R. 469, 473 (D. Del. 1989), aff'd, 884 F.2d 1383 (3d Cir. 1989); Advanced Marketing, 2008 U.S. Dist. LEXIS 27582 at *2; Montgomery Ward, 2006 U.S. Dist. LEXIS 75788 at *3.

[12] Accord McFarlin, 381 F.3d at 1259 ("the antithesis of a proper [interlocutory] appeal is one that turns on ... whether the [lower] court properly applied settled law to the facts or evidence of a particular case"); Hurst v. City of Dover, 2006 U.S. Dist. LEXIS 57029 at *6 (D. Del. 2006) (rejecting certification where the "gist of Hurst's argument is that I erred in the application of existing law to the facts of this case").

[13] Ahrenholz, 219 F.3d at 676-77 ("the meaning of a contract is not what the framers [of the statute] had in mind because "to decide a question of contract interpretation may require immersion in what may be a long, detailed and obscure contract"); Catskill Dev. L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of "controlling question of law" that normally gives rise to certification"); The Clark Construction Group, Inc. v. Allglass Systems, Inc., 2005 U.S. Dist. LEXIS 5278 at *8 (D. Md. 2005) ("the meaning of a contract" is not the sort of "pure question of law" required for certification).

Bank Trust Company, 426 F. Supp. 2d 125 (S.D.N.Y. 2005) (refusing to certify question of whether lower court correctly interpreted the term "call" in a bond indenture).

Applying these standards, it is obvious that neither of the two questions identified by WTC constitute controlling "questions of law."  WTC's first question is "[w]hether the Bankruptcy Court erred in reconsidering the Confirmation Opinion and granting reconsideration where the standard for reconsideration was not satisfied insofar as Movants simply disagreed with a prior decision and offered no new facts or law justifying reconsideration." Motion at 7. WTC's second question is "[w]hether the Bankruptcy Court erred in holding that the subordination provisions under the PHONES Indenture apply to recoveries of Bankruptcy Code Chapter 5 causes of action obtained by the Litigation Trust from third parties." Id.

As the language of the questions makes clear, neither presents a pure question of law resolvable without reference to the facts and record in this case.  To the contrary, both questions by their terms challenge the manner in which the Bankruptcy Court applied settled law to the facts as disclosed in the record of this case.  Indeed, WTC's argument on the second question emphasizes the point by insisting that the Bankruptcy Court's determination of the intent of the parties embodied in the PHONES Notes Indenture subordination provisions contravenes "fundamental principles of contract law, the plain wording of the PHONES Indenture, and context surrounding the subordination provision." Motion at 12.

    B.    There Is No Substantial Ground For Difference Of Opinion On The Allegedly Controlling Questions of Law

Even if WTC somehow had identified a controlling question of law – which it has not – WTC has not established that there is any substantial ground for difference of opinion with respect to that question.  In order to show a substantial ground for difference of opinion, a party seeking interlocutory appeal must demonstrate either a split among the lower courts in the circuit on the issue presented or, in the absence of a split, that the lower court decisions in the circuit on

14

the issue are so confused and in such disarray that the governing legal standard cannot be ascertained.[14]  WTC has not even attempted to make such a showing here.

Instead, WTC argues that substantial grounds for difference of opinion has been shown on the PHONES Notes Indenture subordination question because the issues presented are "novel" or "important" or have "not been squarely addressed by prior caselaw."  Motion at 11. Even if true, this would not suffice because the case law makes clear that a "question of first impression, a lack of judicial authority on a legal question, or a party's disagreement with a court's decision do not demonstrate a substantial ground for difference of opinion."  Advanced Marketing Services, 2008 U.S. Dist. LEXIS 27582 at *4.[15]

In any event, WTC's claims of "novelty," "importance," and "first impression" are unfounded.  Whether the subordination provision in the PHONES Notes Indenture applies to Litigation Trust fraudulent transfer claim recoveries is a question of contract interpretation, no more or less "novel" or "important" than any of the many contract issues litigated in courts

---

[14] See Schnelling v. KPMG, 2006 WL 1540815 at *3(D. N.J. 2006) (a substantial ground exists when there is "conflicting precedent as to the correct legal standard" or where the court below applied one standard and 'other courts have substantially differed in applying that standard"); In re Magic Restaurants, Inc., 202 B.R. 24, 25-26 (D. Del. 1996) ("a judicial conflict on the issue is required" for a substantial ground); Johnson v. Washington Area Transit Authority, 790 F. Supp. 1174, 1180 (D.D.C. 1991) (a substantial ground exists because "there is a possible intracircuit split on the issue" and "[e]ven absent this split the case law is confused"); First American Bank of New York v. Country Glove, 64 B.R. 958, 962 (D. Del. 1986) ("the direct conflict between the Westgate court and the Bankruptcy Court leads this Court to conclude that there is a substantial ground for difference of opinion").  See also In re Schering-Plough Corp., 2010 WL 2546054 at *n. 4 (D.N.J. 2010) ("Defendants do not cite any cases within this Circuit that suggest a substantial ground for difference of opinion"); Hartsell v Source Media Inc., 1999 WL 629645 at *2 (N.D. Tex. 1999) (no substantial ground where there is a conflict among the circuits but not within the circuit within which the court is sitting); Bumgarner v. Blue Cross and Blue Shield of Kansas, Inc., 716 F. Supp. 493, 505 (D. Kan. 1988) (no substantial ground where "the cases in this district reveal[] a distinct trend" in favor of the approach adopted by the lower court).

[15] See In re W.R. Grace & Co., 2007 U.S. Dist. LEXIS 21586 at *4 (D. Del. 2007) ("The problem with ZAI Claimant's argument is that they cannot point to any case that states" the opposite of what the Bankruptcy Court held); Magic Restaurants, 202 B.R. at 26 ("a scarcity or void of judicial opinion alone is insufficient to justify an interlocutory appeal").  See also In re Flor, 79 F.3d 281, 284 (2d Cir. 1996); First American Corp. v. Al-Nahyan, 948 F. Supp. 1107, 1116-17 (D.D.C. 1996).  Recognizing the weight of this authority, WTC claims that the Bankruptcy Court's interpretation of the PHONES Notes Indenture is "contrary to well-established law" but fails to identify this "well-established law" or to cite a single case embodying it.  See Motion at 11.

throughout the United States every day.[16]  The Bankruptcy Court resolved the question not by breaking new ground or making new law, but by applying basic and well-settled principles of contract law, as well as guidance from a decision concerning the purpose of the subordination provisions, to the facts of this case.  See Reconsideration Decision, 2011 Bankr. LEXIS 5018 at *15-*16, *28-*30.  Moreover, to the extent that WTC claims that the question presented is one of "first impression" because this is the first time a court has construed this particular contract among the parties, the argument is misguided and sweeps too broadly.  Indeed, were the law otherwise, every decision interpreting a contract between two parties for the first time would be subject to interlocutory appeal.

