# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE SECOND INTERIM FEE APPLICATION OF JONES DAY FOR SERVICES PERFORMED ON BEHALF OF THE SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF TRIBUNE COMPANY

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Second Interim Fee Application of Jones Day for Allowance of Compensation and Reimbursement of Expenses for Services Performed on Behalf of the Special*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

*Committee of the Board of Directors of Tribune Company for the Period from December 1, 2010*

*Through February 28, 2011* [Docket No. 8659] (the "**Fee Application**"). The Fee Application seeks

approval of fees that total $853,993.75 and reimbursement of expenses that total $39,346.46.

Jones Day ("**Jones Day**") serves as counsel to the Special Committee (the "**Special Committee**") of the

Board of Directors to Tribune Company (the "**Board**").

**Background**

1.     On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed

subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") each filed a voluntary

petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in

the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). Under the

Bankruptcy Court's *Order Directing Joint Administration Chapter 11 Cases* dated December 10, 2009

[Docket No. 43], these cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy

Rules.

2.     On April 20, 2010, the Bankruptcy Court entered an *Agreed Order Directing the*

*Appointment of an Examiner* [Docket 4120] (the "**Examiner Order**"), which, among other things,

directed the Office of the United States Trustee (the "**U.S. Trustee**") to appoint an examiner in these

cases pursuant to section 1104(c)(1) of the Bankruptcy Code.

3.     On April 30, 2010, the U.S. Trustee filed a *Notice of Appointment of Examiner* [Docket

No. 4212] appointing Kenneth N. Klee as the Examiner (the "**Examiner**"), which appointment was

approved by the Bankruptcy Court on May 11, 2010 [Docket No. 4320].

4.     On August 3, 2010, the Examiner publicly filed his report setting forth the findings and

conclusions from the Examiner's investigation. *Report of Kenneth N. Klee, as Examiner (Volume One)*

[Docket No. 5247]; *Report of Kenneth N. Klee, as Examiner (Volume Two)* [Docket No. 5248]; *Report*

*of Kenneth N. Klee, as Examiner (Volume Three)* [Docket No. 5249]; and *Report of Kenneth N. Klee,*

*as Examiner (Volume Four)* [Docket No. 5250] (the "**Examiner's Report**").

5.       Debtors filed their first Joint Plan of Reorganization [Docket No. 4008] on April 12, 2010, and an Amended Joint Plan of Reorganization [Docket No. 4690] on June 4, 2010. After the Examiner released his report, according to the Debtors, some of the supporters of the Debtors' plan terminated their support.  As a result, the Board determined that a special committee of independent directors should be formed to oversee the Plan process.  The Special Committee consists of four independent directors of the Board:   Mark Shapiro (Chairman), Jeffrey S. Berg, Maggie Wilderotter and Frank Wood.  According to the Retention Application, "[e]ach one of these directors became members of the Board upon or after the consummation of the transactions that are the subject of the Examiner's Report." *Retention Application*, p. 4.

6.       On August 30, 2010, the Debtors filed the *Application for an Order Authorizing the Retention of Jones Day as Special Counsel for the Special Committee of Tribune Company's Board of Directors Pursuant to 11 U.S.C. §§ 327(e) and 1107, Nunc Pro Tunc to August 22, 2010* [Docket No. 5562] (the "**Retention Application**").  By order dated September 15, 2010 [Docket No. 5704] (the "**Retention Order**"), the Bankruptcy Court approved the Retention Application, *nunc pro tunc* to August 22, 2010.[2]

7.       As described in the Retention Application, at the time the Debtors sought to retain Jones Day as counsel for the Special Committee, the Debtors were already represented by Sidley Austin LLP ("**Sidley**") as primary restructuring co-counsel and Cole, Schotz, Meisel, Forman & Leonard, P.A. ("**Cole Schotz**") as Delaware co-counsel.

---

[2] Pursuant to the Bankruptcy Court's order dated March 10, 2009 [Docket No. 501], Jones Day also serves as Debtors' special counsel in connection with certain antitrust regulatory affairs; the firm files separate fee applications with respect to that retention.

8.      According to the Retention Application, the Special Committee has been specifically charged with certain matters (collectively, the "**Special Committee Matters**") including:

- Reviewing, evaluating and approving, from time to time as appropriate or advisable, the structure, terms or conditions of and authorizing the execution and filing of, any plan of reorganization and any and all amendments, modifications, supplements and exhibits, thereto;

- Taking such action from time to time, as the Special Committee deems appropriate or advisable, to resolve any and all claims, causes of action, avoidance powers or rights, and legal or equitable remedies against the Company or any of its subsidiaries ("**Claims**"), including, without limitation, any Claims arising from any transaction related to the leveraged buy-out of the Company, including, without limitation, the purchase by the Company of its common stock on or about June 4, 2007, the merger and related transactions involving the Company on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such other applicable law, including, without limitation, the review, evaluation and approval of any support agreement or any agreement for the satisfaction, settlement, discharge and/or release of any such Claims;

- Taking such action from time to time as the Special Committee deems appropriate or          advisable to fully inform itself with respect to any Claims or the structure, terms or conditions of any plan of reorganization;

- Reviewing, evaluating and approving, and authorizing the execution and filing of, any and all petitions, schedules, motions, lists, applications, pleadings and other papers, and to taking any and all further actions the Special Committee deems appropriate or advisable in connection with chapter 11 cases; and

- Taking such other actions to assist the Board in carrying out the responsibilities as the Board may delegate to or request of the Special Committee from time to time.

*Retention Application,* pp. 4-5.

9.      According to the Retention Application, the Debtors anticipated that "Jones Day will provide legal services and advise the Special Committee with respect to the Special Committee Matters, and more specifically, advise the Special Committee with respect to (i) any plan of reorganization;

(ii) any and all claims, causes of action, avoidance powers or rights and legal or equitable remedies arising out of the LBO; and (iii) other, similar matters as the Special Committee may request during the pendency of these chapter 11 cases related to the Special Committee Matters." *Retention Application*, p. 5.

