# EXHIBIT A

GBH Claim

B10 (Official Form 10) (4/10)

| United States Bankruptcy Court - for the District of Delaware | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>**Publishers Forest Products Co. of Washington** | Case Number:<br>**08-13201** |
|---|---|

*NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**GBH Investments, LLC.** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>**GBH Investments, LLC.**<br>**c/o Christine M. Tobin**<br>**Bush Strout & Kornfeld**<br>**601 Union St. #5000**<br>**Seattle, WA 98101-2373**<br>Telephone number: | **Court Claim Number:** _____<br>*(if known)*<br><br>Filed on: ___ ___ ___ |
| Name and address where payment should be sent (if different from above).<br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:    $10 Million-$13 Million (est) | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br><br>☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). |
| 2. Basis for Claim: Environmental Cleanup-RCW70.105D<br>    (See instruction #2 on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). |
| 3. Last four digits of any number by which creditor identifies debtor:_____ _____ _____ _____<br><br>    3a. Debtor may have scheduled account as:_____ _____<br>    (See instruction #3a on reverse side.) | ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>    Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>    Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>    Describe:<br><br>    Value of Property:$_____ _____ _____  Annual Interest Rate_____ _____ _____ | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___ _____). |
| | Amount entitled to priority:<br><br>$ _____ _____ _____ |
| Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____  Basis for perfection:_____<br><br>Amount of Secured Claim: $_____ _____  Amount Unsecured: $_____ _____ | * Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 6. Credits: The amount of all p_____proof of claim. | |
|---|---|

Filed: USBC - District of Delaware
Tribune Company, Et Al.
08-13141 (KJC)          0000006480

| 7. Documents: Attach redacted purchase orders, invoices, item agreements. You may also attach perfection of a security interest.<br><br>DO NOT SEND ORIGINAL D SCANNING.<br><br>If the documents are not available, please explain. | es,<br>d security<br>of<br>rse rules<br><br>FTER | **FOR COURT USE ONLY**<br><br>**FILED / RECEIVED**<br><br>MAY 2 0 2010<br><br>**EPIQ BANKRUPTCY SOLUTIONS, LLC** |
|---|---|---|

| Date:<br><br>May 20, 2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Richard Lemieux, Member    *Richard R. Lemieux* |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## SUMMARY OF BASIS OF CLAIM

GBH Investments, LLC ("Claimant") owns adjacent parcels of property legally described as follows (together, the "Site"):

1.    Geo Parcel ID:  350230-0-214-003

     Abbreviated Legal:  (4.1500 ac) ANACORTES TIDE LANDS TR 7 PL 11

2.    Geo Parcel ID:  350230-0-216-0001

     Abbreviated Legal:  (0.3400 ac) ANACORTES TIDE LANDS WLY 30FT TR 8 PL 11

3.    Geo Parcel ID:  350230-0-221-0004

     Abbreviated Legal:  (6.6900 ac) TAX 18 & 18A BEG 402.83FT SELY FR PT BT WTRS 8 & 9 PL 11 TH SLY ALG MEAN LI 402.83 FT TH

4.    Geo Parcel ID:  350230-0-222-003

     Abbreviated Legal:  (6.7000 ac) ANACORTES TIDE LANDS TAX 19 BAT PT BTW TRS 8 & 9 PL 11 TH SELY ALG MEAN LI 402.83FT TH

5.    Geo Parcel ID:  350230-0-213-0012

     Abbreviated Legal:  35TH & V. ANACORTES, WA 98221; (7.5600 ac) ACREAGE ACCOUNT, ACRES 7.56.  ALL THAT PORTION OF TRACTS 5 AND 6, PLATE 11, ANACORTES TID

6.    Geo Parcel ID: 350230-0-220-0005

     Abbreviated Legal:  (8.6000 ac) TAX 17 BAAP BTW TRS 10 & 11 PL 11 TH NW LY ALG MEAN LI OF TR 10 PL 11 402.83FT TH E PLW

7.    Geo Parcel ID:  350230-0-215-0002

     Abbreviated Legal:  ANACORTES TIDE LANDS LESS WLY 30FT TR 8 PL 11

Publishers Forest Products Co. of Washington owned the Site from 1969 to 1984. The Site was operated as a box factory, a planning mill and a plywood mill from the early 1900's to 1992. Due to the release of hazardous substances from the operations of the Site, the Site is now subject to RCW 70.105D – Hazardous Waste Cleanup – Model Toxics Control Act.

To the extent hazardous material was released from the Site in the 15 year period during which the Debtor owned the Site, the Debtor is jointly and severally liable for clean up costs pursuant to RCW 70.105D.040.

Attached herewith is a copy of the Agreed Order entered into between Claimant and the State of Washington, Department of Ecology ("DOE") relating to the initial stages of a cleanup plan.

At a meeting with DOE on May 19, 2010, GBH was advised that DOE estimates the costs of the cleanup will be between $10 million and $13 million.

As set forth in the Declaration of Richard Lemieux of GBH Investments LLC, filed herewith, Claimant received neither actual nor constructive notice of Debtor's bankruptcy until April 20, 2010.



Ecology home > Toxics Cleanup > Sites > PSI > Anacortes > Custom Plywood Mill Site

# Custom Plywood Mill Site

*A PUGET SOUND INITIATIVE site – Reaching the goal of a healthy, sustainable Puget Sound now and forever*





## SITE DESCRIPTION

A waterfront site in Anacortes that was used as a mill and box factory, Custom Plywood Mill will be investigated for cleanup under the state's Puget Sound Initiative. The site is currently vacant property with abandoned building remnants and debris. A sawmill and wood-box factory, and then a plywood mill, operated on the site for almost a century. Mill features included a hog-fuel boiler, drum storage tank area, transformer yard, above-ground storage tanks containing fuel oil, gasoline, diesel and/or propane, phenolic formaldehyde resin and caustic storage tanks (both used in making plywood glue), a machine shop, a metal shop, and an area for spraying paint and oil.

## SITE INFORMATION

**Facility Site ID # 6858**

**Location:**
Anacortes, Skagit County



**Contact:**
Hun Seak Park Site Manager
(360) 407-7189

**Status:** Ranked, Remedial Action in Progress [?]

## SITE DOCUMENTS

- Final Remedial Investigation/Feasibility Study Work Plan - February 3, 2009
- Historical Evaluation of the Tugboat *Enchantress* (45SK369) August 2008
  - Appendix A
  - Appendices B and C
- Fact Sheet - November 30, 2007
- Agreed Order - March 17, 2008
  - Exhibit A - Site Location Diagrams:
    - Exhibit A a1
    - Exhibit A a2
    - Exhibit A a3
    - Exhibit A-4a
  - Exhibit B - Policy 840

- Exhibit C  - Public Participation Plan
- Exhibit D  - Schedule
- Attachment A - Historical Releases Site Investigation

**Related Information**
- Watershed Information for WRIA 3

**Additional Resources**
- Acronyms used by the Toxic Cleanup Program
- Cleanup Process: Major Steps & Definitions
- Data Submittal Requirements for All Cleanup Sites
- Facility/Site Atlas
- Toxics Cleanup publications

Copyright © Washington State Department of Ecology. See http://www.ecy.wa.gov/copyright.html.

