# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE NINTH INTERIM FEE APPLICATION OF ALVAREZ & MARSAL NORTH AMERICA, LLC

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Ninth Interim Fee Application of Alvarez & Marsal North America, LLC* [Docket No. 8646] (the "**Fee Application**"). The Fee

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (9478); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Tribune National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Application seeks approval of fees that total $1,580,398.00[2] and reimbursement of expenses in the amount of $5,603.60 for the period from December 1, 2010 through February 28, 2011. Alvarez & Marsal North America, LLC ("**A&M**") acts as restructuring advisors to the Debtors and Debtors-in-Possession.

## Background

1.    On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**"), each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2.    On December 26, 2008, the Debtors filed the *Application of the Debtors Pursuant to 11 U.S.C. § 327(a) for Entry of an Order Authorizing the Employment and Retention of Alvarez & Marsal North America, LLC as Restructuring Advisors, Nunc Pro Tunc to the Petition Date* [Docket No. 140] (the "**Retention Application**"). By order dated February 11, 2009, this Court approved the retention of A&M (see Docket No. 362) (the "**Retention Order**").

3.    A&M submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members under 11 U.S.C. §§ 105(a) and 331* [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

4.    In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense

---

[2] The amount of fees sought to be approved in the Fee Application includes 27.90 hours and $9,765.00 in associated fees relating to services rendered in November 2010, which should have been included in the total amount of fees requested for approval in the firm's *Eighth Interim Fee Application of Alvarez & Marsal North America, LLC.*

analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.     The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**").  In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.     Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A).*  In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect

to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

7.    A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.    The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to A&M for review and comment.  The firm provided a written response to the Preliminary Report.   After evaluation and consideration of the additional information provided by A&M, the Fee Examiner submits this Final Report for the Court's consideration.  This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also inform the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

# DISCUSSION OF FINDINGS

## <u>Technical Requirements</u>

9.    <u>**Reconciliation of Fees and Expenses.**</u>  The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").  The Fee Examiner determined that the Fees Computed exceed the Fees Requested by $70.00, resulting in an apparent undercharge.  The discrepancy is the result of task hours within one entry that do not equal the time billed for the entry as a whole, which was displayed in **Exhibit A** to the Preliminary Report.  In response, A&M confirmed that the amount computed by the Fee Examiner is correct and agreed to adjust its invoice upward by $70.00 to correct this issue. Exhibit A has been omitted.

The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the Expenses Computed.  The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

10.    <u>**Block Billing.**</u>[3]  The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*.  The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not

---

[3] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing.  Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry.  As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry.  This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[4]  With one minor exception, A&M did not invoice block billed fee entries.

11.    **Time Increments.**  The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*.  The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v)*.  The Fee Examiner confirmed that the firm recorded time entries in tenths of an hour.  However, three timekeepers each invoiced a vast majority of their time billed during the interim period in whole or half-hour time increments. **Exhibit B**[5], which was included in the Preliminary Report, displayed all time entries for these timekeepers, totaling 41.10 hours with $17,560.00 in associated fees.  The tasks billed in half-hour and full-hour time increments total 26.00 hours with $11,225.00 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit.  Statistically, a timekeeper billing in whole or half hour increments each and every day the timekeeper bills is extremely unlikely, strongly suggesting that the time entries were not contemporaneously recorded and undermining the accuracy of the time entries as a whole.  The Fee Examiner requested A&M justify the veracity of these billing patterns.

In response, the firm verified that the time billed was contemporaneously recorded and is an accurate reflection of the actual time spent on the activity. Because one of the timekeepers is

---

[4] The judicial response to block billing varies.  Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007).  Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[5] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit.  The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

no longer with the firm, however, A&M agreed to waive $1,036.25 in fees. The fee examiner

makes no additional request for a fee reduction, and Exhibit B is omitted from this report.

