IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**TRIBUNE COMPANY, et al.,**<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Hearing Date and Time: June 7, 2012 at 3:00 p.m. (EST)<br>Objection Deadline: May 21, 2012 at 11:59 p.m. (EST) |

**OBJECTION OF CITADEL EQUITY FUND LTD. AND CAMDEN
ASSET MANAGEMENT LP TO CONFIRMATION OF FOURTH AMENDED
JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS
SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P.,
ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.**

TO:    THE HONORABLE KEVIN J. CAREY
       UNITED STATES BANKRUPTCY JUDGE

Citadel Equity Fund Ltd., a Cayman Islands company, and Camden Asset Management LP (referred to herein as the "Tendering Noteholders"), by their undersigned counsel, for their objection (this "Objection") to confirmation of the Fourth Amended Joint Plan of Reorganization proposed by Tribune Company ("Tribune") and certain other parties (collectively, the "Plan Proponents") [Docket No. 11399] (as amended or supplemented, the "Plan"),[1] respectfully represent:

**INTRODUCTION**

1.     The Tendering Noteholders, in the aggregate, hold approximately $222 million initial principal amount of PHONES. Based on this Court's ruling in the Decision (identified below), the claims held by the Tendering Noteholders could arguably aggregate approximately $26 million. Under the terms of the Plan, the Tendering Noteholders' claims are classified together with, and receive the same treatment as, the Original PHONES claims, notwithstanding that, based on this Court's Decision, such claims are not "substantially similar" within the

---
[1] Capitalized terms not defined herein shall, expect as otherwise indicated, have the meanings ascribed to them in the Plan.

NYC:239912.4

meaning of Section 1122 of the Bankruptcy Code. Because the Plan classifies such claims together and treats them identically in violation of Section 1122 of the Bankruptcy Code, the Plan cannot be confirmed, as a matter of law.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

**A.      PHONES**

2.      The PHONES were issued in April 1999 pursuant to an Indenture, dated as of April 1, 1999 (the "PHONES Indenture"). The PHONES Indenture provides, among other things, that each holder thereof has the right, at any time, to exchange all or a portion of its PHONES for an amount of cash per PHONE equal to 95% of the market value of two shares of common stock of Time Warner, Inc., as successor by merger to America Online Inc. (the "Exchange Option"). To exercise the Exchange Option, a holder of PHONES must send an exchange notice and surrender the PHONES for cancellation. Once the notice is sent and Tribune acknowledges that it has taken possession of the PHONES tendered for exchange, Tribune is required to make the appropriate cash payment to the tendering PHONES holder.

3.      Article XIV of the PHONES Indenture governs the subordination provisions relating to the PHONES. Section 14.02 of the PHONES Indenture provides, in pertinent part:

> Upon any distribution of assets of the Company in the event of … any … bankruptcy case or proceeding, … then and in such event
>
> (A) the holders of Senior Indebtedness shall be entitled to receive payment in full of all amounts due or to become due on or in respect of all Senior Indebtedness, or provision shall be made for such payment in cash, before the *Holders of the Securities* of any series are entitled to receive any payment on account of the principal amount, interest or such other amounts as may be provided for in Section 3.01, if any, in respect of the Securities of such series…

(Emphasis added.)  Section 14.02 makes clear that the subordination provisions of the PHONES Indenture only apply with respect to payments to be made to holders of PHONES and does not in any way subordinate the entitlement to a cash payment under the Exchange Option.

4. Immediately prior to the Petition Date, numerous holders of PHONES, including the Tendering Noteholders, attempted to exercise the Exchange Option by delivering exchange notices (the "Exchange Notices"). Tribune acknowledged receipt and/or notice of the Exchange Notices but failed to make the requisite cash payment prior to the Petition Date. After the Petition Date, a number of the PHONES holders that had exercised the Exchange Option sent requests seeking to withdraw their Exchange Notices. By letter, dated January 14, 2009, Tribune informed the then-trustee for the PHONES that it would not honor such requests for withdrawal and that Tribune considered the election made by the Tendering Noteholders to be final and irrevocable.

5. The Debtors contended that the aggregate claim amount of the PHONES holders that exercised the Exchange Option is approximately $56 million - - a cash amount equal to ninety-five percent (95%) of the computed market value of two shares of Time Warner, Inc. common stock for each tendered PHONE. Wilmington Trust Co., as successor Indenture trustee for, and at that time on behalf of, the holders of PHONES that exercised the Exchange Option and never received the cash payment, has contended before this Court that the aggregate value of their claim is approximately $481 million (i.e., the same claim amount, per-PHONE, as those PHONES holders that did not exercise the Exchange Option).

