## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br>    Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: June 7, 2012 at 3:00 p.m. (ET)**<br>**Related to Docket No. 11458** |

## DEBTORS' RESPONSE TO MOTION OF CITADEL EQUITY FUND LTD. AND CAMDEN ASSET MANAGEMENT FOR RECONSIDERATION AND/OR CLARIFICATION OF THE COURT'S APRIL 9, 2012 MEMORANDUM AND ORDER REGARDING ALLOCATION DISPUTES

The debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors") submit this response (the "Response") to the Motion for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611

Reconsideration and/or Clarification of the Court's April 9, 2012 Memorandum and Order

Regarding Allocation Disputes [Docket No. 11458] (the "Motion") filed by Citadel Equity Fund

Ltd. ("Citadel") and Camden Asset Management ("Camden" together with Citadel, the

"Tendering Noteholders").

## PRELIMINARY STATEMENT

The Motion seeks clarification and, if necessary, reconsideration of the Court's April 9,

2012 Memorandum and Order Regarding Allocation Disputes. In re Tribune Co., No. 08-13141,

2012 Bankr. LEXIS 1563, at *22 (Bankr. D. Del. Apr. 9, 2012) (together the "Allocation

Disputes Decision") [Docket No. 11337] with respect to two issues:

> A.      Did this Court, in its [Allocation Disputes] Decision, intend in any way to affect
> the rights and remedies of Tendering Noteholders in the state law fraudulent conveyance
> litigation captioned In re: Tribune Company Fraudulent Conveyance Litigation, 11-MD-
> 02296 (WHP) (S.D.N.Y.) (the "MDL") (or, alternatively, were all such matters relating to
> the MDL entirely reserved for disposition by the MDL Court)?
>
> B.      Did this Court, in its [Allocation Disputes] Decision, intend in any way, to fix or
> establish the classification of the claims of Tendering Noteholders in any Chapter 11 Plan
> for the Debtors (or, alternatively, was that issue reserved for determination in connection
> with Plan confirmation)?

Motion at ¶ 2.

The Debtors respectfully submit that these issues have been resolved by other

proceedings and decisions in these Chapter 11 cases that predated the Allocation Disputes

Decision. Neither Citadel nor Camden has appeared or actively participated in these Chapter 11

cases prior to filing the instant Motion. The Motion thus seeks clarification and reconsideration

of issues that the parties have been litigating for years, and that the Court has addressed and

resolved, while the Tendering Noteholders sat on the sidelines. The prior proceedings and

decisions make clear the following:

2

(A) The Court has consistently stated that its rulings are not intended to resolve issues in the Disclaimed State Law Avoidance Claims[2] now being litigated as part of the MDL. The Allocations Disputes Decision is not exempt from this general principle, and the Debtors do not object to an order stating that is the case. To the extent that the Tendering Noteholders suggest, however, that the Court's rulings in these Chapter 11 proceedings do not "in any way affect the rights and remedies of Tendering Noteholders in the MDL" (Motion at 8), they are mistaken. The Tendering Noteholders, or their representatives, plainly could not, for instance, advance causes of action in the MDL that go beyond the Disclaimed State Law Avoidance Claims to encompass claims that are released under the settlement that is central to the Fourth Amended DCL Plan.

(B) The rights of the Tendering Noteholders are defined by the PHONES Notes Indenture. The Court in several prior decisions has interpreted various provisions of the PHONES Notes Indenture and concluded that the claims of the Tendering Noteholders should be classified with the PHONES Noteholder claims, and that the act of tender did not somehow transform those claims or erase the applicable subordination provisions.[3] The Allocation Disputes Decision is entirely consistent with that conclusion.[4]   Accordingly, the Debtors request

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 11354], as subsequently amended [Docket Nos. 11388, 11399] (the "Fourth Amended DCL Plan").

[3] See In re Tribune Co., 464 B.R. 126, 196-97 (Bankr. D. Del. 2011) (the "Confirmation Decision") ("the issue here addresses priorities between subordinated creditors on 'the same level,' ... Whether the amount of the Tendering Holders' claim is fixed as of the date the Exchange Notices were given, or whether the Exchange Notices were revoked or never took effect for failure of the Debtors to complete the process, the PHONES Noteholder claims should be treated alike.) (emphasis added).

[4] Although the Tendering Noteholders do not describe the relief they seek in these terms, the Motion makes clear that they in fact seek improved treatment under the Plan via classification as non-subordinated general unsecured claims.  See Motion at ¶ 24.  They seek this relief notwithstanding the fact that the PHONES Notes Indenture, under which their rights were created, contains an unambiguous subordination provision.  As described in Section II.C. below, this request conflicts with the Court's prior decisions in this case.

