**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> TRIBUNE COMPANY, *et al.*, <br><br> Debtors. | ) Chapter 11 <br> ) Case No. 08-13141 (KJC) <br> ) <br> ) Jointly Administered <br> ) **Related Docket No. 11399** <br> ) Hearing Date: June 7, 2012 @ 3:00 pm <br> ) Objection Date: May 21, 2012 @ 11:59 pm |

**OBJECTION OF DEUTSCHE BANK TRUST COMPANY AMERICAS,
IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE,
TO CONFIRMATION OF THE FOURTH AMENDED JOINT PLAN
OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS
SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, OAKTREE
CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P.,
AND JPMORGAN CHASE BANK, N.A.**

Deutsche Bank Trust Company Americas ("DBTCA"), in its capacity as successor indenture trustee under the DBTCA Indentures (as defined herein), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.* [D.I. #11399] (the "DCL Plan"). In support of this Objection, DBTCA respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Senior Noteholders[1] (including DBTCA as Indenture Trustee) previously opposed the settlement of the LBO-Related Causes of Action in the DCL Plan. On October 31, 2011, the Court issued a decision in which it, among other things, approved the settlement of the LBO Related Causes of Action. See *Opinion on Confirmation* [D.I. #10133] and *Order Denying*

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the DCL Plan.

*Confirmation of Competing Plans* [D.I. #10134]. However, the Court's opinion also denied confirmation of the DCL's Second Amended Plan. On April 9, 2012, the Court issued its rulings on the Allocation Disputes. See *Memorandum Opinion Regarding Allocation Disputes* [D.I. # 11337]. At this juncture, DBTCA's remaining objections to confirmation of the DCL Plan consist primarily of procedural or discrete language-based objections to the DCL Plan in its current form.

2.    DBTCA incorporates herein by reference its previous objections with respect to the Second Amended Plan (including the settlement of the LBO-Related Causes of Action) and asserts them with equal force in this Objection.[2]

3.    DBTCA also continues to assert that the DCL Plan unfairly discriminates against holders of Senior Notes Claims in violation of §§ 510 and 1129(b)(1) of the Bankruptcy Code by extending the benefit of subordination to creditors who are not contractually entitled to receive this benefit. Indeed, DBTCA submits that the DCL Plan discriminates unfairly against the Senior Noteholders for the reasons set forth in the (a) Original Objection at pp. 206-207, (b) Post-Trial Reply Brief at pp. 30-32, (c) Amended Supplemental Objection at pp. 3-7, (d) Joint Opening Brief of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas with Respect to the Allocation Disputes, dated February 24, 2012 [D.I. #11010] at p. 2 and (e) Joint Response Brief of Law Debenture Trust Company of New York and

---

[2] *See Objection of the Noteholder Plan Proponents to Confirmation of the Debtor/Committee/Lender Plan of Reorganization* [D.I. #8013] (the "Original Objection"); *Amended Supplemental Objection of the Noteholder Plan Proponents to the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as Modified)*, dated April 12, 2011 [D.I. #8635] (the "Amended Supplemental Objection"), the *Post-Trial Brief of the Noteholder Plan Proponents*, dated May 11, 2011 [D.I. #8932] (the "Post-Trial Reply Brief"), the *Post-Trial Reply Brief of the Noteholder Plan Proponents*, dated May 27, 2011 [D.I. #9022], the *Noteholder Plan Proponents Proposed Findings of Fact*, dated June 3, 2011 [D.I. #9246]; the *Noteholder Plan Proponents' Proposed Conclusions of Law*, dated June 3, 2011 [D.I. #9247] along with every other pleading in which the Noteholder Plan Proponents contested the reasonableness of the Settlement and the complete record compiled in connection with the contested confirmation hearing held to consider the Second Amended DCL Plan.

Deutsche Bank Trust Company Americas with Respect to Allocation Disputes, dated March 2, 2012 [D.I. #11069] and incorporates such objections and arguments by reference and asserts them with equal force herein.

