**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 Cases |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Related Docket No. 11399** |
| | : | **Hearing Date:  June 7, 2012** |

-----------------------------------------------------x

**OBJECTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK
TO CONFIRMATION OF THE FOURTH AMENDED JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P.,
ANGELO, GORDON & CO., L.P. AND JPMORGAN CHASE BANK, N.A.**

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture

trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its

debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and

Citibank, N.A., for the 6.61% Debentures due 2027 and the 7 1/4 % Debentures due 2096 (as

amended, the "1996 Indenture"), by and through its undersigned counsel, hereby respectfully

submits this objection (the "Objection") to the *Fourth Amended Joint Plan Of Reorganization*

*For Tribune Company And Its Subsidiaries Proposed By The Debtors, The Official Committee*

*Of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and*

*JPMorgan Chase Bank, N.A.* [Dkt. No. 11399] (the "DCL Plan").[1]  In support of this Objection,

Law Debenture respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.        The DCL Plan, in its latest iteration, remains unconfirmable.  Law Debenture

continues to believe that the Settlement, although approved by the Court when it was presented

along with a prior version of the DCL Plan, does not meet the Bankruptcy Rule 9019 standard

---

[1]        Terms not otherwise defined herein shall have the meanings ascribed to them in the DCL Plan.

because it seeks to settle the valuable LBO-Related Causes of Action against the Senior Lenders for less than a reasonable amount.  Additionally, the DCL Plan is unconfirmable because the distribution of the Settlement and Litigation Trust proceeds ignores the fact that the Other Parent Claims are not entitled to the economic benefits that result from the subordination of the PHONES Notes and the EGI-TRB Note.

2.       In addition to the above fatal infirmities, the DCL Plan also suffers from two classification defects that also affect distributions.  First, it lumps the Law Debenture Expense Claim (as defined below) into the Senior Noteholder Claims class, even though the Law Debenture Expense Claim does not arise out of the Senior Notes and is not debt derived from money loaned.  The Law Debenture Expense Claim is distinct and as such the DCL Plan must classify it separately as an Other Parent Claim and permit it the recovery to that class.

3.       Second, the Swap Claim is improperly classified as an Other Parent Claim even though this Court recently concluded, subject to confirmation, that "[t]he record before me establishes that the indebtedness due under the Swap Agreement is an amount due in connection with the Credit Agreement . . . ."  Allocation Disputes Memorandum, at 21-22 n. 19.  As such, the only correct and reasonable classification of the Swap Claim is with the other claims that are due in connection with the Credit Agreement in the Senior Loan Claims class.

4.       Finally, the DCL Plan improperly seeks to cancel the Senior Notes Indentures on the Effective Date without preserving the rights of the Senior Notes Indenture Trustees to pursue an appeal of an order of the Bankruptcy Court or to enforce any contractual right it has against any person or entity other than the Debtors or a Released Party.

5.       Accordingly, should this Court find that the DCL Plan is confirmable, it nevertheless should order the proponents of the DCL Plan to modify it to (a) classify (i) the Law

Debenture Expense Claim as an Other Parent Claim and (ii) the Swap Claim as a Senior Loan

Claim, and (b) specifically preserve the right of the Senior Notes Indenture Trustees to appeal an

order of the Bankruptcy Court and to enforce all contractual rights against parties other than the

Debtors and Released Parties.

## JOINDER

6.      Law Debenture joins in the *Objection Of Aurelius Capital Management, LP To

Confirmation Of The Fourth Amended Joint Plan Of Reorganization For Tribune Company And

Its Subsidiaries Proposed By The Debtors, The Official Committee Of Unsecured Creditors,

Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank,

N.A.* [Dkt. No. 11664] and incorporates the factual and legal arguments as if set forth herein.

## OBJECTION

**I.      The Proposed Settlement Of The LBO-Related Causes Of Action
Does Not Satisfy Bankruptcy Rule 9019**

7.      Law Debenture continues to oppose the DCL Plan's proposal to settle the LBO-

Related Causes of Action against the Senior Lenders and others for inadequate consideration and

submits that the Settlement fails to comply with Bankruptcy Rule 9019.  As a result, the DCL

Plan is unconfirmable as a matter of fact and law.

8.      Law Debenture recognizes that this Court approved the Settlement as part of its

*Opinion On Confirmation* [Dkt. No. 10133] (the "Confirmation Opinion").  Accordingly, Law

Debenture will not here repeat arguments that it previously raised against the Settlement.

