## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------- x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: June 14, 2012 @ 4:00 p.m. (ET) |
| ------------------------------------------------- x | Hearing Date: N/A | |

## FORTIETH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 1, 2012 THROUGH APRIL 30, 2012

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | April 1, 2012 through April 30, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $252,341.40    (80% of $315,426.75) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $ 12,357.38 |

This is a(n):    __x__ Monthly    _____ Interim    _____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 - 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |
| 2/27/12 | 11023 | 1/1/12 - 1/31/12 | $547,104.00 | $9,615.03 | $437,683.20 | $9,615.03 |
| 3/27/12 | 11240 | 2/1/12 - 2/29/12 | $644,199.25 | $9,936.28 | $515,420.40 | $9,936.28 |
| 4/26/12 | 11476 | 3/1/12 - 3/31/12 | $592,148.75 | $28,148.76 | $473,719.00 | $28,148.76 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application. Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |
| 8 | September 1, 2010 through November 30, 2010 | April 24, 2012 | $1,024,183.85 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### April 1, 2012 through April 30, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 33.40 | $ 33,233.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 46.60 | 39,636.25 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 14.50 | 12,687.50 |
| Marc Alpert (1995) | Corporate | 1987 (NY) | 855 | 0.70 | 598.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 94.70 | 70,551.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 53.50 | 38,740.00 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 705 | 6.30 | 4,441.50 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 20.70 | 14,386.50 |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 665 | 7.20 | 4,788.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 33.90 | 21,865.50 |
| | | | | | |
| **Associate:** | | | | | |
| Rachel Kurth Santangelo | Employee Benefits | 2009 (NY) | 565 | 4.80 | 2,712.00 |
| Megan Strand | Communications & Technology | 2009 (NY) | 565 | 0.90 | 508.50 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 565 | 0.80 | 452.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 29.90 | 14,800.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 49.30 | 23,364.00 |
| Nicholas Scannavino | Corporate | 2010 (NY) | 495 | 1.30 | 643.50 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 21.90 | 9,526.50 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 18.00 | 7,830.00 |
|  |  |  |  |  |  |
| **Paraprofessionals:** |  |  |  |  |  |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 27.60 | 8,142.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 22.10 | 6,519.50 |
|  |  |  |  |  |  |
| **TOTAL:** |  |  |  | **488.10** | **$315,426.75** |

BLENDED RATE:    $657.76

_____

*  Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------- x   Chapter 11

In re:                                              :
                                                    :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                            :
                                                    :    Jointly Administered
            Debtors.                                :
                                                    :    Objections Due: June 14, 2012
                                                    :    @ 4:00 p.m.(ET)
---------------------------------------------------- x   Hearing Date: N/A

## FORTIETH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 1, 2012 THROUGH APRIL 30, 2012

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the

"Debtors"), hereby submits this Application (the "Application") for approval and allowance of

compensation for services rendered in the amount of $315,426.75 (80% of which equals

$252,341.40) and reimbursement of expenses incurred in the amount of $12,357.38 during the

period commencing April 1, 2012 through and including April 30, 2012 (the "Application

Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals and Committee Members

Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the

Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.    Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011. The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011. Closing confirmation arguments were held on June 27, 2011.

9.    On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan. The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm. See Section 1129(c). The Court stated that, given those options, it would select the DCL Plan.

10.    On April 17, 2012, the proponents of the DCL Plan filed their Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Fourth Amended DCL Plan"). A hearing on confirmation of the Fourth Amended DCL Plan is scheduled to begin June 7, 2012.

---

[1]    The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents"). The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the "Noteholder Plan Proponents").

## COMPENSATION PAID AND ITS SOURCES

11.     All services for which compensation is requested by Chadbourne were performed

for or on behalf of the Committee.

12.     During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

13.     The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2

(the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

14.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $315,426.75.  The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and

the total compensation sought for each category.

4

15.    The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.    Bankruptcy General (Matter 002)**

Fees:  $12,703.50          Total Hours:    27.50

16.    During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

17.    Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**     **Committee Meetings (Matter 003)**

     Fees:  $32,482.00          Total Hours:     46.40

18.     Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

19.     Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**     **Creditor Communications (Matter 004)**

     Fees:  $6,876.50          Total Hours:  9.70

20.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.    Business Operations (Matter 007)**

Fees:  $47,152.50          Total Hours:   67.90

21.    During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group were further engaged in reviewing and addressing issues with the FCC exit application process.  Chadbourne's CMT attorneys continued to review, research and comment on the Debtors' revised FCC exit applications as well as supporting documents and exhibits.  In addition, Chadbourne's CMT attorneys finalized and filed with the FCC the Committee's response to the FCC's Notice of Proposed Rulemaking in connection with the newspaper/broadcasting cross-ownership rule.  Chadbourne attorneys also spent substantial time during this period reviewing the issues raised in the contract dispute between the Debtors and DirectTV including issues raised in DirectTV's FCC filing (which followed the Debtors' termination of services to DirectTV).  Numerous related calls were held among and between the Committee's FCC counsel, the Debtors' FCC counsel and other interested parties to determine the best course of action.  The dispute between the Debtors and DirectTV was settled about a week after the initial "blow-up" and, as part of the settlement, DirectTV withdrew its FCC filing.

