**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, *et al.*,[1] | Cases No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, on behalf of TRIBUNE COMPANY, *et al.*, | Adv. Pro. No. Various (KJC) |
| Plaintiff, | **Hearing Date: July 11, 2012 at 10:00 a.m.** |
| vs. | **Objection Deadline: June 14, 2012 at 4:00 p.m.** |
| See Attached Exhibit B, | |
| Defendants. | |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (I)
TO AMEND DEFINITION OF "TERMINATION EVENT" IN
STANDING ORDERS AND (II) FOR FURTHER EXTENSION OF
TIME TO EFFECT SERVICE OF ORIGINAL PROCESS**

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company and its various debtor-subsidiaries (collectively, the "**Debtors**" or "**Tribune**"), by and through its undersigned counsel, hereby moves the Court for entry of an Order (I) extending the stay of certain actions commenced by the committee by amending the definition of "Termination Event" in the orders granting the Committee standing to prosecute certain actions on behalf of the Debtors' estates and (II) further extending the time to complete service of process on the defendants in certain adversary proceedings (the "**Motion**").  In support of the Motion, the Committee respectfully submits as follows:

---

[1] The Debtors in these Chapter 11 Cases are listed on Exhibit A to this Complaint.

# BACKGROUND

1.     On December 8, 2008 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").    The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.     On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Committee.

## A.     The Standing Orders Provide Authority to Commence the LBO and Preference Actions, and Stay the Litigations

3.     By orders dated October 27, 2010 and November 29, 2010 (D.I. 6150, 6657 and 6658, as amended by subsequent orders, the "**Standing Orders**"), the Court granted the Committee standing to file and prosecute certain adversary proceedings.    The Standing Orders provided that, pending the occurrence of a "Termination Event" as defined therein, any litigation commenced by the Committee pursuant to the authority granted in the Standing Orders (a) may not be settled absent the agreement of the Debtors and the Committee and (b) broadly shall be stayed.    Specifically, with respect to settlement, the Standing Orders state that:

> neither the Debtors nor the Committee shall settle, subject to the Court's approval, any of the claims to be transferred to the Litigation Trust or the Creditors Trust (under and as defined in the Proposed Plan) without the other's consent unless and until the earliest to occur of the following: (i) the Committee and/or the Debtors withdraw their support for the Proposed Plan; (ii) the Court declines to confirm the Proposed Plan, or (iii) April 1, 2011 (each a "Termination Event").

*See* Standing Orders, p. 3.  With respect to the broad stay of any litigation commenced pursuant

to the authority granted to the Committee in the Standing Orders, each of the Standing Orders

provides, in pertinent part, that such actions:

> *shall be deemed stayed, until a Termination Event occurs . . . . All*
> *applicable deadlines, other than those applicable to the discovery*
> *permitted in this Order, are suspended during the period of the*
> *Stay.    All motion practice (other than motions respecting*
> *confidentiality, motions to lift, extend or otherwise respecting the*
> *Stay, motions with respect to the discovery permitted by this Order,*
> *motions to intervene and motions regarding settlements consistent*
> *with the terms of this Order) and contested hearings or trials are*
> *prohibited.*

*See* Standing Orders, p. 4.

4.    Pursuant to the authority granted by the Standing Orders, the Committee

commenced several adversary proceedings. Specifically, the Committee originally filed two

actions relating to the Company's failed leveraged buyout transaction: (i) *The Official Committee*

*of Unsecured Creditors of Tribune Company, et al. v. Dennis J. FitzSimons, et al.*, Adversary

Proceeding No. 10-54010 (KJC) (the **"FitzSimons Action"**);[2] and (ii) *The Official Committee of*

*Unsecured Creditors of Tribune Company, et al. v. JPMorgan Chase Bank N.A., et al.*,

Adversary Proceeding No. 10-53963 (KJC)] (the **"Lender Action"**[3], and together with the

FitzSimons Action, the **"LBO Actions"**).

