## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:**<br><br>**TRIBUNE COMPANY, et al.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 08-13141 (KJC)**<br><br>**(Jointly Administered)**<br><br>Hearing Date and Time:  June 7, 2012 at 3:00 p.m. (EST) |

### REPLY OF CITADEL EQUITY FUND LTD. AND
### CAMDEN ASSET MANAGEMENT LP IN SUPPORT OF THEIR
### MOTION FOR RECONSIDERATION AND/OR CLARIFICATION

TO:    THE HONORABLE KEVIN J. CAREY
         UNITED STATES BANKRUPTCY JUDGE

Citadel Equity Fund Ltd., a Cayman Islands company ("Citadel"), and Camden Asset Management LP ("Camden" and, together with Citadel, the "Tendering Noteholders"), by their undersigned counsel, for their Reply in support of their Motion for Reconsideration and/or Clarification [Docket No. 11458] (the "Motion")[1] respectfully represent:

### INTRODUCTION

1.      On April 9, 2012, this Court issued its Memorandum Regarding Allocation Disputes [Docket No. 11337] (the "Memorandum") and accompanying Order Regarding Allocation Disputes [Docket No. 11338] (the "Order" and, together with the Memorandum, the "Decision"). In the Decision, the Court made a ruling with respect to the amount of the Tendering Noteholders' claims (and other former holders of PHONES that exercised the Exchange Option) against the Debtors.

2.      In the Decision, this Court held that the Tendering Noteholders' claim amount depends on the Tendering Noteholders' rights as of the Petition Date. *See* Memorandum, at p. 15.

---

[1] Capitalized terms not defined herein shall, expect as otherwise indicated, have the meanings ascribed to them in the Motion.

The Court further held that, as of the Petition Date, because the Tendering Noteholders surrendered or delivered their PHONES for cancellation, such PHONES were no longer outstanding. *See* Memorandum, at p. 18.  As a result, this Court concluded Tribune was obligated, as of the date such PHONES were tendered, to pay such holders cash in an amount equal to the applicable exchange rate set forth in the PHONES Indenture.  *See* Memorandum, at pp. 16-17.  Based on the foregoing, this Court concluded that the Tendering Noteholders held a claim against Tribune for the cash amount that Tribune was obligated to pay to such holders on the Petition Date - - approximately $18.26 per PHONE previously held by such holders. *See* Memorandum, at p. 19. Such cash amount is, on a per-PHONE basis, significantly less than - - indeed, approximately twelve percent (12%) of - - the amount of the claim that PHONES holders have against the Debtors. *Id.*  In the Decision, the Court did not find that the Tendering Noteholders surrendered or delivered for cancellation their PHONES for a new PHONES security with a significantly reduced principal amount.

3.      The Memorandum contains the following chart (the "<u>Allocation Chart</u>"):

| | Number of PHONES | PHONES Claim Amount (calculated at $155.4944 per PHONES) |
|---|---|---|
| Original PHONES | 8,000,000 | $ 1,243,955,537 |
| Less Exchanges not subject to challenge (prior to the Exchange Period) | (386,649) · | ($60,121,771) |
| subtotal | 7,613,351 | $ 1,183,833,767 |
| Less Exchanges subject to determination (tendered during the Exchange Period, including the rejected DWAC tenders) | (3,093,941) | ($ 481,090,630) |
| subtotal | 4,519,410 | $ 702,743,137 |
| Add Exchange Value of Accepted DWAC Tenders (including Rejected DWAC tenders) | | $ 56,509,795 |
| Total | 4,519,410 | $759,252,932 |

4.      In the Allocation Chart, the Court reduced the total "Number of PHONES" outstanding from 7,613,351 to 4,519,410 by subtracting the number of PHONES that were delivered for cancellation by the PHONES holders that exercised the Exchange Option. This would support the conclusion that this Court determined that such holders no longer hold PHONES claims, but rather, hold general unsecured claims for the cash exchange amount payable by Tribune. At the same time, however, in the Allocation Chart, this Court also included in the total "PHONES Claim Amount" the approximate $56 million cash amount that Tribune is obligated to pay the former holders of PHONES that exercised the Exchange Option. Although the Allocation Chart is ambiguous, the Court nowhere stated (in the Allocation Chart or elsewhere in the Decision) that the Tendering Noteholders' claims and the PHONES holders' claims must be classified together for purposes of Section 1122 of the Bankruptcy Code.

