## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: June 21, 2012 at 4:00 p.m.<br>Hearing Date: *Only if Objections Are Filed* |

### THIRTEENTH QUARTERLY FEE APPLICATION OF McDERMOTT WILL & EMERY LLP, AS SPECIAL COUNSEL TO DEBTORS FOR DOMESTIC LEGAL MATTERS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD DECEMBER 1, 2011 THROUGH FEBRUARY 29, 2012

| | |
|---|---|
| **Name of applicant:** | McDermott Will & Emery LLP |
| **Authorized to provide professional services to:** | Tribune Company, et al. |
| **Date of retention:** | March 13, 2009 nunc pro tunc to December 8, 2008 |
| **Period for which compensation and reimbursement is sought:** | December 1, 2011 to February 29, 2012 |
| **Amount of compensation sought as actual, reasonable and necessary:** | $1,664,211.60[1] (80% of which is $1,331,369.28) |
| **Amount of expense reimbursement sought as actual, reasonable and necessary:** | $34,809.70[2] |

This is an: __ monthly    $\underline{\quad X \quad}$ interim    ____ final application

---

[1] McDermott Will & Emery LLP ("McDermott") actually incurred fees in the amount of $1,853,866.50. The amount requested reflects a voluntary reduction by McDermott of $189,654.90, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the January 2012 and February 2012 monthly fee applications.

[2] In McDermott's February 2012 monthly fee application, McDermott mistakenly sought reimbursement of $10,239.99 for its expenses (as opposed to $10,239.61), resulting in an overcharge of $0.38. In its next monthly fee application, McDermott will reduce the amount of expenses for which it seeks reimbursement by $0.38.

Prior Interim Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 4/15/09[3] | 1029 | 12/8/08 – 2/28/09 | $530,504.50[4] | $6,808.20 | $416,077.00 | $1,489.70 |
| 10/9/09 | 2313 | 3/1/09 – 5/31/09 | $839,465.00 | $3,883.93 | $838,826.50 | $3,631.33 |
| 12/11/09 | 2820 | 6/1/09 – 8/31/09 | $365,485.00 | $1,312.70 | $352,935.92 | $1,254.30 |
| 6/11/09 | 4761 | 9/1/09 – 11/30/09 | $362,715.50 | $2,425.85[5] | $361,032.75 | $2,423.55 |
| 6/30/10 | 4907 | 12/1/09 – 2/28/10 | $819,588.00 | $1,776.95[6] | $817,040.50 | $1,776.95 |
| 9/3/10 | 5622 | 3/1/10 – 5/31/10 | $439,490.50 | $1,892.73 | $437,539.50 | $1,892.73 |
| 10/27/10 | 6151 | 6/1/10 – 8/31/10 | $716,188.50 | $4,885.44 | $714,380.25 | $4,858.14 |
| 2/7/11 | 7819 | 9/1/10 – 11/30/10 | $1,153,555.00 | $13,621.43 | $1,151,028.75 | $13,388.29 |
| 6/20/11 | 9285 | 12/1/10 – 2/28/11 | $1,560,114.00 | $17,757.01 | $[_____] | $[_____] |
| 7/15/11 | 9471 | 3/1/11 – 5/31/11 | $1,987,295.50 | $89,002.31 | $[_____] | $[_____] |
| 11/8/11 | 10182 | 6/1/11 – 8/31/11 | $1,932,538.50 | $20,555.38 | $[_____] | $[_____] |
| 2/2/12 | 10828 | 9/1/11 – 11/30/11 | $1,180,492.00 | $33,817.74 | $[_____] | $[_____] |

---

[3] The Combined Monthly and First Quarterly Application combined McDermott's monthly fee statements and quarterly fee application for the period of December 8, 2008 through February 28, 2009.

