# **EXHIBIT A**

**Summary Chart of Objections to Fourth Amended DCL Plan**

## Summary of Objections to Fourth Amended DCL Plan[1]

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| **Aurelius Capital Management, L.P. ("Aurelius")** [D.I. 11664][2] | 1. <u>Professional Fees of the Senior Lenders and Bridge Lenders</u>. The DCL Plan's payment of fees and expenses of the Senior Lenders' and Bridge Lenders' professionals without requiring fee applications and without meeting the "substantial contribution" requirement of the Bankruptcy Code violates 1129(a)(4) and is contrary to applicable Third Circuit precedent. (Obj. at ¶¶ 5-14) | 1. Aurelius has no economic interest in the result of this issue, so it should not be heard. The "substantial contribution" requirement of Section 503(b) of the Bankruptcy Code does not apply to the consensual settlement of reimbursement obligations arising from a prepetition contract. Additionally, the disclosure mechanism provided by Section 9.1 of the DCL Plan satisfies the requirements of Section 1129(a)(4) of the Bankruptcy Code. Section 9.1 of the DCL Plan will be amended to provide for the Lenders to file their fee statements on the docket. However, the Lenders need not file fee applications. (Memorandum at ¶¶ 82-107) | 1. This objection is unresolved. |
| | 2. <u>Cancellation of the Senior Notes Indenture and PHONES Notes Indenture</u>. Additional language should be added to Section 5.8.2 of the DCL Plan to further discredit any potential argument that the Senior Notes Claims and PHONES Notes Claims are discharged under the DCL Plan for all purposes, including with respect to pursuing Disclaimed State Law Avoidance Claims against the state law defendants or Preserved Causes of Action. (Obj. at ¶¶ 5, 16-17) The Indentures, Senior Notes and PHONES Notes should survive for all purposes relevant to the pursuit of Preserved Causes of Action and Disclaimed State Law Avoidance Claims. Aurelius requests that Section 5.8.2 state: "Notwithstanding anything contained elsewhere in this Plan, (x) the Indentures **and the debt issued thereunder** shall continue in effect solely to the extent necessary to allow…" (changes in bold) | 2. The following language has been added to the DCL Plan: "For the avoidance of doubt, nothing in this Plan shall or is intended to impair the rights of (i) any Indenture Trustee or any Holder of a Senior Notes Claim or PHONES Notes Claim from prosecuting any Disclaimed State Law Avoidance Claim, with the exception of any Disclaimed State Law Avoidance Claim that becomes a Holder Released Claim pursuant to Section 11.2.2 of this Plan, (ii) the Litigation Trust and Litigation Trustee from pursuing the Preserved Causes of Action, and (iii) any defendant in defending against a Disclaimed State Law Avoidance Claim or a Preserved Cause of Action." (Memorandum at ¶ 110); (DCL Plan at § -5.8.2) | 2. This objection is unresolved. |
| | 3. <u>Definition of Selling Stockholders</u>. The definition of | 3. This objection should be rejected because the releases | 3. This objection is |

---

[1] The descriptions set forth in this chart are intended as summaries only. For the avoidance of doubt, nothing contained herein shall impair or otherwise affect the DCL Plan Proponents' rights in regard to the objections. Reference should be made to the objections, the Memorandum or the DCL Plan, as applicable, for more complete descriptions of the objections, the DCL Plan Proponents' responses thereto and the terms of the DCL Plan.

[2] On May 31, 2012, the Robert R. McCormick Foundation and the Cantigny Foundation filed a statement in response to Aurelius's objection [D.I. 11725]. On June 1, 2012, a group of the Debtors' former officers and directors filed a joinder to such statement [D.I. 11740].

CH1 6806957v.3

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | "Selling Stockholders" should be amended to make clear that it encompasses all defendants to the Disclaimed State Law Avoidance Actions, in capacities other than as beneficial owners. (Obj. at ¶¶ 5, 18-20) | and the defined terms that they incorporate are clear and are integral to the DCL Plan Settlement, Aurelius failed to make this objection during the prior confirmation hearing and Aurelius's proposed changes are unnecessary to prosecute the Disclaimed State Law Avoidance Claims against Selling Stockholders. However, to accommodate certain objections, the DCL Plan has been modified so that "Selling Stockholders" include any recipient of shareholder proceeds, including "legal" as well as "beneficial" owners in order to make clear that the Plan does not preclude Aurelius or any other similarly situated party from pursuing beneficial owners of Tribune stock because of a legal technicality that might prevent them from naming a party as a nominal defendant in a lawsuit against such shareholders. (Memorandum at ¶¶ 147-152); (DCL Plan at § - 1.1.199) | unresolved. |
| | 4. <u>Definition of Disclaimed State Law Avoidance Claims</u>. The DCL Plan Proponents should delete subsections (iv) and (v) of the "<u>provided, however</u>" clause in the definition of "Disclaimed State Law Avoidance Claims" because subsection (iv) is redundant of subsection (iii), and subsection (v) is redundant of subsections (i)-(iii). (Obj. at ¶¶ 5, 21) | 4. Plans of reorganization routinely use "for the avoidance of doubt" language like the purportedly redundant language. Notwithstanding, the DCL Plan has been slightly modified, such that subsections (iv) and (v) remain in this definition, but the DCL Plan Proponents have moved "for the avoidance of doubt" to immediately before subsection (iv). (Memorandum at ¶¶ 151-152); (DCL Plan at § 1.1.67) | 4. This objection is unresolved. |
| | 5. <u>Litigation Trust Confidentiality and Common Interest Privilege Provisions</u>:[3] The LT Confidentiality Agreement should explicitly provide that all of the Debtors' privileges attached to all documents, communications or other information related to the Preserved Causes of Action be transferred to the Litigation Trustee to be utilized by the Litigation Trustee in any manner he deems appropriate, and that he has the right to waive any applicable privilege. (Obj. at ¶¶ 5, 22-25) | 5. No provision of the Bankruptcy Code nor any case mandates the transfer of privileges from a debtor to a litigation trustee where control of the reorganized debtor is not also being transferred to the litigation trust. The LT Confidentiality Agreement appropriately balances the interests of all concerned. (Memorandum at ¶¶ 129-139) | 5. This objection is unresolved. |

