# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF CONFIRMATION OF FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384);WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## TABLE OF CONTENTS

I.  JURISDICTIONAL AND RELATED CONSIDERATIONS ........................................... 1

    A.  Jurisdiction And Venue .......................................................................... 1

    B.  Judicial Notice. ....................................................................................... 2

    C.  Burden Of Proof. .................................................................................... 2

II.  BACKGROUND AND PROCEDURAL HISTORY ........................................ 3

III.  RESOLICITATION AND NOTICE RESPECTING THE DCL PLAN ...................... 11

    A.  Adequacy Of Disclosure Documents. ................................................. 12

    B.  Resolicitation Of The DCL Plan. ......................................................... 12

    C.  Publication Notice. ................................................................................ 14

    D.  Adequacy Of Notice. ............................................................................ 14

    E.  Voting Declaration. .............................................................................. 14

    F.  Good Faith Solicitation. ....................................................................... 16

IV.  THE DCL PLAN COMPLIES WITH THE APPLICABLE REQUIREMENTS
OF THE BANKRUPTCY CODE ...................................................................... 17

    A.  The Modifications Reflected In The DCL Plan Resolve The Issues Raised
By The Court In The Amended Confirmation Opinion And Are Consistent
With The Allocation Disputes Decision. ............................................. 18

        1.  Modifications Addressing Issues Identified In The Amended
Confirmation Opinion. .................................................................. 18

            a.  Bar Order Finding. ................................................. 18

            b.  Section 1129(a)(10) Finding. ................................. 19

            c.  Release Findings. ................................................... 21

            d.  Exculpation Finding. ............................................. 23

        2.  Modifications Addressing The Allocation Disputes Decision ................ 24

        3.  Other Modifications Reflected In The DCL Plan ..................................... 25

    B.  The Other Provisions Of The DCL Plan Remain Consistent With The
Amended Confirmation Opinion. ........................................................ 26

        1.  Valuation Update. ......................................................................... 26

        2.  Reasonableness Of The DCL Plan Settlement ........................................ 28

        3.  Reasonableness Of The Other Settlements Implemented In The
DCL Plan ..................................................................................... 29

        4.  Approval Of Other Aspects Of The DCL Plan That Did Not
Require Revision. ......................................................................... 31

    C.  The DCL Plan Satisfies All Other Requirements Of Section 1129 Of The
Bankruptcy Code. ................................................................................ 32

        1.  Section 1129(a)(1) — Compliance With Applicable Provisions Of
The Bankruptcy Code. .................................................................. 32

            a.  Sections 1122 And 1123(a)(1)-(4) — Classification And
Treatment Of Claims And Interests. ..................... 32

b.     Section 1123(a)(5) — Adequate Means For Implementation Of The DCL Plan.    39

c.     Section 1123(a)(6) — Prohibition Against The Issuance Of Nonvoting Equity Securities And Appropriate Distribution Of Voting Power Among Classes Of Securities.    40

d.     Section 1123(a)(7) — Selection Of Directors And Officers In A Manner Consistent With The Interests Of Creditors And Equity Security Holders And Public Policy.    41

e.     Section 1123(b)(1) — Impairment Of Claims And Interests.    41

f.     Sections 1123(b)(2) And 1123(d) — Assumption, Assumption And Assignment, Or Rejection Of Executory Contracts And Unexpired Leases And Cure of Defaults.    41

g.     Section 1123(b)(3) — Retention, Enforcement And Settlement Of Claims Held By The Debtors.    43

h.     Section 1123(b)(6) — Other Provisions Not Inconsistent With Applicable Provisions Of The Bankruptcy Code.    43

i.     Bankruptcy Rule 3016.    44

2.     Section 1129(a)(2) — Compliance With Applicable Provisions Of The Bankruptcy Code. ................................................................ 44

3.     Section 1129(a)(3) — Proposal Of The DCL Plan Is In Good Faith........ 45

4.     Section 1129(a)(4) — Court Approval Of Certain Payments As Reasonable. ......................................................................... 46

5.     Section 1129(a)(5) — Disclosure Of Identity Of The Proposed Management, Compensation Of Insiders And Consistency Of Management Proposals With The Interests Of Creditors And Public Policy. .......................................................................... 47

6.     Section 1129(a)(6) — Approval Of Rate Changes. .................................. 47

7.     Section 1129(a)(7) — Best Interests Of Holders Of Claims And Interests. ................................................................................ 48

8.     Section 1129(a)(8) — Acceptance Of The DCL Plan. ............................. 49

9.     Section 1129(a)(9) — Treatment Of Claims Entitled To Priority Pursuant To Section 507(a) Of The Bankruptcy Code. ........................... 50

10.     Section 1129(a)(10) — Acceptance By At Least One Impaired, Non-Insider Class............................................................................ 51

11.     Section 1129(a)(11) — Feasibility Of The DCL Plan. ........................... 52

12.     Section 1129(a)(12) — Payment Of Bankruptcy Fees. ........................... 53

13.     Section 1129(a)(13) — Retiree Benefits................................................... 53

14.     Sections 1129(a)(14)-(a)(16) — Miscellaneous Provisions. ................... 53

15.     Section 1129(b) — Rejecting Voting Classes. ........................................ 53

16.     Section 1129(d) — Purpose Of DCL Plan............................................... 54

17.     Other Provisions Of The DCL Plan Are Also Consistent With The Bankruptcy Code. ..................................................................... 55

|  | a. | Exemptions From Taxation. | 55 |
|  | b. | Exemptions From Securities Laws. | 55 |
|  | c. | Termination Of ESOP. | 56 |
|  | d. | Propriety Of Various Agreements And DCL Plan-Related Documents. | 56 |

V.   RESOLUTION OF OBJECTIONS ................................................................. 57

VI.  CONCLUSION ............................................................................................. 60

APPENDIX A

Tribune Company ("Tribune") and certain of its subsidiaries (collectively, the "Debtors"

or the "Company"), the Official Committee of Unsecured Creditors (the "Creditors'

Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P.

("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPMorgan") (collectively, the "DCL

Plan Proponents") hereby submit the following proposed findings of fact and conclusions of law

in support of an order confirming the Fourth Amended Joint Plan of Reorganization for Tribune

Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured

Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase

Bank, N.A.[2] (as such has been or may be further amended, modified, or supplemented from time

to time, the "DCL Plan") pursuant to section 1129 of title 11 of the United States Code (the

"Bankruptcy Code"):[3]

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.    **JURISDICTIONAL AND RELATED CONSIDERATIONS**

    A.    **Jurisdiction And Venue.**

1.    The Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code on December 8, 2008.  An additional Debtor, Tribune CNLBC, LLC (formerly

known as Chicago National League Baseball Club, LLC) filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, there are 110 Debtors.[4]

---

[2] Docket No. 11399.

[3] Capitalized terms and phrases used but not otherwise defined herein have the meaning assigned to such terms in the DCL Plan or the Disclosure Documents, as applicable; provided, however, that any capitalized term used herein that is not defined in the DCL Plan or the Disclosure Documents, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

[4] As used herein, the term Petition Date means (i) for Tribune and for all Debtors listed on Appendix A to the DCL Plan other than Tribune CNLBC, LLC, December 8, 2008 and (ii) for Tribune CNLBC, LLC, October 12, 2009.

2.　　　The Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") in good faith.  Each Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Confirmation of a plan of reorganization with respect to the Chapter 11 Cases is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  The Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and the Court has exclusive jurisdiction to determine whether the DCL Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue was proper as of the Petition Date and continues to be proper before the Court as of the date hereof pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.　　　Judicial Notice.**

3.　　　The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or his duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, all findings of fact and conclusions of law previously made, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the Chapter 11 Cases.

**C.　　　Burden Of Proof.**

4.　　　The DCL Plan Proponents, as proponents of the DCL Plan, have the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code with respect to confirmation of the DCL Plan by a preponderance of the evidence.  The DCL Plan Proponents have met that burden as further found and determined herein.

2

## II.    BACKGROUND AND PROCEDURAL HISTORY

5.    On October 31, 2011, the Court issued an Opinion on Confirmation (the

"Confirmation Opinion"),[5] which, inter alia, denied confirmation of the Second Amended Joint

Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the

Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon

& Co., L.P. and JPMorgan Chase Bank, N.A. (as modified April 26, 2011) (the "Second

Amended Plan"),[6] and the competing plan of reorganization proposed jointly by certain holders

of Tribune's prepetition notes (the "Noteholder Plan").[7] The Confirmation Opinion constituted

the Court's findings of fact and conclusions of law regarding the Second Amended Plan. The

Confirmation Opinion set forth extensive background information concerning the Debtors and

their Chapter 11 Cases, including an overview of the Debtors' businesses, the Debtors'

prepetition debt structure, the 2007 Leveraged ESOP Transactions (or "LBO"), and the

procedural history of the Chapter 11 Cases prior to the issuance of the Confirmation Opinion

including with respect to the proceedings to consider confirmation of the Second Amended Plan

and the Noteholder Plan.[8] Therefore, these Findings and Conclusions will not repeat the

---

[5] Docket No. 10133.

[6] The Debtors, the Official Committee of Unsecured Creditors ("Creditors' Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPMorgan") are referred to as the "DCL Plan Proponents" herein.

[7] The Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by Aurelius Capital Management, L.P. on behalf of its Managed Entities ("Aurelius"), Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes ("DBCTA"), Law Debenture Trust Company of New York, in its Capacity as Successor Indenture Trustee for Certain Series of Senior Notes ("Law Debenture") and Wilmington Trust Company , in its Capacity as Successor Indenture Trustee for the PHONES Notes ("WTC"), as amended. Aurelius, DBCTA, Law Debenture, and WTC are referred to as the "Noteholder Plan Proponents" herein, consistent with the Confirmation Opinion, although the Noteholder Plan Proponents are no longer advancing confirmation of the Noteholder Plan.

[8] See Confirmation Opinion at 2-20. Additional background information is set forth in the General Disclosure Statement dated December 15, 2010 (Docket No. 7232) (the "General Disclosure Statement"). Additional information concerning the Second Amended Plan is also set forth in such plan and in the Specific Disclosure Statement Relating to First Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P.,

background information contained in the Confirmation Opinion and will instead focus on the effect of the Confirmation Opinion and the developments that occurred subsequent to the issuance of the Confirmation Opinion on October 31, 2011.

6.     The Second Amended Plan had two primary components.  First, the Second Amended Plan provided for (a) the settlement of certain LBO-Related Causes of Action held by the Debtors' estates against current and former Senior Lenders, the Senior Loan Agent and the Senior Loan Arrangers, and participating current and former Bridge Lenders and Bridge Loan Arrangers (the "LBO Settlement", as defined in the Confirmation Opinion) and (b) a settlement of claims for the disgorgement of prepetition payments made by Tribune in connection with the Step Two Financing from parties who elected to participate in the settlement, with a backstop feature designed to ensure that the Debtors' estates would receive $120 million of consideration in settlement of such claims (the "Step Two Disgorgement Settlement", as defined in the Confirmation Opinion and, together with the LBO Settlement, the "DCL Plan Settlement").  The Second Amended Plan also provided for the preservation of virtually all of the Estates' remaining LBO-Related Causes of Action for the benefit of Tribune's creditors, which causes of action were to be assigned under the Second Amended Plan to a Litigation Trust and a Creditors' Trust[9] formed to prosecute individual creditor's claims to the extent such creditor elected to transfer them to the Creditors' Trust.[10]  In the Confirmation Opinion, the Court approved the

---

Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Docket No. 7135) (the "Specific Disclosure Statement").

[9] The DCL Plan eliminates the Creditors' Trust provided under the Second Amended Plan.

[10] Subsequent to the filing of the LBO Avoidance Adversaries (as defined in the General Disclosure Statement), in June of 2011, (a) the indenture trustees on behalf of Holders of Senior Notes and PHONES Notes and (b) certain retirees of The Times Mirror Company, Tribune, and various other affiliates or subsidiaries of Tribune filed approximately 51 separate lawsuits in various jurisdictions asserting state law constructive fraudulent conveyance claims against certain former shareholder of Tribune (collectively, the "Shareholder Actions").  A consolidated multidistrict action with respect to approximately 53 such Shareholder Actions (including certain lawsuits commenced after June of 2011), and the LBO Avoidance Adversaries is currently pending before the United States

4

DCL Plan Settlement, finding that the DCL Plan Settlement was "achieved as a result of arms-length, good faith negotiations" and was "fair, reasonable, and in the best interest of the Debtors' estates."[11]

7.     However, in its Confirmation Opinion, the Court denied confirmation of the Second Amended Plan and identified certain discrete components of the Second Amended Plan that would need to be revised in order to achieve confirmation.  Additionally, the Court found that there was insufficient evidence in the record to resolve disputes regarding (i) whether the Plan is fair and appropriately enforces the terms of the subordination provisions of the PHONES Notes Indenture with respect to distributions to Holders of Other Parent Claims,[12] and (ii) the proper Allowed amount of the PHONES Notes Claims.[13]

8.     On November 18, 2011, in response to the Confirmation Opinion, the DCL Plan Proponents filed the Third Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified on February 20, 2012 and March 16, 2012, the "Third Amended Plan").[14]  The Third Amended Plan incorporated the DCL Plan Settlement that was embodied in the Second

---

District Court for the Southern District of New York (the "MDL Proceedings").  The Shareholder Actions have been stayed by orders of the Court, except to permit (i) service of process and certain limited discovery for purposes of preserving rights that might expire as a result of relevant statutes of limitation; and (ii) the transfer and consolidation of the Shareholder Actions to the MDL Proceedings.  The district court presiding over the MDL Proceedings, in turn, stayed further action in the MDL Proceedings, subject to a case management order entered on February 23, 2012 allowing all pending motions to amend the complaints in the Shareholder Actions and directing the defendants to form an executive committee representing defendants with aligned common interests.

[11] Confirmation Opinion at 35-39, 79.

[12] See Confirmation Opinion at 111.

[13] See Confirmation Opinion at 106.

[14] See Docket No. 10273, modified at Docket Nos. 10958 and 11168.

Amended Plan and included certain modifications to the Second Amended Plan addressing the impediments to confirmation that were identified by the Court in the Confirmation Opinion.

9.      Meanwhile, the Noteholder Plan Proponents, individually and jointly, filed three motions for reconsideration of the Confirmation Opinion, as follows: (i) Joint Motion of Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas Requesting Reconsideration of the Court's Confirmation Opinion with Respect to the Subordination of the PHONES (the "Law Debenture Reconsideration Motion");[15] (ii) Motion of Aurelius Capital Management, L.P. for Reconsideration of the Court's October 31, 2011 Decision as it Pertains to the Application of the PHONES Notes Subordination (the "Aurelius Reconsideration Motion");[16] and (iii) Motion of the Noteholder Plan Proponents for Reconsideration and Clarification of the Court's October 31, 2011 Decision (the "NPP Reconsideration Motion", and together with the Law Debenture Reconsideration Motion and the Aurelius Reconsideration Motion, the "Reconsideration Motions").[17] The Law Debenture Reconsideration Motion requested that the Court reconsider its conclusion in the Confirmation Opinion that the Second Amended Plan improperly applied the PHONES Subordination Provisions to the distribution of proceeds of causes of action that may be asserted under Chapter 5 of the Bankruptcy Code by the Litigation Trust (the "Subordination Finding").[18]

10.     On December 29, 2011, the Court issued a Memorandum on Reconsideration granting the relief requested in the Law Debenture Reconsideration Motion and the Aurelius Reconsideration Motion and  denying (subject to one clarification) the NPP Reconsideration

---

[15] Docket No. 10222.

[16] Docket No. 10226.

[17] Docket No. 10227.

[18] See Confirmation Opinion at 112-113.

