**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ———————————————————————— ) | Chapter 11 |
| In re:                                                                      ) | |
|                                                                               ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*,                                ) | |
|                                                                               ) | Jointly Administered |
|                                              Debtors.       ) | |
|                                                                               ) | Re:  Dkt. Nos. 7801 & 7127 |
|                                                                               ) | |
| ———————————————————————— ) | |

**EGI-TRB LLC'S OBJECTION TO CONFIRMATION OF (A) THE SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO GORDON & CO., AND JPMORGAN CHASE BANK N.A. AND (B) THE JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES AND WILMINGTON TRUST COMPANY, IN ITS <u>CAPACITY AS INDENTURE TRUSTEE FOR THE PHONES NOTES</u>**

EGI-TRB LLC ("EGI-TRB") respectfully submits this Objection to confirmation of the Second Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries filed by the Debtors and certain other creditors (the "Debtors' Plan," Doc. 7801), and the Joint Plan filed by Aurelius Capital Management, LP and certain creditors (the "Aurelius's Plan," Doc. 7127) and states as follows in support:

**INTRODUCTION**

A central feature of both the Debtors' Plan and Aurelius's Plan is the wholesale assignment of causes of action to a litigation trust without consideration of whether the assigned claims have merit or whether it is in the best interests of creditors and the Debtors' estates to fund the pursuit of those claims without regard to the likelihood of

obligation to target defendants, who are or may also beneficiaries of the trusts, coupled with Aurelius's control over these boards, impermissibly removes any constraints on Aurelius's board members from doing anything other than pursuing every conceivable cause of action without regard to the merits of the claims.  This provision also renders Aurelius's Plan objectionable under 11 U.S.C. §1129(a)(5)(A)(ii).

• The Debtors' Plan does not establish the compensation to be paid to the trustees of the Litigation and Creditor Trusts.  The Debtors' Plan provides that such compensation will be as set forth in the litigation trust and creditor trust Agreements. (Debtors' Plan at §§13.3.5; 14.4.5.)  The trust agreements, however, place no parameters on the compensation or bankruptcy court oversight and simply provide that the trustees will receive the compensation approved by the respective trust advisory boards.  (Debtors' Plan Supplement, Attachment K, §3.11;  Attachment L, §3.10.)

• Neither the Debtors' Plan nor Aurelius's Plan provide for any Bankruptcy Court oversight or notice to beneficiaries of the retention of professionals by the litigation or creditor trust.  (Debtors' Plan at §§13.3.4; 14.4.4; Aurelius's Plan at §§5.17.6(ii); 5.18.7(ii); 7.16.6(a)(ii).) Thus, there will be no check on professional compensation.

## VI.    The Debtors' Plan Impermissibly Rewards The Bridge Lenders To Obtain Their Support For The Debtors' Plan Rendering The Debtors' Plan Unconfirmable.

Finally, the Debtors' Plan impermissibly proposes to pay the Bridge Lenders up to $8 million for their professional fees and expenses incurred during the pendency of the Debtors' bankruptcy cases, without any oversight from this or any other Court.  (Debtors' Plan at §9.1.2).  The Debtors' generosity, however, comes with an important condition: for their $8 million potential payment, the Bridge Lenders must "support[] the [the Debtors'] Plan, [and] take[] no action inconsistent with confirmation of the [Debtors'] Plan . . . and vote[] all Bridge Loan Claims held by them to accept the [Debtors'] Plan . . . ." (Id.)[6]  In short, the proponents of the Debtors' Plan seek to entice the Bridge Lenders into supporting their Plan by offering them something that they would not

---

[6] Consistent this provision of the Debtors' Plan, the Bridge Lenders withdrew their own Plan of Reorganization on February 7, 2011.  (Doc. 7821.)

otherwise be entitled to receive under the Bankruptcy Code.  Doing so, however, renders the Debtors' Plan unconfirmable.  *E.g.*, *In re Quigley Co.*, 437 B.R. 102, 131-32 (Bankr. S.D.N.Y. 2010) (denying confirmation where creditor paid other creditors outside of the plan of reorganization and conditioned payment on acceptance of plan); *In re Cook*, 69 B.R. 235, 236-37 (Bankr. W.D. Mo. 1986) (rejecting plan where debtor offered legally unsupportable priority payment for acceptance of debtor's plan).

Debtors' Plan provides no justification for this proposal.  This is unsurprising—the law is clear that unsecured creditors such as the Bridge Lenders are not entitled to reimbursement for post-petition fees and expenses.  *See, e.g.*, *In re FINOVA Group, Inc.*, 304 B.R. 630, 638 (D. Del. 2004); *In re Loewen Group Intern., Inc.*, 274 B.R. 427, 444 (Bankr. D. Del. 2002) ("Thus, like post-petition interest, post-petition fees and costs may only be recovered by creditors to the extent theirs claims are oversecured."); *In re Pride Companies, L.P.*, 285 B.R. 366, 372 (Bankr. N.D. Tex. 2002) (collecting cases). Likewise, a creditor also may not attempt to recover fees and expenses incurred in pursuing an alternative plan or reorganization because such an effort is primarily done in the interest of that particular creditor and not the estate generally.  *In re Aspen Limousine Serv., Inc.*, 193 B.R. 325, 336 (D. Colo. 1996) ("[The creditor] was acting in its own interest in objecting to the [Debtor's] plan and furthering its competing plan. The attorney fees and expenses incurred in doing so should therefore be paid by [the creditor]").  In short, the Debtors have offered the Bridge Lenders substantial benefits under the Debtors' Plan that they would not otherwise be entitled to receive under the Bankruptcy Code.  Therefore, the Debtors' Plan cannot be confirmed.

**CONCLUSION**

For all of the foregoing reasons, EGI-TRB respectfully requests that confirmation

of both Plans be denied and that the Court grant such other relief as may be just.

Dated: February 15, 2011

Respectfully submitted

By:    /s/ *David W. Carickhoff*
       David W. Carickhoff (DE No. 3715)
       BLANK ROME LLP
       1201 Market Street, Suite 800
       Wilmington, DE 19801
       Telephone: (302) 425-6400
       Facsimile: (302) 425-6464

              and

       David J. Bradford (admitted *pro hac vice)*
       Catherine L. Steege (admitted *pro hac vice*)
       Andrew W. Vail (admitted *pro hac vice*)
       JENNER & BLOCK LLP
       353 N. Clark St.
       Chicago, IL 60654
       Telephone: (312) 222-9350
       Facsimile: (312) 527-04844

       *Counsel for EGI-TRB, LLC*