# EXHIBIT 4(a)

**Litigation Trust Loan Agreement**

46429/0001-8625350v1

**DRAFT 6/18/12**

CREDIT AGREEMENT

dated as of **[_____]**

among

**[**LITIGATION TRUST**]**
as Borrower,

and

TRIBUNE COMPANY,
as Lender

CH1 6829306v.1

**TABLE OF CONTENTS**

Page

SECTION 1. DEFINITIONS; INTERPRETATION ........................................................................ 1
    1.1. Definitions ............................................................................................................. 1
    1.2. Interpretation ......................................................................................................... 2
SECTION 2. TERM LOAN FACILITY ........................................................................................ 3
    2.1. Term Loan Commitment ....................................................................................... 3
    2.2. Loan Accounting ................................................................................................... 3
    2.3. Non-Interest Bearing Obligations ......................................................................... 3
    2.4. Maturity Date ........................................................................................................ 3
    2.5. Voluntary Prepayment .......................................................................................... 3
    2.6. Application of Net Litigation Trust Proceeds ....................................................... 3
    2.7. Funding of Expense Fund ..................................................................................... 4
    2.8. . Under no circumstances shall the Expense Fund be funded with proceeds from the Term Loan. ................................................................................................................... 4
SECTION 3. CONDITIONS PRECEDENT .................................................................................. 4
    3.1. Term Loan.  The obligation of Lender to make the Term Loan is subject to the following conditions precedent: ..................................................................................... 4
SECTION 4. REPRESENTATIONS AND WARRANTIES ........................................................ 4
    4.1. Organization .......................................................................................................... 4
    4.2. Validity; Binding Nature ....................................................................................... 4
    4.3. Confirmation Order ............................................................................................... 4
SECTION 5. AFFIRMATIVE COVENANTS .............................................................................. 4
    5.1. Maintenance of Existence ..................................................................................... 4
    5.2. Compliance with Laws; Payment of Taxes and Liabilities .................................. 4
    5.3. Books and Records ............................................................................................... 5
    5.4. Use of Proceeds .................................................................................................... 5
    5.5. Further Assurances ................................................................................................ 5
SECTION 6. NEGATIVE COVENANTS ..................................................................................... 5
    6.1. Debt ....................................................................................................................... 5
    6.2. Liens ...................................................................................................................... 5
    6.3. Mergers; Consolidations ....................................................................................... 5
    6.4. Modification of Organizational Documents ......................................................... 5
    6.5. Subsidiaries ........................................................................................................... 5
    6.6. Expense Fund ........................................................................................................ 5
SECTION 7. EVENTS OF DEFAULT; REMEDIES ................................................................... 5
    7.1. Events of Default .................................................................................................. 5
    7.2. Remedies ............................................................................................................... 6
    7.3. No Recourse .......................................................................................................... 6
SECTION 8. MISCELLANEOUS .................................................................................................. 6
    8.1. Amendments ......................................................................................................... 6
    8.2. Notices .................................................................................................................. 6
    8.3. Costs; Expenses .................................................................................................... 7
    8.4. Indemnification by Borrower ............................................................................... 7
    8.5. Payments Set Aside .............................................................................................. 7
    8.6. Captions ................................................................................................................ 7
    8.7. Nature of Remedies .............................................................................................. 7
    8.8. Counterparts .......................................................................................................... 7
    8.9. Severability ........................................................................................................... 7
    8.10. Entire Agreement .................................................................................................. 7

8.11. Successors; Assigns ........................................................................................................ 8
8.12. Governing Law ........................................................................................................... 8
8.13. Forum Selection; Consent to Jurisdiction .................................................................. 8
8.14. Waiver of Jury Trial ................................................................................................... 8
8.15. Survival ...................................................................................................................... 8
8.16. Termination ................................................................................................................ 9

Exhibits

Exhibit A            Addresses

# CREDIT AGREEMENT

CREDIT AGREEMENT dated as of **[_____]** (as amended, restated, supplemented or otherwise modified from time to time, this "Agreement") among **[**Litigation Trust**]**, a [Delaware statutory trust] ("Borrower"), and Tribune Company, a Delaware corporation ("Tribune Company" or "Lender").

