**EXHIBIT 4(b)**

**Cumulative blackline that compares the Revised Litigation Trust Loan Agreement to the Litigation Trust Loan Agreement that was filed on June 1, 2012**
**[Docket No. 11745]**

46429/0001-8625350v1

CREDIT AGREEMENT

dated as of [_____]

among

[LITIGATION TRUST]
as Borrower,

and

TRIBUNE COMPANY,
as Lender

# TABLE OF CONTENTS

Page

**SECTION 1.  DEFINITIONS; INTERPRETATION** .......................................................................... 1
    1.1.  Definitions ................................................................................................................. 1
    1.2.  Interpretation ............................................................................................................. ~~3~~2
**SECTION 2.  ~~DELAYED DRAW~~ TERM LOAN FACILITY** ...................................................... 3
    2.1.  Term Loan Commitment ........................................................................................... 3
    2.2.  Loan ~~Procedures~~ ....................................................................................................... 3
    ~~2.3.  Loan~~ Accounting ...................................................................................................... 3
    ~~2.4.~~2.3.  Non-Interest Bearing Obligations ............................................................................ ~~4~~3
    ~~2.5.~~2.4.  Maturity Date ........................................................................................................... ~~4~~3
    ~~2.6.~~2.5.  Voluntary Prepayment .............................................................................................. ~~4~~3
    ~~2.7.  Monthly~~2.6.  Application of Net Litigation Trust Proceeds .......................................... ~~4~~3
    2.7.  Funding of Expense Fund ......................................................................................... 4
    2.8.  . Under no circumstances shall the Expense Fund be funded with proceeds from the Term Loan. ................................................................................................................. 4
**SECTION 3.  CONDITIONS PRECEDENT** ............................................................................... 4
    3.1.  ~~Initial~~ Term Loan. The obligation of Lender to make the Term Loan is subject to the following conditions precedent: ................................................................................. 4
    ~~3.2.  All Term Loans~~ ......................................................................................................... 5
**SECTION 4.  REPRESENTATIONS AND WARRANTIES** ....................................................... ~~5~~4
    4.1.  Organization .............................................................................................................. ~~5~~4
    ~~4.2.  Authorization; No Conflict~~ ....................................................................................... 5
    ~~4.3.~~  Validity; Binding Nature .......................................................................................... ~~5~~4
    ~~4.4.  Investment Company Act~~ .......................................................................................... 6
    ~~4.5.  Regulation U~~ ............................................................................................................ 6
    ~~4.6.  Taxes~~ ......................................................................................................................... 6
    ~~4.7.  No Default~~ ................................................................................................................ 6
    ~~4.8.~~4.3.  Confirmation Order .................................................................................................. ~~6~~4
**SECTION 5.  AFFIRMATIVE COVENANTS** ............................................................................ ~~6~~4
    5.1.  Maintenance of Existence ......................................................................................... ~~6~~4
    5.2.  Compliance with Laws; Payment of Taxes and Liabilities ....................................... ~~6~~4
    5.3.  Books and Records ................................................................................................... ~~6~~5
    5.4.  Use of Proceeds ........................................................................................................ ~~6~~5
    ~~5.5.  Segregated Eligible Costs and Expenses Account~~ .................................................... 6
    ~~5.6.~~  Further Assurances ................................................................................................... ~~7~~5
**SECTION 6.  NEGATIVE COVENANTS** .................................................................................. ~~7~~5
    6.1.  Debt .......................................................................................................................... ~~7~~5
    6.2.  Liens ......................................................................................................................... ~~7~~5
    6.3.  Mergers; Consolidations .......................................................................................... ~~7~~5
    6.4.  ~~Asset Sales~~ .............................................................................................................. 7
    ~~6.5.~~  Modification of Organizational Documents .............................................................. ~~7~~5
    ~~6.6.  Business Activities~~ ................................................................................................... 7
    ~~6.7.~~6.5.  Subsidiaries .............................................................................................................. ~~7~~5
    ~~6.8.  Segregated Eligible Costs and Expenses Account~~ .................................................... 7
    6.6.  Expense Fund ............................................................................................................ 5
**SECTION 7.  EVENTS OF DEFAULT; REMEDIES** ................................................................. ~~7~~5
    7.1.  Events of Default ...................................................................................................... ~~7~~5
    7.2.  Remedies .................................................................................................................. ~~8~~6
    7.3.  No Recourse .............................................................................................................. ~~9~~6

**SECTION 8.    MISCELLANEOUS** ................................................................. 96

8.1.    Amendments ................................................................................. 96

8.2.    Notices .......................................................................................... 96

8.3.    Costs; Expenses ............................................................................. 97

8.4.    Indemnification by Borrower ......................................................... 97

8.5.    Payments Set Aside ........................................................................ 97

8.6.    Captions ......................................................................................... 97

8.7.    Nature of Remedies ........................................................................ 97

8.8.    Counterparts ................................................................................. 107

8.9.    Severability .................................................................................... 107

8.10.    Entire Agreement ......................................................................... 107

8.11.    Successors; Assigns ...................................................................... 108

8.12.    Governing Law .............................................................................. 108

8.13.    Forum Selection; Consent to Jurisdiction ..................................... 108

8.14.    Waiver of Jury Trial ...................................................................... 108

8.15.    Survival ........................................................................................ 118

8.16.    Termination .................................................................................... 9

Exhibits

Exhibit A———————Form of Borrowing NoticeExhibit B        Addresses

# CREDIT AGREEMENT

CREDIT AGREEMENT dated as of **[_____]** (as amended, restated, supplemented or otherwise modified from time to time, this "Agreement") among **[**Litigation Trust**]**, a [Delaware statutory trust] ("Borrower"), and Tribune Company, a Delaware corporation ("Tribune Company" or "Lender").

In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

**SECTION 1.                    DEFINITIONS; INTERPRETATION.**

1.1.    Definitions.    When used herein the following terms shall have the following meanings:

Agreement has the meaning set forth in the Preamble.

Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware.

Borrower has the meaning set forth in the Preamble.

~~Borrowing Notice has the meaning set forth in Section 2.2.~~
Business Day means any day other than a Saturday, Sunday or other day on which banks in Chicago, Illinois and New York, New York are authorized or required by law to close.

Certificate of Trust means the Certificate of Trust of Borrower dated **[_____]**.

Confirmation Order ~~means [_____]~~has the meaning set forth in the Plan.

Debt of any Person means, without duplication all indebtedness of such Person for borrowed money.

Default means the occurrence or existence of any one or more of the events described in Section 7.1, which, if continued uncured, would with the passage of time or the giving of notice or both, constitute an Event of Default.

Dollar and $ mean lawful money of the United States of America.

Effective Date has the meaning set forth in the Plan.

Eligible Costs and Expenses means the reasonable and documented costs and expenses of Borrower in connection with pursuing the Litigation Trust Assets, administering Borrower ~~and~~, managing the Litigation Trust Assets and distributing the Net Litigation Trust Proceeds in accordance with this Agreement and the Litigation Trust Agreement.

Event of Default means any of the events described in Section 7.1.

Expense Fund has the meaning set forth in the Litigation Trust Agreement.

FRB means the Board of Governors of the Federal Reserve System or any successor thereto.

~~Funding Date has the meaning set forth in Section 2.2.~~

GAAP means generally accepted accounting principles in the United States of America.

~~Indemnified Party has the meaning set forth in Section 8.4.~~

Lender has the meaning set forth in the Preamble.

Lender Party has the meaning set forth in Section 8.4.

Lien means, with respect to any Person, any interest granted by such Person (or any interest imposed by law) in any real or personal property, asset or other right owned or being purchased or acquired by such Person which secures payment or performance of any obligation and shall include any mortgage, lien, encumbrance, charge or other security interest of any kind, whether arising by contract, as a matter of law, by judicial process or otherwise.

Litigation Trust Agreement means that certain Litigation Trust Agreement dated as of [_____], among the Trustee and Tribune Company, on behalf of itself and the other Debtors and Reorganized Debtors (as such terms are defined in the Plan).

Litigation Trust Assets has the meaning set forth in the Plan.

Litigation Trustee has the meaning set forth in the Litigation Trust Agreement.

~~Loan Documents means this Agreement and all documents, instruments and agreements delivered in connection with the foregoing by or on behalf of Borrower.~~

Maturity Date means the date of dissolution of Borrower in accordance with Section 9.1 of the Litigation Trust Agreement.

Net Litigation Trust Proceeds has the meaning set forth in the Plan.

Obligations means all liabilities, indebtedness and obligations (monetary or otherwise) of Borrower under this Agreement~~, any other Loan Document~~ or any other document or instrument executed in connection herewith ~~or therewith~~, in each case howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due.

Permitted Liens means the following encumbrances: (a) Liens for taxes or assessments or other governmental charges not yet due and payable or which are being contested in accordance with Section 5.2, (b) deposits securing, or in lieu of, surety, appeal or customs bonds in proceedings to which Borrower is a party and (c) Liens on any deposit accounts in favor of the financial institutions at which such accounts are held in respect of customary fees and expenses or otherwise arising by operation of law.

Person means any natural person, corporation, partnership, trust, limited liability company, association, governmental authority or unit, or any other entity, whether acting in an individual, fiduciary or other capacity.

Plan means the Fourth Amended Joint Plan of Organization for Tribune Company and its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank N.A.

~~Segregated Eligible Costs and Expenses Account means a segregated account of Borrower established for the deposit of Net Litigation Trust Proceeds in accordance with Section 2.7.~~

Term Loan has the meaning set forth in Section 2.1.

Term Loan Commitment means $~~20,000,000, as reduced from time to time pursuant to Section 2.1 or Section 2.7~~ 20,000,000.

Tribune Company has the meaning set forth in the <u>Preamble</u>.

Trustee means the Litigation Trustee and any successor Litigation Trustee appointed pursuant to the Plan and the Litigation Trust Agreement.

1.2.    <u>Interpretation</u>.  In the case of this Agreement ~~and each other Loan Document~~, (a) the meanings of defined terms are equally applicable to the singular and plural forms of the defined terms; (b) Annex, Exhibit, Schedule and Section references are to ~~such Loan Document~~<u>this Agreement</u> unless otherwise specified; (c) the term "including" is not limiting and means "including but not limited to"; (d) in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including"; the words "to" and "until" each mean "to but excluding", and the word "through" means "to and including"; (e) unless otherwise expressly provided in ~~such Loan Document~~<u>this Agreement</u>, (i) references to agreements and other contractual instruments shall be deemed to include all subsequent amendments, restatements and other modifications from time to time made thereto, but only to the extent such amendments, restatements and other modifications are not prohibited by the terms of ~~any Loan Document~~<u>this Agreement</u>, and (ii) references to any statute or regulation shall be construed as including all statutory and regulatory provisions amending, replacing, supplementing or interpreting such statute or regulation.

**SECTION 2.        ~~DELAYED DRAW~~ TERM LOAN FACILITY**.

2.1.    <u>Term Loan Commitment</u>.  On and subject to the terms and conditions of this Agreement, Lender agrees to make a loan to Borrower (~~each such loan, a~~<u>the</u> "Term Loan") on ~~each Funding~~<u>the Effective</u> Date in an amount equal <u>to</u> the ~~least of the (x)~~ Term Loan Commitment~~, (y) Amounts of~~ the ~~amount of the Term Loan borrowing then being requested by Borrower pursuant to Section 2.2 and (z) the Eligible Costs and Expenses reasonably anticipated to be paid by Borrower with the proceeds of such Term Loan (rounded up to the next borrowing increment); provided, that Borrower may not request, and Lender shall not be obligated to make, more than two Term Loans during any calendar month.  The Term Loan Commitment shall terminate on the Maturity Date.  The Term Loan Commitment shall reduce on each Funding Date by the initial~~ <span style="color:green">principal amount of the Term Loan</span> ~~funded on such date.  Term Loans which~~<u>Term Loan that</u> are repaid or prepaid by Borrower, in whole or in part, may not be reborrowed.

~~2.2.        Loan Procedures.  Borrower shall give written notice (such notice, a "Borrowing Notice") to Lender of each proposed borrowing (including the proposed amount thereof; it being understood that the amount of such proposed borrowing shall not exceed either (i) the remaining amount of the Term Loan Commitment or (ii) the amount of Eligible Costs and Expenses reasonably anticipated to be paid by Borrower with the proceeds of such Term Loan) of a Term Loan not later than at least three Business Days prior to the proposed date of such borrowing (the date that a Term Loan is so made, each a "Funding Date").  Each such Borrowing Notice shall be effective upon receipt by Lender, and shall specify, substantially in the form attached hereto as Exhibit A, the date and amount of the requested Term Loan.  Not later than 1:00 p.m. Chicago time on the date of the proposed Funding Date, subject to satisfaction of the conditions set forth in Section 3, Lender shall provide Borrower with immediately available funds in the amount of the requested Term Loan.  Each borrowing of a Term Loan shall be on a Business Day.  Each Term Loan shall be in an aggregate amount of at least $500,000 and an integral multiple of at least $100,000.  For the avoidance of doubt, the proceeds of any Term Loan shall not be deposited in, and shall be otherwise kept segregated from, the Segregated Eligible Costs and Expenses Account and any Net Litigation Trust Proceeds deposited therein.~~

2.2. ~~2.3.~~ Loan Accounting.  Lender shall record in its records the date and amount of each ~~Term Loan made by Lender and each~~ repayment ~~thereof~~of the Term Loan.  The aggregate unpaid principal amount so recorded shall be rebuttably presumptive evidence of the principal amount of the Term ~~Loans~~Loan owing and unpaid.  The failure to so record any such amount or any error in so recording any such amount shall not, however, limit or otherwise affect the Obligations of Borrower hereunder to repay the principal amount of the Term ~~Loans~~Loan hereunder.

2.3. ~~2.4.~~ Non-Interest Bearing Obligations.  The Obligations shall be non-interest bearing.

2.4. ~~2.5.~~ Maturity Date.  The Term ~~Loans~~Loan shall be repaid in full on the Maturity Date.

2.5. ~~2.6.~~ Voluntary Prepayment.  Borrower may from time to time, on at least one Business Day's written notice to Lender not later than 1:00 p.m. Chicago time on such day, prepay the Term ~~Loans~~Loan in whole or in part.  Such notice to Lender shall specify the date and amount of prepayment.

2.6. ~~2.7. Monthly~~ Application of Net Litigation Trust Proceeds.  All Net Litigation Trust Proceeds received by Borrower shall be held by Borrower and applied in accordance with this Section ~~2.7~~2.6.  On the ~~15th day~~last Business Day of each calendar ~~month (or, if such day is not a Business Day, the next succeeding Business Day)~~quarter, all Net Litigation Trust Proceeds ~~received~~then held by Borrower ~~during the preceding calendar month~~ shall be applied by Borrower in the following order of priority; provided, that, on each such date, the Expense Fund has a balance of at least $25 million in cash and will maintain such a balance after the making of any such distribution:

(i) *first*, to payment of the Parent GUC Trust Preference (as defined in the Plan);

(ii) *second*, the excess, if any, to repayment of outstanding principal of the Term ~~Loans~~Loan and any other amounts owing under this Agreement (including, without limitation, reimbursement of costs and expenses pursuant to Section 8.3);

~~(iii) *third*, the excess, if any, to the Segregated Eligible Costs and Expenses Account; provided, that the aggregate amount deposited to the Segregated Eligible Costs and Expenses Account on any date shall not exceed the Term Loan Commitment as of such date; and~~

(iii) ~~(iv) *fourth*,~~ the excess, if any, ~~*third*, the excess, if any,~~ to be used by the Borrower as it deems appropriate and in accordance with the Litigation Trust Agreement.

~~Upon the deposit of any amount into the Segregated Eligible Costs and Expenses Account pursuant to the foregoing clause (iv), the Term Loan Commitment will be permanently reduced by an amount equal to such deposit.~~

2.7. Funding of Expense Fund.  Under no circumstances shall the Expense Fund be funded with proceeds from the Term Loan.

**SECTION 3.** **CONDITIONS PRECEDENT.**  ~~The obligation of Lender to make the Term Loans is subject to the following conditions precedent:~~

3.1. ~~Initial~~ Term Loan.  The obligation of Lender to make the ~~initial~~ Term Loan is~~, in addition to the conditions precedent specified in Section 3.2,~~ subject to the following conditions precedent~~, each of which shall be satisfactory in all respects to Lender~~:

(a)     Confirmation of the Plan.  The Plan shall have been confirmed by the Bankruptcy Court pursuant to the Confirmation Order, and the "Effective Date" (as defined in the Plan) shall have occurred on or prior to the date hereof; and

(b)     Delivery of ~~Loan~~ Documents.  Borrower shall have delivered the following documents in form and substance satisfactory to Lender:

(i)     Agreement.  This Agreement; and

(ii)    Authorization Documents.  For Borrower, ~~[(i) the Certificate of Trust, certified by the Secretary of State of the State of Delaware, (ii) a good standing certificate in Delaware,]~~ ~~(iii)~~ the fully-executed Litigation Trust Agreement~~, (iv) resolutions of the applicable governing body thereof approving and authorizing Borrower's execution, delivery and performance of the Loan Documents to which it is party and the transactions contemplated thereby, and (v) signature and incumbency certificates of its officers executing any of the Loan Documents, all certified by the Trustee as being in full force and effect without modification.~~

~~3.2.        All Term Loans.  The obligation of Lender to make each Term Loan is subject to the additional conditions precedent that (unless such conditions are waived by Lender), both before and after giving effect to any borrowing:~~

3.1.2.      ~~(a)~~ Representations and Warranties.  The representations and warranties of Borrower set forth in this Agreement shall be true and correct in all material respects ~~with the same effect as if then made (except to the extent stated to relate to a specific earlier date, in which case such representations and warranties shall be true and correct as of such earlier date)~~; and

3.1.3.      ~~(b)~~ No Event of Default.  No Event of Default shall have then occurred and be continuing~~, and~~.

~~(c)     Segregated Eligible Costs and Expenses Account.  The balance of the Segregated Eligible Costs and Expenses Account and the amount of other Net Litigation Trust Proceeds held by the Borrower is (or, after giving effect to the disbursement of the Term Loan being requested and the application of the proceeds of such Term Loan, the balance of the Segregated Eligible Costs and Expenses Account and all other Net Litigation Trust Proceeds held by the Borrower, will be) zero.~~

~~Each request by Borrower for the making of a Term Loan shall be deemed to constitute a representation and warranty by Borrower that the conditions precedent set forth in Section 3.2 will be satisfied at the time of the making of such Term Loan.~~

**SECTION 4.        REPRESENTATIONS AND WARRANTIES**.  To induce Lender to enter into this Agreement and to induce Lender to make the Term ~~Loans~~Loan, Borrower represents and warrants to Lender that:

4.1.    Organization.  Borrower is a [statutory trust validly existing and in good standing under the laws of the State of Delaware].

~~4.2.        Authorization; No Conflict.  Borrower is duly authorized to execute and deliver each Loan Document to which it is a party, Borrower is duly authorized to borrow monies hereunder, and Borrower is duly authorized to perform its Obligations under each Loan Document to which it is a party. The execution, delivery and performance by Borrower of this Agreement and each other Loan Document to which it is a party, and the borrowings by Borrower hereunder, do not and will not (a) require any~~

~~consent or approval of any governmental agency or authority (other than any consent or approval which has been obtained and is in full force and effect), (b) conflict with (i) any provision of applicable law, (ii) the Certificate of Trust, (iii) the Litigation Trust Agreement or (iv) any agreement, indenture, instrument or other document, or any judgment, order or decree, which is binding upon Borrower or its properties or (c) require, or result in, the creation or imposition of any Lien on any asset of Borrower (other than Permitted Liens).~~

4.2. ~~4.3.~~ Validity; Binding Nature. ~~Each of this~~This Agreement ~~and each other Loan Document~~ is the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms, subject to bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity.

~~4.4.          Investment Company Act.  Borrower is not an "investment company" as defined in, or subject to regulation under, the Investment Company Act of 1940.~~

~~4.5.          Regulation U.  No part of the proceeds of any Term Loan have been used or will be used, whether directly or indirectly, for any purpose that entails a violation of any of the Regulations of the FRB, including Regulation U.~~

~~4.6.          Taxes.  Borrower has filed all federal, state and other material tax returns and reports required by law to have been filed by it and has paid all taxes and governmental charges thereby shown to be owing, except for any such taxes or charges which are being diligently contested in good faith by appropriate proceedings and for which adequate reserves in accordance with GAAP shall have been set aside on its books.~~

~~4.7.          No Default.  No Event of Default exists or would result from the incurrence by Borrower of any Debt hereunder or under any other Loan Document.~~

4.3. ~~4.8.~~ Confirmation Order.   The Confirmation Order has been entered by the Bankruptcy Court, is not subject to any applicable stay, is in full force and effect and has not been stayed, reversed, rescinded, vacated, modified or amended.

**SECTION 5.**                    **AFFIRMATIVE COVENANTS**.    Until the ~~Term Loan Commitment has expired or been terminated and the~~ principal of ~~each~~the Term Loan and all other amounts payable hereunder shall have been paid in full, Borrower agrees that it will:

5.1.    Maintenance of Existence.   Maintain and preserve its existence and good standing as a [statutory trust in the State of Delaware].

5.2.    Compliance with Laws; Payment of Taxes and Liabilities.   (a) Comply in all material respects with all applicable laws, rules, regulations, decrees, orders, judgments, licenses and permits and (b) pay, prior to delinquency, all taxes and other governmental charges against it or any of its property, as well as claims of any kind which, if unpaid, could become a Lien on any of its property; provided that the foregoing shall not require Borrower to pay any such tax or charge so long as it shall contest the validity thereof in good faith by appropriate proceedings and shall set aside on its books adequate reserves with respect thereto in accordance with GAAP.

5.3.    Books and Records.   Keep its books and records in accordance with sound business practices.

5.4.    Use of Proceeds.   ~~Use~~Keep the proceeds of the Term ~~Loans~~Loan segregated from the Expense Fund, use the proceeds of the Term Loan solely to pay Eligible Costs and Expenses ~~within~~

90 days after the Funding Date specified in the applicable Borrowing Notice, and pay Eligible Costs and Expenses exclusively with the proceeds of the Term Loan until all such proceeds shall have been so used.

5.5. Segregated Eligible Costs and Expenses Account.

(a) Maintain the Segregated Eligible Costs and Expenses Account.

(b) To the extent that (i) any amounts are on deposit in the Segregated Eligible Costs and Expenses Account or (ii) Borrower is otherwise holding any Net Litigation Trust Proceeds, such amounts shall be taken into account when determining the amount of the Term Loan being requested pursuant to a Borrowing Notice, and such amounts referenced in clauses (i) and (ii) of this Section 5.5(b) shall be applied, together with the proceeds from the Term Loan being requested pursuant to such Borrowing Notice, to Eligible Costs and Expenses in accordance with Section 5.4.

5.5. 5.6. Further Assurances. Upon request of Lender, duly execute and deliver, or cause to be duly executed and delivered, to Lender such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Lender to carry out more effectively the provisions and purposes of this Agreement.

**SECTION 6.** **NEGATIVE COVENANTS.** Until the Term Loan Commitment has expired or been terminated and the principal of eachthe Term Loan and all other amounts payable hereunder shall have been paid in full, Borrower agrees that it will:

6.1. Debt. Not create, incur, assume or suffer to exist any Debt, except (a) Obligations under this Agreement and (b) any Debt incurred by Borrower that is subordinated in right and time of payment to the Obligations either (i) on terms and conditions reasonably satisfactory to Lender or (ii) as approved pursuant to an order of the Bankruptcy Court.

6.2. Liens. Not create or permit to exist any Lien on any of its properties or assets (whether now owned or hereafter acquired), except Permitted Liens.

6.3. Mergers; Consolidations. Not be a party to any merger or consolidation.

6.4. Asset Sales. Not sell, transfer, dispose of, convey or lease any of its assets except as may be permitted by the Plan and the Litigation Trust Agreement.

6.4. 6.5. Modification of Organizational Documents.

(a) Not permit the Certificate of Trust to be amended, modified or waived in a manner adverse to the Lender.

(b) Not permit the Litigation Trust Agreement to be amended, modified or waived except in accordance with the provisions of Article 10 thereof.

6.6. Business Activities. Not engage in any line of business or activity other than as set forth in Article XIII of the Plan and Section 1.4 of the Litigation Trust Agreement.

6.5. 6.7. Subsidiaries. Not establish or acquire any Subsidiary.

6.8. Segregated Eligible Costs and Expenses Account

6.6. Expense Fund. Not ~~make any payments or distributions from the Segregated~~draw down on the Expense Fund to pay any Eligible Costs and Expenses ~~Account except in accordance with Section 5.5.~~unless the full proceeds of the Term Loan shall have been used by Borrower to pay Eligible Costs and Expenses.

**SECTION 7.                    EVENTS OF DEFAULT; REMEDIES.**

7.1.    <u>Events of Default</u>.  Each of the following shall constitute an Event of Default under this Agreement:

(a)    Failure to Comply with Waterfall. Failure of Borrower to hold and apply any Net Litigation Trust Proceeds in accordance with Section ~~2.7~~2.6 and such failure shall continue for ~~3~~5 consecutive Business Days following receipt of written inquiry from the Lender.

(b)    Bankruptcy; Insolvency.  Borrower ~~becomes insolvent or~~ generally fails to pay, or admits in writing its inability or refusal to pay, debts as they become due; or Borrower applies for, consents to, or acquiesces in the appointment of a trustee, receiver or other custodian for Borrower or any property thereof, or makes a general assignment for the benefit of creditors; or, in the absence of such application, consent or acquiescence, a trustee, receiver or other custodian is appointed for Borrower or for a substantial part of the property of any thereof and is not discharged within 30 days; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is commenced in respect of Borrower, and if such case or proceeding is not commenced by Borrower, it is consented to or acquiesced in by Borrower, or remains for 30 days undismissed; or Borrower takes any action to authorize, or in furtherance of, any of the foregoing.

(c)    Non-Compliance with ~~Loan Documents~~Agreement. (i) Failure by Borrower to comply with or to perform any covenant set forth in Sections 5.1, 5.4, ~~5.5~~ or 6 or (ii) failure by Borrower to comply with or to perform any other provision of this Agreement ~~or any other Loan Document~~ applicable to it (and not constituting an Event of Default under any other provision of this Section 7.1) and continuance of such failure described in this clause (ii) for 30 days.

(d)    Representations; Warranties.  Any representation or warranty made by Borrower herein ~~or any other Loan Document~~ is breached or is false in any material respect when made, and such failure shall result in a material impairment of the ability of Borrower to perform its obligations hereunder.

(e)    Failure to Comply With Litigation Trust Agreement or Plan.  Failure by Borrower to comply in any material respect with the Litigation Trust Agreement or the Plan, as determined by the Bankruptcy Court, and such failure shall continue unremedied for a period of ~~thirty~~30 days.

(f)    ~~Loan Documents.  Any Loan Document or any material provisions thereof shall at any time and for any reason be declared by a court of competent jurisdiction to be null and void, or a proceeding shall be commenced by Borrower seeking to establish the invalidity or unenforceability thereof, or~~ Agreement.  Borrower shall repudiate or deny in writing any portion of its liability or obligations for the Obligations.

7.2.    Remedies.  If any Event of Default described in Section 7.1(b) shall occur, the Term Loan ~~Commitment shall immediately terminate and the Term Loans~~ and all other Obligations shall become immediately due and payable, all without presentment, demand, protest or notice of any kind; and, if any other Event of Default shall occur and be continuing, Lender may ~~declare the Term Loan~~

~~Commitment to be terminated in whole or in part and/or~~ declare all or any part of the Term ~~Loans~~Loan and other Obligations to be due and payable, whereupon the Term Loan ~~Commitment shall immediately terminate (or be reduced, as applicable) and/or the Term Loans~~ and other Obligations shall become immediately due and payable (in whole or in part, as applicable), all without presentment, demand, protest or notice of any kind.  Lender shall promptly advise Borrower of any such declaration, but failure to do so shall not impair the effect of such declaration.

      7.3.   No Recourse.  Lender shall have no recourse to Trustee or any beneficiary of Borrower for repayment of the Term ~~Loans~~Loan or any other Obligation, it being understood and agreed that the Lender's sole source of repayment of the Term ~~Loans~~Loan and all other Obligations shall be the application of the Net Litigation Trust Proceeds in accordance with Section ~~2.7.~~2.6.

**SECTION 8.**            **MISCELLANEOUS**.

      8.1.   Amendments.  No amendment, modification or waiver of, or consent with respect to, any provision of this Agreement ~~or any of the other Loan Documents~~ shall in any event be effective unless the same shall be in writing and approved by Lender and Borrower.

      8.2.   Notices.  All notices hereunder shall be in writing (including facsimile or electronic mail transmission) and shall be sent to the applicable party at its address shown on Exhibit ~~B~~A or at such other address as such party may, by written notice received by the other parties, have designated as its address for such purpose.  Notices sent by facsimile transmission or electronic mail shall be deemed to have been given when sent; notices sent by mail shall be deemed to have been given three Business Days after the date when sent by registered or certified mail, postage prepaid; and notices sent by hand delivery or overnight courier service shall be deemed to have been given when received.

      8.3.   Costs; Expenses.  Borrower agrees to pay promptly following demand by Lender all reasonable out-of-pocket costs and expenses of Lender (including the reasonable fees, charges and disbursements of counsel) in connection with Lender's enforcement of its rights and remedies under this Agreement ~~and the other Loan Documents.~~ upon an Event of Default.

      8.4.   Indemnification by Borrower.  Borrower hereby agrees to indemnify and hold harmless Lender and each of the officers, directors, employees, advisors and agents of Lender (each a "Lender Party") free and harmless from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses, including the reasonable fees, charges and disbursements of counsel (collectively, the "Indemnified Liabilities"), solely incurred by Lender Parties or any of them as a result of, or arising out of, or relating to the ~~execution, delivery, performance or~~ enforcement of this Agreement ~~or any other Loan Document by any Lender Party or the use of proceeds of the Term Loans, except to the extent any such Indemnified Liabilities result from a Lender Party's gross negligence or willful misconduct~~by the Lender Parties; provided, that the foregoing indemnification shall not apply in the event that the Bankruptcy Court or other court of competent jurisdiction finds that such Lender Parties were not entitled to indemnification under the terms of this Agreement.

      8.5.   Payments Set Aside.  To the extent that Borrower makes a payment or payments to Lender and such payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by Lender in its discretion) to be repaid to a trustee, receiver or any other party in connection with any bankruptcy, insolvency or similar proceeding, or otherwise, then to the extent of such recovery, the obligation hereunder or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made.

8.6.　__Captions__.　Captions used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

8.7.　__Nature of Remedies__.　All Obligations of Borrower and rights of Lender expressed herein ~~or in any other Loan Document~~ shall be in addition to and not in limitation of those provided by applicable law.　No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

8.8.　__Counterparts__.　This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same Agreement. Receipt by telecopy or electronic transmission of any executed signature page to this Agreement ~~or any other Loan Document~~ shall constitute effective delivery of such signature page.

8.9.　__Severability__.　The illegality or unenforceability of any provision of this Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement or any instrument or agreement required hereunder.

8.10.　__Entire Agreement__.　This Agreement, ~~together with the other Loan Documents,~~ embodies the entire agreement and understanding among the parties hereto and supersedes all prior or contemporaneous agreements and understandings of such Persons, verbal or written, relating to the subject matter hereof and thereof.

8.11.　__Successors; Assigns__.　This Agreement shall be binding upon Borrower and Lender and their respective successors and assigns, and shall inure to the benefit of Borrower and Lender and the successors and assigns of Borrower and Lender.　No other Person shall be a direct or indirect legal beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement ~~or any of the other Loan Documents~~.　No party hereto may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the other party hereto, except that Lender may without the consent of Borrower pledge or grant a security interest in its rights under this Agreement to secure the obligations of Lender.

8.12.　__Governing Law__.　THIS AGREEMENT ~~AND THE OTHER LOAN DOCUMENTS~~ SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK (INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK BUT OTHERWISE WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF).

8.13.　__Forum Selection; Consent to Jurisdiction__.　ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT ~~OR ANY OTHER LOAN DOCUMENT~~, SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE. BORROWER FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS BY REGISTERED MAIL, POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE OF DELAWARE.　BORROWER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

8.14.  <u>Waiver of Jury Trial</u>.  EACH OF BORROWER AND LENDER HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT, ~~ANY OTHER LOAN DOCUMENT~~ AND ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY LENDING RELATIONSHIP EXISTING IN CONNECTION WITH ANY OF THE FOREGOING, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

8.15.  <u>Survival</u>.  All covenants, agreements, representations and warranties made by Borrower in ~~the Loan Documents~~<u>this Agreement</u> and in the certificates or other instruments delivered in connection with or pursuant to this Agreement ~~or any other Loan Document~~ shall be considered to have been relied upon by Lender and shall survive the execution and delivery of ~~the Loan Documents~~<u>this Agreement</u> and the making of ~~any~~<u>the</u> Term ~~Loans~~<u>Loan</u>, regardless of any investigation made by Lender or on its behalf and notwithstanding that Lender may have had notice or knowledge of any Default or Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of ~~any~~<u>the</u> Term Loan or other amount payable under this Agreement ~~or any other Loan Document~~ is outstanding and unpaid ~~and so long as the Term Loan Commitment has not expired or terminated.  The provisions of <u>Section 8.3</u> shall survive and remain in full force and effect regardless of the~~ expiration or termination ~~of the Term Loan Commitment~~.  The provisions of <u>Section 8.4</u> shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Term ~~Loans~~<u>Loan</u>, the expiration or termination of the Term Loan Commitment or the termination of this Agreement or any provision hereof <u>solely to the extent of any actions commenced prior to or pending at the time of such repayment, expiration or termination, as applicable, for which Section 8.4 applies.</u>

<u>8.16.  Termination.  Upon repayment of the principal amount of the Term Loan and all other Obligations then due and owing at the time of such repayment, this Agreement shall terminate without any further action by Lender, Borrower or any other Person.</u>

[Signature Page Follows]

The parties hereto have caused this Agreement to be duly executed and delivered by their duly authorized officers as of the date first set forth above.

**[LITIGATION TRUST]**, as Borrower


By:_____
Name:
Title:


TRIBUNE COMPANY, as Lender


By:_____
Name:
Title: