## EXHIBIT 5(a)

**Agreement Respecting Transfer of Documents, Information, and Privileges from Debtors and Reorganized Debtors ("Debtors' LT Agreement")**

## AGREEMENT RESPECTING TRANSFER OF DOCUMENTS, INFORMATION, AND PRIVILEGES FROM DEBTORS AND REORGANIZED DEBTORS

This Agreement Respecting Transfer Of Documents, Information, And Privileges From Debtors, Debtors' Estates and Reorganized Debtors (this "Agreement"), dated as of [_____], 2012, by (a) the Litigation Trustee and (b) Tribune Company, on behalf of itself and the other Reorganized Debtors, is executed pursuant to the Confirmation Order to facilitate the implementation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPMorgan") filed April 12, 2012 (the "Plan"), as amended and supplemented thereafter. Each of the Reorganized Debtors and the Litigation Trustee are sometimes referred to individually as a "Party" and collectively as the "Parties." Capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings assigned to such terms in the Litigation Trust Agreement or the Plan, as applicable.

## RECITALS

WHEREAS, the Litigation Trustee is the trustee of the Litigation Trust established under the Litigation Trust Agreement, dated as of [_____], 2012, pursuant to the Plan and Confirmation Order;

WHEREAS, subsection 13.3.8 of the Plan and the Confirmation Order contemplate that an Agreement Respecting Transfer Of Documents, Information, And Privileges From Debtors and Reorganized Debtors will be executed between the Reorganized Debtors and the Litigation Trustee, and subsection 13.3.8 of the Plan provides that "[t]o effectively investigate, prosecute, compromise, and/or settle the Litigation Trust Assets on behalf of the Litigation Trust, the Litigation Trustee and its counsel and representatives may require reasonable access to the Debtors' and Reorganized Debtors' documents and information relating to the Litigation Trust Assets and, in such event, must be able to exchange such information with the Reorganized Debtors on a confidential basis and in common interest without being restricted by or waiving any applicable work product, attorney-client, or other privilege";

WHEREAS, subsection 1.2(b) of the Litigation Trust Agreement provides for reasonable access to copies of the Debtors' and Reorganized Debtors' records and information in each instance relating to the Litigation Trust Assets;

WHEREAS, by Order dated December 15, 2009, the Bankruptcy Court authorized the Debtors to establish and maintain a centralized document depository (the "Document Depository") and directed the Creditors' Committee to deliver certain documents to that depository pursuant to the Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing Settlement Negotiation Protections Pursuant to 11 U.S.C. § 105(a), dated December 15, 2009 (the "Depository Order") [D.I. 2858];

WHEREAS, on April 20, 2010, the Bankruptcy Court directed the appointment of an Examiner to, *inter alia*, evaluate potential claims related to Tribune Company's 2007 leveraged buyout transactions [D.I. 4120], and the Examiner, Kenneth N. Klee, undertook an extensive investigation of such potential claims by, among other things, conducting thirty-eight interviews and reviewing hundreds of pages of briefing and tens of thousands of pages of documentation, culminating in his July 26, 2010 report [D.I. 5130, 5131, 5132, 5133] (the "Examiner Report") consisting of over 1,400 pages and 1,200 public exhibits;

WHEREAS, on October 27, 2010, the Bankruptcy Court granted motions filed by the Creditors' Committee, allowing the Committee to commence lawsuits alleging certain potential claims related to Tribune Company's 2007 leveraged buyout transactions [D.I. 6150], and, on November 1, 2010, the Creditors' Committee filed the Complaint in Adversary Proceeding No. 10-54010 (as was and may be amended from time to time, the "FitzSimons Complaint"), and the Complaint in Adversary Proceeding 10-53963-KJC (the "Lender Complaint");

WHEREAS on March 22, 2012, the Bankruptcy granted the motion filed by the Creditors' Committee seeking permission to sever certain of the claims filed in the Lender Complaint into a separate action, and, on April 2, 2012, the Creditors' Committee filed those severed claims in a Complaint in Adversary Proceeding No. 12-50446 (as may be amended from time to time, the "Advisors Complaint"), in the Bankruptcy Court;

WHEREAS, in March, April, and June 2011, the proponents of the Second Amended DCL Plan (the "DCL Plan Proponents") and the Third Amended Noteholder Plan participated in a confirmation hearing concerning the viability of the competing plans (the "Confirmation Hearing"), at which the Bankruptcy Court heard testimony from numerous expert and fact witnesses and the parties moved 3,485 exhibits into evidence (3,346 publicly filed and 139 confidential exhibits filed under seal);

WHEREAS, on October 31, 2011, the Bankruptcy Court entered its Opinion on Confirmation denying confirmation of the competing plans;

WHEREAS, to address the deficiencies identified by the Bankruptcy Court in its Opinion on Confirmation, the DCL Plan Proponents filed and sought confirmation of the Plan which contains, among other things, modifications to address the issues identified by the Bankruptcy Court;

WHEREAS, on _____, 2012, the Bankruptcy Court entered its Order confirming the Plan;

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises and the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

# I.

## GENERAL

A.  <u>Definitions</u>

        1.      "<u>Access Request</u>" has the meaning set forth in Section II.B.2. of this Agreement.

        2.      "<u>Advisors Complaint</u>" has the meaning set forth in the Recitals to this Agreement.

        3.      "<u>Claims</u>" shall consist of any one or more of the Litigation Trust Assets, excluding those Preserved Causes of Action against (i) the Directors and Officers of the Tribune Company and its subsidiaries covered by the Insurance Policies and/or (ii) any other individuals or entities covered by the Insurance Policies.

        4.      "<u>Confidential Information</u>" has the meaning set forth in Section II.D.1. of this Agreement.

        5.      "<u>Confirmation Hearing</u>" has the meaning set forth in the Recitals to this Agreement.

        6.      "<u>Cooperate</u>" and "<u>Cooperation</u>" have the meanings set forth in Section II.A.1. of this Agreement.

        7.      "<u>DCL Plan Proponents</u>" has the meaning set forth in the Recitals to this Agreement.

        8.      "<u>Debtor(s)</u>" has the meaning set forth in Section 1.1.54 of the Plan.  For the avoidance of doubt, "Debtors" includes the board of directors, or any special committee of the board of directors, of any of the Debtors.

        9.      "<u>Debtors' Estates</u>" has the meaning set forth in Section 1.1.85 of the Plan.

        10.      "<u>Depository Order</u>" has the meaning set forth in the Recitals to this Agreement.

        11.      "<u>Document Depository</u>" has the meaning set forth in the Recitals to this Agreement.

        12.      "<u>Documents</u>" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized compilations.

13.     "Documents Relating to the Claims" means Documents which relate in full or in part to Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims.

14.     "Examiner Report" has the meaning set forth in the Recitals to this Agreement.

15.     "FitzSimons Complaint" has the meaning set forth in the Recitals to this Agreement.

16.     "Information Relating to the Claims" means information which relates to (i) Tribune Company's 2007 leveraged buy-out transactions or the transactions or events leading up to it, or (ii) the Claims.

17.     "Insurance Policies" are the policies listed in Exhibit A hereto.

18.     "Lender Complaint" has the meaning set forth in the Recitals to this Agreement.

19.     "Litigation Trust Assets" has the meaning set forth in Section 1.1.124 of the Plan.

20.     "Person" has the meaning set forth in Section 1.1.163 of the Plan.

21.     "Privilege" means any attorney-client privilege, work product protection, or other privilege, protection or immunity (i) held by any or all of the Debtors, the Debtors' Estates or the Reorganized Debtors and (ii) attaching to any documents, communications, or thing (whether written or oral), including but not limited to all electronic information, relating to the Claims.

22.     "Privileged Documents" means Documents subject to a Privilege.

23.     "Privileged Documents Relating to the Claims" has the meaning set forth in Section II.B.3. of this Agreement.

24.     "Privileged Information" means Information subject to a Privilege.

25.     "Privileged Information Relating to the Claims" has the meaning set forth in Section II.C.3. of this Agreement.

26.     "Reorganized Debtor(s)" has the meaning set forth in Section 1.1.191 of the Plan.

27.     "Shared Information" has the meaning set forth in Section II.D.1. of this Agreement.

28.     "State Law Constructive Fraudulent Conveyance Claims" are the law suits commenced pursuant to the authority of the order of the Bankruptcy Court issued April 25,

2011 [D.I. 8740] granting the motion of Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, and Law Debenture Trust Company of New York for authority to commence certain state law constructive fraudulent conveyance claims against former shareholders, which motion was joined in by Wilmington Trust Company, in its capacity as Successor Indenture Trustee for the PHONES Notes.

        29.    "Trustee Actions" means actions asserting Preserved Causes of Action brought by the Creditors' Committee or the Litigation Trustee, including without limitation the FitzSimons Complaint and the Advisors Complaint.

B.    Purposes

The purposes of this Agreement are to implement the Plan and Litigation Trust Agreement by, *inter alia*, (i) facilitating the reasonable access of the Litigation Trustee and its counsel and its representatives to Documents Relating to the Claims and Information Relating to the Claims in the possession, custody or control of Reorganized Debtors, while preserving coverage under the Insurance Policies; and (ii) facilitating the exchange of such Documents Relating to the Claims on a confidential basis and without being restricted by or waiving any applicable work product, attorney-client or other privilege or protection, and (iii) transferring to the Litigation Trustee certain Privileges of the Debtors, the Debtors' Estates and/or the Reorganized Debtors respecting Privileged Documents or Privileged Information

C.    Relationship to, and Incorporation of, the Confirmation Order, Plan and Litigation Trust Agreement.

This Agreement incorporates the provisions of the Litigation Trust Agreement, Plan and the Confirmation Order by reference. If any provisions of this Agreement are found to be inconsistent with the provisions of the Litigation Trust Agreement, the Plan or the Confirmation Order, each such document shall have controlling effect in the following order: (i) the Confirmation Order; (ii) the Plan; (iii) the Litigation Trust Agreement and (iv) this Agreement.

D.    No Effect on Certain Parties.

For the avoidance of doubt, and notwithstanding anything to the contrary contained in this Agreement, the Parties hereby agree and acknowledge that nothing in this Agreement is intended to, does, or shall be construed to prejudice or harm in any way, the rights, remedies, or treatment (including any releases, exculpation, indemnification or otherwise), of any Released Parties, solely in their capacity as Released Parties, under the Plan.

II.

OBLIGATIONS AND RIGHTS

A.    Cooperation.

        1.    On and after the Effective Date, the Reorganized Debtors agree to reasonably cooperate ("Cooperate" or, as a noun, "Cooperation") with the Litigation Trust in connection with the Litigation Trustee's pursuit of the Claims by providing reasonable access to

Documents Relating to the Claims, as set forth in Subsection II.B. below and to individuals, as set forth in Subsection II.C below.

2.     The Parties agree to Cooperate with respect to providing the Litigation Trustee access to information under this Agreement in a manner that facilitates the Litigation Trustee's ability to pursue the Claims but does not materially detract from or interfere with the Reorganized Debtors' ability to conduct their business operations. The Litigation Trustee shall Cooperate in providing the Reorganized Debtors as much notice as is reasonably practical in requesting Cooperation under this Agreement.

3.     The Litigation Trustee hereby acknowledges and agrees that the Reorganized Debtors are not a fiduciary or agent of the Litigation Trust and owe no duties or obligations to the Litigation Trust, except for such obligations as are expressly set forth in the Plan, the Litigation Trust Agreement and this Agreement.

4.     For the avoidance of any doubt, nothing in this Agreement shall obligate the Reorganized Debtors or their agents, representatives, or employees to facilitate the Cooperation of (i) any Directors, Officers or employees of the Tribune Company or its subsidiaries who are defendants to the Trustee Actions or State Law Constructive Fraudulent Conveyance Claims, or (ii) any of the Reorganized Debtors' non-employee directors to be appointed in accordance with the Plan or any of those directors' affiliates (other than the Reorganized Debtors), or their agents, representatives, or employees (in their capacities as such).

5.     As provided under Section 13.3.9 of the Plan, the Litigation Trust shall reimburse the Reorganized Debtors for all reasonable and documented out-of-pocket expenses incurred (including for reasonable legal fees, travel accommodations, electronic discovery and other forensic investigation and analysis and courier and mail service) solely in performing their obligations under this Agreement. The Litigation Trust shall provide reimbursement for all such reasonable out-of-pocket expenses incurred within thirty (30) days of receipt of an appropriately detailed written invoice. Reimbursement of the Reorganized Debtors under this Section II.A.5. shall be limited to a total of $625,000, provided that the Reorganized Debtors shall have the right to petition the Bankruptcy Court to increase this total upon a showing that the Reorganized Debtors' actual reasonable out-of-pocket expenses in performing their obligations under this Agreement significantly exceed $625,000. Costs and Expenses associated with the Reorganized Debtors' determination to attend depositions, hearings or trials, or otherwise monitor the Trustee Actions shall not be deemed to constitute the performance of the Reorganized Debtors under this Agreement and shall not be included in any request for reimbursement. For the avoidance of doubt, nothing in this Agreement shall be interpreted as imposing on the Litigation Trustee any obligation to reimburse any Person other than the Reorganized Debtors for any legal fees or expenses incurred in connection with this Agreement, or the production of documents or information generally.

6.     Documents and Information provided by the Debtors, the Debtors' Estates and/or the Reorganized Debtors pursuant to this Agreement shall be used in connection with the Litigation Trustee's efforts to investigate, prosecute, compromise, and/or settle the Claims, and any related trial court and appellate proceedings and not for any other purpose, including without limitation for any business or competitive function, provided that the

Litigation Trustee may produce documents and provide other information when it is legally obligated to provide documents or information in response to discovery requests or subpoenas it may receive from other parties in the Trustee Actions or other litigations, including but not limited to the parties to the State Law Constructive Fraudulent Conveyance Claims. Nothing herein shall restrict (i) the Reorganized Debtors' ability to use any information of the Reorganized Debtors, or (ii) the Litigation Trustee's ability to use Documents or information that the Litigation Trustee obtains or could obtain by means other than those provided for in Sections II.B. and II.C. of this Agreement.

7.      Cooperation shall also include commercially reasonable best efforts to preserve all Documents Relating to the Claims until after the termination of the Litigation Trust.

B.      <u>Access to Documents</u>.

The Reorganized Debtors agree to Cooperate by providing access to Documents Relating to the Claims in the possession, custody or control of the Reorganized Debtors and by using their commercially reasonable best efforts to provide Access to Documents Relating to the Claims in the possession, custody or control of professionals retained by the Debtors under Section 327 of the Bankruptcy Code, as follows:

1.      Access to Documents Relating to the Claims shall include the Reorganized Debtors providing the Litigation Trustee with access to the documents produced by the Debtors to the Document Depository established and maintained pursuant to the Depository Order and the Documents provided to the Examiner (except Documents withheld under Section II.B.3.b below), but shall not include documents produced to the Document Depository or otherwise in discovery in these Chapter 11 Cases by parties other than the Debtors, or documents created after October 27, 2010.

2.      Access to Documents Relating to the Claims shall also include providing the Litigation Trustee, upon written request (including e-mail), with additional Documents Relating to the Claims not encompassed by B.1. above, and delivery of such Documents Relating to the Claims in the possession, custody, or control of the Reorganized Debtors, to the extent that the Litigation Trustee could obtain the same by subpoena, notice of deposition, or other permissible discovery request (an "<u>Access Request</u>"), without the need for an actual subpoena, or other permissible discovery request, such information to be used solely for the purposes set forth herein.

3.      Access to Documents Relating to the Claims shall also include providing to the Litigation Trustee Documents Relating to the Claims subject to a Privilege ("<u>Privileged Documents Relating to the Claims</u>"); <u>provided, however</u>, that the Reorganized Debtors shall not be obligated to provide access to and the definition of Privileged Documents Relating to the Claims shall not include:

a.      Privileged Documents created during (or in preparation for) the Chapter 11 Cases regarding or relating to the conduct of the Chapter 11 Cases, except to the extent that such Privileged Documents contain a factual or legal analysis or review of Tribune

Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims, in which case the portions of the Privileged Documents not containing such analysis or review may be redacted;

b.    Privileged Documents which were created solely in connection with the Examiner's investigation, except to the extent that such Privileged Documents (i) were provided to the board of directors of any of the Debtors, any special committee of any board of directors of any of the Debtors, or any other person except for the Debtors' management or employees, or (ii) reflect statements by witnesses interviewed by the Examiner;

c.    Privileged Documents evaluating the reasonableness, effectiveness or confirmability of any of the plans of reorganization proposed during the Chapter 11 Cases;

d.    Privileged Documents exchanged by the Debtors or their professionals, on the one hand, and the Proponents of the DCL Plan or their respective professionals, on the other hand, relating to the DCL Plan, including the negotiation of the DCL Plan, except to the extent that such Privileged Documents were (i) created by the Debtors, and (ii) contain a factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims,, in which case the portions of the Privileged Documents containing such information should be produced, and the rest may be redacted;

e.    Privileged Documents created by the Debtors or on the Debtors' behalf, on or after October 27, 2010, the date on which the Bankruptcy Court entered the Order Granting Unsecured Creditors Committee's Standing Motions [D.I. 6150];

f.    Documents, whether or not privileged, that the Reorganized Debtors are under a statutory or contractual obligation not to provide to a third party, provided that the Reorganized Debtors provide the Litigation Trustee with a list of such documents and other information being withheld pursuant to this provision, and identify the contractual or statutory obligation pursuant to which the Reorganized Debtors are withholding the information.

4.    To the extent a formal or informal Access Request relating to the Claims is served upon the Reorganized Debtors by a party to an action pursued by or on behalf of the Litigation Trust and the Litigation Trust is in possession, custody, or control of all or part of the responsive Documents Relating to the Claims, the Reorganized Debtors may designate the Litigation Trust as the responsible party for producing such responsive Documents Relating to

the Claims in the Litigation Trust's possession, custody, or control and the Litigation Trust shall undertake such production at the Litigation Trust's own expense.

C.   <u>Access to Individuals</u>.

The Reorganized Debtors agree to Cooperate by providing reasonable access to employees of the Reorganized Debtors who have knowledge relating to the Claims, except those individuals covered by Section II.A.4., for the purpose of providing the Litigation Trustee with Information Relating to the Claims.  The Reorganized Debtors shall provide such access as follows:

1.      The Reorganized Debtors shall permit and Cooperate in the scheduling of telephone conferences, periodic meetings, interviews, and appearances of such employees as witnesses (by affidavits, at depositions and at trials, as necessary) and preparation as witnesses during normal business hours subject to such limitations as may be reasonably imposed by the Reorganized Debtors and the Reorganized Debtors will permit appearances at depositions without the need for the Litigation Trustee to serve a deposition subpoena upon such witnesses. Such permission and Cooperation does not limit the rights of such individuals or their personal counsel to object to such conferences, meetings, interviews or appearances.

2.      The Reorganized Debtors shall permit and Cooperate in the scheduling of such individuals to appear at any trial of the Claims, without the need for the Litigation Trustee to serve a trial subpoena upon such witnesses to the extent that the Litigation Trustee could obtain the same by permissible Access Request.  Such permission and Cooperation does not limit the rights of such individuals or their counsel to object to such testimony.

3.      Access to Individuals shall include the Reorganized Debtors authorizing employees of the Reorganized Debtors to disclose to the Litigation Trustee, upon its request, Information Relating to the Claims subject to a Privilege ("<u>Privileged Information Relating to the Claims</u>"); <u>provided, however</u>, that the Reorganized Debtors shall not be obligated to provide access to and the definition of Privileged Information Relating to the Claims shall not include:

a.      Privileged Information regarding or relating to the conduct of the Chapter 11 Cases, except to the extent that such Privileged Information constitutes or reflects factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims;

b.      Privileged Information created solely in connection with the Examiner's investigation, except to the extent that such Privileged Information (i) was provided to the board of directors of any of the Debtors, any special committee of any board of directors of any the Debtors, or any other Person except for the Debtors' management or employees,  or (ii) reflects statements by witnesses interviewed by the Examiner;

c.      Privileged Information regarding or relating to the reasonableness, effectiveness or confirmability of any of the plans of reorganization proposed during the Chapter 11 Cases;

d.      Privileged Information exchanged by the Debtors or their professionals, on the one hand, and the Proponents of the DCL Plan or their respective professionals, on the other hand, relating to the DCL Plan, including the negotiation of the DCL Plan, except to the extent that such Privileged Information was (i) created by the Debtors, and (ii) constitutes or reflects a factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims, in which case the portions of the Privileged Information containing such analysis should be provided, and the rest may be withheld;

e.      Privileged Information created by the Debtors or on the Debtors' behalf, on or after October 27, 2010, the date on which the Bankruptcy Court entered the Order Granting Unsecured Creditors Committee's Standing Motions [D.I. 6150];

f.      Information, whether or not privileged, that the Reorganized Debtors are under a statutory or contractual obligation not to provide to a third party, provided that the Reorganized Debtors identify for the Litigation Trustee of the statutory or contractual obligation pursuant to which the Information is being withheld.

D.      <u>Confidentiality</u>.

All Documents Relating to the Claims and/or Information Relating to the Claims provided pursuant to Sections II.B. and II.C. of this Agreement (collectively, the "<u>Shared Information</u>") pursuant to this Agreement is hereby designated as confidential ("<u>Confidential Information</u>"), subject to the limitations on disclosure set forth in this Section II.D., with the following exceptions: (i) the 1,200 exhibits underlying the Examiner Report are public; (ii) the 3,346 exhibits publicly filed at the Confirmation Hearing are public; and (iii) the 139 exhibits filed under seal at the Confirmation Hearing are hereby designated as "confidential – attorneys eyes only," as marked on those exhibits during the Confirmation Hearing. The Reorganized Debtors may designate Shared Information as "Highly Confidential" if the Shared Information both (i) contains information that is not generally available to the public; and (ii) contains trade secrets or sensitive commercial, financial, personal or business information, the public disclosure of which would have a material adverse affect on the Reorganized Debtors' business.

1.      The Litigation Trust, on its behalf and on behalf of its counsel and their respective agents, representatives, or employees, acknowledges and agrees that it intends to and will maintain the confidentiality of all Documents Relating to the Claims and/or information provided pursuant to Sections II.B. and II.C. of this Agreement (collectively, the "<u>Shared</u>

<u>Information</u>"), and such Shared Information shall not be disclosed to any third party except as provided for herein.

2.    Shared Information may only be disclosed to the following persons:

a.    The Litigation Trustee and outside counsel employed by the Litigation Trustee to pursue the Claims;

b.    The Litigation Trust Advisory Board and their representatives;

c.    Outside counsel and in-house counsel employed by all parties to Trustee Actions, business persons employed by all parties to Trustee Actions whose functions require that they have access to Shared Information in connection with the prosecution or defense of the action(s), persons employed by an insurer of parties to Trustee Action(s) whose functions require that they have access to Shared Information in connection with the prosecution or defense of the action(s), and, in the sole discretion of the Litigation Trustee, beneficiaries of the Litigation Trust;

d.    Expert(s) or consultant(s) who actively assist in the preparation and/or litigation of Trustee Actions;

e.    Paralegal, stenographic, technical, clerical, document management and secretarial personnel employed by the persons or entities listed in (a), (b), (c) or (d);

f.    The Court and court personnel, including stenographic, video, or audio reporters engaged to record depositions in Trustee Actions;

g.    Any person identified on the face of any such Shared Interest Information as an author or recipient thereof;

h.    Any person who is determined to have been an author and/or previous recipient of the Shared Information, but is not identified on the face thereof;

i.    During their depositions or trial testimony (or preparation therefor), witnesses to Trustee Actions to whom disclosure is reasonably necessary; and

j.    Outside counsel and in-house counsel employed by Persons to whom the Litigation Trustee produces Documents or Information in response to a discovery request or subpoena in other litigation asserting claims arising out of or related to Tribune's 2007 leveraged buyout transactions, business persons employed by such Persons whose functions require that they have access to Shared Information in connection with the prosecution or defense of such

11

litigation, and persons employed by an insurer of such Persons whose functions require that they have access to Shared Information in connection with the prosecution or defense of the action(s);

3. Each person identified in Subsections II.D.2.(a), (b), (c), (d) and (j) above to whom Shared Information is furnished, shown or disclosed shall, prior to the time he or she receives access to such materials, be provided by the person furnishing such material a copy of this Agreement and agree to be bound by its terms, and shall certify that he or she has read the Agreement and fully understands its terms, by signing the certificate attached as Exhibit B. To the extent a confidentiality agreement or protective order is entered in the Trustee Actions that has different provisions or different protections than those set forth herein, such agreement or protective order shall control the use of Documents and Information.

4. Shared Information may also be filed with the Court and/or used in court hearings, provided that the Person intending to use such Shared Information undertake reasonable efforts to request that Shared Information designated as Highly Confidential be filed and/or used under seal, pursuant to whatever rule, local rule, confidentiality agreement or protective order governs such requests.

5. In the event any attempt is made by a third party other than those persons identified in Subsection II.D.2. to secure or obtain the Shared Information from the Litigation Trustee, the Litigation Trustee shall provide written notice of such attempt to counsel for the Reorganized Debtors no less than fifteen (15) days prior to any disclosure of the requested Shared Information. Any such notice required by this subsection shall include copies of any correspondence, subpoenas, summonses, and the like, that relate to the attempt by the third party to obtain Shared Information.

6. If at any point the Litigation Trustee contends that a Document Relating to the Claims that the Reorganized Debtors have designated as confidential or highly confidential should not be so designated, the Litigation Trustee shall notify the Reorganized Debtors of such dispute in writing. If the parties are not able to agree upon the appropriate designation, either Party shall be entitled to submit the dispute to the Bankruptcy Court on the application of the designation. Until such time as the matter is resolved by the Bankruptcy Court, such Document Relating to the Claims shall retain its confidentiality designation pending the outcome of such dispute.

7. The foregoing is without prejudice to the right of any Party to:

a. Resist discovery as to third parties with respect to – or seek to obtain additional or different protection for – material claimed to be Shared Information as to which the Reorganized Debtors claim a legal obligation not to disclose pursuant to applicable law or Privilege; or

b. Object to the use, relevance, or admissibility at trial of any Shared Information, whether or not designated in whole or in part as Shared Information governed by this Agreement.

E.    Privileges and Immunities.

1.    Any Privilege or other protection from disclosure of the Debtors, the Debtors' Estates and/or the Reorganized Debtors that applies to any Privileged Documents Relating to the Claims or Privileged Information relating to the Claims, whether in the possession of the Debtors, the Debtors' Estates, the Reorganized Debtors, or any other Person, is hereby transferred, assigned, given over to, and shall vest exclusively in, the Litigation Trustee, and the Litigation Trustee shall have the exclusive authority and sole discretion to waive any such privilege or immunity.   The Litigation Trustee is expressly authorized to formally or informally request or subpoena Privileged Documents Relating to the Claims or Privileged Information relating to the Claims from any Persons other than the Reorganized Debtors, including attorneys, professionals, consultants, and experts.

2.    The disclosure and/or provision of Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims to the Litigation Trustee, whether from Debtors, the Debtors' Estates, the Reorganized Debtors, or any other Person, is not intended to and shall not void or waive any applicable Privilege.   Documents Relating to the Claims and Information Relating to the Claims that would otherwise be protected from discovery by virtue of any applicable Privilege or protection shall remain protected by such Privilege or protection from disclosure to any third party, including, without limitation, any federal state or local government agency, any grand jury, any litigant and/or use of such protected Shared Information in any litigation concerning the Claims, subject to the Litigation Trustee's determination to waive any such Privilege or protection as to any Shared Information.

3.    Any right to preserve or enforce a Privilege applying to Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims that arises from any joint defense, common interest, or similar agreement is hereby transferred, assigned, given over to, and shall vest exclusively in, the Litigation Trustee.

4.    Except to the extent that Section II.E.1, II.E.2 or II.E.3 provide otherwise, this Agreement and the Confirmation Order are not intended to, and shall not be construed to (a) create any Privilege that does not currently exist; (b) revive any Privilege that was waived prior to the date of this Agreement; or (c) determine that any specific documents or information are protected by any Privilege.

5.    If the Debtors, the Reorganized Debtors or the Litigation Trustee inadvertently produce Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims to any third party, such production shall not be deemed to destroy any Privilege, or be deemed a waiver of any confidentiality protections afforded to such Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims.   In such circumstances, the disclosing Party shall promptly upon discovery of the production notify the Litigation Trustee of the production and shall demand of all recipients of the inadvertently disclosed Shared Information, Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims that they return or confirm the destruction of the Shared Information, Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims.

6. If at any point the Litigation Trustee disputes the Reorganized Debtors' decision to withhold Documents Relating to the Claims or Information Relating to the Claims, including Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims, the Litigation Trustee shall notify the Reorganized Debtors of such dispute in writing. If the parties are not able to agree, either Party shall be entitled to submit the dispute to the Bankruptcy Court for a determination on whether the Reorganized Debtors may withhold such Documents Relating to the Claims or Information Relating to the Claims that are subject to the dispute. Until such time as the matter is resolved by the Bankruptcy Court, the Reorganized Debtors may continue to withhold such Documents Relating to the Claims or Information Relating to the Claims pending the outcome of such dispute.

F.    Return of Shared Materials

Within ninety (90) calendar days of the termination of the Litigation Trust, all Documents Relating to the Claims and all other Documents containing Shared Information exchanged under the provisions of this Agreement, shall be returned to the Reorganized Debtors, or, at the direction of the Reorganized Debtors, destroyed except to the extent that any of the foregoing includes or reflects work product of the Litigation Trustee or parties to the action(s) filed by the Litigation Trustee (which one copy of such work product may be maintained by outside counsel for the Litigation Trustee or the parties, but not by the Litigation Trustee or the parties themselves), and except to the extent that such material has been filed with a court in which proceedings filed by the Litigation Trustee are being conducted, provided such information is stored in a manner so as to preserve its confidentiality. Any Privilege or other protection from disclosure to any third party that applies to any Privileged Documents Relating to the Claims or Documents containing Shared Information returned to the Reorganized Debtors pursuant to this Section II.F., shall, after the return of such Documents, vest exclusively in the Reorganized Debtors, and the Reorganized Debtors shall have the exclusive authority to waive any such privilege or immunity.

G.    No Limitation on Access.

Notwithstanding anything in this Agreement to the contrary, the Parties acknowledge and agree that nothing herein shall limit the full exercise of the rights under applicable law of the Litigation Trustee to seek and obtain information, documents or to take depositions of any person by subpoena or otherwise pursuant to legal process, regardless of whether or not an obligation of Cooperation is owed hereunder with respect to such information, documents or depositions or any demands made under this Agreement shall have been complied with in full or in part or any remedy with respect to any actual or purported breach or noncompliance with this Agreement has been sought; provided, however, that in connection with any exercise of rights by the Litigation Trustee to seek and obtain information, documents or to take depositions of any person by subpoena or otherwise pursuant to legal process, the Reorganized Debtors shall retain any objections or defenses to such exercise of rights that they may have under applicable law.

H.    Reservation of Rights.

The Parties acknowledge and agree that nothing herein shall limit, in any way, (i) the Litigation Trustee's rights under applicable law to seek Documents Relating to the Claims or

Information Relating to the Claims, including but not limited to the right to serve a subpoena seeking Documents or information encompassed by Sections II.B and/or II.C of this Agreement on the Reorganized Debtors or any other Person, or (ii) the Reorganized Debtors' or any other person's or entity's rights to object or raise all applicable defenses to such Access Requests.

III.

TERM OF THIS AGREEMENT

A.    <u>General</u>.

This Agreement shall terminate automatically upon the termination of the Litigation Trust in accordance with its governing documents; <u>provided</u>, <u>however</u>, that (i) Section II.F shall survive the termination of this Agreement, and (ii) following such termination the Parties will continue to be bound by this Agreement and this Agreement shall continue to protect all Documents Relating to the Claims and information provided or disclosed in accordance with this Agreement.

IV.

MISCELLANEOUS

A.    <u>Notices</u>.

All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be effective when either served by hand delivery, electronic mail, electronic facsimile transmission, express overnight courier service, or by registered or certified mail, return receipt requested, addressed to the Parties at their respective addresses set forth below, or to such other address or addresses as either Party may later specify by written notice to the other:

1.    To the Litigation Trustee:  to the address designated in the Litigation Trust Agreement;

2.    To the Reorganized Debtors:  to the address designated in the Litigation Trust Agreement.

B.    <u>Counterparts; Effectiveness</u>.

This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Agreement shall become effective on the later of (i) the date when each Party hereto shall have received counterparts thereof signed by all the other Parties hereto, or (ii) the Effective Date.

C.    <u>Governing Law</u>.

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws of the State of Delaware or any

other jurisdiction. Notwithstanding the foregoing choice of Delaware law, the Parties agree that the Bankruptcy Court will have non-exclusive jurisdiction of all matters arising out of or in connection with this Agreement.

D.      Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction to hear and resolve any disputes arising from or relating to this Agreement.

E.      Severability; Validity.

Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby and to such end, the provisions of this Agreement are agreed to be severable.

F.      Relationship of Parties.

Nothing contained in this Agreement shall be construed to affect the separate and independent representation of each Party by their respective counsel according to what its counsel believes to be in his, her, or its client's best interest. Each Party represents that it understands and acknowledges that it is represented exclusively by the Party's own attorneys.

G.      No Waiver.

The Reorganized Debtors and the Litigation Trustee agree that no failure or delay by either Party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power and privilege hereunder.

H.      Entire Agreement.

Subject to the provisions set forth in Section I.C. of this Agreement, this Agreement contains the entire agreement of the Parties concerning the subject matter hereof, and no modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties unless approved in writing by the Parties.

I.      Authorization.

Each of the undersigned individuals represents and warrants that he/she has the power and authority to enter into this Agreement and bind their respective companies or trust as its authorized representatives.

J.      Titles.

The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

K.     <u>Binding Effect</u>.

The Parties agree that this Agreement is for the benefit of and shall be binding upon the Parties and their respective representatives, transferees, successors, and assigns.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement Respecting Transfer Of Documents, Information, And Privileges From Debtors, and, Reorganized Debtors, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

TRIBUNE COMPANY (for itself and on behalf of the other Debtors, as Debtors and Debtors in Possession, and the Guarantor Non-Debtors and Non-Guarantor Non-Debtors, and, as reorganized under chapter 11 of the Bankruptcy Code)

_____

By:
Title:

[INSERT NAME], LITIGATION TRUSTEE OF THE LITIGATION TRUST ESTABLISHED UNDER THE LITIGATION TRUST AGREEMENT DATED [ ],2011 PURSUANT TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.

_____

[INSERT NAME], as

LITIGATION TRUSTEE