# EXHIBIT 7

**Updated summary chart reflecting, among other things,
the current status of objections to the DCL Plan**

# Summary of Objections to Fourth Amended DCL Plan[1]

# UNRESOLVED OBJECTIONS

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| **1. OBJECTION TO CLASSIFICATION OF SWAP CLAIM** | | | |
| **Law Debenture Trust Company of New York ("Law Debenture")** [D.I. 11668] | 1. <u>Classification of the Swap Claim</u>. The Swap Claim is improperly classified as an Other Parent Claim, in violation of section 1122(a) of the Bankruptcy Code, rather than as a Senior Loan Claim. Law Debenture asserts that recent findings of fact by the Court in the Allocation Disputes Decision render the Court's initial ruling on this point in the Confirmation Opinion no longer applicable. (Obj. at ¶¶ 3, 22-25). Moreover, if the Court confirms its initial ruling with respect to the Swap Claim, the same reasoning should apply to Law Debenture's expense claim, and the Law Debenture expense claim should be similarly classified as an Other Parent Claim. (<u>See</u>, infra, § II) | 1. The Swap Claim is properly classified. The Court considered this argument and rejected it in the Confirmation Decision. The Allocation Disputes Decision did not render this ruling inapplicable. (Memorandum at ¶¶ 41-47) | 1. This objection is unresolved. |
| **2. OBJECTIONS TO CLASSIFICATION OF SENIOR NOTES INDENTURE TRUSTEE ATTORNEYS' FEES CLAIMS** | | | |
| **Law Debenture Trust Company of New York** [D.I. 11668] | 1. <u>Classification of the Law Debenture Expense Claim</u>. Law Debenture's expense claim is not similar in legal nature, character or effect as the other claims in the Senior Noteholder Class. Law Debenture's expense claim is improperly classified as a Senior Noteholder Claim in violation of section 1122(a) of the Bankruptcy Code and instead should be classified as an Other Parent Claim in Class 1F. (Obj. at ¶¶ 2, 12-21, 24) | 1. The DCL Plan properly classifies the Indenture Trustees' Expense Claims. The Indenture Trustees' fee claims should be classified together with the underlying Senior Noteholder Claims because both sets of claims arise under the Senior Indentures, the claims are asserted against the same entity, the claims have the same priority and the fee claims were asserted in the same proofs of claim that were filed in respect of the other Senior Noteholder Claims for principal and interest due on the Senior Notes. (Memorandum at ¶¶ 48-52) | 1. This objection is unresolved. |
| **Deutsche Bank Trust Company Americas ("DBTCA")** [D.I. 11667] | 1. <u>Classification of DBTCA Expense Claim</u>. The DBTCA Expense Claims should be classified as Other Parent Claims (Class 1F) pursuant to § 1122 of the Bankruptcy Code, rather than Senior Noteholder Claims (Class 1E) because they are contractual obligations owed under the DBTCA Indenture separate and apart from the principal and interest owed to the Senior Noteholders. (Obj. at ¶¶ | 1. The DCL Plan properly classifies the Indenture Trustees' Expense Claims. The Indenture Trustees' fee claims should be classified together with the underlying Senior Noteholder Claims because both sets of claims arise under the Senior Indentures, the claims are asserted against the same entity, the claims have the same priority and the fee claims were | 1. This objection is unresolved. |

---

[1] The descriptions set forth in this chart are intended as the summaries only. For the avoidance of doubt, nothing contained herein shall impair or otherwise affect the DCL Plan Proponents' rights in regard to the objections. Reference should be made to the objections, the Memorandum or the DCL Plan, as applicable, for more complete descriptions of the objections, the DCL Plan Proponents' responses thereto and the terms of the DCL Plan.

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | 5, 8-21) | asserted in the same proofs of claim that were filed in respect of the other Senior Noteholder Claims for principal and interest due on the Senior Notes. (Memorandum at ¶¶ 48-52) | |
| **3. ISSUES RAISED IN TENDERING NOTEHOLDERS' MOTION TO RECONSIDER, AND OBJECTION TO CLASSIFICATION OF TENDERING NOTEHOLDER CLAIMS** | | | |
| **Citadel Equity Fund and Camden Asset Management (the "Tendering Noteholders")** [D.I. 11659] | 1. Classification of PHONES Notes Claims. The Tendering Noteholders' claims are not subject to the subordination provisions of the PHONES Indenture. Thus, the claims of the Tendering Noteholders and the PHONES Notes Claims of non-tendering holders are not "substantially similar," and therefore, their classification together violates section 1122(a) of the Bankruptcy Code. (Obj. at ¶¶ 16-22) | 1. The classification and treatment of the PHONES Notes Claims are appropriate under the DCL Plan. The Court has already concluded that the claims of the Tendering Noteholders should be classified with the remaining PHONES Notes Claims and treated alike. (Memorandum at ¶¶ 53-61) | 1. This objection is unresolved. |
| **4. OBJECTIONS REQUESTING ESTABLISHMENT OF RESERVES FOR THE PHONES AND EGI-TRB** | | | |
| **Wilmington Trust Company ("WTC")** [D.I. 11666] | 1. Reserves/Catch-up. The DCL Plan should establish and mandate the use of reserves for recoveries of Class 1J Claims if either or both of the PHONES' Notes Appeals is successful. (Obj. at ¶¶ 2, 16-18). Reserves should be established for (i) Article III Distributions, excluding proceeds of Litigation Trust Assets, and (ii) proceeds of Litigation Trust Assets. At a minimum, the DCL Plan and Litigation Trust Agreement should be amended to include a catch-up provision that would allow holders of Class 1J Litigation Trust Interests to receive payments from Net Litigation Trust Proceeds that would provide the holders of Class 1J Litigation Trust Interests with the recovery that they would have received absent contractual subordination of the PHONES. | 1. The DCL Plan need not provide for the establishment of reserves. Establishing reserves would result in the withholding of hundreds of millions of dollars from creditors. Additionally, WTC actually seeks a stay pending appeal without meeting the requirements for such a stay. (Memorandum at ¶¶ 65-77) | 1. This objection is unresolved. |
| **EGI-TRB LLC** [D.I. 11658] | 1. Reserve. The DCL Plan must provide for sufficient reserves to pay EGI-TRB claims on an unsubordinated basis in the event the Court's Allocation Disputes rulings are overturned on appeal and the EGI-TRB's claims become unsubordinated claims. Failure to provide a reserve for EGI-TRB's claims results in differing treatment of disputed unsecured claims and demonstrates that the DCL Plan is not fair and equitable and violates § 1129(b). (Obj. at pp. 5-7). Without a reserve, the DCL Plan deprives EGI-TRB of its appellate rights. Further, there is no justification for treating a non-final order regarding subordination differently from a non-final order | 1. The DCL Plan need not provide for the establishment of reserves. Establishing reserves would result in the withholding of hundreds of millions of dollars from creditors. Additionally, EGI-TRB actually seeks a stay pending appeal without meeting the requirements for such a stay. (Memorandum at ¶¶ 65-77) | 1. This objection is unresolved. |

2

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | regarding claim allowance. | | |
| **5.** | **OBJECTION TO NOT INDEMNIFYING FORMER EMPLOYEES WHO ARE PREFERENCE DEFENDANTS** | | |
| **Former Employees (Allen, Hertz, Slason, and Stancampiano) (the "Former Employees")** [D.I. 11661] | 1. <u>D&O Indemnification/Reimbursement</u>. The Former Employees request that Section 11.6.1 of the DCL Plan be amended to provide that the Debtors' prepetition indemnification and reimbursement obligations survive as to all former directors, officers, or employees of the Debtors who are the subject of "Related Person Preference Actions," regardless of their employment status as of the Petition Date. Limiting survival of indemnification and reimbursement obligations to only those employed on or after the Petition Date unfairly discriminates against those that departed prior to the Petition Date but that are subject to the same Adversary Proceedings. | 1. Prepetition indemnification and reimbursement obligations should not survive as to individuals who were not directors, officers or employees of the Debtors on or after the Petition Date. Giving their indemnification claims administrative status would be inappropriate because they did not render services after the commencement of the Chapter 11 Cases. (Memorandum at ¶¶ 143-146) | 1. This objection is unresolved. |
| **7.** | **PLAN'S NEUTRALITY ON PARTIES' RIGHTS IN DISCLAIMED STATE LAW AVOIDANCE CLAIMS AND THE PRESERVATION OF INDENTURES FOR PURPOSES OF ONGOING LITIGATION** | | |
| **Aurelius Capital Management, L.P. ("Aurelius")** [D.I. 11664] | 1. <u>Cancellation of the Senior Notes Indenture and PHONES Notes Indenture</u>.[2] Additional language should be added to Section 5.8.2 of the DCL Plan to further discredit any potential argument that the Senior Notes Claims and PHONES Notes Claims are discharged under the DCL Plan for all purposes, including with respect to pursuing Disclaimed State Law Avoidance Claims against the state law defendants or Preserved Causes of Action. (Obj. at ¶¶ 5, 16-17) The Indentures, Senior Notes and PHONES Notes should survive for all purposes relevant to the pursuit of Preserved Causes of Action and Disclaimed State Law Avoidance Claims. Aurelius requests that Section 5.8.2 state: "Notwithstanding anything contained elsewhere in this Plan, (x) the Indentures **and the debt issued thereunder** shall continue in effect solely to the extent necessary to allow…" (changes in bold). Additionally, at the confirmation hearing,[3] Aurelius raised | 1. Section 5.8.2 of the DCL Plan has been modified to state that, subject to certain limitations, "the Indentures and the debt issued thereunder shall continue in effect solely for" the specific purposes provided in the DCL Plan. The DCL Plan proponents have also inserted additional of these purposes, including "(vii) any Indenture Trustee to pursue or continue to pursue any appeal of an order of the Bankruptcy Court, commenced by such Indenture Trustee on or before the Effective Date, (viii) Wilmington Trust or Deutsche Bank (or their respective successors under the applicable Indentures) to serve as members of the Litigation Trust Advisory Board or to replace a designee to the Litigation Trust Advisory Board appointed by such member solely in accordance with the terms of this Plan and the Litigation Trust Agreement, and (ix) the continuation | 1. The modified language of Section 5.8.2 of the DCL Plan resolves Aurelius's objection. The Foundations' statement remains unresolved. |

---

[2] On May 31, 2012, the Robert R. McCormick Foundation and the Cantigny Foundation (the "<u>Foundations</u>") filed a statement in response to Aurelius's objection [D.I. 11725]. The Foundations argue, generally, that Aurelius's changes are wrong as a matter of bankruptcy law and inconsistent with prior orders of the Court. On June 1, 2012, a group of the Debtors' former officers and directors filed a joinder to the Foundations' statement [D.I. 11740].

[3] <u>See</u> Tr. 6/8/12 at 4920:3 - 4921:22.

| Objecting Party | Objections | Response / Proposed Resolution | Status |
|---|---|---|---|
| | an objection to the DCL Plan Proponents' proposed addition of the following language to the DCL Plan: "For the avoidance of doubt, nothing in this Plan shall or is intended to impair the rights of . . . (iii) any defendant in defending against a Disclaimed State Law Avoidance Claim or a Preserved Cause of Action." | of any contractual right or obligation that any Indenture Trustee has with any Person other than the Debtors, the Reorganized Debtors or a Released Party;". Moreover, the following language has been added to Section 5.8.2 of the DCL Plan: "The foregoing subsections 5.8.2(x)(iv) and (v) shall apply to the Claims that are subject to the Retiree Claimant Settlement Agreement. For the avoidance of doubt, nothing in this Plan shall or is intended to impair the rights of (i) any Indenture Trustee or any Holder of a Senior Notes Claim or PHONES Notes Claim from prosecuting any Disclaimed State Law Avoidance Claim, with the exception of any Disclaimed State Law Avoidance Claim that becomes a Holder Released Claim pursuant to Section 11.2.2 of this Plan, and (ii) the Litigation Trust and Litigation Trustee from pursuing the Preserved Causes of Action." (DCL Plan at § 5.8.2) Finally, the following sentence has been added to the definition of Preserved Causes of Action in 1.1.174: "For the avoidance of doubt, nothing in this Plan is intended to determine whether any defendant properly faces liability with respect to Preserved Causes of Action." (DCL Plan at § 1.1.174) | |
| **8.** | **OBJECTIONS INVOLVING LITIGATION TRUST** | | |
| | **e.** Committee's Transfer of Privileges and Documents to Litigation Trust | | |
| **Aurelius Capital Management, L.P.** [D.I. 11753][4] | 1. <u>Official Committee of Unsecured Creditors LT Agreement</u>. Aurelius believes that certain provisions of the Agreement Respecting Transfer of Documents, Information, and Privileges from the Official Committee of Unsecured Creditors (the "<u>Committee's LT Agreement</u>") should be revised as indicated in Aurelius's blacklined draft of the Committee's LT Agreement. | 1. The Committee's LT Agreement is reasonable and appropriate, and should be approved. The DCL Plan Proponents believe that it is inappropriate for the Litigation Trustee to reserve the right to subpoena the Creditors' Committee and its professionals for precisely the same documents and information the Creditors' Committee is agreeing to provide voluntarily under the Committee's LT Agreement. | 1. This objection is unresolved. |

---

[4] This unresolved issue was raised in Aurelius's supplemental objection. <u>See</u> footnote 9.

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| **Aurelius Capital Management, L.P.** [D.I. 11664] | 1. <u>Definition of Selling Stockholders</u>. The definition of "Selling Stockholders" should be amended to make clear that it encompasses all defendants to the Disclaimed State Law Avoidance Actions, in capacities other than as beneficial owners. (Obj. at ¶¶ 5, 18-20) | 1. The definition has been modified in the DCL Plan to read: "<u>Selling Stockholders</u> means (i) all Persons that directly or indirectly received payments, including the initial recipients and subsequent transferees, made in exchange for the purchase and/or redemption by Tribune of issued and outstanding common stock of Tribune on or about June 4, 2007 and/or pursuant to the Step Two Transactions, including all legal or beneficial owners of such stock, solely in their capacity as direct or indirect recipients of payments with respect to such purchase or redemption; and (ii) the guardians, trustees, partners, administrators, custodians, fiduciaries, estates, executors, owners, representatives, beneficiaries, members, and managers of such Persons within subsection (i) above to the extent that they must be named as defendants in order to pursue state law fraudulent conveyance claims with respect to Persons within subsection (i) above, solely in such capacity and solely with respect to such amounts as are sought with respect to Persons within subsection (i)." (DCL Plan at § 1.1.199) | 1. This objection is resolved. |
|  | 2. <u>Definition of Disclaimed State Law Avoidance Claims</u>. The DCL Plan Proponents should delete subsections (iv) and (v) of the "<u>provided, however</u>" clause in the definition of "Disclaimed State Law Avoidance Claims" because subsection (iv) is redundant of subsection (iii), and subsection (v) is redundant of subsections (i)-(iii). (Obj. at ¶¶ 5, 21). | 2. The definition has been modified in the DCL Plan to read: "<u>Disclaimed State Law Avoidance Claims</u> means any and all LBO-Related Causes of Action arising under state fraudulent conveyance law that existed in favor of any Holder of a Claim that arose prior to the Petition Date against Selling Stockholders, solely in their capacities as such and solely with respect to funds received in their capacities as such, that are not released by the relevant Holder of a Claim in accordance with Section 11.2.2 of this Plan; provided, however, that Disclaimed State Law Avoidance Claims shall not include (i) any claims for intentional fraudulent conveyance, (ii) any and all LBO-Related Causes of Action arising under state fraudulent conveyance law set forth in the amended complaint filed by the Creditors' Committee on December 7, 2010 in the lawsuit entitled *Official Committee of Unsecured* | 2. This objection is resolved. |

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | | *Creditors of the Tribune Company v. FitzSimons, et al. (In re Tribune Co.)*, Adv. Proc. No. 10-54010 (Bankr. D. Del.) (KJC), (iii) any Released Claims, or, for the avoidance of doubt (iv) any LBO-Related Causes of Action against any Released Parties or any LBO-Related Causes of Action arising under state fraudulent conveyance law as to which the right to pursue, prosecute, settle or release such claims has been explicitly retained by the Estates. For the avoidance of doubt, nothing in this Plan is intended to determine whether a Selling Stockholder properly faces liability with respect to the Disclaimed State Law Avoidance Claims." (DCL Plan at § 1.1.67) | |
| | 3. <u>Professional Fees of the Senior Lenders and Bridge Lenders</u>.[5, 6] The DCL Plan's payment of fees and expenses of the Senior Lenders' and Bridge Lenders' professionals without requiring fee applications and without meeting the "substantial contribution" requirement of the Bankruptcy Code violates 1129(a)(4) and is contrary to applicable Third Circuit precedent. (Obj. at ¶¶ 5-14) | 3. This objection has been resolved as part of a resolution of multiple objections. Additionally, Section 9.1 of the DCL Plan has been amended to provide for the Lenders to file their fee statements on the docket for disclosure purposes only. (DCL Plan at § 9.1) | 3. This objection is resolved. |
| | 4. <u>Litigation Trust Confidentiality and Common Interest Privilege Provisions</u>:[7, 8] The LT Confidentiality Agreement should explicitly provide that all of the Debtors' privileges attached to all documents, communications or other information related to the Preserved Causes of Action be transferred to the Litigation Trustee to be utilized by the Litigation Trustee in any manner he deems appropriate, and that he has the | 4. All issues regarding the LT Confidentiality Agreement (now modified in name and defined as the "LT Agreement") have been resolved. The DCL Plan Proponents and the objectors have generally agreed that the transfer of documents or information from the Committee or Debtors to the Litigation Trustee does not in and of itself waive any applicable privilege, and that the vesting of the privilege in the Litigation | 4. Aurelius's objection is resolved. The DCL Plan Proponents have also agreed to add language to the proposed Confirmation Order |

---

[5] On June 2, 2012, Wells Fargo Bank, N.A., as Bridge Agent, filed a reply to this objection.

[6] Law Debenture joined in Aurelius's objection. (Obj. at ¶ 6)

[7] Law Debenture joined in Aurelius's objection. (Obj. at ¶ 6)

[8] On June 1, 2012 a group of the Debtors' former officers and directors filed a reply to Aurelius's objection whereby they requested that the DCL Plan Proponents insert certain language into the Confirmation Order making clear that any agreement or similar document that may be entered into by the Litigation Trustee and the Reorganized Debtors at some unknown future date does not impact the ability of the judge in the MDL proceedings to control the litigation before him [D.I. 11739].

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | right to waive any applicable privilege. (Obj. at ¶¶ 5, 22-25) | Trustee does not waive any applicable privilege. All other issues relating to whether a privilege exists as to a specific document, whether it has been waived with respect to a specific document, and whether a privilege has been created with respect to a specific document are not addressed in any way by the LT Agreement or the Court's approval of it. | that resolves the objection of the Debtors' former officers and directors. |
| | 5. <u>Requested Litigation Trust Agreement Changes</u>: The terms of the Litigation Trust Agreement ("<u>LTA</u>") should be modified, as follows: (Obj. at ¶¶ 5, 26) | | |
| | a. <u>Section 1.5.</u> The word "directly" should be stricken from section 1.5 of the LTA to ensure that the Litigation Trustee has the full power and authority to take actions or seek orders from the court that materially affect the interests of the Litigation Trust – whether the affect is direct or indirect. | a. Section 1.5 of the LTA has been modified to strike the words "directly affect the interest of the Litigation Trustee". | a. This objection is resolved. |
| | b. <u>Section 3.3(b).</u> The first sentence of Section 3.3(b) should be either deleted entirely or revised to preserve the Litigation Trustee's ability to seek modifications of the DCL Plan or Confirmation Order to the extent necessary to aid the Litigation Trustee in the acquitting of its duties and obligations under the DCL Plan and the Litigation Trust Agreement. | b. Aurelius agreed not to pursue this argument. | b. This objection is resolved. |
| | c. <u>Section 4.7(d).</u> This section should provide that any successor Indenture Trustee appointed for any reason will have the ability to appoint its designee to the Litigation Trust Advisory Board. | c. Section 4.7(d) of the LTA has been modified to state that "Any successor Indenture Trustee to Wilmington Trust and/or Deutsche Bank shall have the right to appoint a member of the Litigation Trust Advisory Board to replace the designee of Wilmington Trust and/or Deutsche Bank, as applicable." | c. This objection is resolved. |
| | d. <u>Section 5.3</u>. The LTA should be amended to (i) disclose the identity of the Valuation Expert, (ii) provide that the valuation submitted by the Valuation Expert will be made available to all Litigation Trust Beneficiaries and that such beneficiaries will be afforded the opportunity to challenge the valuation | d. Section 5.3 of the LTA has been modified to provide, generally, that the valuation is not binding on the Litigation Trust Beneficiaries, the Litigation Trust or the Litigation Trustee for any purpose other than U.S. federal income tax purposes, and that it does not impair or prejudice | d. This objection is resolved. |

7

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | and (iii) provide that failure to challenge the valuation will not prejudice the Litigation Trust or the Litigation Trust Beneficiaries in any way.<br><br>e. Section 11.3. The LTA should be governed by the law of the state of New York. | any rights, claims, powers, duties, authority and privileges of such parties.<br><br>e. The parties have agreed that Delaware law will govern. Section 11.3 of the Litigation Trust Agreement has been modified accordingly. | e. This objection is resolved. |
| | 6. Expense Fund Cap. There should not be a cap on the size of the Expense Fund. Additionally, the LTA and DCL Plan should be modified to provide that the Litigation Trust should not be required to repay the Litigation Trust Loan unless it has sufficient proceeds to replenish the Expense Fund to $50 million after repayment of the Litigation Trust Loan and after payment of the Parent GUC Trust Preference. | 7. The Expense Fund Cap has been increased to $25 million, but the Expense Fund cannot be accessed until the loan proceeds are fully used. It has also been agreed that the Expense Fund will be evergreen. Finally, once the Trust Loan has been paid in full, there will be no further Expense Fund Cap. | 7. This objection is resolved. |
| **Wilmington Trust Company** [D.I. 11666] | 1. Cancellation of PHONES Notes Indenture. Section 5.8.2 should clarify that (i) an Indenture Trustee may appeal any order of the Bankruptcy Court or continue any pending appeal, (ii) an Indenture Trustee can appoint a successor member of the Litigation Trust Advisory Board to replace its previous designee if such designee ceases to be a member of such board, and (iii) the section does not affect any contractual right or obligation the Indenture Trustee has with any person or entity other than the Debtors and Released Parties. (Obj. at ¶¶ 2, 7-15). WTC also joins Aurelius's Objection regarding Section 5.8.2. | 1. Language has been added to the DCL Plan providing that the Indentures shall continue in effect solely for the purpose of allowing "(vii) any Indenture Trustee to pursue or continue to pursue any appeal of an order of the Bankruptcy Court, commenced by such Indenture Trustee on or before the Effective Date, (viii) Wilmington Trust or Deutsche Bank (or their respective successors under the applicable Indentures) to serve as members of the Litigation Trust Advisory Board or to replace a designee to the Litigation Trust Advisory Board appointed by such member solely in accordance with the terms of this Plan and the Litigation Trust Agreement, and (ix) the continuation of any contractual right or obligation that any Indenture Trustee has with any Person other than the Debtors, the Reorganized Debtors or a Released Party;" (DCL Plan at § 5.8.2). | 1. This objection is resolved. |
| | 2. WTC Charging Lien. Section 7.7.2 of the DCL Plan should be amended to make clear that WTC's charging lien is preserved in all respects and applies to distributions payable to Holders of Class 1J Litigation Trust Interests. (Obj. at ¶¶ 2, 19-21). WTC asserts that Section 7.7.2 does not adequately preserve the charging lien due to a scrivener's error. | 2. A comma has been added to Section 7.7.2 of the DCL Plan to correct the asserted scrivener's error. (DCL Plan at § 7.7.2) | 2. This objection is resolved. |

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | 3. <u>WTC Fees/Expenses</u>. WTC should be reimbursed for fees and expenses incurred in connection with making distributions to PHONES Holders pursuant to § 7.7.2 of the DCL Plan and the LTA. (Obj. at ¶¶ 2, 22). WTC should be afforded standard market compensation for assisting the DCL Plan Proponents to substantially consummate their Plan without relying on the charging lien. | 3. The following language has been added to Section 3.6 of the LTA: "(c) The Litigation Trustee may retain a distribution agent for the effective administration and distribution of amounts payable to the Litigation Trust Beneficiaries and all costs and expenses of such distribution agent shall be paid from the Expense Fund. The Litigation Trustee shall also pay from the Expense Fund all reasonable and documented fees and expenses of the Indenture Trustees incurred in connection with making distributions to Holders of Class 1E Litigation Trust Interests or Class 1J Litigation Trust Interests pursuant to section 6.2 of this Litigation Trust Agreement." | 3. This objection is resolved. |
| | 4. <u>Claim Objection Deadline</u>. The DCL Plan provides that objections to claims, including WTC's expense claim, can be made for up to 210 days after the Effective Date. Such delay in the Claims allowance process is unreasonable and unnecessary. WTC requests that the Debtors establish near-term procedures for resolving disputes over WTC's asserted claim. (Obj. at ¶¶ 2, 23-26). | 4. The DCL Plan Proponents and WTC will be filing a stipulation resolving the claims reconciliation procedure applicable to WTC's expense claim. | 4. This objection is resolved. |
| | 5. <u>Trust Loan Agreement</u>.[9] The DCL Plan Proponents should be required to disclose the substantive terms of the Trust Loan Agreement (such as the interest rate, covenants, events of default and conditions to drawing). (Obj. at ¶ 27). | 5. WTC has not pursued this argument, in light of a global resolution regarding Trust Loan Agreement issues. | 5. This objection is resolved. |
| | 6. <u>Expense Fund Cap</u>. The "Expense Fund" established by the Litigation Trustee should not be subject to a cap. (Obj. at ¶¶ 30-31) | 6. The Expense Fund Cap has been increased to $25 million, but the Expense Fund cannot be accessed until the loan proceeds are fully used. It has also been agreed that the Expense Fund will be evergreen. Finally, once the Trust Loan has been paid in full, | 6. This objection is resolved. |

---

[9] On June 4, 2012, Aurelius filed a supplemental objection raising numerous objections to the Trust Loan Agreement and the LT Confidentiality Agreement. Aurelius argued, generally, that (i) the Litigation Trust should be entitled to draw the entire Trust Loan down on or shortly after the Effective Date and should be allowed to use its discretion with respect to how the loaned funds will be employed on behalf of all trust beneficiaries, (ii) the Litigation Trustee should only be obligated to repay amounts in respect of the Trust Loan to the extent that it maintains $30 million in the Expense Fund, (iii) the Trust Loan Agreement should not contain representations and warranties that are more typical of a traditional third-party loan, and (iv) the LT Confidentiality Agreement should be modified to provide, *inter alia*, that all documents and information, and all privileges attached to any document, communication or other information relevant to the prosecution of the Preserved Causes of Action (save certain limited exceptions) will be transferred to the Litigation Trustee, and that the Litigation Trustee will be given the ability to waive any such privilege in his discretion [D.I. 11753].

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | | there will be no further Expense Fund Cap. | |
| | 7. <u>Requested Litigation Trust Agreement and Related Changes</u>: The terms of the DCL Plan and Litigation Trust Agreement should be modified, as follows: | 7. *See below for the response to each proposed modification:* | 7. *See below for the status of each:* |
| | a. Section 13.3.9 of the DCL Plan should be amended to require the Reorganized Debtors (i) to provide the Litigation Trustee (or his professionals) with reasonable access to witnesses under the control of the Reorganized Debtors and (ii) cause any such witnesses to appear at a deposition or trial without the need for a subpoena. (Obj. at ¶ 32)[10, 11] | a. This objection has been resolved, in light of a global resolution regarding Litigation Trust issues. No changes have been made to Section 13.3.9 of the DCL Plan. | a. This objection is resolved. |
| | b. The DCL Plan and LTA should be amended to ensure that the Litigation Trustee and its professionals have access to all privileged information and work product of the Debtors, Reorganized Debtors, the UCC and their respective professionals relating, directly or indirectly, to the Preserved Causes of Action. (Obj. at ¶¶ 33-40)[12][13][14] | b. The following language has been added to the DCL Plan: "In connection with its termination, the Creditors' Committee shall provide the Litigation Trustee with reasonable access to documents relating to the Litigation Trust Assets within the possession, custody or control of the Creditors' Committee pursuant to the terms of a separate agreement between the Creditors' Committee and the Litigation Trustee." (DCL Plan at § 15.2) | b. This objection is resolved. |
| | c. Compensation and reimbursement provided for Members of the Litigation Trust Advisory Board in Section 4.8 of the LTA is below market and the members should be afforded reimbursement for their | c. Members of the Litigation Trust Advisory Board will be paid $60,000 annually. Additionally, such members will receive, in the aggregate, up to $60,000 of attorneys' fees reimbursement in year | c. This objection is resolved. |

---

[10] TM Retirees joined this objection [D.I. 11720].

[11] TM Retirees joined this objection. <u>Id.</u>

[12] <u>See</u> footnote 9 regarding Aurelius's supplemental objection [D.I. 11753].

[13] TM Retirees joined this objection [D.I. 11720].

[14] <u>See</u> footnote 2 regarding the joinder of certain former officers and directors of the Debtors to the Foundations' statement in reply to Aurelius's supplemental objection [D.I. 11740].

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | own counsel's fees and expenses (provided that they are reasonable). (Obj. at ¶¶ 41-44) WTC requests that the LTA adopt the compensation and reimbursement structure provided in the Lyondell Litigation Trust Agreement to adequately compensate the members of the Litigation Trust Advisory Board.[15] | one, with such figure decreasing to $30,000 in subsequent years. | |
| | d. The terms of exculpation provided in Section 4.9 to members of the Litigation Trust Advisory Board should be amended and replaced to provide increased protection. The liability of the members of the Litigation Trust Advisory Board should be limited to instances of gross negligence or willful misconduct. Section 4.9 of the LTA also should be amended to provide that members of the Litigation Trust Advisory Board should not have to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties under the Litigation LTA or in the exercise of any of their rights and powers. Moreover, no member of the Litigation Trust Advisory Board should be responsible for any act or omission by the Litigation Trustee, unless such Litigation Trust Advisory Board member acts with gross negligence or willful misconduct in relying on the Litigation Trustee. (Obj. at ¶¶ 45-46) | d. Section 4.9 of the LTA has been replaced with a section titled "No Further Liability" which, generally, limits liability to instances of gross negligence or willful misconduct, provides that members of the Litigation Trust Advisory Board shall not have to expend or risk their own funds or incur personal liability in performance of their duties and provides that they can rely on writings reasonably believed to be genuine. | d. This objection is resolved. |
| | e. The indemnification provisions found in Section 7.1 of the LTA should be amended and replaced to provide more fulsome indemnification rights, substantially similar to those provided for in the Lyondell Litigation Trust Agreement. The LTA inappropriately requires that a member of the Litigation Trust Advisory Board needs to execute a written undertaking before the Litigation Trust will repay a Litigation Trust Indemnified party for costs and expenses related to indemnification. (Obj. at ¶ 46) | e. Section 7.1 of the LTA has been replaced with a more complete indemnification provision that, generally, provides indemnification except in instances of gross negligence or willful misconduct. The provision also provides defense advances, which are repayable in certain circumstances. | e. This objection is resolved. |

---

[15] TM Retirees joined this objection [D.I. 11720].

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | f. Section 3.2 of the LTA should be amended to require that the Litigation Trustee is authorized to purchase fiduciary liability insurance as set forth in DCL Plan § 13.3.7. (Obj. at ¶ 47) | f. Section 3.2 of the LTA has been modified to authorize the Litigation Trustee to purchase a fiduciary liability insurance policy and/or a directors and officers policy. | f. This objection is resolved. |
| | g. Section 11.3 of the LTA should be amended to provide that New York is governing law. Id. | g. The parties have agreed that Delaware law will govern. Section 11.3 of the LTA has been modified accordingly. | g. This objection is resolved. |
| | h. A new Section 11.14 should be added to the LTA and provide for a standard "No Waiver" provision. Id. | h. Section 11.14 has been added to the LTA to include a "no waiver" provision. | h. This objection is resolved. |
| | i. The additional changes set forth in Annex B to WTC's objection should be made to sections 1.1, 1.4, 3.6, 3.7(h), 3.10(b), 4.5, 4.7, and 11.13 of the LTA. Id. | i. In summary, the DCL Plan Proponents have generally accepted all requested changes to these sections except for the addition of subsection headers that are inconsistent with the formatting of the LTA or comments requesting items that are already contained elsewhere in the LTA. | i. This objection is resolved. |
| | j. WTC's representative should be amended to be Julie Becker and not Steven Cimalore in Exhibit B. (Obj. at ¶ 48) | j. Exhibit B of the LTA has been modified to name Julie Becker as WTC's representative. | j. This objection is resolved. |
| | k. William Niese's decision not to serve on the Litigation Trust Advisory Board should be noted in Exhibit B. (Obj. at ¶ 48). | k. William Niese has decided to serve on the Litigation Trust Advisory Board. | k. This objection is resolved. |
| **Deutsche Bank Trust Company Americas** [D.I. 11667] | 1. <u>Distribution Mechanics.</u> The mechanics for plan distributions to the Senior Notes should be modified to require that MSCS withdraws its Senior Notes from DTC prior to any distribution. (Obj. at ¶¶ 5, 7) | 1. The following language has been added to the DCL Plan: "The Debtors, the Creditors' Committee, the applicable Indenture Trustee and MSCS shall work in good faith to agree upon an appropriate procedure, which shall be implemented prior to the Initial Distribution Date, to insure that MSCS does not receive a distribution on account of any Senior Noteholder Claims held by MSCS for its own account unless and until it is determined that such Senior Noteholder Claims are Allowed Claims and entitled to a distribution pursuant to this Section 3.2.5(c); <u>provided</u>, <u>however</u>, if such parties are unable to agree upon an appropriate procedure, upon notice and an opportunity to be heard, the Debtors, the Creditors' | 1. This objection is resolved. |

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | | Committee, the applicable Indenture Trustee or MSCS may seek an order in aid of confirmation of this Plan resolving any disputes and implementing an appropriate procedure." (Memorandum at ¶¶ 113-114); (DCL Plan at § 3.2.5) | |
| | 2. Requested Litigation Trust Agreement Changes: The terms of the Litigation Trust Agreement should be modified, as follows: | 2. *See below for the resolution:* | 2. *See below for the status of each:* |
| | a. The exculpation provision of the LTA falls outside the customary structure for litigation trust advisory boards. The language used in the Lyondell Litigation Trust Agreement should be used instead. (Obj. at ¶ 26) | a. Section 4.9 of the LTA, has been replaced with a section titled "No Further Liability" which, generally, limits liability to instances of gross negligence or willful misconduct, provides that members of the Litigation Trust Advisory Board shall not have to expend or risk their own funds or incur personal liability in performance of their duties and provides that they can rely on writings reasonably believed to be genuine. | a. This objection is resolved. |
| | b. The indemnity provision of the LTA falls outside the customary structure. The language used in the Lyondell Litigation Trust Agreement is more typical for litigation trust advisory boards. (Obj. at ¶ 27) | b. Section 7.1 of the LTA has been replaced with a more detailed indemnification provision that, generally, provides indemnification except in instances of gross negligence or willful misconduct. The provision also provides defense advances, which are repayable in certain circumstances. | b. This objection is resolved. |
| | c. The LTA should incorporate a limitation on liability similar to that contained in the Lyondell Litigation Trust Agreement. (Obj. at ¶ 27) | c. *See subsection a. for a discussion of Section 4.9.* | c. This objection is resolved. |
| | 3. Compensation of Members of the Litigation Trust Advisory Board:[16] | 3. *See resolutions below:* | 3. *See status below:* |
| | a. Section 4.8(b) of the LTA should be modified to provide for payment of counsel fees, costs, and expenses of the individual members of the Litigation Trust Advisory Board. (Obj. at ¶ 24) | a. Members of the Litigation Trust Advisory Board will be paid $60,000 annually. Additionally, such members will receive, in the aggregate, up to $60,000 of attorneys' fees reimbursement in year | a. This issue is resolved. |

---

[16] TM Retirees joined this objection. Id.

13

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | | one, with such figure decreasing to $30,000 in subsequent years. | |
| | b. Section 4.9 of the LTA allows members of the Litigation Trust Advisory Board to consult with counsel, but is a "catch-22" without a fee reimbursement provision in section 4.8(b) of the agreement. (Obj. at ¶ 25) | b. *See subsection a. for the resolution.* | b. This issue is resolved. |
| | 4. <u>Loan versus Grant</u>. Funding the LTA through a loan as opposed to an outright grant is inappropriate and inconsistent with applicable Third Circuit precedent. To the extent a loan is acceptable, the DCL Plan should disclose the substantive terms of that loan (such as the interest rate, covenants, events of default and conditions to drawing). (Obj. at ¶¶ 28-30) | 4. The parties have agreed that the Trust Loan will now be a $20 million single-draw term loan, which will be fully funded on the Effective Date. The Debtors have filed a revised Trust Loan Agreement. | 4. This objection is resolved. |
| **Law Debenture Trust Company of New York** [D.I. 11668] | 1. <u>Cancellation of the Senior Notes Indentures</u>. The DCL Plan improperly seeks to cancel the Senior Notes Indentures on the Effective Date without preserving certain rights, agreements and remedies of the Senior Notes Indenture Trustees against non-debtor third parties, including, without limitation, the Senior Noteholders. (Obj. at ¶¶ 4, 26-29) | 1. Language has been added to DCL Plan to provide, generally, that the Indentures shall continue in effect solely to the extent necessary to allow "(ix) the continuation of any contractual right or obligation that any Indenture Trustee has with any Person other than the Debtors, the Reorganized Debtors or a Released Party;" (DCL Plan at § 5.8.2) | 1. This objection is resolved. |
| **Missouri Department of Revenue ("MDOR")** [D.I. 11656] | 1. <u>Treatment of Tax Claims.</u> The definition of Allowed Claim is unclear and MDOR cannot determine whether its Priority Tax Claim "is an Allowed Claim and thus trigger[s] installment payments until the deadline to object to claims expires." The DCL Plan lacks specificity regarding the timing and frequency of the payment of Priority Tax Claims. (Obj. at ¶ 4) | 1. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash." | 1. This objection is resolved. |
| | 2. <u>Default Provision.</u> The DCL Plan does not provide priority tax creditors with an adequate remedy in the event the Debtors default in making tax payments. (Obj. at ¶ 7) | 2. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies | 2. This objection is resolved. |

14

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | | under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court." | |
| | 3. <u>Claim Objection Deadline</u>. The DCL Plan provides that objections to claims can be made for up to 210 days after the Effective Date. It is possible there will be a considerable delay in payment. | 3. The Debtors and MDOR have reached a consensual resolution of the proofs of claim asserted by MDOR, subject to documentation. | 3. This objection is resolved. |
| **Michigan Department of Treasury ("<u>MDOT</u>")** [D.I. 11652] | 1. <u>Releases/Injunctions</u>. The non-debtor discharge, release, injunction and waiver provisions of the DCL Plan, including Section 11.5, may improperly enjoin the collection of tax debts from non-debtors. (Obj. at ¶ 6) | 1. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any implementing Plan document, nothing shall affect the rights of the State of Michigan, Department of Treasury to take action against non-debtor third parties who may be responsible for payment of prepetition and/or postpetition tax liabilities of any of the Debtors, and such rights are expressly reserved." | 1. This objection is resolved. |
| | 2. <u>Default Provision.</u> The DCL Plan does not provide priority tax creditors with an adequate remedy in the event the Debtors default in making tax payments. (Obj. at ¶ 7) | 2. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court." | 2. This objection is resolved. |
| **Internal Revenue Service ("<u>IRS</u>")** [D.I. 11653] | 1. <u>Treatment of Tax Claims.</u> Section 2.3 of the DCL Plan fails to specify the frequency or amount of the installment payments proposed to be made on account of Allowed Priority Tax Claims. (Obj. at p. 1) | 1. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash." | 1. This objection is resolved. |
| | 2. <u>Jurisdiction.</u> The IRS objects to §§ 5.4.2(f), 7.8, and 13.2.2 of the DCL Plan to the extent they purport to establish the tax consequences of the plan or the tax liability of non-debtors. (Obj. at p. 2) | 2. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "Nothing in the Plan or this Order is intended to, or shall, confer jurisdiction on the Bankruptcy | 2. This objection is resolved. |

15

| Objecting Party | Objections | Resolution | Status |
|---|---|---|---|
| | | Court to determine the tax consequences of the Plan or to determine the tax liability of a non-debtor beyond the jurisdiction permitted under applicable law." | |
| | 3. <u>Releases/Injunctions.</u> The DCL Plan's release and injunction provisions improperly bar (i) the IRS from asserting valid administrative expense claims and (ii) the collection of tax debts from non-debtors. (Obj. at pp. 1-2) | 3. The DCL Plan Proponents have agreed to include the following language in the proposed Confirmation Order: "Notwithstanding any provision to the contrary, nothing in the DCL Plan or in this Confirmation Order shall affect the rights of the United States, including the Internal Revenue Service (1) from seeking, pursuant to applicable nonbankruptcy law, to assess or collect from any non-debtor person or entity that may be liable directly or indirectly for the Debtors' taxes, including but not limited to liability under 26 U.S.C. §§ 4975 & 6672, or (2) from assessing or collecting from the Debtor any taxes that the Bankruptcy Code renders nondischargeable." (Memorandum at ¶¶ 117-120). The DCL Plan Proponents have also agreed to include the following language in the proposed Confirmation Order: "The Plan shall not bar the IRS, subject to applicable law, from assessing and collecting taxes that did not arise until after the Confirmation Date." | 3. This objection is resolved. |
| **Malcolm Berko** [D.I. 11600] | 1. <u>Notice of Confirmation Hearing</u>. Mr. Berko expressed that it is difficult to understand the notice of the hearing to consider confirmation of the Fourth Amended Plan. | 1. The DCL Plan Proponents do not believe that this is a legitimate DCL Plan objection but include it herein out of an abundance of caution because it was styled as a response to the DCL Plan on the Court's docket. | |

**OBJECTIONS RESOLVED BY PRIOR ORDER OF THE COURT**

| Objecting Party | Objections | Response / Resolution | Status |
|---|---|---|---|
| **Aurelius Capital Management, L.P.** [D.I. 11664] | 1. <u>Prior Objections</u>. Aurelius continues to argue that (i) the DCL Plan Settlement does not satisfy the lowest rung of reasonableness and was neither negotiated nor proposed in good faith and (ii) the DCL Plan unfairly discriminates against holders of Senior Notes Claims in violation of Sections 510 and 1129(b)(1) of the Bankruptcy Code by extending the benefit of subordination to creditors not entitled to it, including the holder of the Swap Claim, and treating creditors who are not entitled to the benefit of subordination on a parity with those who are entitled to such benefits. (Obj. at ¶¶ 2-3) | 1. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 1. These objections were resolved in connection with the Confirmation Decision. |
| **Wilmington Trust Company** [D.I. 11666] | 1. <u>Prior Objections</u>. WTC incorporates by reference (i) its previous objections, asserted by itself individually and with Aurelius, Law Debenture and Deutsche Bank and (ii) its pleadings and arguments concerning the subject matter addressed in the PHONES Notes Appeals. (Obj. at ¶ 1 n.1). | 1. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 1. These objections were resolved in connection with the Confirmation Decision. |
| **Deutsche Bank Trust Company Americas** [D.I. 11667] | 1. <u>Prior Objections</u>. DBTCA reasserts its prior objections (i) to the Second Amended Plan, including its objections to approval of settlement of LBO-Related Causes of Action, and (ii) that the DCL Plan unfairly discriminates against Senior Noteholder Claims in violation of §§ 510 and 1129(b)(1) by extending the benefit of subordination to creditors who are not contractually entitled to receive it. (Obj. at ¶¶ 2-3) | 1. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 1. These objections were resolved in connection with the Confirmation Decision. |
| **EGI-TRB LLC** [D.I. 11658] | 1. <u>Allocation Disputes Ruling</u>. The DCL Plan incorporates the Allocation Disputes Opinion and treats such Opinion as a final order. Thus, the DCL Plan improperly subordinates EGI-TRB's Claim and, therefore, (i) violates 1129(b)(1) by unfairly discriminating against EGI-TRB, (ii) violates 1129(b)(2) by permitting the PHONES Notes to recover ahead of the EGI-TRB Notes, and (iii) violates 510(e) and 1129(a)(1) by failing to enforce the EGI-TRB subordination agreement according to applicable nonbankruptcy law. (Obj. pp. 3-5). EGI-TRB incorporates by reference all of the arguments made in connection with the Allocation Disputes.<br><br>2. <u>Prior Objections</u>: EGI-TRB incorporates the objections it filed to the Second Amended Joint Plan (D.I. 7988, 8884), | 1. The DCL Plan properly subordinates EGI-TRB's claim. The DCL Plan properly implements the Allocation Disputes Decision. (Memorandum at ¶ 67)<br><br><br><br><br><br><br><br><br><br>2. These objections were resolved or overruled in connection with the Confirmation Decision and | 1. These objections were resolved in connection with the Allocation Disputes Decision.<br><br><br><br><br><br><br><br><br><br><br>2. These objections were resolved in |

| Objecting Party | Objections | Response / Resolution | Status |
|---|---|---|---|
| | including objections that the DCL Plan (i) continues to permit a litigation trust to expend estate assets pursuing meritless litigation against EGI-TRB, (ii) provides for broad indemnification of the litigation trustee, and (iii) provides no Court oversight of the professionals retained by the litigation trust or the fees incurred by those professionals. (Obj. at p. 2) | continue to be meritless. | connection with the Confirmation Decision. |
| **Law Debenture Trust Company of New York** [D.I. 11668] | 1. <u>Prior Objections.</u> Law Debenture continues to argue that (i) the DCL Plan's proposed settlement of the LBO-Related Causes of Action does not satisfy Bankruptcy Rule 9019 because it seeks to settle the LBO-Related Causes of Action against the Senior Lenders for a less than reasonable amount and (ii) the distribution of the Settlement and Litigation Trust proceeds under the DCL Plan is unfairly discriminatory because it ignores the fact that the Other Parent Claims are not entitled to the economic benefits that result from the subordination of the PHONES Notes and the EGI-TRB Note. (Obj. at ¶¶ 1, 7-11) | 1. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 1. These objections were resolved in connection with the Confirmation Decision. |
| **Certain Former Directors and Officers ("Certain Directors and Officers")** [D.I. 11657][17] | 1. <u>Bar Order.</u> Certain Directors and Officers continue to object to the concept of a Bar Order, including the Bar Order's impermissible releases and injunction. Certain Directors and Officers reiterate their objections to the Bar Order as previously set forth in the objection to the Second Amended Plan (D.I. 7981), the Letter Brief (D.I. 8888), and at oral argument. (Obj. at p. 2) | 1. For the reasons already articulated in this Court's prior rulings, this Court should overrule these objections. Additionally, the Bar Order has been revised consistent with the Confirmation Decision. | 1. These objections were resolved in connection with the Confirmation Decision. |
| | 2. <u>Other Prior Objections/Joinder.</u> Certain Directors and Officers adopt and incorporate their additional objections previously made in connection with the Second Amended Plan. (Obj. at pp. 3-4). | 2. These objections were resolved or overruled in connection with the Confirmation Decision and continue to be meritless. | 2. These objections were resolved in connection with the Confirmation Decision. |

---

[17] Certain Directors and Officers also join in the objections raised by other parties in interest to the extent such objections are not inconsistent with Certain Directors and Officers' interests. (Obj. at p. 3)