# EXHIBIT 9

**Aurelius's blacklined draft of the Committee's LT Agreement**

# AGREEMENT RESPECTING TRANSFER OF DOCUMENTS, INFORMATION, AND PRIVILEGES FROM THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

This Agreement Respecting Transfer Of Documents, Information, And Privileges From the Official Committee of Unsecured Creditors (the "Creditors' Committee") (this "Agreement"), dated as of [_____], 2012, by (a) the Litigation Trustee and (b) the Creditors' Committee, is executed pursuant to the Confirmation Order to facilitate the implementation of the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P. ("Oaktree"), Angelo, Gordon & Co., L.P. ("Angelo Gordon"), and JPMorgan Chase Bank, N.A. ("JPMorgan") filed April 12, 2012 (the "Plan"), as amended and supplemented thereafter. Each of the Creditors' Committee and the Litigation Trustee are sometimes referred to individually as a "Party" and collectively as the "Parties." Capitalized terms used in this Agreement but not otherwise defined herein shall have the meanings assigned to such terms in the Litigation Trust Agreement or the Plan, as applicable.

RECITALS

WHEREAS, the Litigation Trustee is the trustee of the Litigation Trust established under the Litigation Trust Agreement, dated as of [_____], 2012, pursuant to the Plan and Confirmation Order;

WHEREAS, subsection 15.2 of the Plan provides for "an agreement to be entered into between the Creditors' Committee and the Litigation Trust governing the transfer of certain documents, information and privileges from the Creditors' Committee to the Litigation Trust";

WHEREAS, by Order dated December 15, 2009, the Bankruptcy Court authorized the Debtors to establish and maintain a centralized document depository (the "Document Depository") and directed the Creditors' Committee to deliver certain documents to that depository pursuant to the Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing Settlement Negotiation Protections Pursuant to 11 U.S.C. § 105(a), dated December 15, 2009 (the "Depository Order") [D.I. 2858];

WHEREAS, on April 20, 2010, the Bankruptcy Court directed the appointment of an Examiner to, *inter alia*, evaluate potential claims related to Tribune Company's 2007 leveraged buyout transactions [D.I. 4120], and the Examiner, Kenneth N. Klee, undertook an extensive investigation of such potential claims by, among other things, conducting thirty-eight interviews and reviewing hundreds of pages of briefing and tens of thousands of pages of documentation, culminating in his July 26, 2010 report [D.I. 5130, 5131, 5132, 5133] (the "Examiner Report") consisting of over 1,400 pages and 1,200 public exhibits;

WHEREAS, on October 27, 2010, the Bankruptcy Court granted motions filed by the Creditors' Committee, allowing the Creditors' Committee to commence lawsuits alleging certain potential claims related to Tribune Company's 2007 leveraged buyout transactions [D.I. 6150],

and, on November 1, 2010, the Creditors' Committee filed the Complaint in Adversary Proceeding No. 10-54010 (as was and may be amended from time to time, the "FitzSimons Complaint"), and the Complaint in Adversary Proceeding 10-53963-KJC (the "Lender Complaint");

WHEREAS on March 22, 2012, the Bankruptcy granted the motion filed by the Creditors' Committee seeking permission to sever certain of the claims filed in the Lender Complaint into a separate action, and, on April 2, 2012, the Creditors' Committee filed those severed claims in a Complaint in Adversary Proceeding No. 12-50446 (as may be amended from time to time, the "Advisors Complaint"), in the Bankruptcy Court;

WHEREAS, in March, April, and June 2011, the proponents of the Second Amended DCL Plan (the "DCL Plan Proponents") and the Third Amended Noteholder Plan participated in a confirmation hearing concerning the viability of the competing plans (the "Confirmation Hearing"), at which the Bankruptcy Court heard testimony from numerous expert and fact witnesses and the parties moved 3,485 exhibits into evidence (3,346 publicly filed and 139 confidential exhibits filed under seal);

WHEREAS, on October 31, 2011, the Bankruptcy Court entered its Opinion on Confirmation denying confirmation of the competing plans;

WHEREAS, to address the deficiencies identified by the Bankruptcy Court in its Opinion on Confirmation, the DCL Plan Proponents filed and sought confirmation of the Plan which contains, among other things, modifications to address the issues identified by the Bankruptcy Court;

WHEREAS, on _____, 2012, the Bankruptcy Court entered its Order confirming the Plan (the "Confirmation Order");

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises and the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

I.

GENERAL

A. Definitions

1. "Advisors Complaint" has the meaning set forth in the Recitals to this Agreement.

2. "Claims" shall consist of any one or more of the Litigation Trust Assets.

3. "Confidential Information" has the meaning set forth in Section II.D.1. of this Agreement.

4. "Confirmation Hearing" has the meaning set forth in the Recitals to this Agreement.

5. "Cooperate" and "Cooperation" have the meanings set forth in Section II.A.1. of this Agreement.

6. "Creditors' Committee Bylaws" shall mean the Bylaws of the Creditors' Committee adopted pursuant to that certain Unanimous Written Consent and Acknowledgment dated as of January 26, 2009.

7. "DCL Plan Proponents" has the meaning set forth in the Recitals to this Agreement.

8. "Debtor(s)" has the meaning set forth in Section 1.1.54 of the Plan. For the avoidance of doubt, "Debtors" includes the board of directors, or any special committee of the board of directors, of any of the Debtors.

9. "Debtors' Estates" has the meaning set forth in Section 1.1.85 of the Plan.

10. "Depository Order" has the meaning set forth in the Recitals to this Agreement.

11. "Document Depository" has the meaning set forth in the Recitals to this Agreement.

12. "Documents" are defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized compilations.

13. "Documents Relating to the Claims" means Documents which relate in full or in part to Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims.

14. "Examiner Report" has the meaning set forth in the Recitals to this Agreement.

15. "FitzSimons Complaint" has the meaning set forth in the Recitals to this Agreement.

16. "Information Relating to the Claims" means information which relates to Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims.

17. "Lender Complaint" has the meaning set forth in the Recitals to this Agreement.

18. "Litigation Trust Assets" has the meaning set forth in Section 1.1.124 of the Plan.

19. "Person" has the meaning set forth in Section 1.1.163 of the Plan.

20. "Privilege" means any attorney-client privilege, work product protection, or other privilege, protection or immunity (i) held by the Creditors' Committee and (ii) attaching to any documents, communications, or thing (whether written or oral), including but not limited to all electronic information, relating to the Claims.

21. "Privileged Documents" means Documents subject to a Privilege.

22. "Privileged Documents Relating to the Claims" has the meaning set forth in Section II.B.2 of this Agreement.

23. "Privileged Information" means Information subject to a Privilege.

24. "Privileged Information Relating to the Claims" means Information Relating to the Claims subject to a Privilege except for:

   a. Privileged Information regarding or relating to the conduct of the Chapter 11 Cases, except to the extent that such Privileged Information constitutes or reflects factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims;

   b. Privileged Information created solely in connection with the Examiner's investigation, except to the extent that such Privileged Information (i) was provided to the Committee or any of its members, or any other Person apart from Committee Counsel, or (ii) reflects statements by witnesses interviewed by the Examiner;

   c. Privileged Information regarding or relating to the reasonableness, effectiveness or confirmability of any of the plans of reorganization proposed during the Chapter 11 Cases; and

   d. Privileged Information exchanged by the Creditors' Committee or their professionals, on the one hand, and the Proponents of the DCL Plan or their respective professionals, on the other hand, relating to the DCL Plan, including the negotiation of the DCL Plan, except to the extent that such Privileged Information was (i) created by the Creditors' Committee, and (ii) constitutes or reflects a factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims, in which case the portions of the Privileged Information containing such analysis should be provided, and the rest may be withheld.

4

25. "Reorganized Debtor(s)" has the meaning set forth in Section 1.1.191 of the Plan.

26. "Shared Information" has the meaning set forth in Section II.D.1. of this Agreement.

27. "State Law Constructive Fraudulent Conveyance Claims" are the law suits commenced pursuant to the authority of the order of the Bankruptcy Court issued April 25, 2011 [D.I. 8740] granting the motion of Aurelius Capital Management, LP, Deutsche Bank Trust Company Americas, and Law Debenture Trust Company of New York for authority to commence certain state law constructive fraudulent conveyance claims against former shareholders, which motion was joined in by Wilmington Trust Company, in its capacity as Successor Indenture Trustee for the PHONES Notes.

28. "Trustee Actions" means actions asserting Preserved Causes of Action brought by the Creditors' Committee or the Litigation Trustee, including without limitation the FitzSimons Complaint and the Advisors Complaint.

B. Purposes

The purposes of this Agreement are to implement the Plan and the Litigation Trust Agreement by, inter alia, (i) facilitating the reasonable access of the Litigation Trustee and its counsel and its representatives to Documents Relating to the Claims and Information Relating to the Claims in the possession, custody or control of the Creditors' Committee and (ii) facilitating the exchange of such Documents Relating to the Claims on a confidential basis and without being restricted by or waiving any applicable work product, attorney-client or other privilege or protection, and (iii) transferring to the Litigation Trustee certain Privileges of the Creditors' Committee respecting Privileged Documents or Privileged Information.

C. Relationship to, and Incorporation of, the Confirmation Order, Plan, and Litigation Trust Agreement.

This Agreement incorporates the provisions of the Litigation Trust Agreement, Plan and the Confirmation Order by reference. If any provisions of this Agreement are found to be inconsistent with the provisions of the Litigation Trust Agreement, Plan or the Confirmation Order, each such document shall have controlling effect in the following order: (i) the Confirmation Order; (ii) the Plan; (iii) Litigation Trust Agreement; and (iv) this Agreement.

D. No Effect on Certain Parties.

For the avoidance of doubt, and notwithstanding anything to the contrary contained in this Agreement, the Parties hereby agree and acknowledge that nothing in this Agreement is intended to, does, or shall be construed to prejudice or harm in any way, the rights, remedies, or treatment (including any releases, exculpation, indemnification or otherwise), of any Released Parties, solely in their capacity as Released Parties, under the Plan.

## II.

## OBLIGATIONS AND RIGHTS

A. Cooperation.

1. The Creditors' Committee agrees to cooperate ("Cooperate" or, as a noun, "Cooperation") with the Litigation Trust in connection with the Litigation Trustee's pursuit of the Claims by providing reasonable access to Documents Relating to the Claims, as set forth in Subsection II.B. below.

2. The Parties agree to Cooperate with respect to providing the Litigation Trustee access to information under this Agreement, as set forth in Subsection II.B. below, in a manner that facilitates the Litigation Trustee's ability to pursue the Claims. The Litigation Trustee shall Cooperate in providing the Creditors' Committee as much notice as is reasonably practical in requesting Cooperation under this Agreement.

3. The Litigation Trustee hereby acknowledges and agrees that the Creditors' Committee is not a fiduciary or agent of the Litigation Trust and owes no duties or obligations to the Litigation Trust, except for such obligations as are expressly set forth in the Plan, the Confirmation Order, Litigation Trust Agreement, and this Agreement or otherwise imposed by law.

4. Documents and information provided by the Creditors' Committee pursuant to this Agreement shall be used in connection with the Litigation Trustee's efforts to investigate, prosecute, compromise, and/or settle the Claims, and any related trial court and appellate proceedings and not for any other purpose, including without limitation for any business or competitive function, provided that the Litigation Trustee may produce documents and provide other information when it is legally obligated to provide documents or information in response to discovery requests or subpoenas it may receive from other parties in the Trustee Actions or other litigations, including but not limited to the parties to the State Law Constructive Fraudulent Conveyance Claims. Nothing herein shall restrict the Litigation Trustee's ability to use Documents or information that the Litigation Trustee obtains or could obtain by means other than those provided for in Sections II.B. and II.C. of this Agreement.

5. The Creditors' Committee agrees to cooperate with the Litigation Trustee in the preparation, submission and resolution of any motion or motions needed to substitute the Litigation Trust and/or Litigation Trustee as the Plaintiff in respect of the Claims.

B. Production of Documents.

The Creditors' Committee agrees to produce to the Litigation Trustee Documents Relating to the Claims in the possession, custody or control of the Creditors' Committee, and to use commercially reasonable best efforts to provide access to Documents Relating to the Claims in the possession, custody or control of professionals retained by the Creditors' Committee under Section 327 of the Bankruptcy Code, effective on the Effective Date of the Plan, as follows:

1. As provided in the Confirmation Order, the Creditors' Committee shall, within five business days of entry of the Confirmation Order, file a motion with the Bankruptcy Court seeking modification of the Depository Order and all other applicable orders or agreements to the extent necessary for the Creditors' Committee to a) provide the Litigation Trustee the Documents produced by the Creditors' Committee or any other Person to the Document Depository established and maintained pursuant to the Depository Order and the Documents provided by the Creditors' Committee to the Examiner (except Documents withheld under Section II.B.2.b below), b) provide the Litigation Trustee with access to the Documents Relating to the Claims produced in discovery in connection with the Confirmation Hearing, the Debtors' Chapter 11 cases, and the Trustee Actions; and c) permit the Litigation Trustee to use the Documents described in this sentence for the purposes specified in II.A.4 above. Upon entry of an order by the Bankruptcy Court modifying the Depository Order and all other applicable orders or agreements (the "Approval Order"), access to Documents Relating to the Claims shall include providing the Litigation Trustee with access to the Documents described in the preceding sentence.

2. Access to Documents Relating to the Claims shall also include providing to the Litigation Trustee Documents Relating to the Claims subject to a Privilege ("Privileged Documents Relating to the Claims"); provided, however, that the Creditors' Committee shall not be obligated to provide access to and the definition of Privileged Documents Relating to the Claims shall not include:

  a. Privileged Documents created during (or in preparation for) the Chapter 11 Cases regarding or relating to the conduct of the Chapter 11 Cases, except to the extent that such Privileged Documents contain a factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims, in which case the portions of the Privileged Documents not containing such analysis or review may be redacted;

  b. Privileged Documents which were created solely in connection with the Examiner's investigation, except to the extent that such Privileged Documents (i) were provided to the Committee or any of its members, or any other Person apart from Committee Counsel, or (ii) reflect statements by witnesses interviewed by the Examiner;

  c. Privileged Documents evaluating the reasonableness, effectiveness or confirmability of any of the plans of reorganization proposed during the Chapter 11 Cases; and

  d. Privileged Documents exchanged by the Creditors' Committee or their professionals, on the one hand, and the Proponents of the DCL Plan or their respective professionals, on the other hand, relating to the DCL Plan, including the negotiation of the DCL Plan, except to the extent that such Privileged Documents were (i)

7

created by the Creditors' Committee, and (ii) contain a factual or legal analysis or review of Tribune Company's 2007 leveraged buy-out transactions, or the transactions or events leading up to it, or the Claims, in which case the portions of the Privileged Documents containing such information should be produced, and the rest may be redacted.

        3.      The Creditors' Committee shall begin work compiling the Documents Relating to the Claims described in II.B.1 and II.B.2 above promptly following entry of the Confirmation Order and shall use reasonable commercial efforts to complete such work by the Effective Date. To the extent such work is not completed by the Effective Date, the Creditors' Committee shall complete such work as soon as practicable thereafter.

        4.      The Creditors' Committee shall also Cooperate with the Litigation Trustee by authorizing the Litigation Trustee, at the sole expense of the Litigation Trustee, to reactivate and access a database of Documents Relating to the Claims maintained for the Creditors' Committee by a third party vendor.

        5.      The Litigation Trustee agrees not to subpoena the Creditors' Committee for Documents Relating to the Claims actually produced to the Litigation Trustee hereunder.

        C.      <u>Privileged Information Relating to the Claims</u>

At the request of the Litigation Trustee, and up until 90 days following the Effective Date, the Creditors' Committee will authorize and direct its professionals to meet with the Litigation Trustee or his professionals, on a mutually agreeable date or dates to disclose Privileged Information Relating to the Claims to the Litigation Trustee or his professionals, and to discuss with the Litigation Trustee the status of the Claims.

        D.      <u>Confidentiality</u>.

        1.      All Documents Relating to the Claims and/or Information Relating to the Claims provided pursuant to Sections II.B. and II.C. of this Agreement (collectively, the "<u>Shared Information</u>") pursuant to this Agreement are hereby designated as confidential ("<u>Confidential Information</u>"), subject to the limitations on disclosure set forth in this Section II.D., with the following exceptions: (i) the 1,200 exhibits underlying the Examiner Report are public; (ii) the 3,346 exhibits publicly filed at the Confirmation Hearing are public; and (iii) the 139 exhibits filed under seal at the Confirmation Hearing are hereby designated as "confidential – attorneys eyes only," as marked on those exhibits during the Confirmation Hearing. Documents that were designated as "Financial Institution Highly Confidential Documents" or "Highly Confidential - attorneys eyes only" by the Persons providing such documents to the Creditors' Committee, except to the extent made public at the Confirmation Hearing, shall be treated as Highly Confidential under this Section II.D.

        2.      The Litigation Trust, on its behalf and on behalf of its counsel and their respective agents, representatives, or employees, acknowledges and agrees that it intends to and will maintain the confidentiality of all Documents Relating to the Claims and/or information provided pursuant to Sections II.B. and II.C. of this Agreement (collectively, the "<u>Shared

Information"), and such Shared Information shall not be disclosed to any third party except as provided for herein.

   3. Shared Information may only be disclosed to the following persons:

    a. The Litigation Trustee and outside counsel employed by the Litigation Trustee to pursue the Claims;

    b. The Litigation Trust Advisory Board and their representatives;

    c. Outside counsel and in-house counsel employed by all parties to Trustee Actions, business persons employed by all parties to Trustee Actions whose functions require that they have access to Shared Information in connection with the prosecution or defense of the action(s), persons employed by an insurer of parties to Trustee Action(s) whose functions require that they have access to Shared Information in connection with the prosecution or defense of the action(s), and, in the sole discretion of the Litigation Trustee, beneficiaries of the Litigation Trust;

    d. Expert(s) or consultant(s) who actively assist in the preparation and/or litigation of Trustee Actions;

    e. Paralegal, stenographic, technical, clerical, document management and secretarial personnel employed by the persons or entities listed in (a), (b), (c) or (d);

    f. The Court and court personnel, including stenographic, video, or audio reporters engaged to record depositions in Trustee Actions;

    g. Any person identified on the face of any such Shared Interest Information as an author or recipient thereof;

    h. Any person who is determined to have been an author and/or previous recipient of the Shared Information, but is not identified on the face thereof;

    i. During their depositions or trial testimony (or preparation therefor), witnesses to Trustee Actions to whom disclosure is reasonably necessary; and

    j. Outside counsel and in-house counsel employed by Persons to whom the Litigation Trustee produces Documents or Information in response to a discovery request or subpoena in other litigation asserting claims arising out of or related to Tribune's 2007 leveraged buyout transactions, business persons employed by such Persons whose functions require that they have access to Shared Information in connection with the prosecution or defense of such

litigation, and persons employed by an insurer of such Persons whose functions require that they have access to Shared Information in connection with the prosecution or defense of the action(s);

  4. Each person identified in Subsections II.D.3.(a), (b), (c), (d) and (j) above to whom Shared Information is furnished, shown or disclosed shall, prior to the time he or she receives access to such materials, be provided by the person furnishing such material a copy of this Agreement and agree to be bound by its terms, and shall certify that he or she has read the Agreement and fully understands its terms, by signing the certificate attached as Exhibit B. To the extent a confidentiality agreement or protective order is entered in the Trustee Actions that has different provisions or different protections than those set forth herein, such agreement or protective order shall control the use of Documents and Information.

  5. Shared Information may also be filed with the Court and/or used in court hearings, provided that the Person intending to use such Shared Information undertake reasonable efforts to request that Shared Information designated as Highly Confidential be filed and/or used under seal, pursuant to whatever rule, local rule, confidentiality agreement or protective order governs such requests.

  6. If at any point the Litigation Trustee contends that a Document Relating to the Claims that has been designated as confidential or Highly Confidential should not be so designated, the Litigation Trustee shall notify the Person so designating the Document of such dispute in writing. If the parties are not able to agree upon the appropriate designation, either the Litigation Trustee or the designating party shall be entitled to submit the dispute to the Bankruptcy Court on the application of the designation. Until such time as the matter is resolved by the Bankruptcy Court, such Document Relating to the Claims shall retain its confidentiality designation pending the outcome of such dispute.

  7. The foregoing is without prejudice to the right of any Party to:

   a. Resist discovery as to third parties with respect to – or seek to obtain additional or different protection for – material claimed to be Shared Information as to which the Creditors' Committee claims a legal obligation not to disclose pursuant to applicable law or Privilege; or

   b. Object to the use, relevance, or admissibility at trial of any Shared Information, whether or not designated in whole or in part as Shared Information governed by this Agreement.

 E. <u>Privileges and Immunities</u>.

  1. Any Privilege or other protection from disclosure of the Creditors' Committee that applies to any Privileged Documents Relating to the Claims or Privileged Information relating to the Claims, whether in the possession of the Creditors' Committee or any other Person, is hereby transferred, assigned, given over to, and shall vest exclusively in, the Litigation Trustee, and the Litigation Trustee shall have the exclusive authority and sole discretion to waive any such privilege or immunity. The Litigation Trustee is expressly

authorized to formally or informally request or subpoena Privileged Documents Relating to the Claims or Privileged Information relating to the Claims from any Persons other than the Creditors' Committee, including attorneys, professionals, consultants, and experts.

2. The disclosure and/or provision of Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims to the Litigation Trustee, whether from the Creditors' Committee, or any other Person, is not intended to and shall not void or waive any applicable Privilege. Documents Relating to the Claims and Information Relating to the Claims that would otherwise be protected from discovery by virtue of any applicable Privilege or protection shall remain protected by such Privilege or protection from disclosure to any third party, including, without limitation, any federal state or local government agency, any grand jury, any litigant and/or use of such protected Shared Information in any litigation concerning the Claims, subject to the Litigation Trustee's determination to waive any such Privilege or protection as to any Shared Information.

3. Any right to preserve or enforce a Privilege applying to Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims that arises from any joint defense, common interest, or similar agreement is hereby transferred, assigned, given over to, and shall vest exclusively in, the Litigation Trustee.

4. Except to the extent that Section II.E.1, II.E.2 or II.E.3 provide otherwise, this Agreement and the Confirmation Order are not intended to, and shall not be construed to (a) create any Privilege that does not currently exist; (b) revive any Privilege that was waived prior to the date of this Agreement; or (c) determine that any specific documents or information are protected by any Privilege.

5. If the Creditors' Committee or the Litigation Trustee inadvertently produce Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims to any third party, such production shall not be deemed to destroy any Privilege, or be deemed a waiver of any confidentiality protections afforded to such Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims. In such circumstances, the disclosing Party shall promptly upon discovery of the production notify the Litigation Trustee of the production and shall demand of all recipients of the inadvertently disclosed Shared Information, Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims that they return or confirm the destruction of the Shared Information, Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims.

6. If at any point the Litigation Trustee disputes the Creditors' Committee's decision to withhold Documents Relating to the Claims or Information Relating to the Claims, including Privileged Documents Relating to the Claims or Privileged Information Relating to the Claims, the Litigation Trustee shall notify the Creditors' Committee of such dispute in writing. If the parties are not able to agree upon the matter, either Party shall be entitled to submit the dispute to the Bankruptcy Court for a determination on whether the Creditors' Committee may withhold such Documents Relating to the Claims or Information Relating to the Claims that are subject to the dispute. Until such time as the matter is resolved by the Bankruptcy Court, the Creditors' Committee may continue to withhold such Documents Relating to the Claims or Information Relating to the Claims pending the outcome of such dispute.

F.  Return of Shared Materials

Within ninety (90) calendar days of the termination of the Litigation Trust, all Documents Relating to the Claims and all other Documents containing Shared Information exchanged under the provisions of this Agreement, shall be destroyed except to the extent that any of the foregoing includes or reflects work product of the Litigation Trustee or parties to the action(s) filed by the Litigation Trustee (which one copy of such work product may be maintained by outside counsel for the Litigation Trustee or the parties, but not by the Litigation Trustee or the parties themselves), and except to the extent that such material has been filed with a court in which proceedings filed by the Litigation Trustee are being conducted, provided such information is stored in a manner so as to preserve its confidentiality.

G.  Creditors' Committee Bylaws

Notwithstanding anything to the contrary in the Creditors' Committee Bylaws, including any restrictions in Article VIII thereof with respect to the dissemination of "confidential information" (as described in the Bylaws), Deutsche Bank Trust Company of Americas, Wilmington Trust Company, and William Niese, and their respective counsel, are authorized to disclose to the Litigation Trustee and his professionals Information Relating to the Claims (except for Information subject to a Privilege other than Privileged Information Relating to the Claims) and Privileged Information Relating to the Claims (but not Documents Relating to the Claims subject to a Privilege or Privileged Documents Relating to the Claims) subject to the provisions of this Agreement.

H.  Creditors' Committee Post-Effective Date Fees and Expenses.

With the exception of fees and expenses incurred in connection with fulfilling the obligations set forth in Sections II.A and II.B.1-3, which shall be reimbursed by the Reorganized Debtors, the reasonable fees and expenses incurred by the Creditors' Committee in complying with the provisions of this Agreement after the Effective Date shall be reimbursed by the Litigation Trustee within thirty days of receipt of invoices for such fees and expenses. For the avoidance of doubt, nothing in this Agreement shall be interpreted as imposing on the Litigation Trustee any obligation to reimburse any Person other than the Creditors' Committee and its professionals for any legal fees or expenses incurred in connection with this Agreement, or the production of documents or information generally.

I.  No Limitation on Access.

Notwithstanding anything in this Agreement to the contrary, the Parties acknowledge and agree that nothing herein shall limit the full exercise of the rights under applicable law of the Litigation Trustee to seek and obtain information, documents or to take depositions of any ~~person other than the Creditors' Committee or its retained professionals (except to the extent such professionals fail or refuse to provide access to Documents Relating to the Claims or Information Relating to the Claims pursuant to this Agreement), in their capacities as such~~Person, by subpoena or otherwise pursuant to legal process, regardless of whether or not an obligation of Cooperation is owed hereunder with respect to such information, documents or depositions or any demands made under this Agreement shall have been complied with in full or

in part or any remedy with respect to any actual or purported breach or noncompliance with this Agreement has been sought; provided, however, that in connection with any exercise of rights by the Litigation Trustee to seek and obtain information, documents or to take depositions of any ~~person~~Person by subpoena or otherwise pursuant to legal process, the ~~Creditors' Committee~~Person shall retain any objections or defenses to such exercise of rights that it may have under applicable law.

J. Reservation of Rights

The Parties acknowledge and agree that nothing herein shall limit, in any way, (i) the Litigation Trustee's rights under applicable law to seek Documents Relating to the Claims or Information Relating to the Claims ~~from parties other than the Creditors' Committee or its retained professionals (except to the extent such professionals fail or refuse to provide access to Documents Relating to the Claims or Information Relating to the Claims pursuant to this Agreement), in their capacities as such~~, including but not limited to the right to serve a subpoena seeking Documents or information encompassed by Section II.B and/or II.C of this Agreement, or (ii) ~~the~~ any ~~other person's~~Person's or entity's rights to object or raise all applicable defenses to such requests.

III.

TERM OF THIS AGREEMENT

This Agreement shall terminate automatically upon the termination of the Litigation Trust in accordance with its governing documents; provided, however, that (i) Section II.F shall survive the termination of this Agreement, and (ii) following such termination the Litigation Trustee will continue to be bound by this Agreement and this Agreement shall continue to protect all Documents Relating to the Claims and information provided or disclosed in accordance with this Agreement. The Creditors Committee's obligations under this Agreement shall terminate when the Creditors' Committee has fulfilled its obligations set forth in Sections II.A, II.B and II.C.

IV.

MISCELLANEOUS

A. Notices.

All notices, requests, or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be effective when either served by hand delivery, electronic mail, electronic facsimile transmission, express overnight courier service, or by registered or certified mail, return receipt requested, addressed to the Parties at their respective addresses set forth below, or to such other address or addresses as either Party may later specify by written notice to the other:

1. To the Litigation Trustee: to the address designated in the Litigation Trust Agreement;

2. To the Creditors' Committee: [insert address]

B. <u>Counterparts; Effectiveness</u>.

This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Agreement shall become effective on the later of (i) the date when each Party hereto shall have received counterparts thereof signed by all the other Parties hereto, or (ii) the Effective Date, provided that, prior to the Agreement becoming effective, the Creditors' Committee shall, following entry of the Confirmation Order promptly undertake and fulfill the duties and obligations contained herein which, by their terms, are to be performed prior to the Effective Date.

C. <u>Governing Law</u>.

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws of the State of Delaware or any other jurisdiction. Notwithstanding the foregoing choice of Delaware law, the Parties agree that the Bankruptcy Court will have non-exclusive jurisdiction of all matters arising out of or in connection with this Agreement.

D. <u>Retention of Jurisdiction</u>

The Bankruptcy Court shall retain jurisdiction to hear and resolve any disputes arising from or relating to this Agreement.

E. <u>Severability; Validity</u>.

Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but to the extent that any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby and to such end, the provisions of this Agreement are agreed to be severable.

F. <u>Relationship of Parties</u>.

Nothing contained in this Agreement shall be construed to affect the separate and independent representation of each Party by their respective counsel according to what its counsel believes to be in his, her, or its client's best interest. Each Party represents that it understands and acknowledges that it is represented exclusively by the Party's own attorneys.

G. <u>No Waiver</u>.

The Creditors' Committee and the Litigation Trustee agree that no failure or delay by either Party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power and privilege hereunder.

H.  Entire Agreement.

Subject to the provisions set forth in Section I.C. of this Agreement, this Agreement contains the entire agreement of the Parties concerning the subject matter hereof, and no modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the Parties unless approved in writing by the Parties.

I.  Authorization.

Each of the undersigned individuals represents and warrants that he/she has the power and authority to enter into this Agreement and bind the Creditors' Committee or the Litigation Trust respectively as its authorized representative.

J.  Titles.

The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

K.  Binding Effect.

The Parties agree that this Agreement is for the benefit of and shall be binding upon the Parties and their respective representatives, transferees, successors, and assigns.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement Respecting Transfer Of Documents, Information, And Privileges From the Creditors' Committee or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:
Title:

[INSERT NAME], LITIGATION TRUSTEE OF THE LITIGATION TRUST ESTABLISHED UNDER THE LITIGATION TRUST AGREEMENT DATED [ ],2011 PURSUANT TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., AND JPMORGAN CHASE BANK, N.A.

[INSERT NAME], as

LITIGATION TRUSTEE