IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objection Deadline: July 3, 2012 at 4:00 p.m. ET |
| | Hearing Date: July 11, 2012 at 10:00 a.m. ET |

**MOTION OF HARRY AMSDEN, ROBERT GREMILLION, AND DAVID D.
WILLIAMS FOR AN ORDER AUTHORIZING THE DEBTORS TO DEPOSIT
THEIR 2010 MANAGEMENT INCENTIVE PLAN AWARDS INTO RABBI TRUSTS**

Harry Amsden, Robert Gremillion, and David D. Williams (the "Movants") move

this Court for entry of an order, in substantially the form attached hereto as Exhibit A (the

"Order"), authorizing Debtors to deposit into "rabbi trusts" Movants' 2010 Management

Incentive Plan ("MIP") awards.  In support of this Motion, Movants state as follows:

BACKGROUND

1.       Movants are three former employees of the Debtors who worked for

Debtors post-petition.  They were separated from the Debtors in 2011 for business reasons and

not "for cause." *See* October 4, 2011 hearing on the 2011 MIP Motion (attached hereto as

Exhibit B), at 18:1-5 (proffered testimony of President and Chief Executive Officer Eddy

Hartenstein stating:  "The three other individuals who also had been included in 2010, have since

left the company and were separated solely as a result of position reductions as part of the

company's cost cutting efforts . . .").  Each Movant provided valuable contributions to the

Debtors during 2010 – a fact established by the Compensation Committee's decision to award

1311761

each Movant a substantial MIP award.[1] *See Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2010* [D.I. No. 4620] ("the 2010 MIP Motion"), at 3; *see also* November 10, 2010 Testimony of Hartenstein (attached hereto as Exhibit F), at 33:24-34:1, stating that the efforts of the "core management team . . . was nothing short of herculean." Movants' MIP awards, which, in aggregate, amount to $782,500, would represent, on average, over 40% of each Movant's 2010 total compensation.

2.      On November 8, 2010, the Official Committee of Unsecured Creditors (the "Committee") filed an objection to paying Movants (and two other approved participants) the earned amounts because each individual was named as a defendant in the Official Committee of Unsecured Creditors of Tribune Co., et al. v. Dennis J. FitzSimons, et al., Adv. Pro. No. 10-54010-KJC (Bankr. D. Del.) (the "*FitzSimons* Action"). *See Limited Objection of Official Committee of Unsecured Creditors to Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2010* [D.I. No. 6252] ¶¶ 2, 5. Debtors decided not to seek authorization from this Court to pay the 2010 MIP awards to the Movants (and the two other individuals) in order to secure approval of the MIP awards to its remaining employees. As a result, Movants received only roughly 60% of their total earned 2010 post-petition compensation. Exhibit F, at 20:10-21:23; see also Court's Order dated November 10, 2010 [D.I. No. 6323 ] ("[T]his Order is without prejudice to the Debtors' right to seek approval of the 2010 MIP Motion as to such Deferred Participants at a future time, or to the right of any party to raise objections to any such motion."). This decision resulted in Movants' 2010 compensation being materially below that of their colleagues and peers. See Report of

---

[1]      Work performed by Movants in 2010 is described in the Affidavit of Harry Amsden (attached hereto as Exhibit C), the Affidavit of Robert Gremillion (attached hereto as Exhibit D), the Affidavit of David D. Williams (attached hereto as Exhibit E).

1311761

Mercer (U.S.), Inc. dated May 26, 2010 (filed as Exhibit D in support of 2010 MIP Motion [D.I. No. 4620]), at 13 (confirming that, without the 2010 MIP, total direct compensation for the Debtors' management team members on average would be approximately 28% of the market median for senior management, and 42% of the market median for other key executives).

      3.     In February 2011, all 2010 MIP participants (other than the five named *FitzSimons* defendants) were paid 2010 MIP awards. MIP payments for 2011 and 2012 were subsequently approved by this Court, including for the two current employees who worked with Movants and were named in the *FizSimons* Action. For the two current employees, the Court approved the establishment of "rabbi trusts" to hold 2011 and 2012 MIP payments pending resolution of the claims against them. See Order dated October 4, 2011 [D.I. No. 9880] (the "2011 MIP Order") and Order dated May 4, 2012 [D.I. No. 11535] (the "2012 MIP Order"). No party objected to this procedure.

      4.     Movants seek exactly the same relief based on principles of fairness and equity.

## REQUESTED RELIEF

      5.     Movants request that the Court authorize Debtors to deposit Movants' earned 2010 MIP awards into rabbi trusts on their behalf subject to the same protections and conditions reflected in the Court's 2011 and 2012 MIP Orders, as reflected in the attached proposed Order. There is no dispute that Movants earned their 2010 MIP awards and that Debtors benefitted from the work Movants performed.[2] This fact is established by the Compensation Committee's approval of these payments, a valid exercise of its business judgment. See Motion of the Debtors for an Order Authorizing the Debtors to Implement a

---

[2]    Indeed, Movants Robert Gremillion and David D. Williams continue to provide the Debtors with consulting services.

1311761

Management Incentive Plan for 2011 [D.I. No. 9726] (the "2011 MIP Motion") at ¶ 50; *see also* Exhibit F, at 33:14-44:5 (evidentiary record confirming Movants' performance and contribution to Debtors' strong operating performance in 2010).

6.    There is no reason to differentiate Movants from the two current employees. Withholding amounts the Movants earned during their service in 2010 would be inconsistent with the structure of the 2010, 2011 and 2012 MIPs, all of which allowed former employees to receive pro rata MIP payments, a decision that no party opposed and which the Committee, for example, supported. *See* Exhibit B, at 20:21-21:11 (Committee supporting the 2011 MIP Motion and indicating that "the Committee has voted to support the MIP, and request that the order be entered in the form before the Court now"); Certification of No Objection Regarding Docket No. 11377 [D.I. No. 11526] (Debtors' certification that no answer, objection, or other responsive pleading to the 2012 MIP Motion was filed by any party). Those programs allowed MIP payments to persons who were employed during the year at issue *as long as* the employee was terminated without cause (as is the case with Movants).[3]

7.    In addition, any argument that a former employee should not receive earned amounts because the payment of such amounts would not "benefit" the estate should be strongly rejected as a matter of policy. Virtually every State in the Union requires payment of earned wages to former employees and the failure to do so can result in severe penalties. *See, e.g.,* Illinois Wage Payment and Collection Act, 820 ILCS § 115/5 et seq. (requiring payment of

---

[3]    The 2010, 2011 and 2012 MIP contain provisions in which former employees would receive pro-rata payment based on length of service during the year. *See* 2010 MIP Motion at ¶ 28 and 2011 MIP Motion at ¶ 24 ("A participant generally must be employed on the date of payment to receive an [sic] MIP award, *except in the case of* death, disability retirement or *termination without cause, which would result in a pro-rated payment based on length of service during the year*") (emphases added); *Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2012* [D.I. No. 11377] (the "2012 MIP Motion"), at ¶ 24 (same).

1311761

Specialty Flooring, Inc., 317 Ill. App. 3d 370, 374, 379, 739 N.E.2d 982, 986, 990 (2d Dist. 2000) (upholding the lower court's order that employer pay both wages owed and penalties under the Wage Act for failure to make timely payment to separated employee); Smith v. Superior Court, 39 Cal. 4th 77, 92, 137 P.3d 218, 228 (2006) ("The plain purpose of [the provisions of the California Labor Code governing wages due to employees upon the close of their employment] is to compel the immediate payment of earned wages upon a discharge."); N.Y. Lab. Law § 190 et seq. (providing, *inter alia*, a statutory cause of action and both civil and criminal penalties for employers' failure to remit earned compensation to employees); 19 Del.C. § 1101 et seq. (providing, *inter alia*, that, absent narrow exceptions, employers may not withhold wages due to employees). The entities that Movants worked for in 2010 continue to exist, at least in part due to Movants' 2010 efforts, and Movants, as a matter of policy, should be paid for the work they performed, a fact recognized by Debtors.

8.      In any event, Movants are not asking for the immediate payment of their earned wages. They are simply requesting the *potential* for payment by the Court authorizing the placement of the Movants' earned amounts into rabbi trusts. This act will confirm Movants' participation in the 2010 MIP, provide Movants with some assurance that they may receive these earned amounts upon a favorable resolution of the claims against them in the *FitzSimons* Action, and impose no undue hardship on any party. *See* Exhibit F, at 15:16-19 (Argument of Creditors Committee's counsel: "If these five individuals are in later proceedings proved to have been completely without fault and to have done the right thing, then I think the committee would have no issue with them getting their MIP payments at that point." ) Indeed, funding the payments now out of current operating cash flow should benefit the Debtors when it emerges from this bankruptcy.

5

now out of current operating cash flow should benefit the Debtors when it emerges from this bankruptcy.

        9.     In sum, no compelling reason exists to allow Movants to be treated differently from the two current employee defendants with respect to the 2010 MIP payments. Placement of Movants' earned award into the rabbi trusts is both fair and equitable in that it provides equal treatment to similarly-situated individuals. Accordingly, Movants respectfully submit that the Court should approve their payments as it has already done with respect to the current employees in two prior orders (for 2011 and 2012), and enter an order authorizing Movants' 2010 MIP participation as proposed.

## CONCLUSION

        For the foregoing reasons, Movants are entitled to the relief requested and ask that the Order attached as Exhibit A be entered and that they receive other relief the Court may deem just and proper.

Dated:  June 20, 2012

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ LLP**

_____
Jeffrey C. Wisler (#2795)
Marc J. Phillips (# 4445)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
Telephone:  (302) 658-9141
Facsimile:  (302) 658-0380
Email: jwisler@cblh.com
       mphillips@cblh.com

John R. McCambridge
George R. Dougherty
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195
Email: jmccambridge@grippoelden.com
      gdougherty@grippoelden.com

Attorneys for Harry Amsden, Robert Gremillion
and David D. Williams

1311761