# Exhibit B

```
             IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE DISTRICT OF DELAWARE


IN RE:                        )   Case No. 08-13141(KJC)
                              )   (Jointly Administered)
                              )
TRIBUNE COMPANY, et al.,      )   Chapter 11
                              )
                              )   Related to Docket 9853
                              )
        Debtors.              )   Courtroom 5
                              )   824 Market Street
                              )   Wilmington, Delaware
                              )
                              )   October 4, 2011
                              )   10:00 a.m.


                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
              UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For Debtor:            Sidley Austin, LLP
                       BY: BRIAN GOLD, ESQ.
                       BY: JAMES BENDERNAGEL, ESQ.
                       BY: JONATHAN LOTSOFF, ESQ.
                       One South Dearborn
                       Chicago, IL  60603
                       (312) 853-7000

                       Cole, Schotz, Meisel, Forman
                       & Leonard, P.A.
                       BY: NORMAN PERNICK, ESQ.
                       500 Delaware Avenue, Suite 410
                       Wilmington, DE  19801
                       (302) 652-3131

ECRO:                  AL LUGANO

Transcription Service: DIAZ DATA SERVICES
                       331 Schuylkill Street
                       Harrisburg, Pennsylvania 17110
                       (717) 233-6664
                       www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

1   its current projected OCF of $517 million.

2              To put this in perspective, just from the metrics
3   standpoint, if the company's performance equals its budgeted
4   OCF, Your Honor, the payout under the proposed MIP is only
5   at 81 percent of target.

6              These MIP targets are a result of discussions,
7   compromise, and eventual agreement with certain key creditor
8   constituencies.  The company as Your Honor knows from prior
9   motions on the subject, has had a MIP in effect outside of
10  bankruptcy since at least 1997.  That plan is encompassed by
11  the 1997 incentive compensation plan which is Exhibit E to
12  the MIP motion.  When comparing the proposed 2011 MIP to
13  these historical MIP's that were in place, the proposed MIP
14  is more conservative than the historical MIP's in all
15  respects.  Comparing the number of proposed participants it
16  is lower.  Comparing the percentage payout at budgeted OCF
17  it is lower.  Comparing the dollar payouts at each of the
18  threshold target and max levels, all lower.  Comparing the
19  2011 actual total dollars that will be paid based on current
20  OCF projections, also lower than 2010.

21             In addition to approval of the MIP plan, Your
22  Honor, just to move away from the metrics, the company's
23  motion and proposed order seeks approval of the proposed MIP
24  with respect to two individuals who remain employed by the
25  debtor, but who had not been included without prejudice

1   under the 2010 MIP order.  The three other individuals who
2   also had been included in 2010, have since left the company
3   and were separated solely as a result of position reductions
4   as part of the company's cost cutting efforts that I alluded
5   to earlier.
6       The proposed order contains a provision
7   specifically including these two individuals who remain
8   employed in the 2011 MIP.  However, as a result of
9   discussions, and a compromise reached with the creditors'
10  committee, the order before you also provides that such
11  amounts be paid into a trust and distributed to the
12  individuals only upon satisfaction of certain conditions
13  specified in the proposed order related to the pendency of
14  certain claims by the creditors' committee.
15      The board of directors has approved -- the
16  company has approved these two individuals for inclusion in
17  the MIP.  And Mr. Hartenstein, like the board, continues to
18  believe these individuals are very valuable and hardworking
19  employees that are integral to the debtor's success.  Mr.
20  Hartenstein believes it would be manifestly unfair to these
21  individuals not to receive their 2011 MIP and, therefore, be
22  paid substantially below market compensation.  However, he
23  views the compromise with the creditors' committee as a
24  reasonable solution under the circumstances.
25      In summary, Your Honor, Mr. Hartenstein if called

1   to testify, would state that the 2011 proposed MIP should be
2   approved so that eligible company employees through their
3   efforts and successes can attain compensation that even
4   somewhat approaches market based payouts.  Further, it is
5   critical that the MIP be approved as soon as possible so
6   that employees are incentivized to continue their hard work
7   and outperform during the fourth quarter in face of what was
8   referred to as an uncertain operating environment in an
9   uncertain economy.
10              That would conclude the proffer with respect to
11  Mr. Hartenstein, Your Honor.  Your Honor may have questions
12  and others may as well.  I would state before we get to that
13  that our only other proffer would be with respect to Mr.
14  Dempsey, if Your Honor desires.  On the other hand, if Your
15  Honor is amenable, we can move for the introduction of Mr.
16  Dempsey's affidavit in lieu of that, but that's solely up to
17  Your Honor.
18              THE COURT:  All right.  Well let's address Mr.
19  Hartenstein's testimony first.  Does anyone wish to cross
20  examine Mr. Hartenstein?
21                    (No audible response.)
22              THE COURT:  I hear no response.  All right.
23  Anyone object to the introduction of the Dempsey
24  declaration?
25                    (No audible response.)

1    THE COURT: I hear no response. And I take it
2 that the motion is to include introduction of the report --
3    MR. GOLD: Yes, Your Honor.
4    THE COURT: -- as well. Is there any objection
5 to that?
6         (No audible response.)
7    THE COURT: I hear no response. They're admitted
8 without objection.
9    MR. GOLD: And we also would move for the
10 introduction of what I referred to as Debtor's Exhibit 1,
11 Your Honor.
12    THE COURT: Is there objection to the
13 introduction of D1?
14         (No audible response.)
15    THE COURT: I hear none, it's admitted without
16 objection. Does the debtor have anything further in support
17 of its motion?
18    MR. GOLD: We do not, Your Honor.
19    THE COURT: Does anyone else wish to be heard in
20 connection with the MIP motion?
21    MR. LEMAY: Good morning, Your Honor. David
22 LeMay from Chadbourne and Parke for the official committee
23 of unsecured creditors.
24    As the Court is aware from yesterday's telephone
25 hearing, the committee supports this motion. I rise only,

1  as I have in years past, to assure the Court that the
2  committee and its financial and legal professionals have
3  reviewed this year's iteration of the MIP with great care,
4  have negotiated certain provisions of that MIP, have
5  negotiated and obtained certain changes to the form of the
6  proposed order that would approve the MIP, and those are
7  embodied in the version that's before Your Honor.  And after
8  that review and after that, those negotiations, and with all
9  those changes, the committee has voted to support the MIP,
10 and request that the order be entered in the form before the
11 Court now.  That's all I have, Your Honor.
12             THE COURT:  Thank you.  Does anyone else wish to
13 be heard in connection with the MIP motion?
14             (No audible response.)
15             THE COURT:  I hear no further response.  All
16 right, thank you.  I'm prepared to make my ruling now.  I've
17 reviewed all of the written submissions, including but not
18 limited to the Mercer un-redacted version of the report.
19 And based upon the testimony, I'm prepared to approve the
20 relief that's been requested.
21             The Mercer report reflects that, frankly, there
22 have been a variety of approaches to management compensation
23 among the samples chosen, but I find under these
24 circumstances, the metrics that the debtor has chosen here
25 and the methods by which they -- on which they base