**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Objection Deadline: July 4, 2012 at 4:00 p.m. (ET)**<br>**Hearing Date: July 11, 2012 at 10:00 a.m. (ET)** |

# MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO DEPOSIT 2010 MANAGEMENT INCENTIVE PLAN AWARDS INTO RABBI TRUSTS FOR TWO CURRENT DEFERRED PARTICIPANTS

Tribune Company (the "Company") and most of its wholly-owned subsidiaries, each of which is a debtor and debtor in possession herein (each a "Debtor" and collectively, the "Debtors"), hereby move this Court (the "Motion") pursuant to Sections 363(b) and 503(c) of Title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, in substantially the form attached hereto as Exhibit A (the "Order"). The requested Order would authorize, but

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

not direct, the Debtors to deposit into "rabbi trusts" awards under the Debtors' Court-approved 2010 Management Incentive Plan ("MIP") on behalf of the two current employees whose participation in the 2010 MIP was proposed but not approved under this Court's Order Authorizing, but not Directing, the Debtors to Implement a Management Incentive Plan for 2010, dated November 10, 2010 [D.I. No. 6323] (such Order referred to herein as the "2010 MIP Order," and such individuals referred to herein as the "Current Deferred Participants" and in the 2010 MIP Order as among the five "Deferred Participants" described therein).[2] The aggregate amount of the 2010 MIP awards for these two Current Deferred Participants is $600,000.

By this Motion, the Debtors seek authorization to establish the same type of rabbi trust arrangements for the Current Deferred Participants' 2010 MIP awards, which would be governed by the same limitations and related provisions, that were authorized for these same two employees under the 2011 MIP and the 2012 MIP pursuant to this Court's Order Authorizing, but not Directing, the Debtors to Implement a Management Incentive Plan for 2011, dated October 4, 2011 [D.I. No. 9880] (the "2011 MIP Order"), and its Order Authorizing, but not Directing, the Debtors to Implement a Management Incentive Plan for 2012, dated May 4, 2012 [D.I. No. 11535] (the "2012 MIP Order"). The Debtors respectfully submit that this Court's approval of the Current Deferred Participants' rabbi trust arrangements for the 2011 MIP and the 2012 MIP, as well as principles of fundamental fairness, warrant the same treatment for their 2010 MIP awards based on their diligent service throughout 2010.

The official committee of unsecured creditors (the "Creditors Committee") supported the relief requested by the Debtors in the Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2011 [D.I. No. 9726]

[2] These two current employees hold the positions of Executive Vice President ("EVP")/Chief Financial Officer and Senior Vice President ("SVP")/Investments.

(the "2011 MIP Motion") and the Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2012 [D.I. No. 11377] (the "2012 MIP Motion"), including authorization of the rabbi trusts thereunder for the Current Deferred Participants, and no objections were received to the 2011 MIP Motion or the 2012 MIP Motion. The Creditors Committee also does not object to the relief requested in the instant Motion.

Additional facts and circumstances supporting this Motion are set forth below and in the evidence presented at the October 4, 2011 hearing on the 2011 MIP Motion (the "2011 MIP Hearing"), and at the November 10, 2010 hearing on the Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2010 [D.I. No. 4620], as revised by the Debtors' Notice of Revision to 2010 Management Incentive Plan [D.I. No. 5112] (such motion as revised referred to as the "2010 MIP Motion" and such hearing referred to as the "2010 MIP Hearing").[3] In further support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Company and certain of its subsidiaries each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[4] filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 110 entities.

[3] In the absence of any objection to the 2012 MIP Motion, the Court granted that motion and entered the 2012 MIP Order on May 4, 2012 in advance of the scheduled May 8, 2012 hearing.

[4] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed.

3. The Creditors Committee was established on December 18, 2008.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors submit that Sections 363(b) and 503(c) of the Bankruptcy Code authorize the granting of this Motion and the relief requested herein. 11 U.S.C. §§ 363(b), 503(c).

## BACKGROUND

### Historical MIP Plans and Court Approval of the 2010 MIP, 2011 MIP and 2012 MIP

5. The MIP is an annual cash incentive plan that generally provides for the establishment of a bonus pool to the extent that certain consolidated operating cash flow goals approved by the Company's Board of Directors and the requirements of the MIP are met. Once a bonus pool is established, management employee participants are eligible for awards determined in accordance with the terms of the MIP.

6. At the 2010 MIP Hearing on November 10, 2010, the Court held that the 2010 MIP met the standard under Section 503(c)(3) of the Bankruptcy Code. See Transcript of 2010 MIP Hearing (excerpts attached as Exhibit C hereto), at 59; 11 U.S.C. § 503(c)(3). This Court also approved the 2011 MIP and the 2012 MIP in the 2011 MIP Order and the 2012 MIP Order, respectively, and held at the 2011 MIP Hearing on October 4, 2011 that the 2011 MIP

program was justified under the facts and circumstances. See Transcript of 2011 MIP Hearing (excerpts attached as Exhibit B hereto), at 22; supra note 3 (regarding entry of 2012 MIP Order).

**Non-Approval of the 2010 MIP for the Deferred Participants**

7. In the 2010 MIP Motion, as in prior years, the Debtors had included as participants in the 2010 MIP all five of the individuals who ultimately became Deferred Participants, given their value to the organization and the need to provide them, like other management team members, with fair and market-based compensation.[5] The Compensation Committee of the Company's Board of Directors (the "Compensation Committee") approved their participation in the 2010 MIP.

8. Prior to the 2010 MIP Hearing, however, the Creditors Committee filed a limited objection seeking to deny payment of 2010 MIP awards at that time to the five Deferred Participants because they were, in the Creditors Committee's words, "implicated" in the Report of Kenneth N. Klee (the "Examiner's Report") "as possibly having been involved in wrongdoing or having acted inconsistently with their fiduciary obligations in connection with the 2007 leveraged buy-out of Tribune Company," and were among the defendants named in the Creditors Committee's subsequent adversary complaint. See Limited Objection of Official Committee of Unsecured Creditors to Motion of the Debtors for an Order Authorizing the Debtors to

---

[5] Besides the two Current Deferred Participants at issue in this Motion, the three other then-current employees who also became "Deferred Participants" under the 2010 MIP Order held the positions of EVP/Tribune Publishing; SVP/Financial Operations; and President & Chief Executive Officer/Tribune Media Services. Like the two Current Deferred Participants, these three other individuals similarly were named as among the defendants in the adversary complaint filed by the Creditors Committee on or about November 1, 2010 in connection with the Company's 2007 leveraged buyout transactions. These three individuals were separated from their employment with the Debtors in 2011 for business reasons (not "for cause"). See Transcript of 2011 MIP Hearing (Ex. B hereto), at 18 (proffered testimony of Company President and Chief Executive Officer Eddy Hartenstein stating: "The three other individuals who also had been included in 2010, have since left the company and were separated solely as a result of position reductions as part of the company's cost cutting efforts that I alluded to earlier."). The Debtors understand that these three former employees are separately represented by legal counsel, and that they are filing their own motion with respect to their 2010 MIP awards, which aggregate to $782,500.

Implement a Management Incentive Plan for 2010 [D.I. No. 6252] (the "Limited Objection") ¶¶ 2, 5. The United States Trustee concurred with the Limited Objection.

9. The Debtors maintained that these individuals should not be precluded from receiving fair compensation for their efforts by virtue of these unproven allegations. Nevertheless, at the 2010 MIP Hearing, following a colloquy with the Court, the Debtors withdrew their request, without prejudice, for approval of 2010 MIP payments to the five individuals at that time, in order to proceed as to the remaining 600-plus MIP participants.

10. While the Court's 2010 MIP Order did not authorize payment to the Deferred Participants, that Order nevertheless did not bar the Debtors or the individuals themselves from seeking payment of their 2010 MIP awards at any point in the future. See 2010 MIP Order (stating that "this Order is without prejudice to the Debtors' right to seek approval of the 2010 MIP Motion as to such Deferred Participants at a future time, or to the right of any party to raise objections to any such motion"). Nor did the 2010 MIP Order exclude them from participating in any subsequent MIP program.

11. Notably, the Court also did not rule at the 2010 MIP Hearing on the propriety of placing the Deferred Participants' 2010 MIP awards in trust pending resolution of the Creditors Committee's complaint. That issue was not before the Court at the November 10, 2010 hearing because the dispute centered on whether the five individuals should be permitted to participate in the 2010 MIP at that time, with the Debtors arguing that they should be allowed to participate without any special restrictions or limitations. Due to timing concerns and the need to resolve the 2010 MIP Motion promptly as to the broader MIP participant population, the parties did not have an opportunity at that time to negotiate trust arrangements applicable specifically to

the Deferred Participants (as they subsequently did for the two Current Deferred Participants under the 2011 MIP and the 2012 MIP). As the Debtors argued and as the Court acknowledged, it was important to the Debtors to obtain a ruling on the 2010 MIP for the broader population at that November 10, 2010 hearing given the late point in the year and the uncertain environment created by the Debtors' Chapter 11 proceedings. See Transcript of 2010 MIP Hearing (Ex. C hereto), at 18 ("given the continuing disputes among various constituents, which are now represented in the competing plans, and the atmosphere that must have created, and I figure continues at the debtor in part as a result of that anyway, I sympathize with the debtors' request for the Court t[o] act at this time.").

12. All 2010 MIP participants other than the Deferred Participants were paid their 2010 MIP awards in February 2011. The Debtors have determined the amounts of the two Current Deferred Participants' 2010 MIP awards if their participation were to be approved by this Court. These awards aggregate to $600,000. As discussed further below, the Debtors believe that the Current Deferred Participants have earned these awards based on their efforts during 2010.

**Inclusion of the Trust Provisions in the 2011 MIP and the 2012 MIP**

13. Both the Compensation Committee and the Debtors' senior management made the business judgment that the two Current Deferred Participants who continue to be employed with the Debtors remained valuable to the organization, and included them in the 2011 MIP. See Transcript of 2011 MIP Hearing (Ex. B hereto), at 18 (proffered testimony of Eddy Hartenstein) ("[T]he company has approved these two individuals for inclusion in the MIP. And Mr. Hartenstein, like the board, continues to believe these individuals are very valuable and hardworking employees that are integral to the debtor's success. Mr. Hartenstein believes it

would be manifestly unfair to these individuals not to receive their 2011 MIP and, therefore, be paid substantially below market compensation."). However, the Creditors Committee informed the Debtors that it would again object to their receipt of payments under the 2011 MIP before the claims against them in the Creditors Committee's complaint have been resolved.

14. The Debtors were mindful of the Court's ruling on this issue with respect to the 2010 MIP. Accordingly, to respond to the Creditors Committee's potential objection as to this issue, the Debtors negotiated with the Creditors Committee and included in the 2011 MIP Order a provision that allowed the two Current Deferred Participants to participate in the 2011 MIP, but provided for the placement in trust of any 2011 MIP awards otherwise payable to them pending resolution of the claims against them in the Creditors Committee's complaint. See Transcript of 2011 MIP Hearing (Ex. B hereto), at 20-21. As stated, the Creditors Committee supported the 2011 MIP Motion, and no party filed any objection thereto, including to the proposed trust arrangement. The relevant language in the Court's 2011 MIP Order is as follows:

> [It is hereby] ORDERED, that, with respect to the two 2011 MIP Participants named as defendants in the matter of In re The Official Committee of Unsecured Creditors of Tribune Company v. Fitzsimons, et al., United States Bankruptcy Court for the District of Delaware, Case No. 08-13141 (such proceeding referred to as the "Creditors Committee LBO Litigation" and such two 2011 MIP Participants referred as the "Trust Participants"), any payment under the 2011 MIP to any such Trust Participant shall be held in an interest-bearing rabbi trust account established for the benefit of each such Trust Participant pending the final resolution of all claims in the complaint filed on or about November 1, 2010 against such Trust Participant in the Creditors Committee LBO Litigation (as such complaint may from time to time be amended, and whether brought by the Creditors Committee or by any other party acting as a fiduciary or in a similar capacity on behalf of Tribune Company (the "Company") and its subsidiaries) and shall, within ten (10) days after any such resolution, be paid from the rabbi trust account established for such Trust Participant to such Trust Participant unless: (a) this Court or any other court of competent jurisdiction enters a final non-appealable order or judgment in the Creditors Committee LBO Litigation finding that, as part of the Company's leveraged buy-out transactions in 2007, such Trust Participant breached his fiduciary duty or committed an intentional tortious

> wrong, in which event such Trust Participant's 2011 MIP payment shall be forfeited; or (b) this Court orders otherwise, in which case such order shall govern the distribution of such amounts.

2011 MIP Order, at 3. In accordance with the 2011 MIP Order, the Current Deferred Participants' 2011 MIP awards were deposited into rabbi trusts on their behalf when 2011 MIP awards were paid out generally to participants in January 2012.

15. The same trust arrangement provisions also were included for the two Current Deferred Participants in the 2012 MIP Order, which similarly authorized the placement in trust of any 2012 MIP awards otherwise payable to them, subject again to the foregoing conditions and limitations. As with the 2011 MIP Motion, the Creditors Committee supported the 2012 MIP Motion, and no party filed any objection thereto, including to the proposed trust arrangement.

**RELIEF REQUESTED AND BASIS THEREFOR**

16. The Debtors respectfully submit that the Court should authorize the Debtors to deposit the Current Deferred Participants' 2010 MIP awards into rabbi trusts on their behalf pursuant to an order that includes the same corresponding limitations and protections as the 2011 MIP Order and the 2012 MIP Order, and that such relief is authorized and justified by the facts and circumstances pursuant to Sections 363(b) and 503(c) of the Bankruptcy Code. See 11 U.S.C. §363(b)(1); id. § 503(c)(3). As discussed below, such relief comports with the Court's 2011 MIP Order and 2012 MIP Order, and is necessary as a matter of fundamental fairness and equity to compensate the Current Deferred Participants for their hard work throughout 2010.

17. The only reason the Current Deferred Participants did not receive their 2010 MIP awards was the pendency of the Creditors Committee lawsuit following the

Examiner's Report. Placement of the Current Deferred Participants' 2010 MIP awards in trust, as was authorized under the 2011 MIP and the 2012 MIP, confirms their participation in the 2010 MIP (which is not currently the case) and provides each Current Deferred Participant with some assurance that he may receive his award upon the resolution of the claims against him in that litigation, subject only to the conditions of the proposed Order.

18. In determining whether to authorize the use of property pursuant to Section 363(b), the debtor need only demonstrate that a sound business purpose justifies such use. In re: Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); see also In re: Delaware & Hudson Railway Co., 124 B.R. 169, 176 (D. Del. 1991). Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

19. With respect to Section 503(c)(3), this Court has described the standard therein as a "heightened business judgment standard." See Transcript of January 27, 2010 Hearing on 2009 MIP (the "2009 MIP Hearing") (excerpts attached as Exhibit D hereto), at 18; see also Transcript of May 12, 2009 Hearing on 2008 MIP (the "2008 MIP Hearing") (excerpts attached as Exhibit E hereto), at 52-53 (the Court characterizes the Section 503(c)(3) "justified by the facts and circumstances" standard as a "business judgment plus" standard).

20. The evidence adduced at the 2010 MIP Hearing and the 2011 MIP Hearing, and the facts provided in the unopposed 2012 MIP Motion, abundantly demonstrate that the relief requested in this Motion constitutes a valid exercise of the Debtors' business judgment

and meets the standards of Sections 363(b) and 503(c). It is axiomatic that employees should receive fair and competitive compensation for their efforts and contributions, and that the Debtors' annual MIP program serves that core purpose. This Court already has held that the 2010 MIP, like the 2011 MIP, represents a valid exercise of the Debtors' business judgment that is justified under the facts and circumstances. See Transcript of 2010 MIP Hearing (Ex. C hereto), at 59; 11 U.S.C. § 503(c)(3); see also Transcript of 2011 MIP Hearing (Ex. B hereto), at 22. The Court also granted the unopposed 2012 MIP Motion and entered the 2012 MIP Order on May 4, 2012.

21. Furthermore, in authorizing the 2011 MIP and the 2012 MIP and the rabbi trust provisions of the 2011 MIP Order and the 2012 MIP Order, this Court recognized the need to balance the interests of the Debtors' estates and creditors stemming from the Creditors Committee's complaint against the legitimate interests of the affected participants in being fairly compensated for their hard work. The Creditors Committee itself appreciated the need for such an equitable balance in supporting the relief requested in the 2011 MIP Motion and the 2012 MIP Motion with these trust provisions, and in not objecting to the relief requested in the instant Motion.

22. The same principles apply with equal force to the Current Deferred Participants' 2010 MIP awards and similarly warrant the deposit of such awards into rabbi trusts on their behalf. The evidentiary record already confirms that the two Current Deferred Participants (and indeed the three other Deferred Participants as well) performed well and contributed to the Debtors' strong operating performance in 2010. For example, asked at the 2010 MIP Hearing to describe the level of effort necessary for the management team – which

46429/0001-8623711V1

included the Deferred Participants – to achieve this success, Company President and Chief Executive Officer Eddy Hartenstein testified:

> To get the kind of results that you see here, which I characterize, my word, stellar, I think the efforts by the core management team that we have represented across the 600 plus was nothing short of herculean . . . . I came from a company where we created enormous value for our shareholders out of nothing. This was an industry in transition, a company in both transition in that industry, and in turmoil through the fact that we've been in bankruptcy since December of 2008 . . . . I have never seen a group of people, and I have personally never worked as hard in all my years in business to make this happen. I've asked people to do extraordinary things and they've responded and other business unit leaders in the company have as well.

Transcript of 2010 MIP Hearing (Ex. C hereto), at 33-34. Furthermore, Mr. Hartenstein's undisputed proffered testimony at the 2011 MIP Hearing confirmed that the two Current Deferred Participants have continued to perform integral roles with the Debtors. See Transcript of 2011 MIP Hearing (Ex. B hereto), at 18 ("Mr. Hartenstein, like the board, continues to believe that these individuals are very valuable and hardworking employees that are integral to the debtor's success."); supra note 3.

23. Moreover, the evidence, including at the 2010 MIP Hearing, makes clear that the Creditors Committee's limited objection to the payment of 2010 MIP awards at that time to the Deferred Participants was not due to any issues with their performance in 2010. As noted, the Creditors Committee and the Debtors have since resolved the Creditors Committee's limited objection with respect to the two Current Deferred Participants through the trust provisions sought in this Motion and set forth in the attached proposed Order.

24. In addition to providing the Current Deferred Participants with some reasonable prospect of equitable compensation for their efforts, placement of their 2010 MIP awards in trust will benefit both the Debtors and the Current Deferred Participants by providing a

measure of certainty and predictability that is currently lacking. As stated, nothing in this Court's 2010 MIP Order prevents the Current Deferred Participants from seeking payment at some future time, including after the resolution of the Creditors Committee's complaint. The Debtors thus would continue to face a potential payment liability for an indeterminate period that could persist for several years. The Debtors respectfully submit that it is preferable from a business planning perspective to fund trusts for that potential liability now, out of current operating cash flow, given that they have already budgeted to pay these 2010 MIP awards. If a Current Deferred Participant ultimately is precluded from recovering his 2010 MIP award, that amount would supplement the Debtors' future operating cash flow. Similarly, approval of trust provisions will provide the Current Deferred Participants with a measure of clarity by confirming their participation in the 2010 MIP now, while the 2010 performance year and related evidence are relatively fresh, rather than requiring the parties and the Court potentially to revisit the threshold question of their participation years later. Any future payout would remain subject to the conditions of the Court's order authorizing the trusts, as in the 2011 MIP Order and the 2012 MIP Order.

25. The Debtors further respectfully submit that the Creditors Committee's support for the relief requested in the 2011 MIP Motion and the 2012 MIP Motion including the trust arrangements, its non-objection to the relief requested in the instant Motion, and the absence of an objection from any other constituency to the 2011 MIP Motion or the 2012 MIP Motion, further demonstrate the reasonableness of the relief requested. See Transcript of 2010 MIP Hearing (Ex. C hereto), at 59 ("First, I'll look at what, in an unusual circumstance for this case, is a relative absence of objection. Not something I've seen...frequently to date. And that's not always the end of the game. But on the other hand, I guess which is the corollary to the

absence of objection, and that is meaningful support, particularly from the committee here for the reasons it's expressed."); Transcript of 2009 MIP Hearing (Ex. D hereto), at 16 ("The plan was developed over time, as a result of extensive negotiations by and among all of the major constituents of the company and has the support of all the major constituents of the company."); Transcript of 2008 MIP Hearing (Ex. E hereto), at 53 ("The major creditor constituencies are supportive, others have not objected.").

26.    Failure to apply the rabbi trust structure approved for the 2011 MIP and the 2012 MIP to the Current Deferred Participants' 2010 MIP awards would result in significant inequity. As stated, the Current Deferred Participants have received only their base salary for 2010 despite their faithful and diligent services throughout that successful year, resulting in total compensation that is materially below that of their colleagues at the Debtors and at other peer media organizations. See Report of Mercer (U.S.), Inc. dated May 26, 2010 (filed as Exhibit D in support of 2010 MIP Motion), at 13 (confirming that, without the 2010 MIP, total direct compensation for the Debtors' management team members on average would be approximately 28% of the market median for senior management, and 42% of the market median for other key executives). Although approval of trust arrangements would not immediately remedy this under-compensation, it nevertheless would provide the Current Deferred Participants with some measure of security by confirming their participation in the 2010 MIP and ensuring payment as long as the conditions the Court's Order authorizing the trusts are met (which conditions would be the same as those in the 2011 MIP Order and the 2012 MIP Order).

27.    The Debtors respectfully submit that there is no sound factual or legal basis for perpetuating such unfairness and uncertainty, particularly given the authorization already granted to deposit 2011 and 2012 MIP awards into rabbi trusts for the Current Deferred

Participants. As did the trust provisions authorized in the 2011 MIP Order and the 2012 MIP Order, the trust provisions proposed in this Motion for the 2010 MIP mitigate the harsh results that otherwise would result, appropriately balance the various interests affected by this matter, constitute a valid exercise of the Debtors' business judgment and are justified by the facts and circumstances.

## NOTICE

28. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Creditors Committee; (iii) the administrative agents for the Company's prepetition loan facilities; (iv) the administrative agent for the Debtors' post-petition loan facility; (v) the respective counsel for the Current Deferred Participants; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

29. The Debtors have not previously sought the relief requested herein from this or any other Court, other than in the 2010 MIP Motion.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested herein and enter the proposed Order attached as Exhibit A hereto authorizing, but not directing, them to deposit the Current Deferred Participants' 2010 MIP awards into rabbi trusts on their behalf, and granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
June 20, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Brian J. Gold
Jonathan D. Lotsoff
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ Kate Stickles
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION