# EXHIBIT C

**Excerpts of Transcript of November 10, 2010 Hearing**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
                              )
IN RE:                        )  Chapter 11
                              )
TRIBUNE COMPANY, et al.,      )  Case No. 08-13141 (KJC)
                              )
                              )  Courtroom 5
                              )  824 Market Street
_____Debtors._____ )  Wilmington, Delaware

                                 November 10, 2010
                                 10:05 a.m.
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtors:                  Sidley Austin LLP
                              BY: JONATHAN LOTSOFF, ESQ.
                              BY: KEVIN LANTRY, ESQ.
                              BY: JAMES BENDERNAGEL, JR., ESQ.
                              BY: BRIAN J. GOLD, ESQ.
                              One South Dearborn
                              Chicago, IL 60603
                              (213) 896-6022

                              Cole, Schotz, Meisel, Forman &
                              Leonard, PA
                              BY:  KATE STICKLES, ESQ.
                              1000 North West Street
                              Suite 1200
                              Wilmington, DE 19801
                              (302) 652-3131

ECRO:                         AL LUGANO

Transcription Service:        DIAZ DATA SERVICES
                              331 Schuylkill Street
                              Harrisburg, Pennsylvania 17110
                              (717) 233-6664
                              www.diazdata.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service

1   think is on Page 10, if I'm not mistaken, on the Mercer report,

2   in the so called middle group, and then whatever the difference

3   is, about 605 or so would be everyone else.

4                THE COURT:  Okay.  So they did survey then all the

5   26 what they called key incumbents in that category.  So in

6   that category, Mr. Klauder, does the U.S. Trustee have a

7   position about how many are insiders?

8                MR. KLAUDER:  We do not.

9                THE COURT:  Does anyone else like to be heard

10  preliminarily?  I hear no further response.

11               This round is very different, in terms of what the

12  parties have presented to me.  In the original objections, both

13  the bridge agent and the U.S. Trustee had said this is a matter

14  which should be put off to confirmation.  The U.S. Trustee has

15  backed away from that position; the bridge agent has not.

16               Frankly, based on earlier rounds, I had that thought

17  myself, but we have a circumstance here, which given what I've

18  learned from prior hearings, given the continuing disputes

19  among various constituents, which are now represented in the

20  competing plans, and the atmosphere that must have created, and

21  I figure continues at the debtor in part as a result of that

22  anyway, I sympathize with the debtors' request for the Court t

23  act at this time.

24               On the other hand, there still is no plan and five

25  individuals among the top management group have been named as

1   our sellers, both on the broadcast television side and on the

2   publishing side, to be very results oriented.  They can't sit

3   still.  If they don't meet their numbers, they don't make their

4   mortgage payments, they can't live.  So we did a lot of

5   creative, out of the box types of training, incentivization, we

6   created new products, as well as just reorganizing our business

7   operations from top to bottom.

8   Q    Well, let me ask you about those new products in a

9   second, but with respect to, I think, what you said the sales

10  process, I think you called it solution selling; is that right?

11  A    There's a -- internally we call it selling the Tribune

12  way, which is a radically different way than publishing and

13  television has been sold in the past.

14  Q    I'd like you to give a Court -- the Court a sense, and

15  I'm going to ask you this when I get to the other initiatives

16  as well -- you've testified that you put these in place, you

17  testified what they are, that they've been successful.  I'd

18  like you to give the Court a sense of, if you will, the level

19  of effort, the kinds of effort and the type of effort that's

20  necessary from these 640 people who are -- you know, 100 and

21  some people are here before the Court today to ask for approval

22  of the MIP, you know, what was required in 2010 to make this a

23  success?

24  A    To get the kind of results that you see here, which I

25  characterize, my word, stellar, I think the efforts by the core

1  management team that we have represented across the 600 plus

2  was nothing short of herculean.  I come from a place -- I came

3  from a company where we created enormous value for our

4  shareholders out of nothing.  This was an industry in

5  transition, a company in both transition in that industry, and

6  in turmoil through the fact that we've been in bankruptcy since

7  December of 2008.  That we have -- I have never seen a group of

8  people, and I have personally never worked as hard in all my

9  years in business to make this happen.  I've asked people to do

10 extraordinary things and they've responded and other business

11 unit leaders in the company have as well.

12 Q    Let me ask you about some of the other initiatives that

13 go into that work you described.  In terms of the actual

14 revenue creation side, have you created new products, if you

15 will, or new sources of revenue that has been partially

16 responsible for this stellar performance?

17 A    Yes.

18 Q    And can you name one or more of those?

19 A    Oh, sure.  We are -- it starts with the fact that we are

20 no longer a -- in the publishing world we're no longer a one

21 instant in a 24 hour cycle kind of deadline.  We have converted

22 our newsgathering operations, our newsrooms and our reporting

23 out as a 24/7 operation.  We have consolidated a lot of the

24 functions to be more efficient, but from the top down, as we

25 look at the web based products that we had, we all have

1    think that's the genesis of the objection.

2              THE COURT:  All right, thank you.

3              MR. HAMMOND:  Thank you, Your Honor.

4              THE COURT:  Does anyone else with to be heard?  I

5    hear no further response.

6              Well, several different ways to -- that I look at

7    this in view of the record that's been made.  And let's

8    start with the standard.  I don't address whether the relief

9    should be awarded or viewed under 363(b) or (c).  No one has

10   argued that these are -- or is not now arguing this is

11   relief that should be applied against the standard set in

12   503(c)(1) or (c)(2).  So I will apply the standard provided

13   in 503(c)(3).  And I conclude that the debtor has met its

14   burden for the relief that it's now requesting.  And here's

15   how I view why that relief should be granted.

16             First, I'll look at what, in an unusual

17   circumstance for this case, is a relative absence of

18   objection.  Not something I've seen frequency -- frequently

19   to date.  And that's not always the end of the game.  But on

20   the other hand, I guess which is the corollary to the

21   absence of objection, and that is meaningful support,

22   particularly from the committee here for the reasons it's

23   expressed.

24             The MIP that's been proposed here is somewhat

25   less generous than 2009.  I find that the targets and the

69

1                          CERTIFICATION

2            I   certify   that   the   foregoing   is   a   correct

3   transcript   from   the   electronic   sound   recording   of   the

4   proceedings in the above-entitled matter.

5

6

7   _Stephanie McMeel_____          November 11, 2010

8   Stephanie McMeel

9   AAERT Cert. No. 452

10  Certified Court Transcriptionist