# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## SIXTH INTERIM FEE APPLICATION OF ZUCKERMAN SPAEDER LLP

Stuart Maue (the **"Fee Examiner"**) submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the **"Fee Examiner Order"**) in connection with the *Sixth Interim Fee Application of Zuckerman Spaeder LLP for Interim Approval and Allowance of Compensation and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

*Reimbursement of Expenses.* [Docket No. 8730] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $1,251,707.75 and reimbursement of expenses that total $2,741,330.92[2] for the period from December 1, 2010 through February 28, 2011. Zuckerman Spaeder LLP ("**Zuckerman**") serves as Special Counsel to the Official Committee of Unsecured Creditors (the "**Committee**").

<h2 align="center">Background</h2>

1.     On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2.     On August 13, 2009, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Tribune Company, et al., Pursuant to 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014, for an Order Authorizing the Employment and Retention of Zuckerman Spaeder LLP as Special Counsel Nunc Pro Tunc to August 6, 2009* [Docket No. 1953] (the "**Retention Application**"). By order dated September 3, 2009, this Court approved the retention of Zuckerman (the "**Retention Order**"). The Retention Order provided that Zuckerman "shall be compensated in accordance with the procedures set forth in section 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, local rules and orders of the court, guidelines established by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court."

---

[2] Zuckerman inadvertently included $441,503.38 of Goldin Associates, LLC's expenses (i.e., litigation expert expenses) in this Sixth Interim Fee Application that were incurred in March 2011, which is outside this fee period. Thus, the expenses will be reduced from Zuckerman's Sixth Interim Fee Application and included in Zuckerman's Seventh Interim Fee Application, which includes March 2011 fees and expenses.

3.      Zuckerman submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

**Applicable Standards**

4.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.      The Fee Examiner reviewed the Fee Application for compliance with Sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court

-3-

shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F).*

7.      A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment by attorneys is ethically mandated; it is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.      The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings and provided a Preliminary Report to Zuckerman for review and comment. The firm submitted to the Fee Examiner a lengthy and detailed written response to the Preliminary Report. After consideration of the additional information provided by the firm, the Fee Examiner now

issues this final report (the **"Final Report"**) "in a format designed to opine whether the requested

fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### <u>Technical Requirements</u>

9.    <u>**Reconciliation of Fees and Expenses.**</u>    The Fee Examiner compared the total

amount of fees and expenses requested in the Fee Application (**"Fees Requested"** and

**"Expenses Requested"**) to the fees and expenses actually documented in the electronic and/or

hard copy data received from the firm (**"Fees Computed"** and **"Expenses Computed"**).    The

Fee Examiner determined there are no discrepancies between the Fees Requested and Fees

Computed, nor any discrepancies between the Expenses Requested and Expenses Computed.

10.    <u>**Block Billing.**</u>[3]    The Local Rules provide that "[a]ctivity descriptions shall not be

lumped – each activity shall have a separate description and a time allotment." *Local

Rule 2016-2(d)(vii).*    The UST Guidelines further provide that where a timekeeper's daily time

entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not

combined or 'lumped' together, with each service showing a separate time entry." *UST

Guidelines ¶(b)(4)(v).*[4]    The Delaware Bankruptcy Court has found that time entries that

generally only combine work on one issue, and a conference/communication with the client or

---

[3] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry.    As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry.    This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[4] The judicial response to block billing varies.    Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g., In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g., In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007).    Across the board cuts range from five to 100 percent.    *See id.* at 495 n.7 and cases cited.

opposing counsel on the same issue, while technically blocked billing, will not be objectionable.[5]

Zuckerman block billed entries totaling 90.90 hours and $46,570.50 in associated fees that were

displayed on **Exhibit A**[6] to the Preliminary Report.  Based upon precedent established by this

Court, the objectionable blocked billed entries total 22.50 hours with $7,161.00 in associated

fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit.  Zuckerman

was invited to comment on the firm's block billing.  In response, Zuckerman provided detailed

information regarding each questioned entry, which brought them in compliance with applicable

rules and guidelines.  Additionally, Zuckerman stated it endeavors to reduce and eliminate block

billing.  As such, the Fee Examiner makes no recommendation for a fee reduction.  Exhibit A is

omitted from this report.

11.    **Time Increments.**  The Local Rules provide that "[a]ctivities shall be billed in

tenths of an hour (six (6) minutes)."  *Local Rule 2016-2(d)(iv)*.  The UST Guidelines further

provide that time entries "should be kept contemporaneously with the services rendered in time

periods of tenths of an hour."  *UST Guidelines ¶(b)(4)(v)*.  Billing in greater than 0.10 hour

increments is a practice that lends itself to the potential of increased rounding of time, thereby

increasing the likelihood that the reported time charged is inflated.  It is a practice widely

criticized by courts and legal scholars and is typically prohibited by sophisticated consumers of

legal services as it can result in the billing of time over and above the amount of time actually

expended to perform a particular activity.  The Fee Examiner observed that four timekeepers

---

[5] See *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow 100% of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

[6] This Final Report includes exhibits that detail and support the findings discussed herein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit.  The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

each recorded all but one of their embedded fee entries in whole or half hour time increments. Further, the cumulative daily patterns undermine the reliability of the timekeeping. **Exhibit B** to the Preliminary Report displayed all time entries for these timekeepers, which totaled 204.40 hours with $48,033.50 in associated fees. The Fee Examiner requested that Zuckerman justify the veracity of these billing patterns.

Zuckerman responded by providing proof that the questioned timekeepers did bill time in tenth-hour increments when the task or activity justified such billing. However, the questioned time entries were consistent with a large, time sensitive project that required larger periods of billed time, such as full work days. Zuckerman further stated that the entries are consistent with the nature of the task and the time constraints involved in the project. Based upon the information provided, the Fee Examiner makes no recommendation for a fee reduction. Exhibit B is omitted from this report.

**Review of Fees**

12.    **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii).* The Fee Application provided the names, positions, and hourly rates of the 30 Zuckerman professionals and paraprofessionals who billed to this matter, consisting of 8 partners, 2 associates, 7 staff attorneys, 1 contract attorney, 1 contract law clerk, 4 paralegals, 1 litigation support manager, 2 litigation support, 3 library directors/assistant library directors, and

1 paralegal assistant.  A summary of hours and fees billed by each timekeeper is displayed in **Exhibit C**.

The firm billed a total of 2,711.60 hours with associated fees of $1,251,707.75.  The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 1,387.60 | 51% | $ 905,638.25 | 72% |
| Associate | 252.10 | 9% | 85,409.50 | 7% |
| Staff Attorney | 373.10 | 14% | 109,352.00 | 9% |
| Contract Attorney | 77.60 | 3% | 20,849.50 | 2% |
| Contract Law Clerk | 38.10 | 1% | 10,858.50 | * |
| Paralegal | 205.30 | 8% | 48,204.50 | 4% |
| Litigation Support Manager | 148.30 | 5% | 32,066.00 | 3% |
| Litigation Support | 20.00 | * | 3,700.00 | * |
| Library Director/Asst. Library Director | 193.70 | 7% | 33,101.50 | 3% |
| Paralegal Assistant | 15.80 | * | 2,528.00 | * |
| **TOTAL** | 2,711.60 | 100% | $1,251,707.75 | 100% |

\* Less than 1%

The blended hourly rate for the Zuckerman professionals is $536.38 and the blended hourly rate for professionals and paraprofessionals is $461.61.

13.    **Hourly Rate Increases.**  Zuckerman increased the hourly rates for timekeepers effective January 1, 2011.

14.    **Timekeepers' Roles.**  A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4).*  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  Each Zuckerman timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed

limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

15.    **Potential Double Billing.** The Fee Examiner identified 0.30 hour and $217.50 in associated fees that is the result of the apparent double billing of the same task or activity (i.e., on the same date by the same timekeeper with an identical or nearly identical description and time increment). The questioned fee was displayed in **Exhibit D** to the Preliminary Report and is highlighted in bold marked with an ampersand [&]. The Fee Examiner requested that the firm review the entries on the exhibit and either (i) confirm that the fee entry was inadvertently billed twice, or (ii) provide an explanation for the duplication. In response, Zuckerman stated that the entry was potentially double billed and agreed to reduce its fee request by $217.50. Exhibit D is omitted from this report.

16.    **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *Local Rule 2016-2(d)(ix)*, and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions where two or more Zuckerman timekeepers attended the same meeting, conference, hearing, or other event, as well as any associated travel activities. Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees.

The entries, totaling 200.20 hours with $129,342.00 in associated fees, were displayed in **Exhibit E** to the Preliminary Report. In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, we identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the attorney leading rather than observing a conference). The potentially duplicative and unnecessary timekeepers' entries, including those tasks referencing related travel, total 99.70 hours with $58,912.25 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

In response to the Preliminary Report, Zuckerman stated that as a matter of practice multiple firm attorneys attended events only when necessary and only for the amount of time necessary. The firm provided an explanation of events that occurred during the interim period and the need for more than one attorney to participate at various meetings. The firm then divided the meetings and events into various categories and provided additional information and context. The additional information and context brings the Fee Application into substantial compliance with the Local Rules and UST Guidelines, and accordingly, the Fee Examiner makes no recommendation for a fee reduction. Exhibit E is omitted from this report.

17. **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified billing activities by Zuckerman timekeepers describing intraoffice conferences, totaling 108.35 hours with $58,850.00 in associated fees, or approximately 5% of the total Fees Computed as were displayed in **Exhibit F** to the Preliminary Report. The Fee

Examiner observed that, in certain instances, two or more timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel total 63.38 hours with $31,884.50 in associated fees and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested that Zuckerman strive to eliminate unnecessary intraoffice conferencing, and further requested that the firm provide an explanation for the necessity of more than one participant billing for the same intraoffice.

Zuckerman responded to the Fee Examiner's request by asserting that the conferences were necessary to carry out the firm's work plan and accomplish the tasks during the application period and, further, that the meetings were always kept as short as possible. The response provided specific examples of the necessity of intraoffice discussions, and noted that most of the questioned activities were invoiced by three principal members of the Zuckerman team as evidence that the firm was not enlisting inexperienced personnel who required excessive meetings. After consideration of Zuckerman's response, the Fee Examiner makes no recommendation for a fee reduction, and Exhibit F is omitted from this report.

18.    **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi,*

*and ix).* The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v).*

      a.    **Vague Communications.** The Fee Examiner identified entries totaling 36.17 hours with $21,895.00 in associated fees in which a conference or other communication was not described with sufficient detail. This lack of detail hinders a reviewer's ability to determine the reasonableness and necessity of the activity, and is in clear violation of the applicable guidelines. The entries were displayed in **Exhibit G** to the Preliminary Report. The Fee Examiner requested Zuckerman provide the required information.

      In response, the firm asserted that the generality of the entries was necessary due to the ability of lenders and other parties reviewing Zuckerman's fee applications to determine the strategy and detail of the work performed and the parties with whom discussions were being held, and correctly noted that the firm and the Fee Examiner discussed the need to omit certain detail, some privileged, from the fee entries. The response also provided extensive detail regarding the participants and subject matter of the majority of the questioned communications. Without prejudice, Zuckerman agreed to a voluntary fee reduction of $3,482.00 for several of the entries. The Fee Examiner makes no recommendation for an additional fee reduction, and Exhibit G is omitted from this report.

      b.    **Other Vague Tasks.** The Fee Examiner reviewed the substantive detail of each billing entry and identified 13.70 hours with $9,490.50 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper. The entries were displayed in **Exhibit H** to the Preliminary Report. As reflected in the Local

Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[7] The Fee Examiner requested Zuckerman provide the required information. The firm responded by providing the missing detail, which brought the entries within in compliance. The Fee Examiner makes no recommendation for a fee reduction. Exhibit H is omitted from this report.

19.     **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. Zuckerman invoiced several time entries associated with monthly billing activities that appeared to be part of the normal overhead of a law firm. The questioned activities, which totaled 6.30 hours and $3,460.50 in associated fees, were displayed in **Exhibit I** to the Preliminary Report. The Firm provided an explanation, but the Firm and Fee Examiner ultimately came to a compromise solution whereby the Firm agreed to reduce its fee request by $698.00. The Fee Examiner makes no additional recommendation for a fee reduction, and Exhibit I is omitted from this report.

20.     **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel, or support tasks for which the firm charged greater than market rate.[8] The Fee Examiner

---

[7] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented. *E.g.*, *In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997). Entries for legal research must identify the issue and explain the research need. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

[8] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying,

reviewed each timekeeper's billing activities and identified entries describing clerical activities, including but not limited to organizing materials, filing documents, and drafting cover letters. The questioned entries were displayed in **Exhibit J** to the Preliminary Report and total 58.70 hours with $15,257.00 in associated fees. In response, Zuckerman provided additional explanation and detail regarding certain questioned tasks and timekeepers including the legal acumen and skill involved. The firm, without prejudice, agreed to reduce to $80.00 per hour the rate applied to other entries resulting in a voluntary fee reduction in the amount of $351.50. The Fee Examiner makes no additional recommendation for a fee reduction, and Exhibit J is omitted from this report.

21.    **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The firm invoiced all travel entries at one-half of the timekeepers' hourly rates in compliance with Local Rule.

22.    **Zuckerman Retention/Compensation.**    Zuckerman billed 18.50 hours with associated fees of $5,975.00 to prepare the firm's retention documents and applications for compensation, which computes to less than 1% of the total Fees Computed. The fee entries describing Zuckerman's retention/compensation activities are displayed in **Exhibit K**, which is included in the Final Report for the Court's reference.

23.    **Other Firms' Retention/Compensation and Response to Fee Examiner's Reports.** Zuckerman billed 0.20 hour with associated fees of $117.00 for activities relating to the retention of other firms. The fee entries are displayed in **Exhibit L**, which is included in the Final Report for the Court's reference. Exhibit M has been omitted from the report.

---

word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

**Review of Expenses**

24.    **Itemization of Expenses.**  The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*.   The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.   Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.  Zuckerman provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

25.    **Litigation Expert.**  Zuckerman requested reimbursement of charges by Navigant Consulting, Inc. ("**Navigant**") totaling $82,687.66 and Goldin Associates, LLC ("**Goldin**") totaling $2,539,479.97[9].   The Fee Application disclosed that Zuckerman "engaged a litigation expert to assist Zuckerman with insolvency and other financial distress issues."   The Fee Application did not include the Navigant or Goldin invoices and time entries and, accordingly, the Fee Examiner cannot offer an opinion regarding the propriety of the underlying costs.  The Fee Examiner requested from Zuckerman an explanation as to why, given the amount at issue, the retention of these experts should not be subject to Court approval, and why the experts'

---

[9] See footnote 2, supra.

invoices should not be subject to the Fee Examiner's review and submitted in separate fee applications, pursuant to the Interim Compensation Order.

In response, Zuckerman discussed the expert's retention, role, and fees and provided additional documentation detailing Navigant and Golden Associates, LLC's activities and costs. The firm did, however, note that it inadvertently included in this Sixth Interim Fee Application the Goldin Associate's expenses for March 2011, which is outside the Interim Fee Period. Therefore, Zuckerman voluntarily reduced its request associated with this expense item by $441,503.38.[10]  After reviewing the materials at issue in this Fee Application, the Fee Examiner makes no recommendation for an expense reduction at this time but will continue to monitor the litigation expert costs through the course of the firm's engagement and Zuckerman's final fee application.  The litigation expert's invoices are not currently subject to the bankruptcy fee review process.  If subject to review, however, the Fee Examiner notes that the litigation expert's invoices would, at a minimum, be questioned for further information.

26.    **Photocopies.**  The Local Rules provide that copying charges shall not exceed $0.10 per page. *Local Rule 2016-2(e)(iii).*  The firm requested reimbursement for duplication charges at a rate of $0.10 per page, in compliance with the Local Rule.

27.    **Facsimile.**  The Local Rules provide that outgoing facsimile transmission charges shall not exceed $1.00 per page. *Local Rule 2016-2(e)(iii).*  The firm requested reimbursement for outgoing facsimile transmission charges at a rate of $1.00 per page, in compliance with the Local Rule.

28.    **Computer Assisted Legal Research.**  The Local Rules provide that computer assisted legal research charges "shall not be more than the actual cost." *Local Rule 2016-2(e)(iii).*

---

[10]    Zuckerman will add this expense amount into the next [7th] Interim Fee Application, which encompasses March 2011.

The firm billed $21,771.31 for computer assisted legal research. The Fee Application indicated that "there is no surcharge for computerized research."

29.    **Travel Expenses.**  Zuckerman requested reimbursement of travel expenses totaling $14,738.63. The Fee Examiner requested additional information related to the charges displayed in **Exhibit N** to the Preliminary Report. For all charges, the Fee Examiner requested a detailed description that would allow a proper classification of the charges (airfare, hotel, etc.). For airfare charges, the Fee Examiner requested information regarding the origination, destination, and fare class. For meals, the Fee Examiner requested information regarding the type of meal (breakfast, lunch, etc.) and the name of each attendee. In this Court the Fee Examiner has recommended and the Court has followed the recommendation that, meal charges should not exceed $15.00 per person for breakfast, $25.00 per person for lunch, and $50.00 per person for dinner. For hotel charges, the Fee Examiner requested information regarding the location and number of nights. The recommended ceiling for domestic lodging is $350.00 per night.

In response, Zuckerman provided additional information, including an itemization for the questioned expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge, which answered most of the outstanding questions. Zuckerman and the Fee Examiner also had follow-up communications regarding the travel expenses. The firm, without prejudice, agreed to reduce its travel expenses in the amount of $581.97. The Fee Examiner makes no additional recommendation for an expense reduction, and Exhibit N is omitted from this report.

30.    **Local Meals and Transportation.**  Zuckerman requested reimbursement for local meals and transportation totaling $36.05. The Fee Examiner considers most local

transportation expenses to be non-reimbursable firm overhead. The Fee Examiner requested that Zuckerman provide additional information with regard to the charges, displayed in **Exhibit O** to the Preliminary Report, including an explanation for the necessity and purpose of each charge. Zuckerman, without prejudice, agreed to withdraw its request for reimbursement of the $36.05 in charges contained on Exhibit O. Exhibit O is omitted from this report.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $1,246,958.75 ($1,251,707.75 minus $4,749.00) and reimbursement of expenses in the amount of $2,299,209.52 ($2,741,330.92 minus $442,121.40) for the period from December 1, 2010 through February 28, 2011. The findings are set forth in the summary on the following page.

**ZUCKERMAN SPAEDER LLP**

**SUMMARY OF FINDINGS**

**Sixth Interim Fee Application (December 1, 2010 through February 28, 2011)**

**A.    Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested | $1,251,707.75 | |
| Expenses Requested | 2,741,330.92 | |
| **TOTAL FEES AND EXPENSES REQUESTED** | | $3,993,038.67 |
| Fees Computed | $1,251,707.75 | |
| Expenses Computed | 2,741,330.92 | |
| **TOTAL FEES AND EXPENSES COMPUTED** | | $3,993,038.67 |

**B.    Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---|---|
| Fees Requested | $1,251,707.75 | |
| *Agreed Reduction for Potential Double Billing* | *($ 217.50)* | |
| *Agreed Reduction for Vague Communications* | *(3,482.00)* | |
| *Agreed Reduction for Administrative Activities* | *(698.00)* | |
| *Agreed Reduction for Clerical Activities* | *(351.50)* | |
| Subtotal | *($4,749.00)* | |
| **RECOMMENDED FEE ALLOWANCE** | | $1,246,958.75 |
| Expenses Requested | $2,741,330.92 | |
| *Agreed Reduction for Litigation Expert Fees* | *($441,503.38)* | |
| *Agreed Reduction for Local Meals/Transportation* | *(581.97)* | |
| *Agreed Reduction for Local Meals/Transportation* | *(36.05)* | |
| Subtotal | *($442,121.40)* | |
| **RECOMMENDED EXPENSE REIMBURSEMENT** | | $2,299,209.52 |
| **TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT** | | $3,546,168.27 |

Respectfully submitted,

**STUART MAUE**

By: _____

    John F. Theil, Esq.
    3840 McKelvey Road
    St. Louis, Missouri  63044
    Telephone:  (314) 291-3030
    Facsimile:  (314) 291-6546
    tribunebkr@smmj.com

    *Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 25th day of June 2012.

David Klauder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
William E. Chipman Jr., Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Andrew N. Goldfarb, Esq.
Zuckerman Spaeder LLP
1800 M Street, NW Suite 1000
Washington, DC 20036-5802

_____
John F. Theil, Esq.

-21-

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

### COMPUTED AT STANDARD RATES

**Zuckerman Spaeder**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| 1146 | Sottile, James | PARTNER | $337.50 | $725.00 | 483.70 | $326,938.75 |
| 1509 | Goldfarb, Andrew N. | PARTNER | $300.00 | $600.00 | 440.70 | $254,830.00 |
| 947 | Bush, Graeme W. | PARTNER | $425.00 | $850.00 | 242.40 | $196,579.50 |
| 1462 | Torrez, P. Andrew | PARTNER | $550.00 | $585.00 | 116.00 | $66,050.50 |
| 1409 | Naunton, Shawn P. | PARTNER | $590.00 | $590.00 | 45.00 | $26,550.00 |
| 253 | Macauley, Thomas G. | PARTNER | $580.00 | $625.00 | 40.50 | $24,232.50 |
| 1336 | Neish, Laura E. | PARTNER | $540.00 | $540.00 | 18.30 | $9,882.00 |
| 1510 | Stevenson, Lisa J. | PARTNER | $575.00 | $575.00 | 1.00 | $575.00 |
| | No. of Billers for Position: 8 | Blended Rate for Position: | $652.67 | | 1,387.60 | $905,638.25 |
| | | | | | % of Total: 51.17% | % of Total: 72.35% |
| 1544 | Caridas, Andrew | ASSOCIATE | $340.00 | $340.00 | 231.80 | $78,812.00 |
| 1505 | Herman, Steven N. | ASSOCIATE | $325.00 | $325.00 | 20.30 | $6,597.50 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $338.79 | | 252.10 | $85,409.50 |
| | | | | | % of Total: 9.30% | % of Total: 6.82% |
| 1450 | Falvello, Nina J. | STAFF ATTORNEY | $265.00 | $285.00 | 107.50 | $30,397.50 |
| 1199 | Hanna, Scott A. | STAFF ATTORNEY | $300.00 | $325.00 | 77.30 | $24,395.00 |
| 1501 | Shahidi, Sepaass | STAFF ATTORNEY | $280.00 | $280.00 | 63.40 | $17,752.00 |
| 1386 | Gainey, Kimberly | STAFF ATTORNEY | $285.00 | $310.00 | 50.70 | $15,194.50 |
| 1452 | O'Neill, S. Ashley | STAFF ATTORNEY | $285.00 | $295.00 | 51.50 | $15,158.50 |
| 1385 | Cohen, Jay | STAFF ATTORNEY | $275.00 | $295.00 | 17.10 | $4,970.50 |
| 0104 | Eller, Laura | STAFF ATTORNEY | $265.00 | $265.00 | 5.60 | $1,484.00 |
| | No. of Billers for Position: 7 | Blended Rate for Position: | $293.09 | | 373.10 | $109,352.00 |
| | | | | | % of Total: 13.76% | % of Total: 8.74% |
| 1533 | Benjamin, Barlow | CONTRACT ATTY | $265.00 | $270.00 | 77.60 | $20,849.50 |

**EXHIBIT C**

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL

### COMPUTED AT STANDARD RATES

**Zuckerman Spaeder**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| | No. of Billers for Position: 1 | Blended Rate for Position: | $268.68 | | 77.60 | $20,849.50 |
| | | | | | % of Total: 2.86% | % of Total: 1.67% |
| 1479 | Rao, Neeri | CONTR LAW CLERK | $285.00 | $285.00 | 38.10 | $10,858.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $285.00 | | 38.10 | $10,858.50 |
| | | | | | % of Total: 1.41% | % of Total: 0.87% |
| 1431 | Medoro, Lisa | PARALEGAL | $240.00 | $265.00 | 131.10 | $33,329.00 |
| 1451 | Hodge, Afton B. | PARALEGAL | $175.00 | $200.00 | 56.30 | $10,495.00 |
| 1345 | Smith, Alexander | PARALEGAL | $245.00 | $245.00 | 16.90 | $4,140.50 |
| 1373 | Kotlowski, Nancy | PARALEGAL | $240.00 | $240.00 | 1.00 | $240.00 |
| | No. of Billers for Position: 4 | Blended Rate for Position: | $234.80 | | 205.30 | $48,204.50 |
| | | | | | % of Total: 7.57% | % of Total: 3.85% |
| 1219 | Moring, Ashley M. | LIT SUPP MGR | $210.00 | $220.00 | 148.30 | $32,066.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $216.22 | | 148.30 | $32,066.00 |
| | | | | | % of Total: 5.47% | % of Total: 2.56% |
| 1436 | Nguyen, Lam-Anh Ngoc | LITIGATION SUPP | $185.00 | $185.00 | 17.80 | $3,293.00 |
| 1484 | Mathis, Alan | LITIGATION SUPP | $185.00 | $185.00 | 2.20 | $407.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $185.00 | | 20.00 | $3,700.00 |
| | | | | | % of Total: 0.74% | % of Total: 0.30% |
| 913 | Welham, Monica Daly | LIBR DIR/ASSIS | $165.00 | $175.00 | 71.80 | $12,185.00 |
| 1308 | Faubell, Jeanne Trahan | LIBR DIR/ASSIS | $165.00 | $175.00 | 70.30 | $12,128.50 |
| 1034 | Wilson, Kimberley | LIBR DIR/ASSIS | $165.00 | $175.00 | 51.60 | $8,788.00 |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Zuckerman Spaeder**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| | No. of Billers for Position: 3 | Blended Rate for Position: | $170.89 | | 193.70 | $33,101.50 |
| | | | | % of Total: | 7.14% | % of Total: 2.64% |
| 279 | Gillig, Diana | PARALEGAL ASST | $160.00 | $160.00 | 15.80 | $2,528.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $160.00 | | 15.80 | $2,528.00 |
| | | | | % of Total: | 0.58% | % of Total: 0.20% |
| | Total No. of Billers: 30 | Blended Rate for Report: | $461.61 | | 2,711.60 | $1,251,707.75 |

EXHIBIT K

ZUCKERMAN RETENTION/COMPENSATION

Zuckerman Spaeder

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Bush, G | 0.30 | 229.50 |
| Gillig, D | 12.00 | 1,920.00 |
| Macauley, T | 6.20 | 3,825.50 |
| | 18.50 | $5,975.00 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Retention/Fee Applications | 18.50 | 5,975.00 |
| | 18.50 | $5,975.00 |

EXHIBIT K
ZUCKERMAN RETENTION/COMPENSATION
Zuckerman Spaeder

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | ~ | | DESCRIPTION |
|---|---|---|---|---|---|---|---|
| 12/22/10 Wed | Gillig, D 276620/749 | 0.10 | 0.10 | 16.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT CNO REGARDING 15TH MONTHLY FEE APPLICATION. |
| 12/22/10 Wed | Macauley, T 276620/750 | 0.10 | 0.10 | 58.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW CNO ON 15TH MONTHLY FEE APPLICATION. |
| 12/22/10 Wed | Macauley, T 276620/751 | 0.30 | 0.30 | 174.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT EMAIL TO V. GARLATI REGARDING 15TH MONTHLY FEE APPLICATION. |
| 12/28/10 Tue | Bush, G 276620/753 | 0.30 | 0.30 | 229.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>E-MAIL WITH THOMAS MACAULEY REGARDING BILLING STATUS. |
| 12/28/10 Tue | Macauley, T 276620/752 | 0.70 | 0.70 | 406.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW AND EDIT NOVEMBER TIME DETAIL TO ADDRESS PRIVILEGE AND LOCAL RULE ISSUES. |
| 12/30/10 Thu | Gillig, D 276620/754 | 1.00 | 1.00 | 160.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVISE TIME DETAIL REGARDING NEXT FEE APPLICATION. |
| 01/03/11 Mon | Gillig, D 276984/772 | 0.90 | 0.90 | 144.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVISE TIME DETAIL REGARDING NEXT FEE APPLICATION. |
| 01/03/11 Mon | Gillig, D 276984/773 | 0.40 | 0.40 | 64.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW AND REVISE TIME DETAIL FOR 15T MONTHLY FEE APPLICATION. |
| 01/03/11 Mon | Macauley, T 276984/771 | 0.10 | 0.10 | 62.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>ANALYZE ISSUES REGARDING NEXT INTERIM FEE APPLICATION. |
| 01/04/11 Tue | Macauley, T 276984/774 | 0.10 | 0.10 | 62.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>ANALYZE ISSUES REGARDING 1ST INTERIM FEE APPLICATION. |
| 01/04/11 Tue | Macauley, T 276984/775 | 0.10 | 0.10 | 62.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW NOTICE REGARDING FILING OF INTERIM FEE APPLICATIONS BY 1/14. |
| 01/04/11 Tue | Macauley, T 276984/776 | 0.70 | 0.70 | 437.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW AND EDIT NOVEMBER TIME DETAIL REGARDING PRIVILEGE AND LOCAL RULE COMPLIANCE. |
| 01/10/11 Mon | Gillig, D 276984/778 | 0.50 | 0.50 | 80.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVISE TIME DETAIL FOR 16TH MONTHLY FEE APPLICATION. |

~ See the last page of exhibit for explanation

EXHIBIT K
ZUCKERMAN RETENTION/COMPENSATION
Zuckerman Spaeder

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|---|---|-------------|
| 01/10/11 Mon | Macauley, T 276984/777 | 0.40 | 0.40 | 250.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW NOVEMBER TIME DETAIL REGARDING POTENTIAL WRITEOFFS. |
| 01/11/11 Tue | Gillig, D 276984/782 | 0.90 | 0.90 | 144.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>CONTINUE REVISIONS TO TIME DETAIL. |
| 01/11/11 Tue | Gillig, D 276984/783 | 0.40 | 0.40 | 64.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>PREPARE 16TH MONTHLY FEE APPLICATION. |
| 01/11/11 Tue | Gillig, D 276984/784 | 1.20 | 1.20 | 192.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>PREPARE COST CHART EXHIBIT FOR 16TH MONTHLY FEE APPLICATION. |
| 01/11/11 Tue | Macauley, T 276984/779 | 0.20 | 0.20 | 125.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>ANALYZE ISSUES REGARDING EXPERT INVOICES FOR NEXT MONTHLY FEE APPLICATION. |
| 01/11/11 Tue | Macauley, T 276984/780 | 0.10 | 0.10 | 62.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>EXCHANGE NOTES WITH D. DEUTSCH REGARDING 4TH INTERIM FEE PERIOD. |
| 01/11/11 Tue | Macauley, T 276984/781 | 0.80 | 0.80 | 500.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT NARRATIVE FOR 5TH INTERIM FEE APPLICATION. |
| 01/13/11 Thu | Gillig, D 276984/787 | 0.90 | 0.90 | 144.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT 16TH MONTHLY FEE APPLICATION. |
| 01/13/11 Thu | Gillig, D 276984/788 | 0.20 | 0.20 | 32.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT NOTICE AND CERTIFICATE OF SERVICE FOR SAME. |
| 01/13/11 Thu | Gillig, D 276984/789 | 1.90 | 1.90 | 304.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT 5TH INTERIM FEE APPLICATION. |
| 01/13/11 Thu | Macauley, T 276984/785 | 0.30 | 0.30 | 187.50 | F | 1 | MATTER NAME: Retention/Fee Applications<br>REVIEW AND EDIT 16TH MONTHLY FEE APPLICATION. |
| 01/14/11 Fri | Gillig, D 276984/792 | 0.50 | 0.50 | 80.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>CONTINUE DRAFTING INTERIM FEE APPLICATION. |
| 01/14/11 Fri | Gillig, D 276984/793 | 0.20 | 0.20 | 32.00 | F | 1 | MATTER NAME: Retention/Fee Applications<br>DRAFT NOTICE AND CERTIFICATE OF SERVICE FOR SAME. |

~ See the last page of exhibit for explanation

EXHIBIT K
ZUCKERMAN RETENTION/COMPENSATION
Zuckerman Spaeder

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | ~ | | DESCRIPTION |
|------|-----------------|-------------|-------|------|---|---|-------------|
| 01/14/11 Fri | Gillig, D 276984/794 | 0.10 | 0.10 | 16.00 | F | 1 | *MATTER NAME: Retention/Fee Applications* DRAFT NOTICE OF FLING AND CERTIFICATE OF SERVICE FOR SAME. |
| 01/14/11 Fri | Macauley, T 276984/791 | 0.30 | 0.30 | 187.50 | F | 1 | *MATTER NAME: Retention/Fee Applications* REVIEW AND FINALIZE 5TH INTERIM FEE APPLICATION. |
| 02/04/11 Fri | Gillig, D 277314/705 | 0.10 | 0.10 | 16.00 | F | 1 | *MATTER NAME: Retention/Fee Applications* DRAFT CNO REGARDING 16TH MONTHLY FEE APPLICATION. |
| 02/04/11 Fri | Macauley, T 277314/707 | 0.10 | 0.10 | 62.50 | F | 1 | *MATTER NAME: Retention/Fee Applications* REVIEW CNO FOR 16TH MONTHLY FEE APPLICATION. |
| 02/08/11 Tue | Macauley, T 277314/708 | 0.10 | 0.10 | 62.50 | F | 1 | *MATTER NAME: Retention/Fee Applications* ANALYZE ISSUES REGARDING CNO FOR 5TH INTERIM FEE APPLICATION. |
| 02/23/11 Wed | Gillig, D 277314/709 | 1.20 | 1.20 | 192.00 | F | 1 | *MATTER NAME: Retention/Fee Applications* REVIEW TIME DETAIL REGARDING 17TH MONTHLY FEE APPLICATION. |
| 02/23/11 Wed | Macauley, T 277314/710 | 0.10 | 0.10 | 62.50 | F | 1 | *MATTER NAME: Retention/Fee Applications* REVIEW EXPERT'S 12/15/10 INVOICE. |
| 02/25/11 Fri | Gillig, D 277314/711 | 1.50 | 1.50 | 240.00 | F | 1 | *MATTER NAME: Retention/Fee Applications* REVIEW TIME DETAIL FOR NEXT MONTHLY FEE APPLICATION. |
| 02/25/11 Fri | Macauley, T 277314/712 | 1.70 | 1.70 | 1,062.50 | F | 1 | *MATTER NAME: Retention/Fee Applications* REVIEW DECEMBER TIME FOR LOCAL RULE COMPLIANCE AND PRIVILEGE. |
| Total | | | 18.50 | $5,975.00 | | | |
| Number of Entries: | 35 | | | | | | |

~ See the last page of exhibit for explanation

EXHIBIT K

ZUCKERMAN RETENTION/COMPENSATION

Zuckerman Spaeder

### SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Bush, G | 0.30 | 229.50 |
| Gillig, D | 12.00 | 1,920.00 |
| Macauley, T | 6.20 | 3,825.50 |
| | 18.50 | $5,975.00 |

### SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Retention/Fee Applications | 18.50 | 5,975.00 |
| | 18.50 | $5,975.00 |

(-) REASONS FOR TASK HOUR ASSIGNMENTS

F        FINAL BILL

EXHIBIT L
OTHER FIRMS' RETENTION/COMPENSATION
Zuckerman Spaeder

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Torrez, P | 0.20 | 117.00 |
| | 0.20 | $117.00 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Bank Claims | 0.20 | 117.00 |
| | 0.20 | $117.00 |

EXHIBIT L  PAGE 1 of  3

EXHIBIT L
OTHER FIRMS' RETENTION/COMPENSATION
Zuckerman Spaeder

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | ~ | | DESCRIPTION |
|------|----------------|-------------|-------|------|---|---|-------------|
| 01/06/11 Thu | Torrez, P 276983/154 | 0.20 | 0.20 | 117.00 | F | 1 | *MATTER NAME: Bank Claims* <br> REVIEW APPLICATION TO RETAIN CAMPBELL & LEVINE. |
| Total | | | 0.20 | $117.00 | | | |
| Number of Entries: | 1 | | | | | | |

EXHIBIT L
OTHER FIRMS' RETENTION/COMPENSATION
Zuckerman Spaeder

## SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Torrez, P | 0.20 | 117.00 |
|  | 0.20 | $117.00 |

## SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Bank Claims | 0.20 | 117.00 |
|  | 0.20 | $117.00 |

(-) REASONS FOR TASK HOUR ASSIGNMENTS
F        FINAL BILL

EXHIBIT L  PAGE 3 of  3