UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING THE
## TENTH QUARTERLY APPLICATION OF MERCER (US) INC.

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Tenth Quarterly Application of Mercer (US) Inc.* [Docket No. 9485] (the "**Fee Application**"). The Fee Application seeks

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

approval of fees that total $51,488.06 and reimbursement of expenses that total $12,507.07 for the period from March 1, 2011 through May 31, 2011. Mercer (US) Inc. ("**Mercer**") serves as Compensation Consultant to the Debtors.

## Background

1. On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2. On January 7, 2009, the Debtors filed the *Application for an Order Authorizing Debtors to Retain and Employ Mercer (US) Inc. as Compensation Consultant to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to January 12, 2009* [Docket No. 893] (the "**Retention Application**"). By order dated May 11, 2009, this Court approved the Retention Application [Docket No. 1179]) ("**Retention Order**").

3. Mercer submitted the Fee Application pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

4. In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of

Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5. The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6. Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable

based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F).*

7.      A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.      The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings, and provided a Preliminary Report to Mercer for review and comment.  The firm provided a written response to the Fee Examiner.  After consideration of the additional information provided by the firm, the Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

DISCUSSION OF FINDINGS

Technical Requirements

9.      **Reconciliation of Fees and Expenses.**  The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**").  The

Fee Examiner determined that the Fees Requested exceed the Fees Computed by $.01 due to a rounding difference. The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

10. **Block Billing.**[2] The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3] The Delaware Bankruptcy Court has found that time entries that generally only combine work on one issue, and a conference/communication with the client or opposing counsel on the same issue, while technically block billing, will not be objectionable.[4] Mercer block billed entries totaling 3.00 hours and $2,209.80 in associated fees, which were displayed in **Exhibit A** to the Preliminary Report. Based upon precedent established by this Court, the Fee Examiner did not identify any objectionable block billed entries.

11. **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[4] See *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) (the court did disallow 100% of the block billed entries that combined more than one discrete task and issue from which it could not determine the amount of time that was allocated to each task).

provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v)*. The Court granted Mercer a limited waiver of the requirements of Local Rule 2016-2 permitting Mercer to invoice time in quarter hour increments. *Retention Order, p. 3*. Mercer complied with the Retention Order regarding time increments.

### Review of Fees

12. **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names, positions, and hourly rates of the seven Mercer professionals and paraprofessionals who billed to this matter, consisting of one partner, one associate, three researchers, and two analysts. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit B**.[5]

The firm billed a total of 120.75 hours with associated fees of $51,488.05.[6] The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

---

[5] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[6] This amount reflects the Fees Computed.

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 40.50 | 34% | $29,832.30 | 58% |
| Associate | 46.25 | 38% | 13,949.00 | 27% |
| Researcher | 10.00 | 8% | 1,303.55 | 3% |
| Analyst | 24.00 | 20% | 6,403.20 | 12% |
| TOTAL | 120.75 | 100% | $51,488.05 | 100% |

The blended hourly rate for the Mercer professionals is $426.40.

13. **Hourly Rate Increases.** Mercer did not increase the hourly billing rates of timekeepers during this interim period.

14. **Timekeepers' Roles.** A court may not allow compensation of fees for duplicative or unnecessary services. *See 11 U.S.C. § 330(4).* With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts. On the whole, each Mercer timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

15. **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *Local Rule 2016-2(d)(ix)*, and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v).* While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role. The Fee Examiner did not identify any instances of multiple attendance.

16. **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified fee entries describing intraoffice conferences totaling 3.75 hours with $1,096.20 in associated fees, or approximately 2% of the Fees Computed, as were displayed in **Exhibit C** to the Preliminary Report. The Fee Examiner observed that in one instance, two timekeepers invoiced fees associated with the same intraoffice conference. The entries describing intraoffice conferences invoiced by two or more firm personnel total 1.00 hour with $266.80 in associated fees and are highlighted in bold and marked with an ampersand [&] in the exhibit. Due to the minimal intraoffice conferences, the Fee Examiner makes no recommendation for a fee reduction. Exhibit C is omitted from this report.

17. **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*. Contrary to the requirements of the

Local Rules and the UST Guidelines, certain activity descriptions in the Fee Application were not sufficiently detailed.

The Fee Examiner reviewed the substantive detail of each billing entry and identified 34.25 hours with $14,009.90 in associated fees where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper, and 1.50 hours with $1,104.90 in associated fees where the Fee Examiner could not determine or the firm did not identify the subject matter or participants of a conference or communication. The questioned entries were displayed in **Exhibits D** and **E** to the Preliminary Report, respectively. As reflected in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately, whether the task involved the exercise of legal judgment, and/or whether the task was duplicated by other timekeepers.[7] The Fee Examiner requested that the firm provide supplemental information regarding the questioned entries. In response, Mercer provided a detailed chart with supplemental billing entries that brought the questioned entries within compliance with the applicable rules and guidelines. The Fee Examiner makes no recommendation for a fee reduction, and Exhibits D and E are omitted from this report.

18. **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any fee entries describing administrative activities.

---

[7] Vague entries do not allow the court to determine the reasonableness and necessity of the effort expended, and fees may be denied or reduced when insufficiently documented. *E.g., In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997). Entries for legal research must identify the issue and explain the research need. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006).

19. **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel[8] or tasks with a market value less than the rate charged by the firm. The firm did not invoice for clerical activities.

20. **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Fee Examiner did not identify any entries describing travel.

21. **Mercer Retention/Compensation.** Mercer did not invoice any time to prepare the firm's applications for compensation.

### Review of Expenses

22. **Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*. The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the

---

[8] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

month incurred." *UST Guidelines ¶(b)(5)(iii).* Mercer provided an itemization for the firm expenses that included the category, the date, the description, and the amount.

23. **Travel Expenses – Airfare.** The description for the airfare charge does not include information regarding the name of the person traveling, the location of origination or destination of the flights, the fare class, or the dates of travel. The Fee Examiner requested the firm provide additional information for the charge displayed in **Exhibit F** to the Preliminary Report. In response, Mercer provided a chart with the missing detail regard the questioned travel expense. Exhibit F is omitted from this report.

24. **Overtime Expenses.** Mercer requested reimbursement for a meal while working late in the amount of $10.01 and overtime transportation in the amount of $15.00. The charges, totaling $25.01, were displayed in **Exhibit G** to the Preliminary Report. Although a firm may have a policy that personnel may be reimbursed for transportation and/or meals for employees while working late, such charges are generally considered part of the firm's overhead. The firm responded by agreeing to waive the expense charge, which results in an expense reduction in the amount of $25.01. Exhibit G is omitted from this report.

25. **Vaguely Described Expenses.** The firm requested reimbursement for charges totaling $11,530.35, which were displayed in **Exhibit H** to the Preliminary Report. The Fee Examiner requested Mercer provide additional information regarding the purpose and necessity of the charges. Mercer responded to the request by providing sufficient information and documentation to identify the nature and purpose of the expenses – legal fees related to Mercer's retention and compensation in these chapter 11 cases. The Fee Examiner makes no recommendation for an expense reduction. Exhibit H is omitted from this report.

## CONCLUSION

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $51,488.06 and reimbursement of expenses in the amount of $12,482.06 ($12,507.07 minus $25.01) for the period from March 1, 2011 through May 31, 2011. The findings are set forth in the summary on the following page.

## MERCER (US) INC.

## SUMMARY OF FINDINGS

### Tenth Quarterly Application (March 1, 2011 through May 31, 2011)

**A. Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $51,488.06 | |
| Expenses Requested | 12,507.07 | |
| TOTAL FEES AND EXPENSES REQUESTED | | $63,995.13 |
| Fees Computed | $51,488.05 | |
| Expenses Computed | 12,507.07 | |
| TOTAL FEES AND EXPENSES COMPUTED | | $63,995.12 |
| Rounding | $ 0.01 | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | $ 0.01 |

**B. Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---:|---:|
| Fees Requested | $51,488.06 | |
| RECOMMENDED FEE ALLOWANCE | | $51,488.06 |
| Expenses Requested | $12,507.07 | |
| *Agreed Reduction for Overtime Expenses* | *($25.01)* | |
| Subtotal | *($25.01)* | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | 12,482.06 |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | $63,970.12 |

Respectfully submitted,

**STUART MAUE**

By: _____

John F. Theil, Esq.
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone: (314) 291-3030
Facsimile: (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 26th day of June, 2012.

David Klauder, Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
William E. Chipman Jr., Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE 19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE 19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820
(Counsel to Barclays Bank PLC)

Norman L. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE 19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Devon J. Eggert
Freeborn & Peters LLP
311 S. Wacker Dr.
Chicago, Illinois 60606

_____
John F. Theil, Esq.

EXHIBIT A
BLOCK BILLING
Mercer (US) Inc.

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Dempsey, J | 3.00 | 2,209.80 |
| | 3.00 | $2,209.80 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Compensation Consultant to the Debtors | 3.00 | 2,209.80 |
| | 3.00 | $2,209.80 |

EXHIBIT A
BLOCK BILLING
Mercer (US) Inc.

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | | DESCRIPTION |
|---|---|---|---|---|---|---|
| 04/20/11 Wed | Dempsey, J 201104/17 | 1.00 | 1.00 | 736.60 | | *MATTER NAME: Compensation Consultant to the Debtors* <br> 1  ADDRESS LA TIMES ISSUE INCLUDING 2 CALLS WITH EDDY HARTENSTEIN AND PREPARING A LETTER. |
| 04/21/11 Thu | Dempsey, J 201104/21 | 2.00 | 2.00 | 1,473.20 | | *MATTER NAME: Compensation Consultant to the Debtors* <br> 1  ADDRESS LA TIMES ISSUE INCLUDING CALLS WITH EDDY HARTENSTEIN AND PREPARING LETTER. |
| Total Number of Entries: 2 | | | 3.00 | $2,209.80 | | |

EXHIBIT A
BLOCK BILLING
Mercer (US) Inc.

SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Dempsey, J | 3.00 | 2,209.80 |
|  | 3.00 | $2,209.80 |

SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Compensation Consultant to the Debtors | 3.00 | 2,209.80 |
|  | 3.00 | $2,209.80 |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**
**COMPUTED AT STANDARD RATES**
**Mercer (US) Inc.**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JDEM | Dempsey, John | PARTNER | $736.60 | $736.60 | 40.50 | $29,832.30 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $736.60 | | 40.50 | $29,832.30 |
| | | | | % of Total: | 33.54% | % of Total: 57.94% |
| JDON | Donnell, Julie | ASSOCIATE | $301.60 | $301.60 | 46.25 | $13,949.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $301.60 | | 46.25 | $13,949.00 |
| | | | | % of Total: | 38.30% | % of Total: 27.09% |
| JMAY | Mayer, Julie | RESEARCHER | $75.40 | $75.40 | 8.25 | $622.05 |
| ELOD | Lodwick, Ellen | RESEARCHER | $411.80 | $411.80 | 1.50 | $617.70 |
| SMCK | McKean, Sherri | RESEARCHER | $255.20 | $255.20 | 0.25 | $63.80 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $130.36 | | 10.00 | $1,303.55 |
| | | | | % of Total: | 8.28% | % of Total: 2.53% |
| ASTE | Stencel, Amanda | ANALYST | $266.80 | $266.80 | 23.25 | $6,203.10 |
| DPOP | Popov, Dimitar | ANALYST | $266.80 | $266.80 | 0.75 | $200.10 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $266.80 | | 24.00 | $6,403.20 |
| | | | | % of Total: | 19.88% | % of Total: 12.44% |
| | Total No. of Billers: 7 | Blended Rate for Report: | $426.40 | | 120.75 | $51,488.05 |