## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT HENKE,

      Claimant

**Chapter 11**

**Case No. 08-13141 (KJC)**

TRIBUNE COMPANY, et al.,

      **Debtors**

### CLAIMANT'S RESPONSE TO DEBTORS' SUPPLEMENTAL OBJECTION
### TO CLAIMS OF ROBERT HENKE

1. This document is a response to a supplemental objection, filed by the debtors and the debtors in possession in the subject chapter 11 bankruptcy cases (the "debtors"), mainly to an amended claim, Claim No. 7106 (the "amended claim" or the "amended complaint"), filed against debtor *The Baltimore Sun* Company ("*The Sun*"). This claim consists of a cover form and an amended legal complaint that claimant plans to submit to the Circuit Court for Baltimore City (the "Circuit Court"). Essentially, the amended complaint is to replace his original complaint (the "original complaint") put forth in Claim No. 3697 (the "original claim"). The original claim was filed by Robert Henke on June 8, 2009 and the amended claim on April 19, 2012.

### Abbreviations

The amended claim --------------- Claim No. 7106 of Robert Henke

The amended complaint ---------- the body of the amended claim

The article ------------------------- the news article that is the subject of claimant's complaints

The Bankruptcy Court ------------ The U.S. Bankruptcy Court for the District of Delaware

The Circuit Court ------------------ The Circuit Court for Baltimore City

The debtors ------------------------ the debtors or debtors in possession

The firm ------------------------------ claimant's and his wife's firm

Response to Supplemental Objection: Claim No. 7106, Case No. 08-13141(KJC)
Page 2
June 27, 2012

The misconduct -------------------- the possible official and professional misconduct that targeted claimant, his wife, and their firm

The original claim -------------------- Claim No. 3697 of Robert Henke

The original complaint ------------- the complaint put forth in the original claim

The original objection ------------- debtors' objection to the original claim

The original reply ------------------- claimant's response to debtors' objection to his original claim

*The Sun* ---------------------------- *The Baltimore Sun* Company, *The Baltimore Sun*

The supplemental objection ------- debtors' objection to the amended claim

The University ----------------------- The Johns Hopkins University

## Contents that Follow

| | Page |
|---|---|
| Introduction | 3 |
| Background Summary | 3 |
| Summary of Debtors' Supplemental Objection | 4 |
| Summary of Claimant's Response to the Supplemental Objection | 4 |
| Possibility of Statute of Limitations Violation | 4 |
| Failure to State Claim on Which Relief Can be Based | 14 |
| Monetary Relief Sought with Lawsuit | 18 |
| Conclusion | 25 |
| Appendix: Exhibits | 26 |

## Introduction

**2.** In the following sections, claimant first provides a background summary. Then, he summarizes debtors' supplemental objection (Exhibit A) and his response to that objection. Thereafter, he provides details of these and a conclusion. Claimant focuses on the amended complaint (Exhibit B) as it is to replace the original complaint.

**3.** For brevity, claimant addresses only what he believes to be the main issues of the supplemental objection.

## Background Summary

**4.** The amended claim stems from a *pro se* lawsuit filed by claimant Robert Henke in the Circuit Court against newspaper publisher *The Baltimore Sun* Company and a *Sun* reporter. Claimant alleges that *The Sun* prominently published a material fabrication, authored by the reporter, in a two-and-one-half page, front-page Sunday, October 7, 2007, article (the "article") that defamed claimant falsely. Claimant also alleges that *The Sun* gained his and his family's cooperation towards the article, to their harm, through deceitful misrepresentation.

**5.** Claimant originally sought monetary relief of $100M and seeks non-monetary relief for harms brought about by the article.

**6.** Facts and reason suggest 1 ) that *The Sun* defamed claimant falsely to protect two decades of possible official and professional misconduct that targeted claimant, his wife, and their firm (the "firm") and 2) that *The Sun* took part in that misconduct. Claimant contends that the misconduct methodically brought him, the firm, and his family to a state of ruin.

Response to Supplemental Objection: Claim No. 7106, Case No. 08-13141(KJC)
Page 4
June 27, 2012

## Summary of Debtors' Supplemental Objection

**7.** With their supplemental objection, debtors argue that claimant's claims should be disallowed. They put forth three reasons: 1) claimant violated the statue of limitations for the defamation complaint that underlies his claim; 2) in his amended complaint, claimant failed to state a claim on which relief can be granted; and 3) in his amended complaint, claimant did not justify the monetary relief he sought with his lawsuit.

## Summary of Claimant's Response to the Supplemental Objection

**8.** In this reply to the supplemental objection, claimant argues that his claims should be allowed. He argues that 1) he did not commit a statute of limitations violation in submitting the original complaint; 2) in the amended complaint, he put forth a large number of claims on which relief can be granted; and 3) the monetary relief he sought with his lawsuit is entirely consistent with the totality of the relevant circumstances.

## Possibility of Statute of Limitations Violation

**9.** In this section, claimant first puts forth debtors' and claimant's basic claims regarding the possibility of a statute of limitations violation in the submission of the original complaint. He then addresses the submission of the original complaint to the Circuit Court and the period of time after that submission. Lastly, he addresses the year preceding the submission of the complaint.

**10. Basic claims** – Debtors basically claim that, in the submission of his original complaint, claimant violated the October 7, 2008 statute of limitations expiration date for a defamation complaint and also the December 8, 2008 start date for Tribune Company's bankruptcy case.

Response to Supplemental Objection: Claim No. 7106, Case No. 08-13141(KJC)
Page 5
June 27, 2012

Debtors base these claims on the apparent date on which the Circuit Court registered the complaint in its system of records, January 12, 2009 (Exhibit C).

11. Claimant contends that the Circuit Court received his complaint on October 6, 2008 and so the submission did not violate the statute of limitations.

12. It should be noted that claimant believes that the possibility of a statute of limitations violation applies only to his counts of false defamation, which have a one-year statute of limitations in the state of Maryland. Claimant's counts of deceitful misrepresentation (essentially fraud as he understands) have a three year statute of limitations in that state.

**Submission date of original complaint and beyond**

13. **Relevant history** - The following history is somewhat more detailed than that claimant presented in his reply to debtors' original objection (the "original reply") (pars. 8-10 of the original reply):

13a. On October 3, 2008, claimant mailed his original complaint to the Circuit Court with a signature confirmation. On October 6, 2008, the Circuit Court received and signed for claimant's complaint. (Exhibit D)

13b. With an October 11, 2008 mailing, apparently a D. Bailey of the Office of the Civil Division of the Circuit Court 1) informed claimant that he needed to provide further information (names and addresses of those against whom he was filing his lawsuit) and implied that he needed to pay the $105 filing fee with a money order instead of a

personal check and 2) returned to him the complaint, seemingly stamped October 7, 2008 (misstated as October 8, 2008 in par. 8 of the original reply). (Exhibit E)

**13c.** Claimant sent the Circuit Court the needed information and payment with an October 13, 2008 letter. The mailing was sent with signature confirmation. On October 17, 2008, the Circuit Court received and signed for claimant's mailing. (Exhibit F)

**13d.** Claimant did not receive a reply from the Circuit Court. Because the Circuit Court had signed for the October 13, 2008 mailing, he believed his complaint was being processed normally. He allowed one month for processing and one month for defendants to provide an answer to the complaint.

**13e.** When by December 18, 2008 he had not received an answer to his complaint, claimant telephoned the Circuit Court about the status of his case. He was told that there was no record of his case. Apparently, the Circuit Court had misplaced his mailings.

**13f.** To correct the matter, claimant wrote a letter, dated December 30, 2008 (timed to avoid the holiday), to a Ms. B.L. Bowman of the Office of the Civil Division of the Circuit Court to inform her of his findings and to resubmit his complaint. The mailing was sent with signature confirmation. On January 7, 2009, the Circuit Court received and signed for claimant's mailing. (Exhibit G)

**13g.** On February 4, 2009, claimant received from the Circuit Court a copy of the complaint and copies of a Writ of Summons and a Sheriff's Return for each of the two

defendants. (Exhibit H)


**14. Arguments: submission date of complaint** – In support of their claim of a statute of limitations violation, debtors cite Maryland Rule 2-101:


"[a] civil action is commenced by filing a complaint with a court."


It appears that debtors interpret "filing a complaint with a court" as the registering of a complaint by the court in its system of records. In claimant's case that appears to have been January 12, 2009, roughly three months after the October 7, 2008 expiration date for the statute of limitations of claimant's defamation complaint.


**15.** Claimant, who first became aware of this rule on October 2, 2008 (Exhibit I), interpreted the rule quite differently. He interpreted the phrase "filing a complaint with a court" as submitting a complaint to a court (as opposed to Walmart, Sears, ....). The statement did not imply to him a two-step process in which first, an individual files a complaint with a court, and then, second, the court, in turn, files the complaint in its own system of records. This is clear from Exhibit J which is an October 2, 2008 email of his to mdlaw.library@mdcourts.gov. In this email he asks the following question:


"With respect to the statute of limitations, which is the critical date? The date of the postmark or the date of the arrival of the information?"


(It should be noted that he did not receive a response to his email.) So claimant believed he had

filed his complaint, at worst, on October 6, 2008, when it arrived at the Circuit Court. He did not become aware of the possibility of a statute of limitations issue until March 23, 2010, when he received debtors' objection to his original claim.

16. Claimant's interpretation of Maryland Rule 2-101 is strengthened by the fact that the rule 1) does not warn that one needs to allow for the period of time between the receipt of a complaint at a court and the introduction of the complaint into the court's record system and 2) does not provide any guidance as to how much time should be allowed. Claimant believes it would have fallen on the court to provide this information if debtors' interpretation of Rule 2-101 holds. In his particular case, had he been so informed, to insure a timely filing, he would have personally delivered his complaint to the Circuit Court (6 hour drive), so he could address any corrections that might be needed without mailing exchanges.

17. Second, claimant believes that, given the seemingly three possible dates of initiating a lawsuit (date of the mailing of the complaint; date of the arrival of the complaint at the court; and date of the filing of the complaint within the court's record system), he interpreted Rule 2-101 as referring to one of the two well-defined possibilities. In contrast, claimant believes that debtors' interpretation is the one date that has an obvious and substantial drawback: the tie of statutes of limitations to the date that a court files a complaint in its record system seems fraught with uncertainty. Such a date places a filing largely out of the control of the plaintiff; claimant's own experiences show the potential consequences of that. It would appear to be unworkable to require one to allow for the uncertainty of the time needed for a court to file a complaint in its system of records.

Response to Supplemental Objection: Claim No. 7106, Case No. 08-13141(KJC)
Page 9
June 27, 2012

**18.** Third, as recounted in par. 32 herein, claimant telephoned the Circuit Court on October 2, 2008 to ask about various matters regarding the filing of a lawsuit. His rough notes of his calls (Exhibit K) suggest he asked about the date relevant to statutes of limitations. The notes suggest a representative told him that date was the arrival of the complaint at the court.

**19.** Regarding the possibility that claimant filed his complaint on January 12, 2009, after debtors filed for bankruptcy protection (December 8, 2008), debtors state "the complaint was filed in violation of the automatic stay …… it is void <u>ab initio</u> under applicable bankruptcy law [.]" (par. 15 of the supplemental objection) At that time, claimant had not received any notice of Tribune Company's filing. Nor had he received notice that all legal proceedings against Tribune Company and its affiliates had been stayed. What's more, he believed his complaint had been filed on October 6, 2008.

**20. Arguments: beyond date of submission of complaint** - Debtors make various claims that claimant contests that relate to the period beyond the date claimant submitted his complaint. Herein, he addresses what he sees to be the main four.

**21.** First, debtors claim "the documentation submitted by Mr. Henke in support of his Initial Response ….. make clear that his letter complaint was not 'misplaced' but rather was rejected …. for failure to properly identify the names and addresses of the putative defendants." (par. 9 of the supplemental objection)

**22.** Claimant does not see how a reading of the history put forth in the original reply (pars. 8-9 and 34 of the original reply), which is essentially reproduced in par. 13 herein, could lead to the

conclusion that claimant's mailings to the Circuit Court had not been misplaced.

**23.** Moreover, claimant objects to debtors claim that the Circuit Court had "rejected" his original complaint. The Circuit Court simply informed him that he needed to provide more information by the following note by D. Bailey (Exhibit E):

> "You must give us the name[s] and addresses of the parties you are filing suit against so that the summons can be processed for service."

The Circuit Court did not say that claimant needed to change his complaint. Claimant provided the requested names and addresses separately in his October 13, 2008 letter (Exhibit F). He made no changes to the complaint suggesting further that it had been accepted and not "rejected" by the Circuit Court. Claimant suspects that the only reason the Circuit Court returned the complaint was so that he could include the requested information in the complaint if he wished.

**24.** Second, debtors imply that claimant should have known that the complaint would fall short on the counts cited - debtors stated "the proper identification of the parties is a simple threshold matter." (par. 15 of the supplemental objection) As it happened, claimant actually did provide the names of the defendants in the complaint – rather prominently – (as well as the address of *The Sun*, with respect to the publisher). The first sentence of the complaint (Exhibit D) states:

> "Herein, I, Robert Henke, present a complaint I have against a newspaper, *The Baltimore Sun* ("*The Sun*") and a *Sun* reporter, Mr. Gadi Dechter."

**25.** Third, debtors claim that, in his October 13, 2008 letter to the Circuit Court, "Mr. Henke acknowledged that his prior submission had not been accepted by the court." (par. 9 of the supplemental objection) This is incorrect. The first sentence of the letter (Exhibit F) reads:

"I am writing to provide the information requested of me in a form dated 10/8/08. The information is needed to allow you to begin processing the subject complaint."

**26.** Fourth, debtors claim that "the defect was not corrected by Mr. Henke for more [than] three months." (par. 15 of the supplemental objection) That is not a faithful representation of the circumstances. As implied by the history (pars. 13a-c herein), in principle, claimant corrected the matter within the first two weeks after submission of the complaint. The Circuit Court signed for his corrective letter, dated October 13, 2008, on October 17, 2008. (Exhibit F) He then waited for an answer to his complaint from defendants. For this, he allowed one month for processing by the Circuit Court and one month for defendants to provide their answer. Not having received an answer after the two months he had allowed, on December 18, 2008, he telephoned the Circuit Court to ask about the status of his case. He was informed that the Circuit Court had no record of the case. He resubmitted his complaint with a December 30, 2008 letter (timed to avoid the holiday). (Exhibit G) The Circuit Court signed for the mailing on January 7, 2009. (Exhibit G) That started the processing of claimant's original complaint.

### Year preceding submission of complaint

**27. Debtors claims and implications** - Debtors make various claims and implications related to the history of the original complaint leading up to its submission (pars. 14-5 of the supplemental objection) to which claimant takes exception. Essentially, debtors imply claimant

knew, at the time of the publication of the article, that he had a year to submit a defamation complaint; imply that he recklessly waited until three days prior to the expiration of the statute of limitations to mail his complaint; and did not retain an attorney to represent him. The history of the matter, which follows, provides a very different view.

**28. Relevant history** - The article was published on October 7, 2007. At that time though, while greatly unsettled by the article, claimant had not begun to absorb what the article truly was. This is evident from emails claimant sent to the reporter of the article regarding his initial thoughts of the article. Basically, while he was suspect of *The Sun* in a narrow sense (from past history), overall he held *The Sun* in high esteem (he is of the Walter Cronkite era and so integrity of news media was deeply ingrained in him); it was beyond his immediate grasp to consider that *The Sun* might have intentionally published untruths.

**29.** Claimant only gradually came to suspect that *The Sun* might not have published a sincere article. His building suspicions moved him to carry out a painstaking sentence-by-sentence analysis of the article. It was not until February 4, 2008 that he came to conclude that *The Sun's* article was a fabrication.

**30.** On claimant's finding, he began a consuming nationwide search for *pro bono* representation for a lawsuit against *The Sun* (ultimately, he sent out 39 substantial mailings). At first, though, his concerns were not precisely aimed; he did not have any kind of understanding as to what defamation was or realize that he had been defamed. It was not until July 3, 2008 that he started using the term "defamatory fabrication" in his letters by which he sought representation.

**31.** From responses to his mailings, he found that he needed to consider statutes of limitations. On July 2, 2008, he obtained a list of statutes of limitations for the state of Maryland. However, even then, he had only the shallowest of understanding of the meaning of "statute of limitations" as he did not know the basic mechanics of initiating a lawsuit. Plus, he did not give statutes of limitations much attention as he wasn't thinking that he would be filing his own lawsuit; given the circumstances, he felt he would be able to attract representation. But, as it happened, though various attorneys were encouraging, he was unsuccessful in attracting representation. On September 25, 2008, claimant had all but conceded failure. In his diary he wrote:

> "No word from attorneys. I am particularly surprised with X. XXXX. I guess the defamation suit is finished."

**32.** But with his family in a state of ruin and with the publication of the article, he came to realize that for any hope of restoring well-being to the family, he would have to file a lawsuit on his own. With a statute of limitations deadline for a defamation lawsuit of October 7, 2008 looming, on October 2, 2008, he telephoned the Baltimore City court and asked various questions on how to file a lawsuit. He also submitted a similar inquiry to mdlaw.library@mdcourts.gov (Exhibit J). According to his notes (Exhibit K), records, and memory, very informally, representatives of the Baltimore City court told him, roughly, to just give his side of the story; write "complaint" (on the outside of his mailing, he thinks); if the amount sought is over $25,000, direct the complaint to the Circuit Court; be sure to include a fee of $105; include a self-addressed envelop; identify to whom to send the complaint; and, he believes, mail a copy of the complaint to *The Sun*. Additionally, claimant's notes (Exhibit K) suggest that he was told that the date relevant to the statute of limitations was the day the court receives the complaint.

Response to Supplemental Objection: Claim No. 7106, Case No. 08-13141(KJC)
Page 14
June 27, 2012

**33. Matter of retaining counsel** - Regarding debtors' statement that "Mr. Henke did not retain counsel to represent him with respect to the Lawsuit" (par. 15 of the supplemental objection), it should be noted that, especially in view of the history of the matters at hand, there are signs that *The Sun* may have interfered with claimant's substantial efforts to seek representation. These are brought out in the amended complaint (pars. 121-2 of the amended complaint). Claimant believes this not to be a small matter; obviously, he has been greatly handicapped without counsel. He plans to address the matter as part of discovery during his case.

## Failure to State Claim on Which Relief Can be Based

**34. Main issue** - Debtors state that even claimant's amended complaint "could not survive a motion to dismiss for failure to state a claim upon which relief can be granted..." (par. 16 of the supplemental objection); that "[t]he Henke Claim is replete with conclusory statements not supported by any facts" (par. 18 of the supplemental objection); and "...at no point does Mr. Henke satisfy the four factors necessary to sustain a defamation claim" (p. 2 of the supplemental objection). Debtors did not specifically address claimant's counts of deceitful misrepresentation.

**35.** To claimant's admittedly evolving understanding, debtors' claims seem quite incorrect. In his amended complaint, he put forth eleven counts of false defamation and five counts of deceitful misrepresentation. And, for example, under each of the former, he addressed the four elements needed for a defamation claim (a published defamatory statement, falsity, fault, and harm): he defined the nature of the false defamation in question; identified the false defamatory statement(s); stated the facts that represent the relevant truth; where needed, explained the defamation; and, where appropriate, brought out specific signs of actual malice. He addressed

harm and general signs of actual malice separately.

**36.** Debtors put forth his request for monetary relief of $100M as the main example of one of their claims. (par. 18 of the supplemental objection) It is unclear to claimant as to how the requested monetary relief relates to the subject at hand: "failure to state a claim upon which relief can be granted." He addresses the monetary relief requested in the next section.

**37.** Debtors do cite an example of what they seem to see as what claimant believes to be a cause of action. (par. 18 of the supplemental objection) There is also the natural implication that the example is representative. Debtors put forth an analysis of the example and conclude that the example provides no cause of action. And one is left with the impression that therefore there are no causes of action in claimant's amended complaint.

**38.** Claimant objects to debtors' representation of the example and the corresponding analysis. Debtors' representation so misstates the amended complaint, through omission, that the example only serves to materially mislead.

**39.** Specifically, debtors state "Mr. Henke takes issue with the Article's statement that former colleague's of Mr. Henke's attributed the fact that he was professionally 'blacklisted' to certain federal lawsuits that Mr. Henke had filed .... Mr. Henke does not allege that the sources were misquoted .....; rather, he alleges that 'the far more likely truth [is] that [he] committed 'professional suicide' .... when he charged three students with plagiarism.' (Id. at par. 50.) The fact that Mr. Henke happens to disagree with the personal opinions of third parties, which opinions the Article accurately reported, is simply not actionable." (par. 18 of the supplemental

objection)

**40.** The full relevant text of the amended complaint goes as follows:

> **"44. Count #3: False Defamation through Concealment of Possibility of Retaliation**
> – *The Sun* largely and actively concealed the possibility plaintiff and Ms. Henke had
> been victims of a broad, calculated, and enduring retaliatory assault on their ability to
> succeed professionally and so, in effect, falsely defamed plaintiff (par. 23, p. 9 and par.
> 36, p. 14).

> **45.** First, [example of concealment of possible misconduct] ..........

> **49.** Second, [example of concealment of possible misconduct] ............

> **50.** Third, *The Sun* did acknowledge the possibility of blacklisting, stating "Privately,
> Henke's colleagues say that the lawsuits were tantamount to professional suicide" {67}.
> However, facts and reason suggest this statement simply to be further active and
> defamatory concealment, on the part of *The Sun*, of the far more likely truth that plaintiff
> committed "professional suicide" seven years earlier when he charged three students
> with plagiarism.

> **51.** Fourth, [example of concealment of possible misconduct].........."

**41.** Clearly, claimant is not objecting to the opinions of third parties. Rather, he is claiming *The Sun* defamed him falsely through the active concealment of the possibility that he and his wife had been targets of a retaliatory assault on their ability to succeed professionally. The paragraph that debtors cited partially (par. 50 of the amended complaint) was no more than the third example that claimant put forth in support of his claim of such active concealment. This particular example shows *The Sun's* use of a likely true statement but materially incomplete representation to create a false and defamatory impression regarding claimant's circumstances.

**42.** Just as clearly, the relevant issue of the cited example is the question of whether the example provides partial support for a cause of action of false defamation based on the possible active concealment of the possibility of retaliation against claimant. Claimant believes the example does provide such support.

**43.** So, though there were eleven counts of false defamation and five counts of deceitful misrepresentation, in essence, debtors did not put forth a single valid example in support of their claim that claimant's amended complaint "could not survive a motion to dismiss for failure to state a claim upon which relief can be granted..." (par. 16 of the supplemental objection)

**44. Other related issues** – In apparent further regards of debtors' claim that claimant fails to put forth a claim upon which relief can be granted, debtors state claimant "alleges a host of personal and professional setbacks that he has experienced over the course of two decades .... nearly all the ...... setbacks.... pre-date the Article ..... but nothing that has happened to him is even credibly alleged to relate to the article. This cannot sustain even a prima facie complaint for defamation." (p. 3 of the supplemental objection)

**45.** First, claimant does address rather heavily in the amended complaint harms that pre-date the article. But, clearly he does not do so with the claim that they were caused by the article. Rather, he does so because those harms are, for the most part, the subject of the article; they provide relevant background to the article; they bear on the harms caused by *The Sun's* seeming obstruction of claimant's progress towards justice and relief for past harms; and many of *The Sun's* false defamatory statements that claimant cites are intimately related to the past harms so, in putting forth the facts related to those statements, claimant needed to cover the harms.

**46.** Second, it is rather clear from the amended complaint (pars. 8-11 and 126-135 of the amended complaint) that claimant is basing his complaint on what he believes to have been harms caused by the article. Those harms include, among other harms, harm to reputation; obstruction of his progress towards justice and relief for past harms; and harm to his professional prospects. To suggest that, given the circumstances, these harms are not substantial and do not serve as a basis for a defamation complaint is not reasonable.

## Monetary Relief Sought with Lawsuit

**Amount sought**

**47.** Debtors express outrage over the $100M that claimant sought with his lawsuit; "unsubstantiated and frivolous" they say. (par. 18 of the supplemental objection) Claimant disagrees. He does concede that the amount is eye-catching. He believes, though, that, from a punitive standpoint alone, the amount is entirely consistent with what claimant believes to be the totality of the relevant circumstances. He addresses these circumstances in the subsection that follows.

48. It should be noted that, despite his belief that the monetary relief he has sought is justified, particularly because of his interest in turning towards the repair of his family, in discussions towards a resolution of the matter, he did make a greatly reduced - though still substantial - counteroffer.

49. **Totality of the relevant circumstances** – Circumstances, the totality of which claimant believes to be consistent with a monetary relief of $100M, include the following:

49a. the eminence of *The Sun*, which left claimant and his family unguarded;

49b. the facts that suggest *The Sun's* article came to being as a result of egregious deceitful misrepresentation;

49c. the flagrancy, scale, and cunning of the falsity of *The Sun's* defamation of claimant – and the level of the failure of oversight that these imply;

49d. the facts and reasoning that suggest 1) that the defamation was intended to protect the possibility of two decades of official and professional misconduct that targeted claimant, his wife, and their firm and methodically brought his family to a state of ruin and 2) that *The Sun* may have taken part in that misconduct, possibly pivotally;

49e. the fact that *The Sun's* article attacked an entire family that was already suffering visibly and deeply, facts and reasoning suggest, as a result of said misconduct;

**49f.** the facts and reasoning that suggest that *The Sun* published what it knew to be a fatal defamation of claimant just when, after many years in decline, his professional prospects had taken promising turns;

**49g.** the facts and reasoning that suggest that *The Sun* may not have been the sole driving force behind the defamation;

**49h.** the facts and reasoning that suggest that *The Sun* may have additionally thwarted claimant's progress towards justice by 1) withholding from him information that he had sought with his 2006 approach to *The Sun* that he believes would have provided much insight into his circumstances and may well have brought about an end to his and his family's plight; 2) being unresponsive regarding concerns he expressed over the article; and 3) possibly interfering with his efforts to obtain representation for a lawsuit against *The Sun*; and

**49i.** the immense success that claimant believes *The Sun* realized in inflicting deep and permanent harm on his family through its article, let alone its past conduct.

Claimant believes that *The Sun's* apparent self-protecting, calculated, and artful contribution to the destruction of an obviously vulnerable family, through its article and related conduct, stands out as reprehensible.

**Other issues**

**50. Harm of possibility of denied redress -** Debtors seem to have greatly misstated the

amended complaint regarding the main basis for claimant's monetary request. Debtors claim the

".....[c]omplaint makes clear that the harm for which Mr. Henke seeks to recover $100,000,000

is not causally connected to the publication of the Article, but that amount is instead derived

from Mr. Henke's belief that he is entitled to 'redress' for the harms he allegedly suffered from

being the target of 'professional misconduct' as part of Johns Hopkins University in the decades

prior to when the Article was published." (par. 18 of the supplemental objection)


51. Claimant addresses only the main misstatement. In his amended complaint, claimant, for

example, wrote:


"8. **Summary of Harm and Remedy Sought** - Plaintiff seeks redress for what he

believes to have been the essence of the article; a material defamatory fabrication that

came to being through deceitful misrepresentation and maliciously harmed his reputation

to protect two decades of official and professional misconduct that had brought him and

the firm and so, his family, to a state of ruin unjustly and in which *The Sun* took part. He

believes *The Sun* deliberately snuffed out the possibility his circumstances would be

investigated, to bury the truth of those circumstances. This, he believes, denied him and

so, his family, long-overdue justice and redress, leaving them in a state of deteriorating

well-being without hope for escape. He also believes the article harmed their immediate

well-being, prospects, and standing.

.
.
.
.


11. So, plaintiff seeks redress both for redress he believes the article denied and for

immediate harm."

52. Clearly, claimant alleges that the article and the possibility of denied redress are intimately linked. Essentially, claimant alleges that the article was a cover-up that insured claimant and his family would be denied justice and so, any redress for past unjust harms that might free them from their state of ruin. Facts and reason suggest that, if *The Sun* had responded sincerely to claimant's 2006 approach to *The Sun*, investigation of his circumstances and substantial redress would have followed. In view of the totality and coherence of *The Sun's* apparent efforts to thwart claimant's progress towards justice and restoring well-being to his family, claimant believes that *The Sun* has forfeited the benefit of the doubt. These efforts, which complement *The Sun's* false defamation and deceitful misrepresentation, are brought out herein in pars. 49f and 49h. Claimant believes it to be difficult to dismiss the sum of these efforts.

53. Debtors also assert that the harms claimant and his family suffered before the article are not related to the article (par. 11 of the supplemental objection). Claimant believes facts and reason overwhelmingly suggest otherwise. As brought out, for example, in moderate detail in the amended complaint (pars. 12 and 53 of the amended complaint), facts and reason suggest *The Sun* took part, possibly pivotally, in said misconduct that claimant believes brought him and his family to a state of ruin and that the article was intended to protect that misconduct. That is, facts and reason suggest the article was simply a continuation of the misconduct.

54. **Immediate harm** - Debtors seem dismissive of the immediate harm caused by the article. For example, regarding reputation, debtors seem to dispute the indisputable; that, in an instant, *The Sun* fully undid the standing that claimant had painstakingly gained over a period of thirty

five years. Debtors state "Mr. Henke also cites a single letter to the editor of the Sun in support of his claim that the Article caused harm to his reputation." (par. 18 of the supplemental objection) Claimant believes it to be glaringly evident that one need go no further than the article to detect substantial harm to reputation. Claimant does not believe his reputation to have been boosted by having him falsely described, either directly or indirectly, by an eminent first-tier newspaper in a Sunday, two-and-one-half page, front-page article, as willing to harm his family in an obsessive quest for scientific glory; less than honorable; resentful; unprofessional; reckless; profane; raving; hypocritical; parasitic; uncooperative; godless; an ill-intentioned parent; inept; greed-driven; opportunistic; rashly combative; flighty; unaccomplished; delusional; paranoid; and an unproductive eccentric. He does not believe the former student of his who was quoted by *The Sun* as having said "He [claimant] was one of my favorite professors" would feel so now. Rather, claimant suspects he would feel most uncomfortable in claimant's presence.

**55.** For a correct record, it should also be noted that, as he pointed out in his amended complaint (pars. 15 and 126 of the amended complaint), claimant saw, but did not copy, two Internet comments on the article. These, he wrote, "put forth similar, though less restrained, thoughts [to those put forth in the letter to *The Sun's* editor], he recalls."

**56.** And debtors made equally light of the signs of harm to claimant's professional prospects. These include the coincidental drop-off of Christmas cards from his thesis advisor, his closest tie to his profession, and the loss of hard-gained interest of a leading journal in his advice, a journal that had published his work heavily (par. 18 of the supplemental objection). Claimant believes that the reasonable person would find such signs to be enormously unsettling with respect to career prospects. Moreover, debtors suggest that the reading of the article was

needed for harm to professional prospects (par. 18 of the supplemental objection). Claimant does not believe that at all to be the case. Rather, he believes that, in particular, members of his profession would have been exposed to the thrust of the article through word-of-mouth as well as direct reading. Members of his profession knew of the article; at least five were interviewed for the article and of those at least three are leaders in the profession. Claimant suspects that at least one of the five read the article as it was posted on the Internet. Especially with the profession being closely knit and human nature being what it is, it is not hard to see the thrust of the article as having been circulated throughout the profession and with speed. And with that, with little doubt, claimant's standing in the profession would have plummeted. Regarding claimant's thesis advisor, as claimant recalls, two of the interviewees were graduate students under the advisor and a third is a close friend of his. It is difficult for claimant to see the advisor as not having been aware of at least the thrust of the article. As to allegations of knowledge of the contents of the article, claimant did not know that the complaint stage of a lawsuit required that level of specificity.

57. Additionally regarding professional prospects, debtors failed to address that *The Sun* published its defamation of claimant when a promising application of his for a position with the Nuclear Regulatory Commission (NRC) was under review (par. 118 of the amended complaint). The NRC is the only organization that had interviewed him formally during his multi-year position search. He was not offered a position with NRC.

58. Nor did debtors address that claimant's deteriorating financial state "has, among other things, kept him from meeting urgent needs of his and his family (educational, environmental, health, security, and the like), leaving them deeply and irreversibly scarred" (par. 131 of the

amended complaint). As it happened, this became an immensely serious matter that may well have been largely avoided had *The Sun* responded sincerely to claimant's 2006 approach to *The Sun*.

## Conclusion

**59.** Claimant respectfully requests that the Bankruptcy Court deny the requests of the objection and allow progress towards justice to take place.

**60.** Claimant finds much fault with debtors' supplemental objection to his amended claim. More specifically, he does not believe, as debtors argue, 1) that he violated the statute of limitations for a defamation complaint in the submission of his original complaint; 2) that, in his amended complaint, he failed to put forth a claim on which relief can be granted; and 3) that he did not justify his request for monetary relief.

**61.** Claimant appreciates the efforts of the Bankruptcy Court in reviewing his case.

Robert Henke, claimant

June 27, 2012

4104 Hearthside Drive, Apt. # 101

Wilmington, North Carolina    28412

910-791-3896 (home phone); 919-610-5865 (cell phone); hroberthenke@aol.com