Response to Supplemental Objection: Claim No. 7106, Case No. 08-13141(KJC)
Page 27
June 27, 2012

# Exhibit A: Supplemental Objection

# (electronic version; without Exhibits)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: July 11, 2012 at 10:00 a.m. ET<br>Response Deadline: July 3, 2012 at 4:00 p.m. ET<br>Related to Docket Nos. 3796 and 3989 |

**DEBTORS' SUPPLEMENTAL OBJECTION TO CLAIMS OF ROBERT HENKE PURSUANT TO SECTIONS 502(B) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL RULE 3007-1**

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this supplemental objection (the "Supplemental Objection") to Claim No. 3697 filed against The Baltimore Sun Company (the "Sun") by claimant Robert Henke, as amended on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-8604707v1

April 19, 2012 by Claim No. 7106 (as amended, the "Henke Claim"), a copy of which is appended hereto as Exhibit A. This Supplemental Objection supplements the Debtors' previously-filed objection to the Henke Claim, dated March 19, 2010 (Docket No. 3796) (the "Initial Objection") and is brought pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 3007-1.

## PRELIMINARY STATEMENT

The Henke Claim is asserted in the face amount of $100,000,000.00, and hence is one of the largest individual claims asserted against any of the Debtors' estates. Since the Initial Objection was filed with the Court, the Debtors and Mr. Henke have engaged in ongoing discussions regarding a process to resolve the Henke Claim and the underlying defamation causes of action that he seeks to assert against the Sun in Maryland state court (the "Lawsuit"). To date, those discussions have not resulted in consensus. As indicated by Mr. Henke's response to the Initial Objection, dated April 9, 2010 (Docket No. 3989) (the "Initial Response"), Mr. Henke has prepared a proposed amended complaint regarding the Lawsuit, a copy of which is appended to Claim No. 7106 (the "Proposed Amended Complaint").

The Debtors have carefully reviewed the Proposed Amended Complaint. The allegations therein do not alter the Debtors' belief that the Henke Claim is not an allowable claim against the Sun's estate because such claim is unenforceable against the Sun under applicable non-bankruptcy law. Specifically, nothing in the Proposed Amended Complaint gives rise to a valid cause of action against the Sun because at no point does Mr. Henke satisfy the four factors necessary to sustain a defamation claim. Aside from the merits of the defamation causes of action plead by Mr. Henke and the extraordinary, unsubstantiated damages he seeks—which the

Debtors continue to dispute for all of the reasons stated in the Initial Objection and herein—it is uncontested that Mr. Henke commenced the underlying Lawsuit against the Sun after the expiration of the applicable statute of limitations (and, for that matter, after the commencement of these chapter 11 cases). Given that Mr. Henke has thus not even commenced a valid action in Maryland state court, and hence no action has been taken in the Maryland state court respecting the Lawsuit, this Court is well-situated to make a determination that the Lawsuit must be dismissed on this basis, which does not require the Court to make substantive determinations regarding the merits of Mr. Henke's asserted defamation causes of action under Maryland law. Rather, the entire Henke Claim should be resolved by this Court on this narrow issue of whether the underlying Lawsuit could survive dismissal on the grounds that it is time-barred. The Debtors submit that it could not.

In addition, there is no basis in fact for the allegations in the Complaint, which provides a separate, substantive ground on which to sustain an objection to the Henke Claim. As described herein, Mr. Henke alleges a host of personal and professional setbacks that he has experienced over the course of two decades, but neither the original complaint nor the Proposed Amended Complaint establish a causal connection between the Article published by the Sun and those events. In fact, Mr. Henke himself seems to place much of the blame for his present condition on the alleged actions of Johns Hopkins University, which terminated his employment in 1989. Indeed, nearly all the personal and professional setbacks that Mr. Henke describes in the original complaint and the Proposed Amended Complaint pre-date the Article. The Debtors are sympathetic to Mr. Henke's personal situation, but nothing that has happened to him is even credibly alleged to relate to the Article. This cannot sustain even a prima facie complaint for defamation.

3

Accordingly, the Debtors file this Supplemental Objection to request that the Court enter an order disallowing and expunging the Henke Claim in its entirety on the grounds that such claim is time-barred under applicable law. Alternatively, in the event the Court does not disallow the Henke Claim on the grounds that it is time-barred under applicable non-bankruptcy law, the Debtors contest the Henke Claim on the grounds that—even taking into account the Proposed Amended Complaint—the Henke Claim fails to state a claim for which relief can be granted.[2] In further support of the Supplemental Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3] In all, the Debtors comprise 110 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

---

[2] The Debtors hereby expressly reserve their rights to raise the foregoing defenses, and any other applicable defenses to the original complaint and/or the Proposed Amended Complaint.

[3] An additional Debtor, Tribune CNLBC, LLC, formerly known as Chicago National League Ball Club, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

46429/0001-8604707v1

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.

## FACTUAL BASIS FOR THE SUPPLEMENTAL OBJECTION

### A. Background to the Henke Claim and the Underlying Lawsuit

6. The Henke Claim was received and recorded on the Claims Register as Claim No. 3697 on June 8, 2009. Mr. Henke amended the Henke Claim on April 19, 2012 by filing Claim No. 7106. The underlying pro se Maryland state court action upon which the Henke Claim is based is styled Robert Henke v. The Baltimore Sun, et al., Case No. 24-C-09-000340. Appended to the recently-amended Henke Claim is the Proposed Amended Complaint that Mr. Henke intends to file in the Lawsuit.[4] In the Proposed Amended Complaint, Mr. Henke describes in detail how he approached the Baltimore Sun newspaper to investigate possible misconduct on the part of Johns Hopkins University "that drove him, [his wife], and [his] firm from their profession unjustly." (See Exhibit A, Proposed Amended Complaint at ¶¶ 4-6, 12.) Following Mr. Henke's approach to the Sun, the Sun published an article about Mr. Henke and his development of soil-testing technology on October 7, 2007 (the "Article"), with Mr. Henke's substantial participation. (Id. at ¶¶ 6, 13-15.) Mr. Henke asserts that the Article "is a well-crafted fabrication that defames him falsely." (Id. at ¶ 3.)

---

[4] Solely for the purposes of this Supplemental Objection, the Debtors have considered the allegations made by the Proposed Amended Complaint as if such allegations were presently asserted in the Lawsuit. Nothing herein is intended to waive any defenses that the Debtors may have to the filing of the Proposed Amended Complaint in the Maryland Circuit Court on any applicable grounds.

5

46429/0001-8604707v1

**B.     Timing of the Filing of the Lawsuit**

7.     It is undisputed that the Lawsuit was filed on January 12, 2009, or a month after the Petition Date. A copy of the Maryland Circuit Court's docket reflecting such filing date is appended hereto as Exhibit B.[5] It is similarly undisputed that the Article on which the Henke Claim is based was published on October 7, 2007. (See, e.g., Exhibit A, Proposed Amended Complaint at ¶ 2 and at Exhibit A (Article)).

8.     In the Proposed Amended Complaint, Mr. Henke concedes that the applicable statute of limitation for commencing a defamation action on account of the Article expired on October 7, 2008. Mr. Henke then alleges that:

> On October 3, 2008 he mailed his complaint to the Circuit Court for Baltimore City (the "Circuit Court"). The complaint arrived October 6, 2008 but apparently was registered only after some difficulties (mainly, it appears mailings of his had been misplaced).

(See Exhibit A, Proposed Amended Complaint at ¶ 17.)

9.     This version of the events contradicts the documentation submitted by Mr. Henke in support of his Initial Response, which make clear that his letter complaint was not "misplaced" but rather was rejected by the clerk of the Maryland Circuit Court by notice dated October 8, 2008 (i.e., after the expiration of the statute of limitations), for failure to properly identify the names and addresses of the putative defendants. (See Initial Response, Exhibit C, a copy of which is appended hereto as Exhibit C.)[6] The record demonstrates that the clerk of the Maryland Circuit Court returned Mr. Henke's entire submission to him together with that notice. (Id.) Additionally, Mr. Henke's own records submitted to this Court with the Initial Response

---

[5] The Maryland Circuit Court's docket is also publicly available through http://casesearch.courts.state.md.us/inquiry/ (accept terms and conditions, search for "Henke, Robert," and the civil action underlying the Henke Claim is listed third).

[6] The Debtors have redacted page 2 of Exhibit C to remove the financial institution information from the copy of the check submitted by Mr. Henke to the Maryland state court. It is otherwise a true and correct copy of the document filed by Mr. Henke in the Initial Response.

6

demonstrate that Mr. Henke sent a letter dated October 13, 2008 to the clerk of the Maryland Circuit Court in which Mr. Henke acknowledged that his prior submission had not been accepted by the court and that he was providing additional information. (See Initial Response, Exhibit D, a copy of which is appended hereto as Exhibit D.) There is no record that Mr. Henke re-submitted his proposed complaint to the Maryland Circuit Court (which had been returned to him on October 8, 2008) until December 30, 2008, nearly three months later. (See Initial Response, Exhibit E, a copy of which (without attachments) is appended hereto as Exhibit E.) As noted above, the complaint was ultimately filed on January 12, 2009, more than three months after the expiration of the statute of limitations. Mr. Henke neither sought nor obtained relief from the automatic stay from this Court to file the complaint after the commencement of the Debtors' chapter 11 cases.

## C. Allegations Relating to Harm and Damages

10. As noted above, the Henke Claim offers no basis for the calculation of the $100,000,000 damages sought, based on "the immediate harm inflicted by the article and the obstruction of his progress toward justice and redress." (See Exhibit A, Proposed Amended Complaint at ¶ 136.) Paragraph 9 of the Proposed Amended Complaint describes in detail the harm that Mr. Henke alleges that he and his family suffered—before the article was published—as a result of the purported misconduct by Johns Hopkins University and the scientific and academic community, which included "professional blacklisting," loss of employment prospects, loss of his investment in the soil-testing technology, and loss of financial and social standing. (Id. at ¶ 9.)

11. Even accepting Mr. Henke's factual allegations trust true for the sake of argument, none of these harms was in any way related to, or caused by, the Article. The

Proposed Amended Complaint concludes that the Article "intensified" this already-dire situation. The Proposed Amended Complaint asserts that the Article harmed Mr. Henke's reputation (based on a single letter to the editor), denied him "justice and redress" for the misconduct of Johns Hopkins University, affected his employment prospects, perpetuated the already-existing professional blacklisting, contributed to his already-deteriorating financial state, deprived him of social standing, distracted him, caused emotional distress, and prevented him from retaining representation in connection with the Lawsuit. (See id. at ¶¶ 126-135.)

## RELIEF REQUESTED

12. By this Supplemental Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1 disallowing and expunging the Henke Claim in its entirety on the grounds that (i) the applicable statute of limitation expired prior to when the underlying complaint was filed and (ii) the Henke Claim fails to state a claim for which relief can be granted under applicable non-bankruptcy law. The Debtors also seek an order directing the Claims Agent to expunge the Henke Claim from the Claims Register so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.[7]

## APPLICABLE LAW

13. This Supplemental Objection is based on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

---

[7] For the avoidance of doubt, the Debtors seek an order expunging both Claim No. 3697 and Claim No. 7106 (which, on its face, amends Claim No. 3697). The Debtors seek an order expunging Claim No. 3697 on the alternative non-substantive grounds that it has been amended and superseded by Claim No. 7106.

> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). Section 502(b)(1) recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers, 549 U.S. at 450-51 (citing Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20 (2000)). A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004). Pursuant to section 558 of the Bankruptcy Code, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C. § 558.

### A. The Henke Claim Should be Expunged Because the Lawsuit is Time-Barred

14. Section 558 of the Bankruptcy Code is applicable to the Henke Claim because Maryland law provides a one-year statute of limitations for bringing an action for defamation. See Md. Courts and Judicial Proceedings Code Ann. § 5-105 (2012) (providing one-year statute of limitations for assault, libel, or slander). The Article that is the subject of Mr. Henke's complaint was published by the Baltimore Sun on October 7, 2007. Mr. Henke participated in the preparation of the Article and was fully aware of its publication on that date. (See Exhibit A, Proposed Amended Complaint at ¶¶ 6, 12-15.) Mr. Henke's proposed complaint against the Sun dated October 3, 2008, alleging defamation on account of the Article, was not accepted by the Maryland Circuit Court and thus was not "filed" prior to the expiration of the statute of limitations. See Md. Rule 2-101 ("A civil action is commenced by filing a complaint

9

with a court"). Rather, the record demonstrates that Mr. Henke's entire submission was returned to him by the clerk.

15. Although Mr. Henke's Proposed Amended Complaint seeks to place the blame for the late filing on the clerk of the Circuit Court for "misplacing" his complaint, Mr. Henke's own records demonstrate that his proposed complaint was, in fact, rejected by the Circuit Court due to deficiencies within the control of Mr. Henke. Mr. Henke's apparent confusion regarding the proper procedures for filing a civil complaint in Maryland Circuit Court, resulting in the rejection by that court of his initial submission, provides no basis for relieving him of the applicable one-year statute of limitations. Mr. Henke ran that risk when he mailed his proposed complaint on October 3, 2008, a mere three days prior to the statute of limitations deadline. Mr. Henke did not retain counsel to represent him with respect to the Lawsuit. While that understandably may cause a court to be more solicitous to a claimant, it does not provide a basis for this Court to excuse a failure to comply with the statue of limitations, particularly here, where (i) the proper identification of the parties is a simple threshold matter and (ii) the defect was not corrected by Mr. Henke for more three months, well after the expiration of the statute of limitations and more than a month after the Petition Date. See Exhibit B (According to the records of the Maryland Circuit Court, Mr. Henke's complaint was not filed until January 12, 2009—more than three months after the statute of limitations had expired). Because the complaint was filed in violation of the automatic stay, 11 U.S.C. § 362(a), it is void ab initio under applicable bankruptcy law, in addition to being untimely under applicable non-bankruptcy law.

**B.  The Henke Claim Should be Expunged Because it Fails to Adequately Plead Facts that Support a Claim for Damages**

16. Even taking the Proposed Amended Complaint into account for the purposes of this Supplemental Objection, it is apparent from the face of the Henke Claim that such claim could not survive a motion to dismiss for failure to state a claim upon which relief can be granted under Maryland law, which governs the claim since the relevant article was published in Maryland and the Complaint is pending in that state's courts.[8]

17. In order to present a <u>prima facie</u> case of defamation under Maryland law, a plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm. <u>Offen v. Brenner</u>, 402 Md. 191, 198 (2007). In general, Maryland law specifies that a pleading "shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought." <u>See</u> Md. Rule 3-305. Whether to grant a motion to dismiss "depends solely on the adequacy of the plaintiff's complaint." <u>Green v. H & R Block, Inc.</u>, 355 Md. 488, 501 (1999). The court credits facts pleaded in the complaint and reasonable inferences from those facts but not "conclusory charges that are not factual allegations." <u>Morris v. Osmose Wood Preserving</u>, 340 Md. 519, 531 (1995). "[A]ny ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." <u>Sharrow v. State Farm Mutual</u>, 306 Md. 754, 768 (1986). <u>Bobo v. State</u>, 346 Md. 706, 708 (1997) (plaintiff must plead facts with "sufficient specificity"); <u>id.</u> at 708-09 ("Bald assertions and conclusory statements by the pleader will not suffice."); <u>see also, e.g.</u>, <u>Fornshill v. Ruddy</u>, 891 F. Supp. 1062, 1074 (D. Md.

---

[8] Given the procedural posture in the underlying state court action, where no answer or dispositive pleading has yet been filed, this Court is easily as well-situated as the state court to make a determination that the claim must be dismissed on this basis.

1995) (because "the cost of defending a protracted lawsuit threatens to chill First Amendment rights, courts must carefully scrutinize the pleadings" in defamation actions), aff'd, 89 F.3d 828 (4th Cir. 1996).

18.  The Henke Claim is replete with conclusory statements not supported by any facts. Nowhere is this more apparent than in the request for monetary relief in the amount of $100,000,000. (See Exhibit A, Proposed Amended Complaint at ¶ 136.) That amount is unsubstantiated and frivolous. The Proposed Amended Complaint makes clear that the harm for which Mr. Henke seeks to recover $100,000,000 is not causally connected to the publication of the Article, but that amount is instead derived from Mr. Henke's belief that he is entitled to "redress" for the harms he allegedly suffered from being the target of "professional misconduct" on the part of Johns Hopkins University in the decades prior to when the Article was published. (See Exhibit A, Proposed Amended Complaint at ¶¶ 9, 136.) For example, in paragraph 50 of the Proposed Amended Complaint, Mr. Henke takes issue with the Article's statement that former colleagues of Mr. Henke's attributed the fact that he was professionally "blacklisted" to certain federal lawsuits that Mr. Henke had filed against the National Science Foundation and the National Institute of Standards and Technology. Mr. Henke does not allege that the sources were misquoted in the Article; rather, he alleges that "the far more likely truth [is] that [he] committed "professional suicide" . . . . when he charged three students with plagiarism." (Id. at ¶ 50.) The fact that Mr. Henke happens to disagree with the personal opinions of third parties, which opinions the Article accurately reported, is simply not actionable. Even assuming that Johns Hopkins University caused Mr. Henke all of the harm alleged in paragraph 50 and elsewhere in the Proposed Amended Complaint, there is simply no basis in fact or law for the assertion that the Sun should be liable to "redress" Mr. Henke for such alleged misconduct on the part of an

unrelated third party. Even as amended, the Proposed Amended Complaint fails to plead any causal connection between the Article and any supposed harm experienced by Mr. Henke following the publication of the Article. Mr. Henke asserts only that the dire situation faced by himself and his family—which by his admission preexisted the publication of the Article—"intensified". But Mr. Henke provides no facts to support such a vague conclusion. Rather, Mr. Henke cites such circumstances as being removed from a Christmas card list by a former advisor (whom he does not even allege read the Article) and not being chosen to review a manuscript (again, by an individual whom he does not allege read the Article) in support of his claim that the Article caused harm to his business prospects. (Id. at ¶ 129.) Mr. Henke also cites a single letter to the editor of the Sun in support of his claim that the Article caused harm to his reputation. (See Exhibit A, Proposed Amended Complaint at ¶ 126.) None of these circumstances, even if true, can possibly support a $100,000,000 request for damages.

19.     Accordingly, the Henke Claim is not an allowable claim and is not entitled to any distribution in these chapter 11 cases, because the underlying complaint is time-barred and because the Henke Claim fails to state a claim for which relief can be granted under applicable non-bankruptcy law. The Debtors object to the allowance of the Henke Claim and request that it be disallowed in its entirety and expunged.

## NOTICE

20.     Notice of this Supplemental Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Robert Henke; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).

46429/0001-8604707v1

In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

21. Other than by the Initial Objection, no previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1 (i) disallowing in full and expunging the Henke Claim; (ii) directing the Claims Agent to expunge the Henke Claim from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
June 11, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-8604707v1