IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: July 11, 2012 at 10:00 a.m. ET<br>Objection Deadline: July 3, 2012 at 4:00 p.m. ET |
| | Related to Docket No. 11859 |

## OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF HARRY AMSDEN, ROBERT GREMILLION AND DAVID D. WILLIAMS FOR AN ORDER AUTHORIZING THE DEBTORS TO DEPOSIT THEIR 2010 MANAGEMENT INCENTIVE PLAN AWARDS INTO RABBI TRUSTS

The Official Committee of Unsecured Creditors (the "Committee") of Tribune Company and its various debtor-subsidiaries (collectively, the "Debtors" or "Tribune"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

respectfully submits this objection (the "Objection") to the Motion of Harry Amsden, Robert Gremillion and David D. Williams for an Order Authorizing the Debtors to Deposit Their 2010 Management Incentive Plan Awards into Rabbi Trusts (the "Former Officers' 2010 MIP Motion"), and respectfully represents as follows:

## BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On December 18, 2008, the United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in the Debtors' cases.

3. The Debtors' management incentive plan ("MIP") is an annual program whereby certain of the Debtors' management employees receive cash bonuses to the extent that the Debtors meet yearly operating cash flow goals. Since the Petition Date, the Debtors have continued to implement an annual MIP with the approval of this Court.

4. The Debtors sought approval of their 2010 MIP at a hearing on November 10, 2010 (the "2010 MIP Hearing"). While the Committee supported the 2010 MIP as a whole, it filed a limited objection on the grounds that the 2010 MIP improperly included five Tribune officers (the "Excluded Officers") who were named as defendants in the Committee's FitzSimons litigation and who had been implicated in the Examiner's Report as possibly having engaged in wrongdoing with respect to Tribune's 2007 leveraged buy-out. The Committee

believed at the time, and indeed continues to believe, that it does not make good business sense to incur significant collection risk by paying money to individuals who might later be forced, through litigation, to return it. At the 2010 MIP Hearing, counsel for the Committee stated that "[i]f these five individuals are in later proceedings proved to have been completely without fault and to have done the right thing, then I think the Committee would have no issue with them getting their MIP payments at that point." Transcript of 2010 MIP Hearing (Nov. 10, 2010), at 15 (remarks of David M. LeMay). Implicit in Committee counsel's remarks was that future MIP payments to the Excluded Officers might be proper if—like all other MIP payments—they incentivized current management and created value for the Debtors' estates.

5. In light of the Committee's objection, the Debtors withdrew their 2010 MIP request as to the Excluded Officers rather than delay approval of the 2010 MIP as a whole. The Court subsequently approved the 2010 MIP, as amended to exclude the Excluded Officers. In addition, the Court's order approving the 2010 MIP reflected Committee counsel's remarks in that it reserved the Debtors' right to seek approval of the Excluded Officers' 2010 MIP payments at a later date.

6. Following approval of the 2010 MIP, Harry Amsden, Robert Gremillion and David D. Williams (together, the "Former Officers") left the employment of the Debtors.[2] The

---

[2] Mr. Williams and Mr. Gremillion continue to provide consulting services to the Debtors, though their consulting agreements are set to expire in June 2012 and July 2012, respectively. The Debtors have advised the Committee that they do not have any intention of extending these consulting periods.

remaining two Excluded Officers, Chandler Bigelow and Daniel G. Kazan (together, the "Current Officers"), are still employees of the Debtors.[3]

7. In 2011 and 2012, the Debtors and the Committee reached a compromise with respect to potential MIP payments to Excluded Officers who continued to be employees of the Debtors; specifically, the Current Officers were authorized to participate in the 2011 and 2012 MIPs, but their payments were placed in interest-bearing rabbi trusts pending resolution of the Committee's FitzSimons action.[4] With this mechanism in place, the Committee supported the Debtors' 2011 and 2012 MIPs.

8. Until the Former Officers filed their 2010 MIP Motion on June 20, 2012, no further action was taken with respect to their exclusion from the 2010 MIP.

## OBJECTION

9. The Former Officers' 2010 MIP Motion seeks the payment of the Former Officers' 2010 MIP awards into rabbi trusts on the same terms as the 2011 and 2012 MIP awards were approved for the Current Officers. The Committee objects to this relief on the basis that such payments are not an actual and necessary cost of preserving the estate and do not provide the required benefit to the Debtors' estates.

---

[3] The Debtors have filed a motion seeking payment into rabbi trusts of the Current Officers' 2010 MIP awards. The Committee believes that the Current Officers' request does not suffer from the legal infirmities of the Former Officers' 2010 MIP request and, thus, the Committee does not object to the Current Officers' 2010 MIP request.

[4] The FitzSimons action has since been consolidated with the Tribune multi-district litigation. See In re Tribune Co. Fraudulent Conveyance Litigation, No. 12-02296 (WHP) (S.D.N.Y.).

## A. Administrative Expense Treatment for the Former Officers' 2010 MIP Requests is Improper

10.     While the Former Officers do not identify a legal basis for the payment of their 2010 MIP awards, their motion is essentially a request for the payment of administrative expense claims for employment services rendered postpetition. Such payments are governed by section 503(b)(1)(A) of the Bankruptcy Code, which provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, and commissions for services rendered after commencement of the case . . . ." Interpreting this provision, the Third Circuit has held that "in order to qualify for administrative priority, an expense 'must arise from a [post-petition] transaction with the debtor-in-possession' and the expense 'must be beneficial to the debtor-in-possession in the operation of the business.'" In re Marcal Paper Mills, Inc., 650 F.3d 311, 314-15 (3d Cir. 2011) (citation omitted). The requirement of a benefit to the estate "suggests a quid pro quo pursuant to which the estate accrues a debt in exchange for some consideration necessary to the operation or rehabilitation of the estate." Penn. Dept. of Env. Res. v. Tri-State Clinical Labs., Inc., 178 F.3d 685, 689-90 (3d Cir. 1999); see also Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus.), 19 F.3d 1371, 1377 (11th Cir. 1994) ("[S]ection 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors."). The burden of demonstrating that such a claim deserves administrative priority rests squarely with the party asserting such a claim. See In re Marcal Paper Mills, Inc., 650 F.3d at 315.

11.     The purpose of the MIP is to provide management with "cash incentive awards . . . thereby attracting, retaining and rewarding such persons and strengthening the mutuality of interests between such persons and the Company's stockholders." See Tribune Company,

Incentive Compensation Plan, Article I - Purpose. Consistent with this purpose, the Debtors have routinely justified their annual MIP on the grounds that they must "maintain proper *incentives* for their management team during the Chapter 11 process." See Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2010 [Doc. No. 4620], at 4 (emphasis added); see also Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2011 [Doc. No. 9726], at 4 ("Approval of the 2011 MIP continues to be critically important *to maintain proper incentives* for the management team as the Company strives to sustain its strong performance despite the strains of the Chapter 11 process and the significant headwinds that the media industry still faces.") (emphasis added); Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2012 [Doc. No. 11377] (same).

12.  Clearly, the foundation for approval and implementation of the MIP during these chapter 11 cases has been that it benefits the estate by incentivizing the Debtors' management to work hard and create value for Tribune and its creditors. This Court is now being asked to approve the potential payment of MIP bonuses to three individuals who are no longer employed by the Debtors. This relief cannot possibly benefit Tribune or its creditors because employers cannot incentivize employees to work hard and create value if the employees are no longer employed. Absent this type of tangible benefit to the Debtors' businesses, their estates or their creditors, there can be no justification to pay the 2010 MIP awards to the Former Officers under section 503(b)(1)(A) of the Bankruptcy Code.

**B.  The Former Officers' 2010 MIP Request is Prohibited by Section 503(c)(3)**

13.  Section 503(c)(3) of the Bankruptcy Code prohibits "other transfers or obligations that are outside the ordinary course of business" unless such transfers are "justified by the facts and circumstances of the case." Applying this section in prior MIP decisions, this Court has

employed a "business judgment plus" or "heightened business judgment" standard. See Transcript of January 27, 2010 Hearing on 2009 MIP, at 18; Transcript of May 12, 2009 Hearing on 2008 MIP, at 52. Under this standard, the Court has deferred to the Debtors' business decisions as long as the Court does not view the decisions as unreasonable or contrary to market practice. See Transcript of May 12, 2009 Hearing on 2008 MIP, at 52-53. Other courts have considered whether "there [is] a reasonable relationship between the [payments] proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize . . . or, in the case of a performance incentive, *is the plan calculated to achieve the desired performance.*" See In re Dana Corp., 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) (discussing the standard for approval of bonus and incentive plans under section 503(c)(3)).

14. MIP payments are generally considered "outside of the ordinary course," but even if such payments were considered "ordinary course," payments made years after the MIP year in question to persons no longer employed are certainly not "ordinary course." The Former Officers' must show that the transaction at issue is "justified by the facts and circumstances." This they cannot do. It is not reasonable nor is it common practice to pay incentive bonuses to former employees who, by definition, can no longer contribute value to a business. Additionally, the requested payment of 2010 MIP awards to the Former Officers is not calculated to achieve any desired performance or benefit for the Debtors. As such, the Former Officers have not and cannot overcome section 503(c)(3)'s prohibition on such payments.

C. **The Requested MIP Payments are not "Earned Wages"**

15. Finally, the Former Officers' assert that their 2010 MIP awards constitute "earned wages" which should be paid as a matter of policy. This assertion is misguided and must be rejected by the Court.

16. Regardless of what applicable state law has to say on the topic of earned wages, the filing of a bankruptcy petition changes the game. For instance, section 507(a)(4)(A) of the Bankruptcy Code grants an employee a priority claim for up to $11,725 in unpaid prepetition wages. To the extent that an employee is owed wages in excess of this statutory cap, the employee has a general unsecured claim and must share in the distribution of the estate along with other creditors. Section 507(a)(4)(A) amply demonstrates that once a bankruptcy petition is filed, an employee is not guaranteed to receive all earned wages. The Former Officers' suggestion that earned wages must be paid regardless of a pending bankruptcy proceeding ignores the statutory scheme of the Bankruptcy Code as well as the supremacy of federal law.

17. Additionally, the 2010 MIP payments requested by the Former Officers are not earned wages. Upon entering chapter 11, payment of the Debtors' annual MIP became conditioned on Court approval. Accordingly, no employee was entitled to a bonus until the Court approved the related MIP and authorized the Debtors to make such payments. Because the Former Officers were excluded from the 2010 MIP, their award was never approved and they have no legal entitlement to such funds.[5]

---

[5] In asserting that "[v]irtually every State in the Union requires payment of earned wages to former employees," the Former Officers also fail to recognize the state law distinction between wages and discretionary bonuses. See, e.g., McLaughlin v. Sternberg Lanterns, Inc., 917 N.E.2d 1065, 1071 (Ill. App. Ct. 2009) (under the Illinois Wage Payment and Collection Act, whether an employee is entitled to a bonus depends "on whether or not the employee was unequivocally promised a bonus by his or her employer. If no such unequivocal promise was made, then the employee is not entitled to any part of the bonus . . . ."); Ireton-Hewitt v. Champion Home Builders Co., 501 F. Supp. 2d 341, 354 (N.D.N.Y. 2007) (definition of wages under New York Labor Law does not include bonuses that are contingent on the financial success of the company and to which the employee has no contractual right). This is important because the express terms of the MIP state that "[n]otwithstanding satisfaction of any performance goals, the amount to be paid as an annual management incentive plan bonus may be adjusted by the [Incentive Compensation Plan] Committee on the basis of such *further considerations as the [Incentive Compensation Plan] Committee in its sole discretion shall determine.*" See Tribune Company, Incentive Compensation Plan, Section 10.6 - Discretionary Adjustment (emphasis added).

18. For the foregoing reasons, the relief requested in the Former Officers' 2010 MIP Motion should be denied.

WHEREFORE, the Committee respectfully requests that the Court deny the Former Officers' 2010 MIP Motion and grant such other and further relief as the Court deems just and proper.

Dated: July 3, 2012  
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Kimberly A. Brown
Adam G. Landis (No. 3407)  
Matthew B. McGuire (No. 4366)  
Kimberly A. Brown (No. 5138)  
919 Market Street, Suite 1800  
Wilmington, Delaware 19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450

- and -

Howard Seife  
David M. LeMay  
Douglas E. Deutsch  
**CHADBOURNE & PARKE LLP**  
30 Rockefeller Plaza  
New York, New York 10112  
Telephone: (212) 408-5100  
Facsimile: (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*