## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: August 7, 2012 at 10:00 a.m. ET**<br>**Response Deadline: July 31, 2012 at 4:00 p.m. ET** |

## DEBTORS' OBJECTION TO CLAIM NO. 5972 ASSERTED BY THE NEW YORK CITY DEPARTMENT OF FINANCE PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1

> **The relief sought herein is without prejudice to the Debtors' rights to pursue further substantive or non-substantive objections to the NYC Tax Claim described herein.**

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

hereby file this objection (the "Objection") to claim number 5972 (the "NYC Tax Claim"), filed

by the New York City Department of Finance (the "NYC DOF") and the proposed form of order

submitted herewith pursuant to sections 502(b) and 558 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules").  By the Objection, the Debtors request the entry of an order disallowing and expunging

the NYC Tax Claim, as indicated in further detail below.  In support of the Objection, the

Debtors rely on the Declaration of Patrick M. Shanahan, Vice President of Tax of Tribune

Company (the "Shanahan Declaration"), attached hereto as Exhibit A.  In further support of the

Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune Company

("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the

Debtors comprise 110 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.    On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

5.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1.

## FACTUAL BACKGROUND TO THE DEBTORS' CLAIMS PROCESS

6.    On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket Nos. 567-789), which were subsequently amended on April 13, 2009 (Docket Nos. 894-957), June 12, 2009 (Docket Nos. 1343-1453), March 2, 2010 (Docket Nos. 3548-3599), May 13, 2010 (Docket No. 4388), and January 28, 2011 (Docket Nos. 7661-7671) (collectively, the "Schedules").[3]

7.    On March 26, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.[4]

8.    Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties

---

[3] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009 (CNLBC Docket Nos. 8 and 9), which were subsequently amended on December 9, 2009 (Docket No. 2779), May 13, 2010 (Docket No 4389), and January 28, 2011 (Docket No. 7665).

[4] The Bar Date for the filing of Proofs of Claim against Tribune CNLBC, LLC was July 26, 2010. See Order Establishing Bar Date for Filing Proofs of Claim in the Tribune CNLBC, LLC Bankruptcy Case and Approving the Form and Manner of Notice Thereof entered on June 7, 2010 (Docket No. 4709).

46429/0001-8670296V1

who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date

Order.  In addition to mailing such actual notice, the Debtors also published notice of the Bar

Date in the National Editions of <u>The Wall Street Journal</u> and the <u>New York Times</u> and in the

<u>Chicago Tribune</u> and <u>Los Angeles Times</u> on May 12, 2009.

        9.      To date, approximately 7,130 Proofs of Claim have been filed in these

chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "Claims

Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to

assist with claims processing in these chapter 11 cases (the "Claims Agent").

## RELIEF REQUESTED

        10.     By the Objection, the Debtors seek entry of an order, pursuant to section

502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1

disallowing and expunging the NYC Tax Claim on the basis that, after reconciling the NYC Tax

Claim and the supporting materials against their books and records, the Debtors have determined

that they are not liable with respect to the NYC Tax Claim for the reasons specified in ¶¶ 14-35

of this Objection.  The Debtors also request that any order sustaining the Objection authorize the

Claims Agent to modify the Claims Register to comport with the relief requested herein.  The

Objection complies with Local Rule 3007-1 in all respects.

## LEGAL BASIS FOR OBJECTION

        11.     This Objection is based on section 502(b)(1) of the Bankruptcy Code,

which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—
>> (1)     such claim is unenforceable against the debtor and
>> property of the debtor, under any agreement or applicable

> law for a reason other than because such claim is
> contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

12.     The Debtors have diligently reviewed their books and records and have undertaken a reasonable investigation of the NYC Tax Claim based on the information provided in the NYC Tax Claim.  Based on a review of the NYC Tax Claim itself and follow-up conversations with the NYC DOF, the Debtors believe that they are not liable for the NYC Tax Claim because the claim fails to establish that any prepetition amounts are due and owing under applicable non-bankruptcy law.

13.     Section 502(b)(1) of the Bankruptcy Code recognizes the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450-51 (2007) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.

46429/0001-8670296V1

## INTRODUCTION

14.     On June 26, 2009, the NYC DOF filed the NYC Tax Claim against

"Tribune Company et al."[5] for alleged (i) commercial rent tax liabilities ("CRT Tax Liabilities")

in the amount of $162,000 and (ii) corporate income tax liabilities ("NYC General Corporate

Tax Liabilities") in the amount of $1,668,123, including interest and penalties, for periods

spanning 2005 through 2008.  The Debtors dispute the tax liabilities asserted in the NYC Tax

Claim and believe that no Debtors have any further liability to the NYC DOF for CRT Tax

liabilities or NYC General Corporate Tax Liabilities during the years in question, because the

relevant Debtors satisfied all CRT and NYC General Corporate Tax Liabilities prior to the

Petition Date.  Moreover, because of the failure of the NYC DOF to properly issue a notice of

deficiency ("Notice of Deficiency") and assess a tax deficiency within the applicable time limits,

any attempt to collect on alleged tax deficiencies for NYC General Corporate Tax Liabilities for

the tax years 2005 through 2007 is barred by the applicable statute of limitations.  Finally, the

NYC DOF has improperly estimated alleged tax deficiencies for General Corporate Tax

Liabilities for the tax years of 2007 and 2008, and thus the claim must be disallowed to the

extent it relies on such estimations.

I.      **The relevant Debtors have paid all CRT Tax Liabilities, and no amounts are owed
        to the NYC DOF therefor.**

15.     In each of the tax periods from 2004-2005 through 2006-2007, Tribune

Broadcasting Company and certain of its subsidiaries (collectively, "TBC") and WPIX, Inc.

("WPIX") filed New York City Commercial Rent Tax Returns ("CRT Returns").  Generally

speaking, the CRT tax is calculated as six percent of the total commercial base rent ("Total Base

---

[5] Note that pursuant to the Bar Date Order, to the extent that a claimant is alleging liability against multiple Debtors the claimant must file a separate proof of claim against each Debtor.  See Bar Date Order at 2.

Rent") reported by a taxpayer. (Shanahan Decl. at ¶ 5.)  In the relevant periods, TBC filed CRT

Returns and owed CRT Tax Liabilities as follows: (i) for tax period 2004-2005, a Total Base

Rent of $638,161.00, a corresponding CRT Tax Liability of $38,289.66 and a tax remittance due

of $9,691.61, after taking into account previously made quarterly payments of $28,598.04; (ii)

for tax period 2005-2006, a Total Base Rent of $654,123.00, a corresponding CRT Tax Liability

of $39,247.38, and a tax remittance due of $9,934.02, after taking into account previously made

quarterly payments of $29,313.36; (iii) for tax period 2006-2007, a Total Base Rent of

$670,480.00, a corresponding CRT Tax Liability of $40,228.80, and a tax remittance due of

$10,182.48, after taking into account previously made quarterly payments of $30,046.32.  (Id.)

Each of the remittances was paid in a timely fashion.  (Id.)

      16.     WPIX, Inc. filed CRT Returns and owed CRT Tax Liabilities as follows:

(i) for tax period 2004-2005, a Total Base Rent of $2,448,453.00, a corresponding CRT Tax

Liability due of $146,907.00, and a tax remittance due of $39,574.00, after taking into account

previously made quarterly payments of $107,333.00; (ii) for tax period 2005-2006, a Total Base

Rent of $2,665,928.00, a corresponding CRT Tax Liability of $159,956.00, and a tax remittance

due of $40,205.00, after taking into account previously made quarterly payments of $119,751;

and (iii) for tax period 2006-2007, a Total Base Rent of $2,895,872, a corresponding CRT Tax

Liability of $173,752, and a tax remittance due of $42,580, after taking into account previously

made quarterly payments of $131,172.  (Id. at ¶ 6.)  As with the CRT tax payments made by

TBC, each of the remittances was paid in a timely fashion.  (Id.)

      17.     The Debtors are thus unaware of any basis on which the NYC DOF is

attempting to collect further CRT taxes from TBC or WPIX.  (Id. at ¶ 7). Moreover, the basis for

the alleged CRT Tax Liabilities is not explained in the NYC Tax Claim; indeed, the NYC Tax

Claim is devoid of details elaborating on the alleged CRT Tax Liabilities.  The NYC Tax Claim

does not specify which Debtor the NYC DOF believes owes the alleged $162,000.00, or even for

which tax periods the CRT Tax Liability is asserted.  In conclusion, the Debtors do not believe

that any of the Debtors currently owes any additional commercial rent taxes, penalties or interest

to the NYC DOF.  (Id. at ¶¶ 4-7.)

**II.    The Debtors owe no NYC General Corporate Tax Liabilities to the NYC DOF and
any alleged deficiencies are the result of an erroneous calculation.**

      a.    Summary of relevant NYC Corporate Income Tax Law

      18.    Generally, corporate income taxes owed to the NYC DOF are calculated

in part by applying a Business Allocation Percentage to the filing entities' combined net income

("Combined Net Income") for the relevant time period.  (Shanahan Decl. at ¶ 8.)  The Business

Allocation Percentage is intended to reflect the portion of a company's overall business that is

conducted in New York City.  (Id.)  Application of the Business Allocation Percentage to a

company's Combined Net Income determines the portion of such company's total income that is

subject to New York City corporate income tax ("Net Allocated Income").  (Id.)  The Business

Allocation Percentage takes into account wages paid in New York City, business receipts in New

York City, and a New York City property component.  (Id.)

      19.    The property component of the Business Allocation Percentage includes

the amount of commercial rents paid ("Real Estate Rented") by a company in New York City.

(Id. at ¶ 9.)  In calculating the Real Estate Rented figure, the applicable regulations require the

NYC DOF to compute the rental amounts paid throughout each year by the taxpayer, multiplying

the base rental amounts by eight.  R.C.N.Y. § 11-64(b).[6]  (Shanahan Decl. at ¶ 9.)  Any increase

---

[6] R.C.N.Y. § 11-64(b) provides that "in determining the property factor, real property rented to the taxpayer, as well as real property and tangible personal property owned by it, must be considered. In order to avoid unnecessary hardship on taxpayers and for ease of administration, the fair market value of real property, both within and without

in the rental amounts paid throughout the year will increase the Business Allocation Percentage, which will in turn increase the Net Allocated Income and the corresponding income tax.  (Id.)

> **b.** Each relevant Debtor has properly filed general corporation tax returns, and has paid all outstanding NYC General Corporate Tax Liabilities.

20.     For the tax years 2005-2006, TBC and its subsidiaries (collectively, the "NYC Taxpayer Debtors") filed combined NYC General Corporation Income Tax returns (each return, as applicable, a "NYC Income Tax Return"), and in 2007 and 2008 the NYC Taxpayer Debtors, together with Tribune Company and certain of its affiliates (the "2007-2008 NYC Taxpayer Debtors"), similarly filed combined NYC Income Tax Returns.  (Shanahan Decl. at ¶ 10.)  Specifically:

- The NYC Taxpayer Debtors filed their NYC Income Tax Return for tax year 2005 with a reported Combined Net Income of $296,898,311.00.  (Id. at ¶ 11.)  In calculating the Business Allocation Percentage to be applied to their Combined Net Income, the NYC Taxpayer Debtors included a Real Estate Rented figure of $33,399,952.00 (reflecting base rents paid of $4,174,994.00 times 8). The Business Allocation Percentage was computed to be 9.25%.  (Id.)  In turn, the NYC Taxpayer Debtors' Net Allocated Income was $27,463,094.00, and the NYC Taxpayer Debtors reported NYC corporate taxes of $2,430,484.00.  (Id.)

- The NYC Taxpayer Debtors filed their NYC Income Tax Return for tax year 2006 with a reported Combined Net Income of $475,277,105.00.  (Id. at ¶ 12.)  In calculating the Business Allocation Percentage to be applied to their Combined Net Income, the NYC Taxpayer Debtors included a Real Estate Rented figure of $37,559,672.00 (reflecting

---

New York City, which is rented to the taxpayer is determined by multiplying the gross rents payable during the period covered by the report by eight."

46429/0001-8670296V1

base rents paid of $4,694,959.00 times 8).  (Id.)  The Business Allocation Percentage was computed to be 9.49%.  (Id.)  In turn, the NYC Taxpayer Debtors' Net Allocated Income was $45,103,797.00, and thus the NYC Taxpayer Debtors reported NYC corporate taxes of $3,991,688.00.  (Id.)

- The 2007-2008 NYC Taxpayer Debtors filed an NYC Income Tax Return for tax year 2007 with a reported Combined Net Income of $2,877,074.00.  (Id. at ¶ 13.)  In calculating the Business Allocation Percentage to be applied to its Combined Net Income, the 2007-2008 NYC Taxpayer Debtors utilized a Real Estate Rented figure of $61,202,712.00 (reflecting gross rents paid of $7,650,339.00 times 8).  (Id.)  The Business Allocation Percentage was computed to be 4.01%.  (Id.)  In turn, the 2007-2008 NYC Taxpayer Debtors' Net Allocated Income was $115,371.00, and thus the 2007-2008 NYC Taxpayer Debtors reported NYC corporate taxes of $83,887.00.  (Id.)

- The 2007-2008 NYC Taxpayer Debtors filed an NYC Income Tax Return for tax year 2008 with a reported Entire Net Income of $0.  (Id. at ¶ 14.)  In calculating the Business Allocation Percentage to be applied to their Entire Net Income, the 2007-2008 NYC Taxpayer Debtors utilized a Real Estate Rented figure of $51,742,488.00 (reflecting gross rents paid of $6,467,811.00 times 8).  The Business Allocation Percentage was computed to be 3.78%.  (Id. at ¶ 13.) In turn, the 2007-2008 NYC Taxpayer Debtors' Net Allocated Income was $0, and thus the 2007-2008 NYC Taxpayer Debtors reported NYC General Corporate Tax Liabilities of $7,200.00.  (Id.)

    c.   <u>Any alleged deficiencies in the NYC Tax Claim were erroneously calculated based on an overstated Business Allocation Percentage.</u>

       21.     The NYC Taxpayer Debtors were audited by the NYC DOF for tax years 2005 and 2006. (Shanahan Decl. at ¶ 15.)  No Notice of Deficiency was issued at the time of the

audit, or prior to the commencement of these chapter 11 cases.  (Id.)  After the NYC Tax Claim

was filed and upon the Debtors' request, on January 22, 2010 the NYC DOF provided copies of

its audit workpapers ("Workpapers") reflecting the NYC DOF's calculation of the NYC

Taxpayer Debtors' NYC General Corporate Tax Liabilities for the tax years 2005 and 2006.

(Id.)  A review of the Workpapers and the NYC Tax Claim indicates that for the tax year 2005,

the NYC DOF made adjustments resulting in an alleged deficiency of $245,885.55 with respect

to the tax on Net Allocated Income.  (Id.)  Similarly, in connection with the NYC Income Tax

Return filed for the tax year 2006, the NYC DOF made adjustments resulting in an alleged

deficiency of $318,100.14 with respect to the tax on Net Allocated Income.  In the aggregate, the

NYC DOF alleges $563,985.69 for the NYC Taxpayer Debtors' NYC General Corporate Tax

Liabilities for the tax years 2005 and 2006 (excluding interest and penalties).  (Id.)  For the tax

years 2007 and 2008, the NYC Tax Claim indicates similar deficiencies of $318,100.15 and

$318,100.16 (both excluding interest and penalties) which appear to be estimated and calculated

by assuming that the NYC Taxpayer Debtors' alleged deficiencies for NYC General Corporate

Tax in 2006 would be the same in 2007 and 2008 for the 2007-2008 NYC Taxpayer Debtors.

(Id.)

      22.     The Debtors believe that these adjustments, and the alleged tax

deficiencies that follow from them, result from an erroneously increased Allocated Net Income

for the relevant tax years.  (Id. at 16.)  Specifically, the Debtors believe that the Allocated Net

Income employed by the NYC DOF was incorrectly increased by the use of an erroneously

calculated Business Allocation Percentage, which in turn was calculated using an overstated Real

Estate Rented amount.  (Id.)  The erroneous calculation of the Real Estate Rented figure appears

to have occurred because of two primary reasons.

23.    <u>First</u>, the NYC DOF, in calculating the Real Estate Rented figure effectively double-counted rental payments in the amounts of $1,039,735 (tax year 2005) and $1,096,078 (tax year 2006) for a broadcast transmitter. (Shanahan Decl. at ¶ 17.) These rental payments, which were added by the NYC DOF into the Real Estate Rented calculation, had already been accounted for by the Debtors as Tangible Personal Property Rented ("<u>TPPR</u>"), which itself is also component of the Real Estate Rented computation. (<u>Id.</u>) In making its adjustments, the NYC DOF did not remove the broadcast transmitter rental payments from the TPPR component of the Real Estate Rented calculation, and therefore effectively double-counted these rental payments, overstating the Business Allocation Percentage, and the Net Allocated Income. (<u>Id.</u>)

24.    <u>Second</u>, in auditing the NYC Income Tax Returns and adjusting same, the NYC DOF appears to have erroneously included certain non-rent expenses in the Real Estate Rented calculation. (<u>Id.</u> at ¶ 18.) Specifically, the NYC DOF included in its Real Estate Rented calculation payments for electricity, cleaning services and work orders. (<u>Id.</u>) This is contrary to the applicable NYC DOF regulations. <u>See</u> R.C.N.Y. § 11-64(b) (gross rents do not include "[a]mounts payable as separate charges for water and electric service furnished by the lessor."). The inclusion of these non-rental amounts in the Real Estate Rented computation again improperly overstated both the Business Allocation Percentage and the amount of Net Allocated Income. (Shanahan Decl. at ¶ 18.)

25.    In addition to the underlying alleged tax deficiencies, the NYC Tax Claim also alleges additional amounts due as follows: (i) $12,000 in interest and $30,000 in penalties for the CRT Liabilities, and (ii) $167,890.00 in interest and $300,047.00 in penalties for the NYC General Corporate Tax Liabilities. <u>See</u> NYC Tax Claim. As discussed <u>supra</u>, because the

alleged tax deficiencies have been improperly calculated and no amounts are due and owing, any

related penalties and interest must be similarly disallowed and expunged.[7]

      26.     The Debtors previously communicated these errors to the NYC DOF in a

letter dated May 24, 2010, (which is attached hereto as Exhibit B). (Shanahan Decl. at ¶ 19.)

The Debtors have not received any response to this letter. (Id.) As a result, the Debtors have

been compelled to file this Objection in order to correct the NYC DOF's errors and to ensure the

Debtors' Claims Register accurately reflects that the Debtors owe no amounts to the NYC DOF

on account of NYC General Corporate Tax Liabilities.

III.    **The NYC Tax Claim as it relates to the NYC Income Tax Returns for the tax years 2005- 2007 is barred by the applicable statute of limitations.**

      27.     The NYC DOF's failure to follow the applicable statutory provisions for

issuing a Notice of Deficiency and providing time for a taxpayer response also mandates that the

NYC Claim be disallowed. Because the NYC DOF never properly issued a Notice of Deficiency

for the alleged tax deficiencies that underlie the NYC Claim, the NYC DOF is now barred by the

three (3) year statute of limitations from seeking to recover on such alleged tax deficiencies.

      28.     Before the Commissioner of the NYC DOF can assess any tax on a

taxpayer, section 11-672(1) of the New York City Administrative Code ("NYC Code") requires

the Commissioner to mail a Notice of Deficiency to the taxpayer. The tax can only be deemed

assessed if a Notice of Deficiency has been issued. See NYC Code § 11-673(1). With certain

inapplicable exceptions, under the NYC Code all taxes must be assessed within three years of the

filing of the tax returns. See NYC Code § 11-674(1)("Except as otherwise provided in this

---

[7]In any event, to the extent that the interest and penalties are alleged to have accrued post-petition, such interest and penalties must be disallowed. See, e.g., In re Metro. Metals, Inc., 217 B.R. 457, 463 (Bankr. M.D. Pa. 1997) ("In fact, interest is not normally allowed to a tax claim in bankruptcy unsecured by estate property."); Matter of Pharmadyne Laboratories, Inc., 53 B.R. 517, 523 (Bankr. D.N.J. 1985) (postpetition interest on prepetition tax debt disallowed); City of New York v. Saper, 336 U.S. 328, 332 (1949) (claim for post-petition interest on taxes disallowed).

section, any tax under the named subchapters **shall be assessed** within three years after the return was filed.")(emphasis added).

29.     The issuance of a Notice of Deficiency also provides notice to the taxpayer of their remedies, and initiates a 90-day period in which the taxpayer (1) may formally request a conciliation conference or (2) file a petition with the Tax Appeals Tribunal requesting a redetermination of the tax deficiency. See NYC Code §§ 11-672(2) and 11-680(2).  No court proceeding for the collection of tax may be initiated until a Notice of Deficiency has been mailed and the time has expired for filing a petition with the Tax Appeals Tribunal.  See NYC Code § 11-672(3).

30.     The NYC Taxpayer Debtors filed their 2005 and 2006 combined returns on December 15, 2006 and December 17, 2007, respectively.  (Shanahan Decl. ¶ 20.)  The NYC DOF audited the NYC Taxpayer Debtors' books and records of for the 2005 and 2006 tax years, but did not provide the NYC Taxpayer Debtors with audit workpapers or issue a Notice of Deficiency for these years.  (Id.)  Similarly, the 2007-2008 NYC Taxpayer Debtors filed their 2007 combined return on March 12, 2009.  (Id.) NYC DOF did not issue a Notice of Deficiency for that year as well.  (Id.)  Thus, the three year time limit for issuing a notice of deficiency ended on December 15, 2009 for tax year 2005, December 17, 2010 for tax year 2006, and March 12, 2012 for tax year 2007.

31.     After the commencement of these chapter 11 cases, the NYC DOF was not prohibited by the automatic stay from issuing a Notice of Deficiency to any of the relevant Debtors within the three year time limit imposed by the NYC Code for tax years 2005, 2006 or 2007 because the Bankruptcy Code specifically excepts notices of tax deficiencies from the automatic stay.  See 11 U.S.C. §§ 362(b)(9)(B),(D)(excepting, respectively, "the issuance to the

14

debtor by a governmental unit of a notice of tax deficiency" and the "making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment. . . ") Although statutes of limitations on civil actions are generally tolled during a bankruptcy case under 11 U.S.C. § 108(c), that section is inapplicable to Notices of Deficiency, because it only applies to the commencement or continuation of "a civil action in a court other than a bankruptcy court on a claim against the debtor." 11 U.S.C. § 108(c). Moreover, the protections underlying the section 108(c) extension apply only to the extent that claimants are disadvantaged by the automatic stay. See 2 COLLIER ON BANKRUPTCY ¶ 108.4(16th ed. rev. 2010)("Section 108(c) extends time periods for commencing or continuing civil actions that are stayed by section 362 , 922 , 1201 or 1301 of the Code.")

      32.    Thus, as the bankruptcy court in this District has found previously, where the automatic stay does not apply, as here, and no statutory alteration of rights has occurred, "the parties' rights are defined by applicable non-bankruptcy law" and "[t]here is no exception in the Bankruptcy Code that excuses a taxing authority from following its own procedures in the case of a bankruptcy of its debtor." In re BRAC Group, Inc., Case No. 02-12152, 2004 WL 1749185, *3 (Bankr. D. Del. Aug. 3, 2004)(Westlaw version missing page number 3 of opinion)(attached hereto as Exhibit C). Although the NYC Tax Claim includes a conclusory statement that it shall constitute "any required notice of deficiency," there is no support for such a characterization in the NYC Code. The BRAC decision is instructive – there the court specifically rejects the argument that a claim could be construed as an assessment solely by virtue of the claimant's inclusion of a paragraph stating that the assessment was made "by way of proof of claim." In re BRAC, at *3. Thus, where the city "has voluntarily subjected itself to a two-step regime" for noticing and then assessing a tax deficiency, it must "go through the first step." Id. at *2. Here,

the NYC Tax Claim not only is not a proper Notice of Deficiency, it contains none of the

information that would explain the basis for the alleged tax liabilities and give proper notice to

the Debtors of what the NYC DOF alleges their tax liabilities are and how they were calculated,

which is in direct contravention to the rights of the Debtors as taxpayers.[8]

      33.     However, even if the Court concludes that identical information is

contained within the NYC Tax Claim as would have been contained in a Notice of Deficiency,

such a conclusion would not convert the NYC Tax Claim into a properly issued Notice of

Deficiency.  The BRAC court specifically noted that it was undisputed in that case that "the

information contained in the proof of claim is substantively identical to what would have been

contained in a 'notice of deficiency.'"  In re BRAC, at *3.  That undisputed fact, however, did not

change the court's conclusion that "no notice of deficiency was ever sent" and that the city was

prohibited from going directly to assessment.  Id. at *3; see also id. at *2 (there "is no provision [in

the NYC Code] stating that the need for a notice of deficiency is suspended in the case of

bankruptcy.")  Here, the minimal information contained in the New York Tax Claim does not rise to

the level that would be contained in a Notice of Deficiency.  The absence of this information

prejudices the Debtors and supports disallowance of the NYC Tax Claim as well.[9]

      34.     Because the NYC Tax Claim could not legitimately be considered a

Notice of Deficiency, and more than three years have passed since the filing of the relevant

Debtors' tax returns on December 15, 2006, December 17, 2007, and March 12, 2009, no

---

[8] See NYC Taxpayer Bill of Rights, No. 5: "The Right to an Explanation of Charges Due," New York City website http://www.nyc.gov/html/dof/html/about/about_rights.shtml (taxpayer has a right "[t]o obtain basic information concerning the basis for and amount of any tax, interest, and penalties owed or refunded when sent a tax due, deficiency, or refund notice.") (last accessed July 3, 2012).

[9] The Debtors do not understand the NYC DOF to be arguing that the relevant Debtors were required to respond to the NYC Tax Claim within 90 days of its filing or lose their appellate rights under the NYC Code to request a conciliation conference or to file a petition for a redetermination.  If the NYC DOF were to make such an argument, it would plainly violate the automatic stay by requiring the continuation of a determination of the NYC Tax Claim in a non-bankruptcy forum after the Petition Date.

46429/0001-8670296V1

Notices of Deficiency or assessments can be properly issued, and the alleged tax deficiencies as they relate to tax years 2005, 2006 and 2007 in the NYC Tax Claim are barred.

IV.   **The NYC DOF has improperly estimated the relevant Debtors' tax liabilities for tax years 2007 and 2008, and thus the NYC Tax Claim should be disallowed to the extent it relies upon such estimations.**

          35.    Here the NYC DOF appears to have estimated the 2007-2008 NYC Taxpayer Debtors' General Corporate Income Tax Liabilities for tax years 2007 and 2008. <u>See</u> <u>supra</u>, at ¶ 21.  However, Section 11-672(1) of the NYC Code specifically provides that the Commissioner may only estimate a tax liability if the taxpayer has failed to file a tax return. <u>See</u> §11-672(1).  The 2007-2008 NYC Taxpayer Debtors have timely filed all tax returns, and the Commissioner has not alleged otherwise.  (Shanahan Decl. at ¶¶ 13-14;) <u>see also</u> <u>supra</u>, at ¶ 20; NYC Tax Claim.  Therefore, the Commissioner does not have authority to estimate the Debtors' 2007 and 2008 tax liability.

          36.    For all of the foregoing reasons, the NYC Tax Claim should be disallowed and expunged.

## <u>RESERVATION OF RIGHTS</u>

          37.    The Debtors hereby reserve their right to amend, modify, and/or supplement this Objection at any time prior to the hearing on this Objection.  The Debtors further reserve their right to adjourn the hearing on this Objection as it pertains to the NYC Tax Claim. In the event that the Debtors so adjourn the hearing, they will state that the hearing on the Objection and/or any response filed in connection therewith and/or all applicable deadlines for responsive pleadings have been adjourned on the agenda for the hearing, which agenda will be served on any party affected by such adjournment.

46429/0001-8670296V1

## NOTICE

38.     Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' post-petition financing facility; (v) the NYC DOF; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

39.     No previous application for the relief sought herein has been made to this Court or to any other court.

46429/0001-8670296V1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1, (i) disallowing and expunging the NYC Tax Claim (ii) directing the Claims Agent to modify the Claims Register to comport with the relief requested herein; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
July 6, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Kenneth Kansa
Dennis M. Twomey
Steven Robinson
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

46429/0001-8670296V1