# EXHIBIT A

**Shanahan Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### DECLARATION OF PATRICK M. SHANAHAN IN SUPPORT OF DEBTORS' OBJECTION TO CLAIM NO. 5972 ASSERTED BY THE NEW YORK CITY DEPARTMENT OF FINANCE PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1

I, Patrick M. Shanahan, declare as follows:

1.  I am the Vice President of Tax of Tribune Company, one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), and the ultimate parent of the other Debtors. In this position, I am responsible—

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

together with the other members of the Debtors' management—for the management and oversight of the Debtors' restructuring efforts and business operations. I am generally familiar with the Debtors' day-to-day operations, financing arrangements, tax obligations, business affairs and books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amount thereof owed to their creditors.

2. I have read the Debtors' Objection to Claim No. 5972 Asserted by the New York City Department Of Finance Pursuant To Sections 502(b) And 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1 (the "Objection") and am directly, or by and through the Debtors' personnel and advisors, familiar with the information contained therein. I am authorized to submit this declaration (the "Declaration") in support of the Objection.

3. All matters set forth in this Declaration are based on: (a) my personal knowledge, (b) my review of relevant documents, (c) my view, based on my experience and knowledge of the Debtors' operations and personnel, (d) information supplied to me by others at the Debtors' request, or (e) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel or other advisors to the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

4. Considerable time and resources have been expended to review and reconcile the Proofs of Claim filed against the Debtors in these chapter 11 cases. Upon review of the Debtors' Books and Records, which the Debtors believe to be accurate, and the NYC Tax Claim and supporting documentation attached thereto, the Debtors have determined that the NYC Tax Claim is improperly asserted against the Debtors under applicable non-bankruptcy law.

Accordingly, the Debtors filed the Objection requesting that the Court disallow the NYC Tax Claim.

## I. The Alleged New York City Commercial Rent Tax Liabilities

5.  In each of the tax periods from 2004-2005 through 2006-2007, Tribune Broadcasting Company and certain of its subsidiaries (collectively, "TBC") and WPIX ("WPIX") filed New York City Commercial Rent Tax Returns ("CRT Returns"). Generally speaking, the CRT tax is calculated as six percent of the total commercial base rent ("Total Base Rent") reported by a taxpayer. In the relevant tax periods, TBC filed CRT Returns and owed CRT Tax Liabilities as follows: (i) for tax period 2004-2005, a Total Base Rent of $638,161.00, a corresponding CRT Tax Liability of $38,289.66 and a tax remittance due of $9,691.61, after taking into account previously made quarterly payments of $28,598.04; (ii) for tax period 2005-2006, a Total Base Rent of $654,123.00, a corresponding CRT Tax Liability of $39,247.38, and a tax remittance due of $9,934.02, after taking into account previously made quarterly payments of $29,313.36; (iii) for tax period 2006-2007, a Total Base Rent of $670,480.00, a corresponding CRT Tax Liability of $40,228.80, and a tax remittance due of $10,182.48, after taking into account previously made quarterly payments of $30,046.32. Each of the remittances was paid in a timely fashion.

6.  WPIX, Inc. filed CRT Returns and owed CRT Tax Liabilities as follows: (i) for tax period 2004-2005, a Total Base Rent of $2,448,453.00, a corresponding CRT Tax Liability due of $146,907.00, and a tax remittance due of $39,574.00, after taking into account previously made quarterly payments of $107,333.00; (ii) for tax period 2005-2006, a Total Base Rent of $2,665,928.00, a corresponding CRT Tax Liability of $159,956.00, and a tax remittance due of $40,205.00, after taking into account previously made quarterly payments of $119,751.00; and

(iii) for tax period 2006-2007, a Total Base Rent of $2,895,872.00, a corresponding CRT Tax Liability of $173,752.00, and a tax remittance due of $42,580.00, after taking into account previously made quarterly payments of $131,172.00. As with the CRT tax payments made by TBC, each of the remittances was paid in a timely fashion.

7. The Debtors are thus unaware of any basis on which the NYC DOF is attempting to collect further CRT taxes from TBC or WPIX.

## II. The Alleged NYC General Corporate Tax Liabilities

### a. The NYC General Corporate Tax generally

8. Generally, corporate income taxes owed to the NYC DOF are calculated in part by applying a Business Allocation Percentage to the filing entities' combined net income ("Combined Net Income") for the relevant time period. The Business Allocation Percentage is intended to reflect the portion of a company's overall business that is conducted in New York City. Application of the Business Allocation Percentage to a company's Combined Net Income determines the portion of such company's total income that is subject to New York City corporate income tax ("Net Allocated Income"). The Business Allocation Percentage takes into account wages paid in New York City, business receipts in New York City, and a New York City property component.

9. The property component of the Business Allocation Percentage includes the amount of commercial rents paid ("Real Estate Rented") by a company in New York City. In calculating the Real Estate Rented figure, the applicable regulations require the NYC DOF to compute the rental amounts paid throughout each year by the taxpayer, multiplying the base rental amounts by eight. R.C.N.Y. § 11-64(b).[2] Any increase in the rental amounts paid

---

[2] R.C.N.Y. § 11-64(b) provides that "in determining the property factor, real property rented to the taxpayer, as well as real property and tangible personal property owned by it, must be considered. In order to avoid unnecessary

4

throughout the year will increase the Business Allocation Percentage, which will in turn increase the Net Allocated Income and the corresponding income tax.

    b. <u>The Debtors' NYC Income Tax Returns</u>

10. For the tax years 2005-2006, TBC and its subsidiaries, (collectively the "<u>NYC Taxpayer Debtors</u>") filed combined NYC General Corporation Income Tax returns (each return, as applicable, a "<u>NYC Income Tax Return</u>"), and in 2007 and 2008 the NYC Taxpayer Debtors, together with Tribune Company and certain other Debtors (the "<u>2007-2008 NYC Taxpayer Debtors</u>"),[3] similarly filed combined NYC Income Tax Returns.

11. The NYC Taxpayer Debtors filed their NYC Income Tax Return for tax year 2005 with a reported Combined Net Income of $296,898,311.00. In calculating the Business Allocation Percentage to be applied to their Combined Net Income, the NYC Taxpayer Debtors utilized a Real Estate Rented figure of $33,399,952.00 (reflecting base rents paid of $4,174,994.00 times 8). The Business Allocation Percentage was computed to be 9.25%. In turn, the NYC Taxpayer Debtors' Net Allocated Income was $27,463,094.00, and the NYC Taxpayer Debtors reported NYC corporate taxes of $2,430,484.00.

12. The NYC Taxpayer Debtors filed their NYC Income Tax Return for tax year 2006 with a reported Entire Net Income of $475,277,105.00. In calculating the Business Allocation Percentage to be applied to its Combined Net Income, the NYC Taxpayer Debtors utilized a Real Estate Rented figure of $37,559,672.00 (reflecting base rents paid of $4,694,959.00 times 8). The Business Allocation Percentage was computed to be 9.49%. In

---

hardship on taxpayers and for ease of administration, the fair market value of real property, both within and without New York City, which is rented to the taxpayer is determined by multiplying the gross rents payable during the period covered by the report by eight."

[3] These Debtors include Tribune Company and certain of its affiliates.

turn, the NYC Taxpayer Debtors' Net Allocated Income was $45,103,797.00, and thus the NYC Taxpayer Debtors reported NYC corporate taxes of $3,991,688.00.

13. The 2007-2008 NYC Taxpayer Debtors filed an NYC Income Tax Return for tax year 2007 with a reported Combined Net Income of $2,877,074.00. In calculating the Business Allocation Percentage to be applied to their Combined Net Income, the 2007-2008 NYC Taxpayer Debtors utilized a Real Estate Rented figure of $61,202,712.00 (reflecting gross rents paid of $7,650,339.00 times 8). The Business Allocation Percentage was computed to be 4.01%. In turn, the 2007-2008 NYC Taxpayer Debtors' Net Allocated Income was $115,371.00, and thus the 2007-2008 NYC Taxpayer Debtors reported NYC corporate taxes of $83,887.00.

14. The 2007-2008 NYC Taxpayer Debtors filed an NYC Income Tax Return for tax year 2008 with a reported Combined Net Income of $0. In calculating the Business Allocation Percentage to be applied for their Combined Net Income, the 2007-2008 NYC Taxpayer Debtors utilized a Real Estate Rented figure of $51,742,488.00 (reflecting gross rents paid of $6,467,811.00 times 8). The Business Allocation Percentage was computed to be 3.78%. In turn, the 20007-2008 NYC Taxpayer Debtors' Net Allocated Income was $0, and thus the 2007-2008 NYC Taxpayer Debtors reported NYC General Corporate Tax Liabilities of $7,200.00.

    c. <u>The NYC General Corporate Tax Liabilities alleged within the NYC Tax Claim were erroneously calculated</u>

15. The NYC Taxpayer Debtors were audited by the NYC DOF for tax years 2005 and 2006. No Notice of Deficiency was issued at the time of the audit, or prior to the commencement of these chapter 11 cases. After the NYC Tax Claim was filed and upon the Debtors' request, on January 22, 2010 the NYC DOF provided copies of its audit workpapers ("<u>Workpapers</u>") reflecting the NYC DOF's calculation of the NYC Taxpayer Debtors' NYC General Corporate Tax Liabilities for the tax years 2005 and 2006. A review of the Workpapers

and the NYC Tax Claim indicates that for the tax year 2005, the NYC DOF made adjustments resulting in an alleged deficiency of $245,885.55 with respect to the tax on Net Allocated Income. Similarly, in connection with the NYC Income Tax Return filed for the tax year 2006, the NYC DOF made adjustments resulting in an alleged deficiency of $318,100.14 with respect to the tax on Net Allocated Income. In the aggregate, the NYC DOF alleges $563,985.69 for the NYC Taxpayer Debtors' NYC General Corporate Tax Liabilities for the tax years 2005 and 2006 (excluding interest and penalties). For the tax years 2007 and 2008, the NYC Tax Claim indicates similar deficiencies of $318,100.15 and $318,100.16 (both excluding interest and penalties) which appear to be estimated and calculated by assuming that the NYC Taxpayer Debtors' alleged deficiencies for NYC General Corporate Tax in 2006 would be the same in 2007 and 2008 for the 2007-2008 NYC Taxpayer Debtors.

16. I believe that these adjustments, and the alleged tax deficiencies that follow from them, result from an erroneously increased Allocated Net Income for the relevant tax years. Specifically, the Allocated Net Income employed by the NYC DOF was incorrectly increased by the use of an erroneously calculated Business Allocation Percentage, which in turn was calculated using an overstated Real Estate Rented amount. The erroneous calculation of the Real Estate Rented figure appears to have occurred because of two primary reasons.

17. First, the NYC DOF, in calculating the Real Estate Rented figure effectively double-counted rental payments in the amounts of $1,039,735 (tax year 2005) and $1,096,078 (tax year 2006) for a broadcast transmitter. These rental payments, which were added by the NYC DOF into the Real Estate Rented calculation, had already been accounted for by the NYC Taxpayer Debtors as Tangible Personal Property Rented ("TPPR"), which itself is also component of the Real Estate Rented computation. In making its adjustments, the NYC DOF

7

did not remove the broadcast transmitter rental payments from the TPPR component of the Real Estate Rented computation, and therefore effectively double-counted these rental payments, overstating both the Business Allocation Percentage and the Net Allocated Income.

18. Second, in auditing the NYC Income Tax Returns and adjusting same, the NYC DOF appears to have erroneously included certain non-rent expenses in the Real Estate Rented calculation. Specifically, the NYC DOF included in its Real Estate Rented calculation payments for electricity, cleaning services and work orders. This is contrary to the applicable NYC DOF regulations. See R.C.N.Y. § 11-64(b) (gross rents do not include "[a]mounts payable as separate charges for water and electric service furnished by the lessor."). The inclusion of these non-rental amounts in the Real Estate Rented computation again improperly overstated the Business Allocation Percentage and the amount of Net Allocated Income.

19. The Debtors previously communicated these errors to the NYC DOF in a letter dated May 24, 2010. The Debtors have not received any response to this letter.

20. The NYC Taxpayer Debtors filed their 2005 and 2006 combined returns on December 15, 2006 and December 17, 2007, respectively. The NYC DOF audited the NYC Taxpayer Debtors' books and records of for the 2005 and 2006 tax years, but did not provide the NYC Taxpayer Debtors with audit workpapers or issue a Notice of Deficiency for these years. Similarly, the 2007-2008 NYC Taxpayer Debtors filed their 2007 combined return on March 12, 2009. NYC DOF did not issue a Notice of Deficiency for that year as well.

[Remainder of Page Intentionally Left Blank]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6 day of July, 2012.

By: Patrick M. Shanahan