IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE


)
   IN RE: ) Chapter 11
)
   TRIBUNE COMPANY, et al., ) Case No. 08-13141 (KJC)
                                   )
) Courtroom 5
) 824 Market Street
   _____Debtors._____ ) Wilmington, Delaware

November 10, 2010
10:05 a.m.


   TRANSCRIPT OF PROCEEDINGS
   BEFORE THE HONORABLE KEVIN J. CAREY
   UNITED STATES BANKRUPTCY JUDGE

   APPEARANCES:

   For Debtors: Sidley Austin LLP
BY: JONATHAN LOTSOFF, ESQ.
BY: KEVIN LANTRY, ESQ.
BY: JAMES BENDERNAGEL, JR., ESQ.
BY: BRIAN J. GOLD, ESQ.
One South Dearborn
Chicago, IL 60603
(213) 896-6022

Cole, Schotz, Meisel, Forman &
Leonard, PA
BY:  KATE STICKLES, ESQ.
1000 North West Street
Suite 1200
Wilmington, DE 19801
(302) 652-3131


   ECRO: AL LUGANO

   Transcription Service: DIAZ DATA SERVICES
331 Schuylkill Street
Harrisburg, Pennsylvania 17110
(717) 233 6664
www.diazdata.com

   Proceedings recorded by electronic sound recording; transcript
   produced by transcription service

Page 12

1   MR. GOLD:  And then obviously let any of the

2       objectors add to or correct me if I'm wrong.

3   I think it's fair to say that the U.S. Trustee and

4       the Official Committee of Unsecured Creditors are aligned, if

5       you will, in their objection, and as I understand their

6       objection, it relates solely to the payment of the MIP with

7       respect to five individuals who in the -- as indicated in the

8       very recent filing by the official committee, indicates that

9       those individuals are implicated in some way by the examiner

10      and in the the complaint that the UCC itself has filed.

11  I -- beyond that, I know the bridge has filed an

12      objection.  It, as you point out, is a little bit dated.  I

13      don't know whether that objection still stands, but on its face

14      it related to a bankruptcy court argument, if you will, 1129 as

15      I recall, related to whether these payments -- these MIP

16      payments should be made at all.

17  Those are the only objections, I think, I'm aware

18      of, Your Honor, and that's my understanding of the current

19      status with respect to them.

20  THE COURT:  Okay.  Well, let me hear from others

21      preliminarily, including the U.S. Trustee, committee and bridge

22      lenders.

23  MR. HAMMOND:  Good morning, Your Honor.  Andrew

24      Hammond from White and Case on behalf of the bridge agent.

25      Your Honor, our objection is simply that we believe that the

1      MIP motion should be continued, to be considered at

2      confirmation.  And that to the extent that it's not, that we be

3      permitted to reserve any rights or objections that we have with

4      respect to payments made under the MIP in connection with

5      confirmation.

6    THE COURT:  Well, as I take it, your objection is in

7      large part an absolute priority objection.  And it seems to me

8      that since, at least in this capacity, none of those who are

9      expected to be -- or who are included in the program are pre-

10      petition creditors, at least in the -- I don't know whether

11      they're employee claims or not, but let's assume they're not

12      pre-petition creditors for this purpose.  Is it really an

13      absolute priority argument?

14    MR. HAMMOND:  It may be, Your Honor.  We haven't

15      conducted any discovery on plan discovery yet.  So I couldn't

16      tell you whether they're pre-petition creditors or not at this

17      point in time.

18    THE COURT:  But they're not being paid on pre-

19      petition debt?

20    MR. HAMMOND:  Possibly, Your Honor.  Again, we

21      haven't conducted any discovery on that.

22    THE COURT:  Well, that's not what the proposed

23      request for relief provides anyway.  Okay.  Thank you.

24    MR. HAMMOND:  Thank you, Your Honor.

25    MR. LEMAY:  Your Honor, good morning.  My name is

Page 14

1    David LeMay from Chadbourne and Parke in New York City for the

2    Official Committee of Unsecured Creditors.  I guess we are here

3    now in the third annual MIP ritual and the committee's views on

4    the MIP as a whole remain very much as stated in the two prior

5    enactments of this ritual.  The MIP is a valuable tool, the

6    committee has done a very significant review of it, and as I

7    have in years past, I would assure Your Honor that in this --

8    again this year, the committee has taken great pains to get

9    itself satisfied that the MIP creates the right incentives for

10   the right people and that this is designed to maximize creditor

11   value rather than minimize it.

12 As counsel identified, however, we do have a limited

13   bone to pick and that limited bone resulted in a limited

14   objection.  We have been in conversations with the debtors for

15   quite some time, really since shortly after the release of the

16   examiner's report, about the interplay between the MIP and the

17   individuals who for good or for ill are identified by the

18   examiner as persons of interest.  And the examiner says a

19   number of things about those people and we're not here today to

20   talk about whether the examiner is right or wrong, but there is

21   an examiner, he has made findings, some of them are relatively

22   serious and all of them in each case of these five individuals

23   could lead to liability.

24 So we have discussed with the debtors and we do not,

25   unfortunately, have a resolution of this.  The proposition that

1    these five individuals, in effect, should not be paid their MIP

2    payments for 2010 at this point and the reason for that is just

3    blatantly obvious.  It just seems to us not to be a thoughtful

4    business judgment exercise to pay money out regardless of the

5    performance of the individuals right now this year.  It does

6    not make sense to pay that money out to the individuals who are

7    already named defendants in complaints that have been filed by

8    the committee.  Generally speaking in bankruptcy, it's simply

9    heard of to let money go out the door to someone who you later

10    might have to chase back for it.

11  It's an unfortunate situation and I don't address

12    the Court on this topic with any glee or relish, but I think

13    that's just incredibly important, as a record matter and as a

14    fiduciary vigilance matter, that the committee make its voice

15    heard here.  We like the MIP, we think it creates the right

16    incentives.  If these five individuals are in later proceedings

17    proved to have been completely without fault and to have done

18    the right thing, then I think the committee would have no issue

19    with them getting their MIP payments at that point.

20  But to let them be paid now when we are in the midst

21    of a lawsuit, albeit a lawsuit that's been stayed, we're in the

22    midst of a lawsuit seeking to recover money against them, to us

23    does not square with the kind of business judgment and enhanced

24    scrutiny of insider transactions that the MIP requires.  So

25    that's our bone to pick in a nutshell, Your Honor.  I can

1       answer any questions you have.

2   THE COURT:   None at the moment.   Thank you.

3   MR. LEMAY:   Thank you, Your Honor.

4   MR. KLAUDER:   Good morning, Your Honor.   David

5       Klauder for the United States Trustee.   In kind of following u

6       on Mr. LeMay's comment about the ritual of the MIP, this being

7       the third one, actually from our office's perspective, we're

8       sort of changing our ritual, where Your Honor knows we

9       adamantly objected to the '08 and '09 MIPs as a global -- on a

10      global basis, we've focused our shift -- we focused the

11      objection here and as debtors' counsel mentioned, we are in

12      line now with the committee and their limited objection.

13  Your Honor, just as way of background, I was going

14      to get into more of this on my closing argument, but post the

15      examiner's report we've had substantial discussions with the

16      debtors with regard to our objection to the 2010 MIP and during

17      those discussions is when our focus changed from a global plan

18      perspective -- focus of our objection changed from a global

19      plan objection to an individual payment based objection and we

20      were discussing various individuals over the last few months.

21  Now that the committee has weighed in and we think

22      is a sensible and reasoned objection, we fully support that

23      objection and we believe that those individuals should be taken

24      out of the 2010 MIP and we will argue as such as we get forward

25      with this hearing.

1   THE COURT:  And is that the only remaining objection

2       that the U.S. Trustee has?

3   MR. KLAUDER:  It is.

4   THE COURT:  Let me ask this.  As I understand the

5       MIP for 2010, there are three categories of employees intended

6       to be covered.  There are approximately 640 who would be

7       covered by the plan.  They fall into three categories, as I

8       understand it.  Top management, which is -- includes nine

9       individuals, other key executives and then other participants.

10      I'm unable to tell from the review of the submissions, except

11      for top management, how many fall into each category.  The

12      compensation consultant did a survey of some, but not all, so I

13      don't -- if there are total numbers mentioned somewhere in each

14      category, again except for top management, I haven't been able

15      to glean that, but let me ask the U.S. Trustee.  How many

16      insiders, if the U.S. Trustee has a view, are included in the

17      other key executive's category?

18  MR. KLAUDER:  That would be the -- I don't have the

19      list in front of me, so I'm not sure I can -- is that the group

20      -- that's not the --

21  THE COURT:  It's the middle group.

22  MR. KLAUDER:  The middle group?

23  MR. GOLD:  Your Honor, there -- in terms of how

24      Mercer broke it down it to the benchmarking, nine, as you

25      suggested, in the top group.  I believe there are 26, which I

1    think is on Page 10, if I'm not mistaken, on the Mercer report,

2    in the so called middle group, and then whatever the difference

3    is, about 605 or so would be everyone else.

4  THE COURT:  Okay.  So they did survey then all the

5    26 what they called key incumbents in that category.  So in

6    that category, Mr. Klauder, does the U.S. Trustee have a

7    position about how many are insiders?

8  MR. KLAUDER:  We do not.

9  THE COURT:  Does anyone else like to be heard

10    preliminarily?  I hear no further response.

11  This round is very different, in terms of what the

12    parties have presented to me.  In the original objections, both

13    the bridge agent and the U.S. Trustee had said this is a matter

14    which should be put off to confirmation.  The U.S. Trustee has

15    backed away from that position; the bridge agent has not.

16  Frankly, based on earlier rounds, I had that thought

17    myself, but we have a circumstance here, which given what I've

18    learned from prior hearings, given the continuing disputes

19    among various constituents, which are now represented in the

20    competing plans, and the atmosphere that must have created, and

21    I figure continues at the debtor in part as a result of that

22    anyway, I sympathize with the debtors' request for the Court t

23    act at this time.

24  On the other hand, there still is no plan and five

25    individuals among the top management group have been named as

1    defendants in the long-awaited committee complaint.  And then I

2    look at that middle group -- and I haven't asked the debtor the

3    same question I asked the U.S. Trustee and that is, how many

4    insiders are there within the meaning of the bankruptcy code

5    anyway.  I take it that group is largely station managers,

6    newspaper heads, with one or two exceptions maybe; is that

7    accurate?

8    MR. GOLD:  Yes, I think that's right, Your Honor.

9        They all, frankly, hold some officer, director position at some

10       level.

11   THE COURT:  But in the other key execs group would

12       you say there are individuals among them who drive the

13       reorganization process directly or not?

14   MR. GOLD:  There certainly may be some.  I don't --

15       not predominately, but certainly there are some, Your Honor.

16   THE COURT:  Okay.

17   MR. GOLD:  And as I look at the list, you know,

18       it's, I guess, a matter of perspective.  I'm looking at the

19       list, Your Honor, and it -- you know, the lion's share of

20       anyone's duties would not, from what I can tell.

21   THE COURT:  And that was my general impression, but

22       I couldn't just from a review of the documents reach a

23       conclusion as to every individual included in that group.  I

24       will tell you I was initially inclined to put this off until

25       the time of confirmation, but I will say given the narrowing of

Page 20

1    the objections, I'm now inclined to move forward to let the

2    debtor make its record and then decide what to do and decide

3    when to decide what I will do.  So -- somebody stole our clock.

4    I'll take a five minute break, then we'll begin with the

5    evidence.

6    MR. GOLD:  Thank you, Judge.

7    THE COURT:  All right.

8    (Recess taken at 10:26 a.m. to 10:43 a.m.)

9    THE CLERK:  All rise.  Be seated, please.

10   MR. GOLD:  Your Honor, Brian Gold again on behalf of

11   the debtors.  During the intervening recess, the debtors had a

12   chance to confer with the Official Committee of Unsecured

13   Creditors.  I think it's fair to say that the debtors and, I

14   think you can hear from the official committee itself on the

15   subject, just feel that while the five people who are subject

16   of the objections are important in their own right, that the

17   635 people who are before you are extraordinarily important for

18   some significant business reasons that the MIP get approved and

19   it get approved, frankly, here we are on the 11th month of the

20   year with some immediacy, some certainty in terms of running

21   the business.

22   With that, Your Honor, we would intend to proceed

23   without making our case, if you will, at this time for the

24   payment with respect to the five individuals who have been

25   subject of the objections that you just heard of.  We would

Page 21

1       hope -- we're happy to proceed with whatever evidence Your

2       Honor would like us to proceed with and we're prepared to do so

3       with respect to the 635.  I guess we would hope that together

4       with the official committee and for the business reasons I

5       alluded to that, Your Honor, would take that with some force,

6       if you will, in terms of the consideration for a ruling both

7       positively and a ruling with some immediacy.

8   I throw that your way, Your Honor, with all due

9       respect and am ready to proceed, you know, however you would

10      like to directly do so.

11  THE COURT:  Let me try to figure out what you just

12      said to me.

13  MR. GOLD:  Sure.  A lot of people have that problem,

14      Judge.

15  (Laughter)

16  THE COURT:  Are you withdrawing request that the

17      five individuals who have been named as defendants be included

18      in the MIP program that's been proposed?

19  MR. GOLD:  Yes, without prejudice for their

20      consideration for payment at a later date, Your Honor,

21      presumably as part of the plan of reorganization or, you know,

22      after we regroup, frankly decide how we would like to proceed

23      in that regard.

24  THE COURT:  Okay.  I think that's a wise decision.

25      For the benefit of the corporate officers involved, I would

Page 22

1     have sustained those objections anyway for the reasons which

2     Mr. LeMay say are obvious, but having said that, they're only

3     allegations in a complaint so far and --

4  MR. GOLD:  And the examiner -- just for the record,

5     Your Honor, the examiner took great pains to point that out.

6  THE COURT:  Yeah.

7  MR. GOLD:  And took great pains to point out that

8     there really were no findings with respect to -- of wrongdoing

9     with respect to specific individuals and I -- for the sake of

10     those five, I really feel compelled to state that on the record

11     today.

12  THE COURT:  Understood.  And, you know, the Court

13     forms know view about the merits of any such claims, but I

14     think it's wise that the debtor came to that decision.

15  Okay.  Now, further plumbing the depths of your

16     earlier statement, is it your intention to make proffers, put

17     live testimony on?  I think a record needs to be made in light

18     of the bridge agent's objection.

19  MR. GOLD:  Yeah, and -- yes, I agree with that, Your

20     Honor.  Our intention would be to put both on; live testimony

21     through one initial witness and presumably a proffer would

22     suffice with respect to Mr. Dempsey of Mercer's testimony.

23  THE COURT:  All right.  Let's proceed.

24  MR. GOLD:  Okay.  Thank you, Your Honor.  At this

25     time I'd like to call Eddy Hartenstein to the stand.

1    THE CLERK:  Please remain standing.  Raise your

2        right hand and place your left hand on the Bible.

3        EDDY HARTENSTEIN, DEBTORS' WITNESS, SWORN

4    THE CLERK:  Please be seated.

5    MR. GOLD:  And, Your Honor, I think we may end up

6        only using one exhibit, but we do have exhibit binders if I --

7        with your indulgence, we might as well distribute them now and

8        without breaking the flow?

9    THE COURT:  One moment.

10   THE CLERK:  Please state your full name for the

11       record, spelling your last.

12   MR. GOLD:  I'm sorry.

13   THE WITNESS:  It's Eddy Hartenstein, that's Eddy

14       with a Y.  Hartenstein, H-A-R-T-E-N-S-T-E-I-N.

15   THE CLERK:  Thank you.

16   THE COURT:  Now we can distribute binders, if you'd

17       like.

18   MR. GOLD:  Thank you, Your Honor.

19       DIRECT EXAMINATION

20       BY MR. GOLD:

21       Q Mr. Hartenstein -- Hartenstein, excuse me.

22       A Yes, thank you.

23       Q Where do you work?

24       A I work for the Tribune Company.  I am one of the co-

25       presidents -- co-CEOs of all of Tribune Company and I'm also

Page 59

1      think that's the genesis of the objection.

2    THE COURT:  All right, thank you.

3    MR. HAMMOND:  Thank you, Your Honor.

4    THE COURT:  Does anyone else with to be heard?  I

5      hear no further response.

6  Well, several different ways to    that I look at

7      this in view of the record that's been made.  And let's

8      start with the standard.  I don't address whether the relief

9      should be awarded or viewed under 363(b) or (c).  No one has

10     argued that these are -- or is not now arguing this is

11     relief that should be applied against the standard set in

12     503(c)(1) or (c)(2).  So I will apply the standard provided

13     in 503(c)(3).  And I conclude that the debtor has met its

14     burden for the relief that it's now requesting.  And here's

15     how I view why that relief should be granted.

16  First, I'll look at what, in an unusual

17     circumstance for this case, is a relative absence of

18     objection.  Not something I've seen frequency -- frequently

19     to date.  And that's not always the end of the game.  But on

20     the other hand, I guess which is the corollary to the

21     absence of objection, and that is meaningful support,

22     particularly from the committee here for the reasons it's

23     expressed.

24  The MIP that's been proposed here is somewhat

25     less generous than 2009.  I find that the targets and the

Page 60

1    benchmarks have been appropriately fixed as incentives.

2    They contain a necessary reach.  The metrics chosen in the

3    setting of the targets and benchmarks that is revenue and

4    operating cash flow I think is reasonably chosen under the

5    circumstances.

6  There's nothing wrong with relatively simple

7    means of determining such things.  I think sometimes the

8    parties, in requesting such relief, build frameworks that

9    are much more complicated than they need be.  The awards and

10   potential awards under the proposed plan are meaningful but

11   not excessive.  They're within the market and the company's

12   historical practice, arguably, below each of them.

13  So for all of these reasons, I will overrule any

14   remaining objections and approve the relief that's been

15   requested with the alteration that was made earlier in court

16   today.  Will this require a change to the form of order that

17   the debtor was otherwise expected to present?

18  MR. GOLD:  I believe it may, Your Honor.  And so,

19   we'd propose that we make those modifications, circulate

20   them, and get it to you in due course.

21  THE COURT:  Okay.  Now with tomorrow as a federal

22   holiday and court staff taking advantage of that, my comment

23   is if you wish an order to be signed and docketed today, you

24   should get it to me by mid-afternoon.  Otherwise, it would

25   likely be acted upon Friday.