```
                   IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE


IN RE:                            )     Case No. 08-13141 (KJC)
                                  )     (Jointly Administered)
                                  )
TRIBUNE COMPANY                   )     Chapter 11
                                  )
                                  )     Courtroom 5
                                  )     824 Market Street
              Debtors.            )     Wilmington, Delaware
                                  )
                                  )     July 11, 2012
                                  )     10:00 a.m.



                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JUDGE KEVIN J. CAREY
                  UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:

For Debtors:                Sidley Austin, LLP
                            BY: JAMES BENDERNAGEL, ESQ.
                            BY: KEN KANSA, ESQ.
                            BY: JESSICA BOELTER, ESQ.
                            BY: JONATHAN LOTSOFF, ESQ.
                            One South Dearborn
                            Chicago, IL  60603
                            (312) 853-7000

                            Cole, Schotz, Meisel, Forman
                            & Leonard, P.A.
                            BY: NORMAN PERNICK, ESQ.
                            500 Delaware Avenue, Suite 410
                            Wilmington, DE  19801
                            (302) 652-3131

ECRO:                       AL LUGANO

Transcription Service:      DIAZ DATA SERVICES
                            331 Schuylkill Street
                            Harrisburg, Pennsylvania 17110
                            (717) 233-6664
                            www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

APPEARANCES:
(Continued)

For Great Banc:                  Womble Carlyle
                                 BY: THOMAS M. HORAN, ESQ.
                                 222 Delaware Avenue, Ste. 1501
                                 Wilmington, DE  19801
                                 (302) 252-4339

For Official Committee           Landis, Rath & Cobb
of Unsecured Creditors:          BY: DANIEL B. RATH, ESQ.
                                 BY: ADAM G. LANDIS, ESQ.
                                 919 Market Street, Suite 1800
                                 Wilmington, DE 19801
                                 (302) 467-4400

                                 Chadbourne & Parke, LLP
                                 BY: DAVID LEMAY, ESQ.
                                 BY: MARC ROITMAN, ESQ.
                                 30 Rockefeller Plaza
                                 New York, NY 10112
                                 (212) 408-5100

                                 Zuckerman Spaeder, LLP
                                 BY: ANDREW GOLDFARB, ESQ.
                                 1185 Avenue of the Americas 31st Fl.
                                 New York, NY  10036-2603
                                 (212)897-3434

For Law Debenture:               Bifferato Gentilotti
                                 BY: GARVAN MCDANIEL, ESQ.
                                 800 North King Street
                                 Plaza Level
                                 Wilmington, DE 19801
                                 302-429-1900

For Wilmington Trust:            Brown Rudnick
                                 BY: GORDON NOVOD, ESQ.
                                 Seven Times Square
                                 New York, NY  10036
                                 (212) 209-4862

                                 Sullivan Hazeltine Allinson, LLC
                                 BY:  WILLIAM D. SULLIVAN, ESQ.
                                 901 North Market street, Ste. 1300
                                 Wilmington, DE  19801
                                 (302) 428-8195

```
For Aurelius Capital
Management:              Akin Gump Strauss Hauer & Feld, LLP
                         BY: DAVID ZENSKY, ESQ.
                         BY: DANIEL GOLDEN, ESQ.
                         One Bryant Park
                         New York, NY  10036-6745
                         (212) 872-1000

                         Ashby & Geddes
                         BY: AMANDA WINFREE, ESQ.
                         500 Delaware Avenue
                         Wilmington, DE  19899
                         (302) 654-1888

For JPMorgan Chase:      Davis Polk
                         BY: DAMIEN SCHAIBLE, ESQ.
                         BY: ELI VONNEGUT, ESQ.
                         459 Lexington Avenue
                         New York, NY  10017
                         (212) 450-4092

                         Richards Layton & Finger
                         BY: DREW SLOAN, ESQ.
                         One Rodney Square
                         920 North King Street
                         Wilmington, DE  19801
                         (302) 651-7700

For Credit Agreement
Lenders:                 Young Conaway Stargatt & Taylor
                         BY: BLAKE CLEARY, ESQ.
                         1000 West Street, 17$^{th}$ Floor
                         Wilmington, DE  29801
                         (302) 571-6714

                         Jones Day
                         BY: JAMES O. JOHNSTON, ESQ.
                         BY: JOSHUA MESTER, ESQ.
                         555 South Flower Street
                         Fiftieth Floor
                         Los Angeles, California  90071-2300
                         (212) 243-2431

For DBTCA:               McCarter & English
                         BY: KATHARINE MAYER, ESQ.
                         245 Park Ave., 27th Fl.
                         New York, NY  10167
                         (212) 609-6847
```

```
For Morgan Stanley:        Barnes & Thornburg
                           BY: KEVIN G. COLLINS, ESQ.
                           1000 N. West Street, Ste. 1200
                           Wilmington, DE  19801
                           (302) 888-0301


For Merrill Lynch:         Potter Anderson & Corroon, LLP
                           BY: LAURIE SELBER SILVERSTEIN, ESQ.
                           BY: R. STEPHEN MCNEILL, ESQ.
                           Hercules Plaza
                           1313 North Market St., 6th Fl.
                           Wilmington, DE  19801
                           (302) 984-6033


For Certain Directors
and Officers:              Connolly Bove Lodge & Hutz
                           BY: MARC J. PHILLIPS, ESQ.
                           1007 North Orange Street
                           Wilmington, DE  19899
                           (302) 884-6581


                           Grippo & Elden
                           BY: GEORGE DOUGHERTY, ESQ.
                           BY: MAILE SOLIS, ESQ.
                           111 S. Wacker Drive
                           Chicago, IL  60606
                           (312) 704-7700


For U.S. Trustee:          United States Department of Justice
                           BY: DAVID KLAUDER, ESQ.
                           844 King Street, Ste. 2007
                           Lockbox 35
                           Wilmington, DE  19801
                           (302) 573-6491


For Tribune:               Tribune
                           BY: DON LIEBENTRITT
                           435 North Michigan Avenue
                           Chicago, IL  60611
                           (312) 222-9100
```

TELEPHONIC APPEARANCES:

For Official Committee of
Unsecured Creditors:        Chadbourne & Parke, LLP
                            BY: MARC D. ASHLEY, ESQ.
                            BY: DOUGLAS DEUTSCH, ESQ.
                            BY: THOMAS MCCORMACK, ESQ.
                            BY: MARC ROITMAN, ESQ.
                            BY: HOWARD SEIFE, ESQ.
                            (212) 408-5100

For Debtor:                 Sidley Austin
                            BY: CANDACE KLINE, ESQ.
                            BY: BRYAN KRAKAUER, ESQ.
                            BY: KEVIN LANTRY, ESQ.
                            BY: DENNIS TWOMEY, ESQ.
                            BY: KEN KANSA, ESQ.
                            BY: GEOFFREY KING, ESQ.
                            BY: JILLIAN LUDWIG, ESQ.
                            BY: KERRIANN MILLS, ESQ.
                            (312) 853-7778

                            Zuckerman Spaeder, LLP
                            BY: JAMES SOTTILE, ESQ.
                            (202) 778-1800

                            Tribune Company
                            BY: DAVE ELDERSVELD
                            (312) 222-4707
                            BY: GARY WEITMAN
                            (312) 222-3394
                            BY: MICHAEL O'NEAL
                            (312) 222-3490
                            BY: DAVID BRALOW
                            (312) 853-7163

                            McDermott Will & Emery
                            BY: GREGORY A. KOPACZ, ESQ.
                            (212) 547-5620

                            Seyfarth Shaw, LLP
                            BY: JAMES B. SOWKA, ESQ.
                            (312) 460-5325

For Credit Agreement
Lenders:                    Angelo Gordon & Co., LP
                            BY: GAVIN BAIERA, ESQ.
                            (212) 692-0217

```
For SuttonBrook Capital
Management, LP:            SuttonBrook Capital Management, LP
                          BY: CAROL L. BALE
                          (212) 588-6640
For Oaktree Capital
Management:                Oaktree Capital Management
                          BY: EDGAR LEE
                          (213) 830-6415
                          BY: KENNETH C. LIANG
                          (213) 830-6422


For Michael D'Agostino:   Bingham McCutchen, LLP
                          BY: MICHAEL D'AGOSTINO
                          (860) 240-2731


For Bank of America:      O'Melveny & Myers
                          BY: DANIEL S. SHAMAH, ESQ.
                          (212) 326-2138
                          BY: EVAN JONES, ESQ.
                          (213) 430-6236

                          Bank of America
                          BY: ESTHER CHUNG
                          (646) 855-6705


For USB Securities:       USB Securities, LLC
                          BY: DAVID W. DERR
                          (203) 719-9776


For Davidson Kempner:     D K Partners
                          BY: EPHRAIM DIAMOND
                          (646) 282-5841


For Chandler Bigelow:     Sperling & Slater
                          BY: GWEN NOLAN, ESQ.
                          (312) 5641-3200

For Employees Compensation
Defendant's Group:        Frank Gecker, LLP
                          BY: REED HEILIGMAN, ESQ.
                          (312) 276-1432


For Matthew Frank:        Alvarez & Marsal, LLC
                          BY: MATTHEW FRANK
                          (312) 371-9955
```

For Citigroup:                Paul Weiss Rifkind Wharton &
                              Garrison
                              BY: ANN K. YOUNG, ESQ.
                              (212) 373-3000

For Chicago Fundamental
Investment:                   Chicago Fundamental Investment
                              BY: PETER GRUSZKA
                              (312) 416-4215

For Anna Kalenchits:          Anna Kalenchits
                              (212) 723-1808

For DebtWire:                 DebtWire
                              BY: TIBITA P. KANEENE
                              (212) 500-1383

For JPMorgan Chase:           Davis Polk Wardwell, LLP
                              BY: ANGELA LIBBY, ESQ.
                              (212) 450-4433

For Morgan Stanley:           Weil Gotshal & Manges, LLP
                              BY: DAVID LITVACK, ESQ.
                              (212) 310-8361
                              BY: ANDREA SAAVEDRA, ESQ.
                              (212) 310-8544

For Barclays Capital:         Barclays Capital, Inc.
                              BY: OLIVIA MAURO
                              (212) 412-6773

For Merrill Lynch:            Kaye Scholer, LLP
                              BY: JANE PARVER, ESQ.
                              (212) 836-8510
                              BY: MADLYN G. PRIMOFF, ESQ.
                              (212) 836-7042

For Citi:                     Citi
                              BY: REBECCA SONG
                              (212) 559-9933

For EGI-TRB:                  Jenner & Block, LLP
                              BY: ANDREW VAIL
                              (312) 840-8688

For Wells Fargo Bank:         White & Case, LLP
                              BY: ANDREW ZATZ, ESQ.
                              (212) 819-8744

```
For Duetsche Bank:        McCarter & English
                          BY: DAVID J. ADLER, ESQ.
                          (212) 609-6847


For Singuler Guff:        Singuler Guff
                          BY: RANDALL W. BEELER
                          (212) 332-5109


For Cooperstown Capital:  Cooperstown Capital Management
                          BY: PETER COURI
                          (203) 552-6900


For Robert Henke:         Robert Henke, Pro se

For Aurelius Capital
Management:               Akin Gump Strauss Hauer & Feld, LLP
                          BY: PHILLIP DUBLIN, ESQ.
                          (212) 872-8083


                          Aurelius Capital Management, LP
                          BY: DAN GROPPER
                          (646) 445-6500
For Arrowgrass Capital
Partners:                 Arrowgrass Capital Partners, US, LP
                          BY: DAVID DUNN
                          (212) 584-5946


For Mercer US, Inc.:      Freeborn & Peters, LLP
                          BY: DEVON J. EGGERT
                          (312) 360-6378


For Silver Point
Capital:                  Silver Point Capital
                          BY: MATTHEW EHMER
                          (203) 542-4219


For Tribune Company:      Alix Partners, LLC
                          BY: LAURA J. EISELE
                          (248) 204-0675
For Special Committee
Of the Board of
Directors:                Jones Day
                          BY: BRAD ERENS
                          (312) 269-4050


For Levine Sullivan
Koch & Schulz:            Levine Sullivan Koch & Shulz
                          BY: SHAINA JONES, ESQ.
                          (2020 508-1100
```

For Novack & Macey:        Novack & Macey, LLP
                           BY: JULIE JOHNSTON-ALLEN, ESQ.
                           (312) 419-6900

For Law Debenture:         Kasowitz Benson Torres & Friedman
                           BY: CHRISTINE MONTENGRO, ESQ.
                           (212) 506-1715
                           BY: DAVID ROSNER, ESQ.
                           (212) 506-1726

For New York State
Common Retirement Fund:    Morgan Lewis & Brockius, LLP
                           BY: RACHEL MAUCERI, ESQ.
                           (215) 963-5000

For Goldman Sachs:         Goldman Sachs & Company
                           BY: FREDERICK MORRIS, ESQ.
                           (212) 902-2886

For Davis Wright
Tremaine, LLP:             Davis Wright Tremaine, LLP
                           BY: KELLI L. SAGER, ESQ.
                           (213) 633-6853

For Canyon Partners:       Canyon Partners, LLC
                           BY: CHANEY M. SHEFFIELD
                           (310) 272-1062

For Catherine Hertz
et al:                     Dilworth Paxson, LLP
                           BY: JESSE SILVERMAN, ESQ.
                           (215) 575-7284

For Amalgamated Bank:      Milbank Tweed Hadley & McCloy
                           BY: ALAN STONE, ESQ.
                           (212) 530-5285

For Fee Examiner:          Stuart Maue
                           BY: JOHN THEIL
                           (314) 291-3030

For Paul Hastings:         Paul Hastings, LLP
                           BY: KATHERINE A. TRAXLER, ESQ.
                           (213) 683-6170

For Contrarian Capital
Management:                Contrarian Capital Management
                           BY: JOSHUA TRUMP
                           (203) 862-8299

```
For the Official Committee
of Unsecured Creditors:   Moelis & Company, LLC
                          BY: JASON WARSAVSKY, ESQ.
                          (212) 883-3832

For Ernst & Young, LLP:   Alston & Bird, LLP
                          BY: JOHN W. WEISS, ESQ.
                          (212) 210-9412
```

INDEX

|  | Direct | Cross | Redirect |
|---|---|---|---|
| WITNESSES |  |  |  |
| Robert Henke | 64 | 93 |  |

THE COURT:  Good morning.

MR. PERNICK:  Good morning, Your Honor, Norman
Pernick, from Cole Schotz, Your Honor, for the debtors, Tribune
Company.  Your Honor, I thought I'd just run through the agenda
with the Court to make sure that we're in sync and make sure
the record's clear on what's continued and what's been entered.

THE COURT:  That's fine.

MR. PERNICK:  Your Honor, continued is Item #1, the
Tenth  Omnibus Objection, with respect to the claims of GE
Capital Fleet Services and Robby Wells; Item #2, the Twenty-
Fourth Omnibus Objection, with respect to the claims of Marbury
von Briesen and Herbert Eye; #3, the Twenty-Seventh Omnibus
Objection, there has been an agreement reached as the agenda
notes with Marcia Willette, as Guardian for Zachary Mitzkovitz,
and a stipulation is going to be filed.  So that's technically
continued to the 7th, but that stipulation, hopefully, will be
filed before that date.  #4, the Thirty-Third Omnibus
Objection, with respect to the claim of the City of Chicago;
#5, the Fortieth Omnibus Objection, with respect to the claim
of USDR-CNI Corp.; Item #6, the Forty-Second Omnibus Objection,
with respect to the claims of Broadspire Services, Software AG,
and Carol Walker; Item #7, the Forty-Seventh Omnibus Objection,
with respect to the Ohio Department of Taxation; and Item #8,
with respect to the claim of Avaya, Inc.  And then the Court

was kind enough to enter Orders on Item 9, 10, 11, 12, 13, 14,

15, and 16.  A Certification of Counsel was filed for Item #21,

which was quarterly fee applications for the 9th Interim; and

22, which are quarterly fee applications for the 10th Interim.

And that would leave us with going forward with any questions

obviously that the Court has on those items, as well as Item

#17, which is the debtors' supplemental objection to the Henke

claims; #18, which is a request by Malcolm Berko for retention

of a bankruptcy attorney; #19, the motion of Harry Amsden,

Robert Gremillion, and David Williams authorizing the debtors

to deposit their 2010 MIP award into the Rabbi Trusts; and then

Item #20, the status report with respect to the confirmation of

the Fourth Amended Joint Plan.  And I'm not sure if the Court

-- I am sure the Court had an Order in mind, but I didn't know

if the Court wanted to maybe take 20, 21, and/or 22 first,

because that probably concerns most of the people that are in

attendance and on the phone.

       THE COURT:  That's fine with me.

       MR. PERNICK:  And then we can turn to the other

items.  Do you have a preference on order, Your Honor?

       THE COURT:  I don't.

       MR. PERNICK:  Okay.

       THE COURT:  As among those three, I do not.

       MR. PERNICK:  Thank you.

       MR. BENDERNAGEL:  Your Honor, Jim Bendernagel, for

the debtors.  I think, given that the vast bulk of the people that are here are probably interested in the status report on confirmation, it might be good to start there.  As you'll recall, we had asked for a status conference on June 21st.  You said that the earliest you'd be in a position to do that was July 11th, and we put it on the agenda.  I guess the real question is what can you tell us about where we are in confirmation because I don't think we have anything to add.

THE COURT:  There are two issues on which I remain unresolved, and which by notice from Chambers to the parties yesterday or the day before, I asked that they make sure they were present either in person or by telephone.  The first has to do with the -- what's styled as the limited objection of former Tribune employees.  There are four, and let me ask if Counsel's present or on the phone in that connection.

MR. SILVERMAN:  Yes, Your Honor, Jesse Silverman, at Dilworth Paxson.  I'm here standing in for Catherine Pappas who is the attorney of record for these four objecting former Tribune employees.  She is away on vacation without access to a landline today, and so I have agreed to participate and answer any questions that I'm able to answer.

THE COURT:  All right.  Thank you.  Mr. Silverman, do you have a copy of the objection in front of you?

MR. SILVERMAN:  I do.

THE COURT:  Let me direct you to paragraph 9.  The

essence, and -- the essence of the objection, as it's
articulated in the written submission, which differs slightly
from that which was argued when Ms. Pappas was present in
Court, but the essence of it is that the debtor in -- the DCL
Plan Proponents are cutting off rights that your clients would
otherwise have to indemnification and reimbursement.  But I
don't gather that from the Plan as it's been proposed, and I
think the debtors -- the DCL Plan Proponents say they're not
cutting anything off.  Am I misunderstanding things or not?

           MR. SILVERMAN:  To the best of my knowledge, our
interpretation of 1161 is that -- that it's, I guess, by
applying only to people who continued their employment after
the petition date, that it would operate to exclude the four
objecting former employees who were not employed as of the
petition date.

           THE COURT:  Well, what it does, as I read it, and
I'll hear from others, especially the authors of the Plan, but
-- is that while it, arguably, confers an enhanced standing to
those who were employed on and after the petition date -- and
Mr. LeMay argued at the time that that was appropriate under
the circumstances -- it's silent as to what would happen to
those rights held by those who were employed pre-petition but
terminated, or who left, before the petition filing.  So I
don't necessarily take the silence to mean -- and I don't --
put it this way.  My reading of it doesn't do that.  But let me

now turn to the DCL Plan Proponents and ask them what they intend by that provision.

MR. LEMAY:  Good morning, Your Honor, David LeMay, from Chadbourne & Parke, for the Official Committee of Unsecured Creditors.  I think you're right that I was the one who was at the podium when this matter was argued last month, and I was just frantically flipping through the transcript.

THE COURT:  Yes, and I think -- if I may ask you to pause for a moment?  What happened here, at least in terms of the oral argument, is the parties talked across each other and it's made me confused.

MR. LEMAY:  I think -- let me see if I can get to the source of the Court's confusion, because I think I understand why you're asking me that.  I don't believe it is the intention of the Plan to eliminate or cut off those indemnity claims.  It is the intention of the Plan to not treat them as administrative Plans, but rather as unsecured claims to the extent that they are filed, meet all the requisites for allowance, and are, in fact, allowed.  I was just starting to flip through the transcript.  I had not been aware that this is one of Your Honor's issues; otherwise, I would have done that last night.  But, as I recall, the papers that we filed -- and I would need a minute to go back and look at this.  The papers we filed in this issue I think are relatively clear that it's our understanding that these claims are not, in any way,

eliminated or aggregated.  They are simply -- they simply

achieve the same status or have the same result that all other

pre-petition claims have: namely that, to the extent that they

are ultimately allowed, they would share in distributions in

its pre-petition general unsecured claims.  What they would

not, under the Plan have, is the right to participate as

hundred-cent-dollar administrative claims.

        THE COURT:  And that's how I read that provision.

That's how I read that provision.

        MR. LEMAY:  Your Honor, I -- it -- aware now that

that is the Court's concern.  It -- I could, I suspect with

about 30 seconds of looking around, identify both the piece of

our objection and also the relevant Plan section that backs

that up.  But that's absolutely my understanding, and I invite

others to tell me if I'm wrong.

        THE COURT:  That would be helpful.  All right.  The

other issue that, from my standpoint, remains unresolved is the

Aurelius objection to the language in the Creditors' -- the

Committee's agreement with respect to what the Litigation

Trustee may or may not do.  Have the parties come together on

that issue yet or is it still open?

        MR. BENDERNAGEL:  I think it was left open, and I

think at the June 21st hearing, you took it -- you basically

told the parties you were going to sort of take that under

advisement, and I don't think the parties have talked about

that since then.

       THE COURT:  Okay.

       MR. BENDERNAGEL:  Although that would have been something between the Committee and Mr. Zensky.

       THE COURT:  Okay.  And that's accurate.  I did. And, as I look at the confirmation process, it's generally an up or down thing.  I either sustain an objection that's made or I overrule it.  I did, however, I think warn the parties that I might try to fashion language that I thought was most appropriate and I've done so, and I'll ask my law clerk to hand out my suggestions to you in a moment.  But I will tell you that I agree with Aurelius that the decision about what discovery should be permitted should be up to the Court in which any litigation is pending.  I don't think, necessarily, the Committee ought to have the right to run home to mama for guidance on that, and that's consistent with comments I've made throughout the proceeding.  I do, however, find merit with the Committee's concern that, given the contentious nature of this proceeding, and I'm certain that those which are to follow -- that it needs some protection.  And so I've suggested language that I hope might form the basis for an agreement between the Committee and Aurelius on what this provision should say. Janet, if you'd hand some copies out now, I'd appreciate it. And I'll give you time, either now or at the conclusion of the hearing or at some break, to tell me whether you can live with

that or not.  The changes that I have added are highlighted in red.  The items in blue are those which were suggested by and attached to Mr. LeMay's letter of June 21st.  And Mr. Zensky, if you'd like us to press on and think about it and respond later, you may.  If you're prepared to do so now, you're free to do that.

             MR. ZENSKY:  Thank you, Your Honor.  David Zensky, Akin, Gump, Strauss, Hauer & Feld, for Aurelius Capital Management.  I would like to hold this over until the end of the hearing if we can, Your Honor --

             THE COURT:  Yes.

             MR. ZENSKY:  -- so I have an opportunity to look at it and discuss it with our client.

             THE COURT:  That's fine.  And I will tell you, if the parties wish to come to some agreement that is different than what I've suggested, I'm, you know, within reason, okay with that as well.

             MR. ZENSKY:  Okay.

             THE COURT:  All right.

             MR. ZENSKY:  Thank you, Your Honor.

             THE COURT:  Okay.  Mr. Bendernagel, to circle back to the beginning on this, I have a 50-page draft of an opinion, which, subject to closure on the two issues we've just discussed, I'm prepared to issue, and you'll have it -- well maybe not today, but you'll have it by Friday.

MR. BENDERNAGEL:  Okay.

THE COURT:  You'll have it by Friday.

MR. BENDERNAGEL:  You're not going to give us a hint as to where you're going?

(Laughter)

THE COURT:  Well, let's put it this way.  You said to me when you requested a status hearing that, if I had any problems, I should raise them at the status hearing before I issued an opinion.  Does that give you your answer?

MR. BENDERNAGEL:  Yes, it does, Your Honor.

THE COURT:  Okay.  Shall we pick up with the rest of the agenda?

MR. BENDERNAGEL:  Your Honor, I think the next thing that probably makes sense to move to is the motion that was filed by the --

THE COURT:  Oh, I'm sorry; the fee applications.

MR. BENDERNAGEL:  Yes.

THE COURT:  Fee applications, which are 21 and 22. I know there's been back-and-forth with the Fee Auditor on these issues, and I'm content with the resolution, as has been agreed between the Fee Auditor and the respective applicants, and I'm prepared to sign both Orders that have been submitted. But the reason I haven't done so yet is I wanted to comment on something that I see as a real problem in this jurisdiction.  I don't know whether it exists elsewhere, and frankly, I've

discussed this issue with my colleagues, and I expect that it's
going to be resolved either by a Standing Order at some time in
the near future or by an amendment to the Local Rules, and
that's this.  That when estate-paid professionals are engaged,
they sometimes -- and it's usually the non-lawyers; although in
this case, it was Zuckerman -- employ other professionals and
submit, as part of their fee applications, the fees charged to
the law firm by other professionals.  In Zuckerman's case, it
was Navigant for about $82,000, and Gold & Associates for over
$2½ million.  And, of course, none of the time detail is
provided in connection with these submissions, and I will
require that detail be submitted before I address the Zuckerman
fee application.  This is a huge problem.  These are not
insignificant sums, even in a case of this size, and I think
ought to be subject to Court review.  And I acknowledge that
our Local Rules & Procedures and National Rules and Code are
not clear on how things like this should be handled.  I've
encountered this problem once earlier this year, and it
eventually got resolved, but this is not something that should
go this way.  And I'm not criticizing anybody necessarily,
although what I said in the earlier situation that was similar
to this was, that listen, if a professional is employed and
intends to use other professionals, you know, for things other
than fights about engagement or fights about fees, which are --
I don't want to say common, but not uncommon -- they should

tell the Court at the time of engagement that they intend to

hire other professionals, whose activities are needed and will

result in, you know, fees of a certain magnitude which are out

of the ordinary.  And these are clearly -- well, at least with

respect to Golden, out of the ordinary.  And I make no

determination out about whether those services were necessary

or good or whether they were efficient or well-performed.

That's not my issue.  My issue, at least initially, is limited

only to process here.  So if someone wants to speak on behalf

of Zuckerman or Navigant or Golden, they're free to address me

now if they'd like.  But I will tell you, I will order that I

want detail consistent with what we would otherwise require

from estate-paid professionals from each of those entities

before I will rule on the Zuckerman application.  Does anyone

wish to be heard?

          MR. GOLDFARB:  Good morning, Your Honor, Andrew

Goldfarb, from Zuckerman Spaeder, Counsel to the Committee.

Your Honor did have a similar talk I think with Mr. Sottile

some months ago on the same issue, and we understand Mr.

Golden's firm was retained by Zuckerman in connection with the

confirmation hearing in order to respond to the Noteholder's

presentation by Dr. Barren about the valuation of the

litigation claims.  It was a substantial undertaking for -- in

a time period, and it was a large expense, and we will,

obviously, respond to whatever Your Honor orders.  We have --

we did submit, in connection with our back-and-forth with the

Fee Auditor, the time detail for -- both for the Navigant

expert and for Gold & Associates and, obviously, saw what the

fee examiner concluded in his final report.  So we will --

THE COURT:  Yes, I mean, he just -- his problem was

a reallocation of where the time should fall.  All right.

Well, I'm going to take a look at that and see if I need

anything further before I act on that.  I'm prepared to sign

off on everything else today though.

MR. GOLDFARB:  Thank you, Your Honor.

MR. BENDERNAGEL:  Your Honor, just out of curiosity,

because Mr. Goldfarb didn't raise this question, are you

suggesting that an expert witness that's retained in connection

with an adversary is an estate professional, because I don't

think most people view it that way.

THE COURT:  Well, and I -- the answer is it depends,

okay?

MR. BENDERNAGEL:  Okay.

THE COURT:  And I'll give you an example.  In an

earlier case in which the filing was by a bank holding company,

there was an attempt to raise money in order to meet the FDIC's

capital requirements.  So another professional firm was

employed, you know, to do the road show, which turned out to be

unsuccessful.  But -- and that's, I understand, a common

practice in that industry, but that professional never applied

for engagement by the estate really, and it was on the estate's

behalf that the work was done.  So the long answer to your

question is you need to look -- I think what ought to happen is

the Court ought to look at what the non-employed professional

is doing and on whose behalf those services are being rendered.

And if it's primarily on behalf of the estate or for the

benefit of the estate; and I think an argument can be made that

-- and the U.S. Trustee made it in that case -- it ought to be

a 327 employment.  If it's something other than that, it may be

that something else is appropriate.

          MR. BENDERNAGEL:  Well, yes, but the question was a

little bit more nuance than this instance as it relates to

somebody like Mr. Golden, because this is -- he got very

wrapped up in the attorney/client privilege and the attorney

work product privilege, and the question of going forward and

disclosing who your witnesses are and trying to get Court

approval for a professional, most people don't do that.  You

haven't seen anybody asking for approval of witnesses in that

regard, and in my experience, that is generally not done, and

that's a little different than the hypothetical you gave.  And

I'm not asking you to answer that question today, but that has

a profound effect on how you'd litigate all of these claims.

And this is a -- in this instance, what we're talking about is

a litigation issue.

          THE COURT:  And I understand why arrangements are

made in the way in which they're made and the reasons for that

and they're sound reasons and I'm not suggesting that that

practice be upset.

             MR. BENDERNAGEL:  Okay.

             THE COURT:  Okay?  But the request, you understand,

comes in for payment by the estate, so it's -- you can't

separate that from the other considerations that are of concern

to everyone and should be.

             MR. BENDERNAGEL:  Yes.  No, I understand, but the

Committee is not going to want the debtor in this instance to

be sort of looking over its shoulder with respect to what its

expert witness is doing, and in some instances, it might not

even want to tell the estate that it's retained a witness.

             THE COURT:  But I -- see, I -- well, but at some

point, it's going to have to.

             MR. BENDERNAGEL:  Oh, you know, I'm talking about

more the question of whether this person has to be retained

pursuant to 327 --

             THE COURT:  Well, I don't --

             MR. BENDERNAGEL:  -- as opposed to whether you have

to review it.  You know, you get detailed review what they did

after the fact.

             THE COURT:  Well, and I've periodically reviewed in

camera detail that involves litigation strategy,

attorney/client stuff.  So that's not something out of the

ordinary necessarily.  I guess the other part of it, and just as important to me anyway, is look, if an estate-paid professional is going to incur that kind of expense, you got to tell me ahead of time.  I mean, you know, it's different when I see, for example, a financial advisor that's paying 10- or $20,000 to a lawyer because there's some issue with the U.S. Trustee or somebody else over their engagement.  Not an issue for me.  But, you know, you get up into the $2½ million range, that's different.

        MR. BENDERNAGEL:  Yes, but if you get into any of these big litigations, your experts are going to run up in those ranges, or even higher, and somebody ought to clarify what the rules are, because it's really unclear right now.

        THE COURT:  Well, I'll repeat that I didn't say the number was unreasonable or unjustified.

        MR. BENDERNAGEL:  No, no, no.  I'm talking more about just giving people notice as to what the rules are, because people are not operating as if these people are 327.

        THE COURT:  Well, and I don't think the Rules say they are because --

        MR. BENDERNAGEL:  Okay.  Thank you.

        THE COURT:  And that's the problem.

        MR. PERNICK:  Did the Court want -- I took the form of Order and just crossed out Zuckerman for these purposes.  I didn't know if the Court had a form up there or not, but if

not, I have one.

          THE COURT:  That's fine.  You can bring it up.
There were -- now, there were two submitted with the --

          MR. PERNICK:  Correct.

          THE COURT:  Okay.  Thank you.

          MR. THEIL:  Your Honor, this is John Theil, on
behalf of Fee Examiner.

          THE COURT:  Yes?

          MR. THEIL:  With regard to Zuckerman, then we should
just stand by with regard to potentially getting instruction
from you on how to handle a detailed review of those
potentially?

          THE COURT:  Potentially.  I may or may not ask you
to be further involved, but I'll decide that, and I'll let you
know.

          MR. THEIL:  Okay.  Thank you, Your Honor.

          THE COURT:  You're welcome.  Okay.

          MR. DOUGHERTY:  Your Honor, good morning.  My name
is George Dougherty.  I'm here on behalf of certain Officers
and Directors.  Can you indulge me?  I wanted to go back to the
status report and I wanted to make sure something was clear.
If you recall, we had an objection to the scope of the transfer
of privileges under the Litigation Trust Agreement, and we had
an argument on that at the last Court hearing.  We have, I
think, resolved that with language to be included in any final

confirmation order that you may eventually enter.  And I guess I had two issues, given that you said you would issue an opinion on Friday.  One, I wanted to confirm that there is, in fact, an agreement, and I talked to Mr. Sottile about that yesterday.  And then, the second is the logistics.  I'm not a bankruptcy practitioner.  How do we get the agreed language over to you?  Is a letter sufficient?

THE COURT:  Well, you ask a good question, and that is, anticipating that there might be a further amendment to the submission based upon the discussion today, what I anticipate would happen is that there'd be final documents filed, after which the Court would be in a position to act.

MR. DOUGHERTY:  Thank you.

MR. BENDERNAGEL:  Let me address those two points, Your Honor, because I should have probably raised one of them, and maybe both of them.  Mr. Dougherty is correct that we have reached agreement with respect to certain language.  You had told us not to submit the confirmation order ahead of time.  I had actually said we were going to submit that snippet of language, and I think we dropped the ball and just didn't submit it.  But that -- he's correct that we have agreement on that, and we will submit it.

The second issue is an issue that Ms. Bolter asked me to raise this morning and that was the logistics issue as to what happens once you issue your Order with respect to a

confirmation order.  Let me tell you what we're anticipating

doing, and based on whatever the opinion basically says, we

would go forward and finalize the Plan to reflect whatever it

is that you're saying and move forward with the confirmation

order.  We've circulated a draft confirmation order to most of

the DCL Plan Proponents and are pretty close to having sign-off

on that language.  My anticipation is that once we get that and

we get your order and make any conforming changes, that we

would circulate that more broadly to see if we could get

agreement on that language from other people and submit it to

you as quickly as possible, so that we can get the confirmation

order in place.  As you know, it's important for us to get the

confirmation order out so that the FCC can move forward.  Maybe

they can move forward based on your opinion, but, you know,

obviously, the order is of equal importance to that process,

and you know, our goal is, as soon as we get your opinion, to

move forward with that process of finalizing the documents and

I think that's consistent with what you just said a minute ago.

          THE COURT:  It's exactly what I anticipated.

          MR. BENDERNAGEL:  Thank you.

          THE COURT:  Okay.  What's next?

          MR. BENDERNAGEL:  I think at this juncture, we can

move forward with the motion that Mr. Grippo -- Mr. Dougherty's

firm filed on behalf of the three former Officers that were

excluded from the MIP in 2010 as a result of concerns regarding

the examiner report and the Committee's Complaint, and they

filed a motion seeking certain treatment of those dollars, and

I'd propose to hand over the podium to Mr. Dougherty if that'd

be appropriate.

THE COURT:  Okay.

MR. DOUGHERTY:  I guess I should have stayed.  Good

morning, Your Honor.  My name is George Dougherty.  I'm here on

behalf of three individuals, Harry Amsden, David Williams, and

Robert Gremillion.  Collectively, they worked for the Chicago

Tribune for over 100 years before being laid off in 2011.  They

were not laid off for cause, and I want to point out to the

Court that each continued as a consultant throughout 2011, and

two currently still work for the company as consultants.  We

seek today, Your Honor, exactly the same relief that your --

that the Court granted two days ago on Monday, July 9th, to two

of their former colleagues.  And that relief, specifically, is

that the MIP compensation that was awarded to them in 2010 by

the company be placed into individual trusts, pending

resolution of the current LBO litigation, and that's exactly

the relief that you ordered two days ago.  Each of these

individuals, the three that I represent and the two former

colleagues, had their respective 2010 MIP payments deferred

solely because they were named as defendants in the *Fitzsimons*

action.  In 2011 and 2012, MIP payments were awarded to the two

colleagues and those payments were placed in designated trusts,

again -- and again, that's consistent with the relief we're
requesting here today with respect to the 2010 payments.

        In other words, the way I looked at -- in other
words, the way I look at this, the current rule in this
litigation over the past two years has been that if you are
awarded a MIP payment and you are named as a defendant in the
*Fitzsimons* action, your MIP award is placed into a trust.  In
2010, the individuals I represent met both of those criteria
and were in exactly the same position as the two individuals
who received, two days ago, the relief we are now requesting.
There's no valid reason that I could come up with to treat
these individuals, all whom were in the same position in 2010,
in different ways now.  Now, the Committee is the only --

        THE COURT:  Let me ask you this question.

        MR. DOUGHERTY:  Sure.

        THE COURT:  Assuming that the debtor could have
chosen to request that relief from the Court, as it did with
the relief that you referred to that I recently granted, which
was in the absence of any objection, why must they do so?

        MR. DOUGHERTY:  Well, my understanding, and it's a
little unclear from what happened, the Committee now calls them
excluded employees or excluded people.  That's not what the
order says from November 2010.  It talks about them being
deferred participants.  So the idea was that the Compensation
Committee approve the payment; the company filed the motion

asking for the payment; and then, from what I can tell, the

company just decided not to seek approval of the payment from

this Court.  But the company's position was that they were

participants, at least according to the order which talks about

being deferred, not excluded, and the Committee, at the time,

the Creditors' Committee said that we could come back and ask

for this relief.  So, from our point of view, you know, they

performed this work in 2010; they should be paid for this work,

just like the other two people who had an order entered a

couple days ago.  The Committee doesn't deal with any of the

history that I just talked about.  Instead, it focuses on the

fact that the three people that I represent are no longer

employed by the company, and if you look at page 6 of its

objection it talks about the foundation for approval and

implementation of the MIP.  During these Chapter 11 cases, it

has been that it benefits the estate by incentivizing the

debtor's management to work hard to create value for the

Tribune and its creditors, and that's a quote, and that's kind

of the gist of their argument right now.  Now, we've pointed

out to you in our Reply Brief, and in other -- in our other

submission, that there's a lot of things wrong with that,

including the unfairness of a company refusing to pay people

for work they performed.  I also want to point out to the

Court --

              THE COURT:  Well, no, none of those individuals in

this category have been paid this component of the

compensation.  As you point out, some of it's been put aside in

the Rabbi Trust and awaiting the outcome of certain litigation.

So nobody's been paid that component.

       MR. DOUGHERTY:  You know, and that's a good point,

and I guess the relief we're actually seeking is that kind of

discreet relief.  So that's actually a point I should have

made, and you said it better than I did.  I think that's a

factor that mitigates in favor of granting this motion.

       You know, to the extent the Committee's right in

what they say the purpose of this was, all that indicates to me

is that the same relief that you're currently giving in 2011,

2012, and just a couple days ago, probably should have been

given two years ago after -- and that's kind of the procedure

we've been operating under now.

       THE COURT:  Let's say the litigation is successfully

resolved in favor of your clients.

       MR. DOUGHERTY:  And it will be.

       THE COURT:  What would you anticipate would happen

then with respect to these payments?

       MR. DOUGHERTY:  I would assume, consistent with what

the Committee said at the last hearing, that we would be

entitled to those payments.  They'd be removed from the trust

and we would get them.  So, unless you have additional

questions, I -- we ask the --

THE COURT:  That you would, at that point, have the rights that you say you're entitled to.

MR. DOUGHERTY:  The trust though, in a sense, helps guarantee the possibility I think.

THE COURT:  It's an enhancement.  I don't dispute that.

MR. DOUGHERTY:  Okay.  And that's my understanding about that.

THE COURT:  And the Committee says there's a good reason for that, and you're saying the reason is not good enough to exclude your clients from that treatment?

MR. DOUGHERTY:  I really don't see the bases to treat people who are similarly situated in 2010 differently after the fact in this way, correct.

THE COURT:  All right.

MR. DOUGHERTY:  So we ask that the order we attached to the motion be entered, and thank you for listening to me.

THE COURT:  Thank you.

MR. BENDERNAGEL:  Your Honor, you asked some questions about what the debtor was doing in this regard, and I think it would be appropriate for us to talk before Mr. LeMay. I was thinking about talking after Mr. LeMay, but give him the last word at least --

THE COURT:  Well, he's a hard act to follow, you know.

          MR. BENDERNAGEL:  Well, now you're going to make me
sit down and do that, okay.  But first of all, I think it's
important, from the debtors' perspective, as to what happened
in 2010.  In 2010, the Compensation Committee approved each of
these individuals, including the three that are at subject
here, to be provided a MIP payment.  They found that they had
provided benefits and they directed management to go forward
and make the motion, including those people, and recant to this
Courtroom intent on doing that.  Mr. Hartenstein was prepared
to testify not for the 635, but for the full 640.  There was an
objection filed right before the hearing, saying -- by the
Committee, saying wait a second, these guys have been
implicated by the Examiner.  There's some question as to
exactly how these three were implicated.  They're very rarely
mentioned, and they're not major players in the thing, and they
had included, in the Committee's Complaint, allegations which
you pointed out.  We decided, at that juncture, to move forward
with the 635, include the five, to decide, and you said good
decision.  But you made the point -- two points.  One was this
was without prejudice to their coming back at a later point in
time if, in fact, it turned out that these allegation, which
you pointed out were simply allegations, didn't turn out to be
true.  And how we read that was basically the statement that
these guys aren't getting paid now.  But if, in fact, it turns
out these allegations aren't proofed up, they have the right to

come back and get payment now.  Now, there's been an

enhancement since then with respect to putting the dollars into

a Rabbi Trust, and the reason for that is there's going to be a

change in management which this Plan -- not a change in

management; there's going to be a change in ownership or it's

going to change.  And I think people wanted some surety that

these dollars are actually going to be put aside.  From the

perspective of the employees, the dollars belong to them and

they're being held up.  The company may have a slightly

different view or the company has that same view with respect

to that's how the MIP -- these Rabbi Trusts have been

established.  But the point that you made at the time was this

is without prejudice.  Now, the Committee has done something in

this motion that's very different than what you were just

talking to Mr. Dougherty.  They've basically said, since these

guys are no longer employed, they're not entitled to these

payments at some future point in time.

            THE COURT:  Well, they said they're not providing

any benefit to the estate.

            MR. BENDERNAGEL:  Right, yes, but they already

provided the benefit, and the fundamental fairness here is

these people worked hard for their thing.  There's no dispute

they were entitled to that benefit from a point of view of

whether they did the work and whether, in fact, the

Compensation Committee, in its judgment, concluded that they're

entitled to that money.  The question was this extraneous fact

with respect to these allegations.  Now, what they're

essentially saying, the Committee, is well, if those

allegations are proved not to be true, you're still not getting

paid because you're no longer part of our company.  And the

fact of the matter is the MIPs have never been structured that

way.  The MIP basically says that if you leave during the year,

you get a pro-rated amount.  If you leave after the first of

the year, you get the full amount.  With respect to these

fellows though, it's basically a statement that well, unless

you have continued to be employed, you're not going to get this

benefit and, potentially, you're not going to get paid down the

road even --

        THE COURT:  Wait a minute.  That's not up to the

Committee, is it?

        MR. BENDERNAGEL:  Well, no, but that's what the

Committee's position is now and that's --

        THE COURT:  But it's not up to them.

        MR. BENDERNAGEL:  No, no, and that's why we're

arguing this to you, not to the Committee.  And the -- and, you

know, I think the basic point of view is these fellows should

get the same protection that's been afforded to Mr. Bigelow and

Mr. Cason.

        THE COURT:  Do you think there's a risk of non-

payments here?

MR. BENDERNAGEL:  Who knows what's going to happen in the future, Your Honor, but they shouldn't have to bear that risk.  The company ought to put the money aside.  The company, also from a standpoint of --

THE COURT:  You're not saying the Plan isn't feasible are you?

MR. BENDERNAGLE:  Oh no, I'm not saying that, Your Honor.  What I'm saying is that, from a standpoint -- the Plan contemplates that they'll have $300 million in cash coming out, and the question is, does this money get financed out of that money or does it get financed out of existing -- the revenues that exist before emergence?  Now, the amount of money we're talking about here is relatively trivial, from a standpoint of the feasibility of this company or anything else.  I'm quite sure that's not true though, from the perspective of these individuals.  And it just seems to me that the deal was they could come back without prejudice and seek these dollars.  And, as I read what's being said here, when they come back, even if they don't get this enhancement and they're not employed, the argument would be what have you done for me lately?  You haven't done anything.  You're not entitled to this MIP.  And that seems to me to be wrong, that they should be able to get these dollars.

THE COURT:  I don't disagree with you on that, Mr. Bendernagel.

MR. BENDERNAGEL:  And I -- you know, further, it
seems to me that they should have the same enhancements that
others had, because they did exactly the same thing in 2010 as
those others, and as a consequence, we support the motion.

THE COURT:  But the debtor hasn't asked for it.

MR. BENDERNAGEL:  What?

THE COURT:  But the debtor hasn't asked for it.

MR. BENDERNAGEL:  Well, we don't represent those
individuals, and that's a tricky situation here.  I mean, I'm
quite sure that some people -- and the debtor would like to
represent them, but those people got terminated without cause.
If it was up to them, they would still be with the company, and
if they were still with the company, we would've asked for it.

THE COURT:  All right.  Thank you.  Mr. LeMay?

MR. LEMAY:  Your Honor, David LeMay, for the
Official Committee of Unsecured Creditors again.  Normally,
when I come to a contested hearing, I try very hard to look at
what others have written and be in a position to respond based
on those written submissions.  I'm required, I guess, to
observe that Mr. Bendernagel, just having made a very eloquent
argument, didn't file any papers on this, and so I am put in
the position, which I don't like to be in, of responding on the
fly to a position that I was not aware was the debtor's
position.  But I'll do so and I will try to be brief.

First, Your Honor, there should be no thought and no

suggestion that there is any personalized animus by my client against these three former Officers, far from it.  We are making what I believe is purely a legal point and a very commonsensical legal point, based purely on the status of their employment, and that is the reason why the Committee did not object to the deferral and award into the Rabbi Trust of the bonuses to Messrs. Bigelow and Cason.  They are current employees.  The Committee can understand how some prospect of achieving their past year's bonus might cause them this very afternoon or next week to work harder, think better, do things for the company.  The three former employees are simply not susceptible of that.  They can do no further good for the company.  There's nothing more to be done.  Moreover, they were terminated.  Yes, without cause, that's certainly true.  They received severance packages and they received consulting packages.  It is the case that those packages specifically, or determination agreements I should say, specifically reserve for them the right to seek these MIP payments.  So I'm not suggesting that the severance or consulting arrangements, in any way, foreclose them from making the motion that's being made.  But unlike, for example, Messrs. Bigelow and Cason, continued employees, they've actually gotten money, by virtue of their having severed their relationship with the company, and they've gotten consulting agreements.  One would have thought that the company may have, to some extent, wrapped in

the list expectation of the MIP into the negotiation of those severance and consulting agreements.  I don't know if that happened or not.

          The point that I make -- really, I just want to make two simple points.  One, as I say, it is a legal distinction found in our common sense that the purpose of an incentive plan, and that is what this plan is called, is to create incentives, and no incentive can be created for a former employee.

          THE COURT:  Well, but let me ask you to pause there. As Mr. Bendernagel correctly points out, these were amounts determined to have been earned by these employees post-petition, which, but for the pending litigation, they would have been entitled to the immediate payment of, and I likely would have approved immediate payment of.  So I don't know, under these circumstances, what the difference is that they're now former employees.

          MR. LEMAY:  And let me try and address that.  That leads exactly to where I was going to go anyway.  I have in front of me, Your Honor, the Transcript of Proceedings that took place on November the 10th in 2010, when this issue came up.  Now, Mr. Dougherty, in his comments from the podium, said that these gentlemen had been deferred, and that's actually not factually correct.  There was an interesting colloquy, and it's at pages 20 and 21 of the transcript from that January 10th

hearing of 2010.  Your Honor will recall that I had raised a fuss about the inclusion of the five named executives in the MIP; a break was called; and Mr. Gold, of the Sidley Austin firm, came back and announced that, in order to get on with everyone else, these five individuals -- or I'm sorry; it's these five individuals, the company would not be going forward. Your Honor pressed Mr. Gold a little bit about that, because it was unclear whether there was deferral or elimination or what there was.  And Mr. Gold made a speech and Your Honor said, and I'm quoting, "Let me try to figure out what you just said to me."  There was some laughter.  And then Your Honor said, "Are you withdrawing the request that the five individuals who have been named as defendants be included in the MIP program that's been proposed?"  Mr. Gold:  "Yes, without prejudice for their consideration for payment at a later date."

        So the point is, Your Honor, that, as to these five individuals, the request was withdrawn, and I think that's different from a deferral.  There was no expectation created that they were, at that point, included in the MIP.  Now, the debtors have since come back with respect to two current employees and said let's contingently include them in the MIP that year.  The Committee assented to that because of its incentivizing function and knowing that the debtors want to have and keep good employees.  These three former Officers are simply in a different position altogether, and it's on that

basis entirely that we rest our objection.  It's not designed to be punitive.  It's not designed to persecute people.  It's simply to call it to Your Honor's attention what the Committee believes is an important legal distinction of the status between the two former Officers on the one hand -- sorry, the three former Officers on the one hand, and the two current ones on the other.

            THE COURT:  Thank you.

            MR. LEMAY:  And that's all I have, Your Honor.

            THE COURT:  All right.  Thank you.

            MR. LEMAY:  Thank you, Your Honor.

            MR. DOUGHERTY:  Are you going to take replies today?  I'll be quick.  Two points.  One, there is that colloquy in the transcript.  The next sentence -- this is George Dougherty again.  The next sentence that Mr. Gold said is, "Your Honor, presumably, as part of a plan of reorganization or, you know, after we regroup, frankly decide how we would like to proceed in that regard."  So it's a little bit unclear what happened.  I do know that the order, which is dated November 10th, 2010, on page 3, refers to these five participants as deferred participants, and that seems to be consistent with what I said and inconsistent with what Mr. LeMay just said.

            The only other point I guess I'd make is this idea that the benefit has to be into the future.  I don't see any case law that supports that.  If you look at the *Marcell* case

at page 317 that Mr. LeMay cited in his objection --

THE COURT:  Look, let me stop you there.  Either the benefit has been conferred at this point or it has not.

MR. DOUGHERTY:  Correct.

THE COURT:  You know, the timeframe for reviewing entitlement is in the past.

MR. DOUGHERTY:  Okay.  Thank you.

MR. BENDERNAGEL:  Your Honor, just two points.  One is, in that colloquy, you said without prejudice, and as I understand without prejudice, that means that the only open issue is this exoneration issue, not some additional contingent.  And given the way the MDL proceeding is going, it could be years before these issues are resolved.

Secondly, this assertion or suggestion that the consulting agreements somehow took this into account is just flat out wrong.  I mean the fact of the matter is that they -- this was carved out.  It would have been wrong for us to try to essentially pad the amounts to take that into account, and we didn't do that.  And furthermore, those agreements were run by the Committee and the Committee didn't come back and say whoa, wait a second; there's a carve-out here, but you've sort of tipped the scale.  And to come in here and now suggest that's the case, in summary, is just wrong.  I mean the fact of the matter is that these individuals -- and what the Committee said, was that these guys -- it's not just the enhancement,

because they're no longer employed.  They're not going to get these dollars even though they worked for it and even if they're exonerated, and that's just wrong.  Thank you.

            THE COURT:  Well, so I guess one way to characterize part of the Committee's objection is -- or to view it, is based upon how broad without prejudice means.  Does it mean not only the ability of these applicants to come back and ask for payment, or in this case, set aside, or is it broad enough to mean that, if there's an objection that can be raised, since no discussion was had at the time about these individuals, can a further objection be made by whoever owns the company at that point?

            MR. BENDERNAGEL:  May I comment on that?

            THE COURT:  Certainly.

            MR. BENDERNAGEL:  The reality is there was an objection raised, one objection, and that was their inclusion. If they wanted to raise an objection that somehow these people hadn't earned the thing, they had the right to do that and we would have litigated that issue at the time.  They didn't raise that objection.  They raised that one thing.  Without prejudice means that you can come back and you'll be similarly situated to where you are today, which there are no objections.  The only objection is this issue, and there's a statement by Mr. LeMay, and I can get it for you if you want me to quote it, but to paraphrase it, it basically said if these guys didn't have

this clout hanging over, they wouldn't be objected and that, as a consequence, they ought to be paid.

THE COURT:  This is all from that November 2010 hearing?

MR. BENDERNAGEL:  Yes, it is, Your Honor.

THE COURT:  What's the date?

MR. BENDERNAGEL:  It's November 8th.

THE COURT:  Okay.  Supply me --

MR. BENDERNAGEL:  It's November 10th; I'm sorry.

THE COURT:  Okay.  Supply me, if you would, with a copy of at least the relevant portion of the transcript.  I want to -- I do want to take a look at it before I make a decision on this.

MR. BENDERNAGEL:  Do you want to see it right now?  I can hand it up to you if you'd like?  Okay.

THE COURT:  I have other things to do right now.

MR. BENDERNAGEL:  All right.  Thank you, Your Honor.

THE COURT:  But thank you.  All right.  I'll take the matter under advisement.  What's next?

MR. KANSA:  Your Honor, Ken Kansa, on behalf of Sidley Austin, on behalf of the debtors.  I believe that brings us to the debtors' objection to the claim of Robert Henke.

THE COURT:  Before we address that, can we skip to #18?

MR. KANSA:  This is the matter involving Mr. Berko,

Your Honor?

THE COURT:  That's correct.  Let me ask for the record, is Mr. Berko or anyone on his behalf either present in the Courtroom or on the telephone connection?

(No audible response)

THE COURT:  I hear no response.  Mr. Berko apparently has -- is under the impression that corresponding with the Court is appropriate, and I'll tell you what I do with respect to letters received, and we receive a number of them as you might imagine.  I generally don't review them, but when staff is uncertain what to do with a request and whether it should be treated as a motion or a request for relief, I'll make a decision about that.  Mr. Berko sent a letter asking that the Court appoint a lawyer on his behalf, and I set this for hearing so that I could explain to him that's not something within the purview of this Court, and so I will not do so, and I'll prepare my own order indicating that.  I hoped Mr. Berko would join me, so that I could convey this personally.

I will tell you also, by letter dated June 28th and received in Chambers on July 5th, Mr. Berko sent yet another letter, the tone of which is completely inappropriate.  By letter dated July 9th, copies of which will go to the debtor and to the U.S. Trustee, I've indicated that that communication, both in its nature and its tone, is inappropriate, and that's all I have to say about Mr. Berko.

          MR. KANSA:  Thank you, Your Honor.  The debtors, and

I believe I've heard from Mr. LeMay, the Committee did also

have communications with Mr. Berko, and I understand he was

provided with the details to participate telephonically in this

hearing.  So to the extent that there are claims -- that

whatever has resulted here as a result from ignoring him, that

certainly hasn't been the case on the part of the debtors nor

the Committee, nor I'm sure, the Court, Your Honor.

          THE COURT:  Okay.  Let's turn then to Mr. Henke.

          MR. KANSA:  Your Honor, with that, we turn to Item

17 on the agenda, the objection of the debtors to Mr. Henke's

claim.  I would note at the outset for the Court that Mr. Henke

is present here in Court today.  I also have with me Mr. Chad

Bowman, of the Levine Sullivan firm in Maryland in Washington,

D.C., who acts as the debtors' Special Counsel with respect to

this matter in Maryland and also acts as the debtors' Post-

Amendment and Media Counsel in that area generally.  Mr.

Bowman's pro hac motion was submitted I believe yesterday, and

the Court was kind enough to enter the order on that this

morning.  We thank you, Your Honor.

          THE COURT:  Okay.  Now, what -- tell me what I

should expect with respect to this hearing.

          MR. KANSA:  Your Honor, I propose to argue briefly

some of the elements of the debtors' objection.  I do not

expect to take very long to do that.  Mr. Henke has indicated

he would like to address the Court with respect to his
objection, and I would propose to turn the podium over, at the
conclusion of my presentation, to him.  The Committee has filed
a joinder with respect to the debtors' objection.  I understand
from Mr. LeMay that he does not intend to address the Court on
the objection, unless the Court has particular questions for
the Committee.  The debtors do not intend, obviously, for an
evidentiary hearing or for the presentation of anything other
than the argument, Your Honor.

      THE COURT:  All right.  Let's take a five-minute
recess; then we'll take up the Henke matter.

      MR. KANSA:  Thank you, Your Honor.

      (Court recess from 10:59 a.m. to 11:07 a.m.)

      THE CLERK:  All rise.

      MR. KANSA:  Good morning again, Your Honor.  Ken
Kansa, of Sidley Austin, on behalf of the debtors.  We are on
agenda Item #17, which is the debtors' objection to the claim
of Mr. Robert Henke.

      THE COURT:  All right.  Mr. Kansa, may I just ask
Mr. Henke to stand up and identify himself?  Welcome, sir.

      MR. HENKE:  Thank you, Your Honor.

      THE COURT:  All right.

      MR. KANSA:  Your Honor, as the Court will be aware
from the papers, Mr. Henke's claim is a $100 million face
amount claim that alleges defamation on the part of the

Baltimore Sun newspaper for an article that was written about

Mr. Henke in October of 2007.  The debtors are bringing the

objection to Mr. Henke's claim now before the Court after

initially objecting to the claim two years ago, and having had

two years of discussions with Mr. Henke that have, regrettably,

not brought the parties closer to a consensual resolution with

respect to the claim.  The objection has resulted in several

voluminous filings with the Court on both sides.  And for ease

of the Court's reference, I would ask the Court to direct its

attention to the debtors' supplemental objection to Mr. Henke's

claim that we filed on June 11th of this year at

Docket No. 11792.  The supplemental objection is the most

recent and comprehensive statement of the debtors' objection to

Mr. Henke's claim.

          In brief, our objection to Mr. Henke's claim has two

components.  The first is procedural.  Mr. Henke has no valid

claim under Maryland law, which is the governing law here,

because Mr. Henke did not actually file his defamation

complaint within the one-year statute of limitations for a

defamation complaint prescribed by Maryland law.

          THE COURT:  Now, as I understand it, although Mr.

Henke says he made a filing timely, it was rejected so that,

ultimately, a filing now appears but it was after the one-year

statute, so there seems to be an agreement that no filing was

acknowledged anyway until passage of the one-year statute on

defamation.

MR. KANSA:  That is correct, Your Honor.  The --
there was no filing that was accepted by the Maryland Court
within that one-year period.  Mr. Henke will obviously speak
his piece as to what he did and when, and he has various
allegations but the -- I think there is agreement on that
point.

THE COURT:  I've read them.

MR. KANSA:  Your Honor, I would -- that allows us to
move quickly on, unless Your Honor has any questions --

THE COURT:  Well --

MR. KANSA:  -- on that procedural element.

THE COURT:  You said two bases; one was the statute
of limitations; the other is --

MR. KANSA:  There --

THE COURT:  You have a merits objection.

MR. KANSA:  There is a second objection on the
merits as well, Your Honor, and it comes down to the
requirement that, even if Mr. Henke's claim were deemed to be
timely filed, it fails as a claim for defamation.  To sustain a
defamation claim in Maryland, a claimant must allege, and at
this stage at least be able to credibly assert, four things:
that the defendant made a defamatory statement to a third
party; that that statement was false; that the defendant was
legally at fault in making the statement; and that the

plaintiff suffered harm as a result of that statement.  In his

original $100 million complaint, and in his Proof of Claim for

the same amount, Mr. Henke identified no false or defamatory

statements that were made by the Baltimore Sun at all.  Rather,

he simply submitted that a campaign had existed against him for

approximately 20 years and that the campaign had caused him

immeasurable harm before the article was written, and that the

article, in turn, did not improve the circumstances in which he

found himself at the time the article was written.  But there

was nothing he pointed to in there that said this statement or

that was false or defamed me, let alone caused any harm.  And

the debtors originally objected on the grounds that none of the

four factors that were required to sustain a defamation claim

in Maryland had been satisfied by Mr. Henke.

          Mr. Henke, more recently, has filed a supplement to

his claim as part of his response to the debtors' supplemental

objection.  And in that proposed Amended Complaint, Mr. Henke

does identify statements that he alleges are both defamatory

and false, and it goes through quite a few of them.  But the

allegations in there, Your Honor -- and I don't propose to go

through every one of the statements.  The allegations in there

I think can be fairly summed as stating that Mr. Henke believes

a statement is either defamatory, false, or both, if he

disagrees with the statement or if it is not the statement set

out in the article in the way that Mr. Henke would have set it

out.  And one example in there, Your Honor, is where the article states that Mr. Henke left the Air Force through a "self-initiated elimination".  Mr. Henke cites that as a false and defamatory statement, and then in the following sentence, admits that he "did leave the Air Force through a self-initiated elimination."  He simply disagrees with the context in which that has been presented or that it doesn't say enough about the circumstances of this fact or that to satisfy him.  That is maybe cause for him to disagree with the editorial content of the article.  What it does not rise to is a statement that is, in any sense of the word, false, and that is a -- one example of where Mr. Henke comes up short of that standard.  But rather than go through each of those statements, which we can do either here or through supplemental briefing, I'd submit there's a more fundamental problem with Mr. Henke's claim, and that is that there is simply no credible demonstration of damages resulting from anything in the article.  Mr. Henke, as the Court is aware, has put a $100 million figure on his damages in both the Complaint and the Proof of Claim.  There is simply no support for that figure in the papers.  There is no credible basis for anything that he is saying, either a direct or a supposed harm.  He has set forth, in great detail, in his papers a campaign that he believes existed against him for roughly 20 years before the article was published.  He alleges that that campaign, among

many other things, disrupted his family's ability to function,

cost his family its home, caused, directly or indirectly, his

younger son to have juvenile difficulties, caused him to be

unable to obtain employment, so on and so forth.  What nothing

in there alleges, nor could allege, is that the article caused

any of that harm.  By Mr. Henke's admission, all of that had

occurred before the article was even published.  It is the fact

that the article failed to provide an appropriate redress, in

his view, for his circumstances at the time it was published

that gives rise to his claims, and that, Your Honor, is simply

-- cannot credibly be the basis for a claim.  There is no duty,

either pointed to by Mr. Henke or in logic, for a newspaper to

provide a benefit to the subject of one of its articles, much

less a basis for damages if whatever that subject supposes that

benefit ought to be is not delivered.  There is certainly

nothing that could cause one, even if one could impose that

duty out of whole cloth, to say yes, in fact, there's a basis

for a $100 million claim here.

There are points in his papers where Mr. Henke

attempts to allege a more direct harm, for example, claiming

that the article either interfered with his reputation or

interfered with his job prospects.  But in all cases, all of

that is entirely speculative.  Mr. Henke has simply stated

that, because a certain event did not occur after the article

was published, and even though that was a continuation of the

circumstances in which he found himself before the article was published, it must have been the article that caused whatever it was after the date of publication not to occur.

Your Honor, that's a -- both not credible and in its way a classic post-hoc fallacy.  The article is simply never credibly alleged to have had anything to do with any harm that may have been suffered by Mr. Henke.

THE COURT:  To respond to the one-year issue, and I know the debtor addresses this in its submissions, Mr. Henke says, you know, there was fraud here, and that's a three-year statute.  One of the questions I have, and I'll ask Mr. Henke the same question most likely, is if it's a three-year statute and the article appeared on October 7th of 2007, has that not passed as well, or is there something in the Bankruptcy Code which saves it?

MR. KANSA:  Your Honor --

THE COURT:  Section 108 or something else?

MR. KANSA:  Your Honor, I don't think it would be saved and -- by 108.  The fraud allegation is, if you will, a brand new allegation, and Mr. Henke alludes in one of his papers to his evolving understanding.  There are two reasons why the fraud -- there's one why it falls out of time, and I think there's one why it is substantively erroneous.

The reason it falls out of time is the fraud allegation is nowhere contained in Mr. Henke's Proof of Claim

that needed to be filed by the bar date in these cases.  He

attached is his one-and-a-half-page letter that was apparently

intended to suffice as the original Complaint, but that letter,

which was the subject of the action he attempted to commence in

Maryland, makes no allegation of fraud, does not plead fraud,

let alone with any requisite specificity; and Weebee says

nothing about fraud.

The more substantive reason why I think Mr. Henke's

fraud claim also fails is the -- repackaging defamation as

fraud is, as I understand matters, a classic no-no in the law

of defamation.  You cannot simply evade a statute of

limitation, which is there for good reason, and we go into this

in the reply we submitted.  You cannot simply evade that

statute of limitation by repackaging an allegation as one of

fraud, even if there was something out of which the Baltimore

Sun could have defrauded or some damages that could have

resulted to Mr. Henke from the fraud, which there were none.

So that's a long way of saying that, in both procedural and

substantive elements, I think the fraud claim fails, Your

Honor.

THE COURT:  All right.  Do you have anything

further?

MR. KANSA:  No, Your Honor, I -- that is all I have

to address and I'll turn the podium over to Mr. Henke unless

others wish to speak.

THE COURT:  Well, let me do this.  Since the
Committee joined, let me hear from -- if the Committee wishes
to be heard at all first, and then the debtor, and then I'll go
to Mr. Henke.

MR. KANSA:  Thank you, Your Honor.

MR. LEMAY:  Your Honor, David LeMay, from
Chadbourne & Parke, for the Committee.  As Mr. Kansa said, the
Committee joins in the objection and in the argument.  I have
no independent presentation to make, unless Your Honor wishes
to ask me questions.

THE COURT:  Okay.  Then I'll turn to Mr. Henke.  Mr.
Henke, if you'd come up to the podium please, sir.  Good
morning.

MR. HENKE:  Thank you.  Thank you, Your Honor.

THE COURT:  Let me, just before you begin, frame the
process for you.

MR. HENKE:  Okay.

THE COURT:  You're free to argue in opposition to
the claim objection in any way that you wish.  To the extent
you want to tell the Court facts that may be in dispute, you
will need to be sworn in, and the debtor will have the
opportunity to cross-examine you.  So you tell me what your
intention is, in terms of what you'd like to tell me today.

MR. HENKE:  Well, I would -- basically, what I'd
like to do is echo the -- my reply to debtors' supplemental

objection.  It's going to just be a restatement of what I stated in the reply basically.

THE COURT:  Why don't you begin, and if I think it's necessary to swear you in, we will do that.

MR. HENKE:  Okay.  Thank you.

THE COURT:  Okay?

MR. HENKE:  Your Honor, let me repeat.  My name is Robert Henke.  I'm a claimant, and I'm going to be reading most of my material.  I thank the Court for giving me the opportunity to argue the merits of my claim.  I'm not an attorney, and I apologize for any missteps to which that's going to give rise.  I will speak in first person.  In this hearing, what I'd like to do is present my reply to the supplemental objection by the debtors to an amended claim that I submitted to the Bankruptcy Court recently.  And toward this end, what I'd like to do is I'd like to first provide a background summary; then I'd like to summarize the supplemental objection, as I see it, and my response to that objection; and thereafter, I'll provide details of these and a conclusion, and for brevity, I'll only address main points.

Okay.  Let me go ahead and go into the background summary first, because I would like to address the fraud charges.  Background summary.

THE COURT:  Is the Court call operator on the line?

OPERATOR:  Yes, Your Honor, I muted the line on this

end.

THE COURT:  Thank you.  All right, Mr. Henke, you may proceed.

MR. HENKE:  Okay.  Thank you.  Background summary. My amended claim is an amended legal Complaint, and it is to fully replace the original Complaint of mine.  With the original Complaint, I filed a pro se lawsuit in the Circuit Court of Baltimore City.  The defendants are a newspaper publisher, Baltimore Sun Company and a Sun Reporter.  I allege that The Sun prominently published a material fabrication authored by the Reporter in a two-and-a-half page front page Sunday, October 7th, 2007 article, The Article, that defamed me falsely.  I also allege that The Sun gained my and my family's cooperation towards the article to our harm, through deceitful misrepresentation.  The facts and reason I suggest, 1) that The Sun defamed me falsely to protect two decades of possible official and professional misconduct that targeted me, my wife, and our firm, The Firm; and 2) that The Sun took part in that misconduct.  I contend that the misconduct methodically brought me, the firm, and my family to a state of ruin.  I originally sought monetary relief of $100 million, and I do seek non-monetary relief for harms brought about by the article.  In settlement discussions, I made a greatly reduced but still substantial counteroffer.  Okay.  That completes background.

Before I provide summaries of the positions of the

parties, because debtors raised my allegations of deceitful misrepresentations in their arguments, I would like to address one issue of the debtors' July 6th, 2012 addition to the supplemental objection.  Late Friday, July 6th, a mere four days before this hearing, I received from the debtors an addition to the supplemental objection.  The addition addresses my allegations of deceitful misrepresentation.  Debtors had not addressed this matter in the supplemental objection.  The addition is standard.  You can't get around that.  In the time available, I was only able to address one straightforward addition, especially since, in contrast to the past, debtors did not provide instructions with the addition.  I am left puzzled as to how the addition is to be handled by the Court.

        Anyway, here's the issue.  Debtors claim that Mr. Henke, and this is a quote, "Mr. Henke now alleges The Sun committed fraud, because it allegedly made a number of misrepresentations to him and to his family, which induced him and them to cooperate with The Sun and provide information for the article, and in short, Mr. Henke's attempt to avoid the statutes of limitation for defamation by recasting his Complaint is one of fraud."  I contest these claims.  The allegation of deceitful misrepresentation is nothing new, and it has been well within debtors' view since the receipt of my original Complaint.  In my original Complaint, I allege that The Sun gained my family's cooperation through false pretenses.

That's a quote.  That's my October 3rd, 2008 original claim --
Complaint.  In my original April 7th -- and in my original
April 7th, 2010 reply to debtors' original objection to my
Complaint -- to my claim, I put forth three example draft
amendments to the original Complaint.  Two of these examples
were of defamatory statements.  One was an example of which
I'll refer to as -- that was the two, and the one was an
example of what I'll refer to as deceit with intent to harm.
Why I did not use the term deceitful misrepresentation is I
have not yet progressed to that stage of knowledge.  It is
unmistakable that I was putting forth the elements of a
deceitful misrepresentation allegation.  That's clear from the
text.

        Furthermore, the Amended Complaint was entirely
consistent in putting forth its counts of deceitful
misrepresentation.  It put forth 11 counts of false defamation
and 5 counts of deceitful misrepresentation.  The balance is
roughly the same as the 2:1 proportion of draft amendments in
my original reply to the debtors' original objection.

        What's more, this is entirely consistent with my
mindset before I ever filed my Complaint.  For example, in a
July 15th, 2008 letter by which I approached an attorney in my
search for representation for a lawsuit against The Sun, I
wrote, "I am writing in search of representation in a matter
involving the possibility of defamation by a newspaper, The

Baltimore Sun, and perhaps fraud." And then in the later paragraph, the second paragraph, I write, "Regarding the possibility of fraud, my family and I cooperated with The Sun on the article only because of what appear to have been false pretenses." So that's well before even the first Complaint was filed. Fraud was definitely on my mind. It's not a new charge.

Okay. So that's sort of a disruption to my talk, but now what I'd like to do is go into a summary of how I see what the -- you know, how I see the debtors' objection and a summary of my own reply. As I see it, with their supplemental objection, debtors argue that my claims should be disallowed. They put forth three reasons: 1) I violated the statute of limitations for the defamation Complaint that underlies my claims; 2) in the Amended Complaint, I failed to state a claim on which relief can be granted; and 3) in the Amended Complaint, I did not justify the monetary relief I sought with my lawsuit.

In reply, I argue that my Complaint should be allowed. I'll argue that 1) I did not violate the statute of limitations in submitting the original Complaint; 2) in the Amended Complaint, I put forth a large number of claims on which relief can be granted; and 3) the monetary relief I sought with the lawsuit is entirely consistent with the totality of the relevant circumstances. Okay. That completes

my summaries.

Now, on to details, first, the possibility of a
statute of limitations violation.  Turning first to the
possibility of a statute of limitations violation, in the
submission of the original Complaint, I put forth debtors and
my basic claims regarding that possibility.  Then I address the
submission of the original Complaint to the Circuit Court in a
period of time that followed.  Lastly, I address the year
preceding the submission of the Complaint.  Okay.  Basic
claims.  As to basic claims, debtors basically claim that, in
the submission of my original Complaint, I violated the
October 7th, 2008 statute of limitations expiration date for a
defamation complaint and also the December 8th, 2008 start date
for Tribune Company's bankruptcy case.  Debtors base these
claims on the apparent date on which the Circuit Court
registers the -- registered the Complaint in its system of
records, and that's January 12th, 2009.  I contend that the
Circuit Court received my Complaint on October 6th, 2008, and
so the submission did not violate the statute of limitations.

THE COURT:  Well, what legal basis do you have to
-- that the Court could use to agree with you that the earlier
date is the relevant date, for statute of limitations purposes?

MR. HENKE:  Well, that -- I was going to go into
that formally.

THE COURT:  Okay.

MR. HENKE:  Okay.  I should -- okay, I won't say this.  This doesn't need to be said.  Okay.  So, first let me provide a relevant history of the submission of the Complaint.  On October 3rd, 2008, I mailed my original Complaint to the Circuit Court with a --

THE COURT:  Okay.  Mr. Henke, there I'm going to stop you, because, based on, at least as I read the written submissions, I don't know if it's fair to say that the debtor necessarily disagrees with what you said about your attempted filing, but I don't get the impression, from the submissions, that they agree that what you say is true.  So I'm going to take what you're about to say under oath, so I'll ask you to be -- remain there.

MR. HENKE:  Okay.

THE COURT:  And be sworn in, please.

MR. HENKE:  But I continue with what I was going to say.

THE COURT:  You will be able to do that.

MR. HENKE:  Oh, okay.

THE COURT:  But I'd like that under oath.

MR. HENKE:  Okay.

                    ROBERT HENKE SWORN

THE COURT:  All right, thanks.  You may resume.

MR. HENKE:  Okay.  So that didn't change anything other than --

THE COURT:  Well, it shouldn't.

MR. HENKE:  Okay.

THE COURT:  Other than you're now under oath.

(Laughter)

DIRECT TESTIMONY

MR. HENKE:  Okay.  Let me -- again, what I'm going to present to you is a relevant history of the submission of the Complaint.  On October 3rd, 2008, I mailed my original Complaint to the Circuit Court with a signature confirmation. On October 6th, the Circuit Court received and signed for the mailing.  With an October 11th, 2008 mailing, apparently a D. Bailey, of the Office of the Civil Division of the Circuit Court 1) informed me that I need to -- I needed to provide further information -- that is the names and addresses of those against whom I was filing my lawsuit -- and implied that I needed to pay the $105 filing fee with a money order instead of a personal check; and 2) D. Bailey returned to me the Complaint, or a copy, and it was seemingly stamped October 7th, 2008.  I had misstated this date as October 8th, 2008 previously because I misread the stamp.  I think I misread the stamp.  Anyway, I sent to the Circuit Court the needed information and a payment with an October 13th, 2008 letter.  The mailing was sent with signature confirmation.  On October 17th, 2008, the Circuit Court received and signed for the mailing.  I did not receive a reply from the Circuit Court.

Because the Circuit Court has signed for the October 13th

mailing I believed my Complaint was being processed normally.

I allowed one month for the processing and one month for

defendants to provide an Answer to the Complaint.  When by

December 18th, 2008 I had not received an Answer to my

Complaint, I telephoned the Circuit Court about the status of

the case.  I was told that there was no record of the case.

Apparently, the Circuit Court had misplaced my mailing.  To

correct the matter, I wrote a letter dated December 30th, 2008

-- this was trying to avoid the holiday -- to a Ms. B.L. Bowman

at the Office of the Civil Division of the Circuit Court to

inform her of my findings and to re-submit my Complaint.  The

mailing was sent by signature confirmation and on October -- I

mean on January 7th, 2009, the Circuit Court received and

signed for the mailing.  On February 4th, 2009, I received from

the Circuit Court a copy of the Complaint and copies of a Writ

of Summons and a Sheriff's Return for each of the two

defendants.  That's the relevant history.  Now, I'd like to go

into the arguments.

        First, the submission of the Complaint.  In support

of their claim of a statute of limitation violations, debtors

cite Maryland Rule 2-101.  It goes as follows:  A civil action

is commenced by filing a Complaint with a Court.  It appears

that the debtors interpreted filing a Complaint with a Court as

registering of a Complaint by the Court in its system of

records.  In my case, that appears to have been
January 12th, 2009, roughly three months after the October 7th
expiration date for the statute of limitations of my defamation
Complaint.  I became aware of this rule on October 2nd, 2008,
and I'll explain why that late later, and interpreted the rule
quite differently.  I interpreted the phrase filing a Complaint
with a Court as simply submitting a Complaint to a Court, as
opposed to Walmart or Sears or any other place.  That was the
filing system to which I had -- you know, that I was facing.
As my activities at times show, the statement did not imply to
me a two-step process in which, first, an individual files a
Complaint with a Court; and then second, the Court, in turn,
files the Complaint in its own system of records.  So I believe
I had filed my Complaint, at worst, on October 6th, 2008 when
it arrived at the Court.  I did not become aware of the
possibility of a statute of limitations violation until
March 23rd, 2010 when I received debtors' objection to my
original claim, and this is to my recollection.  My
interpretation of Maryland Rule 2-101 is strengthened by the
fact that the Rule, 1) does not warn of the need to allow for
the period of time between the receipt of a Complaint at the
Court and the introduction of the Complaint into the Court's
record system, and 2) it does not provide any idea as to what
the delay might be about or guidance as to how much time should
be allowed.  I believe it would have fallen on the Court to

provide this information if debtors' interpretation of Rule 2-101 hold.  In my particular case, had I been so informed, to ensure a timely filing, I would have personally delivered my Complaint to the Circuit Court; it's only a six -- it was only a six-hour drive, so that I could address any issues that I did not foresee without mailing exchanges.  In fact, I had considered driving it up, but I didn't.

And given the seemingly three possible dates of initiating a lawsuit, the date of the mailing of the Complaint, the date of the arrival of the Complaint at the Court, and the date of the filing of the Complaint within the Circuit Court records, I interpreted Rule 2-101 as referring to one of the two well-defined possibilities.  In contrast, I believe that the debtors' interpretation is the one date that has an obviously substantial drawback that ties the statute of limitations to a date of the day the Court files the Complaint in its record system seems fraught with uncertainty.  Such a date places the filing largely out of control of the plaintiff. My experiences show the potential consequences of that; it would appear to be unworkable to require one to allow for the uncertainty of the time needed for a Court to file a Complaint in its system of records.  Moreover, on October 2nd, 2008, I telephoned the Circuit Court to ask about various matters regarding the filing of the lawsuit.  My rough notes of the call suggest I asked about the date relevant to statute of

limitations.  The notes suggest the representative told me that the date was the arrival of the Complaint at the Court.

Now, regarding the possibility that I filed the Complaint on January 12th, 2009 after the debtors filed for bankruptcy protection December 8th, 2008, debtors state that the Complaint was filed in violation of the automatic stay.  It is void ab initio -- I don't know if I'm pronouncing that right -- under applicable bankruptcy law.  At the time, I had not received any notice of the Tribune Company's filing, nor had I received notice that all legal proceedings against the Tribune Company and its affiliates had been stayed.

THE COURT:  Well, I will tell you, Mr. Henke, that the law in this Circuit is clear --

MR. HENKE:  Uh-huh.

THE COURT:  -- that such a filing after the commencement of the bankruptcy is void ab initio.

MR. HENKE:  Okay.

THE COURT:  I don't -- that doesn't answer the question necessarily.  But on that point, I'm pretty firm.

MR. HENKE:  Uh-huh.  Once more, I believe my Complaint had been filed October 6th, 2008.  So that covers the submission Complaint.  Now, I'd like to turn to the period beyond the Complaint.

THE COURT:  Before you do, Mr. Henke, let me ask this.  Were you able to find anything in the decisional law in

Maryland interpreting that provision or addressing the situation in which a Complaint may have been received by the Clerk's Office but, for whatever reason, improper form of payment or other things missing, it was not taken as filed?  Do you have any case law which interprets that provision or addresses the situation in which the Clerk's Office might have turned something back because the requirements hadn't been met?

          MR. HENKE:  No, to be quite frank, I didn't know how to -- I was overwhelmed with looking at defamation.  I just didn't get to looking at it.  But then, on the other hand, I would have to argue that the debtors didn't bring up a case where they -- you know, where it was ruled against the plaintiff if they had done what I had done.

          THE COURT:  Well, under the law of this Circuit, ultimately, once, in the first instance, a valid objection has been raised to a claim, the ultimate burden of proving the validity of the claim rests with the claimant.

          MR. HENKE:  Um-hum.

          THE COURT:  So, while it's always helpful when somebody opposing the claim offers authority which may shed light on an issue, it's not required.  It's up to the claimant to carry the burden that the claim is valid.

          MR. HENKE:  Um-hum.

          THE COURT:  You may proceed.

          MR. HENKE:  Okay.  Regarding -- okay.  Now what I'd

like to do is speak of beyond the date of submission of the
Complaint.  Regarding that period, debtors make various claims
that I contest, and that's what I see as the main four.  First,
debtors claim the documentation submitted by Mr. Henke in
support of his initial response make clear that his letter was
not misplaced, but rather was rejected for failure to properly
identify the names and addresses of the punitive defendants.  I
do not see how a reading of any of the histories I've put forth
could possibly lead to a conclusion that my mailings to the
Circuit Court had not been misplaced.  I mean, I just don't see
how you come up with that conclusion.

        Moreover, I object to debtors' claim that the
Circuit Court had rejected my original Complaint.  The Circuit
Court simply informed me that I needed to provide more
information by the following note from D. Bailey.  You must
give us the names and addresses of the parties you are filing
suit against, so that the summit can be processed for service.
The Circuit Court did not say that I needed to change my
Complaint.  I provided the requested names and addresses
separately in my October 13th, 2008 letter.  I made no changes
to the Complaint, suggesting further that it had been accepted,
not rejected, by the Circuit Court.  I suspect the only reason
that the Circuit Court returned the Complaint to me was so that
I can include the requested information in the Complaint if I
wish.

THE COURT:  And what about the form of payment?

MR. HENKE:  Pardon?

THE COURT:  And what about the form of payment?

MR. HENKE:  Well, I had paid by a personal check.  I didn't know that you had to pay by money order.  I had paid by personal check and --

THE COURT:  But you -- were you required to provide a money order, instead of a personal check or did the Court --

MR. HENKE:  Well, I didn't know that but that apparently is the case.

THE COURT:  Okay.  And did you, in fact, do that?

MR. HENKE:  Yes, I did that.

THE COURT:  Okay.

MR. HENKE:  Yeah.  That's what I did with my October 13th letter.

THE COURT:  Understood.

MR. HENKE:  Second, debtors imply that I should have known that the Complaint would fall short on the counts cited.  Debtors state the proper identification of the parties is a simple threshold manner.  As it happened, I actually did provide the names of the defendants in the Complaint rather prominently.  The first sentence of the Complaint states, "Herein I, Robert Henke, present a Complaint I have against a newspaper, The Baltimore Sun, The Sun, and The Sun reporter. Mr. Gadi Dechter."  I also provided the address of The Sun with

respect to a publisher, not quite as prominent, but --

Third, debtors state that in the October 13th, 2008 letter to the Circuit Court, Mr. Henke acknowledged that his prior submission had not been accepted by the Court. This is incorrect. The first sentence of the letter reads, "I'm writing to provide the information requested of me in a form dated October 8th, 2008. The information is needed to allow you to begin processing the subject Complaint." I've never conceded that the Court rejected the Complaint.

Fourth, debtors claim that the defect was not corrected by Mr. Henke for more than three months. This is not a faithful representation of the circumstances. As implied by any of my histories, in principle, I corrected the matter within the first two weeks after submission of the Complaint. The Circuit Court signed for my corrective letter dated October 3rd, 2008 on October 17th, 2008. I then waited for an Answer to my Complaint from defendants. For this, I allowed one month for processing by the Circuit Court and one month for defendants to provide their Answer. Not having received an Answer after two months I allowed, on December 18th, 2008, I telephoned the Circuit Court to ask about the status of my case. I was informed that the Circuit Court had no record of the case. I re-submitted my Complaint with a December 30th, 2008 letter. I timed the mailing to avoid the holiday. The Circuit Court signed for the mailing on

January 7th, 2009.  That started the processing of my original Complaint.

Okay.  That completes my coverage of the period of time after the submission of the Complaint.  Now, I turn to the year prior to the submission.  Regarding that period, debtors make various claims and implications to which I take exception. Essentially, debtors imply I knew at the time of the publication of the article that I had a year to submit a defamation claim Complaint; implied that I recklessly waited until three days prior to the expiration of the statute of limitations to mail my Complaint; and did not retain an attorney to represent me.  The history of the matter which follows provides a very different view.  As to that history, the article was published on October 7th, 2007.  At that time though, while greatly unsettled by the article, I had not begun to absorb what the article truly was.  This is evident from emails I sent to the reporter of the article regarding my initial thoughts on the article.  Basically, while I was suspect of The Sun, and now it stands from past history, overall, I held The Sun in high esteem.  It was beyond my immediate grasp to consider that The Sun might have intentionally published untruths.  I only gradually came to suspect that The Sun might not have published a sincere article.  My building suspicions moved me to carry out a painstaking, sentence-by-sentence analysis of the article.  It

was not until February 4th, 2008 that I came to conclude that
The Sun's article was a fabrication.  On my finding, I began a
consuming nationwide search for pro bono representation for a
lawsuit against The Sun.  Ultimately, I sent out 39 substantial
mailings.  At first though, my concerns were not precisely
aimed.  I did not have any kind of understanding as to what
defamation was or realized that I had been defamed.  It was not
until July 3rd, 2008 that I started using the term defamatory
fabrication into letters by which I sought representation.
From the responses to my mailings, I found that I needed to
consider statute of limitations.  On July 2nd, 2008, I obtained
a list of statute of limitations for the State of Maryland.
However, even then, I had only the shallowest understanding of
the meaning of statute of limitations, as I did not know the
basic mechanics of filing a lawsuit.  Plus, I did not give
statute of limitations much attention, as I wasn't thinking
that I would be filing my own lawsuit.  Given the
circumstances, I felt that I would be able to attract
representation.  But as it happened, though various attorneys
were encouraging, I was unsuccessful in attracting
representation.  On September 25th, 2008, I had all but
conceded failure, and in my diary, I wrote no word from
attorneys.  I am particularly surprised with X, X, X, X.  I
guess the defamation suit is finished.  But with my family in a
state of ruin and the publication of the article, I came to

realize that for any hope of restoring well-being to my family, I would have to file a lawsuit on my own.  With the statute of limitations deadline for a defamation suit of October 7th looming, on October 2nd, I called -- I telephoned the Baltimore Circuit Court and asked various questions on how to file a lawsuit.  I also submitted a similar inquiry to Maryland law library at Maryland courts government, but I did not receive a reply.

According to my notes, records, and memories, very informally, representatives of Baltimore City Court told me roughly -- and they spoke very fast -- to give -- to just give your -- give my side of the story; write Complaint on the outside of the mailing, I think; if the amount sought is over $25,000, direct the Complaint to the Circuit Court; you should include a fee of $105; include a self-addressed envelope; identify to whom to send the Complaint; and I believe mail a copy of the Complaint to The Sun.  Additionally, my notes suggest that I was told that the date relevant to the statute of limitations was the date the Court received the Complaint.

So that completes the possibility of a statute of limitations violation.  But before going further, I would like to bring up a relevant side issue.  Regarding debtor's statement that Mr. Henke did not retain Counsel to represent him with respect to a lawsuit, especially in view of the history of the matters at hand, there are signs that The Sun

may have interfered with my substantial efforts to seek representation.  These are brought out in the Amended Complaint.  In view of the circumstances, I believe this not to be a small matter.  Obviously, I have been greatly handicapped without Counsel.  I'm not here by choice.  This is not my arena.  I plan to address --

THE COURT:  Very few come here by choice, Mr. Henke, I will tell you.

MR. HENKE:  True.  I plan to address this as a -- this matter as part of discovery during my case if it gets so far.  Now, on the second of the three issues in dispute, failure to state a claim on which relief can be granted, as to the main issue, debtors state -- and oh, on this issue, I address the main issue and other related issues, and let me first speak of the main issue.  As to the main issue, debtors state that even my Amended Complaint could not survive a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted; that the Henke claim is replete with conclusory statements not supported by facts, and at no point does Mr. Henke satisfy the four factors necessary to sustain a defamation claim.

THE COURT:  Mr. Henke, let me --

MR. HENKE:  Yeah.

THE COURT:  -- with apologies, ask you to pause for a moment.  I need to --

MR. HENKE:  Sure.

THE COURT:  -- take just a five-minute break.

MR. HENKE:  Sure.

THE COURT:  We'll resume right after.

MR. HENKE:  Okay.

THE COURT:  Court will stand in recess.

(Court recess from 11:56 a.m. to 12:03 p.m.)

THE COURT:  You may resume.

MR. HENKE:  Okay.  Thank you.  I appreciate your patience, by the way, on this.  Anyway, we're at failure to state a claim on which relief can be based, and I was going to address a main issue and then other related issues.  The main issue, the debtors state that even my Amended Complaint could not survive a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted; that the Henke claim is replete with conclusory statements not supported by any facts; at no point does Mr. Henke satisfy the four factors necessary to sustain a defamation Complaint.  Debtors did not address my counts of deceitful misrepresentation in the supplemental objection.  No, they did in their addition.  To my admittedly evolving understanding, debtors' claims seem quite incorrect.  In my Amended Complaint, I've put forth 11 counts of false defamation and 5 counts of deceitful misrepresentation.  And, for example, under each of the former, I addressed the four elements needed for a defamation claim; a published defamatory

statement, falsity, fault, and harm.  Specifically, I defined the nature of the false defamation in question; identified the false defamatory statements; stated the facts that represent the relevant truth; where needed, explained the defamation; and, where appropriate, brought out specific signs of actual malice.  I addressed harm and the general signs of actual malice separately.

Now, because the debtors did bring up the example of the Air Force discharge, which I did not bring up in my talk here, I would like to address that for a second, because I think my -- I differ with the debtors on that.  Let me just read what I wrote in my Amended Complaint.  I call this Count 4, False Defamation Due to Falsification of Air Force Discharge.  The Sun falsely represented plaintiff's discharge from the Air Force as less than honorable.  The Sun stated Henke had arranged for a self-initiated discharge from, and it was "self-initiated elimination" discharge from the Air Force.  He did leave the Air Force through a self-initiated elimination; however, he received an honorable discharge.  The Sun's phrasing, though, effectively disguised that, and that's my complaint about that.  It gives a false impression to the public that I did not receive an honorable discharge when I certainly did.  So that's just addressing that one point that they made.

Now, what I'd like to do -- continue is that debtors

put forth my request for monetary relief of $100 million as the main example of one of their claims.  It is unclear to me as to how the requested monetary relief relates to the subject at hand of failure to state a claim upon which relief can be granted.  I address the monetary relief under monetary relief. Debtors do cite an example of what they seem to see as what I believe to be a cause of action.  Debtors put forth an analysis of the example and conclude that the example provides no cause of action, and one is naturally left with the impression that I put forth no causes of action.  I object to debtors' representation of the example and corresponding analysis. Debtors' representation so misstates the Amended Complaint through omission that the example only serves to materially mislead.  Specifically, debtors state Mr. Henke takes issue with the article's statement that former colleagues of Mr. Henke's attributed the fact that he was professionally blacklisted to certain federal lawsuits that Mr. Henke has filed.  Mr. Henke does not allege that the sources were misquoted.  Rather, he alleges that the far more likely truth is that he committed professional suicide when he charged three students with plagiarism.  The fact that Mr. Henke happens to disagree with the personal opinions of third parties, which opinions the article accurately reported, is simply not actionable.  Well, the full relevant text of the Amended Complaint goes as follows:  Count 3, False Defamation Through

Concealment of the Possibility of Retaliation.  The Sun largely and actively -- this is what I wrote.  "The Sun largely and actively concealed the possibility plaintiff and Ms. Henke had been victims of a broad, calculated, and enduring retaliatory assault on their ability to succeed professionally, and so, in effect, falsely defamed plaintiff."  And then I cite some paragraphs and explain defamation and I provide two examples of concealment and possible retaliation.  First, second, now I go to the third, and that is what the debtors have cited.  The third example goes as follows:  "Third, The Sun did acknowledge the possibility of blacklisting, stating, privately, Henke's colleagues say that the lawsuits were tantamount to professional suicide; however, facts and reasons suggest that this statement simply to be further active and defamatory concealment on the part of The Sun of the far more likely truth that plaintiff committed professional suicide seven years earlier, when he charged three students with plagiarism."  And then there's a fourth and fifth example.

          Clearly, I'm not objecting to the opinions of third parties.  Rather, I am claiming The Sun defamed me falsely through the act of concealment of the possibility that I and my wife had been targets of a retaliatory assault on our ability to succeed professionally.  The paragraph that debtors cited did not embody a cause of action.  It was no more than the third example that I put forth in support of my claim of such

act of concealment.  This particular action shows The Sun's use
of a likely true statement but materially incomplete
representation to create a false and defamatory impression
regarding my circumstances.  Just as clearly, the relevant
issue of the cited example is the question of whether the
example provides partial support for a cause of action of false
defamation based on the possible act of concealment and the
possibility of retaliation against me, and on the basis of my
readings, I believe that the example may well provide such
support.

So those are 11 counts of false defamation and 5
counts of deceitful misrepresentation.  In essence, it seems
debtors did not put forth a single valid example in support of
their claim that my Amended Complaint could not survive a
Motion to Dismiss for Failure to State a Claim Upon Which
Relief Can Be Granted.  Okay.  That's the main issue.  Now, on
to -- under other related issues.

Debtors state claimant alleges a host of personal
and professional setbacks that he experienced over the course
of two decades.  Nearly all the setbacks pre-date the article,
but nothing that has happened to them is even credibly alleged
to relate to the article.  This cannot sustain even a prima
facie Complaint for defamation.

First, I do address, rather heavily, in the Amended
Complaint, harms that pre-date the article.  But clearly, I do

not do so with the claim that they were caused by an article;
that I do so, 1) because the harms are, for the most part, the
subject of the article; 2) because they provide relevant
background to the article; 3) because they bear on the harms
caused by The Sun's seeming obstruction of my progress towards
justice and relief for past harms; and 4) because many of The
Sun's false defamatory statements that I cite are intimately
related to the past harms, so I'm putting forth the facts
related to those statements I needed to cover the harms.

THE COURT:  And what specifically are the harms that
have been caused, you say, by the article and have been visited
upon you since the article was published?

MR. HENKE:  Well, the one -- see, I'll get to our
background and would tell you that, at the time that I
approached The Sun, which started the article basically -- at
the time I approached The Sun, I was seeking -- I was
aggressively seeking investigation of my circumstances, in
hopes of -- because I felt that my family had been brought to a
state of ruin by two decades of misconduct, and I felt an
investigation would bring that out and I would get redress for
those harms and would be able to restore well-being to my
family.  And anyway, one of the harms of the article, I
believe, is that it completely disabled my ability to attract
interest in such an investigation, because 1), you know, I
mean, it defamed me fatally; and 2) it concealed cause for

misconduct, both of which would discourage investigation.  I

mean, I was cast as an unsavory character, and there was no

apparent cause for any investigation, so why would anybody

investigate it?  That was one of the harms.

            The other -- the second harm --

            THE COURT:  Well, I -- you know, I read the article

--

            MR. HENKE:  Oh, okay.

            THE COURT:  -- as you might imagine.

            MR. HENKE:  Um-hum.

            THE COURT:  And I'm not sure it casts you as an

unsavory character; maybe more in the nature of an eccentric, I

think is a fair characterization, wouldn't you say?

            MR. HENKE:  I would argue with that.  I think when

you break it down, when you said, as a -- as I said, I did make

a sentence-by-sentence analysis and, you know --

            THE COURT:  Right.

            MR. HENKE:  -- just to -- I -- let me -- I was going

to state this later, but let's see.  This is what I would say

that the article described me as, if I can just find the page.

Okay.  I believe that the article described me as a -- as you

said, an eccentric, but one willing to harm his family in his

obsessive quest for scientific glory, less than honorable --

that goes to the Air Force discharge -- resentful,

unprofessional, reckless, profane, raving, hypocritical,

parasitic, uncooperative, Godless, an ill-intentioned parent, inept, greed-driven, opportunistic, rationally combative, flighty, unaccomplished, delusional, paranoid, and an unproductive eccentric.  That's what I believe the article said, and I believe that others are agreed with that.  One individual wrote a letter to the editor, and this is what he said.  This is what -- if I can find it.  Okay.  There's a letter to the editor October 9th, 2007, two days after the article, and the title was Soil Pioneer Leaves But a Shabby Legacy.  I was sad -- this is what the guy said.  I was sad after reading the story of Robert Henke and his soil probe, A Modern Day Ahab, October 7th.  Here's a gifted man whose brilliance is overshadowed by his selfishness.  It's too bad that Mr. Henke's legacy will be a shattered, dysfunctional family.  And then I add to that, the internet comments that I saw on the article put similar thoughts, but they were far less restrained, you know, saying, like, this guy really needs help and things like that.  And so, I believe there was very serious reputational harm.

          THE COURT:  All right.  Mr. Henke, how much more do you have, do you think?

          MR. HENKE:  About ten minutes.

          THE COURT:  All right.  Proceed.

          MR. HENKE:  Okay.  I appreciate your patience, you know.

THE COURT:  Okay.  Everybody's entitled to their day in Court, and this is yours.

MR. HENKE:  And I appreciate that, Your Honor. Well, let me tell you -- let me just go to the monetary relief sought with the lawsuit.  That's a big issue.  Regarding the amount sought, the $100 million, unsubstantiated and frivolous, debtors say, I disagree.  I do concede that the amount is eye-catching.  I believe, though, that from a punitive standpoint alone, the amount is entirely consistent with what I believe to be the totality of relevant circumstances.  So I would like to bring these out.

THE COURT:  Go ahead.

MR. HENKE:  Circumstances that, in sum, I believe to be consistent with a monetary relief of $100 million include the following: the fact that the article was The Sun's idea -- I didn't approach The Sun for an article; they proposed it -- the eminence of The Sun, that left me and my family unguarded; the facts that suggest The Sun's article came to being as a result of egregious, deceitfulness misrepresentation; the flagrancy, skill, and cunning of the falsity of The Sun's defamation of me and the level of failure of oversight that these imply.  The facts and reasoning suggest that the defamation was intended to protect the possibility of two decades of official and professional misconduct that targeted me, my wife, and our firm, and methodically brought our family

to a state of ruin.  The facts and reasoning that suggested The Sun may have taken part in that misconduct, possibly pivotally. The fact that The Sun's article attacked an entire family that was already suffering visibly and deeply, facts and reasoning suggest, as a result of that misconduct.  The facts and the reasoning suggest that The Sun knowingly published what it knew to be a fatal defamation of me, just after many years in decline, my professional prospects had taken a promising turn -- turns.  The facts and reasoning suggest that The Sun may not have been the sole driving force behind the defamation.  The facts and the reasoning suggest that The Sun may have additionally thwarted my progress toward justice by 1) withholding from me information that I sought with my 2006 approach to The Sun that I believe would have provided much insight into my circumstances and may well have brought relief, brought an end to my family's plight; 2) by being unresponsive regarding concerns I expressed over the article; and 3) by possibly interfering with my efforts to obtain representation for a lawsuit against The Sun.  And 11, the main success that I believe The Sun realized in inflicting deep and permanent harm on my family through its article, let alone its past conduct. I believe that The Sun's apparent self-protecting, calculated, and artful contribution to the destruction of an obviously vulnerable family, through its article and related conduct, stands out as reprehensible.  Okay.  That completes my coverage

of amount requested.

         And now I'd like to go to other issues, and these
include the harm or the possibility of denied redress, which we
briefly touched on and immediate harm.  So harm of the
possibility of denied redress.  Regarding the issue of the harm
of the possibility of denied redress, debtors seem to have
greatly misstated the amended claim on this issue.  Debtors
claim the Complaint makes clear that the harm for which Mr.
Henke seeks to recover $100 million are not causally connected
to the publication of the article, but that amount is instead
derived from Mr. Henke's belief that he's entitled to redress
for harms he allegedly suffered from being the target of
professional misconduct as part of Johns Hopkins University in
the decades prior to when the article was published; that is
debtors seem to claim that I am seeking recovery for a harm
that the article did not cause.

         I address only the main misstatement.  In my Amended
Complaint, I wrote, for example, summary of harm and remedies
sought.  Plaintiff seeks redress for what he believes to have
been the essence of the article.  A material defamatory
fabrication that came to being through a deceitful
misrepresentation and maliciously harmed his reputation to
protect two decades of official and professional misconduct
that had brought him and the firm and so his family to a state
of ruin unjustly and in which The Sun took part.  He believes

The Sun deliberately snuffed out the possibility his circumstances would be investigated to bury the truth of those circumstances.  This, he believes, denied him and his family long overdue justice and redress, leaving them in a state of deteriorating well-being, without hope for escape.  He also believes the article harmed their immediate well-being prospects and standing, so claimant seeks redress for both the redress he believes the article denied and for immediate harm.

Clearly, I'm seeking recovery only for harm that I believe the article did cause.  I allege the article and the possibility of denied redress are intimately linked.  Essentially, I allege that the article is a cover-up that ensure that I and my family would be denied justice, and so any redress for past unjust harms that might free us from our state of ruin.  Facts and reasons suggest that if The Sun had responded sincerely to my 2006 approach to The Sun, investigation of my circumstances and the substantial redress were to follow.  In view of the totality and coherence of The Sun's apparent efforts to thwart my progress toward justice and restoring well-being to my family, I believe The Sun has forfeited the benefit of the doubt.  These efforts, which complement the false defamation and deceitful representation, were brought out under amounts sought.  And I believe it to be difficult to dismiss the sum of these.

Plaintiffs also assert that the harms and I -- that

I and my family suffered before the article are not related to the article. I believe facts and reasons overwhelmingly suggest otherwise. I had brought out, for example, moderate detail in the Amended Complaint. Facts and reasons suggest that The Sun took part, possibly pivotally, in said misconduct that I believe brought me and my family to a state of ruin and that the article was intended to protect those engaged in the misconduct; that is facts and reasons suggest that the article is simply a continuation of the misconduct. Okay. That ends the topic of denied redress.

Now, the last topic, immediate harm. Regarding the possibility of immediate harm caused by the article, the debtors seem dismissive of that possibility. For example, regarding reputation, debtors seem to dispute the indisputable that, in an instant, The Sun undid the standing that I painstakingly gained over a period of 35 years. Debtors state Mr. Henke also cites a single letter to the editor of The Sun in support of his claim that the article caused harm to his reputation. I believe it to be glaringly evident that one need go no further than the article to detect substantial harm to reputation, and I pointed out what I felt, you know, the article said about me, so I won't go through that. But I would like to say that I do not believe that the former student of mine, who is quoted by The Sun as having said, here the claimant was one of my favorite professors, would feel so now.

Why would I suspect he would feel most uncomfortable in my presence as I would in his?  And debtors made equally light the signs of harm to my professional prospects.  These include the coincidental drop-off of Christmas cards of -- from my thesis advisor.  He's the closest tie to my profession and the loss of hard gain interest of a leading journal and my advice, a leading journal that had published my work heavily.  I believe that a reasonable person would find such signs to be enormously unsettling with respect to career prospects.

Moreover, debtors suggest that the reading of the article is needed for harm to professional prospects.  I do not believe that at all to be the case.  Rather, I believe that, in particular, members of my profession will have been exposed to the thrust of the article through word of mouth, as well as direct reading.  Members of the profession knew the article, at least five were interviewed for the article, and of those, at least three are leaders in the profession.  I suspect that at least one of the five read the article, and it was posted on the internet.  Especially with the profession being closely knit and human nature being what it is, it's not hard to see that the thrust of the article as having been circulated throughout the profession and with speed, and with that, there's little doubt my standing in the profession would have plummeted.  Regarding my thesis advisor, as I recall, two of the interviewees had been graduate students of his, and the

third was a close friend of his.  It is difficult for me to see the advisor as not having been aware of at least the thrust of the article.

As to allegations of knowledge of the contents of the article, I did not know that a Complaint -- that at the Complaint stage of the lawsuit that that level of specificity was required.  Additionally, regarding professional prospects, debtors fail to address that The Sun published its defamation of me when it knew a promising application of mine for a position with the Nuclear Regulatory Commission was under review.  The Nuclear Regulatory Commission is the only organization that had interviewed me formally during my multi-year search.  I was not offered a position with the NRC nor did the debtors address that my deteriorating financial state, among other things, kept me from meeting urgent needs of mine and my family -- educational, environmental, health, security, and the like -- leaving them deeply and irreversibly scarred. As it happened, this became an immensely serious matter that may well have been largely avoided had The Sun responded sincerely to my 2006 approach to The Sun.  So that represents the end of my arguments and brings me to a conclusion.

In conclusion, I respectfully request that the Bankruptcy Court deny the request of the supplemental objection, and allow progress towards justice to take place.  I find much fault with the debtors' supplemental objection to my

Complaint.  More specifically, I do not believe the debtors

argued 1) that I violated the statute of limitations for a

defamation complaint in the submission of my original

Complaint; 2) that in my Amended Complaint, I fail to put forth

a claim on which relief can be granted; and 3) that I did not

justify my request for monetary relief.  I greatly appreciate

the efforts of the Bankruptcy Court in reviewing the case and

this opportunity to present the case.

          THE COURT:  Thank you, sir.

          MR. HENKE:  Thank you.

          THE COURT:  Mr. Kansa, do you wish to cross-examine

Mr. Henke?

          MR. KANSA:  I would like to ask him just very few

questions, Your Honor.

          THE COURT:  All right.  Mr. Henke, if you would take

the witness stand.

          MR. HENKE:  What I'm just -- I don't know what I'm

getting into, but --

          THE COURT:  Well, take the stand, and I'll let you

know.

          MR. HENKE:  Okay.

          THE COURT:  Please be seated.  You are still under

oath.  As I indicated to you before you began to make some

factual assertions, those are matters of evidence to be taken

under oath, and with that, the debtor has the opportunity to

cross-examine you.  So listen to the questions.  If you

understand them, please answer them.  If you don't understand,

let Mr. Kansa know.

              MR. HENKE:  Okay.

              THE COURT:  Okay.

                    CROSS EXAMINATION

BY MR. KANSA:

Q     And Mr. Henke, I have just very few questions for you on

the subjects you touched on in your talk after you were put

under oath.  Do you recall after your Complaint was returned to

you in October of 2008?

A     Um-hum.

Q     Do you recall discussing that?

A     Discussing it?

Q     Do you recall saying that to the Court?

A     Oh, yes.  Yes.

Q     Did -- and you sent them -- you said you sent them a

letter on October 13th of 2008?

A     Yes.

Q     Did you re-submit your Complaint with that letter?

A     No, I thought they retained a copy of it.  See, I didn't

change it, and I thought -- you know, I -- it didn't occur to

me.  I don't know whether they sent me the original or a copy

of it, you know, so --

Q     Thank you, sir.  Do -- other than not hearing from the

Court after that date until January of 2009, do you have any reason beyond not hearing from them to think that your filing was misplaced?

A       Well, I thought my filing was -- could you repeat the question?  I'm --

Q       You said -- well, I'll try to phrase it a little more artfully.  Do you recall saying that from your sending a letter in October of 2008 to hearing from the Court in January of 2009 you had no communication with them?

A       Let me think about that.  Well, I mean, I called and, you know, I think my last communication was December 18th, when I called them up and asked about the status of my Complaint and they told me that they had no record of the Complaint.

Q       Okay.  Let me ask it this way, sir.  On -- after you sent your letter back on October 13th --

A       Right.

Q       -- of 2008, you -- do you recall saying that you waited a month --

A       No, two months.

Q       You waited one month for the Court to process the Complaint?

A       Right, um-hum.

Q       How did you determine that one-month date?

A       Well, I just guessed that that's what I would think the processing would take.

Q     And then how did you determine the second month date for the defendants to respond in your view?

A     If I recall from the Maryland Rules, they allow 30 days for an Answer, and so I think I associated that 30 days to -- equated that to the processing time as well probably.

Q     And at the end of those two months, it's then that you reached out to the Court?

A     Yes, I called the Court on December 18th.

Q     But during that two-month period, nothing happened to suggest to you that it was misplaced, other than the delay itself?

A     Right.

Q     Thank you, sir.

A     To my recollection.  You know, I'd have to look at my diary to confirm that, but that's to my best --

Q     That's fine.  Thank you, sir.  Do you recall -- turning to a different subject, do you recall filing a lawsuit against the National Science Foundation?

A     Yes.

Q     You were the plaintiff?

A     Plaintiff for that, yeah.

Q     You were the plaintiff in that lawsuit?

A     My wife and I were.  Our firm was, as I recall.

Q     Were you represented by Counsel in that lawsuit?

A     Yes.

Q     Did you contact that Counsel to possibly represent you in connection with this matter?

A     I contacted that attorney not so much for representation, but on advice of what to do; perhaps he could give me a reference.

Q     Okay.  Thank you, sir.

A     Sure.  So that was, I think, very late.

Q     Okay.  Thank you, sir.  I'd like to ask a couple of questions about the monetary harm we talked about and, in particular, the reputational harm.  Do you believe you had a high professional standing right before -- a high professional reputation, if you will, right before the article was written?

A     Yes, I do.  I had two publications in what I consider to be the leading journal, leading international journal on earthquake engineering.

Q     When were those publications, sir?

A     One was in 2002, and one was in 2003.  But also, I had been -- just before the publication of the article, I had been invited to review papers for that journal.  And also, I had been interviewed by the Nuclear Regulatory Commission, and they only select the top group to interview in their selection process.  So my -- as I said in my arguments, my standing, even though it had declined greatly, you know, throughout those lawsuits in what I believe to be in retaliation, it had been on the rise just before the article.

Q     And did the Nuclear Regulatory Commission, when they interviewed you, ever suggest that you were going to get the job with them or tell you they were going -- that you were going to get the job with them?

A     No, they did not, no.

Q     Okay.  And did they ever say why you didn't get the job?

A     No.  I just got the normal government reply to that.

Q     Thank you.  You mentioned the letter to the editor that was written in response to your article.  Do you know the person who wrote that letter?

A     No.

Q     And you said you saw a couple of internet comments posted as well.  Do you know who wrote those comments?

A     No, and I didn't think to copy them either at the time, because I -- you know, I didn't think I'd be sitting here in a Courtroom, charging defamation.

Q     Yes, sir.  I would ask --

A     But they were pretty ugly, I'd have to say.  They weren't kind.  That, I do recall.

Q     Internet comments often are.  If I may ask one final question.  Could you separate -- is it possible for you -- have you tried to separate the damage that occurred to you and your family before the date of publication of the article and the damage afterwards, or are they too intimately related in your thinking?

A     Well, I think they're intimately related.  I think that
the circumstances in which we were before the article made it
much more -- the harms after the article intensified them
greatly.

Q     Thank you, sir.

A     In other words, those harms probably wouldn't have been
as great if we hadn't suffered the earlier harms.

          MR. KANSA:  Thank you, sir.  Your Honor, I have no
further questions.

          THE COURT:  All right.  Thank you, sir.  You may
step down and re-take your seat at Counsel table, if you like.

          MR. HENKE:  Pardon?

          THE COURT:  You may re-take your seat at Counsel
table, if you like.  Okay.  Actually, Mr. Henke, I do have one
question for you.  You said, at the outset of your
presentation, that you had had little time to formulate a
response to the debtors' reply, which was filed on July 6th.
Would you like an additional period of time to make a written
submission, in response to that reply?

          MR. HENKE:  Yes.

          THE COURT:  How much time would you like, sir?

          MR. HENKE:  Well, it -- that's very difficult to
answer from my standpoint, because it brought up a lot of
cases, and that's difficult for me to, you know, read the cases
and understand what they're saying.

THE COURT:  Okay.

MR. HENKE:  Could I have two months?  Would that be asking for too much?

THE COURT:  Well, let me first ask if the debtor has any objection to that?

MR. KANSA:  Your Honor, just given the progress we hope we've heard that we're making here today towards confirmation and given the substantial dollar value on the claim, we would like to press this to a resolution in the relatively near term.  The reply is only, I think, five pages long, and the essential points of it, I think, are, even in light of Mr. Henke's pro se status, not particularly difficult to respond to.  They are legal argument, not factual, so I would ask for a somewhat-short period of time.

THE COURT:  Any specific suggestion?

MR. KANSA:  If we could -- if he could re-submit in, say, a week before the next omnibus hearing, which I believe is August 7.  If it's possible for him to submit say by the end of the month, I think we and the Court would have time to read it in advance of that hearing and come back.

THE COURT:  Mr. Henke, I'll give you 30 days to make a written submission from today.

MR. HENKE:  Okay.

THE COURT:  Okay?

MR. HENKE:  Thank you.  Thirty days from today.

THE COURT:  And I see no need for a further response
from the debtors on that, and I'll issue a decision in due
course.  I will just preliminarily give you a view about how,
at least as of this moment, I think I may approach the framing
of the issues that have been presented, and they center
initially around what I think are threshold question and that
is whether, under Maryland law, the attempted filing was
effective for purposes of statute of limitations purposes, both
for any defamation count and any fraud claims, and of course,
the -- there are issues related to effect of the automatic
stay, whether Section 108, or some other basis, provides a
basis for extending the statute of limitations.  And my further
examination of the debtors' argument about whether a so-called
repackaging of a defamation claim under the auspices of fraud
is permissible under Maryland law.  So those are the things I
think initially I intend to focus on.  I don't mean to limit my
inquiry, but I just thought I'd share that with the parties
before they left here today.  All right.  Thank you.

MR. HENKE:  Could I ask one question?

THE COURT:  Yes, you may.

MR. HENKE:  You had brought up the issue of -- that
it was my burden to bring out case histories as far as --

THE COURT: It's your burden to prove the validity of
your claim.

MR. HENKE:  Okay.  Can I -- is it still possible for

me to do that?

THE COURT:  If you'd like to include something by virtue of the submission that's due in 30 days, you may do so.

MR. HENKE:  Okay.  Thank you.

THE COURT:  All right.  Thank you, sir.

MR. HENKE:  Thank you.

THE COURT:  All right.  Let's return.  I think the only remaining items are the ones we brought up on status and confirmation.

MR. ZENSKY:  Right.  Good afternoon, Your Honor. For the record, David Zensky, Akin, Gump, Strauss, Hauer & Feld, for Aurelius Capital Management.  Mr. LeMay and I have conferred and have agreement with respect to the Court's language with two provisos that are agreeable between the parties and one additional one, where we've agreed to disagree, which I'll brief the Court on in a moment.

If I may, Your Honor, though, I would like to just respond to the approach the Court's taking to resolving this issue.  There is no doubt that the confirmation hearing was marked by intense disagreement between the parties over the sufficiency of the settlement and about the manner in which it was reached.  There was a lot of discovery sought by all parties, and there was discovery on both sides of the Court. Did not --

THE COURT:  Mr. Zensky, if you're going to reargue

the fact that you never did anything wrong and you never will,
don't.

          MR. ZENSKY:  I wasn't attempting to reargue, Your
Honor, but I really feel compelled to say that I don't believe
there's a basis to infer that there was ever any discovery
sought as a result of personal animus that --

          THE COURT:  I never said that.

          MR. ZENSKY:  I didn't think so, but it was argued by
the other side, and I want the record clear that I don't
believe there was ever any such discovery sought and that
there'd be a basis to perceive in the future that someone would
use -- request discovery for a reason that is not an
appropriate purpose.

          THE COURT:  I never suggested that.

          MR. ZENSKY:  Okay.  With that background, Your
Honor, the suggestion to have any dispute heard by the Court
hearing the litigation is, of course, acceptable to both sides.
In terms of the language that Your Honor submitted to the
parties, we had asked, and I believe Mr. LeMay is in agreement,
that the references to the Creditors' Committee or its
professionals should each be followed by the reference in such
capacity so that if there is a discovery request of a Committee
professional or a member of the Committee or the Committee, it
could be the Committee itself, but a number that is not based
on its having served on the Committee then that should not be

subject to this pre-approval requirement.

        The second point that is in agreement is that,
before running to Court, it would be appropriate to ask the
person from whom the discovery is sought if they'll consent to
the discovery.  I think that would be preferable all around, so
that we would add in to Your Honor's language, after the words
without first obtaining, before getting to leave from the
Court, we would add in without first obtaining the consent of
the person(s) from whom such discovery is sought, or barring
such consent, leave of the Court.  I believe that provision is
also acceptable to the Committee.  The one where we part
company on is that we would like it to say that such consent
would not be unreasonably withheld, not because it would give
rise to anyone's right to come back to you to say that it had
been unreasonably withheld or to argue that to Judge Pauley,
indeed, the only issue if consent is not provided, is the
discovery relevant or not relevant?  But the Committee argued
that if there was a need for the type of discovery that I
outlined in my argument on the day we had the phone conference,
that, of course, they would provide it.  If a document had to
be authenticated and the like, there was statements to you that
they would cooperate.  So no one wants to be subject to a
discovery request in the future, and if it is of the nature
that I described, and I believe the Committee agreed would be
appropriate, I would like the agreement to reflect that the

consent would not be unreasonably withheld.  And on that issue,
I believe Mr. LeMay parts company with me.  So unless the Court
has any questions of me, I'll cede the podium.

          THE COURT:  All right.

          MR. LEMAY:  Your Honor, David LeMay, from
Chadbourne & Parke, for the Creditors' Committee.  As a
threshold proposition, we were perfectly satisfied with what
Your Honor did, and I would have just said that's fine.  We
tried to accommodate Mr. Zensky's attempts to improve upon your
work, and he correctly reported the two of the three cases
where we agreed to his proposed inundations, if the Court finds
them okay.  The last one, he's right.  We are apart on building
in this not unreasonably withheld -- I'm sorry -- concept for
when somebody has to consent.  It seems to me to just be a
recipe for further quarrels, and it seems to me that if you've
got a binary outcome that either the person consents to
discovery; or b) it goes to Judge Pauley.  That will cause
everybody on all sides to behave reasonably and rationally.  So
we would respectfully request that that particular phrase that
Mr. Zensky asked not be included, and the other two are fine.

          THE COURT:  All right.  I agree with you, Mr. LeMay.
Now, Mr. Zensky, I would have personally been grateful for the
progress that you were able to make on this.  I could have
simply just overruled your objection, and I think you've
achieved much more than you would have otherwise.  But assuming

that the revisions come in as they've been agreed with respect to this provision, and to the extent Aurelius still objects to that, I will overrule the objection.

          MR. ZENSKY:  Understood, Your Honor.

          THE COURT:  Okay.  Now, the one other item, Mr. LeMay, you were going to help the Court with?

          MR. LEMAY:  Right.  Your Honor, David LeMay again, for the Creditors' Committee.  During the intervening time before we were last up here, we had occasion to look at Section 11.6.1 of the proposed Plan, to confer with the debtors, to review the papers that were filed in connection with the objection that the four former Officers filed, and also to review the transcripts.  I believe Your Honor is entirely correct.  There is no intention of the Plan Proponents to attempt to obliterate or eliminate these indemnities.  Simply, the Plan provides that, to the extent of post-petition conduct, the indemnity would be treated as a post-petition obligation. With respect to pre-petition conduct, it would simply not be obliterated; it would just be a pre-petition claim, subject to whatever defenses, merits, or demerits pre-petition claims have.  So I think Your Honor has read the matter exactly correctly.  I don't know if Counsel for the four Officers or Directors has a different view, but, from our point of view, the document should be entirely sufficient as it sits.

          THE COURT:  Well, I don't see Counsel present.

MR. SILVERMAN:  Your Honor --

THE COURT:  Oh.

MR. SILVERMAN:  -- if that was referring to me,
again, for the record, Jesse Silverman, for the four former
employees of the Orlando Sentinel.  I just -- I wanted to just
take a minute because the Court asked.  I believe the Court was
asking for some clarification about what Ms. Pappas' argument
was to the Court at the confirmation hearing, and I've had an
opportunity to confer with her offline, and I believe that the
argument was that -- I believe that the Plan appeared to be
treating the pre-petition claims of the -- of my clients, the
four former employees, differently than the identical pre-
petition indemnity claims of the Officers, Directors, and
employees who were, in fact, employed after the petition date.
Not to say that our clients, who were not employed after the
petition date, should be entitled to an administrative claim,
because, obviously, they did not perform post-petition work for
the debtor, and so they would not have the administrative
claims, but simply to point out that there was that difference
in treatment of identical pre-petition indemnity claims.  But
if the response, as I am understanding it, is that there is no
intent to disallow those pre-petition claims through this
section of the Plan, or any other section of the Plan, but to
simply, you know, treat them as an unsecured claim, subject to
any objection on the merits that the debtors might later raise,

then that's fine, and we are satisfied with that clarification.

            THE COURT:  Okay.  So would it be fair to say that the objection is withdrawn?

            MR. SILVERMAN:  Yes.

            THE COURT:  Okay.  That takes care of that.  Is there anything further for today?

            MR. BENDERNAGEL:  I don't believe so, Your Honor.

            THE COURT:  Thank you all very much.  That concludes this hearing.  The Court will stand adjourned.

            MR. BENDERNAGEL:  We'll get you that transcript cite that you asked for.

            THE COURT:  Thank you.

        (Whereupon at 12:52 p.m., the hearing was adjourned)


                         CERTIFICATION

            I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____              12 July 2012
Tammy Kelly, Transcriber                          Date
Diaz Data Services, LLC

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**100 million**(1) 53:19

**18th, 2008**(1) 66:5

**50-page**(1) 19:22

**7th, 2007**(1) 74:14

**8th, 2008**(1) 73:7

**a.m**(5) 1:15 12:1 49:13 49:13 78:7

**ability**(5) 45:7 54:1 81:5 81:22 83:23

**able**(9) 14:21 38:22 51:22 60:10 64:18 69:25 75:18 83:21 105:23

**about**(51) 14:7 17:12 17:25 18:12 19:4 21:9 21:21 21:24 22:6 22:22 24:23 25:16 26:17 28:4 31:23 32:4 32:11 32:14 34:8 34:20 34:22 38:13 42:2 42:7 45:10 47:13 47:25 50:1 53:8 56:7 59:22 64:9 64:12 66:6 67:24 68:23 68:25 72:1 72:3 73:21 79:21 85:22 90:22 95:10 95:12 97:9 97:9 101:3 101:13 102:21 107:7

**above-entitled**(1) 108:18

**absence**(1) 31:19

**absolutely**(1) 17:14

**absorb**(1) 74:16

**acceptable**(2) 103:17 104:11

**accepted**(3) 51:3 71:21 73:4

**access**(1) 14:19

**accommodate**(1) 105:9

**according**(2) 32:4 76:9

**account**(2) 44:15 44:18

**accurate**(1) 18:5

**accurately**(1) 80:23

**achieve**(1) 17:2

**achieved**(1) 105:25

**achieving**(1) 40:9

**acknowledge**(2) 21:15 81:10

**acknowledged**(2) 50:25 73:3

**across**(1) 16:10

**act**(6) 23:8 28:12 34:24 34:24 82:1 82:7 80:9 80:10 81:22 82:6

**action**(10) 30:24 31:7 56:4 66:22 80:7 80:9 80:10 81:22 82:6

**actionable**(1) 80:24

**active**(1) 81:14

**actively**(2) 81:2 81:3

**activities**(2) 22:2 67:10

**acts**(2) 48:15 48:16

**actual**(2) 79:5 79:6

**actually**(9) 28:19 33:6 33:7 36:7 40:22 41:23 50:18 72:20 99:14

**adam**(1) 2:12

**add**(4) 14:8 85:15 104:6 104:8

**added**(1) 19:1

**addition**(8) 60:3 60:6 60:6 60:9 60:11 60:12 60:13 78:20

**additional**(4) 33:24 44:11 99:18 102:15

**additionally**(3) 76:17 87:12 92:7

**address**(27) 21:12 22:10 28:14 41:18 46:23 49:1 49:5 56:24 58:20 58:22 60:2 60:10 63:6 63:8 68:5 72:25 77:6 77:9 77:14 78:12 78:18 79:10 80:5 82:24 88:17 92:8 92:14

**addressed**(3) 60:8 78:24 79:6

**addresses**(7) 55:9 60:6 65:14 70:6 71:7 71:16 71:19

**addressing**(2) 70:1 79:23

**adjourned**(2) 108:9 108:13

**adler**(1) 8:2

**administered**(1) 1:6

**administrative**(4) 16:17 17:7 107:16

**admission**(1) 54:6

**admits**(1) 53:5

**admittedly**(1) 78:20

**advance**(1) 100:20

**adversary**(1) 23:14

**advice**(2) 91:6 97:14

**advisement**(2) 17:25 46:19

**advisor**(4) 26:5 91:5 91:24 92:2

**affiliates**(1) 69:11

**afforded**(1) 37:22

**after**(31) 15:12 15:19 15:22 28:11 33:14 34:14 34:22 37:8 43:17 50:3 50:23 54:24 55:3 67:2 69:4 69:15 73:14 73:20 74:4 78:4 85:8 85:11 87:7 94:9 94:10 95:1 95:14 99:3 104:6 107:14 107:15

**afternoon**(2) 40:10 102:10

**afterwards**(1) 98:24

**again**(8) 31:1 31:1 39:16 43:15 49:15 65:6 106:7 107:4

**against**(13) 40:2 52:5 53:24 61:23 65:15 69:10 70:12 71:17 72:23 75:4 82:8 87:19 96:17

**agenda**(6) 12:5 12:14 14:6 20:12 48:11 49:17

**aggregated**(1) 17:1

**aggressively**(1) 83:17

**ago**(7) 12:19 29:18 30:15 30:20 31:10 32:10 33:13 33:14 50:4

**agree**(4) 18:12 63:21 64:11 105:21

**agreeable**(1) 102:14

**agreed**(8) 14:20 20:21 28:6 85:5 102:15 104:24 105:11 106:1

**agreement**(17) 3:29 5:45 12:14 17:19 18:21 19:15 27:23 28:4 28:17 28:21 29:10 50:24 51:6 102:13 103:19 104:2 104:25

**agreements**(5) 40:17 40:24 41:2 44:15 44:19

**ahab**(1) 85:12

**ahead**(4) 26:4 28:18 58:21 86:12

**aimed**(1) 75:6

**air**(8) 53:2 53:5 79:9 79:13 79:15 79:17 79:18 84:24

**akin**(4) 3:2 8:16 19:8 102:11

**alan**(1) 9:35

**alix**(1) 8:37

**all**(48) 14:22 16:18 17:2 17:16 19:19 23:6 24:22 31:12 33:11 34:15 35:2 39:14 43:9 43:10 46:3 46:17 46:18 47:25 49:10 49:14 49:19 49:22 52:4 54:6 54:22 54:22 56:21 56:23 57:3 59:2 64:23 69:10 75:21 82:20 85:20 85:23 91:12 93:15 99:10 101:18 102:5 102:7 102:22 104:5 104:5 105:18 105:21 108:8

**allegation**(8) 35:21 55:19 55:20 55:25 56:5 56:14 60:22 61:12

**allegations**(11) 35:16 35:22 35:25 37:2 37:4 51:6 52:20 52:21 60:1 60:7 92:4

**allege**(9) 51:21 54:5 54:20 59:9 59:13 60:24 80:18 89:10 89:12

**alleged**(2) 55:6 82:21

**allegedly**(2) 60:16 88:12

**alleges**(7) 49:25 52:18 53:25 54:5 60:15 80:19 82:18

**allinson**(1) 2:43

**allow**(5) 67:20 68:20 73:7 92:24 96:3

**allowance**(1) 16:19

**allowed**(7) 16:19 17:4 62:20 66:3 67:25 73:17 73:20

**allows**(1) 51:9

**alludes**(1) 55:20

**alone**(4) 52:11 56:6 86:9 87:21

**already**(2) 36:20 87:4

**also**(19) 17:13 32:23 38:4 47:19 48:2 48:13 48:16 56:9 59:13 63:13 72:25 76:6 89:5 89:25 90:17 97:17 97:19 104:11 106:12

**alston**(1) 10:7

**although**(4) 18:3 21:5 21:21 50:21

**altogether**(1) 42:25

**alvarez**(1) 6:43

**always**(1) 70:19

**amalgamated**(1) 9:34

**amanda**(1) 3:10

**amended**(22) 13:13 52:17 58:14 59:5 59:5 61:14 62:15 62:16 62:22 77:2 77:16 78:13 78:22 79:12 80:12 80:24 82:14 82:24 88:7 88:17 90:4 93:4

**amendment**(3) 21:3 28:9 48:17

**amendments**(2) 61:5 61:18

**america**(2) 6:16 6:22

**americas**(1) 2:26

**among**(3) 13:23 53:25 92:15

**amount**(11) 37:8 37:9 38:12 49:25 52:3 76:13 86:6 86:7 88:1 88:10

**amounts**(3) 41:11 44:18 89:23

**amsden**(2) 13:9 30:8

**analysis**(4) 74:25 80:7 80:11 84:16

**and**(301) 4:16 12:6 12:7 12:11 12:13 12:16 12:23 12:24 13:2 13:3 13:5 13:10 13:11 13:13 13:17 13:19 14:6 14:10 14:14 14:20 14:20 15:1 15:6 15:7 15:16 15:19 15:19 16:22 16:23 17:8 17:13 17:14 17:22 17:25 18:4 18:5 18:6 18:10 18:16 18:19 18:20 18:22 18:24 19:2 19:3 19:4 19:4 19:13 19:14 19:24 20:20 20:21 20:22 20:25 21:1 21:3 21:5 21:6 21:9 21:10 21:11 21:14 21:15 21:16 21:16 21:18 21:20 21:22 22:2 22:4 22:5 22:20 22:24 22:24 23:3 23:3 23:7 23:16 23:19 23:24 24:1 24:5 24:6 24:7 24:8 24:14 24:15 24:15 24:16 24:19 24:19 24:20 24:23 24:25 25:1 25:2 25:2 25:8 25:12 25:23 26:1 26:12 26:19 26:22 26:24 27:14 27:20 27:21 27:23 28:1 28:4 28:5 28:8 28:16 28:20 28:20 28:22 28:24 29:2 29:3 29:4 29:6 29:7 29:8 29:10 29:16 29:17 30:1 30:1 30:2 30:8 30:11 30:12 30:16 30:19 30:21 30:24 30:25 31:1 31:6 31:9 31:20 32:1 32:5 32:6 32:13 32:14 32:18 32:18 32:20 33:3 33:5 33:6 33:8 33:13 33:14 33:18 33:24 34:7 34:9 34:10 34:17 34:20 35:12 35:7 35:8 35:8 35:15 35:15 35:18 35:23 36:1 36:3 36:6 36:8 36:21 36:24 37:5 37:12 37:17 37:19 37:20 37:20 37:22 38:10 38:16 38:17 38:17 38:19 38:21 39:1 39:4 39:9 39:10 39:12 39:18 39:21 39:24 39:25 40:3 40:5 40:6 40:7 40:15 40:21 40:24 41:2 41:7 41:8 41:14 41:18 41:18 41:23 41:24 41:25 42:3 42:4 42:9 42:9 42:9 42:11 42:17 42:21 42:23 42:24 42:25 43:6 43:9 43:21 43:22 44:9 44:12 44:18 44:19 44:20 44:20 44:22 44:22 44:24 45:2 45:3 45:7 45:16 45:18 45:21 45:23 45:24 46:1 47:8 47:9 47:11 47:14 47:16 47:16 47:19 47:23 47:24 47:25 48:1 48:3 48:16 48:17 48:23 48:23 49:20 50:4 50:8 50:13 51:5 51:5 51:18 51:21 51:25 52:2 52:6 52:7 52:11 52:17 52:19 52:19 52:20 53:1 53:4 53:11 53:16 53:19 54:4 54:10 54:25 55:4

**and/or**(1) 13:15

**anderson**(1) 4:7

**andrea**(1) 7:25

**andrew**(4) 2:25 7:43 7:47 22:16

**angela**(1) 7:19

**angeles**(1) 3:41

**angelo**(1) 5:46

**animus**(2) 40:1 103:6

**ann**(1) 7:3

**anna**(2) 7:11 7:11

**announced**(1) 42:4

**another**(2) 23:22 47:20

**answer**(15) 14:20 14:21 20:9 23:16 24:2 24:21 66:4 66:5 69:18 73:17 73:19 73:20 94:2 96:4 99:23

**anticipate**(2) 28:10 33:19

**anticipated**(1) 29:19

**anticipating**(2) 28:9 29:1

**anticipation**(1) 29:7

**any**(46) 13:5 14:21 16:25 18:14 20:7 26:10 27:25 29:8 31:19 32:10 36:19 39:21 40:1 40:20 43:24 51:10 52:11 53:11 54:6 55:6 56:6 57:19 58:11 67:8 67:23 68:5 69:9 70:5 71:8 73:13 75:6 76:1 78:16 84:3 89:13 95:1 100:5 100:15 101:9 101:9 103:5 103:10 103:16 103:5 107:23 107:25

**anybody**(3) 21:20 24:18 84:3

**anyone**(2) 22:14 47:3

**anyone's**(1) 104:14

**anything**(14) 14:15 23:8 38:14 38:21 49:8 53:17 53:21 55:6 56:21 64:24 69:25 103:1 108:6

| Word | Page:Line |
|------|-----------|
| **anyway**(7) 26:2 41:19 50:25 60:14 65:21 78:10 83:22 | |
| **apart**(1) 105:12 | |
| **apologies**(1) 77:24 | |
| **apologize**(1) 58:11 | |
| **apparent**(4) 63:15 84:3 87:22 89:19 | |
| **apparently**(5) 47:7 56:2 65:11 66:8 72:10 | |
| **appear**(2) 62:4 68:20 | |
| **appearances**(1) 5:1 | |
| **appeared**(2) 55:13 107:10 | |
| **appears**(3) 50:23 66:23 67:1 | |
| **applicable**(1) 69:8 | |
| **applicants**(2) 20:21 45:7 | |
| **application**(3) 21:13 22:14 92:9 | |
| **applications**(5) 13:3 13:4 20:16 20:18 21:7 | |
| **applied**(1) 23:25 | |
| **applying**(1) 15:12 | |
| **appoint**(1) 47:14 | |
| **appreciate**(5) 18:23 78:9 85:24 86:3 93:6 | |
| **approach**(6) 86:16 87:14 89:16 92:20 101:4 102:18 | |
| **approached**(3) 61:22 83:15 83:16 | |
| **appropriate**(11) 15:20 18:10 24:10 30:4 34:21 47:8 54:8 79:5 103:13 104:3 104:25 | |
| **approval**(4) 24:17 24:18 32:2 32:14 | |
| **approve**(1) 31:25 | |
| **approved**(2) 35:4 41:15 | |
| **approximately**(1) 52:6 | |
| **april**(2) 61:2 61:3 | |
| **are**(88) 13:4 13:16 14:2 14:2 14:7 14:9 14:14 15:5 16:18 16:19 16:24 16:25 17:1 17:4 18:19 19:1 19:2 20:18 21:4 21:13 21:16 21:24 22:2 22:3 24:4 23:12 24:5 24:16 24:25 25:7 26:11 26:13 26:17 26:18 26:18 26:20 29:6 31:5 31:6 31:10 32:12 34:13 35:5 36:7 36:16 37:4 38:6 40:2 40:7 40:11 42:24 43:12 44:13 45:22 45:22 48:5 49:16 50:22 52:18 54:19 55:21 59:8 71:16 76:25 77:2 82:11 83:2 85:7 85:8 85:8 88:9 89:11 90:1 91:17 93:22 93:24 98:20 98:24 100:11 100:13 101:6 101:10 101:15 102:8 102:14 105:12 105:20 108:1 | |
| **area**(1) 48:17 | |
| **arena**(1) 77:6 | |
| **aren't**(2) 35:24 35:25 | |
| **arguably**(1) 15:18 | |
| **argue**(9) 48:23 57:18 58:10 62:12 62:19 62:20 70:11 84:14 104:15 | |
| **argued**(6) 15:3 15:20 16:6 93:2 103:8 104:17 | |
| **arguing**(1) 37:20 | |
| **argument**(13) 16:10 24:7 27:24 32:19 38:20 39:21 49:9 57:8 100:13 101:13 104:19 107:7 107:10 | |
| **arguments**(4) 60:2 66:19 92:21 97:22 | |
| **around**(4) 17:12 60:9 101:6 104:5 | |
| **arranged**(1) 79:16 | |
| **arrangements**(2) 24:25 40:19 | |
| **arrival**(2) 68:10 69:2 | |
| **arrived**(1) 67:15 | |
| **arrowgrass**(2) 8:23 8:24 | |
| **artful**(1) 87:23 | |
| **artfully**(1) 95:7 | |

| Word | Page:Line |
|------|-----------|
| **article**(90) 50:1 52:7 52:8 52:9 52:25 53:2 53:10 53:18 53:25 54:5 54:7 54:8 54:21 54:24 55:1 55:2 55:5 55:13 59:12 59:12 59:14 59:22 60:19 62:4 74:8 74:14 74:15 74:16 74:17 74:18 74:24 74:25 75:2 75:25 80:23 82:20 82:22 82:25 83:1 83:3 83:4 83:11 83:12 83:15 83:22 84:6 84:20 84:21 85:4 85:9 85:16 86:15 86:16 86:18 87:3 87:17 87:21 87:24 88:10 88:14 88:16 88:20 89:6 89:8 89:10 89:10 89:12 90:1 90:2 90:7 90:8 90:12 90:18 90:20 90:22 91:11 91:14 91:15 91:16 91:18 91:21 92:3 92:5 97:12 97:18 97:25 98:9 98:23 99:2 99:3 | |
| **articles**(1) 54:13 | |
| **article's**(1) 80:15 | |
| **articulated**(1) 15:2 | |
| **ashby**(1) 3:9 | |
| **ashley**(1) 5:5 | |
| **aside**(4) 33:2 36:7 38:3 45:8 | |
| **ask**(31) 14:14 16:1 16:8 18:10 27:13 28:8 31:14 32:6 33:25 34:16 41:10 45:7 47:22 49:19 50:9 55:11 57:10 64:12 68:23 69:24 73:21 77:24 93:13 95:14 97:8 98:17 98:20 100:4 100:14 101:19 104:3 | |
| **asked**(14) 14:4 14:11 28:23 34:19 39:5 39:7 39:13 68:25 76:5 95:12 103:19 105:20 107:6 108:11 | |
| **asking**(7) 16:14 24:18 24:21 32:1 47:13 100:3 107:7 | |
| **assault**(2) 81:5 81:22 | |
| **assented**(1) 42:22 | |
| **assert**(2) 51:22 89:25 | |
| **assertion**(1) 44:14 | |
| **assertions**(1) 93:24 | |
| **associated**(1) 96:4 | |
| **associates**(2) 21:9 23:3 | |
| **assume**(1) 33:21 | |
| **assuming**(3) 31:16 105:25 | |
| **attached**(3) 19:3 34:16 56:2 | |
| **attacked**(1) 87:3 | |
| **attempt**(3) 23:21 60:19 106:15 | |
| **attempted**(3) 56:4 64:9 101:7 | |
| **attempting**(1) 103:3 | |
| **attempts**(2) 54:20 105:9 | |
| **attendance**(1) 13:17 | |
| **attention**(3) 43:3 50:10 75:16 | |
| **attorney**(7) 13:9 14:18 24:14 58:11 61:22 74:12 97:3 | |
| **attorney/client**(2) 24:14 25:25 | |
| **attorneys**(2) 75:19 75:23 | |
| **attract**(2) 75:18 83:23 | |
| **attracting**(1) 75:20 | |
| **attributed**(1) 80:16 | |
| **audible**(1) 47:5 | |
| **auditor**(3) 20:19 20:21 23:2 | |
| **august**(1) 100:18 | |
| **aurelius**(9) 3:1 8:15 8:20 17:18 18:12 18:22 19:8 102:12 106:2 | |
| **auspices**(1) 101:14 | |
| **austin**(5) 1:25 5:12 42:3 46:21 49:16 | |
| **authenticated**(1) 104:21 | |
| **authored**(1) 59:11 | |
| **authority**(1) 70:20 | |
| **authorizing**(1) 13:10 | |
| **authors**(1) 15:17 | |
| **automatic**(2) 69:6 101:10 | |
| **available**(1) 60:10 | |
| **avaya**(1) 12:25 | |
| **ave**(1) 3:46 | |
| **avenue**(6) 1:37 2:6 2:26 3:11 3:18 4:39 | |
| **avoid**(3) 60:19 66:10 73:24 | |
| **avoided**(1) 92:19 | |
| **awaiting**(1) 33:3 | |

| Word | Page:Line |
|------|-----------|
| **award**(3) 13:11 31:7 40:6 | |
| **awarded**(3) 30:17 30:24 31:6 | |
| **aware**(6) 16:20 17:10 39:23 49:23 53:18 67:4 67:15 92:2 | |
| **away**(1) 14:19 | |
| **b.l**(1) 66:10 | |
| **back**(17) 16:23 19:21 27:20 32:6 35:20 36:1 38:17 38:18 42:4 42:20 44:20 45:7 45:21 70:7 95:15 100:20 104:14 | |
| **back-and-forth**(2) 20:19 23:1 | |
| **background**(8) 58:17 58:21 58:23 59:4 59:24 83:4 83:14 103:15 | |
| **backs**(1) 17:13 | |
| **bad**(1) 85:13 | |
| **baiera**(1) 5:47 | |
| **bailey**(2) 65:17 71:15 | |
| **balance**(1) 61:17 | |
| **bale**(1) 6:3 | |
| **ball**(1) 28:20 | |
| **baltimore**(9) 50:1 52:4 56:15 59:8 59:9 62:1 72:24 76:4 76:10 | |
| **banc**(1) 2:4 | |
| **bank**(6) 6:16 6:22 7:46 8:1 9:34 23:20 | |
| **bankruptcy**(12) 1:1 1:20 13:9 28:6 55:14 58:15 63:14 69:5 69:8 69:16 92:23 93:7 | |
| **bar**(1) 56:1 | |
| **barclays**(2) 7:28 7:28 | |
| **barnes**(1) 4:1 | |
| **barren**(1) 22:22 | |
| **barring**(1) 104:9 | |
| **base**(1) 63:14 | |
| **based**(10) 28:10 29:2 29:14 39:18 40:4 45:5 64:7 78:11 82:7 103:24 | |
| **bases**(2) 34:12 51:13 | |
| **basic**(5) 37:21 63:6 63:9 63:10 75:15 | |
| **basically**(12) 17:23 29:2 35:23 36:15 37:7 37:10 45:25 57:24 58:2 63:10 74:18 83:15 | |
| **basis**(12) 18:21 43:1 53:21 54:11 54:14 54:17 63:20 82:8 101:11 101:12 103:5 103:11 | |
| **bear**(2) 38:2 83:4 | |
| **became**(2) 67:4 92:18 | |
| **because**(40) 13:16 14:8 16:13 23:12 23:14 24:13 26:6 26:13 26:18 26:20 28:15 30:23 37:5 39:3 42:7 42:22 45:1 50:18 54:24 58:22 60:1 60:16 62:4 64:7 65:20 66:1 70:7 79:8 79:10 83:2 83:3 83:4 83:6 83:18 83:24 98:15 99:23 104:13 107:6 107:17 | |
| **become**(1) 67:15 | |
| **beeler**(1) 8:6 | |
| **been**(67) 12:7 12:14 15:7 16:20 18:3 20:19 20:20 20:22 31:5 32:16 33:1 33:2 33:4 33:13 33:15 35:12 36:1 36:11 37:6 37:22 41:12 41:14 41:23 42:13 42:14 44:3 44:17 48:7 52:14 53:7 55:2 55:7 60:23 62:4 67:1 68:2 69:11 69:21 70:2 70:7 70:16 71:10 71:21 73:4 75:7 77:4 81:4 81:22 83:11 83:11 83:18 87:10 88:20 91:13 91:21 91:25 92:2 92:19 97:18 97:18 97:20 97:24 99:6 101:5 104:15 105:22 106:1 | |
| **before**(40) 1:19 12:18 14:11 15:23 20:8 21:12 22:14 23:8 30:10 34:21 35:11 38:12 44:13 46:12 46:23 50:5 52:7 53:24 54:7 55:1 57:15 59:25 60:5 61:21 62:5 69:24 76:21 90:1 93:23 97:11 97:12 97:18 97:25 98:23 99:2 100:17 101:18 104:3 104:7 106:9 | |
| **began**(2) 75:2 93:23 | |
| **begin**(3) 57:15 58:3 73:8 | |
| **beginning**(1) 19:22 | |
| **begun**(1) 74:15 | |

| Word | Page:Line |
|------|-----------|
| **behalf**(13) 22:9 24:2 24:5 24:6 27:7 27:19 29:24 30:8 46:20 46:21 47:3 47:14 49:16 | |
| **behave**(1) 105:18 | |
| **behind**(1) 87:10 | |
| **being**(14) 24:5 30:10 31:23 32:5 36:9 38:18 40:20 66:2 86:18 87:16 88:12 88:21 91:19 91:20 | |
| **belief**(1) 88:11 | |
| **believe**(49) 16:14 40:3 46:21 48:2 48:18 67:13 67:25 68:13 69:20 76:16 77:3 80:7 82:9 83:23 84:21 85:4 85:5 85:18 86:8 86:9 86:13 87:14 87:20 87:22 89:10 89:20 89:23 90:2 90:6 90:19 90:23 91:7 91:12 91:12 93:1 97:10 97:24 100:17 103:4 103:10 103:19 104:10 104:24 105:2 106:13 107:6 107:9 107:10 108:7 | |
| **believed**(1) 66:2 | |
| **believes**(8) 43:4 52:22 53:24 88:19 88:25 89:3 89:6 89:8 | |
| **belong**(1) 36:8 | |
| **bendernagel**(46) 1:26 13:25 13:25 17:22 18:3 19:21 20:1 20:3 20:10 20:13 20:17 23:11 23:18 24:11 25:4 25:9 25:16 25:20 26:10 26:16 26:21 28:14 29:20 29:22 34:19 35:1 36:20 37:16 37:19 38:1 38:25 39:1 39:6 39:8 39:20 41:11 44:8 45:13 45:15 46:5 46:9 46:14 46:17 108:7 108:10 | |
| **bendernagle**(1) 38:7 | |
| **benefit**(10) 24:7 36:19 36:21 36:23 37:12 43:24 44:3 54:13 54:15 89:21 | |
| **benefits**(2) 32:16 35:7 | |
| **benson**(1) 9:5 | |
| **berko**(9) 13:8 46:25 47:3 47:6 47:13 47:17 47:20 47:25 48:3 | |
| **best**(2) 15:10 96:15 | |
| **better**(2) 33:8 40:10 | |
| **between**(7) 18:4 18:21 20:21 43:5 67:21 102:14 102:20 | |
| **beyond**(4) 69:23 71:1 74:20 95:2 | |
| **bifferato**(1) 2:30 | |
| **big**(2) 26:11 86:5 | |
| **bigelow**(4) 6:34 37:22 40:7 40:21 | |
| **binary**(1) 105:16 | |
| **bingham**(1) 6:12 | |
| **bird**(1) 10:7 | |
| **bit**(3) 24:12 42:7 43:18 | |
| **blacklisted**(1) 80:17 | |
| **blacklisting**(1) 81:11 | |
| **blake**(1) 3:31 | |
| **block**(1) 7:42 | |
| **blue**(1) 19:2 | |
| **board**(1) 8:41 | |
| **boelter**(1) 1:28 | |
| **bolter**(1) 28:23 | |
| **bono**(1) 75:3 | |
| **bonus**(1) 40:9 | |
| **bonuses**(1) 40:7 | |
| **both**(17) 17:12 20:22 23:2 28:16 31:8 47:24 50:8 52:18 52:23 53:19 55:4 56:18 84:1 89:7 101:8 102:23 103:17 | |
| **bove**(1) 4:16 | |
| **bowman**(2) 48:14 66:10 | |
| **bowman's**(1) 48:18 | |
| **brad**(1) 8:43 | |
| **bralow**(1) 5:34 | |
| **brand**(1) 55:20 | |
| **break**(4) 18:25 42:3 78:2 84:15 | |
| **brevity**(1) 58:20 | |
| **brief**(4) 32:20 39:24 50:15 102:16 | |
| **briefing**(1) 53:14 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| briefly(2) 48:23 88:4 | | cases(6) 32:15 54:22 56:1 99:24 99:24 105:10 | | claim(71) 12:19 12:20 12:25 46:22 48:12 49:17 49:24 49:25 50:3 50:4 50:7 50:11 50:14 50:15 50:17 51:19 51:20 51:21 52:2 52:13 52:16 53:16 53:20 54:11 54:18 55:25 56:9 56:19 57:19 58:10 58:14 59:5 60:14 61:1 61:4 62:15 63:10 66:21 67:18 70:16 70:17 70:20 70:22 71:4 71:12 73:10 74:9 77:12 77:17 77:18 77:21 78:11 78:14 78:15 78:25 80:4 81:25 82:14 82:15 83:1 88:7 88:8 88:15 90:18 93:5 100:9 101:14 101:24 106:19 107:16 107:24 | | committee's(7) 17:19 18:18 30:1 33:10 35:16 37:17 45:5 | |
| briesen(1) 12:13 | | | | | | | |
| brilliance(1) 85:13 | | | | | | common(4) 9:12 21:25 23:24 41:6 | |
| bring(8) 27:2 70:11 76:22 79:8 79:9 83:20 86:11 101:22 | | cash(1) 38:9 | | | | commonsensical(1) 40:4 | |
| | | cason(3) 37:23 40:7 40:21 | | | | communication(3) 47:24 95:9 95:11 | |
| | | cast(1) 84:2 | | | | communications(1) 48:3 | |
| bringing(1) 50:2 | | casts(1) 84:11 | | | | company(31) 1:8 5:27 8:37 9:16 10:3 12:5 | |
| brings(2) 46:21 92:21 | | catching(1) 86:8 | | | | 23:20 30:13 30:18 31:25 32:2 32:13 32:22 | |
| broad(3) 45:6 45:8 81:4 | | category(1) 33:1 | | | | 36:9 36:10 37:5 38:3 38:3 38:14 39:12 | |
| broadly(1) 29:9 | | catherine(2) 9:29 14:17 | | | | 39:13 40:11 40:13 40:23 40:25 42:6 45:11 | |
| broadspire(1) 12:22 | | causally(1) 88:9 | | claimant(7) 51:21 58:8 70:17 70:21 82:18 89:7 90:25 | | 59:9 69:11 104:12 105:2 | |
| brockius(1) 9:12 | | cause(15) 30:11 39:11 40:9 40:14 53:9 54:16 80:7 80:8 81:24 82:6 83:25 84:3 88:16 89:10 105:17 | | | | | |
| brought(16) 50:6 59:19 59:22 77:2 79:5 83:18 86:25 87:15 87:16 88:24 89:23 90:5 90:6 99:23 101:21 102:8 | | | | | | company's(3) 32:3 63:14 69:9 | |
| | | | | claiming(2) 54:20 81:20 | | compelled(1) 103:4 | |
| | | | | claims(33) 12:10 12:12 12:22 13:8 16:16 16:17 16:25 17:3 17:5 17:7 22:23 24:22 48:5 54:10 60:21 62:12 62:15 62:22 63:6 63:10 63:10 63:15 71:2 74:6 78:21 80:2 101:9 106:20 107:11 107:13 107:19 107:20 107:22 | | compensation(6) 6:38 30:17 31:24 33:2 35:4 36:25 | |
| brown(1) 2:37 | | caused(11) 52:6 52:11 54:2 54:3 54:5 55:2 83:1 83:5 83:11 90:12 90:18 | | | | complaint(117) 30:1 35:16 50:19 50:20 52:2 52:17 53:19 56:3 59:5 59:6 59:7 60:21 60:24 60:24 61:2 61:4 61:5 61:14 61:21 62:5 62:14 62:15 62:17 62:19 62:21 62:22 63:5 63:7 63:9 63:11 63:13 63:16 63:18 64:3 64:4 65:8 65:9 65:18 66:2 66:4 66:6 66:12 66:16 66:20 66:23 66:24 66:25 67:4 67:6 67:7 67:12 67:13 67:14 67:21 67:22 68:4 68:9 68:10 68:11 68:16 68:21 69:2 69:4 69:6 69:21 69:22 69:23 70:2 71:2 71:13 71:19 71:21 71:23 71:24 72:18 72:21 72:22 72:23 73:9 73:14 73:17 73:23 74:2 74:4 74:9 74:11 76:12 76:14 76:16 76:17 76:19 77:3 77:16 78:13 78:18 78:22 79:12 79:21 80:12 80:25 82:14 82:23 82:25 88:8 88:18 90:4 92:5 92:6 93:1 93:3 93:4 93:4 94:10 94:20 95:12 95:13 95:21 | |
| bryan(1) 5:14 | | | | | | | |
| bryant(1) 3:5 | | causes(1) 80:10 | | | | | |
| building(2) 74:24 105:12 | | cede(1) 105:3 | | | | | |
| bulk(1) 14:1 | | center(1) 101:5 | | clarification(2) 107:7 108:1 | | | |
| burden(4) 70:16 70:22 101:22 101:23 | | certain(9) 4:15 18:19 22:3 27:19 28:17 30:2 33:3 54:24 80:17 | | clarify(1) 26:12 | | | |
| bury(1) 89:2 | | | | classic(2) 55:5 56:10 | | | |
| but(102) 12:17 13:14 15:4 15:6 15:17 15:22 15:25 16:1 16:17 16:22 17:14 18:1 19:25 20:23 21:19 21:25 22:11 23:24 23:25 24:11 24:21 25:5 25:9 25:14 25:14 26:8 26:10 26:25 27:14 28:21 29:14 32:3 34:22 35:2 35:10 35:19 35:24 36:12 36:20 37:16 37:18 38:2 39:5 39:7 39:11 39:24 40:21 41:10 41:13 44:21 45:24 46:18 47:10 50:23 51:6 52:9 52:19 53:13 54:22 56:3 59:23 62:9 64:10 64:16 64:20 68:7 69:19 70:3 70:10 71:6 72:7 72:9 73:1 75:19 75:21 75:24 76:7 76:21 82:2 82:21 82:25 84:19 84:22 85:9 85:16 88:10 90:22 93:18 96:9 96:15 97:4 97:17 98:18 101:17 103:4 103:8 103:24 104:17 105:25 106:23 107:19 107:20 107:23 | | certainly(5) 40:14 45:14 48:7 54:15 79:23 | | clear(9) 12:7 16:24 21:17 27:21 61:12 69:13 71:5 88:8 103:9 | | | |
| | | certification(2) 13:2 108:15 | | | | | |
| | | certify(1) 108:16 | | | | | |
| | | chad(1) 48:13 | | | | | |
| | | chadbourne(3) 2:17 5:4 16:4 | | clearly(5) 22:4 81:19 82:4 82:25 89:9 | | | |
| | | chadbourne(2) 57:7 105:6 | | cleary(1) 3:31 | | | |
| | | chambers(2) 14:10 47:20 | | clerk(2) 18:10 49:14 | | | |
| | | chandler(1) 6:34 | | clerk's(2) 70:3 70:6 | | | |
| | | chaney(1) 9:26 | | client(2) 19:13 40:1 | | | |
| | | change(7) 36:4 36:4 36:5 36:6 64:24 71:18 94:22 | | clients(5) 15:5 33:17 34:11 107:11 107:15 | | | |
| calculated(2) 81:4 87:22 | | | | close(2) 29:6 92:1 | | | |
| california(1) 3:41 | | changes(3) 19:1 29:8 71:20 | | closely(1) 91:19 | | | |
| call(4) 43:3 58:24 68:25 79:12 | | chapter(2) 1:8 32:15 | | closer(1) 50:6 | | committee(1) 86:7 | |
| called(6) 41:7 42:3 76:4 95:10 95:12 96:8 | | character(2) 84:2 84:12 | | closest(1) 91:5 | | conceded(2) 73:9 75:22 | |
| calls(1) 31:21 | | characterization(1) 84:13 | | closure(1) 19:23 | | concept(1) 105:13 | |
| came(7) 41:21 42:4 74:22 75:1 75:25 86:18 88:21 | | characterize(1) 45:4 | | cloth(1) 54:17 | | concern(3) 17:11 18:18 25:7 | |
| | | charge(1) 62:7 | | clout(1) 46:1 | | concerns(4) 13:16 29:25 75:5 87:17 | |
| camera(1) 25:24 | | charged(3) 21:17 80:20 81:17 | | cobb(1) 2:10 | | conclude(2) 75:1 80:8 | |
| campaign(4) 52:5 52:6 53:23 53:25 | | charges(1) 58:23 | | code(2) 21:16 55:14 | | concluded(2) 23:4 36:25 | |
| can(38) 13:19 14:7 16:12 18:25 19:10 24:7 27:2 27:20 29:11 29:13 29:14 29:22 32:1 40:8 40:12 41:8 45:9 45:10 45:21 45:24 46:15 46:23 52:22 53:14 62:16 62:23 71:17 71:24 77:12 77:17 78:11 78:15 80:4 82:16 84:20 85:7 93:5 101:25 | | charging(1) 98:16 | | coherence(1) 89:18 | | concludes(1) 108:8 | |
| | | chase(2) 3:15 7:18 | | coincidental(1) 91:4 | | conclusion(7) 18:24 49:3 58:19 71:9 71:11 92:21 92:22 | |
| | | check(4) 65:17 72:4 72:6 72:8 | | cole(2) 1:34 12:4 | | | |
| | | chicago(7) 1:31 4:26 4:40 7:6 7:7 12:19 30:9 | | colleagues(6) 21:1 30:16 30:22 30:25 80:15 81:12 | | conclusory(2) 77:18 78:16 | |
| candace(1) 5:13 | | | | | | conduct(4) 87:21 87:24 106:16 106:18 | |
| cannot(4) 54:11 56:11 56:13 82:22 | | choice(2) 77:5 77:7 | | collectively(1) 30:9 | | confer(2) 106:10 107:9 | |
| canyon(2) 9:25 9:25 | | chosen(1) 31:17 | | collins(1) 4:2 | | conference(2) 44:3 104:19 | |
| can't(2) 25:6 60:9 | | christine(1) 9:6 | | colloquy(3) 41:24 43:13 44:9 | | conferred(2) 44:3 102:13 | |
| capacity(1) 103:22 | | christmas(1) 91:4 | | combative(1) 85:2 | | confers(1) 15:18 | |
| capital(21) 3:1 6:1 6:2 6:5 6:6 7:28 7:28 8:9 8:9 8:15 8:20 8:23 8:24 8:33 8:33 9:46 9:47 12:11 19:8 23:22 102:12 | | cite(5) 66:22 80:6 81:6 83:7 108:10 | | come(19) 17:20 19:15 31:11 32:6 36:1 38:17 38:18 39:17 42:20 44:20 44:22 45:7 45:21 57:12 71:11 77:7 100:20 104:14 106:1 | | confirm(2) 28:3 96:15 | |
| | | cited(5) 44:1 72:18 81:9 81:23 82:5 | | | | confirmation(19) 13:12 14:3 14:8 18:6 22:21 28:1 28:18 29:2 29:4 29:5 29:11 29:13 65:9 65:23 66:13 100:8 102:9 102:19 107:8 | |
| | | cites(2) 53:3 90:17 | | | | | |
| | | citi(2) 7:38 7:38 | | | | | |
| cards(1) 91:4 | | citigroup(1) 7:1 | | comes(3) 25:6 51:18 53:12 | | conforming(1) 29:8 | |
| care(1) 108:5 | | city(3) 12:19 59:8 76:10 | | coming(2) 35:20 38:9 | | confused(1) 16:11 | |
| career(1) 91:9 | | civil(3) 65:12 66:11 66:22 | | commence(1) 56:4 | | confusion(1) 16:13 | |
| carey(1) 1:19 | | | | commenced(1) 66:23 | | connected(1) 88:9 | |
| carlyle(1) 2:4 | | | | commencement(1) 69:16 | | connection(8) 14:15 21:11 22:20 23:1 23:13 47:4 97:2 106:11 | |
| carol(2) 6:3 12:23 | | | | comment(2) 20:23 45:13 | | | |
| carry(2) 70:22 74:24 | | | | comments(6) 18:16 41:22 85:15 98:12 98:13 98:20 | | | |
| carve-out(1) 44:21 | | | | | | | |
| carved(1) 44:17 | | | | commission(4) 92:10 92:11 97:20 98:1 | | | |
| case(218) 1:5 7:46 21:6 21:8 21:14 23:20 24:8 40:16 43:25 43:25 44:23 45:8 48:7 63:14 66:7 66:7 67:1 68:2 70:5 70:11 72:10 73:22 73:23 77:10 91:12 93:7 93:8 101:22 | | circulate(1) 29:9 | | committed(3) 60:16 80:20 81:16 | | connolly(1) 4:16 | |
| | | circulated(2) 29:5 91:21 | | committee(52) 2:10 5:3 8:40 10:2 16:4 18:4 18:15 18:22 22:17 25:10 31:13 31:21 31:25 32:5 32:6 32:10 33:22 34:5 35:4 35:12 36:13 36:25 37:3 37:15 37:20 39:16 40:5 40:8 42:22 43:3 44:20 44:20 44:24 48:2 48:8 49:3 49:7 57:2 57:2 57:7 57:8 103:20 103:22 103:23 103:24 103:25 104:11 104:24 105:6 106:8 | | consensual(1) 50:6 | |
| | | circumstances(19) 15:21 41:16 52:8 53:8 54:9 55:1 62:25 73:12 75:18 77:3 82:4 83:17 86:10 86:13 87:15 89:2 89:3 89:17 99:2 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **consent**(7) 104:4 104:8 104:10 104:12 104:16 105:1 105:14 | | **court**(293) 1:1 12:2 12:6 12:8 12:25 13:6 13:13 13:14 13:15 13:18 13:21 13:23 14:9 14:22 14:25 15:4 15:16 16:8 17:8 17:16 18:2 18:5 18:13 19:11 19:14 19:19 19:21 20:2 20:6 20:11 20:16 20:18 21:15 22:1 23:5 23:16 23:19 24:4 24:16 24:25 25:5 25:14 25:19 25:23 26:14 26:19 26:22 26:23 26:25 27:2 27:5 27:8 27:13 27:17 27:24 28:8 28:12 29:19 29:21 30:5 30:12 30:15 31:14 31:16 31:17 32:3 32:24 32:25 33:16 33:19 34:1 34:5 34:9 34:15 34:18 34:24 36:18 37:14 37:18 37:24 38:5 38:24 39:5 39:7 39:14 41:10 43:8 43:10 44:2 44:5 45:4 45:14 46:3 46:6 46:8 46:10 46:16 46:18 46:23 47:2 47:6 47:8 47:14 47:16 48:8 48:9 48:12 48:13 48:19 48:21 49:1 49:5 49:6 49:10 49:13 49:19 49:22 49:23 50:3 50:8 50:9 50:21 51:3 51:8 51:11 51:13 51:16 53:18 55:8 55:17 56:21 57:1 57:11 57:15 57:18 57:20 58:3 58:9 58:15 58:24 58:24 59:2 59:8 60:13 63:7 63:15 63:18 63:20 63:21 63:25 64:5 64:6 64:15 64:18 64:20 64:23 65:1 65:3 65:9 65:10 65:13 65:21 65:24 65:25 66:1 66:6 66:8 66:11 66:14 66:16 66:23 66:24 66:25 67:7 67:7 67:12 67:12 67:15 67:22 67:25 68:4 68:10 68:11 68:16 68:21 68:23 69:2 69:12 69:15 69:18 69:24 70:14 70:19 70:24 71:10 71:13 71:14 71:18 71:22 71:23 72:1 72:3 72:7 72:8 72:11 72:13 72:16 73:3 73:4 73:9 73:15 73:18 73:21 73:22 73:25 76:5 76:10 76:14 76:19 77:7 77:22 77:24 78:2 78:4 78:6 78:6 78:7 78:8 83:10 84:6 84:9 84:11 84:17 85:20 85:23 86:1 86:2 86:12 92:23 93:7 93:9 93:11 93:13 93:19 93:22 94:5 94:15 95:1 95:8 95:20 96:7 96:8 99:10 99:13 99:21 100:1 100:4 100:15 100:19 100:21 100:24 101:1 101:20 101:23 102:2 102:5 102:7 102:16 102:23 102:25 103:7 103:14 103:16 103:3 104:8 104:10 105:2 105:4 105:11 105:21 106:5 106:6 106:25 107:2 107:6 107:6 107:8 108:2 108:5 108:8 108:9 108:12 | | **data**(2) 1:43 108:22 | | **defamation**(42) 49:25 50:18 50:20 51:1 51:20 51:21 52:13 56:9 56:11 60:20 61:16 61:25 62:14 63:13 67:3 70:9 74:9 75:7 75:24 76:3 77:21 78:18 78:23 78:25 79:2 79:4 79:13 80:25 81:7 82:7 82:11 82:23 86:21 86:23 87:7 87:10 89:22 92:8 93:3 98:16 101:9 101:14 |
| **consents**(1) 105:16 | | | | **date**(32) 12:18 15:13 15:15 15:19 46:6 55:3 56:1 63:12 63:13 63:15 63:22 63:22 65:19 67:3 68:9 68:10 68:11 68:14 68:16 68:18 68:25 69:2 71:1 76:18 76:19 95:1 95:23 96:1 98:23 107:14 107:16 108:21 | | |
| **consequence**(2) 39:4 46:2 | | | | | | **defamatory**(13) 51:23 52:3 52:18 52:23 53:4 61:6 75:8 78:25 79:3 81:14 82:3 83:7 88:20 |
| **consequences**(1) 68:19 | | | | **date."**(1) 42:15 | | |
| **consider**(3) 74:21 75:11 97:13 | | | | **dated**(6) 43:19 47:19 47:22 66:9 73:7 | | **defamed**(7) 52:11 59:12 59:16 75:7 81:6 81:20 83:25 |
| **consideration**(1) 42:15 | | | | **dates**(1) 68:8 | | |
| **considerations**(1) 25:7 | | | | **dave**(1) 5:28 | | **defect**(1) 73:10 |
| **considered**(1) 68:7 | | | | **david**(18) 2:18 3:3 4:31 5:34 6:27 7:23 8:2 8:25 9:8 13:10 16:3 19:7 30:8 39:15 57:6 102:11 105:5 106:7 | | **defendant**(3) 31:6 51:23 51:24 |
| **consistent**(11) 18:16 22:12 29:18 31:1 33:21 43:21 61:15 61:20 62:24 86:9 86:14 | | | | | | **defendant's**(1) 6:39 |
| **consultant**(1) 30:12 | | | | **davidson**(1) 6:30 | | **defendants**(10) 30:23 42:13 59:8 66:4 66:18 71:7 72:21 73:17 73:19 96:2 |
| **consultants**(1) 30:13 | | | | **davis**(4) 3:15 7:18 9:20 9:21 | | |
| **consulting**(5) 40:15 40:19 40:24 41:2 44:15 | | | | **day**(7) 3:36 8:42 14:11 68:16 85:12 86:1 104:19 | | **defenses**(1) 106:20 |
| **consuming**(1) 75:3 | | | | | | **deferral**(3) 40:6 42:8 42:18 |
| **contact**(1) 97:1 | | | | **days**(13) 30:15 30:20 31:10 32:10 33:13 60:5 74:10 85:8 96:3 96:4 100:21 100:25 102:3 | | **deferred**(5) 30:22 31:24 32:5 41:23 43:20 |
| **contacted**(1) 97:3 | | | | | | **defined**(1) 79:1 |
| **contained**(1) 55:25 | | | | **dbtca**(1) 3:44 | | **definitely**(1) 62:6 |
| **contemplates**(1) 38:9 | | | | **deadline**(1) 76:3 | | **defrauded**(1) 56:16 |
| **contend**(2) 59:19 63:17 | | | | **deal**(2) 32:10 38:16 | | **delaware**(6) 1:2 1:12 1:37 2:6 3:11 12:1 |
| **content**(2) 20:20 53:10 | | | | **dearborn**(2) 2:30 9:5 | | **delay**(2) 67:24 96:10 |
| **contentious**(1) 18:18 | | | | **debenture**(2) 2:30 9:5 | | **deliberately**(1) 89:1 |
| **contents**(1) 92:4 | | | | **debtor**(16) 5:12 15:24 25:10 31:16 34:20 39:5 39:7 39:10 47:22 55:9 57:3 57:21 64:8 93:25 100:4 107:18 | | **delivered**(2) 54:15 68:3 |
| **contest**(2) 60:21 71:3 | | | | | | **delusional**(1) 85:3 |
| **contested**(1) 39:17 | | | | | | **demerits**(1) 106:20 |
| **context**(1) 53:6 | | | | **debtors**(68) 1:12 1:25 12:4 13:10 14:1 15:8 42:20 42:23 46:21 48:1 48:7 48:11 49:7 49:16 50:2 52:12 58:14 60:1 60:5 60:7 60:11 60:14 62:12 63:5 63:10 63:14 66:21 66:24 69:4 69:5 70:11 71:2 71:4 72:17 72:19 73:2 73:10 74:5 74:7 77:13 77:15 78:13 78:18 79:16 79:17 79:25 80:6 80:7 80:14 81:9 81:23 82:13 82:18 86:7 88:6 88:7 88:15 90:13 90:14 90:16 91:2 91:10 92:8 92:14 93:1 101:2 106:10 107:25 | | **demonstration**(1) 53:17 |
| **contingent**(1) 44:12 | | | | | | **denied**(8) 88:3 88:5 88:6 89:3 89:8 89:11 89:13 90:10 |
| **contingently**(1) 42:21 | | | | | | |
| **continuation**(2) 54:25 90:9 | | | | | | **dennis**(1) 5:16 |
| **continue**(2) 64:16 79:25 | | | | | | **deny**(1) 92:23 |
| **continued**(8) 2:2 12:7 12:9 12:17 15:12 30:12 37:11 40:22 | | | | **debtors'**(27) 13:7 35:3 46:22 48:15 48:16 48:24 49:4 49:7 50:10 50:13 52:16 57:25 60:3 60:23 61:3 61:19 62:10 67:17 68:1 68:14 71:12 78:21 80:10 80:12 92:25 99:17 101:13 | | **department**(2) 4:30 12:24 |
| | | | | | | **depends**(1) 23:16 |
| **contrarian**(2) 9:46 9:47 | | | | | | **deposit**(1) 13:11 |
| **contrast**(2) 60:11 68:13 | | | | | | **derived**(1) 88:11 |
| **contribution**(1) 87:23 | | | | **debtor's**(3) 32:17 39:23 76:22 | | **derr**(1) 6:27 |
| **control**(1) 68:18 | | | | **debtwire**(2) 7:14 7:14 | | **described**(4) 84:20 84:21 104:24 |
| **convey**(1) 47:18 | | | | **decades**(6) 59:16 82:20 83:19 86:24 88:14 88:23 | | **designated**(1) 30:25 |
| **cooperate**(2) 60:18 104:22 | | | | | | **designed**(2) 43:1 43:2 |
| **cooperated**(1) 62:3 | | | | | | **destruction**(1) 87:23 |
| **cooperation**(2) 59:14 60:25 | | | | **deceit**(1) 61:8 | | **detail**(7) 21:10 21:12 22:12 23:2 25:24 53:23 90:4 |
| **cooperstown**(1) 8:9 8:9 | | | | **deceitful**(13) 59:14 60:1 60:7 60:22 61:9 61:12 61:15 61:17 78:19 78:23 82:12 88:21 89:22 | | |
| **copies**(3) 18:23 47:22 66:16 | | | | | | **detailed**(2) 25:21 27:11 |
| **copy**(8) 14:23 46:11 65:18 66:16 76:17 94:21 94:23 98:14 | | | | | | **details**(3) 48:4 58:19 63:2 |
| | | | | **deceitfulness**(1) 86:19 | | **detect**(1) 90:20 |
| **corp**(1) 12:21 | | | | **december**(5) 63:13 66:5 66:9 95:11 96:8 | | **deteriorating**(2) 89:5 92:14 |
| **correct**(11) 27:4 28:16 28:21 34:14 41:24 44:4 47:2 51:2 66:9 106:14 108:16 | | | | **december 18th, 2008**(1) 73:20 | | **determination**(2) 22:6 40:17 |
| | | | | **december 30th, 2008**(1) 73:24 | | **determine**(2) 59:23 96:1 |
| **corrected**(2) 73:11 73:13 | | | | **december 8th, 2008**(1) 69:5 | | **determined**(1) 41:12 |
| **corrective**(1) 73:15 | | | | **dechter."**(1) 72:25 | | **deutsch**(1) 5:6 |
| **correctly**(3) 41:11 105:10 106:22 | | | | **decide**(3) 27:14 35:18 43:17 | | **devon**(1) 8:29 |
| **corresponding**(2) 47:7 80:11 | | | | **decided**(2) 32:25 35:17 | | **diamond**(1) 6:31 |
| **corroon**(1) 4:7 | | | | **decision**(5) 18:12 35:19 46:13 47:13 101:2 | | **diary**(2) 75:22 96:15 |
| **cost**(1) 54:2 | | | | **decisional**(1) 69:25 | | **diaz**(2) 1:43 108:22 |
| **could**(29) 17:11 29:9 31:11 31:16 32:6 38:17 44:13 47:15 47:18 54:5 54:16 54:16 56:16 56:16 63:21 68:5 71:9 77:16 78:13 82:14 95:4 97:4 98:21 100:2 100:16 100:16 101:19 103:24 105:23 | | | | **decline**(1) 87:8 | | **did**(65) 18:8 22:18 23:1 25:21 26:23 31:17 33:8 36:24 39:3 40:5 48:2 50:18 51:5 52:8 54:24 60:12 61:9 62:17 62:20 63:19 65:25 67:10 67:15 68:5 71:18 72:8 72:11 72:12 72:14 72:20 74:11 75:6 75:14 75:15 76:7 76:23 78:18 78:20 79:8 79:9 79:18 79:22 79:23 81:10 81:24 82:13 84:15 88:16 89:9 92:11 92:13 93:5 94:17 94:20 95:23 96:1 97:1 98:1 98:5 98:6 102:24 103:1 105:8 107:17 | |
| | | | | **declined**(1) 97:23 | | |
| | | | | **deemed**(1) 51:19 | | |
| | | | | **deep**(1) 87:20 | | |
| **counsel**(12) 13:2 22:17 48:15 48:17 76:23 77:5 96:24 97:1 99:11 99:13 106:22 106:25 | | | | **deeply**(2) 87:4 92:17 | | **didn't**(25) 13:14 23:12 26:14 26:25 28:20 35:22 39:21 44:19 44:20 45:19 45:25 64:24 68:7 70:8 70:10 70:11 72:5 72:9 86:16 94:21 94:22 98:6 98:14 98:15 103:8 |
| **counsel's**(1) 14:15 | | | | | | |
| **count**(3) 79:12 80:25 101:9 | | | | | | |
| **counteroffer**(1) 59:24 | | | | | | |
| **counts**(9) 61:15 61:16 61:17 72:18 78:19 78:22 78:23 82:11 82:12 | | | | | | **differ**(1) 79:11 |
| **couple**(4) 32:10 33:13 97:8 98:12 | | | | | | |
| **couri**(1) 8:10 | | | | | | |
| **course**(6) 21:10 82:19 101:3 101:9 103:17 104:20 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| difference(2) 41:16 107:19 | | dougherty(23) 4:23 27:18 27:19 28:13 | | employees(16) 6:38 14:14 14:19 15:14 | | everything(1) 23:9 | |
| different(12) 19:15 24:20 26:4 26:9 31:13 | | 28:16 30:3 30:6 30:7 31:15 31:20 33:5 | | 31:22 36:8 40:8 40:11 40:22 41:12 41:17 | | evidence(1) 93:24 | |
| 36:10 36:14 42:18 42:25 74:13 96:17 | | 33:18 33:21 34:3 34:7 34:12 34:16 36:15 | | 42:21 42:24 107:5 107:12 107:14 | | evident(2) 74:16 90:19 | |
| 106:23 | | 41:22 43:12 43:13 43:14 44:4 44:7 | | | | evidentiary(1) 49:8 | |
| differently(3) 34:13 67:6 107:12 | | | | employment(4) 15:12 24:9 40:5 54:4 | | evolving(2) 55:21 78:21 | |
| differs(1) 15:2 | | dougherty's(1) 29:23 | | encountered(1) 21:18 | | exactly(8) 29:19 30:14 30:19 31:9 35:14 | |
| difficult(5) 89:24 92:1 99:22 99:24 100:12 | | douglas(1) 5:6 | | encouraging(1) 75:20 | | 39:3 41:19 106:21 | |
| difficulties(1) 54:3 | | down(6) 18:7 35:2 37:12 51:18 84:15 | | end(7) 19:9 58:16 59:1 87:16 92:21 96:6 | | |
| dilworth(1) 9:30 14:17 | | draft(4) 19:22 29:5 61:4 61:18 | | 100:18 | | examination(2) 94:6 101:13 |
| direct(8) 11:5 14:25 50:9 53:22 54:20 | | drawback(1) 68:15 | | | | examiner(5) 9:38 23:4 27:7 30:1 35:13 |
| 65:5 76:14 91:15 | | drew(1) 3:23 | | ends(1) 90:9 | | example(28) 23:19 26:5 40:21 53:1 53:12 |
| | | drive(2) 4:25 68:5 | | enduring(1) 81:4 | | 54:20 61:4 61:6 61:8 61:21 78:24 79:8 |
| directed(1) 35:7 | | driving(1) 68:7 87:10 | | engaged(2) 21:4 90:7 | | 80:2 80:6 80:8 80:8 80:11 80:13 81:10 |
| directly(1) 54:2 | | drop-off(1) 91:4 | | engagement(4) 21:24 22:1 24:1 26:7 | | 81:18 81:25 82:5 82:6 82:9 82:13 88:18 |
| directors(5) 4:15 8:42 27:20 106:23 107:13 | | dublin(1) 8:17 | | engineering(1) 97:15 | | 90:3 90:13 |
| disabled(1) 83:23 | | due(3) 79:13 101:2 102:3 | | english(2) 3:44 8:1 | | |
| disagree(5) 38:24 53:9 80:22 86:7 102:15 | | duetsche(1) 8:1 | | enhanced(1) 15:18 | | examples(2) 61:5 81:7 |
| disagreement(1) 102:20 | | dunn(1) 8:25 | | enhancement(4) 34:5 36:2 38:19 44:25 | | exception(1) 74:6 |
| disagrees(3) 52:24 53:6 64:9 | | during(2) 32:15 37:7 77:10 92:12 96:9 | | enhancements(1) 39:2 | | exchanges(1) 68:6 |
| disallow(1) 107:22 | | 106:8 | | enormously(1) 91:8 | | exclude(5) 15:13 34:11 |
| disallowed(1) 62:12 | | | | enough(5) 13:1 34:11 45:8 48:19 53:7 | | excluded(4) 29:25 31:22 31:22 32:5 |
| discharge(8) 79:9 79:14 79:14 79:16 79:17 | | duty(2) 54:11 54:17 | | ensure(2) 68:3 89:13 | | executives(1) 42:2 |
| 79:19 79:22 84:24 | | dysfunctional(1) 85:14 | | enter(3) 13:1 28:1 48:19 | | exist(1) 38:12 |
| | | | | entered(3) 12:7 32:9 34:17 | | existed(2) 52:5 53:24 |
| disclosing(1) 24:16 | | each(9) 16:10 22:13 30:12 30:20 35:4 | | entire(1) 87:3 | | existing(1) 38:11 |
| discourage(1) 84:1 | | 53:13 66:17 78:24 103:21 | | entirely(8) 43:1 54:23 61:14 61:20 62:24 | | exists(1) 20:25 |
| discourage(1) 84:1 | | | | 86:9 106:13 106:24 | | exonerated(1) 45:3 |
| discovery(15) 18:13 77:10 102:22 102:23 | | earlier(6) 21:18 21:21 23:20 63:21 81:17 | | | | exoneration(1) 44:11 |
| 103:5 103:10 103:12 103:22 104:4 104:5 | | 99:7 | | entities(1) 22:13 | | expect(3) 21:1 48:22 48:25 |
| 104:9 104:17 104:18 104:23 105:17 | | | | entitled(10) 33:23 34:2 36:16 36:23 37:1 | | expectation(2) 41:1 42:18 |
| | | earliest(1) 14:5 | | 38:21 41:14 86:1 88:11 107:16 | | expense(2) 22:24 26:3 |
| discreet(1) 33:7 | | earned(2) 41:12 45:18 | | | | experience(1) 24:19 |
| discuss(1) 19:13 | | earthquake(1) 97:15 | | entitlement(1) 44:6 | | experienced(1) 82:19 |
| discussed(2) 19:24 21:1 | | ease(1) 50:8 | | envelope(1) 76:15 | | experiences(1) 68:19 |
| discussing(2) 94:13 94:14 | | eccentric(3) 84:12 84:22 85:4 | | environmental(1) 92:16 | | expert(3) 23:3 23:13 25:12 |
| discussion(2) 28:10 45:10 | | echo(1) 57:25 | | ephraim(1) 6:31 | | experts(1) 26:11 |
| discussions(2) 50:5 59:23 | | ecro(1) 1:41 | | equal(1) 29:15 | | expiration(3) 63:12 67:3 74:10 |
| disguised(1) 79:20 | | edgar(1) 6:7 | | equally(1) 91:2 | | explain(3) 47:15 67:5 81:7 |
| dismiss(4) 77:17 78:14 82:15 89:24 | | editor(4) 85:6 85:8 90:17 98:8 | | equated(1) 96:5 | | explained(1) 79:4 |
| dismissive(1) 101:12 | | editorial(1) 53:9 | | erens(1) 8:43 | | exposed(1) 91:13 |
| dispute(6) 34:5 36:22 57:20 77:11 90:14 | | educational(1) 92:16 | | ernst(1) 10:7 | | expressed(1) 87:17 |
| 103:16 | | effect(3) 24:22 81:6 101:10 | | erroneous(1) 55:23 | | extending(1) 101:12 |
| | | effective(1) 101:8 | | escape(1) 89:5 | | extent(8) 16:18 17:3 33:10 40:25 48:5 |
| disrupted(1) 54:1 | | effectively(1) 79:20 | | especially(4) 15:17 60:11 76:24 91:19 | | 57:19 106:2 106:16 |
| disruption(1) 62:8 | | efficient(1) 22:7 | | esq(73) 1:26 1:27 1:28 1:29 1:36 2:5 2:11 | | |
| distinction(2) 41:5 43:4 | | efforts(5) 77:1 87:18 89:19 89:21 93:7 | | 2:12 2:18 2:19 2:25 2:31 2:38 2:44 3:3 | | extraneous(1) 37:1 |
| distributions(1) 17:4 | | eggert(1) 8:29 | | 3:4 3:10 3:16 3:17 3:23 3:31 3:37 3:38 | | eye(2) 12:13 86:7 |
| district(1) 1:2 | | egi-trb(1) 7:42 | | 3:45 4:2 4:8 4:9 4:17 4:23 4:24 4:31 5:5 | | |
| division(2) 65:12 66:11 | | egregious(1) 86:19 | | 5:6 5:7 5:8 5:9 5:13 5:14 5:15 5:16 5:17 | | face(1) 49:24 |
| docket no. 11792(1) 50:12 | | ehmer(1) 8:34 | | 5:18 5:19 5:20 5:24 5:58 5:42 5:47 6:17 | | facie(1) 82:23 |
| document(2) 104:20 106:24 | | eisele(1) 8:38 | | 6:19 6:35 6:40 7:3 7:19 7:23 7:25 7:33 | | facing(1) 62:9 |
| documentation(1) 71:4 | | either(13) 14:12 18:7 18:24 21:2 44:2 | | 7:35 7:47 8:2 8:17 8:48 9:2 9:6 9:8 9:13 | | fact(24) 16:19 25:22 28:4 32:12 34:14 |
| documents(2) 28:1 29:17 | | 47:3 52:23 53:14 53:22 54:12 54:21 98:14 | | 9:17 9:22 9:31 9:35 9:43 10:4 10:8 | | 35:21 35:24 36:24 37:1 37:6 44:16 44:23 |
| does(16) 15:16 20:9 20:10 22:14 38:10 | | 105:16 | | | | 53:8 54:7 54:17 67:20 68:6 72:11 80:16 |
| 38:11 45:6 49:5 52:18 53:10 56:5 67:20 | | elden(1) 4:22 | | essence(5) 15:1 15:1 15:4 82:12 88:20 | | 80:21 86:15 87:13 103:1 107:14 |
| 67:23 77:19 78:17 80:18 | | eldersveld(1) 5:28 | | essential(1) 100:11 | | |
| | | electronic(2) 1:49 108:17 | | essentially(4) 37:3 44:18 74:7 89:12 | | factor(1) 33:9 |
| doesn't(5) 15:25 32:10 53:7 64:2 69:18 | | element(1) 51:12 | | established(1) 36:12 | | factors(3) 52:13 77:20 78:17 |
| doing(5) 24:5 25:12 29:2 34:20 35:9 | | elements(4) 48:24 56:19 61:11 78:25 | | estate(8) 23:14 24:1 24:6 24:7 25:6 25:13 | | facts(18) 57:20 59:15 77:19 78:16 79:3 |
| dollar(1) 100:8 | | eli(1) 3:17 | | 32:16 36:19 | | 81:13 83:8 86:18 86:22 87:1 87:4 87:5 |
| dollars(7) 30:2 36:2 36:7 36:8 38:17 | | eliminate(2) 16:15 106:15 | | | | 87:9 87:11 89:15 90:2 90:4 90:8 |
| 38:23 45:2 | | eliminated(1) 17:1 | | estate-paid(3) 21:4 22:13 26:2 | | |
| | | elimination(2) 42:8 79:19 | | estate's(1) 24:1 | | factual(3) 93:24 100:13 |
| don(1) 4:38 | | elimination."(1) 53:6 | | esteem(1) 74:20 | | factually(1) 41:24 |
| done(16) 16:21 18:10 20:23 24:2 24:19 | | elimination"(2) 53:3 79:17 | | esther(1) 6:23 | | fail(2) 92:8 93:4 |
| 36:13 38:20 38:21 40:13 70:13 70:13 | | eloquent(1) 39:20 | | evade(2) 56:11 56:13 | | failed(2) 54:8 62:15 |
| | | else(6) 23:9 24:10 26:7 38:14 42:5 55:17 | | evan(1) 6:19 | | fails(3) 51:20 56:9 56:19 |
| don't(42) 13:21 14:8 15:7 15:24 15:24 | | elsewhere(1) 20:25 | | even(20) 21:14 25:13 26:12 37:13 38:18 | | failure(9) 71:6 75:22 77:12 77:17 78:10 |
| 16:14 17:25 18:14 20:25 21:25 23:14 | | emails(1) 74:17 | | 45:2 45:2 51:19 54:7 54:16 54:25 56:15 | | 78:14 80:4 82:15 86:21 |
| 24:17 25:19 26:19 34:5 34:12 38:19 38:24 | | embody(1) 81:24 | | 62:5 75:13 77:16 78:13 82:21 82:22 97:22 | | |
| 39:8 39:22 41:2 41:15 43:24 47:10 52:20 | | emergence(1) 38:12 | | 100:11 | | fair(3) 64:8 84:13 108:2 |
| 55:18 58:3 64:8 64:10 69:7 69:18 71:10 | | emery(1) 5:37 | | | | fairly(1) 52:22 |
| 93:17 94:2 94:23 101:16 103:2 103:4 | | eminence(1) 86:17 | | event(1) 54:24 | | fairness(1) 36:21 |
| 103:9 106:22 106:25 108:7 | | employ(1) 21:6 | | eventually(2) 21:19 28:1 | | faithful(1) 73:12 |
| | | employed(12) 15:14 15:19 15:22 21:22 | | ever(5) 61:21 98:2 98:6 103:5 103:10 | | fall(2) 23:6 72:18 |
| doubt(3) 89:21 91:23 102:19 | | 21:23 32:13 36:16 37:11 38:19 45:1 | | every(1) 52:21 | | fallacy(1) 55:5 |
| | | 107:14 107:15 | | everybody(1) 105:18 | | fallen(1) 67:25 |
| | | employee(1) 41:9 | | everybody's(1) 86:1 | | falls(2) 55:22 55:24 |
| | | | | everyone(2) 25:8 42:5 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**false**(21) 51:24 52:3 52:11 52:19 52:23 53:3 53:11 60:25 61:16 62:4 78:22 79:2 79:3 79:13 79:21 80:25 82:3 82:6 82:11 83:7 89:22

**falsely**(5) 59:13 59:16 79:14 81:6 81:20

**falsification**(1) 79:13

**falsity**(2) 79:1 86:20

**family**(23) 54:2 59:20 60:17 62:3 75:24 76:1 83:18 83:22 84:22 85:15 86:17 86:25 87:3 87:21 87:24 88:24 89:3 89:13 89:20 90:1 90:6 92:16 98:23

**family's**(4) 54:1 59:13 60:25 87:16

**far**(6) 40:2 77:11 80:19 81:15 85:16

**fargo**(1) 7:46

**fashion**(1) 18:9

**fast**(1) 76:11

**fatal**(1) 87:7

**fatally**(1) 83:25

**fault**(3) 51:25 79:1 92:25

**favor**(2) 33:9 33:17

**favorite**(1) 90:25

**fcc**(1) 29:23

**fdic's**(1) 23:21

**feasibility**(1) 38:14

**feasible**(1) 38:6

**february**(1) 66:15

**february 4th, 2008**(1) 75:1

**federal**(1) 80:17

**fee**(14) 9:38 13:3 13:4 20:16 20:18 20:19 20:21 21:7 21:13 23:2 23:4 27:7 65:16 76:15

**feel**(3) 90:25 91:1 103:4

**fees**(3) 21:7 21:24 22:3

**feld**(4) 3:2 8:16 19:8 102:12

**fellows**(2) 37:10 37:21

**felt**(4) 75:18 83:18 83:19 90:21

**few**(4) 52:19 77:7 93:13 94:8

**fifth**(1) 81:18

**fiftieth**(1) 3:40

**fights**(2) 21:24 21:24

**figure**(3) 42:10 53:19 53:20

**file**(5) 39:21 50:18 68:21 76:2 76:5

**filed**(30) 12:16 12:18 13:2 16:18 16:22 16:24 20:15 28:11 29:24 30:2 31:25 35:11 49:3 50:11 51:20 52:15 56:1 59:7 61:21 62:6 67:14 69:3 69:4 69:6 69:21 70:4 80:18 99:17 106:11 106:12

**files**(3) 67:11 67:13 68:16

**filing**(26) 15:23 23:20 50:22 50:23 50:24 51:3 64:10 65:15 65:16 66:23 66:24 67:6 67:9 68:3 68:11 68:18 68:24 69:9 69:15 71:16 75:15 75:17 95:2 95:4 96:17 101:7

**filings**(1) 50:8

**final**(4) 23:4 27:25 28:11 98:20

**finalize**(1) 29:3

**finalizing**(1) 29:17

**financed**(2) 38:10 38:11

**financial**(2) 26:5 92:14

**find**(6) 18:17 69:25 84:20 85:7 91:8 92:25

**finding**(1) 75:2

**findings**(1) 66:12

**finds**(1) 105:11

**fine**(6) 12:8 13:18 19:14 27:2 96:16 105:8 105:20 108:1

**finger**(1) 3:22

**finished**(1) 75:24

**firm**(13) 21:8 22:20 23:22 29:24 42:4 48:14 59:18 59:18 59:20 69:19 86:25 88:24 96:23

**first**(28) 13:15 14:12 35:2 37:8 39:25 50:16 57:3 58:12 58:16 58:22 62:5 63:2 63:3 64:2 66:20 67:11 70:15 71:3 72:22 73:5 73:14 75:15 81:8 82:24 100:4 104:7 104:8

**fitzsimons**(2) 30:23 31:7

**five**(10) 35:18 42:2 42:5 42:6 42:12 42:16 43:20 91:16 91:18 100:10

**five-minute**(2) 49:10 78:2

**flagrancy**(1) 86:20

**flat**(1) 44:16

**fleet**(1) 12:11

**flighty**(1) 85:3

**flip**(1) 16:20

**flipping**(1) 16:7

**floor**(2) 3:32 3:40

**flower**(1) 3:39

**fly**(1) 39:23

**focus**(1) 101:16

**focuses**(1) 32:11

**follow**(3) 18:19 34:24 89:18

**followed**(2) 63:8 103:21

**following**(3) 53:4 71:15 86:15

**follows**(4) 66:22 74:13 80:25 81:10

**for**(267) 1:2 1:25 2:4 2:10 2:30 2:37 3:1 3:15 3:29 3:44 4:1 4:7 4:15 4:30 4:37 5:3 5:12 5:45 6:1 6:5 6:12 6:16 6:26 6:30 6:34 6:38 6:43 7:1 7:6 7:11 7:14 7:18 7:22 7:28 7:32 7:38 7:42 7:46 8:1 8:5 8:9 8:13 8:15 8:23 8:28 8:32 8:37 8:40 8:46 9:1 9:5 9:11 9:16 9:20 9:25 9:29 9:34 9:38 9:42 9:46 10:2 10:7 12:4 12:15 13:2 13:3 13:4 13:18 13:25 14:4 14:17 14:18 16:4 16:9 16:18 18:15 18:21 19:8 21:9 21:9 21:23 22:23 23:2 23:2 23:3 24:1 24:6 24:17 24:18 25:1 25:6 26:3 26:8 26:24 29:12 30:9 30:10 30:11 30:13 32:1 32:7 32:8 32:14 32:17 32:23 34:10 34:17 34:21 35:10 35:10 36:3 36:22 38:20 39:5 39:7 39:13 39:15 40:11 40:12 40:17 40:21 41:8 41:13 42:14 42:15 44:5 44:17 45:2 45:7 45:24 47:2 47:12 47:15 48:12 49:6 49:7 49:8 50:1 50:19 51:20 52:2 52:5 53:9 53:20 53:21 53:24 54:9 54:11 54:12 54:14 54:18 54:20 56:12 57:7 57:16 58:9 58:11 58:20 59:22 60:18 60:20 61:21 61:23 61:23 62:14 63:12 63:14 63:22 65:10 65:24 66:1 66:3 66:3 66:15 66:17 67:3 67:20 68:20 68:21 69:4 70:3 71:6 71:17 71:11 73:15 73:16 73:17 73:18 73:18 73:25 75:3 75:5 75:12 76:1 76:5 77:17 77:24 78:14 78:24 78:25 79:10 79:16 80:1 82:6 82:15 82:23 83:2 83:6 83:20 83:25 84:3 84:23 86:16 87:19 88:8 88:12 88:15 88:18 88:19 89:5 89:7 89:8 89:9 89:14 90:3 90:13 91:1 91:16 92:1 92:6 96:21 97:3 97:19 98:21 99:15 99:24 100:3 100:14 100:18 101:1 101:9 101:12 102:15 102:11 102:12 103:12 104:18 105:6 105:13 105:15 105:22 106:8 106:22 107:4 107:4 107:7 107:17 108:6 108:11

**force**(9) 53:2 53:5 79:9 79:13 79:15 79:17 79:18 84:24 87:10

**foreclose**(1) 40:20

**foregoing**(1) 108:16

**foresee**(1) 68:6

**forfeited**(1) 89:21

**form**(7) 18:21 26:23 26:25 70:3 72:1 72:3 73:6

**formally**(2) 63:24 92:12

**forman**(1) 1:34

**former**(19) 14:14 14:18 15:14 29:24 30:16 30:21 40:2 40:11 41:8 41:17 42:24 43:5 43:6 78:24 80:15 90:23 106:12 107:4 107:12

**formulate**(1) 99:16

**forth**(18) 53:23 54:4 61:4 61:11 61:15 61:16 62:13 62:22 63:5 71:8 78:22 80:1 80:7 80:10 81:25 82:13 83:8 93:4

**fortieth**(1) 12:20

**forty-second**(1) 12:21

**forty-seventh**(1) 12:23

**forward**(11) 13:5 24:15 29:3 29:4 29:13 29:14 29:17 29:23 35:7 35:17 42:6

**found**(5) 35:6 41:6 52:9 55:1 75:10

**foundation**(2) 32:14 96:18

**four**(14) 14:14 14:18 15:13 51:22 52:13 60:4 71:3 77:20 78:17 78:24 106:12 106:22 107:4 107:12

**fourth**(4) 12:12 13:13 73:10 81:18

**frame**(1) 57:15

**framing**(1) 101:4

**frank**(4) 6:39 6:43 6:44 70:8

**frankly**(2) 20:25 43:17

**frantically**(1) 16:7

**fraud**(18) 55:10 55:19 55:22 55:24 56:5 56:5 56:7 56:9 56:10 56:15 56:19 58:22 60:16 62:3 62:6 101:9 101:14

**fraud."**(2) 60:21 62:1

**fraught**(1) 68:17

**frederick**(1) 9:17

**free**(4) 19:5 22:10 57:18 89:14

**freeborn**(1) 8:28

**friday**(4) 19:25 20:2 28:3 60:4

**friedman**(1) 9:5

**friend**(1) 92:1

**frivolous**(1) 86:6

**from**(81) 12:4 14:10 15:3 15:7 15:17 16:4 17:23 22:13 22:17 25:7 27:11 29:10 29:25 31:17 31:21 34:1 34:13 35:2 32:7 38:13 38:15 40:2 40:20 41:22 41:25 42:18 46:3 48:2 48:6 49:5 49:13 49:24 53:17 56:17 57:2 57:6 60:5 61:12 64:10 65:25 66:15 71:15 73:17 74:16 74:19 75:10 75:22 78:7 79:15 79:16 79:17 86:8 87:13 88:11 88:12 89:14 91:4 92:15 94:25 95:2 95:7 95:8 96:3 99:23 100:2 100:25 101:2 104:4 104:7 104:9 105:5 106:23 108:17

**front**(3) 14:23 41:20 59:11

**full**(3) 35:10 37:9 80:24

**fully**(1) 59:6

**function**(2) 42:23 54:1

**fund**(1) 9:12

**fundamental**(4) 7:6 7:7 36:21 53:15

**further**(17) 23:8 27:14 28:9 39:1 40:12 45:11 56:22 65:14 71:21 76:21 81:14 90:20 99:9 101:1 101:12 105:15 108:6

**furthermore**(2) 44:19 61:14

**fuss**(1) 42:2

**future**(6) 21:3 36:17 38:2 43:24 103:11 104:23

**gadi**(1) 72:25

**gain**(1) 91:6

**gained**(3) 59:13 60:25 90:16

**garrison**(1) 7:2

**garvan**(1) 2:31

**gary**(1) 5:30

**gather**(1) 15:7

**gave**(1) 24:20

**gavin**(1) 5:47

**gecker**(1) 6:39

**geddes**(1) 3:9

**general**(2) 17:5 79:6

**generally**(4) 18:6 24:19 47:10 48:17

**gentilotti**(1) 2:30

**gentlemen**(1) 41:23

**geoffrey**(1) 5:18

**george**(4) 4:23 27:19 30:7 43:14

**get**(35) 16:12 24:16 25:21 26:8 26:10 28:6 29:7 29:8 29:9 29:11 29:12 29:16 33:24 36:1 37:8 37:9 37:11 37:12 37:22 38:10 38:11 38:19 38:22 42:4 45:1 45:24 60:9 64:10 70:10 83:13 83:20 98:2 98:4 98:6 108:10

**gets**(1) 77:10

**getting**(5) 27:10 35:24 37:4 93:18 104:7

**gifted**(1) 85:12

**gist**(1) 32:19

**give**(15) 18:24 20:3 20:9 23:19 34:22 58:12 71:16 75:15 76:11 76:11 76:12 97:4 100:21 101:3 104:13

**given**(9) 14:1 18:18 28:2 33:14 44:12 68:8 75:17 100:6 100:8

**gives**(2) 54:10 79:21

**giving**(3) 26:17 33:12 58:9

**glaringly**(1) 90:19

**glory**(1) 84:23

**goal**(1) 29:16

**godless**(1) 85:1

**goes**(6) 52:19 66:22 80:25 81:10 84:24 105:17

**going**(42) 12:16 13:5 17:24 20:3 20:4 21:2 23:7 24:15 25:10 25:15 26:3 26:11 28:19 35:1 36:3 36:5 36:6 36:7 37:11 37:12 38:1 41:19 42:6 43:12 44:12 45:1 58:1 58:8 58:12 63:23 64:6 64:11 64:16 65:6 76:21 78:11 84:18 98:2 98:3 98:4 102:25 106:6

**gold**(7) 21:9 23:3 42:3 42:7 42:9 42:14 43:15

**golden**(4) 3:4 22:5 22:10 24:13

**golden's**(1) 22:20

**goldfarb**(5) 2:25 22:16 22:17 23:10 23:12

**goldman**(2) 9:16 9:16

**good**(19) 12:2 12:3 14:3 16:3 22:7 22:16 27:18 28:8 30:6 33:5 34:9 34:10 35:18 40:12 42:24 49:15 56:12 57:12 102:10

**gordon**(2) 2:38 5:46

**got**(6) 21:19 24:13 26:3 39:11 98:7 105:16

**gotshal**(1) 7:22

**gotten**(2) 40:22 40:24

**governing**(1) 50:17

**government**(2) 76:7 98:7

**gradually**(1) 74:22

**graduate**(1) 91:25

**granted**(10) 30:15 31:18 62:16 62:23 77:12 77:18 78:15 80:5 82:16 93:5

**granting**(1) 33:9

**grasp**(1) 74:21

**grateful**(1) 105:22

**great**(3) 2:4 53:23 99:7

**greatly**(5) 59:23 74:15 77:4 88:7 93:6 97:23 99:4

**greed-driven**(1) 85:2

**gregory**(1) 5:38

**gremillion**(2) 13:10 30:9

**grippo**(2) 4:22 29:23

**gropper**(1) 8:21

**grounds**(1) 52:12

**group**(2) 6:39 97:21

**gruszka**(1) 7:8

**guarantee**(1) 34:4

**guardian**(1) 12:15

**guess**(10) 14:6 15:11 26:1 28:1 30:6 33:6 39:19 43:23 45:4 75:24

**guessed**(1) 95:24

**guff**(2) 8:5 8:5

**guidance**(2) 18:16 67:24

**gump**(4) 3:2 8:16 19:8 102:11

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| guy(2) 85:10 85:17 | | haven't(3) 20:23 24:18 38:21 | | holding(1) 23:20 | | indemnification(1) 15:6 |
| guys(5) 35:12 35:24 36:16 44:25 45:25 | | having(9) 29:6 39:20 40:23 50:4 73:19 | | holiday(2) 66:10 73:25 | | indemnities(1) 106:15 |
| gwen(1) 6:35 | | 90:24 91:21 92:2 103:25 | | home(2) 18:15 54:2 | | indemnity(4) 16:16 106:17 107:13 107:20 |
| hac(1) 48:18 | | | | honor(89) 12:3 12:4 12:5 12:9 13:20 | | independent(1) 57:9 |
| had(82) 13:14 14:4 16:20 20:7 26:25 | | hazeltine(1) 2:43 | | 13:25 14:16 16:3 17:10 19:7 19:10 19:20 | | index(1) 11:3 |
| 27:22 27:23 28:2 28:17 28:19 30:22 32:9 | | health(1) 92:16 | | 20:10 20:13 22:16 22:18 22:25 23:10 | | indicated(3) 47:23 48:25 93:23 |
| 35:6 35:16 39:3 41:23 42:1 45:10 45:18 | | hear(3) 15:17 47:6 57:2 | | 23:11 27:6 27:16 27:18 28:15 30:7 30:14 | | indicates(1) 33:11 |
| 50:4 52:5 52:6 52:14 54:6 55:6 60:7 | | heard(5) 22:15 48:2 57:3 100:7 103:16 | | 34:19 38:2 38:8 39:15 39:25 41:20 42:1 | | indicating(1) 47:17 |
| 65:19 66:5 66:8 67:9 67:14 68:2 68:6 | | hearing(28) 17:23 18:25 19:10 20:7 20:8 | | 42:7 42:9 42:11 42:16 43:9 43:11 43:15 | | indisputable(1) 90:14 |
| 69:8 69:9 69:11 69:21 70:13 70:13 71:10 | | 42:17 24:24 33:22 35:11 39:17 42:1 46:4 | | 44:8 46:5 46:17 46:20 47:1 48:1 48:8 | | individual(3) 30:18 67:11 85:6 |
| 71:13 71:21 72:4 72:5 72:5 73:4 73:22 | | 47:15 48:5 48:22 49:8 58:13 60:5 94:25 | | 48:10 48:20 48:23 49:9 49:12 49:15 49:21 | | individuals(15) 30:8 30:21 31:8 31:9 |
| 74:8 74:15 75:7 75:13 75:21 79:16 81:3 | | 95:2 95:8 100:17 100:20 102:19 103:17 | | 49:23 51:2 51:9 51:10 51:18 52:20 53:1 | | 31:12 32:25 35:5 38:16 39:9 42:5 42:6 |
| 81:22 83:18 87:8 88:24 89:15 90:3 91:7 | | 107:8 108:9 108:13 | | 54:10 55:4 55:16 55:18 56:20 56:23 57:5 | | 42:12 42:17 44:24 45:10 |
| 91:25 92:12 92:19 95:9 95:13 97:10 97:13 | | | | 57:6 57:9 57:14 58:7 58:25 86:3 93:14 | | |
| 97:17 97:18 97:19 97:23 97:24 99:16 | | heavily(2) 82:24 91:7 | | 99:8 100:6 102:10 102:17 103:4 103:16 | | induced(1) 60:17 |
| 99:16 101:21 103:19 104:14 104:19 104:20 | | heiligman(1) 6:40 | | 103:18 105:5 105:8 106:4 106:7 106:13 | | indulge(1) 27:20 |
| 106:9 107:8 | | held(1) 15:22 36:9 74:20 | | 106:21 107:1 108:7 | | industry(1) 23:25 |
| | | help(1) 85:17 106:6 | | honorable(5) 1:19 79:15 79:19 79:22 84:23 | | inept(1) 85:2 |
| hadley(1) 9:34 | | helpful(2) 17:16 70:19 | | honor's(3) 16:21 43:3 104:6 | | infer(1) 103:5 |
| hadn't(2) 45:18 70:7 99:7 | | helps(1) 34:3 | | hope(4) 18:21 76:1 89:5 100:7 | | inflicting(1) 87:20 |
| hand(9) 18:10 18:23 30:3 43:5 43:6 46:15 | | henke(132) 8:13 8:13 11:8 13:7 46:22 | | hoped(1) 47:17 | | inform(1) 66:12 |
| 70:10 76:25 80:4 | | 48:9 48:12 48:25 49:11 49:18 49:20 49:21 | | hopefully(1) 12:17 | | informally(1) 76:10 |
| | | 50:2 50:5 50:16 50:18 50:22 51:4 52:3 | | hopes(1) 83:18 | | information(9) 60:18 65:14 65:22 68:1 |
| handicapped(1) 77:4 | | 52:14 52:15 52:17 52:22 52:25 53:2 53:3 | | hopkins(1) 88:13 | | 71:15 71:24 73:6 73:7 87:13 |
| handle(1) 27:11 | | 53:12 53:18 54:12 54:19 54:23 55:7 55:9 | | horan(1) 2:5 | | |
| handled(2) 21:17 60:13 | | 55:11 55:20 56:17 56:24 57:4 57:11 57:12 | | host(1) 82:18 | | informed(6) 14:13 68:2 71:14 73:22 |
| hanging(1) 46:1 | | 57:14 57:17 57:24 58:5 58:7 58:8 59:2 | | how(26) 17:8 17:9 21:17 24:22 27:11 28:6 | | initial(2) 71:5 74:18 |
| happen(5) 15:21 24:3 28:11 33:19 38:1 | | 59:4 60:15 60:15 63:23 64:1 64:6 64:14 | | 35:14 35:23 36:11 40:8 43:17 45:6 60:13 | | initially(4) 22:8 50:4 101:6 101:16 |
| happened(10) 16:9 31:21 35:3 41:3 43:18 | | 64:16 64:19 64:21 64:22 64:24 65:2 65:6 | | 62:9 62:10 67:24 70:8 71:8 71:11 76:5 | | initiated(1) 53:6 |
| 72:20 75:19 92:18 96:9 | | 69:12 69:14 69:17 69:20 69:24 70:18 | | 80:3 85:20 95:23 96:1 99:21 101:3 | | initiating(1) 68:9 |
| | | 70:23 70:25 71:4 72:2 72:4 72:9 72:12 | | | | initio(2) 69:7 69:16 |
| happens(2) 28:25 80:21 | | 72:14 72:17 72:23 73:3 73:11 76:23 77:7 | | howard(1) 5:9 | | inquiry(2) 76:6 101:17 |
| hard(6) 32:17 34:24 36:22 39:17 91:6 | | 77:9 77:18 77:20 77:22 77:23 78:1 78:3 | | however(5) 18:8 18:17 75:13 79:19 81:13 | | insight(1) 87:15 |
| harder(1) 40:10 | | 78:5 78:9 78:15 78:17 79:16 80:14 80:17 | | huge(1) 21:13 | | insignificant(1) 21:14 |
| harm(32) 52:1 52:7 52:11 53:22 54:6 | | 80:18 80:21 81:3 83:13 84:8 84:10 84:14 | | human(1) 91:20 | | instance(4) 24:12 25:12 25:10 70:15 |
| 54:20 55:6 59:14 61:8 79:1 79:6 84:5 | | 84:18 85:11 85:20 85:22 85:24 86:3 86:13 | | hundred-cent-dollar(1) 17:7 | | instances(1) 25:12 |
| 84:22 85:19 87:20 88:3 88:4 88:4 88:5 | | 88:9 90:17 93:10 93:12 93:15 93:17 93:21 | | hutz(1) 4:16 | | instant(1) 90:15 |
| 88:8 88:15 88:18 89:8 89:8 89:9 90:11 90:12 | | 94:4 94:8 99:12 99:14 99:20 99:22 100:2 | | hypocritical(1) 84:25 | | instead(4) 32:11 65:16 72:8 88:10 |
| 90:18 90:20 91:3 91:11 97:9 97:10 | | 100:21 100:23 100:25 101:19 101:21 | | hypothetical(1) 24:20 | | instruction(1) 27:10 |
| | | 101:25 102:4 102:6 | | idea(4) 31:24 43:23 67:23 86:15 | | instructions(1) 60:12 |
| harmed(2) 88:22 89:6 | | | | identical(2) 107:12 107:20 | | intend(5) 16:2 22:1 49:5 49:7 101:16 |
| harms(17) 59:22 82:25 83:4 83:4 83:6 | | henke's(7) 48:11 49:24 50:3 50:10 50:14 | | identification(1) 72:19 | | intended(3) 56:3 86:23 90:7 |
| 83:8 83:9 83:10 83:21 83:22 84:4 88:12 | | 50:15 51:19 53:15 54:6 55:25 56:8 60:19 | | identified(2) 52:3 79:2 | | intends(1) 21:23 |
| 89:14 89:25 99:3 99:6 99:7 | | 80:16 81:11 85:14 88:11 100:12 | | identify(5) 17:12 49:20 52:18 71:7 76:16 | | intense(1) 102:20 |
| | | her(2) 66:12 107:9 | | ignoring(1) 48:6 | | intensified(1) 99:3 |
| harrisburg(1) 1:45 | | herbert(1) 12:13 | | ill-intentioned(1) 85:1 | | intent(3) 35:9 46:3 107:22 |
| harry(2) 13:9 30:8 | | hercules(1) 4:10 | | imagine(2) 47:10 84:9 | | intention(4) 16:15 16:16 57:23 106:14 |
| hartenstein(1) 35:9 | | here(29) 14:2 14:17 16:9 22:9 27:19 30:7 | | immeasurable(1) 52:7 | | intentionally(1) 74:22 |
| has(82) 12:14 13:6 14:3 16:24 24:21 | | 31:2 35:6 36:21 37:25 38:13 38:18 39:9 | | immediate(8) 41:14 41:15 74:21 88:4 89:6 | | interest(2) 83:24 91:6 |
| 25:17 31:5 32:16 36:10 36:13 43:24 44:3 | | 44:21 44:22 48:6 48:13 50:17 53:14 54:18 | | 89:8 90:11 90:12 | | interested(1) 14:2 |
| 44:3 47:7 48:6 48:25 49:3 49:6 50:7 | | 55:10 77:5 77:7 79:10 90:24 98:15 100:7 | | | | interesting(1) 41:24 |
| 50:15 50:16 51:5 51:10 52:5 53:7 53:18 | | 101:18 106:9 | | immensely(1) 92:18 | | interfered(4) 54:21 54:22 77:1 |
| 53:22 54:23 55:13 60:23 66:1 68:14 70:15 | | here's(2) 60:14 85:12 | | implementation(1) 32:15 | | interfering(1) 87:18 |
| 80:17 82:21 89:20 93:25 100:4 103:3 | | hertz(1) 9:29 | | implicated(2) 35:13 35:14 | | interim(2) 13:3 13:4 |
| 105:14 106:21 106:23 | | he's(5) 28:21 34:24 88:11 91:5 105:12 | | implications(1) 74:6 | | international(1) 57:9 |
| | | high(3) 74:20 97:11 97:11 | | implied(3) 65:15 73:12 74:9 | | internet(4) 85:15 91:19 98:12 98:20 |
| hasn't(3) 39:5 39:17 48:7 | | higher(1) 26:12 | | imply(4) 67:10 72:17 74:7 86:22 | | interpretation(4) 15:11 67:19 68:1 68:14 |
| hastings(2) 9:42 9:42 | | highlighted(1) 19:1 | | importance(1) 29:15 | | interpreted(4) 66:24 67:5 67:6 68:12 |
| hauer(4) 3:2 8:16 19:8 102:11 | | him(17) 34:22 47:15 48:6 49:3 52:5 52:6 | | important(4) 26:2 29:12 35:3 43:4 | | interpreting(1) 70:1 |
| have(130) 13:20 14:8 14:20 14:23 15:6 | | 53:8 53:9 53:24 54:3 60:17 60:17 76:24 | | impose(1) 54:16 | | interprets(1) 70:5 |
| 16:21 17:2 17:3 17:6 17:20 17:25 18:3 | | 88:24 89:3 93:13 100:18 | | impression(5) 47:7 64:10 79:21 80:9 82:3 | | intervening(1) 106:8 |
| 18:15 19:1 19:12 19:22 19:24 19:25 20:2 | | himself(3) 49:20 52:9 55:1 | | improper(1) 70:3 | | interview(1) 97:21 |
| 20:22 22:18 22:25 25:15 25:20 27:1 27:24 | | hint(1) 20:3 | | improve(2) 52:8 105:9 | | interviewed(4) 91:16 92:12 97:20 98:2 |
| 28:15 28:16 28:21 30:6 31:16 33:1 33:7 | | hire(1) 22:2 | | inappropriate(2) 47:21 47:25 | | interviewees(1) 91:25 |
| 33:13 33:24 34:1 35:12 35:25 36:9 36:11 | | his(46) 23:4 23:5 41:22 44:1 47:3 47:14 | | inc(1) 7:28 8:28 12:25 | | intimately(4) 83:7 89:11 98:24 99:1 |
| 37:6 37:11 38:2 38:9 38:20 39:2 39:18 | | 49:1 50:18 51:5 52:1 52:2 52:16 52:16 | | incentive(2) 41:6 41:8 | | into(20) 13:11 26:8 26:10 30:18 31:7 36:2 |
| 40:24 40:25 41:12 41:14 41:15 41:19 | | 53:19 53:23 54:1 54:2 54:2 54:9 54:9 | | incentives(1) 41:8 | | 40:6 41:1 43:24 44:15 44:18 56:12 58:21 |
| 42:12 42:20 42:24 43:9 44:17 45:19 45:25 | | 54:3 55:2 55:6 55:7 55:11 56:16 56:16 | | incentivizing(2) 32:16 42:23 | | 62:9 63:23 66:19 72:22 75:9 87:15 93:18 |
| 46:16 47:25 48:3 48:13 50:5 51:16 52:25 | | 56:21 56:23 57:8 57:21 61:10 62:4 63:20 | | include(9) 35:18 42:21 71:24 76:15 76:15 | | |
| 54:3 55:2 55:6 55:7 55:11 56:16 56:16 | | 67:1 67:25 68:3 70:6 70:6 70:11 | | 86:14 88:3 91:3 102:2 | | introduction(1) 67:22 |
| 56:21 56:23 57:8 57:21 61:10 62:4 63:20 | | 72:17 72:23 74:21 74:23 75:6 76:2 77:1 | | | | inundations(1) 105:11 |
| 67:1 67:25 68:3 70:6 70:6 70:11 | | 77:4 81:9 83:11 83:11 85:21 87:2 87:10 | | included(5) 27:25 35:16 42:13 42:19 | | investigate(1) 84:4 |
| 72:17 72:23 74:21 74:23 75:6 76:2 77:1 | | 87:11 87:14 87:15 88:6 88:10 91:13 91:23 | | including(3) 32:22 35:5 35:8 | | investigated(1) 89:2 |
| 77:4 81:9 83:11 83:11 85:21 87:2 87:10 | | 92:19 94:18 95:1 96:14 98:18 98:21 99:6 | | inclusion(2) 42:2 45:16 | | investigation(6) 83:17 83:20 83:24 84:1 |
| 87:11 87:14 87:15 88:6 88:10 91:13 91:23 | | 99:8 99:14 100:2 100:19 101:5 102:12 | | incomplete(1) 82:2 | | 84:3 89:17 |
| 92:19 94:18 95:1 96:14 98:18 98:21 99:6 | | 102:13 103:16 105:8 105:22 105:25 105:25 | | inconsistent(1) 43:22 | | |
| 99:8 99:16 100:2 100:19 101:5 102:12 | | 106:21 107:18 | | incorrect(2) 73:5 78:21 | | investment(2) 7:7 7:7 |
| 102:13 103:16 105:8 105:22 105:25 105:25 | | | | incur(1) 26:3 | | invite(1) 17:14 |
| 106:21 107:18 | | hold(2) 19:9 68:2 | | indeed(1) 104:16 | | |

| Word | Page:Line |
|------|-----------|

invited(1) 97:19
involved(1) 27:14
involves(1) 25:24
involving(2) 46:25 61:25
irreversibly(1) 92:17
isn't(1) 38:5
issue(44) 16:24 17:17 17:21 19:24 21:1 22:8 22:22 23:19 22:19 24:24 26:6 26:7 28:2 28:23 28:23 28:24 28:25 41:21 44:11 44:11 45:19 45:23 55:8 60:3 60:14 70:1 76:22 77:13 77:13 77:14 77:15 77:15 78:12 78:13 80:14 82:5 82:16 86:5 88:5 88:7 101:2 101:21 102:19 104:16 105:1
issued(1) 20:9
issues(14) 14:9 16:21 19:23 20:20 28:2 44:13 68:5 77:11 77:14 78:12 82:17 88:2 101:5 101:10
item(12) 12:9 12:11 12:21 12:23 12:24 13:1 13:2 13:6 13:12 48:10 49:17 106:5
items(4) 13:6 13:20 19:2 102:8
its(27) 17:5 25:11 25:11 32:13 32:18 36:25 42:22 47:24 47:24 50:9 54:2 54:13 55:4 55:9 61:15 63:16 66:25 67:13 67:17 68:22 69:11 87:21 87:21 87:24 92:8 103:20 103:25
itself(2) 96:11 103:24
it's(49) 15:1 15:7 15:11 15:21 16:11 16:24 18:6 21:1 21:5 24:6 24:9 25:6 25:13 25:15 26:4 26:13 29:12 29:19 31:20 33:2 34:5 35:2 36:5 37:10 37:18 41:24 42:5 42:25 43:1 43:2 43:2 43:18 44:25 46:7 46:9 55:12 58:1 58:3 62:6 64:8 70:19 70:21 70:21 85:13 91:20 96:6 100:18 101:23
i'd(22) 12:5 18:23 30:3 43:23 53:15 57:24 58:13 58:16 58:16 58:17 62:9 64:20 66:18 69:22 70:25 79:25 88:2 96:14 97:8 98:15 98:18 101:17
i'll(31) 15:17 18:10 18:24 23:19 26:14 27:14 27:14 39:24 43:13 46:18 47:8 47:12 47:17 55:11 56:24 57:3 57:11 58:19 58:20 61:7 61:8 62:20 64:12 67:5 83:13 93:19 95:6 100:21 101:2 102:16 105:3
i'm(47) 13:13 14:17 14:21 17:15 18:19 19:16 19:24 20:16 20:20 20:22 21:20 23:7 23:8 24:21 25:2 25:16 26:16 27:19 28:5 30:7 38:7 38:8 38:14 39:9 39:19 40:18 42:5 42:10 46:9 48:8 58:8 58:8 58:10 64:6 64:11 65:6 69:7 69:9 77:5 81:19 83:8 84:11 89:9 93:17 93:17 95:5 105:13
i've(14) 18:10 18:16 18:20 19:16 20:25 21:17 25:23 47:23 48:2 51:8 71:8 73:8 78:22 107:8
james(4) 1:26 3:37 5:24 5:42
jane(1) 7:33
janet(1) 18:23
january(45) 23:15 63:17 66:14 95:1 95:8
january 12th, 2009(2) 67:2 69:4
january 7th, 2009(1) 74:1
jason(1) 10:4
jenner(1) 7:42
jesse(3) 9:31 14:16 107:4
jessica(1) 1:28
jillian(1) 5:19
jim(1) 13:25
job(4) 54:22 98:3 98:4 98:6
john(3) 9:39 10:8 27:6
johns(1) 88:13
johnston(1) 3:37
johnston-allen(1) 9:2
join(1) 47:18
joinder(1) 49:4

joined(1) 57:2
joins(1) 57:8
joint(1) 13:13
jointly(1) 1:6
jonathan(1) 1:29
jones(4) 3:36 6:19 8:42 8:48
joshua(2) 3:38 9:48
journal(5) 91:6 91:7 97:14 97:14 97:19
jpmorgan(2) 3:15 7:18
judge(4) 1:19 1:20 104:15 105:17
judgment(1) 36:25
julie(1) 9:2
july(11) 1:14 12:1 14:6 30:15 47:20 47:22 60:3 60:4 61:22 99:17 108:20
july 2nd, 2008(1) 75:11
july 3rd, 2008(1) 75:8
juncture(2) 29:22 35:17
june(5) 14:4 17:23 19:3 47:19 50:11
jurisdiction(1) 20:24
just(58) 12:5 16:7 16:19 19:23 23:5 23:11 26:1 26:7 28:12 28:20 28:20 29:18 32:2 32:9 32:11 33:13 36:14 38:16 39:20 41:4 42:10 43:22 44:8 44:15 44:23 44:25 45:3 49:19 57:15 58:1 70:9 71:10 76:11 78:2 79:11 79:23 82:4 84:18 84:20 86:4 87:7 93:13 93:17 94:8 95:24 97:18 97:25 98:7 100:6 101:3 101:17 102:17 105:8 105:14 105:24 106:19 107:5 107:5
justice(7) 4:30 83:6 87:12 89:4 89:13 89:19 92:24
justify(2) 62:17 93:6
juvenile(1) 54:3
kalenchits(2) 7:11 7:11
kaneene(1) 7:15
kansa(30) 1:27 5:11 46:20 46:20 46:25 48:1 48:10 48:23 49:12 49:15 49:16 49:19 49:23 51:2 51:9 51:12 51:15 51:17 55:16 55:18 56:23 57:5 57:7 93:11 93:13 94:3 94:7 99:8 100:6 100:16
kasowitz(1) 9:5
katharine(1) 3:45
katherine(1) 9:43
kaye(1) 7:32
keep(1) 42:24
kelli(1) 9:22
kelly(1) 108:21
kempner(1) 6:30
ken(4) 1:27 5:17 46:20 49:15
kenneth(1) 6:9
kept(1) 92:15
kerriann(1) 5:20
kevin(3) 1:19 4:2 5:15
kind(8) 13:1 26:3 32:18 33:6 33:14 48:19 75:6 98:19
king(4) 2:32 3:25 4:32 5:18
kjc(1) 1:5
klauder(1) 4:31
kline(1) 5:13
knew(4) 74:7 87:6 91:15 92:9
knit(1) 91:20
know(60) 13:14 19:16 20:19 20:25 21:23 22:3 23:25 25:16 25:21 26:4 26:8 26:25 27:15 29:12 29:14 29:16 33:7 33:10 34:25 37:21 39:1 41:2 41:15 43:16 43:19 44:5 55:9 55:10 62:10 64:8 67:9 69:7 70:8 70:12 72:5 72:9 75:14 83:24 84:6 84:16 85:17 85:25 90:21 92:5 93:17 93:20 94:3 94:22 94:23 94:24 95:11 96:14 97:23 98:9 98:13 98:15 99:24 106:22 107:24
knowing(1) 42:23
knowingly(1) 87:6
knowledge(3) 15:10 61:10 92:4
known(1) 72:18

knows(1) 38:1
koch(2) 8:47 8:47
kopacz(1) 5:38
krakauer(1) 5:14
laid(2) 30:10 30:11
landis(2) 2:10 2:12
landline(1) 14:20
language(12) 17:18 18:9 18:20 27:25 28:6 28:17 28:20 29:7 29:10 102:14 103:18 104:6
lantry(1) 5:15
large(2) 22:24 62:22
largely(4) 68:18 81:1 81:2 92:19
last(9) 16:6 16:22 27:24 33:22 34:23 90:11 95:11 105:12 106:9
lastly(1) 63:8
late(3) 60:4 67:5 97:7
lately(1) 38:20
later(7) 15:5 35:20 42:15 62:1 67:5 84:19 107:25
laughter(3) 20:5 42:11 65:4
laura(1) 8:38
laurie(1) 4:8
law(7) 2:30 9:5 18:10 21:8 43:25 50:17 50:17 50:20 56:10 60:9 69:13 69:25 70:5 70:14 76:6 101:7 101:15
lawsuit(19) 59:7 61:23 62:18 62:24 65:15 68:9 68:24 75:4 75:15 75:17 76:2 76:6 76:24 86:5 87:19 92:6 96:17 96:22 96:24
lawsuits(3) 80:17 81:12 97:24
lawyer(2) 26:6 47:14
layton(1) 3:22
lbo(1) 30:19
lead(1) 71:9
leaders(1) 91:17
leading(4) 91:6 91:7 97:14 97:14
leads(1) 41:19
least(13) 16:9 22:4 22:8 32:4 34:23 46:11 51:22 64:7 91:16 91:17 91:18 92:2 101:4
leave(7) 13:5 37:7 37:8 53:5 79:18 104:7 104:10
leaves(1) 85:9
leaving(2) 89:4 92:17
lee(1) 6:7
left(7) 15:23 17:22 53:2 60:12 80:9 86:17 101:18
legacy(2) 85:10 85:14
legal(8) 40:3 40:4 41:5 43:4 59:5 63:20 69:10 100:13
legally(1) 51:25
lemay(30) 2:18 15:20 16:3 16:3 16:12 17:10 34:21 34:22 39:14 39:15 39:15 41:18 43:9 43:11 43:22 44:1 45:24 48:2 49:5 57:6 57:6 102:12 103:19 105:2 105:5 105:5 105:21 106:6 106:7 106:7
lemay's(1) 19:3
lenders(2) 3:30 5:46
leonard(1) 1:35
less(5) 54:14 79:15 84:23 85:16
let(34) 14:14 14:25 15:25 16:12 27:14 28:14 29:1 31:14 41:10 41:18 42:7 42:22 52:11 56:6 57:1 57:2 57:15 58:7 58:21 64:2 65:6 69:24 77:14 77:22 79:11 84:18 86:4 86:4 87:21 93:19 94:3 95:10 95:14 100:4
letter(27) 19:3 28:7 47:13 47:19 47:21 47:22 56:2 56:3 61:22 65:23 66:9 71:5 71:20 72:15 73:3 73:5 73:15 73:24 85:6 85:8 90:17 94:18 94:20 95:7 95:15 98:8 98:10
letters(2) 47:9 75:9

let's(7) 20:6 33:16 42:21 48:9 49:10 49:10 84:19 102:7
level(3) 2:33 86:21 92:6
levine(3) 8:46 8:47 48:14
lewis(1) 9:12
lexington(1) 3:18
liang(1) 6:9
libby(1) 7:19
library(1) 76:7
liebentritt(1) 4:38
light(3) 70:21 91:2 100:12
like(45) 19:4 19:9 21:17 22:11 24:13 32:9 39:10 39:22 43:17 46:15 49:1 57:23 57:25 58:13 58:16 58:16 58:17 58:22 60:2 62:9 64:20 65:16 69:22 71:1 76:21 79:10 79:25 85:17 85:18 86:10 88:2 90:23 92:17 93:13 97:8 99:11 99:14 99:18 99:21 100:9 102:2 102:17 104:12 104:21 104:25
likely(5) 41:14 55:12 80:19 81:15 82:2
limit(1) 101:16
limitation(5) 56:12 56:14 60:20 66:21
limitations(24) 50:19 51:14 62:14 62:21 63:3 63:4 63:12 63:19 63:22 67:3 67:16 68:16 69:1 74:11 75:11 75:12 75:14 75:16 76:3 76:19 76:21 93:2 101:8 101:12
limited(2) 14:13 22:8
line(2) 58:24 58:25
linked(1) 89:11
list(2) 41:1 75:12
listen(2) 21:22 94:1
listening(1) 34:17
litigate(1) 24:22
litigated(1) 45:19
litigation(12) 17:19 18:14 22:23 24:24 25:24 27:23 30:19 31:5 33:3 33:16 41:13 103:17
litigations(1) 26:11
little(6) 14:22 24:20 31:21 42:7 43:18 91:23 95:6 99:16
litvack(1) 7:23
live(1) 18:25
llc(7) 2:43 6:26 6:43 8:37 9:25 10:3
llp(25) 1:25 2:17 2:24 3:2 4:7 5:4 5:23 5:41 6:12 6:39 7:18 7:22 7:32 7:42 7:46 8:16 8:28 9:1 9:12 9:21 9:21 9:30 9:42 10:7 10:7
local(2) 21:3 21:16
lockbox(1) 4:33
lodge(1) 4:16
logic(1) 54:12
logistics(2) 28:5 28:24
long(5) 24:2 48:25 56:18 89:4 100:11
longer(4) 32:12 36:16 37:5 45:1
look(15) 16:23 18:6 19:12 23:7 24:3 24:4 26:2 31:4 32:13 39:17 43:25 44:2 46:12 96:14 106:9
looked(1) 31:3
looking(4) 17:12 25:11 70:9 70:10
looming(1) 76:4
los(1) 3:41
loss(1) 91:5
lot(3) 32:21 99:23 102:22
lotsoff(1) 1:29
ludwig(1) 5:19
lugano(1) 1:41
lynch(2) 4:7 7:32
macey(2) 9:1 9:1
made(5) 26:11 18:7 18:16 24:7 24:8 25:1 25:1 33:8 35:19 36:12 39:20 40:21 42:9 45:11 50:22 51:23 54:9 59:23 60:16 71:20 79:24 91:2 99:2
madlyn(1) 7:35
magnitude(1) 22:3

**Word**        **Page:Line**

mail(2) 74:11 76:16
maile(1) 4:24
mailed(2) 64:4 65:8
mailing(13) 65:11 65:11 65:23 65:25 66:2 66:8 66:13 66:15 68:6 68:9 73:24 73:25 76:13
mailings(3) 71:9 75:5 75:10
main(12) 58:20 71:3 77:13 77:14 77:15 77:15 78:12 78:12 80:2 82:16 87:19 88:17

major(1) 35:15
make(22) 12:6 12:6 14:11 22:5 27:21 29:8 35:1 35:8 41:4 41:4 43:23 46:12 47:13 57:9 71:2 71:5 74:6 84:15 93:23 99:18 100:21 105:23
makes(3) 20:14 56:5 88:8
making(4) 40:3 40:20 51:25 100:7
malcolm(1) 13:8
malice(2) 79:6 79:7
maliciously(1) 88:22
mama(1) 18:15
man(1) 85:12
management(16) 3:2 6:2 6:2 6:6 6:6 8:9 8:16 8:20 9:47 9:47 19:9 32:17 35:7 36:4 36:5 102:12

manges(1) 7:22
manner(2) 72:20 102:21
many(3) 54:1 83:6 87:7
marbury(1) 12:12
marc(4) 2:19 4:17 5:5 5:8
marcell(1) 43:25
march 23rd, 2010(1) 67:17
marcia(1) 12:15
marked(1) 102:20
market(4) 1:11 2:13 2:45 4:11
marsal(1) 6:43
maryland(17) 48:14 48:16 50:17 50:20 51:3 51:21 52:14 56:5 66:22 67:19 70:1 75:12 76:6 76:7 96:3 101:7 101:15

material(3) 58:9 59:10 88:20
materially(2) 80:13 82:2
matter(19) 16:6 37:6 44:16 44:24 46:19 46:25 48:16 49:11 60:8 61:24 66:9 73:13 74:12 77:4 77:10 92:18 97:2 106:21 108:18
matters(4) 56:10 68:23 76:25 93:24
matthew(3) 6:43 6:44 8:34
mauceri(1) 9:13
maue(1) 9:38
mauro(1) 7:29
may(34) 16:8 17:20 17:20 19:5 24:9 27:13 27:13 28:1 36:9 40:25 45:13 49:19 55:7 57:20 59:3 64:23 70:2 70:20 70:24 77:1 78:8 82:9 87:2 87:9 87:11 87:15 92:19 98:20 99:10 99:13 101:4 101:20 102:3 102:17
maybe(6) 13:15 19:25 28:16 29:13 53:9 84:12

mayer(1) 3:45
mccarter(2) 3:44 8:1
mccloy(1) 9:34
mccormack(1) 5:7
mccutchen(1) 6:12
mcdaniel(1) 2:31
mcdermott(1) 5:37
mcneill(1) 4:9
mdl(1) 44:12
me.''(1) 42:11
mean(14) 15:24 23:5 26:4 39:9 44:16 44:23 45:6 45:9 66:14 71:10 83:25 84:2 95:10 101:16
meaning(1) 75:14
means(3) 44:10 45:6 45:21
mechanics(1) 75:15
media(1) 48:17

meet(2) 16:18 23:21
meeting(1) 92:15
meisel(1) 1:34
member(1) 103:23
members(2) 91:13 91:15
memories(1) 76:9
mentioned(2) 35:15 98:8
mercer(1) 8:28
mere(1) 60:4
merit(1) 18:17
merits(5) 51:16 51:18 58:10 106:20 107:25
merrill(2) 4:7 7:32
messrs(2) 40:7 40:21
mester(1) 3:38
met(2) 31:8 70:7
methodically(2) 59:19 86:25
michael(3) 5:32 6:12 6:13
michigan(1) 4:39
might(14) 14:3 18:9 18:21 25:12 28:9 40:9 47:10 67:24 70:6 74:21 74:23 84:9 89:14 107:25
milbank(1) 9:34
million(11) 21:10 26:8 38:9 49:24 52:2 54:18 59:21 80:1 86:6 86:14 88:9

mills(1) 5:20
mind(2) 13:14 62:6
mindset(1) 61:21
mine(4) 59:6 90:24 92:9 92:15
minute(4) 16:23 29:18 37:14 107:6
minutes(1) 85:22
mip(18) 13:11 29:25 30:17 30:22 30:24 31:6 31:7 32:15 35:6 36:11 37:7 38:21 40:18 41:1 42:3 42:13 42:19 42:21

mips(1) 37:6
misconduct(13) 59:17 59:19 59:19 83:19 84:1 86:24 87:2 87:5 88:13 88:23 90:5 90:8 90:9

mislead(1) 80:14
misplaced(5) 66:8 71:6 71:10 95:3 96:10
misquoted(1) 80:19
misread(2) 65:20 65:21
misrepresentation(12) 59:15 60:7 60:22 61:9 61:12 61:16 61:17 78:19 78:23 82:12 86:19 88:22

misrepresentations(2) 60:2 60:17
missing(1) 70:4
misstated(2) 65:19 88:7
misstatement(1) 88:17
misstates(1) 80:12
missteps(1) 58:11
misunderstanding(1) 15:9
mitigates(1) 33:9
mitzkovitz(1) 12:15
moderate(1) 90:3
modern(1) 85:12
moelis(1) 10:3
moment(5) 16:9 18:11 77:25 101:4 102:16
monday(1) 30:15
monetary(12) 59:21 59:22 62:17 62:23 80:1 80:3 80:5 80:5 86:4 86:14 93:6 97:9
money(10) 23:21 37:1 38:3 38:10 38:11 38:12 40:22 65:16 72:5 72:8

montengro(1) 9:6
month(9) 16:6 66:3 66:3 73:18 73:18 95:18 95:20 96:1 100:19
months(7) 22:19 67:2 73:11 73:20 95:19 96:6 100:2

more(22) 24:12 25:17 26:16 29:9 40:13 52:15 53:15 54:20 56:8 61:20 69:20 71:14 73:11 80:19 81:15 81:24 84:12 85:20 93:1 95:6 99:3 105:25
moreover(4) 40:13 68:22 71:12 91:10
morgan(3) 4:1 7:22 9:12
morning(10) 12:2 12:3 16:3 22:16 27:18 28:24 30:7 48:20 49:15 57:13

morris(1) 9:17
most(10) 13:16 18:9 23:15 24:17 29:5 50:12 55:12 58:8 83:2 91:1

motion(16) 13:9 20:14 29:23 30:2 31:25 33:9 34:17 35:8 36:14 39:4 40:20 47:12 48:18 77:16 78:14 82:15

mouth(1) 91:14
move(8) 20:14 29:4 29:13 29:14 29:17 29:23 35:17 51:10

moved(1) 74:24
much(12) 54:13 67:24 75:16 85:20 87:14 92:25 97:3 99:3 99:21 100:3 105:25 108:8

multi(1) 92:12
must(4) 31:19 51:21 55:2 71:15
muted(1) 58:25
myers(1) 6:16
name(3) 31:9 30:7 58:7
named(4) 30:23 31:6 42:2 42:13
namely(1) 17:3
names(5) 65:14 71:7 71:16 71:19 72:21
national(2) 21:16 96:18
nationwide(1) 75:3
naturally(1) 80:9
nature(6) 18:18 47:24 79:2 84:12 91:20 104:23

navigant(3) 21:9 22:10 23:2
near(2) 21:3 100:10
nearly(1) 82:20
necessarily(6) 15:24 18:14 21:20 26:1 64:9 69:19
necessary(4) 22:6 58:4 77:20 78:17
need(11) 16:23 23:7 24:3 57:21 64:2 65:13 67:20 77:25 90:19 101:1 104:18

needed(14) 22:2 56:1 65:13 65:16 65:22 68:21 71:14 71:18 73:7 75:10 78:25 79:4 83:9 91:11
needs(3) 18:20 85:17 92:15
negotiation(1) 41:1
never(8) 23:25 37:6 55:5 73:8 103:1 103:1 103:7 103:14

new(10) 2:21 2:27 2:40 3:6 3:19 3:47 9:11 55:20 60:22 62:6

newspaper(5) 50:1 54:12 59:8 61:25 72:24
next(7) 20:13 29:21 40:10 43:14 43:15 46:19 100:17

night(1) 16:22
no-no(1) 56:10
nobody's(1) 33:4
nolan(1) 6:35
non(2) 37:24 59:21
non-employed(1) 24:4
non-lawyers(1) 21:5
none(4) 21:10 32:25 52:12 56:17
nor(5) 48:7 48:8 54:5 69:9 92:13
normal(1) 98:7
normally(2) 39:16 66:2
norman(2) 1:36 12:3
north(6) 2:32 2:45 3:25 4:11 4:18 4:39

not(176) 13:13 13:23 15:8 15:9 15:14 16:16 16:20 16:25 17:6 17:20 19:1 19:25 20:3 21:13 21:17 21:19 21:20 21:25 22:8 24:19 24:21 25:2 25:10 25:12 25:25 26:7 26:18 26:25 27:1 27:13 28:5 28:18 30:11 31:22 32:2 32:5 34:10 35:10 35:15 36:4 36:16 36:18 37:4 37:7 37:11 37:12 37:14 37:18 37:20 38:5 38:7 38:15 38:19 38:21 39:23 40:5 40:11 40:18 41:3 41:23 42:6 43:1 43:2 44:3 44:11 44:25 45:1 45:6 47:15 47:16 48:24 49:5 49:7 50:6 50:18 52:8 52:24 53:10 54:15 54:24 55:3 55:4 55:13 56:5 58:10 60:7 60:12 61:9 61:10 62:6 62:17 62:20 63:19 65:25 66:5 67:10 67:15 67:20 67:23 68:6 69:8 70:4 70:21 71:6 71:8 71:10 71:18 71:22 73:1 73:4 73:10 73:11 73:19 74:11 74:15 74:23 75:1 75:5 75:6 75:7 75:14 75:15 76:7 76:23 77:3 77:5 77:5 77:16 77:19 78:14 78:16 78:18 79:9 79:22 80:18 80:23 81:19 81:24 82:13 82:14 83:1 84:11 87:9 88:9 88:16 90:1 90:23 91:10 91:22 92:2 92:5 92:13 93:1 93:5 94:25 95:2 97:3 98:5 100:12 100:13 102:24 103:12 103:24 103:25 104:13 104:13 104:16 104:17 105:1 105:13 105:20 106:18 107:15 107:15 107:17 107:18

note(2) 48:12 71:15
noteholder's(1) 22:21
notes(5) 12:15 68:24 69:1 76:9 76:17
nothing(8) 40:13 52:10 54:4 54:16 56:7 60:22 82:21 96:9

notice(4) 14:10 26:17 69:9 69:10
novack(2) 9:1 9:1
november(6) 31:23 41:21 43:19 46:3 46:7 46:9

novod(1) 2:38
now(53) 16:1 17:10 18:23 18:24 19:5 22:11 26:13 27:3 31:10 31:13 31:13 31:21 32:19 32:19 33:15 35:1 35:24 36:1 36:1 36:13 37:2 37:17 38:12 41:17 41:22 42:19 44:22 46:14 46:16 48:21 50:3 50:21 50:23 60:15 62:19 63:2 65:3 66:18 69:3 69:22 70:25 74:4 74:19 77:11 79:8 79:25 81:8 82:16 88:22 90:11 90:25 105:22 106:5

nowhere(1) 55:25
nrc(1) 92:13
nuance(1) 24:12
nuclear(4) 92:10 92:11 97:20 98:1
number(5) 26:15 47:9 60:16 62:22 103:24
oaktree(2) 6:5 6:6
oath(6) 64:12 64:20 65:3 93:23 93:25
object(3) 40:6 71:2 80:10
objected(2) 46:1 52:12
objecting(4) 14:18 15:14 50:4 81:19
objection(68) 12:10 12:12 12:14 12:19 12:20 12:21 12:23 13:7 14:13 14:23 15:1 17:13 17:18 18:7 27:22 31:19 32:14 35:11 43:1 44:1 45:5 45:9 45:11 45:16 45:16 45:17 45:20 45:23 46:22 48:11 48:24 49:2 49:4 49:6 49:17 50:3 50:7 50:10 50:12 50:13 50:15 51:16 51:17 52:7 53:2 53:23 58:1 58:14 58:18 58:18 60:4 60:6 60:8 61:3 61:19 62:10 62:12 67:17 70:15 78:20 92:24 92:25 100:5 105:24 106:3 106:12 107:25 108:3

objections(1) 45:22
objects(1) 106:2
obligation(1) 106:17
obliterate(1) 106:15
obliterated(1) 106:19
observe(1) 39:20
obsessive(1) 84:23
obstruction(1) 83:5
obtain(2) 54:4 87:18
obtained(1) 75:11

| Word | Page:Line |
| --- | --- |

**obtaining**(2) 104:7 104:8
**obviously**(10) 13:6 22:25 23:3 29:15 49:7 51:4 68:15 77:4 87:23 107:17

**occasion**(1) 106:9
**occur**(3) 54:24 55:3 94:22
**occurred**(2) 54:7 98:22
**october**(23) 50:2 55:13 59:12 61:1 63:18 64:4 65:8 65:10 65:11 65:22 65:24 66:1 66:13 67:2 67:4 67:14 73:7 74:14 85:12 94:11 94:18 95:8 95:15
**october 13th**(1) 72:15
**october 13th, 2008**(1) 71:20 73:2
**october 17th, 2008**(1) 73:16
**october 2nd**(1) 76:4
**october 2nd, 2008**(1) 68:22
**october 3rd, 2008**(1) 73:16
**october 6th, 2008**(1) 69:21
**october 7th**(1) 63:12 76:3
**october 7th, 2008**(1) 65:19
**october 8th, 2008**(1) 65:20
**october 9th, 2007**(1) 85:8
**off**(6) 15:5 15:9 16:15 23:9 30:10 30:11
**offered**(1) 92:13
**offers**(1) 70:20
**office**(4) 65:12 66:11 70:3 70:6
**officers**(10) 4:16 27:19 29:24 40:2 42:24 43:5 43:6 106:12 106:22 107:13
**official**(8) 2:10 5:3 10:2 16:4 39:16 59:17 86:24 88:23

**offline**(1) 107:9
**often**(1) 98:20
**ohio**(1) 12:24
**okay**(81) 13:22 18:2 18:5 19:16 19:18 19:21 20:1 20:11 23:17 23:18 25:4 25:5 26:21 27:5 27:16 27:17 29:21 30:5 34:7 35:2 44:7 46:8 46:10 46:15 48:9 48:21 57:11 57:17 58:5 58:6 58:21 59:24 59:24 62:8 62:25 63:9 63:25 64:1 64:1 64:2 64:6 64:14 64:19 64:21 64:24 65:2 65:6 69:17 70:25 70:25 72:11 72:13 74:3 78:5 78:9 82:16 84:8 84:21 85:7 85:24 86:1 87:25 90:9 93:21 94:4 94:5 95:14 97:6 97:8 98:6 99:14 100:1 100:23 100:24 101:25 102:4 103:15 105:12 106:5 108:2 108:5
**olivia**(1) 7:29
**omission**(1) 80:13
**omnibus**(8) 12:10 12:12 12:13 12:18 12:20 12:21 12:23 100:17
**once**(5) 21:18 28:25 29:7 69:20 70:15
**one**(65) 1:30 3:5 3:24 16:5 16:21 27:1 28:3 28:15 35:19 40:24 41:5 43:5 43:6 43:13 44:8 45:4 45:16 45:20 51:13 52:21 53:1 53:12 54:13 54:16 54:16 55:11 55:20 55:22 55:23 56:14 60:3 60:10 60:21 61:6 61:7 66:3 66:3 68:12 68:14 68:20 73:18 73:18 79:23 80:2 80:9 83:13 83:22 84:4 84:22 85:5 90:19 90:25 91:18 95:20 97:17 97:17 98:20 99:14 101:19 102:15 102:15 104:11 104:22 105:12 106:5
**one-and-a-half-page**(1) 56:2
**one-month**(1) 95:23
**one-year**(5) 50:19 50:23 50:25 51:4 55:8
**ones**(2) 43:6 102:8
**only**(23) 15:12 22:9 31:13 43:23 44:10 45:6 45:23 58:20 60:10 62:4 68:4 68:4 71:22 74:22 75:13 80:13 88:17 89:9 92:11 97:21 100:10 102:14 104:16

**open**(3) 17:21 17:22 44:10
**operate**(1) 15:13
**operating**(2) 26:18 33:15
**operator**(2) 58:24 58:25

**opinion**(6) 19:22 20:9 28:3 29:2 29:14 29:16
**opinions**(3) 80:22 80:23 81:19
**opportunistic**(1) 85:2
**opportunity**(6) 19:12 57:22 58:10 93:8 93:25 107:9
**opposed**(2) 25:20 67:8
**opposing**(1) 70:20
**opposition**(1) 57:18
**oral**(1) 16:10
**orange**(1) 4:18
**order**(28) 13:14 13:20 21:2 22:11 22:21 23:21 26:24 28:1 28:18 28:25 29:1 29:5 29:5 29:8 29:12 29:13 29:15 31:23 32:4 32:9 34:16 42:4 43:19 47:17 48:19 65:16 72:5 72:8
**ordered**(1) 30:20
**orders**(3) 13:1 20:22 22:25
**ordinary**(3) 22:4 22:5 26:1
**organization**(1) 92:12
**original**(24) 52:2 56:3 59:6 59:7 60:24 60:24 61:1 61:2 61:2 61:3 61:5 61:19 61:19 62:21 63:5 63:7 63:11 64:4 65:8 67:18 71:13 74:1 93:3 94:23
**originally**(2) 52:12 59:20
**orlando**(1) 107:5
**other**(43) 13:19 16:10 17:2 17:17 21:6 21:8 21:23 21:23 22:2 24:9 25:7 26:1 29:10 31:3 31:3 32:9 32:20 32:20 43:7 43:23 46:16 49:8 51:14 54:1 64:25 65:3 67:8 70:4 70:10 77:14 78:12 82:17 84:5 88:2 92:15 94:25 96:10 99:6 101:11 103:9 105:20 106:5 107:23
**others**(7) 15:17 17:15 39:3 39:4 39:18 56:25 85:5
**otherwise**(5) 15:6 16:21 22:12 90:3 105:25
**ought**(9) 18:15 21:15 24:3 24:4 24:8 26:12 38:3 46:2 54:15
**our**(24) 15:10 16:25 17:13 19:13 21:16 23:1 29:16 32:7 32:20 32:20 37:5 41:6 43:1 50:15 59:14 59:18 81:22 83:13 86:25 86:25 89:14 96:23 106:23 107:15
**out**(47) 18:11 18:23 22:3 22:5 22:6 23:11 23:23 25:25 26:24 29:13 30:11 32:20 32:23 33:2 35:17 35:21 35:22 35:22 35:25 38:9 38:10 38:11 41:11 42:10 44:16 44:17 52:25 53:1 54:17 55:22 55:24 56:15 68:18 74:24 75:4 77:2 79:5 83:20 86:11 87:25 89:1 89:23 90:3 90:21 96:7 101:22 107:19
**outcome**(2) 33:3 105:16
**outlined**(1) 104:19
**outset**(2) 48:12 99:15
**outside**(1) 76:13
**over**(16) 19:9 21:9 25:11 26:7 28:7 30:3 30:10 31:5 46:1 49:2 56:24 76:13 82:11 87:17 90:16 102:20
**overall**(1) 74:20
**overdue**(1) 89:4
**overrule**(2) 18:8 106:3
**overruled**(1) 105:24
**overshadowed**(1) 85:13
**oversight**(1) 86:21
**overwhelmed**(1) 70:9
**overwhelmingly**(1) 90:2
**own**(5) 47:17 62:11 67:13 75:17 76:2
**ownership**(1) 36:5
**owns**(1) 45:11
**o'melveny**(1) 6:16
**o'neal**(1) 5:32
**p.a**(1) 1:35

**p.m**(2) 78:7 108:13
**packages**(3) 40:15 40:16 40:16
**pad**(1) 44:18
**page**(6) 32:13 43:20 44:1 59:11 59:11
**pages**(2) 41:25 100:10
**paid**(9) 32:8 33:1 33:4 35:24 37:5 37:12 46:2 72:4 72:5
**painstaking**(1) 74:25
**painstakingly**(1) 90:16
**papers**(10) 16:22 16:23 39:21 49:24 53:21 53:23 54:19 55:21 97:19 106:11
**pappas**(2) 14:17 15:3
**pappas'**(1) 107:7
**paragraph**(4) 14:25 62:2 62:2 81:23
**paragraphs**(1) 81:7
**paranoid**(1) 85:3
**paraphrase**(1) 45:25
**parasitic**(1) 85:1
**pardon**(2) 72:2 99:12
**parent**(1) 85:1
**park**(2) 3:5 3:46
**parke**(5) 2:17 5:4 16:4 57:7 105:6
**part**(17) 21:7 26:1 37:5 43:16 45:5 48:7 49:25 52:16 59:18 77:10 81:15 83:2 87:2 88:13 88:25 90:5 104:11
**partial**(1) 82:6
**participants**(4) 31:24 32:4 43:20 43:21
**participate**(3) 31:20 17:6 48:4
**particular**(6) 49:6 68:2 82:1 91:13 97:10 105:19
**particularly**(2) 75:23 100:12
**parties**(18) 14:10 16:10 17:20 17:24 17:25 18:8 19:15 50:6 60:1 71:16 72:19 80:22 81:20 101:17 102:15 102:20 102:23 103:19
**partners**(6) 6:30 8:24 8:24 8:37 9:25 9:25
**parts**(1) 105:2
**party**(1) 51:24
**parver**(1) 7:33
**passage**(1) 50:25
**passed**(1) 55:14
**past**(9) 31:5 40:9 44:6 60:11 74:19 83:6 83:8 87:21 89:14
**patience**(2) 78:10 85:24
**paul**(3) 7:1 9:42 9:42
**pauley**(2) 104:15 105:17
**pause**(3) 16:9 41:10 77:24
**paxson**(2) 9:30 14:17
**pay**(3) 32:22 65:16 72:5
**paying**(1) 26:5
**payment**(15) 25:6 31:6 31:25 32:1 32:2 35:6 36:1 41:14 41:15 42:15 45:8 65:22 70:4 72:1 72:3
**payments**(9) 30:22 30:24 30:25 31:2 32:20 33:23 36:17 37:25 40:18
**pending**(3) 18:14 30:18 41:13
**pennsylvania**(1) 1:45
**people**(21) 13:16 14:1 15:12 23:15 24:17 26:17 26:18 26:18 29:10 31:22 32:9 32:12 32:22 34:13 35:8 36:6 36:22 39:10 39:11 43:2 45:17
**perceive**(1) 103:11
**perfectly**(1) 105:7
**perform**(1) 107:17
**performed**(2) 32:8 32:23
**perhaps**(2) 62:1 97:4
**period**(12) 22:24 51:4 63:8 67:21 69:22 71:2 74:3 74:5 90:16 96:9 99:18 100:14
**periodically**(1) 25:23
**permanent**(1) 87:20

**permissible**(1) 101:15
**permitted**(1) 18:13
**pernick**(9) 1:36 12:3 12:4 12:9 13:19 13:22 13:24 26:23 27:4
**persecute**(1) 43:2
**person**(7) 14:12 25:17 58:12 91:8 98:10 104:4 105:16
**person(s)**(1) 104:9
**personal**(7) 65:17 72:4 72:6 72:8 80:22 82:18 103:6
**personalized**(1) 40:1
**personally**(3) 47:18 68:3 105:22
**perspective**(3) 35:3 36:8 38:15
**peter**(2) 7:8 8:10
**peters**(1) 8:28
**petition**(8) 15:13 15:15 15:19 15:23 41:13 107:13 107:14 107:16
**phillip**(1) 8:17
**phillips**(1) 4:17
**phone**(3) 13:17 14:15 104:19
**phrase**(3) 67:6 95:6 105:19
**phrasing**(1) 79:20
**pick**(1) 20:11
**piece**(2) 17:12 51:5
**pioneer**(1) 85:9
**pivotally**(2) 87:2 90:5
**place**(4) 29:12 41:21 67:8 92:24
**placed**(3) 30:18 30:25 31:7
**places**(1) 61:8
**plagiarism**(1) 80:21
**plagiarism."**(1) 81:17
**plaintiff**(9) 52:1 68:18 70:13 81:3 81:16 88:19 96:20 96:21 96:22
**plaintiff."**(1) 81:6
**plaintiffs**(1) 89:25
**plaintiff's**(1) 79:14
**plan**(26) 13:13 15:5 15:7 15:8 15:17 16:1 16:15 16:16 17:6 17:13 29:3 29:6 36:4 38:5 38:8 41:7 41:7 43:16 77:6 77:9 106:10 106:14 106:16 107:10 107:23
**plans**(1) 16:17
**players**(1) 35:15
**plaza**(3) 2:20 2:33 4:10
**plead**(1) 56:5
**please**(4) 57:12 64:15 93:22 94:2
**plight**(1) 87:16
**plummeted**(1) 91:24
**plus**(1) 75:15
**podium**(7) 16:6 30:3 41:22 49:2 56:24 57:12 105:3
**point**(32) 8:32 8:33 25:15 30:11 32:7 32:23 33:2 33:5 33:7 34:1 35:19 35:20 36:12 36:17 36:23 37:21 40:3 40:4 41:4 42:16 42:19 43:23 44:3 45:12 51:7 69:19 77:19 78:17 79:23 104:2 106:23 107:19
**pointed**(6) 32:19 35:17 35:22 52:10 54:12 90:21
**points**(9) 28:14 35:19 41:5 41:11 43:13 44:8 54:19 58:20 100:11
**polk**(2) 3:15 7:18
**portion**(1) 46:11
**position**(13) 14:5 28:12 31:9 31:12 32:3 37:17 39:18 39:22 39:23 39:23 39:24 42:25 92:10 92:13
**positions**(1) 59:25
**possibilities**(1) 68:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **possibility**(22) 34:4 61:25 62:3 63:2 63:4 63:6 67:16 69:3 76:20 81:1 81:3 81:11 81:21 82:18 86:23 88:3 88:5 88:6 89:1 89:11 90:12 90:13 | | **processing**(6) 66:3 73:8 73:18 74:1 95:25 96:5 | | **purview**(1) 47:16 | | **recall**(15) 14:4 16:22 27:22 42:1 91:24 94:10 94:13 94:15 95:7 95:17 96:3 96:16 96:17 96:23 98:19 | |
| | | | | **put**(23) 14:6 15:25 20:6 33:2 36:7 38:3 39:21 53:18 61:4 61:16 62:13 62:22 63:5 71:8 78:22 80:1 80:7 80:10 81:25 82:13 85:16 93:4 94:9 | | |
| | | **produced**(1) 1:50 | | | | |
| **possible**(5) 29:11 59:16 68:8 81:8 82:7 98:21 100:18 101:25 | | **product**(1) 24:15 | | | | **recant**(1) 35:8 |
| | | **profane**(1) 84:25 | | **putting**(4) 36:2 61:11 61:15 83:8 | | **recasting**(1) 60:20 |
| | | **profession**(7) 91:5 91:13 91:15 91:17 91:19 91:22 91:23 | | **puzzled**(1) 60:13 | | **receipt**(2) 60:23 67:21 |
| **possibly**(5) 71:9 87:2 87:18 90:5 97:1 | | | | **quarrels**(1) 105:15 | | **receive**(4) 47:9 65:25 76:7 79:22 |
| **post**(2) 41:12 48:16 | | | | **quarterly**(2) 13:3 13:4 | | **received**(19) 31:10 40:15 40:15 47:9 47:20 60:5 63:18 65:10 65:24 66:5 66:14 66:15 67:17 69:9 69:10 70:2 73:19 76:19 79:19 | |
| **post-hoc**(1) 55:5 | | **professional**(22) 21:22 23:14 23:22 23:25 24:4 24:17 26:3 59:17 80:20 81:13 81:16 82:19 86:24 87:8 88:13 88:23 91:3 91:11 92:7 97:11 97:11 103:23 | | **quest**(1) 84:23 | | |
| **post-petition**(4) 106:16 106:17 107:17 | | | | **question**(21) 14:7 23:12 24:3 24:11 24:15 24:21 25:17 28:8 31:14 35:13 37:1 38:10 55:12 69:19 79:2 82:5 95:5 98:21 99:15 101:6 101:19 | | |
| **posted**(2) 91:18 98:12 | | | | | | **recent**(1) 50:13 |
| **potential**(1) 68:19 | | **professionally**(3) 80:16 81:5 81:23 | | | | **recently**(3) 31:18 52:15 58:15 |
| **potentially**(4) 27:10 27:12 27:13 37:12 | | **professionals**(7) 21:4 21:6 21:8 21:23 22:2 22:13 103:21 | | | | **recess**(4) 49:11 49:13 78:6 78:7 |
| **potter**(1) 4:7 | | | | **questions**(15) 13:5 14:21 33:25 34:20 49:6 51:10 55:11 57:10 76:5 93:14 94:1 94:8 97:9 99:9 105:3 | | **recipe**(1) 105:15 |
| **ppearances**(2) 1:23 2:1 | | **professors**(1) 90:25 | | | | **reckless**(1) 84:25 |
| **practice**(2) 23:25 25:3 | | **profound**(1) 24:22 | | | | **recklessly**(1) 74:9 |
| **practitioner**(1) 28:6 | | **program**(1) 41:1 | | **quick**(1) 43:13 | | **recollection**(2) 67:18 96:14 |
| **pre**(1) 107:12 | | **progress**(6) 83:5 87:12 89:19 92:24 100:6 105:23 | | **quickly**(2) 29:11 51:10 | | **record**(10) 14:18 47:3 66:7 67:23 68:17 73:22 95:13 102:11 103:9 107:4 |
| **pre-approval**(1) 104:1 | | | | **quite**(7) 38:14 39:10 52:19 67:6 70:8 73:1 78:21 | | |
| **pre-date**(2) 82:20 82:25 | | **progressed**(1) 61:10 | | | | **recorded**(1) 1:49 |
| **pre-petition**(9) 15:22 17:3 17:5 106:18 106:19 106:20 107:11 107:20 107:22 | | **prominent**(1) 73:1 | | | | **recording**(2) 1:49 108:17 |
| | | **prominently**(2) 59:10 72:22 | | **quote**(4) 32:18 45:24 60:15 61:1 | | **records**(6) 63:17 67:1 67:13 68:12 68:22 76:9 |
| | | **promising**(2) 87:8 92:9 | | **quoted**(1) 90:24 | | |
| **preceding**(1) 63:9 | | **pronouncing**(1) 69:7 | | **quoting**(1) 42:10 | | **record's**(1) 12:7 |
| **precisely**(1) 75:5 | | **proof**(3) 52:2 53:20 55:25 | | | | **recover**(1) 88:9 |
| **preferable**(1) 104:5 | | **proofed**(1) 35:25 | | **rabbi**(5) 13:11 33:3 36:3 36:11 40:6 | | **recovery**(2) 88:15 89:9 |
| **preference**(1) 13:20 | | **proper**(1) 72:19 | | **rachel**(1) 9:13 | | **red**(1) 19:2 |
| **prejudice**(8) 35:20 36:13 38:17 42:14 44:9 44:10 45:6 45:20 | | **properly**(1) 71:6 | | **raise**(7) 20:8 23:12 23:21 28:24 45:17 45:19 107:25 | | **redirect**(1) 11:5 |
| | | **proponents**(5) 15:5 15:8 16:1 29:6 106:14 | | | | **redress**(14) 54:8 83:20 88:3 88:5 88:6 88:11 88:19 89:4 89:7 89:8 89:11 89:14 89:17 90:10 |
| **preliminarily**(1) 101:3 | | **proportion**(1) 61:18 | | | | |
| **prepare**(1) 47:17 | | **propose**(4) 30:3 48:23 49:2 52:20 | | **raised**(7) 28:15 42:1 45:9 45:16 45:20 60:1 70:16 | | **reduced**(1) 59:23 |
| **prepared**(5) 19:5 19:24 20:22 23:8 35:9 | | **proposed**(5) 15:7 52:17 86:16 105:11 106:10 | | | | **reed**(1) 6:40 |
| **prescribed**(1) 50:20 | | | | **randall**(1) 8:6 | | **refer**(2) 61:7 61:8 |
| **presence**(1) 91:2 | | **proposed?"**(1) 42:14 | | **range**(1) 26:8 | | **reference**(3) 50:9 97:5 103:21 |
| **present**(10) 14:12 14:15 15:3 47:3 48:13 58:13 65:7 72:23 93:8 106:25 | | **proposition**(1) 105:7 | | **ranges**(1) 26:12 | | **references**(1) 103:20 |
| | | **prospect**(1) 40:8 | | **rarely**(1) 35:14 | | **referred**(1) 31:18 |
| **presentation**(5) 22:22 49:3 49:8 57:9 99:16 | | **prospects**(5) 54:22 87:8 89:7 91:9 91:11 92:7 | | **rath**(2) 2:10 2:11 | | **referring**(2) 68:12 107:3 |
| **presented**(2) 53:7 101:5 | | | | **rather**(9) 16:17 52:4 53:13 71:6 72:21 80:19 81:20 82:24 91:12 | | **refers**(1) 43:20 |
| **press**(2) 19:4 100:9 | | **protect**(4) 59:16 86:23 88:23 90:7 | | | | **reflect**(2) 29:3 104:25 |
| **pressed**(1) 42:7 | | **protection**(3) 18:20 37:22 69:5 | | **rationally**(2) 85:2 105:18 | | **refusing**(1) 32:22 |
| **presumably**(1) 43:16 | | **prove**(1) 101:23 | | **raving**(1) 84:25 | | **regard**(4) 24:19 27:9 27:10 34:20 |
| **pretenses**(1) 60:25 | | **proved**(1) 37:4 | | **re-submit**(3) 66:12 94:20 100:16 | | **regard."**(1) 43:18 |
| **pretty**(3) 29:6 69:19 98:18 | | **provide**(21) 54:8 54:13 58:16 58:19 59:25 60:12 60:18 64:3 65:13 66:4 67:23 68:1 71:14 72:7 72:21 73:6 73:19 81:7 82:9 83:3 104:20 | | **re-submitted**(1) 73:23 | | **regarding**(17) 29:25 63:6 68:24 69:3 70:25 71:2 74:5 74:17 76:22 82:4 86:5 87:17 88:5 90:11 90:14 91:24 92:7 |
| **previously**(1) 65:20 | | | | **re-take**(2) 99:11 99:13 | | |
| **prima**(1) 82:22 | | | | **reached**(4) 12:14 28:17 96:7 102:22 | | |
| **primarily**(1) 24:6 | | | | **read**(13) 15:16 17:8 17:9 35:23 38:18 51:8 64:7 79:12 84:6 91:18 99:24 100:19 106:21 | | **registered**(1) 63:16 |
| **primoff**(1) 7:35 | | **provided**(9) 21:11 35:6 35:7 36:21 48:4 71:19 72:25 87:14 104:16 | | | | **registering**(1) 66:25 |
| **principle**(1) 73:13 | | | | **reading**(6) 15:25 58:8 71:8 85:11 91:10 91:15 | | **registers**(1) 63:16 |
| **prior**(4) 73:4 74:5 74:10 98:14 | | | | | | **regrettably**(1) 50:5 |
| **privately**(1) 81:11 | | **provides**(5) 74:13 80:8 82:6 101:11 106:16 | | **readings**(1) 82:9 | | **regroup**(1) 43:17 |
| **privilege**(2) 24:14 24:15 | | **providing**(1) 36:18 | | **reads**(1) 73:5 | | **regulatory**(4) 92:10 92:11 97:20 98:1 |
| **privileges**(1) 27:23 | | **proving**(1) 70:16 | | **real**(2) 14:6 20:24 | | **reimbursement**(1) 15:6 |
| **pro**(5) 8:13 48:18 59:7 75:3 100:12 | | **provision**(8) 16:2 17:8 17:9 18:22 70:1 70:5 104:10 104:12 | | **reality**(1) 45:15 | | **rejected**(5) 50:22 71:6 71:13 71:22 73:9 |
| **pro-rated**(1) 37:8 | | | | **realize**(1) 76:1 | | **relate**(1) 82:22 |
| **probably**(7) 13:16 14:2 20:14 28:15 33:13 96:5 99:6 | | **provisos**(1) 102:14 | | **realized**(2) 75:7 87:20 | | **related**(10) 77:14 78:12 82:17 83:8 83:9 87:24 90:1 98:24 99:1 101:10 |
| | | **public**(1) 79:22 | | **reallocation**(1) 23:6 | | |
| **probe**(1) 85:11 | | **publication**(6) 55:3 74:8 75:25 88:10 97:18 98:23 | | **really**(6) 24:1 26:13 34:12 41:4 85:17 102:25 102:25 103:3 | | **relates**(2) 24:12 80:3 |
| **problem**(6) 20:24 21:13 21:18 23:5 26:22 53:15 | | | | **reargue**(1) 102:25 103:3 | | **relationship**(1) 40:23 |
| | | **publications**(2) 97:13 97:16 | | **reason**(15) 19:16 20:23 31:11 34:10 34:10 36:3 40:5 55:24 56:8 56:12 59:15 70:3 71:22 95:2 103:12 | | **relatively**(3) 16:24 38:13 100:10 |
| **problems**(1) 20:8 | | **published**(15) 53:25 54:7 54:9 54:25 55:2 59:10 74:14 74:22 74:23 78:25 83:12 87:6 88:14 91:7 92:8 | | | | **relevant**(17) 17:13 46:11 62:25 63:22 64:3 65:7 66:18 68:25 76:18 76:22 79:4 80:24 82:4 83:3 86:10 104:17 104:17 |
| **procedural**(3) 50:16 51:12 56:18 | | | | | | |
| **procedure**(1) 33:14 | | | | **reasonable**(1) 91:8 | | |
| **procedures**(1) 21:16 | | **publisher**(2) 59:9 73:1 | | **reasonably**(1) 105:18 | | **relief**(34) 30:14 30:16 30:20 31:1 31:10 31:17 31:18 32:7 33:3 34:6 33:7 33:12 47:12 59:21 59:22 62:16 62:17 62:23 62:23 77:12 77:17 78:11 78:15 80:1 80:3 80:4 80:5 80:5 82:16 83:6 86:4 86:14 87:15 93:5 93:6 |
| **proceed**(4) 43:17 59:3 70:24 85:23 | | **punitive**(3) 43:2 71:7 86:8 | | **reasoning**(6) 86:22 87:1 87:4 87:6 87:9 87:11 | | |
| **proceeding**(3) 18:17 18:19 44:12 | | **purely**(2) 40:3 40:4 | | | | |
| **proceedings**(5) 1:18 1:49 41:20 69:10 108:18 | | **purpose**(3) 33:11 41:6 103:13 | | **reasons**(9) 25:1 25:2 55:21 62:13 81:13 89:15 90:2 90:4 90:8 | | |
| | | **purposes**(4) 26:24 63:22 101:8 101:8 | | | | |
| **process**(8) 18:6 22:9 29:15 29:17 57:16 67:11 95:20 97:22 | | **pursuant**(1) 25:18 | | **rebecca**(1) 7:39 | | **remain**(2) 14:9 64:13 |
| | | | | | | **remaining**(1) 102:8 |
| **processed**(2) 66:2 71:17 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **remains**(1) 17:17 | | **resulting**(1) 53:17 | | **say**(35) 15:8 18:22 21:25 26:14 26:19 | | **serves**(1) 80:13 | |

remains(1) 17:17
remedies(1) 88:18
removed(1) 33:23
rendered(1) 24:5
reorganization(1) 43:16
repackaging(3) 56:9 56:14 101:14
repeat(3) 26:14 58:7 95:4
replace(1) 59:6
replete(2) 77:18 78:16
replies(1) 43:12
reply(15) 32:20 56:13 57:25 58:2 58:13
61:3 61:19 62:11 62:19 65:25 76:8 98:7
99:17 99:19 106:10

report(5) 13:12 14:2 23:4 27:21 30:1
reported(2) 80:23 105:10
reporter(4) 59:9 59:11 72:24 74:17
reprehensible(1) 87:25
represent(9) 30:21 31:8 32:12 39:8 39:11
74:12 76:23 79:3 97:1

representation(14) 61:23 61:24 73:12 75:3
75:9 75:19 75:21 77:2 80:11 80:12 82:3
87:18 89:22 97:3

representative(1) 69:1
representatives(1) 76:10
represented(2) 79:14 96:24
represents(1) 92:20
reputation(6) 54:21 88:22 90:14 90:19
90:21 97:12

reputational(2) 85:19 97:10
request(15) 13:8 25:5 31:17 42:12 42:17
47:11 47:12 80:1 92:22 92:23 93:6 103:12
103:22 104:23 105:19

requested(6) 20:7 71:19 71:24 73:6 80:3
88:1

requesting(2) 31:2 31:10
require(3) 21:12 22:12 68:20
required(5) 39:19 52:13 70:21 72:7 92:7
requirement(2) 51:19 104:1
requirements(2) 23:22 70:7
requisite(1) 56:6
requisites(1) 16:18
resentful(1) 84:24
reserve(1) 40:17
resolution(4) 20:20 30:19 50:6 100:9
resolved(5) 21:2 21:19 27:25 33:17 44:13
resolving(1) 102:18
respect(32) 12:10 12:12 12:19 12:20 12:22
12:24 12:25 13:12 17:19 22:5 25:11 28:17
28:25 31:2 33:20 36:2 36:10 37:2 37:9
42:20 47:9 48:15 48:22 49:1 49:4 50:7
73:1 76:24 91:9 102:13 106:1 106:18

respectfully(2) 92:22 105:19
respective(2) 20:21 30:22
respond(8) 19:4 22:21 22:25 39:18 55:8
96:2 100:13 102:18

responded(2) 89:16 92:19
responding(1) 39:22
response(10) 47:5 47:6 52:16 58:18 71:5
98:9 99:17 99:19 101:1 107:21

responses(1) 75:10
rest(2) 20:11 43:1
restatement(1) 58:1
restore(1) 83:21
restoring(2) 76:1 89:20
restrained(1) 85:17
rests(1) 70:17
result(8) 17:2 22:3 29:25 48:6 52:1 86:19
87:5 103:6

resulted(3) 48:6 50:7 56:17

resulting(1) 53:17
resume(2) 64:23 78:4 78:8
retain(2) 74:11 76:23
retained(5) 22:20 23:13 25:13 25:17 94:21
retaliation(4) 81:1 81:8 82:8 97:24
retaliatory(2) 81:4 81:22
retention(1) 13:8
retirement(1) 9:12
return(2) 66:17 102:7
returned(3) 65:17 71:23 94:10
revenues(1) 38:11
review(9) 21:15 25:21 25:21 27:11 47:10
92:11 97:19 106:11 106:13

reviewed(1) 25:23
reviewing(2) 44:5 93:7
revisions(1) 106:1
richards(1) 3:22
rifkind(1) 7:1
right(49) 14:22 16:5 17:6 17:16 18:15
19:19 23:6 26:13 32:19 33:10 34:15 35:11
35:25 36:20 39:14 40:18 43:10 45:18
46:14 46:16 46:17 46:18 49:10 49:19
49:22 56:21 59:2 64:23 69:7 78:4 84:17
85:20 85:23 93:15 95:16 95:22 96:12
97:11 97:12 99:10 101:18 102:5 102:7
102:10 104:14 105:12 105:21 106:7

rights(3) 15:5 15:22 34:2
rise(6) 49:14 53:10 54:10 58:12 97:25
104:14

risk(2) 37:24 38:3
road(2) 23:23 37:13
robby(1) 12:11
robert(11) 8:13 8:13 11:8 13:10 30:9
46:22 49:18 58:8 64:22 72:23 85:11

rockefeller(1) 2:20
rodney(1) 3:24
roitman(2) 2:19 5:8
rosner(1) 9:8
rough(1) 68:24
roughly(4) 53:24 61:18 67:2 76:11
rudnick(1) 2:17
ruin(7) 59:20 75:25 83:19 87:1 88:25
89:15 90:6

rule(9) 22:14 31:4 66:22 67:4 67:5 67:19
67:20 68:1 68:12

ruled(1) 70:12
rules(7) 21:3 21:16 21:16 26:13 26:17
26:19 96:3

run(4) 12:5 18:15 26:11 44:19
running(1) 104:3
saavedra(1) 7:25
sachs(2) 9:16 9:16
sad(2) 85:10 85:10
sager(1) 9:22
said(45) 14:5 20:6 21:21 28:2 28:19 29:18
32:6 33:8 33:22 35:18 36:15 36:18 38:18
41:22 42:9 42:10 42:11 42:21 43:15 43:21
43:22 44:9 44:25 45:25 51:13 52:10 57:7
64:2 64:9 84:15 84:15 84:22 85:5 85:7
85:10 90:5 90:22 90:24 94:17 95:6 97:22
98:12 99:15 103:7 105:8

same(14) 17:2 17:22 21:9 30:14 31:9
31:12 33:12 36:10 37:22 39:2 39:3 52:3
55:12 61:18

satisfied(3) 52:14 105:7 108:1
satisfy(3) 53:8 77:20 78:17
saved(1) 55:19
saves(1) 55:15
saw(3) 23:3 85:16 98:12

say(35) 15:8 18:22 21:25 26:14 26:19
33:11 33:16 34:2 40:17 41:5 44:20 47:25
53:7 54:17 64:1 64:8 64:11 64:12 64:17
71:18 81:12 83:11 84:13 84:19 86:7 90:23
98:6 98:18 100:17 100:18 103:4 104:12
104:14 107:15 108:2

saying(5) 29:4 34:10 35:11 35:12 37:3
38:5 38:7 38:8 53:22 56:18 85:17 94:15
95:7 95:17 99:25

says(7) 29:2 31:23 34:9 37:7 50:22 55:10
56:6

scale(1) 44:22
scarred(1) 92:17
schaible(1) 3:16
scholer(1) 7:32
schotz(2) 1:34 12:4
schulz(1) 8:47
schuylkill(1) 1:44
science(1) 96:18
scientific(1) 84:23
scope(1) 27:22
search(4) 61:23 61:24 75:3 92:13
sears(1) 67:8
seat(2) 99:11 99:13
seated(1) 93:22
second(14) 28:5 28:23 35:12 44:21 51:17
62:2 67:12 72:17 77:11 79:10 81:8 84:5
96:1 104:2

secondly(1) 44:14
seconds(1) 17:12
section(6) 17:13 55:17 101:11 106:9
107:23 107:23

securities(2) 6:26 6:26
security(1) 92:16
see(24) 16:12 20:24 23:7 25:14 26:5 29:9
34:12 43:24 44:22 46:14 58:18 62:9 62:10 62:11
71:3 71:8 71:10 80:6 83:13 84:19 91:20
92:1 94:21 101:1 106:25

seek(6) 30:14 32:2 38:17 40:18 59:21 77:1
seeking(4) 30:2 33:6 83:16 83:17 88:15
89:9

seeks(3) 88:9 88:19 89:7
seem(6) 78:21 80:6 88:6 88:15 90:13 90:14
seeming(1) 83:5
seemingly(2) 65:18 68:8
seems(9) 38:16 38:22 39:2 43:21 50:24
68:17 82:12 105:14 105:15

seen(1) 24:18
seife(1) 5:9
selber(1) 4:8
select(1) 97:21
selection(1) 97:21
self(1) 53:5
self-addressed(1) 76:15
self-initiated(2) 79:16 79:18
self-protecting(1) 87:22
selfishness(1) 85:13
send(1) 76:16
sending(1) 95:7
sense(4) 20:14 34:3 41:6 53:11
sent(4) 47:13 47:20 65:21 65:23 66:13
74:17 75:4 94:17 94:23 95:24

sentence(5) 43:14 43:15 53:4 72:22 73:5
sentence-by-sentence(2) 74:25 84:16
sentinel(1) 107:5
separate(3) 25:7 98:21 98:22
separately(2) 71:20 79:7
september 25th, 2008(1) 75:21
serious(2) 85:18 92:18
served(1) 103:25

serves(1) 80:13
service(3) 1:43 1:50 71:17
services(6) 1:43 12:11 12:22 22:6 24:5
108:22

set(5) 45:8 47:14 52:24 52:25 53:22
setbacks(2) 82:19 82:20
settlement(2) 59:23 102:21
seven(2) 2:39 81:16
several(1) 50:7
severance(3) 40:15 40:19 41:2
severed(1) 40:23
seyfarth(1) 5:41
shabby(1) 85:9
shaina(1) 8:48
shall(1) 20:11
shallowest(1) 75:13
shamah(1) 6:17
share(2) 17:4 101:17
shattered(1) 85:14
shaw(1) 5:41
she(1) 14:19
shed(1) 70:20
sheffield(1) 9:26
sheriff's(1) 66:17
short(3) 53:12 60:19 72:18
should(32) 18:13 18:13 18:22 20:8 21:17
21:19 21:25 23:6 25:8 27:9 28:15 30:6
32:8 33:7 33:13 37:21 38:22 39:2 39:25
40:17 47:12 48:22 62:12 62:19 64:1 67:24
72:17 76:21 103:21 103:25 106:24 107:16

shoulder(1) 25:11
shouldn't(2) 38:2 65:1
show(3) 23:23 67:10 68:19
shows(1) 82:1
shulz(1) 8:47
side(3) 76:12 76:22 103:9
sides(4) 50:8 102:23 103:17 105:18
sidley(5) 1:25 5:12 42:3 46:21 49:16
sign(2) 20:22 23:8
sign-off(1) 29:6
signature(2) 65:9 65:23 66:13
signed(6) 65:10 65:24 66:1 66:15 73:15
73:25

signs(5) 76:25 79:5 79:6 91:3 91:8
silence(1) 15:24
silent(1) 15:21
silver(2) 8:32 8:33
silverman(10) 9:31 14:16 14:16 14:22
14:24 15:10 107:1 107:3 107:4 108:4

silverstein(1) 4:8
similar(4) 21:21 22:18 76:6 85:16
similarly(2) 34:13 45:21
simple(2) 41:5 72:20
simply(25) 17:1 17:1 35:22 40:11 42:25
43:3 52:5 53:6 53:16 53:20 54:10 54:23
55:5 56:11 56:13 67:7 71:14 80:8 81:14
90:9 105:24 106:15 106:18 107:19 107:24

since(9) 18:1 36:2 36:15 42:20 45:9 57:1
60:11 60:23 83:12

sincere(1) 74:23
sincerely(2) 89:16 92:20
single(2) 82:13 90:17
singular(2) 8:5 8:5
sir(16) 49:20 57:12 93:9 94:25 95:14
96:13 96:16 97:6 97:8 97:16 98:17 99:5
99:8 99:10 99:21 102:5

sit(1) 35:2
sits(1) 106:24
sitting(1) 98:15
situated(2) 34:13 45:21
situation(4) 21:21 39:9 70:2 70:6
six(1) 68:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| six-hour(1) 68:5 | | state(28) 9:11 59:20 62:15 69:5 72:19 73:2 75:12 75:25 77:12 77:13 77:16 77:17 78:11 78:13 78:14 80:4 80:14 82:15 82:18 83:19 84:19 87:1 88:24 89:4 89:14 90:6 90:16 92:14 | | such(11) 68:17 69:15 81:25 82:9 83:24 91:8 103:10 103:21 104:9 104:10 104:12 | | take(19) 13:15 15:24 17:24 23:7 43:12 44:18 46:12 46:18 48:25 49:10 49:11 64:12 74:6 78:2 92:24 93:15 93:19 95:25 107:6 | |
| size(1) 21:14 | | | | suffered(5) 52:1 55:7 88:12 90:1 99:7 | | taken(4) 70:4 87:2 87:8 93:24 | |
| skill(1) 86:20 | | | | suffering(1) 87:4 | | takes(2) 80:14 108:5 | |
| skip(1) 46:23 | | | | suffice(1) 56:3 | | taking(1) 102:18 | |
| slater(1) 6:34 | | | | sufficiency(1) 102:21 | | talk(5) 22:18 34:21 62:8 70:9 94:9 | |
| slightly(2) 15:2 36:9 | | stated(4) 54:23 58:2 79:3 79:15 | | sufficient(2) 87:7 106:24 | | talked(5) 16:10 17:25 28:4 32:11 97:9 | |
| sloan(1) 3:23 | | statement(20) 35:23 37:10 45:23 50:13 51:23 51:24 51:25 52:1 52:10 52:23 52:24 52:24 53:4 53:11 67:10 76:23 79:1 80:15 81:14 82:2 | | suggest(19) 44:22 59:15 68:25 69:1 76:18 81:13 86:18 86:22 87:5 87:6 87:9 87:11 89:15 90:3 90:4 90:8 91:10 96:10 98:2 | | talking(6) 24:23 25:16 26:16 34:22 36:15 38:13 | |
| small(1) 77:4 | | | | | | talks(3) 31:23 32:4 32:14 | |
| snippet(1) 28:19 | | | | | | tammy(1) 108:21 | |
| snuffed(1) 89:1 | | | | | | tantamount(1) 81:12 | |
| so-called(1) 101:13 | | | | suggested(5) 18:20 19:2 19:16 87:1 103:14 | | target(1) 88:12 | |
| software(1) 12:22 | | statements(11) 52:4 52:18 52:21 53:13 61:6 77:19 78:16 79:3 83:7 83:9 104:21 | | suggesting(4) 23:13 25:2 40:19 71:21 | | targeted(2) 59:17 86:24 | |
| soil(2) 85:9 85:11 | | | | suggestion(4) 40:1 44:14 100:15 103:16 | | targets(1) 81:22 | |
| sole(1) 87:10 | | | | suggestions(1) 18:11 | | taxation(1) 12:24 | |
| solely(1) 30:23 | | states(5) 1:1 1:20 4:30 53:2 72:22 | | suicide(3) 80:20 81:13 81:16 | | taylor(1) 3:30 | |
| solis(1) 4:24 | | stating(2) 52:22 81:11 | | suit(3) 71:17 75:24 76:3 | | technically(1) 12:16 | |
| some(25) 18:20 18:23 18:25 19:15 21:2 22:19 25:12 25:14 26:6 33:2 34:19 35:13 36:6 36:17 39:4 40:18 40:25 42:11 44:1 48:24 56:16 81:6 93:23 101:11 107:7 | | status(14) 13:12 14:2 14:4 17:2 20:7 20:8 27:21 40:4 43:4 66:6 73:21 95:12 100:12 102:8 | | suite(2) 1:37 2:13 | | telephone(2) 14:12 47:4 | |
| | | | | sullivan(5) 2:43 2:44 8:46 8:47 48:14 | | telephoned(4) 66:6 68:23 73:21 76:4 | |
| | | | | sum(2) 86:13 89:24 | | telephonic(1) 5:1 | |
| | | | | summaries(2) 59:25 63:1 | | telephonically(1) 48:4 | |
| | | statute(31) 50:19 50:24 50:25 51:13 55:11 55:12 56:11 56:14 62:13 62:20 63:3 63:4 63:12 63:19 63:22 66:21 67:3 67:16 68:15 68:25 74:10 75:11 75:12 75:14 75:16 76:2 76:18 76:20 93:2 101:8 101:12 | | summarize(1) 58:17 | | tell(22) 14:7 17:15 18:11 18:25 19:14 22:1 22:11 25:13 26:4 29:1 32:1 47:8 47:19 48:21 57:20 57:22 57:23 69:12 77:8 83:14 86:4 98:3 | |
| somebody(5) 24:13 26:7 26:12 70:20 | | | | summary(8) 44:23 58:17 58:22 58:23 59:4 62:9 62:11 88:18 | | | |
| somehow(2) 44:15 45:17 | | | | | | | |
| someone(2) 22:9 103:11 | | | | | | | |
| something(14) 18:4 20:24 21:19 24:9 24:10 25:25 27:21 36:14 47:15 55:14 55:17 56:16 70:7 102:2 | | | | summed(1) 52:22 | | ten(1) 85:22 | |
| | | statutes(1) 60:20 | | summit(1) 71:17 | | tenth(1) 12:10 | |
| | | stay(2) 69:6 101:11 | | summons(1) 66:17 | | term(3) 61:9 75:8 100:10 | |
| | | stayed(1) 30:6 69:11 | | sums(1) 21:14 | | terminated(3) 15:23 39:11 40:14 | |
| sometimes(1) 21:5 | | ste(4) 2:6 2:45 4:3 4:32 | | sun(56) 50:1 52:4 56:16 59:9 59:9 59:10 59:13 59:16 59:18 60:15 60:18 60:25 61:23 62:1 62:3 72:24 72:24 72:24 72:25 74:19 74:20 74:21 74:23 75:4 76:17 76:25 79:14 79:15 81:1 81:2 81:10 81:15 81:20 83:15 83:16 86:16 86:17 87:2 87:6 87:9 87:11 87:14 87:19 87:20 88:25 89:1 89:15 89:16 89:20 90:5 90:15 90:17 90:24 92:8 92:19 92:20 | | terms(3) 16:9 57:23 103:18 | |
| somewhat-short(1) 100:14 | | step(1) 99:11 | | | | testify(1) 35:10 | |
| son(1) 54:3 | | stephen(1) 4:9 | | | | testimony(1) 65:5 | |
| song(1) 7:39 | | still(9) 17:21 30:13 37:4 39:12 39:13 59:23 93:22 101:25 106:2 | | | | text(2) 61:13 80:24 | |
| soon(1) 29:16 | | | | | | than(20) 19:16 21:24 24:9 24:12 24:20 33:8 36:14 49:9 53:13 64:25 65:3 73:11 79:15 81:24 84:23 90:20 94:25 96:10 105:25 107:12 | |
| sorry(5) 20:16 42:5 43:5 46:9 105:13 | | | | | | | |
| sort(4) 17:24 25:11 44:21 62:8 | | stipulation(2) 12:16 12:17 | | sunday(1) 59:12 | | | |
| sottile(3) 5:24 22:18 28:4 | | stone(1) 9:35 | | sun's(11) 75:2 79:20 82:1 83:5 83:7 86:15 86:18 86:20 87:3 87:22 89:19 | | thank(50) 13:24 14:22 19:7 19:20 23:10 26:21 27:5 27:16 28:13 29:20 34:17 34:18 39:14 43:8 43:10 43:11 44:7 45:3 46:17 46:18 48:1 48:20 49:12 49:21 57:5 57:14 57:14 58:5 58:9 59:2 59:4 78:9 93:9 93:10 94:25 96:13 96:16 97:6 97:8 98:8 99:5 99:8 99:10 100:25 101:18 102:4 102:5 102:6 108:8 108:12 | |
| sought(15) 59:21 61:2 61:17 62:24 75:9 76:13 86:5 86:6 87:13 88:19 89:23 102:22 103:6 103:10 104:4 104:9 | | stop(2) 44:2 64:7 | | | | | |
| | | story(2) 76:12 85:11 | | | | | |
| | | straightforward(1) 60:10 | | | | | |
| | | strategy(1) 25:24 | | supplement(1) 52:15 | | | |
| sound(3) 1:49 25:2 108:17 | | strauss(4) 3:2 8:16 19:8 102:11 | | supplemental(15) 13:7 50:10 50:12 52:16 53:14 57:25 58:14 58:17 60:4 60:6 60:8 62:11 78:19 92:23 92:25 | | | |
| source(1) 16:13 | | street(11) 1:11 1:44 2:13 2:32 2:45 3:25 3:32 3:39 4:3 4:18 4:32 | | | | thanks(1) 64:23 | |
| sources(1) 80:18 | | | | | | | |
| south(2) 1:30 3:39 | | | | supply(2) 46:8 46:10 | | | |
| sowka(1) 5:42 | | strengthened(1) 67:19 | | support(9) 39:4 53:20 66:20 71:5 81:25 82:6 82:10 82:13 90:18 | | | |
| spaeder(3) 4:24 5:23 22:17 | | structured(1) 37:6 | | | | | |
| speak(6) 22:9 51:4 56:25 58:12 71:1 77:15 | | stuart(1) 9:38 | | | | | |
| special(2) 8:40 48:15 | | student(1) 90:23 | | supported(2) 77:19 78:16 | | | |
| specific(2) 79:5 100:15 | | students(3) 80:21 81:17 91:25 | | supports(1) 43:25 | | | |
| specifically(7) 30:16 40:16 40:17 79:1 80:14 83:10 93:1 | | stuff(1) 25:25 | | supposed(1) 53:22 | | | |
| | | styled(1) 14:13 | | supposes(1) 54:14 | | | |
| | | | | sure(14) 12:6 12:6 13:13 13:14 14:11 27:21 31:15 38:15 39:10 48:8 78:1 78:3 84:11 97:7 | | | |
| specificity(2) 56:6 92:6 | | subject(14) 19:23 21:15 35:5 54:13 54:14 56:4 73:8 80:3 83:3 96:17 104:1 104:22 106:19 107:24 | | | | | |
| speculative(1) 54:23 | | | | surety(1) 36:6 | | | |
| speech(1) 42:9 | | | | surprised(1) 75:23 | | | |
| speed(1) 91:22 | | | | survive(3) 77:16 78:14 82:14 | | | |
| sperling(1) 6:34 | | subjects(1) 94:9 | | susceptible(1) 40:12 | | | |
| spoke(1) 76:11 | | submission(21) 21:11 39:19 55:9 64:8 63:7 63:9 63:11 63:19 64:3 65:7 66:20 69:22 71:1 73:4 73:14 74:4 74:5 93:3 99:19 100:22 102:3 | | suspect(6) 17:11 71:22 74:19 74:23 91:1 91:17 | | | |
| square(2) 2:39 3:24 | | | | | | | |
| staff(1) 47:11 | | | | | | | |
| stage(3) 51:22 61:10 92:6 | | | | suspicions(1) 74:24 | | | |
| stamp(2) 65:20 65:21 | | | | sustain(6) 18:7 51:20 52:13 77:20 78:18 82:22 | | | |
| stamped(1) 65:18 | | submissions(3) 21:11 39:19 55:9 64:8 | | | | | |
| stand(6) 27:10 49:20 78:6 93:16 93:19 108:9 | | submit(10) 21:7 23:1 28:18 28:21 28:22 29:10 53:15 74:8 100:18 | | | | | |
| | | | | suttonbrook(2) 6:1 6:2 | | | |
| | | submitted(10) 20:22 21:12 27:3 48:18 52:5 56:13 58:15 71:4 76:6 103:18 | | swear(1) 58:4 | | | |
| standard(2) 53:13 60:9 | | | | sworn(3) 57:21 64:15 64:22 | | | |
| standing(8) 14:17 15:18 21:2 89:7 90:15 91:23 97:11 97:22 | | submitting(1) 62:21 67:7 | | sync(1) 12:6 | | | |
| | | substantial(8) 22:23 59:24 68:15 75:4 77:1 89:17 90:20 100:8 | | system(7) 63:16 66:25 67:9 67:13 67:23 68:17 68:22 | | | |
| standpoint(6) 17:17 38:4 38:8 38:13 86:8 99:23 | | | | | | | |
| | | substantive(2) 56:8 56:19 | | | | | |
| stands(2) 74:19 87:25 | | substantively(1) 55:23 | | | | | |
| stanley(2) 4:1 7:22 | | succeed(2) 81:5 81:23 | | | | | |
| stargatt(1) 3:30 | | success(1) 87:19 | | | | | |
| start(2) 14:3 63:13 | | successfully(1) 33:16 | | | | | |
| started(3) 74:1 75:8 83:15 | | | | table(2) 99:11 99:14 | | | |
| starting(1) 16:19 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **that**(301) 12:6 12:17 12:18 13:5 13:6 13:16 13:16 14:1 14:2 14:5 14:5 14:11 14:15 14:21 15:3 15:4 15:5 15:7 15:11 15:11 15:13 15:18 15:20 15:20 15:25 16:2 16:5 16:14 16:18 16:20 16:21 16:22 16:24 16:25 17:2 17:3 17:3 17:8 17:9 17:10 17:11 17:13 17:14 17:16 17:17 17:21 17:24 18:1 18:3 18:8 18:9 18:12 18:12 18:16 18:18 18:19 18:20 18:21 19:1 19:1 19:6 19:15 19:17 20:7 20:9 20:14 20:14 20:22 20:24 21:1 21:4 21:12 21:15 21:19 21:21 21:22 22:1 22:11 23:7 23:8 23:13 23:15 23:25 23:25 24:2 24:7 24:8 24:9 24:10 24:17 24:18 24:19 24:21 24:21 25:1 25:2 25:2 25:7 25:7 25:13 25:24 26:3 26:14 27:14 27:24 27:25 28:1 28:2 28:3 28:4 28:8 28:9 28:11 28:16 28:19 28:21 28:21 28:22 28:23 28:24 29:4 29:7 29:7 29:7 29:8 29:9 29:10 29:11 29:13 29:15 29:17 29:23 29:24 30:12 30:14 30:15 30:16 30:17 30:17 30:20 30:21 31:5 31:11 31:16 31:17 31:18 31:18 31:24 32:3 32:5 32:11 32:12 32:12 32:16 32:21 32:21 33:4 33:6 33:9 33:11 33:12 33:12 33:22 34:1 34:1 34:2 34:6 34:8 34:10 34:11 34:16 35:2 35:5 35:6 35:9 35:17 35:21 35:23 35:23 36:3 36:6 36:10 36:12 36:23 36:25 37:1 37:6 37:7 37:10 38:2 38:7 38:8 38:9 38:10 38:12 38:16 38:22 38:22 38:24 39:2 39:2 39:10 39:20 39:23 40:1 40:5 40:12 40:16 40:19 40:25 41:2 41:4 41:6 41:7 41:16 41:18 41:18 41:20 41:23 41:25 42:1 42:4 42:7 42:12 42:16 42:19 42:19 42:22 42:22 42:23 42:25 43:1 43:13 43:15 43:18 43:19 43:21 43:24 43:25 43:25 44:1 44:9 44:10 44:10 44:14 44:16 44:18 44:19 44:24 44:25 45:9 45:9 45:11 45:13 45:16 45:17 45:18 45:19 45:20 45:20 45:21 46:1 46:3 46:21 46:23 47:7 47:13 47:14 47:15 47:17 47:18 47:23 47:23 48:5 48:5 48:6 48:10 48:12 48:17 48:19 48:25 49:5 49:25 50:1 50:5 50:11 50:22 50:24 51:2 51:3 51:4 51:6 51:9 51:12 51:19 51:23 51:24 51:24 51:24 51:25 52:1 | **that**(301) 52:4 52:5 52:6 52:7 52:10 52:11 52:12 52:12 52:13 52:17 52:18 52:22 52:25 53:2 53:3 53:5 53:7 53:7 53:8 53:9 53:11 53:11 53:12 53:16 53:16 53:20 53:21 53:23 53:25 53:25 54:5 54:5 54:6 54:6 54:8 54:10 54:10 54:14 54:14 54:16 54:16 54:21 54:23 54:24 54:25 55:2 55:6 55:13 56:1 56:2 56:3 56:13 56:16 56:18 56:23 57:19 57:20 58:4 58:14 58:18 59:10 59:12 59:13 59:15 59:17 59:18 59:18 59:19 59:24 60:9 60:14 60:24 61:7 61:10 61:11 62:12 62:14 62:19 62:20 62:25 63:6 63:8 63:10 63:17 63:21 63:21 63:23 63:24 64:8 64:11 64:11 64:18 64:20 64:24 65:13 65:14 65:15 66:7 66:24 67:1 67:5 67:8 67:9 67:20 68:5 68:5 68:13 68:14 68:15 68:19 69:1 69:3 69:5 69:7 69:10 69:12 69:15 69:18 69:19 69:21 70:1 70:5 70:11 70:22 71:2 71:3 71:5 71:9 71:11 71:12 71:14 71:17 71:18 71:21 71:23 71:23 72:5 72:9 72:9 72:11 72:12 72:17 72:18 73:2 73:3 73:9 73:10 73:22 74:1 74:3 74:5 74:8 74:9 74:13 74:14 74:21 74:23 75:1 75:1 75:7 75:8 75:10 75:17 75:18 76:1 76:18 76:18 76:20 76:23 76:25 77:16 77:18 78:13 78:15 79:3 79:10 79:11 79:20 79:21 79:22 79:23 79:25 80:8 80:9 80:13 80:15 80:16 80:17 80:8 80:9 80:20 80:21 81:9 81:12 81:13 81:16 81:21 81:23 81:25 82:9 82:14 82:19 82:21 82:25 83:1 83:2 83:7 83:10 83:14 83:14 83:18 83:20 83:23 84:4 84:14 84:20 84:21 84:24 85:5 85:5 85:14 85:15 85:15 85:18 86:3 86:7 86:8 86:13 86:15 86:17 86:18 86:21 86:22 86:24 87:1 87:2 87:3 87:3 87:5 87:6 87:9 87:11 87:13 87:14 87:19 87:22 87:25 88:8 88:10 88:11 88:14 88:15 88:16 88:21 88:24 89:9 89:12 89:19 89:13 89:14 89:15 89:25 89:25 90:5 90:6 90:7 90:8 90:22 90:23 90:13 90:15 90:18 90:19 91:6 91:12 91:17 91:21 91:22 92:5 92:5 92:6 92:6 92:8 92:12 92:14 92:18 92:20 92:22 93:2 93:4 93:5 93:25 94:13 94:15 94:20 | **the**(301) 1:1 1:2 1:19 2:26 8:41 10:2 12:2 12:4 12:5 12:6 12:7 12:8 12:9 12:10 12:11 12:12 12:13 12:14 12:17 12:18 12:19 12:19 12:20 12:20 12:21 12:22 12:23 12:24 12:25 12:25 13:3 13:4 13:6 13:7 13:7 13:9 13:10 13:11 13:12 13:12 13:13 13:13 13:14 13:15 13:16 13:17 13:18 13:19 13:21 13:23 14:1 14:1 14:1 14:2 14:5 14:6 14:6 14:9 14:10 14:11 14:12 14:13 14:13 14:15 14:18 14:22 14:23 14:25 14:25 15:1 15:1 15:2 15:4 15:4 15:4 15:7 15:8 15:8 15:10 15:13 15:13 15:14 15:16 15:17 15:17 15:19 15:20 15:21 15:23 15:24 16:1 16:4 16:5 16:6 16:7 16:8 16:10 16:10 16:13 16:13 16:15 16:15 16:16 16:16 16:18 16:18 16:20 16:22 16:23 17:2 17:2 17:3 17:6 17:6 17:8 17:11 17:12 17:13 17:16 17:16 17:17 17:18 17:18 17:18 17:19 17:20 17:23 17:24 17:25 18:2 18:4 18:5 18:6 18:8 18:12 18:13 18:15 18:15 18:17 18:17 18:18 18:18 18:21 18:24 18:24 19:1 19:2 19:9 19:10 19:11 19:14 19:15 19:19 19:21 19:22 19:23 20:2 20:6 20:8 20:11 20:11 20:12 20:13 20:14 20:15 20:16 20:16 20:18 20:19 20:20 20:21 20:21 20:23 21:3 21:5 21:7 21:8 21:10 21:12 21:21 22:1 22:1 22:4 22:5 22:14 22:17 22:19 22:23 23:5 23:6 23:16 23:16 23:19 23:20 23:21 23:23 24:1 24:1 24:2 24:2 24:4 24:4 24:6 24:6 24:7 24:8 24:11 24:14 24:14 24:15 24:20 24:25 25:1 25:5 25:5 25:6 25:7 25:9 25:10 25:13 25:14 25:17 25:19 25:22 25:23 25:25 26:1 26:6 26:8 26:13 26:14 26:14 26:17 26:20 26:23 26:22 26:22 26:23 26:23 26:25 27:2 27:3 27:5 27:8 27:13 27:17 27:18 28:9 28:10 28:12 28:18 28:20 28:23 28:24 29:2 29:3 29:4 29:6 29:11 29:12 29:13 29:15 29:17 29:19 29:21 29:23 29:24 29:25 30:1 30:1 30:3 30:5 30:9 30:11 30:13 30:14 30:15 30:17 30:18 30:19 30:20 30:21 30:21 30:23 | **the**(301) 30:24 31:1 31:2 31:3 31:4 31:4 31:5 31:6 31:8 31:9 31:9 31:10 31:12 31:13 31:13 31:14 31:16 31:16 31:17 31:18 31:19 31:21 31:22 31:24 31:24 31:25 31:25 31:25 32:1 32:1 32:2 32:3 32:4 32:5 32:5 32:6 32:9 32:10 32:10 32:11 32:12 32:13 32:14 32:15 32:16 32:16 32:17 32:19 32:22 32:23 32:25 33:1 33:3 33:3 33:6 33:10 33:10 33:11 33:12 33:14 33:16 33:16 33:19 33:22 33:22 33:23 33:25 34:1 34:1 34:3 34:4 34:5 34:9 34:9 34:10 34:12 34:14 34:15 34:16 34:17 34:18 34:20 34:22 34:24 35:3 35:4 35:5 35:8 35:10 35:10 35:11 35:11 35:13 35:15 35:16 35:18 35:18 35:19 35:23 35:25 36:2 36:3 36:7 36:8 36:8 36:9 36:10 36:11 36:12 36:12 36:13 36:18 36:19 36:21 36:24 36:24 37:1 37:3 37:5 37:6 37:6 37:7 37:7 37:8 37:9 37:9 37:12 37:14 37:14 37:16 37:18 37:20 37:20 37:21 37:22 37:24 38:2 38:3 38:3 38:5 38:8 38:8 38:10 38:11 38:12 38:14 38:15 38:16 38:19 38:24 39:2 39:3 39:4 39:5 39:9 39:7 39:7 39:10 39:12 39:13 39:14 39:15 39:22 39:22 39:23 40:4 40:5 40:5 40:6 40:6 40:6 40:8 40:11 40:12 40:16 40:18 40:19 40:20 40:23 40:25 41:1 41:1 41:1 41:4 41:6 41:10 41:13 41:14 41:16 41:20 41:21 41:22 41:25 42:2 42:2 42:2 42:3 42:6 42:12 42:12 42:13 42:16 42:17 42:19 42:19 42:21 42:22 42:23 43:3 43:4 43:5 43:5 43:5 43:6 43:6 43:7 43:8 43:10 43:13 43:14 43:15 43:19 43:23 43:24 43:24 43:25 44:2 44:2 44:5 44:5 44:6 44:10 44:12 44:12 44:14 44:16 44:16 44:18 44:20 44:20 44:22 44:23 44:23 44:23 44:24 44:25 45:4 45:5 45:7 45:10 45:11 45:14 45:15 45:18 45:18 45:19 45:22 46:3 46:6 46:6 46:8 46:10 46:11 46:11 46:16 46:18 46:19 46:21 46:22 46:22 46:23 46:25 47:2 47:2 47:4 47:4 47:6 47:7 47:8 47:14 47:16 47:21 47:22 47:23 48:1 48:2 48:4 48:5 48:7 48:7 48:7 48:8 48:8 48:9 48:11 48:11 48:11 48:12 |
| | | **that**(104) 95:1 95:2 95:7 95:10 95:13 95:17 95:23 95:24 96:4 96:5 96:6 96:9 96:10 96:15 96:16 96:22 96:24 97:1 97:3 97:7 97:19 98:2 98:3 98:7 98:8 98:10 98:19 98:22 99:1 99:16 99:19 100:2 100:5 100:7 100:20 101:2 101:5 101:6 101:17 101:21 102:1 102:14 102:19 103:1 103:4 103:5 103:6 103:7 103:9 103:10 103:11 103:12 103:14 103:15 103:18 103:20 103:22 103:24 103:25 104:2 104:2 104:5 104:6 104:10 104:12 104:12 104:14 104:15 104:18 104:18 104:20 104:21 104:24 104:25 105:1 105:15 105:16 105:17 105:19 105:19 105:19 105:23 106:1 106:3 106:11 106:12 106:16 107:3 107:9 107:10 107:10 107:15 107:19 107:19 107:21 107:25 108:1 108:2 108:5 108:5 108:8 108:10 108:11 108:16 | | | | |
| | | **that'd**(1) 30:3 | | | | |
| | | **that's**(77) 12:8 12:16 13:18 17:8 17:9 17:14 18:5 18:7 18:16 19:14 21:4 22:8 23:13 23:24 24:20 25:25 26:5 26:9 26:22 27:2 29:18 30:19 31:1 31:22 32:18 32:18 33:5 33:7 33:8 33:14 34:7 36:11 36:14 37:14 37:16 37:17 37:19 37:22 38:15 39:9 40:14 40:20 41:23 42:13 42:17 43:9 44:22 45:3 47:2 47:15 47:25 55:4 55:10 56:18 58:11 61:1 61:1 61:12 62:5 62:8 63:17 66:18 71:3 72:14 79:20 79:23 82:16 85:4 86:5 95:24 96:15 96:16 99:22 99:24 102:3 105:8 108:1 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) | 48:12 48:14 48:15 48:16 48:19 48:19 48:21 48:24 48:24 49:1 49:2 49:2 49:3 49:4 49:5 49:6 49:6 49:7 49:7 49:8 49:9 49:10 49:11 49:14 49:16 49:17 49:17 49:19 49:22 49:23 49:24 49:25 50:2 50:2 50:3 50:4 50:6 50:7 50:7 50:8 50:9 50:9 50:10 50:12 50:12 50:13 50:16 50:17 50:19 50:21 50:23 50:25 51:2 51:3 51:6 51:8 51:11 51:13 51:13 51:14 51:16 51:17 51:18 51:21 51:24 51:25 51:25 52:3 52:4 52:6 52:7 52:7 52:8 52:9 52:9 52:12 52:12 52:12 52:16 52:19 52:21 52:21 52:24 52:24 52:25 52:25 53:1 53:2 53:4 53:5 53:6 53:8 53:9 53:10 53:11 53:17 53:18 53:19 53:20 53:21 53:24 54:5 54:7 54:7 54:8 54:9 54:11 54:13 54:21 54:24 54:25 55:1 55:2 55:3 55:5 55:8 55:8 55:9 55:11 55:12 55:13 55:14 55:17 55:19 55:22 55:24 55:24 56:1 56:3 56:4 56:4 56:8 56:9 56:10 56:13 56:15 56:17 56:19 56:21 56:24 57:1 57:1 57:2 57:3 57:7 57:7 57:8 57:8 57:11 57:12 57:15 57:15 57:18 57:19 57:19 57:20 57:21 57:21 57:25 58:2 58:3 58:6 58:9 58:9 58:10 58:13 58:14 58:15 58:17 58:21 58:22 58:24 58:24 58:24 58:25 59:2 59:6 59:6 59:7 59:8 59:10 59:11 59:12 59:13 59:14 59:15 59:15 59:18 59:18 59:19 59:20 59:22 59:25 59:25 60:3 60:3 60:5 60:6 60:6 60:8 60:8 60:9 60:11 60:12 60:13 60:13 60:14 60:15 60:18 60:19 60:21 60:23 60:25 61:5 61:7 61:7 61:9 61:11 61:12 61:14 61:17 61:18 61:18 61:19 61:23 61:25 62:1 62:2 62:2 62:3 62:4 62:5 62:10 62:10 62:13 62:14 62:15 62:16 62:17 62:20 62:21 62:22 62:23 62:24 62:24 62:25 63:2 63:3 63:4 63:5 63:6 63:7 63:7 63:8 63:9 63:9 63:11 63:11 63:13 63:15 63:15 63:16 63:16 63:17 63:19 63:19 63:20 63:21 63:22 63:25 64:3 64:3 64:4 64:6 64:7 64:8 64:10 64:10 64:15 64:20 64:23 65:1 65:3 65:7 65:8 65:9 65:10 65:10 65:12 65:12 65:12 65:14 65:16 65:17 65:20 65:21 | **the**(301) | 65:21 65:22 65:23 65:24 65:25 65:25 66:1 66:1 66:3 66:4 66:6 66:6 66:7 66:8 66:9 66:10 66:11 66:11 66:11 66:12 66:14 66:15 66:16 66:16 66:17 66:18 66:19 66:20 66:20 66:24 66:25 67:2 67:3 67:5 67:6 67:8 67:10 67:12 67:13 67:15 67:15 67:19 67:20 67:20 67:21 67:21 67:21 67:22 67:22 67:22 67:24 67:25 68:4 68:8 68:9 68:9 68:9 68:10 68:10 68:10 68:10 68:10 68:11 68:11 68:11 68:12 68:14 68:14 68:15 68:16 68:16 68:16 68:18 68:18 68:19 68:20 68:21 68:23 68:24 68:24 68:24 68:25 69:1 69:1 69:2 69:2 69:2 69:2 69:3 69:3 69:4 69:6 69:6 69:8 69:9 69:9 69:10 69:12 69:13 69:15 69:15 69:16 69:18 69:18 69:21 69:22 69:23 69:24 69:25 70:1 70:2 70:6 70:6 70:7 70:10 70:11 70:12 70:14 70:14 70:15 70:16 70:16 70:17 70:17 70:19 70:20 70:21 70:22 70:22 70:24 71:1 71:1 71:3 71:7 71:7 71:7 71:8 71:9 71:12 71:13 71:15 71:16 71:16 71:17 71:18 71:19 71:21 71:22 71:22 71:23 71:23 71:24 71:24 72:1 72:1 72:3 72:7 72:8 72:10 72:11 72:13 72:16 72:18 72:18 72:19 72:19 72:21 72:21 72:21 72:22 72:22 72:24 72:24 72:25 73:2 73:3 73:4 73:5 73:5 73:6 73:7 73:8 73:9 73:9 73:10 73:12 73:13 73:14 73:14 73:15 73:18 73:21 73:21 73:22 73:23 73:24 73:25 73:25 74:1 74:3 74:4 74:4 74:4 74:5 74:7 74:7 74:8 74:10 74:10 74:12 74:12 74:14 74:15 74:16 74:17 74:17 74:18 74:19 74:20 74:21 74:23 74:25 75:2 75:4 75:8 75:10 75:12 75:13 75:14 75:14 75:17 75:24 75:25 76:2 76:4 76:12 76:12 76:13 76:13 76:14 76:14 76:16 76:17 76:17 76:18 76:18 76:19 76:19 76:20 76:24 76:25 76:25 77:2 77:3 77:7 77:11 77:11 77:13 77:14 77:15 77:15 77:18 77:20 77:22 77:24 78:2 78:4 78:6 78:8 78:10 78:12 78:13 78:15 78:17 78:19 78:24 78:24 79:2 79:2 79:3 79:5 79:4 79:4 79:6 79:8 79:8 79:9 79:11 79:14 79:15 79:15 79:17 79:19 79:19 79:21 | **the**(301) | 80:1 80:3 80:3 80:5 80:8 80:8 80:9 80:11 80:12 80:13 80:15 80:16 80:18 80:19 80:21 80:22 80:23 80:24 80:24 81:1 81:1 81:3 81:9 81:9 81:9 81:10 81:11 81:12 81:15 81:15 81:15 81:19 81:20 81:21 81:21 81:23 81:24 82:1 82:4 82:5 82:5 82:5 82:7 82:7 82:8 82:9 82:6 82:19 82:20 82:20 82:22 82:24 82:25 83:1 83:2 83:2 83:2 83:3 83:4 83:4 83:5 83:6 83:8 83:8 83:9 83:10 83:10 83:11 83:12 83:13 83:14 83:15 83:15 83:16 83:16 84:9 84:11 84:12 84:17 84:20 84:21 84:24 85:4 85:6 85:8 85:8 85:9 85:10 85:11 85:15 85:16 85:20 85:23 86:1 86:4 86:5 86:5 86:6 86:7 86:9 86:10 86:12 86:15 86:15 86:16 86:15 86:16 86:17 86:17 86:18 86:18 86:19 86:20 86:20 86:21 86:22 86:22 86:23 87:1 87:1 87:3 87:3 87:5 87:5 87:6 87:9 87:9 87:10 87:10 87:10 87:11 87:11 87:14 87:17 87:19 87:19 87:20 87:22 87:23 88:3 88:4 88:5 88:5 88:6 88:7 88:8 88:8 88:10 88:10 88:12 88:14 88:14 88:16 88:17 88:20 88:20 88:24 88:25 89:1 89:1 89:2 89:6 89:7 89:8 89:10 89:10 89:10 90:1 90:2 90:4 90:5 90:7 90:7 90:8 90:9 90:10 90:11 90:12 90:12 90:14 90:15 90:15 90:17 90:17 90:18 90:20 90:21 90:23 90:24 90:24 91:2 91:3 91:5 91:5 91:10 91:10 91:12 91:14 91:14 91:15 91:15 91:16 91:17 91:18 91:18 91:19 91:19 91:21 91:21 91:22 91:23 91:25 92:2 92:2 92:3 92:4 92:5 92:5 92:6 92:8 92:10 92:11 92:12 92:13 92:14 92:17 92:19 92:20 92:21 92:22 92:23 92:23 92:23 93:1 93:2 93:3 93:7 93:7 93:7 93:8 93:9 93:11 93:15 93:16 93:19 93:19 93:22 93:25 93:25 94:1 94:5 94:9 94:14 94:23 94:25 95:4 95:8 95:12 95:13 95:20 95:20 95:24 96:1 96:2 96:3 96:5 96:6 96:7 96:8 96:10 96:16 96:20 96:22 97:9 97:10 97:12 97:14 97:18 | **theil**(5) | 9:39 27:6 27:6 27:9 27:16 |
| | | | | | | **their**(26) | 13:11 15:12 21:7 26:7 30:16 30:22 32:19 35:20 36:22 40:4 40:9 40:23 40:23 42:14 45:16 60:2 62:11 66:21 73:19 78:20 80:2 81:5 82:14 86:1 89:6 97:21 |
| | | | | **the**(190) | 97:18 97:20 97:21 97:25 97:25 98:1 98:2 98:4 98:6 98:7 98:8 98:8 98:9 98:14 98:21 98:23 98:23 98:23 99:2 99:2 99:3 99:3 99:7 99:10 99:14 99:15 99:17 99:21 99:24 100:1 100:4 100:4 100:6 100:8 100:8 100:9 100:10 100:11 100:15 100:17 100:18 100:19 100:19 100:21 100:24 101:1 101:2 101:4 101:5 101:7 101:10 101:10 101:12 101:13 101:14 101:15 101:17 101:20 101:21 101:23 101:23 102:3 102:5 102:7 102:7 102:8 102:11 102:13 102:14 102:16 102:18 102:18 102:19 102:20 102:20 102:21 102:21 102:23 102:25 103:1 103:7 103:9 103:9 103:11 103:14 103:16 103:16 103:17 103:18 103:18 103:20 103:20 103:21 103:23 103:23 103:24 103:25 104:2 104:3 104:4 104:5 104:6 104:7 104:8 104:9 104:10 104:11 104:11 104:16 104:16 104:17 104:18 104:19 104:19 104:21 104:23 104:23 104:24 104:25 104:25 105:2 105:3 105:4 105:6 105:10 105:10 105:11 105:12 105:16 105:20 105:21 105:22 106:1 106:2 106:3 106:5 106:5 106:6 106:8 106:8 106:10 106:10 106:11 106:11 106:12 106:13 106:14 106:16 106:16 106:17 106:21 106:22 106:24 106:25 107:2 107:4 107:4 107:5 107:6 107:6 107:8 107:8 107:9 107:10 107:11 107:11 107:12 107:13 107:14 107:15 107:18 107:18 107:21 107:23 107:23 107:25 107:25 108:2 108:3 108:5 108:8 108:9 108:12 108:13 108:16 108:17 108:17 108:18 | **them**(38) | 16:1 16:17 20:8 28:15 28:16 30:17 31:21 31:23 33:24 36:8 37:18 39:11 39:12 40:9 40:18 40:20 42:21 47:9 47:10 51:8 52:19 60:18 82:21 89:4 92:17 94:2 94:2 94:17 94:17 95:2 95:9 95:12 98:3 98:4 98:14 99:1 99:3 105:12 107:24 |
| | | | | | | **then**(31) | 12:25 13:11 13:19 18:1 27:9 28:5 32:1 33:20 36:2 42:11 48:9 49:11 53:4 57:3 57:3 57:11 58:17 62:1 63:6 67:12 70:10 73:16 75:13 78:12 81:6 81:18 85:15 96:1 96:6 103:25 108:1 |
| | | | | | | **there**(66) | 12:14 14:3 14:9 14:14 23:21 26:25 27:3 27:3 28:3 28:9 35:10 39:25 40:1 41:10 41:24 42:8 42:9 42:11 42:18 43:13 44:2 45:15 45:22 48:5 50:24 51:3 51:6 51:15 51:17 52:9 52:10 52:20 52:21 53:1 53:16 53:20 53:21 54:5 54:11 54:15 54:19 55:10 55:14 55:21 56:12 56:15 56:17 64:6 64:13 66:7 76:25 84:2 85:18 101:10 102:19 102:22 102:23 103:5 103:10 103:22 104:18 104:21 106:14 107:19 107:21 108:6 |
| | | | | | | **thereafter**(1) | 58:19 |
| | | | | | | **there'd**(2) | 28:11 103:11 |
| | | | | | | **there's**(23) | 20:19 26:6 31:11 32:21 34:9 35:13 36:1 36:3 36:5 36:22 37:24 40:13 44:21 45:9 45:23 53:15 54:17 55:22 55:23 81:18 85:7 91:23 103:5 |
| | | | | | | **these**(63) | 14:18 16:25 20:20 21:11 21:13 22:4 24:22 26:11 26:18 26:24 30:20 31:12 32:15 33:20 35:5 35:12 35:14 35:21 35:24 35:25 36:7 36:11 36:15 36:16 36:22 37:2 37:9 37:21 38:15 38:17 38:23 40:2 40:18 41:11 41:12 41:16 41:23 42:5 42:6 42:16 42:24 43:20 44:13 44:24 44:25 45:2 45:7 45:10 45:17 45:25 56:1 58:19 60:21 61:5 63:14 77:2 86:11 86:22 88:2 89:21 89:24 91:3 106:15 |
| | | | | | | **thesis**(2) | 91:4 91:24 |
| | | | | | | **they**(92) | 14:11 14:11 16:1 16:18 17:1 17:1 17:3 17:4 17:5 21:5 21:25 22:1 22:7 25:21 26:20 29:14 30:1 30:9 30:10 30:23 31:19 32:3 32:7 32:8 32:23 33:11 35:6 35:6 35:7 35:15 35:25 36:18 36:20 36:23 36:24 38:2 38:16 38:18 38:19 38:22 39:2 39:3 39:12 39:13 40:7 40:12 40:13 40:14 40:15 41:13 42:19 44:16 45:2 45:17 45:18 45:19 45:20 46:1 46:2 62:13 64:11 70:12 70:13 76:11 78:20 79:24 80:6 83:1 83:3 83:4 85:16 86:16 94:21 94:23 95:13 95:13 96:3 97:20 98:1 98:3 98:5 98:6 98:18 98:18 98:24 100:13 101:5 101:18 104:20 104:22 107:17 107:18 |
| | | | | | | **they'd**(2) | 22:11 33:23 |
| | | | | | | **they'll**(2) | 38:9 104:4 |
| | | | | | | **they're**(18) | 15:8 22:10 25:1 25:2 35:14 35:15 36:9 36:16 36:18 36:25 37:2 38:19 41:16 45:1 45:1 45:3 99:1 99:25 |
| | | | | | | **they've**(4) | 36:15 40:22 40:24 106:1 |
| | | | | | | **thing**(7) | 18:7 20:13 35:15 36:22 39:3 45:18 45:20 |
| | | | | | | **things**(12) | 15:9 21:17 21:23 32:21 40:10 46:16 51:22 54:1 70:4 85:18 92:15 101:15 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**think**(68) 14:1 14:8 15:8 16:5 16:8 16:12 16:13 16:24 17:22 17:23 17:25 18:8 18:10 19:4 20:13 21:14 22:18 23:15 24:3 24:7 26:19 27:25 28:20 29:18 29:22 33:8 34:4 34:21 35:2 36:6 37:21 37:24 40:10 42:17 51:6 52:22 55:18 55:23 56:8 56:19 58:3 65:21 76:13 79:11 84:13 84:14 85:21 95:2 95:10 95:11 95:24 96:4 97:7 98:14 98:15 99:1 99:1 100:10 100:11 100:19 101:4 101:6 101:16 102:7 103:8 104:5 105:24 106:21

**thinking**(3) 34:22 75:16 98:25

**third**(8) 51:23 73:2 80:22 81:9 81:10 81:19 81:25 92:1

**thirty**(1) 100:25

**thirty-third**(1) 12:18

**this**(142) 15:25 16:6 16:20 16:23 16:24 18:18 18:21 19:9 19:22 20:6 20:24 21:1 21:4 21:6 21:13 21:14 21:17 21:18 21:18 21:19 21:20 21:22 23:12 24:12 24:13 24:23 24:23 25:10 25:17 27:6 28:24 29:22 31:4 31:4 31:14 32:3 32:7 32:8 32:8 33:1 33:1 33:9 33:11 34:14 34:20 35:8 35:19 36:4 36:12 36:14 37:1 37:11 37:20 38:10 38:14 38:19 38:21 39:24 40:9 41:7 41:21 43:14 43:23 44:3 44:11 44:14 44:15 44:17 45:8 45:23 46:3 46:13 46:25 47:14 47:16 47:18 48:4 48:16 48:19 48:22 50:11 51:22 52:10 53:8 55:9 56:12 57:1 58:12 58:15 58:25 60:5 60:8 60:15 61:20 64:2 64:2 65:19 66:10 67:4 67:18 68:1 69:13 69:25 70:14 73:4 73:11 73:17 74:16 77:3 77:5 77:9 77:10 77:13 78:10 79:12 81:2 81:14 82:1 82:22 84:19 84:19 85:6 85:7 85:10 85:17 86:2 88:7 89:3 92:18 93:8 95:14 97:2 100:9 101:4 102:18 104:1 105:13 105:23 106:2 107:22 108:9

**thomas**(2) 2:5 5:7

**thornburg**(1) 4:1

**those**(44) 13:6 13:23 15:19 15:22 15:22 16:15 18:19 19:2 22:6 22:13 24:5 26:12 27:11 28:14 30:2 30:25 31:8 32:25 33:23 35:8 37:3 39:4 39:8 39:11 39:19 40:16 41:1 44:19 53:13 65:14 82:11 83:9 83:21 89:2 90:7 91:16 93:24 96:6 97:16 97:23 98:13 99:6 101:15 107:22

**though**(13) 23:9 34:3 37:10 38:15 45:2 54:25 74:15 75:5 75:19 79:20 86:8 97:23 102:17

**thought**(8) 12:5 18:9 39:25 40:25 94:21 94:22 95:4 101:17

**thoughts**(2) 74:18 85:16

**three**(22) 13:23 29:24 30:8 30:21 32:12 35:5 35:14 40:2 40:11 42:24 43:6 61:4 62:13 67:2 68:8 73:11 74:10 77:11 80:20 81:17 91:17 105:10

**three-year**(2) 55:10 55:12

**threshold**(2) 72:20 101:6 105:7

**through**(21) 12:5 16:7 16:20 52:19 52:21 53:2 53:5 53:13 53:14 59:14 60:25 79:18 80:13 80:25 81:21 87:21 87:24 88:21 90:22 91:14 107:22

**throughout**(4) 18:17 30:12 91:22 97:23

**thrust**(3) 91:14 91:21 92:2

**thwart**(1) 89:19

**thwarted**(1) 87:12

**tibita**(1) 7:15

**tie**(1) 91:5

**ties**(1) 68:15

**time**(39) 15:20 18:24 21:2 21:10 22:1 22:24 23:2 23:6 26:4 28:18 32:5 35:21 36:12 36:17 45:10 45:19 52:9 54:9 55:22 55:24 60:9 63:8 67:21 67:24 68:21 69:8 74:4 74:7 74:14 83:14 83:16 96:5 98:14 99:16 99:18 99:21 100:14 100:19 106:8

**timed**(1) 73:24

**timeframe**(1) 44:5

**timely**(3) 50:22 51:20 68:3

**times**(2) 2:39 67:10

**tipped**(1) 44:22

**title**(1) 85:9

**today**(16) 14:20 19:25 23:9 24:21 28:10 30:14 31:2 43:12 45:22 48:13 57:23 100:7 100:22 100:25 101:18 108:6

**together**(1) 17:20

**told**(7) 17:24 28:18 66:7 69:1 76:10 76:18 95:13

**tone**(2) 47:21 47:24

**too**(3) 85:13 98:24 100:3

**took**(7) 17:23 26:23 41:21 44:15 59:18 88:25 90:5

**top**(1) 97:21

**topic**(2) 90:10 90:11

**torres**(1) 9:5

**totality**(3) 62:25 86:10 89:18

**touched**(2) 88:4 94:9

**toward**(3) 58:15 87:12 89:19

**towards**(4) 59:14 83:5 92:24 100:7

**transcriber**(1) 108:21

**transcript**(10) 1:18 1:50 16:7 16:20 41:20 41:25 43:14 46:11 108:10 108:17

**transcription**(2) 1:43 1:50

**transcripts**(1) 106:13

**transfer**(1) 27:22

**traxler**(1) 9:43

**treat**(4) 16:16 31:11 34:13 107:24

**treated**(2) 47:12 106:17

**treating**(1) 107:11

**treatment**(3) 30:2 34:11 107:20

**tremaine**(2) 9:21 9:21

**tribune**(13) 1:8 4:37 4:37 5:27 8:37 12:4 14:14 14:19 30:12 32:18 63:14 69:9 69:10

**tricky**(1) 39:9

**tried**(2) 98:22 105:9

**trivial**(1) 38:13

**true**(7) 35:23 37:4 38:15 40:14 64:11 77:9 82:2

**truly**(1) 74:16

**trump**(1) 9:48

**trust**(8) 2:37 27:23 31:7 33:3 33:23 34:3 36:3 40:6

**trustee**(5) 4:30 17:20 24:8 26:7 47:23

**trusts**(4) 13:11 30:18 30:25 36:11

**truth**(4) 79:4 80:19 81:15 89:2

**try**(7) 18:9 39:17 39:24 41:18 42:10 44:17 95:6

**trying**(2) 24:16 66:10

**turn**(13) 13:19 16:1 35:22 48:9 48:10 49:2 52:8 56:24 57:11 67:12 69:22 74:4 87:8

**turned**(3) 23:23 35:21 70:7

**turning**(2) 63:3 96:16

**turns**(2) 35:24 87:9

**tweed**(1) 9:34

**twenty**(1) 12:11

**twenty-seventh**(1) 12:13

**two**(49) 14:9 19:23 27:3 28:2 28:14 30:13 30:15 30:15 30:20 30:21 30:24 31:5 31:9 31:10 32:9 33:14 35:19 41:5 42:20 43:5 43:6 43:13 44:8 50:4 50:5 50:15 51:13 55:21 59:16 61:5 61:7 66:17 68:13 73:14 73:20 81:7 82:20 83:19 85:8 86:23 88:23 91:24 95:19 96:6 97:13 100:2 102:14 105:10 105:20

**two-and-a-half**(1) 59:11

**two-month**(1) 96:9

**two-step**(1) 67:11

**twomey**(1) 5:16

**type**(1) 104:18

**u.s**(4) 4:30 24:8 26:6 47:23

**ugly**(1) 98:18

**uh-huh**(2) 69:14 69:20

**ultimate**(1) 70:16

**ultimately**(4) 17:4 50:23 70:15 75:4

**um-hum**(5) 70:18 70:23 84:10 94:12 95:22

**unable**(1) 104:18

**unaccomplished**(1) 85:3

**uncertain**(1) 47:11

**uncertainty**(2) 68:17 68:21

**unclear**(5) 26:13 31:21 42:8 43:18 80:2

**uncomfortable**(1) 91:1

**uncommon**(1) 21:25

**uncooperative**(1) 85:1

**under**(25) 15:20 17:16 17:24 27:23 33:15 41:16 46:19 47:7 50:17 64:12 64:20 65:3 69:8 70:14 78:24 80:5 82:17 89:23 92:10 93:22 93:25 94:10 101:7 101:14 101:15

**underlies**(1) 62:14

**understand**(15) 16:14 22:19 23:24 24:25 25:5 25:9 40:8 44:10 48:3 49:4 50:21 56:10 94:2 94:2 99:25

**understanding**(9) 16:25 17:14 31:20 34:7 55:21 75:6 75:13 78:21 107:21

**understood**(2) 72:16 106:4

**undertaking**(1) 22:23

**undid**(1) 90:15

**unfairness**(1) 32:22

**unguarded**(1) 86:17

**united**(3) 1:1 1:20 4:30

**university**(1) 88:13

**unjust**(1) 89:14

**unjustified**(1) 26:15

**unjustly**(1) 88:25

**unless**(5) 33:24 37:10 49:6 51:10 56:24 57:9 105:2

**unlike**(1) 40:21

**unmistakable**(1) 61:11

**unproductive**(1) 85:4

**unprofessional**(1) 84:25

**unreasonable**(1) 26:15

**unreasonably**(4) 104:13 104:15 105:1 105:13

**unresolved**(2) 14:10 17:17

**unresponsive**(1) 87:16

**unsavory**(2) 84:2 84:12

**unsecured**(8) 2:11 5:4 10:3 16:5 16:17 17:5 39:16 107:24

**unsettled**(1) 74:15

**unsettling**(1) 91:9

**unsubstantiated**(1) 86:6

**unsuccessful**(2) 23:24 75:20

**until**(7) 19:9 50:25 67:16 74:10 75:1 75:8 95:1

**untruths**(1) 74:22

**unworkable**(1) 68:20

**upon**(8) 28:10 45:6 77:17 78:15 80:4 82:15 83:12 105:9

**upset**(1) 25:3

**urgent**(1) 92:15

**usb**(2) 6:26 6:26

**usdr-cni**(1) 12:21

**use**(5) 21:23 61:9 63:21 82:1 103:12

**using**(1) 75:8

**usually**(1) 21:5

**vacation**(1) 14:19

**vail**(1) 7:43

**valid**(5) 51:11 50:16 70:15 70:22 82:13

**validity**(2) 70:17 101:23

**valuation**(1) 22:22

**value**(2) 32:17 100:8

**various**(6) 51:5 68:23 71:2 74:6 75:19

**vast**(1) 14:1

**very**(18) 24:13 35:14 36:14 39:17 39:20 40:3 40:9 48:25 74:13 76:9 76:11 77:7 85:18 93:13 94:8 97:7 99:22 108:8

**victims**(1) 81:4

**view**(17) 23:15 32:7 36:10 36:10 36:23 37:21 45:5 54:9 60:23 74:13 76:24 77:3 89:18 96:2 101:3 106:23 106:23

**violate**(2) 62:20 63:19

**violated**(3) 62:13 63:11 93:2

**violation**(5) 63:3 63:4 67:16 69:6 76:21

**violations**(1) 66:21

**virtue**(2) 40:22 102:3

**visibly**(1) 87:4

**visited**(1) 83:11

**void**(2) 69:7 69:16

**voluminous**(1) 50:8

**von**(1) 12:13

**vonnegut**(1) 3:17

**vulnerable**(1) 87:24

**wacker**(1) 4:25

**wait**(3) 35:12 37:14 44:21

**waited**(4) 73:16 74:9 95:17 95:20

**walker**(1) 12:23

**walmart**(1) 67:8

**want**(15) 21:25 22:12 25:10 25:13 26:23 30:11 32:23 41:4 42:23 45:24 46:12 46:12 46:14 57:20 103:9

**wanted**(8) 13:15 20:23 27:20 27:21 28:3 36:6 45:17 107:5

**wants**(2) 22:9 104:22

**wardwell**(1) 7:18

**warn**(2) 18:8 67:20

**warsavsky**(1) 10:4

| Word | Page:Line |
| --- | --- |
| was(188) | 13:1 13:2 13:3 14:5 15:3 15:3 15:20 16:5 16:6 16:6 16:7 16:19 17:22 18:9 20:14 21:6 21:9 21:21 21:22 22:20 22:23 22:24 23:5 23:20 23:21 23:22 24:1 24:2 24:11 26:15 27:21 28:24 30:17 31:19 31:24 32:3 33:11 34:20 34:22 35:9 35:10 35:19 35:20 35:23 36:12 37:1 38:16 39:12 39:23 39:23 41:19 41:24 42:3 42:8 42:8 42:9 42:11 42:17 42:18 44:17 44:25 45:10 45:15 45:16 48:3 48:18 48:19 50:1 50:22 50:23 50:24 51:3 51:3 51:13 51:24 51:24 52:7 52:9 52:10 52:11 53:25 54:7 54:9 54:25 54:25 55:1 55:3 55:10 56:2 56:4 56:15 60:10 61:6 61:7 61:11 61:14 62:5 62:6 63:23 64:16 65:15 65:18 65:23 66:2 66:7 66:7 66:10 66:13 67:8 67:9 68:4 69:2 69:6 70:4 70:9 70:12 71:5 71:6 71:23 73:10 73:22 74:14 74:16 74:18 74:20 75:1 75:7 75:7 75:7 75:20 76:18 76:19 78:11 79:17 80:16 81:24 83:12 83:16 83:16 84:2 84:2 84:4 84:18 85:9 85:10 85:10 85:18 86:15 86:23 87:4 88:14 90:7 90:25 91:18 92:1 92:7 92:10 92:13 94:10 95:3 95:4 95:11 96:10 96:23 97:7 97:12 97:17 97:17 98:9 99:17 101:7 101:22 102:19 102:22 102:22 102:23 103:5 103:8 103:10 104:18 104:21 107:3 107:6 107:8 107:10 107:19 108:13 |
| washington(1) | 48:14 |
| wasn't(2) | 75:16 103:3 |
| way(19) | 15:25 16:25 20:6 21:20 23:15 25:1 31:3 31:4 34:14 37:7 40:20 44:12 45:4 52:25 55:5 56:18 57:19 78:10 95:14 |
| ways(1) | 31:13 |
| wednesday(1) | 12:1 |
| weebee(1) | 56:6 |
| week(2) | 40:10 100:17 |
| weeks(1) | 73:14 |
| weil(1) | 7:22 |
| weiss(2) | 7:1 10:8 |
| weitman(1) | 5:30 |
| welcome(2) | 27:17 49:20 |
| well(59) | 13:6 15:16 19:17 19:24 20:6 22:4 26:19 28:8 31:20 32:25 34:24 35:1 36:18 37:3 37:10 37:16 39:8 41:10 45:4 51:11 51:18 55:14 57:1 57:24 60:23 62:5 63:20 63:23 65:1 69:12 70:14 72:9 72:9 80:24 82:9 83:13 84:6 86:4 87:15 91:14 92:19 93:19 95:4 95:6 95:10 95:24 96:5 98:13 99:1 99:22 100:4 106:25 |
| well-being(5) | 76:1 83:21 89:5 89:6 89:20 |
| well-defined(1) | 68:13 |
| well-performed(1) | 22:7 |
| wells(2) | 7:46 12:11 |
| were(62) | 14:12 15:14 15:19 15:22 17:24 19:2 22:6 22:7 27:3 27:3 28:19 29:24 30:11 30:23 30:24 30:25 31:9 31:22 35:14 35:22 36:14 36:23 39:13 40:13 41:11 42:19 44:9 51:19 52:4 52:13 56:17 61:6 69:25 72:7 75:5 75:20 80:18 81:12 83:1 85:16 89:18 89:23 91:16 94:9 96:22 96:23 96:24 97:16 98:2 98:3 98:3 98:18 99:2 105:7 105:23 106:6 106:9 106:11 107:14 107:15 |
| weren't(1) | 98:18 |
| west(2) | 3:32 4:3 |
| we'll(3) | 49:11 78:4 108:10 |
| we're(9) | 12:6 24:23 29:1 31:1 33:6 37:19 38:12 78:10 100:17 |
| we've(6) | 19:23 29:5 32:19 33:15 100:7 102:15 |
| wharton(1) | 7:1 |

| Word | Page:Line |
| --- | --- |
| what(109) | 14:7 15:16 15:21 16:1 16:9 17:5 17:19 18:12 18:22 19:16 21:21 22:12 23:3 24:3 24:4 24:23 25:11 26:13 26:17 28:10 28:25 29:1 29:18 29:19 31:21 31:22 32:1 33:11 33:19 33:21 34:20 35:3 36:14 37:2 37:16 38:8 38:20 39:6 39:18 40:3 41:7 41:16 42:8 42:10 43:3 43:18 43:21 43:22 44:24 47:8 47:11 48:21 48:21 51:5 53:10 54:4 57:22 57:23 57:24 58:1 58:13 58:16 61:8 62:4 62:9 62:10 62:20 64:9 64:11 64:12 64:16 65:6 67:23 70:13 70:25 71:3 72:1 72:3 72:14 74:16 75:6 79:12 79:25 80:6 80:6 81:2 81:9 83:10 84:19 85:4 85:6 85:7 85:10 86:9 87:6 88:19 90:21 91:20 93:17 93:17 95:24 97:4 97:13 97:24 99:25 101:6 105:7 107:7 |
| whatever(8) | 22:25 29:2 29:3 48:6 54:14 55:2 70:3 106:20 |
| what's(9) | 12:7 12:7 14:13 29:21 38:1 38:18 46:6 46:19 61:20 |
| when(25) | 15:3 16:6 20:7 21:4 26:4 38:18 39:17 41:21 47:10 51:5 66:4 67:14 67:17 70:19 79:22 80:20 81:17 84:14 84:15 88:14 92:9 95:11 97:16 98:1 105:14 |
| where(15) | 14:7 20:4 23:6 41:19 45:22 53:1 53:12 54:19 70:12 70:12 79:4 79:5 102:15 104:11 105:11 |
| whereupon(1) | 108:13 |
| whether(15) | 18:25 20:25 22:6 22:7 25:17 25:20 36:24 36:24 42:8 47:11 82:5 94:23 101:7 101:11 101:13 |
| which(77) | 13:3 13:4 13:7 13:8 14:9 14:10 15:2 15:3 18:14 18:19 19:2 19:23 20:18 21:24 22:3 23:20 23:23 25:1 28:12 31:18 32:4 35:16 35:21 36:4 39:22 41:13 43:19 45:22 47:21 47:22 49:17 50:17 52:8 53:7 53:14 55:1 55:15 56:4 56:12 56:15 56:17 58:11 60:17 61:6 61:22 62:16 62:23 63:15 67:9 67:11 70:2 70:5 70:6 70:20 74:6 74:12 75:9 77:12 77:17 78:11 78:15 79:9 80:4 80:22 82:15 83:15 84:1 88:3 88:8 88:25 89:21 93:5 99:2 99:17 100:17 102:16 102:21 |
| while(4) | 15:18 70:19 74:15 74:18 |
| white(1) | 7:46 |
| who(19) | 14:17 15:12 15:14 15:19 15:22 15:23 16:6 24:16 31:10 32:9 34:13 38:1 42:12 48:15 90:24 98:10 98:13 107:14 107:15 |
| whoa(1) | 44:20 |
| whoever(1) | 45:11 |
| whole(1) | 54:17 |
| whom(5) | 31:12 65:15 76:16 104:4 104:5 |
| whose(3) | 22:2 24:5 85:12 |
| why(15) | 16:14 24:25 31:19 37:19 40:5 52:22 55:22 55:23 56:8 58:3 61:9 67:5 84:3 91:1 98:6 |
| wife(4) | 59:17 81:22 86:25 96:23 |
| will(37) | 5:37 12:17 18:11 19:14 21:11 22:2 22:11 22:12 22:14 22:24 23:4 28:22 33:18 39:24 42:1 47:16 47:19 47:22 49:23 51:4 55:19 57:21 57:21 58:4 58:12 64:18 69:12 77:8 78:6 85:14 91:13 97:12 101:13 103:1 105:17 106:3 108:9 |
| willette(1) | 12:15 |
| william(1) | 2:44 |
| williams(2) | 13:10 30:8 |
| willing(1) | 84:22 |
| wilmington(15) | 1:12 1:38 2:7 2:14 2:34 2:37 2:46 3:12 3:26 3:33 4:4 4:12 4:19 4:34 12:1 |

| Word | Page:Line |
| --- | --- |
| winfree(1) | 3:10 |
| wish(6) | 19:15 22:15 56:25 57:19 71:25 93:11 |
| wishes(2) | 57:2 57:9 |
| with(169) | 12:6 12:10 12:12 12:15 12:19 12:20 12:22 12:24 12:25 13:5 13:5 13:12 13:18 14:13 17:11 17:19 18:12 18:16 18:17 18:25 19:13 19:17 20:11 20:19 20:20 21:1 21:11 22:4 22:12 22:18 22:20 23:1 23:1 23:14 25:11 26:6 27:3 27:9 27:10 27:25 28:17 28:25 29:4 29:17 29:18 29:23 31:1 31:2 31:11 31:17 32:10 32:21 33:20 33:21 35:18 36:2 36:10 37:2 37:9 38:24 39:12 39:13 40:23 42:4 42:20 43:21 43:22 46:10 47:8 47:18 48:3 48:4 48:10 48:13 48:15 48:22 49:1 49:4 50:5 50:6 50:8 52:24 53:6 53:9 53:15 54:21 54:22 55:6 56:6 59:6 60:12 60:18 61:8 61:20 62:3 62:11 62:17 62:24 62:24 63:21 64:5 64:9 64:16 65:9 65:11 65:16 65:22 65:23 66:23 66:24 67:7 67:12 68:17 70:9 70:17 71:11 72:14 72:25 73:23 75:23 75:24 76:2 76:24 77:1 77:18 77:24 78:16 79:11 80:9 80:15 80:21 80:22 81:17 83:1 84:14 85:5 86:5 86:9 86:14 87:13 87:18 91:9 91:19 91:22 91:22 92:10 92:13 92:25 93:25 94:20 95:9 97:2 98:3 98:4 101:17 102:13 102:14 103:15 105:2 105:7 105:21 106:1 106:6 106:10 106:11 106:18 107:9 108:1 |
| withdrawing(1) | 42:12 |
| withdrawn(2) | 42:17 108:3 |
| withheld(4) | 104:13 104:15 105:1 105:13 |
| withholding(1) | 87:13 |
| within(7) | 19:16 47:16 50:19 51:4 60:23 68:11 73:14 |
| without(16) | 14:19 35:20 36:13 38:17 39:11 40:14 42:14 44:9 44:10 45:6 45:20 68:6 77:25 89:5 104:7 104:8 |
| witness(4) | 23:13 25:12 25:13 93:16 |
| witnesses(3) | 11:6 24:16 24:18 |
| womble(1) | 2:4 |
| won't(2) | 64:1 90:22 |
| word(4) | 34:23 53:11 75:22 91:14 |
| words(4) | 31:3 31:4 99:6 104:6 |
| work(12) | 24:2 24:15 30:13 32:8 32:8 32:17 32:23 36:24 40:10 91:7 105:10 107:17 |
| worked(3) | 30:9 36:22 45:2 |
| worst(1) | 67:14 |
| would(109) | 13:5 15:5 15:13 15:21 16:21 16:23 17:14 17:5 17:16 18:3 19:9 22:12 28:2 28:11 28:12 29:3 29:9 33:19 33:19 33:21 33:22 33:24 34:1 34:21 38:20 39:10 39:12 40:24 41:13 41:15 42:6 43:17 44:17 45:19 46:10 47:18 48:12 49:1 49:2 50:9 51:9 52:25 55:18 57:24 58:22 60:2 67:25 68:3 68:20 70:11 72:18 75:17 75:18 76:2 76:21 79:10 83:14 83:20 83:20 83:21 84:1 84:3 84:14 84:19 86:10 87:14 89:22 89:13 90:22 90:25 91:1 91:1 91:2 91:8 91:23 93:13 93:15 95:24 95:25 98:17 99:18 99:21 100:2 100:9 100:14 100:19 102:17 103:11 104:3 104:5 104:6 104:8 104:12 104:13 104:13 104:20 104:22 104:24 104:25 105:1 105:8 105:19 105:22 105:25 106:17 106:18 106:19 107:18 108:2 |
| wouldn't(3) | 46:1 84:13 99:6 |
| would've(1) | 39:13 |
| wrapped(2) | 24:14 40:25 |
| wright(2) | 9:20 9:21 |
| writ(1) | 66:16 |
| write(2) | 62:2 76:12 |
| writing(2) | 61:24 73:6 |

| Word | Page:Line |
| --- | --- |
| written(11) | 15:2 39:18 39:19 50:1 52:7 52:9 64:7 97:12 98:9 99:18 100:22 |
| wrong(8) | 17:15 32:21 38:22 44:16 44:17 44:23 45:3 103:1 |
| wrote(9) | 61:24 66:9 75:22 79:12 81:2 85:6 88:18 98:10 98:13 |
| www.diazdata.com(1) | 1:47 |
| yeah(3) | 72:14 77:23 96:21 |
| year(9) | 21:18 37:7 37:9 42:22 50:11 63:8 74:5 74:8 92:13 |
| years(11) | 30:10 31:5 33:14 44:13 50:4 50:5 52:6 53:24 81:16 87:7 90:16 |
| year's(1) | 40:9 |
| yes(27) | 14:16 16:8 19:11 20:10 20:17 23:5 24:11 25:9 26:10 27:8 36:20 40:14 46:5 54:17 58:25 72:12 94:16 94:16 94:19 96:8 96:19 96:25 97:13 98:17 99:20 101:20 108:4 |
| yesterday(3) | 14:11 28:5 48:18 |
| yet(4) | 17:21 20:23 47:20 61:10 |
| york(7) | 2:21 2:27 2:40 3:6 3:19 3:47 9:11 |
| you(301) | 13:20 13:24 14:4 14:7 14:22 14:23 14:23 14:25 16:8 17:23 17:23 17:24 18:11 18:11 18:24 18:25 19:5 19:7 19:14 19:16 19:20 20:6 20:7 20:9 21:23 22:3 22:11 23:10 23:12 23:19 23:23 24:3 24:17 24:20 24:21 25:5 25:6 25:16 25:20 25:21 25:21 26:3 26:4 26:8 26:8 26:10 26:21 27:2 27:5 27:11 27:13 27:14 27:16 27:20 27:22 28:1 28:2 28:2 28:7 28:8 28:13 28:17 28:25 29:1 29:11 29:12 29:14 29:16 29:18 29:20 30:20 31:5 31:6 31:14 31:18 32:7 32:13 32:20 33:2 33:5 33:8 33:10 33:19 33:24 34:1 34:2 34:17 34:18 34:19 34:24 35:17 35:18 35:19 35:22 36:12 36:14 37:7 37:8 37:8 37:9 37:11 37:20 37:20 37:24 38:6 38:20 38:20 38:24 39:1 39:14 41:10 42:10 42:23 43:10 43:11 43:12 43:16 43:25 44:2 44:5 44:7 44:9 45:3 45:21 45:22 45:24 45:24 46:10 46:14 46:15 46:17 46:18 47:8 47:10 47:19 48:1 48:20 49:12 49:21 51:13 51:16 55:10 55:19 56:11 56:13 56:21 57:5 57:14 57:15 57:16 57:19 57:20 57:20 57:22 57:22 58:3 58:4 58:5 59:2 59:2 59:4 60:9 62:10 63:20 63:21 64:7 64:9 64:11 64:12 64:18 64:23 67:9 69:12 69:24 69:25 70:5 70:12 70:24 71:11 71:15 71:16 72:5 72:7 72:7 72:11 73:8 76:14 77:8 77:24 78:8 78:9 83:11 83:12 83:14 83:24 84:6 84:9 84:11 84:13 84:15 84:15 84:16 84:21 85:17 85:21 85:21 85:24 86:4 90:21 93:19 93:10 93:15 93:19 99:20 93:23 93:23 94:1 94:1 94:2 94:8 94:9 94:9 94:10 94:11 94:13 94:15 94:17 94:17 94:17 94:20 94:22 94:24 94:25 95:1 95:4 95:6 95:7 95:9 95:10 95:14 95:17 95:17 95:17 95:20 95:23 96:1 96:6 96:10 96:13 96:14 96:16 96:16 96:17 96:20 96:22 96:24 97:1 97:1 97:6 97:8 97:10 97:10 97:12 97:23 98:2 98:8 98:9 98:13 98:6 98:8 98:8 98:9 98:12 98:12 98:13 98:15 98:21 98:21 98:22 98:22 99:5 99:8 99:10 99:10 99:11 99:13 99:14 99:15 99:15 99:16 99:18 99:21 99:24 100:21 100:25 101:3 101:18 |
| you(19) | 101:20 101:21 102:3 102:4 102:5 102:6 103:1 103:1 104:14 104:21 105:21 105:23 105:25 106:6 107:24 108:8 108:10 108:11 108:12 |
| young(3) | 3:30 7:3 10:7 |
| younger(1) | 54:3 |

| Word | Page:Line |
|---|---|

**your**(126) 12:3  12:4  12:5  12:9  13:20
13:25  14:16  15:5  16:3  16:21  17:10  19:7
19:10  19:20  20:9  20:10  20:13  22:16  22:18
22:25  23:10  23:11  24:2  24:16  26:11  27:6
27:16  27:18  28:15  28:25  29:8  29:14  29:16
30:7  30:14  30:14  31:7  33:17  34:11  34:19
38:2  38:7  39:15  39:25  41:20  42:1  42:7
42:9  42:11  42:16  43:3  43:9  43:11  44:8
46:5  46:17  46:20  47:1  48:1  48:8  48:10
48:20  48:23  49:9  49:12  49:15  49:21  49:23
51:2  51:9  51:10  51:18  52:20  53:1  54:10
55:4  55:16  55:18  56:19  56:23  57:5  57:6
57:9  57:14  57:22  58:7  58:25  64:9  76:12
78:9  85:24  86:3  93:14  94:9  94:10  94:20
95:2  95:7  95:15  96:2  98:9  98:22  98:24
99:8  99:11  99:13  99:15  100:6  101:23
101:24  102:10  102:17  103:3  103:15  103:18
104:6  105:5  105:8  105:9  105:24  106:4
106:7  106:13  106:21  107:1  108:7

**yours**(1) 86:2
**you'd**(8) 14:5  18:23  19:4  24:22  46:15
57:12  57:23  102:2

**you'll**(5) 14:3  19:24  19:25  20:2  45:21
**you're**(22) 16:5  16:14  19:5  19:5  20:3  20:4
27:17  29:4  33:12  34:2  34:10  35:1  37:4
37:5  37:11  37:12  38:5  38:21  57:18  64:12
65:3  102:25

**you've**(3) 44:21  105:15  105:24
**zachary**(1) 12:15
**zatz**(1) 7:47
**zensky**(17) 3:3  18:4  19:3  19:7  19:7  19:12
19:18  19:20  102:10  102:11  102:25  103:3
103:8  103:15  105:20  105:22  106:4

**zensky's**(1) 105:9
**zuckerman**(10) 2:24  5:23  21:6  21:12
22:10  22:14  22:17  22:20  26:24  27:9

**zuckerman's**(1) 21:8
**"are**(1) 42:11
**"did**(1) 53:5
**"herein**(1) 72:23
**"i'm**(1) 73:5
**"let**(1) 42:10
**"regarding**(1) 62:2
**"self-initiated**(2) 53:3  79:17
**"the**(1) 81:2
**"third**(1) 81:10
**"yes**(1) 42:14
**"your**(1) 43:15