## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: August 7, 2012 at 4:00 p.m.<br>Hearing Date: *Only if Objections Are Filed* |

## FOURTEENTH QUARTERLY FEE APPLICATION OF McDERMOTT WILL & EMERY LLP, AS SPECIAL COUNSEL TO DEBTORS FOR DOMESTIC LEGAL MATTERS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 1, 2012 THROUGH MAY 31, 2012

| | |
|---|---|
| **Name of applicant:** | McDermott Will & Emery LLP |
| **Authorized to provide professional services to:** | Tribune Company, et al. |
| **Date of retention:** | March 13, 2009 nunc pro tunc to December 8, 2008 |
| **Period for which compensation and reimbursement is sought:** | March 1, 2012 to May 31, 2012 |
| **Amount of compensation sought as actual, reasonable and necessary:** | $1,083,788.90[1] (80% of which is $867,031.12) |
| **Amount of expense reimbursement sought as actual, reasonable and necessary:** | $40,068.00 |

This is an: __ monthly      X   interim      ___ final application

Prior Interim Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 4/15/09[2] | 1029 | 12/8/08 –[3] | $530,504.50 | $6,808.20 | $416,077.00 | $1,489.70 |

---

[1] McDermott Will & Emery LLP ("McDermott") actually incurred fees in the amount of $1,112,404.00. The amount requested reflects a voluntary reduction by McDermott of $28,615.10, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the March 2012 monthly fee application.

| | | 2/28/09 | | | | |
|---|---|---|---|---|---|---|
| 10/9/09 | 2313 | 3/1/09 – 5/31/09 | $839,465.00 | $3,883.93 | $838,826.50 | $3,631.33 |
| 12/11/09 | 2820 | 6/1/09 – 8/31/09 | $365,485.00 | $1,312.70 | $352,935.92 | $1,254.30 |
| 6/11/09 | 4761 | 9/1/09 – 11/30/09 | $362,715.50 | $2,425.85[4] | $361,032.75 | $2,423.55 |
| 6/30/10 | 4907 | 12/1/09 – 2/28/10 | $819,588.00 | $1,776.95[5] | $817,040.50 | $1,776.95 |
| 9/3/10 | 5622 | 3/1/10 – 5/31/10 | $439,490.50 | $1,892.73 | $437,539.50 | $1,892.73 |
| 10/27/10 | 6151 | 6/1/10 – 8/31/10 | $716,188.50 | $4,885.44 | $714,380.25 | $4,858.14 |
| 2/7/11 | 7819 | 9/1/10 – 11/30/10 | $1,153,555.00 | $13,621.43 | $1,151,028.75 | $13,388.29 |
| 6/20/11 | 9285 | 12/1/10 – 2/28/11 | $1,560,114.00 | $17,757.01 | $1,554,802.25 | $17,757.01 |
| 7/15/11 | 9471 | 3/1/11 – 5/31/11 | $1,987,295.50 | $89,002.31 | $1,974,863.50 | $88,925.24 |
| 11/8/11 | 10182 | 6/1/11 – 8/31/11 | $1,932,538.50 | $20,555.38 | $[_____] | $[_____] |
| 2/2/12 | 10828 | 9/1/11 – 11/30/11 | $1,180,492.00 | $33,817.74 | $[_____] | $[_____] |
| 6/1/12 | 11743 | 12/1/11 – 2/29/12 | $1,664,211.60[6] | $34,809.70 | $[_____] | $[_____] |

---

[2] The Combined Monthly and First Quarterly Application combined McDermott's monthly fee statements and quarterly fee application for the period of December 8, 2008 through February 28, 2009.

[3] By agreement with the above-captioned debtors and debtors in possession (the "Debtors"), McDermott reduced its compensation sought by $110,867.50 due to an inadvertent overpayment by the Debtors. Such reduction was to respond to the United States Trustee's (the "U.S. Trustee") comments regarding McDermott's Combined Monthly and First Quarterly Application. The U.S. Trustee and McDermott (together, the "Parties") agreed that McDermott would not seek payment of the disputed fees, in the amount of $110,867.50 (the "Disputed Fees"), at that time. The Parties agreed, however, that McDermott reserved its right to seek payment of the Disputed Fees at a later time.

[4] Due to an inadvertent expense submission in the Second Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period March 1, 2009 Through May 31, 2009, McDermott reduced the amount of expense reimbursement sought in its October fee application by $250.00. Thus, McDermott actually sought reimbursement of expenses in the amount of $2,175.85 ($2,425.85-250.00).

[5] Due to an inadvertent expense submission in the Third Quarterly Fee Application Of McDermott, As Special Counsel To Debtors For Domestic Legal Matters, For Allowance Of Compensation And Reimbursement Of Expenses For The Period June 1, 2009 Through August 31, 2009, McDermott reduced the amount of expense reimbursement sought in its December fee application by $58.40. Thus, McDermott actually sought reimbursement of expenses in the amount of $1,718.55 ($1,776.95-$58.40).

[6] McDermott actually incurred fees in the amount of $1,853,866.50. The amount requested reflects a voluntary reduction by McDermott of $189,654.90, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the January 2012 and February 2012 monthly fee applications.

46429/0001-8701950V1

## COMPENSATION FOR PROFESSIONALS
## MARCH 1, 2012 THROUGH MAY 31, 2012

| Name of Professional Person | Position of the Applicant, Area of Expertise, Year of Obtaining License to Practice | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Blake D. Rubin | Partner, Tax, Member of Pennsylvania Bar since 1980, Member of District of Columbia Bar since 1987 | $995 | 262.3 | $260,988.50 |
| Gary Karch | Partner, Tax, Member of Illinois Bar since 1980 | $935 | 2.0 | $1,870.00 |
| Jean Pawlow | Partner, Tax, Member of California Bar since 1989, Member of District of Columbia Bar since 1989 | $915 | 4.7 | $4,300.50 |
| Robin Greenhouse | Partner, Tax, Member of District of Columbia Bar since 1988 | $900 | 53.0 | $47,700.00 |
| Andrea M. Whiteway | Partner, Tax, Member of Maryland Bar since 1992, Member of District of Columbia Bar since 1993 | $885 | 231.7 | $205,054.50 |
| Eugene Goldman | Partner, White Collar & Securities Defense, Member of District of Columbia Bar since 1977 | $880 | 10.1 | $8,888.00 |
| Robert A. Schreck, Jr. | Partner, Corporate, Member of Illinois Bar since 1978 | $850 | 0.3 | $255.00 |
| Brooks B. Gruemmer | Partner, Corporate, Member of Illinois Bar since 1990 | $840 | 35.1 | $29,484.00 |
| Matthew White | Partner, Tax, Member of Tennessee Bar since 1990, Member of District of Columbia Bar since 2001 | $835 | 1.0 | $835.00 |
| Paul J. Compernolle | Partner, Employee Benefits, Member of Illinois Bar since 1978 | $820 | 68.1 | $55,842.00 |
| William W. Merten | Partner, Employee Benefits, Member of Illinois Bar since 1985 | $820 | 2.7 | $2,214.00 |
| Susan Peters | Partner, Employee Benefits, Member of Illinois Bar since | $820 | 0.5 | $410.00 |

3

| Schaefer | 1989 | | | |
|---|---|---|---|---|
| Thomas P. Ward | Partner, Tax, Member of Illinois Bar since 1996 | $810 | 1.0 | $810.00 |
| Michael J. Wilder | Partner, Tax, Member of District of Columbia Bar since 1995 | $780 | 31.6 | $24,648.00 |
| Jon G. Finkelstein | Partner, Tax, Member of New York Bar since 2001, Member of District of Columbia Bar since 2002 | $765 | 127.9 | $97,843.50 |
| Linda Doyle | Partner, Trial, Member of Illinois Bar since 1999, Member of Pennsylvania Bar since 1993 | $750 | 1.0 | $750.00 |
| Amy M. Gordon | Partner, Employee Benefits, Member of New Jersey Bar since 1991, Member of New York Bar since 1993, Member of Illinois Bar since 2001 | $725 | 34.2 | $24,795.00 |
| Heidi Steele | Partner, Corporate Advisory, Member of Illinois Bar since 1992 | $695 | 3.4 | $2,363.00 |
| Maureen O'Brien | Counsel, Employee Benefits, Member of Illinois Bar since 1998 | $665 | 6.5 | $4,322.50 |
| Jean Pechette | Partner, Health Industry Advisory, Member of Illinois Bar since 1981 | $665 | 1.8 | $1,197.00 |
| Ira B. Mirsky | Partner, Employee Benefits, Member of District of Colombia Bar since 2010, Member of New Jersey Bar since 1995 | $645 | 2.3 | $1,483.50 |
| Nava Hazan | Partner, Restructuring & Insolvency, Member of New York Bar since 2000 | $645 | 16.9 | $10,900.50 |
| Ryan D. Harris | Partner, Corporate, Member of Illinois Bar since 2002 | $640 | 44.7 | $28,608.00 |
| Michael T. Graham | Partner, Employee Benefits, Member of Illinois Bar since 1995, Member of Indiana Bar since 1995 | $640 | 9.0 | $5,760.00 |
| Jonathan Boyles | Partner, Employee Benefits, | $620 | 0.9 | $558.00 |

4

| | | | | |
|---|---|---|---|---|
| | Member of New York Bar since 2001, Member of District of Columbia Bar since 2002 | | | |
| Jennifer Mikulina | Partner, Intellectual Property, Member of Illinois Bar since 2001 | $620 | 5.6 | $3,472.00 |
| Christopher Lin | Partner, Corporate, Member of Illinois Bar since 2002 | $595 | 46.7 | $27,786.50 |
| Jeffrey M. Holdvogt | Partner, Employee Benefits, Member of Illinois Bar since 2003 | $580 | 0.2 | $116.00 |
| Andrew T. Turney | Partner, Corporate, Member of California Bar since 2003 | $560 | 0.8 | $448.00 |
| Patrick J. McCurry | Associate, Tax, Member of Illinois Bar since 2007 | $500 | 22.7 | $11,350.00 |
| David R. Neville | Associate, Corporate, Member of Illinois Bar since 2005 | $500 | 3.5 | $1,750.00 |
| Brett Johnson | Partner, Employee Benefits, Member of Illinois Bar since 2004 | $500 | 0.8 | $400.00 |
| Gale E. Chan | Associate, Tax, Member of California Bar since 2007, Member of District of Columbia Bar since 2008 | $500 | 77.3 | $38,650.00 |
| Andrew Blair-Stanek | Associate, Tax, Member of District of Columbia Bar since 2009 | $435 | 97.8 | $42,543.00 |
| Gregory A. Kopacz | Associate, Restructuring & Insolvency, Member of New York Bar since 2010 | $435 | 107.0 | $46,545.00 |
| Brian J. Tiemann | Associate, Employee Benefits, Member of Illinois Bar since 2009 | $435 | 4.1 | $1,783.50 |
| Cole Parker | Associate, Corporate, Member of Illinois Bar since 2010 | $365 | 130.3 | $47,559.50 |
| Beverly Schafman | Corporate Professional | $375 | 1.0 | $375.00 |
| Martha Louks | Technology Project Manager | $280-375 | 2.7 | $794.00 |
| David Skowron | Manager, Litigation Technology | $345 | 1.5 | $517.50 |
| Ann Kladis | Corporate Paralegal | $265 | 16.8 | $4,452.00 |

5

| | | | | |
|---|---|---|---|---|
| Shawn Alexander | Corporate Paralegal | $265 | 3.5 | $927.50 |
| Tracy Smith | Litigation Paralegal | $250 | 10.0 | $2,500.00 |
| Nicole LeBeau | Staff Attorney, Litigation, Member of Illinois Bar since 2005 | $245 | 68.6 | $16,807.00 |
| Quinton McElhaney | Staff Attorney, Litigation | $245 | 40.7 | $9,971.50 |
| Brant Newgard | Senior Staff Attorney, Litigation | $245 | 86.4 | $21,168.00 |
| Niraj A. Patel | Staff Attorney, Litigation | $245 | 3.5 | $857.50 |
| Carolyn Andrepont | Staff Attorney, Litigation | $100 | 12.7 | $1,270.00 |
| Yoaldena Canela | Staff Attorney, Litigation | $100 | 12.8 | $1,280.00 |
| LaKeith Hoskin | Staff Attorney, Litigation | $100 | 13.7 | $1,370.00 |
| Adolphus Jones | Staff Attorney, Litigation | $100 | 11.4 | $1,140.00 |
| Garth Lewis | Staff Attorney, Litigation | $100 | 11.8 | $1,180.00 |
| Roger Teuber | Staff Attorney, Litigation | $100 | 12.2 | $1,220.00 |
| Dolores Whiters | Staff Attorney, Litigation | $100 | 14.9 | $1,490.00 |
| Louis Wierenga | Staff Attorney, Litigation | $100 | 8.0 | $800.00 |
| Grand Total: | | | 1,781.7 | $1,083,788.90[7] |
| Blended Rate: | | $608.29 | | |

---

[7] McDermott actually incurred fees in the amount of $1,112,404.00. The amount requested reflects a voluntary reduction by McDermott of $28,615.10, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the March 2012 monthly fee application.

46429/0001-8701950V1

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| All Direct Mail Services, Inc. | 0.8 | $448.00 |
| Block Shopper/Journatic | 223.0 | $109,352.50 |
| Cast TV | 4.2 | $1,698.00 |
| Chapter 11 Restructuring | 754.3 | $541,312.50 |
| Corporate/Credit Agreement/PHONES | 15.4 | $7,664.00 |
| Cubs Post Closing Matters | 14.6 | $11,465.50 |
| Employee Benefits Committee/Noteholder | 71.4 | $55,375.50 |
| ESOP | 14.4 | $11,298.00 |
| General Employee Benefits | 4.0 | $1,337.50 |
| Newsday | 128.8 | $36,662.50 |
| Perfect Market, Inc. | 20.6 | $12,305.00 |
| Project Valencia | 82.8 | $58,040.50 |
| Welfare Plans | 34.2 | $24,795.00 |
| 2009 Audit | 413.2 | $212,034.40[8] |
| **TOTAL:** | 1,781.7 | $1,083,788.90[9] |

---

[8] McDermott actually incurred fees in the amount of $240,649.50 with respect to this matter. The amount requested reflects a voluntary reduction by McDermott of $28,615.10, representing a twenty percent (20%) discount with respect to the fees associated with this matter for the March 2012 monthly fee application.

[9] McDermott actually incurred fees in the amount of $1,112,404.00. The amount requested reflects a voluntary reduction by McDermott of $28,615.10, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the March 2012 monthly fee application.

46429/0001-8701950V1

## EXPENSE SUMMARY

| Expense Category | Service Provider | Total Fees |
|---|---|---|
| Administrative Support | In-House | $100.00 |
| Computer Hosting Fee for Document Review | In-House | $31,677.70 |
| Computer Research | PACER | $38.32 |
| Document Services | @Legal Discovery LLC, Landmark Legal Solutions | $4,790.36 |
| Express Mail | Federal Express | $510.53 |
| Facsimile | -- | $3.00 |
| Filing/Registration Fees | -- | $100.00 |
| Messenger/Courier | U.S. Messenger & Logistics Inc. / Nationwide Legal Express LLC | $124.79 |
| Photocopy | In-House/Williams Lea Inc. | $589.80 |
| Postage | United States Postal Service | $6.80 |
| Telecommunications | Conference Plus | $355.64 |
| Travel Expenses | -- | $1,771.66 |
| **TOTAL** | | $40,068.00 |

46429/0001-8701950V1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Objections Due: August 7, 2012 at 4:00 p.m. |
| | Hearing Date: *Only if Objections Are Filed* |

**FOURTEENTH QUARTERLY FEE APPLICATION OF
McDERMOTT WILL & EMERY LLP, AS SPECIAL COUNSEL TO
DEBTORS FOR DOMESTIC LEGAL MATTERS, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
THE PERIOD MARCH 1, 2012 THROUGH MAY 31, 2012**

McDermott Will & Emery LLP ("McDermott"), as Special Counsel for Domestic Legal

Matters to the Tribune Company, et al. (the "Debtors"), hereby submits this fourteenth quarterly

application (the "Fourteenth Quarterly Application") for approval and allowance of

compensation for services rendered in the amount of $1,083,788.90 (80% of which is

$867,031.12) and reimbursement for expenses incurred in the amount of $40,068.00 during the

period commencing March 1, 2012 through May 31, 2012 (the "Fourteenth Quarterly

Application Period").  This Fourteenth Quarterly Application is submitted pursuant to sections

330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local

Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the

"Compensation Order"), the Executive Office of United States Trustees' Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 dated January 30, 1996 (the "Guidelines"), and the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications dated March 19, 2009 (the "Fee Examiner Order").  In support of this Fourteenth Quarterly Application, McDermott respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Fourteenth Quarterly Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 330, and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  On December 10, 2008, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.      On October 12, 2009, Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, Inc. (the "Cubs" and one of the Debtors) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  On October 14, 2009, the Court entered an order consolidating the Cubs' chapter 11 case with the Debtors' chapter 11 cases for procedural purposes only.

46429/0001-8701950V1

5.     The Debtors have continued in possession of their respective properties and have continued in the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.     No trustee has been appointed in these chapter 11 cases.

## McDERMOTT RETENTION

7.     Prior to the Petition Date, the Debtors retained McDermott as general legal counsel and agreed to pay on a monthly basis the reasonable value of services rendered based on McDermott's standard billing rates and pursuant to its standard reimbursement policies.

8.     On March 13, 2009, the Court authorized the employment and retention of McDermott pursuant to sections 105(a) and 327(a) as special counsel to the Debtors for general domestic legal matters, nunc pro tunc to December 8, 2008.

9.     On October 14, 2009, the Court entered an Order Directing (I) Joint Administration of Chapter 11 Cases and (II) That Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. Be Made Applicable to Chapter 11 Case of Chicago National League Ball Club, LLC (the "CNLBC Order") [Docket No. 2333]. Pursuant to the CNLBC Order, McDermott's retention was extended to include the Cubs case.

## PROCEDURAL BACKGROUND

10.     The Compensation Order and the Fee Examiner Order (collectively, the "Fee Orders") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code must file with the Court and provide to the fee examiner their monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice

3

Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline").    Upon expiration of the Objection Deadline, the professional must certify in writing to the Debtors that no objection or a partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection.

11.    Pursuant to the procedures set forth in the Fee Orders, McDermott prepared, filed with the Court, and served upon the Notice Parties and the fee examiner Monthly Fee Applications for the months of March 2012, April 2012, and May 2012,[1] which Monthly Fee Applications are incorporated herein by reference and addressed in this Fourteenth Quarterly Application.

12.    In addition, beginning with the three-month period ending on February 28, 2009, and for each three-month period thereafter, all professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (each a "Quarterly Fee Application Request").    Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules.    As noted, this Fourteenth Quarterly Application represents the fourteenth Quarterly Fee Application Request that

---

[1] The docket numbers for McDermott's Monthly Fee Applications for March 2012, April 2012, and May 2012 are 11894, 11912 and 11979, respectively.

4

McDermott has filed with the Court in connection with these chapter 11 cases, and it covers the period from March 1, 2012 through May 31, 2012.

## RELIEF REQUESTED

13.     By this Fourteenth Quarterly Application, McDermott requests that the Court allow the interim allowance and award compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by McDermott as special legal counsel to the Debtors during the Fourteenth Quarterly Application Period.  Further, McDermott seeks this Court's allowance for payment of such amounts to McDermott, less any amounts previously paid to McDermott pursuant to the Monthly Fee Applications for the Fourteenth Quarterly Application Period.

14.     During   the   Fourteenth   Quarterly   Application   Period,   attorneys   and paraprofessionals of McDermott have expended a total of 1,781.7 hours in connection with these chapter 11 cases.  The amount requested as compensation for services rendered by McDermott to the Debtors during the Application Period is $1,083,788.90.[2]  To the best of McDermott's knowledge, this Fourteenth Quarterly Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and the Compensation Order.

## COMPENSATION PAID AND ITS SOURCES

15.     All services for which compensation is requested by McDermott were performed for or on behalf of the Debtors.

---

[2] McDermott actually incurred fees in the amount of $1,112,404.00.  The amount requested reflects a voluntary reduction by McDermott of $28,615.10, representing a twenty percent (20%) discount with respect to the fees associated with the matter 2009 Audit for the March 2012 monthly fee application.

16.    In compliance with Rule 2016, McDermott confirms that during the Fourteenth Quarterly Application Period, McDermott received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Fourteenth Quarterly Application, except from the Debtors.  There is no agreement or understanding between McDermott and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

17.    As of the Petition Date, McDermott held a retainer from the Debtors in the amount of $67,777.26.  The Debtors reduced their first payment to McDermott by the amount of the retainer and McDermott drew down on the retainer in connection with the payment pursuant to the Combined Monthly and First Quarterly Application.  Accordingly, McDermott no longer holds any retainer in connection with its retention in these cases.

## SUMMARY OF SERVICES

18.    The following is a summary of the activities performed by McDermott attorneys and paraprofessionals during the Fourteenth Quarterly Application Period, organized by project category.

### Matter 0520 – All Direct Mail Services, Inc.

19.    McDermott provided general corporate advice to the Debtors with respect to a potential asset sale transaction and advised the Debtors regarding certain workers' compensation issues related thereto.

### Matter 0535 – Block Shopper/Journatic

20.    McDermott provided tax and corporate advice to the Debtors with respect to a proposed transaction and drafted and analyzed numerous documents in connection therewith, including: an offering memorandum, an LLC agreement, a software service and assignment

6

agreement, a non-compete agreement, an operating agreement, license agreements, a unit purchase agreement, promissory notes, disclosure documents, an employee equity plan, a Form D to be filed with the Securities and Exchange Commission, various closing documents, a board resolution relating to the transaction and other ancillary documents.   McDermott further advised the Debtors with respect to various UCC, litigation and levy issues relating to the transaction.

### Matter 0524 – Cast TV

21.    McDermott provided corporate advice to the Debtors regarding a letter of instruction relating to certain payments in connection with a stock transaction.

### Matter 0515 – Chapter 11 Restructuring/Tax Planning

22.    McDermott provided general tax advice to the Debtors regarding numerous issues related to the Debtors' emergence from bankruptcy, including preparing an emergence work plan memorandum, a claims transfer memorandum, and a memorandum regarding certain valuation issues.  McDermott further advised the Debtors with respect to various litigation trust tax issues and tax issues in connection with a global settlement agreement.  McDermott also advised the Debtors with respect to a United States Department of Justice consent order relating to certain tax issues.  McDermott further advised the Debtors regarding the tax implications of entering into certain potential post-emergence transactions.  Finally, McDermott advised the Debtors in connection with a complaint relating to certain recharacterization issues.

### Matter 0515 – Chapter 11 Retention/Fee Application

23.    McDermott gathered and prepared various billing information required to file fee statements pursuant to the Compensation Order and the Guidelines.  McDermott also drafted and revised fee statements for submission in accordance with the Compensation Order.  In addition,

46429/0001-8701950V1

McDermott prepared a response to the fee examiner's preliminary reports regarding McDermott's ninth and tenth quarterly fee applications.

### Matter 0504 – Corporate/Credit Agreement/PHONES

24.    McDermott analyzed and revised a warrant and a confidentiality agreement and advised the Debtors with respect to certain corporate matters.

### Matter 0021 – Cubs Post Closing Matters

25.    McDermott completed general post-closing work relating to the partnership transaction involving the Chicago Cubs baseball team.  McDermott also advised the Debtors with respect to certain proposed agreements, including a management services agreement, an LLC agreement, a credit agreement, a television rights agreement, a building consent agreement and insurance endorsements relating thereto.

### Matter 0537 – Employee Benefits Committee/Noteholder

26.    McDermott advised the Debtors with respect to potential claw-back litigation involving certain creditors of the Debtors and analyzed various issues in connection therewith. McDermott also assisted the Debtors in selecting counsel with respect to such litigation. McDermott further advised the Debtors with respect to various issues relating to fiduciary duties and, in connection therewith, analyzed a defense agreement and the coverage provided by certain insurance policies.    Finally, McDermott assisted the Debtors by drafting and analyzing resolutions and provisions indemnifying certain parties.

### Matter 0047 – ESOP

27.    McDermott provided general legal advice on issues regarding the Debtors' ESOP and analyzed issues relating to loan forgiveness and certain settlement proceeds.

46429/0001-8701950V1

**Matter 0040 – General Employees Benefits Matters**

28.    McDermott provided general legal advice to the Debtors with respect to the Debtors' benefit plans.

**Matter 0507 – Newsday**

29.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service in connection with the Debtors' 2008 taxable year, including preparing responses to information document requests by conducting a document review.  McDermott also assisted the Debtors in connection with a possible transaction and analyzed numerous tax issues in connection therewith.

30.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services.  The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information should be withheld on the basis of a privilege.  Upon the attorney reviewers' completion of the document review, the technology project managers in charge of the e-discovery services (i) separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

**Matter 0516 – Perfect Market, Inc.**

31.    McDermott provided corporate and tax advice to the Debtors with respect to the Perfect Market transaction and drafted and/or analyzed numerous documents in connection therewith, including a profits interest agreement, an award agreement and various LLC

agreements.

### Matter 0534 – Project Valencia

32.    McDermott provided tax and corporate advice to the Debtors with respect to the structure of a proposed confidential transaction and analyzed and revised numerous agreements and other documents in connection therewith.    McDermott also assisted the Debtors in connection with the closing of the transaction.

### Matter 0041 – Welfare Plans

33.    McDermott provided general legal advice regarding programs offered by the Debtors to their employees and advised the Debtors with respect to an administrative services agreement, a business associate agreement, a legal services agreement and a Medical Traditional Preferred Provider Summary Plan Description.

### Matter 0527 – 2009 Audit[3]

34.    McDermott assisted the Debtors in responding to an audit by the Internal Revenue Service and reviewed documents and prepared a privilege and production log in connection therewith.  McDermott also assisted the Debtors in connection with a response to a summons by the Internal Revenue Service.  McDermott further assisted the Debtors by analyzing a statement prepared by the Internal Revenue Service.

35.    In connection with the document review, McDermott provided the Debtors with the use of its e-discovery services.  The e-discovery services include the use of a computer program that allows attorney reviewers on the case to use specific review tools within the program and enables the attorney reviewers to identify which of the collected information is responsive to the Internal Revenue Service's request, and which of the responsive information

---

[3] In connection with the 2009 Audit matter for the March 2012 monthly fee application, McDermott voluntarily reduced the amount of its fees by twenty percent (20%).

46429/0001-8701950V1

should be withheld on the basis of a privilege. Upon the attorney reviewers' completion of the document review, the technology project managers in charge of the e-discovery services (i) separated the responsive, non-privileged documents and exported them into a format that could be produced to the Internal Revenue Service, and (ii) separated the privileged documents so as to assist in the preparation of a privilege log to be produced to the Internal Revenue Service.

### ACTUAL AND NECESSARY EXPENSES

36.     McDermott seeks reimbursement of expenses actually and necessarily incurred in connection with the rendition of its services in the amount of $40,068.00. The requested expenses are customarily charged to non-bankruptcy clients of McDermott. Due to the complexity of the Debtors' corporate and financial structure, the Debtors have faced numerous critical and unique issues. In order for McDermott to analyze and address such issues properly, McDermott attorneys may have performed computerized legal research and incurred other expenses during the Fourteenth Quarterly Application Period, all of which was necessary to further the Debtors' reorganization and in the best interests of the Debtors' estates.

37.     With respect to photocopying expenses, McDermott ordinarily charges all of its clients $.20 per page, but pursuant to Local Rule 2016-2(e), McDermott has charged the Debtors the maximum permitted amount of $.10 per page. With respect to facsimile expenses, in compliance with the Guidelines, McDermott charges $1.00 per page for facsimile transmissions.

38.     In addition, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, certain long distance telephone calls and conference calls may have been required. These charges are intended to cover McDermott's direct operating costs, which costs are not incorporated into the McDermott hourly billing rates. Only clients who actually use services of this type are separately charged for such services.

11

39.    Further, because of the nature of the Debtors' businesses and the location of certain key constituents in these cases, travel may have been required for certain matters. Typically, such travel expenses are initially borne by the attorney, then reimbursed by the firm and charged to the appropriate client and matter.

40.    The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

41.    To the extent that time or disbursement charges for services rendered or disbursements incurred during the Fourteenth Quarterly Application Period, but were not processed prior to the preparation of this Fourteenth Quarterly Application, McDermott reserves its rights to request additional compensation for such services, and reimbursement of such expenses in a future application.

## CONCLUSION

42.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by McDermott is fair and reasonable given (a) the complexity of the legal matters, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under this title.  McDermott has reviewed the requirements of Local Rule 2016-2 and reasonably believes that this Fourteenth Quarterly Application complies with that rule.

46429/0001-8701950V1

WHEREFORE, McDermott respectfully seeks allowance of the amounts set forth in the Fourteenth Quarterly Application for the period of March 1, 2012 through May 31, 2012, specifically the amount of $1,083,788.90 (80% of which is $867,031.12) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $40,068.00, for a total of $1,123,856.90.

Dated: Washington, District of Columbia
July 18, 2012

McDERMOTT WILL & EMERY LLP

/s/ Blake D. Rubin
Blake D. Rubin (admitted *pro hac vice*)
600 13th Street, N.W.
Washington, D.C. 20005-3096
Telephone: (202) 756-8424
Facsimile: (202) 756-8087

and

Gregory A. Kopacz (admitted *pro hac vice*)
340 Madison Avenue
New York, NY 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Special Counsel for Domestic Legal Matters to Tribune Company, et al.*