**ATTACHMENT A**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. ____** |

## ORDER CONFIRMING FOURTH AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON & CO., L.P., <u>AND JPMORGAN CHASE BANK, N.A.</u>

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.   GENERAL PROVISIONS REGARDING CONFIRMATION OF THE DCL PLAN AND APPROVAL OF DCL PLAN SUPPLEMENT. .............................................................................2

    A.   CONFIRMATION OF THE DCL PLAN. ................................................................2
    B.   MODIFICATIONS TO THE DCL PLAN AND THE DCL PLAN SUPPLEMENT. ...............................2
    C.   EFFECTS OF CONFIRMATION. ...........................................................................3
    D.   APPROVAL, MODIFICATION AND EXECUTION OF DCL PLAN AND DCL PLAN SUPPLEMENT. .........................................................................................................3

II.   CLAIMS BAR DATES. ..................................................................................................4

    A.   BAR DATE FOR PROFESSIONAL FEE CLAIMS. ............................................4
    B.   BAR DATE FOR PAYMENT OF CERTAIN OTHER FEE AND EXPENSE CLAIMS. ......................4
    C.   BAR DATE FOR REJECTION DAMAGES CLAIMS. ...........................................5

III.   APPROVAL OF EXECUTORY CONTRACTS AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES. ...............................................................................................6

    A.   GENERAL APPROVAL. ........................................................................................6
    B.   ASSUMED CONTRACTS AND LEASES AND RELATED PROCEDURES. ...........6
    C.   REJECTED CONTRACTS AND LEASES. .............................................................7
    D.   SPECIFIC PROVISION REGARDING PENSION BENEFIT GUARANTY CORPORATION'S CLAIMS. ....................................................................................8

IV.   MATTERS RELATING TO IMPLEMENTATION OF THE DCL PLAN. ...................8

    A.   ACTIONS IN FURTHERANCE OF THE DCL PLAN. ..........................................8
    B.   RESTRUCTURING TRANSACTIONS. ................................................................11
    C.   DIRECTORS AND OFFICERS OF REORGANIZED DEBTORS. .......................13
    D.   COMPENSATION AND BENEFIT PROGRAMS. ...............................................14
    E.   EXIT FACILITY. ...................................................................................................14
    F.   EXEMPTIONS FROM TAXATION. .....................................................................15
    G.   PAID-IN CAPITAL OF CORPORATE REORGANIZED DEBTORS. .................15
    H.   APPROVAL OF AND AUTHORIZATION TO ENTER INTO NEW SENIOR SECURED TERM LOAN AGREEMENT AND RELATED DOCUMENTS. .............................17
    I.   ISSUANCE OF NEW COMMON STOCK AND NEW WARRANTS AND EXEMPTION FROM SECURITIES LAWS. ...............................................................................................19
    J.   RECORD DATE FOR DISTRIBUTIONS. ............................................................20
    K.   DELIVERY OF DOCUMENTS. ............................................................................21
    L.   IMPLEMENTATION OF SETTLEMENTS AUTHORIZED BY DCL PLAN. .....22
    M.   PRESERVATION OF RIGHTS OF ACTION AND SETTLEMENT OF ORDINARY LITIGATION CLAIMS. ..............................................................................................23
    N.   CANCELLATION OF LOAN AGREEMENTS, LOAN GUARANTY AGREEMENTS, THE PLEDGE AGREEMENT, NOTES ISSUED UNDER THE LOAN AGREEMENTS, SENIOR NOTES, DEBENTURES, INSTRUMENTS, INDENTURES, EGI-TRB LLC NOTES, PHONES NOTES, OLD COMMON STOCK AND OTHER TRIBUNE INTERESTS. ...............................23

V.   DISCHARGE, RELEASES, EXCULPATION AND INJUNCTIONS. ..........................27

    A.   DISCHARGE AND DISCHARGE INJUNCTION. ..............................................27
    B.   RELEASES AND INJUNCTIONS RELATED TO RELEASES. ..........................30
    C.   BAR ORDER. .........................................................................................................30
    D.   EXCULPATION .....................................................................................................33

VI.   LITIGATION TRUST. ...............................................................................................34

    A.   GENERAL APPROVAL. ......................................................................................34

B.    ESTABLISHMENT OF LITIGATION TRUST.................................................34
C.    VESTING OF LITIGATION TRUST ASSETS IN THE LITIGATION TRUST...................34
D.    APPOINTMENT OF LITIGATION TRUSTEE AND LITIGATION TRUST ADVISORY BOARD.35

VII.    INITIAL FUNDING OF LITIGATION TRUST .............................................**35**

VIII.    OBJECTIONS TO CONFIRMATION. .........................................................**36**

A.    OBJECTIONS RESOLVED OR OVERRULED.................................................36
B.    SPECIFIC CONFIRMATION ORDER PROVISIONS TO RESOLVE OBJECTIONS.............36

IX.    RETENTION OF JURISDICTION BY THIS COURT AND MISCELLANEOUS MATTERS. .......**42**

A.    RETENTION OF EXCLUSIVE JURISDICTION BY THIS COURT............................42
B.    REFERENCE TO AND VALIDITY AND ENFORCEABILITY OF DCL PLAN PROVISIONS.....43
C.    INJUNCTIONS AND STAYS REMAIN IN EFFECT UNTIL THE EFFECTIVE DATE...........43
D.    PRIOR SEAL ORDERS.........................................................................43

X.    NOTICE OF ENTRY OF CONFIRMATION ORDER. .....................................**43**

A.    CONFIRMATION NOTICE. ...................................................................43

XI.    NO JUST CAUSE FOR DELAY. ...........................................................**44**

ATTACHMENT A

**INTRODUCTION**

The debtors and debtors in possession identified in footnote 1 of this

Confirmation Order (collectively, the "Debtors" and, as reorganized entities after emergence, the

"Reorganized Debtors"), together with the Official Committee of Unsecured Creditors (the

"Creditors' Committee"), certain investment funds and accounts managed by Oaktree Capital

Management, L.P. and/or its Affiliates ("Oaktree") and Angelo, Gordon & Co., L.P. and/or

certain of its Affiliates ("Angelo Gordon"), each of which is a Holder, or is a general partner or

manager of an entity that is a Holder, of Senior Loan Claims, and JPMorgan Chase Bank, N.A.

and certain of its Affiliates, as the Senior Loan Agent and as Holders of Senior Loan Claims

("JPMorgan", and collectively with the Debtors, the Creditors' Committee, Oaktree, and Angelo

Gordon, the "DCL Plan Proponents") have proposed the Fourth Amended Joint Plan of

Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official

Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co.,

L.P., and JPMorgan Chase Bank, N.A. (as may be further modified hereafter in accordance with

the terms thereof, the "DCL Plan").[2]  As a result of the proposal of the DCL Plan, and a

Confirmation Hearing having been held on June 7, 8 and 11, 2012, at which all objections to

confirmation of the DCL Plan were considered, and this Court having entered certain findings of

fact and conclusions of law in the Opinion on Confirmation [D.I. 10133], Memorandum on

Reconsideration [D.I. 10531], Memorandum Regarding Allocation Disputes [D.I. 11337], and

Memorandum Overruling Objections to Confirmation of the Fourth Amended Plan of

Reorganization for Tribune Company and its Subsidiaries and Denying Clarification Motion

[D.I. 12033] (collectively, the "Findings of Fact and Conclusions of Law") respecting

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
terms in the DCL Plan.

confirmation of the DCL Plan, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

THAT:

## I.    GENERAL PROVISIONS REGARDING CONFIRMATION OF THE DCL PLAN AND APPROVAL OF DCL PLAN SUPPLEMENT.

### A.    CONFIRMATION OF THE DCL PLAN.

The DCL Plan and each of its provisions (whether or not specifically approved

herein), including the DCL Plan Supplement, the modifications reflected in the DCL Plan and

the DCL Plan Supplement filed by the DCL Plan Proponents on or about July 19, 2012 (the

"Modifications"), and all documents and agreements related thereto (including all Exhibits and

attachments thereto and documents referenced therein), substantially in the form filed as of the

time of the entry of this Confirmation Order, are hereby APPROVED AND CONFIRMED in

each and every respect, pursuant to section 1129 of the Bankruptcy Code, provided that the terms

of the Trust Loan Agreement, the Litigation Trust Agreement, the Debtors' Transfer Agreement

(as hereafter defined), and the Creditors' Committee's Transfer Agreement (as hereafter defined)

are in final form as filed as of the time of entry of this Confirmation Order, but may be modified

to complete the bracketed information in such agreements.  The terms of the DCL Plan, the DCL

Plan Supplement, and the Exhibits and schedules attached thereto are incorporated by reference

into, and are an integral part of, this Confirmation Order.  Notwithstanding the foregoing, if there

is any direct conflict or inconsistency between the terms of the DCL Plan, the DCL Plan

Supplement, or any Exhibit or schedule attached thereto, and the terms of this Confirmation

Order, the terms of this Confirmation Order shall control.

### B.    MODIFICATIONS TO THE DCL PLAN AND THE DCL PLAN SUPPLEMENT.

The Modifications are deemed to be technical changes or clarifications that do not

materially and adversely change the treatment of the Claim of any creditor or the Equity Interest

of any interest holder of the Debtors.  Therefore, the DCL Plan and the DCL Plan Supplement, as modified by the Modifications, shall be deemed accepted by all holders of Claims and Equity Interests who previously accepted the DCL Plan.

### C.    EFFECTS OF CONFIRMATION.

In accordance with section 1141(a) of the Bankruptcy Code, and notwithstanding any otherwise applicable law, immediately upon the satisfaction and/or waiver (as applicable) of each of the conditions set forth in Section 10.1 of the DCL Plan, the terms of the DCL Plan and this Confirmation Order shall be binding upon all Persons, including the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the DCL Plan or whether the Holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the DCL Plan), any and all non-debtor parties to executory contracts and unexpired leases with any of the Debtors, and any and all Persons who are parties to or are subject to the settlements, compromises, releases, waivers, discharges and injunctions described herein or in the Findings of Fact and Conclusions of Law or in the DCL Plan, and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

### D.    APPROVAL, MODIFICATION AND EXECUTION OF DCL PLAN AND DCL PLAN SUPPLEMENT.

All relevant parties, including the Debtors and the other DCL Plan Proponents, shall be authorized, without further action by this Court, to enter into and effectuate, to the extent applicable, and perform under the DCL Plan and DCL Plan Supplement, and such authorizations shall exist even though the effectiveness of such documents may be subject to the occurrence of

the Effective Date or some other date as contemplated by and under the DCL Plan or

Restructuring Transactions.

The DCL Plan Proponents are hereby authorized and empowered to amend or

modify the DCL Plan and/or any document included as a part of the DCL Plan Supplement or

otherwise contemplated by the DCL Plan at any time prior to the substantial consummation of

the DCL Plan in any manner that is consistent with section 1127 of the Bankruptcy Code and the

DCL Plan, including Section 15.8 of the DCL Plan.

**II.    CLAIMS BAR DATES.**

**A.    BAR DATE FOR PROFESSIONAL FEE CLAIMS.**

The procedures for processing final requests for compensation or reimbursement

of (a) the fees and expenses of any professional employed pursuant to sections 327 or 1103 of

the Bankruptcy Code or otherwise in the Chapter 11 Cases and (b) any Claims for making a

substantial contribution under section 503(b)(4) of the Bankruptcy Code ((a) and (b) together, the

"Final Fee Claims") and the deadlines and other requirements applicable to Final Fee Claims set

forth in Section 9.2 of the DCL Plan are hereby approved.

Except as provided in Section 9.1 of the DCL Plan and this Confirmation Order, if

a professional or other Entity does not submit a request for payment of a Final Fee Claim in

accordance with Section 9.2 of the DCL Plan, such professional or Entity shall be forever barred

from seeking payment of such Final Fee Claim from any Reorganized Debtor, or any of its

successors or assigns, or out of the property of any of them.

**B.    BAR DATE FOR PAYMENT OF CERTAIN OTHER FEE AND EXPENSE
          CLAIMS.**

1.    **Bar Date for Senior Lender Fee/Expense Claims.**

a.    The procedures for processing Senior Lender Fee/Expense Claims
set forth in Section 9.1.1 of the DCL Plan are hereby approved.

4

b.      If a Creditor Proponent does not submit a request for payment of Senior Lender Fee/Expense Claim in accordance with Section 9.1.1 of the DCL Plan, such Creditor Proponent shall be forever barred from seeking payment of such Senior Lender Fee/Expense Claim from any Reorganized Debtor, or any of its successors or assigns, or out of the property of any of them.

2.      **Bar Date for Bridge Lender Fee/Expense Claims.**

a.      The procedures for processing Bridge Lender Fee/Expense Claims set forth in Section 9.1.2 of the DCL Plan are hereby approved.

b.      If a Bridge DCL Plan Proponent does not submit a request for payment of Bridge Lender Fee/Expense Claim in accordance with Section 9.1.2 of the DCL Plan, such Bridge DCL Plan Proponent shall be forever barred from seeking payment of such Bridge Lender Fee/Expense Claim from any Reorganized Debtor, or any of its successors or assigns, or out of the property of any of them.

3.      **Bar Date for Creditors' Committee Member Fee/Expense Claims.**

a.      The procedures for processing Creditors' Committee Fee/Expense Claims set forth in Section 9.1.3 of the DCL Plan are hereby approved.

b.      If counsel to the Creditors' Committee or a member of the Creditors' Committee does not submit a request for payment of the Creditors' Committee Member Fee/Expense Claim in accordance with Section 9.1.3 of the DCL Plan, such member of the Creditors' Committee shall be forever barred from seeking payment of such Creditors' Committee Member Fee/Expense Claim from any Reorganized Debtor, or any of its successors or assigns, or out of the property of any of them.

C.      **BAR DATE FOR REJECTION DAMAGES CLAIMS.**

If the rejection by a Debtor, pursuant to the DCL Plan, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor, or the properties of any of them, unless a Proof of Claim is filed and served upon counsel to the Debtors within thirty (30) days after service of the notice that the executory contract or unexpired lease has been rejected, which notice shall be served no later than five (5) business days after the Effective Date.

5

III.    **APPROVAL OF EXECUTORY CONTRACTS AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.**

A.    **GENERAL APPROVAL.**

The executory contract and unexpired lease provisions of Article VI of the DCL Plan are specifically approved.

B.    **ASSUMED CONTRACTS AND LEASES AND RELATED PROCEDURES.**

Upon the Effective Date, all executory contracts or unexpired leases of the Debtors shall be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, <u>unless</u> such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is an executory contract or unexpired lease that is included in the Global Contract Motion, (iv) is an executory contract or unexpired lease that is expressly excluded from the assumptions set forth in Section 6.5 of the DCL Plan or is set forth on <u>Exhibit 6.3</u> to the DCL Plan, or (v) is an executory contract or unexpired lease that is included in a pending motion to reject such executory contract or unexpired lease.

Each executory contract and unexpired lease assumed pursuant to the DCL Plan shall include any and all modifications, amendments, supplements, restatements and other agreements made directly or indirectly by any agreement, instrument or other document entered by the Debtors that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed thereon.

The executory contracts and unexpired leases (and the rights and obligations thereunder) of each Debtor that shall be transferred to, assumed by and/or vest in or continue to vest in (whether by operation of law, agreement or otherwise) a Reorganized Debtor pursuant to any of the Restructuring Transactions in accordance with Section 5.2 of the DCL Plan, and as set

forth in <u>Exhibit 5.2</u> of the DCL Plan, as amended, shall be assumed by, and shall vest in, or continue to vest in, the applicable Reorganized Debtor in accordance with the Bankruptcy Code, the terms of the DCL Plan and the DCL Plan Supplement as of the Effective Date.  As of the effective time of an applicable Restructuring Transaction, any executory contract or unexpired lease held by a Debtor, shall be deemed assigned and transferred to, and shall remain in full force and effect for the benefit of, the applicable surviving Reorganized Debtor pursuant to sections 105, 365 and 1123 of the Bankruptcy Code, notwithstanding any provision in such contract or lease (including those described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that purports to restrict, prohibit or otherwise require any third-party consent for any such assignment or transfer, or that purports to enable or require the termination of any such contract or lease.

All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by such Debtors to the Reorganized Debtors, including any successor to any Debtor or Reorganized Debtor after giving effect to the Restructuring Transactions, on the Effective Date.

Except as otherwise provided in the DCL Plan or that certain Order Establishing Procedures for (i) Fixing Cure Amounts and (ii) Providing Notice of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases by a Successor Reorganized Debtor Pursuant to Sections 365, 1123, and 1129 of the Bankruptcy Code [D.I. 8745], the proposed cure amount for any executory contract or unexpired lease that is assumed pursuant to the DCL Plan shall be zero dollars.

C.    **REJECTED CONTRACTS AND LEASES.**

On the Effective Date, each executory contract and unexpired lease that is listed on <u>Exhibit 6.3</u> to the DCL Plan shall be rejected pursuant to section 365 of the Bankruptcy Code. Each contract or lease listed on <u>Exhibit 6.3</u> to the DCL Plan shall be rejected only to the extent

such contract or lease constitutes an executory contract or unexpired lease.  Any Claims for

damages relating to the rejection of any executory contracts or unexpired leases under the DCL

Plan shall be subject to the provisions of Part II.C of this Confirmation Order and Section 6.4 of

the DCL Plan.

### D.    SPECIFIC PROVISION REGARDING PENSION BENEFIT GUARANTY CORPORATION'S CLAIMS.

On the Effective Date, the Reorganized Debtors shall assume the Employee

Benefit Plans as provided in Section 6.5 of the DCL Plan.  Therefore, upon the occurrence of the

Effective Date, all proofs of claim asserted against any of the Debtors by the Pension Benefit

Guaranty Corporation ("PBGC") (Claim Nos. 4799 through 4816, inclusive, and 6605 through

6620, inclusive, asserted in the aggregate face amount of $1,374,200,000) shall be deemed

withdrawn without the need for further action by any of the Debtors or the PBGC, and the Court-

appointed claims agent shall be authorized to modify the claims register in these cases to remove

such claims from the claims register.  Nothing in the DCL Plan shall be construed as discharging,

releasing, or relieving the Debtors, or their successors, including the Reorganized Debtors, or

any party, in any capacity, from any liability imposed under any law or regulatory provision with

respect to the Employee Benefit Plans assumed by the Debtors pursuant to the DCL Plan.  For

the avoidance of doubt, notwithstanding anything herein to the contrary, PBGC shall continue as

a member of the Creditors' Committee after the Effective Date to the extent provided in Section

15.2 of the DCL Plan.

## IV.    MATTERS RELATING TO IMPLEMENTATION OF THE DCL PLAN.

### A.    ACTIONS IN FURTHERANCE OF THE DCL PLAN.

Pursuant to sections 1123 and 1142 of the Bankruptcy Code, section 303 of the

Delaware General Corporation Law and any similar or other relevant provisions of applicable

state laws governing corporations or other legal entities (collectively, the "Reorganization

Effectuation Statutes"), without further action by this Court or the security holders, members,

managers, or board of directors of any Debtor or Reorganized Debtor, each of the Debtors and

the Reorganized Debtors, as well as the Chief Executive Officer, President, Executive Vice

President, Chief Financial Officer, Chief Operating Officer, Senior Vice President, any Vice

President, Treasurer, any Assistant Treasurer, Secretary, any Assistant Secretary, or any other

appropriate officer of the appropriate Debtor or Reorganized Debtor (collectively, the

"Responsible Officers"), is hereby authorized to: (a) take any and all actions necessary or

appropriate to implement, effectuate and consummate the DCL Plan, the DCL Plan Supplement,

all DCL Plan-related documents, this Confirmation Order and each of the transactions

contemplated thereby or hereby, including, without limitation, each of the Restructuring

Transactions, each of the other transactions identified in Article V of the DCL Plan and each of

the transactions contemplated by or referenced in the DCL Plan Supplement; and (b) enter into,

execute and deliver, assign, adopt, or amend, as the case may be, each of the DCL Plan

Supplement documents or any other documents otherwise referenced in or contemplated by the

DCL Plan, the DCL Plan Supplement, or any of the foregoing documents, in accordance with

their respective terms, including, without limitation, the following documents: (i) the New

Warrant Agreement; (ii) the Certificate of Incorporation of Reorganized Tribune; (iii) the By-

Laws of Reorganized Tribune; (iv) the Registration Rights Agreement; (v) the New Senior

Secured Term Loan Agreement and any and all documents relating thereto; (vi) the Exit Facility

Credit Agreement and any and all documents relating thereto; (vii) the Trust Loan Agreement

and any and all documents relating thereto; (viii) the Litigation Trust Agreement; (ix) the

Agreement Respecting Transfer of Documents, Information and Privileges from Debtors and

Reorganized Debtors attached as Exhibit 5(a) to the Notice of Filing of Amended Plan and

Related Documents dated June 19, 2012 [D.I. 11836] ( the "Debtors' Transfer Agreement"); (x)

each of the contracts, instruments, agreements and documents to be executed and delivered in

connection with the Restructuring Transactions; and (xi) each of the contracts, agreements,

certificates, appointments and documents to be executed and delivered in connection with the

appointment of a transfer agent for the New Common Stock.

        To the extent that, under applicable non-bankruptcy law, any of the actions,

transactions, documents or other matters set forth in this Part IV.A of this Confirmation Order,

would otherwise require the consent or approval of the security holders, directors, members or

managers of any of the Debtors or Reorganized Debtors, or any other consent or approval under

otherwise applicable non-bankruptcy law, this Confirmation Order shall, pursuant to sections

1123(a)(5) and 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes,

constitute such consent or approval, and any such actions, transactions, documents and other

matters shall hereby be deemed to have been taken by unanimous action of the security holders,

directors, members or managers of the appropriate Debtor or Reorganized Debtor without any

requirement of further action or consent by any such security holder, directors, members or

managers of the Debtors or Reorganized Debtors.

        The approvals and authorizations specifically set forth in this Confirmation Order

are non-exclusive and are not intended to limit the authority of any Debtor or Reorganized

Debtor or any officer thereof to take any and all actions necessary or appropriate to implement,

effectuate and consummate the DCL Plan, this Confirmation Order, the DCL Plan Supplement or

the transactions contemplated thereby or hereby, including the Restructuring Transactions.  In

addition to the authority to execute and deliver, adopt or amend, as the case may be, the

contracts, instruments, releases, and other agreements, including, without limitation, the DCL

Plan Supplement documents, specifically granted in this Confirmation Order, each of the Debtors

and the Reorganized Debtors is hereby authorized and empowered, without further action in this

Court or further action or consent by its security holders, directors, members or managers, to take

any and all such actions as any of its Responsible Officers may determine are necessary or

appropriate to implement, effectuate and consummate the DCL Plan, this Confirmation Order,

the DCL Plan Supplement or any of the transactions contemplated thereby or hereby, including

the Restructuring Transactions.

Other than as provided in Section 15.2 of the DCL Plan, the appointment of the

Creditors' Committee shall terminate on the Effective Date.

B.    RESTRUCTURING TRANSACTIONS.

Pursuant to the Reorganization Effectuation Statutes sections 1123 (including,

without limitation, sections 1123(a)(5)(B), (a)(5)(C), and (a)(5)(J)), 1141 and 1142(b) of the

Bankruptcy Code, the Debtors and the Reorganized Debtors, as the case may be, are hereby

authorized: (i) to enter into or undertake any Restructuring Transactions and any other related

transaction or modifications to the Restructuring Transactions that the Reorganized Debtors

believe may be necessary or appropriate to effectuate the purposes of the DCL Plan and the

Restructuring Transactions and (ii) to take any and all steps and other actions as the Debtors or

Reorganized Debtors deem necessary or appropriate to effectuate the Restructuring Transactions

(or related transactions or modifications), contemplated by Section 5.2 of the DCL Plan and

Exhibit 5.2 of the DCL Plan and in accordance with the applicable terms of the DCL Plan and

this Confirmation Order, without any further action in or by this Court or any other court,

tribunal, agency or administrative proceeding, any further action or consent by its security

holders, directors, managers, members, or any other third parties, or any other notice, action,

court order or process of any kind; provided, however, that the consummation of any

Restructuring Transaction prior to the Effective Date shall be subject to the conditions set forth

in Exhibit 5.2 of the DCL Plan, which may be waived by the Debtors and the Creditor

Proponents, and subject to the further conditions set forth in this Confirmation Order.

The Debtors and/or Reorganized Debtors, as the case may be, are hereby

authorized to execute and deliver such contracts, instruments, certificates, agreements and

documents (collectively, the "Restructuring Documents") to make such filings under state law or

applicable law and to take such other actions as any of the Responsible Officers may determine

to be necessary, appropriate or desirable to effect the transactions contemplated by Section 5.2 of

the DCL Plan and Exhibit 5.2.

Each of the Responsible Officers of each Debtor or Reorganized Debtor are

authorized to execute, deliver, file and have recorded any of the Restructuring Documents and to

take such other actions on behalf of such Debtor or Reorganized Debtor as such person may

determine to be required, appropriate or desirable under state law or any other applicable law in

connection with the Restructuring Transactions, and the Responsible Officers of each Debtor or

Reorganized Debtor are authorized to certify or attest to any of the foregoing actions.  The

execution and delivery or filing of any such Restructuring Document or the taking of any such

action shall be deemed conclusive evidence of the authority of such person so to act.

Each federal, state and local governmental agency or department is authorized and

directed to accept the filing of any Restructuring Document.  This Confirmation Order is

declared to be in recordable form and shall be accepted by any filing or recording officer or

authority of any applicable governmental authority or department without any further orders, certificates or other supporting documents.

If any Restructuring Transactions are consummated prior to the Effective Date, (i) all converted Debtors and successors to the Debtors pursuant to any such Restructuring Transaction(s) shall (a) continue to be obligated with respect to any and all Claims against the relevant predecessor Debtor or Debtors, including any Loan Guaranty Claims, to the same extent as the applicable predecessor Debtor or Debtors and (b) be subject to and succeed to any and all applicable DCL Plan provisions respecting the relevant predecessor Debtor or Debtors that would otherwise apply to the relevant predecessor Debtor or Debtors absent the Restructuring Transactions (including the discharge, release and injunction provisions), and (ii) any successor to a Guarantor Debtor or a Guarantor Non-Debtor or converted Guarantor Debtor or Guarantor Non-Debtor pursuant to any such Restructuring Transaction(s) shall be deemed a Guarantor Debtor or Guarantor Non-Debtor, as applicable, and (iii) any transferee of the assets of a Guarantor Debtor or Guarantor Non-Debtor pursuant to any such Restructuring Transaction(s) that is at the time of such transfer not itself a Guarantor Debtor or Guarantor Non-Debtor shall be deemed to be a Guarantor Debtor or Guarantor non-Debtor, as applicable, from and after the consummation of such transfer.

### C.    DIRECTORS AND OFFICERS OF REORGANIZED DEBTORS.

The manner in which the initial members of Reorganized Tribune's board of directors shall be selected, as set forth in Section 5.3.2 of the DCL Plan, as of and immediately following the Effective Date, is hereby approved.  The appointment of the initial officers of Reorganized Tribune, in accordance with Section 5.3.2 of the DCL Plan and as set forth in Exhibit 5.3.2(2), as of and immediately following the Effective Date, is hereby approved.

The appointment of the initial directors and officers of each of the Reorganized Debtors other than Reorganized Tribune, in accordance with Section 5.3.3 of the DCL Plan and as set forth on <u>Exhibit 5.3.3</u> of the DCL Plan, including any amendments to the information set forth in <u>Exhibit 5.3.3</u> to reflect the modified organizational structure of the Reorganized Debtors as a result of the Restructuring Transactions, as of and immediately following the Effective Date, is hereby approved.

### D.    COMPENSATION AND BENEFIT PROGRAMS.

Except to the extent rejected, modified and/or terminated by an order of this Court, pursuant to the DCL Plan or in accordance with their terms on or prior to the Effective Date, the Reorganized Debtors shall continue in accordance with and subject to the limitations set forth in Section 6.5 of the DCL Plan, automatically and without further act, deed or court order, the Employee Benefit Plans maintained by the Reorganized Debtors immediately prior to the Effective Date.

### E.    EXIT FACILITY.

The terms of the Exit Facility are hereby approved.  On the Effective Date, without any requirement of further action by security holders, directors, members or managers of the Debtors or Reorganized Debtors, the Debtors and Reorganized Debtors are authorized, but not directed, to (1) enter into the Exit Facility Credit Agreement, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of the liens securing the Exit Facility, (2) grant such liens and security interests as necessary to provide security for the Exit Facility in accordance with the Exit Facility Credit Agreement and Exit Facility documents, (3) perform all of their obligations under the Exit Facility Credit Agreement and other Exit Facility documents, and (4)

take all such other actions as any of the Responsible Officers of such Reorganized Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the Exit Facility.

       **F.    EXEMPTIONS FROM TAXATION.**

       Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes, debentures or equity securities under the DCL Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest, including, without limitation, any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under the DCL Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, shall not be subject to any stamp tax or other similar tax or government assessment and the appropriate state or local government officials or agents are hereby directed to forgo the collection of any such tax or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

       **G.    PAID-IN CAPITAL OF CORPORATE REORGANIZED DEBTORS.**

       On the Effective Date, after taking into account all of the transactions contemplated by the DCL Plan (including, but not limited to, the cancellation of indebtedness pursuant to Section 5.8 of the DCL Plan), the Paid-in Capital, as such term is defined in section 1.80(j) of the Business Corporation Act of 1983, as amended, 805 ILCS 5/1.01, et seq. (the "BCA"), of each corporate Reorganized Debtor shall, pursuant to Section 9.20(a)(2) of the BCA, be reduced to the following amounts (such reduced amounts to be referred to individually and

collectively as the "Article XIII Paid-in Capital Amount" and "Article XIII Paid-in Capital Amounts," respectively):  (i) in the case of Reorganized Tribune, its Paid-in Capital shall be reduced to the aggregate par value, if any, of Reorganized Tribune's issued shares of capital stock plus such amounts as are recorded on Reorganized Tribune's financial statements as paid-in capital and additional paid-in capital under its fresh start accounting in accordance with Generally Accepted Accounting Principles, and (ii) in the case of each other corporate Reorganized Debtor, its Paid-in Capital shall be reduced to the aggregate par value, if any, of each such other Reorganized Debtor's issued shares of capital stock plus such amounts as are recorded on each such other Reorganized Debtor's financial statements as paid-in capital and additional paid-in capital under its fresh start accounting in accordance with Generally Accepted Accounting Principles.  The amount required to reduce the Paid-in Capital of each corporate Reorganized Debtor to its Article XIII Paid-in Capital Amount shall be treated as a reduction in Paid-in Capital under Section 9.20(a)(2) of the BCA.  Notwithstanding anything to the contrary, this Part IV.G of this Confirmation Order and Section 15.6 of the DCL Plan shall only apply to capital stock of Reorganized Tribune and each corporate Reorganized Debtor whose capital stock is contemplated to be issued pursuant to the DCL Plan.

In any document required to be filed with the Illinois Secretary of State's office on or after the Effective Date and on or before the date the Article XIII Paid-in Capital Amounts are finally recorded on each corporate Reorganized Debtor's financial statements in accordance with the preceding paragraph, such reduction shall be made by good faith determination of the Article XIII Paid-in Capital Amounts as of the close of business on the Effective Date, after taking into account all of the transactions contemplated by the DCL Plan (including but not limited to, the cancellation of indebtedness pursuant to Section 5.8 of the DCL Plan).  If such

good faith determination differs from the Article XIII Paid-in Capital Amounts as finally recorded on any Reorganized Debtor's financial statements, a statement of correction will be filed on Form BCA 1.15 to correct such good faith determination, together with supporting documentation, which shall consist of a copy of the Reorganized Debtor's fresh start accounting certified financial statements.  The Reorganized Debtors shall not be required to file Form BCA 1.35, unless the Reorganized Debtors report a correction in apportionment in Form BCA 1.15. Such corrections to Reorganized Debtors' paid-in capital shall occur without interest or penalties, provided that Form BCA 1.15 (and Form BCA 1.35, if applicable) is submitted for filing no later than 30 days after the date on which the Reorganized Debtor's fresh start accounting financial statements, as of the Effective Date, are first certified.

For purposes of this Part IV.G of this Confirmation Order and Section 15.6 of the DCL Plan, the term "corporate" refers to a corporation as defined in Sections 1.80(a) or (b) of the BCA.

**H.    APPROVAL OF AND AUTHORIZATION TO ENTER INTO NEW SENIOR SECURED TERM LOAN AGREEMENT AND RELATED DOCUMENTS.**

The terms of the New Senior Secured Term Loan facility are hereby approved. On the Effective Date, without any requirement of further action by security holders, directors, members or managers of the Debtors or Reorganized Debtors, the Debtors and Reorganized Debtors are authorized, but not directed, to (1) enter into the New Senior Secured Term Loan Agreement, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of the liens securing the New Senior Secured Term Loan, (2) grant such liens and security interests as necessary to provide security for the New Senior Secured Term Loan in accordance with the

New Senior Secured Term Loan Agreement and New Senior Secured Term Loan documents, (3)

perform all of their obligations under the New Senior Secured Term Loan Agreement and other

New Senior Secured Term Loan documents, and (4) take all such other actions as any of the

Responsible Officers of such Reorganized Debtor may determine are necessary, appropriate or

desirable in connection with the consummation of the transactions contemplated by the New

Senior Secured Term Loan facility.

If the Creditor Proponents and the Debtors elect, pursuant to Section 5.6.2 of the

DCL Plan, to have the Reorganized Debtors distribute Cash in the amount of all or part of the

initial principal amount of the New Senior Secured Term Loan in lieu of all or such part of the

New Senior Secured Term Loan to Holders of Allowed Claims receiving the New Senior

Secured Term Loan under the DCL Plan, the relevant Reorganized Debtors are hereby

authorized, but not directed, without any requirement of further action by the stockholders,

directors, members or managers of the Debtors or Reorganized Debtors, to make such repayment

and to take any steps necessary to enable such repayment, including the issuance of new

indebtedness; provided, however, that any such Cash distribution shall be distributed Pro Rata to

Holders of Allowed Claims that otherwise would have received the New Senior Secured Term

Loan.

As of the Effective Date, all Holders of Allowed Claims receiving the New Senior

Secured Term Loan under the DCL Plan shall be deemed to have executed the New Senior

Secured Term Loan documents even if such party has not actually executed the New Senior

Secured Term Loan documents (provided the Creditor Proponents and the Debtors have not

exercised the election to distribute Cash instead of the New Senior Secured Term Loan pursuant

to Section 5.6.2 of the DCL Plan on or prior to the Effective Date).

I.      ISSUANCE OF NEW COMMON STOCK AND NEW WARRANTS AND
        EXEMPTION FROM SECURITIES LAWS.

On the Effective Date or a subsequent Distribution Date, Reorganized Tribune

shall issue up to the number of shares of New Common Stock and New Warrants to be

authorized pursuant to the Certificate of Incorporation and all instruments, certificates and other

documents required to be issued or distributed pursuant to the DCL Plan without further act or

action under applicable law, regulation, order or rule.

The issuance, distribution, transfer or exchange of (a) the New Common Stock

and the New Warrants, and (b) any other stock, options, warrants, conversion rights, rights of

first refusal or other related rights, contractual, equitable or otherwise, issued, authorized or

reserved under or in connection with the DCL Plan, shall be, and shall be deemed to be, exempt

from registration under any applicable federal or state securities laws to the fullest extent

permissible under applicable non-bankruptcy law and under bankruptcy law, including, without

limitation, section 1145(a) of the Bankruptcy Code.  In addition, although the Proponents intend

that the Litigation Trust Interests shall not be "securities" under applicable laws, if such

Litigation Trust Interests are securities, they shall be exempt from registration under section

1145 of the Bankruptcy Code and under applicable securities laws.  Without limiting the effect

of section 1145 of the Bankruptcy Code, all documents, agreements and instruments entered into

on or as of the Effective Date contemplated by or in furtherance of the DCL Plan, including,

without limitation, the Exit Facility Credit Agreement, the New Senior Secured Term Loan

Agreement, and any other agreement entered into in connection with the foregoing, shall become

effective and binding in accordance with their respective terms and conditions upon the parties

thereto.

J.      **RECORD DATE FOR DISTRIBUTIONS.**

With the exception of Senior Noteholder Claims and PHONES Notes Claims, the Distribution Record Date for purposes of determining the Holders of Allowed Claims that are entitled to distributions that are required to be made under the DCL Plan on the Effective Date or as otherwise provided under the DCL Plan shall be (i) other than with respect to Senior Loan Claims, the date of entry of this Confirmation Order and (ii) with respect to Senior Loan Claims, one business day after the FCC releases an order granting the FCC Approval.   With the exception of Senior Noteholder Claims and PHONES Notes Claims, the Reorganized Debtors and the Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Claim or Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes to recognize and distribute only to those Holders of Allowed Claims or Interests (including Holders of Claims and Interests that become Allowed after the Distribution Record Date) that are Holders of such Claims or Interests, or participants therein, as of the close of business on the Distribution Record Date.  With the exception of the Senior Noteholder Claims and PHONES Notes Claims, the Reorganized Debtors and the Disbursing Agent shall instead be entitled to recognize and deal for all purposes under the DCL Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

Distributions to Holders of Senior Noteholder Claims and PHONES Notes Claims held through DTC shall be made by means of book-entry exchange through the facilities of DTC in accordance with the customary practices of DTC, as and to the extent practicable, and the Distribution Record Date shall not apply.  In connection with such book-entry exchange, the Reorganized Debtors will provide rate information to each Indenture Trustee, which such

Indenture Trustee shall convey to DTC to effect distributions on a Pro Rata basis as provided

under the DCL Plan, subject to the treatment elections set forth in Section 3.2.5(c) thereof, with

respect to such Claims upon which such Indenture Trustee acts as trustee.  Subject to Section

7.5.2 of the DCL Plan, distributions of Cash to Holders of Allowed Senior Noteholder Claims or

Allowed PHONES Notes Claims (including distributions of Cash to Holders of Class 1E

Litigation Trust Interests or Class 1J Litigation Trust Interests) shall be made to the applicable

Indenture Trustees, which, in turn, shall make such distributions to the applicable Holders either

through DTC or, in the case of Claims, Class 1E Litigation Trust Interests or Class 1J Litigation

Trust Interests held directly by the Holder thereof, through the applicable Indenture Trustee

subject to the respective rights, claims and interests, if any, that the Indenture Trustees may have

under the applicable Indentures or otherwise to the recovery and/or reimbursement of their fees,

costs and expenses (including the fees, costs and expenses of counsel and financial advisors)

from any distribution hereunder, whether such rights, claims or interests are in the nature of a

charging lien or otherwise.  Distributions of other consideration to Holders of Senior Noteholder

Claims or PHONES Notes Claims shall be made by the Disbursing Agent either through DTC or,

in the case of Claims held directly by the Holder thereof, through the Disbursing Agent upon

surrender or deemed surrender of such Holder's Senior Notes or PHONES Notes except as

otherwise provided in the DCL Plan.

## K.    DELIVERY OF DOCUMENTS.

All Persons holding Claims against or Interests in the Debtors that are treated

under the DCL Plan are hereby directed to execute, deliver, file or record any document, and to

take any action necessary to implement, consummate and otherwise effect the DCL Plan in

accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the DCL Plan.

      L.     **IMPLEMENTATION OF SETTLEMENTS AUTHORIZED BY DCL PLAN.**

        The Debtors and other relevant parties in interest are hereby authorized to implement the settlements authorized by the DCL Plan on the terms and conditions set forth in the DCL Plan and in the relevant settlement agreements (if any) and any documents related to such settlements, including, without limitation, (a) the Step Two/Disgorgement Settlement, (b) the Settlement, (c) the Intercompany Claims Settlement, and (d) the Retiree Claimant Settlement (collectively, the "DCL Plan Settlements").

        The DCL Plan Settlements and the related releases of claims and causes of action and distributions are authorized and approved in all respects, subject to, and in accordance with, the terms and conditions thereof, the DCL Plan and this Confirmation Order, and the terms of the DCL Plan Settlements shall be binding upon all Persons, including the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the DCL Plan or whether the Holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the DCL Plan), any and all non-debtor parties to executory contracts and unexpired leases with any of the Debtors, and any and all Persons who are parties to or are subject to the settlements, compromises, releases, waivers, discharges and injunctions described herein or in the Findings of Fact and Conclusions of Law or in the DCL Plan, and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing. The releases granted pursuant to the DCL Plan shall preclude third parties (including, without limitation, the Creditors' Committee, any other estate representative

and individual creditors that are not deemed to have given a release pursuant to Section 11.2 of

the DCL Plan) from asserting, on behalf of the Debtors' Estates or otherwise, any Released

Claims.  The Debtors, Reorganized Debtors and any other applicable parties are hereby

authorized and directed to take any and all actions necessary or appropriate to implement,

effectuate and consummate the DCL Plan Settlements and the transactions contemplated thereby,

without further notice, application or order of this Court, subject in each case to the terms and

conditions of the DCL Plan and the DCL Plan Settlements.

> **M.    PRESERVATION OF RIGHTS OF ACTION AND SETTLEMENT OF ORDINARY LITIGATION CLAIMS.**

Except as otherwise provided in the DCL Plan, this Confirmation Order, or in any

document, instrument, release or other agreement entered into in connection with the DCL Plan,

the Debtors and their Estates shall retain the Ordinary Litigation Claims in accordance with

section 1123(b)(3)(B) of the Bankruptcy Code.  The Reorganized Debtors, as the successors in

interest to the Debtors and the Estates, may enforce, sue on, settle or compromise (or decline to

do any of the foregoing) any or all of the Ordinary Litigation Claims or any other claims, rights

of action, suits or proceedings that any Debtor or Estate may hold against any Person.

> **N.    CANCELLATION OF LOAN AGREEMENTS, LOAN GUARANTY AGREEMENTS, THE PLEDGE AGREEMENT, NOTES ISSUED UNDER THE LOAN AGREEMENTS, SENIOR NOTES, DEBENTURES, INSTRUMENTS, INDENTURES, EGI-TRB LLC NOTES, PHONES NOTES, OLD COMMON STOCK AND OTHER TRIBUNE INTERESTS.**

Except as otherwise provided for in the DCL Plan or this Confirmation Order, as

of the Effective Date, all (a) Loan Agreements, Loan Guaranty Agreements, the Pledge

Agreement, notes issued under the Loan Agreements, Senior Notes, EGI-TRB LLC Notes,

PHONES Notes, Old Common Stock, other Tribune Interests and any other notes, bonds (with

the exception of surety bonds outstanding), indentures (including the Indentures), stockholders'

agreements, registration rights agreements, repurchase agreements and repurchase arrangements, or other instruments or documents evidencing or creating any indebtedness or obligations of a Debtor that relate to Claims or Interests that are Impaired under the DCL Plan shall be cancelled, and (b) all amounts owed by and the obligations of the Debtors under any agreements, credit agreements, guaranty agreements, stockholders' agreements, registration rights agreements, repurchase agreements and repurchase arrangements, indentures (including the Indentures) or certificates of designation governing the Loan Claims, Loan Guaranty Claims, Senior Notes, Swap Claim, EGI-TRB LLC Notes, PHONES Notes, Old Common Stock, other Tribune Interests and any other notes, bonds, indentures, or other instruments or documents evidencing or creating any Claims against or Interests in a Debtor that are Impaired under the DCL Plan shall be discharged.  In addition, as of the Effective Date, all Old Common Stock and other Tribune Interests that have been authorized to be issued but that have not been issued shall be deemed cancelled and extinguished without any further action of any party.  Notwithstanding anything to the contrary herein, the obligations of parties to the Loan Agreements and the Loan Guaranty Agreements that are not Reorganized Debtors or Subsidiary Non-Debtors shall not be discharged or limited in any way.

Notwithstanding the foregoing and anything contained elsewhere in the DCL Plan or this Confirmation Order, but subject in all respects to Section 5.8.1 of the DCL Plan, Article XI of the DCL Plan, and any provision of this Confirmation Order corresponding to the foregoing sections of the DCL Plan, (x) the Indentures and the debt issued thereunder shall continue in effect solely for the purpose of allowing (i) the Reorganized Debtors and the Indenture Trustees to make distributions pursuant to the DCL Plan under the respective Indentures, (ii) the applicable Indenture Trustee to assert, prosecute, or defend on behalf of

Holders of Senior Notes or PHONES Notes, as applicable, Disclaimed State Law Avoidance

Claims and to perform such other functions with respect thereto, including, without limitation, to

make distributions to their respective Holders, (iii) the applicable Indenture Trustee to assert any

rights preserved under subsection (z) of Section 5.8.2 of the DCL Plan, (iv) the individual

Holders of Senior Notes or PHONES Notes to prosecute the Disclaimed State Law Avoidance

Claims in the event a court determines they are necessary parties, (v) the Litigation Trust to

prosecute Preserved Causes of Action, (vi) the Holders of PHONES Notes to assert any

subrogation rights such Holders may have under Section 14.06 of the PHONES Notes Indenture;

(vii) any Indenture Trustee to pursue or continue to pursue any appeal of an order of this Court,

commenced by such Indenture Trustee on or before the Effective Date, (viii) Wilmington Trust

or Deutsche Bank (or their respective successors under the applicable Indentures) to serve as

members of the Litigation Trust Advisory Board or to replace a designee to the Litigation Trust

Advisory Board appointed by such member solely in accordance with the terms of the DCL Plan

and the Litigation Trust Agreement, and (ix) the continuation of any contractual right or

obligation that any Indenture Trustee has with any Person other than the Debtors, the

Reorganized Debtors or a Released Party; (y) the Loan Agreements (including, without

limitation, the intercreditor provisions described in Section 7.3 of the DCL Plan) shall continue

in effect (i) to the extent necessary to allow the Reorganized Debtors and Loan Agents to make

distributions pursuant to the DCL Plan on account of the Loan Claims and Loan Guaranty

Claims and perform such other functions in connection with the DCL Plan as the applicable

Loan Agent shall deem reasonably necessary or appropriate, (ii) with respect to all rights of the

applicable Loan Agent and all Persons other than the Reorganized Debtors or Subsidiary Non-

Debtors, and (iii) for all purposes with respect to Assigned Senior Guaranty Claims (if any); and

(z) nothing herein shall waive, release, or impair any rights, claims or interests, if any, that any Indenture Trustee may have under the applicable Indenture or otherwise or that any other party acting in a representative capacity may have (subject to the limitations imposed pursuant to Section 7.3.2 of the DCL Plan) to the recovery and/or reimbursement of its fees, costs and expenses (including the fees, costs and expenses of counsel and financial advisors) from any distribution hereunder or any amounts allocable or otherwise payable resulting from the pursuit or settlement of Disclaimed State Law Avoidance Claims to the Holders of Claims for which such party is a representative, whether such rights, claims or interests are in the nature of a charging lien or otherwise, all of which rights, claims and interests expressly are preserved. Except as otherwise provided in the DCL Plan or this Confirmation Order, upon cancellation of the applicable Indenture, the respective Indenture Trustee shall be relieved of any obligations as Indenture Trustee under such Indenture.  Except as expressly provided in the DCL Plan or this Confirmation Order, neither the Debtors nor the Reorganized Debtors shall have any obligations to any Indenture Trustee or Loan Agent for any fees, costs or expenses; provided, however, that if any applicable Indenture Trustee timely asserts a Claim in the Chapter 11 Cases and such Claim becomes an Allowed Claim, such Allowed Claim shall receive the treatment specified for the applicable Class of Claims pursuant to the DCL Plan.  The Claims that are subject to the Retiree Claimant Settlement Agreement shall continue in effect solely for the purposes set forth in Sections 5.8.2(x)(iv) and (v) of the DCL Plan and subsections (x)(iv) and (v) of this Paragraph.  For the avoidance of doubt, nothing in the DCL Plan shall or is intended to impair the rights of (i) any Indenture Trustee or any Holder of a Senior Notes Claim or PHONES Notes Claim or any of the Retiree Claimants (or any other party granted leave to commence a Disclaimed State Law Avoidance Claim) from prosecuting any Disclaimed State Law Avoidance

Claim, with the exception of any Disclaimed State Law Avoidance Claim that becomes a Holder

Released Claim pursuant to Section 11.2.2 of the DCL Plan, and (ii) the Litigation Trust and

Litigation Trustee from pursuing the Preserved Causes of Action.

Notwithstanding any other provision of the DCL Plan or this Confirmation

Order, the indemnification or guaranty obligations of the Debtors contained in (A) that certain

Indemnity Agreement between CSC Holdings, Inc., NMG Holdings, Inc. and Tribune dated July

29, 2008; (B) that certain Guaranty of Collection entered into on October 27, 2009 made by

Tribune to various parties with respect to the obligations of Chicago Baseball Holdings, LLC in

respect of the Credit Agreement Loans (as defined therein) and the Private Placement Notes (as

defined therein); and (C) that certain Subordinated Guaranty of Collection entered into on

October 27, 2009 made by Tribune to various parties with respect to the obligations of Chicago

Baseball Holdings, LLC in respect of the Loans (as defined therein) shall continue in full force

and effect.

## V.      DISCHARGE, RELEASES, EXCULPATION AND INJUNCTIONS.

### A.      DISCHARGE AND DISCHARGE INJUNCTION.

#### 1.      DISCHARGE OF CLAIMS.

a.      **As of the Effective Date, except as provided in the DCL Plan or this Confirmation Order, the distributions and rights afforded under the DCL Plan and the treatment of Claims and Interests under the DCL Plan shall be in exchange for, and in complete discharge of, all Claims against the Debtors, and in satisfaction of all Interests and the termination of Interests in Tribune.  Except as otherwise specifically provided in the DCL Plan, as of the Effective Date any interest accrued on Claims against the Debtors from and after the Petition Date shall be cancelled.  Accordingly, except as otherwise**

provided in the DCL Plan or this Confirmation Order, confirmation of the DCL Plan shall, as of the Effective Date, (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in sections 502(g) or 502(i) of the Bankruptcy Code, whether or not (x) a Proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code (or is otherwise resolved), or (z) the Holder of a Claim based on such debt has accepted the DCL Plan; and (ii) satisfy, terminate or cancel all Interests and other rights of equity security holders in the Debtors except as otherwise provided in the DCL Plan.  In addition, confirmation of the DCL Plan shall, as of the Effective Date, authorize the release of the Senior Guaranty Claims and the Bridge Loan Guaranty Claims against the Guarantor Non-Debtors.

        b.      As of the Effective Date, except as provided in the DCL Plan or this Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, debts, rights, causes of action, liabilities or Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date and from asserting against the Guarantor Non-Debtors any Senior Guaranty Claims or Bridge Loan Guaranty Claims.  In accordance with the foregoing, except as provided in the DCL Plan or this Confirmation Order, this Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims and other debts and liabilities of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent such judgment is

related to a discharged Claim.  Notwithstanding anything in Sections 11.1.1(a) or (b) of the

DCL Plan, the provisions of the DCL Plan shall not operate to discharge any debts that are

otherwise rendered non-dischargeable pursuant to section 1141(d)(6) of the Bankruptcy

Code.

2.    **DISCHARGE INJUNCTION**

Except as provided in the DCL Plan or this Confirmation Order, as of the

Effective Date, all Persons that hold, have held, or may hold a Claim or other debt or

liability that is discharged, or an Interest or other right of an equity security holder that is

terminated pursuant to the terms of the DCL Plan, are permanently enjoined from taking

any of the following actions on account of, or on the basis of, such discharged Claims, debts

or liabilities, or terminated Interests or rights: (i) commencing or continuing any action or

other proceeding against the Debtors, the Reorganized Debtors or their respective

property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or

order against the Debtors, the Reorganized Debtors or their respective property; (iii)

creating, perfecting or enforcing any Lien or encumbrance against the Debtors, the

Reorganized Debtors or their respective property; (iv) asserting any setoff, right of

subrogation or recoupment of any kind against any debt, liability or obligation due the

Debtors, the Reorganized Debtors or their respective property; and (v) commencing or

continuing any judicial or administrative proceeding, in any forum, that does not comply

with or is inconsistent with the provisions of the DCL Plan or this Confirmation Order;

<u>provided</u>, that this injunction shall have no effect on any right of setoff to the extent

provided under section 553 of the Bankruptcy Code or any right of recoupment to the

extent permitted under applicable law.

B.      **RELEASES AND INJUNCTIONS RELATED TO RELEASES.**

1.      **Each of the DCL Plan release and injunction provisions as set forth in, *inter alia*, Section 11.2 of the DCL Plan (including the releases by the Debtors and Estates set forth in Section 11.2.1 of the DCL Plan, the releases by Holders of Claims and Interests set forth in Section 11.2.2 of the DCL Plan, the injunction set forth in Section 11.2.4 of the DCL Plan, and the Guarantor Non-Debtor Release set forth in Section 11.2.5 of the DCL Plan) is hereby approved in all respects, is incorporated herein in its entirety, is so ordered and shall be immediately effective on the Effective Date of the DCL Plan without further action or notice by this Court, any of the parties to such releases, or any other party.**

C.      **BAR ORDER.**

1.      **It is hereby ordered that all (i) Non-Settling Defendants; (ii) Released Parties; (iii) Persons who have voted for or against the DCL Plan or who are presumed to have voted for or against the DCL Plan under Section 1126(f)-(g) of the Bankruptcy Code; and (iv) any other Persons that hold, have held or may hold a Claim or other debt or liability, or an Interest or other right of an equity holder, against, in or relating to any of the Debtors or their respective estate (collectively, the "Barred Persons"), are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere any claim for non-contractual indemnity or contribution against any Released Party (including any other non-contractual claim against the Released Parties, whether or not denominated as for contribution or indemnity, where the injury to the Barred Person is the liability of the**

30

Barred Person to the Plaintiff (as defined below)), arising out of or reasonably flowing

from the claims or allegations in any of the Released Claims, the Preserved Causes of

Actions, or the Disclaimed State Law Avoidance Claims, whether arising under state,

federal or foreign law as claims, cross-claims, counterclaims, or third-party claims

(collectively, the "Barred Claims").  Barred Claims shall not include any claim for non-

contractual indemnity or contribution against any Released Party solely in its capacity, if

any, as a Selling Stockholder.  If a court or tribunal determines that Barred Claims exist

that would have given rise to liability of any Released Party to a Barred Person but for this

Order, the Barred Persons are also entitled to the judgment reduction provisions set forth

herein.  This Order (the "Bar Order") is without prejudice to the position of any party as

to the existence, in the absence of this Bar Order, of any Barred Claim; and it is further

2.    Ordered that in the event any Person asserts a Preserved Cause of

Action or a Disclaimed State Law Avoidance Claim (a "Plaintiff") against any Barred

Person with respect to one or more Preserved Causes of Action or Disclaimed State Law

Avoidance Claims based upon, arising from, or related to the facts, allegations, or

transactions underlying any Released Claims (the "Action"), then, prior to entry of any

judgment or arbitration award ("Judgment") in the Action, the Plaintiff shall provide

notice of this Bar Order to the court or tribunal hearing the Action.  Such court or tribunal

shall determine whether the Action gives rise to Barred Claims on which Released Parties

would have been liable to the Barred Persons in the absence of this Bar Order.  If the court

or tribunal so determines, it shall reduce any Judgment against such Barred Person in an

amount equal to (a) the amount of the Judgment against any such Barred Person times (b)

the aggregate proportionate share of fault (expressed as a percentage) of the Released

Party or Parties that would have been liable on a Barred Claim in the absence of this Bar

Order expressed as a percentage of the aggregate fault of (i) the Barred Person, (ii) such

Released Party or Parties, and (iii) all other Persons determined by such court or tribunal

to be liable to the Barred Person in connection with the Action, whether or not such

Persons are sued in such Action.  Nothing herein shall prejudice or operate to preclude the

right of any defendant in such Action to (i) provide notice of this Bar Order to the court or

tribunal hearing the Action at any point, or (ii) raise any issues, claims or defenses

regarding judgment reduction or proportionate share of fault in the court or tribunal

hearing the Action at any point in accordance with applicable law or procedure and this

Bar Order.  For the avoidance of doubt, nothing herein shall be deemed to entitle a

Plaintiff to more than a single satisfaction with respect to any Preserved Causes of Action

or Disclaimed State Law Avoidance Claims; and it is further

3.    Ordered that nothing herein shall prejudice or operate to preclude the

rights of any Barred Person to assert any claims or causes of action (including, without

limitation, any direct or personal claims or causes of action), other than claims for non-

contractual indemnity or contribution against any Released Party as set forth above.  For

the avoidance of doubt, the provisions of this Bar Order, including the judgment reduction

provisions set forth herein, shall not apply to (i) any contractual indemnity; (ii) any claim

for which a court determines joint liability does not exist as a matter of law, equity or fact

as between any Barred Person and any Released Party; or (iii) any claims for non-

contractual indemnity or contribution asserted with respect to claims or causes of action

that are brought by any Person other than (a) the Litigation Trust; (b) any Person

asserting a claim on behalf of the Debtors' estates; (c) any Person asserting a Preserved

Cause of Action; or (d) any Person asserting a Disclaimed State Law Avoidance Claim; and it is further

4.    Ordered that if any Plaintiff enters into a settlement with any Person with respect to one or more causes of action based upon, arising from, or related to the Released Claims or any transaction underlying any Released Claim, then such Plaintiff shall cause to be included, and in all events, the settlement shall be deemed to include, a dismissal, release and waiver of any Barred Claims with respect to such settlement; and it is further

5.    Ordered that each Plaintiff is hereby enjoined and restrained from seeking relief or collecting judgments against any Non-Settling Defendants in any manner that fails to conform to the terms of this Bar Order, including, without limitation, the proportionate judgment reduction provision set forth herein; and it is further

6.    Ordered that this Court shall retain continuing jurisdiction with respect to all matters concerning this Bar Order, including, without limitation, hearing a petition for relief by a Barred Person or any other party in interest in the event that a court or tribunal hearing the Action fails to apply the judgment reduction provisions of this Bar Order.

D.    EXCULPATION

The exculpation set forth in Section 11.5 of the DCL Plan is hereby approved in all respects, is incorporated herein in its entirety, is so ordered and shall be immediately effective on the Effective Date of the DCL Plan without further action or notice by this Court, or any other party.

## VI.    LITIGATION TRUST.

### A.    GENERAL APPROVAL.

The establishment of the Litigation Trust, the transfer of the Litigation Trust Assets to the Litigation Trust, the appointment of the Litigation Trustee and the Litigation Trust Advisory Board, the Litigation Trust Agreement, the form of the Debtors' Transfer Agreement, the form of the Agreement Respecting Transfer of Documents, Information and Privileges from the Official Committee of Unsecured Creditors attached as Exhibit A to the Certification of Counsel Regarding Agreement Respecting Transfer of Documents, Information and Privileges from the Official Committee of Unsecured Creditors dated July 12, 2012 [D.I. 12001] (the "Creditors' Committee's Transfer Agreement") and all other provisions of Article XIII of the DCL Plan are hereby specifically approved.

### B.    ESTABLISHMENT OF LITIGATION TRUST.

On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purposes of administering the Litigation Trust Assets and making all distributions on account of Litigation Trust Interests as provided for under the DCL Plan.  The Litigation Trust is intended to qualify as a liquidating trust pursuant to Regulations section 301.7701-4(d).  Except as expressly provided in Section 5.13 of the DCL Plan with respect to the Trust Loan, none of the Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Litigation Trust.

### C.    VESTING OF LITIGATION TRUST ASSETS IN THE LITIGATION TRUST.

On the Effective Date, except as otherwise provided in the DCL Plan, this Confirmation Order or the Litigation Trust Agreement, in accordance with section 1141 of the Bankruptcy Code, all of the Litigation Trust Assets, as well as the rights and powers of the

Debtors' Estates applicable to the Litigation Trust Assets, shall automatically vest in the Litigation Trust, free and clear of all Claims and Interests for the benefit of the Litigation Trust Beneficiaries.  For the avoidance of doubt, (i) in no event shall the term "Litigation Trust Assets" be deemed to include any Released Claims against any Released Parties, and (ii) the Litigation Trust shall not have the right to assert any Released Claims against any Released Parties.

### D.    APPOINTMENT OF LITIGATION TRUSTEE AND LITIGATION TRUST ADVISORY BOARD.

1.    The appointment of the Litigation Trust Advisory Board in accordance with the terms of the DCL Plan is hereby approved.  Effective on the Effective Date, the initial members of the Litigation Trust Advisory Board shall serve as members of the Litigation Trust Advisory Board in accordance with the terms of the DCL Plan and the Litigation Trust Agreement.

2.    The appointment of the Litigation Trustee by the Litigation Trust Advisory Board in accordance with the terms of the DCL Plan is hereby approved.  Effective on the Effective Date, or upon the appointment of the initial Litigation Trustee, the individual appointed by the Litigation Trust Advisory Board shall serve as the Litigation Trustee in accordance with the terms of the DCL Plan and the Litigation Trust Agreement.

## VII.    INITIAL FUNDING OF LITIGATION TRUST

On the Effective Date, Reorganized Tribune, as lender, and the Litigation Trust, as borrower, shall become parties to the Trust Loan Agreement.  The Trust Loan Agreement shall contain terms that are consistent with the terms set forth in Section 5.13 of the DCL Plan, which terms are hereby approved.

## VIII.   OBJECTIONS TO CONFIRMATION.

### A.   OBJECTIONS RESOLVED OR OVERRULED.

As separately set forth in the Memorandum Overruling Objections to Confirmation of the Fourth Amended Plan of Reorganization for Tribune Company and its Subsidiaries and Denying Clarification Motion [D.I. 12033] and the Order Overruling Plan Objections and Denying the Clarification Motion [D.I. 12034], any remaining objections to confirmation of the DCL Plan that have not been resolved through consensus or the Modifications are hereby overruled.

### B.   SPECIFIC CONFIRMATION ORDER PROVISIONS TO RESOLVE OBJECTIONS.

#### 1.   CERTAIN TAXING AUTHORITIES.

a.   <u>California Franchise Tax Board and Internal Revenue Service</u>:

Notwithstanding anything to the contrary in the DCL Plan or in this Confirmation Order, an Administrative Expense Claim that is an expense under sections 503(b)(1)(B) and/or 503(b)(1)(C) of the Bankruptcy Code, including interest due thereon under applicable non-bankruptcy law, shall be timely paid in the ordinary course of business without the need of any governmental unit to file a request for payment of such Administrative Expense Claim or any other document, including a Proof of Claim.

b.   <u>California Franchise Tax Board, Internal Revenue Service, and Missouri Department of Revenue</u>:

For the avoidance of doubt, should the Reorganized Debtors elect to satisfy an Allowed Priority Tax Claim in regular installment payments in Cash pursuant to sub-part (b) of Section 2.3 of the DCL Plan, such regular installment payments shall be in equal quarterly installments in Cash.

c.    California Franchise Tax Board, Missouri Department of Revenue, Michigan Department of Treasury, and New York State Department of Taxation and Finance:

If the Debtors fail to cure a default with respect to a tax payment owed to a Taxing Authority that is not the subject of a bona fide dispute within 90 days after service of written notice of such default from Taxing Authority, then such Taxing Authority may (a) enforce the entire amount of its undisputed claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court.

d.    Internal Revenue Service:

Nothing in the DCL Plan or this Confirmation Order is intended to, or shall, confer jurisdiction on this Court to determine the tax consequences of the DCL Plan or to determine the tax liability of a non-debtor beyond the jurisdiction permitted under applicable law.

Notwithstanding any provision to the contrary, nothing in the DCL Plan or this Confirmation Order shall affect the rights of the United States, including the Internal Revenue Service (1) from seeking, pursuant to applicable nonbankruptcy law, to assess or collect from any non-debtor person or entity that may be liable directly or indirectly for the Debtors' taxes, including but not limited to liability under 26 U.S.C. §§ 4975 & 6672, or (2) from assessing or collecting from the Debtor any taxes that the Bankruptcy Code renders nondischargeable.

The DCL Plan shall not bar the IRS, subject to applicable law, from assessing and collecting taxes that did not arise until after the Confirmation Date.

e.    <u>New York State Department of Taxation and Finance and Michigan Department of Treasury</u>:

Notwithstanding anything to the contrary in the DCL Plan, this Confirmation Order or any implementing DCL Plan document, nothing shall affect the rights of the New York State Department of Taxation and Finance or State of Michigan, Department of Treasury to take action against non-debtor third parties who may be responsible for payment of prepetition and/or postpetition tax liabilities of any of the Debtors, and such rights are expressly reserved.

2.    **ACE COMPANIES, ZURICH AND TRAVELERS.**

On the Effective Date, as a result of the inclusion of Section 6.9 in the DCL Plan, all proofs of claim asserted against any of the Debtors by (i) ACE American Insurance Company (on behalf of itself and its affiliates) (collectively, the "<u>ACE Companies</u>"), (ii) Zurich American Insurance Company ("<u>Zurich</u>"), and (iii) The Travelers Indemnity Company & Its Affiliates ("<u>Travelers</u>") shall be deemed withdrawn by the relevant claimant(s) without the need for further action by any of the Debtors, the ACE Companies, Zurich or Travelers, and the Court-appointed claims agent is authorized to modify the claims register in these cases to remove such claims from the claims register.

3.    **FEDERAL COMMUNICATIONS COMMISSION.**

No provision in the DCL Plan or this Confirmation Order relieves the Reorganized Debtors from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("<u>FCC</u>").  No transfer of control to the Reorganized Debtors of any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the

38

transfer of control to the Reorganized Debtors, including, but not limited to, imposing any regulatory conditions on such transfer, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

4.      **OFFICE OF THE UNITED STATES TRUSTEE.**

The Debtors and Reorganized Debtors will comply with their statutory obligations under 28 U.S.C. § 1930 and file post-confirmation reports to the extent required by law and, to the extent applicable, in accordance with any agreements reached between the Debtors and the United States Trustee during the Chapter 11 Cases with respect to such matters.

5.      **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY.**

As to the United States, its agencies, departments or agents (collectively, the "United States"), nothing in this Confirmation Order or the DCL Plan discharges, releases or precludes: (i) any environmental liability to the United States that is not a Claim; (ii) any environmental Claim of the United States arising on or after the Confirmation Date; (iii) any environmental liability to the United States on the part of any entity as the owner or operator of real property owned or operated after the Confirmation Date (provided, however, that nothing in this clause (iii) shall be construed to deny a discharge, release or preclusion of any Claim with respect to such real property for: (a) response costs, oversight costs or other monetary costs incurred prior to the Confirmation Date or (b) penalties for all days of alleged violation of law prior to the Confirmation Date); or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtors. Nor shall anything in this Order or the DCL Plan enjoin or otherwise bar the United States from asserting or enforcing, outside this Court, any liability described in this paragraph.

Notwithstanding any other provision in this Confirmation Order or the DCL Plan, the Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by the United States are discharged or otherwise barred by this Confirmation Order, the DCL Plan or the Bankruptcy Code.

6.     **WARREN BEATTY.**

The DCL Plan, the DCL Plan Supplement, any document filed in connection with the DCL Plan or the confirmation thereof, or this Confirmation Order (the "DCL Plan and Confirmation Documents") do not purport to affect, impair, or otherwise alter such rights as Warren Beatty ("Mr. Beatty") may otherwise have in or to certain motion picture, television, and related rights in the Dick Tracy character arising from an August 28, 1985 agreement between Mr. Beatty and Debtor Tribune Media Services, Inc. (each, if any, the "Dick Tracy Rights"); provided, further, that nothing in the DCL Plan and Confirmation Documents purports to in any way modify or alter and shall not be deemed to modify or alter the following Bankruptcy Court orders: (i) Order denying Motion to Dismiss Adversary Proceeding, dated November 9, 2009, Case No. 08-13141 (KJC) (Bankr. D. Del. 2008) [D.I. 2535] and (ii) Stipulated Order Staying Adversary Proceeding, dated December 23, 2009, Case No. 09-50486 (KJC) (Bankr. D. Del. 2009) [Adv. Proc. No. 42]. All of Mr. Beatty's rights, interests, and remedies in and to the Dick Tracy Rights, if any, are expressly reserved and are not waived, modified, impaired, or otherwise altered by the DCL Plan and Confirmation Documents.

7.     **CERTAIN DIRECTORS AND OFFICERS.**

The DCL Plan references the Debtors' Transfer Agreement at Sections 1.1.134 and 13.3.8 and the Creditors' Committee's Transfer Agreement at Section 15.2. The Debtors and the Creditors' Committee have advised the Court that, through the Debtors' Transfer

Agreement and the Creditors' Committee's Transfer Agreement (collectively, the "Transfer Agreements"), among other things, (1) they intend to transfer to the Litigation Trustee the attorney-client privileges and similar protections, if any, that the Debtors, the Debtors' Estates, the Reorganized Debtors, and the Creditors' Committee now hold or will hold with respect to specified categories of documents and information together with such documents and information, and (2) they request the Court to state that such transfers shall not constitute a waiver of any such privileges now held by the Debtors or the Creditors' Committee.

Certain directors and officers are defendants in various litigation arising out of the LBO.[1]  They have advised the Court that they will not object to the relief sought in items (1) and (2) in the immediately preceding paragraph (the "Initial Paragraph") and that they will not argue that the respective privileges and protections referenced in item (1) have not lawfully been transferred to the Litigation Trustee and/or that such transfers, including the transfer of documents and information, constitute a waiver of the attorney-client privilege or any similar protection, provided that the Transfer Agreements do not otherwise affect any other rights and positions in the LBO Actions.  Accordingly, the Court orders that the Transfer Agreements do not and shall not be construed or interpreted to:  (a) affect any rights or positions of any person or entity in the LBO Actions, except as provided in items (1) and (2) in the Initial Paragraph; (b) create any privilege or similar protection over the documents and information referenced in the Initial Paragraph; (c) revive any privilege or similar protection that was waived or otherwise lost before the date of the Transfer Agreement; or (d) determine whether any future use or non-use of such documents or information is a waiver of any privilege or similar protection.

---

[1]    "LBO Actions" include all actions that are or may be transferred and consolidated in the MDL proceedings pending before Judge William H. Pauley, III in the United States District Court for the Southern District of New York, including, but not limited to, The Official Committee of Unsecured Creditors of Tribune Company v. FitzSimons, Case No. 12-cv-02652-WHP, and the "preference" actions filed by the Creditors' Committee.

For the avoidance of doubt, and except to the extent set forth in the Initial Paragraph, the Court makes no finding and issues no ruling determining, and the Transfer Agreements shall not determine:  (a) whether any use or non-use of privileged documents or information by the Debtors, Reorganized Debtors, Creditors' Committee, or Litigation Trustee at any time, past or future, constitutes a waiver; or (b) whether any privilege or similar protection applies to any particular document or other information subject to the Transfer Agreements, or otherwise in the possession, custody, or control of the Debtors, the Debtors' Estates, the Reorganized Debtors, the Creditors' Committee, or the Litigation Trustee (the parties to the Transfer Agreements), such matters to be reserved to the prerogatives of the MDL court or any other court in which an LBO Action may be pending.

IX.    **RETENTION OF JURISDICTION BY THIS COURT AND MISCELLANEOUS MATTERS.**

A.    **RETENTION OF EXCLUSIVE JURISDICTION BY THIS COURT.**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall and shall be deemed to retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the DCL Plan and this Confirmation Order to the fullest extent permitted by law, including, among other things, jurisdiction over each of the matters described in Section 12.1 of the DCL Plan; provided, however, that this Court's jurisdiction shall not be exclusive with respect to the matters set forth in Section 12.1.19 of the DCL Plan.  To the extent that it is not legally permissible for this Court to have exclusive jurisdiction over any of the matters described in Section 12.1 of the DCL Plan, this Court shall have nonexclusive jurisdiction over such matters to the extent legally permissible or as otherwise provided in Section 12.1 of the DCL Plan.

B.    **REFERENCE TO AND VALIDITY AND ENFORCEABILITY OF DCL PLAN PROVISIONS.**

The failure to reference any particular provision of the DCL Plan in this Confirmation Order shall not change the binding effect, enforceability or legality of such provision and such provision shall have the same binding effect, enforceability or legality as every other provision of the DCL Plan.  Each term and provision of the DCL Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

C.    **INJUNCTIONS AND STAYS REMAIN IN EFFECT UNTIL THE EFFECTIVE DATE.**

All injunctions and stays in effect on the date of the entry of this Confirmation Order, pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date of the DCL Plan (except that nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions contemplated by the DCL Plan or this Confirmation Order) and thereafter shall be annulled, except as provided for in the DCL Plan or this Confirmation Order.

D.    **PRIOR SEAL ORDERS.**

All prior orders of this Court sealing documents and other information shall remain in full force and effect following the entry of this Confirmation Order, including on and following the Effective Date of the DCL Plan.

X.    **NOTICE OF ENTRY OF CONFIRMATION ORDER.**

A.    **CONFIRMATION NOTICE.**

Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors and the Reorganized Debtors, as the case may be, are hereby directed to serve, within a reasonable time period after the occurrence of the Effective Date, a notice of the entry of this Confirmation

43

Order, which shall include notice of any bar dates established by the DCL Plan and this Confirmation Order and notice of the Effective Date, substantially in the form of <u>Attachment A</u> attached hereto and incorporated herein by reference (the "<u>Confirmation Notice</u>"), on all parties that received notice of the Confirmation Hearing.

As soon as practicable after the entry of this Confirmation Order, the Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on the Debtors' website at http://chapter11.epiqsystems.com/tribune.

## XI.    NO JUST CAUSE FOR DELAY.

This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: _____        _____
                                      The Honorable Kevin J. Carey
                                      United States Bankruptcy Judge

**<u>ATTACHMENT A</u>**

**Confirmation Notice**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**NOTICE OF (I) EFFECTIVE DATE OF THE FOURTH AMENDED JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, OAKTREE CAPITAL MANAGEMENT, L.P., ANGELO, GORDON &
CO., L.P., AND JPMORGAN CHASE BANK, N.A. AND
(II) BAR  DATE FOR CERTAIN CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

　　1.　**Confirmation of the Plan.**  On July __, 2012, the Honorable Kevin J. Carey, United
States Bankruptcy Judge, entered the Order Confirming Fourth Amended Joint Plan of
Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official
Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co.,
L.P., and JPMorgan Chase Bank, N.A. [Docket No. _____] (the "Confirmation Order").  Unless

---

[1]　　The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune
Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258);
California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256);
Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune
Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave
Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products,
Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661);
Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify
Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart &
Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications,
LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC;
KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications
LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing
Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper
Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook
Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel
Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers,
Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun
Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other
Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times
Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower
Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune
Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune
Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball
Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production
Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los
Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc.
(1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939);
Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television
New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025);
Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN
Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate
headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

otherwise defined herein, capitalized terms used in this notice have the meanings assigned to such terms in the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "<u>Plan</u>").

2.  **<u>Effective Date of the Plan.</u>**  All conditions precedent to occurrence of the Effective Date of the Plan have been satisfied or waived.  The Effective Date occurred on _____, 2012.

3.  **<u>Bar Date For Professional Fee Claims.</u>**  Pursuant to section 9.2 of the Plan, all applications for final allowance of compensation or reimbursement of the fees and expenses of any professional employed pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise in the Chapter 11 Cases, including any Claims for making a substantial contribution under 503(b)(4) of the Bankruptcy Code, must comply with each of the requirements of section 9.2 of the Plan and must be filed and served on the Reorganized Debtors and their counsel, together with the Bankruptcy Court appointed fee examiner, and the Office of the United States Trustee, not later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  **Accordingly, any such application must be filed and served by _____, 2012.  Any request for the payment of professional fees and expenses that is not timely filed and served shall be discharged and forever barred and the professional shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such amounts.**

4.  **<u>Bar Date For Other Fee Claims.</u>**

    a.  **Bar Date for Senior Lender Fee/Expense Claims.**  Pursuant to section 9.1.1 of the Plan, no later than forty-five (45) days after the Effective Date, each Creditor Proponent shall submit to Reorganized Tribune, the Creditors' Committee and the United States Trustee reasonably detailed statements of the Senior Lender Fee/Expense Claims (which statements shall include descriptions of services provided in summary form without individual time records), and shall concurrently file such statements on the docket in the Chapter 11 Cases.  Such statements must comply with each of the requirements of section 9.1.1 of the Plan.  **Accordingly, any such statements must be submitted and filed by _____, 2012.  Any request for the payment of Senior Lender Fee/Expense Claims that is not timely filed and submitted shall be discharged and forever barred and the Creditor Proponent shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such amounts.**

    b.  **Bar Date for Bridge Lender Fee/Expense Claims.**  Subject to the conditions and limitations of Section 9.1.2 of the Plan, no later than forty-five (45) days after the Effective Date, each Bridge Plan Proponent shall submit to Reorganized Tribune, the Creditors' Committee and the United States Trustee reasonably detailed statements of the Bridge Lender Fee/Expense Claims (which statements shall include descriptions of services provided in summary form without

2

individual time records), and shall concurrently file such statements on the docket in the Chapter 11 Cases.  Such statements must comply with each of the requirements of section 9.1.2 of the Plan.  **Accordingly, any such statements must be submitted and filed by _____, 2012.  Any request for the payment of Bridge Lender Fee/Expense Claims that is not timely filed and submitted shall be discharged and forever barred and the Bridge Plan Proponent shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such amounts.**

   c.   **Bar Date for Creditors' Committee Member Fee/Expense Claims.**  Pursuant to section 9.1.3 of the Plan, no later than forty-five (45) days after the Effective Date, counsel to the Creditors' Committee shall submit to Reorganized Tribune and the United States Trustee, reasonably detailed statements of the Creditors' Committee Member Fee/Expense Claims, which statements shall include descriptions of services provided in summary form without individual time records.  Such statements must comply with each of the requirements of section 9.1.3 of the Plan.  **Accordingly, any such statements must be submitted by _____, 2012.  Any request for the payment of Creditors' Committee Member Fee/Expense Claims that is not timely submitted shall be discharged and forever barred and the Creditors' Committee and its counsel shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such amounts.**

   5.   **Bar Date For Rejection Damages Claims.**  Pursuant to section 6.1.1 of the Plan, subject to certain specified exceptions, on the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding such assumption, Exhibit 6.3 of the Plan sets forth certain executory contracts and leases which shall be rejected pursuant to section 365 of the Bankruptcy Code.  If the rejection by a Debtor, pursuant to the Plan, of an executory contract or unexpired lease results in a Claim, then such claim **shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor, or the properties of any of them**, unless a Proof of Claim is filed and served upon counsel to the Debtors within thirty (30) days after service of this notice of the Effective Date.  **Accordingly, any such statements must be submitted by _____, 2012.**

   6.   **Procedures for Changing an Address of Record.**  The Reorganized Debtors' obligation to make distributions to Holders of Allowed Claims are subject to section 7.6 of the Plan, and other applicable sections of the Plan.  Any notice of a change of address of record shall be sent to the Disbursing Agent, Epiq Bankruptcy Solutions, LLC, at _____.

   7.   **Copies of the Plan and the Confirmation Order.**  Copies of the Plan and the Confirmation Order may be viewed and downloaded, free of charge, at the following website: http://dm.epiq11.com/TRB/Project.  In addition, all documents that are filed with the Bankruptcy Court may be reviewed during regular business hours at the office of the Clerk, United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington Delaware 19801, or at the following website: http://www.deb.uscourts.gov.

Dated: _____, 2012                    BY ORDER OF THE COURT


SIDLEY AUSTIN LLP                         COLE, SCHOTZ, MEISEL, FORMAN & LEONARD,
James F. Conlan                           P.A.
Bryan Krakauer
Kevin T. Lantry                           By: _____
Jessica C.K. Boelter                      Norman L. Pernick (No. 2290)
One South Dearborn Street                 J. Kate Stickles (No. 2917)
Chicago, IL  60603                        Patrick J. Reilley (No. 4451)
Telephone:  (312) 853-0199                500 Delaware Avenue, Suite 1410
Facsimile:  (312) 853-7036                Wilmington, DE  19801
                                          Telephone:  (302) 652-3131
                                          Facsimile:  (302) 652-3117

                   Counsel for the Debtors and Debtors in Possession

4