IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------ x
In re:                         :
                               : Chapter 11
TRIBUNE COMPANY, et al.,       :
                               : Case No. 08-13141 (KJC)
          Debtors.             :
                               : (Jointly Administered)
                               :
                               :
------------------------------ x

**MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK
AND DEUTSCHE BANK TRUST COMPANY AMERICAS PURSUANT
TO 28 U.S.C. § 158(d)(2) AND FED. R. BANKR. P. 8001(f) REQUESTING
CERTIFICATION OF DIRECT APPEAL TO UNITED STATES COURT OF
APPEALS FOR THIRD CIRCUIT OF THE UNFAIR DISCRIMINATION ISSUE
IN THE ALLOCATION DISPUTES ORDER AS INCORPORATED IN
THE ORDER AND MEMORANDUM OPINION ON CONFIRMATION**

Law Debenture Trust Company of New York ("Law Debenture"), as successor indenture trustee under that certain Indenture dated March 19, 1996 between Tribune Company (with its debtor subsidiaries, "Tribune" or the "Debtors") (successor to The Times Mirror Company) and Citibank, N.A. (as amended, the "1996 Indenture"), and Deutsche Bank Trust Company Americas ("DBTCA" and together with Law Debenture, the "Appellants"), successor trustee under (i) that certain indenture dated March 1, 1992, by and between Tribune and Continental Bank, N.A. (as amended, the "1992 Indenture"); (ii) that certain indenture dated January 30, 1995, by and between Tribune and First Interstate Bank of California (as amended, the "1995 Indenture"); and (iii) that certain indenture dated January 1, 1997, by and between Tribune and Bank of Montreal Trust Company (as amended, the "1997 Indenture," and together with the 1992 Indenture, the 1995 Indenture, and the 1996 Indenture, the "Senior Indentures" and the notes and holders of notes issued pursuant to the Senior Indentures, respectively, the "Senior

Notes" and "Senior Noteholders"), by their undersigned counsel, hereby move this Court (the "Certification Motion") for certification of direct appeal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of the *Order Regarding Allocation Disputes* [Dkt. No. 11338] (the "Allocation Disputes Order") as incorporated in the *Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by The Debtors, The Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A.*, dated July 23, 2012 [Dkt. No. 12074] (the "Confirmation Order"). In support of their Certification Motion, the Appellants respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Appellants' appeal arises out of the Bankruptcy Court's Allocation Disputes Order, as incorporated by the Confirmation Order confirming the Fourth Amended Joint Plan of Reorganization For Tribune Company and Its Subsidiaries Proposed By the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (As Modified June 19, 2012) [Dkt. No. 11836] (the "Plan").

2. The appeal raises an issue on which there is no precedent regarding the application of the requirement in Section 1129(b)(1) of the Bankruptcy Code that a plan "not discriminate unfairly." There is also no precedent concerning the application of this requirement in the specific context, present here, where two classes of unsecured claims that otherwise have equal rights and priorities as compared to one another have unequal rights under a subordination agreement applicable to a third creditor class. As the Bankruptcy Court itself acknowledged, the

issue here arises "in an unusual context." *In re Tribune Co.*, No. 08-13141, 2012 Bankr. LEXIS 1563, at *39 (Bankr. D. Del. Apr. 9, 2012) (quoting *In re Tribune Co.*, 464 B.R. 126, 199) (Bankr. D. Del. 2011). In fact, neither the Bankruptcy Court nor any party has been able to cite a single reported decision from the Third Circuit addressing the "not discriminate unfairly" requirement.

3. In the Allocation Disputes Order, the Bankruptcy Court held that the Plan's failure to provide for equal distributions from the Debtors to similarly situated creditors before taking the effect of a subordination agreement into account did not constitute unfair discrimination. Specifically, the Court held that Section 1129(b)(1) of the Bankruptcy Code neither requires that a plan not unfairly discriminate prior to giving effect to third party contractual rights embodied in a subordination agreement, nor requires a plan to implement fully any such subordination agreement (the "Unfair Discrimination Issue").

4. In reaching this decision, the Court disregarded in its entirety the *only* example that Congress provided in the legislative history to explain the statutory phrase "not discriminate unfairly," which was an example on all fours with the facts here presented – comparison of a plan's treatment of senior debt benefitted by subordinated debt with the plan treatment of a third class of debt that was neither subordinated nor contractually entitled to the benefit of the contractual subordination.

5. No one can seriously dispute that the Unfair Discrimination Issue is an issue of law of first impression. There is no appellate case law on this legal issue in the Third Circuit Court of Appeals (or any other Circuit for that matter). Moreover, the applicable statute, at best, is unclear, or at least only explainable by reference to the legislative history.

6. The need for circuit-level guidance on this issue is highlighted by the fact that

there are billions, if not trillions, in subordinated debt outstanding in the capital markets – almost $1 billion in this case alone – that one day may be implicated in bankruptcy proceedings. As such, the legality of the Plan's distribution scheme in the context, as here, of senior and subordinated debt and a third class of debt that is neither senior nor subordinated is of overwhelming importance to the markets and financing at large as well as to the proper resolution of certain of the issues in the Debtors' bankruptcy cases. Until the Bankruptcy Court issued its unprecedented opinion, holders of debt that qualified as "senior debt" under the terms of a subordination agreement had a legitimate expectation that they would be the sole beneficiaries of any turnover of distributions that would otherwise be made to the holders of subordinated debt. Now, the Bankruptcy Court's ruling on the Unfair Discrimination Issue has cast a serious cloud over that legitimate market expectation.

7.     It is essential that the Third Circuit address the matter immediately through direct appeal. In 2005, as part of the amendments to the Bankruptcy Code, Congress provided for direct appeal to Courts of Appeals from the bankruptcy court if either the bankruptcy court or district court certifies that (i) the order involves a question of law as to which there is no controlling decision *or* involves a matter of public importance; (ii) the order involves a question of law requiring resolution of conflicting decisions; *or* (iii) an immediate appeal from the order may materially advance the progress of the case. As written disjunctively, the Court must find only one reason for certification. Three exist here:

> (1) The Court's unfair discrimination legal holding in the Allocation Disputes Order, incorporated into the Confirmation Order, is one of first impression for the Third Circuit. The Third Circuit has never addressed either the "not discriminate unfairly" or the "notwithstanding section 510(a)" language in Section 1129(b)(1) of the Bankruptcy Code. Moreover, there exists no case law in the Third Circuit applying Bankruptcy Code Section 1129(b)'s "unfair discrimination" standard in the context here of senior debt, subordinated debt, and debt that is neither senior nor subordinated. There is, of course, directly on

point legislative history with which the Bankruptcy Court's ruling is wholly inconsistent.

(2) The Court's holding that subordination agreements need not be fully implemented in cramdown plans is of major importance to the markets and to the holders of billions, if not trillions, of dollars in contractually "senior" debt beyond that involved in the instant dispute. This holding effectively devalues such senior debt by allowing such debt that is not contractually "senior" under the applicable subordination agreement to share equally in the reallocation of distributions that result from the contractual subordination. To uphold the Bankruptcy Court's decision would allow debtors to use cramdown plans to vitiate the subordination rights of a senior class. Further, in applying the "not discriminate unfairly" requirement, the Court aggregated the distributions from the Debtors to the Senior Noteholders *and* those to be received by the Senior Noteholders from the subordinated creditors distributive share in analyzing whether the Plan discriminated unfairly against the Senior Noteholders. However, as set forth clearly in the legislative history, to not discriminate unfairly the Plan must provide each such class the same distributions from the **Debtors, before** taking into account any reallocation of distributions resulting from contractual subordination provisions.

(3) Finally, the resolution of this instant issue will resolve one of the last remaining disputes between the parties as the Debtors move towards their reorganization goals.

8.  Accordingly, the existence of all three circumstances or at least any one mandate that this Court certify Appellants' appeal of the Confirmation Order to the Third Circuit.

## **FACTUAL BACKGROUND**

9.  Following a trial (the "Initial Confirmation Hearing"), briefing and argument, the Court on October 31, 2011, issued its *Opinion on Confirmation* [Dkt. No. 10133] (the "Initial Confirmation Opinion") and its *Order Denying Confirmation Of Competing Plans* [Dkt. No. 10134] denying confirmation of both proposed plans of reorganization that it considered, including the predecessor to the DCL Plan. The Initial Confirmation Opinion left open certain disputes regarding the allocation of distributions to creditors of Tribune Company, the parent entity (collectively, the "Allocation Disputes").

10. On January 24, 2012, the Court entered an *Order Establishing Scheduling For (1)*

5

*Resolution of the Allocation Disputes and (2) Consideration of DCL Plan Proponents' Supplemental Disclosure Document, Solicitation Procedures Motion and* Plan [Dkt. No. 10692] establishing, in part, the procedures for the adjudication of the Allocation Disputes. The Allocation Disputes generally dealt with the enforceability of the subordination provisions in the PHONES Notes Indenture (as defined in the Plan) and the EGI-TRB Subordination Agreement (as defined in the Plan) (collectively, the "Subordination Agreements").

11. The Unfair Discrimination Issue, at issue in this appeal, concerns whether and to what extent distributions under the Plan must account for and accord with the terms of subordination agreements that affect the rights of certain creditors *inter se* in order for the distributions under the Plan to satisfy the requirement of Section 1129(b)(1) of the Bankruptcy Code that the Plan must not discriminate unfairly.

12. The Appellants, among others, argued that all similarly situated creditors must receive an equal distribution *from the Debtors* prior to the application and enforcement of third party subordination rights to satisfy Section 1129(b)(1)'s unfair discrimination prohibition. *See* Stein Declaration, Ex. A, at 24. This ensures that a debtor treats all similarly situated creditors equally and that only those creditors entitled to benefit from subordination agreements receive such benefits under a debtor's plan.

13. Following the submission of briefs on the merits, the Bankruptcy Court held a hearing on March 5-6, 2012 to determine the Allocation Disputes, including the Unfair Discrimination Issue.

14. On April 9, 2012, the Bankruptcy Court entered its *Memorandum Regarding Allocation Disputes* [Dkt. No. 11337] (the "Allocation Disputes Memorandum") and accompanying Allocation Disputes Order. A copy of the Allocation Disputes Memorandum and

Allocation Disputes Order are attached to the *Declaration Of Matthew B. Stein In Support Of Law Debenture Trust Company of New York's And Deutsche Bank Trust Company Americas' Certification Motion and Stay Motion*, dated July 23, 2012 (the "Stein Declaration"), as Exhibits A and B, respectively. The Bankruptcy Court concluded that "[t]he discriminatory effect on the dissenting class is immaterial and, therefore, no rebuttable presumption of unfair discrimination arises." *See* Stein Declaration, Ex. A, at 30. Notably, the Bankruptcy Court never undertook any analysis as to what portion of the parties' distributions were derived from the Debtors and what portion of the distributions under the Plan were derived from the reallocation of distributions that would otherwise have been made to the contractually subordinated creditors. Instead, the Bankruptcy Court simply disregarded the impact of subordination beyond ensuring that the subordinated creditors were subordinated; it did not consider whether the Plan's distributive scheme fully comported with the appropriate manner in which the ratable share of distributions to unsecured creditors otherwise distributable to the subordinated debt must be reallocated to holders of "senior" debt or the impact of the Plan's distributive scheme on the contractual rights of the intended beneficiaries of the contractual subordination that resulted in a diversion of value away from those senior creditors.

15.   Separately, the Court concluded – contrary to the plain meaning of the Subordination Agreements – that "the SWAP Claim falls within the definition of Senior Indebtedness in the PHONES Indenture" and "within the definition of Senior Obligations under the EGI Subordination Agreement." Stein Declaration, Ex. A, at 21-22 n.19.[1]

16.   Both the Allocation Disputes Memorandum and the Allocation Disputes Order provided that their determinations remained "subject to, conditioned upon and for the purpose of

---

[1] This part of the Allocation Disputes Memorandum was neither referenced nor contained in the Allocation Disputes Order.

7

obtaining confirmation of a chapter 11 plan . . . ." *See, e.g.*, Stein Declaration, Ex. A, at 3; Stein Declaration, Ex. B, at 1, 2.

17.   On June 7-8, 2012, the Court held a hearing to consider the confirmation of the Plan.

18.   On July 13, 2012, the Bankruptcy Court entered its *Memorandum Overruling Objections To Confirmation Of The Fourth Amended Plan Of Reorganization For Tribune Company And Its Subsidiaries And Denying Clarification Motion* [Dkt. No. 12033] (the "Confirmation Memorandum"). On July 23, 2012, the Bankruptcy Court entered the Confirmation Order. A copy of the Confirmation Memorandum and Confirmation Order are attached to the Stein Declaration as Exhibits C and D, respectively. Both the Confirmation Memorandum and the Confirmation Order incorporated by reference the Court's conclusions in the Allocation Disputes Memorandum and the Allocation Disputes Order.

19.   On July 23, 2012, Appellants filed their *Notice of Appeal* of the Confirmation Order.

## JURISDICTION AND VENUE

20.   The Court has jurisdiction to consider the Certification Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## APPELLATE ISSUES PRESENTED

21.   There are two issues presented on appeal:

   a. whether the Bankruptcy Court erred in confirming the Plan because the Plan discriminates unfairly against the Senior Noteholders (as defined in the Plan) in violation of Section 1129(b)(1) of the Bankruptcy Code by providing materially lower and disparate treatment to the Senior Noteholders as compared to the treatment of Other Parent Claims with respect to distributions from the estate (before taking into account any reallocations resulting from contractual subordination) and by disregarding the subordination provisions of

8

the PHONES Indenture and the EGI-TRB Subordination Agreement in reallocating distributions otherwise payable to the subordinated debt.

b. whether the Bankruptcy Court erred in determining that "the SWAP Claim falls within the definition of Senior Indebtedness in the PHONES Indenture" and "within the definition of Senior Obligations under the EGI Subordination Agreement" (the "Swap Claim Issue").[2]

## RELIEF REQUESTED

22. Appellants respectfully request the entry of an order, pursuant to 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001(f), certifying their appeal of the Confirmation Order in its entirety, or, if appropriate, solely with respect to the Unfair Discrimination Issue and the Swap Claim Issue for direct appeal to the Third Circuit.

## ARGUMENT

### A. Overview of 28 U.S.C. § 158(d).

23. Pursuant to Section 1233 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress amended the Bankruptcy Code by streamlining bankruptcy appeals to enable expedited access to the United States Courts of Appeal. Enacting 28 U.S.C. § 158(d), which operates in conjunction with Bankruptcy Rule 8001(f), Congress provided that, upon consensual certification by the parties or certification by the relevant

---

[2] This Swap Claim Issue also independently satisfies the certification requirement pursuant to 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001(f) because (i) all parties agreed that the interpretation of the PHONES Indenture and the EGI Subordination Agreement was an issue of law and (ii) there is no Third Circuit precedent dealing with the "in connection with" language that the Court relied on in the Allocation Disputes Memorandum in determining that the Swap Claim constituted Senior Indebtedness and a Senior Obligation. Further, the Court's broad reading of the "in connection with" language in the PHONES Indenture has important implications for the subordinated debt market (as well as "senior" debt for borrowed money) and courts have recognized the importance of uniformity and certainty in the interpretation of public indentures to the efficient functioning of the capital markets. *See generally Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir. 1982).

The Appellants submit, however, that the presence of a single issue on appeal that meets the certification requirements is sufficient to mandate the certification of the entire appeal. *See, e.g., Jaffé v. Samsung Elecs. Co., Ltd.*, 470 B.R. 374, 386 (E.D. Va. 2012) (concluding that it is not necessary to determine whether all issues on appeal independently warrant certification "because the October 28, 2011 order already must be certified to the Fourth Circuit because there is at least one question of law as to which there is no controlling decision . . . . As a result, there is no need to decide specifically whether the additional questions of law identified by the Foreign Administrator are sufficiently separable from the bankruptcy court's fact intensive inquiry to warrant certification under § 158(d)(2).").

9

bankruptcy or district court, an appeal may be taken directly to the relevant United States Court of Appeals, if *any* of the following circumstances exists:

    (i)    the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, *or* involves a matter of public importance;

    (ii)    the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; *or*

    (iii)    an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken . . . .

28 U.S.C. § 158(d)(2)(A).[3]

24. Congress enacted this procedure to address problems related to the "time and cost factors attendant to the [prior] appellate system . . . ." H.R. Rep. No. 109-31, pt. 1, at 148 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 206. Particularly, Congress was concerned with the fact that "decisions rendered by a district court as well as a bankruptcy appellate panel are generally not binding and lack stare decisis value." *Id.*

25. To that end, each prong of §158(d)(2)(A) represents an independent, ***mandatory*** ground upon which to grant certification. *See, e.g.*, 28 U.S.C. § 158(d)(2)(B) ("If the . . . court . . . determines that a circumstance specified in clause (i), (ii) **or** (iii) of subparagraph (A) exists . . . then the . . . court ***shall*** make the certification described in subparagraph (A)." (emphasis added)); *Simon & Schuster, Inc. v. Advanced Mktg. Servs. (In re Advanced Mktg. Servs.)*, 360 B.R. 429, 433 (Bankr. D. Del. 2007) (noting that a court "***must*** issue a certification

---

[3] A certification motion pursuant to 28 U.S.C § 158(d)(2) must be filed in the court where the matter is pending. Until an appeal is docketed in the district court, the matter remains pending in the bankruptcy court. Fed. R. Bankr. P. 8001(f)(2)-(3). A certification motion must be made not later than 60 days after entry of the order from which the appeal is taken. 28 U.S.C. § 158(d)(2)(E).

if it determines the order" involves any of the enumerated circumstances (emphasis added)). The legislative history confirms that the bankruptcy court has no discretion and must certify a direct appeal if one of the statutory conditions is met. *See* H.R. Rep. No. 109-31, pt. 1, at 148, *reprinted in* 2005 U.S.C.C.A.N. 88, 206 ("Such certification must be issued by the lower court if . . . one or more of certain specified standards are met[.]").

27. 26. Only one of the circumstances under Section 158(d) must exist to mandate certification. Appellants submit that three of the four circumstances are present here.

### B. The Confirmation Order Resolved An Issue As To Which No Controlling Third Circuit or Supreme Court Decisions Exists.

27. Other than a passing reference, neither the Third Circuit Court of Appeals nor the United States Supreme Court has ever explained or discussed in any detail the "unfair discrimination" language in 11 U.S.C. § 1129(b)(1). Certainly, neither has addressed this issue in the context of a subordination agreement. This is indisputably an issue of first impression.

28. Courts in this circuit and elsewhere have previously found "the 'controlling precedent' prong of 28 U.S.C. § 158(d)(2)(A)(i) to require that there be 'no governing law on the issue before the court.'" *In re Nortel Networks Corp.*, No. 09-10138, 2010 Bankr. LEXIS 812, at *4 (Bankr. D. Del. Mar. 18, 2010) (citing *Mull Drilling Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 82, 111 (Bankr. D. Del. 2009)); *see also Tidewater Fin. Co. v. Kenney*, 531 F.3d 312, 315 (4th Cir. 2008) (accepting direct appeal of bankruptcy court order confirming a plan because there were no controlling decisions from the Fourth Circuit or the United States Supreme Court concerning the issue presented); 1 Collier on Bankruptcy ¶ 5.06[4][a] (16th ed. 2011).

29. Certification is especially appropriate where it "involv[es] important matters of statutory interpretation." 1 Collier on Bankruptcy ¶ 5.06[4][a]. In *Crédit Agricole Corp. v. Am.*

11

*Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.)*, 637 F.3d 246 (3d Cir. 2011), the Third Circuit Court of Appeals authorized a direct appeal to consider the "meaning of the statutory phrase requiring damages to be measured based on a 'commercially reasonable determinant[] of value'" as set forth in Section 562(a) of the Bankruptcy Code. *Id. at 247 (citing* 11 U.S.C. §562(a)). The Third Circuit noted that "[i]t is an issue of statutory construction such as those routinely faced by federal courts, although it appears to be an issue of first impression."[4] *Id.*; *see also Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364 (3d Cir. 2007) (noting that the Third Circuit accepted certification of issue concerning interpretation of bad faith under 11 U.S.C. § 707(a)); *AD Hoc Group of Timber Noteholders v. The Pac. Lumber Co. (In re Scotia Pac. Co. LLC)*, 508 F.3d 214 (5th Cir. 2007) (accepting certification of bankruptcy court order in absence of controlling decisions interpreting 2005 BAPCPA amendments concerning single-assets real estate cases).

30.     Here, there is no Third Circuit Court of Appeals or United States Supreme Court jurisprudence regarding the statutory interpretation of either the "not discriminate unfairly" or the "notwithstanding section 510(a)" language in 11 U.S.C. § 1129(b)(1). The Third Circuit has referenced the phrase "unfair discrimination" only in passing. *See, e.g., In re Armstrong World Indus.*, 432 F.3d 507, 512 (3d Cir. 2005). Not only is there no appellate guidance in this Circuit on unfair discrimination in general, there also is no guidance on the specific issue that Appellants here raise; that is, unfair discrimination in the context of senior and subordinated debt and other debt that is neither senior nor subordinated – *the very example Congress provided in the legislative history.* See H.R. Rep. No. 95-595, at 416-17 (1977), *reprinted in* 1978 U.S.C.C.A.N.

---

[4] Although the Third Circuit expressed surprise that the interpretation of Section 562(a) was one of first impression, the general lack of appellate jurisprudence in bankruptcy cases was a prime reason behind the direct appeal amendment. *See Weber v. United States Tr.*, 484 F.3d 154, 158 (2d Cir. 2007) ("Congress intended [the direct appeal procedure] to facilitate our provision of guidance on pure questions of law. Among the reasons for the direct appeal amendment was widespread unhappiness at the paucity of bankruptcy-law precedent.") (footnote omitted).

5963, 6372-73 (explaining that senior debt is unfairly discriminated against when a plan does not provide for the dstribution of the full benefits of subordination to such class).

31.  Moreover, neither the Allocation Disputes Memorandum nor the Confirmation Memorandum cite to any Third Circuit or Supreme Court case with respect to the Court's overruling of Appellants' objection that they predicated on the unfair discrimination in the Plan. In fact, the only Third Circuit case that the Court cited in the Allocation Disputes Memorandum on this point is *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 817 (3d Cir. 2010). *Goody's*, however, dealt with an entirely separate provision of the Bankruptcy Code – Section 365(d)(3) – not unfair discrimination.

32.  Accordingly, the Unfair Discrimination Issue raised on appeal of the Confirmation Order satisfies this prong of 28 U.S.C. § 158(d)(2)(A) mandating a certification of Appellants' direct appeal to the Third Circuit Court of Appeals.

### C.  The Confirmation Order Relates To A Matter Of Public Importance.

33.  The Confirmation Order, by allowing the Debtors to confirm a plan that did not fully enforce third-party contractual subordination rights, necessarily invokes a matter of public importance that extends beyond the instant litigants.  It is a matter of concern to the financial markets.  In mandating the certification of issues that involve matters of public importance, Congress sought to expedite those appeals that "transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence to a degree that is not usually the case." *Travelers Indem. Co. v. Common Law Settlement Counsel (In re Johns Manville Corp.)*, 449 B.R. 31, 34 (S.D.N.Y. 2011) (citations and internal quotations omitted); *see also In re Nortel Networks*, 2010 Bankr. LEXIS 812, at *5 (same); *In re Virissimo*, 332 B.R. 208, 209 (Bankr. D. Nev. 2005) (certifying appeal of order where issue was "one which will recur . . .

and will impact the administration of bankruptcy estates until the issue is ultimately decided.")

34. The public importance prong is easily met here where the plan eliminates intercreditor third-party subordination rights over the dissent of the beneficiary class of creditors. Indeed, other circuits have held the enforceability of subordination agreements in bankruptcy paramount. *See HSBC USA v. Branch (In re Bank of New Engl. Corp.)*, 364 F.3d 355, 362 (1st Cir. 2004) ("Enforcing such agreements was necessary to prevent junior creditors from receiving windfalls after having explicitly agreed to accept less lucrative payment arrangements. Equity dictated enforcement because 'equality among creditors who have lawfully bargained for different treatment is not equity but its opposite.'" (internal citations omitted)). As the Second Circuit has noted:

> A bankruptcy court, in order to effectuate its duty to do equity, must enforce lawful subordination agreements according to their terms and prevent junior creditors from receiving funds where they have explicitly agreed not to accept them . . . To deprive lending institutions of the right to enforce lawful subordination agreements and require them to prove in each instance that they relied on such agreements in advancing funds to businesses would not only place in jeopardy literally billions of dollars of outstanding loans, but in all probability would prompt lending institutions to reconsider, and possibly curtail, their subordinated debt-financing activities to the detriment of the entire business community.

*In re Credit Industrial Corp.*, 366 F.2d 402, 410 (2d Cir. 1966) (citations, footnote, and internal quotations omitted); *see also In re Coastal Broad. Sys., Inc.*, No. 11-10596, 2012 Bankr. LEXIS 3098, at *22-23 (Bankr. D.N.J. July 6, 2012) ("Congress's enactment of section 510(a) signaled that the enforcement of subordination provisions was no longer a matter that was committed to the bankruptcy courts' notions of what may, or may not be, equitable; enforcement of such agreements is necessary to prevent junior creditors from receiving windfalls after having explicitly agreed to accept less lucrative payment arrangements.") (citation omitted).

35. Although this case involves the comparative legal rights of contractually senior

creditors and creditors who are not contractually senior, rather than senior creditors' rights against contractually subordinated creditors, the underlying concerns expressed above apply with equal force here. Allowing non-contractually senior creditors to share equally with contractually senior creditors in the reallocation from subordinated creditors deprives senior creditors of the full economic benefit of their contractual subordination rights, thereby frustrating their legitimate contract expectations.

36. The broad scope of the Bankruptcy Court's ruling on the impact of the "notwithstanding" lead-in to Section 1129(b)(1) on the integrity of subordination agreements in chapter 11 cases – the very scenario in which they are most likely to be relevant – has serious and potentially unsettling implications for the market for senior and subordinated debt. The Bankruptcy Court held that, "the meaning of 'notwithstanding Section 510(a) of this title' means that Section 1129(b) is applied *without prevention or obstruction of any applicable subordination agreements.*" Stein Declaration, Ex. A, at 25 (emphasis added). In other words, subordination agreements can essentially be disregarded in applying the cramdown provisions of Section 1129(b) of the Code.

37. It is hard to understate the potentially unsettling effect of such a ruling and the uncertainty that it will likely engender on the financial markets; and immediate circuit-level guidance to resolve this issue is appropriate and necessary. *See generally Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1048 (2d Cir. 1982) *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253 (1983) (emphasizing the importance of uniformity and certainty in the interpretation of public indentures for the efficient working of the capital markets: "uniformity in interpretation is important to the efficiency of capital markets," and "the creation of enduring uncertainties as to the meaning of boilerplate provisions would decrease the value of all

debenture issues and greatly impair the efficient working of capital markets"); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, 379 B.R. 425, 448 (S.D.N.Y. 2007) ("in order to ensure that untenable distinctions and unreasonable results are avoided, it is proper to consider the effect that the Court's interpretation would have on the markets" (citing *Elliott Assocs. v. Banco De La Nacion*, 194 F.3d 363, 380 (2d Cir. 1999))).

38. Moreover, because of the legal errors made by the Bankruptcy Court in interpreting Section 1129(b) of the Bankruptcy Code and applying the unfair discrimination test under *In re Armstrong World Indus.*, 348 B.R. 111, 121 (D. Del. 2006), Appellants possess a strong likelihood that it will prevail on the merits of its appeal. First, the Bankruptcy Court discounted the legislative history of the "not discriminate unfairly" requirement entirely, and relying on a single out of jurisdiction bankruptcy court decision, *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 141 (Bankr. D.N.J. 2010), held that as a matter of law, the phrase "notwithstanding section 510(a)" in Section 1129(b)(1) requires that "§ 1129(b) be applied without prevention or obstruction of any applicable subordination agreements." (Stein Declaration, Ex. A, at 24-25.) The Bankruptcy Court's decision was in error.

39. In shunting aside the on-point legislative history, the Bankruptcy Court disregarded the basic principle that apparent "plain meaning" of a statute (if even ascertainable here) is ***not*** conclusive where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls." *United States v. Ron Pair, Entrs., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also In re Armstrong World Indus. Inc.*, 432 F.3d 507, 512 (3d Cir. 2005) (court will make no further inquiry where meaning of statute is plain "unless the literal application of the statute will end in a

result that conflicts with Congress's intentions," in which case, "the intentions of Congress will control."). Here, the Bankruptcy Court's interpretation of Section 1129(b)(1) of the Bankruptcy Code is demonstrably at odds with the intent of the drafters of that section. The legislative history makes it clear that the distributive provisions of a plan must comport with the terms of a subordination agreement to comply with the "not discriminate unfairly" requirement. Yet, the Bankruptcy Court held, in substance, that this legislative history was irrelevant.

40. Further, the Bankruptcy Court essentially made subordination agreements meaningless in a "cramdown" context, thereby disregarding basic tenets of bankruptcy law that recognizes subordination agreements are enforceable "under the discrimination and fair and equitable concepts of [section 1129(b)(1)]," *In re Consul Restaurant Corp.*, 146 B.R. 979, 988 (Bankr. D. Minn. 1992).

41. Indeed, the plain reading of Section 1129(b)(1) of the Bankruptcy Code in conjunction with the accompanying legislative history requires a determination of whether the distributions under the plan from the debtor do not unfairly discriminate *independent* of any additional recovery that a senior creditor would receive as a result of a subordination agreement.

42. Second, the Bankruptcy Court improperly applied the test under *In re Armstrong*, 348 B.R. at 121-122, (first proposed by Bankruptcy Judge Bruce Markell) in concluding that the discriminatory effect on the Senior Noteholders is immaterial. (Stein Declaration, Ex. A, at 30). In particular, the Bankruptcy Court never analyzed the comparative treatment of two creditor groups as required under the third-prong of *In re Armstrong*, 348 B.R. at 121-122, **before** giving effect to the reallocations that are required under the applicable subordination agreements – a comparison required by the legislative history and endorsed by Bankruptcy Judge Markell. *See* H.R. Rep. No. 95-595, at 416-417 (Sept. 8, 1977); Bruce A. Markell, "A New Perspective on

Unfair Discrimination in Chapter 11," 72 Am. Bankr. L.J. 227, 237 (1998) ("[T]he House Report appears to assume that evaluation of the plan treatment of subordinated claims should occur before the subordination is given effect.")

43.     Allowing the Bankruptcy Court's decision to stand without review by the Third Circuit of Appeals could lead to a system that encourages collusion among subordinated and non-senior creditors to cramdown a plan for the sole purpose of avoiding obligations under subordination agreements that otherwise would be enforced if a plan were confirmed with the consent of all creditor classes. *See* Prof. Dan Schechter, *Cramdown Plan May Violate Intercreditor Agreement, Even Though Consensual Plan Could Not Do So*, 2010 Comm. Fin. News. 36 (May 3, 2010) ("The debtor and a dissatisfied junior lienholder could easily work together so that the junior creditor's claim is classified as a "sweetheart" impaired claim; and under the cramdown rules, the debtor need only obtain one impaired consenting class. The junior, of course, has a strong incentive to tip the plan into a cramdown, in order to escape the effects of the subordination agreement . . ."). Further, this dangerous precedent threatens to stymie lending as creditors realize that subordination agreements are unenforceable in cramdown plans.

44.     There can be no doubt that the Bankruptcy Court's determination of the Unfair Discrimination Issue to allow for abrogation of subordination agreements is most definitely a matter of public interest mandating certification.

**D.     Immediate Appeal Of The Confirmation Order
Will Materially Advance The Debtors' Cases.**

45.     The Debtors and all parties in interest, including Appellants, deserve the finality that a decision by the Third Circuit of the Unfair Discrimination Issue offers. Courts have reasoned that where a bankruptcy court has made a ruling that will essentially determine the

result of future litigation, immediate review should be granted. *See Weber*, 484 F.3d at 158 (acknowledging that if adversely affected parties might "very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear[,]" immediate review is advisable). Furthermore, where a court is confident that litigants will continue to exercise their appellate rights, certification may "materially advance" litigation. *Id.* at 157-58. *See SemCrude*, 407 B.R. at 88 (certifying appeal to Third Circuit where the "Court ha[d] little doubt that this decision will be appealed"). Accordingly, certification here is warranted to provide all parties with closure at the end of a bankruptcy case that has lasted close to four years, most of them adversarial.

*  *  *

46.	Accordingly, the Unfair Discrimination Issue in the Confirmation Order satisfies three separate criteria, each of which independently mandates certification of the appeal to the Third Circuit.

## NOTICE

47.	Appellants have provided notice of this Motion to counsel to: (a) the Debtors; (b) the Official Committee of Unsecured Creditors; (c) Deutsche Bank Trust Company Americas; (d) Wilmington Trust Company; (e) Aurelius Capital Management, L.P.; (f) Brigade Capital Management, LLC; (g) Davidson Kempner Capital Management LLC; (h) Oaktree Capital Management, L.P.; (i) Angelo Gordon & Co., L.P.; (j) JPMorgan Chase Bank, NA; (k) Citadel Equity Fund, Ltd.; (l) Camden Asset Management LP; (m) EGI-TRB LLC; (n) TM Retirees; (o) Barclays Bank Plc; (p) Waterstone Capital Management L.P.; (q) certain directors and officers; and (r) the Office of the United States Trustee. Appellants respectfully submit that no further notice of the Motion is required.

## NO PRIOR REQUEST

48. No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, Appellants respectfully request that the Court enter an order (i) granting the Certification Motion substantially in the form of the proposed order attached hereto and (ii) granting such other and further relief that the Court deems just and proper.

Dated: July 23, 2012
Wilmington, Delaware

Respectfully submitted,

| | |
|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | BIFFERATO GENTILOTTI LLC |
| | /s/ Garvan F. McDaniel |
| David S. Rosner | Garvan F. McDaniel (I.D. No. 4167) |
| Sheron Korpus | 800 N. King Street, Plaza Level |
| Christine A. Montenegro | Wilmington, Delaware 19801 |
| Matthew B. Stein | 302-429-1900 |
| 1633 Broadway | |
| New York, New York 10019 | |
| 212-506-1700 | |

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

| | |
|---|---|
| McCARTER & ENGLISH, LLP | McCARTER & ENGLISH, LLP |
| David J. Adler | |
| 245 Park Avenue | /s/ Katharine L. Mayer |
| New York, New York 10167 | Katharine L. Mayer (I.D. No. 3758) |
| 212-609-6800 | Renaissance Centre |
| | 405 N. King Street |
| | Wilmington, Delaware 19801 |
| | 302-984-6300 |

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*