## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x   Chapter 11
In re:                                             :
                                                   :   Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                            :
                                                   :   Jointly Administered
            Debtors.                               :
                                                   :   Objections Due: August 15, 2012
                                                   :   @ 4:00 p.m. (ET)
-------------------------------------------------- x   Hearing Date: N/A
```

### FORTY-SECOND MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2012 THROUGH JUNE 30, 2012

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | June 1, 2012 through June 30, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $331,998.80    (80% of $414,998.50) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $ 11,058.19 |

This is a(n):    _x_ Monthly        ____ Interim        ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved* | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
|---|---|---|---|---|---|---|
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |
| 8/25/2010 | 5502 | 7/1/10 - 7/31/10 | $1,442,097.00 | $22,233.25 | $1,153,677.60 | $22,233.25 |
| 9/30/2010 | 5849 | 8/1/10 - 8/31/10 | $1,612,125.00 | $121,365.68 | $1,289,700.00 | $121,365.68 |
| 10/25/2010 | 6112 | 9/1/10 - 9/30/10 | $1,519,380.00 | $16,739.39 | $1,215,504.00 | $16,739.39 |
| 11/30/2010 | 6671 | 10/1/10 - 10/30/10 | $1,867,308.75 | $109,128.64 | $1,493,847.00 | $109,128.64 |
| 12/28/2010 | 7332 | 11/1/10 - 11/30/10 | $1,818,619.00 | $296,306.43 | $1,454,895.20 | $296,306.43 |
| 1/28/2011 | 7654 | 12/1/10 - 12/31/10 | $1,337,478.25 | $99,960.19 | $1,069,982.60 | $99,960.19 |
| 2/28/2011 | 8200 | 1/1/11 - 1/31/11 | $2,743,375.25 | $371,451.84 | $2,194,700.20 | $371,451.84 |
| 4/11/2011 | 8615 | 2/1/11 - 2/28/11 | $2,888,765.25 | $162,972.56 | $2,311,012.20 | $162,972.56 |
| 5/5/2011 | 8833 | 3/1/11 - 3/31/11 | $2,499,191.25 | $205,378.89 | $1,999,353.00 | $205,378.89 |
| 6/1/2011 | 9030 | 4/1/11 - 4/30/11 | $1,258,414.50 | $182,352.51 | $1,006,731.60 | $182,352.51 |
| 6/29/2011 | 9381 | 5/1/11 - 5/31/11 | $965,916.25 | $85,787.61 | $772,733.00 | $85,787.61 |
| 7/28/2011 | 9561 | 6/1/11 - 6/30/11 | $728,870.75 | $64,140.29 | $583,096.60 | $64,140.29 |
| 8/25/2011 | 9701 | 7/1/11 - 7/31/11 | $456,759.50 | $60,498.38 | $365,407.60 | $60,498.38 |

| 9/28/2011 | 9840 | 8/1/11 - 8/31/11 | $616,725.50 | $85,166.86 | $493,380.40 | $85,166.86 |
| 10/25/11 | 10064 | 9/1/11 - 9/30/11 | $450,088.50 | $56,800.73 | $360,070.80 | $56,800.73 |
| 11/23/11 | 10291 | 10/1/11 - 10/31/11 | $402,271.75 | $62,868.51 | $321,774.20 | $62,868.51 |
| 12/27/11 | 10511 | 11/1/11 - 11/30/11 | $676,518.00 | $34,425.04 | $541,214.40 | $34,425.04 |
| 1/31/12 | 10772 | 12/1/11 - 12/31/11 | $452,819.75 | $38,756.34 | $362,255.80 | $38,756.34 |
| 2/27/12 | 11023 | 1/1/12 - 1/31/12 | $547,104.00 | $9,615.03 | $437,683.20 | $9,615.03 |
| 3/27/12 | 11240 | 2/1/12 - 2/29/12 | $644,199.25 | $9,936.28 | $515,420.40 | $9,936.28 |
| 4/26/12 | 11476 | 3/1/12 - 3/31/12 | $592,148.75 | $28,148.76 | $473,719.00 | $28,148.76 |
| 5/25/12 | 11695 | 4/1/12 - 4/30/12 | $315,426.75 | $12,357.38 | $252,341.40 | $12,357.38 |
| 6/26/12 | 11896 | 5/1/12 - 5/31/12 | $337,692.50 | $4,191.40 | $270,154.00 | $4,191.40 |

*Monthly approved fees are subject to holdbacks which were to be reviewed by the Bankruptcy Court following the completion of each quarterly fee application.  Such holdbacks have been reviewed and approved for payment by the Bankruptcy Court as set forth below:

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Amount Approved |
|---|---|---|---|
| 1 | December 18, 2008 through February 28, 2009 | December 14, 2009 | $326,196.76 |
| 2 | March 1, 2009 through May 31, 2009 | May 18, 2010 | 344,7890.61 |
| 3 | June 1, 2009 through August 31, 2009 | October 22, 2010 | $707,644.89 |
| 4 | September 1, 2009 through November 30, 2009 | August 24, 2011 | $883,274.78 |
| 5 | December 1, 2009 through February 28, 2010 | October 19, 2011 | $966,056.61 |
| 6 | March 1, 2010 through May 31, 2010 | December 12, 2011 | $737,989.71 |
| 7 | June 1, 2010 through August 31, 2010 | February 15, 2012 | $846,680.80 |
| 8 | September 1, 2010 through November 30, 2010 | April 24, 2012 | $1,024,183.85 |
| 9 | December 1, 2010 through February 28, 2011 | July 11, 2012 | $1,376,206.20 |
| 10 | March 1, 2011 through May 31, 2011 | July 11, 2012 | $915,810.94 |

# TRIBUNE COMPANY, et al.

## SUMMARY OF HOURS

### June 1, 2012 through June 30, 2012

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $995 | 53.30 | 52,038.50 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 925 | 95.00 | 86,718.75 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 875 | 7.90 | 6,912.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 745 | 54.10 | 40,304.50 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 745 | 65.20 | 47,382.00 |
| Scott Berson (2004) | Corporate | 1996 (NY) | 745 | 16.10 | 11,994.50 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 695 | 57.30 | 39,823.50 |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 665 | 27.20 | 18,088.00 |
| James A. Stenger | Communications & Technology | 1978 (DC) | 645 | 11.00 | 7,095.00 |
| | | | | | |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2012 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Associate:** | | | | | |
| Robert M. Kirby | Litigation | 2008 (NY) | 595 | 2.60 | 1,547.00 |
| Caroline Pignatelli | Litigation | 2007 (NJ) 2008 (NY) | 595 | 3.10 | 1,844.50 |
| Kimberly Zafran | Litigation | 2009 (NY) | 565 | 10.90 | 6,158.50 |
| Eric Daucher | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 19.00 | 9,405.00 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 495 | 99.20 | 48,386.25 |
| Michael Distefano | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 40.00 | 17,400.00 |
| Jessica Marrero | Bankruptcy & Financial Restructuring | 2011 (NY) | 435 | 8.20 | 3,567.00 |
| | | | | | |
| **Law Clerks:** | | | | | |
| Sara Nichols | n/a | n/a | 285 | 8.10 | 2,308.50 |
| | | | | | |
| **Paraprofessional:** | | | | | |
| Lori Moloney | Litigation | n/a | 330 | 5.40 | 1,782.00 |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 295 | 27.80 | 8,201.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 295 | 13.70 | 4,041.50 |
| | | | | | |
| **TOTAL:** | | | | 625.10 | $414,998.50 |

BLENDED RATE:    $670.39

---

\* Includes year elected Partner at firm or joined firm as Partner.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ----------------------------------------------------------- | x | Chapter 11 |
| In re: | : | |
| | : | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Objections Due: August 15, 2012 @ 4:00 p.m.(ET) |
| ----------------------------------------------------------- | x | Hearing Date: N/A |

**FORTY-SECOND MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP,**
**AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**JUNE 1, 2012 THROUGH JUNE 30, 2012**

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the

"Debtors"), hereby submits this Application (the "Application") for approval and allowance of

compensation for services rendered in the amount of $414,998.50 (80% of which equals

$331,998.80) and reimbursement of expenses incurred in the amount of $11,058.19 during the

period commencing June 1, 2012 through and including June 30, 2012 (the "Application

Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals and Committee Members

Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the

Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for relief requested herein are Sections 105(a), 330, 331 and 1103(a) of the Bankruptcy Code.

## BACKGROUND

3. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On December 18, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

6. On February 20, 2009, the Bankruptcy Court authorized the employment and retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7. On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth N. Klee, Esquire as Examiner in these Chapter 11 cases.

8.     Plan confirmation hearings for both the DCL Plan and the Noteholder Plan[1] commenced on March 7, 2011 and continued daily through March 18, 2011. The next phase of the confirmation hearings -- which included rebuttal witnesses, non-proponent objections to the DCL and the Noteholder Plans and certain legal arguments -- resumed on April 12, 2011 and concluded on April 14, 2011. Closing confirmation arguments were held on June 27, 2011.

9.     On October 31, 2011, the Court entered its Opinion on Confirmation denying both the DCL Plan and the Noteholder Plan. The Opinion noted, however, that should the proponents of both the DCL Plan and the Noteholder Plan seek to address the flaws identified by the Court in the Opinion and resubmit otherwise confirmable plans, the Court would be required to select one plan to confirm. See Section 1129(c). The Court stated that, given those options, it would select the DCL Plan.

10.     On April 17, 2012, the proponents of the DCL Plan filed their Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (the "Fourth Amended DCL Plan"). A hearing on confirmation of the Fourth Amended DCL Plan was held on June 7, 2012 and concluded on June 8, 2012.

11.     On July 23, 2012, the Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries Proposed by the Debtors, the

---

[1]     The DCL Plan is supported by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, Angelo, Gordon & Co., and JPMorgan Chase Bank (the "DCL Plan Proponents"). The Noteholder Plan is supported by Aurelius Capital Management, Deutsche Bank Trust Company Americas, Law Debenture Trust Company of New York and Wilmington Trust Company (the "Noteholder Plan Proponents").

3

Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo

Gordon & Co., L.P., and JPMorgan Chase Bank, N.A.

## COMPENSATION PAID AND ITS SOURCES

12.    All services for which compensation is requested by Chadbourne were performed

for or on behalf of the Committee.

13.    During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

14.    The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2

(the "Guidelines"), and the Compensation Order.

## SUMMARY OF SERVICES

15.    As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $414,998.50.  The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

16.    The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

A.    **Bankruptcy General (Matter 002)**

Fees: $11,936.00        Total Hours:    24.20

17.    During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these Chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

18.    Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist

attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**    **Committee Meetings (Matter 003)**

    Fees:  $4,833.00        Total Hours:    8.20

    19.    Regular meetings of the Committee (the "Committee Meetings") were held during the Application Period to review the numerous issues regarding the administration of the Debtors' Chapter 11 cases and keep the Committee apprised and updated with respect to key issues.   In particular, the Committee and its professionals continued to review and address pending motions, litigation matters, and provide updates and discuss strategies on the plan confirmation proceedings.

    20.    Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' Chapter 11 cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

Fees:  $4,019.50          Total Hours:   6.10

21.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.**    **Business Operations (Matter 007)**

Fees:  $12,746.00          Total Hours:   18.60

22.     During the Application Period, professionals from Chadbourne's Communications Media and Technology ("CMT") Group continued their efforts to facilitate the process of obtaining FCC approval of the Debtors' FCC exit applications.  To that end, Chadbourne's CMT attorneys attended a meeting with the FCC staff to update the FCC on the status of the Debtors' Chapter 11 cases.  Chadbourne also performed research related to, as well as further revisions to the FCC exit applications.

23.     In addition, Chadbourne also continued to review weekly operations and financial reports prepared by the Committee's financial advisors.

**E.**    **Claims Administration/Bar Date (Matter 009)**

Fees:  $10,240.00          Total Hours:   23.00

24.     During the Application Period, Chadbourne attorneys expended further time in reviewing the Debtors' efforts to settle certain claims brought against the Debtors and to review

and update the Committee with respect to a number of objections filed by the Debtors.  In

particular, on the claim settlement side, work included review and analysis of proposed

settlements with Buena Vista Television and AT&T Inc.  Chadbourne preformed a review of

the facts and details of each proposed settlement and consulted with the Committee's financial

advisors regarding their analysis of each settlement.  Chadbourne then summarized its analyses

and recommendations in a memorandum to the Committee.  A similar analytic approach was

taken by Chadbourne with respect to multiple omnibus objections that were filed during this

period. Ultimately, the Committee agreed with the approaches recommended with respect to all

claim matters raised with the Committee during this period.

**F.**     **Fee/Retention Applications (Matter 010)**

   Fees:   $21,756.00          Total Hours:  47.20

   25.     Chadbourne expended further time during the Application Period in compliance

with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing

Chadbourne's forty-first monthly fee application.

   26.     During the Application Period, Chadbourne spent considerable time reviewing

and analyzing the Fee Examiner's preliminary report concerning Chadbourne's eleventh interim

fee application and performed related research.  Chadbourne drafted, reviewed and revised a

response to address the concerns raised in the Fee Examiner's report.  In addition, Chadbourne

reviewed issues raised by the Fee Examiner in connection with Chadbourne's response to the

Fee Examiner's preliminary report on Chadbourne's tenth interim fee application and

corresponded with the Fee Examiner to address and resolve those concerns.

8

27.    In continuance of an ongoing process, Chadbourne also expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of related spending and monthly fee caps.

## G.    Employee Issues (Matter 014)

Fees:  $11,503.50          Total Hours:   21.10

28.    During the Application Period, Chadbourne attorneys were engaged in reviewing a motion filed by former Tribune officers Harry Amsden, Robert Gremillion and David D. Williams (the "Former Officers") requesting that certain "earmarked" (but not earned) 2010 MIP awards be deposited by the Debtors into a rabbi trust for the benefit of the Former Officers.  Consistent with the instructions of the Committee, Chadbourne prepared and filed an objection to the Former Officers' motion.

## H.    General Litigation (Matter 017)

Fees:  $1,080.50          Total Hours:   1.70

29.    During the Application Period, individual defendants (the "D&O Defendants") named in the Committee's complaint against shareholders and other third parties in connection with the LBO/ESOP transaction ("*FitzSimons*") and the Preference Actions submitted their quarterly report to the Committee of fees and costs submitted for payment to the Debtors' D&O liability insurance providers (the "D&O Insurance Providers").  These reports were required by the Court's March 29, 2011 Order modifying the automatic stay to allow the D&O Defendants payment and advancement  of defense costs, fees, and expenses by the D&O Insurance

9

Providers. Chadbourne reviewed the report and prepared a summary analysis thereon for the Committee's review.

**I.      Travel (Matter 018)**

    Fees:  $4,061.00          Total Hours:  10.60

    30.      During the Application Period, Chadbourne travelled to Wilmington, Delaware to attend the hearing on plan confirmation at the Bankruptcy Court.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**J.      Review of Pre-Petition Financings (Matter 019)**

    Fees:  $32,351.00          Total Hours:  51.80

    31.      Pursuant to the confirmation order to facilitate the implementation of the Fourth Amended DCL Plan, the Committee and Litigation Trustee entered into an agreement  (the "Privilege Transfer Agreement") where the Committee will share with the Trustee documents and information relevant to the claims the Trustee will be pursuing (*FitzSimons* and the claims against the financial advisors), including privileged work product reflecting the Committee's assessment of the LBO transaction and the claims arising from it. The Debtors will also be entering into a similar agreement with the Litigation Trustee.  In connection therewith during the Application Period, Chadbourne's team of litigation professionals began preparing for the process of the document collection and review.  Chadbourne reviewed and analyzed the terms of the Privilege Transfer Agreement, discussed procedures for the document review and prepared drafts of a related protocol.

**K.**     **Shareholder Claims (Matter 020)**

      Fees:   $19,608.50          Total Hours:  27.30

    32.     During the Application Period, Chadbourne attorneys continued to be engaged in reviewing and responding to developments in the multidistrict litigation which consolidated and transferred the state law constructive fraudulent conveyance lawsuits filed by the Retirees[2] and the Noteholders[3] to the Southern District of New York (*In re Tribune Company Fraudulent Conveyance Litigation*), Master Case No. 12-2296 (S.D.N.Y) (the "MDL Actions").

    33.     During this time, Chadbourne attorneys were engaged in reviewing and analyzing a possible settlement offer that might be offered to defendants in the MDL Actions. Chadbourne and the Committee's special counsel participated in discussions regarding their analysis of the proposal and reviewed a related memorandum prepared by special counsel for the Committee's review and consideration.

---

[2]    The Retiree plaintiffs are retirees of The Times Mirror Company, Tribune Company, and/or one or more of 110 affiliates or subsidiaries of Tribune Company.

[3]    The named Noteholder plaintiffs are Deutsche Bank Trust Company Americas, in its capacity as successor indenture trustee for certain series of Senior Notes, Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes, and Wilmington Trust Company, in its capacity as successor indenture trustee for the PHONES Notes.

L.    **Plan Litigation (Matter 021)**

Fees:  $280,863.50          Total Hours:  385.30

34.    During the Application Period, Chadbourne, on behalf of the Committee continued to be substantially engaged in preparing for, and participating in, the hearing on confirmation of the Fourth Amended DCL Plan.  Chadbourne attorneys participated in frequent meetings and discussions with the Committee's co-counsel and the DCL Plan Proponents regarding hearing strategy.

35.    During this pre-confirmation hearing period, Chadbourne attorneys participated in continuous discussions with the DCL Plan Proponents to resolve the various issues raised in the plan objections.  These discussions often included the objecting parties in an effort to reach consensual resolution prior to the confirmation hearing.  Accordingly, Chadbourne attorneys continued to research, draft and comment on additional modifications to the Fourth Amended DCL Plan and related documents.  In addition, Chadbourne worked extensively drafting or amending certain Litigation Trust documents.

36.    Chadbourne attended and participated in the first day of the hearing on confirmation of the Fourth Amended DCL Plan where argument commenced with respect to the unresolved objections to confirmation.  Specifically, the Court heard argument regarding the first five issues on the agenda: (i) classification of the swap claim; (ii) classification of the Senior Indenture Trustees' fee claims; (iii) classification of the tendering PHONES Noteholders' claims and the related motion for reconsideration; (iv) request of Wilmington Trust and EGI-TRB for the establishment of reserves pending potential appeals; and (v) whether certain former employees who were no longer employed as of the Petition Date

12

should be entitled to administrative priority for indemnification claims. Chadbourne, on behalf of the Committee, made arguments in support of the DCL Plan with respect to the fourth and fifth issues described above. Many of the technical issues related to the Litigation Trust were resolved at the hearing.

37.     Chadbourne attorneys attended and participated in the second day of the confirmation hearing where the Court heard argument with respect to the few remaining unresolved objections, including: (i) specific issues with language in the DCL Plan relating to the impact of confirmation on the pending multi-district litigation proceeding; (ii) the scope and amount of attorneys' fees for Litigation Trust Advisory Board members; and (iii) specific matters concerning the transfer of privileges from the Debtors and the Committee to the Litigation Trust. After oral arguments concluded, the parties were given time to meet and confer. During this time, each of the day's issues were resolved, subject to agreement on finalized documents. At the end of the proceeding, Judge Carey informed the parties that he intended to draft a written opinion on the five objections that were raised during the first day of hearings.

38.     Following the confirmation hearing, Chadbourne attorneys expended time reviewing and commenting on a draft agreement between the Committee and Litigation Trustee which provided that the Committee would share documents and information relevant to certain litigation claims with the Litigation Trustee. In that regard, considerable time was spent reviewing and responding to a related dispute on the right of the Litigation Trustee to take depositions and seek discovery of Committee members and Committee professionals, by subpoena, regardless of whether the Committee satisfied its obligations in accordance with the

Litigation Trust Agreement.  During this period, Chadbourne attorneys also continued to review, revise and comment on further plan amendments put forth among all parties in efforts to resolve the remaining disputes.   In connection therewith, Chadbourne participated in two telephonic status conferences with the Court where the progress of the remaining issues was addressed.

## ACTUAL AND NECESSARY EXPENSES

39.    A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $11,058.19 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

40.    Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

41.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis

and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

42.     With respect to court reporter fees, Chadbourne utilized the services of an outside vendor (TSG Reporting) for court reporting/transcript services in connection with the June 7 and 8, 2012 hearing on confirmation of the Fourth Amended DCL Plan.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

43.     With respect to outside copy services, Chadbourne utilized the services of an outside vendor (Perfect Imaging & Document Management) for copying of various relevant documents in preparation for the two-day hearing on confirmation of the Fourth Amended DCL Plan.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

44.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

45.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

46.     Attorneys and paraprofessionals of Chadbourne have expended a total of 625.10 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chadbourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $414,998.50.

47.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

48.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period June 1, 2012 through June 30, 2012:  (a) authorizing compensation in the amount of $414,998.50 (80% of which equals $331,998.50 for professional services rendered and reimbursement of expenses incurred in connection therewith in the amount of $11,058.19 for a total of $426,056.69; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   July 26, 2012
         New York, New York

                                        **CHADBOURNE & PARKE LLP**

                                        By: _____
                                            Douglas E. Deutsch
                                            (A Member of the Firm)

                                        Chadbourne & Parke LLP
                                        30 Rockefeller Plaza
                                        New York, New York  10112
                                        (212) 408-5100

                                        Co-Counsel to The Official Committee of
                                        Unsecured Tribune Company, et al.

**VERIFICATION**

STATE OF NEW YORK    :
                              : ss:
COUNTY OF NEW YORK  :

      Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

      (a)      I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 1997.

      (b)      I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

      (c)      I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
26th day of July 2012

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2014

CPAM: 4803467.3