**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Proposed Hearing Date: August 7, 2012 at 10:00 a.m. (ET)<br>Proposed Objection Deadline: August 3, 2012 at 4:00 p.m. (ET) |

# DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO (A) ENTER INTO EXPENSE LETTER IN CONNECTION WITH EXIT FINANCING AND (B) PAY CERTAIN FEES AND EXPENSES AND FURNISH CERTAIN INDEMNITIES THEREUNDER

The debtors and debtors in possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

1

motion (the "Motion"), pursuant to sections 363(b) and 503(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1 of the Local Rules of Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to enter an expense letter (the "Expense Letter") with Bank of America, N.A. ("BofA") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), substantially in the form attached hereto as Exhibit B, in connection with the Debtors' post-Effective Date exit financing process and to meet all obligations thereunder, including, but not limited to, paying certain expenses and furnishing certain indemnities in connection therewith. In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 43, 2333].

3. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2

4. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 363(b) and 503(b)(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004(h) and Local Rule 2002-1.

## BACKGROUND TO THE MOTION

*Confirmation of the Plan*

5. On July 13, 2012, the Bankruptcy Court entered the Memorandum Overruling Objections to Confirmation of the Fourth Amended Plan and its Subsidiaries and Denying Clarification Motion [Docket No. 12033] (the "Memorandum") and the Order Overruling Plan Objections and Denying the Clarification Motion [Docket No. 12034], pursuant to which, in relevant part, the Bankruptcy Court overruled all unresolved objections to the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. (the "Plan") and provided that the Plan will be confirmed, subject to submission of final revisions to the Plan consistent with various resolutions that were made either by agreement or consistent with the Memorandum.

6. On July 23, 2012, the Bankruptcy Court entered the Order Confirming Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P., and JPMorgan Chase Bank, N.A. [Docket No. 12074] (the

"Confirmation Order"). As a result, the Debtors' chapter 11 cases are now near conclusion, and the Debtors are preparing to emerge from bankruptcy protection.

*Exit Financing*

7. The Plan contemplates that the Debtors may, in their discretion, enter into a post-Effective Date Exit Facility.[3] Specifically, the Plan provides that, on the Effective Date, the Debtors and Reorganized Debtors are authorized, but not required, to enter into the Exit Facility Credit Agreement and enter into any other documents or agreements in connection with the Exit Facility.[4] See Plan at § 5.10. A term sheet describing the proposed terms of the Exit Facility, filed as Exhibit 5.10 to the Plan, provides that the Exit Facility will be "a new securitization, asset-based loan facility or other revolving credit facility providing for loans and other extensions of credit in an aggregate amount up to $300 million, with a letter of credit sub-facility of up to $100 million." Id. at Ex. 5.10.[5]

*The Expense Letter*

8. Over the last several weeks, the Debtors and their advisors have been in contact with numerous financial institutions in the hope of procuring the most economically reasonable

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[4] This Motion is not intended to modify or supersede any of the terms of the Plan, including any exhibits or related documents. In the event of any conflict between this Motion and the Plan, any exhibits thereto, or any related documents, then the Plan, the relevant exhibit thereto, or the relevant documents shall be controlling.

[5] As an additional source of post-Effective Date funds, the Plan also contemplates a facility separate and apart from the Exit Facility. Under the Plan, numerous Holders of Allowed Senior Loan Claims/Senior Guaranty Claims, electing Holders of Allowed Senior Notes Claims, and electing Holders of Allowed Other Parent Claims are entitled to receive strips of consideration, which include the New Senior Secured Term Loan. See Plan at Art. III. At the Debtors' and the Creditor Proponents' option, though, to the extent that replacement financing is available on commercially reasonable terms, such Holders may instead receive Cash in lieu of all or part of the New Senior Secured Term Loan. Id. at § 5.6.2. A term sheet describing the proposed terms of the New Senior Secured Term Loan, filed as Exhibit 5.6 to the Plan, provides that the New Senior Secured Term Loan, if entered into, will be a senior secured term loan facility with a single tranche of term loans in an amount not to exceed $1.1 billion. Id. at Ex. 5.6. The Debtors are currently in discussions with potential lenders and arrangers for a suitable replacement facility for the New Senior Secured Term Loan.

post-Effective Date Exit Financing. As a result of these discussions, BofA has indicated an interest in lending a substantial portion of the Exit Facility, and Merrill Lynch has proposed to act as lead arranger and book manager for the Exit Facility and to use commercially reasonable efforts to form a syndicate of financial institutions for the Exit Facility. In order to reach a definitive agreement with BofA and Merrill Lynch, however, BofA and Merrill Lynch have informed the Debtors that they will need to conduct diligence and related activities. To that end, the parties have agreed to enter into the Expense Letter, subject to the Bankruptcy Court's approval. Pursuant to the terms of the Expense Letter, in exchange for BofA's and Merrill Lynch's efforts, the Debtors have agreed to (a) reimburse BofA and Merrill Lynch for all reasonable, documented out-of-pocket fees and expenses in an amount not to exceed $225,000; and (b) provide indemnification to BofA and Merrill Lynch, with a carve-out for bad faith, gross negligence or willful misconduct.

## **RELIEF REQUESTED**

9. By this Motion, the Debtors respectfully request that the Bankruptcy Court authorize the Debtors to enter into the Expense Letter and, in connection therewith, pay the expenses of and furnish certain indemnities to BofA and Merrill Lynch relating to the work contemplated by the Expense Letter as allowed administrative expenses. At this time, the Debtors are not seeking approval of a commitment letter in connection with the Exit Facility. However, the Debtors anticipate that in the near future they will move the Bankruptcy Court for the authority to incur costs and other obligations in connection with a commitment letter and/or related fee letters.

10. By entering into, and meeting their obligations under, the Expense Letter, the Debtors will be able to proceed with the arrangement of the Exit Facility contemplated by the

Plan. The Debtors believe that the relief requested herein is an appropriate exercise of their business judgment and is in the best interests of their estates.

## BASIS FOR RELIEF REQUESTED

*Entry into the Expense Letter Is a Sound Exercise of the Debtors' Business Judgment.*

11.   Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in this circuit interpreting section 363(b) of the Bankruptcy Code have generally approved the use, sale, or lease of estate property out of the ordinary course of business where there exists a sound business justification for the proposed transaction. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" test for the use of property under section 363). To determine whether the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." In re Exide Techs., Inc., 340 B.R. 222, 239 (Bankr. D. Del. 2006).

12.   Once a debtor articulates a valid business justification, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule shields a debtor's management from judicial second-guessing, and mandates that a court approve a debtor's business decision unless

6

that decision is a product of bad faith or gross abuse of discretion. See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986); see also In re Bridgeport Holdings, Inc., 388 B.R. 548, 567 (Bankr. D. Del. 2008). Thus, if a debtor's decisions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code.

13. The Bankruptcy Court routinely authorizes debtors to enter into arrangement agreements, pay fees and expenses and grant indemnities thereunder in connection with efforts to locate exit financing as a sound exercise of a debtor's business judgment. See, e.g., In re AbitibiBowater Inc., No. 09-11296 (Bankr. D. Del. Jul. 14, 2010) (order authorizing entry into fee letter, reimbursement of expenses and indemnification); In re Cooper-Standard, No. 09-12743 (Bankr. D. Del. Feb 18, 2010) (order authorizing entry into fee letter and reimbursement of expenses for proposed exit financings); In re Smurfit-Stone Container Corp., No. 09-10235 (Bankr. D. Del. Jan. 14, 2010) (order authorizing entry into exit term loan facility engagement and work fee letter and fee letter); In re Spansion Inc., No. 09-10690 (Bankr. D. Del. Jan. 7, 2010) (order authorizing entry into a proposal letter for exit financing and a mandate letter); In re Buffets Holdings, Inc., No. 08-10141 (Bankr. D. Del. Mar. 4, 2009) (order approving the entry into exit facility engagement letter and to authorizing payment of certain fees and expenses).

14. Here, the Debtors' decision to enter into the Expense Letter is more than justified. After examining their options, engaging in discussions with potential lenders and arrangers, and in consultation with their financial advisors, the Debtors selected BofA and Merrill Lynch as prospective lender and lead arranger, respectively, for the Exit Facility. The Debtors, BofA and Merrill Lynch negotiated the Expense Letter at arm's-length and in good faith, with the advice of their respective counsel and financial advisors. In addition, BofA and Merrill Lynch have agreed

to cap their expenses at a reasonable amount, especially in light of the size of the proposed Exit Facility. Entry into the Expense Letter with BofA and Merrill Lynch is an appropriate and reasonable first step in the Debtors' exit financing process.

***The Terms of the Expense Letter Are Reasonable and Appropriate under the Circumstances and are Necessary Costs of Preserving the Estates.***

15.     The terms of the Expense Letter are fair and reasonable under the circumstances. The amounts to be paid to BofA and Merrill Lynch will appropriately reimburse them for their diligence expenses in connection with the Exit Facility, are well within the market standard for such arrangements, and are appropriately capped. Furthermore, such cap is a modest fraction of the proposed Exit Facility of up to $300 million. Similarly, the indemnities to be provided to BofA and Merrill Lynch in connection with the Expense Letter appropriately protect BofA and Merrill Lynch with respect to their services under the Expense Letter. Importantly, the Debtors have obtained an express carve out for bad faith, gross negligence and willful misconduct. Finally, the Debtors believe that BofA and Merrill Lynch would not have entered into the Expense Letter absent the indemnification provision.

16.     The reimbursement of expenses and the provision of indemnities similar to the ones set forth in the Expense Letter are customary for such arrangements in the context of exit financing. See, e.g., AbitibiBowater, No. 09-11296 (Bankr. D. Del. Jul. 14, 2010) (approving an aggregate work fee of $1.2 million, reimbursement of fees and expenses with an initial deposit of $300,000 and indemnification); Cooper-Standard, No. 09-12743 (Bankr. D. Del. Feb 18, 2010) (approving initial deposit of $225,000 and further deposits as may be necessary to cover out-of-pocket fees and expenses for exit financing services); Smurfit-Stone, No. 09-10235 (Bankr. D. Del. Jan. 14, 2010) (approving entry into arrangement fee letter to pay an arrangement fee based

on the anticipated $1.2 billion exit financing loan and certain nonrefundable fees and to reimburse actual, reasonable out-of-pocket expenses); Spansion, No. 09-10690 (Bankr. D. Del. Jan. 7, 2010) (approving payment up to $250,000 for actual, reasonable due diligence and documentation fees and expenses under mandate letter); Buffets Holdings, No. 08-10141 (Bankr. D. Del. Mar. 4, 2009) (approving payment of a non-refundable $1,000,000 structuring fee and reasonable out-of-pocket expenses for exit financing services).

17.  Moreover, the Debtors submit that the expenses and indemnities to be provided to BofA and Merrill Lynch under the Expense Letter appropriately constitute "actual necessary costs and expenses of preserving the estates" under section 503(b)(1)(A) of the Bankruptcy Code. The incurrence of such obligations in connection with the Expense Letter is necessary to the Debtors' efforts to obtain post-Effective Date financing. The Debtors therefore submit that their obligations under the Expense Letter should be awarded administrative expense status under section 503(b)(1) of the Bankruptcy Code as actual necessary costs and expenses of preserving their estates.

18.  Because the obligations to be incurred by the Debtors under the Expense Letter are fair, reasonable and necessary to furthering the post-Effective Date financing process, the Debtors seek authorization to incur these obligations as administrative expenses.

## CONCLUSION

19.  Entry into the Expense Letter is a necessary and appropriate first step in the process to securing the Exit Financing contemplated by the Plan. The terms of the Expense Letter are the product of good faith, arm's-length negotiations and constitute reasonable and appropriate compensation for the institutions' services under the circumstances, and are necessary to preserving the estates. For these reasons, the Debtors have determined, in the

exercise of their sound business judgment, that entry into the Expense Letter and incurrence of the obligations thereunder is in the best interests of the estates and should be approved.

### WAIVER OF BANKRUPTCY RULE 6004(h)

20. The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise." As set forth herein, the relief requested above is essential for the post-Effective Date financing process, and any delay with respect to the services of BofA and Merrill Lynch could be detrimental to that process. Accordingly, the Debtors submit that cause exists to justify a waiver of the stay imposed by Bankruptcy Rule 6004(h).

### NOTICE

21. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for Debtors' post-petition loan facility; (v) counsel for BofA and Merrill Lynch; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter an order (i) authorizing the Debtors to enter into the Expense Letter and to meet all obligations set forth therein and (ii) granting such other and further relief as the Bankruptcy Court deems just and proper.

Dated: Wilmington, Delaware
      July 27, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jessica C.K. Boelter
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-0199
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: __/s/ J. Kate Stickles__
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION