# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: September 5, 2012 at 1:00 p.m. ET**<br>**Response Deadline:  August 29, 2012 at 4:00 p.m. ET** |

## DEBTORS' FIFTY-SEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTIONS 502(b) AND 558 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003 AND 3007, AND LOCAL RULE 3007-1

### ("EMPLOYMENT-RELATED CLAIMS")

> **Claimants receiving this Objection should locate their name(s) and claim number(s) on Schedule 1 attached hereto to learn which of the lettered exhibits, Exhibit A, Exhibit B, or Exhibit C contains the grounds for the objection pertaining to their claim(s) and the relief being sought by the Debtors.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

> **The relief sought herein is without prejudice to the Debtors' rights to pursue further substantive or non-substantive objections to the claims listed on Exhibit A, Exhibit B, or Exhibit C to this Objection.**

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel, submit this fifty-seventh omnibus objection (the "Objection"), which Objection covers each of the claims set forth on Exhibit A, Exhibit B, and Exhibit C attached hereto and to the proposed form of order submitted herewith (the "Disputed Claims"), pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  By this Objection, the Debtors request the entry of an order disallowing and expunging each of the Disputed Claims, as indicated in further detail below.  In support of the Objection, the Debtors submit the declaration of Michael Bourgon, Vice President of Tribune Company (the "Bourgon Declaration"), a copy of which is attached hereto as Exhibit D.  In further support of the Objection, the Debtors respectfully state as follows:

### STATUS OF THE CASE AND JURISDICTION

1.    On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors comprise 110 entities.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  (Docket Nos. 43, 2333).

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee").

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.

## FACTUAL BACKGROUND TO THE DEBTORS' CLAIMS PROCESS

6.      On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs (Docket Nos. 567-789), which were subsequently amended on April 13, 2009 (Docket Nos. 894-957), June 12, 2009 (Docket Nos. 1343-1453), March 2, 2010 (Docket Nos. 3548-3599), May 13, 2010 (Docket No. 4388), and January 28, 2011 (Docket Nos. 7661-7671) (collectively, the "Schedules").[3]

7.      On March 25, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising

---

[3] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009 (CNLBC Docket Nos. 8 and 9), which were subsequently amended on December 9, 2009 (Docket No. 2779), May 13, 2010 (Docket No 4389), and January 28, 2011 (Docket No. 7665).

on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.[4]

8.      Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order.  In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the Wall Street Journal and the New York Times and in the Chicago Tribune and Los Angeles Times on May 12, 2009.

9.      To date, approximately 7,136 Proofs of Claim have been filed in these chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

## RELIEF REQUESTED

10.      By this Objection, the Debtors seek entry of an order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003 and 3007, and Local Rule 3007-1, granting the following relief with respect to the Disputed Claims:

(a) disallowing and expunging in their entirety, upon the occurrence of effective date of the confirmed Fourth Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries (as the same may be amended or modified, the "Plan"),[5] each of the Disputed Claims identified on Exhibit A (the "Assumed Employee Benefit Plan Claims") on the basis that each of such claims is a protective claim filed on account of a qualified pension and/or benefit plan that will be assumed pursuant to the Debtors' confirmed Plan, and amounts due to the claimants, if any, will continue to

---

[4]  The Bar Date for the filing of Proofs of Claim against Tribune CNLBC, LLC was July 26, 2010.  See Order Establishing Bar Date for Filing Proofs of Claim in the Tribune CNLBC, LLC Bankruptcy Case and Approving the Form and Manner of Notice Thereof entered on June 7, 2010 (Docket No. 4709).

[5]  On July 23, 2012, the Court entered an order confirming the Fourth Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries Proposed by the Debtors, the Official Committee of Unsecured Creditors, Oaktree Capital Management, L.P., and Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. (Docket No. 12074).

be paid by the applicable pension and/or benefit plan, as set forth on <u>Exhibit A</u> for each respective claim and in ¶¶ 13-16 of this Objection;

(b) disallowing and expunging in their entirety each of the Disputed Claims identified on <u>Exhibit B</u> (the "<u>No Liability Benefit Continuation Claims</u>") on the basis that, after reconciling each of the No Liability Benefit Continuation Claims and supporting materials against their books and records, the Debtors have determined that to the extent the claimants were eligible for and elected to receive benefit continuation, those benefits were provided in the ordinary course of business and no further amounts are due and owing on account of these claims by any Debtor, as set forth on <u>Exhibit B</u> for each respective claim and in ¶¶ 17-19 of this Objection;

(c) disallowing and expunging in their entirety each of the Disputed Claims identified on <u>Exhibit C</u> (the "<u>No Liability Employee Claims</u>") on the basis that, after reconciling each of the No Liability Employee Claims and supporting materials against their books and records, the Debtors have determined that they are not liable with respect to the claims identified in <u>Exhibit C</u> for the reasons specified on <u>Exhibit C</u> for each respective claim and in ¶¶ 20-21 of this Objection; and

(d) authorizing the Claims Agent to modify each of the Disputed Claims on the Claims Register in accordance with the proposed Order.

11.     This Objection complies with Local Rule 3007-1 in all respects.

## **BASIS FOR OBJECTION**

12.     This Objection is based on section 502(b)(1) of the Bankruptcy Code,

which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>> (1)     such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

Code." <u>Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.</u>, 549 U.S. 443, 450-51 (2007)

(citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000)).  A claim against the bankruptcy

estate, therefore, "will not be allowed in a bankruptcy proceeding if the same claim would not be

enforceable against the debtor outside of bankruptcy."  In re Combustion Eng'g, Inc., 391 F.3d

190, 245 (3d Cir. 2004).  In proceedings to determine whether a claim is enforceable against the

estate, "[t]he estate shall have the benefit of any defense available to the debtor as against any

entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other

personal defenses" pursuant to section 558 of the Bankruptcy Code.  See 11 U.S.C. § 558.

**A.  Assumed Employee Benefit Plan Claims**

13.    In connection with their review of all Proofs of Claim filed to date against

the Debtors' estates, the Debtors have identified two hundred and fifty-nine (259) claims, in the

aggregate face amount of $3,358,579.29 (plus unliquidated and/or undetermined amounts) as

being claims filed on account of one or more pension and/or health and welfare benefit plans (the

"Employee Benefit Plans"), which are listed on Exhibit A hereto.  The Debtors believe that such

claims were filed by each of the respective claimants on a protective basis, in the event that the

Debtors elected to terminate the applicable Employee Benefit Plans and deprive the claimants of

the benefits to which they are entitled under such Employee Benefit Plans.  However, the

Debtors have not elected to terminate any of the applicable Employee Benefit Plans.  The

Employee Benefit Plans to which each of the claims listed on Exhibit A relate will instead be

assumed pursuant to the Debtors' confirmed Plan, when such Plan becomes effective.  (Bourgon

Decl. ¶ 7.)

14.    Specifically, the Plan provides that all Employee Benefit Plans[6] shall be

assumed by the applicable Reorganized Debtor(s).  (See Docket No. 12072, Plan §§ 1.1.82, 6.5.)[7]

Examples of the Employee Benefit Plans that will be assumed by the Debtors upon the effective

date of the Plan are the Tribune Company Cash Balance Pension Plan (formerly known as the

"Times Mirror Pension Plan") (the "Pension Plan"), the Tribune Company 401(k) Savings Plan

(the "401(k) Plan"), the Tribune Company Benefits Program, the Defined Contribution

---

[6] "Employee Benefit Plans" are defined in Section 1.1.82 of the Plan as "any employment, compensation, tax-qualified or non-tax qualified pension plan, defined benefit plan, multiemployer plan, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense reimbursement, dependent care, retirement, savings, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other benefit plan or any individual contract or agreement that has not been rejected or terminated prior to the Confirmation Date [i.e., July 23, 2012] for the benefit of the directors, officers or employees (whether salaried or hourly) of the applicable Debtor, or maintained by any Debtor for employees of non-Debtor direct or indirect subsidiaries of a Debtor, and any retiree benefit program of the applicable Debtor...."

[7] Section 6.5 of the confirmed Plan additionally provides as follows, with respect to the assumption of Employee Benefit Plans:

> Except as set forth in Article II.F.4 of the specific portion of the disclosure statement relating to the Second Amended Plan and such other Employee Benefit Plans as may be disclosed in the Plan Supplement, the Reorganized Debtors shall continue to perform their obligations under all Employee Benefit Plans and all such Employee Benefit Plans shall be assumed by the applicable Reorganized Debtors; provided, however, that nothing in the Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, causes of action, or other rights with respect to the interpretation, application or enforcement of any such Employee Benefit Plan or the payment of any Employee Benefit Claim, including the Reorganized Debtors' rights to amend, modify or terminate any such Employee Benefit Plan either prior to or after the Effective Date.

In turn, Article II.F.4 of the specific disclosure statement provides as follows:

> With the exception of the Compensation and Benefit Programs described in Article III.C.6– III.C.11 of the General Disclosure Statement (i.e., the Management Equity Incentive Program, the Equity-Based Compensation Provisions of the Incentive Compensation Plan, the Employee Stock Ownership Plan, the Transitional Compensation Plan, the Nonqualified Retirement / Deferred Compensation Plans, and Certain Individual Letter Agreements), the Reorganized Debtors shall continue to perform their obligations under all Employee Benefit Plans and all such Employee Benefit Plans shall be assumed by the applicable Reorganized Debtors; provided, however, that nothing in the Debtor/Committee/Lender Plan shall limit, diminish or otherwise alter the Reorganized Debtors' defenses, claims, causes of action, or other rights with respect to the interpretation, application or enforcement of any such Employee Benefit Plan or the payment of any Employee Benefit Claim, including the Reorganized Debtors' rights to amend, modify or terminate any such Employee Benefit Plan either prior to or after the Effective Date.

Retirement Plan, and certain other tax-qualified multi-employer pension and welfare plans and union pension plans in which the Debtors participate.[8]

15.    The payment of retirement and/or health and welfare benefits to participants in the Debtors' Employee Benefit Plans has not been interrupted or affected by the Debtors' chapter 11 bankruptcy proceedings. None of the Employee Benefit Plans is a Debtor in these chapter 11 cases. The benefits paid to participants and beneficiaries by the Pension Plan and the 401(k) Plan, as to which most of the Assumed Employee Benefit Plans relate,[9] are paid through a tax-qualified trust that is not under the Debtors' control and whose assets are not assets of the Debtors' estates. See 11 U.S.C. § 541(b)(7) (contributions to ERISA-governed employee benefit plans excluded from property of the estate). Thus, eligible claims for pension benefits based on an employment relationship with the Debtors have been and will continue to be paid by the Pension Plan and the 401(k) Plan, not by any of the Debtors. (Bourgon Decl. ¶ 8.) The same is true for claims arising under others of the Debtors' Employee Benefit Plans, i.e., amounts due to the claimants, if any, on account of retirement and/or health and welfare benefits to which they are entitled under the applicable Employee Benefit Plans will continue to be paid by the applicable Employee Benefit Plan after the effective date of the confirmed Plan. (Id.) The claimants and the Debtors will continue to have all their respective rights and remedies respecting the Employee Benefit Plans in accordance with the terms of the official plan

---

[8] The Plan excludes from assumption the Management Equity Incentive Program, the Equity-Based Compensation Provisions of the Incentive Compensation Plan, the Employee Stock Ownership Plan, the Transitional Compensation Plan, the Nonqualified Retirement/Deferred Compensation Plans, and certain individual letter agreements (as each of those terms are defined in the Plan) (the "Excluded Employee Benefit Plans"). For the avoidance of doubt, none of the Assumed Employee Benefit Plan Claims relates to Excluded Employee Benefit Plans.

[9] Of the 259 Assumed Employee Benefit Plan Claims, approximately 239 claims relate to the Pension Plan and/or the 401(k) Plan, in whole or in part, and the remaining 20 claims relate to the Tribune Company Benefits Program, the Defined Contribution Retirement Plan, or the multi-employer pension and welfare plans in which the Debtors participate. (Bourgon Decl. ¶ 6.)

documents and non-bankruptcy law (including, to the extent applicable, the Employee

Retirement Income Security Act of 1974, as amended ("ERISA")).[10]  (Id.)

16.    Accordingly, each of the Assumed Employee Benefit Plan Claims should

be expunged as of the effective date of the Plan, upon the assumption of the applicable Employee

Benefit Plans.  None of the claimants identified on Exhibit A will suffer prejudice by the relief

requested in this Objection, because the Assumed Employee Benefit Plan Claims are by their

nature protective, and all of their respective rights are being protected by the assumption of the

Employee Benefit Plans pursuant to the Plan when it becomes effective, and the continued

payment of benefits to which those claimants are entitled, in the ordinary course of the Debtors'

(and Reorganized Debtors') business.

**B.  No Liability Benefit Continuation Claims**

17.    In connection with their review of all Proofs of Claim filed to date against

the Debtors' estates, the Debtors have identified nineteen (19) claims, in the aggregate face

amount of $39,598.58 (plus unliquidated and/or undetermined amounts) as No Liability Benefit

Continuation Claims, which are listed on Exhibit B hereto.

18.    Thirteen (13) of the No Liability Benefit Continuation Claims listed on

Exhibit B hereto were filed on account of certain amounts that were listed on the Schedules by

Debtors The Morning Call, Inc. and The Hartford Courant Company, solely relating to internal

accounting accruals for benefits continuation for former employees who had been severed by

those Debtors.  To the extent those former employees were eligible for and elected to receive

benefit continuation pursuant to (i) the Consolidated Omnibus Budget Reconciliation Act

---

[10] For example, ERISA provides that claims for pension benefits may only be recovered from the applicable pension plan, and that the remedies available to participants or purported participants are limited to those provided under ERISA.

("COBRA")[11] or (ii) a contractual separation agreement, those benefits were provided to former employees in the ordinary course of business, provided that the claimants paid the applicable premiums, as authorized by the Court (see Docket Nos. 53, 340, 474, 1076, 1207). The continuation period provided for under COBRA and/or any contractual separation agreements has now expired, and accordingly no further amounts are due and owing to the claimants on account of these claims by any Debtor. (Bourgon Decl. ¶ 11.)

19.    The other six (6) of the No Liability Benefit Continuation Claims listed on Exhibit B hereto pertain to the continuation of certain medical and dental benefits that the claimants were entitled to receive under contractual separation agreements entered into by the claimants and the applicable employer Debtor (i.e., not pursuant to COBRA). The continuation of those benefits was authorized by the Court (see Docket Nos. 53, 340, 474, 1076, 1207), and each of the claimants continued to receive the medical and dental benefits to which they were entitled for the full term provided in their separation agreements (as long as they paid their share of the premiums). The continuation period provided in each of those separation agreements has now expired, and accordingly no further amounts are due and owing to the claimants on account of these claims by any Debtor. (Bourgon Decl. ¶ 12.)

**C. No Liability Employee Claims**

20.    In connection with their review of all Proofs of Claim filed to date against the Debtors' estates, the Debtors have identified thirteen (13) claims, in the aggregate face amount of $151,748.92 (plus unliquidated and/or undetermined amounts) as No Liability Employee Claims, which are listed on Exhibit C hereto. The Debtors have diligently reviewed

---

[11] COBRA mandates that employers provide their former employees with the opportunity to receive continued benefits following termination, for a prescribed period of time. The costs associated with continued benefits provided pursuant to COBRA are borne by the former employees. Thus, to the extent that the claimants were entitled to receive continued benefits pursuant to COBRA, the Debtors' obligation was limited to providing benefits, and not premium contributions or other payments to the claimants. (See Bourgon Decl. ¶ 11 n.3.)

their books and records and have undertaken a reasonable investigation of the No Liability

Employee Claims based on the information, if any, provided in the applicable proofs of claim.

Based on that review, the Debtors believe that they are not liable for the No Liability Employee

Claims because the Debtors' books and records, which the Debtors believe to be accurate, do not

reflect that any prepetition amounts are due and owing on account of the No Liability Employee

Claims. (Bourgon Decl. ¶ 13.)

        21.     Specifically, the Debtors' reasons for objecting to the No Liability

Employee Claims fall into one or more of the following general categories: (i) the claim is, on its

face, a substantive duplicate of one or more other claims filed by or on behalf of the same

claimant in respect of the same liabilities; (ii) the claim was filed on account of benefits under

one or more of the Debtors' Employee Benefit Plans, and claimants either (a) received all

benefits to which they were entitled, or (b) were not entitled to receive benefits under the

applicable terms of the Employee Benefit Plans; and/or (iii)  the claim was filed for wages or

other compensation, and the Debtors' records indicate all amounts due to the creditor have been

paid, and no further amounts are due and owing.  (Bourgon Decl. ¶ 14.)  Accordingly, the

Debtors object to the allowance of each of the No Liability Employee Claims set forth on <u>Exhibit</u>

<u>C</u> for the reasons specified on <u>Exhibit C</u> for each respective claim and request that such No

Liability Employee Claims be disallowed in their entirety and expunged.  The Debtors also

request that the Court authorize the Claims Agent to expunge the No Liability Employee Claims

from the Claims Register so that the Claims Register reflects more accurately the claims

legitimately asserted and outstanding against the Debtors.

## **RESERVATION OF RIGHTS**

        22.     The Debtors hereby reserve their right to amend, modify, and/or

supplement this Objection at any time prior to the hearing on this Objection. The Debtors further

reserve their right to adjourn the hearing on this Objection as it pertains to any or all of the

Disputed Claims.  In the event that the Debtors so adjourn the hearing, they will state that the

hearing on the Objection and/or any response filed in connection therewith and/or all applicable

deadlines for responsive pleadings have been adjourned on the agenda for the hearing, which

agenda will be served on any party affected by such adjournment.

## NOTICE

23.     Notice of this Objection has been provided to: (i) the Office of the United

States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for

Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors'

postpetition financing facility; (v) the claimants listed on Exhibit A, Exhibit B, and Exhibit C;

and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with

Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit

that no other or further notice is necessary.

## NO PRIOR REQUEST

24.     No previous application for the relief sought herein has been made to this

Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1, (i) disallowing in full and expunging, upon the occurrence of the effective date of the Plan of reorganization confirmed for the Debtors, the Assumed Employee Benefit Plan Claims set forth on Exhibit A; (ii) disallowing in full and expunging the No Liability Benefit Continuation Claims set forth on Exhibit B; (iii) disallowing in full and expunging the No Liability Employee Claims set forth on Exhibit C; (iv) directing the Claims Agent to modify the Disputed Claims on the Claims Register; and (v) granting such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
August 6, 2012

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
Michael T. Gustafson
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION