Response to Addition to Supplemental Objection; Claim No. 7106; Case No. 08-13141 (KJC)
Page 44
August 8, 2012

# Exhibit F: Claimant's Original October 3, 2008 Complaint

**Dynamic In Situ Geotechnical Testing**
725 Cameron Woods Drive
Apex, North Carolina 27523

---

Phone: (919) 303-5801
E-Mail: hroberthenke@aol.com

October 3, 2008

Circuit Court for Baltimore City
Attention: Room 462
111 North Calvert Street
Baltimore, Maryland 21202

Subject: Defamation Complaint

Herein, I, Robert Henke, present a complaint I have against a newspaper, *The Baltimore Sun* ("*The Sun*") and a *Sun* reporter, Mr. Gadi Dechter. I am not an attorney; however, I am planning to represent myself until I obtain appropriate representation. I am following procedures described on October 2, 2008 by staff of the Circuit Court for Baltimore City. In the following sections, I first summarize my complaint. Then, I summarize the harm to my firm and me and the resulting harm to my family.

## Complaint

My complaint stems from a Sunday front page news article ("the article") published by *The Sun* on October 7, 2007. The article was entitled "A modern-day Ahab" and was written by Mr. Dechter. The article covered experiences of my small firm in bringing a new earthquake engineering technology to practice and effects of the undertaking on my family. My complaint follows.

The article appears to have been a material and well-crafted defamatory fabrication. Facts were created, facts were reshaped, and facts were omitted – on a large scale. For example, both the prominent theme of the article and compelling evidence for that theme were untrue. Evidence suggests that the untruths and misrepresentations were reckless and deliberate. I believe the defamation is the most recent of a string of injuries in a lengthy, intense, and well-shielded campaign ("the campaign") committed to driving my firm and me from our profession. I believe the campaign grew from my tenure (1985-89) as a faculty member at The Johns Hopkins University ("the University"). My tenure was marked by several controversies and I was dismissed from the University. I believe the campaign has inflicted unthinkable harm on my family, me, and my firm. I believe *The Sun*, which is close to the University, took part in the campaign and the article was intended to protect the campaign. Essentially, it appears that *The Sun* concealed the very real possibility of professional misconduct and maligned the victims. I believe *The Sun's* intent was to discourage further scrutiny of the matter; such scrutiny may have placed the University in an unfavorable light. I believe the article will do little more than further obstruct progress towards justice for my firm and me and, therefore, also for my family.

Much evidence suggests *The Sun's* lapses were intentional. For example, *The Sun* gained my family's cooperation through false pretenses; *The Sun* violated our privacy; *The Sun* carried out an insincere facts check; and *The Sun* misrepresented the origin of the article. Additionally, *The Sun* appears to have been pressured by the University.

Complaint – Circuit Court for Baltimore City
Page 2
October 3, 2008

## Damages

The article has harmed my firm's and my well-being, prospects, and standing and, so, those of my family and has obstructed our progress toward justice.

Before the article, my family, me, and my firm had already suffered immeasurable harm, evidence suggests, as a direct or indirect result of the campaign. Our ability to function as a family was greatly disrupted; we lost our home; my younger son, as a youth, experienced serious difficulties and now faces the possibility of a prison term; my older son experienced serious difficulties and we were not able to provide him the help that a family normally could; our firm – whose technology has shown great promise for contributing significantly to public safety - lies in ruins and I have been unable to progress with that technology; we suffered huge firm-related financial losses including our personal investment in our technology (roughly $1M) and patent-related losses; we were driven from our profession and have been denied the privilege of continuing to contribute to that profession; I have been blacklisted, it seems, and have been unable to secure positions for which I believe I am strongly qualified; I have no income or security; our professional, financial, and social standings have been blackened greatly; my wife and son have been subjected to immense legal indignities; we have endured great mental anguish; our health has suffered; and our relationships with our parents have been strained.

*The Sun's* article only intensified our plight. By obstructing progress towards a resolution to the matter, *The Sun* and any of its accomplices behind the article have caused my firm and me and, so, my family, to be continued to be deprived of justice. In turn, our well-being, prospects, and standing continue to deteriorate.

My request is driven by intangibles and my deep belief that the defamation is only the most recent expression of a long-standing retaliatory campaign. On the basis of the extraordinary levels of malice and recklessness to which I believe my firm and me and, so, my family have fallen victim; the duration and relentlessness of the campaign against us; and the irreversible harm to my family, my firm, and me, I am requesting a sum of $100M.

## Conclusion

I greatly appreciate your efforts in processing my complaint. As instructed, I have enclosed a check for the filing fee of $105.00 and have enclosed a self-addressed envelope. I will be sending a copy of this letter to Mr. Timothy E. Ryan; Publisher, President, and Chief Executive Officer; *The Baltimore Sun*; 501 North Calvert Street; Baltimore, Maryland; 21278. Please do not hesitate to contact me if you have any questions.

Sincerely,

Robert Henke

Cc: Mr. Timothy E. Ryan