# Exhibit G: Excerpt from Claimant's April 7, 2010 Reply to Debtors' Original Objection to His Original Claim

Response to Objection to Claim No. 3697: Case No. 08-13141(KJC)
Page 24
April 7, 2010

62. As an aside, in moving from Apex, North Carolina, to Wilmington, North Carolina, during December 2009, plaintiff did find his discharge papers (Exhibit Q gives an example). These show that he was discharged honorably.

**Draft Amendment to Original Complaint: Example of Deceit by *The Sun* and Intent to Harm**

63. In what seems to be not only evidence of deceit on the part of *The Sun* with intent to do harm but also an unbecomingly disgraceful invasion of privacy, *The Sun* failed to honor an agreement plaintiff believed he had with *The Sun* regarding his leaving the Air Force. *The Sun* published the reason why plaintiff left the Air Force; *The Sun* stated "His [plaintiff's] bride had had an affair."

64. *The Sun's* statement, plaintiff believes, was a breach of a good faith agreement plaintiff believes he had with *The Sun*. Plaintiff's diary entree of January 4, 2007 states that in a conversation, plaintiff told Mr. Dechter he "[plaintiff] left [the Air Force] after 2 months – family problems. He [Mr. Dechter] wanted to know what they were. I [plaintiff] said I wanted to keep that private." Plaintiff was under the impression that Mr. Dechter was in agreement with that; he never said he wasn't. Plaintiff reiterated his wish twice in the attachment of a February 16, 2007 email (Exhibit R). Plaintiff stated "Please let the individuals you contact know that they are free to discuss the matters at hand (except for the family problems matter with respect to the Air Force – thanks)" and, later, on the Air Force, plaintiff stated "......again, I'd rather the family problems of which I spoke not to be discussed)". And again, Mr. Dechter didn't comment on the wish. In her May 2, 2007 interview with Mr. Dechter, Ms. Henke told him details of plaintiff's leaving the Air Force. During a May 4, 2007 interview, Mr. Dechter told plaintiff of that. Plaintiff

responded with disbelief; his diary shows he replied, "your [you're] not going to write about that[,] are you. [?]" Mr. Dechter said he would.

65. Regarding legal issues, plaintiff believes *The Sun's* silence on this matter was malicious. Regarding legality, plaintiff believes that, even though *The Sun* did not make an explicit promise, because of the standing of *The Sun* as trustworthy and principled, plaintiff believes its blaring silence would have been taken, by a reasonable person, as equivalent to a promise. That is, plaintiff believes it fell on *The Sun* to conduct itself in a manner consistent with its standing and that a reasonable person had the right to expect *The Sun* to be forthright and to make its position clear. Plaintiff would have had entirely different expectations of a tabloid. In view of this thinking, plaintiff believes *The Sun* violated a legal commitment based on "detrimental reliance" in failing to honor its implied promise. That failure, plaintiff believes, led to, at least, the harms of defamation and an invasion of plaintiff's and Ms. Henke's privacy. Had *The Sun* told plaintiff it could not agree to his requirement, likely, the article would not have come into being; plaintiff and his family would not have cooperated with *The Sun* in the writing of the article.

66. Regarding intent, plaintiff believes *The Sun* was deliberately silent. With its silence, *The Sun*, plaintiff believes, unbecomingly violated standard practices of responsible journalism. The matter in question was substantive and clearly pivotal to the gaining of the cooperation of plaintiff and his family. Plaintiff believes *The Sun* was fully aware that plaintiff was relying on *The Sun* to honor what he believed was a commitment. Placing himself in the mind of Mr. Dechter, plaintiff, after having been informed at least three times from the subject that he did not wish to reveal details over his leaving the Air Force, finds it hard to see how being silent in

Response to Objection to Claim No. 3697: Case No. 08-13141(KJC)
Page 26
April 7, 2010

response could be anything but deceit with the intent to harm; that is, being noncommittal in hopes of uncovering compromising information. Especially with the article having been *The Sun's* idea, plaintiff's rights to privacy over certain personal matters, and plaintiff's clearly and repeatedly stated unwillingness to reveal the private matter in question, plaintiff believes it fell on *The Sun* to make clear beyond any doubt whatsoever as to whether or not it would agree to his terms. Given these circumstances, plaintiff is certain that, *The Sun*, as an organization of standing, under normal circumstances, as a matter of course, would have placed special effort toward insuring plaintiff was absolutely clear over its position on the matter. *The Sun's* failure to be so suggests intent to deceive and reinforced plaintiff's belief that *The Sun's* sought to harm plaintiff with the article.

### Specificity of Complaint: Failure to Name Harm

67. Debtors' stated "the Henke Claim does not allege any particular harm or damages suffered as a result of the allegedly defamatory article that are attributable to the Debtors; rather, Mr. Henke describes a series of unfortunate events that occurred prior to the time the article was published that in no way implicate the Sun." This is not correct.

68. In the complaint, claimant stated

> 68a. "I (claimant) believe the article will do little more than further obstruct progress towards justice for my firm and me and, therefore, also for my family.