Response to Addition to Supplemental Objection; Claim No. 7106; Case No. 08-13141 (KJC)
Page 47
August 8, 2012

## Exhibit I: *The Sun's* August 3, 1995 Article



GEORGE W. HOLSEY/SUN STAFF PHOTO

Robert and Wanda Henke of Lutherville have been denied federal grants several times for their research on developing a device to test how soils at certain sites would respond in an earthquake.

# 2 engineers sue to end secrecy in grant application reviews

**By Douglas Birch**
Sun Staff Writer

Two Baltimore-area engineers, frustrated by the insular way federal agencies award billions in research grants each year, are trying to strip away some of the secrecy.

Wanda and Robert Henke, a couple who run a small engineering technology firm out of their Lutherville home, have hauled the National Science Foundation and the National Institute of Standards and Technology into court, challenging their policies of keeping confidential the names of scientists who review grant applications.

If they succeed, the Henkes will shake one of the pillars of modern American science: the peer review process, where small groups of scientists, working anonymously, help decide whose research is supported by taxpayers' money and whose research isn't.

The lawsuit could have an impact well beyond the scientific community. Many other federal grants, including those handed out by the National Endowment for the Arts, are based on similar secret critiques.

"It really is an extraordinary, medieval star-chamber type process," said Eric R. Glitzenstein of Washington, the couple's lawyer.

"You're not even allowed to know, in the best of circumstances, who these people are, whether they have conflicts of interest, whether they're competing for grant money, or if they're friends of competitors: Things that would have an enormous impact on their objectivity and their competence."

The Henkes, both former employees of the Exxon Corp., have spent more than a decade trying to develop a gadget for testing how the soils at specific construction sites would respond in an earthquake. They call it a "torsional cy-

See **HENKE**, 12B

August 3, 1995

# HENKE: Engineers challenge secrecy of reviews

*From Page 1B*

lindrical shear test."

Robert Henke, 48, holds a doctoral degree in civil engineering from the University of Michigan. He is a former associate professor of engineering at the Johns Hopkins University. Wanda Henke, 45, has a master's degree in mechanical engineering from Michigan and runs the family business, Dynamic In Situ Geotechnical Testing Inc.

Over the years, Ms. Henke said, the firm has won about a half-dozen government grants — the largest a $189,000 award received in 1986.

In 1990, the National Science Foundation (NSF) rejected a grant proposal by the Henkes after peer reviewers gave it low ratings.

"The reviews that we got back were really absurd," she said. "They weren't reasonable. They were very negative."

One reviewer, for example, criticized the firm's device by saying it could only be used in "softer soils." Ms. Henke said soft soils are among the most dangerous during an earthquake, because buildings sitting on them tend to sink and topple.

Undeterred, the Henkes kept applying for grants.

In 1990, 1991 and 1992, the Henkes submitted three applications to the National Institute of Standards (NIST). Each time, they sought grants of between $700,000 and $850,000 to develop their seismic testing device. Each time, they were turned down.

They were puzzled by these rejections: The 1990 application received high technical marks, but a low rating for their business plan. So, Ms. Henke said, they rewrote the business plan and resubmitted the application in 1991.

This time, reviewers gave the application low technical marks, as well as low business marks. How, they wondered, could the same material get a high ranking one year and a low ranking the next? Despite revisions, the application received low marks again in 1992.

In 1993, the NSF turned down their request for a $197,000 grant, based on four low ratings from reviewers. The Henkes were upset.

They had come to suspect that scientific or commercial rivals were reviewing their grant applications and giving them low marks. So they filed a lawsuit under the Privacy Act to learn the identities of those reviewers, to see if there were grounds to suspect bias.

Ms. Henke said the purpose of the suit was never to "harass these people or get back at them in some way."

Because federal agencies recruit specialists in various fields to review grant proposals, she pointed out, "anyone who is going to review your proposal is likely a competitor of some type. You're all going after the same research funds, you're all going after the same credit in the same area."

A federal District judge in Washington ruled against the Henkes last year in their suit against the NSF. But in late May, the same judge ruled in their favor in the NIST case, ordering the agency to open its files.

There were sharp differences in the cases.

The NSF provided the Henkes with written copies of reviewers' comments and the names of the panel members from which their reviewers were drawn — though not the names of the reviewers themselves.

NIST, on the other hand, refused to provide any names or written copies of reviews. Instead, the agency would only read reviewers' comments over the phone.

The institute claimed that its records on the Henkes' grant request were exempt from Privacy Act disclosure requirements.

The judge disagreed. NIST has filed an appeal. A spokesman for the institute declined to comment.

The Henkes are appealing the decision in the NSF case.

Lawrence Rudolph, the NSF's general counsel, said that keeping the names of reviewers confidential "is necessary to ensure candid and forthright comments from peer reviewers."

The foundation, he said, has "safeguards" against bias in the peer review process, including a requirement that reviewers file forms disclosing any potential conflicts of interest. There is "little benefit" and "little need," he said, for grant applicants to know the names of reviewers.

Donald N. Langenberg, chancellor of the University of Maryland System and former deputy director of the NSF, argued in an electronic mail message that the current peer review system works, despite its flaws, because of "the firmly established cultural values of science and scientists; these include intellectual rigor, honesty or objectivity."

"Yes, scientists do sometimes cheat, lie and steal," he wrote. "But not often — the professional penalties are too great."

Adil E. Shamoo of the University of Maryland's School of Medicine, and editor of the journal *Accountability in Research*, agrees that some scientists may hesitate to serve as reviewers, or pull their punches, if they aren't shielded by anonymity.

But he thinks the benefits of an open system would outweigh the drawbacks.

"Secrecy breeds suspicion, it breeds and continues conflicts of interest, it removes accountability," he said.

"You would want to face your criticizers, right? It's just like facing your accuser in court."