**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | |
| TRIBUNE COMPANY, *et al.*, | Chapter 11 |
| Debtors. | Case No. 08-13141 (KJC) |
| | (Jointly Administered) |

**REPLY IN SUPPORT OF MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK AND DEUTSCHE BANK TRUST COMPANY AMERICAS PURSUANT TO 28 U.S.C. § 158(d)(2) AND FED. R. BANKR. P. 8001(f) REQUESTING CERTIFICATION OF DIRECT APPEAL TO UNITED STATES COURT OF APPEALS FOR THIRD CIRCUIT OF THE UNFAIR DISCRIMINATION ISSUE IN THE ALLOCATION DISPUTES ORDER AS INCORPORATED IN THE ORDER AND MEMORANDUM OPINION ON CONFIRMATION**

Law Debenture Trust Company of New York and Deutsche Bank Trust Company Americas ("Appellants") in further support of their Certification Motion[1] and in response to the *Objection Of The DCL Plan Proponents To The Trustees' And EGI-TRB, LLC's Motions For An Order Certifying Direct Appeal Of The Confirmation Order To The Court Of Appeals For The Third Circuit*, dated August 8, 2012 (the "Certification Objection") submitted by DCL Plan Proponents ("Appellees") respectfully submit as follows:

**PRELIMINARY STATEMENT**

1. Appellants have plainly demonstrated three independent grounds under 28 U.S.C. § 158(d)(2), each of which itself mandates a direct appeal to the Third Circuit of the entire

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Motion Of Law Debenture Trust Company Of New York And Deutsche Bank Trust Company Americas Pursuant To 28 U.S.C. § 158(d)(2) And Fed. R. Bankr. P. 8001(f) Requesting Certification Of Direct Appeal To United States Court Of Appeals For Third Circuit Of The Unfair Discrimination Issue In The Allocation Disputes Order As Incorporated In The Order And Memorandum Opinion On Confirmation*, dated July 23, 2012 (the "Certification Motion").

Confirmation Order. First, there is a "question of law as to which there is no controlling decision" both with regard to the Court's interpretation of the term "notwithstanding" as it is used in Section 1129(b)(1) of the Bankruptcy Code, and with regard to the application of the statutory requirement that a plan "not discriminate unfairly" in the context of contractual subordination, in each case because there is "no governing law on the issue before th[is] [C]ourt."[2] Second, the Confirmation Order relates to "a matter of public importance" concerning the enforceability of priority and turnover provisions in contractual subordination agreements, which impacts the financial world at large and "transcend[s] the litigants and involve[s] a legal question the resolution of which will advance the cause of jurisprudence to a degree that is not usually the case."[3] Third, certification of all appellate issues related to the Confirmation Order will "materially advance" the litigation and there are no impediments to certification raised by the Swap Claim Issue and EGI Issue as it is unnecessary for all issues presented by an appeal from an order to satisfy independently Section 158(d)(2)'s requirements.[4]

## REPLY

### I. Mandatory Certification Of The Unfair Discrimination Issue Is Required.

#### A. No Controlling Decision Exists.

##### 1. Neither The Third Circuit Nor The Supreme Court Have Ever Interpreted The Unfair Discrimination Issue.

2. This Court must certify the Unfair Discrimination Issue incorporated in the Confirmation Order because neither the Supreme Court nor the Third Circuit has issued a

---

2 *Mull Drilling Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 82, 110 (Bankr. D. Del. 2009).

3 *Travelers Indem. Co. v. Common Law Settlement Counsel (In re Johns Manville Corp.)*, 449 B.R. 31, 34 (S.D.N.Y. 2011) (citations and internal quotations omitted).

4 *See Weber v. United States Tr.*, 484 F.3d 154, 158 (2d Cir. 2007) (acknowledging that if adversely affected parties might "very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear[,]" direct review by the circuit court is advisable).

"controlling decision" on this issue.[5] Contrary to Appellees' assertion, the Unfair Discrimination Issue presents two *questions of law*, which neither the Supreme Court nor Third Circuit has addressed: (i) whether Section 1129(b)(1) of the Bankruptcy Code permits the confirmation of a plan that does not enforce fully the priority provisions of a subordination agreement; and (ii) whether, in applying the requirement that a plan not discriminate unfairly, the comparison for purposes of determining the materiality of the discrimination is (a) a comparison of the distribution to the dissenting class with the distribution to a similarly situated class under the plan, or (b) a comparison of the distribution to the dissenting class under the plan with the distribution that the dissenting class would have received absent the discrimination.

3.  The first legal issue requires the Court to determine the meaning of the phrase "notwithstanding section 510(a) of this title" at the beginning of the section as it relates to the "not discriminate unfairly" requirement. Because there is *no* controlling authority on whether a plan violates the requirement that a plan not discriminate unfairly if it fails to enforce the turnover provisions of a subordination agreement fully and treats unsecured creditors who are not entitled to the benefit of contractual subordination the same as those who are entitled to such benefit, this Court must grant Appellants' requested relief for a direct appeal. *SemCrude*, 407 B.R. at 111 (certifying direct appeal under 28 U.S.C. § 158(d)(2)(A)(i) *sua sponte* where there were no controlling decisions interpreting a relevant Kansas state law provision). As Appellants explained in their Certification Motion (Certification Motion ¶¶ 27-32) and as is evident from the lack of cases cited in the Certification Objection (Certification Objection ¶¶ 20-33), there is "no

---

[5] The prevalence of certification in this Circuit has no bearing on whether certification is required here. Indeed, when the statutory requirements of certification are met, as they are here, the courts in this circuit certify such appeals. *See, e.g., Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 369 (3d Cir. 2007); *Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 140, 158 (Bankr. D. Del. 2009) ("In the present case, the Court finds that the statutory criteria are met: there is no governing law on the issue before the Court, and it appears that prompt consideration of the appeal may serve to advance these bankruptcy proceedings.").

governing law" from the Third Circuit or Supreme Court cases that even discuss, let alone determine, the Unfair Discrimination Issue. *SemCrude*, 407 B.R. at 111 ("a question of law as to which there is no controlling decisions" exists where "there is no governing law on the issue before the Court"). Further, while there are a few cases in this district that have discussed the "not discriminate unfairly" requirement, none have interpreted the requirement along with the "notwithstanding section 510(a)" language because none of those cases involved the disregard of a priority scheme and turnover requirements set forth in a subordination agreement.

4. The second legal issue concerns the legal test and framework of comparison to determine whether a plan does not discriminate unfairly. No Third Circuit or Supreme Court case has addressed this issue even though substantial authority indicates that the proper "materiality" comparison is whether the dissenting class is receiving a materially lower percentage on its claims ***compared with another class of equal rank***.[6] *In re Armstrong World Inves.*, 348 B.R. 111, 121 (D. Del. 2006) (determining that a plan discriminates unfairly if there is "a difference in the plan's treatment of the two classes that results in . . . a materially lower percentage recovery for the dissenting class . . . ."). Further, legislative history provides that in a case involving a subordination agreement, unfair discrimination must be assessed by comparing (i) the percentage distribution that the dissenting class is receiving without counting that portion of the distribution that is allocable to the application of the subordination/turnover provisions of

---

6 *See In re Dow Corning Corp.*, 244 B.R. 969, 703 (Bankr. E.D. Mich. 1999) ("The inability to designate with certainty a comparable class is however, [*sic*] not necessary to deposition of the case because any alleged difference in treatment between Class 18 and another class or classes of the same priority would give rise to a presumption of unfairness under the test only if the Plan provided for either a materially lower recovery or a greater allocation of risk for Class 18. This is not the case here as there is no evidence that any other class is receiving more favorable treatment than Class 18 under the Plan"); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 231-32 (Bankr. D.N.J.) (comparing dissenting noteholder class's recovery on deficiency claims to recovery received by general unsecured creditors); *see also* Bruce Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 AM. BANKR. L.J. 227, 249 (1998) ("Under the third factor, discrimination is presumptively unfair in two circumstances. First, unfairness is presumptively present *if the plan specifies materially different percentage recoveries for two classes having the same priority*." (emphasis added)).

the subordination agreements, with (ii) the percentage distribution that the class of equal rank is receiving (all of which is attributable to direct distributions from the estate, and none to any such subordination/turnover). Instead of applying this legal framework, however, the Court compared the dollar amount that Senior Noteholders would receive "if only the Senior Noteholders benefitted from the subordination provisions" to the dollar amount that they will receive under the Plan "if the Other Parent Claims benefitted from the subordination provisions." (Stein Decl. Ex. A, at 27-28.) This comparison finds no support in any Circuit level authority and is not even a comparison used by lower courts. It is not surprising, then, that even the Appellees do not argue that there is any controlling law on this issue.

5. Thus, Appellees' argument that somehow the case law on the questions of law comprising the Unfair Discrimination Issue is "settled" is simply wrong. (Certification Objection ¶¶ 19, 21.)

**2. Interpretation Of A Separate Section Of The Bankruptcy Code Is Not Controlling Of The Unfair Discrimination Issue**

6. Appellees unreasonably stretch the Third Circuit's holding in *Goody's Family Clothing, Inc.*, 610 F.3d 812 (3d Cir. 2010), in arguing controlling authority exists with respect to how to construe "notwithstanding" under the Bankruptcy Code. Appellees' reliance upon *Goody's* is misplaced because the Third Court never answered the legal question Appellants seek to certify for appeal. Rather, the *Goody's* Court held "365(d)(3) does not supplant § 503(b) and the Landlords are entitled to 'stub rent' as an administrative expense." 610 F.3d at 815. As the *Goody's* holding has nothing to do with the Appeal, on that basis alone Appellees' argument is

fundamentally flawed.[7] *See* Black's Law Dictionary (9th ed. 2009) (A holding is "[a] court's determination of a matter of law pivotal to its decision.").

*a. The Section of the Bankruptcy Code Interpreted in Goody's Is Not Analogous to Section 1129*

7. *Goody's* interpretation of "notwithstanding" in an entirely unrelated section of the Bankruptcy Code does not constitute controlling law because Sections 365(d)(3) and 1129(b)(1) are not "similarly constructed" despite both sections containing the word "notwithstanding." (Certification Objection ¶ 21.) The mere fact *Goody's* involved the interpretation of "notwithstanding" in the context of Section 365(d)(3) does not make it controlling for purposes of interpreting Section 1129(b)(1) nor does it render controlling law for the issue on Appeal. *See Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 470 n.10 (3d Cir. 2009) (finding that decision was not controlling where the statute it interpreted was distinguishable from statute at issue in instant action); *see also Stetson Ridge Assocs., Ltd. v. Walker (In re Walker)*, 315 B.R. 595, 598-99 (Bankr. D. Colo. 2004), *aff'd*, 325 B.R. 598, 601 (D. Colo. 2005) (finding that cited case was "distinguishable and not controlling" because "[i]t dealt with a separate Colorado statute.").

8. Further, even if *Goody's* was analogous – which it is not – that does not necessarily mean that it controls how a debtor may treat a subordination agreement in a cramdown plan. If analogous cases were sufficient to defeat direct certification, this prong of the certification test would be rendered inoperative – all parties rely on analogy in every case to support their arguments. Instead, as the statutory provision provides, there must exist a

---

[7] As even Appellees admit, *Goody's* "dealt with an entirely separate provision of the Bankruptcy Code" (Certification Objection ¶ 21) concerning whether the trustee under Section 365(d)(3) has an obligation to timely perform certain obligations of the debtor arising under unexpired leases of nonresidential real property. It is undisputable that is a separate issue from the one raised on Appeal – *i.e.*, whether the requirements of Section 1129(b)(1) have been met for a cramdown plan.

"controlling" circuit level or Supreme Court decision on the question of law – not on analogous questions of law.

*b. Interpretation Of The Word "Notwithstanding" In One Section of the Bankruptcy Code Cannot Control the Use of the Same Word in a Different Section*

9. Appellees' assertion that the Third Circuit's interpretation of "notwithstanding" in one section of the Bankruptcy Code controls the scope and meaning of "notwithstanding" in another section of the Bankruptcy Code is not supported by either the contextual use of the word or by the case law. The notion that context is crucial to the proper interpretation of a statute is not novel. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (noting that a court must review a statute pursuant to the reasonable interpretation "mandated by [its] grammatical structure.").

10. Indeed, the Bankruptcy Code employs "notwithstanding" for at least two distinct purposes. This fact is made plain by inserting Appellees' definition of "notwithstanding" into other sections of the Bankruptcy Code. As just one example, if "notwithstanding" meant "in spite of" (Certification Objection ¶ 21), Section 109(a) of the Bankruptcy Code becomes absurd. Section 109(a) of the Bankruptcy Code provides, "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a). If Appellees' definition of notwithstanding applied, then the other requirements as to who may be a debtor become inoperative as long as the Section 109(a) requirements are met. This is not the case. Instead, "notwithstanding" in this context must mean "regardless of" and possesses a

conjunctive quality requiring that a debtor must comply with Section 109(a) in addition to the other requirements of the section.

11.  Moreover, the Third Circuit has previously acknowledged that the interpretation of "notwithstanding" is not such a simple issue and has stated "courts must discern the meaning of 'notwithstanding' from the legislative history, purpose, and structure of the entire statute." *Conoco, Inc. v. Skinner*, 970 F.2d 1206, 1224 (3d Cir. 1992) (relying on legislative history to interpret the meaning of "notwithstanding" in the statute that sets forth the citizenship requirements of the Merchant Marine Act and concluding that in the current context its use did not preclude or supersede any other part of the Merchant Marine Act); *CoreStates Bank, N.A. v. United Chem. Techs., Inc.*, 202 B.R. 33, 47 (E.D. Pa. 1996) (examining legislative history to conclude that Section 1129(b)(1) requires that a dissenting class "receive treatment which allocates value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor."); *see also* Stephen Breyer, On the Uses of Legislative History in Interpreting Statutes, 65 S. Cal. L. Rev. 845, 863 (1992) (stating that "legislative history is helpful in trying to understand the meaning of the words that do make up the statute or the 'law.' A judge cannot interpret the words of an ambiguous statute without looking beyond its words for the words have simply ceased to provide univocal guidance to decide the case at hand.").

12.  This recognized ambiguity surrounding the use of "notwithstanding" borne from its multiple meanings nullifies any controlling force of the Third Circuit's *Goody's* decision for interpreting the meaning of "notwithstanding" as it is used in Section 1129(b)(1).

        *c. The Legislative History of Section 1129(b) Clarifies the Meaning of "Notwithstanding"*

13. In marked contrast to *Goody's*, this Court's interpretation of Section 1129(b)(1) was not consistent with the applicable legislative history; rather, it flatly rejected such legislative history. Had this Court properly applied statutory interpretation principles, it would have relied upon the authoritative legislative history of Section 1129(b), rather than *Goody's* – a distinguishable, non-binding case. *See* Stephen F. Ross & Daniel Tranen, The Modern Parol Evidence Rule and Its Implications for New Textualist Statutory Interpretation, 87 Geo. L.J. 195, 241 (1998) ("the suggestion that Congress can permit judges to attach their own meaning to text, or can insist that judges defer to the meaning set by an agency, but that a member of Congress cannot rely on an explanation of the text's meaning contained in a committee report or provided by the bill's sponsor is highly problematic"). Indeed, the legislative history Appellants rely upon in their motion, such as the House Report and comments of Representative Edwards and Senator DeConcini, have been found to be authoritative. *In re Calabrese*, 2012 U.S. App. LEXIS 14897, at *16 (3d Cir. July 20, 2012) (concluding that the court could "be reasonably confident in looking to the Joint Statement of Representative Edwards and Senator DeConcini as a manifestation of the legislature's purpose, because the Supreme Court has 'treated their floor statements on the Bankruptcy Reform Act of 1978 as persuasive evidence of congressional intent.'") (citations omitted); *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 513 (3d Cir. 2005) ("[T]he House Report has been considered an authoritative source of legislative history for section 1129(b)."); *Lernout & Hauspie Speech Prods., N.V. v. Baker (In re Lernout & Hauspie Speech Prods., N.V.)*, 264 B.R. 336, 341 (Bankr. D. Del. 2001) ("The Report was expressly intended '[u]ltimately ... [as] a great aid to courts in determining the legislative intent behind the provisions of the bill that become law.'") (citation omitted).

14. Courts therefore look to the legislative history to interpret Section 1129(b)(1). *See CoreStates Bank*, 202 B.R. at 47 (examining the legislative history to conclude that Section 1129(b)(1) "preserves just treatment of a dissenting class from the class's own perspective. … 'A plan that does discriminate unfairly gives unequal treatment to creditors who are similarly situated regarding legal rights and priority'"); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 & n.18 (9th Cir. 1986) ("unfair discrimination applies to plans in which claims or interests have been subordinated") (citing legislative history); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) ("The legislative history of 1129(b)(1) considers only one circumstance which would support disparate treatment, a subordination agreement.") (citation omitted).

15. Even assuming that a plain reading of Section 1129(b)(1) implied a different result from the legislative history, the intent of Congress as expressed in the legislative history controls. The apparent "plain meaning" of a statute is not conclusive where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters. In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair Enters.*, 489 U.S. at 242 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also Armstrong*, 432 F.3d at 513 (court will make no further inquiry where meaning of statute is plain "unless the literal application of the statute will end in a result that conflicts with Congress's intentions," in which case, "the intentions of Congress will control."). As the Supreme Court has reflected:

> [E]ven when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words

> may appear on 'superficial examination.' The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function.

*United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940) (footnotes omitted).

**3. Appellees Inappropriately Attempt To Modify <u>The Question Of Law That Appellants Are Seeking To Certify</u>.**

16. Apparently recognizing that there exists no controlling precedent regarding the Unfair Discrimination Issue, Appellees attempt to modify the questions of law that Appellants are seeking to certify, asserting that "the real issue on appeal is not the legal standard to be applied but whether the Court properly applied the materiality requirement to the *facts of this case*." (Certification Objection ¶ 24.) This is a pure mischaracterization by the Appellees.

17. There is no doubt that this case, as a whole, involves an application of facts to the law – all cases do. However, Appellants contend that the issues on Appeal involve pure matters of law – namely, (i) how "notwithstanding section 510(a)" impacts the "not discriminate unfairly" requirement,[8] and (ii) what is the applicable legal standard to determine materiality. (Certification Motion ¶¶ 27-32.) In *Ahrenholz v. Bd. Of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000), Judge Posner clarified that a "'question of law' … has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." Thus, where, as here, appeal is sought as to the Court's interpretation of the meaning of a statute, a direct appeal to the circuit court is clearly appropriate.

18. The underlying facts involved in the instant case and the Bankruptcy Court's finding on materiality (as opposed to its determination of the legal test that must be applied in making that finding) does not detract from the need to resolve these questions of law in the first instance. If the Bankruptcy Court erred in its legal interpretation, the numbers that it utilized to

---

[8] The disingenuous nature of Appellees' attempt to morph this into a "facts of the case" appeal is highlighted by their own focus on the legal effect of the "notwithstanding" phrase when arguing the interpretation of that language under Section 1129(b)(1) is well-settled law.

determine whether the Plan discriminates unfairly and the way in which it used them will necessarily change and result in a different outcome as to the materiality of the discrimination. Appellants' argument is dependent upon a correction of the legal error, not on the Bankruptcy Court's determination of materiality itself. Appellees either fail to grasp this fundamental difference or, lacking any other argument, have purposely tried to muddy the issue before the Court. Regardless of intent, Appellees are incorrect in characterizing the Unfair Discrimination Issue as anything other than pure questions of law.

19. Appellees also argue that certification is not warranted "with respect to the Bankruptcy Code's mandate that a plan 'not discriminate unfairly'" (Certification Objection ¶ 22) because Appellants are challenging the Third Circuit bankruptcy courts' established "applicable legal framework in determining whether a plan unfairly discriminates against a dissenting class." (Certification Objection ¶ 23.) Appellees' argument is flawed for several reasons.

20. First, decisions of a district court in a multi-judge district are persuasive, but not binding upon the bankruptcy court except to the extent that it is "law of the case." *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("[T]here is no such thing as 'the law of the district.'"). Second, Appellees have not established that an applicable legal framework even exists regarding the application of the "notwithstanding section 510(a)" language in the context of a cramdown plan. Third, to the extent that lower court decisions have established a legal framework for making the comparison required to apply the materiality requirement, it is not the framework that this Court used, and it is not a framework that any Third Circuit or Supreme Court case has addressed.

**B. <u>The Unfair Discrimination Issue Invokes A Matter Of Public Importance.</u>**

21. Appellants have shown that certification is also warranted under Section 158(d)(2)(A)(i) on the independent basis that the Unfair Discrimination Issue "involves a matter of public importance." Appellees' argument to the contrary lacks any credibility. (Certification Objection ¶¶ 9, 34-39.) As Appellees admit, "[c]ourts certify direct appeals under the 'public importance' prong only where the order at issue 'transcends[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case.'" (Certification Objection ¶ 34 (*quoting Am. Home Mortg. Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortg. Inv. Corp.)*, 408 B.R. 42, 44 (D. Del. 2009).)

22. This burden is met because the Plan does in fact eliminate the contractual right of Appellants and the Senior Noteholders with respect to turnovers under the Subordination Agreements. (Certification Motion ¶¶ 33-35.) Appellees gloss over the fact that the ability of a debtor to eliminate contractual priority and turnover rights – whether in whole or in part – is an issue that is of fundamental importance not only to those parties involved in the instant case, but also to the market as a whole. (Certification Objection ¶ 9.) *See ION Media Networks Inc. v. Cyrus Select Opportunities Master Fund Ltd. (In re ION Media Networks Inc.)*, 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009) (finding that "plainly worded contracts establishing priorities … should be appropriately fulfilled"). Other courts have concluded that a failure to enforce subordination agreements will result in market turmoil. *See, e.g.*, *In re Enron Creditors Recovery Corp.*, 370 B.R. 64, 70-71 (Bankr. S.D.N.Y. 2007) (finding that failure to enforce subordination agreements according to their terms would cause lending institutions to discontinue or severely alter their subordinated lending practices "to the detriment of the entire business community") (internal quotations omitted), *overruled on other grounds*, 380 B.R. 307

(S.D.N.Y. 2008). Indeed, the complexities of cramdowns "cr[y] out for appellate review." *In re Pac. Lumber Co.*, 584 F.3d 229, 244 (5th Cir. 2009).

23. Appellees are unable to cite any case to the contrary. Rather, they are forced to distract the Court from the fundamental issue on appeal and to distort the import of the Unfair Discrimination Issue. First, Appellees argue that the Plan does not eliminate third-party subordination rights because the Bankruptcy Court held that such elimination does not result in materially disparate treatment. (Certification Objection ¶¶ 9, 24-25.) This makes no sense. Either subordination rights are enforced or they are not; here, Appellees are merely stating an excuse for the non-enforcement, not that such rights are actually enforced under the Plan. They cannot make this latter argument, because the whole dispute on appeal arises from the fact that subordination and turnover rights are not enforced; and it is this ability to nullify such rights that is the matter of public interest invoked by the Unfair Discrimination Issue. (Certification Motion ¶ 36.) Appellees also argue that the issue does not invoke the public interest because Appellants were given due process. (Certification Objection ¶ 36.) Due process is constitutionally required in all cases; if due process were sufficient to defeat the public interest argument, no direct appeal could ever be certified on this ground.

24. Thus, the Unfair Discrimination Issue may be certified, in the alternative, given the prominence and widespread potential impact of this Court's decision.[9]

[9] Appellees also assert that certification is not warranted because the amount in controversy is relatively small. However, there is nothing in either the statute or the case law that supports this proposition. Furthermore, the Appellees are incorrect in claiming that the amount in controversy is only $11.5 million. Instead, if the Appellees assert that the Retirees and the Other Parent Claims must receive a 33.6% distribution, the actual amount in controversy is really $334 million. (*See* Stein Reply Decl. Ex. P.)

**II. Certification of All Appeals Of The Confirmation Order Will Materially Advance the Case.**

25. The direct appeal of the Confirmation Order in its entirety to the Third Circuit will materially advance the Debtors' bankruptcy cases as all parties, including Appellants, deserve the finality that a decision by the Third Circuit of the Unfair Discrimination Issue offer.[10] (Certification Motion ¶ 45.) Appellees argument that certification should be denied because certain issues aside from the Unfair Discrimination Issue would not be certified on their own is without merit. They argue that the Swap Claim Issue does not "independently satisf[y] the requirement for certification of a direct appeal" (Certification Objection ¶ 31.) and neither does the EGI Subordination Issue. (Certification Objection ¶¶ 32, 40-44.) Thus, Appellees argue that Appellants make a Hobson's Choice: either only take the appeal that is ripe for certification and drop all other appeals, or have all appeals run through the District Court. This argument is not sensible and ignores that it is not necessary that all issues embedded in an order independently satisfy the requirements for a direct appeal to the circuit court.

26. Indeed, Appellees completely ignore Appellants previous citation of *Jaffe v. Samsung Elecs. Co. (In re Qimonda AG)*, 470 B.R. 374 (E.D. Va. 2012) when arguing that Appellants cite no case supporting the proposition that it is possible to certify only part but not all of a bankruptcy court's order. (Certification Motion ¶ 21 n.2.) In *Qimonda*, the court

---

[10] Appellees argue that "it is not possible for the Court, *sua sponte*, to certify the entire Confirmation Order for direct appeal . . . because the Court no longer has jurisdiction to do so." (Certification Objection ¶ 51.) This argument has no merit. Appellees rely on the fact that "WTC previously appealed the 2011 Confirmation Order, the Reconsideration Order, and the Allocation Order, and those appeals have been docketed by the District Court and are pending before District Judge Sleet." (Certification Objection ¶ 52.) However, these orders are separate and apart from the Confirmation Order. (*See id.*) Every appeal of the Confirmation Order remains pending before the Bankruptcy Court. *See* Fed. R. Bankr. P. 8001(f)(2)-(3) (Until an appeal is docketed in the district court, the matter remains pending in the bankruptcy court). Accordingly, the Bankruptcy Court is able to certify each and every appeal of the Confirmation Order without jurisdictional constraint. *See id.* (A certification motion pursuant to 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending). (*See also* Certification Motion ¶ 23 n.3.) Additionally, upon information and belief, WTC is willing to request that Judge Sleet remand the appeal if this Court is inclined to certify all related appeals.

determined that one of the three issues on appeal was worthy of certification independent of and prior to its consideration of the other two issues. *Qimonda*, 470 B.R. at 386. The court then held that, because it certified one issue, it was prudent to certify the entire order. *Id.* The Fourth Circuit granted permission to appeal based on this certification on June 28, 2012. *See* No. 12-206 (1:12-cv-00008-TSE-JFA) (09-14766-RGM) [Doc. 27] (4th Cir. June 28, 2012). If Appellees were correct that it is impossible to certify part of an appeal, then the *Qimonda* court would have needed to analyze all three issues on appeal prior to determining whether certification was prudent. The court did not do this; instead, it determined that certification of one issue results in certification of all issues.

27.    Similarly, in *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996), the Supreme Court examined the certification of interlocutory orders under 28 U.S.C. § 1292 and stated that an order may be certified for direct appeal so long as it involves a qualifying question of law – regardless of what other non-qualifying questions the order also involves. *See* 516 U.S. at 204-05. *Yamaha* held that, once an order "involving" a legal issue is certified, the court of appeals can decide the case based on other, non-qualifying issues. *See id.* at 205 (noting that "the appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court") (internal quotation omitted). Indeed, Appellees admit as much in their Certification Objection. (*See* Certification Objection ¶¶ 13, 53 ("Appellants have cited no authority – and the DCL Plan Proponents are aware of none – for the proposition that it is possible to certify only part but not all of a bankruptcy court's order").)

28.    Thus, this Court must immediately certify the entire confirmation order for direct appeal as Appellants have satisfied the requirements of Section 158(d)(2).

**CONCLUSION**

WHEREFORE, Appellants respectfully request that the Court enter an order (i) granting the Certification Motion and (ii) granting such other and further relief that the Court deems just and proper.

Dated: August 15, 2012
Wilmington, Delaware

Respectfully submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

David S. Rosner
Sheron Korpus
Christine A. Montenegro
Matthew B. Stein
1633 Broadway
New York, New York 10019
212-506-1700

BIFFERATO GENTILOTTI LLC

/s/ *Garvan F. McDaniel*
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
302-429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, New York 10167
212-609-6800

McCARTER & ENGLISH, LLP

/s/ Katharine L. Mayer
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre
405 N. King Street
Wilmington, Delaware 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for certain series of Senior Notes*