Equally flawed is WTC's argument that a substantial ground for difference of opinion is established by the fact that the Bankruptcy Court interpreted the PHONES Notes Indenture one way in its Confirmation Decision and then interpreted it the opposite way in its Reconsideration Decision.  Motion at 12.  The Bankruptcy Court explained that it granted reconsideration because in reaching its original decision it had misapprehended the position of the parties and had not considered all of the relevant provisions of the PHONES Notes Indenture in reaching its decision.  See Reconsideration Decision, 2011 Bankr. LEXIS 5018 at *13-*14.  The Reconsideration Decision reflects the action of a conscientious judge, not a basis for seeking an immediate appeal.  And, again, if WTC's argument were valid, *every* ruling granting a reconsideration motion would necessarily be subject to interlocutory appeal.[17]

---

[16] See Simmons v. Akanno, 2011 U.S. Dist. LEXIS 46658 at *7 (E.D. Cal. 2011) (interlocutory appeal is a "safety valve for 'serious legal questions taking the case out of the ordinary run'") (citations omitted).

[17] WTC makes no real effort to demonstrate the existence of substantial grounds for difference of opinion concerning the legal standards governing reconsideration motions.  See Motion at 12.  WTC merely asserts that the Bankruptcy Court "abused its discretion" in granting the motion because the moving parties "said nothing new in [the reconsideration] motions and provided the Bankruptcy Court with no valid basis to reconsider its prior decision."  Id.  This argument, however, reveals nothing more than a disagreement with the lower court's decision which, no matter how "vehement," does not suffice to establish the needed substantial grounds for difference of opinion.  In re Vitamins Antitrust Litigation, 2000 WL 673936 at *3 (D.D.C. 2000).

16

C.    An Immediate Appeal Will Not Materially Advance The Litigation

An immediate interlocutory appeal is only permissible in circumstances where it will "materially advance the ultimate termination of the litigation." This means that an immediate appeal "must promise to *speed up* the litigation" as a whole. Ahrenholz, 219 F.3d at 676 (emphasis in original). See also McFarlin, 381 F.3d at 1259 (an immediate appeal must "avoid a trial or otherwise substantially shorten the litigation"). An appeal that simply advances one party's interests or position is not enough. In re Edison Bros. Stores, Inc., 1996 WL 363806 at *3 (D. Del. 1996).

Here, it is clear that an immediate appeal will not materially advance the ultimate termination of the bankruptcy. To the contrary, as noted above, the Bankruptcy Court has established a schedule designed to result in a hearing on the remaining Allocation Disputes on March 5 and 6, 2012 and the Confirmation Hearing on the Third Amended DCL Plan on May 16 and 17, 2012. Consequently, it is difficult to see how an immediate appeal could "speed things up." See Manitowoc Marine Group LLC v. Ameron International Corp., 2006 U.S. Dist. LEXIS 61678 at *6 (E. D. Wis. 2006) (no likelihood of material advancement shown where the case had been pending for three years and is "set for trial next month"); Passalacqua Builders, Inc. v. Resnick Developers South Inc., 611 F. Supp. 281, 284 (S.D.N.Y. 1985) (no likelihood of material advancement shown where the case has been pending for three years and "the case is almost ready for trial").

Moreover, the pendency of the remaining Allocation Disputes further demonstrates the wisdom of adhering to the normal appellate process. As explained above, several of the remaining Allocation Disputes are nearly identical to the contract interpretation issue that WTC seeks to immediately appeal. Sound judicial administration therefore counsels in favor of considering a single appeal in which all of these questions can be considered together. It makes

17

no sense to allow a piecemeal appeal of one aspect of the subordination issue now and then to revisit the subject of subordination in a later appeal.

Finally, allowing an immediate appeal now is likely to delay rather than expedite the ultimate resolution of the bankruptcy. As explained above, any decision granting interlocutory review is likely to be followed by either a claim that the Bankruptcy Court has thereby been divested of jurisdiction or by a motion to stay the bankruptcy proceedings until the appeal is briefed, argued, and decided. Either response can only slow the bankruptcy down even more.

## CONCLUSION

The instant motion for leave to appeal should be denied.

Dated: Wilmington, Delaware
January 24, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
James F. Bendernagel, Jr.
Kevin T. Lantry
Jessica C.K. Boelter
Allison Ross Stromberg
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

/s/ J. Kate Stickles
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

Counsel for Debtors and Debtors in
Possession and Certain Non-Debtor
Affiliates

18

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier:  (212) 541-5369

-and-

LANDIS RATH & COBB LLP

/s/ Matthew B. McGuire
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier:  (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

Counsel for the Official Committee of
Unsecured Creditors


DEWEY & LEBOEUF LLP
Bruce Bennett
James O. Johnston
Joshua M. Mester
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telecopier:  (213) 621-6100

-and-

19

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ M. Blake Cleary*
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telecopier: (302) 571-1253

Counsel For Oaktree Capital Management,
L.P. and Angelo, Gordon & Co., L.P.

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

Co-Counsel For Angelo, Gordon & Co, L.P.


DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

-and-

RICHARDS LAYTON & FINGER, P.A.

*/s/ Drew G. Sloan*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701

Counsel For JPMorgan Chase Bank, N.A.

**EXHIBIT B**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re:                                    :        Chapter 11 Cases
                                          :        Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                  :        (Jointly Administered)
                                          :
                        Debtors.          :
                                          :
-----------------------------------------------------x
```

## OPPOSITION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERICAS TO WILMINGTON TRUST COMPANY'S MOTION FOR LEAVE TO APPEAL BANKRUPTCY COURT'S DECISION ON SUBORDINATION

KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
212-506-1700

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302-429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, New York 10167
212-609-6800

McCARTER & ENGLISH, LLP
James J. Freebery (I.D. No. 3498)
Renaissance Centre
405 N. King Street
Wilmington, Delaware 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF ADDITIONAL RELEVANT FACTS ................................................. 5

ARGUMENT ..................................................................................................................... 7

I.     The Orders Are Not Final ....................................................................................... 7

II.    The Collateral Order Doctrine Is Inapplicable .................................................... 13

III.   This Court Should Deny WTC's Request For Leave For Appeal ...................... 14

      A.   The Appeal Does Not Address A Controlling Question Of Law ......................... 15

      B.   There Are No Substantial Grounds For A Difference Of Opinion As To
           The Applicable Legal Standards ........................................................................ 17

      C.   An Interlocutory Appeal Will Not Materially Advance The Termination
           Of The Litigation ............................................................................................... 19

      D.   Other Factors Militate Against Interlocutory Appeal ......................................... 20

CONCLUSION ................................................................................................................ 21

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ahrenholz v. Bd. of Trs.,*
219 F.3d 674 (7th Cir. 2000) ..................................................................11,16

*Aluminum Co. of Am. v. Beazer E., Inc.,*
124 F.3d 551 (3d Cir. 1997).........................................................................8

*Barnhart v. Thomas,*
540 U.S. 20 (2003)......................................................................................18

*Behrens v. Pelletier,*
516 U.S. 299 (1996) .....................................................................................8

*Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV,*
229 F.3d 245 (3d Cir. 2000)..................................................................9, 11

*Catlin v. United States,*
324 U.S. 229 (1945)......................................................................................7

*Cofab, Inc. v. Phila. Joint Bd., Amalgamated Clothing & Textile Workers Union,*
141 F.3d 105 (3d Cir. 1998)........................................................................14

*Cohen v. Beneficial Indus. Loan Corp.,*
337 U.S. 541 (1949)...............................................................................8, 13

*Cunningham v. Hamilton Cnty.,*
527 U.S. 198 (1999)......................................................................................7

*Fauber v. Kem Transp. & Equipment Co.,*
876 F.2d 327 (3d Cir. Pa. 1989)................................................................10

*Finkel v. Polichuk,*
2011 U.S. Dist. LEXIS 62324 (E.D. Pa. June 8, 2011) ......................14, 15

*First Am. Bank v. Sw. Gloves & Safety Equip., Inc.,*
64 B.R. 963 (D. Del. 1986) ..........................................................................9

*Gov't of the V.I. v. Lansdale,*
307 Fed. Appx. 688 (3d Cir. 2009) ............................................................13

*Great Am. Ins. Co. v. Int'l Custom Prods.,*
No. 3:09-124, 2011 U.S. Dist. LEXIS 151378 (W.D. Pa. Oct. 31, 2011) ...............................16

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988) ...................................................................................13

*In re AE Liquidation, Inc.*,
451 B.R. 343 (D. Del. 2011) ...............................................15, 16, 18, 19, 20

*In re Armstrong World Indus.*,
432 F.3d 507 (3d Cir. 2005)..................................................................11, 12

*In re Bank of New Eng. Corp.*,
218 B.R. 643 (B.A.P. 1st Cir. 1998) ..........................................................17

*In re Blatstein*,
192 F.3d 88 (3d Cir. 1999)............................................................................9

*In re Diet Drugs Prods. Liab. Litig.*,
401 F.3d 143 (3d Cir. 2005).......................................................................14

*In Re Dura Auto. Sys., Inc.*,
379 B.R. 257 (Bankr. D. Del. 2007) ..........................................................18

*In re Enron Corp.*,
2007 U.S. Dist. LEXIS 70731 (S.D.N.Y. Sept. 24, 2007).........................19

*In re Enron Creditors Recovery Corp.*,
380 B.R. 307 (S.D.N.Y. 2008)...................................................................18

*In re Griffith Dev. Co.*,
2011 U.S. Dist. LEXIS 93880 (D. Del. Aug. 23, 2011) .............................15

*In re Marvel Entm't Grp., Inc.*,
209 B.R. 832 (D. Del. 1997).......................................................................16

*In re Mcorp Fin., Inc.*,
139 B.R. 820 (S.D. Tex. 1992) ...................................................................13

*In re Meyertech Corp.*,
831 F.2d 410 (3d Cir. 1987)..........................................................................9

*In re Natale*,
295 F.3d 375 (3d Cir. 2002)..................................................................11, 12

*In re Pruitt*,
910 F.2d 1160 (3d Cir. 1990)................................................................13, 14

*In re Reliant Energy Channelview, LP*,
397 B.R. 697 (D. Del. 2008) ....................................................................2, 9

*In re SemCrude, L.P.*,
    2010 U.S. Dist. LEXIS 136391 (D. Del. Oct. 26, 2010) ........................................... 16, 17, 20

*In re Simons*,
    908 F.2d 643 (10th Cir. 1990) ...........................................................................13

*In re Spansion Inc.*,
    426 B.R. 114 (Bankr. D. Del. 2010) ...................................................................18

*In re White Beauty View, Inc.*,
    841 F.2d 524 (3d Cir. 1988)...............................................................................12

*Off'l Comm. Of Unsecured Creditors of Cybergenics Corp. v. Scott Chinery*
    *(In re Cybergenics Corp.)*,
    226 F.3d 237 (3d Cir. 2000)...............................................................................6

*Official Comm. of Equity Sec. Holders v. Finova Capital Corp.*
    *(In re Finova Capital Corp.)*,
    No. 06-040-JJF, 2006 U.S. Dist. LEXIS 19141 (D. Del. Apr. 13, 2006) ...............................10

*Pandolfelli v. JPMorgan Chase Bank, N.A.*,
    2011 U.S. Dist. LEXIS 26163 (D.N.J. Mar. 14, 2011)....................................................17, 19

*Popular Leasing U.S.A., Inc. v. Forman*,
    2009 U.S. Dist. LEXIS 84138 (D.N.J. Sept. 14, 2009) ..........................................16

*WCI Steel, Inc. v. Wilmington Trust Co.*,
    338 B.R. 1 (N.D. Ohio 2005)..............................................................................13

*Weber v. U.S. Tr.*,
    484 F.3d 154 (2d Cir. 2007)...............................................................................15

**STATUTES**

28 U.S.C. § 158(a)(1).............................................................................................7

28 U.S.C. § 158(a)(3).............................................................................................14, 17

28 U.S.C. § 1292(b) .......................................................................................... *passim*

**OTHER AUTHORITIES**

88 HARV. L. REV. 607, 609 (1975) .............................................................................15

Moore's Federal Practice, Civil § 203.31 ...................................................................16

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company ("Tribune" and with its debtor subsidiaries, the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A., and Deutsche Bank Trust Company Americas ("DBTCA" and together with Law Debenture, the "Senior Indenture Trustees"), successor trustee under (i) that certain indenture dated March 1, 1992, by and between Tribune and Continental Bank, N.A.; (ii) that certain indenture dated January 30, 1995, by and between Tribune and First Interstate Bank of California; and (iii) that certain indenture dated January 1, 1997, by and between Tribune and Bank of Montreal Trust Company (collectively, the "Senior Indentures" and the notes and holders of notes issued pursuant to the Senior Indentures, respectively, the "Senior Notes" and the "Senior Noteholders"), by and through their undersigned counsel, hereby oppose Wilmington Trust Company's ("WTC") *Motion For Leave To Appeal Bankruptcy Court's Decision On Subordination*, dated January 10, 2012 [Dkt. No. 10582] (the "Motion"), and respectfully represent as follows:[1]

## PRELIMINARY STATEMENT

This Court should reject WTC's attempt to appeal the (i) *Order Denying Confirmation Of Competing Plans* [Dkt. No. 10134] and the *Opinion On Confirmation* [Dkt. No. 10133] (collectively, the "Order Denying Confirmation"), and (ii) the *Order Regarding Motions For Reconsideration Of The Confirmation Opinion And Order* [Dkt. No. 10532] and the *Memorandum On Reconsideration* [Dkt. No. 10531] (collectively, the "Reconsideration Order," and together with the Order Denying Confirmation, the "Orders") both as an appeal as a matter of right and as a request for leave to appeal an interlocutory order.

---

[1]    Capitalized terms have the meanings in the Motion unless defined otherwise.

WTC may not appeal the Orders as of right because they are not final orders, even under a more relaxed standard of finality that courts in this District apply to Bankruptcy Court orders. Under *Reliant Energy* (cited below), the Court will find an order final if, among other things, the order (i) leaves no additional work for the Bankruptcy Court, (ii) implicates purely legal issues, (iii) impacts assets of the debtor's estate, and (iv) furthers judicial economy. WTC satisfies none of these elements.

First, the Order Denying Confirmation clearly leaves additional work for the Bankruptcy Court, *i.e.* the consideration of another plan, because the Bankruptcy Court has not confirmed a plan of reorganization. Indeed, the Order Denying Confirmation leaves the Bankruptcy Court with nothing to enforce. Moreover, WTC itself asserts that although the Bankruptcy Court has resolved the subordination issue addressed in the Reconsideration Order, the Bankruptcy Court has further work to do with respect to the adjudication of other issues concerning the same subordination provisions of the PHONES Indenture. These issues are intertwined with the subordination issue that the Bankruptcy Court resolved in the Reconsideration Order. Although the Senior Indenture Trustees assert that the Bankruptcy Court's interpretation of the applicable subordination provisions is dispositive of other issues that the Bankruptcy Court will address relating to the scope of the contractual subordination, WTC disagrees and apparently intends to litigate those issues as if they remain unresolved. Until the Bankruptcy Court resolves all other unresolved but related disputes arising out of the subordination provisions of the PHONES Indenture, there remains further work for the Bankruptcy Court.

Second, the bases for the Bankruptcy Court's decision to reconsider its prior decision, as well the Bankruptcy Court's contractual interpretation of the subordination provisions, are not pure legal issues. The decision to reconsider a prior ruling is itself discretionary. Further,

although the interpretation of an unambiguous contract is treated as an issue of law for purposes of applying the applicable standard of review, there was no "legal issue" in the sense of a disputed issue of common or statutory law, and there was no issue as to the applicable legal standard for construing the applicable subordination provision. The Bankruptcy Court did, and an appellate court would have to, engage in an in-depth analysis of the specific subordination provisions to decide the issues WTC seeks to have reviewed on appeal.

Third, subordination does not directly impact the assets of the Debtors' estates as opposed to the allocation of those assets after a plan is confirmed. In this case, the connection is even more attenuated because the subject of the Reconsideration Order dealt with recoveries from third parties.

Fourth, the consideration of any appeal from the Bankruptcy Court's resolution of the subordination issue here at the same time as that of the Bankruptcy Court's ongoing resolution of the other issues concerning the same subordination provisions of the PHONES Indenture will not promote judicial economy and will increase the chance that there will be piecemeal appeals of substantially similar or related subordination issues.

For many of the same reasons that dictate that the Orders are not final, the Orders are also not ripe for appellate review as either a collateral or interlocutory order. The collateral order doctrine is inapplicable because, absent confirmation of a plan of reorganization, the Orders do not (i) conclusively determine the central issue of confirmation of a plan of reorganization, (ii) resolve an important issue separate from the merits of the overall confirmation litigation, and (iii) render application of subordination unreviewable on appeal. The subordination issue here is simply one of the many issues that the Bankruptcy Court will address in connection with confirmation of any plan and any appeal from an order confirming a plan. Moreover, because

3

the Bankruptcy Court has not confirmed a plan of reorganization, no Litigation Trust has been formed, no parties have realized recoveries, and there is no risk that, absent an immediate appeal, WTC may not seek review of the Bankruptcy Court's determination of all issues following confirmation.

Finally, WTC cannot avail itself of an interlocutory review of the Orders because they do not involve a controlling issue of law upon which there are substantial grounds for a difference of opinion and that would, if appealed immediately, materially advance the ultimate determination of the confirmation litigation. First, WTC fails to mention a single controlling question of law. Instead, WTC merely highlights perceived faults with the Bankruptcy Court's interpretation of the subordination provisions in the Reconsideration Order. Second, WTC has not shown that there is a substantial difference of opinion regarding the Bankruptcy Court's contractual interpretation concerning the scope of the PHONES Indenture's subordination provisions. In fact, the legal principles that govern the interpretation of the subordination provisions at issue are well-settled. WTC merely disagrees with the Bankruptcy Court's interpretation of these provisions. Disagreement is not sufficient to establish that a substantial difference of opinion exists. In fact, WTC's admission that the Reconsideration Order involved "well-established" principles of law and contract interpretation further undercuts any pretext that there are substantial differences of opinion on the correct legal standard. Third, appellate review of the Reconsideration Order will not advance the Bankruptcy Court's adjudication of the remaining issues, including those related to the PHONES Indenture, in connection with its consideration of confirmation of a plan of reorganization. Although the Senior Indenture Trustees assert that the Reconsideration Order is dispositive as to the subordination issue the Bankruptcy Court addressed, WTC disagrees and argues that all of the subordination issues

remain open, are not controlled by the Reconsideration Order, and are subject to adjudication as part of the Allocation Disputes.  Moreover, even if the appeal could advance the Bankruptcy Court's adjudication of the Allocation Disputes, by failing to request expedited treatment of its appeal, WTC has ensured that the Bankruptcy Court will determine the Allocation Disputes prior to any adjudication of the appeal.

It is not surprising that WTC would have preferred that the Bankruptcy Court leave unaltered its previous error.  If left intact, WTC could have received, in the context of confirmation of plan of reorganization not yet confirmed, a recovery windfall through the misapplication of the subordination provisions in the PHONES Indenture.  Although WTC has made its disagreement clear, it has utterly failed to satisfy the rigorous standards that the Court requires to review the Orders at this stage in the proceedings.  The Orders are not final, do not constitute collateral orders, and certainly do not demand immediate interlocutory appeal.  Accordingly, the Court should deny the Motion and dismiss the appeal.

## STATEMENT OF ADDITIONAL RELEVANT FACTS

Without repeating the relevant facts set forth by WTC in the Motion, the Senior Indenture Trustees wish to augment the factual background by addressing key facts which were omitted in the Motion.

On December 29, 2011, the Bankruptcy Court entered the Reconsideration Order and an accompanying Memorandum on Reconsideration (the "Reconsideration Memorandum").  In the Reconsideration Memorandum, the Bankruptcy Court first determined to reconsider its prior findings on at least two bases:

> Reconsideration is appropriate where there is an error of fact and, in this case, the Court erroneously said that the "Noteholders" joined in the objection to the treatment of subordinated debt with respect to distributions from the DCL Litigation Trust, although the Movants, who are Senior Noteholders, did not join in that objection. … Further, reconsideration is appropriate when the Court has

5

overlooked facts that might reasonably have altered or impacted the decision.
Here, the Court's consideration of the phrase "assets of the Company" was too
limited.  A more complete reading of the PHONES Indenture as a whole is
required.

(Reconsideration Mem. at 7.)

Having decided to reconsider, the Bankruptcy Court analyzed Article 14 of the PHONES

Indenture, which governs the subordination of the PHONES Notes, as well as the PHONES

Indenture in its entirety.  As a result of its review, and upon consideration of the parties'

arguments and after a hearing, the Bankruptcy Court reconsidered and concluded that "[t]he

overall purpose of [the subordination provisions in] Article 14, in general, and Section 14.02, in

particular, is to ensure that the PHONES Notes are subordinated to the Senior Indebtedness."

(Reconsideration Mem., at 15.)

In the Reconsideration Memorandum, the Bankruptcy Court provided a very detailed and

thorough explanation for its decision, relied on cases involving contract interpretation, and

continued to adhere to the Third Circuit Court of Appeals' decision in *Off'l Comm. Of

Unsecured Creditors of Cybergenics Corp. v. Scott Chinery (In re Cybergenics Corp.)*, 226 F.3d

237, 245 (3d Cir. 2000).  (Reconsideration Mem., at 7 n.11, and 9-16.)

Concurrently with the Bankruptcy Court's adjudication of the subordination dispute in

the Reconsideration Order, the parties raised the following other disputes, several of which arise

from the same subordination provisions of the PHONES Indenture (the "Allocation Disputes"),

that the Bankruptcy Court had not addressed previously in either the Order Denying

Confirmation or the Opinion Denying Confirmation, including:

- whether and to what extent certain distributions under the Plan must be adjusted in
  order for the distributions under the Plan to satisfy the applicable requirements of the
  Bankruptcy Code in connection with assertions that all or any portion of the
  consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two
  Payees in respect of the Settlement are or are not subject to the subordination
  provisions of the PHONES Notes Indenture;

- whether and to what extent the priority of the distributions from the Creditors' Trust must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that all or any distributions from the Creditors' Trust are or are not subject to the subordination provisions of the PHONES Notes Indenture;

- whether and to what extent certain distributions under the Plan or the priority of distributions from the Creditors' Trust and/or the Litigation Trust must be adjusted in order for the distributions under the Plan to satisfy the applicable requirements of the Bankruptcy Code in connection with assertions that any category of Other Parent Claims (*i.e.*, the Swap Claim, the Retiree Claims or general unsecured trade claims against Tribune) does or does not constitute "Senior Indebtedness", as defined by the PHONES Notes Indenture; and

- whether and to what extent beneficiaries of the subordination provisions of the PHONES Notes Indenture are entitled to receive post-petition interest prior to the Holders of PHONES Notes Claims receiving payment on their Claims.

*Order*, dated June 24, 2012 [Dkt. No. 10692] at 2-3.

Following a status conference held before the Bankruptcy Court on January 11, 2012, the Bankruptcy Court entered an order dated January 24, 2012, setting forth discovery and pretrial procedures and scheduling a hearing on the Allocation Disputes for March 5-6, 2012.

## ARGUMENT

### I.    The Orders Are Not Final

WTC has improperly sought to appeal as of right the Orders even though they are not final as required under 28 U.S.C. § 158(a)(1).  Section 158(a)(1) of the United States Code provides, in pertinent part, that "the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees" of the bankruptcy courts.  28 U.S.C. § 158(a)(1).  A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999).  The surrounding circumstances, coupled with WTC's own admissions, lead to the inescapable conclusion that the Orders are merely one step in a multi-step process that is neither final nor ripe for appeal.

7

Here, the Bankruptcy Court cannot execute the judgment it rendered in either of the Orders as it has confirmed no plan of reorganization; instead, it denied confirmation. *See Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) ("The requirement of finality precludes consideration of decisions that are subject to revision, and even of 'fully consummated decisions [that] are but steps towards final judgment in which they will merge.'") (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)).  An order is final only if it "is clearly intended by the court to be its final act in the proceeding." *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 559 (3d Cir. 1997).  The Orders on their face are proof that the Bankruptcy Court never intended them to constitute final orders.

Moreover, the Bankruptcy Court must still adjudicate the Allocation Disputes, including certain disputes arising out of the same subordination provisions the Bankruptcy Court addressed in the Reconsideration Order, as a necessary element to consideration of confirmation of a plan of reorganization.  Until the Bankruptcy Court resolves the remaining Allocation Disputes and confirms a plan of reorganization, no distributions can occur.

WTC simply ignores these fatal flaws when arguing the Orders are final.  Rather, WTC argues simply that a "broader concept of finality" applies here, stretching the Court's flexibility beyond reasonable standards.  (Motion, at 7.)  Although the Courts in the Third Circuit do apply a somewhat "relaxed standard" of finality, they must take into account the following factors:

(1)    whether the order leaves additional work to be done by the Bankruptcy Court;

(2)    whether the order implicates purely legal issues;

(3)    what, if any, is the impact of the order on the assets of the debtor's estate;

(4)    the necessity for further fact-finding on remand to the Bankruptcy Court;

(5)    the preclusive effect of the District Court's decision on the merits of subsequent litigation; and

(6)    the furtherance of judicial economy.

*In re Reliant Energy Channelview, LP*, 397 B.R. 697, 699 (D. Del. 2008); *see also Buncher Co.*

*v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d

Cir. 2000). Of these factors the most critical is the impact on the bankruptcy estate. *In re*

*Blatstein*, 192 F.3d 88, 94 (3d Cir. 1999); *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir.

1987).

Without applying the *Reliant Energy* factors, WTC claims the Reconsideration Order is

final because "the "Bankruptcy Court has finally ruled on the PHONES Noteholders' rights with

respect to recoveries on Chapter 5 causes of action by the Litigation Trust." (Motion, at 8.)

WTC relies heavily on finality as being treated more broadly in bankruptcy cases. But that alone

does not render the Orders final. *See First Am. Bank v. Sw. Gloves & Safety Equip., Inc.*, 64

B.R. 963, 964 (D. Del. 1986) (finding an order non-final even under a broader concept of finality

because the order did not conclusively foreclose any creditors' rights).

The *Reliant Energy* factors weigh decidedly in favor of finding that the Orders are not

final.

First, the Bankruptcy Court must conduct additional work with respect to both Orders.

The Bankruptcy Court cannot enforce either Order at this stage of the bankruptcy proceedings.

In fact, it is unable to do so until it both confirms a plan of reorganization and resolves the

remaining Allocation Disputes. Notwithstanding the Court's determination in the

Reconsideration Order, WTC posits that these remaining Allocation Disputes include "whether

the PHONES are subordinated with respect to certain other recoveries and distributions,

including recoveries from Chapter 5 causes of action" and that the "remaining [A]llocation

[D]isputes are closely related to the issue at stake in this appeal." (Motion, at 13.) The

Bankruptcy Court set the Allocation Disputes for hearing on March 5, 2012 and the confirmation

hearing for May 16-17, 2012.  Thus, it would be premature at this stage to proceed with an

appeal of the Orders when further related proceedings remain contemplated by all parties,

including WTC and, importantly, the Bankruptcy Court.[2]

Second, the two issues that WTC seeks to raise on appeal, (i) whether the Bankruptcy

Court erred in granting reconsideration and (ii) whether the PHONES Indenture's subordination

provisions apply to Bankruptcy Code Chapter 5 causes of action – are not pure issues of law.

With respect to WTC's first issue, reconsideration is discretionary and not an issue of law.  *See*

*Fauber v. Kem Transp. & Equipment Co.*, 876 F.2d 327, 329 (3d Cir. Pa. 1989).  In exercising

that discretion, among other considerations, the Bankruptcy Court specifically found

reconsideration to be appropriate because its prior decision would be impacted or altered by the

PHONES Indenture's subordination provisions having been overlooked.  (Reconsideration

Mem., at 7.)  Thus, because the Bankruptcy Court analyzed the provisions of the PHONES

Indenture that it had overlooked, the Bankruptcy Court reconsidered its decision based on issues

of contract interpretation.  Also, WTC's second issue, regarding whether the Bankruptcy Court

properly interpreted the PHONES Indenture's subordination provisions, is not an issue of law as

an issue of purely applicable legal principles; rather it is an issue of contract interpretation.

Although the interpretation of an unambiguous contract is treated as an issue of "law" in the

sense that extrinsic evidence may not be considered in interpreting an unambiguous contract, it

does not involve an issue of law for finality purposes.  *See Official Comm. of Equity Sec. Holders*

*v. Finova Capital Corp. (In re Finova Capital Corp.)*, No. 06-040-JJF, 2006 U.S. Dist. LEXIS

---

[2]     The Bankruptcy Court indicated that it expected to rule expeditiously on the Allocation Disputes prior to
the confirmation of a plan of reorganization.  Hrg. Trans., dated Jan. 11, 2012 at 37.  ("I intend to do the same thing I
did with the reconsideration opinion. And that is decide, in fairly short order, and then to decide before solicitation
commences.")

19141 (D. Del. Apr. 13, 2006); *Ahrenholz v. Bd. of Trs.*, 219 F.3d 674, 676 (7th Cir. 2000); *see also infra* Section III.A.

Third, the Reconsideration Order does not directly impact the Debtors' estates. The Reconsideration Order determined that all Litigation Trust distributions that would have been paid to the PHONES Noteholders instead will be turned over to the Senior Noteholders under the plan of reorganization then being considered as to which the Court denied confirmation. WTC incorrectly relies upon inapposite cases in which the courts employed a relaxed view of finality because the decisions in question directly impacted the debtor's estate. *See Buncher Co.*, 229 F.3d at 250; *In re Natale*, 295 F.3d 375 (3d Cir. 2002); *In re Armstrong World Indus.*, 432 F.3d 507 (3d Cir. 2005).

For instance, in *Buncher Co.*, while the dispute in question involved issues related to subordination, the specific issue on appeal concerned the proper order of the direct distribution of estate assets as set forth in the plan of reorganization. 229 F.3d at 250. In contrast, here, neither the Reconsideration Order nor its reversal would change any distribution mechanism set forth in a plan of reorganization when such plan has yet to be considered by the Bankruptcy Court. Instead, the Reconsideration Order was directed to the distributions of the Litigation Trust and Senior Noteholders' absolute entitlement over the PHONES Noteholders to recoveries from fraudulent conveyances recoveries that the Litigation Trust obtains following the confirmation of a plan of reorganization.

In *In re Natale*, the Third Circuit reversed an earlier decision of the district court and held that an appeal filed on February 9, 2000 of an order issued on August 26, 1999 was *not* untimely because the court had not fully and finally resolved the priority of a judicial lien until the Court addressed further related issues on January 31, 2000. 295 F.3d at 378. In fact, in reaching its

conclusion that the August 26th order was not a final order, the Third Circuit primarily relied upon the fact that the bankruptcy court had scheduled a further evidentiary hearing to consider any remaining issues contemporaneously with issuing its August 26 order. *Id.* at 377, 380. Similarly, here, the Bankruptcy Court initially scheduled a status conference as part of its Reconsideration Order for January 11, 2012 during which it scheduled a further hearing for March 5, 2012 to consider the Allocation Disputes, some of which are directly implicated by the ruling in the Reconsideration Order. The Bankruptcy Court's scheduling of an additional status conference and need to adjudicate additional issues relating to the Bankruptcy Court's decision on subordination renders the Reconsideration Order non-final for appellate purposes, even though the Bankruptcy Court resolved the subordination dispute addressed in the Reconsideration Order.

In re Armstrong World Indus. is also off-point. There, the Third Circuit found that the issue of whether the debtor's plan of reorganization violated the absolute priority rule was a central issue and component of confirmation. 432 F.3d at 507. Here, WTC has not demonstrated the PHONES Indenture subordination provisions amount to the same level of importance.

Lastly, this Court should find the Reconsideration Order is not appealable as a matter of right because judicial economy would be furthered if the appeal is denied at this stage. The dispute that the Bankruptcy Court decided here was merely one of many issues (including other Allocation Disputes) that the Bankruptcy Court must determine prior to its confirmation of a plan. In *In re White Beauty View, Inc.*, the Third Circuit Court of Appeals noted its "general antipathy toward piecemeal appeals" as an "inefficient use of judicial resources." 841 F.2d 524, 526 (3d Cir. 1988). This Court should not revert to such a piecemeal approach.

## II.    The Collateral Order Doctrine Is Inapplicable

WTC claims without explanation that the collateral order doctrine provides an

"independent basis" for an immediate appeal. (Motion, at 8 n.4.)  The collateral order doctrine –

as WTC correctly notes – applies only to interlocutory orders that (1) conclusively determine a

disputed question, (ii) resolve an important issue separate from the merits of the litigation; and

(ii) are effectively unreviewable on appeal from a final judgment. *Cohen v. Beneficial Indus.*

*Loan Corp.*, 337 U.S. 541, 546-47 (1949).  The doctrine, however, as WTC fails to note, only

applies to a "small class of collateral orders," *id.* at 546, and is "narrowly construed." *Gov't of*

*the V.I. v. Lansdale*, 307 Fed. Appx. 688, 692 (3d Cir. 2009).  Moreover, "[i]f the order at issue

fails to satisfy *any one of these requirements*, it is not appealable." *In re Pruitt*, 910 F.2d 1160,

1166 (3d Cir. 1990) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271,

276 (1988)) (emphasis added).  Here, WTC cannot satisfy any of the elements of the collateral

order doctrine.

The collateral order doctrine does not apply to an order denying confirmation. *WCI Steel,*

*Inc. v. Wilmington Trust Co.*, 338 B.R. 1, 12 (N.D. Ohio 2005) ("The Court, however, is aware

of no instances in which the collateral order doctrine has been applied to an order denying

confirmation of a reorganization plan."); *see also In re Simons*, 908 F.2d 643, 645 (10th Cir.

1990) (denying application of collateral order doctrine to denial of confirmation).  "First, the

Order fails to conclusively determine any issue, because the parties have the opportunity to

submit a new proposed plan." *WCI Steel*, 338 B.R. at 28 (citing *Simons*, 908 F.2d at 645).

"Second, confirmation of a reorganization plan is not an independent issue from the rest of the

case; it is the case." *Id.* at 12 (citing *In re Mcorp Fin., Inc.*, 139 B.R. 820, 824 (S.D. Tex. 1992).)

Importantly, the issues that the Bankruptcy Court decided in the Reconsideration Order

are not "effectively unreviewable on appeal from a final judgment" because WTC can challenge

them at a later date if the Bankruptcy Court confirms a plan of reorganization. *See In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 159 (3d Cir. 2005) (holding that "to satisfy the 'unreviewability' prong, there must be a showing that disbursement of the fees might very well make them unrecoverable at the end of the litigation should they turn out to have been awarded in error."). This point is underscored by the fact that there are a number of other Allocation Disputes that have yet to be decided that may be subject to appeal in connection with an appeal from an order confirming a plan; and there is no reason why this Allocation Dispute cannot be considered together with those other disputes – which makes more sense than the piecemeal approach championed by WTC.

Accordingly, the Orders do not fall within the "small class of collateral orders that are reviewable even though they do not terminate the underlying action." *Cofab, Inc. v. Phila. Joint Bd., Amalgamated Clothing & Textile Workers Union*, 141 F.3d 105, 110 (3d Cir. 1998) (order staying case pending resolution of related proceedings before NLRB not a collateral order); *see also Pruitt*, 910 F.2d 1160 (order withdrawing reference to bankruptcy court not collateral order).

**III.**    **This Court Should Deny WTC's Request For Leave For Appeal**

28 U.S.C. § 158(a)(3) governs interlocutory appeals from a Bankruptcy Court order. This section provides, in pertinent part, that the district courts of the United States shall have jurisdiction to hear interlocutory appeals "with leave of the court." *See* 28 U.S.C. § 158(a)(3). Neither § 158 nor the Federal Rules of Bankruptcy Procedure provide criteria to determine whether to grant leave to file an interlocutory appeal. *See Finkel v. Polichuk*, 2011 U.S. Dist. LEXIS 62324, at *5-6 (E.D. Pa. June 8, 2011). "In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of a district court's interlocutory order to a

court of appeals is warranted." *In re Griffith Dev. Co.*, 2011 U.S. Dist. LEXIS 93880, at *6-7

(D. Del. Aug. 23, 2011). Under § 1292(b), an interlocutory appeal will be granted only when the

order at issue:

> (1)    involves a controlling question of law upon which there are
>
> (2)    substantial grounds for a difference of opinion as to its correctness, and
>
> (3)    if appealed immediately, may materially advance the ultimate termination
>         of the litigation.

*Id.* A court may certify an order for interlocutory appeal only if the movant demonstrates *all*

three conditions. *See Finkel*, 2011 U.S. Dist. LEXIS 62324, at *6. Additionally, because the

party seeking leave to appeal an interlocutory order must establish that "exceptional

circumstances" justify a departure from the basic policy of postponing review until after the

entry of final judgment, courts rarely grant leave to appeal. *Id.* As is the case with determining

whether an order is final, the Third Circuit Court of Appeals disfavors piecemeal litigation. *In re*

*AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011). Moreover, "Congress did not intend 28

U.S.C. § 1292(b) to serve an error-correction function." *Weber v. U.S. Tr.*, 484 F.3d 154, 159

n.3 (2d Cir. 2007) (citing Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. §*

*1292(b)*, 88 HARV. L. REV. 607, 609 (1975)).

A.    **The Appeal Does Not Address A Controlling Question Of Law**

It is actually not "beyond dispute" (Motion, at 10) that WTC seeks to appeal a controlling

issue of law. The Bankruptcy Court's interpretation of the PHONES Indenture hinged not on

legal issues (the applicable legal standard was not disputed) but on the specific language of the

specific subordination provisions. The factual nature of the Bankruptcy Court's determination

was clearly stated in its Memorandum on Reconsideration:

> Reconsideration is appropriate when there is an error of *fact* and, in this case, the
> Court erroneously said that the "Noteholders" joined in the objection to the

> treatment of subordinated debt with respect to distributions from the DCL
> Litigation Trust…. No one disputes that this *statement of fact* was incorrect.
> Further, reconsideration is appropriate when the Court has overlooked *facts* that
> might reasonably have altered or impacted the decision. Here, the Court's
> consideration of the phrase "assets of the Company" was too limited. A more
> complete reading of the PHONES Indenture is required.

(Reconsideration Mem., at 7 (citations omitted) (emphasis added).) These factual determinations

do not meet the first criteria for an interlocutory appeal. *See In re SemCrude, L.P.*, 2010 U.S.

Dist. LEXIS 136391 (D. Del. Oct. 26, 2010) (finding that Wilmington Trust Company had not

established that a controlling issue of law was at issue because they challenged a primarily

factual determination).[3]

The requirement of a controlling question of law ensures that the appeal can be "reduced

to a quick legal analysis amenable to decision quickly and cleanly without having to study the

record." *See In re AE Liquidation*, 451 B.R. at 347. A "quick legal analysis" is impossible

where, as here, the Court's determination was based upon its review of contractual language.

*See Ahrenholz*, 219 F.3d at 676 (holding that "the question of the meaning of a contract, though

technically a question of law when there is no other evidence but the written contract itself, is not

what the framers of section 1292(b) had in mind"); *Great Am. Ins. Co. v. Int'l Custom Prods.*,

No. 3:09-124, 2011 U.S. Dist. LEXIS 151378 (W.D. Pa. Oct. 31, 2011) (holding that "§ 1292(b)

was not designed to secure interlocutory appellate review of the Court's interpretation of

unambiguous contractual provisions."); *see also* Moore's Federal Practice, Civil §

203.31 ("[T]he question of the meaning of a contract, although technically

a question of law when there is no other evidence but the written contract itself, is not what the

---

[3]       The cases cited by WTC do not provide otherwise. *See In re Marvel Entm't Grp., Inc.*, 209 B.R. 832 (D.
Del. 1997) (order appealed from was based solely on oral argument where no testimony was given and no evidence
admitted; court considered 1292(b) factors only in the alternative to finding that order was final and appealable as of
right); *Popular Leasing U.S.A., Inc. v. Forman*, 2009 U.S. Dist. LEXIS 84138 (D.N.J. Sept. 14, 2009) (appeal of
bankruptcy court's legal prediction that "deepening insolvency" would be considered a tort under New Jersey law).

framers of § 1292(b) had in mind."). Accordingly, WTC fails to establish the first standard

necessary for the grant of an interlocutory appeal.

**B.      There Are No Substantial Grounds For A Difference
         Of Opinion As To The Applicable Legal Standards**

WTC has not established that there is a substantial difference of opinion as to the

contractual interpretation of the PHONES Indenture's subordination provisions. To satisfy the

second factor of § 1292(b), the difference of opinion "must arise out of genuine doubt as to the

correct legal standard." *SemCrude,* 2010 U.S. Dist. LEXIS 136391, at *13 (denying leave to

appeal where there was no evidence of "a divergence of opinions among courts so as to

demonstrate doubt over the applicable legal standards"); *Pandolfelli v. JPMorgan Chase Bank,*

*N.A.,* 2011 U.S. Dist. LEXIS 26163, at *5-6 (D.N.J. Mar. 14, 2011) (refusing to grant leave to

appeal where challenged findings were factual and not legal in nature). Inasmuch as the appeal

does not address a controlling question of law, there can be no grounds for a substantial

difference of opinion as to the applicable legal standards.

Furthermore, courts have found that contract interpretation is not properly the subject of

interlocutory appeal. *See In re Bank of New Eng. Corp.,* 218 B.R. 643, 653 (B.A.P. 1st Cir.

1998) ("We conclude that, although Fleet and the trustee found room for argument concerning

their contract's interpretation and its indemnification clause, the case specific issues raised on

appeal do not rise to the level of difficulty and significance required under § 1292(b), and,

therefore, they do not recommend our exercise of discretionary appellate jurisdiction under §

158(a)(3).").

WTC's asserts that "the issues at stake in this appeal have not been squarely addressed in

prior caselaw" and are "novel." (Motion, at 11.) Yet, the Reconsideration Order did not involve

"novel" legal issues, but rather involved the Bankruptcy Court's resolution of a contractual

dispute concerning the scope of the PHONES Indenture's subordination provisions, applying

long-standing and well-established principles of contract interpretation.  Indeed, in reconsidering

its prior decision and altering his opinion denying confirmation, the Bankruptcy Court relied

upon the United States Supreme Court decision *Barnhart v. Thomas*, 540 U.S. 20 (2003), and

other federal court decisions that squarely resolved very similar contract-related disputes.

(Reconsideration Mem., at 12-15); *see also Barnhart*, 540 U.S. at 26 (recognizing that although

the rule of the last antecedent "is not absolute and can assuredly be overcome by other indicia of

meaning, we have said that construing a statue in accord with the rule is 'quite sensible as a

matter of grammar.'"); *In re Enron Creditors Recovery Corp.*, 380 B.R. 307 (S.D.N.Y. 2008)

(applying the "rule of the last antecedent"); *In Re Dura Auto. Sys., Inc.*, 379 B.R. 257, 270

(Bankr. D. Del. 2007) (finding the subordination provision should be considered "within the

context of the entire agreement"); *In re Spansion Inc.*, 426 B.R. 114, 150-51 (Bankr. D. Del.

2010) (holding that the "X-Clause must not be considered on its grammatical structure alone, but

also within the context of the entire agreement.").

    Moreover, WTC claims that the Bankruptcy Court based the Reconsideration Order on an

error in applying "*well-established* principles of bankruptcy law and contract interpretation"

without identifying which "well-established principles" the Bankruptcy Court erred in applying.

(Motion, at 11 (emphasis added).)  Rather, WTC merely lists the reasons it disagrees with the

Reconsideration Order.  WTC's mere disagreement with the Reconsideration Order is not

sufficient to establish that "a substantial ground for dispute" exists.  *See In re AE Liquidation*,

451 B.R. at 348 ("A movant's mere disagreement with the ruling is not a substantial ground for

difference of opinion for Section 1292(b) purposes.") (internal quotations and citations omitted).

Also, WTC's assertion that "well-established principles" were not properly applied in the

Bankruptcy Court's determination of the subordination issue in the Reconsideration Order

supports the position of the Senior Indenture Trustees that there is no difference of opinion as to

the applicable legal principles, but rather coherent agreement about those principles among the

federal courts.  Accordingly, WTC fails to establish the second standard necessary for the grant

of an interlocutory appeal.

**C.**    **An Interlocutory Appeal Will Not Materially
Advance The Termination Of The Litigation**

An interlocutory appeal here would only promote piecemeal consideration of the

Bankruptcy Court's decision in the Reconsideration Order, other related issues present in the

several Allocation Disputes that remain to be decided, and other issues present in considering

confirmation; thereby promoting only judicial inefficiency and unnecessary delay and

proliferation of appeals.  *See In re AE Liquidation*, 451 B.R. at 348; *see also Pandolfelli*, 2011

U.S. Dist. LEXIS 26163 (refusing to grant leave to appeal because it "would not materially

advance the ultimate termination of the litigation, but would instead cause only delay and

additional expense to the parties"); *see also In re Enron Corp.*, 2007 U.S. Dist. LEXIS 70731, at

*8 (S.D.N.Y. Sept. 24, 2007) (finding that an interlocutory appeal only materially advances the

ultimate termination of the litigation if it "promises to advance the time for trial or shorten the

time required for trial.")  Here, WTC posits that the factual underpinnings of the issue that the

Bankruptcy Court decided in the Reconsideration Order are related to other Allocation Disputes

that are scheduled to be heard by the Bankruptcy Court on March 5, 2012.  Yet, it has not sought

expedited treatment of its appeal to ensure its adjudication prior to the hearing on the Allocation

Disputes.

Moreover, WTC's appeal will not advance the eventual distribution of assets of the

Litigation Trust.  That distribution is dependent upon, not only confirmation of a plan of

19

reorganization (the Bankruptcy Court will not consider confirmation of the Debtors' plan until

May 16-17, 2012), but also on the realization of recoveries by the Litigation Trust.  Accordingly,

WTC fails to establish the third standard necessary for the grant of an interlocutory appeal.

**D.    Other Factors Militate Against Interlocutory Appeal**

Even if WTC had met, rather than failed to meet, all three requirements for interlocutory

appeal, "these three criteria do not limit the Court's discretion to grant or deny an interlocutory

appeal." *In re AE Liquidation*, 451 B.R. at 346-47.  For instance "leave to file an interlocutory

appeal may be denied for entirely unrelated reasons such as the state of the appellate docket or

the desire to have a full record before considering the disputed legal issue." *Id.*; *see also*

*SemCrude*, 2010 U.S. Dist. LEXIS 136391 (same).  Moreover, WTC has utterly failed to

demonstrate the "exceptional circumstances" necessary to justify a departure from the basic

policy of postponing review until after the entry of final judgment." *In re AE Liquidation*, 451

B.R. at 346.  Accordingly inasmuch as the Bankruptcy Court has not considered much less

confirmed a plan of reorganization and has yet to resolve other Allocation Disputes arising out of

the same subordination provisions of the PHONES Notes Indenture, the Court must deny WTC's

request for leave to appeal the issues that the Bankruptcy Court decided in the Reconsideration

Order.

**CONCLUSION**

WHEREFORE, for the reasons stated above, the Senior Indenture Trustees respectfully request that the Court (i) determine that WTC's appeal is not from a final order, (ii) refuse to grant leave to appeal from the interlocutory orders, (iii) dismiss WTC's appeal, and (iv) grant such other and further relief as is just and proper.

Dated: January 24, 2012
      Wilmington, Delaware

Respectfully submitted,

KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
212-506-1700

BIFFERATO GENTILOTTI LLC

     /s/ Garvan F. McDaniel
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302-429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, New York 10167
212-609-6800

McCARTER & ENGLISH, LLP

     /s/ James J. Freebery
James J. Freebery (I.D. No. 3498)
Renaissance Centre
405 N. King Street
Wilmington, Delaware 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

**EXHIBIT C**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRIBUNE COMPANY, *et al.*,[1] | ) Case No. 08-13141 (KJC) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Related to ECF No. 10582 & 10702** |

### JOINDER OF AURELIUS CAPITAL MANAGEMENT, LP TO OPPOSITION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERICAS TO WILMINGTON TRUST COMPANY'S MOTION FOR LEAVE TO APPEAL BANKRUPTCY COURT'S DECISION ON SUBORDINATION

Aurelius Capital Management, LP, on behalf of its managed entitles (collectively,

"Aurelius"),[2] by and through its undersigned counsel, hereby joins (the "Joinder") in the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WA TL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WL VI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

{00596320:v1}

1

opposition [ECF No. 10702] (the "Opposition") filed by Law Debenture Trust Company of New

York, in its capacity as successor indenture trustee for a certain series of Senior Notes[3] ("Law

Debenture") and Deutsche Bank Trust Company Americas, in its capacity as successor indenture

trustee for a certain series of Senior Notes ("DBTCA" and together with Law Debenture, the

"Senior Indenture Trustees") to Wilmington Trust Company's ("WTC") Motion For Leave To

Appeal Bankruptcy Court's Decision On Subordination, dated January 10, 2012 [Dkt. No.

10582] (the "Motion").

Aurelius joins the Senior Indenture Trustees' Opposition on the basis set forth therein.

Aurelius reserves all rights to amend or supplement this Joinder.

**WHEREFORE**, Aurelius respectfully requests that the Court (i) determine that the

Orders are not final, (ii) refuse to grant appeal from such Orders, (iii) dismiss WTC's appeal, and

(iv) grant such other and further relief as is just and proper.

Dated: January 24, 2012

AKIN GUMP STRAUSS HAUER & FELD LLP     ASHBY & GEDDES, P.A.

Daniel H. Golden                     William P. Bowden (I.D. No. 2553)
David M. Zensky                      Amanda M. Winfree (I.D. No. 4615)
Philip C. Dublin                     Leigh-Anne M. Raport (I.D. No. 5055)
One Bryant Park                      500 Delaware Avenue, P.O. Box 1150
New York, NY  10036                  Wilmington, DE  19899
(212) 872-1000                       (302) 654-1888

*Counsel for Aurelius Capital Management, LP*

---

[2] Entities managed by Aurelius own a substantial amount of Senior Notes and PHONES Notes.  Neither Aurelius nor
any of its managed entities owe any fiduciary duties to any party in interest in these cases nor is Aurelius or any of
its managed entities an insider of Tribune or any of its affiliates.
[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the
Opposition.

{00596320;v1}

2