10.    The Debtors also represented that "[t]he scope of Jones Day's retention is limited to advising the Special Committee only, and will not duplicate the efforts of Sidley or Cole Schotz, whose role in these cases as primary restructuring counsel to the Debtors will remain unchanged.    The Debtors' management and legal department will continually monitor all of the Debtors' professionals to ensure that they are utilized in an efficient, non-duplicative and cost-efficient manner.    Sidley, Cole Schotz and Jones Day, in turn, will make every effort to minimize the duplication of their work, with Sidley being chiefly responsible for providing general bankruptcy and reorganization advice (as well as advice on related matters) to the Debtors, Cole Schotz acting as Delaware co-counsel for the Debtors, and Jones Day advising the Special Committee on the Special Committee Matters, each consistent with their specific engagements." *Retention Application*, p. 6.

11.    The U.S. Trustee filed an objection to the Retention Application, stating that the "Debtors fail to demonstrate why it is necessary to retain Jones Day on behalf of the Special Committee when there has been no indication that Sidley and Cole Schotz are unable to perform these legal services." *United States Trustee's Objection to Debtors' Application for an Order Authorizing the Retention of Jones Day as Special Counsel for the Special Committee of Tribune Company's Board of Directors Pursuant to 11 U.S.C. §§ 327(e) and 1107, Nunc pro Tunc to August 22, 2010* [Docket 5562] (the "**UST Objection**").    The U.S. Trustee also expressed concern that "this bankruptcy case has generated significant legal fees and expenses for the Debtors' estates ... [and] the U.S. Trustee is very concerned about the costs associated with the retention of yet another estate professional." *UST Objection*, p. 4.

12.     At the hearing on the Retention Application, the Bankruptcy Court heard arguments from the U.S. Trustee and the Debtors' counsel, as well as comments from Jones Day. *Transcript of Proceedings before the Honorable Kevin J. Carey, United States Bankruptcy Judge*, September 15, 2010, pp. 41-49. The U.S. Trustee restated concerns regarding "the necessity of bringing in the extra law firm, Jones Day, which we think will be at a significant cost to the [e]state." *Transcript*, p. 42. Debtors' counsel and Jones Day reiterated their intentions to monitor fees and costs to avoid duplication.

13.     After considering arguments of counsel, the Bankruptcy Court approved the Retention Application, noting specifically that the firms "must be mindful of avoiding duplication of services. There is a fee examiner in this case who drills down very hard on that stuff and the U.S. Trustee's Office, and the Court will be looking at that as well." *Transcript*, p. 48.

14.     Jones Day submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

15.     In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

16.     The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for

Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**").  In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

17.     Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*.  In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

18.     A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment by attorneys is ethically mandated; it is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

19.     The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to Jones Day for review and comment.  The Fee Examiner submits this Final Report for the Court's consideration.  This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also inform the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

## DISCUSSION OF FINDINGS

### Technical Requirements

20.     **Reconciliation of Fees and Expenses.**  The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").  The Fee Examiner determined that the Fees Computed exceed the Fees Requested by $205.00, resulting in an apparent undercharge.  The discrepancy is the result of task hours within several entries that do not equal the time billed for the entries as a whole, as was displayed in **Exhibit A** to the Preliminary Report.  In response, Jones Day agreed to ignore the $205.00 undercharge.  Exhibit A is omitted from this report.

The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the Expenses Computed.  The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

21.     **Block Billing.**[3]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment."  *Local*

---

[3] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing.  Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry.  As an alternative to discounting the entire amount billed for an

*Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[4]   The Fee Examiner identified task descriptions that are technically block billed time entries totaling 101.80 hours with associated fees of $62,270.00, as were displayed in **Exhibit B** to the Preliminary Report. Based upon precedent from this court, however, the entries are not objectionable and the Fee Examiner is not making a recommendation for a fee reduction. Exhibit B is omitted from this report.

22.    **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines* ¶(b)(4)(v). Billing in greater than 0.10 hour increments is a practice that lends itself to the potential of increased rounding of time, thereby increasing the likelihood that the reported time charged is inflated. It is a practice widely criticized by courts and legal scholars and is typically prohibited by sophisticated consumers of legal services as it can result in the billing of time over and above the amount of time actually expended to perform a particular activity. The Fee Examiner observed that three timekeepers each recorded a substantial percentage of their embedded fee entries in whole or half hour time increments. Statistically these billing patterns are extremely improbable. Further, the cumulative daily patterns billed by these timekeepers undermine the reliability of the timekeeping. **Exhibit C** of the Preliminary Report displayed all time entries for these timekeepers, which totaled 67.90 hours with $33,822.50 in associated fees. The tasks billed in half-hour and

---

entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[4] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

full-hour time increments totaled 56.00 hours with $27,875.00 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested Jones Day justify the veracity of these billing patterns. In addition to providing additional information and detail regarding questions raised, the Fee Examiner and the firm agreed to a compromise wherein the firm would reduce its fee request by $3,000.00. Exhibit C is omitted from this report.

**Review of Fees**

23.   **Firm Staffing.**  The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii).*  The Fee Application provided the names, positions, and hourly rates of the 22 Jones Day professionals and paraprofessionals who billed to this matter, consisting of 5 partners/counsel, 10 associates, and 7 legal support. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit D.**[5]

The firm billed a total of 1,821.80 hours with associated fees of $854,198.75.[6] The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner/Counsel | 323.80 | 18% | $270,168.75 | 32% |
| Associate | 1,395.10 | 76% | 558,482.50 | 65% |
| Legal Support | 102.90 | 6% | 25,547.50 | 3% |
| **TOTAL** | 1,821.80 | 100% | $854,198.75 | 100% |

---

[5] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[6] This amount reflects the Fees Computed.

The blended hourly rate for the Jones Day professionals is $482.08 and the blended hourly rate for professionals and paraprofessionals is $468.88.

24.    **Hourly Rate Increases.**  Jones Day increased the hourly rates of timekeepers effective January 1, 2011.

25.    **Timekeepers' Roles.**  A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  Generally, each timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.  However, the Fee Examiner requests additional information regarding the necessity and scope of the role performed by one of the partners.  The time keeper invoiced a total of 0.80 hour for two tasks regarding review of e-files, review of response to collection efforts and communications about file recovery.  **Exhibit E** to the Preliminary Report listed the fee entry totaling $580.00 in associated fees.  Jones Day provided a response that reasonably justified and explained the purpose and necessity of the timekeeper's efforts. After reviewing the information provided, the Fee Examiner makes no recommendation for a fee reduction.  Exhibit E is omitted from this report.

26.    **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more Jones Day timekeepers attended the same meeting, conference, hearing, or other event.  Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees.  The entries, totaling 112.90 hours with $67,505.00 in associated fees, were displayed in **Exhibit F** to the Preliminary Report.  In each instance where multiple timekeepers attended a meeting, conference, hearing or other event, the Fee Examiner identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the attorney leading rather than observing a conference).  The potentially duplicative and unnecessary timekeepers' entries total 59.60 hours with $31,150.00 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit.  The Fee Examiner requested the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, Jones Day first explained that due to the size and complexity of these cases, and the substance of the matters being addressed, the matters often require the attention and collaboration of more than one attorney or more than one partner.  The firm also pointed out that shortened discovery time frames, related motion practice and expedited Special Committee member depositions also resulted in some of the required multiple attendance.  Notwithstanding the firm's belief the attendance was appropriate and necessary, it agreed to a fee reduction of $4,000.00 for fees highlighted in the exhibit.  The Fee Examiner makes no additional recommendation for a fee reduction.  Exhibit F is omitted from this report.

27.    **Intraoffice Conferences.**  Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel.  The Fee Examiner identified billing activities by Jones Day timekeepers describing intraoffice conferences totaling 138.36 hours with $80,098.75 in associated fees, or approximately 9% of the Fees Computed as was displayed in **Exhibit G** to the Preliminary Report.  The Fee Examiner observed that in certain instances

timekeepers described intraoffice conferences attended by more than two timekeepers. The entries describing intraoffice conferences invoiced by more than two firm personnel totaled 108.35 hours with $60,478.75 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner invited comment from Jones Day regarding the necessity of the intraoffice conferences, particularly where more than one timekeeper invoiced fees associated with the same conference.

Jones Day responded by noting the size and complexity of the matters involved here, as well as by discussing the general necessity and reasonableness of the firm's intrafirm communications. The firm also stated that it appropriately staffed this case in a manner to ensure work is performed in an expeditious and cost-effective manner. Notwithstanding the firm's belief its intraoffice conferences are appropriate and necessary, it agreed to a fee reduction of $4,000.00 for fees highlighted in the exhibit. The Fee Examiner makes no additional recommendation for a fee reduction. Exhibit G is omitted from this report.

28. **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

a.    **Vague Communications.**    The Fee Examiner identified entries totaling 76.38 hours with $45,570.00 in associated fees in which a conference or other communication was not described with sufficient detail.  This lack of detail hinders a reviewer's ability to determine the utility and necessity of the activity, and is in violation of the applicable guidelines.  The entries in question were displayed in **Exhibit H** to the Preliminary Report.  The Fee Examiner requested additional information to bring the fee entries into compliance with the Local Rules and UST Guidelines.  In response, Jones Day stated that it believes its entries in the Exhibit were properly compensable but would agree to a fee reduction of $3,000.00 related to the fees in Exhibit H.  The Fee Examiner makes no additional recommendation for a fee reduction and omits Exhibit H from the report.

b.    **Vague Tasks.**    The Fee Examiner reviewed the substantive detail of each billing entry and identified 50.60 hours with $36,180.00 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper.  The entries are displayed in **Exhibit I.**  As reflected in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[7]  The Fee Examiner requested from Jones Day, additional detail regarding the specific work questioned in the Exhibit.  In response, the firm provided an attachment that expanded the descriptions for each questioned task.  Moreover, the Fee Examiner and the firm discussed certain tasks to clarify the precise nature of the services provided.  For certain entries, however, Jones Day agreed not to charge the Debtors' estate, thereby reducing its fee request by $1,510.00.  The Fee Examiner makes no additional recommendation for a fee reduction and Exhibit I is omitted from this report.

---

[7] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented.  *E.g.*, *In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997).  Entries for legal research must identify the issue and explain the research need. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

29.    **Administrative Activities.**  Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm.  Likewise, activities relating to the training and assignment of tasks or the "supervision" of any administrative functions should be considered a cost of doing business and is a factor considered in establishing the firm's hourly rates.  Also included in administrative tasks is time expended to review and edit time entries and invoices.  "Where the time entries require revision to conform to the court's standards, the editing services are administrative functions that are not compensable even if they are performed by a professional." *See, e.g., In Re CF & I Fabricators of Utah*, 131 B.R. 474, 485 (D. Utah 1991).  The Fee Examiner identified 36.80 hours with $10,327.50 in associated fees which appear to be administrative in nature.  The entries were displayed in **Exhibit J** to the Preliminary Report.

In response, the firm provided sufficient information explaining the nature and purpose of the activities, as well as the level of skill and legal acumen required to perform said activities.  Further, Jones Day verified that most of the activities related to the preparation of the fee applications were performed by paralegals and junior associates.  For these reasons, the Fee Examiner makes no recommendation for a fee reduction, and omits exhibit J from this report.

30.    **Clerical Activities.**  Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel[8] or support tasks for which the firm charged greater than market rate.  The Fee Examiner reviewed each timekeeper's billing activities and identified entries that appear to be clerical in nature.  The questioned entries were displayed in **Exhibit K** to the Preliminary Report, and totaled 66.50 hours with

---

[8] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates).  These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

$19,855.00 in associated fees.  In response, Jones Day and the Fee Examiner reached a compromise wherein the firm agreed to a reduction in fees of $9,880.00.  Exhibit K is omitted from this report.

31.    **Extended Hours.**  The Fee Examiner identified five days where a timekeeper billed 15.30, 19.40, 18.90, 16.80, and 16.50 hours, respectively, in single days, for time spent drafting a document privilege log and for related conferences.    These entries, totaling 86.90 hours with $30,415.00 in associated fees, were displayed in **Exhibit L** to the Preliminary Report.  The Fee Examiner invites comment from Jones Day regarding the justification and necessity of the extended hours expended on these activities.  In response, the firm provided sufficient detail to support the justification and necessity of the time billed.  The Fee Examiner makes no recommendation for a fee reduction, and Exhibit L is omitted from this report.

32.    **Travel.**  The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*.  Jones Day properly billed all fee entries describing nonworking travel at half rate.

33.    **Jones Day Retention/Compensation.**  The Fee Examiner identified 70.10 hours with associated fees of $21,617.50 billed to prepare the firm's retention documents and application for compensation, which computes to approximately 2% of the Fees Computed.  The fee entries describing Jones Day's retention/compensation activities are displayed in **Exhibit M**, and are attached hereto for the Court's convenience.

**Review of Expenses**

34.    **Itemization of Expenses.**  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*.  The UST Guidelines further provide

that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*. For the most part, Jones Day provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

35.    **Photocopies.**    The Local Rules provide that copying charges shall not exceed $0.10 per page. *Local Rule 2016-2(e)(iii)*. The firm requested reimbursement for duplication charges calculated at a rate of $0.10 per page.

36.    **Computer Assisted Legal Research.**    The Local Rules provide that computer assisted legal research charges "shall not be more than the actual cost." *Local Rule 2016-2 (e)(iii)*. Jones Day requested reimbursement for computer assisted legal research charges totaling $2,182.70, and the firm's monthly applications stated "[c]omputer-assisted research is billed on a per-search and/or per-minute basis, depending upon the provider."

37.    **Overhead Expenses.**    The UST Guidelines state that nonreimbursable overhead "includes, but is not limited to, word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephones and monthly car phone charges, lighting, heating and cooling, and library and publication charges." *UST Guidelines ¶(b)(5)(vii)*. Jones Day requested reimbursement of $2.00 for binding and $4.20 for supplies. The Fee Examiner requested Jones Day provide an explanation for the necessity and purpose of the charges displayed in **Exhibit N** to the Preliminary Report. In response, Jones Day agreed to reduce its requested expense reimbursement by $6.20. Exhibit N is omitted from this report.

38.    **Overtime Expenses.**  Jones Day requested reimbursement of late work meals totaling $47.18 and late work taxi totaling $184.09.  Although a firm may have a policy that personnel may be reimbursed for travel home when working late and meals for employees while working late, such charges are generally considered part of the firm's overhead.  These charges, totaling $231.27, were displayed in **Exhibit O** to the Preliminary Report.  In response, Jones Day agreed to reduce its requested expense reimbursement by $231.27.  Exhibit O is omitted from this report.

39.    **Local Meals.**  Jones Day requested reimbursement of $151.48 for local meals.  Based on the information provided, the Fee Examiner is unable to determine if the meal charges related to meetings with people outside the firm, or solely involved employees of Jones Day.  The Fee Examiner requested Jones Day provide supplemental information explaining the purpose of the meal charges displayed in **Exhibit P** to the Preliminary Report.  In response, Jones Day agreed to reduce its requested expense reimbursement by $151.48.  Exhibit P is omitted from this report.

40.    **Local Taxi Expenses.**  Jones Day requested reimbursement for charges classified as "local taxi" totaling $73.47.  The Fee Examiner requested that Jones Day provide additional information with regard to the charges that were displayed in **Exhibit Q** to the Preliminary Report, including an explanation for the necessity and purpose of each charge.  In response, Jones Day agreed to reduce its requested expense reimbursement by $73.47.  Exhibit Q is omitted from this report.

41.    **Travel - Airfare.**  The descriptions for the airfare charges did not include the fare class at which the tickets were purchased.  The Fee Examiner requested from Jones Day a statement regarding the fare class for all air travel.  Jones Day verified that all air travel tickets were purchased at the coach fare class.

42.    **Travel Meals.**  The Court established the following per person ceilings for meals: breakfast at $15.00 per person, lunch at $25.00 per person, and dinner at $50.00 per person.  Several meal charges requested for reimbursement appear to exceed the ceiling amounts.  The Fee Examiner requested Jones Day provide the number of attendees for each meal listed in **Exhibit R** to the

Preliminary Report. In response, Jones Day agreed to reduce its requested expense reimbursement by $73.51. Exhibit R is omitted from this report.

43.    **Travel – Hotel Expenses.**    In this Court there has been a practice of limiting reimbursement for domestic lodging to $350.00 per night. Two of the lodging charges requested for reimbursement by the firm appear to exceed the ceiling amount. The questioned lodging costs were displayed in **Exhibit S** to the Preliminary Report. In response, Jones Day agreed to reduce its requested expense reimbursement by $307.09. Exhibit S is omitted from this report.

## CONCLUSION

The Fee Examiner submits this final report regarding the Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $828,603.75 ($853,993.75 minus $25,390.00) and reimbursement of expenses in the amount of $38,503.44 ($39,346.46 minus $843.02), for the period from December 1, 2010 through February 28, 2011. The findings are set forth in the summary on the following page.

**JONES DAY – Special Committee**

**SUMMARY OF FINDINGS**

**Second Interim Fee Application (December 1, 2010 through February 28, 2011)**

**A.        Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $853,993.75 | |
| Expenses Requested | 39,346.46 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $893,340.21 |
| | | |
| Fees Computed | $854,198.75 | |
| Expenses Computed | 39,346.46 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $893,545.21 |
| | | |
| Discrepancy in Fees | ($     205.00) | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($     205.00) |

**B.        Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---:|---:|
| Fees Requested | $853,993.75 | |
| *Agreed Reduction for Time Increments* | *($ 3,000.00)* | |
| *Agreed Reduction for Meetings, Conferences, Hearings, and Other Events* | *(4,000.00)* | |
| *Agreed Reduction for Intraoffice Conferences* | *(4,000.00)* | |
| *Agreed Reduction for Vague Communications* | *(3,000.00)* | |
| *Agreed Reduction for Vague Tasks* | *(1,510.00)* | |
| *Agreed Reduction for Clerical Activities* | *(9,880.00)* | |
| Subtotal | *($25,390.00)* | |
| | | |
| RECOMMENDED FEE ALLOWANCE | | $828,603.75 |
| | | |
| Expenses Requested | $39,346.46 | |
| *Agreed Reduction for Overhead Expenses* | *($    6.20)* | |
| *Agreed Reduction for Overtime Expenses* | *(231.27)* | |
| *Agreed Reduction for Local Meals* | *(151.48)* | |
| *Agreed Reduction for Local Taxi Expenses* | *(73.47)* | |
| *Agreed Reduction for Travel Meals* | *(73.51)* | |
| *Agreed Reduction for Travel – Hotel Expenses* | *(307.09)* | |
| Subtotal | *($843.02)* | |
| | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | 38,503.44 |
| | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | $867,107.19 |

Respectfully submitted,

**STUART MAUE**

By: _____

John F. Theil, Esq.
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 10th day of May, 2012.

David Klauder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
William E. Chipman Jr., Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

David G. Heiman, Esq.
Jones Day – Special Committee
901 Lakeside Avenue, North Point
Cleveland, OH 44114-1190

John F. Theil, Esq.

-22-

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Jones Day**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|----------|------|----------|--------------|--------------|----------------|---------------|
| 3664 | Heiman, David G. | PARTNER/COUNSEL | $487.50 | $975.00 | 121.00 | $111,787.50 |
| 3404 | Sherman, Fredrick E. | PARTNER/COUNSEL | $800.00 | $800.00 | 97.40 | $77,920.00 |
| 0350 | Erens, Brad B. | PARTNER/COUNSEL | $387.50 | $800.00 | 94.30 | $70,798.75 |
| 1662 | Cullen Jr, Thomas F. | PARTNER/COUNSEL | $875.00 | $900.00 | 10.30 | $9,082.50 |
| 4535 | Kitslaar, Elizabeth C. | PARTNER/COUNSEL | $725.00 | $725.00 | 0.80 | $580.00 |
| | No. of Billers for Position: 5 | Blended Rate for Position: | $834.37 | | 323.80 | $270,168.75 |
| | | | | | % of Total:  17.77% | % of Total:  31.63% |
| 5147 | Marvin, Lynn M. | ASSOCIATE | $475.00 | $500.00 | 446.20 | $220,102.50 |
| 2676 | Strohbehn, Xochitl S. | ASSOCIATE | $325.00 | $350.00 | 311.90 | $108,142.50 |
| 2660 | Rabinowitz, Alan M. | ASSOCIATE | $325.00 | $350.00 | 265.40 | $89,802.50 |
| 2668 | Ajudua, Helena O. | ASSOCIATE | $325.00 | $350.00 | 259.60 | $89,527.50 |
| 2514 | Hall, David A. | ASSOCIATE | $525.00 | $525.00 | 37.60 | $19,740.00 |
| 1342 | Shafer, David B. | ASSOCIATE | $375.00 | $425.00 | 28.10 | $11,587.50 |
| 1578 | Mamedova, Kamilla | ASSOCIATE | $375.00 | $375.00 | 25.90 | $9,712.50 |
| 0180 | Chi, Dennis N. | ASSOCIATE | $400.00 | $475.00 | 8.10 | $3,585.00 |
| 0785 | Hoffman, Timothy | ASSOCIATE | $525.00 | $525.00 | 6.80 | $3,570.00 |
| 1768 | Schaeffer, Adam R. | ASSOCIATE | $475.00 | $500.00 | 5.50 | $2,712.50 |
| | No. of Billers for Position: 10 | Blended Rate for Position: | $400.32 | | 1,395.10 | $558,482.50 |
| | | | | | % of Total:  76.58% | % of Total:  65.38% |
| 9161 | Sobczak, Arleta K. | LEGAL SUPPORT | $250.00 | $250.00 | 71.30 | $17,825.00 |
| 2406 | Cherence, Danielle M. | LEGAL SUPPORT | $250.00 | $250.00 | 20.00 | $5,000.00 |
| 8923 | Barry, Thomas J. | LEGAL SUPPORT | $250.00 | $250.00 | 4.20 | $1,050.00 |
| 3284 | Farrington, Alicia C. | LEGAL SUPPORT | $275.00 | $275.00 | 2.50 | $687.50 |
| 6427 | Wenderoth, Cathy M. | LEGAL SUPPORT | $250.00 | $250.00 | 2.00 | $500.00 |
| 2353 | Gatchalian, Jan D. | LEGAL SUPPORT | $150.00 | $150.00 | 2.50 | $375.00 |
| 3073 | Hirtzel, Denise M. | LEGAL SUPPORT | $275.00 | $275.00 | 0.40 | $110.00 |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Jones Day**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| | No. of Billers for Position: 7 | Blended Rate for Position: | $248.28 | | 102.90 | $25,547.50 |
| | | | | | % of Total:   5.65% | % of Total:   2.99% |
| | Total No. of Billers: 22 | Blended Rate for Report: | $468.88 | | 1,821.80 | $854,198.75 |

EXHIBIT M

JONES DAY RETENTION/COMPENSATION

Jones Day

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Chi, D | 8.10 | 3,585.00 |
| Erens, B | 3.10 | 2,432.50 |
| Shafer, D | 5.00 | 2,125.00 |
| Sobczak, A | 53.90 | 13,475.00 |
| | 70.10 | $21,617.50 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Fee Applications/Retention Preparation | 70.10 | 21,617.50 |
| | 70.10 | $21,617.50 |

EXHIBIT M
JONES DAY RETENTION/COMPENSATION
Jones Day

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|
| 12/01/10 Wed | Erens, B 318763-40/84 | 0.30 | 0.30 | 232.50 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation*<br>OFFICE CONFERENCES WITH CHI REGARDING NOVEMBER BILL. |
| 12/02/10 Thu | Sobczak, A 318763-40/97 | 4.00 | 4.00 | 1,000.00 | 0.20<br>3.80 | F<br>F | 1<br>2 | *MATTER NAME: Fee Applications/Retention Preparation*<br>TELEPHONE CONFERENCE WITH CHI REGARDING NOVEMBER 2010 INVOICE (.20);<br>REVIEW AND REVISE NOVEMBER 2010 INVOICE (3.80). |
| 12/03/10 Fri | Sobczak, A 318763-40/95 | 1.80 | 1.80 | 450.00 | 0.50<br>1.00<br>0.20<br>0.10 | F<br>F<br>F<br>F | 1<br>2<br>3<br>4 | *MATTER NAME: Fee Applications/Retention Preparation*<br>E-MAILS AND PHONE CONFERENCES WITH STANO AND JANIK REGARDING NOVEMBER BILL (.50);<br>REVIEW AND EDIT NOVEMBER 2010 BILL (1.00);<br>SCAN AND E-MAIL NOVEMBER 2010 BILL TO SOFFER (.20);<br>E-MAIL WITH SOFFER REGARDING SAME (.10). |
| 12/06/10 Mon | Sobczak, A 318763-40/94 | 6.20 | 6.20 | 1,550.00 | 3.90<br>1.00<br>0.50<br>0.20<br>0.30<br>0.20<br>0.10 | F<br>F<br>F<br>F<br>F<br>F<br>F | 1<br>2<br>3<br>4<br>5<br>6<br>7 | *MATTER NAME: Fee Applications/Retention Preparation*<br>REVIEW AND REVISE NOVEMBER 2010 BILL (3.90);<br>REVIEW BACK UP INFORMATION REGARDING SAME (1.00);<br>NUMEROUS E-MAILS WITH MARTINEZ, STANO, GILBERT, HIRTZEL AND CHI REGARDING SAME (.50);<br>ADDITIONAL E-MAILS AND PHONE CONFERENCE WITH SOFFER REGARDING BILL AND SUPPLIED BACK UP INFORMATION (.20);<br>REVIEW DISBURSEMENTS FOR NOVEMBER 2010 BILL (.30);<br>REVIEW PLAN TIME NARRATIVES (.20);<br>E-MAIL WITH CHI REGARDING TIME NARRATIVE (.10). |
| 12/07/10 Tue | Chi, D 318763-40/79 | 1.00 | 1.00 | 400.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation*<br>DRAFT AND REVISE THIRD MONTHLY FEE APPLICATION. |
| 12/07/10 Tue | Sobczak, A 318763-40/92 | 2.00 | 2.00 | 500.00 | 1.50<br>0.30<br>0.20 | F<br>F<br>F | 1<br>2<br>3 | *MATTER NAME: Fee Applications/Retention Preparation*<br>REVIEW AND EDIT NOVEMBER 2010 BILL (1.50);<br>NUMEROUS PHONE CONFERENCES WITH JANICK, SIMONE AND AZARCON REGARDING CHARGES (.30);<br>E-MAILS TO AND FROM JANICK, SIMONE AND AZARCON REGARDING SAME (.20). |
| 12/08/10 Wed | Chi, D 318763-40/80 | 0.30 | 0.30 | 120.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation*<br>DRAFT AND REVISE THIRD MONTHLY FEE APPLICATION. |
| 12/08/10 Wed | Erens, B 318763-40/85 | 0.30 | 0.30 | 232.50 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation*<br>REVIEW MONTHLY BILLS FOR NOVEMBER AND DECEMBER. |
| 12/09/10 Thu | Chi, D 318763-40/81 | 1.30 | 1.30 | 520.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation*<br>DRAFT AND REVISE THIRD MONTHLY FEE APPLICATION. |
| 12/10/10 Fri | Chi, D 318763-40/82 | 0.30 | 0.30 | 120.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation*<br>DRAFT AND REVISE THIRD MONTHLY FEE APPLICATION IN ACCORDANCE WITH HALL'S COMMENTS. |

~ See the last page of exhibit for explanation

EXHIBIT M
JONES DAY RETENTION/COMPENSATION
Jones Day

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|---|-------------|
| 12/10/10 Fri | Erens, B 318763-40/86 | 0.60 | 0.60 | 465.00 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>REVIEW AND REVISE NOVEMBER BILL. |
| 12/10/10 Fri | Sobczak, A 318763-40/91 | 0.10 | 0.10 | 25.00 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>E-MAIL WITH CHI REGARDING STATUS OF NOVEMBER BILL. |
| 12/13/10 Mon | Erens, B 318763-40/87 | 0.20 | 0.20 | 155.00 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>OFFICE CONFERENCE WITH CHI REGARDING NOVEMBER BILL. |
| 12/14/10 Tue | Chi, D 318763-40/83 | 0.60 | 0.60 | 240.00 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>DRAFT AND REVISE THIRD MONTHLY FEE APPLICATION. |
| 12/14/10 Tue | Sobczak, A 318763-40/90 | 2.60 | 2.60 | 650.00 | 2.40<br>0.20 | F<br>F | 1<br>2 | MATTER NAME: Fee Applications/Retention Preparation<br>DRAFT, REVIEW AND REVISE EXHIBITS FOR NOVEMBER 2010 FEE APPLICATION (2.40):<br>E-MAILS AND PHONE CONFERENCE WITH CHI AND SOFFER REGARDING SAME (.20). |
| 12/16/10 Thu | Erens, B 318763-40/88 | 0.30 | 0.30 | 232.50 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>FINALIZE NOVEMBER BILL. |
| 12/16/10 Thu | Sobczak, A 318763-40/96 | 0.50 | 0.50 | 125.00 | 0.10<br>0.30<br>0.10 | F<br>F<br>F | 1<br>2<br>3 | MATTER NAME: Fee Applications/Retention Preparation<br>REVIEW INVOICES FOR COURTCALL APPEARANCES (.10):<br>PHONE CONFERENCE WITH COURTCALL REPRESENTATIVE REGARDING SAME (.30):<br>E-MAILS WITH BUNCK REGARDING SAME (.10): |
| 12/21/10 Tue | Sobczak, A 318763-40/93 | 0.50 | 0.50 | 125.00 | 0.10<br>0.30<br>0.10 | F<br>F<br>F | 1<br>2<br>3 | MATTER NAME: Fee Applications/Retention Preparation<br>REVIEW COURTCALL TELEPHONIC APPEARANCE CHARGES APPLIED TO HALL AND ERENS (.10):<br>PHONE CONVERSATION WITH COURTCALL REPRESENTATIVE REGARDING INVOICES (.30):<br>REVIEW E-MAILED INVOICES FOR COURTCALL APPEARANCES AND FORWARD FOR PROCESSING (.10). |
| 12/22/10 Wed | Erens, B 318763-40/89 | 0.20 | 0.20 | 155.00 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>REVIEW AND REVISE FEE APPLICATION. |
| 01/03/11 Mon | Chi, D 329315-40/17 | 0.70 | 0.70 | 332.50 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>FINALIZE AND FILE THIRD MONTHLY FEE APPLICATION. |
| 01/05/11 Wed | Chi, D 329315-40/16 | 0.20 | 0.20 | 95.00 | | F | 1 | MATTER NAME: Fee Applications/Retention Preparation<br>CALL WITH SOFFER (FINANCIAL) REGARDING ESTIMATED DECEMBER 2010 FEES AND EXPENSES. |
| 01/07/11 Fri | Chi, D 329315-40/15 | 1.20 | 1.20 | 570.00 | 1.00<br>0.20 | F<br>F | 1<br>2 | MATTER NAME: Fee Applications/Retention Preparation<br>DRAFT AND REVISE FIRST INTERIM FEE APPLICATION (1.00):<br>E-MAILS WITH SOBCZAK REGARDING SAME (.20). |

~ See the last page of exhibit for explanation

EXHIBIT M

JONES DAY RETENTION/COMPENSATION

Jones Day

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|-------------|
| 01/07/11 Fri | Sobczak, A 329315-40/30 | 3.10 | 3.10 | 775.00 | 1.00 0.20 1.50 0.20 0.20 | F F F F F | MATTER NAME: Fee Applications/Retention Preparation 1 DRAFT, REVIEW AND REVISE COVER SHEETS AND EXHIBITS FOR FIRST INTERIM FEE APPLICATION (1.00); 2 E-MAILS WITH CHI REGARDING SAME (.20); 3 BEGIN REVIEW AND REVISIONS OF DECEMBER 2010 BILL (1.50); 4 E-MAILS WITH MARTINEZ REGARDING ERENS' DISBURSEMENT (.20); 5 MULTIPLE E-MAILS WITH CHI REGARDING SAME (.20). |
| 01/09/11 Sun | Erens, B 329315-40/12 | 0.20 | 0.20 | 160.00 | | F | MATTER NAME: Fee Applications/Retention Preparation 1 REVIEW INTERIM FEE APPLICATIONS. |
| 01/11/11 Tue | Sobczak, A 329315-40/21 | 5.80 | 5.80 | 1,450.00 | 5.40 0.10 0.10 0.20 | F F F F | MATTER NAME: Fee Applications/Retention Preparation 1 REVIEW AND REVISE DECEMBER 2010 BILL (5.40); 2 E-MAILS WITH CHI REGARDING TIME NARRATIVE ISSUES (.10); 3 E-MAILS WITH LITIGATION TEAM REGARDING SAME (.10); 4 E-MAILS WITH THOMAS REGARDING DISBURSEMENT BACK UP FOR CULLEN CHARGES (.20). |
| 01/12/11 Wed | Chi, D 329315-40/14 | 0.10 | 0.10 | 47.50 | | F | MATTER NAME: Fee Applications/Retention Preparation 1 COORDINATE FILING OF FIRST INTERIM FEE APPLICATION. |
| 01/12/11 Wed | Sobczak, A 329315-40/28 | 2.30 | 2.30 | 575.00 | 2.00 0.20 0.10 | F F F | MATTER NAME: Fee Applications/Retention Preparation 1 REVIEW AND REVISE DECEMBER 2010 BILL (2.00); 2 E-MAILS WITH THOMAS REGARDING DISBURSEMENT CHARGED BY CULLEN (.20); 3 E-MAILS WITH KILLION REGARDING DISBURSEMENT GUIDELINES (.10). |
| 01/13/11 Thu | Sobczak, A 329315-40/27 | 2.50 | 2.50 | 625.00 | 0.10 0.20 2.00 0.20 | F F F F | MATTER NAME: Fee Applications/Retention Preparation 1 E-MAILS WITH THOMAS REGARDING CULLEN DISBURSEMENT CHARGE (.10); 2 E-MAILS WITH CHI REGARDING SAME (.20); 3 REVIEW AND REVISE DECEMBER 2010 BILL (2.00); 4 E-MAILS WITH SOFFER REGARDING SAME (.20). |
| 01/18/11 Tue | Sobczak, A 329315-40/26 | 3.00 | 3.00 | 750.00 | 2.00 0.20 0.50 0.20 0.10 | F F F F F | MATTER NAME: Fee Applications/Retention Preparation 1 REVIEW AND REVISE DECEMBER 2010 BILL (2.00); 2 PHONE CONFERENCE WITH CHI REGARDING DISBURSEMENTS (.20); 3 EXTENDED CONFERENCE WITH COURTCALL REPRESENTATIVE REGARDING INVOICES (.50); 4 REVIEW INVOICE FOR DECEMBER 6 COURT APPEARANCE OF HALL (.20); 5 E-MAILS WITH BUNCK REGARDING SAME (.10). |
| 01/19/11 Wed | Sobczak, A 329315-40/24 | 3.00 | 3.00 | 750.00 | 0.80 0.20 2.00 | F F F | MATTER NAME: Fee Applications/Retention Preparation 1 PHONE CONFERENCES AND E-MAILS WITH VARIOUS REPRESENTATIVES OF COURTCALL REGARDING INVOICES FOR TELEPHONIC APPEARANCES (.80); 2 E-MAILS WITH BUNCK REGARDING SAME (.20); 3 REVIEW AND REVISE DECEMBER 2010 BILL (2.00). |

~  See the last page of exhibit for explanation

EXHIBIT M

JONES DAY RETENTION/COMPENSATION

Jones Day

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|---|-------------|
| 01/20/11 Thu | Sobczak, A 329315-40/22 | 2.20 | 2.20 | 550.00 | 0.10 0.10 1.90 0.10 | F F F F | 1 2 3 4 | *MATTER NAME: Fee Applications/Retention Preparation* REVIEW INVOICE FOR HALL NOV 29, 2010 TELEPHONIC COURTCALL APPEARANCE (.10); E-MAILS WITH BUNCK REGARDING SAME (.10). REVIEW AND REVISE TIME NARRATIVES IN DECEMBER 2010 BILL (1.90); DELIVER BILL TO CHI FOR FURTHER REVIEW (.10). |
| 01/26/11 Wed | Sobczak, A 329315-40/25 | 0.10 | 0.10 | 25.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* E-MAILS WITH CHI REGARDING STATUS OF DECEMBER BILL. |
| 01/27/11 Thu | Chi, D 329315-40/20 | 2.40 | 2.40 | 1,140.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* DRAFT AND REVISE FOURTH MONTHLY FEE APPLICATION. |
| 01/27/11 Thu | Erens, B 329315-40/18 | 0.70 | 0.70 | 560.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* REVIEW AND REVISE DECEMBER FEE APPLICATION. |
| 01/28/11 Fri | Shafer, D 329315-40/13 | 0.80 | 0.80 | 340.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* REVISE BILL AND MONTHLY FEE APPLICATION FOR DECEMBER 2010. |
| 01/30/11 Sun | Shafer, D 329315-40/19 | 0.60 | 0.60 | 255.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* REVISE MONTHLY FEE APPLICATION FOR DECEMBER 2010. |
| 01/31/11 Mon | Sobczak, A 329315-40/29 | 2.50 | 2.50 | 625.00 | 0.10 1.50 0.10 0.20 0.60 | F F F F F | 1 2 3 4 5 | *MATTER NAME: Fee Applications/Retention Preparation* REVIEW E-MAIL FROM SHAFER REGARDING DECEMBER 2010 BILL (.10); REVIEW AND REVISE COVER SHEETS, EXHIBITS AND DECEMBER FEE APPLICATION (1.50); E-MAILS AND PHONE CALL WITH SHAFER REGARDING DISBURSEMENT ISSUE (.10) AND INFORMATION REGARDING DISCOUNTS AND WRITE OFFS (.20); PRINT OFF AND REVIEW PREVIOUSLY FILED MONTHLY FEE APPLICATIONS (.60). |
| 02/01/11 Tue | Shafer, D 339627-40/56 | 1.80 | 1.80 | 765.00 | 1.30 0.30 0.20 | F F F | 1 2 3 | *MATTER NAME: Fee Applications/Retention Preparation* REVISE FOURTH MONTHLY FEE APPLICATION FOR JONES DAY AND PREPARE FOR FILING (1.30); E-MAILS TO AND FROM SOBCZAK (.30) AND PHONE CONFERENCE WITH SOBCZAK REGARDING SAME (.20). |
| 02/01/11 Tue | Sobczak, A 339627-40/58 | 2.50 | 2.50 | 625.00 | 0.20 2.00 0.30 | F F F | 1 2 3 | *MATTER NAME: Fee Applications/Retention Preparation* PHONE CONFERENCE WITH SHAFER REGARDING DECEMBER FEE APPLICATION COVER PAGES (.20); REVIEW, RECALCULATE AND REVISE FEE APPLICATION COVER PAGES (2.00); E-MAILS WITH SHAFER REGARDING SAME (.30). |
| 02/02/11 Wed | Shafer, D 339627-40/57 | 0.40 | 0.40 | 170.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* COMMUNICATE WITH LOCAL DELAWARE COUNSEL TO COORDINATE FILING OF JONES DAY'S FOURTH MONTHLY FEE APPLICATION. |
| 02/07/11 Mon | Sobczak, A 339627-40/60 | 0.30 | 0.30 | 75.00 | | F | 1 | *MATTER NAME: Fee Applications/Retention Preparation* BEGIN REVIEW OF AND EDITS TO JANUARY 2011 BILL. |

~ See the last page of exhibit for explanation

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|---|-------------|
| 02/08/11 | Sobczak, A | 3.70 | 3.70 | 925.00 | | | | *MATTER NAME: Fee Applications/Retention Preparation* |
| Tue | 339627-40/61 | | | | 3.50 | F | 1 | REVIEW AND EDIT JANUARY 2011 BILL (3.50); |
| | | | | | 0.20 | F | 2 | E-MAIL TO AND FROM CHERENCE REGARDING TIME NARRATIVES (.20). |
| 02/10/11 | Sobczak, A | 2.50 | 2.50 | 625.00 | | | | *MATTER NAME: Fee Applications/Retention Preparation* |
| Thu | 339627-40/59 | | | | 2.30 | F | 1 | REVIEW AND REVISE JANUARY 2011 BILL (2.30); |
| | | | | | 0.20 | F | 2 | E-MAIL TO AND FROM SOFFER (FINANCIAL) AND SHAFER REGARDING SAME (.20). |
| 02/15/11 | Sobczak, A | 2.00 | 2.00 | 500.00 | | | | *MATTER NAME: Fee Applications/Retention Preparation* |
| Tue | 339627-40/62 | | | | 1.50 | F | 1 | REVIEW AND REVISE JANUARY 2011 BILL (1.50); |
| | | | | | 0.10 | F | 2 | E-MAIL TO SOFFER (FINANCIAL) AND SHAFER REGARDING SAME (.10); |
| | | | | | 0.20 | F | 3 | PHONE CONFERENCE WITH COURTCALL REPRESENTATIVE REQUESTING INVOICES (.20); |
| | | | | | 0.20 | F | 4 | REVIEW INVOICES AND FORWARD TO BUNCK FOR PROCESSING (.20). |
| 02/24/11 | Shafer, D | 1.40 | 1.40 | 595.00 | | | | *MATTER NAME: Fee Applications/Retention Preparation* |
| Thu | 339627-40/63 | | | | 0.50 | F | 1 | REVIEW AND REVISE DRAFT BILL (.50); |
| | | | | | 0.90 | F | 2 | DRAFT AND REVISE FIFTH MONTHLY FEE APPLICATION (.90). |
| 02/25/11 | Sobczak, A | 0.70 | 0.70 | 175.00 | | | | *MATTER NAME: Fee Applications/Retention Preparation* |
| Fri | 339627-40/64 | | | | 0.60 | F | 1 | REVIEW AND REVISE COVER PAGES TO JANUARY 2011 MONTHLY BILL (.60); |
| | | | | | 0.10 | F | 2 | E-MAIL TO AND FROM SHAFER REGARDING SAME (.10). |
| 02/28/11 | Erens, B | 0.30 | 0.30 | 240.00 | | | | *MATTER NAME: Fee Applications/Retention Preparation* |
| Mon | 339627-40/65 | | | | | F | 1 | REVIEW JANUARY BILL. |
| Total | | | 70.10 | $21,617.50 | | | | |
| | Number of Entries: | 47 | | | | | | |

EXHIBIT M

JONES DAY RETENTION/COMPENSATION

Jones Day

### SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Chi, D | 8.10 | 3,585.00 |
| Erens, B | 3.10 | 2,432.50 |
| Shafer, D | 5.00 | 2,125.00 |
| Sobczak, A | 53.90 | 13,475.00 |
| | 70.10 | $21,617.50 |

### SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Fee Applications/Retention Preparation | 70.10 | 21,617.50 |
| | 70.10 | $21,617.50 |

(-) REASONS FOR TASK HOUR ASSIGNMENTS

F        FINAL BILL