**STATE OF WASHINGTON**
**DEPARTMENT OF ECOLOGY**

In the Matter of Remedial Action by:

**G B H Investments, LLC**

AGREED ORDER

No. DE 5235

TO:    Richard LeMieux
       G B H Investments, LLC
       5005 9th East
       Idaho Falls, ID 83404

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................2
II.     JURISDICTION ..................................................................................................2
III.    PARTIES BOUND ..............................................................................................2
IV.     DEFINITIONS .....................................................................................................3
V.      FINDINGS OF FACT ..........................................................................................3
VI.     ECOLOGY DETERMINATIONS ........................................................................6
VII.    WORK TO BE PERFORMED .............................................................................7
VIII.   TERMS AND CONDITIONS OF ORDER ..........................................................12
        A.      Public Notice ...........................................................................................12
        B.      Remedial Action Costs .............................................................................12
        C.      Implementation of Remedial Action .........................................................13
        D.      Designated Project Coordinators ..............................................................13
        E.      Performance .............................................................................................14
        F.      Access ......................................................................................................15
        G.      Sampling, Data Submittal, and Availability .............................................15
        H.      Public Participation ..................................................................................16
        I.       Retention of Records ................................................................................17
        J.       Resolution of Disputes ..............................................................................17
        K.      Extension of Schedule ..............................................................................18
        L.      Amendment of Order ................................................................................20
        M.      Endangerment ..........................................................................................20
        N.      Reservation of Rights ...............................................................................21
        O.      Transfer of Interest in Property .................................................................21
        P.      Compliance with Applicable Laws ............................................................22
        Q.      Indemnification ........................................................................................23
IX.     SATISFACTION OF ORDER .............................................................................23
X.      ENFORCEMENT ...............................................................................................24

**EXHIBITS**

EXHIBIT A:    Site Location Map, Diagrams, and Site/Property Location Information
EXHIBIT B:    Ecology Policy 840: Data Submittal Requirements
EXHIBIT C:    Public Participation Plan
EXHIBIT D:    Schedule

**ATTACHMENTS**

ATTACHMENT A:   Historical Releases and Site Investigations

Agreed Order No. DE 5235
Page 2 of 24

## I.    INTRODUCTION

The mutual objective of the State of Washington, Department of Ecology (Ecology) and G B H Investments, LLC (GBH) under this Agreed Order (Order) is to provide for remedial action at a facility where there has been a release or threatened release of hazardous substances. This Order requires GBH to perform the actions listed below.

A.    Site Preparation:    Finish the work of fencing the property (including the placement of warning signs) and clearing as much concrete/re-bar and other physical hazards as possible.

B.    Remedial Investigation/Feasibility Study (RI/FS):    Perform an RI/FS that will provide sufficient information to develop a draft cleanup action plan (CAP) for the Site.

1.    Draft, draft final, and final RI/FS Work Plans will be produced prior to initiating the RI/FS study.

2.    Produce draft, draft final, and final RI/FS reports for the Site.

C.    Draft CAP:    Produce a draft CAP report (including draft, draft final, and final versions of the draft CAP) for the Site.

Ecology believes the actions required by this Order are in the public interest.

## II.    JURISDICTION

This Agreed Order is issued pursuant to the Model Toxics Control Act (MTCA), RCW 70.105D.050(1).

## III.    PARTIES BOUND

This Agreed Order shall apply to and be binding upon the Parties to this Order, their successors and assigns. The undersigned representative of each party hereby certifies that he or she is fully authorized to enter into this Order and to execute and legally bind such party to comply with this Order. GBH agrees to undertake all actions required by the terms and conditions of this Order. GBH shall provide a copy of this Order to all agents, contractors, and subcontractors retained to perform work required by this Order, and shall ensure that all work undertaken by such agents, contractors, and subcontractors complies with this Order.

Agreed Order No. DE 5235
Page 3 of 24

## IV.    DEFINITIONS

Unless otherwise specified herein, the definitions set forth in Chapter 70.105D RCW and Chapter 173-340 WAC shall control the meanings of the terms in this Order.

A.    <u>Site</u>:  The Site is referred to as Custom Plywood Mill and is generally located at the intersection of 35th and V Avenue (general location of the former mill office) on the western shore of Fidalgo Bay in Skagit County.  The Site is defined by the extent of contamination—not limited by property boundaries—caused by the release of hazardous substances at the Site. Based upon factors currently known to Ecology, the Site is more particularly described in **Exhibit A** to this Order, which includes a site location map, detailed site diagrams, and a description of the Site and property locations.  The Site constitutes a Facility under RCW 70.105D.020(5).

B.    <u>Parties</u>:  Refers to the State of Washington, Department of Ecology, and GBH.

C.    <u>Potentially Liable Person (PLP)</u>:  Refers to GBH.

D.    <u>Agreed Order or Order</u>:  Refers to this Order and each of the exhibits and attachments to this Order.  All exhibits and attachments are integral parts of this Order.  In addition, Exhibits A through D are enforceable.  The terms "Agreed Order" or "Order" shall include all exhibits and attachments to this Order.

## V.    FINDINGS OF FACT

Ecology makes the following findings of fact, without any express or implied admissions of such facts by GBH:

A.    <u>Site Description and Ownership History</u>:  The former Custom Plywood Mill is located within the city limits of Anacortes, Washington at the intersection of 35th and V Avenue on the western shore of Fidalgo Bay in Skagit County (the "Site").  The property owned by GBH is bounded by the inner harbor line within Fidalgo Bay on the east, a hiking trail (Tommy Thompson Trail; former Burlington Northern Railroad corridor) on the west and southwest sides, undeveloped land used for boat storage on the north, V Place road on the northwest, and an undeveloped embankment leading up to Fidalgo Bay Road on the south.  The Site was used for

Agreed Order No. DE 5235
Page 4 of 24

the operation of a sawmill (including box factory and planing mill), and later a plywood mill, under various owners from the early 1900s until 1992 as described in the paragraph below.

The property currently owned by GBH was originally a sawmill and box factory (including a planing mill) operated by Fidalgo Lumber and Box Company from around 1900 until it burned down sometime after 1925 and prior to 1937. Bill Morrison acquired the property in 1913 and owned it until it was purchased around 1937 by Anacortes Plywood Company. The newly incorporated plywood company failed early on, but was able to reorganize as the Anacortes Veneer Company on April 4, 1939. Anacortes Veneer Company operated on the property until it was sold to Publisher's Forest Products in 1969. In 1984, Anacortes Plywood assumed control of the plant, until Brent Homes assumed title out of bankruptcy proceedings in 1991. Custom Plywood became the operating entity sometime prior to 1991 and continued to use the facility until 1992, when the mill went out of business and the wooden structures burned. Anacortes Joint Venture, consisting of eight partners, acquired the property in 1999. Concorde, Inc. purchased the property in 2006 and sold it to GBH in December 2007 (see Exhibit A for a legal description of the property).

B.     Site Operations:   The facility dried veneer, purchased from Canada, Oregon, Montana, and eastern Washington, in one of two large kiln driers heated by hog-fuel boiler steam.  The graded veneer then was put through a series of gluing processes, and the final plywood sheets were placed into large hydraulic presses (Press Pits #1 through #3) for the final step of the process. A wax coating was applied to the glue rollers to minimize the use of solvents for cleaning purposes. Toluene was used to clean out the glue application nozzles and tips. The wash water was pumped into a 10,000-gallon tank located outside the press pits, and was recycled and reused on site.

The glue-making process used phenolic resin and caustic, shipped in by truck and stored in the above ground storage tanks (ASTs) which were located in the shed adjoining the former maintenance shop. The former maintenance shop and former AST shed are currently located off the property owned by GBH. Three tanks were used in the glue-making process: one mixing

tank, one intermediate process tank, and one finished product tank. The finished product tank was connected to a pump to supply the glue to the mill. Approximately 20,000 gallons of phenolic resins and caustic were used each month in the glue-making process in the main plant building.

C.    Site Features: Primary historical site features include the following: a hog-fueled boiler located in a boiler house, a compressor building, three known outfalls, a drum storage tank area, three press pits, a mixed glue tank surrounded by a concrete pad, a transformer yard, a pitch collection tank, a former hardboard plant, numerous ASTs (containing fuel oil, gasoline, diesel, and/or propane), a resin/caustic tank storage shed with tanks, a machine shop, a metal shop with oil storage, an area for paint and oil spraying, piers, several unidentified concrete structures, and a railroad spur (*See* Exhibit A). Site features were present until 1992, when a fire destroyed most of the mill. Current site features consist of numerous concrete structures/foundations and exposed re-bar, a large concrete slab located on pilings in the intertidal area (the area exposed to the air at low tide and submerged at high tide), discarded brick and concrete along the intertidal area, the mixed glue tank, the resin/caustic tank storage shed and former machine shop, the former hardboard plant which is now a boat building facility, the former mill office, wood debris, the former railroad spur (now used as a recreational hiking trail; Tommy Thompson Trail), the three press pits (two of which Ecology observed filled with standing water and the other of which intermittently has water in it), and dilapidated piers.

D.    Historical Releases: Some of the releases that have been documented at the Site include the discharge of non-contact cooling water and boiler blowdown water overland to Fidalgo Bay, cracked hydraulic line(s) in the press area, dumping of oils on the Site including light lubricating oils and reportedly oils from transformers, caustic spills, various forms of wood debris including but not limited to lumber, pilings, and sawdust, and discharges of phenolic formaldehyde resin glue wastewater into Fidalgo Bay. Deep pools of heavy oil have been identified under the main building where machinery had leaked through over the years (see

Agreed Order No. DE 5235
Page 6 of 24

details below). Information summarizing releases at the Site is included as Attachment A to this Order.

E.    Sediment Management Standards:  Data from several studies conducted at this Site indicate relatively high concentrations of Total Organic Carbon (TOC) compared with designated Puget Sound Reference locations.  High TOC has shown to be indicative of high volumes of wood debris in the marine environment.  Wood debris was also identified in near shore sediment at the Custom Plywood Mill Site during a site visit conducted by Ecology on August 1, 2007.  Significant volumes of wood debris in the marine environment have often resulted in adverse effects to biological resources per the Sediment Management Standards (Chapter 173-204 WAC) (SMS) and can also cause or contribute to releases or threatened releases of hazardous substances (including but not limited to ammonia, hydrogen sulfide, phenol, 4-methylphenol, and 2, 4 dimethylphenol).

## VI.    ECOLOGY DETERMINATIONS

A.    GBH is an "owner or operator" as defined in RCW 70.105D.020(12), of a "facility" as defined in RCW 70.105D.020(5) because it is the current owner of the Site.

B.    Based upon all factors known to Ecology, a "release" or "threatened release" of "hazardous substance(s)" as defined in RCW 70.105D.020(20) and RCW 70.105D.020(7), respectively, has occurred at the Site.

C.    Based upon credible evidence, Ecology issued a preliminary PLP status letter to GBH dated February 4, 2008, pursuant to RCW 70.105D.040, RCW 70.105D.020(21), and WAC 173-340-500.  GBH chose to waive its right to notice and comment and accept its status as a PLP for the Site.  After concluding that credible evidence supported a finding of potential liability, Ecology issued a determination that GBH is a PLP under RCW 70.105D.040 and notified GBH of this determination by letter dated February 6, 2008.

D.    Pursuant to RCW 70.105D.030(1) and RCW 70.105D.050(1), Ecology may require PLPs to investigate or conduct other remedial actions (e.g., interim remedial actions) with respect to any release or threatened release of hazardous substances, whenever it believes

Agreed Order No. DE 5235
Page 7 of 24

such action to be in the public interest. Based on the foregoing facts, Ecology believes that the remedial action(s) required by this Order are in the public interest.

## VII.    WORK TO BE PERFORMED

Based on the Findings of Fact and Ecology Determinations, it is hereby ordered that GBH take the following remedial actions at the Site, and that these actions be conducted in accordance with Chapters 173-340 and 173-204 WAC unless otherwise specifically provided for herein:

A.    As part of site preparation activities, GBH shall construct a fence around the property, place warning signs, and clear as much concrete/re-bar and other physical hazards as possible. This is required to protect the public from physical hazards on the Site (including hazards due to surficial contamination), provide easier access for RI sampling, and reduce the visual appearance of blight.

B.    GBH shall develop an RI/FS Work Plan (including draft, draft final, and final versions) that includes a scope of work to delineate and quantify (i.e., identify the levels of contamination) the contaminants of potential concern (COPCs) in all media (e.g., soil, groundwater, surface water and sediments) and any toxic effects or other deleterious substances in sediment. The work plan shall also include the proper handling of waste (e.g., sludge, free product). In addition, exempt permits or approvals and the applicable substantive requirements of those permits or approvals will be identified in the work plan. Note, all draft documents for Ecology review may be submitted in redline strikeout format to facilitate the review. The RI/FS Work Plan will include the elements listed below.

1.    A site-specific health and safety plan (HASP) and a sampling and analysis plan (SAP), which includes quality assurance/quality control requirements, will be included in the RI/FS Work Plan. These plans shall conform to the requirements specified in WAC 173-340-810 and 173-340-820, respectively.

2.    The RI/FS Work Plan shall be conducted meeting the requirements of WAC 173-350 and should include the sections listed below.

a.    Site Background and Setting: This section will include detailed descriptions of the following: (1) the property and site operational history (including current and previous ownership), (2) previous investigations, (3) historical sources and releases of contamination (include a review of historical photos and Sanborn Maps), (4) current site conditions (including descriptions of surface features, geology, soil and the vadose zone, surface-water hydrology, hydrogeology, and meteorology), (5) current and future land and water use (including descriptions of human populations), and (6) the terrestrial/aquatic ecological setting including a description of ecological receptors and potentially threatened/endangered species.

b.    Past Remedial Actions: Describe in detail all remedial actions that have taken place on the Site (which includes any off-property cleanups related to the operation of the Custom Plywood Mill) prior to the finalization of this RI/FS Work Plan including locations of excavations and types and volumes of wastes removed.

c.    Initial Evaluation: The initial evaluation will consist of the development of a conceptual site model (CSM), identification of preliminary cleanup levels, and an evaluation of the existing analytical data.

i. CSM: The CSM should describe release mechanisms from the potential primary sources of hazardous substances to secondary and tertiary sources, the exposure media and routes, and the potential human and ecological receptors. The CSM should reflect both current conditions and possible future development in assessing exposure pathways.

ii. Preliminary Cleanup Levels: Based on the CSM, identify appropriate preliminary cleanup levels (e.g., levels established under MTCA [see WAC 173-340-700 through 173-340-760], Chapter 173-204 WAC, Sediment Management Standards for Puget Sound Marine

sediments, and applicable state and federal laws) under a residential (unrestricted) land use scenario. Note that the cleanup levels must consider all applicable pathways including direct contact (including inhalation), media transfer pathways (e.g., leaching to groundwater, groundwater migration to surface water, and sediment, etc.), and exposure to terrestrial and/or aquatic ecological and human receptors.

iii. <u>Evaluation of Existing Data</u>: The existing analytical data, including data points impacted by prior interim remedial actions, should be plotted (as accurately as possible) on both historical and current aerial photographs using georeferencing techniques. Review the sample locations with respect to identified sources and areas where suspected releases (e.g., outfalls, spills, dumping, leaks, etc.) have occurred. All of the existing analytical data (including data impacted from past interim remedial actions) collected at the Site should be evaluated in terms of data usability (analytical methods used to evaluate the effectiveness of a cleanup action shall comply with the requirements in WAC 173-340-830) and screened against the most protective preliminary cleanup levels identified under an unrestricted land use scenario including submerged lands. Both non-detect and detected data should be included in the screening. Identify sample points containing exceedances on a map and also discuss the adequateness of the reporting limits in terms of achieving the preliminary cleanup levels. Chemicals exceeding the preliminary cleanup levels should be identified as COPCs.

d. <u>RI Approach</u>: Based on the background information gathered, past interim remedial actions at the Site, and the evaluation of existing data, discuss by media (e.g., soil, sediment, surface water, etc.) the data required to complete an RI for the Custom Plywood Mill Site. The RI approach should be consistent with

WAC 173-340-350.   Identify data gaps (e.g., establishment of "natural" background levels for metals according to WAC 173-340-709, characterization of on-site groundwater, etc.) and the overall approach for conducting the RI.   The Sampling and Analysis Plan(s) will provide the details on numbers and locations of samples for each media and the analytical requirements.

The RI field investigation should be conducted in two phases.  The first phase of the investigation will be designed to identify the full nature and extent of contaminants and toxic effects in upland and offshore areas.  Media evaluated will include waste (e.g., free product, sludge), soil, sediment, groundwater, and surface water.  GBH shall provide Ecology with the results of the Phase 1 investigation so that a determination can be made with regard to whether a Phase 2 investigation is required to define the full nature and extent of contamination.  The information provided to Ecology should describe the analytical results of the Phase 1 field activities including the identification of COPCs, the affected media, preliminary cleanup levels, the extent of contamination (plotted on maps), and any data gaps that need to be filled to define the nature and extent of contamination and toxic effects.  A Phase 2 field investigation (if necessary based on Phase 1 results) will be conducted to further define the nature and extent of contamination and toxic effects based on findings during Phase 1.

e.    FS Approach:   This section should provide an overview of the methods that will be used in conducting the FS for the Custom Plywood Mill Site.  The FS approach should be consistent with WAC 173-340-350 and should consist of the following sections:

i.  Establishment of Cleanup Levels, Points of Compliance, and Remediation Levels.

ii.  Delineation of Media Requiring Remedial Action.

iii.  Development of Remedial Action Objectives.

Agreed Order No. DE 5235
Page 11 of 24

    iv.  Applicable or Relevant and Appropriate Requirements.

    v.  Screening of Cleanup Alternatives.

    vi.  Evaluation of Cleanup Alternatives.

    vii.  Habitat Restoration:  The Site is being overseen by Ecology and work is being done in an expedited manner under the Governor's Puget Sound Initiative.  The Initiative focuses on cleaning up contamination as well as restoring Puget Sound.  Ecology recognizes that site cleanups can be designed and implemented in a manner that improves habitat values and provides for shoreline restoration in conjunction with remedial actions.  While planning the cleanup, and making cleanup decisions, Ecology and GBH will evaluate opportunities to perform remedial actions in a fashion that coincidentally enhances habitat.  Elements of the remedial action will be evaluated for restoration opportunities in consultation with Ecology as plans for cleanup are developed.

    f.    <u>Public Participation</u>:  A Public Participation Plan (see WAC 173 340-600) will be developed by Ecology and included as Exhibit C of the Agreed Order.  The Public Participation Plan provides the public with timely information and meaningful opportunities to participate in the cleanup process.  See Section VIII, Item H for more details on the Public Participation Plan.

    g.    <u>Schedule and Reporting</u>:  This section should contain the schedule and reporting requirements for the RI/FS project.

    h.    <u>References</u>

C.    <u>RI/FS Report</u>:  A draft, draft final, and final RI/FS report meeting the requirements of WAC 173-340-350 shall be prepared presenting the results of remedial investigation that provides information regarding the full nature and extent of soil, groundwater, surface water, and sediment contamination and toxic effects and provides potential alternatives and a preferred alternative for the cleanup of the contamination present at the Site.  Also the

Agreed Order No. DE 5235
Page 12 of 24

alternatives evaluation and the preferred cleanup alternative must meet the requirements of WAC 173-340-360.

D.    Cleanup Action Plan (CAP):  Upon the approval of the final RI/FS report, GBH shall prepare a draft CAP in accordance with WAC 173-340-380 and WAC 173-204-580 that provides a proposed cleanup action to address the contamination present on the Site.  The draft CAP shall include a general description of the proposed cleanup action, results of any remedial technology pilot studies, cleanup standards from the RI/FS report and rationale regarding their selection, a schedule for implementation, descriptions of any institutional controls proposed, and a summary of applicable, local, state and federal laws pertinent to the proposed cleanup action.

E.    GBH shall perform the actions required by this Order according to the schedule in Exhibit D.

F.    If, at any time after the first exchange of comments on drafts, Ecology determines that insufficient progress is being made in the preparation of any of the deliverables required by this Section, Ecology may complete and issue the final deliverable.

## VIII.   TERMS AND CONDITIONS OF ORDER

A.    **Public Notice**

RCW 70.105D.030(2)(a) requires that, at a minimum, this Order be subject to concurrent public notice.  Ecology shall be responsible for providing such public notice and reserves the right to modify or withdraw any provisions of this Order should public comment disclose facts or considerations which indicate to Ecology that this Order is inadequate or improper in any respect.

B.    **Remedial Action Costs**

GBH shall pay to Ecology costs incurred by Ecology pursuant to this Order and consistent with WAC 173-340-550(2).  These costs shall include work performed by Ecology or its contractors for, or on, the Site under Chapter 70.105D RCW, including remedial actions and Order preparation, negotiation, oversight, and administration.  These costs shall include work performed both prior (retroactive to June 1, 2007) to and subsequent to the issuance of this

Agreed Order No. DE 5235
Page 13 of 24

Order. Ecology's costs shall include costs of direct activities and support costs of direct activities as defined in WAC 173-340-550(2). GBH shall pay the required amount within ninety (90) days of receiving from Ecology an itemized statement of costs that includes a summary of costs incurred, an identification of involved staff, and the amount of time spent by involved staff members on the project. A general statement of work performed will be provided upon request. Itemized statements shall be prepared quarterly. Pursuant to WAC 173-340-550(4), failure to pay Ecology's costs within ninety (90) days of receipt of the itemized statement of costs will result in interest charges at the rate of twelve percent (12%) per annum, compounded monthly.

Pursuant to RCW 70.105D.055, Ecology has authority to recover unreimbursed remedial action costs by filing a lien against real property subject to the remedial actions.

**C.     Implementation of Remedial Action**

If Ecology determines that GBH has failed without good cause to implement the remedial action, in whole or in part, Ecology may, after notice to GBH, perform any or all portions of the remedial action that remain incomplete. If Ecology performs all or portions of the remedial action because of GBH's failure to comply with its obligations under this Order, GBH shall reimburse Ecology for the costs of doing such work in accordance with Section VIII.B (Remedial Action Costs), provided that GBH is not obligated under this Section to reimburse Ecology for costs incurred for work inconsistent with or beyond the scope of this Order.

Except where necessary to abate an emergency situation, GBH shall not perform any remedial actions at the Site outside those remedial actions required by this Order, unless Ecology concurs, in writing, with such additional remedial actions.

**D.     Designated Project Coordinators**

The project coordinator for Ecology is:

> Sandra Caldwell
> Toxics Cleanup Program
> PO Box 47600
> Olympia, WA  98504-7600
> (360) 407-7209
> E-mail: saca461@ecy.wa.gov

Agreed Order No. DE 5235
Page 14 of 24

The project coordinator for GBH is:

Kathleen Goodman
Geomatrix
One Union Square
600 University Street, Suite 1020
Seattle, WA 98101-4107
(206) 342-1780
E-mail: kgoodman@geomatrix.com

Each project coordinator shall be responsible for overseeing the implementation of this Order. Ecology's project coordinator will be Ecology's designated representative for the Site. To the maximum extent possible, communications between Ecology and GBH, and all documents, including reports, approvals, and other correspondence concerning the activities performed pursuant to the terms and conditions of this Order shall be directed through the project coordinators. The project coordinators may designate, in writing, working level staff contacts for all or portions of the implementation of the work to be performed required by this Order.

Any party may change its respective project coordinator. Written notification shall be given to the other party at least ten (10) calendar days prior to the change.

**E.     Performance**

All geologic and hydrogeologic work performed pursuant to this Order shall be under the supervision and direction of a geologist licensed in the State of Washington or under the direct supervision of an engineer registered in the State of Washington, except as otherwise provided for by Chapters 18.220 and 18.43 RCW.

All engineering work performed pursuant to this Order shall be under the direct supervision of a professional engineer registered in the State of Washington, except as otherwise provided for by RCW 18.43.130.

All construction work performed pursuant to this Order shall be under the direct supervision of a professional engineer or a qualified technician under the direct supervision of a professional engineer. The professional engineer must be registered in the State of Washington, except as otherwise provided for by RCW 18.43.130.

Agreed Order No. DE 5235
Page 15 of 24

Any documents submitted containing geologic, hydrologic or engineering work shall be under the seal of an appropriately licensed professional as required by Chapter 18.220 RCW or RCW 18.43.130.

GBH shall notify Ecology in writing of the identity of any engineer(s) and geologist(s), contractor(s) and subcontractor(s), and others to be used in carrying out the terms of this Order, in advance of their involvement at the Site.

**F.    Access**

Ecology or any Ecology authorized representative shall have the full authority to enter and freely move about all property at the Site that GBH either owns, controls, or has access rights to at all reasonable times for the purposes of, *inter alia*: inspecting records, operation logs, and contracts related to the work being performed pursuant to this Order; reviewing GBH's progress in carrying out the terms of this Order; conducting such tests or collecting such samples as Ecology may deem necessary; using a camera, sound recording, or other documentary type equipment to record work done pursuant to this Order; and verifying the data submitted to Ecology by GBH.  GBH shall make all reasonable efforts to secure access rights for those properties within the Site not owned or controlled by GBH where remedial activities or investigations will be performed pursuant to this Order.  Ecology or any Ecology authorized representative shall give reasonable notice before entering any Site property owned or controlled by GBH unless an emergency prevents such notice.  All persons who access the Site pursuant to this Section shall comply with any applicable Health and Safety Plan(s).  Ecology employees and their representatives shall not be required to sign any liability release or waiver as a condition of Site property access.

**G.    Sampling, Data Submittal, and Availability**

With respect to the implementation of this Order, GBH shall make the results of all sampling, laboratory reports, and/or test results generated by it or on its behalf available to Ecology.  Pursuant to WAC 173-340-840(5), all sampling data shall be submitted to Ecology in both printed and electronic formats in accordance with Section VII (Work to be Performed),

Agreed Order No. DE 5235
Page 16 of 24

Ecology's Toxics Cleanup Program Policy 840 (Data Submittal Requirements), and/or any subsequent procedures specified by Ecology for data submittal. Attached as Exhibit B is Ecology Policy 840, Data Submittal Requirements.

If requested by Ecology, GBH shall allow Ecology and/or its authorized representative to take split or duplicate samples of any samples collected by GBH pursuant to implementation of this Order. GBH shall notify Ecology seven (7) days in advance of any sample collection or work activity at the Site. Ecology shall, upon request, allow GBH and/or its authorized representative to take split or duplicate samples of any samples collected by Ecology pursuant to the implementation of this Order, provided that doing so does not interfere with Ecology's sampling. Without limitation on Ecology's rights under Section VIII.F (Access), Ecology shall notify GBH prior to any sample collection activity unless an emergency prevents such notice.

In accordance with WAC 173-340-830(2)(a), all hazardous substance analyses shall be conducted by a laboratory accredited under Chapter 173-50 WAC for the specific analyses to be conducted, unless otherwise approved by Ecology.

## H.    Public Participation

A Public Participation Plan, which is required for the Site, has been developed and is included as Exhibit C. Ecology shall maintain the responsibility for public participation at the Site. However, GBH shall cooperate with Ecology, and shall:

1.    If agreed to by Ecology, develop appropriate mailing list, prepare drafts of public notices and fact sheets at important stages of the remedial action, such as the submission of work plans, remedial investigation/feasibility study reports, cleanup action plans, and engineering design reports. As appropriate, Ecology will edit, finalize, and distribute such fact sheets and prepare and distribute public notices of Ecology's presentations and meetings.

2.    Notify Ecology's project coordinator prior to the preparation of all press releases and fact sheets, and before major meetings with the interested public and local governments. Likewise, Ecology shall notify GBH prior to the issuance of all press releases and fact sheets, and before major meetings with the interested public and local governments. For all press

Agreed Order No. DE 5235
Page 17 of 24

releases, fact sheets, meetings, and other outreach efforts by GBH that do not receive prior Ecology approval, GBH shall clearly indicate to its audience that the press release, fact sheet, meeting, or other outreach effort was not sponsored or endorsed by Ecology.

3.    When requested by Ecology, participate in public presentations on the progress of the remedial action RI/FS work at the Site.  Participation may be through attendance at public meetings to assist in answering questions or as a presenter.

4.    When requested by Ecology, arrange and/or continue information repositories to be located at the following locations:

       a.      Anacortes Public Library
              1220 10th Street
              Anacortes, WA 98221

       b.      Washington Department of Ecology
              Headquarters Office
              300 Desmond Drive
              Lacey, WA 98503

At a minimum, copies of all public notices, fact sheets, and press releases; all quality assured monitoring data; remedial action plans and reports, supplemental remedial planning documents, and all other similar documents relating to performance of the remedial action required by this Order shall be promptly placed in these repositories.

**I.    Retention of Records**

During the pendency of this Order, and for ten (10) years from the date of completion of work performed pursuant to this Order, GBH shall preserve all records, reports, documents, and underlying data in its possession relevant to the implementation of this Order and shall insert a similar record retention requirement into all contracts with project contractors and subcontractors.  Upon request of Ecology, GBH shall make all records available to Ecology and allow access for review within a reasonable time.

**J.    Resolution of Disputes**

1.    In the event a dispute arises as to an approval, disapproval, proposed change, or other decision or action by Ecology's project coordinator, or an itemized billing statement under

Agreed Order No. DE 5235
Page 18 of 24

Section VIII.B (Remedial Action Costs), the Parties shall utilize the dispute resolution procedure set forth below.

      a.      Upon receipt of Ecology's project coordinator's written decision or the itemized billing statement, GBH has fourteen (14) days within which to notify Ecology's project coordinator in writing of its objection to the decision or itemized statement.

      b.      The Parties' project coordinators shall then confer in an effort to resolve the dispute. If the project coordinators cannot resolve the dispute within fourteen (14) days, Ecology's project coordinator shall issue a written decision.

      c.      GBH may then request regional management review of the decision. This request shall be submitted in writing to the Toxics Cleanup Land & Aquatic Lands Cleanup Section Manager within seven (7) days of receipt of Ecology's project coordinator's written decision.

      d.      The Section Manager shall conduct a review of the dispute and shall endeavor to issue a written decision regarding the dispute within thirty (30) days of GBH's request for review. The Section Manager's decision shall be Ecology's final decision on the disputed matter.

2.      The Parties agree to only utilize the dispute resolution process in good faith and agree to expedite, to the extent possible, the dispute resolution process whenever it is used.

3.      Implementation of these dispute resolution procedures shall not provide a basis for delay of any activities required in this Order, unless Ecology agrees in writing to a schedule extension.

**K.**      **Extension of Schedule**

1.      An extension of schedule shall be granted only when a request for an extension is submitted in a timely fashion, generally at least thirty (30) days prior to expiration of the deadline for which the extension is requested, and good cause exists for granting the extension. All extensions shall be requested in writing. The request shall specify:

      a.      The deadline that is sought to be extended;

Agreed Order No. DE 5235
Page 19 of 24

      b.     The length of the extension sought;

      c.     The reason(s) for the extension; and

      d.     Any related deadline or schedule that would be affected if the extension were granted.

2.     The burden shall be on GBH to demonstrate to the satisfaction of Ecology that the request for such extension has been submitted in a timely fashion and that good cause exists for granting the extension. Good cause may include, but may not be limited to:

      a.     Circumstances beyond the reasonable control and despite the due diligence of GBH including delays caused by unrelated third parties or Ecology, such as (but not limited to) delays by Ecology in reviewing, approving, or modifying documents submitted by GBH;

      b.     Acts of God, including fire, flood, blizzard, extreme temperatures, storm, or other unavoidable casualty; or

      c.     Endangerment as described in Section VIII.M (Endangerment).

However, neither increased costs of performance of the terms of this Order nor changed economic circumstances shall be considered circumstances beyond the reasonable control of GBH.

3.     Ecology shall act upon any written request for extension in a timely fashion. Ecology shall give GBH written notification of any extensions granted pursuant to this Order. A requested extension shall not be effective until approved by Ecology. Unless the extension is a substantial change, it shall not be necessary to amend this Order pursuant to Section VIII.L (Amendment of Order) when a schedule extension is granted.

4.     An extension shall only be granted for such period of time as Ecology determines is reasonable under the circumstances. Ecology may grant schedule extensions exceeding ninety (90) days only as a result of:

      a.     Delays in the issuance of a necessary permit which was applied for in a timely manner;

Agreed Order No. DE 5235
Page 20 of 24

        b.     Other circumstances deemed exceptional or extraordinary by Ecology; or

        c.     Endangerment as described in Section VIII.M (Endangerment).

**L.    Amendment of Order**

       The project coordinators may verbally agree to minor changes to the work to be performed without formally amending this Order. Minor changes will be documented in writing by Ecology within seven (7) days of verbal agreement.

       Except as provided in Section VIII.N (Reservation of Rights), substantial changes to the work to be performed shall require formal amendment of this Order. This Order may only be formally amended by the written consent of both Ecology and GBH. GBH shall submit a written request for amendment to Ecology for approval. Ecology shall indicate its approval or disapproval in writing and in a timely manner after the written request for amendment is received. If the amendment to this Order represents a substantial change, Ecology will provide public notice and opportunity to comment. Reasons for the disapproval of a proposed amendment to this Order shall be stated in writing. If Ecology does not agree to a proposed amendment, the disagreement may be addressed through the dispute resolution procedures described in Section VIII.J (Resolution of Disputes).

**M.    Endangerment**

       In the event Ecology determines that any activity being performed at the Site is creating or has the potential to create a danger to human health or the environment on or surrounding the Site, Ecology may direct GBH to cease such activities for such period of time as it deems necessary to abate the danger. GBH shall immediately comply with such direction.

       In the event GBH determines that any activity being performed at the Site is creating or has the potential to create a danger to human health or the environment, GBH may cease such activities. GBH shall notify Ecology's project coordinator as soon as possible, but no later than twenty-four (24) hours after making such determination or ceasing such activities. Upon Ecology's direction, GBH shall provide Ecology with documentation of the basis for the

Agreed Order No. DE 5235
Page 21 of 24

determination or cessation of such activities. If Ecology disagrees with GBH's cessation of activities, it may direct GBH to resume such activities.

If Ecology concurs with or orders a work stoppage pursuant to Section VIII.M (Endangerment), GBH's obligations with respect to the ceased activities shall be suspended until Ecology determines the danger is abated, and the time for performance of such activities, as well as the time for any other work dependent upon such activities, shall be extended in accordance with Section VIII.K (Extension of Schedule) for such period of time as Ecology determines is reasonable under the circumstances.

Nothing in this Order shall limit the authority of Ecology, its employees, agents, or contractors to take or require appropriate action in the event of an emergency.

N.    **Reservation of Rights**

This Order is not a settlement under Chapter 70.105D RCW. Ecology's signature on this Order in no way constitutes a covenant not to sue or a compromise of any of Ecology's rights or authority. Ecology will not, however, bring an action against GBH to recover remedial action costs paid to and received by Ecology under this Order. In addition, Ecology will not take additional enforcement actions against GBH regarding remedial actions required by this Order, provided GBH complies with this Order.

Ecology nevertheless reserves its rights under Chapter 70.105D RCW, including the right to require additional or different remedial actions at the Site should it deem such actions necessary to protect human health and the environment, and to issue orders requiring such remedial actions. Ecology also reserves all rights regarding the injury to, destruction of, or loss of natural resources resulting from the release or threatened release of hazardous substances at the Site.

O.    **Transfer of Interest in Property**

No voluntary conveyance or relinquishment of title, easement, leasehold, or other interest in any portion of the Site shall be consummated by GBH without provision for continued

Agreed Order No. DE 5235
Page 22 of 24

implementation of all requirements of this Order and implementation of any remedial actions found to be necessary as a result of this Order.

Prior to GBH's transfer of any interest in all or any portion of the Site, and during the effective period of this Order, GBH shall provide a copy of this Order to any prospective purchaser, lessee, transferee, assignee, or other successor in said interest; and, at least thirty (30) days prior to any transfer, GBH shall notify Ecology of said transfer. Upon transfer of any interest, GBH shall restrict uses and activities to those consistent with this Order and notify all transferees of the restrictions on the use of the property.

P.    **Compliance with Applicable Laws**

1.    All actions carried out by GBH pursuant to this Order shall be done in accordance with all applicable federal, state, and local requirements, including requirements to obtain necessary permits, except as provided in RCW 70.105D.090. At this time, no federal, state or local requirements have been identified as being applicable to the actions required by this Order.

2.    Pursuant to RCW 70.105D.090(1), GBH is exempt from the procedural requirements of Chapters 70.94, 70.95, 70.105, 77.55, 90.48, and 90.58 RCW and of any laws requiring or authorizing local government permits or approvals. However, GBH shall comply with the substantive requirements of such permits or approvals. The exempt permits or approvals and the applicable substantive requirements of those permits or approvals have not been identified at this time, but will be identified in the RI/FS Work Plan (see VII.B).

GBH has a continuing obligation to determine whether additional permits or approvals addressed in RCW 70.105D.090(1) would otherwise be required for the remedial action under this Order. In the event either Ecology or GBH determines that additional permits or approvals addressed in RCW 70.105D.090(1) would otherwise be required for the remedial action under this Order, it shall promptly notify the other party of its determination. Ecology shall determine whether Ecology or GBH shall be responsible to contact the appropriate state and/or local agencies. If Ecology so requires, GBH shall promptly consult with the appropriate state and/or local agencies and provide Ecology with written documentation from those agencies of the

Agreed Order No. DE 5235
Page 23 of 24

substantive requirements those agencies believe are applicable to the remedial action. Ecology shall make the final determination on the additional substantive requirements that must be met by GBH and on how GBH must meet those requirements. Ecology shall inform GBH in writing of these requirements. Once established by Ecology, the additional requirements shall be enforceable requirements of this Order. GBH shall not begin or continue the remedial action potentially subject to the additional requirements until Ecology makes its final determination.

     3.     Pursuant to RCW 70.105D.090(2), in the event Ecology determines that the exemption from complying with the procedural requirements of the laws referenced in RCW 70.105D.090(1) would result in the loss of approval from a federal agency that is necessary for the State to administer any federal law, the exemption shall not apply and GBH shall comply with both the procedural and substantive requirements of the laws referenced in RCW 70.105D.090(1), including any requirements to obtain permits.

**Q.**    **Indemnification**

     GBH agrees to indemnify and save and hold the State of Washington, its employees, and agents harmless from any and all claims or causes of action for death or injuries to persons or for loss or damage to property to the extent arising from or on account of acts or omissions of GBH, its officers, employees, agents, or contractors in entering into and implementing this Order. However, GBH shall not indemnify the State of Washington nor save nor hold its employees and agents harmless from any claims or causes of action to the extent arising out of the negligent acts or omissions of the State of Washington, or the employees or agents of the State, in entering into or implementing this Order.

**IX.**    **SATISFACTION OF ORDER**

     The provisions of this Order shall be deemed satisfied upon GBH's receipt of written notification from Ecology that GBH has completed the remedial activity required by this Order, as amended by any modifications, and that GBH has complied with all other provisions of this Agreed Order.

Agreed Order No. DE 5235
Page 24 of 24

## X.    ENFORCEMENT

Pursuant to RCW 70.105D.050, this Order may be enforced as follows:

A.    The Attorney General may bring an action to enforce this Order in a state or federal court.

B.    The Attorney General may seek, by filing an action, if necessary, to recover amounts spent by Ecology for investigative and remedial actions and orders related to the Site.

C.    In the event GBH refuses, without sufficient cause, to comply with any term of this Order, GBH will be liable for:

1.    Up to three (3) times the amount of any costs incurred by the State of Washington as a result of its refusal to comply; and

2.    Civil penalties of up to twenty-five thousand dollars ($25,000) per day for each day it refuses to comply.

D.    This Order is not appealable to the Washington Pollution Control Hearings Board. This Order may be reviewed only as provided under RCW 70.105D.060.

Effective date of this Order: _March 11, 2008_

G B H Investments, LLC                        STATE OF WASHINGTON,
                                              DEPARTMENT OF ECOLOGY

_____              _____
Mr. Richard LeMieux                          Tim L. Nord
G B H Investments, LLC                        Section Manager
                                              Toxics Cleanup Program
                                              Land & Aquatic Lands Cleanup Section
                                              Telephone: (360) 407-7226

B 10 (Official Form 10) (04/10)

| **UNITED STATES BANKRUPTCY COURT** | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor: | Case Number: |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Name and address where notices should be sent:<br><br><br>Telephone number: | ⬝ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>    *(If known)*<br><br>Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ⬝ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>⬝ Check this box if you are the debtor or trustee in this case. |

| **1. Amount of Claim as of Date Case Filed:**          $_____ | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>⬝ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>⬝ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B)<br><br>⬝ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **2. Basis for Claim:** _____<br>       (See instruction #2 on reverse side.) | ⬝ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>   **3a. Debtor may have scheduled account as:** _____<br>       (See instruction #3a on reverse side.) | ⬝ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ⬝ Real Estate    ⬝ Motor Vehicle    ⬝ Other<br>**Describe:**<br><br>**Value of Property:** $_____    **Annual Interest Rate**_____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**if any:** $_____    **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____ | ⬝ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>⬝ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>    **Amount entitled to priority:**<br><br>      $_____ |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| **Date:** | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | **FOR COURT USE ONLY** |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (04/10) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____**DEFINITIONS**_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

_____**INFORMATION**_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov.) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

TRIBUNE COMPANY, et al.,

Debtors.

No. 08-13141 (KJC)

Jointly Administered

DECLARATION OF RICHARD
LEMIEUX IN SUPPORT OF PROOF OF
CLAIM

Richard Lemieux declares as follows:

1.     I am a member of GBH Investments, LLC ("GBH").

2.     GBH owns a number of adjacent parcels of property legally described as follows

(together, the "Site"):

| Geo Parcel ID | Abbreviated Legal Description |
|---|---|
| 350230-0-214-003 | (4.1500 ac) ANACORTES TIDE LANDS TR 7 PL 11 |
| 350230-0-216-0001 | (0.3400 ac) ANACORTES TIDE LANDS WLY 30FT TR 8 PL 11 |

DECLARATION OF RICHARD LEMIEUX IN SUPPORT OF
PROOF OF CLAIM – Page 1

BUSH STROUT & KORNFELD
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| Geo Parcel ID | Abbreviated Legal Description |
|---|---|
| 350230-0-221-0004 | (6.6900 ac) TAX 18 & 18A BEG 402.83FT SELY FR PT BT WTRS 8 & 9 PL 11 TH SLY ALG MEAN LI 402.83 FT TH |
| 350230-0-222-003 | (6.7000 ac) ANACORTES TIDE LANDS TAX 19 BAT PT BTW TRS 8 & 9 PL 11 TH SELY ALG MEAN LI 402.83FT TH |
| 350230-0-213-0012 | 35TH & V. ANACORTES, WA 98221<br><br>(7.5600 ac) ACREAGE ACCOUNT, ACRES 7.56.  ALL THAT PORTION OF TRACTS 5 AND 6, PLATE 11, ANACORTES TID |
| 350230-0-220-0005 | (8.6000 ac) TAX 17 BAAP BTW TRS 10 & 11 PL 11 TH NW LY ALG MEAN LI OF TR 10 PL 11 402.83FT TH E PLW |
| 350230-0-215-0002 | ANACORTES TIDE LANDS LESS WLY   30FT TR 8 PL 11 |

3.     After purchasing the Site, GBH was made aware of the environmental clean-up required to be undertaken with respect to the Site based upon releases of hazardous materials during operating of the Site by prior owners, including Publishers Forest Products Co. of Washington.

4.     At a meeting with the Port of Anacortes on April 20, 2010, counsel for the Port indicated that they had been researching past ownership of the Site for purposes of identifying other

DECLARATION OF RICHARD LEMIEUX IN SUPPORT OF
PROOF OF CLAIM – Page 2

BUSH STROUT & KORNFELD
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1    parties potentially liable for clean up of the site and that, through its research, the Port had learned that

2    the Debtor had filed a Chapter 11 bankruptcy.

3        5.    This was the first time that Gary Olsen, the other member of GBH, and I had heard

4    anything about a bankruptcy with respect to the Debtor.

5        6.    I declare under penalty of perjury under the laws of the States of Washington, New

6    York and Delaware that the foregoing is true and correct.

7        DATED at _Bremerton_ , Washington, this 20th day of May, 2010.

8

9                                    _[signature]_
                                     Richard LeMieux

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DECLARATION OF RICHARD LEMIEUX IN SUPPORT OF
PROOF OF CLAIM – Page 3

BUSH STROUT & KORNFELD
LAW OFFICES
5000 Two Union Square
601 Union Street
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Gmail - Publishers Forest Products Co. of Washington

 ALL AMERICA TRANSPORT <allamericatransport@gmail.com>

## Publishers Forest Products Co. of Washington
1 message

**Marta B. Beck <mbeck@bskd.com>**
To: allamericatransport@gmail.com
Cc: Christine Tobin-Presser <ctobin@bskd.com>, Paula Sutton <psutton@bskd.com>

**Thu, May 20, 2010 at 1:51 PM**

Per our telephone conversation this morning, I have attached the document that needs to be immediately hand delivered to:

Tribune Company Claims Processing Center

c/o Epiq Bankruptcy Solutions LLC

757 Third Ave., Third Floor

New York, NY 10017

646 282 2500

Please copy receive/stamp verification of delivery and email back to us when the job is finished.

Any questions please contact us immediately

Sincerely,

Marta Beck

Bush Strout & Kornfeld

5000 Two Union Square

601 Union Street

Seattle, Washington 98101

206-292-2110

https://mail.google.com/mail/?ui=2&ik=d8c6015c2e&view=pt&search=inbox&th=128b6d...    5/20/2010