## Review of Fees

12. **Firm Staffing.** The UST Guidelines state that fee applications should identify the

"[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time,

[an] explanation of any changes in hourly rates from those previously charged, and [a] statement

of whether the compensation is based on the customary compensation charged by comparably

skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The

Fee Application provided the names, positions, and hourly rates of the 17 A&M professionals

and paraprofessionals who billed to this matter, consisting of 4 managing directors, 1 senior

director, 3 directors[6], 1 manager, 2 senior associates, 2 associates, 2 consultants, 1 analyst, and

1 paraprofessional. A summary of hours and fees billed by each timekeeper is displayed in

**Exhibit C**.

The firm billed a total of 3,525.40 hours with associated fees of $1,580,468.00.[7] The

following table displays the hours and fees computed by timekeeper position and the percentage

of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 572.90 | 16% | $ 404,628.00 | 26% |
| Senior Director | 4.90 | * | 2,572.50 | * |
| Director | 1,097.10 | 31% | 516,582.50 | 33% |
| Manager | 33.30 | * | 13,320.00 | * |
| Senior Associate | 837.90 | 24% | 338,657.50 | 21% |
| Associate | 495.00 | 14% | 173,250.00 | 11% |
| Consultant | 23.10 | * | 7,507.50 | * |

---

[6] The "director" total includes Stuart Kaufman whose position changed from senior associate to director during this interim period.

[7] This amount reflects the Fees Computed.

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Analyst | 425.20 | 12% | 116,930.00 | 7% |
| Paraprofessional | 36.00 | 1% | 7,020.00 | * |
| TOTAL | 3,525.40 | 100% | $1,580,468.00 | 100% |

* Less than 1%

The blended hourly rate for the A&M professionals is $450.92 and the blended hourly rate for professionals and paraprofessionals is $448.31.

13.    **Hourly Rate Increases.**   The Fee Examiner notes that one timekeeper was promoted from Senior Associate to Director effective January 1, 2011.  A&M increased the hourly rates of three timekeepers effective January 1, 2011, and an additional timekeeper effective February 1, 2011.

14.    **Timekeepers' Roles.**   A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4).*  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  On the whole, A&M timekeepers appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.   However, while the Fee Examiner recognizes that certain professionals or paraprofessionals have specialized knowledge or expertise and may be called upon to provide services to the case on a limited basis, it appears that some of the professionals, who either had never billed to the case in previous interim periods or had minimal involvement in the case, billed during this interim period for activities that may have been performed by other timekeepers or timekeepers billing at a lower rate.  The fee entries for the timekeepers, totaling 22.00 hours with $11,793.00 in associated fees, were displayed in **Exhibit D** to the Preliminary Report.  The firm explained that the timekeepers in question were asked to perform discrete tasks

based upon their extensive experience and knowledge in a particular area of the practice. The firm inferred that the Debtor's estate saved money by utilizing the firm's available resources. After consideration of the additional information and the firm's assertions, the Fee Examiner makes no recommendation for a fee reduction. Exhibit D is omitted from this report.

15.    **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more A&M timekeepers attended the same meeting, conference, hearing, or other event. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 170.30 hours with $86,735.00 in associated fees, were displayed in **Exhibit E** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing or other event, we identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the individual leading rather than observing a conference). The potentially duplicative and unnecessary timekeepers' entries totaled 98.30 hours with $41,567.50 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested the firm provide what the Local Rules and UST Guidelines mandate -- an explanation

of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

A&M responded to the Fee Examiner's request first by asserting that the firm endeavors to minimize the number of attendees at any meeting but balances that goal against the scope of each meeting and in light of requests of the Debtors' management.    A&M then provided additional context regarding the complexities of the cases and the firm's duties, as well as additional information on the experience, expertise, and role of the individuals who appeared prominently in the exhibit.    The additional information provided by A&M brings the Fee Application into substantial compliance with the Local Rules and UST Guidelines, and accordingly the Fee Examiner makes no recommendation for a fee reduction.    Exhibit E is omitted from this report.

16.    **Intraoffice Conferences.**    Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified intraoffice conferences totaling 228.60 hours with $107,122.00 in associated fees, or approximately 7% of the Fees Computed as was displayed in **Exhibit F** to the Preliminary Report.    The Fee Examiner observed that in certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference.    The entries describing intraoffice conferences invoiced by two or more firm personnel totaled 198.90 hours with $94,967.00 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm limit fees resulting from intraoffice communication, but will make no recommendation for a related fee reduction.    Exhibit F is omitted from this report.

17.   **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary."  The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*.  The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

The Fee Examiner reviewed the substantive detail of each billing entry and identified 14.50 hours with $6,222.50 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper.  The entries were displayed in **Exhibit G** to the Preliminary Report.  As reflected in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[8]  The Fee Examiner requested that A&M strive to provide activity descriptions that are clear and adequately describe the nature of the services performed.  Exhibit G is omitted from this report.

---

[8] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented.  *E.g., In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997).  Entries for legal research must identify the issue and explain the research need.  *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

18.     **Administrative Activities.**  Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm.  The Fee Examiner did not identify any fee entries describing administrative activities.

19.     **Clerical Activities.**  Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel[9] or tasks with a market value less than the rate charged by the firm.  The Fee Examiner has applied and this Court has followed a practice of recommending that clerical activities be paid at the rate of $80.00 per hour.  The Fee Examiner reviewed each timekeeper's task descriptions and identified numerous entries describing clerical activities, including but not limited to delivering documents and indexing.  The questioned entries were displayed in **Exhibit H** to the Preliminary report and totaled 4.80 hours with $1,720.00 in associated fees.  The Fee Examiner and the firm reached a compromise that resulted in a fee reduction of $374.50.  Exhibit H is omitted from this report.

20.     **Travel.**  The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii).*  A&M properly billed all travel time.

21.     **A&M Retention/Compensation.**  A&M billed 42.10 hours with associated fees of $9,902.00 to prepare the firm's retention documents and applications for compensation, less than 1% of the Fees Computed.  The fee entries describing A&M's retention/compensation

---

[9] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates).  These overhead activities may include: mailing; photocopying; word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

activities are displayed in **Exhibit I**, which is included in the Final Report for the Court's reference.

<u>**Review of Expenses**</u>

22.     <u>**Itemization of Expenses.**</u>  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii).*  The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.  Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii).*  A&M provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

23.     <u>**Airfare.**</u>  The description for the airfare charge did not include the fare class at which the tickets were purchased.  The Fee Examiner requested receipts or other documentation from A&M regarding the fare class for all air travel.  In response, A&M provided supporting documentation for the airfare charge.  The documentation confirms the airfare was purchased at a coach class fare.  The Fee Examiner makes no recommendation for a reduction.

24.     <u>**Working Meals.**</u>  A&M requested reimbursement of $426.34 for working meals for which the descriptions did not indicate the location of the meal or whether the meal related to

a meeting with people outside the firm or a meal solely for A&M employees. The Fee Examiner requested A&M provide an explanation for the purpose of the meal charges that were displayed in **Exhibit J** to the Preliminary Report. In its response, A&M stated that the meal charges were incurred as a result of on-site work performed for the client. The Fee Examiner makes no recommendation for a reduction and Exhibit J has been omitted from this report.

25.   **Travel – Lodging.** The Fee Examiner has applied and the Court has followed a ceiling for domestic lodging in the amount of $350.00 per night. A&M requested reimbursement for one lodging charge in the amount of $1,031.80, for which the description stated it was for two nights of lodging. The Fee Examiner requested additional information regarding the lodging charge. In response, A&M agreed to the Fee Examiner's proposed reduction, in the amount of $331.80, because the lodging charges were in excess of the established ceiling.

### Conclusion

The Fee Examiner submits this Final Report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $1,579,057.25 ($1,580,398.00 minus $1,340.75) and reimbursement of expenses in the amount of $5,271.80 ($5,603.60 minus $331.80) for the interim period from December 1, 2010 through February 28, 2011. The findings are set forth in the summary on the following page.

**ALVAREZ & MARSAL NORTH AMERICA, LLC**

**SUMMARY OF FINDINGS**

**Ninth Interim Fee Application (December 1, 2010 through February 28, 2011)**

**A.**   **Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested | $1,580,398.00 | |
| Expenses Requested | 5,603.60 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $1,586,001.60 |
| | | |
| Fees Computed | $1,580,468.00 | |
| Expenses Computed | 5,603.60 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $1,586,071.60 |
| | | |
| Discrepancy in Fees | ($ 70.00) | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($ 70.00) |

**B.**   **Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---|---|---|
| Fees Requested | $1,580,398.00 | | |
| *Discrepancy in Fees* | | *$ 70.00* | |
| *Agreed Reduction for Time Increments* | | *(1,036.25)* | |
| *Agreed Reduction for Clerical Activities* | | *(374.50)* | |
| | Subtotal | *($1,340.75)* | |
| | | | |
| RECOMMENDED FEE ALLOWANCE | | | $1,579,057.25 |
| | | | |
| Expenses Requested | $5,603.60 | | |
| *Agreed Reduction for Travel - Lodging* | | *($ 331.80)* | |
| | Subtotal | *($ 331.80)* | |
| | | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 5,271.80 |
| | | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $1,584,329.05 |

Respectfully submitted,

**STUART MAUE**


By: _____

    John F. Theil, Esq.
    3840 McKelvey Road
    St. Louis, Missouri  63044
    Telephone:  (314) 291-3030
    Facsimile:  (314) 291-6546
    tribunebkr@smmj.com

    *Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 16th day of May, 2012.

David Klauder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
William E. Chipman Jr., Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Thomas E. Hill, Esq.
Alvarez & Marsal North America, LLC
55 West Monroe Street, Suite 4000
Chicago, IL 60603

_____
John F. Theil, Esq.

### SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
### COMPUTED AT STANDARD RATES
#### Alvarez & Marsal North America, LLC

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| BWHI | Whittman, Brian | MANAG DIRECTOR | $675.00 | $700.00 | 447.60 | $310,570.00 |
| THIL | Hill, Tom | MANAG DIRECTOR | $750.00 | $775.00 | 112.50 | $85,510.00 |
| LRYA | Ryan, Laureen | MANAG DIRECTOR | $695.00 | $695.00 | 9.90 | $6,880.50 |
| SKOT | Kotarba, Steve | MANAG DIRECTOR | $575.00 | $575.00 | 2.90 | $1,667.50 |
| | No. of Billers for Position: 4 | Blended Rate for Position: | $706.28 | | 572.90 | $404,628.00 |
| | | | | % of Total: 16.25% | % of Total: 25.60% |
| AALV | Alvizu, Anthony | SENIOR DIRECTOR | $525.00 | $525.00 | 4.90 | $2,572.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $525.00 | | 4.90 | $2,572.50 |
| | | | | % of Total: 0.14% | % of Total: 0.16% |
| RSTO | Stone, Richard | DIRECTOR | $475.00 | $500.00 | 526.00 | $258,920.00 |
| SKAU | Kaufman, Stuart | DIRECTOR | $475.00 | $475.00 | 298.90 | $141,977.50 |
| JEHR | Ehrenhofer, Jodi | DIRECTOR | $425.00 | $425.00 | 272.20 | $115,685.00 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $470.86 | | 1,097.10 | $516,582.50 |
| | | | | % of Total: 31.12% | % of Total: 32.69% |
| TMAT | Matarelli, Thomas | MANAGER | $400.00 | $400.00 | 33.30 | $13,320.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $400.00 | | 33.30 | $13,320.00 |
| | | | | % of Total: 0.94% | % of Total: 0.84% |
| MFRA | Frank, Matt | SR. ASSOCIATE | $400.00 | $400.00 | 481.50 | $192,600.00 |
| PGON | Gondipalli, Prasant | SR. ASSOCIATE | $400.00 | $400.00 | 216.50 | $86,600.00 |
| SKAU | Kaufman, Stuart | SR. ASSOCIATE | $425.00 | $425.00 | 139.90 | $59,457.50 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $404.17 | | 837.90 | $338,657.50 |
| | | | | % of Total: 23.77% | % of Total: 21.43% |
| MBER | Berger, Mark | ASSOCIATE | $350.00 | $350.00 | 445.80 | $156,030.00 |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Alvarez & Marsal North America, LLC**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| ROLS | Olson, Reily | ASSOCIATE | $350.00 | $350.00 | 49.20 | $17,220.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $350.00 | | 495.00 | $173,250.00 |
| | | | | % of Total: | 14.04% | % of Total: 10.96% |
| EBAB | Babbitt, Elizabeth | CONSULTANT | $325.00 | $325.00 | 15.90 | $5,167.50 |
| JHAR | Harwood, Jeff | CONSULTANT | $325.00 | $325.00 | 7.20 | $2,340.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $325.00 | | 23.10 | $7,507.50 |
| | | | | % of Total: | 0.66% | % of Total: 0.48% |
| DTOR | Torres, Diego | ANALYST | $275.00 | $275.00 | 425.20 | $116,930.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $275.00 | | 425.20 | $116,930.00 |
| | | | | % of Total: | 12.06% | % of Total: 7.40% |
| MNAP | Napoliello, Mary | PARAPROFESSIONA | $195.00 | $195.00 | 36.00 | $7,020.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $195.00 | | 36.00 | $7,020.00 |
| | | | | % of Total: | 1.02% | % of Total: 0.44% |
| | Total No. of Billers: 17 | Blended Rate for Report: | $448.31 | | 3,525.40 | $1,580,468.00 |

EXHIBIT I

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Berger, M | 3.50 | 1,225.00 |
| Frank, M | 1.30 | 520.00 |
| Hill, T | 0.70 | 525.00 |
| Napoliello, M | 35.60 | 6,942.00 |
| Whittman, B | 1.00 | 690.00 |
| | 42.10 | $9,902.00 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| AP/Vendor Issues | 3.50 | 1,225.00 |
| Fee Application | 38.60 | 8,677.00 |
| | 42.10 | $9,902.00 |

EXHIBIT I  PAGE 1 of  5

EXHIBIT I

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | DESCRIPTION |
|---|---|---|---|---|---|---|---|
| 12/03/10 Fri | Berger, M 123110-30/41 | 0.40 | 0.40 | 140.00 | | 1 | *MATTER NAME: AP/Vendor Issues* <br> PREPARE UPLOAD TEMPLATES FOR FEE APPLICATIONS APPROVED BY THE COURT. |
| 12/07/10 Tue | Napoliello, M 123110-130/439 | 1.60 | 1.60 | 312.00 | | 1 | *MATTER NAME: Fee Application* <br> PREPARE DRAFT OF COVER SHEET AND APPLICATION. |
| 12/07/10 Tue | Napoliello, M 123110-130/441 | 0.60 | 0.60 | 117.00 | | 1 | *MATTER NAME: Fee Application* <br> PREPARE EDITS TO SEPTEMBER EXHIBITS. |
| 12/07/10 Tue | Napoliello, M 123110-130/444 | 0.30 | 0.30 | 58.50 | | 1 | *MATTER NAME: Fee Application* <br> REVIEW CASE DOCKET FOR CNO DATA. |
| 12/07/10 Tue | Whittman, B 123110-130/944 | 0.20 | 0.20 | 135.00 | | 1 | *MATTER NAME: Fee Application* <br> REVIEW DRAFT SEPTEMBER FEE APPLICATION. |
| 12/09/10 Thu | Whittman, B 123110-130/973 | 0.20 | 0.20 | 135.00 | | 1 | *MATTER NAME: Fee Application* <br> REVIEW SEPTEMBER FEE APP. |
| 12/15/10 Wed | Napoliello, M 123110-130/437 | 2.40 | 2.40 | 468.00 | | 1 | *MATTER NAME: Fee Application* <br> BEGIN PREPARATION OF OCTOBER DATA. |
| 12/27/10 Mon | Napoliello, M 123110-130/438 | 1.20 | 1.20 | 234.00 | | 1 | *MATTER NAME: Fee Application* <br> DRAFT OCTOBER APPLICATION AND COVER SHEET. |
| 12/27/10 Mon | Napoliello, M 123110-130/440 | 1.60 | 1.60 | 312.00 | | 1 | *MATTER NAME: Fee Application* <br> PREPARE EDITS TO OCTOBER EXHIBITS. |
| 12/29/10 Wed | Napoliello, M 123110-130/443 | 0.50 | 0.50 | 97.50 | 0.30  F <br> 0.20  F | 1 <br> 2 | *MATTER NAME: Fee Application* <br> REVIEW CASE DOCKET (0.3); <br> FINALIZE APPLICATION AND COVERSHEET (0.2). |
| 01/04/11 Tue | Napoliello, M 13111-130/500 | 1.20 | 1.20 | 234.00 | | 1 | *MATTER NAME: Fee Application* <br> BEGIN PREPARATION OF NOVEMBER EXHIBITS. |
| 01/05/11 Wed | Frank, M 13111-130/222 | 0.50 | 0.50 | 200.00 | | 1 | *MATTER NAME: Fee Application* <br> DEVELOPMENT OF SUPPLEMENTAL DECLARATION FILING FOR CONFLICT DISCLOSURE. |
| 01/05/11 Wed | Hill, T 13111-130/374 | 0.50 | 0.50 | 375.00 | | 1 | *MATTER NAME: Fee Application* <br> REVIEW OF MATTERS FOR SEVENTH SUPPLEMENTAL DECLARATION FOR TRIBUNE MATTER. |

~ See the last page of exhibit for explanation

EXHIBIT I  PAGE 2 of  5

EXHIBIT I

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|-------------|
| 01/05/11 Wed | Napoliello, M 13111-130/501 | 0.80 | 0.80 | 156.00 | | 1 | MATTER NAME: Fee Application WORK ON NOVEMBER EXHIBITS. |
| 01/06/11 Thu | Frank, M 13111-130/232 | 0.50 | 0.50 | 200.00 | | 1 | MATTER NAME: Fee Application UPDATES TO HILL SUPPLEMENTAL DISCLOSURE. |
| 01/07/11 Fri | Frank, M 13111-130/236 | 0.30 | 0.30 | 120.00 | | 1 | MATTER NAME: Fee Application CHANGES TO A&M SEVENTH SUPPLEMENTAL DECLARATION. |
| 01/07/11 Fri | Hill, T 13111-130/377 | 0.20 | 0.20 | 150.00 | | 1 | MATTER NAME: Fee Application EXECUTE SEVENTH SUPPLEMENTAL DECLARATION FOR TRIBUNE MATTER. |
| 01/07/11 Fri | Napoliello, M 13111-130/502 | 1.80 | 1.80 | 351.00 | | 1 | MATTER NAME: Fee Application PREPARE NOVEMBER EXHIBITS. |
| 01/07/11 Fri | Napoliello, M 13111-130/503 | 0.30 | 0.30 | 58.50 | | 1 | MATTER NAME: Fee Application REVIEW DOCKET FOR CNO DATA. |
| 01/10/11 Mon | Napoliello, M 13111-130/509 | 1.60 | 1.60 | 312.00 | | 1 | MATTER NAME: Fee Application WORK ON EXHIBITS FOR NOVEMBER STATEMENT. |
| 01/11/11 Tue | Napoliello, M 13111-130/504 | 2.70 | 2.70 | 526.50 | | 1 | MATTER NAME: Fee Application FINALIZE DRAFT OF NOVEMBER EXHIBITS. |
| 01/11/11 Tue | Whitman, B 13111-130/1029 | 0.40 | 0.40 | 280.00 | | 1 | MATTER NAME: Fee Application REVIEW NOVEMBER FEE APPLICATION. |
| 01/12/11 Wed | Berger, M 13111-30/23 | 0.60 | 0.60 | 210.00 | | 1 | MATTER NAME: AP/Vendor Issues REVIEW FEE APPLICATIONS PRIOR TO PREPARING UPLOAD TEMPLATES. |
| 01/12/11 Wed | Berger, M 13111-30/24 | 0.80 | 0.80 | 280.00 | | 1 | MATTER NAME: AP/Vendor Issues PREPARE UPLOADS FOR FEE APP VENDORS. |
| 01/12/11 Wed | Berger, M 13111-30/25 | 0.70 | 0.70 | 245.00 | | 1 | MATTER NAME: AP/Vendor Issues REVIEW UPLOADS COMPARED TO OCP MODEL TO ENSURE ACCURACY FOR FEE APPLICATION VENDORS. |
| 01/12/11 Wed | Napoliello, M 13111-130/505 | 1.10 | 1.10 | 214.50 | | 1 | MATTER NAME: Fee Application INCORPORATE EDITS TO NOVEMBER EXHIBITS. |

~ See the last page of exhibit for explanation

EXHIBIT I PAGE 3 of 5

EXHIBIT I

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | DESCRIPTION |
|------|-----------------|-------------|-------|------|------------|---|-------------|
| 01/12/11 Wed | Napoliello, M 13111-130/506 | 1.80 | 1.80 | 351.00 | | 1 | *MATTER NAME: Fee Application* DRAFT COVER SHEET AND APPLICATION FOR NOVEMBER STATEMENT. |
| 01/13/11 Thu | Napoliello, M 13111-130/507 | 2.40 | 2.40 | 468.00 | | 1 | *MATTER NAME: Fee Application* PREPARE DRAFT OF 8TH INTERIM FEE DATA. |
| 01/17/11 Mon | Berger, M 13111-30/42 | 1.00 | 1.00 | 350.00 | | 1 | *MATTER NAME: AP/Vendor Issues* UPDATE OCP SPREADSHEET AND OCP MODEL WITH NEW INVOICES RECEIVED TODAY PRIOR TO PREPARING MONTHLY REPORT. |
| 01/24/11 Mon | Napoliello, M 13111-130/508 | 1.20 | 1.20 | 234.00 | | 1 | *MATTER NAME: Fee Application* DRAFT EXHIBITS FOR DECEMBER STATEMENT. |
| 02/07/11 Mon | Napoliello, M 022811-130/764 | 1.80 | 1.80 | 351.00 | | 1 | *MATTER NAME: Fee Application* BEGIN PREPARATION OF DECEMBER EXHIBITS. |
| 02/08/11 Tue | Napoliello, M 022811-130/765 | 2.30 | 2.30 | 448.50 | | 1 2 | *MATTER NAME: Fee Application* PREPARE DECEMBER EXHIBITS; REVIEW DATA. |
| 02/09/11 Wed | Napoliello, M 022811-130/763 | 4.10 | 4.10 | 799.50 | | 1 | *MATTER NAME: Fee Application* FINALIZE FIRST DRAFT OF DECEMBER EXHIBITS. |
| 02/10/11 Thu | Napoliello, M 022811-130/766 | 2.20 | 2.20 | 429.00 | | 1 | *MATTER NAME: Fee Application* INCORPORATE EDITS TO DECEMBER EXHIBITS. |
| 02/10/11 Thu | Napoliello, M 022811-130/767 | 0.30 | 0.30 | 58.50 | | 1 | *MATTER NAME: Fee Application* REVIEW CASE DOCKET FOR CNO DATA. |
| 02/10/11 Thu | Napoliello, M 022811-130/768 | 1.80 | 1.80 | 351.00 | | 1 | *MATTER NAME: Fee Application* DRAFT COVER SHEET AND APPLICATION. |
| 02/11/11 Fri | Whitman, B 022811-130/1318 | 0.20 | 0.20 | 140.00 | | 1 | *MATTER NAME: Fee Application* REVIEW DECEMBER FEE APPLICATION. |

Total

Number of Entries:     37

| | | | 42.10 | $9,902.00 | | | |
|---|---|---|---|---|---|---|---|

~ See the last page of exhibit for explanation

EXHIBIT I  PAGE 4 of  5

EXHIBIT I

A&M RETENTION/COMPENSATION

Alvarez & Marsal North America, LLC

### SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Berger, M | 3.50 | 1,225.00 |
| Frank, M | 1.30 | 520.00 |
| Hill, T | 0.70 | 525.00 |
| Napoliello, M | 35.60 | 6,942.00 |
| Whittman, B | 1.00 | 690.00 |
| | 42.10 | $9,902.00 |

### SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| AP/Vendor Issues | 3.50 | 1,225.00 |
| Fee Application | 38.60 | 8,677.00 |
| | 42.10 | $9,902.00 |

(-) REASONS FOR TASK HOUR ASSIGNMENTS

F        FINAL BILL

EXHIBIT I  PAGE 5 of  5