B. **October 31, 2011 Confirmation Opinion**

6. On October 31, 2011, this Court entered its opinion denying confirmation of two competing plans of reorganization for the Debtors [Docket No. 10133] (the "Confirmation Opinion"). In the Confirmation Opinion, this Court briefly addressed the dispute relating to the

3

amount of the claims of the prior holders of PHONES that exercised the Exchange Option. This Court determined that it did not have a sufficiently developed record to resolve the issue at that time. This Court did, however, expressly hold that the claims of such holders could not, under Section 510(b) of the Bankruptcy Code, be subordinated to the claims of holders of PHONES that did not exercise the Exchange Option.

C.     **April 9, 2012 Allocation Decision**

7.     On April 9, 2012, this Court issued its Memorandum Regarding Allocation Disputes [Docket No. 11337] (the "Memorandum") and accompanying Order Regarding Allocation Disputes [Docket No. 11338] (the "Order" and, together with the Memorandum, the "Decision"). After reviewing additional evidence (including a stipulation among the parties participating in that litigation), this Court made a ruling with respect to the amount of the claims of the holders of PHONES that exercised the Exchange Option. This Court did not expressly make any ruling with respect to the classification of the Tendering Noteholders' claims.

8.     In the Decision, this Court held that, as of the Petition Date, because the Tendering Noteholders surrendered their PHONES for cancellation, such PHONES were no longer "outstanding." As a result, this Court concluded that Tribune was obligated, as of the date such PHONES were tendered, to pay such holders a cash amount equal to the applicable exchange rate. Based on the foregoing, this Court concluded that the Tendering Noteholders held a claim against Tribune for the cash amount that Tribune was obligated to pay to such holders on the Petition Date - - approximately $18.26 per PHONE previously held by such holder.

9.     This Court's Decision, however, is unclear as to whether (i) the Tendering Noteholders (and other PHONES holders that exchanged their PHONES) hold "PHONES claims," albeit in a significantly reduced amount (approximately twelve percent (12%) of the

4

Original PHONES), or (ii) the Tendering Noteholders hold general unsecured claims equal to the cash amount that Tribune is obligated to pay such holders as a result of their tender of their PHONES. The Memorandum contains the following chart (the "Allocation Chart"):

|  | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $ 1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) | ($60,121,771) |
| subtotal | 7,613,351 | $ 1,183,833,767 |
| Less Exchanges subject to determination (tendered during the Exchange Period, including the rejected DWAC tenders) | (3,093,941) | ($ 481,090,630) |
| subtotal | 4,519,410 | $ 702,743,137 |
| Add Exchange Value of Accepted DWAC Tenders (including Rejected DWAC tenders) |  | $ 56,509,795 |
| Total | 4,519,410 | $759,252,932 |

10. In the Allocation Chart, this Court reduced the total "Number of PHONES" outstanding from 7,613,351 to 4,519,410 by subtracting the number of PHONES that were delivered for cancellation by the PHONES holders that exercised the Exchange Option. This would support the conclusion that this Court determined that such holders no longer hold "PHONES claims," but rather, hold general unsecured claims for the cash exchange amount payable by Tribune. At the same time, however, in the Allocation Chart, this Court also included in the total "PHONES Claim Amount" the approximate $56 million cash amount that Tribune is obligated to pay the holders of PHONES that exercised the Exchange Option. Accordingly, it is unclear what this Court's determination was (if any) with respect to the "type" or "class" of

NYC:239912.4

claims the Tendering Noteholders (and other PHONES holders that exercised the Exchange Option) have.

**D.**     **Fourth Amended Plan**

11.     On April 17, 2012, the Plan Proponents filed the Plan. Under the terms of the Plan, holders of Original PHONES Claims and claims held by the Tendering Noteholders and other PHONES holders that exercised the Exchange Option are classified together in, and receive the same treatment under, Class 1J. The Tendering Noteholders, however, received ballots for voting on the Plan that specifically reflected that they held "PHONES Notes Exchange Claims." The Plan provides that the aggregate amount of "PHONES Notes Claims" is $759,252,932 (plus unpaid interest that accrued between November 15, 2008 and December 8, 2008) (the "Plan PHONES Amount"). Under the Plan, all holders of Class 1J Claims shall receive their pro rata share, determined by reference to the Plan PHONES Amount, of Class 1J Litigation Trust Interests.

**E.**     **Tendering Noteholders Motion for Reconsideration or Clarification**

12.     On April 23, 2012, the Tendering Noteholders filed their Motion for Reconsideration and/or Clarification of this Court's April 9, 2012 Memorandum and Order Regarding Allocation Disputes [Docket No. 11458] (the "Clarification Motion"). The Clarification Motion sought clarification and/or reconsideration with respect to two discrete issues raised in the Decision:

   A.   Did this Court, in its Decision, intend in any way to affect the rights and remedies of Tendering Noteholders in the state law fraudulent conveyance litigation captioned *In re: Tribune Company Fraudulent Conveyance Litigation,* 11-MD-02296 (WHP) (S.D.N.Y.) (the "MDL")) (or, alternatively, were all such matters relating to the MDL entirely reserved for disposition by the MDL Court)?

   B.   Did this Court, in its Decision, intend in any way, to fix or establish the classification of the claims of Tendering Noteholders in any Chapter 11 Plan for the Debtors (or, alternatively, was that issue reserved for determination in connection with Plan confirmation)?

6

In the Clarification Motion, the Tendering Noteholders also expressly reserved their rights with respect to appeal on issues raised in the Decision including, without limitation, the determination of the Tendering Noteholders' claim amount.

13.     In sum, the Clarification Motion sought confirmation or clarification whether this Court intended for its Decision to (i) affect the rights and remedies of the Tendering Noteholders in the MDL and/or (ii) fix or establish the classification of the Tendering Noteholders' claims under any chapter 11 plan for the Debtors (including the Plan). If this Court did, indeed, intend to affect the Tendering Noteholders' rights under the MDL and establish the classification of the Tendering Noteholders' claims, the Clarification Motion requested that this Court reconsider its conclusions for the reasons set forth in the Clarification Motion.

F.     **Hearing on Scheduling Matters**

14.    On April 27, 2012, at this Court's request, this Court held a hearing (the "Scheduling Hearing") with respect to, among other things, scheduling matters relating to the Clarification Motion. At the Scheduling Hearing, this Court stated:

> The Motion for Reconsideration raises two issues, both of which the movant acknowledges were not addressed by the Court's allocation decision. And that should come as no surprise because, as the parties had defined and the Court had memorialized, the determinations to be made, *neither of the questions that the movant now raises were to be decided in the allocation determination*.

April 27, 2012 Transcript, pp. 6:24 - 7:5 (Emphasis added).

This Court further stated:

> With respect to the second issue, that is the classification of the PHONES claims based upon what I'll describe, I guess, as a bifurcation of the amounts, I see that and would intend to handle that in connection with confirmation. So if the movants here think that, based upon how the debtor -- well, the DCL proponents plan to or do propose to classify them under what's now the fourth amended plan in a way with which they disagree, then they can file

>   the appropriate confirmation objection and I'll address it, if need
>   be, in connection with the confirmation hearing.

April 27, 2012 Transcript, pp. 7:19 - 8:3.

15. At the Scheduling Hearing, this Court held that objections with respect to the Clarification Motion were due by May 21, 2012 and that the hearing with respect to the Clarification Motion would take place on June 7, 2012 (at the same time as the hearing with respect to confirmation of the Plan). This Court has not ruled with respect to the Clarification Motion.

## BASIS FOR RELIEF

16. Section 1122(a) of the Bankruptcy Code mandates that dissimilar claims be separately classified, and that only substantially similar claims may be classified together:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class *only* if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. §1122(a) (emphasis added).

17. Under Section 1122, only "substantially similar" claims may be classified together. Indeed, Section 1122 prohibits placing dissimilar claims in the same class. *See, e.g.*, *In re Dow Corning Corp.*, 280 F.3d 648, 651 (6th Cir. 2002)); *Fairfield Exec. Assocs. v. Hyperion Credit Cap. Partners (In re Fairfield Exec. Assocs.)*, 161 B.R. 595, 600 (D. N.J. 1993); *In re Loop 76*, 442 B.R. at 715 ("[i]n other words, what §1122(a) requires is that dissimilar claims must be placed in different classes."); *In re Red Mountain Mach. Co.*, 448 B.R. 1, 6 (Bankr. D. Ariz. 2011) (explaining that section 1122 "explicitly *requires* substantially dissimilar claims to be placed in separate classes.") (emphasis in original). In order to determine whether claims are "substantially similar," "courts have looked at the nature of the claim (*e.g.*, senior or subordinated, secured or unsecured), and the relationship of the claim to property of the debtor."

7 COLLIER ON BANKRUPTCY ¶ 1122.03[3]. The term "'substantially similar' must be construed to mean similar in legal character or effect as a claim against the debtor's assets or as an interest in the debtor." *Id.*; *see also, e.g.*, *In re Dow Corning Corp.*, 255 B.R., at 495.

18. Numerous courts have held that subordinated debt and non-subordinated debt have different legal "nature" or "rights" with respect to property of a debtor. *See e.g., In re McKenzie*, 4 B.R. 88, 90 (Bankr. W.D.N.Y 1980) ("Where each of two classes is unsecured, but one is by contract subordinated to the other, they have different rights in whatever property is available for unsecured claims."); *see also In re Walnut Equip. Leasing Co., Inc.*, No. 97-19699, 1999 WL 1068448, n.4 (Bankr. E.D. Pa. Nov. 23, 1999) (finding it "rather obvious that the holders of subordinated debt do not have claims substantially similar to the holders of senior debt . . . ." and should therefore be classified separately under Section 1122).

## ARGUMENT

19. Under the terms of the Plan, the Tendering Noteholders' claims are classified in the same class, and treated identically, as Original PHONES claims. Based on this Court's ruling in the Decision (and for the reasons set forth above and at length in the Clarification Motion, which is incorporated by reference in its entirety herein), however, it is clear that, the Tendering Noteholders' claims, based on this Court's Decision, are substantially different (as a matter of fact and law) from the Original PHONES Claims.

20. In its Decision, this Court held that the Tendering Noteholders irrevocably exercised their right to exchange the PHONES by delivering them for cancellation. As a result, the PHONES that were tendered for exchange were no longer "outstanding" (and, by extension, the Tendering Noteholders no longer "held" such PHONES). This Court further held that, because the Tendering Noteholders had exchanged their PHONES, and Tribune had not complied with its payment obligations in connection with such exchange, the Tendering Noteholders hold

a claim against the Debtors in an amount equal to the $18.26 per PHONE - - i.e., the cash amount Tribune was obligated to pay the Tendering Noteholders as of the Petition Date. Such cash amount is, on a per-PHONE basis, significantly less than - - indeed, approximately twelve percent (12%) of - - the amount of the claim that PHONES holders that did not exercise the Exchange Option have against the Debtors.

21.   Moreover, under Section 14.02 of the PHONES Indenture, the subordination provisions of the PHONES Indenture only apply to payments to be made to "Holders of the [PHONES]." As set forth in the Decision, the PHONES that were tendered for exchange are no longer "outstanding." If the tendered PHONES are no longer outstanding, then the Tendering Noteholders cannot, by definition, be "holders" of such PHONES. Accordingly, by the clear terms of the PHONES Indenture, the payments to be made with respect to the claims of the Tendering Noteholders are not subject to the subordination provisions of the PHONES Indenture.

22.   The Tendering Noteholders submit that holders that exercised the Exchange Option hold general unsecured "non-PHONES claims" against the Debtors that are not "substantially similar" to the Original PHONES Claims, for purposes of, among others, Section 1122 of the Bankruptcy Code. Because the Tendering Noteholders' claims are not "substantially similar" to the Original PHONES Claims (for the reasons set forth at length herein, in the Decision and in the Clarification Motion), such claims cannot be classified together and treated identically under the Plan. Because the Plan classifies such claims together and treats them identically (notwithstanding their different legal rights), the Plan cannot be confirmed.

## **RESERVATION OF RIGHTS**

23.   The Tendering Noteholders expressly reserve all rights with respect to (i) to amendment and/or supplement of this Objection, (ii) appeals with respect to issues raised in the Decision including, without limitation, the determination of the Tendering Noteholders' claim

amount, and (iii) additional objections to confirmation of the Plan including, without limitation, the determination of the Tendering Noteholders' claim amount.

WHEREFORE, for all of the foregoing reasons, the Tendering Noteholders respectfully request that the Court: (i) deny confirmation of the Plan and (ii) grant such other and further relief as is just, proper and equitable.

Dated:  May 21, 2012

COZEN O'CONNOR

_____
Mark E. Felger (No. 3919)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

-and-

ANDREWS KURTH LLP
Paul N. Silverstein (admitted *pro hac vice*)
Jeremy B. Reckmeyer (admitted *pro hac vice*)
450 Lexington Avenue, 15th Floor
New York, NY 10017
Telephone:  (212) 850-2800
Facsimile:  (212) 850-2929

*Counsel to Citadel Equity Fund Ltd.*
*and Camden Asset Management LP*