3

that the Court clarify that the Allocation Disputes Decision did not alter its prior decisions

holding that the Tendering Noteholders' claims should be treated like claims of the non-

tendering PHONES Noteholders.

**ARGUMENT**

I.    **THE ALLOCATION DISPUTES DECISION DOES NOT RESOLVE ISSUES
      REGARDING THE DISCLAIMED STATE LAW AVOIDANCE CLAIMS.**

The Court has consistently stated it does not intend to resolve issues in the Disclaimed

State Law Avoidance Claims now being litigated as part of the MDL, and that disputes with

respect to such claims should be determined by the MDL Court and not by this Court.  For

example, in granting the motion of certain parties for authority to pursue the Disclaimed State

Law Avoidance Claims, this Court stated: "For the avoidance of doubt, by this Order, this Court

makes no finding and issues no ruling determining the standing of the Original Plaintiff's Group

(or any creditor) to assert the Creditor SLCFC Claims or whether such claims are preempted or

otherwise impacted by 11 U.S.C. § 546(e)."  Order Granting (I) Relief from the Automatic Stay

to the Extent the Automatic Stay Bars Commencement by Creditors of State Law Constructive

Fraudulent Conveyance Claims to Recover Stock Redemption Payments Made to Step One

Shareholders and Step Two Shareholders and (II) Leave From the Mediation Order to Permit

Commencement of Litigation on Account of Such Claims [Docket No. 8740] (Bankr. D. Del.

April 25, 2011), p. 4.

The Debtors believe that nothing in the Allocation Disputes Decision addressed, much

less altered, the Court's previously stated intention not to adjudicate the rights of the parties to

the MDL with respect to the Disclaimed State Law Avoidance Claims.  Accordingly, the Debtors

do not object to an order stating that the Allocation Disputes Decision was not intended to

adjudicate the rights of the Tendering Noteholders with respect to the Disclaimed State Law

4

Avoidance Claims being addressed in the MDL.  The Debtors do, however, object to the extent

that the Tendering Noteholders seek to expand the Court's previously stated intention not to

interfere with litigation of the Disclaimed State Law Avoidance Claims to encompass any other

claims, or to otherwise imply that the Court's rulings on issues other than the Disclaimed State

Law Avoidance Claims somehow lack binding force.

## II.    THE ALLOCATION DISPUTES DECISION IS CONSISTENT WITH THE CONFIRMATION DECISION'S APPROVAL OF THE CLASSIFICATION OF THE TENDERING NOTEHOLDERS' CLAIMS

The issue of the classification of the Tendering Noteholders' claims is illuminated by a

brief summary of the exchange rights and procedures for exercising those rights under the

PHONES Notes and the Court's prior consideration concerning the classification of the

Tendering Noteholders' claims.

### A.    The Exchange Rights and Procedures

As set forth in the Allocation Disputes Decision, the terms of the PHONES global note

(the "Global Note") provide that the holder of each PHONES Note has a right at any time and

from time to time to exchange each PHONES Note (the "Exchange Rights") for an amount of

cash based on the value of certain reference stock.  Allocation Disputes Decision, 2012 Bankr.

LEXIS 1563, at *22.  The Global Note also sets forth detailed procedures for exercise of the

Exchange Rights.  In 2008, those procedures were modified in a Revised Exchange Notice,

which again provides in detail how the PHONES Noteholders could tender their PHONES Notes

to exercise their Exchange Rights.  Id. at *23-24.

### B.    Prior Proceedings on the Amount and Classification of the PHONES Notes

Tribune Company listed the amount of the PHONES Notes on its Amended Schedules of

Assets and Liabilities, dated April 13, 2009, as $758,871,303 [Docket No. 938, Sch. F].[5]  On

---

[5] This amount included the claims of all PHONES Noteholders, including the Tendering Noteholders.

June 5, 2009, Wilmington Trust Company, as Successor Indenture Trustee for the PHONES

Notes ("WTC"), filed a proof of claim on behalf of the holders of the PHONES Notes, asserting

that the aggregate amount of the PHONES Notes is approximately $1.197 billion.  On December

30, 2010, WTC filed a Motion for (i) Estimation of the PHONES Claims and (ii) Classification

of PHONES Claims Pursuant to Bankruptcy Rule 3013 (the "PHONES Motion") [Docket No.

7352].  Neither Citadel nor Camden joined in or responded to the PHONES Motion.  By Order

dated February 4, 2011, the PHONES claims were allowed solely for voting purposes in the

amount of $1,196,823,429.80.  [Docket No. 7777].  The disputes regarding the amount of the

PHONES Notes and the classification of the PHONES claims were reserved for further

consideration at confirmation.

Following briefing and oral arguments in connection with confirmation (in which again

neither Citadel nor Camden participated), the Court considered (i) whether the Tendering

Noteholders' claims were limited to the amounts due from the Debtors per the Exchange Rights

provisions of the PHONES Notes as a result of their tenders, and (ii) whether the Tendering

Noteholders' claims should be subordinated to the claims of non-tendering PHONES

Noteholders pursuant to §510(b) of the Bankruptcy Code.

As to the first issue, the Court found that the record was insufficient to determine the

amount of PHONES Noteholders' claims.  See Confirmation Decision, 464 B.R. at 195-97.  This

issue was of course later decided in the Allocation Disputes Decision.

In addressing the second issue, the Court explicitly noted that the issue "could impact

claim classification."  Addressing the arguments of certain Tendering Noteholders (other than

Citadel and Camden) that §510(b) does not apply because "their claims are not for damages

arising out of the purchase or sale of the PHONES Notes, but are claims to collect the amount

due under the terms of the Notes" (id. at 197), the Court concluded that the Tendering

Noteholders were not subordinated to the non-tendering PHONES Noteholders, <u>regardless</u> of whether their claims were ultimately held to be the face amount of their PHONES Notes or, alternatively, limited to the amount due as a result of the exercise of their Exchange Rights. Making clear that the tender did not impact the priority of PHONES Notes claims, the Court stated: "Whether the amount of the Tendering Holders' claim is fixed as of the date the Exchange Notices were given, or whether the Exchange Notices were revoked or never took effect for failure of the Debtors to complete the process, <u>the PHONES Noteholder claims should be treated alike</u>." <u>Id.</u> (emphasis added).

In reaching its decision, this Court cited and discussed (see <u>id.</u>) <u>Blondheim Real Estate, Inc.</u>, 91 B.R. 639 (Bankr. D.N.H. 1988), in which the court determined that a noteholder's claims for the amounts owing on the debtor's notes were not claims for damages subject to § 510(b), noting that the "concept of 'damages' has the connotation of some recovery <u>other than</u> the simple recovery of an unpaid debt due upon an instrument. <u>Id.</u> at 640 (emphasis in original). This Court also quoted (Confirmation Decision, 464 B.R. at 197) the <u>Blondheim</u> court's review of § 510(b)'s legislative history, stating that the history is

> focused upon the question of appropriate treatment of <u>inferior-level</u> claims that arguably might be <u>upgraded</u> to a higher level by virtue of some fraud ground justifying recovery by the security holder against the debtor. There is no discussion whatsoever in the legislative history as to priority questions between "trade creditors" and "investors" who are <u>same-level</u> unsecured creditors.

<u>Blondheim</u>, 91 B.R. at 641 (emphasis in original). In applying <u>Blondheim</u> to this case, this Court concluded: "Like <u>Blondheim</u>, the issue here addresses priorities between <u>subordinated creditors on 'the same level</u>,' rather than a noteholder's attempt to bootstrap its claim into a more senior class expected to receive a better recovery." Confirmation Decision, 464 B.R. at 197 (emphasis added). Finally, the Court noted, "[t]he purpose of Section 510(b) is to prevent creditors or equity holders from upgrading their claim position" (<u>id.</u>); however, the Court concluded that

7

section 510(b) could not be used to further subordinate the Tendering Holders' claims beneath the other PHONES Notes Claims.

###### C. Consistent With the Confirmation Decision, the Allocation Disputes Decision Included the Tendering Noteholders' Claims as Part of the PHONES Noteholders' Claims

In the Allocation Disputes Decision, this Court addressed and resolved a number of questions relating to the PHONES Notes, including the allowed amount of the PHONES Notes claim and several issues related to the subordination provisions of the PHONES Notes. In reaching the Decision, the Court relied on a stipulation (the "Stipulation") entered into by the Debtors, Aurelius Capital Management, WTC, Barclays PLC and Waterstone Capital Management, L.P regarding certain facts relevant to the determination of the allowed amount of the PHONES claim. Allocation Disputes Decision, 2012 Bankr. LEXIS 1563, at *21. Neither Citadel nor Camden participated in the Stipulation or otherwise made any appearance in connection with the Allocation Disputes, despite having been on notice of the issues.[6] Although the parties to the Stipulation did not agree whether the "High" or "Low" PHONES amount should be adopted by the Court, they did agree that, in calculating the amount of the PHONES Notes claim, the amounts attributable to the claims of the Tendering Noteholders should be included together with the amounts attributable to the claims of the non-tendering PHONES Noteholders. Stipulation ¶¶ 35, 38 (alternative calculations of the PHONES amounts explicitly including the value of tendered PHONES Notes in the total PHONES claim amount).

Likewise, in the Allocation Disputes Decision, in concluding that "the claim amount for the PHONES Noteholders should be $759,252,932" (Allocation Disputes Decision, 2012 Bankr.

---

[6] On January 27, 2012, the Debtors caused Epiq to serve by Federal Express a copy of the Order Establishing Scheduling for (1) Resolution of the Allocation Disputes and (2) Consideration of DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion and Plan [Docket No. 10692] to all holders of claims in the classes of claims whose rights would be adjudicated during the proceedings involving the Allocation Disputes. See Affidavit of Service of Eleni Manners [Docket No. 10825].

LEXIS 1563, at *88), the Court included both the claims of the Tendering Noteholders

($56,509,795) and the non-tendering Noteholders ($702,743,137) in a single aggregate claim

amount. Id. at *33. The Court's inclusion of the claims of the Tendering Noteholders in

calculating the total claims of the PHONES Noteholders was completely consistent with the

conclusion in the Confirmation Decision that the Tendering Noteholders were "subordinated

creditors on 'the same level'" as the non-tendering Noteholders and that "the PHONES

Noteholder claims should be treated alike." See Confirmation Decision, 464 B.R. at 197.

    Ignoring the Court's conclusions in the Confirmation Decision, the Tendering

Noteholders now attempt to reopen the issue and suggest that by tendering their PHONES Notes

the Tendering Noteholders somehow escaped the subordination provisions of the PHONES

Notes. Motion ¶¶ 22-26.[7] In support of this suggestion, the Tendering Noteholders cite Section

14.02 of the PHONES indenture, which provides that the subordination provisions apply to

payments to be made to "Holders" of the PHONES Notes, arguing that by tendering their notes

they ceased to be "Holders" and thus ceased to be bound by the subordination provisions. The

Tendering Noteholders' argument ignores not only the Confirmation Decision, but also the fact

that both the Global Note and the Revised Exchange Notice state that payment amounts for the

tendered shares will be made to the "tendering Holder(s)" (emphasis added) even though the

"Holders" at the point of payment have previously tendered their Notes. Stipulation ¶¶ 14, 15.

Moreover, the subordination rights created under Section 14.02 are applicable upon "any

distribution of assets of the Company" following "any insolvency or bankruptcy case" (emphases

added). The structure and language of the governing documents thus belie the Tendering

---

[7] In arguing that their claims should not be classified with the claims of the other PHONES Noteholders (Motion at ¶¶ 22-26), the Tendering Noteholders seek to have it both ways. On one hand, they seek to be treated as PHONES Noteholders represented by the indenture trustee Wilmington Trust for the purpose of pursuing the Disclaimed State Law Avoidance Claims in the MDL actions. On the other hand, and yet at the same time, the Tendering Noteholders seek to be treated differently from the PHONES Noteholders, and independent of the representation by Wilmington Trust, for the purpose of Plan confirmation.

Noteholders' suggestion that the subordination provisions of the PHONES Notes Indenture are applicable to the claims of some holders of the PHONES Notes but not others.

Accordingly, in addressing the instant Motion, the Court should clarify that the Allocation Disputes Decision did not alter the Court's Confirmation Decision holding that the Tendering Noteholders' claims should be treated like the non-tendering PHONES Noteholders.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Debtors (i) do not object to an order stating that the Allocation Disputes Decision was not intended to adjudicate the rights of the Tendering Noteholders solely with respect to the Disclaimed State Law Avoidance Claims and (ii) request that any order entered make clear that the Allocation Disputes Decision did not alter the Court's holding in the Confirmation Decision that the Tendering Noteholders' claims should be treated like the non-tendering PHONES Noteholders.

Dated: Wilmington, Delaware
      May 21, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

James F. Bendernagel, Jr.
Ronald S. Flagg
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

*Counsel for Debtors and Debtors in
Possession and Certain Non-Debtor
Affiliates*

11