4. For the reasons set forth and incorporated in paragraphs 2 and 3 herein, the DCL Plan should not be confirmed.

5. DBTCA's remaining confirmation objections, which are the subject of this Objection, are summarized below:

- The mechanics for plan distributions to the Senior Notes should be modified to ensure that MSCS withdraws its Notes from DTC prior to the Effective Date.

- The claim of the Senior Notes Indenture Trustee should be classified as a Class 1F Claim, rather than as a Class 1E Claim.

- The terms of the Litigation Trust Agreement should be modified as set forth herein to ensure the proper operation of the Litigation Trust for the benefit of all Litigation Trust Beneficiaries.

## **OBJECTION**

**I.    The Distribution Mechanics Under The Plan Require Modification**

6. Section 3.2.5 of the DCL Plan provides that:

[t]he Senior Noteholder Claims shall together be deemed Allowed in the aggregate amount of $1,283,055,743.77 (a) <u>plus</u> the amount (if any) of any other Claims arising under or evidenced by the Senior Notes Indentures and related documents … (b) <u>less</u> any Senior Noteholder claims held by MSCS[3]. The Senior Noteholder Claims owned by MSCS shall be subject to challenge by the Litigation Trust pursuant to Article XIII herein.

7. Section 7.7.2 of the DCL Plan provides that distributions to Holders of Senior Noteholder Claims shall be "made by means of book-entry exchange through the facilities of DTC in accordance with customary practices of DTC, as and to the extent practicable, and the

---

[3] MSCS is defined in Section 1.1.139 of the Plan as "Morgan Stanley Capital Services Inc. and its Affiliates and Related Persons of such entities, including, without limitation, Morgan Stanley & Co, Inc."

3

Distribution Record Date shall not apply." Because virtually all of the Senior Notes for which DBTCA serves as Indenture Trustees are held in book entry fashion via DTC, DBTCA believes that the Senior Noteholder Claims held by MSCS are also held in book entry fashion through DTC. Under the current structure of the DCL Plan and in accordance with DTC practice, MSCS would receive a distribution through DTC unless MSCS agrees (or is required) to remove its holdings from DTC. Accordingly, in order for the distribution mechanics of the DCL Plan to function properly, the DCL Plan should be modified to require that MSCS remove its holdings from DTC prior to any distribution.

## II. The DCL Plan Improperly Classifies The DBTCA Expense Claim

### A. The DBTCA Expense Claim

8. On or about June 5, 2009, DBTCA filed a proof of claim for claims under the 1992 Indenture[4] in the amount of $120,500.00. This claim was recorded by the Debtors as Claim #3526.

9. Under the 1995 Indenture[5], two series of notes were issued: (i) 7.25% Debentures due March 1, 2013; and (ii) 7.50% Debentures due July 1, 2023. On or about June 5, 2009, DBTCA filed a proof of claim for the 7.25% Debentures in the amount of $83,702,999.21. This claim was recorded by the Debtors as Claim #3525. On that same date, DBTCA filed a proof of claim for the 7.50% Debentures in the amount of $102,000,520.83. This claim was recorded by the Debtors as Claim #3531.

---

[4] The 1992 Indenture refers to that certain indenture dated as of March 1, 1992, as amended and supplemented, by and between Tribune and Continental Bank, N.A, as the predecessor indenture trustee (the "1992 Indenture").

[5] The 1995 Indenture refers to that certain indenture dated as of January 30, 1995, as amended and supplemented, by and between Tribune and First Interstate Bank of California, as the predecessor indenture trustee (the "1995 Indenture").

ME1 13455725v.4

10. Under the 1997 Indenture[6], three series of notes were issued: (i) 4.875% Debentures due August 15, 2010; (ii) 5.25% Debentures due August 15, 2015; and (iii) 5.67% Debentures due December 8, 2008.  On or about June 5, 2009, DBTCA filed the following claims: (i) a claim for the 4.875% Debentures in the amount of $456,946,875.00.  This claim was recorded by the Debtors as Claim #3528; (ii) a claim for the 5.25% Debentures in the amount of $335,486,250.00.  This claim was recorded by the Debtors as Claim #3527; and (iii) a claim for the 5.67% Debentures in the amount of $69,812,899.00. This claim was recorded by the Debtors as Claim #3532.

11. As noted above, DBTCA has filed Claims ##3525, 3526, 3627, 3528, 3531 and 3532 in this case (collectively referred to as the "DBTCA Claims").  Each of the DBTCA Claims expressly asserted the contractual right to recover fees, costs and all other amounts due or incurred by DBTCA in its role as Indenture Trustee under the DBTCA Indentures.  *See* Sections 2(c) and 2(d) of the Claims.  There have been no objections to the DBTCA Claims.

12. Pursuant to Section 607 (or Section 6.07) of each of the DBTCA Indentures, and as noted in the Proofs of Claim, Tribune is legally and contractually obligated to pay DBTCA for all services rendered by DBTCA as indenture trustee.  The DBTCA Indentures also provide, in relevant part, that Tribune will reimburse DBTCA upon its request for all reasonable expenses, disbursements and advances incurred or made by the DBTCA in accordance with any provision of DBTCA Indentures (including the reasonable compensation and the expenses and disbursements of its agents and counsel).  *Id*.  Finally, the DBTCA Indentures provide that Tribune will indemnify DBTCA in connection with any loss, liability or expense arising out of or in connection with the acceptance or administration of the indentures.  *Id.*

---

[6] The 1997 Indenture refers to that certain indenture dated as of January 1, 1997, as amended and supplemented, by and between Tribune and Bank of Montreal Trust Company (the "1997 Indenture"; collectively, the 1992 Indenture, the 1995 Indenture and the 1997 Indenture are referred to herein as the "DBTCA Indentures").

5

13. Each of the DBTCA Claims expressly asserts the right to recover fees, costs and all other amounts due incurred by DBTCA in its role as Indenture Trustee under the DBTCA Indentures. *See* Sections 2(c) and 2(d) of the DBTCA Claims.

14. As of April 30, 2012, DBTCA has incurred reasonable fees and expenses in an amount no less than $5,918,025.35[7] in its capacity as Indenture Trustee under the DBTCA Indentures (the "<u>DBTCA Expense Claim</u>"). This amount includes reasonable legal fees and disbursements and reasonable fees incurred by DBTCA in connection with its role as Indenture Trustee under the DBTCA Indentures.

15. As noted above, the DCL Plan classifies Senior Noteholder Claims as a Class 1E Claim and deems those claims to be allowed "in the aggregate amount of $1,283,055,743.77 (a) plus the amount (if any) of any other Claims arising under or evidenced by the Senior Notes Indentures and related documents, solely to the extent any such claims are Allowed and (B) less any Senior Noteholder Claims held by MSCS." DCL Plan, at § 3.2.5(b).

B. <u>The DBTCA Expense Claim Is An Other Parent Claim (Class 1F)</u>

16. By its express language, Bankruptcy Code Section 1122(a) requires claims within a single class to be "substantially similar" to one another. 11 U.S.C. § 1122(a); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) ("Section 1122(a) provides that only 'substantially similar' claims may be classified together under a plan of reorganization.").

17. Tribune's obligation to reimburse DBTCA for its fees and expenses is a contractual obligation under the DBTCA Indentures separate and apart from the principal and interest owed to the Senior Noteholders. Accordingly, the DBTCA Expense Claim should be

---

[7] This amount includes the fees and expenses of DBTCA and its counsel incurred as of April 30, 2012. Fees and expenses continue to be incurred and this amount will continue to increase as the cases progress toward confirmation.

classified with other similar contractual obligations of the Debtors, *i.e.* with Wilmington Trust Company's expense claim, as an "Other Parent Claim" in Class 1F of the DCL Plan. *See In re Combustion Eng'g.*, 391 F.3d at 239 ("Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims"); *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 159 (3d Cir. 1993) (similar claims should be classified together).

18.     The Debtors cannot unilaterally, and without support, classify claims that are not substantially similar, especially where such misclassification limits the distributions to the class or extinguishes the claim in its entirety. There are "limits on a plan proponent's classification freedom." *See In re Dow Corning Corp.*, 244 B.R. 634, 644 (Bankr. E.D. Mich. 1999) (citing cases); *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C.Cir.1986) ("the focus of the classification [should be on] the legal character of the claim as it relates to the *assets of the debtor*." quoting *J.P. Morgan & Co. v. Mo. Pac. R.R.*, 85 F.2d 351, 352 (8th Cir.1936)) (emphasis in original); s*ee also In re W.R. Grace & Co*, 2012 WL 310815 *37 (January 30, 2012). Accordingly, in determining claim placement, a plan should attempt to group together those claims that exhibit a similar effect on the debtor's bankruptcy estate, rather than merely grouping together claims that are otherwise similar in character. *See AOV*. at 1150–51 (citing *In re Martin's Point Ltd. P'ship*, 12 B.R. 721, 727 (Bankr.N.D.Ga.1981)).

19.     Only claims that are "substantially similar" should be classified together. "Substantially similar" has been defined as including claims that are "similar in legal nature, character or effect." *Id*, citing, 7 *Collier on Bankruptcy* ¶1122.03[3] (15th Ed. Rev. 1999). Dissimilar claims may not be classified together. *Aetna Cas. & Surety Co. v. Clerk, U.S. Bankr. Ct. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996).

ME1 13455725v.4

20. The DBTCA Expense Claim (a contractual obligation to reimburse fees and expenses) is not similar in legal nature, character or effect as the other claims in the Senior Noteholder class (which are based on the Senior Notes). Rather, the DBTCA Expense Claim is substantially similar to the claims in the Other Parent Claims class and therefore should be allowed as an "Other Parent Claim" (Class 1F) claim under the DCL Plan. *See In re Gillette Assoc., Ltd.*, 101 B.R. 866, 873 (Bankr. N.D. Ohio 1989) (holding plan was unconfirmable because it put indenture trustee fees in same class as general unsecured creditors even though the fees were "ongoing" but the debt owed under the indenture was fixed or "done").

21. Accordingly, DBTCA requests that the Court order the proponents of the DCL Plan to classify the DBTCA Expense Claim as an Other Parent Claim[8].

### III. The Litigation Trust Agreement Must Be Amended

22. Under §13.3 of the DCL Plan, the Litigation Trust is to be established on the Effective Date of the Plan. The assets of the Litigation Trust will include the "Preserved Causes of Action" (§1.1.174 of the Plan) and consist of: (i) any and all LBO-Related Causes of Action; (ii) Advisor Claims (defined in §1.1.2 of the Plan), (iii) Morgan Stanley Claims (defined in §1.1.138 of the Plan), and (iv) claims against Non-Settling Step Two Payees (defined in §1.1.154 of the Plan). The Litigation Trust will be administered by the Litigation Trustee who will be selected by the members of the Litigation Trust Advisory Board (the "LTAB").

23. In connection with the Plan Supplement (D.I. # 11545), the DCL Proponents filed a draft Litigation Trust Agreement (the "Trust Agreement"). Various sections of the Trust Agreement require modification as set forth below.

---

[8] DBTCA reserves the right to assert that all or a portion of the DBTCA Expense Claim should be entitled to treatment as an administrative expense claim.

A. <u>Section 4.8(b) of the Trust Agreement</u>

24. The Trust Agreement specifically provides that the Litigation Trust will not reimburse the members of the LTAB for any fees, costs and expenses of legal counsel retained by the members. The drafters of the Trust Agreement were no doubt aware that all of the members of the LTAB (two indenture trustees and a retiree representative) are serving in a representative capacity and, as a result, frequently rely on the guidance and advice of counsel. Because Section 4.8(b) of the Trust Agreement provides that counsel fees, costs and expenses of the individual members of the LTAB will not be reimbursed, the retiree representative has indicated that he will not serve unless this provision is revised. Moreover, the two indenture trustees (DBTCA and WTC) will obtain no financial benefit from any litigation overseen by the Litigation Trustee. DBTCA agrees with the position of the retiree representative and believes that the Trust Agreement should be modified to provide for payment of counsel fees, costs and expenses of the individual members of the LTAB.

B. <u>Section 4.9 of the Trust Agreement</u>

25. Moreover, Section 4.9 of the Trust Agreement should be modified. As written, this section notes that each member of the LTAB may consult with its attorneys, yet, as noted above, Section 4.8(b) of the Trust Agreement prohibits the reimbursement of these expenses. This provision puts individual members of the LTAB in a potential "catch-22" situation where a member may be required to retain but due to the restriction in Section 4.8(b) of the Trust Agreement would be required to advance its own funds even though the individual members serving in a representative capacity as indenture trustees have no financial stake in any litigation arising from or related to the Tribune bankruptcy proceedings.

26.     As written, DBTCA believes that the exculpation provision falls outside the customary structure for litigation trust advisory boards with similar scopes of engagement. For example, the exculpation provision from the Lyondell Litigation Trust Agreement ("<u>Lyondell Trust Agreement</u>"; *see* <u>Exhibit "A"</u>) provides that:

> <u>No Further Liability</u>. Each of the Litigation Trustee and the [members of the advisory board] shall have no liability for any actions or omissions in accordance with this Litigation Trust Agreement unless arising out of their gross negligence or willful misconduct. In performing its duties under this Litigation Trust Agreement, the Litigation Trustee or the [members of the advisory board] (as applicable) shall have no liability for any action taken by the Litigation Trustee and the [members of the advisory board] in accordance with the advice of counsel, accountants, appraisers and other professionals retained by the [members of the advisory board] or the Litigation Trust. Without limiting the generality of the foregoing, the Litigation Trustee and the [members of the advisory board] may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by the Litigation Trustee or the [members of the advisory board] (as applicable) to be genuine, and shall have no liability for actions taken in reliance thereon. None of the provisions of this Litigation Trust Agreement shall require the Litigation Trustee or the [members of the advisory board] to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers. Each of the Litigation Trustee and the [members of the advisory board] may rely without inquiry upon writings delivered to it under the Plan which the Litigation Trustee or the [members of the advisory board] (as applicable) reasonably believes to be genuine and to have been given by a proper Person. Notwithstanding the foregoing, nothing in this [s]ection shall relieve the Litigation Trustee or the [members of the advisory board] from any liability for any actions or omissions arising out of their gross negligence or willful misconduct. Any action taken or omitted to be taken in the case of the Litigation Trustee or the [members of the advisory board] with the express approval of the Bankruptcy Court and, in the case of the Litigation Trustee, with the express approval of the [members of the advisory board] will conclusively be deemed not to constitute gross negligence or willful misconduct.

C.  <u>The Indemnity Provision Should Be Modified</u>

27.     Similarly, the indemnification provision in the Litigation Trust Agreement falls outside the customary structure for litigation trust advisory boards with similar scopes of engagement.  The indemnity provision from the Lyondell Litigation Trust Agreement is more typical for litigation trust advisory boards and provides that:

10

ME1 13455725v.4

>(a) To the fullest extent permitted by law, the Litigation Trust, to the extent of its assets legally available for that purpose, will indemnify and hold harmless the Litigation Trustee and the [LTAB] and each of their respective directors, members, shareholders, partners, officers, agents, professionals or employees (collectively, the "**Indemnified Persons**") from and against any and all loss, cost, damage, expense (including, without limitation, fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Person) or liability by reason of anything any Indemnified Person did, does or refrains from doing for the business or affairs of the Litigation Trust, except to the extent that it is finally judicially determined by a court of competent jurisdiction that the loss, cost, damage, expense or liability resulted from the Indemnified Person's gross negligence or willful misconduct.
>
>(b) Notwithstanding any provision herein to the contrary, the Indemnified Persons shall be entitled to obtain advances from the Litigation Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts and omissions, actual or alleged, of an Indemnified Person in its capacity as such, *provided, however*, that the Indemnified Persons receiving such advances shall repay the amounts so advanced to the Litigation Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Persons were not entitled to any indemnity under the provisions of this [section]. The foregoing indemnity in respect of any Indemnified Person shall survive the termination, resignation or removal of such Indemnified Person from the capacity for which they are indemnified. Termination or modification of the Trust Agreement shall not affect any indemnification rights or obligations then existing.
>
>\*     \*     \*     \*     \*
>
>(e) The rights to indemnification under this [section] are not exclusive of other rights which any Indemnified Person may otherwise have at law or in equity, including without limitation common law rights to indemnification or contribution. Nothing in this [section] will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party.

In addition, the Lyondell Trust Agreement contained a limitation on liability provision which should be incorporated into the Litigation Trust Agreement.

>Neither the Litigation Trustee, the [members of the advisory board] nor their professionals will be liable for punitive, exemplary, consequential, special or other damages for a breach of this Trust Agreement under any circumstances.

*See* Section 7.4 of Lyondell Trust Agreement.

11

D. The Funding of Litigation Trust Is Improper

28. The Litigation Trust will initially be funded by a $20 million term loan from Reorganized Tribune (the "Litigation Trust Loan"). *See* DCL Plan, §5.13. The DCL Plan requires the Litigation Trust Loan to be repaid after the Parent GUC Trust Preference has been satisfied in full. Funding the Litigation Trust through a loan (as opposed to an outright grant) is wholly inappropriate and inconsistent with applicable precedent in the Third Circuit as well as other jurisdictions.[9]

29. Additionally, because the Preserved Causes of Action are all causes of action of the estate, if these causes of action had been prosecuted during the pendency of these cases, all fees and expenses incurred in connection therewith would have been borne by the estates. The Litigation Trust Beneficiaries should not be penalized, and their recoveries negatively impacted, simply because the estate fiduciaries choose not to pursue the Preserved Causes of Action.

30. To the extent that the Court determines that the Debtors are not required to fund the Litigation Trust through a grant, the DCL Plan should disclose the substantive terms of the Litigation Trust Loan (*i.e.* interest rate, covenants, events of default, and the conditions to drawings). In light of the failure to identify an interest rate, it is likely that the Litigation Trust Loan is an interest free loan and the Plan and Litigation Trust Agreement should so state.

---

[9] The following debtors have funded their respective post confirmation trusts with a grant: *In re CTC Commc'ns Grp., Inc.* (D. Del.); *In re Fruit of the Loom, Inc., et al.* (D. Del.); *In re Globe Manufacturing* (W.D. Ala.); *In re IDEARC Inc., et al.* (W.D. Tx.); *In re Imperial Home Decor Group Inc.* (D. Del.); *In re Insilco Technologies, Inc.* (D. Del.); *In re The IT Grp., Inc.* (D. Del.); *In re Lyondell Chemical Company, et al.* (S.D.N.Y.); and *In re Semcrude, L.P.* (D. Del.).

**CONCLUSION**

WHEREFORE, for all of the reasons set forth in the Preliminary Statement, the DCL Plan does not comply with applicable provisions of the Bankruptcy Code necessary for such plan to be confirmed, and the Court should deny confirmation of the DCL Plan.  If the Court is inclined to confirm the Plan, however, the DCL Plan should be modified in accordance with Sections I through III herein prior to the entry of an order confirming the DCL Plan and the Court should grant such other relief as considered just and proper.

Respectfully submitted,

Dated: May 21, 2012
      Wilmington, DE

**McCARTER & ENGLISH, LLP**

By:  /s/ Katharine L. Mayer
Katharine L. Mayer (DE #  3758)
McCarter & English, LLP
405 N. King Street, 8th Floor
Wilmington, Delaware 19899
Telephone: (302) 984-6300
Fax: (302) 984-6399
kmayer@mccarter.com
-and-
David J. Adler
245 Park Avenue, 27th Floor
New York, New York 10167
Telephone: (212) 609-6800
Fax: (212) 609-6921
dadler@mccarter.com

*Counsel for Deutsche Bank Trust Company Americas*