However, to preserve the record, Law Debenture hereby incorporates by reference the arguments

set forth in Section I of the *Objection Of the Noteholder Plan Proponents To Confirmation Of*

*The Debtor/Committee/Lender Plan Of Reorganization (Part I)* [Dkt. No. 8013] (the "Initial

Objection").[2]

**II.     The DCL Plan's Award Of Economic Benefits Of Subordination To Other
Parent Claims Does Not Satisfy Key Provisions Of The Bankruptcy Code**

9.      Similarly, Law Debenture continues to oppose the distribution scheme set forth in

the DCL Plan that denies the Senior Noteholders the full economic benefit of the subordination

of the PHONES Notes and the EGI-TRB Note.  Law Debenture asserts that the diversion of

value derived from subordination from the Senior Noteholder Claims class to the Other Parent

Claim class constitutes unfair discrimination in violation of Sections 510 and 1129(b)(1) of the

Bankruptcy Code.

10.      Although, the Court rejected Law Debenture's unfair discrimination argument in

its *Memorandum Regarding Allocation Disputes* [Dkt. No. 11337] (the "Allocation Disputes

Memorandum") and *Order Regarding Allocation Disputes* [Dkt. No. 11338] (the "Allocation

Disputes Order"), both were entered "subject to, conditioned upon and for the purpose of

obtaining confirmation of a chapter 11 plan . . . ."  *See* Allocation Disputes Order, at 1, 2;

Allocation Disputes Memorandum, at 3, 49, 50.

11.      Accordingly, Law Debenture hereby incorporates by reference, as if set forth

herein, the following objections and arguments in support of its position that the DCL Plan

constitutes unfair discrimination:  (a) Initial Objection, at 215-218; (b) Amended Supplemental

---

[2]      Law Debenture also incorporates by reference the pertinent sections of the following pleadings:  *Amended Supplemental Objection of the Noteholder Plan Proponents to the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as Modified)*, dated April 12, 2011 [ECF No. 8635] (the "Amended Supplemental Objection"), the *Post-Trial Brief of the Noteholder Plan Proponents*, dated May 11, 2011 [ECF No. 8932] (the "Post-Trial Reply Brief"), the *Post-Trial Reply Brief of the Noteholder Plan Proponents*, dated May 27, 2011[ECF No. 9022], the *Noteholder Plan Proponents Proposed Findings of Fact*, dated June 3, 2011 [ECF No. 9246]; the *Noteholder Plan Proponents' Proposed Conclusions of Law*, dated June 3, 2011 [ECF No. 9247] along with every other pleading in which the Noteholder Plan Proponents contested the Settlement and the complete record compiled in connection with the contested confirmation hearing held to consider the Second Amended DCL Plan.

Objection, at 3-7; (c) Post-Trial Reply Brief, at 30-32, (d) *Joint Opening Brief Of Law Debenture Trust Company Of New York And Deutsche Bank Trust Company Americas With Respect To The Allocation Disputes* [Dkt. No. 11069], at 28-35; and (e) *Joint Response Brief Of Law Debenture Trust Company Of New York And Deutsche Bank Trust Company Americas With Respect To Allocation Disputes* [Dkt. No. 11069], at 28-36.

## III.    The DCL Plan Improperly Classifies The Law Debenture Expense Claim

### A.    The Law Debenture Expense Claim

12.    On or about June 5, 2009, prior to its resignation as indenture trustee under the 1996 Indenture, Deutsche Bank Trust Company Americas ("DBTCA") (as predecessor in interest to Law Debenture) filed a proof of claim for the 6.61% Debentures in the amount of $86,270,366.40.  The Debtors recorded the claim as Claim 3530.  On the same date, DBTCA filed a proof of claim for the 7 ¼ Debentures in the amount of $148,715,333.33.  The Debtors recorded the claim as Claim 3529.  Claim 3530 and Claim 3529 are collectively referred to as the "Law Debenture Claims."

13.    Pursuant to Section 607 of the 1996 Indenture, and as noted in the Proofs of Claim, Tribune is legally and contractually obligated to pay the Indenture Trustee "for all services rendered by it hereunder."  The 1996 Indenture further provides that Tribune will "reimburse the [Indenture] Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the [Indenture] Trustee in accordance with any provision of [the] Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel)."  *Id*.  The 1996 Indenture also provides that Tribune will "indemnify the [Indenture] Trustee for . . . any loss, liability or expense incurred without negligence or bad faith

on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder or performance of its duties hereunder . . . ." *Id.*

14.     Each of the Law Debenture Claims expressly asserts the right to recover fees, costs and all other amounts due incurred by Law Debenture in its role as Indenture Trustee under the 1996 Indenture.  *See* Sections 2(c) and 2(d) of the Law Debenture Claims.

15.     As of April 30, 2012, Law Debenture has incurred reasonable fees and expenses in an amount no less than $11,949,130[3] in its capacity as Indenture Trustee under the Indenture (the "Law Debenture Expense Claim").  This amount includes reasonable legal fees and disbursements and reasonable fees incurred by Law Debenture in connection with its role as Indenture Trustee under the 1996 Indenture.

16.     The DCL Plan classifies Senior Noteholder Claims (as defined in the DCL Plan), as a Class 1E Claim and deems those claims to be allowed "in the aggregate amount of $1,283,055,743.77 (a) plus the amount (if any) of any other Claims arising under or evidenced by the Senior Notes Indentures and related documents, solely to the extent any such claims are Allowed and (B) less any Senior Noteholder Claims held by MSCS."  DCL Plan, at § 3.2.5(b).

B.     The Law Debenture Expense Claim Is An Other Parent Claim

17.     By its express language, Bankruptcy Code Section 1122(a) requires claims within a single class to be "substantially similar" to one another.  11 U.S.C. § 1122(a); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) ("Section 1122(a) provides that only 'substantially similar' claims may be classified together under a plan of reorganization.").

18.     Tribune's obligation to reimburse Law Debenture for its fees and expenses is a contractual obligation under the 1996 Indenture separate and apart from the principal and interest

---

[3]     This amount includes the fees and expenses incurred as of April 30, 2012.  Fees and expenses continue to be incurred on a daily basis and this amount will increase as the cases move through the confirmation process.

6

owed to the Senior Noteholders.  Accordingly, the Law Debenture Expense Claim should be classified with other similar contractual obligations of the Debtors, *i.e.* with Wilmington Trust Company's expense claim, as an "Other Parent Claim" in Class 1F of the DCL Plan.  *See In re Combustion Eng'g.*, 391 F.3d at 239 ("Bankruptcy Code furthers the policy of 'equality of distribution among creditors' by requiring that a plan of reorganization provide similar treatment to similarly situated claims"); *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 159 (3d Cir. 1993) (similar claims should be classified together).

19.    The Debtors cannot unilaterally, and without support, classify claims that are not substantially similar, especially where such misclassification limits the distributions to the class or extinguishes the claim in its entirety.  There are "limits on a plan proponent's classification freedom."  *See In re Dow Corning Corp.*, 244 B.R. 634, 644 (Bankr. E.D. Mich. 1999) (citing cases).  Only claims that are "substantially similar" should be classified together.  "Substantially similar" has been defined as including claims that are "similar in legal nature, character or effect."  *Id*, citing, 7 *Collier on Bankruptcy* ¶1122.03[3] (15th Ed. Rev. 1999).  Dissimilar claims may not be classified together.  *Aetna Cas. & Surety Co. v. Clerk, U.S. Bankr. Ct. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996).

20.    The Law Debenture Expense Claim (a contractual obligation to reimburse fees and expenses) is not similar in legal nature, character or effect as the other claims in the Senior Noteholder class (which are based on a note).  Rather, the Law Debenture Expense Claim is substantially similar to the claims in the Other Parent Claims class and therefore should be allowed as an "Other Parent Claim" (Class 1F) claim under the DCL Plan.

21.     Accordingly, the DCL Plan Law Debenture requests that the Court order the proponents of the DCL Plan to classify the Law Debenture Expense Claim as an Other Parent Claim.[4]

## IV.     The DCL Plan Improperly Classifies The Swap Claim As An Other Parent Claim

22.     The DCL Plan also improperly classifies the Swap Claim as an Other Parent Claim rather than as a Senior Loan Claim.  Although the Court initially concluded in its Confirmation Opinion that "[t]he DCL Plan Proponents have provided reasonable justification for separate classification of the Swap Claim from the Senior Loan Claims," Confirmation Opinion, at 103-04, recent findings of fact made by the Court render this initial ruling no longer applicable.

23.     The Court's finding of reasonable justification to segregate the Senior Lender Claims from the Swap Claim was based primarily on the argument that the "basic nature of the claims are different" and that only the Senior Loan Claims "are for money loaned."  *Id.* at 103.  However, more recently, in its Allocation Disputes Memorandum, the Court found that "[t]he record before me establishes that the indebtedness due under the Swap Agreement is an amount due *in connection with* the Credit Agreement . . . ."  Allocation Disputes Memorandum, at 21-22 n. 19 (emphasis added).

24.     If the Court confirms it conclusion in the Confirmation Opinion that the underlying nature of the Swap Claim and the Senior Loan Claims are distinct because the Swap Claim is not "for money loaned," then the same reasoning must apply with equal force to the Law Debenture Expense Claim, which like the Swap Claim, is distinct from the claims to which it is related because it is not "for money loaned."  In such circumstance, the Court must order

---

[4]     Law Debenture reserves the right to assert that all or a portion of the Law Debenture Expense Claim should be entitled to treatment as an administrative expense claim.

that proponents of the DCL Plan classify the Law Debenture Expense Claim as an Other Parent

Claim.  *See supra* Section III.

25.    Alternatively, if the Court remains consistent with its latter ruling, then, consistent

with the Plan Proponents' treatment of the Law Debenture Expense Claim (if upheld), the Swap

Claim and the Senior Loan Claims, as held both to arise out of the Credit Agreement, are

substantially similar and must be classified together in the Senior Loan Claims class.  *See In re*

*Combustion Eng'g.*, 391 F.3d at 239 ("Bankruptcy Code furthers the policy of 'equality of

distribution among creditors' by requiring that a plan of reorganization provide similar treatment

to similarly situated claims"); *John Hancock Mut. Life Ins.*, 987 F.2d at 159 (similar claims

should be classified together).

## V.    The DCL Plan Fails To Preserve Substantive Rights Under The Senior Notes Indentures

26.    The DCL Plan provides that, with limited exceptions, the Senior Notes Indentures

are cancelled upon the occurrence of the Effective Date.  *See* DCL Plan, §§ 5.8.1, 5.8.2.  Law

Debenture submits, however, that the prescribed exceptions are too narrow to adequately

preserve and protect all rights, agreements and remedies that exist under the Senior Notes

Indentures against non-debtor third parties, including, without limitation, the Senior Noteholders.

27.    There are many other rights and agreements by and among Senior Notes

Indenture Trustees, on one hand, and the Senior Noteholders, on the other, that the plan should

leave unimpaired.  Examples of this are, without limitation, the charging lien, the no action

clause and indemnification rights.  It is outside of this court's jurisdiction to impair or infringe

contractual rights between non-debtor entities.  *See N. Pipeline Constr. Co. v. Marathon Pipe*

*Line Co.*, 458 U.S. 50, 84 (1982) (the bankruptcy court's jurisdiction is of a very limited nature);

*see also* 11 U.S.C. § 524(e) ("the discharge of a debt of the debtor does not affect the liability of any other entity or, or the property of any other entity for, such debt.").

28.    Thus, while the DCL Plan may inhibit enforcement of the Senior Notes Indentures against the *Debtors,* it may not inhibit enforcement of its provisions respecting non-debtor parties.  The Court should not confirm the DCL Plan because that plan, as written, exceeds the Court's jurisdiction and could impair other contractual rights and agreements that exist under the Senior Notes Indentures.

29.    Instead, Law Debenture submits that the proponents of the DCL Plan add the following two clauses to Section 5.8.2(x) of the DCL Plan to best preserve the rights of the Senior Notes Indenture Trustees:

- Any Indenture Trustee to pursue or continue to pursue any appeal of an order of the Bankruptcy Court, commenced by such Indenture Trustee on or before the Effective Date.

- The continuation of any contractual right or obligation that any Indenture Trustee has with any person or entity other than the Debtors or a Released Party.

**CONCLUSION**

For all of the foregoing reasons set forth in Section I and II herein, Law Debenture submits that the DCL Plan does not comply with applicable provisions of the Bankruptcy Code necessary for the Court to confirm the plan.  For all of the reasons set forth in Section III and IV, the DCL Plan is not confirmable due to error in its classification scheme.  For all the reasons set forth in Section V, the DCL Plan is not confirmable due to its elimination of certain contractual rights of the Senior Notes Indenture Trustees.  Accordingly Law Debenture respectfully requests that the Court deny confirmation or, at minimum, require modification of the classification and distribution scheme in the DCL Plan, and require the preservation of the rights of the Senior Notes Indenture Trustees.

Dated:  May 21, 2012
        Wilmington, Delaware

                              **BIFFERATO GENTILOTTI**


                              */s/ Garvan F. McDaniel*
                              Garvan F. McDaniel
                              800 N. King St., Plaza Level
                              Wilmington, DE 19801
                              (302) 429-1900

                                  - and -

                              David S. Rosner
                              Sheron Korpus
                              Christine A. Montenegro
                              Matthew B. Stein
                              Kasowitz, Benson, Torres & Friedman LLP
                              1633 Broadway
                              New York, New York 10019
                              (212) 506-1700

                              *Co-Counsel for Law Debenture Trust*
                              *Company of New York*