22.    During the Application Period, Chadbourne attorneys continued to review and monitor issues involving the Debtors' business operations.  Efforts included review and discussions with the Committee's financial advisors regarding their analysis of the Debtors' possible entry into several new business transactions.   In addition, Chadbourne also continued

to review weekly operations and financial reports prepared by the Committee's financial advisors.

**E.**    **Claims Administration/Bar Date (Matter 009)**

      Fees:  $2,030.50        Total Hours:  3.50

23.      During the Application Period, Chadbourne continued to expend efforts in connection with the disposition of claims.  Efforts included reviewing the Debtors' fifty-third omnibus objection to claims.  Chadbourne reviewed and evaluated the relief requested in the motion as well as the bases and processes followed by the Debtors in pursuing the objections and summarized its review in a written report to the Committee.

24.      During the Application Period, Chadbourne expended further time in reviewing the Debtors' efforts to settle certain claims brought against the Debtors.  In particular, this work included review and analysis of a proposed stipulation settling claims with Sprint Nextel Corporation in connection with certain mobile telephone and telecommunication services contact claims.  Chadbourne reviewed and analyzed details of the underlying contracts and the terms of the proposed settlement and prepared a detailed report to the Committee summarizing its analysis and recommendation on same.

**F.**    **Fee/Retention Applications (Matter 010)**

      Fees:  $36,995.00      Total Hours:  78.00

25.      Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing Chadbourne's thirty-ninth monthly fee application and thirteenth interim fee application.  In

addition, Chadbourne prepared and filed the twentieth monthly request of Committee members for reimbursement of expenses. Further, Chadbourne reviewed and provided comments on the draft omnibus fee order in connection with the April 25, 2012 hearing on eighth interim fee applications.

26.    Further, Chadbourne began reviewed the Fee Examiner's preliminary report concerning Chadbourne's ninth interim fee application and performed related research. Chadbourne also began preparing a response to address the concerns raised in the Fee Examiner's report.

27.    In continuance of an ongoing process, Chadbourne also expended time on the treatment of ordinary course professionals. These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

**G.    Employee Issues (Matter 014)**

Fees:  $26,709.00          Total Hours:  38.20

28.    During the Application Period, professionals from Chadbourne's Employee Benefits and Bankruptcy Groups continued to be engaged in various employee-related matters. Efforts included review and analysis of the terms of a severance agreement with an additional departing senior executive of Tribune. In connection therewith, Chadbourne reviewed and analyzed the economic terms and business rationale of the departure and consulted with the Committee's financial advisors about their analysis of the departure arrangements. Chadbourne summarized its analysis and recommendations in a memorandum to the Committee.

29.     During the Application Period, Chadbourne attorneys were engaged in reviewing and analyzing issues raised in the Debtors' proposed Management Incentive Plan for 2012 (the "2012 MIP") and related motion. Chadbourne consulted with the Committee's financial advisors regarding their analysis of the 2012 MIP. The analysis was subsequently presented to the Committee. In connection therewith , Chadbourne participated in discussions with Committee members regarding concerns raised by the 2012 MIP and performed related legal research. Chadbourne also participated in discussions with Debtors' counsel to address certain issues and provide comments to the motion. Ultimately, with the Committee's support, the Debtors filed their motion for approval of the 2012 MIP.

**H.**     **Travel (Matter 018)**

Fees:   $5,625.75        Total Hours:  14.70

30.     During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend hearings at the Bankruptcy Court. The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**I.**     **Shareholder Claims (Matter 020)**

Fees:   $17,389.00       Total Hours:  25.00

31.     During the Application Period, Chadbourne attorneys continued to be engaged in reviewing and responding to developments in the multidistrict litigation which consolidated and

transferred the state law constructive fraudulent conveyance lawsuits filed by the Retirees[2] and the Noteholders[3] to the Southern District of New York (*In re Tribune Company Fraudulent Conveyance Litigation*), Master Case No. 12-2296 (S.D.N.Y) (the "MDL Actions").   In particular, Chadbourne reviewed a letter from the defendants to Judge Pauley setting forth a case management proposal in connection with the MDL Actions.   Chadbourne reviewed and commented on a draft response letter prepared by Akin Gump on behalf of all plaintiffs, including the Committee, setting forth their position on the matter.

32.    Chadbourne attorneys continued to review and address related pending issues in connection with the *FitzSimons* action.  Chadbourne continued to review and analyze options on dismissing certain shareholder claims including establishing an appropriate threshold amount below which claims might be dismissed.  In connection therewith, Chadbourne participated in discussions with the Committee's co-counsel regarding other parties' positions on same.  Chadbourne and the Committee's co-counsel continued preparation of a related motion.

---

[2]    The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110 affiliates or subsidiaries of Tribune Company.

[3]    The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

**J.**     **Plan Litigation (Matter 021)**

     Fees:  $127,463.00      Total Hours:  177.20

33.      During the Application Period, Chadbourne's bankruptcy and litigation professionals continued to be significantly engaged, on behalf of the Committee, in efforts to advance the Debtors' Chapter 11 cases towards plan confirmation.

34.      During the Application Period, Bankruptcy Judge Carey rendered his Memorandum Regarding Allocation Disputes (the "Allocation Opinion").  Among other things, the court concurred with the Committee's main argument that the DCL Plan's equal treatment of Senior Noteholders and Other Parent Claimants does not amount to unfair discrimination under Bankruptcy Code section 1129(b).  Chadbourne attorneys reviewed and analyzed the Allocation Opinion and prepared a detailed analysis thereon for the Committee.

35.      In preparing for hearing on the disclosure statement, Chadbourne attorneys devoted substantial time to reviewing and commenting on further amendments to (i) the Fourth Amended DCL Plan; (ii) the Supplemental Disclosure Document and its exhibits; and (iii) the revised Order Approving Supplemental Disclosure Document and Resolicitation Procedures. The revised documents incorporated changes to conform to the Court's Allocation Opinion as well as certain changes to resolve concerns raised by the Noteholder Plan Proponents.  In connection therewith, Chadbourne participated in frequent discussions with the other DCL Plan Proponents prior to filing final versions of the documents.

36.      On April 16, 2012, Chadbourne participated in the hearing on the disclosure statement at which time three remaining issues were addressed and resolved.  Ultimately, the Court directed the parties to further revise the DCL Plan and disclosure documents to reflect the

Court's resolution.   On April 17, 2012, the Court entered the formal Order Approving
Supplemental Disclosure Document and Resolicitation Procedures.   Notably, the ruling enables
confirmation to proceed on schedule.

37.      During the Application Period, Chadbourne attorneys continued to review and
revise the various DCL Plan supplement documents (in particular, the Litigation Trust
Agreement and the Litigation Trust Confidentiality and Common Interest Agreement).   In
connection therewith, Chadbourne participated in frequent discussions with the other DCL Plan
Proponents to negotiate and resolve various issues prior to the filing deadline.

38.      During this time, Chadbourne attorneys expended time reviewing and analyzing
responsive pleadings that followed the Court's issuance of its Allocation Opinion.   Efforts
included review of Wilmington Trust's appeal of the Allocation Opinion and performing related
legal research.   In addition, Chadbourne reviewed the motion filed by certain Tendering
Noteholders of the PHONES Notes for reconsideration and/or clarification of the Allocation
Opinion.   Chadbourne participated in the April 27, 2012 status conference where the Court
concluded that the reconsideration motion was to be heard at the confirmation hearing and
established a briefing schedule related thereto.

## ACTUAL AND NECESSARY EXPENSES

39.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $12,357.38 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page.  Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

40.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

41.     With respect to court reporter fees, Chadbourne utilized the services of an outside vendor (TSG Reporting) for court reporting/transcript services in connection with the March 5 and 6, 2012 hearing on allocation disputes and related depositions.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

42.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

43.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

44.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

45.    Attorneys and paraprofessionals of Chadbourne have expended a total of 488.10 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $315,426.75.

46.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the

15

preparation of this Application, Chadbourne reserves the right to request additional

compensation for such services, and reimbursement of such expenses in a future application.

47.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code,

it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable

given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the

services rendered, (d) the value of such services, and (e) the costs of comparable services other

than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del.

Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period April 1, 2012 through April 30, 2012:  (a) authorizing compensation in the amount of $315,426.75 (80% of which equals $252,341.40) for professional services rendered and reimbursement of expenses incurred in connection therewith in the amount of $12,357.38 for a total of $327,784.13; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:    May 24, 2012
          New York, New York

                                            **CHADBOURNE & PARKE LLP**

                                            By: _____
                                                Douglas E. Deutsch
                                                (A Member of the Firm)

                                            Chadbourne & Parke LLP
                                            30 Rockefeller Plaza
                                            New York, New York  10112
                                            (212) 408-5100

                                            Co-Counsel to The Official Committee of
                                            Unsecured Tribune Company, et al.

## VERIFICATION

STATE OF NEW YORK   :
                   : ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)     I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

(b)     I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
24th day of May 2012

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4688022.3