5.    The Standing Orders also granted the Committee authority to commence and

prosecute causes of action under sections 547 and 550 against (i) certain of the Debtors'

---

[2] By order of March 20, 2012, the United States Judicial Panel on Multidistrict Litigation transferred the FitzSimons action to the multidistrict litigation proceeding (**"MDL"**), MDL No. 2296 in the United States District Court for the Southern District of New York (the **"MDL Court"**).  The MDL is currently pending before the Honorable Judge Pauley, and is stayed.  Therefore, the Committee seeks no relief in the Motion with respect to the FitzSimons Action.

[3] Landis Rath & Cobb LLP does not represent the Committee with respect to the prosecution of the Lender Action. Seitz, Van Ogtrop & Green P.A. represents the Committee only with respect to the prosecution of the Lender Action.

professionals who received payments from Tribune in the ninety (90) days prior to the Petition Date and (ii) certain current and former officers and directors and certain business entities for amounts received in the year prior to the Petition Date. These adversary proceedings (together, the "**Preference Actions**," each as identified in **Exhibit B**, and together with the LBO Actions and Advisor Action, the "**Adversary Actions**") have now either been tolled or filed.[4]

**B.     Service of Process and the Stay In the Lender Action**

6.     The amended complaint in the Lender Action names as-yet-unidentified defendants as Does 1-100, and also identifies representative class defendants on behalf of two classes of defendants. The Committee has pleaded the elements necessary to establish these defendant classes pursuant to Rule 23 of the Federal Rules of Civil Procedure. By orders of this Court [Main D.I. 11158; Adv. Proc. D.I. 1235], July 2, 2012 is (i) the current date for expiration of the stay of the Lender Action and (ii) the current deadline for service of the Lender Action complaint under Rule 4(m) of the Federal Rules of Civil Procedure.

7.     To preserve claims worth billions of dollars to the Debtors' estates in the event that defendant classes are not certified, the Committee has also undertaken extensive efforts (a) to specifically identify the Doe defendants and each member of the defendant classes and (b) to serve the amended complaint in the Lender Action on each and every defendant and member of the defendant classes. The Committee intends to continue to serve defendants as it identifies reliable contact for each defendant in the course of its ongoing discovery efforts. While the Committee believes that the grounds for class treatment of defendants in this proceeding is strong, the current discovery and service activity is essential to ensure that claims worth billions

---

[4] Chadbourne & Parke LLP and Zuckerman Spaeder LLP do not represent the Committee with respect to prosecution of the identified Preference Actions against Katten Muchin Rosenman LLP and Paul, Hastings, Janofsky & Walker LLP.

of dollars are not lost, should the Court later determine that defendant classes are inappropriate in this proceeding.

8.    The Committee has attempted to initially serve almost all of defendants and defendant class members in the Lender Action.  The remaining parties to be served are (i) a small number of parties located outside the United States, particularly a handful of parties located in countries that have not adopted the Hague Convention at all, or have not signed onto the Hague Convention's streamlined service procedures; and (ii) a small number of parties for whom attempts to serve have been repeatedly unsuccessful for a variety of reasons.  Absent the relief sought by the Committee in this Motion, valuable claims against unserved defendants may be subject to dismissal.  Such an outcome would be contrary to the interests of the Debtors' estates, the very interests served by the provision in the Standing Order that allowed the Committee to begin the discovery and service activity that it seeks to complete.

C.    **The Advisor Action Has Been Severed From the Lender Action; Transfer to the MDL Court is Pending**

9.    The Lender Action included claims against certain lenders to Tribune and certain advisors to Tribune.  The claims against the senior lenders to Tribune in the Lender Action will be settled if the DCL Plan is confirmed.  However, claims against certain advisors (the "**Advisor Claims**") will not be settled if the DCL Plan is confirmed.  On March 2, 2012 the Committee filed a motion to sever the Advisor Claims from the Lender Action [Adv. Proc. D.I. 1220].  By order of March 22, 2012, the Court granted the motion and severed the Advisor Claims from the Lender Action  [Adv. Proc. D.I. 1236].  The order directed that the Advisor Claims were subject to the stay that was set out in the Standing Order and extended by a subsequent order [D.I. 1236], but also that the stay applied to the Advisor Claims to the same extent, and subject to the same exceptions, as the FitzSimons Action.  The stay in the FitzSimons Action is currently scheduled to end on June 1, 2012.  A fully briefed and unopposed motion is pending before the MDL Court

to extend the Rule 4(m) deadline in the FitzSimons Action (and all other MDL cases) to August 31, 2012.

10.    On April 2, 2012, the Committee filed a complaint asserting the Advisor Claims [Docket No. 11304] and initiated a separate adversary proceeding for the Advisor Claims styled *The Official Committee of Unsecured Creditors of Tribune Company, et al. v. Citigroup Global Markets Inc., et al.*, Adv. Proc. No. 12-50446 (the "**Advisor Action**").

11.    The Advisor Action has been identified as a potential tag-along action to the MDL. On April 4, 2012, the United States Judicial Panel on Multidistrict Litigation issued a conditional transfer order ("**CTO-4**") to transfer the Advisor Action into the MDL [MDL Panel D.I. 997]. The defendants in the Advisor Action filed a Motion to Vacate CTO-4 on April 25, 2012, and the Committee filed its response thereto on May 16, 2012. The Motion to Vacate remains pending before the MDL Panel.

**D.    The Court Has Granted Prior Extensions of the Stay and 4(m) Service Period**

12.    To ensure the efficient use of the estates' resources, the Standing Orders stayed prosecution of the Adversary Actions, subject to certain limited exceptions. The Court has entered six orders granting motions to amend the definition of "Termination Event" to further extend the stay (together, the "**Termination Event Orders**", identified in **Exhibit C**). The Stay is currently extended through June 1 for the Advisor Action, and through July 2 for the Lender Action and Preference Actions.[5]

13.    The Standing Orders also provide that the Committee may take such steps as are necessary for the purpose of preventing applicable statutes of limitations or other time-related defenses from barring any of the claims asserted. *See* Standing Orders at p.4. To facilitate the

---

[5] On May 11, 2012, the Debtors filed their Motion to Extend Stay of Avoidance Actions Commenced by the Debtors [Docket No. 11601], seeking to extend the stay in the avoidance actions commenced by the Debtors through and including a date that is ninety (90) days after the effective date of the DCL Plan.

process of serving defendants in the LBO Actions, and since confirmation[6] may result in certain

of the Preference Actions being released, the Committee has sought and obtained Orders

extending the time to complete service with respect to the Adversary Actions (the "**Extension of**

**Time Orders,**" identified in **Exhibit D**).    Presently, the deadline to effect service in the

Adversary Actions expires on July 2, 2012.

## JURISDICTION AND VENUE

14.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and

this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

15.    By this Motion, the Committee seeks an order (I) replacing subsection (ii) of the

definition of "Termination Event" in the Standing Orders for all Adversary Actions except the

FitzSimons Action with "the date that is ninety (90) days after the effective date of a confirmed

plan of reorganization for Tribune"; provided, however, that with respect to the Advisor Action

the Stay extension shall be subject to amendment or modification by the MDL Court in the event

CTO-4 becomes final and the Advisor Action is transferred to the MDL Court; and (II)

extending the Rule 4(m) service deadline for the complaints in the Lender Action and the

Preference Actions[7] from the current deadline of July 2, 2012 through and including a date that is

ninety (90) days after the effective date of a confirmed plan of reorganization for Tribune.

---

[6] The Court has scheduled a hearing to consider confirmation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., and Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (Docket No. 11399) (as may be further amended, modified or supplemented from time to time, the "DCL Plan") commencing on June 7, 2012.

[7] The complaint in the Advisor Action has been served on both defendants.  Therefore, an extension of the service period requested in the Motion is not necessary for the Advisor Action, and the Committee's request for relief under Rule 4(m) does not apply to the Advisor Action.

## BASIS FOR RELIEF AND ARGUMENT

**A.    Amending the Definition of "Termination Event" in the Standing Orders to Further Extend the Stay is in the Best Interests of the Estates**

16.    The Court has inherent authority and jurisdiction to consider and enforce the terms of the orders it enters, including the Standing Orders.  *See Langston Law Firm v. Mississippi,* 410 B.R. 150, 155 (S.D.N.Y. 2008) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334.") (quoting *In re Chateaugay Corp.,* 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996)); *see also In re Fibermark,* 369 B.R. 761, 765 (Bankr. D. Vt. 2007); *In re White Motor Credit Corp.,* 75 B.R. 944, 947-48 (Bankr. N.D. Ohio 1987).  The Standing Orders carve out from the broad stay of litigation motions "to extend or otherwise respecting the stay . . . ."  *See* Standing Orders, p. 3 and 4.  Consequently, the Court's consideration of the relief sought herein is appropriate at this time.  The Court also has extended the stay and modified the definition of Termination Event in the Standing Orders six times previously.

17.    The confirmation hearing on the DCL Plan is currently scheduled to commence on June 7, 2012.  The stay of the Advisor Action will expire on June 1, 2012.  Also, it is not likely that the effective date of a confirmed plan of reorganization for Tribune will occur prior to the expiration of the stay of the Lender Action and Preference Actions on July 2, 2012.

18.    The Committee believes that all parties in interest will benefit by the stay extension requested by this Motion for the same reasons that (a) the Court entered Standing Orders that stayed the commencement of full litigation of such adversary proceedings; and (b) the Court entered the previous orders re-defining Termination Event in the Standing Orders.  The sought extension in the stay will conserve estate resources by avoiding litigation of the claims in the Lender Action that will be resolved by the DCL Plan, assuming it is confirmed, and will leave to the Debtors the decision how to proceed with respect to the Preference Actions

following confirmation of the DCL Plan.  Further, CTO-4 transferring the Advisor Action to the MDL Court is still pending.

19.    The extension of the Stay will not prejudice any of the defendants, who will similarly conserve their resources until a final resolution is reached on the DCL Plan.  An extension will also permit the parties to focus on confirmation and issues directly related to the DCL Plan.  Any relief granted in the Advisor Action shall be subject to amendment or modification by the MDL Court if CTO-4 becomes final and the Advisor Action is transferred to the MDL Court.

20.    Accordingly, the Committee believes it is in the best interests of the estates and all parties in interest to continue the stay until the DCL Plan is confirmed.

**B.    A Further Extension of the Period to Serve the Complaint Should Be Granted For Cause or, Alternatively, in the Court's Discretion**

21.    Rule 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

22.    Accordingly, the Court must first determine whether good cause exists for failure to serve.  *See Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  If good cause exists, the Court must extend the time for service pursuant to Fed. R. Civ. P 4(m).  *See id.*  If good cause does not exist, the Court nevertheless has discretion to extend the time for service. *See id.*; *PCT v. New England Confectionary Co. (In re Fleming Cos.)*, No. 05-78096, 2006 WL 1062476, at *1 (Bankr. D. Del. Apr. 20, 2006).

23.     In the Third Circuit, where a plaintiff demonstrates good cause, a court *must* grant an extension of time to effectuate service under Rule 4(m). *See McCurdy v. Amer. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998); *Petrucelli*, 46 F.3d at 1308. Even in circumstances where good cause does not exist, a court has full discretion to approve an extension.

24.     To establish good cause, the plaintiff must demonstrate "good faith and some reasonable basis for noncompliance within the time specified by the rule." *See Cain v. Abraxas,* 209 Fed. Appx. 94, 96 (3d Cir. 2006) (citing *MCI Telecom. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)); *In re Lenox Healthcare, Inc.*, 319 B.R. 819, 822-23 (Bankr. D. Del. 2005).

25.     Taking all relevant circumstances into consideration, courts should extend the time to serve when "counsel exhibits substantial diligence, professional competence and good faith." *See In re Lenox Healthcare*, 319 B.R. at 822 (citing, *inter alia, Consolidated Freightways Corp. v. Larson*, 827 F.3d 916, 919-20 (3d Cir. 1987)); 10 Collier on Bankruptcy, 9006.06 [3], at 9006-14 (15th rev. ed. 2001).

### (i)     Cause exists to extend the service deadline in the Preference Actions.

26.     The current posture of the bankruptcy cases presents circumstances that provide good cause for extending the deadline to serve the defendants to the Preference Actions. Under the DCL Plan, the Reorganized Debtors will ultimately succeed as plaintiffs to the Preference Actions. The Reorganized Debtors will have ample reasons to carefully formulate an approach to the prosecution or settlement of the Preference Actions, taking into consideration, among other things, that many of the defendants to the Preference Actions will have important material, ongoing relationships with the Reorganized Debtors. Immediate prosecution of the Preference Actions beginning with service of process by the Committee could hinder or negatively impact

the Reorganized Debtors' efforts in this respect. An extension of time to complete service may alleviate the risks inherent with those tensions.

27.     Confirmation of the DCL Plan may eliminate, reduce or moot certain of the claims set forth in the Preference Actions. Service of the several hundred complaints in the Preference Actions by the Committee could result in the needless expenditure of the estates' resources that may not ultimately result in additional recoveries for creditors. Preserving good relations with employees, retirees and professionals who continue to work with the Debtors is very important, especially where the underlying preference claims at issue may never be pursued.

28.     To the extent the requested extension of the stay of the Preference Actions is granted, this requested extension of the service deadline will not prejudice any defendant. Pursuant to the Standing Order, all rights of the defendants are preserved during the stay. The defendants will not be prejudiced by receiving service of this litigation after the effective date of a confirmed plan of reorganization of Tribune.

**(ii)     Likewise, an extension of the deadline for service in the Lender Action should be granted.**

29.     The Committee in good faith and for good cause seeks an extension of its deadline to serve defendants under Rule 4(m). A further extension of the Rule 4(m) deadline will ensure that the Committee has time to complete service, will not prejudice any party, and will keep that case on the same timetrack as the other LBO-related actions still before this Court. The Committee has been largely successful in identifying the over 1,600 lender defendants.[8]

---

[8]     Courts recognize that, in certain situations, the identity of a defendant may not be known prior to the filing of a complaint. In such circumstances, courts permit the naming of fictitious ("Doe") defendants as stand-ins until the defendants can be identified through discovery. *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998); *see also Alston v. Parker*, 363 F.3d 229, 233 & n.6 (3d Cir. 2004) (discussing cases authorizing a plaintiff to undertake discovery to identify as-yet-unidentified defendants).

However, the process of completing service upon all parties may take additional time beyond July 2, 2012.

30.    First, while the Committee has attempted to serve most of the defendants, including hundreds of foreign entities, the Committee's name or address information has turned out to be either incorrect or incomplete for many defendants notwithstanding multiple attempts at service.[9]  Many of the LBO lenders have names that are similar to one another and/or are similar to other non-LBO lender entities that are legally distinct.   In addition, some lenders have changed names and/or addresses since the filing of the Lender Action.  These problems with the contact information have taken a long time to surface, often showing up weeks or months after the Committee has attempted initial service. In response, the Committee has undertaken additional discovery with regard to misidentified entities, and will continue to do so for the remaining defendants in the coming months should the Court grant the sought relief.

31.    Second, while the Committee has served hundreds of foreign parties under Rule 4(f)(2)(C)(ii) by the registered mail process approved by the Court, other foreign parties are located in countries that have not adopted the Hague Convention or have not allowed service by streamlined methods under the Hague Convention. For these parties, the registered mail approach may be insufficient; as such, service on these parties has proven a more complicated and protracted process.

32.    Third, because the stay in the Lender Action remains in effect, the Committee is currently unable to include in its summonses all information required by Local Rule 7004-2, including the complaint response date and the pretrial conference date. Thus, should the Court not confirm the DCL Plan containing the proposed settlement of the lender-related claims in the Lender Action, the Committee will have to send a second summons to all defendants once the

---

[9]    The Committee has served over 1,400 of the defendants in the Lender Action as of May 25, 2012.

stay expires to notify them of the timing of their initial obligations. This second step further supports the extension in the Rule 4(m) service period sought by this motion.

33.    Fourth, to the extent the requested extension of the stay is granted, the extension will not prejudice any defendant. Pursuant to the Standing Order, all rights of the defendants in the Lender Action are preserved during the stay.

34.    In sum, an extension of the service deadline to a date that is 90 days after the effective date of a plan of reorganization will permit the Committee to attempt to complete service on all defendants in the Lender Action. The likelihood that the Committee will obtain the additional information necessary to properly serve all defendants named in the Lender Action, along with the absence of prejudice to the parties yet to be served, justifies extension of the service deadline. Additionally, the requested extension would alleviate prejudice that the Committee could suffer if ongoing service efforts cause the Committee to identify entities that should be additional defendants in the Lender Action.

35.    A Rule 4(m) extension also will preserve claims against any later-discovered parties. Courts in this Circuit have held, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, that if an extension of the Rule 4(m) time period has been granted and a plaintiff, within that extended period of time, notifies a previously unnamed defendant of the plaintiff's intention to include that person as a defendant in the action, a later amendment of the complaint to specifically name the defendant will relate back to the date of filing of the original complaint, so that the claim will be timely if the original complaint was filed within the applicable limitations period. *See In re Fleming Cos.*, 2006 WL 1062476, at *1; *Allen v. Nat'l RR Passenger Corp. (In re Amtrak)*, No. 03-CV-3497, 2004 WL 2830629, at *8 (E.D. Pa. Dec. 7, 2004) (holding that "notice of the matters raised in the amended pleading within the applicable [Rule 4(m)] time limit generally eliminates the prejudice a party may experience" and therefore

an order extending the Rule 4(m) 120-day period effectively "extend[s] the time period for which notice could be provided to defendant pursuant to Rule 15(c)(3).").

36.     The Committee and the Debtors (along with the other major constituents in the case), have been engaged in an extended plan confirmation process that has involved countless pleadings, numerous disclosure statements, the competing proposed plans, extensive discovery, mediation, litigation and more.  The parties have focused on confirming a plan of reorganization that will facilitate the Debtors' orderly exit from bankruptcy and possibly resolve the claims set forth in the Lender Action and Preference Actions.  Immediate prosecution by the Committee of these litigations could result in the needless expenditure of the estates' resources that may not ultimately result in additional recoveries for creditors.

     **(iii)     The Court also may exercise its discretion to extend the Rule 4(m) deadline.**

37.     Alternatively, even if the Court finds that good cause, as a matter of law, does not exist for either the Preference Actions or the Lender Action, it may still grant the requested extensions.  Such relief is a permissible exercise of the Court's broad power to control its schedule and docket.  *See Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967).  For the above stated reasons, permitting the relief sought herein is an eminently reasonable exercise all of that power.

WHEREFORE, the Committee respectfully requests that the Court enter an Order substantially in the form attached as **Exhibit E**, (I) replacing subsection (ii) of the definition of "Termination Event" in the Standing Orders with "the date that is ninety (90) days after the effective date of a confirmed plan of reorganization for Tribune"; (II) extending the Rule 4(m) service deadline for the complaints in the Lender Action and the Preference Actions from the current deadline of July 2, 2012 through and including a date that is ninety (90) days after the effective date of a confirmed plan of reorganization for Tribune; and (III) granting such further relief as the Court deems just and proper.

Dated: May 31, 2012
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/Landon J. Ellis_
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
James S. Green, Jr. (No. 4406)
Landon J. Ellis (No. 4852)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

-and-

**SEITZ, VAN OGTROP & GREEN P.A.**

_/s/James S. Green, Sr_
James S. Green, Sr. (No. 0481)
Patricia P. McGonigle (No. 3126)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-0600
Facsimile: (302) 888-0606

-and-

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
Douglas E. Deutsch
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

- and -

**ZUCKERMAN SPAEDER LLP**
Graeme W. Bush
James Sottile
Andrew N. Goldfarb
1800 M Street, Suite 1000
Washington, DC 20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

*Co-Counsel to the Official Committee of*
*Unsecured Creditors*