5.      On April 23, 2012, the Tendering Noteholders filed their Motion for clarification and/or reconsideration with respect to two issues raised in this Court's April 9, 2012 Memorandum Regarding Allocation Disputes [Docket No. 11337] (the "Memorandum") and accompanying Order Regarding Allocation Disputes [Docket No. 11338] (the "Order" and, together with the Memorandum, the "Decision"):

A.      Did this Court, in its Decision, intend in any way to affect the rights and remedies of Tendering Noteholders in the state law fraudulent conveyance litigation captioned *In re: Tribune Company Fraudulent Conveyance Litigation,* 11-MD-02296 (WHP) (S.D.N.Y.) (the "MDL")) (or, alternatively, were all such matters relating to the MDL entirely reserved for disposition by the MDL Court)?

B.      Did this Court, in its Decision, intend in any way to fix or establish the classification of the claims of Tendering Noteholders in any Chapter 11 Plan for the Debtors (or, alternatively, was that issue reserved for determination in connection with Plan confirmation)?

Alternatively, if the Court did intend to affect the Tendering Noteholders' rights under the MDL and/or establish the Plan classification of the Tendering Noteholders' claims, the Motion requested that the Court reconsider its conclusions for the reasons set forth in the Motion.[2]

6.      On May 21, 2012, the Debtors filed their Response to the Motion [Docket No. 11660] (the "Debtors' Objection"),[3] as did Aurelius Capital Management, L.P. [Docket No. 11665] ("Aurelius' Objection", and, together with the Debtors' Objection, the Oaktree Joinder and the JPM Joinder, the "Objections").

7.      For the reasons set forth below, the Objections should be overruled and the Motion should be granted.

---

[2] In the Motion, the Tendering Noteholders also expressly reserved their rights with respect to appeal on issues raised in the Decision including, without limitation, the determination of the Tendering Noteholders' claim amount - - i.e., in the parlance of these proceedings, the 'high PHONES" or "low PHONES" determination.

[3] Oaktree Capital Management, L.P. and Angelo Gordon & Co., L.P. [Docket No. 11662] (the "Oaktree Joinder") and JPMorgan Chase Bank, N.A., [Docket No. 11663] (the "JPM Joinder") joined the Debtors' Objection. The Oaktree Joinder and the JPM Joinder adopted the arguments in the Debtors' Objection (and did not contain independent arguments).

## ARGUMENT

**A.    This Court Has Acknowledged That the Decision Was Not Intended
to Address Either of the Issues Raised by the Tendering Noteholders in the Motion**

8.    As a threshold matter, the Objections should be overruled because this Court has provided guidance that it did not intend to decide either of the issues that the Tendering Noteholders raised in the Motion.   On April 27, 2012, at the Court's request, a status conference/scheduling hearing (the "Scheduling Hearing") was held with respect to the Motion. At the Scheduling Hearing, this Court stated:

> The Motion for Reconsideration raises two issues, both of which the movant acknowledges were not addressed by the Court's allocation decision. *And that should come as no surprise because,* as the parties had defined and the Court had memorialized, the determinations to be made, *neither of the questions that the movant now raises were to be decided in the allocation determination.*

April 27, 2012 Transcript, pp. 6:24 - 7:5 (emphasis added).

**B.    The Debtors' Objection Should Be Overruled**

9.    Even if the Court's remarks at the Scheduling Hearing did not effectively "moot" the Debtors' Objection, the Debtors' Objection should be overruled.   The Debtors' Objection reduces to four "points."   First, the Debtors appear to assert that the Tendering Noteholders do not have standing to seek the relief sought in the Motion (or have "waived" their right to seek such relief) because the Tendering Noteholders purportedly did not participate in these Chapter 11 Cases prior to filing the Motion.   Second, although the Debtors acknowledge that the Decision was not intended to adjudicate the rights of the parties to the MDL - - i.e., the Debtors concede that the Motion should be granted with respect to the "first" issue noted above - -  the Debtors object to the Motion to the extent that the Tendering Noteholders sought to "expand" their rights under the MDL by virtue of the Court's holding in the Decision.   Third, the Debtors argue that the Motion should be denied because, according to the Debtors, the Court's October 31, 2011

5

Confirmation Opinion - - which addressed the discrete issue of whether the Tendering Noteholders' claims should be subordinated under Section 510(b) of the Bankruptcy Code (and held that they shuld not) - - should be deemed to have determined plan classification issues for all purposes with respect to the Tendering Noteholders' claims. Fourth, the Debtors argue that, notwithstanding the Court's holding in the Decision that the PHONES that were tendered for exchange were no longer outstanding at the Petition Date, the Decision holds that the claims of the Tendering Noteholders, for all purposes (even though not considered by the Court) must be treated the same as the claims of outstanding PHONES. Each of the Debtors' arguments fails, for the reasons set forth below.

I.      **The Tendering Noteholders Have Participated Throughout These Chapter 11 Cases**

10.     The Debtors' argument that the Tendering Noteholders have "waived" the right to seek the relief sought in the Motion because they purportedly have not participated in these Chapter 11 Cases is incorrect.  Camden has been a substantial and meaningful participant throughout these Chapter 11 Cases as a member of the group represented by Wilmington Trust Company ("WTC") and Brown Rudnick (as counsel), and has paid substantial attorneys' fees in connection therewith.  Camden has also participated as a member of the group represented by WTC and Akin Gump in the MDL (as counsel), and has paid substantial attorneys' fees in connection therewith.

11.     The need for the Tendering Noteholders to file the Motion only arose when WTC (and Brown Rudnick) made it clear to the Tendering Noteholders that, following the Court's "low PHONES" Decision, they would not continue to represent the interests of the Tendering Noteholders in these Chapter 11 Cases. Upon information and belief, the decision by WTC and Brown Rudnick to cease representing the Tendering Noteholders in these Chapter 11 Cases was

made at the direction of Aurelius, who, upon information and belief, holds a majority of PHONES claims as a result of the Court's "low PHONES" Decision. *See* Aurelius' Objection, p. 1, fn 1. WTC continues, however, to represent the Tendering Noteholders in the MDL. Prior to the "low PHONES" Decision, the issues raised in the Motion were never before the Court because they were never ripe for adjudication.

12.     Even if the Tendering Noteholders had not participated in these Chapter 11 Cases prior to filing the Motion, that point would be irrelevant to the relief sought in the Motion. As the Court indicated, the Decision did not address the issues raised in the Motion (nor, should it have). As described at length below, the Court's Confirmation Decision likewise did not address the issues raised in the Motion.

## II.     The Tendering Noteholders Do Not Seek to Expand Their Rights in the MDL

13.     The Debtors acknowledge that this Court has consistently stated that it does not intend to resolve issues relating to the claims being litigated in the MDL. The Debtors further concede that "nothing in the [Allocation Disputes] Decision addressed, much less altered, the Court's previously stated intention not to adjudicate the rights of the parties to the MDL" with respect to such claims. As a result, the Debtors "do not object to an order stating that the [Allocation Disputes] Decision was not intended to adjudicate the rights of the Tendering Noteholders" with respect to such claims.

14.     The Debtors, however, do object to the extent that the Tendering Noteholders seek to "expand" their rights in the MDL by virtue of the Court's ruling in the Decision by, for example, "advanc[ing] causes of action in the MDL that go beyond the Disclaimed State Law Avoidance Claims…" For the avoidance of any doubt, by the Motion the Tendering Noteholders do not seek to expand their rights in the MDL. The Tendering Noteholders continue to be

included among the Plaintiffs in the MDL in the full amount of the PHONES extant on the date

the causes of action asserted therein accrued.  If any party disputes that position, that issue is for

the Court in the MDL to decide and, contrary to Aurelius' anticipated efforts described below, it

must be made crystal clear to the MDL Court that this Court has not ruled on or considered such

issue.

### III.    The Court's Ruling That the Tendering Noteholders' Claims Could Not Be Subordinated Under Section 510(b) Does Not Bind The Court or Any Party With Respect to Section 1122 Plan Classification Issues

15.    On October 31, 2011, this Court entered its opinion denying confirmation of two

competing plans of reorganization for the Debtors [Docket No. 10133] (the "Confirmation

Opinion").  In the Confirmation Opinion, at p. 105, this Court briefly addressed two (and only

two) discrete and specific issues relating to the Tendering Noteholders' Claims:

> The responses to the PHONES Motion raise two issues. First, the
> Debtors argue that the election to exercise the Exchange Right is
> irrevocable, thereby limiting the Tendering Holders' claim amount
> to the cash payment amount due from the Debtors as a result of the
> Exchange. Second, some PHONES Noteholders who did not
> exercise the Exchange Rights argue that the Tendering Holders'
> claims should be subordinated to the other PHONES Note claims
> pursuant to §510(b).

16.    The Court concluded that it did not have a sufficiently developed record to resolve

the first issue relating to the amount of the Tendering Noteholders' claims at that time.  The

Court, however, did rule with respect to the second issue. In making its ruling, the Court

analyzed whether the Tendering Noteholders' claims were for "damages" or for "simple recovery

of an unpaid debt due on an instrument." *See* Confirmation Opinion, at 107.   The Court

concluded that the Tendering Noteholders' claims were not for "damages" and expressly held

that the claims of Tendering Noteholders could not be subordinated to the claims of holders of

PHONES that did not exercise the Exchange Option under Section 510(b) of the Bankruptcy

Code. *See* Confirmation Opinion, at 107-108. The Court never addressed whether the Tendering Noteholders' claims were "substantially similar" to the PHONES holders' claims under Section 1122 of the Bankruptcy Code (and such issue was never before the Court). The Court likewise never then considered all the possible consequences of a "low PHONES" decision (with respect to classification issues), because such issues were not before the Court and certainly not ripe for determination.

17.     Nonetheless, the Debtors argue that the Confirmation Decision should be read as holding that the Tendering Noteholders' claims must be classified together with the holders of PHONES claims for purposes of Section 1122 of the Bankruptcy Code. This argument ignores the language and intention of this Court that its ruling was limited to what was then before the Court - - whether the Tendering Noteholders' claims should be subordinated under Section 510(b) on the grounds argued and considered at that time.

### IV.    The Decision Did Not Address Classification of the Tendering Noteholders Claims

18.     The Debtors argue that the Court intended the Decision to hold that the Tendering Noteholders' claims must be classified together with the claims of PHONES holders for all purposes and, in particular, for purposes of plan confirmation. There is no basis for such suggestion and the Tendering Noteholders trust that the Court, consistent with its guidance on April 27, 2012, will agree. *See* April 27, 2012 Transcript, p 7:3 - 7:5 ("[N]either of the questions that the movant now raises were to be decided in the allocation determination.").

19.     The Debtors seem to argue that the Court's aggregation of the PHONES holders' claims and Tendering Noteholders' claims in a single aggregate claim amount in the "Allocation Chart" set forth on the Decision should be interpreted as a ruling that such claims must be classified together for Plan confirmation purposes. Such argument, however, begs the question.

As described in the Motion, the Allocation Chart included in the Decision is unclear.  The Tendering Noteholders acknowledged in the Motion that the Court included the Tendering Noteholders' claim amount in the "aggregate PHONES claim" amount included in the Allocation Chart.  The Tendering Noteholders, however, also pointed out that the Court reduced the total "Number of PHONES" in the Allocation Chart from 7,613,351 to 4,519,410 by subtracting the number of PHONES that were tendered for exchange from the aggregate number of PHONES outstanding.

20.    In other words, the Allocation Chart in the Decision could be read as separately classifying the PHONES claims and the Tendering Noteholders' claims as easily as it could be read as classifying them together.  It seems clear that the Court did not view the Allocation Chart as a binding determination as to the proper classification of the Tendering Noteholders' claims, particularly when such issue only became "ripe" upon a "low PHONES" determination by the Court in its Decision.  Rather, it appears to be a "shorthand" way of describing the Court's ruling as to the dollar amount of the Tendering Noteholders' claims (and nothing more).  As a result, the Allocation Chart's "lumping together" of the Tendering Noteholders' claims with the PHONES claims cannot and should not be read as a basis for determining that the Decision dictates that the Tendering Noteholders' claims should be classified together with the PHONES claims for confirmation purposes.

### V.    The Decision Held That the Tendering Noteholders' PHONES Were Delivered for Cancellation and No Longer Outstanding

21.    The Debtors also argue that, in the Decision, the Court held that the Tendering Noteholders' claims (in the amount of approximately 12% of the PHONES holders' claims) must receive the same treatment as the PHONES holders' claims.  In other words, the Debtors appear to argue that, in the Exchange, the Tendering Noteholders exchanged their PHONES for a lesser-

PHONES claim equal to approximately 12% of the principal amount of the PHONES. Such an argument is contrary to common sense and the Court's conclusions in the Decision.

22.     No holder in his right mind would surrender a claim (of any kind) for an identical claim worth almost 90% less than the original claim. A holder may well, however, surrender a large subordinated claim for a smaller claim amount if such lesser claim is payable immediately in cash and not subordinated. Assuming, as correct, the "low PHONES" conclusion in the Decision, this is precisely what the Tendering Noteholders did. The Debtors, however, would have this Court (and other parties) believe that the Tendering Noteholders voluntarily handed over a subordinated claim in the amount of more than $220 million for an equally subordinated claim in the amount approximately $26 million. This argument strains credulity.

23.     In addition, and perhaps more importantly, the argument is contrary to the Court's holding in the Decision. In the Decision, the Court held that, once the Tendering Noteholders' PHONES were delivered for cancellation, they were no longer outstanding. *See* Memorandum, at p. 18. The Court held that Tribune was obligated, as of the date the Tendering Noteholders' PHONES were delivered for cancellation, to pay such holders a cash amount equal to the applicable exchange rate set forth in the PHONES Indenture. *See* Memorandum, at pp. 16-17. Based on the foregoing, this Court concluded that the Tendering Noteholders held a claim against Tribune for the cash amount that Tribune was obligated to pay to such holders on the Petition Date - - approximately $18.26 per PHONE previously held by such holder. *See* Memorandum, at p. 19. In other words, the Court held, as common sense would provide, that, upon delivery of the PHONES for cancellation, the Tendering Noteholders had the right to receive (and Tribune was obligated to pay) $18.26 per PHONE, *not the right to receive a PHONES claim in a drastically reduced amount*. Stated another way, the exchange of PHONES by the Tendering Noteholders

was not an exchange of a large PHONES claim for a small PHONES claim - - it was an exchange of a large PHONES claim for a cash claim in the reduced amount, a claim that was not subject to any contractual subordination because the claim the Tendering Noteholders then had was not a PHONE.

24.     The provisions of the Global Note and the Revised Exchange Notice to which the Debtors cite do not support the Debtors' argument.  The Debtors contend that provisions in the Global Note and the Revised Exchange Notice (which state that, following the exchange, payment will be made to "tendering Holders") provide support for their contention that the Tendering Noteholders should be deemed to hold PHONES for purposes of the PHONES Indenture's subordination provisions. (Notwithstanding that this Court held in the Decision that such PHONES were no longer outstanding).  The provisions that the Debtors cite, however, are clearly intended to provide a mechanism by which Tribune (and DTC) could ascertain to whom the cash payment should be made.  In other words, such provisions set the "record date" for purposes of determining who is entitled to receive the cash payment.  These provisions do not provide support for the Debtors' position - - they merely dictate how the Debtors can determine who should receive payment.  As set forth in the Motion, because the PHONES delivered by the Tendering Noteholders are no longer outstanding, as held by this Court in the Decision, the Tendering Noteholders are no longer holders of PHONES securities and the Tendering Noteholders' claims cannot be treated the same as the PHONES claims.

C.    **Aurelius' Objection Should Be Overruled**

25.     Aurelius' Objection should likewise be overruled.  Aurelius argues that the Motion should be denied for three reasons.  First, Aurelius argues that the Tendering Noteholders have not met the standard for reconsideration under FRCP 59(e), made applicable here pursuant

to Bankruptcy Rule 9023, to demonstrate that reconsideration of the Court's determination *regarding the allowed amount of the PHONES Notes Claims* is warranted. Second, Aurelius mimics the argument set forth the in the Debtors' Objection that the Court held in the Confirmation Decision that the Tendering Noteholders claims should be classified together with the other PHONES claims. Third, taking a position different from the Debtors (who concede that the Court's decision regarding "high PHONES" and "low PHONES" should have no effect on the MDL), Aurelius claims that the Court's determination of the Tendering Noteholders' claim amount (for Chapter 11 purposes) should be final and binding on the Tendering Noteholders with respect to all claims of any kind in any litigation (specifically, the MDL). Aurelius no doubt intends to argue in the MDL that this Court has made determinations as to the Tendering Noteholders' claims that should be binding on the MDL Court. Each of these arguments fails, for the reasons below.

## I.      To the Extent Such Standard Is Applicable, the Tendering Noteholders Have Met the Standard for Reconsideration under Rule 59(e)

26.    Aurelius' initial argument "misses the boat" for three reasons. First, Aurelius appears to misunderstand the relief sought by the Tendering Noteholders in the Motion. The Tendering Noteholders did not, in the Motion, seek reconsideration of the Court's determination in the Decision of the amount of the PHONES claim - - i.e., the "high PHONES" or "low PHONES" decision. Although the Tendering Noteholders reserved their rights with respect to such issue, the Motion does not seek such relief. Rather, the Motion sought confirmation and/or clarification from the Court whether it intended its Decision to (i) affect the rights and remedies of the Tendering Noteholders in the MDL and/or (ii) fix or establish the classification of the Tendering Noteholders' claims under any chapter 11 plan for the Debtors (including the Plan). If the Court intended to affect the Tendering Noteholders' rights under the MDL and/or establish

the classification of the Tendering Noteholders' claims, the Motion requested that the Court reconsider its conclusions for the reasons set forth in the Motion.

27.    Second, as noted above, the Court indicated at the April 27 Scheduling Hearing that reconsideration or clarification of the two issues that were, in fact, raised in the Motion was unnecessary, as such issues were not addressed in the Decision.

28.    Third, even if the standards applicable to a reconsideration motion were applicable here, Aurelius' claim that the Tendering Noteholders have not satisfied such legal standards also fails.    As this Court stated in its Memorandum on Reconsideration, dated December 29, 2011 [Docket No. 10531] (the "Reconsideration Opinion"), "a motion to alter or amend a judgment . . . must be grounded on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." Reconsideration Opinion at 4. Reconsideration is appropriate where facts that "would alter or impact the decision have been overlooked or misapprehended," and not where a party seeks "to reargue the facts or applicable law." Reconsideration Opinion at 4-5.

29.    The Tendering Noteholders are not seeking to reargue the facts or applicable law. As this Court has stated, the issue of proper classification of the Tendering Noteholders claims and the other PHONES claims was not before the Court in connection with the Decision and the Court did not rule with respect to such issue in the Decision.  *See* April 27, 2012 Transcript, pp. 7:2 - 7:5 ("[A]s the parties had defined and the Court had memorialized, the determinations to be made, neither of the questions that the movant now raises were to be decided in the allocation determination."). Accordingly, the issues raised by the Tendering Noteholders were never argued in the first instance and, by definition, cannot be "reargued".

30.     If the issued raised in the Motion were to be properly "reconsidered" by this Court, the Tendering Noteholders submit that the test laid out by this Court in the Reconsideration Opinion is met here.  As this Court recognized, reconsideration is appropriate where facts have been overlooked or misapprehended or where reconsideration is needed to correct an error of law or prevent manifest injustice.  The Tendering Noteholders submit that interpreting the Decision to determine proper classification of the Tendering Noteholders' claims for plan confirmation purposes, when the issue was not before the Court and no record with respect to such issue was presented, would be precisely the kind of manifest injustice and clear error that Rule 59(e) (and Bankruptcy Rule 9023) was intended to prevent.

II.     **The Confirmation Decision Did Not Address Classification of the Tendering Noteholders' Claims**

31.     Aurelius contends that the Motion should be denied because the Court's Confirmation Decision purportedly should be interpreted (or extended) to constitute a ruling that the Tendering Noteholders' claims must be classified with the PHONES holders' claims for all purposes.  As stated above, however, the Court's Confirmation Opinion (at least with respect to the Tendering Noteholders) was limited to the discrete issue of whether the Tendering Noteholders' claims must be subordinated to the claims of PHONES holders under Section 510(b) of the Bankruptcy Code.  That was the issue before the Court.  The issue of whether the Tendering Noteholders' claims must be classified *together* with the PHONES holders' claims under Section 1122 of the Bankruptcy Code in the context of a "low PHONES" decision was not before the Court at that time, was not addressed or considered, and is not the subject of the Confirmation Opinion.  Aurelius' argument to the contrary should be overruled.

15

### III.    The Decision Cannot and Should Not Be Binding
in the MDL (or Any Other Litigation)

32.    Finally, Aurelius argues that the Court's determination regarding the allowed amount of the PHONES Notes Claims should be final and binding on the Tendering Noteholders in all other litigation, including in the MDL.  In making such argument, Aurelius relies on authority relating to a Bankruptcy Court's general ability (or jurisdiction) to adjudicate the validity and amount of "claims" (as defined in the Bankruptcy Code).  Aurelius, however, conveniently ignores the simple (and unavoidable) fact that the "claims" at issue in these Chapter 11 Cases are fundamentally different from those at issue in the MDL.  To the extent Aurelius or Wilmington Trust Company, represented by the same counsel, attempt to argue that this Court has made a decision or ruling that is binding on, or has any precedential effect or impact, on the MDL Court, such issue should be conclusively addressed to the contrary at this time.

33.    The claims in issue accrued at different times.  As set forth in the Motion, claims in bankruptcy accrue or are fixed on the petition date (and any disputes concerning the nature and amount of such claims are determined by the bankruptcy court as of such date).  On the other hand, the state law fraudulent conveyance claims asserted in the MDL accrued when the actions or transaction complained of occurred - - that is, at the time of the "LBO" transactions.  Here, the Court held that the Tendering Noteholders were not holders of outstanding PHONES on the petition date, because the PHONES had been delivered for cancellation and were no longer outstanding.  The Court, however, certainly did not hold that the Tendering Noteholders were not PHONES holders at the time the state fraudulent conveyance claims accrued for purposes of the MDL.

34.    The causes of action at issue in the MDL are also distinct from those in these Chapter 11 Cases.  The MDL litigation relates to claims for state law fraudulent conveyance.

The claims at issue in these Chapter 11 Cases relate to Tribune's obligation to pay present and former holders of PHONES on account of their respective and _different_ claims. The PHONES are subordinated claims. The Tendering Noteholders' claims arise from Tribune's obligation to pay the amount on the tendered PHONES and represent the right to receive cash in the amount of $18.26 per PHONE (which right to payment, as described above, is not contractually subordinated in right of payment to any other claim in these Chapter 11 Cases).[4]

WHEREFORE, for all of the foregoing reasons, the Tendering Noteholders respectfully request that the Court: (i) grant the Motion, (ii) deny the Objections, and (iii) grant such other and further relief as is just, proper and equitable.

Dated: June 1, 2012

COZEN O'CONNOR

_____
Mark E. Felger (No. 3919)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

-and-

ANDREWS KURTH LLP
Paul N. Silverstein (admitted _pro hac vice_)
Jeremy B. Reckmeyer (admitted _pro hac vice_)
450 Lexington Avenue, 15th Floor
New York, NY 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

_Counsel to Citadel Equity Fund Ltd._
_and Camden Asset Management LP_

---

[4] It goes without saying that a claim based on a state law avoidance action is distinct from a claim for payment of an obligation relating to a promissory note. Accordingly, regardless of the Bankruptcy Court's jurisdiction to determine the amount of claims for bankruptcy purposes (which the Tendering Noteholders obviously do not contest), such determination is, by its terms, inapplicable to (and not controlling with respect to) the MDL.