[4] By agreement with the above-captioned debtors and debtors in possession (the "Debtors"), McDermott reduced its compensation sought by $110,867.50 due to an inadvertent overpayment by the Debtors. Such reduction was to respond to the United States Trustee's (the "U.S. Trustee") comments regarding McDermott's Combined Monthly and First Quarterly Application. The U.S. Trustee and McDermott (together, the "Parties") agreed that McDermott would not seek payment of the disputed fees, in the amount of $110,867.50 (the "Disputed Fees"), at that time. The Parties agreed, however, that McDermott reserved its right to seek payment of the Disputed Fees at a later time.

[5] Due to an inadvertent expense submission in the Second Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period March 1, 2009 Through May 31, 2009, McDermott reduced the amount of expense reimbursement sought in its October fee application by $250.00. Thus, McDermott actually sought reimbursement of expenses in the amount of $2,175.85 ($2,425.85-250.00).

[6] Due to an inadvertent expense submission in the Third Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period June 1, 2009 Through August 31, 2009, McDermott reduced the amount of expense reimbursement sought in its December fee application by $58.40. Thus, McDermott actually sought reimbursement of expenses in the amount of $1,718.55 ($1,776.95-$58.40).

## COMPENSATION FOR PROFESSIONALS
## DECEMBER 1, 2011 THROUGH FEBRUARY 29, 2012

| Name of Professional Person | Position of the Applicant, Area of Expertise, Year of Obtaining License to Practice | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Blake D. Rubin | Partner, Tax, Member of Pennsylvania Bar since 1980, Member of District of Columbia Bar since 1987 | $995 | 288.8 | $287,356.00 |
| Robert Feldgarden | Counsel, Tax, Member of District of Columbia Bar since 1975 | $945 | 0.3 | $283.50 |
| Gary Karch | Partner, Tax, Member of Illinois Bar since 1980 | $935 | 1.0 | $935.00 |
| Daniel Zucker | Partner, Tax, Member of Illinois Bar since 1984 | $930 | 0.3 | $279.00 |
| Jean Pawlow | Partner, Tax, Member of California Bar since 1989, Member of District of Columbia Bar since 1989 | $915 | 1.3 | $1,189.50 |
| Robin Greenhouse | Partner, Tax, Member of District of Columbia Bar since 1988 | $900 | 7.1 | $6,390.00 |
| Andrea M. Whiteway | Partner, Tax, Member of Maryland Bar since 1992, Member of District of Columbia Bar since 1993 | $885 | 244.8 | $216,648.00 |
| Jeffrey Wagner | Partner, Tax, Member of Illinois Bar since 1993 | $885 | 1.3 | $1,150.50 |
| Nancy Ross | Partner, Litigation, Member of Illinois Bar since 1985 | $865 | 1.0 | $865.00 |
| Brooks B. Gruemmer | Partner, Corporate, Member of Illinois Bar since 1990 | $840 | 56.2 | $47,208.00 |
| Matthew White | Partner, Tax, Member of Tennessee Bar since 1990, Member of District of Columbia Bar since 2001 | $835 | 4.5 | $3,757.50 |
| Paul J. Compernolle | Partner, Employee Benefits, Member of Illinois Bar since 1978 | $820 | 50.2 | $41,164.00 |
| William W. Merten | Partner, Employee Benefits, Member of Illinois Bar since | $820 | 14.8 | $12,136.00 |

| | | | |
|---|---|---|---|
| | 1985 | | | |
| Susan Peters Schaefer | Partner, Employee Benefits, Member of Illinois Bar since 1989 | $820 | 1.6 | $1,312.00 |
| Thomas P. Ward | Partner, Tax, Member of Illinois Bar since 1996 | $810 | 8.5 | $6,885.00 |
| Michael J. Wilder | Partner, Tax, Member of District of Columbia Bar since 1995 | $780 | 32.9 | $25,662.00 |
| Jon G. Finkelstein | Partner, Tax, Member of New York Bar since 2001, Member of District of Columbia Bar since 2002 | $765 | 150.9 | $115,438.50 |
| Amy M. Gordon | Partner, Employee Benefits, Member of New Jersey Bar since 1991, Member of New York Bar since 1993, Member of Illinois Bar since 2001 | $725 | 27.1 | $19,647.50 |
| Michael V. Lee | Partner, Corporate, Member of California Bar since 1994 | $710 | 0.9 | $639.00 |
| Maureen O'Brien | Counsel, Employee Benefits, Member of Illinois Bar since 1998 | $665 | 6.8 | $4,522.00 |
| Nava Hazan | Partner, Restructuring & Insolvency, Member of New York Bar since 2000 | $645 | 4.1 | $2,644.50 |
| Ryan D. Harris | Partner, Corporate, Member of Illinois Bar since 2002 | $640 | 59.7 | $38,208.00 |
| Michael T. Graham | Partner, Employee Benefits, Member of Illinois Bar since 1995, Member of Indiana Bar since 1995 | $640 | 2.1 | $1,344.00 |
| Jonathan Boyles | Partner, Employee Benefits, Member of New York Bar since 2001, Member of District of Columbia Bar since 2002 | $620 | 0.9 | $558.00 |
| Christopher Lin | Partner, Corporate, Member of Illinois Bar since 2002 | $595 | 28.6 | $17,017.00 |
| Jeffrey M. Holdvogt | Partner, Employee Benefits, Member of Illinois Bar since 2003 | $580 | 0.8 | $464.00 |
| Andrew T. Turney | Partner, Corporate, Member of California Bar since 2003 | $560 | 3.7 | $2,072.00 |

| Patrick J. McCurry | Associate, Tax, Member of Illinois Bar since 2007 | $500 | 72.0 | $36,000.00 |
|---|---|---|---|---|
| David R. Neville | Associate, Corporate, Member of Illinois Bar since 2005 | $500 | 5.4 | $2,700.00 |
| Andrew Blair-Stanek | Associate, Tax, Member of District of Columbia Bar since 2009 | $435 | 79.2 | $34,452.00 |
| Gregory A. Kopacz | Associate, Restructuring & Insolvency, Member of New York Bar since 2010 | $435 | 61.6 | $26,796.00 |
| Cole Parker | Associate, Corporate, Member of Illinois Bar since 2010 | $365 | 60.6 | $22,119.00 |
| Daryl Gardner | Technology Project Manager | $385 | 5.4 | $2,079.00 |
| Emanuel Borges | Litigation Technology Project | $360 | 0.8 | $288.00 |
| David Skowron | Manager, Litigation Technology | $345 | 7.3 | $2,518.50 |
| Martha Louks | Technology Project Manager | $280 | 21.7 | $6,076.00 |
| Samantha Kepler | Technology Project Analyst | $250 | 1.0 | $250.00 |
| Julia Martin | Staff Attorney, Litigation | $250 | 85.9 | $21,475.00 |
| David Wenninger | Staff Attorney, Litigation | $250 | 142.2 | $35,550.00 |
| Nakeasha Sanders-Small | Staff Attorney, Litigation | $250 | 37.8 | $9,450.00 |
| Karen Asa | Senior Staff Attorney, Litigation | $245 | 96.8 | $23,716.00 |
| Judith Davis | Staff Attorney, Litigation | $245 | 69.0 | $16,905.00 |
| Katherine Froelicher | Staff Attorney, Litigation | $245 | 64.2 | $15,729.00 |
| Aaron Massey | National Dispute Services Leader, Litigation | $245 | 8.1 | $1,984.50 |
| Quinton McElhaney | Staff Attorney, Litigation | $245 | 137.4 | $33,673.00 |
| Christopher Miller | Staff Attorney, Litigation | $245 | 154.5 | $37,852.50 |
| Brant Newgard | Senior Staff Attorney, Litigation | $245 | 211.7 | $51,866.50 |
| Niraj A. Patel | Staff Attorney, Litigation | $245 | 120.2 | $29,449.00 |
| Nicole LeBeau | Staff Attorney, Litigation, Member of Illinois Bar since | $245 | 225.5 | $55,247.50 |

| | 2005 | | | |
|---|---|---|---|---|
| Rachel Sue Pennington | Staff Attorney, Litigation | $245 | 108.8 | $26,656.00 |
| G. Sharon Stone | Staff Attorney, Litigation | $245 | 2.7 | $661.50 |
| Wayne F. McCabe | Staff Attorney, Litigation | $215 | 175.8 | $37,797.00 |
| Christopher Harris | Litigation Technology Data Analyst | $160 | 2.0 | $320.00 |
| Shirley Sarco | Litigation Technology Data Analyst | $160 | 3.5 | $560.00 |
| Carolyn Andrepont | Staff Attorney, Litigation | $100 | 254.0 | $25,400.00 |
| Brian Androw | Staff Attorney, Litigation | $100 | 100.0 | $10,000.00 |
| Erin Benson | Staff Attorney, Litigation | $100 | 89.7 | $8,970.00 |
| Brenda Broderick | Staff Attorney, Litigation | $100 | 78.9 | $7,890.00 |
| Yoaldena Canela | Staff Attorney, Litigation | $100 | 259.7 | $25,970.00 |
| Daniel Concannon | Staff Attorney, Litigation | $100 | 90.2 | $9,020.00 |
| Edward Craft | Staff Attorney, Litigation | $100 | 98.2 | $9,820.00 |
| Kelly Drew | Staff Attorney, Litigation | $100 | 74.8 | $7,480.00 |
| David Eyman | Staff Attorney, Litigation | $100 | 95.1 | $9,510.00 |
| Andrew Garman | Staff Attorney, Litigation | $100 | 104.3 | $10,430.00 |
| Dimitry Halvorsen | Staff Attorney, Litigation | $100 | 103.9 | $10,390.00 |
| LaKeith Hoskin | Staff Attorney, Litigation | $100 | 271.5 | $27,150.00 |
| Cyrus Irani | Staff Attorney, Litigation | $100 | 106.1 | $10,610.00 |
| Adolphus Jones | Staff Attorney, Litigation | $100 | 226.5 | $22,650.00 |
| Garth Lewis | Staff Attorney, Litigation | $100 | 242.7 | $24,270.00 |
| Denise Loftus | Staff Attorney, Litigation | $100 | 82.2 | $8,220.00 |
| Kevin McAleavy | Staff Attorney, Litigation | $100 | 99.0 | $9,900.00 |
| Michael Meyer | Staff Attorney, Litigation | $100 | 94.7 | $9,470.00 |

| Robin Mills | Staff Attorney, Litigation | $100 | 90.1 | $9,010.00 |
|---|---|---|---|---|
| Amber Morris | Staff Attorney, Litigation | $100 | 80.1 | $8,010.00 |
| Dimeka Nichols Jennings | Staff Attorney, Litigation | $100 | 74.0 | $7,400.00 |
| Matthew Patrician | Staff Attorney, Litigation | $100 | 73.6 | $7,360.00 |
| Thomas Radek | Staff Attorney, Litigation | $100 | 79.0 | $7,900.00 |
| Karla Rangel | Staff Attorney, Litigation | $100 | 77.7 | $7,770.00 |
| Jennifer Risen | Staff Attorney, Litigation | $100 | 100.1 | $10,010.00 |
| Diandra Ritchie | Staff Attorney, Litigation | $100 | 97.2 | $9,720.00 |
| Angie Robertson | Staff Attorney, Litigation | $100 | 97.0 | $9,700.00 |
| Lucia Robinson | Staff Attorney, Litigation | $100 | 81.1 | $8,110.00 |
| Elissa Robiso | Staff Attorney, Litigation | $100 | 107.0 | $10,700.00 |
| John Roeser | Staff Attorney, Litigation | $100 | 82.6 | $8,260.00 |
| Nirali Shah | Staff Attorney, Litigation | $100 | 106.1 | $10,610.00 |
| Kathryn Stell | Staff Attorney, Litigation | $100 | 87.5 | $8,750.00 |
| Jeffrey Story | Staff Attorney, Litigation | $100 | 77.6 | $7,760.00 |
| Andrea Swift | Staff Attorney, Litigation | $100 | 60.0 | $6,000.00 |
| Roger Teuber | Staff Attorney, Litigation | $100 | 251.3 | $25,130.00 |
| Sarah Trostle | Staff Attorney, Litigation | $100 | 78.0 | $7,800.00 |
| Dolores Whiters | Staff Attorney, Litigation | $100 | 268.7 | $26,870.00 |
| Louis Wierenga | Staff Attorney, Litigation | $100 | 219.1 | $21,910.00 |
| Grand Total: | | | 7,620.6 | $1,664,211.60[7] |
| Blended Rate: | | $243.01 | | |

---

[7] McDermott actually incurred fees in the amount of $1,853,866.50. The amount requested reflects a voluntary reduction by McDermott of $189,654.90, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the January 2012 and February 2012 monthly fee applications.

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Block Shopper/Journatic | 179.9 | $111,279.50 |
| BuzzDash | 0.3 | $279.00 |
| Welfare Plans | 27.4 | $19,839.50 |
| ESOP | 36.3 | $29,310.00 |
| Local TV | 0.9 | $639.00 |
| Newsday | 285.4 | $51,730.50 |
| Chapter 11 Restructuring | 701.8 | $565,499.50 |
| Cubs Post Closing Matters | 7.2 | $3,852.00 |
| Employee Benefits Committee/Noteholder | 29.1 | $23,727.00 |
| General Employee Benefits | 5.1 | $4,122.00 |
| Perfect Market, Inc. | 21.8 | $15,009.50 |
| All Direct Mail Services, Inc. | 3.7 | $2,072.00 |
| Baltimore Sun Mailers Pension Plan | 0.6 | $492.00 |
| Project Valencia | 90.6 | $69,512.50 |
| 2009 Audit | 6,230.5 | $766,847.60[8] |
| **TOTAL:** | 7,620.6 | $1,664,211.60[9] |

---

[8] McDermott actually incurred fees in the amount of $956,502.50 with respect to this matter. The amount requested reflects a voluntary reduction by McDermott of $189,654.90, representing a twenty percent (20%) discount with respect to the fees associated with this matter for the January 2012 and February 2012 monthly fee applications.

[9] McDermott actually incurred fees in the amount of $1,853,866.50. The amount requested reflects a voluntary reduction by McDermott of $189,654.90, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the January 2012 and February 2012 monthly fee applications.

## EXPENSE SUMMARY

| Expense Category | Service Provider | Total Fees |
|---|---|---|
| Business Meals | -- | $294.27 |
| Computer Hosting Fee for Document Review | In-House | $29,343.45 |
| Computer Research | PACER | $45.92 |
| Express Mail | Federal Express | $46.70 |
| Messenger/Courier | U.S. Messenger & Logistics Inc. | $11.24 |
| Photocopy | In-House/Williams Lea Inc. | $1,244.40 |
| Postage | United States Postal Service | $1.92 |
| Telecommunications | Conference Plus | $238.33 |
| Travel Expenses | -- | $3,583.47 |
| **TOTAL** | | $34,809.70[10] |

---

[10] In McDermott's February 2012 monthly fee application, McDermott mistakenly sought reimbursement of $10,239.99 for its expenses (as opposed to $10,239.61), resulting in an overcharge of $0.38. In its next monthly fee application, McDermott will reduce the amount of expenses for which it seeks reimbursement by $0.38.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: June 21, 2012 at 4:00 p.m. |
| | Hearing Date: *Only if Objections Are Filed* |

**THIRTEENTH QUARTERLY FEE APPLICATION OF**
**McDERMOTT WILL & EMERY LLP, AS SPECIAL COUNSEL TO**
**DEBTORS FOR DOMESTIC LEGAL MATTERS, FOR ALLOWANCE OF**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR**
**THE PERIOD DECEMBER 1, 2011 THROUGH FEBRUARY 29, 2012**

McDermott Will & Emery LLP ("McDermott"), as Special Counsel for Domestic Legal

Matters to the Tribune Company, et al. (the "Debtors"), hereby submits this thirteenth quarterly

application (the "Thirteenth Quarterly Application") for approval and allowance of compensation

for services rendered in the amount of $1,664,211.60 (80% of which is $1,331,369.28) and

reimbursement for expenses incurred in the amount of $34,809.70 during the period commencing

December 1, 2011 through February 29, 2012 (the "Thirteenth Quarterly Application Period").

This Thirteenth Quarterly Application is submitted pursuant to sections 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local Rules for the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), the Order Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and

Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"), the

Executive Office of United States Trustees' Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 dated January 30,

1996 (the "Guidelines"), and the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications dated March 19, 2009 (the "Fee Examiner Order").   In support of this Thirteenth Quarterly Application, McDermott respectfully represents as follows:

## JURISDICTION

1.     This Court has jurisdiction over this Thirteenth Quarterly Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief sought herein are sections 105(a), 330, and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

3.     On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  On December 10, 2008, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.     On October 12, 2009, Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, Inc. (the "Cubs" and one of the Debtors) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  On October 14, 2009, the Court entered an order consolidating the Cubs' chapter 11 case with the Debtors' chapter 11 cases for procedural purposes only.

5.     The Debtors have continued in possession of their respective properties and have continued in the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.     No trustee has been appointed in these chapter 11 cases.

## McDERMOTT RETENTION

7.     Prior to the Petition Date, the Debtors retained McDermott as general legal counsel and agreed to pay on a monthly basis the reasonable value of services rendered based on McDermott's standard billing rates and pursuant to its standard reimbursement policies.

8.     On March 13, 2009, the Court authorized the employment and retention of McDermott pursuant to sections 105(a) and 327(a) as special counsel to the Debtors for general domestic legal matters, nunc pro tunc to December 8, 2008.

9.     On October 14, 2009, the Court entered an Order Directing (I) Joint Administration of Chapter 11 Cases and (II) That Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. Be Made Applicable to Chapter 11 Case of Chicago National League Ball Club, LLC (the "CNLBC Order") [Docket No. 2333]. Pursuant to the CNLBC Order, McDermott's retention was extended to include the Cubs case.

## PROCEDURAL BACKGROUND

10.     The Compensation Order and the Fee Examiner Order (collectively, the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code must file with the Court and provide to the fee examiner their monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the professional must certify in writing to the Debtors that no objection or a partial

objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection.

11.     Pursuant to the procedures set forth in the Fee Orders, McDermott prepared, filed with the Court, and served upon the Notice Parties and the fee examiner Monthly Fee Applications for the months of December 2011, January 2012, and February 2012,[1] which Monthly Fee Applications are incorporated herein by reference and addressed in this Thirteenth Quarterly Application.

12.     In addition, beginning with the three-month period ending on February 28, 2009, and for each three-month period thereafter, all professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (each a "Quarterly Fee Application Request").    Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules.    As noted, this Thirteenth Quarterly Application represents the thirteenth Quarterly Fee Application Request that McDermott has filed with the Court in connection with these chapter 11 cases, and it covers the period from December 1, 2011 through February 29, 2012.

---

[1] The docket numbers for McDermott's Monthly Fee Applications for December 2011, January 2012, and February 2012 are 10976, 11254 and 11425, respectively.

## RELIEF REQUESTED

13.     By this Thirteenth Quarterly Application, McDermott requests that the Court allow the interim allowance and award compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by McDermott as special legal counsel to the Debtors during the Thirteenth Quarterly Application Period.  Further, McDermott seeks this Court's allowance for payment of such amounts to McDermott, less any amounts previously paid to McDermott pursuant to the Monthly Fee Applications for the Thirteenth Quarterly Application Period.

14.     During the Thirteenth Quarterly Application Period, attorneys and paraprofessionals of McDermott have expended a total of 7,620.6 hours in connection with these chapter 11 cases.  The amount requested as compensation for services rendered by McDermott to the Debtors during the Application Period is $1,664,211.60.[2]  To the best of McDermott's knowledge, this Thirteenth Quarterly Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and the Compensation Order.

## COMPENSATION PAID AND ITS SOURCES

15.     All services for which compensation is requested by McDermott were performed for or on behalf of the Debtors.

16.     In compliance with Rule 2016, McDermott confirms that during the Thirteenth Quarterly Application Period, McDermott received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with

---

[2] McDermott actually incurred fees in the amount of $1,853,866.50.  The amount requested reflects a voluntary reduction by McDermott of $189,654.90, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the January 2012 and February 2011 monthly fee applications.

the matters covered by this Thirteenth Quarterly Application, except from the Debtors. There is no agreement or understanding between McDermott and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

17.    As of the Petition Date, McDermott held a retainer from the Debtors in the amount of $67,777.26. The Debtors reduced their first payment to McDermott by the amount of the retainer and McDermott drew down on the retainer in connection with the payment pursuant to the Combined Monthly and First Quarterly Application. Accordingly, McDermott no longer holds any retainer in connection with its retention in these cases.

## SUMMARY OF SERVICES

18.    The following is a summary of the activities performed by McDermott attorneys and paraprofessionals during the Thirteenth Quarterly Application Period, organized by project category.

### Matter 0507 – Newsday

19.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service in connection with the Debtors' 2008 taxable year, including preparing responses to information document requests by conducting a document review.

20.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services. The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information should be withheld on the basis of a privilege. Upon the attorney reviewers' completion of the document review, the technology project managers in charge of the e-discovery services (i)

separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

### Matter 0515 – Chapter 11 Restructuring/Tax Planning

21.    McDermott provided general tax advice to the Debtors regarding various tax issues related to the Debtors' emergence from bankruptcy.  McDermott researched and advised the Debtors with respect to various tax-related issues in connection with the Debtors' plan of reorganization.  McDermott further advised the Debtors in connection with numerous litigation trust tax issues.  McDermott also advised the Debtors regarding their submission for a private letter ruling.  McDermott further advised the Debtors regarding the tax implications of entering into certain potential post-emergence transactions.

### Matter 0515 – Chapter 11 Retention/Fee Application

22.    McDermott gathered and prepared various billing information required to file fee statements pursuant to the Compensation Order and the Guidelines.  McDermott also drafted and revised fee statements for submission in accordance with the Compensation Order.

### Matter 0516 – Perfect Market, Inc.

23.    McDermott advised the Debtors with respect to structuring a potential transaction and certain tax issues in connection therewith.

### Matter 0520 – All Direct Mail Services, Inc.

24.    McDermott provided general corporate advice to the Debtors with respect to a potential asset sale transaction.

### Matter 0522 – Baltimore Sun Mailers Pension Plan

25.    McDermott advised the Debtors with respect to an Internal Revenue Service determination letter.

### Matter 0527 – 2009 Audit[3]

26.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service and reviewed documents and prepared a privilege and production log in connection therewith.

27.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services.  The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information should be withheld on the basis of a privilege.  Upon the attorney reviewers' completion of the document review, the technology project managers in charge of the e-discovery services (i) separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

### Matter 0529 – Local TV

28.    McDermott advised the Debtors with respect to a certain license agreement in connection with a potential corporate transaction.

---

[3] In connection with the 2009 Audit matter for the January 2012 and February 2012 monthly fee applications, McDermott voluntarily reduced the amount of its fees by twenty percent (20%).

### Matter 0534 – Project Valencia

29.     McDermott advised the Debtors with respect to the structure of a proposed confidential transaction and analyzed various agreements in connection therewith.

### Matter 0021 – Cubs Post Closing Matters

30.     McDermott drafted certain documents and advised the Debtors with respect to a building lease agreement and a consent agreement relating thereto.

### Matter 0040 – General Employees Benefits Matters

31.     McDermott provided general legal advice to the Debtors with respect to the Debtors' benefit plans and analyzed various issues involving benefit plan expenses for the Debtors.

### Matter 0041 – Welfare Plans

32.     McDermott provided general legal advice regarding programs offered by the Debtors to their employees and advised the Debtors with respect to certain agreements relating to such programs.

### Matter 0047 – ESOP

33.     McDermott provided general legal advice on issues regarding the Debtors' ESOP and analyzed various issues relating to certain settlement proceeds.

### Matter 0535 – Block Shopper/Journatic

34.     McDermott advised the Debtors with respect to a proposed transaction and analyzed various issues and drafted numerous documents in connection therewith.

### Matter 0517 – BuzzDash

35.     McDermott provided the Debtors general legal advice regarding whether certain transaction-related expenses are deductible or amortizable.

**Matter 0537 – Employee Benefits Committee/Noteholder**

36.    McDermott advised the Debtors with respect to potential claw-back litigation involving certain creditors of the Debtors and analyzed various issues in connection therewith.

## ACTUAL AND NECESSARY EXPENSES

37.    McDermott seeks reimbursement of expenses actually and necessarily incurred in connection with the rendition of its services in the amount of $34,809.70.[4]    The requested expenses are customarily charged to non-bankruptcy clients of McDermott.    Due to the complexity of the Debtors' corporate and financial structure, the Debtors have faced numerous critical and unique issues.    In order for McDermott to analyze and address such issues properly, McDermott attorneys may have performed computerized legal research and incurred other expenses during the Thirteenth Quarterly Application Period, all of which was necessary to further the Debtors' reorganization and in the best interests of the Debtors' estates.

38.    With respect to photocopying expenses, McDermott ordinarily charges all of its clients $.20 per page, but pursuant to Local Rule 2016-2(e), McDermott has charged the Debtors the maximum permitted amount of $.10 per page.    With respect to facsimile expenses, in compliance with the Guidelines, McDermott charges $1.00 per page for facsimile transmissions.

39.    In addition, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, certain long distance telephone calls and conference calls may have been required.    These charges are intended to cover McDermott's direct operating costs, which costs are not incorporated into the McDermott hourly billing rates.    Only clients who actually use services of this type are separately charged for such services.

---

[4] In McDermott's February 2012 monthly fee application, McDermott mistakenly sought reimbursement of $10,239.99 for its expenses (as opposed to $10,239.61), resulting in an overcharge of $0.38.  In its next monthly fee application, McDermott will reduce the amount of expenses for which it seeks reimbursement by $0.38

40.    Further, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, travel may have been required for certain matters. Typically, such travel expenses are initially borne by the attorney, then reimbursed by the firm and charged to the appropriate client and matter.

41.    The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

42.    To the extent that time or disbursement charges for services rendered or disbursements incurred during the Thirteenth Quarterly Application Period, but were not processed prior to the preparation of this Thirteenth Quarterly Application, McDermott reserves its rights to request additional compensation for such services, and reimbursement of such expenses in a future application.

## CONCLUSION

43.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by McDermott is fair and reasonable given (a) the complexity of the legal matters, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under this title.  McDermott has reviewed the requirements of Local Rule 2016-2 and reasonably believes that this Thirteenth Quarterly Application complies with that rule.

WHEREFORE, McDermott respectfully seeks allowance of the amounts set forth in the Thirteenth Quarterly Application for the period of December 1, 2011 through February 29, 2012, specifically the amount of $1,664,211.60 (80% of which is $1,331,369.28) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $34,809.70, for a total of $1,699,021.30.

Dated: Washington, District of Columbia
June 1, 2012

McDERMOTT WILL & EMERY LLP

Blake D. Rubin (admitted *pro hac vice*)
600 13th Street, N.W.
Washington, D.C. 20005-3096
Telephone:  (202) 756-8424
Facsimile:  (202) 756-8087

and

Gregory A. Kopacz (admitted *pro hac vice*)
340 Madison Avenue
New York, NY 10173-1922
Telephone:  (212) 547-5400
Facsimile:  (212) 547-5444

*Special Counsel for Domestic Legal Matters to Tribune Company, et al.*

DM_US 33713352-1.020336.0515

- 14 -