---

[3] On June 1, 2012 a group of the Debtors' former officers and directors filed the Certain Directors' and Officers' Reply to the Objection of Aurelius Capital Management, LP to Confirmation of the Fourth Amended Joint Plan of Reorganization [D.I. 11739].

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | 6. <u>Requested Litigation Trust Agreement Changes</u>: The terms of the Litigation Trust Agreement ("<u>LTA</u>") should be modified, as follows: (Obj. at ¶¶ 5, 26) | 6. *See below for the response to each proposed modification:* | 6. *See below for the status of each:* |
| | a. <u>Section 1.5.</u> The word "directly" should be stricken from section 1.5 of the LTA to ensure that the Litigation Trustee has the full power and authority to take actions or seek orders from the court that materially affect the interests of the Litigation Trust – whether the affect is direct or indirect. | a. Section 1.5 of the LTA has been modified to strike the words "directly affect the interest of the Litigation Trustee". | a. This objection is resolved. |
| | b. <u>Section 3.3(b).</u> The first sentence of Section 3.3(b) should be either deleted entirely or revised to preserve the Litigation Trustee's ability to seek modifications of the DCL Plan or Confirmation Order to the extent necessary to aid the Litigation Trustee in the acquitting of its duties and obligations under the DCL Plan and the Litigation Trust Agreement. | b. The Litigation Trustee should not be able to seek modifications of the DCL Plan or Confirmation Order. Furthermore, Aurelius does not allege that Section 3.3(b) violates any confirmation standards. (Memorandum at ¶¶ 140-141) | b. This objection is unresolved. |
| | c. <u>Section 3.4(c).</u> There should not be a cap on the size of the Expense Fund. Additionally, the LTA and DCL Plan should be modified to provide that the Litigation Trust should not be required to repay the Litigation Trust Loan unless it has sufficient proceeds to replenish the Expense Fund to $50 million after repayment of the Litigation Trust Loan and after payment of the Parent GUC Trust Preference. | c. These provisions are not inconsistent with any confirmation standard. This objection is an unsupportable attempt to modify DCL Plan Settlement terms. (Memorandum at ¶¶ 142) | c. This objection is unresolved. |
| | d. <u>Section 4.7(d).</u> This section should provide that any successor Indenture Trustee appointed for any reason will have the ability to appoint its designee to the Litigation Trust Advisory Board. | d. Section 4.7(d) of the LTA has been modified to state that "Any successor Indenture Trustee to Wilmington Trust and/or Deutsche Bank shall have the right to appoint a member of the Litigation Trust Advisory Board to replace the designee of Wilmington Trust and/or Deutsche Bank, as applicable." | d. This objection is resolved. |
| | e. <u>Section 5.3.</u> The LTA should be amended to (i) disclose the identity of the Valuation Expert, (ii) provide that the valuation submitted by the Valuation Expert will be made available to all Litigation Trust | e. Section 5.3 of the LTA has been modified to provide, generally, that the valuation is not binding on the Litigation Trust Beneficiaries, the Litigation Trust or the Litigation Trustee for any | e. This objection is resolved. |

3

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | Beneficiaries and that such beneficiaries will be afforded the opportunity to challenge the valuation and (iii) provide that failure to challenge the valuation will not prejudice the Litigation Trust or the Litigation Trust Beneficiaries in any way.<br><br>f. Section 11.3. The LTA should be governed by the law of the state of New York.<br><br>7. Prior Objections. Aurelius continues to argue that (i) the DCL Plan Settlement does not satisfy the lowest rung of reasonableness and was neither negotiated nor proposed in good faith and (ii) the DCL Plan unfairly discriminates against holders of Senior Notes Claims in violation of Sections 510 and 1129(b)(1) of the Bankruptcy Code by extending the benefit of subordination to creditors not entitled to it, including the holder of the Swap Claim, and treating creditors who are not entitled to the benefit of subordination on a parity with those who are entitled to such benefits. (Obj. at ¶¶ 2-3) | purpose other than U.S. federal income tax purposes, and that it does not impair or prejudice any rights, claims, powers, duties, authority and privileges of such parties.<br><br>f. The parties have agreed that Delaware law will govern. Section 11.3 of the Litigation Trust Agreement has been modified accordingly.<br><br>7. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | f. This objection is resolved.<br><br>7. These objections were resolved in connection with the Confirmation Decision. |
| **Citadel Equity Fund and Camden Asset Management** [D.I. 11659] | 1. Classification of PHONES Notes Claims. The Tendering Noteholders' claims are not subject to the subordination provisions of the PHONES Indenture. Thus, the claims of the Tendering Noteholders and the PHONES Notes Claims of non-tendering holders are not "substantially similar," and therefore, their classification together violates section 1122(a) of the Bankruptcy Code. (Obj. at ¶¶ 16-22) | 1. The classification and treatment of the PHONES Notes Claims are appropriate under the DCL Plan. The Court has already concluded that the claims of the Tendering Noteholders should be classified with the remaining PHONES Notes Claims and treated alike. (Memorandum at ¶¶ 53-61) | 1. This objection is unresolved. |
| **Wilmington Trust Company ("WTC")** [D.I. 11666][4] | 1. Cancellation of PHONES Notes Indenture. Section 5.8.2 should clarify that (i) an Indenture Trustee may appeal any order of the Bankruptcy Court or continue any pending appeal, (ii) an Indenture Trustee can appoint a successor member of the Litigation Trust Advisory Board to replace its previous designee if such designee ceases to be a member of such board, and (iii) the section does not affect any contractual right or obligation the Indenture Trustee has with any person or entity other than the | 1. Language has been added to the DCL Plan providing that the Indentures shall continue in effect solely to the extent necessary to allow "(vii) any Indenture Trustee to pursue or continue to pursue any appeal of an order of the Bankruptcy Court, commenced by such Indenture Trustee on or before the Effective Date, (viii) Wilmington Trust or Deutsche Bank (or their respective successors under the applicable Indentures) to serve as members of the Litigation | 1. This objection is resolved. |

---

[4] TM Retirees join this objection solely with respect to the issues identified in ¶¶ 32-46 of the objection [D.I. 11720].

4

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | Debtors and Released Parties. (Obj. at ¶¶ 2, 7-15). WTC also joins Aurelius's Objection regarding Section 5.8.2. | Trust Advisory Board or to replace a designee to the Litigation Trust Advisory Board appointed by such member solely in accordance with the terms of this Plan and the Litigation Trust Agreement, and (ix) the continuation of any contractual right or obligation that any Indenture Trustee has with any Person other than the Debtors, the Reorganized Debtors or a Released Party;" (Memorandum at ¶ 110); (DCL Plan at § - 5.8.2). | |
| | 2. <u>Reserves/ Catch-up</u>. The DCL Plan should establish and mandate the use of reserves for recoveries of Class 1J Claims if either or both of the PHONES' Notes Appeals is successful. (Obj. at ¶¶ 2, 16-18). Reserves should be established for (i) Article III Distributions, excluding proceeds of Litigation Trust Assets, and (ii) proceeds of Litigation Trust Assets. At a minimum, the DCL Plan and Litigation Trust Agreement should be amended to include a catch-up provision that would allow holders of Class 1J Litigation Trust Interests to receive payments from Net Litigation Trust Proceeds that would provide the holders of Class 1J Litigation Trust Interests with the recovery that they would have received absent contractual subordination of the PHONES. | 2. The DCL Plan need not provide for the establishment of reserves. Establishing reserves would result in the withholding of hundreds of millions of dollars from creditors. Additionally, WTC actually seeks a stay pending appeal without meeting the requirements for such a stay. (Memorandum at ¶¶ 65-77) | 2. This objection is unresolved. |
| | 3. <u>WTC Charging Lien</u>. Section 7.7.2 of the DCL Plan should be amended to make clear that WTC's charging lien is preserved in all respects and applies to distributions payable to Holders of Class 1J Litigation Trust Interests. (Obj. at ¶¶ 2, 19-21). WTC asserts that Section 7.7.2 does not adequately preserve the charging lien due to a scrivener's error. | 3. A comma has been added to Section 7.7.2 of the DCL Plan to correct the asserted scrivener's error. (Memorandum at ¶ 109); (DCL Plan at § 7.7.2) | 3. This objection is resolved. |
| | 4. <u>WTC Fees/Expenses</u>. WTC should be reimbursed for fees and expenses incurred in connection with making distributions to PHONES Holders pursuant to § 7.7.2 of the DCL Plan and the LTA. (Obj. at ¶¶ 2, 22). WTC should be afforded standard market compensation for assisting the DCL Plan Proponents to substantially consummate their Plan without relying on the charging lien. | 4. The following language has been added to Section 3.6 of the LTA: "(c) The Litigation Trustee may retain a distribution agent for the effective administration and distribution of amounts payable to the Litigation Trust Beneficiaries and all costs and expenses of such distribution agent shall be paid from the Expense Fund. The Litigation Trustee shall also pay from the Expense Fund all reasonable and documented fees | 4. This objection is resolved. |

5

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | and expenses of the Indenture Trustees incurred in connection with making distributions to Holders of Class 1E Litigation Trust Interests or Class 1J Litigation Trust Interests pursuant to section 6.2 of this Litigation Trust Agreement." | | |
| | 5. Claim Objection Deadline. The DCL Plan provides that objections to claims, including WTC's expense claim, can be made for up to 210 days after the Effective Date. Such delay in the Claims allowance process is unreasonable and unnecessary. WTC requests that the Debtors establish near-term procedures for resolving disputes over WTC's asserted claim. (Obj. at ¶¶ 2, 23-26). | 5. The 210 day period is similar to claims objection periods approved in numerous other large chapter 11 cases. WTC's claim particularly necessitates adequate time for the Debtors to review. (Memorandum at ¶¶ 62-64) Despite the DCL Plan Proponents' position regarding this objection, they are attempting to come to a consensual resolution with WTC on this matter. | 5. This objection is unresolved. |
| | 6. Trust Loan Agreement. The DCL Plan Proponents should be required to disclose the substantive terms of the Trust Loan Agreement (such as the interest rate, covenants, events of default and conditions to drawing). (Obj. at ¶ 27) | 6. The terms of the Trust Loan Agreement have been disclosed in numerous term sheet filings. The Trust Loan Agreement is an integral part of the DCL Plan Settlement, which has already been approved by the Court. (Memorandum at ¶¶ 78-81) | 6. This objection is unresolved. |
| | 7. Requested Litigation Trust Agreement and Related Changes: The terms of the DCL Plan and Litigation Trust Agreement should be modified, as follows: | 7. *See below for the response to each proposed modification:* | 7. *See below for the status of each:* |
| | a. WTC joins in Aurelius's objection to Section 3.4(c) of the LTA. (Obj. at ¶ 29) | a. *See responses to objections of Aurelius.* | a. *See responses to objections of Aurelius.* |
| | b. The "Expense Fund" established by the Litigation Trustee should not be subject to a cap. (Obj. at ¶¶ 30-31) | b. This provision is not inconsistent with any confirmation standard. This objection is an unsupportable attempt to modify DCL Plan Settlement terms. (Memorandum at ¶ 142) | b. This objection is unresolved. |
| | c. Section 13.3.9 of the DCL Plan should be amended to require the Reorganized Debtors (i) to provide the Litigation Trustee (or his professionals) with reasonable access to witnesses under the control of the Reorganized Debtors and (ii) cause any such witnesses to appear at a deposition or trial without the need for a subpoena. (Obj. at ¶ 32) | c. The LT Confidentiality Agreement appropriately balances the interests of all concerned. Section II.C. of the LT Confidentiality Agreement already provides reasonable access to witnesses. (Memorandum at ¶¶ 129-139) | c. This objection is unresolved. |

6

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | d. The DCL Plan and LTA should be amended to ensure that the Litigation Trustee and its professionals have access to all privileged information and work product of the Debtors, Reorganized Debtors, the UCC and their respective professionals relating, directly or indirectly, to the Preserved Causes of Action. (Obj. at ¶¶ 33-40). | d. The following language has been added to the DCL Plan: "In connection with its termination, the Creditors' Committee shall provide the Litigation Trustee with reasonable access to documents relating to the Litigation Trust Assets within the possession, custody or control of the Creditors' Committee pursuant to the terms of a separate agreement between the Creditors' Committee and the Litigation Trustee." (Memorandum at ¶ 136 n58); (DCL Plan at § 15.2) | d. This objection is resolved. |
| | e. Compensation and reimbursement provided for Members of the Litigation Trust Advisory Board in Section 4.8 of the LTA is below market and the members should be afforded reimbursement for their own counsel's fees and expenses (provided that they are reasonable). (Obj. at ¶¶ 41-44) WTC requests that the LTA adopt the compensation and reimbursement structure provided in the Lyondell Litigation Trust Agreement to adequately compensate the members of the Litigation Trust Advisory Board. | e. This is not a confirmation requirement. Moreover, WTC's only "market" evidence is Lyondell, which involved a globally consensual plan. Litigation Trust advisory board members received no compensation in numerous other cases as cited in the brief. $25,000 annually is adequate compensation. (Memorandum at ¶¶ 121-128) | e. This objection is unresolved. |
| | f. The terms of exculpation provided in Section 4.9 to members of the Litigation Trust Advisory Board should be amended and replaced to provide increased protection. The liability of the members of the Litigation Trust Advisory Board should be limited to instances of gross negligence or willful misconduct. Section 4.9 of the LTA also should be amended to provide that members of the Litigation Trust Advisory Board should not have to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties under the Litigation LTA or in the exercise of any of their rights and powers. Moreover, no member of the Litigation Trust Advisory Board should be responsible for any act or omission by the Litigation Trustee, unless such Litigation Trust Advisory Board member acts with gross negligence or willful | f. Section 4.9 of the LTA has been replaced with a section titled "No Further Liability" which, generally, limits liability to instances of gross negligence or willful misconduct, provides that members of the Litigation Trust Advisory Board shall not have to expend or risk their own funds or incur personal liability in performance of their duties and provides that they can rely on writings reasonably believed to be genuine. | f. This objection is resolved. |

7

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | misconduct in relying on the Litigation Trustee. (Obj. at ¶¶ 45-46) | | |
| | g. The indemnification provisions found in Section 7.1 of the LTA should be amended and replaced to provide more fulsome indemnification rights, substantially similar to those provided for in the Lyondell Litigation Trust Agreement. The LTA inappropriately requires that a member of the Litigation Trust Advisory Board needs to execute a written undertaking before the Litigation Trust will repay a Litigation Trust Indemnified party for costs and expenses related to indemnification. (Obj. at ¶ 46) | g. Section 7.1 of the LTA has been replaced with a more complete indemnification provision that, generally, provides indemnification except in instances of gross negligence or willful misconduct. The provision also provides defense advances, which are repayable in certain circumstances. | g. This objection is resolved. |
| | h. Section 3.2 of the LTA should be amended to require that the Litigation Trustee is authorized to purchase fiduciary liability insurance as set forth in DCL Plan § 13.3.7. (Obj. at ¶ 47) | h. Section 3.2 of the LTA has been modified to include that the Litigation Trustee is authorized to purchase a fiduciary liability insurance policy and/or a directors and officers policy. | h. This objection is resolved. |
| | i. Section 11.3 of the LTA should be amended to provide that New York is governing law. Id. | i. The parties have agreed that Delaware law will govern. Section 11.3 of the LTA has been modified accordingly. | i. This objection is resolved. |
| | j. A new Section 11.14 should be added to the LTA and provide for a standard "No Waiver" provision. Id. | j. Section 11.14 has been added to the LTA to include a "no waiver" provision. | j. This objection is resolved. |
| | k. The additional changes set forth in Annex B to WTC's objection should be made to sections 1.1, 1.4, 3.6, 3.7(h), 3.10(b), 4.5, 4.7, and 11.13 of the LTA. Id. | k. In summary, the DCL Plan Proponents have generally accepted all requested changes to these sections except for the addition of subsection headers that are inconsistent with the formatting of the LTA or comments requesting items that are already contained elsewhere in the LTA. | k. This objection is resolved. |
| | l. WTC's representative should be amended to be Julie Becker and not Steven Cimalore in Exhibit B. (Obj. at ¶ 48) | l. Exhibit B of the LTA has been modified to name Julie Becker as WTC's representative. | l. This objection is resolved. |

8

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | m. William Niese's decision not to serve on the Litigation Trust Advisory Board should be noted in Exhibit B. (Obj. at ¶ 48) | m. No changes have been made to Exhibit B of the LTA regarding this objection. | m. The DCL Plan Proponents anticipate that this objection will be resolved. |
| | 8. <u>Prior Objections</u>. WTC incorporates by reference (i) its previous objections, asserted by itself individually and with Aurelius, Law Debenture and Deutsche Bank and (ii) its pleadings and arguments concerning the subject matter addressed in the PHONES Notes Appeals. (Obj. at ¶ 1 n.1) | 8. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 8. These objections were resolved in connection with the Confirmation Decision. |
| **Deutsche Bank Trust Company Americas** [D.I. 11667][5] | 1. <u>Distribution Mechanics.</u> The mechanics for plan distributions to the Senior Notes should be modified to require that MSCS withdraws its Senior Notes from DTC prior to any distribution. (Obj. at ¶¶ 5, 7) | 1. The following language has been added to the DCL Plan: "The Debtors, the Creditors' Committee, the applicable Indenture Trustee and MSCS shall work in good faith to agree upon an appropriate procedure to insure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to this Section 3.2.5(c); <u>provided</u>, <u>however</u>, if such parties are unable to agree upon an appropriate procedure, upon notice to the applicable Indenture Trustee and MSCS and an opportunity for such parties to be heard, the Debtors and the Creditors' Committee may seek an order in aid of confirmation of this Plan resolving any disputes and implementing an appropriate procedure." (Memorandum at ¶¶ 113-114); (DCL Plan at § 3.2.5) | 1. This objection is resolved. |
| | 2. <u>Classification of DBTCA Expense Claim.</u> The DBTCA Expense Claims should be classified as Other Parent Claims (Class 1F) pursuant to § 1122 of the Bankruptcy Code, rather than Senior Noteholder Claims (Class 1E) because it is a contractual obligation owed under the DBTCA Indenture separate and apart from the principal and interest owed to the Senior Noteholders. (Obj. at ¶¶ | 2. The DCL Plan properly classifies the Indenture Trustees' Expense Claims. The Indenture Trustees' fee claims should be classified together with the underlying Senior Noteholder Claims because both sets of claims arise under the Senior Indentures, the claims are asserted against the same entity, the claims have the same priority and the fee claims were | 2. This objection is unresolved. |

---

[5] TM Retirees join this objection solely with respect to the issues identified in ¶¶ 22-27 of the objection [D.I. 11720].

9

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | 5, 8-21) | asserted in the same proofs of claim that were filed in respect of the other Senior Noteholder Claims for principal and interest due on the Senior Notes. (Memorandum at ¶¶ 48-52) | |
| | 3. Requested Litigation Trust Agreement Changes: The terms of the Litigation Trust Agreement should be modified, as follows: | 3. *See below for the response to each proposed modification:* | 3. *See below for the status of each:* |
| | a. Section 4.8(b) of the LTA should be modified to provide for payment of counsel fees, costs, and expenses of the individual members of the Litigation Trust Advisory Board. (Obj. at ¶ 24) | a. This is not a confirmation requirement. Moreover, the Litigation Trustee can retain counsel, which is paid out of Litigation Trust Assets. There is no legal basis for this objection. (Memorandum at ¶¶ 121-126) | a. This objection is unresolved. |
| | b. Section 4.9 of the LTA allows members of the Litigation Trust Advisory Board to consult with counsel, but is a "catch-22" without a fee reimbursement provision in section 4.8(b) of the agreement. (Obj. at ¶ 25) | b. This is not a "catch-22" because the members are not required to consult with counsel. They also have access to the Litigation Trustee's counsel. (Memorandum at ¶ 121 n51) | b. This objection is unresolved. |
| | c. The exculpation provision of the LTA falls outside the customary structure for litigation trust advisory boards. The language used in the Lyondell Litigation Trust Agreement should be used instead. (Obj. at ¶ 26) | c. Section 4.9 of the LTA, has been replaced with a section titled "No Further Liability" which, generally, limits liability to instances of gross negligence or willful misconduct, provides that members of the Litigation Trust Advisory Board shall not have to expend or risk their own funds or incur personal liability in performance of their duties and provides that they can rely on writings reasonably believed to be genuine. | c. This objection is resolved. |
| | d. The indemnity provision of the LTA falls outside the customary structure. The language used in the Lyondell Litigation Trust Agreement is more typical for litigation trust advisory boards. (Obj. at ¶ 27) | d. Section 7.1 of the LTA has been replaced with a more detailed indemnification provision that, generally, provides indemnification except in instances of gross negligence or willful misconduct. The provision also provides defense advances, which are repayable in certain circumstances. | d. This objection is resolved. |
| | e. The LTA should incorporate a limitation on liability similar to that contained in the Lyondell Litigation | e. *See response 3.c. for a discussion of Section 4.9.* | e. This objection is resolved. |

10

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | Trust Agreement. (Obj. at ¶ 27)<br><br>f. Funding the LTA through a loan as opposed to an outright grant is inappropriate and inconsistent with applicable Third Circuit precedent. To the extent a loan is acceptable, the DCL Plan should disclose the substantive terms of that loan (such as the interest rate, covenants, events of default and conditions to drawing). (Obj. at ¶¶ 28-30) | f. The salient terms of the LTA are key aspects of the DCL Plan Settlement, which was already approved, and the terms of which have long been disclosed. The argument that the Trust Loan should be converted to a grant was raised in connection with the prior confirmation hearing and not upheld by the Court in the Confirmation Decision. (Memorandum at ¶¶ 78-80) | f. This objection is unresolved. |
| | 4. <u>Prior Objections</u>. DBTCA reasserts its prior objections (i) to the Second Amended Plan, including its objections to approval of settlement of LBO-Related Causes of Action, and (ii) that the DCL Plan unfairly discriminates against Senior Noteholder Claims in violation of §§ 510 and 1129(b)(1) by extending the benefit of subordination to creditors who are not contractually entitled to receive it. (Obj. at ¶¶ 2-3) | 4. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 4. These objections were resolved in connection with the Confirmation Decision. |
| **Law Debenture Trust Company of New York** [D.I. 11668] | 1. <u>Classification of the Law Debenture Expense Claim</u>. Law Debenture's expense claim is not similar in legal nature, character or effect as the other claims in the Senior Noteholder Class. Law Debenture's expense claim is improperly classified as a Senior Noteholder Claim in violation of section 1122(a) of the Bankruptcy Code and instead should be classified as an Other Parent Claim in Class 1F. (Obj. at ¶¶ 2, 12-21, 24) | 1. The DCL Plan properly classifies the Indenture Trustees' Expense Claims. The Indenture Trustees' fee claims should be classified together with the underlying Senior Noteholder Claims because both sets of claims arise under the Senior Indentures, the claims are asserted against the same entity, the claims have the same priority and the fee claims were asserted in the same proofs of claim that were filed in respect of the other Senior Noteholder Claims for principal and interest due on the Senior Notes. (Memorandum at ¶¶ 48-52) | 1. This objection is unresolved. |
| | 2. <u>Classification of the Swap Claim</u>. The Swap Claim is improperly classified as an Other Parent Claim, in violation of section 1122(a) of the Bankruptcy Code, rather than as a Senior Loan Claim. Law Debenture asserts that recent findings of fact by the Court in the Allocation Disputes decision render the Court's initial ruling on this point in the Confirmation Opinion no longer applicable. (Obj. at ¶¶ 3, 22-25). If the Court confirms its initial ruling with respect to the Swap Claim, the same reasoning should apply to Law Debenture's expense | 2. The Swap Claim is properly classified. The Court considered this argument and rejected it in the Confirmation Decision. The Allocation Disputes decision did not render this ruling inapplicable. (Memorandum at ¶¶ 41-47) | 2. This objection is unresolved. |

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | claim, and the Law Debenture expense claim should be similarly classified as an Other Parent Claim. | | |
| | 3. Cancellation of the Senior Notes Indentures. The DCL Plan improperly seeks to cancel the Senior Notes Indentures on the Effective Date without preserving certain rights, agreements and remedies of the Senior Notes Indenture Trustees against non-debtor third parties, including, without limitation, the Senior Noteholders. (Obj. at ¶¶ 4, 26-29) | 3. Language has been added to DCL Plan to provide, generally, that the Indentures shall continue in effect solely to the extent necessary to allow "(ix) the continuation of any contractual right or obligation that any Indenture Trustee has with any Person other than the Debtors, the Reorganized Debtors or a Released Party;" (Memorandum at ¶ 110); (DCL Plan at § - 5.8.2) | 3. The DCL Plan Proponents anticipate that this objection will be resolved. |
| | 4. Prior Objections. Law Debenture continues to argue that (i) the DCL Plan's proposed settlement of the LBO-Related Causes of Action does not satisfy Bankruptcy Rule 9019 because it seeks to settle the LBO-Related Causes of Action against the Senior Lenders for a less than reasonable amount and (ii) the distribution of the Settlement and Litigation Trust proceeds under the DCL Plan is unfairly discriminatory because it ignores the fact that the Other Parent Claims are not entitled to the economic benefits that result from the subordination of the PHONES Notes and the EGI-TRB Note. (Obj. at ¶¶ 1, 7-11) | 4. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 4. These objections were resolved in connection with the Confirmation Decision. |
| | 5. Joinder. Law Debenture joins in the objection of Aurelius Capital Management, LP. (Obj. at ¶ 6) | 5. *See responses to objections of Aurelius.* | 5. *See responses to objections of Aurelius.* |
| **EGI-TRB LLC** [D.I. 11658] | 1. Allocation Disputes Ruling. The DCL Plan incorporates the Allocation Disputes Opinion and treats such Opinion as a final order. Thus, the DCL Plan improperly subordinates EGI-TRB's Claim and, therefore, (i) violates 1129(b)(1) by unfairly discriminating against EGI-TRB, (ii) violates 1129(b)(2) by permitting the PHONES Notes to recover ahead of the EGI-TRB Notes, and (iii) violates 510(e) and 1129(a)(1) by failing to enforce the EGI-TRB subordination agreement according to applicable nonbankruptcy law. (Obj. pp. 3-5). EGI-TRB incorporates by reference all of the arguments made in connection with the Allocation Disputes. | 1. The DCL Plan properly subordinates EGI-TRB's claim. The DCL Plan properly implements the Allocation Disputes Decision. (Memorandum at ¶ 67) | 1. This objection is unresolved. |

12

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | 2. <u>Reserve</u>. The DCL Plan must provide for sufficient reserves to pay EGI-TRB claims on an unsubordinated basis in the event the Court's Allocation Disputes rulings are overturned on appeal and the EGI-TRB's claims become unsubordinated claims. Failure to provide a reserve for EGI-TRB's claims results in differing treatment of disputed unsecured claims and demonstrates that the DCL Plan is not fair and equitable and violates § 1129(b). (Obj. at pp. 5-7). Without a reserve, the DCL Plan deprives EGI-TRB of its appellate rights. Further, there is no justification for treating a non-final order regarding subordination differently from a non-final order regarding claim allowance. | 2. The DCL Plan need not provide for the establishment of reserves. Establishing reserves would result in the withholding of hundreds of millions of dollars from creditors. Additionally, EGI-TRB actually seeks a stay pending appeal without meeting the requirements for such a stay. (Memorandum at ¶¶ 65-77) | 2. This objection is unresolved. |
| | 3. <u>Prior Objections</u>: EGI-TRB incorporates the objections it filed to the Second Amended Joint Plan (D.I. 7988, 8884), including objections that the DCL Plan (i) continues to permit a litigation trust to expend estate assets pursuing meritless litigation against EGI-TRB, (ii) provides for broad indemnification of the litigation trustee, and (iii) provides no Court oversight of the professionals retained by the litigation trust or the fees incurred by those professionals. (Obj. at p. 2) | 3. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 3. These objections were resolved in connection with the Confirmation Decision. |
| **Certain Former Directors and Officers** [D.I. 11657] | 1. <u>Bar Order</u>. Certain Directors and Officers continue to object to the concept of a Bar Order, including the Bar Order's impermissible releases and injunction. Certain Directors and Officers reiterate their objections to the Bar Order as previously set forth in the objection to the Second Amended Plan (D.I. 7981), the Letter Brief (D.I. 8888), and at oral argument. (Obj. at p. 2) | 1. For the reasons already articulated in this Court's prior rulings, this Court should overrule these objections. Additionally, the Bar Order has been revised consistent with the Confirmation Decision. | 1. These objections were resolved in connection with the Confirmation Decision. |
| | 2. <u>Other Prior Objections/Joinder</u>. Certain Directors and Officers (i) adopt and incorporate their additional objections previously made in connection with the Second Amended Plan and (ii) join in objections raised by other parties in interest to the extent such objections are not inconsistent with Certain Directors and Officers' interests. (Obj. at pp. 3-4) | 2. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 2. These objections were resolved in connection with the Confirmation Decision. |
| **Former Employees (Allen, Hertz, Slason, and** | 1. <u>D&O Indemnification/Reimbursement</u>. The Former Employees requests that Section 11.6.1 be amended to provide that the Debtors' prepetition indemnification and | 1. Prepetition indemnification and reimbursement obligations should not survive as to individuals who were not directors, officers or employees of the | 1. This objection is unresolved. |

13

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| **Stancampiano)** [D.I. 11661] | reimbursement obligations survive as to all former directors, officers, or employees of the Debtors who are the subject of "Related Person Preference Actions," regardless of their employment status as of the Petition Date. Limiting survival of indemnification and reimbursement obligations to only those employed on or after the Petition Date unfairly discriminates against those that departed prior to the Petition Date but that are subject to the same Adversary Proceedings. | Debtors on or after the Petition Date. Giving their indemnification claims administrative status would be inappropriate because they did not render services after the commencement of the Chapter 11 Cases. (Memorandum at ¶¶ 143-146) | |
| **Missouri Department of Revenue ("MDOR")** [D.I. 11656] | 1. Treatment of Tax Claims. The definition of Allowed Claim is unclear and MDOR cannot determine whether its Priority Tax Claim "is an Allowed Claim and thus trigger[s] installment payments until the deadline to object to claims expires." The DCL Plan lacks specificity regarding the timing and frequency of the payment of Priority Tax Claims. (Obj. at ¶ 4) | 1. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash." (Memorandum at ¶¶ 117-120) | 1. The DCL Plan Proponents anticipate that this objection will be resolved. |
| | 2. Default Provision. The DCL Plan does not provide priority tax creditors with an adequate remedy in the event the Debtors default in making tax payments. (Obj. at ¶ 7) | 2. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court." (Memorandum at ¶¶ 117-120) | 2. The DCL Plan Proponents anticipate that this objection will be resolved. |
| **Michigan Department of Treasury ("MDOT")** [D.I. 11652] | 1. Releases/Injunctions. The non-debtor discharge, release, injunction and waiver provisions of the DCL Plan, including Section 11.5, may improperly enjoin the collection of tax debts from non-debtors. (Obj. at ¶ 6) | 1. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any implementing Plan document, nothing shall affect the rights of the State of Michigan, Department of Treasury to take action against non-debtor third parties who may be responsible for payment of prepetition and/or postpetition tax liabilities of any of the Debtors, and such rights are expressly reserved." | 1. The DCL Plan Proponents anticipate that this objection will be resolved. |

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | | (Memorandum at ¶¶ 117-120) | |
| | 2. <u>Default Provision.</u> The DCL Plan does not provide priority tax creditors with an adequate remedy in the event the Debtors default in making tax payments. (Obj. at ¶ 7) | 2. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court." (Memorandum at ¶¶ 117-120) | 2. The DCL Plan Proponents anticipate that this objection will be resolved. |
| **Internal Revenue Service ("IRS")** [D.I. 11653] | 1. <u>Treatment of Tax Claims.</u> Section 2.3 of the DCL Plan fails to specify the frequency or amount of the installment payments proposed to be made on account of Allowed Priority Tax Claims. (Obj. at p. 1) | 1. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash." (Memorandum at ¶¶ 117-120) | 1. The DCL Plan Proponents anticipate that this objection will be resolved. |
| | 2. <u>Releases/Injunctions.</u> The DCL Plan's release and injunction provisions improperly bar (i) the IRS from asserting valid administrative expense claims and (ii) the collection of tax debts from non-debtors. (Obj. at pp. 1-2) | 2. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "Notwithstanding any provision to the contrary, nothing in the DCL Plan or in this Confirmation Order shall affect the rights of the United States, including the Internal Revenue Service (1) from seeking, pursuant to applicable nonbankruptcy law, to assess or collect from any non-debtor person or entity that may be liable directly or indirectly for the Debtors' taxes, including but not limited to liability under 26 U.S.C. §§ 4975 & 6672, or (2) from assessing or collecting from the Debtor any taxes that the Bankruptcy Code renders nondischargeable." (Memorandum at ¶¶ 117-120) | 2. The DCL Plan Proponents anticipate that this objection will be resolved. |
| | 3. <u>Jurisdiction.</u> The IRS objects to §§ 5.4.2(f), 7.8, and 13.2.2 of the DCL Plan to the extent they purport to | 3. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation | 3. The DCL Plan Proponents |

15

| **Objecting Party** | **Objections** | **Response / Proposed Resolution** | **Status** |
|---|---|---|---|
| | establish the tax consequences of the plan or the tax liability of non-debtors. (Obj. at p. 2) | Order: "Nothing in the Plan or this Order is intended to, or shall, confer jurisdiction on the Bankruptcy Court to determine the tax consequences of the Plan or to determine the tax liability of a non-debtor beyond the jurisdiction permitted under applicable law." (Memorandum at ¶¶ 117-120) | anticipate that this objection will be resolved. |
| **Malcolm Berko** [D.I. 11600] | 1. <u>Notice of Confirmation Hearing</u>. Mr. Berko expressed that it is difficult to understand the notice of the hearing to consider confirmation of the Fourth Amended Plan. | 1. The DCL Plan Proponents do not believe that this is a legitimate DCL Plan objection but include it herein out of an abundance of caution because it was styled as a response to the DCL Plan on the Court's docket. | |