6

Motion (the "Reconsideration Decision").[19]  Specifically, the Reconsideration Decision amended

the Confirmation Opinion to vacate and reverse the Subordination Finding, thereby holding that

the PHONES Subordination Provisions apply to the proceeds of, from, or relating to any and all

causes of action asserted by the Litigation Trust (the "Amended Confirmation Opinion").[20]  The

Reconsideration Decision also denied the NPP Reconsideration Motion with respect to the

Litigation Trust waterfall and Bar Order judgment reduction issues raised in that Motion, but

granted the NPP Reconsideration Motion in part by clarifying that the Court did not make any

determination regarding the amount of indebtedness of the PHONES Notes in the Confirmation

Opinion.

      11.     In the wake of the issuance of the Amended Confirmation Opinion, certain

"Allocation Disputes" arose among parties in interest.[21]  Those disputes centered primarily on

(i) which categories of plan distributions are subject to the subordination provisions of the

PHONES Notes Indenture (the "PHONES Subordination Provisions") and the subordination

agreement governing the EGI-TRB LLC Notes (the "EGI-TRB Subordination Provisions"),[22]

and (ii) which Holders of Other Parent Claims (Class 1F) are entitled to the benefit of the

PHONES Subordination Provisions and the EGI-TRB Subordination Provisions with respect to

---

[19] In re Tribune Co., 464 B.R. 208 (Bankr. D. Del. 2011).

[20] On January 10, 2012, WTC, solely in its capacity as successor Indenture Trustee pursuant to the PHONES Notes Indenture, filed a notice of appeal of the Reconsideration Decision and the Confirmation Opinion.  On that same day, WTC filed a motion seeking leave to appeal the Reconsideration Decision (the "Reconsideration Appeal Motion").  Docket No. 10582.  The DCL Plan Proponents, Law Debenture, DBTCA, and Aurelius objected to the Reconsideration Appeal Motion on January 24, 2012. Docket No. 10690, 10702, and 10703.  The Reconsideration Appeal Motion is currently pending in the United States District Court for the District of Delaware.  See Case No. 1:12-mc-00029-GMS (D. Del. 2012).

[21] The term "Allocation Disputes" is defined in paragraph 2 of the Scheduling Order, which definition is incorporated herein by reference.  The Allocation Disputes do not include the issues raised in the lawsuit titled Official Committee of Unsecured Creditors of the Tribune Company v. FitzSimons, et al. (In re Tribune Co.), Adv. Proc. No. 10-54010 (Bankr. D. Del.) (KJC).

[22] The relevant subordination provisions of the EGI-TRB LLC Notes are set forth in the Subordination Agreement, dated as of December 20, 2007, by EGI-TRB, L.L.C., a Delaware limited liability company, in favor of the Holders of Senior Obligations (as defined therein) (the "EGI-TRB Subordination Agreement").

various distributions contemplated by the Third Amended Plan.  Although the Third Amended

Plan contained a protocol for resolving the Allocation Disputes,[23] certain parties in interest

argued, and the Court agreed, that the Allocation Disputes should be resolved prior to the hearing

on confirmation of the Third Amended Plan.  Pursuant to the order entered by the Court on

January 24, 2012 (as supplemented, the "Scheduling Order"),[24] the Court established a schedule

and procedures to adjudicate the Allocation Disputes.

        12.     On April 9, 2012, the Court issued the Memorandum Regarding Allocation

Disputes[25] (the "Allocation Disputes Memorandum") and entered a related order[26] (the

"Allocation Disputes Order" and, together with the Allocation Disputes Memorandum, the

"Allocation Disputes Decision"), which adjudicated all of the Allocation Disputes other than (i)

the allocation of distributions from the Creditors' Trust, as the Creditors' Trust had been

eliminated from the Third Amended Plan, and (ii) whether the beneficiaries of the EGI-TRB

Subordination Provisions are entitled to receive post-petition interest prior to the Holders of EGI-

TRB LLC Notes Claims receiving any payment on account of their Claims, which the Court

concluded was not yet ripe for determination.[27]  The Court expressly stated that the Allocation

---

[23] See Exhibit 5.18 to the Third Amended Plan.

[24] Docket No. 10692, supplemented on March 6, 2012 at Docket No. 11096 (the "Supplemental Scheduling Order") and April 5, 2012 at Docket No. 11326 (the "Second Supplemental Scheduling Order").

[25] Docket No. 11337.

[26] Docket No. 11338.

[27] An additional Allocation Dispute involved whether and to what extent all or any portion of the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the DCL Plan Settlement is or is not subject to the PHONES Subordination Provisions (the "PHONES/Settlement Dispute"). During the Allocation Dispute hearing that occurred on March 5, 2012, counsel for WTC acknowledged that, in light of the Reconsideration Decision, WTC was no longer prosecuting the PHONES/Settlement Dispute in connection with the Allocation Dispute hearing before the Court, but is instead reserving its rights for appeal. Nevertheless, in the Allocation Disputes Decision, the Court concluded that, for the reasons set forth in the Reconsideration Decision, the consideration provided by the Senior Lenders, Bridge Lenders, and Settling Step Two Payees in respect of the DCL Plan Settlement is subject to the PHONES Subordination Provisions.

Disputes Decision is "subject to, conditioned upon, and for the purpose of obtaining

confirmation of a chapter 11 plan substantially in the form of the Third Amended Plan."[28]

13.    On April 17, 2012, the DCL Plan Proponents filed the DCL Plan.[29]  The DCL

Plan incorporates the DCL Plan Settlement and includes various modifications in response to the

Confirmation Opinion and the Allocation Disputes Decision (collectively, the "Modifications").

14.    On May 4, 2012, the DCL Plan Proponents filed with the Court the following

Exhibits to the DCL Plan: (i) Exhibit 1.1.122 (Terms of Intercompany Claims Settlement

Agreement); (ii) Exhibit 1.1.154 (Terms of New Warrant Agreement); (iii) Exhibit 5.2

(Restructuring Transactions); (iv) Exhibit 5.3.1(1) (Certificate of Incorporation of Reorganized

Tribune); (v) Exhibit 5.3.1(2) (By-Laws of Reorganized Tribune); (vi) Exhibit 5.3.1(3)

(Registration Rights Agreement); (vii) Exhibit 5.3.2(1) (Initial Officers of Reorganized Tribune);

(viii) Exhibit 5.3.2(2) (Initial Directors of Reorganized Tribune); (ix)Exhibit 5.3.3 (Initial

Directors & Officers of Reorganized Debtors Other Than Reorganized Tribune);(x) Exhibit 5.6

(Terms of New Senior Secured Term Loan); (xi) Exhibit 5.10 (Terms of Exit Facility); (xii)

Exhibit 5.13 (Terms of Trusts' Loan Agreement); (xiii) Exhibit 6.3 (Rejected Executory

Contracts and Unexpired Leases); and (xiv) Exhibit 13.1 (Litigation Trust Agreement)[30]

(collectively, as amended, modified, or supplemented from time to time, the "DCL Plan

Supplement").[31]  An affidavit of service of the DCL Plan Supplement was executed by Epiq

Bankruptcy Solutions, LLC, the Claims and Noticing Agent in the Chapter 11 Cases (the

---

[28] See Allocation Disputes Order.

[29] See Docket No. 11354, modified at Docket Nos. 11388 and 11399.

[30] Docket No. 11545.

[31] The DCL Plan Proponents previously filed the Plan Supplement and certain other Exhibits in connection with the
Second Amended Plan on January 31, 2011, March 2, 2011, and March 4, 2011.  See Docket Nos. 7701, 8231, and
8283.

"Voting Agent") on May 9, 2012 (the "DCL Plan Supplement AOS").[32]  As evidenced by the DCL Plan Supplement AOS, the Court finds that the DCL Plan Supplement was filed and served in compliance with the Bankruptcy Rules.[33]

15.    Multiple objections were filed to the DCL Plan (the "DCL Plan Objections").[34] On June 1, 2012, the DCL Plan Proponents filed (a) a memorandum of law in support of confirmation of the DCL Plan (the "DCL Memorandum"), which included the DCL Plan Proponents' responses to each of the DCL Plan Objections,[35] and (b) proposed findings of fact and conclusions of law in support of confirmation of the DCL Plan.[36]

16.    Beginning on June 7, 2012, the Court conducted a confirmation hearing with respect to the DCL Plan (the "2012 Confirmation Hearing").  Pursuant to the Second Supplemental Scheduling Order, all testimony and exhibits admitted into evidence at or in connection with the confirmation hearing on the Second Amended Plan held in March and April 2011 (the "2011 Confirmation Hearing" and, together with the 2012 Confirmation Hearing, the "Confirmation Hearings") was made available for use at the 2012 Confirmation Hearing subject to the same rulings, stipulations, conditions, and restrictions issues or adopted at or in connection with the prior hearing.  In addition, the parties were authorized to adopt and incorporate by reference any briefing submitted and oral arguments made in connection with the 2011 Confirmation Hearing and/or in connection with the various Reconsideration Motions, and all

---

[32] Docket No. 11598.

[33] See id.

[34] Docket Nos. 11652, 11653, 11656, 11657, 11658, 11659, 11661, 11664, 11666, 11667, and 11668.  A list of the objections filed to the DCL Plan is set forth on Appendix A hereto.

[35] Docket No. [●].

[36] Docket No. [●].

such materials were deemed included in the record of the 2012 Confirmation Hearing.[37]  Further,

the DCL Plan Proponents presented witness testimony by proffer and affidavit and submitted

certain additional exhibits at the 2012 Confirmation Hearing.

## III.    RESOLICITATION AND NOTICE RESPECTING THE DCL PLAN

17.    On April 17, 2012, the Court entered the Order (I) Approving Supplemental

Disclosure Document; (II) Establishing Scope, Forms, Procedures, and Deadlines for

Resolicitation and Tabulation of Votes to Accept or Reject DCL Plan From Certain Classes; (III)

Authorizing Tabulation of Prior Votes and Elections on DCL Plan Made by Holders of Claims in

Non-Resolicited Classes; (IV) Scheduling the Confirmation Hearing and Establishing Notice and

Objection Procedures in Respect Thereof; and (V) Granting Related Relief (the "Resolicitation

Order").[38]  Pursuant to the Resolicitation Order, the Court, among other things, (i) approved the

Supplemental Disclosure Document relating to the DCL Plan (the "Supplemental Disclosure

Document")[39] (ii) established procedures for the solicitation and tabulation of votes to accept or

reject the DCL Plan; and (iii) scheduled the Confirmation Hearing.  The Resolicitation Order

provided that all applicable provisions of the Court's Prior Solicitation Orders[40] shall continue in

---

[37] See Second Supplemental Scheduling Order, Docket No. 11326 at ¶¶ 12, 23.

As used herein, (i)"DCL Ex." refers to trial exhibits admitted into evidence in connection with the 2011 Confirmation Hearing, (ii) "ADH Ex." refers to exhibits admitted into evidence in connection with the hearing on the Allocation Disputes, and (iii) "Tr. [date] at [page:line]" refers to the transcript of the 2011 Confirmation Hearing.

[38] Docket No. 11419.

[39] See Docket No. 10275, modified at Docket Nos. 10959, 11106, 11169, 11355, 11389, and 11400.

[40] The Court previously authorized procedures for solicitation of votes to accept or reject the DCL Plan, and to make elections thereunder, on two occasions.  See Order (I) Approving General Disclosure Statement and Specific Disclosure Statements; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plans of Reorganization; (III) Approving Forms of Ballots, Master Ballots and Related Instructions; (IV) Approving Solicitation Package Contents and Authorizing Distribution of Solicitation and Notice Materials; (V) Fixing Voting Record Date; (VI) Establishing Notice and Objection Procedures in Respect of Confirmation; (VII) Setting Confirmation Schedule and Establishing Parameters on Confirmation-Related Discovery; (VIII) Establishing New Deadline for Return of Media Ownership Certifications; (IX) Authorizing Expansion of Balloting and Tabulation Agents Retention and Allocation of Costs of Same; and (X) Granting Related Relief (Docket No. 7126, amended at Docket No. 7215) (the "First Solicitation Order"); and Order Approving (I) Form, Scope and Procedures to (A)

full force and effect for the purposes of resolicitation of votes on and elections under the DCL

Plan, except as otherwise expressly modified in the Resolicitation Order.

### A.    Adequacy Of Disclosure Documents.

18.    Pursuant to the Resolicitation Order, this Court approved the Supplemental

Disclosure Document and found, among other things, that the Supplemental Disclosure

Document Relating to the DCL Plan, as a supplement to the previously-approved Disclosure

Documents respecting the DCL Plan,[41] contains "adequate information" within the meaning of

section 1125 of the Bankruptcy Code.

### B.    Resolicitation Of The DCL Plan.

19.    An affidavit of service was executed by Stephenie Kjontvedt of the Voting Agent,

with respect to the mailing of the notice of the 2012 Confirmation Hearing (the "Confirmation

Hearing Notice") and solicitation materials in respect of the DCL Plan in accordance with the

Resolicitation Order and filed with the Court on May 10, 2012 (the "Solicitation and

Confirmation AOS").[42]

20.    As evidenced by the Solicitation and Confirmation AOS, on April 23,2012, the

Voting Agent distributed the DCL Plan, the Supplemental Disclosure Document, the

---

Provide Holders of Senior Loan Claims and Senior Guaranty Claims with Opportunity to Change Votes on Debtor/Committee/Lender Plan; (B) Allow Holders of Senior Noteholder Claims and Other Parent Claims to Make New Treatment Elections; (C) Allow Holders of Claims that Previously Granted Certain Releases to Make Elections Concerning Such Releases as Modified; and (D) Allow Holders of Claims Against Tribune Company to Opt Out of Transfer of Disclaimed State Law Avoidance Claims to Creditors Trust Under Debtor/Committee/Lender Plan; and (II) Supplement to Disclosure Statement and Explanatory Statement and Distribution of Same (Docket No. 8926) (the "Second Solicitation Order" and, together with the First Solicitation Order, the "Prior Solicitation Orders").

[41] See General Disclosure Statement dated December 15, 2010 (Docket No. 7232), approved by order entered on December 9, 2010 (Docket Nos. 7215, 7126); Specific Disclosure Statement (Docket No. 7135) approved by order entered on December 9, 2009 (Docket No. 7216); and Explanatory Statement Relating to Modified Elections Under Second Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (as modified April 26, 2011) (Docket No. 8754) approved by order entered on May 17, 2011 (Docket No. 8926) (collectively with the Supplemental Disclosure Document, and as defined in Section 1.1.66 of the DCL Plan, the "Disclosure Documents").

[42] Docket No. 11594.

Resolicitation Order, the Confirmation Hearing Notice, the Supplemental Ballots, and all related

materials (collectively, the "Resolicitation Packages") to Holders of Claims in Classes entitled to

revote to accept or reject the DCL Plan and to make new elections thereunder (the "Revoting

Classes").[43]  Pursuant to the terms of the DCL Plan and in accordance with the Resolicitation

Order, the Voting Agent transmitted Resolicitation Packages in respect of the DCL Plan to the

following Holders of Impaired Claims: (i) Senior Loan Claims (Class 1C); (ii) Bridge Loan

Claims (Class 1D); (iii) Senior Noteholder Claims (Class 1E); (iv) Other Parent Claims (Class

1F); (v) EGI-TRB LLC Notes Claims (Class 1I); (vi) PHONES Notes Claims (Class 1J);

(vii) Senior Guaranty Claims (Classes 50C-111C); and (viii) General Unsecured Claims in

Classes 2E, 4E through 7E, 10E, 12E through 15E, 18E through 20E, 22E through 29E, 31E

through 38E, 40E, 42E, 43E, and 46E through 49E (the "Subsidiary Revoting Classes").

Pursuant to the Resolicitation Order, the Voting Agent was not required to transmit

Resolicitation Packages to Holders of Claims in the non-Revoting Classes, as they are General

Unsecured Claims against the Filed Subsidiary Debtors that had at least one impaired accepting

Class in connection with the prior solicitation on the Second Amended Plan (Classes 3E, 8E, 9E,

11E, 16E, 17E, 21E, 39E, 41E, 44E, 45E and 50E-111E).

     21.    As further evidenced by the Solicitation and Confirmation AOS, on April 23,

2012, the Voting Agent transmitted the Confirmation Hearing Notice to all Holders of Claims in

the non-Revoting Classes, to all parties in interest requesting service pursuant to Bankruptcy

Rule 2002, and to all persons and entities listed on the Voting Agent's Master Service List.[44]

---

[43] Solicitation and Confirmation AOS at ¶ 3-6.

[44] Solicitation and Confirmation AOS at ¶ 3(m)-(o).

C.     **Publication Notice.**

22.     An affidavit of the publication of the Confirmation Hearing Notice in (i) the

Chicago Tribune was executed by Stephanie Smith, a representative of the Chicago Tribune, on

May 7, 2012, (ii) the Los Angeles Times was executed by Veronica Chavez, Principal Clerk of

the printers and publishers of the Los Angeles Times, on May 23, 2012, (iii) the Wall Street

Journal was executed by Albert Fox, Advertising Clerk of the publisher of Wall Street Journal,

on May 4, 2012, and (iv) the New York Times was executed by Alice Weber, Principal Clerk of

the Publisher of The New York Times, on May 4, 2012.  Each of the aforementioned affidavits

of publication was filed with the Court on May 29, 2012 (the "Publication AOS" and together

with the Solicitation and Confirmation AOS, and the DCL Plan Supplement AOS, the

"Affidavits of Service").[45]

D.     **Adequacy Of Notice.**

23.     The Court finds that, as evidenced by the Affidavits of Service, the Supplemental

Disclosure Document, the DCL Plan, the Supplemental Ballots, and the Confirmation Hearing

Notice were transmitted and served in compliance with the Resolicitation Order and the

Bankruptcy Rules and such transmittal and service constituted adequate and sufficient notice for

the 2012 Confirmation Hearing.  The Court further finds that all parties in interest had a full and

fair opportunity to appear and be heard at the 2012 Confirmation Hearing and no other or further

notice is or shall be required.

E.     **Voting Declaration.**

24.     On May 29, 2012, Stephenie Kjontvedt of the Voting Agent executed the

Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding

Voting and Tabulation of Ballots Accepting and Rejecting the Fourth Amended Joint Plan of

---

[45] Docket No. 11704.

Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official

Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co.,

L.P. and JPMorgan Chase Bank, N.A. (the "Voting Declaration").[46]

      25.    As evidenced in the Voting Declaration, all procedures used to distribute the

Solicitation Packages to the Holders of Claims in the Revoting Classes and to tabulate the

Supplemental Ballots were fair and conducted in accordance with the Resolicitation Order, the

Prior Solicitation Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the

United States Bankruptcy Court for the District of Delaware, and all other applicable rules, laws

and regulations.[47]

      26.    As demonstrated in the Voting Declaration, Impaired Classes of Claims entitled to

vote to accept or reject the DCL Plan voted as follows:[48]

| DCL PLAN ACCEPTING CLASSES[49] | |
| --- | --- |
| **Class Description** | **Class Designation** |
| Senior Loan Claims | Class 1C |
| Bridge Loan Claims | Class 1D[50] |
| Other Parent Claims | Class 1F |
| Senior Guaranty Claims | Classes 50C-111C |
| Certain General Unsecured Claims against the Filed Subsidiary Debtors | Classes 3E, 8E, 9E, 11E, 16E, 17E, 21E, 35E, 39E, 41E, 44E, 45E, 50E, 51E, 52E, 53E, 54E, 55E, 56E, 57E, 59E, 61E, 62E, 63E, 65E, 66E, 68E, 69E, 70E, 71E, 72E, 73E, 74E, 75E, 76E, 77E, 78E, 80E, 81E, 82E, 83E, 84E, 88E, 89E, 90E, 93E, 94E, 95E, 97E, 99E, 100E, 101E, 103E, 104E, 105E, 106E, 107E, 108E, 109E, 110E, and 111E |
| **DCL PLAN REJECTING CLASSES[51]** | |

---

[46] Docket No. 11711.

[47] See id.

[48] In accordance with the Resolicitation Order, the Voting Agent continued to tabulate the votes cast on and elections made under the Second Amended Plan by Holders of Claims in the non-Revoting Classes as votes on and elections under the DCL Plan. The Voting Agent also continued to recognize the prior elections made by Holders of Other Parent Claims to have their Claims treated as Convenience Claims as part of the prior solicitation process undertaken on the Second Amended Plan, and such Holders were not treated as Holders of Other Parent Claims for the purposes of resolicitation of the DCL Plan. See Voting Declaration at ¶ 5.

[49] Voting Declaration at Ex A.

[50] The Holders of Bridge Loan Claims voted unanimously to accept the DCL Plan.

[51] Id.

| Class Description | Class Designation |
|---|---|
| Senior Noteholder Claims | Class 1E |
| EGI-TRB LLC Notes Claims | Class 1I |
| PHONES Notes Claims | Class 1J |

27.     The Voting Declaration evidences that 126 of the 129 Classes that were entitled to vote and had one or more creditors that actually cast Supplemental Ballots (in the case of the Revoting Classes) and Ballots (in the case of the non-Revoting Classes), i.e., all Classes other than the Classes consisting of the Senior Noteholder Claims, EGI-TRB LLC Notes Claims, and PHONES Notes Claims, voted to accept the DCL Plan.

28.     The Voting Declaration further evidences that no votes to accept or reject the DCL Plan were cast by Holders of Impaired General Unsecured Claims in the following thirty-five (35) Classes of Claims: 2E, 4E, 5E, 6E, 7E, 10E, 12E, 13E, 14E, 15E, 18E, 19E, 20E, 22E, 23E, 24E, 25E, 26E, 27E, 28E, 29E, 31E, 32E, 33E, 34E, 36E, 37E, 38E, 40E, 42E, 43E, 46E, 47E, 48E, and 49E (collectively, the "Non Voting Classes").[52]

**F.     Good Faith Solicitation.**

29.     Votes for acceptance and rejection of the DCL Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Document, the Resolicitation Order, the Prior Solicitation Orders, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations.  The Court finds that the DCL Plan Proponents and each of their Related Persons have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and Bankruptcy Rules in compliance with all of their respective activities relating to the solicitation

---

[52] Voting Declaration at Ex. A.  In addition, no votes to accept or reject the DCL Plan were cast by Holders of General Unsecured Claims in Classes 58E, 60E, 64E, 67E, 79E, 85E, 86E, 87E, 91E, 92E, 96E, 98E, and 102E; however, each of such Debtors received the affirmative vote of an impaired class with respect to the votes cast by Holders of Senior Guaranty Claims.

of acceptances to the DCL Plan and their participation in the activities described in section 1125 of the Bankruptcy Code.  Accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the DCL Plan.

IV.    **THE DCL PLAN COMPLIES WITH THE APPLICABLE REQUIREMENTS OF THE BANKRUPTCY CODE.**

30.    As set forth in the Confirmation Opinion, the Court previously found that various key components of the Second Amended Plan, which remain part of the DCL Plan, satisfy the requirements for confirmation.  Such components include, without limitation, the DCL Plan Settlement and the other provisions set forth in Section V.B, _infra_.  Reference is made to the Confirmation Opinion for a detailed discussion of these components of the DCL Plan and the Court's related findings and conclusions.

31.    The DCL Plan also reflects certain Modifications to the Second Amended Plan that address, among other things, (i) the provisions of the Second Amended Plan identified in the Amended Confirmation Opinion that the Court concluded were inconsistent with the requirements for confirmation under section 1129 of the Bankruptcy Code and (ii) the determinations made by the Court in the Allocation Disputes Decision.  The Findings and Conclusions focus primarily on these Modifications. Except to the extent otherwise provided herein, the Court hereby incorporates its findings and conclusions from the Confirmation Opinion and the Allocation Disputes Decision into these Findings and Conclusions.

A.     **The Modifications Reflected In The DCL Plan Resolve The Issues Raised By
       The Court In The Amended Confirmation Opinion And Are Consistent With
       The Allocation Disputes Decision.**

32.    As set forth in detail below, the Modifications reflected in the DCL Plan resolve

all impediments to confirmation identified in the Amended Confirmation Opinion and are

consistent with the determinations made by the Court in the Allocation Disputes Decision.

1.     **Modifications Addressing Issues Identified In The Amended
       Confirmation Opinion.**

a.     **Bar Order Finding.**

33.    In the Confirmation Opinion, the Court approved the inclusion of the Bar Order

provisions in Section 11.3 of the Second Amended Plan, concluding that (a) it was not an

improper third-party release of any non-settling defendants, and (b) that the proportionate

judgment reduction provisions are fair.  However, the Court determined that the Bar Order

should be clarified to enjoin and restrain each future plaintiff from seeking relief or collecting

judgments against any non-settling defendants in any manner that fails to conform to the terms of

the Bar Order, including, without limitation, the proportionate judgment reduction provision set

forth therein (the "Bar Order Finding").[53]  Consistent with that determination, the DCL Plan

Proponents have added corresponding language to Section 11.3 of the DCL Plan expressly

providing that "each Plaintiff is hereby enjoined and restrained from seeking relief or collecting

judgments against any Non-Settling Defendants in any manner that fails to conform to the terms

of this Bar Order, including, without limitation, the proportionate judgment reduction provision

set forth herein."  Based on this Modification, and upon the reasoning set forth in the

Confirmation Opinion, the Court concludes that the Bar Order is fair and is hereby approved.

---

[53] See Confirmation Opinion at 77.

**b.      Section 1129(a)(10) Finding.**

34.      In the Amended Confirmation Opinion, the Court determined that the Second

Amended Plan was not affirmatively accepted by at least one Impaired Class for certain Filed

Subsidiary Debtors where no creditors cast ballots on the Second Amended Plan, and thus failed

to satisfy section 1129(a)(10) of the Bankruptcy Code with respect to those Debtors (the "Section

1129(a)(10) Finding").[54]  The Court concluded that, in the absence of substantive consolidation

or consent, section 1129(a)(10) of the Bankruptcy Code must be satisfied by each debtor in a

joint plan.[55]  The Court further concluded that, in the absence of an objection, "deemed

acceptance" by a non-voting impaired class may constitute the necessary consent to the

application of section 1129(a)(10) on a "per plan" basis.[56]  In response to these determinations,

the DCL Plan now provides, in Section 4.2, that to the extent no votes to accept or reject the

DCL Plan are cast by the Holders of Claims in a particular Impaired Class, then such Class shall

be deemed to have accepted the DCL Plan unless otherwise determined by the Bankruptcy

Court, provided that the Holders of Claims in such Class are (a) given the opportunity to vote to

accept or reject the DCL Plan and (b) notified that a failure of any Holders of Claims in such

Class to vote to accept or reject the DCL Plan would result in such Class being deemed to have

accepted the Plan.

35.      The DCL Plan Proponents identified thirty-six (36) Debtors implicated by the

Section 1129(a)(10) Finding and provided all Holders of Claims against those Debtors (i.e., the

---

[54] See Confirmation Opinion at 83-84.

[55] Id. at 83.

[56] Id. at 84.

Subsidiary Revoting Classes) an opportunity to revote to accept or reject the DCL Plan.[57]  In

accordance with the Section 4.2 of the DCL Plan, each ballot served on Holders of Claims in the

Subsidiary Revoting Classes contained the following language, in bold-faced type: PURSUANT

TO THE FOURTH AMENDED DCL PLAN, IF YOUR CLAIM IS IN A CLASS OF CLAIMS

IN WHICH NO VALID BALLOTS TO ACCEPT OR REJECT THE FOURTH AMENDED

DCL PLAN ARE RECEIVED THEN SUCH CLASS OF CLAIMS WILL BE DEEMED TO

ACCEPT THE FOURTH AMENDED DCL PLAN.[58]

36.     As described in paragraph 28, supra, no votes to accept or reject the DCL Plan

were cast by Holders of Impaired General Unsecured Claims in thirty-five (35) of the thirty-six

(36) Subsidiary Revoting Classes.[59]  The Court finds that the presumption of "deemed

acceptance," as set forth in the DCL Plan and in the Supplemental Ballots was explicit and well

advertised and constitutes the necessary consent of creditors to the "per plan" scheme.  See, e.g.,

In re Adelphia Communications Corp., 368 B.R. 140, 260 (Bankr. S.D.N.Y. 2007).  Pursuant to

Section 4.2 of the DCL Plan, each of the Holders of Claims in those Non Voting Classes is

deemed to have accepted the DCL Plan.  Accordingly, the Court concludes that the DCL Plan

complies with the requirements of section 1129(a)(10) of the Bankruptcy Code.[60]

---

[57] See Resolicitation Order; Confirmation and Solicitation AOS at ¶ 3(l); Ex. 36.  Subsequent to the issuance of the Confirmation Opinion, the DCL Plan Proponents withdrew the Plan as it related to Publishers Forest Products Co. of Washington, which was one of the Debtors originally implicated by the Section 1129(a)(10) Finding.

[58] See DCL Ex. 3004, Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Form of Ballots for Resoliciting Votes to Accept or Reject Fourth Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries by Holders of Claims in Subsidiary Revoting Classes.

[59] A single vote to accept the DCL Plan was cast by a Holder of General Unsecured Claims in Class 35E, one of the Subsidiary Revoting Classes, and that class therefore accepted the plan in accordance with section 1126(c) of the Bankruptcy Code.

[60] See Heins v. Ruti-Sweetwater, Inc. (In re Ruti Sweetwater, Inc.), 836 F.2d 1263, 1267 (10th Cir. 1988) (classes of claims in which no claimholder voted either to accept or reject the plan deemed to accept for purposes of 1129(a)(8)); In re Adelphia Communications Corp., 368 B.R. 140 (Bankr. S.D.N.Y. 2007) (same).

### c.    Release Findings.

37.    With respect to the release provisions of Section 11.2.1 of the Second Amended

Plan, the Court concluded that (a) the parties granting the release should be limited to the

Debtors and should not include the Litigation Trustee, the Creditors' Trustee, or the Subsidiary

Non-Debtors; and (b) the Debtors' Related Persons, Current Employees (as defined in the

Confirmation Opinion), and 401(k) Shareholders (as defined in the Confirmation Opinion) were

not entitled to the release because the record did not establish that they had provided a substantial

contribution to the Estates or that the release was necessary for the Debtors' reorganization

(collectively, the "Release Findings").[61]

38.    To address the Release Findings, the DCL Plan revises Section 11.2.1 of the

Second Amended Plan so that the Debtors and the Reorganized Debtors are the only parties

granting releases under Section 11.2.1.  The releases under the DCL Plan preclude third parties

(including, without limitation, the Creditors' Committee, any other estate representative and

individual creditors that are not deemed to have given a release under Section 11.2 of the DCL

Plan) from asserting, on behalf of the Debtors' Estates or otherwise, any Released Claims.  In

addition, the DCL Plan narrows the scope of the parties so released to exclude the Debtors'

Related Persons (e.g., the Debtors' current and former officers, directors, employees, advisors,

and professionals, among others), Current Employees, and 401(k) Shareholders.  Accordingly –

with the exception of the Released Stockholder Parties – the Debtors' Related Persons, Current

Employees, and 401(k) Shareholders shall not receive the benefit of the releases set forth in

Sections 11.2.1 and 11.2.2 of the DCL Plan.  As a result of the Modifications addressing the

---

[61] See Confirmation Opinion at 91, 93.

Release Findings, the Court finds and concludes that the releases provided by Section 11.2 of the

DCL Plan are fair and equitable and are hereby approved.

39.    The Court also held that the proposed releases of Guarantor Non-Debtors by

Senior Lenders and Bridge Lenders who voted against the DCL Plan must satisfy the "Genesis

test."[62]  As evidenced by the Voting Declaration, no Holders of Bridge Loan Claims voted

against the DCL Plan and only one Holder of Senior Loan Claims and Senior Loan Guaranty

Claims voted against the DCL Plan.[63]  No party objected to the Guarantor Non-Debtor Release.[64]

The overwhelming support of the DCL Plan by the affected Classes justifies the release of non-

consenting lenders' claims against the Guarantor Non-Debtors.[65]  See Class Five Nev. Claimants

v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 658 (6th Cir. 2002) (plan may

release dissenting creditors' claims against non-debtors only if, among other things, the

"impacted class, or classes, has overwhelmingly voted to accept the plan").  Moreover, such

releases satisfy the Genesis test, which requires an evaluation of whether (i) such release is

---

[62] See Confirmation Opinion at 118, n.89.

[63] Holders of Bridge Loan Guaranty Claims were not entitled to vote on the Second Amended Plan or the DCL Plan. However, the Holders of Bridge Loan Claims, who also hold the Bridge Loan Guaranty Claims, voted to accept the DCL Plan by 100% in number and dollar amount.

[64] See Voting Declaration at Ex. A.

[65] Further, such overwhelming support by the impacted Classes holding guarantor claims would be sufficient to support the Guarantor Non-Debtor Release even if one or more dissenting members of the Class objected to the Guarantor Non-Debtor Release provisions of the DCL Plan.  For example, numerous courts have recognized the need for collective action in the post-default context and bar tactics by individual dissenting lenders from disturbing settlement agreements agreed to by a majority of lenders.  See, e.g., First Nat'l Bank of Louisville v. Cont'l Illinois Nat'l Bank, N.A., 933 F.2d 466, 469-70 (7th Cir. 1991) (noting that collective action, especially in the bankruptcy context, overrides individual lender interests to "prevent a destructive angling for advantage"); Kenton County Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.), 374 B.R. 516, 527 (S.D.N.Y. 2007), aff'd, sub nom. Ad Hoc Comm. of Kenton County Bondholders v. Delta Airlines, Inc., 2009 U.S. App. LEXIS 2464 (2d Cir. Feb. 9, 2009), cert. denied, 130 S.Ct. 539 (U.S. Nov. 2, 2009) (agreeing with bankruptcy court and concluding that nonimpairment clauses relied on by minority bondholders became "moot in the context of default because of bankruptcy"); Chase Manhattan Bank v. Motorola, Inc., 136 F. Supp. 2d 265, 271 (S.D.N.Y. 2001) (noting fractious syndicate bank relationships post-default as supporting "sound commercial purpose . . . to require centralized decision-making"); Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 330-31 (N.Y. 2007) (finding settlement agreement did not trigger unanimity clause, although had a "similar effect" to a release, and therefore did not preclude agent and 95.5% of lenders to agree to restructuring settlement).

necessary to the success of the reorganization, (ii) the released parties have provided a critical

financial contribution to the plan, (iii) the released parties' financial contribution is necessary to

make the plan feasible, and (iv) such release is fair to the non-consenting creditors, including

whether the non-consenting creditors received reasonable compensation in exchange for such

release.[66]  The Court finds that each of the Genesis factors is satisfied because, inter alia, (i) the

Guarantor Non-Debtor Release is important to the Debtors' successful reorganization; (ii) the

Guarantor Non-Debtors are providing critical financial contributions to the DCL Plan; (iii) the

assets contributed by the Guarantor Non- Debtors are necessary to make the DCL Plan feasible;

and (iv) the Guarantor Non-Debtor Release is fair to the non-consenting creditors, who are all

directly benefiting in an increased recovery on account of their claims against the Debtors from

the financial and business contributions of the Guarantor Non-Debtors to the Debtors'

reorganization.  Accordingly, the Court concludes that the releases of the Guarantor Non-Debtors

by the Senior Lenders and Bridge Lenders are fair and equitable and are hereby approved.

### d.    Exculpation Finding.

40.    In the Confirmation Opinion, the Court concluded that the exculpation provision

in Section 11.5 of the Second Amended Plan should be limited to estate fiduciaries (the

"Exculpation Finding").[67]  To address the Exculpation Finding, the DCL Plan modifies Section

11.5 by providing an exculpation from liability arising from any act or omission taken during or

in connection with the Chapter 11 Cases solely in favor of the following estate fiduciaries: (i) the

Debtors (including, without limitation, the Special Committee of the Board of Directors of

Tribune formed during the Chapter 11 Cases), the Creditors' Committee, and the Related

Persons of the Debtors and the Creditors' Committee and (ii) the current and former members of

---

[66] In re Genesis Health Ventures, Inc., 266 B.R. 591, 607-08 (Bankr. D. Del. 2001).

[67] See Confirmation Opinion at 94.

the Creditors' Committee (in their capacities as such) and their Related Persons.  Based on this

Modification, the Court concludes that the exculpation provision in Section 11.5 of the DCL Plan

is properly limited to estate fiduciaries and is otherwise appropriate and is hereby approved.

        2.        **Modifications Addressing The Allocation Disputes Decision.**

       41.     The Second Amended Plan generally provided for distributions premised on (i)

distributions of DCL Plan Settlement consideration being subject to both the PHONES

Subordination Provisions and the EGI-TRB Subordination Provisions (such that neither the

Holders of the PHONES Notes Claims nor the Holders of the EGI-TRB LLC Notes Claims

shared in such distributions) and (ii) Holders of Other Parent Claims benefitting from the

PHONES Subordination Provisions and the EGI-TRB Subordination Provisions.  However, in

the Confirmation Opinion, the Court determined that, because the record was unclear, the Court

"[could not] conclude that the [Second Amended] Plan's treatment is fair or appropriately

enforces the terms of the subordination agreement in accordance with Bankruptcy Code

§ 510(a)" with respect to distributions to Holders of Other Parent Claims (the "Other Parent

Claim Allocation Matter").[68]  In addition, subsequent to the issuance of the Confirmation

Opinion, parties in interest raised a host of additional issues with respect to the application of the

PHONES Subordination Provisions and the EGI-TRB Subordination Provisions.  The Court

addressed these additional issues and the Other Parent Claim Allocation Matter in the Allocation

Disputes Decision.

       42.     For the reasons set forth in the Allocation Disputes Decision, which the Court

adopts and incorporates herein, the Court finds that (i) the DCL Plan properly applies the

PHONES Subordination Provisions and the EGI Subordination Provisions to any distribution of

---

[68] See Confirmation Opinion at 111.

DCL Plan Settlement proceeds and to proceeds of, from, or relating to any and all causes of action asserted by the Litigation Trust;[69] (ii) the provisions in the DCL Plan relating to the Allowed amount of the PHONES Notes Claims are consistent with the Allocations Disputes Ruling;[70] (iii) the classification and treatment of the Other Parent Claims under the DCL Plan does not amount to unfair discrimination under section 1129(b) of the Bankruptcy Code;[71] (iv) the EGI-TRB LLC Notes are junior in priority to the PHONES Notes;[72] (v) the beneficiaries of the PHONES Notes Subordination Provisions are not entitled to receive post-petition interest prior to the Holders of PHONES Notes Claims receiving payment of their claims;[73] and (vi) the DCL Plan is otherwise consistent with the other determinations set forth in the Allocation Disputes Decision and the applicable requirements of the Bankruptcy Code.

### 3.    Other Modifications Reflected In The DCL Plan

43.    In addition to Modifications incorporated into the DCL Plan to address the Amended Confirmation Opinion and the Allocation Disputes Decision, the DCL Plan contains certain Modifications which, among other things, modify or clarify the implementation of certain provisions of the DCL Plan and address objections raised by certain parties in interest. The Court concludes that these additional Modifications, including the removal of the Creditors'

---

[69] See Allocation Disputes Memorandum at 6-11, 42-45. The Allocation Disputes also included certain disputes regarding the allocation of distributions from the Creditors' Trust provided under the Second Amended Plan. However, such disputes are no longer relevant because the DCL Plan eliminates the Creditors' Trust.

[70] Id. at 15-19.

[71] Id. at 20-30.

[72] Id. at 30-39.

[73] Id. at 39-42. The Court provided that this determination "is without prejudice to allow the parties to revisit the issue in a court of competent jurisdiction if the [Litigation Trust's] recoveries reach a level that would cause the solvency exception to become applicable. See id. The DCL Plan contains certain Modifications to Sections 1.1.39 and 1.1.40 thereof, which reflect the impact that the Court's determination respecting post-petition interest may have upon the waterfall of potential recoveries under the Litigation Trust.

Trust, are consistent with both the Amended Confirmation Opinion and the Allocation Disputes

Decision and satisfy the applicable requirements of the Bankruptcy Code.

**B.      The Other Provisions Of The DCL Plan Remain Consistent With The Amended Confirmation Opinion.**

44.     The Court finds and concludes that the provisions of the Second Amended Plan

that were approved in the Amended Confirmation Opinion, as incorporated in the DCL Plan,

continue to satisfy the applicable requirements of the Bankruptcy Code, Bankruptcy Rules, the

Local Rules of the United States Bankruptcy Court for the District of Delaware, and all other

applicable rules, laws and regulations.

**1.      Valuation Update.**

45.     In the Confirmation Opinion, the Court relied upon the DCL Plan Proponents'

experts' then-most-recent valuation in concluding that "the Debtors' Total Distributable Value is

the mid-point of the January 2011 Report: $7.019 billion."[74]   The Court also concluded that the

valuation methodologies utilized by the DCL Plan Proponents' experts and their weighting of

those methodologies were reasonable and appropriate.[75]   The Court's complete discussion of

valuation in connection with the Second Amended Plan is set forth on pages 20-29 of the

Confirmation Opinion and is incorporated herein to the extent not otherwise inconsistent with the

following discussion of valuation.

46.     The Debtors have updated the January 2011 Report relied upon by the Court in

the Confirmation Opinion (the "2012 Valuation Update").   The 2012 Valuation Update is dated

---

[74] Confirmation Opinion at 28-29.  The Court relied upon the valuation analysis prepared by the DCL Plan Proponents' experts in January 2011 (the "January 2011 Report") rather than the valuation prepared by the DCL Plan Proponents' experts in October 2010.

[75] Id. ("[T]he DCL Plan Proponents' experts provided rational explanations for their weighting of the comparable company and the DCF methodologies in the Lazard Expert Report and, considering their experience and knowledge of the applicable industries, I find their analysis on these issues to be convincing.").  The Debtors' valuation testimony and other valuation evidence submitted in connection with the Second Amended Plan is set forth in the March 11, 2011 transcript of the 2011 Confirmation Hearing at pages 14-137 (Mandava testimony) and pages 140-214 (Chachas testimony), as well as DCL Exhibits 1092, 1104, 1485 and 1494.

February 16, 2012 and is attached as Exhibit 2 to the Expert Report of John G. Chachas, dated

April 27, 2012 ("2012 Chachas Report").[76]  The 2012 Valuation Update employs the same

valuation methodology as the January 2011 Report that was approved by the Court but

incorporates more recent comparable company market data and the Debtors' updated financial

data, which was reviewed and approved by the Debtors' management.[77]

      47.    The 2012 Valuation Update concludes that the Enterprise Value of the

Reorganized Debtors falls within a reference range of $2.770 to $3.324 billion, with an

approximate midpoint of $3.047 billion.[78]  Adding to this range the estimated value of the Other

Assets (i.e., the non-controlled investments) of $2.085 to $2.441 billion (with an approximate

midpoint of $2.263 billion) and the estimated cash balance of $2.061 billion (as of December 25,

2011, and net of certain administrative and priority claims) yields the 2012 Valuation Update's

reference range of Total Distributable Value for the Reorganized Debtors of $6.917 to $7.826

billion, with an approximate midpoint value of $7.372 billion.[79]  This figure represents a $353

million increase in value from the $7.019 billion in the January 2011 Report, which this Court

adopted in the Confirmation Opinion.[80]  Approximately $329 million of the increase in the

estimated midpoint value can be attributed specifically to an increase in Distributable Cash

between December 27, 2010 and December 25, 2011.[81]

      48.    The Court finds the 2012 Valuation Update reliable and credible for the same

reasons as it found the January 2011 Report to be reliable and credible.  The Court therefore

---

[76] 2012 Chachas Report at 2.

[77] Id.

[78] Id. at 3.

[79] Id. at 3-4.

[80] Id. at 4.

[81] Id.

relies on the 2012 Valuation Report and concludes that the Debtors' Total Distributable Value is approximately $7.372 billion.

### 2.    Reasonableness Of The DCL Plan Settlement

49.    In the Confirmation Opinion, the Court provided a detailed analysis of the DCL Plan Settlement and ultimately approved the DCL Plan Settlement as "fair, reasonable, and in the best interest of the Debtors' estates."[82]  The Court further found that the DCL Plan Settlement was "achieved as a result of arms-length, good faith negotiations" and was "properly part of the [Second Amended] Plan pursuant to Bankruptcy Code §1123(b)(3)(A)".[83]  The DCL Plan Settlement remains the centerpiece of the DCL Plan.

50.    The Court concludes that the DCL Plan Settlement, as reflected in the DCL Plan, is fair, reasonable, and falls above the lowest range of reasonable litigation outcomes.  The Voting Declaration shows that, like the Second Amended Plan, the DCL Plan was accepted by both LBO creditors and Non-LBO creditors.  In total, 2,562 out of the 2,655 conforming ballots received (96.49%) voted to accept the DCL Plan, with $18,842,623,450.27 out of $20,800,433,563.70 in claims represented by those ballots (90.59%) in the aggregate across all Classes of Claims accepting.[84]  The Class of Other Parent Claims against Tribune once again supported the DCL Plan by a wide margin, with 275 out of 278 voting creditors (98.92%) holding 91.57% by dollar amount of the claims voted, accepting the DCL Plan.[85]  Although the Holders of Senior Noteholder Claims once again rejected the DCL Plan by more than two-thirds in amount, the Voting Declaration shows that more than 85% of Senior Noteholders that cast ballots voted to accept the DCL Plan, an increase from the nearly 70% that voted to accept the

---

[82] Confirmation Opinion at 71.

[83] Id.

[84] See Voting Declaration at Ex. A.

[85] Id.

Second Amended Plan.[86]  Moreover, even with an increased Total Distributable Value of approximately $7.372 billion, the Noteholders' natural recovery would only increase from approximately 5.0% (under the $7.019 billion valuation found in the Confirmation Opinion) to 5.4%.[87]  Such an increase is not significant enough to cause the DCL Plan Settlement to fall below the lowest point in the range of reasonableness.

51.     For all of the reasons stated herein and in the Confirmation Opinion, the Court concludes, and the record continues to demonstrate, that the DCL Plan Settlement: (i) falls above the lowest point in the range of reasonable litigation possibilities, (ii) would certainly reduce cost and delay pursuing the LBO-Related Causes of Action, and (iii) continues to be supported by creditors across the Debtors' capital structure.  Therefore, DCL Plan Settlement is hereby approved because it is fair, reasonable, and in the best interests of the Debtors' estates and it is properly part of the DCL Plan pursuant to Bankruptcy Code § 1123(b)(3)(A).

### 3.     Reasonableness Of The Other Settlements Implemented In The DCL Plan

52.     The DCL Plan incorporates two additional settlements that were previously embodied in the Second Amended Plan, (i) a settlement of all intercompany claims between and among the Debtors and various non-Debtor affiliates (the "Intercompany Claims Settlement")[88] and (ii) a settlement (the "Retiree Settlement") of certain Claims arising under Non-Qualified Former Employee Benefit Plans (the "Retiree Claims") in accordance with the terms set forth in

---

[86]Compare Voting Declaration at Ex. A with Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Joint Plans of Reorganization Proposed for Tribune Company and its Subsidiaries, Docket No. 8882 at Ex. 3.

[87] See 2012 Whittman Report at n 19.

[88] DCL Plan § 5.15.3; DCL Plan Ex. 1.1.122.

Exhibit 5.15.4 to the DCL Plan (the "Retiree Claims Settlement Agreement").[89]  The record

demonstrates that each of the foregoing settlements satisfies the four Martin factors.[90]

53.    With respect to the Intercompany Claims Settlement, the Court finds that the

analysis conducted by Brian Whittman, Managing Director of Alvarez & Marsal (the "I/C

Report")[91] to estimate the likelihood of allowance of a given Intercompany Claim and to

discount the face amount of such Claim accordingly reasonably weighs and reflects the

probability of success in litigating the Intercompany Claims and, accordingly, satisfies the first

Martin factor.[92]  In evaluating the remaining three Martin factors, the Court is persuaded that

litigation of the Intercompany Claims would likely be complex, costly, and inherently uncertain

in light of the magnitude of claims and related factual and legal issues.  The Court is also

mindful of the support for the DCL Plan by numerous Classes of creditors of each of the

Debtors, which the Court finds to serve as further evidence that the Intercompany Claims

Settlement is in the paramount interest of creditors.  In light of the foregoing, the Court finds and

concludes that the Intercompany Claims Settlement is fair and equitable and within the range of

reasonableness.

54.    In the Confirmation Opinion, the Court found that the Retiree Settlement was an

important piece of the Debtors' reorganization.[93]  In evaluating the first Martin factor, the Court

is satisfied that the probability of success on the merits if the Debtors were to litigate each of the

Retiree Claims is uncertain due to (i) the varying health, age, and physical conditions of the

---

[89] See DCL Plan § 5.15.4; Ex. 5.15.4.

[90] The Third Circuit has set forth four factors for the Court to consider in analyzing whether a proposed settlement is fair and equitable:  (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors.  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d. Cir. 1996).

[91] See DCL Ex 1108, Whittman Expert Report – Intercompany Claims.

[92] Id. at 2-5.

[93] Confirmation Opinion at 93.

individual Retiree Claimants, (ii) arguments over which mortality scale to apply, which discount rate to use, what lookback period to reference, and (iii) all of the actuarial details that are central for calculating the net present value of a pension claim.  The Court finds that the uncertainty of the likelihood of success weighs in favor or the Retiree Settlement, and, accordingly, the Retiree Settlement satisfies the first Martin factor.  For similar reasons, the Court is persuaded that litigating each of the Retiree Claims would likely be complex and costly in light of the number of claims and factors that must be determined to calculate the net present value of a pension claim.  The Court notes that by settling the amounts of the Retiree Claims, the Debtors have reduced the aggregate claim amount of the Retiree Claims asserted against the estates by $10 million, and thus the settlement is beneficial to the Debtors' Estates.[94]  The Court further notes the support for the DCL Plan by most Classes of creditors of the Debtors, including support by 98.92% in number and 91.57% in amount of claims voted by Holders of Other Parent Claims (which includes the Retiree Claims), which the Court finds to serve as further evidence that the Retiree Settlement is in the paramount interest of creditors.  Based on the foregoing considerations, the Court finds and concludes that the Retiree Settlement is fair and equitable and within the range of reasonableness.

> **4.    Approval Of Other Aspects Of The DCL Plan That Did Not Require Revision.**

55.    In the Confirmation Opinion, the Court determined that:

- the inclusion of the Bar Order in the Second Amended Plan (subject to the limited Modification discussed at Section IV.A.1.a, supra) is fair because the DCL Plan Settlement falls within the range of reasonableness;[95]

- the Second Amended Plan is feasible;[96]

---

[94] See DCL Plan Ex. 5.15.4.

[95] Confirmation Opinion at 71-77.

[96] Confirmation Opinion at 85-87.

- the treatment of prepetition indemnification and reimbursement claims under the Second Amended Plan is appropriate;[97]

- the Litigation Trust established under the Second Amended Plan is an appropriate structure for pursuit of estate claims;[98] and

- the classification of the Swap Claim in Class 1F under the Second Amended Plan is appropriate.[99]

The DCL Plan contains each of the foregoing provisions, among others, from the Second Amended Plan. The Court adopts its findings and conclusions from the Confirmation Opinion regarding these provisions and hereby approves such provisions as reflected in the DCL Plan.

C.    **The DCL Plan Satisfies All Other Requirements Of Section 1129 Of The Bankruptcy Code.**

1.    **Section 1129(a)(1) — Compliance With Applicable Provisions Of The Bankruptcy Code.**

56.    In addition to the foregoing, the DCL Plan complies with all applicable provisions of the Bankruptcy Code, as required by sections 1129(a)(1) of the Bankruptcy Code.

a.    **Sections 1122 And 1123(a)(1)-(4) — Classification And Treatment Of Claims And Interests.**

57.    As set forth below and as demonstrated by the record in the Chapter 11 Cases, the DCL Plan fully complies with the classification requirements of section 1122 and 1123 of the Bankruptcy Code.

(i)    **Sections 1122 And 1123(a)(1) — Designate And Properly Classify Claims And Interests.**

58.    The DCL Plan constitutes a separate plan of reorganization for each of the Debtors.[100] In satisfaction of the requirements of section 1123(a)(1) of the Bankruptcy Code, Article III of the DCL Plan properly classifies all Claims and Interests with respect to each

---

[97] Confirmation Opinion at 94-96.

[98] Confirmation Opinion at 100-101.

[99] Confirmation Opinion at 101-104.

[100] See DCL Plan § 3.1.1(b).

Debtor that require classification.  In particular, Article III of the DCL Plan segregates into separate classes, with respect to each applicable Debtor, Priority Non-Tax Claims (Classes 1A through 111A), Other Secured Claims (Classes 2B through 111B), Senior Loan Claims (Class 1C), Senior Guaranty Claims (Classes 50C through 111C), Bridge Loan Claims (Class 1D), Bridge Loan Guaranty Claims (Classes 50D through 1111D), Senior Noteholder Claims (Class 1E), Other Parent Claims (Class 1F), Convenience Claims (Class 1G), EGI-TRB LLC Notes Claims (Class 1I), PHONES Notes Claims (Class 1J), General Unsecured Claims (Classes 2E-111E), Intercompany Claims (Classes 1K through 111K), Securities Litigation Claims (Classes 1L through 111L), Tribune Interests (Class 1M), and Interests in the Filed Subsidiary Debtors (Classes 2M through 111M).[101]

59.    The Claims and Interests in each Class under Article III of the DCL Plan are substantially similar, in accordance with section 1122(a) of the Bankruptcy Code.[102]  As evidenced by the record in the Chapter 11 Cases, valid business, factual and legal reasons exist for the proposed classification of the various Claims and Interests created under the DCL Plan and such classification does not unfairly discriminate between Holders of Claims and Interests.  The Court hereby finds that such classification is appropriate and consistent with the requirements of section 1122(a) of the Bankruptcy Code.

60.    Law Debenture has objected to the classification of the Swap Claim as an Other Parent Claim under the DCL Plan.  The Court previously overruled this objection to the Second Amended Plan.  The DCL Plan does not change the classification of the Swap Claim.  The Court adopts and incorporates its prior decision in the Confirmation Opinion with respect to the

---

[101]  See DCL Plan Art. III.

[102]  Id.

classification of the Swap Claim as an Other Parent Claim.[103]   The DCL Plan Proponents have

offered a reasoned basis for the classification of the Swap Claim as an Other Parent Claim.

Accordingly, this objection is overruled.

61.    In their objections to the DCL Plan,[104] DBCTA and Law Debenture argued that

their claims arising in connection with their services as indenture trustees for certain series of

Tribune's Senior Notes (the "Indenture Trustee Fee Claims") should be classified as Other

Parent Claims, rather than Senior Noteholder Claims, because such claims arise from contractual

obligations owed under the applicable Indentures governing the Senior Notes, separate and apart

from the amounts owed to the Senior Noteholders.[105]   Under the DCL Plan, Senior Noteholder

Claims (Class 1E) include "all Claims arising under or evidenced by the Senior Notes Indenture

and related documents and any Claim of the Senior Noteholders arising under the Pledge

Agreement."[106]   The Indenture Trustee Fee Claims arise under or are evidenced by the Senior

Notes Indentures and related documents that also govern the Senior Noteholder Claims.[107]   The

applicable proofs of claim included the Indenture Trustee Fee Claims together with all other

claims arising under the Senior Notes.[108]   Accordingly, the Court finds that the Indenture Trustee

Fee Claims and the Senior Noteholder Claims are substantially similar and properly classified

together under the DCL Plan, consistent with the requirements of section 1122(a) of the

Bankruptcy Code.

---

[103]  See Confirmation Opinion at 101-104.

[104]  See Docket Nos. 11667 and 11668.

[105]  See DBCTA Obj., Docket No. 11667 at pp. 3, 4-8; Law Debenture Obj., Docket No 11668 at ¶¶ 2, 12-21, 24.

[106]  See DCL Plan § 1.227.

[107]  See Docket No. 7433, Motion of Deutsche Bank Trust Company Americas, Indenture Trustee Under the 1992 Indenture, the 1995 Indenture, and the 1997 Indenture for Estimation and Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 at ¶¶ 9, 12, 15, 16.

[108]  See Claim Nos. 3525-32.

62.    Citadel Equity Fund LTD ("Citadel") and Camden Asset Management ("Camden") filed an objection to the classification of their claims together with the PHONES Notes Claims (Class 1J) (the "Tendering Noteholders' Objection").[109] Citadel and Camden are among seventeen (17) PHONES Noteholders who, pursuant to the terms of the PHONES Notes Indenture[110] and the PHONES Global Note,[111] tendered their Notes for exchange in 2008 shortly before the Petition Date, but did not receive payment from Tribune on account of their tendered Notes due to the Debtors' intervening chapter 11 bankruptcy filing (collectively, the "Tendering Noteholders").

63.    This Court in several prior decisions has interpreted various provisions of the PHONES Notes Indenture and concluded that the claims of the Tendering Noteholders should be classified together with the PHONES Notes Claims, and that the act of tender did not somehow transform those claims or erase the applicable subordination provisions.  In the Confirmation Opinion, the Court addressed whether the Tendering Noteholders' claims should be subordinated to the other PHONES Notes Claims under section 510(b) of the Bankruptcy Code– an issue the Court explicitly noted that "could impact claim classification".[112]  The Court concluded that claims of the Tendering Noteholders were not subordinated to the claims of the non-tendering PHONES Noteholders, regardless of whether such claims were ultimately held to be allowed in the face amount of the PHONES Notes Claims or, alternatively, limited to the amount due as a result of the exercise of the Exchange Rights.  Making clear that the tender did not impact the

---

[109] Docket No. 11659.

[110] See DCL Ex. 668.

[111] See ADH Ex. 3.  The terms of the PHONES Global Note provide that the holder of each PHONES Note has a right at any time and from time to time to exchange each PHONES Note (the "Exchange Rights") for an amount of cash based on the value of certain reference stock.  See Allocation Disputes Memorandum at 12.  The PHONES Global Note also sets forth detailed procedures for exercise of the Exchange Rights.  Id. at 12-13.

[112] Confirmation Opinion at 106.

priority of PHONES Notes Claims, the Court stated: "Whether the amount of the Tendering

Holders' claim is fixed as of the date the Exchange Notices were given, or whether the Exchange

Notices were revoked or never took effect for failure of the Debtors to complete the process, the

PHONES Noteholder claims should be treated alike."[113]  In reaching its decision, the Court

relied on Blondheim Real Estate, Inc., 91 B.R. 639 (Bankr. D.N.H. 1988), in which the court

determined that a noteholder's claims for the amounts owing on the debtor's notes were not

claims for damages subject to section 510(b), noting that the "concept of 'damages' has the

connotation of some recovery other than the simple recovery of an unpaid debt due upon an

instrument. Id. at 640 (emphasis in original).  In applying Blondheim to this case, the Court

concluded: "Like Blondheim, the issue here addresses priorities between subordinated creditors

on 'the same level,' rather than a noteholder's attempt to bootstrap its claim into a more senior

class expected to receive a better recovery."  (emphasis added).[114]

      64.    In the Allocation Disputes Decision, the Court considered the allowed amount of

the PHONES Notes Claims and concluded that "the claim amount for the PHONES Noteholders

should be $759,252,932,"[115] which amount included both the claims of the Tendering

Noteholders ($56,509,795) and the non-tendering Holders ($702,743,137) in a single aggregate

claim amount.[116]  The Court's inclusion of the Claims of the Tendering Noteholders in

calculating the total Allowed amount of the PHONES Notes Claims was consistent with the

---

[113] Confirmation Opinion at 108.

[114] Id. at 107.

[115] Allocation Disputes Memorandum at 19.

[116] Id.  In reaching the Allocation Disputes Decision, this Court relied on a stipulation (the "Stipulation") entered into by the Debtors, Aurelius, WTC, Barclays PLC and Waterstone Capital Management, L.P regarding certain facts relevant to the determination of the allowed amount of the PHONES Notes Claims.  Allocation Disputes Memorandum at 11-12; ADH Ex. 115.  Although the parties to the Stipulation did not agree on the amount of the PHONES Notes Claims, they did agree that, in calculating the amount of the PHONES Notes Claims, the amounts attributable to the claims of the Tendering Noteholders should be included together with the amounts attributable to the claims of the non-tendering Holders.  Stipulation ¶¶ 35, 38 (alternative calculations of the PHONES amounts explicitly including the value of tendered PHONES Notes in the total PHONES Notes Claim amount).

conclusion in the Confirmation Decision that the Tendering Noteholders were "subordinated

creditors on 'the same level'" as the non-tendering Holders and that "the PHONES Noteholder

claims should be treated alike."[117] All of the PHONES Notes Claims – including those of the

Tendering Noteholders – arise under, and are defined by, the terms of the PHONES Notes

Indenture. Finally, the Court has considered Citadel and Camden's argument that upon

tendering their PHONES Notes they ceased to be "Holders" subject to subordination pursuant to

Section 14.02 of the PHONES Indenture, which provides that the subordination provisions apply

to payments to be made to "Holders" of the PHONES Notes, and found it to be without merit.

Both the Global Note and the Revised Exchange Notice state that payment amounts for the

tendered shares will be made to the "tendering Holder(s)" even though the "Holders" at the point

of payment have previously tendered their Notes.[118] Moreover, the subordination rights created

under Section 14.02 of the PHONES Notes Indenture are applicable upon "any distribution of

assets of the Company" following "any insolvency or bankruptcy case".[119]

65.    Accordingly, the Court concludes that the claims of the Tendering Noteholders

are appropriately classified together with the claims of all other PHONES Noteholders under

section 1122 of the Bankruptcy Code. The Tendering Noteholders' Objection to the contrary is

hereby overruled.

### (ii)    Section 1123(a)(2) — Specify Unimpaired Classes Of Claims And Interests.

66.    Article III of the DCL Plan identifies and describes each Class of Claims or

Interests that is Unimpaired under the DCL Plan. In particular, Article III of the DCL Plan

indicates that Claims and Interests in Classes 1A through 111A (Priority Non-Tax Claims), 1B

---

[117] Confirmation Opinion at 107-08.

[118] See Stipulation ¶¶ 14, 15

[119] See DCL Ex. 668, PHONES Notes Indenture § 14.02.

through 111B (Other Secured Claims), 1G (Convenience Claims), and Interests in Classes 1M

through 111M (Interests in Filed Subsidiary Debtors) are Unimpaired under the DCL Plan.

Accordingly, the DCL Plan meets the requirements of section 1123(a)(2) of the Bankruptcy

Code.[120]

(iii)    **Section 1123(a)(3) — Specify Treatment Of Impaired Classes Of Claims And Interests.**

67.    Article III of the DCL Plan specifies that Claims in Classes 1C (Senior Loan

Claims), Classes 50C-111C (Senior Guaranty Claims), Class 1D (Bridge Loan Claims), Classes

50D-111D (Bridge Loan Guaranty Claims), Class 1E (Senior Noteholder Claims), Class 1F

(Other Parent Claims), Class 1I (EGI-TRB LLC Notes Claims), Class 1J (PHONES Notes

Claims), Classes 2E-111E (General Unsecured Claims), Classes 1K-111K (Intercompany

Claims), Class 1L-111L (Securities Litigation Claims), and Class 1M (Tribune Interests) are

Impaired under the DCL Plan.[121]  Article III of the DCL Plan also specifies the treatment of such

Impaired Claims under the DCL Plan.  Accordingly, the DCL Plan satisfies the requirements of

section 1123(a)(3) of the Bankruptcy Code.

(iv)    **Section 1123(a)(4) — Equal Treatment Within Classes.**

68.    The DCL Plan complies with section 1123(a)(4) by providing each Claim or

Interest in each particular Class with the same treatment as all other Claims or Interests in such

Class, with the following exceptions.  Sections 3.2.4, 3.2.5, and 3.2.6 of the DCL Plan provide

Holders of Claims in each of those Classes with options to elect different types of treatment.  The

Court finds and concludes that the treatment options in each the foregoing sections of the DCL

Plan do not violate section 1123(a)(4) because every Holder of a Claim in each applicable Class

has the same and equal opportunity to elect any the treatment options available to such Class.

---

[120]       DCL Plan Art. III.

[121]       DCL Plan Art. III.

38

**b.    Section 1123(a)(5) — Adequate Means For Implementation Of The DCL Plan.**

69.      The DCL Plan, including Article V, provides adequate means for its

implementation, including, among other things: (i) the consummation of certain Restructuring

Transactions pursuant to Section 5.2 of the DCL Plan, including the Restructuring Transactions

set forth on Exhibit 5. 2 of the DCL Plan (filed with the DCL Plan Supplement); (ii) except as

otherwise provided under the DCL Plan or the Restructuring Transactions, the continued

corporate existence of the Debtors and the vesting of assets in the Reorganized Debtors under

Section 5.7 of the DCL Plan; (iii) the adoption of the corporate constituent documents that will

govern the Reorganized Debtors and the identification of the initial boards of directors of (a)

Reorganized Tribune, as of and immediately following the Effective Date, in the manner

provided in Section 5.3.1 and 5.3.2 of the DCL Plan and (b) each of the Reorganized Debtors

other than Reorganized Tribune, in accordance with Section 5.3.3 of the DCL Plan and as set

forth on Exhibit 5.3.3 of the DCL Plan; (iv) the issuance of new securities for distribution in

accordance with the terms of the DCL Plan, as detailed in Section 5.4 of the DCL Plan; (v) the

entry by the Reorganized Debtors into the New Senior Secured Term Loan and the Exit Facility,

if any, as detailed in Sections 5.6 and 5.10 of the DCL Plan, respectively; (vi) the cancellation of

the Loan Agreements, Loan Guaranty Agreements, Pledge Agreement, Notes issued under the

Loan Agreements, Senior Notes, debentures, instruments, Indentures, EGI-TRB LLC Notes,

PHONES Notes, Old Common Stock, and other Tribune Interests, as detailed in Section 5.8 of

the DCL Plan;[122] (vii) the cancellation of any Lien securing any Secured Claim (to the extent

provided for in the DCL Plan) and of all of the Senior Guaranty Claims and Bridge Loan

---

[122] Section 5.8.2 of the DCL Plan has been modified from the Second Amended Plan to clarify that the PHONES Notes Indenture shall continue in effect to the extent necessary to allow the Holders of PHONES Notes to assert any subrogation rights that such Holders may have under section 14.06 of the PHONES Notes Indenture.

Guaranty Claims against the Guarantor Non-Debtors, as detailed in Section 5.9 of the DCL Plan; (viii) the settlement of certain claims and controversies, as detailed in Section 5.15 of the DCL Plan; (ix) the requirement that the Debtors, the Senior Lenders and any other Holders of Claims, which are eligible to receive New Common Stock, use their best efforts to cooperate in pursuing and in taking all reasonable steps necessary to obtain requisite FCC approvals, as detailed in Section 5.17 of the DCL Plan; (x) the various discharges, releases, injunctions, indemnifications and exculpations provided in Article XI of the DCL Plan, including the release of Guarantor Non-Debtors from Senior Guaranty Claims and Bridge Loan Guaranty Claims, as detailed in Section 11.2.5 of the DCL Plan; (xi) the continuation of certain employee benefit programs and collective bargaining agreements, as detailed in Sections 6.5 and 6.6 of the DCL Plan; and (xii) the assumption, assumption and assignment or rejection of certain executory contracts and unexpired leases to which any Debtor is a party, as detailed in Article VI of the DCL Plan. Accordingly, the DCL Plan complies with section 1123(a)(5) of the Bankruptcy Code and provides adequate means to implement the DCL Plan.

        c.        **Section 1123(a)(6) — Prohibition Against The Issuance Of Nonvoting Equity Securities And Appropriate Distribution Of Voting Power Among Classes Of Securities.**

70.      Section 5.3.1 of the DCL Plan provides that the certificates of incorporation of each of the Reorganized Debtors will, among other things, prohibit the issuance of nonvoting equity securities to the extent required under section 1123(a) of the Bankruptcy Code.[123]  Also, the Certificate of Incorporation of Reorganized Tribune provides for the allocation of voting power among New Class A Common Stock and New Class B Common Stock.[124]  Accordingly, the DCL Plan complies with section 1123(a)(6) of the Bankruptcy Code.

---

[123] DCL Plan § 5.3.1; DCL Plan Ex. 5.3.1 at ¶ 4.

[124] DCL Plan Ex. 5.3.1 at ¶ 4.A.i(a).

        **d.**       **Section 1123(a)(7) — Selection Of Directors And Officers In A Manner Consistent With The Interests Of Creditors And Equity Security Holders And Public Policy.**

71.     Subject to Section 5.3 of the DCL Plan, the composition of the initial board of directors of Reorganized Tribune following the Effective Date of the DCL Plan will be determined by Oaktree, Angelo Gordon, and JPMorgan. Based on the record of the Chapter 11 Cases, the Court finds that the DCL Plan provides for the selection of the initial board of directors of Reorganized Tribune and the other Reorganized Debtors in a manner consistent with the interests of the Holders of Claims and Interests and public policy.[125] Accordingly, the DCL Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

        **e.**       **Section 1123(b)(1) — Impairment Of Claims And Interests.**

72.     As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the DCL Plan provides for the Impairment of certain Classes of Claims and Interests, while leaving other Classes Unimpaired. The DCL Plan thus modifies the rights of the Holders of certain Claims and Interests and leaves the rights of others unaffected.

        **f.**       **Sections 1123(b)(2) And 1123(d) — Assumption, Assumption And Assignment, Or Rejection Of Executory Contracts And Unexpired Leases And Cure of Defaults.**

73.     In accordance with section 1123(b)(2) of the Bankruptcy Code, the DCL Plan provides for the assumption, assumption and assignment, or rejection of the executory contracts and unexpired leases of the Debtors that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code.[126] Specifically, Article VI of the DCL Plan provides that entry of the Confirmation Order constitutes the approval of the Court for the assumption by the Debtors of all existing executory and postpetition contracts and

---

[125] DCL Plan §§ 5.3.2, 5.3.3.

[126] DCL Plan Art. VI.

unexpired leases, other than of any contracts or leases previously assumed or rejected by the

Debtors, previously expired or terminated pursuant to its own terms, expressly excluded from the

assumptions set forth in Section 6.5 of the DCL Plan or as set forth on Exhibit 6.3 to the DCL

Plan (filed with the DCL Plan Supplement), or included in a pending motion to reject such

executory contract or unexpired lease.[127]  The Court finds that assumption of each of these

executory contracts and unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy

Code and the DCL Plan is both beneficial and necessary to the Debtors' and Reorganized

Debtors' business operations upon and subsequent to emergence from chapter 11 and is a sound

exercise of the Debtors' independent business judgment.

74.    The DCL Plan further provides for the satisfaction of any monetary amounts by

which each executory contract and unexpired lease to be assumed is in default in accordance

with section 365(b)(1) of the Bankruptcy Code by payment of the such amount in Cash on the

Effective Date or on such other terms as the parties to each such executory contract or unexpired

lease may otherwise agree.[128]  Unless otherwise determined in accordance with the procedures

set forth in the Order Establishing Procedures for (I) Fixing Cure Amounts and (II) Providing

Notice of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases

by a Successor Reorganized Debtor,[129] all cure amounts have been fixed at zero dollars pursuant

to Section 6.2 of the DCL Plan.  Accordingly, the DCL Plan complies with sections 1123(b)(2)

and 1123(d) of the Bankruptcy Code.

---

[127] DCL Plan § 6.1.1.

[128] DCL Plan § 6.2.

[129] Docket No. 8745.

g.    **Section 1123(b)(3) — Retention, Enforcement And Settlement Of Claims Held By The Debtors.**

75.    In accordance with section 1123(b)(3) of the Bankruptcy Code, the DCL Plan

provides for the Debtors to retain Ordinary Litigation Claims and the Preserved Causes of

Action.  Specifically, Section 5.7 of the DCL Plan provides that the Debtors and their Estates

shall retain the Ordinary Litigation Claims except as otherwise provided in the DCL Plan, the

Confirmation Order, or in any document, instrument, release, or other agreement entered into in

connection with the DCL Plan.  The DCL Plan further provides that the Reorganized Debtors, as

the successors in interest to the Debtors and their Estates, may enforce, sue on, settle or

compromise (or decline to do any of the foregoing) any or all of the Ordinary Litigation

Claims.[130]  Section 11.2.6 of the DCL Plan provides that the Preserved Causes of Action are

expressly preserved and shall not be subject to the releases set forth in Sections 11.2.1 or 11.2.2

of the DCL Plan.  Pursuant to Section 13.2.1 of the DCL Plan, the Preserved Causes of Action,

other than the Disclaimed State Law Avoidance Claims, will be transferred to the Litigation

Trust.  Section 13.3 of the DCL Plan provides that the Litigation Trustee, as successor in interest

to the Debtors and their Estates with respect to the Preserved Causes of Action, may enforce, sue

on, settle or compromise (or decline to do any of the foregoing) any or all of the Preserved

Causes of Action.  Accordingly, the provisions in the DCL Plan comply with section 1123(b)(5)

of the Bankruptcy Code.

h.    **Section 1123(b)(6) — Other Provisions Not Inconsistent With Applicable Provisions Of The Bankruptcy Code.**

76.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the DCL Plan

includes additional appropriate provisions that are not inconsistent with the applicable provisions

of the Bankruptcy Code, including, among others, (i) the provisions of Article II of the DCL Plan

---

[130] DCL Plan § 5.7.

43

governing treatment on account of Allowed Administrative and Priority Tax Claims; (ii) the provisions of Article VII of the DCL Plan governing distributions under the DCL Plan; (iii) the provisions of Article XII regarding retention of jurisdiction by the Court over certain matters after the Effective Date, and (iv) the release of the Guarantor Non-Debtors from Senior Guaranty Claims and Bridge Loan Guaranty Claims.[131]   Such provisions, and all other additional discretionary provisions of the DCL Plan, are consistent with section 1123(b)(6) of the Bankruptcy Code.

### i.      Bankruptcy Rule 3016.

77.      The DCL Plan is dated and identifies the entities submitting it as proponents and thereby satisfies Bankruptcy Rule 3016(a).[132]   Other than conduct otherwise enjoined by the Bankruptcy Code, Article XI of the DCL Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities subject to such injunction, in accordance with Bankruptcy Rule 3016(c).

### 2.      Section 1129(a)(2) — Compliance With Applicable Provisions Of The Bankruptcy Code.

78.      The DCL Plan Proponents, as proponents of the DCL Plan, have complied with all applicable provisions of the Bankruptcy Code including, without limitation, section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.   As determined in Section III.B herein, the Disclosure Documents and the procedures by which the Supplemental Ballots (in the case of the Revoting Classes) and Ballots (in the case of the non-Revoting Classes) for acceptance or rejection of the DCL Plan were solicited and tabulated were in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Resolicitation Order and the Prior Solicitation Orders, and any and all other applicable rules,

---

[131] DCL Plan, Art. II; VII; XI; XII.

[132] See DCL Plan § 1.1.178.

laws and regulations.[133]  Accordingly, the DCL Plan Proponents, as proponents of the DCL Plan,

have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

### 3.    Section 1129(a)(3) — Proposal Of The DCL Plan Is In Good Faith.

79.    The DCL Plan Proponents have proposed the DCL Plan in good faith and not by

any means forbidden by law.  11 U.S.C. § 1129(a)(3).  In determining that the DCL Plan has

been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases, the Mediator's reports,[134] the terms of the DCL

Plan, the circumstances surrounding the filing of the DCL Plan, the process leading to its

formulation, and the solicitation of votes on the DCL Plan.  Based on the evidence presented at

the Confirmation Hearings and the entire record of the Chapter 11 Cases, the Court finds that the

DCL Plan has been proposed with the legitimate purpose of reorganizing the affairs of each of

the Debtors and maximizing the returns available to creditors and other parties in interest.  In the

Confirmation Opinion, the Court found that the DCL Settlement, which was and remains the

centerpiece of the DCL Plan, was proposed and negotiated by the parties in good faith.[135]  The

Court adopts the findings and conclusions set forth in the Confirmation Opinion with respect to

the settlement process in these Findings and Conclusions.[136]  Moreover, the arms-length

negotiations among the Debtors, the Senior Lenders, the Bridge Lenders, the Creditors'

Committee, and other parties in interest and each of their respective representatives, leading to

the DCL Plan's formulation, serves as independent evidence that the terms of the DCL Plan

embody the best interests of all the constituencies of the Debtors' estates and corroborates the

---

[133] See generally Affidavits of Service.

[134] DCL Ex. 383, Mediator's Report dated September 28, 2010 (Docket No. 5831) ; DCL Ex. 384, Mediator's Second Report dated October 12, 2010 (Docket No. 5936); DCL Ex. 385, Mediator's Third Report dated January 28, 2011 (Docket No. 7656).

[135] See Confirmation Opinion at 34-39.

[136] Id.

DCL Plan Proponents' good faith in proposing the DCL Plan.[137]  Accordingly, the DCL Plan

satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

### 4.    Section 1129(a)(4) — Court Approval Of Certain Payments As Reasonable.

80.    Any payment made or to be made by a Debtor for services or for costs and

expenses in or in connection with the Chapter 11 Cases, or in connection with the DCL Plan and

incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the

Court as reasonable.  Section 2.1 of the DCL Plan provides for the payment of various

Administrative Claims, including Claims for professional fees, which are subject to Court

approval and the standards of the Bankruptcy Code.[138]  Section 9.1 of the DCL Plan provides

that the reasonable Senior Lender Fee/Expense Claims, Bridge Lender Fee/Expense Claims, and

Creditors' Committee Member Fee/Expense Claims will be reimbursed by the Reorganized

Debtors subject to the requirements of Section 9.1 of the DCL Plan.  The Court finds that the

reimbursement of the Senior Lender Fee/Expense Claims and Bridge Lender Fee/Expense

Claims provided by Sections 9.1.1 and 9.1.2 is an integral component of the DCL Plan

Settlement, which this Court has determined is fair, reasonable, in the best interests of the

Debtors' estates, and properly part of the DCL Plan under section 1123(b)(3)(A) of the

Bankruptcy Code.

81.    Section 9.1 of the DCL Plan further provides that statements of the Senior Lender

Fee/Expense Claims and Bridge Lender Fee/Expense Claims payable by the Reorganized

Debtors pursuant to Section 9.1 of the DCL Plan will be filed on the public docket,[139] and that

---

[137] See, e.g., Tr. 3/8/11 at 75:14-87:2 (Kurtz) (describing negotiations after April Plan was terminated), Tr. 3/9/11 at 27:4-39:4 (Kulnis) (describing negotiations after April Plan was terminated and throughout the Mediation), Tr. 3/9/11 at 41:19-42:16 (Kulnis) (describing negotiations generally).

[138] DCL Plan § 2.1.

[139] DCL Plan §§ 9.1.1- 9.1.2.

the Senior Lender Fee/Expense Claims, Bridge Lender Fee/Expense Claims, and Creditors'

Committee Member Fee/Expense Claims will be subject to a "reasonableness" standard and

ultimate review of the Court.[140]

82.     Accordingly, the Court hereby overrules objections to Section 9.1 of the DCL

Plan and finds that the DCL Plan complies with section 1129(a)(4) of the Bankruptcy Code.

### 5.    Section 1129(a)(5) — Disclosure Of Identity Of The Proposed Management, Compensation Of Insiders And Consistency Of Management Proposals With The Interests Of Creditors And Public Policy.

83.     The DCL Plan complies with section 1129(a)(5) of the Bankruptcy Code.  The

Debtors have disclosed or have implemented procedures for disclosure of all necessary

information regarding the Debtors' and Reorganized Debtors' initial officers and directors,

including for those directors and officers who may constitute insiders, the compensation paid or

to be paid as of the Effective Date.[141]  Based on the record of the Chapter 11 Cases, the Court

finds the appointment or continuance of the proposed directors and officers of the Reorganized

Debtors under the DCL Plan to be consistent with the interests of the Holders of Claims and

Interests and with public policy.  Accordingly, the DCL Plan satisfies the requirements of section

1129(a)(5) of the Bankruptcy Code.

### 6.    Section 1129(a)(6) — Approval Of Rate Changes.

84.     The Debtors' current businesses do not involve the establishment of rates over

which any regulatory commission has or will have jurisdiction after Confirmation.[142]

Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the DCL Plan.

---

[140] DCL Plan §§ 9.1.1- 9.1.3.

[141] See DCL Plan §§ 5.3.2, 5.3.3; DCL Plan Exs. 5.3.2(1), 5.3.2(2), 5.5.3.

[142] DCL Ex. 376, General Disclosure Statement dated December 15, 2010 at 7-15 (Docket No. 7232).

7.    **Section 1129(a)(7) — Best Interests Of Holders Of Claims And Interests.**

85.    As demonstrated by (i) the liquidation analyses attached as Exhibit D to the General Disclosure Statement and set forth in Article IV of the DCL Disclosure Statement (collectively, the "DCL Liquidation Analysis"), (ii) the Expert Report of Brian Whittman, a Managing Director of Alvarez & Marsal, regarding the Liquidation Analysis, dated February 8, 2011 (the "Whittman Liquidation Report")[143] and (iii) the Expert Report of Brian Whittman dated April 27, 2012 (the "2012 Whittman Report"),[144] each Holder of an Impaired Claim that has not accepted the DCL Plan will on account of such Claim, receive or retain property under the DCL Plan having a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.[145]    The DCL Liquidation Analysis, the Whittman Liquidation Report, and Section V.C of the 2012 Whittman Report, including the methodology used and the estimations and assumptions made therein, and the evidence related thereto that was presented or proffered at the Confirmation Hearings, (a) are persuasive and credible as of the dates such evidence was prepared, presented, or proffered, (b) have not been controverted by other persuasive evidence and have not been challenged, (c) are based upon reasonable and sound assumptions, and (d) provide a reasonable estimate of the liquidation value of the Debtors' Estates upon a conversion to a chapter 7 proceeding.    In reaching this determination, the Court incorporates its findings and conclusions in the Confirmation Opinion respecting WTC's objection to the Second Amended Plan on section 1129(a)(7) grounds, in which the Court

---

[143] DCL Ex. 1109, Whittman Liquidation Report.

[144] See 2012 Whittman Report at 16.

[145] See DCL Ex. 376, General Disclosure Statement dated December 15, 2010 at Ex. D (Docket No. 7232); DCL Ex. 1109, Whittman Liquidation Report.

considered and overruled WTC's assertion that the Holders of PHONES Notes Claims would be economically better off in a chapter 7 liquidation than they would be under the DCL Plan.[146] Therefore, the Court concludes that the DCL Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code with respect to each non-accepting creditor in each of the Impaired Classes under the DCL Plan.

### 8.    Section 1129(a)(8) — Acceptance Of The DCL Plan.

86.    Section 1129(a)(8) of the Bankruptcy Code is satisfied with respect to (i) Priority Non Tax Claims (Classes 1A through 111A), Other Secured Claims (Classes 1B-111B), Convenience Claims (Class 1G), and Interests in Filed Subsidiary Debtors (Classes 2M-111M), each of which is Unimpaired under the DCL Plan and is conclusively presumed to have accepted the DCL Plan pursuant to section 1126(f) of the Bankruptcy Code,[147] and (ii) Senior Loan Claims (Class 1C), Bridge Loan Claims (Class 1D), Other Parent Claims (Class 1F), Senior Guaranty Claims (Classes 50C-111C), and certain Classes of General Unsecured Claims Against Filed Subsidiary Debtors (Classes 3E, 8E, 9E, 11E, 16E, 17E, 21E, 35E, 39E, 41E, 44E, 45E, 50E 57E, 59E, 61E, 62E, 63E, 65E, 66E, 68E, 69E, 70E, 71E through 78E, 80E through 84E, 88E through 90E, 93E through 95E, 97E, 99E, 100E, 101E, and 103E through 111E), each of which voted to accept the DCL Plan.[148]

87.    Although section 1129(a)(8) is not satisfied with respect to (i) Securities Litigation Claims (Classes 1L through 111L), Bridge Loan Guaranty Claims (Classes 50D-111D), and Tribune Interests (Class 1M), each of which is Impaired and deemed to have rejected the DCL Plan pursuant to section 1126(g) of the Bankruptcy Code (the "Deemed Rejecting

---

[146] See Confirmation Opinion at 111, n.83.

[147] See DCL Plan §§ 3.2.1; 3.2.2; 3.2.7, 3.3.1, 3.3.2, 3.3.8.

[148] See Voting Declaration at Ex. A.

Classes")[149] and (ii) Senior Noteholder Claims (Class 1E), EGI-TRB LLC Notes Claims (Class 1I), and PHONES Notes Claims (Class 1J), which voted to reject the DCL Plan[150] (the "Rejecting Voting Classes," and together with the Deemed Rejecting Classes, the "Rejecting Classes"), the DCL Plan may still be confirmed because the DCL Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes.[151]

> ### 9.    Section 1129(a)(9) — Treatment Of Claims Entitled To Priority Pursuant To Section 507(a) Of The Bankruptcy Code.

88.    The DCL Plan's treatment of Administrative Expense Claims, DIP Facility Claims, Priority Tax Claims, and Priority Non-Tax Claims also meets the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.  Section 2.1 of the DCL Plan provides that Allowed DIP Facility Claims shall be paid in full in Cash on or as soon as reasonably practical after the Effective Date.[152]  In addition, Section 2.2 of the DCL Plan provides that, except to the extent such Holder agrees to different treatment, or as otherwise provided in the DCL Plan, each Holder of an Allowed Administrative Expense Claim shall receive payment in full in Cash on the latest to occur of (i) the Effective Date, if due on or before that date, (ii) the date upon which such Administrative Expense Claim becomes an Allowed Claim, (iii) with respect to Allowed Administrative Expense Claims not yet due on the Effective Date or that represent obligations incurred by the Debtors in the ordinary course of their business during the Chapter 11 Cases or assumed by the Debtors during the Chapter 11 Cases, such time as such Allowed Administrative Expense Claims are due in the ordinary course of business and in accordance with the terms and

---

[149] See DCL Plan §§ 3.2.11, 3.2.12, 3.3.4, 3.3.7.

[150] See Voting Declaration at Ex. A.

[151] See Section IV.C.15, infra.  As discussed in Section IV.A.1.b, supra, notwithstanding the failure of Holders of Claims in the thirty-five (35) Non Voting Classes to affirmatively vote to accept or reject the DCL Plan, the Court finds and determines that, consistent with applicable case law, such Classes are deemed to accept the DCL Plan for purposes of section 1129(a)(8).

[152] DCL Plan § 2.1.

conditions of the particular agreements governing such obligations, or (iv) such other date as

may be agreed upon between the Holder of such Allowed Administrative Expense Claim and the

Reorganized Debtors.[153]  Further, Section 2.3 of the DCL Plan provides that except to the extent

that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder

of an Allowed Priority Tax Claim against any of the Debtors shall receive either, at the sole

option of the Reorganized Debtors, (i) payment in full in Cash after such Priority Tax Claim

becomes an Allowed Claim, or as soon as practicable thereafter, together with interest from the

Effective Date on any outstanding balance calculated at a rate determined under section 511 of

the Bankruptcy Code, (ii) except as otherwise determined by the Court at the Confirmation

Hearings, regular installment payments in Cash equal to the Allowed amount of such Claim over

a period ending not later than the fifth anniversary of the Petition Date, together with interest

from the Effective Date on any outstanding balance calculated at a rate determined under section

511 of the Bankruptcy Code, which installment payments shall commence after such Priority

Tax Claim becomes an Allowed Claim, or (iii) such other treatment as agreed to by the Holder of

an Allowed Priority Tax Claim and the Reorganized Debtors.[154]  In addition, Article III of the

DCL Plan provides that each Holder of an Allowed Claim in Classes 1A through 111A (Priority

Non-Tax Claim) shall have its Claim Reinstated.[155]  Accordingly, the DCL Plan complies with

section 1129(a)(9) of the Bankruptcy Code.

> **10.     Section 1129(a)(10) — Acceptance By At Least One Impaired, Non-Insider Class.**

89.     As evidenced by the Voting Declarations, at least one Impaired Class of Claims

has voted to accept the DCL Plan, determined without including the acceptance by any insider,

---

[153] DCL Plan § 2.2.

[154] DCL Plan § 2.3.

[155] See DCL Plan §§ 3.2.1, 3.3.1.

with respect to all Debtors, other than the thirty-five (35) Non Voting Classes.  Notwithstanding

the failure of the Non Voting Classes to affirmatively vote to accept or reject the DCL Plan,

consistent with applicable case law, for the reasons set forth in the Confirmation Opinion and

Section IV.A.1.b herein, the Court hereby finds and determines that section 1129(a)(10) has been

satisfied with respect to each of the Debtors.

### 11.    Section 1129(a)(11) — Feasibility Of The DCL Plan.

90.    The Debtors' financial projections attached as Exhibit E to the General Disclosure

Statement, the summary of updated financial projections attached as Exhibit D to the

Supplemental Disclosure Document, and the evidence in the record, including, without

limitation, the testimony of Suneel Mandava at the 2011 Confirmation Hearing, the expert report

of Lazard, and Section IV of the 2012 Whittman Report are credible and persuasive and establish

that confirmation of the DCL Plan is not likely to be followed by the liquidation, or the need for

further financial reorganization, of the Debtors, the Reorganized Debtors or any successor to the

Reorganized Debtors under the DCL Plan.[156]  Based on the evidence in the record, upon the

Effective Date, the Reorganized Debtors will have sufficient operating cash and liquidity to meet

their financial obligations under the DCL Plan and to fund ongoing business operations.[157]

Moreover, as discussed in the Confirmation Opinion, the DCL Plan includes appropriate

provisions to address and cure issues that may arise in connection with the FCC Applications.[158]

Therefore, the DCL Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy

Code.

---

[156] Tr. 3/11/11 at 80:4-19; DCL Ex. 1104 at Ex. 2, Lazard Expert Report at 109.

[157] Id.

[158] See Confirmation Opinion at 85-87 (overruling objections of Noteholder Plan Proponents to feasibility of DCL Plan).

### 12.    Section 1129(a)(12) — Payment Of Bankruptcy Fees.

91.    Section 15.7 of the DCL Plan provides that all fees payable pursuant to section

1930 of title 28 of the United States Code, as determined by the Court at the Confirmation

Hearings, shall be paid on the Effective Date.[159]  Accordingly, the DCL Plan complies with

section 1129(a)(2) of the Bankruptcy Code.

### 13.    Section 1129(a)(13) — Retiree Benefits.

92.    Section 6.5 of the DCL Plan provides that the Reorganized Debtors shall continue

to perform all obligations under all Employee Benefit Plans (including retiree benefit plans) and

all such Employee Benefit Plans will be assumed by the applicable Reorganized Debtors, subject

to the Debtors' and Reorganized Debtors' rights under such Employee Benefit Plans.

Accordingly, the DCL Plan provides for the continuation of retiree benefit obligations included

within the protection of section 1114 of the Bankruptcy Code and complies with

section 1129(a)(13) of the Bankruptcy Code.

### 14.    Sections 1129(a)(14)-(a)(16) — Miscellaneous Provisions.

93.    Based on the facts of the Chapter 11 Cases, sections 1129(a)(14), 1129(a)(15),

and 1129(a)(16) of the Bankruptcy Code are inapplicable as the Debtors (i) have no domestic

support obligations (section 1129(a)(14)), (ii) are not individuals (section 1129(a)(15)), and (iii)

are for-profit businesses (section 1129(a)(16)).[160]

### 15.    Section 1129(b) — Rejecting Voting Classes.

94.    Based on the evidence proffered, adduced and/or presented at the Confirmation

Hearings, the DCL Plan does not discriminate unfairly and is fair and equitable with respect to

each of the Rejecting Classes as required by sections 1129(b)(1) and 1129(b)(2) of the

---

[159] DCL Plan § 15.7.

[160] See DCL Ex. 376, General Disclosure Statement at 7-16 (description of Debtors' businesses); 19-39 (summary of Debtors' prepetition liabilities) (Docket No. 7232).

Bankruptcy Code. In particular, there is no Class of Claims or Interests that are junior to Holders of Claims or Interests in the Rejecting Classes that will receive or retain any property under the DCL Plan with respect to their Claim or Interest other than Interests in Filed Subsidiary Debtors (Classes 2M-111M), which will be Reinstated for administrative convenience and in recognition of the significant value contribution by Tribune to creditors of the Filed Subsidiary Debtors. The Court finds that the value provided to the Holders of Senior Guaranty Claims by Tribune is adequate consideration in exchange for the Tribune Entities' retention of its equity interest.[161] In addition, as determined in Sections IV.A and IV.B herein, the DCL Plan, including the DCL Plan Settlement embodied therein, is fair, equitable and reasonable with respect to all Classes of creditors, including, without limitation, Holders of Senior Noteholder Claims (Class 1E). Accordingly, the DCL Plan is fair and equitable under Section 1129(b) with respect the Rejecting Classes and can be confirmed notwithstanding the rejection of such Rejecting Classes.

### 16.    Section 1129(d) — Purpose Of DCL Plan.

95.    The principal purpose of the DCL Plan is not the avoidance of taxes or the avoidance of the requirements of section 5 of the Securities Act of 1933, and no evidence has been presented indicating that there has been any such filing by any governmental unit or any other party asserting such avoidance.[162] Therefore, the DCL Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

---

[161] See Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.), 419 B.R. 585 (Bankr. S.D.N.Y. 2009).

[162] See DCL Disclosure Statement at 4-7.

17.     **Other Provisions Of The DCL Plan Are Also Consistent With The Bankruptcy Code.**

a.     **Exemptions From Taxation.**

96.     Section 15.5 of the DCL Plan provides that (i) the issuance, transfer or exchange of notes, debentures or equity securities under the DCL Plan, (ii) the creation of any mortgage, deed of trust, lien, pledge or other security interest, (iii) the making or assignment of any lease or sublease, or (iv) the making or delivery of any deed or other instrument of transfer under the DCL  Plan, will not be subject to any stamp tax or other similar tax.  The Court finds that this provision is consistent with and permissible pursuant to section 1146(a) of the Bankruptcy Code.

b.     **Exemptions From Securities Laws.**

97.     Section 5.4.1 of the DCL Plan provides that the issuance of the New Common Stock and the New Warrants and the distribution thereof under the plan shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code. Section 5.4.1 of the DCL Plan further provides that the DCL Plan Proponents intend that Litigation Trust Interests issues pursuant to the DCL Plan shall not be "securities" under applicable laws.  To the extent such Litigation Trust Interests are determined to be securities, the Court finds that such securities are appropriately exempted from registration under section 1145 of the Bankruptcy Code and under applicable securities laws.[163]  The Court further finds that, without limiting the effect of section 1145 of the Bankruptcy Code, the DCL Plan appropriately provides for all documents, agreements, and instruments entered into on or as of the Effective Date contemplated by or in furtherance of the DCL Plan, including, without limitation, the Exit Facility Credit Agreement (if any), the New Senior Secured Term Loan Agreement (if any), and

---

[163] See DCL Plan § 5.4.1.

55

any other agreement entered into in connection the foregoing to become effective and binding in accordance with their respective terms and conditions upon the parties thereto.[164]

### c.    Termination Of ESOP.

98.    Section 6.8 of the DCL Plan provides that upon the Effective Date, the ESOP shall be deemed terminated in accordance with its terms, and the amount of unpaid principal and interest remaining on the ESOP Note dated April 1, 2007 shall be forgiven pursuant to Section 6.3 of the ESOP Loan Agreement by and between Tribune and GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust dated April 1, 2007.[165]  Because, among other things, existing common shares of Tribune will be discharged and cancelled pursuant to the DCL Plan, the Termination of the ESOP, as provided in Section 6.8 of the DCL Plan is a valid and appropriate exercise of the Debtors' business judgment and is hereby approved.  The right of the DCL Plan Proponents to seek the findings described in the second sentence of Section 6.8 of the DCL Plan is also preserved without prejudice pending further order of the Court.

### d.    Propriety Of Various Agreements And DCL Plan-Related Documents.

99.    After considering, among other things, the evidentiary record presented at the Confirmation Hearings, the Court finds that each of the agreements and transactions in connection with the implementation of the DCL Plan, as identified in Article V of the DCL Plan, and each of the other agreements and transactions contemplated by or referenced in the DCL Plan and the DCL Plan Supplement, is integral to the terms, conditions, and settlements contained in the DCL Plan and is critical to the effectuation of the purposes of the DCL Plan. All contracts, instruments, releases, agreements and documents related to, or necessary to implement, effectuate, and consummate, the DCL Plan, including, without limitation: (a) the

---

[164] See DCL Plan § 5.4.1.

[165] DCL Plan § 6.8.

Intercompany Claims Settlement; (b) the New Warrant Agreement; (c) the Certificate of

Incorporation of Reorganized Tribune; (d) the By-Laws of Reorganized Tribune; (e) the

Registration Rights Agreements; (f) the New Senior Secured Term Loan; (g) the Exit Facility, if

any; (h) the Trusts' Loan Agreement; (i) the Step Two/Disgorgement Settlement; (j) the Retiree

Claims Settlement; (k) the Litigation Trust Agreement; (l) each of the contracts, instruments,

agreements and documents to be executed and delivered in connection with the Restructuring

Transactions; and (m) the Debtors' ability to enter insurance policies providing tail coverage as

described in Section 11.6.1 of the DCL Plan, are valid, proper and reasonable under the

circumstances and due and sufficient notice thereof has been provided in connection with, among

other things, approval of the Disclosure Documents and the Confirmation Hearings.

## V.    RESOLUTION OF OBJECTIONS

100.    As presented at the Confirmation Hearings, the consensual resolution of certain

DCL Plan Objections satisfy all applicable requirements of the Bankruptcy Code and the

Bankruptcy Rules and are in the best interest of the Debtors and supported by the evidentiary

record. The objections of the following parties in interest shall be deemed resolved upon entry

of the Confirmation Order incorporating the corresponding language:[166]

---

[166] Certain of the DCL Plan Objections referenced in this Section V relate to objections filed in connection with the Second Amended Plan that were not renewed by the objecting parties in connection with the DCL Plan.  To the extent the DCL Plan Proponents and such objecting parties agreed to the incorporation of language in the Confirmation Order to consensually resolve such objections prior to the commencement of the 2011 Confirmation Hearing, such language shall be included in the Confirmation Order regardless of whether such party filed an objection to the DCL Plan.  See, e.g., Docket No. 8607 (Chart of Resolved and Unresolved Objections).

Two taxing authorities – the Internal Revenue Service (the "IRS") and Missouri Department of Revenue (the "MDOR") – have raised objections to the DCL Plan that are substantially similar, or identical, to the objections raised by such parties to the Second Amended Plan.  The State of Michigan, Department of Treasury ("MDOT") has also raised objections to the DCL Plan that are substantially similar to the objections raised by other taxing authorities to the Second Amended Plan.  The DCL Plan Proponents previously agreed with the IRS and MDOR to resolve their objections to the Second Amended Plan by incorporating language in the proposed Confirmation Order as set forth below.  The DCL Plan Proponents believe that their continued agreement to include that language in the Confirmation Order will likewise resolve the IRS's and MDOR's pending objections to the DCL Plan; however, as of the date of the filing of these Proposed Findings of Fact and Conclusions of Law, neither the IRS nor MDOR has confirmed that its objection is resolved.  Similarly, the DCL Plan Proponents believe that their agreement to include

- **Ace Companies, Zurich and Travelers**: "On the Effective Date, as a result of the inclusion of section 6.9 in the Plan, all proofs of claim asserted against any of the Debtors by (i) ACE American Insurance Company (on behalf of itself and its affiliates) (collectively, the "ACE Companies"), (ii) Zurich American Insurance Company ("Zurich"), and (iii) The Travelers Indemnity Company & Its Affiliates ("Travelers") shall be deemed withdrawn by the relevant claimant(s) without the need for further action by any of the Debtors, the ACE Companies, Zurich or Travelers, and the Court-appointed claims agent is authorized to modify the claims register in these cases to remove such claims from the claims register."

- **California Franchise Tax Board [and Internal Revenue Service]**[167]: "Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, an Administrative Expense Claim that is an expense under sections 503(b)(1)(B) and/or 503(b)(1)(C) of the Bankruptcy Code, including interest due thereon under applicable non-bankruptcy law, shall be timely paid in the ordinary course of business without the need of any governmental unit to file a request for payment of such Administrative Expense Claim or any other document, including a Proof of Claim."

- **California Franchise Tax Board[, Internal Revenue Service, and Missouri Department of Revenue]**[168]: "For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash."

- **California Franchise Tax Board, [Missouri Department of Revenue, Michigan Department of Treasury], and New York State Department of Taxation and Finance**[169]: "If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court."

- **Federal Communications Commission**: "No provision in the DCL Plan or this Order relieves the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC"). No transfer of control to the Reorganized Debtors of any federal license or

---

language in the Confirmation Order that resolved identical objections of other taxing authorities will likewise resolve MDOT's pending objections to the DCL Plan; however, as of the date of the filing of these Proposed Findings of Fact and Conclusions of Law, MDOT has not confirmed that its objection is resolved.

[167] See n.166, supra, regarding objection of IRS.

[168] See n.166, supra, regarding objections of IRS and MDOR.

[169] See n.166, supra, regarding objections of MDOR and MDOT.

authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized Debtors, including, but not limited to, imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law."

- Internal Revenue Service[170]:  "Nothing in the Plan or this Order is intended to, or shall, confer jurisdiction on the Bankruptcy Court to determine the tax consequences of the Plan or to determine the tax liability of a non-debtor beyond the jurisdiction permitted under applicable law."

- Internal Revenue Service[171]:  "Notwithstanding any provision to the contrary, nothing in the DCL Plan or this Confirmation Order shall affect the rights of the United States, including the Internal Revenue Service (1) from seeking, pursuant to applicable nonbankruptcy law, to assess or collect from any non-debtor person or entity that may be liable directly or indirectly for the Debtors' taxes, including but not limited to liability under 26 U.S.C. §§ 4975 & 6672, or (2) from assessing or collecting from the Debtor any taxes that the Bankruptcy Code renders nondischargeable."

- New York State Department of Taxation and Finance[and MDOT][172]:  "Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any implementing Plan document, nothing shall affect the rights of the New York State Department of Taxation and Finance[ or State of Michigan, Department of Treasury] to take action against non-debtor third parties who may be responsible for payment of prepetition and/or postpetition tax liabilities of any of the Debtors, and such rights are expressly reserved."

- Office of the United States Trustee:  "The Debtors and Reorganized Debtors will comply with their statutory obligations under 28 U.S.C. § 1930 and file post-confirmation reports to the extent required by law and, to the extent applicable, in accordance with any agreements reached between the Debtors and the United States Trustee during the chapter 11 cases with respect to such matters."

- United States Environmental Protection Agency:  "As to the United States, its agencies, departments or agents (collectively, the "United States"), nothing in this Confirmation Order or the Plan discharges, releases or precludes: (i) any environmental liability to the United States that is not a Claim; (ii) any environmental Claim of the United States arising on or after the Confirmation Date; (iii) any environmental liability to the United States on the part of any entity

---

[170] See n.166, supra, regarding objection of IRS.

[171] Id.

[172] See n.166, supra, regarding objection of MDOT.

as the owner or operator of real property  owned or operated after the Confirmation Date (provided, however, that nothing in this clause (iii) shall be construed to deny a discharge, release or preclusion of any Claim with respect to such real property for: (a) response costs, oversight costs or other monetary costs incurred prior to the Confirmation Date or (b) penalties for all days of alleged violation of law prior to the Confirmation Date; or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtors.  Nor shall anything in this Order or the Plan enjoin or otherwise bar the United States from asserting or enforcing, outside this Court, any liability described in this paragraph.

Notwithstanding any other provision in this Order or the Plan, the Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by the United States are discharged or otherwise barred by this Order, the Plan or the Bankruptcy Code."

- Warren Beatty:  "The DCL Plan, the DCL Plan Supplement, any document filed in connection with the DCL Plan or the confirmation thereof, or the DCL Plan Confirmation Order (the "DCL Plan and Confirmation Documents") do not purport to affect, impair, or otherwise alter such rights as Warren Beatty ("Mr. Beatty") may otherwise have in or to certain motion picture, television, and related rights in the Dick Tracy character arising from an August 28, 1985 agreement between Mr. Beatty and Debtor Tribune Media Services, Inc. (each, if any, the "Dick Tracy Rights"); provided, further, that nothing in the DCL Plan and Confirmation Documents purports to in any way modify or alter and shall not be deemed to modify or alter the following Bankruptcy Court orders: (i) Order denying Motion to Dismiss Adversary Proceeding, dated November 9, 2009, Case No. 08-13141 (KJC) (Bankr. D. Del. 2008) (Docket No. 2535) and (ii) Stipulated Order Staying Adversary Proceeding, dated December 23, 2009, Case No. 09-50486 (KJC) (Bankr. D. Del. 2009) (Adv. Proc. No. 42).  All of Mr. Beatty's rights, interests, and remedies in and to the Dick Tracy Rights, if any, are expressly reserved and are not waived, modified, impaired, or otherwise altered by the DCL Plan and Confirmation Documents."

101.    The Court finds and determines that all other DCL Plan Objections that were not resolved by agreement in connection with the Confirmation Hearings and not otherwise specifically addressed herein are hereby overruled.

## VI.    CONCLUSION

102.    For the reasons set forth above, the Court will enter an order contemporaneously herewith confirming the DCL Plan.

Dated: Wilmington, Delaware

June 1, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.

_____/s/ Patrick J. Reilley_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

*Counsel for Debtors and Debtors in Possession and
Certain Non-Debtor Affiliates*

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telecopier: (212) 541-5369

-and-

LANDIS RATH & COBB LLP

_____/s/ Matthew B. McGuire_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telecopier: (302) 467-4450

-and-

ZUCKERMAN SPAEDER LLP
Graeme W. Bush
James Sottile
1800 M Street, N.W., Suite 1000
Washington, D.C.  20036
Telecopier:  (202) 822-8106

*Counsel for the Official Committee of Unsecured
Creditors*

JONES DAY
Bruce Bennett
James O. Johnston
Joshua M. Mester
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telecopier:  (213) 621-6100

-and-

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

_____/s/ M. Blake Cleary_____
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 571-1253

*Counsel For Oaktree Capital Management, L.P.
and Angelo, Gordon & Co., L.P.*

WILMER CUTLER PICKERING HALE &
DORR LLP
Andrew Goldman
399 Park Avenue
New York, New York 10022
Telecopier:  (212) 230-8888

*Co-Counsel For Angelo, Gordon & Co, L.P.*

DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Benjamin S. Kaminetzky
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telecopier:  (212) 701 5800

-and-

RICHARDS LAYTON & FINGER

_____ */s/ Drew G. Sloan* _____
Mark Collins (No. 2981)
Robert J. Stearn (No. 2915)
Drew G. Sloan (No. 5069)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telecopier: (302) 651-7701
*Counsel For JPMorgan Chase Bank, N.A.*

## APPENDIX A

List of objections to Fourth Amended Joint Plan of Reorganization for Tribune Company and Its
Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree
Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Change Bank N.A.
[Docket No. 11399]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**LIST OF OBJECTIONS TO CONFIRMATION OF FOURTH AMENDED JOINT PLAN
OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P.,
ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.**

1.  The State of Michigan, Department of Treasury's Objection to the Fourth Amended Plan of Reorganization for the Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo. Gordon & Co. L.P., and JPMorgan Chase Bank, NA (Filed May 21, 2012) (Docket No. 11652)

2.  The United States' Objection to Fourth Amended Joint Plan of Reorganization (Filed May 21, 2012) (Docket No. 11653)

3.  Missouri Department of Revenues Objection to Confirmation of Debtors' Fourth Amended Joint Plan of Reorganization (Filed May 21, 2012) (Docket No. 11656)

4.  Objection of Certain Former Directors and Officers to Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Filed May 21, 2012) (Docket No. 11657)

5.  EGI-TRB LLC's Objection to Confirmation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo Gordon & Co., and JPMorgan Chase Bank N.A. (Filed May 21, 2012) (Docket No. 11658)

6.  Objection of Citadel Equity Fund Ltd. and Camden Asset Management LP to Confirmation of Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Filed May 21, 2012) (Docket No. 11659)

7.    Limited Objection of Former Tribune Company Employees F. Ashley Allen, Catherine M. Hertz, Michael D. Slason, and Louis J. Stancampiano to Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Filed May 21, 2012) (Docket No. 11661)

8.    Objection of Aurelius Capital Management, LP to Confirmation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Filed May 21, 2012) (Docket No. 11664)

Related Documents:

(a)    Statement of Robert R. McCormick Tribune Foundation and Cantigny Foundation in Response to Objection of Aurelius Capital Management, LP to Confirmation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Filed May 31, 2012) (Docket No. 11725)

(b)    Certain Directors' and Officers' Reply to the Objection of Aurelius Capital Management, LP to Confirmation of the Fourth Amended Joint Plan of Reorganization (Docket No. 11739)

(c)    Certain Directors' and Officers' Joinder to the Statement of the Robert R. McCormick Tribune and Cantigny Foundations (Docket No. 11740)

9.    Objection of Wilmington Trust Company, as Successor Indenture Trustee for the PHONES Notes, to the Fourth Amended Joint Debtor/Committee/Lender Plan (Filed May 21, 2012) (Docket No. 11666)

10.    Objection of Deutsche Bank Trust Company Americas, in its Capacity as Successor Indenture Trustee, to Confirmation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (Filed May 21, 2012) (Docket No. 11667)

11.    Objection of Law Debenture Trust Company of New York to Confirmation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (Filed May 21, 2012) (Docket No. 11668)

12.    Limited Joinder of TM Retirees with Respect to Objections Filed by Deutsche Bank Trust Company Americas and Wilmington Trust Company to Fourth Amended DCL Plan (Filed May 30, 2012) (Docket No. 11720)

2