In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

**SECTION 1.   DEFINITIONS; INTERPRETATION**.

    1.1.   Definitions.   When used herein the following terms shall have the following meanings:

Agreement has the meaning set forth in the Preamble.

Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware.

Borrower has the meaning set forth in the Preamble.

Business Day means any day other than a Saturday, Sunday or other day on which banks in Chicago, Illinois and New York, New York are authorized or required by law to close.

Certificate of Trust means the Certificate of Trust of Borrower dated **[_____]**.

Confirmation Order has the meaning set forth in the Plan.

Debt of any Person means, without duplication all indebtedness of such Person for borrowed money.

Default means the occurrence or existence of any one or more of the events described in Section 7.1, which, if continued uncured, would with the passage of time or the giving of notice or both, constitute an Event of Default.

Dollar and $ mean lawful money of the United States of America.

Effective Date has the meaning set forth in the Plan.

Eligible Costs and Expenses means the reasonable and documented costs and expenses of Borrower in connection with pursuing the Litigation Trust Assets, administering Borrower, managing the Litigation Trust Assets and distributing the Net Litigation Trust Proceeds in accordance with this Agreement and the Litigation Trust Agreement.

Event of Default means any of the events described in Section 7.1.

Expense Fund has the meaning set forth in the Litigation Trust Agreement.

FRB means the Board of Governors of the Federal Reserve System or any successor thereto.

GAAP means generally accepted accounting principles in the United States of America.

Lender has the meaning set forth in the Preamble.

Lender Party has the meaning set forth in Section 8.4.

-1-

Lien means, with respect to any Person, any interest granted by such Person (or any interest imposed by law) in any real or personal property, asset or other right owned or being purchased or acquired by such Person which secures payment or performance of any obligation and shall include any mortgage, lien, encumbrance, charge or other security interest of any kind, whether arising by contract, as a matter of law, by judicial process or otherwise.

Litigation Trust Agreement means that certain Litigation Trust Agreement dated as of [_____], among the Trustee and Tribune Company, on behalf of itself and the other Debtors and Reorganized Debtors (as such terms are defined in the Plan).

Litigation Trust Assets has the meaning set forth in the Plan.

Litigation Trustee has the meaning set forth in the Litigation Trust Agreement.

Maturity Date means the date of dissolution of Borrower in accordance with Section 9.1 of the Litigation Trust Agreement.

Net Litigation Trust Proceeds has the meaning set forth in the Plan.

Obligations means all liabilities, indebtedness and obligations (monetary or otherwise) of Borrower under this Agreement or any other document or instrument executed in connection herewith, in each case howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due.

Permitted Liens means the following encumbrances: (a) Liens for taxes or assessments or other governmental charges not yet due and payable or which are being contested in accordance with Section 5.2, (b) deposits securing, or in lieu of, surety, appeal or customs bonds in proceedings to which Borrower is a party and (c) Liens on any deposit accounts in favor of the financial institutions at which such accounts are held in respect of customary fees and expenses or otherwise arising by operation of law.

Person means any natural person, corporation, partnership, trust, limited liability company, association, governmental authority or unit, or any other entity, whether acting in an individual, fiduciary or other capacity.

Plan means the Fourth Amended Joint Plan of Organization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank N.A.

Term Loan has the meaning set forth in Section 2.1.

Term Loan Commitment means $20,000,000.

Tribune Company has the meaning set forth in the Preamble.

Trustee means the Litigation Trustee and any successor Litigation Trustee appointed pursuant to the Plan and the Litigation Trust Agreement.

  1.2. Interpretation.  In the case of this Agreement, (a) the meanings of defined terms are equally applicable to the singular and plural forms of the defined terms; (b) Annex, Exhibit, Schedule and Section references are to this Agreement unless otherwise specified; (c) the term "including" is not limiting and means "including but not limited to"; (d) in the computation of periods of time from a

specified date to a later specified date, the word "from" means "from and including"; the words "to" and "until" each mean "to but excluding", and the word "through" means "to and including"; (e) unless otherwise expressly provided in this Agreement, (i) references to agreements and other contractual instruments shall be deemed to include all subsequent amendments, restatements and other modifications from time to time made thereto, but only to the extent such amendments, restatements and other modifications are not prohibited by the terms of this Agreement, and (ii) references to any statute or regulation shall be construed as including all statutory and regulatory provisions amending, replacing, supplementing or interpreting such statute or regulation.

**SECTION 2.   TERM LOAN FACILITY**.

2.1.   Term Loan Commitment.  On and subject to the terms and conditions of this Agreement, Lender agrees to make a loan to Borrower (the "Term Loan") on the Effective Date in an amount equal to the Term Loan Commitment.  Amounts of the Term Loan that are repaid or prepaid by Borrower, in whole or in part, may not be reborrowed.

2.2.   Loan Accounting.  Lender shall record in its records the date and amount of each repayment of the Term Loan.  The aggregate unpaid principal amount so recorded shall be rebuttably presumptive evidence of the principal amount of the Term Loan owing and unpaid.  The failure to so record any such amount or any error in so recording any such amount shall not, however, limit or otherwise affect the Obligations of Borrower hereunder to repay the principal amount of the Term Loan hereunder.

2.3.   Non-Interest Bearing Obligations.  The Obligations shall be non-interest bearing.

2.4.   Maturity Date.  The Term Loan shall be repaid in full on the Maturity Date.

2.5.   Voluntary Prepayment.  Borrower may from time to time, on at least one Business Day's written notice to Lender not later than 1:00 p.m. Chicago time on such day, prepay the Term Loan in whole or in part.  Such notice to Lender shall specify the date and amount of prepayment.

2.6.   Application of Net Litigation Trust Proceeds.  All Net Litigation Trust Proceeds received by Borrower shall be held by Borrower and applied in accordance with this Section 2.6.  On the last Business Day of each calendar quarter, all Net Litigation Trust Proceeds then held by Borrower shall be applied by Borrower in the following order of priority; provided, that, on each such date, the Expense Fund has a balance of at least $25 million in cash and will maintain such a balance after the making of any such distribution:

(i)   *first*, to payment of the Parent GUC Trust Preference (as defined in the Plan);

(ii)   *second*, the excess, if any, to repayment of outstanding principal of the Term Loan and any other amounts owing under this Agreement (including, without limitation, reimbursement of costs and expenses pursuant to Section 8.3);

(iii)   *third*, the excess, if any, to be used by the Borrower as it deems appropriate and in accordance with the Litigation Trust Agreement.

2.7. <u>Funding of Expense Fund</u>.  Under no circumstances shall the Expense Fund be funded with proceeds from the Term Loan.

**SECTION 3.    CONDITIONS PRECEDENT**.

3.1. <u>Term Loan</u>.  The obligation of Lender to make the Term Loan is subject to the following conditions precedent:

(a) <u>Confirmation of the Plan</u>.  The Plan shall have been confirmed by the Bankruptcy Court pursuant to the Confirmation Order, and the "Effective Date" (as defined in the Plan) shall have occurred on or prior to the date hereof; and

(b) <u>Delivery of Documents</u>.  Borrower shall have delivered the following documents in form and substance satisfactory to Lender:

(i) <u>Agreement</u>.  This Agreement; and

(ii) <u>Authorization Documents</u>.  For Borrower, the fully-executed Litigation Trust Agreement.

3.1.2. <u>Representations and Warranties</u>.  The representations and warranties of Borrower set forth in this Agreement shall be true and correct in all material respects; and

3.1.3. <u>No Event of Default</u>.  No Event of Default shall have then occurred and be continuing.

**SECTION 4.    REPRESENTATIONS AND WARRANTIES**.  To induce Lender to enter into this Agreement and to induce Lender to make the Term Loan, Borrower represents and warrants to Lender that:

4.1. <u>Organization</u>.  Borrower is a [statutory trust validly existing and in good standing under the laws of the State of Delaware].

4.2. <u>Validity; Binding Nature</u>.  This Agreement is the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms, subject to bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity.

4.3. <u>Confirmation Order</u>.  The Confirmation Order has been entered by the Bankruptcy Court, is not subject to any applicable stay, is in full force and effect and has not been stayed, reversed, rescinded, vacated, modified or amended.

**SECTION 5.    AFFIRMATIVE COVENANTS**.  Until the principal of the Term Loan and all other amounts payable hereunder shall have been paid in full, Borrower agrees that it will:

5.1. <u>Maintenance of Existence</u>.  Maintain and preserve its existence and good standing as a [statutory trust in the State of Delaware].

5.2. <u>Compliance with Laws; Payment of Taxes and Liabilities</u>.  (a) Comply in all material respects with all applicable laws, rules, regulations, decrees, orders, judgments, licenses and permits and (b) pay, prior to delinquency, all taxes and other governmental charges against it or any of its property, as well as claims of any kind which, if unpaid, could become a Lien on any of its property; provided that the foregoing shall not require Borrower to pay any such tax or charge so long as it shall

contest the validity thereof in good faith by appropriate proceedings and shall set aside on its books adequate reserves with respect thereto in accordance with GAAP.

       5.3.   <u>Books and Records</u>.  Keep its books and records in accordance with sound business practices.

       5.4.   <u>Use of Proceeds</u>.  Keep the proceeds of the Term Loan segregated from the Expense Fund, use the proceeds of the Term Loan solely to pay Eligible Costs and Expenses, and pay Eligible Costs and Expenses exclusively with the proceeds of the Term Loan until all such proceeds shall have been so used.

       5.5.   <u>Further Assurances</u>.  Upon request of Lender, duly execute and deliver, or cause to be duly executed and delivered, to Lender such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Lender to carry out more effectively the provisions and purposes of this Agreement.

**SECTION 6.**   **NEGATIVE COVENANTS**.  Until the principal of the Term Loan and all other amounts payable hereunder shall have been paid in full, Borrower agrees that it will:

       6.1.   <u>Debt</u>.  Not create, incur, assume or suffer to exist any Debt, except (a) Obligations under this Agreement and (b) any Debt incurred by Borrower that is subordinated in right and time of payment to the Obligations either (i) on terms and conditions reasonably satisfactory to Lender or (ii) as approved pursuant to an order of the Bankruptcy Court.

       6.2.   <u>Liens</u>.  Not create or permit to exist any Lien on any of its properties or assets (whether now owned or hereafter acquired), except Permitted Liens.

       6.3.   <u>Mergers; Consolidations</u>.  Not be a party to any merger or consolidation.

       6.4.   <u>Modification of Organizational Documents</u>.

(a) Not permit the Certificate of Trust to be amended, modified or waived in a manner adverse to the Lender.

(b) Not permit the Litigation Trust Agreement to be amended, modified or waived except in accordance with the provisions of Article 10 thereof.

       6.5.   <u>Subsidiaries</u>.  Not establish or acquire any Subsidiary.

       6.6.   <u>Expense Fund</u>.  Not draw down on the Expense Fund to pay any Eligible Costs and Expenses unless the full proceeds of the Term Loan shall have been used by Borrower to pay Eligible Costs and Expenses.

**SECTION 7.**   **EVENTS OF DEFAULT; REMEDIES**.

       7.1.   <u>Events of Default</u>.  Each of the following shall constitute an Event of Default under this Agreement:

(a) <u>Failure to Comply with Waterfall</u>. Failure of Borrower to hold and apply any Net Litigation Trust Proceeds in accordance with Section 2.6 and such failure shall continue for 5 consecutive Business Days following receipt of written inquiry from the Lender.

(b) <u>Bankruptcy; Insolvency</u>.  Borrower generally fails to pay, or admits in writing its inability or refusal to pay, debts as they become due; or Borrower applies for, consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for Borrower or any property thereof, or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for Borrower or for a substantial part of the property of any thereof and is not discharged within 30 days; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is commenced in respect of Borrower, and if such case or proceeding is not commenced by Borrower, it is consented to or acquiesced in by Borrower, or remains for 30 days undismissed; or Borrower takes any action to authorize, or in furtherance of, any of the foregoing.

(c) <u>Non-Compliance with Agreement</u>.  (i) Failure by Borrower to comply with or to perform any covenant set forth in <u>Sections 5.1</u>, <u>5.4</u>, or <u>6</u> or (ii) failure by Borrower to comply with or to perform any other provision of this Agreement applicable to it (and not constituting an Event of Default under any other provision of this <u>Section 7.1</u>) and continuance of such failure described in this <u>clause (ii)</u> for 30 days.

(d) <u>Representations; Warranties</u>.  Any representation or warranty made by Borrower herein is breached or is false in any material respect when made, and such failure shall result in a material impairment of the ability of Borrower to perform its obligations hereunder.

(e) <u>Failure to Comply With Litigation Trust Agreement or Plan</u>.  Failure by Borrower to comply in any material respect with the Litigation Trust Agreement or the Plan, as determined by the Bankruptcy Court, and such failure shall continue unremedied for a period of 30 days.

(f) <u>Agreement</u>.  Borrower shall repudiate or deny in writing any portion of its liability or obligations for the Obligations.

7.2.    <u>Remedies</u>.  If any Event of Default described in Section 7.1(b) shall occur, the Term Loan and all other Obligations shall become immediately due and payable, all without presentment, demand, protest or notice of any kind; and, if any other Event of Default shall occur and be continuing, Lender may declare all or any part of the Term Loan and other Obligations to be due and payable, whereupon the Term Loan and other Obligations shall become immediately due and payable (in whole or in part, as applicable), all without presentment, demand, protest or notice of any kind.  Lender shall promptly advise Borrower of any such declaration, but failure to do so shall not impair the effect of such declaration.

7.3.    <u>No Recourse</u>.  Lender shall have no recourse to Trustee or any beneficiary of Borrower for repayment of the Term Loan or any other Obligation, it being understood and agreed that the Lender's sole source of repayment of the Term Loan and all other Obligations shall be the application of the Net Litigation Trust Proceeds in accordance with <u>Section 2.6</u>.

**SECTION 8.    MISCELLANEOUS**.

8.1.    <u>Amendments</u>.  No amendment, modification or waiver of, or consent with respect to, any provision of this Agreement shall in any event be effective unless the same shall be in writing and approved by Lender and Borrower.

8.2.    <u>Notices</u>.  All notices hereunder shall be in writing (including facsimile or electronic mail transmission) and shall be sent to the applicable party at its address shown on <u>Exhibit A</u> or at such other address as such party may, by written notice received by the other parties, have designated

as its address for such purpose.  Notices sent by facsimile transmission or electronic mail shall be deemed to have been given when sent; notices sent by mail shall be deemed to have been given three Business Days after the date when sent by registered or certified mail, postage prepaid; and notices sent by hand delivery or overnight courier service shall be deemed to have been given when received.

        8.3.    <u>Costs; Expenses</u>.  Borrower agrees to pay promptly following demand by Lender all reasonable out-of-pocket costs and expenses of Lender (including the reasonable fees, charges and disbursements of counsel) in connection with Lender's enforcement of its rights and remedies under this Agreement upon an Event of Default.

        8.4.    <u>Indemnification by Borrower</u>.  Borrower hereby agrees to indemnify and hold harmless Lender and each of the officers, directors, employees, advisors and agents of Lender (each a "<u>Lender Party</u>") free and harmless from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses, including the reasonable fees, charges and disbursements of counsel (collectively, the "<u>Indemnified Liabilities</u>"), solely incurred by Lender Parties or any of them as a result of, or arising out of, or relating to the enforcement of this Agreement by the Lender Parties; <u>provided</u>, that the foregoing indemnification shall not apply in the event that the Bankruptcy Court or other court of competent jurisdiction finds that such Lender Parties were not entitled to indemnification under the terms of this Agreement.

        8.5.    <u>Payments Set Aside</u>.  To the extent that Borrower makes a payment or payments to Lender and such payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by Lender in its discretion) to be repaid to a trustee, receiver or any other party in connection with any bankruptcy, insolvency or similar proceeding, or otherwise, then to the extent of such recovery, the obligation hereunder or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made.

        8.6.    <u>Captions</u>.  Captions used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

        8.7.    <u>Nature of Remedies</u>.  All Obligations of Borrower and rights of Lender expressed herein shall be in addition to and not in limitation of those provided by applicable law.  No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

        8.8.    <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same Agreement.  Receipt by telecopy or electronic transmission of any executed signature page to this Agreement shall constitute effective delivery of such signature page.

        8.9.    <u>Severability</u>.  The illegality or unenforceability of any provision of this Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement or any instrument or agreement required hereunder.

        8.10.    <u>Entire Agreement</u>.  This Agreement embodies the entire agreement and understanding among the parties hereto and supersedes all prior or contemporaneous agreements and understandings of such Persons, verbal or written, relating to the subject matter hereof and thereof.

       8.11. <u>Successors; Assigns</u>. This Agreement shall be binding upon Borrower and Lender and their respective successors and assigns, and shall inure to the benefit of Borrower and Lender and the successors and assigns of Borrower and Lender. No other Person shall be a direct or indirect legal beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement. No party hereto may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the other party hereto, except that Lender may without the consent of Borrower pledge or grant a security interest in its rights under this Agreement to secure the obligations of Lender.

       8.12. <u>Governing Law</u>. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK (INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK BUT OTHERWISE WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF).

       8.13. <u>Forum Selection; Consent to Jurisdiction</u>. ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT, SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE. BORROWER FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS BY REGISTERED MAIL, POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE OF DELAWARE. BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

       8.14. <u>Waiver of Jury Trial</u>. EACH OF BORROWER AND LENDER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT, AND ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY LENDING RELATIONSHIP EXISTING IN CONNECTION WITH ANY OF THE FOREGOING, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

       8.15. <u>Survival</u>. All covenants, agreements, representations and warranties made by Borrower in this Agreement and in the certificates or other instruments delivered in connection with or pursuant to this Agreement shall be considered to have been relied upon by Lender and shall survive the execution and delivery of this Agreement and the making of the Term Loan, regardless of any investigation made by Lender or on its behalf and notwithstanding that Lender may have had notice or knowledge of any Default or Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of the Term Loan or other amount payable under this Agreement is outstanding and unpaid. The provisions of <u>Section 8.4</u> shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Term Loan, the expiration or termination of the Term Loan Commitment or the termination of this Agreement or any provision hereof solely to the extent of any actions commenced prior to or pending at the time of such repayment, expiration or termination, as applicable, for which Section 8.4 applies.

8.16. <u>Termination</u>.  Upon repayment of the principal amount of the Term Loan and all other Obligations then due and owing at the time of such repayment, this Agreement shall terminate without any further action by Lender, Borrower or any other Person.

**[**Signature Page Follows**]**

The parties hereto have caused this Agreement to be duly executed and delivered by their duly authorized officers as of the date first set forth above.

**[LITIGATION TRUST]**, as Borrower

By:_____
Name:
Title:

TRIBUNE COMPANY, as Lender

By:_____
Name:
Title: